JOSHUA H. LERNER, SBN 220755
    jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Telephone:  415.393.8200
Facsimile:   415.393.8306

H. MARK LYON, SBN 162061
    mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone:  650.849.5300
Facsimile:   650.849.5333

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>APPLE INC., a California corporation,<br><br>　　　　Defendant. | CASE NO. 8:20-cv-00048-DOC-DFM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO DISMISS**<br><br>**Hearing**<br><br>Date:　　　　Date:  April 6, 2020<br>Time:　　　　8:30 a.m.<br>Courtroom:　9D<br>Judge:　　　Hon. David O. Carter |

Gibson, Dunn & Crutcher LLP

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND .................................................................................. 2

      A.   Plaintiffs Allege an Effort to Misappropriate Their Confidential
           Information More Than Six Years before Filing This Action. ................. 2

      B.   Plaintiffs' Alleged Secrets Were Published in a Patent Application
           More Than Three Years before Plaintiffs Filed This Action. ................. 3

      C.   Plaintiffs Filed This Case with No Explanation for the Delay, No
           Plausible Description of Alleged Secrets, and No Explanation as to
           How Apple Was Supposed to Recognize Any Impropriety. ..................... 4

      D.   Plaintiffs' Claims for Patent Infringement, Correction of
           Inventorship, and Declaratory Judgment Also Lack Basic Facts. ............ 5

III.  LEGAL STANDARD ........................................................................... 5

IV.   ARGUMENT ...................................................................................... 6

      A.   The Eleventh Cause of Action for Trade Secret Misappropriation
           Should Be Dismissed. ...................................................................... 6

           1.   The Claim Is Time-Barred. ...................................................... 6

                a)   The Limitations Period on the CUTSA Claim Began
                     More Than Three Years Ago. ............................................ 6

                b)   Plaintiffs Have Not Pleaded an Excuse for Their
                     Delay. ......................................................................... 9

           2.   Plaintiffs' CUTSA Claim Should Be Dismissed for Failure to
                State a Claim. .................................................................... 10

                a)   Plaintiffs Do Not Sufficiently Allege Any Trade
                     Secrets. ....................................................................... 10

                b)   The Complaint Fails to Sufficiently Allege
                     Misappropriation by "Improper Means." .......................... 12

      B.   The First through Tenth Causes of Action Should Be Dismissed
           because They Do Not Plausibly Plead Patent Infringement. .................. 16

      C.   The Seventeenth Cause of Action for Ownership Should Be
           Dismissed. ................................................................................... 20

      D.   The Twelfth through Sixteenth Causes of Action Should Be
           Dismissed. ................................................................................... 23

           1.   Plaintiffs Lack Standing to Seek Correction of Inventorship. ........ 23

Gibson, Dunn &
Crutcher LLP

2.      Plaintiffs Fail to Plead Required Elements of an Inventorship
Claim. ............................................................................ 25

V.      CONCLUSION ..................................................................... 25

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Akazawa v. Link New Tech. Int'l, Inc.*,
    520 F.3d 1354 (Fed. Cir. 2008) ................................................................20

6

*Alamar Biosciences Inc. v. Difco Labs. Inc.*,
    1996 WL 648286 (E.D. Cal. Feb. 27, 1996) ....................................7, 8, 10

8

*Alta Devices, Inc. v. LG Elecs., Inc.*,
    2019 WL 1924992 (N.D. Cal. Apr. 30, 2019) .........................................7, 8

10

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*,
    77 F.3d 364 (11th Cir. 1996) ....................................................................22

12

*Anderson v. Kimberly-Clark Corp.*,
    570 F. App'x 927 (Fed. Cir. 2014) ..............................................................5

13

*Arachnid, Inc. v. Merit Indus., Inc.*,
    939 F.2d 1574 (Fed. Cir. 1991) .................................................................24

15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .....................................................................................5

17

*Balistreri v. Pacifica Police Dept.*,
    901 F.2d 696 (9th Cir. 1988) .....................................................................21

19

*Beech Aircraft Corp. v. EDO Corp.*,
    990 F.2d 1237 (Fed. Cir. 1993) .................................................................24

21

*Bell Atl. v. Twombly*,
    550 U.S. 544, 555 (2007) .............................................................................5

23

*Bladeroom Grp. Ltd. v. Facebook*,
    2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) ............................................10

25

*Chou v. University of Chicago*,
    254 F.3d 1347 (Fed. Cir. 2001) .................................................................23

27

*Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*,
    642 F.3d 849 (9th Cir. 2011) .....................................................................21

5

7

9

11

14

16

18

20

22

24

26

28

Gibson, Dunn &
Crutcher LLP

1
2

# TABLE OF AUTHORITIES
*(continued)*

3

Page(s)

4
5

*Cypress Semiconductor Corp. v. Maxim Integrated Prods., Inc.*,
   236 Cal. App. 4th 243 (Cal. Ct. App. 2015).................................................14

6
7

*Cypress Semiconductor Corp. v. Super. Ct.*,
   163 Cal. App. 4th 575 (Cal. Ct. App. 2008)...................................................6

8

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
   517 F.3d 1284 (Fed. Cir. 2008) .................................................................24

9
10

*Diodes v. Franzen*,
   260 Cal. App. 2d 244 (Ct. App. 1968) .......................................................12

11
12

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
   363 F.3d 1263 (Fed. Cir. 2004) .................................................................20

13
14

*e.Digital Corp. v. iBaby Labs, Inc.*,
   2016 WL 4427209 (N.D. Cal. Aug. 22, 2016)...........................................17

15
16

*Ecojet, Inc. v. Pure Spa Components, Inc.*,
   2017 WL 3485780 (C.D. Cal. Feb. 10, 2017) ...........................................25

17
18

*Eli Lilly & Co. v. Aradigm Corp.*,
   376 F.3d 1352 (Fed. Cir. 2004) .................................................................25

19
20

*Fox v. Ethicon Endo-Surgery*,
   35 Cal. 4th 797 (2005).................................................................................9

21

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
   857 F. Supp. 2d 997 (S.D. Cal. 2012) ................................................6, 7, 9

22
23

*GeoData Sys. Mgmt. v. Am. Pac. Plastic Fabricators*,
   2015 WL 12731920 (C.D. Cal. Sept. 21, 2015)........................................10

24
25

*Hamilton v. Deputy # 1*,
   2014 WL 1289538 (C.D. Cal. Mar. 26, 2014) ..........................................21

26
27

*Hays v. VDF Futureceuticals, Inc.*,
   2016 WL 5660395 (D. Haw. Sept. 28, 2016).........................................6, 8

28

Gibson, Dunn &
Crutcher LLP

1
2

# TABLE OF AUTHORITIES
*(continued)*

3

<u>Page(s)</u>

4
5

*HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.,*
600 F.3d 1347 (Fed. Cir. 2010) ...................................................................22

6
7

*Hor v. Chu,*
699 F.3d 1331 (Fed. Cir. 2012) ...................................................................22

8
9

*Horowitz v. Yishun Chen,*
2018 WL 6219928 (C.D. Cal. May 14, 2018) ............................................17

10

*Human Longevity, Inc. v. J. Craig Venter Inst., Inc.,*
2018 WL 6617633 (S.D. Cal. Dec. 18, 2018) .............................................10

11
12

*Injen Tech. Co. v. AF Dynamic,*
2018 WL 6977432 (C.D. Cal. Oct. 18, 2018) ...............................................5

13
14

*Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co. Ltd.,*
2018 WL 4963129 (C.D. Cal. June 22, 2018)......................... 16, 17, 18, 19

15
16

*Jim Arnold Corp. v. Hydrotech Sys., Inc.,*
109 F.3d 1567 (Fed. Cir. 1997) ...................................................................20

17
18

*Klang v. Pflueger,*
2014 WL 4922401 (C.D. Cal. July 10, 2014) ...........................................6, 9

19
20

*Laitram Corp. v. Rexnord, Inc.,*
939 F.2d 1533 (Fed. Cir. 1991) ...................................................................16

21

*Larson v. Correct Craft, Inc.,*
569 F.3d 1319 (Fed. Cir. 2009) .............................................................23, 25

22
23

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992)......................................................................................23

24
25

*MedioStream, Inc. v. Microsoft Corp.,*
869 F. Supp. 2d 1095 (N.D. Cal. 2012)........................................................16

