JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.:  415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.:  650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8541 / Fax: 202.467.0539

ILISSA SAMPLIN, SBN 314018          ANGELIQUE KAOUNIS, SBN 209833
  isamplin@gibsondunn.com             akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP         GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue              2029 Century Park East Suite 4000
Los Angeles, CA 90071-3197         Los Angeles, CA 90067
Tel.: 213.229.7000 / Fax: 213.229.7520   Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO DISMISS THE THIRTEENTH CAUSE OF ACTION FOR TRADE SECRET MISAPPROPRIATION IN PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> **Hearing** <br><br> Date:       Date:  June 8, 2020 <br> Time:      1:30 p.m. <br> Courtroom: 10C <br> Judge:   Hon. James V. Selna |

1

## TABLE OF CONTENTS

2

Page

3    I.    INTRODUCTION ....................................................................................... 1

4    II.   BACKGROUND ......................................................................................... 3

5          A.    Plaintiffs Allege an Effort by Apple to Misappropriate Their Trade
                 Secrets More Than Six Years before Filing This Action. .......................... 3
6
           B.    A Published Patent Application Put Plaintiffs on Notice of Their
7                Alleged Claim More Than Three Years Before They Filed. .................... 4

8    III.  LEGAL STANDARD ................................................................................... 5

9    IV.   PLAINTIFFS' CUTSA CLAIM SHOULD BE DISMISSED. ............................ 6

10         A.    Plaintiffs' CUTSA Claim Is Time-Barred. ............................................ 6

11               1.    The Limitations Period Began More Than Three Years Ago. ........ 6

12               2.    Plaintiffs Have Not Pleaded a Plausible Excuse for Their
                       Delay. ......................................................................................... 9
13
           B.    Plaintiffs Fail to Allege Any Protectable Trade Secrets. ........................ 14
14
                 1.    Plaintiffs' Broad Allegations Fail under Fed. R. Civ. Proc. 8. ....... 15
15
                 2.    Plaintiffs Have Not Distinguished Their Trade Secrets from
16                     Patents. ...................................................................................... 19

17         C.    Plaintiffs Fail to Allege Misappropriation by "Improper Means." ........... 20

18               1.    Plaintiffs Fail to Allege Improper Acquisition. ............................. 20

19               2.    Plaintiffs Fail to Allege Improper Disclosure or Use by
                       Apple. ........................................................................................ 24
20
           D.    Plaintiffs Should Be Denied Leave to Amend Their CUTSA Claim. ...... 25
21
     V.    CONCLUSION ......................................................................................... 25
22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs.*,
2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) ................................................. 14, 15

*Alamar Biosciences Inc. v. Difco Labs. Inc.*,
1996 WL 648286 (E.D. Cal. Feb. 27, 1996) ....................................................... 7, 13

*Alta Devices, Inc. v. LG Elecs., Inc.*,
2019 WL 1924992 (N.D. Cal. Apr. 30, 2019).......................................................... 7

*AlterG, Inc. v. Boost Treadmills LLC*,
388 F. Supp. 3d 1133 (N.D. Cal. 2019)....................................................... 16, 17, 20

*Am. Hardware Mut. Ins. Co. v. Escamilla*,
2010 WL 11574194 (N.D. Cal. Sept. 30, 2010)..................................................... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................ 6, 25

*ATS Prods., Inc. v. Champion Fiberglass, Inc.*,
2015 WL 6552698 (N.D. Cal. Oct. 28, 2015) ......................................................... 23

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
583 F.3d 832 (Fed. Cir. 2009) .................................................................................. 9

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
2018 WL 2298500 (N.D. Cal. May 21, 2018).......................................................... 16

*Bell Atl. v. Twombly*,
550 U.S. 544 (2007)................................................................................................... 6

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) ..................................................... 14, 19

*Carr v. AutoNation Inc.*,
2018 WL 288018 (E.D. Cal. Jan. 4, 2018).............................................................. 23

*Citcon USA, LLC v. RiverPay, Inc.*,
2018 WL 6813211 (N.D. Cal. Dec. 27, 2018) ........................................................ 20

*Citizens' Nat. Bank of Los Angeles v. Santa Rita Hotel Co.*,
  22 F.2d 524 (9th Cir. 1927) ................................................................ 11

*In re City of Los Angeles Med. Marijuana Litig.*,
  2014 WL 12783295 (C.D. Cal. June 13, 2014) .................................. 8, 14

*Cypress Semiconductor Corp. v. Super. Ct.*,
  163 Cal. App. 4th 575 (Cal. Ct. App. 2008) ........................................ 6

*Delphix Corp. v. Actifo, Inc.*,
  2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) .................................... 25

*Diodes v. Franzen*,
  260 Cal. App. 2d 244 (Cal. Ct. App. 1968) ........................................ 16

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ............................................................... 14

*Forcier v. Microsoft Corp.*,
  123 F. Supp. 2d 520 (N.D. Cal. 2000) ............................................ 7, 11

*Fox v. Ethicon Endo-Surgery*,
  35 Cal. 4th 797 (2005) ................................................................... 10, 11

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
  857 F. Supp. 2d 997 (S.D. Cal. 2012) ............................................. 7, 10

*Globespan, Inc. v. O'Neill*,
  151 F. Supp. 2d 1229 (C.D. Cal. 2001) .............................................. 19

*Green Crush LLC v. Paradise Splash I, Inc.*,
  2018 WL 4940824 (C.D. Cal. Mar. 8, 2018) ...................................... 17

*Hays v. VDF Futureceuticals, Inc.*,
  2016 WL 5660395 (D. Haw. Sept. 28, 2016) .................................... 6, 8

*Human Longevity, Inc. v. J. Craig Venter Inst., Inc.*,
  2018 WL 6617633 (S.D. Cal. Dec. 18, 2018) .................... 14, 15, 17, 22

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
  2019 WL 4233578 (C.D. Cal. June 28, 2019) .................................... 18

*Invisible Dot, Inc. v. DeDecker*,
  2019 WL 1718621 (C.D. Cal. Feb. 6, 2019) ...................................... 23

*Klamath-Lake Pharma. Ass'n v. Klamath Med. Serv. Bureau*,
    701 F.2d 1276 (9th Cir. 1983) ................................................................25

*Klang v. Pflueger*,
    2014 WL 4922401 (C.D. Cal. July 10, 2014) ........................1, 6, 9, 10, 13

*Les Concierges, Inc. v. Robeson*,
    2009 WL 1138561 (N.D. Cal. Apr. 27, 2009)..........................................21

*MedioStream, Inc. v. Microsoft Corp.*,
    869 F. Supp. 2d 1095 (N.D. Cal. 2012)....................................................25

*MGA Entm't, Inc. v. Mattel, Inc.*,
    41 Cal. App. 5th 554 (Cal. Ct. App. 2019)....................................6, 7, 9, 13

*Pellerin v. Honeywell Int'l, Inc.*,
    877 F. Supp. 2d 983 (S.D. Cal. 2012) ...............................................21, 24

*Reese v. TracFone Wireless, Inc.*,
    2014 WL 1872175 (C.D. Cal. May 9, 2014)............................................. 12

*S. Cal. Inst. of Law v. TCS Educ. Sys.*,
    2011 WL 1296602 (C.D. Cal. Apr. 5, 2011)............................................21

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210 (Cal. Ct. App. 2010)............................................23

*Space Data Corp. v. X*,
    2017 WL 5013363 (N.D. Cal. Feb. 16, 2017)...............................14, 19, 24

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ....................................................................8

*Synopsys, Inc. v. ATopTech, Inc.*,
    2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) .......................15, 16, 18, 20

*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*,
    707 F. Supp. 1170 (C.D. Cal. 1989) ..................................................18, 22

*Vendavo, Inc. v. Price f(x) AG*,
    2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ...............................2, 17, 19

*Veronica Foods Co. v. Ecklin*,
    2017 WL 2806706 (N.D. Cal. June 29, 2017).........................................14

*VIA Techs., Inc. (a Cal. Corp.) v. Asus Computer Int'l*,
　2016 WL 5930280 (N.D. Cal. Oct. 12, 2016) .......................................................... 18

*Wang v. Palo Alto Networks, Inc.*,
　2014 WL 1410346 (N.D. Cal. Apr. 11, 2014).............................................. 7, 8, 9, 12

