# Exhibit A

ISS470



INTELLECTUAL PROPERTY LAW

KNOBBE MARTENS OLSON & BEAR LLP

2040 Main St., 14th Fl., Irvine, CA 92614
T (949) 760-0404

Stephen C. Jensen
Steve.Jensen@knobbe.com

January 24, 2014

**VIA U.S. MAIL**

Timothy D. Cook
Chief Executive Officer
Apple Inc.
1 Infinite Loop
Cupertino, CA 95014

Re:   *Employment Obligations of Marcelo Lamego*
      Our Reference No.: CERCAL.096L

Dear Mr. Cook:

This firm represents Cercacor Laboratories, Inc. We understand that Apple recently offered employment to Cercacor's Chief Technology Officer, Marcelo Lamego. We believe that Apple has hired Mr. Lamego to design and develop products that are likely the same as the products that he was responsible for developing for Cercacor. Apple's design, development, or sales efforts on any such product would compete directly with Cercacor's efforts.

In his capacity as Cercacor's CTO, Mr. Lamego was responsible for *all* of Cercacor's research and development and *all* projects that are underway, or even contemplated, at Cercacor. These projects include mobile health devices and applications and physiological measurements. Mr. Lamego has been the key engineer at Cercacor for more than 10 years. Mr. Lamego learned, and personally conceived, a large number of very valuable trade secrets while he was at Masimo, and he continued to use and improve those trade secrets under license from Masimo when Cercacor was spun off from Masimo. Mr. Lamego possesses detailed knowledge of trade secrets that only a very few individuals know, pertaining to technologies that other companies have for decades tried and failed to develop.

We note that Apple expressed great interest in the Masimo technology on which Mr. Lamego was trained—the same technology that Mr. Lamego applied at Cercacor. Apple has been targeting Masimo and Cercacor personnel for some time. Apple hired Masimo's Chief Medical Officer, Michael O'Reilly. Thereafter, Apple expressed to Masimo and Cercacor's CEO that Apple had even greater interest in Cercacor. The CEO responded that Cercacor's owners had no current desire to sell the company. Shortly thereafter, we understand that Apple increased its efforts to recruit Mr. Lamego. It is difficult to imagine any reason for this sequence of events other than Apple is attempting to gain access to, or at least the benefit of, Cercacor and Masimo's trade secrets.

Mr. Lamego executed an Employee Confidentiality Agreement (the "Agreement") with Cercacor,[1] a copy of which is enclosed. The Agreement prohibits Mr. Lamego, for a period of two years after the end of his employment with Cercacor, from competing with Cercacor, and it specifically recites that the purpose of this non-compete provision is to protect Cercacor's trade secrets. As you may know, California law recognizes the enforceability of a non-compete agreement designed to accomplish that purpose. The Agreement provides in pertinent part as follows:

---

[1] The parties to the Agreement are Mr. Lamego and Masimo Laboratories. Masimo Laboratories subsequently changed its name to Cercacor Laboratories, Inc.

**Knobbe | Martens**

Timothy D. Cook
Page 2

12.   During my employment, . . . I will not render services to anyone outside [Cercacor], accept competing employment, or make preparations to compete with [Cercacor].

13.   During my employment and for a period of five (5) years immediately following termination of my employment with [Cercacor], I will not (a) solicit or induce any employee or consultant of [Cercacor] to quit their employment or cease doing business with [Cercacor], or (b) solicit [Cercacor's] customers or suppliers, unless I am specifically authorized to do (a) or (b) by [Cercacor].

14.   I agree that, during the term of my employment and for a period of two (2) years immediately following my termination of employment with [Cercacor] (voluntary or otherwise), I shall be prohibited from competing with any business, product or service of [Cercacor].

15.   I agree that the activities forbidden in paragraphs 13 and 14 above would necessarily involve the use or disclosure of [Cercacor's] trade secrets and proprietary and confidential information and are necessary to protection of [Cercacor's] trade secrets and proprietary and confidential information. I understand that none of my activities will be prohibited under paragraphs 13 and 14 to the extent that I can prove that the action was taken without the use or disclosure of any of [Cercacor's] trade secrets or proprietary or confidential information.

As you can see, the Agreement also prohibits Mr. Lamego from soliciting other employees and from soliciting business from any of Cercacor's customers or suppliers. In view of Mr. Lamego's obligations arising from the Agreement, we trust that Apple will employ Mr. Lamego in an area that does not involve healthcare technology, including mobile health applications and the measurement of physiological information. We also ask that Apple refrain from inducing Mr. Lamego to take actions that would violate the Agreement while he performs services for Apple and that Apple will direct Mr. Lamego to honor his obligations to all of his prior employers. Of course, Cercacor reserves any and all rights and remedies that it may have, now and in the future, against Apple and Mr. Lamego relating to this matter.

Very truly yours,

*Steve Jensen* a.h.

Stephen C. Jensen

Enclosure

cc (via email, w/ encl.):
    Adrian Perica (perica@apple.com)
    Marcelo Lamego (via U.S. mail)

17102982

knobbe.com

Exhibit A
Page 5

## MASIMO LABS EMPLOYEE CONFIDENTIALITY AGREEMENT
(United States)

As an employee of Masimo Laboratories, a Delaware corporation ("Masimo Labs") and in consideration of the compensation and benefits from my employment, I agree as follows:

For purposes of this Agreement, the term Confidential Information means any information in any form that Masimo Labs considers confidential, including without limitation business plans, customer files, customer lists, supplier lists, sales and marketing reports, forecasts, strategies, technical data, prices and costs, designs and formulas, discoveries, processes, manufacturing techniques, know-how, improvements, ideas or copyrightable works, software, databases, personnel and payroll records, mailing lists, accounting records, works of authorship, inventions, trade secrets and other business information. Confidential Information also includes information to which I am exposed during the course of my employment with Masimo Labs that is considered confidential to Masimo Labs' affiliates or any third party.

