Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
KNOBBE, MARTENS, OLSON &
BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:  (949)-760-0404
Facsimile:  (949)-760-9502

Adam B. Powell (SBN 272725)
adam.powell@knobbe.com
KNOBBE, MARTENS, OLSON &
BEAR, LLP
12790 El Camino Real
San Diego, CA 92130
Telephone:  (858) 707-4000
Facsimilie:   (858) 707-4001

*Attorneys for Plaintiffs Masimo
Corporation and Cercacor Laboratories,
Inc.*

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.:  415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.:  650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8541 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

*Attorneys for Defendant Apple Inc.*
[Additional counsel on following page]

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, CERCACOR LABORATORIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **JOINT STIPULATION REGARDING DEFENDANT APPLE INC.'S MOTION FOR PROTECTIVE ORDER BARRING TRADE SECRET-RELATED DISCOVERY ABSENT TRADE SECRET IDENTIFICATION** <br><br> Hr'g Date/Time:  May 21, 2020, at 10 a.m. <br> Courtroom:      6A <br> Judge:            Hon. John D. Early <br> Discovery Cutoff:     July 5, 2021 <br> Pretrial Conference:   March 21, 2022 <br> Trial:               April 5, 2022 |

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTORY STATEMENTS ............................................................. 1

    A.   Apple's Introductory Statement ................................................... 1

    B.   Plaintiffs' Introductory Statement................................................. 3

II.   The Discovery Requests At Issue......................................................... 6

III.   APPLE'S POSITION ......................................................................... 10

    A.   FACTS ............................................................................... 10

    1.   Plaintiffs Impermissibly Sought To Obtain Discovery Of Apple's
Confidential Information In The *True Wearables* Case. ...................... 10

    2.   Plaintiffs Failed To Allege Their Purported Trade Secrets With Any
Particularity. ........................................................................ 11

    3.   Plaintiffs Ignored Apple's Request For A Section 2019.210
Disclosure And Propounded Trade Secret-Related Discovery............... 11

    4.   Plaintiffs Filed An FAC That Merely Expanded The Generic
Categories Of Information Claimed As Trade Secrets. ...................... 12

    5.   Plaintiffs' Requests For Production Nos. 5-25 Seek Premature
Trade-Secret Related Discovery From Apple.................................. 12

    6.   The Parties Met And Conferred About Plaintiffs' Premature
Requests For Production. ......................................................... 17

    B.   ARGUMENT ....................................................................... 18

    1.   That Plaintiffs Filed Their CUTSA Claim In Federal Court Does
Not Mean Plaintiffs Need Not Describe Their Secrets........................ 19

    2.   Plaintiffs Have Not Identified Their Purported Trade Secrets, And
The FAC Does Not Suffice........................................................ 20

    3.   Plaintiffs' Refusal To Comply With Section 2019.210 Frustrates
Each Of The Four Purposes Of The Statute.................................... 21

        a)   Plaintiffs Have Not Demonstrated That Their Trade
Secret Claim Has Any Merit. ............................................ 22

        b)   Plaintiffs Have Not Demonstrated That They Are
Actually Looking For *Their* Secrets In Apple's Files......... 24

        c)   Plaintiffs Have Not Assisted The Court In Framing
The Scope Of Trade Secret-Related Discovery. ................. 26

        d)   Plaintiffs Have Not Enabled Apple To Defend Against
Their Trade Secret Misappropriation Claim. ...................... 27

C.      CONCLUSION ..........................................................................28

IV.   PLAINTIFFS' POSITION ...............................................................29

A.    Judge Selna Already Decided Patent Discovery Is Not Stayed..............29

B.    Section 2019.210 Does Not Bar Patent Discovery ................................30

C.    The Discovery At Issue Is Patent Discovery ..........................................34

D.    Apple's Other Arguments Are Irrelevant and Incorrect .........................37

E.    Conclusion..............................................................................................40

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Defendant Apple Inc. ("Apple"), as movant, and Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor"), as respondents, submit the following Joint Stipulation regarding Apple's Motion for a Protective Order.  Pursuant to Local Rule 37-1, the parties met and conferred in good faith in an effort to resolve the Motion.

## I.     INTRODUCTORY STATEMENTS

### A.    Apple's Introductory Statement

Apple seeks an order barring Plaintiffs from taking trade secret-related discovery until Plaintiffs describe their trade secrets with reasonable particularity consistent with California Code of Civil Procedure Section 2019.210 ("Section 2019.210").   Apple wants to address the trade secret claim in this action as quickly as possible, and therefore has repeatedly requested that Plaintiffs comply with the procedures set out in Section 2019.210 since the outset of the case.  Plaintiffs have refused.

District courts throughout California, *including this Court*, recognize that Section 2019.210 serves an essential function in cases like this one—it discourages meritless trade secret claims, prevents plaintiffs from abusing the discovery process to access the defendant's trade secrets, assists the court in framing the appropriate scope of discovery, and enables a defendant to form "complete and well-reasoned defenses" against claims of misappropriation.  *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D. Cal. Sept. 3, 2019) (Early, J.).

The need for a reasonable description of the alleged secrets in this case is acute. Plaintiffs' allegations of trade secret misappropriation raise *every* problem that Section 2019.210 is intended to solve:

*First*, the only description of the alleged trade secrets provided by Plaintiffs—in their First Amended Complaint—provides no hint as to the merits of the misappropriation claim.  To the contrary, Plaintiffs' original complaint claimed a non-exhaustive list of seven broad categories of information, such as "business plans" and "technical data."  Lerner Decl. Ex. C (Compl.) ¶ 181.  Plaintiffs then compounded the

problem by amending to allege a new list of *50* generalized categories of information, *including but not limited to* "technical information, sales and marketing information, and other business information," as well as unspecified combinations.  *Id.* Ex. G (FAC) ¶ 211.  Plaintiffs allege thousands of potential trade secrets in non-descript categories that cover every aspect of Plaintiffs' business.  These broad categories and combinations are insufficient to plead a claim, and are *unquestionably* insufficient to satisfy Plaintiffs' obligation to identify their alleged secrets with particularity before taking trade secret-related discovery.  Furthermore, Plaintiffs concede that many, if not all, of their purported secrets are now public.  Plaintiffs cannot force Apple to search for the proverbial needle in the haystack by claiming generalized categories of information that might or might not qualify as trade secrets.

*Second*, Plaintiffs repeatedly have tried to access Apple's confidential information before they identify their own alleged trade secrets.  Just *one day before* Plaintiffs filed this case, they sought discovery of Apple's confidential information through a third-party subpoena in *Masimo Corp. et al. v. True Wearables Inc. et al.*, No. 8:18-cv-02001-JVS-JDE (the "*True Wearables* Case").  The subpoena created the obvious risk that Section 2019.210 guards against:  Plaintiffs could review whatever confidential information about health monitoring technology they could find in Apple's files and claim it as their own.  Plaintiffs jettisoned their subpoena after Apple sought a protective order and their strategy was exposed.  The requests for production at issue here are merely a continuation of that strategy.  Plaintiffs characterize the requests for production as patent-related, but that is nothing more than an attempted end-run around Section 2019.210.  The requests for production, on their face, seek the very categories of information that Plaintiffs allege as their trade secrets.  Plaintiffs cannot use their patents as a vehicle by which to review Apple's confidential information in another effort to concoct a misappropriation claim.

*Third*, until Plaintiffs specifically define their alleged trade secrets, neither the Court nor the parties can tailor or manage the discovery process in this case.  Among

other things, it is impossible to measure proportionality under Rule 26.  Indeed, Plaintiffs allege that their list of about 50 generalized categories of purported trade secret information, plus unspecified combinations of those categories, is not even complete. Plaintiffs state that their trade secrets "include, but are not limited to," 50 general categories of information (Lerner Decl. Ex. G (FAC) ¶ 211)—a caveat that renders the scope of the already broad categories unbounded, making it impossible to efficiently and effectively conduct discovery in this case.

*Fourth*, without a clear articulation of the trade secrets at issue, Apple cannot formulate complete and well-reasoned defenses.  A reasonable description of the alleged secrets will assist Apple in addressing basic issues, including the statute of limitations and, relatedly, which alleged secrets were public and when.  Furthermore, if there are any valid secrets here—and Apple does not believe there are—an adequate description will enable Apple to curtail any purported future harm to Plaintiffs.

For these reasons, Apple respectfully requests that the Court grant a protective order prohibiting Plaintiffs from "commencing discovery relating to the [alleged] trade secret[s]" until Plaintiffs provide a Section 2019.210 disclosure that describes their purported secrets with the "reasonable particularity" the law requires.  Cal. Code Civ. Proc. § 2019.210.

## B.     Plaintiffs' Introductory Statement

Apple's Motion is moot because Judge Selna already decided the issues raised in Apple's Motion.  After Apple served its portion of the joint stipulation, the parties submitted a Rule 26(f) report addressing whether and how Section 2019.210 applies to this case.  *See* Powell Decl., Ex. 8.  Like it does here, Apple argued Section 2019.210 bars discovery of information concerning Plaintiffs' patent case that may ***also*** be relevant to trade secrets.  *Id*. at 13, 16-20.  Apple "request[e]d that Plaintiffs be barred from commencing" such discovery until Plaintiffs serve a Section 2019.210 statement. *Id*. at 20.  The parties proposed patent-specific dates, including dates for infringement contentions and Apple disclosing "core technical documents" concerning the "accused

products." *Id.* at 25-26.  Apple argued, however, that these patent-specific dates should be "subject to Plaintiffs providing an adequate identification of their alleged trade secrets in compliance with Section 2019.210 insofar as such an identification is a prerequisite to such discovery." *Id.* at 26.

