1  Joseph R. Re (Bar No. 134479)
   joseph.re@knobbe.com
2  Stephen C. Jensen (Bar No. 149894)
   steve.jensen@knobbe.com
3  Perry D. Oldham (Bar No. 216016)
   perry.oldham@knobbe.com
4  Stephen W. Larson (Bar No. 240844)
5  stephen.larson@knobbe.com
   **KNOBBE, MARTENS, OLSON &**
6  **BEAR, LLP**
7  2040 Main Street, Fourteenth Floor
   Irvine, CA  92614
8  Telephone:  (949)-760-0404
9  Facsimile:  (949)-760-9502

10

11 *Attorneys for Plaintiffs Masimo*
12 *Corporation and Cercacor Laboratories,*
   *Inc.*

JOSHUA H. LERNER, SBN 220755
   jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Telephone:  415.393.8200
Facsimile:  415.393.8306

H. MARK LYON, SBN 162061
   mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

BRIAN M. BUROKER, *pro hac vice*
   bburoker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone:  202.955.8541
Facsimile:  202.467.0539

ILISSA SAMPLIN, SBN 314018
   isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, CERCACOR LABORATORIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **DECLARATION OF JOSHUA H. LERNER ISO JOINT STIPULATION REGARDING DEFENDANT APPLE INC.'S MOTION FOR PROTECTIVE ORDER** <br><br> Hr'g Date/Time:  May 21, 2020 at 10 a.m. <br> Courtroom:          6A <br> Judge:                   Hon. John D. Early <br> Discovery Cutoff:    TBD <br> Pretrial Conference:  TBD <br> Trial:                     TBD |

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Telephone:  310.552.8546
Facsimile:   310.552.7026

*Attorneys for Defendant Apple Inc.*

# DECLARATION OF JOSHUA H. LERNER

I, Joshua H. Lerner, declare and state as follows:

1.      I am an attorney duly licensed to practice law before this Court and all courts of the State of California.  I am a partner with the law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), counsel of record for Apple Inc. ("Apple") in the above-captioned action.  I make this declaration in support of the Joint Stipulation Regarding Defendant Apple's Motion for Protective Order Barring Trade Secret-Related Discovery Absent Trade Secret Identification (the "Stipulation").  I have personal, firsthand knowledge of the facts stated herein and, if called upon to do so, could and would competently testify thereto.

2.      On January 8, 2020, Plaintiffs served a subpoena on Apple in connection with *Masimo Corp. et al. v. True Wearables Inc. et al.*, No. 8:18-cv-02001-JVS-JDE (the "*True Wearables* Case"), noticing a deposition and requesting the production of documents.  Attached hereto as **Exhibit A** is a true and correct copy of the *True Wearables* Case subpoena.

3.      On March 10, 2020, Apple filed a motion to quash the *True Wearables* Case subpoena and for a protective order in the U.S. District Court for the Northern District of California (*Apple Inc. v. Masimo Corporation, et al.*, Case No. 5:20-mc-80061-VKD).  Attached hereto as **Exhibit B** is a true and correct copy of the motion to quash.  On March 18, 2020, Plaintiffs informed counsel for Apple that they were withdrawing the subpoena.

4.      On January 9, 2020, Plaintiffs filed their initial complaint in this action.  Attached hereto as **Exhibit C** is a true and correct copy of the initial complaint in this action.

5.      After Plaintiffs filed their initial complaint in this action, the parties met and conferred on February 25, 2020.  During that meeting, my colleague Angelique Kaounis and I explained that the complaint failed to identify Plaintiffs' alleged trade secrets with sufficient particularity.

Gibson, Dunn & Crutcher LLP

Lerner Decl. ISO Joint Stip.
Re Apple's Mot. for Prot. Order                2                Case No. 8:20-cv-00048-JVS (JDEx)

6.      On March 4, 2020, Apple filed a motion to dismiss Plaintiffs' initial complaint in this action.  Attached hereto as **Exhibit D** is a true and correct copy of the Memorandum of Points and Authorities in Support of Apple's Motion to Dismiss.

7.      On March 6, 2020, Apple requested in writing that Plaintiffs identify (by line and page number) their trade secrets that purportedly were disclosed in any published patent application filed by Apple or in any patent held by Apple, as alleged in the complaint.  Apple explained that because California Civil Code Section 2019.210 ("Section 2019.210") requires Plaintiffs to describe all of their alleged trade secrets with "reasonable particularity" before commencing trade secret-related discovery, Plaintiffs should be able to identify those secrets promptly.  A true and correct copy of the March 6, 2020 letter from my colleague, H. Mark Lyon, to Plaintiffs' counsel is attached hereto as **Exhibit E**.

8.      On March 16, 2020, Plaintiffs served on Apple their First Set of Requests for Production of Documents.  A true and correct copy of those Requests are attached hereto as **Exhibit F**.

9.      On March 25, 2020, Plaintiffs filed their First Amended Complaint (FAC).  A true and correct copy of the FAC is attached hereto as **Exhibit G**.

10.      On March 27, 2020, Plaintiffs rejected Apple's request that they identify their trade secrets with reasonable particularity pursuant to Section 2019.210.  A true and correct copy of Plaintiffs' March 27, 2020 letter is attached hereto as **Exhibit H**.

11.      On March 28, 2020, Apple initiated the meet-and-confer process in connection with this Stipulation, via an email sent by my colleague, Angelique Kaounis.

12.      In an April 2, 2020 letter to Plaintiffs, Apple reiterated its request for a Section 2019.210-compliant disclosure (including an identification of the line and page numbers of the Apple patent applications at which Apple purportedly disclosed Plaintiffs' trade secrets).  A true and correct copy of my letter to Plaintiffs' counsel, dated April 2, 2020, is attached hereto as **Exhibit I**.

13.    On April 6, 2020, the parties' counsel met and conferred by telephone. During that call, Apple reiterated its position that Plaintiffs were required to identify their trade secrets with reasonable particularity pursuant to Section 2019.210 and for the purpose of efficient case management, and therefore, that Plaintiffs were not permitted to proceed with discovery "related to" the alleged trade secrets until an adequate disclosure had been made.  Plaintiffs expressed the view that unless the discovery requests were "solely" related to trade secrets, they were proper.  Apple explained that Section 2019.210 does not require that discovery be "solely" related to the trade secrets to be barred absent a proper trade secret disclosure—only that it be "related"—and Apple provided an example of such a request from Plaintiffs' pending requests for production of documents.  Plaintiffs admitted that they are alleging that some of the "Apple Accused Products" identified as the subject of their patent infringement claims incorporated Plaintiffs' alleged trade secrets.

14.    Following counsel's April 6 meet and confer, the parties exchanged emails summarizing that call and the parties' respective positions on the issue of a Section 2019.210 disclosure.  A true and correct copy of that email exchange is attached hereto as **Exhibit J**.

15.    The parties were unable to resolve their dispute informally, and therefore are proceeding with this Stipulation.

16.    The Court has not yet entered an initial scheduling order in this case.

I declare under penalty of perjury that the foregoing is true and correct.


DATE:  April 8, 2020


By:   _/s/Joshua H. Lerner_

Joshua H. Lerner

# Exhibit A

**CT Corporation**

**Service of Process Transmittal**
01/08/2020
CT Log Number 536938677

TO:     Ami Gomez
        Apple Inc.
        1 Infinite Loop, M/S 169-2NYJ
        Cupertino, CA 95014-2083

RE:     **Process Served in California**

FOR:    Apple Inc.  (Domestic State: CA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Masimo Corporation and Cercacor Laboratories, Inc., Pltfs. vs. True Wearables, Inc. and Marcelo Lamego, Dfts. // To: Apple Inc. |
| **DOCUMENT(S) SERVED:** | Check, Subpoena, Proof(s), Attachment(s) |
| **COURT/AGENCY:** | Central District of California - U.S. District Court, CA Case # 818CV02001JVSJDE |
| **NATURE OF ACTION:** | Subpoena - Business records - Pertaining to Marcelo Lamego |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/08/2020 at 11:27 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | 02/10/2020 at 10:00 a.m. (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Brian C. Claassen Knobbe, Martens, Olson & Bear LLP 2040 Main St., 14th Floor Irvine, CA 92614 949-760-0404 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air |
| | Image SOP |
| | Email Notification,  Ami Gomez  ami_r_gomez@apple.com |
| | Email Notification,  Noreen Krall  nkrall@apple.com |
| | Email Notification,  David Melaugh  melaugh@apple.com |
| | Email Notification,  Colleen Brown  colleen_brown@apple.com |
| | Email Notification,  DIANA LOOP  loop@apple.com |
| | Email Notification,  Heather Moser  hmoser@apple.com |
| | Email Notification,  Tim O'Neil  toneil@apple.com |
| | Email Notification,  Charstie Wheelock  wheelock@apple.com |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**CT Corporation**

**Service of Process Transmittal**
01/08/2020
CT Log Number 536938677

TO:     Ami Gomez
        Apple Inc.
        1 Infinite Loop, M/S 169-2NYJ
        Cupertino, CA 95014-2083

RE:     **Process Served in California**

FOR:    Apple Inc.  (Domestic State: CA)

Email Notification,  Erik Floyd  efloyd@apple.com

Email Notification,  Beth Kellermann  kellermann@apple.com

Email Notification,  Ryan Moran  rmoran@apple.com

Email Notification,  Jennifer Brown  jennifer_brown@apple.com

Email Notification,  Susan Guarino  sguarino@apple.com

Email Notification,  Andrew Farthing  afarthing@apple.com

Email Notification,  Scott Murray  scott_murray@apple.com

Email Notification,  Pami Vyas  pvyas@apple.com

Email Notification,  Kim Moore  kim_moore@apple.com

Email Notification,  Lisa Olle  olle@apple.com

Email Notification,  Victoria Nakaahiki  victoria_nakaahiki@apple.com

Email Notification,  Maya Kumar  maya_kumar@apple.com

Email Notification,  Phil Rawlinson  prawlinson@apple.com

Email Notification,  Jessica Hannah  jessica_hannah@apple.com

Email Notification,  Kate Kaso-Howard  kkasohoward@apple.com

Email Notification,  Marc Breverman  mbreverman@apple.com

Email Notification,  STEPHANIE FINE  stephanie_fine@apple.com

Email Notification,  AMY HANDLER  ahandler@apple.com

Email Notification,  GABE ZELDIN  gzeldin@apple.com

Email Notification,  BENJAMIN HUH  bhuh@apple.com

Email Notification,  AARON HUANG  aaron_y_huang@apple.com

Email Notification,  JAMES WILEY, JR.  jwileyjr@apple.com

Email Notification,  JESSE KOEHLER  jesse_koehler@apple.com

Page 2 of  3 / DP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**CT Corporation**

**Service of Process Transmittal**
01/08/2020
CT Log Number 536938677

TO:     Ami Gomez
        Apple Inc.
        1 Infinite Loop, M/S 169-2NYJ
        Cupertino, CA 95014-2083

RE:     **Process Served in California**

FOR:    Apple Inc.  (Domestic State: CA)

Email Notification,  Andrew Stein  andrew_stein@apple.com

Email Notification,  Matt Clements  matthew_clements@apple.com

Email Notification,  NATALIE POUS  npous@apple.com

Email Notification,  ELVIS HOWARD  elvis_howard@apple.com

Email Notification,  TIFFANIE ROSE  tiffanie_rose@apple.com

Email Notification,  Sally Zenith  zenith@apple.com

Email Notification,  HENRY CORNILIE  hcornillie@apple.com

Email Notification,  MARA LUDMER  mludmer@apple.com

SIGNED:         C T Corporation System
ADDRESS:        1999 Bryan St Ste 900
                Dallas, TX 75201-3140

For Questions:  877-564-7529
                MajorAccountTeam2@wolterskluwer.com

Page 3 of  3 / DP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**MADDEN CORPORATION**
**DBA PROLEGAL**
733 W TAFT AVE
ORANGE, CA 92865-4229

2996

16-24/1220 4515

DATE _1/8/20_

PAY TO THE ORDER OF _Apple Inc._ $ _91.62_

_Ninety one and Sixty two_ DOLLARS

WELLS FARGO
Wells Fargo Bank, N.A.
California
wellsfargo.com

FOR _Knobbe, (225627)Claudia_

⑆000000 2996⑆ ⑈122000247⑈ 923440791 5⑆

*9:20 Am*

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| Masimo Corporation and Cercacor Laboratories, Inc. | ) |
| *Plaintiffs* | ) |
| v. | ) Civil Action No.   8:18-cv-02001-JVS-JDE |
| True Wearables, Inc. and Marcelo Lamego | ) |
| *Defendants* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
Apple Inc.
One Apple Park Way, Cupertino CA 95014
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
Please see Exhibit A Attached for Topics.

| Place: Knobbe, Martens, Olson & Bear LLP<br>333 Bush Street, Suite 2100<br>San Francisco, CA 94104 | Date and Time:<br>02/10/2020 10:00 am |
|---|---|

The deposition will be recorded by this method:   stenographic, audio, video and/or real-time computer means

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: Please see Exhibit B attached. You are instructed to produce the documents by January 28, 2020 to the attention of Nicholas Belair at KNOBBE, MARTENS, OLSON & BEAR LLP, 333 Bush Street, Suite 2100, San Francisco, CA 94104.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   01/07/2020

| *CLERK OF COURT* | |
|---|---|
| | OR |
| | /s/ Brian C. Claassen |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Plaintiffs
Masimo Corporation and Cercacor Laboratories, Inc. _____ , who issues or requests this subpoena, are:
Brian C. Claassen, Knobbe, Martens, Olson & Bear LLP, 2040 Main St., 14th Floor, Irvine CA 92614 (949) 760-0404

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  8:18-cv-02001-JVS-JDE

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction— which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court   may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

**EXHIBIT A**

A.    The term "Masimo" shall mean Masimo Corporation and shall include any predecessor in interest, successor, subsidiary, affiliate, and/or division.

B.    The term "Cercacor" shall mean Cercacor Laboratories, Inc. and shall include any predecessor in interest, successor, subsidiary, affiliate, and/or division.

C.    The term "Plaintiffs" shall mean Masimo and Cercacor, collectively and/or individually.

D.    The term "Lamego," shall mean and include the following individual, Marcelo Lamego, and any present or former principal, officer, director, employee, former employee, servant, agent, attorney, or other representative acting on behalf of Defendant Marcelo Lamego.

E.    The term "True Wearables" shall mean True Wearables, Inc. and any present or former principal, officer, director, employee, former employee, servant, agent, attorney, or other representative acting on its behalf, and shall include any parent, subsidiary, division, predecessor, successor, or affiliate.

F.    The terms "Defendants," "You," and "Your" shall mean Lamego and True Wearables, collectively and/or individually.

G.    The terms "Oxxiom" or "Accused Product" shall mean True Wearables, Inc.'s hardware and/or iOS software application pulse oximeter product that, among other things, tracks oxygen saturation ($SpO_2$), pulse rate (PR) and perfusion index (PI).

H.    The term "Masimo Asserted Patents" shall mean, individually and collectively: U.S. Patent Nos. 7,186,966 ("the '966 patent"), 7,295,866 ("the '866 patent"), 8,886,271 ("the '271 patent"), 8,983,564 ("the '564 patent"), 10,194,847 ("the '847 patent"), and 10,194,848 ("the '848 patent"), and any other patents that Masimo asserts in this litigation.

## DEPOSITION TOPICS

**TOPIC NO. 1:**

Marcelo Lamego's involvement in, and technical disclosures to Apple regarding, physiological parameter monitoring, such as pulse oximetry and pulse rate monitoring.

**TOPIC NO. 2:**

Marcelo Lamego's contributions to Apple's marketing strategies for physiological parameter monitoring, such as pulse oximetry and pulse rate monitoring.

**TOPIC NO. 3:**

Marcelo Lamego's disclosures to Apple relating to light piping reduction in physiological parameter monitoring, such as pulse oximetry and pulse rate monitoring.

**TOPIC NO. 4:**

Marcelo Lamego's disclosures to Apple relating to the weighting and relative importance of separate calculation techniques for non-invasive measurement of blood parameters

**TOPIC NO. 5:**

Marcelo Lamego's disclosures to Apple relating to physiological parameter buffers during measurements in physiological parameter monitoring, such as pulse oximetry and pulse rate monitoring.

**TOPIC NO. 6:**

Marcelo Lamego's involvement in and disclosures to Apple regarding technical aspects of light emission and detection.

**TOPIC NO. 7:**

Apple's communications with Marcelo Lamego concerning Mr. Lamego's employment with Apple and termination thereof.

# EXHIBIT B

**EXHIBIT B**

Pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure, and in accordance with the following definitions and instructions, Plaintiffs request that Apple Inc. produce the documents and things identified in the requests for production below.

**DEFINITIONS**

1.     The term "documents" is used in the broadest sense possible under Rule 34 of the Federal Rules of Civil Procedure, and includes all written or graphic matter, however produced or reproduced, including, but not limited to, originals (or copies where originals are unavailable) of correspondence, electronic mail, computer storage media (including, but not limited to, all active, inactive, and archived data files stored on hard drives, operating systems, software, floppy disks, magnetic tapes, zip drives, CD-ROMS, mainframe computers, desktop computers, home computers, laptops, mobile handheld devices, retired computer systems or any other storage medium), computer software needed to produce in human-readable form data from said computer storage media, instructions for using said computer software, telegrams, notes or sound recordings of any type of personal or telephone conversations, or of meetings or conferences, minutes of directors or committee meetings, memoranda, inter-office communications, studies, analyses, reports, engineering drawings, results of investigations, catalogs, contracts, licenses, agreements, working papers, statistical records, ledgers, books of account, vouchers, invoices, charge slips, freight bills, time sheets or logs, stenographers' notebooks, diaries, or papers similar to any of the foregoing, however denominated.

2.     The terms "communication" or "communications" mean any communication regardless of the manner in which the communication(s) took place, including, but not limited to, face-to-face conversations, correspondence,

1  electronic or computer mail, telephone calls, facsimile communications, or
2  telegrams.

3      3.    The terms "describe," "described" or "description" when used with
4  respect to any act, action, accounting, activity, audit, practice, process, occurrence,
5  course of conduct, happening, negotiation, relationship, scheme, communication,
6  conference, discussion, development, service, transaction, instance, incident or
7  event, means provide any or all of the following information (to the extent it is
8  available to you): its general nature; the time and place thereof; a chronological
9  account setting forth each element thereof, what such element consisted of, and
10  what transpired as a part thereof; the identity of each person who performed any
11  function or had any role in connection therewith (e.g., speaker, participant,
12  contributor of information, witness) or who has any knowledge thereof together
13  with a description of each person's function, role, or knowledge; the identity of
14  each document which refers thereto or which was used, referred to, or prepared in
15  the course or as a result thereof; and identification of each communication which
16  was a part thereof or referred thereto.   When used in connection with any
17  evaluation, calculation, or computation, the terms "describe," "described" or
18  "description" mean provide any or all the following information: an explanation of
19  its meaning; an explanation of the manner in which it was derived; the identity of
20  each person who performed any function with respect thereto and a description of
21  his or her function; the identity of each document which refers thereto or which
22  was used, referred to, or prepared in the course of or as a result thereof; and the
23  identity of each communication which occurred in the course of the preparation
24  thereof or which referred thereto.

25      4.    The term "you," "your," and "Apple" means Apple Inc., and its
26  associated entities (including subsidiaries and affiliates), companies acquired by
27  Apple Inc. or, employees, agents, partners, attorneys, and representatives.

28

5. The terms "person," "individual," and "entity" shall include natural persons, corporations, and other legal or business entities, whether or not in your employ, and the acts and knowledge of a person, individual or entity are defined to include the acts and knowledge of that person's, individual's, or entity's directors, officers, members, employees, representatives, agents, and attorneys.

6. The singular form of any noun or pronoun used herein includes within its meaning the plural form thereof and vice versa; the neuter, masculine or feminine form of any pronoun used herein includes within its meaning the neuter, masculine and feminine forms; and the use herein of any tense of any verb includes within its meaning all other tenses of the verb. In every such instance, the specific request shall be construed in the broadest sense so as to call for the most complete and inclusive answer.

7. The terms "and" and "or" shall be construed both conjunctively and disjunctively, and the plural shall be construed as the singular, and vice versa, as necessary and in order to bring within the scope of these requests for production all documents that might otherwise be construed to be outside their scope.

## INSTRUCTIONS

1. You are to produce every document and thing requested that is in your possession, custody, or control, or within the possession, custody, or control of any employees, agents, consultants, attorneys, and/or any other persons acting or purporting to act on your behalf.

2. If you have any good faith objection to any request or any part thereof, the specific nature of the objection and whether it applies to the entire request or to a part of the request shall be stated. If there is an objection to any part of a request, then the part objected to should be identified and documents responsive to the remaining unobjectionable part should be produced.

3. Each request shall be answered separately.

4. Each request shall be answered on the basis of your entire

1   knowledge, from all sources.

2       5.      For each document and thing requested herein that you withhold or

3   redact under a claim of attorney-client privilege, work product immunity, or any

4   other privilege or immunity, you shall provide an explanation of the basis for the

5   claim, including:

6           a.  the date of the document;

7           b.  the type of document (e.g., letter, memorandum, etc.);

8           c.  the name and title of any and all authors or senders and any and all

9               addressees and copy recipients of the document and any and all

10              persons to whom the document was shown or to whom its subject

11              matter was disclosed;

12          d.  the name of each person or persons (other than stenographic or

13              clerical assistants) participating in the preparation of the document or

14              in whose name the document was prepared;

15          e.  the subject matter of the document;

16          f.  the REQUEST FOR PRODUCTION to which the document is

17              responsive; and

18          g.  a statement of the basis upon which the document has been redacted

19              or withheld, including the specific nature of the privilege or

20              exemption claimed and the detailed grounds for claiming such

21      6.      For any document requested herein that has been destroyed or

22  misplaced, you shall provide the information described in paragraphs 5(a)-(e)

23  above, as well as a brief explanation of the circumstances (when, how, by whom,

24  and why) surrounding the document's destruction or loss, and any and all records

25  pertaining to its destruction or loss.

26      7.      If you or your attorneys know of the existence, past or present, of any

27  document described in a request, but such document is not presently in your

28  possession, custody, or control or in the possession, custody, or control of its

1   agents, representatives, or attorneys, you shall so state in response to the request,

2   identify such document in response to the request, and identify the individual in

3   whose possession, custody, or control the document was last known to reside.

4       8.      Documents shall be produced as they are maintained in the normal

5   course of business, including:

6           a. all associated file labels, file headings, and file folders shall be

7               produced together with the responsive documents from each file, and

8               each file shall be identified as to its owner or custodian;

9           b. all documents that cannot be legibly copied shall be produced in their

10              original form; otherwise, you may produce photocopies; and

11          c. each page shall be given a discrete production number.

12

13                      **REQUESTS FOR PRODUCTION**

14  **REQUEST FOR PRODUCTION NO. 1:**

15      Documents sufficient to show Marcelo Lamego's involvement in any Apple

16  program or project relating to physiological parameter monitoring, including but

17  not limited to pulse oximetry and pulse rate monitoring.

18  **REQUEST FOR PRODUCTION NO. 2:**

19      All documents constituting, referring, or relating to Marcelo Lamego's

20  technical disclosures to Apple relating to physiological parameter monitoring,

21  including but not limited to pulse oximetry and pulse rate monitoring.

22  **REQUEST FOR PRODUCTION NO. 3:**

23      All documents generated in whole or in part by Marcelo Lamego while

24  employed at Apple and relating to physiological parameter monitoring, including

25  but not limited to pulse oximetry and pulse rate monitoring.

26  **REQUEST FOR PRODUCTION NO. 4:**

27      Documents sufficient to show Marcelo Lamego's contributions to Apple's

28  marketing strategies relating to physiological parameter monitoring, including but

1  not limited to pulse oximetry and pulse rate monitoring.

2  **REQUEST FOR PRODUCTION NO. 5:**

3       All documents constituting, referring, or relating to Marcelo Lamego's

4  disclosures to Apple regarding light piping reduction in physiological parameter

5  monitoring, including but not limited to pulse oximetry and pulse rate monitoring.

6  **REQUEST FOR PRODUCTION NO. 6:**

7       All documents constituting, referring, or relating to Marcelo Lamego's

8  disclosures to Apple regarding the weighting and relative importance of separate

9  calculation techniques for non-invasive measurement of blood parameters.

10  **REQUEST FOR PRODUCTION NO. 7:**

11       All documents constituting, referring, or relating to Marcelo Lamego's

12  disclosures to Apple regarding physiological parameter buffers during

13  measurements of physiological parameters in physiological parameter monitoring,

14  including but not limited to pulse oximetry and pulse rate monitoring.

15  **REQUEST FOR PRODUCTION NO. 8:**

16       Documents sufficient to show Marcelo Lamego's involvement in any Apple

17  program or project relating to the technical aspects of light emission and detection

18  **REQUEST FOR PRODUCTION NO. 9:**

19       All documents constituting, referring, or relating to Marcelo Lamego's

20  disclosures to Apple regarding the technical aspects of light emission and

21  detection.

22  **REQUEST FOR PRODUCTION NO. 10:**

23       All communications with Marcelo Lamego regarding his employment at

24  Apple, including his recruitment and termination.

25

26  / / /

27  / / /

28  / / /

**<u>REQUEST FOR PRODUCTION NO. 11:</u>**

All agreements between Marcelo Lamego and Apple concerning his employment by Apple, including but not limited to employment agreements, assignment agreements, confidentiality agreements, separation or termination agreements.

# Exhibit B

1   JOSHUA H. LERNER, SBN 220755
       jlerner@gibsondunn.com
2   GIBSON, DUNN & CRUTCHER LLP
    555 Mission Street, Suite 3000
3   San Francisco, CA 94105-0921
    Telephone: 415.393.8200
4   Facsimile:  415.393.8306

5   H. MARK LYON, SBN 162061
       mlyon@gibsondunn.com
6   GIBSON, DUNN & CRUTCHER LLP
    1881 Page Mill Road
7   Palo Alto, CA  94304-1211
    Telephone: 650.849.5300
8   Facsimile:  650.849.5333

9   ILISSA SAMPLIN, SBN 314018
       isamplin@gibsondunn.com
10  GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
11  Los Angeles, CA 90071-3197
    Telephone: 213.229.7000
12  Facsimile: 213.229.7520

13  *Attorneys for Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 17  APPLE INC., a California corporation, | CASE NO. |
| 18                              Plaintiff, | **APPLE INC.'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA AND** |
| 19            v. | **FOR A PROTECTIVE ORDER; MEMORANDUM OF POINTS AND** |
| 20  MASIMO CORPORATION, | **AUTHORITIES IN SUPPORT THEREOF** |
| 21  a Delaware corporation; and CERCACOR LABORATORIES, INC., | [Related to Case Nos. 8:18-cv-02001-JVS-JDE (C.D. Cal. filed Nov. 8, 2018) and 8:20-cv- |
| 22  a Delaware Corporation. | 00048-JVS (JDEx) (C.D. Cal. filed Jan. 9, 2020)] |
| 23                            Defendants. | Date:        TBD |
| 24 | Time:        TBD<br>Crtrm:      TBD |
| 25 | Judge:       TBD |

## **NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that at a date and time to be determined by this Court, Apple Inc. ("Apple") will, and hereby does, move the Court, pursuant to Federal Rules of Civil Procedure 26(c) and 45, for an order quashing the subpoena for the production of a deposition witness and documents served by Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs") on Apple in connection with *Masimo Corp. et al. v. True Wearables Inc. et al.*, No. 8:18-cv-02001-JVS-JDE (the "True Wearables Case") and for a protective order.  In the True Wearables Case, Plaintiffs allege that one of the defendants in the case, Marcelo Lamego, briefly worked at Apple before he formed True Wearables.  But Plaintiffs' claims against Mr. Lamego and True Wearables in the True Wearables Case are not based on Mr. Lamego's conduct at Apple, for Apple, or on behalf of Apple.  Plaintiffs' claims are based on Mr. Lamego's conduct while employed by Ceracor and in connection with the company he founded, True Wearables.  Accordingly, Plaintiffs' subpoena to Apple is not designed to elicit discovery relevant to Plaintiffs' claims in, and proportional to the needs of, the True Wearables Case.

Indeed, Plaintiffs did not serve their subpoena on Apple until January 8, 2020—the *day before* it filed a *separate* lawsuit against Apple in the Central District of California (*Masimo Corp. et al. v. Apple, Inc.*, No. 8:20-cv-00048-JVS (JDEx) (C.D. Cal. filed Jan. 9, 2020) (the "Apple Case")).  Although the subpoena was served in connection with the True Wearables Case, the subpoena on its face pertains to Plaintiffs' claims against Apple in the Apple Case.  The timing of Plaintiffs' Apple subpoena and the manner in which the substance of the subpoena tracks their claims in the Apple Case is telling.  Plaintiffs are trying to obtain discovery from Apple for the Apple Case *before* discovery in that case begins.  The subpoena is an attempted end-run around Federal Rules of Civil Procedure 16 and 26, as well as California Code of Civil Procedure Section 2019.210.  The subpoena also seeks sensitive and confidential information from Apple, even though, to the best of Apple's knowledge, a protective order has not been entered in either the True Wearables Case or the Apple Case.

1       Apple respectfully requests that the Court quash the subpoena in its entirety and enter a

2  protective order to prohibit Plaintiffs' discovery of the documents and testimony requested in the

3  subpoena.

4       This Motion is based upon this Notice of Motion and Motion, the accompanying

5  Memorandum of Points and Authorities, the Declaration of Joshua H. Lerner (the "Lerner Decl."),

6  the filings in this action, and any other matters of which this Court may take judicial notice.

7       Pursuant to Federal Rule of Civil Procedure 26 and Local Rule 37-1, undersigned counsel

8  certifies that the parties have conferred for the purpose of attempting to resolve all disputed issues.

9  Counsel met and conferred telephonically on February 26, 2020, and March 5, 2020.

11  Dated:   March 10, 2020           Respectfully submitted,

12                      JOSHUA H. LERNER
H. MARK LYON

13                      ILISSA SAMPLIN
GIBSON, DUNN & CRUTCHER LLP

15                   

16                   By:  _____
                          Joshua H. Lerner

18                   *Attorneys for Apple Inc.*

Gibson, Dunn &
Crutcher LLP

2

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND .............................................................................................. 1

        A.      Plaintiffs Filed the True Wearables Case Against Mr. Lamego and True
                Wearables. ......................................................................................... 1

        B.      Plaintiffs Served Apple with a Subpoena in the True Wearables Case One Day
                Before Filing the Apple Case. ......................................................... 2

        C.      Apple's Counsel Met and Conferred with Plaintiffs' Counsel About the Apple
                Subpoena. .......................................................................................... 3

III.    LEGAL STANDARD ..................................................................................... 4

IV.     ARGUMENT ................................................................................................... 5

        A.      Plaintiffs Seek Discovery that Goes to the Heart of the Apple Case in Which
                They Are Not Yet Permitted to Propound Discovery. ..................... 6

        B.      The Information Sought in the Subpoena Is Neither Relevant Nor
                Proportionate to the True Wearables Case. .................................... 6

                1.      The Documents and Testimony Requested from Apple Are Not
                        Relevant to the True Wearables Case. ................................. 7

                2.      The Documents and Testimony Requested from Apple Are Not
                        Proportionate to the Needs of the True Wearables Case. ..... 9

        C.      Plaintiffs Are Not Entitled to Discovery from Apple in the Absence of a
                Section 2019.210 Disclosure. ......................................................... 10

        D.      Discovery Should Not Proceed Without an Acceptable Protective Order. ............... 11

V.      CONCLUSION ............................................................................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn & Crutcher LLP

i

1

# TABLE OF AUTHORITIES

2
Page(s)

3

**Cases**

4

5
*ATS Prod., Inc. v. Champion Fiberglass, Inc.*,
309 F.R.D. 527 (N.D. Cal. 2015) .................................................................5

6

*Brescia v. Angelin*,
7
172 Cal. App. 4th 133 (2009).................................................................10

8
*Compaq Comput. Corp. v. Packard Bell Elec., Inc.*,
163 F.R.D. 329 (N.D. Cal. 1995) .................................................................5

9

*Comput. Econs., Inc. v. Gartner Grp., Inc.*
10
50 F. Supp. 2d 980 (S.D. Cal. 1999) .................................................................10

11
*Dart Indus. Co. v. Westwood Chem. Co.*,
12
649 F.2d 646 (9th Cir. 1980).................................................................4

13
*Gatan, Inc. v. Nion Co.*,
No. 15-cv-01862-PJH, 2018 WL 2117379 (N.D. Cal. May 8, 2018)...........................................11
14

*Gilead Scis., Inc. v. Merck & Co, Inc.*,
15
No. 5:13-cv-04057-BLF, 2016 WL 146574 (N.D. Cal. Jan. 13, 2016) ...........................................6

16
*Goes Int'l, AB v. Dodur Ltd.*,
17
No.14-cv-05666-LB, 2016 WL 427369 (N.D. Cal. Feb. 4, 2016)...................................................7

18
*Gonzales v. Google, Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006) .................................................................4
19

20
*Haworth, Inc. v. Herman Miller, Inc.*,
998 F.2d 975 (Fed. Cir. 1993).................................................................9

21
*Heilman v. Lyons*,
22
No. 2:09–cv–2721 KJN P, 2010 WL 5168871 (E.D. Cal. Dec. 13, 2010) .......................................9

23
*Loop AI Labs Inc. v. Gatti*,
No. 15-cv-00798-HSG, 2015 WL 9269758 (N.D. Cal. Dec. 21, 2015) ........................................11
24

25
*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
No. SA CV 19-00220-JVS, 2019 WL 4284523 (C.D. Cal. June 11, 2019) ................................11

26
*Moon v. SCP Pool Corp.*,
27
232 F.R.D. 633 (C.D. Cal. 2005) .................................................................9

28
*Nguyen v. LVNV Funding, LLC*,
No. 15cv758-LAB, 2017 WL 951026 (S.D. Cal. Mar. 10, 2017) ................................5

Gibson, Dunn &
Crutcher LLP

APPLE INC.'S NOTICE OF MOTION AND MOTION TO
QUASH SUBPOENA AND FOR A PROTECTIVE ORDER

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Perlan Therapeutics, Inc. v. Superior Court*,
   178 Cal. App. 4th 1333 (2011)........................................................................10

*In re REMEC, Inc. Secs. Litig.*,
   No. 04cv1948 JLS, 2008 WL 2282647 (S.D. Cal. May 30, 2008)....................8

*Soc. Apps, LLC v. Zynga, Inc.*,
   No. 4:11–CV–04910 YGR, 2012 WL 2203063 (N.D. Cal. June 14, 2012) ...............10

*Soto v. Castlerock Farming & Transp., Inc.*,
   282 F.R.D. 492 (E.D. Cal. 2012) .....................................................................9

*United States v. Capriotti*,
   No. 1:11cv0847 DLB, 2012 WL 2994244 (E.D. Cal. July 20, 2012)................5

*Unsworth v. Musk*,
   No. 19-mc-80224-JSC, 2019 WL 5550060 (N.D. Cal. Oct. 28, 2019) ..............5

*V5 Techs. v. Switch, Ltd.*,
   No. 2:17-cv-02349-KJD-NJK, 2019 WL 7489108 (D. Nev. Dec. 20, 2019) ...............5

*Waymo LLC v. Uber Techs., Inc.*,
   No. 17-cv-00939-WHA, 2017 WL 2929439 (N.D. Cal. July 7, 2017)...............4

*Williams v. Cty. of San Diego*,
   No. 17-cv-00815-MMA, 2019 WL 5963969 (S.D. Cal. Nov. 13, 2019).....................5, 8

**Statutes**

Cal. Civ. Proc. Code § 2019.210.......................................................................10

**Rules**

Fed. R. Civ. P. 26 ...........................................................................4, 5, 6, 8, 9, 11

Fed. R. Civ. P. 45 .................................................................................4, 5, 11

**Other Authorities**

Fed. R. Civ. P. 26 advisory committee notes (2015 amendments) ........................7

Fed. R. Civ. P. 45 advisory committee note (1970 amendment) ..........................4

Gibson, Dunn &
Crutcher LLP

APPLE INC.'S NOTICE OF MOTION AND MOTION TO
QUASH SUBPOENA AND FOR A PROTECTIVE ORDER

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Apple asks the Court to quash a subpoena that Plaintiffs Masimo and Cercacor improperly served on Apple in an attempt avoid basic rules governing scheduling and discovery.

Plaintiffs served the subpoena at issue on Apple in connection with a long-pending case in the Central District against Marcelo Lamego and True Wearables.  The subpoena, however, is a transparent attempt to obtain early discovery from Apple in a case that Plaintiffs recently filed against Apple.  Indeed, the subpoena was served *one day* before Plaintiffs filed the Apple Case, and nearly one year after discovery began in the True Wearables Case.  Furthermore, the subpoena's document requests and deposition topics are not relevant to the True Wearables Case, but on their face pertain to Plaintiffs' claims against Apple in the Apple Case.

