| From: | Samplin, Ilissa |
|---|---|
| To: | Kaounis, Angelique; Adam.Powell |
| Cc: | Perry.Oldham; Joe.Re; Stephen.Larson; Steve.Jensen; Buroker, Brian M.; Semendyai, Vladimir J.; Lerner, Joshua H.; Lyon, H. Mark |
| Subject: | RE: Masimo et al. v. Apple: meet and confer |
| Date: | Wednesday, April 8, 2020 4:58:02 PM |
| Attachments: | 103858826_1__Apple_Masimo__Joint Stip re MPO [Final Apple Portion].DOCX |
| | Lerner Declaration ISO Motion for Protective Order.pdf |

Counsel:

Attached please find Apple's portion of the Joint Stipulation, along with the accompanying declaration and exhibits.

We look forward to receiving Plaintiffs' portion by 5 pm on April 29.

Regards,
Ilissa

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Kaounis, Angelique
**Sent:** Tuesday, April 7, 2020 7:42 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Semendyai, Vladimir J. <VSemendyai@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

Thanks, Adam.  We agree.  Have a good night.

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**Exhibit 10**
**-4-**

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, April 7, 2020 7:28 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Semendyai, Vladimir J. <VSemendyai@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>
**Subject:** Re: Masimo et al. v. Apple: meet and confer

[External Email]
Angelique,

Thank you for your email.  We agree that Apple may have a 15-day extension to serve its responses to the outstanding RFPs and may provide its portion of the joint stipulation tomorrow.  We also agree to both parties providing their portion of the joint stipulations by 5pm.  While we appreciate you drafting a stipulation, we actually do not think it is necessary because these extensions do not impact any court deadlines.  The parties are always free to provide extensions for discovery responses and Local Rule 37-2.2 describes the joint stipulation schedule "[u]nless the parties agree otherwise."  Thus, we prefer to agree to the timeline you suggested below without bothering the Court.

Thanks,
Adam

On Apr 7, 2020, at 6:49 PM, Kaounis, Angelique <AKaounis@gibsondunn.com> wrote:

Adam,
Just checking in – can you please confirm that the stip is acceptable?  Thanks.

**Angelique Kaounis**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Kaounis, Angelique
**Sent:** Tuesday, April 7, 2020 3:19 PM
**To:** 'Adam.Powell' <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Cc:** Buroker, Brian M. <BBuroker@gibsondunn.com>; Semendyai, Vladimir J.

**Exhibit 10**
**-5-**

<VSemendyai@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>;
Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark
<MLyon@gibsondunn.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

Adam,

Thanks for your email.  Apple agrees to Plaintiffs' request for the 14-day extension in exchange for a similar extension of time to serve its responses and objections to Plaintiffs' RFPs.  We request, however, that the extension to Apple on the RFP responses and objections be 15 days so that the schedule for the motion begins tomorrow, and we can finalize some things on our end, including getting a briefing stip on file.  While we appreciate that you see the RFP responses and objections as a separate matter, we do not.  We timed the protective order motion with the deadline for Apple's responses and objections to Plaintiffs' RFPs in mind—and so if you are asking to change the deadlines for the protective order motion prescribed by the local rules, then we will need Plaintiffs to agree to an extension on the RFP responses that makes their deadline the same as the date on which the parties will file the protective order motion.

In that vein, we propose the following schedule, as also memorialized in the attached draft stipulation:

(1) Apple to send its portion of the joint stipulation on the protective order motion to Plaintiffs by 5 pm on April 8;
(2) Plaintiffs to send their portion of the joint stipulation on the protective order motion to Apple by 5 pm on April 29;
(3) Parties to file the joint stipulation on April 30;
(4) Apple's responses and objections to Plaintiffs' Requests for Production due on April 30.

We are flexible on the times.  5 pm is just a suggestion.

Please let me know if we have an agreement and confirm that we may file the attached stipulation with your consent.

Thank you,


**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026

**Exhibit 10**
**-6-**

AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, April 7, 2020 12:56 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Buroker, Brian M.
<BBuroker@gibsondunn.com>; Semendyai, Vladimir J.
<VSemendyai@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>;
Samplin, Ilissa <ISamplin@gibsondunn.com>; Lyon, H. Mark
<MLyon@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson
<Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

[External Email]
Angelique,

Nothing in your email contradicts my summary of our conversation.  Among other
things, Apple confirmed it will not (or cannot) identify any RFPs that relate solely to the
trade secret claims and not to the patent claims.  Apple also confirmed that it will not
(or cannot) identify any claims other than the trade secret claim that are "factually
dependent" on the misappropriation allegations.  Your assertion that this is irrelevant is
belied by Apple's own letter, which expressly relied on this legal standard in citing the
*CBS* and *Advanced Modular* cases.  We do not understand why you would be surprised
or assert it is "not well taken" for us to ask Apple about a legal standard that Apple
included in its own letter.

As for the extension, Apple continues to apply extensions in an inappropriate and non-
reciprocal manner.  As you know, Apple has requested three extensions in this case
(responding to the Complaint, serving Initial Disclosures, and responding to the First
Amended Complaint), all of which Plaintiffs granted.  When Plaintiffs requested a
reciprocal extension to respond to Apple's first motion to dismiss, Apple offered a mere
4-day extension in exchange for a 10-day extension on Apple's reply brief.  When
Plaintiffs requested a reciprocal extension to respond to Apple's anticipated second
motion to dismiss, Apple again offered a non-reciprocal extension while simultaneously
demanding expedited treatment of Apple's motion for protective order.  We pointed
out that this appeared to be an improper tactical request for extension and suggested
the parties deal with both issues together.  Apple responded by accusing us of being
unprofessional and conflating two separate issues.  Despite our better judgment, we
granted Apple the requested extension "based on our understanding that Apple will
start agreeing to similar courtesies, including an extension of time on Apple's requested
motion for protective order if we believe that is necessary."

Against that backdrop, we requested a reasonable two-week extension of time for a
total of three weeks to respond to Apple's anticipated motion for protective order.
That is less time than Plaintiffs provided to Apple in all three of Apple's requested

**Exhibit 10**
**-7-**

extensions.  In particular, we provided a 30-day extension on the initial Complaint (more than 7 weeks total), a 3-week extension on the Initial Disclosures (5 weeks total), and a 12-day extension to respond to the First Amended Complaint (26-days total).  We also originally agreed to a 14-day extension of time to respond to the First Amended Complaint, but settled on a mutual 12-day extension based on Apple's desire not to prepare its reply brief over memorial day.  We agreed to the last extension even though we believed Apple did not need that much time because its second motion to dismiss appeared to be a subset of its first motion to dismiss.  Despite those courtesies, Apple now offers only a 1-week extension (2-weeks total), demands we respond in less than one business day, and threatens to serve its portion of the joint stipulation if we do not respond by 2pm even though nothing requires Apple to do so today.

Please confirm Apple will agree to the requested 14-day extension.  While we believe the deadline to respond to Plaintiffs' RFPs is a separate matter, we will agree Apple may have the same 14-day extension if Apple needs it.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Tuesday, April 7, 2020 7:48 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Semendyai, Vladimir J. <VSemendyai@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

Adam,

We write in response to your email.  We respond to the substance of the points you raise below.

First, as threshold matter, you stated that the parties would not agree on the applicability of Section 2019.210 here.  We therefore are unclear why you seem surprised that we are moving forward with the motion for protective order.

**Exhibit 10**
**-8-**

Second, Section 2019.210 states that in "any action alleging the misappropriation of a trade secret under [CUTSA], before commencing discovery *relating* to the trade secret, the party alleging misappropriation shall identify the trade secret with reasonable particularity . . . ." *Id.* (emph. added). Thus, Apple's position that Plaintiffs cannot take discovery "relating" to the alleged secrets until they identify the alleged trade secrets with reasonable particularly is fully supported by the law, including the plain language of the statute itself.

