Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:  (949)-760-0404 Facsimile:  (949)-760-9502

Adam B. Powell (Bar No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000 Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO DISMISS THE THIRTEENTH CAUSE OF ACTION FOR TRADE SECRET MISAPPROPRIATION IN PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:      April 6, 2020<br>Time:      1:30 p.m.<br>Ctrm:      10C<br>Judge:     Hon. James V. Selna |

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF FACTS .................................................................. 2

III.  LEGAL STANDARDS ....................................................................... 3

IV.  ARGUMENT ...................................................................................... 4

     A.    Plaintiffs Plausibly Allege Ownership of Trade Secrets ............. 4

          1.    The Complaint Need Not Disclose Plaintiffs' Trade Secrets ................................................................ 4

          2.    Apple's Cases Do Not Justify a Heightened Pleading Standard ............................................. 7

          3.    Plaintiffs Sufficiently Described Their Trade Secrets .......................................................... 9

     B.    Plaintiffs Plausibly Allege Misappropriation ........................... 11

          1.    Plaintiffs Plausibly Allege Improper Acquisition ........... 11

          2.    Plaintiffs Also Plausibly Allege Improper Use and Disclosure ............................................... 14

     C.    Apple's Affirmative Defense Cannot Be Resolved on the Pleadings ............................................................. 15

          1.    Apple Has Not Shown Reason to Suspect As A Matter of Law ...................................................... 17

              a.    Plaintiffs' 2014 Letter to Apple Does Not Establish Apple's Statute-of-Limitations Defense ........................................... 17

              b.    Apple's '726 Publication Does Not Establish Apple's Statute-of-Limitations Defense ........................................... 19

          2.    Apple Identifies No Information Plaintiffs Could Have Acquired To Support Their Claim in 2014 or 2016 ...................................................... 21

          3.    Apple's Attempt to Discredit the FAC is Improper ........ 23

     D.    Denying Leave to Amend Would Be Improper .......................... 25

V.   CONCLUSION ................................................................................ 25

# TABLE OF AUTHORITIES

**Page No(s).**

*Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs.*,
  2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) ........................................5, 7

*Alamar Biosceinces, Inc. v. Difco Labs, Inc.*,
  1996 WL 648286 (E.D. Cal. Feb. 27, 1996) ................................16, 18, 22

*Alta Devices, Inc. v. LG Elecs., Inc.*,
  2019 WL 1924992 (N.D. Cal. Apr. 30, 2019) ...........................................20

*AlterG, Inc. v. Boost Treadmills LLC*,
  388 F. Supp. 3d 1133 (N.D. Cal. 2019) ......................................................7

*Amer. Hardware Mutual Ins. Co. v. Escamilla*,
  2010 WL 11574194 (N.D. Cal. Sept. 28, 2010)........................................23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................3, 4

*ATS Prods., Inc. v. Champion Fiberglass, Inc.*,
  2015 WL 6552698 (N.D. Cal. Oct. 28, 2015)............................................13

*Autodesk, Inc. v. ZWCAD Software Co.*,
  2015 WL 2265479 (N.D. Cal. May 13, 2015) .............................................6

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
  2018 WL 2298500 (N.D. Cal. May 21, 2018) .............................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................4

*Bickley v. Centurylink Commc'ns, LLC*,
  2015 WL 13309944 (C.D. Cal. Nov. 3, 2015) ..........................................16

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
  2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) ..............................................7

*Board of Trustees of Leland Stanford Junior Univ. v. Roche
Molecular Sys., Inc.*,
  583 F.3d 832 (Fed. Cir. 2009) ......................................................20, 21, 22

*Brescia v. Angelin*,
  172 Cal. App. 4th 133 (2009)......................................................................5

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
  2011 WL 1044899 (N.D. Cal. Mar. 23, 2011)..........................................10

*Brocade Comms. Sys., Inc. v. A10 Networks, Inc.*,
  873 F. Supp. 2d 1192 (N.D. Cal. Jun. 12, 2012)......................................18

# TABLE OF AUTHORITIES
### (*Cont'd*)

**Page No(s).**

*Bryant v. Mattel, Inc.*,
  573 F. Supp. 2d 1254 (C.D. Cal. 2007)........................................................5

*Calendar Research LLC v. StubHub, Inc.*,
  2017 WL 10378336 (C.D. Cal. Aug. 16, 2017) ...................................13, 15

*Carr v. AutoNation Inc.*,
  2018 WL 288018 (E.D. Cal. Jan. 4, 2018).................................................13

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*,
  2018 WL 2558388 (C.D. Cal. Feb. 27, 2018)....................................*passim*

*Chiro-Med Centers, P.C. v. Healthy You MD, LLC*,
  2012 WL 12871655 (D. Ariz. June 28, 2012)...............................................8

*Citizens' Nat'l Bank v. Santa Rita Hotel Co.*,
  22 F.2d 524 (1927) .....................................................................................23

*Delphix Corp. v. Actifo, Inc.*,
  2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) ..........................................15

*Diodes, Inc. v. Franzen*,
  260 Cal. App. 2d 244 (1968)...........................................................*passim*

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014).......................................................................25

*Erickson v. Pardus*,
  551 U.S. 89 (2007) .......................................................................................3

*Erie. Yamada v. Nobel Biocare Holding, AG*,
  2011 WL 13128155 (C.D. Cal. Jan. 20, 2011)...........................................16

*Forcier v. Microsoft Corp.*,
  123 F. Supp. 2d 520 (N.D. Cal. 2000) .................................................18, 19

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005)...........................................................16, 18, 19, 22

*Fulfillium, Inc. v. ReShape Medical, Inc.*,
  2018 WL 1942173 (C.D. Cal. Feb. 7, 2018), *vacated on other
  grounds*, 2018 WL 7286379......................................................................25

*Gabriel Technologies Corp. v. Qualcomm Inc.*,
  857 F. Supp. 2d 997 (S.D. Cal. 2012) .................................................18, 22

# TABLE OF AUTHORITIES
## (*Cont'd*)

**Page No(s).**

*Green Crush LLC v. Paradise Splash I, Inc.*,
  2018 WL 4940824 (C.D. Cal. Mar. 8, 2018) ...............................................7

*Hays v. VDF Futureceuticals, Inc.*,
  2016 WL 5660395 (D. Haw. Sept. 28, 2016) .....................................21, 22

*Heintze v. Wells Fargo Bank, N.A.*,
  2015 WL 12696455 (C.D. Cal. June 19, 2015) ..........................................15

*Highmark Digital, Inc. v Casablanca Design Centers, Inc.*,
  2020 WL 2114940 (C.D. Cal. Mar. 26, 2020) ....................................18, 25

*HiRel Connectors, Inc. v. U.S.*,
  2005 WL 4958547 (C.D. Cal. Jan. 4, 2005) ..............................................10

*Human Longevity, Inc. v. J. Craig Venter Inst., Inc.*,
  2018 WL 6617633 (S.D. Cal. Dec. 18, 2018) .......................................7, 12

*Imax Corp. v. Cinema Techs., Inc.*,
  152 F.3d 1161 (9th Cir. 1998) ..............................................................7, 8

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
  2019 WL 4233578 (C.D. Cal. June 28, 2019) ......................................8, 11

*Invisible Dot, Inc. v. DeDecker*,
  2019 WL 1718621 (C.D. Cal. Feb. 6, 2019) .............................................13

*Javo Beverage Co. v. Cal. Extration Ventures*,
  2019 WL 6467802 (S.D. Cal. Dec. 2, 2019) ..............................................22

*Klang v. Pflueger*,
  2014 WL 4922401 (C.D. Cal. July 10, 2014) ...........................................22

*Les Concierges, Inc. v. Robeson*,
  2009 WL 1138561 (N.D. Cal. Apr. 27, 2009) ...........................................12

