JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.:  415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.:  650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8541 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE THIRTEENTH CAUSE OF ACTION FOR TRADE SECRET MISAPPROPRIATION IN PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> **Hearing** <br><br> Date:  Date:  June 8, 2020 <br> Time:  1:30 p.m. <br> Courtroom:  10C <br> Judge:  Hon. James V. Selna |

1
2

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................. 1

II.   ARGUMENT ................................................................................................... 3

   A.   Plaintiffs' CUTSA Claim Is Time-Barred ......................................... 3

       1.   Plaintiffs' Own Legal Threats in 2014 Bar the CUTSA Claim....... 3

       2.   The '726 Publication Demonstrates That Plaintiffs Were on
            Notice of Their CUTSA Claim by at Least 2016 ........................... 8

   B.   Plaintiffs' Description of Their Alleged Trade Secrets Falls Short of
        the Rule 8 Pleading Standard ............................................................. 11

       1.   Apple Is Not Advocating for a Heightened Pleading Standard
            or a Public Disclosure of Plaintiffs' Trade Secrets...................... 12

       2.   Plaintiffs Have Not Adequately Described Their Trade
            Secrets .......................................................................................... 17

   C.   Plaintiffs Do Not Plead Plausible Facts That Constitute
        Misappropriation ................................................................................ 22

   D.   This Court Should Deny Leave to Amend ......................................... 24

III.  CONCLUSION ............................................................................................. 24

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alamar Biosciences Inc. v. Difco Labs. Inc.*,
  1996 WL 648286 (E.D. Cal. Feb. 27, 1996) ............................................. 7

*Alta Devices, Inc. v. LG Elecs., Inc.*,
  2019 WL 1924992 (N.D. Cal. Apr. 30, 2019) ........................................... 7

*Aschroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................. 2, 22

*Autodesk, Inc. v. ZWCAD Software Co.*,
  2015 WL 2265479 (N.D. Cal. May 13, 2015) ...................................... 14, 18

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
  2018 WL 2298500 (N.D. Cal. May 21, 2018)............................................ 17

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................. 2, 22

*Bickley v. Centurylink Commc'ns, LLC*,
  2015 WL 13309944 (C.D. Cal. Nov. 3, 2015) ........................................ 3, 9

*Brescia v. Angelin*,
  172 Cal. App. 4th 133 (2009) ............................................................... 15, 16

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
  2011 WL 1044899 (N.D. Cal. Mar. 23, 2011) .......................................... 20

*Bryant v. Mattel, Inc.*,
  573 F. Supp. 2d 1254 (C.D. Cal. 2007) .................................................... 14

*Calendar Research LLC v. StubHub, Inc.*,
  2017 WL 10378336 (C.D. Cal. Aug. 16, 2017) ........................................ 22

*Carr v. AutoNation Inc.*,
  2018 WL 288018 (E.D. Cal. Jan. 4, 2018) ................................................ 21

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*,
  2018 WL 2558388 (C.D. Cal. Feb. 27, 2018) ....................................... 14, 18

*Citcon USA, LLC v. RiverPay Inc.*,
   2018 WL 6813211 (N.D. Cal. Dec. 27, 2018) ......................................................... 11

*In re City of Los Angeles Med. Marijuana Litig.*,
   2014 WL 12783295 (C.D. Cal. June 13, 2014) ...................................................... 10

*Cypress Semiconductor Corp. v. Superior Ct.*,
   163 Cal. App. 4th 575 (Cal. Ct. App. 2008) ............................................................ 5

*Diodes, Inc. v. Franzen*,
   260 Cal. App. 2d 244 (1968) ..................................................................... 14, 15

*Dumas v. Kipp*,
   90 F.3d 386 (9th Cir. 1996) ......................................................................... 24

*Emazing Lights LLC v. De Oca*,
   2016 WL 3658945 (C.D. Cal. Jan. 7, 2016) ......................................................... 19

*Forcier v. Microsoft Corp.*,
   123 F. Supp. 2d 520 (N.D. Cal. 2000) ............................................................ 7, 20

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) ............................................................................. 3, 8

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
   857 F. Supp. 2d 997 (S.D. Cal. 2012) ................................................................. 7

*Hays v. VDF Futureceuticals, Inc.*,
   2016 WL 5660395 (D. Haw. Sept. 28, 2016) ......................................................... 5

*Highmark Digital, Inc. v. Casablanca Design Ctrs., Inc.*,
   2020 WL 2114940 (C.D. Cal. Mar. 26, 2020) ..................................................... 5, 6

*Hosp. Mktg. Concepts LLC v. Six Continents Hotels, Inc.*,
   2016 WL 9045853 (C.D. Cal. May 2, 2016) ........................................................ 20

*Imax Corp. v. Cinema Techs., Inc.*,
   152 F.3d 1161 (9th Cir. 1998) ...................................................................... 15

*Invisible Dot, Inc. v. DeDecker*,
   2019 WL 1718621 (C.D. Cal. Feb. 6, 2019) ............................................ 11, 12, 15, 16

*MACOM Tech. Sols. Inc. v. Litrinium, Inc.*,
   2019 WL 4282906 (C.D. Cal. June 3, 2019) ........................................................ 15

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012)..................................................................23

*Meggitt San Juan Capistrano, Inc. v. Yongzhong*,
   575 F. App'x 801 (9th Cir. 2014)........................................................................13

*Menard v. CSX Transp., Inc.*,
   698 F.3d 40 (1st Cir. 2012)..................................................................................22

*MGA Entm't, Inc. v. Mattel, Inc.*,
   41 Cal. App. 5th 554 (2019) ........................................................................3, 6, 7

*Modus LLC v. Encore Legal Sols., Inc.*,
   2013 WL 6628125 (D. Ariz. Dec. 17, 2013)..................................................12, 15

*Monster Energy Co. v. Vital Pharm., Inc.*,
   2019 WL 2619666 (C.D. Cal. May 20, 2019)........................................................20

*New Show Studios LLC v. Needle*,
   2014 WL 2988271 (C.D. Cal. June 30, 2014) .......................................................19

*Pellerin v. Honeywell Int'l, Inc.*,
   877 F. Supp. 2d 983 (S.D. Cal. 2012) ..........................................................13, 15

*Plastronics Socket Partners Ltd. v. Highrel Inc.*,
   2019 WL 2054362 (D. Ariz. May 9, 2019)...........................................................19

*Profil Institut fur Stoffwechselforschung GmbH v. ProSciento, Inc.*,
   2017 WL 1198992 (S.D. Cal. Mar. 31, 2017)......................................................18

*Roadrunner Transp. Servs. v. Tarwater*,
   2010 WL 11483986 (C.D. Cal. Dec. 20, 2010)....................................................20

*Rockwell Collins, Inc. v. Wallace*,
   2017 WL 5502775 (C.D. Cal. Nov. 10, 2017) ................................................14, 18

*Simonyan v. Ally Fin. Inc.*,
   2013 WL 45453 (C.D. Cal. Jan. 3, 2013)............................................................23

*Space Data Corp. v. X*,
   2017 WL 3007078 (N.D. Cal. July 14, 2017) .......................................................14

*Space Data Corp. v. X*,
   2017 WL 5013363 (N.D. Cal. Feb. 16, 2017)................................11, 12, 14, 16, 17

*Strategic Partners Inc. v. Vestagen Protective Techs. Inc.*,
    2016 WL 10611186 (C.D. Cal. Nov. 23, 2016) ........................................ 12, 15, 16

*Synopsys, Inc. v. ATopTech, Inc.*,
    2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ........................................ 12

*Teva Pharm. USA, Inc. v. Health IQ, LLC*,
    2013 WL 12134185 (C.D. Cal. July 2, 2013) ........................................ 20

*TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*,
    2016 WL 3475322 (C.D. Cal. Jan. 29, 2016) ........................................ 20

