1  JOSHUA H. LERNER, SBN 220755
     jlerner@gibsondunn.com
2  GIBSON, DUNN & CRUTCHER LLP
   555 Mission Street Suite 3000
3  San Francisco, CA 94105
   Tel.:  415.393.8200 / Fax: 415.393.8306
4
5  H. MARK LYON, SBN 162061
     mlyon@gibsondunn.com
6  GIBSON, DUNN & CRUTCHER LLP
   1881 Page Mill Road
7  Palo Alto, CA 94304-1211
   Tel.:  650.849.5300 / Fax: 650.849.5333

8  BRIAN M. BUROKER, *pro hac vice*          ILISSA SAMPLIN, SBN 314018
     bburoker@gibsondunn.com                   isamplin@gibsondunn.com
9  GIBSON, DUNN & CRUTCHER LLP               GIBSON, DUNN & CRUTCHER LLP
   1050 Connecticut Avenue, N.W.             333 South Grand Avenue
10 Washington, DC 20036                      Los Angeles, CA 90071-3197
   Tel.: 202.955.8541 / Fax: 202.467.0539    Tel.: 213.229.7000 / Fax: 213.229.7520
11
   BRIAN A. ROSENTHAL, *pro hac vice*        ANGELIQUE KAOUNIS, SBN 209833
12   brosenthal@gibsondunn.com                 akaounis@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP               GIBSON, DUNN & CRUTCHER LLP
13 200 Park Avenue                           2029 Century Park East Suite 4000
   New York, NY 10166-0193                   Los Angeles, CA 90067
14 Tel.: 212.351.2339 / Fax: 212.817.9539    Tel.: 310.552.8546 / Fax: 310.552.7026

15 *Attorneys for Defendant Apple Inc.*

16

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, | CASE NO. 8:20-cv-00048-JVS (JDEx) |
| Plaintiffs, | **APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION FOR AN ORDER REQUIRING APPLE TO COMPLY WITH THE SCHEDULING ORDER** |
| v. | |
| APPLE INC., a California corporation, | Hon. James V. Selna |
| Defendant. | No Hearing Noticed |
| | Discovery Cut-Off:      7/5/2021 |
| | Pre-Trial Conference:  3/21/2022 |
| | Trial:                        4/5/2022 |

28

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE*
APPLICATION FOR AN ORDER REQUIRING APPLE
TO COMPLY WITH THE SCHEDULING ORDER                    CASE NO. 8:20-CV-00048-JVS (JDEX)

## I.   <u>INTRODUCTION</u>

The dispute presented by Plaintiffs' *ex parte* application (Dkt. 55 ("Application")) is a scheduling dispute that could and should have been resolved with a meet and confer between counsel.  Rather than meet and confer, Plaintiffs rushed to the Court, intending to seek "emergency relief" that is unnecessary, unwarranted, and an abuse of the Court's *ex parte* application process, even after Apple explained that this mechanism would be improper.   Using the *ex parte* process to alter the schedule, particularly when the deadline at issue is six weeks away, is inappropriate.  Plaintiffs could have obtained an extension of the deadline through a regular noticed motion prior to that deadline (indeed, they could have obtained an agreed extension much sooner through a simple meet and confer with Apple's counsel).  Rather than accept Apple's invitation to meet and confer on this scheduling issue, Plaintiffs plowed ahead with their unnecessary and inappropriate Application.  Plaintiffs should be admonished to not inappropriately use this mechanism to bring such disputes.

The parties' dispute stems from a simple scheduling issue:  numerous disputes over the protective order have prevented its entry before the date to produce core technical documents.  And, because a protective order is not yet in place, Apple produced only public documents, and has not yet produced its sensitive, highly confidential technical documents.  That is because the protective order, when entered, will provide important protections beyond merely limiting the documents to be used by or disclosed to outside counsel, including a prosecution bar and limits on use for business decision-making.  There is nothing surprising or "emergency" about this dispute; Apple has stated since the Rule 26(f) report *over two months ago* that it cannot produce confidential documents until a protective order is in place.  Plaintiffs repeatedly said the same about their own confidential documents, and only changed course right before filing their Application, when Apple pointed out the contradiction.

