Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:  (949)-760-0404; Facsimile:  (949)-760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation <br><br> Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE <br> ) <br> ) **DECLARATION OF ADAM B.** <br> ) **POWELL IN SUPPORT OF** <br> ) **PLAINTIFFS' MOTION FOR** <br> ) **PROTECTIVE ORDER** <br> ) <br> ) Hearing Date:    July 23, 2020 <br> ) Hearing Time:   10 am <br> ) Courtroom:        6A <br> ) <br> ) Discovery Cutoff:    July 5, 2021 <br> ) Pretrial Conference: March 21, 2022 <br> ) Trial:                      April 5, 2022 <br> ) <br> ) Hon. John D. Early <br> ) |

I, Adam B. Powell, hereby declare and state as follows:

1.      I am an attorney with the law firm of Knobbe, Martens, Olson & Bear, LLP, and I am licensed to practice law in the State of California.  I am counsel of record for Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") in the above-captioned action.  I have personal knowledge of the matters set forth herein, and, if I am called upon to testify, I could and would testify competently thereto.

**A.      The Parties' Proposals**

2.      Attached hereto as **Exhibit 1** is a true and correct copy of this Court's Model Stipulated Protective Order (the "Model Order").

3.      Attached hereto as **Exhibit 2** is a true and correct copy of Plaintiffs' proposed Protective Order.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of Apple's proposed Protective Order.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of a redline comparison of Plaintiffs' proposal and Apple's proposal, with underlined text showing Apple's proposed additions to Plaintiffs' proposal and strikethrough text showing Apple's proposed deletions to Plaintiffs' proposal.

**B.      The Meet and Confer**

6.      The parties made a reasonable attempt to resolve their dispute informally but were unable to resolve all issues.   During the Rule 26(f) conference on March 10, 2020, Plaintiffs offered to provide a draft stipulated protective order based on the Model Order.   Apple stated that it wanted to provide the initial draft.  Plaintiffs agreed, but only on the condition that Apple base its draft on the Model Order.

7.      Attached hereto as **Exhibit 5** is a true and correct email from Angelique Kaounis (who is counsel of record for Apple) to myself at 4:37 pm on March 27, 2020, including attachments.

8.      Attached hereto as **Exhibit 6** is a true and correct copy of an email from myself to Ms. Kaounis at 7:29 pm on April 6, 2020, including attachments.

9.      Plaintiffs sent Apple a Local Rule 37-1 letter on April 16, 2020. Attached here to as **Exhibit 7** is a true and correct copy of an email from myself to Ms. Kaounis at 6:21 pm on April 16, 2020, including attachments.

10.     Thereafter, the parties exchanged numerous emails and met and conferred telephonically at least on April 28, 2020, June 3, 2020, and June 9, 2020.  Attached hereto as **Exhibit 8** is a true and correct copy of an email from myself to Ilissa Samplin (who is counsel of record for Apple) at 2:12 pm on June 18, 2020.

**C.      Plaintiffs' Objection to Apple's Use of Consilio LLC In This Case**

11.     Consilio was Plaintiffs' e-consultant in *Masimo Corp. v. True Wearables, Inc.*, No. 8:18-cv-02001-JVS-JDE ("*True Wearables*").   In *True Wearables*, I understand that Consilio processed and hosted Plaintiffs' documents in a database, including documents that were not produced as non-responsive and/or privileged.  I also understand that Consilio still had retained Masimo's data at least as of January 7, 2020, and possibly later.

12.     Consilio was also Masimo's computer forensic expert in *Masimo Corp. v. Sotera Wireless Inc., et al.*, No. 30-2013-00649172-CU-IP-CJC (Cal. Sup. Ct.) ("*Sotera*").   In *Sotera*, Consilio analyzed forensic images of devices used by former Masimo employees who left to work for Sotera, including one Masimo executive involved in both Masimo's engineering and marketing departments.  Consilio also testified for Masimo at trial in that matter.  Attached hereto as **Exhibit 9** are true and correct copies of LinkedIn profiles for two individuals who worked for Plaintiffs on *Sotera* and are currently employed by Consilio.  The *Sotera* matter is currently stayed.  I understand Consilio still maintains copies of information provided to it during the *Sotera* matter.

13.     On April 3, 2020, Apple served documents requests on Plaintiffs. Those document requests sought, among other things, (a) "All documents produced by Masimo and Cercacor in [*True Wearables*]" and (b) "All Documents and Communications relating to the trade secrets which You alleged were misappropriated by the defendants in [*Sotera*]."

14.     During the conference of counsel on this matter, I explained to Ms. Samplin that Plaintiffs' changes to Section 9.2(f) were necessary only due to Consilio's relationship with Plaintiffs, including Consilio's work for Plaintiffs in *True Wearables* and *Sotera*.  I indicated that Plaintiffs would agree to remove their changes to Section 9.2(f) if Apple agreed not to use Consilio in this case. Ms. Samplin refused, but did not explain why Apple needs to use Consilio instead of another e-discovery consultant.  Ms. Samplin also stated that Apple no longer asserts *Sotera* is relevant because Plaintiffs indicated they are not aware of trade secrets at issue in *Sotera* overlapping with trade secrets at issue in this case.  However, Apple's discovery letters stated it "reserves all rights" to re-evaluate the relevance of *Sotera* at a later date.

**D.**     **Other Documents**

15.     Attached hereto as **Exhibit 10** is a true and correct copy of the Court's Minute Order Re Scheduling Dates, Dkt. No. 37, in this case (the "Scheduling Order").

16.     Attached hereto as **Exhibit 11** is a true and correct copy of the Joint Rule 26(f) Report, Dkt. No. 33, in this case, which is referenced in the Scheduling Order.

17.     Attached hereto as **Exhibit 12** is a true and correct copy of a document from the public docket in *Masimo v. True Wearables*, No. 8:18-cv-02001-JVS-JDE, Dkt. No. 82-1 (C.D. Cal. Mar. 16, 2020).

18.     Attached hereto as **Exhibit 13** is a true and correct copy of a document from the public docket in *Masimo v. True Wearables*, No. 8:18-cv-02001-JVS-JDE, Dkt. No. 100 (C.D. Cal. Apr. 2, 2020).

19.     Attached hereto as **Exhibit 14** is a true and correct copy of a document from the public docket in *Masimo v. True Wearables*, No. 8:18-cv-02001-JVS-JDE, Dkt. No. 111 (C.D. Cal. Jun. 15, 2020).

20.     Attached hereto as **Exhibit 15** is a true and correct copy of a document from the public docket in *LBT IP I LLC v. Apple Inc.*, No. 1-19-cv-01245, Dkt. No. 28 (D. Del. April 27, 2020).

21.     Attached hereto as **Exhibit 16** is a true and correct copy of a document from the public docket in *Achates Reference Publishing, Inc. v. Symantec et al.*, No. 2:11-cv-294-JRG-RSP, Dkt. No. 447 (E.D. Tex. August 20, 2013).

22.     Attached hereto as **Exhibit 17** is a true and correct copy of a document from the public docket in *Pinn, Inc. v. Apple Inc.*, Case No. 8:19-cv-01805-DOC-JDE, Dkt. No. 60 (C.D. Cal. March 13, 2020).

23.     Attached hereto as **Exhibit 18** is a true and correct copy of the transcript of a hearing on April 23, 2010, in *Masimo Corp. v. Philips Electronics N. Am. Corp.*, Case No. 09-00800-JJF-MPT (D. Del.).

24.     Attached hereto as **Exhibit 19** is a true and correct copy of a document from the public docket in *Uniloc 2017 LLC v. Netflix, Inc.*, No. 8:18-cv-02055-GW-DFM, Dkt. No. 80 (C.D. Cal. Aug. 5, 2019).

25.     Attached hereto as **Exhibit 20** is a true and correct copy of a document from the public docket in *XR Comms., LLC v. D-Link Systems, Inc.*, No. 8:17-cv-00596-JVS-JCG, Dkt. No. 113 (C.D. Cal. Mar. 6, 2018).

26.     Attached hereto as **Exhibit 21** is a true and correct copy of a document from the public docket in *Glaukos Corp. v. Ivantis, Inc.*, No. 8:18-cv-00620-JVS-JDE, Dkt. No. 36 (C.D. Cal. Aug. 3, 2018).

27.     Attached hereto as **Exhibit 22** is a true and correct copy of a document from the public docket in *Intellectual Pixels Ltd. v. Sony Interactive Entertainment LLC*, No. 8:19-cv-01432-JVS-KES, Dkt. No. 49 (C.D. Cal. Nov. 15, 2019).

28.     Attached hereto as **Exhibit 23** is a true and correct copy of a document from the public docket in *Uniloc 2017 LLC v. Microsoft Corp.*, No. 8:18-cv-02224-AG-JDE, Dkt. No. 30 (C.D. Cal. May 2, 2019) (Powell Decl., Ex. 23).

29.     Attached hereto as **Exhibit 24** is a true and correct copy of the Defendant Apple Inc's Notice of Related Cases, Dkt. No. 11, in this case.

30.     Attached hereto as **Exhibit 25** is a true and correct copy of the Joint Stipulation Regarding Defendant Apple Inc's Motion for Protective Order, Dkt. No. 43-1, in this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 19, 2020, in Paso Robles, California.

        */s/ Adam B. Powell*
        Adam B. Powell

32726075

# EXHIBIT 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

_____,                 ) Case No.
                                          )
                Plaintiff,                ) STIPULATION AND PROPOSED
                                          ) PROTECTIVE ORDER
        v.                                )
                                          )
_____,                 )
                                          )
                Defendants.               )
_____)

1.   <u>PURPOSES AND LIMITATIONS</u>

Discovery in this action is likely to involve production of confidential, proprietary or private information for which special protection from public disclosure and from use for any purpose other than pursuing this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.

Exhibit 1
-6-

2.    GOOD CAUSE STATEMENT

**[\*The "Good Cause Statement" should identify as specifically as possible the confidential materials and set forth facts showing what harm will result from the disclosure. Below is an example]:**

     This action is likely to involve trade secrets, customer and pricing lists and other valuable research, development, commercial, financial, technical and/or proprietary information for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. Such confidential and proprietary materials and information consist of, among other things, confidential business or financial information, information regarding confidential business practices, or other confidential research, development, or commercial information (including information implicating privacy rights of third parties), information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such information is justified in this matter. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

**Exhibit 1**
**-7-**

3.   ACKNOWLEDGMENT OF UNDER SEAL FILING
PROCEDURE

The parties further acknowledge, as set forth in Section 14.3, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Local Civil Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal. There is a strong presumption that the public has a right of access to judicial proceedings and records in civil cases. In connection with non-dispositive motions, good cause must be shown to support a filing under seal. See Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1176 (9th Cir. 2006), Phillips v. Gen. Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002), Makar-Welbon v. Sony Electrics, Inc., 187 F.R.D. 576, 577 (E.D. Wis. 1999) (even stipulated protective orders require good cause showing), and a specific showing of good cause or compelling reasons with proper evidentiary support and legal justification, must be made with respect to Protected Material that a party seeks to file under seal. The parties' mere designation of Disclosure or Discovery Material as CONFIDENTIAL does not— without the submission of competent evidence by declaration, establishing that the material sought to be filed under seal qualifies as confidential, privileged, or otherwise protectable—constitute good cause.

Further, if a party requests sealing related to a dispositive motion or trial, then compelling reasons, not only good cause, for the sealing must be shown, and the relief sought shall be narrowly tailored to serve the specific interest to be protected. See Pintos v. Pacific Creditors Ass'n., 605 F.3d 665, 677-79 (9th Cir. 2010). For each item or type of information, document, or thing sought to be filed or introduced under seal, the party seeking protection must articulate

3

**Exhibit 1**
**-8-**

compelling reasons, supported by specific facts and legal justification, for the requested sealing order. Again, competent evidence supporting the application to file documents under seal must be provided by declaration.

Any document that is not confidential, privileged, or otherwise protectable in its entirety will not be filed under seal if the confidential portions can be redacted. If documents can be redacted, then a redacted version for public viewing, omitting only the confidential, privileged, or otherwise protectable portions of the document, shall be filed. Any application that seeks to file documents under seal in their entirety should include an explanation of why redaction is not feasible.

4.      DEFINITIONS

4.1      Action**: [this pending federal lawsuit]. [*Option: consolidated or related actions.]**

4.2      Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

4.3      "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), and as specified above in the Good Cause Statement.

4.4      Counsel: Outside Counsel of Record and House Counsel (as well as their support staff).

4.5      Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

4.6      Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible

4

**Exhibit 1
-9-**

things), that are produced or generated in disclosures or responses to discovery.

4.7     Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

4.8      House Counsel: attorneys who are employees of a party to this Action.  House Counsel does not include Outside Counsel of Record or any other outside counsel.

4.9     Non-Party: any natural person, partnership, corporation, association or other legal entity not named as a Party to this action.

4.10   Outside Counsel of Record: attorneys who are not employees of a party to this Action but are retained to represent a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm that has appeared on behalf of that party, and includes support staff.

4.11   Party: any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

4.12   Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

4.13   Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

4.14   Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

4.15    Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

5

Exhibit 1
-10-

5.    <u>SCOPE</u>

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

Any use of Protected Material at trial shall be governed by the orders of the trial judge and other applicable authorities. This Order does not govern the use of Protected Material at trial.

6.    <u>DURATION</u>

Once a case proceeds to trial, information that was designated as CONFIDENTIAL or maintained pursuant to this protective order used or introduced as an exhibit at trial becomes public and will be presumptively available to all members of the public, including the press, unless compelling reasons supported by specific factual findings to proceed otherwise are made to the trial judge in advance of the trial. <u>See</u> <u>Kamakana</u>, 447 F.3d at 1180-81 (distinguishing "good cause" showing for sealing documents produced in discovery from "compelling reasons" standard when merits-related documents are part of court record). Accordingly, the terms of this protective order do not extend beyond the commencement of the trial.

7.    <u>DESIGNATING PROTECTED MATERIAL</u>

7.1    <u>Exercise of Restraint and Care in Designating Material for Protection</u>. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items or oral or written communications that qualify so

6

Exhibit 1
-11-

that other portions of the material, documents, items or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

7.2     <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Order, or as otherwise stipulated or ordered, Disclosure of Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL" (hereinafter "CONFIDENTIAL legend"), to each page that contains protected material. If only a portion of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced.

7

**Exhibit 1**
**-12-**

During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL legend" to each page that contains Protected Material. If only a portion of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b) for testimony given in depositions that the Designating Party identifies the Disclosure or Discovery Material on the record, before the close of the deposition all protected testimony.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the legend "CONFIDENTIAL." If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

7.3   <u>Inadvertent Failures to Designate</u>. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

8

**Exhibit 1**
**-13-**

8.      CHALLENGING CONFIDENTIALITY DESIGNATIONS

8.1.    Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

8.2     Meet and Confer. The Challenging Party shall initiate the dispute resolution process under Local Rule 37-1 et seq.

8.3 Joint Stipulation. Any challenge submitted to the Court shall be via a joint stipulation pursuant to Local Rule 37-2.

8.4 The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

9.      ACCESS TO AND USE OF PROTECTED MATERIAL

9.1 Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending or attempting to settle this Action. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of section 15 below (FINAL DISPOSITION).

9

**Exhibit 1**
**-14-**

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

9.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action;

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) **[TO BE NEGOTIATED AND PREPARED BY PARTIES AND ATTACHED TO STIPULATION AND PROPOSED ORDER]**;

(d) the court and its personnel;

(e) court reporters and their staff;

(f) professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew

10

**Exhibit 1**
**-15-**

the information;

(h) during their depositions, witnesses, and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit A hereto; and (2) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order; and

(i) any mediators or settlement officers and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

10.     PROTECTED MATERIAL SUBPOENAED OR ORDERED
        PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as "CONFIDENTIAL," that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected. If

11

**Exhibit 1**
**-16-**

the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

11.   A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

Exhibit 1
-17-

(3) make the information requested available for inspection by the Non-Party, if requested.

(c) If the Non-Party fails to seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

12.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment an Agreement to Be Bound" attached hereto as Exhibit A.

13.   INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in

13

**Exhibit 1**
**-18-**

Federal Rule of Civil\ Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

14.   MISCELLANEOUS

14.1   Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

14.2   Right to Assert Other Objections. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

14.3 Filing Protected Material. A Party that seeks to file under seal any Protected Material must comply with Local Civil Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material. If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party may file the information in the public record unless otherwise instructed by the court.

15.   FINAL DISPOSITION

After the final disposition of this Action, as defined in paragraph 6, within 60 days of a written request by the Designating Party, each Receiving Party must return all Protected Material to the Producing Party or destroy such

14

**Exhibit 1**
**-19-**

material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 6 (DURATION).

16. <u>VIOLATION</u>

Any violation of this Order may be punished by appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: _____     _____
                           Attorneys for Plaintiff

DATED: _____     _____
                           Attorneys for Defendant

15

**Exhibit 1**
**-20-**

1
2
3
FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.
4
5
DATED: _____
6
7
8                                          _____
9                                          JOHN D. EARLY
                                           United States Magistrate Judge
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

16

**Exhibit 1**
**-21-**

EXHIBIT 2

1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

MASIMO CORPORATION,
a Delaware corporation; and
CERCACOR LABORATORIES, INC.,
a Delaware corporation,

               Plaintiffs,

      v.

APPLE INC.,
a California corporation,

               Defendant.

CASE NO. 8:20-cv-00048-JVS (JDEx)

**[PROPOSED] PROTECTIVE ORDER**

**Exhibit 2**
**-22-**

1.   <u>PURPOSES AND LIMITATIONS</u>

Discovery in this action is likely to involve production of confidential, proprietary or private information for which special protection from public disclosure and from use for any purpose other than pursuing this litigation may be warranted. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery, including disclosures under Rule 26, and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.

2.   <u>GOOD CAUSE STATEMENT</u>

This action is likely to involve trade secrets, customer and pricing lists and other valuable research, development, commercial, financial, technical and/or proprietary information for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. Such confidential and proprietary materials and information consist of, among other things, confidential business or financial information, information regarding confidential business practices, or other confidential research, development, or commercial information (including information implicating privacy rights of third parties), information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such

-1-

**Exhibit 2**
**-23-**

information is justified in this matter, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure or any other applicable authority. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

3.   ACKNOWLEDGMENT OF UNDER SEAL FILING PROCEDURE

The parties further acknowledge, as set forth in Section 14.3, below, that this Protective Order does not entitle them to file confidential information under seal; Local Civil Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal. There is a strong presumption that the public has a right of access to judicial proceedings and records in civil cases. In connection with non-dispositive motions, good cause must be shown to support a filing under seal. *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1176 (9th Cir. 2006), *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002), *Makar-Welbon v. Sony Electrics, Inc.*, 187 F.R.D. 576, 577 (E.D. Wis. 1999) (even stipulated protective orders require good cause showing), and a specific showing of good cause with proper evidentiary support and legal justification, must be made with respect to Protected Material that a party seeks to file under seal. The parties' mere designation of Disclosure or Discovery Material as CONFIDENTIAL does not—without the submission of competent evidence by declaration, establishing that the material sought to be filed under seal qualifies as confidential, privileged, or otherwise protectable—constitute good cause.

-2-

**Exhibit 2**
-24-

Further, if a party requests sealing related to a dispositive motion or trial, then compelling reasons, not only good cause, for the sealing must be shown, and the relief sought shall be narrowly tailored to serve the specific interest to be protected. *See Pintos v. Pacific Creditors Ass'n.*, 605 F.3d 665, 677-79 (9th Cir. 2010). For each item or type of information, document, or thing sought to be filed or introduced under seal in connection with a dispositive motion or trial, the party seeking protection must articulate compelling reasons, supported by specific facts and legal justification, for the requested sealing order. Again, competent evidence supporting the application to file documents under seal must be provided by declaration.

Any document that is not confidential, privileged, or otherwise protectable in its entirety will not be filed under seal if the confidential portions can be redacted. If documents can be redacted, then a redacted version for public viewing, omitting only the confidential, privileged, or otherwise protectable portions of the document, shall be filed. Any application that seeks to file documents under seal in their entirety should include an explanation of why redaction is not feasible.

4.    <u>DEFINITIONS</u>

4.1    Action: this pending federal lawsuit.

4.2    Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

4.3    "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26, and as specified above in the Good Cause Statement.

4.4    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items: extremely confidential and/or sensitive "Confidential

-3-

**Exhibit 2**
**-25-**

Information or Items," disclosure of which to another Party or Non-Party is likely to cause harm or significant competitive disadvantage to the Producing Party.

4.5 "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items: extremely sensitive "Confidential Information or Items" representing computer code, scripts, assembly, binaries, object code, source code listings (e.g., file names and path structure), source code comments, object code listings, and Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any ASIC or other chip, disclosure of which to another Party or Non-Party is likely to cause harm or significant competitive disadvantage to the Producing Party.  Other documents that quote source code may be designated pursuant to this Paragraph, provided that the Producing Party also produces a redacted version designated "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY," which removes the quoted source code.  Native Computer Aided Design (CAD) files may be designated pursuant to this Paragraph, provided that any printouts of CAD files shall be designated "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY" and will not be included in the page limits discussed in Section 11 below.

4.6 Counsel: Outside Counsel of Record and House Counsel (as well as their support staff).

4.7 Designating Party or Producing Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

4.8 Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or

-4-

**Exhibit 2**
-26-

maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery.

4.9    Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

4.10    House Counsel: attorneys who are employees of a party to this Action.   House Counsel does not include Outside Counsel of Record or any other outside counsel.

4.11    Non-Party: any natural person, partnership, corporation, association or other legal entity not named as a Party to this action.

4.12    Outside Counsel of Record: attorneys who are not employees of a party to this Action but are retained to represent a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm that has appeared on behalf of that party, and includes support staff.

4.13    Party: any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

4.14    Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

4.15    Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

4.16    Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."   Protected Material shall not include:   (i) advertising materials that

**Exhibit 2**
-27-

have been actually published or publicly disseminated; and (ii) materials that show on their face they have been disseminated to the public.

4.17    Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

5.    SCOPE

5.1    All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function.  Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Order.

5.2    The protections conferred by this Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel in court or in other settings that might reveal Protected Material.

5.3    Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material to any person for any purpose.

5.4    This Order does not preclude any Party or Non-Party from using Protected Material with the consent of the Producing Party or by order of the Court.

5.5    This Order does not preclude any Party or Non-Party from moving the Court for additional protection of any Discovery Material or modification of

-6-

**Exhibit 2**
**-28-**

this Order, including, without limitation, moving for an order that certain matter not be produced at all.

5.6     Any use of Protected Material at trial shall be governed by the orders of the trial judge and other applicable authorities. This Order does not govern the use of Protected Material at trial.

6.     <u>DURATION</u>

Even after Final Disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing, a court order otherwise directs, or the information was made public during trial. For purposes of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-captioned action with prejudice, including all appeals. Once a case proceeds to trial, information that was designated or maintained pursuant to this protective order used or introduced as an exhibit at trial becomes public and will be presumptively available to all members of the public, including the press, unless compelling reasons supported by specific factual findings to proceed otherwise are made to the trial judge. *See Kamakana*, 447 F.3d at 1180-81 (distinguishing "good cause" showing for sealing documents produced in discovery from "compelling reasons" standard when merits-related documents are part of court record).

7.     <u>DESIGNATING PROTECTED MATERIAL</u>

7.1     <u>Exercise of Restraint and Care in Designating Material for Protection</u>. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.

Mass, indiscriminate or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for

-7-

Exhibit 2
-29-

an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

7.2   <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Order, or as otherwise stipulated or ordered, Disclosure of Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" (hereinafter "Confidentiality legend"), to each page that contains protected material. If only a portion of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).  For digital files being produced, the Producing Party may mark each viewable page or image with the appropriate designation, and mark the medium, container, and/or communication in which the digital files were contained.

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the

**Exhibit 2**
**-30-**

inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate Confidentiality legend to each page that contains Protected Material. If only a portion of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b) for testimony given in depositions that the Designating Party identifies the Disclosure or Discovery Material on the record at the time the testimony is given or by sending written notice of which portions of the transcript of the testimony are designated within 30 days of receipt of the transcript of the testimony.  During the 30-day period, the entire transcript will be treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material.  In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order.  In the event the deposition is recorded (by video or otherwise), the original and all copies of the recording shall be  designated pursuant to the terms of this Protective Order.  Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the

-9-

**Exhibit 2**
**-31-**

designation of such Protected Material.   Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the appropriate Confidentiality legend. If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

(d) When electronic files or documents are printed for use at deposition, in a court proceeding, or for provision in printed form to an expert or consultant pre-approved pursuant to Paragraph 9.2(c), the party printing the electronic files or documents shall affix a legend to the printed document corresponding to the designation of the Designating Party and including the production number and designation associated with the native file.   The parties reserve the right to object to the use of any image format version of a document produced in native file format to the extent any information has been altered.

7.3   <u>Inadvertent Failures to Designate</u>. An inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material, provided that the Producing Party notifies all Receiving Parties that such Discovery Material is protected under one of the categories of this Order within fourteen (14) days of the Producing Party learning of the inadvertent failure to designate. Upon such timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.   The Producing Party shall reproduce the Protected Material with the correct confidentiality designation within seven (7)

**Exhibit 2**
**-32-**

days upon its notification to the Receiving Parties.   Upon receiving the Protected Material with the correct confidentiality designation, the Receiving Parties shall return or securely destroy all Discovery Material that was not designated properly.

A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives such notice that such Discovery Material is protected under one of the categories of this Order, unless an objectively reasonable person would have realized that the Discovery Material should have been appropriately designated with a confidentiality designation under this Order. Once a Receiving Party has received notification of the correct confidentiality designation for the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in the following Paragraph below) at the appropriately designated level pursuant to the terms of this Order.

A subsequent designation of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" materials while the materials were not marked "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" from engaging in the activities set forth in Paragraph 10.

## 8   CHALLENGING CONFIDENTIALITY DESIGNATIONS

8.1.   Timing and Form of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.   Any challenge to a designation of Discovery

-11-

**Exhibit 2**
**-33-**

Material under this Order shall comply with the procedures set forth in Local Rule 37-1.

8.2     Meet and Confer. It shall be the responsibility of the Challenging Party to initiate the dispute resolution process under Local Rule 37-1 et seq.

8.3     Joint Stipulation. Any challenge submitted to the Court shall be via a joint stipulation pursuant to Local Rule 37-2.

8.4     The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

9     ACCESS TO AND USE OF PROTECTED MATERIAL

9.1     Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in accordance with Section 5. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of section 17 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party in a secure manner that ensures that access is limited to the persons authorized under this Order.   The Receiving Party will take any reasonably necessary precautions to comply with applicable United States Export Administration Regulations.

**Exhibit 2**
-34-

Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in part upon Protected Materials, provided counsel does not disclose the Protected Material itself except as provided in this Order.

Nothing in this Protective Order shall preclude a party from using material obtained lawfully from a source other than the Producing Party, even if the Producing Party also designated the material pursuant to this Protective Order.

9.2    <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action;

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action, including the expert's support staff, provided that: (1) such consultants or experts are not presently an officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party and (2) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party.  At least fourteen (14) days before access to the Protected

-13-

**Exhibit 2**
**-35-**

Material is to be given to a consultant or expert, the consultant or expert shall complete the "Acknowledgment and Agreement to Be Bound" (Exhibit A) and the same shall be served upon the producing Party along with the following "Pre-Access Disclosure Requirements":

    (i)    a current curriculum vitae of the consultant or expert;

    (ii)    identification of the consultant or expert's present employer and job title;

    (iii)    identification of all of the person's past and current employment and consulting relationships in the past five years, including direct relationships and relationships through entities owned or controlled by the person, including but not limited to, an identification of any individual or entity with or for whom the person is employed or to whom the person provides consulting services relating to the design, development, operation, or patenting of non-invasive physiological monitoring technologies, or relating to the acquisition of intellectual property assets relating to non-invasive physiological monitoring;

    (iv)    identification (by application number, title, and filing date) of all pending patent applications on which the person is named as an inventor, in which the person has any ownership interest, or as to which the person has had or anticipates in the future any involvement in advising on, consulting on, preparing, prosecuting, drafting, editing, amending, or otherwise affecting the scope of the claims; and

    (v)    a listing (by name and number of the case, filing date, and location of court) of any litigation in connection with which the person has offered expert testimony, including through a

-14-

**Exhibit 2**
-36-

1   declaration, report, or testimony at a deposition or trial, during the

2   preceding five years.

3   The Party seeking to disclose Protected Material shall provide such other

4   information regarding the person's professional activities reasonably requested

5   by the Producing Party for it to evaluate whether good cause exists to object to

6   the disclosure of Protected Material to the outside expert or consultant.

7   Objection Process: The producing party may object to and notify the receiving

8   Party in writing that it objects to disclosure of Protected Material to the

9   consultant or expert.  In the absence of an objection within fourteen (14) days of

10  the date on which the Producing Party receives notice that a consultant or expert

11  will be given access to Protected Material, the person shall be deemed approved

12  under this Protective Order.  There shall be no disclosure of Protected Material

13  to the person prior to expiration of this fourteen (14) day period.  If an objection

14  is received within that fourteen (14) day period, the Parties agree to meet and

15  confer within seven (7) days following the objection and to use good faith to

16  resolve any such objection.  If the Parties are unable to resolve any objection,

17  the objecting Party shall serve on the other Party a Joint Stipulation pursuant to

18  Local Rule 37-2.1 within seven (7) days of the meet and confer.  The objecting

19  Party shall have the burden of proving the need for a protective order.   No

20  disclosure shall occur until all such objections are resolved by agreement or

21  Court order;

22          (d) the court and its personnel;

23          (e) court reporters, videographers, and their staff;

24          (f) professional jury or trial consultants, mock jurors, and

25  Professional Vendors to whom disclosure is reasonably necessary for this

26  Action and who have signed the "Acknowledgment and Agreement to Be

27  Bound" (Exhibit A), provided that the name of any e-discovery vendors must be

28                                              -15-

**Exhibit 2**
-37-

disclosed at least fourteen (14) days before providing the e-discovery vendor with Protected Material so that the Producing Party has an opportunity to object pursuant to the objection procedure set forth in subparagraph (c) above;

(g) the author, recipient, or custodian of a document containing the information, or any other individual who appears to have had access to the specific information at issue based on the face of the document, the document's metadata, other documents, or sworn witness testimony;

(h) any mediators or settlement officers and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions;

(i) any other person with the prior written consent of the Producing Party; and

(j) during their depositions, witnesses, and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit A hereto; and (2) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Protective Order.

9.3.    Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to the individuals identified in Paragraphs 9.2 (a), (c)-(i), who are not competitive decision-makers of a Party.

-16-

**Exhibit 2**
-38-

## 10.  PROSECUTION BAR

After the adoption of this provision by the parties, Outside Counsel of Record and any person associated with a Party who receive a Producing Party's material designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" under this Protective Order who accesses or otherwise learns of, in whole or in part, said material designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" under this Protective Order shall not prepare, prosecute, supervise, advise, counsel, or assist in the preparation or prosecution of any patent application seeking a patent on behalf of the Receiving Party or its acquirer, successor, or predecessor in the field of non-invasive monitoring during the pendency of this Action and for two years after final termination of this action.  To avoid any doubt, "prosecution" as used in this paragraph does not include representing or advising a Party before a domestic or foreign agency in connection with a reissue, ex parte reexamination, covered business method review, *inter partes* review, opposition, cancelation, or similar proceeding; though in connection with any such agency proceeding involving the patents-in-suit, Outside Counsel of Record for a Receiving Party shall not: (i) participate in the preparation, prosecution, supervision, advice, counsel, or assistance of any amended claims; (ii) reveal a Producing Party's Protected Material to any prosecuting reexamination counsel or agent; or (iii) use a producing Party's Protected Material for any purpose not permitted by Section 5.  The applicability of this provision is to be determined on an individual-by-individual basis such that an individual attorney who has not received Protected Material designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" is not restricted from undertaking any

-17-

Exhibit 2
-39-

activities by virtue of this provision even if said individual attorney is employed by or works for the same firm or organization as an individual who has received such Protected Material.

11.    SOURCE CODE

(a)    To the extent production of source code becomes necessary in this case, a Producing Party may designate source code as "HIGHLY CONFIDENTIAL - SOURCE CODE" if it comprises or includes confidential, proprietary or trade secret source code.  Nothing in this Order shall be construed as a representation or admission that Source Code is properly discoverable in this action, or to obligate any Party to produce any Source Code.

(b)    Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information including the Prosecution Bar set forth in Paragraph 10, and may be disclosed only to the individuals identified in Paragraphs 9.2(a), (c), (d), (e), (g), and (j), subject to the restrictions set forth in Paragraph 9.3.

(c)    Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the Producing Party's counsel in the Central District of California or another mutually agreed upon location. The source code shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device.  No recordable media or recordable devices, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind,

-18-

Exhibit 2
-40-

shall be permitted into the Source Code Review Room. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.

(d)     The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business.  The Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; (b) the Producing Party approves such software tools; and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein.  The Receiving Party must provide the Producing Party with the CD or DVD containing such licensed software tool(s) at least fourteen (14) days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer.     The Parties agree to cooperate in good faith if additional software becomes necessary on an expedited basis.

(e)     The Receiving Party's outside counsel and/or experts shall be entitled to take notes relating to the Source Code but may not copy the Source Code into the notes and may not take such notes electronically on the Source Code Computer itself or any other computer.

(f)     The Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code

-19-

**Exhibit 2**
**-41-**

other than electronically as set forth in Paragraph (c) in the first instance.  The Receiving Party may generate PDF copies of limited portions of source code on the source code computer for purposes of asking the Producing Party to produce paper copies.  Any printed portion that consists of more than fifteen (15) pages of a continuous block of Source Code or more than two hundred (200) pages total shall be presumed to be excessive, and the burden shall be on the Receiving Party to demonstrate the need for such a printed copy.  Within ten (10) days, the Producing Party shall either (i) provide one copy set of such pages to the Receiving Party or (ii) inform the Requesting Party that it objects that the printed portions are excessive and/or not done for a permitted purpose.  The Parties will cooperate in good faith if a different timeframe for production is required.  If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Receiving Party shall be entitled to seek a Court resolution of whether the printed Source Code in question is narrowly tailored and was printed for a permitted purpose.  The burden shall be on the Receiving Party to demonstrate that such printed portions are no more than is reasonably necessary for a permitted purpose and not merely printed for the purposes of review and analysis elsewhere.  The printed pages shall constitute part of the Source Code produced by the Producing Party in this action.  Printing of directory paths or structures and file names shall not count toward the consecutive or aggregate page count listed in this section.

(g)     All persons who will review a Producing Party's Source Code on behalf of a Receiving Party, including members of a Receiving Party's outside law firm, shall be identified in writing to the Producing Party at least five (5) days in advance of the first time that such person reviews such Source Code.  Such identification shall be in addition to any other disclosure required under this Order.  All persons viewing Source Code on the source code

-20-

Exhibit 2
-42-

computer shall sign on each day they view Source Code a log that will include the names of persons who enter the locked room to view the Source Code and when they enter and depart.  The log shall be kept by the Producing Party.

(h)     Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Order, the Receiving Party's outside counsel and/or experts shall remove all notes, documents, and all other materials from the Source Code Review Room.  The Producing Party shall not be responsible for any items left in the room following each inspection session, and the Receiving Party shall have no expectation of confidentiality for any items left in the room following each inspection session without a prior agreement to that effect.  However, if the Producing Party locates any material that appears to contain the work product of the Receiving Party, the Producing Party shall not review the material and shall contact the Receiving Party in accordance with their ethical duties.  Proper identification of all authorized persons shall be provided prior to any access to the secure room or the computer containing Source Code.  Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the secure room or the Source Code Computer may be denied, at the discretion of the supplier, to any individual who fails to provide proper identification.

(i)     The Receiving Party's outside counsel of record may make no more than three (3) additional paper copies of any portions of the Source Code received from a Producing Party pursuant to Paragraph 11(f), not including copies attached to court filings or used at depositions, and shall maintain a log of all paper copies of the Source Code.  The log shall include the names of the reviewers and/or recipients of paper copies and locations where the

-21-

**Exhibit 2**
**-43-**

paper copies are stored.  Upon three (3) days' advance notice to the Receiving Party by the Producing Party, the Receiving Party shall provide a copy of this log to the Producing Party.

(j)     The Receiving Party's outside counsel of record and any person receiving a copy of any Source Code shall maintain and store any paper copies of the Source Code at their offices in a manner that prevents duplication of or unauthorized access to the Source Code, including, without limitation, storing the Source Code in a locked room or cabinet at all times when it is not in use.  Absent agreement of the Parties or order of this Court, no more than a total of fifteen (15) individuals identified by the Receiving Party shall have access to the printed portions of the Source Code (except insofar as such code appears in any court filing or expert report).  The Parties agree to cooperate in good faith if it becomes necessary for more than fifteen (15) individuals to have access to the printed portions of the Source Code.  A Producing Party's source code material may only be transported by the Receiving Party at the direction of a person authorized under these provisions to another person authorized under these provisions, on paper via hand carry, Federal Express, or other similarly reliable courier.

(k)     For depositions, the Receiving Party shall not bring copies of any printed Source Code.  Rather, at least ten (10) days before the date of the deposition, the Receiving Party shall notify the Producing Party it wishes to use Source Code at the deposition, and the Producing Party shall bring printed copies of the Source Code to the deposition for use by the Receiving Party. Copies of Source Code that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers.  The Producing Party shall maintain the marked deposition exhibits during the

-22-

**Exhibit 2**
-44-

pendency of this case.  All other paper copies of Source Code brought to the deposition by the Producing Party shall remain with the Producing Counsel's outside counsel for secure destruction in a timely manner following the deposition.

(l)	Except as provided in this sub-paragraph, absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code for use in any manner (including by way of example only, the Receiving Party may not scan the Source Code to a PDF or photograph the code).  Images or copies of Source Code shall not be included in correspondence between the Parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers whenever possible.  If a Party reasonably believes that it needs to submit a portion of Source Code as part of a filing with the Court, the Parties shall meet and confer as to how to make such a filing while protecting the confidentiality of the Source Code and such Source Code will not be filed absent agreement from the Producing Party that the confidentiality protections will be adequate or order of this Court.  If a Producing Party agrees to produce an electronic copy of all or any portion of its Source Code or provide written permission to the Receiving Party that an electronic or any other copy needs to be made for a Court filing, access to the Receiving Party's submission, communication, and/or disclosure of electronic files or other materials containing any portion of Source Code (paper or electronic) shall at all times be limited solely to individuals who are expressly authorized to view Source Code under the provisions of this Order.  Where the Producing Party has provided the express written permission required under this provision for a Receiving Party to create electronic copies of Source Code, the Receiving Party shall maintain a

-23-

Exhibit 2
-45-

log of all such electronic copies of any portion of Source Code in its possession or in the possession of its retained consultants, including the names of the reviewers and/or recipients of any such electronic copies, and the locations and manner in which the electronic copies are stored.   Additionally, any such electronic copies must be labeled "HIGHLY CONFIDENTIAL - SOURCE CODE" as provided for in this Order.

12.   PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena, including one issued by any court, arbitral, administrative or legislative body or a court order issued in other litigation, that requests or compels disclosure of any Protected Material, that Party must:

(a) promptly notify in writing each Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected. If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL," HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its

-24-

**Exhibit 2**
**-46-**

confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

### 13.   A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as Protected Material. Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) promptly provide the Non-Party with a copy of the Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3) make the information requested available for inspection by the Non-Party, if requested.

(c) If the Non-Party fails to seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective

-25-

**Exhibit 2**
**-47-**

order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

14. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order and (d) request such person or persons to execute the "Acknowledgment an Agreement to Be Bound" attached hereto as Exhibit A.  Unauthorized or inadvertent disclosure does not change the status of Discovery Material or waive a Producing Party's right to maintain the disclosed document or information as Protected Material.

15. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

(a) The inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to production, will not waive the applicable privilege and/or protection if a request for return of such

-26-

**Exhibit 2**
**-48-**

inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

(b)   Upon a request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Protected Material or Discovery Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

(c)   Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Discovery Material and such other information as is reasonably necessary to identify the Discovery Material and describe its nature to the Court in any motion to compel production of the Discovery Material.

16.   <u>MISCELLANEOUS</u>

16.1   <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

16.2   <u>Right to Assert Other Objections</u>. By agreeing to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

16.3   <u>Filing Protected Material</u>. A Party that seeks to file under seal any Protected Material must comply with Local Civil Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of

-27-

**Exhibit 2**
**-49-**

the specific Protected Material. If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party may file the information in the public record unless otherwise instructed by the court.

16.4   <u>Termination of Matter and Retention of Jurisdiction</u>.   The Parties agree that the terms of this Protective Order shall survive and remain in effect after the Final Disposition of the above-captioned matter.  The Court shall retain jurisdiction after Final Determination of this matter to hear and resolve any disputes arising out of this Protective Order.

16.5   <u>Successors</u>.  This Order shall be binding upon the Parties hereto, their successors, and anyone who obtains access to Protected Material.

16.6   <u>Modification by Court</u>.  This Order is subject to further court order based upon public policy or other considerations, and the Court may modify this Order sua sponte in the interests of justice.  All disputes between the Parties concerning Protected Material, however designated, produced under the protection of this Order shall be resolved by the United States District Court for the Central District of California.

16.7   <u>Computation of Time</u>.   The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rules of Civil Procedure 6.

17.   <u>FINAL DISPOSITION</u>

After the Final Disposition of this Action, as defined in Paragraph 6, within 60 days of a written request by the Designating Party, each Receiving Party shall return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to

-28-

**Exhibit 2**

**-50-**

the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material, but must return or destroy any pleadings, correspondence, and consultant or expert work product that contain information designated "HIGHLY CONFIDENTIAL – SOURCE CODE." Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Paragraph 6 (DURATION).

      18.   <u>VIOLATION</u>

      Any violation of this Order may be punished by appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.


**IT IS SO ORDERED.**

Dated: _____       _____

                             The Honorable John D. Early
                             United States Magistrate Judge

-29-

**Exhibit 2**
**-51-**

## **EXHIBIT A**

I, _____, acknowledge and declare that I have received a copy of the Protective Order ("Order") in *Masimo Corp., et al. v. Apple Inc.*, United States District Court, Central District of California, Southern Division, Civil Action No. 8:20-cv-00048-JVS (JDEx).  Having read and understood the terms of the Order, I agree to be bound by the terms of the Order and consent to the jurisdiction of said Court for the purpose of any proceeding to enforce the terms of the Order.

Name of individual: _____

Present occupation/job description: _____

_____

_____

Name of Company or Firm: _____

Address:_____


Dated: _____


_____
[Signature]

-30-

**Exhibit 2**
**-52-**

# EXHIBIT 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

MASIMO CORPORATION,
a Delaware corporation; and
CERCACOR LABORATORIES, INC.,
a Delaware corporation,

              Plaintiffs,

      v.

APPLE INC.,
a California corporation,

              Defendant.

CASE NO. 8:20-cv-00048-JVS (JDEx)

**STIPULATION AND [PROPOSED]**
**PROTECTIVE ORDER**

**Exhibit 3**
**-53-**

1. <u>PURPOSES AND LIMITATIONS</u>

Discovery in this action is likely to involve production of confidential, proprietary or private information for which special protection from public disclosure and from use for any purpose other than pursuing this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery, including disclosures under Rule 26, and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.

2. <u>GOOD CAUSE STATEMENT</u>

This action is likely to involve trade secrets, customer and pricing lists and other valuable research, development, commercial, financial, technical and/or proprietary information for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. Such confidential and proprietary materials and information consist of, among other things, confidential business or financial information, information regarding confidential business practices, or other confidential research, development, or commercial information (including information implicating privacy rights of third parties), information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such

-1-

Exhibit 3
-54-

information is justified in this matter, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure or any other applicable authority. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

3.    ACKNOWLEDGMENT OF UNDER SEAL FILING PROCEDURE

The parties further acknowledge, as set forth in Section 14.3, below, that this Protective Order does not entitle them to file confidential information under seal; Local Civil Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal. There is a strong presumption that the public has a right of access to judicial proceedings and records in civil cases. In connection with non-dispositive motions, good cause must be shown to support a filing under seal. *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1176 (9th Cir. 2006), *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002), *Makar-Welbon v. Sony Electrics, Inc.*, 187 F.R.D. 576, 577 (E.D. Wis. 1999) (even stipulated protective orders require good cause showing), and a specific showing of good cause with proper evidentiary support and legal justification, must be made with respect to Protected Material that a party seeks to file under seal. The parties' mere designation of Disclosure or Discovery Material as CONFIDENTIAL does not—without the submission of competent evidence by declaration, establishing that the material sought to be filed under seal qualifies as confidential, privileged, or otherwise protectable—constitute good cause. But designation of information as HIGHLY CONFIDENTIAL – SOURCE CODE or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY shall be presumptively

**Exhibit 3**
-55-

deemed to present good cause for filing under seal.  Nothing in this section shall in any way limit or detract from this Protective Order's requirements as to Source Code.

Further, if a party requests sealing related to a dispositive motion or trial, then compelling reasons, not only good cause, for the sealing must be shown, and the relief sought shall be narrowly tailored to serve the specific interest to be protected. *See Pintos v. Pacific Creditors Ass'n.*, 605 F.3d 665, 677-79 (9th Cir. 2010). For each item or type of information, document, or thing sought to be filed or introduced under seal in connection with a dispositive motion or trial, the party seeking protection must articulate compelling reasons, supported by specific facts and legal justification, for the requested sealing order. Again, competent evidence supporting the application to file documents under seal must be provided by declaration.

Any document that is not confidential, privileged, or otherwise protectable in its entirety will not be filed under seal if the confidential portions can be redacted. If documents can be redacted, then a redacted version for public viewing, omitting only the confidential, privileged, or otherwise protectable portions of the document, shall be filed. Any application that seeks to file documents under seal in their entirety should include an explanation of why redaction is not feasible.

4.   <u>DEFINITIONS</u>

4.1   Action: this pending federal lawsuit.

4.2   Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

4.3   "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26, and as specified above in the Good Cause Statement.

**Exhibit 3**

**-56-**

4.4   "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items: extremely confidential and/or sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party is likely to cause harm or significant competitive disadvantage to the Producing Party.

4.5   "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items: extremely sensitive "Confidential Information or Items" representing computer code, scripts, assembly, binaries, object code, source code listings (e.g., file names and path structure), descriptions of source code (e.g., descriptions of declarations, functions, and parameters), object code listings, and Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any ASIC or other chip, disclosure of which to another Party or Non-Party is likely to cause harm or significant competitive disadvantage to the Producing Party.  Other documents that quote source code may be designated pursuant to this Paragraph, provided that the Producing Party also produces a redacted version designated "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY," which removes the quoted source code.  Native Computer Aided Design (CAD) files may be designated pursuant to this Paragraph, provided that any printouts of CAD files shall be designated "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY" and will not be included in the page limits discussed in Section 11 below.

4.6   Counsel: Outside Counsel of Record and House Counsel (as well as their support staff).

4.7   Designating Party or Producing Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

-4-

**Exhibit 3**
**-57-**

4.8    Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery.

4.9    Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

4.10   House Counsel: attorneys who are employees of a party to this Action.  House Counsel does not include Outside Counsel of Record or any other outside counsel.

4.11   Non-Party: any natural person, partnership, corporation, association or other legal entity not named as a Party to this action.

4.12   Outside Counsel of Record: attorneys who are not employees of a party to this Action but are retained to represent a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm that has appeared on behalf of that party, and includes support staff.

4.13   Party: any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

4.14   Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

4.15   Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

4.16   Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE

-5-

**Exhibit 3**
-58-

CODE."  Protected Material shall not include:  (i) advertising materials that have been actually published or publicly disseminated; and (ii) materials that show on their face they have been disseminated to the public.

4.17   Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

5.   SCOPE

5.1   All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function.  Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Order.

5.2   The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel in court or in other settings that might reveal Protected Material.

5.3   Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material to any person for any purpose.

5.4   This Order does not preclude any Party or Non-Party from using Protected Material with the consent of the Producing Party or by order of the Court.

5.5   This Order does not preclude any Party or Non-Party from moving the Court for additional protection of any Discovery Material or modification of

**Exhibit 3**
-59-

this Order, including, without limitation, moving for an order that certain matter not be produced at all.

5.6    Any use of Protected Material at trial shall be governed by a separate agreement or order. This Order does not govern the use of Protected Material at trial.

6.    DURATION

Even after Final Disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing, a court order otherwise directs, or the information was made public during trial. For purposes of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-captioned action with prejudice, including all appeals. Pursuant to Paragraph 5.6 above, any use of Protected Material at trial shall be governed by a separate agreement or order.

7.    DESIGNATING PROTECTED MATERIAL

7.1    Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.

Mass, indiscriminate or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

-7-

**Exhibit 3**
-60-

7.2    <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Order, or as otherwise stipulated or ordered, Disclosure of Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" (hereinafter "Confidentiality legend"), to each page that contains protected material. If only a portion of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).  For digital files being produced, the Producing Party may mark each viewable page or image with the appropriate designation, and mark the medium, container, and/or communication in which the digital files were contained.

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate Confidentiality legend to each page that contains Protected Material. If only a portion of the material on a page qualifies for protection, the Producing Party

**Exhibit 3**
-61-

also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b) for testimony given in depositions that the Designating Party identifies the Disclosure or Discovery Material on the record at the time the testimony is given or by sending written notice of which portions of the transcript of the testimony are designated within 30 days of receipt of the transcript of the testimony.  During the 30-day period, the entire transcript will be treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material.  In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order.  In the event the deposition is recorded (by video or otherwise), the original and all copies of the recording shall be  designated pursuant to the terms of this Protective Order.  Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material.  Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the appropriate Confidentiality legend. If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

**Exhibit 3**
**-62-**

(d) When electronic files or documents are printed for use at deposition, in a court proceeding, or for provision in printed form to an expert or consultant pre-approved pursuant to Paragraph 9.2(c), the party printing the electronic files or documents shall affix a legend to the printed document corresponding to the designation of the Designating Party and including the production number and designation associated with the native file.  The parties reserve the right to object to the use of any image format version of a document produced in native file format to the extent any information has been altered.

7.3    Inadvertent Failures to Designate. An inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material, provided that the Producing Party notifies all Receiving Parties that such Discovery Material is protected under one of the categories of this Order within fourteen (14) days of the Producing Party learning of the inadvertent failure to designate. Upon such timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.  The Producing Party shall reproduce the Protected Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Parties.  Upon receiving the Protected Material with the correct confidentiality designation, the Receiving Parties shall return or securely destroy all Discovery Material that was not designated properly.

A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives such notice that such Discovery Material is protected under one of the categories of this Order, unless an objectively reasonable person would have realized that the Discovery Material should have been appropriately designated with a confidentiality designation under this Order. Once a Receiving Party has received notification

**Exhibit 3**
-63-

of the correct confidentiality designation for the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in the following Paragraph below) at the appropriately designated level pursuant to the terms of this Order.

A subsequent designation of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" materials while the materials were not marked "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" from engaging in the activities set forth in Paragraph 10.

8    CHALLENGING CONFIDENTIALITY DESIGNATIONS

8.1.   Timing and Form of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.   Any challenge to a designation of Discovery Material under this Order shall comply with the procedures set forth in Local Rule 37-1.

8.2   Meet and Confer. It shall be the responsibility of the Challenging Party to initiate the dispute resolution process under Local Rule 37-1 et seq.

8.3   Joint Stipulation. Any challenge submitted to the Court shall be via a joint stipulation pursuant to Local Rule 37-2.

8.4   The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall

-11-

**Exhibit 3**
-64-

continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

## 9  ACCESS TO AND USE OF PROTECTED MATERIAL

9.1  Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in accordance with Section 5.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of section 17 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location in the United States and in a secure manner that ensures that access is limited to the persons authorized under this Order.  To ensure compliance with applicable United States Export Administration Regulations, Protected Material may not be exported outside the United States or released to any foreign national (even if within the United States).

Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in part upon Protected Materials, provided counsel does not disclose the Protected Material itself except as provided in this Order.

Nothing in this Protective Order shall preclude a party from using material obtained lawfully from a source other than the Producing Party, even if the Producing Party also designated the material pursuant to this Protective Order.

9.2  Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

-12-

**Exhibit 3**
-65-

(a) the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

(b) Not more than three (3) representatives of the Receiving Party who are officers or employees (including House Counsel) to whom disclosure is reasonably necessary for this Action, provided that:  (a) each such person has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) no unresolved objections to such disclosure exist after proper Pre-Access Disclosure Requirements are provided to all Parties and all objections have been resolved under the Objections Process under 9.2(c) below;

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action, including the expert's support staff, provided that: (1) such consultants or experts are not presently an officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party and (2) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party.  At least fourteen (14) days before access to the Protected Material is to be given to a consultant or expert, the consultant or expert shall complete the "Acknowledgment and Agreement to Be Bound" (Exhibit A) and the same shall be served upon the producing Party along with the following "Pre-Access Disclosure Requirements":

(i)     a current curriculum vitae of the consultant or expert;

(ii)    identification of the consultant or expert's present employer and job title;

(iii)   identification of all of the person's past and current employment and consulting relationships in the past five years,

-13-

**Exhibit 3**
**-66-**

including direct relationships and relationships through entities owned or controlled by the person, including but not limited to, an identification of any individual or entity with or for whom the person is employed or to whom the person provides consulting services relating to the design, development, operation, or patenting of non-invasive physiological monitoring technologies, or relating to the acquisition of intellectual property assets relating to non-invasive physiological monitoring;

(iv)    identification (by application number, title, and filing date) of all pending patent applications on which the person is named as an inventor, in which the person has any ownership interest, or as to which the person has had or anticipates in the future any involvement in advising on, consulting on, preparing, prosecuting, drafting, editing, amending, or otherwise affecting the scope of the claims; and

(v)    a listing (by name and number of the case, filing date, and location of court) of any litigation in connection with which the person has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

The Party seeking to disclose Protected Material shall provide such other information regarding the person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside expert or consultant. Objection Process: The producing party may object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert.  In the absence of an objection within fourteen (14) days of the date on which the Producing Party receives notice that a consultant or expert

-14-

**Exhibit 3**
-67-

will be given access to Protected Material, the person shall be deemed approved under this Protective Order.  There shall be no disclosure of Protected Material to the person prior to expiration of this fourteen (14) day period.  If an objection is received within that fourteen (14) day period, the Parties agree to meet and confer within seven (7) days following the objection and to use good faith to resolve any such objection.  If the Parties are unable to resolve any objection, the objecting Party shall serve on the other Party a Joint Stipulation pursuant to Local Rule 37-2.1 within seven (7) days of the meet and confer.  The objecting Party shall have the burden of proving the need for a protective order.  No disclosure shall occur until all such objections are resolved by agreement or Court order;

(d) the court and its personnel;

(e) court reporters, videographers, and their staff;

(f) professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) the author, recipient, or custodian of a document containing the information, or any other individual who appears to have had access to the specific information at  issue based  on  the  face  of  the  document,  the document's metadata, other documents, or sworn witness testimony;

(h) any mediators or settlement officers and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions; and

(i) any other person with the prior written consent of the Producing Party.

9.3. <u>Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items</u>. Unless otherwise ordered by the court or

-15-

**Exhibit 3**
**-68-**

permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to the individuals identified in Paragraphs 9.2 (a), (c)-(i), provided that such Outside Counsel under Paragraph 9.2(a) is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party and such proposed Outside Counsel did not, at the time the lawsuit was filed or within the previous two (2) years from the date the lawsuit was filed, have a business or ownership interest in a Party (i.e., was not a Board member, Director, officer, employee, or hold a title with a Party). Additionally, whether Plaintiffs' trade secret disclosure under California Code of Civil Procedure Section 2019.210 is designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY,"  access to said disclosure shall be permitted for three (3) Apple House Counsel.

10.    <u>PROSECUTION BAR</u>

Plaintiffs' Language:  Absent written consent from the Producing Party, any individual who receives access to "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information shall not be involved, directly or indirectly, in the (i) prosecution of patents or patent applications relating to non-invasive physiological monitoring, including without limitation the patents at issue in this action and any patent or application claiming priority to or otherwise related to the patents at issue in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office") or (ii) the acquisition of patents (including patent applications), or the rights to any such patents or patent applications with the right to sublicense, relating to the functionality, operation, and design of non-invasive physiological monitoring technologies.  For purposes of this Paragraph,

-16-

**Exhibit 3**
**-69-**

"prosecution" means advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications, specifications, claims, and/or responses to office actions, or otherwise affecting the scope of claims in patents or patent applications relating to the functionality, operation, and design of non-invasive physiological monitoring technologies (generally or as described in any patent in suit), before any foreign or domestic agency, including the United States Patent and Trademark Office;. To avoid any doubt, "prosecution" as used in this Paragraph does not include providing patent prosecution counsel with public information to submit to the Patent Office. "Prosecution" as used in this Paragraph also does not include representing a party before a domestic or foreign agency in a patent challenge (including, but not limited to, a reissue protest, *ex parte* reexamination, *inter partes* reexamination, *inter partes* review, covered business method review, post-grant review or other patent office proceedings in the United States or elsewhere on behalf of a patentee but only if no amendments to the claims are made to the patent or patent application by anyone during that process. If an individual that has had access to "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information and participates in a reissue protest, *ex parte* reexamination, *inter partes* reexamination, *inter partes* review, covered business method review, post-grant review, or other patent office proceedings in the United States or elsewhere on behalf of a patentee, the claims of the patent involved in such proceedings may not be amended by anyone without violating this protective order. These prohibitions are not intended to and shall not preclude counsel from participating directly or indirectly in proceedings on behalf of a Party challenging the validity of any patent. This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE"

-17-

**Exhibit 3**
**-70-**

information is first received by the affected individual and shall end two (2) years after final resolution of this action, including all appeals.

11.  SOURCE CODE

(a)   To the extent production of source code becomes necessary in this case, a Producing Party may designate source code as "HIGHLY CONFIDENTIAL - SOURCE CODE" if it comprises or includes confidential, proprietary or trade secret source code.  Nothing in this Order shall be construed as a representation or admission that Source Code is properly discoverable in this action, or to obligate any Party to produce any Source Code.

(b)   Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information including the Prosecution Bar set forth in Paragraph 10, and may be disclosed only to the individuals identified in Paragraphs 9.2(a), (c), (d), (e), (g), and (j), subject to the restrictions set forth in Paragraph 9.3.

(c)   Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the Producing Party's counsel in the Central District of California or another mutually agreed upon location. The source code shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device.  No recordable media or recordable devices, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, shall be permitted into the Source Code Review Room. The Producing Party may visually monitor the activities of the Receiving Party's representatives

-18-

**Exhibit 3**
**-71-**

during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.

(d)     The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business.  The Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; (b) the Producing Party approves such software tools; and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein.  The Receiving Party must provide the Producing Party with the CD or DVD containing such licensed software tool(s) at least fourteen (14) days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer.     The Parties agree to cooperate in good faith if additional software becomes necessary on an expedited basis.

(e)     The Receiving Party's outside counsel and/or experts shall be entitled to take notes relating to the Source Code but may not copy the Source Code into the notes and may not take such notes electronically on the Source Code Computer itself or any other computer.

(f)     The Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in Paragraph (c) in the first instance.  Any printed portion that consists of more than fifteen (15) pages of a continuous block of Source Code shall be presumed to be excessive, and the burden shall be

-19-

**Exhibit 3**
-72-

on the Receiving Party to demonstrate the need for such a printed copy.  The Receiving Party may print out no more than two hundred (200) pages total.  Within ten (10) days, the Producing Party shall either (i) provide one copy set of such pages to the Receiving Party or (ii) inform the Requesting Party that it objects that the printed portions are excessive and/or not done for a permitted purpose.  The Parties will cooperate in good faith if a different timeframe for production is required.  If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Receiving Party shall be entitled to seek a Court resolution of whether the printed Source Code in question is narrowly tailored and was printed for a permitted purpose.  The burden shall be on the Receiving Party to demonstrate that such printed portions are no more than is reasonably necessary for a permitted purpose and not merely printed for the purposes of review and analysis elsewhere.  The printed pages shall constitute part of the Source Code produced by the Producing Party in this action.

(g)     All persons who will review a Producing Party's Source Code on behalf of a Receiving Party, including members of a Receiving Party's outside law firm, shall be identified in writing to the Producing Party at least five (5) days in advance of the first time that such person reviews such Source Code.  Such identification shall be in addition to any other disclosure required under this Order.   All persons viewing Source Code on the source code computer shall sign on each day they view Source Code a log that will include the names of persons who enter the locked room to view the Source Code and when they enter and depart.  The log shall be kept by the Producing Party.

(h)     Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Order, the Receiving Party's outside counsel and/or experts shall remove all notes, documents, and all other materials from the Source Code Review Room.  The Producing Party shall

not be responsible for any items left in the room following each inspection session, and the Receiving Party shall have no expectation of confidentiality for any items left in the room following each inspection session without a prior agreement to that effect.  Proper identification of all authorized persons shall be provided prior to any access to the secure room or the computer containing Source Code.  Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the secure room or the Source Code Computer may be denied, at the discretion of the supplier, to any individual who fails to provide proper identification.

(i)     The Receiving Party's outside counsel of record may make no more than three (3) additional paper copies of any portions of the Source Code received from a Producing Party pursuant to Paragraph 11(f), not including copies attached to court filings or used at depositions, and shall maintain a log of all paper copies of the Source Code.  The log shall include the names of the reviewers and/or recipients of paper copies and locations where the paper copies are stored.  Upon one (1) day's advance notice to the Receiving Party by the Producing Party, the Receiving Party shall provide a copy of this log to the Producing Party.

(j)     The Receiving Party's outside counsel of record and any person receiving a copy of any Source Code shall maintain and store any paper copies of the Source Code at their offices in a manner that prevents duplication of or unauthorized access to the Source Code, including, without limitation, storing the Source Code in a locked room or cabinet at all times when it is not in use.  No more than a total of fifteen (15) individuals identified by the Receiving Party shall have access to the printed portions of the Source Code (except insofar as such code appears in any court filing or expert report).

-21-

**Exhibit 3**
**-74-**

(k)     For depositions, the Receiving Party shall not bring copies of any printed Source Code.  Rather, at least ten (10) days before the date of the deposition, the Receiving Party shall notify the Producing Party about the specific portions of Source Code it wishes to use at the deposition, and the Producing Party shall bring printed copies of those portions to the deposition for use by the Receiving Party.  Copies of Source Code that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers. All paper copies of Source Code brought to the deposition by the Producing Party shall remain with the Producing Counsel's outside counsel for secure destruction in a timely manner following the deposition.

(l)     Except as provided in this sub-paragraph, absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code for use in any manner (including by way of example only, the Receiving Party may not scan the Source Code to a PDF or photograph the code).  Images or copies of Source Code shall not be included in correspondence between the Parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers whenever possible.  If a Party reasonably believes that it needs to submit a portion of Source Code as part of a filing with the Court, the Parties shall meet and confer as to how to make such a filing while protecting the confidentiality of the Source Code and such Source Code will not be filed absent agreement from the Producing Party that the confidentiality protections will be adequate.  If a Producing Party agrees to produce an electronic copy of all or any portion of its Source Code or provide written permission to the Receiving Party that an electronic or any other copy needs to be made for a

-22-

**Exhibit 3**
**-75-**

Court filing, access to the Receiving Party's submission, communication, and/or disclosure of electronic files or other materials containing any portion of Source Code (paper or electronic) shall at all times be limited solely to individuals who are expressly authorized to view Source Code under the provisions of this Order.  Where the Producing Party has provided the express written permission required under this provision for a Receiving Party to create electronic copies of Source Code, the Receiving Party shall maintain a log of all such electronic copies of any portion of Source Code in its possession or in the possession of its retained consultants, including the names of the reviewers and/or recipients of any such electronic copies, and the locations and manner in which the electronic copies are stored.  Additionally, any such electronic copies must be labeled "HIGHLY CONFIDENTIAL - SOURCE CODE" as provided for in this Order.

12.     PROTECTED MATERIAL SUBPOENAED OR ORDERED
        PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena, including one issued by any court, arbitral, administrative or legislative body or a court order issued in other litigation, that requests or compels disclosure of any Protected Material, that Party must:

(a) promptly notify in writing each Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected. If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this

-23-

**Exhibit 3**
**-76-**

action as "CONFIDENTIAL," HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

13.     A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as Protected Material. Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3) make the information requested available for inspection by the Non-Party, if requested.

-24-

**Exhibit 3**
-77-

(c) If the Non-Party fails to seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

14.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order and (d) request such person or persons to execute the "Acknowledgment an Agreement to Be Bound" attached hereto as Exhibit A.   Unauthorized or inadvertent disclosure does not change the status of Discovery Material or waive a Producing Party's right to maintain the disclosed document or information as Protected Material.

15.    INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

(a) The inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other

-25-

**Exhibit 3**
-78-

applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to production, will not waive the applicable privilege and/or protection if a request for return of such inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

(b) Upon a request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Protected Material or Discovery Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

(c) Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Discovery Material and such other information as is reasonably necessary to identify the Discovery Material and describe its nature to the Court in any motion to compel production of the Discovery Material.

16.     <u>MISCELLANEOUS</u>

16.1    <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

16.2    <u>Right to Assert Other Objections</u>. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

**Exhibit 3**
**-79-**

16.3   Filing Protected Material. A Party that seeks to file under seal any Protected Material must comply with Local Civil Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material. If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party may file the information in the public record unless otherwise instructed by the court.

16.4   Termination of Matter and Retention of Jurisdiction.  The Parties agree that the terms of this Protective Order shall survive and remain in effect after the Final Disposition of the above-captioned matter.  The Court shall retain jurisdiction after Final Determination of this matter to hear and resolve any disputes arising out of this Protective Order.

16.5   Successors.  This Order shall be binding upon the Parties hereto, their successors, and anyone who obtains access to Protected Material.

16.6   Modification by Court.  This Order is subject to further court order based upon public policy or other considerations, and the Court may modify this Order sua sponte in the interests of justice.  All disputes between the Parties concerning Protected Material, however designated, produced under the protection of this Order shall be resolved by the United States District Court for the Central District of California.

16.7   Computation of Time.  The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rules of Civil Procedure 6.

17.   FINAL DISPOSITION

Not later than sixty (60) days after the Final Disposition of this Action, as defined in Paragraph 6, each Receiving Party shall return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material.

-27-

Exhibit 3
-80-

Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material, but must return or destroy any pleadings, correspondence, and consultant or expert work product that contain information designated "HIGHLY CONFIDENTIAL – SOURCE CODE." Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Paragraph 6 (DURATION).

18.   <u>VIOLATION</u>

Any violation of this Order may be punished by appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: _____, 2020        **Knobbe, Martens, Olson & Bear LLP**

By: __*DRAFT*_____

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C Jensen
steve.jensen@knobbe.com
Perry D. Oldham
perry.oldham@knobbe.com

-28-

**Exhibit 3**
**-81-**

1

2

Stephen W Larson
2040 Main Street, Fourteenth Floor
Irvine, CA  92614

3

*Attorneys for Plaintiffs*

4

Dated: _____, 2020

**GIBSON, DUNN & CRUTCHER LLP**

5

6

By:    *DRAFT* _____

7

8

9

Joshua H. Lerner, SBN 220755
jlerner@gibsondunn.com
555 Mission Street Suite 3000
San Francisco, CA 94105
Telephone:  415.393.8200
Facsimile:   415.393.8306

10

11

12

13

H. Mark Lyon, SBN 162061
mlyon@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone:  650.849.5300
Facsimile:   650.849.5333

14

*Attorneys for Defendant*

15

16

**IT IS SO ORDERED.**

17

Dated: _____

18

_____
The Honorable John D. Early
United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

-29-

**Exhibit 3
-82-**

**ATTESTATION REGARDING SIGNATURES**

I, Joshua H. Lerner, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED:  June __, 2020                    By:    /s/ *DRAFT*_____

                                                Joshua H. Lerner

-30-

**Exhibit 3**
**-83-**

**EXHIBIT A**

I, _____, acknowledge and declare that I have received a copy of the Protective Order ("Order") in *Masimo Corp., et al. v. Apple Inc.*, United States District Court, Central District of California, Southern Division, Civil Action No. 8:20-cv-00048-JVS (JDEx).  Having read and understood the terms of the Order, I agree to be bound by the terms of the Order and consent to the jurisdiction of said Court for the purpose of any proceeding to enforce the terms of the Order.

Name of individual: _____

Present occupation/job description: _____

_____

_____

Name of Company or Firm: _____

Address:_____

Dated: _____

_____
[Signature]

EXHIBIT 4

1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION,<br>a Delaware corporation; and<br>CERCACOR LABORATORIES, INC.,<br>a Delaware corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>APPLE INC.,<br>a California corporation,<br><br>        Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**STIPULATION AND [PROPOSED] PROTECTIVE ORDER** |

**Exhibit 4**
**-85-**

1.   <u>PURPOSES AND LIMITATIONS</u>

Discovery in this action is likely to involve production of confidential, proprietary or private information for which special protection from public disclosure and from use for any purpose other than pursuing this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery, including disclosures under Rule 26, and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.

2.   <u>GOOD CAUSE STATEMENT</u>

This action is likely to involve trade secrets, customer and pricing lists and other valuable research, development, commercial, financial, technical and/or proprietary information for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. Such confidential and proprietary materials and information consist of, among other things, confidential business or financial information, information regarding confidential business practices, or other confidential research, development, or commercial information (including information implicating privacy rights of third parties), information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such

**Exhibit 4**
**-86-**

information is justified in this matter, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure or any other applicable authority. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

3.    ACKNOWLEDGMENT OF UNDER SEAL FILING PROCEDURE

The parties further acknowledge, as set forth in Section 14.3, below, that this Protective Order does not entitle them to file confidential information under seal; Local Civil Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal. There is a strong presumption that the public has a right of access to judicial proceedings and records in civil cases. In connection with non-dispositive motions, good cause must be shown to support a filing under seal. *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1176 (9th Cir. 2006), *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002), *Makar-Welbon v. Sony Electrics, Inc.*, 187 F.R.D. 576, 577 (E.D. Wis. 1999) (even stipulated protective orders require good cause showing), and a specific showing of good cause with proper evidentiary support and legal justification, must be made with respect to Protected Material that a party seeks to file under seal. The parties' mere designation of Disclosure or Discovery Material as CONFIDENTIAL does not—without the submission of competent evidence by declaration, establishing that the material sought to be filed under seal qualifies as confidential, privileged, or otherwise protectable—constitute good cause. But designation of information as HIGHLY CONFIDENTIAL – SOURCE CODE or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY shall be presumptively

<u>deemed to present good cause for filing under seal.  Nothing in this section shall in any way limit or detract from this Protective Order's requirements as to Source Code.</u>

Further, if a party requests sealing related to a dispositive motion or trial, then compelling reasons, not only good cause, for the sealing must be shown, and the relief sought shall be narrowly tailored to serve the specific interest to be protected. *See Pintos v. Pacific Creditors Ass'n.*, 605 F.3d 665, 677-79 (9th Cir. 2010). For each item or type of information, document, or thing sought to be filed or introduced under seal in connection with a dispositive motion or trial, the party seeking protection must articulate compelling reasons, supported by specific facts and legal justification, for the requested sealing order. Again, competent evidence supporting the application to file documents under seal must be provided by declaration.

Any document that is not confidential, privileged, or otherwise protectable in its entirety will not be filed under seal if the confidential portions can be redacted. If documents can be redacted, then a redacted version for public viewing, omitting only the confidential, privileged, or otherwise protectable portions of the document, shall be filed. Any application that seeks to file documents under seal in their entirety should include an explanation of why redaction is not feasible.

4.      <u>DEFINITIONS</u>

4.1     Action: this pending federal lawsuit.

4.2     Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

4.3     "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26, and as specified above in the Good Cause Statement.

-3-

**Exhibit 4**
**-88-**

4.4    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items: extremely confidential and/or sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party is likely to cause harm or significant competitive disadvantage to the Producing Party.

4.5    "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items: extremely sensitive "Confidential Information or Items" representing computer code, scripts, assembly, binaries, object code, source code listings (e.g., file names and path structure), descriptions of source code comments,(e.g., descriptions of declarations, functions, and parameters), object code listings, and Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any ASIC or other chip, disclosure of which to another Party or Non-Party is likely to cause harm or significant competitive disadvantage to the Producing Party.  Other documents that quote source code may be designated pursuant to this Paragraph, provided that the Producing Party also produces a redacted version designated "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY," which removes the quoted source code.  Native Computer Aided Design (CAD) files may be designated pursuant to this Paragraph, provided that any printouts of CAD files shall be designated "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY" and will not be included in the page limits discussed in Section 11 below.

4.6    Counsel: Outside Counsel of Record and House Counsel (as well as their support staff).

4.7    Designating Party or Producing Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

**Exhibit 4**
**-89-**

4.8    Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery.

4.9    Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

4.10    House Counsel: attorneys who are employees of a party to this Action.  House Counsel does not include Outside Counsel of Record or any other outside counsel.

4.11    Non-Party: any natural person, partnership, corporation, association or other legal entity not named as a Party to this action.

4.12    Outside Counsel of Record: attorneys who are not employees of a party to this Action but are retained to represent a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm that has appeared on behalf of that party, and includes support staff.

4.13    Party: any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

4.14    Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

4.15    Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

4.16    Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE

**Exhibit 4**
**-90-**

CODE."   Protected Material shall not include:  (i) advertising materials that have been actually published or publicly disseminated; and (ii) materials that show on their face they have been disseminated to the public.

4.17    Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

5.    SCOPE

5.1    All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function.  Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Order.

5.2    The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel in court or in other settings that might reveal Protected Material.

5.3    Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material to any person for any purpose.

5.4    This Order does not preclude any Party or Non-Party from using Protected Material with the consent of the Producing Party or by order of the Court.

5.5    This Order does not preclude any Party or Non-Party from moving the Court for additional protection of any Discovery Material or modification of

**Exhibit 4**
-91-

this Order, including, without limitation, moving for an order that certain matter not be produced at all.

5.6    Any use of Protected Material at trial shall be governed by ~~the orders of the trial judge and other applicable authorities~~ <u>a separate agreement or order</u>. This Order does not govern the use of Protected Material at trial.

6.    <u>DURATION</u>

Even after Final Disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing, a court order otherwise directs, or the information was made public during trial. For purposes of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-captioned action with prejudice, including all appeals. ~~Once a case proceeds to trial, information that was designated or maintained pursuant to this protective order used or introduced as an exhibit at trial becomes public and will be presumptively available to all members of the public, including the press, unless compelling reasons supported by specific factual findings to proceed otherwise are made to the trial judge. *See Kamakana*, 447 F.3d at 1180-81 (distinguishing "good cause" showing for sealing documents produced in discovery from "compelling reasons" standard when merits-related documents are part of court record).~~<u>Pursuant to Paragraph 5.6 above, any use of Protected Material at trial shall be governed by a separate agreement or order.</u>

7.    <u>DESIGNATING PROTECTED MATERIAL</u>

7.1    <u>Exercise of Restraint and Care in Designating Material for Protection</u>. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.

Mass, indiscriminate or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for

an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

7.2   <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Order, or as otherwise stipulated or ordered, Disclosure of Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" (hereinafter "Confidentiality legend"), to each page that contains protected material. If only a portion of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).  For digital files being produced, the Producing Party may mark each viewable page or image with the appropriate designation, and mark the medium, container, and/or communication in which the digital files were contained.

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for

**Exhibit 4**
-93-

inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate Confidentiality legend to each page that contains Protected Material. If only a portion of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b) for testimony given in depositions that the Designating Party identifies the Disclosure or Discovery Material on the record at the time the testimony is given or by sending written notice of which portions of the transcript of the testimony are designated within 30 days of receipt of the transcript of the testimony.  During the 30-day period, the entire transcript will be treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material.  In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order.  In the event the deposition is recorded (by video or otherwise), the original and all copies of the recording shall be  designated pursuant to the terms of this Protective Order.  Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material.  Such right of exclusion shall be

**Exhibit 4**
**-94-**

applicable only during periods of examination or testimony regarding such Protected Material.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the appropriate Confidentiality legend. If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

(d) When electronic files or documents are printed for use at deposition, in a court proceeding, or for provision in printed form to an expert or consultant pre-approved pursuant to Paragraph 9.2(c), the party printing the electronic files or documents shall affix a legend to the printed document corresponding to the designation of the Designating Party and including the production number and designation associated with the native file.  The parties reserve the right to object to the use of any image format version of a document produced in native file format to the extent any information has been altered.

7.3    <u>Inadvertent Failures to Designate</u>. An inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material, provided that the Producing Party notifies all Receiving Parties that such Discovery Material is protected under one of the categories of this Order within fourteen (14) days of the Producing Party learning of the inadvertent failure to designate. Upon such timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.  The Producing Party shall reproduce the Protected Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Parties.  Upon receiving the Protected Material with the correct confidentiality designation, the Receiving

-10-

Exhibit 4
-95-

Parties shall return or securely destroy all Discovery Material that was not designated properly.

A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives such notice that such Discovery Material is protected under one of the categories of this Order, unless an objectively reasonable person would have realized that the Discovery Material should have been appropriately designated with a confidentiality designation under this Order. Once a Receiving Party has received notification of the correct confidentiality designation for the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in the following Paragraph below) at the appropriately designated level pursuant to the terms of this Order.

A subsequent designation of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" materials while the materials were not marked "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" from engaging in the activities set forth in Paragraph 10.

## 8    CHALLENGING CONFIDENTIALITY DESIGNATIONS

8.1.   <u>Timing and Form of Challenges</u>. Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.   Any challenge to a designation of Discovery Material under this Order shall comply with the procedures set forth in Local Rule 37-1.

-11-

**Exhibit 4**
**-96-**

8.2   Meet and Confer. It shall be the responsibility of the Challenging Party to initiate the dispute resolution process under Local Rule 37-1 et seq.

8.3   Joint Stipulation. Any challenge submitted to the Court shall be via a joint stipulation pursuant to Local Rule 37-2.

8.4   The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

9    ACCESS TO AND USE OF PROTECTED MATERIAL

9.1   Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in accordance with Section 5.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of section 17 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location in the United States and in a secure manner that ensures that access is limited to the persons authorized under this Order.   The Receiving Party will take any reasonably necessary precautions to comply with applicable United States Export Administration Regulations.   To ensure compliance with applicable United States Export Administration Regulations, Protected Material may not be exported outside the United States or released to any foreign national (even if within the United States).

-12-

**Exhibit 4**
-97-

Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in part upon Protected Materials, provided counsel does not disclose the Protected Material itself except as provided in this Order.

Nothing in this Protective Order shall preclude a party from using material obtained lawfully from a source other than the Producing Party, even if the Producing Party also designated the material pursuant to this Protective Order.

9.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

(b) ~~the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action~~ Not more than three (3) representatives of the Receiving Party who are officers or employees (including House Counsel) to whom disclosure is reasonably necessary for this Action, provided that:  (a) each such person has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) no unresolved objections to such disclosure exist after proper Pre-Access Disclosure Requirements are provided to all Parties and all objections have been resolved under the Objections Process under 9.2(c) below;

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action, including the expert's support staff, provided that: (1) such consultants or experts are not presently an officer, director, or employee of a Party or of a competitor of a Party, nor

-13-

**Exhibit 4**
**-98-**

anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party and (2) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party.  At least fourteen (14) days before access to the Protected Material is to be given to a consultant or expert, the consultant or expert shall complete the "Acknowledgment and Agreement to Be Bound" (Exhibit A) and the same shall be served upon the producing Party along with the following "Pre-Access Disclosure Requirements":

> (i)     a current curriculum vitae of the consultant or expert;
>
> (ii)    identification of the consultant or expert's present employer and job title;
>
> (iii)   identification of all of the person's past and current employment and consulting relationships in the past five years, including direct relationships and relationships through entities owned or controlled by the person, including but not limited to, an identification of any individual or entity with or for whom the person is employed or to whom the person provides consulting services relating to the design, development, operation, or patenting of non-invasive physiological monitoring technologies, or relating to the acquisition of intellectual property assets relating to non-invasive physiological monitoring;
>
> (iv)   identification (by application number, title, and filing date) of all pending patent applications on which the person is named as an inventor, in which the person has any ownership interest, or as to which the person has had or anticipates in the future any involvement in advising on, consulting on, preparing, prosecuting,

**Exhibit 4**
**-99-**

drafting, editing, amending, or otherwise affecting the scope of the claims; and

(v)    a listing (by name and number of the case, filing date, and location of court) of any litigation in connection with which the person has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

The Party seeking to disclose Protected Material shall provide such other information regarding the person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside expert or consultant. Objection Process: The producing party may object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert.  In the absence of an objection within fourteen (14) days of the date on which the Producing Party receives notice that a consultant or expert will be given access to Protected Material, the person shall be deemed approved under this Protective Order.  There shall be no disclosure of Protected Material to the person prior to expiration of this fourteen (14) day period.  If an objection is received within that fourteen (14) day period, the Parties agree to meet and confer within seven (7) days following the objection and to use good faith to resolve any such objection.  If the Parties are unable to resolve any objection, the objecting Party shall serve on the other Party a Joint Stipulation pursuant to Local Rule 37-2.1 within seven (7) days of the meet and confer.  The objecting Party shall have the burden of proving the need for a protective order.  No disclosure shall occur until all such objections are resolved by agreement or Court order;

(d) the court and its personnel;

(e) court reporters, videographers, and their staff;

-15-

**Exhibit 4**
**-100-**

(f) professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) ~~, provided that the name of any e-discovery vendors must be disclosed at least fourteen (14) days before providing the e-discovery vendor with Protected Material so that the Producing Party has an opportunity to object pursuant to the objection procedure set forth in subparagraph (c) above~~;

(g) the author, recipient, or custodian of a document containing the information, or any other individual who appears to have had access to the specific information at issue based on the face of the document, the document's metadata, other documents, or sworn witness testimony;

(h) any mediators or settlement officers and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions; and

(i) any other person with the prior written consent of the Producing Party ~~; and~~

~~(j) during their depositions, witnesses, and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit A hereto; and (2) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Protective Order.~~

9.3. <u>Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose

-16-

**Exhibit 4**
**-101-**

any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to the individuals identified in Paragraphs 9.2 (a), (c)-(i), who are not competitive decision-makers of a Party. provided that such Outside Counsel under Paragraph 9.2(a) is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party and such proposed Outside Counsel did not, at the time the lawsuit was filed or within the previous two (2) years from the date the lawsuit was filed, have a business or ownership interest in a Party (i.e., was not a Board member, Director, officer, employee, or hold a title with a Party).  Additionally, whether Plaintiffs' trade secret disclosure under California Code of Civil Procedure Section 2019.210 is designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY,"  access to said disclosure shall be permitted for three (3) Apple House Counsel.

### 10.   PROSECUTION BAR

After the adoption of this provision by the parties, Outside Counsel of Record and any person associated with a Party who receive a Producing Party's material designated "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL — SOURCE CODE" under this Protective Order who accesses or otherwise learns of, in whole or in part, said material designated "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL — SOURCE CODE" under this Protective Order shall not prepare, prosecute, supervise, advise, counsel, or assist in the preparation or prosecution of any patent application seeking a patent on behalf of the Receiving Party or its acquirer, successor, or predecessor in the field of non-invasive monitoring during the pendency of this Action and for two years after final termination of this action.  To avoid any doubt, "prosecution" as used in this paragraph does not include representing or

-17-

**Exhibit 4**
**-102-**

1   advising a Party before a domestic or foreign agency in connection with a
2   reissue, ex parte reexamination, covered business method review, *inter partes*
3   review, opposition, cancelation, or similar proceeding; though in connection
4   with any such agency proceeding involving the patents-in-suit, Outside Counsel
5   of Record for a Receiving Party shall not: (i) participate in the preparation,
6   prosecution, supervision, advice, counsel, or assistance of any amended claims;
7   (ii) reveal a Producing Party's Protected Material to any prosecuting
8   reexamination counsel or agent; or (iii) use a producing Party's Protected
9   Material for any purpose not permitted by Section 5.  The applicability of this
10  provision is to be determined on an individual-by-individual basis such that an
11  individual attorney who has not received Protected Material designated
12  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY
13  CONFIDENTIAL – SOURCE CODE" is not restricted from undertaking any
14  activities by virtue of this provision even if said individual attorney is employed
15  by or works for the same firm or organization as an individual who has received
16  such Protected Material.

17        Plaintiffs' Language:  Absent written consent from the Producing Party,
18  any individual who receives access to "CONFIDENTIAL," "HIGHLY
19  CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY
20  CONFIDENTIAL – SOURCE CODE" information shall not be involved,
21  directly or indirectly, in the (i) prosecution of patents or patent applications
22  relating to non-invasive physiological monitoring, including without limitation
23  the patents at issue in this action and any patent or application claiming priority
24  to or otherwise related to the patents at issue in this action, before any foreign or
25  domestic agency, including the United States Patent and Trademark Office ("the
26  Patent Office") or (ii) the acquisition of patents (including patent applications),
27  or the rights to any such patents or patent applications with the right to
28  sublicense, relating to the functionality, operation, and design of non-invasive

-18-

Exhibit 4
-103-

physiological monitoring technologies.   For purposes of this Paragraph, "prosecution" means advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications, specifications, claims, and/or responses to office actions, or otherwise affecting the scope of claims in patents or patent applications relating to the functionality, operation, and design of non-invasive physiological monitoring technologies (generally or as described in any patent in suit), before any foreign or domestic agency, including the United States Patent and Trademark Office;.  To avoid any doubt, "prosecution" as used in this Paragraph does not include providing patent prosecution counsel with public information to submit to the Patent Office. "Prosecution" as used in this Paragraph also does not include representing a party before a domestic or foreign agency in a patent challenge (including, but not limited to, a reissue protest, *ex parte* reexamination, *inter partes* reexamination, *inter partes* review, covered business method review, post-grant review or other patent office proceedings in the United States or elsewhere on behalf of a patentee but only if no amendments to the claims are made to the patent or patent application by anyone during that process.  If an individual that has had access to "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information and participates in a reissue protest, *ex parte* reexamination, *inter partes* reexamination, *inter partes* review, covered business method review, post-grant review, or other patent office proceedings in the United States or elsewhere on behalf of a patentee, the claims of the patent involved in such proceedings may not be amended by anyone without violating this protective order.  These prohibitions are not intended to and shall not preclude counsel from participating directly or indirectly in proceedings on behalf of a Party challenging the validity of any patent. This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS'

**Exhibit 4**
**-104-**

EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information is first received by the affected individual and shall end two (2) years after final resolution of this action, including all appeals.

11.   SOURCE CODE

(a)   To the extent production of source code becomes necessary in this case, a Producing Party may designate source code as "HIGHLY CONFIDENTIAL - SOURCE CODE" if it comprises or includes confidential, proprietary or trade secret source code.  Nothing in this Order shall be construed as a representation or admission that Source Code is properly discoverable in this action, or to obligate any Party to produce any Source Code.

(b)   Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information including the Prosecution Bar set forth in Paragraph 10, and may be disclosed only to the individuals identified in Paragraphs 9.2(a), (c), (d), (e), (g), and (j), subject to the restrictions set forth in Paragraph 9.3.

(c)   Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the Producing Party's counsel in the Central District of California or another mutually agreed upon location. The source code shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device.  No recordable media or recordable devices, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, shall be permitted into the Source Code Review Room. The Producing Party

-20-

Exhibit 4
-105-

may visually monitor the activities of the Receiving Party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.

(d)     The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business.   The Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; (b) the Producing Party approves such software tools; and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein.   The Receiving Party must provide the Producing Party with the CD or DVD containing such licensed software tool(s) at least fourteen (14) days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer.     The Parties agree to cooperate in good faith if additional software becomes necessary on an expedited basis.

(e)     The Receiving Party's outside counsel and/or experts shall be entitled to take notes relating to the Source Code but may not copy the Source Code into the notes and may not take such notes electronically on the Source Code Computer itself or any other computer.

(f)     The Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in Paragraph (c) in the first instance.   ~~The Receiving Party may generate PDF copies of limited portions of source code on~~

**Exhibit 4**
**-106-**

the source code computer for purposes of asking the Producing Party to produce paper copies. Any printed portion that consists of more than fifteen (15) pages of a continuous block of Source Code or more than two hundred (200) pages total shall be presumed to be excessive, and the burden shall be on the Receiving Party to demonstrate the need for such a printed copy. The Receiving Party may print out no more than two hundred (200) pages total. Within ten (10) days, the Producing Party shall either (i) provide one copy set of such pages to the Receiving Party or (ii) inform the Requesting Party that it objects that the printed portions are excessive and/or not done for a permitted purpose. The Parties will cooperate in good faith if a different timeframe for production is required. If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Receiving Party shall be entitled to seek a Court resolution of whether the printed Source Code in question is narrowly tailored and was printed for a permitted purpose. The burden shall be on the Receiving Party to demonstrate that such printed portions are no more than is reasonably necessary for a permitted purpose and not merely printed for the purposes of review and analysis elsewhere. The printed pages shall constitute part of the Source Code produced by the Producing Party in this action. Printing of directory paths or structures and file names shall not count toward the consecutive or aggregate page count listed in this section.

(g)     All persons who will review a Producing Party's Source Code on behalf of a Receiving Party, including members of a Receiving Party's outside law firm, shall be identified in writing to the Producing Party at least five (5) days in advance of the first time that such person reviews such Source Code. Such identification shall be in addition to any other disclosure required under this Order. All persons viewing Source Code on the source code computer shall sign on each day they view Source Code a log that will include

the names of persons who enter the locked room to view the Source Code and when they enter and depart.  The log shall be kept by the Producing Party.

(h)      Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Order, the Receiving Party's outside counsel and/or experts shall remove all notes, documents, and all other materials from the Source Code Review Room.  The Producing Party shall not be responsible for any items left in the room following each inspection session, and the Receiving Party shall have no expectation of confidentiality for any items left in the room following each inspection session without a prior agreement to that effect.  However, if the Producing Party locates any material that appears to contain the work product of the Receiving Party, the Producing Party shall not review the material and shall contact the Receiving Party in accordance with their ethical duties.  Proper identification of all authorized persons shall be provided prior to any access to the secure room or the computer containing Source Code.  Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the secure room or the Source Code Computer may be denied, at the discretion of the supplier, to any individual who fails to provide proper identification.

(i)      The Receiving Party's outside counsel of record may make no more than three (3) additional paper copies of any portions of the Source Code received from a Producing Party pursuant to Paragraph 11(f), not including copies attached to court filings or used at depositions, and shall maintain a log of all paper copies of the Source Code.  The log shall include the names of the reviewers and/or recipients of paper copies and locations where the paper copies are stored.  Upon three (3) days' one (1) day's advance notice to the

-23-

**Exhibit 4**
-108-

Receiving Party by the Producing Party, the Receiving Party shall provide a copy of this log to the Producing Party.

(j)     The Receiving Party's outside counsel of record and any person receiving a copy of any Source Code shall maintain and store any paper copies of the Source Code at their offices in a manner that prevents duplication of or unauthorized access to the Source Code, including, without limitation, storing the Source Code in a locked room or cabinet at all times when it is not in use.  ~~Absent agreement of the Parties or order of this Court, no~~No more than a total of fifteen (15) individuals identified by the Receiving Party shall have access to the printed portions of the Source Code (except insofar as such code appears in any court filing or expert report).  ~~The Parties agree to cooperate in good faith if it becomes necessary for more than fifteen (15) individuals to have access to the printed portions of the Source Code.  A Producing Party's source code material may only be transported by the Receiving Party at the direction of a person authorized under these provisions to another person authorized under these provisions, on paper via hand carry, Federal Express, or other similarly reliable courier.~~

(k)     For depositions, the Receiving Party shall not bring copies of any printed Source Code.  Rather, at least ten (10) days before the date of the deposition, the Receiving Party shall notify the Producing Party about the specific portions of Source Code it wishes to use ~~Source Code~~ at the deposition, and the Producing Party shall bring printed copies of ~~the Source Code~~those portions to the deposition for use by the Receiving Party.  Copies of Source Code that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers.  ~~The Producing Party shall maintain the marked deposition exhibits during the pendency of this case.  All other~~All paper copies of Source Code brought to the deposition by the

-24-

**Exhibit 4**
-109-

Producing Party shall remain with the Producing Counsel's outside counsel for secure destruction in a timely manner following the deposition.

(l)    Except as provided in this sub-paragraph, absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code for use in any manner (including by way of example only, the Receiving Party may not scan the Source Code to a PDF or photograph the code).  Images or copies of Source Code shall not be included in correspondence between the Parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers whenever possible.  If a Party reasonably believes that it needs to submit a portion of Source Code as part of a filing with the Court, the Parties shall meet and confer as to how to make such a filing while protecting the confidentiality of the Source Code and such Source Code will not be filed absent agreement from the Producing Party that the confidentiality protections will be adequate or order of this Court..  If a Producing Party agrees to produce an electronic copy of all or any portion of its Source Code or provide written permission to the Receiving Party that an electronic or any other copy needs to be made for a Court filing, access to the Receiving Party's submission, communication, and/or disclosure of electronic files or other materials containing any portion of Source Code (paper or electronic) shall at all times be limited solely to individuals who are expressly authorized to view Source Code under the provisions of this Order.  Where the Producing Party has provided the express written permission required under this provision for a Receiving Party to create electronic copies of Source Code, the Receiving Party shall maintain a log of all such electronic copies of any portion of Source Code in its possession or in the possession of its retained consultants, including the names of the reviewers and/or recipients of any such electronic copies, and the locations and

-25-

Exhibit 4
-110-

manner in which the electronic copies are stored.  Additionally, any such electronic copies must be labeled "HIGHLY CONFIDENTIAL - SOURCE CODE" as provided for in this Order.

12.   PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena, including one issued by any court, arbitral, administrative or legislative body or a court order issued in other litigation, that requests or compels disclosure of any Protected Material, that Party must:

(a) promptly notify in writing each Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected. If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL," HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

13.   A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE

-26-

**Exhibit 4**
**-111-**

<u>PRODUCED IN THIS LITIGATION</u>

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as Protected Material. Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3) make the information requested available for inspection by the Non-Party, if requested.

(c) If the Non-Party fails to seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

-27-

**Exhibit 4**
**-112-**

14.   UNDERLINE UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order and (d) request such person or persons to execute the "Acknowledgment an Agreement to Be Bound" attached hereto as Exhibit A.   Unauthorized or inadvertent disclosure does not change the status of Discovery Material or waive a Producing Party's right to maintain the disclosed document or information as Protected Material.

15.   INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

(a) The inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to production, will not waive the applicable privilege and/or protection if a request for return of such inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

(b) Upon a request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Protected Material or Discovery Material and all copies to the Producing Party, except for

-28-

**Exhibit 4**
**-113-**

any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

(c) Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Discovery Material and such other information as is reasonably necessary to identify the Discovery Material and describe its nature to the Court in any motion to compel production of the Discovery Material.

16.    MISCELLANEOUS

16.1    Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

16.2    Right to Assert Other Objections. By ~~agreeing~~stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

16.3    Filing Protected Material. A Party that seeks to file under seal any Protected Material must comply with Local Civil Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material. If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party may file the information in the public record unless otherwise instructed by the court.

16.4    Termination of Matter and Retention of Jurisdiction.  The Parties agree that the terms of this Protective Order shall survive and remain in effect after the Final Disposition of the above-captioned matter.  The Court shall retain

-29-

**Exhibit 4**
**-114-**

jurisdiction after Final Determination of this matter to hear and resolve any disputes arising out of this Protective Order.

16.5  <u>Successors</u>.  This Order shall be binding upon the Parties hereto, their successors, and anyone who obtains access to Protected Material.

16.6  <u>Modification by Court</u>.  This Order is subject to further court order based upon public policy or other considerations, and the Court may modify this Order sua sponte in the interests of justice.  All disputes between the Parties concerning Protected Material, however designated, produced under the protection of this Order shall be resolved by the United States District Court for the Central District of California.

16.7  <u>Computation of Time</u>.  The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rules of Civil Procedure 6.

17.  <u>FINAL DISPOSITION</u>

~~After~~Not later than sixty (60) days after the Final Disposition of this Action, as defined in Paragraph 6, ~~within 60 days of a written request by the Designating Party,~~ each Receiving Party shall return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings,

-30-

**Exhibit 4**
**-115-**

motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material, but must return or destroy any pleadings, correspondence, and consultant or expert work product that contain information designated "HIGHLY CONFIDENTIAL – SOURCE CODE." Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Paragraph 6 (DURATION).

18.   <u>VIOLATION</u>

Any violation of this Order may be punished by appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.


**IT IS SO ORDERED.**

Dated: _____          _____
                                                    The Honorable John D. Early
                                                    United States Magistrate Judge

**Exhibit 4**
**-116-**

## **EXHIBIT A**

I, _____, acknowledge and declare that I have received a copy of the Protective Order ("Order") in *Masimo Corp., et al. v. Apple Inc.*, United States District Court, Central District of California, Southern Division, Civil Action No. 8:20-cv-00048-JVS (JDEx).  Having read and understood the terms of the Order, I agree to be bound by the terms of the Order and consent to the jurisdiction of said Court for the purpose of any proceeding to enforce the terms of the Order.

Name of individual: _____

Present occupation/job description: _____

_____

_____

Name of Company or Firm: _____

Address:_____

Dated: _____

_____

[Signature]

**Exhibit 4 -117-**

# EXHIBIT 5

| From: | Kaounis, Angelique |
|---|---|
| To: | Adam.Powell; Stephen.Larson; Perry.Oldham; Steve.Jensen; Joe.Re |
| Cc: | Lyon, H. Mark; Lerner, Joshua H.; Buroker, Brian M. |
| Subject: | RE: Masimo v. Apple: follow up from March 10 call |
| Date: | Friday, March 27, 2020 4:37:46 PM |
| Attachments: | 103791677_4_Masimo v. Apple - ESI Stip and [Proposed] Order.DOCX |
| | 103791553_8_Apple Proposed Protective Order.DOCX |
| | ESI_Exhibit A - Table of Metadata Field1.doc |

Counsel,

Consistent with our correspondence below, attached please find Apple's proposed Protective Order and ESI Stipulation (with Exhibit A).  Apple reserves all rights to further revise these documents, including in response to Plaintiffs' suggestions.

We look forward to receiving the draft Joint Report from you today.

Thanks,

Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Kaounis, Angelique
**Sent:** Thursday, March 26, 2020 8:19 PM
**To:** 'Adam.Powell' <Adam.Powell@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

Adam,

Thanks for your email.  Apple will endeavor to provide edits by Monday, April 6th (this is 5 working days after the 27th) in exchange for Plaintiffs' agreement to do the same for Apple's draft Protective Order and ESI Protocol (as you suggest below).  If we can send it sooner, we will, and would request that you do so the same.

Thanks very much,

Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP

**Exhibit 5**
**-118-**

2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, March 26, 2020 2:05 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

[External Email]
Angelique,
We will provide the Rule 26(f) report/schedule and authority concerning Section 2019.210 by Friday.  However, we are still waiting for the proposed Protective Order and Electronic Discovery Plan that  Apple promised to provide.  Please provide those materials to us by Friday as well.

As for editing those documents, your email suggests that Apple intends to provide edits to the Rule 26(f) report the day before it is due.  We do not think that is workable since the parties may need to exchange multiple drafts to reach an agreement.  We also do not think it will take the same amount of time to edit a document that it takes to draft the document.  Thus, please commit to providing your edits within one week of receiving our draft.  That should allow the parties sufficient time to attempt to reach a resolution on any disagreements.  We will do the same for your draft Protective Order and Electronic Discovery Plan.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Wednesday, March 25, 2020 8:04 PM
**To:** Joe.Re <Joe.Re@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>
**Subject:** Masimo v. Apple: follow up from March 10 call

Dear Counsel,

Exhibit 5
-119-

We are writing to follow up on the items we understood you were sending after our March 10 call: a draft Rule 26(f) Report, a proposed schedule, and any authority that CCP Section 2019.210 does not apply here.  In light of the April 14 deadline for submission of the Report, we need the draft Report and Schedule by close of business this Friday, March 27.  That will give us a roughly equal amount of time to obtain client comments and respond to your draft and still have a day at the back end to coordinate changes and filing logistics with you.  Please also send us the CCP 2019.210 case law that you referenced by then.

Thanks very much,
Angelique
**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

**Exhibit 5**
**-120-**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **ESI STIPULATION AND [PROPOSED] ORDER** <br><br> Date: <br> Time: <br> Place: <br> Judge: Hon. Magistrate Judge John D. Early |

ESI STIPULATION AND [PROPOSED] ORDER
CASE NO. 8:20-cv-00048-JVS (JDEX)

**Exhibit 5**
**-121-**

1    Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc.

2 ("Cercacor") (collectively, "Plaintiffs") and Defendant Apple Inc. ("Defendant"),

3 hereby agree that the following procedures shall govern discovery of Electronically-

4 Stored Information ("ESI") in this case:

5    1.    **Custodian names and search terms to be exchanged.**  The parties shall

6 meet and confer to reach agreement on a reasonable list of custodians for purposes of

7 collection, review and production of electronically stored information.  In connection

8 with the meet and confer process, each party shall provide a proposed list of individual

9 custodians who are knowledgeable about and were involved with the core issues or

10 subjects in this case (e.g., the asserted patents, the development, design and operation

11 of the accused products, and sales, marketing and other damages-related information

12 for the accused products).  The parties then shall meet and confer to reach agreement

13 on document custodians and also shall meet and confer to reach agreement on search

14 terms to be used for electronic searches of the files from those custodians.  ESI,

15 including, but not limited to electronic files and email, shall be collected for each

16 individual custodian from the personal computers, network resources, and other

17 electronic devices that those individuals use for work purposes.  Notwithstanding prior

18 agreement on the search terms to be used for electronic searches, should a search

19 produce an unreasonably large number of non-responsive or irrelevant results, the

20 parties shall (at the producing party's request) meet and confer to discuss application

21 of further negative search restrictions (e.g., if a single search was for "card" and ninety

22 percent of the resulting documents came from the irrelevant term "credit card," a

23 negative limitation to ignore documents only returned as a result of "credit card" may

24 be applied to remove these documents).  The party receiving production shall not

25 unreasonably oppose such further restrictions designed to filter immaterial search

26 results.  The parties shall make good faith efforts to identify appropriate email

27 custodians and produce email on the agreed upon schedule, but reserve the right to

28 seek email from additional email custodians identified through discovery.  Nothing in

1  this Order prevents the parties from using technology assisted review insofar as it

2  improves the efficacy of discovery.

3        **2.**      **Format for production of documents – documents existing in**

4  **electronic format.**  Except as otherwise provided for in this Stipulation, all documents

5  existing in electronic format shall be produced in multiple page, searchable PDF

6  format at a resolution of at least 300 dpi in accordance with the following:

7        A.      PDF files shall be produced along with Concordance/Opticon

8  image load files that indicate the beginning and ending of each document.

9        B.      For documents which already exist in PDF format prior to

10  production (i.e., which the producing party receives from a client or third party in PDF

11  format), the producing party may provide them in that same PDF format, whether

12  searchable or non-searchable.  For documents converted to PDF format prior to

13  production, the producing party shall make reasonable efforts to convert to searchable

14  PDF.

15        C.      **Metadata.**  Load files should include, where applicable, the

16  information listed in the Table of Metadata Fields, attached as Exhibit A. However, the

17  parties are not obligated to include metadata for any document that does not contain

18  such metadata in the original, if it is not possible to automate the creation of metadata

19  when the document is collected. The parties reserve their rights to object to any request

20  for the creation of metadata for documents that do not contain metadata in the original.

21        D.      **Production media and encryption of productions.**  Unless

22  otherwise agreed, the parties shall provide document productions in the following

23  manner: The producing party shall provide the production data on CDs, DVDs,

24  external hard drives or SFTP, as appropriate. The producing party shall encrypt the

25  production data using WinRAR encryption, and the producing party shall forward the

26  password to decrypt the production data separately from the CD, DVD, external drive

27  or SFTP to which the production data is saved.

28

Gibson, Dunn & Crutcher LLP

2

ESI STIPULATION AND [PROPOSED] ORDER
CASE NO. 8:20-cv-00048-JVS (JDEx)

3.      **Format for production of documents – hardcopy or paper documents.** All documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format, above.

4.      **Source code.** This Stipulation does not govern the format for production of source code.  To the extent the production of source code is required, it shall be produced pursuant to the relevant provision of the Protective Order.

5.      **Parent and child emails.**  The parties shall produce email attachments sequentially after the parent email.

6.      **Native files.**  The parties will meet and confer to discuss requests for the production of files in native format, on a case-by-case basis. If the parties are unable to reach agreement with regard to requests for additional documents in native-file format, the parties reserve the right to seek relief from the Court. Documents produced natively shall be represented in the set of imaged documents by a slipsheet indicating the production identification number and confidentiality designation for the native file that is being produced.

7.      **Databases.**  Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Thus, a party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table.  These reports or data tables will be produced in a static format.

The parties agree to identify the specific databases, by name, that contain the relevant and responsive information that parties produce.

8.      **Requests for hi-resolution or color documents.**  The parties agree to respond to reasonable and specific requests for the production of higher resolution or color images.  Nothing in this Stipulation shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read.  The producing party shall have the option of responding by

1  producing a native-file version of the document.  If a dispute arises with regard to
2  requests for higher resolution or color images, the parties will meet and confer in good
3  faith to try to resolve it.

4       9.   **Foreign language documents.** All documents shall be produced in their
5  original language.  Where a requested document exists in a foreign language and the
6  producing party also has an English-language version of that document that it prepared
7  for non-litigation purposes prior to filing of the lawsuit, the producing party shall
8  produce both the original document and all English-language versions.  In addition, if
9  the producing party has a certified translation of a foreign-language document that is
10 being produced, (whether or not the translation is prepared for purposes of litigation)
11 the producing party shall produce both the original document and the certified
12 translation.  Nothing in this agreement shall require a producing party to prepare a
13 translation, certified or otherwise, for foreign language documents that are produced in
14 discovery.

15      10.   **No Waiver**.  This Order shall not constitute a waiver of the right of any
16 Party to claim in this action or otherwise that any documents produced, or any portion
17 thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in
18 this action or any other proceeding.  To the extent that the Court may order that
19 attorney-client privilege or work-product protection is not waived by disclosure in this
20 litigation, such disclosure also shall not be deemed a waiver in any other federal or
21 state proceeding (*see* Fed. R. Evid. 502(d)).

22

23 **IT IS SO STIPULATED**, through Counsel of Record.

24

25 Dated: _____, 2020          GIBSON, DUNN & CRUTCHER LLP

26

27                                      By:__*DRAFT*_____

28                                      Joshua H. Lerner, SBN 220755
                                        jlerner@gibsondunn.com

4

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8

555 Mission Street Suite 3000
San Francisco, CA 94105
Telephone:  415.393.8200
Facsimile:  415.393.8306

H. Mark Lyon, SBN 162061
mlyon@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendant Apple Inc.*

9   Dated: _____, 2020

Knobbe, Martens, Olson & Bear LLP

10

11

By:__*DRAFT*_____

12
13
14
15
16
17

Joseph R Re
joe.re@knobbe.com
Stephen C Jensen
steve.jensen@knobbe.com
Perry D. Oldham
perry.oldham@knobbe.com
Stephen W Larson
stephen.larson@knobbe.com
2040 Main Street, Fourteenth Floor
Irvine, CA  92614

18

*Attorneys for Plaintiffs*

19   IT IS SO ORDERED.

20

21   Dated: _____

22

JOHN D. EARLY
United States Magistrate Judge

23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

5

ESI STIPULATION AND [PROPOSED] ORDER
CASE NO. 8:20-cv-00048-JVS (JDEx)

Exhibit 5
-126-

1

## **ATTESTATION REGARDING SIGNATURES**

2

3

I, Joshua H. Lerner, attest that all signatories listed, and on whose behalf the

filing is submitted, concur in the filing's content and have authorized the filing.

4

5

DATED:  April __, 2020                   By:___/s/ *DRAFT*_____

6                                                                    Joshua H. Lerner

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn & Crutcher LLP

6

ESI STIPULATION AND [PROPOSED] ORDER
CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 5**
**-127-**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **STIPULATION AND [PROPOSED] PROTECTIVE ORDER** |

**STIPULATED PROTECTIVE ORDER REGARDING THE DISCLOSURE AND USE OF DISCOVERY MATERIALS**

Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs") and Defendant Apple Inc. ("Defendant") anticipate that documents, testimony, or information containing or reflecting confidential, proprietary, trade secret, and/or commercially sensitive information are likely to be disclosed or produced during the course of discovery, initial disclosures, and supplemental disclosures in this case and request that the Court enter this Order setting forth the conditions for treating, obtaining, and using such information.

Gibson, Dunn & Crutcher LLP

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court finds good cause for the following Agreed Protective Order Regarding the Disclosure and Use of Discovery Materials ("Order" or "Protective Order").

1.   **PURPOSES AND LIMITATIONS**

(a)   Protected Material designated under the terms of this Protective Order shall be used by a Receiving Party solely for this case, and shall not be used directly or indirectly for any other purpose whatsoever.

(b)   The Parties acknowledge that this Order does not confer blanket protections on all disclosures during discovery, or in the course of making initial or supplemental disclosures under Rule 26(a).  Designations under this Order shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth below.  If it comes to a Producing Party's attention that designated material does not qualify for protection at all, or does not qualify for the level of protection initially asserted, the Producing Party must promptly notify all other Parties that it is withdrawing or changing the designation.

2.   **DEFINITIONS**

(a)   "Discovery Material" means all items or information, including from any non-party, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced, disclosed, or generated in connection with discovery or Rule 26(a) disclosures in this case.

(b)   "Outside Counsel" means (i) outside counsel who appear on the pleadings as counsel for a Party and (ii) partners, associates, and staff of such counsel to whom it is reasonably necessary to disclose the information for this litigation.

(c)   "Patents-in-suit" means U.S. Patent Nos. 10,258,265; 10,258,266; 10,292,628; 10,299,708; 10,376,190; 10,376,191; 10,470,695; 6,771,994; 8,457,703; 10,433,776; and any other patent asserted in this action, as well as any related patents, patent applications, provisional patent applications, continuations, and/or divisionals.

1    (d)    "Party" means any party to this case, including all of its officers,

2 directors, employees, consultants, retained experts, and outside counsel and their support

3 staffs.

4    (e)    "Producing Party" means any Party or non-party that discloses or

5 produces any Discovery Material in this case.

6    (f)    "Protected Material" means any Discovery Material that is

7 designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES

8 ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE

9 CODE," as provided for in this Order.   Protected Material shall not include:

10 (i) advertising materials that have been actually published or publicly disseminated; and

11 (ii) materials that show on their face they have been disseminated to the public.

12    (g)    "Receiving Party" means any Party who receives Discovery Material

13 from a Producing Party.

14    (h)    "Source Code" means computer code, scripts, assembly, binaries,

15 object code, source code listings (e.g., file names and path structure), descriptions of

16 source code (e.g., descriptions of declarations, functions, and parameters), object code

17 listings and descriptions of object code, Hardware Description Language (HDL) or

18 Register Transfer Level (RTL) files that describe the hardware design of any ASIC or

19 other chip, and Computer Aided Design (CAD) files that describe the hardware design

20 of any component.

21    **3.    COMPUTATION OF TIME**

22    The computation of any period of time prescribed or allowed by this Order shall

23 be governed by the provisions for computing time set forth in Federal Rules of Civil

24 Procedure 6.

25    **4.    SCOPE**

26    (a)    The protections conferred by this Order cover not only Discovery

27 Material governed by this Order as addressed herein, but also any information copied or

28 extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof,

1  plus testimony, conversations, or presentations by Parties or their counsel in court or in

2  other settings that might reveal Protected Material.

3       (b)    Nothing in this Protective Order shall prevent or restrict a Producing

4  Party's own disclosure or use of its own Protected Material for any purpose, and nothing

5  in this Order shall preclude any Producing Party from showing its Protected Material to

6  an individual who prepared the Protected Material.

7       (c)    Nothing in this Order shall be construed to prejudice any Party's

8  right to use any Protected Material in court or in any court filing with the consent of the

9  Producing Party or by order of the Court.

10       (d)    This Order is without prejudice to the right of any Party to seek

11  further or additional protection of any Discovery Material or to modify this Order in any

12  way, including, without limitation, an order that certain matter not be produced at all.

13      **5.**   **<u>DURATION</u>**

14      Even after the termination of this case, the confidentiality obligations imposed

15  by this Order shall remain in effect until a Producing Party agrees otherwise in writing

16  or a court order otherwise directs.

17      **6.**   **<u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>**

18       (a)    <u>Basic Principles.</u>  All Protected Material shall be used solely for this

19  case or any related appellate proceeding, and not for any other purpose whatsoever,

20  including without limitation any other litigation, patent prosecution or acquisition,

21  patent reexamination or reissue proceedings, or any business or competitive purpose or

22  function.  Protected Material shall not be distributed, disclosed or made available to

23  anyone except as expressly provided in this Order.

24       (b)    <u>Patent Prosecution Bar.</u>  Absent the written consent of the Producing

25  Party, any person on behalf of the Plaintiffs who receives one or more items designated

26  "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL –

27  ATTORNEYS' EYES ONLY – SOURCE CODE" by  Apple Inc. shall not be involved,

28  directly or indirectly, in any of the following activities:  (i) advising on, consulting on,

preparing, prosecuting, drafting, editing, and/or amending of patent applications, specifications, claims, and/or responses to office actions, or otherwise affecting the scope of claims in patents or patent applications relating to the functionality, operation, and design of non-invasive physiological monitoring technologies (generally or as described in any patent in suit), before any foreign or domestic agency, including the United States Patent and Trademark Office; and (ii) the acquisition of patents (including patent applications), or the rights to any such patents or patent applications with the right to sublicense, relating to the functionality, operation, and design of non-invasive physiological monitoring technologies. These prohibitions are not intended to and shall not preclude counsel from participating in proceedings on behalf of a Party challenging the validity of any patent, but are intended, inter alia, to preclude counsel from participating directly or indirectly in reexamination, inter partes review, covered business method review, or reissue proceedings on behalf of a patentee. These prohibitions shall begin when access to "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" materials are first received by the affected individual, and shall end two (2) years after the final resolution of this action, including all appeals.

(c)     Secure Storage, No Export. Protected Material must be stored and maintained by a Receiving Party at a location in the United States and in a secure manner that ensures that access is limited to the persons authorized under this Order. To ensure compliance with applicable United States Export Administration Regulations, Protected Material may not be exported outside the United States or released to any foreign national (even if within the United States).

(d)     Legal Advice Based on Protected Material. Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in part upon Protected Materials, provided counsel does not disclose the Protected Material itself except as provided in this Order.

1      (e)   <u>Limitations.</u>  Nothing in this Order shall restrict in any way a

2 Producing Party's use or disclosure of its own Protected Material.  Nothing in this Order

3 shall restrict in any way the use or disclosure of Discovery Material by a Receiving

4 Party: (i) that is or has become publicly known through no fault of the Receiving Party;

5 (ii) that is lawfully acquired by or known to the Receiving Party independent of the

6 Producing Party; (iii) previously produced, disclosed and/or provided by the Producing

7 Party to the Receiving Party or a non-party without an obligation of confidentiality and

8 not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v)

9 pursuant to order of the Court.

10      **7.**   **<u>DESIGNATING PROTECTED MATERIAL</u>**

11      (a)   <u>Available Designations.</u>  Any Producing Party may designate

12 Discovery Material with any of the following designations, provided that it meets the

13 requirements for such designations as provided for herein:  "CONFIDENTIAL,"

14 "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL –

15 OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE."

16      (b)   <u>Written Discovery and Documents and Tangible Things.</u>  Written

17 discovery, documents (which include "electronically stored information," as that phrase

18 is used in Federal Rule of Procedure 34), and tangible things that meet the requirements

19 for the confidentiality designations listed in Paragraph 1(a) may be so designated by

20 placing the appropriate designation on every page of the written material prior to

21 production.  For digital files being produced, the Producing Party may mark each

22 viewable page or image with the appropriate designation, and mark the medium,

23 container, and/or communication in which the digital files were contained.  In the event

24 that original documents are produced for inspection, the original documents shall be

25 presumed "CONFIDENTIAL – ATTORNEYS' EYES ONLY" during the inspection

26 and re-designated, as appropriate during the copying process.

27      (c)   <u>Native Files.</u>  Where electronic files and documents are produced in

28 native electronic format, such electronic files and documents shall be designated for

1  protection under this Order by appending to the file names or designators information

2  indicating whether the file contains  "CONFIDENTIAL," "CONFIDENTIAL -

3  ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS'

4  EYES ONLY - SOURCE CODE," material, or shall use any other reasonable method

5  for so designating Protected Materials produced in electronic format. When electronic

6  files or documents are printed for use at deposition, in a court proceeding, or for

7  provision in printed form to an expert or consultant pre-approved pursuant to paragraph

8  XX, the party printing the electronic files or documents shall affix a legend to the printed

9  document corresponding to the designation of the Designating Party and including the

10  production number and designation associated with the native file.  No one shall seek to

11  use in this litigation a .tiff, .pdf or other image format version of a document produced

12  in native file format without first (1) providing a copy of the image format version to the

13  Producing Party so that the Producing Party can review the image to ensure that no

14  information has been altered, and (2) obtaining the consent of the Producing Party,

15  which consent shall not be unreasonably withheld.

16          (d)     Depositions and Testimony.  Parties or testifying persons or entities

17  may designate depositions and other testimony with the appropriate designation by

18  indicating on the record at the time the testimony is given or by sending written notice

19  of how portions of the transcript of the testimony is designated within thirty (30) days

20  of receipt of the transcript of the testimony.  If no indication on the record is made, all

21  information disclosed during a deposition shall be deemed "CONFIDENTIAL –

22  ATTORNEYS' EYES ONLY" until the time within which it may be appropriately

23  designated as provided for herein has passed.  Any Party that wishes to disclose the

24  transcript, or information contained therein, may provide written notice of its intent to

25  treat the transcript as non-confidential, after which time, any Party that wants to maintain

26  any portion of the transcript as confidential must designate the confidential portions

27  within fourteen (14) days, or else the transcript may be treated as non-confidential.  Any

28  Protected Material that is used in the taking of a deposition shall remain subject to the

1   provisions of this Protective Order, along with the transcript pages of the deposition

2   testimony dealing with such Protected Material.  In such cases the court reporter shall

3   be informed of this Protective Order and shall be required to operate in a manner

4   consistent with this Protective Order.  In the event the deposition is recorded (by video

5   or otherwise), the original and all copies of the recording shall be marked by the video

6   technician to indicate that the contents of the recording are subject to this Protective

7   Order, substantially along the lines of "This recording contains confidential testimony

8   used in this case and is not to be viewed or the contents thereof to be displayed or

9   revealed except pursuant to the terms of the operative Protective Order in this matter or

10  pursuant to written stipulation of the parties."  Counsel for any Producing Party shall

11  have the right to exclude from oral depositions, other than the deponent, deponent's

12  counsel, the reporter and videographer (if any), any person who is not authorized by this

13  Protective Order to receive or access Protected Material based on the designation of such

14  Protected Material.  Such right of exclusion shall be applicable only during periods of

15  examination or testimony regarding such Protected Material.

16      **8.    DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL"**

17          (a)    A Producing Party may designate Discovery Material as

18  "CONFIDENTIAL" if it contains or reflects confidential, proprietary, and/or

19  commercially sensitive information.

20          (b)    Unless otherwise ordered by the Court, Discovery Material

21  designated as "CONFIDENTIAL" may be disclosed only to the following:

22              (i)    The Receiving Party's Outside Counsel, such counsel's

23  immediate paralegals and staff, and any copying or clerical litigation support services

24  working at the direction of such counsel, paralegals, and staff;

25              (ii)    Not more than three (3) representatives of the Receiving Party

26  who are officers or employees of the Receiving Party, who may be, but need not be, in-

27  house counsel for the Receiving Party, as well as their immediate paralegals and staff,

28  to whom disclosure is reasonably necessary for this case, provided that:  (a) each such

person has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

(iii)   Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; (c) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below.

(iv)   Court reporters, stenographers and videographers retained to record testimony taken in this action;

(v)   The Court, jury, and court personnel;

(vi)   Graphics, translation, design, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(vii)   Mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential;

(viii)   Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(ix)   Any other person with the prior written consent of the Producing Party.

1
2

## 9.   DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – ATTORNEYS' EYES ONLY"

3    (a)   A Producing Party may designate Discovery Material as
4  "CONFIDENTIAL – ATTORNEYS' EYES ONLY" if it contains or reflects
5  information that is extremely confidential and/or sensitive in nature and the Producing
6  Party reasonably believes that the disclosure of such Discovery Material is likely to
7  cause economic harm or significant competitive disadvantage to the Producing Party.
8  The Parties agree that the following information, if non-public, shall be presumed to
9  merit the "CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation:   trade
10 secrets, pricing information, financial data, sales information, sales or marketing
11 forecasts or plans, business plans, sales or marketing strategy, product development
12 information, engineering documents, testing documents, employee information, and
13 other non-public information of similar competitive and business sensitivity.

14    (b)   Unless otherwise ordered by the Court, Discovery Material
15 designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" may be disclosed
16 only to:

17    (i)   The Receiving Party's Outside Counsel, provided that such
18 Outside Counsel is not involved in competitive decision-making, as defined by *U.S.*
19 *Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or
20 a competitor of a Party, and such Outside Counsel's immediate paralegals and staff, and
21 any copying or clerical litigation support services working at the direction of such
22 counsel, paralegals, and staff;

23    (ii)   With respect to Discovery Material produced by the Plaintiffs,
24 not more than three (3) in-house counsel of the Receiving Party, as well as their
25 immediate paralegals and staff to whom disclosure is reasonably necessary for this case,
26 provided that:  (a) each such person has agreed to be bound by the provisions of the
27 Protective Order by signing a copy of Exhibit A; and (b) no unresolved objections to
28 such disclosure exist after proper notice has been given to all Parties as set forth in

Gibson, Dunn &
Crutcher LLP

Paragraph 12 below.  For the avoidance of doubt, whether Plaintiffs' trade secret disclosure under California Code of Civil Procedure Section 2019.210 is designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY," access to said disclosure shall be permitted for three (3) Apple in-house counsel;

(iii)   Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that:  (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director, or employee of a Party or of a competitor of a Party; (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; (d) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction; and (e) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

(iv)   Court reporters, stenographers and videographers retained to record testimony taken in this action;

(v)   The Court, jury, and court personnel;

(vi)   Graphics, translation, design, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(vii)   Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(viii)  Any other person with the prior written consent of the Producing Party.

Gibson, Dunn & Crutcher LLP

(c)     In addition, a Party may disclose arguments and materials derived from Discovery Material designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" to mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential.  A Party may not disclose to mock jurors any original, as-produced materials or information (including, for example, documents, deposition testimony, or interrogatory responses) produced by another Party designated as "CONFIDENTIAL - ATTORNEYS' EYES ONLY."

**10.     DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE"**

(a)     To the extent production of Source Code becomes necessary to the prosecution or defense of the case, a Producing Party may designate Source Code as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" if it comprises or includes confidential, proprietary, and/or trade secret Source Code.

(b)     Nothing in this Order shall be construed as a representation or admission that Source Code is properly discoverable in this action, or to obligate any Party to produce any Source Code.

(c)     Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be subject to the provisions set forth in Paragraph 11 below, and may be disclosed, subject to Paragraph 11 below, solely to:

(i)     The Receiving Party's Outside Counsel, provided that such Outside Counsel is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party, and such Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

Gibson, Dunn & Crutcher LLP

(ii)    Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

(iii)   Court reporters, stenographers and videographers retained to record testimony taken in this action;

(iv)   The Court, jury, and court personnel;

(v)    Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(vi)   Any other person with the prior written consent of the Producing Party.

**11.    DISCLOSURE AND REVIEW OF SOURCE CODE**

(a)    Any Source Code that is produced by Plaintiffs shall be made available for inspection in electronic format at the San Francisco office of their outside counsel, Knobbe, Martens, Olson & Bear, LLP, or any other location mutually agreed by the Parties.  Any Source Code that is produced by Apple Inc. will be made available for inspection at the Orange County office of its outside counsel, Gibson, Dunn & Crutcher LLP, or any other location mutually agreed by the Parties.  Source Code will be made available for inspection between the hours of 8 a.m. and 6 p.m. on business

days (i.e., weekdays that are not Federal holidays), although the Parties will be reasonable in accommodating reasonable requests to conduct inspections at other times.

(b)     Prior to the first inspection of any requested Source Code, the Receiving Party shall provide thirty (30) days' notice of the Source Code that it wishes to inspect.  The Receiving Party shall provide fourteen (14) days' notice prior to any additional inspections.

(c)     Source Code that is designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be produced for inspection and review subject to the following provisions, unless otherwise agreed by the Producing Party:

(i)     All Source Code shall be made available by the Producing Party to the Receiving Party's outside counsel and/or experts in a secure room on a secured computer without Internet access or network access to other computers and on which all access ports have been disabled (except for one printer port), as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal or other transfer of any Source Code outside or away from the computer on which the Source Code is provided for inspection (the "Source Code Computer" in the "Source Code Review Room").  The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business. The Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; (b) the Producing Party approves such software tools; and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein.  The Receiving Party must provide the Producing Party with the CD or DVD containing such licensed software tool(s) at least twenty-one (21) days in

1  advance of the date upon which the Receiving Party wishes to have the additional

2  software tools available for use on the Source Code Computer.

3  (ii)  No recordable media or recordable devices, including without

4  limitation sound recorders, computers, cellular telephones, peripheral equipment,

5  cameras, CDs, DVDs, or drives of any kind, shall be permitted into the Source Code

6  Review Room.

7  (iii)  The Receiving Party's outside counsel and/or experts shall be

8  entitled to take notes relating to the Source Code but may not copy the Source Code into

9  the notes and may not take such notes electronically on the Source Code Computer itself

10  or any other computer.

11  (iv)  The Producing Party may visually monitor the activities of the

12  Receiving Party's representatives during any Source Code review, but only to ensure

13  that no unauthorized electronic records of the Source Code and no information

14  concerning the Source Code are being created or transmitted in any way.

15  (v)  No copies of all or any portion of the Source Code may leave

16  the room in which the Source Code is inspected except as otherwise provided herein.

17  Further, no other written or electronic record of the Source Code is permitted except as

18  otherwise provided herein.  The Producing Party shall make available a laser printer with

19  commercially reasonable printing speeds for on-site printing during inspection of the

20  Source Code.  The Receiving Party may print limited portions of the Source Code only

21  when necessary to prepare court filings or pleadings or other papers (including a

22  testifying expert's expert report). Any printed portion that consists of more than five (5)

23  pages of a continuous block of Source Code shall be presumed to be excessive, and the

24  burden shall be on the Receiving Party to demonstrate the need for such a printed copy.

25  The Receiving Party may print out no more than 20 pages total. The Receiving Party

26  shall not print Source Code in order to review blocks of Source Code elsewhere in the

27  first instance, i.e., as an alternative to reviewing that Source Code electronically on the

28  Source Code Computer, as the Parties acknowledge and agree that the purpose of the

protections herein would be frustrated by printing portions of code for review and analysis elsewhere, and that printing is permitted only when necessary to prepare court filings or pleadings or other papers (including a testifying expert's expert report).  Upon printing any such portions of Source Code, the printed pages shall be collected by the Producing Party.   The Producing Party shall Bates number, copy, and label "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" any pages printed by the Receiving Party.  Within fourteen (14) days, the Producing Party shall either (i) provide one copy set of such pages to the Receiving Party or (ii) inform the Requesting Party that it objects that the printed portions are excessive and/or not done for a permitted purpose. If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Receiving Party shall be entitled to seek a Court resolution of whether the printed Source Code in question is narrowly tailored and was printed for a permitted purpose.  The burden shall be on the Receiving Party to demonstrate that such printed portions are no more than is reasonably necessary for a permitted purpose and not merely printed for the purposes of review and analysis elsewhere.  The printed pages shall constitute part of the Source Code produced by the Producing Party in this action.

(vi)     All persons who will review a Producing Party's Source Code on behalf of a Receiving Party, including members of a Receiving Party's outside law firm, shall be identified in writing to the Producing Party at least five (5) days in advance of the first time that such person reviews such Source Code.  Such identification shall be in addition to any other disclosure required under this Order.  All persons viewing Source Code shall sign on each day they view Source Code a log that will include the names of persons who enter the locked room to view the Source Code and when they enter and depart.  The Producing Party shall be entitled to a copy of the log upon one (1) day's advance notice to the Receiving Party.

(vii)    Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Order, the Receiving Party's

1   outside counsel and/or experts shall remove all notes, documents, and all other materials

2   from the Source Code Review Room.  The Producing Party shall not be responsible for

3   any items left in the room following each inspection session, and the Receiving Party

4   shall have no expectation of confidentiality for any items left in the room following each

5   inspection session without a prior agreement to that effect.  Proper identification of all

6   authorized persons shall be provided prior to any access to the secure room or the

7   computer containing Source Code.   Proper identification requires showing, at a

8   minimum, a photo identification card sanctioned by the government of any State of the

9   United States, by the government of the United States, or by the nation state of the

10  authorized person's current citizenship. Access to the secure room or the Source Code

11  Computer may be denied, at the discretion of the supplier, to any individual who fails to

12  provide proper identification.

13              (viii)  Other than as provided above, the Receiving Party will not

14  copy, remove, or otherwise transfer any Source Code from the Source Code Computer

15  including, without limitation, copying, removing, or transferring the Source Code onto

16  any recordable media or recordable device.  The Receiving Party will not transmit any

17  Source Code in any way from the Producing Party's facilities or the offices of its outside

18  counsel of record.

19              (ix)    The Receiving Party's outside counsel of record may make no

20  more than three (3) additional paper copies of any portions of the Source Code received

21  from a Producing Party pursuant to Paragraph 1(c)(v), not including copies attached to

22  court filings or used at depositions, and shall maintain a log of all paper copies of the

23  Source Code.  The log shall include the names of the reviewers and/or recipients of paper

24  copies and locations where the paper copies are stored.  Upon one (1) day's advance

25  notice to the Receiving Party by the Producing Party, the Receiving Party shall provide

26  a copy of this log to the Producing Party.

27              (x)    The Receiving Party's outside counsel of record and any

28  person receiving a copy of any Source Code shall maintain and store any paper copies

of the Source Code at their offices in a manner that prevents duplication of or unauthorized access to the Source Code, including, without limitation, storing the Source Code in a locked room or cabinet at all times when it is not in use.  No more than a total of ten (10) individuals identified by the receiving party shall have access to the printed portions of Apple Source Code (except insofar as such code appears in any court filing or expert report).

(xi)    For depositions, the Receiving Party shall not bring copies of any printed Source Code.  Rather, at least ten (10) days before the date of the deposition, the Receiving Party shall notify the Producing Party about the specific portions of Source Code it wishes to use at the deposition, and the Producing Party shall bring printed copies of those portions to the deposition for use by the Receiving Party.  Copies of Source Code that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers. All paper copies of Source Code brought to the deposition shall remain with the Producing Counsel's outside counsel for secure destruction in a timely manner following the deposition.

(xii)   Except as provided in this sub-paragraph, absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code for use in any manner (including by way of example only, the Receiving Party may not scan the Source Code to a PDF or photograph the code).  Images or copies of Source Code shall not be included in correspondence between the Parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers whenever possible.  If a Party reasonably believes that it needs to submit a portion of Source Code as part of a filing with the Court, the Parties shall meet and confer as to how to make such a filing while protecting the confidentiality of the Source Code and such Source Code will not be filed absent agreement from the Producing Party that the confidentiality protections will be adequate.

If a Producing Party agrees to produce an electronic copy of all or any portion of its Source Code or provide written permission to the Receiving Party that an electronic or any other copy needs to be made for a Court filing, access to the Receiving Party's submission, communication, and/or disclosure of electronic files or other materials containing any portion of Source Code (paper or electronic) shall at all times be limited solely to individuals who are expressly authorized to view Source Code under the provisions of this Order.  Where the Producing Party has provided the express written permission required under this provision for a Receiving Party to create electronic copies of Source Code, the Receiving Party shall maintain a log of all such electronic copies of any portion of Source Code in its possession or in the possession of its retained consultants, including the names of the reviewers and/or recipients of any such electronic copies, and the locations and manner in which the electronic copies are stored.  Additionally, any such electronic copies must be labeled "CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE" as provided for in this Order.

**12.** **NOTICE OF DISCLOSURE**

(a) Prior to disclosing any Protected Material to any person described in Paragraphs 1(b)(ii), 1(b)(iii), 1(b)(ii), 1(b)(iii), or 1(c)(ii) (referenced below as "Person"), the Party seeking to disclose such information shall provide the Producing Party with written notice that includes:

(i) the name of the Person;

(ii) an up-to-date curriculum vitae of the Person;

(iii) the present employer and title of the Person;

(iv) an identification of all of the Person's past and current employment and consulting relationships, including direct relationships and relationships through entities owned or controlled by the Person, including but not limited to an identification of any individual or entity with or for whom the person is employed or to whom the person provides consulting services relating to the design, development, operation, or patenting of non-invasive physiological monitoring

technologies, or relating to the acquisition of intellectual property assets relating to non-invasive physiological monitoring technologies;

(v) an identification of all pending patent applications on which the Person is named as an inventor, in which the Person has any ownership interest, or as to which the Person has had or anticipates in the future any involvement in advising on, consulting on, preparing, prosecuting, drafting, editing, amending, or otherwise affecting the scope of the claims; and

(vi) a list of the cases in which the Person has testified at deposition or trial within the last five (5) years.

Further, the Party seeking to disclose Protected Material shall provide such other information regarding the Person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside expert or consultant. During the pendency of and for a period of two (2) years after the final resolution of this action, including all appeals, the Party seeking to disclose Protected Material shall immediately provide written notice of any change with respect to the Person's involvement in the design, development, operation or patenting of non-invasive physiological monitoring technologies, or the acquisition of intellectual property assets relating to non-invasive physiological monitoring technologies.

(b) Within fourteen (14) days of receipt of the disclosure of the Person, the Producing Party or Parties may object in writing to the Person for good cause. In the absence of an objection at the end of the fourteen (14) day period, the Person shall be deemed approved under this Protective Order. There shall be no disclosure of Protected Material to the Person prior to expiration of this fourteen (14) day period. If the Producing Party objects to disclosure to the Person within such fourteen (14) day period, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute on an informal basis. If the dispute is not resolved, the Party objecting to the disclosure will have seven

(7) days from the date of the meet and confer to seek relief from the Court.  If relief is not sought from the Court within that time, the objection shall be deemed withdrawn.  If relief is sought, designated materials shall not be disclosed to the Person in question until the Court resolves the objection.

(c)     For purposes of this section, "good cause" shall include an objectively reasonable concern that the Person will, advertently or inadvertently, use or disclose Discovery Materials in a way or ways that are inconsistent with the provisions contained in this Order.

(d)     Prior to receiving any Protected Material under this Order, the Person must execute a copy of the "Agreement to Be Bound by Protective Order" (Exhibit A hereto) and serve it on all Parties.

(e)     An initial failure to object to a Person under this Paragraph 12 shall not preclude the nonobjecting Party from later objecting to continued access by that Person for good cause.  If an objection is made, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute informally.  If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court.  The designated Person may continue to have access to information that was provided to such Person prior to the date of the objection.  If a later objection is made, no further Protected Material shall be disclosed to the Person until the Court resolves the matter or the Producing Party withdraws its objection.  Notwithstanding the foregoing, if the Producing Party fails to move for a protective order within seven (7) business days after the meet and confer, further Protected Material may thereafter be provided to the Person.

13.     **CHALLENGING DESIGNATIONS OF PROTECTED MATERIAL**

(a)     A Party shall not be obligated to challenge the propriety of any designation of Discovery Material under this Order at the time the designation is made, and a failure to do so shall not preclude a subsequent challenge thereto.

(b)     Any challenge to a designation of Discovery Material under this Order shall be written, shall be served on outside counsel for the Producing Party, shall particularly identify the documents or information that the Receiving Party contends should be differently designated, and shall state the grounds for the objection. Thereafter, further protection of such material shall be resolved in accordance with the following procedures:

(i)     The objecting Party shall initiate the dispute resolution process under Local Rule 37-1 et seq.  The Producing Party shall have the burden of justifying the disputed designation;

(ii)     Failing agreement, the parties must submit the dispute to the Court via a joint stipulation pursuant to Local Rule 37-2.  The Parties' entry into this Order shall not preclude or prejudice either Party from arguing for or against any designation, establish any presumption that a particular designation is valid, or alter the burden of proof that would otherwise apply in a dispute over discovery or disclosure of information;

(iii)     Notwithstanding any challenge to a designation, the Discovery Material in question shall continue to be treated as designated under this Order until one of the following occurs: (a) the Party who designated the Discovery Material in question withdraws such designation in writing; or (b) the Court rules that the Discovery Material in question is not entitled to the designation.

## 14.     <u>SUBPOENAS OR COURT ORDERS</u>

If at any time Protected Material is subpoenaed by any court, arbitral, administrative, or legislative body, the Party to whom the subpoena or other request is directed shall:

(a)     immediately give prompt written notice thereof to every Party who has produced such Discovery Material and to its counsel and shall provide each such Party with an opportunity to move for a protective order regarding the production of Protected Materials implicated by the subpoena;

(b)     If the Producing Party objects in writing to the production of the requested Discovery Material, the Receiving Party shall not produce such material for 10 days, but may do so thereafter unless a protective order is sought by the Producing Party;

(c)     If the Producing Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as Protected Material before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission.   The Producing Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this case to disobey a lawful directive from another court.

## 15. FILING PROTECTED MATERIAL

(a)     Absent written permission from the Producing Party or a court Order secured after appropriate notice to all interested persons, a Receiving Party may not file or disclose in the public record any Protected Material.

(b)     Any Party is authorized under Local Rule 79-5 to file under seal with the Court any brief, document or materials that are designated as Protected Material under this Order.  However, nothing in this section shall in any way limit or detract from this Order's requirements as to Source Code.

## 16. INADVERTENT DISCLOSURE OF PRIVILEGED MATERIAL

(a)     The inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to production, will not waive the applicable privilege and/or protection if a request for return of such inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

Gibson, Dunn &
Crutcher LLP

(b)     Upon a request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Protected Material or Discovery Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

(c)     Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Discovery Material and such other information as is reasonably necessary to identify the Discovery Material and describe its nature to the Court in any motion to compel production of the Discovery Material.

## 17.  INADVERTENT FAILURE TO DESIGNATE PROPERLY

(a)     The inadvertent failure by a Producing Party to designate Discovery Material as Protected Material with one of the designations provided for under this Order shall not waive any such designation provided that the Producing Party notifies all Receiving Parties that such Discovery Material is protected under one of the categories of this Order within fourteen (14) days of the Producing Party learning of the inadvertent failure to designate. The Producing Party shall reproduce the Protected Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Parties.   Upon receiving the Protected Material with the correct confidentiality designation, the Receiving Parties shall return or securely destroy, at the Producing Party's option, all Discovery Material that was not designated properly.

(b)     A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives such notice that such Discovery Material is protected under one of the categories of this Order, unless an objectively reasonable person would have realized that the Discovery Material should have been appropriately designated with a confidentiality designation under this Order. Once a Receiving Party has received notification of the correct confidentiality

designation for the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in Paragraph 1(c) below) at the appropriately designated level pursuant to the terms of this Order.

(c)     Notwithstanding the above, a subsequent designation of "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" materials while the materials were not marked "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" from engaging in the activities set forth in Paragraph 1(b).

### 18.   INADVERTENT DISCLOSURE NOT AUTHORIZED BY ORDER

(a)     In the event of a disclosure of any Discovery Material pursuant to this Order to any person or persons not authorized to receive such disclosure under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify counsel for the Producing Party whose Discovery Material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure.  The responsible disclosing Party shall also promptly take all reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made

(b)     Unauthorized or inadvertent disclosure does not change the status of Discovery Material or waive the right to hold the disclosed document or information as Protected.

Gibson, Dunn & Crutcher LLP

19.   **FINAL DISPOSITION**

(a)   Not later than ninety (90) days after the Final Disposition of this case, each Party shall return all Discovery Material of a Producing Party to the respective outside counsel of the Producing Party or destroy such Material, at the option of the Producing Party.  For purposes of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-captioned action with prejudice, including all appeals.

(b)   All Parties that have received any such Discovery Material shall certify in writing that all such materials have been returned to the respective outside counsel of the Producing Party or destroyed.  Notwithstanding the provisions for return of Discovery Material, outside counsel may retain one set of pleadings, correspondence and attorney and consultant work product (but not document productions) for archival purposes, but must return any pleadings, correspondence, and consultant work product that contain Source Code.

20.   **DISCOVERY FROM EXPERTS OR CONSULTANTS**

(a)   Absent good cause, drafts of reports of testifying experts, and reports and other written materials, including drafts, of consulting experts, shall not be discoverable.

(b)   Reports and materials exempt from discovery under the foregoing Paragraph shall be treated as attorney work product for the purposes of this case and Protective Order.

21.   **MISCELLANEOUS**

(a)   <u>Right to Further Relief.</u>  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.  By stipulating to this Order, the Parties do not waive the right to argue that certain material may require additional or different confidentiality protections than those set forth herein.

(b)   <u>Termination of Matter and Retention of Jurisdiction.</u>  The Parties agree that the terms of this Protective Order shall survive and remain in effect after the

Final Determination of the above-captioned matter.  The Court shall retain jurisdiction after Final Determination of this matter to hear and resolve any disputes arising out of this Protective Order.

(c)     <u>Successors.</u>  This Order shall be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control.

(d)     <u>Right to Assert Other Objections.</u> By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.  This Order shall not constitute a waiver of the right of any Party to claim in this action or otherwise that any Discovery Material, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this action or any other proceeding.

(e)     <u>Burdens of Proof</u>.  Notwithstanding anything to the contrary above, nothing in this Protective Order shall be construed to change the burdens of proof or legal standards applicable in disputes regarding whether particular Discovery Material is confidential, which level of confidentiality is appropriate, whether disclosure should be restricted, and if so, what restrictions should apply.

(f)     <u>Modification by Court.</u>  This Order is subject to further court order based upon public policy or other considerations, and the Court may modify this Order sua sponte in the interests of justice. The United States District Court for the Central District of California is responsible for the interpretation and enforcement of this Order. All disputes concerning Protected Material, however designated, produced under the protection of this Order shall be resolved by the United States District Court for the Central District of California.

1    (g)    <u>Discovery Rules Remain Unchanged.</u>  Nothing herein shall alter or

2 change in any way the discovery provisions of the Federal Rules of Civil Procedure, the

3 Local Rules for the United States District Court for the Central District of California, or

4 the Court's own orders.  Identification of any individual pursuant to this Protective Order

5 does not make that individual available for deposition or any other form of discovery

6 outside of the restrictions and procedures of the Federal Rules of Civil Procedure, the

7 Local Rules for the United States District Court for the Central District of California, or

8 the Court's own orders.

9

10    **IT IS SO STIPULATED**, through Counsel of Record.

11

Dated: _____, 2020          **GIBSON, DUNN & CRUTCHER LLP**

12

13                                                    By:    /s/ *DRAFT*_____
                                                              Joshua H. Lerner
14

15                                                    Joshua H. Lerner, SBN 220755
                                                      jlerner@gibsondunn.com
16                                                    555 Mission Street Suite 3000
                                                      San Francisco, CA 94105
17                                                    Telephone:  415.393.8200
                                                      Facsimile:   415.393.8306

18                                                    H. Mark Lyon, SBN 162061
                                                      mlyon@gibsondunn.com
19                                                    1881 Page Mill Road
                                                      Palo Alto, CA 94304-1211
20                                                    Telephone:  650.849.5300
                                                      Facsimile:   650.849.5333
21

22                                                    *Attorneys for Defendant Apple Inc.*

23

Dated: _____, 2020          **Knobbe, Martens, Olson & Bear LLP**
24

25

26                                                    By: _*DRAFT*_____

27                                                    Joseph R. Re (Bar No. 134479)
                                                      joseph.re@knobbe.com
28                                                    Stephen C Jensen
                                                      steve.jensen@knobbe.com
                                                      Perry D. Oldham

Gibson, Dunn & Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

perry.oldham@knobbe.com
Stephen W Larson
2040 Main Street, Fourteenth Floor
Irvine, CA  92614

*Attorneys for Plaintiffs*

**IT IS SO ORDERED.**

Dated: _____                   _____

The Honorable John D. Early
United States Magistrate Judge

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTESTATION REGARDING SIGNATURES

I, Joshua H. Lerner, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED:  April __, 2020                    By:    /s/ *DRAFT*_____
                                                 Joshua H. Lerner

Gibson, Dunn & Crutcher LLP

1

## **EXHIBIT A**

2

3   I, _____, acknowledge and declare that I have received

4   a copy of the Protective Order ("Order") in *Masimo Corp., et al. v. Apple Inc.*, United

5   States District Court, Central District of California, Southern Division, Civil Action

6   No. 8:20-cv-00048-JVS (JDEx).  Having read and understood the terms of the Order,

7   I agree to be bound by the terms of the Order and consent to the jurisdiction of said

8   Court for the purpose of any proceeding to enforce the terms of the Order.

9   Name of individual: _____

10   Present occupation/job description: _____

11   _____

12   _____

13   Name of Company or Firm: _____

14   Address:_____

15

16   Dated: _____

17

18

19

20   _____

    [Signature]

21

22

23

24

25

26

27

28

STIPULATION & [PROPOSED] PROTECTIVE ORDER 31                    CASE NO. 8:20-CV-00048-JVS (JDEX)

**EXHIBIT A**

**TABLE OF METADATA FIELDS**

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| BegDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the first page of an email. | The Document ID number associated with the first page of a document |
| EndDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the last page of an email. | The Document ID number associated with the last page of a document. |
| BegAttach | Unique ID (Bates number) Parent-Child Relationships | Paragraph | The Document ID number associated with the first page of a parent email. | The Document ID number associated with the first page of a parent document. |
| EndAttach | Unique ID (Bates number) Parent-Child Relationship | Paragraph | The Document ID number associated with the last page of the last attachment to a parent email. | The Document ID number associated with the last page of the last attachment to a parent document. |
| Pages | Pages | Number | The number of pages for an email. | The number of pages for a document. |
| DateSent | | Date (MM/DD/YYYY format) | The date the email was sent. | For email attachments, the date the parent email was sent. |
| Author | Author Display Name (e-mail) | Paragraph | The display name of the author or sender of an email. | The name of the author as identified by the metadata of the document. |

1

| | | | | |
|---|---|---|---|---|
| To | Recipient | Paragraph | The display name of the recipient(s) of an email. | The display name of the recipient(s) of a document (e.g., fax recipients). |
| CC | CC | Paragraph | The display name of the copyee(s) of a email. | |
| BCC | BCC | Paragraph | The display name of the blind copyee(s) of an email. | |
| Subject | Subject (e-mail) | Paragraph | The subject line of an email. | The subject of a document from entered metadata. |
| Custodian | Custodian | Paragraph | The custodian of an email. | The custodian of a document. |

2

**Exhibit 5**
**-160-**

# EXHIBIT 6

| From: | Adam.Powell |
|---|---|
| To: | "Kaounis, Angelique"; Perry.Oldham; Stephen.Larson; Steve.Jensen; Joe.Re |
| Cc: | Lyon, H. Mark; Lerner, Joshua H.; Buroker, Brian M. |
| Subject: | RE: Masimo v. Apple: follow up from March 10 call |
| Date: | Monday, April 6, 2020 7:28:32 PM |
| Attachments: | ESI Agreement (v2 Plaintiffs edits).DOCX |
| | Proposed Protective Order (Based on J Early model).DOC |

Angelique,

We never said the parties agreed to use Magistrate Judge Early's protective order "in its entirety."
We said the parties agreed to use it as a model. We continue to believe Magistrate Judge Early will
not appreciate an entirely new form of protective order. Because Apple is now refusing to use
Magistrate Judge Early's order as a model and proposed non-reciprocal provisions, we have
prepared the attached proposal ourselves. Redlines show changes to Magistrate Judge Early's
model protective order. We are happy to consider any changes you have to this proposal.

Also attached are our changes to your draft ESI agreement. As we discussed today, we are not
opposed to a procedure on custodians and search terms, but are still considering the specifics. We
will provide our edits to that portion soon and will likely need to discuss it with you.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** Martens

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Thursday, April 2, 2020 3:29 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>;
Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>;
Joe.Re <Joe.Re@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>;
Buroker, Brian M. <BBuroker@gibsondunn.com>
**Subject:** FW: Masimo v. Apple: follow up from March 10 call

Adam,

Thanks for your email. To clarify, the parties did not have an agreement to use Magistrate
Judge Early's protective order in its entirety. Rather, we explained that Apple has a model
Protective Order it uses and that we would factor in Magistrate Early's model in preparing the
proposed PO in this case (which we did). If there are specific provisions from Magistrate
Early's model that you believe are not included in the proposed PO, please let us know.

Separately, in view of Plaintiffs' objection below to Apple's proposed patent prosecution bar
provision, we are revisiting the language of that provision and will include proposed revisions

**Exhibit 6**
**-161-**

in an updated PO that we will send as soon as practicable.

Thanks very much,

Angelique

**Angelique Kaounis**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, March 31, 2020 12:41 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

[External Email]
Angelique,

This Protective Order is not consistent with the parties' agreement to use Magistrate Judge Early's protective order as a model.  We do not think Magistrate Judge Early will appreciate the parties using an entirely different format.  Additionally, we obviously will not agree to the numerous non-reciprocal provisions in this agreement.  For example, Plaintiffs cannot agree to a prosecution bar that applies only to Plaintiffs' counsel and not to Apple's counsel.  Please provide a revised version that is reciprocal and consistent with the parties' agreement to use Judge Early's protective order as a model.  Alternatively, we are happy to provide the initial draft as we offered during the Rule 16 conference.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Friday, March 27, 2020 4:37 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>;

**Exhibit 6**
-162-

Buroker, Brian M. <BBuroker@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

Counsel,
Consistent with our correspondence below, attached please find Apple's proposed Protective
Order and ESI Stipulation (with Exhibit A).  Apple reserves all rights to further revise these
documents, including in response to Plaintiffs' suggestions.
We look forward to receiving the draft Joint Report from you today.
Thanks,
Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Kaounis, Angelique
**Sent:** Thursday, March 26, 2020 8:19 PM
**To:** 'Adam.Powell' <Adam.Powell@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>;
Lyon, H. Mark <MLyon@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson
<Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen
<Steve.Jensen@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

Adam,

Thanks for your email.  Apple will endeavor to provide edits by Monday, April 6th (this is 5
working days after the 27th) in exchange for Plaintiffs' agreement to do the same for Apple's
draft Protective Order and ESI Protocol (as you suggest below).  If we can send it sooner, we
will, and would request that you do so the same.

Thanks very much,
Angelique
**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**Exhibit 6**
**-163-**

-3-

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, March 26, 2020 2:05 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

[External Email]
Angelique,
We will provide the Rule 26(f) report/schedule and authority concerning Section 2019.210 by Friday.  However, we are still waiting for the proposed Protective Order and Electronic Discovery Plan that  Apple promised to provide.  Please provide those materials to us by Friday as well.

As for editing those documents, your email suggests that Apple intends to provide edits to the Rule 26(f) report the day before it is due.  We do not think that is workable since the parties may need to exchange multiple drafts to reach an agreement.  We also do not think it will take the same amount of time to edit a document that it takes to draft the document.  Thus, please commit to providing your edits within one week of receiving our draft.  That should allow the parties sufficient time to attempt to reach a resolution on any disagreements.  We will do the same for your draft Protective Order and Electronic Discovery Plan.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Wednesday, March 25, 2020 8:04 PM
**To:** Joe.Re <Joe.Re@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>
**Subject:** Masimo v. Apple: follow up from March 10 call

Dear Counsel,

We are writing to follow up on the items we understood you were sending after our March 10 call: a draft Rule 26(f) Report, a proposed schedule, and any authority that CCP Section 2019.210 does not apply here.  In light of the April 14 deadline for submission of the Report,

**Exhibit 6**
**-164-**
-4-

we need the draft Report and Schedule by close of business this Friday, March 27.  That will give us a roughly equal amount of time to obtain client comments and respond to your draft and still have a day at the back end to coordinate changes and filing logistics with you.  Please also send us the CCP 2019.210 case law that you referenced by then.

Thanks very much,
Angelique
**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error

**Exhibit 6**
**-165-**

and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

**Exhibit 6**
**-166-**

**-6-**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn & Crutcher LLP

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

MASIMO CORPORATION,
a Delaware corporation; and
CERCACOR LABORATORIES, INC.,
a Delaware corporation,

                        Plaintiffs,

            v.

APPLE INC.,
a California corporation,

                        Defendant.

CASE NO. 8:20-cv-00048-JVS (JDEx)

**ESI STIPULATION AND**
**[PROPOSED] ORDER**

Date:
Time:
Place:
Judge: Hon. Magistrate Judge John D. Early

ESI Stipulation and [Proposed] Order
Case No. 8:20-cv-00048-JVS (JDEX)

-7-

**Exhibit 6**
-167-

1    Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc.

2   ("Cercacor") (collectively, "Plaintiffs") and Defendant Apple Inc. ("Defendant"),

3   hereby agree that the following procedures shall govern discovery of Electronically-

4   Stored Information ("ESI") in this case:

5        1.   **Custodian names and search terms to be exchanged.**  The parties shall

6   meet and confer to reach agreement on a reasonable list of custodians for purposes of

7   collection, review and production of electronically stored information.  In connection

8   with the meet and confer process, each party shall provide a proposed list of individual

9   custodians who are knowledgeable about and were involved with the core issues or

10  subjects in this case (e.g., the asserted patents, the development, design and operation

11  of the accused products, and sales, marketing and other damages-related information

12  for the accused products).  The parties then shall meet and confer to reach agreement

13  on document custodians and also shall meet and confer to reach agreement on search

14  terms to be used for electronic searches of the files from those custodians.  ESI,

15  including, but not limited to electronic files and email, shall be collected for each

16  individual custodian from the personal computers, network resources, and other

17  electronic devices that those individuals use for work purposes.  Notwithstanding prior

18  agreement on the search terms to be used for electronic searches, should a search

19  produce an unreasonably large number of non-responsive or irrelevant results, the

20  parties shall (at the producing party's request) meet and confer to discuss application

21  of further negative search restrictions (e.g., if a single search was for "card" and ninety

22  percent of the resulting documents came from the irrelevant term "credit card," a

23  negative limitation to ignore documents only returned as a result of "credit card" may

24  be applied to remove these documents).  The party receiving production shall not

25  unreasonably oppose such further restrictions designed to filter immaterial search

26  results.  The parties shall make good faith efforts to identify appropriate email

27  custodians and produce email on the agreed upon schedule, but reserve the right to

28  seek email from additional email custodians identified through discovery.  Nothing in

Gibson, Dunn & Crutcher LLP

1

ESI STIPULATION AND [PROPOSED] ORDER
CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 6**

this Order prevents the parties from using technology assisted review insofar as it improves the efficacy of discovery.

**Commented [A1]:** Plaintiffs are still considering this paragraph. We will provide any edits to this paragraph soon.

2.      **Format for production of documents – documents existing in electronic format.**  Except as otherwise provided for in this Stipulation, all documents existing in electronic format shall be produced as Group IV single page TIFF files in multiple page, searchable PDF format at a resolution of at least 300 dpi in accordance with the following:

A.      **File and Folder Naming**.  ~~PDF f~~Files shall be produced along with Concordance/Opticon image load files that indicate the beginning and ending page of each document.  Files shall be named according to the following format: "<PageID>.TIF" (e.g., "ABC000000010.TIF") with no spaces in the filename.  TIFF images will be provided in a folder named "IMAGES" on the production media. All TIFF images for a single document will be in one subfolder within the IMAGES folder, and the number of image files in any one subfolder will not exceed 1000.

B.      **Extracted Text**.  Except with regard to files that are redacted for privilege, the files shall be accompanied by text files containing the extracted text on a document basis, if available.  To the extent a Producing Party provides text files, the Receiving Party accepts the text files "as is" and the Producing Party accepts no liability as to the accuracy of searches conducted upon such files.  The text files shall be named to match the endorsed number assigned to the image of the first page of the document.  For example, a text file accompanying ABC000000010- ABC000000020 would be named ABC000000010.txt.  Text files shall be accompanied by a Control List File ("LST"). The images shall also be accompanied by an image cross-reference load file (such as Opticon or "LFP") providing the beginning and ending endorsed number of each document and the number of pages it comprises. ~~For documents which already exist in PDF format prior to production (i.e., which the producing party receives from a client or third party in PDF format), the producing party may provide them in that same PDF format, whether searchable or non-searchable.  For documents~~

ESI STIPULATION AND [PROPOSED] ORDER
CASE NO. 8:20-cv-00048-JVS (JDEx)

Gibson, Dunn & Crutcher LLP

**Exhibit 6**
-9-
-169-

1  converted to PDF format prior to production, the producing party shall make

2  reasonable efforts to convert to searchable PDF.

3       C.  **Metadata.**  Load files should include, where applicable, the

4  information listed in the Table of Metadata Fields, attached as Exhibit A. However, the

5  parties are not obligated to include metadata for any document that does not contain

6  such metadata in the original, if it is not possible to automate the creation of metadata

7  when the document is collected. The parties reserve their rights to object to any request

8  for the creation of metadata for documents that do not contain metadata in the original.

9       D.  **Production media and encryption of productions.**  Unless

10  otherwise agreed, the parties shall provide document productions in the following

11  manner: The producing party shall provide the production data on CDs, DVDs,

12  external hard drives or SFTP, as appropriate. The producing party shall encrypt the

13  production data using WinRAR appropriate encryption, and the producing party shall

14  forward the password to decrypt the production data separately from the CD, DVD,

15  external drive or SFTP to which the production data is saved.

16       E.  **Hidden Content and Tracked Changes.** MSWord and other word

17  processing files will be rendered to TIFF so as to show tracked changes, hidden text,

18  comments, headers, and field codes.  PowerPoint and other presentation slides will be

19  rendered to TIFF with full page slides, with all hidden slides and comments visible,

20  and with any notes summaries.

21       3.  **Format for production of documents – hardcopy or paper documents.**

22  All documents that are hardcopy or paper files shall be scanned and produced in the

23  same manner as documents existing in electronic format, above.

24       4.  **Source code.** This Stipulation does not govern the format for production

25  of source code.  To the extent the production of source code is required, it shall be

26  produced pursuant to the relevant provision of the Protective Order.

27       5.  **Parent and child emails.**  The parties shall produce email attachments

28  sequentially after the parent email.

Gibson, Dunn &
Crutcher LLP

**Exhibit 6**

-10-                                    -170-

6.      **Native files.**  File types which do not render in a usable manner when converted to image with extracted text, such as spreadsheets and multimedia files, shall be produced as natives with a TIFF slipsheet.  The parties will meet and confer to discuss additional requests for the production of files in native format, on a case-by-case basis. If the parties are unable to reach agreement with regard to requests for additional documents in native-file format, the parties reserve the right to seek relief from the Court. Documents produced natively shall be represented in the set of imaged documents by a slipsheet indicating the production identification number and confidentiality designation for the native file that is being produced.  Files produced natively shall follow the same naming format as TIFF images but also contain the confidentiality designation (e.g., "(Confidential) ABC000000010.xls).

7.      **Databases.**  Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Thus, a party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table.  These reports or data tables will be produced in a static format.

The parties agree to identify the specific databases, by name, that contain the relevant and responsive information that parties produce.

8.      -**Requests for hi-resolution or color documents.**  The parties agree to respond to reasonable and specific requests for the production of higher resolution or color images.  Nothing in this Stipulation shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read.  The producing party shall have the option of responding by producing a native-file version of the document.  If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

4

ESI Stipulation and [Proposed] Order
Case No. 8:20-cv-00048-JVS (JDEx)

Gibson, Dunn &
Crutcher LLP

Exhibit 6
-171-

-11-

9.    **Foreign language documents.** All documents shall be produced in their original language.  Where a requested document exists in a foreign language and the producing party also ~~has~~ is aware of an English-language version of that document that it prepared for non-litigation purposes prior to filing of the lawsuit, the producing party shall produce both the original document and all English-language versions.  ~~In addition, if the producing party has a certified translation of a foreign-language document that is being produced, (whether or not the translation is prepared for purposes of litigation) the producing party shall produce both the original document and the certified translation.~~ Nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

10.   **No Waiver**.  This Order shall not constitute a waiver of the right of any Party to claim in this action or otherwise that any documents produced, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this action or any other proceeding.  To the extent that the Court may order that attorney-client privilege or work-product protection is not waived by disclosure in this litigation, such disclosure also shall not be deemed a waiver in any other federal or state proceeding (*see* Fed. R. Evid. 502(d)).

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: _____, 2020          GIBSON, DUNN & CRUTCHER LLP

By:   *DRAFT*

Joshua H. Lerner, SBN 220755
jlerner@gibsondunn.com
555 Mission Street Suite 3000
San Francisco, CA 94105
Telephone:  415.393.8200
Facsimile:   415.393.8306

Gibson, Dunn & Crutcher LLP

**Exhibit 6**
**-172-**

-12-

| | |
|---|---|
| 1 | H. Mark Lyon, SBN 162061 |
| 2 | mlyon@gibsondunn.com<br>1881 Page Mill Road |
| 3 | Palo Alto, CA 94304-1211<br>Telephone:  650.849.5300 |
| 4 | Facsimile:   650.849.5333 |
| 5 | *Attorneys for Defendant Apple Inc.* |
| 6 | |
| 7 | Dated:  _____, 2020     Knobbe, Martens, Olson & Bear LLP |
| 8 | |
| 9 | By: *DRAFT* _____ |
| 10 | Joseph R Re<br>joe.re@knobbe.com |
| 11 | Stephen C Jensen<br>steve.jensen@knobbe.com |
| 12 | Perry D. Oldham<br>perry.oldham@knobbe.com |
| 13 | Stephen W Larson<br>stephen.larson@knobbe.com |
| 14 | 2040 Main Street, Fourteenth Floor<br>Irvine, CA  92614 |
| 15 | *Attorneys for Plaintiffs* |
| 16 | |
| 17 | IT IS SO ORDERED. |
| 18 | Dated:  _____ |
| 19 | JOHN D. EARLY<br>United States Magistrate Judge |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Gibson, Dunn &
Crutcher LLP

6

ESI STIPULATION AND [PROPOSED] ORDER
CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 6**

-173-

1

## **ATTESTATION REGARDING SIGNATURES**

2

  I, Joshua H. Lerner, attest that all signatories listed, and on whose behalf the

3

filing is submitted, concur in the filing's content and have authorized the filing.

4

5

DATED:  April __, 2020   By: _/s/ DRAFT_  

6

          Joshua H. Lerner

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

---

7

ESI STIPULATION AND [PROPOSED] ORDER
CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 6**
**-174-**

**-14-**

1

2

3

4

5

6

7

8    ## IN THE UNITED STATES DISTRICT COURT

9    ## FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   ## SOUTHERN DIVISION

11

12   MASIMO CORPORATION,          ) Case No. 8:20-cv-00048-JVS-JDE
     a Delaware corporation; and  )
13   CERCACOR LABORATORIES, INC., ) **STIPULATION AND**
     a Delaware corporation       ) **PROPOSED PROTECTIVE**
14                                 ) **ORDER**
                Plaintiffs,        )
15                                 )
           v.                      )
16                                 )
     APPLE INC., a California corporation )
17                                 )
                                   )
18              Defendant.         )
                                   )
19   _____ )

20

21

22

23

24

25

26

27

28

**Exhibit 6**
-15-                                  **-175-**

1. <u>PURPOSES AND LIMITATIONS</u>

Discovery in this action is likely to involve production of confidential, proprietary or private information for which special protection from public disclosure and from use for any purpose other than pursuing this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.

2. <u>GOOD CAUSE STATEMENT</u>

[*The "Good Cause Statement" should identify as specifically as possible the confidential materials and set forth facts showing what harm will result from the disclosure. Below is an example]:

This action is likely to involve trade secrets, customer and pricing lists and other valuable research, development, commercial, financial, technical and/or proprietary information for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. Such confidential and proprietary materials and information consist of, among other things, confidential business or financial information, information regarding confidential business practices, or other confidential research, development, or commercial information (including information implicating privacy rights of third parties), information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to

-1-

**Exhibit 6**
**-176-**

ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such information is justified in this matter. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

       3.    <u>ACKNOWLEDGMENT OF UNDER SEAL FILING PROCEDURE</u>

The parties further acknowledge, as set forth in Section 14.3, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Local Civil Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal. There is a strong presumption that the public has a right of access to judicial proceedings and records in civil cases. In connection with non-dispositive motions, good cause must be shown to support a filing under seal. See *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1176 (9th Cir. 2006), *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002), *Makar-Welbon v. Sony Electrics, Inc.*, 187 F.R.D. 576, 577 (E.D. Wis. 1999) (even stipulated protective orders require good cause showing), and a specific showing of good cause or compelling reasons with proper evidentiary support and legal justification, must be made with respect to Protected Material that a party seeks to file under seal. The parties' mere designation of Disclosure or Discovery Material as CONFIDENTIAL does not— without the submission of competent evidence by declaration, establishing that the material sought to be filed under seal qualifies as confidential, privileged, or otherwise protectable—constitute good cause.

-2-

**Exhibit 6**
-177-

1  Further, if a party requests sealing related to a dispositive motion or trial,
2  then compelling reasons, not only good cause, for the sealing must be shown,
3  and the relief sought shall be narrowly tailored to serve the specific interest to
4  be protected. *See Pintos v. Pacific Creditors Ass'n.*, 605 F.3d 665, 677-79 (9th
5  Cir. 2010). For each item or type of information, document, or thing sought to
6  be filed or introduced under seal, the party seeking protection must articulate
7  compelling reasons, supported by specific facts and legal justification, for the
8  requested sealing order. Again, competent evidence supporting the application
9  to file documents under seal must be provided by declaration.
10  Any document that is not confidential, privileged, or otherwise protectable in its
11  entirety will not be filed under seal if the confidential portions can be redacted.
12  If documents can be redacted, then a redacted version for public viewing,
13  omitting only the confidential, privileged, or otherwise protectable portions of
14  the document, shall be filed. Any application that seeks to file documents under
15  seal in their entirety should include an explanation of why redaction is not
16  feasible.

17      4.    <u>DEFINITIONS</u>

18      4.1    Action: [this pending federal lawsuit]. [*Option: consolidated or
19  related actions.]

20      4.2    Challenging Party: a Party or Non-Party that challenges the
21  designation of information or items under this Order.

22      4.3    "CONFIDENTIAL" Information or Items: information (regardless
23  of how it is generated, stored or maintained) or tangible things that qualify for
24  protection under Federal Rule of Civil Procedure 26(c), and as specified above
25  in the Good Cause Statement.

26      4.4    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"
27  Information or Items: extremely sensitive "Confidential Information or Items,"

28

-3-

**Exhibit 6**

**-18-**    **-178-**

disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

4.5   "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items: extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, or engineering specifications that define or otherwise describe in detail the algorithms or structure of software, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

4.6   Counsel: Outside Counsel of Record and House Counsel (as well as their support staff).

4.7   Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

4.8   Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery.

4.9   Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

4.10   House Counsel: attorneys who are employees of a party to this Action.   House Counsel does not include Outside Counsel of Record or any other outside counsel.

4.11 Non-Party: any natural person, partnership, corporation, association or other legal entity not named as a Party to this action.

4.12 Outside Counsel of Record: attorneys who are not employees of a party to this Action but are retained to represent a party to this Action and have

-4-

**Exhibit 6**
-179-

appeared in this Action on behalf of that party or are affiliated with a law firm that has appeared on behalf of that party, and includes support staff.

4.13~~1~~ Party: any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

4.14~~2~~ Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

4.15~~3~~ Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

4.16~~4~~ Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL~~,~~" HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

4.17~~5~~  Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

5.    SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

Any use of Protected Material at trial shall be governed by the orders of the trial judge and other applicable authorities. This Order does not govern the use of Protected Material at trial.

6.    DURATION

-5-

**Exhibit 6**
-180-

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing, a court order otherwise directs, or the information was made public during trial. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.  Once a case proceeds to trial, information that was designated as CONFIDENTIAL or maintained pursuant to this protective order used or introduced as an exhibit at trial becomes public and will be presumptively available to all members of the public, including the press, unless compelling reasons supported by specific factual findings to proceed otherwise are made to the trial judge in advance of the trial. *See Kamakana*, 447 F.3d at 1180-81 (distinguishing "good cause" showing for sealing documents produced in discovery from "compelling reasons" standard when merits-related documents are part of court record). Accordingly, the terms of this protective order do not extend beyond the commencement of the trial.

7.    DESIGNATING PROTECTED MATERIAL

7.1    Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items or oral or written communications that qualify so that other portions of the material, documents, items or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

**Exhibit 6**

-181-

Mass, indiscriminate or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

7.2   <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Order, or as otherwise stipulated or ordered, Disclosure of Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" (hereinafter "CONFIDENTIAL Confidentiality legend"), to each page that contains protected material. If only a portion of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS'

-7-

EYES ONLY~~CONFIDENTIAL~~.” After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate “Confidentiality ~~CONFIDENTIAL~~ legend” to each page that contains Protected Material. If only a portion of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b) for testimony given in depositions that the Designating Party identifies the Disclosure or Discovery Material within 14 days of receipt of the transcript of the testimony.  During the 14-day period, the entire transcript will be treated as “HIGHLY CONFIDENTIAL – ATTORNEYS’ EYES ONLY.”~~on the record, before the close of the deposition all protected testimony.~~

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the appropriate Confidentiality legend ~~“CONFIDENTIAL.”~~ If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

7.3 <u>Inadvertent Failures to Designate</u>. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party’s right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

8. <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

8.1.    <u>Timing of Challenges</u>. Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

8.2    <u>Meet and Confer</u>. The Challenging Party shall initiate the dispute resolution process under Local Rule 37-1 et seq.

8.3    <u>Joint Stipulation</u>. Any challenge submitted to the Court shall be via a joint stipulation pursuant to Local Rule 37-2.

8.4    The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

9.    <u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>

9.1    <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending or attempting to settle this Action. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of section 15 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

9.2    <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless

-9-

**Exhibit 6**
-184-

1   otherwise ordered by the court or permitted in writing by the Designating Party,

2   a Receiving Party may disclose any information or item designated

3   "CONFIDENTIAL" only to:

4         (a) the Receiving Party's Outside Counsel of Record in this Action,

5   as well as employees of said Outside Counsel of Record to whom it is

6   reasonably necessary to disclose the information for this Action;

7         (b) the officers, directors, and employees (including House

8   Counsel) of the Receiving Party to whom disclosure is reasonably necessary for

9   this Action;

10        (c) Experts (as defined in this Order) of the Receiving Party to

11   whom disclosure is reasonably necessary for this Action, provided that: (1) such

12   consultants or experts are not presently employed by the Parties hereto for

13   purposes other than this Action; (2) before access is given, the consultant or

14   expert has completed the "Acknowledgment and Agreement to Be Bound"

15   (Exhibit A) and the same is served upon the producing Party with (i) a current

16   curriculum vitae of the consultant or expert, (ii) a listing of each person or entity

17   from whom the expert has received compensation or funding for work in his or

18   her areas of expertise or to whom the expert has provided professional services,

19   including in connection with a litigation, at any time during the preceding five

20   years, and (iii) a listing (by name and number of the case, filing date, and

21   location of court) of any litigation in connection with which the Expert has

22   offered expert testimony, including through a declaration, report, or testimony at

23   a deposition or trial, during the preceding five years, at least seven (7) days

24   before access to the Protected Material is to be given to that consultant or

25   expert. The producing party may object to and notify the receiving Party in

26   writing that it objects to disclosure of Protected Material to the consultant or

27   expert.  The Parties agree to promptly confer and use good faith to resolve any

28   such objection. If the Parties are unable to resolve any objection, the objecting

-10-

Party may file a motion with the Court within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure.  The objecting Party shall have the burden of proving the need for a protective order.  No disclosure shall occur until all such objections are resolved by agreement or Court order~~and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) [TO BE NEGOTIATED AND PREPARED BY PARTIES AND ATTACHED TO STIPULATION AND PROPOSED ORDER]~~;

(d) the court and its personnel;

(e) court reporters and their staff;

(f) professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(h) during their depositions, witnesses, and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit A hereto; and (2) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order; and

(i) any mediators or settlement officers and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

9.3 Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to the individuals identified in Paragraphs 9.3 (a), (c)-(g), and (i).

10. PROSECUTION BAR

Absent written consent from the Producing Party, any individual who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information shall not be involved in the prosecution of patents or patent applications relating to light-based physiological monitoring, including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office"). For purposes of this paragraph, "prosecution" means preparation of and/or amendments to patent applications, claim drafting, claim amendments, and supervision and/or consultation of such activities. To avoid any doubt, "prosecution" as used in this paragraph does not include providing patent prosecution counsel with public information to submit to the Patent Office or consulting on strictly procedural or legal aspects of patent prosecution that do not rely on technology involved in the patent prosecution. "Prosecution" as used in this paragraph also does not include representing a party before a domestic or foreign agency in a patent challenge (including, but not limited to, a reissue protest, *ex parte* reexamination, *inter partes* reexamination, or *inter*

-12-

**Exhibit 6**

-187-

*partes* review). This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information is first received by the affected individual and shall end two (1) years after final termination of this action.

11.    SOURCE CODE

(a)    To the extent production of source code becomes necessary in this case, a Producing Party may designate source code as "HIGHLY CONFIDENTIAL - SOURCE CODE" if it comprises or includes confidential, proprietary or trade secret source code.

(b)    Protected    Material    designated    as    "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information including the Prosecution Bar set forth in Paragraph 10, and may be disclosed only to the individuals to whom "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information may be disclosed, as set forth in Paragraph 9.3.

(c)    Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the Producing Party's counsel in the Central District of California or another mutually agreed upon location. The source code shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source

code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.

(d)     The Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraph (c) in the first instance. The Producing Party shall provide three copies of all such source code in paper form including bates numbers and the label "HIGHLY CONFIDENTIAL - SOURCE CODE." The Producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 8 whereby the Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of dispute resolution.

(e)     The Receiving Party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form. The Receiving Party shall maintain all paper copies of any printed portions of the source code in a secured, locked area. The Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format. The Receiving Party shall only make additional paper copies if such additional copies are necessary to prepare court filings.  One of the three paper copies may be used as necessary during depositions.  Any paper copies used during a deposition shall be retrieved by the Producing Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual.

10.12. PROTECTED MATERIAL SUBPOENAED OR ORDERED

-14-

**Exhibit 6**
-189-

PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any Protected Material~~information or items designated in this Action as "CONFIDENTIAL,"~~ that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected. If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

~~11.~~13. A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as Protected Material~~"CONFIDENTIAL."~~ Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

-15-

Exhibit 6
-190-

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3) make the information requested available for inspection by the Non-Party, if requested.

(c) If the Non-Party fails to seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

12.14. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the

-16-

Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment an Agreement to Be Bound" attached hereto as Exhibit A.

13.15. INADVERTENT PRODUCTION OF PRIVILEGED OR
OTHERWISE PROTECTED MATERIAL

(a) The inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to production, will not waive the applicable privilege and/or protection if a request for return of such inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

(b) Upon a request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Protected Material or Discovery Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

(c) Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Discovery Material and such other information as is reasonably necessary to identify the Discovery Material and describe its nature to the Court in any motion to compel production of the Discovery Material.

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other

-17-

protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil\ Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

16.    INADVERTENT FAILURE TO DESIGNATE PROPERLY

(a) The inadvertent failure by a Producing Party to designate Discovery Material as Protected Material with one of the designations provided for under this Order shall not waive any such designation provided that the Producing Party notifies all Receiving Parties that such Discovery Material is protected under one of the categories of this Order within fourteen (14) days of the Producing Party learning of the inadvertent failure to designate. The Producing Party shall reproduce the Protected Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Parties.  Upon receiving the Protected Material with the correct confidentiality designation, the Receiving Parties shall return or securely destroy, at the Producing Party's option, all Discovery Material that was not designated properly.

(b) A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives such notice that such Discovery Material is protected under one of the categories of this Order, unless an objectively reasonable person would have realized that the Discovery Material should have been appropriately designated with a confidentiality designation under this Order. Once a Receiving Party has received notification of the correct confidentiality designation for the Protected

Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in Paragraph 16(c) below) at the appropriately designated level pursuant to the terms of this Order.

(c) Notwithstanding the above, a subsequent designation of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" materials while the materials were not marked "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" from engaging in the activities set forth in Paragraph 10.

15.17. MISCELLANEOUS

14.1   Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

14.2   Right to Assert Other Objections. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

14.3   Filing Protected Material. A Party that seeks to file under seal any Protected Material must comply with Local Civil Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material. If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party may file the information in the public record unless otherwise instructed by the court.

16.18. FINAL DISPOSITION

-19-

**Exhibit 6**

-34-

-194-

After the final disposition of this Action, as defined in paragraph 6, within 60 days of a written request by the Designating Party, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 6 (DURATION).

### ~~17.~~19. VIOLATION

Any violation of this Order may be punished by appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

1

Dated: _____, 2020

**Knobbe, Martens, Olson & Bear LLP**

2

3

By:___*DRAFT*_____

4

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com

5

Stephen C Jensen
steve.jensen@knobbe.com

6

Perry D. Oldham
perry.oldham@knobbe.com

7

Stephen W Larson
2040 Main Street, Fourteenth Floor

8

Irvine, CA  92614

9

*Attorneys for Plaintiffs*

10

Dated: _____, 2020

**GIBSON, DUNN & CRUTCHER LLP**

11

12

By:    /s/ *DRAFT*_____

13

Joshua H. Lerner, SBN 220755
jlerner@gibsondunn.com

14

555 Mission Street Suite 3000
San Francisco, CA 94105

15

Telephone:  415.393.8200
Facsimile:   415.393.8306

16

H. Mark Lyon, SBN 162061
mlyon@gibsondunn.com

17

1881 Page Mill Road
Palo Alto, CA 94304-1211

18

Telephone:  650.849.5300
Facsimile:   650.849.5333

19

*Attorneys for Defendant*

20

21

**IT IS SO ORDERED.**

22

Dated: _____

23

_____

The Honorable John D. Early

24

United States Magistrate Judge

25

26

27

28

-21-

**Exhibit 6**

**-36-**

**-196-**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 7

| From: | Adam.Powell |
| To: | Kaounis, Angelique |
| Cc: | Lyon, H. Mark; Lerner, Joshua H.; Buroker, Brian M.; Samplin, Ilissa; Perry.Oldham; Stephen.Larson; Steve.Jensen; Joe.Re |
| Subject: | RE: Masimo v. Apple: follow up from March 10 call |
| Date: | Thursday, April 16, 2020 6:20:00 PM |
| Attachments: | 2020-04-16 Letter re Protective Order.pdf |

Angelique,

Please see my attached letter.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Wednesday, April 15, 2020 10:39 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

Adam,
Thanks for your email.  We expect to send you a redlined draft in the next day or so.
Thanks,
Angelique

**Angelique Kaounis**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, April 15, 2020 3:44 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>

**-1-**

**Exhibit 7**
**-198-**

**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

[External Email]
Angelique,

We are writing to follow up on your email below. Please let us know when you expect to send us the draft protective order.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Thursday, April 9, 2020 12:11 PM
**To:** Adam.Powell@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

Adam,

Thanks for your email. As explained in my prior email, we stated on the March 10 call that Apple had a model PO that we would modify for purposes of this case. We did, including by considering the provisions of Judge Early's model PO. Rather than comment on Apple's draft, Plaintiffs simply rejected it. When we attempted to address Plaintiffs' articulated concern regarding reciprocity of the patent prosecution bar, Plaintiffs still refused to comment on Apple's draft—instead insisting that the parties essentially start from scratch, using Judge Early's model PO.

In light of Plaintiffs' unwillingness to use Apple's model PO, we will, as soon as practicable, send you an updated version of the draft PO that you sent us with Apple's proposed redlines. That draft should address most, if not all of the points you raise below.

thanks very much,
Angelique

**Exhibit 7**
**-199-**

**Angelique Kaounis**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, April 8, 2020 7:04 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian N. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

[External Email]
Angelique,

Your summary of our March 10 meet and confer is not consistent with our recollection.  We specifically said that the parties needed to use Judge Early's protective order as a model and stated that we would prepare a draft.  We agreed to Apple preparing the initial draft only because we understood Apple agreed to use Judge Early's protective order as a model.  We recently had a Magistrate Judge in the Central District refuse to enter a Protective Order because it did not follow that Magistrate Judge's model order, resulting in significant delay and wasted resources.  We do not want to risk the same thing happening in this case.

Additionally, your proposal continues to contain numerous objectionable and non-reciprocal provisions, including the prosecution bar issue discussed below.  You claim to have made the patent bar reciprocal, but it still applies only to "any person on behalf of the **Plaintiffs** who receives" designated material.  We object to Apple's proposal for many reasons, including:

1. Apple's proposal does not use Magistrate Judge Early's order as a model.
2. Apple's proposal lacks critical components of Judge Early's order, including a "good cause statement," acknowledgement of under seal filing procedures, and acknowledgement that information introduced at trial typically becomes public absent compelling reasons.
3. Apple's proposal includes an unduly broad and non-reciprocal prosecution bar.  Among other things, the prosecution bar applies only to Plaintiffs' counsel and allows an accused infringer's litigation counsel to file an IPR but does not allow the patentee's litigation counsel to defend the IPR.
4. Apple's proposal includes a non-reciprocal provision allowing Apple's in-house counsel to view AEO information while preventing Plaintiffs' in-house counsel from doing the same.
5. Apple's proposal includes a non-reciprocal provision concerning the number of individuals

**Exhibit 7**
**-200-**

who may access Apple's source code without the same protection for Plaintiffs' source code.

6.  Apple's latest proposal restricts access to AEO and source code material to outside counsel that do not have a "business or ownership interest in a Party."

7.  Apple proposal includes unnecessarily complicated source code provisions, including lengthy notification times to inspect, unduly small restrictions on the amount of source code that can be printed, and numerous provisions that infringe on the receiving party's work product.

8.  Apple's proposal restricts access to "Confidential" material to three representatives that must be cleared by the opposing side.

9.  Apple's proposal allows untimely objections to experts accessing confidential information.

10. Apple's proposal includes unnecessarily complicated procedures for using native files, designating deposition testimony, and providing AEO information to mock jurors.

11. Apple's proposal includes export provisions that appear to be unwarranted, though we are willing to listen to why Apple believes these provisions are necessary.

For all these reasons, we believe the parties need to start with Judge Early's order as a model.  Since Apple is unwilling to do that, the parties may apparently need to submit competing proposals.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 Direct
**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Monday, April 6, 2020 9:11 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

Adam,

Thanks for your email.  As we explained on our March 10 meet and confer call, in order to expedite the process for agreeing to a protective order, Apple promised to send Plaintiffs its model protective order that we modified for use in this case.  We did not refuse to use Magistrate Judge Early's model order; to the contrary, we did consider it and found most of it consistent with what Apple intended to propose.  In any event, after Plaintiffs rejected Apple's proposed PO outright without proposing any substantive redlines, we asked Plaintiffs to identify any provisions that you believed were not included, but should have been.  You did not do so.  Further, to address Plaintiffs' previously-stated concern about the non-reciprocal patent bar provision, we sent you an updated version of the proposed PO on Friday.  Again, rather than comment on Apple's updated Protective Order, Plaintiffs have refused to consider it.

**Exhibit 7**
**-201-**

Unfortunately, this is not constructive.  We therefore again request that Plaintiffs redline their suggestions into Apple's updated proposed PO.

As for the ESI Stipulation, we will consider Plaintiffs' suggestions and get back to you shortly.  As I requested on our call earlier today, please provide some times for a follow up meet and confer call this week to address the ESI Stip.

Finally, I have attached an updated draft Joint Rule 26(f) Report with Apple's sections included in redline for ease of reference.  We look forward to your thoughts.
Apple reserves all rights to modify any of the above-referenced documents in response to Plaintiffs' suggestions or otherwise.

Thanks very much,
Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, April 6, 2020 7:29 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

[External Email]
Angelique,

We never said the parties agreed to use Magistrate Judge Early's protective order "in its entirety." We said the parties agreed to use it as a model.  We continue to believe Magistrate Judge Early will not appreciate an entirely new form of protective order.  Because Apple is now refusing to use Magistrate Judge Early's order as a model and proposed non-reciprocal provisions, we have prepared the attached proposal ourselves.  Redlines show changes to Magistrate Judge Early's model protective order.  We are happy to consider any changes you have to this proposal.

Also attached are our changes to your draft ESI agreement.  As we discussed today, we are not opposed to a procedure on custodians and search terms, but are still considering the specifics.  We will provide our edits to that portion soon and will likely need to discuss it with you.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Kaounis, Angelique <<u>AKaounis@gibsondunn.com</u>>
**Sent:** Thursday, April 2, 2020 3:29 PM
**To:** Adam.Powell <<u>Adam.Powell@knobbe.com</u>>; Perry.Oldham <<u>Perry.Oldham@knobbe.com</u>>;
Stephen.Larson <<u>Stephen.Larson@knobbe.com</u>>; Steve.Jensen <<u>Steve.Jensen@knobbe.com</u>>;
<u>Joe.Re</u> <<u>Joe.Re@knobbe.com</u>>
**Cc:** Lyon, H. Mark <<u>MLyon@gibsondunn.com</u>>; Lerner, Joshua H. <<u>JLerner@gibsondunn.com</u>>;
Buroker, Brian M. <<u>BBuroker@gibsondunn.com</u>>
**Subject:** FW: Masimo v. Apple: follow up from March 10 call

Adam,

Thanks for your email.  To clarify, the parties did not have an agreement to use Magistrate
Judge Early's protective order in its entirety.  Rather, we explained that Apple has a model
Protective Order it uses and that we would factor in Magistrate Early's model in preparing the
proposed PO in this case (which we did).  If there are specific provisions from Magistrate
Early's model that you believe are not included in the proposed PO, please let us know.

Separately, in view of Plaintiffs' objection below to Apple's proposed patent prosecution bar
provision, we are revisiting the language of that provision and will include proposed revisions
in an updated PO that we will send as soon as practicable.
Thanks very much,
Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
<u>AKaounis@gibsondunn.com</u> • <u>www.gibsondunn.com</u>

**From:** Adam.Powell <<u>Adam.Powell@knobbe.com</u>>
**Sent:** Tuesday, March 31, 2020 12:41 PM
**To:** Kaounis, Angelique <<u>AKaounis@gibsondunn.com</u>>; Stephen.Larson
<<u>Stephen.Larson@knobbe.com</u>>; Perry.Oldham <<u>Perry.Oldham@knobbe.com</u>>; Steve.Jensen
<<u>Steve.Jensen@knobbe.com</u>>; <u>Joe.Re</u> <<u>Joe.Re@knobbe.com</u>>
**Cc:** Lyon, H. Mark <<u>MLyon@gibsondunn.com</u>>; Lerner, Joshua H. <<u>JLerner@gibsondunn.com</u>>;
Buroker, Brian M. <<u>BBuroker@gibsondunn.com</u>>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

**Exhibit 7**
**-203-**

[External Email]
Angelique,

This Protective Order is not consistent with the parties' agreement to use Magistrate Judge Early's protective order as a model.  We do not think Magistrate Judge Early will appreciate the parties using an entirely different format.  Additionally, we obviously will not agree to the numerous non-reciprocal provisions in this agreement.  For example, Plaintiffs cannot agree to a prosecution bar that applies only to Plaintiffs' counsel and not to Apple's counsel.  Please provide a revised version that is reciprocal and consistent with the parties' agreement to use Judge Early's protective order as a model.  Alternatively, we are happy to provide the initial draft as we offered during the Rule 16 conference.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4242 **Direct**
**Knobbe Martens**

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Friday, March 27, 2020 4:37 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

Counsel,
Consistent with our correspondence below, attached please find Apple's proposed Protective Order and ESI Stipulation (with Exhibit A).  Apple reserves all rights to further revise these documents, including in response to Plaintiffs' suggestions.
We look forward to receiving the draft Joint Report from you today.
Thanks,
Angelique

**Angelique Kaounis**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Kaounis, Angelique
**Sent:** Thursday, March 26, 2020 8:19 PM
**To:** 'Adam.Powell' <Adam.Powell@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

Adam,

Thanks for your email.  Apple will endeavor to provide edits by Monday, April 6th (this is 5 working days after the 27th) in exchange for Plaintiffs' agreement to do the same for Apple's draft Protective Order and ESI Protocol (as you suggest below).  If we can send it sooner, we will, and would request that you do so the same.

Thanks very much,
Angelique

**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, March 26, 2020 2:05 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

[External Email]
Angelique,
We will provide the Rule 26(f) report/schedule and authority concerning Section 2019.210 by Friday.  However, we are still waiting for the proposed Protective Order and Electronic Discovery Plan that  Apple promised to provide.  Please provide those materials to us by Friday as well.

As for editing those documents, your email suggests that Apple intends to provide edits to the Rule 26(f) report the day before it is due.  We do not think that is workable since the parties may need to exchange multiple drafts to reach an agreement.  We also do not think it will take the same amount of time to edit a document that it takes to draft the document.  Thus, please commit to providing

**Exhibit 7**
**-205-**

your edits within one week of receiving our draft.  That should allow the parties sufficient time to attempt to reach a resolution on any disagreements.  We will do the same for your draft Protective Order and Electronic Discovery Plan.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Wednesday, March 25, 2020 8:04 PM
**To:** Joe.Re <Joe.Re@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>
**Subject:** Masimo v. Apple: follow up from March 10 call

Dear Counsel,

We are writing to follow up on the items we understood you were sending after our March 10 call: a draft Rule 26(f) Report, a proposed schedule, and any authority that CCP Section 2019.210 does not apply here.  In light of the April 14 deadline for submission of the Report, we need the draft Report and Schedule by close of business this Friday, March 27.  That will give us a roughly equal amount of time to obtain client comments and respond to your draft and still have a day at the back end to coordinate changes and filing logistics with you.  Please also send us the CCP 2019.210 case law that you referenced by then.

Thanks very much,
Angelique
**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error

**Exhibit 7**
**-206-**

and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 7
-207-

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and
privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not
the intended recipient, please contact the sender by reply email and destroy all copies of the original
message.

This message may contain confidential and privileged information for the sole use of the intended
recipient. Any review, disclosure, distribution by others or forwarding without express permission is
strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error
and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or
our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and
privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not
the intended recipient, please contact the sender by reply email and destroy all copies of the original
message.

This message may contain confidential and privileged information for the sole use of the intended
recipient. Any review, disclosure, distribution by others or forwarding without express permission is
strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error
and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or
our privacy policy.

**Exhibit 7
-208-**

# Knobbe Martens

**KNOBBE, MARTENS, OLSON & BEAR, LLP**

12790 El Camino Real, Suite 100, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

April 16, 2020

**VIA EMAIL**

Angelique Kaounis
Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067

Re:    Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Angelique:

We write to request a conference of counsel pursuant to Local Rule 37-1 to address the proposed protective order governing the treatment of confidential information.  Please promptly provide your availability to meet and confer within 10 days.

During the Rule 26(f) conference on March 10, Plaintiffs indicated they planned to prepare a draft protective order based on Magistrate Judge Early's model protective order.  Apple indicated it wanted to prepare the initial draft because Apple had some specific provisions it wanted to include.  Plaintiffs agreed only on the condition that Apple would use Judge Early's order as a model.

On March 26, Plaintiffs contacted Apple to ask about the status of the draft.  Apple provided its draft on March 27.  On March 31, Plaintiffs informed Apple the draft was not acceptable because it did not use Judge Early's order as a model and contained "numerous non-reciprocal provisions," including, for example, a prosecution bar that applied only to Plaintiffs' counsel.  On April 3, Apple responded by providing an updated draft that still did not use Judge Early's order as a model and still contained non-reciprocal provisions, including the non-reciprocal prosecution bar.  On April 6, Plaintiffs provided a draft using Judge Early's order as a model.   On April 8, Plaintiffs suggested the parties submit competing proposals and identified at least the following deficiencies in Apple's draft:

(1)    Apple's proposal does not use Magistrate Judge Early's order as a model.

(2)    Apple's proposal lacks critical components of Judge Early's order, including a "good cause statement," acknowledgement of under seal filing procedures, and acknowledgement that information introduced at trial typically becomes public absent compelling reasons.

(3)    Apple's proposal includes an unduly broad and non-reciprocal prosecution bar.  Among other things, the prosecution bar applies only to Plaintiffs' counsel and allows an accused infringer's litigation counsel to file an IPR but does not allow the patentee's litigation counsel to defend the IPR.

(4)    Apple's proposal includes a non-reciprocal provision allowing Apple's in-house counsel to view AEO information while preventing Plaintiffs' in-house counsel from doing the same.

(5)    Apple's proposal includes a non-reciprocal provision concerning the number of individuals who may access Apple's source code without the same protection for Plaintiffs' source code.

(6)     Apple's latest proposal restricts access to AEO and source code material to outside counsel
        that do not have a "business or ownership interest in a Party."

(7)     Apple proposal includes unnecessarily complicated source code provisions, including lengthy
        notification times to inspect, unduly small restrictions on the amount of source code that can
        be printed, and numerous provisions that infringe on the receiving party's work product.

(8)     Apple's proposal restricts access to "Confidential" material to three representatives that must
        be cleared by the opposing side.

(9)     Apple's proposal allows untimely objections to experts accessing confidential information.

(10)    Apple's proposal includes unnecessarily complicated procedures for using native files,
        designating deposition testimony, and providing AEO information to mock jurors.

(11)    Apple's proposal includes export provisions that appear to be unwarranted, though we are
        willing to listen to why Apple believes these provisions are necessary.

On April 9, Apple agreed to provide edits to Plaintiffs' draft based on Judge Early's model.  During a
teleconference on April 9, you indicated you had hoped to send edits that day, but would at least do so
"soon."  On April 15, Plaintiffs asked about the status and Apple responded it hoped to have edits in "in
the next day or so."  As of the sending of this letter, Apple has not objected to any portion of Plaintiffs'
April 6 draft.

As you know, Apple stated in the Rule 26(f) report: "Apple will not agree to produce documents unless
and until a satisfactory protective order is issued in this case."  D.I. 33 at 11.  Because Apple maintains it
needs a protective order to produce documents, we believe the parties should move this issue forward as
quickly as possible.  We hope the parties are able to resolve this dispute without burdening the Court.
However, if the parties are not able to resolve their disputes and/or otherwise reach an agreement, we
intend to move for entry of a protective order consistent with the draft that Plaintiffs sent to Apple on
April 6.

Please let us know when you are available to discuss this matter.  We suggest doing so during our call
on April 17 at 11am.

Best regards,

Adam B. Powell

32641686

**-13-**

**Exhibit 7**
**-210-**

# EXHIBIT 8

| From: | Adam.Powell |
|---|---|
| To: | Samplin, Ilissa |
| Cc: | Perry.Oldham; Joe.Re; Steve.Jensen; Masimo.Apple; Lerner, Joshua H.; Buroker, Brian M.; Lyon, H. Mark; Rosenthal, Brian A.; Kaounis, Angelique; Morgan, Tracy A. |
| Subject: | RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order |
| Date: | Thursday, June 18, 2020 2:12:42 PM |

Ilissa,

Your rhetoric continues to be unproductive.  The record is clear that the parties did not reach an impasse until you responded to our proposed compromises on Tuesday.  Therefore, under the parties' agreement, Plaintiffs' portion of the joint stipulation is not due until Monday.  As we explained below, however, we are working to provide our portion of the joint stipulation as soon as possible and may be able to do so on Friday.

Best regards,
Adam


**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Tuesday, June 16, 2020 5:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Adam,

This is an incredibly petty dispute.  I am not going to engage in a timeline analysis.  You know how many partners and associates are on your team.  It is bizarre, to say the least, that you would maintain this fight to get an extra weekend with briefing that you have already had ample time to pull together.  We are quite surprised by your firm's efforts in this regard—which appears to be designed to increase Plaintiffs' time to brief these issues, cut back on Apple's time to do the same, and further delay the parties' presentation of the disputes to the Court.

We affirmatively told you on Friday, June 12 that Apple would not be changing its positions on any of the remaining disputes.  Plaintiffs unilaterally decided to compromise on certain items on Saturday, but as I had already told you on Friday, Apple was not changing its positions.  Therefore, by Saturday, at the latest, the parties had reached an impasse on the remaining disputes.  Explanations of the bases for Apple's positions are not required to reach an impasse—you and I both know that an

**Exhibit 8**
-211-

impasse is reached when the parties have confirmed that their positions diverge, which became
clear on Friday, and then again on Saturday.  Based on the parties' prior agreement, Plaintiffs'
portion of the joint stipulation therefore is due on Thursday, June 18.  Your efforts to potentially
delay that to Monday, June 22 is absurd.  Even if we give you the benefit of the further
conversations that you and I engaged in yesterday, Plaintiffs' portion is due on Friday, June 19.
There is no credible way for Plaintiffs to drag this out beyond then—certainly not into the following
week.  Please confirm that you will uphold Plaintiffs' end of the bargain here and provide Plaintiffs'
portion of the joint stipulation by no later than Friday, June 19.

Regards,
Ilissa

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, June 16, 2020 4:41 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen
<Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Lerner, Joshua H.
<JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark
<MLyon@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis,
Angelique <AKaounis@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

[External Email]
Ilissa,

Thank you for finally responding to each issue raised in my Saturday email.  Your email below
confirms that your Monday emails did **not** respond to the vast majority of issues raised in my
Saturday email.  In particular, your email below confirms your Monday morning email did not
address at least Sections 4.5, 11(f) reviewing of source code, 11(f) printing PDFs and directories,
11(f) 200 page cap, 11(h), 11(i) log timing, 11(j) number of individuals with access, 11(j) restrictions
on how source code may be transported, and 11(l) "or order of this Court."  Merely asserting that
we are at an impasse on all remaining issues does not show Apple specifically addressed each
proposal or establish that the parties were genuinely at an impasse.  Indeed, your email last night
accepting our reading of Section 11(f) regarding the review of source code confirms the parties had
**not** previously reached an impasse.  Prior to your email, we were preparing to brief that issue.

Further, your continued suggestion that Plaintiffs are delaying the protective order is an inaccurate

**Exhibit 8**
-212-

attempt to deflect from Apple's delay.  Below is a summary of our communications on this issue, which shows Plaintiffs responded more quickly than Apple on nearly every exchange.

- **March 10**: The parties discussed the protective order.  Plaintiffs offered to provide a draft based on Judge Early's model.  Apple insisted that it would provide the first draft.  Plaintiffs understood Apple would use Judge Early's model order as a starting point.
- **March 27 (17 days later)**: Apple provided the initial draft.
- **March 31 (4 days later)**: Plaintiffs responded that Apple's draft was unacceptable because it was not based on Judge Early's model and contained non-reciprocal provisions.
- **April 2 (2 days later)**: Apple refused to provide a draft based on Judge Early's model.
- **April 6 (4 days later)**: Plaintiffs provided a draft based on Judge Early's model.
- **April 16 (10 days later)**: Apple responded to Plaintiffs' draft.
- **April 28 (12 days later)**: The parties met/conferred.
- **April 30 (2 days later)**: Plaintiffs responded to issues raised during the meet/confer and Apple's draft.
- **May 13 (13 days later)**: Apple responded to Plaintiffs' draft.
- **May 20 (7 days later)**: Plaintiffs responded to Apple's draft.
- **May 30 (10 days later)**: Apple responded to Plaintiffs' draft.
- **June 3 (4 days later)**: The parties met/conferred again.
- **June 3 (same day)**: Plaintiffs responded to issues raised during the meet/confer and in Apple's draft.
- **June 5 (2 days later)**: Apple responded to Plaintiffs.
- **June 8 (next business day)**: Plaintiffs responded to Apple.
- **June 9 (1 day later)**: The parties met/conferred again.
- **June 12 (3 days later)**: Apple responded to Plaintiffs.
- **June 13 (1 day later)**: Plaintiffs responded to Apple.
- **June 15-16 (2-3 days later)**: Apple responded to Plaintiffs.

Apple's late changes and explanations have prevented us from completing our portion of the joint stipulation.  Because Apple did not fully respond to my Saturday email until today, the parties did not reach an impasse until today.  In accordance with our prior agreement, we will provide our portion of the joint stipulation as soon as possible, but no later than Monday (four business days from when the parties reached an impasse on all issues).

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Tuesday, June 16, 2020 10:43 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen

Exhibit 8
-213-

<Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Adam,

Your contention that Apple has still not responded to the "vast majority" of issues raised in your email of Saturday is confusing and wrong.  The table below has all of the issues you raised and our responses.  As this table shows, the parties have been at an impasse on all of these issues, and that impasse was further confirmed to you by my emails yesterday.

| Provision in Saturday email | Apple's Response |
|---|---|
| **9.2(e):** This provision needs to be modified slightly to make clear that the parties can videotape depos.  We assume this won't be controversial, but please confirm Apple agrees to the following change: "(e) court reporters, <u>videographers</u>, and their staff;" | Apple responded on 6/15/20 at 7:05 a.m. Pacific agreeing with this change. |
| **9.2(g):** We accept Apple's edits. | No response was necessary because an agreement was reached. |
| **4.5:** "descriptions of source code" is too vague, especially given the strict page limits for printing.  We tried to be more specific, but Apple rejected our compromise.  We are happy to consider a more specific proposal.  Otherwise, we are at an impasse. | Apple has discussed this issue with Masimo multiple times on the phone and by email.  Apple's default PO language includes the "descriptions of source code (e.g., descriptions of declarations, function and parameters)" language because that information is extremely sensitive and reveals how the code works that deserves the same level of protection as the source code itself.  As a result, since Apple does not want to change its default language (and has stated that on at least three |

-4-

Exhibit 8
-214-

| | different occasions), Apple responded on 6/15/20 at 7:05 a.m. Pacific and stated that we were at an impasse on all remaining issues, including this one – which confirms your email that we are at an impasse. |
|---|---|
| **11(d):** We accept Apple's edits. | No response was necessary because an agreement was reached. |
| **11(f):**<br>• **Review of source code**: I don't think we have a dispute.  We deleted the language about "printed for purposes of review and analysis" because we thought it could arguably be read broadly to prevent a party from reviewing/analyzing printouts when preparing court filings and expert reports, which is inconsistent with the first sentence of this paragraph. However, I don't think that is what Apple means.  If you can confirm, we will accept Apple's change. | Apple responded on 6/15/20 at 7:05 a.m. Pacific and did not disagree<br><br>Further, at your request, we stated in our 6/15/20 email of 5:07 p.m. that we agreed with your reading of this provision. |
| **11(f):**<br>• **Printing to PDF and printing directory paths**: Your email did not address these provisions, which we included for efficiency. Please explain Apple's objection so we can try to address it. | As we have explained many times, the purpose of source code review is for the review to take place in the source code review room.  Your new request to except directory paths from the printing limits was rejected because it is inconsistent with that goal – it is clear that Masimo wants to print out the entire directory of code so it can facilitate some of its review of the code (which includes the structure of how files are grouped into file paths) outside of the source code review room.  We rejected that proposal by saying that we did not agree to any of the remaining changes in our 6/15/20, 7:05 a.m. Pacific email indicating that we are at an impasse on all remaining issues, including this one.<br><br>Similarly, your request to permit the receiving party to print PDFs is directly contrary to the previous sentence that makes it clear that the receiving party requests paper copies and later provisions that state that the producing party creates the printed copies only if the |

| | request is not objectionable or any objections are resolved.  We rejected that proposal by saying that we did not agree to any of the remaining changes in our 6/15/20, 7:05 a.m. Pacific email indicating that we are at an impasse on all remaining issues, including this one. |
|---|---|
| **11(f):**<br>• **200 page cap**: Your email did not address this provision, which was included to clarify that a party may ask the Court to increase the 200-page limit just like the 15-page consecutive limit.  Please explain Apple's objection so we can try to address it. | As we have explained many times, limiting the number of pages printed is important and 200 pages was a compromise from our original proposal of 100 that we believe to be more than sufficient.  Other provisions in the Protective order already indicate that the Court can modify the protective order; the change to add an explicit statement that the 200 page limit can be modified is thus unnecessary and also could be misconstrued as Apple agreeing that printing more than 200 pages may be necessary in this case.  Far larger cases have had smaller limits on printed pages.  And, we indicated that we rejected that proposal in our email on 6/15/20 at 7:05 a.m. Pacific that stated that we did not agree with the remaining changes, including this one. |
| **11(h):** We are troubled by Apple's deletion, which you did not mention in your email.  Our language merely confirms counsel will not violate their ethical duties.  If Apple cannot accept this language, we are at an impasse here. | Apple responded on 6/15/20 at 7:05 a.m. Pacific and did not disagree that we were at an impasse; in fact, we stated that we were at an impasse on all issues not addressed in that email.<br><br>Further, your insert does not merely<br><br>11(h) – Your additions are directly contrary to the prior two sentences which make clear that the reviewers should not have any expectation of confidentiality for materials left behind in the source code review room and to clean up.  Your addition imposes an additional burden on the producing party to contact the reviewing party and to make judgments about whether something it leaves behind is work product or not.  We think it should be easier on the producing party – the reviewing party should not leave anything behind (unless agreed to with the producing party per 11(h)).  If anything is left behind, the reviewing party should be the one that has the burden to contact the producing party. |

| 11(i): | Apple responded on 6/15/20 at 7:05 a.m. Pacific and did not disagree. |
|---|---|
| • **Names of reviewers**: We reviewed Apple's language again and can accept it as written because we understand it does not require logging specific code accessed or the particular dates/times.  Please let us know if you disagree. <br><br>• | |
| 11(i): | Apple has previously explained that a one day production of the log is important.   If one party determines that its source code has been disclosed or used contrary to the provisions of the Protective Order, to prevent harm, it is important to be able to identify everyone that has had that code ASAP and one day is reasonable and necessary to meet that end goal.  Forcing the other side to wait three days could allow widespread dissemination of the code without any way for the producing party to begin its investigation of what persons have had access to the source code. <br><br>Apple responded on 6/15/20 at 7:05 a.m. Pacific indicating that we are at an impasse on all remaining issues, including this one, which confirmed your Saturday email that indicated that you believed we were at an impasse. |
| • **Log Timing**: Under Apple's proposal, a party could request a log on Christmas eve and argue the opposing party violated the Protective Order if it does not respond on Christmas day.  That is clearly unreasonable.  If Apple continues to demand logs on one day's notice, we are at an impasse on this issue. | |
| 11(j): | Apple responded on 6/15/20 at 7:05 a.m. Pacific indicating that we are at an impasse on all remaining issues, including this one. <br><br>Apple further explained in 6/15/20 at 5:07 p.m. Pacific its position on this provision. |
| • **Number of individuals with access**: We agree to Apple's proposal, provided we clarify that it can be changed by the parties or Court if necessary.  Please let us know if Apple agrees to the following compromise: "<u>Absent agreement of the Parties or order of this Court,</u> no more than a total of fifteen (15) individuals identified by the Receiving Party shall have access to the printed portions of the Source Code (except insofar as such code | |

**Exhibit 8** <br>**-217-**

| | |
|---|---|
| appears in any court filing or expert report).  <u>The Parties agree to cooperate in good faith if it becomes necessary for more than fifteen (15) individuals to have access to the printed portions of the Source Code.</u>" | |
| **11(j):**<br>• **Restrictions on how source code may be transported**: Your email did not address this provision. Please explain Apple's objection so we can try to address it. | Apple responded on 6/15/20 at 7:05 a.m. Pacific indicating that we are at an impasse on all remaining issues, including this one.<br><br>The language is unclear in many ways.  What is "source code material"?  Is that the printed pages or something else?  The phrase "person authorized under these provisions" is also unclear.   What does "at the direction of" mean?<br><br>The PO already provides provisions on how many copies can be made and where they are to be stored and by whom. |
| **11(k):** We are at an impasse on this issue. | Apple responded on 6/15/20 at 7:05 a.m. Pacific indicating that we are at an impasse on all remaining issues, including this one. |
| **11(l):**<br>• **"Or order of this Court"**: Your email does not address this change.  If Apple maintains the Court may not order a party to file source code over the other party's objection, we are at an impasse. | Apple responded on 6/15/20 at 7:05 a.m. Pacific indicating that we are at an impasse on all remaining issue, including this one, thus, confirming we do not agree in advance that the Court may order filing source code over another party's objection. |
| **11(l):**<br>• **Name of reviewers**: We reviewed Apple's language again and can accept it as written because we understand it does not require logging specific code accessed or the particular dates/times.  Please let us know if you disagree. | Apple responded on 6/15/20 at 7:05 a.m. Pacific and did not disagree. |

We have been at an impasse on these issues, and expect to move forward with the briefing as

**Exhibit 8**<br>-218-

previously discussed.  Please confirm that we will receive Plaintiffs' portion of the joint stipulation on Thursday.

Thanks,
Ilissa
**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, June 15, 2020 8:08 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Perry Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

[External Email]
Ilissa,

Attached is our proposed protective order, with redlines showing changes from Apple's draft.  We disagree with your assertion that the parties reached an impasse on Saturday.  My Saturday email offered numerous proposed compromises and asked questions regarding Apple's position.  Your email this morning responding to some (but not all) of those issues cannot retroactively cause the parties to have reached an impasse on Saturday.  Indeed, it was only your most recent email this afternoon that established we are not at an impasse on Section 11(f) because the parties agree on that provision.

Moreover, Apple still has not responded to the vast majority of issues raised in my Saturday email.  We continue to believe the parties could resolve many of the open issues if Apple explained its position.  As of now, we do not know whether Apple rejected or failed to consider our various proposals, much less why.  Even if Apple disagrees with all our remaining proposals, Apple's refusal to explain its position, or why it is unwilling to compromise, is preventing Plaintiffs from preparing their portion of the joint stipulation.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Monday, June 15, 2020 5:07 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Adam,

The parties reached an impasse before today.  At latest, the impasse was reached with your email on Saturday.  We expect to receive your portion of the joint stipulation by Thursday.  If we receive it on Friday, it will be late in our view and not in compliance with the parties' agreed upon schedule for this filing.

On your other questions:

11(j).  Apple believes that 10 people is more than enough people to have access to its source code to limit risk of inadvertent misuse and only agreed to 15 to reach a compromise.  Masimo's added language is unnecessary (because the parties can always agree to add more and the Court could obviously modify a protective order) and its language is clearly written to suggest that more than it may be "necessary" that more than 15 people should review the code.  In extremely large cases, the parties have been able to manage within the 10 person limit and thus, Apple cannot imagine a situation in which more than 15 people will become necessary.

11(f).  We can confirm your reading of the review of source code portion.

Thanks,
Ilissa

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**-10-**

**Exhibit 8
-220-**

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, June 15, 2020 3:45 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

[External Email]
Ilissa,

We do not understand why Apple refuses to even explain its objections to Plaintiffs' proposals.  For example, we offered a very reasonable compromise on Paragraph 11(j), but Apple rejected that proposal without explanation.  We also offered to accept Apple's changes to Paragraph 11(f) regarding source code review if Apple simply confirmed it agrees with our reading of that paragraph.  Again, Apple refused.  We disagree with Apple's insistence on burdening the Court with unnecessary disputes rather than promptly responding to Plaintiffs' proposals.

We will send you our proposed protective order today and will send our portion of the joint stipulation as quickly as possible.  Because the parties did not reach an impasse until today, we reserve the right to provide our portion of the joint stipulation on Friday (4 business days after today).

Best regards,
Adam

**Adam Powell**
Partner
**858-707-4245 Direct**
**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Monday, June 15, 2020 7:06 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Adam,

We are fine with the change to 9.2(e), which is now reflected in Apple's version of the protective

**Exhibit 8**
**-221-**

order that I sent you on Friday (attached here, with that change made).

We don't understand why you need us to confirm 11(i) and 11(l)- the language does not mention recording dates/times and code reviewed.  There's no way to read the two provisions to require that information.

As I told you on Friday, Apple is ready to move forward on the briefing.  There's nothing left to continue negotiating- we are at an impasse on the remaining items.  Please send over Plaintiffs' version of the protective order as soon as possible, and Plaintiffs' portion of the joint stipulation by Thursday.

Thanks,
Ilissa

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Saturday, June 13, 2020 5:50 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

[External Email]
Ilissa,

I was driving for 6 hours yesterday.  Now that I had a chance to talk to my team, we were able to accept some of Apple's proposals and have some ideas to resolve other issues.  Thus, the parties are not yet at an impasse. We would, however, appreciate it if Apple could respond as quickly as we did (one day), rather than taking four business days like it did last time.  The sooner Apple responds, the sooner the parties can present their remaining disputes to the Court.

**Access to Confidential Material**

**9.2(e):** This provision needs to be modified slightly to make clear that the parties can videotape depos.  We assume this won't be controversial, but please confirm Apple agrees to the following

change: "(e) court reporters, <u>videographers</u>, and their staff;"

**9.2(g):** We accept Apple's edits.

**<u>Source Code</u>**

**4.5:** "descriptions of source code" is too vague, especially given the strict page limits for printing. We tried to be more specific, but Apple rejected our compromise.  We are happy to consider a more specific proposal.  Otherwise, we are at an impasse.

**11(d):** We accept Apple's edits.

**11(f):**
- **Review of source code**: I don't think we have a dispute.  We deleted the language about "printed for purposes of review and analysis" because we thought it could arguably be read broadly to prevent a party from reviewing/analyzing printouts when preparing court filings and expert reports, which is inconsistent with the first sentence of this paragraph.  However, I don't think that is what Apple means.  If you can confirm, we will accept Apple's change.
- **Printing to PDF and printing directory paths**: Your email did not address these provisions, which we included for efficiency.  Please explain Apple's objection so we can try to address it.
- **200 page cap**: Your email did not address this provision, which was included to clarify that a party may ask the Court to increase the 200-page limit just like the 15-page consecutive limit.  Please explain Apple's objection so we can try to address it.

**11(h):** We are troubled by Apple's deletion, which you did not mention in your email.  Our language merely confirms counsel will not violate their ethical duties.  If Apple cannot accept this language, we are at an impasse here.

**11(i):**
- **Names of reviewers**: We reviewed Apple's language again and can accept it as written because we understand it does not require logging specific code accessed or the particular dates/times.  Please let us know if you disagree.
- **Log Timing**: Under Apple's proposal, a party could request a log on Christmas eve and argue the opposing party violated the Protective Order if it does not respond on Christmas day.  That is clearly unreasonable.  If Apple continues to demand logs on one day's notice, we are at an impasse on this issue.

**11(j):**
- **Number of individuals with access**: We agree to Apple's proposal, provided we clarify that it can be changed by the parties or Court if necessary.  Please let us know if Apple agrees to the following compromise: "<u>Absent agreement of the Parties or order of this Court,</u> no more than a total of fifteen (15) individuals identified by the Receiving Party shall have access to the printed portions of the Source Code (except insofar as such code appears in any court filing or expert report).  <u>The Parties agree to cooperate in good faith if it becomes necessary for more than fifteen (15) individuals to have access to the printed portions of the Source Code</u>."

Exhibit 8
-223-

**Restrictions on how source code may be transported**: Your email did not address this provision.  Please explain Apple's objection so we can try to address it.

**11(k):** We are at an impasse on this issue.

**11(l):**
- **"Or order of this Court":** Your email does not address this change.  If Apple maintains the Court may not order a party to file source code over the other party's objection, we are at an impasse.
- **Name of reviewers**: We reviewed Apple's language again and can accept it as written because we understand it does not require logging specific code accessed or the particular dates/times.  Please let us know if you disagree.

Best regards,
Adam

**Adam Powell**
Partner
**858-707-4245 Direct**
**Knobbe Martens**

---

**From:** Adam.Powell
**Sent:** Saturday, June 13, 2020 12:25 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Ilissa,

Plaintiffs are not "stalling" or holding anything up.   Your email offers numerous compromises, including to Section 4.5, 9.2(g), 11(d), and 11(j).  We are also evaluating if we can accept any of your other changes based on the new justifications you provided below.  We may be able to accept some of your compromises/changes, but I need more than a few hours on a Friday afternoon to coordinate with my team.

Best regards,
Adam

**Adam Powell**
Partner
**858-707-4245 Direct**
**Knobbe Martens**

Exhibit 8
-224-

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Friday, June 12, 2020 9:48 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Adam,

I did not hear back from you on my email below.  Plaintiffs clearly are stalling on this protective order.  The parties finished meeting and conferring and Apple is ready to move forward with briefing this for the Court.  Attached is Apple's version of the protective order for the joint stipulation. Please provide Plaintiffs' version as soon as possible.

We look forward to receiving Plaintiffs' portion of the joint stipulation four business days from today.

Regards,
Ilissa
**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

**From:** Samplin, Ilissa
**Sent:** Friday, June 12, 2020 4:01 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** Re: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Adam,
I don't think your recollection of our call is accurate. In any event, where did we give you the impression that there's room for compromise? Because that wasn't our view at this point, after all

**Exhibit 8**
**-225-**

the back and forth. We are ready to get the Court's guidance at this point. Please explain why this is being held up further.

Thanks,

Ilissa

**Ilissa Samplin**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com


On Jun 12, 2020, at 3:12 PM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

 [External Email]
Ilissa,

Your recitation of our conversation is not accurate.  I told you that I hoped to be able to respond the same day if we reached a definitive impasse early in the morning.  Your proposal contains numerous changes and appears to suggest there could be room for further compromise.  Given that it took Apple four business days to respond to Plaintiffs' proposal, it is not reasonable for Apple to expect a response in just five hours.  We are reviewing your changes and will get back to you as soon as possible and, in any event, more quickly than Apple responded to Plaintiffs.  I do not anticipate we will respond today.

Best regards,
Adam


**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**


---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Friday, June 12, 2020 1:52 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Rosenthal,

Exhibit 8
-226-

Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique
<AKaounis@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective
Order

Adam- Please confirm the time we are exchanging protective orders per our call last
week.  As you will recall, you agreed you would be in a position to exchange protective
orders same day, so long as our final positions did not come in at 7 or 8 pm.  Our final
positions got to you before noon, so let's agree on a time later today.  We are ready to
go at whatever time works for you.  Thanks.

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Samplin, Ilissa
**Sent:** Friday, June 12, 2020 11:25 AM
**To:** 'Adam.Powell' <Adam.Powell@knobbe.com>; 'Perry.Oldham'
<Perry.Oldham@knobbe.com>; 'Joe.Re' <Joe.Re@knobbe.com>; 'Steve.Jensen'
<Steve.Jensen@knobbe.com>; 'Masimo.Apple' <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M.
<BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Rosenthal,
Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique
<AKaounis@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective
Order

Adam,

With respect to the source code-related provisions in sections 4.5 and 11, Masimo's
proposal does not resolve all of Apple's concerns but Apple can agree to several of the
proposed modifications, including the proposal regarding handling of CAD files.  A
proposed compromise is attached in clean and a redline showing changes using
Masimo's latest proposal.  In particular, we believe we have reached an impasse on the
following issues:

Section 4.5 – Apple cannot agree to removing the phrase "descriptions of source code
(e.g., descriptions of declarations, functions and parameters)" or imposing a burden to
produce redacted versions of all documents that contain source code discussions.  The
counter-proposal that is limited to quotations of source code is insufficient.
Descriptions of functions can be just as revealing about how the code works and that

-17-

Exhibit 8
-227-

type of information deserves the highest level of protection given how sensitive it is. The burden of producing redacted versions of all documents that reference source code is extremely high and is often impractical given that the source code description often would need to be redacted in large part to avoid imparting knowledge about how the code works.  Documents that contain descriptions of source code will be made available for review under the source code review procedures and if the description is important, Masimo can request to have it printed per the provisions in Section 11.

Section 11(d) – Apple will agree to provide the licensing software tools in 14 days but 7 is too short.  If Masimo insists on 7 days, we are at an impasse on that issue.

Section 11(f) – Masimo's changes in this section are not accepted.  Apple's language provides the full protections and language needed to be clear that the reviewing party is primarily to be reviewing source code in the review room and not printing materials for off-site, paper-based review.

Section 11(i) – Apple does not agree to remove the requirement to log who accesses the paper copies of the source code.  If there is an inadvertent disclosure of the source code, it is imperative that a log of everyone that had access exists to track down how the disclosure may have occurred.  This is not an academic issue – it has happened in other cases and the log was necessary to identify how the inadvertent disclosure occurred and how to limit harm.  We are at an impasse on this provision.

Section 11(j) – Apple can agree to limiting the number of reviewers to 15, but a limit must exist for the same reasons as above.  Having too many people reviewing the source code increases risk of inadvertent disclosure that is not acceptable.  If Masimo insists on no limit or wants a higher limit, we are at an impasse on that issue as well.

Section 11(k) –  Apple does not agree.  Asking for sections of the source code to be brought to a deposition is not a tremendous burden.

Section 11(l) – Apple does not agree for the same reasons we discussed for 11(i).  We need a log of everyone that has seen the source code.  We are at an impasse on this provision.

**Please confirm that we are exchanging final Protective Orders at 4 pm.**  5 pm also works if that is better for your team.  Please let us know soon.

Thanks,
Ilissa

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

**Exhibit 8**
**-228-**

333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Samplin, Ilissa
**Sent:** Friday, June 12, 2020 9:41 AM
**To:** 'Adam.Powell' <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Adam,

I agree with your position below.  So we are fine with your edits, so long as we make a few further non-controversial nits to make clear the point in your email below:

9.2(g): "the author, recipient, or custodian of a document containing the information, or any other individual who appears to have had access to the specific information at issue based on the face of the document, the document's metadata, or other information other documents, or sworn witness testimony."

Like I said, these should be non-controversial given that they just clarify the sentiment in your email below.  So it seems we have agreement here and can drop any dispute about Section 9.2(g).

I'll be back in touch at around 11 with our final positions on the source code document you sent over- we agree with some, and disagree with others.  Per our conversation last week about procedure, let's plan to exchange our respective versions of the competing protective orders today- how about at 4 pm PT, which gives us both a few hours to finalize before exchanging?  Please confirm that works for you.

Thanks,
Ilissa
**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

Exhibit 8
-229-

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, June 11, 2020 12:35 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

[External Email]
Ilissa,

I think it would need to be testimony that an individual had access to the information at issue, either by having access to that document or another document containing the same information.  I don't think general testimony that an individual had access to a broad category of documents alone would be enough.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Wednesday, June 10, 2020 3:06 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Adam,

Would "sworn witness testimony" have to be about the specific document at issue, or are you saying, for example, that if a witness testified that Joe saw a certain category of documents (within which the document at issue falls), that's sufficient?

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, June 9, 2020 6:10 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective

Exhibit 8
-230-

Order

[External Email]
Ilissa - I am still checking with my team on this, but here is a small change to the language we discussed today to cover situations where another document shows the individual had access.  In the interest of time, please ask your team to look at this version.

> 9.2(g): "the author, recipient, or custodian of a document containing the information, or any other individual who appears to have had access to the information based on the face of the document, the document's metadata, ~~or other information~~ other documents, or sworn witness testimony."

Thanks,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Tuesday, June 9, 2020 4:54 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Morrisson, Haley S. <HMorrisson@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Will do.  Thanks.

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

Exhibit 8
-231-

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, June 9, 2020 4:48 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Morrisson, Haley S. <HMorrisson@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

[External Email]
Sure.  Let's talk at 5pm.  Please use the following dial in number:

Phone number: 877-678-4585
Room #: 950-412-397

**Adam Powell**
Partner
**858-707-4245** Direct
**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Tuesday, June 9, 2020 4:30 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Morrisson, Haley S. <HMorrisson@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Adam,

Apologies my day got away from me.  Any chance you are free to speak within the next hour (4:30-5:30)?

**Ilissa Samplin**

**Exhibit 8 -232-**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, June 9, 2020 9:04 AM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Morrisson, Haley S. <HMorrisson@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

[External Email]
Ilissa,

It appears we are at an impasse on the other issues.  However, we are open to discussing further if you have other ideas.  My schedule is fairly open today, so please let me know if you would like to arrange a call to discuss.

Thanks,
Adam

**Adam Powell**
Partner
858-707-4245 Direct

**Knobbe** Martens

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Monday, June 8, 2020 8:25 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson

Exhibit 8
-233-

<Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Morrison, Haley S. <HMorrisson@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Adam,

Do you have a response to the other items below that do not relate to source code?  Or are we to assume that your failure to address them signals that the parties are at an impasse?

Thanks,
Ilissa

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, June 8, 2020 5:38 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Morrison, Haley S. <HMorrisson@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

[External Email]
Ilissa,

In the interest of compromise, we again attempted to redline Apple's source code provisions (Sections 4.5 and 11) in the attached document.  Please let us know if Apple agrees.  If the parties are unable to reach an agreement, we reserve the right to revert back to our prior proposals, which track Judge Early's language from the *True*

-24-                                                                        **Exhibit 8**
                                                                                **-234-**

*Wearables* case.

We continue to disagree with your suggestion that Plaintiffs are the source of any delay.  We are trying to move this forward as quickly as possible and proposed the 7-day turnaround to eliminate inequities that result from one parties' time running over a weekend.  We suggest a mutual four business-day turnaround after the parties reach an impasse on all issues.  Please let us know if Apple agrees.

Thanks,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe** **Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Friday, June 5, 2020 7:44 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Morrisson, Haley S. <HMorrisson@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Adam,

Apple's responses are in line below.

In terms of schedule, we do not understand why Plaintiffs need 7 days to prepare their submission, particularly given that the parties have been engaged in meet and confers about the issues in dispute for weeks now.  Plaintiffs are, and have been, well aware of the disputes.  We don't see any reason to continue to delay bringing this protective order to the Court's attention.  How about we compromise on 5 days per party?

Thanks,
Ilissa

**Ilissa Samplin**

**GIBSON DUNN**

**Exhibit 8
-235-**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, June 3, 2020 4:50 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Morrisson, Haley S. <HMorrisson@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

[External Email]
Ilissa and Brian,

Thank you for discussing this matter with me today.  Below is a summary of our conversation.

**Section 3**: Plaintiffs believe Judge Early will not agree with Apple's changes to his model.  We will not include Apple's edits in our draft, but we will indicate that we do not oppose the changes if the Court deems them acceptable.

As I noted on our call, we do not understand why Plaintiffs insist on having this undisputed issue eat up space in the filing.  If Plaintiffs do not oppose the changes, why not just agree to them so we can narrow the issues in dispute that the Court must consider (since there are many)?

**Section 4.5**: Plaintiffs continue to disagree with Apple's definition of "source code," as including information that is not source code.  In the interest of compromise, we could agree to the following definition of source code if it resolves this issue: "extremely sensitive 'Confidential Information or Items' representing computer code, scripts, assembly, binaries, object code, source code listings (e.g., file names and path structure), source code comments, object code listings, and Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any ASIC or other chip, disclosure of which to another Party or Non-Party is likely to cause harm or significant competitive disadvantage to the Producing Party."

Masimo's proposed compromise is still not agreeable to Apple.  First, descriptions of

**Exhibit 8**
**-236-**

source code in internal documents and emails can and often do reveal important details about how the source code operates and thus deserves the same level of protection as the source code itself.  Thus, limiting the provision to only source code comments is not sufficient.  Second, CAD files are complex sets of data that must be rendered by a CAD review tool.  Therefore, having CAD files on a source code review computer with software to render those files is the way Apple believes is most efficient and protective of the material.  CAD files do not render well into TIF or PDF and Apple will not agree to produce those files natively due to how sensitive and confidential they are.  Again, CAD files are source code in the sense that they are computer files designed to be rendered and interpreted by software and thus are source code and should be categorized as such.

**Section 5.1**: Plaintiffs agree to Apple's proposal.  The parties have no dispute on this section.

Agreed.

**Section 5.5 and 6**: Plaintiffs disagree with Apple's edits, which are inconsistent with Judge Early's model order.

We are at an impasse on this issue.

**Section 7.1**: The parties agreed to strike the sentence beginning with "The Designating Party must designate," but retain the sentences beginning with "Mass, indiscriminate" and "If it comes to a Designating Party's attention."  The parties have no dispute on this section.

Agreed.

**Section 7.2(d)**: We agree with Apple that "altered" means information that was altered after production of a native file before printing.  The parties have no dispute on this section.

Thank you for confirming.  Agreed.

**Section 8.1**: Plaintiffs explained they are proposing the parties abide by Judge Early's model to avoid disputes as to whether this paragraph imposes additional burdens beyond LR 37-1.  Please let us know if Apple agrees.

In the interest of compromise, Apple will agree to delete the additional language.  The parties now have no dispute on this section.

**Section 9.1 (1st paragraph):** Apple indicated it would agree to our changes to this section if we agreed to Apple's version of Section 5.1, which Plaintiffs have done.  Thus, the parties have no dispute on this section.

**Exhibit 8**
**-237-**

Agreed.

**Section 9.1 (2nd paragraph)**: Plaintiffs disagree with Apple's edits, which impose burdens beyond those required by U.S. Export Administration Regulations.  For example, Apple's proposal would prevent the parties from using a Canadian national who lives in the U.S. as an expert, or taking depositions in Canada.  We understand Apple's concern is that it wants an opportunity to object if it believes Plaintiffs will misinterpret U.S. Export Regulations.  As a compromise, we could agree to add the following to the end of our proposal if it resolves the issue: "Before exporting Designating Material or providing Designating Material to a foreign national, the Receiving Party will provide notice to the Producing Party of the country and/or foreign national to which it intends to export information to allow the Producing Party an opportunity to object.  If the parties are unable to agree, the Producing Party may move the Court for a protective order."  Please let us know if Apple agrees.

Apple does not agree.  Your proposal places the burden on Apple if there is disagreement, which we believe is inconsistent with the export regulations.  Perhaps if Plaintiffs would tell us more about what they plan to do that would run afoul of Apple's proposed language, we could work out a compromise here.  But in the absence of additional information, we are going to need to insist on Apple's proposed language.

**Section 9.2 (b)**: Plaintiffs disagree with Apple's edits, which are inconsistent with Judge Early's model order.

We are at an impasse on this issue.

**Section 9.2 (c)**: The parties agreed to use the term "person" instead of "Person" in the "Pre-Access Disclosure Requirements" section to avoid ambiguity since "Person" is undefined.  The parties agreed to Plaintiffs' other edits in subparagraph (iv).  The parties disagree on Apple's proposal regarding an ongoing disclosure requirement.

In the interest of compromise, Apple will drop the ongoing disclosure requirement.  The parties now have no dispute on this section.

**Section 9.2(f)**: As discussed, this provision is necessary because Consilio indicated it intends to work for Apple in this case even though it worked for Plaintiffs in the True Wearables case.  You agreed to ask Apple whether it will use Consilio in this case.

We disagree with this provision.  As noted previously, we have never seen a provision like this before and we do not believe this is a protective order issue.  Vendors work across parties all the time.  Can you please provide authority for the provision you are requesting?

**Section 9.2(g)**: Plaintiffs suggest the following compromise if it resolves the issue: "the

**Exhibit 8**
**-238-**

author, recipient, or custodian of a document containing the information, or any other individual who appears to have had access to the information based on the face of the document, or the document's metadata, or other information."  Please let us know if Apple agrees.

With the edits in red above, Apple will compromise on this approach.  Apple cannot agree to the "or other information" language, which continues to present the same problem we raised on our call that prompted these edits (i.e., it must be discernable from the face of the document or the document's metadata, otherwise it is impossible to police).

**Section 9.2(h)**: Plaintiffs explained that this paragraph (which is in Judge Early's model) applies only to "Confidential" information and not AEO or Source Code information. Please let us know if Apple agrees to Plaintiffs' proposal.

We are at an impasse on this issue.

**Section 9.3**: Plaintiffs disagree with Apple's edits.

We are at an impasse on this issue.

**Section 10**: Plaintiffs disagree with Apple's edits

We are at an impasse on this issue.

**Section 11**: Plaintiffs disagree with Apple's edits

We are at an impasse on this issue.

**Section 14**: Plaintiffs agree to change "designate" to "maintain."  The parties have no dispute on this section.

Agreed.

**Section 16.5:** Plaintiffs continue to object to this paragraph as overbroad.  Plaintiffs are willing to agree that the Protective Order applies to the Parties, anyone who obtains access to the Protected Material, and their successors.  Please let us know if Apple agrees.

In the interest of compromise, Apple will agree to Plaintiffs' proposal.  The parties now have no dispute on this section.

**Section 16.7:** Plaintiffs explained that their edits are necessary because some disputes with third parties (e.g., a motion to quash a subpoena) may need to be resolved in other jurisdictions.  We suggested the parties agree that disputes between the parties

**Exhibit 8**
**-239-**

be resolved by the Central District.  Please let us know if Apple agrees.

In the interest of compromise, Apple will agree to Plaintiffs' proposal.  The parties now have no dispute on this section.

**Section 16.8**: Plaintiffs explained that this provision is problematic because the Protective Order changes many discovery rules.  For example, the Protective Order provides more protection for inadvertently produced privileged information.  Please let us know if Apple agrees to remove this paragraph.

Apple disagrees with Plaintiffs' position.  Nonetheless, in the interest of compromise, Apple will agree to drop this provision.  The parties now have no dispute on this issue.

**Section 17 (first sentence)**: Plaintiffs' proposal is consistent with Judge Early's model and avoids disputes as to when exactly "Final Disposition" occurred.  Apple agreed to consider our proposal.

We do not understand the insistence on written notice.  This seems to be an effort to elevate form over substance, and to impose unnecessary burdens on *all parties*, who already know that they will want their highly sensitive information, including source code, returned or destroyed at the end of this action.  We ask you to reconsider this issue, particularly in light of how many compromises we have made above.  If you will not reconsider dropping the written notice requirement, we will have to brief this issue too.

**Section 17 (source code)**: Plaintiffs asked for Apple's position on this change, which is intended to use the defined term in order instead of the undefined term "Source Code."  You thought this change seemed fine, but will follow up.

This is fine.  The parties have no dispute on this issue.

Please let us know Apple's position on these issues by close of business tomorrow.  We will similarly agree to respond to any remaining issues in one business day.  When the parties reach an impasse on all remaining issues, we suggest Plaintiffs provide their portion of the joint stipulation within 7 days, Apple respond with its portion within 7 days, and the parties file the motion the next day.  Please let us know if Apple agrees.

Thanks,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

**Exhibit 8**
**-240-**

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Tuesday, June 2, 2020 7:30 PM
**To:** Adam Powell <Adam.Powell@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Lyon, H. Mark
<MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker,
Brian M. <BBuroker@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>;
Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen
<Steve.Jensen@knobbe.com>; Morrisson, Haley S. <HMorrisson@gibsondunn.com>;
Joe.Re <Joe.Re@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>;
Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** Re: Masimo v. Apple: follow up from March 10 call - Proposed Protective
Order

Speak to you then.

**Ilissa Samplin**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com


On Jun 2, 2020, at 6:33 PM, Adam.Powell <Adam.Powell@knobbe.com>
wrote:

 [External Email]
9am works for me.  Please use the dial in number below.

Phone number: 877-678-4585
Room #: 950-412-397


Best regards,
Adam


**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Tuesday, June 2, 2020 5:51 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>

**Exhibit 8
-241-**

**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Morrisson, Haley S. <HMorrisson@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>

**Subject:** Re: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

I am tied up at 10.  Can we speak at 9?

**Ilissa Samplin**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com


On Jun 2, 2020, at 5:45 PM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

 [External Email]
Ilissa,

I think many of these issues are more easily addressed over the phone.  Are you available to talk at 10am pacific tomorrow?  If not, please let me know when you are available.

Thanks,
Adam

**Adam Powell**
Partner

**858-707-4245 Direct**

**Knobbe Martens**

_____

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>

**Exhibit 8**
**-242-**

**Sent:** Saturday, May 30, 2020 10:27 AM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Morrisson, Haley S. <HMorrisson@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Adam:

Here is a summary of our comments to your edits.  You are correct that there are many areas where the parties have reached an impasse, but I've flagged where Apple is willing to compromise to narrow issues in dispute and I am hopeful that Plaintiffs will do the same, so that we can tee up a limited number of key disputes for the Court.  While we recognize that the process has delayed on both sides, we would appreciate if you could do your best to get back to us by COB on Tuesday, June 2 (if not before) on the below so that we can move this forward expeditiously since the process has dragged on long enough.  Thank you.

PO Section 3:  Apple disagrees with Plaintiffs' deletion.  This case will involve the production of source code, trade secrets, and highly confidential and competitive information.  The designation of such materials shall raise a presumption of good cause for filing under seal—and, quite frankly, we are surprised that Plaintiffs would want this any other way.

PO Section 4.5:  Apple disagrees with Plaintiffs' edits.  Is the issue here CAD files and associated limitations on printing?  If that's the issue, let's discuss, as it seems the parties should be able to resolve this dispute if so.

PO Section 5.1:  Apple disagrees with Plaintiffs' edits.  Apple's language tracks the N.D. Cal's MPO for cases involving patents and trade secrets.  Apple's language also

Exhibit 8
-243-

reflects the standard scope of protective orders in nearly all cases—i.e., protected material should be used or disclosed only for purposes of prosecuting, defending, or attempting to settle the *present* litigation.

PO Sections 5.5 & 6:  It seems silly to spend time arguing about how confidential material shall be handled at trial.  In the interest of efficiency, we suggest that the parties drop the provisions pertaining to treatment at trial and agree to Paragraph 3 from the N.D. Cal's MPO for cases involving patents and trade secrets:  "Any use of Protected Material at trial shall be governed by a separate agreement or order."  The parties will reserve all their rights with respect to treatment at trial; we will just agree to defer the issue for now, to be taken up in a separate agreement or order down the road.

PO Section 7:  Apple will not agree to the following language, which is incredibly burdensome and unprecedented in a case involving a high volume of ESI:  "The Designating Party must designate for protection only those parts of material, documents, items or oral or written communications that qualify so that other portions of the material, documents, items or communications for which protection is not warranted are not swept unjustifiably within the ambit of this order."  Again, we do not understand why Plaintiffs would want to take on this immense burden with respect to every piece of ESI flagged for production by Plaintiffs in this case.

If a provision of this type is important to Plaintiffs, Apple will agree to the following compromise provision, limited to written discovery responses:

Partial Designation of Written Discovery.  Where only certain information in a written discovery response meets the requirements for the confidentiality designations listed in Paragraph ___, the Producing Party may so designate that information by marking the first page of the document and every page on which confidential information appears as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – SOURCE CODE," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  If only a portion of a page contains Protected Material, the Producing Party must produce two copies of the discovery response – one with the Protected Material redacted, and one with the pages containing Protected Material marked "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – SOURCE CODE,"

**Exhibit 8**
**-244-**

or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

PO Section 7.2(b):  Apple is willing to accept Plaintiffs' edits.

PO Section 7.2(d):  Apple is generally willing to accept Plaintiffs' edits – but we should make sure we are on the same page of the meaning of "altered."  Sometimes documents are modified in the natural course of an email exchange.  We assume that would *not* be covered by the definition of "altered"—and that by "altered" you mean modified or changed by the litigators for purposes of the deposition or proceedings.  But please clarify if that was not your intent.

PO Section 8.1:  What is the rationale for deleting the requirement that the parties identify the documents or information that they contend should be differently designated and the ground for the objection?  Isn't that the nature of a good faith meet and confer?  Without such information, there would be no possible way for the parties to even attempt to resolve the issue without court intervention.

PO Section 9.1:
- First paragraph:  Apple can only agree to Plaintiffs' edits here if Plaintiffs drop their edits to Section 5.
- Second paragraph:  We are confused by the edits.  Apple's data needs to stay in the United States and be subject to U.S. export controls.  Are Plaintiffs pushing back because they intend to export Apple data?
- Fourth paragraph:  Apple is willing to accept Plaintiffs' edits.

PO Section 9.2(b):  Apple disagrees with Plaintiffs' edits.

PO Section 9.2(c):
- Apple is willing to accept Plaintiffs' proposed language about an expert's staff.
- Apple rejects Plaintiffs' substitution of "expert" for "person" (please share the rationale here, because it doesn't make sense to us).
- Apple is willing to accept Plaintiffs' "past five years" language addition.
- Apple is willing to compromise with the following change to the language Plaintiffs struck:  During the

Exhibit 8
-245-

pendency of and for a period of one (1) year after the Final Disposition of this action, the Party seeking to disclose Protected Material shall immediately provide written notice of any change with respect to the Person's involvement in the design, development, operation, or patenting of non-invasive physiological monitoring technologies, or the acquisition of intellectual property assets relating to non-invasive physiological monitoring technologies.

PO Section 9.2(f):  Apple disagrees with Plaintiffs' edits.  We have never seen any language like this before, are not aware of any precedent for it, and do not see a reason why it should be entered in this case.

PO Section 9.2(g):  Apple is willing to accept the red portion of the following language Plaintiffs added; Apple will not agree to the black portion of the language Plaintiffs added (it would be impossible to discern):  the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

PO Section 9.2(h):  Apple disagrees with Plaintiffs' edits.  This appears to be a blatant attempted end run around other provisions.  Why would we agree to let, for example, third parties see Apple source code simply because they sit for a deposition and sign a PO?  This is another provision of the type we have never seen before and we are not aware of any precedent for it.

PO Section 9.3:  Apple disagrees with Plaintiffs' edits.

PO Section 10:  Apple disagrees with Plaintiffs' edits.

PO Section 11:  Apple disagrees with Plaintiffs' edits.

PO Section 12 (intro para):  Apple is willing to accept Plaintiffs' edits.

PO Section 12 (c):  Apple is willing to accept Plaintiffs' edits.

PO Section 14:  Apple is willing to accept Plaintiffs' edits if we can agree to change "designate" to "maintain" ("designate" seems to impose a new obligation, whereas this provision is

Exhibit 8
-246-

talking about the right to maintain a prior designation despite any inadvertent disclosure).

<u>PO Section 16.5</u>:  Apple disagrees with Plaintiffs' deletion.

<u>PO Section 16.6</u>:  Apple is willing to accept Plaintiffs' deletion.

<u>PO Section 16.7</u>:  Can you please explain the rationale here?  It seems more efficient for everyone to agree that the same Court hearing this case and entering the Protective Order will have jurisdiction over disputes that arise under that Protective Order.  What are we missing?

<u>PO Section 16.8</u>:  Can you please explain Plaintiffs' concern here?  All this provision says is that the discovery rules remain unchanged.  Unless we are missing something, that seems to be in everyone's' interest.

<u>PO Section 17</u>:  Apple is willing to accept Plaintiffs' modification to 60 days if Plaintiffs will remove the written notice requirement.  We already know that the parties are going to be producing sensitive documents that they will want destroyed or returned at the end of the litigation.  Why require the formality of a written request to trigger return or deletion?  Automatic return or deletion is standard, including under the N.D. Cal's MPO for cases involving patents and trade secrets.

Thanks,
Ilissa

**Ilissa Samplin**

### GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
<u>ISamplin@gibsondunn.com</u> • <u>www.gibsondunn.com</u>

---

**From:** Kaounis, Angelique
**Sent:** Friday, May 29, 2020 7:36 PM
**To:** Adam.Powell <<u>Adam.Powell@knobbe.com</u>>
**Cc:** Lyon, H. Mark <<u>MLyon@gibsondunn.com</u>>; Lerner, Joshua H. <<u>JLerner@gibsondunn.com</u>>; Samplin, Ilissa

Exhibit 8
-247-

<ISamplin@gibsondunn.com>; Buroker, Brian M.
<BBuroker@gibsondunn.com>; Perry.Oldham
<Perry.Oldham@knobbe.com>; Stephen.Larson
<Stephen.Larson@knobbe.com>; Steve.Jensen
<Steve.Jensen@knobbe.com>; Morrison, Haley S.
<HMorrison@gibsondunn.com>; Joe.Re
<Joe.Re@knobbe.com>; Masimo.Apple
<Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Hi Adam,
Thanks for your email.  We plan to get back to you this weekend.
Have a nice weekend.
Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, May 28, 2020 5:30 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Buroker, Brian M.
<BBuroker@gibsondunn.com>; Perry.Oldham
<Perry.Oldham@knobbe.com>; Stephen.Larson
<Stephen.Larson@knobbe.com>; Steve.Jensen
<Steve.Jensen@knobbe.com>; Morrison, Haley S.
<HMorrison@gibsondunn.com>; Joe.Re
<Joe.Re@knobbe.com>; Masimo.Apple
<Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

[External Email]
Angelique,

I am writing to check on the Protective Order.  Please let us

Exhibit 8
-248-

know when Apple expects to provide its response.

Thanks,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe** Martens

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, May 20, 2020 5:17 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Morrisson, Haley S. <HMorrisson@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Angelique,

Attached are our edits to the Protective Order after accepting Apple's redlines.  The parties may have reached an impasse on some issues, but we hope the parties can agree on other issues to narrow the dispute.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe** Martens

---

**From:** Adam.Powell
**Sent:** Tuesday, May 19, 2020 5:44 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Samplin, Ilissa

<ISamplin@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Morrisson, Haley S. <HMorrison@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>

**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Angelique,

We will respond as soon as we can.  We note that Apple took 13 days to respond to our last draft, but you sent this email only 5 days after Apple sent its draft to Plaintiffs.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Monday, May 18, 2020 8:19 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Morrisson, Haley S. <HMorrisson@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>

**Subject:** FW: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Adam,
I am writing to follow up on the below email and attached draft PO.   Can you please let us know when we should expect Plaintiffs' responses to our comments?
Thanks very much,

Exhibit 8
-250-

Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Kaounis, Angelique
**Sent:** Wednesday, May 13, 2020 1:50 PM
**To:** 'Adam.Powell' <Adam.Powell@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Morrisson, Haley S. <HMorrisson@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Adam,

Below please find Apple's responses to Plaintiffs' last redlined draft of the stipulated protective order.  We have accepted many of Plaintiffs' suggested edits and also proposed compromise language in several cases.  However, there are some provisions for which Apple does not agree to Plaintiffs' suggested edits.  As to those, we request that Plaintiffs revisit their position and state if there is any compromise they are willing to accept, and if so, the terms of that proposed compromise.
Thanks very much,
Angelique

| PO | Plaintiffs' Proposal | Apple's Response |
|----|---------------------|------------------|
| 1 | Plaintiffs changed wording to clarify that the PO applies to disclosures under Rule 26. | Apple accepts Plaintiffs' edit. |

**Exhibit 8**
**-251-**

| 2 | Plaintiffs inserted "or any applicable authority" to clarify that a protective order can be entered pursuant to Rule 26(c) or "any applicable authority." | Apple accepts Plaintiffs' edit. |
|---|---|---|
| 3 | Plaintiffs deleted section about designation of Source Code or AEO material as being presumptively good cause for filing under seal.  Plaintiffs also added paragraph regarding filing under seal for dispositive motions or trial. | Apple accepts Plaintiffs' edits, with Apple's modifications— i.e., (1) deleting the "compelling reasons" language in the first paragraph since we think it can be read to imply a higher burden w/r/t non-dispositive motions; (2) rejecting the proposed deletion of the source code language; and (3) adding "in connection with a dispositive motion or trial" to the second paragraph to clarify. |
| 4.4 | Plaintiffs deleted the word "economic" before the word "harm" in the definition of AEO material. | Apple accepts Plaintiffs' edit. |
| 4.5 | Plaintiffs modify the definition of "Highly Confidential - Source Code."  Plaintiffs also deleted the word "economic" before the word "harm" as they did in paragraph 4.4. | Apple agrees to delete the word "economic" before the word "harm."  Apple does not agree to the |

**Exhibit 8**

| | | modification of the definition of "source code" and asks Plaintiffs to reconsider Apple's original definition. |
|---|---|---|
| 4.12 & 4.13 | Plaintiffs removed the qualifiers "to whom it is reasonably necessary to disclose the information for this litigation" when discussing which support staff should have access to protected materials. | Apple accepts Plaintiffs' edits. |
| 5.1 | Plaintiffs modified the scope of the PO so that any protected materials could be used in "other cases or proceedings involving the parties." | Apple does not accept Plaintiffs' suggested edits and requests that Plaintiffs reconsider Apple's original language. Apple's original language restricted use of protected material to this case and any affiliated appeals, and prohibited use of the documents in patent prosecutions, reexaminations, or any other competitive purpose. This is a standard provision. |

Exhibit 8
-253-

| | | |
|---|---|---|
| 5.3 | Plaintiffs included new language (in red): "Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material to any person for any purpose." Plaintiffs deleted the following stricken language: "Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material for any purpose, and nothing in this Order shall preclude any Producing Party from showing its Protected Material to an individual who prepared the Protected Material." | Apple accepts Plaintiffs' edit. |
| 5.4 | Plaintiffs suggested new language: "This Order does not preclude any Party or Non-Party from using Protected Material for any purpose with the consent of the Producing Party or by order of the Court." | Apple would be willing to accept this language if "for any purpose" is deleted. |
| 5.5 (paragraph 1) | Plaintiffs make various word changes to this paragraph, which deals with the ability of the parties to ask the Court to modify the PO. | Apple accepts Plaintiffs' edits. |
| 5.5 (paragraph 2) | Plaintiffs insert the following two sentences: "Any use of Protected Material at trial shall be governed by the orders of the trial judge and other applicable authorities. This Order does not govern the use of Protected Material at trial." | Apple does not agree to Plaintiffs' insertion of this paragraph. This provision can be read to suggest that the PO would not govern protected |

Exhibit 8
-254-

| | | material once the parties got to trial. |
|---|---|---|
| 6 | Plaintiffs modify this paragraph, which governs the duration of the PO, to include the following: "Once a case proceeds to trial, information that was designated or maintained pursuant to this protective order used or introduced as an exhibit at trial becomes public and will be presumptively available to all members of the public, including the press, unless compelling reasons supported by specific factual findings to proceed otherwise are made to the trial judge. *See Kamakana*, 447 F.3d at 1180-81 (distinguishing "good cause" showing for sealing documents produced in discovery from "compelling reasons" standard when merits-related documents are part of court record)." | Apple proposes the following compromise language: "The Party seeking admission of any protected material into evidence at trial shall be required to satisfy applicable filing under seal requirements of the trial court for any information that was designated or maintained pursuant to this protective order that is used or introduced as an exhibit at trial." |
| 7 | Plaintiffs modify this provision (at 7.1), which governs the designation of protected material, to include the following: "==Exercise of Restraint and Care in Designating Material for Protection==. ==Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under== | Apple proposes the following compromise language (same as highlighted): "Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates |

| | | | |
|---|---|---|---|
| | | the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items or oral or written communications that qualify so that other portions of the material, documents, items or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.  Mass, indiscriminate or routinized designations are prohibited.  Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.  If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation." | information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions." |
| 7.2(b) | Plaintiffs change the requirements for how deposition transcripts should be designated when they involve protected material and delete language precluding certain individuals from attending a deposition. | Apple does not accept Plaintiffs' edits. Apple's language is important for ensuring that anyone who picks up the transcript or |

| | | reviews the video of the deposition is fully aware that it has been designated as protected. It also contains important provisions regarding the exclusion of individuals from the deposition who do not have authority to access protected material. However, we are willing to modify Apple's language slightly (as shown in the attached) so that the phrase "shall be marked" instead says "shall be designated pursuant to the terms of this Protective Order and identified . . ." |
|---|---|---|
| 7.2(d) | Plaintiffs deleted this paragraph concerning production and use of electronic files, stating that they believe it was covered by the ESI stipulation. | Apple will agree to delete the first sentence of this paragraph ("for electronic files . . . . produced in |

| | | electronic format") because that is in the ESI stip. However, we need to keep Apple's language for the rest of the paragraph.  The ESI stipulation does require the parties to include "confidential" in the file name of a native file that is confidential – but nothing else in this paragraph (starting with "When electronic files or documents are printed for use at deposition…") is in the ESI stip.  Restrictions on the use of files at depo and the rest of the paragraph are properly (and traditionally) in a PO, so they should not be removed. |
|---|---|---|
| 7.3 (mislabeled as 7.2) | Plaintiffs deleted what was formerly paragraph 16, which also dealt with inadvertent | Apple cannot accept Plaintiffs' |

Exhibit 8
-258-

| | | |
|---|---|---|
| | failures to designate protected materials, and consolidated the paragraph here. | proposal wholesale because the proposal omits important language from Apple's Model. Please see proposed compromise language in attached document. |
| 7.3 (mislabeled as 7.2) | Plaintiffs deleted a paragraph regarding when a Receiving Party is in possession of materials that the Producing Party inadvertently failed to previously designate as such. | Apple does not accept Plaintiffs' proposed deletion and requests that Plaintiffs reconsider Apple's original language. |
| 8.1-8.2 | Plaintiffs modified the dispute procedures to delete some of the language that came from Apple's PO, stating that L.R. 37-1 already covered disputes. | Apple's language and L.R. 37-1 are complementary and Apple's language serves to clarify and bolster L.R. 37-1's purpose. Nonetheless, Apple proposes the following compromise language: "Any challenge to a designation of Discovery Material under this Order shall comply with the procedures set forth in |

| | | Local Rule 37-1 and shall particularly identify the documents or information that the Receiving Party contends should be differently designated, and shall state the grounds for the objection." ~~"If the parties are unable to resolve the challenge,~~ ~~tThe~~It shall be the responsibility of the Challenging Party to~~shall~~ initiate the dispute resolution process under Local Rule 37-1 et seq." |
|---|---|---|
| 9.1 (second paragraph) | Plaintiffs deleted provisions referring to export regulations. | Apple does not agree to Plaintiffs' deletion of these provisions and requests that Plaintiffs reconsider Apple's original language. These are standard provisions that |

**Exhibit 8**
**-260-**

|  |  | address legitimate security concerns. |
|---|---|---|
| 9.1 (third paragraph) | Plaintiffs re-word Apple's language regarding restrictions on the use of material that a Receiving Party obtains from a source other than the Producing Party in this litigation. | Apple does not agree to Plaintiffs' proposed language and requests that Plaintiffs reconsider Apple's original language. Plaintiffs' language would invite more disputes than Apple's, which is more specific than Plaintiffs'. |
| 9.2(b) | Plaintiffs suggest a revision as to who has access to protected material. | Apple does not agree to Plaintiffs' proposed language and requests that Plaintiffs reconsider Apple's original language. |
| 9.2(c) | Plaintiffs revise the requirements for experts' access to protected materials. | Apple does not agree to Plaintiffs' proposed language and requests that Plaintiffs reconsider Apple's original language. Plaintiffs' proposed language is too vague in certain |

| | | |
|---|---|---|
| | | areas, does not include the provision of information that is critical to Apple (e.g., the person's current employer and title), does not include patent prosecution and other proceedings, does not include time limits for objections, etc. It also deletes the requirement that the expert is not presently an officer, director, employee of a Party or of a competitor of a Party and deletes the requirement for disclosures related to patents of that expert. |
| 9.2(g) | Plaintiffs added language allowing the author or recipient of a document containing protected material to be shown the material. | Apple does not agree to Plaintiffs' proposed language for the reasons discussed on our call. |
| 9.2(h) | Plaintiffs added language allowing anyone to be shown | Apple does not agree to |

Exhibit 8
-262-

| | | |
|---|---|---|
| | protected material during a deposition so long as they agreed to be bound by the PO. | Plaintiffs' proposed language.  This language does not provide any mechanism for the producing party to have an opportunity to object to disclosure to an individual that should not see the producing party's confidential information, like someone that is a competitive decision-maker with a competitor or supplier. |
| 9.3 | Plaintiffs modified who can see AEO material to those who are not "competitive decision-makers of a Party." | Apple does not agree to Plaintiffs' proposed language and requests that Plaintiffs reconsider Apple's original language. |
| 10 | Plaintiffs revised the prosecution bar language. | Apple does not agree to Plaintiffs' proposed language and requests that Plaintiffs reconsider Apple's original language. Plaintiffs' |

| | | proposed language does not adequately protect Apple from the risk of misuse of its confidential information during acquisitions, during post-grant proceedings and other circumstances as compared to Apple's proposed provision. |
|---|---|---|
| 11 | Plaintiffs revise the paragraph regarding Source Code. | As a compromise and to address Plaintiffs' articulated concern, Apple proposes a modification for the amount of source code that can be printed (15 consecutive pages and 200 pages in the aggregate).  As to the rest of Plaintiffs' proposed language, Apple does not agree to it and requests that Plaintiffs reconsider Apple's original |

Exhibit 8
-264-

| | | language. |
|---|---|---|
| 12 | Plaintiffs revision:  "If a Party is served with a ~~subpoena by any court, arbitral, administrate or legislative body~~ or a court order issued in other litigation that ~~requests or~~ compels disclosure of any Protected Material, that Party must . . ." | Apple does not agree to Plaintiffs' proposed language and request that Plaintiffs reconsider Apple's original language.  The stricken language is important.  Apple needs to know if a party is served with a discovery request in an arbitration, for example. |
| 12(c) | Plaintiffs deleted a requirement that the designating party seek a protective order within 10 days of a full written notice of subpoena. | Apple does not agree to Plaintiffs' proposed edit.  This provision encourages the Designating Party to act diligently. |
| 14 | With respect to the unauthorized disclosure of protected material, Plaintiffs propose adding the following revisions to subsection (d) and the sentence after that: ". . . (d) request such person or persons to execute the "Acknowledgment an Agreement to Be Bound" attached hereto as Exhibit A.  A Receiving Party's unauthorized or inadvertent disclosure does not change the status of Discovery Material or | Apple accepts the addition of subsection (d), but does not agree to the alterations in the last sentence. |

| | alter a Producing Party's waive the right to designate hold the disclosed document or information as Protected Material." | |
|---|---|---|
| 16 | Plaintiffs attempted to incorporate this paragraph into paragraph 7.3 discussed above. | Apple will agree to delete this provision only if Plaintiffs incorporate the missing provisions into paragraph 7. Please see response regarding paragraph 7.3. |
| 17.5 & 17.6 | Plaintiffs delete these paragraphs. | Apple does not agree to Plaintiffs' wholesale deletion of these paragraphs. |
| 16.5 (formerly 17.7) | Plaintiffs deleted a provision designated C.D. Cal. as the jurisdiction responsible for interpreting and enforcing the PO. | Apple does not agree to Plaintiffs' deletion of these standard sentences. |
| 17.8 | Plaintiffs deleted the provision that states that nothing in the PO modifies the discovery rules. | Apple does not agree to Plaintiffs' deletion of this paragraph. This is in the PO for clarity and should remain. |
| 17 (formerly 18) | Plaintiffs modify the disposition of records so that the requirement is triggered only when a Designating Party serves a written request, rather than automatically | Apple does not agree to Plaintiffs' proposed language and requests that |

Exhibit 8
-266-

| | after final disposition. | Plaintiffs reconsider Apple's original language. |
|---|---|---|
| 17 (formerly 18), penultimate sentence | Plaintiffs modified this provision so that experts are only required to return or destroy any material that is designated as "HIGHLY CONFIDENTIAL - SOURCE CODE." | Apple does not agree to Plaintiffs' proposed language and requests that Plaintiffs reconsider Apple's original language. Apple's language required return of any materials that qualified as "Source Code." This would include, for example, notes that the expert took of source code. |

Angelique Kaounis

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, April 30, 2020 12:42 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson

<Stephen.Larson@knobbe.com>; Steve.Jensen
<Steve.Jensen@knobbe.com>; Joe.Re
<Joe.Re@knobbe.com>

**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

[External Email]
Angelique,

Attached are our edits to the Protective Order.  Please let us know if you have any questions.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe** Martens

---

**From:** Adam.Powell
**Sent:** Tuesday, April 28, 2020 12:47 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Angelique,

We disagree with your email below.  We identified numerous problems with Apple's prior draft.  Apple added much of that same language to Plaintiffs' draft without even discussing the matter with Plaintiffs.  By contrast, we are trying to understand your changes and possibly reach an agreement before outright rejecting the changes.  We look forward to discussing these issues at 3:30pm.  Please use the dial in number below:

Phone number: 877-678-4585

**Exhibit 8**
**-268-**

Room #: 950-412-397

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Tuesday, April 28, 2020 8:49 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Adam,
Thanks for your email.  We can speak at 3:30 pm Pacific today.  Please circulate a dial-in.
The record is clear regarding the history of this meet and confer.  Plaintiffs were unwilling even to comment on two versions of the draft Protective Order that Apple previously sent.  After we sent you a mark-up of Plaintiffs' draft, Plaintiffs still appear to be unwilling to mark up that draft.
Apple reserves all rights.
Thanks,
Angelique

**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, April 27, 2020 8:11 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

[External Email]
Angelique,

Thank you for your email.  We note that Apple took 17 days to provide the initial draft protective order on Friday, March 27.  We responded two business days later asking Apple to use Judge Early's order as a model.  When Apple refused, we prepared a draft based on Judge Early's model and sent it to Apple promptly on April 6.  Apple then took 10 days to provide its edits.  The edits Apple provided contain extensive changes, most of which appear problematic.  We started redlining edits, but it ended up changing most of the draft back to the way we had it.  The parties will likely need to submit competing proposals, but we would like to meet one more time to try to understand why Apple made a number of changes and see if we can reach an agreement.  Please let us know when you are available to talk over the next few days.  I am generally free after 3pm on Tuesday or Wednesday.

Best regards,
Adam

**Adam Powell**
Partner
**858-707-4245 Direct**
**Knobbe Martens**

Exhibit 8
-270-

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Monday, April 27, 2020 2:41 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call - Proposed Protective Order

Adam,
It has been 11 days since we sent you Apple's redline of the proposed Protective Order.  When will Plaintiffs be providing responses to our comments?
Thanks very much,
Angelique

Angelique Kaounis

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Kaounis, Angelique
**Sent:** Thursday, April 16, 2020 9:00 PM
**To:** 'Adam.Powell' <Adam.Powell@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

Adam,

Thanks for your letter, which per my below email is

premature since as promised, I am attaching Apple's redlines to the proposed protective order you sent us. Please review this draft and provide comments to this draft—something Plaintiffs were unwilling to do with regard to either of the drafts we sent you on March 27 and April 3.  After you have reviewed and commented on the draft, we would be happy to set up a meet and confer to discuss next week.

In the meantime, in my brief review of your letter, I noted that you have once again misstated the facts of our meet and confer call on March 10.  During that call, we specifically raised the fact that we would provide a draft PO based on our/Apple's experience, and that it would be faster if we provided that to you first.  In response, someone from your side requested that we take into consideration any material provisions from Judge Early's Model Order, which we did.  Apple reserves all rights to further respond to your letter and to make additional edits to the draft PO.

Thanks very much,
Angelique


**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, April 16, 2020 6:21 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

Exhibit 8
-272-

[External Email]
Angelique,

Please see my attached letter.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Wednesday, April 15, 2020 10:39 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

Adam,
Thanks for your email.  We expect to send you a redlined draft in the next day or so.
Thanks,
Angelique

**Angelique Kaounis**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, April 15, 2020 3:44 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>

**Exhibit 8**
-273-

**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner,
Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M.
<BBuroker@gibsondunn.com>; Samplin, Ilissa
<ISamplin@gibsondunn.com>; Perry.Oldham
<Perry.Oldham@knobbe.com>; Stephen.Larson
<Stephen.Larson@knobbe.com>; Steve.Jensen
<Steve.Jensen@knobbe.com>; Joe.Re
<Joe.Re@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

[External Email]
Angelique,

We are writing to follow up on your email below.  Please let
us know when you expect to send us the draft protective
order.

Best regards,
Adam

**Adam Powell**
Partner

**858-707-4245 Direct**

**Knobbe** **Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Thursday, April 9, 2020 12:11 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner,
Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M.
<BBuroker@gibsondunn.com>; Samplin, Ilissa
<ISamplin@gibsondunn.com>; Perry.Oldham
<Perry.Oldham@knobbe.com>; Stephen.Larson
<Stephen.Larson@knobbe.com>; Steve.Jensen
<Steve.Jensen@knobbe.com>; Joe.Re
<Joe.Re@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

Adam,

Thanks for your email.  As explained in my prior email,
we stated on the March 10 call that Apple had a model PO
that we would modify for purposes of this case.  We did,
including by considering the provisions of Judge Early's
model PO.  Rather than comment on Apple's draft,
Plaintiffs simply rejected it.  When we attempted to

**Exhibit 8**
**-274-**

address Plaintiffs' articulated concern regarding reciprocity of the patent prosecution bar, Plaintiffs still refused to comment on Apple's draft—instead insisting that the parties essentially start from scratch, using Judge Early's model PO.

In light of Plaintiffs' unwillingness to use Apple's model PO, we will, as soon as practicable, send you an updated version of the draft PO that you sent us with Apple's proposed redlines.  That draft should address most, if not all of the points you raise below.

thanks very much,
Angelique


**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, April 8, 2020 7:04 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

[External Email]
Angelique,

Your summary of our March 10 meet and confer is not consistent with our recollection.  We specifically said that the parties needed to use Judge Early's protective order as a model and stated that we would prepare a draft.  We agreed to Apple preparing the initial draft only because we

understood Apple agreed to use Judge Early's protective order as a model.  We recently had a Magistrate Judge in the Central District refuse to enter a Protective Order because it did not follow that Magistrate Judge's model order, resulting in significant delay and wasted resources.  We do not want to risk the same thing happening in this case.

Additionally, your proposal continues to contain numerous objectionable and non-reciprocal provisions, including the prosecution bar issue discussed below.  You claim to have made the patent bar reciprocal, but it still applies only to "any person on behalf of the ***Plaintiffs*** who receives" designated material.  We object to Apple's proposal for many reasons, including:

1. Apple's proposal does not use Magistrate Judge Early's order as a model.
2. Apple's proposal lacks critical components of Judge Early's order, including a "good cause statement," acknowledgement of under seal filing procedures, and acknowledgement that information introduced at trial typically becomes public absent compelling reasons.
3. Apple's proposal includes an unduly broad and non-reciprocal prosecution bar.  Among other things, the prosecution bar applies only to Plaintiffs' counsel and allows an accused infringer's litigation counsel to file an IPR but does not allow the patentee's litigation counsel to defend the IPR.
4. Apple's proposal includes a non-reciprocal provision allowing Apple's in-house counsel to view AEO information while preventing Plaintiffs' in-house counsel from doing the same.
5. Apple's proposal includes a non-reciprocal provision concerning the number of individuals who may access Apple's source code without the same protection for Plaintiffs' source code.
6. Apple's latest proposal restricts access to AEO and source code material to outside counsel that do not have a "business or ownership interest in a Party."
7. Apple proposal includes unnecessarily complicated source code provisions, including lengthy notification times to inspect, unduly small restrictions on the amount of source code that can be printed, and numerous provisions that infringe on the receiving party's work product.

**Exhibit 8**
**-276-**

8.  Apple's proposal restricts access to "Confidential" material to three representatives that must be cleared by the opposing side.

9.  Apple's proposal allows untimely objections to experts accessing confidential information.

10. Apple's proposal includes unnecessarily complicated procedures for using native files, designating deposition testimony, and providing AEO information to mock jurors.

11. Apple's proposal includes export provisions that appear to be unwarranted, though we are willing to listen to why Apple believes these provisions are necessary.

For all these reasons, we believe the parties need to start with Judge Early's order as a model.  Since Apple is unwilling to do that, the parties may apparently need to submit competing proposals.

Best regards,
Adam

**Adam Powell**
Partner
**858-707-4245** Direct
**Knobbe** **Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Monday, April 6, 2020 9:11 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

Adam,

Thanks for your email.  As we explained on our March 10 meet and confer call, in order to expedite the process for agreeing to a protective order, Apple promised to send Plaintiffs its model protective order that we modified for

use in this case.  We did not refuse to use Magistrate Judge Early's model order; to the contrary, we did consider it and found most of it consistent with what Apple intended to propose.  In any event, after Plaintiffs rejected Apple's proposed PO outright without proposing any substantive redlines, we asked Plaintiffs to identify any provisions that you believed were not included, but should have been.  You did not do so.  Further, to address Plaintiffs' previously-stated concern about the non-reciprocal patent bar provision, we sent you an updated version of the proposed PO on Friday.  Again, rather than comment on Apple's updated Protective Order, Plaintiffs have refused to consider it.  Unfortunately, this is not constructive.  We therefore again request that Plaintiffs redline their suggestions into Apple's updated proposed PO.

As for the ESI Stipulation, we will consider Plaintiffs' suggestions and get back to you shortly.  As I requested on our call earlier today, please provide some times for a follow up meet and confer call this week to address the ESI Stip.

Finally, I have attached an updated draft Joint Rule 26(f) Report with Apple's sections included in redline for ease of reference.  We look forward to your thoughts.  Apple reserves all rights to modify any of the above-referenced documents in response to Plaintiffs' suggestions or otherwise.

Thanks very much,
Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, April 6, 2020 7:29 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>;

Exhibit 8
-278-

Stephen.Larson <Stephen.Larson@knobbe.com>;
Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re
<Joe.Re@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner,
Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M.
<BBuroker@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

[External Email]
Angelique,

We never said the parties agreed to use Magistrate Judge
Early's protective order "in its entirety." We said the parties
agreed to use it as a model. We continue to believe
Magistrate Judge Early will not appreciate an entirely new
form of protective order. Because Apple is now refusing to
use Magistrate Judge Early's order as a model and proposed
non-reciprocal provisions, we have prepared the attached
proposal ourselves. Redlines show changes to Magistrate
Judge Early's model protective order. We are happy to
consider any changes you have to this proposal.

Also attached are our changes to your draft ESI agreement.
As we discussed today, we are not opposed to a procedure
on custodians and search terms, but are still considering the
specifics. We will provide our edits to that portion soon and
will likely need to discuss it with you.

Best regards,
Adam

**Adam Powell**
Partner

**858-707-4245** **Direct**
**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Thursday, April 2, 2020 3:29 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>;
Perry.Oldham <Perry.Oldham@knobbe.com>;
Stephen.Larson <Stephen.Larson@knobbe.com>;
Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re
<Joe.Re@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner,
Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M.
<BBuroker@gibsondunn.com>

**Exhibit 8**
**-279-**

**Subject:** FW: Masimo v. Apple: follow up from March 10 call

Adam,

Thanks for your email.  To clarify, the parties did not have an agreement to use Magistrate Judge Early's protective order in its entirety.  Rather, we explained that Apple has a model Protective Order it uses and that we would factor in Magistrate Early's model in preparing the proposed PO in this case (which we did).  If there are specific provisions from Magistrate Early's model that you believe are not included in the proposed PO, please let us know.

Separately, in view of Plaintiffs' objection below to Apple's proposed patent prosecution bar provision, we are revisiting the language of that provision and will include proposed revisions in an updated PO that we will send as soon as practicable.

Thanks very much,

Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, March 31, 2020 12:41 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

[External Email]
Angelique,

This Protective Order is not consistent with the parties' agreement to use Magistrate Judge Early's protective order

**-70-**

**Exhibit 8**
**-280-**

as a model.  We do not think Magistrate Judge Early will appreciate the parties using an entirely different format. Additionally, we obviously will not agree to the numerous non-reciprocal provisions in this agreement.  For example, Plaintiffs cannot agree to a prosecution bar that applies only to Plaintiffs' counsel and not to Apple's counsel.  Please provide a revised version that is reciprocal and consistent with the parties' agreement to use Judge Early's protective order as a model.  Alternatively, we are happy to provide the initial draft as we offered during the Rule 16 conference.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Friday, March 27, 2020 4:37 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

Counsel,
Consistent with our correspondence below, attached please find Apple's proposed Protective Order and ESI Stipulation (with Exhibit A).  Apple reserves all rights to further revise these documents, including in response to Plaintiffs' suggestions.
We look forward to receiving the draft Joint Report from you today.
Thanks,
Angelique

**Angelique Kaounis**

**GIBSON DUNN**

Exhibit 8
-281-

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Kaounis, Angelique
**Sent:** Thursday, March 26, 2020 8:19 PM
**To:** 'Adam.Powell' <Adam.Powell@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

Adam,

Thanks for your email.  Apple will endeavor to provide edits by Monday, April 6th (this is 5 working days after the 27th) in exchange for Plaintiffs' agreement to do the same for Apple's draft Protective Order and ESI Protocol (as you suggest below).  If we can send it sooner, we will, and would request that you do so the same.

Thanks very much,
Angelique
**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, March 26, 2020 2:05 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Subject:** RE: Masimo v. Apple: follow up from March 10 call

**Exhibit 8**
-282-

[External Email]

Angelique,

We will provide the Rule 26(f) report/schedule and authority concerning Section 2019.210 by Friday.  However, we are still waiting for the proposed Protective Order and Electronic Discovery Plan that  Apple promised to provide.  Please provide those materials to us by Friday as well.

As for editing those documents, your email suggests that Apple intends to provide edits to the Rule 26(f) report the day before it is due.  We do not think that is workable since the parties may need to exchange multiple drafts to reach an agreement.  We also do not think it will take the same amount of time to edit a document that it takes to draft the document.  Thus, please commit to providing your edits within one week of receiving our draft.  That should allow the parties sufficient time to attempt to reach a resolution on any disagreements.  We will do the same for your draft Protective Order and Electronic Discovery Plan.

Best regards,
Adam

**Adam Powell**
Partner

**858-707-4245 Direct**

**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Wednesday, March 25, 2020 8:04 PM
**To:** Joe.Re <Joe.Re@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>
**Subject:** Masimo v. Apple: follow up from March 10 call

Dear Counsel,

We are writing to follow up on the items we understood you were sending after our March 10 call: a draft Rule 26(f) Report, a proposed schedule, and any authority that

**-73-**                                                                 **Exhibit 8**
                                                                          **-283-**

CCP Section 2019.210 does not apply here.  In light of the April 14 deadline for submission of the Report, we need the draft Report and Schedule by close of business this Friday, March 27.  That will give us a roughly equal amount of time to obtain client comments and respond to your draft and still have a day at the back end to coordinate changes and filing logistics with you.  Please also send us the CCP 2019.210 case law that you referenced by then.

Thanks very much,
Angelique
**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for

information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding

Exhibit 8
-285-

without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of

Exhibit 8
-286-

the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 8
-287-

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 8
-288-

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 8
-289-

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain
confidential and privileged information. Any unauthorized review, use, disclosure or
distribution is prohibited. If you are not the intended recipient, please contact the sender by
reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of
the intended recipient. Any review, disclosure, distribution by others or forwarding
without express permission is strictly prohibited. If it has been sent to you in error,
please reply to advise the sender of the error and then immediately delete this
message.

Please see our website at https://www.gibsondunn.com/ for information regarding the
firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain
confidential and privileged information. Any unauthorized review, use, disclosure or
distribution is prohibited. If you are not the intended recipient, please contact the sender by
reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of
the intended recipient. Any review, disclosure, distribution by others or forwarding
without express permission is strictly prohibited. If it has been sent to you in error,
please reply to advise the sender of the error and then immediately delete this
message.

Please see our website at https://www.gibsondunn.com/ for information regarding the
firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain
confidential and privileged information. Any unauthorized review, use, disclosure or
distribution is prohibited. If you are not the intended recipient, please contact the sender by
reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended
recipient. Any review, disclosure, distribution by others or forwarding without express permission is
strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error
and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or
our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and
privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not
the intended recipient, please contact the sender by reply email and destroy all copies of the original
message.

**Exhibit 8
-290-**

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Exhibit 8
-291-

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 8
-292-

# EXHIBIT 9
# Part 1

6/18/2020                    Jeven Adami - Senior Manager in Digital Forensics and Expert Services (DFES) group - Consilio LLC | LinkedIn



**Linked**in

Join now    Sign in

Jeven Adami

# Jeven Adami

Senior Manager in Digital Forensics group

Chicago, Illinois · 500+ connections

Sign in to Connect

Consilio LLC

CSPP at University of Chicago

## About

Digital forensics investigator and consulting professional with a focus on mobile technology & information security

## Activity



Apple® Forensic Investigations is c
that every forensic professional nee
instructors, this...

Liked by Jeven Adami



Positive news for investigators and
introducing a new level of integrati
and #XAMN – that...

Liked by Jeven Adami



**You're signed out**

Sign in for the full experience

Sign in

Join now

**Exhibit 9**
**-293-**

6/18/2020                Jeven Adami - Senior Manager in Digital Forensics and Expert Services (DFES) group - Consilio LLC | LinkedIn



Join now     Sign in

Jeven Adami

Sign in to see all activity

## Experience



**Senior Manager in Digital Forensics and Expert Services (DFES) group**
Consilio LLC

Jan 2017 – Present · 3 years 6 months

Chicago, IL

Managed digital forensic collections and analysis projects. Managed lab, equipment inventory and evidence room for national practice. Experienced working with Windows, Linux and Mac OS based devices as well as various mobile technology including iOS and Android devices. E-discovery ingest and productions. Thrives on client facing roles as well as working directly with attorneys and C-level clients. Served as SME for mobile collections and analysis. Served as SME for Nuix as well as mobile...

Show more ⌄

## Volunteer Experience

**Technology Support**
ParkWest Co-op

2008 – 2010 · 2 years

Education

Provided LAN and application support.



You're signed out      ✕

Sign in for the full experience

Sign in

Join now

## Licenses & Certifications



**GIAC Certified Forensic Examiner (GCFE)**
GIAC

**Exhibit 9**
**-294-**

6/18/2020      Jeven Adami - Senior Manager in Digital Forensics and Expert Services (DFES) group - Consilio LLC | LinkedIn



| Jeven Adami |
|---|

## Courses

SANS FOR508 course: Advanced Digital Forensics, Incident Response, and Threat Hunting - 2017

SANS Threat Hunting and IR Summit: New Orleans 2017

## Groups

 Information Security - Risk Management - Compliance Jobs (www.myinfosecjob.com)

 ISSA Chicago and the metro area

 SecurityMetrics

 Cellebrite UFED

 Computer Security and Forensics

Chicago ISACA Chapter

Show 8 more groups ⌄

## Recommendations

A preview of what LinkedIn members have to say about J

" It was a pleasure working directly with Jeven Adami ar
  e-discovery matters. Jeven is an outstanding colleague and highly-productive problem solver.

**You're signed out** ✕

Sign in for the full experience

Sign in

Join now

**Exhibit 9 -295-**

6/18/2020                     Jeven Adami - Senior Manager in Digital Forensics and Expert Services (DFES) group - Consilio LLC | LinkedIn

**Linked**in                                                              Join now     **Sign in**

Jeven Adami

" I have personally known Jevin for 8 years now and believe he is a very good employee for the following reasons: He has been in the IT field for 10 years and has worked his way up to Management and earned a Masters Degree. He has performed at a level that is consistently above his peers, and has demonstarted leadership skills and managerial ability. Sam Matarieh

7 people have recommended Jeven

**Sign in to view**

---

## View Jeven Adami's full profile to

✓ See who you know in common

✓ Get introduced

✓ Contact Jeven directly

**Sign in to view full profile**

---

## People also viewed

 **Bruce Malter, CEDS**
eDiscovery and Information Governance Solutions Expert a

 **Joshua Marpet**
Chief Operating Officer at Red Lion, IANS Faculty Member,
Thinks around corners.

 **Dan Froelich**
Lion (12,400 + connections)

 **Deborah Novotny**
Senior Program Management Director



**Exhibit 9
-296-**



Join now    **Sign in**

Jeven Adami


Helping organizations and law firms improve efficiency and manage spend through national court reporting solutions.

**Scott McCray**

Director at Consilio LLC


**Laura Chukanov, CEDS**

Regional Director at Consilio LLC


**Andy Thoe**

Managing Director at Bluewolf, an IBM Company

**Jacob Schultheis**

Senior Manager - Adversary Hunt & Simulation

Show more profiles ⌄

## Add new skills with these courses


**Operating System Forensics**


**Learning Computer Forensics**


**Penetration Testing: Advanced Enumeration**

See all courses

## Jeven's public profile badge

Include this LinkedIn profile on other websites

### You're signed out ✕

Sign in for the full experience

Sign in

**Join now**

**Exhibit 9**
**-297-**

6/18/2020                     Jeven Adami - Senior Manager in Digital Forensics and Expert Services (DFES) group - Consilio LLC | LinkedIn



Join now        Sign in

Jeven Adami

View profile                                        **Linkedin**

**View profile badges**

---

**Linkedin** © 2020                        About

User Agreement                                Privacy Policy

Cookie Policy                                 Copyright Policy

Brand Policy                                  Guest Controls

Community Guidelines                          Language ⌄



## You're signed out                                    ✕

Sign in for the full experience

Sign in

**Join now**

https://www.linkedin.com/in/jeven                                          6/6

**Exhibit 9**
**-298-**

# EXHIBIT 9
# Part 2

6/18/2020       Robert Fried - Senior Director - Digital Forensics & Expert Services - Consilio LLC | LinkedIn



**Linked**in       Join now    **Sign in**

Robert Fried



...

# Robert Fried
Senior Director at Consilio

Greater New York City Area · 500+ connections

Sign in to Connect

 **Consilio LLC**

 **University of New Haven**

## Activity



**We are continuing to exercise distancing measures for all of our content, including our 4th Annual APAC Panel (which we previously hosted at Fordham...**

Liked by **Robert Fried**



**Corporate legal departments are under tremendous pressure to lower their operating budgets by reducing and that...**

Liked by **Robert Fried**

**I always love hearing from the Consilio LLC X-Fact Houston to hear about the latest in culling and pr**

Liked by **Robert Fried**

**You're signed out** ✕

Sign in for the full experience

Sign in

Join now

**Exhibit 9**
**-299-**

6/18/2020                    Robert Fried - Senior Director - Digital Forensics & Expert Services - Consilio LLC | LinkedIn



Join now     Sign in

Robert Fried

# Experience

**Consilio LLC**

4 years 6 months

**Senior Director - Digital Forensics & Expert Services**

May 2016 – Present · 4 years 2 months

Greater New York City Area

**Director - Digital Forensics & Expert Services**

Jan 2016 – Apr 2016 · 4 months

Greater New York City Area

**Advisory Board Member - CHFI Certification**

EC-Council

Jan 2020 – Present · 6 months

New York, New York

**Adjunct Online Faculty - Cybersecurity**

Webster University

May 2017 – Present · 3 years 2 months

Greater St. Louis Area

**Huron**

8 years 2 months

**Director - Digital Forensics & Expert Servi**

Dec 2013 – Dec 2015 · 2 years 1 month

New York, New York

**Manager - Digital Forensics & Expert Serv**

Jun 2009 – Dec 2013 · 4 years 7 months

Greater New York City Area



You're signed out ✕

Sign in for the full experience

Sign in

Join now

**Exhibit 9
-300-**

6/18/2020                    Robert Fried - Senior Director - Digital Forensics & Expert Services - Consilio LLC | LinkedIn



Join now      Sign in

Robert Fried

### Consultant - Digital Forensics
DOAR, Inc.

May 2005 – Nov 2007 · 2 years 7 months

Lynbrook, NY

### Computer Crime Specialist II
National White Collar Crime Center

Sep 2002 – May 2005 · 2 years 9 months

Fairmont, WV

### Graduate Intern
SEARCH Group, Incorporated

Jan 2002 – Jun 2002 · 6 months

## Education

### University of New Haven
Master of Science (MS)

2001 – 2002

### University of New Haven
Bachelor of Science (BS)

1998 – 2001



You're signed out          ✕

Sign in for the full experience

Sign in

Join now

## Licenses & Certifications

### New York State Licensed Private Investiga
NYS Department of State

Exhibit 9
-301-

6/18/2020                Robert Fried - Senior Director - Digital Forensics & Expert Services - Consilio LLC | LinkedIn



Join now    Sign in

Robert Fried

### Certified Forensic Computer Examiner (CFCE)
International Association of Computer Investigative Specialists

### EnCase Certified Examiner (EnCE)
Guidance Software

### GIAC Certified Forensic Analyst (GCFA)
SANS Institute

### Michigan Professional Investigator
Michigan Department of State

## Publications

**CLE Live Webinar: What's New in Forensics: Identifying, Collecting, and Preserving Digital Data in 2020**
Consilio · Jun 2020

Legal matters today can involve information from a variety of disparate sources—mobile devices, chat applications, web-based collaborative platforms, cloud storage, "smart home" devices, and even fitness wearables. And in the current global pandemic, with so many of us working remotely and using non-traditional means of communicating and collaborating, there are even more sources of information to consider—and new difficulties in carrying out formerly routine eDiscovery processes. In this...

Show more

See publication

**CLE Live Webinar: From Azure to Zoimas: Where How to Collect It**
Corporate Counsel Business Journal · May 2020



You're signed out                ✕
Sign in for the full experience

Sign in

Join now

https://www.linkedin.com/in/rofried                4/14

**Exhibit 9
-302-**

**Linked**in                                                      Join now    Sign in

Robert Fried

information from these...

Show more

Other authors

See publication

### Live Webinar: Catching the Impostors: Spotting Deepfakes and Challenging Fabricated Electronic Evidence

ACEDS Chicago · May 2020

Widely-available digital tools have made it easier than ever for individuals to fabricate and alter digital evidence. Forensic experts and skilled trial attorneys will discuss how to spot suspicious electronic evidence; techniques for demonstrating evidence alteration or fabrication; how to leverage metadata to authenticate; and the importance of proper ESI preservation at the outset.

Other authors

See publication

### Poster: Cybersecurity Do's and Don'ts for SME An

EC-Council · Apr 2020

EC-Council Advisory Board - Cybersecurity Do's and Don



You're signed out ✕

Sign in for the full experience

Sign in

Join now

**Exhibit 9**
**-303-**

**Linked**in                                              Join now    Sign in

Robert Fried

ICF · Long Island · Mar 2020

Are you protecting yourself in today's technological world? At the upcoming ICF Long Island Charter Chapter Monthly Meeting, on March 24, 2020, our guest speaker will be Robert B. Fried, Senior Director of Digital Forensics & Expert Services at Consilio. Rob will be discussing tips on how to safeguard the devices that you use and the ways in which you communicate and interact. From communication to data storage, we will share vital information to guide you in protecting your Coaching Practice...

Show more

See publication

### Podcast: What's New with Forensics?!

ILTA · Mar 2020

As technology has evolved, so has our ability to identify, store, access and export electronic data. This podcast will focus on the aspects of forensic preservation of electronic data from current and emerging data sources. Considerations and recommendations are offered to assist in handling these data sources in the most defensible and efficient manner.

Other authors

See publication

### CLE Live Seminar: BYOD & Forensics

Consilio · Feb 2020

Bring Your Own Device (BYOD) & Forensics

### CLE Live Seminars: presented 5 times throughout
### Zoimas: Where to Find Relevant Information—Ar

LegalWeek · Feb 2020

## You're signed out                    ✕

Sign in for the full experience

Sign in

Join now

**Exhibit 9
-304-**

**Linked in**                                                    Join now     Sign in

Robert Fried

information from these...

Show more

Other authors

See publication

### Live Seminar: Data Preservation and Collection Overview

ILTA Vancouver · Feb 2020

The field of computer forensics encompasses a variety of topics, including data collection, file systems, forensic analysis. As we navigate each of these topics, we will be discussing the preservation of data from a variety of electronic storage devices and file systems. We will then dive into email forensics - specifically, how to ensure proper data collections from email clients, webmail services and servers. We will also be discussing forensic analysis, where we will highlight the importance...

Show more

See publication

### CLE Live Webinar: Hold the Phone! How Instant M
### Internal Compliance Investigations

Consilio · Dec 2019

The way we communicate in business today has explode
of messaging (SMS, WhatsApp, WeChat, Slack, Skype, etc
compliance investigations, some of the most useful evide
employees – is no longer found on email servers but inste



You're signed out                    ✕

Sign in for the full experience

Sign in

Join now

**Exhibit 9**
**-305-**

6/18/2020                          Robert Fried - Senior Director - Digital Forensics & Expert Services - Consilio LLC | LinkedIn

**Linked**in

Join now     Sign in

Robert Fried

Other authors

See publication

**CLE Live Seminar - Client Summit: BYOD & Forensics**
Consilio · Oct 2019
Bring Your Own Device (BYOD) & Forensics

**Journal: Social Media Considerations and Challenges in eDiscovery**
ILTA - Peer to Peer · Nov 2018
Preservation of data from social media platforms.

Other authors

See publication

**Blog: Cloud Archiving Solutions For Compliance**
Mimecast Blog · Nov 2017
Cloud archiving saves money and takes the sting out of

See publication

**Blog: How to Accelerate eDiscovery**



You're signed out                    ✕
Sign in for the full experience

Sign in

Join now

**Exhibit 9**
**-306-**

6/18/2020     Robert Fried - Senior Director - Digital Forensics & Expert Services - Consilio LLC | LinkedIn

**Linked**in

Join now    **Sign in**

Robert Fried

### From Generation To...

WingSpan Press · 2017

Robert B. Fried wrote this collection of poems during his childhood, after listening to the stories that his four grandparents had shared with him about their experiences during the Holocaust. May these poems offer a glimpse into the life-changing experiences of the survivors of the Holocaust, so that from generation to generation, the world will always remember and never forget.

**See publication**

### How'd You Score That Gig? A Guide to the Coolest Jobs-and How to Get Them

Ballantine Books · 2008

In How'd You Score That Gig?, career expert Alexandra Levit profiles more than sixty of the coolest careers on the planet–all rated in a national survey by twenty- and thirtysomethings for twenty- and thirtysomethings. Contributed to the chapter on Forensic Scientist.

Other authors

**See publication**

### Low-Speed Automobile Accidents: Investigation ... Edition

Lawyers & Judges Publishing Company · 2003

Contributing Author:

Digital Photography versus Film Photography

**See publication**

### A System Administrator's Guide to Implementing various Anti-Virus Mechanisms:

**You're signed out** ✕

Sign in for the full experience

Sign in

**Join now**

**Exhibit 9**
**-307-**

**Linked** in                                            Join now    **Sign in**

| Robert Fried |

investigation and tracing of a suspected computer virus.

See publication

## Cyber Scam Artists: A New Kind of .con

SANS · 2002

This paper will closely examine the emergence of the fraudster into cyberspace. It will discuss what tactics and methods the online fraudster utilizes in his/her attempts to successfully deceive others. Furthermore, it will provide a profile of those individuals who are victimized by such fraudsters. Moreover, it will analyze the steps being taken to help deal with the issue of online fraud. Lastly, several conclusions will be drawn regarding Internet fraud.

See publication

## Listening to the Bells: Learning to Read Poetry by Writing Poetry

Boynton/Cook Publishers · 1993

Contributing Poet in Florence Grossman's book.

---

## Organizations

### The New York Academy of Public Education

Member

Oct 2018 – Present

### AAFS

Associate Member

Nov 2017 – Present

### AAPLE

Member

Nov 2017 – Present

### ALDONYS

Member



You're signed out    ✕

Sign in for the full experience

Sign in

Join now

**Exhibit 9**
**-308-**



**Linked in**

Join now    Sign in

Robert Fried

Nov 2017 – Present

**IACIS**
Member
Nov 2017 – Present

**SPI**
Member
Nov 2017 – Present

**The IAI**
Member
Nov 2017 – Present

**Infragard**
Member

## Recommendations

A preview of what LinkedIn members have to say about Robert:

" Every firm has one person who you go to when you have a challenging high level task to be worked on. Robert Fried is that person. Robert is an analytical problem solver who thinks about the requirements of a task and then applies his experience and knowledge to select the proper process and tools necessary to achieve results. about the forensics process and the capabilities of dif collection and recovery of deleted files or files from da

" Rob was a great asset to the Consultant group. He wa projects with ease and was always willing to assist and hesitation. When faced with time sensitive requests, h product and was highly depended upon within the DC



**You're signed out**   ✕
Sign in for the full experience

Sign in

Join now

**Exhibit 9**
**-309-**

6/18/2020                     Robert Fried - Senior Director - Digital Forensics & Expert Services - Consilio LLC | LinkedIn

 **Linked**in                                                    Join now    Sign in

Robert Fried

View Robert Fried's full profile to

See who you know in common

Get introduced

Contact Robert directly

Sign in to view full profile

## People also viewed

 **David Barrett**
Executive Vice President of Sales at Xact Data Discovery (XDD)

 **Brent Stevens**
Director at Consilio, LLC

 **Omid Jahanbin**
VP, Global Marketing & Product Experience, Consilio - Global Leader in Legal Consulting & Services

 **Warren DiDonato**
eDiscovery and Information Governance, Legal Technology & Discovery Management Consulting, Global Account Management.

 **Stephen Cain**
Director at The Crypsis Group

 **Duong Duong**
Associate | Digital Forensics at Lighthouse at Lighthouse

 **Tim Stay**
CEO at The Other Side Academy



**You're signed out** ✕
Sign in for the full experience

Sign in

Join now


**Exhibit 9**
**-310-**

6/18/2020                    Robert Fried - Senior Director - Digital Forensics & Expert Services - Consilio LLC | LinkedIn



Join now | **Sign in**

Robert Fried


Global Recruiting Director at Consilio LLC


**Michael Pontrelli**
Managing Director at Consilio, LLC

Show more profiles

## Others named **Robert Fried**

**Robert Fried**
Chief Executive Officer at Expedition America
Greater Los Angeles Area

**Robert Fried**
New sales developement at JOSHEN PAPER
Cleveland/Akron, Ohio Area

**Robert Fried**
San Francisco Bay Area

**Robert Fried**
Founding Director at the Chinese Language Institute (CLI)
Guilin, Guangxi, China

64 others named Robert Fried are on LinkedIn

See others named **Robert Fried**

## Add new skills with these courses

CompTIA PenTest+ (PT0-001): 7 Reporting a

**You're signed out**   ✕
Sign in for the full experience

Sign in

Join now

Incident Response Planning

**Exhibit 9**
**-311-**



Join now    **Sign in**

Robert Fried

**See all courses**

## Robert's public profile badge

Include this LinkedIn profile on other websites

**Robert Fried**
Senior Director at Consilio

Senior Director - Digital Forensics & Expert Services at Consilio LLC

University of New Haven

View profile

**View profile badges**

© 2020

| | |
|---|---|
| User Agreement | About |
| Cookie Policy | Privacy Policy |
| Brand Policy | Copyright Policy |
| Community Guidelines | Guest Controls |
| | Languag |

### You're signed out    ✕

Sign in for the full experience

Sign in

**Join now**



**Exhibit 9**
**-312-**

# EXHIBIT 10

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   SACV 20-00048JVS(JDEx)                    Date   April 17, 2020

Title   Masimo Corporation, et al v Apple, Inc

---

Present: The Honorable          **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:   [IN CHAMBERS] ORDER RE SCHEDULING DATES**

The Court has read and considered the parties Rule 26(f) Report and sets the following dates:

| | |
|---|---|
| **Jury Trial** | **April 5, 2022 at 8:30 a.m.** |
| **Final PreTrial Conference** | **March 21, 2022 at 11:00 a.m.** |
| File PreTrial Documents not later than March 7, 2022 | |
| File motions in limine not later than February 14, 2022 | |
| **Discovery Cut-off** | **July 5, 2021** |
| **Expert Discovery Cut-off** | **December 6, 2021** |
| Initial disclosure of Experts not later than September 6, 2021 | |
| Rebuttal disclosure of Experts not later than October 18, 2021 | |
| **Law and Motion Cut-off** | **February 7, 2022 at 1:30 p.m.** |
| Motions to be filed and served not later than January 10, 2022 | |
| **Markman Hearing** | **February 8, 2021 at 3:00 p.m.** |

Counsel inform the Court that their selection for a settlement procedure pursuant to Local Rule 16-15 is ADR #3, private mediation.  The Court orders that any settlement discussions shall be completed not later than November 30, 2021.  Counsel shall file a Joint Report of the parties regarding outcome of settlement discussions, the likelihood of possible further discussions and any help the Court may provide with regard to settlement negotiations not later than seven (7) days after the settlement conference.

The Court adopts discvoery limits in Sections 6a-c.  Total hours for depositions 100.  Court will deal with reduction of claims, prior art references at a hearing on **July 10, 2020 at 3:00 p.m.** Parties shall submit joint/separate proposals in one filing by July 3, 2020.  The Court adopts the patent specific dates.  The Court stays the trade secret discovery only pending compliance with 2019.210.  Any dispute over compliance shall be heard before the Magistrate Judge.

|  | : | 0 |
|---|---|---|
| Initials of Preparer | | lmb |

---

**Exhibit 10**
**-313-**

# EXHIBIT 11

Case 8:20-cv-00048-JVS-JDE   Document 61-2   Filed 06/26/20   Page 327 of 662   Page ID
Case 8:20-cv-00048-JVS-JDE   Document 33-1   Filed 04/14/20   Page 1 of 28   Page ID #2558
#:4605

1   Joseph R. Re (Bar No. 134479)
2   joseph.re@knobbe.com
    Stephen C. Jensen (Bar No. 149894)
3   steve.jensen@knobbe.com
    Perry D. Oldham (Bar No. 216016)
4   perry.oldham@knobbe.com
    Stephen W. Larson (Bar No. 240844)
5   stephen.larson@knobbe.com
6   **KNOBBE, MARTENS, OLSON &**
    **BEAR, LLP**
7   2040 Main Street, Fourteenth Floor
    Irvine, CA 92614
8   Telephone: (949)-760-0404
    Facsimile: (949)-760-9502
9
10

11  *Attorneys for Plaintiffs Masimo*
    *Corporation and Cercacor Laboratories,*
12  *Inc.*
13
14
15

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300
Facsimile: 650.849.5333

*Attorneys for Defendant Apple Inc.*
[Additional counsel on following page]

16
17
18
19          **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
20                        **SOUTHERN DIVISION**

21  MASIMO CORPORATION,               )  Case No. 8:20-cv-00048-JVS-JDE
    a Delaware corporation; and        )
22  CERCACOR LABORATORIES, INC.,       )  **JOINT 26(f) REPORT**
    a Delaware corporation             )
23                                     )
                                       )
24              Plaintiffs,            )
                                       )  Scheduling Conference:
25          v.                         )  Date:    TBD
                                       )  Time:    TBD
26  APPLE INC., a California corporation )  Ctrm.    TBD
                                       )
27              Defendant.             )
                                       )
28  _____  )

**Exhibit 11**
**-314-**

Case 8:20-cv-00048-JVS-JDE   Document 61-2   Filed 06/26/20   Page 328 of 662   Page ID #:4559
Case 8:20-cv-00048-JVS-JDE   Document 33-2   Filed 04/14/20   Page 2 of 28   Page ID #:2559
#:4606

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone:  202.955.8541
Facsimile:   202.467.0539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Telephone:  310.552.8546
Facsimile:   310.552.7026

*Attorneys for Defendant Apple Inc.*

-1-

**Exhibit 11**
**-315-**

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and Local Rule 26-1, Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs"), and Defendant Apple Inc. ("Apple") (together with Plaintiffs, the "Parties") hereby submit this Joint Report and [Proposed] Discovery Plan.

On March 10, 2020, counsel for the Parties conducted a telephonic discovery conference to address topics set forth in Fed. R. Civ. P. 26(f) Local Rule 26-1, and this Court's sample Order Setting Rule 26(f) Scheduling Conference. Participating in the conference were Joseph R. Re, Stephen W. Larson, and Adam B. Powell of Knobbe, Martens, Olson & Bear, LLP, counsel for Plaintiffs, and Brian Rosenthal, Angelique Kaounis, and Joshua Lerner of Gibson, Dunn & Crutcher LLP, counsel for Apple.

## A.   **Synopsis**

This action involves claims by Plaintiffs against Apple for alleged patent infringement, trade secret misappropriation, correction of inventorship of certain patents assigned to Apple, and declaratory judgment of ownership of certain patents assigned to Apple. On January 9, 2020, Plaintiffs filed the initial Complaint. On March 4, 2020, Apple moved to dismiss the initial Complaint. On March 25, 2020, Plaintiffs filed the First Amended Complaint asserting the following causes of action:

(1)   Infringement of U.S. Patent No. 10,258,265;

(2)   Infringement of U.S. Patent No. 10,258,266;

(3)   Infringement of U.S. Patent No. 10,292,628;

(4)   Infringement of U.S. Patent No. 10,299,708;

(5)   Infringement of U.S. Patent No. 10,376,190;

(6)   Infringement of U.S. Patent No. 10,376,191;

(7)   Infringement of U.S. Patent No. 10,470,695;

(8)   Infringement of U.S. Patent No. 6,771,994;

-1-

**Exhibit 11**
**-316-**

Case 8:20-cv-00048-JVS-JDE   Document 61-2   Filed 06/26/20   Page 330 of 662   Page ID
#:4608
Case 8:20-cv-00048-JVS-JDE   Document 33-1   Filed 04/14/20   Page 4 of 20   Page ID #:2551

(9)    Infringement of U.S. Patent No. 8,457,703;

(10)   Infringement of U.S. Patent No. 10,433,776;

(11)   Infringement of U.S. Patent No. 10,588,553;

(12)   Infringement of U.S. Patent No. 10,588,554;

(13)   Trade Secret Misappropriation Under California's Uniform Trade Secret Act;

(14)   Correction of Inventorship of U.S. Patent No. 10,078,052;

(15)   Correction of Inventorship of U.S. Patent No. 10,247,670;

(16)   Correction of Inventorship of U.S. Patent No. 9,952,095;

(17)   Correction of Inventorship of U.S. Patent No. 10,219,754;

(18)   Correction of Inventorship of U.S. Patent No. 10,524,671;

(19)   Declaratory Judgment of Ownership of U.S. Patent No. 10,078,052;

(20)   Declaratory Judgment of Ownership of U.S. Patent No. 10,247,670;

(21)   Declaratory Judgment of Ownership of U.S. Patent No. 9,952,095;

(22)   Declaratory Judgment of Ownership of U.S. Patent No. 10,219,754;

(23)   Declaratory Judgment of Ownership of U.S. Patent No. 10,524,671; and

(24)   Declaratory Judgment of Ownership of U.S. Patent Application No. 15/960,507.

Apple contends that none of the claims have merit; Apple will respond to the First Amended Complaint by April 20, 2020, pursuant to the Court's April 2, 2020 Order.

**B.**    **Legal Issues**

The Parties identify the following key disputed issues:

1.    Whether Apple has infringed any valid claim of the asserted

**Exhibit 11**
**-317-**

patents;

2.    The scope and meaning of certain claim terms of Plaintiffs' asserted patents;

3.    Whether Apple improperly acquired, used, or disclosed Plaintiffs' alleged trade secrets;

4.    Whether Plaintiffs were injured by any alleged improper acquisition, use, or disclosure of Plaintiffs' alleged trade secrets by Apple;

5.    Whether inventorship for certain patents assigned to Apple should be corrected;

6.    Whether Plaintiffs are the owner of certain patents and patent applications assigned to Apple;

7.    Whether Plaintiffs are entitled to damages and, if so, in what amount;

8.    Whether Plaintiffs are entitled to an injunction and, if so, the terms of the injunction; and

9.    Whether this case is exceptional and whether any party is entitled to attorneys' fees and costs.

Apple identifies the following additional key disputed issues:

1.    Whether Plaintiffs' trade secret claim is barred by the applicable statute of limitations, *see* Cal. Civ. Code § 3426.6;

2.    Whether Plaintiffs can show that they own protectable trade secrets, including by describing the alleged trade secrets with sufficient particularity to separate them from matters of general knowledge in the trade, and demonstrating reasonable measures to maintain secrecy and value of the alleged trade secrets;

3.    Whether Plaintiffs' misappropriation claim was brought or maintained in bad faith such that the Court should award

**Exhibit 11**
**-318-**

reasonable attorney's fees and costs to Apple under Cal. Civ. Code Section 3426.4; and

4.   Whether Plaintiffs' patent infringement, correction of inventorship, and patent ownership claims were brought or maintained in bad faith, such that the Court should award reasonable attorney's fees and costs to Apple under 35 U.S.C. § 285.

Plaintiffs disagree with Apple's recitation of "additional key issues" as unduly argumentative, addressing questions that are not actually issues in this case, and identifying incorrect legal standards.

The Parties reserve all rights to identify additional legal issues that may arise, for example, in connection with possible counterclaims or affirmative defenses, based on the development of evidence in this matter.

**C.   <u>Damages</u>**

<u>Plaintiffs' Statement:</u>

Plaintiffs seek damages in an amount to be ascertained through discovery and proven at trial, plus applicable pre-judgment and post-judgment interest. Plaintiffs seek actual damages, lost profits, unjust enrichment, and/or a reasonable royalty.   The final amount of these categories has yet to be ascertained—and Plaintiffs are unable to provide a realistic range of provable damages until they have obtained further information through discovery which can be provided to their damages expert, including revenue and sales information related to the accused products.   Plaintiffs also allege willful patent infringement, as well as willful and malicious trade secret misappropriation. Thus, Plaintiffs seek reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285 and Cal. Civil Code § 3426.4.   Plaintiffs will also seek punitive and exemplary damages.   Plaintiffs disagree with Apple's contention below that Plaintiffs' claims lack merit because Plaintiffs have not yet calculated damages, especially when Apple is refusing to provide any discovery in this case.

**Exhibit 11**
**-319-**

**Apple's Statement:**

Apple denies that Plaintiffs have been harmed in any way by Apple's conduct, and accordingly Apples denies that any provable damages exist in this case or that Plaintiffs are entitled to any compensatory damages (including lost profits and/or a reasonable royalty), exemplary damages, and/or recovery for unjust enrichment. The fact that Plaintiffs cannot identify any damages, four months after filing suit, several years after the alleged misappropriation, and over a year after the first accused product was released, is telling. Apple will respond to any damages theories asserted by Plaintiffs at the appropriate time. Apple reserves the right to assert counterclaims at a later date and may seek damages at that time. Further, Plaintiffs' misappropriation claim was made, and continues to be maintained, in bad faith such that the Court should award reasonable attorneys' fees and costs to Apple under Cal. Civ. Code Section 3426.4. Among other things, the misappropriation claim is barred by the applicable statute of limitations, *see* Cal. Civ. Code Section 3426.3, and Plaintiffs have not alleged cognizable trade secrets or any plausible facts supporting any colorable theory of misappropriation.

**D.  Insurance**

The Parties are not aware of any insurance coverage related to this matter.

**E.  Motions**

While Plaintiffs do not presently contemplate filing any additional amended pleadings or motions to add additional parties or claims, further discovery or issuance of additional patents may result in additional claims or amended pleadings. Plaintiffs reserve the right to do so, including in response to any Apple counterclaims.

Apple does not, at this time, anticipate filing any motions to add parties or transfer venue. As noted above, Apple filed a motion to dismiss the original Complaint and intends to file a motion to dismiss some or all of the claims in

**Exhibit 11**
**-320-**

Plaintiffs' First Amended Complaint by April 20, 2020. Apple has not answered yet and reserves the right to bring counterclaims.

**F.**   **Discovery and Experts**

With respect to expert disclosures, the Parties have proposed deadlines in the Presumptive Schedule of Pretrial Dates attached hereto as Exhibit A.

**1.**   **Initial Disclosures**

The Parties do not believe any changes are necessary in the form or requirement for disclosures under Rule 26(a). The Court granted the Parties' stipulation to exchange Fed. R. Civ. P. 26(a)(1) initial disclosures on April 14, 2020.

**2.**   **Subjects for Discovery/Discovery Phases/Discovery Cut-Off**

The Parties anticipate that discovery may be needed on at least the topics and disputed issues identified above, as well as any affirmative defenses asserted, and/or counterclaims brought by Apple. The Parties agree that fact and expert discovery should be conducted in phases. The proposed timing of expert witness disclosures under Fed. R. Civ. P. 26(a)(2) is set forth below in the proposed schedule attached hereto as Exhibit A. Although the Parties have served discovery, no discovery has been completed to date.

Plaintiffs' Statement: All discovery should be completed pursuant to the schedule set forth in Exhibit A and in accordance with the Federal Rules of Civil Procedure. Plaintiffs disagree with Apple's assertion that California Civil Procedure Code Section 2019.210 applies in federal court to bar trade secret discovery until the requirements of the rule are met. Plaintiffs also disagree with Apple's attempt to use that procedural rule to bar *all* discovery, including patent discovery. For example, Plaintiffs recently served a narrow set of 25 Requests for Production that concern the asserted patents and technical information about the products accused of patent infringement. The requested information is necessary for Plaintiffs to provide patent infringement

-6-

**Exhibit 11**
**-321-**

Case 8:20-cv-00048-JVS-JDE   Document 61-2   Filed 06/26/20   Page 335 of 662   Page ID
#:4613
Case 8:20-cv-00048-JVS-JDE   Document 53-1   Filed 04/14/20   Page 9 of 23   Page ID #:2566

contentions.  Apple has asserted that all discovery is barred, including discovery relating to the products accused of patent infringement because the information is purportedly *also* relevant to Plaintiffs' trade secret claims.

Regardless, Plaintiffs have repeatedly suggested the proper way for Apple to seek this information is through an interrogatory served under the Federal Rules.  Plaintiffs even offered to give Apple an extra interrogatory if that was the issue.  Apple maintained that all discovery that relates in any way to the trade secret claims (including all patent discovery) is barred until Apple agrees that Plaintiffs have complied with a California state procedural rule.  As addressed in more detail in Section K below, that is improper.

Apple's Statement: Apple anticipates patent discovery to be completed pursuant to the schedule set forth in Exhibit A except insofar as Plaintiffs attempt to take trade secret related discovery before providing an adequate description of the alleged trade secrets.  Pursuant to California Code of Civil Procedure Section 2019.210 ("Section 2019.210") and consistent with the principles of orderly case management and discovery, Apple requested that Plaintiffs describe their alleged trade secrets with reasonable particularity before they commence trade secret-related discovery.  Plaintiffs declined, thus far, to do so, and accordingly, Apple is in the process of moving for a protective order preventing Plaintiffs from commencing such discovery.

Apple does not agree that Plaintiffs' set of 25 Requests for Production is "narrow."  While the Requests may "concern the asserted patents and technical information about the products accused of patent infringement," as Plaintiffs contend, a large number of the requests *also* concern Plaintiffs' alleged secrets.  Indeed, the Apple products accused of patent infringement are the Apple products that Plaintiffs allege incorporate their trade secrets.  Section 2019.210 is clear that a trade secret plaintiff must describe its purported secrets with "reasonable particularity" "before commencing discovery *relating to* the trade

-7-

**Exhibit 11**
**-322-**

Case 8:20-cv-00048-JVS-JDE  Document 61-2  Filed 06/26/20  Page 336 of 662  Page ID
Case 8:20-cv-00048-JVS-JDE  Document 33-1  Filed 04/14/20  Page 20 of 28  Page ID #:2367
#:4614

secret." Cal. Civ. Code § 2019.210 (emphasis added). Plaintiffs have refused to define their purported secrets with the reasonable particularity Section 2019.210 requires, and therefore may not commence discovery that relates to their misappropriation claim even if it *also* relates to their patent claims.

Plaintiffs' conduct threatens the result Section 2019.210 guards against: that Plaintiffs will use their patent infringement claims as an end-run around Section 2019.210, to gain access to Apple's files and claim Apple's confidential information as their own. Plaintiffs' demand that Apple serve an interrogatory does not sufficiently protect against this result, because, among other things, there is nothing stopping Plaintiffs from cutting and pasting the vague description of the secrets in their First Amended Complaint into an interrogatory response. Accordingly, Apple intends to move forward with producing responsive discovery that relates solely to Plaintiffs' patent claims, as well as responsive public discovery that pertains to both the patent and trade secret claims. But as to any non-public discovery that relates to Plaintiffs' trade secret claim or to both the trade secret and patent claims, Apple intends to object to such discovery and await Judge Early's ruling on its protective order motion, which will be filed by joint stipulation of the parties on April 30, 2020.

\*\*\*

The Parties have proposed a Presumptive Schedule of Pretrial Dates attached hereto as Exhibit A. Plaintiffs present these dates for the completion of all discovery in this case; Apple presents these dates for the completion of non-trade secret related discovery in this case.

### 3. **Written Discovery Requests**

Plaintiffs anticipate serving, and have begun serving, written discovery (interrogatories, requests for production, requests for admission) directed to at least the following topics: the structure, function, and operation of Apple's products accused of infringing Plaintiffs' asserted patents; Apple's

**Exhibit 11**
**-323-**

misappropriation of Plaintiffs' trade secrets; the correct inventorship and ownership of the Apple patents at issue; Apple's affirmative defenses; and Apple's revenue, costs, profits pricing, margins, marketing, revenues and profits relating to the accused products. Plaintiffs also anticipate third-party discovery may be necessary for some or all of the above topics.

Apple anticipates serving written discovery (interrogatories, requests for production, requests for admission), and has already begun serving such discovery, directed to at least the following topics: whether Plaintiffs brought their trade secret claim within the applicable statute of limitations period; the alleged bases for any supposed delayed discovery of Plaintiffs' trade secret claim; the development of the alleged trade secrets; ownership of the alleged trade secrets; the bases for Plaintiffs' claim of misappropriation by Apple; Plaintiffs' purported efforts to maintain the secrecy of their alleged trade secrets; the value, if any, of the alleged trade secrets; the facts on which Plaintiffs claim that Apple knew or should have known (i) that Marcelo Lamego purportedly disclosed Plaintiffs' alleged trade secrets to Apple, and/or (ii) the scope of Plaintiffs' alleged trade secrets; the validity of the asserted patents and related patents; the development that led to the asserted patents; practice by Plaintiffs of the asserted patents; marking of products of Plaintiffs that allegedly practice the asserted patents; contributions of those Plaintiffs allege should be named inventors on the identified Apple patents and patent applications; factual and legal bases for ownership and/or correction of inventorship of the identified Apple patents and patent application; Plaintiffs' bases for their claims of patent infringement; the notice, if any, Plaintiffs gave to Apple of its alleged infringement; Plaintiffs' efforts to enforce their alleged intellectual property rights; Plaintiffs' licensing or assignment of the asserted patents; Plaintiffs' claims that they have been harmed by any conduct committed by Apple; the bases, if any, for Plaintiffs' claims for damages, enhanced damages, attorney's

-9-

Exhibit 11
-324-

fees, recovery for unjust enrichment, and reasonable royalties, including Plaintiffs' revenue, costs, profits, pricing, margins, marketing, and licensing agreements relating to the alleged trade secrets and patented technology. Apple also anticipates third-party discovery may be necessary for some or all of the above topics.

### 4. Depositions

Plaintiffs anticipate taking the depositions of Apple under Fed. R. Civ. P. 30(b)(6), Apple's employees, non-party witnesses, and expert witnesses concerning the issues identified above. Plaintiffs also anticipate taking the depositions of third parties.

Apple anticipates taking depositions of Plaintiffs under Fed. R. Civ. P. 30(b)(6); Plaintiffs' employees, including but not limited to those employees and former employees identified in the Complaints as inventors on Plaintiffs' relevant patents, and those employees and former employees identified in the Complaints as inventors or contributors to the Apple patents and patent applications; non-party witnesses; and expert witnesses concerning the issues identified above. Apple's estimates are based on the claims alleged in Plaintiffs' First Amended Complaint filed on March 25, 2020. Additional discovery will be needed if counterclaims are brought.

### 5. Electronic Discovery and Document Production

The Parties are negotiating a protocol governing the preservation and production of Electronically Stored Information ("ESI"), which they will submit separately.

### 6. Limitations on Discovery

The Parties request the following exceptions to the limitations on discovery set forth in the Federal Rules of Civil Procedure:

(1)    A maximum of 35 interrogatories per side;

(2)    A maximum of 50 requests for admission per side; and

-10-

**Exhibit 11**
**-325-**

(3)    Each expert deposition shall be limited to one seven hour day per expert per report.

Additionally, Plaintiffs assert the issues and claims in this case justify 140 hours of fact depositions per side, with each fact deposition counting as having a duration of at least 3.5 hours.  Defendant asserts depositions should be limited to 80 hours of party fact depositions per side, with each party fact deposition counting as having a duration of at least 3.5 hours.

As set forth above, Apple objects to Plaintiffs' commencement of any trade-secret related discovery until Plaintiffs describe their alleged trade secrets with reasonable particularity under Section 2019.210 and will move for a protective order preventing Plaintiffs from taking the same.  Plaintiffs object to Apple's attempt to use a California state procedural rule to bar all discovery, including patent discovery.

**7.**    <u>**Other Orders**</u>

The Parties intend to request that the Court enter a protective order governing the confidentiality of information in this case.  The Parties will submit to Magistrate Judge Early a proposed protective order under Federal Rule of Civil Procedure 26(c) to govern the exchange and disclosure of confidential documents and information in this case.  Apple will not agree to produce documents unless and until a satisfactory protective order is issued in this case.

The Parties consent to electronic service and agree that such service of papers may be accomplished by electronic mail, with the same result as if such papers had been delivered in person.  If the e-mail serving papers is sent after midnight (Pacific), those papers will be considered to have been received the following day.

At this time, Plaintiffs do not propose that the Court enter any other order under Rule 26(c), Rule 16(b), or Rule 16(c) beyond those normally issued by

**Exhibit 11**
**-326-**

the Court. However, as set forth herein, Apple will move for a protective order under Rule 26(c) on the basis that Plaintiffs may not commence any trade secret-related discovery until they comply with Section 2019.210. Plaintiffs object to Apple's attempt to use a California state procedural rule to bar all discovery, including patent discovery.

## G.   **Dispositive Motions**

Plaintiffs' Statement:

Plaintiffs anticipate that they may file motions for summary judgment regarding patent infringement, validity, trade secret misappropriation, inventorship, and/or ownership. Plaintiffs anticipate they may also file pretrial motions relating to expert testimony and motions *in limine*.

Apple's Statement:

Apple filed a motion to dismiss Plaintiffs' claims on March 4, 2020. Plaintiffs voluntarily amended their Complaint on March 25, 2020, and Apple intends to move to dismiss some or all of the claims in the First Amended Complaint on or before April 20, 2020. Apple reserves the right to move to dismiss any future amended complaint.

If any claims remain after any future motions to dismiss are decided, Apple anticipates that it will move for summary judgment, partial summary judgment, and/or judgment on the pleadings under Rule 15(c) of Plaintiffs' claims of trade secret misappropriation, patent infringement, patent validity, patent eligibility correction of inventorship, and/or declaratory judgment of ownership, and further, that it may seek sanctions (including possibly case or claim-terminating sanctions) against Plaintiffs under Cal. Civ. Code Section 3426.4, among other authorities. Apple anticipates that it may also file pretrial motions relating to expert testimony and motions *in limine*. Apple reserves all rights to bring such motions.

**Exhibit 11**
**-327-**

**H.    Settlement and Settlement Mechanism**

The Parties have met and conferred regarding ADR and settlement procedures pursuant to L.R. 16-15.  The Parties propose participating in a private mediation in accordance with Settlement Procedure No. 3.

The Parties have submitted concurrently herewith an ADR-01 "Request; ADR Procedure Selection" Form.  The Parties appreciate and understand that the case will not proceed to trial unless all parties with full authority to settle the case have appeared personally at a settlement conference.

**I.    Trial Estimate**

The Parties agree that trial will be by jury on at least all issues for which there is a right to trial by jury.  The Parties estimate a 10-14 day jury trial in which each Party anticipates calling approximately 10-15 witnesses.  Because the Parties' trial estimate exceeds eight days, the Parties will be prepared to discuss the estimate in detail.  The parties reserve the right to request bifurcation of trial.

**J.    Timetable**

The Parties have submitted the Presumptive Schedule of Pretrial Dates attached as Exhibit A to this report.

**K.    Other Issues**

Plaintiffs' statement:

Apple's has attempted to block all discovery from the outset by demanding that Plaintiffs follow Cal. Civ. Proc. Code § 2019.210.  Apple's position is misplaced because Section 2019.210 is a California procedural requirement that does not apply in federal court.  *See SMC Networks, Inc. v. Hitron Techs., Inc.*, 2013 WL 12136372, at \*3 (C.D. Cal. Mar. 15, 2013) (holding that Cal. Civ. Proc. Code § 2019.210 does not apply in federal courts because it violates Fed. R. Civ. P. 26 and the *Erie* doctrine); *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, 2007 WL 273949, at \*2 (E.D. Cal. Jan.

**Exhibit 11**
**-328-**

29, 2007) (same). As *SMC Networks* explained, Section 2019.210 conflicts with the Federal Rules because "§ 2019.210 sets forth a procedural requirement that must be met before discovery may be initiated, while Rule 26 would permit Plaintiff to proceed." 2013 WL 12136372 at *3. Thus, Section 2019.210's "automatic stay provision 'serve[s] to prevent application of Rule 26.'" *Id.* (quoting *Funcat*, 2007 WL 273949, at *2).

Indeed, Apple's own argument shows why Section 2019.210 should not be applied in federal courts. Apple asserts that it should not have to respond to Plaintiffs' First Set of Requests for Production ("RFPs") because the RFPs seek "extensive trade secret-related discovery." But even a cursory review of those 25 RFPs show they are standard patent RFPs designed to seek information Plaintiffs need to prepare patent infringement contentions against the "Accused Products." For example, the requests are narrowly tailored to seek documents concerning the "scope of the Masimo Asserted Patents," the "design and operation of the Accused Products," and the "operation of any heart rate algorithms used in any of the Accused Products." Some RFPS were even narrowly tailored to particular patent claim limitations.

Plaintiffs asked Apple to identify any requests that it believed sought information not directed to the patent infringement allegations, but Apple admitted it could not identify any such request. Despite that, Apple has refused to provide any responsive information on the grounds that Apple believes the requests *also* relate to the trade secret allegations. Accordingly, Apple is using a California state procedural rule concerning trade secrets to preclude typical patent discovery. Apple provides no case law to support that position, which has been rejected by at least one court in this District. *See Bryant v. Mattel*, 2007 WL 5430888, *3 n.3 (C.D. Cal. May 18, 2007) (refusing to limit discovery of product information under Section 2019.210 because the information was

/ / /

**Exhibit 11**
**-329-**

also "relevant to claims other than the trade secret misappropriation claim, such as Mattel's claim for copyright infringement").

Instead of imposing a state procedural rule to bar patent discovery, Apple should serve an interrogatory under the Federal Rules of Civil Procedure. If Apple had done so immediately after the Rule 26(f) conference on March 10, Plaintiffs would have already responded. This is precisely the procedure the Court already adopted and followed in *Masimo et al. v. True Wearables et al.*, case no. 8:18-cv-2001-JVS-JDEx, which Apple asserts raises allegations that are "nearly identical" to the allegations in this case. *See* D.I. 14 (Apple's Notice of Related Cases) at 1. Apple incorrectly suggests the defendant in *True Wearables* served an interrogatory instead of asking Plaintiffs to identify their trade secrets separate from the interrogatory. The defendant actually requested a formal identification of trade secrets similar to patent infringement contentions. This Court addressed the dispute at the scheduling conference and adopted Plaintiffs' argument that the Federal Rules of Civil Procedure apply and Plaintiffs need only respond to an interrogatory asking for such trade secrets.

Apple's attempt to obtain a contrary ruling by rushing to Magistrate Judge Early is inappropriate. As shown throughout this submission, Apple turned the Section 2019.210 dispute into a scheduling issue by asserting it will not comply with the Court's schedule as to trade secret discovery. Apple's assertion exemplifies the conflict between Section 2019.210 and the Federal Rules, which should be resolved by this Court because it impacts the schedule.

Apple also incorrectly asserts it includes the section below "because Plaintiffs insisted on addressing the merits of the parties' Section 2019.210 dispute in this filing." Plaintiffs initial draft did not include this section or discuss Section 2019.210. Plaintiffs added their position *in response* to Apple's extensive arguments on Section 2019.210. Apple then responded the day before filing by adding additional arguments and citing case law. But most of Apple's

-15-

**Exhibit 11**
**-330-**

cases did not even discuss the *Erie* conflict.  *See M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *4 (C.D. Cal. Sept. 3, 2019); *Swarmify, Inc. v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018); *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014).  One decision applied Section 2019.210 based on the "circumstances in [that] case," including that plaintiff had initially ***agreed*** to apply Section 2019.210.  *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018).[1] Plaintiffs request the Court apply the standard Federal Rules for discovery just as it did in the *True Wearables* case, which Apple argued involves "nearly identical" allegations.

Apple's Statement:[2]  Apple wants to move forward with trade secret discovery *as quickly possible*, and therefore has repeatedly requested that Plaintiffs comply with the procedures set out in California Code of Civil Procedure Section 2019.210.  Apple informed Plaintiffs that their pleading of the alleged trade secrets was insufficient back on *February 25*, requested Plaintiffs' compliance with Section 2019.210 by letter dated *March 6*, and has repeatedly requested Plaintiffs' compliance with Section 2019.210 ever since. Even though Plaintiffs are alleging secrets that are public, Plaintiffs have steadfastly refused to provide an adequate description of those secrets.

---

[1] Apple also claims it is seeking to move this case forward "as quickly as possible" and faults Plaintiffs for requesting a 14-day extension to respond to Apple's motion for protective order.  Apple omits that it has requested and obtained numerous lengthy extensions to respond to the initial Complaint, file this report, and respond to the Amended Complaint.  D.I. 12; D.I. 26; D.I. 30.

[2] Apple includes this section because Plaintiffs insisted on addressing the merits of the parties' Section 2019.210 dispute in this filing.  Apple notes, however, that this dispute is in the process of being briefed for Judge Early, in a Joint Stipulation to be filed by the parties on April 30, 2020.

**Exhibit 11**
**-331-**

Furthermore, Apple has not attempted to "block all discovery from the outset," as Plaintiffs contend above.  To the contrary, Apple intends to move forward with discovery that pertains solely to Plaintiffs' patent claims.

Consistent with its goal to move forward on the trade secret claims as quickly as possible, on March 27, 2020, Apple began the process of moving for a protective order prohibiting Plaintiffs from commencing trade secret-related discovery unless and until they identify their allegedly misappropriated trade secrets with the "reasonable particularity" Section 2019.210 requires.  Apple was prepared to follow the timing for the motion prescribed by the Local Rules and file on April 15, 2020.  *Plaintiffs* requested that Apple delay the filing so that Plaintiffs could have an additional two weeks to prepare their portion, and Apple agreed.  At *Plaintiffs'* request, the filing has been delayed until April 30, 2020.

District courts throughout California, *including this Court*, recognize that Section 2019.210 serves an essential function in cases like this one—it discourages meritless trade secret claims, prevents plaintiffs from abusing the discovery process to access the defendant's trade secrets, assists the court in framing the appropriate scope of discovery, and enables a defendant to form "complete and well-reasoned defenses" against claims of misappropriation. *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D. Cal. Sept. 3, 2019) (Early, J.).  A prompt and particularized disclosure of Plaintiffs' purported secrets is critical to each of those functions, as will be described in detail in Apple's forthcoming motion for a protective order.

Tellingly, the most recent case Plaintiffs cite in support of their contrary position that Section 2019.210 does not apply to CUTSA cases filed in federal court—*SMC Networks*—is from 2013 and has never been followed by another court.  This Court is far from alone in recently taking a different approach from *SMC*, and managing discovery in trade secret cases by applying Section

-17-

**Exhibit 11**
**-332-**

2019.210. *See, e.g.*, *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018); *Swarmify, Inc. v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018); *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014).

Plaintiffs are wrong to suggest that a contrary approach was taken in the *True Wearables* Case. In that case, the defendant did not move for a protective order pursuant to Section 2019.210. Here, Apple initiated the meet and confer process in connection with its motion for a protective order pursuant to Section 2019.210 on March 27, 2020, Apple sent Plaintiffs its portion of the joint stipulation Judge Early requires for presentation of such a motion on April 8, 2020, and, as a result of Plaintiffs' requested two-week extension, the parties' joint stipulation is scheduled to be filed on April 30, 2020. Moreover, in *True Wearables*, the defendant elected to serve an interrogatory for the identification of trade secrets. Here, by contrast, Apple has not served an interrogatory for the information covered by Section 2019.210 because an interrogatory response does not sufficiently protect Apple from the harm Section 2019.210 guards against: that Plaintiffs will use a vague identification of their trade secrets to gain access to Apple's files and claim Apple's confidential information as their own. Plaintiffs say they are willing and able to adequately describe their trade secrets in response to an interrogatory, but refuse to do so in a Section 2019.210 disclosure. The clear reason is that Plaintiffs seek to use the discovery process to manufacture a trade secret case. Indeed, Plaintiffs prefer an interrogatory to a Section 2019.210 disclosure because they are free to amend their interrogatory responses throughout the discovery process, including in response to the *Apple* confidential information they discover in Apple's files. Plaintiffs should be required to describe the trade secrets that Apple allegedly misappropriated at the outset of this case. This is information that Plaintiffs must have in their

-18-

**Exhibit 11**
**-333-**

possession as the result of the Rule 11 investigation they allegedly conducted prior to filing. Its prompt disclosure will prevent Plaintiffs from simply manufacturing a trade secret claim that did not exist at the time of filing and it will protect Apple's confidential information – which are the precise reasons why Section 2019.210 was enacted. Forcing Plaintiffs to specify their alleged trade secrets *before* they commence trade secret-related discovery in Apple's files will prevent unnecessary motion practice later.

Plaintiffs' further argument that their RFPs somehow fall outside the ambit of Section 2019.210 is not persuasive. To begin with, and to dispel any confusion, Apple is prepared to produce documents responsive to the RFPs pertaining solely to Plaintiffs' patent claims, as well as public documents responsive to the RFPs pertaining to Plaintiffs' patent and trade secret claims. But Plaintiffs are wrong to suggest that all of their RFPs simply seek patent-related information. Plaintiffs use the term "Accused Products" throughout their RFPs, defined as "Apple Watch Series 4 or later, as well as the combination of Apple Watch Series 4 or later with an Apple iOS Product." These are the *very same Apple Watches that Plaintiffs contend incorporate their trade secrets*. Accordingly, these overlapping requests are an attempt to end-run the clear requirements of Section 2019.210. Plaintiffs' discovery of documents pertaining to their purported trade secrets should not commence until Plaintiffs serve an adequate Section 2019.210 disclosure.

This case presents a clear example of the very danger that Section 2019.210 prevents: Plaintiffs have plead vague trade secrets claims, which they already amended once, and now seek access to *Apple's* confidential information. Absent a reasonable description of Plaintiffs' alleged secrets first, Plaintiffs will be able to sift through Apple's information and claim whatever seems most valuable as their own. This is particularly troubling because Apple has a long track record of significant investment in groundbreaking technology, including

-19-

**Exhibit 11**

**-334-**

the Apple Watch. Plaintiffs should not be permitted to peruse that information *in search* of a valid claim; they need to first provide at least a description of the secrets at issue here.

For these and the reasons set forth in detail in Apple's portion of the parties' filing before Judge Early on Apple's motion for a protective order, Apple therefore requests that Plaintiffs be barred from commencing any trade secret-related discovery until Plaintiffs serve on counsel a statement, under seal, that includes (1) a summary of the specific alleged trade secrets; (2) the background of the trade secrets and a description of how each secret has derived independent, actual, or potential economic value by virtue of not being generally known to the public; (3) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; and (4) each of the precise claimed trade secrets, numbered with a list of the specific elements for each, as claims would appear at the end of a patent.

Separately, Apple anticipates a possibly voluminous document production due to the number of patents at issue in this case. As noted above, the Parties are currently negotiating a protective order. Apple does not intend to produce documents until an acceptable protective order is issued.

## L.    **Conflicts**

The following are subsidiaries of Plaintiff Masimo Corporation:

Masimo (China) Medical Technology Co., Ltd; Masimo (Shanghai) Industrial Co., Ltd.; Masimo 17, LLC; Masimo Americas, Inc.; Masimo Asia Pacific Pte. Ltd; Masimo Australia PTY LTD; Masimo Canada ULC; Masimo International SARL - Dubai, U.A.E.; Masimo de Mexico Holdings I LLC; Masimo de Mexico Holdings II LLC; Masimo Europe Limited – French Branch; Masimo Europe Limited; Masimo Europe Limited - Filiale Italiana; Masimo Europe Limited, Sucursal en España; Masimo Europe Ltd Niederlassung Deutschland; Masimo Holdings LLC; Masimo Holdings LP;

**Exhibit 11**
**-335-**

Masimo Hong Kong Limited; Masimo Importação e Distribuição de Produtos Médicos Ltda.; Masimo International SARL; Masimo International Sarl – Jordan; Masimo International Sarl (filiaal Nederlands); Masimo International Technologies SARL; Masimo Japan Kabushiki Kaisha; Masimo Korea LLC; Masimo Medical Technologies India Private Ltd; Masimo Medikal Ürünler Ticaret Limited Şirketi; Masimo Mexico, S. de R.L. de C.V.; Masimo Oesterreich GmbH; Masimo Peru S.R.L.; Masimo Polska Spola z.o.o.; Masimo International Saudi Arabia; Masimo Semiconductor, Inc.; Masimo Sweden AB; OC Property Shelter, LLC; OC Property Ventures, LLC; Patient Doctor Technologies, Inc.; SEDLine, Inc.; SpO2.com; VCCB Holdings, LLC; 25 Sagamore LLC; 52 Discovery LLC; Alton Office Holdings, LLC; and Alton Office Property, LLC.

Apple filed its Statement of Interested Parties and Corporate Disclosure Statement on March 4, 2020. Dkt. No. 15.

**M.  Patent Cases**

The Presumptive Schedule of Pretrial Dates in Exhibit A identifies the dates and methodology for claim construction and *Markman* hearing. Plaintiffs do not propose a specific date for the Markman hearing and instead defer to the Court. Apple proposes that the Markman hearing be held on February 8, 2021, subject to the Court's availability based on its schedule.

**N.  Magistrates**

The Parties do not consent to having a Magistrate Judge preside over these proceedings.

/ / /

/ / /

/ / /

/ / /

/ / /

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 14, 2020        By: /s/ Stephen W. Larson
                                 Joseph R. Re
                                 Stephen C. Jensen
                                 Perry D. Oldham
                                 Stephen W. Larson

                                 Attorneys for Plaintiffs,
                                 Masimo Corporation and
                                 Cercacor Laboratories

GIBSON, DUNN & CRUTCHER LLP

Dated: April 14, 2020        By: /s/ Ilissa Samplin (with permission)
                                 Joshua H. Lerner
                                 H. Mark Lyon
                                 Brian M. Buroker
                                 Ilissa Samplin
                                 Angelique Kaounis

                                 Attorneys for Defendant Apple Inc.

**Exhibit 11**
**-337-**

# EXHIBIT A

## JUDGE JAMES V. SELNA
## PRESUMPTIVE SCHEDULE OF PRETRIAL DATES

| Case No.: | 8:20-cv-00048-JVS (JDEx) |
|---|---|
| Case Name: | Masimo Corporation, et al. v. Apple Inc. |

| Matter | Time | Weeks before trial | Plaintiffs' Request | Defendant's Request | Court Order |
|---|---|---|---|---|---|
| Trial date (jury) Estimated length: 10-14 days | 8:30 am (Tuesday) | | 4/5/2022 | | |
| [Court trial:] File Findings of Fact and Conclusions of Law and Summaries of Direct Testimony | | -1 | N/A | | |
| Final Pretrial Conference: Hearing on Motions in Limine; File Agreed Upon Set of Jury Instructions and Verdict Forms and Joint Statement re Disputed Instructions and Verdict Forms; File Proposed *Voir Dire* Qs and Agreed-to Statement of Case | 11:00 am (Monday) | -2 | 3/21/2022 | | |
| Lodge Pretrial Conf. Order; File Memo of Contentions of Fact and Law; Exhibit List; Witness List; Status Report re Settlement | | -3 | 3/7/2022 | | |
| Last Day for hand-serving Motions in Limine | | -6 | 2/14/2022 | | |
| Last day for hearing motions | 1:30 pm (Monday) | -7 | 2/7/2022 | | |
| Last day to conduct Private ADR | | | 1/24/2022 | | |

Exhibit 11
-338-

| | | | | |
|---|---|---|---|---|
| Last day for hand-serving motions and filing (other than Motions in Limine) | | -11 | 1/10/2022 | |
| Expert Discovery cut-off | | | 12/6/2021 | |
| Rebuttal Expert Witness Disclosures | | | 10/18/2021 | |
| Opening Expert Witness Disclosures [See F.R. Civ. P. 26(a)(2)]<br><br>Plaintiffs File Final Infringement Contentions,<br><br>Defendant Files Final Invalidity Contentions. | | | 9/6/2021 | |
| Non-expert Discovery cut-off | | -15 | 7/5/2021 | |
| Defendant further reduces the number of asserted prior art references to no more than 6 references per patent and 25 references total.[3] | | | N/A | 14 days after Plaintiffs further reduce number of asserted claims |
| Plaintiffs further reduce number of asserted patents to 6, the number of asserted claims to no more than 3 claims per patent family, and 12 claims total.[4] | | | N/A | 30 days after Markman decision |
| Markman Decision | | | [set by Court] | |

---

[3]     Apple proposes that Plaintiffs and Defendant will narrow their asserted claims and prior art references from the previously narrowed pool of claims and references.

[4]     Plaintiffs believe Defendant's proposal to include deadlines to limit the number of asserted claims and asserted patents is premature and one-sided.

**Exhibit 11**
**-339-**

| | | | | | |
|---|---|---|---|---|---|
| Markman Hearing | | | [set by Court] | 2/8/2021 | |
| All Parties File Advice of Counsel Disclosures (Patent L.R. 3-7) | | | 1/25/2021 | 30 days after Markman decision | |
| Simultaneously Responding Markman Briefs, Tutorials and Presentation Materials (Patent L.R. 4-5) | | | 1/25/2021 | | |
| Last Date to Add Parties / Amend Pleadings | | | 12/23/2020 | | |
| Simultaneous Opening Markman Briefs (Patent L.R. 4-5) | | | 12/21/2020 | | |
| Complete Claim Construction Discovery (Patent L.R. 4-4) | | | 12/7/2020 | | |
| Joint Markman Prehearing Statement Patent L.R. 4-3) | | | 11/9/2020 | | |
| Exchange Preliminary Claim Constructions and Extrinsic Evidence Patent L.R. 4-2 | | | 10/12/2020 | | |
| Exchange of Proposed Claim Terms for Construction (Patent L.R. 4-1) | | | 9/21/2020 | | |
| Invalidity Contentions (Patent L.R 3-3 and 3-4) | | | 9/7/2020 | | |
| Defendant reduces the number of asserted prior art references to no more than 12 references per patent and 50 references total.[5] | | | N/A | 8/10/2020 | |

---

[5]     Apple proposes that a prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count

**Exhibit 11**
**-340-**

| | | | | | |
|---|---|---|---|---|---|
| Infringement Contentions (Patent L.R. 3-1 and 3-2) | | | 7/27/2020 | | |
| Plaintiffs reduce number of asserted claims to no more than 8 claims per patent and 32 claims total. | | | N/A | 7/27/2020 | |
| Deadline to disclose core technical documents sufficient to show the operation of the accused products.[6] | | | 6/15/2020 | | |
| Initial Disclosures (Rule 26(a)(1)) | | | 4/14/2020 | | |

as one reference, as shall the closely related work of a single prior artist.

[6]    Any discovery-related dates that Apple proposes in this Presumptive Schedule of Pretrial Dates are subject to Plaintiffs providing an adequate identification of their alleged trade secrets in compliance with Section 2019.210 insofar as such an identification is a prerequisite to such discovery.

Exhibit 11
-341-

# EXHIBIT 12

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
stephen.jensen@knobbe.com
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
**KNOBBE, MARTENS, OLSON
 & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:  (949)-760-0404
Facsimile:  (949)-760-9502

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories, Inc.

Amanda R. Washton (Bar No. 227541)
a.washton@conklelaw.com
**CONKLE, KREMER & ENGEL
Professional Law Corporation**
3130 Wilshire Boulevard, Suite 500
Santa Monica, California  90403-2351
Phone: (310) 998-9100
Facsimile: (310) 998-9109

Peter A. Gergely (*Pro Hac Vice*)
PGergely@merchantgould.com
Ryan J. Fletcher, (*Pro Hac Vice*)
RFletcher@merchantgould.com

**MERCHANT & GOULD, P.C.**
1801 California St., Suite 3300
Denver, CO 80202
Telephone: (303) 357-1651
Facsimile: (612) 332-9081

Paige S. Stradley, (*Pro Hac Vice*)
PGergely@merchantgould.com
**MERCHANT & GOULD, P.C.**
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

Attorneys for Defendants, True
Wearables, Inc. and Marcelo Lamego

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

|  |  |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual, <br><br> Defendants. | Case No. 8:18-CV-02001-JVS-JDE <br><br> **JOINT STIPULATION ACCOMPANYING PLAINTIFFS' MOTION FOR ENTRY OF PROTECTIVE ORDER** <br><br> **[Discovery Document: Referred to Magistrate Judge John D. Early]** <br><br> **Hearing: April 2, 2020** <br> **Time: 10:00 a.m.** <br> **Ctrm: 6A, Sixth Floor** <br><br> **Discovery Cutoff:  04/1/2020** <br> **Pre-Trial Conf.:  08/03/2020** <br> **Trial:  08/18/2020** |

**Exhibit 12**
**-342-**

# TABLE OF CONTENTS

**Page No.**

I.   THE PARTIES AGREE THAT A PROTECTIVE ORDER IS APPROPRIATE, BUT DISAGREE ON ONE PROVISION...................... 1

II.  INTRODUCTORY STATEMENTS REGARDING REMAINING DISPUTE................................................................................ 2

    A.   Plaintiffs' Introductory Statement ........................................ 2

    B.   Defendants' Introductory Statement.................................... 4

III. SPECIFICATION OF ISSUES IN DISPUTE ........................... 8

    A.   Plaintiffs' Language: "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "RESTRICTED CONFIDENTIAL SOURCE CODE" Materials .............................. 8

    B.   Defendants' Proposed Language: "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "RESTRICTED CONFIDENTIAL SOURCE CODE" Materials .............................. 9

IV.  PLAINTIFFS' POSITION ........................................................ 10

    A.   Legal Background .............................................................. 10

    B.   Jensen Has Always Had Access to Designated Materials in Prior Cases for Masimo .................................................. 12

    C.   Defendants Cannot Show Jensen Will Inadvertently Disclose Designated Materials, Much Less For Competitive Decisionmaking ............................................ 13

        1.   Jensen and the litigation team will be subject to a patent prosecution bar to avoid any possible inadvertent disclosure ............................................ 15

        2.   Evaluation of public information concerning competitor products creates no risk of any inadvertent disclosure of Designated Materials ................ 15

        3.   Evaluation of third-party patents creates no risk of any inadvertent disclosure ...................................... 16

        4.   Other legal advice creates no risk of any inadvertent disclosure ........................................... 17

-i-

**Exhibit 12**

**TABLE OF CONTENTS**
(***cont'd***)

**Page No.**

|  |  |  |  |
|---|---|---|---|

5.    Jensen's board service presents no risk of any inadvertent disclosure ............................................ 17

6.    Board service is not a litmus test under the law ................... 19

7.    Jensen's personal relationship with Plaintiffs' CEO does not create a risk of inadvertent disclosure.................... 23

D.    Defendants Cannot Identify Any Specific Harm To Them ............. 24

E.    Defendants Restriction Would Prejudice Plaintiffs' Prosecution Of Its Claims ................................................ 26

V.    DEFENDANTS' POSITION ...................................................... 27

A.    Legal Background ............................................................ 27

B.    Stephen Jensen Presents an Unacceptably High Risk of Inadvertent Disclosure, and His Access Should Be Limited Accordingly ......................................................... 29

1.    Mr. Jensen is Plaintiffs' Most Trusted IP Advisor and Strategist ........................................................... 31

2.    Mr. Jensen's Roles Pose Specific Risks to Plaintiffs................................................................. 34

3.    Mr. Jensen's Description of His Roles Raises Questions ............................................................... 37

a.    Involvement in Patent Meetings................................. 37

b.    Involvement in Strategy Meetings ............................. 39

c.    Board Service ........................................................ 40

4.    Plaintiffs' Interpretation of "Competitive Decisionmaking" is Unduly Narrow ..................................... 44

5.    Mr. Jensen's Personal Financial Interests Add to Defendants' Concerns............................................... 47

C.    A Robust Patent Prosecution Bar is Necessary, but not Sufficient, to Protect Defendants From Harm ................................. 49

-ii-

**Exhibit 12**
**-344-**

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs"), as movant, and Defendants True Wearables, Inc. and Marcelo Lamego (collectively, "Defendants"), as respondent, submit the following Joint Stipulation regarding Masimo's Motion for Entry of a Protection Order.[1]  Pursuant to Local Rule 37-1, this Joint Stipulation was prepared following several conferences of counsel.  *See* Declaration of Brian Claassen ("Claassen Decl."), ¶¶ 5, 8.

## I. **THE PARTIES AGREE THAT A PROTECTIVE ORDER IS APPROPRIATE, BUT DISAGREE ON ONE PROVISION**

The parties have based their Proposed Stipulated Protective Order on Magistrate Judge Early's model protective order, which the parties have revised based on the Northern District of California's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets.  The parties agree that the nature of this case, and the commercial sensitivity of certain documents to be produced, necessitates a multi-tiered approach to confidentiality designations.  To that end, the Proposed Stipulated Protective Order sets forth three tiers of designations: "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY," and "RESTRICTED CONFIDENTIAL SOURCE CODE."  The "confidential" and "attorneys' eyes only" designations are consistent with those typically employed in cases involving sensitive technical and/or financial materials, and are especially important in cases involving allegations of trade secret misappropriation, such as this lawsuit.  Moreover, due to the highly sensitive nature of product source code, the parties agree that a third, more restrictive designation is appropriate

---

[1] Attached as Exhibits A and B to the Claassen Decl. are a copy of Defendants' Proposed Stipulated Protective Order, and a marked-up copy reflecting Masimo's proposed changes, respectively.

**Exhibit 12**
**-345-**

1    for the parties' respective productions of product source code in this case.

2         These three categories, and the corresponding protections detailed in the

3    proposed order, adequately address the parties' mutual concerns regarding the

4    risks inherent in the public disclosure of such materials.  As explained below,

5    however, the parties have been unable to agree on the precise language to

6    govern those who will be allowed to access documents designated either

7    "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED

8    CONFIDENTIAL SOURCE CODE."  Notwithstanding their dispute, the parties

9    have produced documents and continued the discovery process under the more

10   restrictive protective order proposed by Defendants pending resolution of this

11   motion.

## II.  INTRODUCTORY STATEMENTS REGARDING REMAINING DISPUTE

### A.    Plaintiffs' Introductory Statement

15        The parties' dispute who should have access to materials designated

16   "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "RESTRICTED

17   CONFIDENTIAL SOURCE CODE" (referred to herein as "Designated

18   Materials").  To simplify the present dispute, Plaintiffs agreed to exclude

19   "competitive decision-makers" of a Party or Party affiliate from access to

20   Designated Materials.  But Defendants want to broaden that exclusion.  They

21   propose to prevent anyone who, within two years of the filing of the lawsuit,

22   had a "business or ownership interest in a Party"—which Defendants define as

23   any "competitive decision makers, Board members, Directors, employees,

24   owners, shareholders, or affiliates of a Party"—from accessing Designated

25   Materials.  Indeed, Defendants offer no explanation why *all* former shareholders

26   or employees should be precluded from accessing Designated Materials.

27        For example, Defendants' overly broad exclusion could prevent multiple

28   lawyers from Masimo's and Cercacor's outside litigation team from seeing

Designated Materials. While the exclusion admittedly targeted Masimo's litigation team leader and Knobbe partner, Stephen Jensen, its breadth encompasses other Knobbe attorneys, and maybe others, depending on one's personal investments.

Cercacor is a privately held company. Masimo's stock is publicly traded and included in the Russell 1000. Kiani Decl., ¶ 3. Over eighty percent of Masimo's shares are held by institutional investors in mutual funds, retirement funds, exchange traded funds, index funds, and the like. *Id.* In addition, some Knobbe lawyers have held Masimo stock in the past two years. Jensen Decl., ¶ 13. Presumably, Defendants did not mean to encompass lawyers who hold insignificant number of shares relative to the size of Masimo or Cercaor. Masimo currently has a market cap of over $9 Billion. Kiani Decl., ¶ 3. Such common shareholders are certainly not competitive decision makers. For this reason, Defendants language is inappropriate.[2]

Moreover, the Defendants' attempt to target Jensen is also flawed. Jensen has been a litigation partner at Knobbe Martens since 1994 and Masimo's chosen outside litigation team leader for over 20 years. Jensen has been counsel for Masimo in many major intellectual property cases against Masimo's main competitors. *See* Jensen Decl., ¶ 7. In addition, he represented Masimo and Cercacor in many other adversarial matters involving the exchange of highly confidential information. *Id.* at ¶¶ 7-9. Other Masimo adversaries have employed similar tactics in attempt to deprive Masimo of Jensen's leadership in litigation. But never has a Court excluded Jensen from seeing any information, no matter how sensitive or confidential. *Id.* at ¶ 9.

Defendants hope to exclude Jensen from accessing Designated Materials

---

[2] Because Defendants to date have not addressed this ownership issue, Plaintiffs do not address this issue further in their detailed statement.

**Exhibit 12**
**-347-**

based on his lengthy legal representation of Plaintiffs.  Defendants' arguments are based on old and misleading information provided by Marcelo Lamego, the founder of True Wearables, and the former Masimo engineer and Cercacor Chief Technical Officer accused of stealing his former employers' trade secrets. Defendants argue that Jensen's position on the Board at Cercacor and his "routine involvement in strategic decisions" justifies his exclusion.  But even if Lamego's Declaration were accurate, it would show that Jensen provides Plaintiffs **legal** advice, and **not** that he is "highly involved in competitive decision making" or has "integrated himself" into that process as Defendants allege.

Defendants maintain that Jensen may inadvertently disclose Designated Materials.  But that is pure speculation.  Defendants have failed to identify any situations where Jensen, if allowed to access Designated Materials, presents **(a)** an unacceptable risk of disclosure, **(b)** that such disclosure would cause them specific prejudice or harm, or **(c)** that any such prejudice would outweigh the prejudice to Masimo in litigating this case.

In addition, Defendants have offered numerous safeguards to eliminate any concern that Jensen would inadvertently disclose Designated Materials or improperly "influence Plaintiffs' competitive decision-making" based on Designated Materials as Defendants argue.  Defendants' outright rejection of these safeguards shows that Defendants actually want to deny Masimo and Cercacor the benefit of its 20-year litigation history with Jensen, their choice of counsel, rather than protect Designated Materials from any inadvertent disclosure.

**B.    Defendants' Introductory Statement**

The primary issue is whether Stephen Jensen, a Cercacor board member

---

Presumably the parties can resolve it before arguing this motion by requiring a significant percentage of ownership.

and owner and a strategic advisor on competitive issues to one or more of the Plaintiffs should be allowed access to True Wearables' crown jewel trade secrets, including its source code. The answer is obviously "no" under the law. Plaintiffs devote much of their brief to downplaying Mr. Jensen's involvement with the Plaintiffs and imply that True Wearables is merely speculating about a threat that Mr. Jensen may disclose or use its most sensitive information.

The fact of matter is that Mr. Jensen holds himself out to the public as a competitive, strategic advisor to his clients. Mr. Jensen states on his website biography that he is "[a] highly regarded and accomplished leader with a record of un-paralleled success in developing and executing the strategic vision of technology companies" and that he "helps companies with "strategic development, competitive analysis[,] … tactical brand development and technology-focused initiatives." Finally, he states that "[h]e uses his technical know-how to help clients navigate even the most challenging commercial and legal landscapes while supporting tangible financial objectives." (https://www.knobbe.com/attorneys/steve-jensen). Mr. Jensen' statements are consistent with Dr. Lamego's description of Mr. Jensen's role and relationship with the Plaintiffs, as discussed herein.

There is no requirement that True Wearables demonstrate that Mr. Jensen violated protective orders in the past. Nor is it enough for Mr. Jensen to promise that he won't violate the protective order in this case.

The fact that he is a competitive decisionmaker is enough to preclude him from access to True Wearables' trade secrets. Unfortunately, it must also be noted that the Federal Circuit held that Mr. Jensen, knowing of the ethical standards governing practice before the United States Patent and Trademark Office, intentionally deceived the PTO, which resulted in a Masimo patent being held unenforceable.

The Federal Circuit stated: "a registered attorney is required to be

1  familiar with the laws, regulations, and ethical standards implicated in
2  practicing before the PTO. Hence, that Jensen did not disclose the *Masimo I*
3  litigation to the PTO, when he for certain knew about it since he was the lead
4  attorney representing Masimo in that litigation, *strongly suggests that he*
5  *intended to deceive the PTO.*" *Mallinckrodt, Inc. v. Masimo Corp.*, 147 F. App'x
6  158, 184 (Fed. Cir. 2005) (unpublished) (emphasis added).

7      Accordingly, the parties' dispute centers on Mr. Jensen's access to
8  materials designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or
9  "RESTRICTED CONFIDENTIAL SOURCE CODE" (referred to herein as
10  "Designated Materials").  Defendants' proposed restrictions in the protective
11  order are informed by Marcelo Lamego's years of experience observing the
12  competitive decision-making process within Masimo and Cercacor, which is
13  consistent with Mr. Jensen's website page. Defendants reasonably seek to limit
14  the access of "competitive decision makers, Board members, Directors,
15  employees, owners, shareholders, or affiliates of a Party," all of whom present
16  an unacceptably high risk of inadvertent disclosure of highly confidential
17  information. More specifically, Defendants seek to limit the access of Masimo's
18  strategic advisor, Stephen Jensen.   Based on Dr. Lamego's first-hand
19  experience, Mr. Jensen's role as a trusted strategic advisor to Masimo and board
20  member and partial owner of Cercacor presents an unacceptably high risk of
21  inadvertent disclosure of highly confidential information.

22      Further, while the parties agree that competitive decisionmakers of a
23  Party or Party affiliate should not have access to Designated Materials, the
24  parties disagree about which individuals qualify as competitive decisionmakers.
25  For instance, Plaintiffs maintain that Mr. Jensen is not a competitive
26  decisionmaker for either Plaintiff, despite his routine involvement in strategic
27  decisions for Masimo and Cercacor, his position on the board of Cercacor, and
28  his position as a partial owner of Cercacor.  Dr. Lamego's personal experience

**Exhibit 12**
**-350-**

with Mr. Jensen, corroborated by Mr. Jensen's statements on his website biography, indicate otherwise. Moreover, relevant precedent supports restricting access of not only competitive decisionmakers, but also those highly "involved" in competitive decision-making. Whether or not Mr. Jensen is directly responsible for making decisions for Masimo and Cercacor, he is a trusted advisor to Masimo's CEO and, as such, is in a unique position to influence Plaintiffs' competitive decisionmaking.

Over the course of twenty-five years advising Plaintiffs on a range of legal issues, Mr. Jensen has integrated himself into the decision-making process at Masimo and Cercacor. Few, if any, decisions related to intellectual property—either directly or indirectly—are made without Mr. Jensen's input. Accordingly, it is reasonable to restrict Mr. Jensen's access to Defendants' Designated Materials to avoid the risk of inadvertent disclosure as part of Mr. Jensen's fulfillment of his duties as an intellectual property strategic advisor. This court should reject Plaintiffs' proposed protective order, which would not protect Defendants from this risk. Instead, this court should adopt Defendants' proposed language, which addresses these risks without significantly affecting Plaintiffs' ability to litigate this case.

There is also a dispute between the parties as to the scope of the patent prosecution bar in this case. Plaintiffs oppose Defendants' proposal of an "ethical wall" between individuals exposed to highly confidential information and the individuals responsible for the parties' patent prosecution. A patent prosecution bar is an important safeguard to prevent Defendants' proprietary technological information from inadvertently making its way into Plaintiffs' future patent applications and patent claims. While a patent prosecution bar may protect against some risk of inadvertent disclosure described below, it is important to ensure that litigators do not end-run the patent prosecution bar by sharing that information with patent prosecutors. Consequently, an ethical wall

**Exhibit 12**
**-351-**

is a reasonable and important safeguard to avoid that risk, especially in light of the close connection between Mr. Jensen and patent prosecution activities described in detail below.

## III. <u>SPECIFICATION OF ISSUES IN DISPUTE</u>

**A.** **<u>Plaintiffs' Language: "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "RESTRICTED CONFIDENTIAL SOURCE CODE" Materials</u>**

Plaintiffs' propose the following language in paragraphs 8 and 9 of the proposed Protective Order (with the disputed language emphasized):

8. CONFIDENTIAL – ATTORNEYS' EYES ONLY.

…

For Protected Material designated CONFIDENTIAL – ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 6(a) and (c-g) who, at the time the lawsuit was filed (November 8, 2018) or within the previous two (2) years from the date the lawsuit was filed, ***were not competitive decision-makers of a Party or affiliates of a Party***.

…

9. RESTRICTED CONFIDENTIAL SOURCE CODE. For Protected Material designated RESTRICTED CONFIDENTIAL SOURCE CODE, the following additional restrictions apply:

…

(f) Access to DESIGNATED MATERIAL designated RESTRICTED CONFIDENTIAL SOURCE CODE shall be limited to outside counsel of who, at the time the lawsuit was filed (November 8, 2018) or within the previous two (2) years from the date the lawsuit was filed, ***were not competitive decision-makers of a Party or affiliates of a Party***.

**Exhibit 12**
**-352-**

**B.**    <u>**Defendants' Proposed Language:  "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "RESTRICTED CONFIDENTIAL SOURCE CODE" Materials**</u>

Defendants propose the following language in paragraphs 8 and 9 of the proposed Protective Order (with the disputed language emphasized):

8. CONFIDENTIAL – ATTORNEYS' EYES ONLY.

…

For Protected Material designated CONFIDENTIAL – ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a) and (c-g) who, at the time the lawsuit was filed (November 8, 2018) or within the previous two (2) years from the date the lawsuit was filed, *do not have a business or ownership interest in a Party (i.e., not competitive decision makers, Board members, Directors, employees, owners, shareholders, or affiliates of a Party)*.

…

9. RESTRICTED CONFIDENTIAL SOURCE CODE. For Protected Material designated RESTRICTED CONFIDENTIAL SOURCE CODE, the following additional restrictions apply:

…

(f) Access to DESIGNATED MATERIAL designated RESTRICTED CONFIDENTIAL SOURCE CODE shall be limited to outside counsel of who, at the time the lawsuit was filed (November 8, 2018) or within the previous two (2) years from the date the lawsuit was filed, *do not have a business or ownership interest in a Party (i.e., not competitive decision makers, Board members, Directors, employees, owners, shareholders, or affiliates of a Party)*.

…

**Exhibit 12**
**-353-**

28.     [Parties agree that Attorneys who receive Protected Material shall not prepare, prosecute, supervise, advise, counsel, or assist in the preparation or prosecution of any patent application in the field of pulse oximetry.]

To ensure compliance in accordance with the purpose of this provision, *each receiving Party shall create an "ethical wall" between those persons with access to a producing Party's Protected Material* designated " "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" under this Protective Order *and those persons who, on behalf of the receiving Party or its acquirer, successor, or predecessor, prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to pulse oximetry.*

## IV. <u>PLAINTIFFS' POSITION</u>

### A.   <u>Legal Background</u>

Rule 26(c) of the Federal Rules of Civil Procedure explicitly authorizes the district court, for good cause, to protect parties from "undue burden or expense" in discovery by ordering "that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

Defendants express no concern that anyone at Knobbe would willfully disclose Designated Materials and violate any protective order. Rather, Defendants argue that Jensen, with access to such material, presents an unacceptably high risk that he would inadvertently disclose Designated Materials. At the outset, Defendants have the burden of showing that high risk.

The mere classification of a lawyer, whether in-house counsel, retained outside counsel, board member, or former employee, does not control who gains access to confidential materials. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). The Federal Circuit made clear that "the standard is not regular contact with other corporate officials who make policy or even

competitive decisions." *Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991). Rather, "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party . . . must govern any concern for inadvertent or accidental disclosure." *U.S. Steel*, 730 F.2d at 1468 ("Whether an unacceptable opportunity for inadvertent disclosure exists, however, must be determined, as above indicated, by the facts on a counsel-by-counsel basis").

*Brown Bag* recognizes *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), as a leading authority. *Brown Bag* found that, in examining the risk of inadvertent disclosure, "a crucial factor in the *U.S. Steel* case was whether in-house counsel was involved in 'competitive decisionmaking'; that is advising on pricing or design 'made in light of similar or corresponding information about a competitor.'" *Brown Bag*, 960 F.2d at 1470.

Defendants also bear "the burden of showing that specific prejudice or harm will result from the disclosure of each document (or item of information) that it seeks to protect." *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 554 (C.D. Cal. 2007) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir.2003)). A "generalized opposition" to allowing counsel's access to information is insufficient. *Kinetic Concepts, Inc. v. Convatec Inc*., 2010 WL 1947605, *3–*4 (M.D. N.C. 2010).

The district court must balance the risk of the disclosure against the risk to the receiving party that the denial of access would impair prosecution of its claims. *Brown Bag*, 960 F.2d at 1470; *see also In re Deutsche Bank,* 605 F.3d 1373, 1380 (Fed Cir. 2010) ("the district court must balance [the risk of disclosure] against the potential harm to the opposing party from restrictions on that party's right to have the benefit of counsel of its choice"); *Mad Catz Interactive, Inc. v. Razor USA, Ltd.*, No. 13CV2371-GPC JLB, 2014 WL

**Exhibit 12**
**-355-**

4161713, at *6 (S.D. Cal. Aug. 19, 2014) (court must weigh "the risk of disclosure of confidential information to competitors . . . against the risk of actual prejudice—that protection of this information will impair the prosecution or defense of the parties' claims."). This requires the "district court to examine factually all the risks and safeguards surrounding inadvertent disclosure by any counsel, whether in-house or retained." *Brown Bag*, 960 F.2d at 1470.

A protective order mitigates risk because courts presume attorneys will abide by protective orders and not expose themselves to contempt sanctions. *Coventry First LLC v. 21st Servs.*, No. 05CV2179-IEG (NLS), 2005 WL 8173350, at *5 (S.D. Cal. Dec. 22, 2005) ("in the absence of any actual evidence of bad faith, the Court declines to presume [the attorneys] will disclose [the] confidential information, thereby breaching the protective order and exposing themselves to contempt sanctions") (*citing Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987)). Here, the parties agree that, if Jensen were to gain access to Designated Materials, he would be bound by the protective order just like every other outside attorney at Knobbe.

**B.** **Jensen Has Always Had Access to Designated Materials in Prior Cases for Masimo**

Jensen has served as Masimo's primary outside counsel for over twenty-five years. *See* Kiani Decl., ¶ 10; Jensen Decl., ¶ 4. For the last twenty years, he has led Masimo's litigation teams. Jensen Decl., ¶ 6. During that time, Jensen has represented Plaintiffs in numerous cases involving Masimo's direct competitors and the exchange of highly confidential information. *Id.* at ¶¶ 7-9. Although Masimo adversaries have tried to deprive Masimo of Jensen's leadership in litigation, they have never succeeded and Jensen has always been allowed to have access to highly confidential materials or information just like any other member of his litigation teams. *Id.* at ¶ 9.

Thus, Jensen is accustomed to protective orders, the viewing of

**Exhibit 12**
**-356-**

designated materials, and how to ensure that he never reveals those materials, and the information contained therein, to his clients, just as would any other outside lawyer. *Id.* at ¶ 10. Moreover, when appropriate, Jensen would use the best safeguard possible, as would any other outside lawyer, namely he would not engage in any discussion that could arguably implicate any information revealed to him under a protective order. *Id.*

**C.** **Defendants Cannot Show Jensen Will Inadvertently Disclose Designated Materials, Much Less For Competitive Decisionmaking**

Defendants argue that Jensen should not have access to Designated Materials because, if Jensen were to see such materials, he would ***inadvertently*** disclose those materials to his clients who would then use it to make competitive decisions. Defendants' argument is pure speculation. Their entire argument rests upon the Lamego Declaration. But that declaration fails to identify any situations where Jensen, if allowed to access Designated Materials, presents **(a)** an unacceptable risk of disclosure, **(b)** that such disclosure would cause them specific prejudice or harm, or **(c)** that any such prejudice would outweigh the prejudice to Masimo in litigating this case. Rather, that declaration merely shows that Jensen routinely gives ***legal*** advice to Plaintiffs, not involvement in competitive decisionmaking related to the Designated Materials. In fact, Lamego does not even identify the materials he believes Plaintiffs would use competitively.

For example, Lamego claims that Jensen assists Plaintiffs in prosecuting patent applications, Lamego Decl., ¶ 4, and in improving their patent portfolios, *id*. at ¶¶ 4-5. He also claims that Jensen advises Plaintiffs on the significance of patents owned by others, *id*. ¶ 6, provides "legal advice" concerning various types of agreements and human resources issues, *id*. ¶ 7, and discusses "legal issues" during out-of-work gatherings, *id*. ¶ 9. All of this concerns legal advice. The declaration nowhere supports Defendants' argument that Jensen poses a

**Exhibit 12**
**-357-**

high risk of inadvertently disclosing Designated Materials, nor his clients' use of such information to make competitive decisions.  If Lamego's declaration supported such an argument, Defendants' arguments could be made with regard to any lawyer who regularly provides legal advice to a client.

To evaluate the risk of inadvertent disclose, the court should examine "the factual circumstances surrounding [Jensen's] activities, association, and relationship with a party."  *U.S. Steel*, 730 F.2d at 1468.  A "crucial factor" is whether Jensen is "involved in 'competitive decisionmaking'; that is advising on pricing or design 'made in light of similar or corresponding information about a competitor.'"  *Brown Bag*, 960 F.2d at 1470 (quoting *U.S. Steel*, 730 F.2d at 1468 n.3).  Though a crucial factor, involvement in competitive decisionmaking does not form a litmus test for showing a high risk of inadvertent disclosure.  *ODS Techs., L.P.*, 583 F. Supp. 2d 1141, 1144–45 (C.D. Cal. 2008) (citing *Volvo Penta of the Americas, Inc. v. Brunswick Corp.*, 187 F.R.D. 240, 245 (E.D. Va. 1999)).

Moreover, when trying to deny lawyers access to certain information, "the all-important codes and model rules of professional conduct, coupled with the specter of attorney sanctions or even disbarment, should also allay many of [Defendants'] concerns of intentional or unintentional disclosure of its information to [Plaintiffs']."  *Volvo Penta*, 187 F.R.D. at 243; *see also U.S. Steel*, 730 F.2d at 1468.  Because Jensen is presumed to adhere to his ethical duties and to support any restrictive protective order, Defendants had to make a very specific showing of an unacceptable risk of disclosure.

Defendants makes no such showing.  Nowhere does Lamego's declaration show Jensen is "involved in 'competitive decisionmaking'; that is advising on pricing or design 'made in light of similar or corresponding information about a competitor.'"  *Brown Bag*, 960 F.2d at 1470 (quoting *U.S. Steel*, 730 F.2d at 1468 n.3).  For example, Lamego never mentions pricing or

**Exhibit 12**
**-358-**

design of products or services. Rather, Defendants merely show that Jensen, when giving legal advice, has regular contact with the corporate officers who make the competitive decisions. That is woefully insufficient. *See Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1579 (Fed. Cir. 1991) (finding "largely irrelevant" regular contact with corporate officials who make policy or competitive decisions). As explained below, the Lamego Declaration, nowhere established a high risk of inadvertent disclosure or use of confidential information for competitive decisionmaking

### 1. Jensen and the litigation team will be subject to a patent prosecution bar to avoid any possible inadvertent disclosure

Lamego points to alleged "Patent Meetings" where patent filing strategies were discussed. Lamego Decl., ¶¶ 4-5. This information is, at best, out of date. Jensen Decl., ¶ 14. Jensen delegated patent prosecution responsibilities to other lawyers nearly two decades ago. *Id.* ¶¶ 5, 15. Patent disclosure meetings at Cercacor and Masimo have been handled by those other lawyers for many years. *Id.* Moreover, in this case, the litigation team's separation from relevant patent prosecution is formalized by the agreed-to patent prosecution bar already included in the proposed Protective Order. Claassen Decl., Ex. A at 18-19; Jensen Decl., ¶ 16. Thus, there is no risk, much less an unacceptable risk, that Jensen would disclose Defendants' Designated Materials in the furtherance of Plaintiffs' patent prosecution strategy.

### 2. Evaluation of public information concerning competitor products creates no risk of any inadvertent disclosure of Designated Materials

Lamego also points to Jensen's past involvement in presentations where his litigation teams evaluate and present whether competitor products infringe Masimo's patents and how those patents can be improved. *See* Lamego Decl., ¶ 5. Those presentations, however, address ***public*** information about third-party

products.  *See* Jensen Decl., ¶ 17.  Jensen does not include confidential information in those presentations.  Kiani Decl., ¶ 21.  These types of meetings are typical between litigation counsel and their clients.  Defendants never explain how this type of pre-litigation due diligence—based on public information—would pose any risk that the litigation lawyers would inadvertently disclose Designated Materials.

After this litigation commenced and Defendants disclosed confidential information to the litigation team concerning the accused product, the patent prosecution bar would prohibit anyone exposed to the Designated Materials from assisting Plaintiffs in improving relevant patents with further patent prosecution.  The Lamego declaration, while appearing to single out Jensen, also does not differentiate Jensen from others in his litigation team on this issue.

### 3.   Evaluation of third-party patents creates no risk of any inadvertent disclosure

Lamego also claims to have worked with Jensen on reviewing a competitor patent portfolio, and that Jensen provided ***legal advice*** with respect to coverage of those patents.  *See* Lamego Decl., ¶ 6.  Lamego's recollection is wrong (and an improper disclosure of Cercacor's attorney-client privileged information).  Jensen Decl., ¶ 18.  Masimo would be willing to submit testimony for *in camera* review to explain the legal advice actually provided.  Moreover, even if Lamego's recollection were correct, Lamego's claim merely reflects Jensen's role as outside litigation counsel for Masimo.  This type of advice could equally apply to any litigation counsel, including Defendants' lawyers in this case.  It certainly does not establish Jensen is highly involved in competitive decision-making, as Defendants argue.

Lamego's allegation that Jensen offered input on competitor patents similarly proves nothing.  *See* Lamego Decl., ¶ 6.  Again, that intellectual property, by definition, is publicly available.  This has no bearing on the use of

**Exhibit 12**
**-360-**

Designated Materials.

### 4. Other legal advice creates no risk of any inadvertent disclosure

Lamego also states that he observed Jensen provide legal advice to Masimo's CEO on a range of issues, such as "nondisclosure agreements, supplier agreements, corporate contracts, and human resource issues." *Id.* at ¶ 7. These activities are routine. Jensen Decl., ¶ 19. Defendants never explain how they establish Jensen is highly involved in competitive decision-making. *See Barnes and Noble, Inc. v. LSI Corp.*, 2012 WL 601806, *3-*5 (N.D. Cal. 2012). Moreover, Defendants do not explain how such routine legal advice presents a risk that Jensen would inadvertently disclose any of the Designated Materials.

### 5. Jensen's board service presents no risk of any inadvertent disclosure

Defendants assert that Jensen's service on the Board of the Masimo Foundation for Ethics, Innovation and Competition in Healthcare ("the Masimo Foundation") and on the Board of Cercacor should preclude him from accessing Designated Materials. The law and the facts of this case do not support such a draconian result.

Jensen's service on the Masimo Foundation is irrelevant and presents no risk of inadvertent disclosure of Defendants' confidential information. The Masimo Foundation is a non-profit organization that invests in programs and initiatives designed to improve patient safety and outcomes, promote efficient and cost-effective healthcare delivery, and provide advanced healthcare to people worldwide who may not otherwise have access to lifesaving technologies. Jensen Decl., ¶ 21. It does not develop, sell or price any products or technologies. *Id.* Defendants have identified no relationship between this charitable organization and Defendants' Designated Materials that could possibly give rise to an unacceptable risk of inadvertent disclosure for

**Exhibit 12**
**-361-**

competitive purposes, or harm them in any way.

Jensen's service on the Cercacor Board also presents no risk of inadvertent disclosure of Defendants' Designated Materials. Cercacor is a 1998 spin off from Masimo that owns an advanced technology called "rainbow." Kiani Decl., ¶ 4. The "rainbow platform" can measure multiple physiological parameters such as total hemoglobin, carboxyhemoglobin, methemoglobin, and oxygen reserve. Cercacor licenses this technology to Masimo for the professional healthcare market. *Id.* Cercacor does not focus its research and development on pulse oximetry because it relies on Masimo's long-established industry leading pulse oximetery technology.

Plaintiffs' only interest is in stopping the use and disclosure of their technology by Defendants. Kiani Decl., ¶ 5. From a competitive standpoint, Cercacor has no interest any True Wearables' information, whether confidential or not. For example, Cercacor has no interest in True Wearables' pricing (which is published online), its hardware (which can be purchased online and is described in detail in a published patent application), or its software/algorithms (which are substantially inferior to that available to Cercacor from Masimo). Kiani Decl., ¶¶ 7-8. As explained in greater detail in the Kiani Declaration, the True Wearables product is not FDA cleared, operates for only 24 hours, and sells for substantially more than the Plaintiffs' superior product. *Id.* This might explain why Defendants have not specifically identified the materials they want to designate and keep away from Jensen. It also suggests that Defendants fear that Jensen might readily recognize what defendants might have taken from Plaintiffs and thus help Plaintiffs prove their trade-secrets case.

In addition, Defendants have not related its Designated Materials to the actions of the Cercacor Board. That Board does not expect to make, or even discuss, any competitive business decision that would relate in any way to any information concerning True Wearables. Kiani Decl., at ¶¶ 17-18; Jensen Decl.,

**Exhibit 12**
**-362-**

¶ 22.  Even if any such decision were to be made, it would not be made by the Cercacor Board.  Rather, such decisions would be made by the Cercacor officers.  Kiani Decl., ¶ 18; Jensen Decl., ¶ 23.

Even if the Board were to engage in any discussion that somehow related to Designated Materials or competition with True Wearables, Jensen has already informed Defendants that he would abstain from any such discussion, thus preventing the possibility of any inadvertent disclosure.  Jensen Decl., ¶ 23; Kiani Decl., ¶ 19.  Such abstentions are common practices at Board meetings generally, and at Masimo and Cercacor.  Kiani Decl., ¶ 20.  Jensen has in fact seen such abstentions on many occasions and has done so himself. Jensen Decl., ¶ 23; Kiani Decl., at ¶ 21.  Board members are frequently faced with discussions that might implicate knowledge that they have obtained from other companies for which they are also board members.  The board members are alert to these conflicts, and simply abstain from any discussion that is even close.  This occurs regularly.  Kiani Decl., ¶ 20.

### 6.  <u>Board service is not a litmus test under the law</u>

Defendants cannot simply rely on Jensen's board service as disqualifying him from Designated Materials, without offering any reasoning.  Defendants cite to only one decision that limited an outside counsel's access to designated materials, arguing that he was excluded because he sat on the party's board of directors.  *See Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.*, No. 5:03CV165 (HGM/GLS), 2003 WL 1956214, at *5 (N.D.N.Y. Apr. 24, 2003).

Defendants ignore the reasoning in *Norbrook*.  First, that lawyer also served as a corporate officer, specifically corporate secretary.  *Id*.  Second, the court found that the defendant was not unduly prejudiced because other lawyers on the team could handle the litigation just as effectively.  *Id*.  Third, the court employed some reasoning that is contrary to law.  It found that the lawyer, "as a member of the Board of Directors, [] sits in the same room as those involved in

**Exhibit 12**
**-363-**

competitive decision making." *Id.* The court continued "that it cannot endorse a situation that places [the lawyer's] ethical obligations as an attorney in direct competition with his fiduciary duty to [the defendant]." *Id.*

The correct question is whether the lawyer provides "advice and participation in competitive decisionmaking." *Id.*; *see also U.S. Steel*, 730 F.2d at 1468 n.3 (Fed. Cir. 1984) ("counsel's advice and participation in any or all of client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor"). *Norbrook* recognized that the corporate secretary and board member did ***not*** "directly participate in competitive decision making, product design, marketing strategy, scientific research, etc." 2003 WL 1956214, at *5. But the court dismissed these critical findings and found that merely sitting "in the same room as those involved in competitive decision" creates an "unacceptable opportunity for the inadvertent disclosure of confidential information." *Id.* But the case law rejects such superficial reasoning. As the Federal Circuit has explained, "the standard is not regular contact with other corporate officials who make policy or even competitive decisions." *Matsushita*, 929 F.2d at 1580.

Obviously, mere presence with decision makers is insufficient. Every lead litigation lawyer regularly reports to boards and corporate officers about the ongoing litigation, despite having access to all confidential information. Thus, if physical proximity were the standard, that would preclude lead litigation counsel from ever seeing confidential information.

Moreover, if competition between a board member's ethical obligations for confidentiality and his fiduciary duty to the board created an untenable conflict, as *Norbrook* reasoned, no board member could ever abstain from board discussions or decisions that implicate the confidential information learned from another party. But such abstentions are commonplace. Kiani Decl., ¶ 20.

This might explain why Plaintiffs cannot find any appellate court or any

**Exhibit 12**
**-364-**

district court in this circuit that has cited *Norbrook*. And, the few district courts outside this circuit that have cited it are easily distinguishable and involve in-house counsel only. For example, in *TiVo Inc. v. Verizon Commc'ns, Inc.*, No. 2:09-CV-257, 2010 WL 9430466, at *2 (E.D. Tex. June 15, 2010), the in-house lawyer was the defendant's Senior Vice President and Deputy General Counsel, as well as a member of the boards of two of defendant's affiliates. Further *TiVo* found that defendant would not be prejudiced because outside counsel had full access to all of the materials. *Id*. Similarly, in *Meridian Enterprises Corp. v. Bank of Am. Corp*., No. 4:06CV01117 RWS, 2008 WL 474326, at *1 (E.D. Mo. Feb. 15, 2008), the lawyer was one of two owners of the plaintiff, was the plaintiff's Vice President, and served only as local counsel. The court found no prejudice because the trial counsel firm would have complete access to the confidential material. *Id.* *4. Likewise, in *Silversun Indus., Inc. v. PPG Indus., Inc.*, 296 F. Supp. 3d 936, 941 (N.D. Ill. 2017), the in-house lawyer was the defendant's Associate General Counsel and Corporate Secretary who admitted to overseeing the defendants' corporate governance and finance functions (in addition to legal responsibilities).

Even if *Norbrook* were legally sound, the facts in the present matter are much different. First, Jensen is not a corporate officer. Second, because of Jensen's unique history and knowledge, Plaintiffs would be prejudiced if Jensen could not fully participate in the litigation. Kiani Decl., ¶¶ 11-12. Third, Jensen has agreed to abstain from any such discussion that might possibly implicate any Designated Material, thus providing a safeguard against any inadvertent disclosure. Jensen Decl., ¶ 19. Fourth, nothing in Jensen's role requires him to participate or advise in competitive decision making. Kiani Decl., ¶ 13.

Because the required legal analysis is so factually based, court frequently allow even in-house lawyers access to highly confidential materials. *See, e.g., Boehringer Ingelheim Pharmaceuticals, Inc. v. Hercon Laboratories Corp*., 18

**Exhibit 12**
**-365-**

U.S.P.Q.2d 1166, 1990 WL 160666, at *2 (D. Del. 1990) (allowing disclosure to six in-house counsel, because counsel obliged under professional rules and is capable of segregating themselves from work that could conflict with their obligations under the protective order); *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 23 (D. Del. 1988) (granting access to in-house counsel who were admitted to the bar of the court and bound by the code of professional responsibility and whose work would be segregated in such a way as to avoid the possibility of conscious or unconscious abuse of confidential information).

The facts in *Brown Bag* strongly warranted the denial of access to in-house counsel. As the Ninth Circuit observed, the lawyer was "Brown Bag's sole legal advisor and personnel manager." *Brown Bag*, 960 F.2d at 1471. The court recognized that he was "hired just a few weeks prior to the hearing, that he was one of thirteen or fourteen employees, that he did not yet know the duties of fellow employees." *Id.* It found that "Brown Bag's counsel's employment would necessarily entail advising his employer in areas relating to Symantec's trade secrets" and involved "competitive decisionmaking." *Id.* It also found that the protected materials were not even relevant to Brown Bag's infringement claim. *Id.* Under these circumstances, Brown Bag could not show any prejudice in being denied access to the confidential material while Symantec showed its harm if access were allowed.

The facts concerning Jensen are completely different to those in *Brown Bag*. As discussed, Jensen has served as Plaintiffs' outside litigation counsel for over twenty years. He also has unique knowledge about Plaintiffs' technology. Plaintiffs rely heavily on his advice and counsel in leading their litigation teams and would be prejudiced without him having access to Designated Materials in this case. Kiani Decl., ¶¶ 10-12. Moreover, Masimo has an in-house legal department under the direction of a General Counsel and Executive Vice

**Exhibit 12**
**-366-**

President, and thus Jensen is not its sole legal advisor and personnel manager as in *Brown Bag*. *Id.* at ¶¶ 14-15. Cercacor has full access to that legal department. *Id.* at ¶ 15. Nothing about Jensen's role requires him to advise Plaintiffs in areas relating to Defendants' Designated Materials, whatever they may be, or in competitive decisionmaking. *Id.* at ¶ 13.

In view of what the law requires to fully analyze when a lawyer should be excluded from seeing Designated Materials, Defendants have woefully failed to carry their burden. The Lamego Declaration focuses solely on Jensen giving legal advice, and never justifies Defendants' argument that he would inadvertently disclose Designated Material. Under the law, Jensen's board service is insufficient.

### 7. Jensen's personal relationship with Plaintiffs' CEO does not create a risk of inadvertent disclosure

Jensen's personal relationship with Masimo's CEO does not show that he would disclose Designated Materials, inadvertently or otherwise. As the Federal Circuit recognized in *U.S. Steel*:

> Indeed, it is common knowledge that some retained counsel enjoy long and intimate relationships and activities with one or more clients, activities on occasion including retained counsel's service on a corporate board of directors. … Thus the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure.

730 F.2d at 1468.

In paragraph 9 of Lamego's Declaration, he says that he has seen Jensen with Kiani at out-of-work gatherings, where they have discussed "Masimo's legal issues and intellectual property strategy." But as explained above, regular contact is largely irrelevant. *Matsushita*, 929 F.2d at 1580 ("the standard is not regular contact with other corporate officials who make policy or even

**Exhibit 12**
**-367-**

competitive decisions"). Moreover, as explained above, giving legal advice on "intellectual property strategy" is not participation or advice in competitive decision-making. Every attorney who sees Designated Materials in a patent and trade secret case, including those representing Defendants at Merchant & Gould, are providing legal advice to their client on "intellectual property strategy." Accordingly, a mere close relationship does nothing to help Defendants exclude Jensen.

In view of the above arguments and the many safeguards in place, Defendants cannot meet their burden of showing a high risk of inadvertent disclosure of Designated Materials.

**D.     Defendants Cannot Identify Any Specific Harm To Them**

Defendants also bear "the burden of showing that specific prejudice or harm will result from the disclosure of each document (or item of information) that it seeks to protect." *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 554 (C.D. Cal. 2007) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir.2003)). Defendants cannot do so when they fail to even identify any particular document or information. Indeed, Defendants have ignored this issue altogether.

Defendants suggest that Jensen will subconsciously use his knowledge of Defendants' unidentified confidential information to influence his legal advice concerning Masimo's intellectual property strategy. That is not prejudice, and does not flow from any violation of the proposed Protective Order. That is merely either (1) legal advice in the case or (2) prohibited under the patent prosecution bar, like every lawyer on the litigation team exposed to the Designated Materials.

Likewise, Defendants cannot identify any prejudice or harm relating to Jensen's service on the Cercacor board. Instead, Defendants contend that Jensen will inevitably disclose Designated Material. But as explained,

**Exhibit 12**
**-368-**

Defendants have not made out that case.  Nothing suggests Jensen will divulge Defendants' confidential information to anyone, including the Cercacor Board.  Moreover, Defendants have not shown how they would be harmed by such a disclosure.  As explained above, Plaintiffs have no interest in the underlying technology of Defendants.

Defendants' feigned concern is not genuine when viewed in light of their defense in this case.  Lamego learned about pulse oximetry and wearable sensors at Plaintiffs, with unfettered access and an obligation to safeguard Plaintiffs' most highly guarded secrets, for over a decade.  Kiani Decl., at ¶ 6.  Lamego was the only person with such unfettered access to confidential information at both Masimo and Cercacor.  *Id.*  Defendants now claim that Lamego was able to segregate that detailed relevant knowledge obtained as a design engineer and develop the True Wearables product independent of any of that knowledge.  *See* Dkt. 46 at 16 (pleading an affirmative defense of "Independent Development"); Ex. J at 10 (Response to Interrogatory No. 8 stating, "True Wearables independently developed the Oxxiom system . . . .").  On the other hand, Defendants are trying to exclude Jensen, an outside litigation lawyer not a product designer, because he will supposedly be unable to avoid inadvertently disclosing what he learns to his clients for competitive decisionmaking.  Kiani Decl., at ¶ 12.  While the Plaintiffs cannot rely on Lamego's inevitable use or disclosure of trade secrets, *Bayer Corp. v. Roche Molecular Sys. Inc.*, 72 F. Supp. 2d 1111, 1120 (N.D. Cal. 1999), Defendants should also be precluded from presuming Jensen would inevitably disclose Designated Material.

Under the circumstances and relevant law, Defendants have not shown that their Protective Order is necessary in this case.  In addition to failing to show a high risk of inadvertent disclosure, Defendants failed to show any such disclosure would cause them actual harm.

**Exhibit 12**
**-369-**

## E.  Defendants Restriction Would Prejudice Plaintiffs' Prosecution Of Its Claims

Defendants have also ignored how exclusion of Jensen would prejudice Plaintiffs' prosecution of their case.  *See Mad Catz Interactive, Inc. v. Razor USA, Ltd.*, No. 13CV2371-GPC JLB, 2014 WL 4161713, at *6 (S.D. Cal. Aug. 19, 2014); *In re Deutsche Bank,* 605 F.3d 1373, 1380 (Fed Cir. 2010) ("the district court must balance [the risk of disclosure] against the potential harm to the opposing party from restrictions on that party's right to have the benefit of counsel of its choice").

As explained above, Jensen has represented Plaintiffs in litigation matters for two decades.  *See* Jensen Decl., ¶¶ 6-8.  Plaintiffs rely heavily on Jensen to evaluate and manage all of their intellectual property litigation and any other litigation concerning the companies' technologies.  *Id.* at ¶ 6; Kiani Decl., ¶¶ 10-12.  Over the years, Jensen has gained extensive knowledge of Plaintiffs' technology.  This has given him the unique ability to readily discern when others are using that technology, assuming of course he can see the relevant evidence.  No other lawyer has Jensen's breadth of understanding of Plaintiffs' technology and their trade secrets. *Id.* at ¶ 11; Jensen Decl., ¶ 12.

Under Defendants' proposal, Jensen would be unable to review the most relevant documents and information and be forced to abstain from strategy discussions with his litigation team.  Indeed, just as Defendants clearly intend, their proposal has already frustrated the Knobbe litigation team's process. Team members that normally coordinate on all issues with Jensen have not been able to communicate freely with Jensen because Plaintiffs have been operating under Defendants' proposed restriction to keep the case moving.  Jensen Decl., ¶ 15.  Now, that is no longer feasible because trial is approaching and important litigation decisions need to be made.  For two decades, such decisions are primarily discussed and coordinated with Jensen.  Jensen Decl., ¶ 11.

**Exhibit 12**
**-370-**

If this Court, however, were persuaded by Defendants arguments that Jensen should be excluded because of his Cercacor Board membership, despite his agreement to abstain, Jensen would resign from the Board to resolve the issue. Jensen Decl., ¶ 24. Indeed, if necessary, that would be the choice of his clients, the Plaintiffs. Kiani Decl., ¶ 22. His participation and leadership in this litigation is viewed as critical to Plaintiffs. Kiani Decl., ¶ 16. No other lawyer can replace Jensen. Kiani Decl., ¶ 11. If it would help the Court in deciding this motion, Mr. Kiani, CEO of Masimo and Cercacor, would be willing to testify live to answer any questions the Court may have. Kiani Decl., ¶ 23.

It is well known in litigation circles that having Jensen as a litigation leader is an advantage. As a result, parties in prior cases have also sought to restrict Jensen's access to confidential materials. Jensen Decl., ¶ 9. Yet, never has he been precluded from reviewing materials subject to a protective order. *Id.* This recurrence suggests that others, including Defendants, are really concerned about depriving Plaintiffs of their specifically experienced choice of counsel, a huge advantage in cases concerning technology.

The prejudice to Plaintiffs is real and significant. Because the actual prejudice to Plaintiffs outweighs the non-existent—and unexplained—harm to Defendants, this Court should reject Defendants' proposed restriction. Accordingly, this Court should adopt Plaintiffs' proposed Protective Order.

## V. <u>DEFENDANTS' POSITION</u>

### A. <u>Legal Background</u>

In cases involving the exchange of highly sensitive information between competitors, a carefully crafted protective order can minimize the risk that one party is unfairly prejudiced when it complies with its duty to produce such materials. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). Specifically, a protective order will set forth practical rules regarding what individuals can do with information contained in confidential

**Exhibit 12**
-371-

1  materials.  Even assuming compliance, though, these use- and disclosure-based
2  restrictions may not be sufficient to protect the sensitive information.

3  Certain individuals may inadvertently disclose confidential information as
4  part of their job duties, despite their best efforts to comply with disclosure-based
5  restrictions.  Accordingly, it is often appropriate to also impose access-based
6  restrictions to govern who is allowed to access highly sensitive materials.
7  Access-based restrictions protect against the undue risk of inadvertent disclosure
8  by identifying individuals who—by the nature of their role—pose an
9  unacceptably high risk of inadvertent use or disclosure and placing
10  commonsense restrictions on those individuals' access to highly sensitive
11  materials.

12  In certain circumstances, attorneys will be among the individuals who
13  pose an unacceptably high risk of inadvertent use or disclosure.  There is no
14  bright-line rule (e.g., based on an attorney's title or an attorney's status as an
15  employee or retained counsel) to determine whether an attorney falls among
16  these high-risk individuals.  *Brown Bag Software v. Symantec Corp.*, 960 F.2d
17  1465, 1470 (9th Cir. 1992).  Rather, the determination whether to restrict an
18  attorney's access to highly confidential materials often depends on the extent to
19  which that specific attorney is involved in the "competitive decisionmaking" of
20  a party.  *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n. 3 (Fed. Cir.
21  1984).  The determination—for in-house and retained counsel alike—requires a
22  counsel-by-counsel examination of that counsel's activities, association, and
23  relationship with a client.  *Brown Bag Software v. Symantec Corp.*, 960 F.2d at
24  1470.  On several occasions, courts have determined that a party's counsel
25  posed an unacceptable risk of inadvertent disclosure due to counsel's position
26  on the board of a party or due to counsel's integration with a party's strategic
27  decision-making.  *See, e.g., Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.*, No.
28  5:03CV165 (HGM/GLS), 2003 WL 1956214, at *16 (N.D.N.Y. Apr. 24, 2003);

- 28 -

**Exhibit 12
-372-**

*Tivo Inc. v. Verizon Communs., Inc.*, No. 2:09-CV-257, 2010 U.S. Dist. LEXIS 145333, at *17 (E.D. Tex. June 15, 2010); *Silversun Indus. v. PPG Indus.*, 296 F. Supp. 3d 936, 945 (N.D. Ill. 2017).

The issue of inadvertent disclosure can take on additional significance in cases involving patents and trade secrets when the firm representing a party in litigation matters also represents the party in patent prosecution and other intellectual property matters related to patent prosecution. *See In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373 (Fed. Cir. 2010). For attorneys involved in "making strategic decisions on the type and scope of patent protection that might be available or worth pursuing, . . . competitive decisionmaking may be a regular party of their representation." *Id.* at 1380. In such instances, "the risk of inadvertent disclosure of competitive information learned during litigation is therefore much greater." Even where an attorney is not directly involved in patent prosecution, these attorneys may have "the opportunity to influence the direction of prosecution," and the risk of inadvertent disclosure may nonetheless arise. *Id.*

**B.** **Stephen Jensen Presents an Unacceptably High Risk of Inadvertent Disclosure, and His Access Should Be Limited Accordingly**

The risk of inadvertent disclosure is evaluated on a counsel-by-counsel basis. We must look to the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party. Here, that individual is Stephen Jensen. While Plaintiffs refer to Mr. Jensen as their "outside litigation counsel," a close examination Mr. Jensen's actual activities, association, and relationship with Plaintiffs reveals that this title is quite misleading.

In reality, Mr. Jensen has become a trusted advisor to his client on a wide range of issues. He has earned the personal trust of his client's CEO, who praises "Mr. Jensen's broad and unparalleled understanding of Masimo's and

**Exhibit 12**
**-373-**

1   Cercacor's business goals, technology, and intellectual property." Kiani Decl. at

2   ¶ 10. ███████████████████████████████████████████████████████

3   ██████████████████████████████████████████████████████████

4   ██████████████████████████████████████████████████████

5        Plaintiffs have presumably generously compensated Mr. Jensen for his

6   twenty years of services as a trusted advisor.  And Plaintiffs' investment in Mr.

7   Jensen has likely been worthwhile.  It certainly benefits Plaintiffs to have a

8   trusted intellectual property advisor with experience as a patent prosecutor, a

9   due diligence advisor, an in-house attorney and VP, a litigation leader, a

10  personal advisor, and more.  *See* Declaration of Anthony Allan (the "Allan

11  Declaration") at ¶ 3.

12       Despite all of its benefits, though, Plaintiffs—and Mr. Jensen—must

13  accept that such an arrangement also has its consequences.  Because Mr. Jensen

14  is so tightly integrated into Plaintiffs' daily operations, including its intellectual

15  property operations, reasonable precautions must be taken to ensure that

16  Plaintiffs' litigation adversaries are not unfairly prejudiced by being forced to

17  share their most sensitive business information and source code with him.

18       Here, Defendants ask the court to allow these reasonable precautions.

19  This request is not motivated by litigation gamesmanship.  Restricting Mr.

20  Jensen's access to Defendants' most confidential materials will not hinder

21  Plaintiffs' legal representation, which includes, among others, Joseph Re, who

22  has led trial teams for Masimo in "two of the most successful patent cases

23  presented to juries."  Biography of Joseph Re, *accessible at*

24  https://www.knobbe.com/attorneys/joe-re.  Nor is Defendants' request rooted in

25  speculation.  Defendant Marcelo Lamego worked at Masimo and Cercacor for

26  roughly twelve years, including multiple years as Chief Technology Officer for

27  Cercacor.  Dr. Lamego understands the nature of Mr. Jensen's role and the risks

28  of inadvertent disclosure inherent in his role.

- 30 -

**Exhibit 12**
**-374-**

Plaintiffs attempt to downplay Defendants' concerns by offering vague descriptions of Mr. Jensen's role that are supposedly meant to reveal "significant factual inaccuracies in Lamego's recollection." Plaintiffs further attempt to confuse the issue by taking a narrow view of "competitive decisionmaking" that is inconsistent with the relevant standards.  None of Plaintiffs' arguments, though, change the fact that Mr. Jensen's role creates an unacceptably high risk of inadvertent disclosure and that restricting his access to Defendants' most highly confidential materials is the only way to address this risk.

1. <u>**Mr. Jensen is Plaintiffs' Most Trusted IP Advisor and Strategist**</u>

*U.S. Steel* requires inquiry into the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party. In this case, Defendants have unique insight into the factual circumstances surrounding Mr. Jensen's activities, association, and relationship with Plaintiffs.

Defendant Marcelo Lamego worked at Masimo and Cercacor for roughly twelve years, including multiple years as Chief Technology Officer for Cercacor.  Declaration of Marcelo Lamego ("Lamego Del."), ¶ 1.  During that time, Dr. Lamego personally witnessed Stephen Jensen and his team of intellectual property attorneys influence Masimo's and Cercacor's intellectual property strategy at every level.  Dr. Lamego has seen that Mr. Jensen serves a role more akin to Masimo's and Cercacor's "Head of Intellectual Property Strategy" than to merely "one of Plaintiffs' outside litigation counsel," as Plaintiffs describe him in their argument above.  Dr. Lamego's first-hand experience now informs Defendants' concerns that Mr. Jensen may, after accessing Defendant's Designated Materials, let the knowledge gained from these Materials influence his competitive decision-making for Masimo and Cercacor.

**Exhibit 12**
**-375-**

Mr. Jensen is Masimo's and Cercacor's most trusted advisor on all issues relating, directly or indirectly, to intellectual property. During Dr. Lamego's time employed by Masimo and Cercacor, he witnessed how Mr. Jensen's strategic guidance was integrated into the day-to-day operations of both Masimo and Cercacor. From 2003 until the end of his tenure in 2014, Dr. Lamego attended weekly patent meetings with Mr. Jensen, Joe Kiani (Masimo's CEO) and a select group of engineers and attorneys. Lamego Decl., ¶ 3. These meetings covered a range of intellectual property strategy decisions. Some were focused on setting up invention disclosures to begin the patent process. Lamego Decl., ¶ 4. In others, the attendees discussed strategy for pending patent applications, including writing and revising patent claims to enhance patent value. *Id.* Finally, some meetings focused on big-picture strategy decisions for Masimo's patent portfolio. *Id.* For instance, Mr. Jensen and his team would advise Masimo about when to file patent applications, where to file patent applications, whether to pursue continuations, and other decisions related to creating patent portfolio value. *Id.*

It would be very difficult to offer honest counseling on patent portfolio strategy without inadvertently allowing knowledge of competitors' technology to influence strategy recommendations. For example, these meetings often included discussions of how to file continuation patent applications in ways that would improve Masimo's strategic position in pending or contemplated litigation. *Id.* This intellectual property strategy is called "directed prosecution," meaning that patent prosecution is directed at a specific target competitor. Directed prosecution is a serious risk to True Wearables, and it has happened in this case. Indeed, True Wearables announced the release of its product in August, 2018. Masimo filed a continuation patent in October, 2018, filed suit in November, 2018, obtained issuance of the continuation patent in February, 2019, and asserted the continuation patent in an amended complaint filed on

**Exhibit 12**
**-376-**

June 17, 2019. A serious concern is that Masimo's strategic advisor views True Wearables' trade secrets and source code and directs that 1) a continuation application be filed against it; 2) claims be amended in an existing continuation application to read on True Wearables trade secrets and source code. Knowledge of non-public information about competitors' products is likely to shape any attorney's opinion on which continuations would have the most value vis-à-vis potential infringers. These weekly meetings, without more, are sufficient justification to restrict any attendees' access to True Wearables' most sensitive materials.

These weekly meetings, however, are only a small part of Mr. Jensen and his team's involvement in Masimo IP strategy. Mr. Jensen and his team additionally conducted larger-scale strategic meetings on a less frequent basis. These meetings are described in greater detail in paragraph five of the Lamego Declaration. Surely setting a company-wide intellectual property strategy and legal analyses of competitors' products raises a high risk of inadvertent disclosure or use of confidential information about those very products.

In addition to evaluating Masimo's own intellectual property portfolio, Mr. Jensen has overseen legal due diligence of intellectual-property-related assets that Masimo may acquire or license. Lamego Decl., ¶ 6. The nature of this work and specific examples thereof are described in paragraph six of the Lamego Declaration and are further evidence that Mr. Jensen is a competitive decisionmaker for Plaintiffs. Mr. Jensen's integration with Masimo and Cercacor extends even beyond intellectual property counseling. Mr. Jensen's duties as a legal advisor to Masimo have also included reviewing nondisclosure agreements, reviewing supplier agreements, reviewing corporate contracts, and advising on human resources issues. Lamego Decl., ¶ 7; Allan Decl., ¶ 3. Although Mr. Jensen has always been "outside counsel" to Masimo and Cercacor, he is consistently present in Masimo's offices. Lamego Decl., ¶ 8.

**Exhibit 12**
**-377-**

During Dr. Lamego's tenure at Masimo, an office next to Mr. Kiani's was reserved for the two or three days per week on which Mr. Jensen was visiting Masimo. *Id.* Mr. Jensen's long-standing relationship with Masimo and his frequent presence allowed him to develop close personal relationships with Masimo executives, such as CEO Joe Kiani. Lamego Decl., ¶ 9. Thus, on top of time spent at Masimo offices, Mr. Jensen spent a great deal of time with Masimo executives outside of working hours, often discussing Masimo's intellectual property strategy even while "off the clock." Lamego Decl., ¶ 9.

For a company as reliant on intellectual property protection—and assertion—as Masimo, these various duties as a trusted legal advisor undoubtedly have an impact on the company's strategic decision-making. For example, if Mr. Jensen and his team were to opine that Masimo possessed a competitive advantage in a certain area of technology, the company would certainly consider increased investment in that area to solidify that advantage through intellectual property protection. Indeed, during Dr. Lamego's time at Masimo and Cercacor, Mr. Jensen attended weekly staff meetings in which Masimo executives made these very decisions about whether to invest in new projects. Lamego Decl., ¶ 7; Allan Decl., ¶ 3. That Masimo and Cercacor trust Mr. Jensen's ability to make such decisions is further evidenced by his continuing positions on the boards of Cercacor and the Masimo Foundation Board. Indeed, one of the primary responsibilities of a board member is to continually evaluate the strategic decisions of a company's executives and to take actions in the company's strategic interest.

### 2. Mr. Jensen's Roles Pose Specific Risks to Plaintiffs

Even though Defendants are not required to provide a document-by-document showing of the specific prejudice or harm that may result from Mr. Jensen's unrestricted access, Defendants can readily identify examples of the types of inadvertent disclosure that are likely to cause harm if Mr. Jensen is

**Exhibit 12**
-378-

allowed to access their most highly confidential information.

True Wearables has invested significant time and effort into developing proprietary technology. Lamego Decl. at ¶ 10. These technologies are described and/or embodied in various non-public computer source code, algorithms, and disclosures. *Id.* Because these technologies have all been independently derived and are not based on any of Plaintiffs' existing products, Plaintiffs would greatly benefit from access to these highly confidential materials because the technology described and/or embodied in the materials could be applied directly in the design of new products relating to pulse oximetry or to the monitoring of vital signs and non-invasive blood constituents. *Id.* Plaintiffs invest heavily in intellectual property rights and use those rights to compete in the marketplace. The person responsible for coordinating these efforts and for setting the strategy is Mr. Jensen. *See id.* at ¶¶ 3-9.

As described above, Mr. Jensen is involved in not only high-level strategy, but also day-to-day intellectual property issues, including attending meetings dedicated to writing patent claims. *Id.* at ¶ 4. If Mr. Jensen were exposed to True Wearables' most confidential intellectual property, Mr. Jensen may base his recommendations and input at these meetings—inadvertently or subconsciously—on his knowledge of True Wearables' intellectual property. *Id.* at ¶ 12.

For example, Mr. Jensen may be asked for a recommendation at a patent strategy meeting regarding whether to file a continuation patent application in a certain patent family. In certain circumstances, the patent family may overlap or relate in some respects to True Wearables' products. If Mr. Jensen has been exposed to True Wearables' proprietary information, it is unlikely that he would be able to make an objective assessment of the merits of filing a continuation application without his judgment being affected by his knowledge of True Wearables' products. Similarly, if he were providing recommendations on how

**Exhibit 12**
**-379-**

to draft or amend a claim for a patent application, he might be asked for his approval or recommendations for certain claim language. In some circumstances, it is reasonably likely that the patent application could relate to an aspect of True Wearables' products. Once again, it is unlikely that he would be able to make an objective assessment because he has non-public insight into the strategic value of that claim language vis-à-vis a potential competitor's products.

These are only a few examples of how True Wearables could be harmed by Mr. Jensen's exposure to non-public computer source code, algorithms, or other proprietary documents. These are not the only situations that create risk to Defendants, though. Because Mr. Jensen is involved to such a great degree in every aspect of Plaintiffs' intellectual property strategy—both in development and execution—the opportunities for harm to True Wearables are numerous and far-reaching. The only way to adequately guard against these risks is for the court to place reasonable restrictions on Mr. Jensen's access to True Wearables' most confidential materials.

Additionally, whether prior litigants sought such restrictions is not relevant to the present case. Dr. Lamego seeks these restrictions in the present case not because of unfounded speculation or because of a desire to hamper Plaintiffs' legal team. Dr. Lamego seeks these restrictions because he has personally witnessed Mr. Jensen's role at Masimo and Cercacor and because he now rightfully fears that highly sensitive technological information related to his product will, through Mr. Jensen's continuing position as trusted advisor, inadvertently shape Masimo's and Cercacor's strategy or product design going forward. Prior litigants almost certainly did not have the same first-hand experience as Dr. Lamego. Thus, they had no reason to seek restrictions on Mr. Jensen's access to their highly sensitive information, assuming that Mr. Jensen was simply "one of Plaintiffs' outside litigation counsel" rather than a deeply

**Exhibit 12**
**-380-**

integrated strategic advisor.

### 3.   Mr. Jensen's Description of His Roles Raises Questions

Plaintiffs attempt to downplay Defendants' concerns by alleging that there are "factual inaccuracies" in the Lamego Declaration.  Plaintiffs provide a declaration from Mr. Jensen describing his role as attorney for Masimo and Cercacor.  This declaration, though, is vague when it comes to the important details.  It paints Mr. Jensen's role in a different light than the Lamego Declaration, but it does not directly refute the critical facts set forth in the Lamego Declaration.

#### a.   Involvement in Patent Meetings

For example, Mr. Jensen states that he is "not sure what Lamego is referring to as weekly 'Patent Meetings.'"  He admits, however, that he has "participated in meetings related to patents."  This is not helpful.  Mr. Jensen does not say how frequently such meetings occurred.  He does not state the purpose of those meetings.  He does not say who attended those meetings.  He does not identify the topics of those meetings.  While Defendants understand that Plaintiffs are sensitive to the disclosure of any and all information related to meetings held with outside counsel (*see* Plaintiffs' Application for Leave to File Under Seal), this portion of Mr. Jensen's declaration is so vague and evasive as to be meaningless.  It is unclear how Plaintiffs expect the court to conduct a meaningful evaluation of "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party" when the activities are described in such vague terms.  Meetings "related to patents" could include everything from strategy meetings for specific patent filings to high-level discussions of ongoing litigation.  Unless and until Plaintiffs offer a meaningful description of these meetings, the court should base its analysis on the Lamego Declaration, which is the only evidence of record that provides such a description.

- 37 -

**Exhibit 12**
**-381-**

Mr. Jensen's description of his activities vis-à-vis patent prosecution are equally vague. Mr. Jensen states that he has "not regularly participated in patent prosecution meetings at Masimo since I believe about 2003 or 2004." Notably, Mr. Jensen qualifies his description with the word "regularly." If he had not participated in *any* patent prosecution meetings since 2003 or 2004, he presumably would not have included this qualifying language. The question, then, is what Mr. Jensen considers to be "regular" participation. This uncertainty is exacerbated by Mr. Jensen's previous statements regarding his involvement in Plaintiffs' patent prosecution. In a 2010 declaration describing his role as Plaintiffs' attorney, he stated that John Grover took over active management of Masimo's patent prosecution and that his "involvement with that prosecution has consistently decreased." *Masimo Corp. v. Philips Electronics North American Corp.*, 1:09-cv-00080-LPS, Dkt. 90-1 Ex. 3 at ¶ 4 (April 20, 2010). This supports Dr. Lamego's assertion that Mr. Jensen has been involved in patent prosecution *since* 2004, but the extent of this involvement, to this day, remains entirely unclear. Without a more precise description, the court cannot conduct a meaningful inquiry. We note that Mr. Jensen is listed as an attorney of record before the USPTO on each of the patents-in-suit. *See* Exhibit L.

Moreover, it is not clear what Mr. Jensen means by "meetings related to patents." He has not regularly participated in "patent prosecution meetings," but he has participated (possibly even "regularly") in "meetings related to patents." The court cannot conduct a meaningful evaluation of Mr. Jensen's role unless Mr. Jensen is willing to explain the difference between these two categories. The only clue provided to help the court determine the difference is that other lawyers "have handled patent disclosure meetings." It seems, then, that Mr. Jensen equates "patent prosecution meetings" to patent disclosure meetings. However, the Lamego Declaration does not claim that Mr. Jensen handled

**Exhibit 12**
**-382-**

patent disclosure meetings.  Rather, the Lamego Declaration states that Mr. Jensen attended meetings involving "discussing new ideas and projects being developed by Masimo engineers, discussing invention disclosures for new innovations, discussing strategies for prosecuting existing patent applications, drafting patent claim language, and making decisions relating to the development of Masimo's patent portfolio." It is unclear from Mr. Jensen's declaration whether these activities would qualify as "patent prosecution meetings" or merely "meetings related to patents."

Mr. Jensen accuses Dr. Lamego of making a "conscious attempt to mislead the court" and states that the Lamego Declaration contains "outdated information." If Mr. Jensen believes the Lamego Declaration contains factual inaccuracies, he should identify those alleged inaccuracies with specificity, rather than leaving the court to guess about the meaning of "meetings related to patents."

### b.  Involvement in Strategy Meetings

Plaintiffs' arguments regarding the other facts set forth in the Lamego Declaration are equally unavailing and only serve to muddy the waters. Paragraph 17 of Mr. Jensen's declaration is seemingly meant to refute the description offered in paragraph 5 of the Lamego Declaration.  Mindful of Plaintiffs' concerns about sensitive information, the contents of paragraph 5 are not described here.  However, the court can see that Mr. Jensen does not dispute the majority of the facts set forth in paragraph 5 of the Lamego Declaration. Rather, his only refutation is that his legal analyses in these presentations was "exclusively based on public information." But this assertion fails to assuage Defendants' concerns for at least two reasons.  First, Plaintiffs once again fail to appreciate the nature of the risk of *inadvertent* disclosure.  As explained in *Brown Bag v. Symantec*, the question is not whether an individual is willing and able to "lock up documents in cabinets," but whether an individual can "lock-up

**Exhibit 12**
**-383-**

trade secrets in his mind," safe from inadvertent disclosure after reading the documents. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992).

Even if Mr. Jensen's presentations regarding competitors' products have never explicitly contained information accessed in the course of prior litigation, it is unlikely that he would be able to completely ignore any and all knowledge gained from prior litigation that may be relevant to these analyses. For example, if exposed to True Wearables' proprietary information, Mr. Jensen would gain a breadth of knowledge about data processing algorithms, hardware design, manufacturing techniques, etc. that could influence his analysis.

### c.    <u>Board Service</u>

Plaintiffs argue that Mr. Jensen's position as a Board Member doesn't support Defendants' proposed restrictions because board service "isn't a 'litmus test.'" Defendants are not arguing, however, that Mr. Jensen's access should be restricted merely because he sits on Cercacor's board. Rather, evaluating Mr. Jensen's board service is simply one piece of the examination of the totality of the circumstances concerning Mr. Jensen's "activities, association, and relationship with [Plaintiffs]," as required by *U.S. Steel* and *Brown Bag*.

Defendants do not argue that board service *per se* involves competitive decisionmaking. If Mr. Jensen were appointed to Cercacor's board to serve as a figurehead and to cast routine votes on trivial matters of corporate governance, Defendants would not be bringing this issue to the court's attention. But Mr. Jensen is very clearly not a figurehead. Mr. Kiani presumably appointed Mr. Jensen to the Cercacor board at least in part because of "Mr. Jensen's broad and unparalleled understanding of Masimo's and Cercacor's business goals, technology, and intellectual property." Kiani Decl. at ¶ 10. In other words, Mr. Jensen is expected to bring a very specific set of knowledge and expertise to the Cercacor board: He is expected to use his "unparalleled understanding" to offer

**Exhibit 12**
**-384-**

an informed opinion to the other board members on issues relating to Cercacor's business goals, technology, and intellectual property. Mr. Kiani trusts that Mr. Jensen will use his position as a board member to advance Cercacor's business goals, just as he has used his position as IP advisor to advance Masimo's business goals for the past 20 years. Thus, Mr. Jensen's position on the board shouldn't be viewed in isolation but should be viewed as further evidence of the level of trust Plaintiffs have in Mr. Jensen and of Plaintiffs' desire to place Mr. Jensen in the best position possible to use his knowledge and experience to influence Cercacor's business strategy.

Plaintiffs go to great lengths to distinguish Mr. Jensen from the individuals examined in the cases supporting Defendants' position. In *Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.*, the court identified a "serious risk of the inadvertent disclosure of confidential documents and information" where a party's co-counsel was also a board member and corporate secretary. *Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.*, No. 5:03CV165 (HGM/GLS), 2003 WL 1956214, at *16 (N.D.N.Y. Apr. 24, 2003). Plaintiffs suggest that the individual's role as corporate secretary was a primary factor in the court's decision. In reality, the court found that the individual's positions "*both* as Hanford's Corporate Secretary *and* as a member of Hanford's Board of directors" created the risk. *Id.* The court was not concerned with any one board vote or meeting directly implicating the confidential materials, but rather with the "unacceptable opportunity for [] inadvertent disclosure" that comes from "sit[ting] in the same room as those who are involved in competitive decision-making." *Id.*

Plaintiffs argue that the reasoning in *Norbrook* was "contrary to law" because "the standard is not regular contact with other corporate officials who make policy," citing *Matsushita*. 929 F.2d at 1580. Plaintiffs take a very literal interpretation of what it means to "sit in the same room" as competitive

**Exhibit 12**
**-385-**

decisionmakers. The District Court in *Norbrook* reached a conclusion that there was a "serious risk" of inadvertent disclosure. Although the *Norbrook* court uses the phrase "sits in the same room," the court's legal analysis correctly focuses on the risk of inadvertent disclosure and on the duties that the attorney, as a board member, owed to the client.

Moreover, no part of Defendants' argument rests on a theory of physical proximity, as Plaintiffs imply. As discussed above, Mr. Jensen is not merely a figurehead board member, and Defendants' concerns are not based on his "regular contact" with Joe Kiani and other high-level executives. Defendants' concerns are based on Plaintiffs' history of turning to Mr. Jensen as a trusted source for advice on all matters directly or indirectly related to intellectual property. And they are based on Mr. Jensen's history of providing that advice to Plaintiffs in all of the ways described in the Lamego Declaration. Cercacor board meetings are simply one additional forum in which Mr. Jensen is asked and expected to provide that advice, as well as a forum in which Mr. Jensen can directly exercise decisionmaking authority through his voting powers.

In addition to *Norbrook*, Defendants have identified several other cases in which courts recognized the risks of inadvertent disclosure posed by attorneys. In *TiVo Inc. v. Verizon Commc'ns, Inc.*, the court placed access restrictions on a Verizon attorney responsible antitrust, intellectual property, and telecommunications litigation. *Tivo Inc. v. Verizon Communs., Inc.*, No. 2:09-CV-257, 2010 U.S. Dist. LEXIS 145333, at *17 (E.D. Tex. June 15, 2010). The court focused on the attorney's position as a board member. *Id.* Indeed, the court reasoned that even if the attorney did not participate in competitive decisions at Verizon, his position on the board of two of its affiliates—without more—"create[d] an unacceptable opportunity for the inadvertent disclosure of information." *Id.*

The same was true in *Meridian Enters. Corp. v. Bank of Am. Corp.*, No.

- 42 -

**Exhibit 12**
**-386-**

Case 8:20-cv-00681-JVS-DFE   Document 62-1   Filed 06/26/20   Page 401 of 662   Page ID
#:4679
Case 8:20-cv-00681-JVS-DFE   Document 68-1   Filed 06/26/20   Page 46 of 662   Page ID
#:5619

4:06CV01117 RWS, 2008 U.S. Dist. LEXIS 11751, at *9 (E.D. Mo. Feb. 15, 2008).  There, the attorney at issue was, like Mr. Jensen, a shareholder of a party to the litigation, but the court's analysis focused less on this fact than on the attorney's "presence at board meetings," which, in the court's view, presented an unacceptable opportunity for inadvertent disclosure.  *Id.* Indeed, the court noted that as a member of the board of directors, the attorney would have "a fiduciary duty to Meridian to disclose all information in his possession germane to issues discussed." *Id.* at *10.

Finally, in *Silversun Indus. v. PPG Indus.*, the court again restricted the access of PPG's lawyer, who also served as a corporate secretary. 296 F. Supp. 3d 936, 945 (N.D. Ill. 2017).  As in the previously discussed cases, though, it was not the lawyer's role as corporate secretary motivating the restrictions.  Rather, the court focused on the lawyer's "*close proximity* to PPG's competitive decision makers." *Id.* According to the court, this close proximity—and, more specifically, the opportunities it afforded for interaction and involvement with highly placed PPG employees—created an unacceptable opportunity for inadvertent disclosure.  *Id.*  That is, even if the lawyer had not been asked to make *any* competitive decisions herself, her mere proximity to those responsible for those decisions was enough to restrict her access to highly confidential, trade secret materials.

Plaintiffs first attempt to distinguish these cases by arguing that they all involved in-house attorneys.  By focusing on these attorneys' in-house employment, Plaintiffs violate *U.S. Steel* and *Brown Bag*, where the courts "cautioned against arbitrary distinctions based on the type of counsel employed" and held that the law requires a complete examination of the totality of the circumstances for "any counsel, whether in-house or retained." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

Next, Plaintiffs argue that these cases are distinguishable because the

**Exhibit 12**
**-387-**

attorneys at issue had responsibilities to the company additional to their responsibilities as board members. They argue that the risks identified in these cases do not apply to Mr. Jensen because he is "not a corporate officer." Once again, Plaintiffs opt for the exact type of "arbitrary distinctions" based on official titles rather than conducting the required examination of the totality of circumstances. The required evaluation reveals that Mr. Jensen arguably has even greater responsibilities than an in-house attorney, even one that holds a position as a corporate officer. As detailed in the Lamego Declaration and as set forth above, Mr. Jensen is the lead IP strategist for a $10B company reliant on an aggressive IP protection and enforcement strategy to maintain a competitive advantage in a crowded market. This role almost certainly requires at least as much integration with business strategy as was required of the in-house attorney in *Silversun*, whose responsibility was "overseeing the defendants' corporate governance and finance." *Silversun Indus., Inc. v. PPG Indus., Inc.*, 296 F. Supp. 3d 936, 941 (N.D. Ill. 2017).

4.    **Plaintiffs' Interpretation of "Competitive Decisionmaking" is Unduly Narrow**

The Lamego Declaration describes a variety of situations in which Mr. Jensen might inadvertently disclose or use highly confidential information accessed during litigation. And yet, Plaintiffs claim that none of these activities should raise any concerns of inadvertent disclosure because they merely describe situations in which Jensen "gives *legal* advice to Plaintiffs." Plaintiffs' Position, *supra* at 11 (emphasis original). Plaintiffs also argue that Mr. Jensen's activities should not raise concerns because they do not involve any decisions about pricing or product design. Finally, Plaintiffs argue that these activities should not raise concerns because Mr. Jensen himself is not responsible for making the decisions.

Based on these arguments, Plaintiffs apparently believe that the principles

**Exhibit 12**
**-388-**

of *U.S. Steel* (a) only apply to decisions involving pricing or product design, (b) do not apply if the attorney is giving "legal advice", and (c) only apply if the attorney is individually responsible for making the competitive decisions in question. Each of these premises is inconsistent with the definition of competitive decisionmaking provided in *U.S. Steel*. According to the Supreme Court:

> [Competitive decisionmaking] would appear serviceable as shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

*U.S. Steel*, 730 F.2d at 1468 n. 3.

Plaintiffs' position seems to be premised on an inappropriately narrow interpretation of "competitive decisionmaking," as the phrase is used in *U.S. Steel* and *Brown Bag*. Specifically, Plaintiffs appear to believe that the only type of competitive decision making is "advising on pricing or product design." Thus, they apparently view Dr. Lamego's failure to mention pricing or product design as the end of the inquiry. This interpretation is clearly inconsistent with the definition provided in *U.S. Steel*. According to *U.S. Steel*, competitive decisionmaking includes counsel's advice and participation in *any or all of the client's decisions* made in light of similar or corresponding information about a competitor. Thus, competitive decisionmaking is meant to encompass much more than simply pricing and product design. *Cummins-Allison Corp. v. Glory Ltd.*, No. 02-CV-7008, 2003 U.S. Dist. LEXIS 23653, at *14 (N.D. Ill. Dec. 31, 2003) ("Plainly, the *U.S. Steel* court's listing of client decisions was not limited to 'pricing and product design.' The court's use of 'etc.' reveals that those are only examples of the kinds of client decisions that may be made 'in light of similar or corresponding information about a competitor.'").

Exhibit 12
-389-

Similarly, there is no support for Plaintiffs' position that "legal advice" cannot constitute competitive decisionmaking. There is no such carve-out in the *U.S. Steel* definition, and Plaintiffs cite no authority supporting this proposition. Indeed, courts have rejected this approach. *Telebuyer, LLC v. Amazon.com, Inc.*, 2014 WL 5804334, *4-*7 (W.D. Wash. 2014) (seeing "little value" in attempting to draw "a fuzzy and unmanageable distinction between purely legal matters and matters that implicate competitive decisionmaking"). These attempts at distinguishing legal advice from business decisions ignore the reality legal advice is often a critical element of any business decision. For example, Mr. Jensen says "I do not currently make business decisions for Masimo or Cercacor. My current role is outside legal." Jensen Decl. at ¶ 11. But in the very next sentence he says "Masimo and Cercacor trust me to provide critical legal advice." Surely this critical legal advice is frequently—if not always—connected to some sort of business decision. *Id.* at ¶ 12. Indeed, Mr. Jensen's website touts his role as a strategic advisor to his clients on a number of commercial and business issues.

Moreover, Mr. Kiani values Mr. Jensen's "broad and unparalleled understanding of Masimo's and Cercacor's business goals" precisely because each issue on which Mr. Jensen advises Plaintiffs—from patent filing strategies to nondisclosure agreements—is a means of achieving those very business goals. Accordingly, the court should look past Plaintiffs' attempt to distinguish "legal advice" from competitive decisionmaking and should examine how this "legal advice" directly relates to and affects Plaintiffs' business strategy.

Finally, there is no support for Plaintiffs' position that the only individuals who pose a risk of inadvertent disclosure are those who are personally responsible for making the competitive decisions. The *U.S. Steel* definition clearly states that the phrase refers to activities that "*involve* counsel's advice and participation." Under this definition, the mere involvement of

**Exhibit 12**
**-390-**

counsel in a competitive decision can be sufficient to make that counsel a "competitive decisionmaker" for purposes of our analysis.  Here, Mr. Jensen is at the very least "involved" in competitive decisions.  As discussed above, the "legal advice" that he provides to Mr. Kiani and other high-level executives almost certainly shapes their decisions on all matters relating to intellectual property.  Moreover, Mr. Jensen is effectively the one making the competitive decisions on many occasions.  For example, deciding whether/where/when/how to file patent applications are all competitive decisions.  Although Plaintiffs are not required to follow Mr. Jensen's recommendations in these areas, Mr. Kiani or any other decisionmaker surely follows the recommendation of their trusted IP advisor.  Thus, Mr. Jensen effectively has decisionmaking authority on these matters, each of which presents risks of inadvertent disclosure.

### 5.  Mr. Jensen's Personal Financial Interests Add to Defendants' Concerns

Finally, Defendants ask the court to consider Mr. Jensen's personal financial interests in its analysis of his relationship with Plaintiffs.  The *U.S. Steel* and *Brown Bag* cases are premised in part on an acceptance of human fallibility.  Protections against "inadvertent disclosure" are based on an understanding that despite our best intentions, we are only human.  Mistakes can—and do—happen.  And because we cannot expect individual attorneys to defy their own human nature, appropriate safeguards are often necessary to avoid situations where they would be required to do so.

In the cases discussed above, the courts asked whether a lawyer's involvement in competitive decisionmaking would create a high risk of inadvertent disclosure.  In these situations, the risk of inadvertent disclosure arose from a lawyer's desire to help his or her client.  Because lawyers will want to give their client's the best legal advice possible, we reason that it will be difficult for these lawyers not to draw on the full extent of their knowledge—

including confidential information—in counseling their clients. In other words, we assume that lawyers' human desire to serve their clients will cloud their ability to strictly protect confidential information.

Here, however, Mr. Jensen's desire to serve as a trusted advisor is not the only aspect of human nature to consider. ███████████████████████ ████████████████████████████████████████████████ █████████████████████████████ █████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████. The only indication he provides is that he is "not aware of any lawyer at Knobbe who holds a significant number of shares relative to the size of Masimo." Jensen Decl. at ¶ 13. It is unclear what amount of shareholder interest would constitute a significant number of shares relative to the size of Masimo, which is valued between $9B and $10B. In any event, that is not the appropriate metric on which to evaluate Mr. Jensen's personal financial stake in Plaintiffs' businesses. It is not important whether Mr. Jensen's ownership interests are significant relative to the size of Masimo or Cercacor, but rather whether they are significant *to him*. It is not possible to fully appreciate the nature of Mr. Jensen's financial interest in Plaintiffs' businesses without knowing the amount of money he stands to gain (or lose) from Plaintiffs' financial success.

Just as the *U.S. Steel* and *Brown Bag* courts appreciated the limitations of human nature and recognized the need for safeguards, the court here should

---

[3] Mr. Jensen states that Knobbe lawyers hold shares of Masimo's public stock, but he does not state whether he himself is one of those lawyers.

**Exhibit 12**
**-392-**

consider the effect that a financial interest might have on Mr. Jensen's behavior. Of course, the larger Mr. Jensen's financial stake in Plaintiffs' businesses, the larger the impact it will have on Mr. Jensen's behavior. In any event, even if Mr. Jensen is strongly committed to his ethical obligations, his judgment could conceivably be clouded by his personal financial interest.

As one example, Mr. Jensen commits to "abstain" from providing input on any matter that "could arguably be affected by information I have received under a protective order." Unfortunately, he made a similar promise to the PTO to abide by its ethical standards, and he was found in breach—also in a case where he represented Masimo. *Mallinckrodt, Inc. v. Masimo Corp.*, 147 F. App'x 158. Moreover, this commitment requires Mr. Jensen to constantly exercise judgment to determine which matters would "arguably be affected" by confidential information. With a personal financial interest at stake, Mr. Jensen's judgment will inevitably be clouded by his desire to provide input that will benefit Plaintiffs, not only because he desires to be a trusted advisor but also because he will receive a direct financial benefit from Plaintiffs' success.

Like any advocate, Mr. Jensen would like his clients to succeed. Unlike most other lawyers, though, Mr. Jensen has a *direct* financial interest in his clients' financial success. Despite his best efforts, Mr. Jensen—like all other attorneys—is human, and any human's judgment is liable to be affected by personal interests, especially if the personal interest is a large financial stake. Plaintiffs have not provided any meaningful indication of the extent of this personal financial interest in either Masimo or Cercacor. The fact that Mr. Jensen has a personal financial interest and the uncertainty regarding the extent of this interest only add to Defendants' concerns that they face an unacceptably high risk by allowing Mr. Jensen to access their most highly confidential materials.

**C.** **A Robust Patent Prosecution Bar is Necessary, but not Sufficient, to**

**Exhibit 12**
**-393-**

**Protect Defendants From Harm**

Plaintiffs argue that Defendants' proposed access-based restrictions are unnecessary because Mr. Jensen has agreed to a patent prosecution bar and because of the "other safeguards" agreed to regarding Defendants' source code materials. Specifically, the current patent prosecution bar would not allow Mr. Jensen (or other attorneys accessing highly sensitive information) to "prepare, prosecute, supervise, advise, counsel, or assist in the preparation or prosecution of any patent application seeking a patent" on behalf of Plaintiffs. To be sure, this is an important safeguard to prevent Defendants' proprietary technological information from inadvertently making its way into Plaintiffs' future patent applications and patent claims. This does not, however, address the myriad other avenues through which knowledge about Defendants' proprietary information could improperly shape Plaintiffs' strategy to Defendants' disadvantage.

The preparation and filing of patent applications is only one small aspect of an effective intellectual property strategy for a large medical device company like Masimo or Cercacor. Just as knowledge of competitors' technological secrets might inadvertently shape a patent prosecutor's drafting decisions, this knowledge surely shapes strategic business decisions made at the highest levels—such as decisions to commit research and development funding to potential new products, decisions to explore new markets for existing products, or any other decisions related to innovative product designs. Based on Dr. Lamego's first-hand experience, Plaintiffs seek Mr. Jensen's advice on these very types of strategic decisions. A patent prosecution bar does not protect against the risk of Defendants' technological secrets unduly influencing this advice.

The same is true of the "other safeguards" surrounding the source code material, such as the restrictions on copying the code. Preventing the full-scale

**Exhibit 12**
**-394-**

copying of source code makes it less likely that this information will accidentally fall into the wrong hands, but it has absolutely no impact on the chances that Mr. Jensen's knowledge of the source code might inadvertently shape the strategic advice he provides to Plaintiffs. Thus, Defendants' proposed restrictions are necessary despite the patent prosecution bar and "other safeguards" currently in place. Once again, the question is not whether an individual is willing and able to lock up documents in cabinets, but whether an individual can lock-up trade secrets in his mind, safe from inadvertent disclosure after reading the documents. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992).

Plaintiffs' reliance on a patent prosecution bar for protection is especially questionable in light of the parties' disagreement on the scope of these protections, which is also before the court. Specifically, Plaintiffs rejected Defendants' proposal to impose an "ethical wall" between persons with access to highly confidential litigation materials and persons who prepare, prosecute, supervise, or assist in the preparation or prosecution of patent applications related to pulse oximetry. *See* Exhibit B, ¶ 28. This raises red flags in view of Mr. Jensen's role as a strategic business and IP advisor to Plaintiffs.

For all of the reasons described above, there is an unacceptably high risk of inadvertent disclosure when any attorney—whether Mr. Jensen or another attorney—is present and attends meetings to discuss strategies for drafting, filing, or prosecuting patent applications. For the most involved of these attorneys, like Mr. Jensen, the only appropriate safeguard is to restrict access to the most highly confidential materials. For all other attorneys with access to these materials, though, it is eminently reasonable to require a clear separation between prosecution and litigation activities in order to limit opportunities for inadvertent disclosure of highly confidential information to those responsible for drafting and prosecuting patent applications on Plaintiffs' behalf.

**Exhibit 12**
**-395-**

Accordingly, in addition to restricting the access of competitive decisionmakers (including Mr. Jensen) to the most highly confidential materials, the court should adopt Defendants' proposed provisions relating to the patent prosecution bar.


Respectfully submitted,

**KNOBBE, MARTENS, OLSON & BEAR, LLP**


Dated:  March 16, 2020       By: */s/ Brian C. Claassen*
                                   Brian C. Claassen

                                   Attorneys for Plaintiffs,
                                   Masimo Corporation and
                                   Cercacor Laboratories, Inc.


**CONKLE, KREMER & ENGEL**


Dated:  March 16, 2020       By: */s/ Ryan J. Fletcher (with permission)*
                                   Amanda R. Washton

                                   Attorneys for Defendants.
                                   True Wearables, Inc. and
                                   Marcelo Lamego


**<u>FILER'S ATTESTATION</u>**

        Pursuant to Local Rule 5-4.3.4 regarding signatures, I hereby attest that concurrence in the filing of this document has been obtained from all signatories above.

Dated:  March 16, 2020       By:    */s/ Brian C. Claassen*
                                   Brian C. Claassen


32454383

**Exhibit 12
-396-**

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered by Claassen, Brian on 3/16/2020 at 5:21 PM PDT and filed on 3/16/2020

| | |
|---|---|
| **Case Name:** | Masimo Corporation et al v. True Wearables, Inc. et al |
| **Case Number:** | 8:18-cv-02001-JVS-JDE |
| **Filer:** | Cercacor Laboratories, Inc. |
| | Masimo Corporation |

**Document Number:** 82

**Docket Text:**
**JOINT STIPULATION to APPLICATION to file document *Declaration of Marcelo Lamego Exhibit K to the Fletcher Declaration and Portions of the Joint Stipulation* under seal[80] filed by Counter Defendants Cercacor Laboratories, Inc., Masimo Corporation, Plaintiffs Cercacor Laboratories, Inc., Masimo Corporation. (Attachments: # (1) [REDACTED] Joint Stipulation, # (2) Declaration Stephen Jensen, # (3) Declaration Joe Kiani, # (4) Declaration Brian Claassen, # (5) Exhibit A-J, # (6) Declaration Anthony Allen, # (7) Declaration Marcelo Lamego, # (8) Declaration Ryan Fletcher, # (9) Exhibit K and L, # (10) Proposed Order)(Claassen, Brian)**

**8:18-cv-02001-JVS-JDE Notice has been electronically mailed to:**

Amanda Rose Washton     a.washton@conklelaw.com, awashton@hotmail.com, support@conklelaw.com

Brian Christopher Claassen     brian.claassen@kmob.com, KnobbeAdmin@ecf.courtdrive.com, litigation@knobbe.com

**Exhibit 12**
**-397-**

Irfan A Lateef      ial@kmob.com, litigation@kmob.com

Joseph R Re      litigation@kmob.com, joe.re@knobbe.com, jre@kmob.com,
KnobbeAdmin@ecf.courtdrive.com

Paige S Stradley      pstradley@merchantgould.com

Peter A Gergely      pgergely@merchantgould.com

Ryan J Fletcher      rfletcher@merchantgould.com, KDrieman@merchantgould.com,
smaney@merchantgould.com

Sherron L Wiggins      s.wiggins@conklelaw.com, Support@conklelaw.com

Stephen C Jensen      steve.jensen@knobbe.com, sjensen@kmob.com

**8:18-cv-02001-JVS-JDE Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

Andrew T Pouzeshi
Merchant and Gould PC
1801 California Street Suite 3300
Denver, CO 80202

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\2020-03-16 Plaintiffs' Shortened Notice of Motion and
Motion.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=3/16/2020] [FileNumber=29474417-0
] [30ecd45b6994ad633812c03f44101f575366f5a3ba3fae9b1bfdbd477925a3857a9
37ad2ba1106da6bc8a48ceac59d9dd5d308a4f0aeebc9a6b9d9e139fda885]]
**Document description:** [REDACTED] Joint Stipulation
**Original filename:**C:\fakepath\2020-03-16 [REDACTED] Joint Stipulation Accompanying
Plaintiffs' Motion for Entry of Protective Order_Redacted.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=3/16/2020] [FileNumber=29474417-1
] [5c6efcdba66e5536445a68cbafc4d69e61d7886ad693348ef07cf73ed52c842e90f
03d511838bdac79533273228223a6cdace19eae80af7d9397e3b49f47df55]]
**Document description:**Declaration Stephen Jensen

**Exhibit 12
-398-**

**Original filename:**C:\fakepath\2020-03-09 Declaration of Stephen Jensen Declaration in Support of the Protective Order.pdf

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=3/16/2020] [FileNumber=29474417-2
] [aac2f8a0e6086e0bd7ef934a4369b821d9ee8feec7a0695d4121da97bf367c84c76
adeb5e055b3d09161c767ba88682b4b335f95e4cd5d99c3acdc51552a6d2b]]

**Document description:**Declaration Joe Kiani

**Original filename:**C:\fakepath\2020-03-09 Declaration of Joe Kiani in Support of Masimo's Motion for Protective Order [Correct Version].pdf

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=3/16/2020] [FileNumber=29474417-3
] [7ef6e427f2637de0ac17dcf431952b04b43d398232ed919a6ba64a7c12e58981296
53704398d6d389e2dbacc18f3fa0eaa1505536a470fecb2f16caaaf13c71d]]

**Document description:**Declaration Brian Claassen

**Original filename:**C:\fakepath\2020-03-09 Declaration of Brian Claassen in Support of Protective Order.pdf

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=3/16/2020] [FileNumber=29474417-4
] [495c7f71ff2162c9468afdcce2fdd750d75ef34b4710dccf6530df265bcf5083bd3
b98b2d55e17478a0696b7798eda6b10f56c17c576569f20a059ac1b0a6fa6]]

**Document description:**Exhibit A-J

**Original filename:**C:\fakepath\Exhibits A-J [COMBINED] to BCC Declaration.pdf

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=3/16/2020] [FileNumber=29474417-5
] [45ad8ff1875c0974067cf3cfc833494eed2e37fcfa0f7f8cb90b2b384df97c7b8db
7f98a0629383868fe0b7d4e6bde8cd6d83ef14787c37c8f831f9a1efde78e]]

**Document description:**Declaration Anthony Allen

**Original filename:**C:\fakepath\2020-03-11 Declaration of Anthony Allan iso Joint Statement.PDF

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=3/16/2020] [FileNumber=29474417-6
] [7b96c7130c24d3f30342db2677973f73078dbe59b6517b7830c6d57cb98d0ab26e8
2ebb6b9627f5d4ef0a7109d954e5749634829a0c21a617fd2b35611feb7b4]]

**Document description:**Declaration Marcelo Lamego

**Original filename:**C:\fakepath\[REDACTED] Lamego Declaration iso Joint Statement.pdf

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=3/16/2020] [FileNumber=29474417-7
] [b567520832eb60f182fde6a4a5d5481f310ec297d0cbee4d644527d653f9c29587e
7c658faa6ff4f003b9464bdd259ae0f02f4d43354d1edf4b6efb5d393d1b9]]

**Document description:**Declaration Ryan Fletcher

**Original filename:**C:\fakepath\2020 03 16 - Declaration of Fletcher ISO Joint Statement.pdf

**Electronic document Stamp:**

**Exhibit 12**
**-399-**

[STAMP cacdStamp_ID=1020290914 [Date=3/16/2020] [FileNumber=29474417-8] [25c297303fe2aa366b1e3cd9b27b5f4cfe2087d28a7534267e9f4d7276a070012c3c8ae2fe6478967738f98589c0f0bebdf17cb4e61b1ecfa7ea83e8c46b27a4]]

**Document description:**Exhibit K and L

**Original filename:**C:\fakepath\[PUBLIC] Exhibits K and L to the Declaration of Ryan Fletcher.pdf

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=3/16/2020] [FileNumber=29474417-9] [5904ad5ff4d1f924cac3f848aa3d9c17edc5b80b7352b1fa34e41455c0ac012a33d2cce6f6915fe617bd190c5eefc02c9b24943bbffac8c1ff1a612742c50d51]]

**Document description:**Proposed Order

**Original filename:**C:\fakepath\[Proposed] Order Granting Notice of Motion and Motion.pdf

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=3/16/2020] [FileNumber=29474417-10] [7790f706b92b375f57a9341cfca531507ff6383ee8fc28105faa4ff185741d4d24b374e54c8fb6d5d32e880ea3733bd9558d4f5e9309a0cd94d208f18b91190b]]

**Exhibit 12**

**-400-**

# EXHIBIT 13

1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                          SOUTHERN DIVISION

11   MASIMO CORPORATION, a              )   Case No. 8:18-cv-2001-JVS-JDEx
     Delaware Corporation; and          )
12   CERCACOR LABORATORIES, INC.,       )
13   a Delaware corporation,            )
                                        )   PROTECTIVE ORDER
14             Plaintiffs/Counterdefendants,  )
                                        )
15                                      )
                                        )
16        v.                            )
                                        )
17   TRUE WEARABLES, INC., a            )
18   Delaware corporation; and MARCELO  )
     LAMEGO, an individual,             )
19                                      )
20             Defendants/Counterclaimants.  )

21

22        Based on the Joint Stipulation (Dkt. 82-1) and related filings (Dkt. 82, Dkt.

23   82-2 to 82-9, and Dkt. 86-89) by Plaintiffs and Counterdefendants MASIMO

24   CORPORATION ("Masimo") and CERCACOR LABORATORIES, INC.

25   ("Cercacor") (collectively "Plaintiffs"), on the one hand, and Defendants TRUE

26   WEARABLES, INC. ("True Wearables") and MARCELO LAMEGO

27   ("Lamego") (collectively "Defendants"), on the other hand, hereafter collectively

28   referred to as "the Parties," by which the Parties seek a protective order ("Order")

                                    -1-

**Exhibit 13
-401-**

1    limiting disclosure thereof in accordance with Federal Rule of Civil Procedure

2    26(c), and good cause appearing therefor,

3          The Court hereby FINDS and ORDERS that:

4          1.    This action is likely to involve trade secrets, customer and pricing

5    lists and other valuable research, development documentation, source code,

6    hardware specifications, schematics, algorithms, prototypes, test reports, market

7    projections, sales reports, revenue reports, profit reports, cost of goods, sales

8    projections and forecasts, financial reports, business strategies, and other

9    valuable research, development, commercial, financial, technical and/or

10   proprietary information for which special protection from public disclosure and

11   from use for any purpose other than prosecution of this action is warranted.  Such

12   confidential and proprietary materials and information consist of, among other

13   things, confidential business or financial information, information regarding

14   confidential business practices, or other confidential research, development, or

15   commercial information (including information implicating privacy rights of

16   third parties), information otherwise generally unavailable to the public, or which

17   may be privileged or otherwise protected from disclosure under state or federal

18   statutes, court rules, case decisions, or common law.  If such confidential and

19   proprietary information is not kept confidential, then the parties risk losing the

20   information's trade secret status and providing competitors with an unfair

21   advantage which could harm the parties' business.  Accordingly, to expedite the

22   flow of information, to facilitate the prompt resolution of disputes over

23   confidentiality of discovery materials, to adequately protect information the

24   parties are entitled to keep confidential, to ensure that the parties are permitted

25   reasonable necessary uses of such material in preparation for and in the conduct

26   of trial, to address their handling at the end of the litigation, and serve the ends

27   of justice, a protective order for such information is justified in this matter.  It is

28   the intent of the parties that information will not be designated as confidential for

**Exhibit 13**
**-402-**

tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

2.    Discovery materials produced in this case may be labeled as one of three categories: "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" (collectively and individually, "DESIGNATED MATERIAL") as set forth below. Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material"). This Order shall encompass not only Protected Material, but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; (3) any testimony, conversations, or presentations by Parties or their counsel that might reveal Protected Material; and (4) briefs memoranda or other writings filed with the Court and exhibits thereto that contain or reflect the content of any such Protected Material. All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIAL shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

3.    Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information, or material as follows: the word designating the category of Protected Material, i.e., "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE," shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts)

**Exhibit 13**
**-403-**

for which such protection is sought. For deposition and hearing transcripts, the word designating the material (i.e., "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE") shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as DESIGNATED MATERIAL.

4.     A designation of Protected Material (i.e., "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE") may be made at any time.  Inadvertent or unintentional production of documents, information, or material that has not been designated as described herein shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any party that inadvertently or unintentionally produces Protected Material without designating it as described herein may request destruction of that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure and providing replacement Protected Material that is properly designated.  The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Materials and any documents, information, or material derived from or based thereon.

5.     Non-public documents, information, or material produced in discovery in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the receiving Party, and its witnesses, experts, consultants, and other persons involved as permitted recipients hereunder, only in the litigation of this Action and shall not be used for any other purpose. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED

**Exhibit 13**
**-404-**

1   MATERIAL or any portion thereof except as may be reasonably necessary in the

2   litigation of this Action. Any such copies, duplicates, extracts, summaries, or

3   descriptions shall be classified DESIGNATED MATERIALS and subject to all

4   of the terms and conditions of this Order.

5          6.    **CONFIDENTIAL**. This category of Protected Information

6   contains information or tangible things that qualify for protection under Federal

7   Rule of Civil Procedure 26(c), or contain confidential and/or proprietary

8   information not known or readily available to the general public.  In determining

9   whether information should be designated as "CONFIDENTIAL," each party

10  agrees to use such designation only in good faith. CONFIDENTIAL documents,

11  information, and material may be disclosed only to the following persons, except

12  upon receipt of the prior written consent of the designating party, upon order of

13  the Court, or as set forth in paragraph 12 herein:

14              (a)   outside counsel of record in this Action for the Parties,

15                    including partners, associates, employees, and staff of such

16                    counsel to whom it is reasonably necessary to disclose the

17                    information for this litigation and independent attorneys

18                    contracted to assist outside counsel in connection with this

19                    action and to whom it is reasonably necessary to disclose the

20                    information for this litigation;

21              (b)   up to three (3) designated representatives (including in-house

22                    counsel) for the Parties who either have responsibility for

23                    making decisions dealing directly with the litigation of this

24                    Action, or who are assisting outside counsel in the litigation

25                    of this Action;

26              (c)   outside consultants or experts (i.e., not existing employees or

27                    affiliates of a party or an affiliate of a Party) retained for the

28                    purpose of this litigation, provided that: (1) such consultants

-5-

**Exhibit 13**
**-405-**

1  or experts are not presently employed by the Parties hereto for
2  purposes other than this Action; (2) before access is given, the
3  consultant or expert has completed the Undertaking attached
4  as Exhibit A ("Agreement to be Bound by Protective Order")
5  hereto and the same is served upon the producing Party with
6  (i) a current curriculum vitae of the consultant or expert, (ii)
7  a listing of each person or entity from whom the expert has
8  received compensation or funding for work in his or her areas
9  of expertise or to whom the expert has provided professional
10  services, including in connection with a litigation, at any time
11  during the preceding five years, and (iii) a listing (by name
12  and number of the case, filing date, and location of court) of
13  any litigation in connection with which the Expert has offered
14  expert testimony, including through a declaration, report, or
15  testimony at a deposition or trial, during the preceding five
16  years, at least seven (7) days before access to the
17  DESIGNATED MATERIAL is to be given to that consultant
18  or expert. The producing party may object to and notify the
19  receiving Party in writing that it objects to disclosure of
20  DESIGNATED MATERIAL to the consultant or expert.  The
21  Parties agree to promptly confer and use good faith to resolve
22  any such objection. If the Parties are unable to resolve any
23  objection, the objecting Party may file a motion with the
24  Court within such other time as the Parties may agree, seeking
25  a protective order with respect to the proposed disclosure.
26  The objecting Party shall have the burden of proving the need
27  for a protective order.  No disclosure shall occur until all such
28  objections are resolved by agreement or Court order;

-6-

**Exhibit 13**
**-406-**

(d)     independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action;

(e)     the Court and its personnel;

(f)     any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(g)     an author, signatory, or prior recipient of the document or the original source of the CONFIDENTIAL information. Such person shall be given access only to the specific document or information therein.

7.     To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "CONFIDENTIAL – ATTORNEYS' EYES ONLY" (or alternatively "CONFIDENTIAL – AEO"). To the extent such Protected Material includes computer source code and/or live data (that is, data as it exists residing in a database or databases) (i.e., "Source Code Material"), the producing Party may designate such Protected Material as "RESTRICTED CONFIDENTIAL SOURCE CODE."

8.     **CONFIDENTIAL – ATTORNEYS' EYES ONLY.** This category of Protected Material includes confidential information or items that the designating party has a good faith belief constitutes or contains trade secrets or other non-public, highly confidential research, development, technical, business,

**Exhibit 13**
**-407-**

and/or financial information that has not become public, the disclosure of which is likely to cause harm to the competitive position of the Disclosing Party. "CONFIDENTIAL – ATTORNEYS' EYES ONLY" information may include, without limitation: (i) technical information containing confidential information or items such as materials that show the internal technical structure, design or operation of products that have been made, imported, used, or sold by the producing party; (ii) financial and/or other commercially-sensitive information (e.g., pricing, customer lists, business, and/or marketing plans or analysis, license agreements, and the like); (iii) trade secrets; (iv) information subject to an obligation of confidentiality owed by the Producing Party to a third-party; and/or (v) information subject to the privacy interest of any individual. In determining whether information should be designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY," each party agrees to use such designation in good faith. For Protected Material designated CONFIDENTIAL – ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 6(a) and (c-g) who, at the time the lawsuit was filed (November 8, 2018) or within the previous two (2) years from the date the lawsuit was filed, are not competitive decision-makers of a Party or affiliates of a Party.

9.   **RESTRICTED CONFIDENTIAL SOURCE CODE.**  For the Protected Material designated RESTRICTED CONFIDENTIAL SOURCE CODE, the following additional restrictions apply:

(a)   Access to a Party's Source Code Material shall be provided only on "stand-alone" computer(s) (that is, the computer may not be linked to any network, including a local area network ("LAN"), an intranet or the Internet).   The stand-alone computer(s) may be connected to a printer. Additionally, the stand-alone computer(s) may only be located at the offices of

-8-

**Exhibit 13**
**-408-**

the producing Party's outside counsel within the Central District of California;

(b) The receiving Party shall make reasonable efforts to restrict its requests for such access to the stand-alone computer(s) to normal business hours, which for purposes of this paragraph shall be 9:00am through 6:00pm. The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the offices of its outside counsel shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action;[1]

(c) The producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced Source Code Material on the stand-alone computer(s);

(d) The producing Party will produce Source Code Material in computer searchable format on the stand-alone computer(s) as described above. The receiving Party shall be permitted to take notes; any notes taken during inspection of source code or based upon inspection of source code, must be marked "RESTRICTED CONFIDENTIAL SOURCE CODE" and shall be treated as RESTRICTED CONFIDENTIAL SOURCE CODE under the terms of this Order. Any such

---

[1] For the purposes of this paragraph, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other support personnel, such that the disclosure to a consultant or expert who employs others within his or her firm to help in his or her analysis shall count as a disclosure to a single consultant or expert.

-9-

**Exhibit 13**
**-409-**

1      notes shall not count towards the limitations on printing pages

2      set forth below in paragraph 8(h);

3  (e)  The producing Party shall install tools that are sufficient for

4      viewing and searching the source code produced, on the

5      platform produced.  At a minimum, these tools must provide

6      the ability to (1) view, search, and line-number any source file

7      and (2) search for a given pattern of text through a number of

8      files;

9  (f)  Access to DESIGNATED MATERIAL designated

10     RESTRICTED CONFIDENTIAL SOURCE CODE shall be

11     limited to outside counsel of record who, at the time the

12     lawsuit was filed (November 8, 2018) or within the previous

13     two (2) years from the date the lawsuit was filed, are not

14     competitive decision-makers of a Party or affiliates of a Party

15     and up to one (1) outside consultant or expert (i.e., not

16     existing employees or affiliates of a Party) retained for the

17     purpose of this litigation and approved to access such

18     Protected Materials pursuant to paragraph 5(c) above;

19 (g)  To the extent portions of Source Code Material are quoted in

20     a document containing source code (a "Source Code

21     document"), either (1) the entire Source Code document will

22     be stamped and treated as RESTRICTED CONFIDENTIAL

23     SOURCE CODE or (2) those pages containing quoted Source

24     Code Material will be separately stamped and treated as

25     RESTRICTED CONFIDENTIAL SOURCE CODE;

26 (h)  In no event may the receiving Party request printing of more

27     than 15 consecutive pages and more than 200 pages of

28     information in aggregate during the duration of the case

**Exhibit 13**
**-410-**

without prior agreement from the producing Party or further order of the Court.  If the receiving Party requires the printing of additional pages of source code beyond the limits stated herein, the parties agree to negotiate in good faith to determine the extent of any modification of these limits.  The receiving Party should provide the producing Party with specific identification of the Source Code Material it requests to be printed.  Printing of directory paths or structures and file names shall not count toward the consecutive or aggregate page count listed in this section;

(i)     Except as set forth in paragraphs 8(l)-(m) below, no additional copies of Source Code Material shall be made without prior written consent of the producing Party, except as necessary to create documents which, pursuant to the Court's rules, procedures, and order, must be filed or served electronically;

(j)     The receiving Party shall only request printing of those limited portions of the Source Code Material specifically necessary for a case activity (e.g., as evidence for trial or an exhibit for an expert's report). Counsel for the producing Party will keep the originals of all printed Source Code Material. Producing Party will produce a Bates-numbered copy of the originals of all printed Source Code Material to receiving Party within ten (10) business days of the request for printing.  The Parties will cooperate in good faith if a different timeframe for production is required;

(k)     The producing Party shall print every page of Source Code Material in 12 point font and with information necessary to later identify that Source Code Material, such as, but not

-11-

**Exhibit 13**
**-411-**

limited to, a header or footer, that identifies the file name and directory path;

(l)     Intentionally omitted;

(m)    If the receiving Party's outside counsel, consultants, or experts obtain the printout of the Source Code Material, the receiving Party shall ensure that such outside counsel, consultants, or experts keep the printout in a secured locked area in the offices of such outside counsel, consultants, or expert; and

(n)    A producing Party's Source Code Material may only be transported by the receiving Party at the direction of a person authorized under paragraph 8(f) above to another person authorized under paragraph 8(f) above, on paper via hand carry, Federal Express, or other similarly reliable courier. Source Code Material may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet.

10.     Nothing in this Order shall require production of documents, information, or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity.  If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the

-12-

**Exhibit 13**
**-412-**

return of such documents, information, or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return all copies of such documents, information, or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party.

11. The production of privileged or work-product protected documents, electronically stored information ('ESI') or information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

12. There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information, and material to protect against disclosure to any unauthorized persons or entities.

13. Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating party, (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information, (iii) although not identified as an author, addressee,

-13-

**Exhibit 13**
**-413-**

or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL, (iv) a current or former officer, director, or employee of the producing Party or a current or former officer, director, or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel (subject to paragraph 8 of this Order); (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access DESIGNATED MATERIAL. DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

14.     Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" pursuant to this Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order.   Until expiration of the 30-day period, the entire deposition or hearing transcript shall be treated as CONFIDENTIAL – ATTORNEYS' EYES ONLY.

15.     Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Information or Material. In the event a Party wishes to use DESIGNATED MATERIAL in any pleading, motion, or other paper filed with the Court in this litigation, such pleading, motion, or other paper and Confidential Material shall be filed under seal pursuant to L.R. 79-5 and other applicable rules of the Court.

-14-

**Exhibit 13**
**-414-**

16.     The Order applies to pretrial discovery.  Nothing in this Order shall be deemed to prevent the parties form introducing and DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

17.     A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to re-designation within ten (10) business days of receipt of the written request, the requesting Party may apply to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rules of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met.  Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

18.     Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that he or she is subject to the terms and conditions of this Order and shall sign an acknowledgement that he or she has received a copy of, has read, and has agreed to be bound by this Order. A copy of the acknowledgment form is attached as Exhibit A.

19.     To the extent that any discovery is taken of persons who are not Parties to this Action (i.e., "Third Parties") and in the event that such Third Parties contended the discovery sought involves trade secrets, confidential

**Exhibit 13**
**-415-**

business or technical information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

20.     To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" any documents, information, or other material, in whole or in part, produced or given by such documents, information or other material, in whole or in part, produced or given by such Third Parties.  The Third Parties shall have ten (10) business days after production of such documents, information, or other materials to make such a designation.  Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information, or other material so produced or given shall be treated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" in accordance with this Order.

21.     Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts, or extracts thereof (excluding excerpt or extracts incorporated into any privileged memoranda of the Parties and materials which have been admitted into evidence in this Action), shall at the producing Party's election either be returned to the producing Party or be destroyed. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

22.     The failure to designate documents, information, or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof.  The entry of this Order and/or the production of documents, information, and material hereunder shall in

**Exhibit 13**
**-416-**

1   no way constitute a waiver of any objection to the furnishing thereof, all such

2   objections being hereby preserved.

3           23.    Any Party knowing or believing that any other party is in

4   violation of or intends to violate this Order and has raised the question of

5   violation or potential violation with the opposing party and has been unable to

6   resolve the matter by agreement may move the Court for such relief as may be

7   appropriate in the circumstances. Pending disposition of the motion by the Court,

8   the Party alleged to be in violation of or intending to violate this Order shall

9   discontinue performance of and/or shall not undertake the further performance of

10   any action alleged to constitute a violation of this Order.

11           24.    Production of DESIGNATED MATERIAL by each of the

12   Parties shall not be deemed a publication of the documents, information, and

13   material (or the contents thereof) produced so as to void or make voidable

14   whatever claim the Parties may have as to the proprietary and confidential nature

15   of the documents, information, or other material or its contents.

16           25.    Nothing in this Order shall be construed to effect an

17   abrogation, waiver, or limitation of any kind on the rights of each of the Parties

18   to assert any applicable discovery or trial privilege.

19           26.    Nothing in this Order shall prevent or otherwise restrict

20   outside counsel of record from rendering advice to their clients and, in the course

21   of rendering such advice, relying upon the examination of DESIGNATED

22   MATERIAL subject to paragraphs 7 and 8 of this Order. In rendering such advice

23   and otherwise communicating with the client, however, counsel shall not disclose

24   or reveal the substance or content of any DESIGNATED MATERIAL, except as

25   permitted by this Order.

26           27.    Each of the Parties shall also retain the right to file a motion

27   with the Court (a) to modify this Order to allow disclosure of DESIGNATED

28   MATERIAL to additional persons or entities if reasonably necessary to prepare

**Exhibit 13
-417-**

1   and present this Action and (b) to apply for additional protection of

2   DESIGNATED MATERIAL.

3       After the adoption of this provision by the parties, Outside Counsel

4   representing a Party and any person associated with a Party who receive a

5   producing Party's Protected Material designated   "CONFIDENTIAL –

6   ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE

7   CODE" under this Protective Order who accesses or otherwise learns of, in whole

8   or in part, said Protected Material designated "CONFIDENTIAL –

9   ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE

10   CODE" under this Protective Order shall not prepare, prosecute, supervise,

11   advise, counsel, or assist in the preparation or prosecution of any patent

12   application seeking a patent on behalf of the receiving Party or its acquirer,

13   successor, or predecessor in the field of pulse oximetry during the pendency of

14   this Action and for two years after final termination of this action.  To avoid any

15   doubt, "prosecution" as used in this paragraph does not include representing or

16   advising a Party before a domestic or foreign agency in connection with a reissue

17   protest, ex parte reexamination, covered business method review, or *inter partes*

18   review; though in connection with any such reissue protest, ex parte

19   reexamination, covered business method review, or *inter partes* review involving

20   the patents-in-suit, Outside counsel for a receiving Party shall not: (i) participate

21   in the preparation, prosecution, supervision, advice, counsel, or assistance of any

22   amended claims; (ii) reveal a producing Party's Protected Material to any

23   prosecuting reexamination counsel or agent; or (iii) use a producing Party's

24   Protected Material for any purpose other than this litigation.  The applicability of

25   this provision is to be determined on an individual-by-individual basis such that

26   an individual attorney who has not received Protected Material designated

27   "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "RESTRICTED

28   CONFIDENTIAL SOURCE CODE" is not restricted from undertaking any

-18-

**Exhibit 13**
**-418-**

1    activities by virtue of this provision even if said individual attorney is employed

2    by or works for the same firm or organization as an individual who has received

3    such Protected Material.

4

5            IT IS SO ORDERED.

6

7    DATED: April 02, 2020

8                                                    _____

9                                                    JOHN D. EARLY
                                                     United States Magistrate Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-19-

**Exhibit 13**
**-419-**

1
2

**EXHIBIT A**

3
4

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

5   MASIMO CORPORATION, a                   )
6   Delaware Corporation; and                )
    CERCACOR LABORATORIES, INC.,             )
7   a Delaware corporation,                  )
8                                            )
              Plaintiffs/Counterdefendants,  )
9                                            )  Civil Action No. 8:18-cv-2001-JVS-JDE
10            v.                             )
11                                           )
    TRUE WEARABLES, INC., a                  )
12  Delaware corporation; and MARCELO        )
    LAMEGO, an individual,                   )
13                                           )
14            Defendants/Counterclaimants.   )

15

16   **AGREEMENT TO BE BOUND BY PROTECTIVE ORDER**

17

18       I, _____,

19   declare that:

20

21       1.    My address is _____

22   _____. My current

23   employer is _____. My

24   current occupation is _____.

25       2.    I have received a copy of the Protective Order in this action. I have

26   carefully read and understand the provisions of the Protective Order.

27       3.    I will comply with all of the provisions of the Protective Order.  I

28   will hold in confidence, will not disclose to anyone not qualified under the

-1-

**Exhibit 13
-420-**

1    Protective Order, and will use only for purposes of this action any information

2    designated as "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES

3    ONLY" or "RESTRICTED CONFIDENTIAL SOURCE CODE" that is

4    disclosed to me.

5        4.    Promptly upon termination of these actions, I will return all

6    documents and things designated as "CONFIDENTIAL," "CONFIDENTIAL –

7    ATTORNEYS' EYES ONLY" or "RESTRICTED CONFIDENTIAL SOURCE

8    CODE" that came into my possession, and all documents and things that I have

9    prepared relating thereto, to the outside counsel for the party by whom I am

10   employed.

11       5.    I hereby submit to the jurisdiction of this Court for the purpose of

12   enforcement of the Protective Order in this action.

13

14       I declare under penalty of perjury that the foregoing is true and correct.

15

16

17   Signature _____

18

19   Date _____

20

21

22

23

24

25

26

27

28

-2-

**Exhibit 13**
**-421-**

EXHIBIT 14

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-02001-JVS (JDEx) | Date | June 15, 2020 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. True Wearables, Inc., et al. | | |

| Present: The Honorable | John D. Early, United States Magistrate Judge |
|---|---|

| Maria Barr | n/a |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| n/a | n/a |

**Proceedings:**       Order Granting Motion Overruling Objections (Dkt. 108)

On June 4, 2020, Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs") filed a Motion (Dkt. 108, "Motion") to Overrule Objections by Defendants True Wearables, Inc. and Marcelo Lamego ("Defendants") to Stephen Jensen's access to material under the operative Confidentiality Protective Order, with a supporting Joint Stipulation (Dkt. 108-1, "Jt. Stip.") and supporting and opposing declarations with exhibits, (Dkt. 108-2 to 108-10, 107-1 to 107-4). Plaintiffs filed a Supplemental Memorandum in support of the Motion on June 11, 2020. Dkt. 109. The Court finds this matter may appropriately be decided without oral argument. As a result, the hearing set for June 25, 2020 at 10:00 a.m. is vacated.

Plaintiffs ask the Court to overrule Defendants' objections to Plaintiffs' sharing Confidential-Attorneys' Eyes Only ("AEO") or Restricted Confidential Source Code ("Source Code") under the Protective Order (Dkt. 100, "Protective Order") with Stephen Jensen, an attorney with the firm representing Plaintiffs, among other things, arguing the Court already overruled Defendants' objections to Mr. Jensen's access in granting Plaintiffs' Motion for Entry of Protective Order (Dkt. 97) and in entering the Protective Order, and arguing the objections are substantively without merit. Jt. Stip. at 6-9. Defendants, to the contrary, maintain their objections to Mr. Jensen's access, asking "the court to definitively state that Mr. Jensen is a competitive decisionmaker of Plaintiffs within the definition set forth in Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992)." Jt. Stip. at 12.

**Exhibit 14**
**-422-**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-02001-JVS (JDEx) | Date | June 15, 2020 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. True Wearables, Inc., et al. | | |

As an initial matter, Defendants are correct that the Court did not "definitively state" that Mr. Jensen was or was not a competitive decisionmaker in granting Plaintiffs' Motion for Entry of Protective Order. However, the Court did conduct a balancing of the parties' competing interests in their respective dueling proposed protective orders under <u>Brown Bag</u> in entering the Protective Order, with its limitations, including time limitations, on who may have access to AEO and Source Code information. Thus, the Court will now, in the context of the Protective Order, conduct a <u>Brown Bag</u> analysis specific to Mr. Jensen.

The Protective Order (Dkt. 100), provides, in part:

7. To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "CONFIDENTIAL – ATTORNEYS' EYES ONLY" (or alternatively "CONFIDENTIAL – AEO"). To the extent such Protected Material includes computer source code and/or live data (that is, data as it exists residing in a database or databases) (i.e., "Source Code Material"), the producing Party may designate such Protected Material as "RESTRICTED CONFIDENTIAL SOURCE CODE."

8. **CONFIDENTIAL – ATTORNEYS' EYES ONLY.**   This category of Protected Material includes confidential information or items that the designating party has a good faith belief constitutes or contains trade secrets or other non-public, highly confidential research, development, technical, business, and/or financial information that has not become public, the disclosure of which is likely to cause harm to the competitive position of the Disclosing Party. "CONFIDENTIAL – ATTORNEYS' EYES ONLY" information may include, without limitation: (i) technical information containing confidential information or items such as materials that show the internal technical structure, design or operation of products that have been made, imported, used, or sold by the producing party; (ii) financial and/or other commercially-sensitive information (e.g., pricing, customer lists, business, and/or marketing plans or analysis, license agreements, and the like); (iii) trade secrets; (iv) information

**Exhibit 14**
**-423-**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 8:18-cv-02001-JVS (JDEx) | Date | June 15, 2020 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. True Wearables, Inc., et al. | | |

    subject to an obligation of confidentiality owed by the Producing Party to a third-party; and/or (v) information subject to the privacy interest of any individual. In determining whether information should be designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY," each party agrees to use such designation in good faith. <u>For Protected Material designated CONFIDENTIAL – ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 6(a) and (c-g) who, at the time the lawsuit was filed (November 8, 2018) or within the previous two (2) years from the date the lawsuit was filed, are not competitive decision-makers of a Party or affiliates of a Party.</u>

9. **RESTRICTED CONFIDENTIAL SOURCE CODE.**   For the Protected Material designated RESTRICTED CONFIDENTIAL SOURCE CODE, the following additional restrictions apply:

. . .

    (f) <u>Access to DESIGNATED MATERIAL designated RESTRICTED CONFIDENTIAL SOURCE CODE shall be limited to outside counsel of record who, at the time the lawsuit was filed (November 8, 2018) or within the previous two (2) years from the date the lawsuit was filed, are not competitive decision-makers of a Party or affiliates of a Party</u> and up to one (1) outside consultant or expert (i.e., not existing employees or affiliates of a Party) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(c) above; . . . .

Dkt. 100, ¶¶ 7-9 (underlining added). Defendants contend that Mr. Jensen falls within the definition of "competitive decision-maker" of a Party or an affiliate of a Party for purposes of disclosing AEO and Source Code information under the Protective Order, citing <u>Brown Bag</u>, and thus should not be permitted access to materials designated by Defendants as AEO or Source Code under the Protective Order. Jt. Stip. at 12-16.

**Exhibit 14**
**-424-**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-02001-JVS (JDEx) | Date | June 15, 2020 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. True Wearables, Inc., et al. | | |

In <u>Brown Bag</u>, the parties, through outside counsel, stipulated to an "attorneys' eyes only" protective order. 960 F.2d at 1469. Thereafter, the plaintiff's outside counsel withdrew and the plaintiff was represented solely by a newly hired in-house counsel who was its "sole legal advisor." <u>Id.</u> at 1469-70. The defendant moved for a protective order to restrict the plaintiff's in-house counsel from accessing "attorney's eyes only" information under the previously entered protective order. <u>Id.</u> at 1469. The district court issued an order granting a protective order, requiring the plaintiff to hire an independent consultant to review the "attorneys' eyes only" material. <u>Id.</u> The Ninth Circuit found the district court did not abuse its discretion in issuing the protective order, noting, among other things, that the "attorneys' eyes only" material was not itself "relevant" to the claim at issue. <u>Id.</u> at 1471. The Ninth Circuit found the protective order struck "a reasonable balance between" the parties' conflicting interests," that is, the risk of "inadvertent disclosure of [the defendant's] trade secrets to competitors" against the risk that limitations would impair the plaintiff's ability to prosecute its claims. <u>Id.</u> at 1470-71.

The Ninth Circuit in <u>Brown Bag</u> referred to <u>U.S. Steel Corp. v. United States</u>, 730 F.2d 1465 (Fed. Cir. 1984) as "the leading authority on protective orders distinguishing between outside and in-house counsel." <u>Brown Bag</u>, 960 F.2d at 1470. In <u>U.S. Steel</u>, the Federal Circuit held that "[t]he mere classification of a lawyer, whether in-house counsel, retained outside counsel, board member, or former employee, does not control who gains access to confidential materials." 730 F.2d at 1468. Nor "is the standard . . . regular contact with other corporate officials who make 'policy' or even competitive decisions." <u>Matsushita Elec. v. Indus. Co. v. United States</u>, 929 F.2d 1577, 1580 (Fed. Cit. 1991) (also cited by <u>Brown Bag</u>, 960 F.2d at 1470). Instead, "the factual circumstances surrounding each individual counsel's activities, associations, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure." <u>U.S. Steel</u>, 730 F.2d at 1468. More specifically, the phrase "competitive decisionmaking" is shorthand for "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any and all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." <u>Id.</u> at 1468, n.3. Further, unrebutted statements made by counsel asserting that a lack of participation in competitive decision-making may form a reasonable basis to conclude that counsel is isolated from competitive decision-making. See <u>Matsushita Elec.</u>, 929 F.2d at 1580.

In entering the Protective Order, the Court has already done a general balancing of competing concerns based on the parties' prior briefing in limiting who may have access to

**Exhibit 14**
**-425-**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-02001-JVS (JDEx) | Date | June 15, 2020 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. True Wearables, Inc., et al. | | |

AEO and Source Code Information, without ruling on its application to the circumstances of any particular person. Defendants have now objected to Plaintiffs' stated intent to share AEO and Source Code information with Mr. Jensen, arguing Mr. Jensen is a "competitive decision-maker." That determination is limited by the Protective Order's time limitation already determined by the Court: that is, has Mr. Jensen been a "competitive decision-maker of a Party or affiliates of a Party" since November 8, 2016.

Mr. Jensen has submitted a declaration listing several prior cases in which he has served as counsel for Plaintiffs, attesting that although parties have frequently sought to restrict his access to confidential materials, "courts have allowed [him] to access all documents and information," including AEO information, "under the respective protective orders," affirming that he has abided by those protective orders and would not reveal information governed by such an order, attesting that Plaintiffs rely on him "to make important litigation decisions . . . particularly when a protective order prevents disclosure to the clients of the underlying reasons for such decisions," with no other attorney at the firm having his history with and understanding of Plaintiffs' needs, stating he does "not currently make business decisions for" Plaintiffs, with a "current role" of "outside counsel," affirming that Masimo is publicly traded and some lawyers at his firm have held shares within the last two years, with no lawyers known to have held a "significant number" of shares, and the firm itself own now shares of Plaintiffs' stock. See Dkt. 82-2 at ¶¶ 7-13. Mr. Jensen further states that he has agreed to be subject to patent prosecution bars, which "eliminated the risk of inadvertent disclosure" of confidential materials, an agreement he also made here. Id. at ¶ 16. Mr. Jensen avers that in his current role as outside counsel, he does "not make competitive decisions" for Plaintiffs and "[n]othing about [his] role requires" his providing advice on competitive pricing or technical design relating to Defendants, with his advice limited to "legal advice." Id. at ¶¶ 20-21. The declaration further describes Mr. Jensen's "volunteer" service on the Board of Directors for Cercacor, providing overall corporate governance and monitoring corporate activities, but not making any competitive business decisions, for a non-profit foundation named the Masimo Foundation for Ethics, Innovation and Competition in Healthcare, and attendance at other board meetings to discuss litigation, and attests that Mr. Jensen would abide by the Protective Order by abstaining from certain discussion and decisions as needed, a "well-known and common practice" that he has undertaken previously. Id. at ¶¶ 21-24.

Against Mr. Jensen's declaration, Defendants previously submitted the declaration of Defendant Marcelo Lamego, partially sealed, cited again in connection with the instant Motion (Jt. Stip. at 13), to which Mr. Jensen takes issue. See Dkt. 82-7; Dkt. 82-2 at ¶¶ 14-

**Exhibit 14
-426-**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 8:18-cv-02001-JVS (JDEx) | Date | June 15, 2020 |
|----------|--------------------------|------|---------------|
| Title | Masimo Corporation, et al. v. True Wearables, Inc., et al. | | |

15, 17-19. The Court makes no findings regarding the factual conflicts between the two declarations. Rather, the Court, having already found in entering the Protective Order that in the circumstances of this case, a person's potential role as a "competitive decision-maker" of a Party or Party-affiliate before November 8, 2016 will not bar an otherwise-qualified person from having access to AEO or Source Code information, as information in Mr. Lamego's declaration all predates November 2016, it does not require barring Mr. Jensen here.

Next, Defendants, both in the prior motion and in the instant Motion, refer to Mr. Jensen's roles with Plaintiffs, including at board meetings, and in the instant Motion, also reference certain sealed board minutes referencing Mr. Jensen. See Jt. Stip. at 14-15 (referring to Exhs. 1-4 of the Fletcher Declaration, filed under seal, Dkt. 107-1 to 107-4). The Court has reviewed the minutes, as provided, and finds they do not support the conclusions Defendants assert in the Joint Stipulation. Nor do the minutes, or any other evidence submitted by Defendants, show that the risk of inadvertent disclosure, considering all of the relevant facts, including the roles played by Mr. Jensen in relation to Plaintiffs, outweighs the need for disclosure also considering Mr. Jensen's roles in relation to Plaintiffs. The Court credits Mr. Jensen's declaration regarding the scope of his current involvement with Plaintiffs, including his attesting under oath and ask an officer of the Court since 1990 that he does not have a competitive decision-making role with Plaintiffs. Although Mr. Jensen appears to have regular contact with Plaintiffs' officers, directors, and employees, and is himself a director of Cercacor, the evidence of his role does not support a finding that he is a competitive decision-maker of a Party or Party-affiliate so as to create a risk of inadvertent disclosure of protected material that outweighs the need to disclose such information to him, considering the unique role he plays in providing litigation advice to Plaintiffs in this case and generally.

As a result, Defendants' objections to disclosure of AEO and Source Code information to Mr. Jensen are overruled and the Motion (Dkt. 108) is GRANTED.

IT IS SO ORDERED.

**Exhibit 14**
**-427-**

**From:** noreply@courtdrive.com <noreply@courtdrive.com>
**Sent:** Monday, June 15, 2020 11:50 AM
**To:** Lit MASIMOL.1085L <LitMASIMOL.1085L@Knobbe.onmicrosoft.com>
**Subject:** Activity in Case 8:18-cv-02001-JVS-JDE Masimo Corporation et al v. True Wearables, Inc. et al Order on Motion
for Leave to File Document Under Seal

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to
this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits
attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of
all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees
apply to all other users. To avoid later charges, download a copy of each document during this first
viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not
apply.**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered on 6/15/2020 at 11:48 AM PDT and filed on 6/15/2020
**Case Name:**        Masimo Corporation et al v. True Wearables, Inc. et al
**Case Number:**      8:18-cv-02001-JVS-JDE
**Filer:**
**Document Number:** 111

**Docket Text:**
**MINUTES (IN CHAMBERS) Order Granting Motion Overruling Objections (Dkt. [108] ) by
Magistrate Judge John D. Early: As a result, Defendants' objections to disclosure of AEO and
Source Code information to Mr. Jensen are overruled and the Motion (Dkt. [108]) is GRANTED.
(see document for further details). (et)**

**8:18-cv-02001-JVS-JDE Notice has been electronically mailed to:**

Sherron L Wiggins     support@conklelaw.com, s.wiggins@conklelaw.com

Ryan J Fletcher     kdrieman@merchantgould.com, rfletcher@merchantgould.com, smaney@merchantgould.com

Brian Christopher Claassen     brian.claassen@kmob.com, knobbeadmin@ecf.courtdrive.com

Amanda Rose Washton     a.washton@conklelaw.com, support@conklelaw.com, awashton@hotmail.com

Peter A Gergely     pgergely@merchantgould.com

Joseph R Re     joe.re@knobbe.com, litigation@kmob.com, knobbeadmin@ecf.courtdrive.com, jre@kmob.com

**Exhibit 14**
**-428-**

Paige S Stradley      pstradley@merchantgould.com

Irfan A Lateef      litigation@kmob.com, ial@kmob.com

Stephen C Jensen      sjensen@kmob.com, steve.jensen@knobbe.com

**8:18-cv-02001-JVS-JDE Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**
Andrew T Pouzeshi
Merchant and Gould PC
1801 California Street Suite 3300
Denver CO 80202

**Exhibit 14
-429-**

# EXHIBIT 15

ORAL ORDER: Having reviewed the parties' letter briefs (D.I. 23, 24), IT IS HEREBY ORDERED that Apple's proposal for the protective order - to prohibit any firm representing Plaintiff LBT IP I LLC ("LBT") which receives Apple's highly-confidential documents or source code from participating in any claim amendments in post-grant proceedings - is DENIED. LBT's proposed prosecution bar is ADOPTED provided it also includes the prohibition against any direct or indirect claim drafting or claim amendment activity in connection with any inter partes (or other proceedings before the PTAB) or post-grant review proceedings by any attorney who accesses Apple's highly-confidential documents or source code. Some prosecution bar covering amendments in post-grant proceedings is necessary to protect Apple from the risk of LBT strategically "narrowing [the] scope of its claims through claim amendments in post-grant proceedings based on information that it learns (about currently accused products, or products under development)" from Apple's confidential information. Boston Sci. Corp. v. Cook Grp. Inc., 2017 WL 547903, at *2 (D. Del. Feb. 10, 2017). But Apple's proposed bar is too broad and not supported by good cause. See generally In re Deutsche Bank Trust Co. Ams., 605 F.3d 1373, 1378 (Fed. Cir. 2010). Instead, the Court will allow counsel who have had access to confidential information to participate in post-grant proceedings and prohibit them only from participating in drafting or amending claims in those proceedings. See, e.g., British Telecommunications PLC v. IAC/InterActiveCorp, 330 F.R.D. 387, 39697 (D. Del. 2019) ("[T]he act of drafting and amending claims presents the greatest risk of misuse of the litigation opponent's confidential information, while the burden on the patentee of that less restrictive bar is significantly reduced, as compared to a wholesale bar against participation in the post-review grant proceedings in any way."). The Court is not persuaded that a purported contingency fee arrangement between LBT and its litigation counsel, or the size of the firm representing LBT, render the protections the Court is imposing inadequate to address Apple's legitimate concerns. IT IS FURTHER ORDERED that the parties shall submit a modified protective order, consistent with this Order, no later than May 1, 2020. ORDERED by Judge Leonard P. Stark on 4/27/20. (ntl) (Entered: 04/27/2020)

As of April 28, 2020, PACER did not contain a publicly available document associated with this docket entry. The text of the docket entry is shown above.

*LBT IP I LLC v. Apple Inc.*
1-19-cv-01245 (DDE), 4/27/2020, docket entry 28

**Exhibit 15**
**-430-**

# EXHIBIT 16

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| ACHATES REFERENCE PUBLISHING, INC., | Civil Action No. 2:11-cv-294-JRG-RSP |
| Plaintiff | **JURY TRIAL DEMANDED** |
| v. | |
| SYMANTEC CORPORATION; GLOBALSCAPE INC.; COMMON TIME INC.; COMMON TIME LTD.; NATIVE INSTRUMENTS GMBH (FORMERLY KNOWN AS NATIVE INSTRUMENTS SOFTWARE SYNTHESIS GMBH); NATIVE INSTRUMENTS NORTH AMERICA, INC.; STARDOCK SYSTEMS INC.; VALVE LLC; ELECTRONIC ARTS, INC.; NERO AG; NERO INC.; QUICKOFFICE, INC.; SOLARWINDS INC.; and APPLE INC., | |
| Defendants. | |

**ORDER GRANTING PLAINTIFF'S EMERGENCY MOTION TO
CLARIFY THE AGREED PROTECTIVE ORDER**

The Court ORDERS that (1) Gibbons PC may assist and represent Achates Reference Publishing, Inc., ("Achates"), in the pending *Inter Partes* Review ("IPR") proceedings related to the validity of the patents-in-suit, including participating in depositions, conferences and hearings and any appeals from decisions of the US Patent and Trademark Office; and that (2) Mr. Rosenblatt may assist Achates and its counsel in the pending IPR proceedings related to the validity of the patents-in-suit, including in submitting declarations and in responding to actions of the US Patent and Trademark Office including appeals.  Notwithstanding the foregoing, Gibbons PC and Mr. Rosenblatt may not directly or indirectly assist Achates or its IPR counsel in drafting, amending or proposing for substitution patent claims in the IPR proceedings, and

**Exhibit 16
-431-**

may not use Apple's confidential information for any purpose other than this litigation.   The remainder of the Protective Order, including Paragraph 11 thereof, remains in full force and effect.

**SIGNED this 20th day of August, 2013.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

**Exhibit 16
-432-**

EXHIBIT 17

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240 / Fax: (858) 678-5099

Seth M. Sproul (SBN 217711)
sproul@fr.com
Tucker N. Terhufen (SBN 311038)
terhufen@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real, Suite 100
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Attorneys for Defendant
APPLE INC.

*(Attorney information continued on following page)*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINN, INC., <br><br>            Plaintiff, <br><br>    v. <br><br> APPLE INC., <br><br>            Defendant. | Case No. 8:19-cv-01805-DOC-JDE <br><br> **STIPULATED [PROPOSED] PROTECTIVE ORDER** <br><br> District Judge: David O. Carter <br> Magistrate Judge: John D. Early |

**Exhibit 17**
**-433-**

RYAN E. HATCH
ryan@ryanehatch.com
California Bar No. 235577
**LAW OFFICE OF RYAN E. HATCH, P.C.**
13323 Washington Blvd., Ste. 100
Los Angeles, CA 90066
Tel: (310) 279-5079
Fax: (310) 693-5328

DAVID A. SKEELS (admitted *pro hac vice*)
dskeels@whitakerchalk.com
Texas Bar No. 24041925
**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**
301 Commerce St., Ste. 3500
Ft. Worth, TX 76102
Tel: (817) 878-0500
Fax: (817) 878-0501

CABRACH J. CONNOR (admitted *pro hac vice*)
cab@connorkudlaclee.com
Texas Bar No. 24036390
**CONNOR KUDLAC LEE PLLC**
609 Castle Ridge Rd., Ste. 450
Austin, TX 78746
Tel: (512) 777-1254
Fax: (888) 387-1134

Attorneys for Plaintiff PINN, INC.

**Exhibit 17
-434-**

WHEREAS, Plaintiff Pinn, Inc. ("Pinn") and Defendant Apple Inc. ("Apple"), hereafter collectively referred to as "the Parties," believe that certain information that is or will be encompassed by discovery demands by the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information;

WHEREAS, the Parties seek a protective order limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c);

WHEREAS, good cause exists for the entry of a protective order in that this action is likely to involve trade secrets and other valuable research, development, commercial, financial, technical and/or proprietary information for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. Such confidential and proprietary materials and information consist of, among other things, confidential business or financial information, information regarding confidential business practices, or other confidential research, development, or commercial information (including information implicating privacy rights of third parties), information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such information is justified in this matter. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public

**Exhibit 17**
**-435-**

manner, and there is good cause why it should not be part of the public record of this case;

THEREFORE, it is hereby stipulated among the Parties that:

1.      Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such document, information or material ("Protected Material").  Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information or material as follows: "CONFIDENTIAL."  The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts and natively produced documents) for which such protection is sought. For deposition and hearing transcripts, the word "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."  For natively produced Protected Material, the word "CONFIDENTIAL" shall be placed in the filename of each such natively produced document.

2.      Any document produced before issuance of this Order with the designation "Confidential" or "Confidential - Outside Attorneys' Eyes Only" shall receive the same treatment as if designated "RESTRICTED - ATTORNEYS' EYES ONLY" under this Order, unless and until such document is redesignated to have a different classification under this Order.

3.      With respect to documents, information or material designated "CONFIDENTIAL," "RESTRICTED - ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" ("DESIGNATED

**Exhibit 17**
**-436-**

MATERIAL"), [1] subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits; and (e) stipulations.  All copies, reproductions, extracts, digests and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4.      A designation of Protected Material (i.e., "CONFIDENTIAL," "RESTRICTED -ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE") may be made at any time.  Inadvertent or unintentional production of documents, information or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment.  Any party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated.  The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Materials and any documents, information or material derived from or based thereon.

5.      "CONFIDENTIAL" documents, information and material may be disclosed only to the following persons, except upon receipt of the prior written

---

[1] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "RESTRICTED - ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE," both individually and collectively.

**Exhibit 17**
**-437-**

consent of the designating party, upon order of the Court, or as set forth in

paragraph 12 herein:

    (a)   outside counsel of record in this Action for the Parties;

    (b)   employees of such counsel assigned to and reasonably necessary to

assist such counsel in the litigation of this Action;

    (c)   up to one in-house counsel for the Parties who is a member in good

standing of at least one state bar or international equivalent, executes the

Undertaking attached as Appendix A, and has responsibility for making decisions

dealing directly with the litigation of this Action;

    (d)   private mediators; arbitrators, or ADR professionals engaged in

connection with this Action;

    (e)   outside consultants or experts[2] (i.e., not existing employees or affiliates

of a Party or an affiliate of a Party) retained for the purpose of this litigation,

provided that:  (1) such consultants or experts are not presently employed by a Party

hereto for purposes other than this Action;[3] (2) before access is given, the consultant

or expert has completed the Undertaking attached at Appendix A hereto and the

same is served upon the producing Party with a current curriculum vitae of the

consultant or expert at least seven (7) days before access to the Protected Material is

to be given to that consultant or Undertaking to object to and notify the receiving

---

[2] For any such person, the curriculum vitae shall identify his/her (i) current employer(s), (ii) each person or entity from whom s/he has received compensation or funding for work in his or her areas of expertise or to whom the s/he has provided professional services, including in connection with a litigation, at any time during the preceding five years; (iii) (by name and number of the case, filing date, and location of court) any litigation in connection with which the s/he has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.  If such consultant or expert believes any of this information is subject to a confidentiality obligation to a third-party, then s/he should provide whatever information can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose Protected Material to the consultant or expert shall be available to meet and confer with the designating Party regarding any such engagement.
[3] For avoidance of doubt, an independent expert or consultant retained (as opposed to employed) by a Party on another litigation would not be precluded under this section.

**Exhibit 17**
**-438-**

Party in writing that it objects to disclosure of Protected Material to the consultant or expert. The Parties agree to promptly confer and use good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within ten (10) days of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order;[4]

(f)    independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action; and

(g)    the Court and its personnel.

6.    A Party shall designate documents, information or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information or material.

7.    Documents, information or material produced in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, and the knowledge of the existence of such Protected Material (i) shall be used only for prosecuting, defending, or attempting to settle this Action, (ii) shall not be used for any business purpose, in connection with any other legal or administrative proceeding, including but not limited to any proceeding at the U.S. Patent and Trademark Office (or any similar agency of a foreign government), or directly or indirectly for any other purpose whatsoever, although the Parties to this Protective

---

[4] Nothing in this order effects a waiver by any party to raising an objection if circumstances warrant after the time period described in paragraph 5(e) expires.

**Exhibit 17**
**-439-**

Order will not object to use of undesignated materials produced in this Action in
Case No. 8:19-cv-01856-DOC-JDE ("1856 Case") and Case No. 8:19-cv-01840-
DOC-JDE ("1840 Case"), and (iii) shall not be disclosed to any person who is not
entitled to receive such Protected Material as herein provided.  Notwithstanding the
foregoing, and subject to Paragraphs 9, 10, 21, and 32 below, the Parties agree that
should a Party wish to use DESIGNATED MATERIALS in the 1856 Case or 1840
Case (other than DESIGNATED MATERIALS that are designated either
"RESTRICTED — ATTORNEYS' EYES ONLY" or "RESTRICTED
CONFIDENTIAL SOURCE CODE," which as set forth below in Paragraphs 9 and
10 may not be used in any related case under any circumstances, including in the
1856 Case or the 1840 Case), the Party requesting to use such materials will meet
and confer with the designating party and that any dispute regarding such use shall
be resolved under C.D. Cal. Local Rule 37.  All produced Protected Material shall
be carefully maintained so as to preclude access by persons who are not entitled to
receive such Protected Material, and any person or entity who obtains access to
DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not
make any copies, duplicates, extracts, summaries or descriptions of such
DESIGNATED MATERIAL or any portion thereof except as may be reasonably
necessary in the litigation of this Action.  Any such copies, duplicates, extracts,
summaries or descriptions shall be classified DESIGNATED MATERIALS and
subject to all of the terms and conditions of this Order.

      8.    To the extent a producing Party believes that certain Protected Material
qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination
deserves even further limitation, the producing Party may designate such Protected
Material "RESTRICTED -- ATTORNEYS' EYES ONLY," or to the extent such
Protected Material includes or substantially relates to computer source code[5] and/or

[5] "Source code" means computer code, formulas, engineering specifications, or
schematics that define or otherwise describe in detail the algorithms or structure of

**Exhibit 17**
**-440-**

live data (that is, data as it exists residing in a database or databases), the producing Party may designate such Protected Material as "RESTRICTED CONFIDENTIAL SOURCE CODE" ("Source Code Material").

9.    For Protected Material designated RESTRICTED -- ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a-b) and (d-g).  In addition, and subject to Paragraphs 21 and 32 below, under no circumstances may a Party use DESIGNATED MATERIALS that are designated RESTRICTED – ATTORNEYS' EYES ONLY in any action other than this Action, including in the 1856 Case or the 1840 Case.

10.    For Protected Material designated RESTRICTED CONFIDENTIAL SOURCE CODE, under no circumstances may a Party use such information in any case other than this Action, including in the 1856 Case or the 1840 Case, and the following additional restrictions apply:

(a)    Access to a Party's Source Code Material shall be provided only on "stand-alone" computer(s) (that is, the computer may not be linked to any network, including a local area network ("LAN"), an intranet or the Internet) in a secured locked room.  The stand-alone computer(s) may be connected to a printer.  The stand-alone computer(s) may only be located within the continental United States at the offices of the producing Party's outside counsel in the district or mutually agreed location.  The stand-alone computer(s) shall have disk encryption and be password protected.  Use or possession of any input/output device (e.g., USB memory stick, mobile phone or tablet, camera or any camera-enabled device, CD,

source code, object code (i.e., computer instructions and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator), microcode, register transfer language ("RTL"), firmware, and hardware description language ("HDL"), as well as any and all programmer notes, annotations, and other comments of any type directly related thereto and describing the code. For avoidance of doubt, this includes source files, make files, intermediate output files, not publicly available, proprietary executable files, header files, resource files, library files, module definition files, map files, object files, linker files, browse info files, and debug files.

**Exhibit 17**
**-441-**

floppy disk, portable hard drive, laptop, or any device that can access the Internet or any other network or external system, etc.) is prohibited while accessing the computer containing the source code.  All persons entering the locked room containing the stand-alone computer(s) must agree to submit to reasonable security measures to ensure they are not carrying any prohibited items before they will be given access to the stand-alone computer(s).  The producing Party may periodically "check in" on the activities of the receiving Party's representatives during any stand-alone computer review and may designate a person to visually monitor from outside the room the receiving Party's activities but in a manner that permits monitoring but does not enable the viewer to view work product but only to ensure that no unauthorized electronic records of the Source Code Material and no information concerning the Source Code Material are being created or transmitted in any way.  The producing Party may not record (visually, audibly or by other means) the activities of the receiving Party's representatives;

(b)    The receiving Party shall make reasonable efforts to restrict its requests for such access to the stand-alone computer(s) to normal business hours, which for purposes of this paragraph shall be 8:00 a.m. through 6:00 p.m.  However, upon reasonable notice from the receiving party, the producing Party shall make reasonable efforts to accommodate the receiving Party's request for access to the stand-alone computer(s) outside of normal business hours.  The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the offices of its outside counsel shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action;

(c)    The Receiving Party's outside counsel and/or experts may request that commercially available software tools for reviewing, viewing, and searching Source Code be installed on the standalone computer, provided, however, that (1) the Receiving Party possesses an appropriate license to such software tools and the

**Exhibit 17**
**-442-**

software does not enable functions other than viewing and searching Source Code or otherwise compromise security of the Source Code Computer; and (2) the request is made not less than 7 business days in advance of the requested inspection. The Receiving Party must provide the Producing Party with such licensed software tool(s) at least 7 business days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer. Apple will not provide any tools with compiler functionality, and will produce its code in a MacOS environment, consistent with how it is created and maintained. Accordingly, any requested tools should be compatible with MacOS. The Producing Party may object to the requested software tool(s) within 5 business days of the request, and the software tool(s) will not be installed on the Source Code Computer until such objection is resolved;

(d)   The producing Party will produce Source Code Material in computer-searchable format on the stand-alone computer(s) as described above in a format that preserves the Source Code structure and relationships;

(e)   Access to Protected Material designated RESTRICTED CONFIDENTIAL - SOURCE CODE shall be limited to outside counsel and up to three (3) outside consultants or experts[6] (i.e., not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(e) above. A receiving Party may include excerpts of Source Code Material in a pleading, exhibit, expert report, discovery document, deposition transcript, other Court document, provided that the Source Code Documents are appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein,

---

[6] For the purposes of this paragraph, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other support personnel, such that the disclosure to a consultant or expert who employs others within his or her firm to help in his or her analysis shall count as a disclosure to a single consultant or expert.

**Exhibit 17**
**-443-**

and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures and orders;

(f)     To the extent portions of Source Code Material are quoted in an electronic copy or image of a document which, pursuant to the Court's rules, procedures, or order, must be filed or served electronically ("Source Code Document"), either (1) the entire Source Code Document will be stamped and treated as RESTRICTED CONFIDENTIAL SOURCE CODE or (2) those pages containing quoted Source Code Material will be separately stamped and treated as RESTRICTED CONFIDENTIAL SOURCE CODE;

(g)     Except as set forth in this paragraph, no electronic copies or images of Source Code Material shall be made without prior written consent of the producing Party. The receiving Party may create an electronic copy or image of limited excerpts of Source Code Material only to the extent necessary to create Source Code Documents or any drafts of these documents.[7] Notwithstanding paragraph 19, the receiving Party shall only include such excerpts as are reasonably necessary for the purposes for which such part of the Source Code Material is used. Images or copies of Source Code Material shall not be included in correspondence between the parties (references to production numbers shall be used instead) and shall be omitted from pleadings and other papers except to the extent permitted herein. The receiving Party may create an electronic image of a selected portion of the Source Code Material only when the electronic file containing such image has been encrypted using commercially reasonable encryption software including password protection. The communication and/or disclosure of electronic files containing any portion of Source Code Material shall at all times be limited to individuals who are authorized to see Source Code Material under the provisions of this Protective Order. Additionally, all electronic copies must be labeled "RESTRICTED

---

[7] Drafts shall only include those excerpts the Receiving Party reasonably believes will be included in the final version.

**Exhibit 17**
**-444-**

CONFIDENTIAL SOURCE CODE." If Source Code Documents are filed with the Court, they must be filed under seal in accordance with the Court's rules, procedures and orders;

(h)   No person shall copy, e-mail, transmit, upload, download, print, photograph or otherwise duplicate any portion of the designated "RESTRICTED CONFIDENTIAL SOURCE CODE" material, except that the Receiving Party may request paper copies ("Source Code Printouts") of reasonable, limited portions of the Source Code Material, but only if and to the extent reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial. The Parties agree that a reasonable, limited portion of Source Code Material is up to 15 consecutive pages, or an aggregate total of no more than 200 pages, of source code. Beyond these presumptive limits, the receiving Party must obtain prior written approval by the producing Party for additional printing. The receiving Party shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraph (a) in the first instance. If the receiving party's expert is unable to wait for the requested printouts on the day of inspection, within 5 business days or such additional time as necessary due to volume requested, the Producing Party will provide the requested material on watermarked or colored paper bearing Bates numbers and the legend "RESTRICTED CONFIDENTIAL SOURCE CODE" unless objected to as discussed below. At the inspecting Party's request, up to two additional sets (or subsets) of printed source code may be requested and provided by the producing Party in a timely fashion. Even if within the limits described, the producing Party may challenge the amount of source code requested in hard copy form or whether the source code requested in hard copy form is reasonably necessary to any case preparation activity pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 20 whereby the producing Party is the "requesting Party" and the receiving Party is the "designating Party" for purposes of dispute resolution.

**Exhibit 17**
**-445-**

Contested Source Code Printouts do not need to be produced to the receiving Party until the matter is resolved by the Court;

(i)     If the receiving Party's outside counsel, consultants, or experts obtain Source Code Printouts of Source Code Material, the receiving Party shall ensure that such outside counsel, consultants, or experts keep the Source Code Printouts under their direct control in a secured locked area in the offices of such outside counsel, consultants, or expert.  The receiving Party may also temporarily keep the Source Code Printouts or photocopies at: (i) the Court for any proceedings(s) relating to the Source Code Material, for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the Source Code Material are taken, for the dates associated with the deposition(s); and (iii) any intermediate location reasonably necessary to transport the Source Code Printouts prior to a Court proceeding or deposition, provided that the printouts or photocopies are kept in a secure manner that ensures access is limited to the persons authorized under this Order);

(j)     A producing Party's Source Code Material may only be transported by the receiving Party at the direction of a person authorized under paragraph 10(e) above to another person authorized under paragraph 10(e) above on paper via hand carry, Federal Express or other similarly reliable courier.  Source Code Material may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet.  Source Code Material may only be transported electronically as is reasonably necessary for filing any Source Code Material with the Court or serving such Source Code Material on another Party;

(k)     The receiving Party's outside counsel and/or expert shall be entitled to take notes relating to the source code but may not copy any portion of the source code into the notes.  No copies of all or any portion of the source code may leave the room in which the source code is inspected except as otherwise provided herein. Further, no other written or electronic record of the source code is permitted except

**Exhibit 17**
**-446-**

as otherwise provided herein.  To the extent requested, a separate note taking computer will be provided by the producing party, and printouts of any notes will be provided with Source Code printouts.  Notwithstanding the foregoing, any such notes shall be stamped and treated as "RESTRICTED CONFIDENTIAL SOURCE CODE."  The log of such notes need not be produced to any other party absent Court Order (e.g. potentially in connection with a Protective Order violation motion);

(l)     A list of names of persons who will review Source Code Material on the stand-alone computer(s) will be provided to the producing Party in conjunction with any written (including email) notice requesting inspection.  Prior to the first inspection of any Source Code Material on the stand-alone computer(s), the receiving Party shall provide five (5) business days' notice to schedule the initial inspection with the producing Party, after the producing Party notifies the receiving Party that source code is available for review.  The parties agree that, notwithstanding the five day notice requirement, upon request by the receiving Party the producing Party will in good faith consider allowing inspections on less than five days notice where reasonable.  The receiving Party shall provide three (3) business days' notice in advance of scheduling any additional inspections.  Such notice shall include the names and titles for every individual from the receiving Party who will attend the inspection.  The producing Party may maintain a daily log of the names of persons who enter the locked room to view the source code and when they enter and depart;

(m)   The receiving Party's outside counsel shall maintain a log of all copies of the Source Code Printouts (received from a producing Party) that are delivered by the receiving Party to any person and a log of any electronic images of Source Code Material.  The log shall include the names of the recipients and reviewers of copies and locations where the copies are stored.  Upon request by the producing Party, the receiving Party shall provide reasonable assurances and/or descriptions of the

Exhibit 17
-447-

security measures employed by the receiving Party and/or person that receives a copy of any portion of the source code; and

(n)    All copies of any portion of the Source Code Printouts in whatever form shall be securely destroyed if they are no longer in use.  Copies of Source Code Printouts that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers.

11.    Absent written consent from the designating Party, any person who reviews Apple Protected Material that is designated RESTRICTED -- ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application relating to (a) wireless earbuds, (b) any products, services, or systems accused by Plaintiff in this Action, or (c) the patents asserted in this Action and any patent or application claiming priority to or otherwise related to the patents asserted in this Action (collectively the "Field of Invention") during the pendency of this Action and for two years after its conclusion, including any appeals.  For purposes of this paragraph, "prosecution" includes any activity related to (i) the preparation or prosecution (for any person or entity) of patent applications, including among others reexamination and reissue applications or (ii) directly or indirectly participating, drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims.  Notwithstanding the foregoing, a person who has received designated material may participate and advise on matters not affecting claim scope, including, without limitation, submission of information to the Patent Office, submission of maintenance fees, and participation in inter partes review except to amend claims.

12.    To ensure compliance with the purpose of this provision, Pinn shall create an "Ethical Wall" between those persons with access to HIGHLY

**Exhibit 17**
**-448-**

SENSITIVE MATERIAL and any individuals who, on behalf of the Party or its acquirer, successor, predecessor, or other affiliate, prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the Field of Invention.

13.   Absent written consent from Apple, any individual affiliated with Pinn who receives, accesses, or otherwise learns of Apple's HIGHLY SENSITIVE MATERIAL under this Order shall not, for two (2) years from the last date of access to such information, be involved in identifying patents or patent applications for acquisition or advising clients on the acquisition of patents or patent applications for the purpose of potential assertion against Apple or Apple products in the Field of Invention.

14.   Disclosure of Protected Material shall be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere.  Each party receiving Protected Material shall comply with all applicable export control statutes and regulations.  See, e.g., 15 CFR 734.2(b).  No party receiving Protected Material may allow it to leave the territorial boundaries of the United States of America or to be made available to any foreign national who is not (i) lawfully admitted for permanent residence in the United States or (ii) identified as a protected individual under the Immigration and Naturalization Act (8 U.S.C. 1324b(a)(3)).  Without limitation, this prohibition extends to Protected Material (including copies) in physical and electronic form. The viewing of Protected Material by the party receiving Protected Material through electronic means outside the territorial limits of the United States of America is similarly prohibited.  Notwithstanding this prohibition, Protected Material, exclusive of material designated RESTRICTED CONFIDENTIAL - SOURCE CODE, and to the extent otherwise permitted by law, may be taken outside the territorial limits of the United States if it is reasonably necessary for a deposition

**Exhibit 17**
**-449-**

taken in a foreign country.  The restrictions contained within this paragraph may be amended through the consent of the producing Party to the extent that such agreed to procedures conform with applicable export control laws and regulations.

15.   Nothing in this Order shall require production of documents, information or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity.  Pursuant to Federal Rule of Evidence 502(d) and (e), if documents, information or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity.  Any Party that produces documents, information or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information or other material by notifying the recipient(s) and providing a privilege log for the produced documents, information or other material. The recipient(s) shall gather and return all copies of such documents, information or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party.

16.   There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information and material to protect against disclosure to any unauthorized persons or entities.

17.   Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by

**Exhibit 17**
**-450-**

virtue of his or her current or past employment with the designating party, (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information, (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, reasonably is expected to have, in the ordinary course of business, seen such DESIGNATED MATERIAL; (iv) court reporters and videographers; (v) the Court; or (vi) other persons entitled hereunder to access to DESIGNATED MATERIAL.  DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.[8]  Parties shall give the other Parties reasonable notice (a minimum of two business days) if they reasonably expect a deposition, hearing or other proceeding to include Protected Material so that the other Parties can ensure that only authorized individuals are present at those proceedings.  Subject to any challenge to a particular designation under paragraph 20, the Parties will not oppose any reasonable request by the designating Party that the courtroom be sealed, if allowed by the Court, during the presentation of any testimony, evidence, or argument relating to or involving the use of any Protected Material.

    18.   Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "RESTRICTED - ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" pursuant to this Order.  Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order.  Until

---

[8] In the event a non-Party witness is authorized to receive Protected Material that is to be used during his/her deposition but is represented by an attorney not authorized under this Order to receive such Protected Material, the attorney must provide prior to commencement of the deposition an executed Undertaking attached as Exhibit A. In the event such attorney declines to sign the Undertaking prior to the examination, the Parties, by their attorneys, shall jointly seek a protective order from the Court prohibiting the attorney from disclosing Protected Material in order for the deposition to proceed.

**Exhibit 17**
**-451-**

expiration of the 30-day period, the entire deposition or hearing transcript shall be treated as "RESTRICTED - ATTORNEYS' EYES ONLY".

19.    Filing Protected Material.  Without written permission from the Designating Party or a Court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material.  A Party that seeks to file under seal any Protected Material must comply with C.D. Cal. L.R. 79-5.  Protected Material may only be filed under seal pursuant to a Court order authorizing the sealing of the specific Protected Material at issue.

20.    The Order applies to pretrial discovery.  Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.  Notwithstanding the foregoing, a Party shall provide a minimum of two business days' notice to the Producing Party in the event that a Party intends to use any Protected Information during trial.  Subject to any challenges under Section 20, the Parties will not oppose any reasonable request by the Producing Party that the courtroom be sealed, if allowed by the Court, during the presentation of any testimony, evidence, or argument relating to or involving the use of any Protected Material.

21.    A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn.  If the designating Party does not agree to redesignation within five (5) days of receipt of the written request, the requesting Party may apply to the Court for relief.  Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper.  Such application shall be treated procedurally as a motion to compel pursuant to Federal Rules of Civil Procedure 37 and C.D. Cal. L.R. 37, subject to the Rule's provisions relating to sanctions.  In making such application, the requirements of the Federal Rules of Civil Procedure and the Local

**Exhibit 17**
**-452-**

Rules of the Court shall be met.  Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

22.   Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that he or she is subject to the terms and conditions of this Order, and shall sign an acknowledgment that he or she has received a copy of, has read, and has agreed to be bound by this Order.  A copy of the acknowledgment form is attached as Appendix A.

23.   To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contend the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

24.   To the extent that discovery or testimony is taken of Third Parties, the Third Parties or any Party may designate as "CONFIDENTIAL" or "RESTRICTED -- ATTORNEYS' EYES ONLY" any documents, information or other material, in whole or in part, produced or give by such documents, information or other material, in whole or in part, produced or given by such Third Parties.  The Third Parties or any Party shall have ten (10) days after production of such documents, information or other materials to make such a designation.  Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information or other material so produced or given shall be treated as "RESTRICTED -- ATTORNEYS' EYES ONLY" in accordance with this Order. Where a Third Party designates any documents, information or other material as provided herein, experts previously disclosed and approved hereunder prior to said Third Party's production of any Protected Material need not be disclosed to said Third Party.  Subsequently disclosed experts need not be disclosed to said Third Party before that Third Party's Protected Material may be disclosed thereto.

**Exhibit 17**
**-453-**

25.   If a Party is served with a subpoena issued by a court, arbitral, administrative, or legislative body, or with a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" that Party must.

(a)   promptly notify in writing the designating Party.  Such notification shall include a copy of the subpoena or court order;

(b)   promptly notify in writing the person who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order.  Such notification shall include a copy of this Protective Order; and

(c)   cooperate with respect to all reasonable procedures sought to be pursued by the designating Party whose Protected Material may be affected.

If the designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the designating Party's permission.  The designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a receiving Party in this action to disobey a lawful directive from another court.

26.   Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding and materials which have been admitted into evidence in this Action), shall at the producing Party's election either be returned to the producing Party or be destroyed.

**Exhibit 17**
**-454-**

The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request.

27.   The failure to designate documents, information or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof.  The entry of this Order and/or the production of documents, information and material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

28.   Any Party knowing or believing that any other party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing party and has been unable to resolve the matter by agreement may move the Court for such relief as may be appropriate in the circumstances.  Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

29.   Production of DESIGNATED MATERIAL by each of the Parties shall not be deemed a publication of the documents, information and material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information or other material or its contents.

30.   Absent good cause, drafts of reports of testifying experts and reports and other written materials, including drafts, or consulting experts, shall not be discoverable.

(a)   Reports and materials exempt from discovery under the foregoing Paragraph shall be treated as attorney work product for the purposes of this case and Protective Order.

**Exhibit 17**
**-455-**

(b)    Testifying experts shall not be subject to discovery with respect to any draft of his or her report(s) in this case.  Draft reports, notes, or outlines for draft reports developed and drafted by the testifying expert and/or his or her staff are also exempt from discovery.

(c)    Discovery of materials provided to testifying experts shall be limited to those materials, facts, consulting expert opinions, and other matters actually relied upon by the testifying expert in forming his or her final report, trial, or deposition testimony or any opinion in this case.  No discovery can be taken from any non-testifying expert except to the extent that such non-testifying expert has provided information, opinions, or other materials to a testifying expert relied upon by that testifying expert in forming his or her final report(s), trial, and/or deposition testimony or any opinion in this case.

(d)    No conversations or communications between counsel and any testifying or consulting expert will be subject to discovery unless the conversations or communications are relied upon by such experts in formulating opinions that are presented in reports or trial or deposition testimony in this case.

31.   Nothing in this Order shall be construed to effect an abrogation, waiver or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

32.   Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order, including modification to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

33.   This Order shall be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained

**Exhibit 17
-456-**

consultants and experts, and any persons or organizations over which they have direct control.

       IT IS SO STIPULATED.

Dated:  March 13, 2020        FISH & RICHARDSON P.C.

                                By:  */s/ Seth M. Sproul*
                                Seth M. Sproul (SBN 217711)
                                sproul@fr.com

                                Attorneys for Defendant APPLE INC.

Dated:  March 13, 2020        WHITAKER CHALK SWINDLE & SCHWARTZ PLLC

                                By:  */s/ David A. Skeels*
                                David A. Skeels (*pro hac vice*)
                                dskeels@whitakerchalk.com

                                Attorneys for Plaintiff PINN, INC.

       PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: _____       _____
                                United States District Judge

**Exhibit 17**
**-457-**

**APPENDIX A**
**UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING PROTECTIVE ORDER**

I, _____, declare that:

1.  My address is

    _____ My current

    employer is _____. My

    current occupation is _____.

2.  I have received a copy of the Protective Order in this action. I have carefully read and understand the provisions of the Protective Order.

3.  I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL," "RESTRICTED -- ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" that is disclosed to me.

4.  Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL," "RESTRICTED -- ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the party by whom I am employed.

5.  I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

    I declare under penalty of perjury that the foregoing is true and correct.


Signature _____

Date _____

**Exhibit 17**
**-458-**

## **ECF ATTESTATION**

     I, Seth M. Sproul, am the ECF User whose identification and password are being used to electronically file this STIPULATED [PROPOSED] PROTECTIVE ORDER.  In accordance with Local Rule 5-4.3.4, concurrence in and authorization of the filing of this document has been obtained from the counsel of Plaintiffs, and Fish & Richardson P.C. shall maintain records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request by a party.

                                   */s/ Seth M. Sproul*
                                   Seth M. Sproul

**Exhibit 17**
**-459-**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 13, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Seth M. Sproul*
Seth M. Sproul

**Exhibit 17**
**-460-**

EXHIBIT 18

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MASIMO CORPORATION,          )
                             )
            Plaintiff,       )
                             )  C.A. No. 09-80-JJF-MPT
    v.                       )
                             )
PHILIPS ELECTRONICS          )
NORTH AMERICA                )
CORPORATION and PHILIPS      )
MEDIZINE SYSTEMS             )
BOBLINGEN GMBH,              )
                             )
            Defendants.      )
- - - - - - - - - - - - - - - - - - - - - - -
PHILIPS ELECTRONICS          )
NORTH AMERICA                )
CORPORATION,                 )
                             )
Counter-Claim Plaintiff,     )
                             )
    v.                       )
                             )
MASIMO CORPORATION,          )
                             )
Counter-Claim Defendant.     )

                    Friday, April 23, 2010
                    11:00 a.m.
                    Teleconference in Chambers


                    844 King Street
                    Wilmington, Delaware


BEFORE: THE HONORABLE MARY PAT THYNGE
        United States District Court Magistrate Judge


                Hawkins Reporting Service
    715 North King Street - Wilmington, Delaware 19801
            (302) 658-6697  FAX (302) 658-8418

---

2

APPEARANCES:

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
BY:  JULIA HEANEY, ESQ.

        - and -

KNOBBE, MARTENS, OLSON & BEAR, LLP
BY:  JOSEPH RE, ESQ.
BY:  PERRY OLDHAM, ESQ.

        Counsel for the Plaintiff
        and Counter-Claim Defendant

POTTER, ANDERSON & CORROON, LLP
BY:  DAVID E. MOORE, ESQ.

        - and -

HOWREY, LLP
BY:  BRIAN ROSENTHAL, ESQ.
BY:  ANN MARIE PHILLIPS, ESQ.

        Counsel for the Defendant
        and Counter-Claim Plaintiff

                Hawkins Reporting Service
    715 North King Street - Wilmington, Delaware 19801
            (302) 658-6697  FAX (302) 658-8418

---

3

1       THE COURT: Good morning. This is Judge

2   Thynge.

3       MR. MOORE:  Good morning, Your Honor.

4       MR. HEANEY:  Good morning, Your Honor.

5       MR. RE:  Good morning, Your Honor.

6       MR. ROSENTHAL:  Good morning, Your

7   Honor.

8       THE COURT:  Good morning. Let's

9   begin with some introductions, please.

10      Who's on the line on behalf of

11  Masimo?

12      MR. RE:  This is Joseph Re out

13  here in California. With me are my partners

14  Perry Oldham and I also have with me Steve

15  Jensen.

16      THE COURT:  Oh, hi, Steve.

17      MR. JENSEN:  How are you doing?

18      THE COURT:  Fine.

19      MS. HEANEY:  And this is Julie

20  Heaney from Morris Nichols.

21      THE COURT:  Hi, Julie.

22      MR. MOORE:  It's David Moore for

23  Potter, Anderson. With me on the line are Brian

24  Rosenthal, and Ann Marie Phillips.

                Hawkins Reporting Service
    715 North King Street - Wilmington, Delaware 19801
            (302) 658-6697  FAX (302) 658-8418

---

4

1       And Alan Grimaldi may be joining

2   if he's able to get off his airplane in time.

3       THE COURT:  Okay. I'm sorry, Ann

4   Marie Phillips?

5       MR. MOORE:  That's correct.

6       THE COURT:  She wasn't selected to

7   work on the case because of her last name, was

8   she?

9       MR. MOORE:  She has two L's.

10      THE COURT:  Two L's. All right.

11      All right. I think there are two

12  issues. And counsel, just as a reminder, before

13  you talk to please introduce who you are.

14  Again, we have the court reporter here from

15  Hawkins.

16      So if you want to get a copy of

17  the transcript, you know who it is. But please

18  reintroduce or indicate who you are before you

19  speak.

20      There's two issues, to my

21  understanding, that we have. One is a

22  scheduling order and the other is the issue

23  concerning Mr. Jensen. My understanding is that

24  everything else has been previously decided.

                Hawkins Reporting Service
    715 North King Street - Wilmington, Delaware 19801
            (302) 658-6697  FAX (302) 658-8418

---

Exhibit 18
-461-

## 5

1    I didn't know if counsel, and I'm
2  going to probably regret this, wanted to add
3  anything further than what they've already
4  submitted previously.  I have your letters, your
5  original letters and the subsequent letters
6  dated, I think, on April 21st, along with the
7  affidavits that were attached, including the
8  affidavit from Mr. Jensen as well as an
9  affidavit from Mr. Blocker.
10    MR. ROSENTHAL:  Your Honor, this
11  is Brian Rosenthal --
12    THE COURT:  Yes.
13    MR. ROSENTHAL:  -- from Philips.  I
14  only have one thing to add to what the papers
15  that have been submitted, and that is, you know,
16  we -- the information that Philips had and that
17  it's conveyed in Mr. Blocker's declaration
18  created an understanding in Philips' mind that
19  is somewhat different than what Mr. Jensen put
20  into his affidavit.
21    That said, we -- Mr. Jensen is an
22  officer of the Court and he knows that's what
23  his role is as of Masimo.  And one of the things
24  that he says in his declaration that today he

## 7

1  beyond September of 2008.  But if that has
2  changed and he's no longer doing that, that's
3  fine.
4    But we want to protect against the
5  possibility that all this information that's
6  sensitive, pricing and strategy information is
7  disclosed to Jensen.  And then down the road, he
8  resumes a role with Masimo, that makes it very
9  difficult for him to compartmentalize that which
10  he learned from the advice that he has given.
11    And so we suggested that as a way
12  to get comfort for Philips that what's stated in
13  his affidavit will remain true throughout this
14  litigation and for a certain period of time
15  after.  Masimo's reaction was that that was not
16  something that was palatable to them.
17    So we didn't provide them
18  language, although we have drafted up language
19  and we'd be happy to suggest it.
20    THE COURT:  Before I talk to you,
21  Joe, I want to just back up a little bit with
22  Brian.
23    How do you see -- the suggestion
24  that you made in this matter, Mr. Rosenthal, how

## 6

1  does not participate in competitive decision
2  making at Masimo and that's something that I
3  think that we have to take at face value.
4    I called Masimo's counsel
5  yesterday and suggested that, in light of the
6  affidavits, it may be an appropriate solution
7  for us to put in, and as Your Honor suggested
8  may be a possibility last time, to put into the
9  protective order something that preserves that
10  status quo.  Something like the patent
11  prosecution bar, but that would -- for lack of a
12  better term, I'm calling it a business bar.
13    That is, if you see certain types
14  of information, you will not participate in
15  certain ways in competitive decision making at
16  the party for a period of this litigation plus
17  two years.  And the reason that we made that
18  suggestion is that while Mr. Jensen, you know,
19  previously engaged clearly in a business advisor
20  role in a lot of the competitive decision making
21  for a period in 2008, when that period was a
22  little unclear.
23    We have some information that, and
24  it's in the declaration, that it extended just

## 8

1  did you see it operating?
2    And what type of -- and also, my
3  understanding is that, correct me if I'm wrong,
4  Philips is not in agreement for him to see
5  highly sensitive or confidential documents on
6  the patent end and the technology end, or has
7  that changed, too?
8    MR. ROSENTHAL:  No, that is still
9  our position.  We think, given his heavy
10  involvement in the prosecution of the patents
11  that were in this case, the fact that he still
12  has some role, according to his affidavit, in
13  prosecution, we certainly understand his
14  willingness to abide by the prosecution bar.
15    But given that historical and
16  current role in prosecution, we are a little
17  concerned about -- we're not a little.  We're
18  very concerned about disclosing really the
19  technical features of the products that compete
20  with Masimo's products when Masimo is engaged
21  actively in filing continuations and
22  continuations in part on these applications and
23  where the client is extremely sensitive.
24    And that is, in fact, the nature

**Exhibit 18**
**-462-**

9

1  of the concern that we've heard from third
2  parties as well that they were going to have
3  difficulty producing technical documents about
4  their products, if Mr. Jensen, who is kind of
5  viewed internally as the architect for the
6  patent portfolio has access to those documents.
7  So we still maintain that that is not something
8  that Mr. Jensen should see, either.
9          The proposal that we have with
10 respect to the business bar would be -- was a
11 proposal that would allow him to see documents
12 other than technical documents, business
13 strategy, pricing, marketing, those sorts of
14 documents, but would restrict him from providing
15 competitive decision making advice to Masimo in
16 the event that he does see it.
17         THE COURT:  I'm just writing down
18 some notes.  Excuse me.
19         Did we just lose somebody?  All
20 right.
21         Mr. Re.
22         MR. RE:  Good morning, Your Honor.
23 It sounds like what I just heard that Philips
24 is no longer pressing for the has been language

11

1  Mr. Jensen may possibly violate the protective
2  order and they want to now add another
3  restriction, which is not -- which has not been
4  drafted and exchanged between the parties.
5          And we think, based on what the
6  Court has -- the Court should not allow the has
7  been language and that should be the end of it.
8          And so I can't address anything
9  further than what's before the Court and what
10 I've seen.  But I thought we were resolved on
11 all these technical issues with the patent
12 prosecution bar, Paragraph 15, which has now
13 been completed.
14         THE COURT:  Well, my understanding
15 is they claim, and I'm not going to get into a
16 he said he said situation, but they claim that
17 they did not agree to Mr. Jensen.  So deal with
18 the issue now.
19         It's not as though it's any great
20 surprise.  It was something that came up when we
21 had our discussion a couple weeks ago.
22         So please address it now, Mr. Re.
23         MR. RE:  Those aren't the facts as
24 I understand them.  Everything was agreed to --

10

1  in the exclusion of the definition of outside
2  counsel.  And it seems like now we're changing
3  issues once again away from what the issue
4  started out to be.
5          THE COURT:  Mr. Re, would you
6  please do me the favor of getting off that
7  particular point and let's talk about what the
8  issues are on the table?
9          Thank you.
10         MR. RE:  Well, we discussed this
11 yesterday, and we think there's no reason for
12 them to think Mr. Jensen is going to violate the
13 protective order.
14         What I hear now is that they think
15 Mr. Jensen might violate the protective order.
16 And we've already resolved -- I thought we
17 already resolved the technical issue with the
18 patent prosecution bar, which has been resolved
19 completely.
20         THE COURT:  Now, it has not been
21 resolved.
22         MR. RE:  Paragraph 26 prevents any
23 usage of any designated material.  So I think
24 what I'm hearing now is that they think

12

1          THE COURT:  Mr.  Re --
2          MR. RE:  -- with regard to
3  Mr. Jensen.
4          THE COURT:  Mr. Re, it wasn't.
5  This is the reason why we're here.
6          So please tell me why I should
7  have a different view or why you think the view
8  I should have concerning Mr. Jensen about his
9  past involvement in the prosecution history and
10 what his present involvement now is something
11 that can be solved, or resolved or handled under
12 Paragraph 15.
13         MR. RE:  Well, as I understand
14 Paragraph 15, Mr. Jensen is precluded from
15 participating in any patent prosecution should
16 he see technical documents relating to any such
17 patent prosecution.  So he's already barred
18 under Paragraph 15.
19         Now, the proposal does not really
20 relate to technical materials.  It sounds like
21 now they want another bar that is unrelated to
22 technical materials, but relates to business or
23 financial materials.
24         THE COURT:  And the argument that

Exhibit 18
-463-

13

1  they're saying in that situation, which was
2  brought up by the Court the last time and
3  discussed very briefly the last time, so it was
4  an issue out there, Mr. Re.  So please do not
5  plead ignorance.
6         It should have been an issue that
7  you thought -- you should have realized that
8  Philips would potentially latch on since I
9  opened my mouth and mentioned it. The argument
10  being is that they feel that if you have a bar
11  similar to the bar that you have under 15, but
12  it goes to the financial aspect and have him no
13  longer involved or not involved in -- how did he
14  put it?
15         Making competitive decisions and
16  providing advice regarding making competitive
17  decisions, how that would affect and what the
18  concerns were by Masimo when they flat out
19  rejected that suggestion yesterday.
20         MR. RE:  Well, yesterday I had
21  understood that it was some sort of bar that
22  would apply well after the lawsuit was over,
23  number one.
24         THE COURT:  Well, he said --

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

15

1  avenues that this Court could choose to exercise
2  against him if he did violate anything; correct?
3         MR. RE:  Well, I -- I don't know
4  if that's true, because I assumed he would be
5  and he would always follow the protective order.
6  And to make the Court feel better, I would have
7  him make an entry of appearance if that would
8  solve anything.
9         I don't like making him make an
10  appearance because precisely these kinds of
11  issues come up.  And in the past lawyers have --
12  if he becomes a witness, they try to try the
13  lawyer rather than try the case.
14         And so I prefer sometimes when
15  somebody might be a witness for their names not
16  to appear on the litigation documents.  But
17  other than that, he acts just as if he is
18  counsel of record.
19         I mean, I -- Mr. Jensen and I work
20  closely together.  So if it would solve
21  anything, I'll make him counsel of record if
22  that insures the Court has full jurisdiction
23  over him.
24         THE COURT:  Ms. Heaney, you're

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

14

1         MR. RE:  Number two, our other
2  concern is Paragraph 26 already takes care of
3  preventing anybody from participating in any
4  competitive decision making if they see
5  designated materials.  The protective order
6  already addresses that in Paragraph 26.
7         So it seems to be really -- what
8  I'm hearing is another prophylactic measure
9  really in case there's some inadvertent
10  disclosure or use by somebody, not just
11  Mr. Jensen.  Why wouldn't it apply to everyone
12  else?  And so that's really what we're hearing
13  now about that he might still violate it despite
14  Paragraph 15 and 26.
15         THE COURT:  Well, the whole
16  purpose of why an argument like this is raised
17  is the concern about inadvertent disclosure.
18  And my understanding is Mr. Jensen has not
19  entered his appearance in this case; is that
20  correct?
21         MR. RE:  That is correct.
22         THE COURT:  And so he's not
23  "technically subject to this Court's orders" to
24  some extent or not technically subject to

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

16

1  serving as local counsel on behalf of Masimo;
2  correct?
3         MS. HEANEY:  Yes, Your Honor.
4         THE COURT:  And how do you view
5  your obligations to this Court in relationship
6  to Mr. Jensen?
7         You haven't had to certify for him
8  or move his admission pro hac; correct?
9         MS. HEANEY:  It just hadn't -- the
10  issue just hadn't been raised whether, you know,
11  we should do that yet.
12         THE COURT:  Well, I understand
13  that, but without him being -- having an entry
14  of appearance, how do you and your firm view
15  your obligation to the Court regarding
16  Mr. Jensen under our local rules?
17         MS. HEANEY:  Obligations arise
18  when we do file a motion for admission pro hac.
19         THE COURT:  Okay.
20         MR. RE:  And if I understand how
21  the protective order is written, it makes -- the
22  firm is also counsel of record.
23         It states outside counsel, which
24  means the law firms that are counsel of record

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

Exhibit 18
-464-

17

1 for the parties. So I never viewed this as an
2 issue because I viewed this was applying to my
3 entire firm.
4          THE COURT: Mr. Re, what paragraph
5 were you reading from, please?
6          MR. RE: Oh, this is the infinite
7 Paragraph 6A that we've been -- that started
8 this whole proceeding.
9          THE COURT: Okay. And are you
10 reading from the example that you provided to me
11 or from the other side's example?
12          MR. RE: They're the same.
13          THE COURT: They're the same.
14 Paragraph 6A?
15          MR. RE: Yes. It begins outside
16 counsel and in quotation marks --
17          THE COURT: Yes. My question is
18 probably a little bit more direct, and that is:
19 Despite what is put into a protective order
20 situation, what avenues does the Court have if
21 an attorney who is not counsel of record in the
22 case and for which local counsel has not
23 certified an obligation to this Court, what
24 avenues I have to fully enforce our rules or our

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

18

1 requirements of ethics?
2          It's just a question.
3          MR. RE: Your Honor, I never
4 thought it was an issue, but I'm more than happy
5 to have Mr. Jensen file an appearance today.
6          THE COURT: Concerning, and this
7 goes to you, Mr. Rosenthal, concerning Paragraph
8 26 of the proposed protective order, what I've
9 heard repeatedly and also what has been put in
10 Mr. Jensen's affidavit is that they consider
11 this to be an additional protection. And that
12 your request for an additional paragraph
13 regarding a bar related to the financial type
14 records similar to the type of bar that's under
15 the patent prosecution paragraph is unnecessary.
16          MR. ROSENTHAL: Your Honor, this
17 is Brian Rosenthal. I'm glad you asked because
18 when I heard Mr. Re say that that paragraph
19 precludes people that have received information
20 from engaging in competitive decision making, I
21 was very surprised and turned to that paragraph.
22 And there's nothing of the kind in there.
23          What that paragraph says, and I
24 can read it, is protected materials shall be

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

19

1 used only in preparation for and trial of the
2 above captioned action, and proceeds from there.
3          And then it says protective
4 order -- sorry, protected material cannot be
5 used for any other purpose, including but not
6 limited to any business, proprietary,
7 commercial, legal, other litigation, arbitration
8 or claims, et cetera. It does not -- what it
9 provides is whatever protective orders provide
10 which says that information that is disclosed
11 cannot be used for another purpose.
12          So that certainly precludes
13 someone from intentionally taking material and
14 using it for another purpose. It does not
15 provide the sort of protection that a patent
16 prosecution bar is intended to protect that a
17 business bar, along the lines that I suggested
18 earlier in this call would be intended to
19 protect, which is against the inadvertent
20 commingling of information learned in one
21 context from being used in another context
22 because of the virtue -- by virtue of the
23 position that someone has.
24          The compromise solution that I

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

20

1 proposed to Masimo certainly wasn't intended to
2 change the game here at all. I was trying to
3 resolve the issue. It was intended to resolve
4 the issue of what happens going forward to
5 prevent Mr. Jensen from in a year from now
6 resuming his role as VP of OEM business and
7 being unable to separate all the incredibly
8 sensitive material that he would have seen in
9 this litigation from the advice that he's
10 providing to Masimo.
11          And that was the purpose of this
12 and it's not addressed at all in Paragraph 26.
13 I continue to maintain that's the safest and
14 most attractive solution from Philips'
15 perspective is to preclude Mr. Jensen from
16 seeing this sort of information at all.
17          They have a lot of lawyers at
18 Knobbe that can see this information. Mr.
19 Jensen can participate in the litigation, but
20 counsel can direct the litigation if he wants to
21 without seeing every one of these sensitive
22 documents.
23          But if that solution is one that's
24 difficult for the Court's palate or for Masimo's

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

**Exhibit 18**
**-465-**

21

1  palate, I offer this as an alternative to
2  provide protection to Philips going forward.
3              MR. RE:  Your Honor, this is
4  Mr. Re.
5              THE COURT:  Yes.
6              MR. RE:  We have no problem with
7  a bar that would preclude Mr. Jensen from
8  resuming his role as an interim VP.  And in
9  fact, Paragraph 6A as already written would
10  preclude that, because 6A already excludes
11  anybody who becomes a director, officer or
12  employee of a party.
13              So we would completely agree with
14  Mr. Rosenthal, and we would agree that once
15  Mr. Jensen sees any technical or financial
16  documents, he can no longer resume his role,
17  particularly the role that he had back in 2008.
18              MR. ROSENTHAL:  Your Honor,
19  that -- first of all, 6A precludes disclosure to
20  someone that has a current title.  It doesn't
21  disclose -- it doesn't preclude someone who has
22  been disclosed information from regaining a
23  title.
24              So that's one thing.  6A does not

23

1  didn't mean to suggest what I think
2  Mr. Rosenthal said I suggested.  I don't want to
3  backtrack from what happened yesterday, but we
4  have no problem as long as -- with the
5  suggestion Mr. Rosenthal is coming up with as
6  long as Mr. Jensen or anyone else, for that
7  matter, can still see the technical and
8  financial documents.
9              I understood yesterday that it
10  would preclude Mr. Jensen from seeing technical
11  or financial documents and have a bar.  But if
12  Mr. Jensen can see the documents and can help me
13  on the case, then I have no problem with a
14  subsequent bar that Mr. Rosenthal is now
15  suggesting.
16              It would apply to everybody, not
17  just Mr. Jensen.  Anybody should not be able to
18  participate in this case seeing highly
19  confidential materials and then later resume a
20  role or have any role.
21              I agree, it shouldn't just be the
22  title Mr. Jensen had.  I didn't mean that,
23  either.
24              And I think we could have

22

1  take care of this.
2              But with respect to the
3  concession, we're not looking for something that
4  says Mr. Jensen won't resume a particular title
5  that he had.  We've got to have something a
6  little more robust than that that he won't
7  engage in competitive decision making that
8  implicates the possibility of using information
9  that he sees in this case inadvertently in his
10  advice to Masimo.  So it needs to be a little
11  broader than that.
12              And I asked Masimo's counsel
13  yesterday if we could send some language over,
14  and they said, "No.  We don't want to see any
15  language."
16              So, you know, but I've got it
17  drafted and it is something that basically says
18  if you see confidential, highly confidential
19  business information, you cannot participate in
20  competitive decision making.  And we have a
21  bunch of examples of what that means at the
22  party for a period of this litigation plus two
23  years.
24              MR. RE:  Your Honor, if I may, I

24

1  agreement as long as there's no preclusion of
2  seeing the documents in the first place.
3              THE COURT:  Well, this is where
4  I've come down, counsel.  First of all, based
5  upon what I saw of Mr. Jensen's affidavit, and I
6  took into account Mr. Blocker's affidavit as
7  well, recognizing -- but I'm also going to
8  recognize that Mr. Jensen, in making these
9  representations, was relatively detailed about
10  what he had and had not been doing and what it
11  had involved.
12              And I kind of viewed, to a large
13  extent, what his involvement and his
14  relationship with Masimo was not too dissimilar
15  from what happens with outside counsel assisting
16  a client in negotiating licenses and the like
17  and agreements with companies in that regard.
18              I do recognize that he's been
19  involved in patent prosecution, although his
20  strongly indicated in his affidavit that his
21  patent prosecution involvement has been greatly
22  diminished.  It will now stop as far as this
23  case is concerned if he's going to be allowed to
24  see any highly confidential documents.

**Exhibit 18**
**-466-**

## 25

1  And Rule 15 would apply. I mean,
2  Paragraph 15, 6A and 26 would apply to him.
3  But in addition to that, I do
4  think having clarified a bit better, because
5  there is some impression, clear impression by
6  people outside of Masimo about their contacts
7  with Mr. Jensen that maybe his involvement on
8  the business side and in competitive decision
9  making may be more intimate than what he thinks
10  it was or what he has represented it was, but
11  because that's the impression that he's left.
12  So having a restriction not too
13  dissimilar to what was for the patent limitation
14  is something that would also be drafted and
15  included in this agreement. But he's going to
16  be allowed to have access and to be covered by
17  this agreement and have access to the technical
18  information.
19  And so I would strongly recommend
20  that, Mr. Rosenthal, you get over -- get your
21  proposed language over to Mr. Re. Mr. Re seems
22  to be more than willing once we've aired out the
23  differences to agree to something along those
24  lines as you've proposed.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

## 26

1  MR. ROSENTHAL: And just so that I
2  understand, this is Brian Rosenthal, the ruling
3  on technical documents, the ruling is that he
4  can see technical documents, subject to the
5  patent prosecution bar.
6  THE COURT: Mm-hmm.
7  MR. ROSENTHAL: And he can also
8  see business documents, but that would be
9  subject to a business bar of the sort that I'm
10  talking about.
11  THE COURT: Yes. Yes, and it
12  would be.
13  And recognizing that you still
14  have some protection under 6A, although the two
15  of you haven't quite agreed on what that was and
16  you still have some protection under Paragraph
17  26, but this would be an added protection as
18  you've proposed, Mr. Rosenthal, or similar to
19  what you've proposed.
20  I haven't seen it, so I can't say.
21  MR. ROSENTHAL: Sure. We'll
22  provide that language to opposing counsel and
23  hopefully we can work something else out.
24  THE COURT: I'm hoping that you

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

## 27

1  can, too. Let's talk about the schedule.
2  This is the case that has what now
3  25 patents involved in it?
4  MR. ROSENTHAL: Yes, Your Honor.
5  THE COURT: I did make some changes
6  in the proposed time schedule, and what I'm
7  reading is that counsel is splitting up fact
8  discovery and expert discovery, and having
9  expert discovery occur after you get a Markman
10  ruling; is that correct?
11  That's the way I read Paragraph --
12  I'm sorry. I can't get it -- 3D and E as well
13  as what happens with paragraphs dealing with
14  claim construction and the paragraphs dealing
15  with dispositive motions.
16  MR. ROSENTHAL: Yes. That was our
17  intent, Your Honor.
18  THE COURT: The matter is now
19  scheduled for a bench trial, though; right?
20  It's scheduled for a jury trial or what the hope
21  is that it will be a jury trial?
22  MR. ROSENTHAL: That's correct.
23  MR. RE: That is correct, Your
24  Honor.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

## 28

1  THE COURT: And none of you put in
2  a date for the trial; right? Or none of you put
3  in the paragraph regarding a trial, did you? I
4  didn't see that.
5  MR. RE: That is correct, Your
6  Honor.
7  THE COURT: Was there any reason
8  why you didn't put in a section for the trial?
9  MR. ROSENTHAL: Your Honor, yeah.
10  We discussed that with the other side and the
11  primary reason was we weren't sure whether that
12  is something that was going to be set today.
13  But we certainly contemplated
14  putting in something with blanks. But we -- I
15  think we were just a little -- we were just a
16  little unsure whether that was something that
17  was going to be set this early.
18  THE COURT: All right.
19  MR. RE: Your Honor, this is
20  Mr. Re. I was guided in part by the order by
21  Judge Farnan transferring this case to you that
22  was pretty specific that the transfer to you was
23  up to and including the pretrial conference.
24  And that was my reasoning for not being so

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

**Exhibit 18**
**-467-**

---

### 29

1   presumptuous and putting in a trial date.
2           THE COURT:  Well, not actually
3   putting in a date, but actually putting in the
4   language to fill it in.  What the practice has
5   been in this Court, even when a matter's been
6   referred to a Magistrate Judge for up to and
7   including the pretrial, is we have been putting
8   in trial dates for the other judges or
9   conferring with them about trial dates.
10          And as you know, this case is
11  going to go well beyond Judge Farnan's history
12  with this Court.  And more likely than not, his
13  cases will be transferred to Judge Stark who, by
14  the way, went through his confirmation hearing
15  yesterday.
16          So the hope is that they have to
17  keep, I think, the hearing open for a week for
18  further comments and if any other members of the
19  committee have questions.  And then, of course,
20  as you know, counsel, the Senate Judiciary
21  Committee votes and then it gets sent to the
22  Senate.
23          I'm not even going to attempt to
24  predict how long that will take, how short or

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

### 30

1   how long that will take.  But the likely result
2   is, and the belief on this Court is that since
3   Judge Farnan, the closeness of Judge Farnan's
4   retirement to hopefully the closeness of Judge
5   Stark's confirmation, is a nice blend to be able
6   to transfer Judge Farnan's cases directly to him
7   and he will have a ready-made case load.
8           And in my conferring with Judge
9   Stark about assuming that this would happen,
10  what he wanted me to do, I have been putting in
11  trial dates for him.  Now, that doesn't mean
12  you're necessarily going to keep those trial
13  dates.
14          But it does give him a read --
15  does give the judge at least a read as to how
16  long counsel believes the trial is going to
17  take.  And so when he does take -- when he does
18  get this case load which includes this case, I
19  can -- I think it's safe to assume that there's
20  probably going to be adjustments on any trial
21  dates that I put into the scheduling order.
22          But it will provide him with
23  guidance as to how many days will be necessary
24  and how he can line up his trials accordingly.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

### 31

1   So we'll need to add that paragraph in.
2           Because I am curious to find out
3   with 25 patents out there, and my hope is that
4   there's not going to be that many claim terms in
5   dispute because we're going to have to talk
6   about that then, too.
7           MR. ROSENTHAL:  Your Honor, this
8   is Brian Rosenthal.  Our hope is that there's
9   going to be some narrowing and simplification of
10  the case by the time we get to various stages,
11  especially by the time we get to trial.
12          THE COURT:  I would like it --
13  Brian, I would like it narrowed a little bit
14  before then.
15          MR. ROSENTHAL:  Yeah.  My hope is
16  that that will happen, too.
17          I will say that with respect to
18  the first question of trial time, we have given
19  that some thought.  If all 25 patents were in
20  the case during trial, it would seem to me that
21  there would be a need for a relatively long, as
22  far as patent cases go, trial time.  Be on the
23  order of three weeks.
24          But it may well be that there's a

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

### 32

1   lot fewer patents at issue by the time we get to
2   trial.  And it may be that far less time is
3   required.
4           If there is a desire to put in
5   kind of a window of what we think is the
6   most, --
7           THE COURT:  Mm-hmm.
8           MR. ROSENTHAL:  -- that may be a
9   good thing to do.  But I think it would be very
10  prudent to build into the schedule some time in
11  the middle of the case, a status conference
12  where when things have been narrowed somewhat,
13  we know what the contentions are.
14          Hopefully some issues have dropped
15  out.  We can reassess what that length would be.
16          THE COURT:  I happen to agree.  I
17  think that would be most helpful to all of us,
18  myself included, because there is -- I know you
19  may not consider it to be tight, but it is going
20  to be a tight schedule between the time that you
21  get your briefing done on the Markman.
22          And that claim construction really
23  is something that I'm intimately concerned about
24  because I know how it affects the rest of the

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

**Exhibit 18**
**-468-**

## 33

1  case.  And the time period in which I get a
2  claim construction determination out there,
3  decision out there, and then the time that you
4  have thereafter to get your expert discovery
5  done.
6  Because the way it's being
7  proposed now, it wasn't going to start until 30
8  days after the issuance of the Court's Markman
9  decision.  And you've got a cut-off date of
10  April for the case dispositive motions.  It is
11  late April.
12  And there's certain time frames in
13  the scheduling order that directly affect
14  counsel and the parties.  And that has less
15  concern to me.
16  I'm not being perjorative about it
17  or selfish.  I'm just saying that this is time
18  that you've built in.  This is time you are
19  saying to the Court, We can do it in.
20  But then there's also a schedule
21  that you build in for me or suggest for me that
22  I've got to look at it from an objective
23  standpoint and say, Okay.  What's going to be --
24  likely going to be going on with my life, my

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

## 34

1  work life during that time period and whether
2  I'm going to be able to meet those dates so that
3  there's not a domino effect to the rest of the
4  schedule.
5  And that's another way that I'm
6  looking at it.  And I am always very
7  uncomfortable, to some extent, to have time
8  frames in a schedule that don't actually have
9  dates, but say it's "X" amount of days from when
10  this event occurs.  Because that doesn't give us
11  a frame of reference until it happens.  I'll
12  accept them, but I am very uncomfortable about
13  it.
14  The other aspect of it is on the
15  dispositive motions, there is a long time that
16  you've built in because you said April 20th is
17  when they're going to be filed, but you're
18  giving, you know, over a month to get a response
19  filed, and then three-quarters of a month to get
20  the reply filed.  And that takes two months out
21  of my time to get a decision rendered.
22  And I recognize that the pretrial
23  conference may seem to be a long way off on
24  November 8th, 2011, but I add those in, and that

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

## 35

1  takes you easy into the June -- the June,
2  potentially July time frame.  So these are all
3  factors I'm doing my analysis on as to my
4  responsibility to you as counsel and to your
5  clients to get my decisions out there prior to
6  the time.  And my hope is always to get the
7  decision out there on case dispositives prior to
8  the time you have the pretrial conference.  How
9  much in advance is wholly dependent upon how
10  long it takes for me to get the briefs from
11  counsel and those get completed.
12  The other factor that I think
13  about, too, is that even when we put in, and say
14  it's according to the schedule or the local
15  rules, I know nobody ever follows the local
16  rules.  I know that.  I just know that.  As far
17  as the time frames are concerned.
18  The other issue also on Paragraph
19  9 for dispositive motions is that as of April
20  30th, our local rules will be changing and the
21  page limitations imposed on case dispositive
22  motions will be 20, 20 and 10.  So those are
23  generally the page limitations that I will be
24  imposing on this, unless I hear something

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

## 36

1  different.
2  Because what I don't want to see
3  happen is -- there's two things I don't want to
4  see happen.
5  One, I don't want to have case
6  dispositive motions filed in this case where you
7  feel the need to use 40 pages for every motion
8  that you file.  I think a lot is wasted.
9  The other alternative is when you
10  do it, the page number is too short.  What I end
11  up with is eight to ten motions for summary
12  judgment, but you've subparsed them out, like a
13  motion for summary judgment on each individual
14  claim for anticipation, motion for summary
15  judgment on each individual claim for
16  obviousness.
17  So I know how the game is played
18  so you're able to get more pages to be able to
19  complete your briefing on what you think is
20  necessary of repetitive analysis to the Court.
21  So these are some of the concerns
22  that I have.  So let's go and look at what's
23  been proposed so far.
24  Like I said, the first issue that

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

**Exhibit 18**
**-469-**

---

37

1   I had with it was at Paragraph 3E.  And that
2   is -- I don't know what else to do with it right
3   now.
4              I haven't thought about it.
5   Thirty days after the issuance of the Markman
6   decision and you're assuming the Markman
7   decision isn't going to be issued before
8   December 7th, because that's when -- well,
9   before sometime in December.  I put in December
10  7th which is the hearing on the claim
11  construction.
12             So even if you got it the next day
13  on the 8th, you're talking about January 8th
14  probably being the earliest date or January 7th
15  being the earliest date in which you start your
16  identification of experts with a cut-off date of
17  sometime in late April for your case dispositive
18  motions.
19             But we can leave it that way and
20  just hope that you don't get a Markman ruling
21  from me that happens on April 19th.
22             The interim status report
23  originally as you suggested it, Paragraph 7 and
24  8, were August of 2010.  I thought that was a

---

38

1   bit early in the process.
2              So I have -- particularly when the
3   fact discovery cut-off date is December 1st,
4   2010.  So we put it more towards the middle and
5   moved it to October 5th with the status
6   conference occurring on October 12th.
7              Now, there was a suggestion that
8   you made, though, Mr. Rosenthal, that maybe it
9   wouldn't be a bad idea.  Well, you're going to
10  get your fact discovery done in a relatively
11  short period of time.  I don't think that's
12  going to happen, but maybe it will.
13             Not with 25 patents in the case, I
14  just don't see how it's going to get done in
15  that time.  But you had recommended that maybe
16  having another, and I'm going to suggest maybe
17  we have more than one interim status report or
18  status conference as you suggested,
19  Mr. Rosenthal, later in the case when it's more
20  -- when it's more likely known to the parties as
21  to how this case is shaking out, and what
22  patents are going to be left potentially in the
23  case, and what type of claim construction needs
24  the parties are going to have.

---

39

1              And I think that's a great idea.
2   I think it's a very good idea.
3              The other issue out there is, at
4   that time, you may very well be told by me you
5   have a limitation on how many terms can be
6   subject to the Court's -- for the Court to have
7   to rule on in making any type of construction.
8              And I do that more out of self
9   preservation than anything else in case the
10  patent -- the number of patents haven't been
11  reduced.  I'm working from another assumption,
12  and maybe incorrectly, that either there's not
13  going to be a lot of terms that potentially
14  could be disputed or that the patents are such,
15  because I certainly haven't read 25 patents so
16  far in this case.
17             But that the construction -- since
18  there seems to -- it would seem to me there's
19  got to be a relationship between the patents
20  that Philips have alleged against -- a large
21  relationship between the patents that Philips
22  have alleged against Masimo, and the ones that
23  Masimo has alleged against Philips, that there
24  may be an overlap of either specifications, or

---

40

1   there may be an overlap of similar type claims.
2   And there may be an overlap of claim terms
3   within those patents for each party.
4              So that you don't require a new
5   construction in each patent, but that the claim
6   term that is consistent among the patents that,
7   for example, Masimo has filed against Philips.
8   You could -- once the term is construed in one
9   patent, it applies to all 14, for example.  But
10  I don't know.  I don't know that to be the case.
11             But I can tell you that I don't
12  see this case going to trial with 25 patents,
13  and I sure as heck don't see this Court being
14  stuck in the position of having to do a
15  significant number of claim term constructions.
16  So when do you want to have the second status
17  conference, and should it occur prior to the
18  time you actually start?
19             Well, you know, you're starting to
20  do the claim construction issue, identification
21  issue starting September this year.
22             MR. ROSENTHAL:  Your Honor, this
23  is Brian Rosenthal.  I would suggest that that
24  status conference would probably best be placed

---

**Exhibit 18**
**-470-**

---

**41**

1  sometime after the claim construction hearing,
2  which is in the first part of next year.
3  THE COURT:  Well, before you
4  actually get the claim construction order from
5  the Court, Brian, or after?
6  MR. ROSENTHAL:  It would probably
7  be a little more informed after, but either way
8  I think it ought to be in that general time
9  frame.  I think I would -- I would tend to think
10 it would be more useful for everyone if it was
11 after.
12 THE COURT:  Yeah.  Well, if we
13 have one in October, let me see you're going to
14 do your exchange of issue identification in the
15 August, September time frame.  And you're going
16 to start your briefing on claim construction,
17 let me see, October.
18 Maybe I've got to impose a
19 limitation now on how many claim terms this
20 Court is going to be required to construe.
21 I have no idea if the parties are
22 aware of any problems right now.  I just
23 can't -- it may be too early in the case for you
24 to know.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

---

**42**

1  MR. ROSENTHAL:  Your Honor, I may
2  be able to shed a little bit of light on one of
3  the assumptions that you are making about the
4  relatedness of the patents and that might inform
5  your analysis.
6  From Philips' perspective, the 11
7  patents that Philips has asserted, there are a
8  couple of family relationships, one or two.  But
9  for the most part, they're different
10 specifications and different patent families.
11 THE COURT:  Mm-hmm.
12 MR. ROSENTHAL:  For the Masimo
13 patents, of those 14, I'm hoping I'm not
14 misstating this, but I think there's three,
15 maybe four patent families that from which those
16 14 patents come.  So the specifications are
17 fairly similar.  Some of them are identical to
18 each other.
19 So I think it's going to be a bit
20 of a mixed bag.  I don't think that we can
21 generalize and say, you know, most of the
22 patents are going to be related to each other,
23 but there's certainly going to be some overlap
24 and knowing what the claim construction issues

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

---

**43**

1  are likely to be.
2  I think there's going to be
3  certainly some terms that will apply across
4  different patents, but that's not necessarily
5  true with respect to all the terms and even a
6  majority of the terms.
7  THE COURT:  Well, my question is:
8  How many claim terms does each side think are
9  going to require -- out of all these variety of
10 patents, since it doesn't sound like we're going
11 to have a reduction of a number of patents
12 alleged against the parties by the time we get
13 around to requesting claim construction, that
14 there's not going to be much of a fall out
15 before then, how many claim terms does each side
16 conceive for their patents being required to be
17 construed?
18 MR. ROSENTHAL:  Your Honor, it's a
19 very difficult question to answer now primarily
20 because we haven't exchanged full contentions
21 including invalidity, and responses and all that
22 stuff.  So it's hard to know where the disputes
23 are going to lie.
24 I think we have an idea, and I

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

---

**44**

1  wonder if that's a question that can be answered
2  with a lot more specificity at our October
3  hearing.  Well, that's going to be a little too
4  hard.
5  THE COURT:  That's going to be a
6  little too late.  So the question is:  Should we
7  be having an earlier -- maybe we go back to the
8  August time frame.
9  MR. ROSENTHAL:  Yeah, that may be
10 a very good time to have that discussion,
11 because we will have just completed our
12 contention exchange.  And we will have all the
13 documents.
14 We won't have all the depositions,
15 but I think at that point we can much more
16 intelligently give some input as to what we
17 think is required in terms of number of terms.
18 THE COURT:  Mr. Re, did you wish
19 to make any comments?
20 MR. RE:  No.  I agree with
21 everything that Mr. Rosenthal said.  I do think
22 the case should be streamlined.  I think it will
23 be.
24 I have no idea how many claim

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

---

Exhibit 18
-471-

---

45

1  construction terms are going to be at issue.  I
2  agree with the fact that you need to exchange
3  contentions before you have any idea.
4         And I like the idea of moving up
5  the status report and status conference.  I
6  think the reason why we moved it back is because
7  we focus more on discovery than we do on the
8  other aspects.
9         THE COURT:  And the dates that you
10  picked that you had the interim status report on
11  August 20th, I think why don't we do that
12  earlier, and then actually have the status
13  conference, if possible, sometime during the
14  week of August 16th.
15         I could also do it on Friday the
16  13th in August, because I have a trial.  I could
17  do it -- actually I could do it any time because
18  we're dealing with multiple time zones.
19         So we could do it late in the day,
20  and I'm sure, Mr. Re, you'd appreciate it later
21  in the day rather than earlier in the morning.
22         So let me see.  Was there any
23  magic reason to August 20th as you picked the
24  date for the interim status report?

---

46

1         What was the thought process put
2  into that particular date knowing the status
3  conference would follow after that?
4         MR. ROSENTHAL:  The only
5  consideration there was that we planned it to be
6  a couple of days after the close of document
7  discovery, which we built in.
8         THE COURT:  Okay.
9         MR. ROSENTHAL:  So, but I don't
10  think there's any reason that we couldn't do it
11  a few days earlier.  And it would probably -- if
12  we're going to be deciding number of claim
13  terms, it would be a good thing to have before
14  we exchange our list of terms.
15         THE COURT:  Mm-hmm.  Which is
16  early September?
17         MR. ROSENTHAL:  On August 18th.
18         THE COURT:  Yeah.  Which is -- oh,
19  August 18th is when you do your exchange of
20  terms?
21         MR. ROSENTHAL:  Right.
22         THE COURT:  Okay.  So the
23  suggestion is it would make sense to have the
24  teleconference with the Court prior to August

---

47

1  18th; right?  Is that the suggestion that you're
2  making, Mr. Rosenthal?
3         MR. ROSENTHAL:  I'm sorry.  Did
4  you say August 8th?
5         THE COURT:  18th.
6         MR. ROSENTHAL:  Oh, 18th.
7  Sometime before August 18th would be, if we're
8  going to discuss that topic, would probably be
9  good.
10         THE COURT:  Right.
11         MR. ROSENTHAL:  That's right, Your
12  Honor.
13         THE COURT:  Well, I'm looking at
14  sometime during the week of August 2nd or early
15  in the week of August 9th, but not on August 9th
16  to have the teleconference.  And just roughly a
17  week before the teleconference to have your
18  interim status report filed.
19         MR. ROSENTHAL:  That makes sense
20  for Philips, Your Honor.  Late the week of the
21  August 9th may be --
22         THE COURT:  I said early in the
23  week of August 9th or any time during the week
24  of August 2nd.  The only date I can't do it on

---

48

1  is I don't want to do it on Monday, August 9th
2  because that's the first day of a trial that I
3  have.
4         And if anything is going to -- if
5  any problems are going to arise, it usually
6  arises during the first day and it bleeds into
7  the evening.  So I can do it the evening of the
8  10th and the 11th or the 12th.
9         I want to leave -- I want to do it
10  in enough time for your exchanges to mean
11  anything by the 18th and give you enough time.
12         MR. ROSENTHAL:  Yes.  Any of those
13  dates, I think, would be enough time for us to
14  adjust, if necessary.
15         THE COURT:  And also, I've got
16  time open during the week of the 2nd.  I've got
17  a lot of time during the week of the 2nd.
18         I didn't know if that would be too
19  early, but -- and the document exchange
20  situation, Mr. Re, do you have any feelings, one
21  way or other?
22         MR. RE:  No.  Those are all fine
23  from Masimo, Your Honor.
24         THE COURT:  Why don't we have --

---

**Exhibit 18**
**-472-**

49

1  why don't we do this:  Why don't we have your
2  submission due on August 3rd?
3          And then we'll have a discussion
4  on Tuesday, August 10th, 5:30 Eastern Time.
5  That would make it 2:30 Pacific.
6          I don't know whether that causes
7  anybody any problems.
8          MR. ROSENTHAL:  That's fine for
9  Philips.
10          MR. RE:  That's fine for Masimo,
11  Your Honor.
12          THE COURT:  All right.  And then
13  I'm going to add in there that will include a
14  discussion regarding in there -- a discussion
15  regarding on Paragraph 8, claim terms to be
16  construed, the number of claim terms.
17          Now, having said that, do you want
18  to have another status conference as you
19  suggested, Mr. Rosenthal, possibly after the --
20  hopefully after the time in which you have the
21  claim construction from the Court?
22          MR. ROSENTHAL:  I think that would
23  be prudent.
24          THE COURT:  So if we're looking at

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

50

1  that, we can put an artificial date in,
2  recognizing that December 7th is the date that
3  I'm looking at for the hearing on claim
4  construction at 9:00 a.m.
5          MR. ROSENTHAL:  Your Honor, while
6  we're on that topic, briefly can I make a
7  suggestion?
8          THE COURT:  Sure.
9          MR. ROSENTHAL:  I hope this
10  doesn't come across the wrong way, but I'm very
11  hopeful that we are able to have a very narrowed
12  and limited number of terms.
13          But, frankly, I think whatever the
14  limitation is, we may have quite a lot to do in
15  claim construction.  And I'm wondering if it
16  would make sense, if it is amenable with your
17  schedule, to leave open the possibility of going
18  for a day and a half, if necessary.
19          THE COURT:  For claim
20  construction?
21          MR. ROSENTHAL:  Yeah.  I put it
22  out there as something to consider.
23          I just don't know what the scope
24  of the terms are going to be, but with this many

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

51

1  patents, it may be that there's a lot to
2  discuss.
3          THE COURT:  Mr. Re.
4          MR. RE:  Well, I can't oppose
5  that.  If the Court wants to spend more time, I
6  like having time in the -- like having time that
7  the Court will give.
8          THE COURT:  Yeah.  I like that.  I
9  like that.
10          MR. RE:  I do have -- it will be
11  more streamlined well before we start exchanging
12  claim terms.  And I think the parties need to
13  discuss that, because I do think 25 patents
14  borders on the ridiculous, but --
15          THE COURT:  I think ten patents
16  borders on the ridiculous, but that's just my
17  opinion.
18          MR. RE:  Well, I agree and I --
19  just thinking of the last time I tried a case
20  for Masimo, there was five patents, and it was a
21  six-week trial.  I don't want to go through that
22  again.
23          THE COURT:  Well, you won't have
24  to worry in this Court.  You won't get that type

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

52

1  of time.
2          MR. RE:  But, no, I have no
3  objection to anything, Mr. Rosenthal said in
4  this regard.
5          THE COURT:  Well, if we do, you're
6  going to have your answering responsive briefs
7  to be contemporaneously filed, and that's
8  supposed to happen on November 8th.  Maybe we
9  move up the time period in when we have the oral
10  argument.  I mean, the claim construction
11  Markman hearing.
12          We could do it.  The question I
13  have, counsel:  You're going to be coming from
14  out of town.
15          And if I am crazy enough to give
16  you a day and a half, would the preference be
17  that you not have to travel on a Sunday night
18  and a Friday?
19          MR. RE:  That's fine with us, Your
20  Honor.  I'm pretty used to that.
21          THE COURT:  Well, I'm just --
22          MR. RE:  I appreciate it.
23          THE COURT:  Thanksgiving happens,
24  counsel, on the 25th, so I can imagine that week

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

**Exhibit 18**
**-473-**

---

**53**

1  you wouldn't be really happy with me.  If I
2  said, for example, we will do this on Tuesday
3  and Wednesday for -- first of all, I don't think
4  your families or your wives would be too happy
5  with me.
6         So but the week following might be
7  a more appropriate week to do this in, and maybe
8  schedule it on the December 1st and December
9  2nd.
10        MR. RE:  That would be excellent,
11 Your Honor.
12        THE COURT:  And to go in -- that's
13 a Wednesday and Thursday.  So you have
14 potentially the opportunity to go into December
15 2nd, but my hope is I'm fully expecting your
16 briefs to be complete pros, so that the need for
17 all that time for claim construction terms may
18 be somewhat limited.
19        It's not as though I don't know a
20 little bit about pulse oximetry, but I can't say
21 I know a whole lot.
22        MR. ROSENTHAL:  And Your Honor, I
23 think that was -- for me was the biggest
24 motivation is that there may be some need to

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

---

**55**

1  predominantly one or the other?
2         MR. ROSENTHAL:  It's really a
3  mixed bag, Your Honor, on both sides of the
4  fence.
5         THE COURT:  For your information,
6  counsel, I put in the pretrial conference -- let
7  me just see now with your suggestions for
8  dispositive motions being on April 20th, and you
9  still want the 33 days and the 24 days.
10        MR. RE:  Well, Your Honor, on that
11 subject, and I'm not quite sure how best to
12 handle it, I don't understand why all the
13 summary judgment motions have to be done
14 concurrently.  And if they're all done where
15 everything is filed on the last day, then I
16 think the extra time is appropriate.
17        And that was one of the
18 ambiguities in the templates that the parties
19 were using.  There was one sentence that said
20 you could file on or before and then the
21 following sentence said you can't file before.
22        THE COURT:  You can't file before.
23        MR. RE:  So we weren't all sure
24 whether or not the Court would even accept some

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

---

**54**

1  spend some of that day and the desire on your
2  part to spend a little bit of that day on some
3  of the more complicated aspects of the
4  technology just to get a little primer before we
5  get into a little of this.
6         THE COURT:  That's the way I
7  viewed it.
8         MR. ROSENTHAL:  That would be up
9  to you, but --
10        THE COURT:  I didn't -- if you
11 want to use it as a combination hearing on claim
12 construction and also sort of like a
13 mini-tutorial, that's fine.
14        MR. ROSENTHAL:  Right.
15        THE COURT:  That's fine.
16        MR. ROSENTHAL:  Those dates work
17 very well for Philips as well.
18        THE COURT:  Well, let's schedule
19 it then at 9:00 a.m. and we'll have it starting
20 December 1st into December 2nd, and indicating
21 that it includes a tutorial.
22        All right.  Are these -- do the
23 patents predominantly focus on methods or system
24 claims and product claims, or are they

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

---

**56**

1  summary judgments in a more staggered fashion.
2         THE COURT:  No.
3         MR. RE:  If they can be done in a
4  staggered fashion where we could file them much,
5  much sooner then it does look like plenty of
6  time to oppose and reply.
7         THE COURT:  Mr. Re, the short
8  answer is no.
9         MR. RE:  Okay.
10        THE COURT:  And the reason for
11 that --
12        MR. RE:  We need every day.
13        THE COURT:  I know.  Okay.  I
14 understand that.
15        Because just on the opposite end,
16 I need every day, too.  As soon as you file a
17 motion for summary judgment, my time begins to
18 run under my reporting requirements.  As soon as
19 you file the motion, forget about when you file
20 the brief.
21        And so we have time requirements
22 that we are supposed to answer to.  So that's
23 the reason why I'd rather have the whole mess in
24 front of me at once and get sick then have it

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

---

**Exhibit 18**
**-474-**

57

1  petered out to me and get sick over a longer
2  period of time.
3          So that's going to -- so then I
4  would rather have dates put in for the response
5  rather than dates -- counsel, I didn't count out
6  what 33 days was from April 20th.
7          I know I'm being exasperating, but
8  please be patient with me.  So count out the 33
9  days, counsel, and tell me what that date is.
10         MR. ROSENTHAL:  It's actually May
11 23rd by my calculation on the fly here.
12         THE COURT:  So the answering brief
13 is due May 23rd.
14         MR. ROSENTHAL:  2011; right?
15         THE COURT:  And is that, by any
16 chance, hopefully a weekday?
17         MR. ROSENTHAL:  It is a Monday.
18         THE COURT:  It is a Monday.  Okay.
19         MR. RE:  My calendar says it's
20 Memorial Day.
21         MR. ROSENTHAL:  May 24th then.
22         THE COURT:  Really?  It says
23 Memorial Day?
24         Because --

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

58

1          MR. RE:  It's the fourth Monday in
2  May, because May begins on May 1st, a Sunday.
3          THE COURT:  Well, that's
4  interesting because I've got a trial starting
5  that day.
6          MR. RE:  Better alert the
7  security.
8          THE COURT:  Well, I had made the
9  assumption that actually Memorial Day might
10 actually be celebrated around the date it's
11 supposed to, like the 30th.
12         Okay.  So we'll make it May 24th
13 just in case Memorial Day is on that date.
14         Some of your younger associates
15 are going to appreciate having that day spent to
16 get the briefing done.  And then 24 days -- 24
17 was an odd number -- 24 days from that brings us
18 to, what, for the reply?
19         MR. ROSENTHAL:  I've got June 16th
20 by my math.
21         MR. RE:  That's correct.
22         THE COURT:  Okay.  Teeing off of
23 that means that we will have the date for the
24 pretrial conference then will be, let me see --

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

59

1          I've got trial already December 2011.
2          I'm trying to find it.  I'm
3  looking at the 16th of November for the pretrial
4  conference.
5          And the due date for you to file
6  the scheduling order, my scheduling order --
7  this is all Paragraph 14, by the way, counsel,
8  I'm sorry, would be by the -- oh, boy, for me to
9  absorb all that stuff.
10         Let's make it by the 7th.
11 November 7th.
12         Time for the pretrial conference,
13 I want to start -- do you want to start at 10:00
14 a.m. or do you want to start earlier?  You put
15 10:00 a.m. in here.
16         I didn't know if there was a
17 particular reason for that, but I can start
18 earlier.  We can keep it at 10:00.
19         MR. RE:  That's fine, Your Honor.
20 10:00 a.m. is fine.
21         MR. ROSENTHAL:  Any time is fine
22 for Philips.
23         THE COURT:  We'll just leave it at
24 10:00 then.  That's fine.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

60

1          I think we've covered everything
2  concerning this, except for Item Number 6, which
3  is an ADR process to be discussed during the
4  Rule 16 conference, which is today.  I don't
5  know whether there's been any attempts between
6  the parties, their counsel, either prior to the
7  filing of this lawsuit or since the filing of
8  this lawsuit to see if you could come to any
9  type of agreement or attempts to settle or
10 resolve your differences.  I have no idea what
11 the relationship is between Masimo and Philips,
12 absent this lawsuit or what it existed before.
13 So I don't know if there's been any attempt in
14 that regard.
15         Is there any interest on the part
16 of the parties to talk about settlement in a
17 mediation format, for example?  And if that does
18 occur, if the parties do have some interest,
19 your choice is me or someone else.  Because I
20 think by the time we'd be talking about ADR, I
21 don't think Judge Stark is going to be a
22 Magistrate Judge here anymore.
23         And I don't know whether the
24 parties are uncomfortable having a judge who's

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

Exhibit 18
-475-

---

**61**

1  going to be deciding claim construction and
2  summary judgment motions to serve as the
3  mediator.  Boy, there was an absolute silence.
4       MR. RE:  This is Joe Re from
5  Masimo, Your Honor.  We have no objection to you
6  also serving in an ADR capacity.
7       MR. ROSENTHAL:  Your Honor, this
8  is Brian Rosenthal.  I hate to defer like this,
9  but I think that's something -- that question is
10  one that I think we need to consult with our
11  client about.
12       THE COURT:  That's fine.
13       MR. ROSENTHAL:  We're certainly
14  well aware of and worked with you before on
15  mediations and would be happy to do that.  We
16  just need to talk with our client to see if
17  there's an issue with the dual role.
18       THE COURT:  That's fine.  So --
19       MR. ROSENTHAL:  So that's
20  something I'd like to defer on.  The more
21  general question:  Are we interested in that
22  process?
23       We certainly are interested in
24  taking advantage of that.  We don't think that

---

**62**

1  it would be terribly useful or fruitful until
2  we've progressed to a certain point, and that
3  point is probably getting the Markman decision.
4       THE COURT:  All right.  I
5  understand Philips' position.
6       MR. Re, what is the timing that
7  you see along Masimo's line?
8       MR. RE:  I agree with what
9  Mr. Rosenthal said.  I do think the issues have
10  to somewhat get framed a little better.
11       But in the next six months or so
12  sounds about right.  We've gone through some of
13  the -- at least some of the Markman pieces.
14       THE COURT:  Okay.  So this may be
15  something that we will revisit a little bit
16  during the time of our conference in August.
17  And I forgot, we were talking and I did get off
18  point when we set up the conference in August.
19       We didn't discuss about what date
20  we would be setting up the conference or I did
21  discuss a date for the conference in the future
22  after that.
23       MR. ROSENTHAL:  We did not set a
24  date for the second conference.  We did set

---

**63**

1  August 10th for the August conference.
2       THE COURT:  Yeah.  And I recognize
3  that there's an interest on the part of the
4  parties to have a decision from this Court
5  before you have the second conference, but one
6  thing that could motivate me potentially to get
7  a Markman decision out is to actually have a
8  date staring me in the face.
9       Even if I don't get a Markman
10  decision out, you're also going to be in a
11  better position to have heard each other's
12  arguments and maybe have read my reactions, and
13  based upon my questions at the Markman hearing
14  to possibly get a feel or read where the Court
15  may be going.
16       Having said that, though, let me
17  see.  We have the Markman scheduled for -- I
18  don't know.  I can't remember if -- that's the
19  1st and the 2nd of December.  All right.
20       We've also got Christmas during
21  that time period, so I'm looking at probably
22  later in January to have that second status
23  conference.  Do you want to do an interim status
24  report before that or just have a status

---

**64**

1  conference for the second one?
2       MR. RE:  Your pleasure, Your
3  Honor.
4       THE COURT:  You know, there's a
5  piece of me that says no.  There's another piece
6  of me that says as soon as I don't have you file
7  a paper, that I'm not going to know what's going
8  on.  I can live with less paper.
9       But at the same time, let's look
10  at for the second status conference -- and I'm
11  hoping everybody is writing this down so that
12  whoever is going to be redrafting this order and
13  gets it to me is going to have all this down.
14       Why don't we look at sometime
15  during the week of January 24th for the
16  conference itself.  And again, since this is not
17  going to be in person, I imagine we can do it
18  any day of the week since hopefully you won't be
19  traveling -- you at least won't be traveling out
20  to see me.
21       So I've got the week of the 24th
22  is relatively open.  How does that look on your
23  schedule, counsel?
24       MR. ROSENTHAL:  Open for Philips,

---

**Exhibit 18**
**-476-**

---

**65**

1  Your Honor.
2          MR. RE:  Open for Masimo, Your
3  Honor.
4          THE COURT:  Let's do it on the
5  25th.  Okay.
6          If we did it at 11 o'clock, is
7  that going to be problematic for anybody because
8  I think Philips is one hour behind and Masimo is
9  three.
10         MR. ROSENTHAL:  Philips is on the
11  East Coast.
12         THE COURT:  That's right.  You're
13  the same time.
14         MR. ROSENTHAL:  Yeah.
15         THE COURT:  11 o'clock is an odd
16  time, but I mean it's eight o'clock then your
17  time, Mr. Re.
18         MR. RE:  That's perfectly fine,
19  Your Honor.
20         THE COURT:  So let's put it in for
21  the 25th, Tuesday at 11 o'clock.  And this will
22  be -- since the first status conference,
23  plaintiff's counsel initiated the call, the
24  second status call, defense counsel will

---

**67**

1  event, counsel, as to when you're going to
2  expect a trial.
3          Because right now we've got the
4  pretrial, let me see, for November 16th.  So
5  within -- generally within a month's period of
6  time is when I usually schedule a trial.  From
7  the date of the pretrial, frequently less than a
8  month.
9          But as I said, that's not going to
10  be my schedule.  It's going to be somebody
11  else's.
12         MR. ROSENTHAL:  And Your Honor, I
13  wonder if it makes sense for us to say that
14  we've done this in other scheduling orders in
15  this Court to say something like --
16         THE COURT:  Mm-hmm.
17         MR. ROSENTHAL:  -- "X" amount of
18  time should be reserved, but the length and
19  nature of trial will be discussed at the status
20  conference to be held in January.
21         THE COURT:  That's acceptable to
22  me.  And it also could be discussed at the
23  pretrial as well.
24         MR. ROSENTHAL:  Right.

---

**66**

1  initiate the call.
2          What I also need for you to do is
3  to add to the -- and that conference we can also
4  include further discussion about as well as in
5  the first status conference and the second
6  status conference, we can include further
7  discussion about settlement prospects for
8  mediation.
9          The status conference for the 25th
10  will be preceded by an interim joint interim
11  status report, which will be due on Tuesday the
12  18th.  And hopefully there won't be much to
13  report between that and December 2nd.
14         But that gives you the opportunity
15  that if anything, any concerns have arisen, you
16  can at least outline them in a brief letter to
17  me and bring it up.  You also need to add a
18  paragraph concerning the trial.
19         And we can put that in as
20  suggested date, not held to date, but suggested
21  dates.  I would be very curious to find that out
22  or at least put that extra paragraph in because
23  I've got -- I'm going to have to throw in a
24  date, and it will probably be arbitrary in any

---

**68**

1          THE COURT:  Depending upon what
2  the fall out is from any type of case
3  dispositive motions.  The pretrial is kind of
4  the last opportunity for both the Court and
5  counsel to talk before you go to trial.  And
6  hopefully makes a blueprint of what the trial is
7  going to be.
8          So it really does hone down the
9  number of trial days or the amount of trial time
10  that's going to potentially be necessary.  What
11  I want to have, though, in the schedule as I
12  explained to you before, counsel, was a decent
13  idea of the number of days that were going to be
14  needed so that the judge who is going to try
15  this case can find the time and plug it in and
16  have it reserved.
17         If time is going to end up being
18  less, I'm sure he'll tap dance on the head of a
19  pin for you.  But what we don't want to run into
20  the problem is having allotted time and then
21  find out that you're going to go over.
22         So do your best estimate and that
23  will be something that can be modified at the
24  time of the -- subsequently in the case.  And we

**Exhibit 18**
**-477-**

69

1 can do that in the January -- during the January
2 telephone conference, status conference.
3          It's just a bit awkward trying to
4 plug in trial dates and suggestions when we
5 don't know who's going to be even trying the
6 cases right now for sure.
7          THE COURT:  So who's going to take
8 the labor of getting me this order?  Julie, you
9 were very kind to provide it to me previously.
10         MS. HEANEY:  I'm happy to do it,
11 Your Honor.
12         THE COURT:  Thank you.
13         MS. HEANEY:  If I can ask one
14 question on Paragraph 3E on expert testimony.
15         THE COURT:  Sure.
16         MS. HEANEY:  And I apologize if I
17 missed it, but I recall that you said you don't
18 want to have days there that are just time
19 periods, but they should be date certain.
20         THE COURT:  The problem being I
21 recognize that -- and I walked away from that,
22 Julie.  My preference is to have a date, but I
23 did not tell you a date.
24         MS. HEANEY:  Right.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

71

1 have a better idea of the direction that this
2 case is going and what type of -- number of
3 claim terms, or at that discussion we may
4 actually put in limitation of the number of
5 claim terms.  So that might give us a better
6 idea and we can actually put in dates.
7          Scheduling order isn't written in
8 stone.  It can be modified to some extent.  So
9 right now just leave it at 30 days.
10         MS. HEANEY:  Okay.  Thank you.
11         MR. ROSENTHAL:  Your Honor, this
12 is Brian Rosenthal.  There's one issue that is
13 not in this draft scheduling order that was just
14 inadvertently omitted, and that is one
15 disagreement, fairly minor, that the parties
16 seem to have in the original scheduling orders
17 that were proposed.
18         There was a document discovery
19 cut-off and then there was a statement that said
20 depositions are not to be taken until after that
21 document discovery cut-off.  That was per Judge
22 Farnan's typical order.
23         THE COURT:  Mm-hmm.
24         MR. ROSENTHAL:  We've been

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

70

1          THE COURT:  And I don't know and I
2 said I -- frankly said I didn't know what to do
3 with it, because putting in a date does make it
4 so that I've got to -- well, if I put in a date,
5 it could happen that the date happens or occurs
6 prior to the time you actually get a Markman
7 decision from me.
8          And I know the whole purpose of
9 this is to have your expert reports geared off
10 the Markman and the claim construction, rather
11 than having to argue and potentially in the
12 alternative.  I recognize that.
13         But my concern is 30 days and
14 whenever I get the decision, Markman decision
15 out, 30 days is a decent amount of time
16 afterwards.  And I just don't know how that's
17 going to dovetail into the rest of the schedule.
18         MS. HEANEY:  Right.  Okay.
19         So at this point it's okay just to
20 leave it as it's stated?
21         THE COURT:  Yes.  And it may be
22 something we revisit something, because it
23 may -- at the August discussion, we may have --
24 we may, I'm not saying we'll have to, but we may

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

72

1 operating under that assumption.  We haven't
2 taken -- noticed any depositions.
3          And Philips is at the point where
4 we produced a lot of our documents.  We think it
5 would be fair and the right thing to do to keep
6 that restriction in so that since we have a
7 relatively early in the process document
8 discovery cut-off in August, that no depositions
9 would be noticed to be taken.
10         THE COURT:  Just out of curiosity,
11 this scheduling order was kind of a combination
12 of Judge Farnan's and mine.
13         MR. ROSENTHAL:  I think that's
14 fair to say.  We adopted a lot of the language
15 that we had hammered out and negotiated in the
16 template of Judge Farnan's order and kind of
17 tried to, at this time, fit it into yours.  So
18 there was certainly some cowboying.
19         THE COURT:  Okay.
20         MR. ROSENTHAL:  This is one -- I
21 mean, we actually made very good progress on
22 agreeing on some of this, but this is just what
23 I saw the last remaining issue that just didn't
24 make it in as a dispute.  But we both agreed

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

**Exhibit 18**
**-478-**

**73**

1 that that was something that we should discuss
2 today.
3     THE COURT:  All right.  The other
4 issue that's out there, too, is it's not just
5 going to be -- the briefing will be presented.
6 Well, the briefing will be presented pursuant to
7 the Court's local rules.
8     You understand that on Paragraph 9
9 for dispositive motions since I plan to sign
10 this after April 30th, the local rules will be
11 the 20, 20 and 10.
12     Now, you've got a problem with
13 that.  That's one question I forgot to ask you.
14     Same thing I guess would also
15 apply to the claim construction briefs, too.  It
16 will be changed to 20 and 20.
17     I also laid out to you my concerns
18 about what could happen under that circumstance.
19     MR. RE:  So now, if I understood
20 your earlier comments, you obviously didn't like
21 it when parties broke out issues.  Could I
22 assume that each summary judgment motion can be
23 limited to one patent?
24     How -- what's the amount of

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

**74**

1 material expected in each motion when there's
2 this many patents?  Can it just be that every
3 issue pertaining to that one patent be in one
4 summary judgment motion?
5     THE COURT:  Well, I haven't
6 thought it out completely, Mr. Re, to be quite
7 honest with you, because part of the problem,
8 it's just a little overwhelming when you've got
9 25 patents in the case.
10     I recognize that the more pages I
11 give you in the brief, the hope is that you
12 combine things.  For example, you give me all of
13 your arguments, for example, on infringement, or
14 you give me all your arguments on anticipation
15 or obviousness.
16     If we go by the 20, 20 and 10
17 situation, I know what's going to happen.  I'll
18 end up, the issues will be divided out.  And I'm
19 not a big fan about that approach, either.  So I
20 don't have a clear answer.
21     And with 25 patents, you're right,
22 I'll end up -- with your logic, I'd end up with
23 14 motions for summary judgment on your side and
24 at least 11 on Philips' side.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

**75**

1 I'm not going to get 25 motions
2 for summary judgment done within that time
3 period.  It just isn't going to happen on one
4 case.
5     MR. ROSENTHAL:  Your Honor, this
6 is Brian Rosenthal.  I really hate to defer
7 something else, but this is another issue that I
8 think is going to be a little clearer for both
9 parties when we get a little further along, and
10 the number of pages for those motions and how we
11 divide them up.
12     I think when we are a little
13 further along and know really what the issues
14 are, what the noninfringement issues are, what
15 the invalidity issues are, I think we'll have a
16 much better sense of the proper way to divide
17 them and allocate pages.
18     THE COURT:  Oh, Mr. Rosenthal, I'm
19 going to highlight all the comments that you've
20 made like this.  I'm going to ask Heather to
21 highlight all these comments and they'll come
22 back to haunt you when we talk about it later
23 on.
24     I agree with you that it probably

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

**76**

1 would make some sense to talk about it later
2 rather than now because we are talking about in
3 the abstract.  And the Court will probably also
4 consider, quite frankly, just limiting how many
5 motions you're going to be allowed to have.
6     You know I could do the Judge
7 Sleet approach and say, You've got five pages to
8 explain to me why there isn't a general issue of
9 material facts on all your issues and do it that
10 route and go that route, and then look over your
11 submissions and come up with a conclusion that
12 you're not allowed to file any motions for
13 summary judgment.
14     But I'm not going to take that
15 route now.  But I may very well consider as we
16 get closer to the time period for when the due
17 dates for the motions are that the Court will
18 impose page limitations.  It may very well be
19 consistent with what the rules are as well as
20 imposing the number of motions each side would
21 be entitled to.
22     Those are two other approaches.
23 I'm not going to do it now.  I'll just leave it
24 for the future.

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

**Exhibit 18**
**-479-**

## 77

1    Now, the issue that you brought
2  up, Mr. Rosenthal, about taking no depositions
3  until there's been the initial disclosure is
4  done, is that what you're saying?
5    MR. ROSENTHAL:  Actually the
6  proposal was until after document discovery is
7  completed.
8    THE COURT:  Okay.
9    MR. ROSENTHAL:  And really the
10 rationale for that, apart from the fact that
11 this is -- that's how the parties have been
12 operating so far is that, you know, Philips,
13 from our perspective, we're going to be finished
14 with our document production very, very soon.
15 And we're a little worried that that's going to
16 put us at a bit of a disadvantage from a timing
17 standpoint.
18    If we start getting a whole bunch
19 of deposition notices and we notice depositions
20 to take their witnesses, but we don't have all
21 the documents yet, because we've been
22 operating under the assumption that it's
23 documents first and then the depositions,
24 because that's how it was structured in the

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

## 78

1  order that we had both proposed under Judge
2  Farnan's template.
3    THE COURT:  Mm-hmm.
4    MR. ROSENTHAL:  And I'd ask that
5  we put that back in.
6    THE COURT:  And Mr. Re.
7    MR. RE:  I don't know why that has
8  to be a blanket rule, and I don't think it's
9  really -- that's the way we've been operating.
10 The parties are still sending out document
11 requests and that's why, you know, there's been
12 no depositions so far.
13    But I don't think it needs to be a
14 blanket rule that no depositions until all
15 documents are exchanged.  I would expect
16 documents still to be found even after
17 depositions are taken.  Many times you take
18 depositions and you learn about other sources of
19 documents.
20    So I don't think it needs to be a
21 blanket rule.  And no one's going to blanket
22 each other with numerous deposition notices.
23    But I might want to take a few
24 depositions in the near future.  I don't see why

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

## 79

1  those should wait for a formal completion of
2  document exchange.
3    THE COURT:  Well, they have -- you
4  have in the proposal, I think under 3D, document
5  production shall be completed by August 17th,
6  2010; right?
7    MR. ROSENTHAL:  That's right, Your
8  Honor.
9    THE COURT:  Okay.  That's under
10 3D.
11    And under Judge Farnan's standard
12 order, does he have no discovery, no depositions
13 to be taken until the document production has
14 been completed or relatively completed?
15    MR. ROSENTHAL:  Your Honor, I'm
16 having trouble remembering whether that's in his
17 standard order or whether it's something that we
18 just both agreed.  I seem to remember it was in
19 his standard, but I can't say that with
20 certainty.
21    THE COURT:  Local counsel, can you
22 help me because I don't know?
23    MS. HEANEY:  Your Honor, the
24 question is whether document production has to

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

## 80

1  be completed before depositions are taken?
2    THE COURT:  Well, whether Judge
3  Farnan has some limitation in his standard
4  order.
5    MS. HEANEY:  Yes.  Judge Farnan
6  does, but we didn't include those here.
7    THE COURT:  And what you're
8  suggesting is that no depositions technically
9  could be taken then, Brian, before August 17th?
10    MR. ROSENTHAL:  Right.  That's the
11 import of it.
12    And that's -- I think that's what
13 was in both of the parties' proposed schedules
14 originally, which is the basis for me saying
15 that's how we've been operating.  That's the
16 assumption we've been operating on.
17    You know, that would be the
18 effect.
19    THE COURT:  And you're going to
20 get all of these depositions taken in a real
21 short period of time.  That's what I'm concerned
22 about.
23    MR. RE:  Yes, as am I, Your Honor.
24    MR. ROSENTHAL:  That was the

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

**Exhibit 18**
**-480-**

---

**81**

1  proposal that we both agreed to when we proposed
2  this originally to Judge Farnan.  I don't think
3  it's going to be an issue.
4  　　　　MR. RE:  But that was with dates
5  in -- if that were the agreement now, then the
6  dates don't work out.
7  　　　　MR. ROSENTHAL:  Actually the
8  proposal that Masimo made was more compressed,
9  but I think that the three-and-a-half-month
10  period is enough to complete the depositions,
11  but if we want to adjust the dates.
12  　　　　There's lots of moving parts.  I
13  am just a little concerned that, from our
14  perspective, we're finished with or we are going
15  to be very shortly, we are finished with our
16  document production and we're now going to be
17  strategically at a disadvantage because we're
18  now going to be subject to a lot more
19  depositions who through document production
20  relevant to those depositions have been
21  completed.
22  　　　　THE COURT:  Well, my understanding
23  is what you're concerned about, and I think what
24  the purpose of probably Judge Farnan's approach

---

**82**

1  was to make everybody work more quickly to get
2  the production done, because until they did,
3  then they weren't going to be able to take
4  depositions.
5  　　　　So there's a way of dealing with
6  that, to some extent, Mr. Rosenthal, and that is
7  the party that's completed or has done the
8  laboring and finished the document production,
9  for the most part, is not all document
10  production being done necessarily, but the huge
11  quantity of it and the more significant portion
12  of it, if you've done that and the other side
13  hasn't, then they shouldn't be allowed to take
14  depositions of your people.
15  　　　　MR. ROSENTHAL:  If that's the
16  guiding principle, I think that's just fine.  I
17  don't know if we need a hard and fast rule, but
18  if that's the guide that we should live by,
19  that's just fine.  That's the inequity we are
20  trying to avoid.
21  　　　　THE COURT:  That's what I figured.
22  That is the way I would be viewing it.
23  　　　　The party that has been able to
24  get their production together, has done it

---

**83**

1  fairly well and complete shouldn't be put at a
2  disadvantage for the party who has not been able
3  to get it done for whatever reason.
4  　　　　MR. RE:  I totally agree with
5  that.  This is Mr. Re.
6  　　　　I don't know what's been
7  insinuated that our document production has
8  somehow been inadequate.  I agree it should be
9  fair and equitable, and I think the parties are
10  working hard and exchanging documents.
11  　　　　THE COURT:  And my feeling is
12  this:  For both of you, if there are
13  significant -- if there has been -- well, I'll
14  give you the guiding principle that I'm going to
15  go by.
16  　　　　I'm not encouraging you to
17  necessarily come back to me every time somebody
18  wants to notice a deposition, but that's the
19  principle that I'm going to be working off of.
20  And I don't want to hear -- I mean, I'll just
21  leave it at that.
22  　　　　I'm not going to put in a hard and
23  fast situation, but I understand where you're
24  coming from, Mr. Rosenthal, and what your

---

**84**

1  concerns are.  And the Court will be in tune to
2  those concerns for both sides.
3  　　　　MR. ROSENTHAL:  Thank you, Your
4  Honor.
5  　　　　MR. RE:  Thank you, Your Honor.
6  　　　　THE COURT:  I think we've covered
7  everything, have we not, counsel, or are we
8  still -- is there anything outstanding left?
9  　　　　MR. ROSENTHAL:  There is not
10  something that needs to be resolved today, just
11  a head's up, Your Honor.
12  　　　　Brian Rosenthal.  The parties
13  agreed, as you asked us to, on a contention
14  exchange schedule.  We didn't put that in the
15  scheduling order.
16  　　　　But we've agreed with the other
17  side.  There's just one little hiccup on how to
18  deal with the new patent that we're going to
19  negotiate and figure out.
20  　　　　But once we finalize that schedule
21  with respect to that patent, we've agreed that
22  we're going to provide a stipulation for order
23  by the Court sometime in the future.
24  　　　　THE COURT:  All right.  Hopefully

---

Exhibit 18
-481-

85

1   that will be a very, very minor hiccup.
2            MR. ROSENTHAL:  Yes, just on how
3   that new patent fits in with the other schedule.
4   So we should be able to figure that out pretty
5   easily.
6            THE COURT:  All right.  I will --
7            MR. RE:  And I agree.
8            THE COURT:  I'm not going to ask
9   for any new problems, counsel.  I'll just wait
10  until they arise.
11           And I'll just wait to see.  Julie,
12  you're sending in the order for my signature on
13  the scheduling order.
14           Thank you, all.  Have a great
15  weekend.
16           MR. RE:  Thank you, Your Honor.
17           MR. ROSENTHAL:  Thank you, Your
18  Honor.
19           MR. RE:  Thank you, Brian.
20           MR. ROSENTHAL:  Thanks, everybody.
21           THE COURT:  Bye-bye now.
22           (Teleconference concluded at 12:31
23  p.m.)
24

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

86

1    State of Delaware )
                        )
2    New Castle County )

3

4

5            CERTIFICATE OF REPORTER

6

7         I, Heather M. Triozzi, Registered

8    Professional Reporter, Certified Shorthand Reporter,

9    and Notary Public, do hereby certify that the

10   foregoing record, Pages 1 to 86 inclusive, is a true

11   and accurate transcript of my stenographic notes

12   taken on April 23, 2010, in the above-captioned

13   matter.

14

15         IN WITNESS WHEREOF, I have hereunto set my

16   hand and seal this 27th day of April, 2010, at

17   Wilmington.

18

19

20         _____      _____

21              Heather M. Triozzi, RPR, CSR
                Cert. No. 184-PS
22

23

24

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware 19801
(302) 658-6697  FAX (302) 658-8418

Exhibit 18
-482-

## 0

**09-80-JJF-MPT** [1] - 1:4

## 1

**1** [1] - 86:10
**10** [3] - 35:22, 73:11, 74:16
**10:00** - [1] - 59:13, 59:15, 59:18, 59:20, 59:24
**10th** [3] - 48:8, 49:4, 63:1
**11** [5] - 42:6, 65:6, 65:15, 65:21, 74:24
**11:00** - [1] - 1:17
**11th** [1] - 48:8
**12:31** - [1] - 85:22
**12th** [2] - 38:6, 48:8
**13th** [1] - 45:16
**14** [5] - 40:9, 42:13, 42:16, 59:7, 74:23
**15** [8] - 11:12, 12:12, 12:14, 12:18, 13:11, 14:14, 25:1, 25:2
**16** [1] - 60:4
**16th** [4] - 45:14, 58:19, 59:3, 67:4
**17th** [2] - 79:5, 80:9
**184-PS** [1] - 86:21
**18th** [8] - 46:17, 46:19, 47:1, 47:5, 47:6, 47:7, 48:11, 66:12
**19th** [1] - 37:21
**1st** [5] - 38:3, 53:8, 54:20, 58:2, 63:19

## 2

**20** [8] - 35:22, 73:11, 73:16, 74:16
**2008** [3] - 6:21, 7:1, 21:17
**2010** [6] - 1:17, 37:24, 38:4, 79:6, 86:12, 86:16
**2011** [3] - 34:24, 57:14, 59:1
**20th** [5] - 34:16, 45:11, 45:23, 55:8, 57:6
**21st** [1] - 5:6
**23** [2] - 1:17, 86:12
**23rd** [2] - 57:11, 57:13
**24** [4] - 55:9, 58:16, 58:17
**24th** [4] - 57:21, 58:12, 64:15, 64:21
**25** [10] - 27:3, 31:3, 31:19, 38:13, 39:15, 40:12, 51:13, 74:9, 74:21, 75:1
**25th** [4] - 52:24, 65:5, 65:21, 66:9
**26** [8] - 10:22, 14:2, 14:6, 14:14, 18:8, 20:12, 25:2, 26:17
**27th** [1] - 86:16
**2:30** [1] - 49:5
**2nd** [9] - 47:14, 47:24, 48:16, 48:17, 53:9, 53:15, 54:20, 63:19, 66:13

## 3

**30** [4] - 33:7, 70:13, 70:15, 71:9
**30th** [3] - 35:20, 58:11, 73:10
**33** [3] - 55:9, 57:6, 57:8
**3D** [3] - 27:12, 79:4, 79:10
**3E** [2] - 37:1, 69:14
**3rd** [1] - 49:2

## 4

**40** [1] - 36:7

## 5

**5:30** [1] - 49:4
**5th** [1] - 38:5

## 6

**6** [1] - 60:2
**6A** [8] - 17:7, 17:14, 21:9, 21:10, 21:19, 21:24, 25:2, 26:14

## 7

**7** [1] - 37:23
**7th** [6] - 37:8, 37:10, 37:14, 50:2, 59:10, 59:11

## 8

**8** [2] - 37:24, 49:15
**844** [1] - 1:20
**86** [1] - 86:10
**8th** [5] - 34:24, 37:13, 47:4, 52:8

## 9

**9** [2] - 35:19, 73:8
**9:00** [2] - 50:4, 54:19
**9th** [5] - 47:15, 47:21, 47:23, 48:1

## A

**a.m** [6] - 1:17, 50:4, 54:19, 59:14, 59:15, 59:20
**abide** [1] - 8:14
**able** [12] - 4:2, 23:17, 30:5, 34:2, 36:18, 42:2, 50:11, 82:3, 82:23, 83:2, 85:4
**above-captioned** [1] - 86:12
**absent** [1] - 60:12
**absolute** [1] - 61:3
**absorb** [1] - 59:9
**abstract** [1] - 76:3
**accept** [2] - 34:12, 55:24
**acceptable** [1] - 67:21
**access** [3] - 9:6, 25:16, 25:17
**according** [2] - 8:12, 35:14
**accordingly** [1] - 30:24
**account** [1] - 24:6
**accurate** [1] - 86:11
**action** [1] - 19:2
**actively** [1] - 8:21
**acts** [1] - 15:17
**add** [8] - 5:2, 5:14, 11:2, 31:1, 34:24, 49:13, 66:3, 66:17
**added** [1] - 26:17
**addition** [1] - 25:3
**additional** [2] - 18:11, 18:12

**address** [2] - 11:8, 11:22
**addressed** [1] - 20:12
**addresses** [1] - 14:6
**adjust** [2] - 48:14, 81:11
**adjustments** [1] - 30:20
**admission** [2] - 16:8, 16:18
**adopted** [1] - 72:14
**ADR** [3] - 60:3, 60:20, 61:6
**advance** [1] - 35:9
**advantage** [1] - 61:24
**advice** [5] - 7:10, 9:15, 13:16, 20:9, 22:10
**advisor** [1] - 6:19
**affect** [2] - 13:17, 33:13
**affects** [1] - 32:24
**affidavit** [9] - 5:8, 5:9, 5:20, 7:13, 8:12, 18:10, 24:5, 24:6, 24:20
**affidavits** [2] - 5:7, 6:6
**afterwards** [1] - 70:16
**ago** [1] - 11:21
**agree** [14] - 11:17, 21:13, 21:14, 23:21, 25:23, 32:16, 44:20, 45:2, 51:18, 62:8, 75:24, 83:4, 83:8, 85:7
**agreed** [8] - 11:24, 26:15, 72:24, 79:18, 81:1, 84:13, 84:16, 84:21
**agreeing** [1] - 72:22
**agreement** [6] - 8:4, 24:1, 25:15, 25:17, 60:9, 81:5
**agreements** [1] - 24:17
**aired** [1] - 25:22
**airplane** [1] - 4:2
**Alan** [1] - 4:1
**alert** [1] - 58:6
**alleged** [4] - 39:20, 39:22, 39:23, 43:12
**allocate** [1] - 75:17
**allotted** [1] - 68:20
**allow** [2] - 9:11, 11:6
**allowed** [5] - 24:23, 25:16, 76:5, 76:12, 82:13
**alternative** [3] - 21:1, 36:9, 70:12
**ambiguities** [1] - 55:18
**amenable** [1] - 50:16
**AMERICA** [2] - 1:6, 1:10
**amount** [5] - 34:9, 67:17, 68:9, 70:15, 73:24
**analysis** [3] - 35:3, 36:20, 42:5
**ANDERSON** [1] - 2:10
**Anderson** [1] - 3:23
**ANN** [1] - 2:13
**Ann** [2] - 3:24, 4:3
**answer** [4] - 43:19, 56:8, 56:22, 74:20
**answered** [1] - 44:1
**answering** [2] - 52:6, 57:12
**anticipation** [2] - 36:14, 74:14
**apart** [1] - 77:10
**apologize** [1] - 69:16
**appear** [1] - 15:16
**appearance** [5] - 14:19, 15:7, 15:10, 16:14, 18:5

**Exhibit 18**
**-483-**

**APPEARANCES** [1] - 2:1
**applications** [1] - 8:22
**applies** [1] - 40:9
**apply** [7] - 13:22, 14:11, 23:16, 25:1, 25:2, 43:3, 73:15
**applying** [1] - 17:2
**appreciate** [3] - 45:20, 52:22, 58:15
**approach** [3] - 74:19, 76:7, 81:24
**approaches** [1] - 76:22
**appropriate** [3] - 6:6, 53:7, 55:16
**April** [13] - 1:17, 5:6, 33:10, 33:11, 34:16, 35:19, 37:17, 37:21, 55:8, 57:6, 73:10, 86:12, 86:16
**arbitrary** [1] - 66:24
**arbitration** [1] - 19:7
**architect** [1] - 9:5
**argue** [1] - 70:11
**argument** [4] - 12:24, 13:9, 14:16, 52:10
**arguments** [3] - 63:12, 74:13, 74:14
**arise** [3] - 16:17, 48:5, 85:10
**arisen** [1] - 66:15
**arises** [1] - 48:6
**ARSHT** [1] - 2:2
**artificial** [1] - 50:1
**aspect** [2] - 13:12, 34:14
**aspects** [2] - 45:8, 54:3
**asserted** [1] - 42:7
**assisting** [1] - 24:15
**associates** [1] - 58:14
**assume** [2] - 30:19, 73:22
**assumed** [1] - 15:4
**assuming** [2] - 30:9, 37:6
**assumption** [5] - 39:11, 58:9, 72:1, 77:22, 80:16
**assumptions** [1] - 42:3
**attached** [1] - 5:7
**attempt** [2] - 29:23, 60:13
**attempts** [2] - 60:5, 60:9
**attorney** [1] - 17:21
**attractive** [1] - 20:14
**August** [29] - 37:24, 41:15, 44:8, 45:11, 45:14, 45:16, 45:23, 46:17, 46:19, 46:24, 47:4, 47:7, 47:14, 47:15, 47:21, 47:23, 47:24, 48:1, 49:2, 49:4, 62:16, 62:18, 63:1, 70:23, 72:8, 79:5, 80:9
**avenues** [3] - 15:1, 17:20, 17:24
**avoid** [1] - 82:20
**aware** [2] - 41:22, 61:14
**awkward** [1] - 69:3

**B**

**backtrack** [1] - 23:3
**bad** [1] - 38:9
**bag** [2] - 42:20, 55:3
**bar** [19] - 6:11, 6:12, 8:14, 9:10, 10:18, 11:12, 12:21, 13:10, 13:11, 13:21, 18:13, 18:14, 19:16, 19:17, 21:7, 23:11, 23:14, 26:5, 26:9
**barred** [1] - 12:17
**based** [3] - 11:5, 24:4, 63:13
**basis** [1] - 80:14
**BEAR** [1] - 2:5
**becomes** [2] - 15:12, 21:11
**BEFORE** [1] - 1:22
**begin** [1] - 3:9
**begins** [3] - 17:15, 56:17, 58:2
**behalf** [2] - 3:10, 16:1
**behind** [1] - 65:8
**belief** [1] - 30:2
**believes** [1] - 30:16
**bench** [1] - 27:19
**best** [3] - 40:24, 55:11, 68:22
**better** [8] - 6:12, 15:6, 25:4, 62:10, 63:11, 71:1, 71:5, 75:16
**Better** [1] - 58:6
**between** [7] - 11:4, 32:20, 39:19, 39:21, 60:5, 60:11, 66:13
**beyond** [2] - 7:1, 29:11
**big** [1] - 74:19
**biggest** [1] - 53:23
**bit** [12] - 7:21, 17:18, 25:4, 31:13, 38:1, 42:2, 42:19, 53:20, 54:2, 62:15, 69:3, 77:16
**blanket** [4] - 78:8, 78:14, 78:21
**blanks** [1] - 28:14
**bleeds** [1] - 48:6
**blend** [1] - 30:5
**Blocker** [1] - 5:9
**Blocker's** [2] - 5:17, 24:6
**blueprint** [1] - 68:6
**BOBLINGEN** [1] - 1:8
**borders** [2] - 51:14, 51:16
**boy** [1] - 59:8
**Boy** [1] - 61:3
**BRIAN** [1] - 2:13
**Brian** [15] - 3:23, 5:11, 7:22, 18:17, 26:2, 31:8, 31:13, 40:23, 41:5, 61:8, 71:12, 75:6, 80:9, 84:12, 85:19
**brief** [4] - 56:20, 57:12, 66:16, 74:11
**briefing** [6] - 32:21, 36:19, 41:16, 58:16, 73:5, 73:6
**briefly** [2] - 13:3, 50:6
**briefs** [4] - 35:10, 52:6, 53:16, 73:15
**bring** [1] - 66:17
**brings** [1] - 58:17
**broader** [1] - 22:11
**broke** [1] - 73:21
**brought** [2] - 13:2, 77:1
**build** [2] - 32:10, 33:21
**built** [3] - 33:18, 34:16, 46:7
**bunch** [2] - 22:21, 77:18
**business** [12] - 6:12, 6:19, 9:10, 9:12, 12:22, 19:6, 19:17, 20:6, 22:19, 25:8, 26:8, 26:9
**BY** [6] - 2:3, 2:6, 2:6, 2:10, 2:13, 2:13
**Bye** [1] - 85:21

**bye** [1] - 85:21
**Bye-bye** [1] - 85:21

**C**

**C.A** [1] - 1:4
**calculation** [1] - 57:11
**calendar** [1] - 57:19
**California** [1] - 3:13
**cannot** [3] - 19:4, 19:11, 22:19
**capacity** [1] - 61:6
**captioned** [2] - 19:2, 86:12
**care** [2] - 14:2, 22:1
**case** [44] - 4:7, 8:11, 14:9, 14:19, 15:13, 17:22, 22:9, 23:13, 23:18, 24:23, 27:2, 28:21, 29:10, 30:7, 30:18, 31:10, 31:20, 32:11, 33:1, 33:10, 35:7, 35:21, 36:5, 36:6, 37:17, 38:13, 38:19, 38:21, 38:23, 39:9, 39:16, 40:10, 40:12, 41:23, 44:22, 51:19, 58:13, 68:2, 68:15, 68:24, 71:2, 74:9, 75:4
**cases** [4] - 29:13, 30:6, 31:22, 69:6
**Castle** [1] - 86:2
**causes** [1] - 49:6
**celebrated** [1] - 58:10
**Cert** [1] - 86:21
**certain** [6] - 6:13, 6:15, 7:14, 33:12, 62:2, 69:19
**certainly** [10] - 8:13, 19:12, 20:1, 28:13, 39:15, 42:23, 43:3, 61:13, 61:23, 72:18
**certainty** [1] - 79:20
**CERTIFICATE** [1] - 86:5
**certified** [1] - 17:23
**Certified** [1] - 86:8
**certify** [2] - 16:7, 86:9
**cetera** [1] - 19:8
**Chambers** [1] - 1:18
**chance** [1] - 57:16
**change** [1] - 20:2
**changed** [2] - 7:2, 8:7, 73:16
**changes** [1] - 27:5
**changing** [2] - 10:2, 35:20
**choice** [1] - 60:19
**choose** [1] - 15:1
**Christmas** [1] - 63:20
**circumstance** [1] - 73:18
**claim** [39] - 11:15, 11:16, 27:14, 31:4, 32:22, 33:2, 36:14, 36:15, 37:10, 38:23, 40:2, 40:5, 40:15, 40:20, 41:1, 41:4, 41:16, 41:19, 42:24, 43:8, 43:13, 43:15, 44:24, 46:12, 49:15, 49:16, 49:21, 50:3, 50:15, 50:19, 51:12, 52:10, 53:17, 54:11, 61:1, 70:10, 71:3, 71:5, 73:15
**Claim** [4] - 1:12, 1:15, 2:8, 2:15
**claims** [4] - 19:8, 40:1, 54:24
**clarified** [1] - 25:4
**clear** [2] - 25:5, 74:20
**clearer** [1] - 75:8
**clearly** [1] - 6:19

**Exhibit 18**
**-484-**

**client** [4] - 8:23, 24:16, 61:11, 61:16
**clients** [1] - 35:5
**close** [1] - 46:6
**closely** [1] - 15:20
**closeness** [2] - 30:3, 30:4
**closer** [1] - 76:16
**Coast** [1] - 65:11
**combination** [2] - 54:11, 72:11
**combine** [1] - 74:12
**comfort** [1] - 7:12
**coming** [3] - 23:5, 52:13, 83:24
**comments** [5] - 29:18, 44:19, 73:20, 75:19, 75:21
**commercial** [1] - 19:7
**commingling** [1] - 19:20
**committee** [1] - 29:19
**Committee** [1] - 29:21
**companies** [1] - 24:17
**compartmentalize** [1] - 7:9
**compete** [1] - 8:19
**competitive** [11] - 6:1, 6:15, 6:20, 9:15, 13:15, 13:16, 14:4, 18:20, 22:7, 22:20, 25:8
**complete** [4] - 36:19, 53:16, 81:10, 83:1
**completed** [10] - 11:13, 35:11, 44:11, 77:7, 79:5, 79:14, 80:1, 81:21, 82:7
**completely** [3] - 10:19, 21:13, 74:6
**completion** [1] - 79:1
**complicated** [1] - 54:3
**compressed** [1] - 81:8
**compromise** [1] - 19:24
**conceive** [1] - 43:16
**concern** [5] - 9:1, 14:2, 14:17, 33:15, 70:13
**concerned** [8] - 8:17, 8:18, 24:23, 32:23, 35:17, 80:21, 81:13, 81:23
**concerning** [5] - 4:23, 12:8, 18:7, 60:2, 66:18
**Concerning** [1] - 18:6
**concerns** [6] - 13:18, 36:21, 66:15, 73:17, 84:1, 84:2
**concession** [1] - 22:3
**concluded** [1] - 85:22
**conclusion** [1] - 76:11
**concurrently** [1] - 55:14
**conference** [36] - 28:23, 32:11, 34:23, 35:8, 38:6, 38:18, 40:17, 40:24, 45:5, 45:13, 46:3, 49:18, 55:6, 58:24, 59:4, 59:12, 60:4, 62:16, 62:18, 62:20, 62:21, 62:24, 63:1, 63:5, 63:23, 64:1, 64:10, 64:16, 65:22, 66:3, 66:5, 66:6, 66:9, 67:20, 69:2
**conferring** [2] - 29:9, 30:8
**confidential** [5] - 8:5, 22:18, 23:19, 24:24
**confirmation** [2] - 29:14, 30:5
**consider** [5] - 18:10, 32:19, 50:22, 76:4, 76:15

**consideration** [1] - 46:5
**consistent** [2] - 40:6, 76:19
**construction** [25] - 27:14, 32:22, 33:2, 37:11, 38:23, 39:7, 39:17, 40:5, 40:20, 41:1, 41:4, 41:16, 42:24, 43:13, 45:1, 49:21, 50:4, 50:15, 50:20, 52:10, 53:17, 54:12, 61:1, 70:10, 73:15
**constructions** [1] - 40:15
**construe** [1] - 41:20
**construed** [3] - 40:8, 43:17, 49:16
**consult** [1] - 61:10
**contacts** [1] - 25:6
**contemplated** [1] - 28:13
**contemporaneously** [1] - 52:7
**contention** [2] - 44:12, 84:13
**contentions** [3] - 32:13, 43:20, 45:3
**context** [2] - 19:21
**continuations** [2] - 8:21, 8:22
**continue** [1] - 20:13
**conveyed** [1] - 5:17
**copy** [1] - 4:16
**CORPORATION** [4] - 1:3, 1:7, 1:11, 1:14
**correct** [12] - 4:5, 8:3, 14:20, 14:21, 15:2, 16:2, 16:8, 27:10, 27:22, 27:23, 28:5, 58:21
**CORROON** [1] - 2:10
**counsel** [40] - 4:12, 5:1, 6:4, 10:2, 15:18, 15:21, 16:1, 16:22, 16:23, 16:24, 17:16, 17:21, 17:22, 20:20, 22:12, 24:4, 24:15, 26:22, 27:7, 29:20, 30:16, 33:14, 35:4, 35:11, 52:13, 52:24, 55:6, 57:5, 57:9, 59:7, 60:6, 64:23, 65:23, 65:24, 67:1, 68:5, 68:12, 79:21, 84:7, 85:9
**Counsel** [2] - 2:8, 2:14
**count** [2] - 57:5, 57:8
**Counter** [4] - 1:12, 1:15, 2:8, 2:15
**Counter-Claim** [4] - 1:12, 1:15, 2:8, 2:15
**County** [1] - 86:2
**couple** [3] - 11:21, 42:8, 46:6
**course** [1] - 29:19
**court** [1] - 4:14
**COURT** [133] - 1:1, 3:1, 3:8, 3:16, 3:18, 3:21, 4:3, 4:6, 4:10, 5:12, 7:20, 9:17, 10:5, 10:20, 11:14, 12:1, 12:4, 12:24, 13:24, 14:15, 14:22, 15:24, 16:4, 16:12, 16:19, 17:4, 17:9, 17:13, 17:17, 18:6, 21:5, 24:3, 26:6, 26:11, 26:24, 27:5, 27:18, 28:1, 28:7, 28:18, 29:2, 31:12, 32:7, 32:16, 41:3, 41:12, 42:11, 43:7, 44:5, 44:18, 45:9, 46:8, 46:15, 46:18, 46:22, 47:5, 47:10, 47:13, 47:22, 48:15, 48:24, 49:12, 49:24, 50:8, 50:19, 51:3, 51:8, 51:15, 51:23, 52:5, 52:21, 52:23, 53:12, 54:6, 54:10, 54:15, 54:18, 55:5, 55:22, 56:2, 56:7, 56:10, 56:13, 57:12, 57:15, 57:18, 57:22, 58:3, 58:8, 58:22, 59:23, 61:12, 61:18, 62:4, 62:14, 63:2, 64:4, 65:4, 65:12, 65:15, 65:20, 67:16,

67:21, 68:1, 69:7, 69:12, 69:15, 69:20, 70:1, 70:21, 71:23, 72:10, 72:19, 73:3, 74:5, 75:18, 77:8, 78:3, 78:6, 79:3, 79:9, 79:21, 80:2, 80:7, 80:19, 81:22, 82:21, 83:11, 84:6, 84:24, 85:6, 85:8, 85:21
**Court** [36] - 1:22, 5:22, 11:6, 11:9, 13:2, 15:1, 15:6, 15:22, 16:5, 16:15, 17:20, 17:23, 29:5, 29:12, 30:2, 33:19, 36:20, 39:6, 40:13, 41:5, 41:20, 46:24, 49:21, 51:5, 51:7, 51:24, 55:24, 63:4, 63:14, 67:15, 68:4, 76:3, 76:17, 84:1, 84:23
**Court's** [5] - 14:23, 20:24, 33:8, 39:6, 73:7
**covered** [3] - 25:16, 60:1, 84:6
**cowboying** [1] - 72:18
**crazy** [1] - 52:15
**created** [1] - 5:18
**CSR** [1] - 86:21
**curiosity** [1] - 72:10
**curious** [2] - 31:2, 66:21
**current** [2] - 8:16, 21:20
**cut** [6] - 33:9, 37:16, 38:3, 71:19, 71:21, 72:8
**cut-off** [6] - 33:9, 37:16, 38:3, 71:19, 71:21, 72:8

---

**D**

**dance** [1] - 68:18
**date** [32] - 28:2, 29:1, 29:3, 33:9, 37:14, 37:15, 37:16, 38:3, 45:24, 46:2, 47:24, 50:1, 50:2, 57:9, 58:10, 58:13, 58:23, 59:5, 62:19, 62:21, 62:24, 63:8, 66:20, 66:24, 67:7, 69:19, 69:22, 69:23, 70:3, 70:4, 70:5
**dated** [1] - 5:6
**dates** [19] - 29:8, 29:9, 30:11, 30:13, 30:21, 34:2, 34:9, 45:9, 48:13, 54:16, 57:4, 57:5, 66:21, 69:4, 71:6, 76:17, 81:4, 81:6, 81:11
**DAVID** [1] - 2:10
**David** [1] - 3:22
**days** [18] - 30:23, 33:8, 34:9, 37:5, 46:6, 46:11, 55:9, 57:6, 57:9, 58:16, 58:17, 68:9, 68:13, 69:18, 70:13, 70:15, 71:9
**deal** [2] - 11:17, 84:18
**dealing** [4] - 27:13, 27:14, 45:18, 82:5
**December** [13] - 37:8, 37:9, 38:3, 50:2, 53:8, 53:14, 54:20, 59:1, 63:19, 66:13
**decent** [2] - 68:12, 70:15
**decided** [1] - 4:24
**deciding** [2] - 46:12, 61:1
**decision** [22] - 6:1, 6:15, 6:20, 9:15, 14:4, 18:20, 22:7, 22:20, 25:8, 33:3, 33:9, 34:21, 35:7, 37:6, 37:7, 62:3, 63:4, 63:7, 63:10, 70:7, 70:14
**decisions** [3] - 13:15, 13:17, 35:5

**Exhibit 18**
**-485-**

4

**declaration** [3] - 5:17, 5:24, 6:24
**Defendant** [3] - 1:15, 2:8, 2:14
**Defendants** [1] - 1:9
**defense** [1] - 65:24
**defer** [3] - 61:8, 61:20, 75:6
**definition** [1] - 10:1
**DELAWARE** [1] - 1:1
**Delaware** [2] - 1:20, 86:1
**dependent** [1] - 35:9
**deposition** [3] - 77:19, 78:22, 83:18
**depositions** [21] - 44:14, 71:20, 72:2, 72:8, 77:2, 77:19, 77:23, 78:12, 78:14, 78:17, 78:18, 78:24, 79:12, 80:1, 80:8, 80:20, 81:10, 81:19, 81:20, 82:4, 82:14
**designated** [2] - 10:23, 14:5
**desire** [2] - 32:4, 54:1
**Despite** [1] - 17:19
**despite** [1] - 14:13
**detailed** [1] - 24:9
**determination** [1] - 33:2
**differences** [2] - 25:23, 60:10
**different** [6] - 5:19, 12:7, 36:1, 42:9, 42:10, 43:4
**difficult** [3] - 7:9, 20:24, 43:19
**difficulty** [1] - 9:3
**diminished** [1] - 24:22
**direct** [2] - 17:18, 20:20
**direction** [1] - 71:1
**directly** [2] - 30:6, 33:13
**director** [1] - 21:11
**disadvantage** [3] - 77:16, 81:17, 83:2
**disagreement** [1] - 71:15
**disclose** [1] - 21:21
**disclosed** [3] - 7:7, 19:10, 21:22
**disclosing** [1] - 8:18
**disclosure** [4] - 14:10, 14:17, 21:19, 77:3
**discovery** [13] - 27:8, 27:9, 33:4, 38:3, 38:10, 45:7, 46:7, 71:18, 71:21, 72:8, 77:6, 79:12
**discuss** [6] - 47:8, 51:2, 51:13, 62:19, 62:21, 73:1
**discussed** [6] - 10:10, 13:3, 28:10, 60:3, 67:19, 67:22
**discussion** [9] - 11:21, 44:10, 49:3, 49:14, 66:4, 66:7, 70:23, 71:3
**dispositive** [10] - 27:15, 33:10, 34:15, 35:19, 35:21, 36:6, 37:17, 55:8, 68:3, 73:9
**dispositives** [1] - 35:7
**dispute** [2] - 31:5, 72:24
**disputed** [1] - 39:14
**disputes** [1] - 43:22
**dissimilar** [2] - 24:14, 25:13
**DISTRICT** [2] - 1:1, 1:1
**District** [1] - 1:22
**divide** [2] - 75:11, 75:16
**divided** [1] - 74:18
**document** [17] - 46:6, 48:19, 71:18,

71:21, 72:7, 77:6, 77:14, 78:10, 79:2, 79:4, 79:13, 79:24, 81:16, 81:19, 82:8, 82:9, 83:7
**documents** [26] - 8:5, 9:3, 9:6, 9:11, 9:12, 9:14, 12:16, 15:16, 20:22, 21:16, 23:8, 23:11, 23:12, 24:2, 24:24, 26:3, 26:4, 26:8, 44:13, 72:4, 77:21, 77:23, 78:15, 78:16, 78:19, 83:10
**domino** [1] - 34:3
**done** [17] - 32:21, 33:5, 38:10, 38:14, 55:13, 55:14, 56:3, 58:16, 67:14, 75:2, 77:4, 82:2, 82:7, 82:10, 82:12, 82:24, 83:3
**dovetail** [1] - 70:17
**down** [6] - 7:7, 9:17, 24:4, 64:11, 64:13, 68:8
**draft** [1] - 71:13
**drafted** [4] - 7:18, 11:4, 22:17, 25:14
**dropped** [1] - 32:14
**dual** [1] - 61:17
**due** [5] - 49:2, 57:13, 59:5, 66:11, 76:16
**during** [13] - 31:20, 34:1, 45:13, 47:14, 47:23, 48:6, 48:16, 48:17, 60:3, 62:16, 63:20, 64:15, 69:1

## E

**earliest** [2] - 37:14, 37:15
**early** [8] - 28:17, 38:1, 41:23, 46:16, 47:14, 47:22, 48:19, 72:7
**easily** [1] - 85:5
**East** [1] - 65:11
**Eastern** [1] - 49:4
**easy** [1] - 35:1
**effect** [2] - 34:3, 80:18
**eight** [2] - 36:11, 65:16
**either** [7] - 9:8, 23:23, 39:12, 39:24, 41:7, 60:6, 74:19
**ELECTRONICS** [2] - 1:6, 1:10
**employee** [1] - 21:12
**encouraging** [1] - 83:16
**end** [9] - 8:6, 11:7, 36:10, 56:15, 68:17, 74:18, 74:22
**enforce** [1] - 17:24
**engage** [1] - 22:7
**engaged** [2] - 6:19, 8:20
**engaging** [1] - 18:20
**entered** [1] - 14:19
**entire** [1] - 17:3
**entitled** [1] - 76:21
**entry** [2] - 15:7, 16:13
**equitable** [1] - 83:9
**especially** [1] - 31:11
**ESQ** [6] - 2:3, 2:6, 2:6, 2:10, 2:13, 2:13
**estimate** [1] - 68:22
**et** [1] - 19:8
**ethics** [1] - 18:1
**evening** [2] - 48:7
**event** [3] - 9:16, 34:10, 67:1

**example** [8] - 17:10, 17:11, 40:7, 40:9, 53:2, 60:17, 74:12, 74:13
**examples** [1] - 22:21
**exasperating** [1] - 57:7
**excellent** [1] - 53:10
**except** [1] - 60:2
**exchange** [8] - 41:14, 44:12, 45:2, 46:14, 46:19, 48:19, 79:2, 84:14
**exchanged** [3] - 11:4, 43:20, 78:15
**exchanges** [1] - 48:10
**exchanging** [2] - 51:11, 83:10
**excludes** [1] - 21:10
**exclusion** [1] - 10:1
**Excuse** [1] - 9:18
**exercise** [1] - 15:1
**existed** [1] - 60:12
**expect** [2] - 67:2, 78:15
**expected** [1] - 74:1
**expecting** [1] - 53:15
**expert** [5] - 27:8, 27:9, 33:4, 69:14, 70:9
**experts** [1] - 37:16
**explain** [1] - 76:8
**explained** [1] - 68:12
**extended** [1] - 6:24
**extent** [5] - 14:24, 24:13, 34:7, 71:8, 82:6
**extra** [2] - 55:16, 66:22
**extremely** [1] - 8:23

## F

**face** [2] - 6:3, 63:8
**fact** [8] - 8:11, 8:24, 21:9, 27:7, 38:3, 38:10, 45:2, 77:10
**factor** [1] - 35:12
**factors** [1] - 35:3
**facts** [2] - 11:23, 76:9
**fair** [3] - 72:5, 72:14, 83:9
**fairly** [3] - 47:17, 71:15, 83:1
**fall** [2] - 43:14, 68:2
**families** [3] - 42:10, 42:15, 53:4
**family** [1] - 42:8
**fan** [1] - 74:19
**far** [8] - 24:22, 31:22, 32:2, 35:16, 36:23, 39:16, 77:12, 78:12
**Farnan** [5] - 28:21, 30:3, 80:3, 80:5, 81:2
**Farnan's** [1] - 29:11, 30:3, 30:6, 71:22, 72:12, 72:16, 78:2, 79:11, 81:24
**fashion** [1] - 56:1, 56:4
**fast** [2] - 82:17, 83:23
**favor** [1] - 10:6
**features** [1] - 8:19
**feelings** [1] - 48:20
**fence** [1] - 55:4
**few** [2] - 46:11, 78:23
**fewer** [1] - 32:1
**figure** [2] - 84:19, 85:4
**figured** [1] - 82:21

Exhibit 18
-486-

**file** [13] - 16:18, 18:5, 36:8, 55:20, 55:21, 55:22, 56:4, 56:16, 56:19, 59:5, 64:6, 76:12

**filed** [8] - 34:17, 34:19, 34:20, 36:6, 40:7, 47:18, 52:7, 55:15

**filing** [3] - 8:21, 60:7

**fill** [1] - 29:4

**finalize** [1] - 84:20

**financial** [6] - 12:23, 13:12, 18:13, 21:15, 23:8, 23:11

**Fine** [1] - 3:18

**fine** [16] - 7:3, 48:22, 49:8, 49:10, 52:19, 54:13, 54:15, 59:19, 59:20, 59:21, 59:24, 61:12, 61:18, 65:18, 82:16, 82:19

**finished** [4] - 77:13, 81:14, 81:15, 82:8

**firm** [3] - 16:14, 16:22, 17:3

**firms** [1] - 16:24

**first** [11] - 21:19, 24:2, 31:18, 36:24, 41:2, 48:2, 48:6, 53:3, 65:22, 66:5, 77:23

**First** [1] - 24:4

**fit** [1] - 72:17

**fits** [1] - 85:3

**five** [2] - 51:20, 76:7

**flat** [1] - 13:18

**fly** [1] - 57:11

**focus** [2] - 45:7, 54:23

**follow** [2] - 15:5, 46:3

**following** [2] - 53:6, 55:21

**follows** [1] - 35:15

**FOR** [1] - 1:1

**foregoing** [1] - 86:10

**forget** [1] - 56:19

**forgot** [2] - 62:17, 73:13

**formal** [1] - 79:1

**format** [1] - 60:17

**forward** [2] - 20:4, 21:2

**four** [1] - 42:15

**fourth** [1] - 58:1

**frame** [5] - 34:11, 35:2, 41:9, 41:15, 44:8

**framed** [1] - 62:10

**frames** [3] - 33:12, 34:8, 35:17

**frankly** [1] - 50:13, 70:2, 76:4

**frequently** [1] - 67:7

**Friday** [3] - 1:17, 45:15, 52:18

**front** [1] - 56:24

**fruitful** [1] - 62:1

**full** [2] - 15:22, 43:20

**fully** [2] - 17:24, 53:15

**future** [4] - 62:21, 76:24, 78:24, 84:23

## G

**game** [2] - 20:2, 36:17

**geared** [1] - 70:9

**general** [3] - 41:8, 61:21, 76:8

**generalize** [1] - 42:21

**generally** [2] - 35:23, 67:5

**given** [4] - 7:10, 8:9, 8:15, 31:18

**glad** [1] - 18:17

**GMBH** [1] - 1:8

**great** [3] - 11:19, 39:1, 85:14

**greatly** [1] - 24:21

**Grimaldi** [1] - 4:1

**guess** [1] - 73:14

**guidance** [1] - 30:23

**guide** [1] - 82:18

**guided** [1] - 28:20

**guiding** [2] - 82:16, 83:14

## H

**hac** [2] - 16:8, 16:18

**half** [3] - 50:18, 52:16, 81:9

**hammered** [1] - 72:15

**hand** [1] - 86:16

**handle** [1] - 55:12

**handled** [1] - 12:11

**happy** [6] - 7:19, 18:4, 53:1, 53:4, 61:15, 69:10

**hard** [5] - 43:22, 44:4, 82:17, 83:10, 83:22

**hate** [2] - 61:8, 75:6

**haunt** [1] - 75:22

**Hawkins** [1] - 4:15

**head** [1] - 68:18

**head's** [1] - 84:11

**HEANEY** [14] - 2:3, 3:4, 3:19, 16:3, 16:9, 16:17, 69:10, 69:13, 69:16, 69:24, 70:18, 71:10, 79:23, 80:5

**Heaney** [2] - 3:20, 15:24

**hear** [3] - 10:14, 35:24, 83:20

**heard** [5] - 9:1, 9:23, 18:9, 18:18, 63:11

**hearing** [12] - 10:24, 14:8, 14:12, 29:14, 29:17, 37:10, 41:1, 44:3, 50:3, 52:11, 54:11, 63:13

**Heather** [3] - 75:20, 86:7, 86:21

**heavy** [1] - 8:9

**heck** [1] - 40:13

**held** [2] - 66:20, 67:20

**help** [2] - 23:12, 79:22

**helpful** [1] - 32:17

**hereby** [1] - 86:9

**hereunto** [1] - 86:15

**hi** [1] - 3:16

**Hi** [1] - 3:21

**hiccup** [2] - 84:17, 85:1

**highlight** [2] - 75:19, 75:21

**highly** [4] - 8:5, 22:18, 23:18, 24:24

**historical** [1] - 8:15

**history** [2] - 12:9, 29:11

**hmm** [7] - 32:7, 42:11, 46:15, 67:16, 71:23, 78:3

**hone** [1] - 68:8

**honest** [1] - 74:7

**Honor** [53] - 3:3, 3:4, 3:5, 3:7, 5:10, 6:7, 9:22, 16:3, 18:3, 18:16, 21:3,

21:18, 22:24, 27:4, 27:17, 27:24, 28:6, 28:9, 28:19, 31:7, 40:22, 42:1, 43:18, 47:12, 47:20, 48:23, 49:11, 50:5, 52:20, 53:11, 53:22, 55:3, 55:10, 59:19, 61:5, 61:7, 64:3, 65:1, 65:3, 65:19, 67:12, 69:11, 71:11, 75:5, 79:8, 79:15, 79:23, 80:23, 84:4, 84:5, 84:11, 85:16, 85:18

**HONORABLE** [1] - 1:22

**hope** [10] - 27:20, 29:16, 31:3, 31:8, 31:15, 35:6, 37:20, 50:9, 53:15, 74:11

**hopeful** [1] - 50:11

**Hopefully** [2] - 32:14, 84:24

**hopefully** [7] - 26:23, 30:4, 49:20, 57:16, 64:18, 66:12, 68:6

**hoping** [3] - 26:24, 42:13, 64:11

**hour** [1] - 65:8

**HOWREY** [1] - 2:12

**huge** [1] - 82:10

## I

**idea** [12] - 38:9, 39:1, 39:2, 41:21, 43:24, 44:24, 45:3, 45:4, 60:10, 68:13, 71:1, 71:6

**identical** [1] - 42:17

**identification** [3] - 37:16, 40:20, 41:14

**ignorance** [1] - 13:5

**imagine** [2] - 52:24, 64:17

**implicates** [1] - 22:8

**import** [1] - 80:11

**impose** [2] - 41:18, 76:18

**imposed** [1] - 35:21

**imposing** [2] - 35:24, 76:20

**impression** [3] - 25:5, 25:11

**IN** [2] - 1:1, 86:15

**inadequate** [1] - 83:8

**inadvertent** [3] - 14:9, 14:17, 19:19

**inadvertently** [2] - 22:9, 71:14

**include** [4] - 49:13, 66:4, 66:6, 80:6

**included** [2] - 25:15, 32:18

**includes** [2] - 30:18, 54:21

**including** [5] - 5:7, 19:5, 28:23, 29:7, 43:21

**inclusive** [1] - 86:10

**incorrectly** [1] - 39:12

**incredibly** [1] - 20:7

**indicate** [1] - 4:18

**indicated** [1] - 24:20

**indicating** [1] - 54:20

**individual** [2] - 36:13, 36:15

**inequity** [1] - 82:19

**infinite** [1] - 17:6

**inform** [1] - 42:4

**information** [15] - 5:16, 6:14, 6:23, 7:5, 7:6, 18:19, 19:10, 19:20, 20:16, 20:18, 21:22, 22:8, 22:19, 25:18, 55:5

**informed** [1] - 41:7

**infringement** [1] - 74:13

**initial** [1] - 77:3

**initiate** [1] - 66:1

**Exhibit 18**

**-487-**

**initiated** [1] - 65:23
**input** [1] - 44:16
**insinuated** [1] - 83:7
**insures** [1] - 15:22
**intelligently** [1] - 44:16
**intended** [4] - 19:16, 19:18, 20:1, 20:3
**intent** [1] - 27:17
**intentionally** [1] - 19:13
**interest** [3] - 60:15, 60:18, 63:3
**interested** [2] - 61:21, 61:23
**interesting** [1] - 58:4
**interim** [9] - 21:8, 37:22, 38:17, 45:10, 45:24, 47:18, 63:23, 66:10
**internally** [1] - 9:5
**intimate** [1] - 25:9
**intimately** [1] - 32:23
**introduce** [1] - 4:13
**introductions** [1] - 3:9
**invalidity** [2] - 43:21, 75:15
**involved** [5] - 13:13, 24:11, 24:19, 27:3
**involvement** [6] - 8:10, 12:9, 12:10, 24:13, 24:21, 25:7
**issuance** [2] - 33:8, 37:5
**issue** [28] - 4:22, 10:3, 10:17, 11:18, 13:4, 13:6, 16:10, 17:2, 18:4, 20:3, 20:4, 32:1, 35:18, 36:24, 39:3, 40:20, 40:21, 41:14, 45:1, 61:17, 71:12, 72:23, 73:4, 74:3, 75:7, 76:8, 77:1, 81:3
**issued** [1] - 37:7
**issues** [15] - 4:12, 4:20, 10:3, 10:8, 11:11, 15:11, 32:14, 42:24, 62:9, 73:21, 74:18, 75:13, 75:14, 75:15, 76:9
**Item** [1] - 60:2
**itself** [1] - 64:16

## J

**January** [7] - 37:13, 37:14, 63:22, 64:15, 67:20, 69:1
**Jensen** [35] - 3:15, 4:23, 5:8, 5:19, 5:21, 6:18, 7:7, 9:4, 9:8, 10:12, 10:15, 11:1, 11:17, 12:3, 12:8, 12:14, 14:11, 14:18, 15:19, 16:6, 16:16, 18:5, 20:5, 20:15, 20:19, 21:7, 21:15, 22:4, 23:6, 23:10, 23:12, 23:17, 23:22, 24:8, 25:7
**JENSEN** [1] - 3:17
**Jensen's** [2] - 18:10, 24:5
**Joe** [2] - 7:21, 61:4
**joining** [1] - 4:1
**joint** [1] - 66:10
**JOSEPH** [1] - 2:6
**Joseph** [1] - 3:12
**judge** [2] - 30:15, 60:24, 68:14
**Judge** [23] - 1:22, 3:1, 28:21, 29:6, 29:11, 29:13, 30:3, 30:4, 30:6, 30:8, 60:21, 60:22, 71:21, 72:12, 72:16, 76:6, 78:1, 79:11, 80:2, 80:5, 81:2, 81:24
**judges** [1] - 29:8
**judgment** [11] - 36:12, 36:13, 36:15,

55:13, 56:17, 61:2, 73:22, 74:4, 74:23, 75:2, 76:13
**judgments** [1] - 56:1
**Judiciary** [1] - 29:20
**JULIA** [1] - 2:3
**Julie** [5] - 3:19, 3:21, 69:8, 69:22, 85:11
**July** [1] - 35:2
**June** [3] - 35:1, 58:19
**jurisdiction** [1] - 15:22
**jury** [2] - 27:20, 27:21

## K

**keep** [4] - 29:17, 30:12, 59:18, 72:5
**kind** [8] - 9:4, 18:22, 24:12, 32:5, 68:3, 69:9, 72:11, 72:16
**kinds** [1] - 15:10
**King** [1] - 1:20
**Knobbe** [1] - 20:18
**KNOBBE** [1] - 2:5
**knowing** [2] - 42:24, 46:2
**known** [1] - 38:20
**knows** [1] - 5:22

## L

**L's** [2] - 4:9, 4:10
**labor** [1] - 69:8
**laboring** [1] - 82:8
**lack** [1] - 6:11
**laid** [1] - 73:17
**language** [10] - 7:18, 9:24, 11:7, 22:13, 22:15, 25:21, 26:22, 29:4, 72:14
**large** [2] - 24:12, 39:20
**last** [8] - 4:7, 6:8, 13:2, 13:3, 51:19, 55:15, 68:4, 72:23
**latch** [1] - 13:8
**Late** [1] - 47:20
**late** [4] - 33:11, 37:17, 44:6, 45:19
**law** [1] - 16:24
**lawsuit** [4] - 13:22, 60:7, 60:8, 60:12
**lawyer** [1] - 15:13
**lawyers** [2] - 15:11, 20:17
**learn** [1] - 78:18
**learned** [2] - 7:10, 19:20
**least** [6] - 30:15, 62:13, 64:19, 66:16, 66:22, 74:24
**leave** [8] - 37:19, 48:9, 50:17, 59:23, 70:20, 71:9, 76:23, 83:21
**left** [3] - 25:11, 38:22, 84:8
**legal** [1] - 19:7
**length** [2] - 32:15, 67:18
**less** [5] - 32:2, 33:14, 64:8, 67:7, 68:18
**letter** [1] - 66:16
**letters** [3] - 5:4, 5:5
**licenses** [1] - 24:16
**lie** [1] - 43:23
**life** [2] - 33:24, 34:1
**light** [2] - 6:5, 42:2

**likely** [5] - 29:12, 30:1, 33:24, 38:20, 43:1
**limitation** [6] - 25:13, 39:5, 41:19, 50:14, 71:4, 80:3
**limitations** [3] - 35:21, 35:23, 76:18
**limited** [4] - 19:6, 50:12, 53:18, 73:23
**limiting** [1] - 76:4
**line** [3] - 3:10, 3:23, 30:24, 62:7
**lines** [2] - 19:17, 25:24
**list** [1] - 46:14
**litigation** [8] - 6:16, 7:14, 15:16, 19:7, 20:9, 20:19, 20:20, 22:22
**live** [2] - 64:8, 82:18
**LLP** [4] - 2:2, 2:5, 2:10, 2:12
**load** [2] - 30:7, 30:18
**local** [8] - 16:1, 16:16, 17:22, 35:14, 35:15, 35:20, 73:7, 73:10
**Local** [1] - 79:21
**logic** [1] - 74:22
**look** [7] - 33:22, 36:22, 56:5, 64:9, 64:14, 64:22, 76:10
**looking** [7] - 22:3, 34:6, 47:13, 49:24, 50:3, 59:3, 63:21
**lose** [1] - 9:19

## M

**magic** [1] - 45:23
**Magistrate** [3] - 1:22, 29:6, 60:22
**maintain** [2] - 9:7, 20:13
**majority** [1] - 43:6
**MARIE** [1] - 2:13
**Marie** [2] - 3:24, 4:4
**marketing** [1] - 9:13
**Markman** [16] - 27:9, 32:21, 33:8, 37:5, 37:6, 37:20, 52:11, 62:3, 62:13, 63:7, 63:9, 63:13, 63:17, 70:6, 70:10, 70:14
**marks** [1] - 17:16
**MARTENS** [1] - 2:5
**MARY** [1] - 1:22
**Masimo** [25] - 3:11, 5:23, 6:2, 7:8, 8:20, 9:15, 13:18, 16:1, 20:1, 20:10, 22:10, 24:14, 25:6, 39:22, 39:23, 40:7, 42:12, 48:23, 49:10, 51:20, 60:11, 61:5, 65:2, 65:8, 81:8
**MASIMO** [2] - 1:3, 1:14
**Masimo's** [6] - 6:4, 7:15, 8:20, 20:24, 22:12, 62:7
**material** [6] - 10:23, 19:4, 19:13, 20:8, 74:1, 76:9
**materials** [6] - 12:20, 12:22, 12:23, 14:5, 18:24, 23:19
**math** [1] - 58:20
**matter** [4] - 7:24, 23:7, 27:18, 86:13
**matter's** [1] - 29:5
**mean** [16] - 15:19, 23:1, 23:22, 25:1, 30:11, 48:10, 52:10, 65:16, 72:21, 83:20
**means** [3] - 16:24, 22:21, 58:23
**measure** [1] - 14:8

Exhibit 18
-488-

**mediation** [2] - 60:17, 66:8
**mediations** [1] - 61:15
**mediator** [1] - 61:3
**MEDIZINE** [1] - 1:7
**meet** [1] - 34:2
**members** [1] - 29:18
**Memorial** [4] - 57:20, 57:23, 58:9, 58:13
**mentioned** [1] - 13:9
**mess** [1] - 56:23
**methods** [1] - 54:23
**middle** [2] - 32:11, 38:4
**might** [8] - 10:15, 14:13, 15:15, 42:4, 53:6, 58:9, 71:5, 78:23
**mind** [1] - 5:18
**mine** [1] - 72:12
**mini** [1] - 54:13
**mini-tutorial** [1] - 54:13
**minor** [2] - 71:15, 85:1
**missed** [1] - 69:17
**misstating** [1] - 42:14
**mixed** [2] - 42:20, 55:3
**modified** [2] - 68:23, 71:8
**Monday** [4] - 48:1, 57:17, 57:18, 58:1
**month** [4] - 34:18, 34:19, 67:8, 81:9
**month's** [1] - 67:5
**months** [2] - 34:20, 62:11
**MOORE** [5] - 2:10, 3:3, 3:22, 4:5, 4:9
**Moore** [1] - 3:22
**morning** [8] - 3:1, 3:3, 3:4, 3:5, 3:6, 3:8, 9:22, 45:21
**MORRIS** [1] - 2:2
**Morris** [1] - 3:20
**most** [6] - 20:14, 32:6, 32:17, 42:9, 42:21, 82:9
**motion** [9] - 16:18, 36:7, 36:13, 36:14, 56:17, 56:19, 73:22, 74:1, 74:4
**motions** [20] - 27:15, 33:10, 34:15, 35:19, 35:22, 36:6, 36:11, 37:18, 55:8, 55:13, 61:2, 68:3, 73:9, 74:23, 75:1, 75:10, 76:5, 76:12, 76:17, 76:20
**motivate** [1] - 63:6
**motivation** [1] - 53:24
**mouth** [1] - 13:9
**move** [2] - 16:8, 52:9
**moved** [2] - 38:5, 45:6
**moving** [2] - 45:4, 81:12
**MR** [139] - 3:3, 3:4, 3:5, 3:6, 3:12, 3:17, 3:22, 4:5, 4:9, 5:10, 5:13, 8:8, 9:22, 10:10, 10:22, 11:23, 12:2, 12:13, 13:20, 14:1, 14:21, 15:3, 16:20, 17:6, 17:12, 17:15, 18:3, 18:16, 21:3, 21:6, 21:18, 22:24, 26:1, 26:7, 26:21, 27:4, 27:16, 27:22, 27:23, 28:5, 28:9, 28:19, 31:7, 31:15, 32:8, 40:22, 41:6, 42:1, 42:12, 43:18, 44:9, 44:20, 46:4, 46:9, 46:17, 46:21, 47:3, 47:6, 47:11, 47:19, 48:12, 48:22, 49:8, 49:10, 49:22, 50:5, 50:9, 50:21, 51:4, 51:10, 51:18, 52:2, 52:19, 52:22, 53:10, 53:22, 54:8, 54:14, 54:16,

55:2, 55:10, 55:23, 56:3, 56:9, 56:12, 57:10, 57:14, 57:17, 57:19, 57:21, 58:1, 58:6, 58:19, 58:21, 59:19, 59:21, 61:4, 61:7, 61:13, 61:19, 62:8, 62:23, 64:2, 64:24, 65:2, 65:10, 65:14, 65:18, 67:12, 67:17, 67:24, 71:11, 71:24, 72:13, 72:20, 73:19, 75:5, 77:5, 77:9, 78:4, 78:7, 79:7, 79:15, 80:10, 80:23, 80:24, 81:4, 81:7, 82:15, 83:4, 84:3, 84:5, 84:9, 85:2, 85:7, 85:16, 85:17, 85:19, 85:20
**MS** [12] - 3:19, 16:3, 16:9, 16:17, 69:10, 69:13, 69:16, 69:24, 70:18, 71:10, 79:23, 80:5
**multiple** [1] - 45:18

---

# N

**name** [1] - 4:7
**names** [1] - 15:15
**narrowed** [3] - 31:13, 32:12, 50:11
**narrowing** [1] - 31:9
**nature** [2] - 8:24, 67:19
**near** [1] - 78:24
**necessarily** [4] - 30:12, 43:4, 82:10, 83:17
**necessary** [5] - 30:23, 36:20, 48:14, 50:18, 68:10
**need** [14] - 31:1, 31:21, 36:7, 45:2, 51:12, 53:16, 53:24, 56:12, 56:16, 61:10, 61:16, 66:2, 66:17, 82:17
**needed** [1] - 68:14
**needs** [5] - 22:10, 38:23, 78:13, 78:20, 84:10
**negotiate** [1] - 84:19
**negotiated** [1] - 72:15
**negotiating** [1] - 24:16
**never** [2] - 17:1, 18:3
**New** [1] - 86:2
**new** [4] - 40:4, 84:18, 85:3, 85:9
**next** [3] - 37:12, 41:2, 62:11
**nice** [1] - 30:5
**NICHOLS** [1] - 2:2
**Nichols** [1] - 3:20
**night** [1] - 52:17
**nobody** [1] - 35:15
**none** [2] - 28:1, 28:2
**noninfringement** [1] - 75:14
**NORTH** [2] - 1:6, 1:10
**Notary** [1] - 86:9
**notes** [2] - 9:18, 86:11
**nothing** [1] - 18:22
**notice** [2] - 77:19, 83:18
**noticed** [2] - 72:2, 72:9
**notices** [2] - 77:19, 78:22
**November** [5] - 34:24, 52:8, 59:3, 59:11, 67:4
**number** [16] - 13:23, 36:10, 39:10, 40:15, 43:11, 44:17, 46:12, 49:16, 50:12, 58:17, 68:9, 68:13, 71:2, 71:4,

75:10, 76:20
**Number** [2] - 14:1, 60:2
**numerous** [1] - 78:22

---

# O

**o'clock** [4] - 65:6, 65:15, 65:16, 65:21
**objection** [2] - 52:3, 61:5
**objective** [1] - 33:22
**obligation** [2] - 16:15, 17:23
**obligations** [1] - 16:5
**Obligations** [1] - 16:17
**obviously** [1] - 73:20
**obviousness** [2] - 36:16, 74:15
**occur** [3] - 27:9, 40:17, 60:18
**occurring** [1] - 38:6
**occurs** [2] - 34:10, 70:5
**October** [5] - 38:5, 38:6, 41:13, 41:17, 44:2
**odd** [2] - 58:17, 65:15
**OEM** [1] - 20:6
**OF** [2] - 1:1, 86:5
**offer** [1] - 21:1
**officer** [2] - 5:22, 21:11
**OLDHAM** [1] - 2:6
**Oldham** [1] - 3:14
**OLSON** [1] - 2:5
**omitted** [1] - 71:14
**once** [6] - 10:3, 21:14, 25:22, 40:8, 56:24, 84:20
**One** [2] - 4:21, 36:5
**one** [30] - 5:14, 5:23, 13:23, 19:20, 20:21, 20:23, 21:24, 38:17, 40:8, 41:13, 42:2, 42:8, 48:20, 55:1, 55:17, 55:19, 61:10, 63:5, 64:1, 65:8, 69:13, 71:12, 71:14, 72:20, 73:13, 73:23, 74:3, 75:3, 84:17
**one's** [1] - 78:21
**ones** [1] - 39:22
**Open** [2] - 64:24, 65:2
**open** [4] - 29:17, 48:16, 50:17, 64:22
**opened** [1] - 13:9
**operating** [7] - 8:1, 72:1, 77:12, 77:22, 78:9, 80:15, 80:16
**opinion** [1] - 51:17
**opportunity** [3] - 53:14, 66:14, 68:4
**oppose** [2] - 51:4, 56:6
**opposing** [1] - 26:22
**opposite** [1] - 56:15
**oral** [1] - 52:9
**order** [33] - 4:22, 6:9, 10:13, 10:15, 11:2, 14:5, 15:5, 16:21, 17:19, 18:8, 19:4, 28:20, 30:21, 31:23, 33:13, 41:4, 59:6, 64:12, 69:8, 71:7, 71:13, 71:22, 72:11, 72:16, 78:1, 79:12, 79:17, 80:4, 84:15, 84:22, 85:12, 85:13
**orders** [4] - 14:23, 19:9, 67:14, 71:16
**original** [2] - 5:5, 71:16
**originally** [3] - 37:23, 80:14, 81:2
**ought** [1] - 41:8

**Exhibit 18**
**-489-**

**outline** [1] - 66:16
**outside** [5] - 10:1, 16:23, 17:15, 24:15, 25:6
**outstanding** [1] - 84:8
**overlap** [4] - 39:24, 40:1, 40:2, 42:23
**overwhelming** [1] - 74:8
**oximetry** [1] - 53:20

## P

**p.m** [1] - 85:23
**Pacific** [1] - 49:5
**page** [4] - 35:21, 35:23, 36:10, 76:18
**Pages** [1] - 86:10
**pages** [6] - 36:7, 36:18, 74:10, 75:10, 75:17, 76:7
**palatable** [1] - 7:16
**palate** [2] - 20:24, 21:1
**paper** [2] - 64:7, 64:8
**papers** [1] - 5:14
**paragraph** [10] - 17:4, 18:12, 18:15, 18:18, 18:21, 18:23, 28:3, 31:1, 66:18, 66:22
**Paragraph** [23] - 10:22, 11:12, 12:12, 12:14, 12:18, 14:2, 14:6, 14:14, 17:7, 17:14, 18:7, 20:12, 21:9, 25:2, 26:16, 27:11, 35:18, 37:1, 37:23, 49:15, 59:7, 69:14, 73:8
**paragraphs** [2] - 27:13, 27:14
**part** [9] - 8:22, 28:20, 41:2, 42:9, 54:2, 60:15, 63:3, 74:7, 82:9
**participate** [5] - 6:1, 6:14, 20:19, 22:19, 23:18
**participating** [2] - 12:15, 14:3
**particular** [4] - 10:7, 22:4, 46:2, 59:17
**particularly** [2] - 21:17, 38:2
**parties** [22] - 9:2, 11:4, 17:1, 33:14, 38:20, 38:24, 41:21, 43:12, 51:12, 55:18, 60:6, 60:16, 60:18, 60:24, 63:4, 71:15, 73:21, 75:9, 77:11, 78:10, 83:9, 84:12
**parties'** [1] - 80:13
**partners** [1] - 3:13
**parts** [1] - 81:12
**party** [7] - 6:16, 21:12, 22:22, 40:3, 82:7, 82:23, 83:2
**past** [2] - 12:9, 15:11
**PAT** [1] - 1:22
**patent** [24] - 6:10, 8:6, 9:6, 10:18, 11:11, 12:15, 12:17, 18:15, 19:15, 24:19, 24:21, 25:13, 26:5, 31:22, 39:10, 40:5, 40:9, 42:10, 42:15, 73:23, 74:3, 84:18, 84:21, 85:3
**patents** [32] - 8:10, 27:3, 31:3, 31:19, 32:1, 38:13, 38:22, 39:10, 39:14, 39:15, 39:19, 39:21, 40:3, 40:6, 40:12, 42:4, 42:7, 42:13, 42:16, 42:22, 43:4, 43:10, 43:11, 43:16, 51:1, 51:13, 51:15, 51:20, 54:23, 74:2, 74:9, 74:21
**patient** [1] - 57:8

**people** [3] - 18:19, 25:6, 82:14
**per** [1] - 71:21
**perfectly** [1] - 65:18
**period** [16] - 6:16, 6:21, 7:14, 22:22, 33:1, 34:1, 38:11, 52:9, 57:2, 63:21, 67:5, 75:3, 76:16, 80:21, 81:10
**periods** [1] - 69:19
**perjorative** [1] - 33:16
**PERRY** [1] - 2:6
**Perry** [1] - 3:14
**person** [1] - 64:17
**perspective** [4] - 20:15, 42:6, 77:13, 81:14
**pertaining** [1] - 74:3
**petered** [1] - 57:1
**Philips** [22] - 5:13, 5:16, 7:12, 8:4, 9:23, 13:8, 21:2, 39:20, 39:21, 39:23, 40:7, 42:7, 47:20, 49:9, 54:17, 59:22, 60:11, 64:24, 65:8, 65:10, 72:3, 77:12
**PHILIPS** [3] - 1:6, 1:7, 1:10
**Philips'** [5] - 5:18, 20:14, 42:6, 62:5, 74:24
**PHILLIPS** [1] - 2:13
**Phillips** [2] - 3:24, 4:4
**picked** [2] - 45:10, 45:23
**piece** [2] - 64:5
**pin** [1] - 68:19
**place** [1] - 24:2
**placed** [1] - 40:24
**Plaintiff** [4] - 1:4, 1:12, 2:8, 2:15
**plaintiff's** [1] - 65:23
**plan** [1] - 73:9
**planned** [1] - 46:5
**played** [1] - 36:17
**plead** [1] - 13:5
**pleasure** [1] - 64:2
**plenty** [1] - 56:5
**plug** [2] - 68:15, 69:4
**plus** [2] - 6:16, 22:22
**point** [7] - 10:7, 44:15, 62:2, 62:3, 62:18, 70:19, 72:3
**portfolio** [1] - 9:6
**portion** [1] - 82:11
**position** [5] - 8:9, 19:23, 40:14, 62:5, 63:11
**possibility** [4] - 6:8, 7:5, 22:8, 50:17
**possible** [1] - 45:13
**possibly** [3] - 11:1, 49:19, 63:14
**potentially** [8] - 13:8, 35:2, 38:22, 39:13, 53:14, 63:6, 68:10, 70:11
**POTTER** [1] - 2:10
**Potter** [1] - 3:23
**practice** [1] - 29:4
**preceded** [1] - 66:10
**precisely** [1] - 15:10
**preclude** [5] - 20:15, 21:7, 21:10, 21:21, 23:10
**precluded** [1] - 12:14
**precludes** [3] - 18:19, 19:12, 21:19

**preclusion** [1] - 24:1
**predict** [1] - 29:24
**predominantly** [2] - 54:23, 55:1
**prefer** [1] - 15:14
**preference** [2] - 52:16, 69:22
**preparation** [1] - 19:1
**present** [1] - 12:10
**presented** [2] - 73:5, 73:6
**preservation** [1] - 39:9
**preserves** [1] - 6:9
**pressing** [1] - 9:24
**presumptuous** [1] - 29:1
**pretrial** [12] - 28:23, 29:7, 34:22, 35:8, 55:6, 58:24, 59:3, 59:12, 67:4, 67:7, 67:23, 68:3
**pretty** [3] - 28:22, 52:20, 85:4
**prevent** [1] - 20:5
**preventing** [1] - 14:3
**prevents** [1] - 10:22
**previously** [4] - 4:24, 5:4, 6:19, 69:9
**pricing** [2] - 7:6, 9:13
**primarily** [1] - 43:19
**primary** [1] - 28:11
**primer** [1] - 54:4
**principle** [3] - 82:16, 83:14, 83:19
**pro** [2] - 16:8, 16:18
**problem** [7] - 21:6, 23:4, 23:13, 68:20, 69:20, 73:12, 74:7
**problematic** [1] - 65:7
**problems** [4] - 41:22, 48:5, 49:7, 85:9
**proceeding** [1] - 17:8
**proceeds** [1] - 19:2
**process** [6] - 38:1, 46:1, 60:3, 61:22, 62:13, 72:7
**produced** [1] - 72:4
**producing** [1] - 9:3
**product** [1] - 54:24
**production** [11] - 77:14, 79:5, 79:13, 79:24, 81:16, 81:19, 82:2, 82:8, 82:10, 82:24, 83:7
**products** [3] - 8:19, 8:20, 9:4
**Professional** [1] - 86:8
**progress** [1] - 72:21
**progressed** [1] - 62:2
**proper** [1] - 75:16
**prophylactic** [1] - 14:8
**proposal** [7] - 9:9, 9:11, 12:19, 77:6, 79:4, 81:1, 81:8
**proposed** [13] - 18:8, 20:1, 25:21, 25:24, 26:18, 26:19, 27:6, 33:7, 36:23, 71:17, 78:1, 80:13, 81:1
**proprietary** [1] - 19:6
**pros** [1] - 53:16
**prosecution** [15] - 6:11, 8:10, 8:13, 8:14, 8:16, 10:18, 11:12, 12:9, 12:15, 12:17, 18:15, 19:16, 24:19, 24:21, 26:5
**prospects** [1] - 66:7
**protect** [3] - 7:4, 19:16, 19:19
**protected** [2] - 18:24, 19:4

**Exhibit 18**
**-490-**

**protection** [6] - 18:11, 19:15, 21:2, 26:14, 26:16, 26:17

**protective** [11] - 6:9, 10:13, 10:15, 11:1, 14:5, 15:5, 16:21, 17:19, 18:8, 19:3, 19:9

**provide** [8] - 7:17, 19:9, 19:15, 21:2, 26:22, 30:22, 69:9, 84:22

**provided** [1] - 17:10

**provides** [1] - 19:9

**providing** [3] - 9:14, 13:16, 20:10

**prudent** [2] - 32:10, 49:23

**Public** [1] - 86:9

**pulse** [1] - 53:20

**purpose** [7] - 14:16, 19:5, 19:11, 19:14, 20:11, 70:8, 81:24

**pursuant** [1] - 73:6

**put** [31] - 5:19, 6:7, 6:8, 13:14, 17:19, 18:9, 28:1, 28:8, 30:21, 32:4, 35:13, 37:9, 38:4, 46:1, 50:1, 50:21, 55:6, 57:4, 59:14, 65:20, 66:19, 66:22, 70:4, 71:4, 71:6, 77:16, 78:5, 83:1, 83:22, 84:14

**putting** [7] - 28:14, 29:1, 29:3, 29:7, 30:10, 70:3

### Q

**quantity** [1] - 82:11

**quarters** [1] - 34:19

**questions** [2] - 29:19, 63:13

**quickly** [1] - 82:1

**quite** [5] - 26:15, 50:14, 55:11, 74:6, 76:4

**quo** [1] - 6:10

**quotation** [1] - 17:16

### R

**raised** [2] - 14:16, 16:10

**rather** [7] - 15:13, 45:21, 56:23, 57:4, 57:5, 70:10, 76:2

**rationale** [1] - 77:10

**RE** [58] - 2:6, 3:5, 3:12, 9:22, 10:10, 10:22, 11:23, 12:2, 12:13, 13:20, 14:1, 14:21, 15:3, 16:20, 17:6, 17:12, 17:15, 18:3, 21:3, 21:6, 22:24, 27:23, 28:5, 28:19, 44:20, 48:22, 49:10, 51:4, 51:10, 51:18, 52:2, 52:19, 52:22, 53:10, 55:10, 55:23, 56:3, 56:9, 56:12, 57:19, 58:1, 58:6, 58:21, 59:19, 61:4, 62:8, 64:2, 65:2, 65:18, 73:19, 78:7, 80:23, 81:4, 83:4, 84:5, 85:7, 85:16, 85:19

**Re** [24] - 3:12, 9:21, 10:5, 11:22, 12:1, 12:4, 13:4, 17:4, 18:18, 21:4, 25:21, 28:20, 44:18, 45:20, 48:20, 51:3, 56:7, 61:4, 62:6, 65:17, 74:6, 78:6, 83:5

**reaction** [1] - 7:15

**reactions** [1] - 63:12

**read** [7] - 18:24, 27:11, 30:14, 30:15, 39:15, 63:12, 63:14

**reading** [3] - 17:5, 17:10, 27:7

**ready** [1] - 30:7

**ready-made** [1] - 30:7

**real** [1] - 80:20

**realized** [1] - 13:7

**Really** [1] - 57:22

**really** [13] - 8:18, 12:19, 14:7, 14:9, 14:12, 32:22, 53:1, 55:2, 68:8, 75:6, 75:13, 77:9, 78:9

**reason** [12] - 6:17, 10:11, 12:5, 28:7, 28:11, 45:6, 45:23, 46:10, 56:10, 56:23, 59:17, 83:3

**reasoning** [1] - 28:24

**reassess** [1] - 32:15

**received** [1] - 18:19

**recognize** [7] - 24:8, 24:18, 34:22, 63:2, 69:21, 70:12, 74:10

**recognizing** [1] - 24:7, 26:13, 50:2

**recommend** [1] - 25:19

**recommended** [1] - 38:15

**record** [6] - 15:18, 15:21, 16:22, 16:24, 17:21, 86:10

**records** [1] - 18:14

**redrafting** [1] - 64:12

**reduced** [1] - 39:11

**reduction** [1] - 43:11

**reference** [1] - 34:11

**referred** [1] - 29:6

**regaining** [1] - 21:22

**regard** [4] - 12:2, 24:17, 52:4, 60:14

**regarding** [6] - 13:16, 16:15, 18:13, 28:3, 49:14, 49:15

**Registered** [1] - 86:7

**regret** [1] - 5:2

**reintroduce** [1] - 4:18

**rejected** [1] - 13:19

**relate** [1] - 12:20

**related** [2] - 18:13, 42:22

**relatedness** [1] - 42:4

**relates** [1] - 12:22

**relating** [1] - 12:6

**relationship** [5] - 16:5, 24:14, 39:19, 39:21, 60:11

**relationships** [1] - 42:8

**relatively** [6] - 24:9, 31:21, 38:10, 64:22, 72:7, 79:14

**relevant** [1] - 81:20

**remain** [1] - 7:13

**remaining** [1] - 72:23

**remember** [2] - 63:18, 79:18

**remembering** [1] - 79:16

**reminder** [1] - 4:12

**rendered** [1] - 34:21

**repeatedly** [1] - 18:9

**repetitive** [1] - 36:20

**reply** [3] - 34:20, 56:6, 58:18

**report** [9] - 37:22, 38:17, 45:5, 45:10, 45:24, 47:18, 63:24, 66:11, 66:13

**REPORTER** [1] - 86:5

**reporter** [1] - 4:14

**Reporter** [2] - 86:8

**reporting** [1] - 56:18

**reports** [1] - 70:9

**representations** [1] - 24:9

**represented** [1] - 25:10

**request** [1] - 18:12

**requesting** [1] - 43:13

**requests** [1] - 78:11

**require** [2] - 40:4, 43:9

**required** [4] - 32:3, 41:20, 43:16, 44:17

**requirements** [3] - 18:1, 56:18, 56:21

**reserved** [2] - 67:18, 68:16

**resolve** [3] - 20:3, 60:10

**resolved** [7] - 10:16, 10:17, 10:18, 10:21, 11:10, 12:11, 84:10

**respect** [5] - 9:10, 22:2, 31:17, 43:5, 84:21

**response** [2] - 34:18, 57:4

**responses** [1] - 43:21

**responsibility** [1] - 35:4

**responsive** [1] - 52:6

**rest** [3] - 32:24, 34:3, 70:17

**restrict** [1] - 9:14

**restriction** [3] - 11:3, 25:12, 72:6

**result** [1] - 30:1

**resume** [3] - 21:16, 22:4, 23:19

**resumes** [1] - 7:8

**resuming** [1] - 20:6, 21:8

**retirement** [1] - 30:4

**revisit** [2] - 62:15, 70:22

**ridiculous** [2] - 51:14, 51:16

**road** [1] - 7:7

**robust** [1] - 22:6

**role** [12] - 5:23, 6:20, 7:8, 8:12, 8:16, 20:6, 21:8, 21:16, 21:17, 23:20, 61:17

**ROSENTHAL** [77] - 2:13, 3:6, 5:10, 5:13, 8:8, 18:16, 21:18, 26:1, 26:7, 26:21, 27:4, 27:16, 27:22, 28:9, 31:7, 31:15, 32:8, 40:22, 41:6, 42:1, 42:12, 43:18, 44:9, 46:4, 46:9, 46:17, 46:21, 47:3, 47:6, 47:11, 47:19, 48:12, 49:8, 49:22, 50:5, 50:9, 50:21, 53:22, 54:8, 54:14, 54:16, 55:2, 57:10, 57:14, 57:17, 57:21, 58:19, 59:21, 61:7, 61:13, 61:19, 62:23, 64:24, 65:10, 65:14, 67:12, 67:17, 67:24, 71:11, 71:24, 72:13, 72:20, 75:5, 77:5, 77:9, 78:4, 79:7, 79:15, 80:10, 80:24, 81:7, 82:15, 84:3, 84:9, 85:2, 85:17, 85:20

**Rosenthal** [29] - 3:24, 5:11, 7:24, 18:7, 18:17, 21:14, 23:2, 23:5, 23:14, 25:20, 26:2, 26:18, 31:8, 38:8, 38:19, 40:23, 44:21, 47:2, 49:19, 52:3, 61:8, 62:9, 71:12, 75:6, 75:18, 77:2, 82:6, 83:24, 84:12

**roughly** [1] - 47:16

**route** [2] - 76:10, 76:15

**RPR** [1] - 86:21

**Rule** [2] - 25:1, 60:4

**rule** [5] - 39:7, 78:8, 78:14, 78:21,

Exhibit 18

-491-

82:17
**rules** [8] - 16:16, 17:24, 35:15, 35:16, 35:20, 73:7, 73:10, 76:19
**ruling** [4] - 26:2, 26:3, 27:10, 37:20
**run** [2] - 56:18, 68:19

## S

**safe** [1] - 30:19
**safest** [1] - 20:13
**saw** [2] - 24:5, 72:23
**schedule** [19] - 27:1, 27:6, 32:10, 32:20, 33:20, 34:4, 34:8, 35:14, 50:17, 53:8, 54:18, 64:23, 67:6, 67:10, 68:11, 70:17, 84:14, 84:20, 85:3
**scheduled** [3] - 27:19, 27:20, 63:17
**schedules** [1] - 80:13
**scheduling** [9] - 4:22, 30:21, 33:13, 59:6, 67:14, 71:13, 71:16, 72:11, 84:15, 85:13
**Scheduling** [1] - 71:7
**scope** [1] - 50:23
**seal** [1] - 86:16
**second** [8] - 40:16, 62:24, 63:5, 63:22, 64:1, 64:10, 65:24, 66:5
**section** [1] - 28:8
**security** [1] - 58:7
**see** [36] - 6:13, 7:23, 8:1, 8:4, 9:8, 9:11, 9:16, 12:16, 14:4, 20:18, 22:14, 22:18, 23:7, 23:12, 24:24, 26:4, 26:8, 28:4, 36:2, 36:4, 38:14, 40:12, 40:13, 41:13, 41:17, 45:22, 55:7, 58:24, 60:8, 61:16, 62:7, 63:17, 64:20, 67:4, 78:24, 85:11
**seeing** [5] - 20:16, 20:21, 23:10, 23:18, 24:2
**seem** [5] - 31:20, 34:23, 39:18, 71:16, 79:18
**sees** [2] - 21:15, 22:9
**selected** [1] - 4:6
**self** [1] - 39:8
**selfish** [1] - 33:17
**Senate** [2] - 29:20, 29:22
**send** [1] - 22:13
**sending** [2] - 78:10, 85:12
**sense** [6] - 46:23, 47:19, 50:16, 67:13, 75:16, 76:1
**sensitive** [5] - 7:6, 8:5, 8:23, 20:8, 20:21
**sent** [1] - 29:21
**sentence** [2] - 55:19, 55:21
**separate** [1] - 20:7
**September** [4] - 7:1, 40:21, 41:15, 46:16
**serve** [1] - 61:2
**serving** [2] - 16:1, 61:6
**set** [6] - 28:12, 28:17, 62:18, 62:23, 62:24, 86:15
**setting** [1] - 62:20
**settle** [1] - 60:9

**settlement** [2] - 60:16, 66:7
**shaking** [1] - 38:21
**shall** [2] - 18:24, 79:5
**shed** [1] - 42:2
**short** [5] - 29:24, 36:10, 38:11, 56:7, 80:21
**Shorthand** [1] - 86:8
**shortly** [1] - 81:15
**sick** [2] - 56:24, 57:1
**side** [9] - 25:8, 28:10, 43:8, 43:15, 74:23, 74:24, 76:20, 82:12, 84:17
**side's** [1] - 17:11
**sides** [2] - 55:3, 84:2
**sign** [1] - 73:9
**signature** [1] - 85:12
**significant** [3] - 46:15, 82:11, 83:13
**silence** [1] - 61:3
**similar** [5] - 13:11, 18:14, 26:18, 40:1, 42:17
**simplification** [1] - 31:9
**situation** [6] - 11:16, 13:1, 17:20, 48:20, 74:17, 83:23
**six** [2] - 51:21, 62:11
**six-week** [1] - 51:21
**Sleet** [1] - 76:7
**solution** [4] - 6:6, 19:24, 20:14, 20:23
**solve** [2] - 15:8, 15:20
**solved** [1] - 12:11
**someone** [5] - 19:13, 19:23, 21:20, 21:21, 60:19
**sometime** [7] - 37:9, 37:17, 41:1, 45:13, 47:14, 64:14, 84:23
**Sometime** [1] - 47:7
**sometimes** [1] - 15:14
**somewhat** [4] - 5:19, 32:12, 53:18, 62:10
**soon** [4] - 56:16, 56:18, 64:6, 77:14
**sooner** [1] - 56:5
**sorry** [5] - 4:3, 19:4, 27:12, 47:3, 59:8
**sort** [5] - 13:21, 19:15, 20:16, 26:9, 54:12
**sorts** [1] - 9:13
**sound** [1] - 43:10
**sounds** [3] - 9:23, 12:20, 62:12
**sources** [1] - 78:18
**specific** [1] - 28:22
**specifications** [3] - 39:24, 42:10, 42:16
**specificity** [1] - 44:2
**spend** [3] - 51:5, 54:1, 54:2
**spent** [1] - 58:15
**splitting** [1] - 27:7
**stages** [1] - 31:10
**staggered** [2] - 56:1, 56:4
**standard** [4] - 79:11, 79:17, 79:19, 80:3
**standpoint** [2] - 33:23, 77:17
**staring** [1] - 63:8
**Stark** [3] - 29:13, 30:9, 60:21

**Stark's** [1] - 30:5
**start** [10] - 33:7, 37:15, 40:18, 41:16, 51:11, 59:13, 59:14, 59:17, 77:18
**started** [2] - 10:4, 17:7
**starting** [4] - 40:19, 40:21, 54:19, 58:4
**State** [1] - 86:1
**statement** [1] - 71:19
**STATES** [1] - 1:1
**states** [1] - 16:23
**States** [1] - 1:22
**status** [28] - 6:10, 32:11, 37:22, 38:5, 38:17, 38:18, 40:16, 40:24, 45:5, 45:10, 45:12, 45:24, 46:2, 47:18, 49:18, 63:22, 63:23, 63:24, 64:10, 65:22, 65:24, 66:5, 66:6, 66:9, 66:11, 67:19, 69:2
**stenographic** [1] - 86:11
**Steve** [2] - 3:14, 3:16
**still** [8] - 8:8, 8:11, 9:7, 14:13, 23:7, 26:13, 26:16, 55:9, 78:10, 78:16, 84:8
**stipulation** [1] - 84:22
**stone** [1] - 71:8
**stop** [1] - 24:22
**strategically** [1] - 81:17
**strategy** [2] - 7:6, 9:13
**streamlined** [2] - 44:22, 51:11
**Street** [1] - 1:20
**strongly** [2] - 24:20, 25:19
**structured** [1] - 77:24
**stuck** [1] - 40:14
**stuff** [2] - 43:22, 59:9
**subject** [7] - 14:23, 14:24, 26:4, 26:9, 39:6, 55:11, 81:18
**submission** [1] - 49:2
**submissions** [1] - 76:11
**submitted** [2] - 5:4, 5:15
**subparsed** [1] - 36:12
**subsequent** [2] - 5:5, 23:14
**subsequently** [1] - 68:24
**suggest** [5] - 7:19, 23:1, 33:21, 38:16, 40:23
**suggested** [10] - 6:5, 6:7, 7:11, 19:17, 23:2, 37:23, 38:18, 49:19, 66:20
**suggesting** [2] - 23:15, 80:8
**suggestion** [8] - 6:18, 7:23, 13:19, 23:5, 38:7, 46:23, 47:1, 50:7
**suggestions** [2] - 55:7, 69:4
**summary** [12] - 36:11, 36:13, 36:14, 55:13, 56:1, 56:17, 61:2, 73:22, 74:4, 74:23, 75:2, 76:13
**Sunday** [2] - 52:17, 58:2
**supposed** [3] - 52:8, 56:22, 58:11
**surprise** [1] - 11:20
**surprised** [1] - 18:21
**system** [1] - 54:23
**SYSTEMS** [1] - 1:7

## T

**table** [1] - 10:8
**tap** [1] - 68:18

Exhibit 18

-492-

**technical** [14] - 8:19, 9:3, 9:12, 10:17,
11:11, 12:16, 12:20, 12:22, 21:15, 23:7,
23:10, 25:17, 26:3, 26:4
  **technically** [3] - 14:23, 14:24, 80:8
  **technology** [2] - 8:6, 54:4
  **Teeing** [1] - 58:22
  **Teleconference** [2] - 1:18, 85:22
  **teleconference** [3] - 46:24, 47:16,
47:17
  **telephone** [1] - 69:2
  **template** [2] - 72:16, 78:2
  **templates** [1] - 55:18
  **ten** [2] - 36:11, 51:15
  **tend** [1] - 41:9
  **term** [4] - 6:12, 40:6, 40:8, 40:15
  **terms** [24] - 31:4, 39:5, 39:13, 40:2,
41:19, 43:3, 43:5, 43:6, 43:8, 43:15,
44:17, 45:1, 46:13, 46:14, 46:20, 49:15,
49:16, 50:12, 50:24, 51:12, 53:17, 71:3,
71:5
  **terribly** [1] - 62:1
  **testimony** [1] - 69:14
  **Thanksgiving** [1] - 52:23
  **THE** [135] - 1:1, 1:1, 1:22, 3:1, 3:8,
3:16, 3:18, 3:21, 4:3, 4:6, 4:10, 5:12,
7:20, 9:17, 10:5, 10:20, 11:14, 12:1,
12:4, 12:24, 13:24, 14:15, 14:22, 15:24,
16:4, 16:12, 16:19, 17:4, 17:9, 17:13,
17:17, 18:6, 21:5, 24:3, 26:6, 26:11,
26:24, 27:5, 27:18, 28:1, 28:7, 28:18,
29:2, 31:12, 32:7, 32:16, 41:3, 41:12,
42:11, 43:7, 44:5, 44:18, 45:9, 46:8,
46:15, 46:18, 46:22, 47:5, 47:10, 47:13,
47:22, 48:15, 48:24, 49:12, 49:24, 50:8,
50:19, 51:3, 51:8, 51:15, 51:23, 52:5,
52:21, 52:23, 53:12, 54:6, 54:10, 54:15,
54:18, 55:5, 55:22, 56:2, 56:7, 56:10,
56:13, 57:12, 57:15, 57:18, 57:22, 58:3,
58:8, 58:22, 59:23, 61:12, 61:18, 62:4,
62:14, 63:2, 64:4, 65:4, 65:12, 65:15,
65:20, 67:16, 67:21, 68:1, 69:7, 69:12,
69:15, 69:20, 70:1, 70:21, 71:23, 72:10,
72:19, 73:3, 74:5, 75:18, 77:8, 78:3,
78:6, 79:3, 79:9, 79:21, 80:2, 80:7,
80:19, 81:22, 82:21, 83:11, 84:6, 84:24,
85:6, 85:8, 85:21
  **thereafter** [1] - 33:4
  **they've** [1] - 5:3
  **thinking** [1] - 51:19
  **thinks** [1] - 25:9
  **third** [1] - 9:1
  **Thirty** [1] - 37:5
  **three** [5] - 31:23, 34:19, 42:14, 65:9,
81:9
  **three-and-a-half-month** [1] - 81:9
  **three-quarters** [1] - 34:19
  **throughout** [1] - 7:13
  **throw** [1] - 66:23
  **Thursday** [1] - 53:13
  **THYNGE** [1] - 1:22

**Thynge** [1] - 3:2
**tight** [2] - 32:19, 32:20
**timing** [2] - 62:6, 77:16
**title** [4] - 21:20, 21:23, 22:4, 23:22
**today** [6] - 5:24, 18:5, 28:12, 60:4,
73:2, 84:10
**together** [2] - 15:20, 82:24
**took** [1] - 24:6
**topic** [2] - 47:8, 50:6
**totally** [1] - 83:4
**towards** [1] - 38:4
**town** [1] - 52:14
**transcript** [2] - 4:17, 86:11
**transfer** [2] - 28:22, 30:6
**transferred** [1] - 29:13
**transferring** [1] - 28:21
**travel** [1] - 52:17
**traveling** [2] - 64:19
**trial** [34] - 19:1, 27:19, 27:20, 27:21,
28:2, 28:3, 28:8, 29:1, 29:8, 29:9,
30:11, 30:12, 30:16, 30:20, 31:11,
31:18, 31:20, 31:22, 32:2, 40:12, 45:16,
48:2, 51:21, 58:4, 59:1, 66:18, 67:2,
67:6, 67:19, 68:5, 68:6, 68:9, 69:4
  **trials** [1] - 30:24
  **tried** [2] - 51:19, 72:17
  **Triozzi** [2] - 86:7, 86:21
  **trouble** [1] - 79:16
  **true** [4] - 7:13, 15:4, 43:5, 86:10
  **try** [4] - 15:12, 15:13, 68:14
  **trying** [5] - 20:2, 59:2, 69:3, 69:5,
82:20
  **Tuesday** [4] - 49:4, 53:2, 65:21, 66:11
  **tune** [1] - 84:1
  **TUNNELL** [1] - 2:2
  **turned** [1] - 18:21
  **tutorial** [2] - 54:13, 54:21
  **two** [11] - 4:9, 4:11, 4:20, 6:17, 14:1,
22:22, 26:14, 34:20, 36:3, 42:8, 76:22
  **Two** [1] - 4:10
  **type** [10] - 8:2, 18:13, 18:14, 38:23,
39:7, 40:1, 51:24, 60:9, 68:2, 71:2
  **types** [1] - 6:13
  **typical** [1] - 71:22

**U**

**unable** [1] - 20:7
**unclear** [1] - 6:22
**uncomfortable** [3] - 34:7, 34:12, 60:24
**under** [15] - 12:11, 12:18, 13:11,
16:16, 18:14, 26:14, 26:16, 56:18, 72:1,
73:18, 77:22, 78:1, 79:4, 79:9, 79:11
  **understood** [3] - 13:21, 23:9, 73:19
  **UNITED** [1] - 1:1
  **United** [1] - 1:22
  **unless** [1] - 35:24
  **unnecessary** [1] - 18:15
  **unrelated** [1] - 12:21
  **unsure** [1] - 28:16

**up** [25] - 7:18, 7:21, 11:20, 13:2, 15:11,
23:5, 27:7, 28:23, 29:6, 30:24, 36:11,
45:4, 52:9, 54:8, 62:18, 62:20, 66:17,
68:17, 74:18, 74:22, 75:11, 76:11, 77:2,
84:11
  **usage** [1] - 10:23
  **useful** [2] - 41:10, 62:1

**V**

**value** [1] - 6:3
**variety** [1] - 43:9
**various** [1] - 31:10
**view** [4] - 12:7, 16:4, 16:14
**viewed** [5] - 9:5, 17:1, 17:2, 24:12,
54:7
  **viewing** [1] - 82:22
  **violate** [5] - 10:12, 10:15, 11:1, 14:13,
15:2
  **virtue** [1] - 19:22
  **votes** [1] - 29:21
  **VP** [2] - 20:6, 21:8

**W**

**wait** [3] - 79:1, 85:9, 85:11
**walked** [1] - 69:21
**wants** [3] - 20:20, 51:5, 83:18
**wasted** [1] - 36:8
**ways** [1] - 6:15
**Wednesday** [2] - 53:3, 53:13
**week** [17] - 29:17, 45:14, 47:14, 47:15,
47:17, 47:20, 47:23, 48:16, 48:17,
51:21, 52:24, 53:6, 53:7, 64:15, 64:18,
64:21
  **weekday** [1] - 57:16
  **weekend** [1] - 85:15
  **weeks** [2] - 11:21, 31:23
  **WHEREOF** [1] - 86:15
  **whole** [6] - 14:15, 17:8, 53:21, 56:23,
70:8, 77:18
  **wholly** [1] - 35:9
  **willing** [1] - 25:22
  **willingness** [1] - 8:14
  **Wilmington** [2] - 1:20, 86:17
  **window** [1] - 32:5
  **wish** [1] - 44:18
  **WITNESS** [1] - 86:15
  **witness** [2] - 15:12, 15:15
  **witnesses** [1] - 77:20
  **wives** [1] - 53:4
  **wonder** [2] - 44:1, 67:13
  **wondering** [1] - 50:15
  **worried** [1] - 77:15
  **worry** [1] - 51:24
  **writing** [2] - 9:17, 64:11
  **written** [3] - 16:21, 21:9, 71:7

**Y**

**year** [3] - 20:5, 40:21, 41:2

**Exhibit 18**
**-493-**

**years** [2] - 6:17, 22:23
**yesterday** [8] - 6:5, 10:11, 13:19, 13:20, 22:13, 23:3, 23:9, 29:15
**younger** [1] - 58:14

## Z

**zones** [1] - 45:18

Exhibit 18
-494-

EXHIBIT 19

M. ELIZABETH DAY (SBN 177125)
eday@feinday.com
DAVID ALBERTI (SBN 220265)
dalberti@feinday.com
SAL LIM (SBN 211836)
slim@feinday.com
MARC BELLOLI (SBN 244290)
mbelloli@feinday.com
**FEINBERG DAY ALBERTI LIM &
BELLOLI LLP**
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Tel:  650.618.4360
Fax:  650.618.4368

Attorneys for Uniloc 2017 LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNILOC 2017 LLC,<br><br>                Plaintiff,<br><br>         v.<br><br>NETFLIX, INC., et al<br><br>                Defendants. | CASE NO. 8:18-cv-02055-JVS-DFM, consolidated with CASE NOS. 8:18-cv-02056, 8:18-cv-02058-JVS-DFM, 8:18-cv-02150-JVS-DFM, 8:19-cv-00295-JVS-DFM<br><br>**PROTECTIVE ORDER**<br><br>[Discovery Document: Referred to Magistrate Judge Douglas F. McCormick] |

-1-

**Exhibit 19**
**-495-**

**1.**   **PURPOSE AND LIMITS OF THIS ORDER**

Discovery in this action is likely to involve confidential, proprietary, or private information requiring special protection from public disclosure and from use for any purpose other than this litigation. Thus, the Court enters this Protective Order. This Order does not confer blanket protections on all disclosures or responses to discovery, and the protection it gives from public disclosure and use extends only to the specific material entitled to confidential treatment under the applicable legal principles. This Order does not automatically authorize the filing under seal of material designated under this Order. Instead, the parties must comply with L.R. 79-5.1 if they seek to file anything under seal. This Order does not govern the use at trial of material designated under this Order.

**2.**   **DESIGNATING PROTECTED MATERIAL**

**2.1**   **Over-Designation Prohibited**.  Any party or non-party who designates information or items for protection under this Order as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" (a "designator") must only designate specific material that qualifies under the appropriate standards. To the extent practicable, only those parts of documents, items, or oral or written communications that require protection shall be designated. Designations with a higher confidentiality level when a lower level would suffice are prohibited. Mass, indiscriminate, or routinized designations are prohibited. Unjustified designations expose the designator to sanctions, including the Court's striking all confidentiality designations made by that designator. Designation under this Order is allowed only if the designation is necessary to protect material that, if disclosed to persons not authorized to view it, would cause competitive or other recognized harm. Material may not be designated if it has been made public, or if designation is otherwise unnecessary to protect a secrecy interest. If a designator learns that information or items that it designated for protection do not qualify for protection at all or do not

-1-

PROTECTIVE ORDER

**Exhibit 19**
**-496-**

1    qualify for the level of protection initially asserted, that designator must promptly

2    notify all parties that it is withdrawing the mistaken designation.

3    **2.2    Manner and Timing of Designations**. Designation under this Order

4    requires the designator to affix the applicable legend ("CONFIDENTIAL,"

5    "HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY," or "HIGHLY

6    CONFIDENTIAL – SOURCE CODE") to each page that contains protected

7    material. For testimony given in deposition or other proceeding, the designator shall

8    specify all protected testimony and the level of protection being asserted. It may

9    make that designation during the deposition or proceeding, or within 21 days after

10   the deposition or proceeding.

11   **2.2.1**  A party or non-party that makes original documents or materials

12   available for inspection need not designate them for protection until after the

13   inspecting party has identified which material it would like copied and

14   produced. During the inspection and before the designation, all material shall

15   be treated as HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY.

16   After the inspecting party has identified the documents it wants copied and

17   produced, the producing party must designate the documents, or portions

18   thereof, that qualify for protection under this Order.

19   **2.2.2**  Parties shall give advance notice if they expect a deposition or

20   other proceeding to include designated material so that the other parties can

21   ensure that only authorized individuals are present at those proceedings when

22   such material is disclosed or used. The use of a document as an exhibit at a

23   deposition shall not in any way affect its designation. Transcripts containing

24   designated material shall have a legend on the title page noting the presence

25   of designated material, and the title page shall be followed by a list of all

26   pages (including line numbers as appropriate) that have been designated, and

27   the level of protection being asserted. The designator shall inform the court

28   reporter of these requirements. Any transcript that is prepared before the

PROTECTIVE ORDER

**Exhibit 19**
**-497-**

1   expiration of the 21-day period for designation shall be treated during that

2   period as if it had been designated HIGHLY CONFIDENTIAL –

3   ATTORNEY EYES ONLY unless otherwise agreed. After the expiration of

4   the 21-day period, the transcript shall be treated only as actually designated.

5   **2.3    Inadvertent Failures to Designate**. An inadvertent failure to

6   designate does not, standing alone, waive protection under this Order. Upon timely

7   assertion or correction of a designation, all recipients must make reasonable efforts

8   to ensure that the material is treated according to this Order.

9   **3.    CHALLENGING CONFIDENTIALITY DESIGNATIONS**

10   All challenges to confidentiality designations shall proceed under L.R. 37-1

11   through L.R. 37-4.

12   **4.    ACCESS TO DESIGNATED MATERIAL**

13   **4.1    Basic Principles**.  A receiving party may use designated material only

14   for this litigation. Designated material may be disclosed only to the categories of

15   persons and under the conditions described in this Order.  Nothing in this Protective

16   Order shall prevent or restrict a producing Party's own disclosure or use of its own

17   designated material for any purpose.

18   **4.2    Disclosure of CONFIDENTIAL Material Without Further**

19   **Approval**.  Unless otherwise ordered by the Court or permitted in writing by the

20   designator, a receiving party may disclose any material designated

21   CONFIDENTIAL only to:

22   **4.2.1**  The receiving party's outside counsel of record in this action and

23   employees of outside counsel of record to whom disclosure is reasonably

24   necessary;

25   **4.2.2**  The officers, directors, and employees of the receiving party to

26   whom disclosure is reasonably necessary, and who have signed the

27   Agreement to Be Bound (Exhibit A);

28

-3-

PROTECTIVE ORDER

**Exhibit 19**
**-498-**

1    **4.2.3**  Experts retained by the receiving party's outside counsel of

2    record to whom disclosure is reasonably necessary, and who have signed the

3    Agreement to Be Bound (Exhibit A);

4    **4.2.4**  The Court and its personnel;

5    **4.2.5**  Outside court reporters and their staff, professional jury or trial

6    consultants, and professional vendors to whom disclosure is reasonably

7    necessary, and who have signed the Agreement to Be Bound (Exhibit A);

8    **4.2.6**  During their depositions, witnesses in the action to whom

9    disclosure is reasonably necessary and who have signed the Agreement to Be

10   Bound (Exhibit A); and

11   **4.2.7**  The author or recipient of a document containing the material, or

12   a custodian or other person who otherwise possessed or knew the

13   information.

14   **4.3    Disclosure of HIGHLY CONFIDENTIAL – ATTORNEY EYES**

15   **ONLY and HIGHLY CONFIDENTIAL – SOURCE CODE Material Without**

16   **Further Approval**. Unless permitted in writing by the designator, a receiving party

17   may disclose material designated HIGHLY CONFIDENTIAL – ATTORNEY

18   EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE without further

19   approval only to:

20   **4.3.1**  The receiving party's outside counsel of record in this action and

21   employees of outside counsel of record to whom it is reasonably necessary to

22   disclose the information;

23   **4.3.2**  The Court and its personnel;

24   **4.3.3**  Outside court reporters and their staff, professional jury or trial

25   consultants, and professional vendors to whom disclosure is reasonably

26   necessary, and who have signed the Agreement to Be Bound (Exhibit A); and

27

28

-4-

PROTECTIVE ORDER

**Exhibit 19**
**-499-**

1    **4.3.4**  The author or recipient of a document containing the material, or

2    a custodian or other person who otherwise possessed or knew the

3    information.

4    **4.4**    **Procedures for Approving or Objecting to Disclosure of HIGHLY**

5    **CONFIDENTIAL – ATTORNEY EYES ONLY or HIGHLY**

6    **CONFIDENTIAL – SOURCE CODE Material to Experts**. Unless agreed to in

7    writing by the designator:

8    **4.4.1**  A party seeking to disclose to an expert retained by outside

9    counsel of record any information or item that has been designated HIGHLY

10   CONFIDENTIAL – ATTORNEY EYES ONLY or HIGHLY

11   CONFIDENTIAL – SOURCE CODE must first make a written request to

12   the designator that (1) identifies the general categories of HIGHLY

13   CONFIDENTIAL – ATTORNEY EYES ONLY or HIGHLY

14   CONFIDENTIAL – SOURCE CODE information that the receiving party

15   seeks permission to disclose to the expert, (2) sets forth the full name of the

16   expert and the city and state of his or her primary residence, (3) attaches a

17   copy of the expert's current resume  (which shall identify at least the expert's

18   education history, employement history, all publications, and all granted and

19   pending patent applications), (4) identifies the expert's current employer(s),

20   (5) identifies each person or entity from whom the expert has received

21   compensation or funding for work in his or her areas of expertise (including

22   in connection with litigation) in the past five years, and (6) identifies (by

23   name and number of the case, filing date, and location of court) any litigation

24   where the expert has offered expert testimony, including by declaration,

25   report, or testimony at deposition or trial, in the past five years. If the expert

26   believes any of this information at (4) - (6) is subject to a confidentiality

27   obligation to a third party, then the expert should provide whatever

28   information the expert believes can be disclosed without violating any

-5-

1   confidentiality agreements, and the party seeking to disclose the information

2   to the expert shall be available to meet and confer with the designator

3   regarding any such confidentiality obligations.

4        **4.4.2**  A party that makes a request and provides the information

5   specified in paragraph 4.4.1 may disclose the designated material to the

6   identified expert unless, within seven days of delivering the request, the party

7   receives a written objection from the designator providing detailed grounds

8   for the objection.

9        **4.4.3**  All challenges to objections from the designator shall proceed

10   under L.R. 37-1 through L.R. 37-4.

11   **5.   SOURCE CODE**

12        For Protected Material designated HIGHLY CONFIDENTIAL – SOURCE

13   CODE, which shall mean documents or information containing or substantively

14   relating to confidential, proprietary and/or trade secret source code or technical

15   design documentation ("Source Code Material"), the following additional

16   restrictions apply:

17        **5.1**  Access to a party's Source Code Material shall be provided only on a

18   "standalone" computer (that is, the computer may not be linked to any network,

19   including a local area network, an intranet or the Internet) ("Source Code

20   Computer") that is password protected and maintained in a secure room ("Source

21   Code Review Room").  For Defendants Netflix, Hulu, and Roku, the Source Code

22   Computer shall be located at the offices of outside counsel:  Perkins Coie LLP,

23   11452 El Camino Real, Suite 300, San Diego, CA 92130-2080; for Defendant

24   ABC, the Source Code Computer shall be located at the offices of outside counsel:

25   O'Melveny & Myers LLP, 400 South Hope Street, 18th Floor, Los Angeles, CA

26   90071.  No recordable media or recordable devices, including without limitation

27   sound recorders, computers, cellular telephones, peripheral equipment, cameras,

28

-6-

PROTECTIVE ORDER

**Exhibit 19**

**-501-**

Case 8:20-cv-00048-JVS-JDE   Document 61-2   Filed 06/26/20   Page 523 of 662   Page ID
#:4801
Case 8:18-cv-02055-GW-DFM   Document 80   Filed 08/05/19   Page 8 of 17   Page ID #:1978

1   CDs, DVDs, or drives of any kind, shall be permitted into the Source Code Review

2   Room;

3       **5.2**   The Source Code Computer will only be available during normal

4   business hours, which for purposes of this paragraph shall be 9:00 a.m. through

5   6:00 p.m. on business days (i.e., weekdays that are not federal holidays).  Prior to

6   the first inspection of any requested Source Code Material, the receiving party shall

7   provide twenty-one (21) days' notice of the Source Code Material that it wishes to

8   inspect.  The receiving party shall provide three (3) business days notice prior to

9   any subsequent inspections.  The parties agree to cooperate in good faith such that

10  maintaining the producing party's Source Code Material at the offices of its outside

11  counsel shall not unreasonably hinder the receiving party's ability to efficiently and

12  effectively conduct the prosecution or defense of this action;

13      **5.3**   The producing party shall provide the receiving party with information

14  explaining how to start, log on to, and operate the Source Code Computer in order

15  to access the produced Source Code Material on the Source Code Computer.  The

16  producing party may visually monitor the activities of the receiving party's

17  representatives during any Source Code Material review, but only to ensure that no

18  unauthorized electronic records of the Source Code Material and no information

19  concerning the Source Code Material are being created or transmitted in any way;

20      **5.4**   The producing party will produce Source Code Material in computer

21  searchable format on the Source Code Computer as described above and will, upon

22  request from the receiving party, install freely available software tools on the

23  Source Code Computer for purposes of the review (including but not limited to

24  software to perform searches of the Source Code Material), if such tools exist and

25  are in possession of the producing party at the time the first request to review

26  Source Code Material is received;

27      **5.5**   The receiving party may, at its own expense, request that the producing

28  party install software on the Source Code Computer to perform searches of the

PROTECTIVE ORDER

**Exhibit 19
-502-**

1  Source Code Material, provided that such other software is necessary for the

2  receiving party to perform its review of the Source Code Material consistent with

3  all of the protections herein.  The receiving party must provide the producing party

4  with removable electronic media (e.g., a CD, DVD, or flash memory "stick")

5  containing such software tools at least fourteen (14) days in advance of the date

6  upon which the receiving party wishes to have the additional software available for

7  use on the Source Code Computer.  Timely requests for the installation of such

8  search software will not be unreasonably denied so long as the receiving party

9  possesses an appropriate license to such software tools, and the requested search

10  software is compatible with the operating system, and other software necessary to

11  make the Source Code Material available for inspection, installed on the Source

12  Code Computer, does not prevent or impede the receiving party's access to the

13  Source Code Material produced for inspection on the Source Code Computer, and

14  does not side-step any of the security features enabled on the Source Code

15  Computer (e.g., enable connection and use of USB thumb drives).  The receiving

16  party shall not erase, load, install, compile, or otherwise modify any program (or

17  request that any other program be erased, loaded, installed, or otherwise modified

18  by the producing party) on the Source Code Computer without first submitting a

19  written request and obtaining the producing party's agreement to the request;

20  **5.6**  A receiving party may include excerpts of Source Code Material in a

21  pleading, exhibit, expert report, discovery document, deposition transcript, or other

22  court document, provided that the Source Code Material is appropriately marked

23  under this Order, restricted to those who are entitled to have access to them as

24  specified herein, and, if filed with the Court, filed under seal in accordance with the

25  Court's rules, procedures and orders;

26  **5.7**  No electronic copies of Source Code Material shall be made without

27  prior written consent of the producing party, except as necessary to create

28  documents which, pursuant to the Court's rules, procedures, and orders, must be

-8-

PROTECTIVE ORDER

**Exhibit 19**
**-503-**

1   filed or served electronically.  Images or copies of Source Code Material shall not

2   be included in correspondence between the parties (references to production

3   numbers shall be used instead).  The receiving party shall maintain a log of all such

4   electronic copies of any portion of Source Code Material in its possession or in the

5   possession of its retained consultants, including the names of the reviewers and/or

6   recipients of any such electronic copies, and the locations and manner in which the

7   electronic copies are stored.  If a party reasonably believes that it needs to submit a

8   portion of Source Code Material as part of a filing with the Court, the Party shall

9   excerpt the Source Code Material to include only the portions of Source Code

10  Material necessary to that filing;

11     **5.8**  The receiving party shall be permitted to request printouts of portions of

12  Source Code Material reasonably anticipated by the receiving party to be necessary

13  for use in, and preparation for, court filings and proceedings, infringement or

14  invalidity contentions, expert reports, and depositions of persons or entities

15  permitted access to "HIGHLY CONFIDENTIAL – SOURCE CODE" information

16  of the producing party, and such other uses to which the parties may agree or that

17  the Court may order.  The receiving party shall not request printouts of Source

18  Code Material in order to review the Source Code Material elsewhere in the first

19  instance, i.e., as an alternative to reviewing that Source Code Material

20  electronically on the Source Code Computer, as the parties acknowledge and agree

21  that the purpose of the protections herein would be frustrated by printing portions

22  of Source Code Material for review and analysis elsewhere, and that printing is

23  permitted solely to enable use of Source Code Material in filings, depositions,

24  proceedings, contentions, expert reports, and related drafts and correspondence.

25  The receiving party's outside counsel and/or experts shall be entitled to take notes

26  relating to the Source Code Material but may not copy the Source Code into the

27  notes and may not take such notes electronically on the Source Code Computer

28  itself or any other computer in the Source Code Review Room;

-9-

PROTECTIVE ORDER

**Exhibit 19**
**-504-**

**5.9**  The receiving party may request a reasonable number of printouts of Source Code Material and up to two (2) extra photocopy sets of the printed Source Code Material, all of which shall be designated and clearly labeled "HIGHLY CONFIDENTIAL – SOURCE CODE," and the receiving party shall maintain a log of all such printed or photocopied files, including the names of the reviewers and/or recipients of the copies and locations where the paper copies are stored.  To request printouts of any such portion of Source Code Material, the receiving party shall print the portions using the Source Code Computer and provide the printouts to the producing party.  Upon receiving the printouts from the receiving party, the producing party shall have five (5) business days to provide copies of the printouts of the requested Source Code Material.  The receiving party is not permitted to retain printed portions of Source Code Material in the first instance—all paper copies of Source Code Material shall be provided by the producing party.  Any printed portion of Source Code Material that consists of more than twenty (20) pages of a continuous block of Source Code Material shall be presumed to be excessive.  If the producing party objects that the printed portions are not reasonably necessary to any case preparation activity, the producing party shall make such objection known to the receiving party within seven (7) days of receipt of a request for printed portions of Source Code Material.  If after meeting and conferring, the producing party and the receiving party cannot resolve the objection (where such meet and confer need not take place in person), either party may seek an order from the Court.  Contested source code printouts need not be produced to the requesting party until the matter is resolved by the Court.  Each page of any printed copies of Source Code Material shall be printed on nonwhite, colored paper. The producing party shall clearly label each page of any printed copies "HIGHLY CONFIDENTIAL – SOURCE CODE" and give each page a unique identification number;

-10-

PROTECTIVE ORDER

Exhibit 19
-505-

**5.10**  The receiving party shall maintain a record of any individual who has inspected any portion of the Source Code Material.  Upon two (2) day's advance notice to the receiving party by the producing party, the receiving party shall provide a copy of this log to the producing party;

**5.11**  All paper copies shall be securely destroyed if they are no longer necessary in the litigation (e.g., extra copies at the conclusion of a deposition);

**5.12**  For depositions, outside counsel for the receiving party may bring one printed copy of Source Code Material.  If a receiving party intends to use source code to examine a deposition witness, the receiving party must notify the producing party of that intention no later than five (5) business days prior to the deposition.  At the election of the producing Party, (i) the receiving party may bring up to two additional printed copies of the portions of Source Code Material the receiving party intends to use to examine the deposition witness, or (ii) the producing party will provide a source code computer at the deposition containing all source code, in computer searchable format, previously produced by the producing party.  Copies of Source Code Material that are marked as deposition exhibits shall not be provided to the court reporter or attached to deposition transcripts, rather, the deposition record will identify the exhibit by its production numbers;

**5.13**  For court proceedings, outside counsel for the receiving party may bring one printed copy of Source Code Material.  If a receiving party intends to use source code during a court proceeding, the receiving party must notify the producing party of that intention no later than three (3) business days prior to the court proceeding.  At the election of the producing party, (i) the receiving party may bring up to two additional printed copies of the portions of Source Code Material the receiving party intends to use at the hearing, or (ii) the producing party will provide a source code computer at the court proceeding containing all source code, in computer-searchable format, previously produced by the producing party;

-11-

PROTECTIVE ORDER

**Exhibit 19**
**-506-**

1    **5.14**  If the receiving party's outside counsel, consultants, or experts obtain

2    printouts or photocopies of Source Code Material, the receiving party shall ensure

3    that such outside counsel, consultants, or experts keep the printouts or photocopies

4    in a secured locked area in the offices of such outside counsel, consultants, or

5    experts at all times when it is not in use.  The receiving party shall provide access to

6    the printed portions of Source Code Material to no more than a total of five (5)

7    individuals (except insofar as such code appears in any court filing or expert

8    report); and

9    **5.15**  A producing party's Source Code Material may only be transported by

10   the receiving party at the direction of a person authorized under § 4.3 above to

11   another person authorized under paragraph § 4.3 above, on paper mailed in a secure

12   container with a tracking number and must require a signature by the recipient.

13   Copies of any Source Code Material provided to the receiving party shall not be

14   mailed without express notice to the producing party.  The recipient must maintain

15   and store the Source Code Material pursuant to Paragraph § 5.14.  Source Code

16   Material may not be transported or transmitted electronically over a network of any

17   kind, including a local are network, an intranet, or the Internet, except as with

18   respect to the transmission of contentions, expert reports, sealed court filings, or

19   any other document, which pursuant to the Court's rules, procedures, or orders

20   must be filed or served electronically, and is at all times subject to the transport

21   restrictions set forth herein.

22   **6.    PROSECUTION BAR**

23   Absent written consent from the designator, any individual representing or

24   associated with the Plaintiff who receives access to HIGHLY CONFIDENTIAL –

25   ATTORNEY EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE

26   information shall not be involved in the prosecution of patents or patent

27   applications concerning the field of the invention of the patents-in-suit during the

28   pendency of this action and for two (2) years after its conclusion, including any

-12-

PROTECTIVE ORDER

**Exhibit 19**
**-507-**

1   appeals. "Prosecution" means drafting, amending, advising on the content of, or

2   otherwise affecting the scope or content of patent claims or specifications. These

3   prohibitions shall not preclude counsel from participating in reexamination or inter

4   partes review proceedings to challenge or defend the validity of any patent, but

5   counsel may not participate in the drafting of any new or amended claims in any

6   such proceedings.

7   **7.**    **PROTECTED MATERIAL SUBPOENAED OR ORDERED**

8          **PRODUCED IN OTHER LITIGATION**

9          **7.1    Subpoenas and Court Orders**.   This Order in no way excuses

10  noncompliance with a lawful subpoena or court order. The purpose of the duties

11  described in this section is to alert the interested parties to the existence of this

12  Order and to give the designator an opportunity to protect its confidentiality

13  interests in the court where the subpoena or order issued.

14         **7.2    Notification Requirement**.  If a party is served with a subpoena or a

15  court order issued in other litigation that compels disclosure of any information or

16  items designated in this action as CONFIDENTIAL, HIGHLY CONFIDENTIAL –

17  ATTORNEY EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE,

18  that party must:

19         **7.2.1**  Promptly notify the designator in writing. Such notification shall

20         include a copy of the subpoena or court order;

21         **7.2.2**  Promptly notify in writing the party who caused the subpoena or

22         order to issue in the other litigation that some or all of the material covered

23         by the subpoena or order is subject to this Order. Such notification shall

24         include a copy of this Order; and

25         **7.2.3**  Cooperate with all reasonable procedures sought by the

26         designator whose material may be affected.

27         **7.3    Wait For Resolution of Protective Order**.  If the designator timely

28  seeks a protective order, the party served with the subpoena or court order shall not

-13-

PROTECTED ORDER

**Exhibit 19**
**-508-**

1   produce any information designated in this action as CONFIDENTIAL, HIGHLY

2   CONFIDENTIAL – ATTORNEY EYES ONLY or HIGHLY CONFIDENTIAL –

3   SOURCE CODE before a determination by the court where the subpoena or order

4   issued, unless the party has obtained the designator's permission. The designator

5   shall bear the burden and expense of seeking protection of its confidential material

6   in that court.

7   **8.    <u>UNAUTHORIZED DISCLOSURE OF DESIGNATED MATERIAL</u>**

8        If a receiving party learns that, by inadvertence or otherwise, it has disclosed

9   designated material to any person or in any circumstance not authorized under this

10   Order, it must immediately (1) notify in writing the designator of the unauthorized

11   disclosures, (2) use its best efforts to retrieve all unauthorized copies of the

12   designated material, (3) inform the person or persons to whom unauthorized

13   disclosures were made of all the terms of this Order, and (4) use reasonable efforts

14   to have such person or persons execute the Agreement to Be Bound (Exhibit A).

15   **9.    <u>INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE</u>**

16   **<u>PROTECTED MATERIAL</u>**

17        When a producing party gives notice that certain inadvertently produced

18   material is subject to a claim of privilege or other protection, the obligations of the

19   receiving parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).

20   This provision is not intended to modify whatever procedure may be established in

21   an e-discovery order that provides for production without prior privilege review

22   pursuant to Federal Rule of Evidence 502(d) and (e).

23   **10.   <u>FILING UNDER SEAL</u>**

24        Without written permission from the designator or a Court order, a party may

25   not file in the public record in this action any designated material. A party seeking

26   to file under seal any designated material must comply with L.R. 79-5.1. Filings

27   may be made under seal only pursuant to a court order authorizing the sealing of the

28   specific material at issue. The fact that a document has been designated under this

-14-

PROTECTIVE ORDER

**Exhibit 19**
**-509-**

1   Order is insufficient to justify filing under seal. Instead, parties must explain the

2   basis for confidentiality of each document sought to be filed under seal. Because a

3   party other than the designator will often be seeking to file designated material,

4   cooperation between the parties in preparing, and in reducing the number and extent

5   of, requests for under seal filing is essential. If a receiving party's request to file

6   designated material under seal pursuant to L.R. 79-5.1 is denied by the Court, then

7   the receiving party may file the material in the public record unless (1) the

8   designator seeks reconsideration within four days of the denial, or (2) as otherwise

9   instructed by the Court.

10   **11.**   **<u>FINAL DISPOSITION</u>**

11       Within 60 days after the final disposition of this action, each party shall

12   return all designated material to the designator or destroy such material, including

13   all copies, abstracts, compilations, summaries, and any other format reproducing or

14   capturing any designated material. The receiving party must submit a written

15   certification to the designator by the 60- day deadline that (1) identifies (by

16   category, where appropriate) all the designated material that was returned or

17   destroyed, and (2) affirms that the receiving party has not retained any copies,

18   abstracts, compilations, summaries, or any other format reproducing or capturing

19   any of the designated material. This provision shall not prevent counsel from

20   retaining an archival copy of all pleadings, motion papers, trial, deposition, and

21   hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits,

22   expert reports, attorney work product, and consultant and expert work product, even

23   if such materials contain designated material. Any such archival copies remain

24   subject to this Order.

25

26   **IT IS SO ORDERED**.

27   DATED: August 5, 2019   _____

28               Honorable Douglas F. McCormick

                   United States Magistrate Judge

-15-

PROTECTIVE ORDER

**Exhibit 19**

**-510-**

## EXHIBIT A

## AGREEMENT TO BE BOUND

I, _____ [print or type full name], of

_____ [print or type full address], declare under penalty of perjury

that I have read in its entirety and understand the Protective Order that was issued

by the United States District Court for the Central District of California on _____

[date] in the case of _____ [insert formal name of the case and the number

and initials assigned to it by the court]. I agree to comply with and to be bound by

all the terms of this Protective Order, and I understand and acknowledge that failure

to so comply could expose me to sanctions and punishment for contempt. I

solemnly promise that I will not disclose in any manner any information or item

that is subject to this Protective Order to any person or entity except in strict

compliance with this Order.

I further agree to submit to the jurisdiction of the United States District Court

for the Central District of California for the purpose of enforcing this Order, even if

such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of

_____ [print or type full address and

telephone number] as my California agent for service of process in connection with

this action or any proceedings related to enforcement of this Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

       [printed name]

Signature: _____

       [signature]

PROTECTIVE ORDER

**Exhibit 19**
**-511-**

EXHIBIT 20

1    **Counsel Listed on Signature Page**

2

3

4                    **UNITED STATES DISTRICT COURT**

5                   **CENTRAL DISTRICT OF CALIFORNIA**

6                        **SANTA ANA DIVISION**

7   XR COMMUNICATIONS dba          )   CASE NO. 8:17-cv-0596-AG(JCGx)
    VIVATO TECHNOLOGIES,           )   consol with SACV 17-0674-
8                                  )   AG(JCGx), EDCV 17-0744-
                                   )   AG(JCGx), CV 17-2945-AG(JCGx),
9            *Plaintiff*,          )   CV 17-2948-AG(JCGx), CV 17-2951-
                                   )   AG(JCGx), CV 17-2953-AG(JCGx),
10       v.                        )   CV 17-2959-AG(JCGx), CV 17-2961-
    D-LINK SYSTEMS, INC., *et al.* )   AG(JCGx) and CV 17-2968-AG(JCGx)
11                                 )
           *Defendants*.           )
12                                 )   **STIPULATED PROTECTIVE**
                                   )   **ORDER BETWEEN XR**
13                                 )   **COMMUNICATIONS DBA VIVATO**
                                   )   **TECHNOLOGIES AND CISCO**
14                                 )   **SYSTEMS, INC.**
                                   )
15                                 )
16                                     Hon. Andrew J. Guilford

17

18      _____

19

20

21

22

23

24

25

26

27

28
        [PROPOSED] STIPULATED                    CASE NO. 8:17-cv-0596-AG(JGCx)
        PROTECTIVE ORDER RE CISCO

**Exhibit 20**
**-512-**

1       XR Communications, LLC, dba Vivato Technologies, Cisco Systems, Inc., (all the

2 above collectively the "Parties," individually a "Party"), by and through their respective

3 counsel of record, stipulate that the following Stipulated Protective Order shall apply in

4 the above-captioned action, subject to approval and entry by the Court:

5 **1.  PURPOSE AND LIMITS OF THIS ORDER**

6       The Parties agree discovery in this action is likely to involve confidential,

7 proprietary, or private information requiring special protection from public disclosure and

8 from use for any purpose other than this litigation.  Accordingly, the Parties hereby

9 stipulate to and petition the Court to enter this Stipulated Protective Order.  The Parties

10 acknowledge that this Order does not confer blanket protections on all disclosures or

11 responses to discovery, and the protection it gives from public disclosure and use extends

12 only to the specific material entitled to confidential treatment under the applicable legal

13 principles.  The Parties further acknowledge that this Order does not automatically

14 authorize the filing under seal of material designated under this Order.  Instead, the

15 Parties must comply with L.R. 79-5.1 if they seek to file anything under seal.  This Order

16 does not govern the use at trial of material designated under this Order.

17 **2.  DESIGNATING PROTECTED MATERIAL**

18       **2.1  Over-Designation Prohibited**. Any party or non-party who designates

19 information or items for protection under this Order as "CONFIDENTIAL," "HIGHLY

20 CONFIDENTIAL – ATTORNEY EYES ONLY," or "HIGHLY CONFIDENTIAL –

21 SOURCE CODE" (a "designator") must only designate specific material that qualifies

22 under the appropriate standards.  To the extent practicable, only those parts of documents,

23 items, or oral or written communications that require protection shall be designated.

24 Designations with a higher confidentiality level when a lower level would suffice are

25 prohibited.  Mass, indiscriminate, or routinized designations are prohibited.  Unjustified

26 designations expose the designator to sanctions, including the Court's striking all

27 confidentiality designations made by that designator.  Designation under this Order is

28 allowed only if the designation is necessary to protect material that, if disclosed to

[PROPOSED] STIPULATED         1       CASE NO. 8:17-cv-0596-AG(JGCx)
PROTECTIVE ORDER

**Exhibit 20**
**-513-**

persons not authorized to view it, would cause competitive or other recognized harm. Material may not be designated if it has been made public, or if designation is otherwise unnecessary to protect a secrecy interest.  If a designator learns that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that designator must promptly notify all parties that it is withdrawing the mistaken designation.

**2.2   Manner and Timing of Designations**. Designation under this Order requires the designator to affix the applicable legend ("CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE") to each page that contains protected material.  For testimony given in deposition or other proceeding, the designator shall specify all protected testimony and the level of protection being asserted.  It may make that designation during the deposition or proceeding, or may invoke, on the record or by written notice to all parties on or before the next business day, a right to have up to 21 days from the deposition or proceeding to make its designation.

**2.2.1** A party or non-party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting party has identified which material it would like copied and produced. During the inspection and before the designation, all material shall be treated as HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY.  After the inspecting party has identified the documents it wants copied and produced, the producing party must designate the documents, or portions thereof, that qualify for protection under this Order.

**2.2.2** Parties shall give advance notice if they expect a deposition or other proceeding to include designated material so that the other parties can ensure that only authorized individuals are present at those proceedings when such material is disclosed or used.  The use of a document as an exhibit at a deposition shall not in any way affect its designation.  Transcripts containing designated material shall

[PROPOSED] STIPULATED                    2                  CASE NO. 8:17-cv-0596-AG(JGCx)
PROTECTIVE ORDER RE: CISCO

**Exhibit 20**
**-514-**

have a legend on the title page noting the presence of designated material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated, and the level of protection being asserted. The designator shall inform the court reporter of these requirements.  Any transcript that is prepared before the expiration of the 21-day period for designation shall be treated during that period as if it had been designated HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY unless otherwise agreed.  After the expiration of the 21-day period, the transcript shall be treated only as actually designated.

    **2.3**    **Inadvertent Failures to Designate**. An inadvertent failure to designate does not, standing alone, waive protection under this Order.  Upon timely assertion or correction of a designation, all recipients must make reasonable efforts to ensure that the material is treated according to this Order.

**3.**  **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

    All challenges to confidentiality designations shall proceed under L.R. 37-1 through L.R. 37-4.

**4.**  **ACCESS TO DESIGNATED MATERIAL**

    **4.1**    **Basic Principles**. A receiving party may use designated material only for this litigation.  Designated material may be disclosed only to the categories of persons and under the conditions described in this Order.

    **4.2**    **Disclosure of CONFIDENTIAL Material Without Further Approval**. Unless otherwise ordered by the Court or permitted in writing by the designator, a receiving party may disclose any material designated CONFIDENTIAL only to:

        **4.2.1** The receiving party's outside counsel of record in this action and employees of outside counsel of record to whom disclosure is reasonably necessary;

**4.2.2** The officers, directors, and employees of the receiving party to whom disclosure is reasonably necessary, and who have signed the Agreement to Be Bound (Exhibit A);

**4.2.3** Experts retained by the receiving party's outside counsel of record to whom disclosure is reasonably necessary, and who have signed the Agreement to Be Bound (Exhibit A);

**4.2.4** The Court and its personnel;

**4.2.5** Outside court reporters and their staff, professional jury or trial consultants, and professional vendors to whom disclosure is reasonably necessary, and who have signed the Agreement to Be Bound (Exhibit A);

**4.2.6** During their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the Agreement to Be Bound (Exhibit A); and

**4.2.7** The author or recipient of a document containing the material, or a custodian or other person who otherwise possessed or knew the information.

**4.3     Disclosure of HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY and HIGHLY CONFIDENTIAL – SOURCE CODE Material Without Further Approval**. Unless permitted in writing by the designator, a receiving party may disclose material designated HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE without further approval only to:

**4.3.1** The receiving party's outside counsel of record in this action and employees of outside counsel of record to whom it is reasonably necessary to disclose the information;

**4.3.2** The Court and its personnel;

**4.3.3** Outside court reporters and their staff, professional jury or trial consultants, and professional vendors to whom disclosure is reasonably necessary, and who have signed the Agreement to Be Bound (Exhibit A); and

**4.3.4** The author or recipient of a document containing the material, or a custodian or other person who otherwise possessed or knew the information.

**4.4 Procedures for Approving or Objecting to Disclosure of HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE Material to In-House Counsel or Experts**. Unless agreed to in writing by the designator:

**4.4.1** A party seeking to disclose to in-house counsel any material designated HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY must first make a written request to the designator providing the full name of the in-house counsel, the city and state of such counsel's residence, and such counsel's current and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to determine present or potential involvement in any competitive decision-making.  In-house counsel are not authorized to receive material designated HIGHLY CONFIDENTIAL – SOURCE CODE.

**4.4.2** A party seeking to disclose to an expert retained by outside counsel of record any information or item that has been designated HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE must first make a written request to the designator that (1) identifies the general categories of HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE information that the receiving party seeks permission to disclose to the expert, (2) sets forth the full name of the expert and the city and state of his or her primary residence, (3) attaches a copy of the expert's current resume, (4) identifies the expert's current employer(s), (5) identifies each person or entity from whom the expert has received compensation or funding for work in his or her areas of expertise (including in connection with litigation) in the past five years, and (6) identifies (by name and number of the case, filing date, and location of court) any litigation where the expert has offered expert testimony, including by declaration, report, or

testimony at deposition or trial, in the past five years.  If the expert believes any of this information at (4) - (6) is subject to a confidentiality obligation to a third party, then the expert should provide whatever information the expert believes can be disclosed without violating any confidentiality agreements, and the party seeking to disclose the information to the expert shall be available to meet and confer with the designator regarding any such confidentiality obligations.

**4.4.3** A party that makes a request and provides the information specified in paragraphs 4.4.1 or 4.4.2 may disclose the designated material to the identified in-house counsel or expert unless, within seven days of delivering the request, the party receives a written objection from the designator providing detailed grounds for the objection.

**4.4.4** All challenges to objections from the designator shall proceed under L.R. 37-1 through L.R. 37-4.

## 5. <u>SOURCE CODE</u>

**5.1 Designation of Source Code**. If production of source code is necessary, a party may designate it as HIGHLY CONFIDENTIAL – SOURCE CODE if it is, or includes, confidential, proprietary, or trade secret source code.

**5.2 Location and Supervision of Inspection**. Any HIGHLY CONFIDENTIAL – SOURCE CODE produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the designating party's counsel or another mutually agreeable location.  The source code shall be made available for inspection on a secured stand-alone computer (that is, a computer not connected to a network, the Internet, or any peripheral device, except that the stand-alone computer may be connected to a printer or printers and dual-display monitors and will have a mouse connected, all other ports must be disabled) in a secured room, and the inspecting party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device.  No recordable media or recording devices of any

kind, including without limitation cameras, cellular telephones, CDs, DVDs, and disk drives, may be permitted into the room containing the source code computers (other than the non-networked computer that the producing party will provide for purposes of typing notes). The producing party may visually monitor the activities of the inspecting party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.

The receiving party's outside counsel and/or expert shall be entitled to take notes relating to the source code. Such notes shall not be used as an end-run around the limits on printing source code set forth in this Order. The receiving party's outside counsel and/or expert may copy terms used in the source code into the notes only to the extent reasonably necessary to support or rebut the claims and defenses of the parties in this case. The receiving party's outside counsel and/or expert may not copy complete code modules or lines of the source code into the notes. If the notes contain any source code, then the notes will be treated and marked as "HIGHLY CONFIDENTIAL – SOURCE CODE." Otherwise, such notes shall be considered and marked as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." To the extent that the receiving party's outside counsel and/or expert requests to take notes electronically, rather than by handwriting, the producing party shall provide a non-networked laptop computer in the room in which a source code computer is located, which the receiving party's outside counsel and/or expert may use to type their notes. The laptop will be connected to a nonnetworked printer and shall include both Notepad++ and sdelete software utilities. The receiving party's outside counsel and/or expert may print a copy of their notes at the end of each day of review only on paper pre-marked with the appropriate confidentiality designation, which will be provided by the producing party. Such notes shall be considered the work product of the receiving party; and the producing party shall make no attempt to retrieve the receiving party's notes from the non-networked computer. The receiving party's expert may scan the printed notes into electronic files so long as the notes do not contain source code. Such scanning may be performed only on a non-

[PROPOSED] STIPULATED PROTECTIVE ORDER RE: CISCO                7                CASE NO. 8:17-cv-0596-AG(JGCx)

**Exhibit 20**
**-519-**

networked scanner (to be provided by the producing party) connected to the non-networked laptop computer in the room in which a source code computer is located. Such scanned copy of the notes may be copied from the non-networked laptop onto an encrypted flash drive (the Producing Party will provide two such flash drives, which may be reused throughout the action), which the reviewer may take with them at the end of the day. Any notes generated from the source code review may be shared with outside counsel and with any outside experts or consultants who are approved to view material designated "HIGHLY CONFIDENTIAL – SOURCE CODE" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" under paragraph 4.3 of this Order. One paper copy of the reviewer's notes may be made for outside counsel, and one additional paper copy may be made for each authorized outside expert or consultant (up to a maximum of 5 copies total for all experts and consultants). No electronic "soft" copies of the reviewer's notes may be made except as otherwise permitted under this Order. Notice shall be provided to the Producing Party when any copy of a reviewer's notes is created or transmitted under this paragraph. Except as permitted above, no copies of all or any portion of source code may leave the room in which the source code is inspected except as otherwise provided herein. Further, no other written or electronic record of source code is permitted except as otherwise provided herein. Finally, there shall be no wholesale copying of source code.

**5.3 Persons Having Access to Source Code.** At least five (5) business days prior to the date on which first access by a particular individual is sought to the secured stand-alone computer (five-day notice period), outside counsel of record for the inspecting party shall provide a list of individuals, including attorneys, seeking to access to the stand-alone computer. The producing party shall have the right to object to such access in accordance with this Section 4.4. During the pendency of the five-day notice period, no listed individual shall have access to the stand-alone computer, unless otherwise agreed by the parties. If an objection to any specific listed individual is made, that

[PROPOSED] STIPULATED                 8          CASE NO. 8:17-cv-0596-AG(JGCx)
PROTECTIVE ORDER RE: CISCO

**Exhibit 20**
**-520-**

1  individual shall not have access to the stand-alone computer until resolution of such
2  objection.

3      **5.4 Paper Copies of Source Code Excerpts**. Except as otherwise provided herein,
4  no copies of any portion of the source code may leave the secure location in which the
5  source code is inspected.  Further, except as provided herein, no written or electronic
6  record of the source code is permitted.  Notwithstanding the foregoing, the inspecting
7  party may request printed copies of specific portions of source code designated as
8  HIGHLY CONFIDENTIAL - SOURCE CODE.  Within two (2) business days of the
9  printing request, the producing party must either (i) provide up to three (3) paper copies
10 of source code designated as HIGHLY CONFIDENTIAL – SOURCE CODE including
11 Bates numbers and appropriate confidentiality labels when printed, as they appear on any
12 stand-alone computers, of each requested file, correlated to the beginning Bates number
13 of the corresponding print-out, or, alternatively, the producing party may brand printouts
14 with the filepath and filename of each file, as it appears on any stand-alone computer; or
15 (ii) object that a printing request is excessive and/or not done for a permitted purpose.
16 The producing party must retain copies of any portions of source code printed.  The entire
17 code or an unreasonably large portion of the code must not be requested.  The inspecting
18 party is not entitled to request copies in order to review blocks of source code designated
19 as HIGHLY CONFIDENTIAL – SOURCE CODE elsewhere in the first instance, i.e., as
20 an alternative to reviewing the materials electronically on the stand-alone computers
21 provided by the producing party, as the parties acknowledge and agree that the purpose of
22 the protections herein would be frustrated by printing portions of code for review and
23 analysis elsewhere.  Printouts of the source code that exceed 50 continuous pages or 15%
24 or more of a specific software release will be presumed excessive unless the inspecting
25 party provides a compelling justification that such printed portions are necessary.  For
26 example, if the requested portion of the source code comprises a complete code module
27 that is directly relevant to the operation of the accused instrumentality, yet that requested
28 portion exceeds the aforementioned page limits, such request may be deemed a

[PROPOSED] STIPULATED                    9              CASE NO. 8:17-cv-0596-AG(JGCx)
PROTECTIVE ORDER RE: CISCO

**Exhibit 20**
**-521-**

compelling justification.  If the producing party objects within two (2) business days of a printing request that the printing request is excessive and/or not done for a permitted purpose, the producing party and inspecting party will meet and confer within two (2) business days of the producing party's objection.  If the producing party and the inspecting party cannot resolve the objection, the inspecting party may, within two (2) business days after the meet and confer, seek the Court's resolution of whether the request is narrowly tailored for a permitted purpose.  The burden will be on the inspecting party to demonstrate that such portions are no more than is reasonably necessary for a permitted purpose, and not merely for the purpose of review and analysis in another location.

**5.5 Access Record**. The inspecting party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form and such record shall include (i) the name of each person who accessed the source code; (ii) the date of access; and (iii) the location of access.  The inspecting party must produce such log to the producing party within one month of final disposition of this action or, during this action, upon seven (7) business days' advance notice to inspecting party only when the producing party has a good faith reasonable basis for believing that a violation of Section 5.4 of this Stipulated Protective Order has occurred and explains the basis for such belief in writing at the time of the request for the log.  The inspecting party shall maintain all paper copies of any printed portions of the source code in a secured, locked area at the office of the inspecting party's outside counsel of record in this action.  The inspecting party may not reproduce the paper copies of the source code, absent written agreement of the producing party.  The inspecting party shall not convert any of the information contained in the paper copies into any electronic format other than for the preparation of a pleading, exhibit, expert report, discovery document, deposition transcript, or other Court document. Any paper copies used during a deposition shall be retrieved at the end of each day and must not be left with a court reporter or any other unauthorized individual.

[PROPOSED] STIPULATED   10   CASE NO. 8:17-cv-0596-AG(JGCx)
PROTECTIVE ORDER RE: CISCO

**Exhibit 20**
**-522-**

**5.6 Use of Source Code in Deposition**. A party that wants to use any printouts of Source Code designated as HIGHLY CONFIDENTIAL – SOURCE CODE at a deposition must notify the producing party in writing at least three (3) calendar days before the date of the deposition about the specific pages the party intends to actually use at the deposition by Bates production number, and the producing party will bring printed copies of those portions of the code to the deposition.  Copies of source code designated as HIGHLY CONFIDENTIAL – SOURCE CODE that are marked as deposition exhibits must not be provided to the court reporter or attached to deposition transcripts; rather the deposition record will identify such an exhibit by its production numbers. All printouts of source code designated as HIGHLY CONFIDENTIAL – SOURCE CODE brought to a deposition must be collected by the producing party at the conclusion of the deposition. In addition (or as an alternative to the use of printouts at a deposition), the producing party shall, on request, make a copy of the source code available on a single stand-alone computer (but otherwise in the same format in which the source code is available under Section 5.2 above) during depositions of witnesses who would otherwise be permitted access to such source code.  The requesting party shall make such requests at least seven (7) calendar days before the deposition.  The producing party shall make reasonable efforts to comply with such a request made less than seven (7) calendar days before a deposition, provided the request is made in good faith and could not reasonably under the circumstances have been made sooner.

**5.7 Electronic Images and Electronic Copies of Source Code**.  Except as provided herein, absent express written permission from the producing party, the inspecting party may not create electronic images, or any other images, or make electronic copies, of the source code designated as HIGHLY CONFIDENTIAL – SOURCE CODE from any paper copy of the source code for use in any manner (including, by way of example only, the inspecting party may not scan source code designated as HIGHLY CONFIDENTIAL – SOURCE CODE to a PDF or photograph the code).  Paper copies of the source code designated as HIGHLY CONFIDENTIAL –

[PROPOSED] STIPULATED                    11             CASE NO. 8:17-cv-0596-AG(JGCx)
PROTECTIVE ORDER RE: CISCO

**Exhibit 20**
**-523-**

SOURCE CODE also may not be converted by the inspecting party into an electronic document, and may not be scanned using optical character recognition ("OCR") technology.  The exception to this restriction is for the inspecting party's expert reports, including any rebuttal reports, and for filings with the Court (subject to the limitations below).  In order to safeguard the producing party's source code that may be replicated in an expert report, the parties agree that any copies of such reports that include any portion of the producing party's source code may not be transmitted electronically, but must be served by hand delivery or via FedEx next-day delivery.  If hard copy documents containing material designated "HIGHLY CONFIDENTIAL - SOURCE CODE" are transported via FedEx, the documents must be secured in a document lock-box.  Documents may also be delivered via FedEx next-day delivery on an encrypted USB drive.  For avoidance of doubt, copies of such reports where any source code has been redacted or removed may be transmitted electronically subject, however, to the other provisions herein.  Images or copies of source code designated as HIGHLY CONFIDENTIAL – SOURCE CODE must not be included in correspondence between the parties (references to production numbers must be used instead), and must be omitted from pleadings and other papers whenever possible. If the receiving party reasonably believes that it needs to submit a portion of source code designated as HIGHLY CONFIDENTIAL – SOURCE CODE as part of a filing with the Court, the parties must meet and confer as to how to make such a filing while protecting the confidentiality of the source code.  If the parties are unable to reach agreement at the meet and confer about how such filing shall be made, the inspecting party agrees that it must observe the following minimum protections in making the filing: (i) the inspecting party will rely on expert declarations or other means to describe the relevant feature or functionality of the source code (including by identifying the corresponding production number(s) and line number(s) of the referenced source code), rather than copying portions of the source code into a filing, to the extent possible; (ii) if any portion of source code is included in a filing, the inspecting party will copy the minimal amount of source code that is necessary

[PROPOSED] STIPULATED                    12            CASE NO. 8:17-cv-0596-AG(JGCx)
PROTECTIVE ORDER RE: CISCO

**Exhibit 20**
**-524-**

1   for purposes of that filing; (iii) the filing will be made only under seal, and all

2   confidential information concerning the source code must be redacted or removed in any

3   public versions of the filed documents; and (iv) the inspecting party's communication

4   and/or disclosure of electronic files or other materials containing any portion of source

5   code in connection with a filing must at all times be limited solely to individuals who are

6   expressly authorized to view source code under the provisions of this Order, and all such

7   individuals must be identified on the log as reviewers and/or recipients of paper copies in

8   accordance with Section 5.4..

9   **6.  PROSECUTION BAR**

10          Absent written consent from the designator, any individual who receives access to

11  HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY or HIGHLY

12  CONFIDENTIAL – SOURCE CODE information shall not be involved in the

13  prosecution of patents or patent applications concerning the field of the invention of the

14  patents-in-suit for the receiving party or its acquirer, successor, predecessor, or other

15  affiliate during the pendency of this action and for one year after its conclusion, including

16  any appeals.  "Prosecution" means drafting, amending, advising on the content of, or

17  otherwise affecting the scope or content of patent claims or specifications.  These

18  prohibitions shall not preclude counsel from participating in reexamination or *inter partes*

19  review proceedings to challenge or defend the validity of any patent, but counsel may not

20  participate in the drafting of amended claims in any such proceedings.

21  **7.  PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN**
22  **OTHER LITIGATION**

23          **7.1 Subpoenas and Court Orders**. This Order in no way excuses non-compliance

24  with a lawful subpoena or court order. The purpose of the duties described in this section

25  is to alert the interested parties to the existence of this Order and to give the designator an

26  opportunity to protect its confidentiality interests in the court where the subpoena or

27  order issued.

28

[PROPOSED] STIPULATED                    13              CASE NO. 8:17-cv-0596-AG(JGCx)
PROTECTIVE ORDER RE: CISCO

**Exhibit 20**
**-525-**

**7.2     Notification Requirement**. If a party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE, that party must:

> **7.2.1** Promptly notify the designator in writing. Such notification shall include a copy of the subpoena or court order;

> **7.2.2** Promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order. Such notification shall include a copy of this Order; and

> **7.2.3** Cooperate with all reasonable procedures sought by the designator whose material may be affected.

**7.3     Wait For Resolution of Protective Order.** If the designator timely seeks a protective order, the party served with the subpoena or court order shall not produce any information designated in this action as CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE before a determination by the court where the subpoena or order issued, unless the party has obtained the designator's permission. The designator shall bear the burden and expense of seeking protection of its confidential material in that court.

## 8.   UNAUTHORIZED DISCLOSURE OF DESIGNATED MATERIAL

If a receiving party learns that, by inadvertence or otherwise, it has disclosed designated material to any person or in any circumstance not authorized under this Order, it must immediately (1) notify in writing the designator of the unauthorized disclosures, (2) use its best efforts to retrieve all unauthorized copies of the designated material, (3) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (4) use reasonable efforts to have such person or persons execute the Agreement to Be Bound (Exhibit A).

[PROPOSED] STIPULATED                        14              CASE NO. 8:17-cv-0596-AG(JGCx)
PROTECTIVE ORDER RE: CISCO

**Exhibit 20**
**-526-**

## 9.  INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIA

When a producing party gives notice that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review pursuant to Federal Rule of Evidence 502(d) and (e).

## 10. FILING UNDER SEAL

Without written permission from the designator or a Court order, a party may not file in the public record in this action any designated material. A party seeking to file under seal any designated material must comply with L.R. 79-5.1. Filings may be made under seal only pursuant to a court order authorizing the sealing of the specific material at issue. The fact that a document has been designated under this Order is insufficient to justify filing under seal. Instead, parties must explain the basis for confidentiality of each document sought to be filed under seal. Because a party other than the designator will often be seeking to file designated material, cooperation between the parties in preparing, and in reducing the number and extent of, requests for under seal filing is essential. If a receiving party's request to file designated material under seal pursuant to L.R. 79-5.1 is denied by the Court, then the receiving party may file the material in the public record unless (1) the designator seeks reconsideration within four days of the denial, or (2) as otherwise instructed by the Court.

## 11.  FINAL DISPOSITION

Within 60 days after the final disposition of this action, each party shall return all designated material to the designator or destroy such material, including all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any designated material. The receiving party must submit a written certification to the designator by the 60-day deadline that (1) identifies (by category, where appropriate) all

[PROPOSED] STIPULATED                    15          CASE NO. 8:17-cv-0596-AG(JGCx)
PROTECTIVE ORDER RE: CISCO

**Exhibit 20**
**-527-**

1   the designated material that was returned or destroyed, and (2) affirms that the receiving

2   party has not retained any copies, abstracts, compilations, summaries, or any other format

3   reproducing or capturing any of the designated material. This provision shall not prevent

4   counsel from retaining an archival copy of all pleadings, motion papers, trial, deposition,

5   and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits,

6   expert reports, attorney work product, and consultant and expert work product, even if

7   such materials contain designated material. Any such archival copies remain subject to

8   this Order.

9        IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

10

11   DATED:  March 2, 2018          Respectfully submitted,

12

13                      **RUSS AUGUST & KABAT**

14                      By: */s/* Christian W. Conkle

15                      Marc A. Fenster
                         Reza Mirzaie

16                      Philip X. Wang
                         Kent N. Shum

17                      Christian W. Conkle

18                      Minna Y. Chan

19

20                      *Attorneys for Plaintiff*
                       XR COMMUNICATIONS, LLC,

21                      dba VIVATO TECHNOLOGIES

22                      **KIRKLAND & ELLIS LLP**

23

24                      By: */s/ Sarah E. Piepmeier*
                       Sarah E. Piepmeier

25                      Email: sarah.piepmeier@kirkland.com
                       Adam R. Alper

26                      Email: adam .alper@kirkland.com
                       Sarah L. Forney

27                      Email: sarah.forney@kirkland.com

28                      555 California Street

[PROPOSED] STIPULATED      16      CASE NO. 8:17-cv-0596-AG(JGCx)
PROTECTIVE ORDER RE: CISCO

**Exhibit 20**
**-528-**

1
2
San Francisco, CA 94104
Tele: 415/439-1400
Fax: 415/439-1500

3
4
Michael W. De Vries
Email: michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Tele: 213/680-8400
Fax: 213/680-8500

5
6

7
8
*Attorneys for Defendant*
CISCO SYSTEMS, INC.

9

10
**SIGNATURE ATTESTATION**

11
12
Pursuant to Local Civil Rule 5-4.3.4(a)(2), the undersigned attests that the

13
signatories listed, and on whose behalf this filing is submitted, concur in the filing's

content and have authorized the filing.

14
15
DATED: March 2, 2018          */s/ Sarah E. Piepmeier*
Sarah E. Piepmeier

16

17
PURSUANT TO STIPULATION, IT IS SO ORDERED.

18

19
20
DATED: March 6, 2018

21
Honorable Judge Jay C. Gandhi
United States Magistrate Judge

22
23
24
25
26
27
28

[PROPOSED] STIPULATED          17          CASE NO. 8:17-cv-0596-AG(JGCx)
PROTECTIVE ORDER RE: CISCO

**Exhibit 20**
**-529-**

EXHIBIT 21

1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLAUKOS CORPORATION, a Delaware Corporation, | Civil Action No. 8:18-cv-00620-JVS (JDEx) |
|        Plaintiff, | STIPULATION AND PROTECTIVE ORDER |
|    v. | |
| IVANTIS, INC., a Delaware Corporation, | |
|        Defendant. | |

1.   <u>PURPOSES AND LIMITATIONS</u>

     Discovery in this action is likely to involve production of confidential, proprietary or private information for which special protection from public disclosure and from use for any purpose other than pursuing this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.

**Exhibit 21**
**-530-**

2.    <u>GOOD CAUSE STATEMENT</u>

This action is likely to involve trade secrets, customer and pricing lists, clinical information, business plans, and other valuable research, development, commercial, financial, technical and/or proprietary information for which special protection from disclosure and restrictions on use is warranted. Such confidential and proprietary materials and information consist of, among other things, confidential business or financial information, information regarding confidential business practices, or other confidential research, development, or commercial information (including information implicating privacy rights of third parties), information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonably necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such information is justified in this matter. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

3.    <u>ACKNOWLEDGMENT OF UNDER SEAL FILING PROCEDURE</u>

The parties further acknowledge, as set forth in Section 14.3, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Local Civil Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal. There is a strong presumption that the

**Exhibit 21**
**-531-**

1    public has a right of access to judicial proceedings and records in civil cases. In

2    connection with non-dispositive motions, good cause must be shown to support a

3    filing under seal. See Kamakana v. City and County of Honolulu, 447 F.3d 1172,

4    1176 (9th Cir. 2006), Phillips v. Gen. Motors Corp., 307 F.3d 1206, 1210-11 (9th

5    Cir. 2002), Makar-Welbon v. Sony Electrics, Inc., 187 F.R.D. 576, 577 (E.D.

6    Wis. 1999) (even stipulated protective orders require good cause showing), and a

7    specific showing of good cause or compelling reasons with proper evidentiary

8    support and legal justification, must be made with respect to Protected Material

9    that a party seeks to file under seal. The parties' mere designation of Disclosure

10   or Discovery Material as CONFIDENTIAL or HIGHLY CONFIDENTIAL

11   does not— without the submission of competent evidence by declaration,

12   establishing that the material sought to be filed under seal qualifies as

13   confidential, privileged, or otherwise protectable—constitute good cause.

14        Further, if a party requests sealing related to a dispositive motion or trial,

15   then compelling reasons, not only good cause, for the sealing must be shown, and

16   the relief sought shall be narrowly tailored to serve the specific interest to be

17   protected. See Pintos v. Pacific Creditors Ass'n., 605 F.3d 665, 677-79 (9th Cir.

18   2010). For each item or type of information, document, or thing sought to be

19   filed or introduced under seal, the party seeking protection must articulate

20   compelling reasons, supported by specific facts and legal justification, for the

21   requested sealing order. Again, competent evidence supporting the application to

22   file documents under seal must be provided by declaration.

23        Any document that is not confidential, privileged, or otherwise protectable

24   in its entirety will not be filed under seal if the confidential portions can be

25   redacted. If documents can be redacted, then a redacted version for public

26   viewing, omitting only the confidential, privileged, or otherwise protectable

27   portions of the document, shall be filed. Any application that seeks to file

28

**Exhibit 21**
**-532-**

1    documents under seal in their entirety should include an explanation of why
2    redaction is not feasible.
3    4.    <u>DEFINITIONS</u>
4         4.1    Action: Glaukos Corporation v. Ivantis, Inc., No. 8:18-cv-00620-JVS
5    (JDEx) (C.D. Cal.).
6         4.2    Challenging Party: a Party or Non-Party that challenges the
7    designation of information or items under this Order.
8         4.3    "CONFIDENTIAL" Information or Items: information (regardless
9    of how it is generated, stored or maintained) or tangible things that qualify for
10   protection under Federal Rule of Civil Procedure 26(c), and as specified above in
11   the Good Cause Statement.
12        4.4    "HIGHLY CONFIDENTIAL" Information or Items: information
13   (regardless of how it is generated, stored or maintained) or tangible things that
14   qualify for protection under Federal Rule of Civil Procedure 26(c), and as
15   specified above in the Good Cause Statement, for which the Producing Party
16   reasonably believes that the information or items are (a) trade secrets; or (b)
17   highly confidential, non-public, personal or proprietary business information, the
18   disclosure of which would be especially detrimental or harmful to the producing
19   party if disclosed beyond the limited class of permitted recipients delineated
20   herein.
21        4.5    Counsel: Outside Counsel of Record and House Counsel.
22        4.6    Designating Party: a Party or Non-Party that designates information
23   or items that it produces in disclosures or in responses to discovery as
24   "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."
25        4.7    Disclosure or Discovery Material: all items or information,
26   regardless of the medium or manner in which it is generated, stored, or
27   maintained (including, among other things, testimony, transcripts, and tangible
28   things), that are produced or generated in disclosures or responses to discovery.

4

STIPULATION AND PROTECTIVE ORDER

**Exhibit 21**
-533-

4.8    Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action, (2) is not a current employee of a Party or a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

4.9    House Counsel: attorneys who are employees of a party to this Action, who work in the legal department of a party, and whose responsibilities including supervising this Action.  Notwithstanding the above, the parties also agree that House Counsel will be deemed to include Steven McAuley, counsel for Ivantis, Inc.

4.10   Non-Party: any natural person, partnership, corporation, association or other legal entity not named as a Party to this action.

4.11   Outside Counsel of Record: attorneys who are not employees of a party to this Action but are retained to represent a party to this Action or any related proceedings, including the copending *inter partes* review proceedings before the U.S. Patent and Trademark Office (IPR2018-01147 and IPR2018-01180), and have appeared in this Action or a related proceeding on behalf of that party or are affiliated with a law firm that has appeared on behalf of that party, and includes support staff.

4.12   Party: any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

4.13   Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

4.14   Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits

**Exhibit 21**
**-534-**

1    or demonstrations, and organizing, storing, or retrieving data in any form or

2    medium) and their employees and subcontractors.

3        4.15   Protected Material: any Disclosure or Discovery Material that is

4    designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

5        4.16   Receiving Party: a Party that receives Disclosure or Discovery

6    Material from a Producing Party.

7    5.   SCOPE

8        The protections conferred by this Stipulation and Order cover not only

9    Protected Material (as defined above), but also (1) any information copied or

10   extracted from Protected Material; (2) all copies, excerpts, summaries, or

11   compilations of Protected Material; and (3) any testimony, conversations, or

12   presentations by Parties or their Counsel that might reveal Protected Material.

13       Any use of Protected Material at trial shall be governed by the orders of the

14   trial judge and other applicable authorities. This Order does not govern the use of

15   Protected Material at trial.

16   6.   DURATION

17       Once a case proceeds to trial, information that was designated as

18   CONFIDENTIAL or HIGHLY CONFIDENTIAL or maintained pursuant to

19   this protective order used or introduced as an exhibit at trial becomes public and

20   will be presumptively available to all members of the public, including the press,

21   unless compelling reasons supported by specific factual findings to proceed

22   otherwise are made to the trial judge in advance of use of such information at

23   trial. See Kamakana, 447 F.3d at 1180-81 (distinguishing "good cause" showing

24   for sealing documents produced in discovery from "compelling reasons" standard

25   when merits-related documents are part of court record).

26   7.   DESIGNATING PROTECTED MATERIAL

27       7.1   Exercise of Restraint and Care in Designating Material for

28   Protection. Each Party or Non-Party that designates information or items for

**Exhibit 21**
**-535-**

1   protection under this Order must take care to limit any such designation to

2   specific material that qualifies under the appropriate standards. The Designating

3   Party must, to the extent reasonably practicable, designate for protection only

4   those parts of material, documents, items or oral or written communications that

5   qualify so that other portions of the material, documents, items or

6   communications for which protection is not warranted are not swept unjustifiably

7   within the ambit of this Order.

8        Mass, indiscriminate or routinized designations are prohibited.

9   Designations that are shown to be clearly unjustified or that have been made for

10  an improper purpose (e.g., to unnecessarily encumber the case development

11  process or to impose unnecessary expenses and burdens on other parties) may

12  expose the Designating Party to sanctions.

13       If it comes to a Designating Party's attention that information or items that

14  it designated for protection do not qualify for protection, that Designating Party

15  must promptly notify all other Parties that it is withdrawing the inapplicable

16  designation.

17       7.2   <u>Manner and Timing of Designations</u>.  Except as otherwise provided

18  in this Order, or as otherwise stipulated or ordered, Disclosure of Discovery

19  Material that qualifies for protection under this Order must be clearly so

20  designated before the material is disclosed or produced.

21       Designation in conformity with this Order requires:

22            (a)    for information in documentary form (e.g., paper or electronic

23  documents, but excluding transcripts of depositions or other pretrial or trial

24  proceedings), that the Producing Party affix at a minimum, the legend

25  "CONFIDENTIAL" (hereinafter "CONFIDENTIAL legend") or "HIGHLY

26  CONFIDENTIAL" (hereinafter "HIGHLY CONFIDENTIAL legend"), to each

27  page that contains protected material. For electronically stored information on

28  which affixing the applicable legend to each page is not practical, the designator

**Exhibit 21**
**-536-**

1   shall designate the electronic file with the applicable confidentiality designation

2   "_CONF" or "_HIGH_CONF" appended to the file name.  If only a portion of

3   the material on a page qualifies for protection, the Producing Party also must, to

4   the extent reasonably practicable, clearly identify the protected portion(s) (e.g., by

5   making appropriate markings in the margins).

6       A Party or Non-Party that makes original documents available for

7   inspection need not designate them for protection until after the inspecting Party

8   has indicated which documents it would like copied and produced. During the

9   inspection and before the designation, all of the material made available for

10   inspection shall be deemed "HIGHLY CONFIDENTIAL."  After the inspecting

11   Party has identified the documents it wants copied and produced, the Producing

12   Party must determine which documents, or portions thereof, qualify for

13   protection under this Order. Then, before producing the specified documents, the

14   Producing Party must affix the "CONFIDENTIAL legend" or "HIGHLY

15   CONFIDENTIAL legend" to each page that contains Protected Material. If only

16   a portion of the material on a page qualifies for protection, the Producing Party

17   also must clearly identify the protected portion(s) (e.g., by making appropriate

18   markings in the margins).

19       (b)   for testimony given in depositions that the Designating Party

20   identifies the Disclosure or Discovery Material on the record, before the close of

21   the deposition all protected testimony.

22       (c)   for information produced in some form other than

23   documentary and for any other tangible items, that the Producing Party affix in a

24   prominent place on the exterior of the container or containers in which the

25   information is stored the legend "CONFIDENTIAL" or "HIGHLY

26   CONFIDENTIAL."  If only a portion or portions of the information warrants

27   protection, the Producing Party, to the extent practicable, shall identify the

28   protected portion(s).

8
STIPULATION AND PROTECTIVE ORDER

**Exhibit 21**
**-537-**

7.3     <u>Inadvertent Failures to Designate</u>.  If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

8.     <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

8.1     <u>Timing of Challenges</u>. Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

8.2     <u>Meet and Confer</u>. The Challenging Party shall initiate the dispute resolution process under Local Rule 37-1 et seq.

8.3     <u>Joint Stipulation</u>. Any challenge submitted to the Court shall be via a joint stipulation pursuant to Local Rule 37-2.

8.4     The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

9.     <u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>

9.1     <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending or attempting to settle this Action. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Action has been

**Exhibit 21**
**-538-**

1  terminated, a Receiving Party must comply with the provisions of section 15

2  below (FINAL DISPOSITION).

3      Protected Material must be stored and maintained by a Receiving Party at

4  a location and in a secure manner that ensures that access is limited to the

5  persons authorized under this Order.

6      9.2   <u>Disclosure of "CONFIDENTIAL" Information or Items</u>.  Unless

7  otherwise ordered by the court or permitted in writing by the Designating Party,

8  a Receiving Party may disclose any information or item designated

9  "CONFIDENTIAL" only to:

10      (a)   the Receiving Party's Outside Counsel of Record, as well as

11  employees of said Outside Counsel of Record to whom it is reasonably necessary

12  to disclose the information;

13      (b)   up to two House Counsel of the Receiving Party to whom

14  disclosure is reasonably necessary for this Action and who have signed the

15  "Acknowledgment and Agreement to Be Bound" (Exhibit A);

16      (c)   Experts (as defined in this Order) of the Receiving Party who

17  have complied with § 9.4 below, and their staff, assistants, or employees, to

18  whom disclosure is reasonably necessary for this Action, who have signed the

19  "Acknowledgment and Agreement to Be Bound" (Exhibit A);

20      (d)   the court and its personnel;

21      (e)   court reporters and their staff;

22      (f)   professional jury or trial consultants, mock jurors, and

23  Professional Vendors to whom disclosure is reasonably necessary for this Action

24  and who have signed the "Acknowledgment and Agreement to Be Bound"

25  (Exhibit A);

26      (g)   the author or recipient of a document containing the

27  information or a custodian or other person who otherwise is reasonably believed

28  to have possessed or known the information;

**Exhibit 21**
**-539-**

1               (h)    during their depositions, witnesses, and attorneys for

2 witnesses, in the Action who are affiliated with the Disclosing Party. Pages of

3 transcribed deposition testimony or exhibits to depositions that reveal Protected

4 Material may be separately bound by the court reporter and may not be disclosed

5 to anyone except as permitted under this Stipulated Protective Order; and

6               (i)    any mediators or settlement officers and their supporting

7 personnel, mutually agreed upon by any of the parties engaged in settlement

8 discussions.

9       9.3    Disclosure of "HIGHLY CONFIDENTIAL" Information or Items.

10 Unless otherwise ordered by the court or permitted in writing by the Designating

11 Party, a Receiving Party may disclose any information or item designated

12 "HIGHLY CONFIDENTIAL" only to those individuals or parties identified in

13 9.2(a) and 9.2(c)-(i).

14       9.4    Disclosure of Protected Material to Experts.  As a condition

15 precedent for disclosure of CONFIDENTIAL or HIGHLY CONFIDENTIAL

16 material from a Producing Party to any Expert in accordance with §§ 9.2 and 9.3,

17 at least five (5) days prior to disclosure the Receiving Party shall identify the

18 Expert by name, provide a curriculum vitae ("CV") or equivalent resume

19 disclosing the Expert's employment history, past or present relationship with any

20 of the parties, all consulting engagements in the past four years, and all cases in

21 which the individual has testified in a deposition or trial in the past four years,

22 and provide an executed copy of Exhibit A.  If a Producing Party objects to the

23 proposed disclosure to such Expert, the Producing Party must advise the

24 Receiving Party promptly and provide the specific basis for the objection, and the

25 parties shall promptly confer in good faith to resolve the concerns giving rise to

26 the objection.  If the parties are unable to reach agreement, the objecting party

27 must apply to the Court for a protective order no later than fifteen (15) days after

28 receipt of the executed copy of Exhibit A and CV or resume.  In any such motion

1    is initiated pursuant to Local Rule 37, the ten-day deadline of Local Rule 37-1

2    shall be shortened to five days.  For avoidance of doubt, no objection may be

3    made solely on the basis that an expert has previously consulted for a competitor,

4    participated in clinical studies regarding a competitor's product, or used a

5    competitor's product.  The burden shall be on the objecting party to demonstrate

6    to the Court why such Expert should not be permitted to receive Protected

7    Material.  If an objection and motion for protective order are timely made and

8    filed in accordance with this provision, Protected Material shall not be disclosed

9    to the Expert pending the Court's resolution of the dispute.

10   10.   PROTECTED MATERIAL SUBPOENAED OR ORDERED
             PRODUCED IN OTHER LITIGATION

11

12          If a Party is served with a subpoena or a court order issued in other

13   litigation that compels disclosure of any information or items designated in this

14   Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," that Party

15   must:

16          (a)    promptly notify in writing the Designating Party. Such

17   notification shall include a copy of the subpoena or court order;

18          (b)    promptly notify in writing the party who caused the subpoena

19   or order to issue in the other litigation that some or all of the material covered by

20   the subpoena or order is subject to this Protective Order. Such notification shall

21   include a copy of this Stipulated Protective Order; and

22          (c)    cooperate with respect to all reasonable procedures sought to

23   be pursued by the Designating Party whose Protected Material may be affected.

24   If the Designating Party timely seeks a protective order, the Party served with the

25   subpoena or court order shall not produce any information designated in this

26   action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" before a

27   determination by the court from which the subpoena or order issued, unless the

28   Party has obtained the Designating Party's permission. The Designating Party

12
STIPULATION AND PROTECTIVE ORDER

**Exhibit 21**
**-541-**

1    shall bear the burden and expense of seeking protection in that court of its

2    confidential material and nothing in these provisions should be construed as

3    authorizing or encouraging a Receiving Party in this Action to disobey a lawful

4    directive from another court.

5    11.    <u>A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE</u>

6        <u>PRODUCED IN THIS LITIGATION</u>

7    (a)    The terms of this Order are applicable to information produced

8    by a Non-Party in this Action and designated as "CONFIDENTIAL" or

9    "HIGHLY CONFIDENTIAL."  Such information produced by Non-Parties in

10    connection with this litigation is protected by the remedies and relief provided by

11    this Order. Nothing in these provisions should be construed as prohibiting a Non-

12    Party from seeking additional protections.

13    (b)    In the event that a Party is required, by a valid discovery

14    request, to produce a Non-Party's confidential information in its possession, and

15    the Party is subject to an agreement with the Non-Party not to produce the Non-

16    Party's confidential information, then the Party shall:

17    (1)    promptly notify in writing the Requesting Party and the

18    Non-Party that some or all of the information requested is subject to a

19    confidentiality agreement with a Non-Party;

20    (2)    promptly provide the Non-Party with a copy of the

21    Stipulated Protective Order in this Action, the relevant discovery request(s), and

22    a reasonably specific description of the information requested; and

23    (3)    make the information requested available for inspection

24    by the Non-Party, if requested.

25    (c)    If the Non-Party fails to initiate the Local Rule 37 procedure to

26    seek a protective order from this court within 14 days of receiving the notice and

27    accompanying information, the Receiving Party may produce the Non-Party's

28    confidential information responsive to the discovery request. If the Non-Party

**Exhibit 21**
**-542-**

1   timely seeks a protective order, the Receiving Party shall not produce any

2   information in its possession or control that is subject to the confidentiality

3   agreement with the Non-Party before a determination by the court. Absent a

4   court order to the contrary, the Non-Party shall bear the burden and expense of

5   seeking protection in this court of its Protected Material.

6   12.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

7          If a Receiving Party learns that, by inadvertence or otherwise, it has

8   disclosed Protected Material to any person or in any circumstance not authorized

9   under this Stipulated Protective Order, the Receiving Party must immediately (a)

10   notify in writing the Designating Party of the unauthorized disclosures, (b) use its

11   best efforts to retrieve all unauthorized copies of the Protected Material, (c)

12   inform the person or persons to whom unauthorized disclosures were made of all

13   the terms of this Order, and (d) request such person or persons to execute the

14   "Acknowledgment an Agreement to Be Bound" attached hereto as Exhibit A.

15   13.   PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED

16          MATERIAL

17          The production or disclosure of any information (including documents)

18   that a Producing Party later claims should not have been produced due to a

19   privilege or protection from discovery, including but not limited to any attorney-

20   client privilege, work product privilege, joint defense privilege, or settlement

21   privilege, shall not be deemed to waive any such privilege or protection.  A party

22   or non-party may request the return or destruction of such information, which

23   request shall identify the information and the basis for requesting its return.

24   When a Producing Party identifies such information as privileged or protected, a

25   Receiving Party: 1) shall not use, and shall immediately cease any prior use of,

26   such information; 2) shall take reasonable steps to retrieve the information from

27   others to which the Receiving Party disclosed the information; 3) shall within five

28   (5) business days of the Producing Party's request: a) return the information and

**Exhibit 21**
**-543-**

1   all copies thereof to the Producing Party; or b) destroy and confirm to the
2   Producing Party in writing that the information and all copies thereof have been
3   destroyed.  Within five days of satisfaction by the Receiving Party of conditions
4   3(a) or 3(b), above, Producing Party provide a log identifying the information
5   with sufficient detail for the Receiving Party or a Court to evaluate the claim of
6   privilege.  No one shall use the fact or circumstances of production of the
7   information that the Producing Party later claims should not have been produced
8   to argue that any privilege or protection has been waived.  Within ten (10) days
9   after a Producing Party or Receiving Party provides the log identifying the
10  information, and not thereafter, the Receiving Party may request in writing
11  production of the information on the basis that: (a) the information was never
12  privileged or protected from disclosure; or (b) any applicable privilege or
13  immunity has been waived by some act other than the production of the
14  information in this action.  The Producing Party and the Receiving Party shall
15  meet and confer in accordance with applicable law or Court rules regarding a
16  motion to compel, after which the Receiving Party may file a motion.  Any such
17  motion must be filed within 30 days of the Receiving Party's written request for
18  production described above. Notwithstanding this provision, no party shall be
19  required to return or destroy any information that may exist on any disaster
20  recovery backup system.

21  14.    MISCELLANEOUS

22      14.1  Right to Further Relief.  Nothing in this Order abridges the right of
23  any person to seek its modification by the Court in the future.

24      14.2  Right to Assert Other Objections.  By stipulating to the entry of this
25  Protective Order, no Party waives any right it otherwise would have to object to
26  disclosing or producing any information or item on any ground not addressed in
27  this Stipulated Protective Order. Similarly, no Party waives any right to object on

28

**Exhibit 21**
**-544-**

1    any ground to use in evidence of any of the material covered by this Protective

2    Order.

3         14.3   Filing Protected Material.  A Party that seeks to file under seal any

4    Protected Material must comply with Local Civil Rule 79-5. Protected Material

5    may only be filed under seal pursuant to a court order authorizing the sealing of

6    the specific Protected Material. If a Party's request to file Protected Material

7    under seal is denied by the court, then the Receiving Party may file the

8    information in the public record unless otherwise instructed by the court.

9    15.   FINAL DISPOSITION

10        After the final disposition of this Action, as defined in paragraph 6, within

11   60 days of a written request by the Designating Party, each Receiving Party must

12   return all Protected Material to the Producing Party or destroy such material. As

13   used in this subdivision, "all Protected Material" includes all copies, abstracts,

14   compilations, summaries, and any other format reproducing or capturing any of

15   the Protected Material. Whether the Protected Material is returned or destroyed,

16   the Receiving Party must submit a written certification to the Producing Party

17   (and, if not the same person or entity, to the Designating Party) by the 60-day

18   deadline that (1) identifies (by category, where appropriate) all the Protected

19   Material that was returned or destroyed and (2) affirms that the Receiving Party

20   has not retained any copies, abstracts, compilations, summaries or any other

21   format reproducing or capturing any of the Protected Material. Notwithstanding

22   this provision, Counsel are entitled to retain an archival copy of all pleadings,

23   motion papers, trial, deposition, and hearing transcripts, legal memoranda,

24   correspondence, deposition and trial exhibits, expert reports, attorney work

25   product, and consultant and expert work product, even if such materials contain

26   Protected Material. Notwithstanding this provision, no party shall be required to

27   return or destroy any Protected Material that may exist on any disaster recovery

28   backup system.  Any such archival copies that contain or constitute Protected

STIPULATION AND PROTECTIVE ORDER

**Exhibit 21**
**-545-**

1    Material remain subject to this Protective Order as set forth in Section 6

2    (DURATION).

3    16.   <u>VIOLATION</u>

4          Any violation of this Order may be punished by appropriate measures

5    including, without limitation, contempt proceedings and/or monetary sanctions.

6

7          IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

8

9    DATED:  7/26/2018              */s/ Lisa Glasser*
10                                 LISA GLASSER
11                                 Attorneys for Plaintiff

12   DATED: 7/27/2018              */s/ John Nilsson*
13                                 JOHN NILSSON
14                                 Attorneys for Defendant

15

16         FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.

17

18   DATED: August 03, 2018

19

20                                 JOHN D. EARLY
21                                 United States Magistrate Judge

22

23

24

25

26

27

28

---
17
STIPULATION AND PROTECTIVE ORDER

**Exhibit 21**
**-546-**

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  GLAUKOS CORPORATION, a | Civil Action No. 8:18-cv-00620-JVS |
| 12  Delaware Corporation, | (JDEx) |
| 13          Plaintiff, | PROPOSED EXHIBIT A TO STIPULATION AND |
| 14          v. | PROTECTIVE ORDER: ACKNOWLEDGMENT AND |
| 15  IVANTIS, INC., a Delaware | AGREEMENT TO BE BOUND |
| 16  Corporation, | |
| 17          Defendant. | |

18

19          I, _____, of

20   _____ have reviewed and understand the

21   provisions of the Stipulation and Protective Order entered Glaukos Corporation

22   v. Ivantis, Inc., No. 8:18-cv-00620-JVS (JDEx) (C.D. Cal.) (the "Protective

23   Order").  I will comply with all of the provisions of the Protective Order. I will

24   hold in confidence, will not disclose to anyone not qualified under the Protective

25   Order, and will use only for purposes of this Action any information designated

26   under the Protective Order.  Promptly upon termination of this Action, I will

27   return all documents and things designated as under the Protective Order that

28   came into my possession, and all documents and things that I have prepared

1
EXHIBIT A TO STIPULATION AND PROTECTIVE ORDER:
ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

**Exhibit 21**
**-547-**

1    relating thereto, to the outside counsel for the Party by whom I have been

2    retained in connection with this Action.  I hereby submit to the jurisdiction of

3    this Court for the purpose of enforcement of the Protective Order in this Action.

4          I state under penalty of perjury under the laws of the United States of

5    America that the foregoing is true and correct.

6

7                                                    _____

                                                     [Signature]

8
     Executed on _____    _____

9                                                    [Printed Name]

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                     2
                      EXHIBIT A TO STIPULATION AND PROTECTIVE ORDER:
                      ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

**Exhibit 21**
**-548-**

EXHIBIT 22

1

2

3

4

5

6

7

8

9 **UNITED STATES DISTRICT COURT**

10 **CENTRAL DISTRICT OF CALIFORNIA**

11 **SOUTHERN DIVISION**

12

13

14

15 INTELLECTUAL PIXELS LIMITED,

16 Plaintiff,

17 v.

18 SONY INTERACTIVE
ENTERTAINMENT LLC;

19

20 Defendant.

21

Case No. 8:19-cv-01432-JVS-KES

**STIPULATED PROTECTIVE ORDER**

22

23

24

25

26

27

28

6963282v1/016377

**Exhibit 22**
**-549-**

WHEREAS, Plaintiff Intellectual Pixels Limited and Defendant Sony Interactive Entertainment LLC ("the Parties") believe that discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

GOOD CAUSE STATEMENT: WHEREAS, this action is likely to involve trade secrets, customer and pricing lists and other valuable research, development, commercial, financial, technical and/or proprietary information for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. Such confidential and proprietary materials and information consist of, among other things, confidential business or financial information, source code, information regarding confidential business practices, or other confidential research, development, or commercial information (including information implicating privacy rights of third parties), information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure

1

**Exhibit 22**
**-550-**

1    that the parties are permitted reasonable necessary uses of such material in

2    preparation for and in the conduct of trial, to address their handling at the end of the

3    litigation, and serve the ends of justice, a protective order for such information is

4    justified in this matter. It is the intent of the parties that information will not be

5    designated as confidential for tactical reasons and that nothing be so designated

6    without a good faith belief that it has been maintained in a confidential, non-public

7    manner, and there is good cause why it should not be part of the public record of this

8    case; and

9            WHEREAS, the Parties seek a protective order limiting disclosure thereof in

10   accordance with Federal Rule of Civil Procedure 26(c):

11           1.      Each Party may designate as confidential for protection under this Order,

12   in whole or in part, any document, information or material that constitutes or includes,

13   in whole or in part, confidential or proprietary information or trade secrets of the Party

14   or a Third Party to whom the Party reasonably believes it owes an obligation of

15   confidentiality with respect to such document, information or material ("Protected

16   Material").   Protected Material shall be designated by the Party producing it by

17   affixing a legend or stamp on such document, information or material as follows:

18   "CONFIDENTIAL."   The word "CONFIDENTIAL" shall be placed clearly on each

19   page of the Protected Material (except deposition and hearing transcripts) for which

20   such protection is sought.   For deposition and hearing transcripts, the word

21   "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already

22   present on the cover page of the transcript when received from the court reporter) by

23   each attorney receiving a copy of the transcript after that attorney receives notice

24   of the designation of some or all of that transcript as "CONFIDENTIAL."

25           2.      Any document produced under Northern District of California Patent

26   Local Rule 3-2 and/or 3-4 before issuance of this Order with the designation

27   "Confidential" or "Confidential - Outside Attorneys' Eyes Only" shall receive the

28   same treatment as if designated "RESTRICTED - ATTORNEYS' EYES ONLY"

2

**Exhibit 22**
**-551-**

1  under this Order, unless and until such document is redesignated to have a different

2  classification under this Order.

3      3.    With respect to documents, information or material designated

4  "CONFIDENTIAL", "RESTRICTED - ATTORNEYS' EYES ONLY," or

5  "RESTRICTED CONFIDENTIAL SOURCE CODE" ("DESIGNATED

6  MATERIAL"),[1] subject to the provisions herein and unless otherwise stated, this

7  Order governs, without limitation: (a) all documents, electronically stored

8  information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all

9  pretrial, hearing or deposition testimony, or documents marked as exhibits or for

10  identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings

11  and other court filings; (d) affidavits; and (e) stipulations.  All copies, reproductions,

12  extracts, digests and complete or partial summaries prepared from any

13  DESIGNATED MATERIALS shall also be considered DESIGNATED

14  MATERIAL and treated as such under this Order.

15      4.    A designation of Protected Material (i.e., "CONFIDENTIAL,"

16  "RESTRICTED -ATTORNEYS' EYES ONLY," or "RESTRICTED

17  CONFIDENTIAL SOURCE CODE") may be made at any time.  Inadvertent or

18  unintentional production of documents, information or material that has not been

19  designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or

20  in part of a claim for confidential treatment.  Any party that inadvertently or

21  unintentionally produces Protected Material without designating it as DESIGNATED

22  MATERIAL may request destruction of that Protected Material by notifying the

23  recipient(s), as soon as reasonably possible after the producing Party becomes aware

24  of the inadvertent or unintentional disclosure, and providing replacement Protected

25  Material that is properly designated.  The recipient(s) shall then destroy all copies of

26

27

28

---

[1] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "RESTRICTED - ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE," both individually and collectively.

3

**Exhibit 22**
**-552-**

the inadvertently or unintentionally produced Protected Materials and any documents, information or material derived from or based thereon.

5. "CONFIDENTIAL" documents, information and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating party, upon order of the Court, or as set forth in paragraph 12 herein:

(a) outside counsel of record in this Action for the Parties;

(b) employees of such counsel (i.e., employees of outside counsel of record in this Action for the Parties) assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

(c) in-house counsel and support personnel for the Parties who either have responsibility for making decisions dealing directly with the litigation of this Action, or who are assisting outside counsel in the litigation of this Action;

(d) up to and including three (3) designated representatives of each of the Parties to the extent reasonably necessary for the litigation of this Action and the designated representatives have signed the Undertaking attached as Appendix B hereto, except that either party may in good faith request the other party's consent to designate one or more additional representatives, the other party shall not unreasonably withhold such consent, and the requesting party may seek leave of Court to designate such additional representative(s) if the requesting party believes the other party has unreasonably withheld such consent;

(e) outside consultants or experts (i.e., not existing employees of a Party or an affiliate of a Party) retained for the purpose of this litigation, provided that: (1) such consultants or experts are not presently employed by the Parties hereto for purposes other than this Action; (2) at least ten (10) days before access is given, the consultant or expert has

4

**Exhibit 22**
**-553-**

signed the Undertaking attached as Appendix A hereto and the Party that seeks to disclose to the consultant or expert any Protected Information has first provided written notice to the designating Party that (i) sets forth the full name of the expert or consultant and the city and state of her or her primary residence; (ii) provides a copy of the consultant's or expert's completed Undertaking; (iii) provides a current curriculum vitae of the consultant or expert; (iv) identifies the consultant's or expert's current employer(s), and (v) provides a list of the consultant's or expert's litigation consulting engagements during the preceding four years; and (3) the Party that receives the foregoing notice does not, within ten (10) days thereafter, object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert. The Parties agree to promptly confer within seven (7) days and use good faith to resolve any such objection.  If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order;

(f) independent litigation support service personnel, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action; and

(g) the Court and its personnel.

6.     A Party shall designate documents, information or material as "CONFIDENTIAL" only upon a good-faith belief that the documents, information

5

**Exhibit 22**
**-554-**

or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information or material.

7. Documents, information or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates, extracts, summaries or descriptions shall be classified DESIGNATED MATERIALS and subject to all of the terms and conditions of this Order.

8. To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "RESTRICTED -- ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes computer source code and/or live data (that is, data as it exists residing in a database or databases) ("Source Code Material"), the producing Party may designate such Protected Material as "RESTRICTED CONFIDENTIAL SOURCE CODE."

9. For Protected Material designated RESTRICTED -- ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a-b) and (e-g).

10. For Protected Material designated RESTRICTED CONFIDENTIAL SOURCE CODE, the following additional restrictions apply:

(a) Access to a Party's Source Code Material shall be provided only on "stand-alone" computer(s) (that is, the computer may not be linked to

6

**Exhibit 22
-555-**

any network, including a local area network ("LAN"), an intranet, or the Internet, and may not be connected to a peripheral device, except that the stand-alone computer(s) may be connected to a printer or printers, a monitor, a keyboard, and a mouse; all other ports must be disabled); except as provided in paragraph 10(k) below, the stand-alone computer(s) may only be located at secure locations in the offices of the producing Party's outside counsel. No electronic devices, including but not limited to cellular phones, PDAs, cameras, and voice recorders will be permitted in the secure location;

(b) The receiving Party shall make reasonable efforts to restrict its requests for such access to the stand-alone computer(s) to normal business hours, which for purposes of this paragraph shall be 8:00 a.m. through 6:00 p.m. on weekdays, upon five (5) business days' notice. However, upon reasonable notice from the receiving party, the producing Party shall make reasonable efforts to accommodate the receiving Party's request for access to the stand-alone computer(s) outside of normal business hours. The receiving Party must identify in writing to the producing Party the persons who will be conducting the inspection or will be present during the inspection no less than 48 hours in advance of any such inspection. Before being admitted into the secure location, an individual must provide photo identification. The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the offices of its outside counsel shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action;

(c) The producing Party shall take reasonable efforts to provide the receiving Party with information explaining how to start, log on to, and

7

Exhibit 22
-556-

operate the stand-alone computer(s) in order to access the produced Source Code Material on the stand-alone computer(s);

(d) The producing Party will produce Source Code Material in computer searchable format on the stand-alone computer(s) as described above. The receiving Party's outside counsel and/or experts shall have access to the same source code review software and tools as provided to the producing Party's outside counsel and/or experts when reviewing source code;

(e) Access to Protected Material designated RESTRICTED CONFIDENTIAL SOURCE CODE shall be limited to outside counsel of record in this Action and up to three (3) outside consultants or experts (*i.e.*, not existing employees of a Party or an affiliate of a Party) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(e) above. A receiving Party may include excerpts of Source Code Material in a pleading, exhibit, expert report, discovery document, deposition transcript, other Court document, provided that the Source Code Documents are appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures and orders;

(f) To the extent portions of Source Code Material are quoted in a Source Code Document, either (1) the entire Source Code Document will be stamped and treated as RESTRICTED CONFIDENTIAL SOURCE CODE or (2) those pages containing quoted Source Code Material will be separately stamped and treated as RESTRICTED CONFIDENTIAL SOURCE CODE;

(g) No electronic copies of Source Code Material shall be made without prior written consent of the producing Party, except as necessary to

8

**Exhibit 22**
-557-

1    create documents which, pursuant to the Court's rules, procedures and
2    order, must be filed or served electronically, subject to the restrictions
3    of Paragraph 16;

4    (h) The receiving Party shall be permitted to make a reasonable number of
5    printouts and photocopies of Source Code Material, all of which shall
6    be designated and clearly labeled "RESTRICTED CONFIDENTIAL
7    SOURCE CODE," and the receiving Party shall maintain a log of all
8    such files that are printed or photocopied; printouts of Source Code that
9    exceed 60 contiguous pages or 20% or more of a specific software
10   release will be presumed to be unreasonable unless the receiving Party
11   provides a compelling justification that such printed portions are
12   necessary.  The burden will be on the receiving Party to demonstrate
13   that such portions are no more than is reasonably necessary for a
14   permitted purpose, and not merely for the purpose of review and
15   analysis in another location;

16   (i) A receiving Party of any paper copies of Source Code Material must
17   always keep the paper copies of the Source Code at the office of the
18   receiving Party's outside counsel of record or experts, and in a locked
19   storage container at the office of the receiving Party's outside counsel
20   of record or experts when the paper copies of the Source Code are not
21   in use.  The receiving Party may not reproduce the paper copies of the
22   Source Code, absent written agreement of the producing Party;

23   (j) A Receiving Party that wants to use any printouts of Source Code
24   designated as "RESTRICTED CONFIDENTIAL SOURCE CODE" at
25   a deposition must notify the Producing Party in writing at least five (5)
26   calendar days before the date of the deposition about the specific pages
27   the Receiving Party intends to actually use at the deposition by Bates
28   production number, and the Producing Party will bring printed copies

9

**Exhibit 22**
**-558-**

Case 8:20-cv-00048-JVS-KES   Document 61-2   Filed 06/26/20   Page 583 of 662   Page ID
#:4861
Case 8:19-cv-01528-JVS-KES   Document 49-1   Filed 11/16/19   Page 11 of 29   Page ID #:319

of those portions of the code to the deposition for use by the Receiving
Party.     Copies of Source Code designated as "RESTRICTED
CONFIDENTIAL SOURCE CODE" that are marked as deposition
exhibits must not be provided to the court reporter or attached to
deposition transcripts; rather the deposition record will identify such an
exhibit by its production numbers. All printouts of Source Code
designated as "RESTRICTED CONFIDENTIAL SOURCE CODE"
brought to a deposition must be collected by the Producing Party at the
conclusion of the deposition. In addition (or as an alternative to the use
of printouts at a deposition), the Producing Party shall, on request, make
a copy of the Source Code available on a single stand-alone computer
(but otherwise in the same format in which the source code is available
under Paragraph 10(a) above) during depositions of witnesses who
would otherwise be permitted access to such Source Code. The
Receiving Party shall make such requests at least ten (10) calendar days
before the deposition.  Any deposition at which a copy of the Source
Code is made available on a single stand-alone computer shall occur at
a location mutually agreed upon by the parties;

(k) A producing Party's Source Code Material may only be transported by
the receiving Party by a person authorized under paragraph 10(e) above
to another person authorized under paragraph 10(e) above, on paper via
hand carry, via Federal Express, or via other similarly reliable courier
with tracking capabilities provided that the receiving party does not
transport more than 50 pages of Source Code Material in the same
package.  Source Code Material may not be transported or transmitted
electronically over a network of any kind, including a LAN, an intranet,
or the Internet.

6963282v1/016377

**Exhibit 22**
**-559-**

11. Any attorney representing Plaintiff, whether in-house or outside counsel, and any person associated with Plaintiff and permitted via a designating party's prior written consent to receive Defendant's Protected Material that is designated RESTRICTED -- ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the Defendant's HIGHLY SENSITIVE MATERIAL under this Order shall not advise on, consult on, prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application, specifications, claims, and/or responses to office actions, or otherwise affect the scope of claims in patents or patent applications pertaining to graphics processing or transmission on behalf of the receiving Party or its acquirer, successor, predecessor, or other affiliate during the pendency of this Action and for one year after its conclusion, including any appeals. This provision does not prohibit Plaintiff's counsel of record or experts in this litigation from participating in or representing it in reexamination proceedings, Post-Grant Review proceedings, *Inter Partes* Review proceedings, or Covered Business Method Review proceedings involving any patent, including the patents-in-suit, provided they (1) do not rely upon or use, directly or indirectly, Defendant's HIGHLY SENSITIVE MATERIAL in those proceedings and (2) do not advise on, consult on, prepare, draft, or edit any amendment to specifications or claims in those proceedings. Further, Plaintiff's counsel of record or experts in this litigation may not reveal Defendant's HIGHLY SENSITIVE MATERIAL to any reexamination, *inter partes* review, or covered business method review counsel or agent. To ensure compliance with the purpose of this provision, Plaintiff's counsel shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who, on behalf of the Party or its acquirer, successor, predecessor, or other affiliate, prepare, prosecute, supervise or assist in the

6963282v1/016377

**Exhibit 22
-560-**

preparation or prosecution of any patent application pertaining to 3D graphics processing.

12.     Nothing in this Order shall require production of documents, information or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity.  If documents, information or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity.  Any Party that inadvertently or unintentionally produces documents, information or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information or other material.  The recipient(s) shall gather and return all copies of such documents, information or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party.

13.     There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information and material to protect against disclosure to any unauthorized persons or entities.

14.     Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that in connection with such use the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the

12

**Exhibit 22**
**-561-**

1   DESIGNATED MATERIAL by virtue of his or her employment with the designating

2   party, (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or

3   copy recipient of such information, (iii) although not identified as an author,

4   addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the

5   ordinary course of business, seen such DESIGNATED MATERIAL, (iv) a current

6   officer, director or employee of the producing Party or a current  officer, director or

7   employee of a company affiliated with the producing Party; (v) counsel for a Party,

8   including outside counsel and in-house counsel (subject to paragraph 9 of this Order);

9   (vi) an independent contractor, consultant, and/or expert retained for the purpose of

10  this litigation (subject to paragraphs 5(e), 9, and 10(e) of this Order); (vii) court

11  reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder

12  to access to DESIGNATED MATERIAL.  DESIGNATED MATERIAL shall not be

13  disclosed to any other persons unless prior authorization is obtained from counsel

14  representing the producing Party or from the Court.

15        15.   Parties may, at the deposition or hearing or within thirty (30) days

16  after receipt of a deposition or hearing transcript, designate the deposition or hearing

17  transcript or any portion thereof as "CONFIDENTIAL," "RESTRICTED -

18  ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE

19  CODE" pursuant to this Order.  Access to the deposition or hearing transcript so

20  designated shall be limited in accordance with the terms of this Order.    Until

21  expiration of the 30-day period, the entire deposition or hearing transcript shall be

22  treated as "CONFIDENTIAL," "RESTRICTED – ATTORNEYS' EYES ONLY,"

23  or "RESTRICTED CONFIDENTIAL SOURCE CODE" in accordance with this

24  Order.

25        16.   Without written permission from the designating Party or a court order

26  secured after appropriate notice to all interested persons, a Party may not file in the

27  public record in this action any DESIGNATED MATERIAL. A Party that seeks to

28  file under seal any material it designated as DESIGNATED MATERIAL must

13

**Exhibit 22
-562-**

comply with Civil Local Rule 79-5(a). A party that seeks to file under seal any material another Party designated as Designated Material must comply with Civil Local Rule 79-5(b). Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. If a Party's request to file DESIGNATED MATERIAL under seal pursuant to Civil Local Rule 79-5 is denied by the court, then the Receiving Party may file the Protected Material in the public record pursuant to Civil Local Rule 79-5(a) or (b), as applicable, unless otherwise instructed by the court.

17.    The Order applies to pretrial discovery.  Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

18.    A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn.  If the designating Party does not agree to redesignation within ten (10) days of receipt of the written request, the requesting Party may apply to the Court for relief.  Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper.  Such application shall be treated procedurally as a motion to compel pursuant to Federal Rules of Civil Procedure 37, subject to the Rule's provisions relating to sanctions.  In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

19.    Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that he or she is subject to the terms and conditions of this Order, and shall sign an acknowledgment that he or

14

**Exhibit 22**
**-563-**

1    she has received a copy of, has read, and has agreed to be bound by this Order. A
2    copy of the acknowledgment form is attached as Appendix A.

3        20.    To the extent that any discovery is taken of persons who are not Parties
4    to this Action ("Third Parties") and in the event that such Third Parties contend the
5    discovery sought involves trade secrets, confidential business information, or other
6    proprietary information, then such Third Parties may agree to be bound by this Order.

7        21.    To the extent that discovery or testimony is taken of Third Parties, the
8    Third Parties may designate as "CONFIDENTIAL" or "RESTRICTED --
9    ATTORNEYS' EYES ONLY" any documents, information or other material, in
10   whole or in part, produced or given by such Third Parties. The Third Parties shall have
11   ten (10) days after production of such documents, information or other materials to
12   make such a designation. Until that time period lapses or until such a designation has
13   been made, whichever occurs sooner, all documents, information or other material so
14   produced or given shall be treated as "CONFIDENTIAL" in accordance with this
15   Order.

16       22.    Within thirty (30) days of final termination of this Action, including any
17   appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts,
18   indexes, summaries, descriptions, and excerpts or extracts thereof (excluding
19   excerpts or extracts incorporated into any privileged memoranda of the Parties and
20   materials which have been admitted into evidence in this Action), shall at the
21   producing Party's election either be returned to the producing Party or be destroyed.
22   The receiving Party shall verify the return or destruction by affidavit furnished to the
23   producing Party, upon the producing Party's request.

24       23.    The failure to designate documents, information or material in
25   accordance with this Order and the failure to object to a designation at a given time
26   shall not preclude the filing of a motion at a later date seeking to impose such
27   designation or challenging the propriety thereof. The entry of this Order and/or the
28   production of documents, information and material hereunder shall in no way

6963282v1/016377

**Exhibit 22**
**-564-**

Case 8:20-cv-00048-JVS-KES Document 61-2 Filed 06/26/20 Page 589 of 662 Page ID
Case 8:19-cv-01432-JVS-KES Document 49-1 Filed 11/15/19 Page 17 of 23 Page ID #:325
#:4867

1    constitute a waiver of any objection to the furnishing thereof, all such objections

2    being hereby preserved.

3          24.    Any Party that knows or believes that any other party is in violation of

4    or intends to violate this Order and has raised the question of violation or potential

5    violation with the opposing party and has been unable to resolve the matter by

6    agreement may move the Court for such relief as may be appropriate in the

7    circumstances. Pending disposition of the motion by the Court, the Party alleged to

8    be in violation of or intending to violate this Order shall discontinue the performance

9    of and/or shall not undertake the further performance of any action alleged to

10   constitute a violation of this Order.

11         25.    Production of DESIGNATED MATERIAL by each of the Parties shall

12   not be deemed a publication of the documents, information and material (or the

13   contents thereof) produced so as to void or make voidable whatever claim the Parties

14   may have as to the proprietary and confidential nature of the documents, information

15   or other material or its contents.

16         26.    Nothing in this Order shall be construed to effect an abrogation, waiver

17   or limitation of any kind on the rights of each of the Parties to assert any applicable

18   discovery or trial privilege.

19         27.    Each of the Parties shall also retain the right to file a motion with the

20   Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL to

21   additional persons or entities if reasonably necessary to prepare and present this

22   Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

23         **IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

24

25   Dated:  November 13, 2019        By: */s/ Kalpana Srinivasan*

26                            Kalpana Srinivasan
                              Krysta Kauble Pachman

27                            **SUSMAN GODFREY L.L.P.**
                              1900 Avenue of the Stars, 14th Floor

28                            Los Angeles, CA 90067
                              ksrinivasan@susmangodfrey.com
                              kpachman@susmangodfrey.com

                                           16

| | |
|---|---|
| 1 | Telephone: (310) 789-3100 |
| | Facsimile: (310) 789-3150 |
| 2 | |
| | Max L. Tribble, Jr. |
| 3 | David Peterson |
| | **SUSMAN GODFREY L.L.P.** |
| 4 | 1000 Louisiana, Suite 5100 |
| | Houston, TX 77002 |
| 5 | mtribble@susmangodfrey.com |
| | dpeterson@susmangodfrey.com |
| 6 | Telephone: (713) 651-9366 |
| | Facsimile: (713) 654-6666 |
| 7 | |
| 8 | Michael F. Heim |
| | Eric Enger |
| 9 | Blaine Larson |
| | **HEIM, PAYNE & CHORUSH, LLP** |
| 10 | 1111 Bagby St., Suite 2100 |
| | Houston, Texas 77002 |
| 11 | mheim@hpcllp.com |
| | eenger@hpcllp.com |
| 12 | blarson@hpcllp.com |
| | Telephone: (713) 221-2000 |
| 13 | Facsimile: (713) 221-2021 |
| 14 | Attorneys for Plaintiff Intellectual Pixels |
| | Limited |
| 15 | |
| 16 | Dated:  November 13, 2019          By:  /s/ *Mark D. Flanagan* |
| 17 | Mark D. Flanagan (SBN 130303) |
| | Mark.Flanagan@wilmerhale.com |
| 18 | Joseph F. Haag (SBN 248749) |
| | Joseph.Haag@wilmerhale.com |
| 19 | S. Dennis Wang (SBN 261296) |
| | Dennis.Wang@wilmerhale.com |
| 20 | **WILMER CUTLER PICKERING** |
| | **HALE AND DORR LLP** |
| 21 | 950 Page Mill Road |
| | Palo Alto, CA 94304 |
| 22 | Telephone: (650) 858-6000 |
| | Fax: (650) 858-6100 |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

17

James M. Dowd (SBN 259578)
  James.Dowd@wilmerhale.com
**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
350 South Grand Ave., Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5393
Fax: (213) 443-5400

*Attorneys for Defendant Sony Interactive*
*Entertainment LLC*

     All signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

**IT IS SO ORDERED.**

Dated: <u>Nov. 15</u> , 2019

_____
        Karen E. Scott
  United States Magistrate Judge

Case 8:20-cv-00948-JVS-DFM  Document 61-2  Filed 06/26/20  Page 592 of 662  Page ID
#:4870
Case 8:19-cv-01432-JVS-KES  Document 49-1  Filed 11/16/19  Page 20 of 23  Page ID #:328

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| INTELLECTUAL PIXELS LIMITED, | Case No. 8:19-cv-01432-JVS-KES |
| Plaintiff, | |
| v. | |
| SONY INTERACTIVE ENTERTAINMENT LLC; | |
| Defendant. | |

## APPENDIX A
### UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING PROTECTIVE ORDER

I, _____, declare that:

1. My address is_____. My current employer is _____. My current occupation is _____.

2. I have received a copy of the Protective Order in this action. I have carefully read and understand the provisions of the Protective Order.

3. I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL," "RESTRICTED -- ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" that is disclosed to me.

4. Promptly upon termination of this action, I will return all documents and things designated as "CONFIDENTIAL," "RESTRICTED -- ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the party by whom I am employed and in the case of designated electronic data I have

19

**Exhibit 22**
**-568-**

Case 8:20-cv-00048-JVS-KES   Document 61-2   Filed 06/26/20   Page 593 of 662   Page ID
Case 8:19-cv-01438-JVS-KES   Document 49-1   Filed 11/15/19   Page 21 of 29   Page ID #:329
#:4871

1    received in this action, I will promptly delete it and retain no copies upon

2    termination of this action.

3    5.    I hereby submit to the jurisdiction of this Court for the purpose of enforcement

4          of the Protective Order in this action.

5          I declare under penalty of perjury that the foregoing is true and correct.

6                                    Signature _____

7                                    Date _____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20

**Exhibit 22**
**-569-**

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

INTELLECTUAL PIXELS LIMITED,  | Case No. 8:19-cv-01432-JVS-KES

Plaintiff,

v.

SONY INTERACTIVE
ENTERTAINMENT LLC;

Defendant.

**APPENDIX B
UNDERTAKING OF PARTY REPRESENTATIVES REGARDING
PROTECTIVE ORDER**

I, _____, declare that:

1. My address is _____.
   My current employer is _____. My
   current occupation is _____.

2. I have received a copy of the Protective Order in this action. I have carefully read and understand the provisions of the Protective Order.

3. I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL" by the opposing party that is disclosed to me.

4. Promptly upon termination of this action, I will destroy or return to outside counsel all documents and things designated as "CONFIDENTIAL" by the opposing party that came into my possession, and in the case of designated electronic data I have received in this action by the opposing party, I will promptly delete it and retain no copies upon termination of this action.

5. I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

21

**Exhibit 22
-570-**

1    I declare under penalty of perjury that the foregoing is true and correct.

2                              Signature _____

3                              Date _____

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6963282v1/016377

**Exhibit 22**
**-571-**

# EXHIBIT 23

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| UNILOC 2017 LLC,<br><br>        Plaintiff,<br>   v.<br><br>MICROSOFT CORPORATION,<br><br>        Defendant. | CASE NO. 8:18-CV-02224-AG (JDEx)<br><br>**STIPULATED PROTECTIVE ORDER** |

**Exhibit 23**
**-572-**

**1.**     **PURPOSES AND LIMITS OF THIS ORDER**

       Discovery in this action is likely to involve confidential, proprietary, or private information requiring special protection from public disclosure and from use for any purpose other than this litigation. Thus, the Court enters this Protective Order. This Order does not confer blanket protections on all disclosures or responses to discovery, and the protection it gives from public disclosure and use extends only to the specific material entitled to confidential treatment under the applicable legal principles. This Order does not automatically authorize the filing under seal of material designated under this Order. Instead, the parties must comply with L.R. 79-5.1 if they seek to file anything under seal. This Order does not govern the use at trial of material designated under this Order.

**2.**     **DESIGNATING PROTECTED MATERIAL**

       **2.1**     **Over-Designation Prohibited.** Any party or non-party who designates information or items for protection under this Order as "PROTECTED DATA," "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" (a "designator") must only designate specific material that qualifies under the appropriate standards. To the extent practicable, only those parts of documents, items, or oral or written communications that require protection shall be designated. Designations with a higher confidentiality level when a lower level would suffice are prohibited. Mass, indiscriminate, or routinized designations are prohibited. Unjustified designations expose the designator to sanctions, including the Court's striking all confidentiality designations made by that designator. Designation under this Order is allowed only if the designation is necessary to protect material that, if disclosed to persons not authorized to view it, would cause competitive or other recognized harm. Material may not be designated if it has been made public, or if designation is otherwise unnecessary to protect a secrecy interest. If a designator learns that information or items that it designated for protection do not qualify for protection at all or do not

1

**Exhibit 23**
**-573-**

1  qualify for the level of protection initially asserted, that designator must promptly

2  notify all parties that it is withdrawing the mistaken designation.

3      **2.2    Manner and Timing of Designations.**       Designation under this

4  Order requires the designator to affix the applicable legend ("PROTECTED

5  DATA", "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEY EYES

6  ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE") to each page that

7  contains protected material. For testimony given in deposition or other proceeding,

8  the designator shall specify all protected testimony and the level of protection being

9  asserted. It may make that designation during the deposition or proceeding, or may

10 invoke, on the record or by written notice to all parties on or before the next

11 business day, a right to have up to 21 days from the deposition or proceeding to

12 make its designation.

13      **2.2.1**  A party or non-party that makes original documents or materials

14 available for inspection need not designate them for protection until after the

15 inspecting party has identified which material it would like copied and produced.

16 During the inspection and before the designation, all material shall be treated as

17 HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY. After the inspecting

18 party has identified the documents it wants copied and produced, the producing

19 party must designate the documents, or portions thereof, that qualify for protection

20 under this Order.

21      **2.2.2**  Parties shall give advance notice if they expect a deposition or

22 other proceeding to include designated material so that the other parties can ensure

23 that only authorized individuals are present at those proceedings when such

24 material is disclosed or used. The use of a document as an exhibit at a deposition

25 shall not in any way affect its designation. Transcripts containing designated

26 material shall have a legend on the title page noting the presence of designated

27 material, and the title page shall be followed by a list of all pages (including line

28 numbers as appropriate) that have been designated, and the level of protection being

**Exhibit 23**
**-574-**

1   asserted. The designator shall inform the court reporter of these requirements. Any

2   transcript that is prepared before the expiration of the 21-day period for designation

3   shall be treated during that period as if it had been designated HIGHLY

4   CONFIDENTIAL – ATTORNEY EYES ONLY unless otherwise agreed. After the

5   expiration of the 21-day period, the transcript shall be treated only as actually

6   designated.

7        **2.3    Inadvertent Failures to Designate.**   An inadvertent failure to

8   designate does not, standing alone, waive protection under this Order. Upon timely

9   assertion or correction of a designation, all recipients must make reasonable efforts

10  to ensure that the material is treated according to this Order.

11  **3.    CHALLENGING CONFIDENTIALITY DESIGNATIONS**

12       All challenges to confidentiality designations shall proceed under L.R. 37-1

13  through L.R. 37-4.

14  **4.    ACCESS TO DESIGNATED MATERIAL**

15       **4.1    Basic Principles.**   A receiving party may use designated material only

16  for this litigation. Designated material may be disclosed only to the categories of

17  persons and under the conditions described in this Order.  Designated material must

18  be stored and maintained by a receiving party at a location in the United States and

19  in a secure manner that ensures that access is limited to the persons authorized

20  under this Order.  Designated material must not be transported by any recipient to

21  any location outside the United States.

22       **4.2    Disclosure of CONFIDENTIAL Material Without Further**

23  **Approval.** Unless otherwise ordered by the Court or permitted in writing by the

24  designator, a receiving party may disclose any material designated

25  CONFIDENTIAL only to citizens or permanent residents of the United States that

26  are one of the following:

27           **4.2.1**   The receiving party's outside counsel of record in this action

28  and employees of outside counsel of record to whom disclosure is reasonably

**Exhibit 23
-575-**

1    necessary;

2    **4.2.2**   Three (3) officers, directors, and employees of the receiving

3    party to whom disclosure is reasonably necessary, and who have signed the

4    Agreement to Be Bound (Exhibit A);

5    **4.2.3**   Experts retained by the receiving party's outside counsel of

6    record to whom disclosure is reasonably necessary, and who have signed the

7    Agreement to Be Bound (Exhibit A);

8    **4.2.4**   The Court and its personnel;

9    **4.2.5**   Outside court reporters and their staff, professional jury or trial

10   consultants (as well as independent mock jurors during the course of a mock jury

11   exercise), and professional vendors to whom disclosure is reasonably necessary,

12   and who have signed the Agreement to Be Bound (Exhibit A);

13   **4.2.6**   During their depositions, witnesses in the action to whom

14   disclosure is reasonably necessary and who have signed the Agreement to Be

15   Bound (Exhibit A); and

16   **4.2.7**   The author or recipient of a document containing the material, or

17   a custodian or other person who otherwise possessed or knew the information.

18   **4.3     Disclosure of HIGHLY CONFIDENTIAL – ATTORNEY EYES**

19   **ONLY and HIGHLY CONFIDENTIAL – SOURCE CODE Material Without**

20   **Further Approval.** Unless permitted in writing by the designator, a receiving party

21   may disclose material designated HIGHLY CONFIDENTIAL – ATTORNEY

22   EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE without further

23   approval only to citizens or permanent residents of the United States that are one of

24   the following:

25   **4.3.1**   The receiving party's outside counsel of record in this action

26   and employees of outside counsel of record to whom it is reasonably necessary to

27   disclose the information;

28   **4.3.2**   The Court and its personnel;

4

**Exhibit 23**
**-576-**

**4.3.3**  Outside court reporters and their staff, professional jury or trial consultants (as well as independent mock jurors during the course of a mock jury exercise), and professional vendors to whom disclosure is reasonably necessary, and who have signed the Agreement to Be Bound (Exhibit A); and

**4.3.4**  The author or recipient of a document containing the material, or a custodian or other person who otherwise possessed or knew the information.

**4.4     Procedures for Approving or Objecting to Disclosure of HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE Material to In-House Counsel or Experts.**  Unless agreed to in writing by the designator:

**4.4.1**  A party seeking to disclose to an expert retained by outside counsel of record any information or item that has been designated HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE must first make a written request to the designator that (1) identifies the general categories of HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE information that the receiving party seeks permission to disclose to the expert, (2) sets forth the full name of the expert and the city and state of his or her primary residence, (3) attaches a copy of the expert's current resume, (4) identifies the expert's current employer(s), (5) identifies each person or entity from whom the expert has received compensation or funding for work in his or her areas of expertise (including in connection with litigation) in the past five years, (6) identifies (by name and number of the case, filing date, and location of court) any litigation where the expert has offered expert testimony, including by declaration, report, or testimony at deposition or trial, in the past five years; and (7) identifies the general subject matter of all unpublished patent applications naming that individual as an inventor. If the expert believes any of this information at (4) - (7) is subject to a confidentiality obligation to a third party, then the expert should provide whatever

5

**Exhibit 23
-577-**

1    information the expert believes can be disclosed without violating any

2    confidentiality agreements, and the party seeking to disclose the information to the

3    expert shall be available to meet and confer with the designator regarding any such

4    confidentiality obligations.

5         **4.4.2**   A party that makes a request and provides the information

6    specified in paragraphs 4.4.1 or 4.4.2 may disclose the designated material to the

7    identified in-house counsel or expert unless, within seven days of delivering the

8    request, the party receives a written objection from the designator providing

9    detailed grounds for the objection.

10        **4.4.3**   All challenges to objections from the designator shall proceed

11    under L.R. 37-1 through L.R. 37-4.

12    **5.**     **SOURCE CODE**

13       **5.1**     **Designation of Source Code**.  If production of source code is

14    necessary, a party may designate it as HIGHLY CONFIDENTIAL – SOURCE

15    CODE if it is, or includes, confidential, proprietary, or trade secret source code.

16       **5.2**     **Location and Supervision of Inspection**.  Any HIGHLY

17    CONFIDENTIAL – SOURCE CODE produced in discovery shall be made

18    available for inspection, in a format allowing it to be reasonably reviewed and

19    searched, during normal business hours or at other mutually agreeable times, at an

20    office of the designating party's counsel or another mutually agreeable location.

21    Once a designating party makes available its Source Code, the inspecting party

22    shall provide notice of its intent to review that Source Code at least seven (7)

23    business days in advance of the initial inspection, and three (3) business days in

24    advance of any subsequent inspection. The source code shall be made available for

25    inspection on a secured, "stand-alone" computer (a computer that is not linked to

26    any network, including a local area network "LAN", an intranet, or the Internet) in

27    a secured room, and the inspecting party shall not copy, remove, or otherwise

28    transfer any portion of the source code onto any recordable media or recordable

**Exhibit 23
-578-**

device. No recordable media, recordable devices, computers, cell phones, or other electronic devices may be brought into the secured room, but handwritten notes may be taken in the secured room, so long as those handwritten notes do not copy verbatim any lines of the Source Code. The designator may visually monitor the activities of the inspecting party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.  The inspecting party shall make reasonable efforts to restrict its requests for such access to the stand-alone computer(s) to normal business hours, which for purposes of this paragraph shall be 9:00 a.m. through 6:00 p.m. local time.  All persons who will review source code on behalf of a receiving party, including members of the receiving party's law firm, shall be identified in writing to the producing party at least 48 hours in advance of the first time that such person reviews such source code. Such identification shall be in addition to any other disclosure required under this Order.

> **5.3     Paper Copies of Source Code Excerpts**. The inspecting party may request paper copies of limited portions of source code not to exceed 250 pages for any one accused product, and with no contiguous block greater than 35 pages, that are reasonably necessary for the preparation of court filings, pleadings, expert reports, other papers, or for deposition or trial. The receiving party may request to print additional pages beyond the aforementioned limits; the parties will meet and confer in good faith within three (3) business days regarding such a request, and such a request will not be unreasonably denied. If the producing party does not agree to the request of the receiving party, the producing party will not object to the receiving party's request for expedited briefing regarding the producing party's denial of the request.  The designator shall provide all such source code in paper form, including Bates numbers and the label "HIGHLY CONFIDENTIAL – SOURCE CODE."  The inspecting party shall maintain a log of all paper copies of the source code including the names of the custodian(s) or location(s) where the

7

**Exhibit 23**
**-579-**

1  paper copies are store when not in use.  No more than a total of (5) individuals

2  identified by the receiving party shall have access to the printed portions of source

3  code (except insofar as such code appears in any court filing or expert report).  The

4  inspecting party shall provide a copy of this log to the producing party within seven

5  (7) days of any request by the producing party.

6      **5.4**    **Access Record**.  The inspecting party shall maintain a record of any

7  individual who has inspected any portion of the source code in electronic or paper

8  form, and shall maintain all paper copies of any printed portions of the source code

9  in a secured, locked area. The inspecting party shall not convert any of the

10  information contained in the paper copies into any electronic format other than for

11  the preparation of a pleading, exhibit, expert report, discovery document, deposition

12  transcript, or other Court document. Any paper copies used during a deposition

13  shall be retrieved at the end of each day and must not be left with a court reporter or

14  any other unauthorized individual.

15      **5.5**    **Transfer of Source Code.**  The producing party will make

16  printed paper copies of its source code available for pick-up via secure and reliable

17  hand carry at the location where the source code was inspected.  After taking

18  possession of the paper copies of source code, the receiving party can only transport

19  the paper copies of source code via secure and reliable hand carry, except that the

20  receiving party may transmit paper copies of the source code to other individuals at

21  the receiving party via Federal Express only if necessary and only if 1) the paper

22  copies of the source code are transported overnight on a day when it is certain that

23  an individual of the receiving party will be at the receiving address to receive the

24  package at the time of delivery; 2) signature is required for receipt of the package;

25  3) the tracking number is provided to the producing party, 4) the receiving party

26  confirms arrival of the package and its contents upon receipt, and 5) the producing

27  party is notified if the package does not arrive as expected and scheduled.  Paper

28  copies of source code transmitted in a single package should never exceed 35

**Exhibit 23**

**-580-**

1  pages, and source code paper copies may not be transported or transmitted

2  electronically over a network of any kind or the Internet at any time.

3  **6.    HANDLING OF PROTECTED DATA**

4      **6.1    Protected Data.** "Protected Data": refers to any information that a

5  party or non-party reasonably believes to be subject to federal, state or foreign Data

6  Protection Laws or other privacy obligations. Protected Data constitutes highly

7  sensitive materials requiring special protection. Examples of such Data Protection

8  Laws include, without limitation, The Gramm-Leach-Biley Act, 15 U.S.C. § 6801

9  et seq. (financial information); The Health Insurance Portability and Accountability

10  Act ("HIPAA") and the regulations thereunder, 45 CFR Part 160 and Subparts A

11  and E of Part 164 (medical information); Regulation (EU) 2016/679 Of the

12  European Parliament and of the Council of 27 April 2016 on the Protection of

13  Natural Persons with Regard to the Processing of Personal Data and on the Free

14  Movement of Such Data, also known as the General Data Protection Regulation

15  ("GDPR").

16      **6.2    Disclosure of Protected Data.**  Unless otherwise ordered by the court

17  or permitted in writing by the designating party, a receiving party may disclose any

18  information or item designated "PROTECTED DATA" only to certain groups of

19  individuals that can receive HIGHLY CONFIDENTIAL – ATTORNEY EYES

20  ONLY materials, as indicated in Section 4.3 herein.

21      **6.3**    The parties agree that productions of Protected Data Information may

22  require additional safeguards pursuant to Federal, State or foreign statutes,

23  regulations or privacy obligations and will meet and confer to implement these

24  safeguards if and when needed.

25  **7.    PROSECUTION BAR**

26      Absent written consent from the designator, any individual who receives

27  access to HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY or HIGHLY

28  CONFIDENTIAL – SOURCE CODE information shall not be involved in the

**Exhibit 23**

**-581-**

1   prosecution of patents or patent applications concerning the field of the invention of

2   the patents-in-suit for the receiving party or its acquirer, successor, predecessor, or

3   other affiliate during the pendency of this action and for one year after its

4   conclusion, including any appeals. "Prosecution" means drafting, amending,

5   advising on the content of, or otherwise affecting the scope or content of patent

6   claims or specifications. These prohibitions shall not preclude counsel from

7   participating in reexamination or inter partes review proceedings to challenge or

8   defend the validity of any patent, but counsel may not participate in the formulation

9   or drafting of amended claims in any such proceedings.

10  **8.   PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

11  **8.1   Subpoenas and Court Orders**.  This Order in no way excuses non-

12  compliance with a lawful subpoena or court order. The purpose of the duties

13  described in this section is to alert the interested parties to the existence of this

14  Order and to give the designator an opportunity to protect its confidentiality

15  interests in the court where the subpoena or order issued.

16  **8.2   Notification Requirement**.  If a party is served with a subpoena or a

17  court order issued in other litigation that compels disclosure of any information or

18  items designated in this action as PROTECTED DATA, CONFIDENTIAL,

19  HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY, or HIGHLY

20  CONFIDENTIAL – SOURCE CODE, that party must:

21  **8.2.1**  Promptly notify the designator in writing. Such notification shall

22  include a copy of the subpoena or court order;

23  **8.2.2**  Promptly notify in writing the party who caused the subpoena or

24  order to issue in the other litigation that some or all of the material covered by the

25  subpoena or order is subject to this Order. Such notification shall include a copy of

26  this Order; and

27  **8.2.3**  Cooperate with all reasonable procedures sought by the

28

**Exhibit 23**

**-582-**

1  designator whose material may be affected.

2       **8.3**    **Wait For Resolution of Protective Order**.  If the designator timely

3  seeks a protective order, the party served with the subpoena or court order shall not

4  produce any information designated in this action as PROTECTED DATA,

5  CONFIDENTIAL, HIGHLY CONFIDENTIAL – ATTORNEY EYES ONLY or

6  HIGHLY CONFIDENTIAL – SOURCE CODE before a determination by the court

7  where the subpoena or order issued, unless the party has obtained the designator's

8  permission. The designator shall bear the burden and expense of seeking protection

9  of its confidential material in that court.

10  **9.**    **UNAUTHORIZED DISCLOSURE OF DESIGNATED MATERIAL**

11       If a receiving party learns that, by inadvertence or otherwise, it has disclosed

12  designated material to any person or in any circumstance not authorized under this

13  Order, it must immediately (1) notify in writing the designator of the unauthorized

14  disclosures, (2) use its best efforts to retrieve all unauthorized copies of the

15  designated material, (3) inform the person or persons to whom unauthorized

16  disclosures were made of all the terms of this Order, and (4) use reasonable efforts

17  to have such person or persons execute the Agreement to Be Bound (Exhibit A).

18  **10.**    **INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE**
19       **PROTECTED MATERIAL**

20       Nothing in this Order shall require the production of documents, information

21  or other material that a Party contends is protected from disclosure by the attorney-

22  client privilege, the work product doctrine, or other privilege, doctrine or immunity.

23  When a producing party gives notice that certain inadvertently produced material is

24  subject to a claim of privilege or other protection, the obligations of the receiving

25  parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This

26  provision is not intended to modify whatever procedure may be established in an e-

27  discovery order that provides for production without prior privilege review pursuant

28  to Federal Rule of Evidence 502(d) and (e).

**Exhibit 23**
**-583-**

**11.    <u>FILING UNDER SEAL</u>**

Without written permission from the designator or a Court order, a party may not file in the public record in this action any designated material. A party seeking to file under seal any designated material must comply with L.R. 79-5.1. Filings may be made under seal only pursuant to a court order authorizing the sealing of the specific material at issue. The fact that a document has been designated under this Order is insufficient to justify filing under seal. Instead, parties must explain the basis for confidentiality of each document sought to be filed under seal. Because a party other than the designator will often be seeking to file designated material, cooperation between the parties in preparing, and in reducing the number and extent of, requests for under seal filing is essential. If a receiving party's request to file designated material under seal pursuant to L.R. 79-5.1 is denied by the Court, then the receiving party may file the material in the public record unless (1) the designator seeks reconsideration within four days of the denial, or (2) as otherwise instructed by the Court.

**12.    <u>FINAL DISPOSITION</u>**

Within 30 days after the final disposition of this action, each party shall return all designated material to the designator or destroy such material, including all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any designated material. The receiving party must submit a written certification to the designator by the 30-day deadline that (1) identifies (by category, where appropriate) all the designated material that was returned or destroyed, and (2) affirms that the receiving party has not retained any copies, abstracts, compilations, summaries, or any other format reproducing or capturing any of the designated material. This provision shall not prevent outside counsel from retaining an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, undisclosed attorney work product, and undisclosed

**Exhibit 23**

-584-

Case 8:20-cv-00048-JVS-JDE   Document 61-2   Filed 06/26/20   Page 610 of 662   Page ID
#:4888
Case 8:18-cv-02224-AG-JDE   Document 30   Filed 02/05/19   Page 14 of 15   Page ID #:192

1  consultant and expert work product, even if such materials contain designated

2  material. Any such archival copies remain subject to this Order.

3    Dated: February 5, 2019              /s/ *M. Elizabeth Day*

4                                         M. Elizabeth Day

5                                         Attorney for Plaintiff

  Dated: February 5, 2019              /s/*Aamir Kazi*

6                                         Aamir Kazi

7

8                                         Attorney for Defendant

9

10  IT IS SO ORDERED.

11

12  DATED: February 05, 2019

13

14  JOHN D. EARLY

   United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

**Exhibit 23**
-585-

## EXHIBIT A

## AGREEMENT TO BE BOUND

I, _____ [print or type full name], of

_____ [print or type full address], declare under penalty of perjury

that I have read in its entirety and understand the Protective Order that was issued

by the United States District Court for the Central District of California in Uniloc

2017 LLC v. Microsoft Corporation, Case No. 8:18-cv-02224-AG-JDE, on

February 5, 2019. I agree to comply with and to be bound by all the terms of this

Protective Order, and I understand and acknowledge that failure to so comply could

expose me to sanctions and punishment for contempt. I solemnly promise that I will

not disclose in any manner any information or item that is subject to this Protective

Order to any person or entity except in strict compliance with this Order.

I further agree to submit to the jurisdiction of the United States District Court

for the Central District of California for the purpose of enforcing this Order, even if

such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of

_____ [print or type full address and

telephone number] as my California agent for service of process in connection with

this action or any proceedings related to enforcement of this Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

           [printed name]

Signature: _____

       [signature]

14

**Exhibit 23**
**-586-**

# EXHIBIT 24

Name and address:
H. MARK LYON, SBN 162061
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
mlyon@gibsondunn.com
Telephone:  (650) 849-5300
Facsimile:  (650) 849-5333

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASIMO CORPORATION, and CERCACOR LABORATORIES, INC. | CASE NUMBER: |
| v.                                 PLAINTIFF(S) | 8:20-cv-00048 |
| APPLE INC. | **NOTICE OF APPEARANCE OR WITHDRAWAL OF COUNSEL** |
| DEFENDANT(S) | |

### INSTRUCTIONS

_Appearance of Counsel:_

Attorneys may use this form to enter an appearance in a case, or to update the docket of a case to reflect a prior appearance.  To do so, complete Sections I, II, and IV of this form, then file and serve the form in the case.  (Using an attorney's CM/ECF login and password to file this form will expedite the addition of that attorney to the docket as counsel of record.)

_Withdrawal of Counsel:_

This form may be used to terminate an attorney's status as counsel of record for a party in three situations:  (1) the attorney being terminated has already been relieved by the Court, but the docket does not yet reflect that fact; (2) at least one member of the attorney's firm or agency will continue to represent that party and the withdrawing attorney is not the only member of the Bar of this Court representing that party; or (3) the represented party has been dismissed from the case, but the attorneys are still receiving notices of electronic filing.  For any of these situations, complete Sections I, III, and IV of this form, then file and serve the form in the case.

**_Note:_**  *In situations not covered above, attorneys seeking to withdraw from a case must first obtain permission from the Court.  In such circumstances, attorneys should complete and file a "Request for Approval of Substitution or Withdrawal of Counsel" (Form G-01) rather than this "Notice of Appearance or Withdrawal of Counsel" (Form G-123).  See Form G-01 for further information.*

## SECTION I - IDENTIFYING INFORMATION

*Please complete the following information for the attorney you wish to add or remove (if removing an attorney, provide the information as it underline currently appears on the docket; if appearing pro hac vice, enter "PHV" in the field for "CA Bar Number"):*

Name: H. Mark Lyon                                         CA Bar Number: 162061

Firm or agency:  Gibson, Dunn & Crutcher

Address:  1881 Page Mill Road, Palo Alto, CA 94304-1211

Telephone Number:  (650) 849-5300                    Fax Number:  (650) 849-5333

Email:  mlyon@gibsondunn.com

Counsel of record for the following party or parties:  Apple Inc.

**Exhibit 24**
**-587-**

## SECTION II - TO ADD AN ATTORNEY TO THE DOCKET

*Please select one of the following options:*

☐ The attorney listed above has already appeared as counsel of record in this case and should have been added to the docket.  The date of the attorney's first appearance in this case: _____ .

☐ The filing of this form constitutes the first appearance in this case of the attorney listed above.  Other members of this attorney's firm or agency have previously appeared in the case.

☒ The filing of this form constitutes the first appearance in this case of the attorney listed above.  No other members of this attorney's firm or agency have previously appeared in the case.

☐ By order of the court dated _____ in case number _____ (see attached copy), the attorney listed above may appear in this case without applying for admission to practice *pro hac vice*.

☐ This case was transferred to this district by the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to 28 U.S.C. § 1407 from the _____ District of _____, where it was assigned case number _____.  The attorney listed above is counsel of record in this case in the transferee district, and is permitted by the rules of the JPML to continue to represent his or her client in this district without applying for admission to practice *pro hac vice* and without the appointment of local counsel.

☐ On _____, the attorney listed above was granted permission to appear in this case *pro hac vice* before the Bankruptcy Court, and L.Bankr.R. 8 authorizes the continuation of that representation in this case before the District Court.

*In addition, if this is a criminal case, please check the applicable box below. The attorney listed above is:*

☐ USAO   ☐ FPDO   ☐ CJA Appointment   ☐ Pro Bono   ☐ Retained

## SECTION III - TO REMOVE AN ATTORNEY FROM THE DOCKET

***Notices of Electronic Filing will be terminated***. *Please select one of the following options:*

☐ The attorney named above has already been relieved by the Court as counsel of record in this case and should have been removed from the docket.  Date of the order relieving this attorney: _____ .

☐ Please remove the attorney named above from the docket of this case; at least one member of the firm or agency named above, and at least one member of the Bar of this Court, will continue to serve as counsel of record for the party or parties indicated.
*(Note:  if you are removing yourself from the docket of this case as a result of separating from a firm or agency, you should consult Local Rules 5-4.8.1 and 83-2.4 and Form G-06 ("Notice of Change of Attorney Business or Contact Information"), concerning your obligations to notify the Clerk and parties of changes in your business or contact information.)*

☐ The represented party has been dismissed from the case, but the attorneys are still receiving notices of electronic filing.  Date party was dismissed: _____ .

☐ The attorney named above was appointed on appeal and the appeal has been adjudicated.  Date the mandate was filed: _____ .

## SECTION IV  - SIGNATURE

I request that the Clerk update the docket as indicated above.

Date: January 31, 2020 _____

Signature: /s/ H. Mark Lyon _____

Name: H. Mark Lyon _____

**Exhibit 24**
**-588-**

EXHIBIT 25

| | |
|---|---|
| 1 | Joseph R. Re (Bar No. 134479)<br>joseph.re@knobbe.com | JOSHUA H. LERNER, SBN 220755<br>jlerner@gibsondunn.com |
| 2 | Stephen C. Jensen (Bar No. 149894)<br>steve.jensen@knobbe.com | GIBSON, DUNN & CRUTCHER LLP<br>555 Mission Street Suite 3000 |
| 3 | Perry D. Oldham (Bar No. 216016)<br>perry.oldham@knobbe.com | San Francisco, CA 94105<br>Tel.:  415.393.8200 / Fax: 415.393.8306 |
| 4 | Stephen W. Larson (Bar No. 240844)<br>stephen.larson@knobbe.com | |

1  Joseph R. Re (Bar No. 134479)
   joseph.re@knobbe.com
2  Stephen C. Jensen (Bar No. 149894)
   steve.jensen@knobbe.com
3  Perry D. Oldham (Bar No. 216016)
   perry.oldham@knobbe.com
4  Stephen W. Larson (Bar No. 240844)
   stephen.larson@knobbe.com
5  KNOBBE, MARTENS, OLSON &
   BEAR, LLP
6  2040 Main Street, Fourteenth Floor
   Irvine, CA  92614
7  Telephone:  (949)-760-0404
   Facsimile:  (949)-760-9502
8
   Adam B. Powell (SBN 272725)
9  adam.powell@knobbe.com
   KNOBBE, MARTENS, OLSON &
10 BEAR, LLP
   12790 El Camino Real
11 San Diego, CA 92130
   Telephone:  (858) 707-4000
12 Facsimilie:   (858) 707-4001

13 *Attorneys for Plaintiffs Masimo*
   *Corporation and Cercacor Laboratories,*
14 *Inc.*

15

16

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.:  415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.:  650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8541 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

*Attorneys for Defendant Apple Inc.*
[Additional counsel on following page]

17

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION,<br>CERCACOR LABORATORIES, INC.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>APPLE INC.,<br><br>                    Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**JOINT STIPULATION REGARDING DEFENDANT APPLE INC.'S MOTION FOR PROTECTIVE ORDER BARRING TRADE SECRET-RELATED DISCOVERY ABSENT TRADE SECRET IDENTIFICATION**<br><br>Hr'g Date/Time: May 21, 2020, at 10 a.m.<br>Courtroom:        6A<br>Judge:              Hon. John D. Early<br>Discovery Cutoff:     July 5, 2021<br>Pretrial Conference:  March 21, 2022<br>Trial:                April 5, 2022 |

1

2       ILISSA SAMPLIN, SBN 314018
          isamplin@gibsondunn.com
3       GIBSON, DUNN & CRUTCHER LLP
        333 South Grand Avenue
4       Los Angeles, CA 90071-3197
        Tel.: 213.229.7000 / Fax: 213.229.7520

5       ANGELIQUE KAOUNIS, SBN 209833
          akaounis@gibsondunn.com
6       GIBSON, DUNN & CRUTCHER LLP
        2029 Century Park East Suite 4000
7       Los Angeles, CA 90067
        Tel.: 310.552.8546 / Fax: 310.552.7026

8
        *Attorneys for Defendant Apple Inc.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTORY STATEMENTS ................................................................. 1

    A.    Apple's Introductory Statement ................................................ 1

    B.    Plaintiffs' Introductory Statement ............................................ 3

II.   The Discovery Requests At Issue ............................................................ 6

III.  APPLE'S POSITION ................................................................................ 10

    A.    FACTS ................................................................................... 10

    1.    Plaintiffs Impermissibly Sought To Obtain Discovery Of Apple's
        Confidential Information In The *True Wearables* Case. ...................... 10

    2.    Plaintiffs Failed To Allege Their Purported Trade Secrets With Any
        Particularity. ........................................................................ 11

    3.    Plaintiffs Ignored Apple's Request For A Section 2019.210
        Disclosure And Propounded Trade Secret-Related Discovery. .............. 11

    4.    Plaintiffs Filed An FAC That Merely Expanded The Generic
        Categories Of Information Claimed As Trade Secrets. .......................... 12

    5.    Plaintiffs' Requests For Production Nos. 5-25 Seek Premature
        Trade-Secret Related Discovery From Apple. ................................... 12

    6.    The Parties Met And Conferred About Plaintiffs' Premature
        Requests For Production. ........................................................... 17

    B.    ARGUMENT .......................................................................... 18

    1.    That Plaintiffs Filed Their CUTSA Claim In Federal Court Does
        Not Mean Plaintiffs Need Not Describe Their Secrets. ......................... 19

    2.    Plaintiffs Have Not Identified Their Purported Trade Secrets, And
        The FAC Does Not Suffice. ........................................................ 20

    3.    Plaintiffs' Refusal To Comply With Section 2019.210 Frustrates
        Each Of The Four Purposes Of The Statute. ..................................... 21

        a)    Plaintiffs Have Not Demonstrated That Their Trade
            Secret Claim Has Any Merit. ......................................... 22

        b)    Plaintiffs Have Not Demonstrated That They Are
            Actually Looking For *Their* Secrets In Apple's Files. ........ 24

        c)    Plaintiffs Have Not Assisted The Court In Framing
            The Scope Of Trade Secret-Related Discovery. ................. 26

        d)    Plaintiffs Have Not Enabled Apple To Defend Against
            Their Trade Secret Misappropriation Claim. ..................... 27

| | C. | CONCLUSION ............................................................................. 28 |
| IV. | | PLAINTIFFS' POSITION ............................................................... 29 |
| | A. | Judge Selna Already Decided Patent Discovery Is Not Stayed ............. 29 |
| | B. | Section 2019.210 Does Not Bar Patent Discovery ................................. 30 |
| | C. | The Discovery At Issue Is Patent Discovery ........................................ 34 |
| | D. | Apple's Other Arguments Are Irrelevant and Incorrect ......................... 37 |
| | E. | Conclusion ................................................................................ 40 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

**Exhibit 25
-592-**

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Defendant Apple Inc. ("Apple"), as movant, and Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor"), as respondents, submit the following Joint Stipulation regarding Apple's Motion for a Protective Order.  Pursuant to Local Rule 37-1, the parties met and conferred in good faith in an effort to resolve the Motion.

## I.    INTRODUCTORY STATEMENTS

### A.    Apple's Introductory Statement

Apple seeks an order barring Plaintiffs from taking trade secret-related discovery until Plaintiffs describe their trade secrets with reasonable particularity consistent with California Code of Civil Procedure Section 2019.210 ("Section 2019.210").   Apple wants to address the trade secret claim in this action as quickly as possible, and therefore has repeatedly requested that Plaintiffs comply with the procedures set out in Section 2019.210 since the outset of the case.  Plaintiffs have refused.

District courts throughout California, *including this Court*, recognize that Section 2019.210 serves an essential function in cases like this one—it discourages meritless trade secret claims, prevents plaintiffs from abusing the discovery process to access the defendant's trade secrets, assists the court in framing the appropriate scope of discovery, and enables a defendant to form "complete and well-reasoned defenses" against claims of misappropriation.  *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D. Cal. Sept. 3, 2019) (Early, J.).

The need for a reasonable description of the alleged secrets in this case is acute.  Plaintiffs' allegations of trade secret misappropriation raise *every* problem that Section 2019.210 is intended to solve:

*First*, the only description of the alleged trade secrets provided by Plaintiffs—in their First Amended Complaint—provides no hint as to the merits of the misappropriation claim.  To the contrary, Plaintiffs' original complaint claimed a non-exhaustive list of seven broad categories of information, such as "business plans" and "technical data."  Lerner Decl. Ex. C (Compl.) ¶ 181.  Plaintiffs then compounded the

1    problem by amending to allege a new list of *50* generalized categories of information,

2    *including but not limited to* "technical information, sales and marketing information, and

3    other business information," as well as unspecified combinations.  *Id.* Ex. G (FAC)

4    ¶ 211.  Plaintiffs allege thousands of potential trade secrets in non-descript categories

5    that cover every aspect of Plaintiffs' business.  These broad categories and combinations

6    are insufficient to plead a claim, and are *unquestionably* insufficient to satisfy Plaintiffs'

7    obligation to identify their alleged secrets with particularity before taking trade secret-

8    related discovery.   Furthermore, Plaintiffs concede that many, if not all, of their

9    purported secrets are now public.  Plaintiffs cannot force Apple to search for the

10   proverbial needle in the haystack by claiming generalized categories of information that

11   might or might not qualify as trade secrets.

12        *Second*, Plaintiffs repeatedly have tried to access Apple's confidential information

13   before they identify their own alleged trade secrets.  Just *one day before* Plaintiffs filed

14   this case, they sought discovery of Apple's confidential information through a third-

15   party subpoena in *Masimo Corp. et al. v. True Wearables Inc. et al.*, No. 8:18-cv-02001-

16   JVS-JDE (the "*True Wearables* Case").   The subpoena created the obvious risk that

17   Section 2019.210 guards against:    Plaintiffs could review whatever confidential

18   information about health monitoring technology they could find in Apple's files and

19   claim it as their own.  Plaintiffs jettisoned their subpoena after Apple sought a protective

20   order and their strategy was exposed.  The requests for production at issue here are

21   merely a continuation of that strategy.  Plaintiffs characterize the requests for production

22   as patent-related, but that is nothing more than an attempted end-run around Section

23   2019.210.   The requests for production, on their face, seek the very categories of

24   information that Plaintiffs allege as their trade secrets.  Plaintiffs cannot use their patents

25   as a vehicle by which to review Apple's confidential information in another effort to

26   concoct a misappropriation claim.

27        *Third*, until Plaintiffs specifically define their alleged trade secrets, neither the

28   Court nor the parties can tailor or manage the discovery process in this case.  Among

**Exhibit 25
-594-**

1    other things, it is impossible to measure proportionality under Rule 26. Indeed, Plaintiffs

2    allege that their list of about 50 generalized categories of purported trade secret

3    information, plus unspecified combinations of those categories, is not even complete.

4    Plaintiffs state that their trade secrets "include, but are not limited to," 50 general

5    categories of information (Lerner Decl. Ex. G (FAC) ¶ 211)—a caveat that renders the

6    scope of the already broad categories unbounded, making it impossible to efficiently and

7    effectively conduct discovery in this case.

8         *Fourth*, without a clear articulation of the trade secrets at issue, Apple cannot

9    formulate complete and well-reasoned defenses. A reasonable description of the alleged

10   secrets will assist Apple in addressing basic issues, including the statute of limitations

11   and, relatedly, which alleged secrets were public and when. Furthermore, if there are

12   any valid secrets here—and Apple does not believe there are—an adequate description

13   will enable Apple to curtail any purported future harm to Plaintiffs.

14        For these reasons, Apple respectfully requests that the Court grant a protective

15   order prohibiting Plaintiffs from "commencing discovery relating to the [alleged] trade

16   secret[s]" until Plaintiffs provide a Section 2019.210 disclosure that describes their

17   purported secrets with the "reasonable particularity" the law requires. Cal. Code Civ.

18   Proc. § 2019.210.

19   **B.   Plaintiffs' Introductory Statement**

20        Apple's Motion is moot because Judge Selna already decided the issues raised in

21   Apple's Motion. After Apple served its portion of the joint stipulation, the parties

22   submitted a Rule 26(f) report addressing whether and how Section 2019.210 applies to

23   this case. *See* Powell Decl., Ex. 8. Like it does here, Apple argued Section 2019.210

24   bars discovery of information concerning Plaintiffs' patent case that may ***also*** be

25   relevant to trade secrets. *Id*. at 13, 16-20. Apple "request[e]d that Plaintiffs be barred

26   from commencing" such discovery until Plaintiffs serve a Section 2019.210 statement.

27   *Id*. at 20. The parties proposed patent-specific dates, including dates for infringement

28   contentions and Apple disclosing "core technical documents" concerning the "accused

Gibson, Dunn &
Crutcher LLP

**Exhibit 25**
**-595-**

1    products." *Id.* at 25-26.  Apple argued, however, that these patent-specific dates should

2    be "subject to Plaintiffs providing an adequate identification of their alleged trade secrets

3    in compliance with Section 2019.210 insofar as such an identification is a prerequisite

4    to such discovery." *Id.* at 26.

5         Judge Selna rejected Apple's argument and resolved the dispute, holding: "The

6    Court **adopts the patent specific dates**.  The Court stays the **trade secret discovery only**

7    pending compliance with 2019.210."  Powell Decl., Ex. 9 (emphasis added).  After the

8    ruling, Plaintiffs stated they will provide a Section 2019.210 statement before serving

9    trade secret discovery and asked Apple to withdraw this Motion because the requests at

10   issue seek **patent discovery**, which is **not** stayed.  Apple refused, maintaining that **all**

11   discovery concerning the accused products is barred because it is also relevant to trade

12   secrets.  Apple thus seeks a do-over through this Joint Stipulation.

13        Apple's objective is obvious: Apple intends to litigate the sufficiency of whatever

14   Section 2019.210 statement Plaintiffs serves and thereby delay **all** technical discovery.

15   Apple asserts that, in a "typical case," the plaintiff "serves a Section 2019.210 disclosure

16   and the parties litigate the deficiencies."  Joint Stipulation at 20.  Allowing Apple to

17   delay patent discovery while it litigates the sufficiency of Plaintiffs' Section 2019.210

18   disclosure directly contradicts Judge Selna's ruling adopting the "patent specific dates"

19   and staying "trade secret discovery only." Powell Decl., Ex. 9.  This Court should refrain

20   from modifying what the Order already says: patent discovery must move forward.

21        Patent discovery is necessary to comply with Court-ordered deadlines, including

22   infringement contentions.  The requests seek basic information about the accused

23   products.  Some are even directed towards particular claim limitations. For example,

24   RFP No. 16 seeks information about components that "separate light emitted by LEDs

25   from other components of any of the Accused Products."  That is relevant at least to

26   claim language reciting "a light block forming an enclosing wall between the light

27   emission source and the plurality of detectors . . . ."  Powell Decl., Ex. 1 at Claim 1.

28        Even if Judge Selna had not already entered his Order, nothing would support

Gibson, Dunn &
Crutcher LLP

**Exhibit 25**
**-596-**

1  Apple's argument.  Apple recites Section 2019.210, but ignores the case law interpreting

2  the statute.  *See* Cal. Code Civ. Proc. § 2019.210 ("before commencing discovery

3  relating to the trade secret, the party alleging the misappropriation shall identify the trade

4  secret with reasonable particularity").  Apple argues the "relating to" language bars all

5  patent discovery if the requested information is ***also*** relevant to trade secrets.  But the

6  California Court of Appeals construed Section 2019.210 as barring discovery of other

7  claims only if the claim is "factually dependent" or "hinges upon" the misappropriation

8  of trade secrets.  *See Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal.

9  App. 4th 826, 835 (2005).

10  As a result, California courts routinely require a defendant to produce technical

11  documents relevant to patent infringement even if the documents could also be relevant

12  to a trade secret claim.  *See, e.g.*, *Space Data Corp. v. X*, 2017 WL 3007078, *4 (N.D.

13  Cal. July 14, 2017).  Similarly, this Court refused to bar discovery of "drawings and

14  designs for unreleased products" under Section 2019.210 because the information was

15  "relevant to claims other than the trade secret misappropriation claim, such as

16  [plaintiff]'s claim for copyright infringement."  *Bryant v. Mattel*, 2007 WL 5430888, *3

17  n.3 (C.D. Cal. May 18, 2007); *see also E. & J. Gallo Winery v. Instituut Voor Landbouw-*

18  *En Visserijonderzoek*, 2018 WL 3062160, at *6 (E.D. Cal. June 19, 2018) (finding

19  Section 2019.210 disclosure was insufficient, but holding the parties "shall proceed with

20  discovery on non-trade secret claims" while plaintiffs prepared an amended disclosure).

21  Apple originally relied on *Advanced Modular* during the meet-and-confer.

22  However, Plaintiffs pointed out that *Advanced Modular* supports Plaintiffs because, in

23  this case, patent infringement is not "factually dependent" on misappropriation of trade

24  secrets. Apple did not argue otherwise, instead abandoning its reliance on *Advanced*

25  *Modular* and relying exclusively on the "related to" language of Section 2019.210.

26  Nothing supports Apple's sweeping interpretation of the statute.

27  Apple also sets forth a series of largely irrelevant and factually misleading

28  arguments.  For example, Apple argues the First Amended Complaint broadened

Gibson, Dunn &
Crutcher LLP

**Exhibit 25**
**-597-**

1    Plaintiffs' trade secret definition.  The amendment actually provided additional detail
2    about the categories of trade secrets identified in the initial Complaint.  Apple also
3    asserts "Plaintiffs concede that many, if not all, of their purported secrets are now
4    public."  Joint Stipulation at 2.  That is incorrect.  Plaintiffs alleged Apple published
5    *some* of their trade secrets in patent publications, but never alleged all of their trade
6    secrets are public.

7           Apple also complains about the timing of a subpoena Plaintiffs served on Apple
8    in *Masimo Corp. et al. v. True Wearables Inc. et al.*, No. 8:18-cv-02001-JVS-JDE (the
9    "*True Wearables* Case").  The timing was dictated by the rapidly approaching close of
10   fact discovery.  Once the Court extended the fact discovery deadline, Plaintiffs withdrew
11   the subpoena to determine if it was necessary in view of the extended discovery deadline.
12   Plaintiffs cannot be faulted for trying to avoid unnecessarily burdening the courts.

13          Nothing supports Plaintiffs attempt to bar *all* technical discovery—including
14   patent discovery—until Apple agrees that Plaintiffs have complied with Section
15   2019.210.  Judge Selna already resolved this issue and held that patent discovery should
16   proceed.  Plaintiffs respectfully request the Court deny Apple's motion and order Apple
17   to substantively respond to patent discovery, including RFP Nos. 5-25.

## II.    THE DISCOVERY REQUESTS AT ISSUE

19          In accordance with Local Rule 37-2.1, below are the verbatim Requests for
20   Production that are the subject of this Motion.  Apple has not yet served responses
21   because the parties agreed to extend its time to respond until April 30, 2019.

22   **REQUEST FOR PRODUCTION NO. 5:**

23          Documents sufficient to show the design and operation of the
24   Accused Products.

25   **REQUEST FOR PRODUCTION NO. 6:**

26          All documents and things describing the operation of the Accused
27   Products, including, without limitation, product brochures, user manuals,
28   instructional materials, and directions for use.

Gibson, Dunn &
Crutcher LLP

**Exhibit 25**
**-598-**

1    **REQUEST FOR PRODUCTION NO. 7:**

2        All training materials concerning any of the Accused Products,

3  including, without limitation, training manuals, training videos,

4  presentations, and handouts.

5    **REQUEST FOR PRODUCTION NO. 8:**

6        All marketing materials concerning any of the Accused Products,

7  including, without limitation, advertisements, promotional materials,

8  pamphlets, brochures, product catalogs, websites, product brochures,

9  informational materials, and videos.

10    **REQUEST FOR PRODUCTION NO. 9:**

11        All publications, articles, abstracts, papers, presentations, seminars,

12  speeches, press releases, and internet postings relating to any of the

13  Accused Products.

14    **REQUEST FOR PRODUCTION NO. 10:**

15        All videos or DVDs demonstrating or showing the operation of the

16  Accused Products.

17    **REQUEST FOR PRODUCTION NO. 11:**

18        All documents and things that refer or relate to the use,

19  effectiveness, capabilities, functionality, or characteristics of the

20  physiological monitoring features of any of the Accused Products.

21    **REQUEST FOR PRODUCTION NO. 12:**

22        All technical documents for the Accused Products, including,

23  without limitation, product specifications, diagrams, schematics, memos,

24  conceptual or technical drawings, design requirements documents, design

25  capture documents, technical requirements documents, product briefs,

26  product plans, product requirements, document trees, assembly design

27  documents, design review documents, system design documents,

28

1  fabricating drawings, manufacturing documents, and technical meeting
2  minutes.

3  **REQUEST FOR PRODUCTION NO. 13:**

4  All documents and things that refer or relate to technical
5  information, specifications, and research data for any of the Accused
6  Products.

7  **REQUEST FOR PRODUCTION NO. 14:**

8  All documents and things concerning the research, design, and
9  development of any of the Accused Products or any component of any of
10  the Accused Products, including, without limitation, laboratory notebooks,
11  invention disclosures, memoranda, product specifications, conceptual or
12  technical drawings, schematics, diagrams, technical specifications,
13  meeting minutes, presentations, and prototypes.

14  **REQUEST FOR PRODUCTION NO. 15:**

15  All documents and things that refer or relate to optical or structural
16  components of any of the Accused Products, including emitters, sensors,
17  detectors, filters, covers, lenses, masks, housing, adhesives, openings,
18  magnets, magnetic shields, carriers, bodies, interior surfaces, walls,
19  protrusions, and sensor subsystems.

20  **REQUEST FOR PRODUCTION NO. 16:**

21  All documents and things that refer or relate to any components,
22  surface areas, or adhesives that separate light emitted by LEDs from other
23  components of any of the Accused Products.

24  **REQUEST FOR PRODUCTION NO. 17:**

25  Documents sufficient to show the operation of any algorithms used
26  to monitor any physiological parameter in any of the Accused Products.

27  **REQUEST FOR PRODUCTION NO. 18:**

28

Gibson, Dunn &
Crutcher LLP

Joint Stip. Re Apple's Mot. for Prot. Order   8        Case No. 8:20-cv-00048-JVS (JDEx)

**Exhibit 25**
**-600-**

1    Documents sufficient to show the operation of any heart rate

2    algorithms used in any of the Accused Products.

3    **REQUEST FOR PRODUCTION NO. 19:**

4    All documents and things that refer or relate to the development of

5    the heart rate algorithms for any of the Accused Products.

6    **REQUEST FOR PRODUCTION NO. 20:**

7    All documents and things that refer or relate to selection between

8    any heart rate algorithms used in any of the Accused Products.

9    **REQUEST FOR PRODUCTION NO. 21:**

10   All documents and things that refer or relate to power consumption

11   by any heart rate algorithms used in any of the Accused Products.

12   **REQUEST FOR PRODUCTION NO. 22:**

13   All documents and things that refer or relate to the operation of any

14   LEDs used to determine pulse rate or heart rate for any of the Accused

15   Products, including but not limited to documents and things that refer or

16   relate to LED timing, duty cycle, current, or power usage.

17   **REQUEST FOR PRODUCTION NO. 23:**

18   All documents and things that refer or relate to collecting first heart

19   rate metrics using a first technique during a first period and collecting

20   second heart rate metrics using a second technique during a second period

21   for any of the Accused Products.

22   **REQUEST FOR PRODUCTION NO. 24:**

23   All documents and things that refer or relate to changes in collecting

24   heart rate metrics based on user input for any of the Accused Products.

25   **REQUEST FOR PRODUCTION NO. 25:**

26   All documents and things that refer or relate to changes in collecting

27   heart rate metrics based on a change in operating mode for any of the

28   Accused Products.

Gibson, Dunn &
Crutcher LLP

Joint Stip. Re Apple's Mot. for Prot. Order   9        Case No. 8:20-cv-00048-JVS (JDEx)

**Exhibit 25
-601-**

### III.   APPLE'S POSITION

**A.   FACTS**

For the past 44 years, Apple has been able to revolutionize the mobile and personal computing markets because of its significant investment in technological innovation, and its ability to translate its trade secrets into transformative products, such as the Apple Watch.  Years after the Apple Watch became a commercial success, Plaintiffs filed this lawsuit alleging trade secret misappropriation.  Plaintiffs now improperly seek unfettered access to confidential information relating to the Apple Watch without first describing their alleged secrets.

Below, Apple sets forth a timeline of the facts relevant to this Motion.

> **1.   Plaintiffs Impermissibly Sought To Obtain Discovery Of Apple's Confidential Information In The *True Wearables* Case.**

One day before Plaintiffs filed the complaint in this case, Plaintiffs served a subpoena on Apple in the *True Wearables* Case.  *See* Lerner Decl. ¶ 2 & Ex. A.  As this Court is likely aware, on November 8, 2018, Plaintiffs filed the *True Wearables* Case against former Apple employee, Marcelo Lamego, and his company, True Wearables, alleging claims of breach of contract, breach of fiduciary duty, trade secret misappropriation, and patent infringement.  Plaintiffs' subpoena to Apple, served nearly one year after discovery began in the *True Wearables* Case, sought information that was not relevant to the *True Wearables* Case, but on its face pertained to the trade secret misappropriation claim Plaintiffs intended to file against Apple the very next day, in this case.

After Apple filed a motion to quash and requested a protective order that, *inter alia*, identified Plaintiffs' requirement under Section 2019.210 to identify their purported trade secrets with reasonable particularity before commencing trade secret-related discovery from Apple (*Id.* ¶ 3 & Ex. B), Plaintiffs withdrew the subpoena to Apple in the *True Wearables* Case.

Gibson, Dunn & Crutcher LLP

**Exhibit 25**

**-602-**

### 2. Plaintiffs Failed To Allege Their Purported Trade Secrets With Any Particularity.

Plaintiffs' original complaint, filed January 9, 2020, alleged that Apple misappropriated seven broad categories of generic business or technical information, "including, but not limited to, Plaintiffs' business plans, know-how, technical information, technical data, designs, manufacturing techniques and other business information." Lerner Decl. Ex. C (Compl.) ¶ 181. Even though Plaintiffs alleged that Apple had disclosed the alleged trade secrets "by filing patent applications containing Masimo's Confidential Information" and disclosed their "Confidential Information . . . in [] patent filings," the complaint failed to identify the portions of Apple's patent filings containing their alleged trade secrets. *Id.* ¶¶ 185, 187.

### 3. Plaintiffs Ignored Apple's Request For A Section 2019.210 Disclosure And Propounded Trade Secret-Related Discovery.

After Plaintiffs filed their complaint, the parties met and conferred on February 25, 2020. Lerner Decl. ¶ 5. Apple explained that the complaint failed to identify Plaintiffs' alleged trade secrets with sufficient particularity. *Id.*

Shortly thereafter, on March 6, 2020, Apple requested in writing that Plaintiffs identify (by line and page number) their trade secrets that purportedly were disclosed in any published patent application filed by Apple or in any patent held by Apple, as alleged in the complaint. *Id.* Ex. E. Apple explained that because Section 2019.210 requires Plaintiffs to describe all of their alleged trade secrets with "reasonable particularity" before commencing trade secret-related discovery, Plaintiffs should be able to identify those secrets promptly. *Id.* Plaintiffs ignored this request.

Instead, on March 16, 2020, Plaintiffs propounded 25 requests for production on Apple, the majority of which relate to Apple's confidential information—thereby evidencing Plaintiffs' intent to commence trade secret-related discovery in the absence of a Section 2019.210-compliant disclosure. *Id.* ¶ 8 & Ex. F.

### 4. Plaintiffs Filed An FAC That Merely Expanded The Generic Categories Of Information Claimed As Trade Secrets.

After Apple filed a motion to dismiss for failure to state a claim, asserting, among other things, that Plaintiffs failed to allege any trade secrets with particularity (*see* Lerner Decl. Ex. D), Plaintiffs voluntarily elected to amend their complaint. *See* Dkt. No. 21. On March 25, 2020, Plaintiffs filed their First Amended Complaint (the "FAC"). Lerner Decl. ¶ 9 & Ex. G. Rather than correct the deficiencies in the original complaint, the FAC lists *more—and in some cases, even broader*—categories of generic business information as Plaintiffs' claimed trade secrets. *Id.* Ex. G (FAC) ¶ 211. The number of categories of purported trade secrets multiplied from seven to approximately *50*, if not more—given that Plaintiffs now claim that combinations of the 50 categories may *also* be secrets. In addition, the FAC alleges that the following catch-all categories of illusory information are trade secrets:

- "combinations and selections of the above information";
- "knowledge of the varying importance of the information";
- "knowledge for selecting which information and technology are important for improving reliability, improving measurements, and how to successfully combine and implement them to achieve the desired functionality"; and
- "negative information, what works well under certain conditions, and trade-offs of selecting certain techniques."

*Id.* Plaintiffs' FAC was not accompanied by a Section 2019.210 disclosure. To date, Plaintiffs have refused to serve a Section 2019.210 disclosure on Apple.

### 5. Plaintiffs' Requests For Production Nos. 5-25 Seek Premature Trade-Secret Related Discovery From Apple.

At issue in this Stipulation are Plaintiffs' Requests for Production Nos. 5 through 25. *See* Lerner Decl. Ex. F. Each of these requests seek to uncover Apple's confidential information.

Specifically, 12 of the Requests seek confidential information about the design

and/or operation of the Apple Watch's non-invasive monitoring technology—which is not public information, but rather some of Apple's most closely guarded, confidential information:

**REQUEST FOR PRODUCTION NO. 5:**
Documents sufficient to show the design and operation of the Accused Products.

**REQUEST FOR PRODUCTION NO. 6:**
All documents and things describing the operation of the Accused Products, including, without limitation, product brochures, user manuals, instructional materials, and directions for use.

**REQUEST FOR PRODUCTION NO. 7:**
All training materials concerning any of the Accused Products, including, without limitation, training manuals, training videos, presentations, and handouts.

**REQUEST FOR PRODUCTION NO. 10:**
All videos or DVDs demonstrating or showing the operation of the Accused Products.

**REQUEST FOR PRODUCTION NO. 11:**
All documents and things that refer or relate to the use, effectiveness, capabilities, functionality, or characteristics of the physiological monitoring features of any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 12:**
All technical documents for the Accused Products, including, without limitation, product specifications, diagrams, schematics, memos, conceptual or technical drawings, design requirements documents, design capture documents, technical requirements documents, product briefs, product plans, product requirements, document trees, assembly design documents, design review documents, system design documents, fabricating drawings, manufacturing documents, and technical meeting minutes.

Gibson, Dunn &
Crutcher LLP

**Exhibit 25**
**-605-**

**REQUEST FOR PRODUCTION NO. 13:**

All documents and things that refer or relate to technical information, specifications, and research data for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 14:**

All documents and things concerning the research, design, and development of any of the Accused Products or any component of any of the Accused Products, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, conceptual or technical drawings, schematics, diagrams, technical specifications, meeting minutes, presentations, and prototypes.

**REQUEST FOR PRODUCTION NO. 15:**

All documents and things that refer or relate to optical or structural components of any of the Accused Products, including emitters, sensors, detectors, filters, covers, lenses, masks, housing, adhesives, openings, magnets, magnetic shields, carriers, bodies, interior surfaces, walls, protrusions, and sensor subsystems.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and things that refer or relate to any components, surface areas, or adhesives that separate light emitted by LEDs from other components of any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 21:**

All documents and things that refer or relate to power consumption by any heart rate algorithms used in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 22:**

All documents and things that refer or relate to the operation of any LEDs used to determine pulse rate or heart rate for any of the Accused Products, including but not limited to documents and things that refer or relate to LED timing, duty cycle, current, or power usage.

Gibson, Dunn &
Crutcher LLP

**Exhibit 25
-606-**

Four of the Requests seek materials pertaining to the algorithms Apple developed to monitor heart rates or other "physiological parameters"—again, Apple's confidential information:

> **REQUEST FOR PRODUCTION NO. 17:**
> Documents sufficient to show the operation of any algorithms used to monitor any physiological parameter in any of the Accused Products.
>
> **REQUEST FOR PRODUCTION NO. 18:**
> Documents sufficient to show the operation of any heart rate algorithms used in any of the Accused Products.
>
> **REQUEST FOR PRODUCTION NO. 19:**
> All documents and things that refer or relate to the development of the heart rate algorithms for any of the Accused Products.
>
> **REQUEST FOR PRODUCTION NO. 20:**
> All documents and things that refer or relate to selection between any heart rate algorithms used in any of the Accused Products.

Three of the Requests seek information about how the Apple Watch collects heart rate metrics—confidential technical information that Apple does not publicly disclose, but rather, safely guards:

> **REQUEST FOR PRODUCTION NO. 23:**
> All documents and things that refer or relate to collecting first heart rate metrics using a first technique during a first period and collecting second heart rate metrics using a second technique during a second period for any of the Accused Products.
>
> **REQUEST FOR PRODUCTION NO. 24:**
> All documents and things that refer or relate to changes in collecting heart rate metrics based on user input for any of the Accused Products.
>
> **REQUEST FOR PRODUCTION NO. 25:**
> All documents and things that refer or relate to changes in collecting heart rate metrics based on a change in operating mode for any of the Accused Products.

And two of the Requests seek materials related to Apple's marketing strategy for the Apple Watch—which, again, is Apple's confidential and sensitive information that Apple does not disclose publicly:

> **REQUEST FOR PRODUCTION NO. 8:**
> All marketing materials concerning any of the Accused Products, including, without limitation, advertisements, promotional materials, pamphlets, brochures, product catalogs, websites, product brochures, informational materials, and videos.

> **REQUEST FOR PRODUCTION NO. 9:**
> All publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to any of the Accused Products.

Plaintiffs therefore seek a soup-to-nuts blueprint of the non-invasive monitoring technology developed by their competitor, Apple—from its inception, to its design, to how the physical parts function together, to the way in which Apple markets its product containing the technology to consumers—without first identifying in a Section 2019.210 disclosure any trade secrets belonging to Plaintiffs that Apple allegedly misappropriated to create the technology.

Plaintiffs contend that certain of these Requests seek information pertaining to their patent claims. Even if that is true, the language of the Requests makes crystal clear that the Requests *also* seek information *relating to* Plaintiffs' trade secret claim. Indeed, Plaintiffs use the term "Accused Products" throughout these Requests, defined as "Apple Watch Series 4 or later, as well as the combination of Apple Watch Series 4 or later with an Apple iOS Product." These are the very same Apple Watches that Plaintiffs contend incorporate their trade secrets. Plaintiffs' Requests for Production 5 through 25 therefore seek discovery that should not commence until Plaintiffs have identified their alleged trade secrets with reasonable particularity under Section 2019.210. *See* Cal. Code Civ. Proc. § 2019.210 ("before commencing discovery *relating to* the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable

**Exhibit 25**
**-608-**

1  particularity") (emphasis added).

2      To be clear, Apple does not seek to withhold responsive, *public* documents

3  pending a Section 2019.210 disclosure.  In particular, Apple acknowledges that

4  Plaintiffs' Requests for Production 5 through 12 seek certain information that is public,

5  and Apple is prepared to produce responsive, public documents—as indicated in its

6  responses and objections to Plaintiffs' Requests for Production.  But to the extent

7  Requests 5 through 12 also seek *non-public* documents, Plaintiffs' discovery of those

8  documents should not commence until Plaintiffs serve an adequate Section 2019.210

9  disclosure.  The remainder of Plaintiffs' Requests for Production—Requests 13 through

10  25—appear to seek only non-public documents and, therefore, Plaintiffs' discovery of

11  documents responsive to those Requests should not commence until Plaintiffs serve an

12  adequate Section 2019.210 disclosure.

13      **6.**    **The Parties Met And Conferred About Plaintiffs' Premature**
14                 **Requests For Production.**

15      On March 28, 2020, Apple initiated the meet-and-confer process in connection

16  with this Stipulation.  Lerner Decl. ¶ 11.

17      On April 6, 2020, the parties' counsel met and conferred by telephone.  *Id.* ¶ 13.

18  During that call, Apple reiterated its position that Plaintiffs are required to identify their

19  trade secrets with reasonable particularity pursuant to Section 2019.210 and for the

20  purpose of efficient case management, and therefore, that Plaintiffs are not permitted to

21  proceed with discovery "related to" the alleged trade secrets until an adequate disclosure

22  has been made.  Plaintiffs expressed the view that unless the discovery Requests were

23  "solely" related to trade secrets, they were proper, to which Apple responded that

24  Section 2019.210 does not require that discovery be "solely" related to the trade secrets

25  to be stayed absent a proper trade secret disclosure.  That would defeat the purpose of

26  Section 2019.210, as a plaintiff could simply claim that its discovery touches on a non-

27  trade secret claim.  The test is whether discovery is "related" to the alleged trade secrets.

28  *Id.*  Notably, Plaintiffs *admit* that they are alleging that the "Apple Accused Products"

1   identified as the subject of their patent infringement claims incorporate "some" of

2   Plaintiffs' claimed trade secrets. *Id.*

3           Even though they claim to be ready and able to describe their secrets, Plaintiffs

4   have insisted that Apple serve an interrogatory requesting that Plaintiffs identify their

5   trade secrets. *Id.* Ex. J. Apple responded as it has numerous times previously:

> [T]urning to the question of an interrogatory, as we have explained multiple
> times, Plaintiffs' demand that Apple serve an interrogatory is improper. To
> begin with, Plaintiffs have never agreed—and are not agreeing now—that
> Plaintiffs will not commence discovery relating to trade secrets until they
> provide an adequate description of their alleged secrets. That is critical
> because, as we explained on the call, there is nothing stopping Plaintiffs
> from cutting and pasting the vague description of the secrets in the FAC
> into an interrogatory response (served 30 days, if not more, after the
> interrogatory is propounded) and claiming that they have complied. This
> will not solve the lack of disclosure problem—it will just invite motion
> practice, which will further delay the process. Therefore, contrary to
> Plaintiffs' suggestion that an interrogatory would be faster here, a
> disclosure pursuant to Section 2019.210 will in fact be faster, as well as
> more efficient and fair to the parties.

16  *Id.*

17          The parties have not been able to resolve their dispute informally, and therefore

18  are proceeding with this Stipulation.

19  **B.     ARGUMENT**

20          Apple's position here is not complicated. *First*, Plaintiffs cannot escape the

21  requirement set forth in Section 2019.210 by claiming it is a state court rule. It is well-

22  established that in state or federal court, Plaintiffs bringing a claim under California's

23  Uniform Trade Secrets Act ("CUTSA," Cal. Civ. Code § 3426.1 *et seq.*) must provide a

24  description of their alleged secrets before they take trade secret-related discovery.

25  *Second*, the broad allegations in the FAC are not sufficient to satisfy Plaintiffs' burden

26  to identify their alleged secrets with reasonable particularity. It is well-established that

27  the pleading standard is less demanding—and serves a different purpose—than Section

28  2019.210's requirement that Plaintiffs provide an adequate identification of the alleged

Gibson, Dunn &
Crutcher LLP

**Exhibit 25**
**-610-**

secrets.  *Third*, application of Section 2019.210 is essential in this case because Plaintiffs' conduct frustrates the common-sense considerations that underlie Section 2019.210 and which are essential to effective case management.

### 1. That Plaintiffs Filed Their CUTSA Claim In Federal Court Does Not Mean Plaintiffs Need Not Describe Their Secrets.

Plaintiffs refuse to provide a Section 2019.210 disclosure in this case based on their contention that Section 2019.210 does not apply to CUTSA cases filed in federal court.  That is wrong.  Federal courts in California have held that Section 2019.210 applies to CUTSA cases filed in federal court.  Moreover, as this Court has already recognized, Section 2019.210 can and should be applied in federal court under the Court's discretion as a matter of case management.  It assists the Court and the parties in efficiently litigating the case.  *M/A-COM Tech. Sols.*, 2019 WL 4284523, at *2 (finding "that, under the particular facts of this case, the procedural requirements of Section 2019.210 are warranted and appropriate to assist in the orderly and expeditious handling of discovery").

This Court is far from alone in managing discovery in trade secret cases by applying Section 2019.210.  *See, e.g.*, *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018) ("After review of the law and circumstances in this case, the Court will require that Plaintiffs identify their trade secrets with reasonable particularity compliant with Section 2019.210. Applying Section 2019.210 here will narrow and clarify the basic issues between the parties, thereby furthering the goal of efficiency for the court and litigants."); *Swarmify, Inc. v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018) ("Insofar as controlling law on this subject remains ambiguous, district courts may also exercise discretion in case management to enforce Section 2019.210, and the undersigned judge has in fact done so."); *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014) ("This order agrees and the trade secret disclosure provisions in Section 2019.210 of the California Code of Civil Procedure shall be applied here.").

1    Tellingly, after two and a half weeks of meet and confers on this topic, Plaintiffs

2    provided one case in support of their position—*SMC Networks, Inc. v. Hitron Techs.,*

3    *Inc.*, 2013 WL 12136372 (C.D. Cal. Mar. 15, 2013)—which is from 2013 and has never

4    been followed by another court.  The Rutter Guide, after citing *SMC Networks*, observes

5    that "[e]ven if state law limitations on discovery are not binding in federal actions, the

6    district court will often grant a protective order (FRCP 26(c), ¶ 11:1060 ff) that

7    accomplishes the same result."  Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial

8    Ch. 11(III)-A.

9    As set forth below, application of Section 2019.210 is particularly essential to the

10   management of this case.

**2.      Plaintiffs Have Not Identified Their Purported Trade Secrets, And The FAC Does Not Suffice.**

13   This is not the typical case where the trade secret plaintiff serves a

14   Section 2019.210 disclosure and the parties litigate the deficiencies.  Here, Plaintiffs

15   have refused to serve *any* Section 2019.210 disclosure at all.  That is a violation of

16   Section 2019.210, and it calls into question the basis for Plaintiffs' trade secret claim in

17   the first place.

18   Rather than provide a description of their secrets, Plaintiffs have argued that their

19   FAC is sufficient.  Not so.  Again, the FAC sets forth a non-exhaustive list of

20   approximately 50 broad categories of information (*see* Lerner Decl. Ex. G (FAC) ¶ 211),

21   and alleges that Plaintiffs' "trade secrets" also include unspecified "combinations and

22   selections" of those 50 broad categories (*id*).  That is not sufficient to survive a motion

23   to dismiss.  And even if the FAC did adequately plead a trade secret—which it does

24   not—that still would not satisfy Plaintiffs' obligation to describe the alleged secret with

25   specificity.  A finding that allegations are sufficient to survive a motion to dismiss does

26   not mean the trade secret allegations are sufficient under Section 2019.210.  *See, e.g.*,

27   *Gatan, Inc. v. Nion Co.*, 2018 WL 2117379, at *2 (N.D. Cal. May 8, 2018) (explaining

28   that the district court's finding that trade secret allegations were sufficient to survive a

**Exhibit 25**
**-612-**

motion to dismiss "did not prejudge whether plaintiff's trade secret allegations satisfied § 2019.210," and concluding that the disclosures were insufficient under Section 2019.210).[1]  Thus, Plaintiffs cannot hide behind a flawed FAC and demand access to Apple's confidential files to manufacture a trade secret claim.  Unless and until Plaintiffs serve an adequate Section 2019.210 disclosure, they should not be permitted to commence with trade secret-related discovery in this case.

### 3.   Plaintiffs' Refusal To Comply With Section 2019.210 Frustrates Each Of The Four Purposes Of The Statute.

Permitting Plaintiffs to commence with trade secret-related discovery in the absence of a sufficient Section 2019.210 disclosure would frustrate the important four-pronged purpose of the statute.

The policy behind Section 2019.210 is straightforward.  The statute was enacted "to curb unsupported trade secret lawsuits routinely commenced to harass competitors and former employees."  *Computer Econs., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999).  The California legislature "understood that plaintiffs in trade secret cases are often unable to identify any trade secrets," and that such claims therefore are "especially prone to discovery abuse."  *Id.*  By requiring a plaintiff to identify its trade secrets early and with particularity, and restricting the plaintiff's ability to engage in discovery until it does so, Section 2019.210 serves four distinct purposes: Section 2019.210 (1) "promotes well-investigated claims and dissuades the filing of meritless trade secret complaints"; (2) "prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets"; (3) "assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's

---

[1]  Indeed, where, as here, the alleged trade secrets reside in "a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field."  *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1346 (2009);  *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968) (plaintiff "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade").

1   discovery requests fall within that scope"; and (4) "enables defendants to form complete

2   and well-reasoned defenses, ensuring that they need not wait until the eve of trial to

3   effectively defend against charges of trade secret misappropriation." *Id.* at 985; *see also,*

4   *e.g.*, *M/A-COM Tech. Sols., Inc.*, 2019 WL 8108729, at *2 (stating that

5   Section 2019.210's "reasonable particularity" requirement should be understood in light

6   of this four-pronged purpose of the statute).   Plaintiffs' refusal to comply with

7   Section 2019.210 interferes with each of these goals and will continue to do so unless

8   this Court enters the protective order Apple requests.

9           a)      **Plaintiffs Have Not Demonstrated That Their Trade**
10                  **Secret Claim Has Any Merit.**

11          In the absence of a Section 2019.210-compliant disclosure, Plaintiffs have done

12   nothing to demonstrate that they have a CUTSA claim justifying discovery of Apple's

13   confidential information.   Even a cursory review of Plaintiffs' sole attempt at a list of

14   their purported trade secrets makes clear that Plaintiffs have no idea what, if any,

15   relevant trade secrets they actually possess:

16          Plaintiffs own trade secrets that include, but are not limited to, Plaintiffs'
17          technical information, sales and marketing information, and other business
18          information relating to non-invasive monitoring of physiological
            parameters and products to perform such monitoring.  Plaintiffs' technical
19          information includes product plans, engineering plans, product briefs,
            technical drawings, technical specifications, technical data, product
20          designs, system designs, design captures, assembly design requirements,
21          risk analysis, test procedures and results, test data, design review
            documents, software requirement specifications, technical know-how,
22          manufacturing techniques and procedures, installation techniques and
            procedures, and invention disclosures.  Plaintiffs' sales and marketing
23          information includes product plans, business plans, customer information,
24          sales pipelines, proposal and quote generation tools, pricing models, pricing
            schedules, sales training materials, product training materials, marketing
25          and launch plans, marketing analysis, and competitive analysis. Plaintiffs'
26          other business information includes information for successfully operating
            a noninvasive patient monitoring company, including personnel
27          information, supplier information, and other business spreadsheets and
28          analysis. Plaintiffs trade secrets also include combinations and selections

**Exhibit 25**
**-614-**

1
2
3
4
5

of the above information, and knowledge of the varying importance of the information.  Plaintiffs trade secrets also include knowledge for selecting which information and technology are important for improving reliability, improving measurements, and how to successfully combine and implement them to achieve the desired functionality.  Plaintiffs' trade secrets also include negative information, what works well under certain conditions, and trade-offs of selecting certain techniques.

6

Lerner Decl. Ex. G (FAC) ¶ 211.

7
8
9
10
11

As a threshold matter, the very first line of Plaintiffs' allegation is problematic— using expansive terms like "including" weighs against a finding that secrets have been identified with particularity.  *M/A-COM Tech. Sols., Inc.*, 2019 WL 4284523, at *2 (citing *Gatan, Inc.*, 2018 WL 2117379, at *3 (noting the "use of catchall words such as 'including' weighs against a finding that the designation satisfies § 2019.210")).

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The 50 broad categories here, which expand to thousands of broad categories when one accounts for Plaintiffs' vague allegation that the secrets include combinations, is equally problematic.  As this Court previously ruled in another case, "catchall descriptions, lists of categories of alleged trade secrets in broad terms, or a listing of concepts that the plaintiff asserts constitute its trade secret information are all insufficient" bases on which to permit a plaintiff to proceed to discovery in a trade secrets case. *M/A-COM Tech. Sols., Inc.*, 2019 WL 8108729, at *2 (internal quotations omitted) (prohibiting commencement of discovery until plaintiffs provide supplemental disclosures identifying their purported trade secrets with reasonable particularity); *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1113-1114 (N.D. Cal. 2016) (finding 53 paragraphs of asserted trade secret disclosures were not identified with reasonable particularity under Section 2019.210); *Perlan Therapeutics*, 178 Cal. App. 4th at 1350 ("Perlan is not entitled to include broad, 'catch-all' language as a tactic to preserve an unrestricted, unilateral right to subsequently amend its trade secret statement.").  But that is the *only* type of information Plaintiffs have supplied Apple with to date.  For example, the FAC's general categories of "technical drawings," "technical know-how," and "business plans" provide Apple with zero indication about what Plaintiffs

Gibson, Dunn & Crutcher LLP

**Exhibit 25**
**-615-**

1  specifically claim are their trade secrets, and instead force Apple—and the Court—to

2  simply "guess at the specifics." *Loop AI Labs Inc.*, 195 F. Supp. 3d at 1115 (staying

3  discovery of trade secret claims where disclosure was insufficient).  Such generalized

4  descriptions fall short of the specificity the law requires, and, in the absence of any

5  Section 2019.210 disclosure, let alone a reasonably particularized one, constitute the

6  hallmarks of a plaintiff with a meritless CUTSA claim.

7         Particular allegations in the FAC further underscore the problems with Plaintiffs'

8  CUTSA claim.  For example, Plaintiffs describe several categories of purported trade

9  secret information as including "knowledge" about the importance of the information in

10  the health monitoring business.  Lerner Decl. Ex. G (FAC) ¶ 211.  Plaintiffs thereby

11  anchor their CUTSA claim on a theory of inevitable disclosure that California does not

12  recognize (*Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463 (2002) ("Lest there

13  be any doubt about our holding, our rejection of the inevitable disclosure doctrine is

14  complete.")), and seek to thwart former employees' mobility (and competition

15  generally) in violation of California Business and Professions Code Section 16600.  And,

16  again, Plaintiffs allege that Apple incorporated Plaintiffs' undefined trade secrets into

17  Apple's patent applications (Lerner Decl. Ex. G (FAC) ¶ 218), yet Plaintiffs have failed

18  to identify the Apple patent applications that supposedly contain their secrets, let alone

19  where in the thousands of pages of these applications the secrets can be found.

20         A CUTSA claim requires a plaintiff with actual trade secrets, and, in the absence

21  of a Section 2019.210-compliant disclosure, Plaintiffs have done nothing but

22  demonstrate that they *do not* in fact possess relevant, actionable trade secrets.  Permitting

23  Plaintiffs to commence trade secret-related discovery simply is not warranted on this

24  record.

25             **b)      Plaintiffs Have Not Demonstrated That They Are
                           Actually Looking For *Their* Secrets In Apple's Files.**
26

27         Plaintiffs' continued refusal to identify their purported secrets likewise suggests

28  that Plaintiffs hope to sift through Apple's confidential information so that they can

Gibson, Dunn &
Crutcher LLP

**Exhibit 25
-616-**

1   claim it as their own.  Without a Section 2019.210 disclosure, Plaintiffs have failed to

2   demonstrate that their request for trade secret-related discovery is anything more than

3   an attempt to obtain *Apple's* confidential information.

4       Perhaps the most direct evidence of this improper motive is the third-party

5   subpoena Plaintiffs served on Apple in connection with the *True Wearables* Case just

6   *one day before* filing the complaint in this case.  Rather than simply identify their trade

7   secrets in this case, Plaintiffs attempted an end run around Section 2019.210 by serving

8   a subpoena on Apple in the *True Wearables* Case.  That subpoena on its face called for

9   confidential information from Apple relevant to the subject matter of this case—in a

10  transparent attempt to discover Apple's confidential information in connection with the

11  *True Wearables* Case and claim it as their own in *this* case.  When Plaintiffs were caught

12  red-handed, they withdrew the subpoena.

13      With the subpoena now withdrawn, Plaintiffs have sought expeditious access to

14  Apple's files via the discovery process in this case.  But a plaintiff in a trade secret case

15  is supposed to search the defendant's files for the *plaintiff's* confidential information

16  that was allegedly misappropriated.  In the absence of any identification by Plaintiffs of

17  reasonably particularized trade secrets to search for, it appears that Plaintiffs seek to

18  engage in the type of discovery abuse that was the California legislature's prime

19  motivation for enacting Section 2019.210 in the first place.  *See Computer Econs., Inc.*,

20  50 F. Supp. 2d at 992 (noting that in enacting Section 2019.210, the California legislature

21  "understood that plaintiffs in trade secret cases are often unable to identify any trade

22  secrets," and that such claims therefore are "especially prone to discovery abuse").

23  Plaintiffs should not be permitted to commence trade secret-related discovery in Apple's

24  files unless and until they are able to satisfy Section 2019.210, and thereby demonstrate

25  to Apple and to the Court that Apple's confidential information is not in fact what they

26  are after.

27

28

**Exhibit 25
-617-**

c)      **Plaintiffs Have Not Assisted The Court In Framing The Scope Of Trade Secret-Related Discovery.**

Plaintiffs' refusal to identify their trade secrets with anything close to "reasonable particularity" also makes it impossible for the Court or Apple to properly frame the scope of trade secret-related discovery.

First, the only list of Plaintiffs' purported trade secrets that currently exists—the FAC's amorphous list of approximately 50 categories of "trade secrets," as well as unidentified "combination" trade secrets (Lerner Decl. Ex. G (FAC) ¶ 211)—is so broad that it essentially encompasses Plaintiffs' entire business.  Without a particularized trade secret disclosure, it will be impossible for the Court and the parties to define the permissible scope of trade secret-related discovery in this case.  As set forth above, Plaintiffs' open-ended list that "includes" 50 vague categories means Plaintiffs could amend at any time, which is utterly improper.  *Swarmify*, 2018 WL 2445515, at *3 ("Swarmify should not be allowed to drag Cloudflare into court based on meritless arguments, only to reboot its alleged trade secrets lineup and try again when the opening skirmish illuminates glaring flaws in Swarmify's case.").  The same is true of Plaintiffs' demand for an interrogatory—Plaintiffs could amend their response.  Plaintiffs' reference to undefined combinations only compounds the problem.  *E. & J. Gallo Winery*, 2018 WL 3062160, at *5 ("Section 2019.210 mandates a more refined description of each individual component and combination of components purported to be a trade secret prior to commencing discovery on these claims.").

Second, without an adequate description of Plaintiffs' trade secrets, neither the Court nor Apple will have any idea which secrets are in fact public.  Indeed, Plaintiffs allege that their purported trade secrets were *already* disclosed in Apple's published patent applications.  Therefore, Plaintiffs *must* know by page and line number where their alleged secrets appear in Apple's patent applications.  Yet, Plaintiffs have twice refused Apple's request for a disclosure identifying those page and line numbers.  *See* Lerner Decl. ¶¶ 7, 12 & Exs. E & I.  This makes no sense and makes it impossible for

1   Apple to figure out where the alleged secrets lie. *See Space Data Corp. v. X*, 2017 WL

2   5013363, at *2 (N.D. Cal. Feb. 16, 2017) ("Moreover, Space Data has not made clear

3   which aspects of its technology and other information are 'part of patents and pending

4   patent applications,' if any, and which are secret.")[2]; *Bladeroom Grp. Ltd. v. Facebook,*

5   *Inc.*, 2015 WL 8028294, at *4 (N.D. Cal. Dec. 7, 2015); *see also M/A-COM Tech. Sols.,*

6   *Inc.*, 2019 WL 8108729, at *4 ("[A]s a general matter, . . . identifying large numbers of

7   documents without any reference to specific pages does not provide an adequate

8   substitute for detailed information of the trade secrets, as a review of the documents may

9   not provide Defendants sufficient information to identify what precisely Plaintiffs are

10  asserting as a trade secret.").

11          **d)     Plaintiffs Have Not Enabled Apple To Defend Against**

12                  **Their Trade Secret Misappropriation Claim.**

13          Finally, without a Section 2019.210 disclosure, Apple is not in a position to

14  formulate "complete and well-reasoned defenses" to Plaintiffs' claim of trade secret

15  misappropriation. *M/A-COM Tech. Sols., Inc.*, 2019 WL 8108729, at *2. The most

16  rudimentary example is Apple's inability to possibly formulate a defense to Plaintiffs'

17  allegation that Apple has already disclosed trade secrets belonging to Plaintiffs in Apple

18  patent applications (*see* Lerner Decl. Ex. G (FAC) ¶ 218), because Plaintiffs refuse to

19  identify those purported secrets in the first place. Without this information, Apple

20  cannot determine whether the allegation has merit, Apple cannot determine whether it

21  has a viable defense, and Apple cannot take steps to remove the alleged trade secrets

22  from patent documents on a prospective basis—to prevent against the harm that

23  Plaintiffs contend will continue unabated. Instead, Plaintiffs' non-exhaustive list of

24  dozens of vague categories has foisted on Apple the impossible task of deciphering

25  precisely what Plaintiffs claim is actually a trade secret. *See Loop AI Labs Inc.*, 195 F.

26

27  _____

28  [2] Like the court in *Bladeroom Group Ltd. v. Facebook, Inc.*, 2015 WL 8028294 (N.D. Cal. Dec. 7, 2015), the court in *Space Data* focused on the failure to distinguish between public and confidential information even at the pleadings stage.

Gibson, Dunn & Crutcher LLP

**Exhibit 25**
**-619-**

Supp. 3d at 1115 (defendant could not develop an adequate defense where plaintiff's Section 2019.210 disclosure listed broad categories of potentially protectable secrets, forcing the defendant to "guess" what the actual secrets were); *see also Perlan Therapeutics*, 178 Cal. App. 4th at 1350 (Section 2019.210 disclosure deemed inadequate where plaintiff hid trade secrets "in plain sight" by "including surplusage and voluminous attachments").

Plaintiffs should not be permitted to proceed with trade secret-related discovery at the expense of Apple's ability to defend itself against Plaintiffs' trade secret-related claim.

## C.   CONCLUSION

For all of the aforementioned reasons, Apple respectfully requests that the Court grant its motion; enter a protective order prohibiting Plaintiffs from commencing any trade secret-related discovery (including, without limitation, discovery of any non-public documents responsive to Plaintiffs' Requests for Production 5 through 25) until Plaintiffs identify their alleged trade secrets with the reasonable particularity Section 2019.210 requires; and order Plaintiffs to serve on counsel a statement, under seal, that includes the following:

(1) a summary of the specific alleged trade secrets;

(2) the background of the trade secrets and a description of how each secret has derived independent, actual, or potential economic value by virtue of not being generally known to the public;

(3) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; and

(4) each of the precise claimed trade secrets, numbered with a list of the specific elements for each, as claims would appear at the end of a patent.

Gibson, Dunn &
Crutcher LLP

**Exhibit 25**
**-620-**

## IV.   **PLAINTIFFS' POSITION**

The Parties' conference of counsel addressed two issues: (1) whether Section 2019.210 applies in Federal Court and (2) if it applies, whether Section 2019.210 also bars patent discovery that may be relevant to the trade secret allegations.  Powell Decl., Ex. 6 at 1-2.  The parties briefed both issues in detail in a 26-page Rule 26(f) report, and Judge Selna decided both issues.  *Id.*, Exs. 7 & 8.  Apple should have withdrawn its Motion instead of unnecessarily burdening this Court.

### A.   **Judge Selna Already Decided Patent Discovery Is Not Stayed**

In the Rule 26(f) report, the parties presented extensive argument on whether and how Section 2019.210 applies to this case.  Powell Decl., Ex. 8 at 6-8 and 13-20.  Apple acknowledged Requests for Production ("RFP") Nos. 5-25 may "concern the asserted patents and technical information about the products accused of patent infringement . . .."  *Id.* at 7.  However, Apple argued it need not provide such discovery until after Plaintiffs provide a Section 2019.210 disclosure because the discovery is ***also*** relevant to Plaintiffs' trade secret claim.  *Id.* at 7-8.  The Rule 26(f) report contained a deadline to disclose "core technical documents" for infringement contentions.  *Id.* at 26.  But Apple argued such patent-specific dates should not apply until Plaintiffs provided an adequate Section 2019.210 disclosure.  *Id.* at 26, n.6 (stating "discovery-related dates that Apple proposes in this Presumptive Schedule of Pretrial Dates are subject to Plaintiffs providing an adequate identification of their alleged trade secrets in compliance with Section 2019.210").

Plaintiffs originally disputed the applicability of Section 2019.210 in Federal Court based on decisions from this Court holding that Section 2019.210 is a procedural rule that conflicts with Rule 26.  *Id.* at 13-14.  Plaintiffs also argued that, if Section 2019.210 applies, it cannot be used to bar patent discovery merely because the discovery could ***also*** be relevant to trade secrets.  *Id.* at 14-15.  As Plaintiffs explained:

Apple has refused to provide any responsive information on the grounds
that Apple believes the requests ***also*** relate to the trade secret allegations.

Gibson, Dunn &
Crutcher LLP

**Exhibit 25**
-621-

1           Accordingly, Apple is using a California state procedural rule concerning

2           trade secrets to preclude typical patent discovery.  Apple provides no case

3           law to support that position, which has been rejected by at least one court

4           in this District.  *See Bryant v. Mattel*, 2007 WL 5430888, *3 n.3 (C.D. Cal.

5           May 18, 2007) (refusing to limit discovery of product information under

6           Section 2019.210 because the information was also "relevant to claims

7           other than the trade secret misappropriation claim, such as Mattel's claim

8           for copyright infringement").

9   *Id.*  Plaintiffs also repeatedly "object[ed] to Apple's attempt to use a California state

10  procedural rule to bar all discovery, including patent discovery." *Id.* at 11-12.

11          Judge Selna rejected Apple's request to stay patent deadlines by holding: "The

12  Court adopts the ***patent specific dates***.  The Court stays the ***trade secret discovery only***

13  pending compliance with Section 2019.210."  Powell Decl., Ex. 9 (emphasis added).

14  Thus, Judge Selna determined Section 2019.210 applies to "trade secret discovery

15  only"—not patent discovery that may also be relevant to trade secrets.  Accordingly, all

16  patent discovery should proceed.  Instead, Apple continues to refuse to produce any

17  technical discovery.

18     **B.**    **Section 2019.210 Does Not Bar Patent Discovery**

19          Even if Judge Selna had not ordered the patent case to proceed, nothing would

20  support Apple's assertion that Section 2019.210 bars all patent discovery on the accused

21  products because that information may ***also*** be relevant to trade secrets.   Section

22  2019.210 states: "In any action alleging the misappropriation of a trade secret under the

23  [CUTSA], before commencing discovery ***relating to*** the trade secret, the party alleging

24  the misappropriation shall identify the trade secret with reasonable particularity"

25  (emphasis added).  Apple asserts the "relating to" language means that ***all*** discovery as

26  to ***all*** causes of action is barred if it is ***also*** related in any way to the trade secret.  Joint

27  Stipulation at 16.  In doing so, Apple ignores that the California Court of Appeals

28  interpreted Section 2019.210 as barring discovery on other claims only if the claim

Gibson, Dunn &
Crutcher LLP

**Exhibit 25**

**-622-**

1  "***hinges upon*** the factual allegations that [defendant] misappropriated [plaintiff's] trade

2  secrets." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826,

3  835 (2005) (barring contract discovery because the only alleged breach was for

4  disclosing trade secrets) (emphasis added).[3]   Similarly, Apple relies on *Perlan*

5  *Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333 (2009), but that case

6  acknowledged discovery may proceed on "claims not dependent upon proof of

7  [plaintiff]'s claim under the Uniform Trade Secrets Act." *Id.* at 1337 n.2 (noting the

8  trial court did not decide whether non-trade secret claims based "at least in part" on

9  misappropriation of trade secrets also included theories not dependent on proof of

10  misappropriation such that discovery could move forward on those theories).

11       Numerous courts—including at least one on which Apple relies—refuse to stay

12  discovery as to patent claims merely because the discovery could ***also*** relate to a trade

13  secret.  For example, Apple relies on *Space Data Corp. v. X*, 2017 WL 5013363, at *2

14  (N.D. Cal. Feb. 16, 2017), but omits that a later decision in the same case refused to stay

15  patent discovery that also related to trade secrets.  *See Space Data Corp. v. X*, 2017 WL

16  3007078, *4 (N.D. Cal. July 14, 2017).  Similar to this case, the court in *Space Data* had

17  "stayed trade secret discovery pending Space Data's identification of its trade secrets."

18  *Id.*  Like Apple, the defendant argued it should not have to produce "core technical

19  documents" relevant to patent infringement until after the plaintiff identified its trade

20  secrets.  *Id.*  The court rejected that argument because  "the patent infringement claims

21  asserted in this case are substantive and separate from the trade secret claims."  *Id.*

22       Similarly, in *ScaleMP, Inc. v. TidalScale, Inc.*, No. 18-CV-4716 EDL, Dkt. No.

23  52 (N.D. Cal. Mar. 15, 2019) (Powell Decl., Ex. 3), the defendant also argued it should

24

25  _____

26  [3]    Apple's meet-and-confer letter quoted *Advanced Modular* in arguing Section

27  2019.210 bars discovery of other causes of action.  Powell Decl., Ex. 6 at 2.  Plaintiffs
    pressed Apple on how patent infringement was "factually dependent" on

28  misappropriation of trade secrets.  *Id.* ¶ 8.  Apparently recognizing *Advanced Modular*
    supports Plaintiffs, Apple avoids citing it (or any other case) to support its argument.

Gibson, Dunn &
Crutcher LLP

Joint Stip. Re Apple's Mot. for Prot. Order  31                    Case No. 8:20-cv-00048-JVS (JDEx)

**Exhibit 25
-623-**

1   not have to produce technical documents related to the patent claims until after the

2   Plaintiff complied with Section 2019.210. *Id.* at 7. The court rejected that argument,

3   explaining:

> While Plaintiff's patent infringement claim is related to its trade secret
> misappropriation claim in the sense that the alleged misappropriation led
> to Defendant's development of infringing technology, the patent
> infringement claim does not "hinge" on the misappropriation allegation.
> Plaintiff's ability to succeed on the infringement claim is independent of
> the viability of its misappropriation claim. Thus, the statutory language
> does not require a postponement of patent-related disclosures in this case,
> even while Plaintiff revises its trade secret disclosures.

12  *Id.* at 8. The court also rejected the same policy argument that Apple makes here that

13  all technical discovery should be barred to prevent a plaintiff from using technical

14  documents relevant to the patent case "to obtain Defendant's trade secrets." *Id.* at 8-9.

15      In *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK,

16  Dkt. No. 72 (N.D. Cal. Mar. 24, 2011) (Powell Decl., Ex. 4), the court rejected the

17  defendant's attempt to avoid producing technical information in an action involving

18  trade secret, patent, and copyright claims. The court held discovery "***unique*** to

19  Plaintiffs' claims of trade secret misappropriation" could not proceed until the plaintiff

20  complied with Section 2019.210. *Id.* (emphasis added). However, "[a]ll other discovery

21  shall commence now, including discovery of source code relevant to the copyright and

22  patent infringement claims." *Id.*

23      Courts also refuse to stay discovery as to claims other than patent infringement

24  pending compliance with Section 2019.210. For example, in *Bryant v. Mattel*, 2007 WL

25  5430888, *3 n.3 (C.D. Cal. May 18, 2007), the defendant argued that "discovery of

26  drawings and designs for unreleased products is barred unless and until [plaintiff]

27  complies with California Code of Civil Procedure section 2019.210." *Id.* The Court

28  rejected that argument because "[d]rawings and designs for unreleased products are

1   relevant to claims other than the trade secret misappropriation claim, such as [plaintiff]'s

2   claim for copyright infringement." *Id.*

3         Apple relies on *E. & J. Gallo Winery v. Instituut Voor Landbouw-En*

4   *Visserijonderzoek*, 2018 WL 3062160, at *6 (E.D. Cal. June 19, 2018), but that decision

5   actually *rejected* a defendant's request to stay discovery relevant to contract and unfair

6   competition claims.   The court held that Section 2019.210 applies to trade secret

7   discovery, but held the parties "shall proceed with discovery on non-trade secret claims."

8   *Id.* Similarly, Apple relies on *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1113-

9   1114 (N.D. Cal. 2016), but omits that an earlier decision in that case *refused* to stay

10  discovery relevant to claims other than the trade secret claim. *See Loop AI Labs Inc. v.*

11  *Gatti*, 2015 WL 9269758, at *4 (N.D. Cal. Dec. 21, 2015); *see also Monolithic Power*

12  *Sys., Inc. v. Silergy Corp.*, 2015 WL 5948159, at *4 (N.D. Cal. Oct. 14, 2015) (refusing

13  to limit discovery relevant to the contract claim because "Defendants have not shown

14  'that this claim is based on an allegation that [] Defendants disclosed or misused

15  [Plaintiff's] trade secrets").

16        Even after Plaintiffs serve the Section 2019.210 disclosure, Apple will continue

17  to refuse discovery by litigating the sufficiency of that disclosure regardless of its

18  specificity. *See* Joint Stipulation at 20 (arguing in a "typical case," the plaintiff "serves

19  a Section 2019.210 disclosure and the parties litigate the deficiencies").   Apple should

20  not be allowed to hold up *all* technical discovery for weeks or months while it litigates

21  the sufficiency of Plaintiffs' disclosure.   That is inconsistent with the language of Judge

22  Selna's Order and court decisions addressing the issue. *See E. & J. Gallo*, 2018 WL

23  3062160, at *6 (finding Section 2019.210 disclosure was insufficient, but holding the

24  parties "shall proceed with discovery on non-trade secret claims" while plaintiffs

25  prepared an amended trade secret disclosure); *Loop AI*, 2015 WL 9269758, at *4 (same).

26

27

28

Gibson, Dunn &
Crutcher LLP

JOINT STIP. RE APPLE'S MOT. FOR PROT. ORDER   33     CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 25**
**-625-**

1        Apple fails to cite a single case supporting its position that a California state-law

2   requirement bars patent discovery.[4]   Precedent—including much of Apple's own

3   precedent—is to the contrary.   Moreover, Judge Selna already decided the issue in a

4   decision imposing specific deadlines for Apple to "disclose core technical documents

5   sufficient to show the operation of the accused products" and for Plaintiffs to provide

6   infringement contentions.  Powell Decl., Ex. 8 at 26.  Apple should be ordered to produce

7   discovery pursuant to Plaintiffs' requests.

8     **C.**    **The Discovery At Issue Is Patent Discovery**

9        Plaintiffs crafted RFP Nos. 5-25 to seek "core technical documents" about the

10   "Accused Products," which Plaintiffs specifically defined as the ***products accused of***

11   ***patent infringement***.  The information is highly relevant to upcoming patent deadlines,

12   including infringement contentions.  RFP Nos. 5-15 seek basic technical information

13   about the structure and operation of the Accused Products.  For example, RFP No. 5

14   seeks "Documents sufficient to show the design and operation of the Accused Products."

15   Similarly, RFP No. 6 seeks documents "describing the operation of the Accused

16   Products, including, without limitation, product brochures, user manuals, instructional

17   materials, and directions for use."

18        Apple incorrectly asserts RFP Nos. 8-9 seek "Apple's marketing strategy," which

19   is "confidential and sensitive information that Apple does not disclose publicly."  Joint

20   Stipulation at 16.  That is false.  Those requests expressly seek public information,

21   including "advertisements," "promotional materials," "product brochures,"

22   "publications," "press releases," and "internet postings."  Apple's public assertions

23   about the functionality of its products (including comparisons to other products) is

24   relevant to patent issues, including infringement.

25

26

27

28   [4] Any attempt by Apple to add support for the first time in a Supplemental Memorandum would be improper.

Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. for Prot. Order   34   Case No. 8:20-cv-00048-JVS (JDEx)

**Exhibit 25**
**-626-**

1    RFP Nos. 16-25 are specifically tailored towards particular claim limitations of

2  the patents-in-suit.  For example, RFP No. 16 seeks information about "components,

3  surface areas, or adhesives that separate light emitted by LEDs from other components

4  of any of the Accused Products."  Such information is relevant at least to claim 1 of U.S.

5  Patent No. 10,470,695, which recites in part: "a light block forming an enclosing wall

6  between the light emission source and the plurality of detectors . . . ."  Powell Decl., Ex.

7  1 at Claim 1.

8    RFP Nos. 17-20 seek information about heart rate algorithms used in the Accused

9  Products, including selecting different heart rate algorithms.   Such information is

10  relevant at least to claim 1 of U.S. Patent No. 10,433,776, which recites in part:

11    when operating according to the ***first control protocol***, calculating, by the

12    patient monitor, ***measurement values of the pulse rate***, the measurement

13    values responsive to light from the first control protocol light source,

14    detected by a detector of an optical sensor after attenuation by body tissue

15    of the patient using the patient monitor

16    . . .

17    in response to receiving the trigger signal, operating the patient monitor

18    according to a ***second control protocol different from the first control***

19    ***protocol***

20    . . .

21    when operating the patient monitor according to the ***second control***

22    ***protocol***, calculating the ***measurement values of the pulse rate***, the

23    measurement values responsive to light from the second control protocol

24    light source, detected by the detector after attenuation by the body tissue

25    of the patient using the patient monitor.

26  Powell Decl., Ex. 2 at Claim 1 (emphasis added).

27    RFP No. 21 seeks information about the power consumption of the heart rate

28  algorithms used in the Accused Products.  RFP No. 22 seeks information about the

Gibson, Dunn &
Crutcher LLP

**Exhibit 25**
**-627-**

operation of LEDs used to determine pulse or heart rate, including timing, duty cycle, current, or power usage.  RFP No. 23 seeks information about collecting heart rate metrics using a first technique during a first period and a second technique during a second period.  Such information is relevant at least to Claim 1 of U.S. Patent No. 10,433,776, which recites in part:

> wherein said operating of the patient monitor according to the first control protocol operates the first control protocol light source according to a ***first duty cycle*** and said operating of the patient monitor according to the second control protocol operates the second control protocol light source according to a ***second duty cycle***, wherein **power consumption** of the first control protocol light source according to the ***first duty cycle*** is different than ***power consumption*** of the second control protocol light source according to the ***second duty cycle***.

Powell Decl., Ex. 2 at Claim 1  (emphasis added).

Finally, RFP Nos. 24-25 seeks information about changes in collecting heart rate metrics based on user input or operating mode.  Such information is relevant at least to claim 1 of U.S. Patent No. 10,433,776, which recites in part:

> in response to receiving the trigger signal, ***operating the patient monitor according to a second control protocol different from the first control protocol***, wherein said operating includes activating a second control protocol light source in accordance with the second control protocol, the second control protocol light source including one or more of the plurality of light sources.

Powell Decl., Ex. 2 at Claim 1 (emphasis added).

Accordingly, RFP Nos. 5-25 are quintessential patent requests.  By contrast, trade secret RFPs would seek, for example, information about Apple's employment of Plaintiffs' former employees, whether and how those former employees provided Plaintiffs' confidential information to Apple, communications with those former

**Exhibit 25**

**-628-**

employees, and other trade secret information.  Plaintiffs will serve such RFPs after providing the confidential Section 2019.210 disclosure pursuant to a Protective Order.

Apple cannot refuse to produce responsive documents by asserting some of the information may *also* be relevant to the trade secret claim.  There is no conceivable interpretation of *Erie* that would permit a defendant in Federal district court to refuse providing discovery relevant to **Federal claims** based on a state procedure applying solely to **state claims**.  Apple cites no case supporting its erroneous position, and Judge Selna already rejected it.  Moreover, Apple's own case law is to the contrary.  The Court should order Apple to produce the requested documents under RFP Nos. 5-25.

**D.    Apple's Other Arguments Are Irrelevant and Incorrect**

Apple devotes most of its portion of this Joint Stipulation to arguing Plaintiffs should provide a Section 2019.210 disclosure.  *See* Joint Statement at 18-28.  Those arguments are also moot now that Judge Selna determined that Section 2019.210 applies and Plaintiffs will provide a Section 2019.210 disclosure before seeking trade secret discovery.

Apple also presents a series of irrelevant and misleading "facts."  *See* Joint Statement at 8-17.  First, Apple faults Plaintiffs for serving a third-party subpoena on Apple in *Masimo Corp. et al. v. True Wearables Inc. et al.*, No. 8:18-cv-02001-JVS-JDE (the "*True Wearables* Case").  Joint Statement at 8.  But Apple admitted it has information relevant to the *True Wearables* Case by arguing the allegations in both cases were "nearly identical" and involved Apple's employment of a former employee of Plaintiffs.  D.I. 14 (Apple's Notice of Related Cases).  There is no dispute that Plaintiffs adequately identified their trade secrets in the *True Wearables* case.  There is no basis for Apple's allegation that Plaintiffs have no valid trade secrets and are simply on a fishing expedition to look at Apple's confidential information.  Apple speculates about the timing of Plaintiffs' subpoena, but that was dictated by the rapidly-approaching deadline for the close of fact discovery.  Once the Court extended the fact discovery deadline, Plaintiffs withdrew the subpoena to determine if it was necessary in view of

the extended discovery deadline.  Plaintiffs cannot be faulted for trying to avoid unnecessarily burdening the courts.

Apple's claim that Plaintiffs' withdrawal of the subpoena shows Plaintiffs were "caught red handed" is absurd.  Plaintiffs withdrew its subpoena to avoid unnecessarily burdening the court.  Indeed, Plaintiffs had committed to working with Apple to narrow the existing subpoena and the parties were engaged in ongoing communications regarding the scope of Plaintiffs' subpoena.  Apple unexpectedly cut off the parties' communications and suddenly filed a motion to quash.  Apple's vivid imagination is inconsistent with the actual facts surrounding the subpoena.

Second, Apple incorrectly asserts Plaintiffs "ignored" its request for a Section 2019.210 disclosure.  Joint Statement at 10.  To the contrary, Plaintiffs repeatedly responded and explained their contention at the time that Section 2019.210 did not apply in Federal Court.  *See, e.g.*, Powell Decl. ¶ 8.  While Judge Selna eventually decided to require such a disclosure, it was not improper or unreasonable for Plaintiffs to rely on cases holding Section 2019.210 conflicts with Rule 26 under the *Erie* doctrine.  *See, e.g.*, *SMC Networks, Inc. v. Hitron Techs., Inc.*, 2013 WL 12136372 (C.D. Cal. Mar. 15, 2013); *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, 2007 WL 273949, at *2 (E.D. Cal. Jan. 29, 2007).  Indeed, while Apple now argues the application of Section 2019.210 in Federal court is clear, the same lawyer representing Apple in this case took a contrary position when representing a trade-secret plaintiff in this Court.  *See General Elec. Co. v. Liang*, 2:13-cv-08670-DDP-CW, Dkt. No. 54 (C.D. Cal. Feb. 20, 2014) (Powell Decl., Ex. 5) at 22 (Apple's current counsel asserting: "2019.210 requires that a plaintiff alleging trade secret misappropriation in a ***state court action*** identify the trade secrets at issue before discovery may commence.  Assuming, ***arguendo***, that 2019.210 applies here, the statute has been satisfied" by other documents in the lawsuit (emphasis added)).

Third, Apple argues the First Amended Complaint does not satisfy Section 2019.210.  But that is irrelevant because Apple acknowledges Section 2019.210 does

Gibson, Dunn & Crutcher LLP

**Exhibit 25**

**-630-**

1    not apply to pleadings.  *See* Joint Statement at 17.  Apple also complains that the First

2    Amended Complaint "multiplied" the number of trade secrets "from seven to

3    approximately 50, if not more."  *Id.* at 10-11.  That is not true.  The First Amended

4    Complaint simply provided more detail about each category of trade secrets.   For

5    example, while the initial Complaint alleged Plaintiffs' trade secrets include "technical

6    information," the First Amended Complaint elaborated by stating: "Plaintiffs' technical

7    information includes product plans, engineering plans, product briefs, technical

8    drawings, . . . ." D.I. 28 ¶ 211.  Likewise, while the initial complaint identified "business

9    information," the First Amended Complaint explained what type of sales, marketing,

10   and other information Plaintiffs possess.  *Id.*  Regardless, the sufficiency of Plaintiffs'

11   pleading is a different question that will be addressed by resolving Apple's pending

12   Motion to Dismiss.  *See* D.I. 38.

13       Apple also argues "Plaintiffs concede that many, if not all, of their purported

14   secrets are now public."  Joint Statement at 2.  That is also false.  Plaintiffs alleged Apple

15   misappropriated ***some*** of its trade secrets by disclosing them in patent applications.  D.I.

16   28 ¶ 218.  Plaintiffs never limited its trade secrets to information Apple had already

17   disclosed in patent applications.   Moreover, the identification of what in those

18   applications originates from Plaintiffs remains secret.

19       Apple's requested relief also far exceeds the "reasonable particularity"

20   requirement of Section 2019.210.  *See* Joint Statement at 27.  In particular, Apple

21   demands that Plaintiffs also provide background information about the trade secret,

22   contentions regarding economic value, contentions regarding efforts to maintain

23   secrecy, ***and*** format the trade secrets as a list of specific elements "as claims would

24   appear at the end of a patent."  *Id.*  Apple does not even attempt to justify these

25   requirements, which are found nowhere in Section 2019.210.  Indeed, Apple itself

26   appears to acknowledge it is asking for ***more*** than mere compliance with Section

27   2019.210.  *See id.* (requesting an order requiring Plaintiffs to "[1] identify their alleged

28   trade secrets with the reasonable particularity Section 2019.210 requires; ***and*** [2] order

Gibson, Dunn &
Crutcher LLP

**Exhibit 25**
**-631-**

1  Plaintiffs to serve on counsel a statement, under seal, that includes [the additional

2  requirements]" (emphasis added)).  Moreover, Judge Selna already rejected the identical

3  request to impose these four additional requirements.  *See* Powell Decl., Ex. 8 at 20

4  (Apple requesting identical relief); *Id.*, Ex. 9 (Court order requiring only "compliance

5  with 2019.210").  This Court should reject Apple's attempt at a do-over.

6  **E.  Conclusion**

7  Nothing supports Apple's attempt to bar *all* technical discovery—including patent

8  discovery—until Apple agrees that Plaintiffs have complied with Section 2019.210.

9  Plaintiffs respectfully request the Court deny Apple's motion and order Apple to engage

10  in patent discovery by producing the documents requested by RFP Nos. 5-25.

11

12  Dated: April 30, 2020                     **GIBSON, DUNN & CRUTCHER LLP**

13

14                                            By:  /s/ *Joshua H. Lerner*
                                                   Joshua H. Lerner
15                                                 H. Mark Lyon
                                                   Brian M. Buroker
16                                                 Brian A. Rosenthal
                                                   Ilissa Samplin
17                                                 Angelique Kaounis

18                                            *Attorneys for Defendant Apple Inc.*

19

20  Dated:  April 30, 2020                    **Knobbe, Martens, Olson & Bear LLP**

21

22                                            By:  /s/ *Adam B. Powell*
                                                   Joseph R. Re
23                                                 Stephen C Jensen
                                                   Perry D. Oldham
24                                                 Stephen W Larson
                                                   Adam B. Powell

25                                            *Attorneys for Plaintiffs Masimo Corporation
                                              and Cercacor Laboratories, Inc.*

26

27

28

Gibson, Dunn &
Crutcher LLP

**Exhibit 25**
**-632-**

1

2

## ATTESTATION UNDER LOCAL RULE 5-4.3.4(a)(2)(i)

3       Pursuant to Civil L. R. 5-4.3.4(a)(2)(i), I attest that concurrence in the filing of

4   this document has been obtained from each of the signatories above.

5

6                                        By:  */s/ Joshua H. Lerner*

7                                             Joshua H. Lerner

8                                        *Attorney for Defendant Apple Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**Exhibit 25**
**-633-**



# Attachment A

Case 8:20-cv-00048-JVS-JDE   Document 61-2   Filed 06/26/20   Page 662 of 662   Page ID
#:4940
Case 8:20-cv-00048-JVS-JDE   Document 43-2   Filed 04/13/20   Page 1 of 1   Page ID #:3052

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-00048JVS(JDEx)                    Date   April 17, 2020

Title   Masimo Corporation, et al v Apple, Inc

Present: The
Honorable         **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:        Attorneys Present for Defendants:

Not Present                                Not Present

**Proceedings:**    **[IN CHAMBERS] ORDER RE SCHEDULING DATES**

The Court has read and considered the parties Rule 26(f) Report and sets the following dates:

| | |
|---|---|
| **Jury Trial** | **April 5, 2022 at 8:30 a.m.** |
| **Final PreTrial Conference** | **March 21, 2022 at 11:00 a.m.** |
| File PreTrial Documents not later than March 7, 2022 | |
| File motions in limine not later than February 14, 2022 | |
| **Discovery Cut-off** | **July 5, 2021** |
| **Expert Discovery Cut-off** | **December 6, 2021** |
| Initial disclosure of Experts not later than September 6, 2021 | |
| Rebuttal disclosure of Experts not later than October 18, 2021 | |
| **Law and Motion Cut-off** | **February 7, 2022 at 1:30 p.m.** |
| Motions to be filed and served not later than January 10, 2022 | |
| **Markman Hearing** | **February 8, 2021 at 3:00 p.m.** |

Counsel inform the Court that their selection for a settlement procedure pursuant to Local Rule 16-15 is ADR #3, private mediation. The Court orders that any settlement discussions shall be completed not later than November 30, 2021. Counsel shall file a Joint Report of the parties regarding outcome of settlement discussions, the likelihood of possible further discussions and any help the Court may provide with regard to settlement negotiations not later than seven (7) days after the settlement conference.

The Court adopts discvoery limits in Sections 6a-c. Total hours for depositions 100. Court will deal with reduction of claims, prior art references at a hearing on **July 10, 2020 at 3:00 p.m.** Parties shall submit joint/separate proposals in one filing by July 3, 2020. The Court adopts the patent specific dates. The Court stays the trade secret discovery only pending compliance with 2019.210. Any dispute over compliance shall be heard before the Magistrate Judge.

                                                        :        0

                                Initials of Preparer        lmb

**Exhibit 25**
**-635-**