# EXHIBIT 8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCALEMP, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>TIDALSCALE, INC., et al.,<br><br>    Defendants. | Case No.18-cv-04716-EDL<br><br>**ORDER ON PLAINTIFF'S TRADE SECRET DISCLOSURES**<br><br>Re: Dkt. Nos. 48, 50 |

On March 7, 2019, the parties filed a joint discovery letter concerning Defendant TidalScale, Inc.'s objections to Plaintiff ScaleMP, Inc.'s trade secret disclosures under California Civil Procedure Code § 2019.210. Defendant contends that Plaintiff's disclosures did not identify its trade secrets with "reasonable particularity." Defendant also argues that its production of core technical documents supporting its invalidity contentions, which is required by Patent Local Rule 3-4(a), should be postponed until ScaleMP further identifies its trade secrets. For the reasons discussed below, the Court orders Plaintiff to serve revised trade secret disclosures to Defendant within 14 days and orders Defendant to serve the documents it is required to produce pursuant to Patent Local Rule 3-4(a) within 2 days.

### I. BACKGROUND

This is a patent infringement and trade secret misappropriation case. Plaintiff is engaged in virtualization for in-memory high-end computing and develops technologies that enable the integration of multiple processors and memories into shared-memory computers. At issue in this case are three patents that claim and disclose software systems that aggregate processors and memory from multiple physical computers, operating separately and independently, into a single

Exhibit 8
-84-

virtual machine. Plaintiff alleges that Defendant Isaac Nassi and non-party David Reed[1] obtained confidential trade secret information from Plaintiff while they previously worked at SAP and then illegally used that trade secret information to when they began working for Defendant TidalScale to develop its allegedly infringing product. Plaintiff claims that Defendant violated the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq., and the California Uniform Trade Secret Act, Cal. Civ. P. Code §§ 3426 et seq.

The case management order entered in this case required Plaintiff to disclose its trade secrets by no later than January 22, 2019. Plaintiff served its Schedule of Disclosed Trade Secrets (the "Schedule") on January 22, 2019. Roberts Decl., ¶ 3, Ex. A. The Schedule disclosed five categories of trade secret information (pricing, performance, profiling and event tracing tools, software architecture, and business model) and, for each category, provided one or more example communications that reflected the disclosure. Id. Plaintiff included parentheticals after the example communications to explain what the disclosed trade secret was, e.g., the email exchange discloses Plaintiff's "future feature request" or the "business case for use of 2-socket machines to replace 4-socket machines." Id. The Schedule did not attach the example communications but stated that Plaintiff would "make available underlying documents upon the entry of a suitable protective order (insofar as the documents include third party SAP confidential information),[2] and reserves the right to update this schedule as additional information is discovered." Id. at 1. The Schedule specifically stated that Plaintiff's "disclosures in this document do not constitute a disclosure of any confidential information." Id. at 4. On February 28, 2019, Plaintiff produced the documents identified on the Schedule, along with other documents, and highlighted portions or pages in each document it contends to be the trade secret information. Id., ¶¶ 12, 13, 18, Exs. J & N. Plaintiff did not amend the Schedule after producing the highlighted documents.

---

[1] On March 6, 2019, the Court granted Reed's motion to dismiss the claims against him with prejudice for lack of personal jurisdiction.

[2] The parties had not entered into a stipulated protective order as of the date Plaintiff served the Schedule, but, as defense counsel pointed out to Plaintiff's counsel in a January 22, 2019 email, Patent Local Rule 2-2 provides that "[d]iscovery cannot be withheld on the basis of confidentiality absent Court order. The Protective Order authorized by the Northern District of California shall govern discovery unless the Court enters a different protective order." Pat. L-R 2-2.

1    Defendant asked Plaintiff to agree that Defendant could defer production of the core
2    technical documents that it is required to disclose under Patent Local Rule 3-4 with its invalidity
3    contentions. See Pat. L-R 3-4(a) ("With the 'Invalidity Contentions,' the party opposing a claim
4    of patent infringement shall produce or make available for inspection and copying . . . [s]ource
5    code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient
6    to show the operation of any aspects or elements of an Accused Instrumentality identified by the
7    patent claimant in its Patent L.R. 3-1(c) chart."). Roberts Decl., ¶¶ 6, 7, Ex. E. Plaintiff
8    responded that it did not believe that "identification of the trade secrets is . . . required for
9    TidalScale to gather its core technical documents." Roberts Decl., ¶ 8, Ex. F. Although Plaintiff
10   agreed that Defendant could wait to produce the core technical documents until after Plaintiff
11   produced the confidential SAP documents referenced in the Schedule, Plaintiff stated that it would
12   move to compel their production if Defendant did not receive them "in a timely fashion after
13   production of the SAP confidential documents." Id.

