# EXHIBIT 9

| | |
|---|---|
| 1 | **Andrew P. Holland**/Bar No. 224737<br>aholland@thoits.com |
| 2 | **Mark V. Boennighausen**/Bar No. 142147<br>mboennighausen@thoits.com |
| 3 | **Erin M. Doyle**/Bar No. 233113<br>edoyle@thoits.com |
| 4 | **Misasha S. Graham**/Bar No. 237187<br>mgraham@thoits.com |
| 5 | **THOITS LAW**<br>A Professional Law Corporation |
| 6 | 400 Main Street, Suite 250<br>Los Altos, California 94022 |
| 7 | Telephone: (650) 327-4200<br>Facsimile: (650) 325-5572 |
| 8 | |
| 9 | **Attorneys for Plaintiffs**<br>**MACOM Technology Solutions Inc.**<br>**and Mindspeed Technologies, S.A.S.** |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MACOM TECHNOLOGY SOLUTIONS INC., a Delaware corporation; MINDSPEED TECHNOLOGIES, S.A.S., a French corporation,<br><br>Plaintiffs,<br><br>v.<br><br>LITRINIUM, INC., a Delaware corporation; JEROME GAREZ, an individual; and DOES 1 through 20, inclusive,<br><br>Defendants. | No. 8:19-cv-00220-JVS-JDE<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) VIOLATION OF DEFENSE OF TRADE SECRETS ACT**<br>**(2) VIOLATION OF CALIFORNIA UNIFORM TRADE SECRET ACT**<br>**(3) BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs MACOM Technology Solutions Inc. ("MACOM") and Mindspeed Technologies, S.A.S. ("Mindspeed SAS") (MACOM and Mindspeed SAS are referred to collectively as "Plaintiffs") complain and allege as follows against defendants Jerome Garez, Litrinium, Inc. and DOES 1 through 20:

137224.019/1244207v1

1

FIRST AMENDED COMPLAINT

Exhibit 9
-93-

# THE PARTIES

1. Plaintiff MACOM[1] is a Delaware corporation with its principal place of business located at 100 Chelmsford Street, Lowell, Massachusetts. MACOM also operates design centers in Santa Clara and Newport Beach, California. These design centers assist in developing the trade secrets that are the primary focus of this lawsuit. In 2013, MACOM acquired Mindspeed Technologies, Inc. ("Mindspeed"), including all of Mindspeed's foreign subsidiaries.

2. Plaintiff Mindspeed SAS is a French corporation organized under the laws of France. It is wholly owned by Mindspeed, which is wholly owned by MACOM.

3. Defendant Jerome Garez ("Garez") is a former employee of Mindspeed SAS. During his time as an employee of Mindspeed SAS, he executed contracts in which he agreed to keep Mindspeed SAS's and any of its affiliated entities' information confidential.

4. Plaintiffs are informed and believe, and thereupon allege, that defendant Litrinium, Inc. ("Litrinium") is a Delaware corporation with its principal place of business located in Aliso Viejo, California. Plaintiffs are informed and believe, and thereupon allege, that Litrinium opened an office in France, on or about March 7, 2018.

5. DOES 1 through 20 are persons or entities responsible in whole or in part for the wrongdoing alleged herein ("Doe Defendants"). Plaintiffs are informed and believe, and thereupon allege, that each of the Doe Defendants participated in, ratified, endorsed, or was otherwise involved in the acts complained of, and that they have liability for such acts. Plaintiffs will amend this Complaint if and when the identities of such persons or entities and/or the scope of their actions become known.

6. Jerome Garez, Litrinium, Inc. and the Doe Defendants, and their agents, affiliates, and other co-conspirators are collectively referred to as "Defendants."

///

---

[1] MACOM Technology Solutions Inc. was erroneously named in the complaint as M/A-Com Technology Solutions Inc. (Docket Document #1).

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the federal trade secret claim pursuant to 18 U.S.C. §§ 1836-39 *et seq*. and 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the state law claim alleged in this Complaint pursuant to 28 U.S.C. § 1367.

8. As set forth above, at least one defendant resides in this judicial district. In addition, a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this judicial district. Venue therefore properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1391(b)(1) and (2).

