# EXHIBIT 13

```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3                 BEFORE THE HONORABLE WILLIAM ALSUP

 4    JOBSCIENCE, INC.,            )
                                   )
 5               Plaintiff,        )
                                   )
 6         VS.                     ) NO. 3:13-cv-04519-WHA
                                   )
 7    CVPARTNERS, INC., et al.,    )
                                   ) San Francisco, California
 8               Defendants.       ) Thursday, February 27, 2014
      _____ ) 8:13 a.m.
 9
                    TRANSCRIPT OF COURT PROCEEDINGS
10


11
      APPEARANCES:
12


13    For Plaintiff:        Counsel Force PC
                            135 Main Street, Suite 1350
14                          San Francisco, California 94105
                        BY: PATRICK M. TERRY, ESQ.
15


16    For Defendants:       DLA Piper
                            555 Mission Street, Suite 2400
17                          San Francisco, California 94105
                        BY: RAJIV DHARNIDHARKA, ESQ.
18                          DEBORAH MCCRIMMON, ESQ.

19

20

21

22

23

24
      Reported By:  James C. Pence, RMR, CRR, CSR No. 13059
25                  Official Court Reporter - U.S. District Court
                    Computerized Transcription By Case CATalyst
```

Exhibit 13
-121-

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 3 of 37   Page ID
#:5303
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 2 of 36

2

```
 1        Thursday, February 27, 2014                    8:13 a.m.

 2                            ---000---

 3             THE COURT:  All right.  Jobscience versus CVPartners,

 4        13-4519.

 5          What's this?

 6             THE CLERK:  Just the names, attorney names.

 7             THE COURT:  That's a different case.  This is

 8        Jobscience.

 9             THE CLERK:  Yeah.  It's on there, too.

10             THE COURT:  Where is it on here?  Oh, I see it.

11          All right.  Thanks.

12             THE CLERK:  Okay.

13             THE COURT:  Yes.  Appearances, please.

14             MR. TERRY:  Good morning, your Honor.  Patrick Terry

15        for the plaintiff Jobscience.

16             THE COURT:  Welcome.

17          And --

18             MR. DHARNIDHARKA:  Rajiv Dharnidharka, DLA Piper, for

19        all the defendants, and my colleague Deborah McCrimmon is here

20        with me today.

21             MS. MCCRIMMON:  Good morning, your Honor.

22             THE COURT:  What's your name?

23             MS. MCCRIMMON:  Deborah McCrimmon.

24             THE COURT:  Welcome.

25             MS. MCCRIMMON:  Thank you.
```

**Exhibit 13**
**-122-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 4 of 37   Page ID
#:5304
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 3 of 36

3

```
 1              THE COURT:  Okay.  This is a motion by you to amend.

 2         Go ahead.

 3              MR. TERRY:  Yes, your Honor.

 4         The plaintiff is prepared to propose a second amended

 5    complaint and address the Court's order of January, I think,

 6    9th in which several causes of action were addressed by motion.

 7    Those causes of action include a trade secret misappropriation,

 8    a cause of action for constructive fraud and for breach of the

 9    implied covenant of good faith and fair dealing as well as an

10    unfair competition law.

11         Your Honor, we -- the plaintiff has provided for -- with

12    the proposed complaint, we feel we've addressed the

13    deficiencies noted in the order.  As far as the trade secrets

14    are concerned, your Honor, we have listed trade secrets, we

15    believe, with particularity that's required at this stage in

16    the case, which is the pleading stage.

17         The defendants have argued that some of those trade secrets

18    haven't been made public on the Internet.  Our position on that

19    is that there are still trade secrets that are not public, and

20    it's a question of fact.  We believe we've met our burden at

21    this stage under Rule 8.  Also, your Honor, on the causes of

22    action for constructive fraud and the breach of the implied

23    covenant of good faith and fair dealing, we believe we've met

24    our burden.

25         The Court had pointed out with regard to the covenant that
```

Exhibit 13
-123-

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 5 of 37   Page ID
#:5305
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 4 of 36
4

```
 1        it required a fiduciary duty.  We believe we've stated a set of

 2        facts that can be interpreted to imply the fiduciary duty was

 3        created.  On the constructive fraud claim, we have asserted

 4        that the nondisclosure agreement was breached.  There was a

 5        duty of confidentiality that was breached, and that's the basis

 6        for constructive fraud.

 7            Your Honor -- along with the other facts we have asserted

 8        in the complaint.  Your Honor, this is a very simple case.  It

 9        is basically a case of the theft of intellectual property, a

10        breach of contract, breach of a nondisclosure agreement.  And

11        these breaches occurred, your Honor, while the defendants were

12        under contract with plaintiff not to breach the confidentiality

13        agreement, not to steal trade secrets, not to build a competing

14        product, not to do all the things listed here.

15            A unique factor, your Honor, in this case which I pointed

16        out in the papers is that in this case the defendants entered

17        into a contract of confidentiality and a contract not to

18        develop a competing product and not to reverse-engineer a

19        product.  At the end of that contract -- prior to the end of

20        that contract, they began to reverse-engineer the product.

21        They set up a company to do so.

22            They even went and filed for a trademark, your Honor --

23        that's not on the papers but something we determined -- prior

24        to the end of the agreement.  They then renewed the contract

25        knowing there was a conflict of interest, knowing they were
```

**Exhibit 13
-124-**

Case 8:20-cv-00048-JVS-JDE  Document 65-13  Filed 06/29/20  Page 6 of 37  Page ID #:5306
Case 3:13-cv-04519-WHA  Document 46  Filed 03/07/14  Page 5 of 36

