JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION FOR PARTIAL RECONSIDERATION OF PROTECTIVE ORDER (DKT. NO. 67)**<br><br>**Hearing**<br><br>Date:         August 6, 2020<br>Time:         10:00 a.m.<br>Courtroom:  6A<br>Judge:        Hon. John D. Early |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND .................................................................................................. 3

III. STANDARD OF REVIEW .................................................................................. 3

IV. ARGUMENT ....................................................................................................... 4

    A. Disclosure of Plaintiffs' Section 2019.210 Statement to a Limited Number of Apple's In-House Counsel (Section 9.3) .................................. 4

    B. Inclusion of an Acquisition Bar (Section 10) ............................................. 7

V. CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*,
   2011 WL 197811 (N.D. Cal. Jan. 20, 2011)..................................................................8

*Blackbird Tech LCC v. Serv. Lighting & Elec. Supplies, Inc.*,
   2016 WL 2904592 (D. Del. May 18, 2016) ................................................................10

*Bladeroom Grp. Ltd., v. Facebook, Inc.*,
   No. CV-15-01370-EJD (N.D. Cal. Aug. 3, 2015).........................................................5

*Brown Bag Software v. Symantec Corp.*,
   960 F.2d 1465 (9th Cir. 1992) ......................................................................................5

*Catch A Wave Techs., Inc. v. Sirius XM Radio, Inc.*,
   2013 WL 9868422 (N.D. Cal. Aug. 6, 2013).........................................................9, 10

*In re Deutsche Bank Tr. Co. Ams.*,
   605 F.3d 1373 (Fed. Cir. 2010) ....................................................................................9

*E-Contact Techs., LLC v. Apple, Inc.*,
   2012 WL 11924448 (E.D. Tex. June 19, 2012) ......................................................9, 10

*EPL Holdings, LLC v. Apple Inc.*,
   2013 WL 2181584 (N.D. Cal. May 20, 2013)........................................................9, 10

*FTC v. Exxon Corp.*,
   636 F.2d 1336 (D.C. Cir. 1980)....................................................................................9

*Intellectual Ventures I LLC v. Altera Corp.*,
   No. 10-CV-00065 (D. Del. Aug. 1, 2012)..................................................................10

*Intellectual Ventures I, LLC v. Lenovo Group Ltd.*,
   2019 WL 343242 (D. Mass. Jan. 25, 2019)................................................................10

*Inventor Holdings, LLC v. Google, Inc.*,
   2014 WL 4369504 (D. Del. Aug. 27, 2014)...............................................................10

*Mastronardi Int'l Ltd. v. SunSelect*,
   2019 WL 3996608 (E.D. Cal. Aug. 23, 2019) .............................................................5

*MMCA Grp., Ltd. v. Hewlett-Packard Co.*,
  2009 WL 595537 (N.D. Cal. Mar. 5, 2009) ............................................................... 5

*Realtime Adaptive Streaming LLC v. Google LLC*,
  No. 18-CV-03629 (C.D. Cal. July 18, 2019) ........................................................... 10

*Smith v. Massachusetts*,
  543 U.S. 462 (2005) .................................................................................................. 3

*Telebuyer, LLC v. Amazon.com, Inc.*,
  2014 WL 5804334 (W.D. Wash. July 7, 2014) .................................................. 8, 10

*U.S. Steel Corp. v. United States*,
  730 F.2d 1465 (Fed. Cir. 1984) ................................................................................ 5

*Uniloc USA, Inc. v. Apple Inc.*,
  No. 18-CV-00572 (N.D. Cal. July 2, 2018) ............................................................ 10

*Univ. of Va. Patent Found. v. Gen. Elec. Co.*,
  No. 14-CV-00051 (W.D. Va. June 11, 2015) .......................................................... 10

*Unwired Planet LLC v. Apple Inc.*,
  2013 WL 1501489 (D. Nev. Apr. 11, 2013) ........................................................... 10

*Waymo LLC v. Uber Techs., Inc.*,
  No. C 17-00939 WHA (N.D. Cal. March 16, 2017) ................................................ 5

**Rules**

Fed. R. Civ. Proc. 54(b) .................................................................................................. 3

Local Rule 7-18(c) .......................................................................................................... 1

# I. INTRODUCTION

Apple requests that the Court reconsider and amend two provisions of the Protective Order: (1) Section 9.3, to permit the disclosure of Plaintiffs' Section 2019.210 statement to a limited number of Apple's in-house counsel; and (2) Section 10, to include an acquisition bar.

