# EXHIBIT 1

## Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

MASIMO CORPORATION, et al., )
    Plaintiffs, )
vs. ) SACV-20-00048-JVS
APPLE, INC., )
    Defendant. )
-----------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

July 10, 2020

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA 92701
(714) 543-0870

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

## Page 2

APPEARANCES OF COUNSEL:

For the Plaintiffs:

JOSEPH R. RE
**STEPHEN JENSEN**
KNOBBE MARTENS
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404

For the Defendant:

H. MARK LYON
**JOSHUA LERNER**
BRIAN ROSENTHAL
GIBSON DUNN & CRUTCHER, LLP
1881 Page Mill Road
**Palo Alto, CA 93403-1211**
**(650) 849-5307**

**JOSHUA LERNER**
**GIBSON DUNN & CRUTCHER, LLP**
**555 Mission Street, Suite 3000**
**San Francisco, CA 94105-0921**
**(415) 393-8254**

BRIAN ROSENTHAL
**GIBSON DUNN & CRUTCHER, LLP**
**200 Park Avenue**
**New York, NY 10166-0193**
**(212) 351-2339**

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

## Page 3

SANTA ANA, CALIFORNIA; FRIDAY, JULY 10, 2020; 2:58 P.M.

(Per telephonic conference)

    THE CLERK: Calling Item No. 1, SACV-20-00048-JVS, Masimo Corporation versus Apple, Inc.

    Appearances on behalf of the plaintiff, please.

    MR. RE: Thank you. Good afternoon, Your Honor, this is Joseph Re of Knobbe Martens on behalf of Masimo Corporation, and with me is my partner Stephen Jensen.

    THE CLERK: And on behalf of the defendants, please.

    MR. LYON: Good afternoon, Your Honor. It's Mark Lyon on behalf of Apple, and with me is Joshua Lerner, and Brian Rosenthal.

    THE COURT: Good afternoon.

    Thank you for your joint report that you filed last week. Let me share my thoughts with you, and then I'd be happy to hear you.

    I believe it's fundamentally unfair to the parties and inefficient to require reduction of the number of claims for prior art references prior to the full disclosure of the infringement contentions and the invalidity contentions. Let me give you an example of the poker world. Suppose Masimo has a claim that it would evaluate as a for basis, but when Apple makes its invalidity disclosures, it comes up with prior art that would amount to Royal Fresh. It's

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

## Page 4

better for Masimo to designate a claim in light of prior art demonstrating it wasn't viable.

    So my thought is that the initial round of disclosures ought to come after the parties have made their invalidity disclosures and their prior art disclosures. The date for invalidity contentions is 9/7. What I would propose is that within two weeks of that date, the parties present me with a proposal for an initial reduction of claims and prior art references that would contemplate actual disclosure of those reductions within 30 days of the Court adopting a specific proposal. I would then contemplate that there would be a further reduction after the Markman hearing, and I would leave to your discretion the time for final disclosure as to what we go to trial on.

    I think that may require some adjustments to events leading to the Markman hearing. If the invalidity contentions come in on 9/7, the parties' exchange of proposed claim terms is 9/21. I don't think that gives you enough time to reflect on both sides' disclosures, come up with your proposal, and then for narrowing selections of claims and prior art references.

    So I think that the dates between the exchange of claim terms and the Markman hearing need to be adjusted to accommodate the disclosures pursuant to whatever proposal I adopt for the disclosures following the invalidity and the

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 1
Page 3

**Page 5**

infringement contentions and the Markman hearing. I'm not adverse to slipping the Markman hearing a month or six weeks if that makes sense. That's in February, and we don't have a trial date in 2021.

So those are my general thoughts. I'll be happy to hear you.

Let's begin with you, Mr. Re.

MR. RE: Thank you, Your Honor.

