1   JOSHUA H. LERNER, SBN 220755
      jlerner@gibsondunn.com
2   GIBSON, DUNN & CRUTCHER LLP
    555 Mission Street Suite 3000
3   San Francisco, CA 94105
    Tel.: 415.393.8200 / Fax: 415.393.8306
4
5   H. MARK LYON, SBN 162061
      mlyon@gibsondunn.com
6   GIBSON, DUNN & CRUTCHER LLP
    1881 Page Mill Road
7   Palo Alto, CA 94304-1211
    Tel.: 650.849.5300 / Fax: 650.849.5333
8   BRIAN M. BUROKER, *pro hac vice*
      bburoker@gibsondunn.com
9   BRIAN K. ANDREA, *pro hac vice*              ILISSA SAMPLIN, SBN 314018
      bandrea@gibsondunn.com                       isamplin@gibsondunn.com
10  GIBSON, DUNN & CRUTCHER LLP                  GIBSON, DUNN & CRUTCHER LLP
    1050 Connecticut Avenue, NW                  333 South Grand Avenue
11  Washington, DC 20036                         Los Angeles, CA 90071-3197
    Tel.: 202.955.8500 / Fax: 202.467.0539       Tel.: 213.229.7000 / Fax: 213.229.7520
12
13  BRIAN A. ROSENTHAL, *pro hac vice*           ANGELIQUE KAOUNIS, SBN 209833
      brosenthal@gibsondunn.com                    akaounis@gibsondunn.com
14  GIBSON, DUNN & CRUTCHER LLP                  GIBSON, DUNN & CRUTCHER LLP
    200 Park Avenue                              2029 Century Park East Suite 4000
15  New York, NY 10166-0193                      Los Angeles, CA 90067
    Tel.: 212.351.2339 / Fax: 212.817.9539       Tel.: 310.552.8546 / Fax: 310.552.7026
16  *Attorneys for Defendant Apple Inc.*

17              **UNITED STATES DISTRICT COURT**
18  **FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

19  MASIMO CORPORATION,                   CASE NO. 8:20-cv-00048-JVS (JDEx)
    a Delaware corporation; and
20  CERCACOR LABORATORIES, INC.,          **DEFENDANT APPLE INC.'S REPLY**
    a Delaware corporation,               **IN SUPPORT OF MOTION FOR**
21                                        **PARTIAL RECONSIDERATION OF**
                  Plaintiffs,             **PROTECTIVE ORDER (DKT. NO. 67)**
22
           v.
23                                        **Hearing**
    APPLE INC.,
24  a California corporation,             Date:       August 6, 2020
                                          Time:       10:00 a.m.
25                Defendant.              Courtroom:  6A
                                          Judge:      Hon. John D. Early
26
27
28

# TABLE OF CONTENTS

<u>Page</u>

I.  INTRODUCTION ................................................................. 1

II.  ARGUMENT ..................................................................... 3

    A.  Plaintiffs' Procedural Arguments Are Meritless and Contrary to Law .......................................................................... 3

        1.  Rule 60(b) Does Not Apply to Apple's Motion ............................. 3

        2.  The Local Rules Do Not Require a Meet and Confer for This Motion ........................................................................ 5

    B.  Apple Satisfied the Requirements of Local Rule 7-18 ...................... 6

        1.  Apple Presented Numerous Material Facts to the Court .................. 7

        2.  There Is Nothing Indicating the Court Considered the Foregoing Material Facts ............................................... 9

    C.  Apple Has Shown That the Protective Order Should Permit Section 2019.210 Disclosure Access and Include an Acquisition Bar ............... 10

        1.  Disclosure of Plaintiffs' Section 2019.210 Statement to a Limited Number of Apple's In-House Counsel (Section 9.3) ....... 11

        2.  Inclusion of an Acquisition Bar (Section 10) ............................ 14

III.  CONCLUSION .................................................................. 17

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Autotech Techs. Ltd. P'ship v. AutomationDirect.com, Inc.*,
5     237 F.R.D. 405 (N.D. Ill. 2006) ................................................................. 16

6     *Brown Bag Software v. Symantec Corp.*,
7     960 F.2d 1465 (9th Cir. 1992) ............................................................... 7, 11

8     *Carpenter v. Ayers*,
9     2008 WL 4279542 (N.D. Cal. Sept. 12, 2008) ........................................... 4

10    *Cassirer v. Kingdom of Spain*,
11    616 F.3d 1019 (9th Cir. 2010) ..................................................................... 4

12    *CytoSport, Inc. v. Vital Pharm., Inc.*,
      2010 WL 1904840 (E.D. Cal. May 10, 2010) ........................................... 12
13
      *Elias v. Just*,
14    4 F. App'x 428 (9th Cir. 2001) ................................................................... 4

15    *EPL Holdings, LLC v. Apple Inc.*,
16    2013 WL 2181584 (N.D. Cal. May 20, 2013)........................................... 16

17    *Intel Corp. v. VIA Techs., Inc.*,
18    198 F.R.D. 525 (N.D. Cal. June 26, 2000) ....................................... 7, 13, 14

19    *Jasmin v. Santa Monica Police Dep't*,
20    No. CV1606999FMOJDE (C.D. Cal. Feb. 21, 2019) ............................... 10

