JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br>Plaintiffs, <br><br>v. <br><br>APPLE INC., a California corporation, <br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br>**APPLE'S OPPOSITION TO PLAINTIFFS' RENEWED *EX PARTE* APPLICATION FOR AN ORDER REQUIRING APPLE TO COMPLY WITH THE SCHEDULING ORDER** <br><br>Hon. James V. Selna <br>No Hearing Noticed <br><br>Discovery Cut-Off: 7/5/2021 <br>Pre-Trial Conference: 3/21/2022 <br>Trial: 4/5/2022 |

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| III. | ARGUMENT | 3 |
| | A. Plaintiffs Cannot Show Irreparable Prejudice Because Apple's Core Technical Document Productions Are Sufficient to Show the Operation of the Features Accused of Infringement | 4 |
| |    1. Apple's June 15 Production Included Technical Documents Directed at the Accused Heart Rate Sensing Features | 4 |
| |    2. Plaintiffs Cannot Possibly Characterize Apple's July 16 Production as Insufficient; They Admittedly Have Not Reviewed the Documents | 4 |
| | B. Plaintiffs Demands for Source Code Are Unwarranted and Premature | 7 |
| |    1. Plaintiffs Cannot Show Relevance or Need for Source Code to Be Included in Apple's Core Technical Documents | 7 |
| |    2. Plaintiffs' Actions Demonstrate Their Awareness That Source Code Is Not Necessary | 9 |
| |    3. Plaintiffs Cannot Show That Source Code Is Necessary to the Infringement Contentions | 10 |
| |    4. The Court Did Not Order Production of Source Code, as Plaintiffs Allege | 11 |
| | C. Apple Has Not Prevented Plaintiffs from Reviewing Produced Documents in Their Possession | 12 |
| | D. Apple Proposes a Reasonable Extension to the Deadlines for Both Infringement and Invalidity Contentions | 14 |
| IV. | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Big Baboon Corp. v. Dell, Inc.*,
 723 F. Supp. 2d 1224 (C.D. Cal. 2010) ................................................................... 10

*Blue Spike, LLC v. Vizio, Inc.*,
 No. 817CV01172DOCKESX, 2018 WL 8646476 (C.D. Cal. July 3, 2018) .................................................................................................................... 8

*DCG Sys. v. Checkpoint Techs., LLC*,
 No. C 11–03792 PSG, 2012 WL 1309161 (N.D. Cal. Apr. 16, 2012) ..................... 10

*Drone Techs., Inc. v. Parrot S.A.*,
 838 F.3d 1283 (Fed. Cir. 2016) ..................................................................... 7, 8, 11

*Dynamic Digital Depth Res. Pty Ltd. v. LG Elecs., Inc.*,
 No. CV 15-5578-GW(EX), 2016 WL 7448294 (C.D. Cal. June 7, 2016) .............................................................................................................. 10, 15

*EMC Corp.. v. Zerto, Inc.*,
 No. 1:12-cv-00956 (D. Del. Apr. 9, 2013) ................................................................ 9

*Ethanol Boosting Sys., LLC v. Ford Motor Co.*,
 No. 1:19-cv-00196 (D. Del. Aug. 22, 2019) ............................................................. 9

*Finjan Inc. v. Proofpoint Inc.*,
 No. 13–cv–5808–HSG, 2015 WL 9023166 (N.D. Cal. Dec. 16, 2015) ................... 10

*Gilliam v. Bank of America, N.A.*,
 2017 WL 11001706 (C.D. Cal. Aug. 21, 2017) ........................................................ 4

*Jardin v. DATAllegro, Inc.*,
 2011 WL 3299395 (S.D. Cal. July 29, 2011) ...................................................... 3, 13

*Kinglite Holdings Inc. v. Micro-Star Int'l Co.*,
 No. CV1403009JVSPJWX, 2016 WL 6762573 (C.D. Cal. June 15, 2016) .................................................................................................................. 10

*Micro Motion, Inc. v. Kane Steel Co.*,
 894 F.2d 1318 (Fed. Cir. 1990) ................................................................................ 7

