Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:  (949) 760-0404; Facsimile:  (949) 760-9502

Adam B. Powell (Bar No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) Hon. James V. Selna<br>)<br>) **PLAINTIFFS' OPPOSITION TO**<br>) **APPLE INC.'S *EX PARTE***<br>) **APPLICATION FOR AN ORDER**<br>) **SCHEDULING A CASE**<br>) **MANAGEMENT CONFERENCE**<br>)<br>)<br>)<br>)<br>)<br>) |

# I. **INTRODUCTION**

The Court should deny Apple's request because (1) Apple already unsuccessfully requested the same relief, (2) Apple created the scheduling issue of which it now complains by refusing to comply with prior Court orders, and (3) Apple has not shown good cause for its broad modification to the Scheduling Order. Contrary to Apple's assertions, Plaintiffs' Second Amended Complaint ("SAC") simplified and narrowed the technical subject matter in this case by *removing* one of the four patent families at issue. The newly substituted patents all relate to a patent family *already at issue.*

Apple argues the current case schedule is not "fair" to Apple. Apple complains that Plaintiffs' deadline for infringement contentions is now after Apple's deadline for invalidity contentions and that Plaintiffs' deadline could be extended if Apple fails to produce core technical documents. But those are the natural consequences of Apple's continued refusal to comply with the Court's orders to produce its core technical documents. Apple also complains it is "not possible or fair" to force Apple to prepare invalidity contentions on six-weeks notice. But Apple omits that Plaintiffs asked Apple whether it would entertain a reasonable compromise to avoid burdening the Court. Even though the newly asserted patents are very similar to previously asserted patents, Plaintiffs were willing to extend Apple's deadline with respect to the newly asserted patents to avoid burdening the Court. Apple refused to even discuss such an approach. Instead, it demanded a *three-month* extension for *all* patents, including patents asserted in the original Complaint. There is no basis for seeking an extension with respect to the patents that were in the case before the SAC. Apple's position establishes that its request has nothing to do with any supposed burden caused by the SAC.

In a tacit acknowledgement that it has not met its burden to extend the entire schedule, Apple does not directly request an extension and instead asks

this Court to set a case management conference.  Apple should not expect this Court to evaluate this important case schedule adjustment without the benefit of briefing.  Plaintiffs should also be permitted to address the schedule, and Apple's failure to show good cause for amending it, in regular briefing. Accordingly, the Court should either deny Apple's extension or grant a 30-day extension with respect to the newly asserted patents only.  If the Court is inclined to grant any further extension, Plaintiffs respectfully request the Court first allow regular briefing so that Plaintiffs have a full and fair opportunity to explain how the SAC streamlined the case.

## II.  **STATEMENT OF FACTS**

Plaintiffs filed this case in January 2020.  *See* Dkt. 1.  The parties conducted the Rule 26(f) conference in March and submitted the Joint Rule 26(f) Report in April.  Dkt. 33.  In the Joint Report, the parties agreed to numerous deadlines, including: (1) Apple would provide "core technical documents" on June 15, (2) Plaintiffs would provide infringement contentions six weeks later on July 27, and (3) Apple would provide invalidity contentions six weeks later on September 7.  *Id.* at 25-26.  The Court issued a Scheduling Order adopting those dates.  Dkt. 37.

On June 15, Apple produced a few public documents, but refused to produce ***any*** confidential information.  Because Plaintiffs' infringement contentions deadline was set for six weeks after Apple produced core technical documents, Plaintiffs filed an *Ex Parte* Application to Enforce the Scheduling Order.  Dkt. 55.  Apple argued that Plaintiffs had "abuse[d]" the *ex parte* process because "[u]sing the *ex parte* process to alter the schedule, particularly when the deadline at issue is six weeks away, is inappropriate."  Dkt. 56 at 1. Apple also argued it should not have to produce confidential documents until the Court entered a Protective Order.  Dkt. 56 at 3, 7-9.  The Court denied Plaintiffs' application without prejudice and ordered the parties to promptly

submit their protective order disputes.  Dkt. 59 at 2.  The parties did so, and Judge Early promptly issued a Protective Order on June 30.  Dkt. 61; Dkt. 67.

