**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

JOSHUA H. LERNER, SBN 220755
 jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
 mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
 bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
 bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
 brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
 isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
 akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

Attorneys for Defendant Apple Inc.

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE'S MOTION TO DISMISS THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' SECOND AMENDED COMPLAINT** <br><br> <u>Hearing</u> <br><br> Date:  October 5, 2020 <br> Time:  1:30 p.m. <br> Courtroom: 10C <br> Judge:  Hon. James V. Selna |

# TABLE OF CONTENTS

<u>Page</u>

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

III.  LEGAL STANDARD ......................................................................................... 3

IV.  PLAINTIFFS' CUTSA CLAIM SHOULD BE DISMISSED ........................... 3

    A.    Plaintiffs Still Fail to Meet the Standard for Describing Their Alleged Trade Secrets. ................................................................................ 3

        1.   Plaintiffs' Techniques and Strategies are Broad Categories with Immaterial Qualifiers Relating to the Field. ........................... 5

        2.   Plaintiffs do not Describe a Single Alleged Trade Secret in the Apple Watch or an Apple Patent Filing. ..................................... 9

        3.   Bates Numbers and File Names do Nothing to Save Plaintiffs' Claim. ................................................................................ 10

    B.    Plaintiffs Still Fail to Allege Misappropriation. ...................................... 12

        1.   Plaintiffs Fail to Plead that Apple Acquired, Used, or Disclosed Plaintiffs' Confidential Information. ................................ 13

        2.   Plaintiffs Still Fail to Allege Apple's Knowledge. ......................... 15

        3.   Plaintiffs Still Fail to Allege that Apple Induced a Breach. ........... 17

    C.    Plaintiffs Should Be Denied Leave to Amend Their CUTSA Claim. ...... 18

V.   CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abagninin v. AMVAC Chem. Corp.*,
  545 F.3d 733 (9th Cir. 2008) ...................................................................... 18

*Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs.*,
  2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) ................................. 4, 6, 7, 11

*Allen v. City of Beverly Hills*,
  911 F.2d 367 (9th Cir. 1990) ...................................................................... 18

*AlterG, Inc. v. Boost Treadmills LLC*,
  388 F. Supp. 3d 1133 (N.D. Cal. 2019) ........................................................ 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................ 3, 17, 18

*Autodesk, Inc. v. ZWCAD Software Co.*,
  2015 WL 2265479 (N.D. Cal. May 13, 2015) ............................................ 12

*Basalite Concrete Prod., LLC v.*
  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*,
  2013 WL 2156582 (E.D. Cal. May 17, 2013) ............................................ 19

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
  2018 WL 2298500 (N.D. Cal. May 21, 2018) .............................................. 6

*Bell Atl. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................ 3, 17, 18

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
  2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) ......................................... 5, 15

*Calendar Research LLC v. StubHub, Inc.*,
  2017 WL 10378336 (C.D. Cal. Aug. 16, 2017) ..................................... 14, 17

*Calsoft Labs, Inc. v. Panchumarthi*,
  2020 WL 512123 (N.D. Cal. Jan. 31, 2020) ................................................. 7

*Carr v. AutoNation Inc.*,
  2018 WL 288018 (E.D. Cal. Jan. 4, 2018) ................................................. 15

*Citcon USA, LLC v. RiverPay Inc.*,
  2018 WL 6813211 (N.D. Cal. Dec. 27, 2018) ........................................................ 4

*CleanFish, LLC v. Sims*,
  2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) ................................................ 6, 16

*Emazing Lights LLC v. De Oca*,
  2016 WL 3658945 (C.D. Cal. Jan. 7, 2016) ............................................... 6, 8

*Forman v. Davis*,
  371 U.S. 178 (1962) ...................................................................................... 18

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
  2016 WL 6601656 (C.D. Cal. July 25, 2016) ............................................. 18

*Invisible Dot, Inc. v. DeDecker*,
  2019 WL 1718621 (C.D. Cal. Feb. 6, 2019) .................................................. 4

*Kavanagh v. Tuller*,
  2017 WL 1496436 (S.D. Cal. Apr. 26, 2017) ................................................ 8

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*,
  701 F.2d 1276 (9th Cir. 1983) ..................................................................... 18

*MedioStream, Inc. v. Microsoft Corp.*,
  869 F. Supp. 2d 1095 (N.D. Cal. 2012) ................................................. 14, 16

*Menard v. CSX Transp., Inc.*,
  698 F.3d 40 (1st Cir. 2012) .......................................................................... 17

*Pellerin v. Honeywell International, Inc.*,
  877 F. Supp. 2d 983 (S.D. Cal. 2012) ..................................................... 14, 15

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970, 986 (9th Cir. 1999) ................................................................ 11

*Simonyan v. Ally Fin. Inc.*,
  2013 WL 45453 (C.D. Cal. Jan. 3, 2013) .................................................... 18

*Space Data Corp. v. X*,
  2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) ................................... 5, 6, 13, 14

*UAB "Planner 5D" v. Facebook, Inc.*,
  2019 WL 6219223 (N.D. Cal. Nov. 21, 2019) .............................................. 15

*Vendavo, Inc. v. Price f(x) AG*,
  2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ......................................................4, 9

