Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404 Facsimile: (949) 760-9502

Adam B. Powell (Bar No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000 Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:   September 14, 2020<br>Time:   1:30 p.m.<br>Ctrm:   10C<br>Judge:  Hon. James V. Selna |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................ 1

       A.    Plaintiffs' Proprietary Technology ............................................ 1

       B.    Apple's Efforts to Obtain Plaintiffs' Trade Secrets .................. 3

       C.    Apple's Misappropriation of Trade Secrets ............................. 4

       D.    Apple's Refusal To Cooperate Necessitated This Motion ........ 11

III.   ARGUMENT ..................................................................................... 11

       A.    Plaintiffs are Likely to Succeed on the Merits ......................... 11

             1.    Plaintiffs Are Likely To Show the Existence of a Trade
                   Secret ................................................................................ 12

                   a.    Plaintiffs' Trade Secrets are Valuable and Not
                         Generally Known ..................................................... 12

                   b.    Plaintiffs Took Reasonable Steps to Protect The
                         Confidentiality Of Their Trade Secrets ................. 13

             2.    Plaintiffs Are Likely To Prove Misappropriation .............. 14

                   a.    Apple Improperly Acquired Plaintiffs' Trade
                         Secrets ..................................................................... 14

                   b.    Apple Improperly Used and Disclosed Plaintiffs'
                         Trade Secrets .......................................................... 15

       B.    Plaintiffs Will Suffer Irreparable Harm ................................... 18

       C.    The Balance of Hardships Weigh Heavily in Plaintiffs' Favor ... 18

       D.    A Preliminary Injunction is in the Public Interest ................... 19

       E.    No Security Is Necessary .......................................................... 19

IV. CONCLUSION ................................................................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page No(s).**

*All. for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ..............................................................11

*Codelocks, Inc. v. Keyincode, LLC*,
  2018 WL 3326691 (C.D. Cal. May 29, 2018) ........................................20

*DVD Copy Control Ass'n, Inc. v. Bunner*,
  31 Cal. 4th 864 (2003) ...........................................................................19

*Extreme Reach, Inc. v. Spotgenie Partners, LLC*,
  2013 WL 12081182 (C.D. Cal. Nov. 22, 2013) ...............................17, 20

*Gable-Leigh, Inc. v. N. Am. Miss*,
  2001 WL 521695 (C.D. Cal. Apr. 13, 2001) ..........................................19

*Imi-Tech Corp. v. Gagliani*,
  691 F. Supp. 214 (S.D. Cal. 1986) .........................................................13

*Johnson v. Couturier*,
  572 F.3d 1067 (9th Cir. 2009) ...............................................................19

*Language Line Servs., Inc. v. Language Servs. Assocs., LLC*,
  2010 WL 2764714 (N.D. Cal. July 13, 2010) ...................................17, 18

*MAI Sys. Corp. v. Peak Computer, Inc.*,
  991 F.2d 511 (9th Cir. 1993) ............................................................13, 14

*Mallinckrodt, Inc. v. Masimo Corp.*,
  147 Fed. App'x 158 (Fed. Cir. 2005) ......................................................2

*Masimo Corp. v. Philips Elec. N. Am. Corp.*,
  2015 WL 2379485 (D. Del. May 18, 2015) .............................................2

*Verigy US, Inc. v. Mayder*,
  2008 WL 564634 (N.D. Cal. Feb. 29, 2008) ..........................................13

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008).....................................................................................11

# OTHER AUTHORITIES

35 U.S.C § 122...............................................................................................18

Cal. Civ. Code § 3426....................................................................................12

Cal. Civ. Code §§ 3426.1................................................................14, 15, 16

California Uniform Trade Secret Act ..............................................................12

1

**TABLE OF AUTHORITIES**
**(Cont'd)**

2

3
                                                                                    **Page No(s).**

4
Federal Rule of Civil Procedure 65 ................................................................................19

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.  INTRODUCTION

Plaintiffs request this Court's assistance to preserve the status quo and prevent Apple from further disclosing Plaintiffs' trade secrets.  Apple filed an unknown number of patent applications naming Plaintiffs' former employees as inventors.  Some of those applications contain trade secrets that Apple unlawfully obtained from Plaintiffs.  Apple kept the applications secret for years by asking the Patent Office not to publish the applications until they issue as patents.

