Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:  (949) 760-0404 Facsimile:  (949) 760-9502

Adam B. Powell (Bar No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000 Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) Hon. James V. Selna<br>)<br>) **PLAINTIFFS' NOTICE OF *EX PARTE* APPLICATION TO ENFORCE THE COURT'S ORDER**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**PLEASE TAKE NOTICE** that Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc., apply *Ex Parte* to Enforce the Court's Order requiring Apple to produce its core technical documents. Additionally, Plaintiffs seek two sanctions. First, Plaintiffs request the Court rule that Apple may not later rely on any core technical documents that it fails to produce in response to the Court's order on this Application. Second, Plaintiffs request the Court impose monetary sanctions for the attorneys' fees Plaintiffs incurred in attempting to obtain compliance with the Court's prior order (Dkt. 92) and in pursuing the Application.

Plaintiffs bring this application pursuant to Local Rule 7-19 and the Court's Order that "[s]hould Plaintiffs dispute the sufficiency of Apple's core technical document production, ***the parties shall present the dispute to this Court on an ex parte basis*** . . .." Dkt. 92 at 1 (emphasis added).

The parties have exchanged extensive correspondence addressing the issues raised herein, but were unable to resolve their disputes. *See* Oldham Decl., Ex. 11. In accordance with Local Rule 7-19.1, Plaintiffs' counsel notified Apple's counsel of this Application on August 20, 2020. Oldham Decl. ¶ 3. Apple indicated it intends to oppose Plaintiffs' *ex parte* application. *Id.*

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  August 20, 2020          By: */s/ Perry D. Oldham*

Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Stephen W. Larson
Adam B. Powell

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories

-1-

# TABLE OF CONTENTS

**Page No.**

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 1

I. STATEMENT OF FACTS ............................................................................. 2

    A.   Apple's Repeated Refusals To Provide Technical Documents ............................................................................... 2

    B.   Apple's Latest Refusal To Provide Core Technical Documents ............................................................................... 4

II. ARGUMENT ............................................................................................... 5

    A.   Apple's Core Technical Document Production is Insufficient ........................................................................... 5

        1.   This Court Rejected Apple's Argument That Its 350-Page Production Was Sufficient ................................. 6

        2.   Apple Erected Yet Another Roadblock to Production ................................................................... 7

        3.   Apple Improperly Redacted Information From Its Production ................................................................... 8

        4.   Apple's Production Fails to Provide Information On Features That Are Directly Relevant to the Patents ................................................................... 9

        5.   Apple's Meager Document Production References Other Core Technical Documents That Are Missing ................................................................... 10

        6.   Apple's Source Code is Incomplete and Does Not Cure The Deficiencies In Apple's Document Production ................................................................... 11

    B.   The Court Should Impose Sanctions for Apple's Contempt ................................................................... 11

III. CONCLUSION ............................................................................... 12

# TABLE OF AUTHORITIES

**Page No(s).**

*Contour IP Holding, LLC v. GoPro,*
No. 15-cv-01108, Dkt. 65 (D. Del. July 6, 2016) ........................................ 8

*Greatbatch Ltd. v. AVX Corp.,*
179 F. Supp. 3d 370 (D. Del. 2016) ................................................ 8

*In re iPhone Application Litig.,*
2013 WL 1095456, at *2 (N.D. Cal. 2013).................................. 9

*Islander Group, Inc. v. Swimways Corp.,*
2014 WL 12573995, at *3 (D. Hawaii 2014)................................. 9

*Mission Power Eng'g Co. v. Cont'l Cas. Co.,*
883 F. Supp. 488 (C.D. Cal. 1995)................................. 5

*Princeton Digital Image Corp. v. Konami Digital Entm't Inc.,*
316 F.R.D. 89 (D. Del. 2016)................................. 11

*Tessera, Inc. v. Broadcom Corp.,*
16-cv-00380 (D. Del. Oct. 19, 2016) ................................ 8

*Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Group,*
2016 WL 6246384, at *2 (C.D. Cal., Feb. 23, 2016)................................. 9

