Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404 Facsimile: (949) 760-9502

Adam B. Powell (Bar No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000 Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>   Plaintiffs,<br><br>   v.<br><br>APPLE INC., a California corporation<br><br>   Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>Hon. James V. Selna<br>Magistrate Judge John D. Early<br><br>**PLAINTIFFS' QUALIFIED OPPOSITION TO DEFENDANT APPLE INC.'S NOTICE AND *EX PARTE* APPLICATION FOR A MODIFIED BRIEFING SCHEDULE AND EXPERT OBJECTION SCHEDULE FOR PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 124)** |

## I. INTRODUCTION

Plaintiffs do not object to extending Apple's time to oppose Plaintiffs' Motion for Preliminary Injunction (the "Motion"), provided that the extension *itself* does not result in relevant publications that otherwise would not have occurred. Thus, Plaintiffs agreed to an extension as long as Apple agreed to abide by Plaintiffs' modest proposed relief, on an interim basis only, until the Court rules on Plaintiffs' Motion. Specifically, Plaintiffs asked Apple to take all steps necessary to prevent Apple publications that (1) relate to physiological monitoring and (2) name one of Plaintiffs' former employees as an inventor or author, *until* Plaintiffs' counsel have a chance to review the publication on a confidential basis.

Although Apple initially appeared to agree, Apple ultimately refused to provide *any* assurance that it was not planning to imminently publish information within the categories set forth above. Plaintiffs explained their concerns and repeatedly asked to speak over the phone because the e-mail correspondence suggested a lack of effective communication. Apple refused to even speak to Plaintiffs.

## II. FACTUAL BACKGROUND

Apple acknowledges that Plaintiffs contacted Apple about Apple's potential patent publications in March of 2020. Lerner Decl., Ex. A at 1. At the time, Apple argued it should not have to disclose pending patent applications because they were confidential. *Id.*, Ex. D. Apple also argued that Plaintiffs should identify their trade secrets in more detail before Apple would respond. *Id.* In an attempt to determine whether there was even an issue to address, Plaintiffs asked Apple a simple "yes" or "no" question: Does Apple even have any unpublished applications naming Plaintiffs' former employees as inventors? Powell Decl., Ex. 1 at 1. Apple refused to answer. Lerner Decl., Ex. E.

/ / /

The Court entered a Protective Order on June 30, and Plaintiffs described their trade secrets in significant additional detail on July 24. Dkt. 67; Dkt. 89-1. Having addressed both of Apple's claimed concerns, Plaintiffs again wrote Apple in a further attempt to resolve the matter. Lerner Decl., Ex. G. Apple again refused to engage. *Id.*, Ex. H. Thus, Plaintiffs filed the Motion four days later. Dkt. 108.

On August 18, Apple wrote requesting an extension of time to oppose Plaintiffs' Motion. Lerner Decl., Ex. J at 129. Plaintiffs stated they had no objection "if the extension does not prejudice the relief we requested." *Id.* In particular, Plaintiffs agreed to Apple's extension if Apple agreed to Plaintiffs' modest relief on an interim basis until the Court ruled on the Motion. *Id.*

Apple sent Plaintiffs a stipulation that changed the relief Plaintiffs had requested. *Id.* The parties exchanged several drafts, but Apple proclaimed on August 20 that "we won't be able to reach a resolution here—we do not agree on these points." *Id.* at 126. Apple filed its *Ex Parte* Application later that evening without advance notice. Dkt. 124. Apple filed the Lerner Declaration early the next morning. Dkt. 125.

