**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION TO ENFORCE THE COURT'S ORDER**<br><br>Hon. James V. Selna<br>No Hearing Noticed<br><br>Discovery Cut-Off:    7/5/2021<br>Pre-Trial Conference: 3/21/2022<br>Trial:                        4/5/2022 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

<u>Page</u>

I.    BACKGROUND ..................................................................................... 4

II.   ARGUMENT ........................................................................................... 5

    A.    Plaintiffs' Attempt to Obtain Information About an Unreleased, Unannounced, and Non-Accused Apple Product is Contrary to Law ....... 5

    B.    Apple Has Not Refused to Provide Any Documents Related to the Products Actually Accused in this Action ................................................ 11

        1.    Apple's Previous Core Technical Document Production Was Complete as It Related to the Allegations Regarding the Originally-Asserted Patents ........................................................... 11

        2.    Plaintiffs Radically Expanded the Scope of this Case at the End of July, and Apple Has Been Working to Obtain and Provide Documents Related to the Brand New Allegations Since Then ........................................................................................ 12

        3.    Apple Has Not Refused to Provide Any Documents ................... 13

    C.    There is No Urgency or Prejudice to Warrant *Ex Parte* Relief ............... 14

    D.    Plaintiffs' Request for Sanctions is Unwarranted and Inappropriate ...... 15

III.  CONCLUSION ..................................................................................... 16

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AGA Medical Corp. v. W.L. Gore & Associates, Inc.*,
 No. 10-cv-3734, 2011 WL 11023511 (D. Minn. Oct. 19, 2011) ............................. 6

*Apple Inc. v. Samsung Elecs. Co.*,
 768 F. Supp. 2d 1040 (N.D. Cal. 2011) .......................................................................... 9

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
 No. 5:11-CV-01846-LHK (PSG), Slip Op. (N.D. Cal. Dec. 22, 2011) .................... 9

*Blue Spike, LLC v. Vizio, Inc.*,
 No. 817CV01172DOCKESX, 2018 WL 8646476
 (C.D. Cal. July 3, 2018) ........................................................................................................ 7

*Counter IP Holding, LLC v. GoPro*,
 No. 15-cv-01108, Dkt. 65 (D. Del. July 6, 2016) ...................................................... 7

*Drone Techs., Inc. v. Parrot S.A.*,
 838 F.3d 1283 (Fed. Cir. 2016) ........................................................................................ 7

*EPOS Techs. v. Pegasus Techs.*,
 842 F. Supp. 2d 31 (D.D.C. 2012) .................................................................................... 6

*Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*,
 No. 04-cv-0038, 2005 WL 2304190 (D. Del. Sept. 20, 2005) ............................... 6

*Gilliam v. Bank of America, N.A.*,
 2017 WL 11001706 (C.D. Cal. Aug. 21, 2017) ....................................................... 14

*Greatbatch Ltd. v. AVX Corp.*,
 179 F. Supp. 3d 370 (D. Del. 2016) .................................................................................. 7

*In re iPhone Application Litig.*,
 2013 WL 1095456 (N.D. Cal. Mar. 7, 2013) ............................................................ 8

*Islander Group, Inc. v. Swimways Corp.*,
 2014 WL 12573995 (D. Haw Jan. 28, 2014) ............................................................. 8

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE*
APPLICATION TO ENFORCE THE COURT'S ORDER   ii          CASE NO. 8:20-CV-00048-JVS (JDEx)

*Kirshner v. Uniden Corp. of Am.*,
   842 F.2d 1074 (9th Cir. 1988) ................................................................... 16

*Mfg. Automation & Software Sys., Inc. v. Hughes*,
   No. 216CV08962CASKSX, 2019 WL 2396308
   (C.D. Cal. June 3, 2019) ........................................................................... 16

*Micro Motion, Inc.v. Kane Steel Co.*,
   894 F.2d 1318 (Fed. Cir. 1990) ................................................................... 8

*Microsoft Corp. v. Multi–Tech Systems, Inc.*,
   No. 00- cv-1412, 2001 WL 37130770 (D. Minn. Dec. 14, 2001)........................ 6, 10

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995) ............................................................ 14

*OMG Fid. Inc. v. Sirius Tech., Inc.*,
   No. 07-80121 MISCRMWRS, 2007 WL 1994230
   (N.D. Cal. July 5, 2007)............................................................................. 9

*PersonalWeb Techs LLC v. Google Inc.*,
   No. 13-cv1317, 2014 WL 4088201 (N.D. Cal. Aug. 19, 2014)............................ 6

*Puritan-Bennett Corp. v. Pruitt*,
   142 F.R.D. 306 (S.D. Iowa 1992)................................................................ 9

*Samsung SDI Co. v. Matsushita Elec. Indus. Co.*,
   No. CV 05-8493AGSHX, 2007 WL 4302701
   (C.D. Cal. June 27, 2007) ........................................................................... 7

*Tessera v. Broadcom Corp.*,
   16-cv-00380 (D. Del. Oct. 19, 2016)........................................................... 7

*Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Group*,
   2016 WL 6246384 (C.D. Cal., Feb. 23, 2016) ............................................... 8

*United States v. Blodgett*,
   709 F.2d 608 (9th Cir. 1983) ................................................................... 16

*Upjohn Co. v. Hygieia Biological Labs.*,
   151 F.R.D. 355 (E.D. Cal. 1993) ................................................................ 9

*Vecron Exim Ltd. v. Stokes*,
   No. 217CV02944CASRAOX, 2018 WL 6062312
   (C.D. Cal. Nov. 20, 2018)........................................................................ 16

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE*
APPLICATION TO ENFORCE THE COURT'S ORDER   iii          CASE NO. 8:20-CV-00048-JVS (JDEX)

**Rules**

N.D. Cal. Patent L.R.  3-4(a) ......................................................................... 2, 5

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE*
APPLICATION TO ENFORCE THE COURT'S ORDER   iv          CASE NO. 8:20-CV-00048-JVS (JDEx)

1    Plaintiffs' *Ex Parte* Application ("Application") is a complete abuse of process,

2    and is filled with blatant misrepresentations that are clearly intended to harass and

3    beleaguer Apple and the Court, and the Court should put a stop to it.  Apple has complied

4    with every Order of this Court, and has already produced documents and source code

5    "sufficient to show the operation of the Accused Products," as ordered.  Dkt. No. 92 at

6    2.  Indeed, Plaintiffs' Application never identifies anything that is missing from Apple's

7    production related to the products that are accused in this case, or anything that Apple

8    has refused to provide.   There is only one legitimate dispute between the parties:

9    whether Apple must produce documents related to an unreleased and unannounced

10   Apple Watch product.  Rather than state that explicitly, however, Plaintiffs' Application

11   instead argues that Apple is "withholding" relevant core technical documents, which is

12   false, as the record plainly reflects.

13        Plaintiffs' Application tries to obscure what Plaintiffs are really after from Apple,

14   namely technical documents related to an ***unannounced and unreleased*** future version

15   of the Apple Watch ("Unreleased Watch"), about which there have been rumors on the

16   Internet.  It is perhaps not surprising that Plaintiffs fail to come right out and ask for—

17   let alone provide a shred of law in support of—what they are seeking, because the law

18   does not permit the discovery Plaintiffs seek.  The Unreleased Watch has not—nor could

19   it have—been accused of infringement.  In fact, as Apple told Plaintiffs repeatedly, the

20   structure and functions of the Unreleased Watch may well be materially different from

21   the Accused Apple Watch Series 3–5 products, just as the Apple Watch Series 3-5

22   products are materially different from the Apple Watch Series 1–2 products that

23   Plaintiffs have not accused of infringement.

24        Plaintiffs' unsupported desire to get their hands on unreleased products and plans

25   is apparently based on Internet rumors and speculation about the Unreleased Watch and

26   the functionalities they speculate the Unreleased Watch may have; Plaintiffs cannot

27

28

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE*
APPLICATION TO ENFORCE THE COURT'S ORDER   1         CASE NO. 8:20-CV-00048-JVS (JDEx)

possibly have a basis to allege infringement of the Unreleased Watch.[1]  Plaintiffs' *Ex Parte* Application is nothing more than a transparent fishing expedition to seek information about features Apple is developing, so they can try to draft patent applications to cover those features or assert different patents against Apple.  Plaintiffs are simply not entitled to use discovery to fish for information about R&D projects under development under the guise of a quest for "core technical documents."

The Court's recent Order regarding core technical documents required production of documents "sufficient to show the operation of the Accused Products."  Dkt. 92 at 2; *see also* N.D. Cal. Patent L.R.  3-4(a).  The unannounced and unreleased watch is not—and cannot be—an Accused Product, and thus there is simply no basis for Plaintiffs to demand source code and technical documentation related to it, particularly as part of Apple's core technical document production.  Moreover, the dispute over future product plans does not require the use of the *ex parte* application process to resolve, as there is no true emergency that warrants departing from the Court's standard briefing process.

Quite clearly, Plaintiffs' goal in filing their Application is to paint Apple as a bad actor and manufacture a supposedly urgent dispute where there is none.  Their motivation cannot be to obtain the information they seek about the actual Accused Products, because Apple has already agreed to provide Plaintiffs with **all** of the information Plaintiffs have requested related to the Accused Products that exists, most of which Plaintiffs only requested for the first time **last week**.

Apple previously completed its core technical document production based on the features and functionality identified in Plaintiffs' First Amended Complaint ("FAC") (Dkt. No. 28) (and in full compliance with the Court's Order (Dkt. 92)).  That is why Apple produced only source code on August 3—***it had already provided all of the other***

---

[1]  Notably, during the parties' meet and confer yesterday, Plaintiffs stated that they were actually accusing the Unreleased Watch of infringing all of the Asserted Patents.  It is unfathomable how Plaintiffs can possibly take such a position when they do not know how the product is structured or how it operates.  If Plaintiffs took this position in a pleading, it would clearly violate Rule 11.

