Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:  (949) 760-0404 Facsimile:  (949) 760-9502

Adam B. Powell (Bar No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000 Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation | ) Case No. 8:20-cv-00048-JVS-JDE ) ) Hon. James V. Selna ) |
| Plaintiffs, | ) **PLAINTIFFS' REPLY IN SUPPORT OF *EX PARTE*** |
| v. | ) **APPLICATION TO ENFORCE THE COURT'S ORDER** |
| APPLE INC., a California corporation | ) ) ) |
| Defendant. | ) ) |

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ......................................................................................1

II.   ARGUMENT .............................................................................................2

    A.    Apple Did Not Comply With This Court's Order .........................2

          1.    Apple's Admissions Establish It Failed To Comply With The Court's Order..........................................3

          2.    Apple Admits It Limited Its Production to "Accused Features" ...............................................................4

          3.    Apple Admits It Redacted Documents Based on Relevance...................................................................6

          4.    Apple Admits It Failed To Produce Cross-Referenced Documents.......................................................7

          5.    Apple's Source Code Remains Incomplete.......................7

          6.    Apple Failed To Provide Information On Relevant Features...........................................................................8

          7.    Apple Admits It Excluded Documents Regarding an Entire Version of the Accused Products.......................10

               a.    Apple Presents No Argument, Much Less Evidence, That The Series 6 Version Includes Any Relevant Differences .........................10

               b.    Apple Presents No Evidence That The Series 6 Is "In Flux" ...................................12

               c.    Apple Makes No Showing That The Requested Information Constitutes Trade Secrets ................................................................13

    B.    The Court Should Impose Sanctions .........................................15

          1.    Conditional Evidentiary Sanctions Are Appropriate...................................................................15

          2.    Monetary Sanctions Are Also Appropriate .....................15

    C.    *Ex Parte* Relief is Necessary and Appropriate ...........................16

III.   CONCLUSION .......................................................................................17

-i-

# TABLE OF AUTHORITIES

**Page No(s).**

*AGA Medical Corp v. W.L. Gore & Assoc., Inc.*,
2011 WL 11023511 (D. Minn. Oct. 19, 2011)............................................... 11

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
No. 5:11-CV-01846-LHK (PSG), Slip Op. (N.D. Cal. Dec. 22, 2011) ...................................................................................................... 6

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
768 F. Supp. 2d 1040 (N.D. Cal. 2011) ....................................................... 14

*Big Band Networks, Inc. v. Imagine Comm's, Inc.*,
2010 WL 2898288 (D. Del. July 20, 2010)..................................................... 13

*Blue Spike, LLC v. Vizio, Inc.*,
2018 WL 8646476 (C.D. Cal. July 3, 2018) ................................................... 5

*Drone Technologies, Inc. v. Parrot S.A.*,
838 F.3d 1283 (Fed. Cir. 2016) ...................................................................... 10

*Epos Technologies v. Pegasus Technologies*,
842 Supp. 2d 31 (D.D.C. 2012).............................................................. 11, 12

*Fair Isaac Corp. v. Equifax, Inc.*,
2007 WL 2791168 (D. Min. Sept. 25, 2007) ................................................. 14

*Fenster Family Patent Holdings, Inc. v. Siemens Medical Solutions*,
2005 WL 2304190 (D. Del. Sept. 20, 2005) ................................................. 12

*In re iPhone Application Litig.*,
2013 WL 1095456 (N.D. Cal. 2013)................................................................. 6

*Mfg. Automation & Software Sys., Inc. v. Hughes*,
2019 WL 2396308 (C.D. Cal. June 3, 2019).................................................. 15

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
894 F.2d 1318 (Fed. Cir. 1990) ...................................................................... 12

*Microsoft Corp. v. Mutli-Tech Systems., Inc.*,
2001 WL 37130770 (D. Min. Dec. 14, 2001) ............................................... 13

# TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

*Panavision Imaging, LLC v. Omnivision Techs.*,
    2010 WL 11507883 (C.D. Cal. June 6, 2010)......................................... 11, 13

