**REDACTED VERSION OF DOCUMENT**

Case 8:20-cv-00048-JVS-JDE   Document 140   Filed 08/24/20   Page 1 of 32   Page ID #:9906

**PROPOSED TO BE FILED UNDER SEAL**

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.:  415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.:  650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

MASIMO CORPORATION,
a Delaware corporation; and
CERCACOR LABORATORIES, INC.,
a Delaware corporation,

Plaintiffs,

v.

APPLE INC.,
a California corporation,

Defendant.

CASE NO. 8:20-cv-00048-JVS (JDEx)

**APPLE'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**Hearing**

Date:         September 14, 2020
Time:         1:30 p.m.
Courtroom:    10C
Judge:        Hon. James V. Selna

**REDACTED PURSUANT TO THE ORDER OF THE COURT DATED 08/27/2020**

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ...................................................................................... 1

II.    BACKGROUND ........................................................................................ 2

       A.     For Decades, Plaintiffs Have Applied For Patents On The Very
              Information They Now Claim Is Secret ........................................... 2

       B.     Plaintiffs Did Nothing As Apple's Patent Applications And Patents
              Published And The Apple Watch Took Off ..................................... 4

       C.     Plaintiffs Are Playing A Shell Game With The Alleged Trade
              Secrets .............................................................................................. 4

       D.     Plaintiffs Delayed Pursuing This Motion ........................................ 4

III.   LEGAL STANDARD ............................................................................... 5

IV.    ARGUMENT ............................................................................................. 6

       A.     Plaintiffs Cannot Show Likelihood Of Success On The Merits ...... 6

              1.     The Purported Trade Secret Is Not A Secret ....................... 7

              2.     Plaintiffs Cannot Establish Misappropriation .................... 13

              3.     The Procedural History And Plaintiffs' Continued Failure To
                     Describe Their Secrets Weighs Against Likelihood Of
                     Success ............................................................................... 16

       B.     Plaintiffs' Allegations Of Irreparable Harm Are Also Baseless .... 17

              1.     Plaintiffs' Vague Allegations Of Harm Are Speculative .... 17

              2.     Plaintiffs' Allegations Of Harm Are Untethered To The
                     Alleged Conduct In The Motion ......................................... 18

              3.     Plaintiffs' Delay Undermines Any Claim Of Irreparable
                     Harm ................................................................................... 19

       C.     The Balance Of Hardships Weighs Against An Injunction ............ 20

              1.     Plaintiffs Will Suffer No Hardship Without An Injunction .... 21

              2.     Apple Will Suffer Significant Hardship If The Injunction
                     Issues .................................................................................. 21

       D.     The Requested Relief Is Not In The Public's Interest ................... 24

V.     CONCLUSION ........................................................................................ 25

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 3 of 49   Page ID
#:11336
Case 8:20-cv-00048-JVS-JDE   Document 140   Filed 08/24/20   Page 3 of 32   Page ID #:9908

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Action Learning Systems, Inc. v. Crowe*,
    2014 WL 12564011 (C.D. Cal. Aug. 11, 2014) ......................................... 6

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ................................................................... 17

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*,
    630 F. Supp. 2d 1084 (N.D. Cal. 2009)...................................................... 25

*Bayer Corp. v. Roche Molecular Sys., Inc.*,
    72 F. Supp. 2d 1111 (N.D. Cal. 1999)........................................................ 16

*Blindlight, LLC v. Cubbinson*,
    2017 WL 6888498 (C.D. Cal. May 16, 2017) ........................................... 20

*BrightView Landscapes, LLC v. Stowell*,
    2017 WL 10511569 (C.D. Cal. Dec. 11, 2017)........................................... 19

*CanWe Studios LLC v. Sinclair*,
    2013 WL 12120437 (C.D. Cal. Nov. 20, 2013) ......................................... 16

*Caribbean Marine Servs. v. Baldridge*,
    844 F.2d 668 (9th Cir. 1988) ..................................................................... 19

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999)................................................................................ 25

*Central Hudson Gas & Elec. v. Pub. Serv. Commission of N.Y.*,
    447 U.S. 557 (1980).................................................................................... 23

*CI Games S.A. v. Destination Films*,
    2016 WL 9185391 (C.D. Cal. Oct. 25, 2016) ............................................. 7

*Citibank, N.A. v. Citytrust*,
    756 F.2d 273 (2d Cir. 1985) ...................................................................... 20

*CleanFish, LLC v. Sims*,
    2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) ........................................... 14

*Diversified Silicone Prods. Corp. v. Elastapro Silicone Sheeting LLC*,
  2020 WL 4390380 (C.D. Cal. May 19, 2020) ........................................................ 19

*Dowell v. Biosense Webster, Inc.*,
  179 Cal. App. 4th 564 (2009) ............................................................................... 25

*Edwards v. Arthur Andersen LLP*,
  44 Cal. 4th 937 (2008) ..................................................................................... 24, 25

*Forcier v. Microsoft Corp.*,
  123 F. Supp. 2d 520 (N.D. Cal. 2000) ..................................................................... 7

*Gallagher Benefit Servs., Inc. v. De La Torre*,
  283 F. App'x 543 (9th Cir. 2008) ......................................................................... 21

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ...................................................................... 6, 17, 24

*Health Net v. U.S.A. Healthnet, Inc.*,
  1993 WL 209564 (C.D. Cal. Jan. 13, 1993) ......................................................... 25

*ICU Med., Inc. v. B. Braun Med., Inc.*,
  224 F.R.D. 461 (N.D. Cal. 2002) .......................................................................... 22

*Ideal Toy Corp. v. Tyco Indus., Inc.*,
  478 F. Supp 1191 (D. Del. 1979) .......................................................................... 22

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
  2016 WL 8861712 (C.D. Cal. Nov. 22, 2016) ...................................................... 24

*J.E.M. Ag. Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*,
  534 U.S. 124 (2001) ................................................................................................. 8

*Javo Beverage Co. v. Cal. Extraction Ventures, Inc.*,
  2020 WL 886527 (S.D. Cal. Feb. 24, 2020) .................................................... 17, 20

*JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC*,
  2020 WL 3963863 (C.D. Cal. July 13, 2020) ....................................................... 18

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
  634 F.2d 1197 (9th Cir. 1980) .............................................................................. 18

*Lydo Enters., Inc. v. City of Las Vegas*,
  745 F.2d 1211 (9th Cir. 1984) .............................................................................. 17

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
iii
CASE NO. 8:20-cv-00048-JVS (JDEx)

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009) ............................................................... 5, 6

*Martin v. Muniz*,
   2018 WL 2902091 (N.D. Cal. July 5, 2018) ........................................... 16

*McElliot v. Bank of Am.*,
   2010 WL 5128264 (C.D. Cal. Dec. 10, 2010) ......................................... 16

*Miller v. Cal. Pac. Med. Ctr.*,
   991 F.2d 536 (9th Cir. 1993) .................................................................. 17

*Munaf v. Geren*,
   553 U.S. 674 (2008) ................................................................................. 5

*Natural Res. Def. Council, Inc. v. Winter*,
   508 F.3d 885 (9th Cir. 2007) .................................................................. 24

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,
   762 F.2d 1374 (9th Cir. 1985) ................................................................ 17

*Oren Enterprises, Inc. v. Stefanie Cove & Co.*,
   2017 WL 8220230 (C.D. Cal. June 2, 2017) ........................................... 20

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
   810 F.3d 631 (9th Cir. 2015) .................................................................. 15

*Perfect 10, Inc. v. Google, Inc.*,
   653 F.3d 976 (9th Cir. 2011) .................................................................. 18

*Se. Promotions, Ltd. v. Conrad*,
   420 U.S. 546 (1975) ............................................................................... 23

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) ................................................................ 24

*Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*,
   909 F. Supp. 1353 (C.D. Cal. 1995) ......................................................... 7

*Super Chefs, Inc. v. Second Bite Foods, Inc.*,
   2015 WL 12914441 (C.D. Cal. June 11, 2015) ....................................... 20