26
27

*Metricolor LLC v. L'Oreal S.A.,*
791 F. App'x 183 (Fed. Cir. 2019) ..............................................................17

28

Gibson, Dunn & Crutcher LLP

1

## TABLE OF AUTHORITIES
### *(continued)*

2

3
Page(s)

4
5
*Mollett v. Netflix, Inc.*,
  795 F.3d 1062 (9th Cir. 2015) ................................................................. 5

6
7
*Moore v. City of Orange*,
  2017 WL 10518114 (C.D. Cal. Sept. 25, 2017) .................................... 23

8
9
*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ................................................................ 19

10
11
*N. Star Innovations Inc. v. Kingston Tech. Co., Inc.*,
  2018 WL 3155258 (C.D. Cal. May 7, 2018), *adopted by* 2018 WL
  3155708 (C.D. Cal. June 25, 2018) ............................................ 17, 19, 20

12
13
*Pappalardo v. Stevins*,
  746 F. App'x 971 (Fed. Cir. 2018) ....................................................... 22

14
15
*Pellerin v. Honeywell Int'l, Inc.*,
  877 F. Supp. 2d 983 (S.D. Cal. 2012) .............................................. 12, 14

16
17
*Prize Frize, Inc. v. Matrix (U.S.) Inc.*,
  167 F.3d 1261 (9th Cir. 1999) .............................................................. 20

18
*Quest Nutrition, LLC v. Bd. of Supervisors of LSU Agric. & Mech. Coll.*,
  2014 WL 3362061 (C.D. Cal. July 8, 2014) ......................................... 20

19
20
21
*Realvirt, LLC v. Lee*,
  195 F. Supp. 3d 847 (E.D. Va. 2016), *aff'd sub nom. Realvirt, LLC v.
  Iancu*, 734 F. App'x 755 (Fed. Cir. 2018) ............................................. 20

22
23
*Ruling Meng v. Ching–Wu Paul Chu*,
  643 F. App'x 990 (Fed. Cir. 2016) ....................................................... 25

24
25
*S. Cal. Inst. of Law v. TCS Educ. Sys.*,
  2011 WL 1296602 (C.D. Cal. Apr. 5, 2011) ......................................... 13

26
27
*Silvaco Data Sys. v. Intel Corp.*,
  184 Cal. App. 4th 210 (Cal. Ct. App. 2010), *overruled on other
  grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (Cal. 2011) ..... 14

28
*Space Data Corp. v. X*, 2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) ................ 11, 15

Gibson, Dunn & Crutcher LLP

1
2
3

**TABLE OF AUTHORITIES**
*(continued)*

<u>Page(s)</u>

4
5

*Synopsys, Inc. v. ATopTech, Inc.*,
   2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ......................................................... 11, 12

6
7

*TeleSign Corp. v. Twilio, Inc.*,
   2016 WL 4703873 (C.D. Cal. Aug. 3, 2016) ......................................................... 17

8
9

*Town of Chester v. Laroe Estates, Inc.*,
   137 S. Ct. 1645 (2017) ............................................................................................ 24

10

*Vendavo, Inc. v. Price*,
   2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ...................................................... 11

11
12

*Vita-Herb Nutriceuticals, Inc. v. Probiohealth, LLC*,
   2013 WL 1182992 (C.D. Cal. Mar. 20, 2013) .................................................. 23, 25

13
14

*Wang v. Palo Alto Networks*,
   2014 WL 1410346 (N.D. Cal. Apr. 11, 2014) ....................................................... 8, 9

15
16

*Zomm, LLC v. Apple Inc.*,
   391 F. Supp. 3d. 946 (N.D. Cal. 2019) ................................................................ 15

17

*Zora Analytics, LLC v. Sakhamuri*,
   2013 WL 12124612 (S.D. Cal. June 18, 2013) ..................................................... 15

18
19

**Statutes**

20

28 U.S.C. § 2201 ............................................................................................................ 23

21

Cal. Civ. Code § 3426.1(a) ............................................................................................ 13

22

Cal. Civ. Code § 3426.1(b)(1) ....................................................................................... 13

23
24

Cal. Civ. Code § 3426.1(b)(2)(A)–(B) ......................................................................... 13

Cal. Civ. Code § 3426.6 ................................................................................................. 6

25
26

**Other Authorities**

27
28

Apple Watch Series 4 Teardown, iFixIt (Sept. 24, 2018),
   https://www.ifixit.com/Teardown/Apple+Watch+Series+4+Teardown/
   113044 ...................................................................................................................... 18

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
*(continued)*

<u>Page(s)</u>

**Rules**

Fed. R. Civ. Proc. 10(b) ............................................................................................22

Gibson, Dunn &
Crutcher LLP

# TABLE OF ABBREVIATIONS

| Abbreviation | Document |
|---|---|
| Apple | Defendant Apple Inc. |
| Masimo | Plaintiff Masimo Corporation |
| Cercacor | Plaintiff Cercacor Laboratories, Inc. |
| Plaintiffs | Masimo and Cercacor, collectively |
| Complaint | Plaintiffs' Original Complaint filed before this Court |
| Accused Products | Apple Watch Series 4 and 5 devices |
| '265 patent | U.S. Patent No. 10,258,265 |
| '266 patent | U.S. Patent No. 10,258,266 |
| '628 patent | U.S. Patent No. 10,292,628 |
| '708 patent | U.S. Patent No. 10,299,708 |
| '190 patent | U.S. Patent No. 10,376,190 |
| '191 patent | U.S. Patent No. 10,376,191 |
| '695 patent | U.S. Patent No. 10,470,695 |
| '994 patent | U.S. Patent No. 6,771,994 |
| '703 patent | U.S. Patent No. 8,457,703 |
| '776 patent | U.S. Patent No. 10,433,776 |
| Asserted Patents | The '265, '266, '628, '708, '190, '191, '695, '994, '703, and '776 patents, collectively |
| '052 patent | U.S. Patent No. 10,078,052 |
| '670 patent | U.S. Patent No. 10,247,670 |
| '095 patent | U.S. Patent No. 9,952,095 |

Gibson, Dunn &
Crutcher LLP

| '754 patent | U.S. Patent No. 10,219,754 |
|---|---|
| '671 patent | U.S. Patent No. 10,524,671 |
| Apple Patents | The '052, '670, '095, '754, and '671 patents, collectively |
| '832 application | U.S. Patent Application No. 15/667,832 |
| '507 application | U.S. Patent Application No. 15/960,507 |
| Apple Applications | The '832 and '507 applications, collectively |
| '912 publication | U.S. Patent Application Publication No. 2019/0072912 |
| '806 publication | U.S. Patent Application Publication No. 2019/0090806 |
| '726 publication | U.S. Patent Publication No. 2016/0061726 |
| CUTSA | The California Uniform Trade Secret Act |
| COA | Cause of Action |
| RJN | Defendant Apple's Request for Judicial Notice in Support of Defendant's Motion to Dismiss (filed concurrently herewith) |

# I.   **INTRODUCTION**

Plaintiffs allege almost twenty claims in an effort to capitalize on the success of Apple's Watch.  Notwithstanding their scattershot approach, not one of Plaintiffs' claims is viable—Plaintiffs' trade secret allegations are not timely under the relevant statute of limitations, nor do Plaintiffs plead key requirements of every cause of action. Accordingly, the Complaint is facially deficient and should be dismissed.

The Complaint follows a false narrative that Apple somehow took Plaintiffs' trade secrets as long as six years ago.  But the face of the Complaint shows that even if Plaintiffs pleaded the elements of a trade secrets claim—they do not—the claim would be time-barred.  The statute of limitations for a trade secrets claim is three years, yet Plaintiffs filed this action *six years* after an unwarranted warning to Apple of a purported "targeted effort to obtain information and expertise" from Plaintiffs.  Further, Plaintiffs waited *three and a half* years after the first patent application allegedly containing Plaintiffs' alleged trade secrets was published to bring this case.  Plaintiffs offer no excuse for the delay, and precedent dictates that the Court should dismiss the trade secrets claim.  The trade secrets claim fails for the equally important reason that Plaintiffs do not allege any trade secrets with specificity sufficient to permit Apple or this Court to understand the bounds of their claim.  Plaintiffs plead an open-ended list of broad categories of information, which is insufficient as a matter of well-established law.  Separately, Plaintiffs fail to allege requisite knowledge.  In sum, the trade secrets claim is fatally vague and should be dismissed.