*Webpass Inc. v. Banth*,
　2014 WL 7206695 (N.D. Cal. Dec. 18, 2014) .......................................................... 11

*Whyte v. Schlage Lock Co.*,
　101 Cal. App. 4th 1443 (Cal. Ct. App. 2002)........................................................... 19

*Wolf v. Travolta*,
　167 F. Supp. 3d 1077 (C.D. Cal. 2016) .................................................................... 10

*Zomm, LLC v. Apple Inc.*,
　391 F. Supp. 3d. 946 (N.D. Cal. 2019) ..................................................................... 24

*Zora Analytics, LLC v. Sakhamuri*,
　2013 WL 12124612 (S.D. Cal. June 18, 2013) ......................................................... 24

**Statutes**

Cal. Bus. & Prof. Code § 16600 ..................................................................................... 18

Cal. Civ. Code § 3426.1.................................................................................... 18, 20, 21

Cal. Civ. Code § 3426.6.......................................................................................... 1, 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn & Crutcher LLP

# TABLE OF ABBREVIATIONS

| Abbreviation | Document |
|---|---|
| Apple | Defendant Apple Inc. |
| Masimo | Plaintiff Masimo Corporation |
| Cercacor | Plaintiff Cercacor Laboratories, Inc. |
| Plaintiffs | Masimo and Cercacor, collectively |
| Original Complaint, Compl. | Plaintiffs' Original Complaint (Dkt. No. 1) |
| FAC | Plaintiffs' First Amended Complaint (Dkt. No. 28) |
| '265 patent | U.S. Patent No. 10,258,265 |
| '266 patent | U.S. Patent No. 10,258,266 |
| '628 patent | U.S. Patent No. 10,292,628 |
| '708 patent | U.S. Patent No. 10,299,708 |
| '190 patent | U.S. Patent No. 10,376,190 |
| '191 patent | U.S. Patent No. 10,376,191 |
| '695 patent | U.S. Patent No. 10,470,695 |
| '994 patent | U.S. Patent No. 6,771,994 |
| '703 patent | U.S. Patent No. 8,457,703 |
| '776 patent | U.S. Patent No. 10,433,776 |
| '553 patent | U.S. Patent No. 10,588,553 |
| '554 patent | U.S. Patent No. 10,588,554 |
| '052 patent | U.S. Patent No. 10,078,052 |
| '095 patent | U.S. Patent No. 9,952,095 |

| '754 patent | U.S. Patent No. 10,219,754 |
| --- | --- |
| '997 patent | U.S. Patent No. 9,723,997 |
| '196 application | U.S. Patent Application No. 14/740,196 |
| '726 publication | U.S. Patent Publication No. 2016/0061726 |
| '268 application | U.S. Patent Application No. 14/621,268 |
| '422 application | U.S. Patent Application No. 14/617,422 |
| '664 application | U.S. Patent Application No. 14/618,664 |
| CUTSA | The California Uniform Trade Secret Act |
| DTSA | The Defend Trade Secrets Act of 2016 |
| RJN | Apple's Request for Judicial Notice in Support of Defendant's Motion to Dismiss (filed concurrently herewith) |
| RJN Decl. | Samplin Declaration in Support of Apple's Request for Judicial Notice |
| USPTO | U.S. Patent and Trademark Office |

# I.    **INTRODUCTION**

The FAC does nothing to change the fact that Plaintiffs' CUTSA claim is fatally flawed.  To the contrary, the FAC confirms that the claim is untimely.  And the shifting list of alleged trade secrets, which now number in the thousands, makes it impossible for the Court or Apple to determine if there are any real trade secrets at issue, let alone ones Apple knew about.  The claim should be dismissed for at least three reasons.

*First*, as to timeliness, the FAC confirms that Plaintiffs suspected Apple of misappropriation as early as 2014, and that the period for filing a CUTSA claim has therefore expired.  That year, Plaintiffs wrote that they *could not imagine* a reason for Apple to hire their former employee Marcelo Lamego *other than misappropriation*.  This suspicion triggered the running of the three-year statute of limitations as a matter of law.  Furthermore, in 2016, the USPTO published an Apple patent application listing Lamego as an inventor and relating to the field of healthcare monitoring technology—mobile health applications and the measurement of physiological data—in which Plaintiffs asserted in 2014 that Lamego could not possibly work without disclosing their trade secrets.  Therefore, even under *Plaintiffs' theory*, the statute of limitations was triggered no later than 2016—more than three years before Plaintiffs filed this lawsuit.

Plaintiffs cannot escape their 2014 concession that they suspected misappropriation or the 2016 patent publication that identifies Lamego and relates to the same technology field as the information they now claim as trade secrets.  The test for timely discovery of a CUTSA claim is whether Plaintiffs knew, *or should have known by the exercise of reasonable diligence*, of the alleged misappropriation.  Cal. Civ. Code § 3426.6.  Plaintiffs must plead specific facts explaining why a reasonable investigation would not have put them on notice.  *Klang v. Pflueger*, 2014 WL 4922401, at *6 (C.D. Cal. July 10, 2014).  Plaintiffs fail this test.  Plaintiffs give a long list of irrelevant excuses, but fail to explain how they were not on notice in 2014 when they not only suspected misappropriation, but also told Apple that they *could not imagine* a reason for Apple's actions *other than* misappropriation.  Plaintiffs also provide *no* explanation as

to how the 2016 patent publication differed from the later-published patents that Plaintiffs now allege disclosed their trade secrets. This omission is particularly glaring given that the FAC asserts correction of inventorship and ownership claims not only for the Apple patent that issued from the 2016 published application (the '052 patent), but also for later-published Apple patents that allegedly disclose Plaintiffs' trade secrets. Furthermore, the FAC alleges that *all* of these patents contain subject matter obtained from Masimo employees. These facts—which appear in the FAC or are judicially noticeable—doom Plaintiffs' trade secret claim as a matter of law.

*Second*, the FAC further obscures the alleged trade secrets. Plaintiffs *expanded* the open-ended list of seven broad categories of information in the Original Complaint to an even broader (and still open-ended) list of *50 categories of generic documents and information*, as well as unidentified combinations and generalized knowledge of those categories, in the FAC. FAC ¶ 211. Plaintiffs ask the Court to accept that within one paragraph of their FAC, they have pleaded *thousands* of combinations of trade secrets with sufficient detail. They have not. The countless categories are "more descriptive of the *types* of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets [Plaintiffs] ha[ve] a basis to believe actually were misappropriated." *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018). More troubling still, Plaintiffs allege that certain of their trade secrets *already* have been made public in patent filings—and appear to concede that *all* of the alleged trade secrets may be public insofar as they allege that each trade secret was not public "at least at the time of Defendant's misappropriation." FAC ¶ 212. Plaintiffs have no reason for failing to identify *public* trade secrets in the FAC; this failure prevents Apple and the Court from assessing the viability of the CUTSA claim.

*Third*, Plaintiffs still fail to allege that Apple had requisite knowledge under the CUTSA to establish that Apple acquired their alleged trade secrets by improper means. The FAC does not allege any facts suggesting that Apple knew or had reason to know which *specific* information from Plaintiffs' former employee (Lamego) came from

Plaintiffs, let alone the *specific* information that Lamego purportedly was banned from using.  Nor can it, because the trade secrets are alleged to be so vague that, as Plaintiffs concede, Lamego would not be permitted to work at all in the healthcare technology industry if all of the alleged information were in fact a trade secret.  Furthermore, Plaintiffs cannot base their CUTSA claim on the doctrine of inevitable disclosure—that because one or two people worked for Plaintiffs and then came to Apple, they *must have disclosed* unspecified trade secrets in their new employment.  California law, this Court, and others in this Circuit have roundly rejected such a theory.

The trade secrets claim is time-barred and fatally vague, and should be dismissed.

## II.  BACKGROUND[1]

### A.  Plaintiffs Allege an Effort by Apple to Misappropriate Their Trade Secrets More Than Six Years before Filing This Action.