1. During my employment by Masimo Labs, I will not disclose or make use of any Confidential Information except as authorized by Masimo Labs and as necessary for the performance of my duties as a Masimo Labs employee.

2. After my employment with Masimo Labs has terminated, I will not disclose or make use of any Confidential Information for any purpose, either on my own or on behalf of another business.

3. During my employment with Masimo Labs, I will not disclose or make use of any confidential, proprietary or trade secret information or material belonging to a former employer or other third party without the express approval of Masimo Labs and such former employer or other third party.

4. I represent that I am not subject to any agreement(s) with any third party that would prevent me from performing all of my assigned duties as a Masimo Labs employee.

5. Prior to my employment with Masimo Labs, I did not create any inventions, works of authorship, or trade secrets that relate in any way to the business of Masimo Labs, except for those, if any, identified on the list attached to this Agreement as Exhibit A.

6. I agree that the fruits and products of my labor as a Masimo Labs employee shall belong solely to Masimo Labs.

7. I agree to assign and hereby assign to Masimo Labs all rights that I may have to any inventions, works of authorship, developments, improvements, or trade secrets that I may develop during the course of my employment, except for inventions which I am allowed to retain under California Labor Code section 2870, a copy of which is attached to this Agreement as Exhibit B.

8. I agree that all works of authorship to which I contribute during my employment shall be considered "works made for hire" and shall be the sole property of Masimo Labs.

9. I will keep adequate records of all inventions and works of authorship to which I contribute during my employment, and will make such records available to Masimo Labs on request.

10. I will cooperate with Masimo Labs and do whatever is necessary or appropriate to obtain patents, copyrights, or other legal protection on projects to which I contribute, and, if I am incapacitated for any reason from doing so, I hereby authorize Masimo Labs to act as my agent and to take whatever action is needed on my part to carry out this Agreement.

11. Upon termination of my employment for any reason, I will immediately assemble all property of Masimo Labs, including any proprietary or confidential information, in my possession or under my control and return it unconditionally to Masimo Labs.

1

12. During my employment, I will devote all of my working time and energy to the business of Masimo Labs, and I will not render services to anyone outside Masimo Labs, accept competing employment, or make preparations to compete with Masimo Labs.

13. During my employment and for a period of five (5) years immediately following termination of my employment with Masimo Labs, I will not (a) solicit or induce any employee or consultant of Masimo Labs to quit their employment or cease doing business with Masimo Labs, or (b) solicit Masimo Labs' customers or suppliers, unless I am specifically authorized to do (a) or (b) by Masimo Labs.

14. I agree that, during the term of my employment and for a period of two (2) years immediately following my termination of employment with Masimo Labs (voluntary or otherwise), I shall be prohibited from competing with any business, product or service of Masimo Labs.

15. I agree that the activities forbidden in paragraphs 13 and 14 above would necessarily involve the use or disclosure of Masimo Labs' trade secrets and proprietary and confidential information and are necessary to protection of Masimo Labs' trade secrets and proprietary and confidential information. I understand that none of my activities will be prohibited under paragraphs 13 and 14 to the extent that I can prove that the action was taken without the use or disclosure of any of Masimo Labs' trade secrets or proprietary or confidential information.

16. I agree that a violation of this Agreement may cause irreparable harm to Masimo Labs' reputation, customer relationships, and other aspects of its business for which an award of money damages would be inadequate. I therefore agree that Masimo Labs shall be entitled to a court order as appropriate to prevent me from violating this Agreement, in addition to any claims for money damages or other relief.

17. For purposes of enforcing this Agreement, I hereby consent to jurisdiction in the Superior Court of California for the County of Orange, as well as any other jurisdiction allowed by law.

18. This Agreement shall be governed by the law of the state in which I reside, or Delaware if I reside outside the United States.

19. I understand that my obligations under this Agreement remain in effect even after my employment with Masimo Labs terminates.

20. This Agreement does not guarantee me any term of employment or limit my or Masimo Labs' right to terminate my employment at any time, with or without cause.

21. The laws of each state differ. Thus, if any provision of this Agreement is invalid or not permitted in your particular state of residence, all other provisions shall remain in effect.

22. This Agreement is binding on my successors and assigns, and will benefit the successors and assigns of Masimo Labs.

23. This Agreement represents my entire agreement with Masimo Labs with respect to the subject matter herein and in particular with respect to confidential, proprietary and trade secret information and materials and intellectual property rights, superseding any previous oral or written understandings or agreements with Masimo Labs or any of its officers. This Agreement may be amended or modified only in writing signed by all the parties hereto.

MASIMO LABS

By: _Clawejcerle_  Signature: _[signature]_

Name: _KAMILA MACIEJEWSKA_  Name: _MARCELO LAMEGO_

Title: _Office Manager_  Date: _5/19/09_

2

EXHIBIT A

LIST OF PRIOR INVENTIONS
AND ORIGINAL WORKS OF AUTHORSHIP*

| Title | Date | Identifying Number or Brief Description |
|---|---|---|
| NONE | | |

Name of Employee: MARCELO LOMELO

* If there are none, so state.

3

EXHIBIT B

CALIFORNIA LABOR CODE SECTION 2870
EMPLOYMENT AGREEMENTS; ASSIGNMENT OF RIGHTS

"(a) Any provision in an employment agreement which provides that an employee shall assign or offer to assign any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer.

(2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."