Judge Selna rejected Apple's argument and resolved the dispute, holding: "The Court **adopts the patent specific dates**.  The Court stays the **trade secret discovery only** pending compliance with 2019.210."  Powell Decl., Ex. 9 (emphasis added).  After the ruling, Plaintiffs stated they will provide a Section 2019.210 statement before serving trade secret discovery and asked Apple to withdraw this Motion because the requests at issue seek **patent discovery**, which is **not** stayed.  Apple refused, maintaining that **all** discovery concerning the accused products is barred because it is also relevant to trade secrets.  Apple thus seeks a do-over through this Joint Stipulation.

Apple's objective is obvious: Apple intends to litigate the sufficiency of whatever Section 2019.210 statement Plaintiffs serves and thereby delay **all** technical discovery.  Apple asserts that, in a "typical case," the plaintiff "serves a Section 2019.210 disclosure and the parties litigate the deficiencies."  Joint Stipulation at 20.  Allowing Apple to delay patent discovery while it litigates the sufficiency of Plaintiffs' Section 2019.210 disclosure directly contradicts Judge Selna's ruling adopting the "patent specific dates" and staying "trade secret discovery only."  Powell Decl., Ex. 9.  This Court should refrain from modifying what the Order already says: patent discovery must move forward.

Patent discovery is necessary to comply with Court-ordered deadlines, including infringement contentions.  The requests seek basic information about the accused products.  Some are even directed towards particular claim limitations. For example, RFP No. 16 seeks information about components that "separate light emitted by LEDs from other components of any of the Accused Products."  That is relevant at least to claim language reciting "a light block forming an enclosing wall between the light emission source and the plurality of detectors . . . ."  Powell Decl., Ex. 1 at Claim 1.

Even if Judge Selna had not already entered his Order, nothing would support

Apple's argument.  Apple recites Section 2019.210, but ignores the case law interpreting the statute.  *See* Cal. Code Civ. Proc. § 2019.210 ("before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity").  Apple argues the "relating to" language bars all patent discovery if the requested information is ***also*** relevant to trade secrets.  But the California Court of Appeals construed Section 2019.210 as barring discovery of other claims only if the claim is "factually dependent" or "hinges upon" the misappropriation of trade secrets.  *See Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005).

As a result, California courts routinely require a defendant to produce technical documents relevant to patent infringement even if the documents could also be relevant to a trade secret claim.  *See, e.g.*, *Space Data Corp. v. X*, 2017 WL 3007078, *4 (N.D. Cal. July 14, 2017).  Similarly, this Court refused to bar discovery of "drawings and designs for unreleased products" under Section 2019.210 because the information was "relevant to claims other than the trade secret misappropriation claim, such as [plaintiff]'s claim for copyright infringement."  *Bryant v. Mattel*, 2007 WL 5430888, *3 n.3 (C.D. Cal. May 18, 2007); *see also E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 WL 3062160, at *6 (E.D. Cal. June 19, 2018) (finding Section 2019.210 disclosure was insufficient, but holding the parties "shall proceed with discovery on non-trade secret claims" while plaintiffs prepared an amended disclosure).

Apple originally relied on *Advanced Modular* during the meet-and-confer.  However, Plaintiffs pointed out that *Advanced Modular* supports Plaintiffs because, in this case, patent infringement is not "factually dependent" on misappropriation of trade secrets. Apple did not argue otherwise, instead abandoning its reliance on *Advanced Modular* and relying exclusively on the "related to" language of Section 2019.210. Nothing supports Apple's sweeping interpretation of the statute.

Apple also sets forth a series of largely irrelevant and factually misleading arguments.  For example, Apple argues the First Amended Complaint broadened

Plaintiffs' trade secret definition. The amendment actually provided additional detail about the categories of trade secrets identified in the initial Complaint. Apple also asserts "Plaintiffs concede that many, if not all, of their purported secrets are now public." Joint Stipulation at 2. That is incorrect. Plaintiffs alleged Apple published **some** of their trade secrets in patent publications, but never alleged all of their trade secrets are public.

Apple also complains about the timing of a subpoena Plaintiffs served on Apple in *Masimo Corp. et al. v. True Wearables Inc. et al.*, No. 8:18-cv-02001-JVS-JDE (the "*True Wearables* Case"). The timing was dictated by the rapidly approaching close of fact discovery. Once the Court extended the fact discovery deadline, Plaintiffs withdrew the subpoena to determine if it was necessary in view of the extended discovery deadline. Plaintiffs cannot be faulted for trying to avoid unnecessarily burdening the courts.

Nothing supports Plaintiffs attempt to bar **all** technical discovery—including patent discovery—until Apple agrees that Plaintiffs have complied with Section 2019.210. Judge Selna already resolved this issue and held that patent discovery should proceed. Plaintiffs respectfully request the Court deny Apple's motion and order Apple to substantively respond to patent discovery, including RFP Nos. 5-25.

## II.    THE DISCOVERY REQUESTS AT ISSUE

In accordance with Local Rule 37-2.1, below are the verbatim Requests for Production that are the subject of this Motion. Apple has not yet served responses because the parties agreed to extend its time to respond until April 30, 2019.

**REQUEST FOR PRODUCTION NO. 5:**

Documents sufficient to show the design and operation of the Accused Products.

**REQUEST FOR PRODUCTION NO. 6:**

All documents and things describing the operation of the Accused Products, including, without limitation, product brochures, user manuals, instructional materials, and directions for use.

**REQUEST FOR PRODUCTION NO. 7:**

All training materials concerning any of the Accused Products, including, without limitation, training manuals, training videos, presentations, and handouts.

**REQUEST FOR PRODUCTION NO. 8:**

All marketing materials concerning any of the Accused Products, including, without limitation, advertisements, promotional materials, pamphlets, brochures, product catalogs, websites, product brochures, informational materials, and videos.

**REQUEST FOR PRODUCTION NO. 9:**

All publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 10:**

All videos or DVDs demonstrating or showing the operation of the Accused Products.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and things that refer or relate to the use, effectiveness, capabilities, functionality, or characteristics of the physiological monitoring features of any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 12:**

All technical documents for the Accused Products, including, without limitation, product specifications, diagrams, schematics, memos, conceptual or technical drawings, design requirements documents, design capture documents, technical requirements documents, product briefs, product plans, product requirements, document trees, assembly design documents, design review documents, system design documents,

fabricating drawings, manufacturing documents, and technical meeting minutes.

**REQUEST FOR PRODUCTION NO. 13:**

All documents and things that refer or relate to technical information, specifications, and research data for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 14:**

All documents and things concerning the research, design, and development of any of the Accused Products or any component of any of the Accused Products, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, conceptual or technical drawings, schematics, diagrams, technical specifications, meeting minutes, presentations, and prototypes.

**REQUEST FOR PRODUCTION NO. 15:**

All documents and things that refer or relate to optical or structural components of any of the Accused Products, including emitters, sensors, detectors, filters, covers, lenses, masks, housing, adhesives, openings, magnets, magnetic shields, carriers, bodies, interior surfaces, walls, protrusions, and sensor subsystems.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and things that refer or relate to any components, surface areas, or adhesives that separate light emitted by LEDs from other components of any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 17:**

Documents sufficient to show the operation of any algorithms used to monitor any physiological parameter in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 18:**

Documents sufficient to show the operation of any heart rate algorithms used in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 19:**

All documents and things that refer or relate to the development of the heart rate algorithms for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 20:**

All documents and things that refer or relate to selection between any heart rate algorithms used in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 21:**

All documents and things that refer or relate to power consumption by any heart rate algorithms used in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 22:**

All documents and things that refer or relate to the operation of any LEDs used to determine pulse rate or heart rate for any of the Accused Products, including but not limited to documents and things that refer or relate to LED timing, duty cycle, current, or power usage.

**REQUEST FOR PRODUCTION NO. 23:**

All documents and things that refer or relate to collecting first heart rate metrics using a first technique during a first period and collecting second heart rate metrics using a second technique during a second period for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 24:**

All documents and things that refer or relate to changes in collecting heart rate metrics based on user input for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and things that refer or relate to changes in collecting heart rate metrics based on a change in operating mode for any of the Accused Products.

Gibson, Dunn &
Crutcher LLP

# III.   APPLE'S POSITION

## A.   FACTS

For the past 44 years, Apple has been able to revolutionize the mobile and personal computing markets because of its significant investment in technological innovation, and its ability to translate its trade secrets into transformative products, such as the Apple Watch.   Years after the Apple Watch became a commercial success, Plaintiffs filed this lawsuit alleging trade secret misappropriation.   Plaintiffs now improperly seek unfettered access to confidential information relating to the Apple Watch without first describing their alleged secrets.

Below, Apple sets forth a timeline of the facts relevant to this Motion.

### 1.   Plaintiffs Impermissibly Sought To Obtain Discovery Of Apple's Confidential Information In The *True Wearables* Case.