Plaintiffs are not yet permitted to propound discovery in the Apple Case, and there is no authority to support Plaintiffs' attempt to expedite discovery in the Apple Case through a subpoena served in the True Wearables Case.  To the contrary, the subpoena breaks the basic rules governing the sequence of discovery, including Federal Rules of Civil Procedure 16 and 26(f), the Apple Case court's Scheduling Order, and California Code of Civil Procedure Section 2019.210.

Apple respectfully requests that this Court quash the subpoena in full and enter a protective order prohibiting the deposition and document production sought in the subpoena entirely—to prevent Plaintiffs from accomplishing an end-run around the Federal Rules, the Apple Case court's Scheduling Order, and California Code of Civil Procedure Section 2019.210.

## II.     BACKGROUND

### A.     Plaintiffs Filed the True Wearables Case Against Mr. Lamego and True Wearables.

Plaintiffs filed the True Wearables Case against Mr. Lamego and his company, True Wearables, on November 8, 2018, alleging claims of breach of contract, breach of fiduciary duty, trade secret misappropriation, and patent infringement.  In the True Wearables Case, Plaintiffs allege that Mr. Lamego (i) acquired and wrongfully disclosed and used unspecified confidential and proprietary technical information, product plans, and manufacturing knowledge belonging to Plaintiffs in connection with True Wearables' development of the Oxxiom product, (ii) breached his

agreements with Plaintiffs by using and disclosing their confidential information for his benefit and the benefit of True Wearables, and (iii) breached his fiduciary duties to Cercacor by failing, while still employed by Cercacor, to pursue patent subject matter he was instructed to pursue.  *See, e.g.*, *Masimo Corp. et al. vs. True Wearables, Inc., et al.*, Case No. 8:18-cv-02001-JVS-JDE, Dkt. No. 42, First Am. Compl. ¶¶ 11, 49, 63, 80, 81, 95, 96, 105 ("True Wearables FAC").[1]

In their Complaint in the True Wearables Case, Plaintiffs allege that, following his roles at Masimo and Cercacor, Mr. Lamego worked at Apple for seven months before he founded True Wearables.  *Id.* ¶¶ 35, 37, 38.  However, Plaintiffs do not allege any claims against Mr. Lamego or True Wearables based on Mr. Lamego's seven months at Apple.  The claims in the case do not concern Mr. Lamego's conduct for, on behalf of, or during his seven-month tenure at, Apple.  And while Plaintiffs allege in the True Wearables Case that Apple recruited and pursued their employees, including Mr. Lamego, *see id.* ¶ 35, there are no claims asserted in the True Wearables Case based on that alleged conduct by Apple.  Indeed, Apple is not a party to the True Wearables Case.

**B.    Plaintiffs Served Apple with a Subpoena in the True Wearables Case One Day Before Filing the Apple Case.**

On January 8, 2020, Plaintiffs served a subpoena on Apple in connection with the True Wearables Case, noticing a deposition and requesting the production of documents.  The subpoena notices seven topics for deposition concerning Mr. Lamego's alleged "disclosures to Apple" about physiological parameter monitoring, Mr. Lamego's "contributions to Apple's marketing strategies" for the same, and Apple's communications with Mr. Lamego regarding his employment with Apple and his termination thereof.  Lerner Decl. Ex. 1 (Subpoena) at Ex. A, p. 2.  The eleven requests for production cover similar topics, including documents concerning Mr. Lamego's "disclosures to Apple" and "involvement in" and "contributions to" work for Apple.  *Id.* at Ex. B, pp. 7–9.

On January 9, 2020, one day after serving the subpoena on Apple in connection with the True Wearables Case, Plaintiffs filed the Apple Case—alleging claims against Apple for patent infringement and trade secret misappropriation relating to physiological parameter monitoring in the

---

[1]  In addition to the claims against Mr. Lamego, Plaintiffs have asserted six claims against True Wearables for patent infringement.  True Wearables FAC ¶¶ 112–90.

1   Apple Watch.  Plaintiffs allege, among other things, that Apple recruited Mr. Lamego—who had

2   been "taught about the keys to effective non-invasive monitoring" by Plaintiffs, which he then

3   disclosed to Apple.  *Masimo Corp. et al. vs. Apple Inc.*, 8:20-cv-00048-JVS (JDEx), Dkt. No. 1,

4   Compl. ¶¶ 21, 23, 28 ("Apple Case Compl.").  On February 28, 2020, Apple filed a notice of related

5   cases pursuant to Local Rule 83-1.3.1, identifying the True Wearables Case as related to the Apple

6   Case.  The Apple Case, Dkt. No. 14.  On March 4, 2020, Apple filed a motion to dismiss the Apple

7   Case.  *Id*., Dkt. No. 15.  Also on March 4, the Central District transferred the Apple Case to Judge

8   James V. Selna, who is also presiding over the True Wearables Case.

9        Judge Carter, to whom the Apple Case was previously assigned, did not set a scheduling

10  conference pursuant to Federal Rule of Civil Procedure 16(b) before the Apple Case was reassigned.

11  Judge Selna, the judge now presiding over the Apple Case, has likewise not yet set a scheduling

12  conference.  The parties therefore are not yet permitted to propound discovery in the Apple Case.

13  **C.      Apple's Counsel Met and Conferred with Plaintiffs' Counsel About the Apple**

14  **Subpoena.**

15       Counsel for Apple began conferring with Plaintiffs in the first half of January 2020.  Lerner

16  Decl. ¶ 3 & Ex. 2.  Apple thereafter repeatedly agreed to extend the meet and confer process—and to

17  extend the deadline to respond—because Plaintiffs were still collecting documents from the True

18  Wearable Defendants and had not deposed Mr. Lamego.  *Id.*

19       On February 27, 2020, the parties met and conferred and again agreed to delay discussions

20  while Plaintiffs pursued discovery in the True Wearables case.  *Id.* ¶ 4.  Counsel agreed to meet and

21  confer on March 4 at 10:30 a.m. and to extend the deadline for Apple to object or otherwise respond

22  until March 6.  *Id.* ¶ 4 & Ex. 2.  On March 4, 2020, with no warning, Plaintiffs' counsel cancelled the

23  meet and confer.  *Id.*  Plaintiffs' counsel waited until after 8:45 p.m. that evening to respond to

24  repeated inquiries, and then suggested that the parties meet and confer late in the afternoon the day

25  before the deadline to object or otherwise respond.  *Id.*  Apple agreed to adjust to suit Plaintiffs'

26  counsel's schedule, but sought two business days to discuss the outcome of the meeting.  *Id.*

27       Counsel met and conferred at 4:30 p.m. on March 5, 2020.  *Id.* ¶ 5.  Apple explained that

28  neither the document requests nor deposition topics are tied to the claims in the True Wearables Case.

*Id.*  Plaintiffs' counsel responded that the allegations in the trade secret claim, particularly those asserted in paragraphs 82 and 83 of the True Wearables FAC, are broad, but conceded that these allegations are related to True Wearables, not Apple.  *Id.*  Rather than withdraw the subpoena, or wait to conduct discovery in the Apple Case, however, Plaintiffs' counsel insisted that Apple serve objections to the subpoena.  *Id.*  Apple asked that Plaintiffs reconsider their position and come back with a final position on March 6, 2020, but Apple did not hear from Plaintiffs on that date.  *Id.*

On March 9, 2020, Apple followed up with a letter to Plaintiffs' counsel, reiterating its position that the subpoena is improper, and explaining its intention to file a motion to quash and for a protective order should Defendants not withdraw the subpoena by 2:00 p.m. on March 10, 2020.  *Id.* ¶ 6 & Ex. 3.  As of the time of filing of Apple's Motion, Plaintiffs have not responded to Apple's March 9, 2020 letter or withdrawn their subpoena.  *Id.* ¶ 6.

### III.    LEGAL STANDARD

The scope of civil discovery is not unlimited.  A party may obtain discovery only insofar as it relates to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The scope of permissible nonparty discovery under Rule 45 mirrors that of party discovery under Rule 26.  *See* Fed. R. Civ. P. 45 advisory committee note (1970 amendment) ("[T]he scope of discovery through a subpoena is the same as that applicable to . . . other discovery rules.").  "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679–80 (N.D. Cal. 2006) (citation omitted).

"'While discovery is a valuable right and should not be unnecessarily restricted . . . the "necessary" restriction may be broader when a nonparty is the target of discovery.'"  *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA, 2017 WL 2929439, at *3 (N.D. Cal. July 7, 2017), *mot. for relief from judgment denied*, 2017 WL 6883928 (N.D. Cal. Aug. 8, 2017) (quoting *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)).  The party issuing a subpoena must take "reasonable steps to avoid imposing undue burden or expense" on the subject.  Fed. R. Civ. P. 45(d)(1).

1    If a subpoena seeks "disclosure of privileged or other protected matter" or "subjects a person

2   to undue burden," the Court shall quash or modify the subpoena.  Fed. R. Civ. P. 45(d)(3)(A)(iii),

3   (iv).  "[A] court determining the propriety of a subpoena balances the relevance of the discovery

4   sought, the requesting party's need, and the potential hardship to the party subject to the subpoena."

5   *ATS Prod., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) (citation

6   omitted).  However, "if the sought-after [information is] not relevant . . . then *any burden whatsoever*

7   imposed . . . would be by definition 'undue.'"  *Williams v. Cty. of San Diego*, No. 17-cv-00815-

8   MMA, 2019 WL 5963969, at *3 (S.D. Cal. Nov. 13, 2019) (quoting *Compaq Comput. Corp. v.*

9   *Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335–36 (N.D. Cal. 1995)) (emphasis in original).  "[T]he

10   party issuing the subpoena must demonstrate that the information sought is relevant and material to

11   the allegations and claims at issue in the proceedings."  *Unsworth v. Musk*, No. 19-mc-80224-JSC,

12   2019 WL 5550060, at *4 (N.D. Cal. Oct. 28, 2019) (citation omitted).

13    "A non-party moving to quash a subpoena may also seek a protective order under Federal

14   Rule of Civil Procedure 26."  *Williams*, 2019 WL 5963969, at *4; *see also* Fed. R. Civ. P. 26(c)

15   (providing that "[a] party or any person from whom discovery is sought may move for a protective

16   order").  "The court may, for good cause, issue an order to protect a party or a person from

17   annoyance, embarrassment, oppression, or undue burden."  Fed. R. Civ. P. 26(c).  The court may also

18   issue a protective order to prevent discovery that is irrelevant to any of the claims at issue.  *See, e.g.*,

19   *V5 Techs. v. Switch, Ltd*., No. 2:17-cv-02349-KJD-NJK, 2019 WL 7489108, at *5 n.9 (D. Nev. Dec.

20   20, 2019) ("[C]ourts may enter protective orders preventing irrelevant questioning at deposition.");

21   *Nguyen v. LVNV Funding, LLC*, No. 15cv758-LAB, 2017 WL 951026, at *11 (S.D. Cal. Mar. 10,

22   2017) (declining to compel deposition testimony that was irrelevant and instead issuing a protective

23   order); *United States v. Capriotti*, No. 1:11cv0847 DLB, 2012 WL 2994244, at *2 (E.D. Cal. July 20,

24   2012) (finding "good cause" for a protective order when "the proposed subject matter of the

25   depositions is irrelevant to [the] proceeding").

26                              **IV.    ARGUMENT**

27    As set forth below, the subpoena is improper because:  (A) it is designed for Plaintiffs'

28   lawsuit against Apple in which they are not yet permitted to propound discovery; (B) it is not relevant

Gibson, Dunn &
Crutcher LLP

or proportionate to the claims in the True Wearables Case; (C) a Section 2019.210 trade secret disclosure has not yet been provided; and (D) a protective order has not yet been entered.

**A.      Plaintiffs Seek Discovery that Goes to the Heart of the Apple Case in Which They Are Not Yet Permitted to Propound Discovery.**

The subpoena Plaintiffs propounded on Apple in the True Wearables Case plainly was drafted based on Plaintiffs' claims asserted in the Apple Case filed the very next day.  All of the subpoena's requests hinge on Mr. Lamego's alleged improper disclosures of Plaintiffs' confidential, trade secret information *to Apple*,[2] which is one of two asserted bases for the Apple Case (*see generally* Apple Case Compl. ¶¶ 20–28, 179–91 (alleging improper disclosure by Mr. Lamego and Mr. O'Reilly)).  By contrast, Mr. Lamego's alleged improper disclosures to Apple are not at issue in the True Wearables Case—rather, at issue in the True Wearables Case is Mr. Lamego's conduct while still employed by Cercacor, as well as his conduct at, and disclosures to, True Wearables.

Under the plain terms of Federal Rule of Civil Procedure 26(d)(1), a party cannot seek formal discovery—including document productions and depositions—until *after* a Rule 26(f) conference has been conducted.  Fed. R. Civ. P. 26(d)(1).  And in the Apple Case in particular, this conference has not yet taken place.  Judge Selna also has not yet set a scheduling conference in the Apple Case.  Accordingly, it *is premature* for Plaintiffs to propound discovery in the Apple Case—yet, that is the obvious purpose of the subpoena that is the subject of this Motion.

**B.      The Information Sought in the Subpoena Is Neither Relevant Nor Proportionate to the True Wearables Case.**

Rule 26 is clear that discovery sought must be "relevant" to a "party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Courts therefore routinely reject discovery requests where the information sought "bear[s] no indication of any nexus to the disputes" in the case.  *Gilead Scis., Inc. v. Merck & Co, Inc.*, No. 5:13-cv-04057-BLF, 2016 WL 146574, at *2 (N.D. Cal. Jan. 13, 2016).  In addition to relevance, Rule 26 imposes a proportionality requirement—which creates a "collective

---

[2]  *See* Lerner Decl. Ex. 1 (Subpoena) at Ex. A, p. 2 (Topics 1–6) (seeking testimony on Mr. Lamego's "disclosures to Apple" relating to various aspects of "physiological parameter monitoring" or Lamego's "contributions to Apple's marketing strategies" for the same); *id.* at Ex. B, pp. 7–9 (seeking documents pertaining to same).

Gibson, Dunn & Crutcher LLP

responsibility" for "[t]he parties and the court . . . to consider the proportionality of all discovery and consider it in resolving discovery disputes."  Fed. R. Civ. P. 26 advisory committee notes (2015 amendments); *Goes Int'l, AB v. Dodur Ltd.*, No.14-cv-05666-LB, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) (citing committee notes requiring that "parties . . . tailor their efforts to the needs of this case").  In other words, any discovery request served by Plaintiffs in the True Wearables Case must be relevant and proportionate to the needs of *that* particular case.

Plaintiffs cannot satisfy these relevance or proportionality requirements, which is fatal to their subpoena.

## 1. The Documents and Testimony Requested from Apple Are Not Relevant to the True Wearables Case.

Given the subpoena's focus on the claims against Apple, it is no surprise that the subpoena calls for information that is not relevant to the True Wearables Case.

The scope of the subpoena makes clear that it was drafted and propounded for purposes of *the Apple Case*.  For example, the subpoena's multiple requests for "[a]ll documents constituting, referring, or relating to Marcelo Lamego's disclosures to Apple regarding" various aspects of physiological parameter monitoring, *e.g.*, Lerner Decl. Ex. 1 (Subpoena) at Ex. B, pp. 7–8, are clearly designed to capture the discovery that Plaintiffs need to prosecute their trade secret claims against Apple in the Apple Case—where Apple is alleged to have misappropriated physiological parameter monitoring information confidential and proprietary to Plaintiffs that it received from, *inter alia*, Mr. Lamego, *see* Apple Case Compl. ¶¶ 20–28, 179–91.

In the True Wearables Amended Complaint, by contrast, *none* of the claims are based on Mr. Lamego's conduct at, for, or on behalf of, Apple:

- *See* True Wearables FAC ¶¶ 45–57 (First Cause of Action: Breach of Contract with Masimo By Lamego) (no mention of Apple);

- *Id.* ¶¶ 59–73 (Second Cause of Action: Breach of Contract with Cercacor By Lamego) (no mention of Apple);

- *Id.* ¶¶ 75–87 (Third Cause of Action: Trade Secret Misappropriation Under California's Uniform Trade Secret Law) (no mention of Apple);

- *Id.* ¶¶ 89–101 (Fourth Cause of Action: Trade Secret Misappropriation Under the Federal Defense of Trade Secrets Act) (no mention of Apple); and

- *Id.* ¶¶ 103–11 (Fifth Cause of Action: Breach of Fiduciary Duty of Undivided Loyalty Against Lamego) (no mention of Apple).

Thus, Mr. Lamego's disclosures to Apple, his involvement in Apple programs or projects, and his contributions to Apple during his seven-month tenure at the company—the focus of the subpoena—are not bases for any of Plaintiffs' claims against Mr. Lamego and True Wearables in the True Wearables Case.  Plaintiffs admit as much in their True Wearables FAC.  *See id.* ¶ 36 (alleging that Mr. Lamego engaged in pulse oximetry work "on his own *after leaving Apple*") (emphasis added).  Rather, the claims in that case are based on Mr. Lamego's conduct while at Cercacor and his conduct at and on behalf of True Wearables.  And nothing has occurred in the True Wearables Case to expand the claims in that case or otherwise necessitate broad discovery from Apple of the type sought by Plaintiffs' subpoena.  Plaintiffs cannot satisfy the relevance requirement on these facts, which demonstrate that Plaintiffs are actually hoping to discover information that will help them develop, and prosecute, their Apple Case.  *In re REMEC, Inc. Secs. Litig.*, No. 04cv1948 JLS, 2008 WL 2282647, at *2 (S.D. Cal. May 30, 2008) ("Parties have no entitlement to discovery to develop new claims or defenses that are not identified in the pleadings.").  Because there is no connection between the subpoena's deposition topics or discovery requests and Plaintiffs' claims in the True Wearables Case, the discovery propounded on Apple should be prohibited.  *See Williams*, 2019 WL 5963969, at *8–10 (granting motion to quash deposition subpoena and for a protective order because discovery sought was not relevant); *see also* Fed. R. Civ. P. 26(b)(1) (a party is only entitled to discovery "regarding any nonprivileged matter that is *relevant* to any party's claim or defense") (emphasis added); Fed. R. Civ. P. 26(b)(2)(C) ("[T]he court must limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1).").

## 2.      The Documents and Testimony Requested from Apple Are Not Proportionate to the Needs of the True Wearables Case.

Rule 26's proportionality requirement considers, among other things, "the needs of the case, . . . the parties' relative access to relevant information," and "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1).  The "needs" of the True Wearables Case do not support Plaintiffs' subpoena to Apple because the case does not involve any claims of breach, misappropriation, or infringement, based on or relating to Apple.  Nor do any of the other proportionality considerations of Rule 26 favor Plaintiffs.

Rather, the court "*must* limit" the discovery Plaintiffs seek here because, among other things, it "can be obtained from some other source that is more convenient, less burdensome, or less expensive" than Apple.  Fed. R. Civ. P. 26(b)(2)(C)(i) (emphasis added).  That is, even if discovery concerning Mr. Lamego's disclosures to, involvement in programs and projects at, and contributions to Apple were relevant to the True Wearables Case (they are not), Plaintiffs have a *party* in the True Wearables Case with access to that information—Mr. Lamego.  Plaintiffs should be required to exhaust all avenues of obtaining such information from Mr. Lamego *before* burdening Apple— including the noticed deposition of Mr. Lamego, which Apple was last informed has not yet occurred. *See, e.g.*, *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) ("[T]here is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests."); *Heilman v. Lyons*, No. 2:09–cv–2721 KJN P, 2010 WL 5168871, at *1 (E.D. Cal. Dec. 13, 2010) (same, citing cases); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) (finding "undue burden" where "requests all pertain to defendant, who is a party, and, thus, plaintiffs can more easily and inexpensively obtain the documents from defendant rather than from [a] nonparty") (citing *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (affirming order requiring party to first obtain documents from opposing party rather than nonparty)).

The discovery Plaintiffs seek from Apple via their subpoena issued in the True Wearables Case is not relevant or proportionate to the needs of that case, but rather is on its face designed to elicit discovery of the type Plaintiffs need to prosecute their claims in the Apple Case.  Plaintiffs are

9

blatantly seeking to misuse the nonparty subpoena process in the True Wearables Case to short-circuit requirements attendant to discovery in the Apple Case—requirements established by Rule 16, Rule 26(f), and any scheduling orders issued in that case—in an effort to prematurely obtain discovery from Apple.[3]   That the subpoena was served nearly one year after discovery began in the True Wearables Case and *the day before* Plaintiffs served the Apple Case underscores their motives. Plaintiffs should not be permitted to bypass the Federal Rules or the current Initial Order and hijack the discovery process in the Apple Case through the True Wearables Case.

**C.   Plaintiffs Are Not Entitled to Discovery from Apple in the Absence of a Section 2019.210 Disclosure.**

This Court should quash the subpoena for the additional reason that Plaintiffs have not yet identified their purported trade secrets, let alone with the particularity required under Section 2019.210.

Section 2019.210 imposes on a trade secret plaintiff the burden to identify its alleged trade secrets with "reasonable particularity" *before* commencing trade-secret related discovery.  Cal. Civ. Proc. Code § 2019.210.  Section 2019.210 was enacted because the California Legislature "understood that plaintiffs in trade secret cases are often unable to identify any trade secrets," and that such claims are "especially prone to discovery abuse."  *Comput. Econs., Inc. v. Gartner Grp., Inc.* 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999) (sustaining objections to insufficient trade secret disclosure).  By requiring a plaintiff to identify its trade secrets early and with particularity, Section 2019.210 "prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets" and "assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope."  *Id.* at 985; *see also Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1343 (2011); *Brescia v. Angelin*, 172 Cal. App. 4th 133, 144 (2009).  District courts throughout California apply Section 2019 in trade secrets cases because it "assists the court and parties in defining the appropriate scope of discovery." *Soc. Apps, LLC v. Zynga, Inc.*, No. 4:11–CV–04910 YGR, 2012 WL 2203063, at *2 (N.D. Cal. June

---

[3]   Further underscoring the impropriety of Plaintiffs' attempt to circumvent the discovery rules here is the fact that the *same* attorneys from the *same* law firm represent Plaintiffs in both the True Wearables Case and the Apple Case.

Gibson, Dunn &
Crutcher LLP

14, 2012); *see also Gatan, Inc. v. Nion Co.*, No. 15-cv-01862-PJH, 2018 WL 2117379, at *4 (N.D.

Cal. May 8, 2018) (applying Section 2019.210); *Loop AI Labs Inc. v. Gatti*, No. 15-cv-00798-HSG,

2015 WL 9269758, at *4 (N.D. Cal. Dec. 21, 2015) (same); *M/A-COM Tech. Sols., Inc. v. Litrinium,*

*Inc.*, No. SA CV 19-00220-JVS, 2019 WL 4284523, at *2 (C.D. Cal. June 11, 2019) (finding "the

procedural requirements of Section 2019.210 are warranted and appropriate to assist in the orderly

and expeditious handling of discovery").

It is completely improper for Plaintiffs to take discovery aimed at trade secret claims against

Apple without first complying with Section 2019.210, and there can be no dispute that there has been

no effort to do that here, presumably because discovery has not even begun in the Apple Case, as

discussed above.

**D.      Discovery Should Not Proceed Without an Acceptable Protective Order.**

Finally, the subpoena is improper because it seeks confidential and sensitive documents and

testimony from Apple in the absence of a protective order.

The topics noticed for deposition and the discovery requests contained in the subpoena

implicate confidential information belonging to Apple, which it would not otherwise publicly

disclose.  This includes, for example, technical information that is confidential and proprietary to

Apple (*see, e.g.*, Lerner Decl. Ex. 1, Topic Nos. 1, 3–6 & Request Nos. 1–3, 5–9), as well as

confidential communications and agreements (*see, e.g.*, *id.* Topic Nos. 2, 7 & Request Nos. 4, 10).

Yet, no protective order has been entered in either the True Wearables Case or the Apple

Case.  The Court therefore should quash the subpoena because it otherwise would require the

production of confidential and sensitive information in the absence of an acceptable protective order.

*See* Fed. R. Civ. P. 45(d)(3)(B)(i) (court may quash or modify a subpoena that requires "disclosing a

trade secret or other confidential research, development, or commercial information"); *see also* Fed.

R. Civ. P. 26(c)(1)(G) (court may enter an order requiring that "confidential research, development,

or commercial information not be revealed").

# V.    CONCLUSION

For all of the foregoing reasons, Apple respectfully requests that the Court grant its motion to quash the subpoena in its entirety and enter a protective order prohibiting the deposition testimony and document discovery that Plaintiffs seek from Apple in connection with the True Wearables Case.


Dated: March 10, 2020                    Respectfully submitted,

                                         JOSHUA H. LERNER
                                         H. MARK LYON
                                         ILISSA SAMPLIN
                                         GIBSON, DUNN & CRUTCHER LLP


                                         By: _____
                                             Joshua H. Lerner

                                         *Attorneys for Apple Inc.*

APPLE INC.'S NOTICE OF MOTION AND MOTION TO
QUASH SUBPOENA AND FOR A PROTECTIVE ORDER

# Exhibit C

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
stephen.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:  (949)-760-0404
Facsimile:  (949)-760-9502

Attorneys for Plaintiff,
**Masimo Corporation**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No. 8:20-cv-00048<br><br>**COMPLAINT FOR**<br>**(1) PATENT INFRINGEMENT**<br>**(2) TRADE SECRET MISAPPROPRIATION AND**<br>**(3) OWNERSHIP OF PATENTS**<br><br>**AND DEMAND FOR JURY TRIAL** |

Plaintiffs MASIMO CORPORATION ("Masimo") and CERCACOR LABORATIES, INC. ("Cercacor") hereby complain of Defendant APPLE INC. ("Apple"), and allege as follows:

## I. THE PARTIES

1. Plaintiff Masimo is a Delaware corporation having its principal place of business at 52 Discovery, Irvine, California 92618.

2. Plaintiff Cercacor is a Delaware corporation having its principal place of business at 15750 Alton Pkwy, Irvine, California 92618.

3. Upon information and belief, Defendant Apple is a California corporation having a principal place of business at One Apple Park Way, Cupertino, California, 95014.

## II. JURISDICTION AND VENUE

4. This civil action includes claims for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq*., more particularly, 35 U.S.C. §§ 271 and 281. This Complaint further alleges trade secret misappropriation and seeks a declaration of ownership of certain patents and patent applications, and, pursuant to 35 U.S.C. § 256, correction of inventorship of certain patents.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367(a).

6. Apple has its principal place of business in California. Apple is subject to personal jurisdiction in California and has committed the acts complained of in this Judicial District.

7. Venue is proper in the Southern Division of the Central District of California pursuant to 28 U.S.C. § 1400(b) with respect to patent infringement because Defendant has a regular and established place of business in the County of Orange within the Central District of California and has committed acts of infringement in this Judicial District. Defendant also has committed acts of

misappropriation in this Judicial District. Thus, venue is proper pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

### III. STATEMENT OF THE CASE

8. This action seeks relief for the theft of Plaintiffs' highly confidential information and trade secrets, and infringement of Masimo's patents by Defendant, and ownership of patents assigned to or filed by Apple on subject matter that belongs to Masimo.

### IV. STATEMENT OF FACTS

9. Masimo is a medical technology company that revolutionized non-invasive monitoring of physiological parameters, such as pulse rate, arterial oxygen saturation and many others.

10. Most of these parameters are measured using light that is transmitted through the body tissue. The received light, that has been attenuated by the various components of the body tissue, including the blood, is known in the industry as a photoplethysmograph or "PPG." The transmission and receipt of these light signals is typically accomplished through a sensor that is applied to a body part such as a finger, arm, toe, forehead or ear.

11. Before Masimo, these non-invasive measurements from the PPG were plagued by unreliability, often when the measurement was needed most, due to the person moving or having low peripheral blood flow (known as "low perfusion"). The industry had essentially given up on solving these problems, concluding they were largely unsolvable. In the medical context, clinicians had to live with the results – patient monitors gave excessive false alarms, froze their measurements for prolonged periods of time despite potential changes in the physiological parameter (e.g., oxygen saturation or pulse rate), delayed notification of alarms due to long averaging times of sensor data, produced inaccurate measurements, or were unable to obtain data on the most critical

patients and babies who cannot be instructed to stay still. Masimo's pioneering technology, known as Masimo Signal Extraction Technology ("Masimo SET"), solved this problem and dramatically improved the reliability of monitoring and reporting physiological signals derived from the PPG.

12. Following its initial success with Masimo SET, Masimo invested heavily in developing additional breakthrough measurement technologies, such as non-invasively measuring total hemoglobin, carboxyhemoglobin, and methemoglobin. Masimo has continued to innovate, succeeding where others have consistently failed. Masimo was the first, and remains the only, company delivering these game-changing technologies to hospitals in the United States. Use of Masimo's technology in the clinical setting has been proven to reduce blindness in premature infants, detect congenital heart disease in infants, save lives on the general care floor and post-surgery, and improve transfusion management, while saving money.

13. From its inception, Masimo has continuously developed cutting-edge noninvasive patient monitoring technologies. Masimo sought and received numerous U.S. patents for many of its inventions. Masimo's revolutionary technology was a key to its gaining significant market praise and penetration. After introduction into the market, many competitors, much larger than Masimo, used Masimo's technology without a license, resulting in patent infringement lawsuits that ultimately confirmed the validity of Masimo's innovations. But, Masimo maintains some technology as trade secrets. Masimo also closely guards its future product and market plans. Only select employees have knowledge of and access to these guarded secrets.

14. Masimo's innovations also include important advances in sensor technologies that work together as part of Masimo's system and algorithms. Masimo's sensors are integral to the success of the revolutionary technologies Masimo has developed.

-3-

15.    In 1998, Masimo spun certain technologies off into a new company, Masimo Laboratories, Inc. or "Masimo Labs," to further research and develop the technologies. The name of the company was later changed to "Cercacor."  Cercacor and Masimo have a cross-license agreement to facilitate confidential collaboration between the companies.  Cercacor is not owned by Masimo.

16.    Like Masimo, Cercacor is an innovator of non-invasive monitoring technologies.  Cercacor is on the frontline of understanding how measuring, tracking, and analyzing physiological parameters can impact pre-diabetic and diabetic patients, sports training and performance and overall health and wellness principally in the consumer market.  Cercacor continued the development that started at Masimo on non-invasive total hemoglobin (SpHb), methemoglobin (SpMet), and carboxyhemoglobin (SpCO®) and other non-invasive physiological parameters.

17.    Leading hospitals around the world use Cercacor technology licensed to Masimo and sold under the name Masimo rainbow SET.  Like Masimo, Cercacor also maintains some technology as trade secrets, and Cercacor closely guards its future product and market plans.  Only select employees have knowledge of and access to these guarded secrets.

18.    Masimo and Cercacor carefully guard the secrecy of their confidential information and documents.  For example, Masimo and Cercacor have policies regarding labeling confidential information and documents as "CONFIDENTIAL AND PROPRIETARY."  They also restrict these documents and information from disclosure to third parties and employees on a need-to-know basis.  Masimo and Cercacor also have policies in place regarding the use of computers and related equipment that govern how their computer systems may be used.  Those policies also govern the protection of Masimo's and Cercacor's confidential information.  Both Masimo and Cercacor have

Case 8:20-cv-00048-JVS-JDE Document 43-3 Filed 04/30/20 Page 50 of 272 Page ID
Case 8:20-cv-00048-DOC-JDE Document 1-3 Filed 01/09/20 Page 6 of 64 Page ID #:10
#:3062

document management systems that restrict access to confidential documents to only those employees with proper security credentials and a need for access. Masimo and Cercacor also require employees to sign agreements precluding the employees from disclosing or making use of any confidential information except as authorized by Masimo and Cercacor and as necessary for the performance of the employees' duties. Masimo and Cercacor also require third parties, including customers, to execute confidential non-disclosure agreements. Masimo and Cercacor implemented such policies and procedures to maintain the confidentiality of sensitive information. These policies remain in place today.

19. In 2013, Apple contacted Masimo and asked to meet regarding a potential collaboration. Apple told Masimo that Apple would like to understand more about Masimo's technology to potentially integrate that technology into Apple's products. Apple and Masimo later entered into a confidentiality agreement, and Masimo's management met with Apple. The meetings included confidential discussions of Masimo's technology. After what seemed to Masimo to have been productive meetings, Apple quickly began trying to hire Masimo employees, including engineers and key management.

20. Masimo employed Michael O'Reilly as its Chief Medical Officer and Executive Vice President for Medical Affairs beginning in January 2008. As part of the Masimo executive team, O'Reilly was privy to extremely sensitive information, including information about mobile medical products and applications, wellness applications, clinical data gathering and analytics, and other technology of Masimo. Upon information and belief, Apple employed O'Reilly in July 2013, shortly after the meetings with Masimo, to assist in wellness and mobile applications that include non-invasive measurement of physiological parameters. Not long after, by December of 2013, O'Reilly was already meeting with the FDA on behalf of Apple to discuss medical

applications and discuss medical products that non-invasively measures blood constituents.

21.    Apple systematically recruited other key Masimo personnel, such as Marcelo Lamego, who was the former Chief Technical Officer of Cercacor and a former Research Scientist at Masimo.  Lamego had unfettered access to Plaintiffs' highly confidential technical information.  He was trained and mentored at Masimo by the most skilled engineers and scientists, and was taught about the keys to effective non-invasive monitoring, something he was not involved in prior to Masimo.  He was also exposed to guarded secrets regarding mobile medical products, including key technology and advance plans for future products.

22.    Given what appeared to be a targeted effort to obtain information and expertise from Masimo and Cercacor, Masimo and Cercacor warned Apple about respecting their rights.

23.    Shortly after joining Apple in January 2014, Lamego pursued on behalf of Apple numerous patent applications on technologies he was intimately involved in at Plaintiffs Cercacor and Masimo, and with which he had no prior experience or knowledge.

24.    For example, Lamego is named as an inventor on U.S. Provisional Patent Application No. 62/043,294, filed Aug. 28, 2014 and titled "Reflective Surface Treatments for Optical Sensors."  Related applications that also name Lamego as an inventor include U.S Patent Application Nos. 14/740,196 and 16/114,003, which issued as U.S. Patent Nos. 10,078,052 and 10,247,670.

25.    As another example, Lamego is named as an inventor on U.S. Provisional Patent Application No. 62/047,818, filed Sep. 9, 2014, entitled "Modulation and Demodulation Techniques for a Health Monitoring System." A related application that names Lamego as the sole inventor includes U.S Patent Application No. 14/621,268, which issued as U.S. Patent No. 10,219,754.

-6-

26.     As another example, Lamego is named as an inventor on U.S. Provisional Patent Application No. 62/056,299, filed on Sep. 26, 2014, and entitled "Electronic Device that Computes Health Data."  Related applications that also name Lamego as the sole inventor include U.S Patent Application Nos. 14/617,422, 15/667,832, and 16/700,710.  The '422 Application issued as U.S. Patent No. 9,723,997 and the '832 Application issued as U.S. Patent No. 10,524,671.

27.     As another example, Lamego is named as an inventor on U.S. Provisional Patent Application No. 62/057,089, filed on Sep. 29, 2014, and entitled "Methods and Systems for Modulation and Demodulation of Optical Signals."  Related applications that also name Lamego as an inventor include U.S Patent Application Nos. 14/618,664 and 15/960,507.  The '664 Application issued as U.S. Patent Nos. 9,952,095.

28.     Upon information and belief, Apple announced the first version of its watch in September 2014, and began shipping its watch in April 2015.  The Apple Watch Series 3 was released on September 22, 2017, and upon information and belief had significant performance issues with the non-invasive physiological measurements.  Apple announced The Apple Watch Series 4 on September 12, 2018, and upon information and belief, that watch includes technology that tracks Masimo's technology to solve some of the performance issues, including technology to which Lamego was exposed at Masimo and also technology for which he was an inventor while at Cercacor.  The Apple Watch Series 5 was announced on September 10, 2019 and released on September 20, 2019.  Upon information and belief, the Apple Watch Series 5 also includes Masimo's technology to solve some of the prior performance issues, including technology as to which Lamego was an inventor while at Cercacor.

/ / /

/ / /

-7-

# V. __THE PATENTS-IN-SUIT__

29.     Masimo is the owner by assignment of U.S. Patent No. 10,258,265 entitled "Multi-stream data collection system for noninvasive measurement of blood constituents" ("the '265 patent"), which the United States Patent and Trademark Office lawfully and duly issued on April 16, 2019.   A true and correct copy of the '265 patent is attached hereto as Exhibit 1.

30.     Masimo is the owner by assignment of U.S. Patent No. 10,258,266 entitled "Multi-stream data collection system for noninvasive measurement of blood constituents" ("the '266 patent"), which the United States Patent and Trademark Office lawfully and duly issued on April 16, 2019.   A true and correct copy of the '266 patent is attached hereto as Exhibit 2.