Third, you are correct that RFPs 5-25 relate to the secrets. They do not just relate in some vague "way." To the contrary, these RFPs seek discovery of documents that the FAC expressly alleges are trade secrets. For example, as we mentioned on the call, Request No. 13 seeks "All documents and things that refer or relate to *technical information, specifications*, and research *data* for any of the Accused Products" (emphases added). Plaintiffs' FAC alleges (at para. 211) that their vastly overbroad trade secrets include "technical information" such as "technical specifications, [and] technical data." Similarly, Request No. 12 seeks "All *technical documents* for the Accused Products, including, without limitation, product *specifications*, ... conceptual or *technical drawings*, *design requirements* documents, *design capture documents*, technical requirements documents, *product briefs*, *product plans*, product requirements, document trees, *assembly design documents*, *design review documents*, *system design documents*, fabricating drawings, *manufacturing documents*, and technical meeting minutes" (emphases added). Again, Plaintiffs' FAC alleges (at para. 211) that their trade secrets include "design captures, assembly design requirements," "product briefs, technical drawings," "product plans," "design review documents," "system designs," and "manufacturing techniques and procedures." These few examples make abundantly clear that Plaintiffs' requests seek discovery "related to" their alleged trade secrets.

Fourth, when you asked about RFPs "solely related to the trade secrets," you did not cite any case holding that "solely related" is the appropriate standard. It is not. And when we asked you how we should determine the scope of discovery without an adequate trade secret disclosure—given the broad categories alleged in the FAC—you suggested that we should simply ask what discovery is relevant to the patent claims. Given that Plaintiffs have more than once—including on our meet and confer today—suggested that Apple is attempting to delay discovery and refused to provide a trade secret disclosure, we want to be clear that we cannot at this point identify requests that "solely" relate to the trade secrets, and we believe that your request that we do so is needlessly delaying the Court's ruling on the legal issue here, which is *not* whether the discovery is solely related to trade secrets.

Fifth, your suggestion that Apple refused to identify which claims are "factually dependent" on the trade secrets is not well taken. As we explained to you, our letter of March 27, 2020 states six times that the test is whether the discovery

**Exhibit 10**
**-9-**

*relates* to the alleged trade secrets.  You asked us about the *CBS* case, which cites *Advanced Modular*, in holding that 2019.210 applies to discovery that is aimed at claims that are dependent or factually dependent on the trade secret allegations. Far from refusing to answer, we told you our answer was the same.  Based on the allegations in the FAC, the RFPs we identified seek information that relates to— and is dependent upon—the trade secret allegations.  Importantly, with respect to your demands that we identify the RFPs that are solely related to the trade secret allegations or factually dependent on the trade secret allegations, you confirmed that at least some of the patent causes of action are "factually dependent on the same misappropriation allegations."  Specifically, we asked you to confirm that Plaintiffs are alleging the Apple Watch (Series 4 and 5 and later) incorporates Plaintiffs' trade secrets, and you responded affirmatively that Plaintiffs were alleging that those products incorporated "some secrets."  Given the FAC's broad allegation that the 4 and 5 series "includes technology that tracks technologies to solve some of the performance issues"—and your confirmation that Plaintiffs are alleging the Watch incorporates some (as yet unidentified) secrets—we are not sure why Plaintiffs are claiming to be confused about Apple's position.

Sixth, we are not sure why you asked us about Ninth Circuit cases addressing 2019.210.  Judge Early recently found that "the Ninth Circuit has not decided whether Section 2019.210 applies in federal court," and went on to hold that in that case, "the procedural requirements of Section 2019.210 are warranted and appropriate to assist in the orderly and expeditious handling of discovery."  *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, No. SACV1900220JVSJDEX, 2019 WL 4284523, at *2 (C.D. Cal. June 11, 2019).

Seventh, turning to the question of an interrogatory, as we have explained multiple times, Plaintiffs' demand that Apple serve an interrogatory is improper. To begin with, Plaintiffs have never agreed—and are not agreeing now—that Plaintiffs will not commence discovery relating to trade secrets until they provide an adequate description of their alleged secrets.  That is critical because, as we explained on the call, there is nothing stopping Plaintiffs from cutting and pasting the vague description of the secrets in the FAC into an interrogatory response (served 30 days, if not more, after the interrogatory is propounded) and claiming that they have complied.  This will not solve the lack of disclosure problem—it will just invite motion practice, which will further delay the process.  Therefore, contrary to Plaintiffs' suggestion that an interrogatory would be faster here, a disclosure pursuant to Section 2019.210 will in fact be faster, as well as more efficient and fair to the parties.

Finally, as for timing, as explained above, Plaintiffs have now argued more than once that Apple is trying to delay discovery.  To the contrary, we want to get to the bottom of the trade secret allegations and manage the scope of discovery as quickly as possible.  That's why we asked for a disclosure so long ago.  It is telling that you conceded that if you can respond to an interrogatory, you should be able

**Exhibit 10**
**-10-**

to provide a description immediately.  In fact, you should have been able to provide one as soon as you filed the original complaint.  Regardless, we are not aware of any other information that you have asked us for on this topic, and we understood that you believe there is an unsurmountable issue as to whether Section 2019.210 applies here, even as a case management tool.  Therefore, we believe the meet-and-confer process has culminated, and that the parties should move as quickly as possible to seek judicial intervention to resolve this issue.  We are not sure why you would need two weeks in addition to the week provided for under the rules, particularly given that the parties have been conferring about these issues for weeks now.  Nonetheless, in the interest of mutual courtesy, why don't Plaintiffs take one week in addition to the week provided under the rules, and we will take one additional week to respond to Plaintiffs' first set of RFPs? Please let us know if that works, and we will prepare a stipulation to that effect. If we don't receive your confirmation that you are willing to extend the deadline for the responses by 2 pm Pacific, we will serve Apple's portion of the Joint Stip. by EOD and proceed with the briefing schedule set by the Local Rules.

Thanks very much,
Angelique

**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, April 6, 2020 7:38 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Semendyai, Vladimir J. <VSemendyai@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

[External Email]
Angelique, Josh, Brian, and Vlad,

Thank you for meeting with me today.  During the meeting, Apple maintained that all discovery as to any federal claim that merely "relates" to a California state-law misappropriation claim is barred until the plaintiff complies with California procedural law.  During the call, I asked which RFPs Apple asserts "relate" to the trade secret allegations.  You responded that nearly all of Masimo's RFPS—RFPs 5 to 25—"relate" to

**Exhibit 10**
**-11-**

the trade secret allegations in some way and are thus barred until Masimo provides a 2019 statement under California law.  I attempted to determine whether Apple would at least acknowledge the RFPs seek discovery relevant to Plaintiffs' patent infringement claims.  When I specifically asked which, if any, RFPs Apple asserts "relate" solely to the trade secret claims (and not to the patent claims), you said the question was irrelevant, but that you would get back to me.

We also discussed Apple's case citation and assertion in its letter that discovery as to non-trade secret claims is barred if the claims are "factually dependent on the same misappropriation allegations."  I asked Apple to identify which claims are "factually dependent" on the misappropriation allegations.  Apple refused, arguing the question is irrelevant because all discovery "relating" in any way to a trade secret claim is barred.  We disagree and would like to understand the assertions in Apple's letter, including Apple's own assertions regarding the legal standard Apple identified.  Please indicate which causes of action are "factually dependent on the same misappropriation allegations."