*Lilith Games Co. v. uCool, Inc.*,
  2015 WL 4128484 (N.D. Cal. July 8, 2015) .............................................15

*MedioStream, Inc. v. Microsoft Corp.*,
  869 F. Supp. 2d 1095 (N.D. Cal. 2012) ....................................................15

*Meggitt San Juan Capistrano, Inc. v. Yongzhong*,
  575 F. App'x 801 (9th Cir. 2014) ..........................................................5, 8

**TABLE OF AUTHORITIES**
*(Cont'd)*

**Page No(s).**

*Memry Corp. v. Kentucky Oil*,
    2005 WL 8162558 (N.D. Cal. Apr. 8, 2005) ............................................. 17

*MGA Entertainment, Inc. v. Mattel, Inc.*,
    41 Cal. App. 5th 554, 560 (2019) ...................................................... 18

*Modus LLC v. Encore Legal Sols., Inc.*,
    2013 WL 6628125 (D. Ariz. Dec. 17, 2013) ............................................. 8

*Monster Energy Co. v. Vital Pharm., Inc.*,
    2019 WL 2619666 (C.D. Cal. May 20, 2019) ............................................. 10

*New Show Studios LLC v. Needle*,
    2014 WL 2988271 (C.D. Cal. June 30, 2014) ........................................ 5, 9

*Nordstrom v. Ryan*,
    762 F.3d 903 (9th Cir. 2014) ............................................................ 4

*Ovando v. County of Los Angeles*,
    159 Cal. App. 4th 42 (2008) ........................................................... 16

*Pellerin v. Honeywell Int'l, Inc.*,
    877 F. Supp. 2d 983 (S.D. Cal. 2012) ................................................. 12

*Pyro-Comm Sys. Inc. v. W. Coast Fire & Integration Inc.*,
    2015 WL 12765143 (C.D. Cal. Apr. 2, 2015) ........................................... 13

*Reese v. Tracfone Wireless, Inc.*,
    2014 WL 1872175 (C.D. Cal. May 9, 2014) ............................................. 24

*Roadrunner Transportation Servs. v. Tarwater*,
    2010 WL 11483986 (C.D. Cal. Dec. 20, 2010) ......................................... 10

*Rockwell Collins, Inc. v. Wallace*,
    2017 WL 5502775 (C.D. Cal. Nov. 10, 2017) ............................................ 5

*Shaw v. Specialized Loan Servicing, LLC*,
    2014 WL 12586435 (C.D. Cal. Sept. 12, 2014) ........................................ 16

*Silvaco Data Sys. V. Intel Corp.*,
    184 Cal. App. 4th 210 (Cal. Ct. App. 2010) ........................................... 12

*Soc. Apps, LLC v. Zynga, Inc.*,
    2012 WL 2203063 (N.D. Cal. June 14, 2012) ............................................ 6

# TABLE OF AUTHORITIES
## (*Cont'd*)

**Page No(s).**

*Space Data Corp. v. X,*
 2017 WL 5013363, (N.D. Cal. Feb. 16, 2017)......................................7, 14

*Space Data Corp. v. X,*
 2017 WL 3007078, (N.D. Cal. July 14, 2017) ............................................7

*Strategic Partners Inc. v. Vestagen Protective Techs., Inc.,*
 2016 WL 10611186 (C.D. Cal. Nov. 23, 2016) ......................................8, 9

*Synopsys, Inc. v. ATopTech, Inc.,*
 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ............................................7

*T–Mobile USA, Inc. v. Huawei Device USA, Inc.,*
 115 F. Supp. 3d 1184 (W.D. Wash. 2015) ................................................10

*Teradata Corp. v. SAP SE,*
 2018 WL 6528009 (N.D. Cal. Dec. 12, 2018) ..........................................24

*Teva Pharm. USA, Inc. v. Health IQ, LLC,*
 2013 WL 12134185 (C.D. Cal. July 2, 2013) ...........................................10

*TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC,*
 2016 WL 3475322 (C.D. Cal. Jan. 29, 2016)............................................10

*TMX Funding, Inc. v. Impero Techs., Inc.,*
 2010 WL 2509979 (N.D. Cal. June 17, 2010) ............................................9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
 Practices, Prod. Liab. Litig.,*
 2010 WL 6419562 (C.D. Cal. Dec. 9, 2010) ......................................19, 20

*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.,*
 707 F. Supp. 1170 (C.D. Cal. 1989)............................................................8

*Vendavo, Inc. v. Price*
 2018 WL 1456697, (N.D. Cal. Mar. 23, 2018) ..........................................7

*VIA Techs., Inc. v. Asus Computer Int'l,*
 2016 WL 5930280 (N.D. Cal. Oct. 12, 2016)........................................8, 11

*W.L. Gore & Assocs. v. GI Dynamics, Inc.,*
 2010 WL 5184254 (D. Ariz. Dec. 15, 2010)...............................................9

*Wang v. Palo Alto Networks, Inc.,*
 2014 WL 1410346 (N.D. Cal. Apr. 11, 2014) ......................................20, 22

**TABLE OF AUTHORITIES**
*(Cont'd)*

**Page No(s).**

*Ward v. Westinghouse Canada, Inc.*,
   32 F.3d 1405 (9th Cir.1994) ........................................................................ 16

*Webpass Inc. v. Banth*,
   2014 WL 7206695 (N.D. Cal. Dec. 18, 2014) ............................................ 24

*Wolf v. Travolta*,
   167 F. Supp. 3d 1077 (2016) ....................................................................... 23

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
   2011 WL 1226365 (D. Del. Mar. 28, 2011) .................................................. 6

*Zomm, LLC v. Apple Inc.*,
   391 F. Supp. 3d 946 (N.D. Cal. 2019) ...........................................7, 10, 14

*Zora Analytics, LLC v. Sakhamuri*,
   2013 WL 12124612 (S.D. Cal. June 18, 2013) ........................................... 14

**OTHER AUTHORITIES**

California Civil Code § 3426.1 ...................................................11, 12, 14, 18

California Civil Code § 2019.210 ....................................................... *passim*

Federal Rules of Civil Procedure 8 ............................................................. 4, 8

Federal Rules of Civil Procedure 9 .................................................................. 5

# I.  **INTRODUCTION**

Apple's Motion challenges Plaintiffs' trade-secret claims on three grounds.  None have merit.  First, Apple argues for a heightened pleading rule requiring a plaintiff to disclose its trade secrets in detail in the complaint.  But that rule is premised on an outdated 1968 decision from the California Court of Appeals.  The California legislature has since replaced that rule with a statute requiring disclosure at the discovery phase (Cal. Code Civ. Proc. § 2019.210).  The Ninth Circuit, this Court, and other courts have all since rejected challenges similar to that brought by Apple.  Additionally, in this case, this Court already decided that Plaintiffs must provide a Section 2019.210 disclosure to obtain trade-secret discovery, which Plaintiffs will do.  Apple's motion demanding that the complaint *also* describe trade secrets in detail is an unnecessary waste of this Court's resources.

Second, Apple contends there was no misappropriation because Apple had no reason to know the information it obtained from Plaintiffs' former employees belonged to Plaintiffs.  That contradicts the complaint, which alleges Apple *knew* the information was a trade secret for many reasons, including (1) Apple's prior relationship with Plaintiffs, (2) the former employees' roles at Plaintiffs, and (3) Plaintiffs' 2014 letter warning Apple not to induce former employees to disclose Plaintiffs' trade secrets.  The Court should not disregard those factual allegations and accept Apple's assertions as true.