*Vendavo, Inc. v. Price f(x) AG*,
    2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ........................................ 17

*Vivendi SA v. T-Mobile USA Inc.*,
    586 F.3d 689 (9th Cir. 2009) ........................................ 23

*W.L. Gore & Assocs. v. GI Dynamics, Inc.*,
    2010 WL 5184254 (D. Ariz. Dec. 15, 2010) ........................................ 19, 20

*Whyte v. Schlage Lock Co.*,
    101 Cal. App. 4th 1443 (2002) ........................................ 22

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
    2011 WL 1226365 (D. Del. Mar. 28, 2011) ........................................ 13

**Statutes**

Cal. Civ. Code § 3426.1(b) ........................................ 21

**Other Authorities**

General Pleading Requirements, Rutter Group Prac. Guide Fed. Civ. Pro.
    Before Trial Ch. 8-B (Apr. 2020) ........................................ 22

**Treatises**

5 Fed. Prac. & Proc. Civ. § 1224 (3d ed.) ........................................ 22

# TABLE OF ABBREVIATIONS

| Abbreviation | Document |
|---|---|
| Apple | Defendant Apple Inc. |
| Masimo | Plaintiff Masimo Corporation |
| Cercacor | Plaintiff Cercacor Laboratories, Inc. |
| Plaintiffs | Masimo and Cercacor, collectively |
| Original Complaint, Compl. | Plaintiffs' Original Complaint (Dkt. No. 1) |
| FAC | Plaintiffs' First Amended Complaint (Dkt. No. 28) |
| '052 patent | U.S. Patent No. 10,078,052 |
| '095 patent | U.S. Patent No. 9,952,095 |
| '754 patent | U.S. Patent No. 10,219,754 |
| '997 patent | U.S. Patent No. 9,723,997 |
| '196 application | U.S. Patent Application No. 14/740,196 |
| '726 publication | U.S. Patent Publication No. 2016/0061726 |
| CUTSA | The California Uniform Trade Secret Act |
| DTSA | The Defend Trade Secrets Act of 2016 |
| RJN | Apple's Request for Judicial Notice in Support of Defendant's Motion to Dismiss (filed concurrently herewith) |
| RJN Decl. | Samplin Declaration in Support of Apple's Request for Judicial Notice |
| Lerner Decl. | Lerner Declaration in Support of Apple's Reply in Support of Its Motion to Dismiss the Thirteenth Cause of Action for Trade Secret Misappropriation |
| Section 2019.210 | Cal. Civ. Proc. Code § 2019.210 (2005) |

## I.   **INTRODUCTION**

Plaintiffs amended their Original Complaint in an attempt to rescue their trade secret claim, which Apple moved to dismiss as barred by the statute of limitations, and because Plaintiffs had not come close to pleading a trade secret, let alone pleading that Apple had knowledge of any misappropriation.  The First Amended Complaint not only failed to fix these fatal flaws, it exacerbated them, and Plaintiffs' opposition brief confirms that there is no viable trade secret claim here.

*First*, the face of the FAC shows that Plaintiffs suspected, albeit baselessly, that Apple was misappropriating trade secrets in 2014, and suspicion triggers the statute of limitations.  As outlined in a threat letter from Plaintiffs to Apple in 2014, Plaintiffs allege that they disclosed confidential information to Apple during a meeting in 2013; Apple hired their Chief Medical Officer and Executive Vice President for Medical Affairs, who was privy to extremely sensitive information, in 2013; and Apple hired Marcelo Lamego, their Chief Technical Officer, who had unfettered access to Plaintiffs' highly confidential technical information, in 2014.  This letter, which is evidence of Plaintiffs' perception of Apple's actions, unequivocally set out Plaintiffs' suspicion of wrongdoing.  Plaintiffs claimed that they could not *imagine* a reason for Apple's actions other than trade secret misappropriation and that Lamego *could not* work in the health care space without disclosing their secrets.  Plaintiffs' own letter sets out their suspicion.

Two years after Plaintiffs' letter, an Apple patent application listing Lamego as an inventor, and covering the same information that Plaintiffs now claim as their purported trade secrets, was published.  Plaintiffs still did nothing.  No investigation. No follow-up.  Plaintiffs sat back for *six years* and multiple iterations of the Apple Watch without taking any other steps until after the Apple Watch became a success.  That is inexcusable as a matter of law.

*Second*, despite having had two chances, Plaintiffs still have not satisfied the test for pleading a trade secret claim.  Plaintiffs must plead their alleged secrets with sufficient particularity to separate them from matters of general knowledge in the trade

or special knowledge of those persons who are skilled in the trade, and to permit the defendant and the court to ascertain at least the boundaries within which the secrets lie. Plaintiffs have not come close to meeting this standard. Tellingly, the bulk of Plaintiffs' opposition brief is premised on an argument that is made up out of whole cloth—that Apple is asking the Court to apply a "heightened" pleading standard. That is wrong. Apple is not, as Plaintiffs insist, asking the Court to apply Section 2019.210 or Rule 9 of the Federal Rules of Civil Procedure to the FAC. Apple is merely asking that the Court apply the well-established test for alleging this serious claim. Under that test, Plaintiffs' description of more than *fifty* broad categories of information that *could* be secrets—without pleading a single fact to demonstrate that they are—is insufficient, and the claim should be dismissed.

*Third*, Plaintiffs have made a serious allegation about a well-known Apple product, yet Plaintiffs appear to believe that they need not plead any factual bases for their allegations that Apple had knowledge of the alleged misappropriation. Indeed, Plaintiffs ignore the language of CUTSA altogether, which requires pleading facts that show Apple knew or had reason to know about the misappropriation. Instead, Plaintiffs argue that Lamego's knowledge may be imputed to Apple. That is wrong as a matter of law. As courts have recognized, imputing knowledge would eviscerate CUTSA's knowledge requirement. Plaintiffs also argue that they need not "allege precisely what Apple did to induce a breach" leading to the alleged disclosure of Plaintiffs' trade secrets. Opp. Br. 13. Instead, Plaintiffs contend that the allegations in the FAC made "upon information and belief" are adequate even if those allegations are stark legal conclusions without any factual support. *Id.* Plaintiffs are mistaken. Pleading allegations on information and belief is not a license to speculate. Under *Twombly* and *Iqbal*, and the law of this Circuit, Plaintiffs are still required to plead "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs have failed to do so here.

For these reasons, the Court should dismiss the Thirteenth Cause of Action for Trade Secret Misappropriation in the FAC without leave to amend.

## II.  <u>ARGUMENT</u>

### A.  Plaintiffs' CUTSA Claim Is Time-Barred

#### 1.  Plaintiffs' Own Legal Threats in 2014 Bar the CUTSA Claim

Plaintiffs wait until the end of their opposition brief to address the statute of limitations.  Plaintiffs now claim they had no hint of misappropriation until the publication of patent applications in 2017 and the fourth and fifth iterations of the Apple Watch in 2018.  There is, however, no burying the facts or escaping the law here.  The face of the FAC demonstrates that the trade secret claim is time barred.  Indeed, the basis for dismissal here is stronger than in any of the cases cited by either party.  Plaintiffs not only suspected Apple of misappropriation—which triggers the statute of limitations— their outside counsel (indeed the same counsel on this case) sent Apple a letter in 2014 recounting the facts now repeated in the FAC and stating that they *could not imagine* a reason for Apple's actions other than misappropriation.  That, as a matter of law, means the claim here is time barred.