APPLE'S OPPOSITION TO PLAINTIFFS'
*EX PARTE* APPLICATION FOR AN ORDER
REQUIRING APPLE TO COMPLY WITH THE
SCHEDULING ORDER                 1              CASE NO. 8:20-CV-00048-JVS (JDEX)

Gibson, Dunn &
Crutcher LLP

Had Plaintiffs accepted Apple's offer to discuss this scheduling issue before filing their Application, Plaintiffs could have avoided burdening the Court with such an intrusive request.  Indeed, Apple would have worked with Plaintiffs on a reasonable extension of the deadlines for the parties' contentions that would allow for entry of a protective order and production of Apple's technical documents before any contentions were due.  Instead, Plaintiffs refused to discuss an agreed resolution so that it could move forward with their strategic decision to file an *ex parte* motion on the evening before June 19th, a day on which millions of Americans are observing a holiday, Juneteenth.

## II.    BACKGROUND

On April 14, 2020, the Parties submitted a Joint 26(f) Report outlining their discovery plan for this action.  Dkt. 33.  The Report included a proposed schedule with patent-specific deadlines, including deadlines for the production of core technical documents (June 15, 2020), infringement contentions (July 27, 2020), and invalidity contentions (September 7, 2020).  As Plaintiffs' Application recognizes, Apple stated in that Report that it "will not agree to produce documents unless and until a satisfactory protective order is issued in this case."  *Id.* at 11; *see also id.* at 20 ("As noted above, the Parties are currently negotiating a protective order.  Apple does not intend to produce documents until an acceptable protective order is issued.").

The parties have been negotiating the terms of a protective order for over three months, yet there still remain a number of disputes that require the Court's guidance, and the parties will be submitting a joint stipulation outlining those disputes on June 25, 2020.  As the correspondence between the parties illustrates, Apple has pushed to bring these issues to the Court much sooner, but Plaintiffs have been delaying as much as possible, insisting they needed an additional week to prepare their arguments and most recently disputing when the parties reached an impasse to obtain even more time with their portion of the stipulation.  *See* Dkt. 55-2, Ex. 4.

Gibbs, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS'
*EX PARTE* APPLICATION FOR AN ORDER
REQUIRING APPLE TO COMPLY WITH THE
SCHEDULING ORDER                2                CASE NO. 8:20-CV-00048-JVS (JDEx)

Concurrently with the negotiations over the protective order, the parties have exchanged discovery requests, exchanged correspondence related to their responses, and met and conferred pursuant to the Local Rules.  Throughout that process, *both* parties have taken the position that they will not produce confidential documents or information until after a protective order is entered.   Indeed, and contrary to Plaintiffs' representations in their Application, Plaintiffs themselves have refused to provide their required Section 2019.210 statement or complete interrogatory responses until "after entry of a protective order."  *See, e.g.*, Samplin Decl. Ex. A, at 4; Samplin Decl. Ex. B, at 9; *see also* Dkt. 55-2, Ex. 3 at 9 ("Plaintiffs expect to provide a 2019.210 statement and other confidential information within a reasonable time period after entry of a protective order.").   Moreover, while Plaintiffs' Application touts the number of documents they produced in the last two weeks, all of those documents are publicly available (*e.g.*, patents, file histories, and press releases).

Moreover, Apple did not "miss[] the deadline" for production of technical documents, "refuse to provide *any* technical documents," or "flout[] the Court's schedule," as Plaintiffs baldly claim.  *See* Dkt. 55 at 2-3 (emphasis in original); *see also* Dkt. 55-2 ¶ 3.  On June 15, 2020, the deadline for production of technical documents, Apple produced all non-confidential public technical documents related to the Accused Products.  Apple does have some confidential technical documents still to produce, which it already confirmed that it will produce after entry of a protective order.

Finally, on June 17, 2020 (the evening before Plaintiffs filed their Application), Plaintiffs emailed Apple regarding Apple's technical document production, insisting that Apple provide confidential documents despite the lack of a protective order in this case.  *See* Dkt. 55-2, Ex. 3.  At noon the following day, as Apple was preparing its response to Plaintiffs' letter, Plaintiffs sent another email indicating their intent to file the Application later that day.  *See* Dkt. 55-2, Ex. 1.  In response, Apple reiterated that both parties have taken the position that they would not produce confidential documents until

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS'
*EX PARTE* APPLICATION FOR AN ORDER
REQUIRING APPLE TO COMPLY WITH THE
SCHEDULING ORDER                    3          CASE NO. 8:20-CV-00048-JVS (JDEx)

after entry of a protective order, and nonetheless indicated that "Apple is ready and willing to engage in the meet-and-confer process the Local Rules require" to discuss Plaintiffs' newly articulated concerns. *See* Larson Decl. Ex. 7, at 107. Rather than take Apple up on its offer, Plaintiffs moved ahead with their Application, apparently having already decided that it would be strategically beneficial to invoke the "disfavored" *ex parte* process for this dispute.