**II.     DISCUSSION**

    **A.     Trade Secret Disclosures**

California law defines a trade secret as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). As explained in Silvaco Data Sys. V. Intel Corp., 184 Cal. App. 4th 210 (Cal. Ct. App. 2010), trade secret law protects the right to maintain the confidentiality of facts, not ideas:

> A patent protects an idea, i.e., an invention, against appropriation by others. Trade secret law does not protect ideas as such. Indeed, a trade secret may consist of something we would not ordinarily consider an idea (a conceptual datum) at all, but more a fact (an empirical datum), such as a customer's preferences, or the location of a mineral deposit. In either case, the trade secret is not the idea or fact itself, but information tending to communicate (disclose) the idea or fact to another. Trade secret law, in short, protects only the right to control

> the dissemination of information.
>
> It is critical to any CUTSA cause of action—and any defense—that the information claimed to have been misappropriated be clearly identified.

Id. at 220-21 (emphases in original). Thus, under Section 2019.210,

> [i]n any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act . . . , before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code.

Cal. Civ. P. Code § 2019.210. There is no dispute over whether Section 2019.210 applies here. The dispute is limited to whether Plaintiff's disclosures "identify the trade secret with reasonable particularity" and whether Defendant may withhold their invalidity contention documents until Plaintiff's trade secret disclosures fulfill this requirement.

"[T]here is no bright-line rule governing the level of particularity required by section 2019.210." Loop AI Labs Inc. v. Gatti, 195 F. Supp. 3d 1107, 1111 (N.D. Cal. 2016) (citing Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal. App. 4th 826, 835 (Cal. Ct. App. 2005)). The party claiming misappropriation "need not 'define every minute detail of its claimed trade secret at the outset of the litigation,' but nevertheless 'must make some showing that is reasonable, i.e., fair, proper, just and rational.'" Loop AI Labs, 195 F. Supp. 3d at 1111 (quoting Advanced Modular, 132 Cal. App. 4th at 835-36). "[T]he law" on this standard "is purposely vague in some areas so that there is 'play in the joints.'" Advanced Modular, 132 Cal. App. 4th at 907 (quoting Locke v. Davey, 540 U.S. 712, 718 (2004)). Identifying what constitutes "reasonable particularity" in any given case is guided by the purpose of Section 2019.210:

> First, [section 2019.210] promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets. Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation.

Lilith Games (Shanghai) Co. Ltd. v. uCool, Inc., 2015 WL 4149066, at *4 (N.D. Cal. July 9, 2015) (quoting Advanced Modular, 132 Cal. App. 4th at 833-34); see also Loop AI Labs, 195 F.

Exhibit 8
-87-

1  Supp. 3d at 1112.

2  Defendant contends that Plaintiff's disclosure of the summary Schedule in addition to highlighting specific portions of documents does not identify its trade secrets with reasonable particularity. The Schedule, standing alone, does not meet that standard. While not every "minute detail" of the trade secrets being asserted must be disclosed, Advanced Modular, 132 Cal. App. 4th at 835-36, the Schedule does not even purport to list all of the alleged trade secrets. Instead, it merely identifies examples of communications that "embod[y]" the trade secrets. See Perlan Therapeutics, Inc. v. Superior Court, 178 Cal. App. 4th 1333, 1350 (Cal. Ct. App. 2009) (affirming the trial court's finding that "the Amended Trade Secret Statement continues to be vague because Plaintiff appears to be pursuing a claim for misappropriation of several trade secrets but the Statement has not clearly identified all of the trade secrets at issue"). Moreover, the fact that Plaintiff served the Schedule as a non-confidential document "belies the proposition that it contains information specific enough to be considered 'confidential' trade secrets." Loop AI Labs, 195 F. Supp. 3d 1107, 1112.