9. Plaintiffs are further informed and believe that defendant Garez has had and continues to have contacts with the state of California concerning the subject matter of this Complaint, whereby subjecting him to federal court jurisdiction in this state comports with California Code of Civil Procedure section 410.10. The contacts include, but are not limited to, traveling to California to attend technical conferences concerning the technology at issue in this action and having communications (including, but not limited to, face-to-face, telephone, e-mail and other electronic communications) with employee and/or agents of defendant Litrinium. For example, in both March and September of 2016, Garez traveled to Newport Beach, California, travel for which he was reimbursed by Plaintiffs.

## BACKGROUND

10. Plaintiffs are in the business of designing, producing and selling semiconductor technologies for optical, wireless and satellite networks. Plaintiffs' business includes marketing and selling its products to customers across the United States and the world.

11. Plaintiffs sell many products in highly competitive markets. These products have short life cycles and require extensive research and development to meet market needs and demand. Accordingly, the ability to make design decisions based on knowing what may or may not be successful, and as knowledge about both the likely path to the marketplace based on

information received from customers and internal work is highly valuable, and is crucial to Plaintiffs' commercial success.

12. Plaintiffs take substantial steps to keep such information secret as such information is at the core of the success of their business. As part of their precautions to keep their proprietary knowledge and technology secure, Plaintiffs require that employees agree to contractual confidentiality obligations both during and after their employment period with Plaintiffs. Plaintiffs also have internal network security procedures to restrict access and ensure that internal company information is not publically available. Plaintiffs also carefully monitor what information about their product plans is known to the public as well as the results of their internal development product efforts.

13. The technology and non-public information at issue in this litigation generally concerns transimpedance amplifier ("TIA") designs and functionality. It is this technology that defendant Garez was principally responsible for within MACOM. A TIA, in electronics, is a current-to-voltage converter. TIAs are often used when setting an operational amplifier to amplify the signal from a sensor, such as a photodiode, and are often used in optical receiver applications. This market is highly competitive and Plaintiffs have developed an expertise in the design and development of these products. In particular, Plaintiffs developed two generations of 28 GHz TIAs that were incorporated into their products, including but not limited to MATA-03003, MATA-03006 and MATA-03007.

14. At this stage of the litigation, MACOM submits the following further description of trade secrets at issue in this matter:

(1) method for developing a transimpedance amplifier (TIA) according to customer requirements and specifications for passive optical networks (PON), including performance parameters and shortcomings based on trial and error from internal development efforts;

(2) internal circuit design operational methodologies, including pricing on parts, production costs, test time and methodology and yields and yield improvement methods;

(3) mechanical development methodologies including: (a) Maximum die size allowable in different types of ROSAs and optimal die aspect ratio, and (b) knowledge of customer preferred PAD locations and ROSA signal integrity challenges (high-speed behavior of ROSA pin/substrate);

(4) internally developed information about the ST Microelectronics (STM) B55 process, including performance compared to TowerJazz (TJ) SG18HX processes for high speed bipolar and CMOS transistors as well as cost, cycle time and availability, including allocation issues of STM track records of silicon delivery and benchmarks on process maturity;

(5) design of the TIA, subject to the constraints of an integrated circuit (IC) process and photodetector (PD) packaging including performance targets for current products and potential limitations of MACOM products, as well as IC area reductions;

(6) design for automatic gain control in the TIA to prevent overload;

(7) design for DC offset compensation at the input of the TIA for PON; and

(8) compilation of all trade secrets set forth above including those combined with public technology and confidential and non-confidential business information to produce MACOM products.

15. Plaintiffs are informed and believe that Litrinium was formed in March 2016 by a former Mindspeed Technologies, LLC (f/k/a Mindspeed Technologies, Inc.) and MACOM employee, Najabat Hasnain Bajwa.

16. Plaintiffs are informed and believe that Mr. Bajwa, after his departure from Plaintiffs' employment, stayed in contact with Garez and eventually recruited him to work for Litrinium.

17. Plaintiffs are informed and believe that Garez used Plaintiffs' resources and developed confidential and proprietary design concepts while employed by Plaintiffs, which were then incorporated into Litrinium products.