5

```
 1        competing with us, knowing they were having access to our trade

 2        secrets.

 3            Your Honor, I believe that has created a special situation

 4        here where a material fact was not disclosed to us at the time

 5        of the renewal, that they had a competing business which was,

 6        in fact, a breach, that they were, in fact, breaching the

 7        confidentiality agreement.

 8                THE COURT:  What do you say to the code section on

 9        the trade secrets law in California, 2019.210?  Have you filed

10        under seal the specification in detail of what these trade

11        secrets were?

12                MR. TERRY:  Not at this time, your Honor, but we're

13        willing to do so.  This is a point in the case where we had

14        approached the Court to have the amended complaint -- request

15        the Court to allow for the amended complaint.

16                THE COURT:  All right.  Let's hear from the other

17        side.

18            Go ahead.

19                MR. DHARNIDHARKA:  Thank you, your Honor.

20            I think it was very wise in the January 9th order to not

21        just grant leave to amend but to make the plaintiffs explain in

22        a motion for leave under Rule 15 why they thought they could do

23        so, and what you've just heard plaintiff's counsel talk about

24        is an extensive breach of contract, and that's one of the two

25        claims that survived.
```

**Exhibit 13**
**-125-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 7 of 37   Page ID
#:5307
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 6 of 36

6

```
 1         The problem you noted in your January 9th order and the

 2    problem we still have today is they're trying to take that

 3    breach of contract and extend it out into a bunch of other

 4    claims.  So I think what happened is they got an opposition

 5    brief, and it said a couple things.

 6         Everything that you're now trying to throw out there as a

 7    trade secret is on your website.  You're saying your trade

 8    secrets are your training manuals.  Well, you've got training

 9    manuals and training videos on your website.  You're saying

10    your pricing is a trade secret.  Well, your trade -- your

11    pricing is attached.

12              THE COURT:  Let me pause there.

13         Let me ask Counsel:  In the rule as you know -- I want you

14    to tell me the truth here -- do you have any trade secrets that

15    are alleged that happen to be on the website?

16              MR. TERRY:  We believe we do, your Honor.  We have

17    know-how.  We have --

18              THE COURT:  Well, how in the world can you claim

19    trade secret for something that's on your website?

20              MR. DHARNIDHARKA:  That's exactly our point.

21              THE COURT:  Wait, wait, wait.

22              MR. TERRY:  Well, not all of our materials are on the

23    website, your Honor --

24              THE COURT:  Well --

25              MR. TERRY:  -- obviously.
```

**Exhibit 13**
**-126-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 8 of 37   Page ID #:5308
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 7 of 36

7

```
 1              THE COURT:  -- if there's -- let's say you're

 2     claiming ten things and six of them are on the website and four

 3     are not.  The six that are on your website go -- go away.  They

 4     cannot be a trade secret.

 5              MR. TERRY:  It's my client's position, your Honor,

 6     that 10 to 20 percent of our training materials are on the

 7     website.  There's other things that we do with the customers

 8     and clients that are not on the website.

 9              THE COURT:  You've got to be -- you know -- okay.

10              MR. TERRY:  Well, this was a fact brought into

11     evidence by the defendants in their opposition, your Honor.  We

12     haven't had a chance to address the facts.

13              THE COURT:  All right.  All right.  Okay.  So he's --

14     what he's saying over there is that when -- if he gets to do

15     his specification, he will identify things that are not on the

16     website.  I think that's the best reading of what Counsel is

17     saying.

18          So what do you say to that?

19              MR. DHARNIDHARKA:  What I say to that is they've

20     asked for leave to amend, and you hit on the Rule 11

21     dealings --

22              THE COURT:  Well, he can't -- he can't plead in open

23     court the -- the trade secrets.  Then they would be out.  You

24     would be claiming he's now waived it.  So --

25              MR. DHARNIDHARKA:  Sure.
```

**Exhibit 13**
**-127-**

```
 1            THE COURT:  -- he has to be somewhat vague.

 2            MR. DHARNIDHARKA:  Well, I guess the solution, then,

 3    would be to give another chance to seek leave to amend.

 4            THE COURT:  No.  No.  We can just do one of those --

 5    those specifications.  What's wrong with that?

 6            MR. DHARNIDHARKA:  Yeah.  If he can actually allege a

 7    trade secret in good faith after doing his Rule 11 homework and

 8    it's something that's not on the websites, something they

 9    haven't publically disclosed somewhere else, then yes, he could

10    plead a trade secret.

11            THE COURT:  All right.  I've got a plan for this

12    part.

13        Okay.  What else would you like to say?

14            MR. DHARNIDHARKA:  I want to clarify one point, too,

15    because they're also in the reply brief claiming the trade

16    secret includes the copyright or the software, and they said in

17    your January 9th order, "Only bar the trade secret because the

18    copyright is a public disclosure."

19        Your order went much further.  It also said, "Any trade

20    secret based on the software is preempted," and you went into

21    detail.  You went into two pages of detail in your order, and

22    it's absolutely right.  Whether the trade secret is barred on

23    the software because it's publically disclosed is one thing.

24    If the trade secret is preempted under the Copyright Act of

25    Section 301, that's another thing, and that's what you have
```

**Exhibit 13**
**-128-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 10 of 37   Page ID
#:5310
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 9 of 36

9

1    ruled.

2        So in the reply brief, they try to unring the bell on your

3    January 9th order.

4            THE COURT:  And you're saying that I went so far as

5    to say anything that's expressed in the code --

6            MR. TERRY:  Your Honor --

7            THE COURT:  -- cannot be a trade secret?  Is that

8    what I said?

9            MR. DHARNIDHARKA:  As pled, they can't -- the way

10   they --

11           MR. TERRY:  That's not in your order.

12           THE COURT:  Wait, wait, wait.

13           MR. DHARNIDHARKA:  The order is in my hand.  I'm

14   looking at it.

15           THE COURT:  All right.  Read me the part where I said

16   that.

17           MR. DHARNIDHARKA:  "Plaintiff's misappropriation of

18   trade secrets claim is based on the same nucleus of facts as

19   the copyright infringement claim."  That's Page 6, Line 18 and

20   19.  If you look at Page 7 of your order, Line 3 to 8, "Simply

21   referring to proprietary software applications, which serve as

22   the basis for plaintiff's copyright infringement claim, and

23   vague software code, methods and other trade secrets cannot

24   suffice.