Apple proposed both of these provisions in its draft protective order submitted on June 26, 2020 (Dkt. No. 61-5, Ex. A), and explained its reasoning in the parties' Joint Stipulation filed the same day (Dkt. No. 61-1, at 47-49, 59-62). The Court entered a Protective Order without either provision on June 30, 2020 (Dkt. No. 67). But the Court did not explain its reasons for denying Apple's request to include these provisions.[1] Apple submits that in the absence of any order or explanation suggesting otherwise, it appears that the Court manifestly failed to consider material facts presented by Apple before entering the Protective Order. *See* Local Rule 7-18(c). The Court should reconsider its Order on both issues accordingly.

With respect to Section 9.3, Apple sought access for three of its in-house counsel to the Section 2019.210 statement that Plaintiffs promised to produce in the case.[2] Protective order provisions that permit a limited number of in-house counsel access to highly confidential information, including Section 2019.210 disclosures, are common in trade secret actions throughout this Circuit because, without them, it is next to impossible for a corporate trade secret defendant to mount a defense. *See* Dkt. No. 61-1, at 48-49 (citing numerous exemplar cases). Such a provision is particularly warranted here, because Apple's in-house counsel plays a key role in the collection and production

---

[1] The Court entered the Protective Order without a corresponding decision—and therefore denied, without explanation, additional protective order provisions requested by the parties. This Motion is limited to Apple's Sections 9.3 and 10 proposals.

[2] Plaintiffs' first amended trade secret misappropriation claim was dismissed with leave to replead on June 25, 2020 (Dkt. No. 60), but Plaintiffs have confirmed that they intend to replead the claim. *See* Dkt. No. 68 (Plaintiffs agreeing to schedule for motion to dismiss its soon-to-be repleaded trade secret misappropriation claim). Thus, Plaintiffs will be required to serve the subject Section 2019.210 disclosure. *See* Dkt. No. 37 (staying trade secret discovery pending compliance with 2019.210).

of documents responsive to Plaintiffs' requests, and because if there is a legitimate trade secret claim (which there does not appear to be), Apple's in-house counsel needs to know the identity of the trade secrets to aid in the defense of the claim and to excise the trade secrets. Apple's in-house counsel cannot form their own conclusions, or make independent decisions, as to Plaintiffs' trade secret claim without access to a particularized description of the alleged trade secrets at issue in this case. Apple therefore submits that in issuing a Protective Order without Apple's proposed Section 2019.210 provision, the Court failed to consider material facts that will hinder Apple's ability to defend—and potentially resolve—the trade secret misappropriation claim in this case.

With respect to Section 10, Apple requested a patent acquisition bar for the same reasons that the parties agreed warrant a patent prosecution bar. The Court denied Apple's request without explanation and, in doing so, appears to have failed to consider the risks of inadvertent disclosure and competitive misuse previously articulated by Apple throughout its portion of the Joint Stipulation (Dkt. No. 61-1, at 47-49)—particularly by these Plaintiffs who are highly litigious and have shown time and again that they are willing to sue companies they view as a threat to their business. Apple respectfully submits that in a case like this one—where the parties and the Court agree that a patent prosecution bar is necessary—it makes perfect sense to likewise put in place a patent acquisition bar that prohibits Plaintiffs' counsel who actually review Apple's sensitive technical material from participating in patent acquisitions relating to that material's subject matter until two years after the case ends. Indeed, Plaintiffs failed to present any facts that weigh in favor of the alternative result adopted by this Court.