I think we're in complete agreement with everything you said. I do think there needs to be an exchange of information. I do want to alert the Court that we are planning on amending our pleading that's set forth in the Court's order regarding the Motion to Dismiss. In fact, we will be substituting out some patents, so there needs to be some more time for the parties to fully evaluate the claims.

And, yes, we have not yet received the other party's technical documents which were due back in June, and that we of course need before we do our contentions. But we agree with everything you said, and I think the parties will work it out and will come up with a proposal for this by September 21 as you indicated.

THE COURT: Mr. Lyon.

MR. LYON: Thank you, Your Honor.

Just a couple points. Let me just raise a

**Page 6**

concern, and you may have already considered this, but let me at least just throw it out there so that we can have a discussion if it's helpful. The one thing I would say with not putting in some kind of target limits at this point is that you end up with potentially hundreds of claims that both parties are going to be charting, that they're going to be discussing and potentially arguing over as far as what claim terms might be involved.

That is not a trivial aspect. I mean, that's something where some of these -- I'm sure you've seen them. Some of these claim charts can wind up being hundreds or thousands of pages long, which is a very significant effort to create, even if it is copying and pasting some of the information because these claims are so related, which still winds up that somebody has to sit down and analyze each individual claim to decide whether or not you can simply copy a paragraph from a different claim or not. You have to do that, and then that has to go through whatever levels of review with the client and with the firm to make sure that that's okay.

Then to the extent that there's any dispute about that, instead of having a single claim that the Court is worrying about, it may end up being 15 or 16 claims, which the Court would then have to do a similar review to make sure it all makes sense, and the same argument applies

**Page 7**

equally to each of those 15 or 16 claims.

So our view of this would be if we set some number, and it could be -- we don't think the numbers we picked are terrible, but if there's a higher number, we could talk about that. But pick some target numbers now so that we can get a bit more reign in on the case before we get into charting everything with the idea that if there's reasons to change these things down the road, that's something that can always be done in good cause.

But it really needs to be done at the stage of preparing it for Markman, and then have that kind of a target, sort of like page limits in the brief in a lot of ways. If you put these claims and limits on people, they'll make some hard choices that they otherwise wouldn't make or -- and that they probably should make, but because of the fact that they don't have to, everything just gets thrown in with the kitchen sink.

That's why we were suggesting trying to do something now. Then if we need to have some discussions about whether, you know, it's 50, 40, claims, whatever it is we pick -- maybe the plaintiffs need a little bit more than that, maybe another ten or so -- we could have those kinds of discussions and maybe stipulate to that at the beginning.

This is the first we've heard that they're planning on changing the patents again, so that's a little

**Page 8**

troubling because we are already very far into the case, and we're already trying to start gearing up for discovery on the patents that we have. But that may also throw a monkey wrench into not just this but to more parts of the case schedule if it changes substantially.

THE COURT: I appreciate the fact that at some point the parties will have to make hard choices. I believe they ought to be able to make fair hard choices. But if you want to have further discussions among yourselves and come to a consensus as to how to do some limits at this time, that's fine, but I'm not going to impose it.

What I'm going to order is that no later than 9/21 the parties will submit a joint proposal for the initial round of productions and the number of infringement contentions and prior art references, and a final proposal as to what we ought to do following the Markman hearing, and then what we ought to do as a final third stage in terms of what we're actually going to go to trial on.

MR. RE: T?hank you, Your Honor.

May I ask one more question about this, though, Your Honor? If we have currently set up infringement contentions due on July 27, which then triggers our invalidity contentions on September 7 to trigger off of those -- if the patents are going to be changing because of the new pleading, I guess I would want to know when is that