21    *Javo Beverage Co. v. California Extraction Ventures, Inc.*,
22    2020 WL 2062146 (S.D. Cal. Apr. 29, 2020) ....................................... 9, 15

23    *KL Grp. v. Case, Kay & Lynch*,
      829 F.2d 909 (9th Cir. 1987) ....................................................................... 4
24
      *MMCA Group, Ltd. v. Hewlett-Packard Co.*,
25    2009 WL 595537 (N.D. Cal. Mar. 5, 2009) .............................................. 12

26
      *Mood v. Cty. of Orange*,
27    2018 WL 5880826 (C.D. Cal. June 25, 2018) ............................................. 3

28

*Mullicane v. Glendora Police Dep't*,
   2018 WL 6264982 (C.D. Cal. Apr. 26, 2018) ............................................................ 4

*Tanasescu v. Kremer*,
   2018 WL 3657450 (C.D. Cal. Apr. 23, 2018) ............................................................ 4

*Twentieth Century-Fox Film Corp. v. Dunnahoo*,
   637 F.2d 1338 (9th Cir. 1981) ............................................................ 5

*Union Pac. R.R. Co. v. Coast Packaging Co.*,
   236 F. Supp. 2d 1130 (C.D. Cal. 2002) ............................................................ 10

*United States v. Martin*,
   226 F.3d 1042 (9th Cir. 2000) ............................................................ 3

*Waymo LLC v. Uber Techs., Inc.*,
   No. 17-CV-00939 WHA (N.D. Cal. Mar. 16, 2017) ............................................................ 8

**Rules**

Fed. R. Civ. P. 60(b) ............................................................ 3

Local R. 7-3 ............................................................ 1, 5

Local R. 7-4 ............................................................ 6

Local Rule 7-5(a) ............................................................ 7

## I.   **INTRODUCTION**

Plaintiffs fail to provide an adequate justification for barring Apple's in-house counsel from fulfilling their essential role in litigating this multi-patent and trade secret case, or for prohibiting their litigation counsel from reviewing Apple's highly confidential information and then advising Plaintiffs on how to bolster their patent portfolio, even for assertions against Apple, through acquisitions.   Instead of addressing the substance of these two serious issues that will harm Apple, Plaintiffs lead with flawed procedural arguments that have no bearing on this Motion for Reconsideration.  The Court should grant Apple's Motion for the following reasons.

*First*, Plaintiffs are wrong about the standards governing this Motion for Reconsideration of the Court's June 30, 2020 Protective Order.  The Protective Order is not a *final* order within the meaning of Federal Rule of Civil Procedure 60(b); this Motion therefore is governed not by Rule 60(b) of the Federal Rules of Civil Procedure, but rather by Local Rule 7-18, with which Apple has complied. The Protective Order also is an order on a discovery motion (Plaintiffs' underlying Motion to Compel a Protective Order), for which no meet and confer of the type Plaintiffs argue Apple failed to engage in was required.  *See* Local R. 7-3.

*Second*, Apple has demonstrated that its reconsideration request falls squarely within Local Rule 7-18(c).  Apple proposed provisions to permit the disclosure of Plaintiffs' Section 2019.210 statement to a limited number of Apple's in-house *litigation* counsel (Section 9.3), and to incorporate an acquisition bar (Section 10). The Court entered a Protective Order without either provision on June 30, 2020 (Dkt. No. 67), without an order explaining its reasons for denying Apple's requests.  In the absence of any order or explanation suggesting otherwise, it appears that the Court failed to consider material facts presented by Apple on both issues before entering the Protective Order.  Contrary to Plaintiffs' arguments, the facts here are not simply "attorney argument."  In-house counsel's role in assisting with the defense of this complex case is based on facts, as detailed below, as is the need for

an acquisition bar.  Furthermore, there is no reason to assume, as Plaintiffs argue, that the Court considered every material fact Apple presented in connection with its Section 9.3 and Section 10 protective order proposals—the Court understandably was moving quickly, entered the Protective Order before the parties provided responsive briefs, and did not provide an explanation that supports Plaintiffs' position.  Rather, all the parties have is an order that, without explanation, does not include these two key provisions.

*Third*, the Protective Order, as it stands, will hinder Apple's ability to defend—and potentially resolve—the trade secret misappropriation claim in this case.  This is a twelve-patent case, directed to two iterations of the Apple Watch over five years, and the same Apple watches are alleged to incorporate Plaintiffs' alleged trade secrets.[1]  The in-house counsel for whom Apple seeks access are members of Apple's *litigation* department, and are essential to, among other things, overall litigation strategy and the document collection and production process in this case. It will be impossible for these members of Apple's litigation department—tasked with overseeing and participating in Apple's defense of litigations filed against the company, like this one—to advise on strategy as to the trade secret case or to direct document collection and production in response to Plaintiffs' trade secret requests if they cannot see the description of the trade secrets Apple is alleged to have misappropriated.  Apple's in-house litigators also are uniquely positioned to liaise with the Apple teams that would need to physically excise the trade secrets if there is a legitimate trade secret claim.  But without access to the description of the alleged trade secrets, in-house counsel cannot possibly (1) identify whether those trade secrets are in Apple's products, or (2) direct the business to excise them.  As other courts have found, the foregoing facts are more than sufficient to justify access to the trade secret description for a limited number of members of Apple's legal

---

[1]   Plaintiffs have recently told the Court that they will be amending the First Amended Complaint to assert additional patents.

department who are not involved in competitive decision-making and who will agree to be bound by the Protective Order—and therefore it appears that the Court did not consider these material facts.