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
   883 F. Supp. 488 (C. D. Cal. 1995) ................................................................................ 4

*Novanta Corp., v. Iradion Laser, Inc.*,
   No. CV 15-1033-SLR-SRF, 2016 WL 4987110 (D. Del. Sept. 16,
   2016) ............................................................................................................................. 5, 6

*Perlan Therapeutics, Inc. v. Superior Court*,
   178 Cal. App. 4th 1333 (2009) ..................................................................................... 13

*Swarmify, Inc. v. Cloudflare, Inc.*,
   No. C 17-06957 WHA, 2018 WL 2445515 (N.D. Cal. May 31, 2018) ............. 12, 14

*TRUSTID, Inc. v. Next Caller Inc.*,
   No. 1-18-cv-00172 (D. Del. Nov. 26, 2018) ............................................................... 9

**Other Authorities**

Charles Tait Graves & Brian D. Range, *Identification of Trade Secret
   Claims in Litigation: Solutions for A Ubiquitous Dispute*, 5 Nw. J.
   Tech. & Intell. Prop. 68  (2006) .................................................................................. 13

I.     **INTRODUCTION**

Plaintiffs have burdened the Court with an *ex parte* motion (Dkt. No. 82 ("Application")) that lacks any foundation. Plaintiffs complain that Apple's production of core technical documents is insufficient, *but Plaintiffs admit that they have not reviewed Apple's production*. Plaintiffs' motion should be denied for that reason alone: Plaintiffs cannot claim prejudice without even looking at the production that they claim causes them prejudice.

Furthermore, if Plaintiffs had reviewed Apple's production, Plaintiffs would recognize that Apple has complied with its obligation to produce core technical documents. Just six court days after the July 10, 2020 hearing before the Court, Apple supplemented its production of core technical documents by producing highly confidential core technical documents, including drawings and CAD files of the sensor structure accused of infringing ten of the twelve Asserted Patents, as well as software and engineering requirements and specifications, and documents explaining in great detail the algorithms accused of infringing the remaining two Asserted Patents. Thus, Apple's productions of core technical documents show the structure and operation of each and every feature of the Apple Watches that Plaintiffs have accused of infringement in their First Amended Complaint ("FAC").

*Without even bothering to look* at confidential core technical documents that Apple produced, Plaintiffs also demand an immediate production of a broad swathe of source code that is untethered to the accused features in the case. Plaintiffs make this request despite the fact that Plaintiffs requested production of source code *for the first time* just this past Friday. Plaintiffs also have not complied with the provisions in the Protective Order governing source code inspections.

Again, Plaintiffs would know that Apple produced the foregoing core documents—and could have had a meaningful discussion with Apple about any concerns they had with that production—if they had reviewed the documents. Instead, Plaintiffs

refused to even look at those documents, and somehow blame Apple for this failure on the ground that Apple reserved its right to argue that there should be an ethical wall between the lawyers who review Apple's confidential core technical documents and the lawyers who draft the description of Plaintiffs' alleged trade secrets (if that ever occurs). But Apple has not imposed a "unilateral condition" on its production or prevented Plaintiffs from reviewing the documents Apple produced—Plaintiffs simply have chosen not to do so. Plaintiffs cannot refuse to look at the documents Apple produced, and then claim that Apple has not produced the documents.

In sum, Plaintiffs have once again rushed to the Court after manufacturing a purported emergency where none exists. Plaintiffs' request for *ex parte* relief therefore should be denied.

## II.    FACTUAL BACKGROUND

On June 15, 2020, Apple served non-confidential core technical documents in accordance with this Court's deadline for production of such documents. *See* Lerner Decl. Ex. A. On July 16, 2020, three business days after the Court denied Apple's request to stay its production of confidential technical documents until Plaintiffs proffered a Section 2019.210 statement, Apple produced confidential core documents.[1] Along with that production, Apple reminded Plaintiffs that they should maintain a temporary "ethical wall to keep Plaintiffs' attorneys who will have actual access to Apple's confidential information from participating in drafting or revising Plaintiffs' Section 2019.210 statement," citing *Jardin v. DATAllegro, Inc.*, 2011 WL 3299395, at *5 (S.D. Cal. July 29, 2011). Dkt. No. 83-2, Ex. 2 at 10. When Plaintiffs objected to the ethical wall the next day, Apple explained that the parties disagreed and that Apple