Despite entry of the Protective Order, Apple still refused to produce its technical documents.  Thus, Plaintiffs filed a Renewed *Ex Parte* Application. Dkt. 82.  Apple's opposition again argued Plaintiffs' *ex parte* application was inappropriate.  Dkt. 85 at 3.  After Plaintiffs filed the SAC on June 24, Apple filed a  "supplemental" brief.  Dkt. 90.  Apple argued the SAC "significantly alter[ed] the scope of the case" and the Court should "order the parties to meet and confer on a revised case schedule to submit to the Court before the end of the week."  *Id.* at 1-2.  Plaintiffs responded by explaining that the SAC ***simplified*** the case as Apple had requested by reducing the number of patent families at issue.  Dkt. 91 at 1.  Plaintiffs also explained that it had told Apple about the likely case focusing weeks ago and Apple responded "That is indeed very ***helpful***.  Thanks." *Id.*[1]

On July 27 (the deadline to provide Plaintiffs' infringement contentions), the Court had not yet ruled on Plaintiffs' Renewed *Ex Parte* Application.  Thus, Plaintiffs provided their contentions based on public information only because Apple had not yet provided ***any*** confidential information.  *See* Dkt. 94-1, Ex. A. Two days later, the Court granted Plaintiffs' Renewed *Ex Parte* Application, explaining:

> This issue has been litigated multiple times, and Apple has not prevailed. Now is the time for Apple to act: The Court expects prompt and full compliance.  Any further recalcitrance on Apple's part will likely draw an application for contempt or sanctions under 28 U.S.C. § 1927 or an invitation from the Court to seek such relief.

Dkt. 92 at 2.

---

[1] All emphasis is added unless noted otherwise.

On June 31, the parties met and conferred on Apple's current request. Powell Decl. ¶ 2. Despite receiving the SAC more than six weeks before its September 7 deadline, Apple asked for **three additional months** (nearly twenty weeks total) to prepare its contentions on **all** patents, including those that have been in the case since January. *Id.* During the conference of counsel, Plaintiffs explained that they could not agree to a wholesale extension of the case schedule, but would consider a narrower extension for newly asserted patents to avoid a dispute. *Id.* Apple maintained that it was seeking an extension as to all patents and had no interest in an extension as to the newly asserted patents. *Id.*

### III.  **ARGUMENT**

The Court should deny Apple's application because Apple has not shown that good cause exists to modify the Scheduling Order or that *ex parte* relief is appropriate.

**A.  Apple Has Not Shown Good Cause**

A scheduling order may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 609 (9th Cir. 1992). The scheduling order may be modified only if deadlines "cannot reasonably be met despite the diligence of the party seeking the extension." *Id.*

Apple cannot show good cause with respect to patents asserted before the SAC. Plaintiffs asserted ten patents in the Complaint in January and added two patents in the First Amended Complaint ("FAC") in March. Dkt. 1; Dkt. 28. Apple agreed to the case schedule in the Rule 26(f) Report weeks **after** Plaintiffs filed the FAC. Dkt. 33. Plaintiffs also provided infringement contentions (based on public information) before the Court extended Plaintiffs' July 27 deadline. Dkt. 94-1, Ex. A. Thus, the Court should not extend Apple's deadline to provide invalidity contentions regarding any previously asserted patents.

As for the newly substituted patents, Plaintiffs streamlined the case and focused the general subject matter areas at issue by reducing the number of asserted patent families from four to three.  The new patents are all part of a patent family that was already at issue in this case.  Apple asserts, in conclusory fashion, that certain subject matter was not previously at issue.  Dkt. 94 at 2-3.  But Apple does not cite any specific claim limitations or make any attempt to show the subject matter was not previously at issue.  *See id.*  Indeed, Apple identifies subject matter that was already at issue in existing patents.  For example, previously asserted U.S. Patent No. 10,588,554 alone contains claim limitations directed towards the size of the monitoring device, touch screen displays, orientation changes, and various types of optical paths for at least four detectors.  *See* Ex. 2 at Claim 1, Claim 4, Claim 14.

While Plaintiffs do not believe any extension for Apple's invalidity contentions is necessary, Plaintiffs were willing to extend Apple's deadline for the ***newly asserted*** patents to avoid a dispute.  Powell Decl. ¶ 2.  Apple refused any such discussion.  Apple's demand that the Court also extend the deadline for previously asserted patents is baseless.  Thus, any extension should be limited to a 30-day extension as to the newly asserted patents only.

**B.**  **None of Apple's Arguments Justify Granting Its Application**

Apple's failure to show good cause alone is sufficient to deny Apple's application.   Apple also incorrectly argues the schedule is "prejudicial and unfair to Apple" for three reasons.  Dkt. 94 at 4-7.  None justify an extension or somehow excuse Apple's failure to show good cause.