*Veronica Foods Co. v. Ecklin*,
  2017 WL 2806706 (N.D. Cal. June 29, 2017).......................................................8, 9

*Vivendi SA v. T-Mobile USA Inc.*,
  586 F.3d 689 (9th Cir. 2009) ....................................................................................18

*Whyte v. Schlage Lock Co.*,
  101 Cal. App. 4th 1443 (2002) .................................................................................16

*Zora Analytics, LLC v. Sakhamuri*,
  2013 WL 12124612 (S.D. Cal. June 18, 2013) ........................................................16

**Statutes**

Cal. Civ. Code § 3426.1.............................................................................................12

**Other Authorities**

5 Fed. Prac. & Proc. Civ. § 1224 (3d ed.)..................................................................17

General Pleading Requirements,
  Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 8-B
  (Apr. 2020)...............................................................................................................17

# I.   **INTRODUCTION**

Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc.'s Second Amended Complaint ("SAC") confirms that Plaintiffs do not have a valid trade secret claim against Apple.  After seven months, three chances to plead a description of a single trade secret allegedly misappropriated by Apple, and an invitation from the Court to file their description under seal, Plaintiffs *still* fail to plead particular facts to support the weighty allegations that they made against Apple at the outset of this case—that Apple acquired Plaintiffs' trade secrets and incorporated those secrets in the Apple Watch and Apple's patent filings.

The SAC fails on two fronts:

*First*, Plaintiffs fail to describe any alleged trade secret with sufficient particularity.   Instead, Plaintiffs plead broad categories of information that are untethered to any alleged misappropriation and that are rife with catchall phrases that make it impossible to identify a tangible trade secret.  Plaintiffs' failure to describe the alleged trade secrets at this stage—seven months after filing the case and with leave to file under seal—is glaring.  If Plaintiffs had a valid claim, they should have had no problem identifying the alleged trade secrets that they allege appear in the Apple Watch and Apple patent filings, which are public.  Indeed, Plaintiffs allege that they could not have known about the alleged misappropriation until Apple's patent filings and Watch were public, but Plaintiffs do not describe a single secret in either patents or the Watch.

*Second*, Plaintiffs fail to plead misappropriation of any trade secret by Apple.  Plaintiffs do not allege sufficient facts to plausibly claim that Apple acquired, disclosed, or used any of the broad categories information Plaintiffs set out as comprising their purported trade secrets.  To the contrary, Plaintiffs fail to tie any of the broad categories of information to *any* alleged misappropriation by Apple, i.e., the incorporation of the alleged trade secrets in the Apple watch or in an Apple patent filing.  Instead, Plaintiffs' misappropriation allegations hinge on a former employee, Marcelo Lamego, who worked for Apple for less than a year more than six years ago.  Plaintiffs initially

insisted—contrary to California law—that Lamego not work in a broad field of technology.  Now, not only do Plaintiffs fail to describe any trade secrets allegedly disclosed or used by Lamego, but Plaintiffs also fail to allege facts plausibly establishing that Apple knew or had reason to know that Lamego had a duty to maintain the secrecy of the unidentified information he purportedly shared with Apple, that Lamego breached that duty, or that Apple induced him to do so.

After so many opportunities, it is apparent that Plaintiffs cannot plead a valid trade secret claim against Apple, and therefore their trade secret claim should be dismissed with prejudice.

## II.     **BACKGROUND**[1]

Plaintiffs filed their first of three complaints in this case against Apple on January 9, 2020.  Dkt. 1.  Apple moved to dismiss each of Plaintiffs' seventeen claims, including Plaintiffs' trade secret misappropriation claim.  Dkt. 16.  Plaintiffs initially opposed Apple's motion to dismiss (Dkt. 21), but then—just days before the Court's scheduled hearing on Apple's motion—Plaintiffs filed their First Amended Complaint ("FAC"), on March 25, 2020 (Dkt. 28).

On April 20, 2020, Apple moved to dismiss Plaintiffs' FAC.  Apple argued, among other things, that (1) Plaintiffs failed to describe their trade secrets with sufficient particularity (Dkt. No. 38-1 at 14–20), and (2) Plaintiffs failed to allege facts sufficient to support plausible misappropriation allegations (*id.* at 20–25).  Plaintiffs Opposed. Dkt. No. 48 at 4–15.  The Court agreed with Apple that Plaintiffs did not adequately plead a trade secret.  Dkt. No. 60 at 7.  On June 25, 2020, the Court granted Apple's motion, dismissed Plaintiffs' thirteenth cause of action for trade secret misappropriation, and permitted Plaintiffs 30 days to amend.  *Id.* at 8.  The Court permitted Plaintiffs to file their SAC under seal, thereby obviating any concern Plaintiffs could have about disclosing confidential information.  *Id.*  The Court did not reach Apple's arguments as

---

[1] The allegations in the Original Complaint, the FAC, and the SAC are treated as true for purposes of this motion only.

to Plaintiffs' misappropriation allegations. *Id.* at 3–8.

Plaintiffs filed an Application to File their SAC Under Seal on July 24, 2020, to which they appended a copy of their SAC. Dkt. Nos. 88–89. Plaintiffs' SAC changes little other than adding nine paragraphs of high level techniques and strategies. SAC ¶¶ 41–50; *compare* FAC ¶ 211, *with* SAC ¶¶ 39–50. Plaintiffs did not otherwise amend their SAC with respect to their trade secret misappropriation claim. *Compare* FAC ¶¶ 209–24, *with* SAC ¶¶ 228–42.