Plaintiffs learned of Apple's misappropriation years later when the applications published as patents.  In an attempt to prevent Apple from publishing additional trade secrets, Plaintiffs asked Apple to allow Plaintiffs' counsel to review any similar applications before they publish.  Apple refused.  Apple would not even disclose if it is currently prosecuting other applications naming Plaintiffs' former employees as inventors.

Apple has already caused Plaintiffs substantial harm by publishing patents containing Plaintiffs' trade secrets.  ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ As a result, Plaintiffs now ask the Court to prohibit Apple from publishing further applications that relate to physiological monitoring and name Plaintiffs' former employees as inventors, until Apple provides advance warning to Plaintiffs.  Such relief would merely preserve the status quo and allow Plaintiffs to seek further relief regarding a particular application *before* it is too late.  Because Apple has already published Plaintiffs' trade secrets in a patent, Plaintiffs' requested relief is modest and warranted.

## II.  FACTUAL BACKGROUND

### A.  Plaintiffs' Proprietary Technology

Masimo is a medical technology pioneer that revolutionized noninvasive

-1-

monitoring of physiological parameters, such as pulse rate, arterial oxygen saturation, and many others. *See Mallinckrodt, Inc. v. Masimo Corp.*, 147 Fed. App'x 158, 176-77 (Fed. Cir. 2005) (confirming infringement and validity of Masimo's patents, and reversing district court's denial of permanent injunction); *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 2015 WL 2379485, at *19 (D. Del. May 18, 2015) ("an entire industry—other than Philips and one Chinese company—took licenses from Masimo for innovative technology that saved thousands of lives and billions of dollars in healthcare costs."). In 1998, Masimo spun off certain technologies into a company now known as Cercacor. Powell Decl. at Ex. 1.[1] Cercacor and Masimo cross-license technologies to each other and confidentially collaborate on development. Kiani Decl. ¶ 3.

Noninvasively measuring physiological parameters such as pulse rate and arterial oxygen saturation involves measuring the body's absorption of light at various wavelengths. Kiani Decl. ¶ 4. Reliably measuring these parameters requires a deep understanding of signal processing, light propagation through body tissue, light behavior outside of the tissue, sensor coupling and positioning, confounders of the signal, such as noise, as well as many other nuances. *Id*. It also requires an understanding of hardware considerations including those that improve the performance of the light-based measurements. *Id*. Plaintiffs developed and continually worked for decades to improve their industry-leading technology to non-invasively measure physiological parameters from optical signals. *Id*. Although Plaintiffs own patents on various technologies, Plaintiffs also maintain many trade secrets. *Id*. Masimo's technology is the leading pulse oximetry technology in United States hospitals. Masimo estimates its technology is used to monitor more than 200 million patients worldwide annually. *Id*. ¶ 10. For some non-invasive parameters,

---

[1] All exhibits referenced herein are attached to the Powell Declaration.

Plaintiffs are the only providers of such technology worldwide.  *Id.*

**B.    Apple's Efforts to Obtain Plaintiffs' Trade Secrets**

In 2013, Apple and Plaintiffs met in confidence regarding Apple's desire to integrate Plaintiffs' technology into Apple's products.   Kiani Decl. ¶ 5. ████████████████████████████████████████████████████ ████████████████████████████████  After those meetings, Apple began systematically hiring Plaintiffs' employees.  Kiani Decl. ¶ 6.

Apple first hired Masimo's Chief Medical Officer and Executive VP for Medical Affairs, Michael O'Reilly.   Ex. 3.  ██████████████████ █████████████████████████████████████  Apple hired Cercacor's Chief Technical Officer, Marcelo Lamego.   Ex. 4.  ████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████  Apple also hired at least fifteen other former Masimo or Cercacor employees. Ex. 6.