## OTHER AUTHORITIES

28 U.S.C. § 1927 ........................................................ 1, 15

35 U.S.C. § 271................................................... 10

## **MEMORANDUM OF POINTS AND AUTHORITIES**

On July 29, this Court rejected Apple's most recent attempt to withhold patent discovery and ordered Apple to "produce core technical documents sufficient to show the operation of the Accused Products, including source code, within five (5) days of this Order."  Dkt. 92 at 1.  The Court admonished Apple: "***Now*** is the time for Apple to act: the Court expects prompt and full compliance.  Any further recalcitrance on Apple's part will likely draw an application for contempt or sanctions under 28 U.S.C. § 1927 or an invitation from the Court to seek such relief."  *Id.* at 2.[1]  In view of the Court's warning, and Apple's representation that it anticipated "voluminous document production," Apple should have made a substantial and complete production.

Instead, Apple refused to produce ***a single additional document*** by the August 3 deadline.  Apple made some limited source code available on August 3, but omitted core aspects of the code that are relevant to infringement.  In the nearly three weeks that followed, Plaintiffs identified numerous deficiencies in Apple's source code and prior production of only thirty-seven documents.  However, Apple has still not produced ***any*** additional source code or documents.

Apple is in violation of the Court's order.  First, Apple limited its documents and source code to "features" ***Apple*** asserts are at issue.  That is improper.  Plaintiffs identified many "features" Apple withheld that are directly relevant to the asserted patents.  Equally important, this Court's order required Apple to produce "documents sufficient to show the operation of the ***Accused Products***," not just the features that Apple unilaterally decides are at issue.

/ / /

---

[1] All emphasis is added unless noted otherwise.  All exhibits are attached to the Declaration of Perry D. Oldham unless noted otherwise.

Second, Apple improperly *redacted* some of the technical documents it did produce.  Apple's redaction was *not* based on privilege.  Instead, Apple redacted features it contends are not at issue.  Apple cannot redact information based on its own determination of *relevancy*.  Plaintiffs have the right to view the information themselves to assess whether those features are at issue.

Third, Apple produced no documents or source code relating to numerous claimed features.  For weeks, Apple promised to investigate the missing information.  Apple's counsel recently admitted that—two months after the initial June deadline and nearly three weeks after the Court's August 3 deadline—they had not yet met with the appropriate individuals to investigate many of the missing documents.

After Plaintiffs provided notice of this Application, Apple stated it would provide *some* of the requested information for *some* of the specific exemplary deficiencies identified by Plaintiffs.  However, Apple maintained that it need only provide information for *features* that Apple asserts are at issue in this case rather than "core technical documents sufficient to show the operation of the *Accused Products* . . .."  Dkt. 92 at 1.  Apple also failed to identify with specificity the documents it plans to produce or when it plans to produce them.

This Court ordered "prompt and full compliance" by August 3 and provided that "[s]hould Plaintiffs dispute the sufficiency of Apple's core technical document production, the parties shall present the dispute to this Court on an ex parte basis . . .."  Dkt. 92.  The Court should order Apple to fully comply with its orders and impose sanctions to obtain Apple's compliance.

## I. <u>STATEMENT OF FACTS</u>

### A. <u>Apple's Repeated Refusals To Provide Technical Documents</u>

This Court is well aware of Apple's repeated prior attempts to avoid providing technical discovery.  First, Apple argued this Court should stay patent

/ / /

discovery based on Section 2019.210.  Dkt. 33 at 26, n.6.  This Court rejected that argument and stayed "trade secret discovery only . . .."  Dkt. 37.

Second, Apple sought a contrary ruling from Judge Early.  Dkt. 43. Judge Early rejected Apple's argument and confirmed the Scheduling Order "does not stay patent-related discovery."  Dkt. 54 at 8.

Third, after having lost before this Court and Judge Early, Apple ignored its deadline to produce core technical documents and argued it need not do so until entry of a protective order.  Dkt. 56 at 3, 7-9.  Apple represented that Section 2019.210 was "*not* a basis on which Apple relies."  *Id.* at 7 n.2.  Thus, this Court directed the parties to promptly submit their protective order disputes to Judge Early.  Dkt. 59 at 1.