Plaintiffs contacted Apple that morning and explained they were "not sure what the dispute is." Powell Decl., Ex. 2. Plaintiffs asked to speak "on the phone to ensure we have a real dispute, rather than just a failure to communicate." *Id.* Apple responded by email demanding that Plaintiffs propose a new stipulation. *Id.* Plaintiffs proposed alternative language in an attempt to address what it perceived as Apple's stated concerns. *Id.* Apple refused any discussion, and rejected Plaintiffs' proposal by email. *Id.* Far from engaging in a meaningful discussion, Apple ignored Plaintiffs' concerns about potential imminent publication by Apple. *Id.*

/ / /

/ / /

## III. ARGUMENT

### A. The Court Should Condition Any Extension

Plaintiffs have no objection to extending Apple's time to oppose Plaintiffs' Motion if the extension itself would not prejudice Plaintiffs requested relief by resulting in publications that would not have occurred absent the extension. Specifically, Plaintiffs request that the Court include the following language in any extension of time:

> until Plaintiffs Motion for Preliminary Injunction (Dkt. 108) is decided by the Court, Defendant, on an interim basis only, will (1) take all necessary steps in its power to prevent publication of any of Defendant's patents, patent applications, documents, or other presentations of information that (a) concern measurement or tracking of health-related or physiological information, and (b) name as an inventor or author one or more of Plaintiffs' former employees, *until* (2) Defendant provides the material to Plaintiffs' outside counsel on a confidential basis and allows Plaintiffs' outside counsel at least 30 days to seek relief from the Court. For the avoidance of doubt, Defendant is not required to prevent publications by third parties over which Defendant has no control or reasonable means to influence non-publication.

Plaintiffs include this language in an alternate Proposed Order attached hereto that gives Apple the choice of filing its opposition in the ordinary course or with an extension.

Apple can hardly complain about Plaintiffs' proposal. Apple states it is willing to "take all necessary steps with respect to Apple employees to prevent publication or disclosure in any patent, patent application, or patent filing, that (a) concerns measurement or tracking of health-related or physiological information, and (b) names as an inventor or author one or more of Plaintiffs' former employees." Dkt. 124 at 6. But Apple never explains why it would be more burdensome to take the same steps for non-patent publications, which could be almost identical to a patent application. Apple's disclosure in a non-patent publication would be just as prejudicial as disclosure in a patent

publication. Apple's refusal to discuss this issue suggests that such a publication may indeed be imminent.

Apple argues it should not have to agree to "the broader and incredibly vague interim restrictions Plaintiffs sought—namely, those that would require Apple to police third parties, including the U.S. Patent and Trademark Office, and prevent the disclosure of the aforementioned information in 'documents' other than patents, patent applications, and patent filings." Dkt. 124 at 6. As Plaintiffs explained to Apple, that was never Plaintiffs' intention and Plaintiffs' proposal did not require that. Ex. 2.

To avoid any possible ambiguity, Plaintiffs included the language above, which directly addresses Apple's concern by stating "Apple is **not** required to prevent publications by third parties over which Apple has no control or reasonable means to influence non-publication." *Id.* (emphasis added). Plaintiffs also made clear that it was not proposing a bar on publication. *Id*. Instead, Plaintiffs merely asked that Apple refrain from publishing such materials without allowing Plaintiffs' counsel an opportunity to review the specific materials and object before they are published. *Id.* Apple rejected that proposal and refused to discuss the issue. *Id.*

Apple's argument that there is "no emergency underlying Plaintiffs' Motion" because Plaintiffs originally contacted Apple about this matter in March of 2020, misses the point. Dkt. 124 at 2. Plaintiffs are not aware of relevant publications that occurred between March of 2020 and the filing of Plaintiffs' Motion. However, Apple's *Ex Parte* Application, and Apple's refusal to provide any assurance that publication is not now imminent, suggests that Apple may well have plans to make such publications during the extension period. Otherwise, Apple would have had no issue agreeing to Plaintiffs' simple request until the Court rules on the Motion. Thus, Apple's refusal suggests that Plaintiffs' Motion may well be urgent.