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION TO ENFORCE THE COURT'S ORDER   2      CASE NO. 8:20-CV-00048-JVS (JDEx)

1   ***documents sufficient to show all of the functionality of the Accused Products*** that is
2   accused of infringement in the FAC.  After Apple provided those documents—and just
3   four weeks ago—Plaintiffs added ***five new patents*** to the case and served Preliminary
4   Infringement Contentions in which they accused ***entirely new*** functionality of the
5   Accused Products of infringement.  Since that time, Apple has been working diligently
6   to collect and produce all of the additional core technical documents that are implicated
7   by those brand new allegations, and has already started to produce these documents on
8   a rolling basis, including over 300 new documents produced today.  On the meet and
9   confer with Plaintiffs last night, hours before they filed their Application, Plaintiffs went
10  through each category of documents they seek and, without exception, Apple agreed to
11  immediately produce all of the documents for the Accused Products (other than those
12  that simply do not exist).

13          Notwithstanding Apple's agreement to provide all of the documents Plaintiffs
14  only recently requested, Plaintiffs have now moved for sanctions, apparently based on
15  two complaints: (1) that Apple refuses to produce documents on products that are
16  unreleased, unannounced, and not accused of infringement; and (2) that Apple failed to
17  ***predict*** that Plaintiffs would accuse the newly-identified functionalities and produce
18  discovery related to those newly-accused functionalities ***prior*** to Plaintiffs' recent
19  Second Amended Complaint and Preliminary Infringement Contentions.  As Apple
20  stated during the parties' meet and confer, there was no reason for Plaintiffs to burden
21  the Court with this dispute because ***Apple has agreed to provide*** Plaintiffs with all of the
22  documents they have requested regarding the Accused Products.

23          For the reasons set forth below, the Court should deny Plaintiffs' improper and
24  meritless Application.  Apple also respectfully requests a hearing on Plaintiffs' *Ex Parte*
25  Application to correct the record with respect to Plaintiffs' mischaracterizations in their
26  filings and ensure that the Parties have clear direction as to how to proceed with
27  discovery issues in this case.

28

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE*
APPLICATION TO ENFORCE THE COURT'S ORDER   3        CASE NO. 8:20-CV-00048-JVS (JDEx)

## I.   **BACKGROUND**

On August 3, 2020, the first day Apple made its source code available for inspection and, after Plaintiffs spent only three hours reviewing the code, Plaintiffs sent their first email alleging in generic terms that Apple's source code production was not complete.  Rosenthal Decl., Ex. C.  Apple immediately responded that the produced code included "all of the modules related to the accused features" and requested that Plaintiffs identify any relevant functionality that they allege to be missing.  *Id.*, Ex. D.  Plaintiffs complained over the next several days that Apple had not provided source code related to "physiological parameter calculations" other than pulse rate.  *Id.*, Exs. E-G.  In response, Apple noted that the only "physiological parameter" that is alleged in the FAC and the Second Amended Complaint ("SAC") (Dkt. No. 89-1) to infringe any of the Asserted Claims and that is calculated by the Accused Products using optical signals, which is a requirement of the Asserted Claims, is pulse rate.  *Id.*, Exs. H-J.  Apple did offer, however, to investigate Plaintiffs' request if Plaintiffs identify other physiological parameters that it alleges are relevant to the Asserted Patents and Plaintiffs' allegations in this case, and calculated by the Accused Products.  *Id.*  Plaintiffs repeatedly refused to do so until finally, on August 11, 2020, they revealed their true motivation by explicitly stating that they were seeking information related to a rumored new version of the Apple Watch.  In an email, they argued:



*Id.*, Ex. K.[2]

Wherever Plaintiffs' Application argues that Apple has "refused" to provide technical documents and that Apple's technical document production is "insufficient,"

---

[2]  As discussed below, this email also requested a list of additional documentation, all of which Apple has produced or agreed to produce, to the extent such documentation exists.

Gibson, Dunn & Crutcher LLP

it is referring to documents and source code related to that rumored Unreleased Apple Watch (even though Plaintiffs attempt to hide that fact and never explicitly state as much), because Apple has agreed to produce everything else, to the extent it exists.[3]

## II.   <u>ARGUMENT</u>

As discussed below, Plaintiffs' demand for documents related to Apple's unreleased and unannounced products is contrary to law because it is overbroad and untethered from the infringement allegations in the FAC (or the SAC), and is particularly inappropriate in conjunction with a "core technical document" production that is intended to provide Plaintiffs with documents "sufficient to show the operation of any ***aspects or elements of an Accused Instrumentality identified by the patent claimant***." See N.D. Cal. Patent L.R. 3-4(a) (emphasis added).  Furthermore, with respect to the products actually accused of infringement—the Apple Watch Series 3, 4 and 5—Apple timely produced core technical documents based on the infringement allegations in the FAC, and is on the verge of completing a supplemental production based on the brand new allegations contained in the SAC and Preliminary Infringement Contentions.  There is thus no dispute to be resolved on those issues.