*PersonalWeb Technologies, LLC v. Google Inc.*,
    2014 WL 4088201 (N.D. Cal. Aug. 18, 2014)....................................... 12, 13

*Puritan–Bennett Corp. v. Pruitt*,
    142 F.R.D. 306 (S.D. Iowa 1992) .................................................. 14

*Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co.*,
    2007 WL 4302701 (C.D. Cal. June 27, 2007)................................. 11

*Upjohn Co. v. Hygieia Biological Labs.*,
    151 F.R.D. 355 (E.D. Cal. 1993).................................................. 14

## OTHER AUTHORITIES

N.D. Cal. Patent Local Rule 3-4.............................................................. 5

28 U.S.C. § 1927 ................................................................................ 15

35 U.S.C. § 271.................................................................................. 13

# I.  **INTRODUCTION**

Apple's opposition confirms its production is not complete and that Apple defied this Court's orders in numerous ways.  First, Apple acknowledges it still has not produced all documents required by the Court's Order.  Indeed, Apple's opposition reveals that Apple limited its production to the First Amended Complaint ("FAC") instead of the Second Amended Complaint ("SAC").  Apple argues that was proper because the SAC supposedly drastically changed the "accused features."  But that is not true and, regardless, the Court already rejected Apple's argument that it need not provide documents regarding the SAC.  The Court ordered Apple to provide its core technical documents regarding the Accused Products, not cherry pick documents that discuss certain "features."  Apple's attempt to reargue that issue demonstrates its contempt.

Second, Apple confirms it is limiting its production to the "features" *Apple* concludes are relevant.  In a tortured attempt to justify its position, Apple quotes a different court's local rules requiring discovery regarding "aspects or elements" of the accused products.  But this Court ordered Apple to produce its core technical documents regarding the "Accused *Products*"—not just "aspects or elements" of those products that Apple asserts are relevant.

Third, Apple admits to redacting documents—not for privilege—but for *relevance*.  Apple claims it made only "three minor redactions," but Apple's latest production contains *324 additional redactions*.

Fourth, Apple has still produced *no* documents regarding numerous claimed features.  Plaintiffs patiently tried to obtain compliance for weeks after this Court's deadline, but Apple refused to provide *any* additional information.  *After* Plaintiffs filed their Application, Apple increased its confidential document production nearly *eighty-fold* from 350 pages to over 28,000 pages.  But the vast majority is "filler"—approximately 300 documents largely / / /

consisting of Bills of Material.  Those documents do not resolve the deficiencies in Apple's document and source code productions.

Fifth, Apple admits it is withholding documents regarding an **entire version** of the Accused Product—the Series 6.  Apple presents absolutely **no** evidence that there are material differences in the Series 6 version, or that the development is actually "flux."  Public sources, including Forbes, report that the Series 6 version is due in a matter of weeks.  Apple contradicts its own cases and this Court's order by refusing to provide its core technical documents regarding its Series 6 version of the watch.

Plaintiffs filed this lawsuit **seven months ago** and the Court ordered Apple to provide "core technical documents" long ago.  This Court and Judge Early already rejected Apple's numerous attempts to block patent discovery, culminating in this Court's order weeks ago warning,  "**Now** is the time for Apple to act: the Court expects prompt and full compliance."[1]  The Court should now hold Apple responsible for its refusal to produce documents and its contempt for this Court's Orders.

## II. <u>ARGUMENT</u>

### A. <u>Apple Did Not Comply With This Court's Order</u>

Apple wrongly claims that "[w]henever Plaintiffs' Application argues that Apple has 'refused' to provide technical documents and that Apple's technical document production is 'insufficient,' it is referring to documents and source code related to that rumored Unreleased Apple Watch . . .."  Op. at 4-5.  As shown below, most of Plaintiffs Application identifies deficiencies unrelated to the Series 6 version of the watch.