*Swarmify, Inc. v. Cloudflare, Inc.*,
   2018 WL 1142204 (N.D. Cal. Mar. 2, 2018) .......................................... 17

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 6 of 49   Page ID
#:11339
Case 8:20-cv-00048-JVS-JDE   Document 140   Filed 08/24/20   Page 6 of 32   Page ID #:9911

*Tough Traveler. Ltd. v. Outbound Prods.*,
    60 F.3d 964 (2d Cir. 1995) ............................................................... 20

*Versa Prod., Inc. v. Stitch Indus., Inc.*,
    2014 WL 12569458 (C.D. Cal. July 2, 2014) ......................................... 24

*WeRide Corp. v. Kun Huang*,
    379 F. Supp. 3d 834 (N.D. Cal. 2019) .................................................. 6

*Whyte v. Schlage Lock Co.*,
    101 Cal. App. 4th 1443 (2002) .................................................... 16, 25

*Winter v. Natural Res. Def. Council*,
    555 U.S. 7 (2008) ............................................................. 5, 17, 20

*Wolowitz v. United States*,
    1975 WL 21125185 (Ct. Cl. 1975) ...................................................... 22

**Statutes**

35 U.S.C. 122(b) ............................................................................ 23

35 U.S.C. § 115(d) .......................................................................... 14

35 U.S.C. § 115(d)(2)(b) .................................................................... 14

35 U.S.C. § 122(b)(2)(B) .................................................................... 22

35 U.S.C. § 122(b)(2)(B)(ii) ................................................................ 15

35 U.S.C. § 181 ............................................................................. 23

Cal. Civ. Code § 3426.1(b)(1) .............................................................. 13

Cal. Civ. Code § 3426.1(b)(2) .............................................................. 14

**Rules**

Fed. R. Civ. P. 65(c) ...................................................................... 25

Fed. R. Civ. P. 65(d)(1) .................................................................... 6

**Regulations**

37 C.F.R. 1.213 ............................................................................ 23

## I.   **INTRODUCTION**

Plaintiffs' Motion for a Preliminary Injunction should be denied.  From beginning to end, the Motion is improper and inaccurate.

*First*, as to likelihood of success on the merits, the Motion demonstrates why Plaintiffs have stalled describing their alleged trade secrets for eight months:  they do not have "secrets."  Plaintiffs claim that in 2019 Apple disclosed their ████████ ████████████ secrets via one Apple patent naming as an inventor their former employee, Marcelo Lamego, who worked at Apple for six months, six years ago, and that Apple should be liable for misappropriation as a result.  But in fact, Masimo began seeking patent protection on these ████████████████████████ from the earliest days of the company and were issued patents describing *all* of the details of these alleged "trade secrets" well *before* the publication of Apple's Lamego application (the "'754 Patent").  Thus, the central premise of the Motion supplied by the declaration of Plaintiffs' CEO—████████████████████████████ ████████████████████—is false.  Plaintiffs' failure to inform the Court that they meticulously patented and published the techniques they claim to have kept in confidence is at best negligent oversight.  And their argument that other unnamed former employees will inevitably disclose trade secrets depends on speculation and is contrary to California law.  Plaintiffs are *unlikely* to succeed on their trade secret claim.

*Second*, Plaintiffs cannot establish irreparable harm.  The only harm Plaintiffs complain of is future publication.  But Plaintiffs provide no evidence that any patent application or patent naming Lamego as an inventor will publish.  Nor can they:  there are no pending Apple patent applications listing Lamego as an inventor that have not already published.  As to any other former employees, Plaintiffs suggest—without proffering any evidence—that they will suffer harm absent a wildly overbroad injunction—one that bars disclosure of *any* patent application, patent, document, or other presentation naming *any* former employee as an inventor or author if the publication relates to *any* monitoring health-related information.  That speculation bears no causal

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 8 of 49   Page ID
#:11341
Case 8:20-cv-00048-JVS-JDE   Document 140   Filed 08/24/20   Page 8 of 32   Page ID #:9913

1    connection to the one patent Plaintiffs identified in their Motion, Lamego's '754 Patent.

2    Further, Plaintiffs' long delay in filing this case and seeking injunctive relief, particularly

3    after they threatened to seek a preliminary injunction *five months ago* when Apple

4    refused the improper relief Plaintiffs seek here, is fatal to their request for an injunction.

5         *Third*, there is a reason why Plaintiffs cite no cases supporting the expansive

6    injunction they seek. No such case exists. That is because the balance of harms and the

7    public interest strongly weigh against the relief sought. Plaintiffs have not identified

8    any concrete threat of harm to them, and ignore the obvious threat to Apple. Plaintiffs

9    seek access to broad swaths of Apple's commercially-sensitive, confidential

10   information—*every document authored by their former employees concerning the*

11   *measure of health-related information*—without anything more than speculation that the

12   information *might* include Plaintiffs' as yet unidentified trade secrets. Plaintiffs then

13   seek to delay Apple's "publication," including patent prosecution, for at least sixty days

14   while they review the information, and longer if they identify information that they claim

15   is their trade secret. This not only puts Plaintiffs in control of Apple's patent prosecution

16   on the basis of speculation that the patents might include an as yet unidentified secret, it

17   also muzzles Apple's and its employees' speech. Finally, the demand for disclosure is

18   not only contrary to the inevitable disclosure doctrine, it runs afoul of established law

19   holding that former employees may not require ongoing disclosure from employees

20   post-employment, because it creates a de-facto non-competition agreement.

21        For the foregoing reasons, the Court should deny Plaintiffs' baseless Motion.

22                   **II.   BACKGROUND**

23        Plaintiffs' belatedly filed Motion is the latest in a series of allegations premised

24   on rank speculation that flout California law.

25        **A.   For Decades, Plaintiffs Have Applied For Patents On The Very**

26            **Information They Now Claim Is Secret**

27   ████████████████████████████████████████████

28   ████████████████████████████████████, Plaintiffs

1    meticulously patented and published—over more than 20 years—each and every detail

2    of the alleged trade secrets that Plaintiffs claim are set forth in Apple's '754 Patent.

3            In 1997, Masimo filed a provisional application that would result in the issuance

4    of U.S. Patent No. 6,229,856 ("the '856 Patent") on May 8, 2001.  The '856 Patent

5    disclosed nearly every aspect of the process that Plaintiffs now contend is a trade secret,

6    ████████████████████████████████████████████████

7    ████████████████████████████████████████████████

8    ████████████████████████████████████████████████

9    ████████████████████████████████████████████████

10   ████████████████████████████████████████████████

11   ████████████████████████████████████████████████

12   ████████████████████████████████████.  But in 2003, Masimo filed another

13   patent application ███████████████████████████████████████████████

14   ████████████████████████████████.  That application published in

15   2005 as U.S. Patent Application No. 2005/0010092 ("the '092 Application") and stated

16   that extension of the disclosed system to a system with more than two emitters would be

17   "straightforward."  Ex. B ('092 Application) ¶¶ ████, 88.

18   ████████████████████████████████████████████████

19   ████████████████████████████████████████████████

20   ████████████████████████████████████████████████

21   ████████████.  Three months later, Masimo filed a provisional application which issued

22   as U.S. Patent No. 9,861,305 ("the '305 Patent") in 2018, in which Masimo describes in

23   painstaking detail how to use ████████████████████████████████████████

24   ████████████████████████████████████████████████

25   ████████████.  Cercacor then filed a provisional application in July 2009 that led to the

26   issuance of U.S. Patent No. 8,471,713 ("the '713 Patent") on June 25, 2013 ███████████

27   ████████████████████████████████████████████████

28

---

[1]  All references to "Ex." are references to the Lerner Declaration.

**B.     Plaintiffs Did Nothing As Apple's Patent Applications And Patents Published And The Apple Watch Took Off**

On March 3, 2016, an Apple patent application entitled "Reflective Surface Treatments For Optical Sensors," naming Lamego as an inventor, published. SAC ¶ 52 (citing the '196 application, which issued as the '052 patent—subject of the Fourteenth Cause of Action). Plaintiffs did not even write a letter to Apple about this application.