The patent infringement COAs (Nos. 1–10) are also defective for not adequately comparing the patent claims to the Accused Products.  While they point to two of Apple's patent publications and allege that these publications "describe" several limitations from the claims of each of the Asserted Patents, these COAs fail to link the statements in these patent publications to the specific functionality of the Accused Products and also fail to link the statements in these publications to the specific limitations of the Asserted Patents.  Indeed, for the majority of the claim limitations, the

Gibson, Dunn & Crutcher LLP

Complaint merely recites the claim language for that limitation, alleging without factual support that the Accused Products include that limitation. These COAs, therefore, fail to plausibly allege that the Accused Products practice each limitation of at least one asserted claim, and should accordingly be dismissed.

COA No. 17 (framed as a declaratory judgment) likewise contains fatal flaws. Patent ownership is a state law issue but the Complaint does not plead any state law cause of action or theory. COA No. 17 also seeks relief that this Court cannot grant— first, by seeking exclusive ownership of patent applications that this Court has no ability to grant, and second, by requesting that this Court order specific performance which is not permitted in a declaratory judgment claim. Lastly, this COA improperly pleads a multitude of claims without providing sufficient explanation for Apple to know which allegations apply to which claim. As a result, this COA should also be dismissed.

Finally, the correction of inventorship COAs (Nos. 12–16) fare no better. In these COAs, Plaintiffs allege that three employees of Masimo, Cercacor, or both—the Complaint is contradictory on which entity actually employs these individuals—should be listed as inventors on five of Apple's patents. Critically, however, Plaintiffs fail to allege that they have a concrete ownership interest in these patents, and thus have not established that they have standing to bring these claims on behalf of their employees. These COAs must therefore also be dismissed.

## II.     BACKGROUND

### A.     Plaintiffs Allege an Effort to Misappropriate Their Confidential Information More Than Six Years before Filing This Action.

According to the Complaint, in 2013, Apple contacted Masimo, entered into a confidentiality agreement with Masimo, and had "confidential discussions" with Masimo's management, but then "systematically recruited . . . key Masimo personnel," including O'Reilly, Masimo's former Chief Medical Officer, and Lamego, Cercacor's former CTO. Compl. ¶¶ 19–21. "O'Reilly was privy to extremely sensitive information . . . about mobile medical products and applications, wellness applications,

clinical data gathering and analytics, and other technology of Masimo." *Id*. ¶ 20. Lamego had access to "highly confidential technical information," "was taught about the keys to effective non-invasive monitoring," and was "exposed to guarded secrets regarding mobile medical products"—in all of which he allegedly had no involvement prior to Masimo. *Id*. ¶ 21.

In 2014, Plaintiffs claim to have become suspicious of "a targeted effort to obtain information and expertise from Masimo and Cercacor." *Id*. ¶ 22.   Indeed, Plaintiffs reference, but fail to attach to their Complaint, their January 24, 2014 letter "warn[ing] Apple about respecting their rights." *Id*.; RJN, Ex. A.[1]   Plaintiffs stated their concern that "Apple [was] attempting to gain access to, or at least the benefit of, Cercacor and Masimo's trade secrets," and that "Apple w[ould] employ Mr. Lamego in an area that . . . involve[d] healthcare technology, including mobile health applications and the measurement of physiological information." RJN, Ex. A, at 1–2. Yet in the intervening six years, even after it was publicly known that Mr. Lamego was working for Apple in the wearables space, Plaintiffs did nothing.

### B.    Plaintiffs' Alleged Secrets Were Published in a Patent Application More Than Three Years before Plaintiffs Filed This Action.

By claiming that Apple purportedly "used and disclosed Plaintiffs' Confidential Information at least by filing patent applications containing Masimo's Confidential Information," Plaintiffs concede that they were on notice of the purported disclosure more than three years before filing the present action. Compl. ¶ 185; *id*. ¶ 187. Plaintiffs claim that "[s]hortly after joining Apple in January 2014, Lamego pursued on behalf of Apple numerous patent applications . . . on technologies he was intimately involved in at Plaintiffs." *Id*. ¶¶ 21–23.   One of those patent applications names Lamego as an inventor and was published with the title "Reflective Surface Treatments For Optical Sensors" on March 3, 2016. *See id*. ¶ 24 (citing U.S. Patent Application No. 14/740,196,

---

[1]  As set forth in Apple's concurrently-filed Request for Judicial Notice, Apple respectfully requests that the Court take judicial notice of RJN Exhibits A–D.

published as the '726 publication and issued as the '052 patent, which is the subject of the twelfth COA); *id.*, Ex. 13 at 850 (the '052 patent, Prior Publication Data); RJN, Ex. B ('726 publication, Pub. Date). In other words, a patent application that (i) published Plaintiffs' purported secrets, and (ii) named as an inventor the person who Plaintiffs suspected had misappropriated those secrets, was publicly available more than three years before Plaintiffs filed this action. Nonetheless, in the intervening three years, Plaintiffs did nothing.

**C.   Plaintiffs Filed This Case with No Explanation for the Delay, No Plausible Description of Alleged Secrets, and No Explanation as to How Apple Was Supposed to Recognize Any Impropriety.**

The Complaint ignores Plaintiffs' delay in filing suit. Plaintiffs offer no explanation for their failures to (1) follow up on their 2014 warning to Apple, or (2) sue after at least one application including their alleged secrets published on March 3, 2016. *See* Compl. ¶ 24 & Ex. 13; RJN, Ex. B.

Further, despite alleging that their trade secrets were disclosed in published patent filings, Plaintiffs do not specify those trade secrets at all. Instead, Plaintiffs allege open-ended categories of information, "including, but not limited to, Plaintiffs' business plans, know-how, technical information, technical data, designs, manufacturing techniques and other business information." *Id.* ¶ 181.

The misappropriation allegations are also lacking. As to acquisition, while Plaintiffs allege that "Lamego knew or had reason to know" of his alleged "duty . . . to keep Plaintiffs' Confidential Information secret," *id.* ¶ 186, Plaintiffs do not claim that Apple knew what Lamego's confidentiality agreement supposedly covered when it supposedly acquired the alleged trade secrets. As for use and disclosure, Plaintiffs allege that Apple "disclosed Plaintiffs' Confidential Information, without Plaintiffs' consent, in published patent filings," *id.* ¶ 187. But again, Plaintiffs allege no facts plausibly suggesting that Apple knew or should have known which specific information came

1   from Plaintiffs or that the information purportedly was confidential under Lamego's

2   "employer-employee" or "fiduciary relationship" with either Plaintiff (*id.*, ¶ 187).

3   **D.   Plaintiffs' Claims for Patent Infringement, Correction of Inventorship, and Declaratory Judgment Also Lack Basic Facts.**

4

5   Plaintiffs' Complaint also asserts patent infringement of ten Masimo patents

6   without sufficiently comparing the claims of those patents to the actual Accused

7   Products, even though Plaintiffs could have freely acquired an Apple Watch to perform

8   a technical analysis.  Further, the Complaint asks to change inventorship of several

9   Apple patents to add persons allegedly affiliated with Plaintiffs and seeks a declaratory

10   judgment of ownership without meeting all requirements for pleading those causes.

11   ### III.   LEGAL STANDARD

12   A complaint must contain "sufficient factual matter, accepted as true, to state a

13   claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

14   (internal quotation marks omitted); *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir.

15   2015).  For a claim to be facially plausible, a plaintiff must plead "factual content that

16   allows the court to draw the reasonable inference that the defendant is liable for the

17   misconduct alleged." *Iqbal*, 556 U.S. at 678.  Dismissal is warranted where a complaint

18   fails to "raise a right to relief above the speculative level." *Bell Atl. v. Twombly*, 550

19   U.S. 544, 555 (2007).   "Threadbare recitals of the elements of a cause of action,

20   supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

21   In patent cases, federal courts have applied *Twombly* and *Iqbal* rigorously.  *See,*

22   *e.g.*, *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)

23   (quoting *Iqbal*, 556 U.S. at 679).  This Court has applied these principles to dismiss

24   cases where complaints, like this one, failed to allege required elements.  *See, e.g.*, *Injen*

25   *Tech. Co. v. AF Dynamic*, 2018 WL 6977432, at *2 (C.D. Cal. Oct. 18, 2018).