According to the FAC, in 2013, Apple contacted Masimo "to understand more about Masimo's technology," "entered into a confidentiality agreement" with Masimo, and had "confidential discussions" with Masimo's management.  FAC ¶ 19.  Then, Apple "recruited . . . key Masimo personnel," including O'Reilly, Masimo's former Chief Medical Officer, and Lamego, former Cercacor CTO.  *Id.* ¶¶ 19–21.  "O'Reilly was privy to extremely sensitive information . . . about mobile medical products and applications, wellness applications, clinical data gathering and analytics, and other technology of Masimo."  *Id.* ¶ 20.  Lamego had access to "highly confidential technical information," "was taught about the keys to effective non-invasive monitoring," and "learned guarded secrets regarding Plaintiffs' mobile medical products."  *Id.* ¶ 22.

By January 2014, Plaintiffs were suspicious of Apple's conduct, including its hiring of Lamego.  On January 24, 2014, they sent Apple a letter "explaining that Lamego possessed Plaintiffs' confidential proprietary information and warning Apple to respect [their] rights in such information."  *Id.* ¶ 23.  The letter cautioned, "we trust that Apple will employ Mr. Lamego in an area that does not involve healthcare

---

[1]  The allegations in the Original Complaint and the FAC are treated as true for purposes of this motion only.

technology, including mobile health applications and the measurement of physiological information." *Id.*  The FAC quotes and refers to the letter (*id.* at ¶¶ 23, 216, 220), but fails to cite two admissions in the letter, or attach it.  RJN Decl. Ex. A.  First, the letter stated that Plaintiffs found it "difficult to imagine any reason for [Apple's conduct] other than [that] Apple [was] attempting to gain access to, or . . . the benefit of, [their] trade secrets."  RJN Decl. Ex. A, at 4.  Second, the letter accused Apple of "targeting" Plaintiffs' "personnel for some time."  *Id.*[2]  The letter also demanded that Apple not employ Lamego in the field of "healthcare technology," because doing so "necessarily [would] involve the use or disclosure of [Cercacor's] trade secrets."  *Id.*; *see* FAC ¶ 23. Yet in the next six years—even after it became public that Lamego did work for Apple on the same technology to which Plaintiffs' alleged trade secrets supposedly relate (e.g., RJN Decl. Ex. B)—Plaintiffs did nothing.

## B.   A Published Patent Application Put Plaintiffs on Notice of Their Alleged Claim More Than Three Years Before They Filed.

Plaintiffs allege that Apple "used and disclosed Plaintiffs' Confidential Information at least by . . . filing patent applications containing" that information.  FAC ¶ 218.  They concede that "shortly after joining Apple in January 2014, Lamego began pursuing on behalf of Apple numerous patent applications directed toward technologies he worked on at Plaintiffs, and with which he had no prior experience or knowledge." *Id.* ¶ 24.  The Original Complaint alleged this without qualification (Compl. ¶ 23); Plaintiffs now allege such facts were "[u]nbeknownst to Plaintiffs" in 2014 (FAC ¶ 24).

Despite Plaintiffs' newly claimed ignorance, the FAC still demonstrates that Plaintiffs knew or should have known about Lamego's pursuit of at least one relevant Apple patent application by at least March 2016:  The '196 application was published as the '726 publication on March 3, 2016, naming Lamego as an inventor in the field of healthcare technology.  *See id.* ¶ 39 (citing the '196 application, which issued as the '052 patent that is the subject of the Fourteenth Cause of Action); *id.* Ex. 27, at 1147 ('052

---

[2]  By September 2014, "Apple announced the first version of its watch"—an ostensibly competing technology.  FAC ¶ 25.

1   patent, Prior Pub. Data); RJN Decl. Ex. B, at 11 ('726 publication, Pub. Date).  That

2   application is entitled "Reflective Surface Treatments For Optical Sensors," and relates

3   to "electronic . . . optical sensing systems" that "can be adapted to obtain physiological

4   data from a biological subject." FAC Ex. 27, at 1154 ('052 patent, Title, 1:16–18, 1:45–

5   48); RJN Decl. Ex. B, at 11, 18 ('726 publication, Title, ¶¶ 2, 5).  Indeed, the Original

6   Complaint listed the '196 patent application, which published as the '726 publication,

7   as the *first example* of an application that allegedly included technologies with which

8   Lamego was intimately involved while working at Plaintiffs.  Compl. ¶¶ 23–24, 187.

9        Thus, a patent application that (i) referenced healthcare technology on which

10  Lamego was purportedly prohibited from working because, *according to Plaintiffs*, he

11  was incapable of doing so without using their confidential information (FAC ¶ 23; RJN

12  Decl. Ex. A, at 4–5), and (ii) named Lamego as inventor, was publicly available more

13  than three years before Plaintiffs filed this action.  The Original Complaint conceded

14  this publicly available application was an example of an application allegedly containing

15  information that Lamego acquired from them.  Compl. ¶¶ 23–24.  Nonetheless, Plaintiffs

16  now claim it was reasonable that they did nothing in the ensuing three years.

17       The FAC contains no explanation for Plaintiffs' delay.  Plaintiffs do not explain:

18  (1) why the '726 publication did not put them on notice of the alleged misappropriation,

19  or (2) how the '726 publication is different from those later-published patents that

20  Plaintiffs assert do contain their alleged trade secrets (*see* FAC ¶ 220)—even though the

21  '726 publication relates to the same technology as the later-published patents (*see, e.g.*,

22  Ex. 29, at 1193 ('095 patent, 1:15–19)), and Plaintiffs allege that the subject matter of

23  the '726 publication (as disclosed in the resultant '052 patent) and these later-published

24  patents all came from Masimo's employees (*see, e.g.*, FAC ¶¶ 227, 241, 248).  Plaintiffs

25  are also silent as to why they do not allege that the '196 patent application, which

26  published as the '726, is an example of an application containing their alleged secrets.

### III.   LEGAL STANDARD

28       A complaint must contain "sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For a claim to be facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  Dismissal is warranted where a complaint fails to "raise a right to relief above the speculative level." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a [claim], supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV.   PLAINTIFFS' CUTSA CLAIM SHOULD BE DISMISSED.

### A.   Plaintiffs' CUTSA Claim Is Time-Barred.

A CUTSA claim "must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Cal. Civ. Code § 3426.6.  Thus, "the statute of limitations begins to run when a plaintiff discovers, or has reason to discover, the cause of action." *Klang*, 2014 WL 4922401, at *1–2, *5–6 (dismissing CUTSA claim where patent applications disclosing invention published five years before filing).  Suspicion starts the clock:  "[w]hen there is reason to suspect" misappropriation, "and a reasonable investigation would produce facts sufficient to confirm this suspicion . . ., the limitations period begins, even though the plaintiff has not conducted such an investigation." *Hays v. VDF Futureceuticals, Inc.*, 2016 WL 5660395, at *3 (D. Haw. Sept. 28, 2016) (applying California law and granting motion to dismiss because "suspicion of wrongdoing will trigger the statute of limitations"); *see also MGA Entm't, Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554, 564 (Cal. Ct. App. 2019) ("[o]nce [plaintiff] had reason to suspect an injury and some wrongful cause, the statute [of limitations] . . . began to run" on CUTSA claim); *Cypress Semiconductor Corp. v. Super. Ct.*, 163 Cal. App. 4th 575, 587 (Cal. Ct. App. 2008) ("[M]isappropriation that triggers . . . the statute is that which the plaintiff suspects").