One day before Plaintiffs filed the complaint in this case, Plaintiffs served a subpoena on Apple in the *True Wearables* Case.  *See* Lerner Decl. ¶ 2 & Ex. A.  As this Court is likely aware, on November 8, 2018, Plaintiffs filed the *True Wearables* Case against former Apple employee, Marcelo Lamego, and his company, True Wearables, alleging claims of breach of contract, breach of fiduciary duty, trade secret misappropriation, and patent infringement.  Plaintiffs' subpoena to Apple, served nearly one year after discovery began in the *True Wearables* Case, sought information that was not relevant to the *True Wearables* Case, but on its face pertained to the trade secret misappropriation claim Plaintiffs intended to file against Apple the very next day, in this case.

After Apple filed a motion to quash and requested a protective order that, *inter alia*, identified Plaintiffs' requirement under Section 2019.210 to identify their purported trade secrets with reasonable particularity before commencing trade secret-related discovery from Apple (*Id.* ¶ 3 & Ex. B), Plaintiffs withdrew the subpoena to Apple in the *True Wearables* Case.

### 2. Plaintiffs Failed To Allege Their Purported Trade Secrets With Any Particularity.

Plaintiffs' original complaint, filed January 9, 2020, alleged that Apple misappropriated seven broad categories of generic business or technical information, "including, but not limited to, Plaintiffs' business plans, know-how, technical information, technical data, designs, manufacturing techniques and other business information." Lerner Decl. Ex. C (Compl.) ¶ 181. Even though Plaintiffs alleged that Apple had disclosed the alleged trade secrets "by filing patent applications containing Masimo's Confidential Information" and disclosed their "Confidential Information . . . in [] patent filings," the complaint failed to identify the portions of Apple's patent filings containing their alleged trade secrets. *Id.* ¶¶ 185, 187.

### 3. Plaintiffs Ignored Apple's Request For A Section 2019.210 Disclosure And Propounded Trade Secret-Related Discovery.

After Plaintiffs filed their complaint, the parties met and conferred on February 25, 2020. Lerner Decl. ¶ 5. Apple explained that the complaint failed to identify Plaintiffs' alleged trade secrets with sufficient particularity. *Id.*

Shortly thereafter, on March 6, 2020, Apple requested in writing that Plaintiffs identify (by line and page number) their trade secrets that purportedly were disclosed in any published patent application filed by Apple or in any patent held by Apple, as alleged in the complaint. *Id.* Ex. E. Apple explained that because Section 2019.210 requires Plaintiffs to describe all of their alleged trade secrets with "reasonable particularity" before commencing trade secret-related discovery, Plaintiffs should be able to identify those secrets promptly. *Id.* Plaintiffs ignored this request.

Instead, on March 16, 2020, Plaintiffs propounded 25 requests for production on Apple, the majority of which relate to Apple's confidential information—thereby evidencing Plaintiffs' intent to commence trade secret-related discovery in the absence of a Section 2019.210-compliant disclosure. *Id.* ¶ 8 & Ex. F.

### 4.   Plaintiffs Filed An FAC That Merely Expanded The Generic Categories Of Information Claimed As Trade Secrets.

After Apple filed a motion to dismiss for failure to state a claim, asserting, among other things, that Plaintiffs failed to allege any trade secrets with particularity (*see* Lerner Decl. Ex. D), Plaintiffs voluntarily elected to amend their complaint.  *See* Dkt. No. 21.  On March 25, 2020, Plaintiffs filed their First Amended Complaint (the "FAC").  Lerner Decl. ¶ 9 & Ex. G.  Rather than correct the deficiencies in the original complaint, the FAC lists *more—and in some cases, even broader*—categories of generic business information as Plaintiffs' claimed trade secrets.  *Id.* Ex. G (FAC) ¶ 211.  The number of categories of purported trade secrets multiplied from seven to approximately *50*, if not more—given that Plaintiffs now claim that combinations of the 50 categories may *also* be secrets.  In addition, the FAC alleges that the following catch-all categories of illusory information are trade secrets:

- "combinations and selections of the above information";
- "knowledge of the varying importance of the information";
- "knowledge for selecting which information and technology are important for improving reliability, improving measurements, and how to successfully combine and implement them to achieve the desired functionality"; and
- "negative information, what works well under certain conditions, and trade-offs of selecting certain techniques."

*Id*.  Plaintiffs' FAC was not accompanied by a Section 2019.210 disclosure.  To date, Plaintiffs have refused to serve a Section 2019.210 disclosure on Apple.

### 5.   Plaintiffs' Requests For Production Nos. 5-25 Seek Premature Trade-Secret Related Discovery From Apple.

At issue in this Stipulation are Plaintiffs' Requests for Production Nos. 5 through 25.  *See* Lerner Decl. Ex. F.  Each of these requests seek to uncover Apple's confidential information.

Specifically, 12 of the Requests seek confidential information about the design

and/or operation of the Apple Watch's non-invasive monitoring technology—which is not public information, but rather some of Apple's most closely guarded, confidential information:

**REQUEST FOR PRODUCTION NO. 5:**
Documents sufficient to show the design and operation of the Accused Products.

**REQUEST FOR PRODUCTION NO. 6:**
All documents and things describing the operation of the Accused Products, including, without limitation, product brochures, user manuals, instructional materials, and directions for use.

**REQUEST FOR PRODUCTION NO. 7:**
All training materials concerning any of the Accused Products, including, without limitation, training manuals, training videos, presentations, and handouts.

**REQUEST FOR PRODUCTION NO. 10:**
All videos or DVDs demonstrating or showing the operation of the Accused Products.

**REQUEST FOR PRODUCTION NO. 11:**
All documents and things that refer or relate to the use, effectiveness, capabilities, functionality, or characteristics of the physiological monitoring features of any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 12:**
All technical documents for the Accused Products, including, without limitation, product specifications, diagrams, schematics, memos, conceptual or technical drawings, design requirements documents, design capture documents, technical requirements documents, product briefs, product plans, product requirements, document trees, assembly design documents, design review documents, system design documents, fabricating drawings, manufacturing documents, and technical meeting minutes.

Gibson, Dunn & Crutcher LLP

**REQUEST FOR PRODUCTION NO. 13:**

All documents and things that refer or relate to technical information, specifications, and research data for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 14:**

All documents and things concerning the research, design, and development of any of the Accused Products or any component of any of the Accused Products, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, conceptual or technical drawings, schematics, diagrams, technical specifications, meeting minutes, presentations, and prototypes.

**REQUEST FOR PRODUCTION NO. 15:**

All documents and things that refer or relate to optical or structural components of any of the Accused Products, including emitters, sensors, detectors, filters, covers, lenses, masks, housing, adhesives, openings, magnets, magnetic shields, carriers, bodies, interior surfaces, walls, protrusions, and sensor subsystems.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and things that refer or relate to any components, surface areas, or adhesives that separate light emitted by LEDs from other components of any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 21:**

All documents and things that refer or relate to power consumption by any heart rate algorithms used in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 22:**

All documents and things that refer or relate to the operation of any LEDs used to determine pulse rate or heart rate for any of the Accused Products, including but not limited to documents and things that refer or relate to LED timing, duty cycle, current, or power usage.

Four of the Requests seek materials pertaining to the algorithms Apple developed to monitor heart rates or other "physiological parameters"—again, Apple's confidential information:

> **REQUEST FOR PRODUCTION NO. 17:**
> Documents sufficient to show the operation of any algorithms used to monitor any physiological parameter in any of the Accused Products.
>
> **REQUEST FOR PRODUCTION NO. 18:**
> Documents sufficient to show the operation of any heart rate algorithms used in any of the Accused Products.
>
> **REQUEST FOR PRODUCTION NO. 19:**
> All documents and things that refer or relate to the development of the heart rate algorithms for any of the Accused Products.
>
> **REQUEST FOR PRODUCTION NO. 20:**
> All documents and things that refer or relate to selection between any heart rate algorithms used in any of the Accused Products.

Three of the Requests seek information about how the Apple Watch collects heart rate metrics—confidential technical information that Apple does not publicly disclose, but rather, safely guards:

> **REQUEST FOR PRODUCTION NO. 23:**
> All documents and things that refer or relate to collecting first heart rate metrics using a first technique during a first period and collecting second heart rate metrics using a second technique during a second period for any of the Accused Products.
>
> **REQUEST FOR PRODUCTION NO. 24:**
> All documents and things that refer or relate to changes in collecting heart rate metrics based on user input for any of the Accused Products.
>
> **REQUEST FOR PRODUCTION NO. 25:**
> All documents and things that refer or relate to changes in collecting heart rate metrics based on a change in operating mode for any of the Accused Products.

Gibson, Dunn & Crutcher LLP

And two of the Requests seek materials related to Apple's marketing strategy for the Apple Watch—which, again, is Apple's confidential and sensitive information that Apple does not disclose publicly:

> **REQUEST FOR PRODUCTION NO. 8:**
> All marketing materials concerning any of the Accused Products, including, without limitation, advertisements, promotional materials, pamphlets, brochures, product catalogs, websites, product brochures, informational materials, and videos.

> **REQUEST FOR PRODUCTION NO. 9:**
> All publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to any of the Accused Products.