31.     Masimo is the owner by assignment of U.S. Patent No. 10,292,628 entitled "Multi-stream data collection system for noninvasive measurement of blood constituents" ("the '628 patent"), which the United States Patent and Trademark Office lawfully and duly issued on May 21, 2019.   A true and correct copy of the '628 patent is attached hereto as Exhibit 3.

32.     Masimo is the owner by assignment of U.S. Patent No. 10,299,708 entitled "Multi-stream data collection system for noninvasive measurement of blood constituents" ("the '708 patent"), which the United States Patent and Trademark Office lawfully and duly issued on May 21, 2019.   A true and correct copy of the '708 patent is attached hereto as Exhibit 4.

33.     Masimo is the owner by assignment of U.S. Patent No. 10,376,190 entitled "Multi-stream data collection system for noninvasive measurement of blood constituents" ("the '190 patent"), which the United States Patent and Trademark Office lawfully and duly issued on August 13, 2019.   A true and correct copy of the '190 patent is attached hereto as Exhibit 5.

34.     Masimo is the owner by assignment of U.S. Patent No. 10,376,191 entitled "Multi-stream data collection system for noninvasive measurement of

blood constituents" ("the '191 patent"), which the United States Patent and Trademark Office lawfully and duly issued on August 13, 2019. A true and correct copy of the '191 patent is attached hereto as Exhibit 6.

35.     Masimo is the owner by assignment of U.S. Patent No. 10,470,695 entitled "Advanced pulse oximetry sensor" ("the '695 patent"), which the United States Patent and Trademark Office lawfully and duly issued on November 12, 2019. A true and correct copy of the '695 patent is attached hereto as Exhibit 7.

36.     Masimo is the owner by assignment of U.S. Patent No. 6,771,994 entitled "Pulse oximeter probe-off detection system" ("the '994 patent"), which the United States Patent and Trademark Office lawfully and duly issued on August 3, 2004. A true and correct copy of the '994 patent is attached hereto as Exhibit 8.

37.     Masimo is the owner by assignment of U.S. Patent No. 8,457,703 entitled "Low power pulse oximeter" ("the '703 patent"), which the United States Patent and Trademark Office lawfully and duly issued on June 4, 2013. A true and correct copy of the '703 patent is attached hereto as Exhibit 9.

38.     Masimo is the owner by assignment of U.S. Patent No. 10,433,776 entitled "Low power pulse oximeter" ("the '776 patent"), which the United States Patent and Trademark Office lawfully and duly issued on October 8, 2019. A true and correct copy of the '776 patent is attached hereto as Exhibit 10.

## VI.  FIRST CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,258,265)

39.     Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 38.

40.     Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and 5 devices, infringe at least Claims 1-3, 6-11,

13, 17, and 17-25 of the '265 patent under at least 35 U.S.C. § 271(a), (b), and (c).

41.    Upon information and belief, Defendant has directly infringed one or more claims of the '265 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and 5 devices.

42.    For example, upon information and belief, in operation, the Apple Watch Series 4 and 5 devices include all of the limitations of Claim 1 of the '265 patent.  The Apple Watch Series 4 and 5 devices are adapted to be worn by a wearer and provide an indication of a physiological parameter (for example, heart rate) of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



43.    The Apple Watch Series 4 and 5 devices include a plurality of emitters of different wavelengths (for example, green and infrared LEDs) and at least four detectors (for example, photodiode sensors) spaced apart from each other as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:

/ / /

/ / /



44.    The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

45.    Upon information and belief, at least some of the technology in the Apple Watch Series 4 and 5 devices is described in Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication).  A copy of the publication is attached as Exhibit 11.  Analysis of the Apple Watch Series 4 and 5 devices show that the devices include a housing having a surface and a circular wall protruding from the surface, and a light permeable cover arranged above a portion of the housing and covering the detectors as described, for example, in Fig. 4C and the corresponding text of the '912 publication:

/ / /

/ / /

/ / /

Case 8:20-cv-00048-DOC-DFM   Document 1   Filed 01/09/20   Page 93 of 94   Page ID #:93



FIG. 4C

46.    Upon information and belief, Defendant has knowledge of Masimo's patents, including the '265 patent, at least based on O'Reilly and Lamego's former positions with Masimo and Cercacor.    Masimo filed provisional patent applications that led to the '265 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Lamego is a named inventor of the '265 patent.  Defendant had knowledge of the '265 patent no later than the filing of this Complaint.

47.    Upon information and belief, Defendant has actively induced others to infringe the '265 patent by marketing and selling the above Apple Watch Series 4 and 5 devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '265 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and 5 devices be used to infringe the

'265 patent. Defendant's acts constitute infringement of the '265 patent in violation of 35 U.S.C. § 271(b).

48. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '265 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '265 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and 5 devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

49. Upon information and belief, Defendant's acts constitute contributory infringement of the '265 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and 5 devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '265 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '265 patent.

50. Defendant's infringement of the '265 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '265 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

51. Because of Defendant's infringement of the '265 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

/ / /

52.     Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## VII.  SECOND CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,258,266)

53.     Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 52.

54.     Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and 5 devices, infringe at least Claims 1-19 of the '266 patent under at least 35 U.S.C. § 271(a), (b), and (c).

55.     Upon information and belief, Defendant has directly infringed one or more claims of the '266 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and 5 devices.

56.     For example, upon information and belief, in operation, the Apple Watch Series 4 and 5 devices 4 and 5 devices include all of the limitations of Claim 1 of the '266 patent.  The Apple Watch Series 4 and 5 devices provides an indication of a physiological parameter (for example, heart rate) of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:

/ / /

/ / /

/ / /

-14-



57.    The Apple Watch Series 4 and 5 devices  a plurality of emitters that emit light into tissue of a user and a plurality of detectors (for example, photodiode sensors) that detect light that has been attenuated by tissue of the user as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



58.    Analysis of the Apple Watch Series 4 and 5 devices show that the devices include a housing configured to house the detectors and a lens located between the tissue of the user and the detectors as described, for example, in Fig. 4C and the corresponding text of the '912 publication:



FIG. 4C

59.     Upon information and belief, the lens has a single outwardly protruding convex surface configured to cause tissue of the user to conform to the protruding convex surface during operation of the noninvasive optical physiological sensor.

60.     Upon information and belief, Defendant has knowledge of Masimo's patents, including the '266 patent, at least based on O'Reilly and Lamego's former positions with Masimo and Cercacor.   Masimo filed provisional patent applications that led to the '266 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Lamego is a named inventor of the '266 patent.  Defendant had knowledge of the '266 patent no later than the filing of this Complaint.

/ / /

61. Upon information and belief, Defendant has actively induced others to infringe the '266 patent by marketing and selling the above Apple Watch Series 4 and 5 devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '266 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and 5 devices be used to infringe the '266 patent. Defendant's acts constitute infringement of the '266 patent in violation of 35 U.S.C. § 271(b).

62. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '266 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '266 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and 5 devices. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

63. Upon information and belief, Defendant's acts constitute contributory infringement of the '266 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and 5 devices that constitute material parts of the invention of the asserted claims of the '266 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '266 patent.

64. Defendant's infringement of the '266 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of

the '266 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

65.     Because of Defendant's infringement of the '266 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

66.     Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## VIII.  THIRD CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,292,628)

67.     Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 66.

68.     Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and 5 devices, infringe at least Claim 1 of the '628 patent under at least 35 U.S.C. § 271(a), (b), and (c).

69.     Upon information and belief, Defendant has directly infringed one or more claims of the '628 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and 5 devices.

70.     For example, upon information and belief, in operation, the Apple Watch Series 4 and 5 devices include all of the limitations of Claim 1 of the '628 patent.

71.     Analysis of the Apple Watch Series 4 and 5 devices show that the devices include a housing configured to house a plurality of detectors as described, for example, in Fig. 4C and the corresponding text of the '912 publication:

/ / /

-18-

FIG. 4C

72.     The Apple Watch Series 4 and 5 devices include a plurality of emitters that emit light into tissue of a user and a plurality of detectors that detect light that has been attenuated by tissue of the user as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:

/ / /

/ / /

/ / /



73.     Analysis of the Apple Watch Series 4 and 5 devices shows that the devices include a light permeable cover configured to be located between tissue of the user and the plurality of detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises an outwardly protruding convex surface configured to cause tissue of the user to conform to at least a portion of the outwardly protruding convex surface when the noninvasive optical physiological sensor is worn by the user and during operation of the noninvasive optical physiological sensor, and wherein the plurality of detectors are configured to receive light passed through the outwardly protruding convex surface after attenuation by tissue of the user, as described, for example, in Fig. 4C and the corresponding text of the '912 publication:

/ / /

/ / /

/ / /



74.

FIG. 4C

75.    Upon information and belief, Defendant has knowledge of Masimo's patents, including the '628 patent, at least based on O'Reilly and Lamego's former positions with Masimo and Cercacor.   Masimo filed provisional patent applications that led to the '628 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Lamego is a named inventor of the '628 patent.  Defendant had knowledge of the '628 patent no later than the filing of this Complaint.

76.    Upon information and belief, Defendant has actively induced others to infringe the '628 patent by marketing and selling the above Apple Watch Series 4 and 5 devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '628 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and 5 devices be used to infringe the

'628 patent.   Defendant's acts constitute infringement of the '628 patent in violation of 35 U.S.C. § 271(b).

77.   Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '628 patent.   By way of example only, upon information and belief, Defendant actively induces direct infringement of the '628 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and 5 devices, including use with Apple iPhones.   Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

78.   Upon information and belief, Defendant's acts constitute contributory infringement of the '628 patent in violation of 35 U.S.C. § 271(c).   Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and 5 devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '628 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '628 patent.

79.   Defendant's infringement of the '628 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '628 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

80.   Because of Defendant's infringement of the '628 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

/ / /

81.     Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## IX.  FOURTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,299,708)

82.     Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 81.

83.     Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and 5 devices, infringe at least Claim 1 of the '708 patent under at least 35 U.S.C. § 271(a), (b), and (c).

84.     Upon information and belief, Defendant has directly infringed one or more claims of the '708 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and 5 devices.

85.     For example, upon information and belief, in operation, the Apple Watch Series 4 and 5 devices include all of the limitations of Claim 1 of the '708 patent.  The Apple Watch Series 4 and 5 devices are adapted to be worn by a wearer and provide an indication of a physiological parameter (for example, heart rate) of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:

/ / /

/ / /

/ / /

Case 8:20-cv-00048-DOC-DFM   Document 43-3   Filed 01/09/20   Page 25 of 64   Page ID #:25



86.     Analysis of the Apple Watch Series 4 and 5 devices show that the devices include a platform including a planar surface, a housing including a raised edge portion extending from and enclosing at least a portion of the planar surface, and the housing including a protruding light permeable cover as described, for example, in Fig. 4C and the corresponding text of the '912 publication:

/ / /

/ / /

/ / /

87.

*FIG. 4C*

88.    Upon information and belief, the Apple Watch Series 4 and 5 devices include at least four detectors (for example, photodiode sensors) arranged on the planar surface of the platform and within the housing, wherein the at least four detectors are arranged in a grid pattern such that a first detector and a second detector are arranged across from each other on opposite sides of a central point along a first axis, and a third detector and a fourth detector are arranged across from each other on opposite sides of the central point along a second axis which is perpendicular to the first axis as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:

/ / /

/ / /

/ / /

89.　Upon information and belief, Defendant has knowledge of Masimo's patents, including the '708 patent, at least based on O'Reilly and Lamego's former positions with Masimo and Cercacor.　Masimo filed provisional patent applications that led to the '708 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.　Lamego is a named inventor of the '708 patent.　Defendant had knowledge of the '708 patent no later than the filing of this Complaint.

90.　Upon information and belief, Defendant has actively induced others to infringe the '708 patent by marketing and selling the above Apple Watch Series 4 and 5 devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '708 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and 5 devices be used to infringe the '708 patent.　Defendant's acts constitute infringement of the '708 patent in violation of 35 U.S.C. § 271(b).

91.　Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '708 patent.　By way of example only, upon information and belief, Defendant actively induces direct

infringement of the '708 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and 5 devices, including use with Apple iPhones.  Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

92.    Upon information and belief, Defendant's acts constitute contributory infringement of the '708 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and 5 devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '708 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '708 patent.

93.    Defendant's infringement of the '708 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '708 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

94.    Because of Defendant's infringement of the '708 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

95.    Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

/ / /

/ / /

# X.  FIFTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,376,190)

96.     Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 95.

97.     Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and 5 devices, infringe at least Claim 1 of the '190 patent under at least 35 U.S.C. § 271(a), (b), and (c).

98.     Upon information and belief, Defendant has directly infringed one or more claims of the '190 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and 5 devices.

99.     For example, upon information and belief, in operation, the Apple Watch Series 4 and 5 devices include all of the limitations of Claim 1 of the '190 patent.  The Apple Watch Series 4 and 5 devices are noninvasive optical physiological measurement devices adapted to be worn by a wearer, the noninvasive optical physiological measurement device providing an indication of a physiological parameter (for example, heart rate) of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



100.   Upon information and belief, the Apple Watch Series 4 and 5 devices include light emitters and at least four detectors spaced apart from each other and configured to output one or more signals responsive to light from the one or more light emitters attenuated by body tissue, the one or more signals indicative of a physiological parameter of the wearer as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



101.   Analysis of the Apple Watch Series 4 and 5 devices show that the devices include a housing having a surface and a circular raised edge extending from the surface, and a light permeable cover arranged above at least a portion of the housing, the light permeable cover comprising a protrusion arranged to cover the at least four detectors as described, for example, in Fig. 4C and the corresponding text of the '912 publication:

/ / /

/ / /

/ / /



FIG. 4C

102.   Upon information and belief, Defendant has knowledge of Masimo's patents, including the '190 patent, at least based on O'Reilly and Lamego's former positions with Masimo and Cercacor.   Masimo filed provisional patent applications that led to the '190 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Lamego is a named inventor of the '190 patent.  Defendant had knowledge of the '190 patent no later than the filing of this Complaint.

103.   Upon information and belief, Defendant has actively induced others to infringe the '190 patent by marketing and selling the above Apple Watch Series 4 and 5 devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '190 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and 5 devices be used to infringe the

'190 patent.   Defendant's acts constitute infringement of the '190 patent in violation of 35 U.S.C. § 271(b).

104.   Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '190 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '190 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and 5 devices, including use with Apple iPhones.  Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

105.  Upon information and belief, Defendant's acts constitute contributory infringement of the '190 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and 5 devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '190 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '190 patent.

106.   Defendant's infringement of the '190 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '190 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

107.   Because of Defendant's infringement of the '190 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

/ / /

Case 8:20-cv-00048-JVS-JDE   Document 43-3   Filed 04/20/20   Page 77 of 272   Page ID
#:3089
Case 8:20-cv-00048-DOC-DFM   Document 1   Filed 01/09/20   Page 33 of 427   Page ID #:33

108.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XI.  SIXTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,376,191)

109.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 108.

110.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and 5 devices, infringe at least Claim 1 of the '191 patent under at least 35 U.S.C. § 271(a), (b), and (c).

111.   Upon information and belief, Defendant has directly infringed one or more claims of the '191 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and 5 devices.

112.   For example, upon information and belief, in operation, the Apple Watch Series 4 and 5 devices include all of the limitations of Claim 1 of the '191 patent.  The Apple Watch Series 4 and 5 devices are a noninvasive optical physiological sensor as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:

/ / /

/ / /

/ / /

Case 8:20-cv-00048-JVS-JDE  Document 43-3  Filed 04/30/20  Page 78 of 272  Page ID
#:3090
Case 8:20-cv-00048-DOC-DFM  Document 1-3  Filed 01/09/20  Page 34 of 64  Page ID #:94



113.   The Apple Watch Series 4 and 5 devices include a plurality of emitters configured to emit light into tissue of a user and a plurality of detectors configured to detect light that has been attenuated by tissue of the user, wherein the plurality of detectors comprise at least four detectors as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



114.   Analysis of the Apple Watch Series 4 and 5 devices show that the devices include a housing configured to house at least the plurality of detectors in a circular portion of the housing, and a lens configured to be located between

Case 8:20-cv-00048-JVS-JDE   Document 43-3   Filed 04/20/20   Page 79 of 272   Page ID
#:3091
Case 8:20-cv-00048-DOC-DFM   Document 43-3   Filed 01/09/20   Page 95 of 94   Page ID #:95

tissue of the user and the plurality of detectors when the noninvasive optical physiological sensor is worn by the user, wherein the lens comprises a single outwardly protruding convex surface configured to cause tissue of the user to conform to at least a portion of the single outwardly protruding convex surface when the noninvasive optical physiological sensor is worn by the user and during operation of the noninvasive optical physiological sensor as described, for example, in Fig. 4C and the corresponding text of the '912 publication:



115. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '191 patent, at least based on O'Reilly and Lamego's former positions with Masimo and Cercacor.   Masimo filed provisional patent applications that led to the '191 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Lamego is a named

-34-

inventor of the '191 patent.  Defendant had knowledge of the '191 patent no later than the filing of this Complaint.

116.  Upon information and belief, Defendant has actively induced others to infringe the '191 patent by marketing and selling the above Apple Watch Series 4 and 5 devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '191 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and 5 devices be used to infringe the '191 patent.  Defendant's acts constitute infringement of the '191 patent in violation of 35 U.S.C. § 271(b).

117.  Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '191 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '191 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and 5 devices.  Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

118. Upon information and belief, Defendant's acts constitute contributory infringement of the '191 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and 5 devices that constitute material parts of the invention of the asserted claims of the '191 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '191 patent.

119.   Defendant's infringement of the '191 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '191 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

120.   Because of Defendant's infringement of the '191 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

121.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XII.  <u>SEVENTH CAUSE OF ACTION</u>
## <u>(INFRINGEMENT OF U.S. PATENT NO. 10,470,695)</u>

122.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 121.

123.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and 5 devices, infringe at least Claim 1 of the '695 patent under at least 35 U.S.C. § 271(a), (b), and (c).

124.   Upon information and belief, Defendant has directly infringed one or more claims of the '695 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and 5 devices.

125.   For example, upon information and belief, in operation, the Apple Watch Series 4 and 5 devices include all of the limitations of Claim 1 of the '695 patent.   The Apple Watch Series 4 and 5 devices are a wrist-worn physiological monitoring device configured for placement on a user at a tissue measurement site as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:

Case 8:20-cv-00048-JVS-JDE   Document 43-3   Filed 04/30/20   Page 82 of 272   Page ID
#:3094
Case 8:20-cv-00048-DOC-DFM   Document 1   Filed 01/09/20   Page 98 of 94   Page ID #:98



126.    The Apple Watch Series 4 and 5 devices include a light emission source comprising a plurality of emitters configured to irradiate the tissue measurement site by emitting light towards the tissue measurement site, the tissue measurement site being located on a wrist of the user, the plurality of emitters configured to emit one or more wavelengths and a plurality of detectors configured to detect the light emitted by the plurality of emitters after attenuation by a circular portion of the tissue measurement site, the plurality of detectors further configured to output at least one signal responsive to the detected light as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



Case 8:20-cv-00048-JVS-JDE   Document 43-3   Filed 04/30/20   Page 83 of 272   Page ID
Case 8:20-cv-00048-DOC-DFM   Document 1   Filed 01/09/20   Page 39 of 42   Page ID #:99
#:3095

127.   Analysis of the Apple Watch Series 4 and 5 devices show that the devices include a processor configured to receive the at least one signal responsive to the output and determine a physiological parameter of the user and a light block forming an enclosing wall between the light emission source and the plurality of detectors, the light block defining the circular portion of the tissue measurement site, the light emission source arranged proximate a first side of the enclosing wall and the plurality of detectors arranged proximate a second side of the enclosing wall, the first side being different than the second side, wherein the enclosing wall prevents at least a portion of light emitted from the light emission source from being detected by the plurality of detectors without attenuation by the tissue, and wherein the plurality of detectors are arranged in an array having a spatial configuration corresponding to the portion of the tissue measurement site as described, for example, in Fig. 4C and the corresponding text of the '912 publication:



FIG. 4C

-38-

128. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '695 patent, at least based on O'Reilly and Lamego's former positions with Masimo and Cercacor.  Masimo filed provisional patent applications that led to the '695 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Lamego is a named inventor of the '695 patent.  Defendant had knowledge of the '695 patent no later than the filing of this Complaint.

129. Upon information and belief, Defendant has actively induced others to infringe the '695 patent by marketing and selling the above Apple Watch Series 4 and 5 devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '695 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and 5 devices be used to infringe the '695 patent.  Defendant's acts constitute infringement of the '695 patent in violation of 35 U.S.C. § 271(b).

130. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '695 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '695 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and 5 devices.  Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

131. Upon information and belief, Defendant's acts constitute contributory infringement of the '695 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4

and 5 devices that constitute material parts of the invention of the asserted claims of the '695 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '695 patent.

132. Defendant's infringement of the '695 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '695 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

133. Because of Defendant's infringement of the '695 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

134. Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XIII. EIGHTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 6,771,994)

135. Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 134.

136. Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and 5 devices, infringe at least Claim 15 of the '994 patent under at least 35 U.S.C. § 271(a), (b), and (c).

137. Upon information and belief, Defendant has directly infringed one or more claims of the '994 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and 5 devices.

/ / /

-40-

138.   For example, upon information and belief, in operation, the Apple Watch Series 4 and 5 devices include all of the limitations of Claim 15 of the '994 patent.   Upon information and belief, the Apple Watch Series 4 and 5 devices detects light transmitted through body tissue carrying pulsing blood to determine heart rate as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



139.   The Apple Watch Series 4 and 5 devices include at least one light emission device and a light sensitive detector as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



140.   The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

141.   Upon information and belief, at least some of the technology in the Apple Watch Series 4 and 5 devices is described in U.S. Patent Application Publication 2019/0090806 (the '806 publication).  A copy of the publication is attached as Exhibit 12.  Analysis of the Apple Watch Series 4 and 5 devices show that the devices include a plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through body tissue carrying pulsing blood, wherein the louvers accept the light when the sensor is properly applied to tissue of a patient.  Upon information and belief, this technology is described, for example, in Fig. 7 and the corresponding text of the '806 publication:



142.   Upon information and belief, Defendant has knowledge of Masimo's patents, including the '994 patent, at least based on O'Reilly and Lamego's former positions with Masimo and Cercacor.  Masimo filed a patent application that led to the '994 patent on June 16, 2000.  The '994 patent issued on August 3, 2004, and Masimo has maintained the patent while O'Reilly and Lamego were with Masimo and/or Cercacor.  Defendant had knowledge of the '994 patent no later than the filing of this Complaint.

143.   Upon information and belief, Defendant has actively induced others to infringe the '994 patent by marketing and selling the above Apple Watch Series 4 and 5 devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '994 patent.

To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and 5 devices be used to infringe the '994 patent. Defendant's acts constitute infringement of the '994 patent in violation of 35 U.S.C. § 271(b).

144. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '994 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '994 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and 5 devices. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

145. Upon information and belief, Defendant's acts constitute contributory infringement of the '994 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and 5 devices that constitute material parts of the invention of the asserted claims of the '994 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '994 patent.

146. Defendant's infringement of the '994 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '994 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

/ / /

/ / /

147.   Because of Defendant's infringement of the '994 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

148.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XIV.  NINTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 8,457,703)

149.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 148.

150.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and 5 devices, infringe at least Claim 1 of the '703 patent under at least 35 U.S.C. § 271(a), (b), and (c).

151.   Upon information and belief, Defendant has directly infringed one or more claims of the '703 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and 5 devices.

152.   For example, upon information and belief, in operation, the Apple Watch Series 4 and 5 devices include all of the limitations of Claim 1 of the '703 patent.  The Apple Watch Series 4 and 5 devices provide an indication of a physiological parameter (for example, heart rate) of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:

/ / /

/ / /

/ / /



153.   The Apple Watch Series 4 and 5 devices drive one or more light sources configured to emit light into tissue and receives one or more signals from one or more detectors configured to detect light after attenuation by tissue as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



154.   The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

/ / /

155.   Upon information and belief, the Apple Watch Series 4 and 5 devices continuously operate at a lower power consumption level to determine measurement values for heart rate, as described at https://support.apple.com/en-us/HT204666:

> The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.

156.   Upon information and belief, the Apple Watch Series 4 and 5 devices as described above compare processing characteristics to a predetermined threshold, and when the processing characteristics pass the threshold, the Apple Watch Series 4 and 5 devices transition to continuously operating at a higher power consumption level, wherein the continuously operating at the lower power consumption level comprises reducing activation of an attached sensor, the sensor positioning the light sources and the detectors proximate to the tissue.

157.   Masimo filed a provisional patent application that led to the '703 patent on July 2, 2001, The '703 patent issued on June 4, 2013, while

while O'Reilly and Lamego were with Masimo and/or Cercacor. Defendant had knowledge of the '703 patent no later than the filing of this Complaint.

158. Upon information and belief, Defendant has actively induced others to infringe the '703 patent by marketing and selling the above Apple Watch Series 4 and 5 devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '703 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and 5 devices be used to infringe the '703 patent. Defendant's acts constitute infringement of the '703 patent in violation of 35 U.S.C. § 271(b).

159. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '703 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '703 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and 5 devices. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

160. Upon information and belief, Defendant's acts constitute contributory infringement of the '703 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and 5 devices that constitute material parts of the invention of the asserted claims of the '703 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '703 patent.

161.   Defendant's infringement of the '703 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '703 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

162.   Because of Defendant's infringement of the '703 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

163.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XV.  TENTH CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,433,776)

164.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 163.

165.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and 5 devices, infringe at least Claim 1 of the '776 patent under at least 35 U.S.C. § 271(a), (b), and (c).

166.   Upon information and belief, Defendant has directly infringed one or more claims of the '776 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and 5 devices.

167.   For example, upon information and belief, in operation, the Apple Watch Series 4 and 5 devices include all of the limitations of Claim 1 of the '776 patent.  The Apple Watch Series 4 and 5 devices are configured to monitor at least a pulse rate of a patient by processing signals responsive to light

/ / /

-48-

Case 8:20-cv-00048-JVS-JDE   Document 43-3   Filed 04/20/20   Page 94 of 272   Page ID
#:3106
Case 8:20-cv-00048-JVS-DFM   Document 43-3   Filed 01/09/20   Page 96 of 94   Page ID #:90

168.   attenuated by body tissue of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



169.   The Apple Watch Series 4 and 5 devices drive one or more light sources configured to emit light into tissue and receives one or more signals from one or more detectors configured to detect light after attenuation by tissue as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



170.  Upon information and belief, the Apple Watch Series 4 and 5 devices operate according to a first control protocol, wherein said operating includes activating a first control protocol light source in accordance with the first control protocol, the first control protocol light source including one or more of a plurality of light sources, and when operating according to the first control protocol, calculating, by the patient monitor, measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source, detected by a detector of an optical sensor after attenuation by body tissue of the patient using the patient monitor as explained, for example, on the Apple website at https://support.apple.com/en-us/HT204666.   That webpage explains the optical heart sensor uses photoplethysmography. "Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate."  That webpage further explains that the "optical heart sensor can also use infrared light. This mode is what Apple Watch uses when it measures your heart rate in the background, and for heart rate notifications. Apple Watch uses green LED lights to measure your heart rate during workouts and Breathe sessions, and to calculate walking average and Heart Rate Variability (HRV)."

171.  Upon information and belief, the Apple Watch Series 4 and 5 devices operate generate a trigger signal, wherein generating said trigger signal is responsive to at least one of: a comparison of processing characteristics to a

predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector, and in response to receiving the trigger signal, operating the patient monitor according to a second control protocol different from the first control protocol, wherein said operating includes activating a second control protocol light source in accordance with the second control protocol, the second control protocol light source including one or more of the plurality of light sources, and when operating the patient monitor according to the second control protocol, calculating the measurement values of the pulse rate, the measurement values responsive to light from the second control protocol light source, detected by the detector after attenuation by the body tissue of the patient using the patient monitor, wherein said operating of the patient monitor according to the first control protocol operates the first control protocol light source according to a first duty cycle and said operating of the patient monitor according to the second control protocol operates the second control protocol light source according to a second duty cycle, wherein power consumption of the first control protocol light source according to the first duty cycle is different than power consumption of the second control protocol light source according to the second duty cycle.

172. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '776 patent, at least based on O'Reilly and Lamego's former positions with Masimo and Cercacor. Masimo filed a provisional patent application that led to the '776 patent on July 2, 2001, The '776 patent issued on June 4, 2013, while while O'Reilly and Lamego were with Masimo and/or Cercacor. Defendant had knowledge of the '776 patent no later than the filing of this Complaint.

173. Upon information and belief, Defendant has actively induced others to infringe the '776 patent by marketing and selling the above Apple Watch Series 4 and 5 devices, knowing and intending that such systems would

be used by customers and end users in a manner that infringes the '776 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and 5 devices be used to infringe the '776 patent. Defendant's acts constitute infringement of the '776 patent in violation of 35 U.S.C. § 271(b).

174. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '776 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '776 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and 5 devices. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

175. Upon information and belief, Defendant's acts constitute contributory infringement of the '776 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and 5 devices that constitute material parts of the invention of the asserted claims of the '776 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '776 patent.

176. Defendant's infringement of the '776 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '776 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

/ / /

177.   Because of Defendant's infringement of the '776 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

178.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XVI.  <u>ELEVENTH CAUSE OF ACTION</u>
## <u>(TRADE SECRET MISAPPROPRIATION UNDER</u>
## <u>CALIFORNIA'S UNIFORM TRADE SECRET ACT)</u>

179.   Plaintiffs Masimo and Cercacor hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 177.

180.   This is a cause of action for Misappropriation of Trade Secrets under California's Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq.*, based upon Defendant's wrongful and improper use and disclosure of confidential and proprietary trade secret information of Plaintiffs.

181.   Plaintiffs own trade secrets including, but not limited to, Plaintiffs' business plans, know-how, technical information, technical data, designs, manufacturing techniques and other business information ("Confidential Information").

182.   Plaintiffs' Confidential Information is currently or was, at least at the time of Defendant's misappropriation, not generally known. All individuals with access to Plaintiffs' Confidential Information were instructed to keep it confidential, and they were subject to obligations to keep Plaintiffs' Confidential Information secret.  Additionally, Plaintiffs' Confidential Information is, or at least was at the time of Defendant's misappropriation, not generally known to the public or to other persons who can obtain economic value from its disclosure or use.

183.   Plaintiffs' Confidential Information has actual and potential independent economic value because it is, or was, not generally known.   The actual and potential independent economic value of Plaintiffs' Confidential Information is derived from not being generally known because it gives or gave Plaintiffs an actual and potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.

184.   Plaintiffs made reasonable efforts under the circumstances to keep Plaintiffs' Confidential Information from becoming generally known.   For example, Plaintiffs' efforts included marking documents confidential, instructing those individuals with access to the information to treat it as confidential, restricting access to the information, and requiring individuals and companies to enter into confidentiality agreements with Masimo in order to receive Masimo Confidential Information.

185.   Plaintiffs are informed and believe, and thereon allege, that Defendant misappropriated Plaintiffs' Confidential Information by acquisition, disclosure and/or use.   Upon information and belief, Defendant acquired, used and disclosed Plaintiffs' Confidential Information at least by filing patent applications containing Masimo's Confidential Information, without Plaintiffs' express or implied consent.

186.   Upon information and belief, Lamego disclosed Plaintiffs' Confidential Information at least by September 2014, without Plaintiffs' consent, to Defendant.   Additionally, at the time of disclosure, Lamego knew or had reason to know that his knowledge of Plaintiffs' Confidential Information was acquired by an employer-employee relationship, fiduciary relationship, and Lamego's employment agreements, which created a duty for Lamego to keep Plaintiffs' Confidential Information secret.

187.   Upon information and belief, Defendant disclosed Plaintiffs' Confidential Information, without Plaintiffs' consent, in published patent filings.

Defendant knew or had reason to know that the knowledge of Plaintiffs' Confidential Information came from Plaintiffs, and that Lamego had previously acquired Plaintiffs' Confidential Information by virtue of an employer-employee and fiduciary relationship and the Lamego employment agreements, all of which created a duty for Lamego to keep Plaintiffs' Confidential Information secret.

188.  Plaintiffs were harmed by Defendant's acquisition, use, and disclosure of Plaintiffs' Confidential Information, and Defendant's actions were substantial factors in causing Plaintiffs' harm.  As a direct and proximate result of Defendant's willful, improper, and unlawful acquisition, use, and disclosure of Plaintiffs' trade secrets, Plaintiffs have suffered, and will continue to suffer, great harm and damage.  Plaintiffs will continue to be irreparably damaged unless Defendant is enjoined from further use and disclosure of Plaintiffs' Confidential Information.

189.  Defendant was unjustly enriched by Defendant's acquisition, use, and disclosure of Plaintiffs' Confidential Information, and Defendant's actions were substantial factors in causing Defendant to be unjustly enriched.  Defendant was unjustly enriched because its misappropriation of Plaintiffs' Confidential Information caused Defendant to receive a benefit that it otherwise would not have achieved.

190.  If neither damages nor unjust enrichment caused by Defendant's misappropriation of Plaintiffs' Confidential Information is provable at trial, Plaintiffs are entitled to a reasonable royalty for the period of time that Defendant's use of Plaintiffs' Confidential Information could have been prohibited.

191.  The aforementioned acts of Defendant in wrongfully misappropriating Plaintiffs' trade secrets were, and continue to be, willful and malicious, warranting an award of reasonable attorneys' fees, as provided by

Cal. Civ. Code § 3426.4, and exemplary damages, as provided by Cal. Civ. Code §§ 3294 and 3426.3(c).

## XVII.  TWELTH CAUSE OF ACTION
## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,078,052)

192.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 190.

193.  Lamego is a named inventor of U.S. Patent 10,078,052 presently recorded as owned by Apple.  A true and correct copy of the '052 patent is attached hereto as Exhibit 13.

194.  The '052 Patent claims subject matter that Lamego obtained from discussions with Masimo or Cercacor employees Ammar Al-Ali, Mohamed Diab, and Walter Weber.  Al-Ali, Diab, and Weber are joint inventors of the claimed subject matter, regardless of patentability.  Accordingly, Al-Ali, Diab, and Weber should have been named inventors on the '052 Patent.

195.  Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '052 Patent by adding inventors Al-Ali, Diab, and Weber as named inventors.

## XVIII.  THIRTEENTH CAUSE OF ACTION
## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,247,670)

196.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 194.

197.  Lamego is a named inventor of U.S. Patent 10,247,670 presently recorded as owned by Apple.  A true and correct copy of the '670 patent is attached hereto as Exhibit 14.

198.  The '670 Patent claims subject matter that Lamego obtained from discussions with Masimo or Cercacor employees Al-Ali, Diab, and Weber.  Al-Ali, Diab, and Weber are joint inventors of the claimed subject matter,

regardless of patentability. Accordingly, Al-Ali, Diab, and Weber should have been named inventors on the '670 Patent.

199. Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '670 Patent by adding inventors Al-Ali, Diab, and Weber as named inventors.

## XIX. FOURTEENTH CAUSE OF ACTION
## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 9,952,095)

200. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 198.

201. Lamego is a named inventor of U.S. Patent 9,952,095 presently recorded as owned by Apple. A true and correct copy of the '095 patent is attached hereto as Exhibit 15.

202. The '095 Patent claims subject matter that Lamego obtained from discussions with Masimo or Cercacor employees Al-Ali, Diab, and Weber. Al-Ali, Diab, and Weber are joint inventors of the claimed subject matter, regardless of patentability. Accordingly, Al-Ali, Diab, and Weber should have been named inventors on the '095 Patent.

203. Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '095 Patent by adding inventors Al-Ali, Diab, and Weber as named inventors.

## XX. FIFTEENTH CAUSE OF ACTION
## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,219,754)

204. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 202.

/ / /

/ / /

-57-

205.   Lamego is a named inventor of U.S. Patent 10,219,754 presently recorded as owned by Apple.   A true and correct copy of the '754 patent is attached hereto as Exhibit 16.

206.   The '754 Patent claims subject matter that Lamego obtained from discussions with Masimo or Cercacor employees Al-Ali, Diab, and Weber.   Al-Ali, Diab, and Weber are joint inventors of the claimed subject matter, regardless of patentability.   Accordingly, Al-Ali, Diab, and Weber should have been named inventors on the '754 Patent.

207.   Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '754 Patent by adding inventors Al-Ali, Diab, and Weber as named inventors.

## XXI.  SIXTEENTH CAUSE OF ACTION

## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,524,671)

208.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 206.

209.   Lamego is a named inventor of U.S. Patent 10,524,671 presently recorded as owned by Apple.   A true and correct copy of the '671 patent is attached hereto as Exhibit 17.

210.   The '671 Patent claims subject matter that Lamego obtained from discussions with Masimo or Cercacor employees Al-Ali, Diab, and Weber.   Al-Ali, Diab, and Weber are joint inventors of the claimed subject matter, regardless of patentability.   Accordingly, Al-Ali, Diab, and Weber should have been named inventors on the '671 Patent.