Apple also indicated it is not aware of any cases from the Ninth Circuit holding that Section 2019.210 should be applied in Federal Court.  I again indicated Plaintiffs would be happy to answer an interrogatory asking them to identify their trade secrets.  Apple refused to serve such an interrogatory unless Plaintiffs agreed in advance to stay all discovery that Apple believes relates in any way to trade secrets (including patent-related discovery) until Apple agreed (or the Court held) that the interrogatory answer satisfies California state law.

Finally, Apple indicated it plans to serve its portion of the joint stipulation tomorrow, which would make Plaintiffs portion due on April 14.  Because the parties are still actively discussing this matter and agreed to get back to each other on various issues, we do not believe it is appropriate to push forward with a joint stipulation tomorrow.  If Apple does serve the joint stipulation tomorrow, however, we request a two week extension of time to respond after receiving Apple's portion.  We will, of course, agree to a reciprocal extension of time if Apple would like more time to prepare its portion of the joint stipulation.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Thursday, April 2, 2020 9:42 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H.

**Exhibit 10**
**-12-**

<JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Joe.Re
<Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>;
Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham
<Perry.Oldham@knobbe.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

Hi Adam,
Yes, Monday at 4 pm will work.  We will circulate a dial in.
Thanks.

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, April 2, 2020 7:17 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H.
<JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Joe.Re
<Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>;
Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham
<Perry.Oldham@knobbe.com>
**Subject:** Re: Masimo et al. v. Apple: meet and confer

[External Email]
Angelique,

I won't be able to meet tomorrow. Are you available on Monday at 4pm?

Thanks,
Adam


On Apr 2, 2020, at 5:26 PM, Kaounis, Angelique
<AKaounis@gibsondunn.com> wrote:


Hi Adam,
Just following up on the below.  Will you be able to meet and confer
with us tomorrow regarding Apple's proposed Protective Order
motion?  If so, please let us know what time works.
Thanks very much,

**Exhibit 10**
**-13-**

Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, March 30, 2020 6:54 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

[External Email]
Angelique,

We are investigating the issues and cases raised in this letter and doubt we will be prepared to discuss the issues with you on Tuesday or Wednesday.  We will provide our availability for a meet and confer after we have had a chance to complete our review.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Friday, March 27, 2020 9:18 PM
**To:** Joe.Re <Joe.Re@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H.

**Exhibit 10**
**-14-**

<JLerner@gibsondunn.com>; Buroker, Brian M.
<BBuroker@gibsondunn.com>

**Subject:** Masimo et al. v. Apple: meet and confer

Dear Counsel,
Please see attached.
Thanks very much,
Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**Exhibit 10**
**-15-**

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

<103855731_2 _Apple_Masimo - Stip re Protective Order Motion & RFP Responses.DOCX>

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**Exhibit 10**
**-16-**

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

**Exhibit 10**
**-17-**

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
KNOBBE, MARTENS, OLSON &
BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:  (949)-760-0404
Facsimile:  (949)-760-9502

*Attorneys for Plaintiffs Masimo
Corporation and Cercacor Laboratories,
Inc.*

JOSHUA H. LERNER, SBN 220755
   jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Telephone:  415.393.8200
Facsimile:  415.393.8306

H. MARK LYON, SBN 162061
   mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

BRIAN M. BUROKER, *pro hac vice*
   bburoker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone:  202.955.8541
Facsimile:  202.467.0539

ILISSA SAMPLIN, SBN 314018
   isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, CERCACOR LABORATORIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **JOINT STIPULATION REGARDING DEFENDANT APPLE INC.'S MOTION FOR PROTECTIVE ORDER BARRING TRADE SECRET-RELATED DISCOVERY ABSENT TRADE SECRET IDENTIFICATION** <br><br> Hr'g Date/Time:  May 21, 2020 at 10 a.m. <br> Courtroom:        6A <br> Judge:            Hon. John D. Early <br> Discovery Cutoff:     TBD <br> Pretrial Conference:  TBD <br> Trial:                TBD |

**Exhibit 10**

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Telephone:  310.552.8546
Facsimile:   310.552.7026

*Attorneys for Defendant Apple Inc.*

**Exhibit 10**
**-19-**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTORY STATEMENTS .................................................................. 1

    A.   Apple's Introductory Statement ................................................... 1

    B.   Plaintiffs' Introductory Statement ............................................... 3

II.   APPLE'S POSITION ................................................................................. 3

    A.   FACTS ........................................................................................ 3

    1.   Plaintiffs Impermissibly Sought To Obtain Discovery Of Apple's
Confidential Information In The *True Wearables* Case. .......................... 4

    2.   Plaintiffs Failed To Allege Their Purported Trade Secrets With Any
Particularity. ................................................................................... 4

    3.   Plaintiffs Ignored Apple's Request For A Section 2019.210
Disclosure And Propounded Trade Secret-Related Discovery. ............... 5

    4.   Plaintiffs Filed An FAC That Merely Expanded The Generic
Categories Of Information Claimed As Trade Secrets. .......................... 5

    5.   Plaintiffs' Requests For Production Nos. 5-25 Seek Premature
Trade-Secret Related Discovery From Apple. .................................... 6

    6.   The Parties Met And Conferred About Plaintiffs' Premature
Requests For Production. ................................................................. 11

    B.   ARGUMENT ................................................................................ 12

    1.   That Plaintiffs Filed Their CUTSA Claim In Federal Court Does
Not Mean Plaintiffs Need Not Describe Their Secrets. ....................... 12

    2.   Plaintiffs Have Not Identified Their Purported Trade Secrets, And
The FAC Does Not Suffice. ............................................................. 14

    3.   Plaintiffs' Refusal To Comply With Section 2019.210 Frustrates
Each Of The Four Purposes Of The Statute. ...................................... 15

        a)   Plaintiffs Have Not Demonstrated That Their Trade
Secret Claim Has Any Merit. ................................................... 16

        b)   Plaintiffs Have Not Demonstrated That They Are
Actually Looking For *Their* Secrets In Apple's Files. ............... 18

        c)   Plaintiffs Have Not Assisted The Court In Framing
The Scope Of Trade Secret-Related Discovery. ....................... 19

        d)   Plaintiffs Have Not Enabled Apple To Defend Against
Their Trade Secret Misappropriation Claim. ........................... 21

    C.   CONCLUSION ............................................................................ 22

**Exhibit 10**
**-20-**

III.   PLAINTIFFS' POSITION ...................................................................................22

**Exhibit 10**
**-21-**

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Defendant Apple Inc. ("Apple"), as movant, and Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor"), as respondents, submit the following Joint Stipulation regarding Apple's Motion for a Protective Order.  Pursuant to Local Rule 37-1, the parties met and conferred in good faith in an effort to resolve the Motion.

## I.     <u>INTRODUCTORY STATEMENTS</u>

### A.     Apple's Introductory Statement

Apple seeks an order barring Plaintiffs from taking trade secret-related discovery until Plaintiffs describe their trade secrets with reasonable particularity consistent with California Code of Civil Procedure Section 2019.210 ("Section 2019.210").  Apple wants to address the trade secret claim in this action as quickly as possible, and therefore has repeatedly requested that Plaintiffs comply with the procedures set out in Section 2019.210 since the outset of the case.  Plaintiffs have refused.

District courts throughout California, *including this Court*, recognize that Section 2019.210 serves an essential function in cases like this one—it discourages meritless trade secret claims, prevents plaintiffs from abusing the discovery process to access the defendant's trade secrets, assists the court in framing the appropriate scope of discovery, and enables a defendant to form "complete and well-reasoned defenses" against claims of misappropriation.  *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D. Cal. Sept. 3, 2019) (Early, J.).