Third, Apple argues the 2014 letter and a 2016 Apple patent publication establish a statute-of-limitations defense.  But the complaint alleges specific facts showing Plaintiffs had no reason to suspect misappropriation had occurred.  The letter was sent three days after Lamego left Cercacor and was trying to *prevent* future misappropriation.  Apple also identifies no similarities between the 2016 Apple patent publication and the later patents disclosing Plaintiffs' trade secrets.  Even if those documents could establish that Plaintiffs suspected

misappropriation, Apple fails to show—as it must—that an investigation would have revealed misappropriation.  The complaint alleges Apple did not publish Plaintiffs' trade secrets until 2017 and did not release the accused products until 2018.  Apple never explains how an investigation in 2014 or 2016 would have revealed misappropriation Apple concealed until 2017.  At best, Apple merely disputes the facts as pleaded.  The Court should deny Apple's Motion.

## II.  STATEMENT OF FACTS

Plaintiff Masimo revolutionized non-invasive patient monitoring, including pulse rate, arterial oxygen saturation, and more.  First Amended Complaint, D.I. 28 ("FAC") ¶ 9.  For years, conventional monitoring was plagued by inaccurate measurements, particularly in the presence of patient motion and low peripheral blood flow.  *Id.* ¶ 11.  The industry believed it was impossible to solve these problems, but Masimo did so with its pioneering Masimo Signal Extraction Technology ("Masimo SET").  *Id.*  Masimo re-invested heavily in new technologies to measure other blood constituents non-invasively, including to identify carbon monoxide poisoning.  *Id.* ¶ 12.  In 1998, Masimo spun off some of its technologies into a new company, Masimo Laboratories, which later changed its name to Cercacor.  *Id.* ¶ 15.  Masimo and Cercacor continue to operate under a cross-license.  *Id.*

In 2013, Apple approached Masimo to discuss potentially collaborating.  *Id.* ¶ 19.  The parties entered a confidentiality agreement and met several times to discuss Apple's desire to integrate Masimo technology into Apple's products.  *Id.*  Apple later hired several of Plaintiffs' employees, including Cercacor's Chief Technical Officer (Marcelo Lamego).  *Id.* ¶¶ 20 and 21.

When Lamego left, he assured Plaintiffs he would not violate his confidentiality obligations.  *Id.* ¶ 23.  Three days after Lamego left Cercacor, Plaintiffs sent a warning letter to Apple to try to avoid any trade-secret misappropriation.  *Id.*  The letter attached a copy of Lamego's employment

agreement and asked Apple to "refrain from inducing Mr. Lamego to take actions that would violate the Agreement while he performs services for Apple." *Id.*   Plaintiffs also asked Apple to "direct Mr. Lamego to honor his obligations to all of his prior employers." *Id.*   Apple never responded. *Id.*   Based on Lamego's assurances and the letter, Plaintiffs hoped Apple would not induce or allow Lamego to use Plaintiffs' trade secrets for Apple's benefit. *Id.*

Unbeknownst to Plaintiffs, however, Lamego thereafter filed confidential patent applications on Apple's behalf that were directed toward technologies he worked on at Plaintiffs. *Id.* ¶ 24.   To prevent Plaintiffs from learning of the applications that contained Plaintiffs' trade secrets, Apple requested the Patent Office refrain from publishing those applications, as would normally occur absent this request. *Id.* ¶ 220.   Apple thus prevented Plaintiffs from learning of those applications until they published as patents in 2017 and later. *Id.*

Apple released its Apple Watch Series 3 in September 2017, but the non-invasive physiological measurement features had significant performance issues. *Id.* ¶ 25.   Thus, Plaintiffs had no reason to think the Series 3 watch incorporated Plaintiffs' pioneering technologies. *Id.*   In 2018, however, Apple released an updated Series 4 watch that solved some of the earlier performance issues. *Id.*   In this lawsuit, Plaintiffs contend that Apple's Series 4 and later watches infringe Masimo's patents and incorporate Plaintiffs' trade secrets. *Id.*   Plaintiffs also seek to correct inventorship and acquire ownership of several Apple patents. *Id.*   Apple's Motion is limited to the trade-secret claims.

### III.  LEGAL STANDARDS

A complaint need only contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).   In deciding a motion to dismiss, "a judge must accept as true all of the factual allegations" contained in the challenged pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).   All

reasonable inferences must be drawn in the non-moving party's favor. *Nordstrom v. Ryan*, 762 F.3d 903, 906 (9th Cir. 2014). A complaint must plead enough facts to state a plausible claim for relief, but "[t]he plausibility standard is not akin to a 'probability requirement[.]'" *Iqbal*, 556 U.S. at 678. Rather, Rule 8(a) "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 561.

## IV.  ARGUMENT

To state a claim for trade-secret misappropriation, the plaintiff must allege: (1) it owned a trade secret; (2) defendant misappropriated a trade secret; and (3) damages. *Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 2018 WL 2558388, at *2 (C.D. Cal. Feb. 27, 2018). Apple challenges the first two elements, but not the third element.

### A.    Plaintiffs Plausibly Allege Ownership of Trade Secrets

The FAC alleges Plaintiffs own trade secrets relating to "technical information, sales and marketing information, and other business information relating to non-invasive monitoring of physiological parameters and products to perform such monitoring." FAC ¶ 211. The FAC also describes the specific types of trade secrets in each category. *See, e.g.*, *id.* ("Plaintiffs' technical information includes product plans, engineering plans, product briefs, technical drawings, technical specifications, technical data, product designs, . . ..."). Nothing more is required to satisfy the first element. Apple demands that Masimo actually *disclose* its trade secrets in the complaint. But such detail is not required.

### 1.    The Complaint Need Not Disclose Plaintiffs' Trade Secrets

Apple seeks to impose a heightened pleading standard requiring Plaintiffs to "describe the trade secrets with sufficient particularity to separate it from

-4-

matters of general knowledge in the trade . . ..."  Br. at 14 (quoting *Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs.*, 2019 WL 4137618, at \*3 (C.D. Cal. Mar. 27, 2019)).  Apple omits that *Acrisure* was quoting an outdated rule from *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252-53 (1968).  As the California Court of Appeals explained, the legislature replaced the *Diodes* requirement to describe trade secrets in the ***complaint*** with Cal. Civ. Proc. Code § 2019.210, which requires the plaintiff do so at the ***discovery*** stage.  *See Brescia v. Angelin*, 172 Cal. App. 4th 133, 144 (2009).

The Ninth Circuit has since held a plaintiff is ***not*** required to identify "the particular trade secrets ***at the pleading stage***."  *Meggitt San Juan Capistrano, Inc. v. Yongzhong*, 575 F. App'x 801, 803 (9th Cir. 2014) (emphasis in original).[1]  As this Court explained, *Meggitt* "made clear that, even assuming § 2019.210 governs actions in federal court, the statute does not provide grounds for dismissing a trade secret claim at the pleading stage."  *New Show Studios LLC v. Needle*, 2014 WL 2988271, at \*9 (C.D. Cal. June 30, 2014).

Thus, this Court declines to apply a "heightened pleading standard" that would require a plaintiff to describe its trade secrets with "reasonable particularity" or "sufficient particularity."  *Cedars Sinai*, 2018 WL 2558388 at \*3-4; *see also Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1269-70 (C.D. Cal. 2007) (holding "reasonable particularity" requirement is "related to discovery rather than related to pleading"); *Rockwell Collins, Inc. v. Wallace*, 2017 WL 5502775, at \*2 (C.D. Cal. Nov. 10, 2017) (same, and explaining the "particularity" requirement is more akin to a Rule 9 pleading requirement).[2]

---

[1] All emphasis is added unless indicated otherwise.

[2] To the extent Apple argues there is a difference between "reasonable particularity" and "sufficient particularity," this Court considered the terms "functionally equivalent."  *Cedars Sinai*, 2018 WL 2558388, at \*3.

Other courts have reached the same conclusion.  *See, e.g.*, *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015) ("courts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation").  Because a plaintiff need not identify trade secrets "at the pleading stage," the complaint "need meet only the federal notice pleading requirements."  *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2011 WL 1226365, *2 (D. Del. Mar. 28, 2011) (applying California law).