The law is not ambiguous on this point.  "The standard for accrual of the statute of limitation under the discovery rule is *not* the receipt of documentary evidence of misappropriations."  *MGA Entm't, Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554, 563–64 (2019), *review denied* (Feb. 11, 2020).  Plaintiffs "need not be aware of 'specific "facts" necessary to establish the claim.'"  *Id.* (citation omitted).  The question is when Plaintiffs suspected misappropriation, which triggers the statute.  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) ("A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.'").  Plaintiffs' own authorities confirm that the Court *can* decide this timeliness issue at the pleading stage, because it is "apparent on the face of [Plaintiffs' pleadings]."  *Bickley v. Centurylink Commc'ns, LLC*, 2015 WL 13309944, at *4 (C.D. Cal. Nov. 3, 2015).

There is not just one event here that Plaintiffs rely on in the FAC as the basis for

their suspicion.  To the contrary, Plaintiffs claim that in July 2013, shortly after meetings to discuss Plaintiffs' confidential information, Apple began "systematically recruiting" key personnel, including O'Reilly, who was allegedly privy to Plaintiffs' "extremely sensitive information," "to assist in mobile and wellness applications."  FAC ¶¶ 19–20.  By December 2013, Plaintiffs allege, O'Reilly was discussing with the FDA the same matters he worked on for Plaintiffs.  *Id.*  In 2014, Apple hired Lamego, who is likewise alleged to have had "unfettered access" to Plaintiffs' sensitive information.  FAC ¶¶ 21–22.  Following these events, Plaintiffs not only secured a promise from Lamego not to work on "technology similar to Plaintiffs' technology," but also sent, through their counsel, the 2014 threat letter to Apple.  FAC ¶ 23; RJN Decl. Ex. A.

The 2014 threat letter asserts that "Lamego was responsible for *all* of [Plaintiffs'] research and development and *all* projects that are underway, or even contemplated, at [Plaintiffs]," and that "Lamego learned, and personally conceived, a large number of very valuable trade secrets while he was at [Plaintiffs].["][1]  RJN Decl. Ex. A, at 6.  The 2014 letter asserts that Lamego signed a "Confidentiality Agreement" with Plaintiffs acknowledging that his "competi[tion] with *any* business, product or service of [Plaintiffs']. . . . would *necessarily involve the use or disclosure* of [those] trade secrets and proprietary and confidential information," and for this reason demands that Apple not employ Lamego in any area that "involve[s] healthcare technology, including mobile health applications and the measurement of physiological information."  *Id.* at 6–7 (emphasis added).  And lest there be any doubt about Plaintiffs' suspicion, the 2014 letter states that Plaintiffs could not "*imagine any reason* for [Apple hiring Lamego] other than Apple is attempting to gain access to, or at least the benefit of, *[Plaintiffs'] trade secrets*."  *Id.* at 6 (emphasis added).

Plaintiffs now argue that because they sent the 2014 letter to Apple only three days after Lamego left their employ, they "had no reason to suspect" that

---

[1]  Plaintiffs do not dispute that the 2014 letter may be considered by the Court on this motion because it is incorporated by reference into the FAC and the Original Complaint.

misappropriation had already occurred and were attempting only to "prevent future misappropriation." Opp. Br. 17–18 (emphasis omitted). It is too late for Plaintiffs to attempt to revise the FAC or the 2014 letter, which plainly evidence Plaintiffs' suspicions of Apple's alleged misappropriation in 2014. According to the FAC, Plaintiffs' letter followed a failed meeting regarding Plaintiffs' confidential information, which in turn was followed by Apple "systematically recruit[ing] other Masimo key personnel." FAC 19–21. The letter unequivocally states that Apple's employment of Lamego in any area that "involve[s] healthcare technology" would "*necessarily* involve the use or disclosure of" Plaintiffs' trade secrets. RJN Decl. Ex. A, at 7 (emphasis added). Following Plaintiffs' own logic, they had "reason at least to suspect a factual basis" for their CUTSA claim as soon as Lamego began working for Apple in January 2014. *Hays v. VDF Futureceuticals, Inc.*, 2016 WL 5660395, at *3 (D. Haw. Sept. 28, 2016) (applying California law); *see also Cypress Semiconductor Corp. v. Superior Ct.*, 163 Cal. App. 4th 575, 586 (Cal. Ct. App. 2008) ("[T]he misappropriation that triggers the running of the statute [of limitations] is that which the plaintiff suspects, not that which may or may not actually exist."). Indeed, Plaintiffs allege that Lamego had knowledge of the alleged trade secrets (FAC ¶ 22, RJN Decl. Ex. A, at 6), and that Apple "expressed great interest in the Masimo technology" on which Lamego worked while employed by Plaintiffs (RJN Decl. Ex. A, at 6). Coupled with Plaintiffs' apparent inability to "imagine any reason" Apple would hire Lamego other than to misappropriate their trade secrets (*id.*), these allegations further underscore that Plaintiffs suspected— however incorrectly—the factual bases for a CUTSA claim against Apple in 2014.

Equally unavailing is Plaintiffs' reliance on *Highmark* in arguing that Plaintiffs had nothing more than "a 'general distrust of [Apple].'" Opp. Br. 17–18 (quoting *Highmark Digital, Inc. v. Casablanca Design Ctrs., Inc.*, 2020 WL 2114940, at *13 (C.D. Cal. Mar. 26, 2020)). In *Highmark*, the plaintiffs were simply "upset, distrusted [defendants], and questioned the legitimacy of their business dealings" after defendants stopped licensing plaintiffs' products. 2020 WL 2114940, at *12. The court found only

that that plaintiff was upset at the prospect of losing the defendants as customers, but did not suspect the defendants of breaching a license agreement or misappropriating the plaintiff's trade secrets. *Id.* at *13. By contrast, the 2014 letter confirms that Plaintiffs here not only suspected a breach of the nondisclosure agreement Lamego signed, but asserted that Lamego could not work in the healthcare technology field without necessarily breaching the nondisclosure agreement and disclosing their trade secrets, and demanded that Apple therefore not employ Lamego in that field at all. RJN Decl. Ex. A, at 6–7.

Plaintiffs' other arguments should not divert the Court's attention from the fact of, and the allegations in, the 2014 letter. For example, Plaintiffs argue that Apple "cites no authority to support a requirement that 'an employer must investigate every time an employee quits.'" Opp. Br. 18. That is not Apple's point. Nor has Apple advocated for such a requirement. Plaintiffs' 2014 letter and the FAC's allegations demonstrate that, in January 2014, Plaintiffs "suspect[ed] an injury and some wrongful cause." *MGA Entm't*, 41 Cal. App. 5th at 561 (citation omitted). Under the California discovery rule applicable here, "[s]o long as a suspicion exists, . . . the plaintiff must go find the facts; she cannot wait for the facts to find her." *Id.* (citation omitted).

Plaintiffs also argue that they could not have filed a CUTSA claim in 2014 because the claim would have been unsuccessful at that time—i.e., because Apple would have challenged the claim as being based on the rejected inevitable disclosure doctrine. Opp. Br. 21–22. Plaintiffs cite no authority for the extraordinary proposition that a limitations period may be tolled because a defendant has a plausible defense to the plaintiff's claim—nor could they, because if a limitations period could be tolled until a plaintiff had a perfect case, statutes of limitations would have no meaning. *See MGA Entm't, Inc.*, 41 Cal. App. 5th at 564 (the argument that "the discovery rule must prevent the statute of limitations from running until [plaintiffs] had sufficient evidence to support their prima facie case is . . . unsupported by any pertinent legal authority" (citation omitted)).

Plaintiffs' efforts to distinguish the cases on which Apple relies also fall flat. Plaintiffs argue that the Court should ignore *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997 (S.D. Cal. 2012), *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 530–31 (N.D. Cal. 2000), *Alamar Biosciences Inc. v. Difco Labs. Inc.*, 1996 WL 648286 (E.D. Cal. Feb. 27, 1996), and *MGA Entm't*, 41 Cal. App. 5th at 564, because they were decided on summary judgment. Opp. Br. 18–19. The law is to the contrary. This Court may rely on summary judgment cases in deciding a motion to dismiss if it does so assuming that all *plausible* factual allegations in the complaint are true. *See Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 1924992, at *14 (N.D. Cal. Apr. 30, 2019). That is precisely what Apple is asking the Court to do here—to decide the limitations issue now, based on the plausible factual allegations in the pleadings and documents incorporated therein.