### III.   ARGUMENT

### A.   Plaintiffs' Requested Relief Does Not Warrant an *Ex Parte* Application

"*Ex parte* relief is justified only when the moving party shows that its cause 'will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures.'" *Gilliam v. Bank of America, N.A.*, 2017 WL 11001706, at *1 (C.D. Cal. Aug. 21, 2017) (quoting *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C. D. Cal. 1995)). In this District, "*ex parte* applications are disfavored except in true emergencies." *Id.* And, as this Court stated in its Initial Order for this very case, "[e]x parte applications are solely for extraordinary relief and should be used with discretion." Dkt. 19 at 3 (citing *Mission Power*, 883 F. Supp. at 488); *see also Mission Power*, 883 F. Supp. at 490 ("*Ex parte* motions are rarely justified.").

Plaintiffs' Application does not even come close to presenting a true emergency that justifies "pulling the fire alarm" and imposing unnecessary and unjustified burdens on both the Court and Apple. *Mission Power*, 883 F. Supp. at 490-92 ("[T]hese hybrid *ex parte* motions are inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system.").

Plaintiffs' use of the *ex parte* application process to request an extension of a deadline that is six weeks away is an abuse of process. This is plainly illustrated by the fact that Plaintiffs devote only two paragraphs at the end of their brief to summarily state that the factors that justify an *ex parte* application are present. Dkt. 55 at 6-7. As

APPLE'S OPPOSITION TO PLAINTIFFS'
*EX PARTE* APPLICATION FOR AN ORDER
REQUIRING APPLE TO COMPLY WITH THE
SCHEDULING ORDER                    4          CASE NO. 8:20-CV-00048-JVS (JDEx)

Gibson, Dunn &
Crutcher LLP

discussed below, Plaintiffs' request is inappropriate and unwarranted, and should be denied.

### 1.    Plaintiffs Have Not Been Irreparably Prejudiced

Plaintiffs claim to be "irreparably prejudiced" because they could be "forced to provide infringement contentions *before* they receive Apple's technical documents." Dkt. 55 at 6.  This is not a legitimate claim of prejudice.  Plaintiffs are requesting additional time to prepare their infringement contentions, and are concerned that they cannot meet a deadline <u>six weeks</u> from now.  Such a concern is hardly the type that warrants asking the Court to "drop[] everything except other urgent matters to study the papers" and relegate other litigants "to a second priority." *Mission Power*, 883 F. Supp. at 491-92.  As this Court has explained, the urgency required to warrant an *ex parte* application is that "the tomatoes are about to spoil or the yacht is about to leave the jurisdiction and that all will be lost unless immediate action is taken." *Id.*  Plaintiffs' request does not even come close to presenting this type of urgency.

*First*, Plaintiffs' Complaint alleges infringement of twelve patents.  When Plaintiffs filed the litigation, they had to have a Rule 11 basis for alleging infringement. Accordingly, Plaintiffs should already have all of the information they need to prepare a disclosure of their infringement contentions.  While Plaintiffs understandably would like to use Apple's confidential technical documents to prepare those contentions, the fact that they do not have the documents at this very moment certainly does not "prejudice [their] ability to prepare their case," as they summarily allege. Dkt. 55 at 7.[1]  Plaintiffs should have been in a position to begin preparing their contentions from the day they filed the case.  Indeed, for ten of the twelve asserted patents, the infringement claims are asserted against structural elements of the Apple Watch, which can be discerned from a

---

[1] Notably, this Court's typical procedure is to follow the Northern District of California's patent rules, which require disclosure of infringement contentions before the accused infringer provides its confidential technical documents.

APPLE'S OPPOSITION TO PLAINTIFFS'
*EX PARTE* APPLICATION FOR AN ORDER
REQUIRING APPLE TO COMPLY WITH THE
SCHEDULING ORDER          5          CASE NO. 8:20-CV-00048-JVS (JDEx)

Gibson, Dunn &
Crutcher LLP

plain examination of the device itself.  Moreover, if there is information in Apple's confidential technical documents that provides good cause to amend their contentions after they receive those documents, Plaintiffs would be able to do so.

*Second*, any prejudice Plaintiffs claim to be suffering can be cured through an extension of the deadline for their infringement contentions.  Had Plaintiffs met and conferred with Apple prior to filing their Application, as Apple requested, the parties could have worked out an agreement to assuage Plaintiffs' concerns.  Plaintiffs refused that offer, and filed their emergency Application.  This is improper; as this Court has made very clear, "parties are not permitted to bring a discovery dispute to the Court until they have made a good faith effort to resolve their dispute by conference." *Authenex, Inc. v. EMC Corp.*, 2010 WL 11507453, at *6 (C.D. Cal. June 15, 2010).  Plaintiffs should have engaged in a conversation with Apple about their concerns regarding the schedule before pulling the fire alarm.  They did not do so, and their Application should be denied as a result.