However, Plaintiff is not relying upon the Schedule alone, so these issues are not dispositive. It has also produced a voluminous set of documents and highlighted the portions that it contends are the trade secrets at issue.[3] Neither side has pointed to any authority that mandates a particular format for the trade secrets disclosures, so this method of disclosure is not categorically prohibited.[4] Nevertheless, Defendant persuasively argues that this method has failed to meet the

---

[3] All of these documents were provided at Exhibit O, a nearly 350-page document, and Exhibit P, an additional 8 pages. The parties made a joint motion to seal parts of the joint discovery letter and exhibits. The portions they seek to seal are comprised of: (1) Exhibit O, SAP's materials that Plaintiff obtained from SAP pursuant to a nondisclosure agreement, much of which is highly technical information; (2) Exhibit P, additional confidential SAP documents; and (3) dropbox links and passwords to enable access to the confidential materials that the parties seek to seal. Given the highly sensitive nature of the documents the parties seek to seal, the parties have demonstrated good cause to seal these portions of the joint letter and exhibits and the motion is granted.

[4] Both parties agree that Defendant initially "suggested that ScaleMP highlight *specific* information it alleged as a trade secret as part of addressing" the issue. Jt. Ltr. at 2 (Defendant's position) (emphasis in original); Jt. Ltr. at 3 n.2 (stating that on a March 5, 2019 call "the parties resolved that ScaleMP would either highlight or designate confidential portions in all documents") (Plaintiff's position).

5

Exhibit 8
-88-

1 reasonable particularity standard as a practical matter.

2 Some of the highlighted designations seem straightforward, as in SCA_00004839 which set forth a specific software configuration. Other designations, however, are ambiguous and thwart the purposes of the trade secret disclosures. For example, Plaintiff has highlighted passages across hundreds of pages of documents, including sometimes highlighting several consecutive pages of a single document. See Roberts Decl., ¶ 1, Ex. O (SCA_00005033, an 18-page document of which 12 pages are completely highlighted). There is so much information highlighted in some pages, such as this example, that it is impossible to discern by the face of the document whether each sentence is being identified as a trade secret or some combination of sentences or all of it together. Plaintiff argues that the entire highlighted portion of the document starting at SCA_00005033 is a trade secret because the highlighted portions of the document set forth in detail how Plaintiff analyzes its system's performance. Without Plaintiff's explanation that it is claiming the entire analysis process as the trade secret, its end goal in highlighting the majority of the document is equivocal. Plaintiff can resolve the ambiguity by claiming the system performance analysis process, as set forth in SCA_00005033-5050, as a trade secret in an amended Schedule.

The same is true of Plaintiff's discussion of the document that begins at SCA_00004819, in which Plaintiff highlighted three sentences about testing a certain driver. See SCA_00004836-4837. Plaintiff asserts that these three sentences contain "several items of confidential information" and so its disclosure was adequate, but even in the letter Plaintiff does not identify which portions of the highlighted sentences it considers the "several items of confidential information" and whether each sentence standing alone is a trade secret or whether some combination of the sentences in that highlighted portion are the trade secrets.

Finally, Plaintiff points to SCA_00004840, what it characterizes as a "trouble ticket," as another example of an appropriate designation accomplished through highlighting. Plaintiff contends that the highlighted portion is adequately identified because when the highlighted portion is read with the remainder of the document it is confirmed that the confidential solution of a particular technical problem, which was discussed elsewhere in the document (the whole

1  document is at SCA_00004840-4850), was successful based on the additional testing that was
2  discussed in the highlighted portion. Rather than prove the adequacy of Plaintiff's disclosure
3  method, this explanation exemplifies its problems. According to Plaintiff, the highlighting itself
4  did not disclose the trade secret; instead, Defendant was obliged to read the highlighted portion in
5  conjunction with other unhighlighted portions in an attempt to deduce the trade secret that Plaintiff
6  intended to disclose through the highlighting. Requiring Defendant to conduct this type of
7  guesswork does not provide reasonably particular notice.

8  Defendant raised other potential issues that further undermine the sufficiency of the current
9  disclosures. Plaintiff does not dispute that it has asserted that it may point to combinations of
10 ideas in any of the highlighted materials as being a trade secret, although it has not yet specified
11 what those combinations are. Plaintiff also does not dispute that it has indicated that it may point
12 to meeting agendas claiming that the trade secrets are comprised of unidentified information
13 discussed in the meeting, which cannot be disclosed by Plaintiff's highlighting method. As a final
14 example, Defendant points out that Plaintiff highlighted a hyperlink that contains a document that
15 has not been produced and is not accessible to Defendant, making it impossible to know how the
16 unavailable document factors into the disclosed trade secret. See Ex. O, SCA_00004799.

17 Accordingly, Plaintiff's current disclosures do not identify its asserted trade secrets with
18 reasonable particularity. Plaintiff must amend its disclosures and serve them on Defendant within
19 14 days of the date of this Order.