18. A forensic investigation of Garez's activities conducted after his departure

137224.019/1244207v1      5
FIRST AMENDED COMPLAINT

Exhibit 9
-97-

established that while still employed by Plaintiffs he was working on projects unrelated to his job duties that were hidden from Plaintiffs. These projects included a burst mode PON receiver and a 3rd generation 28G TIA. These unrelated projects included developing circuits, including running temperature sweeps and other parametric simulations to test the robustness of the designs as well as developing schematics of these designs.

19. In reconstructing work that Garez deleted prior to his departure from their employ, Plaintiffs found that some of the deleted information concerned Garez's work on a 28G TIA, including work on a peak detector circuit for a burst-mode TIA and a sophisticated offset compensation circuit. The forensic investigation established that Garez attempted to delete this work but Plaintiffs recreated back-ups of these files. Notably, this reconstruction established that Garez attempted to delete files that had last been modified on February 12, 2018, approximately three weeks before his departure.

20. A forensic analysis of the laptop and desktop computers issued to Garez by Plaintiffs was conducted shortly after his departure. Results of the analysis indicated that contemporaneous with his departure, Garez deleted technical information from his company laptop and accessed files on his work laptop using a USB device within one month of his departure. Garez never turned over this USB device to Plaintiffs despite being contractually obligated to return all company property.

21. On information and belief, prior to his departure from Plaintiffs' employ, Garez used his regularly scheduled business trips to Plaintiffs' Newport Beach, California offices to visit Litrinium and/or connect with Mr. Bajwa in order to coordinate Garez's misappropriation of Plaintiffs' trade secrets.

22. On information and belief, because the design and development of Plaintiffs' 2nd generation 28G TIA required substantial effort from multiple individuals employed by Plaintiffs and not just defendant Garez, the misappropriation of trade secrets by Garez is substantial, both in the amount of resources expended and in scope.

137224.019/1244207v1     6
FIRST AMENDED COMPLAINT

Exhibit 9
-98-

23. While employed by Plaintiffs, Garez was responsible for next generation TIAs including a PAM-4 TIA, 28G Burst Mode TIA, 28G Gen1 TIA, 10G Gen2 TIA, 28G APD TIA single and quad versions, and 28G PIN TIA single and quad versions. On information and belief, the development of these components at MACOM were of particular commercial interest to Litrinium.

24. Based on their investigation, Plaintiffs are informed and believe that Garez learned certain circuit processes for product development which would provide any competitor of MACOM a competitive advantage since they could avoid the cycle time necessary to develop circuits in processes that did not work. Plaintiffs are informed and believe that given the timing of his departure from Plaintiffs' employ and his immediate employment by Litrinium, Garez used Plaintiffs' resources and time to develop technology used for Litrinium products.

25. Garez tendered his resignation from Mindspeed SAS in early 2018 and his employment terminated on March 6, 2018. Litrinium established an office in France to employ Mr. Garez at least as early as March 7, 2018.

26. Plaintiffs are informed and believe that Litrinium's office located in France is just a mechanism for it to employ Garez, and that all substantive Litrinium operations are conducted through its California entity, including the use of misappropriated trade secrets and confidential information taken by Garez from Plaintiffs.

## CLAIMS FOR RELIEF

### COUNT 1 – VIOLATION OF DEFENSE OF TRADE SECRETS ACT
(Against All Defendants)

27. Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

28. Plaintiffs own and possess certain confidential, proprietary, and trade secret information, as alleged above. Plaintiffs' trade secrets include valuable designs, data and sales information related to the development of TIAs and all iterations and advancements related to

137224.019/1244207v1　　7
FIRST AMENDED COMPLAINT

Exhibit 9
-99-

Plaintiffs' TIA technology, including all design choices made in connection with such products.

29. Plaintiffs' confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and/or ordered in, or intended to be used, sold, shipped and/or ordered in, interstate and foreign commerce.

30. Plaintiffs have gone to great lengths to keep such information secret and confidential, and have at all times maintained stringent security measures to preserve the secrecy of Plaintiffs' trade secrets referenced herein, including restriction of access to confidential and proprietary trade secret information to only those individuals who "need to know." In addition, all networks hosting Plaintiffs' confidential and proprietary information have been and continue to be encrypted and have at all times required passwords, and all computers and tablets provided to Plaintiffs' employees are encrypted, password protected, and subject to other security measures.