25        "Indeed, plaintiff cannot show efforts to maintain privacy

Exhibit 13
-129-

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 11 of 37   Page ID
#:5311
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 10 of 36

10

```
 1      of the so-called trade secrets because it received copyrights

 2      for its software applications.  Plaintiff's misappropriation of

 3      trade secrets claim is thus preempted by the Copyright Act."

 4               THE COURT:  Well, that's not quite the same thing as

 5      saying --

 6               MR. DHARNIDHARKA:  As pled.

 7               THE COURT:  -- any -- I don't think I said anything

 8      expressed in code never can be a trade secret.

 9               MR. DHARNIDHARKA:  Sure, but as pled -- and that's

10      what we're dealing with, is how they've pled it.

11               MR. TERRY:  The cases are clear that code can be a

12      trade secret, and the order as far as we were concerned had to

13      do with the description of the software code as copyrighted.

14               THE COURT: All right. All right. Okay.  Well,

15      look, I've got a plan for your trade secrets part.

16          What else would you like to say?

17               MR. DHARNIDHARKA:  Absolutely.

18          On the breach of implied covenant, again, I think what

19      happened is they read our opposition brief, which cited the

20      alleged -- the contract that's alleged to have been breached.

21      In Section 15.1, it goes into detail about what this contract

22      is not, and it says in plain English, "This contract does not

23      create a fiduciary relationship."

24               THE COURT:  That's true.

25               MR. DHARNIDHARKA:  So in reply, they said, "Wait a
```

**Exhibit 13
-130-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 12 of 37   Page ID
#:5312
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 11 of 36

11

```
 1        minute.  That's not what we allege."  But if you look at the

 2        complaint, the very first sentence of Paragraph 50 says, "By

 3        entering and renewing the agreement, defendant created a

 4        fiduciary relationship."

 5                     MR. TERRY:  If I may interject, because that's a

 6        required duty of the implied covenant.  You have to have a

 7        contract.  That's all the complaint says.  The complaint

 8        doesn't --

 9                     THE COURT:  But your contract flat-out says it's not

10        -- it does not create a fiduciary duty.

11                     MR. TERRY:  Well, this is a tort which occurred

12        outside the contract, and I'll explain the --

13                     MR. DHARNIDHARKA:  Can I finish?

14                     THE COURT:  No.

15                     MR. TERRY:  Well, let me just make my point.

16                     THE COURT:  He gets to make his point first.

17                     MR. DHARNIDHARKA:  Thank you, your Honor.

18                     THE COURT:  Then you've got the floor.

19                     MR. TERRY:  In my papers, I've explained --

20                     MR. DHARNIDHARKA:  Sure.

21                     THE COURT:  Please don't interrupt.

22                     MR. TERRY:  I'm sorry.

23                     THE COURT:  Go ahead.

24                     MR. DHARNIDHARKA:  Okay.  So when the contract says

25        there's no fiduciary relationship, then you have to find a
```

Exhibit 13
-131-

Case 8:20-cv-00048-JVS-JDE  Document 65-13  Filed 06/29/20  Page 13 of 37  Page ID
#:5313
Case 3:13-cv-04519-WHA  Document 46  Filed 03/07/14  Page 12 of 36

12

```
 1      fiduciary relationship outside the contract, and the City of
 2      Hope case, which plaintiffs cite and which we explain, says,
 3      "Okay.  Fine.  Then the standard is unequal bargaining power,
 4      vulnerability, lack of sophistication."  And that's also what
 5      you said in your order, citing Pension Trust and Mitsui.
 6           So if you look at this case, there's no unequal bargaining
 7      power.  There's no difference between Jobscience and
 8      CVPartners, and as a matter of fact, the CEO of Jobscience, who
 9      signed the contract, is an attorney.  If you look at City of
10      Hope, it looks to these factors and says, "No fiduciary duty
11      outside the contract.  There's no unequal bargaining power.
12      There's no vulnerability.  There's no lack of sophistication."
13      That's what we have here.  So there's no extra contractual
14      fiduciary relationship.
15           They cite Think Village.  Think Village did not have the
16      same contractual waiver of a fiduciary relationship.  Think
17      Village found allegations of unequal bargaining power because
18      it was a little tiny shop going up against Adobe, and it also
19      found the negotiating parties didn't have the same level of
20      sophistication.
21           So the one case they tried to apply to say there's this
22      extra contractual fiduciary relationship is dead wrong, and
23      City of Hope and all the other cases we cited are dead right,
24      and they're consistent with your January 9th order.  So that's
25      my view on the implied covenant claim.
```

**Exhibit 13
-132-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 14 of 37   Page ID
#:5314
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 13 of 36

13

```
1          Constructive fraud is the next claim, and there's two ways

2     to even get the first element, is the special relationship.

3     It's either fiduciary duty, which they don't have, or a

4     confidential relationship, and what the defendants -- I'm

5     sorry.  What the plaintiffs rely on is this Dealertrack case,

6     and they literally block-quoted the entire section of the

7     opinion that even addressed constructive fraud, and it's got no

8     analysis.

9          THE COURT:  Well -- but there was a confidential

10    relationship here --

11         MR. DHARNIDHARKA:  Well --

12         THE COURT:  -- wasn't there?  I mean --

13         MR. DHARNIDHARKA:  Sure.

14         THE COURT:  -- that's what the purpose of the

15    contract was.

16         MR. DHARNIDHARKA:  A contractual confidential

17    relationship, but if you look at the law for a confidential

18    relationship for constructive fraud, it again talks about

19    vulnerability, but that's described as based on advanced age,

20    you know, extreme youth --

21         THE COURT:  Well, here -- tell me where I'm wrong on

22    this part because I'm not sure I agree with you on this.

23         MR. DHARNIDHARKA:  Okay.

24         THE COURT:  The purpose of this contract was to allow

25    Jobscience, the plaintiff, to reveal its innermost secrets to
```