Apple respectfully submits that without these proposed Sections 9.3 and 10 provisions, Apple's ability to defend itself in this litigation will be significantly impaired, and its sensitive, technical information will be at an unacceptably high risk of inadvertent disclosure and competitive misuse. The Court should reconsider Sections 9.3 and 10, and enter an amended Protective Order containing Apple's proposals on

these two issues.

## II. BACKGROUND

Recognizing that this litigation will involve some of Apple's most valuable and highly confidential information, for over three months Apple diligently negotiated the terms of a protective order with Plaintiffs. Apple sought the protections that it reasonably believes it needs to defend itself against Plaintiffs' asserted patent and trade secret claims, and to protect its sensitive and confidential information and trade secrets in the process. Despite Apple's best efforts, the parties arrived at an impasse on several issues. The parties briefed those issues to the Court in a Joint Stipulation filed on June 26, 2020. Apple appended to that Joint Stipulation its proposed protective order; Plaintiffs did the same with their proposed protective order.

On June 30, 2020, the Court entered the Protective Order. Dkt. No. 67. The Protective Order adopts certain of Apple's proposed provisions, while rejecting others in favor of Plaintiffs' proffered provisions. The Protective Order was not accompanied by a written memorandum or decision. Apple therefore has no insight into the Court's reasons for rejecting certain of Apple's proposed protective order provisions— including, of relevance to this Motion, the Section 2019.210 language Apple proposed for Section 9.3 and the acquisition bar Apple proposed for Section 10.

## III. STANDARD OF REVIEW

"A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment." *Smith v. Massachusetts*, 543 U.S. 462, 475 (2005); Fed. R. Civ. P. 54(b) ("[A]ny order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a [final] judgment."). Local Rule 7-18 provides that a motion for reconsideration may be filed on the following grounds: "(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts

or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." Local R. 7-18. This Motion is brought under subsection (c) of Local Rule 7-18.

## IV. ARGUMENT

### A. Disclosure of Plaintiffs' Section 2019.210 Statement to a Limited Number of Apple's In-House Counsel (Section 9.3)

Apple sought access for three of its in-house counsel to Plaintiffs' Section 2019.210 disclosure given the integral role Apple's in-house counsel plays in defending cases like this one. Far from identifying their trade secrets with reasonable particularity more than six months into this case, Plaintiffs have yet to even adequately plead those purported trade secrets under Federal Rule of Civil Procedure 8. *See* Dkt. No. 60, at 6-8. As a result, Apple does not know what trade secrets Plaintiffs believe Apple misappropriated or where the alleged trade secrets could be found. Apple therefore cannot identify or return any alleged trade secret information. This situation is untenable and unfair now, but it will be even worse if Apple's in-house counsel cannot access the Section 2019.210 disclosure when Plaintiffs finally produce one. At that point, Plaintiffs will be able to demand trade secret-related discovery, but Apple's in-house counsel will have no ability to provide direction or input on discovery responses or documents. Nor will Apple's in-house counsel be able to form any independent conclusions as to the merits of the trade secret claim—certainly not as to any possibility of its resolution. Apple therefore respectfully submits that the Court failed to consider the negative impact that will result on this litigation—including its potential resolution—if only the Court and Apple's outside counsel have access to a particularized description of the alleged trade secrets at issue.

In determining whether in-house counsel should be permitted to view the opposing party's trade secrets, the Ninth Circuit has advised courts to balance the risk to the producing party of inadvertent disclosure of its trade secrets to competitors against the risk to the receiving party that protection of the trade secrets will impair the receiving

party's defense. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). A crucial inquiry is whether in-house counsel was involved in "competitive decisionmaking"—i.e., giving advice or participating in decisions about product design, pricing, and the like in light of similar or corresponding information about a competitor. *Id.* (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984)).