Exhibit 1
Page 4

## 9

```
03:07   1    going to happen, and are those target changes going to be
03:07   2    reflected in the infringement contentions we are going to
03:07   3    see in July, or is that going to be a completely separate
03:07   4    ball of wax that we have to deal with?
03:07   5             THE COURT:   Well, if Masimo changes the line of
03:07   6    both patents, I would reevaluate the dates for infringement
03:07   7    and invalidity contentions in light of that on a fairly
03:07   8    short ex-parte basis.
03:07   9             Let me circle back to one thing Mr. Re said.  I
03:07  10    don't think that Masimo should be required to make its
03:07  11    infringement contentions until you produce the core
03:08  12    technical information.  I understand that there is presently
03:08  13    in place a protective order to permit that, but to the
03:08  14    extent that production is made, these dates are just going
03:08  15    to drift out there and out there and out there.  And I would
03:08  16    be likely to entertain a motion made to me, not the
03:08  17    magistrate judge, with regard to patent production on the
03:08  18    core confidential information.
03:08  19             MR. LYON:   Your Honor, on that point -- this is
03:08  20    Mark Lyon again, Your Honor.  On that point, we did produce
03:08  21    nonconfidential technical documentation as part of the
03:08  22    schedule, and we're waiting on the protective order which
03:08  23    now is in place.  But as you may know, we filed an objection
03:08  24    to certain orders of Magistrate Early on the staging of
03:08  25    that, which we do hope to have -- because the issue, as you
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

## 10

```
03:08   1    may know, is that there needs to be a 2019 trade secret
03:08   2    statement in place before we can proceed on the trade secret
03:09   3    discovery.
03:09   4             The whole basis for that rule is to really avoid
03:09   5    the situation where plaintiffs get ahold of all these
03:09   6    technical documents and then can hunt and peck and kind of
03:09   7    try to come up with a list of trade secrets that they
03:09   8    otherwise really don't have but that they are trying to
03:09   9    create that way.  That is the whole purpose of being able to
03:09  10    have those trade secrets in before all that technical
03:09  11    information is out.
03:09  12             If that information is provided ahead of getting
03:09  13    those trade secrets, that bell can't be unrung.  That's one
03:09  14    concern, and we actually have that motion in place.  We
03:09  15    understood from yesterday that Masimo was asking us to
03:09  16    produce that information.  The first that they had come back
03:09  17    and talked to us was in an email yesterday asking for that
03:09  18    information immediately, knowing that we had these
03:09  19    objections out there.  We may need to actually file some
03:09  20    type of an ex-parte application, if necessary, to seek
03:09  21    relief on that so we can get that issue decided first, if
03:09  22    possible.
03:10  23             I don't know, Mr. Lerner, if you want to say
03:10  24    anything more on that.  Please feel free.
03:10  25             MR. LERNER:   First of all, thank you for having
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

## 11

```
03:10   1    this hearing by telephone, Your Honor.  We know during these
03:10   2    times it's busy, and we appreciate the opportunity to be
03:10   3    heard.
03:10   4             Second, I do not believe that anybody can dispute
03:10   5    the point that once these documents are out then you have
03:10   6    the issue that is raised by every case on point, which is,
03:10   7    one can make vague trade secret allegations and then claim
03:10   8    Apple's valuable confidential information based on years of
03:10   9    hard work on this product as their own.  That simply cannot
03:10  10    be undone once these documents are produced, and it leads to
03:10  11    all kinds of issues.
03:10  12             I think the two most relevant here are that what,
03:10  13    for example, do you do with the people that are going to
03:10  14    work on the trade secret disclosure when first Your Honor
03:11  15    did order compliance with Section 2019.210 many months ago?
03:11  16    What do you do with the lawyers who have seen our
03:11  17    confidential information, but also might want to work on
03:11  18    that disclosure, which does at some point obviously need to
03:11  19    be provided?  Our view, as we briefed, is that it should
03:11  20    have been provided a long time ago.
03:11  21             The other key policy matter here, I think, is that
03:11  22    we would not be having these discussions or these problems
03:11  23    if that disclosure had been provided, because I think the
03:11  24    most basic policy guidance behind the rule is it enables the
03:11  25    Court to determine the proper scope of discovery and whether
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

## 12