The absence of an acquisition bar likewise suggests that the Court failed to consider material facts—material facts that create the risks of inadvertent disclosure and competitive misuse that have compelled courts to enter an acquisition bar in like cases. Plaintiffs do not deny that their litigation counsel will review Apple confidential information and then advise Plaintiffs on whether to acquire businesses/assets. The risk of inadvertent disclosure in those circumstances is extremely high, and yet the fact of that risk does not appear to have been considered in denying Apple's request for an acquisition bar prohibiting that very activity within the narrow field of technology at issue in this litigation.

The Court should grant Apple's Motion for Reconsideration and enter an amended Protective Order containing Apple's proposals on Sections 9.3 and 10.

## II.   <u>ARGUMENT</u>

**A.   Plaintiffs' Procedural Arguments Are Meritless and Contrary to Law**

Plaintiffs raise several procedural objections—each of which is wrong.

### 1.   Rule 60(b) Does Not Apply to Apple's Motion

Plaintiffs argue that Apple's Motion should be denied on the grounds that Apple failed to comply with Federal Rule of Civil Procedure 60(b). But the order for which Apple seeks reconsideration—the Protective Order this Court entered on June 30, 2020 (Dkt. No. 67)—is not a *final* order within the meaning of Rule 60(b), and therefore Rule 60(b) has no application to Apple's Motion.

It is black letter law that Rule 60(b) applies only to a "*final* judgment, order, or proceeding." Fed. R. Civ. P. 60(b) (emphasis added); *see also United States v. Martin*, 226 F.3d 1042, 1048 n.8 (9th Cir. 2000) ("Rule 60(b), like Rule 59(e), applies only to motions attacking final, appealable orders . . . ."); *Mood v. Cty. of Orange*, 2018 WL 5880826, at *1 (C.D. Cal. June 25, 2018) ("Rule 60(b) does not

1  provide relief from judgments, orders, or proceedings that are not final decisions

2  within the meaning of 28 U.S.C. § 1291, which generally cannot be appealed

3  immediately.").  The Protective Order that is the subject of Apple's Motion is not a

4  final order within the meaning of Rule 60(b) because it does not resolve the merits

5  of any claim in the case or end the litigation on the merits.  *See Cassirer v. Kingdom*

6  *of Spain*, 616 F.3d 1019, 1024 (9th Cir. 2010) ("A final decision is one that ends the

7  litigation on the merits.").  Rather, the protective order is an interlocutory, non-

8  appealable discovery order to which Rule 60(b) does not apply.  *See KL Grp. v. Case,*

9  *Kay & Lynch*, 829 F.2d 909, 918 n.5 (9th Cir. 1987) ("The general rule is that

10  discovery orders are interlocutory and nonappealable under 28 U.S.C. § 1291.");

11  *Carpenter v. Ayers*, 2008 WL 4279542, at *1 (N.D. Cal. Sept. 12, 2008) (rejecting

12  argument that a protective order could be appealed because it was not a final order

13  and petitioner "cite[d] no authority supporting his right to [appeal] the order").

14        Plaintiffs' cases on this point are inapposite because each involved a motion

15  for reconsideration of a *final* order or judgment.  For example, Plaintiffs rely on

16  *Mullicane v. Glendora Police Department* and *Tanasescu v. Kremer* (*see* Opp. at 4-

17  5, 10-11), but in both cases this Court was considering motions for reconsideration

18  of final orders of dismissal.  *See Mullicane v. Glendora Police Dep't*, 2018 WL

19  6264982, at *1 (C.D. Cal. Apr. 26, 2018) (Early, J.); *Tanasescu v. Kremer*, 2018 WL

20  3657450, at *2 (C.D. Cal. Apr. 23, 2018).[2]  Nowhere in *Mullicane* or *Tanasescu* did

21  this Court suggest that "[t]o succeed on a motion for reconsideration" of a *non-final*

22  order, a party must comply with "the requirements of [Rule 60(b)]," as Plaintiffs

23

24

25

_____

26     [2]   Although the order in *Mullicane* was initially not appealable because the Court
granted the plaintiff leave to amend within 30 days (*see Elias v. Just*, 4 F. App'x 428,

27  429 (9th Cir. 2001)), the plaintiff in that case filed his motion for reconsideration more
than two months later (*see Mullicane*, 2018 WL 6264982, at *1), after his window to

28  amend expired, making the dismissal final and appealable.

1    erroneously contend.  Opp. at 4.[3]  Apple thus had no reason or obligation to "even

2    mention Rule 60(b), much less show that it satisfied those requirements." *Id.* at 11

3    (emphasis removed).  Apple addressed the elements of Local Rule 7-18, which is

4    the standard on this Motion.