---

[1] Apple produced the confidential core technical documents despite Plaintiffs' statement during the July 10, 2020 hearing that they would be yet again changing the patents in this case in addition to attempting to describe their alleged trade secrets in a Second Amended Complaint ("SAC"). Dkt. No. 83-1, Ex. 1 at 5:13–16 (July 10, 2020 Hr'g Tr.).

reserved its right to seek relief if Plaintiffs did not comply. Apple did not prohibit or delay Plaintiffs' review of the confidential core documents. Dkt. No. 83-2, Ex. 2 at 8.

On July 17, Plaintiffs also asked Apple when Plaintiffs would be able to inspect its source code (Dkt. No. 83-4, Ex. 4 at 18–19), and served *the same day* Plaintiffs' first discovery requests seeking such source code (*see* Lerner Decl. Ex. B, at 13 (Plaintiff's Third Set of Requests for Production (Nos. 78–79))). Apple responded that it would respond by the regular deadline for discovery responses. Dkt. No. 83-4, Ex. 4 at 17. Apple also noted that the scope of source code Plaintiffs sought was exceedingly overbroad and not tailored to the infringement allegations in this action, given that only two patents even arguably implicate discovery as to *how* software features are implemented, and only as to a very narrow feature. *Id*. The next day, Plaintiffs decided to again invoke the "disfavored" *ex parte* process and filed their *ex parte* application. Dkt. No. 82. During the parties' meet and confer, Plaintiffs admitted that they had not yet reviewed the highly confidential core technical documents Apple produced on July 16, 2020.

## III.  ARGUMENT

Plaintiffs argued just last week that "ex parte applications are '**solely for extraordinary relief** and should be used with discretion.'" Dkt. No. 74, at 4 (citing this Court's Initial Order, Dkt. No. 19, at 3). Yet Plaintiffs have now brought *two ex parte* applications within less than five weeks. As with their first *ex parte* application, Plaintiffs have failed to demonstrate that *ex parte relief* is necessary or appropriate.

"Ex parte relief is justified only when the moving party shows that its cause 'will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures.'" *Gilliam v. Bank of America, N.A.*, 2017 WL 11001706, at *1 (C.D. Cal. Aug. 21, 2017) (quoting *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C. D. Cal. 1995)).

## A. Plaintiffs Cannot Show Irreparable Prejudice Because Apple's Core Technical Document Productions Are Sufficient to Show the Operation of the Features Accused of Infringement

### 1. Apple's June 15 Production Included Technical Documents Directed at the Accused Heart Rate Sensing Features

On June 15, 2020, Apple produced hundreds of pages of technical documentation describing the operation of the Accused Products (including heart rate measurement). *See* Dkt. No. 56 at 3. Plaintiffs baselessly assert that Apple's production included only "non-technical documents" and that Apple purportedly "acknowledged its June 15 production did not satisfy its obligation to produce core technical documents." Application at 5. That is incorrect. Apple's June 15, 2020 production included publicly available technical information and algorithms that describe the operation of the accused heart rate sensing features of the accused Apple Watch devices. Moreover, other than for the two low-power patents, the rest of the accused features of the Apple Watch are physical and/or mechanical in nature, and therefore the best evidence of those features is the publicly available devices themselves.

### 2. Plaintiffs Cannot Possibly Characterize Apple's July 16 Production as Insufficient; They Admittedly Have Not Reviewed the Documents

Plaintiffs argue that they have been irreparably prejudiced by purported insufficiencies of Apple's supplemental July 16 production even though *they have not yet reviewed the documents* in the production. Plaintiffs do not identify anything missing from Apple's production, which is not surprising because they do not know what is in the documents. Accordingly, Plaintiffs' assertion that "Apple still refuses to produce its core technical documents" is demonstrably false—Apple produced the confidential core technical documents related to accused features on Thursday, July 16, 2020. *See* Lerner Decl. ¶ 4 & Ex. A.