First, Apple argues the SAC asserted new patents and new claims.  *Id.* at 5.  But Apple cites no specific claim limitations to support its assertion.  As addressed above, the SAC focused this case.  Apple's assertion that it is "not possible" for Apple to prepare its invalidity contentions equally lacks support.  Apple is currently the most valuable company in the entire world with a market

cap of $1.86 trillion and is represented by one of the largest law firms in the country with 1,400+ lawyers.[2]  Nothing suggests that Apple lacks the resources necessary to prepare invalidity contentions in six weeks.

Apple continues to spend an inordinate amount of time relitigating issues that the Court already decided.  For example, Apple raised the same issue regarding Section 2019.210 in the Rule 26(f) report, in its original motion for protective order, in its objections to Judge Early's order on its motion, in its *ex parte* application to stay Judge Early's order, at the July 10 hearing, and in its oppositions to Plaintiffs' *ex parte* applications.  *See* Dkt. 33; Dkt. 43-1; Dkt. 57-1; Dkt. 73; Dkt. 83, Ex. 1; Dkt. 85.  This Court repeatedly rejected Apple's arguments.  *See* Dkt. 92 ("This issue has been litigated multiple times, and Apple has not prevailed.").  If Apple's legal team is truly pressed for time, perhaps Apple should spend less time relitigating issues that it lost numerous times and more time preparing the merits of its invalidity contentions.

Second, Apple complains that it is "unfair" to force Apple to "serve its invalidity contentions *before* Plaintiffs' serve their infringement contentions." Dkt. 94 at 5 (emphasis in original).  Apple cites multiple cases discussing the typical default "staged" approach to contentions, but none are analogous to the facts here.  That staged approach was readily available to Apple.  However, the current case schedule is the natural consequence of Apple's repeated refusals to comply with the Court's Schedule and orders to produce its core technical documents.  Moreover, in opposing Plaintiffs' Renewed *Ex Parte* Application, Apple argued the Court should extend Apple's deadline for invalidity contentions if it extended Plaintiffs' deadline for infringement contentions. Apple even filed a "supplemental" brief addressing the SAC and requesting the

---

[2]   *See*   https://www.cnn.com/2020/08/04/investing/premarket-stocks-trading/index.html; https://www.gibsondunn.com/.

*identical* relief it seeks here.  *See* Dkt. 90 at 1 (arguing the SAC "necessitates that the parties cooperate in discussing a revised case schedule"), 2 (requesting that the Court "order the parties to meet and confer on a revised case schedule"). This Court granted Plaintiffs application without extending Apple's deadline. Apple cannot use its own self-help and recalcitrance in producing documents to obtain an extension.

Apple also argues it would be "unfair to require Apple to prepare its invalidity contentions on the asserted patents without receiving Plaintiffs' disclosure of asserted claims and its allegations regarding infringement."  Dkt. 94 at 6.   As Apple admits, however, Plaintiffs *already provided* their infringement contentions based on public information.  *Id.*  Plaintiffs did so because the Court had not ruled on Plaintiffs' Renewed *Ex Parte* Application before the deadline in the Scheduling Order.  Apple complains that Plaintiffs' *300-page* infringement contentions are not detailed enough because they rely on "published patent applications or web site[s]."  Dkt. 94 at 5.   But these contentions do not merely "parrot the claim language."  *See id.* at 6.  Plaintiffs' contentions are quite detailed, especially for being based on public information only.  Any supposed lack of additional detail is because Apple defiantly refused to produce *any* of its core technical documents.  Apple cannot produce only public information and then complain that Plaintiffs' infringement contentions are currently based on public information.[3]

Finally, Apple complains that the Court allowed Plaintiffs to seek *ex parte* relief if Apple's core technical document production is incomplete.

_____

[3] Apple complains that a technical glitch excluded claim charts for one patent. Dkt. 94 at 7.  Because Apple raised the issue *after* the Court's Order, Plaintiffs identified the asserted claims and said they would provide claim charts pursuant to the Order.  If the Court believes it is necessary, Plaintiffs will provide the claim charts they intended to provide on July 27 based on public information.

Dkt. 94 at 7.  If Apple had complied with the Court's clear order, Apple would have nothing to worry about.  Unfortunately, Apple's core technical document production remains woefully inadequate.