## III.   **LEGAL STANDARD**

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Dismissal is warranted where a complaint fails to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court is not "'bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Plaintiffs filed their SAC only as an exhibit to their July 24, 2020 Application to File their SAC Under Seal. Dkt. No. 89. Although Plaintiffs' SAC has not yet been docketed, Apple is proceeding with its motion to dismiss Plaintiffs' SAC as though it were filed on July 24, 2020. As the Court has held, this case needs to move forward, and Apple therefore moves to resolve the trade secret portion of the case as quickly as possible.

## IV.   **PLAINTIFFS' CUTSA CLAIM SHOULD BE DISMISSED**

### A.   **Plaintiffs Still Fail to Meet the Standard for Describing Their Alleged Trade Secrets.**

This Court set out the standard that Plaintiffs must meet to plead a trade secret

claim in its June 25, 2020 Order granting Apple's motion to dismiss: "To adequately allege the existence of a trade secret, the plaintiff must describe the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." Dkt. No. 60 at 7 (quoting *Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs.*, 2019 WL 4137618, at *3 (C.D. Cal. Mar. 27, 2019)). "Although the plaintiff need not define every minute detail, '[t]he Ninth Circuit has rejected the use of catchall language, holding that such language is insufficiently specific because it does not clearly refer to tangible trade secret material.'" *Id.* (quoting *Acrisure*, 2019 WL 4137618, at *3) (internal quotation marks omitted). "The pleadings 'must have enough specificity to provide both the Court and defendants with notice of the boundaries of this case.'" *Id.* (quoting *Citcon USA, LLC v. RiverPay Inc.*, 2018 WL 6813211, at *4 (N.D. Cal. Dec. 27, 2018)). "A 'laundry list of items . . . does not meaningfully define the trade secrets at issue.'" *Id.* (quoting *Invisible Dot, Inc. v. DeDecker*, 2019 WL 1718621, at *5 (C.D. Cal. Feb. 6, 2019)).

Furthermore, while it should be obvious, Plaintiffs cannot merely list categories of information that could be secret. Rather, Plaintiffs must set out an adequate description of the trade secrets that Plaintiffs allege were misappropriated by Apple. *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (plaintiff cannot "set out its purported trade secrets in broad, categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets [instead of a] listing of particular trade secrets [plaintiff] has a basis to believe *actually were* misappropriated here" (emphasis added)).

Finally, it is important that the Court offered Plaintiffs the opportunity to plead their alleged trade secrets under seal, thereby removing any concern on the part of Plaintiffs that their purported secrets would be publicly disclosed if described with particularity. Dkt. No. 60 at 8. Under these circumstances, Plaintiffs have no excuse for failing for the *third* time to clearly specify the information they allegedly consider to

be trade secrets. *Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015) ("Given that the pleadings have been filed under seal, Plaintiffs should be able to more clearly specify the information they consider to be a trade secret.").

Plaintiffs' SAC yet again fails to "describe" their alleged trade secrets "'with sufficient particularity.'" Dkt. No. 60 at 7 (citation omitted). While Plaintiffs have lengthened their trade secret description, it is comprised of nothing more than broad categories of knowledge (i.e., "techniques" and "strategies") of those skilled in the trade that are related to non-invasive physiological monitoring of patients. Plaintiffs still do not provide particular facts that put Apple on notice of any secrets that it allegedly acquired or incorporated into its products or patent filings.

The first paragraph of Plaintiffs' description—paragraph 39 of the SAC—remains exactly the same as FAC paragraph 211, which the Court already found inadequate in dismissing the FAC. *Compare* SAC ¶ 39, *with* FAC ¶ 211; Dkt. No. 60 at 7–8. Plaintiffs' new language—in paragraphs 41 to 50 of the SAC—fares no better. Plaintiffs describe *without particularity* five broad categories of techniques and strategies: ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Each section is merely "a high-level overview of . . . purported trade secrets" that does "not satisfy the Rule 8 pleading requirements, as they do not even give the Court or Defendants notice of the boundaries of this case." *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017). The nine new paragraphs in the SAC purportedly describing Plaintiffs' trade secrets suffer from at least three fatal flaws.

### 1.  Plaintiffs' Techniques and Strategies are Broad Categories with Immaterial Qualifiers Relating to the Field.

One need only look at the first few lines of the new paragraphs in the SAC to identify a basic flaw: Every one of Plaintiffs' five categories of information relies on

"'catchall'" phrasing that renders the descriptions useless for identifying the bounds of Plaintiffs' claims. *Acrisure*, 2019 WL 4137618, at *3 (citation omitted). Indeed, each section follows the same formula: (a) a highly general statement of a technique or strategy (e.g., ████████████████, plus (b) the phrase "information regarding the value and importance of such" technique or strategy, plus (c) a non-exclusive, non-exhaustive, catchall phase—"including," plus (d) a list of non-exclusive examples of general categories related to the field. Overall, Plaintiffs use the term "including" *fourteen times* within the 10 paragraphs purportedly "identify[ing] the specific information that [they] contend is a trade secret." This Court has specifically rejected such attempts at thoroughness because they "yield[] meaninglessness" and have an "unlimited reach" as to what information could potentially be labeled a trade secret. *Emazing Lights LLC v. De Oca*, 2016 WL 3658945, at *2 (C.D. Cal. Jan. 7, 2016); *see also Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) (allegations of "'design review templates,'" "'fluidics design files,'" or "'source code files'" lacked particularity, especially when "preceded by the phrases 'such files included' and 'such as'" (citations omitted)). By applying this formulaic structure with non-exclusive language, Plaintiffs' trade secret descriptions are so open-ended that they fail to identify the alleged trade secrets with particularity.