Lamego started his career in patient monitoring in 2000 as a Masimo Research Scientist.  Ex. 4.  For years, Lamego shared an office with Masimo's co-founder, Mohamed Diab.  Kiani Decl.¶ 7.  Masimo tasked Diab with teaching Masimo's technology to Lamego and tasked Lamego with learning everything from Diab, and then helping develop some of Masimo's most complex technologies.  *Id.*  Lamego had complete and unfettered access to Masimo technology and engineers.   *Id.*   Lamego rose through the ranks, ultimately becoming Cercacor's Chief Technical Officer.  *Id.*

O'Reilly, Lamego, and the other former employees that Apple recruited all signed agreements requiring them to preserve the secrecy of Plaintiffs' confidential information.  *Id.* ¶ 8.  In January 2014, after Apple hired Lamego, Plaintiffs sent a letter alerting Apple that Lamego possessed Plaintiffs' trade secrets and asking Apple to respect Plaintiffs' trade secrets.  Ex. 5.

## C.    **Apple's Misappropriation of Trade Secrets**

Notwithstanding Plaintiffs' warnings, 

*See* Ex. 4.

The concurrently filed declaration of Mohamed Diab explains



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Plaintiffs maintained the confidentiality of this overall process. *Id*. ¶ 31.

---

[3] All emphasis is added unless noted otherwise.









████████████████████████████████████████████████████████
████████

### D.     Apple's Refusal To Cooperate Necessitated This Motion

Because Apple published Plaintiffs' trade secrets in patent applications, one of which was described above, Plaintiffs contacted Apple to prevent publication of additional trade secrets.  Ex. 6.  Apple refused to cooperate, claiming Plaintiffs must first identify their trade secrets in detail.  Ex. 7.  To avoid burdening this Court, Plaintiffs asked Apple to answer a simple question: does Apple have any unpublished applications naming Plaintiffs' former employees as inventors?  Exs. 8, 10.  Answering that simple question would cost Apple nothing.  Exs. 9, 11.  After the Court entered a Protective Order and Plaintiffs identified their trade secrets in extensive detail in the Second Amended Complaint, Apple still refused to provide any information about pending patent applications naming Plaintiffs' former employees as inventors.  Ex. 11.  Because Apple refused to cooperate, Plaintiffs were left with no meaningful option but to file this motion.

### III.  ARGUMENT

In considering preliminary injunctive relief, courts balance the following factors: (1) likelihood of succeed on the merits; (2) likelihood that the moving party will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities; and (4) the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  These factors are evaluated on a sliding scale.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  The moving party may meet its burden if the balance of hardships tips sharply in its favor, there is irreparable injury, and the injunction is in the public interest, even where there are serious questions on the merits.  *Id.* at 1134-35.

### A.     Plaintiffs are Likely to Succeed on the Merits

To succeed on a claim for trade secret misappropriation, Plaintiffs must

prove two elements: (1) the existence of a trade secret, and (2) misappropriation of the trade secret.  Cal. Civ. Code § 3426(b).  Plaintiffs are likely to succeed in proving misappropriation.  Apple misappropriated Plaintiffs' trade secrets ███ ██████████████████████████████████████████████  Because Apple refused to provide any assurance that there are no more unpublished applications naming Plaintiffs' former employees, Apple appears intent on publishing more of Plaintiffs' trade secrets.  Thus, Plaintiffs seek to maintain the status quo and prevent Apple from disclosing additional trade secrets of Plaintiffs.

### 1.    Plaintiffs Are Likely To Show the Existence of a Trade Secret

The California Uniform Trade Secret Act ("CUTSA") defines a trade secret as information that (1) is valuable because it is not generally known to others and (2) the owner has attempted to keep secret.  California Uniform Trade Secret Act § 3426.1(d).

### a.    Plaintiffs' Trade Secrets are Valuable and Not Generally Known

Plaintiffs confidential information is valuable because it is not generally known to others.  For example, Plaintiffs' ██████████████████ ██████  discussed above was not generally known to the public.  Diab Decl. ¶ 31.  Plaintiffs invested significant resources over many years to develop this confidential technology.  Kiani Decl. ¶ 9; Diab Decl. ¶¶ 21, 31.  Plaintiffs' confidential technology gives Plaintiffs an advantage over competitors.  Kiani Decl. ¶ 9.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

1

2

3

4

5

6

7

8

9

10                              Apple cannot now argue

11 Plaintiffs' trade secrets were generally known or lack value.

12         Apple also cannot argue that its own disclosure of Plaintiffs' trade secrets

13 defeats this motion.   "That the defendants have published some of the

14 information which might lead to discovery of [Plaintiffs'] trade secrets does not

15 deprive plaintiff of his preexisting cause of action or of his right to complete

16 injunctive and monetary relief against the wrongdoer."   *Imi-Tech Corp. v.*

17 *Gagliani*, 691 F. Supp. 214, 231 (S.D. Cal. 1986) (granting preliminary

18 injunction) (internal quotations omitted).