Fourth, after Judge Early entered the Protective Order, Apple *still* refused to produce technical documents.  Contrary to its prior statements to the Court, Apple refused to produce technical documents based on Section 2019.210.  Ex. 1 at 9:19-12:9.  This Court rejected Apple's argument: "If core confidential documents are relevant to the patents, they should be disclosed *now* . . .."  *Id.* at 12:10-19.  The Court emphasized that such documents "should be disclosed now and *in advance* of Masimo having to identify which claims it wants to proceed on."  *Id.*

Fifth, Apple then filed an *ex parte* application seeking to stay Judge Early's order holding that patent discovery must go forward.  Dkt. 73.  Apple *again* relied on Section 2019.210.  *Id.* at 4.  The Court denied both Apple's *ex parte* application and Apple's objections to Judge Early's order.  Dkt. 76, 79.

Sixth, undeterred by this Court's orders, Apple *again* conditioned patent discovery on Section 2019.210.  Apple unilaterally imposed an "ethical wall" prohibiting counsel who have access to Apple's confidential information from drafting or revising Plaintiffs' Section 2019.210 statement.  Ex. 2 at 10.  Apple produced a scant 350 pages of discovery "subject to" Apple's wall.  Ex. 3 at 16.

In response to Plaintiffs' Renewed *Ex Parte* Application, Apple defended its wall and argued its production was sufficient.  Dkt. 85 at 1-2.  The Court rejected Apple's arguments, ordered Apple to produce core technical documents, and extended Plaintiffs' deadline for infringement contentions.  Dkt. 92.  The Court admonished Apple:

> This issue has been litigated multiple times, and Apple has not prevailed.  ***Now is the time for Apple to act: The Court expects prompt and full compliance***. Any further recalcitrance on Apple's part will likely draw an application for contempt or sanctions under 28 U.S.C. § 1927 or an invitation from the Court to seek such relief.

*Id.*

## B.    Apple's Latest Refusal To Provide Core Technical Documents

Based on the Court's strong warning, Apple should have made a substantial document production by the Court's August 3 deadline.  However, Apple failed to produce *a single additional document*.  Instead, Apple relied on its July 16 production and some limited source code that it made available for inspection.  Plaintiffs identified numerous deficiencies in the production, but Apple failed to produce any additional information. *See generally* Ex. 11.

Eventually, Apple admitted to excluding *all* information about *all* "features" that Apple decided were not at issue. *Id.* at 423.  Apple also admitted it *redacted* documents, not for privilege, but because Apple asserted the information had "no relevance to the accused *features* of the Accused Products." *Id.* at 417.

Plaintiffs also identified categories of missing information.  Apple promised to investigate, but has still not provided any additional documents or source code.  On August 6, Apple promised to "reach out to the relevant folks at Apple" to confirm Apple had produced all of its code on certain features. *Id.* at 422.  On August 12, Apple offered to "investigate" other missing information. *Id.* at 418-19.  On the morning of August 20, Apple's counsel stated they had

still not even met with the appropriate Apple employees to investigate many of the missing documents.  *Id.* at 414.

After Plaintiffs informed Apple that they intended to file this application, Apple called Plaintiffs and finally stated it would provide ***some*** of the requested information for ***some*** of the specific exemplary deficiencies identified by Plaintiffs.  Oldham Decl. ¶ 3.  However, Apple maintained that it need only provide information for ***features*** that Apple asserts are at issue in this case.  *Id.* Apple also failed to identify with specificity the documents it plans to produce or when it plans to produce them.  *Id.*

## II.  ARGUMENT

Plaintiffs bring this *ex parte* application pursuant to the Court's order that any disputes over Apple's core technical documents shall be presented "to this Court on an ex parte basis."  Dkt. 92 at 1.[2]  Even though Apple was obligated to produce "core technical documents sufficient to show the operation of the Accused Products" two months ago, and this Court ordered Apple to complete its production by August 3, Apple provided incomplete source code and failed to produce even a ***single*** additional document.

### A.    Apple's Core Technical Document Production is Insufficient

Apple's first document production contained 800 pages of non-technical and non-confidential documents.  Oldham Decl. ¶ 4.  After the Court ordered Apple to remove its unilateral wall, Plaintiffs obtained access to Apple's second document production and learned that it contained only ***37 documents***, many of which were duplicates and some of which contained redactions. *Id.* ¶ 5; Ex. 5.