-4-

In view of the strong evidence of Apple's prior misappropriation set forth in Plaintiffs' Motion, Plaintiffs' desire to maintain the status quo during any extended briefing is more than reasonable. In the absence of such relief, the parties should brief Plaintiffs' Motion in the ordinary course.[1]

### B. **Apple's Attempts to Disparage Plaintiffs are Baseless**

Apple spends the bulk of its *Ex Parte* Application accusing Plaintiffs of being bad actors. Although these meritless allegations are irrelevant to this procedural application, Plaintiffs respond briefly to correct the record.

First, Apple suggests Plaintiffs failed to negotiate to avoid "burden[ing] the Court with this Application." Dkt. 124 at 5-6. The record on this matter establishes the opposite. This is a simple scheduling matter that should have been readily resolved by the parties. Apple's refusal to even speak on phone to try to find a resolution belies Apple's assertion. *See* Powell Decl., Ex. 2.

Second, Apple complains that Plaintiffs "imposed" a "prejudicial" schedule that "leaves Apple with less time to oppose the Motion than a party normally has for a reply brief." Dkt. 124 at 7, 9. That is incorrect. Plaintiffs noticed the Motion in the ordinary course for a hearing 28-days later. *See* L.R. 6-1. The parties have the standard amount of time for oppositions and replies under the Local Rules (7 days each). *See* L.R. 7-9 and 7-10.

Third, Apple argues that Plaintiffs violated the parties' agreement to ordinarily provide a 3-week opposition and 2-week reply. Dkt. 124 at 8. But the parties' understanding was for "motions that are not particularly time sensitive." Lerner Decl., Ex. F at 21. As discussed, Plaintiffs have no problem with that schedule *if* it is indeed not time sensitive. However, Apple's refusal to

---

[1] If the Court disagrees, it should at least include Apple's proposal. *See* Dkt. 124 at 6:8-12. While Apple says it "remains willing to agree" to that language, Apple did not include the language in its Proposed Order.

share any information on whether publication is imminent leaves Plaintiffs—and this Court—without the information they need to determine the extent to which Plaintiffs' motion is time sensitive.

Fourth, Apple complains that Plaintiffs made it "impossible" for Apple to retain an expert. Dkt. 124 at 7. But Plaintiffs told Apple they were willing to agree that both parties would provide expedited objections by August 21—just as Apple asked Plaintiffs to do in the draft stipulation. The parties never reached an agreement, but Plaintiffs remain willing to provide a reciprocal expedited exchange whenever Apple is ready. Apple also faults Plaintiffs for telling Apple yesterday that they would likely object to Apple's proposed expert. But Plaintiffs did so as a courtesy, long **before** the Protective Order deadline, and even before the deadline for objections proposed in Apple's draft stipulation. Moreover, Plaintiffs' objection should come as no surprise to Apple because Apple designated, and Plaintiffs objected to, the same expert seeing Plaintiffs' confidential information in another case.

Fifth, Apple complains that Plaintiffs "waited" to provide information about its preliminary injunction until the "*Friday night before filing the Motion*." Dkt. 124 at 9 (emphasis in original). That is not true. Plaintiffs identified the specific trade secret at issue in detail nearly one month ago in the Second Amended Complaint. Dkt. 89-1 ¶ 41. Further, Apple's own *Ex Parte* Application notes that Apple has long known that Plaintiffs might seek a preliminary injunction.

Finally, Apple incorrectly claims that Plaintiffs "refused to respond to at least ten letters and countless emails" asking about Plaintiffs' trade secrets. Dkt. 124 at 9-10. Merely because Plaintiffs responses disagreed with Apple's assertions does not mean Plaintiffs "refused to respond."

/ / /

/ / /

-6-

## IV. **CONCLUSION**

For the reasons discussed above, the Court should deny Apple's *Ex Parte* Application or grant the conditional extension set forth in Plaintiffs' Alternative Proposed Order.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: August 17, 2020      By: */s/ Adam B. Powell*
    Joseph R. Re
    Stephen C. Jensen
    Perry D. Oldham
    Stephen W. Larson
    Adam B. Powell

    Attorneys for Plaintiffs,
    Masimo Corporation and
    Cercacor Laboratories

33304123