### A.   **Plaintiffs' Attempt to Obtain Information About an Unreleased, Unannounced, and Non-Accused Apple Product is Contrary to Law**

Patent discovery into unreleased products is not proper under the Federal Rules: Though it is true that "[t]he scope of discovery in patent cases should be liberally construed under the Federal Rule of Civil Procedure 26(b)(1)," it is not so broad as to require the discovery of products that do not yet exist in a final form.  Once a final product is developed, if [plaintiff] has reason to believe the product infringes its patents, then [plaintiff] certainly may file suit

---

[3]  Plaintiffs also complain about three minor redactions (consisting of one line each) in Apple's documents that also relate to unreleased and non-final products.  Plaintiffs' request for that sensitive information is improper for the same reasons its request for documents and source code related to an unreleased product is improper.

Gibson, Dunn & Crutcher LLP

1    and appropriately seek discovery regarding that final product.  At the present

2    time, however, the Court will not require [defendant] to produce discovery

3    about its products in development.

4    *EPOS Techs. v. Pegasus Techs.*, 842 F. Supp. 2d 31, 34 (D.D.C. 2012) (internal citation

5    omitted).  The discovery Plaintiffs seek is premature at best because products that are

6    "in flux" cannot advance Plaintiffs' pending claims or be evaluated for infringement.

7    *Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*, No. 04-cv-

8    0038, 2005 WL 2304190, at *6 (D. Del. Sept. 20, 2005) (denying discovery as to a

9    product "that is still in the stages of research and development"); *see also AGA Medical

10   Corp. v. W.L. Gore & Associates, Inc.*, No. 10-cv-3734, 2011 WL 11023511, at *8 (D.

11   Minn. Oct. 19, 2011) (denying motion to compel discovery with respect to products "in

12   development" or "not in the marketplace"); *Microsoft Corp. v. Multi–Tech Systems, Inc.*,

13   No. 00- cv-1412, 2001 WL 37130770, at *8 (D. Minn. Dec. 14, 2001) (denying motion

14   to compel discovery as to a "potential product" because "while [it] may be a continuation

15   of an accused product," possible "future expansion is irrelevant," and a plaintiff "should

16   not be allowed . . . to rifle though [defendant's] files in the hopes of uncovering potential

17   future lawsuits, which have yet ripened into a claim, given the fact that [defendant] may

18   never launch the product in the marketplace"); *PersonalWeb Techs LLC v. Google Inc.*,

19   No. 13-cv1317, 2014 WL 4088201, at *4 (N.D. Cal. Aug. 19, 2014) (unpublished

20   opinion) (denying discovery into a product that "is still in development" as "premature"

21   because "an incomplete, non-'live' product cannot be evaluated for infringement in

22   patent litigation").

23        Plaintiffs' do not cite a ***single*** case in support of their overbroad request for

24   discovery into unreleased products.  Indeed, one has to squint to see that Plaintiffs'

25   request is actually targeted to the Unreleased Watch, despite the fact that the parties'

26   meet and confer discussions squarely identified the Unreleased Watch as the only subject

27   for which Apple refuses to provide discovery.  The Delaware cases Plaintiffs cite—

28   *Contour IP Holding, LLC v. GoPro*, *Greatbatch Ltd. v. AVX Corp.*, and *Tessera, Inc. v.*

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION TO ENFORCE THE COURT'S ORDER   6          CASE NO. 8:20-CV-00048-JVS (JDEx)

1    *Broadcom Corp.* (*see* Dkt. 123-1 at 8)—are easily distinguishable, because those cases

2    did not deal with unreleased products. For example, in *Countour IP*, the accused

3    infringer was not withholding documents related to unreleased products; rather, it was

4    only attempting to limit production only to "documents directed to users." Oral Order,

5    *Counter IP Holding, LLC v. GoPro*, No. 15-cv-01108, Dkt. 65 (D. Del. July 6, 2016)

6    (Dkt. 122-4, Ex. 6). And, in both *Greatbatch* and *Tessera*, the issue was whether the

7    accused infringer was required to provide documents related to products that were

8    already available for sale—not products that were still in development. *See Greatbatch*

9    *Ltd. v. AVX Corp.*, 179 F. Supp. 3d 370, 374 (D. Del. 2016); Oral Order, *Tessera v.*

10   *Broadcom Corp.*, 16-cv-00380 (D. Del. Oct. 19, 2016) (Dkt. 122-4, Ex. 7). None of

11   these cases deal with unreleased products, and thus completely fail to support Plaintiffs

12   argument that they are entitled to core technical documents related to the unreleased and

13   unannounced Apple Watch.

14        The "core technical document" production is intended to provide the patent owner

15   with documents "'sufficient to show' the operation of ***the accused products***." *See Drone*

16   *Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1298–99 (Fed. Cir. 2016) (emphasis added).