/ / /

---

[1] All emphasis is added unless noted otherwise.  Exhibits are attached to the Declaration of Perry D. Oldham (Dkt. 123-2) unless noted otherwise.

1.      **Apple's Admissions Establish It Failed To Comply With The Court's Order**

This Court ordered Apple to "produce core technical documents sufficient to show the operation of the Accused Products" by August 3.  Dkt. 92 at 1.  The Court ordered that, if Apple failed to comply, Plaintiffs' infringement contention deadline would be extended until after Apple completes its production.  *Id.*  Apple now *admits* Plaintiffs' deadline will be extended because Apple is "supplementing its core technical document production."  Op. at 15.[2] Accordingly, Apple's prior production did not comply with the Order.

None of Apple's excuses justify its defiance of this Court's Order.  Apple claims it is collecting documents to produce at some unknown date in the future.  *See* Op. at 12 ("Apple's investigation is *ongoing*" and requires "additional telephone calls"), *id.* (Apple "*will* provide the documents as soon as possible"), 13-14 (Apple has "multiple additional calls scheduled with Apple's engineers *next* week" and "plans to produce whatever responsive documents can be identified").  But that just shows Apple's view that it can make up its own schedule, rather than comply with the Court's deadline.  Moreover, Apple did not commit to providing anything before receiving notice of this Application.

Apple argues that, as of August 3, it "believed (and believes today) that its production of core technical documents *as they relate to the allegations in the FAC* was complete."  Op. at 11.  Apple argues it should not have had to produce all of its documents because Plaintiffs' SAC supposedly "radically expanded" the case by adding new patents on July 24.  *Id.* at 12, 15.  But Apple's opposition to Plaintiffs' prior *ex parte* application made the *identical*

---

[2] Apple uses this admission to assert that *ex parte* relief was not necessary or appropriate.  But Apple never admitted its production was incomplete until *after* Plaintiffs filed their motion.  Regardless, this Court ordered the parties to present this dispute on an *ex parte* basis to this Court.  Dkt. 92 at 1.

1   argument.   Dkt. 90 at 1-2 (Apple arguing the SAC supposedly changed the

2   scope of the case such that Apple should not have to produce "core technical

3   documents").  Plaintiffs explained how the SAC *simplified* the technical subject

4   matter in this case by *removing* one of the four patent families at issue.  Dkt. 91

5   at 1.  On July 29, this Court granted Plaintiffs' application and ordered Apple to

6   produce core technical documents regarding the "Accused Products" by August

7   3.  Dkt. 92 at 1.  The Court did *not* provide a separate deadline for "features" or

8   "functionality," much less for "features" supposedly at issue only in the SAC.

9          Moreover, Apple's attempt to blame its failure to produce documents on

10  the SAC is a mere diversion.  Apple primarily points to documents that relate to

11  functionality at issue in the FAC.  For example,

20          **2.     Apple Admits It Limited Its Production to "Accused Features"**

21          Apple's Opposition also confirms Apple is limiting its production to

22  *Apple's* understanding of the *accused features*, not core technical documents

23  for the "Accused Products."  Plaintiffs explained why that was inconsistent with

24  the Court's order and other court decisions addressing similar requirements.

25  Dkt. 123-1 at 7-8.  Apple ignores the text of the Court's Order and attempts to

26  distinguish Plaintiffs' authorities as not concerning "unreleased products."  But

27  that has nothing to do with Apple limiting its production to "accused features,"

28  rather than producing documents regarding the Accused Products.

Apple quotes a Local Rule in another District to argue a "core technical document" production is "intended to provide Plaintiffs with documents 'sufficient to show the operation of *any aspects or elements of an Accused Instrumentality identified by the patent claimant*.'"  Op. at 5 (emphasis in original) (quoting N.D. Cal. Patent L.R. 3-4(a)).  But that is not what this Court's Order required.  This Court ordered Apple to provide core technical documents regarding the "Accused Products"—not just "aspects or elements" that Apple asserts are relevant.