Over the next three years, between August 2017 and March 2019, Apple patent applications and patents naming Lamego as an inventor, continued to publish—including the three applications Plaintiffs listed in the SAC as containing "Confidential Information." *See, e.g.*, SAC ¶ 238. Plaintiffs still did nothing.

Apple released the first version of its highly publicized Apple Watch in April 2015. SAC ¶ 25. By the end of 2019, Apple had released five more versions of the watch, and estimated global sales for the watch exceeded 30 million units for that year alone. *See* Ex. E. But it was only in 2020, after Apple had spent five years growing the market and demonstrating itself to be the market leader, that Plaintiffs filed this lawsuit.

**C.     Plaintiffs Are Playing A Shell Game With The Alleged Trade Secrets**

Plaintiffs have repeatedly failed to meet even the pleading standard for describing a secret. Apple pointed this out in its Motion to Dismiss the original Complaint and again in its Motion to Dismiss the FAC's trade secret claim, which the Court granted. Dkt. No. 60. Plaintiffs then filed the SAC, which, as Apple explained in its pending Motion to Dismiss, still fails to adequately describe any secret, Dkt. No. 104 (noticed for hearing Oct. 5, 2020). Furthermore, Plaintiffs have yet to provide a Section 2019.210 disclosure, even though Apple has been asking for one since the beginning of this case.

**D.     Plaintiffs Delayed Pursuing This Motion**

Nearly six months ago, on March 4, 2020, Plaintiffs began demanding that "Apple immediately request non-publication of any pending application concerning

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 11 of 49   Page ID
#:11344
Case 8:20-cv-00048-JVS-JDE   Document 140   Filed 08/24/20   Page 11 of 32   Page ID
#:9916

physiological monitoring that may contain information from former Masimo or Cercacor employees" and requesting that "Apple notify them before publishing any such applications so that they can evaluate whether such publication would disclose any of their trade secrets." Pls.' Ex. 6.  Apple promptly asked Plaintiff to identify any trade secrets in any published patent application or patent from Apple.  Pls.' Ex. 7.

On March 27, Plaintiffs again demanded that Apple "provide [Plaintiffs] with copies of any pending applications naming any of Plaintiffs' former employees as an inventor so we can determine whether applications contain Plaintiffs' trade secrets." Ex. F at 1.  Plaintiffs also threatened *this Motion*:  "If Apple refuses to provide such basic information, we may have no choice but to seek a preliminary injunction to prevent publication of the patent applications at issue." *Id*. at 2.  On April 2, Apple again asked Plaintiffs to identify their alleged secrets, including any disclosed in an Apple patent. Ex. G at 2-3.  Apple also explained that Plaintiffs' demand for disclosure of every application naming former employees as inventors was contrary to California law, which rejects the inevitable disclosure doctrine. *Id*. at 3.  Plaintiffs waited nearly *four and half months* to file the Motion after learning that Apple would not agree to Plaintiffs' relief.

### III.   <u>LEGAL STANDARD</u>

A preliminary injunction is an "extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008).  A party seeking a preliminary injunction must make a "clear showing" of *each* of the following elements:  (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) an advancement of the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20, 22 (2008).

While Plaintiffs (Br. at 12) cast their requested injunction as prohibitory, the injunction orders Apple to "take action," and therefore is mandatory. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009).  Plaintiffs would have Apple look out for, stop, and then provide to Plaintiffs' lawyers for review, any publication relating to "measurement or tracking of

health-related or physiological information" that names a former employee of Plaintiffs as an author or inventor. *See* Prop. Order, Dkt. No. 108-1. Mandatory injunctions that go beyond maintaining the status quo are "particularly disfavored," *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015), and "are not granted unless extreme or very serious damage will result and are not issued … where the injury complained of is capable of compensation in damages," *Marlyn Nutraceuticals*, 571 F.3d at 879. Plaintiffs' "doubly demanding" burden is to "establish that the law and facts *clearly favor* [their] position, not simply that [they] [are] likely to succeed." *Garcia*, 786 F.3d at 740.

As another court in this District recognized in *Action Learning Systems, Inc. v. Crowe*, 2014 WL 12564011, at *4 (C.D. Cal. Aug. 11, 2014), it makes no sense to grant a preliminary injunction in a trade secret case where the plaintiff has not provided an adequate description of its alleged trade secrets. "Though no published decision has clearly made [compliance with Section 2019.210] an absolute prerequisite to obtaining preliminary injunctive relief, *this Court frankly does not see how a plaintiff can carry its heavy burden under Rule 65 and Winter without specifying what, exactly, it is trying to protect. Moreover, the Court does not see how it could possibly issue an order consistent with Rule 65(d)(1) without knowing what exactly the plaintiff owns*." *Id.* (citing Fed. R. Civ. P. 65(d)(1)) (emphasis added); *see also WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845 (N.D. Cal. 2019), *modified in part*, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019) ("To commence discovery and to obtain a preliminary injunction, a plaintiff must first identify its alleged trade secrets with 'reasonable particularity.'").

## IV.   ARGUMENT

### A.   Plaintiffs Cannot Show Likelihood Of Success On The Merits

A prima facie CUTSA claim "requires the plaintiff to demonstrate:  (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiffs trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *Action Learning Sys.*, 2014 WL 12564011, at *4 (citation omitted). "[T]he

1  test for a trade secret is whether the matter sought to be protected is information (1) that

2  is valuable because it is unknown to others and (2) that the owner has attempted to keep

3  secret." *Id.* at *5 (citation omitted).  Information disclosed to the public is not a trade

4  secret. *Id.* (citation omitted).  By the same token, "[i]f a so-called trade secret is fully

5  disclosed by the products produced by use of the secret then the right to protection is

6  lost." *Id.* (citation omitted).  "[D]isclosure of a trade secret in a patent places the

7  information comprising the secret into the public domain." *Stutz Motor Car of Am., Inc.*

8  *v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1359 (C.D. Cal. 1995), *aff'd*, 113 F.3d 1258

9  (Fed. Cir. 1997); *see also Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 528 (N.D.

10  Cal. 2000) (same, for patents and patent applications).

11       As set forth below, Plaintiffs cannot demonstrate success on a single element of

12  the trade secret claim that they have now tried and failed to plead three separate times.[2]

13           **1.    The Purported Trade Secret Is Not A Secret**

14       The  fundamental  premise  of  Plaintiffs'  Motion ███████████████████████

15  █████████████████████████████████████████████  is demonstrably

16  false.   As shown in detail below, *each and every* step of Plaintiffs' allegedly

17  "confidential  process"—individually,  and  in  the  sequence  described  in  Plaintiffs'

18  Motion—had already been published *by Plaintiffs* by the time the '754 Patent was

19  published on March 5, 2019.  *See* Sarrafzadeh Decl. ¶ 10, 17-41 (portions of the '754

20  Patent identified by Plaintiffs are disclosed in the '713 and '305 Patents).[3]  Detailed

21  charts setting forth, on a line-by-line basis, the public disclosure of Plaintiffs' alleged

22  trade secret process in Plaintiffs' '713 and '305 Patents are attached as Appendix A.

23  Since Plaintiffs published these techniques, they are not trade secrets and cannot give

---

[2]      h Plaintiffs suggest (at 4) that their ████████████████████████
████████  are merely an "example" of the alleged
████t solely on this trade secret, because they have presented no "factual support
beyond the allegations of the complaint" as to the other secrets pled in the SAC.  *CI
Games S.A. v. Destination Films*, 2016 WL 9185391, at *11 (C.D. Cal. Oct. 25, 2016).

[3]      Due to the highly compressed schedule for this response brief (five Court days), and
Plaintiffs' refusal to expedite approval of Dr. Sarrafzadeh under the Protective Order,
Dr. Sarrafzadeh's analysis was limited to public documents.