26

27

28

Gibson, Dunn & Crutcher LLP

## IV.   ARGUMENT

### A.   The Eleventh Cause of Action for Trade Secret Misappropriation Should Be Dismissed.

#### 1.   The Claim Is Time-Barred.

A CUTSA claim "must be brought within three years after the misappropriation is discovered or *by the exercise of reasonable diligence should have been discovered*." Cal. Civ. Code § 3426.6 (emphasis added).   Under California's discovery rule, "the statute of limitations begins to run when a plaintiff discovers, or has reason to discover, the cause of action." *Klang v. Pflueger*, 2014 WL 4922401, at *1–2, 5–6 (C.D. Cal. July 10, 2014) (dismissing CUTSA claim where patent applications allegedly disclosing the invention were published at least five years prior to filing).   Suspicion starts the clock: "[w]hen there is reason to suspect that a trade secret has been misappropriated, and a reasonable investigation would produce facts sufficient to confirm this suspicion (and justify bringing suit), the limitations period begins, even though the plaintiff has not conducted such an investigation."   *Hays v. VDF Futureceuticals, Inc.*, 2016 WL 5660395, at *3 (D. Haw. Sept. 28, 2016) (applying California limitations law and granting a motion to dismiss because "suspicion of wrongdoing will trigger the statute of limitations") (quoting *Gabriel Techs. Corp. v. Qualcomm Inc*., 857 F. Supp. 2d 997, 1003 (S.D. Cal. 2012)); *Cypress Semiconductor Corp. v. Super. Ct.*, 163 Cal. App. 4th 575, 587 (Cal. Ct. App. 2008) ("[M]isappropriation that triggers . . . the statute is that which the plaintiff suspects, not that which may or may not actually exist.").

#### a)   The Limitations Period on the CUTSA Claim Began More Than Three Years Ago.

The Complaint demonstrates that Plaintiffs were suspicious that Apple was misappropriating their alleged secrets in 2014.   Even if Plaintiffs tried to assert ignorance (they do not), "ignorance . . . does not toll the running of the statute." *Klang*, 2014 WL 4922401, at *6 (internal quotation marks omitted); *see Gabriel Techs*., 857 F. Supp. 2d at 1003 ("So long as a suspicion exists, it is clear that the plaintiff must go find the facts . . . .").   Once their suspicions were aroused, Plaintiffs had "a duty to investigate

Gibson, Dunn & Crutcher LLP

further" and should be "charged with knowledge of matters which would have been revealed by such an investigation." *Alamar Biosciences Inc. v. Difco Labs. Inc.*, 1996 WL 648286, at *3, *8 (citation omitted) (E.D. Cal. Feb. 27, 1996) (granting summary judgment where it was "undisputed that [Intervention-claimant] strongly suspected [former employee] of misappropriating its trade secrets, but did nothing").

The Complaint alleges that after Apple and Masimo met in 2013 to discuss a "potential collaboration," "Apple systematically recruited . . . key Masimo personnel, such as Marcelo Lamego," who "join[ed] Apple in January 2014." Compl. ¶¶ 19, 21, 23. Apple allegedly engaged in a "targeted effort to obtain information and expertise" from Plaintiffs, such that they were compelled to "warn[] Apple about respecting their rights." *Id*. ¶ 22. Moreover, "Apple announced the first version of its watch [an ostensibly competing technology] in September 2014." *Id*. ¶ 28. These alleged facts alone demonstrate that Plaintiffs suspected Apple of misappropriation in January 2014, which triggered their obligation to investigate and, consequently, the limitations period. *Cf. Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 1924992, at *13–14 (N.D. Cal. Apr. 30, 2019) (plaintiff on inquiry notice of claim where competitor failed to return confidential information under NDA).

The judicially noticeable "warn[ing]" letter—a key document referenced in but not attached to the Complaint, *see* Compl. ¶ 22—is dated January 24, 2014, and confirms Plaintiffs' suspicions. RJN, Ex. A. The letter states that "[i]t is difficult to imagine *any reason* for th[e] sequence of events *other than Apple is attempting to gain access to, or at least the benefit of, Cercacor and Masimo's trade secrets*." *Id*. (emphasis added); *cf. Gabriel Techs.*, 857 F. Supp. 2d at 1004–06 (email between plaintiff's employees saying that defendant committed a "direct rip-off" of plaintiff's trade secret "established that [plaintiff] had a suspicion of wrong doing which triggered the statute of limitations").

Because Plaintiffs were "concerned" and "suspicious" that Lamego "would take proprietary information with him," and it was "common knowledge" in 2014 that Apple was pursuing similar technology, *Alamar*, 1996 WL 648286, at *4—i.e., when it

"announced the first version of its watch in September 2014," Compl. ¶ 28—there is no question that Plaintiffs were on notice of their claim by then.

The statute was again triggered in 2016. The "publication of patents (and now patent applications) must be deemed, as a matter of law, to place those practicing in the same field and prosecuting their own patent applications in the same field on full notice of all of the contents of the publication." *Wang v. Palo Alto Networks, Inc.*, 2014 WL 1410346, at *6 (N.D. Cal. Apr. 11, 2014); *see Alta Devices*, 2019 WL 1924992, at *14 (holding reliance on *Wang* (a summary judgment case) proper on motion to dismiss despite different procedural posture, because the "Court takes as true . . . the allegations in [the] complaint" for a motion to dismiss). Courts have routinely found that patent applications and patents trigger the statute of limitations for sophisticated parties like Plaintiffs, especially when they are trying to "commercialize [their] own technologies" and where the application "revealed the alleged trade secrets sued on." *Wang*, 2014 WL 1410346, at *6; *Hays*, 2016 WL 5660395, at *5 (dismissing analogous Hawaii trade secrets claim, and holding that "statute of limitations . . . began to run when the patents were issued" because they sufficiently described the methods at issue for Plaintiff "at least to suspect a factual basis for [the] elements" of his claim (internal quotation marks omitted)).

Here, the Complaint demonstrates that Plaintiffs knew or should have known about Apple's U.S. Patent Application No. 14/740,196, which was published as the '726 publication on March 3, 2016 and named Lamego as an inventor. *See* Compl., Ex. 13, at 1 (citing the '726 publication). Again, the Complaint alleges that "[s]hortly after joining Apple in January 2014, Lamego pursued on behalf of Apple numerous patent applications . . . on technologies he was intimately involved in at Plaintiffs." *Id.* ¶¶ 21–23. The Complaint also alleges that the patent that issued from the published application—the '052 patent—"claims subject matter that Lamego obtained from discussions with Masimo or Cercacor." Compl. ¶ 194. But any alleged Masimo "Confidential Information" contained in the '052 patent was disclosed to the public

1  when the '726 publication was published on March 3, 2016.  *See id*., Ex. 13; RJN, Ex.

2  B.  The '726 publication discloses all of the same text and drawings—and thus the same

3  concepts—as the '052 patent.  *Compare* Compl., Ex. 13, at 850–67, *with* RJN, Ex. B, at

4  13–30.  Moreover, the '726 publication contains all of the claims in the '052 patent

5  except claims 15–17, which nonetheless describe features that are still contained in the

6  '726 publication.  *Compare* Compl., Ex. 13, at 867, *with* RJN, Ex. B, at 30–31.  In short,

7  the Complaint demonstrates that the '726 publication was "publicly available to all" and

8  "in the same field as" Plaintiffs' own applications and technology.  *Wang*, 2014 WL

9  1410346, at *3.  Thus, by March 3, 2016, Plaintiffs were on notice of their trade secrets

10  claim, and so the limitations period (alternatively) commenced at that time.  *See id.* at

11  *5 (CUTSA claim time-barred where plaintiff "alleged that [defendants'] patent is

12  'based at least in part on (if not completely based on) [plaintiff's] trade secrets'" (citation

13  omitted)).