### 1.   The Limitations Period Began More Than Three Years Ago.

***The statute was triggered in 2014***.  The FAC makes clear that Plaintiffs suspected Apple of misappropriating their alleged trade secrets in 2014.  After Apple and Masimo

met to discuss a "potential collaboration" in 2013, and Lamego "join[ed] Apple in January 2014" (FAC ¶¶ 19, 21, 24), Plaintiffs immediately "warn[ed] Apple to respect [their] rights" in their "confidential proprietary information" (*id.* ¶ 23).  The January 24, 2014 "warning" letter confirms Plaintiffs' suspicions and is fatal to their CUTSA claim.  The letter states that "[i]t is difficult to imagine *any reason* for th[e] sequence of events *other than Apple is attempting to gain access to, or at least the benefit of, Cercacor and Masimo's trade secrets*."   RJN Decl. Ex. A, at 4 (emphasis added); *see, e.g.*, *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1004-06 (S.D. Cal. 2012) (email between plaintiff's employees saying defendant committed a "direct rip-off" of plaintiff's trade secret "established that [plaintiff] had a suspicion of wrong doing which triggered the statute of limitations"); *cf. Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 530–31 (N.D. Cal. 2000) (suspicion triggered limitations period for interference claim where defendant hired two employees allegedly possessing plaintiff's trade secrets to develop competing technology and file patent applications, and plaintiff sent a letter to defendant with "concern[] . . . that [defendant] might make use of the [misappropriated] technology").  Plaintiffs "had a suspicion that [Apple] had misappropriated [their] trade secrets" and "articulated that suspicion" in the January 2014 letter (*MGA Entm't*, 41 Cal. App. 5th at 565), and it was "common knowledge" by September 2014 that Apple was pursuing similar technology (*Alamar Biosciences Inc. v. Difco Labs. Inc.*, 1996 WL 648286, at *4 (E.D. Cal. Feb. 27, 1996)), when Apple "announced the first version of its watch" (FAC ¶ 25).  Plaintiffs were on notice of their claim by 2014.

> ***The statute was alternatively triggered in 2016***.  The "publication of patents (and now patent applications) must be deemed, as a matter of law, to place those practicing in the same field and prosecuting their own patent applications . . . on full notice of all of the contents of the publication."  *Wang v. Palo Alto Networks, Inc.*, 2014 WL 1410346, at *6 (N.D. Cal. Apr. 11, 2014); *see Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 1924992, at *14 (N.D. Cal. Apr. 30, 2019) (reliance on *Wang* (a summary judgment case) for a motion to dismiss proper because the "Court takes as true . . . the allegations

in [the] complaint").  Courts routinely find that patent applications and patents trigger the statute of limitations for sophisticated parties like Plaintiffs, especially when they are trying to "commercialize [their] own technologies." *Wang*, 2014 WL 1410346, at *6; *Hays*, 2016 WL 5660395, at *5 (dismissing analogous Hawaii trade secrets claim, and holding that "statute . . . began to run when the patents were issued" because the patents sufficiently described the methods at issue for Plaintiff "at least to suspect a factual basis for [the] elements" of his claim).

Here, Plaintiffs cannot escape that the '726 application, naming Lamego as an inventor, published on March 3, 2016.  RJN Decl. Ex. B, at 11; FAC Ex. 27, at 1147. The '726 publication relates to the same category of information—physiological measurement—as Plaintiffs' alleged trade secrets.  *See* RJN Decl. Ex. B, at 18 ('726 publication, ¶¶ 2, 5); FAC ¶ 211.  Indeed, the FAC alleges that the resultant '052 patent "claims subject matter that Lamego obtained from discussions with" Plaintiffs.  FAC ¶ 227 & Ex. 27.  And, again, the Original Complaint alleged that the '196 application, which published as the '726 application, was the *first example* of an application that Lamego pursued on behalf of Apple based on his work at, and knowledge from, Plaintiffs, and which allegedly disclosed Plaintiffs' confidential information "*by September 2014*."  Compl. ¶¶ 23–24, 186–187 (emphasis added).

Now, *after* Apple raised the statute of limitations in its Motion to Dismiss the Original Complaint (Dkt. No. 16), Plaintiffs suddenly claim that they did not know about any disclosure until after January 10, 2017.  FAC ¶¶ 219.  The Court should not accept this new allegation because it "contradict[s] matters properly subject to judicial notice or by exhibit" (*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)), and also "contradict[s] [and] obfuscate[s] facts alleged in the prior pleading" (*In re City of Los Angeles Med. Marijuana Litig.*, 2014 WL 12783295, at *3 (C.D. Cal. June 13, 2014)).  Plaintiffs provide *no* colorable explanation for their failure to act upon the '726 publication, nor do they allege that they were not monitoring patent filings involving Lamego and Apple.  *See Wang*, 2014 WL 1410346, at *6 ("[I]nventor actively practicing

in the field and prosecuting his own patent application must be deemed to be on constructive notice of published patent applications in the same field").

Even if the Court accepts as true these newly manufactured allegations (it should not), the '726 publication establishes that by March 3, 2016, Plaintiffs *should have known* about the alleged disclosure.  The publication demonstrated that:  (1) Lamego was employed by Apple in the field of physiological monitoring—in which Plaintiffs "expressed concern" (*MGA Entm't*, 41 Cal. App. 5th at 565) that Lamego could *not* work *without* using their confidential information (FAC ¶ 23; RJN Decl. Ex. A, at 4–5); (2) Apple and Lamego did not agree to Plaintiffs' 2014 demand that Lamego not work in the field (FAC Ex. 27; RJN Decl. Ex. B); and (3) Lamego purportedly was using their information in his work (FAC ¶ 227).  Moreover, the '726 publication relates to light emitter technology used for *health monitoring* to increase reliability of *biological readings* (RJN Decl. Ex. B, at 18 ('726 publication, ¶¶ 2, 5))—like the three other patent applications (the '268, '422, and '664) that were published as patents after 2016 and *are* alleged to contain Plaintiffs' trade secrets (FAC ¶¶ 40–42, 220).[3]   The FAC demonstrates that the '726 publication was "in the same field as" Plaintiffs' own supposedly misappropriated technology.  *Wang*, 2014 WL 1410346, at *3.  Accordingly, by March 3, 2016, Plaintiffs were on notice to investigate their trade secret claim, and the limitations period commenced by that date.  *See id.* at *6; *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 846 (Fed. Cir. 2009) (party was on notice regarding possible "additional patents as to the same subject matter," even where the applications had not yet been filed), *aff'd*, 563 U.S. 776 (2011).

## 2.     Plaintiffs Have Not Pleaded a Plausible Excuse for Their Delay.

The "[FAC] show[s] on [its] face that [Plaintiffs'] claim would be barred without the benefit of the discovery rule" (*Klang*, 2014 WL 4922401, at *6), because Plaintiffs allege that Apple used their information when Lamego caused Apple to file patent

---

[3]  The corresponding patents are the '754, '997, and '095 patents.  FAC ¶¶ 40–42, 220, Exs. 29–30.  The FAC does not assert the '997 patent against Apple.

applications relating to Plaintiffs' technologies *in 2014* (FAC ¶¶ 24, 39–42 & Exs. 29–30).    Plaintiffs' burden is to prove facts that toll the statute of limitations—i.e., "specifically plead[ed] facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  *Klang*, 2014 WL 4922401, at *6; *Fox v. Ethicon Endo-Surgery*, 35 Cal. 4th 797, 808 (2005) ("the burden [is] on the plaintiff to 'show diligence'"); *see also Gabriel Techs.*, 857 F. Supp. 2d at 1003 (same); Jud. Council of Cal. Civ. Jury Instr. (2019), No. 4421 (Plaintiffs must prove they "did not discover, nor with reasonable diligence should have discovered, facts that would have caused a reasonable person to suspect that [Defendant] had misappropriated [their information]").  Plaintiffs had to plead specific facts establishing that (1) despite their January 2014 letter to the contrary, they did not have reason to suspect Apple of misappropriation, and (2) despite the later-published patents, which purportedly put them on notice of their claim, they did not have reason to suspect the misappropriation from the '726 publication relating to the same technology.  Plaintiffs' alleged reasons why they could not have discovered Apple's purported misappropriation before January 10, 2017, do not satisfy that burden.

> ***(i)     Plaintiffs' purported reliance on Apple's alleged non-response to their January 2014 "warning" letter is not reasonable***.  Plaintiffs claim that Apple and Lamego "led Plaintiffs to believe they intended to respect Plaintiffs' intellectual property rights and concealed" Apple's alleged misappropriation.  FAC ¶ 220.  Apple purportedly did so because "Plaintiffs notified [Apple] that Lamego possessed the Confidential Information on January 24, 2014," and Apple "never informed [them] that Lamego had used or disclosed" that information.  *Id*.  Significantly, Plaintiffs do not allege (1) that Apple responded to the January 2014 "warning letter" (FAC ¶ 23), or (2) any *facts* suggesting that Apple misled them.  Instead, Plaintiffs implausibly allege that they "had no reason to suspect or believe that [Apple] had ignored Plaintiffs' letter."  *Id*. ¶ 219.  Plaintiffs' claim that they simply interpreted Apple's ostensible silence as agreement to the demands in their letter fails.  *Cf. Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1096 (C.D.