Plaintiffs therefore seek a soup-to-nuts blueprint of the non-invasive monitoring technology developed by their competitor, Apple—from its inception, to its design, to how the physical parts function together, to the way in which Apple markets its product containing the technology to consumers—without first identifying in a Section 2019.210 disclosure any trade secrets belonging to Plaintiffs that Apple allegedly misappropriated to create the technology.

Plaintiffs contend that certain of these Requests seek information pertaining to their patent claims. Even if that is true, the language of the Requests makes crystal clear that the Requests *also* seek information *relating to* Plaintiffs' trade secret claim. Indeed, Plaintiffs use the term "Accused Products" throughout these Requests, defined as "Apple Watch Series 4 or later, as well as the combination of Apple Watch Series 4 or later with an Apple iOS Product." These are the very same Apple Watches that Plaintiffs contend incorporate their trade secrets. Plaintiffs' Requests for Production 5 through 25 therefore seek discovery that should not commence until Plaintiffs have identified their alleged trade secrets with reasonable particularity under Section 2019.210. *See* Cal. Code Civ. Proc. § 2019.210 ("before commencing discovery *relating to* the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable

Gibson, Dunn &
Crutcher LLP

particularity") (emphasis added).

To be clear, Apple does not seek to withhold responsive, *public* documents pending a Section 2019.210 disclosure.  In particular, Apple acknowledges that Plaintiffs' Requests for Production 5 through 12 seek certain information that is public, and Apple is prepared to produce responsive, public documents—as indicated in its responses and objections to Plaintiffs' Requests for Production.  But to the extent Requests 5 through 12 also seek *non-public* documents, Plaintiffs' discovery of those documents should not commence until Plaintiffs serve an adequate Section 2019.210 disclosure.  The remainder of Plaintiffs' Requests for Production—Requests 13 through 25—appear to seek only non-public documents and, therefore, Plaintiffs' discovery of documents responsive to those Requests should not commence until Plaintiffs serve an adequate Section 2019.210 disclosure.

### 6.   The Parties Met And Conferred About Plaintiffs' Premature Requests For Production.

On March 28, 2020, Apple initiated the meet-and-confer process in connection with this Stipulation.  Lerner Decl. ¶ 11.

On April 6, 2020, the parties' counsel met and conferred by telephone.  *Id.* ¶ 13. During that call, Apple reiterated its position that Plaintiffs are required to identify their trade secrets with reasonable particularity pursuant to Section 2019.210 and for the purpose of efficient case management, and therefore, that Plaintiffs are not permitted to proceed with discovery "related to" the alleged trade secrets until an adequate disclosure has been made.  Plaintiffs expressed the view that unless the discovery Requests were "solely" related to trade secrets, they were proper, to which Apple responded that Section 2019.210 does not require that discovery be "solely" related to the trade secrets to be stayed absent a proper trade secret disclosure.  That would defeat the purpose of Section 2019.210, as a plaintiff could simply claim that its discovery touches on a non-trade secret claim.  The test is whether discovery is "related" to the alleged trade secrets. *Id.*  Notably, Plaintiffs *admit* that they are alleging that the "Apple Accused Products"

identified as the subject of their patent infringement claims incorporate "some" of Plaintiffs' claimed trade secrets. *Id.*

Even though they claim to be ready and able to describe their secrets, Plaintiffs have insisted that Apple serve an interrogatory requesting that Plaintiffs identify their trade secrets. *Id.* Ex. J.  Apple responded as it has numerous times previously:

> [T]urning to the question of an interrogatory, as we have explained multiple times, Plaintiffs' demand that Apple serve an interrogatory is improper.  To begin with, Plaintiffs have never agreed—and are not agreeing now—that Plaintiffs will not commence discovery relating to trade secrets until they provide an adequate description of their alleged secrets.  That is critical because, as we explained on the call, there is nothing stopping Plaintiffs from cutting and pasting the vague description of the secrets in the FAC into an interrogatory response (served 30 days, if not more, after the interrogatory is propounded) and claiming that they have complied.  This will not solve the lack of disclosure problem—it will just invite motion practice, which will further delay the process.  Therefore, contrary to Plaintiffs' suggestion that an interrogatory would be faster here, a disclosure pursuant to Section 2019.210 will in fact be faster, as well as more efficient and fair to the parties.

*Id.*

The parties have not been able to resolve their dispute informally, and therefore are proceeding with this Stipulation.

## B.  ARGUMENT

Apple's position here is not complicated.  *First*, Plaintiffs cannot escape the requirement set forth in Section 2019.210 by claiming it is a state court rule.  It is well-established that in state or federal court, Plaintiffs bringing a claim under California's Uniform Trade Secrets Act ("CUTSA," Cal. Civ. Code § 3426.1 *et seq.*) must provide a description of their alleged secrets before they take trade secret-related discovery. *Second*, the broad allegations in the FAC are not sufficient to satisfy Plaintiffs' burden to identify their alleged secrets with reasonable particularity.  It is well-established that the pleading standard is less demanding—and serves a different purpose—than Section 2019.210's requirement that Plaintiffs provide an adequate identification of the alleged

secrets.  *Third*, application of Section 2019.210 is essential in this case because Plaintiffs' conduct frustrates the common-sense considerations that underlie Section 2019.210 and which are essential to effective case management.

### 1.   That Plaintiffs Filed Their CUTSA Claim In Federal Court Does Not Mean Plaintiffs Need Not Describe Their Secrets.

Plaintiffs refuse to provide a Section 2019.210 disclosure in this case based on their contention that Section 2019.210 does not apply to CUTSA cases filed in federal court.  That is wrong.  Federal courts in California have held that Section 2019.210 applies to CUTSA cases filed in federal court.  Moreover, as this Court has already recognized, Section 2019.210 can and should be applied in federal court under the Court's discretion as a matter of case management.  It assists the Court and the parties in efficiently litigating the case.  *M/A-COM Tech. Sols.*, 2019 WL 4284523, at *2 (finding "that, under the particular facts of this case, the procedural requirements of Section 2019.210 are warranted and appropriate to assist in the orderly and expeditious handling of discovery").

This Court is far from alone in managing discovery in trade secret cases by applying Section 2019.210.  *See, e.g.*, *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018) ("After review of the law and circumstances in this case, the Court will require that Plaintiffs identify their trade secrets with reasonable particularity compliant with Section 2019.210. Applying Section 2019.210 here will narrow and clarify the basic issues between the parties, thereby furthering the goal of efficiency for the court and litigants."); *Swarmify, Inc. v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018) ("Insofar as controlling law on this subject remains ambiguous, district courts may also exercise discretion in case management to enforce Section 2019.210, and the undersigned judge has in fact done so."); *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014) ("This order agrees and the trade secret disclosure provisions in Section 2019.210 of the California Code of Civil Procedure shall be applied here.").

Tellingly, after two and a half weeks of meet and confers on this topic, Plaintiffs provided one case in support of their position—*SMC Networks, Inc. v. Hitron Techs., Inc.*, 2013 WL 12136372 (C.D. Cal. Mar. 15, 2013)—which is from 2013 and has never been followed by another court.  The Rutter Guide, after citing *SMC Networks*, observes that "[e]ven if state law limitations on discovery are not binding in federal actions, the district court will often grant a protective order (FRCP 26(c), ¶ 11:1060 ff) that accomplishes the same result."  Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(III)-A.

As set forth below, application of Section 2019.210 is particularly essential to the management of this case.

### 2.     Plaintiffs Have Not Identified Their Purported Trade Secrets, And The FAC Does Not Suffice.

This is not the typical case where the trade secret plaintiff serves a Section 2019.210 disclosure and the parties litigate the deficiencies.  Here, Plaintiffs have refused to serve *any* Section 2019.210 disclosure at all.  That is a violation of Section 2019.210, and it calls into question the basis for Plaintiffs' trade secret claim in the first place.

Rather than provide a description of their secrets, Plaintiffs have argued that their FAC is sufficient.  Not so.  Again, the FAC sets forth a non-exhaustive list of approximately 50 broad categories of information (*see* Lerner Decl. Ex. G (FAC) ¶ 211), and alleges that Plaintiffs' "trade secrets" also include unspecified "combinations and selections" of those 50 broad categories (*id*).  That is not sufficient to survive a motion to dismiss.  And even if the FAC did adequately plead a trade secret—which it does not—that still would not satisfy Plaintiffs' obligation to describe the alleged secret with specificity.  A finding that allegations are sufficient to survive a motion to dismiss does not mean the trade secret allegations are sufficient under Section 2019.210.  *See, e.g.*, *Gatan, Inc. v. Nion Co.*, 2018 WL 2117379, at *2 (N.D. Cal. May 8, 2018) (explaining that the district court's finding that trade secret allegations were sufficient to survive a

motion to dismiss "did not prejudge whether plaintiff's trade secret allegations satisfied § 2019.210," and concluding that the disclosures were insufficient under Section 2019.210).[1]  Thus, Plaintiffs cannot hide behind a flawed FAC and demand access to Apple's confidential files to manufacture a trade secret claim.  Unless and until Plaintiffs serve an adequate Section 2019.210 disclosure, they should not be permitted to commence with trade secret-related discovery in this case.