211.   Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '671 Patent by adding inventors Al-Ali, Diab, and Weber as named inventors.

## XXII. SEVENTEENTH CAUSE OF ACTION

## (DECLARATORY JUDGMENT OF OWNERSHIP OF PATENTS AND PATENT APPLICATIONS)

212. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 210.

213. U.S. Patents 10,078,052, 10,219,754, 10,247,670, 9,952,095, and 10,524,671 are recorded as owned by Apple (the "Lamego Patents"). U.S. Patent Applications 15/667,832 and 15/960,507 are also recorded as owned by Apple (the "Lamego Applications").

214. Lamego developed the claimed subject matter in both the Lamego Patents and the Lamego Applications with employees of Masimo and Cercacor while he was employed at those companies. Lamego, as well as all of the other employees/inventors, had an obligation to assign said subject matter, patents, and patent applications to their employer, Masimo and Cercacor.

215. As evidenced by the allegations set forth above, Plaintiffs Masimo and Cercacor are exclusive owners, or at least joint owners, of all patents and patent applications that are based on Apple's claiming subject matter developed at Masimo and Cercacor while Lamego and the joint inventors (e.g., Al-Ali, Diab, and/or Weber) were employed at Masimo or Cercacor. Those patents and patent applications include, at a minimum, the Lamego Patents and Lamego Applications and all original applications, continuations, divisionals, and applications or patents that claim priority to any of these patents and patent applications, including foreign counterparts.

216. Based on the forgoing, Plaintiffs seek declaratory relief that they are the exclusive owners, or at least joint owners, of those patents and patent applications. Thus, Plaintiffs seeks an order from the Court ordering Apple to change the title to the patents and patent applications in favor of Masimo and Cercacor.

-59-

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment in their favor against Defendant for the following relief:

A.     Pursuant to 35 U.S.C. § 271, a determination that Defendant and its officers, agents, servants, employees, attorneys and all others in active concert and/or participation with them have infringed each of the '265, '266, '628, '708, '190, '191, '994, '695, '703, and '776 patents through the manufacture, use, importation, offer for sale, and/or sale of infringing products and/or any of the other acts prohibited by 35 U.S.C. § 271;

B.     Pursuant to 35 U.S.C. § 283, an injunction enjoining Defendant and its officers, agents, servants, employees, attorneys and all others in active concert and/or participation with them from infringing the '265, '266, '628, '708, '190, '191, '994, '695, '703, and '776 patents through the manufacture, use, importation, offer for sale, and/or sale of infringing products and/or any of the other acts prohibited by 35 U.S.C. § 271, including preliminary and permanent injunctive relief;

C.     Pursuant to 35 U.S.C. § 284, an award compensating Masimo for Defendant's infringement of the '265, '266, '628, '708, '190, '191, '994, '695, '703, and '776 patents through payment of not less than a reasonable royalty on Defendant's sales of infringing products;

D.     Pursuant to 35 U.S.C. § 284, an award increasing damages up to three times the amount found or assessed by the jury for Defendant's infringement of each of the '265, '266, '628, '708, '190, '191, '994, '695, '703, and '776 patents in view of the willful and deliberate nature of the infringement;

E.     Pursuant to 35 U.S.C. § 285, a finding that this is an exceptional case, and an award of reasonable attorneys' fees and non-taxable costs;

F.     An assessment of prejudgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs,

pursuant to 35 U.S.C. § 284;

G.     That Defendant be adjudged to have misappropriated Plaintiffs' trade secrets in violation of the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq*., and that Defendant's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

H.     That Defendant be adjudged to have been unjustly enriched;

I.     That Plaintiffs be awarded damages for actual losses, unjust enrichment, and/or a reasonable royalty pursuant to 18 U.S.C. § 1836(b)(3)(B) and Cal. Civ. Code § 3426.3.

J.     That Defendant, its agents, servants, employees, and attorneys, and all those persons in active concert or participation with each of them, be forthwith temporarily, preliminarily, and thereafter permanently required to return all of Plaintiffs' trade secrets and confidential information and enjoined from further using and disclosing to any third parties any of Plaintiffs' trade secrets and confidential information;

K.     That Defendant, its agents, servants, employees, and attorneys, and all those persons in active concert or participation with Defendant, be forthwith temporarily, preliminarily, and thereafter permanently required to return all of Plaintiffs' trade secrets and enjoined from further using and disclosing to any third parties any of Plaintiffs' trade secrets;

L.     That Defendant be enjoined from selling or offering to sell any product, including Defendant's Apple Watch Series 4 and 5 devices, that includes or uses any of Plaintiffs' trade secrets;

M.     That Defendant be directed to file with this Court and to serve on Plaintiffs within thirty (30) days after the service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

/ / /

N.     That Defendant be required to account to Plaintiffs for any and all gains, profits, and advantages derived by it, and all damages sustained by Plaintiffs, by reason of Defendant's acts complained herein;

O.     That Plaintiffs be awarded exemplary damages and reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(C) and (D), and Cal. Civ. Code § 3426.3(c) and 3426.4;

P.     That the U.S. Patent and Trademark Office be directed to correct the inventorship of the Lamego Patents to add the correct inventors;

Q.     An order imposing a constructive trust for the benefit of Plaintiffs over: (1) any trade secrets Defendants obtained from Plaintiffs; (2) any profits, revenues, or other benefits obtained by Defendants as a result of any disclosure or use of trade secrets obtained from Plaintiffs; and (3) the Lamego Patents and the Lamego Patent Applications;

R.     That Plaintiffs be declared exclusive owners, or at least joint owners, of the patents and patent applications that are based on Plaintiffs' developments, including the Lamego Patents and Lamego Patent Applications;

S.     An award of taxable costs; and

T.     That this Court award such other and further relief as this Court may deem just.


                                    Respectfully submitted,

                                    KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  January 9, 2020          By: */s/ Perry D. Oldham*
                                    Joseph R. Re
                                    Stephen C. Jensen
                                    Perry D. Oldham
                                    Stephen W. Larson

                                    Attorneys for Plaintiff,
                                    Masimo Corporation

# **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Masimo Corporation hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 9, 2020          By: /s/ Perry D. Oldham

Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Stephen W. Larson

Attorneys for Plaintiff,
Masimo Corporation

# Exhibit D

1  JOSHUA H. LERNER, SBN 220755
      jlerner@gibsondunn.com
2  GIBSON, DUNN & CRUTCHER LLP
   555 Mission Street Suite 3000
3  San Francisco, CA 94105
   Telephone: 415.393.8200
4  Facsimile: 415.393.8306

5  H. MARK LYON, SBN 162061
      mlyon@gibsondunn.com
6  GIBSON, DUNN & CRUTCHER LLP
   1881 Page Mill Road
7  Palo Alto, CA 94304-1211
   Telephone: 650.849.5300
8  Facsimile: 650.849.5333

9  *Attorneys for Defendant Apple Inc.*

10

11                 **UNITED STATES DISTRICT COURT**
              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
12                      **SOUTHERN DIVISION**

13 MASIMO CORPORATION,
   a Delaware corporation; and
14 CERCACOR LABORATORIES, INC.,           CASE NO. 8:20-cv-00048-DOC-DFM
   a Delaware corporation,
15                                         **MEMORANDUM OF POINTS AND**
                  Plaintiffs,              **AUTHORITIES IN SUPPORT OF**
16                                         **DEFENDANT APPLE INC.'S**
           v.                              **MOTION TO DISMISS**
17
   APPLE INC.,                             **Hearing**
18 a California corporation,
                                           Date:     Date: April 6, 2020
19                Defendant.               Time:     8:30 a.m.
                                           Courtroom: 9D
20                                         Judge:    Hon. David O. Carter

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

Case 8:20-cv-00048-JVS-JDE Document 43-16 Filed 04/30/20 Page 111 of 272 Page ID
#:3068
Case 8:20-cv-00048-DOC-DFM Document 16-1 Filed 03/04/20 Page 1 of 272 Page ID
#:1063

# TABLE OF CONTENTS

Page

I.     INTRODUCTION .................................................................................. 1

II.    BACKGROUND ..................................................................................... 2

       A.   Plaintiffs Allege an Effort to Misappropriate Their Confidential
            Information More Than Six Years before Filing This Action. ................ 2

       B.   Plaintiffs' Alleged Secrets Were Published in a Patent Application
            More Than Three Years before Plaintiffs Filed This Action. ................. 3

       C.   Plaintiffs Filed This Case with No Explanation for the Delay, No
            Plausible Description of Alleged Secrets, and No Explanation as to
            How Apple Was Supposed to Recognize Any Impropriety. ................... 4

       D.   Plaintiffs' Claims for Patent Infringement, Correction of
            Inventorship, and Declaratory Judgment Also Lack Basic Facts. ........... 5

III.   LEGAL STANDARD ............................................................................ 5

IV.    ARGUMENT ......................................................................................... 6

       A.   The Eleventh Cause of Action for Trade Secret Misappropriation
            Should Be Dismissed. ........................................................................ 6

            1.   The Claim Is Time-Barred. ........................................................... 6

                 a)   The Limitations Period on the CUTSA Claim Began
                      More Than Three Years Ago. ............................................... 6

                 b)   Plaintiffs Have Not Pleaded an Excuse for Their
                      Delay. ................................................................................. 9

            2.   Plaintiffs' CUTSA Claim Should Be Dismissed for Failure to
                 State a Claim. ............................................................................. 10

                 a)   Plaintiffs Do Not Sufficiently Allege Any Trade
                      Secrets. .............................................................................. 10

                 b)   The Complaint Fails to Sufficiently Allege
                      Misappropriation by "Improper Means." ............................ 12

       B.   The First through Tenth Causes of Action Should Be Dismissed
            because They Do Not Plausibly Plead Patent Infringement. ................. 16

       C.   The Seventeenth Cause of Action for Ownership Should Be
            Dismissed. ....................................................................................... 20

       D.   The Twelfth through Sixteenth Causes of Action Should Be
            Dismissed. ....................................................................................... 23

            1.   Plaintiffs Lack Standing to Seek Correction of Inventorship. ........ 23

2.    Plaintiffs Fail to Plead Required Elements of an Inventorship
Claim. ............................................................................................. 25

V.    CONCLUSION ........................................................................................ 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

Case 8:20-cv-00048-JVS-JDE Document 42-3 Filed 04/30/20 Page 113 of 272 Page ID
#:3075
Case 8:20-cv-00048-DOC-DFM Document 16-1 Filed 03/04/20 Page 3 of 272 Page ID
#:1075

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akazawa v. Link New Tech. Int'l, Inc.*,
520 F.3d 1354 (Fed. Cir. 2008) ................................................................20

*Alamar Biosciences Inc. v. Difco Labs. Inc.*,
1996 WL 648286 (E.D. Cal. Feb. 27, 1996) ...................................7, 8, 10

*Alta Devices, Inc. v. LG Elecs., Inc.*,
2019 WL 1924992 (N.D. Cal. Apr. 30, 2019).......................................7, 8

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*,
77 F.3d 364 (11th Cir. 1996) ....................................................................22

*Anderson v. Kimberly-Clark Corp.*,
570 F. App'x 927 (Fed. Cir. 2014) .............................................................5

*Arachnid, Inc. v. Merit Indus., Inc.*,
939 F.2d 1574 (Fed. Cir. 1991) ................................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................5

*Balistreri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 1988) ....................................................................21

*Beech Aircraft Corp. v. EDO Corp.*,
990 F.2d 1237 (Fed. Cir. 1993) ................................................................24

*Bell Atl. v. Twombly*,
550 U.S. 544, 555 (2007) ...........................................................................5

*Bladeroom Grp. Ltd. v. Facebook*,
2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) ...........................................10

*Chou v. University of Chicago*,
254 F.3d 1347 (Fed. Cir. 2001) ................................................................23

*Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*,
642 F.3d 849 (9th Cir. 2011) ....................................................................21

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Cypress Semiconductor Corp. v. Maxim Integrated Prods., Inc.*,
    236 Cal. App. 4th 243 (Cal. Ct. App. 2015)................................................14

*Cypress Semiconductor Corp. v. Super. Ct.*,
    163 Cal. App. 4th 575 (Cal. Ct. App. 2008)..................................................6

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
    517 F.3d 1284 (Fed. Cir. 2008) ...................................................................24

*Diodes v. Franzen*,
    260 Cal. App. 2d 244 (Ct. App. 1968) .........................................................12

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004) ...................................................................20

*e.Digital Corp. v. iBaby Labs, Inc.*,
    2016 WL 4427209 (N.D. Cal. Aug. 22, 2016) .............................................17

*Ecojet, Inc. v. Pure Spa Components, Inc.*,
    2017 WL 3485780 (C.D. Cal. Feb. 10, 2017) ..............................................25

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004) ...................................................................25

*Fox v. Ethicon Endo-Surgery*,
    35 Cal. 4th 797 (2005) ....................................................................................9

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
    857 F. Supp. 2d 997 (S.D. Cal. 2012) ....................................................6, 7, 9

*GeoData Sys. Mgmt. v. Am. Pac. Plastic Fabricators*,
    2015 WL 12731920 (C.D. Cal. Sept. 21, 2015)...........................................10

*Hamilton v. Deputy # 1*,
    2014 WL 1289538 (C.D. Cal. Mar. 26, 2014) .............................................21

*Hays v. VDF Futureceuticals, Inc.*,
    2016 WL 5660395 (D. Haw. Sept. 28, 2016)..............................................6, 8

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*,
  600 F.3d 1347 (Fed. Cir. 2010) ........................................................ 22

*Hor v. Chu*,
  699 F.3d 1331 (Fed. Cir. 2012) ........................................................ 22

*Horowitz v. Yishun Chen*,
  2018 WL 6219928 (C.D. Cal. May 14, 2018) .................................... 17

*Human Longevity, Inc. v. J. Craig Venter Inst., Inc.*,
  2018 WL 6617633 (S.D. Cal. Dec. 18, 2018) .................................... 10

*Injen Tech. Co. v. AF Dynamic*,
  2018 WL 6977432 (C.D. Cal. Oct. 18, 2018) ...................................... 5

*Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co. Ltd.*,
  2018 WL 4963129 (C.D. Cal. June 22, 2018) ................... 16, 17, 18, 19

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*,
  109 F.3d 1567 (Fed. Cir. 1997) ........................................................ 20

*Klang v. Pflueger*,
  2014 WL 4922401 (C.D. Cal. July 10, 2014) ................................... 6, 9

*Laitram Corp. v. Rexnord, Inc.*,
  939 F.2d 1533 (Fed. Cir. 1991) ........................................................ 16

*Larson v. Correct Craft, Inc.*,
  569 F.3d 1319 (Fed. Cir. 2009) .................................................. 23, 25

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ......................................................................... 23

*MedioStream, Inc. v. Microsoft Corp.*,
  869 F. Supp. 2d 1095 (N.D. Cal. 2012) ............................................ 16

*Metricolor LLC v. L'Oreal S.A.*,
  791 F. App'x 183 (Fed. Cir. 2019) .................................................... 17

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ................................................................. 5

*Moore v. City of Orange*,
2017 WL 10518114 (C.D. Cal. Sept. 25, 2017) ...................................... 23

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ................................................................. 19

*N. Star Innovations Inc. v. Kingston Tech. Co., Inc.*,
2018 WL 3155258 (C.D. Cal. May 7, 2018), *adopted by* 2018 WL
3155708 (C.D. Cal. June 25, 2018) .............................................. 17, 19, 20

*Pappalardo v. Stevins*,
746 F. App'x 971 (Fed. Cir. 2018) ....................................................... 22

*Pellerin v. Honeywell Int'l, Inc.*,
877 F. Supp. 2d 983 (S.D. Cal. 2012) ............................................ 12, 14

*Prize Frize, Inc. v. Matrix (U.S.) Inc.*,
167 F.3d 1261 (9th Cir. 1999) .............................................................. 20

*Quest Nutrition, LLC v. Bd. of Supervisors of LSU Agric. & Mech. Coll.*,
2014 WL 3362061 (C.D. Cal. July 8, 2014) .......................................... 20

*Realvirt, LLC v. Lee*,
195 F. Supp. 3d 847 (E.D. Va. 2016), *aff'd sub nom. Realvirt, LLC v.
Iancu*, 734 F. App'x 755 (Fed. Cir. 2018) ............................................. 20

*Ruling Meng v. Ching–Wu Paul Chu*,
643 F. App'x 990 (Fed. Cir. 2016) ....................................................... 25

*S. Cal. Inst. of Law v. TCS Educ. Sys.*,
2011 WL 1296602 (C.D. Cal. Apr. 5, 2011) .......................................... 13

*Silvaco Data Sys. v. Intel Corp.*,
184 Cal. App. 4th 210 (Cal. Ct. App. 2010), *overruled on other
grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (Cal. 2011) ............ 14

*Space Data Corp. v. X*, 2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) .............. 11, 15

Gibson, Dunn &
Crutcher LLP

Case 8:20-cv-00048-JVS-JDE Document 43-5 Filed 04/30/20 Page 117 of 272 Page ID
#:3079
Case 8:20-cv-00048-DOC-DFM Document 16 Filed 03/04/20 Page 8 of 272 Page ID
#:1074

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Synopsys, Inc. v. ATopTech, Inc.*,
  2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ................................... 11, 12

*TeleSign Corp. v. Twilio, Inc.*,
  2016 WL 4703873 (C.D. Cal. Aug. 3, 2016) ........................................ 17

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017) ................................................................. 24

*Vendavo, Inc. v. Price*,
  2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ...................................... 11

*Vita-Herb Nutriceuticals, Inc. v. Probiohealth, LLC*,
  2013 WL 1182992 (C.D. Cal. Mar. 20, 2013) ................................. 23, 25

*Wang v. Palo Alto Networks*,
  2014 WL 1410346 (N.D. Cal. Apr. 11, 2014) ....................................... 8, 9

*Zomm, LLC v. Apple Inc.*,
  391 F. Supp. 3d 946 (N.D. Cal. 2019) ............................................... 15

*Zora Analytics, LLC v. Sakhamuri*,
  2013 WL 12124612 (S.D. Cal. June 18, 2013) ..................................... 15

**Statutes**

28 U.S.C. § 2201 ............................................................................. 23

Cal. Civ. Code § 3426.1(a) ................................................................ 13

Cal. Civ. Code § 3426.1(b)(1) ............................................................ 13

Cal. Civ. Code § 3426.1(b)(2)(A)–(B) ................................................... 13

Cal. Civ. Code § 3426.6 ..................................................................... 6

**Other Authorities**

Apple Watch Series 4 Teardown, iFixIt (Sept. 24, 2018),
  https://www.ifixit.com/Teardown/Apple+Watch+Series+4+Teardown/
  113044 ....................................................................................... 18

Gibson, Dunn &
Crutcher LLP

Case 8:20-cv-00048-JVS-JDE Document 42-3 Filed 04/30/20 Page 118 of 272 Page ID
#:3690
Case 8:20-cv-00048-DOC-DFM Document 16-1 Filed 03/04/20 Page 9 of 272 Page ID
#:3670

# TABLE OF AUTHORITIES
*(continued)*

<u>Page(s)</u>

**Rules**

Fed. R. Civ. Proc. 10(b) .............................................................................. 22

# TABLE OF ABBREVIATIONS

| Abbreviation | Document |
|---|---|
| Apple | Defendant Apple Inc. |
| Masimo | Plaintiff Masimo Corporation |
| Cercacor | Plaintiff Cercacor Laboratories, Inc. |
| Plaintiffs | Masimo and Cercacor, collectively |
| Complaint | Plaintiffs' Original Complaint filed before this Court |
| Accused Products | Apple Watch Series 4 and 5 devices |
| '265 patent | U.S. Patent No. 10,258,265 |
| '266 patent | U.S. Patent No. 10,258,266 |
| '628 patent | U.S. Patent No. 10,292,628 |
| '708 patent | U.S. Patent No. 10,299,708 |
| '190 patent | U.S. Patent No. 10,376,190 |
| '191 patent | U.S. Patent No. 10,376,191 |
| '695 patent | U.S. Patent No. 10,470,695 |
| '994 patent | U.S. Patent No. 6,771,994 |
| '703 patent | U.S. Patent No. 8,457,703 |
| '776 patent | U.S. Patent No. 10,433,776 |
| Asserted Patents | The '265, '266, '628, '708, '190, '191, '695, '994, '703, and '776 patents, collectively |
| '052 patent | U.S. Patent No. 10,078,052 |
| '670 patent | U.S. Patent No. 10,247,670 |
| '095 patent | U.S. Patent No. 9,952,095 |

| '754 patent | U.S. Patent No. 10,219,754 |
|---|---|
| '671 patent | U.S. Patent No. 10,524,671 |
| Apple Patents | The '052, '670, '095, '754, and '671 patents, collectively |
| '832 application | U.S. Patent Application No. 15/667,832 |
| '507 application | U.S. Patent Application No. 15/960,507 |
| Apple Applications | The '832 and '507 applications, collectively |
| '912 publication | U.S. Patent Application Publication No. 2019/0072912 |
| '806 publication | U.S. Patent Application Publication No. 2019/0090806 |
| '726 publication | U.S. Patent Publication No. 2016/0061726 |
| CUTSA | The California Uniform Trade Secret Act |
| COA | Cause of Action |
| RJN | Defendant Apple's Request for Judicial Notice in Support of Defendant's Motion to Dismiss (filed concurrently herewith) |

# I.    **INTRODUCTION**

Plaintiffs allege almost twenty claims in an effort to capitalize on the success of Apple's Watch.  Notwithstanding their scattershot approach, not one of Plaintiffs' claims is viable—Plaintiffs' trade secret allegations are not timely under the relevant statute of limitations, nor do Plaintiffs plead key requirements of every cause of action. Accordingly, the Complaint is facially deficient and should be dismissed.

The Complaint follows a false narrative that Apple somehow took Plaintiffs' trade secrets as long as six years ago.  But the face of the Complaint shows that even if Plaintiffs pleaded the elements of a trade secrets claim—they do not—the claim would be time-barred.  The statute of limitations for a trade secrets claim is three years, yet Plaintiffs filed this action *six years* after an unwarranted warning to Apple of a purported "targeted effort to obtain information and expertise" from Plaintiffs.  Further, Plaintiffs waited *three and a half* years after the first patent application allegedly containing Plaintiffs' alleged trade secrets was published to bring this case.  Plaintiffs offer no excuse for the delay, and precedent dictates that the Court should dismiss the trade secrets claim.  The trade secrets claim fails for the equally important reason that Plaintiffs do not allege any trade secrets with specificity sufficient to permit Apple or this Court to understand the bounds of their claim.  Plaintiffs plead an open-ended list of broad categories of information, which is insufficient as a matter of well-established law.  Separately, Plaintiffs fail to allege requisite knowledge.  In sum, the trade secrets claim is fatally vague and should be dismissed.

The patent infringement COAs (Nos. 1–10) are also defective for not adequately comparing the patent claims to the Accused Products.  While they point to two of Apple's patent publications and allege that these publications "describe" several limitations from the claims of each of the Asserted Patents, these COAs fail to link the statements in these patent publications to the specific functionality of the Accused Products and also fail to link the statements in these publications to the specific limitations of the Asserted Patents.  Indeed, for the majority of the claim limitations, the

Complaint merely recites the claim language for that limitation, alleging without factual support that the Accused Products include that limitation. These COAs, therefore, fail to plausibly allege that the Accused Products practice each limitation of at least one asserted claim, and should accordingly be dismissed.

COA No. 17 (framed as a declaratory judgment) likewise contains fatal flaws. Patent ownership is a state law issue but the Complaint does not plead any state law cause of action or theory. COA No. 17 also seeks relief that this Court cannot grant—first, by seeking exclusive ownership of patent applications that this Court has no ability to grant, and second, by requesting that this Court order specific performance which is not permitted in a declaratory judgment claim. Lastly, this COA improperly pleads a multitude of claims without providing sufficient explanation for Apple to know which allegations apply to which claim. As a result, this COA should also be dismissed.

Finally, the correction of inventorship COAs (Nos. 12–16) fare no better. In these COAs, Plaintiffs allege that three employees of Masimo, Cercacor, or both—the Complaint is contradictory on which entity actually employs these individuals—should be listed as inventors on five of Apple's patents. Critically, however, Plaintiffs fail to allege that they have a concrete ownership interest in these patents, and thus have not established that they have standing to bring these claims on behalf of their employees. These COAs must therefore also be dismissed.

## II.   BACKGROUND

### A.   Plaintiffs Allege an Effort to Misappropriate Their Confidential Information More Than Six Years before Filing This Action.

According to the Complaint, in 2013, Apple contacted Masimo, entered into a confidentiality agreement with Masimo, and had "confidential discussions" with Masimo's management, but then "systematically recruited . . . key Masimo personnel," including O'Reilly, Masimo's former Chief Medical Officer, and Lamego, Cercacor's former CTO. Compl. ¶¶ 19–21. "O'Reilly was privy to extremely sensitive information . . . about mobile medical products and applications, wellness applications,

clinical data gathering and analytics, and other technology of Masimo." *Id*. ¶ 20. Lamego had access to "highly confidential technical information," "was taught about the keys to effective non-invasive monitoring," and was "exposed to guarded secrets regarding mobile medical products"—in all of which he allegedly had no involvement prior to Masimo. *Id*. ¶ 21.

In 2014, Plaintiffs claim to have become suspicious of "a targeted effort to obtain information and expertise from Masimo and Cercacor." *Id*. ¶ 22. Indeed, Plaintiffs reference, but fail to attach to their Complaint, their January 24, 2014 letter "warn[ing] Apple about respecting their rights." *Id*.; RJN, Ex. A.[1] Plaintiffs stated their concern that "Apple [was] attempting to gain access to, or at least the benefit of, Cercacor and Masimo's trade secrets," and that "Apple w[ould] employ Mr. Lamego in an area that . . . involve[d] healthcare technology, including mobile health applications and the measurement of physiological information." RJN, Ex. A, at 1–2. Yet in the intervening six years, even after it was publicly known that Mr. Lamego was working for Apple in the wearables space, Plaintiffs did nothing.

## B. Plaintiffs' Alleged Secrets Were Published in a Patent Application More Than Three Years before Plaintiffs Filed This Action.

By claiming that Apple purportedly "used and disclosed Plaintiffs' Confidential Information at least by filing patent applications containing Masimo's Confidential Information," Plaintiffs concede that they were on notice of the purported disclosure more than three years before filing the present action. Compl. ¶ 185; *id*. ¶ 187. Plaintiffs claim that "[s]hortly after joining Apple in January 2014, Lamego pursued on behalf of Apple numerous patent applications . . . on technologies he was intimately involved in at Plaintiffs." *Id*. ¶¶ 21–23. One of those patent applications names Lamego as an inventor and was published with the title "Reflective Surface Treatments For Optical Sensors" on March 3, 2016. *See id*. ¶ 24 (citing U.S. Patent Application No. 14/740,196,

---

[1] As set forth in Apple's concurrently-filed Request for Judicial Notice, Apple respectfully requests that the Court take judicial notice of RJN Exhibits A–D.

published as the '726 publication and issued as the '052 patent, which is the subject of the twelfth COA); *id.*, Ex. 13 at 850 (the '052 patent, Prior Publication Data); RJN, Ex. B ('726 publication, Pub. Date). In other words, a patent application that (i) published Plaintiffs' purported secrets, and (ii) named as an inventor the person who Plaintiffs suspected had misappropriated those secrets, was publicly available more than three years before Plaintiffs filed this action. Nonetheless, in the intervening three years, Plaintiffs did nothing.

## C. Plaintiffs Filed This Case with No Explanation for the Delay, No Plausible Description of Alleged Secrets, and No Explanation as to How Apple Was Supposed to Recognize Any Impropriety.

The Complaint ignores Plaintiffs' delay in filing suit. Plaintiffs offer no explanation for their failures to (1) follow up on their 2014 warning to Apple, or (2) sue after at least one application including their alleged secrets published on March 3, 2016. *See* Compl. ¶ 24 & Ex. 13; RJN, Ex. B.

Further, despite alleging that their trade secrets were disclosed in published patent filings, Plaintiffs do not specify those trade secrets at all. Instead, Plaintiffs allege open-ended categories of information, "including, but not limited to, Plaintiffs' business plans, know-how, technical information, technical data, designs, manufacturing techniques and other business information." *Id.* ¶ 181.

The misappropriation allegations are also lacking. As to acquisition, while Plaintiffs allege that "Lamego knew or had reason to know" of his alleged "duty . . . to keep Plaintiffs' Confidential Information secret," *id.* ¶ 186, Plaintiffs do not claim that Apple knew what Lamego's confidentiality agreement supposedly covered when it supposedly acquired the alleged trade secrets. As for use and disclosure, Plaintiffs allege that Apple "disclosed Plaintiffs' Confidential Information, without Plaintiffs' consent, in published patent filings," *id.* ¶ 187. But again, Plaintiffs allege no facts plausibly suggesting that Apple knew or should have known which specific information came

1  from Plaintiffs or that the information purportedly was confidential under Lamego's
2  "employer-employee" or "fiduciary relationship" with either Plaintiff (*id.*, ¶ 187).

3  **D.  Plaintiffs' Claims for Patent Infringement, Correction of Inventorship, and Declaratory Judgment Also Lack Basic Facts.**
4

5  Plaintiffs' Complaint also asserts patent infringement of ten Masimo patents
6  without sufficiently comparing the claims of those patents to the actual Accused
7  Products, even though Plaintiffs could have freely acquired an Apple Watch to perform
8  a technical analysis.  Further, the Complaint asks to change inventorship of several
9  Apple patents to add persons allegedly affiliated with Plaintiffs and seeks a declaratory
10  judgment of ownership without meeting all requirements for pleading those causes.

11  **III.  LEGAL STANDARD**

12  A complaint must contain "sufficient factual matter, accepted as true, to state a
13  claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
14  (internal quotation marks omitted); *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir.
15  2015).  For a claim to be facially plausible, a plaintiff must plead "factual content that
16  allows the court to draw the reasonable inference that the defendant is liable for the
17  misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Dismissal is warranted where a complaint
18  fails to "raise a right to relief above the speculative level."  *Bell Atl. v. Twombly*, 550
19  U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action,
20  supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

21  In patent cases, federal courts have applied *Twombly* and *Iqbal* rigorously.  *See,*
22  *e.g.*, *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)
23  (quoting *Iqbal*, 556 U.S. at 679).  This Court has applied these principles to dismiss
24  cases where complaints, like this one, failed to allege required elements.  *See, e.g.*, *Injen*
25  *Tech. Co. v. AF Dynamic*, 2018 WL 6977432, at *2 (C.D. Cal. Oct. 18, 2018).

26
27
28

Gibson, Dunn &
Crutcher LLP

# IV.   ARGUMENT

## A.   The Eleventh Cause of Action for Trade Secret Misappropriation Should Be Dismissed.

### 1.   The Claim Is Time-Barred.

A CUTSA claim "must be brought within three years after the misappropriation is discovered or *by the exercise of reasonable diligence should have been discovered*." Cal. Civ. Code § 3426.6 (emphasis added).  Under California's discovery rule, "the statute of limitations begins to run when a plaintiff discovers, or has reason to discover, the cause of action." *Klang v. Pflueger*, 2014 WL 4922401, at *1–2, 5–6 (C.D. Cal. July 10, 2014) (dismissing CUTSA claim where patent applications allegedly disclosing the invention were published at least five years prior to filing).  Suspicion starts the clock: "[w]hen there is reason to suspect that a trade secret has been misappropriated, and a reasonable investigation would produce facts sufficient to confirm this suspicion (and justify bringing suit), the limitations period begins, even though the plaintiff has not conducted such an investigation."  *Hays v. VDF Futureceuticals, Inc.*, 2016 WL 5660395, at *3 (D. Haw. Sept. 28, 2016) (applying California limitations law and granting a motion to dismiss because "suspicion of wrongdoing will trigger the statute of limitations") (quoting *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1003 (S.D. Cal. 2012)); *Cypress Semiconductor Corp. v. Super. Ct.*, 163 Cal. App. 4th 575, 587 (Cal. Ct. App. 2008) ("[M]isappropriation that triggers . . . the statute is that which the plaintiff suspects, not that which may or may not actually exist.").

#### a)   The Limitations Period on the CUTSA Claim Began More Than Three Years Ago.

The Complaint demonstrates that Plaintiffs were suspicious that Apple was misappropriating their alleged secrets in 2014.  Even if Plaintiffs tried to assert ignorance (they do not), "ignorance . . . does not toll the running of the statute." *Klang*, 2014 WL 4922401, at *6 (internal quotation marks omitted); *see Gabriel Techs.*, 857 F. Supp. 2d at 1003 ("So long as a suspicion exists, it is clear that the plaintiff must go find the facts . . . .").  Once their suspicions were aroused, Plaintiffs had "a duty to investigate

further" and should be "charged with knowledge of matters which would have been revealed by such an investigation." *Alamar Biosciences Inc. v. Difco Labs. Inc.*, 1996 WL 648286, at *3, *8 (citation omitted) (E.D. Cal. Feb. 27, 1996) (granting summary judgment where it was "undisputed that [Intervention-claimant] strongly suspected [former employee] of misappropriating its trade secrets, but did nothing").

The Complaint alleges that after Apple and Masimo met in 2013 to discuss a "potential collaboration," "Apple systematically recruited . . . key Masimo personnel, such as Marcelo Lamego," who "join[ed] Apple in January 2014." Compl. ¶¶ 19, 21, 23. Apple allegedly engaged in a "targeted effort to obtain information and expertise" from Plaintiffs, such that they were compelled to "warn[] Apple about respecting their rights." *Id.* ¶ 22. Moreover, "Apple announced the first version of its watch [an ostensibly competing technology] in September 2014." *Id.* ¶ 28. These alleged facts alone demonstrate that Plaintiffs suspected Apple of misappropriation in January 2014, which triggered their obligation to investigate and, consequently, the limitations period. *Cf. Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 1924992, at *13–14 (N.D. Cal. Apr. 30, 2019) (plaintiff on inquiry notice of claim where competitor failed to return confidential information under NDA).

The judicially noticeable "warn[ing]" letter—a key document referenced in but not attached to the Complaint, *see* Compl. ¶ 22—is dated January 24, 2014, and confirms Plaintiffs' suspicions. RJN, Ex. A. The letter states that "[i]t is difficult to imagine *any reason* for th[e] sequence of events *other than Apple is attempting to gain access to, or at least the benefit of, Cercacor and Masimo's trade secrets.*" *Id.* (emphasis added); *cf. Gabriel Techs.*, 857 F. Supp. 2d at 1004–06 (email between plaintiff's employees saying that defendant committed a "direct rip-off" of plaintiff's trade secret "established that [plaintiff] had a suspicion of wrong doing which triggered the statute of limitations").

Because Plaintiffs were "concerned" and "suspicious" that Lamego "would take proprietary information with him," and it was "common knowledge" in 2014 that Apple was pursuing similar technology, *Alamar*, 1996 WL 648286, at *4—i.e., when it

Case 8:20-cv-00048-JVS-JDE Document 43-1 Filed 04/30/20 Page 128 of 272 Page ID
#:3066
Case 8:20-cv-00048-DOC-DFM Document 41-3 Filed 03/04/20 Page 129 of 272 Page ID
#:1080

"announced the first version of its watch in September 2014," Compl. ¶ 28—there is no question that Plaintiffs were on notice of their claim by then.

The statute was again triggered in 2016. The "publication of patents (and now patent applications) must be deemed, as a matter of law, to place those practicing in the same field and prosecuting their own patent applications in the same field on full notice of all of the contents of the publication." *Wang v. Palo Alto Networks, Inc.*, 2014 WL 1410346, at *6 (N.D. Cal. Apr. 11, 2014); *see Alta Devices*, 2019 WL 1924992, at *14 (holding reliance on *Wang* (a summary judgment case) proper on motion to dismiss despite different procedural posture, because the "Court takes as true . . . the allegations in [the] complaint" for a motion to dismiss). Courts have routinely found that patent applications and patents trigger the statute of limitations for sophisticated parties like Plaintiffs, especially when they are trying to "commercialize [their] own technologies" and where the application "revealed the alleged trade secrets sued on." *Wang*, 2014 WL 1410346, at *6; *Hays*, 2016 WL 5660395, at *5 (dismissing analogous Hawaii trade secrets claim, and holding that "statute of limitations . . . began to run when the patents were issued" because they sufficiently described the methods at issue for Plaintiff "at least to suspect a factual basis for [the] elements" of his claim (internal quotation marks omitted)).