The need for a reasonable description of the alleged secrets in this case is acute. Plaintiffs' allegations of trade secret misappropriation raise *every* problem that Section 2019.210 is intended to solve:

*First*, the only description of the alleged trade secrets provided by Plaintiffs—in their First Amended Complaint—provides no hint as to the merits of the misappropriation claim.  To the contrary, Plaintiffs' original complaint claimed a non-exhaustive list of seven broad categories of information, such as "business plans" and "technical data."  Lerner Decl. Ex. C (Compl.) ¶ 181.  Plaintiffs then compounded the

**Exhibit 10**
**-22-**

problem by amending to allege a new list of *50* generalized categories of information, *including but not limited to* "technical information, sales and marketing information, and other business information," as well as unspecified combinations. *Id.* Ex. G (FAC) ¶ 211. Plaintiffs allege thousands of potential trade secrets in non-descript categories that cover every aspect of Plaintiffs' business. These broad categories and combinations are insufficient to plead a claim, and are *unquestionably* insufficient to satisfy Plaintiffs' obligation to identify their alleged secrets with particularity before taking trade secret-related discovery. Furthermore, Plaintiffs concede that many, if not all, of their purported secrets are now public. Plaintiffs cannot force Apple to search for the proverbial needle in the haystack by claiming generalized categories of information that might or might not qualify as trade secrets.

*Second*, Plaintiffs repeatedly have tried to access Apple's confidential information before they identify their own alleged trade secrets. Just *one day before* Plaintiffs filed this case, they sought discovery of Apple's confidential information through a third-party subpoena in *Masimo Corp. et al. v. True Wearables Inc. et al.*, No. 8:18-cv-02001-JVS-JDE (the "*True Wearables* Case"). The subpoena created the obvious risk that Section 2019.210 guards against: Plaintiffs could review whatever confidential information about health monitoring technology they could find in Apple's files and claim it as their own. Plaintiffs jettisoned their subpoena after Apple sought a protective order and their strategy was exposed. The requests for production at issue here are merely a continuation of that strategy. Plaintiffs characterize the requests for production as patent-related, but that is nothing more than an attempted end-run around Section 2019.210. The requests for production, on their face, seek the very categories of information that Plaintiffs allege as their trade secrets. Plaintiffs cannot use their patents as a vehicle by which to review Apple's confidential information in another effort to concoct a misappropriation claim.

*Third*, until Plaintiffs specifically define their alleged trade secrets, neither the Court nor the parties can tailor or manage the discovery process in this case. Among

**Exhibit 10**
**-23-**

other things, it is impossible to measure proportionality under Rule 26.  Indeed, Plaintiffs allege that their list of about 50 generalized categories of purported trade secret information, plus unspecified combinations of those categories, is not even complete. Plaintiffs state that their trade secrets "include, but are not limited to," 50 general categories of information (Lerner Decl. Ex. G (FAC) ¶ 211)—a caveat that renders the scope of the already broad categories unbounded, making it impossible to efficiently and effectively conduct discovery in this case.

*Fourth*, without a clear articulation of the trade secrets at issue, Apple cannot formulate complete and well-reasoned defenses.  A reasonable description of the alleged secrets will assist Apple in addressing basic issues, including the statute of limitations and, relatedly, which alleged secrets were public and when.  Furthermore, if there are any valid secrets here—and Apple does not believe there are—an adequate description will enable Apple to curtail any purported future harm to Plaintiffs.

For these reasons, Apple respectfully requests that the Court grant a protective order prohibiting Plaintiffs from "commencing discovery relating to the [alleged] trade secret[s]" until Plaintiffs provide a Section 2019.210 disclosure that describes their purported secrets with the "reasonable particularity" the law requires.  Cal. Code Civ. Proc. § 2019.210.

**B.     Plaintiffs' Introductory Statement**

## II.     APPLE'S POSITION

**A.     FACTS**

For the past 44 years, Apple has been able to revolutionize the mobile and personal computing markets because of its significant investment in technological innovation, and its ability to translate its trade secrets into transformative products, such as the Apple Watch.  Years after the Apple Watch became a commercial success, Plaintiffs filed this lawsuit alleging trade secret misappropriation.  Plaintiffs now improperly seek unfettered access to confidential information relating to the Apple

**Exhibit 10**
**-24-**

Watch without first describing their alleged secrets.

Below, Apple sets forth a timeline of the facts relevant to this Motion.

### 1. Plaintiffs Impermissibly Sought To Obtain Discovery Of Apple's Confidential Information In The *True Wearables* Case.

One day before Plaintiffs filed the complaint in this case, Plaintiffs served a subpoena on Apple in the *True Wearables* Case. *See* Lerner Decl. ¶ 2 & Ex. A. As this Court is likely aware, on November 8, 2018, Plaintiffs filed the *True Wearables* Case against former Apple employee, Marcelo Lamego, and his company, True Wearables, alleging claims of breach of contract, breach of fiduciary duty, trade secret misappropriation, and patent infringement. Plaintiffs' subpoena to Apple, served nearly one year after discovery began in the *True Wearables* Case, sought information that was not relevant to the *True Wearables* Case, but on its face pertained to the trade secret misappropriation claim Plaintiffs intended to file against Apple the very next day, in this case.

After Apple filed a motion to quash and requested a protective order that, *inter alia*, identified Plaintiffs' requirement under Section 2019.210 to identify their purported trade secrets with reasonable particularity before commencing trade secret-related discovery from Apple (*Id.* ¶ 3 & Ex. B), Plaintiffs withdrew the subpoena to Apple in the *True Wearables* Case.

### 2. Plaintiffs Failed To Allege Their Purported Trade Secrets With Any Particularity.

Plaintiffs' original complaint, filed January 9, 2020, alleged that Apple misappropriated seven broad categories of generic business or technical information, "including, but not limited to, Plaintiffs' business plans, know-how, technical information, technical data, designs, manufacturing techniques and other business information." Lerner Decl. Ex. C (Compl.) ¶ 181. Even though Plaintiffs alleged that Apple had disclosed the alleged trade secrets "by filing patent applications containing Masimo's Confidential Information" and disclosed their "Confidential Information . . .

**Exhibit 10**
**-25-**

in [] patent filings," the complaint failed to identify the portions of Apple's patent filings
containing their alleged trade secrets. *Id.* ¶¶ 185, 187.

> ### 3.   Plaintiffs Ignored Apple's Request For A Section 2019.210 Disclosure And Propounded Trade Secret-Related Discovery.

After Plaintiffs filed their complaint, the parties met and conferred on February
25, 2020.  Lerner Decl. ¶ 5.  Apple explained that the complaint failed to identify
Plaintiffs' alleged trade secrets with sufficient particularity.  *Id.*

Shortly thereafter, on March 6, 2020, Apple requested in writing that Plaintiffs
identify (by line and page number) their trade secrets that purportedly were disclosed in
any published patent application filed by Apple or in any patent held by Apple, as alleged
in the complaint.  *Id*. Ex. E.  Apple explained that because Section 2019.210 requires
Plaintiffs to describe all of their alleged trade secrets with "reasonable particularity"
before commencing trade secret-related discovery, Plaintiffs should be able to identify
those secrets promptly.  *Id.*  Plaintiffs ignored this request.

Instead, on March 16, 2020, Plaintiffs propounded 25 requests for production on
Apple, the majority of which relate to Apple's confidential information—thereby
evidencing Plaintiffs' intent to commence trade secret-related discovery in the absence
of a Section 2019.210-compliant disclosure.  *Id.* ¶ 8 & Ex. F.

> ### 4.   Plaintiffs Filed An FAC That Merely Expanded The Generic Categories Of Information Claimed As Trade Secrets.