Describing trade secrets in discovery makes sense because "requiring plaintiffs to spell out their trade secrets in great detail would risk public disclosure [of] the very thing plaintiffs are seeking to prevent."  *Cedars Sinai*, 2018 WL 2558388 at *5; *see also Autodesk*, 2015 WL 2265479, at *6.  Thus, a trade-secret pleading is "necessarily general," because "requir[ing] more detail would force a plaintiff to disclose, in a publicly filed pleading, the very secrets it seeks to protect."  *Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *2 (N.D. Cal. June 14, 2012).  Even *Diodes* acknowledged a trade-secret plaintiff "does not have to spell out the details of the trade secret to avoid a demurrer to a complaint" because doing so would "destroy the very thing for which he sought protection."  260 Cal. App. 2d at 252.

Apple's erroneous request is also entirely unnecessary.  While there is debate as to whether Section 2019.210 applies in Federal Court, this Court already stayed "trade secret discovery only" in this case until Plaintiffs provide a Section 2019.210 disclosure.  D.I. 37.  Plaintiffs will describe their trade secrets in more detail in a Section 2019.210 disclosure once a protective order is in place.  Apple provides no basis to *also* require Plaintiffs provide the same information in a publicly filed complaint.  Indeed, in a recently-filed discovery motion to Magistrate Judge Early, Apple acknowledged: "It is ***well-established*** that the pleading standard is less demanding—and serves a ***different purpose***— / / /

than Section 2019.210's requirement that Plaintiffs provide an adequate identification of the alleged secrets." Dkt. No. 43-1.[3]

### 2.   Apple's Cases Do Not Justify a Heightened Pleading Standard

None of Apple's cases justify its erroneous pleading standard.  Most quote, directly or indirectly, the same outdated and incorrect statement from *Diodes* discussed above.  *See Acrisure*, 2019 WL 4137618, at *3; *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *5 (N.D. Cal. Oct. 24, 2013); *Green Crush LLC v. Paradise Splash I, Inc.*, 2018 WL 4940824, at *5 (C.D. Cal. Mar. 8, 2018); *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019); *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017).[4]  Apple's reliance on *Space Data* is particularly misplaced because that court later held the "sufficient particularity" requirement is a *discovery* requirement "separate" from a motion to dismiss.  2017 WL 3007078, at *3 (N.D. Cal. July 14, 2017).

Apple also relies on *Human Longevity, Inc. v. J. Craig Venter Inst., Inc.*, 2018 WL 6617633, at *4 (S.D. Cal. Dec. 18, 2018), *Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015), and *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018).  But those decisions all relied on the Ninth Circuit's decision in

---

[3] In its discovery motion, Apple demands **Plaintiffs** disclose their trade secrets in a 2019.210 statement before entry of a protective order, while **Apple** need not provide **any** confidential patent discovery before the entry of such an order.  Plaintiffs are diligently working to negotiate a protective order, which has been complicated by Apple's attempts to deviate from Judge Early's model.

[4] In a footnote, *Synopsys* asserts *Diodes* is still good law.  *Synopsys*, 2013 WL 5770542 at *5, n.1.  But *Synopsys* itself is outdated and predates many of the decisions on which Plaintiffs rely from the Ninth Circuit and this Court.

*Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1163-65 (9th Cir. 1998), which addressed identification of trade secrets on **summary judgment**. This Court and others have held *Imax* does not apply at the pleading stage. *See Cedars Sinai*, 2018 WL 2558388, at *4; *Strategic Partners Inc. v. Vestagen Protective Techs., Inc.*, 2016 WL 10611186, at *5 (C.D. Cal. Nov. 23, 2016); *Chiro-Med Centers, P.C. v. Healthy You MD, LLC*, 2012 WL 12871655, at *4 (D. Ariz. June 28, 2012); *Modus LLC v. Encore Legal Sols., Inc.*, 2013 WL 6628125, at *7 (D. Ariz. Dec. 17, 2013).

Apple's remaining cases likewise did not address the pleading standard. Two cases addressed particularity requirements on summary judgment—not a motion to dismiss. *See Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177-78 (C.D. Cal. 1989); *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 2019 WL 4233578, at *4 (C.D. Cal. June 28, 2019). Apple's last case addressed whether a separate Section 2019.210 statement was sufficient at the **discovery** stage. *See VIA Techs., Inc. v. Asus Computer Int'l*, 2016 WL 5930280, at *3 (N.D. Cal. Oct. 12, 2016).

In contrast, this Court has directly addressed the pleading standard and found the line of cases on which Apple relies "applying a heightened standard unpersuasive." *Cedars Sinai*, 2018 WL 2558388, at *3. As the Court explained, the "reasonable particularity" requirement is a discovery requirement under Section 2019.210, **not** a pleading requirement under Rule 8. *Id.* at *3. This Court relied on the Ninth Circuit's decision in *Meggitt* rejecting a heightened pleading standard and rejected the *Imax* rule because that case addressed summary judgment—not "misappropriation pleadings." *Id.* at *4. Thus, "pleadings for trade secret misappropriation should be held to the standard articulated in Rule 8(a)(2)," which requires only a "short and plain statement of the claim showing the pleader is entitled to relief." *Id.* at *4.

/ / /

### 3. <u>Plaintiffs Sufficiently Described Their Trade Secrets</u>

Plaintiffs' FAC more than satisfies the pleading requirements. The original Complaint plausibly showed Plaintiffs own trade secrets directed to "business plans, know-how, technical information, technical data, designs, manufacturing techniques and other business information." D.I. 1 ¶ 181.[5] Even though that was sufficient, Plaintiffs amended the complaint to describe each category in more detail. *See, e.g.*, FAC ¶ 211 ("Plaintiffs' technical information includes product plans, engineering plans, product briefs, technical drawings, technical specifications, technical data, product designs, system designs, . . .").

Contrary to Apple's suggestion, "broad categories of descriptions suffice at the pleading stage." *Strategic Partners*, 2016 WL 10611186, at *4. As the Court explained, "the level of detail required in trade secret pleadings is not high." *Cedars Sinai*, 2018 WL 2558388 at *6. Indeed, this Court finds disclosures that are less detailed than the FAC sufficient at the pleading stage. *See, e.g.*, *id.* ("financial, business, scientific, technical, economic, and/or engineering information . . ."); *New Show Studios*, 2014 WL 2988271, at *8-9 ("[plaintiff's] confidential, proprietary competitor information, including information regarding [plaintiff's] clients and its business plans, pricing, marketing strategies, client contacts, and other competitive information constituting [plaintiff's] trade secrets").

Other courts do the same. *See, e.g.*, *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010) ("nine broad categories of trade secret information" including "customer lists," "customer profiles," "product information," and "business methods and marketing plan"); *W.L. Gore*

---

[5] Notably, Plaintiffs similarly defined their trade secrets in *Masimo Corp. et al. v. True Wearables, Inc. et al.*, which Apple asserts involves allegations "nearly identical" to this case. *See* D.I. 14 at 3. There, the defendants did not even contest the complaint provided sufficient detail.

& *Assocs. v. GI Dynamics, Inc.*, 2010 WL 5184254, at *8 (D. Ariz. Dec. 15, 2010) ("market studies, financial information, manufacturing methods, and [counterclaimant's] future plans"); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2011 WL 1044899, at *1 (N.D. Cal. Mar. 23, 2011) ("technical, marketing, and employee related information").