For example, the statement in the 2014 letter that Plaintiffs could not "imagine any reason" for Apple's conduct other than misappropriation is at least as strong a basis for finding suspicion as the email in *Gabriel* between the plaintiff's employees stating that the defendant committed a "direct rip-off" of plaintiff's trade secret—which the *Gabriel* court held "established that [plaintiff] had a suspicion of wrong doing which triggered the statute of limitations." *Gabriel Techs. Corp.*, 857 F. Supp. 2d at 1004–06. The concern expressed by Plaintiffs in the 2014 letter also is at least as strong as the "concern" the plaintiff in *Forcier* expressed in a letter to defendant—"concern . . . that [defendant] might make use of the [misappropriated] technology"—which triggered the limitations period in that case. *Forcier*, 123 F. Supp. 2d at 530–31.[2] In sum, Apple cannot be dragged though trade secret litigation six years after Plaintiffs' own letter communicated more than suspicion; it communicated their lawyers' *certainty* that Lamego would disclose Plaintiffs' trade secrets if he worked in the same field for Apple.

Finally, Plaintiffs make the nonsensical argument that the Court cannot dismiss

---

[2] That the *Forcier* court found the limitations period triggered by the plaintiff's suspicion in the context of a California tortious interference claim (Opp. Br. 19 n.9) is immaterial, because the court's analysis is equally applicable to a CUTSA claim.

Gibson, Dunn &
Crutcher LLP

on statute of limitations grounds now because "the Court must accept as true Plaintiffs' allegations that they 'did not discover, nor suspect' misappropriation." Opp. Br. 19 (quoting *Fox*, 35 Cal. 4th at 811). That is simply wrong. The test is whether the running of the statute is evident on the face of the FAC, and Plaintiffs' own assertions in their 2014 letter to Apple that is incorporated by reference into the FAC demonstrate more than enough suspicion to make their trade secret claim time-barred as a matter of law.

### 2. The '726 Publication Demonstrates That Plaintiffs Were on Notice of Their CUTSA Claim by at Least 2016

Plaintiffs do not dispute that Apple's '726 publication in 2016 confirmed that Lamego was working in the very field he allegedly promised he would not work in, which again triggered the clock. Nor do Plaintiffs—sophisticated players in the patent litigation space—even dispute that they were aware of the '726 publication. Instead, Plaintiffs now argue that the '726 publication could not have put them on notice of their CUTSA claim in 2016 because they assert it does not contain their trade secrets, while alleging that three Apple patents published after 2017 and directed to technology in the same field, do. This argument does not withstand scrutiny.

Plaintiffs now pretend that the '726 publication did not give them notice of their claim because it was different from the '754, '997, and '095 patents alleged to contain their trade secrets. *See* FAC ¶ 220. Plaintiffs even claim that Apple "fail[ed] to identify any similarities" between the '726 publication and the three later patents. Opp. Br. 20. But this argument is wrong. The '726 publication relates to the same technology—light emitter technology used for health monitoring to increase reliability of biological readings—as the three patents (the '754, '997, and '095 patents) alleged to also contain Plaintiffs' trade secrets. *See* FAC ¶ 220; Apple Br. at 9. Moreover, several figures in the '726 publication are identical or nearly identical to figures in the '095 patent. *Compare, e.g.*, RJN Decl. Ex. B, at 14–15 ('726 publication, Figs. 1A–2B), *with* FAC Ex. 29, at 1186–87 ('095 patent, Figs. 1A–2B); *see also* App'x at 1 (side-by-side comparison of these figures). The two documents also share identical or nearly identical

written description text that spans across *pages*.  *Compare, e.g.*, RJN Decl. Ex. B, at 20–27 ('726 publication, ¶¶ 2–4, 9–14, 26, 29, 35–36, 39–40, 44, 51–58, 63, 65, 68–69, 78–83, 85–88, *and* Lerner Decl. Ex. A, at 11–18 (highlighted '726 publication identifying same), *with* FAC Ex. 29, at 1193–96 ('095 patent, 1:15–19, 1:23–52; 2:31–39, 2:58–67; 3:1–10, 3:23–25, 3:29–47, 3:58–4:1, 4:9–14; 5:47–6:27, 6:29–34, 6:41–63; 7:3–25, 7:29–39, 7:49–8:39), *and* Lerner Decl. Ex. B, at 33–36 (highlighted '095 patent identifying same).  Moreover, both teach similar key features.  *Compare, e.g.*, RJN Decl. Ex. B, at 24, & Lerner Decl. Ex. A, at 15 ('726 publication, ¶ 61) (teaching demodulating light received from the detectors to eliminate interference), *with* FAC Ex. 29, at 1194, & Lerner Decl. Ex. B, at 34 ('095 patent at 4:38–42) (same).  Lastly, the claims of the '726 publication include similar limitations to the claims of the '095 patent.  *Compare, e.g.*, RJN Decl. Ex. B, at 31, & Lerner Decl. Ex. A, at 22 ('726 publication, claim 22), *with* FAC Ex. 29, at 1200, & Lerner Decl. Ex. B, at 40 ('095 patent, claim 17).  Plaintiffs' assertion that the '726 publication does not disclose their trade secrets but that the '095 patent somehow does is contradicted by the face of these documents.  *Bickley*, 2015 WL 13309944, at *4.[3]

Furthermore, Plaintiffs' allegations that they own, and Apple misappropriated, broad categories of trade secrets has consequences.  Even if the Court were to accept these broad categories as properly pleaded—which it should not for the reasons below— Plaintiffs cannot on the one hand allege that their trade secrets include over fifty broad categories of information "relating to *non-invasive monitoring of physiological parameters* and *products to perform such monitoring*" (FAC ¶ 211 (emphases added)), while on the other hand argue that the '726 publication does not contain those trade secrets—when the '726 publication explicitly discloses an "electronic device" containing "one or more optical sensors" that are "configured to operate *via non-invasive*

---

[3]  Apple disputes that any Apple patent, application, publication, or any other document contains any of Plaintiffs' trade secrets.  To the extent Plaintiffs allege, however, that the '095 patent put them on notice of the alleged misappropriation, then the '726 publication must have as well.

*optical sensing . . . .* [to] obtain[] *health-related and/or physiological information* from a user" (RJN Decl. Ex. B, at 24 ('726 publication, ¶ 56) (emphasis added)).  If Plaintiffs' expansive allegations relating to their purported trade secrets are accepted, then the statute of limitations was triggered by the '726 publication.  It is worth mentioning that the same rationale applies to Plaintiffs' implausible argument that they were not on notice until 2018 when the fourth and fifth iterations of the Apple Watch were released.  If Plaintiffs' broad categories of secrets are to be believed, then the Series 1 Apple Watch announced in September 2016 is every bit as covered as the later iterations.