### 2.  Plaintiffs Could Have Obtained a Schedule Extension Via Regular Motion Practice

Plaintiffs argue that they could not have brought their request for a schedule extension using a regular noticed motion because such a motion "would not resolve this issue sufficiently in advance of Plaintiffs' July 27, 2020 deadline to provide infringement contentions." Dkt. 55 at 6.  Yet, in the following sentence of their Application, Plaintiffs admit that such a motion could have been heard on July 20, 2020, a week before the deadline.  If their motion were granted, one week before their deadline, Plaintiffs would have obtained an additional six weeks to prepare their contentions.  And, as noted above, had Plaintiffs simply engaged in the meet and confer process prior to filing this Application, as Apple requested, it is likely that the parties would have resolved this issue without having to burden the Court at all.

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS'
*EX PARTE* APPLICATION FOR AN ORDER
REQUIRING APPLE TO COMPLY WITH THE
SCHEDULING ORDER                     6          CASE NO. 8:20-cv-00048-JVS (JDEx)

In short, Plaintiffs fail to offer any explanation as to what actually constitutes a threat of immediate or irreparably injury, danger of evidence destruction or flight, or any of the other circumstances that justify use of this Court's *ex parte* procedures.  The reason for this is clear:  there are none.

**B.    Apple Has Legitimate and Serious Concerns About Producing Confidential Documents Before a Protective Order is Entered**

The circumstances that led to Plaintiffs' Application are the result of the parties' prolonged negotiations regarding the terms of the protective order to be entered in this case.[2]  Plaintiffs have brought up new disputes each time the parties exchange protective order provisions, making it impossible for the parties to identify the issues in dispute and drawing the negotiation process out indefinitely. Apple's agreement to provide "core technical documents" on June 15, 2020 was premised on the notion that a protective order would be in place well in advance of that date.  Dkt. 33 at 11, 20.[3]

This litigation involves sensitive and highly confidential technology present in the Accused Products (the Apple Watch Series 4 and 5).  Thus, the confidential technical documents Plaintiffs seek contain information that is highly sensitive to Apple, and is information that Apple must be careful not to allow to fall into the hands of those that may be interested in developing products to compete with the Accused Products or drafting patent claims to read on those products.   Accordingly, Apple requires a

---

[2] Plaintiffs' Application also suggests that Apple is withholding confidential documents on the basis that Plaintiffs have not yet submitted their Section 2019.210 disclosure of their purported trade secrets.  Judge Early denied Apple's motion for a protective order on that basis on June 15, 2020; therefore that is not a basis on which Apple relies here.  That said, Apple is filing today a motion to vacate Judge Early's Order denying Apple's motion for a protective order.

[3] Over the course of the parties' negotiations regarding the protective order, Apple has come to the table in good faith and diligently negotiated with Plaintiffs.  It has not used the negotiations as a tactic to delay the case.  At Apple's insistence, the briefing for a joint stipulation outlining the parties' protective order disputes is already underway and the parties intend to submit a joint stipulation on June 25, 2020.

Gibson, Dunn &
Crutcher LLP

protective order to be entered in this action before it will produce those confidential documents.[4]

Plaintiffs' offer to treat Apple's confidential information as "attorneys' eyes only" pending entry of a protective order is insufficient to alleviate Apple's concerns. An "attorneys' eyes only" designation is not the sole protection a protective order will provide. As the parties will present in their forthcoming joint stipulation regarding the protective order, Apple also seeks a prosecution bar and other protections that prevent Plaintiffs' lawyers from using Apple's documents for competitive decision-making in a way that could harm Apple.

These protections, while important in all patent cases, are particularly important in this case. Plaintiffs are highly litigious companies that have shown time and again they are willing to sue companies that they view as a threat to their business. Knobbe Martens, Plaintiffs' law firm in this litigation (and virtually all of Masimo's intellectual property cases), also handles all of Plaintiffs' patent prosecution and is intimately involved in their corporate strategy and decision-making. If Knobbe Martens is able to obtain Apple's confidential documents, even under an "attorneys' eyes only" designation, there is nothing that would prevent them from using those documents to draft patent claims that specifically cover Apple's products. *See, e.g.,* Order at 3, *Uniloc USA, Inc. v. Apple Inc.*, No. 18-00360 (N.D. Cal. Jul. 2, 2018), ECF No. 107 ("The patent acquisition bar requested by [the defendant] adds an additional layer of protection by prohibiting not just disclosure and use, but also advising.").