20 **B.     Defendant's Production Under Patent Local Rule 3-4(a)**

21 The other issue raised by the joint letter is whether Defendant should be excused from
22 serving its core technical documents as required by Patent L-R 3-4(a) until after Plaintiff serves its
23 amended disclosures. Section 2019.210 provides that "before commencing *discovery relating to*
24 *the trade secret*, the party alleging the misappropriation shall identify the trade secret with
25 reasonable particularity . . . ." Cal. Civ. P. Code § 2019.210 (emphasis added). In Advanced
26 Modular, the court held that this provision extends to any claim alleging misappropriation, i.e., if
27 the claim "hinges upon the factual allegation that [the defendant] misappropriated [the plaintiff's]
28 trade secrets." 132 Cal. App. 4th at 907.

7

Exhibit 8
-90-

1    While Plaintiff's patent infringement claim is related to its trade secret misappropriation
2    claim in the sense that the alleged misappropriation led to Defendant's development of infringing
3    technology, the patent infringement claim does not "hinge" on the misappropriation allegation.
4    Plaintiff's ability to succeed on the infringement claim is independent of the viability of its
5    misappropriation claim. Thus, the statutory language does not require a postponement of patent-
6    related disclosures in this case, even while Plaintiff revises its trade secret disclosures.

7    Defendant's only authority for its position that service of its patent-related documents
8    should not move forward is Gabriel Techs. Corp. v. Qualcomm Inc., 2012 WL 849167 (S.D. Cal.
9    Mar. 13, 2012). In Gabriel, the district court overruled objections to the magistrate judge's order
10   denying the plaintiffs' motion to compel discovery because their trade secrets disclosures under
11   Section 2019.210 were insufficient. Id. at *1. Defendant points out that Gabriel was a trade secret
12   misappropriation and patent case. The operative complaint in Gabriel raised claims of breach of a
13   license agreement, correction of patents to reflect the true inventorship, declaratory judgment for
14   ownership of the patents, and misappropriation of trade secrets, but it did not involve a claim of
15   patent infringement. Gabriel, Case No. 3:08-cv-01992-AJB-MDD, Dkt. No. 53. The Gabriel
16   court's March 13, 2012 order did not distinguish between discovery related to the trade secrets
17   claim or discovery related to the patent claims, although the underlying order by the magistrate
18   judge notes that an earlier court order allowed the plaintiffs "to proceed with discovery that was
19   not reliant upon sufficient trade secret designations with respect to Plaintiffs' licensing agreement
20   claims" while the plaintiffs sought to revise their trade secret designations. Id., Dkt. No. 229 at 4.
21   See also Loop AI Labs Inc. v. Gatti, 2015 WL 9269758, at *4 (N.D. Cal. Dec. 21, 2015) (denying
22   motion to stay all discovery until the plaintiff complied with Section 2019.210 and permitting
23   discovery to move forward on all 16 claims that were not based on trade secret misappropriation
24   claims). Gabriel recognizes that discovery on claims that are independent of the trade secret
25   misappropriation claim need not be postponed while the plaintiff corrects its trade secret
26   disclosures.

27   Defendant appears concerned that Plaintiff will use its technical documents that it would
28   otherwise need to produce pursuant to Patent L-R 3-4(a) to obtain Defendant's trade secrets, citing

8

Exhibit 8
-91-

1  Loop AI Labs, 195 F. Supp. 3d at 1112 (one purpose of Section 2019.210 is to "prevent[ ]
2  plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets").
3  But Plaintiff is entitled to Defendant's documents under Patent L-R 3-4(a) in order to litigate
4  Defendant's claims of patent invalidity. The trade secrets statutes and the parties' protective order
5  (dkt. no. 98) prevent Plaintiff from misusing information about Defendant's technology.
6  Defendant has not argued that it is unable to identify and disclose the documents that are required
7  for production under Patent L-R 3-4(a) until Plaintiff serves revised trade secret disclosures.
8  Thus, Defendant must serve its core technical documents and any other documents required by
9  Patent L-R 3-4(a) within 2 days of the date of this order.

### III. CONCLUSION

As discussed above, Plaintiff shall serve revised trade secret disclosures to Defendant within 14 days and Defendant shall serve the documents it is required to produce pursuant to Patent Local Rule 3-4(a) within 2 days.

**IT IS SO ORDERED.**

Dated: March 15, 2019

ELIZABETH D. LAPORTE
United States Magistrate Judge

9

**Exhibit 8**
**-92-**