31. Plaintiffs also secure their physical facilities by restricting access, and then monitoring actual access with security cameras and guards.

32. Plaintiffs require employees, contractors, consultants, vendors, and manufacturers to sign confidentiality agreements before any confidential or proprietary trade secret information is disclosed to them.

33. Due to these security measures, Plaintiffs' confidential and proprietary trade secret information is not available for others in the semiconductor industry – or any other industry – to use through any legitimate means.

34. Plaintiffs' confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

35. In violation of Plaintiffs' rights, Defendants misappropriated Plaintiffs' confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein. Defendants' misappropriation of Plaintiffs' confidential, proprietary, and trade

1  secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

2  36.  On information and belief, if Defendants are not enjoined, they will continue to misappropriate and use Plaintiffs' trade secret information for their own benefit and to Plaintiffs' detriment, both in California and through interstate and international use as well.

37.  As the direct and proximate result of Defendants' conduct Plaintiffs have suffered and, if Defendants' conduct is not stopped, will continue to suffer severe competitive harm, irreparable injury, and significant damages in an amount to be proven at trial. Because Plaintiffs' remedy at law is inadequate, Plaintiffs seek, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret information and to protect other legitimate business interests. Plaintiffs' business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

38.  Plaintiffs have been damaged by all of the foregoing and are entitled to an award of exemplary damages and attorneys' fees.

WHEREFORE Plaintiffs pray for the relief specified below.

**COUNT 2 – VIOLATION OF CALIFORNIA UNIFORM TRADE SECRET ACT**
**Cal. Civ. Code § 3426 *et seq.***
**(Against All Defendants)**

39.  Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

40.  Plaintiffs' technical information, designs, and other "know how" related to Plaintiffs' TIA technology and implementation, as set forth above, constitute trade secrets as defined by California's Uniform Trade Secrets Act. Plaintiffs own and possess certain confidential, proprietary, and trade secret information, as alleged above.

41.  Plaintiffs have undertaken efforts that are reasonable under the circumstances to maintain the secrecy of the trade secrets at issue. These efforts include, but are not limited to, the use of passwords and encryption to protect data on Plaintiffs' computers, servers, and source code repositories, and a culture that reminds all employees of their duties to maintain the secrecy of Plaintiffs' confidential information, and the use of confidentiality agreements and non-disclosure

137224.019/1244207v1          9
FIRST AMENDED COMPLAINT

**Exhibit 9**
**-101-**

agreements requiring vendors, partners, contractors, and employees to maintain the secrecy of Plaintiffs' confidential information.

42. Defendants knew or should have known under the circumstances that the information misappropriated by Defendants constitute trade secrets.

43. Defendants misappropriated and threaten to further misappropriate trade secrets at least by acquiring trade secrets with knowledge of or reason to know that the trade secrets were acquired by improper means, and Defendants are using and threatening to use the trade secrets acquired by improper means without Plaintiffs' knowledge or consent.

44. As a direct and proximate result of Defendants' conduct, Plaintiffs are threatened with injury and have been injured in an amount in excess of the jurisdictional minimum of this Court and that will be proven at trial. Plaintiffs have also incurred, and will continue to incur, additional damages, costs and expenses, including attorneys' fees, as a result of Defendants' misappropriation. As a further, proximate result of the misappropriation and use of Plaintiffs' trade secrets, Defendants have been unjustly enriched.

45. Defendants' conduct constitutes transgressions of a continuing nature for which Plaintiffs have no adequate remedy at law. Unless and until enjoined and restrained by order of this Court, Defendants will continue to retain and use Plaintiffs' trade secret information to enrich themselves and divert business from Plaintiffs, as Defendants are currently creating and marketing competing products based on the misappropriated 2nd generation 28G TIA trade secrets. Pursuant to California Civil Code § 3426.2, Plaintiffs are entitled to an injunction against the misappropriation and continued threatened misappropriation of trade secrets as alleged herein and further ask the Court to restrain Defendants from using all trade secret information misappropriated from Plaintiffs and to order the return of all trade secret information to Plaintiffs.