**Exhibit 13
-133-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 15 of 37   Page ID #:5315
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 14 of 36

14

```
 1    the defendant.

 2         Okay.  That's what's alleged, and -- but at the very time

 3    that the contract was being drawn up, the defendants had a

 4    secret plan, it is alleged, to form a competing company and to

 5    use those secrets against the plaintiff.

 6         Let me stop here.  Is that what you allege?

 7              MR. TERRY:  That's correct, your Honor.

 8              THE COURT:  All right.

 9              MR. DHARNIDHARKA:  Yeah, and that --

10              THE COURT:  So -- wait, wait, wait.  So in order to

11    get at those trade secrets, you knowingly entered into a deal

12    you never intended to abide by, and you steal those trade

13    secrets -- alleged trade secrets -- or even if they're not,

14    whatever they give you, that's confidential.  They -- that you

15    steal it and go and form a competing company, and that was your

16    intent all along, and that's -- that's what's alleged.

17         Now, is it going to be true?  I don't know, but that's

18    what's alleged.

19              MR. DHARNIDHARKA:  True.

20              THE COURT:  And why -- to me all day long, that's got

21    to be some kind of a tort.

22              MR. DHARNIDHARKA:  Absolutely, and that's why --

23              THE COURT:  Why isn't it constructive fraud, then?

24              MR. DHARNIDHARKA:  Two reasons.  If you take the spin

25    that was just associated with the complaint and you call it a
```

Exhibit 13
-134-

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 16 of 37   Page ID
#:5316
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 15 of 36

15

```
 1    trade secret issue, it's preempted by the Trade Secret Act.  So

 2    if you find that the issue is arising in a trade secret, then

 3    you have trade secret.

 4              THE COURT:  What if it's not trade secret?  What if

 5    it's just confidential information that you didn't otherwise

 6    know?

 7              MR. DHARNIDHARKA:  Well, then it still would not be a

 8    constructive fraud claim.  It would be breach of contract, and

 9    that's what you have.  The difference is there's a very special

10    definition of this confidential relationship.

11              THE COURT:  Honestly, none of it has to be true.  It

12    can be a breach of contract, but if they're willing to prove

13    all this malicious intent up front that you knowingly did this,

14    you have fraudulent intent, you know --

15              MR. DHARNIDHARKA:  Sure.

16              THE COURT:  -- I think there are jury verdicts all

17    over California where companies who have actually done this

18    have been hammered big time, put out of business by a jury

19    verdict.  And, you know, if this is all true, it can happen

20    here.

21              MR. DHARNIDHARKA:  Well, I hear everything you're

22    saying, your Honor.  The element of constructive fraud is a

23    confidential relationship, and it's defined as being this

24    special relationship of inequality, vulnerability, superior

25    position --
```

**Exhibit 13
-135-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 17 of 37   Page ID
#:5317
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 16 of 36

16

```
1                  THE COURT:  No.

2                  MR. DHARNIDHARKA:  -- based on --

3                  THE COURT:  It doesn't have to be all those things.

4                  MR. DHARNIDHARKA:  That's what the case law says.

5                  THE COURT:  A fiduciary might be, but confidential to

6      me means that you've got this nondisclosure agreement, and the

7      only -- and the whole purpose is to keep it in confidence.

8                  MR. DHARNIDHARKA:  Sure.  I absolutely agree.

9                  THE COURT:  How else can we -- how else can we --

10     we'll give all those factors to the jury and let them decide.

11                 MR. DHARNIDHARKA:  There's about five or six cases

12     that we've cited that describe what this word means in the

13     context of --

14                 THE COURT:  All right.  Give me your best one, and

15     I'll read that one again.

16                 MR. DHARNIDHARKA:  Sure.  Portney.

17                 THE COURT:  Fortney?

18                 MR. DHARNIDHARKA:  Portney, P-o-r-t-n-e-y.

19                 THE COURT:  Portney?

20                 MR. DHARNIDHARKA:  Yeah.

21                 THE COURT:  Well, I guess I have to read that one.

22                 MR. DHARNIDHARKA:  I mean, they're all the same.

23                 THE COURT:  Portney.

24          All right.  Tell me what Portney says.

25                 MR. DHARNIDHARKA:  Portney says that in the context
```

Exhibit 13
-136-

Case 8:20-cv-00048-JVS-JDE  Document 65-13  Filed 06/29/20  Page 18 of 37  Page ID
#:5318
Case 3:13-cv-04519-WHA  Document 46  Filed 03/07/14  Page 17 of 36

17

```
 1        of constructive fraud, the required relationship is either

 2        fiduciary duty of this confidential relationship, meaning

 3        superior position, inequality, vulnerability based on advanced

 4        age, youth, lack of education, weakness of mind, grief,

 5        sickness, or some other incapacity.

 6            And the contracting party for the plaintiffs is their CEO,

 7        who's a licensed attorney.  So I don't think he is lacking in a

 8        superior position -- he's in an inferior position, unequal or

 9        vulnerable because of his age, youth, education, weakness of

10        mind, grief, sickness --

11                THE COURT:  Well, is it alleged in the complaint he

12        was a licensed attorney and all that, or is that just something

13        you're putting in outside the --

14                MR. DHARNIDHARKA:  Well, that's something I'm saying,

15        but it's also not alleged that he's old, young, lacks

16        education, weak mind, grief, sickness, or other incapacity.  So

17        those would be what you have to have alleged to make the

18        relationship --

19                THE COURT:  All right.  All right.

20                MR. DHARNIDHARKA:  -- under the law.

21                THE COURT:  Okay.  I need to give the other side a

22        moment, and then I'm going to tell you my plan.

23            Go ahead.

24                MR. DHARNIDHARKA:  Sure.

25                MR. TERRY:  Your Honor, I point you to the Martone
```

**Exhibit 13
-137-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 19 of 37   Page ID #:5319
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 18 of 36

18

1    case, which is cited in my papers, which --

2              THE COURT:  Say that -- Bartone?

3              MR. TERRY:  Martone, M-a-r-t-o-n-e.

4              THE COURT:  Okay.  I'll read that one too.

5              MR. TERRY:  Your Honor, I would just -- I'd like to

6    point out to the Court that I believe Counsel is mis- --

7    misapplying Portney here.  It had to do with a different set of

8    facts.  There is a confidential relationship basis for

9    constructive fraud which does not rely on all those factors he

10   just cited.  You can look at the Martone case.  It's on point.