Against this backdrop, courts throughout this Circuit routinely permit a limited number of in-house counsel to access attorneys' eyes only information—including Section 2019.210 disclosures—in trade secret cases. *See, e.g.*, *Mastronardi Int'l Ltd. v. SunSelect*, 2019 WL 3996608, at *9 (E.D. Cal. Aug. 23, 2019) (permitting disclosure of attorneys' eyes only material to *any number of designated in-house counsel* who are not involved in competitive decision-making, to whom disclosure is reasonably necessary for the litigation, and who have agreed to be bound by the protective order); Transcript of Case Management Proceedings, *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA (N.D. Cal. March 16, 2017), ECF No. 63 (permitting disclosure of highly confidential materials to one in-house counsel upon his or her agreement to be bound by the protective order); Order at 10, *Bladeroom Grp. Ltd., v. Facebook, Inc.*, No. CV-15-01370-EJD (N.D. Cal. Aug. 3, 2015) ECF No. 54 (permitting disclosure of attorneys' eyes only material to two designated in-house counsel who have no involvement in competitive decision-making, to whom disclosure is reasonably necessary for the litigation, and who have agreed to be bound by the protective order); *MMCA Grp., Ltd. v. Hewlett-Packard Co.*, 2009 WL 595537, at *1 (N.D. Cal. Mar. 5, 2009) (granting two of defendants' in-house attorneys access to attorneys' eyes only material given small risk of disclosure where the "attorneys who would be given access to AEO materials would be litigation attorneys with no involvement" in defendants' business affairs). Apple is ready and willing to designate attorneys from its litigation group who are not competitive decision makers and who are willing to be bound by the Protective Order.

As Apple previously explained, disclosure to in-house counsel is essential in this case for the same reasons it was essential in the other cases in this Circuit where in-

house counsel have been permitted access to highly confidential information, including Section 2019.210 disclosures. *See* Dkt. No. 61-1, at 47-49. In particular, Apple's in-house counsel plays a key role in organizing document discovery in this case, and therefore needs to know the identity of the purported trade secrets so that it can manage the search for documents responsive to Plaintiffs' discovery requests and also prevent disclosure of *Apple's* trade secrets in the process. *Id.* at 48. This is not a case where outside counsel is—or could be—solely responsible for the collection and review of documents responsive to the opposing party's requests. Apple's in-house counsel is essential to the process, and will be unable to do their job with respect to the trade secret side of the case if they cannot learn what the alleged trade secrets are.

Moreover, Apple genuinely does not believe that it possesses any of Plaintiffs' trade secrets—nor does it want access to any of that information. Apple's in-house counsel needs to know what information Plaintiffs claim Apple misappropriated so that it can excise the information from Apple's products as soon as possible (to the extent the claim has merit) and mitigate damages consistent with its duty under the law. *Id.* Indeed, while Apple's outside counsel is capable of defending Apple against Plaintiffs' claim of trade secret misappropriation in the courtroom, Apple's outside counsel will be powerless when it comes to altering Plaintiffs' products and/or mitigating damages if they learn that Plaintiffs' alleged trade secrets are incorporated into Apple's products and cannot advise Apple of that fact. For these reasons, Apple submits that it is highly appropriate—and, indeed, necessary—for a limited number of its in-house counsel to be permitted access to the Section 2019.210 disclosure served in this action. It appears that in denying Apple's request for Section 2019.210 disclosure access, the Court failed to consider these material facts.

Importantly, granting Apple's in-house counsel the access it seeks would not impose any significant harm on Plaintiffs—and certainly not any harm that outweighs that which will result to Apple if its in-house counsel cannot even discern the purported trade secrets the company is alleged to have misappropriated. The risk of disclosure is

particularly minimal here where, by nature of their trade secret misappropriation claim, Plaintiffs have alleged that Apple *already has possession of their trade secrets*. If Plaintiffs' trade secret information is already in Apple's possession as Plaintiffs contend, Plaintiffs should have no qualms about sharing that information with the limited number of persons at Apple directly involved in the defense of this lawsuit. Moreover, the in-house counsel for whom Apple will seek access are not involved in competitive decision-making. Therefore, this case is akin to the *many* other cases throughout this Circuit where courts have found the risk of inadvertent disclosure outweighed by the need for effective legal decision making.