```
03:11   1    or not discovery requests fall within it.  That just can't
03:11   2    be done until they provide this document, which the parties
03:11   3    briefed before the scheduling order, which Your Honor then
03:12   4    ruled on.
03:12   5             So as Mr. Lyon says, if necessary -- in fact,
03:12   6    we're planning on it if necessary to raise it as quickly as
03:12   7    possible now, so that we don't run into this waterfall of
03:12   8    problems that will follow if there's not compliance with
03:12   9    this basic rule.
03:12  10             THE COURT:   I guess I analyze things differently.
03:12  11    If core confidential documents are relevant to the patents,
03:12  12    they should be disclosed now, notwithstanding the fact that
03:12  13    they may overlap the trade secrets case.  We need to go
03:12  14    forward with the patent case.  And if and when there is
03:12  15    adequate disclosure for trade secrets, all other materials
03:12  16    should be produced.  But to the extent the core confidential
03:12  17    technical documents are relevant to the patent case, they
03:12  18    should be disclosed now and in advance of Masimo having to
03:12  19    identify which claims it wants to proceed on.
03:13  20             MR. LERNER:   If I may just very briefly respond to
03:13  21    that, Your Honor.  I understand that Masimo has raised that
03:13  22    argument, but it does render the statute a nullity.
03:13  23    2019.210 expressly states:  "Discovery related to the trade
03:13  24    secrets" -- indeed, in cases before Judge Early before, he
03:13  25    said just because discovery relates to a non-trade secret
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 1
Page 5

## 13

```
03:13   1    claim it doesn't mean it also doesn't relate to the trade
03:13   2    secret.  Here, there's no dispute -- there can't be any
03:13   3    dispute that discovery on the patent side relates to the
03:13   4    trade secrets.
03:13   5         So if we're going to do that, it does render the
03:13   6    statute in this instance a nullity, and we will have, I
03:13   7    think, all the problems that follow and are the very basis
03:14   8    for the rule there.  So I think that it is important to
03:14   9    consider both the express language of that statute and then
03:14  10    what's behind it.
03:14  11         The only other thing I will mention is that every
03:14  12    case that Masimo has cited on this point that involved
03:14  13    parallel claims -- every single one there was a prior trade
03:14  14    secret disclosure.  It's possible that it could have been
03:14  15    amended at some later time, but there was at the very least
03:14  16    some disclosure.
03:14  17         The only exception I can think of was one where
03:14  18    there was a date certain order, and the plaintiff would have
03:14  19    had to show good cause if they ever wanted to change it
03:14  20    later.  Because without either the disclosure or that date
03:14  21    certain and an order that it can't be changed without good
03:14  22    cause, then we have the very real situation that Masimo can
03:15  23    just look through our confidential information in a case
03:15  24    with a patent thicket and use our confidential information
03:15  25    to try and craft their purported secrets in a way that (a)
```

## 14

```
03:15   1    is allegedly theirs, even though it's based on our
03:15   2    confidential information, but (b) tries to weave around
03:15   3    their many patents so they don't run into the problem that
03:15   4    it's been disclosed.
03:15   5         For those reasons, I think it's in some ways of
03:15   6    critical importance here that we do it.  It's even more
03:15   7    important than I would say in a normal case where there
03:15   8    might not be quite so many patents in the space or so many
03:15   9    allegations that the secrets were allegedly disclosed in the
03:15  10    patents.
03:15  11         THE COURT:   Let's assume Masimo never asserted a
03:15  12    trade secret claim.  The confidential information which
03:15  13    involves the patent claims would be subject to production
03:16  14    whether it was a trade secret or not.  That's what
03:16  15    protective orders are for.
03:16  16         MR. LERNER:   We completely agree with that, Your
03:16  17    Honor.  If there were no trade secret claims in this case,
03:16  18    this would not be a problem.  But every case where there is
03:16  19    a trade secret, given the express language of the statute,
03:16  20    has found that you can't avoid that language.  I'm not aware
03:16  21    of any finding that ignores the language on point.
03:16  22         That's why in all of the cases there was a trade
03:16  23    secret disclosure before you had a ruling that patent
03:16  24    discovery could go forward, or at least as I said, an order
03:16  25    that the trade secret disclosure be produced by a date
```