### 2.      The Local Rules Do Not Require a Meet and Confer for This Motion

6            Lest there be any doubt that Plaintiffs are focused on everything but the

7    substance, Plaintiffs complain that there was no meet and confer even though there

8    is no dispute that it would have made no difference here.  Plaintiffs would not have

9    agreed to any of the provisions at issue.  Furthermore, Plaintiffs are wrong in arguing

10   that Apple violated Local Rule 7-3 by failing to meet and confer with Plaintiffs

11   before bringing its Motion.  Opp. at 5.  There was no such meet-and-confer

12   requirement for this Motion for Reconsideration.

13          The Local Rules are clear that a conference of counsel is required prior to

14   filing any motion "*except* in connection with discovery motions (which are governed

15   by Local Rules 37-1 through 37-4)" (Local R. 7-3 (emphasis added)), and Apple's

16   Motion is a discovery motion.  Apple seeks reconsideration of the Court's Order on

17   Plaintiffs' Motion for Protective Order, which Plaintiffs brought under Local Rules

18   37-1 through 37-4 and labeled a "Discovery Document."  *See* Joint Stip. Regarding

19   Pls.' Mot. for a Protective Order, Dkt. No. 61-1, at 1 (stating that Plaintiffs' Motion

20   for a Protective Order is brought "pursuant to L.R. 37-1 *et seq.*"); *see also id.* at

21   cover (stating that the Joint Stipulation Regarding Plaintiffs' Motion for a Protective

22   Order is a "Discovery Document").  Indeed, Apple noticed this Motion for a hearing

23   before Magistrate Judge Early because Apple requests that Judge Early reconsider

24   *his own* decision on Plaintiffs' discovery motion.  The Local Rules plainly except

---

[3]      Another case cited by Plaintiffs, *Twentieth Century-Fox Film Corp. v. Dunnahoo*, likewise concerned an appeal seeking "relief from the final Judgment Pursuant to Stipulation."  637 F.2d 1338, 1340-41 (9th Cir. 1981).  *Dunnahoo*, therefore, also does not provide any support for Plaintiffs' argument that Apple was required to bring its Motion under Rule 60(b).  Apple was not.

1    Apple's Motion from Local Rule 7-3's conference of counsel requirement.

2         In an effort to argue that Apple has already conceded the applicability of the

3    conference of counsel requirement to this Motion, Plaintiffs twist the position Apple

4    took in opposition to an entirely different motion.   Opp. at 5 (citing Apple's

5    Opposition to Plaintiffs' *Ex Parte* Application, Dkt. No. 56, at 6).  On June 18, 2020,

6    Plaintiffs filed an *Ex Parte* Application after a mere few hours' warning to Apple.

7    Upon learning of Plaintiffs' intended *Ex Parte* Application, Apple asked Plaintiffs

8    to meet and confer.  *See* Dkt. No. 56, at 6.  In these communications with Plaintiffs,

9    Apple did not represent that a meet and confer was required under the Local Rules

10   or otherwise; it merely requested and recommended a meet and confer in an effort

11   to alleviate the burden on the Court in the event the parties could resolve the dispute

12   on their own.  Plaintiffs refused Apple's request, and filed their *Ex Parte* application.

13   *Id.*  Nowhere in Apple's Opposition to the *Ex Parte* Application did Apple suggest

14   that a meet and confer was required under the Local Rules or otherwise—Apple

15   merely explained that it requested a meet and confer to attempt to resolve the dispute,

16   but its request was denied.  Nor did Apple anywhere in its Opposition to the *Ex Parte*

17   Application take the position that Local Rule 7-3 requires a meet and confer for

18   discovery motions (it expressly does not).

19        A meet and confer was not required in connection with this Motion, and

20   Plaintiffs are demonstrably wrong to suggest that Apple has taken any contrary

21   position on that issue in this case.[4]

22   **B.    Apple Satisfied the Requirements of Local Rule 7-18**

23        As Apple explained in detail in its opening brief, and reiterates again here, it

24   appears the Court failed to consider material facts.  Given the facts that Apple

25   _____

26        [4]    Plaintiffs' challenge to Apple's Notice of Motion (Opp. at 4 n.2) is equally
     meritless.  Apple's Notice concisely states the ground upon which Apple brings its
27   Motion (failure to consider material facts (*see* Local R. 7-18(c)), as well as the relief
     Apple seeks (reconsideration of Sections 9.3 and 10 of the Protective Order).  *See* Local
28   R. 7-4.  And Apple's arguments are set forth in the accompanying Memorandum of
     Points and Authorities, as required under Local Rule 7-5(a).

presented relating to the two provisions at issue, as well as the relevant case law, Apple can only assume that material facts were missed in the absence of a written order.

Plaintiffs are wrong to suggest that Apple did not present material facts to the Court on these issues in the first place, or that Apple failed to demonstrate that the Court declined to consider the material facts when it entered the Protective Order. Apple made both showings.