Core technical documents are required to be "sufficient to show how the accused product(s) work," and "include 'documents related to the accused product(s), including but not limited to operation manuals, product literature, schematics, and specifications.'" *See, e.g.*, *Novanta Corp. v. Iradion Laser, Inc.*, No. CV 15-1033-SLR-SRF, 2016 WL 4987110, at *3 (D. Del. Sept. 16, 2016). As discussed below, Apple has produced exactly what is required to show the operation of all of the accused features of the Accused Apple Watches.

The claims of ten of the twelve Asserted Patents are directed to physical and mechanical components, as Plaintiffs admit. *See Ex Parte* Application (Dkt. No. 55), at 1–2 (listing features such as "[t]he circular wall and its relationship to emitters and detectors," "[t]he light permeable cover," "[t]he protruding convex surface," "[a]rrangement of the detectors and emitters," and "[l]ouvers positioned over light sensitive detectors"). To show those accused features, Apple produced numerous documents describing the structure of the accused sensor module, including CAD drawings of the entire structure of the module that show how all of the accused components within the sensor module are arranged and documents that describe the operation of the sensor module. There are no better documents in Apple's possession that can be used to assess potential infringement of those mechanical patents. Tellingly, Plaintiffs have not identified anything more they would need.

The remaining two patents (the '703 and '776 patents) are directed to methods of lowering power consumption. *See id.* (listing "[o]peration at different power consumption levels" and "[o]peration according to different [power] protocols to determine pulse rate" as the last two claimed features). In their FAC, Plaintiffs accused the ability by the accused Apple Watch devices of varying "both LED brightness and sampling rate" that "compensate[s] for low signal levels," and the use of both green and infrared LEDs. FAC ¶¶ 157, 171. Apple produced the entire core engineering document set that describes the operation of these features, including:

- Engineering Requirements Specifications for Apple's sensing hardware, which describe the operation of the sensor module and the operation of the algorithms used by the sensor module to measure heart rate. These specifications include ASIC and connectivity diagrams, chipset layout, pictures of the arrangement of components in the sensor module on the Accused Apple Watches, operation of the LEDs, including description of varying brightness and timing of LEDs, and operation of the photodiodes; and

- Engineering documents describing the operation of the LED drive current, sampling frequency, and LED brightness in the accused Apple Watch optical sensor. Critically, these documents include sections devoted to explanation of the *algorithms* that vary LED brightness and sampling rate to compensate for low signal levels, which are the precise features that Plaintiffs have accused in the FAC. *See* FAC ¶¶ 157, 171. Many of these documents also include annotated block diagrams showing the flow and operation of the accused algorithms.

The core technical documents produced by Apple are sufficient to show the operation of *all* of the accused features of the Apple Watch devices. *See Novanta*, 2016 WL 4987110, at *3. Plaintiffs have not identified anything that is missing, and have no valid basis to demand more (including source code) when they have not even reviewed what they already have.

Plaintiffs' bold claim that "there is no possibility that Apple's core technical documents relating to products accused of infringing twelve patents could total only 350 pages" is incorrect. Application at 7 (emphasis removed). The number of asserted patents and the number of pages in the document productions are immaterial here. The CAD drawings show the precise layout of all mechanical features. The documents related to varying sampling rate and LED brightness explicitly provide the implicated algorithms. It does not take more than 350 pages to describe these features. Indeed, many of the documents that illustrate the structure of the accused sensor module are

1 | CAD drawings that are only a few pages long.  As explained above, everything Plaintiffs require to understand the technical structure and operation of the limited set of accused features is contained within Apple's supplemental production of core technical documents.  Plaintiffs would know this had they actually reviewed the documents before filing this premature and inappropriate application based on unfounded speculation.  Accordingly, Plaintiffs' Application should be denied.