Apple previously argued its prior confidential "production" included extensive technical documentation "sufficient to show the operation of *all* of the accused features of the Apple Watch devices."  Dkt. 85 at 6 (emphasis in original).  At the time, Plaintiffs had no way to disprove Apple's argument because Apple attempted to impose a unilateral "ethical wall."  Now that the Court ordered Apple to remove its unilateral "wall," Plaintiffs reviewed the production and realized it contained only ***37 documents***, many of which were duplicates.  Apple did not produce any documents on numerous claim limitations.

Incredibly, despite this Court's statement that it expects "prompt and full compliance" by August 3, Apple ***failed to produce a single additional document*** by the deadline.  Apple made some source code available for inspection, but failed to produce all relevant code and appears to have intentionally limited its production.  Plaintiffs are again trying to obtain Apple's compliance informally.  But Plaintiffs are not optimistic that Apple will begin complying with this Court's orders.  Thus, Plaintiffs unfortunately expect to file another *ex parte* application to address the issue, as the Court's Order contemplated.  *See* Dkt. 92.  Regardless, Apple cannot rely on its own defiant failure to produce documents as a basis to extend its deadlines.

## C.   Apple Has Not Shown *Ex Parte* Relief is Appropriate

Apple's application should also be denied because Apple has also not shown that *ex parte* relief is appropriate.  As stated in the Initial Order for this case, *ex parte* applications are "***solely for extraordinary relief*** and should be used with discretion."  Dkt. 19 at 3 (citing *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995)).  Apple has the burden of

showing: (1) it would be irreparably prejudiced if its application is not granted, and (2) it was without fault in creating the putative crisis that it believes requires *ex parte* relief.  *Mission Power*, 883 F. Supp. at 492.  Apple cannot show either requirement.

Apple claims it will be "irreparably prejudiced" if it has to provide invalidity contentions weeks from now on September 7.  Dkt. 94 at 8.  As discussed above, however, Apple has not shown it is unable to complete its contentions by September 7.  Most of the asserted patents have been in this case for months.  The only new patents are from an existing patent family.

Moreover, Apple has repeatedly and emphatically argued—in this case—that the relief it now seeks is inappropriate.  *See* Dkt. 56 at 1 ("Using the *ex parte* process to alter the schedule, particularly when the deadline at issue is six weeks away, is inappropriate"), 4 ("Plaintiffs' use of the *ex parte* application process to request an extension of a deadline that is six weeks away is an abuse of process").  While Plaintiffs' earlier application was justified because Plaintiffs were trying to obtain Apple's core technical documents ***before*** serving infringement contentions, no such facts exist here.  As addressed above, Plaintiffs already provided infringement contentions (based on public information) on July 27.

Apple also argues that a regularly noticed motion could not be heard in time, but that is only because Apple delayed filing this application.  The parties met and conferred on Apple's proposed extension on July 31.  Powell Decl. ¶ 2.  Apple could have filed a motion on August 3 and set it for a hearing on August 31—before Apple's September 7 deadline to provide invalidity contentions.

Apple also cannot show it is "without fault" in bringing the application.  Plaintiffs told Apple they would be substituting patents on July 10—nearly ***four weeks ago***.  Powell Decl., Ex. 1.  As a courtesy, Plaintiffs told Apple on July 15 that Plaintiffs were likely to remove a specific patent family and that "[t]he

patents that we are currently anticipating adding are from other families already in the case." *Id.*  Plaintiffs also let Apple know that, as a result, Apple need not collect documents on the patent family that would likely be removed.  Far from objecting to this approach, Apple responded: "That is indeed very helpful.  Thanks." *Id.*

Moreover, Apple devotes much of its application to arguing how "unfair" it is that Plaintiffs will serve infringement contentions after Apple serves invalidity contentions.  As addressed above, that is ***entirely Apple's fault***.  Plaintiffs' deadline was extended due to Apple repeatedly defying this Court's order to produce core technical documents.  Apple cannot use the consequences of its own recalcitrance to justify extending its deadline.

## IV.  CONCLUSION

For all the reasons discussed above, the Court should deny Apple's *Ex Parte* Application.  If the Court grants any extension, it should grant a 30-day extension for Apple's invalidity contentions only as to U.S. Patent Nos. 10,624,565; 10,631,765; 10,702,194; 10,702,195; and 10,709,366.  If the Court is inclined to grant any further extension, Plaintiffs' respectfully request the Court first order full briefing so that Plaintiffs have a full and fair opportunity to respond to Apple on such a major change to the case schedule.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: __August 5, 2020__      By: */s/ Adam B. Powell*_____
Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Stephen W. Larson
Adam B. Powell

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories

-10-