Furthermore, even if Plaintiffs had not relied on catchall phrases, Plaintiffs must not only describe a trade secret with enough particularity to separate it from general knowledge, but from general knowledge *in the trade and* from *special* knowledge of those persons skilled in the trade. *Acrisure*, 2019 WL 4137618, at *3. Allegations that consist of "broad categories of information that would be applicable to any business" and that are "indistinguishable from matters of general knowledge within [Plaintiffs'] industry" are insufficient. *CleanFish, LLC v. Sims*, 2020 WL 1274991, at *9 (N.D. Cal. Mar. 17, 2020). Such allegations are too high-level to give the Court or Apple notice of the boundaries of the alleged trade secret. *Id.*

In *Space Data*, for example, the plaintiff alleged misappropriation relating to a

"research and development project with the mission of providing wireless services using high-altitude balloons placed in the stratosphere." 2017 WL 5013363, at *1. The court dismissed the plaintiff's trade secret misappropriation claims regarding "'data on the environment in the stratosphere'" and "'data on the propagation of radio signals from stratospheric balloon-based transceivers,'" because they simply tied the "'data'" categories of information to the general subject matter of the action. *Id.* (citation omitted). Similarly, in *Calsoft Labs, Inc. v. Panchumarthi*, "'proprietary training data and programs valuable in the field of technology consulting and staffing'" were "far too vague" to state a claim. 2020 WL 512123, at *7 (N.D. Cal. Jan. 31, 2020) (citation omitted). Plaintiffs likewise provide only broad techniques that merely relate to topics in the field, rather than any specific detail about the purported trade secrets themselves. Apple is entitled to that missing information under the basic rules of pleading; if Plaintiffs do not have the information to provide, their misappropriation claim should be dismissed.

Plaintiffs' ██████████████████████████████ description is just as flawed as their "techniques" descriptions: Plaintiffs merely include broad categories "of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade." *Acrisure*, 2019 WL 4137618, at *3. The statements bulleted in paragraph 47 boil down to ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ SAC ¶ 47. These broad categories are not trade secrets. *See, e.g.*, *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144–46 (N.D. Cal. 2019) (dismissing trade secret claims based on descriptions such as "'[n]umerous learnings from AlterG's Low-Cost Platform Project that explored market alternatives that included positive and negative learnings of low cost mechanical unweighted systems, air pressure systems, and Differential Air Pressure systems.'" (citation omitted)). These are obvious, well-known categories of information for the general public, let alone health-related device companies, and they do not provide Apple any further information about the contours of

1   Plaintiffs' trade secret claim.  In particular, the first three bulleted statements concerning

2   ███████████████████████████████████ (SAC ¶ 47), are not trade

3   secrets—information as to ██████████████████████████ is easily

4   ascertainable.  *See Kavanagh v. Tuller*, 2017 WL 1496436, at *4 (S.D. Cal. Apr. 26,

5   2017) (disclosure "to the public through marketing and sales of [a] product" is "'fatal to

6   the existence of a trade secret.'" (citation omitted)).

7          Plaintiffs' ████████████████████ disclosure likewise includes

8   only broad categories of information, with no delineation of the purported secrets.  SAC

9   ¶ 49.  *Emazing Lights*, 2016 WL 3658945, at *2 (broad categories can make disclosures

10  "thorough[]" to the point of "meaninglessness," because "[a]ny piece of information

11  could potentially be labeled as a trade secret under this definition").  For example,

12  Plaintiffs refer to ████████████████████████████████████

13  █████████████████████████████████████████████████

14  █████████ as a purported trade secret.  This is particularly troubling because Plaintiffs

15  have publicized their ██████████████ and frequently touted their ██████████

16  ██████████  SAC ¶ 50.  Publicly available information cannot be trade secrets.  *E.g.*,

17  *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *13 (N.D. Cal. June 29, 2017)

18  ("'[o]nce the information is in the public domain and the element of secrecy is gone, the

19  trade secret is extinguished'" (citation omitted)).  Plaintiffs issued several news alerts—

20  contemporaneous with the documents Plaintiffs cite in the SAC, and prior to the alleged

21  misappropriation of trade secrets—regarding Plaintiffs' ██████████████████

22  ████████████████████████████████████  *See, e.g.*, Masimo,

23  "New Clinical Studies Presented at the American Society of Anesthesiologists Annual

24  Meeting Show Benefits of Masimo Noninvasive Technologies: SpHb, PVI, RRa, and

25  SEDLine," (Oct. 11, 2011), *available at* https://investor.masimo.com/news/news-

26  details/2011/New-Clinical-Studies-Presented-at-the-American-Society-of-

27  Anesthesiologists-Annual-Meeting-Show-Benefits-of-Masimo-Noninvasive-

28  Technologies-SpHb-PVI-RRa-and-SEDLine/default.aspx (touting Masimo's "over 25

new clinical studies evaluating Masimo noninvasive patient monitoring technologies," including relationships with "Researchers Steven Frank, M.D., James Rothschild, M.D., and John Ulatowski, M.D. at Johns Hopkins Hospital in Maryland," among many others).