19                 **b.**     **Plaintiffs Took Reasonable Steps to Protect The**

20                          **Confidentiality Of Their Trade Secrets**

21         Plaintiffs also took reasonable steps to protect their trade secrets from

22 disclosure.  *See* Kiani Decl. ¶ 8.  Reasonable efforts to maintain secrecy include

23 requiring employees to sign confidentiality agreements.  *MAI Sys. Corp. v. Peak*

24 *Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (steps to ensure secrecy of

25 information reasonable where employees were required to sign confidentiality

26 agreements); *Verigy US, Inc. v. Mayder*, 2008 WL 564634, at *4 (N.D. Cal.

27 Feb. 29, 2008) (same).

28         Here, among other things, all of Plaintiffs employees sign confidentiality

-13-

agreements requiring them to preserve the secrecy of confidential information. Kiani Decl. ¶ 8. Significantly, Marcelo Lamego signed four non-disclosure agreements during his employment with Plaintiffs. Ex. 12. And after Apple hired Lamego, Plaintiffs alerted Apple that Lamego possessed Plaintiffs' trade secrets and warned Apple to respect Plaintiffs' trade secrets. Ex. 5. That is more than sufficient. *See MAI Sys.*, 991 F.2d at 521.

Accordingly, Plaintiffs have shown a strong likelihood of successfully proving the existence of a trade secret.

### 2.   <u>Plaintiffs Are Likely To Prove Misappropriation</u>

A trade secret may be misappropriated on three independent grounds: acquisition, use, *or* disclosure. Cal. Civ. Code § 3426.1(b). Plaintiffs are likely to succeed on all three grounds.

### a.   <u>Apple Improperly Acquired Plaintiffs' Trade Secrets</u>

A defendant misappropriates trade secrets by acquisition if it "knew or had reason to know that the trade secret was acquired by improper means," which includes "breach or inducement of a breach of a duty to maintain secrecy." Cal. Civ. Code §§ 3426.1(a) & (b)(1). Here, Apple acquired extensive trade secret information from Lamego. Apple acquired at least █████████

███████████████████████████████████████████

██████   *See* Sec. II(C)(2), *supra*.   ███████████████████

███████████████████████████████████████████

████████████████████████

Apple also knew or at least should have known the information was acquired through improper means.   ████████████████████

███████████████████████████████████████████

███████   Kiani Decl. ¶ 5; Ex. 2. Apple then hired Masimo's Chief Medical Officer (Michael O'Reilly) and ██████████████████   Kiani Decl. ¶ 6.   ██████████████████████████████   Apple

hired Cercacor's Chief Technical Officer (Marcelo Lamego).  Apple assigned Lamego to help develop Apple's non-invasive monitoring technology, knowing that he possessed Plaintiffs' trade secrets.  In January 2014, Plaintiffs notified Apple that Lamego possessed Plaintiffs' trade secrets and owed Plaintiffs a duty of confidentiality. Ex. 5.

Almost immediately after hiring Lamego,

In view of the foregoing, the evidence shows both that Apple had reason to suspect Lamego was providing Plaintiffs' trade secrets to Apple and that Apple affirmatively desired and took Plaintiffs' technology.  Accordingly, Apple knew or at least should have known that it acquired Plaintiffs' confidential information from Lamego in violation of contractual obligations to Plaintiffs.  *See* Cal. Civ. Code §§ 3426.1 (b)(1).

**b.    Apple Improperly Used and Disclosed Plaintiffs' Trade Secrets**

A defendant misappropriates trade secrets by use or disclosure if it (A) used improper means to acquire the information or (B) knew or had reason to know the information was (i) obtained from a person who acquired it using improper means, (ii) acquired under a duty to maintain its secrecy, **_or_** (iii) derived from another who had a duty to maintain its secrecy.  Cal. Civ. Code §§ 3426.1(b)(2)(A) and (B).