---

[2] *Ex Parte* relief is also appropriate because the parties dispute whether Apple has completed its core technical document production.  If Apple is correct, Plaintiffs' deadline for infringement contentions is September 14—before the Court could hear a regularly-noticed motion.  *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995).

Apple made only limited source code available for inspection pursuant to the Court's Order. *Id.* ¶ 6.  There are numerous deficiencies in Apple's production.

### 1.   This Court Rejected Apple's Argument That Its 350-Page Production Was Sufficient

This Court rejected Apple's argument that its 350-page production was sufficient.  In opposition to Plaintiffs' Renewed *Ex Parte* Application, Apple argued it had "produced core technical documents that describe all accused features of the products at issue" and that it "does not take more than 350 pages to describe these *features*."  Dkt. 85 at 6, 14.  This Court ordered Apple to "produce core technical documents sufficient to show the operation of the *Accused Products*, including source code . . .."  Dkt. 92 at 1.

Patent litigants often produce hundreds-of-thousands of pages of documents.  Indeed, Plaintiffs have already produced over 85,000 pages of documents, including thousands of pages of highly confidential technical documents. *See* Ex. 9.  When Apple released the original Apple Watch, Apple's CEO explained that Apple "had an intense team working on this for three years." Ex. 8.

Moreover, Apple told this Court it "anticipates a possibly *voluminous document production* due to the number of patents at issue in this case."  Dkt. 33 at 20.  Apple argued "this case necessarily will involve some of Apple's most *confidential and sensitive technical information* . . .."  Dkt. 72-1 at 8. Apple even argued the Court should not require good cause to seal documents because this case involves *so much* confidential information that establishing good cause for each document would be burdensome.  *See id.* at 9-10.  Having made those assertions, Apple cannot credibly claim it has only *thirty-seven* "core technical documents."

/ / /

/ / /

## 2.    Apple Erected Yet Another Roadblock to Production

Apple refused to produce information about **any** feature not specifically accused in Plaintiffs' preliminary infringement contentions. Ex. 11 at 423. But Plaintiffs served those contentions based on public information because Apple failed to meet its original deadline to produce core technical documents. Because of Apple's failure, the Court ordered Apple to provide its core technical documents and extended Plaintiffs' deadline until forty-two days **after** Apple completes its production. *See* Dkt. 92 at 1. Apple cannot rely on its own misconduct to limit Plaintiffs' ability to obtain discovery before providing its contentions.

The Court's Order did not permit Apple to limit its production to specific features that **Apple** agrees are at issue. The Court ordered Apple to produce "core technical documents sufficient to show the operation of the **Accused Products**." Dkt. 92. That makes sense because the Court repeatedly held that Plaintiffs should not have to provide contentions until **after** Apple produces core technical documents. Ex. 1 at 9:9-12 ("I don't think that Masimo should be required to make its infringement contentions until you produce the core technical information"), 12:16-19 (core technical documents "should be disclosed now and in advance of Masimo having to identify which claims it wants to proceed on").

Apple has argued there is no basis for Plaintiffs to demand information "as part of a core technical document production **prior to** Plaintiffs providing their infringement contentions." Ex. 11 at 415. Apple's argument demonstrates its contempt. As discussed, this Court has repeatedly ordered and emphasized that Apple must produce its core technical documents **before** Plaintiffs provide infringement contentions. *See* Dkt. 92.

Other courts that impose a "core technical documents" requirement reject similar attempts to limit the scope of a "core technical document" production.

-7-

For example, in *Contour IP Holding, LLC v. GoPro*, No. 15-cv-01108, Dkt. 65 (D. Del. July 6, 2016) (attached as Ex. 6), the court rejected the defendant's attempt to limit its core technical document production because the plaintiff had not yet identified "accused functionalities."  Similarly, in *Greatbatch Ltd. v. AVX Corp.*, 179 F. Supp. 3d 370, 374 (D. Del. 2016), the court rejected the defendant's attempt to limit its core technical document production to certain product versions.  The court ordered the defendant "to produce ***all*** core technical documents related to products accused" of infringement.  *Id.* (emphasis in original).  The court explained: "What is relevant can be broad and in some circumstances might be somewhat beyond what even the plaintiff would concede is the scope of the patent."[3]

In *Tessera, Inc. v. Broadcom Corp.*, 16-cv-00380 (D. Del. Oct. 19, 2016) (attached as Ex. 7), the court ordered the defendant to produce core technical documents regarding "potentially accused products" so the plaintiff could identify the accused products.