17   The scope of such a production does not cover "documents relating to non-accused

18   products." *Id.*; *see also Blue Spike, LLC v. Vizio, Inc.*, No. 817CV01172DOCKESX,

19   2018 WL 8646476, at *5 (C.D. Cal. July 3, 2018) (finding that requests for documents

20   related to non-accused ***functionality*** were "overbroad and therefore seek irrelevant

21   information). Indeed, courts in this District have specifically held that parties are not

22   entitled to discovery on products that are not accused in their infringement contentions

23   or related to the patents-in-suit, and found that requests for such discovery amount to "a

24   fishing expedition." *Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, No. CV 05-

25   8493AGSHX, 2007 WL 4302701, at *3 (C.D. Cal. June 27, 2007) (affirming magistrate

26   judge's denial of discovery relating to non-accused products). Here, the future version

27   of the Apple Watch for which Plaintiffs are seeking information is not an accused

28   product in this case. *See* Rosenthal Decl., Ex. Bat 2–4. This should not be an issue that

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE*
APPLICATION TO ENFORCE THE COURT'S ORDER   7   CASE NO. 8:20-CV-00048-JVS (JDEx)

is in dispute—the ██████████████████████ cannot possibly be an "accused product."  Plaintiffs cannot possibly allege infringement of the device, as they do not know the structure or functionality of the final product.  In fact, ████████████ ████████████████████████████████████████████████ ██████ accused versions of the Apple Watch that Plaintiffs allege to infringe the Asserted Patents, just as the optical sensor modules in the Apple Watch Series 1–3 were substantially different than those in the Apple Watch Series 4 and 5.   Plaintiffs' discovery demands are based solely on speculation and rumor, and thus are improper under the law.  *Micro Motion, Inc.v. Kane Steel Co.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990) ("[R]equested information is not relevant to [the] 'subject matter involved' in the pending action if it the inquiry is based on the party's mere suspicion or speculation.").

Plaintiffs attempt to distract the Court from the lack of any legal basis for their demands by arguing that Apple improperly redacted information from its core technical production.  *See* Application at 8–9.  Plaintiffs cite three cases in support, but Plaintiffs' citations and arguments focus on redactions of non-responsive information for relevance in general, which Apple is ***not*** proposing here.  *Id.* at 9 (citing *Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Group*, 2016 WL 6246384, at *2 (C.D. Cal., Feb. 23, 2016); *Islander Group, Inc. v. Swimways Corp.*, 2014 WL 12573995, at *3 (D. Haw Jan. 28, 2014); and *In re iPhone Application Litig.*, 2013 WL 1095456, at *2 (N.D. Cal. Mar. 7, 2013)).  In fact, Apple will certainly produce a significant amount of unredacted non-responsive information as a result of the way discovery works.  But the redaction here focuses on a narrow set of that non-responsive information which has no relevance to the case, and is extremely sensitive—information about unreleased products, as Plaintiffs concede.  *Id.* at 9.  Because the only information that Apple has redacted relates only to products that are unannounced and are still in development, there is no concern here that such information is or will ever be responsive in this case, and no reason to assume the risks of leaving this information subject to disclosure outside of Apple to opposing counsel, or—even if by accident—to the broader public.  Other courts in this Circuit have

1  previously permitted redactions of information concerning unreleased products for these

2  reasons.  *See* Order Granting-In-Part Defendant's Motion to Compel, *Apple Inc. v.*

3  *Samsung Elecs. Co., Ltd.*, No. 5:11-CV-01846-LHK (PSG), Slip Op. at *4–5 (N.D. Cal.

4  Dec. 22, 2011) ("[T]he court finds that Apple may redact from production sketchbook

5  material not at issue in this lawsuit, either because such material reveals future product

6  designs or because it is not relevant to the patents-in-issue, within the meaning of

7  relevance provided by Fed. R. Civ. P. 26(b)(1).").

8      Plaintiffs' demands are particularly troubling because they seek some of Apple's

9  most sensitive and confidential information.  As other courts in this Circuit have found,

10  "Apple maintains a strict policy of not commenting on future products" and "takes

11  extensive measures to protect information about its unreleased products," treating it as

12  "a trade secret."  *Apple Inc. v. Samsung Elecs. Co.*, 768 F. Supp. 2d 1040, 1048 (N.D.

13  Cal. 2011).  In view of the extremely sensitive, trade secret nature of Apple's future

14  products, and the complete lack of any public disclosure of those products, Apple

15  strongly objects to Plaintiffs' demand that Apple produce information on unannounced

16  products.  To obtain such highly confidential trade secrets, even under a strict "outside

17  counsel only" protective order, Plaintiffs must show more than mere "relevance" alone.

18  Rather, to override the qualified privilege that applies to trade secrets, Plaintiffs must

19  show (1) Apple's unannounced future products are relevant to Plaintiffs claims; (2)

20  Plaintiffs need this information; and (3) there is a "substantial factual basis" for

21  Plaintiffs' arguments.  *See Puritan-Bennett Corp. v. Pruitt*, 142 F.R.D. 306, 309–11

22  (S.D. Iowa 1992) (showing that requested information is trade secret shifts burden to the

23  requesting party to show that the information is both relevant and necessary, and that

24  there is a "substantial factual basis" for its claim); *Upjohn Co. v. Hygieia Biological*

25  *Labs.*, 151 F.R.D. 355, 358 (E.D. Cal. 1993) (trade secret must be both "relevant and

26  necessary to the action"); *OMG Fid. Inc. v. Sirius Tech., Inc.*, No. 07-80121

27  MISCRMWRS, 2007 WL 1994230, at *1 (N.D. Cal. July 5, 2007) ("attenuated

28  relevance" not sufficient to compel disclosure of third party trade secret).