Apple's cited Local Rule addresses a fundamentally different schedule that requires the plaintiff to provide infringement contentions **before** the defendant produces technical documents.  *See* N.D. Cal. Patent L.R. 3-4(a). Here, Apple **stipulated to**, and this Court adopted, a schedule in which Apple provides core technical documents **before** Plaintiffs provide infringement contentions.  *See* Dkt. 33 at 26; Dkt. 37.  Apple denigrates Plaintiffs' authorities as being from Delaware (Op. at 6), but the Delaware rules include a similar schedule whereby the defendant provides core technical documents **before** the plaintiff provides infringement contentions.   Apple's attempt to limit its production to accused "features," which Plaintiffs are not required to identify until **after** Apple completes its production, puts the cart before the horse.[3]

Apple incorrectly claims the only documents it refused to produce relate to the Series 6.  Op. at 13.  As the parties' correspondence shows, Apple repeatedly argued it need not produce documents about "features" it asserts are not at issue.  *See* Ex. 11.  For example,

---

[3] Apple cites *Blue Spike, LLC v. Vizio, Inc.*, 2018 WL 8646476, at *5 (C.D. Cal. July 3, 2018), but case is irrelevant because it addressed specific "Source Code RFPs," not a court order similar to the order at issue here.

-5-

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████

4     Moreover, Apple's own opposition and supporting declaration confirm

5 Apple *is* improperly limiting its production to certain "features."  Apple argues

6 it completed its production for the "***features and functionality*** identified in

7 Plaintiffs' [FAC]."  Op. at 2.  Apple's counsel similarly declares █████████

8 ████████████████████████████████████████████

9 ████████████████████████████████████████████

10 ████████  Those assertions demonstrate Apple's defiance of the Court's Order

11 to produce documents regarding the "Accused Products"—not just the

12 "features" that Apple asserts are at issue.  Dkt. 92 at 1.

       **3.**    <u>**Apple Admits It Redacted Documents Based on Relevance**</u>

14     Apple admits to redacting documents—not for privilege—but for

15 ***relevance***.  Apple claims Plaintiffs' authorities are inapplicable because Apple

16 is redacting information about "unreleased products."  Op. at 8.  But Apple cites

17 no case to support its assertion that redacting information about unreleased

18 products for ***relevance*** is somehow different than redacting other information

19 for ***relevance***.  As another court explained, "Apple's position 'that it may redact

20 information that is not relevant'" is "disturbing" and "unpersuasive at best."  *In*

21 *re iPhone Application Litig.*, 2013 WL 1095456, at *2 (N.D. Cal. 2013).

22     Apple cites a single slip opinion where another court apparently let Apple

23 redact information about unreleased products.  *See Apple Inc. v. Samsung Elecs.*

24 *Co., Ltd.*, No. 5:11-CV-01846-LHK (PSG), Slip Op. at *4-5 (N.D. Cal. Dec. 22,

25 2011).  But Apple's quotation omits the first half of the sentence, where the

26 court explained it allowed such redactions because it was addressing limited

27 discovery for a preliminary injunction.  *See id.*

28 / / /

Apple also attempts to justify its conduct by arguing it made only "three minor redactions (consisting of one line each)." Op. at 5 n.3. Apple deceptively omits that its August 21 production—which Apple served the same day as its opposition—contains **324 additional redactions**. Suppl. Oldham Decl. ¶ 4. Apple is clearly evading its discovery obligations.