1    rise to a misappropriation claim at all, let alone the extraordinary injunctive relief

2    Plaintiffs seek.

3        Plaintiffs and their counsel know that they disclosed and patented their so-called

4    "confidential" process. All three of Plaintiffs' declarants—Kiani, Diab, and Poeze—are

5    named inventors on one of the '713 or '305 Patents. Plaintiffs' litigation counsel

6    prosecuted both patents. Exs. C & D, Cover. ████████████████████████████████

7    ███████████████████████████████████████████████████████████████████████

8    ███████████████████████████████████████████████████████████████████████

9    ███████████████████████████████████████████████████████████████████████

10   █████████████████████████████████████ Plaintiffs' Motion says nothing

11   about their own published patents, instead creating the false impression that Plaintiffs

12   decided not to patent these techniques. *Id.* ¶ 4. Given that Plaintiffs and their counsel

13   knew about the '713 and '305 Patents, this Motion should never have been brought.

14       Plaintiffs cannot claim trade secret status over techniques for which they have

15   obtained patent protection. "The disclosure required by the Patent Act is 'the *quid pro*

16   *quo* of the right to exclude.'" *J.E.M. Ag. Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534

17   U.S. 124, 142 (2001) (citation omitted). Masimo and its litigation counsel (who have

18   been the architects of Masimo's patent portfolio for 30 years) routinely extoll the

19   benefits Masimo has reaped from its prolific use of the patent system.[4] Masimo has for

20   years used its patent portfolio to try to corner the market on pulse oximetry and collect

21   hundreds of millions of dollars. Yet now, Masimo seeks to ignore its side of the *quid*

22   *pro quo* bargain of the disclosure it dedicated to the public in the '713 and '305 Patents

23   by claiming that the same disclosures constitute a confidential, trade secret process.

24       The analysis below walks through each bullet of Plaintiffs' alleged trade secrets

25   (Br. at 7-11) and demonstrates that each was disclosed in either the '713 Patent, the '305

26   Patent, or both, before the publication of Apple's '754 Patent.

27

28

---

[4]  *See, e.g.*, Ex. H; Br. at 2 (citing Masimo's litigation victories).

a) ████████████████████████
████████████████

The '713 Patent discloses that ████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████
██████████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████). Plaintiffs' '713 Patent discloses ██████████████ "a 48 KHz composite signal." Ex. D at 8:17-21.

b) ████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████ As shown above, the '713 Patent discloses ████████████████████. The '713 Patent also discloses ████████████████████████████████████████ to ████████████████████████████████████████
██████████████████████████████

c) ████████████████████████
██████████████████████████████
███████████████████████████████████████
████████████████████████

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 16 of 49   Page ID
#:11349
Case 8:20-cv-00048-JVS-JDE   Document 140   Filed 08/24/20   Page 16 of 32   Page ID
#:9921

The '713 Patent explains that

**d)**

As shown in

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 17 of 49   Page ID
#:11350
Case 8:20-cv-00048-JVS-JDE   Document 140   Filed 08/24/20   Page 17 of 32   Page ID
#:9922

1

2

3

4

5

6

7

8

9

10    **e)**

11

12

13

14

15

16

17

18

19

20    **f)**

21

22    The '305 Patent describes

23

24

25

26

27

28

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 18 of 49   Page ID
#:11351
Case 8:20-cv-00048-JVS-JDE   Document 140   Filed 08/24/20   Page 18 of 32   Page ID
#:9923

1     ████████████████████████████████████ ███████████████.

2     The '305 Patent explains ██████████████████ ██ ████████████

3     ████████████████████████████████████████████████████

4     ████████████████████████████████████████████████████

5     ████████████████████████████████████████████████████

6     ████████████████████████████████████████████████████

7     ████████████████████ ████████████████████████████████

8     ████████████████████████████████████████████████████

9     ████████████████████████████████████████████████████

10     ████████████████; *see also* Sarrafzadeh Decl. ¶¶ 31-33.[5] The

11     ████████████████████████████████████████████████████

12     ████████████████████████████████████████████ █ ██

13     **g)** ████████████████████████████████████████

14     ████████████████████████████████████████

15     ████████████████████████████████████████████████████

16     ████████████████████████████████ Specifically, the '305

17     Patent states that ██████████████████

18     ████████████████████████████████████████████████████

19     ████████████████████████████████████████████████████

20     ████ ██████████████████████████████████████████████

21     ██████████ *See, e.g.*, Sarrafzadeh Decl. ¶¶ 34-35.

22     **h)** ████████████████████████████████████████

23     ████████████████████████████████████████

24     ████████████████████████████████████████████████████

25     ████████████████████████████████████████████████████

26     ████████████████████████████████████████████████████

27     _____

28     [5] Although the '713 Patent ████████████████████████
    ████████████████████████████████████

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 19 of 49   Page ID
#:11352
Case 8:20-cv-00048-JVS-JDE   Document 140   Filed 08/24/20   Page 19 of 32   Page ID
#:9924

1  ████████████████████████████████████████  The

2  '305 Patent states that ██████████████████████████

3  ████████████████████████████████████████████

4  ████████████████████████████████████████████

5  ████████████████████           █████████████████████. *See,*

6  *e.g.*, Sarrafzadeh Decl. ¶¶ 36-37.

7      **i)**  ████████████████████████

8         ████████████████████████

9         ███████████████

10  The '305 Patent explains that ████████████████████.

11  ████████████████████████████████████████████

12  ████████████████████████████████████████████

13  ████████████████████████████████████████████

14  ████████████████████████████████████████████

15  ████████████████████████████████████████████

16  ████████████████ █ ██████

17      **j)**  ████████████████████████

18         ███████████████████████

19  The '305 Patent states that ████████████████████

20  ████████████████████████████████████████████

21  ████████████████████████████████████████████

22  ████████████████████████████████████████████

23  ████████████████████████████████████████████

24  ███████████████████████

25  **2.**   **Plaintiffs Cannot Establish Misappropriation**

26  Plaintiffs argue that they are likely to show misappropriation by acquisition, use,

27  and disclosure.  Br. at 14-17.  Not so.  Plaintiffs cannot prove misappropriation by

28  "[a]cqui[sition]," because they cannot show that Apple acquired their alleged secrets and

knew or had reason to know that the secrets were acquired by "improper means." Cal. Civ. Code § 3426.1(b)(1). Nor can Plaintiffs prove misappropriation by "[d]isclosure or use," because they cannot show that Apple used or disclosed their alleged secrets without consent and that either Apple "[u]sed improper means" to acquire those secrets or knew or should have known that its knowledge was "[d]erived from … a person who owed a duty to [Plaintiffs] to maintain [their] secrecy or limit [their] use." *Id*. § 3426.1(b)(2).

### a) Plaintiffs Cannot Show That Apple Knew Or Should Have Known Or Foreseen Misappropriation By Lamego

Plaintiffs' allegations about Apple's alleged misappropriation via Lamego are insufficient to state a claim. Plaintiffs proffer no evidence that Apple knew or should have foreseen that the specific portions of the '754 Patent that Plaintiffs now cite in their Motion were a secret. Nor could they—because those portions of the '754 Patent were *not* secret (they already had been publicly disclosed by *Plaintiffs* (*see supra* Part IV.A.1)). The threat letter Plaintiffs sent Apple after Apple hired Lamego (Br. at 16) does not identify a single trade secret either; it identifies invalid non-competition and non-solicit clauses, and suggests that Apple impose invalid restrictions on Plaintiffs' former employee. Thus, Apple's receipt of the letter cannot support a plausible inference that Apple knew or had reason to know which specific information, if any, Lamego purportedly had a duty to keep secret. *See, e.g.*, *CleanFish, LLC v. Sims*, 2020 WL 1274991, at *10 (N.D. Cal. Mar. 17, 2020) ("Plaintiff does not allege any factual basis to support the conclusion that [] Defendants knew that the information [the former employee] provided … was actually Plaintiff's [or] knew that it was protectable . . . .").