14               **b)       Plaintiffs Have Not Pleaded an Excuse for Their Delay.**

15        Plaintiffs allege that Apple used their confidential information when Lamego

16  caused it to file patent applications relating to their technologies in 2014.  Compl. ¶¶ 23–

17  27.  Therefore, the "complaint shows on its face that [Plaintiffs'] claim would be barred

18  without the benefit of the discovery rule;" as a result, Plaintiffs have the burden of

19  proving the facts necessary to toll the statute.  *Klang*, 2014 WL 4922401, at *6; *see*

20  *Gabriel Techs*., 857 F. Supp. 2d at 1003.  To do so, a plaintiff "must specifically plead

21  facts to show (1) the time and manner of discovery and (2) the inability to have made

22  earlier discovery despite reasonable diligence."  *Klang*, 2014 WL 4922401, at *6 (citing

23  *Fox v. Ethicon Endo-Surgery*, 35 Cal. 4th 797, 808 (2005)).  "[T]he burden [is] on the

24  plaintiff to 'show diligence'; 'conclusory allegations'" are insufficient.  *Fox*, 35 Cal. 4th

25  at 808 (citation omitted).  Here, Plaintiffs make no attempt to explain why they could

26  not have discovered the alleged misappropriation earlier.  Any explanation would not

27  toll the statute because an entity that, like Masimo, is "actively practicing in the field

28

and prosecuting [its] own patent application must be deemed to be on constructive notice of published patent applications in the same field." *Wang*, 2014 WL 1410346, at *6.

A plaintiff's claim will be barred where (1) it suspected defendant of misappropriation, (2) a term search would have revealed the subject patent application, and (3) it "had done patent searches on the technology of its competitors before." *Alamar*, 1996 WL 648286, at *5–6. Here, the Complaint alleges Massimo "invested heavily in developing . . . measurement technologies," Compl. ¶ 12, and "received numerous U.S. patents for many of its inventions," *id*. ¶ 13. In addition to these admissions, Masimo disclosed to the SEC in 2015 that it had: (1) "468 issued patents and 243 pending applications" worldwide, RJN, Ex. C, at 59; (2) a "policy . . . to renew its patents," *id*. at 124; and (3) ostensibly "[s]earch[ed] for existing intellectual property rights," including competitors' patent filings, *id*. at 66. "In these circumstances, a reasonable plaintiff is required to take the elementary step of checking all readily available patent applications" to avoid a limitations bar. *Alamar*, 1996 WL 648286, at *5–6. Plaintiffs did not do so; thus, their claim is barred.

**2.      Plaintiffs' CUTSA Claim Should Be Dismissed for Failure to State a Claim.**

To state a claim under CUTSA, a plaintiff must allege: (1) the existence and ownership of a trade secret, (2) misappropriation of the trade secret, and (3) that defendant's actions damaged the plaintiff. *Bladeroom Grp. Ltd. v. Facebook*, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015). The Eleventh COA fails this test.

**a)      Plaintiffs Do Not Sufficiently Allege Any Trade Secrets.**

It is well-settled that a Plaintiff alleging misappropriation under CUTSA must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade . . . and to permit the defendant to ascertain at least the boundaries within which the secret lies." *GeoData Sys. Mgmt. v. Am. Pac. Plastic Fabricators*, 2015 WL 12731920, at *11 (C.D. Cal. Sept. 21, 2015) (internal quotation marks omitted). "[A]llegations of broad categories relating to

business or technology are not adequate to support a trade secrets claim." *Human Longevity, Inc. v. J. Craig Venter Inst., Inc.*, 2018 WL 6617633, at *4 (S.D. Cal. Dec. 18, 2018); *see also Bladeroom*, 2015 WL 8028294, at *3 ("generic list of categories of various types of information" was "vague and conclusory" and insufficient). A CUTSA claim should be dismissed where, as here, plaintiffs simply plead nebulous categories of generalized information as trade secrets. *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (providing merely "a high-level overview of . . . purported trade secrets" does "not satisfy the Rule 8 pleading requirements"). Plaintiffs' pleading deficiency is even more egregious here because they are alleging that the alleged secrets were purportedly published in patent applications and patents.

*Vendavo, Inc. v. Price f(x) AG* supports dismissal here. *See* 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018). There, the plaintiff described the alleged trade secrets as:

> source code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives, 'negative knowhow' learned through the course of research and development, and other information related to the development of [defendant's] price-optimization software, including ideas and plans for product enhancements.

*Id*. at *3. In holding that plaintiff had "not pleaded sufficient facts to show plausible misappropriation," the court explained that the alleged trade secrets were "set out . . . in broad, categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets [plaintiff] has a basis to believe actually were misappropriated." *Id.* at *4.

Likewise, the plaintiff in *Synopsys, Inc. v. ATopTech, Inc.* described the relevant trade secrets as "relate[d] to [the plaintiffs'] products," including "proprietary input and output formats, scripts, and technical product documentation, which generally are not publicly known." 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013). The court dismissed the trade secrets claim, finding this description "too sweeping and vague." *Id*.

Here, Plaintiffs allege that they own "trade secrets including, but not limited to, Plaintiffs' business plans, know-how, technical information, technical data, designs,

manufacturing techniques and other business information"—all seemingly related to "noninvasive patient monitoring." Compl. ¶¶ 181, 13, 16. This nonexclusive laundry list of broad categories of information fails to put Apple on notice of "where trade secret protection begins and ends." *Synopsys*, 2013 WL 5770542, at *6. Indeed, the use of the phrase "including but not limited to" renders the scope of the alleged trade secrets unbounded on its face. In addition, because Plaintiffs allege that their trade secrets encompass "manufacturing techniques," Compl. ¶ 181, they "*must* not only identify the end product manufactured, but also supply sufficient data concerning the process." *Diodes v. Franzen*, 260 Cal. App. 2d 244, 253 (Ct. App. 1968) (emphasis added).[2] The Complaint plainly does not satisfy these standards.

Further compounding the deficiency of the Complaint is the fact that it does not delineate which trade secrets are owned by which Plaintiff. Compl. ¶ 181. This deprives Apple of notice of what *each* Plaintiff claims is a trade secret, which in turn affects Apple's purported obligations with respect to any relevant information. *See infra* § IV.A.2.b). Adding to the confusion is the inconsistent allegation that Apple misused "*Plaintiffs'* Confidential Information at least by filing patent applications containing *Masimo's* Confidential Information." *Id*. ¶ 185 (emphasis added). Because the applications are only alleged to contain *Masimo's* trade secrets, this begs the question of what Cercacor's trade secrets are and how they even come into play.

At bottom, Plaintiffs have not described the trade secrets with sufficient particularity and their misappropriation claim must be dismissed.

> **b)    The Complaint Fails to Sufficiently Allege Misappropriation by "Improper Means."**

Plaintiffs' theory of misappropriation—alleged on information and belief—is that "Defendant acquired, used and disclosed Plaintiffs' Confidential Information at least by filing patent applications containing Masimo's Confidential Information, without

---

[2] *Diodes* is "widely adopted by federal courts." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012).

Plaintiffs' express or implied consent."  Compl. ¶ 185.

### (1)  Plaintiffs Fail to Allege Improper Acquisition.

To allege misappropriation by acquisition, Plaintiffs must allege that Apple acquired their trade secret(s) and knew or had reason to know that the trade secret was acquired by "improper means."  Cal. Civ. Code § 3426.1(b)(1).[3]  To allege misappropriation by use or disclosure, Plaintiffs must allege that Apple used or disclosed their alleged trade secret without consent and that Apple "[u]sed improper means" to acquire the trade secret, or knew or should have known that its knowledge "was:  (i) Derived from . . . a person who had utilized improper means to acquire it; (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy . . .; or (iii) Derived from . . . a person who owed a duty to the person seeking relief to maintain its secrecy." *Id.* § 3426.1(b)(2)(A)–(B).

With respect to a theory of improper acquisition, Plaintiffs do not allege facts to plausibly claim that Apple knew or had reason to know that any purported acquisition of Plaintiffs' alleged trade secrets was by *improper means*.  *S. Cal. Inst. of Law v. TCS Educ. Sys.*, 2011 WL 1296602, at *7 (C.D. Cal. Apr. 5, 2011) ("Alleging mere possession of trade secrets is not enough." (internal alteration and quotation marks omitted)).  In particular, they do not allege facts plausibly establishing knowledge by Apple that either Lamego or O'Reilly had an obligation to maintain confidentiality of specific information purportedly shared with Apple, or that Apple independently knew that such information was confidential.[4]  Compl. ¶¶ 18–22.

---

[3] "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."  Cal. Civ. Code § 3426.1(a).

[4] The judicially noticeable "warning" letter only underscores that Plaintiffs cannot allege that Apple knew or should have known of the scope of their alleged trade secrets because it asserts broad categories of information that Plaintiffs fail to distinguish from information generally known in the field—e.g., "business plans, . . . strategies, technical data, . . . designs and formulas, discoveries, processes, manufacturing techniques, know-how, improvements, ideas[,] . . . inventions, trade secrets and other business information."  RJN, Ex. A, at 3.