Cal. 2016) (plaintiff's "purported inability to discover [copyright] infringement" unreasonable where investigation of suspicions involved asking defendant, his associate, and an employee of the organization with which they were working whether they had infringed, and infringer denied wrongdoing).[4]

**(ii)** *Lamego's alleged representations are irrelevant*. Plaintiffs also assert that *Lamego* "assured Plaintiffs that he would not violate his agreements with [them]" or "work on technology similar to Plaintiffs'." FAC ¶ 23. Based in part on "conversations with Lamego," Plaintiffs claim they "reasonably believed" he "would not use or disclose Plaintiffs' confidential information and that [Apple] would not induce [him] to do so." FAC ¶ 23. But whatever supposed promises *Lamego* made in his personal capacity are irrelevant, because Lamego is not Apple; nor have Plaintiffs alleged facts plausibly establishing that his statements can be attributed to Apple. *See Citizens' Nat. Bank of Los Angeles v. Santa Rita Hotel Co.*, 22 F.2d 524, 528 (9th Cir. 1927) ("[W]here one deals with an agent concerning a matter affecting his personal interest, he is not justified in relying upon the agent's statements and actions as being those of the principal . . . ."); *Am. Hardware Mut. Ins. Co. v. Escamilla*, 2010 WL 11574194, at *3 (N.D. Cal. Sept. 30, 2010) ("The burden of proving agency," and "the agent's authority, rests upon the party . . . who seeks to charge the principal for the acts or representations of the agent.").

**(iii)** *Masimo's unidentified agreement with Apple only underscores the implausibility of Plaintiffs' delayed discovery claim*. Plaintiffs also claim that based on Masimo's purported confidentiality agreement with Apple, they reasonably believed Apple would not induce Lamego to use their confidential information or do so itself. FAC ¶ 23. Plaintiffs do not attach the agreement to their FAC; nor do they allege what it covered. *Id*. ¶ 19. Plaintiffs have failed to plead the agreement's material terms, and therefore the agreement cannot form the basis for their delayed discovery claim. *Cf.*

---

[4] Plaintiffs' implausible allegation that they "had no reason to suspect" the alleged misappropriation (FAC ¶ 219) concedes that suspicion triggers the limitations period. *Forcier*, 123 F. Supp. 2d at 530–31; *Fox*, 35 Cal. 4th at 808.

*Webpass Inc. v. Banth*, 2014 WL 7206695, at \*4 (N.D. Cal. Dec. 18, 2014) (dismissing claim based on defendant's alleged breach of plaintiff's confidentiality and non-disclosure policy where plaintiff failed to allege the material terms of that policy).

***(iv)    It is irrelevant that the first product "at issue" was announced in 2018***. Plaintiffs claim that they "had no way of knowing, or learning," of Apple's alleged misappropriation prior to January 10, 2017 because "the first [Apple] product at issue was not announced until 2018" (FAC ¶ 219).  This is wrong as a matter of law.

Plaintiffs admit that they demanded in January 2014 that Lamego not work on technology similar to Plaintiffs'—or in the "healthcare technology" space at all.  *Id*. ¶ 23.  But the FAC reveals that (i) in September 2014, Apple announced the first version of the Apple Watch—an ostensibly competing, and indisputably similar product to the allegedly infringing Series 4 Watch (*id*. ¶ 25); (ii) in April 2015, Apple began shipping the Watch (*id*.); and (iii) on March 3, 2016, the '726 publication put Plaintiffs on notice that Apple had rejected their demand that Lamego not work on healthcare monitoring technology (*id*. Ex. 27, at 1154 ('052 patent, 1:16–18, 1:45–48); RJN Decl. Ex. B, at 18 ('726 publication, ¶¶ 2, 5)).  The FAC also discloses that Masimo has "numerous U.S. patents" in "noninvasive patient monitoring technologies," and Plaintiffs have aggressively defended their intellectual property (e.g., patent) rights since 2014.  *See* FAC ¶¶ 13, 23.  Each of these alleged facts alone puts Plaintiffs on notice of a potential claim.  *Cf. Reese v. TracFone Wireless, Inc*., 2014 WL 1872175, at \*4 (C.D. Cal. May 9, 2014) ("Significant 'sales, marketing, publication, or public use of a product similar to or embodying technology similar to the patented invention . . . gives rise to a duty to investigate whether there is infringement.'"); *Wang*, 2014 WL 1410346, at \*6 (an entity "actively practicing in the field and prosecuting [its] own patent application must be deemed to be on constructive notice of published patent applications in the same field").

***(v)    The FAC and the '726 publication highlight the unreasonableness of Plaintiffs' inaction and implausibility of their discovery claim***.  Plaintiffs also assert, on information and belief, that Apple "requested non-publication of [certain patent]

applications to prevent Plaintiffs from learning" that (1) "those applications contained [their] Confidential Information," and (2) that Apple allegedly misappropriated that information. FAC ¶ 220. But courts bar misappropriation claims where (1) the plaintiff suspected the defendant of misappropriation, (2) a term search would have revealed the subject patent application, and (3) the plaintiff "had done patent searches on the technology of its competitors before." *Alamar*, 1996 WL 648286, at *5–6.

Here, in addition to the many admissions discussed above, eight of Masimo's asserted patents name Lamego as an inventor,[5] and at least one cites 56 prior patents and patent applications naming Lamego as an inventor.[6] It defies common sense that Plaintiffs would *not* have (i) suspected that Lamego was involved with filing multiple patent applications on Apple's behalf, or (ii) searched such filings once they learned in January 2014 that Lamego was working for Apple, particularly because they ostensibly "[s]earch[ed] for existing intellectual property rights," including competitors' patent filings. RJN Decl. Ex. C, at 64. "In these circumstances, a reasonable plaintiff is required to take the elementary step of checking all readily available patent applications" to avoid a limitations bar. *Alamar*, 1996 WL 648286, at *5–6.

That Plaintiffs now claim the '726 publication does not disclose their trade secrets is of no moment, since the publication describes technology Lamego purportedly could *not* work on without using their confidential information, and relates to technology described in three other applications that Plaintiffs claim *do* contain their trade secrets. FAC ¶¶ 39–42, 220; RJN Decl. Ex. A, at 4–5; RJN Decl. Ex. D, at 163–64 (*True Wearables* Am. Compl. ¶ 37). Thus, even accepting as true Plaintiffs' recent, feigned ignorance, they have not met their burden to show that *they could not have* discovered their claim. *Klang*, 2014 WL 4922401, at *4; *MGA Entm't*, 41 Cal. App. 5th at 561 ("plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that

---

[5]  FAC Exs. 1–6, 11–12 (the '265, '266, '628, '708, '190, '191, '553, and '554 patents).

[6]  FAC Ex. 12, at 881–93 ('554 patent, citing Lamego as inventor 56 times).

1    is a process contemplated by pretrial discovery") (citation omitted).[7]

2         Finally, Plaintiffs' non-publication theory makes no sense.  If Apple were

3    attempting to hide Lamego's work on healthcare monitoring technologies, it would not

4    have permitted publication of *any* patent application in that field naming Lamego as an

5    inventor—yet it did just that.  RJN Decl. Ex. B.  Plaintiffs have no explanation for these

6    inconsistent allegations; their conclusory allegations of concealment fail.  *Eclectic*

7    *Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014)

8    (complaint must allege "facts tending to exclude the possibility" that an "alternative

9    explanation is true"); *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *14 (N.D.

10   Cal. June 29, 2017) (alleged "facts that are not 'merely consistent with' both a theory of

11   innocent [conduct] and [misappropriation], but rather 'tend[ ] to exclude' an innocent

12   explanation" required to survive motion to dismiss).

13   **B.    Plaintiffs Fail to Allege Any Protectable Trade Secrets.**

14         "To adequately allege the existence of a trade secret, the plaintiff must describe

15   the trade secret with sufficient particularity to separate it from matters of general

16   knowledge in the trade . . . and to permit the defendant to ascertain at least the

17   boundaries within which the secret lies." *Acrisure of Cal., LLC v. SoCal Commercial*

18   *Ins. Servs.*, 2019 WL 4137618, at *3 (C.D. Cal. Mar. 27, 2019) (citation omitted).