### 3. Plaintiffs' Refusal To Comply With Section 2019.210 Frustrates Each Of The Four Purposes Of The Statute.

Permitting Plaintiffs to commence with trade secret-related discovery in the absence of a sufficient Section 2019.210 disclosure would frustrate the important four-pronged purpose of the statute.

The policy behind Section 2019.210 is straightforward.  The statute was enacted "to curb unsupported trade secret lawsuits routinely commenced to harass competitors and former employees."  *Computer Econs., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999).  The California legislature "understood that plaintiffs in trade secret cases are often unable to identify any trade secrets," and that such claims therefore are "especially prone to discovery abuse."  *Id.*  By requiring a plaintiff to identify its trade secrets early and with particularity, and restricting the plaintiff's ability to engage in discovery until it does so, Section 2019.210 serves four distinct purposes: Section 2019.210 (1) "promotes well-investigated claims and dissuades the filing of meritless trade secret complaints"; (2) "prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets"; (3) "assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's

---

[1] Indeed, where, as here, the alleged trade secrets reside in "a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field."  *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1346 (2009); *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968) (plaintiff "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade").

discovery requests fall within that scope"; and (4) "enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation." *Id.* at 985; *see also, e.g.*, *M/A-COM Tech. Sols., Inc.*, 2019 WL 8108729, at *2 (stating that Section 2019.210's "reasonable particularity" requirement should be understood in light of this four-pronged purpose of the statute).   Plaintiffs' refusal to comply with Section 2019.210 interferes with each of these goals and will continue to do so unless this Court enters the protective order Apple requests.

> **a)** **Plaintiffs Have Not Demonstrated That Their Trade Secret Claim Has Any Merit.**

In the absence of a Section 2019.210-compliant disclosure, Plaintiffs have done nothing to demonstrate that they have a CUTSA claim justifying discovery of Apple's confidential information.  Even a cursory review of Plaintiffs' sole attempt at a list of their purported trade secrets makes clear that Plaintiffs have no idea what, if any, relevant trade secrets they actually possess:

> Plaintiffs own trade secrets that include, but are not limited to, Plaintiffs' technical information, sales and marketing information, and other business information relating to non-invasive monitoring of physiological parameters and products to perform such monitoring.  Plaintiffs' technical information includes product plans, engineering plans, product briefs, technical drawings, technical specifications, technical data, product designs, system designs, design captures, assembly design requirements, risk analysis, test procedures and results, test data, design review documents, software requirement specifications, technical know-how, manufacturing techniques and procedures, installation techniques and procedures, and invention disclosures.  Plaintiffs' sales and marketing information includes product plans, business plans, customer information, sales pipelines, proposal and quote generation tools, pricing models, pricing schedules, sales training materials, product training materials, marketing and launch plans, marketing analysis, and competitive analysis. Plaintiffs' other business information includes information for successfully operating a noninvasive patient monitoring company, including personnel information, supplier information, and other business spreadsheets and analysis. Plaintiffs trade secrets also include combinations and selections

Gibson, Dunn &
Crutcher LLP

of the above information, and knowledge of the varying importance of the information.  Plaintiffs trade secrets also include knowledge for selecting which information and technology are important for improving reliability, improving measurements, and how to successfully combine and implement them to achieve the desired functionality.  Plaintiffs' trade secrets also include negative information, what works well under certain conditions, and trade-offs of selecting certain techniques.

Lerner Decl. Ex. G (FAC) ¶ 211.

As a threshold matter, the very first line of Plaintiffs' allegation is problematic— using expansive terms like "including" weighs against a finding that secrets have been identified with particularity.  *M/A-COM Tech. Sols., Inc.*, 2019 WL 4284523, at *2 (citing *Gatan, Inc.*, 2018 WL 2117379, at *3 (noting the "use of catchall words such as 'including' weighs against a finding that the designation satisfies § 2019.210")).

The 50 broad categories here, which expand to thousands of broad categories when one accounts for Plaintiffs' vague allegation that the secrets include combinations, is equally problematic.  As this Court previously ruled in another case, "catchall descriptions, lists of categories of alleged trade secrets in broad terms, or a listing of concepts that the plaintiff asserts constitute its trade secret information are all insufficient" bases on which to permit a plaintiff to proceed to discovery in a trade secrets case.  *M/A-COM Tech. Sols., Inc.*, 2019 WL 8108729, at *2 (internal quotations omitted) (prohibiting commencement of discovery until plaintiffs provide supplemental disclosures identifying their purported trade secrets with reasonable particularity); *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1113-1114 (N.D. Cal. 2016) (finding 53 paragraphs of asserted trade secret disclosures were not identified with reasonable particularity under Section 2019.210); *Perlan Therapeutics*, 178 Cal. App. 4th at 1350 ("Perlan is not entitled to include broad, 'catch-all' language as a tactic to preserve an unrestricted, unilateral right to subsequently amend its trade secret statement.").  But that is the *only* type of information Plaintiffs have supplied Apple with to date.  For example, the FAC's general categories of "technical drawings," "technical know-how," and "business plans" provide Apple with zero indication about what Plaintiffs

Gibson, Dunn & Crutcher LLP

specifically claim are their trade secrets, and instead force Apple—and the Court—to simply "guess at the specifics." *Loop AI Labs Inc.*, 195 F. Supp. 3d at 1115 (staying discovery of trade secret claims where disclosure was insufficient).  Such generalized descriptions fall short of the specificity the law requires, and, in the absence of any Section 2019.210 disclosure, let alone a reasonably particularized one, constitute the hallmarks of a plaintiff with a meritless CUTSA claim.

Particular allegations in the FAC further underscore the problems with Plaintiffs' CUTSA claim.  For example, Plaintiffs describe several categories of purported trade secret information as including "knowledge" about the importance of the information in the health monitoring business.  Lerner Decl. Ex. G (FAC) ¶ 211.  Plaintiffs thereby anchor their CUTSA claim on a theory of inevitable disclosure that California does not recognize (*Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463 (2002) ("Lest there be any doubt about our holding, our rejection of the inevitable disclosure doctrine is complete.")), and seek to thwart former employees' mobility (and competition generally) in violation of California Business and Professions Code Section 16600.  And, again, Plaintiffs allege that Apple incorporated Plaintiffs' undefined trade secrets into Apple's patent applications (Lerner Decl. Ex. G (FAC) ¶ 218), yet Plaintiffs have failed to identify the Apple patent applications that supposedly contain their secrets, let alone where in the thousands of pages of these applications the secrets can be found.

A CUTSA claim requires a plaintiff with actual trade secrets, and, in the absence of a Section 2019.210-compliant disclosure, Plaintiffs have done nothing but demonstrate that they *do not* in fact possess relevant, actionable trade secrets.  Permitting Plaintiffs to commence trade secret-related discovery simply is not warranted on this record.

> **b)**      **Plaintiffs Have Not Demonstrated That They Are Actually Looking For *Their* Secrets In Apple's Files.**

Plaintiffs' continued refusal to identify their purported secrets likewise suggests that Plaintiffs hope to sift through Apple's confidential information so that they can

claim it as their own.  Without a Section 2019.210 disclosure, Plaintiffs have failed to demonstrate that their request for trade secret-related discovery is anything more than an attempt to obtain *Apple's* confidential information.

Perhaps the most direct evidence of this improper motive is the third-party subpoena Plaintiffs served on Apple in connection with the *True Wearables* Case just *one day before* filing the complaint in this case.  Rather than simply identify their trade secrets in this case, Plaintiffs attempted an end run around Section 2019.210 by serving a subpoena on Apple in the *True Wearables* Case.  That subpoena on its face called for confidential information from Apple relevant to the subject matter of this case—in a transparent attempt to discover Apple's confidential information in connection with the *True Wearables* Case and claim it as their own in *this* case.  When Plaintiffs were caught red-handed, they withdrew the subpoena.

With the subpoena now withdrawn, Plaintiffs have sought expeditious access to Apple's files via the discovery process in this case.  But a plaintiff in a trade secret case is supposed to search the defendant's files for the *plaintiff*'s confidential information that was allegedly misappropriated.  In the absence of any identification by Plaintiffs of reasonably particularized trade secrets to search for, it appears that Plaintiffs seek to engage in the type of discovery abuse that was the California legislature's prime motivation for enacting Section 2019.210 in the first place.  *See Computer Econs., Inc.*, 50 F. Supp. 2d at 992 (noting that in enacting Section 2019.210, the California legislature "understood that plaintiffs in trade secret cases are often unable to identify any trade secrets," and that such claims therefore are "especially prone to discovery abuse").  Plaintiffs should not be permitted to commence trade secret-related discovery in Apple's files unless and until they are able to satisfy Section 2019.210, and thereby demonstrate to Apple and to the Court that Apple's confidential information is not in fact what they are after.

c)      **Plaintiffs Have Not Assisted The Court In Framing The
Scope Of Trade Secret-Related Discovery.**

Plaintiffs' refusal to identify their trade secrets with anything close to "reasonable particularity" also makes it impossible for the Court or Apple to properly frame the scope of trade secret-related discovery.