Here, the Complaint demonstrates that Plaintiffs knew or should have known about Apple's U.S. Patent Application No. 14/740,196, which was published as the '726 publication on March 3, 2016 and named Lamego as an inventor. *See* Compl., Ex. 13, at 1 (citing the '726 publication). Again, the Complaint alleges that "[s]hortly after joining Apple in January 2014, Lamego pursued on behalf of Apple numerous patent applications . . . on technologies he was intimately involved in at Plaintiffs." *Id.* ¶¶ 21–23. The Complaint also alleges that the patent that issued from the published application—the '052 patent—"claims subject matter that Lamego obtained from discussions with Masimo or Cercacor." Compl. ¶ 194. But any alleged Masimo "Confidential Information" contained in the '052 patent was disclosed to the public

Case 8:20-cv-00048-JVS-JDE Document 43-1 Filed 04/30/20 Page 129 of 272 Page ID
#:1045
Case 8:20-cv-00048-DOC-DFM Document 13-1 Filed 03/04/20 Page 20 of 32 Page ID
#:3046

when the '726 publication was published on March 3, 2016. *See id.*, Ex. 13; RJN, Ex. B. The '726 publication discloses all of the same text and drawings—and thus the same concepts—as the '052 patent. *Compare* Compl., Ex. 13, at 850–67, *with* RJN, Ex. B, at 13–30. Moreover, the '726 publication contains all of the claims in the '052 patent except claims 15–17, which nonetheless describe features that are still contained in the '726 publication. *Compare* Compl., Ex. 13, at 867, *with* RJN, Ex. B, at 30–31. In short, the Complaint demonstrates that the '726 publication was "publicly available to all" and "in the same field as" Plaintiffs' own applications and technology. *Wang*, 2014 WL 1410346, at *3. Thus, by March 3, 2016, Plaintiffs were on notice of their trade secrets claim, and so the limitations period (alternatively) commenced at that time. *See id.* at *5 (CUTSA claim time-barred where plaintiff "alleged that [defendants'] patent is 'based at least in part on (if not completely based on) [plaintiff's] trade secrets'" (citation omitted)).

### b) Plaintiffs Have Not Pleaded an Excuse for Their Delay.

Plaintiffs allege that Apple used their confidential information when Lamego caused it to file patent applications relating to their technologies in 2014. Compl. ¶¶ 23–27. Therefore, the "complaint shows on its face that [Plaintiffs'] claim would be barred without the benefit of the discovery rule;" as a result, Plaintiffs have the burden of proving the facts necessary to toll the statute. *Klang*, 2014 WL 4922401, at *6; *see Gabriel Techs.*, 857 F. Supp. 2d at 1003. To do so, a plaintiff "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Klang*, 2014 WL 4922401, at *6 (citing *Fox v. Ethicon Endo-Surgery*, 35 Cal. 4th 797, 808 (2005)). "[T]he burden [is] on the plaintiff to 'show diligence'; 'conclusory allegations'" are insufficient. *Fox*, 35 Cal. 4th at 808 (citation omitted). Here, Plaintiffs make no attempt to explain why they could not have discovered the alleged misappropriation earlier. Any explanation would not toll the statute because an entity that, like Masimo, is "actively practicing in the field

Case 8:20-cv-00048-JVS-JDE Document 43-1 Filed 04/30/20 Page 130 of 272 Page ID
#:1087
Case 8:20-cv-00048-DOC-DFM Document 18-1 Filed 03/04/20 Page 21 of 32 Page ID
#:357

and prosecuting [its] own patent application must be deemed to be on constructive notice of published patent applications in the same field." *Wang*, 2014 WL 1410346, at \*6.

A plaintiff's claim will be barred where (1) it suspected defendant of misappropriation, (2) a term search would have revealed the subject patent application, and (3) it "had done patent searches on the technology of its competitors before." *Alamar*, 1996 WL 648286, at \*5–6. Here, the Complaint alleges Massimo "invested heavily in developing . . . measurement technologies," Compl. ¶ 12, and "received numerous U.S. patents for many of its inventions," *id.* ¶ 13. In addition to these admissions, Masimo disclosed to the SEC in 2015 that it had: (1) "468 issued patents and 243 pending applications" worldwide, RJN, Ex. C, at 59; (2) a "policy . . . to renew its patents," *id.* at 124; and (3) ostensibly "[s]earch[ed] for existing intellectual property rights," including competitors' patent filings, *id.* at 66. "In these circumstances, a reasonable plaintiff is required to take the elementary step of checking all readily available patent applications" to avoid a limitations bar. *Alamar*, 1996 WL 648286, at \*5–6. Plaintiffs did not do so; thus, their claim is barred.

### 2. Plaintiffs' CUTSA Claim Should Be Dismissed for Failure to State a Claim.

To state a claim under CUTSA, a plaintiff must allege: (1) the existence and ownership of a trade secret, (2) misappropriation of the trade secret, and (3) that defendant's actions damaged the plaintiff. *Bladeroom Grp. Ltd. v. Facebook*, 2015 WL 8028294, at \*3 (N.D. Cal. Dec. 7, 2015). The Eleventh COA fails this test.

#### a) Plaintiffs Do Not Sufficiently Allege Any Trade Secrets.

It is well-settled that a Plaintiff alleging misappropriation under CUTSA must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade . . . and to permit the defendant to ascertain at least the boundaries within which the secret lies." *GeoData Sys. Mgmt. v. Am. Pac. Plastic Fabricators*, 2015 WL 12731920, at \*11 (C.D. Cal. Sept. 21, 2015) (internal quotation marks omitted). "[A]llegations of broad categories relating to

Case 8:20-cv-00048-JVS-JDE Document 43-1 Filed 04/30/20 Page 131 of 272 Page ID
#:3053
Case 8:20-cv-00048-DOC-DFM Document 13-1 Filed 03/04/20 Page 22 of 272 Page ID
#:1063

business or technology are not adequate to support a trade secrets claim." *Human Longevity, Inc. v. J. Craig Venter Inst., Inc.*, 2018 WL 6617633, at \*4 (S.D. Cal. Dec. 18, 2018); *see also Bladeroom*, 2015 WL 8028294, at \*3 ("generic list of categories of various types of information" was "vague and conclusory" and insufficient). A CUTSA claim should be dismissed where, as here, plaintiffs simply plead nebulous categories of generalized information as trade secrets. *Space Data Corp. v. X*, 2017 WL 5013363, at \*2 (N.D. Cal. Feb. 16, 2017) (providing merely "a high-level overview of . . . purported trade secrets" does "not satisfy the Rule 8 pleading requirements"). Plaintiffs' pleading deficiency is even more egregious here because they are alleging that the alleged secrets were purportedly published in patent applications and patents.

*Vendavo, Inc. v. Price f(x) AG* supports dismissal here. *See* 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018). There, the plaintiff described the alleged trade secrets as:

> source code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives, 'negative knowhow' learned through the course of research and development, and other information related to the development of [defendant's] price-optimization software, including ideas and plans for product enhancements.

*Id*. at \*3. In holding that plaintiff had "not pleaded sufficient facts to show plausible misappropriation," the court explained that the alleged trade secrets were "set out . . . in broad, categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets [plaintiff] has a basis to believe actually were misappropriated." *Id*. at \*4.

Likewise, the plaintiff in *Synopsys, Inc. v. ATopTech, Inc*. described the relevant trade secrets as "relate[d] to [the plaintiffs'] products," including "proprietary input and output formats, scripts, and technical product documentation, which generally are not publicly known." 2013 WL 5770542, at \*6 (N.D. Cal. Oct. 24, 2013). The court dismissed the trade secrets claim, finding this description "too sweeping and vague." *Id*.

Here, Plaintiffs allege that they own "trade secrets including, but not limited to, Plaintiffs' business plans, know-how, technical information, technical data, designs,

Case 8:20-cv-00048-JVS-JDE Document 43-1 Filed 04/30/20 Page 132 of 272 Page ID
#:3089
Case 8:20-cv-00048-DOC-DFM Document 131-8 Filed 03/04/20 Page 23 of 32 Page ID
#:1089

manufacturing techniques and other business information"—all seemingly related to "noninvasive patient monitoring." Compl. ¶¶ 181, 13, 16. This nonexclusive laundry list of broad categories of information fails to put Apple on notice of "where trade secret protection begins and ends." *Synopsys*, 2013 WL 5770542, at *6. Indeed, the use of the phrase "including but not limited to" renders the scope of the alleged trade secrets unbounded on its face. In addition, because Plaintiffs allege that their trade secrets encompass "manufacturing techniques," Compl. ¶ 181, they "*must* not only identify the end product manufactured, but also supply sufficient data concerning the process." *Diodes v. Franzen*, 260 Cal. App. 2d 244, 253 (Ct. App. 1968) (emphasis added).[2] The Complaint plainly does not satisfy these standards.

Further compounding the deficiency of the Complaint is the fact that it does not delineate which trade secrets are owned by which Plaintiff. Compl. ¶ 181. This deprives Apple of notice of what *each* Plaintiff claims is a trade secret, which in turn affects Apple's purported obligations with respect to any relevant information. *See infra* § IV.A.2.b). Adding to the confusion is the inconsistent allegation that Apple misused "*Plaintiffs'* Confidential Information at least by filing patent applications containing *Masimo's* Confidential Information." *Id*. ¶ 185 (emphasis added). Because the applications are only alleged to contain *Masimo's* trade secrets, this begs the question of what Cercacor's trade secrets are and how they even come into play.

At bottom, Plaintiffs have not described the trade secrets with sufficient particularity and their misappropriation claim must be dismissed.

### b) The Complaint Fails to Sufficiently Allege Misappropriation by "Improper Means."

Plaintiffs' theory of misappropriation—alleged on information and belief—is that "Defendant acquired, used and disclosed Plaintiffs' Confidential Information at least by filing patent applications containing Masimo's Confidential Information, without

---

[2] *Diodes* is "widely adopted by federal courts." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012).

Case 8:20-cv-00048-JVS-JDE Document 43-1 Filed 04/30/20 Page 133 of 272 Page ID
#:3095
Case 8:20-cv-00048-DOC-DFM Document 18-1 Filed 03/04/20 Page 224 of 272 Page ID
#:3045

1    Plaintiffs' express or implied consent."  Compl. ¶ 185.

2              *(1)*    **Plaintiffs Fail to Allege Improper Acquisition.**

3         To allege misappropriation by acquisition, Plaintiffs must allege that Apple

4    acquired their trade secret(s) and knew or had reason to know that the trade secret was

5    acquired by "improper means."    Cal. Civ. Code § 3426.1(b)(1).[3]    To allege

6    misappropriation by use or disclosure, Plaintiffs must allege that Apple used or disclosed

7    their alleged trade secret without consent and that Apple "[u]sed improper means" to

8    acquire the trade secret, or knew or should have known that its knowledge "was:  (i)

9    Derived from . . . a person who had utilized improper means to acquire it; (ii) Acquired

10   under circumstances giving rise to a duty to maintain its secrecy . . .; or (iii) Derived

11   from . . . a person who owed a duty to the person seeking relief to maintain its secrecy."

12   *Id.* § 3426.1(b)(2)(A)–(B).

13        With respect to a theory of improper acquisition, Plaintiffs do not allege facts to

14   plausibly claim that Apple knew or had reason to know that any purported acquisition

15   of Plaintiffs' alleged trade secrets was by *improper means*.  *S. Cal. Inst. of Law v. TCS*

16   *Educ. Sys.*, 2011 WL 1296602, at *7 (C.D. Cal. Apr. 5, 2011) ("Alleging mere

17   possession of trade secrets is not enough." (internal alteration and quotation marks

18   omitted)).  In particular, they do not allege facts plausibly establishing knowledge by

19   Apple that either Lamego or O'Reilly had an obligation to maintain confidentiality of

20   specific information purportedly shared with Apple, or that Apple independently knew

21   that such information was confidential.[4]  Compl. ¶¶ 18–22.

22

23   _____

24   [3] "'Improper means' includes theft, bribery, misrepresentation, breach or inducement
     of a breach of a duty to maintain secrecy, or espionage through electronic or other
     means."  Cal. Civ. Code § 3426.1(a).

25

26   [4] The judicially noticeable "warning" letter only underscores that Plaintiffs cannot
     allege that Apple knew or should have known of the scope of their alleged trade secrets
     because it asserts broad categories of information that Plaintiffs fail to distinguish from

27   information generally known in the field—e.g., "business plans, . . . strategies, technical
     data, . . . designs and formulas, discoveries, processes, manufacturing techniques, know-

28   how, improvements, ideas[,] . . . inventions, trade secrets and other business
     information."  RJN, Ex. A, at 3.

Instead, Plaintiffs allege that "*Lamego* knew or had reason to know" of his supposed "duty . . . to keep Plaintiffs' Confidential Information secret," and that he disclosed it to Apple without Plaintiffs' consent. *Id.* ¶ 186 (emphasis added). Thus, the best Plaintiffs can plausibly assert is that Apple came into possession of information that *Lamego* knew or should have known was secret. This fails to allege a plausible improper acquisition claim against Apple, however, because "passive reception" of trade secrets is not "acquisition" under the statute. *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 223 (Cal. Ct. App. 2010) ("The choice of that term ["acquire"] over "receive" suggests that inadvertently coming into possession of a trade secret will not constitute acquisition."), *overruled on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (Cal. 2011).

Nor is the mere hiring of an employee who is purportedly exposed to Plaintiffs' trade secrets sufficient to plausibly allege a trade secrets claim. *See* Compl. ¶¶ 20–21. To the contrary, California has squarely rejected the inevitable disclosure doctrine, thereby forbidding a trade secret owner from preventing a former employee from working for a competitor "without proof of the employee's actual or threatened use of trade secrets." *Cypress Semiconductor Corp. v. Maxim Integrated Prods., Inc.*, 236 Cal. App. 4th 243, 264–65 (Cal. Ct. App. 2015). Plaintiffs therefore have failed to allege that Apple was on notice of which information, if any, was confidential such that it would have been on notice if it had *received* such information improperly. *Pellerin*, 877 F. Supp. 2d at 989 (mere possession of trade secrets is not enough).

Plaintiffs also allege that in 2013, Apple and Masimo entered into a confidentiality agreement to discuss a potential collaboration and thereafter discussed Masimo's technology. Compl. ¶ 19. But the Complaint does not allege that Apple breached that agreement. *Id.* In fact, the Complaint says nothing about what the agreement covered, whether Apple actually received any specific confidential information, and if so, what Apple was entitled to do with it. *Id.* (vaguely asserting that "[t]he meetings included confidential discussions of Masimo's technology"). Nor does it attach the agreement

itself. Plaintiffs have thus failed to plead the material terms of the actual contract between Apple and Masimo; in turn, that contract cannot serve as a basis for Apple's supposed knowledge that Plaintiffs' unspecified information was confidential or prohibited from being acquired, used, or disclosed. *Zora Analytics, LLC v. Sakhamuri*, 2013 WL 12124612, at *5 (S.D. Cal. June 18, 2013) (dismissing claim where plaintiff "failed to adequately plead the terms of the NDA," and noting that "[d]etermining whether [defendant] has violated a NDA . . . is difficult without at least alleging the NDA's material terms"); *Space Data*, 2017 WL 5013363, at *2 ("Space Data acknowledges that Google received the alleged trade secrets pursuant to the NDA. Accordingly, Space Data must plead facts showing that Google had a duty not to use the information in the way alleged.").

What is more, the Complaint does not even plead that Apple had a confidentiality agreement with Cercacor. Therefore, the only plausible inference to be drawn from these omissions is that there was no breach—i.e., that any supposed acquisition, use, or disclosure of information by Apple was permitted by any agreement that did exist. *Cf. Zomm, LLC v. Apple Inc.*, 391 F. Supp. 3d 946, 952 (N.D. Cal. 2019) (dismissing breach of contract claims where confidentiality provisions allowed for use of information that could be gained from reverse engineering or prior patents).

### *(2)* Plaintiffs Fail to Allege Apple's "Improper" Disclosure or Use.

Plaintiffs also fail to plausibly allege Apple's improper *use* or *disclosure* of their alleged trade secrets. Again, Plaintiffs vaguely assert, on information and belief, that Apple "used and disclosed Plaintiffs' Confidential Information at least by filing patent applications containing Masimo's Confidential Information, without Plaintiffs' express or implied consent." Compl. ¶ 185. Plaintiffs also speculate, upon information and belief, that Apple "knew or had reason to know that the knowledge of Plaintiffs' Confidential Information came from Plaintiffs, and that Lamego had previously acquired Plaintiffs' Confidential Information" under "a duty . . . to keep Plaintiffs' Confidential

Information secret." *Id.* ¶ 187. But again, Plaintiffs do not allege any facts suggesting that Apple knew or should have known (1) what specific information purportedly was protected as confidential by Lamego's "employer-employee" or "fiduciary relationship" with either Plaintiff (*id.*), or (2) what specific information even came from Plaintiffs. These conclusory allegations—bereft of any factual allegations as to *how* Apple knew what *specific* confidential information Lamego received from Plaintiffs or what his duties were with regard to the handling of that information—do not plausibly allege that Apple knew or had reason to know that Lamego was using any alleged trade secrets, or that such use was *unauthorized*. *See MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012) (dismissing trade secrets claims because plaintiff did not sufficiently allege that defendant, which had received technology from a third party that had been under contract with plaintiff, knew that the third party was not authorized to provide that technology to defendant). For the same reasons discussed in the acquisition section above, any purported agreement between Apple and Masimo cannot serve as a basis for improper use or disclosure.

In sum, the Eleventh COA must be dismissed because it fails to plausibly plead that Apple improperly acquired, used, or disclosed any trade secrets owned by Plaintiff.

## B. The First through Tenth Causes of Action Should Be Dismissed because They Do Not Plausibly Plead Patent Infringement.

The patent infringement COAs fail to plead sufficient facts to show that the Accused Products include every limitation of at least one claim of the Asserted Patents. Instead, Plaintiffs attempt to map several limitations from each asserted claim to two unrelated patent application publications, but do not even sufficiently allege that *those* publications include all of the claim limitations as required for infringement. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). Merely reciting claim language in the complaint is not enough under *Twombly* and *Iqbal*. *Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co. Ltd.*, 2018 WL 4963129, at *5–6 (C.D. Cal. June 22, 2018). Rather, this Court and other courts regularly dismiss complaints that fail to allege facts

Case 8:20-cv-00048-DOC-DFM Document 43-1 Filed 03/04/20 Page 28 of 272 Page ID #:1094

sufficient to allow a reasonable inference that *each* limitation of at least one asserted claim is met. *See, e.g.*, *id.*; *Horowitz v. Yishun Chen*, 2018 WL 6219928, at *3 (C.D. Cal. May 14, 2018); *TeleSign Corp. v. Twilio, Inc.*, 2016 WL 4703873, at *3–4 (C.D. Cal. Aug. 3, 2016); *see also e.Digital Corp. v. iBaby Labs, Inc.*, 2016 WL 4427209, at *5 (N.D. Cal. Aug. 22, 2016) (dismissing patent infringement claim for failure to "map" *each* claim limitation).

Moreover, it is imperative that the complaint actually *explain* how the limitation is purportedly met. This Court has held that bare facts with no connective reasoning, such as diagrams inserted into a complaint without explanation, are insufficient. *See, e.g.*, *N. Star Innovations Inc. v. Kingston Tech. Co., Inc.*, 2018 WL 3155258, at *2–5 (C.D. Cal. May 7, 2018), *adopted by* 2018 WL 3155708 (C.D. Cal. June 25, 2018); *Metricolor LLC v. L'Oreal S.A.*, 791 F. App'x 183, 188 (Fed. Cir. 2019) (affirming dismissal of a patent infringement claim that relied on images of the accused products without explaining how all claim limitations were met; vacating on other grounds).

Here, the First through Tenth COAs fail to allege facts sufficient to allow a reasonable inference that the Accused Products meet every claim limitation of the Asserted Patents. Specifically, the first eight COAs map claim limitations to two Apple patent application publications instead of the Accused Products, but fail to explain how these publications show that *the Accused Products* infringe these claim limitations. The Ninth and Tenth COAs likewise fail to explain where several claim limitations are found in the Accused Products.

The First through Eighth COAs merely recite claim language for the majority of the asserted limitations and allege without factual support that the Accused Products include the recited limitations "as described" in the '912 and '806 publications. *See* Compl. ¶¶ 45, 58, 71, 73, 86, 101, 114, 127, 141. These allegations suffer from at least two fatal flaws. First, the Complaint does not demonstrate that the '912 and '806 publications evidence the actual design or operation of the Accused Products, particularly given that the Complaint states that these publications purportedly describe

only "*some*"—but not all—"of the technology" of the Accused Products. *Id.* ¶¶ 45, 141 (emphasis added). Thus, even if the claim limitations may be described in the '912 and '806 publications, the first eight COAs fail to allege that these limitations are included in the Accused Products. *See, e.g.*, *id.* ¶ 45. Notably, the Accused Products are publicly sold in every major consumer market, and Plaintiffs could have examined an actual unit and alleged how each claimed limitation maps to the Accused Products.[5] Without such allegations, these COAs fall well short of the *Twombly* and *Iqbal* pleading standard.

Second, the First through Eighth COAs fail to even demonstrate that the '912 and '806 publications include the claim limitations. These COAs rely on a figure from either the '912 publication or the '806 publication (depending on the asserted patent), but provide no explanation of how each figure discloses any of the claim limitations.[6] *Cf. Int'l Techs.*, 2018 WL 4963129, at *5. Thus, the First COA merely recites several limitations from claim 1 of the '265 patent and alleges that these limitations are "described" in Figure 4C and the corresponding text of the '912 publication. Compl. ¶ 45. The First COA, however, provides no explanation of how this figure or text supposedly describe these recited limitations and no identification of *which* part of this figure corresponds to which limitation. The subsequent seven COAs likewise merely recite claim language and point to a figure and corresponding text from the '912 or '806 publications, but fail to link these figures or text to the asserted claims. *See id.* ¶¶ 59, 73, 86–87, 101, 114, 127, 141.

The Ninth and Tenth COAs suffer from similar defects. Both of these COAs quote text from an Apple website that describes certain functionality of Apple Watch products in broad, consumer-focused terms. These COAs then again merely recite several limitations from claim 1 of the '703 patent and claim 1 of the '776 patent,

---

[5] Purported teardowns of the Accused Products have been readily available on the Internet for years. *See, e.g.*, Apple Watch Series 4 Teardown, iFixIt (Sept. 24, 2018), https://www.ifixit.com/Teardown/Apple+Watch+Series+4+Teardown/113044.

[6] Plaintiffs also rely on the same figure for claim limitations across multiple patents, making it that much less clear which limitations may be found in each figure, and where.

Case 8:20-cv-00048-JVS-DFM Document 43-1 Filed 04/30/20 Page 139 of 272 Page ID
#:3655
Case 8:20-cv-00048-DOC-DFM Document 18-1 Filed 03/04/20 Page 30 of 272 Page ID
#:1098

respectively, and assert without support that the quoted text from the Apple website describes these limitations. *Id.* ¶¶ 155–56, 170. The Tenth COA even includes an entire paragraph spanning two pages that contains *nothing* beyond a recitation of claim language and a conclusory assertion that "[u]pon information and belief," the Accused Products include the recited limitations. *See id.* ¶ 171. These COAs fail to explain any bases for Plaintiffs' information and belief or otherwise link any of the statements made on Apple's website to any limitations of the asserted claims.

This Court has previously dismissed complaints with such scarcity of factual detail. For example, just like here, the pleading in *International Technologies* identified the accused devices, alleged that those devices practiced each limitation of the asserted claim, and cited to a document created by the defendant that purportedly explained how the devices performed the accused functionality. *Int'l Techs.*, 2018 WL 4963129, at *5. This Court, however, found that such allegations failed to state a claim because the complaint "d[id] not link statements made in the [Defendant's] documents to the specific limitations of any asserted claim," and instead "merely recite[d] the claim language for each limitation, alleging without factual support that the [accused system] works by following that limitation." *Id.* This Court explained that it need not accept a complaint's "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)) (alteration omitted). The present Complaint has even fewer details and relies only on publications that it fails to establish describe the Accused Products. The Complaint here thus should be dismissed.

This Court also dismissed the complaint in *North Star*, where the allegations in the pleading "consist[ed] of nothing more than a recitation of the claim elements" and "reverse-engineered schematics" that only "show[ed] that the Accused Products meet *some* limitations of [the asserted] claim." *N. Star*, 2018 WL 3155258, at *3 (emphasis added). Thus, even though the complaint identified defendant's accused products and included diagrams of those products, the Court explained that the diagrams were

1   insufficient because they "d[id] not explain which of the Accused Products was analyzed

2   and how . . . it meets any of the limitations." *Id.* at *4. The Complaint here is even more

3   deficient because it fails to allege how all of the claim limitations are met by the Accused

4   Products and because the figures from the '912 and '806 publications, unlike the

5   diagrams in *North Star*, are not even expressly tied to the Accused Products.

6       In addition to their bare allegations of direct infringement, each of the first ten

7   COAs contains allegations of indirect infringement. Indirect infringement, however,

8   requires direct infringement. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d

9   1263, 1272 (Fed. Cir. 2004). Because Plaintiffs fail to satisfy the requirements for

10  pleading direct infringement, their indirect infringement claims must also fail.

11  Accordingly, the entirety of the First through Tenth COAs should be dismissed.

12  **C.    The Seventeenth Cause of Action for Ownership Should Be Dismissed.**

13      The Seventeenth COA must be dismissed because it is defective for multiple

14  reasons. First, the Seventeenth COA requests this Court to determine that Plaintiffs "are

15  the exclusive owners, or at least joint owners" of Apple Patents and Apple Applications,

16  which are not questions that implicate federal jurisdiction—and yet, Plaintiffs do not

17  plead a state law jurisdictional basis in this cause of action. *Quest Nutrition, LLC v. Bd.*

18  *of Supervisors of LSU Agric. & Mech. Coll.*, 2014 WL 3362061, at *3 (C.D. Cal. July 8,

19  2014) ("Claims concerning patent ownership do not create federal jurisdiction." (quoting

20  *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1264 (9th Cir. 1999) (alteration

21  omitted))). Rather, the question over ownership of patents and patent applications is one

22  "exclusively for state courts." *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567,

23  1572 (Fed. Cir. 1997); *Realvirt, LLC v. Lee*, 195 F. Supp. 3d 847, 858 (E.D. Va. 2016),

24  *aff'd sub nom. Realvirt, LLC v. Iancu*, 734 F. App'x 755 (Fed. Cir. 2018) (citing

25  *Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1357 (Fed. Cir. 2008)).

26      Second, the Seventeenth COA should be dismissed because it does not identify "a

27  cognizable legal theory" under state law that would underlie Plaintiffs' ownership

28  claims, which this Court requires. *See Hamilton v. Deputy # 1*, 2014 WL 1289538, at

Case 8:20-cv-00048-JVS-JDE Document 43-1 Filed 04/30/20 Page 141 of 272 Page ID
#:3093
Case 8:20-cv-00048-DOC-DFM Document 31-1 Filed 03/04/20 Page 32 of 72 Page ID
#:1058

*2 (C.D. Cal. Mar. 26, 2014) (citing *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)).[7]  Rather, the Seventeenth COA only asserts a legal conclusion (that Plaintiffs' employees "had an obligation to assign" their inventions, patents, and patent applications), but provides neither factual support for this legal conclusion, nor the basis for the employees' purported obligation.  Compl. ¶ 214.  This COA requests a remedy without identifying a legal basis for that remedy and thus does not plead a cognizable legal theory.

Third, the Seventeenth COA also is not pleaded with enough clarity to state a claim.  This COA pleads that Plaintiffs "are the exclusive owners, or at least joint owners of *all* patents and patent applications" allegedly claiming Plaintiffs' subject matter, which "include *at a minimum*, the Lamego Patents and Lamego Applications" and their related patents and applications.  *Id.* ¶ 215 (emphasis added).  The COA then seeks ownership of Apple's patents and applications related to "subject matter developed at [*both*] Masimo *and* Cercacor," while Lamego and the three purported inventors (e.g., Al-Ali, Diab, and/or Weber) "were employed at Masimo *or* Cercacor."  *Id.* (emphasis added).  Yet those allegations fail to identify which employee worked for which corporate entity, when that employment occurred, when the ideas at issue were allegedly developed, or what subject matter was developed by which employee.[8]  Further, the COA seeks ownership of a potentially vast number of unidentified patents and patent applications and thus fails to give Apple proper notice of the extent of Plaintiffs' claims.

Fourth, the Seventeenth COA is fatally defective because it requests exclusive ownership of patents and patent applications that list Apple employees other than Lamego as co-inventors, but does not plead any legal theory under which those Apple employees would have to assign their rights to Plaintiffs.  For example, the '507

---

[7]  Plaintiffs' request for "declaratory relief" does not cure this problem because the Declaratory Judgment Act cannot provide an independent basis for relief.  *Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011).

[8]  The three individuals appear to work for Masimo, not Cercacor.

application and '095 patent list Apple employee Steven P. Hotelling as an inventor, and the '052 and '670 patents list five Apple employees as inventors in addition to Lamego. Compl. Exs. 13–15; RJN Ex. D ('507 application, published as U.S. Patent Pub. No. 2018/0238734). Plaintiffs identify no basis for those six employees to assign rights to them and thus no basis for their request "to change the title to the patents and patent applications in favor of Masimo and Cercacor." Compl. ¶ 216. Nor could they plead a request to remove Mr. Hotelling as an inventor from the '507 application because there are "no . . . private causes of action available to a litigant to challenge inventorship of a pending patent application." *Pappalardo v. Stevins*, 746 F. App'x 971, 974 (Fed. Cir. 2018) (citing *HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*, 600 F.3d 1347, 1352 (Fed. Cir. 2010)); *Hor v. Chu*, 699 F.3d 1331, 1335 (Fed. Cir. 2012) ("A [35 U.S.C.] § 256 claim for correction of inventorship does not accrue until the patent issues.").

Lastly, the Seventeenth COA should be dismissed because Plaintiffs have improperly compounded multiple claims in one COA. Instead, Federal Rule of Civil Procedure 10(b) requires Plaintiffs to separate multiple claims for relief into separate causes of action and state their allegations "with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Here, Plaintiffs have failed to do so. The Seventeenth COA alleges ownership by two separate parties (Masimo and Cercacor) over at least five issued U.S. patents and two U.S. patent applications, without distinguishing which party purportedly owns what, and seeks two distinct outcomes (exclusive ownership and joint ownership). Compl. ¶¶ 213–16. Moreover, Plaintiffs plead that Lamego had an obligation to assign patents and patent applications to his "employer [*sic*], Masimo *and* Cercacor," making it impossible to know which entity (or both) is/are allegedly exclusive or joint owner(s) of which patents or patent applications. *See id.* ¶ 214 (emphasis added). Further, each COA incorporates the allegations of the preceding COAs, without explaining which factual allegations apply to and support each COA, culminating in the Seventeenth COA,

which incorporates 210 paragraphs. *Id.* ¶ 212; *see Moore v. City of Orange*, 2017 WL 10518114, at *2 (C.D. Cal. Sept. 25, 2017) (finding it "egregious" and a good example of "shotgun pleading" where a count incorporated the preceding 107 paragraphs instead of "only those paragraphs which apply to each claim"). The Seventeenth COA also seeks both "declaratory relief," under which the Court is asked to "declare" a decision, and also asks for specific performance in the form of "an order from the Court ordering Apple to change title." Compl. ¶ 216. But the Declaratory Judgment Act does not provide authority for a court to order performance. 28 U.S.C. § 2201 (a court "may *declare the rights and other legal relations* of any interested party" (emphasis added)).

## D. The Twelfth through Sixteenth Causes of Action Should Be Dismissed.

### 1. Plaintiffs Lack Standing to Seek Correction of Inventorship.

The Twelfth through Sixteenth COAs seek correction of inventorship of the five Apple Patents under 35 U.S.C. § 256. *See* Compl. ¶¶ 192–211. These COAs, however, do not establish that Plaintiffs have constitutional standing to bring these claims. A plaintiff may not invoke § 256 without meeting constitutional standing requirements: a showing that the plaintiff has "suffered an injury-in-fact, that the injury is traceable to the conduct complained of, and that the injury is redressable by a favorable decision." *Chou v. Univ. of Chicago*, 254 F.3d 1347, 1357 (Fed. Cir. 2001) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). To establish standing in the context of a correction of inventorship claim, a plaintiff must first demonstrate an ownership interest or another financial stake in the patent at issue. *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1327 (Fed. Cir. 2009); *Vita-Herb Nutriceuticals, Inc. v. Probiohealth, LLC*, 2013 WL 1182992, at *3 (C.D. Cal. Mar. 20, 2013). Here, Plaintiffs fail to allege an ownership interest in any of the Apple Patents, and thus do not establish standing to bring correction of inventorship claims.

Plaintiffs' allegation in their Seventeenth COA that "Lamego, as well as all of the other employees/inventors, had an obligation to assign said subject matter, patents, and

Case 8:20-cv-00048-JVS-JDE Document 43-1 Filed 04/30/20 Page 144 of 272 Page ID
Case 8:20-cv-00048-DOC-DFM Document 18-1 Filed 03/04/20 Page 35 of 72 Page ID
#:3156
#:1151

1   patent applications to their employer, Masimo and Cercacor," Compl. ¶ 214, is

2   insufficient to confer standing for the Twelfth through Sixteenth COAs for three reasons.

3        First, the Seventeenth COA is unrelated to the correction of inventorship COAs

4   because it purportedly raises a claim for correction of *ownership*—not inventorship. *Id.*

5   ¶ 215; *see Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993)

6   ("It is elementary that inventorship and ownership are separate issues."). The Supreme

7   Court has "ma[de] clear that 'standing is not dispensed in gross.' To the contrary, 'a

8   plaintiff must demonstrate standing for each claim he seeks to press and for each form

9   of relief that is sought.'" *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650

10   (2017). Second, even if this ownership allegation from the Seventeenth COA applied to

11   the correction of inventorship COAs, the pleading would still fail to identify *which*

12   entity—Masimo, Cercacor, or both—was to receive the assigned rights. The Complaint

13   is contradictory. Plaintiffs treat Masimo and Cercacor interchangeably, referring to both

14   collectively as the "[employees'] *employer*" (singular), while at the same time asserting

15   that "Cercacor is not owned by Masimo." *Compare* Compl. ¶ 214, *with id.* ¶ 15. Thus,

16   by failing to allege ownership by any particular entity that can be entitled to the relief

17   requested, the Complaint does not show that either Plaintiff has standing.

18        Lastly, the Seventeenth COA alleges only that Lamego had *an obligation* to assign

19   patent ownership rights, but does not allege that the assignment was to be *automatic*.

20   "[T]he question of whether a patent assignment clause creates an automatic assignment

21   or merely an obligation to assign is intimately bound up with the question of standing in

22   patent cases." *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290

23   (Fed. Cir. 2008). "Contracts that merely obligate the inventor to grant rights in the

24   future . . . 'may vest the promisee with *equitable* rights in those inventions once made,'

25   but do not by themselves 'vest *legal* title to patents on the inventions in the promisee.'"

26   *Id.* (quoting *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580–81 (Fed. Cir.

27   1991)). By pleading only an obligation to assign, Plaintiffs do not establish legal title to

28   the Apple Patents and thus have no standing to bring their correction of inventorship

claims. *Larson*, 569 F.3d at 1326–27 (holding plaintiff "has no financial interest in the patents sufficient for him to have standing to pursue a § 256 claim," where interest was "contingent" on "him first succeeding on his state-law claims [of ownership]").[9]

### 2. Plaintiffs Fail to Plead Required Elements of an Inventorship Claim.

The Twelfth through Sixteenth COAs are also fatally deficient because they do not identify the subject matter Plaintiffs' employees allegedly jointly invented. To plead a § 256 claim, a plaintiff must allege facts sufficient to allow a court to draw a reasonable inference that he "contributed to the conception of the claimed invention and that his contribution was 'not insignificant in quality, . . . when measured against the dimension of the full invention.'" *Ecojet, Inc. v. Pure Spa Components, Inc.*, 2017 WL 3485780, at *5 (C.D. Cal. Feb. 10, 2017) (quoting *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004), and *Ruling Meng v. Ching–Wu Paul Chu*, 643 F. App'x 990, 994 (Fed. Cir. 2016)). Absent such allegations, a § 256 claim must be dismissed. *See id.* Here, Plaintiffs allege that their employees Al-Ali, Diab, and Weber are joint inventors of the Apple Patents, because these patents contain "subject matter that Lamego obtained from discussions with [them]." Compl. ¶¶ 194, 198, 202, 206, 210. Plaintiffs, however, fail to identify what parts of the claimed subject matter their employees allegedly invented, which employee invented which part, and how the alleged inventions by these employees relate to the claims of the Apple Patents. Thus, Plaintiffs do not sufficiently allege that their employees contributed significantly to the inventions claimed in the Apple Patents. Accordingly, the Twelfth through Sixteenth COAs must be dismissed.

## V.     CONCLUSION

Apple respectfully requests that the Court dismiss this case with prejudice or require a more particular statement.

---

[9] Once the Seventeenth COA is dismissed, the correction of inventorship COAs must fall with it. *See Vita-Herb*, 2013 WL 1182992, at *4 (holding that plaintiff had no standing to sue for correction of inventorship once his ownership claim was dismissed).