After Apple filed a motion to dismiss for failure to state a claim, asserting, among
other things, that Plaintiffs failed to allege any trade secrets with particularity (*see* Lerner
Decl. Ex. D), Plaintiffs voluntarily elected to amend their complaint.  *See* Dkt. No. 21.
On March 25, 2020, Plaintiffs filed their First Amended Complaint (the "FAC").  Lerner
Decl. ¶ 9 & Ex. G.  Rather than correct the deficiencies in the original complaint, the
FAC lists *more—and in some cases, even broader*—categories of generic business
information as Plaintiffs' claimed trade secrets.  *Id.* Ex. G (FAC) ¶ 211.  The number of
categories of purported trade secrets multiplied from seven to approximately *50*, if not

**Exhibit 10
-26-**

more—given that Plaintiffs now claim that combinations of the 50 categories may *also* be secrets.  In addition, the FAC alleges that the following catch-all categories of illusory information are trade secrets:

- "combinations and selections of the above information";
- "knowledge of the varying importance of the information";
- "knowledge for selecting which information and technology are important for improving reliability, improving measurements, and how to successfully combine and implement them to achieve the desired functionality"; and
- "negative information, what works well under certain conditions, and trade-offs of selecting certain techniques."

*Id*.  Plaintiffs' FAC was not accompanied by a Section 2019.210 disclosure.  To date, Plaintiffs have refused to serve a Section 2019.210 disclosure on Apple.

> ### 5.     Plaintiffs' Requests For Production Nos. 5-25 Seek Premature Trade-Secret Related Discovery From Apple.

At issue in this Stipulation are Plaintiffs' Requests for Production Nos. 5 through 25.  *See* Lerner Decl. Ex. F.  Each of these requests seek to uncover Apple's confidential information.

Specifically, 12 of the Requests seek confidential information about the design and/or operation of the Apple Watch's non-invasive monitoring technology—which is not public information, but rather some of Apple's most closely guarded, confidential information:

> **REQUEST FOR PRODUCTION NO. 5:**
> Documents sufficient to show the design and operation of the Accused Products.
>
> **REQUEST FOR PRODUCTION NO. 6:**
> All documents and things describing the operation of the Accused Products, including, without limitation, product brochures, user manuals, instructional materials, and directions for use.

**Exhibit 10**
-27-

**REQUEST FOR PRODUCTION NO. 7:**

All training materials concerning any of the Accused Products, including, without limitation, training manuals, training videos, presentations, and handouts.

**REQUEST FOR PRODUCTION NO. 10:**

All videos or DVDs demonstrating or showing the operation of the Accused Products.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and things that refer or relate to the use, effectiveness, capabilities, functionality, or characteristics of the physiological monitoring features of any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 12:**

All technical documents for the Accused Products, including, without limitation, product specifications, diagrams, schematics, memos, conceptual or technical drawings, design requirements documents, design capture documents, technical requirements documents, product briefs, product plans, product requirements, document trees, assembly design documents, design review documents, system design documents, fabricating drawings, manufacturing documents, and technical meeting minutes.

**REQUEST FOR PRODUCTION NO. 13:**

All documents and things that refer or relate to technical information, specifications, and research data for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 14:**

All documents and things concerning the research, design, and development of any of the Accused Products or any component of any of the Accused Products, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, conceptual or technical drawings, schematics, diagrams, technical specifications, meeting minutes, presentations, and prototypes.

**Exhibit 10**
**-28-**

**REQUEST FOR PRODUCTION NO. 15:**

All documents and things that refer or relate to optical or structural components of any of the Accused Products, including emitters, sensors, detectors, filters, covers, lenses, masks, housing, adhesives, openings, magnets, magnetic shields, carriers, bodies, interior surfaces, walls, protrusions, and sensor subsystems.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and things that refer or relate to any components, surface areas, or adhesives that separate light emitted by LEDs from other components of any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 21:**

All documents and things that refer or relate to power consumption by any heart rate algorithms used in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 22:**

All documents and things that refer or relate to the operation of any LEDs used to determine pulse rate or heart rate for any of the Accused Products, including but not limited to documents and things that refer or relate to LED timing, duty cycle, current, or power usage.

Four of the Requests seek materials pertaining to the algorithms Apple developed to monitor heart rates or other "physiological parameters"—again, Apple's confidential information:

**REQUEST FOR PRODUCTION NO. 17:**

Documents sufficient to show the operation of any algorithms used to monitor any physiological parameter in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 18:**

Documents sufficient to show the operation of any heart rate algorithms used in any of the Accused Products.

Exhibit 10
-29-

**REQUEST FOR PRODUCTION NO. 19:**
All documents and things that refer or relate to the development
of the heart rate algorithms for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 20:**
All documents and things that refer or relate to selection between
any heart rate algorithms used in any of the Accused Products.

Three of the Requests seek information about how the Apple Watch collects heart rate

metrics—confidential technical information that Apple does not publicly disclose, but

rather, safely guards:

**REQUEST FOR PRODUCTION NO. 23:**
All documents and things that refer or relate to collecting first
heart rate metrics using a first technique during a first period and
collecting second heart rate metrics using a second technique
during a second period for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 24:**
All documents and things that refer or relate to changes in
collecting heart rate metrics based on user input for any of the
Accused Products.

**REQUEST FOR PRODUCTION NO. 25:**
All documents and things that refer or relate to changes in
collecting heart rate metrics based on a change in operating mode
for any of the Accused Products.

And two of the Requests seek materials related to Apple's marketing strategy for the

Apple Watch—which, again, is Apple's confidential and sensitive information that

Apple does not disclose publicly:

**REQUEST FOR PRODUCTION NO. 8:**
All marketing materials concerning any of the Accused Products,
including, without limitation, advertisements, promotional
materials, pamphlets, brochures, product catalogs, websites,
product brochures, informational materials, and videos.

**Exhibit 10**
-30-

**REQUEST FOR PRODUCTION NO. 9:**
All publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to any of the Accused Products.

Plaintiffs therefore seek a soup-to-nuts blueprint of the non-invasive monitoring technology developed by their competitor, Apple—from its inception, to its design, to how the physical parts function together, to the way in which Apple markets its product containing the technology to consumers—without first identifying in a Section 2019.210 disclosure any trade secrets belonging to Plaintiffs that Apple allegedly misappropriated to create the technology.

Plaintiffs contend that certain of these Requests seek information pertaining to their patent claims. Even if that is true, the language of the Requests makes crystal clear that the Requests *also* seek information *relating to* Plaintiffs' trade secret claim. Indeed, Plaintiffs use the term "Accused Products" throughout these Requests, defined as "Apple Watch Series 4 or later, as well as the combination of Apple Watch Series 4 or later with an Apple iOS Product." These are the very same Apple Watches that Plaintiffs contend incorporate their trade secrets. Plaintiffs' Requests for Production 5 through 25 therefore seek discovery that should not commence until Plaintiffs have identified their alleged trade secrets with reasonable particularity under Section 2019.210. *See* Cal. Code Civ. Proc. § 2019.210 ("before commencing discovery *relating to* the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity") (emphasis added).

To be clear, Apple does not seek to withhold responsive, *public* documents pending a Section 2019.210 disclosure. In particular, Apple acknowledges that Plaintiffs' Requests for Production 5 through 12 seek certain information that is public, and Apple is prepared to produce responsive, public documents—as indicated in its responses and objections to Plaintiffs' Requests for Production. But to the extent Requests 5 through 12 also seek *non-public* documents, Plaintiffs' discovery of those

**Exhibit 10**
**-31-**

documents should not commence until Plaintiffs serve an adequate Section 2019.210
disclosure.  The remainder of Plaintiffs' Requests for Production—Requests 13 through
25—appear to seek only non-public documents and, therefore, Plaintiffs' discovery of
documents responsive to those Requests should not commence until Plaintiffs serve an
adequate Section 2019.210 disclosure.