Even courts that improperly applied the *Diodes* requirement of "sufficient particularity" found less detailed descriptions sufficient. *See TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*, 2016 WL 3475322, at *5 (C.D. Cal. Jan. 29, 2016) ("proprietary design drawings, manufacturing techniques, and manufacturing equipment including moulds and jigs"); *Monster Energy Co. v. Vital Pharm., Inc.*, 2019 WL 2619666, at *15 (C.D. Cal. May 20, 2019) ("Monster's pricing model," "commercially sensitive Monster e-mails," and "valuable pricing information trade secrets"); *Teva Pharm. USA, Inc. v. Health IQ, LLC*, 2013 WL 12134185, at *3 (C.D. Cal. July 2, 2013) ("timing of product launches" and "pricing for its products"); *Roadrunner Transportation Servs. v. Tarwater*, 2010 WL 11483986, at *4 (C.D. Cal. Dec. 20, 2010) ("customer lists and pricing information").

Apple's argument that Plaintiffs must describe how each secret differs from the patent disclosures (D.I. 38-1 at 19-20) is based on cases incorrectly applying *Diodes. See* Section IV.A.2, *supra*. Apple ignores that public disclosure is "highly factual" and "not properly decided on a motion to dismiss." *Cedars Sinai*, 2018 WL 2558388 at *5; *see also T–Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1191–92 (W.D. Wash. 2015).[6]  Apple also complains that Plaintiffs did not "delineate which trade secrets are owned by

---

[6] Apple suggests a higher standard applies because **Apple** published some of **Plaintiffs'** trade secrets.  D.I. 38-1 at 2.  But a defendant "cannot 'baptize' their wrongful actions by general publication of the secret."  *HiRel Connectors, Inc. v. U.S.*, 2005 WL 4958547, at *7 (C.D. Cal. Jan. 4, 2005).

whom." D.I. 38-1 at 20. But Apple cites no authority and does not explain why that matters at the pleading stage. The FAC alleges Plaintiffs have a "cross-license agreement to facilitate confidential collaboration . . .." FAC ¶ 15.

Apple attempts to pick apart each category of trade secrets (D.I. 38-1 at 15-19) but Apple relies on cases that incorrectly apply *Diodes* to the pleadings. *See* Section IV.A.2, *supra*. Apple's argument on the "combination" secrets cites only cases that did ***not*** address pleadings. *See* D.I. 38-1 at 18. Apple claims one case held trade secrets were "pleaded with insufficient specificity," but the court actually found insufficient evidence on summary judgment. *See InteliClear*, 2019 WL 4233578 at *4. Apple's other case addressed a Section 2019.210 disclosure at the ***discovery phase***. *Via Techs.*, 2016 WL 5930280 at *3. Nothing requires additional detail in the FAC, particularly because Plaintiffs will provide such detail in their forthcoming Section 2019.210 disclosure.

**B.**     **Plaintiffs Plausibly Allege Misappropriation**

Plaintiffs also allege more than sufficient facts to show misappropriation by improper acquisition, use, and disclosure. *See* FAC ¶¶ 215-220.

**1.**     **Plaintiffs Plausibly Allege Improper Acquisition**

A defendant misappropriates trade secrets by acquisition if it "knew or had reason to know that the trade secret was acquired by improper means," which includes "breach or inducement of a breach of a duty to maintain secrecy." Cal. Civ. Code §§ 3426.1(a) & (b)(1). The FAC satisfies these requirements.

The FAC alleges former employees disclosed trade secrets to Apple even though they knew doing so breached their obligations to Plaintiffs. FAC ¶ 215. The FAC also alleges Apple knew the former employees were not authorized to provide trade secrets to Apple. *Id.* ¶ 216. For example, with respect to Lamego, the FAC alleges that Apple knew of his job titles at Plaintiffs, Apple had a prior relationship with Plaintiffs, and Apple received a letter warning it not to allow Lamego to use Plaintiffs' trade secrets. *Id.* Despite this knowledge, Apple

"induced Lamego to disclose Plaintiffs' Confidential Information" and "Lamego disclosed Plaintiffs' Confidential Information for the benefit of Defendant while employed by Defendant." *Id.* That is more than sufficient to allege both Lamego's breach on Apple's behalf, and Apple inducing Lamego to breach.

Apple raises three arguments, but none have merit. **<u>First</u>**, Apple argues Plaintiffs failed to allege Apple knew or had reason to know its acquisition was by improper means. D.I. 38-1 at 21. But that simply ignores all of Plaintiffs' allegations above. The FAC alleges numerous reasons why Apple knew or had reason to know it was acquiring trade secrets through breach or inducement of a duty to maintain secrecy. *See* FAC ¶¶ 215-16.

Rather than address these allegations, Apple relies on irrelevant cases rejecting the inevitable disclosure doctrine, or holding that "mere possession" or "passive reception" of trade secrets is insufficient. *See* D.I. 38-1 at 21-22 (citing *S. Cal. Inst. of Law v. TCS Educ. Sys.*, 2011 WL 1296602, at *7 (C.D. Cal. Apr. 5, 2011); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012); *Les Concierges, Inc. v. Robeson*, 2009 WL 1138561, at *2 (N.D. Cal. Apr. 27, 2009); *Human Longevity*, 2018 WL 6617633, at *6; *Silvaco Data Sys. V. Intel Corp.*, 184 Cal. App. 4th 210, 223 (Cal. Ct. App. 2010)). But Plaintiffs are not relying on inevitable disclosure, "mere possession" of trade secrets, or "passive reception" of trade secrets. Similarly, Apple's assertion that it is not improper to hire former employees (D.I. 38-1 at 21) is irrelevant because Plaintiffs never allege the mere hiring of a former employee is improper. Plaintiffs allege improper acquisition through breach and inducement of a breach of duty to maintain secrecy. *See* FAC ¶ 216.[7]

---

[7] Apple also argues Plaintiffs must show its "former employees improperly acquired trade secrets." D.I. 38-1 at 22. That is also incorrect. A defendant may improperly acquire trade secrets from an individual who lawfully possessed them. *See* Cal. Civ. Code § 3426.1(a).

**Second**, Apple asserts the 2014 letter did not give Apple "notice of the bounds of their purported trade secrets." D.I. 38-1 at 22. Apple cites nothing to support its assertion that Plaintiffs had to disclose their trade secrets to Apple just to prevent Apple from using them. Apple cites *Invisible Dot, Inc. v. DeDecker*, 2019 WL 1718621, at *5 (C.D. Cal. Feb. 6, 2019), but that case merely held the definition of "confidential information" from an employment contract did not satisfy the particularity requirement of *Diodes*. *Id.*

Apple also argues Plaintiffs fail to allege facts describing "how Apple purportedly induced such a breach." D.I. 38-1 at 23. But Apple provides no authority showing Plaintiffs must allege precisely what Apple did to induce a breach. Plaintiffs properly pleaded the allegation "on information and belief" because the information "is not presumptively in the knowledge of the pleading party." *See Calendar Research LLC v. StubHub, Inc.*, 2017 WL 10378336, at *4 (C.D. Cal. Aug. 16, 2017). Apple cites two cases, but neither required specific allegations of how the defendant induced another to breach. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 2015 WL 6552698, at *3 (N.D. Cal. Oct. 28, 2015) (addressing a complaint that "only recites the elements of the claim with conclusory statements"); *Carr v. AutoNation Inc.*, 2018 WL 288018, at *3 (E.D. Cal. Jan. 4, 2018) (addressing a complaint that assumed misappropriation because of defendant's limited industry experience).

Apple also argues Lamego's knowledge is "irrelevant as to Apple's state of mind." D.I. 38-1 at 23. But the FAC alleges Lamego was an Apple employee at the time he provided the information to Apple. Because a "corporation always acts through individuals," Plaintiffs' allegations concerning Lamego's knowledge are "sufficient to allege that [Apple] knew of the misappropriation." *See Pyro-Comm Sys. Inc. v. W. Coast Fire & Integration Inc.*, 2015 WL 12765143, at *5 (C.D. Cal. Apr. 2, 2015). Regardless, the FAC also alleges Apple's knowledge directly. FAC ¶ 216.