Now, after apparently realizing that the '726 publication undermines their position that their claims are not time barred, Plaintiffs are trying to run away from the allegations in the Original Complaint, where Plaintiffs expressly suggested that the '726 publication disclosed their trade secrets.  Opp. Br. 19.  Plaintiffs cannot avoid their concessions regarding the statute of limitations.  The Original Complaint alleged that "Lamego had unfettered access to Plaintiffs' highly confidential technical information" and was "exposed to guarded secrets regarding mobile medical products, including key technology and advance plans for future products."  Compl. ¶ 21.  The Original Complaint alleged that by recruiting personnel like Lamego, Apple engaged in "a targeted effort to obtain information and expertise from Masimo and Cercacor."  *Id.* ¶¶ 21–22.  The Original Complaint alleged that after Lamego joined Apple, he "pursued on behalf of Apple numerous patent applications on technologies he was intimately involved in at Plaintiffs Cercacor and Masimo," and cited the '196 application, which published as the '726 publication, as the *first example* of such patent applications.  *Id.* ¶¶ 23–24.  The Original Complaint further alleged that Lamego "acquired Plaintiffs' Confidential Information by virtue of an employer-employee . . . relationship," Lamego disclosed to Apple that "Confidential Information at least by September 2014," and Apple "used and disclosed [that] Confidential Information at least by filing patent

applications" and "in published patent filings."[4]   *Id.* ¶¶ 185–87.   Lastly, the Original Complaint (and the FAC) alleges that the '052 patent, which issued from the '196 application that published as the '726 publication and has an identical disclosure to that of the '052 patent, "claims subject matter that Lamego obtained from discussions with [Plaintiffs'] employees," which is the same allegation Plaintiffs make about the '095 patent.   Compl. ¶¶ 194, 202; *see* FAC ¶¶ 262, 278.   This Court should ignore any "contrary allegations in the FAC" (Opp. Br. 20), because they "contradict or obfuscate facts alleged in the prior pleading."   *In re City of Los Angeles Med. Marijuana Litig.*, 2014 WL 12783295, at *3 (C.D. Cal. June 13, 2014).

In sum, the allegations in Plaintiffs' pleadings and the documents of which the Court may take judicial notice demonstrate that Plaintiffs knew, should have known, or suspected the factual bases for their CUTSA claim in January 2014, but certainly by no later than March 3, 2016.   Plaintiffs' CUTSA claim, filed on January 9, 2020, therefore is time barred.

## B.   Plaintiffs' Description of Their Alleged Trade Secrets Falls Short of the Rule 8 Pleading Standard

Courts, including this one, apply a well-known test to trade secret allegations:   a plaintiff must describe its alleged trade secret "with sufficient particularity to separate it from matters of general knowledge in the trade or special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies."   *Invisible Dot, Inc. v. DeDecker*, 2019 WL 1718621, at *4 (C.D. Cal. Feb. 6, 2019); *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017).   Plaintiffs must describe their purported trade secrets with enough specificity to give Apple "notice of the boundaries of this case."   *Space Data Corp.*, 2017 WL 5013363, at *2.   This is basic Rule 8 notice pleading, which Plaintiffs

---

[4]   Notably, the provisional patent application that led to the '196 application, published as the '726 publication, was filed on August 28, 2014—i.e., "at least by September 2014."   RJN Decl. Ex. B, at 13 ('726 publication, Related U.S. Application Data); Compl. ¶ 186.

do not even come close to satisfying.  Instead, Plaintiffs provide seven pages of briefing setting up a straw man argument about heightened pleading standards that Apple is not advancing in this case.

### 1.    Apple Is Not Advocating for a Heightened Pleading Standard or a Public Disclosure of Plaintiffs' Trade Secrets

For the avoidance of doubt, the widely accepted pleading standard for trade secret claims is *not* a "heightened" standard, nor is Apple advocating for one.  The Northern District recently explained that requiring a plaintiff to plead a trade secret claim with "sufficient particularity" is *not* equivalent to a heightened Rule 9 pleading standard:

> To plead a trade secret claim, . . . . the plaintiff must describe the alleged trade secret "with sufficient particularity to separate it from matters of general knowledge."  *This is not so high a standard as the particularity requirement for fraud claims under Federal Rule of Civil Procedure 9.  But the pleadings must have enough specificity to provide both the Court and defendants with "notice of the boundaries of this case."*

*Citcon USA, LLC v. RiverPay Inc.*, 2018 WL 6813211, at \*4 (N.D. Cal. Dec. 27, 2018) (quoting *Space Data Corp.*, 2017 WL 5013363, at \*1–2) (emphasis added); *see also Invisible Dot*, 2019 WL 1718621, at \*4–5 (quoting *Citcon* for the applicable pleading standard, and dismissing trade secret claims because a "laundry list of items"— "research, business plans, product plans, products, services, customer lists and customers . . . market research, works of original authorship, intellectual property . . . photographs, negatives[,] digital images, software, computer programs, ideas, developments, inventions"—"does not meaningfully define the trade secrets at issue").[5]

Plaintiffs' own cases make clear that this Rule 8 standard is the pleading standard applicable to trade secret claims.  *See, e.g.*, *Strategic Partners Inc. v. Vestagen Protective Techs. Inc.*, 2016 WL 10611186, at \*4 (C.D. Cal. Nov. 23, 2016) ("According to the pleading standard 'widely adopted by federal courts' . . . the complaint 'should describe

---

[5]  In *Invisible Dot*, this Court also held that plaintiff adequately pled a *separate* claim for fraud under Federal Rule of Civil Procedure 9.  *Invisible Dot*, 2019 WL 1718621, at \*8–9.  The Court thus clearly delineated the two pleading standards.

the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade . . . .' [and] 'permit the defendant to ascertain at least the boundaries within which the secret lies.'" (citation omitted)); *Modus LLC v. Encore Legal Sols., Inc.*, 2013 WL 6628125, at *6–7 (D. Ariz. Dec. 17, 2013) (trade secret plaintiff must describe the alleged trade secrets "with *sufficient particularity*"). Requiring Plaintiffs to describe their trade secrets with more specificity than alleging that they "include, but are not limited to" over fifty broad categories (FAC ¶ 211) that "encompass just about every piece of material Plaintiff[s] ha[ve] ever created or acquired" (*Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *8 (N.D. Cal. Oct. 24, 2013)) is fully consistent with these pleading requirements under Rule 8.

Apple likewise is not asking Plaintiffs to satisfy Section 2019.210 in the FAC (although the fact that Plaintiffs still have not even attempted to satisfy Section 2019.210 five weeks after the Court's Order requiring a Section 2019.210 disclosure is unquestionably troubling). There is no dispute that Section 2019.210 is a discovery rule, and not a rule that imposes a pleading standard or requirement. In fact, Apple invoked Section 2019.210 in connection with Plaintiffs' trade secret-related discovery requests in this case (*see* Joint Rule 26(f) Report at 7–8, 16–20 (Apr. 14, 2020), ECF. No. 33; Joint Stipulation Regarding Apple's Motion for a Protective Order at 3–6, 11–12, 16–28 (Apr. 30, 2020), ECF. No. 43-1), not in connection with Plaintiffs' pleadings (*see* Apple Br. (Apr. 20, 2020), ECF. No. 38-1 (no mention of Section 2019.210); Memorandum of Points and Authorities in Support of Apple's Motion to Dismiss (Mar. 4, 2020), ECF. No. 16-1 (same)). This Court already ruled that Section 2019.210 applies to trade secret-related discovery in this case. *See* Order Re Scheduling Dates at 1 (Apr. 17, 2020), ECF. No. 37. Plaintiffs' efforts to evade that Order *in discovery* is the subject of Apple's motion for a protective order pending before Judge Early, and Plaintiffs'

efforts to inject that dispute here—on a *pleadings* challenge—is improper.[6]

Likewise unavailing is Plaintiffs' argument that they will identify their trade secrets in a Section 2019.210 disclosure at some unspecified time in the future, and therefore it is "unnecessary" for them to provide "the same information" in their pleadings.  Opp. Br. 6.  The trade secret description Plaintiffs are required to plead in their complaint is not the same as that required under Section 2019.210.  Plaintiffs must provide an adequate description of their alleged trade secrets in the pleadings, irrespective of what is to come in the Section 2019.210 disclosure, because such a description is necessary to provide the Court and Apple with adequate notice of the boundaries of Plaintiffs' CUTSA claim.  *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012).[7]

Notably, the cases on which Plaintiffs rely support *Apple* on these points.  In *Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 2018 WL 2558388, at *3–4 (C.D. Cal. Feb. 27, 2018), *Rockwell Collins, Inc. v. Wallace*, 2017 WL 5502775, at *2 (C.D. Cal. Nov. 10, 2017), and *Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1269–70 (C.D. Cal. 2007), this Court held only that Section 2019.210 or the heightened pleading standard of Rule 9 (or both) do not apply to the pleading of DTSA and CUTSA claims.  And the court in *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015) held that a complaint must "provide 'reasonable notice of the issues which must be at the time of trial and [. . .] provide reasonable guidance in ascertaining the scope of appropriate discovery'" (*id.* (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968))), which is precisely the Rule 8 pleading standard Apple is

---

[6]  Plaintiff relies on *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2011 WL 1226365, *2 (D. Del. Mar. 28, 2011), in which the court rejected the argument that Section 2019.210 creates a heightened pleading standard for CUTSA claims.  Apple does not seek to apply Section 2019.210 at the pleading stage; this case therefore is inapposite.