As another example, there is nothing in place that would exclude access from a Knobbe lawyer who serves as a competitive decision-maker and board member for Plaintiffs. *See, e.g., Meridian Enters. Corp. v. Bank of Am. Corp.*, 2008 WL474326, at

---

[4]  This Court does not have a default protective order, so at present there are no legal mechanisms in place to protect the confidentiality and highly sensitive nature of the documents Plaintiffs seek from Apple.

APPLE'S OPPOSITION TO PLAINTIFFS'
*EX PARTE* APPLICATION FOR AN ORDER
REQUIRING APPLE TO COMPLY WITH THE
SCHEDULING ORDER            8            CASE NO. 8:20-CV-00048-JVS (JDEX)

Gibson, Dunn &
Crutcher LLP

*3 (E.D. Mo. Feb. 15, 2008) (finding "that the risk of inadvertent disclosure is great because Mr. McMullin is both a shareholder of [Plaintiff] and a member of its Board of Directors, and therefore has a fiduciary duty to [Plaintiff] to disclose all information in his possession germane to issues discussed.").

The disputes over these provisions are based on legitimate and serious concerns that should be fully briefed and considered by the Court before Apple is required to turn over some of its most confidential documents to lawyers that are intimately involved with Plaintiffs' patent prosecution and business activities.  Once those disputes are resolved, and the Court enters a protective order, Apple will produce the confidential technical documents Plaintiffs seek.

## C.    Plaintiffs Have Withheld Their Confidential Information In View of the Absence of a Protective Order

As discussed herein, Plaintiffs have repeatedly told Apple—at least until the eve of filing this Application—that they will not produce their own allegedly confidential information, including their identification of trade secrets under Section 2019.210, unless a protective order is in place.  *See, e.g.*, Samplin Decl. Ex. A, at 4; Samplin Decl. Ex. B, at 9; *see also* Dkt. 55-2, Ex. 3 at 9.  Thus, to the extent the Court requires Apple to produce confidential documents in the absence of a protective order, Plaintiffs should be required to do the same.[5]  With respect to the Section 2019.210 disclosure and responses to Apple's trade secret related discovery in particular, Plaintiffs should be required to provide that disclosure and information on or before the date that Apple produces any responsive confidential documents.  Plaintiffs also should not be able to strategically comb through Apple's confidential documents and then add alleged trade secrets to Plaintiffs' disclosures.  Notably, courts in this Circuit have held that trade

---

[5]  Plaintiffs' Proposed Order is unreasonable in that, even if the Court were inclined to grant relief, it would require production in only two days.  That is insufficient time to mark and produce the documents in question.  A more reasonable timeline would be one week.

APPLE'S OPPOSITION TO PLAINTIFFS'
*EX PARTE* APPLICATION FOR AN ORDER
REQUIRING APPLE TO COMPLY WITH THE
SCHEDULING ORDER              9        CASE NO. 8:20-CV-00048-JVS (JDEx)

Gibson, Dunn & Crutcher LLP

secret plaintiffs should be permitted to amend their trade secret identification only upon a showing of good cause as contemplated in the Local Patent Rules of the Northern District of California. *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1044-45 (N.D. Cal. 2004). The same should apply to Plaintiffs here.

## IV.   <u>CONCLUSION</u>

Based on the foregoing, Apple respectfully requests that the Court deny Plaintiffs' Application. Apple suggests that after the protective order is entered, the parties promptly meet and confer regarding any outstanding scheduling issues and, if necessary, submit a joint scheduling proposal to address those issues. To the extent the Court grants Plaintiffs' Application, Apple should be given reasonable time to produce the confidential documents, and Plaintiffs should be required to submit their Section 2019.210-compliant trade secret identification on the same date or earlier, only to be amended upon a showing of good cause.

Dated:  June 19, 2020                    Respectfully submitted,

JOSHUA H. LERNER
H. MARK LYON
BRIAN M. BUROKER
BRIAN A. ROSENTHAL
ILISSA SAMPLIN
ANGELIQUE KAOUNIS
GIBSON, DUNN & CRUTCHER LLP


By:  */s/ Joshua H. Lerner*
        Joshua H. Lerner

*Attorneys for Defendant Apple Inc.*

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS'
*EX PARTE* APPLICATION FOR AN ORDER
REQUIRING APPLE TO COMPLY WITH THE
SCHEDULING ORDER                    10           CASE NO. 8:20-CV-00048-JVS (JDEx)