46. Pursuant to California Civil Code § 3426.3 and related law, Plaintiffs are entitled to exemplary damages for Defendants' misappropriation of trade secrets due to Defendants' willful and malicious misappropriation of trade secrets in a way specifically designed to harm Plaintiffs

1 and their business.

2     47. Pursuant to California Civil Code § 3426.4 and related law, Plaintiffs are entitled to an award of attorneys' fees for Defendants' misappropriation of trade secrets due to Defendants' willful and malicious misappropriation of trade secrets in a way specifically designed to harm Plaintiffs and their business.

    WHEREFORE Plaintiffs pray for the relief specified below.

### COUNT 3 – BREACH OF CONTRACT
**(Against Jerome Garez)**

    48. Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

    49. Defendant Garez entered into a written contract with Mindspeed SAS where he agreed to keep all of Plaintiffs' proprietary and non-public information confidential. The obligation to keep such information confidential extended beyond the end of his employment with Plaintiffs.

    50. Plaintiffs performed all of their obligations under the contract, or were excused therefrom by Garez's conduct.

    51. Garez breached his obligations under the contract by disclosing and/or using Plaintiffs' confidential information at Litrinium or elsewhere for his benefit, and by developing technology derived from Plaintiffs' trade secrets during his employment with Plaintiffs that he then misappropriated and used to directly compete with Plaintiffs while at Litrinium.

    52. Because of Garez's breach, Plaintiffs have been damaged.

    WHEREFORE Plaintiffs pray for the relief specified below.

### PRAYER FOR RELIEF

Based on the foregoing, Plaintiffs request that:

1. the Court impose a constructive trust on all individuals and entities who come into possession of or receive benefit from the use of Plaintiffs' trade secrets and/or confidential information;

2. the Court issue an injunction prohibiting Defendants and/or non-parties who come

into receipt of Plaintiffs' confidential or trade secret information from using it in any manner until it is returned to Plaintiffs' possession;

       3.      Plaintiffs be awarded damages to the fullest extent allowed by law;

       4.      Plaintiffs be made whole by recovery of the unjust enrichment Defendants received through misappropriation of Plaintiffs' trade secrets;

       5.      Plaintiffs be awarded exemplary damages in conformity with the law;

       6.      Plaintiffs be awarded attorneys' fees pursuant to California Civil Code § 3426.4; and

       7.      All other appropriate relief in light of the facts proven and the applicable law.

Dated: April 10, 2019

                                  **THOITS LAW**
                                **Attorneys for Plaintiffs MACOM**
                                **Technology Solutions Inc.**
                                **and Mindspeed Technologies, S.A.S**

By:    */s/ Andrew P. Holland*
             **Andrew P. Holland/Bar No. 224737**
             **Mark V. Boennighausen/Bar No. 142147**
             **Erin M. Doyle/Bar No. 233113**
             **Misasha S. Graham/Bar No. 237187**
             A Professional Corporation
             400 Main Street, Suite 250
             Los Altos, California 94022
             Telephone: (650) 327-4200
             Facsimile: (650) 325-5572
             Email:    aholland@thoits.com
                            mboennighausen@thoits.com
                            edoyle@thoits.com
                            mgraham@thoits.com

THOITS LAW
A PROFESSIONAL LAW CORPORATION
400 MAIN STREET, SUITE 250
LOS ALTOS, CALIFORNIA 94022

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: April 10, 2019

                    **THOITS LAW**
               **Attorneys for Plaintiffs MACOM**
                 **Technology Solutions Inc.**
             **and Mindspeed Technologies, S.A.S**

By: */s/ Andrew P. Holland*
     **Andrew P. Holland/Bar No. 224737**
     **Mark V. Boennighausen/Bar No. 142147**
     **Erin M. Doyle/Bar No. 233113**
     **Misasha S. Graham/Bar No. 237187**
     A Professional Corporation
     400 Main Street, Suite 250
     Los Altos, California 94022
     Telephone: (650) 327-4200
     Facsimile: (650) 325-5572
     Email: aholland@thoits.com
              mboennighausen@thoits.com
              edoyle@thoits.com
              mgraham@thoits.com

THOITS LAW
A PROFESSIONAL LAW CORPORATION
400 MAIN STREET, SUITE 250
LOS ALTOS, CALIFORNIA 94022

Exhibit 9
-105-