11   It's, I believe, from this court.

12             THE COURT:  Was it my case?

13             MR. TERRY:  Not -- I'm sorry.  Not your case but from

14   the Northern District.

15             THE COURT:  Okay.

16             MR. DHARNIDHARKA:  It's a fraud case, not a

17   constructive fraud case.

18             THE COURT:  Uh, uh, uh, uh, uh.

19        Go ahead.

20             MR. DHARNIDHARKA:  I'm sorry.  I'm trying to save you

21   some work.

22             MR. TERRY:  In any event, your Honor, I think it's

23   more on point than Portney, and --

24             THE COURT:  I'm going to look at both of them.

25        Okay.  Anything more?

**Exhibit 13**
**-138-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 20 of 37   Page ID
#:5320
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 19 of 36

19

1           MR. TERRY:  I'd just like to point out, your Honor,

2     if you read the fact pattern here, I think you're definitely

3     correct.  There's definitely something wrong here.  If we look

4     at the facts, I think constructive fraud applies, I think fraud

5     applies, but at this time we've chosen the constructive fraud

6     claim.  But as a discovery procedure, your Honor, I believe we

7     would --

8           THE COURT:  Okay.

9           MR. TERRY:  -- possibly add additional claims.

10          THE COURT:  All right.  Here's the answer.  I don't

11    have any answer on some.  I'm going to have to read some of

12    those decisions on your other claims, but on the trade secrets

13    part, here's what's going to happen, and I'll explain it all

14    for you.

15        You don't even have to reach the question of whether or not

16    that 2019.2010 [sic] applies in Federal Court because I have

17    the authority to do that on my own motion under Rule 16, case

18    management, and I practiced for 25 years before I got this job.

19    I've seen it in a lot of cases as a judge for 15 years now.

20        It's the old trick of alleging trade secrets, getting into

21    the other side's files, and then miraculously finding things in

22    those files that you claim after the fact were trade secrets.

23    This pattern is exactly what led to that statute in California.

24    It's a very good proposition.

25        Now, on the plaintiff's side, you should know exactly what

Exhibit 13
-139-

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 21 of 37   Page ID
#:5321
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 20 of 36

20

1    your trade secrets are.  You don't need any discovery to find

2    out what your trade secrets are.  You ought to know what they

3    are right now.

4         So what we're going to do is I'm going to allow the trade

5    secrets claim but require the plaintiff to file under seal with

6    Counsel seeing it, attorney's eyes only, the specification as

7    required by state law, and if the defendant doesn't like the

8    way, you can bring a motion to knock it out and say it's not

9    specific enough and so forth.

10        No discovery by plaintiff at all.  Plaintiff can take zero

11   discovery until we get a proper trade secret statement on file.

12   On the other hand, the plaintiff -- the defendant can go right

13   ahead hucklety-buck with discovery.  You have brought this on

14   yourself by alleging trade secrets.  If you want to give up on

15   your trade secrets and go forward with the other discovery,

16   that's fine.  You can do that, but you have to give up all

17   trade secrets.  I'm not going to allow the plaintiff to take

18   any discovery until you get a proper statement on file.

19        Now, I'm also aware of one other old trick, and that is if

20   the defendant brings a motion to knock out the trade secrets

21   submission on some phony-baloney grounds in order to stonewall,

22   then I'm going to give the plaintiff extra time for discovery

23   and not give you any extra time for discovery.  So you ought to

24   be very careful not to bring such a motion unless you feel it's

25   going to win.  So that's what we're going to do on trade

**Exhibit 13
-140-

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 22 of 37   Page ID
#:5322
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 21 of 36

21

```
 1   secrets.

 2        So I don't know the answer to your other -- your other

 3   contentions yet.  I'm going to -- I'm going to give you

 4   until -- you ought to know what your trade secrets are.  So I'm

 5   going to give you -- I'll see what it is.  Let me look at the

 6   date.

 7        Looks like March 20th is when you have to file your

 8   statement.  You can file it sooner if you want, and then I'll

 9   give the other side seven calendar days after it's filed to

10   bring in any motion to challenge.  After -- on the eighth day,

11   the plaintiff can start taking discovery.

12        So do you understand that schedule?

13             MR. TERRY:  Yes, your Honor.

14             THE COURT:  So you can file your statement tomorrow

15   and get the clock running, but you'll want to file a good one,

16   and if it just is something vague like software, no, that's no

17   good.

18             MR. TERRY:  Yes, your Honor.

19             THE COURT:  You have to say, "The secret we had was

20   we've discovered a way to write the code that would speed up

21   the time to process by 50 percent with this elegant solution,

22   software solution, and here it is," and then you identify the

23   code.

24             MR. TERRY:  Understood.

25             THE COURT:  You can't just use blather.  It has to be
```

**Exhibit 13
-141-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 23 of 37   Page ID
#:5323
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 22 of 36