The balance of hardships favors Apple's position on this issue. The potential harm to Plaintiffs in disclosing their confidential information to an extremely limited number of Apple's in-house counsel is far outweighed by the impact the preclusion of such information will have on Apple's ability to defend this case. Apple's request for access for the three in-house counsel integrally involved in the defense of this action, who are not involved in competitive decision-making for the company, is reasonable under the standard set out in similar cases in this Circuit.[3] This Court should grant Apple's Motion for Reconsideration with respect to this issue, and modify Section 9.3 of the Protective Order accordingly.

**B.     Inclusion of an Acquisition Bar (Section 10)**

In addition to the patent prosecution bar that both parties agree is necessary in this case involving sensitive, technical information, Apple also sought an acquisition bar—to prohibit any of Plaintiffs' counsel who actually review Apple's sensitive, technical material from participating in patent acquisitions relating to that material's subject matter until two years after the case ends. *See* Dkt. No. 61-1, at 59-62. The current Protective Order gives opposing counsel who review Apple's sensitive, technical

---

[3] While Apple would prefer that access be granted to more than three of its in-house counsel, given the number of in-house counsel involved in this case, Apple narrowed its request to three in-house counsel in response to Plaintiffs' confidentiality concerns. At a minimum, Apple respectfully requests access for two of these in-house counsel.

material *carte blanche* to participate in patent acquisitions relating to that material's subject matter—even though this case necessarily will involve the production of some of Apple's most confidential and sensitive technical information that could be misused during the process of advising on an acquisition just as readily as it can be misused during patent prosecution. Apple submits that the Court failed to consider material facts demonstrating the high risks of inadvertent disclosure and competitive misuse in this case created by a Protective Order without an acquisition bar.

Plaintiffs seek access to Apple's highly confidential, sensitive, and valuable, source code. The disclosure of source code carries significant risks of inadvertent disclosure and competitive misuse. *See, e.g.*, *Telebuyer, LLC v. Amazon.com, Inc.*, 2014 WL 5804334, at *2 (W.D. Wash. July 7, 2014) (describing source code as "highly confidential, technical information" that poses a "heightened risk of inadvertent disclosure") (citation omitted); *Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*, 2011 WL 197811, at *2 (N.D. Cal. Jan. 20, 2011) ("confidential technical documents, including source code . . . may pose a heightened risk of inadvertent disclosure"). The concerns about the detrimental impact any inadvertent public disclosure of Apple's source code and technical documentation would have on Apple's business is particularly heightened here—where Plaintiffs are highly litigious companies that that have shown time and again that they are willing to sue companies they view as a threat to their business and who have been involved in numerous corporate acquisitions, including two announced just this year.

Given these facts, it is necessary to restrict Plaintiffs' counsel who review Apple's sensitive, technical information from later assisting Plaintiffs in the acquisition of patents covering the disclosed technology. The rationale for an acquisition bar of the type Apple seeks is well-established: "It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (alteration omitted) (quoting *FTC v. Exxon Corp.*, 636

F.2d 1336, 1350 (D.C. Cir. 1980)). Notwithstanding general provisions "specifying that designated confidential information may be used only for purposes of the current litigation," and notwithstanding the good faith of all individuals involved, courts recognize that "there may be circumstances in which even the most rigorous efforts . . . to preserve confidentiality . . . may not prevent inadvertent compromise." *Id.*; *see also Catch A Wave Techs., Inc. v. Sirius XM Radio, Inc.*, 2013 WL 9868422, at *1 (N.D. Cal. Aug. 6, 2013) ("The patent acquisition bar . . . adds an additional layer of protection by prohibiting not just disclosure and use, but also advising.").