## 15

```
03:16   1    certain along with admonition that the list couldn't change
03:16   2    without good cause.
03:17   3         So, yes, if there were no trade secret claim, then
03:17   4    2019.210 by and large would not come into play.  There are
03:17   5    some cases holding that if it's kind of, you know, a wolf in
03:17   6    sheep's clothing and it's obvious it's coming, then the
03:17   7    Court would say you still have to do the 2019.210
03:17   8    disclosure.
03:17   9         But here we don't have that situation.  This is a
03:17  10    case where they've suggested they have a serious trade
03:17  11    secret claim.  They've never described it with any
03:17  12    specificity whatsoever, even though they allege it has been
03:17  13    disclosed in public patent filings.  One could just say
03:17  14    here's the page and line number.
03:17  15         Not withstanding all of those things, there's no
03:17  16    description in a case that's, you know, roughly seven months
03:17  17    old, and they want this confidential information.  Again,
03:18  18    once that's done, we just cannot undo it, and we'll have I
03:18  19    think unfortunately a lot of unnecessary disputes both about
03:18  20    the scope of discovery, but also what to do about the fact
03:18  21    that you then have lawyers who have seen our secrets
03:18  22    drafting what their alleged secrets are.
03:18  23         THE COURT:   Mr. Re.
03:18  24         MR. RE:   Well, Your Honor, this is at least the
03:18  25    second or third time they've made this argument.  You are
```

## 16

```
03:18   1    correct.  Our patent case is independent of the trade secret
03:18   2    case.  The case law that we already cited and briefed to
03:18   3    Judge Early on these other motions were breach of contract
03:18   4    cases that were factually dependent on the trade secret
03:18   5    claims.  Our case is not dependent on our trade secret case.
03:18   6    And currently the trade secret case has been dismissed on
03:18   7    their Motion to Dismiss.  It's not even pending before the
03:19   8    Court, and obviously the patent case gets to go forward.
03:19   9         I've never seen such strenuous objections to
03:19  10    producing just the core technical documents in a case.  They
03:19  11    are fighting tooth and nail, and they will keep fighting and
03:19  12    fighting no matter what.  They're going to file more motions
03:19  13    I understand today to prevent the disclosures that were due
03:19  14    back in June.  I think the time has come we move forward now
03:19  15    as the Court has indicated.
03:19  16         THE COURT:   Are you going to replead your trade
03:19  17    secret claim?
03:19  18         MR. RE:   Yes, we are.  We plan on complying with
03:19  19    the 30-day leave to amend date at the end of the month.
03:19  20         THE COURT:   Okay.  Well, I think you have my
03:19  21    general views.  Let's see what motion practice that results
03:19  22    in.
03:19  23         Anything else we should take up today?
03:19  24         MR. RE:   No.  Thank you, Your Honor.
03:20  25         MR. LYON:   Thank you, Your Honor.
```

Exhibit 1
Page 6

17

```
03:20  1    MR. LERNER:   Thank you very much, Your Honor.
03:20  2    THE COURT:    Okay.  Thank you very much.
03:20  3    (Whereupon, the proceedings were concluded.)
03:20  4                        *  *  *
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

18

**CERTIFICATE**

6   I hereby certify that pursuant to Section 753,
7   Title 28, United States Code, the foregoing is a true and
8   correct transcript of the stenographically reported
9   proceedings held in the above-entitled matter and that the
10  transcript page format is in conformance with the
11  regulations of the Judicial Conference of the United States.

Date:  July 20, 2020

/s/   Sharon A. Seffens  7/20/20
_____
SHARON A. SEFFENS, U.S. COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Exhibit 1**
**Page 7**