### 1.    Apple Presented Numerous Material Facts to the Court

*Brown Bag* and its progeny provide for a balancing of need versus risk.  *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992).  Apple's portion of the parties' Joint Stipulation on both Protective Order provisions is laden with material facts relating to need.  Plaintiffs cannot dispute that in-house counsel often are granted access in cases as complex as this one (indeed, in cases less complex than this one), particularly where, as here, members of the in-house team have specialized knowledge based on multiple cases involving the same complex products.  *See Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. June 26, 2000) ("Where, because of the technical nature of a case, the specialized knowledge of in-house counsel was necessary to supervise the litigation, good cause was found to outweigh the risk of inadvertent disclosure and permit access of in-house counsel to confidential information.").  Here, there are twelve patents directed to two iterations of the Apple Watch, which were released over five years.  Thus, with respect to Apple's request for Section 2019.210 disclosure access for a limited number of its in-house counsel, Apple directed the Court's attention to at least the following material facts:

- Apple's in-house counsel is in the position to address the trade secret allegations internally and excise any alleged trade secrets from Apple products as soon as possible.  Dkt. No. 61-1, at 47.
- Apple's "[i]n-house counsel is overseeing document discovery."  *Id.* at 48.

These material facts demonstrate that Apple's in-house counsel play an active role in the defense of this litigation, as well as any resolution of the trade secret dispute or associated mitigation of damages. *Id.* at 47-48; *see also* Mot. at 5-6 (emphasizing these material facts).  These facts are more than sufficient to justify in-house counsel's access to Plaintiffs' description of the trade secrets they contend Apple misappropriated, and on which they are basing their demand for damages.

Turning to the risk of disclosure, the facts again support access for Apple's in-house counsel.  The three in-house members of Apple's litigation department are willing to be bound by the Protective Order in this case. *See, e.g.*, Mot. at 5. Compliance with a Protective Order has been deemed sufficient in the highest stakes trade secret cases. *See, e.g.*, Transcript of Case Management Proceedings at 4:22-24, *Waymo LLC v. Uber Techs., Inc.*, No. 17-CV-00939 WHA (N.D. Cal. Mar. 16, 2017), ECF. No. 63 (in-house counsel permitted access to highly confidential documents, including trade secret disclosures, where in-house counsel agreed to "faithfully abide by the protective order" in the action).  This case should be no different.

With respect to Apple's request for an acquisition bar, Apple offered the fact that, in addition to being highly litigious companies (a fact that Plaintiffs do not contest), Plaintiffs have been involved in numerous corporate acquisitions, including two this year.  Mot. at 8.  In response to Apple's Motion, Plaintiffs conceded that they in fact did "acquire and license patents."  Opp. at 17.  To attempt to minimize the impact of this fact, Plaintiffs then claimed that these activities had "nothing to do with asserting patents against Apple or any other company." *Id*.  Plaintiffs further cited an example of such acquisitions that they "may acquire or license a patent that may cover new or existing products to prevent allegations of infringement" but noted that their "outside litigation counsel" "typically address[]" such activity. *Id*. Plaintiffs' admission underscores Apple's need for an acquisition bar to protect its confidential information from inadvertent disclosure.  Where previously it was not

known to the Court that Plaintiffs actively acquired and licensed patents with the advice of their outside litigation counsel, new evidence not previously available now exists. That Plaintiffs have not *yet* acquired patents related to Apple provides no comfort because Plaintiffs have not agreed that they will never do so and, importantly, have not agreed that they will not do so during the pendency of this litigation when their litigation counsel have access to Apple's confidential information. It is that future time period when the risk arises, and Plaintiffs have done nothing to show that no acquisitions will occur during that time.

"The threshold inquiry into the propriety of a patent acquisition bar considers whether 'the information designed to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information.'" *Javo Beverage Co. v. California Extraction Ventures, Inc.*, 2020 WL 2062146, at *5 (S.D. Cal. Apr. 29, 2020) (citation omitted). Consideration of the fact that Plaintiffs' counsel subject to the protective order participates in advising the acquisition or licensing of patents in the related technology is a highly relevant and material one. Such counsel's knowledge of Apple's confidential information and participation in scenarios where such information may be inadvertently used weigh on the risk of the disclosure of Apple's information. Thus, this case is far different than the *Walker* and *Union Pac. R.R. Co.* cases cited by Plaintiffs (Opp. at 6), where the court's original order contained errors that it found on reconsideration to be unimportant to its decision.

## 2. There Is Nothing Indicating the Court Considered the Foregoing Material Facts

Faced with the foregoing facts and case law, Plaintiffs respond that because the Court cited the parties' Joint Stipulation in the Protective Order, the Court must have considered all of the material facts presented by Apple on these two issues. Opp. at 8. Plaintiffs are wrong to suggest that where a court states that its order is

"based on" submitted filings, the court must have considered every material fact presented in those filings.  Indeed, this Court's *Jasmin* case that Plaintiffs cite does not support Plaintiffs' proposition.  *Jasmin* concerned a motion for reconsideration following a district judge's adoption of this Court's report and recommendation ("R&R") of dismissal.  The R&R contained 27 pages of legal and factual analyses underlying the Court's recommendations.  *See* Report & Recommendation at 1-27, *Jasmin v. Santa Monica Police Dep't*, No. CV1606999FMOJDE (C.D. Cal. Feb. 21, 2019) (ECF. No. 81).  And in adopting the R&R, the district judge listed every document it reviewed, and explained that he "engaged in a de novo review of those portions of the [R&R] to which objections have been made."  Order Accepting Findings and Recommendation of United States Magistrate Judge at 1-4, *Jasmin*, No. CV1606999FMOJDE (C.D. Cal. Apr. 18, 2019) (ECF. No. 104).  Thus, the material facts the Court considered in *Jasmin* were made explicit, as was the Court's reasoning for its dismissal order.  Here, by contrast, the Court did not enumerate the material facts it considered in issuing the Protective Order or provide any explanation for its decision—stating only that the Protective Order was generally "[b]ased on" the parties' submissions and evidence.  Dkt. No. 67, at 1.