### B. Plaintiffs Demands for Source Code Are Unwarranted and Premature

#### 1. Plaintiffs Cannot Show Relevance or Need for Source Code to Be Included in Apple's Core Technical Documents

Plaintiffs' speculation that Apple's document production "cannot be sufficient" because it does not include Apple's highly sensitive source code is without merit. Application at 8.  As with all discovery, Plaintiffs must show both that the source code they seek is relevant to the subject matter of this action and that they have a "need" for it as part of the core technical production.  *See Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1299 (Fed. Cir. 2016) (quoting *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990)).  Plaintiffs can show neither.  As an initial matter, Plaintiffs served their *first* requests for production directed to source code less than a week ago.  Those requests, which Apple is still reviewing and will respond to in due course, are exceedingly overbroad, demanding code for features well beyond those accused of infringement in the FAC and thus completely irrelevant to this action.  For example, Plaintiffs demand source code for the "operation of the [Apple Watch] touch screen," and "the calculation and tracking of . . . glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, [and] carbon monoxide," none of which are accused in the FAC. *See, e.g.*, FAC ¶¶ 46–48, 154–57 (only accusing heart rate measuring functionality).  The Asserted Patents do not have any claims that would require the source code for such features in order to assess potential infringement; to the extent any claims refer to such functionality, they refer only to *whether* such

functionality exists, not *how* it works.[2]  "Because there [is] neither a charge of infringement nor any evidence of relevance or need, [source code] discovery relating to [features of the Apple Watch that were not accused of infringement] should not [be] granted based solely on [Plaintiffs'] suspicion."  *Drone Techs.*, 838 F.3d at 1299–1300 (vacating a district court's order that required production of source code for product and features that were not "identified in [the] complaint or otherwise accused of infringement"); *see also Blue Spike, LLC v. Vizio, Inc.*, No. 817CV01172DOCKESX, 2018 WL 8646476, at *5 (C.D. Cal. July 3, 2018) (listing cases "denying discovery of code unrelated to the accused functionality," and rejecting "overbroad" requests for production of source code that implicated functions not accused of infringement).

Apple agrees that source code may be relevant to some of the accused features in this case at some point, but it is not relevant now to its core technical document production, and is certainly not necessary to prepare preliminary infringement contentions, as discussed below.  Any dispute concerning the relevance of Plaintiffs' source code requests relevance should be addressed at the proper time in a meet and confer between the parties or, as a last resort, through regular noticed discovery motion practice—it is not a proper subject for an *ex parte* application.

Plaintiffs also cannot demonstrate a "need" for Apple's source code for the algorithms they refer to in the FAC, because they admit that they did not review Apple's production.  Accordingly, Plaintiffs have not—and cannot possibly—explain why the documents Apple has already produced are insufficient.  As explained above, Apple's productions include documents that describe with specificity the operation of every accused feature, including detailed descriptions of the very algorithms cited in the FAC.  Plaintiffs thus have no need to *also* review source code immediately as part of Apple's

---

[2] When Apple attempted to raise the relevance issue and determine why Plaintiffs believed such overbroad requests for source code were necessary, Plaintiffs refused to agree to narrow the scope of their demand.  Lerner Decl. ¶ 6.

1  production of core technical documents.  *See, e.g.*, Oral Order, *TRUSTID, Inc. v. Next Caller Inc.*, No. 1-18-cv-00172 (D. Del. Nov. 26, 2018) (denying plaintiff's request to compel defendants to include source code with their core technical documents production because it was "not clear to the Court that the documents that Defendant intends to produce by the core technical document deadline will be insufficient to enable Plaintiff to 'determine how the accused . . . product works . . .' or that those documents will render Plaintiff unable to prepare sufficiently-detailed initial infringement contentions"); *see also* Oral Order, *Ethanol Boosting Sys., LLC v. Ford Motor Co.*, No. 1:19-cv-00196 (D. Del. Aug. 22, 2019) (denying motion to compel production of source code when the scheduling order already contemplated source code review following invalidity contentions); Order at 1–2, *EMC Corp. v. Zerto, Inc.*, No. 1:12-cv-00956 (D. Del. Apr. 9, 2013) (ECF No. 47) (denying without prejudice motion to compel production of source code until after plaintiffs have served infringement contentions and defendant is "able to 'identify portions of source code to voluntarily make available under the protective order' or otherwise reach some production agreement").  Plaintiffs cite no authority to the contrary because none exists that requires every core technical document production to also include source code.