The Court need not determine whether this information is *actually* generally known to the public because these vague assertions—that ███████████████ are somehow secret, while Plaintiffs advertised extensively at least certain relationships—on their own highlight why the description of this category of trade secrets is insufficient. *Veronica Foods*, 2017 WL 2806706, at *7 (dismissing trade secret claim for lack of sufficient particularity regarding customer information, where plaintiff defined "'Customer Information'" in its opposition including its "'customer list; its contacts at the customer stores; customers' ordering histories; information regarding customer needs, characteristics, and preferences; billing records; and information on cost, prices, and profit margins.'" (citation omitted)).

## 2. Plaintiffs do not Describe a Single Alleged Trade Secret in the Apple Watch or an Apple Patent Filing.

An equally fundamental flaw is that Plaintiffs have not pled with particularity *any* of the secrets that allegedly were misappropriated. The test here is not whether Plaintiffs can simply list categories of information that, in a vacuum, could be trade secrets. Rather, Plaintiffs must plead with particularity the secrets allegedly misappropriated *in this case*. *Vendavo*, 2018 WL 1456697, at *4. Plaintiffs completely fail that test. Plaintiffs allege on information and belief that former employees, specifically Marcelo Lamego, disclosed Confidential Information to Apple (SAC ¶ 233), and that Apple used and disclosed the Confidential Information "into Defendants Products and by filing patent applications containing Plaintiffs' Confidential information . . . " (*id.* ¶ 236). But not a single one of the five categories of information set out by Plaintiffs in paragraphs 41 through 50 of the SAC is tied to either the Apple Watch or an Apple patent filing. The SAC does not describe *any* Confidential information *in the Apple Watch*. The same

goes for the alleged incorporation of Confidential Information in Apple's patent filings: The SAC does not describe a single patent filing containing Plaintiffs' Confidential Information let alone by page and line number.

Instead of describing the trade secrets allegedly incorporated in the Apple Watch and Apple patent filings (i.e., the trade secrets allegedly misappropriated *in this case*), Plaintiffs have merely set out broad categories of information that *might* contain trade secret information.  The Court should dismiss Plaintiffs' trade secret claim on this basis as well.

### 3. Bates Numbers and File Names do Nothing to Save Plaintiffs' Claim.

At the end of each of the broad categories of information, Plaintiffs provide a list of documents by bates number and, in some instances, source code by file name. Plaintiffs do not quote or describe any portions of those documents; Plaintiffs merely allege that "documents that *relate* to the trade secrets described in the preceding paragraph include . . . ." certain bates-numbered documents.  *See, e.g.*, SAC ¶ 48 (emphasis added).  Plaintiffs do not allege that the documents are trade secrets or even that there is a trade secret within the documents—the documents, in Plaintiffs' words, merely "relate" to the five broad categories of information set out in Plaintiffs' SAC. This Court already rejected such an approach, explaining in its July 25, 2020 Order that "Plaintiffs' broad references to types of information like 'product plans,' 'personnel information,' 'product briefs,' and 'technical drawings,' without reference to specific plans, briefs, or drawings, fails to plead a trade secret in a manner that gives Apple fair notice of the claim."  Dkt. No. 60 at 8.  Pointing to volumes of documents that may "relate" to Plaintiffs' alleged trade secrets (*e.g.*, SAC ¶ 48) does nothing to "give[] Apple fair notice of the claim."  *Id.*

Plaintiffs' laundry lists of Bates numbers are nothing more than smoke and mirrors.  Plaintiffs' lists of Bates numbers and file names are not relevant to the sufficiency of the description of their trade secrets, and are not appropriate for evaluation

here, including because they are not attached to the SAC and Plaintiffs do not allege their contents in the SAC, do not describe their relevance, and do not provide sufficient context for Apple to understand their authenticity or relationship to the misappropriation claim. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *as amended* (Aug. 4, 1999) (review is generally limited to the contents of the complaint, but courts may consider documents "'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" (citation omitted)); *Acrisure*, 2019 WL 4137618, at *3 ("plaintiff must describe the trade secret 'with sufficient particularity . . . to permit the defendant to ascertain at least the boundaries within which the secret lies'" (citation omitted)).

Indeed, upon review of the documents, it is not clear that all of the documents even relate to the categories of information Plaintiffs describe, or that they are even relevant to Plaintiffs' misappropriation claim. For example, Plaintiffs allege that Apple contacted Masimo regarding a potential collaboration in 2013 (SAC ¶ 19) and that Lamego joined Apple in 2014 (*id.* ¶ 24), but certain documents, including ███████████████████████████████████████████ have a © stamp of 2019, and ██████████████ has a stamp of © 2020. While there are other dates listed in the document from 2013 to 2014, it is unclear how these documents relate to Plaintiffs' claim that they were subject to misappropriation many years ago, when their © stamp suggests otherwise; at this point, their authenticity is even questionable. In addition, other documents include indecipherable, handwritten notebooks, e.g., ██████████████ that Plaintiffs make no effort to connect to the actual statements in their pleading or explain their relevance with specificity.