-15-

1   Plaintiffs are likely to show Apple is liable for misappropriation by use and

2   disclosure for three independent reasons.

3       First, Apple used and disclosed trade secrets that it acquired through

4   improper means.  *See* Cal. Civ. Code § 3426.1(b)(2)(A).  As addressed above,

5   Apple acquired Plaintiffs' trade secrets through the improper means of Lamego

6   breaching his confidentiality obligations.  Apple then used ████████████

7   ████████████████████████████  *See supra* Sec. II(C)(2).  Thus, Plaintiffs

8   are likely to show Apple is liable for misappropriation under Section

9   3426.1(b)(2)(A).

10       Second, Plaintiffs are likely to show Apple used and disclosed trade

11   secrets that it knew or had reason to know were derived from Lamego, who

12   owed a duty of confidence to Plaintiffs.  *See* Cal. Civ. Code § 3426.1(b)(2)(B).

13   As discussed above, Apple knew that Lamego had entered into confidentiality

14   agreements with Plaintiffs.  Plaintiffs notified Apple of this fact when Lamego

15   began working for Apple.  Ex. 5.  In its Motion to Dismiss, Apple relied on this

16   letter to argue the risk of misappropriation was so obvious that Plaintiffs—who

17   had no knowledge of Apple's patent applications—should have suspected

18   misappropriation and filed suit much earlier.  D.I. 16 at 3, 7.  Additionally,

19   based on Apple's prior experience with Plaintiffs and the immediacy of

20   Lamego's invention at Apple, Apple knew or should have known that Lamego

21   was using information obtained from Plaintiffs.  Thus, Plaintiffs are likely to

22   show Apple is liable for misappropriation under Section 3426.1(b)(2)(B).

23       Third, Plaintiffs are likely to show Apple is liable for Lamego's acts

24   under the doctrine of respondeat superior.  "'Under the doctrine of respondeat

25   superior, an innocent employer may be liable for the torts its employee commits

26   while acting within the scope of his employment.'"  *Language Line Servs., Inc.*

27   *v. Language Servs. Assocs., LLC*, 2010 WL 2764714, at *3 (N.D. Cal. July 13,

28   2010) (quoting *Yamaguchi v. Harnsmut*, 106 Cal. App. 4th 472, 481 (2003)).

-16-

The standard is "not whether the act was authorized by the employer, benefited [sic] the employer, or was performed specifically for the purpose of fulfilling the employee's job responsibilities." *Id.*  Rather, an employer is vicariously liable "if the employee's act was an outgrowth of his employment, inherent in the working environment, typical of or broadly incidental to the employer's business, or, in a general way, foreseeable from his duties." *Id.*

In *Language Line*, the court granted a preliminary injunction on a trade secret claim based on the plaintiff's former employees using the plaintiff's trade secrets while employed by the corporate defendant. *Id.* at *4.  The court rejected the corporate defendant's argument that it could not be liable because "[the employees'] actions violated [defendant's] policies and were not known to [defendant's] executives." *Id.*  The court found that the individual employees "acted within the scope of their employment, since an act of this nature was generally foreseeable as part of their duties to solicit customers for [defendant]." *Id.*; *see also Extreme Reach, Inc. v. Spotgenie Partners, LLC*, 2013 WL 12081182, at *7 (C.D. Cal. Nov. 22, 2013) (granting preliminary injunction against a corporate defendant that was "liable for the Sales Managers' misappropriation of trade secrets under the doctrine of respondeat superior.")

Here, Apple hired Lamego, assigned him to help develop Apple's non-invasive monitoring technology, ██████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████ was clearly an "outgrowth of his employment, inherent in the working environment, typical of or broadly incidental to [Apple's] business, or, in a general way, foreseeable from his duties." *See Language Line*, 2010 WL 2764714 at *3.  Thus, Plaintiffs are also likely to show Apple is liable for Lamego's actions under the doctrine of respondeat superior.