Nothing supports Apple's attempt to exclude information about the accused products merely because ***Apple*** has unilaterally decided that certain "features" are not yet at issue.  The point of a core technical document production is to provide core technical information about the accused products so that ***Plaintiffs***—not Apple—can ascertain exactly how the accused products infringe the asserted patents and provide that information in their contentions.

### 3.    Apple Improperly Redacted Information From Its Production

Apple ***redacted*** information from its production, not for privilege, but based on relevance.  Ex. 11 at 417.  That is wholly improper.  Parties may not

---

[3] *Greatbatch* noted that the pre-December 2015 version of the Federal Rules of Civil Procedure governed, but did not suggest it would have decided the issue differently under the current rules.  *See Greatbatch*, 179 F. Supp. 3d at 374 n.4.

redact documents based on their unilateral determination that redacted information is not relevant. *Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Group*, 2016 WL 6246384, at *2 (C.D. Cal., Feb. 23, 2016) (parties "may not redact otherwise responsive documents because those documents contain irrelevant material"); *Islander Group, Inc. v. Swimways Corporation*, 2014 WL 12573995, at *3 (D. Hawaii 2014) ("unilateral redactions based on relevance by the producing party is not appropriate"). Indeed, other courts have admonished Apple for redacting information for relevance. *See In re iPhone Application Litig.*, 2013 WL 1095456, at *2 (N.D. Cal. 2013) ("this Court is also disturbed by Apple's position 'that it may redact information that is not relevant'").

Apple argues it is entitled to redact the information because it is "related to unreleased products," which Apple asserted have "no relevance to the accused features of the Accused Products." Ex. 11 at 417. However, just because a feature has not yet been released to the public does not mean there is no infringement. Making and using an infringing product—without selling the product—also constitutes patent infringement. 35 U.S.C. § 271. Apple cannot simply redact material because Apple claims it has not yet enabled that feature for the public. Apple's selective redaction of its documents does not comply with this Court's order to provide "prompt and full compliance." Dkt. 92 at 1.

### 4. **Apple's Production Fails to Provide Information On Features That Are Directly Relevant to the Patents**

Apple's documents and source code fail to provide information regarding numerous aspects of the accused products that are directly at issue in this case. Plaintiffs identified numerous exemplary deficiencies in Apple's production. Ex. 11 at 420-21. Apple ***admitted*** it provided no documentation on many of these topics. *Id.* at 418-19. Apple committed to "investigate" whether such documents exist and "if they do, [Apple] will provide them." *Id.* at 418. But Apple made that commitment more than one week ago and has still not

1    supplemented its production.  Upon notice of this application, Apple claims that

2    it is collecting and will eventually produce additional documents.  Oldham Decl.

3    ¶ 3.  But Apple failed to identify with specificity the documents it plans to

4    produce or when it plans to produce them.  Plaintiffs should not have to

5    continue waiting for Apple to produce information that this Court has repeatedly

6    ordered Apple to produce long ago.[4]

7        **5.**     **Apple's Meager Document Production References Other Core**

8               **Technical Documents That Are Missing**

9       The few documents Apple did produce further confirm its production is

10    deficient.  For example, Apple produced a single █████████████████

11    ███████████ document relating to the Apple Watch.  Ex. 5 at APL-

12    MAS_00000842-887.  That document contains a table cross-referencing

13    *numerous* other documents that appear necessary to understand the document