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE*
APPLICATION TO ENFORCE THE COURT'S ORDER   9      CASE NO. 8:20-CV-00048-JVS (JDEx)

Plaintiffs cannot meet any of these three factors.  There have been no announcements about the features or structure of the Unreleased Watch and thus Plaintiffs have no basis to accuse them of infringement, as explained above.  Plaintiffs also cannot show need, because if and when Apple's Unreleased Watch is actually announced and released, Plaintiffs will have an opportunity to examine it and accuse it of infringement should they find a factual basis to do so.  Finally, Plaintiffs have no factual basis, much less a "substantial" one, for their arguments, because Apple has not announced any details about the Unreleased Apple Watch, and in fact Apple has expressly informed Plaintiffs that ███████████████████████████████ ████████████████████████████████████.  Plaintiffs base their entire request on unconfirmed Internet rumors, not a factual basis, and thus fail the third factor as well.

Plaintiffs alleged during the parties' meet and confer last night regarding Plaintiffs' Application that because their infringement contentions accuse, for example, "Apple Watch Series 4 *and later*," they have accused the Unreleased Watch of infringement (and, presumably, every single version of the Watch that Apple ever contemplates releasing in the future).  Rosenthal Decl. ¶ 20.  Their Application also argues that "just because a feature has not yet been released to the public does not mean there is no infringement." Dkt. 123-1 at 9.  These arguments are beside the point; there is no basis to conclude that the Unreleased Watch will have any relevance to this case, and no basis for Plaintiffs to honestly contend that it is already accused of infringement. *See Microsoft Corp.*, 2001 WL 37130770, at *8.  Furthermore, there is absolutely no basis for Plaintiffs to believe that the Unreleased Watch—if or when it is released—will have the same features that are contemplated now during development, or will have similar features to those accused of infringing the Accused Patents.[4]

---

[4] Notably, the structure and functionality of the Apple Watch has materially changed as new Series are released.  This presumably explains why Plaintiffs did not accuse the Apple Watch Series 1 or 2 of infringing the Asserted Patents, and why Plaintiffs did not accuse the Apple Watch Series 3 of infringing 10 of the 12 Asserted Patents.

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE*
APPLICATION TO ENFORCE THE COURT'S ORDER  10          CASE NO. 8:20-CV-00048-JVS (JDEx)

In sum, Plaintiffs' attempt to seek discovery into Apple's unreleased and non-accused products is contrary to law, and should be denied.

**B.    Apple Has Not Refused to Provide <u>Any</u> Documents Related to the Products Actually Accused in this Action**

*1.    Apple's Previous Core Technical Document Production Was Complete as It Related to the Allegations Regarding the Originally-Asserted Patents*

To be absolutely clear, Apple's prior production of core technical documents was complete and proper, and in full compliance with the Patent Local Rules and the Court's Order dated July 29, 2020 (Dkt. 92).  Plaintiffs' Application does not identify anything that was missing from Apple's production.  Indeed, the documents Apple produced pursuant to the Court's core technical document production deadline undisputedly contained documents and source code "sufficient to show the operation of the Accused Products" as it related to Plaintiffs' FAC (and the initial Complaint) in this case.  Dkt. 92 at 2.  The Court did not, as Plaintiffs boldly claim, "reject[] Apple's argument that its 350-page production was sufficient."  Dkt. 123-1 at 6.  The Court did not assess—and could not have assessed—the substantive sufficiency of Apple's prior production because Plaintiffs admitted they had not even reviewed Apple's production at the time of their *ex parte* application that led to the Court's Order.  *See* Dkt. 82.  Rather, the Court's Order was based on the fact that Apple requested Plaintiffs agree to erecting a temporary ethical wall in order to review Apple's confidential documents.  Apple removed that request immediately after the Court issued its Order, effectively completing its production of core technical documents, to the extent it was not already complete.  And Apple produced the full source code for the optical module of all three accused Apple Watch products by August 3, 2020.  As of that date, Apple fully and in good faith believed (and believes today) that its production of core technical documents as they relate to the allegations in the FAC was complete.

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION TO ENFORCE THE COURT'S ORDER   11        CASE NO. 8:20-CV-00048-JVS (JDEx)

### 2.     *Plaintiffs Radically Expanded the Scope of this Case at the End of July, and Apple Has Been Working to Obtain and Provide Documents Related to the Brand New Allegations Since Then*

While Apple's core technical document production was complete as to the FAC by August 3, Plaintiffs radically expanded the scope of the case at the end of July in ways that could not have been predicted by Apple.  Plaintiffs added five new patents to the case that contained claim limitations that were not at issue in the previously-asserted patents.  *See* Dkt. 88 (Application to File Second Amended Complaint).  Plaintiffs also served Preliminary Infringement Contentions where they accused numerous additional functionalities of the Accused Products that were not previously accused.  *See* Rosenthal Decl. ¶¶ 11-13 and Ex. B.