### 4. Apple Admits It Failed To Produce Cross-Referenced Documents

Apple admits its technical documents cross-reference other documents that Apple failed to produce. Op. at 14. Apple claims—with no evidence—that the missing documents are "not necessary for Plaintiffs to understand the operation of the accused functionality." *Id.* But Plaintiffs should have the right to make that determination themselves. Moreover, the documents demonstrate the opposite. For example,

### 5. Apple's Source Code Remains Incomplete

Apple claims it produced the "full source code for the optical module of all three accused Apple Watch products . . .." Op. at 11. But this Court's Order did not limit disclosure to the "optical module." Apple's opposition also ignores numerous other deficiencies. For example,



Apple also completely ignores its own broad demand that Plaintiffs produce "all source code, including all prior versions, revisions, comments, and related source code files, for every product that practices or has ever practiced any asserted claim of any asserted patent . . .." Ex. 10.  Apple does not even attempt to explain the double standard it is attempting to impose.[4]

### 6.   Apple Failed To Provide Information On Relevant Features

The vast majority of Apple's new production is "filler"—approximately 300 documents largely consisting of Bills of Material.  Suppl. Oldham Decl. ¶ 3. Apple did not produce at least the following exemplary documents:



/ / /

---

[4] Apple also faults Plaintiffs for spending "only three hours" reviewing Apple's code on August 3.  Op. at 4.  But **Apple** imposed that three-hour limit and Plaintiffs continued reviewing Apple's code on ***other days***.  Ex. 11 at 429-30.



Suppl. Oldham Decl. ¶ 9(k).

While Apple claims it will produce more documents, the Scheduling Order obligated Apple to produce core technical documents ***two months ago*** and this Court ordered Apple to finish its production ***three weeks ago***. Apple steadfastly refused to produce ***anything*** additional until Plaintiffs provided notice of this Application seeking sanctions. What Apple did produce is largely

useless and fails to address the numerous deficiencies identified above.  Apple's conduct is the definition of contempt and underscores that sanctions are necessary and appropriate.

**7.     Apple Admits It Excluded Documents Regarding an Entire Version of the Accused Products**

**a.     Apple Presents No Argument, Much Less Evidence, That The Series 6 Version Includes Any Relevant Differences**

Rather than substantively address the numerous deficiencies above, Apple primarily seeks a ruling that it need not provide documents regarding its Series 6 version of the Watch.  But this Court already ordered Apple to produce core technical documents regarding the "Accused Products."  The Court should not permit Apple to relitigate that order.  Indeed, Apple's Series 6 appears to be merely a new *version* of the *same* Accused Product.  Apple's own cited cases show discovery of different *versions* of the same product is proper.  For example, *Drone Technologies, Inc. v. Parrot S.A.*, 838 F.3d 1283, 1299 (Fed. Cir. 2016), denied discovery regarding different products—the "Bepop Drone" and "MiniDrones"—but granted discovery on different *versions* of the same product, i.e., the "AR.Drone and the AR.Drone 2.0."  *Id.* at 1289, 1299.

That is not a valid basis to withhold documents.

Apple argues the Watch's "functionality" has previously "materially changed as new Series are released."  Op. at 10 n.4.  Apple relies on Plaintiffs accusing the Series 3 of infringing two of the patents-in-suit and the Series 4-5 of infringing all of the patents-in-suit.  *Id.*  But that is precisely Plaintiffs' point.  New versions of the watch *build* on prior versions by *adding* features.  Nothing

1  suggests the Series 6 version will remove infringing features present in prior
2  versions.
3
4
5

6      Apple argues Plaintiffs are not entitled to discovery on products "not
7  accused in their infringement contentions." Op. at 7. But Plaintiffs' contentions
8  are not yet due. The Court ordered Apple to provide core technical documents
9  *now* so Plaintiffs can prepare their contentions using those documents. As
10  Apple's cited cases illustrate, Plaintiffs are entitled to discovery regarding
11  versions of the Accused Product and even *other* "reasonably similar" products.