Plaintiffs suggest that Apple should have "suspected some impropriety" because Lamego refused to sign an inventor declaration for the '754 patent application. Br. at 15. Companies routinely rely on 35 U.S.C. § 115(d) when filing applications invented by former employees, as it permits applicants to file a statement in lieu of an inventor oath when an inventor "has refused to make the oath or declaration." *Id*. § 115(d)(2)(b). Indeed, Cercacor has filed the *very same statement for patent applications naming*

1   *Lamego* after he left Cercacor.  Ex. I.  Plaintiffs also point to Apple's non-publication

2   request under 35 U.S.C. § 122(b)(2)(B)(ii) to imply that Apple purposefully concealed

3   the contents of the '754 patent application from Plaintiffs.  Br. at 4, 7.  Again, this is a

4   routine patent procedure that Apple has used for hundreds of patent applications over

5   the last several years.  Lerner Decl. ¶ 4.  And again, Plaintiffs regularly use the procedure

6   themselves.  Ex. J.  There is nothing nefarious or suspicious about Apple's use of these

7   routine patent office procedures that Plaintiffs themselves regularly use.

8           In sum, Plaintiffs cannot show that Apple knew or should have known of any

9   alleged misappropriation by Lamego.  For the same reasons, Plaintiffs also cannot show

10   that any such alleged misappropriation was foreseeable, and therefore cannot hold Apple

11   liable for Lamego's conduct under the doctrine of respondeat superior.  Br. at 16.  Nor

12   should this Court grant injunctive relief based on the doctrine of respondeat superior in

13   any event—because Plaintiffs did not plead this legal theory or the corresponding factual

14   allegations in their SAC; rather, these allegations appear for the first time in Plaintiffs'

15   Motion.  *Cf. Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636

16   (9th Cir. 2015) (requiring "a sufficient nexus between the claims raised in a motion for

17   injunctive relief and the claims set forth in the underlying complaint itself").[6,7]

18           **b)   Plaintiffs Improperly Rely On Inevitable Disclosure For**
19           **The Unnamed Other Former Employees**

20           Putting aside Lamego, all Plaintiffs have with respect to the unnamed other former

21   employees that are the subject of their requested relief is an improper suggestion that

22   because the employees worked with Plaintiffs' allegedly confidential information, they

23   disclosed those secrets to Apple.  That, however, runs roughshod over California law.

24           "For the purposes of a preliminary injunction, under California law, the theory of

25   _____

    [6]

26   ██████████████████████████████████████████████

27   [7] Even *if* Apple could be held liable for Lamego's conduct under the doctrine of
    respondeat superior, it would not support the requested injunction.  There are no pending
28   patent applications listing Lamego as an inventor that have not already published
    (Kinder Decl. ¶ 3), and, therefore, as to Lamego, money damages would suffice.

inevitable disclosure does not supply the proof needed to establish a probability of success on the merits nor does it suffice to raise serious questions about actual use or threat." *Bayer Corp. v. Roche Molecular Sys., Inc*., 72 F. Supp. 2d 1111, 1112 (N.D. Cal. 1999). "A trade-secrets plaintiff must show an actual use or an actual threat." *Id*. at 1120. Allowing a trade secret claim, let alone a preliminary injunction, against Apple on the theory that Plaintiffs' former employees will inevitably disclose Plaintiffs' secrets is contrary to California law and should be denied. *Whyte v. Schlage Lock Co*., 101 Cal. App. 4th 1443, 1464 (2002) (rejecting "inevitable disclosure" doctrine—i.e., claim for trade secret misappropriation on theory that employee in new job inevitably will rely on former employer's secrets). It would result in imposing on the former employees a covenant not to compete of the type California does not recognize. *Id*. at 1462-63 ("The chief ill in the covenant not to compete imposed by the inevitable disclosure doctrine is its after-the-fact nature: The covenant is imposed after the employment contract is made and therefore alters the employment relationship without the employee's consent.").

### 3.    The Procedural History And Plaintiffs' Continued Failure To Describe Their Secrets Weighs Against Likelihood Of Success

Having voluntarily abandoned their first attempt to make out a trade secret claim, having lost a motion to dismiss their second attempt, and facing a motion to dismiss their third (*supra* Part II.C), Plaintiffs cannot be said to have a trade secret claim that is likely to succeed. Indeed, Plaintiffs continue to dodge black letter law that "[t]o prevail on the merits, Plaintiff must first describe its claimed trade secrets 'with sufficient particularity.'" *CanWe Studios LLC v. Sinclair*, 2013 WL 12120437, at *2 (C.D. Cal. Nov. 20, 2013) (citation omitted); *see also Martin v. Muniz*, 2018 WL 2902091, at *4 (N.D. Cal. July 5, 2018) ("[T]he Court has granted Defendants' motion to dismiss with leave to amend such that it is now unclear what claim or Defendants will remain as the subject of this action. Because Plaintiff cannot establish likelihood of success on the merits, the motions for preliminary injunction are DENIED."); *McElliot v. Bank of Am.*, 2010 WL 5128264, at *1 (C.D. Cal. Dec. 10, 2010) (denying TRO based on strength of

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 23 of 49   Page ID
#:11356
Case 8:20-cv-00048-JVS-JDE   Document 140   Filed 08/24/20   Page 23 of 32   Page ID
#:9928

1   pending motion to dismiss because, "the Court cannot assume a likelihood of success on

2   the merits to warrant granting the drastic remedy of a TRO").  Courts have observed the

3   ills that arise when a plaintiff belatedly submits a Section 2019.210 disclosure after filing

4   for a preliminary injunction, noting that "attempts to set up [] purported trade secrets as

5   elusive moving targets do not bode well for the merits of its claims."  *Swarmify, Inc. v.*

6   *Cloudflare, Inc.*, 2018 WL 1142204, at *3 (N.D. Cal. Mar. 2, 2018).

7           **B.      Plaintiffs' Allegations Of Irreparable Harm Are Also Baseless**

8           Plaintiffs "must establish that irreparable harm is *likely*, not just possible."

9   *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing

10  *Winter*, 555 U.S. at 20-21).  Delay in seeking a preliminary injunction weighs against a

11  finding of irreparable harm because it "implies a lack of urgency and irreparable harm."

12  *See Miller v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993); *Oakland Tribune,*

13  *Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (same); *Garcia*, 786

14  F.3d at 746 (district court did not abuse discretion by finding that two month's long

15  delay in seeking injunction undercut plaintiff's claim of irreparable harm); *Lydo Enters.,*

16  *Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a

17  preliminary injunction is a factor to be considered in weighing the propriety of relief.").

18          **1.      Plaintiffs' Vague Allegations Of Harm Are Speculative**

19          Plaintiffs' allegation of irreparable harm takes up a single paragraph of its 20-page

20  brief, and relies entirely on statements from Kiani:

21          Plaintiffs have a well-earned advantage based on the quality and reliability
22          of their technologies.   Kiani Decl. ¶ 9.   Plaintiffs maintain certain
            technologies as trade secrets.  Plaintiffs' quality and reliability advantage
23          is due in part to Plaintiffs' many technological innovations.  Plaintiffs'
24          advantage is under attack by Apple.  *Id.*  Plaintiffs' advantage would be
            irreparably harmed if Apple were permitted to publish Plaintiffs' trade
25          secrets including through the patent system.

26  Br. at 18.  This statement does not identify any "well-earned advantage" tied to a specific

27  secret, and does not identify any specific advantage that would be lost.   Kiani's

28  conclusory assertion of harm is insufficient.  *See, e.g.*, *Javo Beverage Co. v. Cal.*

*Extraction Ventures, Inc.*, 2020 WL 886527, at *5 (S.D. Cal. Feb. 24, 2020) ("Javo's conclusory assertion that there is a risk of further evisceration of Javo's trade secrets through additional disclosure is unavailing and speculative as Javo has not demonstrated any additional confidential or trade secret information that has yet to be disclosed.").