Instead, Plaintiffs allege that "*Lamego* knew or had reason to know" of his supposed "duty . . . to keep Plaintiffs' Confidential Information secret," and that he disclosed it to Apple without Plaintiffs' consent. *Id.* ¶ 186 (emphasis added). Thus, the best Plaintiffs can plausibly assert is that Apple came into possession of information that *Lamego* knew or should have known was secret. This fails to allege a plausible improper acquisition claim against Apple, however, because "passive reception" of trade secrets is not "acquisition" under the statute. *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 223 (Cal. Ct. App. 2010) ("The choice of that term ["acquire"] over "receive" suggests that inadvertently coming into possession of a trade secret will not constitute acquisition."), *overruled on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (Cal. 2011).

Nor is the mere hiring of an employee who is purportedly exposed to Plaintiffs' trade secrets sufficient to plausibly allege a trade secrets claim. *See* Compl. ¶¶ 20–21. To the contrary, California has squarely rejected the inevitable disclosure doctrine, thereby forbidding a trade secret owner from preventing a former employee from working for a competitor "without proof of the employee's actual or threatened use of trade secrets." *Cypress Semiconductor Corp. v. Maxim Integrated Prods., Inc.*, 236 Cal. App. 4th 243, 264–65 (Cal. Ct. App. 2015). Plaintiffs therefore have failed to allege that Apple was on notice of which information, if any, was confidential such that it would have been on notice if it had *received* such information improperly. *Pellerin*, 877 F. Supp. 2d at 989 (mere possession of trade secrets is not enough).

Plaintiffs also allege that in 2013, Apple and Masimo entered into a confidentiality agreement to discuss a potential collaboration and thereafter discussed Masimo's technology. Compl. ¶ 19. But the Complaint does not allege that Apple breached that agreement. *Id.* In fact, the Complaint says nothing about what the agreement covered, whether Apple actually received any specific confidential information, and if so, what Apple was entitled to do with it. *Id.* (vaguely asserting that "[t]he meetings included confidential discussions of Masimo's technology"). Nor does it attach the agreement

itself.  Plaintiffs have thus failed to plead the material terms of the actual contract between Apple and Masimo; in turn, that contract cannot serve as a basis for Apple's supposed knowledge that Plaintiffs' unspecified information was confidential or prohibited from being acquired, used, or disclosed.  *Zora Analytics, LLC v. Sakhamuri*, 2013 WL 12124612, at *5 (S.D. Cal. June 18, 2013) (dismissing claim where plaintiff "failed to adequately plead the terms of the NDA," and noting that "[d]etermining whether [defendant] has violated a NDA . . . is difficult without at least alleging the NDA's material terms"); *Space Data*, 2017 WL 5013363, at *2 ("Space Data acknowledges that Google received the alleged trade secrets pursuant to the NDA. Accordingly, Space Data must plead facts showing that Google had a duty not to use the information in the way alleged.").

What is more, the Complaint does not even plead that Apple had a confidentiality agreement with Cercacor.  Therefore, the only plausible inference to be drawn from these omissions is that there was no breach—i.e., that any supposed acquisition, use, or disclosure of information by Apple was permitted by any agreement that did exist.  *Cf. Zomm, LLC v. Apple Inc.*, 391 F. Supp. 3d 946, 952 (N.D. Cal. 2019) (dismissing breach of contract claims where confidentiality provisions allowed for use of information that could be gained from reverse engineering or prior patents).

### *(2)* Plaintiffs Fail to Allege Apple's "Improper" Disclosure or Use.

Plaintiffs also fail to plausibly allege Apple's improper *use* or *disclosure* of their alleged trade secrets.  Again, Plaintiffs vaguely assert, on information and belief, that Apple "used and disclosed Plaintiffs' Confidential Information at least by filing patent applications containing Masimo's Confidential Information, without Plaintiffs' express or implied consent."  Compl. ¶ 185.  Plaintiffs also speculate, upon information and belief, that Apple "knew or had reason to know that the knowledge of Plaintiffs' Confidential Information came from Plaintiffs, and that Lamego had previously acquired Plaintiffs' Confidential Information" under "a duty . . .  to keep Plaintiffs' Confidential

Information secret." *Id.* ¶ 187.  But again, Plaintiffs do not allege any facts suggesting that Apple knew or should have known (1) what specific information purportedly was protected as confidential by Lamego's "employer-employee" or "fiduciary relationship" with either Plaintiff (*id.*), or (2) what specific information even came from Plaintiffs. These conclusory allegations—bereft of any factual allegations as to *how* Apple knew what *specific* confidential information Lamego received from Plaintiffs or what his duties were with regard to the handling of that information—do not plausibly allege that Apple knew or had reason to know that Lamego was using any alleged trade secrets, or that such use was *unauthorized*. *See MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012) (dismissing trade secrets claims because plaintiff did not sufficiently allege that defendant, which had received technology from a third party that had been under contract with plaintiff, knew that the third party was not authorized to provide that technology to defendant).  For the same reasons discussed in the acquisition section above, any purported agreement between Apple and Masimo cannot serve as a basis for improper use or disclosure.

In sum, the Eleventh COA must be dismissed because it fails to plausibly plead that Apple improperly acquired, used, or disclosed any trade secrets owned by Plaintiff.

## B.   The First through Tenth Causes of Action Should Be Dismissed because They Do Not Plausibly Plead Patent Infringement.

The patent infringement COAs fail to plead sufficient facts to show that the Accused Products include every limitation of at least one claim of the Asserted Patents. Instead, Plaintiffs attempt to map several limitations from each asserted claim to two unrelated patent application publications, but do not even sufficiently allege that *those* publications include all of the claim limitations as required for infringement.  *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).  Merely reciting claim language in the complaint is not enough under *Twombly* and *Iqbal*.  *Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co. Ltd.*, 2018 WL 4963129, at *5–6 (C.D. Cal. June 22, 2018). Rather, this Court and other courts regularly dismiss complaints that fail to allege facts

sufficient to allow a reasonable inference that *each* limitation of at least one asserted claim is met.  *See, e.g.*, *id.*; *Horowitz v. Yishun Chen*, 2018 WL 6219928, at *3 (C.D. Cal. May 14, 2018); *TeleSign Corp. v. Twilio, Inc.*, 2016 WL 4703873, at *3–4 (C.D. Cal. Aug. 3, 2016); *see also e.Digital Corp. v. iBaby Labs, Inc.*, 2016 WL 4427209, at *5 (N.D. Cal. Aug. 22, 2016) (dismissing patent infringement claim for failure to "map" *each* claim limitation).

Moreover, it is imperative that the complaint actually *explain* how the limitation is purportedly met.  This Court has held that bare facts with no connective reasoning, such as diagrams inserted into a complaint without explanation, are insufficient.  *See, e.g.*, *N. Star Innovations Inc. v. Kingston Tech. Co., Inc.*, 2018 WL 3155258, at *2–5 (C.D. Cal. May 7, 2018), *adopted by* 2018 WL 3155708 (C.D. Cal. June 25, 2018); *Metricolor LLC v. L'Oreal S.A.*, 791 F. App'x 183, 188 (Fed. Cir. 2019) (affirming dismissal of a patent infringement claim that relied on images of the accused products without explaining how all claim limitations were met; vacating on other grounds).

Here, the First through Tenth COAs fail to allege facts sufficient to allow a reasonable inference that the Accused Products meet every claim limitation of the Asserted Patents.  Specifically, the first eight COAs map claim limitations to two Apple patent application publications instead of the Accused Products, but fail to explain how these publications show that *the Accused Products* infringe these claim limitations.  The Ninth and Tenth COAs likewise fail to explain where several claim limitations are found in the Accused Products.

The First through Eighth COAs merely recite claim language for the majority of the asserted limitations and allege without factual support that the Accused Products include the recited limitations "as described" in the '912 and '806 publications.  *See* Compl. ¶¶ 45, 58, 71, 73, 86, 101, 114, 127, 141.  These allegations suffer from at least two fatal flaws.  First, the Complaint does not demonstrate that the '912 and '806 publications evidence the actual design or operation of the Accused Products, particularly given that the Complaint states that these publications purportedly describe

only "*some*"—but not all—"of the technology" of the Accused Products. *Id.* ¶¶ 45, 141 (emphasis added). Thus, even if the claim limitations may be described in the '912 and '806 publications, the first eight COAs fail to allege that these limitations are included in the Accused Products. *See, e.g.*, *id.* ¶ 45. Notably, the Accused Products are publicly sold in every major consumer market, and Plaintiffs could have examined an actual unit and alleged how each claimed limitation maps to the Accused Products.[5] Without such allegations, these COAs fall well short of the *Twombly* and *Iqbal* pleading standard.