19   "[A]llegations of broad categories relating to business or technology are not adequate to

20   support a trade secrets claim." *Human Longevity, Inc. v. J. Craig Venter Inst., Inc.*, 2018

21   WL 6617633, at *4 (S.D. Cal. Dec. 18, 2018); *see also Bladeroom Grp. Ltd. v.*

22   *Facebook, Inc.*, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015) ("generic list of

23   categories of various types of information" was "vague and conclusory" and

24   insufficient).  For these reasons, a CUTSA claim should be dismissed where, as here,

25   Plaintiffs simply plead "a high-level overview of . . . purported trade secrets." *Space*

26   *Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017).

27

28   _____

     [7]  The Court should not accept Plaintiffs' newfound allegations of ignorance, because
     they contradict the Original Complaint. *Los Angeles*, 2014 WL 12783295, at *3.

Plaintiffs allege that they own over 50 categories of supposed trade secrets that "include, but are not limited to, . . . technical information, sales and marketing information, and other business information relating to non-invasive monitoring of physiological parameters and products to perform such monitoring." FAC ¶ 211. Such "sweeping and vague" "references to an enormous array of potential sources" of information are insufficient to survive a motion to dismiss. *Synopsys*, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013) (description of information "relate[d] to [the plaintiffs'] products," including "proprietary input and output formats, scripts, and technical product documentation, which generally are not publicly known" too vague); *see, e.g.*, *Human Longevity*, 2018 WL 6617633, at *5 (dismissing where "allegations of [trade secrets] are expansive and lack particularity"); *Acrisure of Cal.*, 2019 WL 4137618, at *3 ("[t]he Ninth Circuit has rejected the use of 'catchall' language," as insufficiently specific "because it does not *clearly refer* to tangible trade secret material" (citations omitted)). Plaintiffs' pleading deficiency is even more egregious here because they allege that the Apple Watch "includes Plaintiffs' technologies" (FAC ¶ 25), and that their trade secrets were purportedly published in Apple's patent applications and patents (FAC ¶ 219).[8] Compounding the lack of particularity is Plaintiffs' inclusion of "secrets" for which they have not alleged misappropriation. *See, e.g.*, FAC ¶ 211 (listing "risk analysis," "customer information," "sales pipelines," "proposal and quote generation tools," "personnel information," "supplier information," and "spreadsheets," which plainly cannot be incorporated into Apple's patent applications or its Watch).

## 1. Plaintiffs' Broad Allegations Fail under Fed. R. Civ. Proc. 8.

*"Technical Information"*: This category "includes product plans, engineering plans, product briefs, technical drawings, technical specifications, technical data, product designs, system designs, design captures, assembly design requirements, risk

---

[8] Plaintiffs allege that their trade secrets "derive[] independent economic value" because they were, "at the time of . . . misappropriation, not generally known to the public" (FAC ¶ 213), but Plaintiffs' vague description of their alleged trade secrets do not allow the Court or Apple to determine what value any such trade secret may possess.

analysis, test procedures and results, test data, design review documents, software requirement specifications, technical know-how, manufacturing techniques and procedures, installation techniques and procedures, and invention disclosures."  FAC ¶ 211.  This list references "just about every piece of material Plaintiff[s] ha[ve] ever created or acquired" (*Synopsys, Inc.*, 2013 WL 5770542, at *8), and merely "summarize[s] rather broadly the categories of information" that any product manager in virtually any technology company *could* use to design products—thus failing to sufficiently identify the alleged trade secrets under Rule 8 (*AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1145–46 (N.D. Cal. 2019) (granting motion to dismiss DTSA claim where alleged trade secrets "includ[ed] 'techniques, sketches, drawings, models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, software source documents, and formulae related to the current, future and proposed products and services of the Company, and includes, without limitation, its respective information concerning research, experimental work, development, design details, and specifications, engineering [information]'")).  *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) (allegations of "design review templates," "fluidics design files," or "source code files" lacked particularity, especially when "preceded by the phrases 'such files included' and 'such as'").  In addition, because Plaintiffs allege that their trade secrets include "manufacturing techniques" (FAC ¶ 211), they "must not only identify the end product manufactured, but also supply sufficient data concerning the process." *Diodes v. Franzen*, 260 Cal. App. 2d 244, 253 (Cal. Ct. App. 1968).  Plaintiffs have not.

"***Sales and Marketing Information***":  This category "includes product plans"— notably *not* distinguished from "product plans" identified as "Technical Information" above—"business plans, customer information, sales pipelines, proposal and quote generation tools, pricing models, pricing schedules, sales training materials, product training materials, marketing and launch plans, marketing analysis, and competitive analysis." FAC ¶ 211.  But a "Complaint does not sufficiently put Defendants on notice

of what trade secrets they allegedly misappropriated," where it "lacks any description of what th[e] confidential information entails beyond general labels" such as "business model, business plans, recipes, processes and systems, POS System, means of identifying potential customers and markets, identification of customers' needs, customers' buying habits, . . . marketing plans, strategies, [and] forecasts." *Green Crush LLC v. Paradise Splash I, Inc.*, 2018 WL 4940824, at *5 (C.D. Cal. Mar. 8, 2018) (granting motion to dismiss); *see Vendavo*, 2018 WL 1456697, at *3 (information that "includes . . . customer lists and customer related information, pricing information, . . . marketing plans and strategic business development initiatives, . . . and other information related to the development of [Plaintiff's] price-optimization software, including ideas and plans for product enhancements" is too "broad" to state a trade secret claim); *AlterG, Inc.*, 388 F. Supp. 3d at 1145–46 (information concerning "procurement requirements, purchasing manufacturing, customer lists, business forecasts, sales, and merchandising and marketing plans and information" insufficient to state DTSA claim); *Human Longevity*, 2018 WL 6617633, at *5 (dismissing DTSA claim based on "identity and contact information [for] financing . . . sources" or "of clients and potential client[s]," "negotiating . . . strategies for potential transactions," "industry reports," "analysis of market competitors," and potential expansion "plans, [and] projections").

"***Other Business Information***":   This category "includes information for successfully operating a noninvasive patient monitoring company, including personnel information, supplier information, and other business spreadsheets and analysis." FAC ¶ 211. These allegations are even less specific than the "general labels" such as "vendor identities," "unpublished financial information," and "budgets and projections" that this Court rejected in *Green Crush*.  2018 WL 4940824, at *5; *see Vendavo*, 2018 WL 1456697, at *3 (rejecting as too "broad" identification of trade secrets that included "vendor lists and related information"); *Human Longevity*, 2018 WL 6617633, at *5 (dismissing DTSA claim where alleged trade secrets of "employee contact and compensation information" and "internal financial reports" "lack[ed] particularity").

"***Combinations***":   Plaintiffs also claim as trade secrets "combinations and selections of the above information, and knowledge of the varying importance of the information."   FAC ¶ 211.   Plaintiffs, however, have not described the potential combinations of items in their catch-all description with sufficient particularity to enable either the Court or Apple to "ascertain which specific elements [Apple] is accused of misappropriating."   *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 2019 WL 4233578, at *4 (C.D. Cal. June 28, 2019) (summary judgment granted where potentially "unique combination[s] of . . . known elements" were pleaded with insufficient specificity); *see also VIA Techs., Inc. (a Cal. Corp.) v. Asus Computer Int'l*, 2016 WL 5930280, at *3 (N.D. Cal. Oct. 12, 2016) ("the Court or defendants [could not] identify" which "arrangements" were claimed trade secrets without a sufficiently particular "descri[ption of] *how* the combination of features . . . constitutes a trade secret").