First, the only list of Plaintiffs' purported trade secrets that currently exists—the FAC's amorphous list of approximately 50 categories of "trade secrets," as well as unidentified "combination" trade secrets (Lerner Decl. Ex. G (FAC) ¶ 211)—is so broad that it essentially encompasses Plaintiffs' entire business. Without a particularized trade secret disclosure, it will be impossible for the Court and the parties to define the permissible scope of trade secret-related discovery in this case. As set forth above, Plaintiffs' open-ended list that "includes" 50 vague categories means Plaintiffs could amend at any time, which is utterly improper. *Swarmify*, 2018 WL 2445515, at *3 ("Swarmify should not be allowed to drag Cloudflare into court based on meritless arguments, only to reboot its alleged trade secrets lineup and try again when the opening skirmish illuminates glaring flaws in Swarmify's case."). The same is true of Plaintiffs' demand for an interrogatory—Plaintiffs could amend their response. Plaintiffs' reference to undefined combinations only compounds the problem. *E. & J. Gallo Winery*, 2018 WL 3062160, at *5 ("Section 2019.210 mandates a more refined description of each individual component and combination of components purported to be a trade secret prior to commencing discovery on these claims.").

Second, without an adequate description of Plaintiffs' trade secrets, neither the Court nor Apple will have any idea which secrets are in fact public. Indeed, Plaintiffs allege that their purported trade secrets were *already* disclosed in Apple's published patent applications. Therefore, Plaintiffs *must* know by page and line number where their alleged secrets appear in Apple's patent applications. Yet, Plaintiffs have twice refused Apple's request for a disclosure identifying those page and line numbers. *See* Lerner Decl. ¶¶ 7, 12 & Exs. E & I. This makes no sense and makes it impossible for

Apple to figure out where the alleged secrets lie. *See Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) ("Moreover, Space Data has not made clear which aspects of its technology and other information are 'part of patents and pending patent applications,' if any, and which are secret.")[2]; *Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2015 WL 8028294, at *4 (N.D. Cal. Dec. 7, 2015); *see also M/A-COM Tech. Sols., Inc.*, 2019 WL 8108729, at *4 ("[A]s a general matter, . . . identifying large numbers of documents without any reference to specific pages does not provide an adequate substitute for detailed information of the trade secrets, as a review of the documents may not provide Defendants sufficient information to identify what precisely Plaintiffs are asserting as a trade secret.").

### d)     Plaintiffs Have Not Enabled Apple To Defend Against Their Trade Secret Misappropriation Claim.

Finally, without a Section 2019.210 disclosure, Apple is not in a position to formulate "complete and well-reasoned defenses" to Plaintiffs' claim of trade secret misappropriation. *M/A-COM Tech. Sols., Inc.*, 2019 WL 8108729, at *2. The most rudimentary example is Apple's inability to possibly formulate a defense to Plaintiffs' allegation that Apple has already disclosed trade secrets belonging to Plaintiffs in Apple patent applications (*see* Lerner Decl. Ex. G (FAC) ¶ 218), because Plaintiffs refuse to identify those purported secrets in the first place. Without this information, Apple cannot determine whether the allegation has merit, Apple cannot determine whether it has a viable defense, and Apple cannot take steps to remove the alleged trade secrets from patent documents on a prospective basis—to prevent against the harm that Plaintiffs contend will continue unabated. Instead, Plaintiffs' non-exhaustive list of dozens of vague categories has foisted on Apple the impossible task of deciphering precisely what Plaintiffs claim is actually a trade secret. *See Loop AI Labs Inc.*, 195 F.

---

[2] Like the court in *Bladeroom Group Ltd. v. Facebook, Inc.*, 2015 WL 8028294 (N.D. Cal. Dec. 7, 2015), the court in *Space Data* focused on the failure to distinguish between public and confidential information even at the pleadings stage.

Supp. 3d at 1115 (defendant could not develop an adequate defense where plaintiff's Section 2019.210 disclosure listed broad categories of potentially protectable secrets, forcing the defendant to "guess" what the actual secrets were); *see also Perlan Therapeutics*, 178 Cal. App. 4th at 1350 (Section 2019.210 disclosure deemed inadequate where plaintiff hid trade secrets "in plain sight" by "including surplusage and voluminous attachments").

Plaintiffs should not be permitted to proceed with trade secret-related discovery at the expense of Apple's ability to defend itself against Plaintiffs' trade secret-related claim.

## C.   CONCLUSION

For all of the aforementioned reasons, Apple respectfully requests that the Court grant its motion; enter a protective order prohibiting Plaintiffs from commencing any trade secret-related discovery (including, without limitation, discovery of any non-public documents responsive to Plaintiffs' Requests for Production 5 through 25) until Plaintiffs identify their alleged trade secrets with the reasonable particularity Section 2019.210 requires; and order Plaintiffs to serve on counsel a statement, under seal, that includes the following:

(1) a summary of the specific alleged trade secrets;

(2) the background of the trade secrets and a description of how each secret has derived independent, actual, or potential economic value by virtue of not being generally known to the public;

(3) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; and

(4) each of the precise claimed trade secrets, numbered with a list of the specific elements for each, as claims would appear at the end of a patent.

# IV.   PLAINTIFFS' POSITION

The Parties' conference of counsel addressed two issues: (1) whether Section 2019.210 applies in Federal Court and (2) if it applies, whether Section 2019.210 also bars patent discovery that may be relevant to the trade secret allegations.  Powell Decl., Ex. 6 at 1-2.  The parties briefed both issues in detail in a 26-page Rule 26(f) report, and Judge Selna decided both issues.  *Id.*, Exs. 7 & 8.  Apple should have withdrawn its Motion instead of unnecessarily burdening this Court.

## A.   Judge Selna Already Decided Patent Discovery Is Not Stayed

In the Rule 26(f) report, the parties presented extensive argument on whether and how Section 2019.210 applies to this case.  Powell Decl., Ex. 8 at 6-8 and 13-20.  Apple acknowledged Requests for Production ("RFP") Nos. 5-25 may "concern the asserted patents and technical information about the products accused of patent infringement . . .."  *Id.* at 7.  However, Apple argued it need not provide such discovery until after Plaintiffs provide a Section 2019.210 disclosure because the discovery is ***also*** relevant to Plaintiffs' trade secret claim.  *Id.* at 7-8.  The Rule 26(f) report contained a deadline to disclose "core technical documents" for infringement contentions.  *Id.* at 26.  But Apple argued such patent-specific dates should not apply until Plaintiffs provided an adequate Section 2019.210 disclosure.  *Id.* at 26, n.6 (stating "discovery-related dates that Apple proposes in this Presumptive Schedule of Pretrial Dates are subject to Plaintiffs providing an adequate identification of their alleged trade secrets in compliance with Section 2019.210").

Plaintiffs originally disputed the applicability of Section 2019.210 in Federal Court based on decisions from this Court holding that Section 2019.210 is a procedural rule that conflicts with Rule 26.  *Id.* at 13-14.  Plaintiffs also argued that, if Section 2019.210 applies, it cannot be used to bar patent discovery merely because the discovery could ***also*** be relevant to trade secrets.  *Id.* at 14-15.  As Plaintiffs explained:

> Apple has refused to provide any responsive information on the grounds that Apple believes the requests ***also*** relate to the trade secret allegations.

Accordingly, Apple is using a California state procedural rule concerning trade secrets to preclude typical patent discovery.  Apple provides no case law to support that position, which has been rejected by at least one court in this District.  *See Bryant v. Mattel*, 2007 WL 5430888, *3 n.3 (C.D. Cal. May 18, 2007) (refusing to limit discovery of product information under Section 2019.210 because the information was also "relevant to claims other than the trade secret misappropriation claim, such as Mattel's claim for copyright infringement").

*Id.*  Plaintiffs also repeatedly "object[ed] to Apple's attempt to use a California state procedural rule to bar all discovery, including patent discovery." *Id.* at 11-12.

Judge Selna rejected Apple's request to stay patent deadlines by holding: "The Court adopts the **patent specific dates**.  The Court stays the **trade secret discovery only** pending compliance with Section 2019.210."  Powell Decl., Ex. 9 (emphasis added).  Thus, Judge Selna determined Section 2019.210 applies to "trade secret discovery only"—not patent discovery that may also be relevant to trade secrets.  Accordingly, all patent discovery should proceed.  Instead, Apple continues to refuse to produce any technical discovery.

## B.    Section 2019.210 Does Not Bar Patent Discovery

Even if Judge Selna had not ordered the patent case to proceed, nothing would support Apple's assertion that Section 2019.210 bars all patent discovery on the accused products because that information may **also** be relevant to trade secrets.  Section 2019.210 states: "In any action alleging the misappropriation of a trade secret under the [CUTSA], before commencing discovery **relating to** the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity" (emphasis added).  Apple asserts the "relating to" language means that **all** discovery as to **all** causes of action is barred if it is **also** related in any way to the trade secret.  Joint Stipulation at 16.  In doing so, Apple ignores that the California Court of Appeals interpreted Section 2019.210 as barring discovery on other claims only if the claim

"**_hinges upon_** the factual allegations that [defendant] misappropriated [plaintiff's] trade secrets." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005) (barring contract discovery because the only alleged breach was for disclosing trade secrets) (emphasis added).[3]   Similarly, Apple relies on *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333 (2009), but that case acknowledged discovery may proceed on "claims not dependent upon proof of [plaintiff]'s claim under the Uniform Trade Secrets Act." *Id.* at 1337 n.2 (noting the trial court did not decide whether non-trade secret claims based "at least in part" on misappropriation of trade secrets also included theories not dependent on proof of misappropriation such that discovery could move forward on those theories).