1    Dated: March 4, 2020             Respectfully submitted,

2

JOSHUA H. LERNER
H. MARK LYON
3                                 GIBSON, DUNN & CRUTCHER LLP

4

5                            By: */s/Joshua H. Lerner*

6                                  Joshua H. Lerner

7                            *Attorneys for Defendant Apple Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit E

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel 650.849.5300
www.gibsondunn.com

H. Mark Lyon
Direct: +1 650.849.5307
Fax: +1 650.849.5007
MLyon@gibsondunn.com

March 6, 2020

<u>**Via E-Mail**</u>

Perry D. Oldham
Knobbe, Martens, Olson & Bear LLP
2040 Main St., 14th Flr.
Irvine, CA 92614
Perry.Oldham@knobbe.com

Re:     *Masimo Corp., et al. v. Apple Inc.,* Case No. 8:20-cv-48 (C.D. Cal.)

Dear Mr. Oldham:

I write in response to your March 4, 2020 letter in the above-titled action (the "Action").

Your letter asserts that during the February 25, 2020 conference of counsel, Apple disputed whether it had reason to know that Marcelo Lamego and Michael O'Reilly had a duty not to disclose Masimo or Cercacor "information" to Apple.  This is a gross oversimplification of the issues at hand.  In fact, as we conveyed on that call, because Masimo and Cercacor have failed to identify their alleged trade secrets with any particularity, and because they have failed to identify any factual basis for Apple to have known that Lamego or O'Reilly had any obligation to maintain secrecy of specific information, Plaintiffs have failed to allege a plausible misappropriation claim against Apple.  Plaintiffs' failure to comply with the basic pleading requirements of Federal Rule of Civil Procedure 8 does not somehow shift the burden to Apple to define what Plaintiffs claim to be confidential information in order to disprove their spurious claim.

Turning to your demands, your sudden expressed concern that "Apple will *continue* to publish Masimo's and Cercacor's confidential information, particularly in patent applications" (emph. added) is belied by the fact that Plaintiffs in this case are asserting that Apple has been misappropriating their trade secrets for roughly *six years*, and yet again, Plaintiffs have never made any effort—before or after filing this lawsuit—to identify any information with sufficient detail for Apple to even identify what was allegedly misappropriated.  Your letter follows the same theme as the Complaint:  without identifying any alleged trade secret information, explaining why Apple would even want or need the information (if it is ever identified), or having a valid basis to question the steps that Apple takes to respect third party rights, you demand that "Apple immediately request non-publication for any pending applications concerning physiological monitoring" that may purportedly contain information from former Masimo or Cercacor (collectively, "Plaintiffs") employees.  Making such a demand without

GIBSON DUNN

Perry D. Oldham
March 6, 2020
Page 2

providing any basis for your claims suggests to us that you do not have a basis for the claims, let alone the demand you are making.

In light of Plaintiffs' assertion—both in your letter and in their Complaint (at ¶¶ 185, 187) in the Action—that Apple has supposedly published such information, Plaintiffs should immediately identify (by line and page number) any alleged trade secrets that have been disclosed in any published patent application filed by Apple or in any patent held by Apple. You no doubt already have this information because you must have conducted an investigation before filing a Complaint alleging that Apple disclosed trade secrets in those patent applications and other published patent filings.  If Plaintiffs indeed have a factual basis for these allegations, it is strange that they did not identify this information earlier.

Moreover, because Plaintiffs are required to describe *all* of their allegedly misappropriated secrets pursuant to California Code of Civil Procedure ("CCP") section 2019.210 before they conduct discovery, they should have no issue identifying those secrets now.  In that regard, please provide a full CCP § 2019.210 disclosure immediately.

Additionally, because Plaintiffs assert that other current or former Apple employees previously worked for Masimo or Cercacor, please also identify how any of the alleged trade secret information relates to each of those individuals—*e.g.*, which specific technologies each individual contributed to, what aspects of that technology were advanced by their contributions, etc.  Finally, if Plaintiffs are claiming joint inventorship as to any patent on which these individuals are named inventors, please identify by page and line number (for each patent) which person invented what.

We look forward to Plaintiffs' prompt CCP § 2019.210 disclosure, including the identification of any Masimo and/or Cercacor alleged trade secrets disclosed in any Apple patent application or patent—as well as the identification of the former Masimo or Cercacor employee information requested above.

Sincerely,

H. Mark Lyon

Cc (all by email): Joshua H. Lerner
Joseph R. Re
Stephen C. Jensen
Stephen W. Larson

# Exhibit F

1  Joseph R. Re (Bar No. 134479)
   joseph.re@knobbe.com
2  Stephen C. Jensen (Bar No. 149894)
   steve.jensen@knobbe.com
3  Perry D. Oldham (Bar No. 216016)
   perry.oldham@knobbe.com
4
   Stephen W. Larson (Bar No. 240844)
5  stephen.larson@knobbe.com
6  **KNOBBE, MARTENS, OLSON & BEAR, LLP**
   2040 Main Street, Fourteenth Floor
7  Irvine, CA  92614
   Telephone:  (949)-760-0404
8  Facsimile:  (949)-760-9502
9
10 Attorneys for Plaintiffs,
11 **Masimo Corporation and Cercacor Laboratories, Inc.**

12

13            **IN THE UNITED STATES DISTRICT COURT**

14          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15                     **SOUTHERN DIVISION**

16

17 MASIMO CORPORATION,                 ) Case No. 8:20-cv-00048-JVS-JDE
   a Delaware corporation; and         )
18 CERCACOR LABORATORIES, INC.,        ) **PLAINTIFFS MASIMO**
   a Delaware corporation              ) **CORPORATION AND**
19                                      ) **CERCACOR LABORATORIES,**
                                        ) **INC.'S FIRST SET OF REQUESTS**
20            Plaintiffs,               ) **FOR PRODUCTION OF**
                                        ) **DOCUMENTS TO DEFENDANT**
21       v.                             ) **APPLE INC. (NOS. 1-25)**
                                        )
22 APPLE INC., a California corporation )
                                        )
23                                      ) Hon. James V. Selna
             Defendant.                 )
24 _____     )
25

26

27

28

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs MASIMO CORPORATION ("Masimo") and CERCACOR LABORATORIES, INC. ("Cercacor") (collectively, "Plaintiffs") hereby request that Defendant APPLE INC. ("Apple") respond to the following Requests for the Production of Documents and Things (the "Requests") within thirty (30) days of service of these Requests and produce the documents and things described herein at the offices of counsel for Masimo within the time prescribed by the Federal Rules of Civil Procedure. These Requests are deemed continuing in nature, requiring amended or supplemental responses as necessary.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. As used in these Requests, the following terms are to be interpreted in accordance with these definitions:

1. The terms "Apple," "Defendant," "You," and "Your" mean Defendant Apple, Inc., as well as any present or former officer, director, employee, agent, attorney, or other representative acting for or on behalf of Defendant Apple, Inc.

2. "Masimo" means Masimo Corporation, including its divisions, departments, parents, subsidiaries, affiliates or predecessors.

3. "Cercacor" means Cercacor Laboratories, Inc., including its divisions, departments, parents, subsidiaries, affiliates or predecessors.

4. The term "Plaintiffs" shall mean Masimo and Cercacor as defined above.

5. "Masimo Asserted Patents" means the patents Plaintiffs are asserting in this case, including U.S. Patent No. 10,258,265, U.S. Patent No. 10,258,266, U.S. Patent No. 10,292,628, U.S. Patent No. 10,299,708, U.S. Patent No. 10,376,190, U.S. Patent No. 10,376,191, U.S. Patent No. 10,470,695,

-1-

U.S. Patent No. 6,771,994, U.S. Patent No. 8,457,703, and U.S. Patent No. 10,433,776.   To the extent Masimo asserts additional patents in a future pleading, "Masimo Asserted Patents" shall be construed to include such patents.

6.      "Apple iOS Products" means products that use Apple's mobile iOS operating system.

7.      "Accused Products" means Apple Watch Series 4 or later, as well as the combination of Apple Watch Series 4 or later with an Apple iOS Product.

8.      The term "documents" shall be construed to include all writings and graphics of any sort whatsoever, together with any data stored in electronic or any other form, including, but not limited to, books, records, microfilm, tape or video recordings, emails, voice mails, handwritten notes, phone messages, pictures, and all copies of such documents except those that are identical in every respect to the original document.

9.      The term "things" shall mean all tangible objects of any type, composition, construction, or nature.

10.      The term "and" shall be construed to include "or" and vice versa, and each of them shall be the logical equivalent of "and/or."

11.      The term "concerning" shall mean relating to, referring to, describing, evidencing, or constituting.

12.      The term "communication" shall mean and refer to the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

13.      The use of the singular form of any word also includes the plural and vice versa, and a verb tense includes all other verb tenses wherever possible.

**INSTRUCTIONS**

1.      Produce all documents specified below that are in Your possession, custody, or control, or otherwise known and available to You, Your agents, employees, representatives, investigators, attorneys or their agents, employees, representatives, or investigators at the time and place indicated.

2.     If You claim that any requested documents or things are privileged, then provide all information falling within the scope of the Request that is not privileged and identify with sufficient particularity for purposes of a motion to compel the information, document, or thing, separately, with respect to which You claim a privilege, and state:

a.     the basis on which the privilege is claimed;

b.     the author or creator of the information, document, or thing;

c.     each individual or other person to whom the information, document, copy thereof, or thing was sent or otherwise disclosed; and

d.     the date of the information or document.

3.     If You are aware of the existence, past or present, of a requested document or thing, but the document or thing is not in Your possession, custody, or control, then so state in Your response to the request for that document or thing.  Identify such document or thing and identify, by name, title, and address, the person who last maintained possession, custody, or control of the document or thing.  If the requested document or thing no longer exists, then Your response should state when, how, and why this is the case.

4.     Produce each requested document or thing along with all non-identical drafts thereof.  Furthermore, produce each document in its entirety, without abbreviation or redaction.

5.     Identify specifically the derivation and source of each document and thing to be produced.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents and things that refer or relate to the Masimo Asserted Patents.

**REQUEST FOR PRODUCTION NO. 2:**

All documents and things that refer or relate to Apple's first awareness of

the Masimo Asserted Patents.

**REQUEST FOR PRODUCTION NO. 3:**

All documents and things that refer or relate to any efforts to design any of the Accused Products around the inventions claimed in the Masimo Asserted Patents.

**REQUEST FOR PRODUCTION NO. 4:**

All documents and things concerning, evaluating, discussing, and/or commenting on the existence, infringement, or scope of the Masimo Asserted Patents.

**REQUEST FOR PRODUCTION NO. 5:**

Documents sufficient to show the design and operation of the Accused Products.

**REQUEST FOR PRODUCTION NO. 6:**

All documents and things describing the operation of the Accused Products, including, without limitation, product brochures, user manuals, instructional materials, and directions for use.

**REQUEST FOR PRODUCTION NO. 7:**

All training materials concerning any of the Accused Products, including, without limitation, training manuals, training videos, presentations, and handouts.

**REQUEST FOR PRODUCTION NO. 8:**

All marketing materials concerning any of the Accused Products, including, without limitation, advertisements, promotional materials, pamphlets, brochures, product catalogs, websites, product brochures, informational materials, and videos.

**REQUEST FOR PRODUCTION NO. 9:**

All publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 10:**

All videos or DVDs demonstrating or showing the operation of the Accused Products.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and things that refer or relate to the use, effectiveness, capabilities, functionality, or characteristics of the physiological monitoring features of any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 12:**

All technical documents for the Accused Products, including, without limitation, product specifications, diagrams, schematics, memos, conceptual or technical drawings, design requirements documents, design capture documents, technical requirements documents, product briefs, product plans, product requirements, document trees, assembly design documents, design review documents, system design documents, fabricating drawings, manufacturing documents, and technical meeting minutes.

**REQUEST FOR PRODUCTION NO. 13:**

All documents and things that refer or relate to technical information, specifications, and research data for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 14:**

All documents and things concerning the research, design, and development of any of the Accused Products or any component of any of the Accused Products, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, conceptual or

technical drawings, schematics, diagrams, technical specifications, meeting minutes, presentations, and prototypes.

**REQUEST FOR PRODUCTION NO. 15:**

All documents and things that refer or relate to optical or structural components of any of the Accused Products, including emitters, sensors, detectors, filters, covers, lenses, masks, housing, adhesives, openings, magnets, magnetic shields, carriers, bodies, interior surfaces, walls, protrusions, and sensor subsystems.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and things that refer or relate to any components, surface areas, or adhesives that separate light emitted by LEDs from other components of any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 17:**

Documents sufficient to show the operation of any algorithms used to monitor any physiological parameter in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 18:**

Documents sufficient to show the operation of any heart rate algorithms used in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 19:**

All documents and things that refer or relate to the development of the heart rate algorithms for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 20:**

All documents and things that refer or relate to selection between any heart rate algorithms used in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 21:**

All documents and things that refer or relate to power consumption by any heart rate algorithms used in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 22:**

All documents and things that refer or relate to the operation of any LEDs used to determine pulse rate or heart rate for any of the Accused Products, including but not limited to documents and things that refer or relate to LED timing, duty cycle, current, or power usage.

**REQUEST FOR PRODUCTION NO. 23:**

All documents and things that refer or relate to collecting first heart rate metrics using a first technique during a first period and collecting second heart rate metrics using a second technique during a second period for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 24:**

All documents and things that refer or relate to changes in collecting heart rate metrics based on user input for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and things that refer or relate to changes in collecting heart rate metrics based on a change in operating mode for any of the Accused Products.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  March 16, 2020          By: */s/ Stephen W. Larson*

Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Stephen W. Larson

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories, Inc.

**PROOF OF SERVICE**

     I am a citizen of the United States of America and I am employed in Irvine, California.  I am over the age of 18 and not a party to the within action.

     On March 16, 2020, I served the within **PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT APPLE INC. (NOS. 1-25)** on the parties or their counsel shown at the email addresses shown below:

GIBSON, DUNN & CRUTCHER LLP

JOSHUA H. LERNER
jlerner@gibsondunn.com

H. MARK LYON,
mlyon@gibsondunn.com

     I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

     Executed on March 16, 2020, at Irvine, California.

Karina Villanueva

32027361

Exhibit G

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff,
**Masimo Corporation**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation <br><br> Defendant. | Case No. 8:20-cv-00048-JVS-JDE <br><br> **FIRST AMENDED COMPLAINT FOR (1) PATENT INFRINGEMENT (2) TRADE SECRET MISAPPROPRIATION (3) CORRECTION OF INVENTORSHIP AND (4) OWNERSHIP OF PATENTS** <br><br> **AND DEMAND FOR JURY TRIAL** <br><br> Hon. James V. Selna |

Case 8:20-cv-00048-JVS-JDE   Document 243-3   Filed 04/30/20   Page 162 of 272   Page ID #:14314
Case 8:20-cv-00048-JVS-JDE   Document 1   Filed 03/25/20   Page 2 of 95   Page ID #:2
#:3174

Plaintiffs MASIMO CORPORATION ("Masimo") and CERCACOR LABORATIES, INC. ("Cercacor") hereby complain of Defendant APPLE INC. ("Apple"), and allege as follows:

## I. **THE PARTIES**

1.     Plaintiff Masimo is a Delaware corporation having its principal place of business at 52 Discovery, Irvine, California 92618.

2.     Plaintiff Cercacor is a Delaware corporation having its principal place of business at 15750 Alton Pkwy, Irvine, California 92618.

3.     Upon information and belief, Defendant Apple is a California corporation having a principal place of business at One Apple Park Way, Cupertino, California, 95014.

## II.  **JURISDICTION AND VENUE**

4.     This civil action includes claims for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq*., more particularly, 35 U.S.C. §§ 271 and 281.  This civil action includes claims for correction of inventorship of certain United States patents arising under the patent law of the United States, more particularly 35 U.S.C. § 256.   This Complaint further alleges trade secret misappropriation and seeks a declaration of ownership of certain patents and patent applications.

5.     This Court has subject matter jurisdiction over claims 1-12 and 14-18 pursuant to at least 28 U.S.C. §§ 1331 and 1338(a), and has at least supplemental jurisdiction over claims 13 and 19-24 pursuant to at least 28 U.S.C. §§ 1367(a), including because, as alleged in more detail below, they are sufficiently related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6.     Apple has its principal place of business in California.  Apple is subject to personal jurisdiction in California and has committed the acts complained of in this Judicial District.

7.     Venue is proper in the Southern Division of the Central District of California pursuant to 28 U.S.C. § 1400(b) with respect to patent infringement because Defendant has a regular and established place of business in the County of Orange within the Central District of California and committed acts of infringement in this Judicial District.  Defendant also committed acts of misappropriation in this Judicial District.  Inventive contributions to the patents and patent application as to which Plaintiffs seek correction of inventorship and/or declarations of ownership also took place in this Judicial District.  Thus, venue is proper pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District.

### III.  <u>STATEMENT OF THE CASE</u>

8.     This action seeks relief for the theft of Plaintiffs' highly confidential information and trade secrets, and infringement of Masimo's patents by Defendant, correction of inventorship, and ownership of patents assigned to or filed by Apple on subject matter that belongs to Plaintiffs.

### IV.  <u>STATEMENT OF FACTS</u>

9.     Masimo is a medical technology company that revolutionized non-invasive monitoring of physiological parameters, such as pulse rate, arterial oxygen saturation and many others.

10.     Most of these parameters are measured using light that is transmitted through the body tissue.  The received light, that has been attenuated by the various components of the body tissue, including the blood, is known in the industry as a photoplethysmograph or "PPG."  The transmission and receipt

of this light is typically accomplished through a sensor that is applied to a body part such as a finger, arm, toe, forehead or ear.

11.     Before Masimo, non-invasive measurements from the PPG were plagued by unreliability, often when the measurement was needed most, due to the person moving or having low peripheral blood flow (known as "low perfusion").  The industry had essentially given up on solving these problems, concluding they were largely unsolvable.  In the medical context, clinicians had to live with the results – patient monitors gave excessive false alarms, froze their measurements for prolonged periods of time despite potential changes in the physiological parameter (e.g., oxygen saturation or pulse rate), delayed notification of alarms due to long averaging times of sensor data, produced inaccurate measurements, or were unable to obtain data on the most critical patients and babies who cannot be instructed to stay still.  Masimo's pioneering technology, known as Masimo Signal Extraction Technology ("Masimo SET"), solved this problem and dramatically improved the reliability of monitoring and reporting physiological signals derived from the PPG.

12.     Following its initial success with Masimo SET, Masimo invested heavily in developing additional breakthrough measurement technologies, such as non-invasively measuring total hemoglobin, carboxyhemoglobin, and methemoglobin.  Masimo has continued to innovate, succeeding where others have consistently failed.  Masimo was the first, and remains the only, company delivering these game-changing technologies to hospitals in the United States. Use of Masimo's technology in the clinical setting has been proven to reduce blindness in premature infants, detect congenital heart disease in infants, save lives on the general care floor and post-surgery, and improve transfusion management, while saving money.

13.     From its inception, Masimo has continuously developed cutting-edge noninvasive patient monitoring technologies.  Masimo sought and received

numerous U.S. patents for many of its inventions.  Masimo's revolutionary technology was a key to its gaining significant market praise and penetration. After introduction into the market, many competitors, much larger than Masimo, used Masimo's technology without a license, resulting in patent infringement lawsuits that ultimately confirmed the validity of Masimo's innovations.  Masimo also maintains some technology as trade secrets.  Masimo also closely guards its future product and market plans.  Only select employees have knowledge of and access to these guarded secrets.

14.     Masimo's innovations also include important advances in sensor technologies that work together as part of Masimo's system and algorithms. Masimo's sensors are integral to the success of the revolutionary technologies Masimo has developed.

15.     In 1998, Masimo spun certain technologies off into a new company, Masimo Laboratories, Inc. or "Masimo Labs," to further research and develop the technologies. The name of the company was later changed to Cercacor Laboratories Inc. or "Cercacor."  Cercacor and Masimo have a cross-license agreement to facilitate confidential collaboration between the companies.  Cercacor is not owned by Masimo.

16.     Like Masimo, Cercacor is an innovator of non-invasive monitoring technologies.  Cercacor is on the frontline of understanding how measuring, tracking, and analyzing physiological parameters can impact pre-diabetic and diabetic patients, sports training and performance and overall health and wellness principally in the consumer market.  Cercacor continued the development that started at Masimo on non-invasive total hemoglobin (SpHb®), methemoglobin (SpMet®), and carboxyhemoglobin (SpCO®) and other non-invasive physiological parameters.

17.     Leading hospitals around the world use Cercacor technology licensed to Masimo and sold under the name Masimo rainbow SET.  Like

-4-

Masimo, Cercacor also maintains some technology as trade secrets, and Cercacor closely guards its future product and market plans. Only select employees have knowledge of and access to these guarded secrets.

18. Plaintiffs carefully guard the secrecy of their confidential information and documents. For example, Plaintiffs have policies regarding labeling confidential information and documents as "CONFIDENTIAL AND PROPRIETARY." They also restrict these documents and information from disclosure to third parties and employees on a need-to-know basis. Plaintiffs also have policies in place regarding the use of computers and related equipment that govern how their computer systems may be used. Those policies also govern the protection of Plaintiffs' confidential information. Plaintiffs have document management systems that restrict access to confidential documents to only those employees with proper security credentials and a need for access. Plaintiffs also require employees to sign agreements precluding the employees from disclosing or making use of any confidential information except as authorized by Plaintiffs and as necessary for the performance of the employees' duties. Plaintiffs also require third parties, including customers, to execute confidential non-disclosure agreements. Plaintiffs implemented such policies and procedures to maintain the confidentiality of sensitive information. These policies remain in place today.

19. In 2013, Apple contacted Masimo and asked to meet regarding a potential collaboration. Apple told Masimo that Apple would like to understand more about Masimo's technology to potentially integrate that technology into Apple's products. Apple and Masimo later entered into a confidentiality agreement, and Masimo's management met with Apple. The meetings included confidential discussions of Masimo's technology. After what seemed to Masimo to have been productive meetings, Apple quickly began trying to hire Masimo employees, including engineers and key management.

20.     Masimo employed Michael O'Reilly as its Chief Medical Officer and Executive Vice President for Medical Affairs beginning in January 2008. As part of the Masimo executive team, O'Reilly was privy to extremely sensitive information, including information about mobile medical products and applications, wellness applications, clinical data gathering and analytics, and other technology of Masimo.  Upon information and belief, Apple employed O'Reilly in July 2013, shortly after the meetings with Masimo, to assist in wellness and mobile applications that include non-invasive measurement of physiological parameters.  Not long after, by December of 2013, O'Reilly was already meeting with the FDA on behalf of Apple to discuss medical applications and discuss medical products that non-invasively measures blood constituents.

21.     Apple systematically recruited other key Masimo personnel, such as Marcelo Lamego, who was the former Chief Technical Officer of Cercacor and a former Research Scientist at Masimo.  Lamego was a Masimo employee during 2000-2001 and 2003-2006, and the Cercacor Chief Technical Officer during 2006-2014.

22.     Lamego had unfettered access to Plaintiffs' highly confidential technical information.  He was trained and mentored at Masimo by the most skilled engineers and scientists, and was taught about the keys to effective non-invasive monitoring, something he was not involved in prior to Masimo. Masimo engineers and scientists taught Lamego about non-invasive monitoring, including, among others, Ammar Al-Ali, Mohamed Diab, and Walter Weber. The Masimo engineers, including Al-Ali, Diab, and Weber, were Masimo employees at all relevant times.   Lamego also had access to and learned guarded secrets regarding Plaintiffs' mobile medical products, including key technology and advance plans for future products.

23.    When Lamego left Cercacor, he assured Plaintiffs that he would not violate his agreements with Plaintiffs and volunteered that he would not work on technology similar to Plaintiffs' technology.  On January 24, 2014, Plaintiffs sent a letter to Defendant explaining that Lamego possessed Plaintiffs' confidential proprietary information and warning Apple to respect Plaintiffs' rights in such information.  The letter stated "we trust that Apple will employ Mr. Lamego in an area that does not involve healthcare technology, including mobile health applications and the measurement of physiological information." The letter also asked that "Apple refrain from inducing Mr. Lamego to take actions that would violate the Agreement while he performs services for Apple" and asked Apple to "direct Mr. Lamego to honor his obligations to all of his prior employers."  Based on Plaintiffs' conversations with Lamego, Plaintiffs' letter to Apple, and Plaintiffs' confidentiality agreement with Apple, Plaintiffs reasonably believed that Lamego would not use or disclose Plaintiffs' confidential information and that Defendant would not induce Lamego to do so or itself use Plaintiffs' confidential information.

24.    Unbeknownst to Plaintiffs at the time, it now appears that, shortly after joining Apple in January 2014, Lamego began pursuing on behalf of Apple numerous patent applications directed toward technologies he worked on at Plaintiffs, and with which he had no prior experience or knowledge.

25.    Upon information and belief, Apple announced the first version of its watch in September 2014, and began shipping its watch in April 2015.  The Apple Watch Series 3 was released on September 22, 2017, and upon information and belief had significant performance issues with the non-invasive physiological measurements.  Apple announced the Apple Watch Series 4 on September 12, 2018, and upon information and belief, that watch includes technology that tracks Plaintiffs' technologies to solve some of the performance issues.  The Apple Watch Series 5 was announced on September 10, 2019 and

released on September 20, 2019.  Upon information and belief, the Apple Watch Series 5 also includes Plaintiffs' technologies to solve some of the prior performance issues, including technology as to which Lamego was an inventor while at Plaintiffs.

26.     As set forth in detail below, and on information and belief, each portion of evidence cited by Plaintiffs, such as the selected portions of Apple patent applications and Apple websites, accurately portrays, in relevant part, the structure, design, function and/or operation of the Apple Watch Series 4 and later devices.

## V.  THE PATENTS-IN-SUIT

27.     Masimo is the owner by assignment of U.S. Patent No. 10,258,265 entitled "Multi-stream data collection system for noninvasive measurement of blood constituents" ("the '265 patent"), which the United States Patent and Trademark Office lawfully and duly issued on April 16, 2019.  A true and correct copy of the '265 patent is attached hereto as Exhibit 1.

28.     Masimo is the owner by assignment of U.S. Patent No. 10,258,266 entitled "Multi-stream data collection system for noninvasive measurement of blood constituents" ("the '266 patent"), which the United States Patent and Trademark Office lawfully and duly issued on April 16, 2019.  A true and correct copy of the '266 patent is attached hereto as Exhibit 2.

29.     Masimo is the owner by assignment of U.S. Patent No. 10,292,628 entitled "Multi-stream data collection system for noninvasive measurement of blood constituents" ("the '628 patent"), which the United States Patent and Trademark Office lawfully and duly issued on May 21, 2019.  A true and correct copy of the '628 patent is attached hereto as Exhibit 3.

30.     Masimo is the owner by assignment of U.S. Patent No. 10,299,708 entitled "Multi-stream data collection system for noninvasive measurement of blood constituents" ("the '708 patent"), which the United States Patent and

Trademark Office lawfully and duly issued on May 21, 2019. A true and correct copy of the '708 patent is attached hereto as Exhibit 4.

31. Masimo is the owner by assignment of U.S. Patent No. 10,376,190 entitled "Multi-stream data collection system for noninvasive measurement of blood constituents" ("the '190 patent"), which the United States Patent and Trademark Office lawfully and duly issued on August 13, 2019. A true and correct copy of the '190 patent is attached hereto as Exhibit 5.

32. Masimo is the owner by assignment of U.S. Patent No. 10,376,191 entitled "Multi-stream data collection system for noninvasive measurement of blood constituents" ("the '191 patent"), which the United States Patent and Trademark Office lawfully and duly issued on August 13, 2019. A true and correct copy of the '191 patent is attached hereto as Exhibit 6.

33. Masimo is the owner by assignment of U.S. Patent No. 10,470,695 entitled "Advanced pulse oximetry sensor" ("the '695 patent"), which the United States Patent and Trademark Office lawfully and duly issued on November 12, 2019. A true and correct copy of the '695 patent is attached hereto as Exhibit 7.

34. Masimo is the owner by assignment of U.S. Patent No. 6,771,994 entitled "Pulse oximeter probe-off detection system" ("the '994 patent"), which the United States Patent and Trademark Office lawfully and duly issued on August 3, 2004. A true and correct copy of the '994 patent is attached hereto as Exhibit 8.

35. Masimo is the owner by assignment of U.S. Patent No. 8,457,703 entitled "Low power pulse oximeter" ("the '703 patent"), which the United States Patent and Trademark Office lawfully and duly issued on June 4, 2013. A true and correct copy of the '703 patent is attached hereto as Exhibit 9.

36. Masimo is the owner by assignment of U.S. Patent No. 10,433,776 entitled "Low power pulse oximeter" ("the '776 patent"), which the United

States Patent and Trademark Office lawfully and duly issued on October 8, 2019. A true and correct copy of the '776 patent is attached hereto as Exhibit 10.

37. Masimo is the owner by assignment of U.S. Patent No. 10,588,553 entitled "Multi-Stream Data Collection System For Noninvasive Measurement of Blood Constituents" ("the '553 patent"), which the United States Patent and Trademark Office lawfully and duly issued on March 17, 2020. A true and correct copy of the '553 patent is attached hereto as Exhibit 11.

38. Masimo is the owner by assignment of U.S. Patent No. 10,588,554 entitled "Multi-Stream Data Collection System For Noninvasive Measurement of Blood Constituents" ("the '554 patent"), which the United States Patent and Trademark Office lawfully and duly issued on March 17, 2020. A true and correct copy of the '554 patent is attached hereto as Exhibit 12.

## VI. **THE DISPUTED LAMEGO PATENTS**

39. Lamego is named as an inventor on U.S. Provisional Patent Application No. 62/043,294, filed Aug. 28, 2014 and titled "Reflective Surface Treatments for Optical Sensors." Related applications that also name Lamego as an inventor include U.S Patent Application Nos. 14/740,196 and 16/114,003, which issued as U.S. Patent Nos. 10,078,052 and 10,247,670.

40. Lamego is also named as an inventor on U.S. Provisional Patent Application No. 62/047,818, filed Sep. 9, 2014, entitled "Modulation and Demodulation Techniques for a Health Monitoring System." A related application that names Lamego as the sole inventor includes U.S Patent Application No. 14/621,268, which issued as U.S. Patent No. 10,219,754.

41. Lamego is also named as an inventor on U.S. Provisional Patent Application No. 62/056,299, filed on Sep. 26, 2014, and entitled "Electronic Device that Computes Health Data." Related applications that also name Lamego as the sole inventor include U.S Patent Application Nos. 14/617,422,

15/667,832, and 16/700,710.  The '422 Application issued as U.S. Patent No. 9,723,997 and the '832 Application issued as U.S. Patent No. 10,524,671.

42.     Lamego is also named as an inventor on U.S. Provisional Patent Application No. 62/057,089, filed on Sep. 29, 2014, and entitled "Methods and Systems for Modulation and Demodulation of Optical Signals."   Related applications that also name Lamego as an inventor include U.S Patent Application Nos. 14/618,664 and 15/960,507.  The '664 Application issued as U.S. Patent No. 9,952,095.

## VII.  <u>FIRST CAUSE OF ACTION</u>
## <u>(INFRINGEMENT OF U.S. PATENT NO. 10,258,265)</u>

43.     Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

44.     Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claims 1-3, 6-11, 13, 17, and 17-25 of the '265 patent under at least 35 U.S.C. § 271(a), (b), and (c).

45.     Upon information and belief, Defendant has directly infringed one or more claims of the '265 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

46.     For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the '265 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 13.  The Apple Watch Series 4 and later devices are adapted to be worn by a wearer and provide an indication of a physiological parameter (for example, heart rate) of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:

Case 8:20-cv-00048-JVS-JDE   Document 43-3   Filed 04/20/20   Page 173 of 272   Page ID
Case 8:20-cv-00048-JVS-JDE   Document 24-3   Filed 03/25/20   Page 15 of 95   Page ID #:1525
#:3185



47.     The Apple Watch Series 4 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared LEDs) and at least four detectors (for example, photodiode sensors) spaced apart from each other as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



48.     The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

49.     Upon information and belief, the relevant technology in the Apple Watch Series 4 and later devices is described in the below citations to U.S. Patent Application Publication 2019/0072912 (the '912 publication). A copy of the publication is attached as Exhibit 25. The Apple Watch Series 4 and later devices include a housing having a surface and a circular wall protruding from the surface, and a light permeable cover arranged above a portion of the housing and covering the detectors. Fig. 4C and the corresponding text of the '912 publication show, for example, such housing:



50.     Upon information and belief, Defendant has knowledge of Masimo's patents, including the '265 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed provisional patent applications that led to the '265 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor. Lamego is a named inventor of

the '265 patent. Defendant had knowledge of the '265 patent no later than the filing of the original Complaint.

51.    Upon information and belief, Defendant has actively induced others to infringe the '265 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '265 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be used to infringe the '265 patent. Defendant's acts constitute infringement of the '265 patent in violation of 35 U.S.C. § 271(b).

52.    Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '265 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '265 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

53.    Upon information and belief, Defendant's acts constitute contributory infringement of the '265 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '265 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '265 patent.

54.     Defendant's infringement of the '265 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '265 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

55.     Because of Defendant's infringement of the '265 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

56.     Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## VIII.  SECOND CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,258,266)

57.     Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

58.     Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claims 1-19 of the '266 patent under at least 35 U.S.C. § 271(a), (b), and (c).

59.     Upon information and belief, Defendant has directly infringed one or more claims of the '266 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

60.     For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices 4 and 5 devices include all of the limitations of Claim 1 of the '266 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 14.  The Apple Watch Series 4 and later devices provide an indication of a physiological parameter (for example, heart rate) of the

Case 8:20-cv-00048-JVS-JDE  Document 43-3  Filed 04/20/20  Page 177 of 272  Page ID
Case 8:20-cv-00048-JVS-JDE  Document 23-1  Filed 03/25/20  Page 97 of 95  Page ID #:1329
#:3189

wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



61.    The Apple Watch Series 4 and later devices include a plurality of emitters that emit light into tissue of a user and a plurality of detectors (for example, photodiode sensors) that detect light that has been attenuated by tissue of the user as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



62.    The Apple Watch Series 4 and later devices include a housing configured to house the detectors and a lens located between the tissue of the

Case 8:20-cv-00048-JVS-JDE Document 43-3 Filed 04/20/20 Page 179 of 272 Page ID
Case 8:20-cv-00048-JVS-JDE Document 28-3 Filed 03/25/20 Page 18 of 95 Page ID:1330
#:3190

user and the detectors. Fig. 4C and the corresponding text of the '912 publication show, for example, such housing:



**FIG. 4C**

63. Upon information and belief, the lens has a single outwardly protruding convex surface configured to cause tissue of the user to conform to the protruding convex surface during operation of the noninvasive optical physiological sensor.

64. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '266 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed provisional patent applications that led to the '266 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor. Lamego is a named inventor of the '266 patent. Defendant had knowledge of the '266 patent no later than the filing of the original Complaint.

65.    Upon information and belief, Defendant has actively induced others to infringe the '266 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '266 patent.  To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be used to infringe the '266 patent.  Defendant's acts constitute infringement of the '266 patent in violation of 35 U.S.C. § 271(b).

66.    Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '266 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '266 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices.  Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

67.    Upon information and belief, Defendant's acts constitute contributory infringement of the '266 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices that constitute material parts of the invention of the asserted claims of the '266 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '266 patent.

68.    Defendant's infringement of the '266 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of

-18-

the '266 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

69.     Because of Defendant's infringement of the '266 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

70.     Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## IX.  THIRD CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,292,628)

71.     Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

72.     Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '628 patent under at least 35 U.S.C. § 271(a), (b), and (c).

73.     Upon information and belief, Defendant has directly infringed one or more claims of the '628 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

74.     For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the '628 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 15.

75.     The Apple Watch Series 4 and later devices include a housing configured to house a plurality of detectors. Fig. 4C and the corresponding text of the '912 publication show, for example, such housing:

FIG. 4C

76.     The Apple Watch Series 4 and later devices include a plurality of emitters that emit light into tissue of a user and a plurality of detectors that detect light that has been attenuated by tissue of the user as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:

Case 8:20-cv-00048-JVS-JDE   Document 143-3   Filed 04/20/20   Page 182 of 272   Page ID
#:3194
Case 8:20-cv-00048-JVS-JDE   Document 23-1   Filed 03/25/20   Page 22 of 35   Page ID #:1334



77.   The Apple Watch Series 4 and later devices include a light permeable cover configured to be located between tissue of the user and the plurality of detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises an outwardly protruding convex surface configured to cause tissue of the user to conform to at least a portion of the outwardly protruding convex surface when the noninvasive optical physiological sensor is worn by the user and during operation of the noninvasive optical physiological sensor, and wherein the plurality of detectors are configured to receive light passed through the outwardly protruding convex surface after attenuation by tissue of the user.  Fig. 4C and the corresponding text of the '912 publication show, for example, such cover:

-21-



FIG. 4C

78.     Upon information and belief, Defendant has knowledge of Masimo's patents, including the '628 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.  Masimo filed provisional patent applications that led to the '628 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Lamego is a named inventor of the '628 patent.  Defendant had knowledge of the '628 patent no later than the filing of the original Complaint.