> **6.**    **The Parties Met And Conferred About Plaintiffs' Premature Requests For Production.**

On March 28, 2020, Apple initiated the meet-and-confer process in connection
with this Stipulation.  Lerner Decl. ¶ 11.

On April 6, 2020, the parties' counsel met and conferred by telephone.  *Id.* ¶ 13.
During that call, Apple reiterated its position that Plaintiffs are required to identify their
trade secrets with reasonable particularity pursuant to Section 2019.210 and for the
purpose of efficient case management, and therefore, that Plaintiffs are not permitted to
proceed with discovery "related to" the alleged trade secrets until an adequate disclosure
has been made.  Plaintiffs expressed the view that unless the discovery Requests were
"solely" related to trade secrets, they were proper, to which Apple responded that
Section 2019.210 does not require that discovery be "solely" related to the trade secrets
to be stayed absent a proper trade secret disclosure.  That would defeat the purpose of
Section 2019.210, as a plaintiff could simply claim that its discovery touches on a non-
trade secret claim.  The test is whether discovery is "related" to the alleged trade secrets.
*Id.*  Notably, Plaintiffs *admit* that they are alleging that the "Apple Accused Products"
identified as the subject of their patent infringement claims incorporate "some" of
Plaintiffs' claimed trade secrets.  *Id.*

Even though they claim to be ready and able to describe their secrets, Plaintiffs
have insisted that Apple serve an interrogatory requesting that Plaintiffs identify their
trade secrets.  *Id.* Ex. J.  Apple responded as it has numerous times previously:

> [T]urning to the question of an interrogatory, as we have explained multiple
> times, Plaintiffs' demand that Apple serve an interrogatory is improper.  To
> begin with, Plaintiffs have never agreed—and are not agreeing now—that

**Exhibit 10**
-32-

> Plaintiffs will not commence discovery relating to trade secrets until they provide an adequate description of their alleged secrets.  That is critical because, as we explained on the call, there is nothing stopping Plaintiffs from cutting and pasting the vague description of the secrets in the FAC into an interrogatory response (served 30 days, if not more, after the interrogatory is propounded) and claiming that they have complied.  This will not solve the lack of disclosure problem—it will just invite motion practice, which will further delay the process.  Therefore, contrary to Plaintiffs' suggestion that an interrogatory would be faster here, a disclosure pursuant to Section 2019.210 will in fact be faster, as well as more efficient and fair to the parties.

*Id.*

The parties have not been able to resolve their dispute informally, and therefore are proceeding with this Stipulation.

## B.    ARGUMENT

Apple's position here is not complicated.  *First*, Plaintiffs cannot escape the requirement set forth in Section 2019.210 by claiming it is a state court rule.  It is well-established that in state or federal court, Plaintiffs bringing a claim under California's Uniform Trade Secrets Act ("CUTSA," Cal. Civ. Code § 3426.1 *et seq*.) must provide a description of their alleged secrets before they take trade secret-related discovery.  *Second*, the broad allegations in the FAC are not sufficient to satisfy Plaintiffs' burden to identify their alleged secrets with reasonable particularity.  It is well-established that the pleading standard is less demanding—and serves a different purpose—than Section 2019.210's requirement that Plaintiffs provide an adequate identification of the alleged secrets.  *Third*, application of Section 2019.210 is essential in this case because Plaintiffs' conduct frustrates the common-sense considerations that underlie Section 2019.210 and which are essential to effective case management.

### 1.    That Plaintiffs Filed Their CUTSA Claim In Federal Court Does Not Mean Plaintiffs Need Not Describe Their Secrets.

Plaintiffs refuse to provide a Section 2019.210 disclosure in this case based on their contention that Section 2019.210 does not apply to CUTSA cases filed in federal

**Exhibit 10**
**-33-**

court.  That is wrong.  Federal courts in California have held that Section 2019.210 applies to CUTSA cases filed in federal court.  Moreover, as this Court has already recognized, Section 2019.210 can and should be applied in federal court under the Court's discretion as a matter of case management.  It assists the Court and the parties in efficiently litigating the case.  *M/A-COM Tech. Sols.*, 2019 WL 4284523, at *2 (finding "that, under the particular facts of this case, the procedural requirements of Section 2019.210 are warranted and appropriate to assist in the orderly and expeditious handling of discovery").

This Court is far from alone in managing discovery in trade secret cases by applying Section 2019.210.  *See, e.g.*, *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018) ("After review of the law and circumstances in this case, the Court will require that Plaintiffs identify their trade secrets with reasonable particularity compliant with Section 2019.210. Applying Section 2019.210 here will narrow and clarify the basic issues between the parties, thereby furthering the goal of efficiency for the court and litigants."); *Swarmify, Inc. v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018) ("Insofar as controlling law on this subject remains ambiguous, district courts may also exercise discretion in case management to enforce Section 2019.210, and the undersigned judge has in fact done so."); *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014) ("This order agrees and the trade secret disclosure provisions in Section 2019.210 of the California Code of Civil Procedure shall be applied here.").

Tellingly, after two and a half weeks of meet and confers on this topic, Plaintiffs provided one case in support of their position—*SMC Networks, Inc. v. Hitron Techs., Inc.*, 2013 WL 12136372 (C.D. Cal. Mar. 15, 2013)—which is from 2013 and has never been followed by another court.  The Rutter Guide, after citing *SMC Networks*, observes that "[e]ven if state law limitations on discovery are not binding in federal actions, the district court will often grant a protective order (FRCP 26(c), ¶ 11:1060 ff) that accomplishes the same result."  Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial

Exhibit 10
-34-

Ch. 11(III)-A.

As set forth below, application of Section 2019.210 is particularly essential to the management of this case.

### 2.  Plaintiffs Have Not Identified Their Purported Trade Secrets, And The FAC Does Not Suffice.

This is not the typical case where the trade secret plaintiff serves a Section 2019.210 disclosure and the parties litigate the deficiencies.  Here, Plaintiffs have refused to serve *any* Section 2019.210 disclosure at all.  That is a violation of Section 2019.210, and it calls into question the basis for Plaintiffs' trade secret claim in the first place.

Rather than provide a description of their secrets, Plaintiffs have argued that their FAC is sufficient.  Not so.  Again, the FAC sets forth a non-exhaustive list of approximately 50 broad categories of information (*see* Lerner Decl. Ex. G (FAC) ¶ 211), and alleges that Plaintiffs' "trade secrets" also include unspecified "combinations and selections" of those 50 broad categories (*id*).  That is not sufficient to survive a motion to dismiss.  And even if the FAC did adequately plead a trade secret—which it does not—that still would not satisfy Plaintiffs' obligation to describe the alleged secret with specificity.  A finding that allegations are sufficient to survive a motion to dismiss does not mean the trade secret allegations are sufficient under Section 2019.210.  *See, e.g.*, *Gatan, Inc. v. Nion Co.*, 2018 WL 2117379, at *2 (N.D. Cal. May 8, 2018) (explaining that the district court's finding that trade secret allegations were sufficient to survive a motion to dismiss "did not prejudge whether plaintiff's trade secret allegations satisfied § 2019.210," and concluding that the disclosures were insufficient under Section 2019.210).[1]  Thus, Plaintiffs cannot hide behind a flawed FAC and demand access to

---

[1]  Indeed, where, as here, the alleged trade secrets reside in "a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field."  *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1346 (2009);  *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968) (plaintiff "should describe the subject

Exhibit 10
-35-

Apple's confidential files to manufacture a trade secret claim. Unless and until Plaintiffs serve an adequate Section 2019.210 disclosure, they should not be permitted to commence with trade secret-related discovery in this case.