**Third**, Apple argues the FAC pleads insufficient detail about the 2013 agreement.  *See* D.I. 38-1 at 24.  Apple cites *Zora Analytics, LLC v. Sakhamuri*, 2013 WL 12124612 (S.D. Cal. June 18, 2013) and *Zomm, LLC v. Apple Inc.*, 391 F. Supp. 3d 946 (N.D. Cal. 2019), but those cases addressed the standards for pleading contract claims—not trade secret claims.  Apple also cites *Space Data*, 2017 WL 5013363 at *2, but the plaintiff in that case alleged trade secrets were acquired solely pursuant to a non-disclosure agreement.  As discussed, Plaintiffs allege improper acquisition through their former employees.

### 2. Plaintiffs Also Plausibly Allege Improper Use and Disclosure

A defendant misappropriates trade secrets by use or disclosure if it (A) used improper means to acquire the information or (B) knew or had reason to know the information was (i) obtained from a person who acquired it using improper means, (ii) acquired under a duty to maintain its secrecy, or (iii) derived from another who had a duty to maintain its secrecy.  Cal. Civ. Code §§ 3426.1(b)(2)(A) and (B).

The FAC alleges Apple used and disclosed Plaintiffs' trade secrets in numerous ways, including Lamego acting on Apple's behalf, Apple incorporating the information into its products, and Apple incorporating the information into its patent applications.  *See* FAC ¶¶ 217-18.  As addressed above, the FAC alleges Apple acquired the information through improper means.  *Id.*  The FAC also alleges Apple knew the information was derived from Lamego, who had a duty to maintain its secrecy.  *Id.*  That is sufficient under both subparagraph (A) and (B) of the statute.  Cal. Civ. Code §§ 3426.1(b)(2)(A).

Apple argues that Plaintiffs failed to allege "which specific" information it used and "how the information allegedly was incorporated into Apple's products or patent applications."  D.I. 38-1 at 25.  That merely rehashes Apple's argument that Plaintiffs did not adequately describe their trade secrets and fails for the same reasons discussed above.  *See* Section IV.A, *supra*.

/ / /

-14-

Apple relies on *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012), but the facts of that case are nothing like this case. In *MedioStream*, the complaint alleged Sony acquired trade secrets by licensing them from another defendant. *Id.* However, the complaint failed to allege Sony had any reason to know the other defendant, who was once authorized to license the technology, was no longer authorized to do so. *Id.* The FAC alleges no similar facts. *See Lilith Games Co. v. uCool, Inc.*, 2015 WL 4128484, at *4 (N.D. Cal. July 8, 2015) (distinguishing *MedioStream* because "there are no facts alleged in this case suggesting that [defendant] believed [plaintiff] had consented to [defendant] using its code"). The FAC alleges numerous reasons why Apple knew or should have known it was not authorized to use Plaintiffs' trade secrets. FAC ¶¶ 217-18.

Apple also cites *Delphix Corp. v. Actifo, Inc.*, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014), for the proposition that alleging misappropriation on "information and belief" is improper. But *Delphix* did not even address a trade-secret claim, much less the requirements for alleging the misappropriation element. In contrast, this Court specifically rejected that argument in a trade-secret case and held that "allegations regarding a defendant's use of trade secrets are properly made 'on information and belief' because such information is not presumptively in the knowledge of the pleading party." *Calendar Research*, 2017 WL 10378336, at *4.

## C.    Apple's Affirmative Defense Cannot Be Resolved on the Pleadings

Apple argues, in one breath, that Plaintiffs do not today have sufficient facts to establish misappropriation and, in the next, that Plaintiffs could have discovered sufficient facts years ago before the relevant patent applications and products were even public. Apple's statute-of-limitation challenge fails. Because the statute of limitations is a defense, Plaintiffs need not "plead facts demonstrating that a claim is timely." *Heintze v. Wells Fargo Bank, N.A.*, 2015

WL 12696455, at *6 (C.D. Cal. June 19, 2015).  Instead, a defendant may raise a statute-of-limitations defense at the pleading stage only where it is "apparent on the face of the complaint."  *See Bickley v. Centurylink Commc'ns, LLC*, 2015 WL 13309944, at *4 (C.D. Cal. Nov. 3, 2015).   Where "allegations are susceptible of an interpretation that would make [the] claim timely," dismissal is "inappropriate."   *Shaw v. Specialized Loan Servicing, LLC*, 2014 WL 12586435, at *7 (C.D. Cal. Sept. 12, 2014).

Under the "discovery rule," the "limitations period begins when the plaintiff has actual or constructive notice of the facts giving rise to the claim." *Alamar Biosceinces, Inc. v. Difco Labs, Inc.,* 1996 WL 648286 at *3 (E.D. Cal. Feb. 27, 1996).   Thus, the limitations period begins only when there is (1) "reason to suspect that a trade secret has been misappropriated" and (2) "a reasonable investigation would produce facts sufficient to confirm this suspicion (and justify bringing suit) . . .."  *Id.*  "[I]f certain facts necessary to the claim are unavailable even to a reasonably diligent plaintiff, the limitations period is tolled until the facts do become available."  *Id.*  This inquiry is a "question of fact unless the evidence can support only one reasonable conclusion."  *Ovando v. County of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008); *Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1408 (9th Cir.1994) ("Under California law, the question of when [the plaintiff] was on inquiry notice of potential wrongdoing is a factual question.").[8]  Apple cannot show the pleadings establish as a matter of law that Plaintiffs (1) had reason to suspect a trade secret

/ / /

---

[8]  Apple half-heartedly suggests Plaintiffs must plead the specific requirements set forth in *Fox*, 35 Cal. 4th at 808.  D.I. 38-1 at 10.  But Federal Courts have rejected the *Fox* pleading standard under *Erie*.  *Yamada v. Nobel Biocare Holding, AG,* 2011 WL 13128155 at *3 n.3 (C.D. Cal. Jan. 20, 2011). Regardless, the FAC alleges earlier discovery was impossible.  FAC ¶ 219.

was misappropriated and (2) a reasonable investigation would have revealed the misappropriation.  Plaintiffs' pleadings allege the exact opposite.

### 1.   Apple Has Not Shown Reason to Suspect As A Matter of Law

Apple claims Plaintiffs had reason to be "suspicious" of misappropriation based on a 2014 letter Plaintiffs sent to Apple and a 2016 Apple patent publication.  However, Apple merely contradicts the allegations in the FAC.

### a.   Plaintiffs' 2014 Letter to Apple Does Not Establish Apple's Statute-of-Limitations Defense

Apple argues that Plaintiffs' 2014 letter to Apple demonstrates Plaintiffs were "suspicious" of misappropriation in 2014.  D.I. 38-1 at 6-7.  But Plaintiffs sent the letter on January 24, 2014—just *three days* after Lamego left Cercacor and possibly before he even started at Apple.  Ilissa Decl., Ex. A.  The letter begins by saying Plaintiffs sent it because Apple "offered employment" to Lamego.  *Id.*  Plaintiffs had no reason to suspect that—three days after Lamego left Cercacor and perhaps before Lamego even joined Apple—Lamego and Apple *had already* misappropriated Plaintiffs' trade secrets.  FAC ¶ 23.

Indeed, the FAC explains that Plaintiffs had confidentiality agreements with both Lamego and Apple, and Lamego assured Plaintiffs he "would not violate his agreements."  *Id.*  Apple cannot establish as a matter of law that Masimo had reason to suspect that both Apple and Lamego had (1) defied their agreements with Masimo, (2) ignored Masimo's warnings, (3) ignored Lamego's assurances to Masimo, and (4) unlawfully misappropriated Masimo's trade secrets.  *See Memry Corp. v. Kentucky Oil*, 2005 WL 8162558 at *6 (N.D. Cal. Apr. 8, 2005) (denying motion to dismiss because plaintiff's "previous relationship" with, and "assurances" from, defendant's employee "could have reasonably precluded [plaintiff] from becoming suspicious").