[7]  Plaintiffs' reliance on *Meggitt San Juan Capistrano, Inc. v. Yongzhong*, 575 F. App'x 801, 803 (9th Cir. 2014) is misplaced because Apple is not asking Plaintiffs to disclose their "particular trade secrets *at the pleading stage*."  *Id.*  *Meggitt* was a preliminary injunction case in which the court held that Section 2019.210 applies only at the discovery stage (*id.*)—a proposition that Apple does not dispute.

advocating for here.

Plaintiffs' attempt to distinguish Apple's cases also falls flat. With respect to *Space Data Corp.*, 2017 WL 5013363, Plaintiffs argue that in a later opinion, the *Space Data* court "held [that] the 'sufficient particularity' requirement is a discovery requirement 'separate' from a motion to dismiss." Opp. Br. 9 (quoting *Space Data Corp. v. X*, 2017 WL 3007078, at *3 (N.D. Cal. July 14, 2017)). That is false. In its later opinion, the *Space Data* court stated only that the defendant raised the issue of the plaintiff's compliance with Section 2019.210 "*relatedly*" to its motion to dismiss, and noted that "the § 2019.210 statement is an issue separate from [defendant's] motion to dismiss, and the parties do not dispute that." *Space Data Corp.*, 2017 WL 3007078, at *3 (emphasis added).[8] The *Space Data* court held that the plaintiff's *second* amended complaint "sufficiently identified" the trade secrets at issue "under the Rule 8 standard," and included enough "'reasonable' detail . . . to permit [the defendant] to prepare a defense and for the court to craft limits on discovery" (*id.*)—which is what was lacking in the plaintiff's *first* amended complaint (*Space Data Corp.*, 2017 WL 5013363, at *2), and precisely what is missing from Plaintiffs' FAC here (FAC ¶ 211).

Plaintiffs also argue that several of the cases on which Apple relies are flawed for relying on the Ninth Circuit's decision in *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161 (9th Cir. 1998), which Plaintiffs argue is inapposite because it is a summary judgment case that "does not apply at the pleading stage." Opp. Br. 7–8. But whether *Imax* applies here is irrelevant, because the applicable pleading standard under Rule 8 is still the same as explained above, and Plaintiffs' own authority confirms. *See Strategic Partners*, 2016 WL 10611186, at *4; *Modus LLC*, 2013 WL 6628125, at *6–7.

To further obfuscate the inadequacy of their trade secret allegations, Plaintiffs argue that the well-established pleading standard in this Circuit is premised on an

---

[8] The second *Space Data* decision was cited by the Court in *Cedars Sinai*, 2018 WL 2558388, at *4, further underscoring that *Cedars Sinai* does not support Plaintiffs' arguments because that case decided only that a Rule 8 pleading standard is distinct from Section 2019.210, which Apple does not dispute.

"outdated and incorrect" rule from *Diodes*, 260 Cal. App. 2d 244.  Opp. Br. 7–8.  Plaintiffs also assert the California "legislature replaced the *Diodes* requirement to describe trade secrets in the complaint with Cal. Civ. Proc. Code § 2019.210, which requires the plaintiff do so at the discovery stage." Opp. Br. 5 (citing *Brescia v. Angelin*, 172 Cal. App. 4th 133, 144 (2009)).  This argument is without merit.  Apple has searched the case law and not found a single case referring to *Diodes* as outdated or incorrect in any respect.  In fact, far from being "outdated and incorrect," this very Court has explained that *Diodes* remains relevant to the pleading standard for a trade secret claim as recently as last year.  *See MACOM Tech. Sols. Inc. v. Litrinium, Inc.*, 2019 WL 4282906, at *6 (C.D. Cal. June 3, 2019) (Selna, J.) (finding that the complaint's trade secret description was "sufficiently particular" under *Diodes*); *Invisible Dot*, 2019 WL 1718621, at *4–5 (finding that the complaint's "laundry list . . . . of broad subject areas" was not described with "enough specificity" under *Diodes*).  Other courts in this Circuit have "widely adopted" *Diodes* as "set[ting] out the applicable *pleading* standard" for a trade secret claim.  *Pellerin*, 877 F. Supp. 2d at 988 & n.1 (emphasis added) (rejecting argument that *Diodes* does not apply to pleadings in federal court; "federal courts in the Ninth Circuit look to *Diodes* for guidance on the applicable pleading standard for claims brought under the CUTSA").

Plaintiffs' cases also contradict their argument that *Diodes* has been "replaced." Opp. Br. 5.  Plaintiffs rely on *Brescia v. Angelin*, 172 Cal. App. 4th 133, 144 (2009), but rather than finding *Diodes* replaced, the California Court of Appeals explained in *Brescia* that the California legislature codified *Diodes*.  Nothing in *Brescia* suggests that the pleading standard for a CUTSA claim articulated in *Diodes* has been overruled or is "outdated."  Moreover, *Brescia* concerned solely the adequacy of a Section 2019.210 disclosure.  *Id.* at 143.  *Brescia* contains no discussion or analysis about whether *Diodes* applies to the pleading of a claim for trade secret misappropriation.

In sum, courts in this Circuit are in agreement that under Rule 8, a plaintiff must describe their alleged trade secrets with enough detail to put defendant and the court on

notice of the bounds of their claim.  *See, e.g.*, *Invisible Dot*, 2019 WL 1718621, at *4; *Space Data Corp.*, 2017 WL 5013363, at *2.  Apple is not asking this Court to apply any pleading standard that is different from, or more stringent than, that one.

### 2.      Plaintiffs Have Not Adequately Described Their Trade Secrets

Plaintiffs do not even attempt to argue that the FAC enables Apple or the Court to evaluate whether their purported trade secrets are distinguishable from matters of general knowledge.  Instead, Plaintiffs argue that they have sufficiently described their alleged trade secrets because "broad categories of descriptions suffice at the pleading stage."  Opp. Br. 9 (quoting *Strategic Partners*, 2016 WL 10611186, at *4).  But that is not the law.

In the case Plaintiffs rely on for this proposition, *Strategic Partners*, the counter-plaintiff identified a *specific product*—a specialty fabric—to which all of the described categories of trade secrets related.  2016 WL 10611186, at *5.  The court found this description adequate because it put the counter-defendant "on notice of the scope of the counterclaim."  *Id.*  By contrast, here the Plaintiffs' alleged trade secrets are not tied to any specific product (or specific categories of products), but allegedly include all information relating to any "non-invasive monitoring of physiological parameters and products to perform such monitoring."  FAC ¶ 211.  Unlike the counter-plaintiff in *Strategic Partners*, Plaintiffs here merely tie their broad, categorical terms in paragraph 211 of their FAC to the general subject matter of the pleading (non-invasive monitoring of physiological parameters), without putting Apple or the Court on notice of the specific information encompassed by those terms that Plaintiffs contend have been misappropriated.  *See Space Data Corp.*, 2017 WL 5013363, at *2.  That presents a clear *Iqbal* problem.