22

```
 1        specific.  If it's not specific, then they can bring motions.

 2        I'm going to grant those motions.  You will be just spinning

 3        your wheels while the discovery period runs out.

 4                    MR. TERRY:  Understood.

 5                    THE COURT:  All right.  So that's what we're going to

 6        do on the trade secrets thing.

 7                    MR. DHARNIDHARKA:  Can I make one clarification?

 8        Because the previous discovery order bifurcated discovery,

 9        though this is the second phase because we still haven't agreed

10        on a source code expert.  We're getting closer.

11                    THE COURT:  What did I do?  What -- what are you

12        saying I did?  I don't remember that.

13                    MR. DHARNIDHARKA:  At the January 9th CMC right after

14        the motion hearing --

15                    THE COURT:  Yeah.

16                    MR. DHARNIDHARKA:  -- you agreed that the first phase

17        should be doing the source code comparison.

18            All right.  We've been talking about a source code

19        comparison for years, and your Honor's position was that should

20        really streamline the case.

21                    THE COURT:  Has that been done yet?

22                    MR. DHARNIDHARKA:  We're still trying to work out --

23                    THE COURT:  This is -- this is the end of February.

24                    MR. DHARNIDHARKA:  Correct.

25                    THE COURT:  And I did that when?
```

Exhibit 13
-142-

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 24 of 37   Page ID #:5324
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 23 of 36

23

```
 1              MR. DHARNIDHARKA:  January 9th.

 2              THE COURT:  Well, that's seven or eight weeks ago.

 3              MR. DHARNIDHARKA:  Exactly.

 4              THE COURT:  You should have had it done by now.

 5              MR. DHARNIDHARKA:  I agree.

 6              MR. TERRY:  We're debating the expert that we'll use.

 7     The plaintiff is --

 8              THE COURT:  I'm going to -- okay.  I'm going to give

 9     you two more weeks to get that part done.  Then you can do

10     normal discovery after that except the plaintiff can't until we

11     get this trade secrets thing nailed down.

12              MR. DHARNIDHARKA:  Okay.  So --

13              MR. TERRY:  Can I just say one more thing?

14              MR. DHARNIDHARKA:  -- to be clear, can the defendants

15     serve any discovery related to the trade secrets now?

16              THE COURT:  Not now you can't.

17              MR. DHARNIDHARKA:  Okay.

18              THE COURT:  I guess if I did that phasing thing --

19              MR. DHARNIDHARKA:  Sure.

20              THE COURT:  -- you're -- you've got to wait two more

21     weeks.

22              MR. DHARNIDHARKA:  Okay.

23              THE COURT:  You two should hurry up and get that part

24     done.

25              MR. DHARNIDHARKA:  I agree.
```

**Exhibit 13
-143-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 25 of 37   Page ID #:5325
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 24 of 36

24

```
 1              THE COURT:  Otherwise, I'm just going to give up on

 2        that.

 3           Who talked me into that?

 4              MR. DHARNIDHARKA:  We asked for it, and we've been

 5        trying to get it, and we proposed an expert.

 6              THE COURT:  Well, I made a mistake probably on that.

 7        See, this always happens anytime you bifurcate discovery.  It

 8        sounds so good up front.  Then when you get into it, it's

 9        called Stonewall City, and somebody is goofing it up.  I don't

10        know who it is here, but it's not intended to move the case

11        along.  It's intended to slow things down.  So I should not

12        have gone along with that.

13           So I'm going to give you two more weeks to get that done.

14        If it's not done, then you can take normal discovery except for

15        the plaintiff until you get -- your hands are tied because you

16        want to allege trade secrets, and until you get that all sorted

17        out, no discovery for you.

18              MR. DHARNIDHARKA:  Thank you.

19              MR. TERRY:  Your Honor, can I point out one thing?

20        On the bifurcation, it was supposed to be the code comparison,

21        and then I asked for discovery of R&D related to creating that

22        code.  Your Honor approved --

23              THE COURT:  You don't need discovery.  You don't need

24        that to just do a straightforward comparison.

25              MR. TERRY:  Well, your Honor, the problem is we'll
```

**Exhibit 13
-144-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 26 of 37   Page ID #:5326
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 25 of 36

25

```
 1      have a piece of code that's been already developed, and you had

 2      agreed with me at the time at least that we should be able to

 3      look into how that was created, and I suggested a code log be

 4      produced, which is sort of a trial-and-error shoot.

 5              THE COURT:  Did I say that?  I don't remember.  Did I

 6      say that?

 7              MR. DHARNIDHARKA:  He proposed -- yeah -- a -- what's

 8      it called?  The code log.  We don't have the code log.

 9              MR. TERRY:  We requested a code log, but now they've

10      told us they don't have a code log.

11              MR. DHARNIDHARKA:  So we said, "We'll give you the

12      very first version and the current version," and we can --

13      we'll have a source code expert run it -- it's like a redline

14      -- to say either there's copy code or there's not, the very

15      first version and the last version.

16              THE COURT:  What's wrong with that?

17              MR. TERRY:  Well, that's not what I requested because

18      that just shows --

19              THE COURT:  That's what we're going to do because

20      this has turned into a nightmare.  Look, if they're using your

21      code, it ought to be on the code that's in use now, not on some

22      intermediate version.

23              MR. TERRY:  I think the -- the argument was --

24              THE COURT:  You've got a very -- you've got a very

25      attenuated trade secrets claim.  You'd have to resort to --
```

**Exhibit 13
-145-**

```
 1      somewhere in an intermediate version, you're going to find

 2      three lines of your code.  No jury is going to buy that.  Maybe

 3      they would.  Maybe you're good enough to persuade a jury, but

 4      that's a very weak case.  I thought you were saying that they

 5      were using wholesale your code now.

 6                  MR. TERRY:  That's what we've alleged, your Honor,

 7      that their -- when they formally produced their product on the

 8      -- in the marketplace, it was exactly the same as our product.

 9                  THE COURT:  Don't you have a copy of that?

10                  MR. TERRY:  We have -- we have screenshots and things

11      like that that we kept, but my point with the code log was if

12      you're developing code, clearly you must have spent some time

13      in designing that code and doing trial-and-error analysis, and

14      they don't have any of that, and they told us -- they told us

15      during that hearing they had a code log.

16                  THE COURT:  It could -- look, if it gets to the jury

17      as follows -- if it gets to the jury that "Look at this

18      screenshot.  It's identical to ours" -- is that what you're

19      telling me?

20                  MR. TERRY:  Yes.

21                  THE COURT:  Okay.  Identical.

22          Okay.  That's pretty good evidence for you, and you have an

23      expert probably say something like "Well, you can't get there

24      unless you've copied the code," and then the other side will be

25      stuck with "We don't have the" -- "we threw away the
```