Plaintiffs themselves recognized and endorsed these settled principles when they agreed to a prosecution bar nearly identical in scope to Apple's proposed acquisition bar. The justification underlying both provisions is identical: it will be difficult, if not impossible, for an individual who has seen Apple's highly confidential information (such as its source code and technical design documents) to segregate that information mentally when later advising on patent prosecution or acquisition related to that information. The risks of inadvertent disclosure and competitive misuse are the same with respect to both prosecution and acquisition:

> Counsel for Plaintiff has acquiesced to the imposition of a patent prosecution bar, and, therefore, apparently agrees that there could possibly be a risk of inadvertent disclosure of Defendants' confidential information in the course of representing their client before the PTO. Therefore, it is hard to conceive that there would be little or no risk of inadvertent disclosure when these same attorneys advise their client in matters regarding acquisitions of patents.

*E-Contact Techs., LLC v. Apple, Inc.*, 2012 WL 11924448, at *2 (E.D. Tex. June 19, 2012); *see also EPL Holdings, LLC v. Apple Inc.*, 2013 WL 2181584, at *4 (N.D. Cal. May 20, 2013) (explaining that patent acquisition and prosecution create the same risk of inadvertent use because "litigation counsel may consciously or subconsciously use their knowledge . . . to advise a client on which patents to acquire"). Far from novel, the

acquisition bar Apple requested—and that this Court denied without explanation—has been routinely granted by courts throughout the country in situations like this one.  *See, e.g.*, Order at 5, *Realtime Adaptive Streaming LLC v. Google LLC*, No. 18-CV-03629 (C.D. Cal. July 18, 2019), ECF No. 80; *Intellectual Ventures I, LLC v. Lenovo Group Ltd.*, 2019 WL 343242, at *4 (D. Mass. Jan. 25, 2019); Order at 3, *Uniloc USA, Inc. v. Apple Inc.*, No. 18-CV-00572 (N.D. Cal. July 2, 2018), ECF No. 107; Order at 10, *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, No. 14-CV-00051 (W.D. Va. June 11, 2015), ECF No. 61; *Telebuyer*, 2014 WL 5804334, at *7; *Inventor Holdings, LLC v. Google, Inc.*, 2014 WL 4369504, at *2 (D. Del. Aug. 27, 2014); *Catch A Wave Techs., Inc.*, 2013 WL 9868422, at *1; *EPL Holdings, LLC*, 2013 WL 2181584, at *5; *Unwired Planet LLC v. Apple Inc.*, 2013 WL 1501489, at *7 (D. Nev. Apr. 11, 2013); Transcript at 29:20-30:4, *Intellectual Ventures I LLC v. Altera Corp.*, No. 10-CV-00065 (D. Del. Aug. 1, 2012), ECF No. 145; *E-Contact Techs., LLC*, 2012 WL 11924448, at *2; *cf. Blackbird Tech LCC v. Serv. Lighting & Elec. Supplies, Inc.*, 2016 WL 2904592, at *6 (D. Del. May 18, 2016) (requiring covenant not to sue on patents acquired during duration of protective order).

It is undisputed that there is a significant risk of inadvertent disclosure by attorneys that review Apple's confidential, highly confidential and source code information in patent prosecution.  That same risk equally applies when the attorneys are involved in patent acquisitions.  The material fact that the risk is the same for patent prosecution and patent acquisition appears to have been overlooked by the Court because the acquisition bar was not included in the Protective Order.  Therefore, Apple requests reconsideration to include the patent acquisition bar to address this material fact.

## V.     CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court amend the Protective Order to (1) permit disclosure of Plaintiffs' Section 2019.210 disclosure to at least two of Apple's in-house counsel; and (2) include an acquisition bar preventing any of Plaintiffs' counsel who actually review Apple's sensitive technical material from

participating in patent acquisitions relating to that material's subject matter until two year after the case ends.

Dated: July 8, 2020

Respectfully submitted,

JOSHUA H. LERNER
H. MARK LYON
BRIAN M. BUROKER
BRIAN A. ROSENTHAL
ILISSA SAMPLIN
ANGELIQUE KAOUNIS
BRIAN K. ANDREA
GIBSON, DUNN & CRUTCHER LLP


By: */s/ Joshua H. Lerner*
Joshua H. Lerner

*Attorneys for Defendant Apple Inc.*