    Put simply, Apple has made the requisite showings under Local Rule 7-18(c).[5] This Court should reconsider its Protective Order and enter an amended Protective Order containing Apple's proposals on Sections 9.3 and 10 accordingly.

## C.    Apple Has Shown That the Protective Order Should Permit Section 2019.210 Disclosure Access and Include an Acquisition Bar

    Plaintiffs also are wrong to suggest that Apple's "requested provisions are improper."  Opp. at 11.  Apple has shown precisely why in-house litigation counsel

---

    [5]    Apple agrees that directing the Court to "'additional . . . argument[s] which [it] clearly could have made earlier, but did not'" would be improper on this Motion.  Opp. at 10 (quoting *Union Pac. R.R. Co. v. Coast Packaging Co.*, 236 F. Supp. 2d 1130, 1137-38 (C.D. Cal. 2002)).  Apple is not, however, directing the Court to any such arguments.  Plaintiffs' reference to this legal principle therefore is inapposite.

access to Plaintiffs' alleged trade secrets and an acquisition bar are necessary.

**1.    Disclosure of Plaintiffs' Section 2019.210 Statement to a Limited Number of Apple's In-House Counsel (Section 9.3)**

As Apple explained in its opening brief, in determining whether in-house counsel should be permitted to view the opposing party's trade secrets, "the Ninth Circuit has advised courts to balance the risk to the producing party of inadvertent disclosure of its trade secrets to competitors against the risk to the receiving party that protection of the trade secrets will impair the receiving party's defense." Mot. at 4-5 (citing *Brown Bag*, 960 F.2d at 1470). Plaintiffs argue that there will be no prejudice to Apple if not a single one of its in-house counsel is permitted to access Plaintiffs' particularized identification of the trade secrets they contend Apple misappropriated. Plaintiffs' bald assertions are not supported by any evidence, and they are wrong—as demonstrated by the serious prejudice identified in Apple's Motion (Mot. at 4-7). And Plaintiffs have not even attempted to argue the other side of the scale—that the disclosure to a limited number of in-house counsel requested by Apple would harm Plaintiffs. Indeed, Plaintiffs do not identify *any* potential harm in their opposition brief. That is because there is no potential harm that will result to Plaintiffs from the limited disclosure Apple seeks, for at least three reasons.

*First*, the in-house counsel for whom Apple seeks access are members of Apple's *litigation* department—David Melaugh, Ryan Moran, and Natalie Pous. These three attorneys are members of the department responsible for the defense and management of Apple's litigations, arbitrations, and like legal proceedings, and they have particular responsibility for this matter. By contrast, in *CytoSport, Inc. v. Vital Pharm., Inc.*, 2010 WL 1904840, at *2 (E.D. Cal. May 10, 2010), a case Plaintiffs rely on in their opposition (Opp. at 12), the Court declined to grant access where the movant's "own evidence demonstrated that its in-house counsel [wa]s involved in the competitive decisionmaking process." In *CytoSport*, the movant was a "relatively small company" with "only three attorneys in its in-house legal

department" who were "directly reportable to the company's CEO . . ., responsible for all competitive decisionmaking." *Id.*  That is not true of the in-house counsel for which Apple seeks access here.  And while Plaintiffs are correct that in *MMCA Group, Ltd. v. Hewlett-Packard Co.*, 2009 WL 595537, at *2 (N.D. Cal. Mar. 5, 2009), the court denied the non-HP defendants' request for in-house counsel access to attorneys' eyes only material (it granted HP's request for in-house counsel access), the court did so because the non-HP defendants' in-house counsel for whom access was sought was "not simply general counsel of [movant] but also its president." *Id.*  That is not true of any of the three in-house attorneys for which Apple seeks access.  The risk of inadvertent disclosure that motivated the rulings in *CytoSport* and *MMCA* simply is not present here.

Plaintiffs are wrong to argue that because Apple did not previously name the in-house counsel for which it seeks access, Apple "provided no evidence to support its request."  Opp. at 13.  As Apple has repeatedly represented to Plaintiffs, including in multiple filings before this Court, "Apple is ready and willing to designate attorneys from its litigation group *who are not competitive decision makers and who are willing to be bound by the Protective Order*."  Mot. at 5 (emphasis added).  Those three attorneys are David Melaugh, Ryan Moran, and Natalie Pous.  Apple is not requesting access for any in-house counsel outside its in-house litigation department.

*Second*, as Apple has stated on numerous occasions, the in-house counsel for whom Apple seeks access agree to be bound by the Court's Protective Order.  In other words, Apple's in-house counsel will agree in writing to not use Plaintiffs' Section 2019.210 disclosure for any purpose other than the defense of this lawsuit.  *See* Dkt. No. 67, at 6 (Protective Order provision, which Apple's in-house counsel would sign on to, stating that Protected Material may be used *only* in connection with this lawsuit).