### 2. Plaintiffs' Actions Demonstrate Their Awareness That Source Code Is Not Necessary

Plaintiffs served Requests for Production seeking such source code only *five days ago*.  Lerner Decl. ¶ 5 & Ex. B, at 13 (RFP Nos. 78–79).  Moreover, Plaintiffs have not identified the person who will review Apple's source code, as they are required to do by the Protective Order.  *See* Dkt. No. 67, ¶ 11(g).  Any dispute concerning Plaintiff's source code requests should be addressed through the regular discovery process, including normal conferences of counsel between the parties.

### 3. Plaintiffs Cannot Show That Source Code Is Necessary to the Infringement Contentions

Plaintiffs have no basis to argue that they cannot provide infringement contentions without Apple's source code. As "all courts agree," infringement contentions must only be specific enough "to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement." *Kinglite Holdings Inc. v. Micro-Star Int'l Co.*, No. CV1403009JVSPJWX, 2016 WL 6762573, at *1 (C.D. Cal. June 15, 2016) (Selna, J.) (alteration removed and internal quotation marks omitted). This Court has recognized that infringement contentions "do not 'require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case,'" and need only disclose " 'what in each accused instrumentality [a plaintiff] contends practices each and every limitation of each asserted claim *to the extent appropriate information is reasonably available to it*.' " *Id.* (quoting *DCG Sys. v. Checkpoint Techs., LLC*, No. C 11–03792 PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012)); *see also Dynamic Digital Depth Res. Pty Ltd. v. LG Elecs., Inc.*, No. CV 15-5578-GW(EX), 2016 WL 7448294, at *4 (C.D. Cal. June 7, 2016) ("The . . . purpose [of infringement contentions] is to provide notice of the patentee's theory of infringement, not to provide the evidence supporting that theory." (quoting *Finjan Inc. v. Proofpoint Inc.*, No. 13–cv–5808–HSG, 2015 WL 9023166, at *3 (N.D. Cal. Dec. 16, 2015))).

Based on these principles, this Court has stated that when access to source code has been available to a plaintiff for months, "it has been this Court's practice to require that infringement contentions include pinpoint citations to source code." *Id.* at *2. When source code was not yet available to a plaintiff, however, "[i]n general, courts have declined to compel pinpoint citations in infringement contentions." *Big Baboon Corp. v. Dell, Inc.*, 723 F. Supp. 2d 1224, 1227 (C.D. Cal. 2010); *see also Dynamic Digital*, 2016 WL 7448294, at *4 ("Although providing pinpoint citations to source code is a way of meeting Rule 3–1(c)'s requirement to identify specifically where each limitation

of each asserted claim is found, it is not the only way."). Likewise, no court has required a defendant to make source code available for review solely for the purpose of creating infringement contentions, when other technical documents have been produced that describe in detail the operation of the accused features. To the contrary, courts require the production of source code only when other documents are not "'sufficient to show' the operation of the accused products." *Drone Techs.*, 838 F.3d at 1298–99 (Fed. Cir. 2016) (applying a "sufficient to show" requirement analogous to that contained in the N.D. Patent Local Rules, and vacating order requiring production of source code when other documents "sufficiently demonstrated how [defendant's] accused products operate" and the Local Rule at issue "plainly envisions that a defendant may produce 'other documentation' instead of source code").

Here, as explained above, Apple produced hundreds of pages of documents that describe in detail the operation of every single accused feature. Plaintiffs have everything they need "to provide notice of [their] theory of infringement" (*Dynamic Digital*, 2016 WL 7448294, at *4) if they only review the produced documents. Moreover, the Scheduling Order adopted the parties' proposed patents dates, which include a deadline for final infringement contentions over a year from now (September 9, 2021). *See* Dkt. No. 37, at 24. Thus, to the extent that Plaintiffs will need to supplement their infringement contentions with pinpoint citations to source code, they will have an opportunity to do so.