Most egregiously, Plaintiffs point to "source code" files (SAC ¶ 42), but provide no other information that would allow Apple to identify to which purported trade secrets within the broad category of ████████████████ the files relate or to understand how those files define the bounds of their purported trade secrets. Without

more, a list of seemingly random file names does nothing to support the description required for an adequate pleading; instead, the list amounts to the same broad description that this Court has already rejected: "source code." Dkt. No. 60 at 7–8; *cf. Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015) (denying motion to dismiss where source code trade secret was described as "source code which comprises AutoCAD 2007 and 2008 . . . including those portions of code that underlie the commands, interfaces and program files associated with the dozens of specific features which were wrongfully acquired and used in Defendants' ZWCAD+ 2012 and 2014 programs."). Specificity about these source code files is required.

In sum, Plaintiffs continue to list categories "without reference to specific plans, briefs, or drawings . . . *in a manner that gives Apple fair notice of the claim*." Dkt. No. 60 at 8 (emphasis added).

## B.     Plaintiffs Still Fail to Allege Misappropriation.

To allege misappropriation by "[a]cqui[sition]," Plaintiffs must allege that Apple acquired their trade secret(s) and knew or had reason to know that the trade secret was acquired by "improper means." Cal. Civ. Code § 3426.1(b)(1). "Improper means" includes "breach or inducement of a breach of a duty to maintain secrecy." *Id*. § 3426.1(a). To allege misappropriation by "[d]isclosure or use," Plaintiffs must allege that Apple used or disclosed their alleged trade secrets without consent, and that either Apple "[u]sed improper means" to acquire those secrets or knew or should have known that its knowledge was "[d]erived from . . . a person who owed a duty to [Plaintiffs] to maintain its secrecy or limit its use." *Id*. § 3426.1(b)(2). As Plaintiffs explained in their opposition to Apple's Motion to Dismiss Plaintiffs' FAC, Plaintiffs' theories of misappropriation are that (1) Apple acquired information by improper means because Lamego breached his duty to maintain secrecy on Apple's behalf; (2) Apple acquired information by improper means because Apple induced Lamego to breach his duty to maintain secrecy; (3) Apple used and disclosed information it acquired by improper means; or (4) Apple used and disclosed information it derived from Lamego, who had a

duty to maintain its secrecy. *See* Dkt. No. 48 at 12, 14 (citing FAC ¶¶ 216–18). Plaintiffs did not amend this aspect of their pleading—each of these theories is *still* not supported by alleged facts. *Compare* FAC ¶¶ 209–24, *with* SAC ¶¶ 228–42.

### 1. Plaintiffs Fail to Plead that Apple Acquired, Used, or Disclosed Plaintiffs' Confidential Information.

As set forth above, Plaintiffs do not describe with particularity any of the alleged secrets relevant to this case—namely the trade secrets that Plaintiffs claim Apple acquired and incorporated in the Apple Watch and Apple patent filings. Even if this Court finds that Plaintiffs sufficiently described their trade secrets, it should dismiss Plaintiffs' thirteenth cause of action based on Plaintiffs' failure to allege sufficient facts to plausibly claim that Apple acquired, disclosed, or used those specific trade secrets. This failing is particularly egregious because Plaintiffs have been alleging for *seven months* that Apple incorporated Plaintiffs' Confidential Information in the Apple Watch and Apple's patent filings. Dkt. No. 1 ¶¶ 179–91. Furthermore, Plaintiffs have evaded the statute of limitations on the basis that the misappropriation could not have been identified until Apple's patent filings and the Apple Watch *were public*. Dkt. No. 60 at 6 (citing FAC ¶¶ 25, 219–20); *see also, e.g.*, SAC ¶ 237. Again, if Plaintiffs have a basis to plead that Apple misappropriated any of their trade secrets, Plaintiffs should have been able to identify their alleged secrets in the Apple Watch and in Apple's *public* patent filings.

Plaintiffs allege, on information and belief, that Apple "acquired Plaintiffs' trade secrets" (SAC ¶ 234), and "used and disclosed Plaintiffs' Confidential Information" (*id.* ¶ 235), "at least by incorporating it into [Apple's] products and by filing patent applications containing Plaintiffs' Confidential Information, without Plaintiffs' express or implied consent" (*id.* ¶ 236). These conclusory assertions are not supported by adequate factual allegations and fail to provide a reasonable basis for this Court to infer that Apple improperly acquired, used, or disclosed Plaintiffs' Confidential Information. *Space Data*, 2017 WL 5013363, at *2. Plaintiffs' SAC alleges certain "specific trade

secrets" (*see* SAC ¶¶ 40–50), but Plaintiffs make no attempt to show whether or how Apple acquired them or incorporated them into Apple's products or patent applications.