**B.      Plaintiffs Will Suffer Irreparable Harm**

Plaintiffs seek an order requiring Apple to provide advance notice to Plaintiffs before publishing patent applications or other publications that name Plaintiffs' former employees as inventors.  Such an injunction would prevent Apple from publicly disclosing additional trade secrets before Plaintiffs have a chance to seek relief to prevent such publication.  Patent applications filed with the Patent Office typically publish approximately 18 months after filing.  *See* 35 U.S.C § 122.  Once the Patent Office publishes a patent application, Plaintiffs are aware of no mechanism to have the patent application de-published.  Apple and others may argue that such involuntary disclosure of Plaintiffs' trade secrets by Apple renders such information no longer protectable as trade secrets.  Indeed, Apple already made that precise argument in its Motion to Dismiss.  Dkt. 38-1 at 2.

Plaintiffs have a well-earned advantage based on the quality and reliability of their technologies.  Kiani Decl. ¶ 9.  Plaintiffs maintain certain technologies as trade secrets.  Plaintiffs' quality and reliability advantage is due in part to Plaintiffs' many technological innovations.  Plaintiffs' advantage is under attack by Apple.  *Id*.  Plaintiffs' advantage would be irreparably harmed if Apple were permitted to publish Plaintiffs' trade secrets including through the patent system.  *Id*.

**C.      The Balance of Hardships Weigh Heavily in Plaintiffs' Favor**

Plaintiffs would suffer severe hardship if Apple continues publishing Plaintiffs' trade secrets.  By contrast, Plaintiffs merely ask that Apple provide Plaintiffs' outside counsel with patent applications or other intended publications (on a confidential basis) sufficiently before publication so Plaintiffs can ***then*** raise any disputes with the Court.  Such an injunction would cause no hardship to Apple.  Apple's ability to publish patent applications would not be impaired unless Plaintiffs seek (within 60 days after disclosure), and this Court

grants, further relief as to a particular application.  Plaintiffs' requested relief here merely preserves the status quo.  Thus, the balance of hardships tips sharply in Plaintiffs' favor.

### D.   A Preliminary Injunction is in the Public Interest

The public has an interest in protecting trade secrets from unlawful misappropriation.  *DVD Copy Control Ass'n, Inc. v. Bunner*, 31 Cal. 4th 864, 880 (2003) ("a preliminary injunction properly issued under California's trade secret law undoubtedly serves significant government interests."); *Gable-Leigh, Inc. v. N. Am. Miss*, 2001 WL 521695, at *20 (C.D. Cal. Apr. 13, 2001) ("[T]here is a strong public interest in favor of protecting trade secrets").  Trade secret protection by preliminary injunction protects the law's incentive for investment in innovation and enforces standards of commercial ethics.  *DVD Copy*, 31 Cal. 4th at 880.  This strong public interest weighs against publication of Plaintiffs' trade secrets.

### E.   No Security Is Necessary

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Federal Rule of Civil Procedure 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, ***if any***."  *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis in original).

Because of the very limited nature of relief Plaintiffs seek and the lack of any potential harm to Apple, no security should be required.  Apple would incur no costs in complying with the requested injunctive relief.  Further, Apple would suffer no damages in the event Apple were wrongly enjoined.  Plaintiffs' requested relief would not delay or otherwise impede Apple's pursuit of patent applications.  Thus, a bond is unnecessary.  *See Extreme Reach*, 2013 WL

-19-

12081182 at *9-10 (declining to require a bond for a trade secret preliminary injunction where there was no evidence that injunction would impose costs or cause damages to defendants).  If, the Court believes a bond is necessary, it should impose a minimal bond of $10,000 or less.  *See Codelocks, Inc. v. Keyincode, LLC*, 2018 WL 3326691, at *1-2 (C.D. Cal. May 29, 2018) (Selna, J.) (granting preliminary injunction on trade secret claim based on a $10,000 bond).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the court enter a preliminary injunction to preserve the status quo and prevent Apple from publishing patent applications or other publications that contain Plaintiffs' trade secrets.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  August 17, 2020       By: */s/ Adam B. Powell*
                                  Joseph R. Re
                                  Stephen C. Jensen
                                  Perry D. Oldham
                                  Stephen W. Larson
                                  Adam B. Powell

                                  Attorneys for Plaintiffs,
                                  Masimo Corporation and
                                  Cercacor Laboratories, Inc.

32547676

-20-