14    that Apple produced.  *Id.* at -847 ████████.  The document ████████████

15    ████████████████████████████████████████████████ *Id.* at

16    -842 ████████████████████████████████████████████████

17    ████████████████████████████████████████████ *id.* at -848

18    ████████████████████████████████████████████████████

19    ███████████████████████████████████████████

20       As another example, Apple produced █████████████████████

21    █████ Ex. 5 at APL-MAS_00000998-1002.  That document cross-references

22    ███████████ but Apple did not produce the underlying documents for each

23    ████████ *Id.* at -1000.  The other documents Apple produced are similarly

24

25    [4] Apple has complained that Plaintiffs identified some deficiencies "only" one

26    or two weeks ago.  Ex. 11 at 414.  But Plaintiffs merely identified *examples* of the numerous glaring deficiencies in Apple's 37-document production.  It was

27    not Plaintiffs' obligation to tell Apple how to comply with this Court's orders.

28    Apple should have collected these documents months ago.

1   replete with cross-references to other documents that Apple excluded.  *See, e.g.*,

2   Ex. 5 at APL-MAS_00000975 ███████████████████████████████

3   ████████████████, APL-MAS_00000981 ██████████████████████

4   ████████████ APL-MAS_00000334 ████████████████████████████

5   █████████████████████.   Apple cannot cherry-pick the documents it is

6   willing to produce.

7       **6.**   **Apple's Source Code is Incomplete and Does Not Cure the**

8           **Deficiencies in Apple's Document Production**

9       Apple argued it need not produce technical documentation because it

10  produced source code (after the Court ordered Apple to do so over Apple's

11  objections).  But producing source code alone does not satisfy a party's burden

12  to produce other "core technical documents."  *Princeton Digital Image Corp. v.*

13  *Konami Digital Entm't Inc.*, 316 F.R.D. 89, 95 n.11 (D. Del. 2016) ("The Court

14  is aware of no rule that states that if a defendant has produced source code,

15  Plaintiff is not entitled to any other 'core technical documents.'").

16      Apple produced source code for ████████████████████████

17  █████████████████████████████████████████████████████████

18  ████████████████████████████████████████.   Oldham

19  Decl. ¶ 6.  Apple's source code production also ████████████████████

20  █████████████████████████████████████████████████████████

21  ███████   *Id*.   Apple's claim that its limited production is sufficient is

22  undermined by its own broad demand that Plaintiffs produce "all source code,

23  including all prior versions, revisions, comments, and related source code files,

24  for every product that practices or has ever practiced any asserted claim of any

25  asserted patent . . .."  Ex. 10.

26  **B.**   **The Court Should Impose Sanctions for Apple's Contempt**

27      This Court warned Apple: "Any further recalcitrance on Apple's part will

28  likely draw an application for contempt or sanctions under 28 U.S.C. § 1927 or

an invitation from the Court to seek such relief." Dkt. 92.  In addition to finding that Apple's current production is deficient and ordering Apple to resolve that deficiency, Plaintiffs request two sanctions.

First, the Court should rule that Apple may not rely on any core technical documents it fails to produce by the Court's new deadline.  This sanction is reasonable because Apple can avoid any prejudice by simply complying with the Court's order.  The sanction would have a deterrent effect by encouraging Apple to comply fully with the Court's orders and produce all of its core technical documents sufficient to show the operation of the Accused Products. If Apple again makes an incomplete production, it should do so at its own peril. While Plaintiffs should be permitted to rely on documents that Apple later produces pursuant to Apple's other discovery obligations, Apple should not be permitted to rely on core technical documents it should have produced in accordance with this Court's orders.

Second, Plaintiffs request the Court impose monetary sanctions for the attorneys' fees incurred in attempting to obtain compliance with the Court's prior order (Dkt. 92) and in pursuing the Application.  Plaintiffs suggest they identify such fees in a separate declaration within one seven days of the Court's decision.

### III.  CONCLUSION

For all the reasons discussed above, the Court should grant Plaintiffs' *Ex Parte* Application to Enforce the Court's Order.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

-12-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  August 20, 2020        By: */s/ Perry D. Oldham*
                                  Joseph R. Re
                                  Stephen C. Jensen
                                  Perry D. Oldham
                                  Stephen W. Larson
                                  Adam B. Powell

                                  Attorneys for Plaintiffs,
                                  Masimo Corporation and
                                  Cercacor Laboratories

-13-