Immediately after Plaintiffs served their Second Amended Complaint and Preliminary Infringement Contentions—four weeks ago—Apple began working diligently to understand the newly accused features of the Accused Products and to gather documents and source code related to those features.  Rosenthal Decl. ¶¶ 22-24. As explained in detail in the attached Declaration of Brian A. Rosenthal, Apple's counsel has had extensive calls with Apple's engineers in charge of the Apple Watch to identify and collect those documents.  *Id*.  Those calls resulted in identification and collection of ***306 additional documents, which Apple produced today***.  Apple's investigation is ongoing, and those calls also resulted in the need to schedule additional telephone calls with other Apple engineers who are knowledgeable about the newly accused subject areas for which Plaintiffs have requested documents.  *Id.*.  Apple is working to schedule those telephone calls as quickly as possible given the work schedules of the relevant engineers.  *Id.*   Finally, Apple has confirmed to Plaintiffs that certain requested documents simply do not exist.  *Id*. ¶ 21.

Apple has been transparent with Plaintiffs throughout this process.  Apple has consistently told Plaintiffs for the past three weeks that it is diligently seeking the documents Plaintiffs have requested and that it will provide the documents as soon as possible.  Rosenthal Decl. ¶¶ 14-19 and 22-24.  Apple reiterated that during the meet

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE*
APPLICATION TO ENFORCE THE COURT'S ORDER   12          CASE NO. 8:20-CV-00048-JVS (JDEx)

and confer with Plaintiffs last night.  Rosenthal Decl. ¶¶ 20-21.  In the midst of a global pandemic, Apple cannot do anything to obtain this information any faster; indeed despite the challenges of doing so, Apple is on the verge of producing all core technical documents for the new patents and features identified for the first time four weeks ago.

### 3.      Apple Has Not Refused to Provide Any Documents

Plaintiffs' Application argues that Apple has "limited its documents and source code to 'features' Apple asserts are at issue and that Apple has "erected yet another roadblock to production."  *See, e.g.*, Dkt. 123-1 at 1, 7.  These statements are false. Despite how Plaintiffs' Application attempts to paint Apple's position, the simple fact is that ***Apple is not refusing, and has not refused, to provide any documents*** Plaintiffs have requested, other than the documents related to the Unreleased Watch, discussed above.  *Id*.  To the contrary, Apple has agreed to provide Plaintiffs with all of the documents and source code they seek, most of which they only just requested ***for the first time just last week***.  *Id*.  Indeed, during the meet and confer last night, Plaintiffs went through their list of desired documents and—with only the exception of the Unreleased Watch—Apple agreed to provide those documents for the Accused Products, to the extent they exist.  *Id.* ¶ 21.

As discussed above, Apple has been diligently working to identify and gather all requested documents, and is producing these documents to Plaintiffs on a rolling basis. *Id.* ¶ 23.  Just today, and as promised during the meet and confer regarding Plaintiffs' Application last night, Apple produced ***306 additional documents***, which include bills of materials for the Accused Products as well as Engineering Requirements Specifications providing the optical properties of the window masks and circuit block diagrams showing the components in the channels that receive signals resulting from the outputs of the photodiode sensors and control circuitry for the LEDs.  *Id*.  To be clear, none of these documents were implicated by Plaintiffs' original allegations in the FAC, and have only become responsive based on Plaintiffs' new allegations in the SAC and Preliminary Infringement Contentions.  Apple's counsel has multiple additional calls

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION TO ENFORCE THE COURT'S ORDER   13      CASE NO. 8:20-CV-00048-JVS (JDEx)

scheduled with Apple's engineers next week to discuss the existence of additional documents and source code, and Apple plans to produce whatever responsive documents can be identified and located based on those calls as soon as they are obtained.

Finally, Plaintiffs curiously complain about the fact that the core technical documents Apple produced reference other documents which Apple has not produced. Dkt. 123-1 at 10-11.  As an initial matter, and despite an hour-long meet and confer last night regarding this Application, Plaintiffs' Application was the first time Plaintiffs have complained about these allegedly missing documents.  Nonetheless, it is hardly surprising that a document references another document that has not been produced— the same could be said about the vast majority of documents produced in any litigation. The question presented by Plaintiffs' Application, however, is not whether Apple's document production is complete or whether there are documents in Apple's possession that have not been produced, whether or not they relate to the accused features of the Accused Products.  Rather, as noted above, the question is whether Apple has produced core technical documents sufficient to show the operation of the accused functionality. The allegedly "missing" documents referenced in the documents Apple has produced are not necessary for Plaintiffs to understand the operation of the accused functionality, and Plaintiffs make no effort to argue that they are.