12      For example, in *AGA Medical Corp v. W.L. Gore & Assoc., Inc.*, 2011
13  WL 11023511 at *7 (D. Minn. Oct. 19, 2011), the Court "*reject[ed]* [the
14  defendant's] suggestion that discovery regarding [a product] is precluded merely
15  because it is *not* expressly identified in the Complaint and is not contained
16  within [the plaintiff's] preliminary infringement chart." The court observed that
17  courts permit discovery of "non-accused products" that are "*reasonably*
18  *similar*" to accused products. *Id.* Similarly, *Epos Technologies v. Pegasus*
19  *Technologies*, 842 Supp. 2d 31, 34 (D.D.C. 2012), did *not* limit discovery to
20  products identified in the plaintiff's infringement contentions. Instead, the court
21  ordered discovery of "information regarding additional *similar* products…." *Id.*

22      Apple's reliance on *Samsung SDI Co., Ltd. v. Matsushita Elec. Indus.*
23  *Co.*, 2007 WL 4302701 (C.D. Cal. June 27, 2007) is misplaced. In *Panavision*
24  *Imaging, LLC v. Omnivision Techs.*, 2010 WL 11507883 at *3-5 (C.D. Cal.
25  June 6, 2010), this Court distinguished *Samsung* where, as here, the plaintiff had
26  a "reasonable basis" to "suspect" the products at issue infringed. The Court
27  rejected the argument that plaintiff was "attempting to engage in a fishing
28  expedition" by seeking discovery on such products to provide infringement

contentions.  *Id*. at *5.  Apple's other cases are inapposite.  *See Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1327 (Fed. Cir. 1990) (precluding discovery from third party where plaintiff did not put forward a "shred of evidence" that **any** of the third party's products infringed); *Fenster Family Patent Holdings, Inc. v. Siemens Medical Solutions*, 2005 WL 2304190, *6 (D. Del. Sept. 20, 2005) (denying discovery where neither party addressed whether the product was within the overall scope of the case).

**b.** **Apple Presents No Evidence That The Series 6 Is "In Flux"**

Apple vaguely argues the Court should not permit discovery as to products "in flux."  Op. at 6.  But nowhere does Apple **actually** demonstrate with evidence that the design of the Series 6 is actually in flux.  Apple will reportedly release the Series 6 in just a few weeks.[5]  Apple cannot credibly assert the Series 6 is "in flux."

Apple cites authorities where, unlike this case, the defendant presented significant **evidence** that the products were in flux.  *See, e.g.*, *Epos Technologies v. Pegasus Technologies*, 842 Supp. 2d 31, 34 (D.D.C. 2012) (declaration from the defendant's CEO explained the products would "change many times" before they were "ready for commercial production"); *PersonalWeb Technologies, LLC v. Google Inc.*, 2014 WL 4088201 at *4 (N.D. Cal. Aug. 18, 2014) (deposition testimony established that the product would "not go live and source code will not be in final release form for another two to three quarters").   Apple submits **no** such evidence here.

/ / /

---

[5] *See* https://www.forbes.com/sites/davidphelan/2020/08/03/apple-watch-series-6-may-have-seriously-useful-upgrade-and-it-cant-come-soon-enough.  Contrary to Apple's argument, Forbes is hardly akin to "internet rumors."  *See* Op. at 10.

1   Apple also cites *Microsoft Corp. v. Mutli-Tech Systems., Inc.*, 2001 WL
2   37130770 (D. Min. Dec. 14, 2001), but there, the plaintiff sought discovery of a
3   "product" that was not even "a product, but rather a team of individuals who are
4   designing next generation voice products at Microsoft . . .." *Id*. at *8.   This
5   Court distinguished *Microsoft* where, as here, the plaintiff provided claim charts
6   for "exemplary" products, which created a "reasonable basis" to suspect
7   infringement of all the relevant products.  *See Panavision*, 2010 WL 11507883
8   at *3-5.   This Court rejected the argument that plaintiff was engaged "in a
9   fishing expedition . . .."   *Id*. at *5.  Rather, the plaintiff was seeking discovery
10  to "conduct the very analysis" that was required, "identif[ying] with specificity"
11  its infringement theories for all accused products.  *Id*.

12   Moreover, the Series 6's formal release status does not defeat an
13  infringement claim because a defendant can infringe by "making" or "using" the
14  infringing product.  *See* 35 U.S. Code § 271(a).  For example, in *Big Band*
15  *Networks, Inc. v. Imagine Comm's, Inc.*, 2010 WL 2898288 at *1 (D. Del. July
16  20, 2010), the Court concluded that even "future products" were discoverable
17  because "products which have not yet been released for sale to consumers may
18  still be found to infringe" if a party "***makes***" or "***uses***" them.  *Id*. (quoting 35
19  U.S.C. 271(a) (emphasis added by court).