### 2. Plaintiffs' Allegations Of Harm Are Untethered To The Alleged Conduct In The Motion

A plaintiff must demonstrate a "sufficient causal connection" between the alleged harm and the allegedly wrongful acts. *Perfect 10, Inc. v. Google, Inc*., 653 F.3d 976, 982 (9th Cir. 2011). "The claimed irreparable harm must 'flow from' the specific actionable misconduct alleged, e.g., the infringing or misappropriated component, and not simply from broader economic competition or the non-infringing components of a broader product or service." *JBF Interlude 2009 Ltd - Israel v. Quibi Holdings, LLC*, 2020 WL 3963863, at *6 (C.D. Cal. July 13, 2020) (citation omitted).

The only potential harm Plaintiffs have pointed to is future publication, and yet the only patents that allegedly disclose their alleged secrets are Lamego's. There is, however, no threat of future publication of Apple patent applications or patents naming Lamego as an inventor. Not only did Lamego depart Apple six years ago, but also Apple does not have any pending patent applications identifying Lamego as an inventor that have not published. Kinder Decl. ¶ 3. Plaintiffs cannot be harmed by non-existent patent applications, and money damages are sufficient to remedy any harm from past disclosure (i.e., the '754 Patent). *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980).[8]

Given that there is no risk of future disclosures stemming from Lamego, Plaintiffs' argument rests on speculation as to some unidentified risk of future publication of trade secrets acquired from its "other former employees." But Plaintiffs

---

[8] When Plaintiffs previously demanded that Apple share its *pending* applications with Plaintiffs before submission, they expressly stated that past disclosure was irrelevant: "Apple's *prior publication of Plaintiffs' trade secrets will be the subject of litigation but is not the relevant inquiry here*. We are trying to prevent further irreparable harm from disclosing Plaintiffs' trade secrets in *future* publications." Ex. F at 1 (emphases added).

fail to identify any "specific actionable misconduct" by any of these unidentified other former employees.  Plaintiffs have not put forth any evidence demonstrating that any of their other former employees disclosed a trade secret to Apple, or that Apple is likely to disclose those trade secrets to others.  Again, Plaintiffs' theory of misconduct with respect to these unnamed employees depends on speculation and inevitable disclosure— neither of which is actionable, let alone a basis for an injunction.  *See, e.g.*, *Caribbean Marine Servs. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."); *BrightView Landscapes, LLC v. Stowell*, 2017 WL 10511569, at *3 (C.D. Cal. Dec. 11, 2017) (denying TRO in the absence of non-speculative evidence that defendant was "currently engaging in solicitation"); *see supra* at Part IV.A.2.b.

### 3.   Plaintiffs' Delay Undermines Any Claim Of Irreparable Harm

Aside from the foregoing fatal flaws, the delay here is reason enough to deny Plaintiffs' Motion.  The '754 Patent published in March 2019, but Plaintiffs waited ***ten months*** before filing this lawsuit and ***seven months*** before seeking a preliminary injunction.  Plaintiffs first requested that "Apple notify them before publishing any [] applications [involving their former employees] so that they can evaluate whether such publication would disclose any of their trade secrets" on March 4, 2020.  But when Apple repeatedly refused, starting just two days later, Plaintiffs waited ***five months*** to file this Motion.  Pls.' Ex. 6.  Indeed, on March 27, 2020, Plaintiffs specifically threatened "to seek a preliminary injunction to prevent publication of the patent applications at issue."  Ex. F.  Apple definitively rejected Plaintiffs' request on April 2, yet Plaintiffs still waited ***four and a half months*** before filing this Motion.  Ex. G.  Plaintiffs cannot proffer any reasonable explanation for their delay, and that is dispositive.  Such a "period of inaction means that there [i]s no exigent need for injunctive relief."  *Diversified Silicone Prods. Corp. v. Elastapro Silicone Sheeting LLC*, 2020 WL 4390380, at *3 (C.D. Cal. May 19, 2020) (denying preliminary injunction in trade secret case due to delay).

Courts routinely deny requests for preliminary injunctions where plaintiffs have

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 26 of 49   Page ID
#:11359
Case 8:20-cv-00048-JVS-JDE   Document 140   Filed 08/24/20   Page 26 of 32   Page ID
#:9931

delayed for similar or even shorter amounts of time.  In *Javo Beverage Co.*, for example, Javo alleged that the defendant misappropriated and publicly disclosed its confidential trade secrets in a provisional patent application.  2020 WL 886527, at *5.  The district court noted that "Javo learned of the alleged misappropriation in May 2019," but "did not file its complaint until September 26, 2019, and then further delayed moving for the preliminary injunction until November 14, 2019."  *Id.*  Javo thus delayed *four months* between learning of the alleged misappropriation and filing its lawsuit and nearly another *two months* before filing its preliminary injunction motion.   As a result, the court found that "Javo's delay alone weighs heavily against a finding of irreparable harm."  *Id.*  Here, Plaintiffs' corresponding delay was **ten months** and **seven months**.

In *Super Chefs, Inc. v. Second Bite Foods, Inc.*, also a trade secret case, the district court found there was no irreparable harm when plaintiffs "waited three months after first learning Defendant would not be paying Plaintiff compensation to bring suit, and an additional three months to file the present Motion" and "failed to articulate good reasons for its delay."  2015 WL 12914441, at *5 (C.D. Cal. June 11, 2015).  In *Oren Enterprises, Inc. v. Stefanie Cove & Co.*, another trade secret case, the court found that a "six[] month delay in seeking injunctive relief establishes a lack of irreparable harm that is, on its own, a sufficient basis to deny the injunctive relief Plaintiffs seek."  2017 WL 8220230, at *5 (C.D. Cal. June 2, 2017).  Even a one-month delay has been found to "undermine[] [a] Plaintiff's request for immediate relief."  *Blindlight, LLC v. Cubbinson*, 2017 WL 6888498, at *5 (C.D. Cal. May 16, 2017); *see also Tough Traveler. Ltd. v. Outbound Prods.*, 60 F.3d 964, 969 (2d Cir. 1995) (four-month delay); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985) (ten-week delay).

There can be no dispute that this Motion could have been brought months ago.  It should be denied because there is no need for speedy action.

## C.    The Balance Of Hardships Weighs Against An Injunction

The burden is on Plaintiffs to make a "clear showing" that the "balance of hardships" favors granting the injunction.  *See Winter*, 555 U.S. at 20, 22.  Here, the

balance of hardships tilts decidedly in Apple's favor.

### 1.    Plaintiffs Will Suffer No Hardship Without An Injunction

Plaintiffs' argument for their alleged hardship is contained in a single sentence in their brief:  "Plaintiffs would suffer severe hardship if Apple continues publishing Plaintiffs' trade secrets."  Br. at 18.  This one-sentence argument fails.

*First*, the predicate of this statement is false:  Plaintiffs have put forth *no* evidence demonstrating that Apple has disclosed a single trade secret belonging to Plaintiffs. Plaintiffs already disclosed in their own patent applications everything they now claim constitutes their supposed secrets, eviscerating any claim they could have had to trade secret protection.  *See supra* Part IV.A.1.  Plaintiffs cannot credibly claim hardship by the disclosure of material that they themselves already put into the public domain.

*Second*, as to other, hypothetical trade secrets not identified in Plaintiffs' Motion, Plaintiffs have not and cannot show that they will suffer hardship if the injunction does not issue.  Lamego left Apple six years ago and Apple has no provisional, pending, or unpublished patent applications identifying Lamego as an inventor.  Kinder Decl. ¶ 3. Nor have Plaintiffs shown any specific harms caused by other unnamed "former employees."  *See Gallagher Benefit Servs., Inc. v. De La Torre*, 283 F. App'x 543, 546-47 (9th Cir. 2008) (abuse of discretion to grant broad trade secret preliminary injunction: "the order must be narrowly tailored to remedy only the specific harms shown by the plaintiffs, rather than to enjoin all possible breaches of the law").

### 2.    Apple Will Suffer Significant Hardship If The Injunction Issues

Plaintiffs argue that the proposed injunction "would cause no hardship to Apple" because it would simply "preserve[] the status quo."  Br. at 18-19.  This argument ignores the relief actually sought by Plaintiffs.  Plaintiffs' requested relief would require Apple to disclose *every* pending patent application involving *any* former employee working on *anything* related to health or physiological information, would risk forcing Apple to abandon certain patent applications or to-be-issued patents, and would require Apple to curtail its constitutional right to publish information about its products.