Second, the First through Eighth COAs fail to even demonstrate that the '912 and '806 publications include the claim limitations. These COAs rely on a figure from either the '912 publication or the '806 publication (depending on the asserted patent), but provide no explanation of how each figure discloses any of the claim limitations.[6] *Cf. Int'l Techs.*, 2018 WL 4963129, at *5. Thus, the First COA merely recites several limitations from claim 1 of the '265 patent and alleges that these limitations are "described" in Figure 4C and the corresponding text of the '912 publication. Compl. ¶ 45. The First COA, however, provides no explanation of how this figure or text supposedly describe these recited limitations and no identification of *which* part of this figure corresponds to which limitation. The subsequent seven COAs likewise merely recite claim language and point to a figure and corresponding text from the '912 or '806 publications, but fail to link these figures or text to the asserted claims. *See id.* ¶¶ 59, 73, 86–87, 101, 114, 127, 141.

The Ninth and Tenth COAs suffer from similar defects. Both of these COAs quote text from an Apple website that describes certain functionality of Apple Watch products in broad, consumer-focused terms. These COAs then again merely recite several limitations from claim 1 of the '703 patent and claim 1 of the '776 patent,

---

[5] Purported teardowns of the Accused Products have been readily available on the Internet for years. *See, e.g.*, Apple Watch Series 4 Teardown, iFixIt (Sept. 24, 2018), https://www.ifixit.com/Teardown/Apple+Watch+Series+4+Teardown/113044.

[6] Plaintiffs also rely on the same figure for claim limitations across multiple patents, making it that much less clear which limitations may be found in each figure, and where.

respectively, and assert without support that the quoted text from the Apple website describes these limitations. *Id.* ¶¶ 155–56, 170.  The Tenth COA even includes an entire paragraph spanning two pages that contains *nothing* beyond a recitation of claim language and a conclusory assertion that "[u]pon information and belief," the Accused Products include the recited limitations.  *See id.* ¶ 171.  These COAs fail to explain any bases for Plaintiffs' information and belief or otherwise link any of the statements made on Apple's website to any limitations of the asserted claims.

This Court has previously dismissed complaints with such scarcity of factual detail.  For example, just like here, the pleading in *International Technologies* identified the accused devices, alleged that those devices practiced each limitation of the asserted claim, and cited to a document created by the defendant that purportedly explained how the devices performed the accused functionality.  *Int'l Techs.*, 2018 WL 4963129, at *5. This Court, however, found that such allegations failed to state a claim because the complaint "d[id] not link statements made in the [Defendant's] documents to the specific limitations of any asserted claim," and instead "merely recite[d] the claim language for each limitation, alleging without factual support that the [accused system] works by following that limitation." *Id.*  This Court explained that it need not accept a complaint's "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)) (alteration omitted).  The present Complaint has even fewer details and relies only on publications that it fails to establish describe the Accused Products.  The Complaint here thus should be dismissed.

This Court also dismissed the complaint in *North Star*, where the allegations in the pleading "consist[ed] of nothing more than a recitation of the claim elements" and "reverse-engineered schematics" that only "show[ed] that the Accused Products meet *some* limitations of [the asserted] claim."  *N. Star*, 2018 WL 3155258, at *3 (emphasis added).  Thus, even though the complaint identified defendant's accused products and included diagrams of those products, the Court explained that the diagrams were

1   insufficient because they "d[id] not explain which of the Accused Products was analyzed

2   and how . . . it meets any of the limitations." *Id.* at *4.  The Complaint here is even more

3   deficient because it fails to allege how all of the claim limitations are met by the Accused

4   Products and because the figures from the '912 and '806 publications, unlike the

5   diagrams in *North Star*, are not even expressly tied to the Accused Products.

6        In addition to their bare allegations of direct infringement, each of the first ten

7   COAs contains allegations of indirect infringement.  Indirect infringement, however,

8   requires direct infringement.  *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d

9   1263, 1272 (Fed. Cir. 2004).  Because Plaintiffs fail to satisfy the requirements for

10  pleading direct infringement, their indirect infringement claims must also fail.

11  Accordingly, the entirety of the First through Tenth COAs should be dismissed.

12  **C.    The Seventeenth Cause of Action for Ownership Should Be Dismissed.**

13       The Seventeenth COA must be dismissed because it is defective for multiple

14  reasons.  First, the Seventeenth COA requests this Court to determine that Plaintiffs "are

15  the exclusive owners, or at least joint owners" of Apple Patents and Apple Applications,

16  which are not questions that implicate federal jurisdiction—and yet, Plaintiffs do not

17  plead a state law jurisdictional basis in this cause of action.  *Quest Nutrition, LLC v. Bd.*

18  *of Supervisors of LSU Agric. & Mech. Coll.*, 2014 WL 3362061, at *3 (C.D. Cal. July 8,

19  2014) ("Claims concerning patent ownership do not create federal jurisdiction." (quoting

20  *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1264 (9th Cir. 1999) (alteration

21  omitted))).  Rather, the question over ownership of patents and patent applications is one

22  "exclusively for state courts."  *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567,

23  1572 (Fed. Cir. 1997); *Realvirt, LLC v. Lee*, 195 F. Supp. 3d 847, 858 (E.D. Va. 2016),

24  *aff'd sub nom. Realvirt, LLC v. Iancu*, 734 F. App'x 755 (Fed. Cir. 2018) (citing

25  *Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1357 (Fed. Cir. 2008)).

26       Second, the Seventeenth COA should be dismissed because it does not identify "a

27  cognizable legal theory" under state law that would underlie Plaintiffs' ownership

28  claims, which this Court requires.  *See Hamilton v. Deputy # 1*, 2014 WL 1289538, at

Gibson, Dunn & Crutcher LLP

*2 (C.D. Cal. Mar. 26, 2014) (citing *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)).[7]  Rather, the Seventeenth COA only asserts a legal conclusion (that Plaintiffs' employees "had an obligation to assign" their inventions, patents, and patent applications), but provides neither factual support for this legal conclusion, nor the basis for the employees' purported obligation.  Compl. ¶ 214.  This COA requests a remedy without identifying a legal basis for that remedy and thus does not plead a cognizable legal theory.

Third, the Seventeenth COA also is not pleaded with enough clarity to state a claim.  This COA pleads that Plaintiffs "are the exclusive owners, or at least joint owners of *all* patents and patent applications" allegedly claiming Plaintiffs' subject matter, which "include *at a minimum*, the Lamego Patents and Lamego Applications" and their related patents and applications.  *Id.* ¶ 215 (emphasis added).  The COA then seeks ownership of Apple's patents and applications related to "subject matter developed at [*both*] Masimo *and* Cercacor," while Lamego and the three purported inventors (e.g., Al-Ali, Diab, and/or Weber) "were employed at Masimo *or* Cercacor."  *Id.* (emphasis added).  Yet those allegations fail to identify which employee worked for which corporate entity, when that employment occurred, when the ideas at issue were allegedly developed, or what subject matter was developed by which employee.[8]  Further, the COA seeks ownership of a potentially vast number of unidentified patents and patent applications and thus fails to give Apple proper notice of the extent of Plaintiffs' claims.

Fourth, the Seventeenth COA is fatally defective because it requests exclusive ownership of patents and patent applications that list Apple employees other than Lamego as co-inventors, but does not plead any legal theory under which those Apple employees would have to assign their rights to Plaintiffs.  For example, the '507

---

[7]  Plaintiffs' request for "declaratory relief" does not cure this problem because the Declaratory Judgment Act cannot provide an independent basis for relief.  *Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011).

[8]  The three individuals appear to work for Masimo, not Cercacor.