"***Knowledge***":   Plaintiffs further claim that "knowledge for selecting which information and technology are important for improving reliability, improving measurements, and how to successfully combine and implement them to achieve the desired functionality" is their trade secret.   FAC ¶ 211.   But "[i]f the principal person who can obtain economic benefit from information is aware of it, there is no trade secret."   Cal. Civ. Code § 3426.1, 1984 Legis. Comm. Comments—Senate.   For example, "[a] method of casting metal . . . may be unknown to the general public but readily known within the foundry industry;" so it cannot be a trade secret.   *Id.*

Here, the FAC provides no guidance as to "where the boundary between th[e]se secrets and general knowledge might lie."   *Synopsys*, 2013 WL 5770542, at *6. Consistent with Plaintiffs' unlawful demand that Lamego not be permitted to work in the "healthcare technology" industry at all (FAC ¶ 23; RJN Decl. Ex. A, at 5; *see* Cal. Bus. & Prof. Code § 16600), Plaintiffs improperly claim as their intellectual property any information Lamego (or any other former Masimo and/or Cercacor employee) learned while in Plaintiffs' employ.   *Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177–78 (C.D. Cal. 1989), *aff'd*, 914 F.2d 1256 (9th Cir.

1990) (knowledge "developed as a result of long employment in the particular trade may be carried over and put to use by the new employer").  Neither California law nor the Courts of this Circuit permit a Plaintiff to allege misappropriation based on a theory that a former employee inevitably will disclose general information learned during his former employment.  *Globespan, Inc. v. O'Neill*, 151 F. Supp. 2d 1229, 1235 (C.D. Cal. 2001) (granting motion to dismiss); *Whyte v. Schlage Lock Co*., 101 Cal. App. 4th 1443, 1463 (Cal. Ct. App. 2002).

"***Negative Information***":   Finally, Plaintiffs claim that their "negative information, what works well under certain conditions, and trade-offs of selecting certain techniques" is a trade secret.  FAC ¶ 211.  Such a boilerplate description of trade secrets as "'negative knowhow' learned through the course of research and development" is insufficient to satisfy Rule 8.  *Vendavo*, 2018 WL 1456697, at *3.

## 2.      Plaintiffs Have Not Distinguished Their Trade Secrets from Patents.

A motion to dismiss should be granted where the plaintiff alleges that "[s]ome aspects" of its "know-how, design, supply chain, [and] fabrication . . . techniques" "are the subject of granted patents and pending patent applications," but does not describe "which aspects are publicly known and which are not."  *Bladeroom*, 2015 WL 8028294, at *1, *4; *Space Data Corp.*, 2017 WL 5013363, at *2 (granting motion to dismiss for failure to plead "which aspects of [the] technology and other information are 'part of patents and pending patent applications,' if any, and which are secret").

Here, after alleging that Masimo has "received numerous U.S. patents" for "noninvasive patient monitoring technologies," Plaintiffs vaguely allege that they "also maintain[] *some* technology as trade secrets" and "closely guard[ their] future product and market plans."  FAC ¶¶ 13, 17 (emphasis added).  The FAC also alleges that Apple infringes twelve of Masimo's patents, all of which are directed to "noninvasive methods, devices, and systems for measuring various blood constituents."  *E.g.*, FAC Ex. 1, at 95 ('265 patent, Abstract).  But, in their "description" of their "trade secrets," Plaintiffs make no effort to differentiate between those secrets and their patented information.  *See*

FAC ¶ 211 (alleging "trade secrets that include, but are not limited to, Plaintiffs' technical information . . . *relating to non-invasive monitoring of physiological parameters and products to perform such monitoring*" (emphasis added)).   To the contrary, by including "invention disclosures" in the description of trade secrets (*id.*), the description on its face fails to "delineate the boundaries between [the] trade secrets" and Plaintiffs' "information that has been made public through patents and patent applications," *AlterG*, 388 F. Supp. 3d at 1146 (dismissing DTSA claim).

Further compounding these deficiencies is the FAC's failure to delineate which trade secrets are owned by whom—let alone how each trade secret was misappropriated. FAC ¶ 211; *id.* ¶ 218 (alleging Apple's patent applications contain *both* Plaintiffs' information).   Apple has been deprived notice of what *each* Plaintiff claims are trade secrets, which affects Apple's purported duties with respect to the information.

Plaintiffs have not described the trade secrets with sufficient particularity to put either the Court or Apple on notice of "where trade secret protection begins and ends." *Synopsys*, 2013 WL 5770542, at *6.   The misappropriation claim must be dismissed.[9]

**C.   Plaintiffs Fail to Allege Misappropriation by "Improper Means."**

Plaintiffs' theory of misappropriation—alleged on "information and belief" (FAC ¶ 217)—is that Apple, without their consent, "used and disclosed" their "Confidential Information at least by incorporating it into [Apple's] products and by filing patent applications containing [it]" (*id.* ¶ 218).   This theory is not supported by alleged facts.

**1.   Plaintiffs Fail to Allege Improper Acquisition.**

To allege misappropriation by acquisition, Plaintiffs must allege that Apple acquired their trade secret(s) and knew or had reason to know that the trade secret was acquired by "improper means."   Cal. Civ. Code § 3426.1(b)(1).   "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage . . . ."   *Id.* § subd.(a).   To allege misappropriation by use

---

[9]   At a minimum, the Court should dismiss as to the trade secrets inadequately pleaded. *Citcon USA, LLC v. RiverPay, Inc.*, 2018 WL 6813211 (N.D. Cal. Dec. 27, 2018).

or disclosure, Plaintiffs must allege that Apple used or disclosed their alleged trade secrets without consent, and that Apple "[u]sed improper means" to acquire those secrets, or knew or should have known that its knowledge was:

> (i) Derived from . . . a person who had utilized improper means to acquire it; (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy . . .; or (iii) Derived from . . . a person who owed a duty to the person seeking relief to maintain its secrecy.  [*Id*. § 3426.1(b)(2)(A)–(B).]

With respect to acquisition, Plaintiffs do not allege facts to plausibly claim that Apple knew or had reason to know that any purported acquisition of Plaintiffs' alleged trade secrets was by *improper means*.  *S. Cal. Inst. of Law v. TCS Educ. Sys.*, 2011 WL 1296602, at *7 (C.D. Cal. Apr. 5, 2011) ("Alleging mere possession of trade secrets is not enough." (internal alteration omitted)).  Plaintiffs do not allege facts plausibly establishing Apple's knowledge that either Lamego or O'Reilly had a duty to maintain confidentiality of *specific* information purportedly shared with Apple, or that Apple knew such information was confidential.  FAC ¶¶ 215–16, 218.  Instead, Plaintiffs allege that Apple "knew" that (1) "Lamego was the [CTO] of Cercacor and a Research Scientist at Masimo;" (2) "Lamego was under a duty to maintain the secrecy of the information he obtained from Plaintiffs" under his "employer-employee relationship, fiduciary relationship, and Lamego's employment agreements;" and (3) "Plaintiffs considered the information confidential by virtue of [Apple's] prior relationship with Plaintiffs."  *Id.* ¶ 216.  These allegations do not support a plausible inference of misappropriation.

> ***(i)        Apple's hiring of Plaintiffs' former employees is not improper***.  Under the CUTSA and the law of this Circuit, "a party cannot prove trade secret misappropriation by demonstrating that a former employee's new employment will inevitably lead the former employee to rely on the former employer's trade secrets." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012); *see Les Concierges, Inc. v. Robeson*, 2009 WL 1138561, at *2 (N.D. Cal. Apr. 27, 2009) ("a threat of misappropriation cannot, as a matter of California law, be inferred [because the employee], upon voluntarily terminating his employment . . ., immediately began

working for a direct competitor and appears to be performing . . . the same or similar job duties he performed" for plaintiff).  Yet this is precisely what Plaintiffs attempt to do.

As to Lamego, Plaintiffs allege that he had "*access* to [their] highly confidential technical information," "*learned* guarded secrets regarding Plaintiffs' mobile medical products" while employed by them, and purportedly possessed unspecified confidential information after he left.  FAC ¶¶ 22–23 (emphasis added).  Plaintiffs do not allege that Lamego improperly took specific trade secrets or failed to return them.  The allegations concerning O'Reilly are even more speculative.  O'Reilly apparently did not even have access to trade secrets.  Plaintiffs merely allege that O'Reilly was "privy to [Masimo's] *extremely sensitive information*." *Id*. ¶ 20 (emphasis added).

Without plausible factual allegations that either Lamego, O'Reilly, or one of the other *unidentified* former employees *improperly acquired* trade secrets, the FAC cannot plausibly allege that Apple improperly acquired (or used or disclosed) those secrets, because Plaintiffs' former employees are the only links alleged between Plaintiffs and Apple.  *Cf. Human Longevity, Inc*., 2018 WL 6617633, at *6 (DTSA claim "inadequate[ly]" pleaded where based on theory that defendant who had access to trade secrets while in plaintiff's employ must have disclosed that information when he started working for competitor and began "development of a program to compete with" his former employer).  That Lamego and O'Reilly continued to work in the "healthcare technology" field is irrelevant to Plaintiffs' CUTSA claim—an employee is entitled to carry over knowledge learned in a particular trade.  *Universal*, 707 F.Supp. at 1177–78.

**(ii)     *Lamego's undefined "duty" per the January 2014 "warning" letter does not establish a plausible basis for Apple's alleged improper acquisition*.**  Plaintiffs attempt to charge Apple with knowledge of their unspecified "confidential" information by alleging that they sent Apple "a copy of Lamego's Employee Confidentiality Agreement with Cercacor."  FAC ¶ 216.  But the "warning" letter only underscores that Plaintiffs did *not* give Apple notice of the bounds of their purported trade secrets.  RJN Decl. Ex. A.  It describes "Confidential Information" as "any information in any form"

that Cercacor or its "affiliates" "consider[] confidential, *including without limitation*":

> business plans, customer files, customer lists, supplier lists, sales and marketing
> reports, forecasts, strategies, technical data, prices and costs, designs and
> formulas, discoveries, processes, manufacturing techniques, know-how,
> improvements, ideas or copyrightable works, software, databases, personnel and
> payroll records, mailing lists, accounting records, works of authorship, inventions,
> trade secrets and other business information.  [*Id.* at 6 (emphasis added).]

For this reason, Plaintiffs' claim that Apple "induced" a breach of Lamego's
confidentiality obligations fails.  Apple could not induce Lamego to breach an agreement
whose parameters are undefined.  *Cf. Invisible Dot, Inc. v. DeDecker*, 2019 WL
1718621, at *5 (C.D. Cal. Feb. 6, 2019) ("[T]his laundry list of items separated by
ellipses—presumably quoted from one of the several agreements that DeDecker
signed . . . does not meaningfully define the trade secrets.").  In addition, Plaintiffs allege
absolutely no facts describing how Apple purportedly induced such a breach.  *See* FAC
¶ 216; *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 2015 WL 6552698, at *3 (N.D.
Cal. Oct. 28, 2015) (granting motion to dismiss because "nowhere in its complaint does
[plaintiff] allege any facts that would allow the Court to infer that [defendant] knew or
should have known that [the] trade secrets were misappropriated"); *Carr v. AutoNation
Inc.*, 2018 WL 288018, at *3 (E.D. Cal. Jan. 4, 2018) (dismissing trade secrets claim
where "conclus[ory] allegations do not explain how LKQ got the Business Plan (or its
contents) from AutoNation, and what specifically would have caused LKQ to know or
have reason to know that AutoNation's possession of the Business plan was wrongful").

Relatedly, that "*Lamego* knew or had reason to know" that "his knowledge of
Plaintiffs' Confidential Information was acquired under . . . a duty to maintain its
secrecy and limit its use" is irrelevant as to *Apple's* state of mind.  FAC ¶ 217 (emphasis
added).  This allegation fails to plausibly allege improper acquisition by *Apple*, because
any purported "passive reception" of trade secrets (there was none) is not "acquisition"
under the CUTSA.  *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 223 (Cal.
Ct. App. 2010) ("The choice of that term ['acquire'] over 'receive' suggests that

1  inadvertently coming into possession of a trade secret will not constitute acquisition."),

2  *overruled on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (Cal. 2011);

3  *Pellerin*, 877 F. Supp. 2d at 989 (mere possession of trade secrets is not enough).

4  **(iii)   *Any agreements with Apple are insufficiently pleaded to establish***

5  ***"improper acquisition."***   Plaintiffs allege that in 2013, Apple and Masimo entered into

6  a confidentiality agreement for a potential collaboration and thereafter "confidential[ly]"

7  discussed Masimo's technology.   FAC ¶ 19.   The FAC does not allege (1) that Apple

8  breached that agreement, (2) what the agreement covered, (3) whether Apple actually

9  received any specific confidential information, and (4) if so, what Apple was entitled to

10  do with it.   *Id*.   Nor does it attach the agreement.   Plaintiffs have failed to plead the

11  material terms of the contract between Apple and Masimo; in turn, that contract cannot

12  serve as a basis for Apple's supposed knowledge that Plaintiffs' unspecified information

13  was confidential or could not be acquired, used, or disclosed.   *Zora Analytics, LLC v.*

14  *Sakhamuri*, 2013 WL 12124612, at *5 (S.D. Cal. June 18, 2013) (dismissing claim

15  where plaintiff "failed to adequately plead the terms of the NDA"; "[d]etermining

16  whether [defendant] has violated a NDA . . . is difficult without at least alleging the

17  NDA's material terms"); *Space Data*, 2017 WL 5013363, at *2 ("Google received the

18  alleged trade secrets pursuant to the NDA.   Accordingly, Space Data must plead facts

19  showing that Google had a duty not to use the information in the way alleged.").

20  The FAC does not even allege that Apple had a confidentiality agreement with

21  Cercacor.   The only plausible inference to draw from the omissions is that there was no

22  breach—i.e., that any supposed acquisition, use, or disclosure by Apple was permitted

23  by any agreement that existed.   *Cf. Zomm, LLC v. Apple Inc.*, 391 F. Supp. 3d 946, 952

24  (N.D. Cal. 2019) (dismissing breach claims where confidentiality provisions allowed

25  use of information that could be derived from reverse engineering or prior patents).

26  **2.   Plaintiffs Fail to Allege Improper Disclosure or Use by Apple.**

27  Plaintiffs also fail to plausibly allege Apple's improper *use* or *disclosure* of their

28  alleged trade secrets.   To survive a Rule 12(b)(6) motion, a plaintiff must "plead[] *factual*

content that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphases added). Here, Plaintiffs allege that "*Lamego* used and disclosed" their information for Apple's benefit, and that Apple "*further* used and disclosed" Plaintiffs' information "at least by incorporating it into [Apple's] products and by filing patent applications containing" that information, without their "express or implied consent." FAC ¶¶ 217–18 (asserting, on information and belief, unauthorized use/disclosure of information obtained from Plaintiffs and their *unspecified* former employees); ¶ 215 (similar allegations on information and belief).

These conclusory allegations fail to identify how Apple knew which specific "Confidential Information" it purportedly used—let alone how the information allegedly was incorporated into Apple's products or patent applications. *E.g.*, *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012) (dismissing trade secrets claims because plaintiff did not sufficiently allege that defendant, which had received technology from a third party under contract with plaintiff, knew the third party was not authorized to provide that technology). Plaintiffs fail to allege any plausible facts supporting their disclosure/use allegations, and for this reason too, their trade secret claim fails. *Delphix Corp. v. Actifo, Inc.*, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014) (dismissing complaint in part because allegation "on information and belief" gave rise to "reasonable inference . . . that it is intended as caveat," and "creates a further inference that plaintiff . . . is instead engaging in speculation to an undue degree").

**D.    Plaintiffs Should Be Denied Leave to Amend Their CUTSA Claim.**

Plaintiffs have now had two chances to plead:  (1) a timely trade secret claim; (2) cognizable trade secrets; and (3) improper acquisition, use, and/or disclosure by Apple. They have failed, and so their FAC should be dismissed with prejudice. *Klamath-Lake Pharma. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983).

# V.    <u>CONCLUSION</u>

Apple respectfully requests that the Court dismiss Plaintiffs' Thirteenth Cause of Action for trade secret misappropriation under the CUTSA with prejudice.

Gibson, Dunn & Crutcher LLP

1   Dated:  April 20, 2020                Respectfully submitted,

2                                         JOSHUA H. LERNER
                                          H. MARK LYON
3                                         BRIAN M. BUROKER
                                          ILISSA SAMPLIN
4                                         ANGELIQUE KAOUNIS
                                          GIBSON, DUNN & CRUTCHER LLP
5

6
                                          By:  */s/ Joshua H. Lerner*
7                                              Joshua H. Lerner

8
                                          *Attorneys for Defendant Apple Inc.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28