Numerous courts—including at least one on which Apple relies—refuse to stay discovery as to patent claims merely because the discovery could **_also_** relate to a trade secret.  For example, Apple relies on *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017), but omits that a later decision in the same case refused to stay patent discovery that also related to trade secrets.  *See Space Data Corp. v. X*, 2017 WL 3007078, *4 (N.D. Cal. July 14, 2017).  Similar to this case, the court in *Space Data* had "stayed trade secret discovery pending Space Data's identification of its trade secrets." *Id.*  Like Apple, the defendant argued it should not have to produce "core technical documents" relevant to patent infringement until after the plaintiff identified its trade secrets.  *Id.*  The court rejected that argument because  "the patent infringement claims asserted in this case are substantive and separate from the trade secret claims." *Id.*

Similarly, in *ScaleMP, Inc. v. TidalScale, Inc.*, No. 18-CV-4716 EDL, Dkt. No. 52 (N.D. Cal. Mar. 15, 2019) (Powell Decl., Ex. 3), the defendant also argued it should

---

[3]   Apple's meet-and-confer letter quoted *Advanced Modular* in arguing Section 2019.210 bars discovery of other causes of action.  Powell Decl., Ex. 6 at 2.  Plaintiffs pressed Apple on how patent infringement was "factually dependent" on misappropriation of trade secrets. *Id.* ¶ 8.  Apparently recognizing *Advanced Modular* supports Plaintiffs, Apple avoids citing it (or any other case) to support its argument.

not have to produce technical documents related to the patent claims until after the Plaintiff complied with Section 2019.210. *Id.* at 7. The court rejected that argument, explaining:

> While Plaintiff's patent infringement claim is related to its trade secret misappropriation claim in the sense that the alleged misappropriation led to Defendant's development of infringing technology, the patent infringement claim does not "hinge" on the misappropriation allegation. Plaintiff's ability to succeed on the infringement claim is independent of the viability of its misappropriation claim. Thus, the statutory language does not require a postponement of patent-related disclosures in this case, even while Plaintiff revises its trade secret disclosures.

*Id.* at 8. The court also rejected the same policy argument that Apple makes here that all technical discovery should be barred to prevent a plaintiff from using technical documents relevant to the patent case "to obtain Defendant's trade secrets." *Id.* at 8-9.

In *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, Dkt. No. 72 (N.D. Cal. Mar. 24, 2011) (Powell Decl., Ex. 4), the court rejected the defendant's attempt to avoid producing technical information in an action involving trade secret, patent, and copyright claims. The court held discovery "***unique*** to Plaintiffs' claims of trade secret misappropriation" could not proceed until the plaintiff complied with Section 2019.210. *Id.* (emphasis added). However, "[a]ll other discovery shall commence now, including discovery of source code relevant to the copyright and patent infringement claims." *Id.*

Courts also refuse to stay discovery as to claims other than patent infringement pending compliance with Section 2019.210. For example, in *Bryant v. Mattel*, 2007 WL 5430888, *3 n.3 (C.D. Cal. May 18, 2007), the defendant argued that "discovery of drawings and designs for unreleased products is barred unless and until [plaintiff] complies with California Code of Civil Procedure section 2019.210." *Id.* The Court rejected that argument because "[d]rawings and designs for unreleased products are

relevant to claims other than the trade secret misappropriation claim, such as [plaintiff]'s claim for copyright infringement." *Id.*

Apple relies on *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 WL 3062160, at *6 (E.D. Cal. June 19, 2018), but that decision actually ***rejected*** a defendant's request to stay discovery relevant to contract and unfair competition claims.   The court held that Section 2019.210 applies to trade secret discovery, but held the parties "shall proceed with discovery on non-trade secret claims." *Id.*   Similarly, Apple relies on *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1113-1114 (N.D. Cal. 2016), but omits that an earlier decision in that case ***refused*** to stay discovery relevant to claims other than the trade secret claim.   *See Loop AI Labs Inc. v. Gatti*, 2015 WL 9269758, at *4 (N.D. Cal. Dec. 21, 2015); *see also Monolithic Power Sys., Inc. v. Silergy Corp.*, 2015 WL 5948159, at *4 (N.D. Cal. Oct. 14, 2015) (refusing to limit discovery relevant to the contract claim because "Defendants have not shown 'that this claim is based on an allegation that [] Defendants disclosed or misused [Plaintiff's] trade secrets").

Even after Plaintiffs serve the Section 2019.210 disclosure, Apple will continue to refuse discovery by litigating the sufficiency of that disclosure regardless of its specificity.   *See* Joint Stipulation at 20 (arguing in a "typical case," the plaintiff "serves a Section 2019.210 disclosure and the parties litigate the deficiencies").   Apple should not be allowed to hold up ***all*** technical discovery for weeks or months while it litigates the sufficiency of Plaintiffs' disclosure.   That is inconsistent with the language of Judge Selna's Order and court decisions addressing the issue.   *See E. & J. Gallo*, 2018 WL 3062160, at *6 (finding Section 2019.210 disclosure was insufficient, but holding the parties "shall proceed with discovery on non-trade secret claims" while plaintiffs prepared an amended trade secret disclosure); *Loop AI*, 2015 WL 9269758, at *4 (same).

Gibson, Dunn &
Crutcher LLP

Apple fails to cite a single case supporting its position that a California state-law requirement bars patent discovery.[4]   Precedent—including much of Apple's own precedent—is to the contrary.   Moreover, Judge Selna already decided the issue in a decision imposing specific deadlines for Apple to "disclose core technical documents sufficient to show the operation of the accused products" and for Plaintiffs to provide infringement contentions.  Powell Decl., Ex. 8 at 26.  Apple should be ordered to produce discovery pursuant to Plaintiffs' requests.

### C.    The Discovery At Issue Is Patent Discovery

Plaintiffs crafted RFP Nos. 5-25 to seek "core technical documents" about the "Accused Products," which Plaintiffs specifically defined as the ***products accused of patent infringement***.  The information is highly relevant to upcoming patent deadlines, including infringement contentions.  RFP Nos. 5-15 seek basic technical information about the structure and operation of the Accused Products.  For example, RFP No. 5 seeks "Documents sufficient to show the design and operation of the Accused Products." Similarly, RFP No. 6 seeks documents "describing the operation of the Accused Products, including, without limitation, product brochures, user manuals, instructional materials, and directions for use."

Apple incorrectly asserts RFP Nos. 8-9 seek "Apple's marketing strategy," which is "confidential and sensitive information that Apple does not disclose publicly."  Joint Stipulation at 16.   That is false.   Those requests expressly seek public information, including   "advertisements,"   "promotional   materials,"   "product   brochures," "publications," "press releases," and "internet postings."   Apple's public assertions about the functionality of its products (including comparisons to other products) is relevant to patent issues, including infringement.

---

[4] Any attempt by Apple to add support for the first time in a Supplemental Memorandum would be improper.

RFP Nos. 16-25 are specifically tailored towards particular claim limitations of the patents-in-suit.  For example, RFP No. 16 seeks information about "components, surface areas, or adhesives that separate light emitted by LEDs from other components of any of the Accused Products."  Such information is relevant at least to claim 1 of U.S. Patent No. 10,470,695, which recites in part: "a light block forming an enclosing wall between the light emission source and the plurality of detectors . . . ."  Powell Decl., Ex. 1 at Claim 1.

RFP Nos. 17-20 seek information about heart rate algorithms used in the Accused Products, including selecting different heart rate algorithms.   Such information is relevant at least to claim 1 of U.S. Patent No. 10,433,776, which recites in part:

> when operating according to the ***first control protocol***, calculating, by the patient monitor, ***measurement values of the pulse rate***, the measurement values responsive to light from the first control protocol light source, detected by a detector of an optical sensor after attenuation by body tissue of the patient using the patient monitor
>
> . . .
>
> in response to receiving the trigger signal, operating the patient monitor according to a ***second control protocol different from the first control protocol***
>
> . . .
>
> when operating the patient monitor according to the ***second control protocol***, calculating the ***measurement values of the pulse rate***, the measurement values responsive to light from the second control protocol light source, detected by the detector after attenuation by the body tissue of the patient using the patient monitor.

Powell Decl., Ex. 2 at Claim 1 (emphasis added).

RFP No. 21 seeks information about the power consumption of the heart rate algorithms used in the Accused Products.  RFP No. 22 seeks information about the

operation of LEDs used to determine pulse or heart rate, including timing, duty cycle, current, or power usage.  RFP No. 23 seeks information about collecting heart rate metrics using a first technique during a first period and a second technique during a second period.  Such information is relevant at least to Claim 1 of U.S. Patent No. 10,433,776, which recites in part:

> wherein said operating of the patient monitor according to the first control protocol operates the first control protocol light source according to a ***first duty cycle*** and said operating of the patient monitor according to the second control protocol operates the second control protocol light source according to a ***second duty cycle***, wherein ***power consumption*** of the first control protocol light source according to the ***first duty cycle*** is different than ***power consumption*** of the second control protocol light source according to the ***second duty cycle***.

Powell Decl., Ex. 2 at Claim 1  (emphasis added).

Finally, RFP Nos. 24-25 seeks information about changes in collecting heart rate metrics based on user input or operating mode.  Such information is relevant at least to claim 1 of U.S. Patent No. 10,433,776, which recites in part:

> in response to receiving the trigger signal, ***operating the patient monitor according to a second control protocol different from the first control protocol***, wherein said operating includes activating a second control protocol light source in accordance with the second control protocol, the second control protocol light source including one or more of the plurality of light sources.

Powell Decl., Ex. 2 at Claim 1 (emphasis added).

Accordingly, RFP Nos. 5-25 are quintessential patent requests.  By contrast, trade secret RFPs would seek, for example, information about Apple's employment of Plaintiffs' former employees, whether and how those former employees provided Plaintiffs' confidential information to Apple, communications with those former

employees, and other trade secret information.  Plaintiffs will serve such RFPs after

providing the confidential Section 2019.210 disclosure pursuant to a Protective Order.

Apple cannot refuse to produce responsive documents by asserting some of the

information may *also* be relevant to the trade secret claim.  There is no conceivable

interpretation of *Erie* that would permit a defendant in Federal district court to refuse

providing discovery relevant to **Federal claims** based on a state procedure applying

solely to **state claims**.  Apple cites no case supporting its erroneous position, and Judge

Selna already rejected it.  Moreover, Apple's own case law is to the contrary.  The Court

should order Apple to produce the requested documents under RFP Nos. 5-25.

### D.     Apple's Other Arguments Are Irrelevant and Incorrect

Apple devotes most of its portion of this Joint Stipulation to arguing Plaintiffs

should provide a Section 2019.210 disclosure.  *See* Joint Statement at 18-28.  Those

arguments are also moot now that Judge Selna determined that Section 2019.210 applies

and Plaintiffs will provide a Section 2019.210 disclosure before seeking trade secret

discovery.

Apple also presents a series of irrelevant and misleading "facts."  *See* Joint

Statement at 8-17.  First, Apple faults Plaintiffs for serving a third-party subpoena on

Apple in *Masimo Corp. et al. v. True Wearables Inc. et al.*, No. 8:18-cv-02001-JVS-

JDE (the "*True Wearables* Case").  Joint Statement at 8.  But Apple admitted it has

information relevant to the *True Wearables* Case by arguing the allegations in both cases

were "nearly identical" and involved Apple's employment of a former employee of

Plaintiffs.  D.I. 14 (Apple's Notice of Related Cases).  There is no dispute that Plaintiffs

adequately identified their trade secrets in the *True Wearables* case.  There is no basis

for Apple's allegation that Plaintiffs have no valid trade secrets and are simply on a

fishing expedition to look at Apple's confidential information.  Apple speculates about

the timing of Plaintiffs' subpoena, but that was dictated by the rapidly-approaching

deadline for the close of fact discovery.  Once the Court extended the fact discovery

deadline, Plaintiffs withdrew the subpoena to determine if it was necessary in view of

1   the extended discovery deadline.   Plaintiffs cannot be faulted for trying to avoid

2   unnecessarily burdening the courts.

3         Apple's claim that Plaintiffs' withdrawal of the subpoena shows Plaintiffs were

4   "caught red handed" is absurd.   Plaintiffs withdrew its subpoena to avoid unnecessarily

5   burdening the court.   Indeed, Plaintiffs had committed to working with Apple to narrow

6   the existing subpoena and the parties were engaged in ongoing communications

7   regarding the scope of Plaintiffs' subpoena.   Apple unexpectedly cut off the parties'

8   communications and suddenly filed a motion to quash.   Apple's vivid imagination is

9   inconsistent with the actual facts surrounding the subpoena.

10         Second, Apple incorrectly asserts Plaintiffs "ignored" its request for a Section

11   2019.210 disclosure.   Joint Statement at 10.   To the contrary, Plaintiffs repeatedly

12   responded and explained their contention at the time that Section 2019.210 did not apply

13   in Federal Court.   *See, e.g.*, Powell Decl. ¶ 8.   While Judge Selna eventually decided to

14   require such a disclosure, it was not improper or unreasonable for Plaintiffs to rely on

15   cases holding Section 2019.210 conflicts with Rule 26 under the *Erie* doctrine.   *See, e.g.*,

16   *SMC Networks, Inc. v. Hitron Techs., Inc.*, 2013 WL 12136372 (C.D. Cal. Mar. 15,

17   2013); *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, 2007 WL 273949, at *2

18   (E.D. Cal. Jan. 29, 2007).   Indeed, while Apple now argues the application of Section

19   2019.210 in Federal court is clear, the same lawyer representing Apple in this case took

20   a contrary position when representing a trade-secret plaintiff in this Court.   *See General*

21   *Elec. Co. v. Liang*, 2:13-cv-08670-DDP-CW, Dkt. No. 54 (C.D. Cal. Feb. 20, 2014)

22   (Powell Decl., Ex. 5) at 22 (Apple's current counsel asserting: "2019.210 requires that

23   a plaintiff alleging trade secret misappropriation in a ***state court action*** identify the trade

24   secrets at issue before discovery may commence.   Assuming, ***arguendo***, that 2019.210

25   applies here, the statute has been satisfied" by other documents in the lawsuit (emphasis

26   added)).

27         Third, Apple argues the First Amended Complaint does not satisfy Section

28   2019.210.   But that is irrelevant because Apple acknowledges Section 2019.210 does

Gibson, Dunn &
Crutcher LLP

not apply to pleadings. *See* Joint Statement at 17. Apple also complains that the First Amended Complaint "multiplied" the number of trade secrets "from seven to approximately 50, if not more." *Id.* at 10-11. That is not true. The First Amended Complaint simply provided more detail about each category of trade secrets. For example, while the initial Complaint alleged Plaintiffs' trade secrets include "technical information," the First Amended Complaint elaborated by stating: "Plaintiffs' technical information includes product plans, engineering plans, product briefs, technical drawings, . . . ." D.I. 28 ¶ 211. Likewise, while the initial complaint identified "business information," the First Amended Complaint explained what type of sales, marketing, and other information Plaintiffs possess. *Id.* Regardless, the sufficiency of Plaintiffs' pleading is a different question that will be addressed by resolving Apple's pending Motion to Dismiss. *See* D.I. 38.

Apple also argues "Plaintiffs concede that many, if not all, of their purported secrets are now public." Joint Statement at 2. That is also false. Plaintiffs alleged Apple misappropriated ***some*** of its trade secrets by disclosing them in patent applications. D.I. 28 ¶ 218. Plaintiffs never limited its trade secrets to information Apple had already disclosed in patent applications. Moreover, the identification of what in those applications originates from Plaintiffs remains secret.

Apple's requested relief also far exceeds the "reasonable particularity" requirement of Section 2019.210. *See* Joint Statement at 27. In particular, Apple demands that Plaintiffs also provide background information about the trade secret, contentions regarding economic value, contentions regarding efforts to maintain secrecy, ***and*** format the trade secrets as a list of specific elements "as claims would appear at the end of a patent." *Id.* Apple does not even attempt to justify these requirements, which are found nowhere in Section 2019.210. Indeed, Apple itself appears to acknowledge it is asking for ***more*** than mere compliance with Section 2019.210. *See id.* (requesting an order requiring Plaintiffs to "[1] identify their alleged trade secrets with the reasonable particularity Section 2019.210 requires; ***and*** [2] order

Plaintiffs to serve on counsel a statement, under seal, that includes [the additional requirements]" (emphasis added)).  Moreover, Judge Selna already rejected the identical request to impose these four additional requirements.  *See* Powell Decl., Ex. 8 at 20 (Apple requesting identical relief); *Id.*, Ex. 9 (Court order requiring only "compliance with 2019.210").  This Court should reject Apple's attempt at a do-over.

## E.    Conclusion

Nothing supports Apple's attempt to bar ***all*** technical discovery—including patent discovery—until Apple agrees that Plaintiffs have complied with Section 2019.210. Plaintiffs respectfully request the Court deny Apple's motion and order Apple to engage in patent discovery by producing the documents requested by RFP Nos. 5-25.

Dated: April 30, 2020

**GIBSON, DUNN & CRUTCHER LLP**

By:    /s/ *Joshua H. Lerner*
Joshua H. Lerner
H. Mark Lyon
Brian M. Buroker
Brian A. Rosenthal
Ilissa Samplin
Angelique Kaounis

*Attorneys for Defendant Apple Inc.*

Dated:  April 30, 2020

**Knobbe, Martens, Olson & Bear LLP**

By:    /s/ *Adam B. Powell*
Joseph R. Re
Stephen C Jensen
Perry D. Oldham
Stephen W Larson
Adam B. Powell

*Attorneys for Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc.*

Gibson, Dunn & Crutcher LLP

**ATTESTATION UNDER LOCAL RULE 5-4.3.4(a)(2)(i)**

Pursuant to Civil L. R. 5-4.3.4(a)(2)(i), I attest that concurrence in the filing of this document has been obtained from each of the signatories above.

By:  */s/ Joshua H. Lerner*
Joshua H. Lerner

*Attorney for Defendant Apple Inc.*

Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. for Prot. Order  41          Case No. 8:20-cv-00048-JVS (JDEx)