79.     Upon information and belief, Defendant has actively induced others to infringe the '628 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '628 patent.  To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be

used to infringe the '628 patent. Defendant's acts constitute infringement of the '628 patent in violation of 35 U.S.C. § 271(b).

80. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '628 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '628 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

81. Upon information and belief, Defendant's acts constitute contributory infringement of the '628 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '628 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '628 patent.

82. Defendant's infringement of the '628 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '628 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

83. Because of Defendant's infringement of the '628 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

84.     Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## X.  FOURTH CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,299,708)

85.     Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

86.     Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '708 patent under at least 35 U.S.C. § 271(a), (b), and (c).

87.     Upon information and belief, Defendant has directly infringed one or more claims of the '708 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

88.     For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the '708 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 16.  The Apple Watch Series 4 and later devices are adapted to be worn by a wearer and provide an indication of a physiological parameter (for example, heart rate) of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



89.    The Apple Watch Series 4 and later devices include a platform including a planar surface, a housing including a raised edge portion extending from and enclosing at least a portion of the planar surface, and the housing including a protruding light permeable cover. Fig. 4C and the corresponding text of the '912 publication show, for example, such platform and housing:



FIG. 4C

90.    Upon information and belief, the Apple Watch Series 4 and later devices include at least four detectors (for example, photodiode sensors) arranged on the planar surface of the platform and within the housing, wherein the at least four detectors are arranged in a grid pattern such that a first detector and a second detector are arranged across from each other on opposite sides of a central point along a first axis, and a third detector and a fourth detector are arranged across from each other on opposite sides of the central point along a second axis which is perpendicular to the first axis as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



91.    Upon information and belief, Defendant has knowledge of Masimo's patents, including the '708 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.  Masimo filed provisional patent applications that led to the '708 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Lamego is a named inventor of the '708 patent.  Defendant had knowledge of the '708 patent no later than the filing of the original Complaint.

92.    Upon information and belief, Defendant has actively induced others to infringe the '708 patent by marketing and selling the above Apple

Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '708 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be used to infringe the '708 patent. Defendant's acts constitute infringement of the '708 patent in violation of 35 U.S.C. § 271(b).

93. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '708 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '708 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

94. Upon information and belief, Defendant's acts constitute contributory infringement of the '708 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '708 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '708 patent.

95. Defendant's infringement of the '708 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '708 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

96.     Because of Defendant's infringement of the '708 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

97.     Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XI.  FIFTH CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,376,190)

98.     Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

99.     Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '190 patent under at least 35 U.S.C. § 271(a), (b), and (c).

100.    Upon information and belief, Defendant has directly infringed one or more claims of the '190 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

101.    For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the '190 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 17.  The Apple Watch Series 4 and later devices are noninvasive optical physiological measurement devices adapted to be worn by a wearer, the noninvasive optical physiological measurement device providing an indication of a physiological parameter (for example, heart rate) of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



102.   Upon information and belief, the Apple Watch Series 4 and later devices include light emitters and at least four detectors spaced apart from each other and configured to output one or more signals responsive to light from the one or more light emitters attenuated by body tissue, the one or more signals indicative of a physiological parameter of the wearer as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



103.   The Apple Watch Series 4 and later devices include a housing having a surface and a circular raised edge extending from the surface, and a

-29-

light permeable cover arranged above at least a portion of the housing, the light permeable cover comprising a protrusion arranged to cover the at least four detectors. Fig. 4C and the corresponding text of the '912 publication show, for example, such housing:



FIG. 4C

104. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '190 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed provisional patent applications that led to the '190 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor. Lamego is a named inventor of the '190 patent. Defendant had knowledge of the '190 patent no later than the filing of the original Complaint.

105. Upon information and belief, Defendant has actively induced others to infringe the '190 patent by marketing and selling the above Apple

Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '190 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be used to infringe the '190 patent. Defendant's acts constitute infringement of the '190 patent in violation of 35 U.S.C. § 271(b).

106. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '190 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '190 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

107. Upon information and belief, Defendant's acts constitute contributory infringement of the '190 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '190 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '190 patent.

108. Defendant's infringement of the '190 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '190 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

109.   Because of Defendant's infringement of the '190 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

110.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XII.  SIXTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,376,191)

111.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

112.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '191 patent under at least 35 U.S.C. § 271(a), (b), and (c).

113.   Upon information and belief, Defendant has directly infringed one or more claims of the '191 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

114.   For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the '191 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 18.   The Apple Watch Series 4 and later devices are a noninvasive optical physiological sensor as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:

Case 8:20-cv-00048-JVS-JDE  Document 43-3  Filed 04/20/20  Page 194 of 272  Page ID
Case 8:20-cv-00048-JVS-JDE  Document 23-1  Filed 03/25/20  Page 34 of 95  Page ID #:1946
#:3206



115.   The Apple Watch Series 4 and later devices include a plurality of emitters configured to emit light into tissue of a user and a plurality of detectors configured to detect light that has been attenuated by tissue of the user, wherein the plurality of detectors comprise at least four detectors as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



116.   The Apple Watch Series 4 and later devices include a housing configured to house at least the plurality of detectors in a circular portion of the housing, and a lens configured to be located between tissue of the user and the

-33-

plurality of detectors when the noninvasive optical physiological sensor is worn by the user, wherein the lens comprises a single outwardly protruding convex surface configured to cause tissue of the user to conform to at least a portion of the single outwardly protruding convex surface when the noninvasive optical physiological sensor is worn by the user and during operation of the noninvasive optical physiological sensor. Fig. 4C and the corresponding text of the '912 publication show, for example, such housing and lens:



117.	Upon information and belief, Defendant has knowledge of Masimo's patents, including the '191 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed provisional patent applications that led to the '191 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor. Lamego is a named inventor of

the '191 patent.  Defendant had knowledge of the '191 patent no later than the filing of the original Complaint.

118.  Upon information and belief, Defendant has actively induced others to infringe the '191 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '191 patent.  To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be used to infringe the '191 patent.  Defendant's acts constitute infringement of the '191 patent in violation of 35 U.S.C. § 271(b).

119.  Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '191 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '191 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices.  Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

120.  Upon information and belief, Defendant's acts constitute contributory infringement of the '191 patent in violation of 35 U.S.C. § 271(c).  Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices that constitute material parts of the invention of the asserted claims of the '191 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '191 patent.

121. Defendant's infringement of the '191 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '191 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

122. Because of Defendant's infringement of the '191 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

123. Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

### XIII. SEVENTH CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,470,695)

124. Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

125. Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '695 patent under at least 35 U.S.C. § 271(a), (b), and (c).

126. Upon information and belief, Defendant has directly infringed one or more claims of the '695 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

127. For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the '695 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 19. The Apple Watch Series 4 and later devices are a wrist-worn physiological monitoring device configured for placement on a user at a tissue

Case 8:20-cv-00048-JVS-JDE Document 43-3 Filed 04/20/20 Page 199 of 272 Page ID
Case 8:20-cv-00048-JVS-JDE Document 23-3 Filed 03/25/20 Page 96 of 95 Page ID#:1530
#:3210

measurement site as shown in the image below found on the Apple website at
https://www.apple.com/apple-watch-series-4/health/:



128. The Apple Watch Series 4 and later devices include a light
emission source comprising a plurality of emitters configured to irradiate the
tissue measurement site by emitting light towards the tissue measurement site,
the tissue measurement site being located on a wrist of the user, the plurality of
emitters configured to emit one or more wavelengths and a plurality of detectors
configured to detect the light emitted by the plurality of emitters after
attenuation by a circular portion of the tissue measurement site, the plurality of
detectors further configured to output at least one signal responsive to the
detected light as shown in the image below found on the Apple website at
https://support.apple.com/en-us/HT204666:



129. The Apple Watch Series 4 and later devices include a processor configured to receive the at least one signal responsive to the output and determine a physiological parameter of the user and a light block forming an enclosing wall between the light emission source and the plurality of detectors, the light block defining the circular portion of the tissue measurement site, the light emission source arranged proximate a first side of the enclosing wall and the plurality of detectors arranged proximate a second side of the enclosing wall, the first side being different than the second side, wherein the enclosing wall prevents at least a portion of light emitted from the light emission source from being detected by the plurality of detectors without attenuation by the tissue, and wherein the plurality of detectors are arranged in an array having a spatial configuration corresponding to the portion of the tissue measurement site. Fig. 4C and the corresponding text of the '912 publication show, for example, such light block:



FIG. 4C

130. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '695 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed provisional patent applications that led to the '695 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor. Lamego is a named inventor of the '695 patent. Defendant had knowledge of the '695 patent no later than the filing of the original Complaint.

131. Upon information and belief, Defendant has actively induced others to infringe the '695 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '695 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be used to infringe the '695 patent. Defendant's acts constitute infringement of the '695 patent in violation of 35 U.S.C. § 271(b).

132.   Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '695 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '695 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices.  Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

133.   Upon information and belief, Defendant's acts constitute contributory infringement of the '695 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices that constitute material parts of the invention of the asserted claims of the '695 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '695 patent.

134.   Defendant's infringement of the '695 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '695 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

135.   Because of Defendant's infringement of the '695 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

136.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby

causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XIV.  EIGHTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 6,771,994)

137.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

138.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 15 of the '994 patent under at least 35 U.S.C. § 271(a), (b), and (c).

139.   Upon information and belief, Defendant has directly infringed one or more claims of the '994 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

140.   For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 15 of the '994 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 20.  Upon information and belief, the Apple Watch Series 4 and later devices detects light transmitted through body tissue carrying pulsing blood to determine heart rate as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:

Case 8:20-cv-00048-JVS-JDE   Document 43-3   Filed 04/20/20   Page 203 of 272   Page ID
Case 8:20-cv-00048-JVS-JDE   Document 23-1   Filed 03/25/20   Page 43 of 95   Page ID #:1535
#:3215



141.   The Apple Watch Series 4 and later devices include at least one light emission device and a light sensitive detector as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



142.   The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

143.   Upon information and belief, the relevant technology in the Apple Watch Series 4 and later devices is described in the below citations to U.S. Patent Application Publication 2019/0090806 (the '806 publication).  A copy of

Case 8:20-cv-00048-JVS-JDE Document 243-3 Filed 04/20/20 Page 204 of 272 Page ID
Case 8:20-cv-00048-JVS-JDE Document 243-3 Filed 03/25/20 Page 44 of 95 Page ID 1336
#:3216

the publication is attached as Exhibit 26.  The Apple Watch Series 4 and later devices include a plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through body tissue carrying pulsing blood, wherein the louvers accept the light when the sensor is properly applied to tissue of a patient.  Upon information and belief, this technology is described, for example, in Fig. 7 and the corresponding text of the '806 publication:



FIG. 7

144.  Upon information and belief, Defendant has knowledge of Masimo's patents, including the '994 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.  Masimo filed a patent application that led to the '994 patent on June 16, 2000.  The '994 patent issued on August 3, 2004, and Masimo has maintained the patent while O'Reilly and Lamego were with Masimo and/or Cercacor.  Defendant had knowledge of the '994 patent no later than the filing of the original Complaint.

145.  Upon information and belief, Defendant has actively induced others to infringe the '994 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '994 patent.  To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be used to infringe the '994 patent.  Defendant's acts constitute infringement of the '994 patent in violation of 35 U.S.C. § 271(b).

146.  Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '994 patent.  By way of example

Case 8:20-cv-00048-JVS-JDE   Document 243-3   Filed 03/25/20   Page 205 of 272   Page ID
#:3217
Case 8:20-cv-00048-JVS-JDE   Document 243-3   Filed 03/25/20   Page 45 of 55   Page ID #:1537

only, upon information and belief, Defendant actively induces direct infringement of the '994 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

147. Upon information and belief, Defendant's acts constitute contributory infringement of the '994 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices that constitute material parts of the invention of the asserted claims of the '994 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '994 patent.

148. Defendant's infringement of the '994 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '994 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

149. Because of Defendant's infringement of the '994 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

150. Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XV. NINTH CAUSE OF ACTION

## (INFRINGEMENT OF U.S. PATENT NO. 8,457,703)

151. Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

152. Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '703 patent under at least 35 U.S.C. § 271(a), (b), and (c).

153. Upon information and belief, Defendant has directly infringed one or more claims of the '703 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

154. For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the '703 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 21. The Apple Watch Series 4 and later devices provide an indication of a physiological parameter (for example, heart rate) of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



155.   The Apple Watch Series 4 and later devices drive one or more light sources configured to emit light into tissue and receives one or more signals from one or more detectors configured to detect light after attenuation by tissue as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



156.   The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

157.   Upon information and belief, the Apple Watch Series 4 and later devices continuously operate at a lower power consumption level to determine measurement values for heart rate, as described at https://support.apple.com/en-us/HT204666:

The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment.

When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.

158.    Upon information and belief, the Apple Watch Series 4 and later devices as described above compare processing characteristics to a predetermined threshold, and when the processing characteristics pass the threshold, the Apple Watch Series 4 and later devices transition to continuously operating at a higher power consumption level, wherein the continuously operating at the lower power consumption level comprises reducing activation of an attached sensor, the sensor positioning the light sources and the detectors proximate to the tissue.

159.    Upon information and belief, Defendant has knowledge of Masimo's patents, including the '703 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.  Masimo filed a provisional patent application that led to the '703 patent on July 2, 2001.  The '703 patent issued on June 4, 2013, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Defendant had knowledge of the '703 patent no later than the filing of the original Complaint.

160.    Upon information and belief, Defendant has actively induced others to infringe the '703 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '703 patent.  To that end, Defendant provides instructions and teachings to its

customers and end users that such Apple Watch Series 4 and later devices be used to infringe the '703 patent. Defendant's acts constitute infringement of the '703 patent in violation of 35 U.S.C. § 271(b).

161. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '703 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '703 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

162. Upon information and belief, Defendant's acts constitute contributory infringement of the '703 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices that constitute material parts of the invention of the asserted claims of the '703 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '703 patent.

163. Defendant's infringement of the '703 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '703 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

164. Because of Defendant's infringement of the '703 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

165.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XVI.  TENTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,433,776)

166.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

167.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '776 patent under at least 35 U.S.C. § 271(a), (b), and (c).

168.   Upon information and belief, Defendant has directly infringed one or more claims of the '776 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

169.   For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the '776 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 22.   The Apple Watch Series 4 and later devices are configured to monitor at least a pulse rate of a patient by processing signals responsive to light attenuated by body tissue of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:

Case 8:20-cv-00048-JVS-JDE Document 43-3 Filed 04/20/20 Page 211 of 272 Page ID
Case 8:20-cv-00048-JVS-JDE Document 28-1 Filed 03/25/20 Page 52 of 95 Page ID #:1863
#:3223



170. The Apple Watch Series 4 and later devices drive one or more light sources configured to emit light into tissue and receives one or more signals from one or more detectors configured to detect light after attenuation by tissue as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



171. Upon information and belief, the Apple Watch Series 4 and later devices operate according to a first control protocol, wherein said operating includes activating a first control protocol light source in accordance with the

first control protocol, the first control protocol light source including one or more of a plurality of light sources, and when operating according to the first control protocol, calculating, by the patient monitor, measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source, detected by a detector of an optical sensor after attenuation by body tissue of the patient using the patient monitor as explained, for example, on the Apple website at https://support.apple.com/en-us/HT204666. That webpage explains the optical heart sensor uses photoplethysmography. "Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate." That webpage further explains that the "optical heart sensor can also use infrared light. This mode is what Apple Watch uses when it measures your heart rate in the background, and for heart rate notifications. Apple Watch uses green LED lights to measure your heart rate during workouts and Breathe sessions, and to calculate walking average and Heart Rate Variability (HRV)."

172.   Upon information and belief, the Apple Watch Series 4 and later devices generate a trigger signal, wherein generating said trigger signal is responsive to at least one of: a comparison of processing characteristics to a predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector, and in response to receiving the trigger signal, operating the patient monitor according to a second control protocol

different from the first control protocol, wherein said operating includes activating a second control protocol light source in accordance with the second control protocol, the second control protocol light source including one or more of the plurality of light sources, and when operating the patient monitor according to the second control protocol, calculating the measurement values of the pulse rate, the measurement values responsive to light from the second control protocol light source, detected by the detector after attenuation by the body tissue of the patient using the patient monitor, wherein said operating of the patient monitor according to the first control protocol operates the first control protocol light source according to a first duty cycle and said operating of the patient monitor according to the second control protocol operates the second control protocol light source according to a second duty cycle, wherein power consumption of the first control protocol light source according to the first duty cycle is different than power consumption of the second control protocol light source according to the second duty cycle.

173. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '776 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed a provisional patent application that led to the '776 patent on July 2, 2001. The '776 patent issued on June 4, 2013, while O'Reilly and Lamego were with Masimo and/or Cercacor. Defendant had knowledge of the '776 patent no later than the filing of the original Complaint.

174. Upon information and belief, Defendant has actively induced others to infringe the '776 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '776 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be

used to infringe the '776 patent.  Defendant's acts constitute infringement of the '776 patent in violation of 35 U.S.C. § 271(b).

175.   Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '776 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '776 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices.   Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

176.  Upon information and belief, Defendant's acts constitute contributory infringement of the '776 patent in violation of 35 U.S.C. § 271(c).  Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices that constitute material parts of the invention of the asserted claims of the '776 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '776 patent.

177.   Defendant's infringement of the '776 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '776 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

178.  Because of Defendant's infringement of the '776 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

-53-

179.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XVII.  ELEVENTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,588,553)

180.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

181.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '553 patent under at least 35 U.S.C. § 271(a), (b), and (c).

182.   Upon information and belief, Defendant has directly infringed one or more claims of the '553 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

183.   For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the '553 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 23.  The Apple Watch Series 4 and later devices are noninvasive optical physiological sensor devices as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



184.  The Apple Watch Series 4 and later devices include a plurality of emitters configured to emit light into tissue of a user, and at least four detectors, wherein at least one of the at least four detectors is configured to detect light that has been attenuated by tissue of the user, and wherein the at least four detectors are arranged on a substrate as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



185.  The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

186.   Upon information and belief, the relevant technology in the Apple Watch Series 4 and later devices is described in the below citations to U.S. Patent Application Publication 2019/0072912 (the '912 publication).  A copy of the publication is attached as Exhibit 25.  The Apple Watch Series 4 and later devices include a wall configured to circumscribe at least the at least four detectors and a cover configured to be located between tissue of the user and the at least four detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises a single protruding convex surface operable to conform tissue of the user to at least a portion of the single protruding convex surface when the noninvasive optical physiological sensor is worn by the user, and wherein the wall operably connects to the substrate and the cover.  Fig. 4C and the corresponding text of the '912 publication show, for example, such wall and cover:



FIG. 4C

187. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '553 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed provisional patent applications that led to the '553 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor. Lamego is a named inventor of the '553 patent. Defendant had knowledge of the '553 patent no later than the filing of this First Amended Complaint.

188. Upon information and belief, Defendant has actively induced others to infringe the '553 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '553 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be used to infringe the '553 patent. Defendant's acts constitute infringement of the '553 patent in violation of 35 U.S.C. § 271(b).

189. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '553 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '553 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

190. Upon information and belief, Defendant's acts constitute contributory infringement of the '553 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4

and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '553 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '553 patent.

191. Defendant's infringement of the '553 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '553 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

192. Because of Defendant's infringement of the '553 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

193. Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XVIII. TWELFTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,588,554)

194. Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

195. Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 21 of the '554 patent under at least 35 U.S.C. § 271(a), (b), and (c).

196. Upon information and belief, Defendant has directly infringed one or more claims of the '554 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

197.   For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices in combination with iPhone devices include all of the limitations of Claim 21 of the '554 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 24.  The Apple Watch Series 4 and later devices are physiological measurement systems with physiological sensors as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



198.   The Apple Watch Series 4 and later devices include a plurality of emitters configured to emit light into tissue of a user, and at least four detectors, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:

Case 8:20-cv-00048-JVS-JDE  Document 43-3  Filed 04/20/20  Page 221 of 272  Page ID
Case 8:20-cv-00048-JVS-JDE  Document 23-1  Filed 03/25/20  Page 62 of 95  Page ID #:1573
#:3233



199.  The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

200.  Upon information and belief, the relevant technology in the Apple Watch Series 4 and later devices is described in the below citations to U.S. Patent Application Publication 2019/0072912 (the '912 publication).  A copy of the publication is attached as Exhibit 25.  The Apple Watch Series 4 and later devices include a wall that surrounds at least the at least four detectors, a cover comprising a single protruding convex surface, wherein the single protruding convex surface is configured to be located between tissue of the user and the at least four detectors when the physiological sensor device is worn by the user, wherein at least a portion of the single protruding convex surface is sufficiently rigid to cause tissue of the user to conform to at least a portion of a shape of the single protruding convex surface when the physiological sensor device is worn by the user, and wherein the cover operably connects to the wall.  Fig. 4C and the corresponding text of the '912 publication show, for example, such wall and cover:

Case 8:20-cv-00048-JVS-JDE Document 43-3 Filed 04/20/20 Page 229 of 272 Page ID
Case 8:20-cv-00048-JVS-JDE Document 28-3 Filed 03/25/20 Page 62 of 95 Page ID #:1574
#:3234



**FIG. 4C**

201. The Apple Watch Series 4 and later devices communicate wirelessly with handheld computing devices as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666 and as further described at https://support.apple.com/en-us/HT204505:



202. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '554 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed provisional patent applications that led to the '554 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor. Lamego is a named inventor of the '554 patent. Defendant had knowledge of the '554 patent no later than the filing of this First Amended Complaint.

203. Upon information and belief, Defendant has actively induced others to infringe the '554 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '554 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be used to infringe the '554 patent. Defendant's acts constitute infringement of the '554 patent in violation of 35 U.S.C. § 271(b).

204. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '554 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '554 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

205. Upon information and belief, Defendant's acts constitute contributory infringement of the '554 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4

and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '554 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '554 patent.

206. Defendant's infringement of the '554 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '554 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

207. Because of Defendant's infringement of the '554 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

208. Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XIX. THIRTEENTH CAUSE OF ACTION
### (TRADE SECRET MISAPPROPRIATION UNDER CALIFORNIA'S UNIFORM TRADE SECRET ACT)

209. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 42.

210. This is a cause of action for Misappropriation of Trade Secrets under California's Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq.*, based upon Defendant's wrongful and improper acquisition, use, and disclosure of confidential and proprietary trade secret information of Plaintiffs.

211. Plaintiffs own trade secrets that include, but are not limited to, Plaintiffs' technical information, sales and marketing information, and other business information relating to non-invasive monitoring of physiological

parameters and products to perform such monitoring. Plaintiffs' technical information includes product plans, engineering plans, product briefs, technical drawings, technical specifications, technical data, product designs, system designs, design captures, assembly design requirements, risk analysis, test procedures and results, test data, design review documents, software requirement specifications, technical know-how, manufacturing techniques and procedures, installation techniques and procedures, and invention disclosures. Plaintiffs' sales and marketing information includes product plans, business plans, customer information, sales pipelines, proposal and quote generation tools, pricing models, pricing schedules, sales training materials, product training materials, marketing and launch plans, marketing analysis, and competitive analysis. Plaintiffs' other business information includes information for successfully operating a non-invasive patient monitoring company, including personnel information, supplier information, and other business spreadsheets and analysis. Plaintiffs trade secrets also include combinations and selections of the above information, and knowledge of the varying importance of the information. Plaintiffs trade secrets also include knowledge for selecting which information and technology are important for improving reliability, improving measurements, and how to successfully combine and implement them to achieve the desired functionality. Plaintiffs' trade secrets also include negative information, what works well under certain conditions, and trade-offs of selecting certain techniques. The aforementioned information is referred to herein as Plaintiffs' "Confidential Information."

212. Plaintiffs' Confidential Information is currently or was, at least at the time of Defendant's misappropriation, not generally known to the public or to other persons who can obtain economic value from its disclosure or use. All individuals with access to Plaintiffs' Confidential Information were instructed to keep it confidential, and they were subject to obligations to keep Plaintiffs' Confidential Information secret. For example, Plaintiffs marked documents

confidential, and instructed those individuals with access to the information to treat it as confidential, restricted access to the information, and required individuals and companies to enter into confidentiality agreements with Plaintiffs in order to receive Plaintiffs' Confidential Information.

213. Plaintiffs' Confidential Information derives independent economic value, actual and potential, because it is, or was at the time of Defendant's misappropriation, not generally known to the public or to other persons who can obtain economic value from its disclosure or use. The actual and potential independent economic value of Plaintiffs' Confidential Information is derived from not being generally known because it gives or gave Plaintiffs an actual and potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use. If others obtained access to Plaintiffs' Confidential Information, they could use the information to deprive Plaintiffs of the business advantage it has over others, as well as to themselves obtain a business advantage over others.

214. Plaintiffs made reasonable efforts under the circumstances to keep Plaintiffs' Confidential Information from becoming generally known. For example, Plaintiffs' efforts included marking documents confidential, instructing individuals with access to the information to treat it as confidential, restricting access to the information, and requiring individuals and companies to enter into confidentiality agreements with Plaintiffs in order to receive Plaintiffs' Confidential Information. Accordingly, Plaintiffs' Confidential Information constitutes a "trade secret" pursuant to Cal. Civ. Code § 3426.1.

215. Plaintiffs are informed and believe, and thereon allege, that Defendant misappropriated Plaintiffs' Confidential Information by acquisition at least from Plaintiffs' former employees who left Plaintiffs to work for Defendant. For example, upon information and belief, Lamego disclosed Plaintiffs' Confidential Information, without Plaintiffs' consent, to Defendant. At the time of

disclosure, Lamego knew, or had reason to know, that his knowledge of Plaintiffs'
Confidential Information was acquired by an employer-employee relationship,
fiduciary relationship, and Lamego's employment agreements, which created a
duty for Lamego to keep Plaintiffs' Confidential Information secret. Lamego also
knew, or had reason to know, that disclosing Plaintiffs' Confidential Information
to Defendant constituted a breach of those obligations.

216. At the time of acquisition, Defendant also knew, or had reason to
know, that Lamego obtained Plaintiffs' Confidential information pursuant to a
duty or obligation to keep Plaintiffs' Confidential information secret. This duty or
obligation arose from an employer-employee relationship, fiduciary relationship,
and Lamego's employment agreements. Among other things, Defendant knew
Lamego was the Chief Technical Officer of Cercacor and a Research Scientist at
Masimo. Defendant knew Lamego was under a duty to maintain the secrecy of
the information he obtained from Plaintiffs. Defendant knew Plaintiffs
considered the information confidential by virtue of its prior relationship with
Plaintiffs. Defendant had also received a letter dated January 24, 2014, from
Plaintiffs explaining that Lamego possessed Plaintiffs' Confidential Information,
asking Defendant not to use such information, and attaching a copy of Lamego's
Employee Confidentiality Agreement with Cercacor. Nevertheless, Defendant
induced Lamego to disclose Plaintiffs' Confidential Information and Lamego
disclosed Plaintiffs' Confidential Information for the benefit of Defendant while
employed by Defendant. Thus, Defendant acquired Plaintiffs' trade secrets
through the improper means of its employees breaching a duty to maintain secrecy
owed to Plaintiffs, as well as inducing its employees to breach a duty to maintain
secrecy owed to Plaintiffs.

217. Upon information and belief, Defendant used and disclosed
Plaintiffs' Confidential Information it obtained from Plaintiffs and their former
employees without Plaintiffs' express or implied consent. For example, Lamego

used and disclosed Plaintiffs' Confidential Information for the benefit of Defendant while employed by Defendant. As discussed above, Lamego knew or had reason to know that his knowledge of Plaintiffs' Confidential Information was acquired under circumstances giving rise to a duty to maintain its secrecy and limit its use.

218. Defendant further used and disclosed Plaintiffs' Confidential Information at least by incorporating it into Defendant's products and by filing patent applications containing Plaintiffs' Confidential Information, without Plaintiffs' express or implied consent. As discussed above, Defendant knew or had reason to know that its knowledge of Plaintiffs' Confidential Information came from Plaintiffs, Lamego's knowledge of Plaintiffs' Confidential Information came from Plaintiffs, and that Lamego had previously acquired Plaintiffs' Confidential Information by virtue of employer-employee and fiduciary relationships and the Lamego employment agreements, all of which created a duty for Lamego to keep Plaintiffs' Confidential Information secret.

219. Plaintiffs had no way of knowing, or learning, of Defendant's improper acquisition, use, or disclosure prior to January 10, 2017. Defendant did not publish Plaintiffs' Confidential Information in patent applications until after January 10, 2017, and the first product at issue was not announced until 2018. Additionally, based at least on Plaintiffs' conversations with Lamego, Plaintiffs' letter to Apple, and Plaintiffs' confidentiality agreement with Apple, Plaintiffs had no reason to suspect or believe that Defendant had ignored Plaintiffs' letter and improperly acquired, used, and disclosed Plaintiffs' Confidential Information until after Plaintiffs discovered patent applications published after January 10, 2017, and accused products announced in 2018.

220. Defendant and Lamego also led Plaintiffs to believe they intended to respect Plaintiffs' intellectual property rights and concealed Defendant's acquisition, use, and disclosure of Plaintiffs' Confidential Information. Plaintiffs

notified Defendant that Lamego possessed the Confidential Information on January 24, 2014. Defendant never informed Plaintiffs that Lamego had used or disclosed the Confidential Information. Defendant also requested non-publication of patent applications, which prevented Plaintiffs from learning of the contents of those applications until much later. For example, Defendant requested non-publication of the '268 Application (which issued as the '754 Patent), the '422 Application (which issued as the '997 Patent), and the '664 Application (which issued as the '095 Patent). On information and belief, Defendant requested non-publication of those applications to prevent Plaintiffs from learning those applications contained Plaintiffs' Confidential Information, and from learning the Defendant had acquired, used and disclosed Plaintiffs' Confidential Information.

221. Plaintiffs were harmed by Defendant's acquisition, use, and disclosure of Plaintiffs' Confidential Information, and Defendant's actions were substantial factors in causing Plaintiffs' harm. As a direct and proximate result of Defendant's willful, improper, and unlawful acquisition, use, and disclosure of Plaintiffs' trade secrets, Plaintiffs have suffered, and will continue to suffer, great harm and damage. Plaintiffs will continue to be irreparably damaged unless Defendant is enjoined from further use and disclosure of Plaintiffs' Confidential Information.

222. Defendant was unjustly enriched by Defendant's acquisition, use, and disclosure of Plaintiffs' Confidential Information, and Defendant's actions were substantial factors in causing Defendant to be unjustly enriched. Defendant was unjustly enriched because its misappropriation of Plaintiffs' Confidential Information caused Defendant to receive a benefit that it otherwise would not have achieved.

223. If neither damages nor unjust enrichment caused by Defendant's misappropriation of Plaintiffs' Confidential Information is provable at trial,

Plaintiffs are entitled to a reasonable royalty for the period of time that Defendant's use of Plaintiffs' Confidential Information could have been prohibited.

224.    The aforementioned acts of Defendant wrongfully misappropriating Plaintiffs' trade secrets were, and continue to be, willful and malicious, warranting an award of reasonable attorneys' fees, as provided by Cal. Civ. Code § 3426.4, and exemplary damages, as provided by Cal. Civ. Code §§ 3294 and 3426.3(c).

## XX.  FOURTEENTH CAUSE OF ACTION
## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,078,052)

225.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 42.

226.    Lamego is a named inventor of U.S. Patent 10,078,052 presently recorded as owned by Apple.  A true and correct copy of the '052 Patent is attached hereto as Exhibit 27.

227.    The '052 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '052 Patent recites an electronic device comprising a housing defining an aperture; an optical sensing system comprising a light emitter for emitting light through the aperture, the light emitter positioned adjacent the aperture; and a light detector for obtaining a first portion of the light after the first portion of the light reflects from an object; and a reflector disposed about the aperture and adapted to reflect a second portion of the light back into the object after the second portion of the light reflects from the object.  Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab.  Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '052 Patent, and should have been named as an inventor on the '052 Patent.

228.   In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

229.   Those assignments vested in Masimo all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '052 Patent and Masimo has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '052 Patent.

230.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '052 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '052 Patent and has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '052 Patent.

231.   Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '052 Patent by adding inventor Diab as a named inventor.

Case 8:20-cv-00048-JVS-JDE   Document 243-3   Filed 04/20/20   Page 233 of 272   Page ID
#:3244
Case 8:20-cv-00048-JVS-JDE   Document 1-23   Filed 03/25/20   Page 72 of 95   Page ID #:1334

# XXI. FIFTEENTH CAUSE OF ACTION
## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,247,670)

232. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 42.

233. Lamego is a named inventor of U.S. Patent 10,247,670 presently recorded as owned by Apple. A true and correct copy of the '670 Patent is attached hereto as Exhibit 28.

234. The '670 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees. For example, Claim 1 of the '670 Patent recites an electronic device comprising a housing with a surface; a reflective layer that is formed on the surface, wherein the reflective layer has first and second openings; a light emitter that emits light through the first opening; and a light detector that receives the light emitted by the light emitter through the second opening. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab. Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '670 Patent, and should have been named as an inventor on the '670 Patent.

235. In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

236. Those assignments vested in Masimo all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '670 Patent and Masimo has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '670 Patent.

237.    In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '670 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '670 Patent and has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '670 Patent.

238.    Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '670 Patent by adding inventor Diab as a named inventors.

## XXII.  SIXTEENTH CAUSE OF ACTION
## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 9,952,095)

239.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 42.

240.    Lamego is a named inventor of U.S. Patent 9,952,095 presently recorded as owned by Apple.  A true and correct copy of the '095 Patent is attached hereto as Exhibit 29.

241.    The '095 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '095 Patent recites an electronic device comprising a housing comprising a surface adapted to be positioned proximate a measurement site of a subject; a biometric sensor positioned at least partially within the surface and comprising: a plurality of light sources for emitting light toward the

measurement site at a selected modulation frequency; and an optical sensor for obtaining light exiting the measurement site; and an input amplifier coupled to the output of the biometric sensor and disposed within the housing; a high pass filter coupled to an output of the input amplifier and disposed within the housing, the high pass filter having a cutoff frequency above that of a periodic biometric property of the measurement site; an output amplifier coupled to an output of the high pass filter and disposed within the housing; and an analog to digital converter coupled to an output of the output amplifier and disposed within the housing. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab. Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '095 Patent, and should have been named as an inventor on the '095 Patent.

242. In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

243. Those assignments vested in Masimo all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '095 Patent and Masimo has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '095 Patent.

244. In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter. An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No.

16-3).  Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '095 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '095 Patent and has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '095 Patent.

245.  Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '095 Patent by adding inventor Diab as a named inventor.

## XXIII.  SEVENTEENTH CAUSE OF ACTION
## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,219,754)

246.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 42.

247.  Lamego is a named inventor of U.S. Patent 10,219,754 presently recorded as owned by Apple.  A true and correct copy of the '754 Patent is attached hereto as Exhibit 30.

248.  The '754 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '754 Patent recites a method for estimating physiological parameters when modulated light from a first light source and a second light source is emitted toward a body part of a user, the method comprising determining a first multiplier value by: turning on the first light source; generating a first initial signal in response to capturing a first light sample corresponding to the first light source; demodulating the first initial signal to produce first initial demodulated signals; filtering and decimating the first initial demodulated signals; and determining the first multiplier value based on the filtered and decimated first initial demodulated signals; determining a second multiplier value by: turning on the second light source; generating a second

-74-

initial signal in response to capturing a second light sample corresponding to the second light source; demodulating the second initial signal to produce second initial demodulated signals; filtering and decimating the second initial demodulated signals; and determining the second multiplier value based on the filtered and decimated second initial demodulated signals; capturing multiple light samples while the first light source and the second light source are turned on to emit modulated light toward the body part of the user and converting the multiple light samples into a captured signal; demodulating the captured signal to produce multiple demodulated signals; performing a first decimation stage by: low pass filtering each demodulated signal; and decimating each demodulated signal; performing a second decimation stage after the first decimation stage by: low pass filtering each demodulated signal; and decimating each demodulated signal; demultiplexing each demodulated signal after the second decimation stage to produce a first signal associated with the first light source and a second signal associated with the second light source; multiplying the first signal by the first multiplier value using a first multiplier circuit to obtain a first conditioned signal; multiplying the second signal by the second multiplier value using a second multiplier circuit to obtain a second conditioned signal; and analyzing the first conditioned signal and the second conditioned signal to estimate the physiological parameter of the user.  Lamego obtained this subject matter from discussions with, or jointly conceived it with, Al-Ali, Diab, and Weber.  Accordingly, Al-Ali, Diab, and Weber are joint inventors of any patentable subject matter claimed in the '754 Patent, and should have been named as inventors on the '754 Patent.

249.  In written assignments, Lamego, as well as Al-Ali, Diab, and Weber, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade

secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

250. Those assignments vested in Masimo all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '754 Patent and Masimo has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '754 Patent.

251. In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter. An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3). Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '754 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '754 Patent and has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '754 Patent.

252. Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '754 Patent by adding inventors Al-Ali, Diab, and Weber as named inventors.

## XXIV.  EIGHTEENTH CAUSE OF ACTION
## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,524,671)

253. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 42.

254.   Lamego is a named inventor of U.S. Patent 10,524,671 presently recorded as owned by Apple.   A true and correct copy of the '671 Patent is attached hereto as Exhibit 31.

255.   The '671 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.   For example, Claim 1 of the '671 Patent recites a wearable device, comprising a first light source; a second light source, the second light source operating at a different wavelength than the first light source; at least one light receiver; and a processing unit communicably coupled to the first light source, the second light source, and the at least one light receiver; wherein the processing unit is configured to: use the first light source and the second light source to emit light into a body part of a user; and dependent on the light emitted by the first light source and received by the at least one light receiver, compute a pulse rate of the user using the light emitted by the second light source and received by the at least one light receiver.   Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab.   Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '671 Patent, and should have been named as an inventor on the '671 Patent.

256.   In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

257.   Those assignments vested in Masimo all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '671 Patent and Masimo has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '671 Patent.

258.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '671 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '671 Patent and has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '671 Patent.

259.   Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '671 Patent by adding inventor Diab as a named inventor.

## XXV.  NINETEENTH CAUSE OF ACTION
## (DECLARATORY JUDGMENT OF OWNERSHIP OF
## U.S. PATENT NO. 10,078,052)

260.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 42.

261.   U.S. Patent 10,078,052 is recorded as owned by Apple.

262.   The '052 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '052 Patent recites an electronic device comprising a housing defining an aperture; an optical sensing system comprising a light emitter for emitting light through the aperture, the light emitter positioned adjacent the aperture; and a light detector for obtaining a first portion of the light after the first portion of the light reflects from an object; and a reflector disposed about

the aperture and adapted to reflect a second portion of the light back into the object after the second portion of the light reflects from the object. Lamego obtained this subject matter from discussions with, or jointly conceived it with Diab. Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '052 Patent, and should have been named as an inventor on the '052 Patent

263. Lamego and Diab made any inventive contributions to at least Claim 1 while they were employees of Masimo.

264. In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

265. Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '052 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '052 Patent, including foreign counterparts.

266. In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter. An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3). That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '052 Patent from, or jointly conceived such subject

Case 8:20-cv-00048-JVS-JDE   Document 243-3   Filed 04/20/20   Page 241 of 272   Page ID
#:3253
Case 8:20-cv-00048-JVS-JDE   Document 1-24   Filed 03/25/20   Page 82 of 95   Page ID #:1593

matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '052 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '052 Patent, including foreign counterparts.

267. Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '052 Patent (or, to the extent it is determined that Masimo employees invented all of the patentable subject matter claimed in the '052 Patent, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '052 Patent.  Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

## XXVI.  **TWENTIETH CAUSE OF ACTION**
## **(DECLARATORY JUDGMENT OF OWNERSHIP OF**
## **U.S. PATENT NO. 10,247,670)**

268. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 42.

269. U.S. Patent 10,247,670 is recorded as owned by Apple.

270. The '670 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '670 Patent recites an electronic device comprising a housing with a surface; a reflective layer that is formed on the surface, wherein the reflective layer has first and second openings; a light emitter that emits light through the first opening; and a light detector that receives the light emitted by the light emitter through the second opening.  Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab.  Accordingly,

Diab is a joint inventor of any patentable subject matter claimed in the '670 Patent, and should have been named as an inventor on the '670 Patent.

271.   Lamego and Diab made any inventive contributions to at least Claim 1 while they were employees of Masimo.

272.   In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

273.   Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '670 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '670 Patent, including foreign counterparts.

274.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '670 Patent from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '670 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '670 Patent, including foreign counterparts.

275.   Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '670 Patent (or, to the extent it is determined that Masimo employees invented all of the patentable subject matter claimed in the '670 Patent, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '670 Patent.  Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

## XXVII.  <u>TWENTY-FIRST CAUSE OF ACTION (DECLARATORY JUDGMENT OF OWNERSHIP OF U.S. PATENT NO. 9,952,095)</u>

276.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 42.

277.   U.S. Patent 9,952,095 is recorded as owned by Apple.

278.   The '095 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '095 Patent recites an electronic device comprising a housing comprising a surface adapted to be positioned proximate a measurement site of a subject; a biometric sensor positioned at least partially within the surface and comprising: a plurality of light sources for emitting light toward the measurement site at a selected modulation frequency; and an optical sensor for obtaining light exiting the measurement site; and an input amplifier coupled to the output of the biometric sensor and disposed within the housing; a high pass filter coupled to an output of the input amplifier and disposed within the housing, the high pass filter having a cutoff frequency above that of a periodic biometric property of the measurement site; an output amplifier coupled to an output of the high pass filter and disposed within the housing; and an analog to

digital converter coupled to an output of the output amplifier and disposed within the housing. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab. Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '095 Patent, and should have been named as an inventor on the '095 Patent.

279. Lamego and Diab made any inventive contributions to at least Claim 1 while they were employees of Masimo.

280. In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

281. Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '095 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '095 Patent, including foreign counterparts.

282. In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter. An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3). That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '095 Patent from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor,

Cercacor would be a joint owner of the '095 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '095 Patent, including foreign counterparts.

283.  Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '095 Patent (or, to the extent it is determined that Masimo employees invented all of the patentable subject matter claimed in the '095 Patent, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '095 Patent.  Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

## XXVIII.  TWENTY-SECOND CAUSE OF ACTION
## (DECLARATORY JUDGMENT OF OWNERSHIP OF
## U.S. PATENT NO. 10,219,754)

284.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 42.

285.  U.S. Patent 10,219,754 is recorded as owned by Apple.

286.  The '754 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '754 Patent recites a method for estimating physiological parameters when modulated light from a first light source and a second light source is emitted toward a body part of a user, the method comprising determining a first multiplier value by: turning on the first light source; generating a first initial signal in response to capturing a first light sample corresponding to the first light source; demodulating the first initial signal to produce first initial demodulated signals; filtering and decimating the first initial demodulated signals; and determining the first multiplier value based on the

filtered and decimated first initial demodulated signals; determining a second multiplier value by: turning on the second light source; generating a second initial signal in response to capturing a second light sample corresponding to the second light source; demodulating the second initial signal to produce second initial demodulated signals; filtering and decimating the second initial demodulated signals; and determining the second multiplier value based on the filtered and decimated second initial demodulated signals; capturing multiple light samples while the first light source and the second light source are turned on to emit modulated light toward the body part of the user and converting the multiple light samples into a captured signal; demodulating the captured signal to produce multiple demodulated signals; performing a first decimation stage by: low pass filtering each demodulated signal; and decimating each demodulated signal; performing a second decimation stage after the first decimation stage by: low pass filtering each demodulated signal; and decimating each demodulated signal; demultiplexing each demodulated signal after the second decimation stage to produce a first signal associated with the first light source and a second signal associated with the second light source; multiplying the first signal by the first multiplier value using a first multiplier circuit to obtain a first conditioned signal; multiplying the second signal by the second multiplier value using a second multiplier circuit to obtain a second conditioned signal; and analyzing the first conditioned signal and the second conditioned signal to estimate the physiological parameter of the user. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Al-Ali, Diab, and Weber. Accordingly, Al-Ali, Diab, and Weber are joint inventors of any patentable subject matter claimed in the '754 Patent, and should have been named as inventors on the '754 Patent.

287. Lamego, Al-Ali, Diab, and Weber made any inventive contributions to at least Claim 1 while they were employees of Masimo.

288.   In written assignments, Lamego, Al-Ali, Diab, and Weber, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

289.   Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '754 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '754 Patent, including foreign counterparts.

290.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '754 Patent from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '754 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '754 Patent, including foreign counterparts.

291.   Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '754 Patent (or, to the extent it is determined that Masimo employees invented all of

Case 8:20-cv-00048-JVS-JDE Document 243-3 Filed 04/20/20 Page 249 of 272 Page ID
#:3260
Case 8:20-cv-00048-JVS-JDE Document 1-4 Filed 03/25/20 Page 86 of 95 Page ID #:400

the patentable subject matter claimed in the '754 Patent, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '754 Patent. Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

## XXIX. TWENTY-THIRD CAUSE OF ACTION
## (DECLARATORY JUDGMENT OF OWNERSHIP OF
## U.S. PATENT NO. 10,524,671)

292. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 42.

293. U.S. Patent 10,524,671 is recorded as owned by Apple.

294. The '671 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees. For example, Claim 1 of the '671 Patent recites a wearable device, comprising a first light source; a second light source, the second light source operating at a different wavelength than the first light source; at least one light receiver; and a processing unit communicably coupled to the first light source, the second light source, and the at least one light receiver; wherein the processing unit is configured to: use the first light source and the second light source to emit light into a body part of a user; and dependent on the light emitted by the first light source and received by the at least one light receiver, compute a pulse rate of the user using the light emitted by the second light source and received by the at least one light receiver. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab. Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '671 Patent, and should have been named as an inventor on the '671 Patent.

295. Lamego and Diab made any inventive contributions to at least Claim 1 while they were employees of Masimo.

296.   In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

297.   Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '671 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '671 Patent, including foreign counterparts.

298.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '671 Patent from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '671 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '671 Patent, including foreign counterparts.

299.   Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '671 Patent (or, to the extent it is determined that Masimo employees invented all of

the patentable subject matter claimed in the '671 Patent, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '671 Patent. Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

## XXX. TWENTY-FOURTH CAUSE OF ACTION
## (DECLARATORY JUDGMENT OF OWNERSHIP OF
## U.S. PATENT APPLICATION NO. 15/960,507)

300. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 42.

301. U.S. Patent Application 15/960,507 is recorded as owned by Apple.

302. Any inventive contribution that Lamego could have made to the alleged invention of the subject matter claimed in the '507 application was made while he was a Masimo employee during 2000-2001 and 2003-2006, or a Cercacor employee during 2006-2014. This includes, for example, Claim 21 of the '507 Application recites a biometric sensor within a housing of a wearable electronic device, the biometric sensor comprising: an emitter for transmitting modulated light toward a measurement site of a subject through a first aperture in the housing; an optical sensor for receiving modulated light through a second aperture in the housing, the modulated light at least partially exiting the measurement site; a high pass filter to receive an output of the optical sensor, the high pass filter having a cutoff frequency above a frequency of a periodic optical property of the measurement site; and an analog to digital converter to receive an output of the high pass filter."

303. In written assignments, Lamego agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their

employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

304. Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '507 Application and all applications, patents, continuations, divisionals, and reissues that claim priority to the '507 Application, including foreign counterparts.

305. In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter. An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3). That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '507 Application from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '507 Application and all applications, patents, continuations, divisionals, and reissues that claim priority to the '507 Application, including foreign counterparts.

306. Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '507 Application (or, to the extent it is determined that Masimo employees invented all of the patentable subject matter claimed in the '507 Application, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '507 Application. Plaintiffs also seek an order from the Court directing the

Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment in their favor against Defendant for the following relief:

A.     Pursuant to 35 U.S.C. § 271, a determination that Defendant and its officers, agents, servants, employees, attorneys and all others in active concert and/or participation with them have infringed each of the '265, '266, '628, '708, '190, '191, '994, '695, '703, '776, '553, and '554 patents through the manufacture, use, importation, offer for sale, and/or sale of infringing products and/or any of the other acts prohibited by 35 U.S.C. § 271;

B.     Pursuant to 35 U.S.C. § 283, an injunction enjoining Defendant and its officers, agents, servants, employees, attorneys and all others in active concert and/or participation with them from infringing the '265, '266, '628, '708, '190, '191, '994, '695, '703, '776, '553, and '554 patents through the manufacture, use, importation, offer for sale, and/or sale of infringing products and/or any of the other acts prohibited by 35 U.S.C. § 271, including preliminary and permanent injunctive relief;

C.     Pursuant to 35 U.S.C. § 284, an award compensating Masimo for Defendant's infringement of the '265, '266, '628, '708, '190, '191, '994, '695, '703, '776, '553, and '554 patents through payment of not less than a reasonable royalty on Defendant's sales of infringing products;

D.     Pursuant to 35 U.S.C. § 284, an award increasing damages up to three times the amount found or assessed by the jury for Defendant's infringement of each of the '265, '266, '628, '708, '190, '191, '994, '695, '703, '776, '553, and '554 patents in view of the willful and deliberate nature of the infringement;

E.     Pursuant to 35 U.S.C. § 285, a finding that this is an exceptional

case, and an award of reasonable attorneys' fees and non-taxable costs;

F.      An assessment of prejudgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, pursuant to 35 U.S.C. § 284;

G.      That Defendant be adjudged to have misappropriated Plaintiffs' trade secrets in violation of the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq*., and that Defendant's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

H.      That Defendant be adjudged to have been unjustly enriched;

I.      That Plaintiffs be awarded damages for actual losses, unjust enrichment, and/or a reasonable royalty pursuant to Cal. Civ. Code § 3426.3.

J.      That Defendant, its agents, servants, employees, and attorneys, and all those persons in active concert or participation with Defendant, be forthwith temporarily, preliminarily, and thereafter permanently required to return all of Plaintiffs' trade secrets and confidential information and enjoined from further using and disclosing to any third parties any of Plaintiffs' trade secrets and confidential information;

K.      That Defendant be enjoined from selling or offering to sell any product, including Defendant's Apple Watch Series 4 and later devices, that includes or uses any of Plaintiffs' trade secrets;

L.      That Defendant be directed to file with this Court and to serve on Plaintiffs within thirty (30) days after the service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

M.      That Defendant be required to account to Plaintiffs for any and all gains, profits, and advantages derived by it, and all damages sustained by Plaintiffs, by reason of Defendant's acts complained herein;

N.    That Plaintiffs be awarded exemplary damages and reasonable attorneys' fees pursuant to Cal. Civ. Code § 3426.3(c) and 3426.4;

O.    That the U.S. Patent and Trademark Office be directed to correct the inventorship of the '052, '670, '095, '754 and '671 patents to add the correct inventors;

P.    An order imposing a constructive trust for the benefit of Plaintiffs over: (1) any trade secrets Defendants obtained from Plaintiffs; (2) any profits, revenues, or other benefits obtained by Defendants as a result of any disclosure or use of trade secrets obtained from Plaintiffs; and (3) the Lamego Patents and the Lamego Patent Applications;

Q.    That Plaintiffs be declared exclusive owners, or at least joint owners, of the patents and patent applications that are based on Plaintiffs' developments, including the '052, '670, '095, '754 and '671 patents, and the '507 application, and all applications, patents, continuations, divisionals, and reissues that claim priority to those patents and that patent application, including foreign counterparts;

R.    An award of taxable costs; and

S.    That this Court award such other and further relief as this Court may deem just.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: March 25, 2020    By: */s/ Perry D. Oldham*

Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Stephen W. Larson

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories, Inc.

## __DEMAND FOR JURY TRIAL__

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. hereby demands a trial by jury on all issues so triable.

<div style="margin-left: 40%">

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

</div>

Dated: __March 25, 2020__          By: */s/ Perry D. Oldham*

<div style="margin-left: 45%">

Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Stephen W. Larson

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories, Inc.

</div>

32313943

# Exhibit H

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Perry D. Oldham
Perry.Oldham@knobbe.com

March 27, 2020
**VIA EMAIL**

H. Mark Lyon
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road, Palo Alto, CA 94304-1211

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Mark:

We write with respect to Masimo's and Cercacor's concerns that Apple will continue to publish their confidential and trade secret information.  Your letter of March 6, 2020, failed to provide any assurance that Apple would limit further publication.  We would expect Apple would want to know whether Plaintiffs assert a patent application contains their trade secrets *before* publication, when Apple can still mitigate damages.  Rather than engage in good faith, however, Apple largely ignored our requests and raised a number of irrelevant issues.  We respond to those issues below and urge you to reevaluate your position before Plaintiffs are forced to seek a preliminary injunction against publication.

We strongly disagree with your assertion that the Complaint failed to plead a claim of misappropriation against Apple.  However, it is irrelevant to the issue of whether publication of Apple's pending patent applications will disclose Plaintiffs' trade secrets.  Regardless, Plaintiffs' First Amended Complaint filed on March 25, 2020, provides more than sufficient detail to support Plaintiffs' claims.

Apple also demands that Plaintiffs describe their trade secrets in detail.  Again, that is not relevant to the issue of whether Apple's pending patent applications will disclose additional trade secrets of Plaintiffs.  Regardless, as we previously explained, Plaintiffs will describe their trade secrets in response to an interrogatory.  We note that the parties conducted the Rule 26(f) meeting more than two weeks ago, but Apple has still not served an interrogatory seeking identification of Plaintiffs' trade secrets.  We are also still waiting for Apple to provide a draft Protective Order, as Apple promised to do during the Rule 26(f) meeting.  None of this impacts the issue we raised about future disclosure of trade secrets in Apple's patent publications.

Next, Apple requests that Plaintiffs "immediately identify (by line and page number) any alleged trade secrets that have been disclosed in any published patent application filed by Apple or in any patent held by Apple."  Unfortunately, we are aware of no mechanism for the Patent Office to rescind those publications.  If you are aware of such a mechanism, please let us know.  Otherwise, Apple's prior publication of Plaintiffs' trade secrets will be the subject of litigation but is not the relevant inquiry here.  We are trying to prevent further irreparable harm from disclosing Plaintiffs' trade secrets in *future* publications.

We remain deeply concerned that Apple will publish patent applications containing additional trade secrets of Plaintiffs obtained from former Masimo and Cercacor employees.  To that end, we reiterate our demand that Apple request non-publication of any applications concerning physiological monitoring that may contain information from former Masimo or Cercacor employees.  Apple should also provide us with copies of any pending applications naming any of Plaintiffs' former employees as an inventor so we can determine whether the applications contain Plaintiffs' trade secrets.

**Knobbe Martens**

We believe it is in both parties' interest to identify any of Plaintiff's trade secret information found in Apple's pending applications before the information is published.  Doing so will help preserve Plaintiffs' trade secrets as well as limit Apple's exposure.  If Apple refuses to provide such basic information, we may have no choice but to seek a preliminary injunction to prevent publication of the patent applications at issue.

Best regards,

*Perry Oldham*

Perry D. Oldham

# Exhibit I

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

555 Mission Street
San Francisco, CA 94105-0921
Tel 415.393.8200
www.gibsondunn.com

April 2, 2020

**<u>Via E-Mail</u>**

Perry D. Oldham
Knobbe, Martens, Olson & Bear LLP
2040 Main St., 14th Floor.
Irvine, CA 92614
Perry.Oldham@knobbe.com

Re:     *Masimo Corp., et al. v. Apple Inc.,* No. 8:20-cv-00048-JVS (JDEx) (C.D. Cal.)

Dear Perry:

I write in response to your letter of March 27, 2020, demanding that Apple provide Plaintiffs with Apple's confidential patent applications given "Masimo's and Cercacor's concerns that Apple will continue to publish their confidential and trade secret information." This demand is not supported by either the facts or the law, and we reject it. Furthermore, your letter and Plaintiffs' conduct in this case demonstrate that Plaintiffs did not conduct a reasonable investigation of the facts or law pursuant to Rule 11 before filing their trade secret claim.

Your letter is the most recent of Plaintiffs' improper attempts to access Apple's confidential information without first describing their own purported trade secrets. Cal. Code Civ. Proc. § 2019.210; *M/A-Com Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *4 (C.D. Cal. Sept. 3, 2019) (Early, J.) (denying motion to compel and holding that plaintiffs "may not commence discovery relating to the alleged trade secrets" because they failed to identify "their trade secrets with reasonably particularly as required by Section 2019.210"). A description of Plaintiffs' alleged trade secrets is essential in this case because without it, Plaintiffs could review Apple's confidential information and claim whatever they find as having been misappropriated.  *See, e.g.*, *Jobscience, Inc. v. CV Partners, Inc.*, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014) (applying Section 2019.210, noting "it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify whatever happens to be there as having been trade secrets stolen from plaintiff," and requiring the plaintiff to "identify, up front, and with specificity the particulars of the trade secrets without discovery").

Plaintiffs' ongoing refusal to identify their alleged secrets before reviewing Apple confidential information is particularly alarming because Plaintiffs claim that their secrets were

**GIBSON DUNN**

Perry D. Oldham
April 2, 2020
Page 2

*already* disclosed in Apple's published patent applications.  Therefore, Plaintiffs *must* know by page and line number where their alleged secrets appear in Apple's patent applications. Again, Plaintiffs' continued refusal to identify their secrets suggests that Plaintiffs lack a basis for their allegations, and that Plaintiffs now hope to sift through Apple's confidential information so that they can claim it as their own.

The timeline of this case buttresses our conclusion that Plaintiffs seek to review Apple's confidential information in order to come up with a trade secret claim, not because Plaintiffs already have one:

First, on January 8, 2020, the day before filing the Complaint in this case, Plaintiffs improperly attempted to access Apple's confidential information by using the *True Wearables* action to serve a subpoena on Apple.  That subpoena on its face called for confidential information from Apple relating to Plaintiffs' allegations in this case.  When Apple brought this conduct to the Court's attention, Plaintiffs promptly withdrew the subpoena.

Second, on January 9, 2020, Plaintiffs filed the original Complaint in this case without identifying any specific trade secrets, even though Plaintiffs alleged the secrets were already public.  After Apple went to the expense of moving to dismiss, Plaintiffs withdrew that Complaint, thereby acknowledging that their description of trade secrets was inadequate. Plaintiffs then filed the Amended Complaint, which *still* does not identify any of the secrets that Plaintiffs allege are already public.  It again sets forth nothing more than a non-exclusive list of broad categories of information.  As with the previous pleadings, this is not sufficient to survive a motion to dismiss.  And even if the Amended Complaint did adequately *plead* a trade secret—which it does not—that still would not satisfy Plaintiffs' obligation to describe the alleged secrets with specificity.  A finding that allegations are sufficient to survive a motion to dismiss does not mean the trade secret allegations are sufficient under Section 2019.210.  *See e.g.*, *Gatan, Inc. v. Nion Co.*, 2018 WL 2117379, at *2 (N.D. Cal. May 8, 2018) (explaining that the district court's finding that trade secret allegations were sufficient to survive a motion to dismiss "did not prejudge whether plaintiff's trade secret allegations satisfied § 2019.210," and concluding that the disclosures were insufficient under Section 2019.210).  Thus, Plaintiffs cannot hide behind the flawed Amended Complaint and demand access to Apple's confidential files in order to manufacture a trade secret claim.

Third, when the parties met and conferred on March 10, 2020, Plaintiffs insisted that they had a colorable basis to argue that Section 2019.210 will not be applied in this case.  At the same time, Plaintiffs insisted—as you do again in your letter—that Apple serve an interrogatory seeking a description of Plaintiffs' trade secrets.  As we told you then, requiring Apple to serve an interrogatory defeats the very purpose of Section 2019.210, which places

**GIBSON DUNN**

Perry D. Oldham
April 2, 2020
Page 3

the burden to describe the alleged trade secrets on *Plaintiffs*. *See* Cal. Code Civ. Proc. § 2019.210; *see also M/A-Com Tech. Sols., Inc.*, 2019 WL 8108729, at *4. Tellingly, after two and a half weeks, Plaintiffs provided one case in support of their position—*SMC Networks, Inc. v. Hitron Techs., Inc.*, 2013 WL 12136372 (C.D. Cal. Mar. 15, 2013)—which is from 2013 and has never been followed by another court. Notwithstanding the weakness of their position, on March 16, 2020, Plaintiffs served 25 requests for production, the majority of which relate to Apple's confidential information.

Your letter is the latest in the now long line of flawed attempts to gain access to Apple's confidential information. The letter is both logically and legally flawed. To begin with, Plaintiffs claim to be concerned—"deeply concerned"—that Apple will continue to publish their confidential and trade secret information." Plaintiffs' purported concern therefore hinges on Plaintiffs' suggestion that Apple *already* disclosed Plaintiffs' secrets in published applications and will "*continue*" to do so. Yet Plaintiffs refuse to identify the past disclosures that give rise to their demand. Remarkably, your letter states that this information is "irrelevant." Far from irrelevant, the alleged past disclosures are the basis not only for allegations in the original Complaint and the Amended Complaint, but also Plaintiffs' demand for a preview of Apple's patent applications. Again, if Plaintiffs complied with Rule 11 and conducted a reasonable pre-suit investigation, Plaintiffs must be able to identify the alleged secrets that Plaintiffs claim Apple already disclosed—and should be able to do so with minimal burden—before previewing any Apple patent applications.

The other basis for Plaintiffs' demand for a preview of Apple's patent applications—that the inventors were allegedly once employed by or affiliated with Plaintiffs—flies in the face of California law. California does not recognize the inevitable disclosure doctrine. *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463 (2002) ("Lest there be any doubt about our holding, our rejection of the inevitable disclosure doctrine is complete.").

Finally, Plaintiffs' ongoing refusal to identify their secrets while at the same time demanding a review of Apple's confidential information is inconsistent with the actions of a party with valid claims. Apple has already expressed that it does not believe it has, nor does it want, possession of any of Plaintiffs' alleged secrets. If Plaintiffs truly believed that Apple possessed their secrets, then Plaintiffs would have immediately identified the secrets so that Apple could take steps to investigate and stop using them. Plaintiffs do not need Apple's confidential information to do that.

We reserve our rights as to all remedies for baseless claims and arguments, including your suggestion that you may seek a preliminary injunction. Your letter concedes that Plaintiffs have no factual basis for such a motion, which would only compound the problems

**GIBSON DUNN**

Perry D. Oldham
April 2, 2020
Page 4

and inefficiencies that have arisen from the manner in which Plaintiffs have litigated their purported trade secret claim.

Sincerely,

Joshua H. Lerner

Cc (all by email): H. Mark Lyon
Brian M. Buroker
Angelique Kaounis
Joseph R. Re
Stephen C. Jensen
Stephen W. Larson

Exhibit J

| From: | Kaounis, Angelique |
|---|---|
| To: | Adam.Powell |
| Cc: | Perry.Oldham; Buroker, Brian M.; Semendyai, Vladimir J.; Lerner, Joshua H.; Samplin, Ilissa; Lyon, H. Mark; Joe.Re; Stephen.Larson; Steve.Jensen |
| Subject: | RE: Masimo et al. v. Apple: meet and confer |
| Date: | Tuesday, April 7, 2020 7:48:00 AM |

Adam,

We write in response to your email.  We respond to the substance of the points you raise below.

First, as threshold matter, you stated that the parties would not agree on the applicability of Section 2019.210 here.  We therefore are unclear why you seem surprised that we are moving forward with the motion for protective order.

Second, Section 2019.210 states that in "any action alleging the misappropriation of a trade secret under [CUTSA], before commencing discovery ***relating*** to the trade secret, the party alleging misappropriation shall identify the trade secret with reasonable particularity . . . ."  *Id.* (emph. added).  Thus, Apple's position that Plaintiffs cannot take discovery "relating" to the alleged secrets until they identify the alleged trade secrets with reasonable particularly is fully supported by the law, including the plain language of the statute itself.

Third, you are correct that RFPs 5-25 relate to the secrets.  They do not just relate in some vague "way."  To the contrary, these RFPs seek discovery of documents that the FAC expressly alleges are trade secrets.  For example, as we mentioned on the call, Request No. 13 seeks "All documents and things that refer or relate to *technical information, specifications*, and research *data* for any of the Accused Products" (emphases added).  Plaintiffs' FAC alleges (at para. 211) that their vastly overbroad trade secrets include "technical information" such as "technical specifications, [and] technical data."  Similarly, Request No. 12 seeks "All *technical documents* for the Accused Products, including, without limitation, product *specifications*, ... conceptual or *technical drawings*, *design requirements* documents, *design capture documents*, technical requirements documents, *product briefs*, *product plans*, product requirements, document trees, *assembly design documents*, *design review documents*, *system design documents*, fabricating drawings, *manufacturing documents*, and technical meeting minutes" (emphases added).  Again, Plaintiffs' FAC alleges (at para. 211) that their trade secrets include "design captures, assembly design requirements," "product briefs, technical drawings," "product plans," "design review documents," "system designs," and "manufacturing techniques and procedures."  These few examples make abundantly clear that Plaintiffs' requests seek discovery "related to" their alleged trade secrets.

Fourth, when you asked about RFPs "solely related to the trade secrets," you did not cite any case holding that "solely related" is the appropriate standard.  It is not.  And when we asked you how we should determine the scope of discovery without an adequate trade secret disclosure—given the broad categories alleged in the FAC—you suggested that we should simply ask what discovery is relevant to the patent claims.  Given that Plaintiffs have more than once—including on our meet and confer today—suggested that Apple is attempting to

delay discovery and refused to provide a trade secret disclosure, we want to be clear that we cannot at this point identify requests that "solely" relate to the trade secrets, and we believe that your request that we do so is needlessly delaying the Court's ruling on the legal issue here, which is *not* whether the discovery is solely related to trade secrets.

Fifth, your suggestion that Apple refused to identify which claims are "factually dependent" on the trade secrets is not well taken. As we explained to you, our letter of March 27, 2020 states six times that the test is whether the discovery ***relates*** to the alleged trade secrets. You asked us about the *CBS* case, which cites *Advanced Modular*, in holding that 2019.210 applies to discovery that is aimed at claims that are dependent or factually dependent on the trade secret allegations. Far from refusing to answer, we told you our answer was the same. Based on the allegations in the FAC, the RFPs we identified seek information that relates to—and is dependent upon—the trade secret allegations. Importantly, with respect to your demands that we identify the RFPs that are solely related to the trade secret allegations or factually dependent on the trade secret allegations, you confirmed that at least some of the patent causes of action are "factually dependent on the same misappropriation allegations." Specifically, we asked you to confirm that Plaintiffs are alleging the Apple Watch (Series 4 and 5 and later) incorporates Plaintiffs' trade secrets, and you responded affirmatively that Plaintiffs were alleging that those products incorporated "some secrets." Given the FAC's broad allegation that the 4 and 5 series "includes technology that tracks technologies to solve some of the performance issues"—and your confirmation that Plaintiffs are alleging the Watch incorporates some (as yet unidentified) secrets—we are not sure why Plaintiffs are claiming to be confused about Apple's position.

Sixth, we are not sure why you asked us about Ninth Circuit cases addressing 2019.210. Judge Early recently found that "the Ninth Circuit has not decided whether Section 2019.210 applies in federal court," and went on to hold that in that case, "the procedural requirements of Section 2019.210 are warranted and appropriate to assist in the orderly and expeditious handling of discovery." *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, No. SACV1900220JVSJDEX, 2019 WL 4284523, at *2 (C.D. Cal. June 11, 2019).

Seventh, turning to the question of an interrogatory, as we have explained multiple times, Plaintiffs' demand that Apple serve an interrogatory is improper. To begin with, Plaintiffs have never agreed—and are not agreeing now—that Plaintiffs will not commence discovery relating to trade secrets until they provide an adequate description of their alleged secrets. That is critical because, as we explained on the call, there is nothing stopping Plaintiffs from cutting and pasting the vague description of the secrets in the FAC into an interrogatory response (served 30 days, if not more, after the interrogatory is propounded) and claiming that they have complied. This will not solve the lack of disclosure problem—it will just invite motion practice, which will further delay the process. Therefore, contrary to Plaintiffs' suggestion that an interrogatory would be faster here, a disclosure pursuant to Section 2019.210 will in fact be faster, as well as more efficient and fair to the parties.

Finally, as for timing, as explained above, Plaintiffs have now argued more than once that Apple is trying to delay discovery. To the contrary, we want to get to the bottom of the trade

secret allegations and manage the scope of discovery as quickly as possible.  That's why we asked for a disclosure so long ago.  It is telling that you conceded that if you can respond to an interrogatory, you should be able to provide a description immediately.  In fact, you should have been able to provide one as soon as you filed the original complaint.  Regardless, we are not aware of any other information that you have asked us for on this topic, and we understood that you believe there is an unsurmountable issue as to whether Section 2019.210 applies here, even as a case management tool.  Therefore, we believe the meet-and-confer process has culminated, and that the parties should move as quickly as possible to seek judicial intervention to resolve this issue.  We are not sure why you would need two weeks in addition to the week provided for under the rules, particularly given that the parties have been conferring about these issues for weeks now.  Nonetheless, in the interest of mutual courtesy, why don't Plaintiffs take one week in addition to the week provided under the rules, and we will take one additional week to respond to Plaintiffs' first set of RFPs?  Please let us know if that works, and we will prepare a stipulation to that effect. If we don't receive your confirmation that you are willing to extend the deadline for the responses by 2 pm Pacific, we will serve Apple's portion of the Joint Stip. by EOD and proceed with the briefing schedule set by the Local Rules.

Thanks very much,
Angelique

**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, April 6, 2020 7:38 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Semendyai, Vladimir J. <VSemendyai@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

[External Email]
Angelique, Josh, Brian, and Vlad,

Thank you for meeting with me today.  During the meeting, Apple maintained that all discovery as to any federal claim that merely "relates" to a California state-law misappropriation claim is barred until the plaintiff complies with California procedural law.  During the call, I asked which RFPs Apple asserts "relate" to the trade secret allegations.  You responded that nearly all of Masimo's RFPS—

RFPs 5 to 25—"relate" to the trade secret allegations in some way and are thus barred until Masimo provides a 2019 statement under California law.  I attempted to determine whether Apple would at least acknowledge the RFPs seek discovery relevant to Plaintiffs' patent infringement claims.  When I specifically asked which, if any, RFPs Apple asserts "relate" solely to the trade secret claims (and not to the patent claims), you said the question was irrelevant, but that you would get back to me.

We also discussed Apple's case citation and assertion in its letter that discovery as to non-trade secret claims is barred if the claims are "factually dependent on the same misappropriation allegations."  I asked Apple to identify which claims are "factually dependent" on the misappropriation allegations.  Apple refused, arguing the question is irrelevant because all discovery "relating" in any way to a trade secret claim is barred.  We disagree and would like to understand the assertions in Apple's letter, including Apple's own assertions regarding the legal standard Apple identified.  Please indicate which causes of action are "factually dependent on the same misappropriation allegations."

Apple also indicated it is not aware of any cases from the Ninth Circuit holding that Section 2019.210 should be applied in Federal Court.  I again indicated Plaintiffs would be happy to answer an interrogatory asking them to identify their trade secrets.  Apple refused to serve such an interrogatory unless Plaintiffs agreed in advance to stay all discovery that Apple believes relates in any way to trade secrets (including patent-related discovery) until Apple agreed (or the Court held) that the interrogatory answer satisfies California state law.

Finally, Apple indicated it plans to serve its portion of the joint stipulation tomorrow, which would make Plaintiffs portion due on April 14.  Because the parties are still actively discussing this matter and agreed to get back to each other on various issues, we do not believe it is appropriate to push forward with a joint stipulation tomorrow.  If Apple does serve the joint stipulation tomorrow, however, we request a two week extension of time to respond after receiving Apple's portion.  We will, of course, agree to a reciprocal extension of time if Apple would like more time to prepare its portion of the joint stipulation.


Best regards,
Adam


**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Thursday, April 2, 2020 9:42 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

Hi Adam,
Yes, Monday at 4 pm will work.  We will circulate a dial in.
Thanks.

**Angelique Kaounis**

### GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, April 2, 2020 7:17 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>;
Buroker, Brian M. <BBuroker@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson
<Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham
<Perry.Oldham@knobbe.com>
**Subject:** Re: Masimo et al. v. Apple: meet and confer

[External Email]
Angelique,

I won't be able to meet tomorrow. Are you available on Monday at 4pm?

Thanks,
Adam


> On Apr 2, 2020, at 5:26 PM, Kaounis, Angelique <AKaounis@gibsondunn.com> wrote:
>
>
> Hi Adam,
> Just following up on the below.  Will you be able to meet and confer with us tomorrow regarding Apple's proposed Protective Order motion?  If so, please let us know what time works.
> Thanks very much,
> Angelique
>
> **Angelique Kaounis**
>
> ### GIBSON DUNN
>
> Gibson, Dunn & Crutcher LLP

2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, March 30, 2020 6:54 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H.
<JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Joe.Re
<Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>;
Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham
<Perry.Oldham@knobbe.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

[External Email]
Angelique,

We are investigating the issues and cases raised in this letter and doubt we will be
prepared to discuss the issues with you on Tuesday or Wednesday.  We will provide our
availability for a meet and confer after we have had a chance to complete our review.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Friday, March 27, 2020 9:18 PM
**To:** Joe.Re <Joe.Re@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>;
Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen
<Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H.
<JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>
**Subject:** Masimo et al. v. Apple: meet and confer

Dear Counsel,
Please see attached.
Thanks very much,
Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original

message.