> ### 3.    Plaintiffs' Refusal To Comply With Section 2019.210 Frustrates Each Of The Four Purposes Of The Statute.

Permitting Plaintiffs to commence with trade secret-related discovery in the absence of a sufficient Section 2019.210 disclosure would frustrate the important four-pronged purpose of the statute.

The policy behind Section 2019.210 is straightforward. The statute was enacted "to curb unsupported trade secret lawsuits routinely commenced to harass competitors and former employees." *Computer Econs., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999). The California legislature "understood that plaintiffs in trade secret cases are often unable to identify any trade secrets," and that such claims therefore are "especially prone to discovery abuse." *Id.* By requiring a plaintiff to identify its trade secrets early and with particularity, and restricting the plaintiff's ability to engage in discovery until it does so, Section 2019.210 serves four distinct purposes: Section 2019.210 (1) "promotes well-investigated claims and dissuades the filing of meritless trade secret complaints"; (2) "prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets"; (3) "assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope"; and (4) "enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation." *Id.* at 985; *see also, e.g.*, *M/A-COM Tech. Sols., Inc.*, 2019 WL 8108729, at *2 (stating that Section 2019.210's "reasonable particularity" requirement should be understood in light of this four-pronged purpose of the statute). Plaintiffs' refusal to comply with

matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade").

**Exhibit 10**
**-36-**

Section 2019.210 interferes with each of these goals and will continue to do so unless this Court enters the protective order Apple requests.

###### a) Plaintiffs Have Not Demonstrated That Their Trade Secret Claim Has Any Merit.

In the absence of a Section 2019.210-compliant disclosure, Plaintiffs have done nothing to demonstrate that they have a CUTSA claim justifying discovery of Apple's confidential information. Even a cursory review of Plaintiffs' sole attempt at a list of their purported trade secrets makes clear that Plaintiffs have no idea what, if any, relevant trade secrets they actually possess:

> Plaintiffs own trade secrets that include, but are not limited to, Plaintiffs' technical information, sales and marketing information, and other business information relating to non-invasive monitoring of physiological parameters and products to perform such monitoring. Plaintiffs' technical information includes product plans, engineering plans, product briefs, technical drawings, technical specifications, technical data, product designs, system designs, design captures, assembly design requirements, risk analysis, test procedures and results, test data, design review documents, software requirement specifications, technical know-how, manufacturing techniques and procedures, installation techniques and procedures, and invention disclosures. Plaintiffs' sales and marketing information includes product plans, business plans, customer information, sales pipelines, proposal and quote generation tools, pricing models, pricing schedules, sales training materials, product training materials, marketing and launch plans, marketing analysis, and competitive analysis. Plaintiffs' other business information includes information for successfully operating a noninvasive patient monitoring company, including personnel information, supplier information, and other business spreadsheets and analysis. Plaintiffs trade secrets also include combinations and selections of the above information, and knowledge of the varying importance of the information. Plaintiffs trade secrets also include knowledge for selecting which information and technology are important for improving reliability, improving measurements, and how to successfully combine and implement them to achieve the desired functionality. Plaintiffs' trade secrets also include negative information, what works well under certain conditions, and trade-offs of selecting certain techniques.

Lerner Decl. Ex. G (FAC) ¶ 211.

Exhibit 10
-37-

As a threshold matter, the very first line of Plaintiffs' allegation is problematic—using expansive terms like "including" weighs against a finding that secrets have been identified with particularity. *M/A-COM Tech. Sols., Inc.*, 2019 WL 4284523, at *2 (citing *Gatan, Inc.*, 2018 WL 2117379, at *3 (noting the "use of catchall words such as 'including' weighs against a finding that the designation satisfies § 2019.210")).

The 50 broad categories here, which expand to thousands of broad categories when one accounts for Plaintiffs' vague allegation that the secrets include combinations, is equally problematic.  As this Court previously ruled in another case, "catchall descriptions, lists of categories of alleged trade secrets in broad terms, or a listing of concepts that the plaintiff asserts constitute its trade secret information are all insufficient" bases on which to permit a plaintiff to proceed to discovery in a trade secrets case. *M/A-COM Tech. Sols., Inc.*, 2019 WL 8108729, at *2 (internal quotations omitted) (prohibiting commencement of discovery until plaintiffs provide supplemental disclosures identifying their purported trade secrets with reasonable particularity); *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1113-1114 (N.D. Cal. 2016) (finding 53 paragraphs of asserted trade secret disclosures were not identified with reasonable particularity under Section 2019.210); *Perlan Therapeutics*, 178 Cal. App. 4th at 1350 ("Perlan is not entitled to include broad, 'catch-all' language as a tactic to preserve an unrestricted, unilateral right to subsequently amend its trade secret statement.").  But that is the *only* type of information Plaintiffs have supplied Apple with to date.  For example, the FAC's general categories of "technical drawings," "technical know-how," and "business plans" provide Apple with zero indication about what Plaintiffs specifically claim are their trade secrets, and instead force Apple—and the Court—to simply "guess at the specifics." *Loop AI Labs Inc.*, 195 F. Supp. 3d at 1115 (staying discovery of trade secret claims where disclosure was insufficient).  Such generalized descriptions fall short of the specificity the law requires, and, in the absence of any Section 2019.210 disclosure, let alone a reasonably particularized one, constitute the hallmarks of a plaintiff with a meritless CUTSA claim.

**Exhibit 10**
**-38-**

Particular allegations in the FAC further underscore the problems with Plaintiffs' CUTSA claim.  For example, Plaintiffs describe several categories of purported trade secret information as including "knowledge" about the importance of the information in the health monitoring business.  Lerner Decl. Ex. G (FAC) ¶ 211.  Plaintiffs thereby anchor their CUTSA claim on a theory of inevitable disclosure that California does not recognize (*Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463 (2002) ("Lest there be any doubt about our holding, our rejection of the inevitable disclosure doctrine is complete.")), and seek to thwart former employees' mobility (and competition generally) in violation of California Business and Professions Code Section 16600.  And, again, Plaintiffs allege that Apple incorporated Plaintiffs' undefined trade secrets into Apple's patent applications (Lerner Decl. Ex. G (FAC) ¶ 218), yet Plaintiffs have failed to identify the Apple patent applications that supposedly contain their secrets, let alone where in the thousands of pages of these applications the secrets can be found.

A CUTSA claim requires a plaintiff with actual trade secrets, and, in the absence of a Section 2019.210-compliant disclosure, Plaintiffs have done nothing but demonstrate that they *do not* in fact possess relevant, actionable trade secrets.  Permitting Plaintiffs to commence trade secret-related discovery simply is not warranted on this record.

### b)    Plaintiffs Have Not Demonstrated That They Are Actually Looking For *Their* Secrets In Apple's Files.

Plaintiffs' continued refusal to identify their purported secrets likewise suggests that Plaintiffs hope to sift through Apple's confidential information so that they can claim it as their own.  Without a Section 2019.210 disclosure, Plaintiffs have failed to demonstrate that their request for trade secret-related discovery is anything more than an attempt to obtain *Apple's* confidential information.

Perhaps the most direct evidence of this improper motive is the third-party subpoena Plaintiffs served on Apple in connection with the *True Wearables* Case just *one day before* filing the complaint in this case.  Rather than simply identify their trade

Exhibit 10
-39-

secrets in this case, Plaintiffs attempted an end run around Section 2019.210 by serving a subpoena on Apple in the *True Wearables* Case.  That subpoena on its face called for confidential information from Apple relevant to the subject matter of this case—in a transparent attempt to discover Apple's confidential information in connection with the *True Wearables* Case and claim it as their own in *this* case.  When Plaintiffs were caught red-handed, they withdrew the subpoena.

With the subpoena now withdrawn, Plaintiffs have sought expeditious access to Apple's files via the discovery process in this case.  But a plaintiff in a trade secret case is supposed to search the defendant's files for the *plaintiff*'s confidential information that was allegedly misappropriated.  In the absence of any identification by Plaintiffs of reasonably particularized trade secrets to search for, it appears that Plaintiffs seek to engage in the type of discovery abuse that was the California legislature's prime motivation for enacting Section 2019.210 in the first place.  *See Computer Econs., Inc.*, 50 F. Supp. 2d at 992 (noting that in enacting Section 2019.210, the California legislature "understood that plaintiffs in trade secret cases are often unable to identify any trade secrets," and that such claims therefore are "especially prone to discovery abuse").  Plaintiffs should not be permitted to commence trade secret-related discovery in Apple's files unless and until they are able to satisfy Section 2019.210, and thereby demonstrate to Apple and to the Court that Apple's confidential information is not in fact what they are after.

### c)   Plaintiffs Have Not Assisted The Court In Framing The Scope Of Trade Secret-Related Discovery.

Plaintiffs' refusal to identify their trade secrets with anything close to "reasonable particularity" also makes it impossible for the Court or Apple to properly frame the scope of trade secret-related discovery.

First, the only list of Plaintiffs' purported trade secrets that currently exists—the FAC's amorphous list of approximately 50 categories of "trade secrets," as well as unidentified "combination" trade secrets (Lerner Decl. Ex. G (FAC) ¶ 211)—is so broad

**Exhibit 10**
**-40-**

that it essentially encompasses Plaintiffs' entire business.  Without a particularized trade secret disclosure, it will be impossible for the Court and the parties to define the permissible scope of trade secret-related discovery in this case.  As set forth above, Plaintiffs' open-ended list that "includes" 50 vague categories means Plaintiffs could amend at any time, which is utterly improper.  *Swarmify*, 2018 WL 2445515, at *3 ("Swarmify should not be allowed to drag Cloudflare into court based on meritless arguments, only to reboot its alleged trade secrets lineup and try again when the opening skirmish illuminates glaring flaws in Swarmify's case.").  The same is true of Plaintiffs' demand for an interrogatory—Plaintiffs could amend their response.  Plaintiffs' reference to undefined combinations only compounds the problem.  *E. & J. Gallo Winery*, 2018 WL 3062160, at *5 ("Section 2019.210 mandates a more refined description of each individual component and combination of components purported to be a trade secret prior to commencing discovery on these claims.").

Second, without an adequate description of Plaintiffs' trade secrets, neither the Court nor Apple will have any idea which secrets are in fact public.  Indeed, Plaintiffs allege that their purported trade secrets were *already* disclosed in Apple's published patent applications.  Therefore, Plaintiffs *must* know by page and line number where their alleged secrets appear in Apple's patent applications.  Yet, Plaintiffs have twice refused Apple's request for a disclosure identifying those page and line numbers.  *See* Lerner Decl. ¶¶ 7, 12 & Exs. E & I.  This makes no sense and makes it impossible for Apple to figure out where the alleged secrets lie.  *See Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) ("Moreover, Space Data has not made clear which aspects of its technology and other information are 'part of patents and pending patent applications,' if any, and which are secret.")[2]; *Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2015 WL 8028294, at *4 (N.D. Cal. Dec. 7, 2015); *see also M/A-COM Tech. Sols.,*

---

[2] Like the court in *Bladeroom Group Ltd. v. Facebook, Inc.*, 2015 WL 8028294 (N.D. Cal. Dec. 7, 2015), the court in *Space Data* focused on the failure to distinguish between public and confidential information even at the pleadings stage.

**Exhibit 10**
**-41-**

*Inc.*, 2019 WL 8108729, at *4 ("[A]s a general matter, . . . identifying large numbers of documents without any reference to specific pages does not provide an adequate substitute for detailed information of the trade secrets, as a review of the documents may not provide Defendants sufficient information to identify what precisely Plaintiffs are asserting as a trade secret.").

### d) Plaintiffs Have Not Enabled Apple To Defend Against Their Trade Secret Misappropriation Claim.

Finally, without a Section 2019.210 disclosure, Apple is not in a position to formulate "complete and well-reasoned defenses" to Plaintiffs' claim of trade secret misappropriation. *M/A-COM Tech. Sols., Inc.*, 2019 WL 8108729, at *2. The most rudimentary example is Apple's inability to possibly formulate a defense to Plaintiffs' allegation that Apple has already disclosed trade secrets belonging to Plaintiffs in Apple patent applications (*see* Lerner Decl. Ex. G (FAC) ¶ 218), because Plaintiffs refuse to identify those purported secrets in the first place. Without this information, Apple cannot determine whether the allegation has merit, Apple cannot determine whether it has a viable defense, and Apple cannot take steps to remove the alleged trade secrets from patent documents on a prospective basis—to prevent against the harm that Plaintiffs contend will continue unabated. Instead, Plaintiffs' non-exhaustive list of dozens of vague categories has foisted on Apple the impossible task of deciphering precisely what Plaintiffs claim is actually a trade secret. *See Loop AI Labs Inc.*, 195 F. Supp. 3d at 1115 (defendant could not develop an adequate defense where plaintiff's Section 2019.210 disclosure listed broad categories of potentially protectable secrets, forcing the defendant to "guess" what the actual secrets were); *see also Perlan Therapeutics*, 178 Cal. App. 4th at 1350 (Section 2019.210 disclosure deemed inadequate where plaintiff hid trade secrets "in plain sight" by "including surplusage and voluminous attachments").

Plaintiffs should not be permitted to proceed with trade secret-related discovery at the expense of Apple's ability to defend itself against Plaintiffs' trade secret-related

**Exhibit 10**
**-42-**

claim.

## C.    CONCLUSION

For all of the aforementioned reasons, Apple respectfully requests that the Court grant its motion; enter a protective order prohibiting Plaintiffs from commencing any trade secret-related discovery (including, without limitation, discovery of any non-public documents responsive to Plaintiffs' Requests for Production 5 through 25) until Plaintiffs identify their alleged trade secrets with the reasonable particularity Section 2019.210 requires; and order Plaintiffs to serve on counsel a statement, under seal, that includes the following:

(1) a summary of the specific alleged trade secrets;

(2) the background of the trade secrets and a description of how each secret has derived independent, actual, or potential economic value by virtue of not being generally known to the public;

(3) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; and

(4) each of the precise claimed trade secrets, numbered with a list of the specific elements for each, as claims would appear at the end of a patent.

## III.    PLAINTIFFS' POSITION

Dated: April 30, 2020                          **GIBSON, DUNN & CRUTCHER LLP**

By:    /s/ *Joshua H. Lerner*
Joshua H. Lerner
H. Mark Lyon
Brian M. Buroker
Ilissa Samplin
Angelique Kaounis

*Attorneys for Defendant Apple Inc.*

**Exhibit 10**
**-43-**

Dated:  April 30, 2020                    **Knobbe, Martens, Olson & Bear LLP**


By:     /s/ *DRAFT*
        Joseph R. Re
        Stephen C Jensen
        Perry D. Oldham
        Stephen W Larson

*Attorneys for Plaintiffs Masimo Corporation
and Cercacor Laboratories, Inc.*

**Exhibit 10
-44-**