At best, Apple merely points to a "general distrust of [defendant] . . . rather than suspicion of the factual basis of the claims asserted

in this case," *Highmark Digital, Inc. v Casablanca Design Centers, Inc.*, 2020 WL 2114940 at *13 (C.D. Cal. Mar. 26, 2020).  Far from showing Plaintiffs suspected actual misappropriation, the letter plausibly shows Plaintiffs were taking "reasonable efforts" to maintain the secrecy of their trade secrets and prevent ***future*** misappropriation.  *See* Cal. Civ. Code § 3426.1(d)(2).  Apple cites no authority holding such letters trigger the statute of limitations or that an employer must investigate every time an employee quits.  For good reason, such "general concerns" do not trigger the statute of limitations.  *See Brocade Comms. Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1217 (N.D. Cal. Jun. 12, 2012) (departure of employees and "general concern" that defendant had "used [plaintiff's] confidential information to develop its product" merely created factual dispute as to whether plaintiff "had reason to be suspicious").  As Apple's own authority explains, holding otherwise would be contrary to public policy by "requir[ing] plaintiffs to file a lawsuit at a time when the evidence available to them failed to indicate a cause of action."  *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 815 (2005).

Apple relies heavily on ***summary judgment*** cases with detailed evidentiary records presenting strong evidence the plaintiff knew or should have known of misappropriation.  *See Gabriel Technologies Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1004 (S.D. Cal. 2012) (plaintiff's co-founder emailed employees the technology was a "direct rip-off" of plaintiff's trade secret); *MGA Entertainment, Inc. v. Mattel, Inc*., 41 Cal. App. 5th 554, 560 (2019) (plaintiff asserted an "unclean hands" defense more than three years earlier alleging misappropriation and ***admitted*** in verified interrogatories it suspected misappropriation); *Alamar*, 1996 WL 648286 at *3, *8 (plaintiff had examined "two technical posters and three abstracts" containing plaintiffs' trade secrets); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520 (N.D. Cal. 2000) (five years

/ / /

before suing, the plaintiff was "convinced misappropriation had occurred").[9]

None of Apple's cases support dismissing Masimo's claims on the pleadings.  To the contrary, Apple's own precedent explains that the Court must accept as true Plaintiffs' allegations that they "did not discover, nor suspect" misappropriation.  *See Fox*, 35 Cal. 4th at 811.  Indeed, this Court denied a similar motion after concluding it "must accept" plaintiff's allegation that she "lacked a suspicion" of "wrongful conduct."  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, Prod. Liab. Litig.*, 2010 WL 6419562, at *7 (C.D. Cal. Dec. 9, 2010) (Selna, J.).

### b.   Apple's '726 Publication Does Not Establish Apple's Statute-of-Limitations Defense

Apple also argues the '726 publication in 2016 should have made Plaintiffs suspicious of misappropriation.  But that publication did not disclose Plaintiffs' trade secrets.  Apple's original motion to dismiss incorrectly asserted that Plaintiffs allege the '726 publication disclosed Plaintiffs' trade secrets.  D.I. 16-1 at 8.  But the Complaint said no such thing.  Regardless, to avoid any doubt, Plaintiffs amended to state "Defendant did not publish Plaintiffs' Confidential Information in patent applications until after January 10, 2017, and the first product at issue was not announced until 2018."  FAC ¶ 219.[10]  Apple claims the FAC somehow "contradicts" the original Complaint, but identifies no supposed contradiction.  *See* D.I. 38-1 at 8.

/ / /

---

[9] Apple relies on the portion of *Forcier* denying the plaintiff's request to amend and add a tortious-interference claim, but the proposed claim related to the same trade-secret misappropriation at issue on summary judgment.

[10] Apple's assertion that Paragraph 219 merely alleges Plaintiffs "did not know" about the '726 publication, D.I. 38-1 at 8, is untrue.  *See* FAC ¶ 219.

Apple also asserts the '726 publication should have made Plaintiffs suspicious because it is supposedly similar to later Apple patents. *Id.* But Apple's unsupported attorney argument fails to identify ***any*** similarities between the '726 publication and later patents.

Apple also argues the '726 publication should have made Plaintiffs suspect misappropriation because it showed Lamego was working "in the field of physiological monitoring." D.I. 38-1 at 9. That ignores contrary allegations in the FAC, including that the '726 publication did not disclose Plaintiffs' trade secrets, that Lamego signed numerous confidentiality agreements, and that Lamego assured Plaintiffs he would not violate those agreements. FAC ¶¶ 23 and 219. Apple is wrong to suggest the Court should ignore these allegations.

Apple also provides no legal support for its challenge of Plaintiffs' pleadings and, instead, relies on ***summary judgment*** cases with full records and different facts. For example, Apple asserts the application at issue in *Wang v. Palo Alto Networks, Inc.*, 2014 WL 1410346 at *4 (N.D. Cal. Apr. 11, 2014) was merely in the "same field" as the trade secrets, but it was actually the ***very patent application*** that contained plaintiff's trade secrets. *Id.* at *3. Apple also argues *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 1924992, at *14 (N.D. Cal. Apr. 30, 2019) appropriately relied on *Wang* at the pleading stage, but that is only because *Alta Devices* accepted all allegations in the complaint as true. Here, Apple asks the Court to contradict the FAC's allegations.

Apple also cites *Board of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832 (Fed. Cir. 2009), but that case involved only patent ownership claims not trade secret claims. Additionally, in that case, Roche was aware of patent publications claiming the same subject matter. Moreover, the court distinguished a prior case because, like here, the patent applications in the prior case "were ***secret*** and the party challenging

/ / /

-20-

inventorship lacked actual knowledge of the applications." *Id.* (citing *Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1576 (Fed. Cir. 1994)).

### 2.   Apple Identifies No Information Plaintiffs Could Have Acquired To Support Their Claim in 2014 or 2016

Even if Apple could contradict the FAC and establish that Plaintiffs had reason to suspect misappropriation, Apple's challenge would fail on the second required element of its defense: that "a reasonable investigation would produce facts sufficient to confirm this suspicion (and justify bringing suit) . . .." *Hays v. VDF Futureceuticals, Inc.*, 2016 WL 5660395, at *3 (D. Haw. Sept. 28, 2016).[11] Again, the FAC alleges the opposite: Plaintiffs had no way of learning of the misappropriation until much later because "Defendant did not publish Plaintiffs' Confidential Information in patent applications until after January 10, 2017, and the first product at issue was not announced until 2018." FAC ¶ 219.

Apple makes no attempt to show, much less establish as a matter of law, that Plaintiffs in 2014 and 2016 could have somehow known (1) what Apple's 2017 publications would say or (2) how Apple's 2018 products would function. Apple merely asserts the '726 publication showed Lamego was working in the **general** physiological monitoring field.  That did not disclose trade secret misappropriation or "justify bringing suit." *See Hays*, 2016 WL 5660395, at *3.

Indeed, if Plaintiffs had filed suit in 2014 or 2016, Apple would have claimed Plaintiffs were relying on the inevitable disclosure doctrine based on Lamego's work in the general field.  Even today, Apple (incorrectly) asserts Plaintiffs **still** have insufficient evidence and are basing their claims on inevitable disclosure.  *See* D.I. 38-1 at 21-22.  Apple cannot argue Plaintiffs have insufficient evidence today but could have found sufficient evidence in

---

[11] In a studied attempt to downplay this issue, Apple uses ellipses to omit the words "and justify bringing suit" when quoting *Hays*.  *See* D.I. 38-1 at 6.

2014.  As Apple's authority explains, "[i]t would be contrary to public policy to require plaintiffs to file a lawsuit at a time when the evidence available to them failed to indicate a cause of action."  *Fox*, 35 Cal. 4th at 815.  That would expose plaintiffs to "sanctions for filing a cause of action without any factual support" and subject them to challenges "for failure to specify supporting facts." *Id*. (rejecting defense where inquiry would not have revealed a basis for suit).

Apple cites summary judgment cases where the key evidence of misappropriation was readily available.  *See Gabriel*, 857 F. Supp. 2d at 1004-06 (holding an investigation would have led to the very "applications and issued patents that allegedly contained [the plaintiff's] trade secrets"); *Alamar*, 1996 WL 648286 at *3, *8 (holding an application that was "available on a patent search database" presented a "complete description of Alamar's technology"); *Stanford*, 583 F.3d 832 (holding the application resulting in the challenged patent was published "more than four years before" suit); *Wang*, 2014 WL 1410346 at *4 (holding the application disclosing trade secrets was published more than four years before suit).

Apple cites two cases addressing the pleadings, but in both the plaintiff alleged misappropriation based on patents *issued* five years earlier.  *Klang v. Pflueger*, 2014 WL 4922401 at *5-6 (C.D. Cal. July 10, 2014); *Hays*, 2016 WL 5660395 at *5.  Here, Apple relies on a patent *application* that does not even disclose Plaintiffs' trade secrets.  FAC ¶ 219; *see also Javo Beverage Co. v. Cal. Extration Ventures*, 2019 WL 6467802 at *3 (S.D. Cal. Dec. 2, 2019) (rejecting statute-of-limitations challenge to the pleadings that relied on a patent *application* because even "cases relying on the *issuance* of a patent as constructive notice were either at the summary judgment stage or later in the proceedings with sufficient evidence on the record to decide this issue").

/ / /

/ / /

### 3.    Apple's Attempt to Discredit the FAC is Improper

Apple next attempts to parse and discredit each of Plaintiffs' allegations. D.I. 38-1 at 10-14.  Such arguments are inappropriate at the pleading stage.

**First**, Apple summarily asserts that "Plaintiffs' claim that they simply interpreted Apple's ostensible silence as agreement to the demands in their letter fails."  D.I. 38-1 at 10.  But Apple never explains why Plaintiffs' allegation "fails."  Apple merely references, with a "*cf*" cite, a summary judgment case involving dramatically different facts.  *See Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1097, 1102-03 (2016) (plaintiff was advised—eight years earlier—that the defendant was working to develop a program "identical" to the trade secrets and admitted she thought it "was clear" the defendant "was using the program").

**Second**, Apple argues Lamego was not legally its agent.  D.I. 38-1 at 16. But Apple does not explain why that makes Lamego's representations to Plaintiffs irrelevant.  Apple cites *Citizens' Nat'l Bank v. Santa Rita Hotel Co.*, 22 F.2d 524, 528 (1927), but, unlike the secretary who forged the president's signature in *Citizens National Bank*, Lamego worked in Apple's R&D department and was reasonably speaking to matters that were within "the apparent scope of his authority."  22 F.2d at 528.  Apple also cites *Amer. Hardware Mutual Ins. Co. v. Escamilla*, 2010 WL 11574194 at *3 (N.D. Cal. Sept. 28, 2010), but there, the agency issue presented "questions of fact" that compelled the court to ***deny*** summary judgment.  Thus, at best, Apple's agency arguments merely provide another reason Apple's challenge cannot be resolved on the pleadings.

**Third**, Apple argues Plaintiffs may not rely on the parties' confidentiality agreement because Plaintiffs "failed to plead the agreement's material terms." D.I. 38-1 at 11.  But the FAC relied on the existence of that agreement, not any particular term.  FAC ¶ 19.  Apple—which has never hesitated to attach documents it believes support its position—fails to do so or explain why any

material term is relevant.  Apple cites *Webpass Inc. v. Banth*, 2014 WL 7206695 at *4 (N.D. Cal. Dec. 18, 2014), but that case merely held that a plaintiff alleging breach-of-contract must plead the relevant terms.

**Fourth**, Apple claims it is "irrelevant that the first product 'at issue' was announced in 2018" because the "first ***version*** of the Apple watch" was announced in 2014.  D.I. 38-1 at 12.  But the FAC does not allege the original Apple watch incorporates Plaintiffs' trade secrets.  To the contrary, the FAC specifically alleges the early watches had "significant ***performance issues*** with the non-invasive physiological measurements" that were not resolved until 2018.  FAC ¶ 25; *see Teradata Corp. v. SAP SE*, 2018 WL 6528009 at *9 (N.D. Cal. Dec. 12, 2018) ("Perhaps if the product performed similarly to Teradata's it would have raised suspicion, but that is not alleged in the FAC").  Apple cites *Reese v. Tracfone Wireless, Inc.*, 2014 WL 1872175 at *5 (C.D. Cal. May 9, 2014), but never explains why that summary judgment case addressing the (now-non-existent) laches defense to patent infringement supports its cause.

**Fifth**, Apple disputes Plaintiffs' allegation that Apple actively concealed its misappropriation by requesting non-publication of the patent applications containing Plaintiffs' trade secrets.  D.I. 38-1 at 12-14.  Apple argues Plaintiffs' "non-publication theory makes no sense" because, if Apple was "attempting to hide Lamego's work on healthcare monitoring technologies, it would not have permitted publication of *any* patent application in that ***field*** naming Lamego as an inventor . . .."  D.I. 38-1 at 14.  But the FAC does not allege Apple was concealing Lamego's work in the general "field."  It alleges Apple ***selectively*** withheld publication of applications containing Plaintiffs' trade secrets.

Apple nonetheless argues Plaintiffs must plead "facts tending to exclude" that Apple's "alternative explanation is true."  D.I. 38-1 at 14 (citing *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014); *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706 at *15 (N.D. Cal. June

29, 2017) (applying *Eclectic*)).   But *Eclectic* recognized a complaint "may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is ***implausible***."   751 F.3d at 996 (emphasis in original).  Here, Apple has not clearly identified any "alternative explanation" for its selective approach to requesting non-publication, much less one "so convincing" to render the FAC implausible. Where "the facts are susceptible to more than one legitimate inference, the issue of when the statute of limitations began to run is a question of fact for the jury . . .." *Highmark Digital, Inc. v Casablanca Design Centers, Inc.*, 2020 WL 2114940 (C.D. Cal. Mar. 26, 2020).  "It will be a rare case where the complaint alone contains sufficient allegations to resolve the issue of constructive notice as a matter of law." *Fulfillium, Inc. v. ReShape Medical, Inc.*, 2018 WL 1942173 at *4 (C.D. Cal. Feb. 7, 2018), *vacated on other grounds*, 2018 WL 7286379.  This is not one of those rare cases.

**D.   <u>Denying Leave to Amend Would Be Improper</u>**

Apple argues leave to amend should be denied merely because Plaintiffs voluntarily amended once to successfully narrow the parties' dispute.  D.I. 38-1 at 25.  That argument disregards this Court's Initial Order, which instructs plaintiffs to avoid disputes by amending and states that, "even where a party has amended his Complaint once or a responsive pleading has been served, the Federal Rules provide that leave to amend should be 'freely given when justice so requires.'" D.I. 19 at 6.  While Plaintiffs believe Apple should obtain the detail it seeks in discovery, Plaintiffs should be given leave to amend and provide such detail if the Court were to agree with any portion of Apple's Motion.

## V.  <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court deny Apple's Motion for all the reasons discussed above.

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  May 14, 2020          By: */s/ Adam B. Powell*
                                    Joseph R. Re
                                    Stephen C. Jensen
                                    Perry D. Oldham
                                    Stephen W. Larson
                                    Adam B. Powell

                                    Attorneys for Plaintiffs,
                                    Masimo Corporation and
                                    Cercacor Laboratories, Inc.