In *Space Data Corp.*, for example, the plaintiff alleged that Google misappropriated its trade secrets in connection with Google's "research and development project with the mission of providing wireless services using high-altitude balloons placed in the stratosphere."  *Id.* at *1.  The court dismissed plaintiff's

misappropriation claims because, *inter alia*, the pleading "merely provide[d] a high-level overview" of the plaintiff's purported secrets, such as "data on the environment in the stratosphere" and "data on the propagation of radio signals from stratospheric balloon-based transceivers." *Id.* at *2. Thus, the court concluded that the qualifiers attached to the broad "data" categories of information ("on the environment in the stratosphere" and "on the propagation of radio signals from stratospheric balloon-based transceivers") were insufficient to state a claim because they simply tied the "data" categories of information to the general subject matter of the action—i.e., Google's project to provide "wireless services using high-altitude balloons placed in the stratosphere." *Id.* Plaintiffs have taken the same approach to their broad allegations here. *See* FAC ¶ 211.

In other words, Plaintiffs' broad, catch-all terms used to describe their purported trade secrets—e.g., "technical drawings," "design review documents," "technical know-how," and "marketing analysis" (*id.*)—offer nothing of substance. *See, e.g.*, *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) (allegations of "design review templates," "fluidics design files," and "source code files" lacked particularity to constitute a trade secret); *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018) (rejecting trade secret definition that included "'negative knowhow'" because the "broad, categorical term[]" was "more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets [the plaintiff] has a basis to believe actually were misappropriated"); *Profil Institut fur Stoffwechselforschung GmbH v. ProSciento, Inc.*, 2017 WL 1198992, at *6 (S.D. Cal. Mar. 31, 2017) (dismissing misappropriation claims as to "general categories" of information such as "methods and procedures items"). Plaintiffs' highly general descriptions fail to put Apple on notice of the scope of Plaintiffs' trade secret claim as is required under Rule 8.

Indeed, the trade secret descriptions at issue in cases cited by Plaintiffs were

significantly more detailed than Plaintiffs' description here.  The *Cedars Sinai* Court found the trade secret description to be adequate even if the court were to apply a heightened pleading standard, referencing the plaintiff's identification of several specific trade secrets disclosed in specific confidential communications and citations to specific confidential documents, such as "a confidential presentation," "unpublished patent applications," "confidential manuscript," "technical information on two possible test methods," "a validation method," and "a confidential . . . market research presentation," which the court found "limit[ed] the scope of [plaintiff's] alleged trade secrets and g[ave] enough detail for [defendant] to 'prepare a defense and for the court to craft limits on discovery.'"  2018 WL 2558388, at *4–6 & nn.3, 6.  In *Rockwell*, the plaintiff not only identified specific categories of confidential information, but also cited specific confidential documents downloaded by the defendant that allegedly contained the plaintiff's trade secrets.  2017 WL 5502775, at *2.  And in *Autodesk*, the plaintiff identified specific "source code which comprises AutoCAD 2007 and 2008" and described specific "portions of code that underlie the commands, interfaces and program files" relating to specific features, and thus "identified its alleged trade secrets with *sufficient particularity* to survive a Rule 12 motion."  2015 WL 2265479, at *6 (emphasis added).  That is very different from this case, where Plaintiffs pleaded nothing more than broad, generic categories of information that cover their entire business model and cited none of their confidential documents that could give Apple notice of the bounds of their claim.  *See* FAC ¶ 211.

Several subsequent cases have distinguished the cases on which Plaintiffs rely on the same grounds.  For example, the only case to cite *Cedars Sinai* expressly distinguished that case (and *Rockwell*) from circumstances very similar to those of the present case.  In *Plastronics Socket Partners Ltd. v. Highrel Inc.*, 2019 WL 2054362, at *3 (D. Ariz. May 9, 2019), the Arizona District Court pointed to the detailed trade secret allegations in *Cedars Sinai* and *Rockwell*, including citations to specific documents that identified the alleged trade secrets.  By contrast, the *Plastronics* court found that

dismissal of the trade secret claim in that case was appropriate because the plaintiffs' trade secret description "list[ing] fifty-three categories of information" without "factual allegations defining what information in any category was misappropriated" was too "vague and broad" to allege misappropriation "with enough specificity to put Defendants on notice of the claim." *Id.* That is precisely the case here—instead of describing their alleged trade secrets with enough specificity to satisfy the Rule 8 pleading standard, Plaintiffs here allege over fifty "vague and broad categories of information," without any factual allegations that would put Apple on notice of "what information in any category was misappropriated." *Id.*; *see* FAC ¶ 211.  Moreover, by including the "catch-all" phrase "include, but are not limited to" in their trade secret description, Plaintiffs' broad categories are "thorough[]" to the point of "meaninglessness," because "[a]ny piece of information could potentially be labeled as a trade secret under this definition." *Emazing Lights LLC v. De Oca*, 2016 WL 3658945, at *2 (C.D. Cal. Jan. 7, 2016).

The other cases Plaintiffs rely on in their opposition brief fare no better.  For example, Plaintiffs cite *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *8–9 (C.D. Cal. June 30, 2014), but the court in that case held only that Section 2019.210 does not apply at the pleading stage—which, again, Apple does not dispute.  In *W.L. Gore & Assocs. v. GI Dynamics, Inc.*, 2010 WL 5184254, at *8 (D. Ariz. Dec. 15, 2010), the counterclaimant identified *specific presentations* containing the alleged trade secrets; Plaintiffs have done nothing of the sort here.[9]  Plaintiffs' other cited cases found the trade secret descriptions adequate because they were tied to specific products, or otherwise provided sufficient particularity to give defendants notice of the bounds of the trade secret claim.  *See, e.g.*, *TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*, 2016 WL 3475322, at *5 (C.D. Cal. Jan. 29, 2016) (complaint described the trade secrets as manufacturing techniques relating to plaintiff's patented de-icing system and delineated

---

[9]   Moreover, the *W.L. Gore* court applied the trade secret laws of Arizona, Delaware, and Massachusetts—not California.  2010 WL 5184254, at *8 n.8.

those trade secrets from the patented technology); *Teva Pharm. USA, Inc. v. Health IQ, LLC*, 2013 WL 12134185, at *3 (C.D. Cal. July 2, 2013) ("identify[ing] 25 categories of specific information" relating to "Teva's Neugranin and Neutroval products"); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2011 WL 1044899, at *1 (N.D. Cal. Mar. 23, 2011) (trade secret description identified plaintiff's specific products to which all of the alleged trade secrets related).[10]

In a last-ditch effort to save their inadequate trade secret description, Plaintiffs argue that they do not need to delineate their trade secrets from their patents, because that implicates the "highly factual" question of public disclosure. Not so. To maintain a CUTSA claim, Plaintiffs must allege that they owned a trade secret. *Hosp. Mktg. Concepts LLC v. Six Continents Hotels, Inc.*, 2016 WL 9045853, at *4 (C.D. Cal. May 2, 2016). "It is well established that the disclosure of a trade secret in a patent places the information comprising the secret into the public domain" (*Forcier*, 123 F. Supp. 2d at 528), at which time the information loses its trade secret status. Plaintiffs therefore must delineate their alleged trade secrets from information disclosed in patents to sufficiently allege ownership of a cognizable trade secret. Plaintiffs have not even attempted to do so here.

Plaintiffs' final argument on this topic—that Apple should not challenge the adequacy of their trade secret description because the defendants in the True Wearables action did not do so—makes no sense. Opp. Br. 9 n.5. How True Wearables defends itself against Plaintiffs' allegations of trade secret misappropriation in a different action has no relevance to Apple's defense of this case. Plaintiffs in this case have failed to satisfy their pleading burden on their trade secret claim against Apple, and their claim should be dismissed as a result.

---

[10] Although the courts in *Monster Energy Co. v. Vital Pharm., Inc.*, 2019 WL 2619666, at *15 (C.D. Cal. May 20, 2019) and *Roadrunner Transp. Servs. v. Tarwater*, 2010 WL 11483986, at *4 (C.D. Cal. Dec. 20, 2010) found adequate relatively broad trade secret descriptions, no court has followed those cases on this issue. Indeed, only *Monster* has relied on *Roadrunner* (2019 WL 2619666, at *15), and no court has ever cited *Monster*.

## C.    Plaintiffs Do Not Plead Plausible Facts That Constitute Misappropriation

Plaintiffs argue that they have alleged "more than sufficient facts to show misappropriation by improper acquisition, use, and disclosure," because "[t]he FAC alleges numerous reasons why Apple knew or had reason to know it was acquiring trade secrets through breach or inducement of a duty to maintain secrecy."  Opp. Br. 11–12. In reality, the FAC contains only conclusory statements that are not supported by *any* factual allegations.

**Acquisition**.  Plaintiffs' argument that Apple knew or had reason to know that it acquired Plaintiffs' trade secrets by improper means boils down to just two paragraphs in the FAC.  Opp. Br. 11–12 (citing FAC ¶¶ 215–16).  As a threshold matter, neither of these paragraphs—like the rest of the FAC—identifies *any* information that Apple ever knew was a trade secret.  Instead, Plaintiffs allege that their former employees left for Apple, and that the employees disclosed information that *they* knew they were bound to keep confidential.  FAC ¶ 215.  That is not sufficient to establish *Apple's* knowledge, and Plaintiffs' contention that the employees' knowledge is imputed to Apple is flat wrong.  Indeed, it would eviscerate the knowledge requirement in the statute, which requires knowledge of improper acquisition.  Cal. Civ. Code § 3426.1(b).  It would be improper as a matter of law "to impute an agent's knowledge of a secret to the principal." *Carr v. AutoNation Inc.*, 2018 WL 288018, at *2 (E.D. Cal. Jan. 4, 2018).

Given the lack of a legal basis for their imputed knowledge argument, Plaintiffs fall back on their allegation that Apple knew Lamego was bound to keep Plaintiffs' secrets in confidence because he was Plaintiffs' CTO, the parties discussed confidential information, and Plaintiffs sent the 2014 letter.  FAC ¶ 216.  Not one of these allegations suggests that Apple was aware that Lamego was disclosing Plaintiffs' trade secrets.  That Plaintiffs informed Apple via their 2014 threat letter that Lamego could not work in his chosen field without disclosing their trade secrets—although evincing that Plaintiffs were suspicious enough to trigger the limitations period for their trade secret claim—is

incorrect as a matter of California law, and therefore insufficient to show Apple's knowledge. *See Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463 (2002).

As for the allegation that Apple "induced Lamego to disclose Plaintiffs' Confidential Information and Lamego disclosed Plaintiffs' Confidential Information for the benefit of Defendant while employed by Defendant" (FAC ¶ 216), these are bare recitations of elements of a misappropriation claim, unsupported by any factual allegations that identify any basis for the legal conclusions, and provide no details whatsoever about this inducement. Relying on *Calendar Research LLC v. StubHub, Inc.*, 2017 WL 10378336 (C.D. Cal. Aug. 16, 2017), Plaintiffs argue that they nonetheless "properly pleaded" these allegations of breach and inducement "on information and belief" "because the information 'is not presumptively in the knowledge of the pleading party.'" Opp. Br. 13 (quoting *Calendar Research LLC*, 2017 WL 10378336, at *4). *Calendar Research*, however, did not create an exception to the pleading rule established in *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, and does not give free license for a trade secret plaintiff to engage in unbridled speculation. *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 (1st Cir. 2012) ("'Information and belief' does not mean pure speculation."). An allegation pleaded "on information and belief" must "still contain some factual content; conclusory allegations . . . will not suffice." General Pleading Requirements, Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 8-B (Apr. 2020); *see also* 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed.) (pleading on "information and belief" requires plaintiff to have "sufficient data to justify interposing an allegation on the subject"). The Ninth Circuit has rejected allegations based "upon information and belief" where no further facts were alleged. *See Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009); *see also Simonyan v. Ally Fin. Inc.*, 2013 WL 45453, at *2 (C.D. Cal. Jan. 3, 2013) (allegations "based on 'information and belief' and contain[ing] nothing more than a rote recitation of the required elements of [the] claim. . . . fall well short of the requirements set forth in *Iqbal*"). Here, Plaintiffs have not alleged any facts underlying their breach and inducement conclusions in the FAC,

and those "bare" conclusions are consequently insufficient under *Twombly* and *Iqbal*.

**Use and Disclosure**.  As is the case with their allegations of acquisition, Plaintiffs rely on just two paragraphs in the FAC in arguing that Apple used or disclosed the alleged trade secrets.  Opp. Br. 14–15 (citing FAC ¶¶ 217–18).  But it is not enough to argue that Lamego incorporated Plaintiffs' alleged trade secrets in Apple's patent filings or into Apple's products.  FAC ¶¶ 217–18.  Again, Plaintiffs must allege facts that *Apple* had some reason to know as much, and Plaintiffs do not for the reasons above.  Plaintiffs cannot allege that Apple had knowledge merely because Lamego purportedly did.

Plaintiffs also fail to meaningfully distinguish *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095 (N.D. Cal. 2012).  Just like the plaintiff in *MedioStream*, Plaintiffs here have failed to "include facts demonstrating that [Apple] knew or should have known that it was [allegedly] unlawfully obtaining confidential material from [Lamego]." *Id.* at 1114.

Altogether, Plaintiffs have failed to adequately allege improper acquisition, use, or disclosure, and their CUTSA claim therefore should be dismissed.

**D.   This Court Should Deny Leave to Amend**

Plaintiffs already attempted to save their CUTSA claim with an amended complaint filed after Apple first moved to dismiss the claim.  Plaintiffs' amended pleading did not correct any of the deficiencies in the CUTSA claim, underscoring that the claim "cannot be saved by further amendment" and therefore should be dismissed without leave to amend.  *Dumas v. Kipp*, 90 F.3d 386, 389 (9th Cir. 1996).

### III.   <u>CONCLUSION</u>

Based on the foregoing and on Apple's moving brief, Apple respectfully requests that the Court dismiss Plaintiffs' Thirteenth Cause of Action for Trade Secret Misappropriation under the CUTSA with prejudice, and without leave to amend.

Dated:  May 21, 2020

Respectfully submitted,

JOSHUA H. LERNER
H. MARK LYON
BRIAN M. BUROKER
BRIAN A. ROSENTHAL
ILISSA SAMPLIN
ANGELIQUE KAOUNIS
GIBSON, DUNN & CRUTCHER LLP


By:  */s/ Joshua H. Lerner*
        Joshua H. Lerner

*Attorneys for Defendant Apple Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Appendix



| United States Patent Application Publication No. 2016/0061726 A1 | United States Patent No. 9,952,095 |
|---|---|
| FIG. 1A   FIG. 1B | FIG. 1A   FIG. 1B |
| RJN Decl. Ex. B, at 14 ('726 publication, Figs. 1A–1B) | FAC Ex. 29, at 1186 ('095 patent, Figs. 1A–1B) |
| FIG. 2A   FIG. 2B | FIG. 2A   FIG. 2B |
| RJN Decl. Ex. B, at 15 ('726 publication, Figs. 2A–2B) | FAC Ex. 29, at 1187 ('095 patent, Figs. 2A–2B) |