**Exhibit 13
-146-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 28 of 37   Page ID
#:5328
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 27 of 36

27

```
 1          intermediate version."  Well, that looks like throwing away the

 2          work papers by an accountant or CPA firm.  That will be pretty

 3          good evidence for you.

 4               Is that -- does that -- does that --

 5                    MR. TERRY:  Your Honor --

 6                    MR. DHARNIDHARKA:  Absolutely.

 7                    THE COURT:  You're telling me -- wait, wait, wait.

 8          Is the defense telling me that the intermediate versions have

 9          been destroyed?

10                    MR. DHARNIDHARKA:  Not at all.

11                    THE COURT:  Where are they?

12                    MR. DHARNIDHARKA:  I mean, he can have every single

13          version.  The thing is there's a specific thing.  It's either

14          called a code log or source code repository.

15                    THE COURT:  Just give him every single version that

16          you have.

17                    MR. DHARNIDHARKA:  Happy to do so.

18                    THE COURT:  All right.  Give him every single

19          version.  He can do his own code log.

20                    MR. DHARNIDHARKA:  Absolutely.

21                    THE COURT:  If it's in there somewhere, you'll find

22          it.

23                    MR. DHARNIDHARKA:  And what we want to do --

24                    MR. TERRY:  All right.

25                    MR. DHARNIDHARKA:  -- with Phase -- with the
```

**Exhibit 13
-147-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 29 of 37   Page ID #:5329
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 28 of 36

28

```
 1     bifurcation -- we just want to have a source code comparison.

 2     It's basically a redline that runs the very first version and

 3     the current version to show there's absolutely no copy.  That's

 4     what we've been proposing for two years.  That's what we want

 5     to get done.

 6               THE COURT:  Why don't you get every version you have.

 7     You don't have to do some log.  He can do his own log.

 8               MR. DHARNIDHARKA:  Absolutely.  That's fine.

 9               THE COURT:  All right.  So turn over every single

10     version.  What you're telling me is he's going to crank it

11     through the machine, and the machine is going to say there's no

12     copying.  Is that your version?  Is that true?

13               MR. DHARNIDHARKA:  Absolutely.

14               THE COURT:  Well --

15               MR. TERRY:  Your Honor, how can a machine --

16               THE COURT:  So how are you going to get around that

17     then?

18               MR. TERRY:  Well, when we had this discussion --

19               THE COURT:  I don't care about a prior discussion.  I

20     don't remember.  I'm telling you the log has been -- has turned

21     out to be a bugaboo, and we're not -- it's stopping the

22     progress of the case.  You can do your own log.  He's going to

23     turn over every single version, intermediate, first, last.

24               MR. TERRY:  Okay.

25               THE COURT:  You ought to be thrilled.
```

**Exhibit 13
-148-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 30 of 37   Page ID
#:5330
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 29 of 36

29

```
 1                 MR. DHARNIDHARKA:  I don't think he's going to want

 2    that.

 3                 MR. TERRY:  I haven't seen it yet, but the other

 4    thing is they have -- what did you call it? -- an audit --

 5    there's an audit log.

 6                 MR. DHARNIDHARKA:  No.  We don't have an audit log.

 7    A third party has a log that they can get by subpoena or

 8    whatever.  We're trying to give them whatever they want.

 9                 THE COURT:  You want him --

10                 MR. TERRY:  This is something --

11                 THE COURT:  -- to do all of your homework --

12                 MR. DHARNIDHARKA:  Exactly.  Exactly.

13                 THE COURT:  -- pay for all of your homework and do

14    your case on the cheap while making them -- there's no way

15    we're going to do that.

16                 MR. TERRY:  Your Honor --

17                 THE COURT:  Go subpoena those people if you want to

18    take -- if you want to try to get that.

19                 MR. TERRY:  We will, but, your Honor, now it's

20    contrary to your order earlier.  So I'm just trying to --

21                 THE COURT:  I'm not changing any order.  Now I

22    understand it better.  He's going to turn over every single

23    version; right?

24                 MR. DHARNIDHARKA:  If he wants every version, I'm

25    happy to.
```

Exhibit 13
-149-

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 31 of 37   Page ID
#:5331
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 30 of 36

30

```
 1                THE COURT:  No.  No.  He wants every version; right?

 2                MR. DHARNIDHARKA:  You want every version?

 3                MR. TERRY:  I would like to see every version, yes.

 4                THE COURT:  All right.  So then turn over every

 5     version.

 6                MR. DHARNIDHARKA:  And the source code comparison --

 7                THE COURT:  Can you do that by Monday?  Do that by

 8     Monday?

 9                MR. DHARNIDHARKA:  Is that physically possible?

10                MS. MCCRIMMON:  I'd have to check with our clients

11     and see if it's physically possible.

12                THE COURT:  Well, I want it -- it's got to all be

13     done within two weeks.

14                MR. TERRY:  Your Honor, this happened last time we

15     were here.  They said, "We had a code log."  I agreed to that.

16     Now they have to check with their clients again.  I'd like to

17     get some clarity on what their obligations are.  We haven't

18     been able --

19                THE COURT:  They're obligated -- I'm ordering the

20     following:

21         Within seven calendar days, you turn over every single

22     version of the code.

23                MR. DHARNIDHARKA:  Sure.

24         Now, the --

25                THE COURT:  Do you understand that?
```

Exhibit 13
-150-

1     MR. DHARNIDHARKA:  Attorney's eyes only?

2          THE COURT:  Attorney's eyes only.  Their expert can

3     see it --

4          MR. DHARNIDHARKA:  Yeah.

5          THE COURT:  -- because these experts have got to

6     crank it through the machine to see if it's copied.  Seven

7     calendar days.

8          MR. DHARNIDHARKA:  And to be fair, we did agree to do

9     -- it's a joint expert.  So the expert can take our code, take

10    their code.  So one person gets the code.

11         THE COURT:  Have you agreed on an expert?

12         MR. TERRY:  We have a fundamental difference of

13    opinion.  We believe the expert needs to have experience in the

14    code.

15         THE COURT:  You're going to let his -- he gets to

16    choose the expert.

17         MR. DHARNIDHARKA:  And he's paying for it?

18         THE COURT:  He's paying for it.

19         MR. DHARNIDHARKA:  All right.

20         MR. TERRY:  We had agreed to split the cost.

21         THE COURT:  No.

22         MR. DHARNIDHARKA:  Nope.  That's what you had asked

23    for.

24         THE COURT:  Come on.

25         MR. TERRY:  Fine.

**Exhibit 13**
**-151-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 33 of 37   Page ID
#:5333
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 32 of 36

32

```
 1               THE COURT:  You're the plaintiff.  You're trying to

 2      do this case on the cheap.  Come on.

 3               MR. DHARNIDHARKA:  And this is a source code

 4      comparison actually.  They're going to try to change this into

 5      some expert of some other thing.  It's a code comparison.  I

 6      just want to be clear.  It's a code comparison.  Look at our

 7      code.  Look at our code.  It's the same one.

 8               THE COURT:  There's software out there that can crank

 9      it through --

10               MR. DHARNIDHARKA:  Exactly.

11               THE COURT:  You can put them in a -- in a -- the, you

12      know, electronic form.  Is that the way you want it, electronic

13      form?

14               MR. TERRY:  Yes, I believe so.  I mean, the code

15      should be read through the programs that these experts use.

16               THE COURT:  Correct.

17          And so you give it to them in electronic form within seven

18      calendar days.  They're going to crank it through --

19               MR. DHARNIDHARKA:  Yeah.  It's called CodeSuite.

20      That's the actual software that does the comparison.

21               THE COURT:  Yeah.  So give it to him in a form that

22      can be read by the machine.

23               MR. DHARNIDHARKA:  Yep.

24               THE COURT:  And now are you going to be greatly

25      disappointed if it turns out that they are right because
```

**Exhibit 13**
**-152-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 34 of 37   Page ID #:5334
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 33 of 36

33

1      there's no copying?

2                  MR. DHARNIDHARKA:  Absolutely not.

3                  THE COURT:  What do you want to do?

4          I want you to send me, by the way, the people's report

5      telling me what came out of this.

6                  MR. DHARNIDHARKA:  Certainly.

7                  MR. TERRY:  My concern -- or my client's concern is

8      if the code comes back and it's different in some fundamental

9      way -- they use developers offshore.  They could have taken our

10     code.  They could have tweaked it a little bit.  Now it's not

11     exactly the same.

12                 THE COURT:  This is a grassy knoll here.  This is a

13     grassy knoll.

14                 MR. TERRY:  Well --

15                 THE COURT:  This is a grassy knoll.

16                 MR. DHARNIDHARKA:  And then they still copyright.

17                 THE COURT:  They're out standing behind the wood

18     picket fence on the grassy knoll, shot the rifle, you know --

19     okay.  That's your client's concern?  Prove it.

20                 MR. TERRY:  Well --

21                 THE COURT:  Prove it.

22                 MR. TERRY:  -- that's --

23                 THE COURT:  Go prove it.

24                 MR. TERRY:  We need to do discovery to at least

25     understand --

**Exhibit 13**
**-153-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 35 of 37   Page ID
#:5335
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 34 of 36

34

```
 1                THE COURT:  Well, do a trade secret -- whenever we
 2      get the trade secrets parts down, we'll let you go forward.
 3      You might only have a few weeks left on discovery, but that's
 4      up to you.  You're the one that wanted to claim the things on
 5      the website as a trade secret.
 6                MR. TERRY:  Okay.  Well, we're happy to do the code
 7      comparison and proceed as your Honor has ordered.
 8                THE COURT:  I would like for you when it's done to
 9      send me a letter.  It could be under seal.  Give it to the
10      other side.  I want to know if there was any hits that shows
11      copying.
12          You've done the comparison?  Is that what you're telling
13      me?
14                MR. DHARNIDHARKA:  I can't.  I don't have their code.
15      I don't want their code.
16                THE COURT:  Okay.
17                MR. DHARNIDHARKA:  That's why we use an expert, but
18      we've been offering this code comparison for two years, and
19      we're happy and thrilled to hear that it's finally going to
20      happen.
21          I have nothing else that you --
22                THE COURT:  All right.  Maybe there will be some --
23      maybe you'll find something there.
24          All right.  I will get out an order where we'll have a case
25      management in place and go forward with it.
```

**Exhibit 13**
**-154-**

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 36 of 37   Page ID #:5336
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 35 of 36

35

1          Thank you.

2               MR. DHARNIDHARKA:  Thank you, your Honor.

3               MR. TERRY:  Thank you, your Honor.

4               MS. MCCRIMMON:  Thank you.

5          (At 8:45 a.m. the proceedings were adjourned.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 13
-155-

Case 8:20-cv-00048-JVS-JDE   Document 65-13   Filed 06/29/20   Page 37 of 37   Page ID #:5337
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 36 of 36

36

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4

 5        I, James C. Pence, Federal Official Realtime Court

 6   Reporter, in and for the United States District Court for the

 7   Northern District of California, do hereby certify that

 8   pursuant to Section 753, Title 28, United States Code that the

 9   foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14                        Dated this 7th day of March, 2014.

15

16

17        _____

18        JAMES C. PENCE, RMR, CRR, CSR NO. 13059
          FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25
```

Exhibit 13
-156-