*Third*, by virtue of Plaintiffs' trade secret misappropriation claim, the alleged trade secret information Plaintiffs so fiercely seek to protect from disclosure to

1    Apple's counsel is the information they contend is *already* in Apple's possession.
2    *See* Dkt. No. 61-1, at 47 (explaining that Plaintiffs have alleged that Apple already
3    has possession of their trade secrets and that, if true, Plaintiffs should have no qualms
4    about sharing that information with the persons at Apple directly involved in the
5    defense of this lawsuit).

6         Thus, the scales that the Ninth Circuit have instructed district courts to balance
7    in deciding this issue decidedly weigh in *Apple's* favor.  In conjunction with the
8    obvious point that this is a complex patent and trade secret case—and that members
9    of Apple's in-house litigation team have handled other cases relating to the Apple
10   Watch and thereby gained broad experience relating to the product—the foregoing
11   facts justify access under all of the case law Apple has reviewed.

12        Plaintiffs' reference to the fact that certain of the protective orders Apple cited
13   from exemplar cases were stipulated between the parties in those cases (Opp. at 13)
14   does not change this analysis.  These protective orders were stipulated because the
15   parties recognized the sensibilities inherent in their terms—including the provision
16   of in-house counsel access to highly confidential documents such as Section
17   2019.210 disclosures.  And all of these protective orders were signed by the courts
18   that presided over the cases.  They are court orders from trade secret litigations, and
19   therefore provide valuable guidance for like protective order terms in this case.

20        Plaintiffs' reliance on *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525 (N.D.
21   Cal. 2000), likewise does not change the analysis.  Plaintiffs cite *Intel* for the
22   proposition that a party's in-house counsel should not be permitted access to highly
23   confidential material where the party is represented by competent outside counsel.
24   Opp. at 12.  But the court in *Intel* did not hold that the mere existence of competent
25   outside counsel forecloses in-house counsel access to highly confidential
26   documents, as Plaintiffs suggest.  Rather, in *Intel*, the court rejected plaintiff's
27   request for in-house counsel access to highly confidential information where the
28   plaintiff (1) did not demonstrate that its ability to litigate the case would be

...

prejudiced by precluding in-house counsel access; and (2) did not allege that its ability to litigate the case through outside counsel would be impaired. *Intel Corp.*, 198 F.R.D. at 528-29 (in-house counsel testified during evidentiary hearing that "restriction made managing the case 'difficult' but admitted that prosecution of the case was not impaired"). Apple, by contrast, has explained that its in-house counsel play a key role in the collection and production of documents, and that without access to Plaintiffs' Section 2019.210 statement, Apple's in-house counsel will be unable to adequately manage this search for documents responsive to Plaintiffs' requests. *See, e.g.*, Mot. at 5-6. Apple likewise has explained that without access to Plaintiffs' Section 2019.210 statement, Apple's in-house counsel will have no ability to advise the business on how to alter Apple's products in the event that Plaintiffs' alleged trade secrets are incorporated into Apple's products. *See, e.g.*, *id.* at 6. Plaintiffs' reference to the fact that Apple is represented in this litigation by a law firm with 20 offices, 1400+ lawyers, and "129 years of excellence" (Opp. at 12), therefore misses the point. Apple's ability to defend itself against Plaintiffs' serious claim of trade secret misappropriation will be significantly impaired if its in-house counsel are deprived access to the particularized identification of the alleged trade secrets at issue.

**2. Inclusion of an Acquisition Bar (Section 10)**

Apple also explained in its Motion the need for a reasonable and narrowly tailored acquisition bar. *See* Mot. at 7-10. In their opposition brief, Plaintiffs concede that they acquire and license patents (Opp. at 17), and Plaintiffs likewise previously admitted that their attorneys in this case will advise them on patent acquisitions and licensing in the future (Dkt. No. 61-1, at 60). There is thus a real risk that Plaintiffs' counsel who view Apple's sensitive technical material in connection with this litigation will then consciously or subconsciously use that information to advise Plaintiffs in acquiring or licensing patents that they may later assert against the Apple products at issue in this case. Under these circumstances,

Gibson, Dunn & Crutcher LLP

1   Apple's requested acquisition bar is sensible and necessary. Plaintiffs' arguments

2   in opposition are not persuasive.

3       *First*, Plaintiffs attempt to distinguish Apple's cases based on the fact that they

4   are not non-practicing entities. Plaintiffs' unsupported assertion suggesting that they

5   practice their patents is hardly insufficient to establish that factually disputed issue;

6   they will bear the burden of proof if they want to show that they practice the asserted

7   patents and there does not even appear to be a contention that Cercacor practices the

8   patents-in-suit. But regardless of whether Plaintiffs are practicing entities or not, the

9   risk of inadvertent use of a party's confidential information in acquisitions or

10  licensing does not turn on whether the party practices its patents. An acquisition bar

11  is an appropriate protection for a party's sensitive information regardless of whether

12  an entity practices its patents or holds its patents with no intentions of developing

13  them, especially where that acquisition bar is "appropriately tailored to meet

14  [Apple's] need for confidentiality" while only extending to "the particular

15  technology disclosed in the [patents at issue]." *Javo Beverage Co.*, 2020 WL

16  2062146, at *6. That is precisely the case with Apple's proposed acquisition bar

17  here.

18      *Second*, Plaintiffs argue that acquisition bars are "usually unnecessary" where

19  confidential information shall be used solely for purposes of the litigation and point

20  to Section 5.1 of the Protective Order for support. Opp. at 15. But Section 5.1 of

21  the Protective Order is not a substitute for an acquisition bar. Section 5.1 provides

22  that Protected Material "shall be used solely for this case," but does not address

23  *inadvertent disclosure*. Section 5.1 of the Protective Order therefore does nothing

24  to prevent or even minimize the risk that Plaintiffs' counsel will inadvertently use

25  Apple's confidential information when advising Plaintiffs about patent acquisition

26  and licensing. Indeed, "compartmentalization of protected information" by an

27  attorney who prosecutes this case and also advises Plaintiffs on patent acquisition

28  and licensing "is . . . 'a feat beyond the compass of ordinary minds.'" *Autotech*

*Techs. Ltd. P'ship v. AutomationDirect.com, Inc.*, 237 F.R.D. 405, 408 (N.D. Ill. 2006) (citation omitted).  Plaintiffs also are wrong to suggest that acquisition bars are unnecessary in situations like this one—because their suggestion ignores all of the security concerns expressed in the cases Apple cited in support of its requested acquisition bar.  *See* Mot. at 8-9.  For example, in *EPL Holdings, LLC v. Apple Inc.*, 2013 WL 2181584, at *4 (N.D. Cal. May 20, 2013), Apple sought an acquisition bar "to mitigate the risk of inadvertent use of confidential information learned in litigation by barring litigation counsel's involvement in strategic decisionmaking related to the subject matter of the litigation."  Recognizing that this concern was implicated where "litigation counsel may consciously or subconsciously use their knowledge of Apple's confidential information to advise a client on which patents to acquire, that is, patents that may be asserted against Apple," the court in *EPL* agreed and ordered the submission of a revised protective order.  *Id.*

*Third*, Plaintiffs argue that the "justification" for a prosecution bar (which they agreed to) and an acquisition bar (which they opposed) is distinct.  Opp. at 17 n.4.  Not so.  A patent owner without knowledge of Apple's confidential information may not know that Apple's products may potentially infringe its patent.  By contrast, Plaintiffs' inside knowledge of Apple's confidential information would allow Plaintiffs' counsel to be in a better position to determine whether there is any potential infringement by Apple, and thus whether there is increased value in that patent.  Using that inside knowledge, Plaintiffs' counsel could then advise Plaintiffs to purchase that patent and assert it against Apple.  Consequently, although Plaintiffs are correct that acquiring an existing patent shifts the source of liability, it also greatly increases the risk of litigation against Apple.  As with the prosecution bar, Plaintiffs should not be able to use their inside knowledge of Apple's confidential information to gain an advantage over third-party patent owners at Apple's expense.

Notably, Plaintiffs argue that the patents their attorneys acquire and license "have nothing to do with asserting patents against Apple" and that such acquisition

1    and licensing discussions "have nothing to do with Apple."  Opp. at 17.  If that is

2    true, then Plaintiffs should have no concerns about agreeing to a limited acquisition

3    bar here—which is confined to "functionality, operation, and design of non-invasive

4    physiological monitoring technologies."  Dkt. No. 72-2, at 16.

5          Plaintiffs are litigious companies.  This is a fact that Apple has raised multiple

6    times and that Plaintiffs have never once refuted.   And Plaintiffs have further

7    conceded that their outside counsel may end up advising Plaintiffs on the acquisition

8    and licensing of patents.  These facts demonstrate that Apple's concerns animating

9    its request for an acquisition bar are real and palpable.  The acquisition bar that Apple

10   seeks—which does not extend to all patents or technology, but only to those at issue

11   in this case—is necessary to protect the confidentiality and value of the Apple

12   information that Plaintiffs' counsel actually views.  This Court should reconsider its

13   Protective Order and impose a narrowly tailored acquisition bar accordingly.

### III.   CONCLUSION

15         Based on the foregoing and on Apple's moving brief, Apple respectfully

16   requests that the Court amend the Protective Order to (1) permit disclosure of

17   Plaintiffs' Section 2019.210 disclosure to at least two of Apple's in-house counsel,

18   and (2) include an acquisition bar preventing any of Plaintiffs' counsel who actually

19   review Apple's sensitive technical material from participating in patent acquisitions

20   relating to that material's subject matter until two year after the case ends.

21   //
22   //
23   //

1    Dated:  July 23, 2020             Respectfully submitted,

2

3                                              JOSHUA H. LERNER
H. MARK LYON
BRIAN M. BUROKER

4                                              BRIAN A. ROSENTHAL
ILISSA SAMPLIN
ANGELIQUE KAOUNIS

5                                              BRIAN K. ANDREA
GIBSON, DUNN & CRUTCHER LLP

6

7

8                                     By: */s/ Joshua H. Lerner*
                                              Joshua H. Lerner

9

10                                    *Attorneys for Defendant Apple Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28