### 4. The Court Did Not Order Production of Source Code, as Plaintiffs Allege

Plaintiffs mischaracterize the Court's statements made in the July 10, 2020 Hearing to argue that the Court required production of source code before infringement contentions. Application at 8. This is a complete misrepresentation of the record. The Court stated only that Apple should produce "the core technical documents"—source code was never mentioned or discussed. Dkt. No. 83-1, Ex. 1 at 9:9–12 (July 10, 2020

Hr'g Tr.). In fact, Plaintiffs did not bring up the subject of source code in this case until *one day after* Apple produced its core technical documents, and even then did not mention that they sought Apple's source code with the core technical document production. Dkt. No. 83-4, Ex. 4 at 18–19.

### C. Apple Has Not Prevented Plaintiffs from Reviewing Produced Documents in Their Possession

Plaintiffs' argument that Apple is somehow "unilaterally imposing" an ethical wall is equally flawed. Apple has explained orally and in writing that it is not holding up Plaintiffs' review of core documents. To the contrary, Apple simply reserved its right to argue that Plaintiffs should not make up trade secrets based on Apple's confidential information. Apple carefully explained this to Plaintiffs:

> You have Apple's production of core technical documents and are free to review them. We've made our position on the need for a temporary ethical wall clear. We understand that you disagree with our position. If you choose not to enact the temporary ethical wall we've requested prior to review, and instead use the same team to review and draft Plaintiffs' Section 2019.210 disclosure, you of course do so with full knowledge of Apple's position on this issue.

Dkt. No. 83-3, Ex. 3 at 15.[3]

Apple's reservation of rights is consistent with the case law. Section 2019.210 "prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets." *Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018). An obvious way to prevent this scenario is to erect a wall between the lawyers who have access to a defendant's

---

[3] Apple's request for a temporary ethical wall is fully consistent with Plaintiffs' own position that the "patent case is independent of the trade secret case." *See, e.g.*, Dkt. No. 83-1, Ex. 1 at 16:1–2 (July 10, 2020 Hr'g Tr.).

confidential information and the lawyers drafting the plaintiff's trade secret disclosure. *See Jardin v. DATAllegro, Inc.*, No. 10-CV-2552-IEG WVG, 2011 WL 3299395, at *5 (S.D. Cal. July 29, 2011).[4]

Plaintiffs' argument, and citation to *Perlan*, demonstrates a fundamental misunderstanding of the case law. *Perlan* does *not* stand for the proposition that Plaintiffs should draft their initial trade secret disclosure with Apple's confidential information in hand. The *Perlan* court held that where—unlike here—the plaintiff *already provided a disclosure*, the plaintiff may have good cause to amend if the plaintiff later finds misappropriation of secrets *in addition to the secrets the plaintiff described at the outset. Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1350–51 (2009). Neither *Perlan* nor any other case suggests that a plaintiff should ever be permitted to review a defendant's confidential information in order to draft the *initial* description of the plaintiff's alleged secrets. To the contrary, *Perlan* relied on a frequently cited article, which explains that "it is important to note that the *plaintiff's identification of its own alleged intellectual property does not depend on the defendant's documents*, because the preliminary question is whether the plaintiff has a trade secret, which must be answered before determining whether the defendant used the secret in its products or services." Charles Tait Graves & Brian D. Range, *Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute*, 5 Nw. J. Tech. & Intell. Prop. 68, 73 (2006) (emphasis added).

More relevant to this case is *Swarmify*, where the plaintiff gained discovery before providing an amended disclosure. The Court noted the risk of abuse that inheres where plaintiffs access confidential information before drafting the trade secret disclosure:

---

[4] Plaintiffs' attempt to distinguish *Jardin* falls flat. It is immaterial whether Plaintiffs' counsel obtained Apple's confidential information in this case or another. Application at 6–7. *Jardin* was explicit that the ethical wall there was necessary due to a "concern that Plaintiff's counsel could not divorce themselves from their knowledge of Defendants' confidential material when" preparing a trade secret description—the same concern implicated here. 2011 WL 3299395, at *5.

Swarmify represents that it has not used information gained in discovery to redefine its alleged trade secrets, and Section 2019.210 draws the line at "discovery." But even if that representation could be relied upon, redefining alleged trade secrets based on information gained by moving for a preliminary injunction, thereby forcing the accused to disclose the details of its technology and defenses, raises a similar concern of abuse.

*Swarmify*, 2018 WL 2445515, at *3. The court went on to hold that Swarmify could not amend again and that it would need to reimburse the defendant for defending against the original description of the purported secrets.[5]

Plaintiffs cannot avoid Apple's well-established right to argue that Plaintiffs should describe their purported trade secrets without the benefit of Apple's confidential information. Apple cannot be prevented from reserving its right to point out that Plaintiffs' counsel was not able to—or at the very least refused to—provide a disclosure without Apple's confidential information (and seek any appropriate remedies). Under no circumstances is Apple's reservation of rights a basis for Plaintiffs to hold up reviewing Apple's documents, which they already have in hand.

### D. Apple Proposes a Reasonable Extension to the Deadlines for Both Infringement and Invalidity Contentions

Apple produced core technical documents that describe all accused features of the products at issue on June 15, 2020 and July 16, 2020. Plaintiffs have had months to develop their infringement theories, particularly when an infringement analysis for ten of the twelve patents requires only examination of the accused Apple Watch devices.

---

[5] Plaintiffs' argument that a temporary wall would prejudice them by requiring "Plaintiffs to segregate its team into two sets of lawyers for the entire case" is a straw man. Application at 6. Apple has only ever requested a *temporary* wall until Plaintiffs provide their Section 2019.210 statement. There is no prejudice here, particularly given that Plaintiffs can presumably describe their own alleged trade secrets at any time.

Despite this, Plaintiffs complain that they need an *additional six weeks* from an undefined date in the future to write their infringement contentions. During the parties' meet and confer preceding Plaintiffs' Application, Plaintiffs made clear that they intend to delay this case *indefinitely*, stating that they sought a six-week extension from the time *they judged* Apple's production complete. *See* Lerner Decl. ¶ 6. Plaintiffs also argue that Apple is not entitled to a similar extension for its invalidity contentions while they sit on the very documents they need to prepare their infringement contentions. *Id.*[6] Such delay tactics fly in the face of the Court's clear instruction that "[w]e need to go forward with the patent case" (Dkt. No. 83-1, Ex. 1 at 12:13–14), and should be rejected.

Instead, Apple proposes that the Court enter a reasonable reciprocal extension of one month from the date Apple supplemented its production of core technical documents. This would amount to a three-week extension of the deadlines for both parties, with Plaintiffs' infringement contentions due on August 17, 2020, and Apple's invalidity contentions due on September 28, 2020. Plaintiffs cannot plausibly demand more time, when they have ignored Apple's production for over a week, and instead devoted their time to working on an improper *ex parte* application.

## IV.   CONCLUSION

Based on the foregoing, Apple respectfully requests that the Court deny Plaintiffs' Application. Apple suggests that the Court extend the deadlines for both infringement and invalidity contentions by three weeks.

---

[6] Plaintiffs' alternate argument—that they should be able to prepare infringement contentions based only on publicly available information that "they can freely amend later" (Application at 9, n.5)—should likewise be rejected. Plaintiffs cannot provide notice of their infringement theory (*Dynamic Digital*, 2016 WL 7448294, at *4) if their contentions are a moving target.

| | | |
|---|---|---|
| 1 | Dated: July 23, 2020 | Respectfully submitted, |
| 2 | | JOSHUA H. LERNER |
| 3 | | H. MARK LYON<br>BRIAN M. BUROKER |
| 4 | | BRIAN A. ROSENTHAL<br>ILISSA SAMPLIN |
| 5 | | ANGELIQUE KAOUNIS<br>BRIAN K. ANDREA |
| 6 | | GIBSON, DUNN & CRUTCHER LLP |
| 7 | | |
| 8 | | By: */s/ Joshua H. Lerner*<br>       Joshua H. Lerner |
| 9 | | |
| 10 | | *Attorneys for Defendant Apple Inc.* |

APPLE'S OPPOSITION TO PLAINTIFFS'
RENEWED *EX PARTE* APPLICATION          16          CASE NO. 8:20-cv-00048-JVS (JDEx)