With respect to acquisition, Plaintiffs fail to allege that, even if Apple acquired Plaintiffs' information, Apple acquired Plaintiffs' Confidential Information. They certainly fail to allege that Apple acquired any of Plaintiffs' "specific trade secrets" (*id.* ¶¶ 40–50). Plaintiffs' acquisition allegations are nearly identical to those found to be insufficient in *Pellerin v. Honeywell International, Inc.*, 877 F. Supp. 2d 983 (S.D. Cal. 2012). In *Pellerin*, the counterclaim plaintiff alleged that (1) a former employee was "allegedly exposed to trade secrets and confidential information," (2) the former employee signed an employment contract and nondisclosure agreement prohibiting disclosure of that confidential information, and (3) the counterclaim plaintiff sent a warning letter to the accused employer (counterclaim defendant). *Id.* at 986–87. Concluding that the counterclaim plaintiff did "not allege any facts" or "circumstantial evidence" in support of the legal conclusion that the accused employer acquired any trade secrets, the Court in *Pellerin* dismissed the party's trade secret claim. *Id.* at 989–90.

With respect to use and disclosure, Plaintiffs do not point to *anything* in the Apple Watch that uses any *secret* ███████████████████████████████████ ████████████████████████████████████████████████████████████ SAC ¶¶ 235–36. Plaintiffs "need not be clairvoyant and allege exactly how [Apple] is improperly using its trade secrets" in its Apple Watch, but "the current allegations are insufficient" insofar as Plaintiffs fail to identify anything at all in the Apple Watch that incorporates Plaintiffs' alleged trade secrets. *Space Data*, 2017 WL 5013363, at *2; *see also MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1113–14 (N.D. Cal. 2012). Plaintiffs' failure to allege any facts with respect to Apple's patent applications is equally inexcusable. Apple's patent applications are publicly available and thus this information *is* "in the knowledge of the pleading party." *Cf. Calendar Research LLC v. StubHub, Inc.*, 2017 WL 10378336, at *4 (C.D. Cal. Aug. 16, 2017). Furthermore,

Plaintiffs should be able to more clearly specify all of this information because the Court allowed Plaintiffs to file the SAC under seal. *Bladeroom*, 2015 WL 8028294, at *3. If there were a valid trade secret claim here, Plaintiffs would have identified by line and page number in their pleading where their purported trade secrets appear in Apple's patents or applications. This is the third time they have failed to do so.

Plaintiffs fail to allege any facts sufficient to support their misappropriation allegations, and for this reason too, their trade secret claim fails. *Pellerin*, 877 F. Supp. 2d at 989.

### 2.     Plaintiffs Still Fail to Allege Apple's Knowledge.

Plaintiffs still fail to allege facts plausibly establishing that Apple knew or had reason to know that Lamego had a duty to maintain the secrecy of the *specific* information purportedly shared with Apple, that Lamego breached that duty, or that Apple induced him to do so. "'Alleging mere possession of trade secrets is not enough.'" *Pellerin*, 877 F. Supp. 2d at 989 (citation omitted). "'An acquirer is not liable under the CUTSA unless he knew or had reason to know that the trade secret was improperly disclosed.'" *Carr v. AutoNation Inc.*, 2018 WL 288018, at *2 (E.D. Cal. Jan. 4, 2018) (internal brackets and quotation marks omitted) (citation omitted); *see also UAB "Planner 5D" v. Facebook, Inc.*, 2019 WL 6219223, at *11 (N.D. Cal. Nov. 21, 2019) (granting motion to dismiss where plaintiff only "conclusorily alleges that Facebook knew or should have kn[own] but does not plausibly allege facts to support that contention").

Plaintiffs allege that Apple "knew" that "Lamego was the [CTO] of Cercacor and a Research Scientist at Masimo" and that "Plaintiffs considered the information confidential by virtue of [Apple's] prior relationship with Plaintiffs." SAC ¶ 234. These allegations do not support a plausible inference that Apple knew or had reason to know that Lamego had a duty to maintain confidentiality of the *specific* information purportedly shared with Apple, or that Apple knew or had reason to know that specific information was confidential. *See id.* ¶¶ 233–36. Without such knowledge, Apple could

not have any reason to know that Lamego breached his duty to maintain secrecy or that Apple had induced him to do so. *E.g.*, *CleanFish*, 2020 WL 1274991, at *10 ("Plaintiff does not allege any factual basis to support the conclusion that [] Defendants knew that the information [the former employee] provided . . . was actually Plaintiff's [or] knew that it was protectable . . ."); *MedioStream*, 869 F. Supp. 2d at 1114 (dismissing trade secrets claims because plaintiff did not sufficiently allege that defendant, which had received technology from a third party under contract with plaintiff, knew the third party was not authorized to provide that technology).

Plaintiffs also allege that (1) Apple "knew" "Lamego was under a duty to maintain the secrecy of the information he obtained from Plaintiffs" under his "employer-employee relationship, fiduciary relationship, and Lamego's employment agreements"; and (2) Apple received a letter explaining that Lamego possessed confidential information and asking Apple not to use it.  SAC ¶ 234.  These allegations concerning Lamego's employment agreements do not support a plausible inference that Apple knew or had reason to know which *specific* information Lamego purportedly had a duty to maintain its secrecy.  *See Zora Analytics, LLC v. Sakhamuri*, 2013 WL 12124612, at *4 (S.D. Cal. June 18, 2013) (concluding claim not adequately pleaded because the agreement "may or may not have covered the trade secret at issue").

Plaintiffs' reliance on the January 24, 2014 letter to Apple is particularly problematic.  While Plaintiffs claim that Apple should have honored the letter, the letter violates California law.  Without identifying any specific trade secrets, Plaintiffs asserted that Lamego had been exposed to Plaintiffs' alleged trade secrets, and asked Apple to "'employ Mr. Lamego in an area that does not involve healthcare technology, including mobile health applications and the measurement of physiological information.'"  SAC ¶ 23.  But California law has long rejected the premise that a former employer may control an employee's choice of work based only on the notion that the employee will "inevitably disclose" what they know.  *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1462 (2002) ("We agree the doctrine of inevitable disclosure

'creates a de facto covenant not to compete' and 'runs[s] counter to the strong public policy in California favoring employee mobility.'").  In sum, the anti-competitive letter, which like Plaintiffs' SAC does not reference any specific trade secrets, is not a basis for alleging knowledge of misappropriation by Apple.

Thus, because Plaintiffs do not allege sufficient facts to infer that Apple knew or had reason to know that Lamego had a duty to maintain the secrecy of the *specific* information purportedly shared with Apple, Lamego breached that duty, or that Apple induced him to do so, Plaintiffs' allegations do not support a plausible inference of misappropriation.

### 3.    Plaintiffs Still Fail to Allege that Apple Induced a Breach.

Plaintiffs allege acquisition by improper means because Apple induced Lamego to breach his duty to maintain secrecy.  The SAC includes only the single conclusory statement that "Defendant induced Lamego to disclose Plaintiffs' Confidential Information."  SAC ¶ 234.  Nothing more.  Plaintiffs still allege absolutely no facts describing how Apple purportedly induced such a breach.  Plaintiffs contend that they are not required to allege "precisely what Apple did to induce a breach" (Dkt. No. 48 at 13), and that they need only plead the allegation "on information and belief" because the information "'is not presumptively in the knowledge of the pleading party'" (*id.* (quoting *Calendar Research*, 2017 WL 10378336, at *4)).  But *Calendar Research* did not create an exception to the pleading rule established in *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, and it does not give free license for a trade secret plaintiff to engage in unbridled speculation.  *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 (1st Cir. 2012) ("'Information and belief' does not mean pure speculation.").

An allegation pleaded "on information and belief" must "still contain some factual content; conclusory allegations . . . will not suffice."  General Pleading Requirements, Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 8-B (Apr. 2020); *see also* 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed.) (pleading on "information and belief" requires plaintiff to have "sufficient data to justify interposing an allegation on the subject").  The

Ninth Circuit has rejected allegations based "upon information and belief" where no further facts were alleged. *See Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009); *see also Simonyan v. Ally Fin. Inc.*, 2013 WL 45453, at *2 (C.D. Cal. Jan. 3, 2013) (allegations "based on 'information and belief' and contain[ing] nothing more than a rote recitation of the required elements of [the] claim. . . . fall well short of the requirements set forth in *Iqbal*").

Accordingly, because Plaintiffs still have not alleged any facts underlying their inducement conclusion in the SAC, their "bare" conclusions are insufficient under *Twombly* and *Iqbal*.

## C.     Plaintiffs Should Be Denied Leave to Amend Their CUTSA Claim.

A court granting a motion to dismiss a complaint must also decide whether to grant leave to amend.  Although this court may grant leave to amend when justice so requires, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).  In determining whether to grant leave to amend, the Court considers factors such as "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Forman v. Davis*, 371 U.S. 178, 182 (1962). "[F]utile amendments should not be permitted." *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983).  And "[r]epeated failure to cure deficiencies by previous amendment" is reason enough to deny leave to amend. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

Here, after seven months, three chances to plead a plausible trade secret claim, and an invitation from the Court to file their trade secret descriptions under seal, Plaintiffs *still* fail to plead sufficient facts to support their allegations against Apple.  If Plaintiffs have a basis to plead that Apple misappropriated any of their trade secrets, Plaintiffs would have done so by now—allowing further amendment would be futile. *GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, 2016 WL 6601656, at

*8 (C.D. Cal. July 25, 2016) ("Because GeoData has now had three opportunities to state a claim . . . and has failed to do so, the Court concludes that further amendment would be futile and dismisses the [] claim with prejudice."); *Basalite Concrete Prod., LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 2013 WL 2156582, at *9 (E.D. Cal. May 17, 2013), *aff'd*, 615 F. App'x 894 (9th Cir. 2015) ("Because the court has already permitted plaintiffs to amend their pleadings and it appears that plaintiffs are unable to state a viable claim against defendants, all claims will be dismissed with prejudice and without leave to amend").   Further amendment would also cause delay and undue prejudice to Apple.   Plaintiffs' trade secret claim should be dismissed without leave to amend.

## V.   **CONCLUSION**

Apple respectfully requests that the Court dismiss Plaintiffs' Thirteenth Cause of Action for trade secret misappropriation with prejudice.

Dated:  August 14, 2020

Respectfully submitted,

JOSHUA H. LERNER
H. MARK LYON
BRIAN M. BUROKER
BRIAN A. ROSENTHAL
ILISSA SAMPLIN
ANGELIQUE KAOUNIS
BRIAN K. ANDREA
GIBSON, DUNN & CRUTCHER LLP


By: */s/ Joshua H. Lerner*
     Joshua H. Lerner

*Attorneys for Defendant Apple Inc.*