## C.    There is No Urgency or Prejudice to Warrant *Ex Parte* Relief

"*Ex parte* relief is justified only when the moving party shows that its cause 'will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures.'" *Gilliam v. Bank of America, N.A.*, 2017 WL 11001706, at *1 (C.D. Cal. Aug. 21, 2017) (quoting *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995)).  While Plaintiffs' Application includes a footnote alleging that it could not have brought its issues to the Court using a regularly-noticed motion because the deadline for its Infringement Contentions is September 14, 2020, it otherwise makes no attempt to argue that it would be "irreparably prejudiced."  Dkt. 123-1 at 5 n.2.  Moreover, that sole argument is highly misleading.  The Court's Order

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE*
APPLICATION TO ENFORCE THE COURT'S ORDER   14        CASE NO. 8:20-CV-00048-JVS (JDEx)

regarding core technical document production states that the deadline for Plaintiffs' infringement contentions "is extended until forty-two (42) days after Apple completes its production of core technical documents." Dkt. 92 at 2. Thus, because Apple has already told Plaintiffs that it would be immediately supplementing its core technical document production in view of the new patents and allegations in the case, Plaintiffs' deadline for infringement contentions will automatically be extended until 42 days after those documents are provided by Apple.

Accordingly, there is no prejudice to Plaintiffs in waiting for Apple's documents, which are forthcoming, and there is no urgency that necessitated pursuing sanctions using the *ex parte* application process. Plaintiffs could have brought the sole actual dispute between the parties—whether Apple must provide documents related to unreleased, non-final, and non-accused products under development—using the Court's standard procedures for hearing discovery disputes. Their failure to do so—and attempt to tie an unrelated dispute about unreleased products to Apple's obligations to produce core technical documents related to the Accused Products—should be admonished.

### D.   Plaintiffs' Request for Sanctions is Unwarranted and Inappropriate

Despite Apple's willingness to work with Plaintiffs and agreement to provide everything Plaintiffs have requested about the Accused Products, Plaintiffs are seeking sanctions. Plaintiffs request for sanctions, however, is not based on any refusal to provide any responsive documents or information, as discussed above. Rather, it appears that Plaintiffs base their argument for sanctions on their position that Apple should have been able to either (1) immediately identify and gather responsive technical documents related to discrete functionality identified for the very first time as relevant to this case less than one month ago, or (2) predict months ago that Plaintiffs would materially change the scope of the case and thus provide the documents Plaintiffs now seek earlier in the case. Neither of those positions is reasonable or tenable, and neither certainly warrants the imposition of sanctions.

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION TO ENFORCE THE COURT'S ORDER   15     CASE NO. 8:20-CV-00048-JVS (JDEx)

"The imposition of sanctions under section 1927 requires a finding that counsel acted 'recklessly or in bad faith . . . .'" *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Vecron Exim Ltd. v. Stokes*, No. 217CV02944CASRAOX, 2018 WL 6062312, at *5 (C.D. Cal. Nov. 20, 2018) (finding that bad faith goes beyond "objectively unreasonable behavior"). Here, Apple has at all times acted in good faith, timely responding to Plaintiffs' requests and agreeing to provide responsive documents they request. Apple has raised no frivolous arguments nor engaged in harassing behavior, but has instead acted reasonably in response to Plaintiffs' at times unreasonable demands. *Cf. Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1082 (9th Cir. 1988) (sanctions inappropriate where attorney acted reasonably in not complying with defendant's demand, considering circumstances).

Plaintiffs' Application is an abuse of process and a clear attempt to paint Apple as a bad actor. The fact that Plaintiffs are seeking sanctions, in an *ex parte* application no less, when Apple has agreed to provide Plaintiffs with all of the responsive documents they seek, is an abuse of process.[5]

### III.   CONCLUSION

For the reasons set forth below, the Court should deny Plaintiffs' Application. Apple also respectfully requests a hearing on Plaintiffs' Application.

---

[5]  As this Court has held, "notice and a hearing should precede imposition of a sanction under § 1927." *Mfg. Automation & Software Sys., Inc. v. Hughes*, No. 216CV08962CASKSX, 2019 WL 2396308, at *7 (C.D. Cal. June 3, 2019) (holding that "due process requires an attorney facing sanctions to be given notice, an opportunity to prepare a defense, and a hearing."). Plaintiffs' "emergency" Application provided neither.

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION TO ENFORCE THE COURT'S ORDER   16   CASE NO. 8:20-CV-00048-JVS (JDEx)

1  Dated:  August 21, 2020                    Respectfully submitted,

2                                             JOSHUA H. LERNER
                                              H. MARK LYON
3                                             BRIAN M. BUROKER
                                              BRIAN A. ROSENTHAL
4                                             ILISSA SAMPLIN
                                              ANGELIQUE KAOUNIS
5                                             BRIAN K. ANDREA
                                              GIBSON, DUNN & CRUTCHER LLP
6

7

8                                             By:  */s/ Joshua H. Lerner*
                                                   Joshua H. Lerner
9

10                                            *Attorneys for Defendant Apple Inc.*