20   **c.   Apple Makes No Showing That The Requested**
21   **Information Constitutes Trade Secrets**

22   Apple also states, with no factual support, that the relevant information is
23  a trade secret and thus Plaintiffs must therefore satisfy a three-part test.  Op. at
24  9.   But, again, this Court already ***ordered*** Apple to produce the relevant
25  documents.   Apple's attempt to relitigate this issue and erect yet another
26  roadblock to discovery confirms its contempt.   Regardless, Apple's new
27  argument is legally and factually unsupported.
28  / / /

Apple cites *Puritan–Bennett Corp. v. Pruitt*, 142 F.R.D. 306, 308 (S.D. Iowa 1992), an out-of-circuit case requiring a "substantial basis" to obtaining discovery on trade secret algorithm information. Other courts in the same circuit criticized *Puritan-Bennett* as requiring a "dubious" standard not necessary in that circuit. *See Fair Isaac Corp. v. Equifax, Inc.*, 2007 WL 2791168, *3 (D. Min. Sept. 25, 2007). Even if *Puritan-Bennett*'s "dubious" test applied, Apple would have the ***initial burden*** of showing the relevant information is a trade secret ***and*** that the disclosure would be harmful to the defendant. *See Puritan-Bennett*, 142 F.R.D. at 308, 310 (addressing ***affidavit*** establishing information included "important and confidential trade secrets").

Apples makes no such showing here. Instead, Apple merely cites *Apple Inc. v. Samsung Electronics Co., Ltd.*, 768 F. Supp. 2d 1040, 1408 (N.D. Cal. 2011) and asserts in a conclusory manner that Apple guards its unreleased products as a trade secret. But Apple omits the ***very next sentence***, where the Court observed "the strict protective order required by the Court and stipulated to by the parties ***would provide adequate protection*** to both parties." *Id*. Indeed, the Court stated that Apple's argument was "***not*** well taken" and the Court would ***not*** "assume that outside counsel and experts who agree to strict confidentiality will nevertheless leak information about Apple's products…." *Id*. at 1049.[6] Similarly, here, Apple ignores that the Court's Protective Order will provide adequate protection to any alleged Apple trade secrets.[7]

---

[6] The Court denied discovery in that case because Apple—the plaintiff—had simply not "put its future products at issue." *Apple Inc.*, 768 F. Supp. 2d at 1409. Apple also cites *Upjohn Co. v. Hygieia Biological Labs.*, 151 F.R.D. 355 (E.D. Cal. 1993), but in that case the court ordered discovery, observing that "courts are to broadly construe relevancy requirements." *Id.* at 359.

[7] Apple also accuses Plaintiffs of seeking Apple's information so Plaintiffs can "draft patent applications" on those features. Op. at 2. Apple ignores that the Protective Order contains a prosecution bar. Dkt. 67 ¶ 10.

**B.      The Court Should Impose Sanctions**

Plaintiffs requested two sanctions: (1) a conditional evidentiary sanction and (2) a monetary sanction.  Both are necessary and appropriate in this case.

### 1.      Conditional Evidentiary Sanctions Are Appropriate

The Court should impose a conditional evidentiary sanction that Apple may not rely on any core technical documents it fails to produce by the Court's deadline.   Apple's opposition ***does not even mention this sanction***.   Thus, Plaintiffs' request is undisputed.  Moreover, Apple's opposition demonstrates why this sanction is so important.   Apple claims it produced documents on certain topics or that no such documents exist.   For example, ▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆.   When Plaintiffs explained that Apple did not produce such documents, Apple did not identify any such documents in the production.  Suppl. Oldham Decl. ¶ 5(a).  Similarly, Apple asserts there are no documents on certain topics.  Dkt. 130-2 ¶ 21(f) and (j).  To the extent Apple's representations turn out to be incorrect, the Court should not permit Apple to later rely on documents it says do not exist.

### 2.      Monetary Sanctions Are Also Appropriate

Apple's opposition brief argues only that monetary sanctions are not appropriate against its counsel under Section 1927.   Op. at 16.   While the Court's Order referenced Section 1927, Plaintiffs took no position on whether Apple or its counsel should be required to pay any award of sanctions.  Apple's own cited case explained that notice and a hearing were required because the party was "seeking to hold [counsel] personally liable" under Section 1927. *Mfg. Automation & Software Sys., Inc. v. Hughes*, 2019 WL 2396308, at *7 (C.D. Cal. June 3, 2019).  Plaintiffs merely ask for an award of attorneys' fees.  Plaintiffs are not asking the Court to hold Apple's counsel personally liable.

1    Unfortunately, Apple's conduct in recent days has shown that monetary

2  sanctions are not likely a deterrent at all.  After spending weeks refusing to

3  produce information, Apple seemingly began to take the matter seriously just

4  hours before Plaintiffs filed this Application.  Apple finally offered to produce

5  some (but not all documents), and Apple increased its production from ~1,000

6  pages to over 29,000 pages.  Unfortunately, Apple's production is largely filler

7  and still woefully deficient.   Apple's conduct confirms that only serious

8  consequences will have any impact on Apple's conduct.   Plaintiffs should

9  nonetheless be compensated for their attorneys' fees expended to obtain even

10  minimal discovery and compliance with this Court's orders.

11  **C.    *Ex Parte* Relief is Necessary and Appropriate**

12    Apple's opposition includes a surprising amount of vitriol for a party that

13  essentially admits it failed to comply with the Court's order.   Apple claims

14  Plaintiffs' Application is an "abuse of process" and asks the Court to

15  "admonish[]" Plaintiffs for not using the "standard procedures for hearing

16  discovery disputes."   Op. at 15-16.   Apple accuses Plaintiffs of trying to

17  "manufacture a supposedly urgent dispute where there is none."  Op. at 2.

18    Apple's attacks ignore that this Court specifically ordered the parties to

19  raise this dispute in an *ex parte* application.  *See* Dkt. 92 at 1 ("Should Plaintiffs

20  dispute the sufficiency of Apple's core technical document production, ***the***

21  ***parties shall present the dispute to this Court on an ex parte basis*** . . ..").

22  Plaintiffs' prior proposed order included two options for presenting this dispute:

23  (1) to the Magistrate pursuant to Local Rule 37 or (2) to this Court on an *ex*

24  *parte* basis.  Dkt. 82-1.  This Court chose the latter, presumably to get this case

25  moving.  Apple's attacks and assertions that Plaintiffs should be "admonished"

26  for obeying the Court's order are an attempt to distract from Apple's contempt.

27  / / /

28  / / /

-16-

### III.  <u>CONCLUSION</u>

For all the reasons discussed above, the Court should order Apple to produce all of its core technical documents sufficient to describe the operation of the Accused Products, including but not limited to: (1) documents concerning "features" that Apple claims are not yet at issue, (2) unredacted copies of all documents Apple previously redacted (unless Apple provides a privilege log for such redactions), (3) cross-referenced documents necessary to understand the documents Apple produced, (4) the Watch OS7 source code, (5) documents concerning the features Plaintiffs identified in Section II.A.6, and (6) documents concerning the Series 6 version of the watch.  The Court should also impose both the conditional evidentiary sanction and a monetary sanction.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  August 20, 2020          By: */s/ Perry D. Oldham*
                                     Joseph R. Re
                                     Stephen C. Jensen
                                     Perry D. Oldham
                                     Stephen W. Larson
                                     Adam B. Powell

                                     Attorneys for Plaintiffs,
                                     Masimo Corporation and
                                     Cercacor Laboratories

33370225

-17-