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 28 of 49   Page ID
#:11361
Case 8:20-cv-00048-JVS-JDE   Document 140   Filed 08/24/20   Page 28 of 32   Page ID
#:9933

*First*, Apple has a statutory right to keep its pending patent applications secret (*see* 35 U.S.C. § 122(b)(2)(B)), and the standard for seeking discovery on pending patent applications is correspondingly heightened. *See ICU Med., Inc. v. B. Braun Med., Inc.*, 224 F.R.D. 461, 462 (N.D. Cal. 2002); *see also Ideal Toy Corp. v. Tyco Indus., Inc.*, 478 F. Supp 1191, 1193 (D. Del. 1979). Regarding confidential patent applications, "[t]he Court must weigh the requesting party's interest in materials against the objector's legitimate interest in secrecy." *ICU Med., Inc.*, 224 F.R.D. at 462. Disclosure of such applications is only appropriate when it is "absolutely essential." *Wolowitz v. United States*, 1975 WL 21125185, at *1 (Ct. Cl. 1975).

Forcing Apple to disclose its pending applications to Plaintiffs, who are incredibly litigious, all but guarantees that Plaintiffs will gain an unfair advantage by obtaining a unilateral preview into Apple's next generation patented technologies. Plaintiffs' outside counsel will have to share the content of the applications with employees at the companies so that those employees can compare the applications to their alleged secrets. This will give Plaintiffs' employees insight into Apple's product pipeline, newest technologies, and patent protection strategies—all of which can and will be used against Apple. Indeed, Plaintiffs' strategy in this case has been to examine Apple's products and published patent applications, and then draft new claims in patent applications that have been pending for years to try to write patent claims to cover Apple's new products; that is why Plaintiffs recently asserted five newly-issued patents whose applications date back to 2008. *See* SAC ¶¶ 113-84. Requiring Apple to give these litigious Plaintiffs, whose litigation counsel also prosecutes their patents, advance previews of Apple's most cutting-edge product advances is inherently unfair and anti-competitive. Congress saw fit to allow a company to keep its patent applications secret from its competitors, and Apple is entitled to do so. 35 U.S.C. § 122(b)(2)(B).

*Second*, Plaintiffs' requested relief will degrade Apple's patent protections. The requested relief requires that Apple take "all necessary steps to prevent publication of any patent [or] patent application" until Apple provides the application to Plaintiffs,

Gibson, Dunn &
Crutcher LLP

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 29 of 49   Page ID
#:11362
Case 8:20-cv-00048-JVS-JDE   Document 140   Filed 08/24/20   Page 29 of 32   Page ID
#:9934

Plaintiffs sit on the application for 59 days, Plaintiffs then move for injunctive relief, and the Court thereafter decides the issue—a process which could take four to six months, if not more.  Prop. Order at 1.  Plaintiffs ignore that Apple lacks the ability to retroactively file a non-publication request for a pending application.  *See* 35 U.S.C. 122(b); *see also* 37 C.F.R. 1.213 (non-publication request *must* be filed at time of original filing of application).  Similarly, Apple cannot force the PTO to keep an issued patent secret.  *Cf.* 35 U.S.C. § 181 (issued patents may be kept secret only if publication would be "detrimental to the national security").  The *only* way Apple can ensure that a pending application does not become public is to abandon it.  Forcing Apple to abandon any about-to-be-issued patents would harm Apple and unfairly benefit Plaintiffs.

*Third*, Plaintiffs' request that Apple be restricted from making public statements about health or physiological-related information violates Apple's First Amendment rights.   Prop. Order at 1 (barring "publication of any … document[] or other presentation").  Any restriction on Apple's speech must be "narrowly drawn."  *Central Hudson Gas & Elec. v. Pub. Serv. Commission of N.Y.*, 447 U.S. 557, 564-65 (1980).  As a prior restraint on speech Apple has not yet made, Plaintiffs' requested relief "bear[s] a heavy presumption against its constitutional validity."  *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975).  Plaintiffs' claimed right to unilaterally delay Apple's speech for a period of three to six months is anything but narrowly tailored, and fails to overcome the "heavy presumption" of unconstitutionality: Plaintiffs' allegations relating to the '754 Patent addressed in the Motion are provably false, and Plaintiffs fail to submit any evidence against any former employee other than Lamego.  It is imperative that Apple communicate freely and quickly to its customers as the market evolves.  Putting a multi-month gag order on Apple for a particular market segment risks severely punishing Apple vis-à-vis its competitors.

In short, Plaintiffs' requested remedy is fundamentally flawed and deeply prejudicial to Apple because it is hopelessly overbroad.  Apple has confirmed that it has no pending patent applications listing Lamego as an inventor.  That should resolve the

matter.  Plaintiffs overreach when they seek to prohibit disclosures of materials relating to *other* former employees, and courts routinely deny similarly overbroad injunctive requests.  *Natural Res. Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007) ("Injunctive relief must be tailored to remedy the specific harm alleged, and an overbroad preliminary injunction is an abuse of discretion."); *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 2016 WL 8861712, at *7 (C.D. Cal. Nov. 22, 2016), *aff'd*, 745 F. App'x 1 (9th Cir. 2018) (denying motion for PI in trade secret case, noting Supreme Court's warning  of courts' "duty to avoid" "sweeping injunction[s] to obey the law"); *see also Garcia*, 786 F.3d at 740 (mandatory injunctions are "particularly disfavored").  Plaintiffs have failed to show that the balance hardships favors granting the injunction.

## D.      The Requested Relief Is Not In The Public's Interest

Because Plaintiffs' proposed injunction reaches non-parties (e.g., impacting the rights of Plaintiffs' former employees as individuals) and implicates issues of broader public concern having public consequences, this Court must weigh the public interest implicated by the proposed injunction.  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009).  Plaintiffs contend that their proposed injunction serves the public's interest "in protecting trade secrets from unlawful misappropriation."  Br. at 19.  But Plaintiffs ignore California's "settled legislative policy in favor of open competition and employee mobility," protecting "the important legal right of persons to engage in businesses and occupations of their choosing."  *Edwards v. Arthur Andersen LLP,* 44 Cal. 4th 937, 946 (2008); *Versa Prod., Inc. v. Stitch Indus., Inc.*, 2014 WL 12569458, at *6-7 (C.D. Cal. July 2, 2014).  Although in some instances, California's strong public policy in favor of vigorous competition may yield to its interest in protecting trade secrets, here, Plaintiffs have failed to show they even have trade secrets to protect—they already disclosed their purported trade secrets in their own patent applications.

The proposed injunction also flaunts California law and policy and tramples over the rights of former employees.  From the beginning, Plaintiffs have tried to prohibit former employees from competing with Plaintiffs or even working in "healthcare

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 31 of 49   Page ID
#:11364
Case 8:20-cv-00048-JVS-JDE   Document 140   Filed 08/24/20   Page 31 of 32   Page ID
#:9936

technology." *See* Pls.' Ex. 5. Plaintiffs' demands were not "limited to the protection of trade secrets, but [we]re so broadly worded as to restrain competition." *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 577 (2009). Plaintiffs' anticompetitive demands were unenforceable as a matter of law: actionable "unfair" business practices under § 17200 are those that violate a "legislatively declared policy" (*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999)), such as the "settled legislative policy in favor of open competition and employee mobility" evinced by § 16600 (*Edwards v. Arthur Andersen LLP,* 44 Cal. 4th 937, 949 (2008)).

Now, Plaintiffs' proposed injunction requires the disclosure of *all* former employees' inventions or publications relating to health information as long as they are listed as an inventor or author. Prop. Order at 1. Again, Plaintiffs lack any proof (or even any discussion) of misappropriation with respect to former employees other than Lamego. Plaintiffs are therefore left arguing that their former employees' inventions will inevitably encompass Plaintiffs' trade secrets, which is improper. *Whyte*, 101 Cal. App. 4th at 1447. Furthermore, Plaintiffs' requiring this disclosure after the termination of the former employees' employment, and regardless of when or where the inventions were conceived, runs afoul of Business and Professions Code §§ 16600 and 17200 because it operates as a restriction on employee mobility. *See, e.g.*, *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F. Supp. 2d 1084, 1091 (N.D. Cal. 2009) (requiring former employees to communicate and assign all ideas was an unreasonable restraint of trade).

Plaintiffs' proposed injunction therefore runs counter to important and deeply-rooted public interests. This factor weighs against issuance of a preliminary injunction.[9]

## V.    CONCLUSION

The Court should deny Plaintiffs' Motion for a Preliminary Injunction.

---

[9]   In the event the Court enters a preliminary injunction, Apple requests an opportunity to submit briefing concerning the appropriate amount of the bond to be posted by Plaintiffs. Fed. R. Civ. P. 65(c); Order, *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 5:11-CV-01846-LHK (N.D. Cal. May 21, 2012), Dkt. No. 962; *Health Net v. U.S.A. Healthnet, Inc.*, 1993 WL 209564, at *8 (C.D. Cal. Jan. 13, 1993).

1   Dated:  August 24, 2020          Respectfully submitted,

2

3                                 JOSHUA H. LERNER
                                 H. MARK LYON

4                                 BRIAN M. BUROKER
                               BRIAN A. ROSENTHAL

5                               ILISSA SAMPLIN
                               ANGELIQUE KAOUNIS

6                               BRIAN K. ANDREA
                               GIBSON, DUNN & CRUTCHER LLP

7

8                         By:  */s/ Joshua H. Lerner*
                                Joshua H. Lerner

9

10                         *Attorneys for Defendant Apple Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPENDIX A



APPENDIX A

| Alleged Trade Secret Step | Disclosure in U.S. Patent No. 8,471,713 and/or U.S. Patent No. 9,861,305 |
|---|---|



Case 8:20-cv-00048-JVS-JDE   Document 140-1   Filed 08/24/20   Page 3 of 17   Page ID
#:9940

APPENDIX A

| Alleged Trade Secret Step | Disclosure in U.S. Patent No. 8,471,713 and/or U.S. Patent No. 9,861,305 |
|---|---|
| |  |

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 36 of 49   Page ID
#:11369
Case 8:20-cv-00048-JVS-JDE   Document 140-1   Filed 08/24/20   Page 4 of 17   Page ID
#:9941

**APPENDIX A**

| Alleged Trade Secret Step | Disclosure in U.S. Patent No. 8,471,713 and/or U.S. Patent No. 9,861,305 |
|---|---|
| | ███████████████████████████████ ███████████████████████████████████ ██████████████████████████████████████ ███████████████████████████████████ ██████████████████████████████████ █████████████████████████████████ ████████████████████████████████ ██████████████████████████ |
| ████████ ████ ██ | ████████████████████████████ ███████████████████████████ ██████████████████████████████ ████████████████████████████████ ██████████████████████ █████████████████████████████████ ███████████████████████████████ █████████████████████████████████ ████████████████████████████ ████████████████████████████ █████████████████████████████ ██████████████████████████████ ███████████████████████████████ ██████████████████████████████ ███████████████████████████████ ██████████████████████████████ ████████████████████████████ ██████████████████ |

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 37 of 49   Page ID
#:11370
Case 8:20-cv-00048-JVS-JDE   Document 140-1   Filed 08/24/20   Page 5 of 17   Page ID
#:9942

APPENDIX A

| Alleged Trade Secret Step | Disclosure in U.S. Patent No. 8,471,713 and/or U.S. Patent No. 9,861,305 |
|---|---|
| | |

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 38 of 49   Page ID
#:11371
Case 8:20-cv-00048-JVS-JDE   Document 140-1   Filed 08/24/20   Page 6 of 17   Page ID
#:9943

APPENDIX A

| Alleged Trade Secret Step | Disclosure in U.S. Patent No. 8,471,713 and/or U.S. Patent No. 9,861,305 |
|---|---|
| | ████████████████████████████████████████████████████████<br>████████████████████████████████████████████████<br>████████████████████████████████████████████<br>████████████████████████████████████████████<br>█████████████████████████████████████████████<br>████████████████████████████████████████████<br>███████████████████████████████████████████████<br>████████████████████████████████████████████████<br>████████████████████████████████████████████████<br>████████████████████████████████████████████████<br>███████████████████████████████████████████████<br>█████████████████████████████████████████████████<br>████████████████████████████████ |

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 39 of 49   Page ID
#:11372
Case 8:20-cv-00048-JVS-JDE   Document 140-1   Filed 08/24/20   Page 7 of 17   Page ID
#:9944

**APPENDIX A**

| Alleged Trade Secret Step | Disclosure in U.S. Patent No. 8,471,713 and/or U.S. Patent No. 9,861,305 |
|---|---|
|  |  |

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 40 of 49   Page ID
#:11373
Case 8:20-cv-00048-JVS-JDE   Document 140-1   Filed 08/24/20   Page 8 of 17   Page ID
#:9945

APPENDIX A

| Alleged Trade Secret Step | Disclosure in U.S. Patent No. 8,471,713 and/or U.S. Patent No. 9,861,305 |
|---|---|
|  | |

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 41 of 49   Page ID
#:11374
Case 8:20-cv-00048-JVS-JDE   Document 140-1   Filed 08/24/20   Page 9 of 17   Page ID
#:9946

**APPENDIX A**

| Alleged Trade Secret Step | Disclosure in U.S. Patent No. 8,471,713 and/or U.S. Patent No. 9,861,305 | |
|---|---|---|
|  | | |

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 42 of 49   Page ID
#:11375
Case 8:20-cv-00048-JVS-JDE   Document 140-1   Filed 08/24/20   Page 10 of 17   Page ID
#:9947

**APPENDIX A**

| Alleged Trade Secret Step | Disclosure in U.S. Patent No. 8,471,713 and/or U.S. Patent No. 9,861,305 |
|---|---|
| |  |

Case 8:20-cv-00048-JVS-JDE   Document 140-1   Filed 08/24/20   Page 11 of 17   Page ID
#:9948

**APPENDIX A**

| Alleged Trade Secret Step | Disclosure in U.S. Patent No. 8,471,713 and/or U.S. Patent No. 9,861,305 |
|---|---|
| | |



Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 44 of 49   Page ID
#:11377
Case 8:20-cv-00048-JVS-JDE   Document 140-1   Filed 08/24/20   Page 12 of 17   Page ID
#:9949

**APPENDIX A**



**APPENDIX A**

| Alleged Trade Secret Step | Disclosure in U.S. Patent No. 8,471,713 and/or U.S. Patent No. 9,861,305 |
|---|---|



APPENDIX A

| Alleged Trade Secret Step | Disclosure in U.S. Patent No. 8,471,713 and/or U.S. Patent No. 9,861,305 |
|---|---|
|  |  |

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 47 of 49   Page ID
#:11380
Case 8:20-cv-00048-JVS-JDE   Document 140-1   Filed 08/24/20   Page 15 of 17   Page ID
#:9952

**APPENDIX A**

| Alleged Trade Secret Step | Disclosure in U.S. Patent No. 8,471,713 and/or U.S. Patent No. 9,861,305 |
|---|---|
| | |

Case 8:20-cv-00048-JVS-JDE   Document 157-2   Filed 08/31/20   Page 48 of 49   Page ID
#:11381
Case 8:20-cv-00048-JVS-JDE   Document 140-1   Filed 08/24/20   Page 16 of 17   Page ID
#:9953

**APPENDIX A**

| Alleged Trade Secret Step | Disclosure in U.S. Patent No. 8,471,713 and/or U.S. Patent No. 9,861,305 |
|---|---|



APPENDIX A

| Alleged Trade Secret Step | Disclosure in U.S. Patent No. 8,471,713 and/or U.S. Patent No. 9,861,305 |
|---|---|
|  | ███████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ |
|  | █████████████████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████████████ ████████████ |