Gibson, Dunn & Crutcher LLP

application and '095 patent list Apple employee Steven P. Hotelling as an inventor, and the '052 and '670 patents list five Apple employees as inventors in addition to Lamego. Compl. Exs. 13–15; RJN Ex. D ('507 application, published as U.S. Patent Pub. No. 2018/0238734).  Plaintiffs identify no basis for those six employees to assign rights to them and thus no basis for their request "to change the title to the patents and patent applications in favor of Masimo and Cercacor."  Compl. ¶ 216.  Nor could they plead a request to remove Mr. Hotelling as an inventor from the '507 application because there are "no . . . private causes of action available to a litigant to challenge inventorship of a pending patent application." *Pappalardo v. Stevins*, 746 F. App'x 971, 974 (Fed. Cir. 2018) (citing *HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*, 600 F.3d 1347, 1352 (Fed. Cir. 2010)); *Hor v. Chu*, 699 F.3d 1331, 1335 (Fed. Cir. 2012) ("A [35 U.S.C.] § 256 claim for correction of inventorship does not accrue until the patent issues.").

Lastly, the Seventeenth COA should be dismissed because Plaintiffs have improperly compounded multiple claims in one COA.  Instead, Federal Rule of Civil Procedure 10(b) requires Plaintiffs to separate multiple claims for relief into separate causes of action and state their allegations "with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).  Here, Plaintiffs have failed to do so.  The Seventeenth COA alleges ownership by two separate parties (Masimo and Cercacor) over at least five issued U.S. patents and two U.S. patent applications, without distinguishing which party purportedly owns what, and seeks two distinct outcomes (exclusive ownership and joint ownership). Compl. ¶¶ 213–16.  Moreover, Plaintiffs plead that Lamego had an obligation to assign patents and patent applications to his "employer [*sic*], Masimo *and* Cercacor," making it impossible to know which entity (or both) is/are allegedly exclusive or joint owner(s) of which patents or patent applications.  *See id.* ¶ 214 (emphasis added).  Further, each COA incorporates the allegations of the preceding COAs, without explaining which factual allegations apply to and support each COA, culminating in the Seventeenth COA,

which incorporates 210 paragraphs.  *Id.* ¶ 212; *see Moore v. City of Orange*, 2017 WL 10518114, at *2 (C.D. Cal. Sept. 25, 2017) (finding it "egregious" and a good example of "shotgun pleading" where a count incorporated the preceding 107 paragraphs instead of "only those paragraphs which apply to each claim").  The Seventeenth COA also seeks both "declaratory relief," under which the Court is asked to "declare" a decision, and also asks for specific performance in the form of "an order from the Court ordering Apple to change title."  Compl. ¶ 216.  But the Declaratory Judgment Act does not provide authority for a court to order performance.  28 U.S.C. § 2201 (a court "may *declare the rights and other legal relations* of any interested party" (emphasis added)).

**D.   The Twelfth through Sixteenth Causes of Action Should Be Dismissed.**

    **1.   Plaintiffs Lack Standing to Seek Correction of Inventorship.**

The Twelfth through Sixteenth COAs seek correction of inventorship of the five Apple Patents under 35 U.S.C. § 256.  *See* Compl. ¶¶ 192–211.  These COAs, however, do not establish that Plaintiffs have constitutional standing to bring these claims.  A plaintiff may not invoke § 256 without meeting constitutional standing requirements: a showing that the plaintiff has "suffered an injury-in-fact, that the injury is traceable to the conduct complained of, and that the injury is redressable by a favorable decision." *Chou v. Univ. of Chicago*, 254 F.3d 1347, 1357 (Fed. Cir. 2001) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  To establish standing in the context of a correction of inventorship claim, a plaintiff must first demonstrate an ownership interest or another financial stake in the patent at issue.  *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1327 (Fed. Cir. 2009); *Vita-Herb Nutriceuticals, Inc. v. Probiohealth, LLC*, 2013 WL 1182992, at *3 (C.D. Cal. Mar. 20, 2013).  Here, Plaintiffs fail to allege an ownership interest in any of the Apple Patents, and thus do not establish standing to bring correction of inventorship claims.

Plaintiffs' allegation in their Seventeenth COA that "Lamego, as well as all of the other employees/inventors, had an obligation to assign said subject matter, patents, and

1    patent applications to their employer, Masimo and Cercacor," Compl. ¶ 214, is

2    insufficient to confer standing for the Twelfth through Sixteenth COAs for three reasons.

3        First, the Seventeenth COA is unrelated to the correction of inventorship COAs

4    because it purportedly raises a claim for correction of *ownership*—not inventorship. *Id.*

5    ¶ 215; *see Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993)

6    ("It is elementary that inventorship and ownership are separate issues."). The Supreme

7    Court has "ma[de] clear that 'standing is not dispensed in gross.' To the contrary, 'a

8    plaintiff must demonstrate standing for each claim he seeks to press and for each form

9    of relief that is sought.'" *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650

10   (2017). Second, even if this ownership allegation from the Seventeenth COA applied to

11   the correction of inventorship COAs, the pleading would still fail to identify *which*

12   entity—Masimo, Cercacor, or both—was to receive the assigned rights. The Complaint

13   is contradictory. Plaintiffs treat Masimo and Cercacor interchangeably, referring to both

14   collectively as the "[employees'] *employer*" (singular), while at the same time asserting

15   that "Cercacor is not owned by Masimo." *Compare* Compl. ¶ 214, *with id.* ¶ 15. Thus,

16   by failing to allege ownership by any particular entity that can be entitled to the relief

17   requested, the Complaint does not show that either Plaintiff has standing.

18       Lastly, the Seventeenth COA alleges only that Lamego had *an obligation* to assign

19   patent ownership rights, but does not allege that the assignment was to be *automatic*.

20   "[T]he question of whether a patent assignment clause creates an automatic assignment

21   or merely an obligation to assign is intimately bound up with the question of standing in

22   patent cases." *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290

23   (Fed. Cir. 2008). "Contracts that merely obligate the inventor to grant rights in the

24   future . . . 'may vest the promisee with *equitable* rights in those inventions once made,'

25   but do not by themselves 'vest *legal* title to patents on the inventions in the promisee.'"

26   *Id.* (quoting *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580–81 (Fed. Cir.

27   1991)). By pleading only an obligation to assign, Plaintiffs do not establish legal title to

28   the Apple Patents and thus have no standing to bring their correction of inventorship

claims. *Larson*, 569 F.3d at 1326–27 (holding plaintiff "has no financial interest in the patents sufficient for him to have standing to pursue a § 256 claim," where interest was "contingent" on "him first succeeding on his state-law claims [of ownership]").[9]

### 2.    Plaintiffs Fail to Plead Required Elements of an Inventorship Claim.

The Twelfth through Sixteenth COAs are also fatally deficient because they do not identify the subject matter Plaintiffs' employees allegedly jointly invented.  To plead a § 256 claim, a plaintiff must allege facts sufficient to allow a court to draw a reasonable inference that he "contributed to the conception of the claimed invention and that his contribution was 'not insignificant in quality, . . . when measured against the dimension of the full invention.'"  *Ecojet, Inc. v. Pure Spa Components, Inc.*, 2017 WL 3485780, at \*5 (C.D. Cal. Feb. 10, 2017) (quoting *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004), and *Ruling Meng v. Ching–Wu Paul Chu*, 643 F. App'x 990, 994 (Fed. Cir. 2016)).  Absent such allegations, a § 256 claim must be dismissed. *See id.*  Here, Plaintiffs allege that their employees Al-Ali, Diab, and Weber are joint inventors of the Apple Patents, because these patents contain "subject matter that Lamego obtained from discussions with [them]."  Compl. ¶¶ 194, 198, 202, 206, 210. Plaintiffs, however, fail to identify what parts of the claimed subject matter their employees allegedly invented, which employee invented which part, and how the alleged inventions by these employees relate to the claims of the Apple Patents.  Thus, Plaintiffs do not sufficiently allege that their employees contributed significantly to the inventions claimed in the Apple Patents.  Accordingly, the Twelfth through Sixteenth COAs must be dismissed.

### V.    CONCLUSION

Apple respectfully requests that the Court dismiss this case with prejudice or require a more particular statement.

---

[9]  Once the Seventeenth COA is dismissed, the correction of inventorship COAs must fall with it.  *See Vita-Herb*, 2013 WL 1182992, at \*4 (holding that plaintiff had no standing to sue for correction of inventorship once his ownership claim was dismissed).

1    Dated:  March 4, 2020            Respectfully submitted,

2                                          JOSHUA H. LERNER
                                        H. MARK LYON

3                                          GIBSON, DUNN & CRUTCHER LLP

4

5                                          By:  */s/Joshua H. Lerner*

6                                              Joshua H. Lerner

7                                          *Attorneys for Defendant Apple Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP