Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404 Facsimile: (949) 760-9502

Adam B. Powell (Bar No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000 Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:     September 14, 2020<br>Time:     1:30 p.m.<br>Ctrm:     10C<br>Judge:    Hon. James V. Selna |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION ....................................................................................1

II.  ARGUMENT ..........................................................................................2

    A.   Plaintiffs Are Likely To Succeed On The Merits ...........................2

        1.   Plaintiffs Are Likely To Show The Existence Of A Trade Secret ...................................................................2

            a.   The '713 Patent Does Not Disclose Plaintiffs' Secret ...........................................................2

            b.   The '305 Patent Is Irrelevant And Does Not Disclose Plaintiffs' Secret ..........................................4

            c.   [REDACTED]

            d.   Sarrafzadeh's Analysis Is Irrelevant And Incorrect ..........................................................6

        2.   Plaintiffs Are Likely To Prove Misappropriation ...............8

            a.   Apple Affirmatively Sought Out Plaintiffs' Trade Secrets ......................................................9

            b.   Apple Is Also Liable Under Respondeat Superior .................................................................10

            c.   Plaintiffs Are Not Relying On Inevitable Disclosure ................................................................11

        3.   Plaintiffs Adequately Described Their Trade Secrets ...................................................................12

    B.   Plaintiffs Will Suffer Irreparable Harm ........................................14

        1.   Plaintiffs' Allegations Of Harm Are Not Vague Or Speculative ...............................................................14

        2.   Apple's Disclosure Would Harm Plaintiffs.......................16

        3.   The Timing of This Motion Does Not Diminish Plaintiffs' Risk of Irreparable Harm...................................17

# TABLE OF CONTENTS
### (*cont'd*)

**Page No.**

a.   Courts are "Loathe" To Withhold Relief Solely Based on Alleged Delay.................................17

b.   Plaintiffs Did Not Unduly Delay.............................18

c.   Apple Cannot Point to Any Intervening Events That Undermine Plaintiffs' Claim of Irreparable Harm .......................................................20

C.   The Balance of Hardships Weigh Heavily in Plaintiffs' Favor ................................................................21

D.   A Preliminary Injunction Is In the Public Interest........................23

E.   No Security Is Necessary ..............................................................24

III.   CONCLUSION ...............................................................................25

-ii-

1

**TABLE OF AUTHORITIES**

2

**Page No(s).**

3

4
5
*Abba Rubber Co. v. Seaquist,*
   235 Cal. App. 3d 1 (1991) ........................................................... 7, 8

6
7
*Bayer Corp. v. Roche Molecular Sys., Inc.,*
   72 F. Supp. 2d 1111 (N.D. Cal. 1999) ......................................... 12

8
*Blindlight, LLC v. Cubbinson,*
   2017 WL 6888498 (C.D. Cal. May 16, 2017)................................ 18

9
10
*BrightView Landscapes, LLC v. Stowell,*
   2017 WL 10511569 (C.D. Cal. Dec. 11, 2017) ........................... 17

11
12
*Caribbean Marine Servs. v. Baldridge,*
   844 F.2d 668 (9th Cir. 1988)......................................................... 17

13
14
*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.,*
   2018 WL 2558388 (C.D. Cal. Feb. 27, 2018)................................ 13

15
16
*Citibank, N.A. v. Citytrust,*
   756 F.2d 273 (2d Cir. 1985) ......................................................... 21

17
18
*CleanFish, LLC v. Sims,*
   2020 WL 1274991 (N.D. Cal. Mar. 17, 2020)................................ 10

19
20
*Cuviello v. City of Vallejo,*
   944 F.3d 816 (9th Cir. 2019)......................................................... 17

21
22
*Diversified Silicone Prods. Corp. v. Elastapro Silicone
Sheeting LLC,*
   2020 WL 4390380 (C.D. Cal. May 19, 2020)................................ 18

23
24
*Extreme Reach v, Spotgenie Partners, LLC,*
   2013 WL 12081182 (C.D. Cal. Nov. 22, 2013) ........................... 25

25
26
*Garcia v. Google, Inc.,*
   786 F.3d 733 (9th Cir. 2015)......................................... 16, 17, 20

27
*Glob. Med. Techs., Inc. v. Jackson,*
   No. C048438, 2006 WL 3735581 (Cal. Ct. App. Dec. 20, 2006).................. 7

28

-iii-

**TABLE OF AUTHORITIES**
*(cont'd)*

**Page No(s).**

*Imi-Tech Corp. v. Gagliani*,
  691 F. Supp. 214 (S.D. Cal. 1986) .................................................................. 7

*Intertek Testing Servs., N.A., Inc. v. Pennisi*,
  443 F. Supp. 3d 303 (E.D.N.Y. Mar. 9, 2020).............................................. 14

*Javo Beverage Co. v. Cal. Extraction Ventures, Inc.*,
  2020 WL 886527 (S.D. Cal. Feb. 24, 2020) .......................................... 15, 16

*JBF Interlude 2009 Ltd – Israel v. Quibi Holdings, LLC*,
  2020 WL 3963863 (C.D. Cal. July 13, 2020) ........................................ 17, 20

*Kettle Range Conservation Group v. U.S. Forest Serv.*,
  971 F. Supp. 480 (D. Or. 1997)...................................................................... 18

*LA Mem'l Coliseum Comm'n v. Nat'l Football League*,
  634 F.2d 1197 (9th Cir. 1980) ....................................................................... 17

*Language Line Servs., Inc. v. Language Servs. Assocs., LLC*,
  2010 WL 2764714 (N.D. Cal. July 13, 2010) ............................................... 11

*Lydo Enters. Inc. v. City of Las Vegas*,
  745 F.2d 1211 (9th Cir. 1984)................................................................. 17, 18

*Medtronic MiniMed, Inc. v. Nova Biomed. Corp.*,
  2009 WL 10672947 (C.D. Cal. Aug. 14, 2009)............................................... 8

*Miller v. Cal. Pac. Med. Ctr.*,
  881 F.2d 536 (9th Cir. 1993) ......................................................................... 20

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,
  762 F.2d 1374 (9th Cir. 1985)......................................................... 17, 20, 21

*Oren Enters., Inc. v. Stefanie Cove & Co.*,
  2017 WL 8220230 (C.D. Cal. June 2, 2017)................................................. 18

*Perfect 10, Inc. v. Google, Inc.*,
  653 F.3d 976 (9th Cir. 2011) ......................................................................... 16

1
2

# TABLE OF AUTHORITIES
## (*cont'd*)

3

**Page No(s).**

4
5

*Prolifiq Software Inc v. Veeva Sys. Inc.*,
2014 WL 2527148 (N.D Cal. June 4, 2014) .................................................. 14

6
7

*Planned Parenthood v. U.S. Dept. of Health*,
328 F. Supp. 3d 1133 (E.D. Wash. 2018) ................................................ 17, 19

8
9

*Super Chefs, Inc. v. Second Bite Foods, Inc.*,
2015 WL 12914441 (C.D. Cal. June 11, 2015)........................................ 14, 18

10

*Tough Traveler Ltd. v. Outbound Prods.*,
60 F.3d 964 (2d Cir. 1995) ...................................................................... 18, 19

11
12

*Whyte v. Schlage Lock Co.*,
101 Cal. App. 4th 1443 (2002)...................................................................... 11

13
14

# OTHER AUTHORITIES

15

35 U.S.C. § 111.................................................................................................. 22

16

35 U.S.C. § 119.................................................................................................. 23

17

37 CFR 1.53....................................................................................................... 22

18

Ann. Cal. Civ. Code § 3426.1 ............................................................................. 7

19

L.R. 7-9 ............................................................................................................... 3

20
21

Risch, Why Do We Have Trade Secrets?, 11 Marq. Intell. Prop. L.
Rev. 1 (2007) ................................................................................................. 7

22
23
24
25
26
27
28

# I. __INTRODUCTION__

Apple's opposition demonstrates why Plaintiffs' Motion is necessary and appropriate.  All the relevant factors support Plaintiffs' request for modest relief to preserve the status quo.

*First*, Plaintiffs are likely to succeed on the merits.  Apple fails to rebut Plaintiffs' strong showing that they have a protectable trade secret.  Apple argues two Masimo patents disclosed Plaintiffs' trade secret.  ████████ ████████████████████████████████████████████████████████ ████████████████████  The other patent is irrelevant because it published years *after* Apple's theft.  It also does not disclose Plaintiffs' trade secret.  Apple argues it can combine the two patents to show someone *could* have arrived at Plaintiffs' trade secret.  Apple is incorrect and, regardless, Apple's "obviousness"-type argument is unpersuasive and contrary to California law.

*Second*, in the absence of relief, there is a high likelihood of irreparable harm.  Apple's refusal to provide *any* information about its pending patent applications shows Apple intends to continue publishing them, regardless of whether they contain previously unpublished trade secrets.  That is the very definition of irreparable harm.  Under Apple's approach, Plaintiffs must wait until *after* Apple publishes a patent application to seek relief, when it is too late to "unring the bell" and protect Plaintiffs' trade secret.

*Third*, the balance of harms and public interest strongly support Plaintiffs.  In the absence of relief, Apple will be free to publish Plaintiffs' trade secrets.  In contrast, Plaintiff's proposed injunction is narrowly tailored and will cause no meaningful impact on Apple.  Indeed, Plaintiffs ask to preview only information that Apple *already plans to publish*.  Plaintiffs' request would not delay any such publication unless Plaintiffs identify a trade secret, seek further relief, *and* this Court grants further relief.  Thus, Plaintiffs' requested relief would not impinge on Apple's right to file for patents or communicate with its customers.

-1-

Apple would remain in control of when it provides advanced notice of future publications.   Plaintiffs merely ask for the opportunity to review such publications and seek relief *before* it is too late.

## II.  ARGUMENT

**A.     Plaintiffs Are Likely To Succeed On The Merits**

      **1.     Plaintiffs Are Likely To Show The Existence Of A Trade Secret**

Apple contends Plaintiffs' trade secret "was disclosed in either the '713 Patent, the '305 Patent, or both."  Op. at 8.  As explained in detail below, Apple fails to show those references, alone or in combination, disclose Plaintiffs' trade secret.  Moreover, California law specifically prohibits the sort of obviousness-type analysis advanced by Apple.

Plaintiffs have always maintained the secrecy of its system that ███

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████

      **a.     The '713 Patent Does Not Disclose Plaintiffs' Secret**

The '713 Patent does not disclose ██████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

the '713 Patent ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

-2-

1  ███████████████████████████████████████████████[1]

2        Apple's supposed expert, Dr. Sarrafzadeh, recognizes that "the '713

3  Patent specifically indicates that ████████████████████████████

4  █████████████████████████████████████████████████

5  █████████████████████████████████████████████████

6  █████████████████████████████████████████████████

7  █████████████████████████████████████

8        Apple's only argument to the contrary comes in Appendix A.[3]  There,

9  Apple addresses the step in Plaintiffs' trade secret of ████████████████

10 █████████████████████████████████████████████████

11 █████████████████████████████████████████████████

12 Dkt. 150-1 at 13.   Apple suggests that step is performed by the ████████

13 █████████████████████████████████████████████████

14 █████████████████████████████████████████████████

15 ████████████████████████  But nothing in the '713 Patent discloses or

16 suggests that ████████████████████████████████████████████

17 ████████████████████  Indeed, Apple and Sarrafzadeh contradict this

18 argument by acknowledging that ████████████████████████████████

19 █████████████████████████

20 / / /

---

[1] All emphasis is added unless noted otherwise.

[2] Apple filed the Sarrafzadeh Declaration (Dkt. 142) and Kinder Declaration (Dkt. 143) early in the morning on August 25, 2020.  These filings were after Apple's August 24, 2020, deadline to oppose Plaintiffs' Motion.  *See* L.R. 7-9.

[3] Apple's arguments do not cite Appendix A (Dkt. 150-1).  Instead, Apple appears to use Appendix A to add pages of unreferenced attorney argument to bridge gaps in Sarrafzadeh's analysis.  Opp. at 7.  The Court should disregard Appendix A as an improper attempt to circumvent the 25-page limit on briefs.

**b.**   **The '305 Patent Is Irrelevant And Does Not Disclose
Plaintiffs' Secret**

Apple also relies on the '305 Patent, but that patent cannot show Plaintiffs' trade secret was generally known at the time of Apple's misappropriation.  The PTO published the '305 Patent on January 9, 2018.  Dkt. 142-4 at 124.  Apple misappropriated Plaintiffs' trade secret at least ***four years earlier*** when Apple filed the provisional patent application that led to the '754 Patent in 2014.  Ex. 22.  Thus, the '305 Patent is entirely irrelevant.

Regardless, the '305 Patent likewise does not disclose Plaintiffs' trade secret.   Like the '713 Patent, the '305 Patent ███████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████

Apple acknowledges this difference by pointing to the '305 Patent's ████████████████████████████████████████████████████ As Sarrafzadeh explains, ██████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████ In contrast, Sarrafzadeh recognizes the ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████





**d.**   **<u>Sarrafzadeh's Analysis Is Irrelevant And Incorrect</u>**

Apple asked Sarrafzadeh to opine on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓   That request acknowledges these patents
(one of which first published years ***after*** Apple's misappropriation) do not
individually disclose Plaintiffs' trade secret.  Apple's attempt to combine them
to recreate Plaintiffs' trade secret in hindsight is legally irrelevant.

Sarrafzadeh opines that, if the disclosures were "read together," they
would show ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Sarrafzadeh thus attempts to perform a post-hoc, patent obviousness-like inquiry
by cobbling together separate disclosures in an attempt to recreate Plaintiffs'

trade secret.  *Id*. ¶ 10.[5]  But in California "it is not required that a trade secret be patentably nonobvious or novel."  *Imi-Tech Corp. v. Gagliani,* 691 F. Supp. 214, 231 (S.D. Cal. 1986) (granting preliminary injunction).  The relevant inquiry is whether a trade secret is already "***generally known.***"  Whether a trade secret ***could*** have been discovered through proper means is irrelevant unless the defendant ***actually*** obtained the trade secret through those proper means.  "[U]nder California law, information ***can*** be a trade secret even though it ***is*** readily ascertainable, so long as it has ***not yet been*** ascertained by others in the industry."  *Abba Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 21 (1991).

While the model Uniform Act (and many other states) deny protection to "readily ascertainable" information, the California legislature specifically excluded such a requirement in the definition of a trade secret.  *See* West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments).  As *Abba* explained, "our Legislature chose to exclude from the definition only that information which the industry ***already knows***, as opposed to that which the industry could easily discover."  235 Cal. App. 3d at 21.

"California law emphasizes punishing the wrongful acquisition of information, even if it ***could*** have been obtained legally."  *Imi-Tech,* 691 F. Supp. at 231; *see also Glob. Med. Techs., Inc. v. Jackson*, No. C048438, 2006 WL 3735581, at *6 (Cal. Ct. App. Dec. 20, 2006) ("reliance on the information's availability from other sources as a basis for not qualifying as a trade secret is misplaced").  "[I]t is ***not*** a defense that someone else ***could have*** easily discovered the information by independent research."  Risch, Why Do We Have Trade Secrets?, 11 Marq. Intell. Prop. L. Rev. 1, 54 (2007).

---

[5] Sarrafzadeh's declaration has now been sealed by the Court.  Dkt. 152.  It was improper for Apple to have its expert—who was not cleared to view AEO information—prepare this declaration.  Plaintiffs specifically told Apple they would likely oppose designation of Dr. Sarrafzadeh, which they have now done.

"Readily ascertainable" remains a defense, but **only** for showing "an absence of **misappropriation**, rather than the absence of a trade secret." *Abba*, 235 Cal. App. 3d at 21 n.9.  Specifically, the defendant can rebut an allegation of misappropriation by showing the information was "readily ascertainable" **and** that "the defendant's knowledge of [the information] **resulted from** that identification process. . .." *Id.*; *see, e.g.*, *Medtronic MiniMed, Inc. v. Nova Biomed. Corp.*, 2009 WL 10672947, at *2 (C.D. Cal. Aug. 14, 2009) (excluding "readily ascertainable" evidence because defendant alleged only that it "**could** have used reverse engineering to obtain Plaintiffs' technology, not that it actually did so").

Here, Apple does not argue or present evidence that it **actually** developed the information disclosed in the '754 Patent by combining the two Masimo patents discussed above.  Nor could it.  The '305 patent did not issue until years after Apple's misappropriation and Apple did not disclose the '713 or '305 Patents during prosecution of the '754 Patent.  *See* Ex. 14.  If Apple **actually** obtained Plaintiffs' trade secret from the '713 or '305 Patents, it would have been required to disclose them to the PTO under its duty of candor.

Even if Apple's hindsight combination were permissible, it still fails to show that combining the '713 and '305 Patents discloses Plaintiffs trade secret.  As discussed above, ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████  Thus, Plaintiffs are highly likely to establish the existence of a trade secret.

## 2. <u>Plaintiffs Are Likely To Prove Misappropriation</u>

Plaintiffs are also likely to show Apple misappropriated Plaintiffs' trade secrets by acquisition, disclosure, and use.  Indeed, Apple does not challenge that it obtained the relevant information from Lamego.  Nor does Apple dispute

that it used and disclosed that information in the '754 Patent.  Nor could it. Apple named Lamego as the *sole inventor* of the '754 Patent.  Thus, Apple claims the alleged invention in the '754 Patent came from Lamego, who worked for Apple for six short months directly after he left Cercacor.  Rather than dispute that the information came from Lamego, Apple argues (1) it had no reason to suspect Lamego was using Plaintiffs' trade secrets, and (2) Plaintiffs are relying on the inevitable disclosure doctrine.  Both arguments fail.

### a.  Apple Affirmatively Sought Out Plaintiffs' Trade Secrets

Apple asserts Plaintiffs have not shown that "Apple knew or should have foreseen that the specific portions of the '754 Patent that Plaintiffs now cite in their Motion were secret."  Op. at 14.[6]  That simply ignores Plaintiffs' evidence. ████████████████████████████████████████████████████████ ████████████████████████████████████ Apple then hired Masimo's Chief Medical Officer and ███████████████████████.  Kiani Decl. ¶ 6. ██████████████████████████████ Apple hired Cercacor's Chief Technical Officer, Lamego.  In the few months that followed, Apple quickly obtained numerous patent disclosures from Lamego on the very technology Lamego helped develop at Plaintiffs.  Apple then filed patent applications containing the information.  Exs. 20-22.  The immediacy of Apple's obtaining these disclosures from Lamago shows he brought the information from Cercacor and that Apple desired it.  Apple has no answer for any of this evidence and, thus, simply ignores it.

As for Plaintiffs' other evidence, such as Plaintiffs' warning letter, Apple has no persuasive response.  Apple cites *CleanFish, LLC v. Sims*, 2020 WL 1274991, at *10 (N.D. Cal. Mar. 17, 2020), to argue Plaintiffs' warning letter is

---

[6] As a preliminary matter, Apple argues that Plaintiffs cannot make such a showing because Plaintiffs' trade secret is not secret.  Op. at 14.  That argument is incorrect for the reasons discussed above.

irrelevant.  Op. at 14.  But *CleanFish* did not even address warning letters.  In *CleanFish*, the plaintiff alleged **no** factual basis that would have alerted the defendant that the information was confidential.  2020 WL 1274991, at *10.

Apple also claims it is "routine" to file non-publication requests and for inventors like Lamego to refuse to sign inventor declarations.  Op. at 14-15.  But those facts did not occur in a vacuum.  In the few short **months** after Lamego started at Apple, he provided Apple highly technical information in the same field in which he had spent a **decade** working for Plaintiffs.  Lamego then refused to sign a declaration that he had invented the information.  Apple also selectively requested non-publication of certain Lamego applications that incorporate Plaintiffs' trade secrets, while allowing other Lamego applications to publish in the ordinary course.  *Compare e.g.*, Ex. 13 at 279, *with* Ex. 27 at 74 (prior publication years before patent issuance demonstrates no non-publication request).  Plaintiffs have presented more than enough evidence to show Apple knew, or at least should have known, that Lamego was using and disclosing Plaintiffs' trade secrets to Apple.  Indeed, the evidence shows that Apple affirmatively took steps to obtain Plaintiffs' trade secrets.

### b.   <u>Apple Is Also Liable Under Respondeat Superior</u>

Apple argues the doctrine of respondeat superior does not apply because it purportedly did not know or have reason to know that Lamego was using specific trade secrets.  Op. at 15.  Apple cites **no authority** and offers **no analysis** to support this assertion.  If Apple's assertion were true, merely proving a corporation was not directly liable would also eliminate liability under respondeat superior.  That is not the law.

An employer is vicariously liable "if the employee's act was an outgrowth of his employment, inherent in the working environment, typical of or broadly incidental to the employer's business, **or**, in a general way, foreseeable from his duties."  *See Language Line Servs., Inc. v. Language Servs.*

-10-

1    *Assocs., LLC*, 2010 WL 2764714, at *3 (N.D. Cal. July 13, 2010) (quoting
2    *Yamaguchi v. Harnsmut*, 106 Cal. App. 4th 472, 481 (2003)).  In *Language*
3    *Line*, the court specifically rejected the corporate defendant's argument that it
4    was not liable because its employees' actions "were not known to [defendant's]
5    executives."  *Id.*   The court found the corporate defendant could be liable
6    because the employees' acts were "part of [the employees'] duties."  *Id.*

7          Here, Apple does not dispute that Lamego's job duties included working
8    on non-invasive monitoring and applying for patents.  Lamego's use of
9    Plaintiffs' trade secrets while he performed those duties for Apple was an
10   "outgrowth" of his employment, "incidental" to his duties, and "in a general
11   way, foreseeable from his duties."  Thus, Apple is also liable under the doctrine
12   of respondeat superior.[7]

13              c.    **Plaintiffs Are Not Relying On Inevitable Disclosure**

14         Apple's claims that Plaintiffs rely on inevitable disclosure is a red
15   herring.  Op. at 15-16.  California rejects the inevitable disclosure doctrine,
16   which would "permit[] a trade secret owner to prevent a former employee from
17   working for a competitor despite the owner's failure to prove the employee has
18   taken or threatens to use trade secrets."  *Whyte v. Schlage Lock Co.*, 101 Cal.
19   App. 4th 1443, 1446 (2002).  Plaintiffs have never tried to prevent anyone from
20   working at Apple.  Plaintiffs have also never asserted Apple is liable merely
21   because it hired individuals who possessed Plaintiffs' trade secrets.  Nor have
22   Plaintiffs argued that all of Apple's future publications listing Plaintiffs former
23   employees will necessarily include Plaintiffs' trade secrets.

24         Plaintiffs merely request an opportunity to review such publications

25   _____

26   [7] Apple incorrectly asserts Plaintiffs "did not plead" liability under the doctrine
     of respondeat superior.  Op. at 15.  Plaintiffs' specifically alleged that "Lamego
27   used and disclosed Plaintiffs' Confidential Information for the benefit of
     Defendant while employed by Defendant."  Dkt. 89-1 ¶ 235.
28

during this litigation to evaluate whether they would disclose further trade secrets, so Plaintiff has an opportunity to return to this court to prevent such disclosure if necessary.  Apple's own authority supports Plaintiffs' request.  *See Bayer Corp. v. Roche Molecular Sys., Inc.*, 72 F. Supp. 2d 1111, 1121 (N.D. Cal. 1999) (imposing "periodic and targeted discovery" obligations on the defendant and the former employee, allowing plaintiff to monitor for misappropriation).

### 3.   <u>Plaintiffs Adequately Described Their Trade Secrets</u>

Apple also argues that Plaintiffs failed to describe their trade secrets with particularity under Section 2019.210.  Op. at 16.  As support, Apple merely points to its pending Motion to Dismiss.  *Id.*  In that Motion, Apple falsely claims Plaintiffs pleaded "broad categories of information," by quoting the title of each trade secret.  *See* Dkt. 121 at 5:17-19.  Apple largely ignores the numerous detailed descriptions that follow.  For example, Apple's Motion to Dismiss ignores the detailed description of Plaintiffs' trade secret at issue here:



Moreover, Plaintiffs' present Motion includes a ***twelve-page*** declaration from Masimo's co-founder, Mohamed Diab, further explaining the relevant technology. *See* Dkt. 119.

As the same lawyer representing Apple in this case explained when representing a trade-secret plaintiff in this Court, Section 2019.210 can be satisfied by the "Complaint" and "the declarations filed in support of [Plaintiff's] Motion for Preliminary Injunction. . .." Dkt. 43-4, Ex. 5.

Plaintiffs described their trade secrets in far more detail than is required under Section 2019.210. Section 2019.210 requires only that plaintiffs describe their trade secrets with "reasonable particularity." *Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 2018 WL 2558388, at *2 (C.D. Cal. Feb. 27, 2018). Apple cannot credibly assert it lacks the detail it needs to defend itself. To the contrary, Apple understood Plaintiffs' trade secret well enough to have its expert prepare a detailed chart attempting to combine multiple publications to

1    argue the trade secret was already disclosed.  *See Prolifiq Software Inc. v. Veeva*
2    *Sys. Inc.*, 2014 WL 2527148, at *3 (N.D. Cal. June 4, 2014) ("Indeed, the fact
3    that [defendant] is able to craft detailed arguments for why [plaintiff's]
4    information does not constitute trade secrets means that [plaintiff] has
5    sufficiently identified that information to [defendant] so that it may investigate
6    the merits of [plaintiff's] claim.")

7    **B.    Plaintiffs Will Suffer Irreparable Harm**

8       **1.    Plaintiffs' Allegations Of Harm Are Not Vague Or Speculative**

9          In a mere two sentences, Apple argues Plaintiffs' allegations of harm are
10   "conclusory" and "insufficient."  Op. at 17.  In reality, Plaintiffs' allegations are
11   straightforward: Any disclosure of Plaintiffs' trade secrets will cause irreparable
12   harm.  This is hardly controversial.  As Apple's own cited precedent explains,
13   "the loss of trade secrets cannot be measured in money damage because a trade
14   secret once lost is *lost forever*."  *Super Chefs, Inc. v. Second Bite Foods, Inc.*,
15   2015 WL 12914441, at *5 (C.D. Cal. June 11, 2015) (internal quotations
16   omitted); *see also Intertek Testing Servs., N.A., Inc. v. Pennisi*, 443 F. Supp. 3d
17   303, 346 (E.D.N.Y. Mar. 9, 2020) ("absent an injunction, plaintiff will likely
18   lose the confidentiality of its trade secrets").

19         As shown above, Plaintiffs presented evidence of an example where
20   Apple *already* disclosed Plaintiffs' trade secret.  Plaintiffs do not know whether
21   Apple may seek to publish further trade secrets because Apple is intentionally
22   keeping Plaintiffs in the dark on that issue.  With this motion, Plaintiffs do not
23   seek to stop any Apple publication.  Instead, Plaintiffs merely request that Apple
24   refrain from making such publications *until* Plaintiffs can review the material
25   first.  If Plaintiffs identify another misappropriation, Plaintiffs will have an
26   opportunity to *then* seek to prevent the publication before it is too late.  That
27   relief is necessary because Apple apparently intends to keep making such
28   publications.  Indeed, Apple did everything it could to further publicize

-14-

1   Plaintiffs' technology in its opposition to **this very motion**.  *See* Dkt. 148 (Apple
2   opposing Plaintiffs' application to seal material that Apple filed publicly); Dkt.
3   152 (the Court granting Plaintiffs' application to seal).

4          Apple claims that Plaintiffs' showing of irreparable harm "rests on
5   speculation as to some unidentified risk of future publication of trade secrets
6   acquired from its 'other former employees'" besides Lamego.  Op. at 18.  But
7   Plaintiffs' apprehension is not speculation.  For months, Plaintiffs asked Apple
8   about its pending applications.  For months, Apple refused to respond.  Exs. 7,
9   9.  Apple's opposition reveals its protests were a ruse, at least as to Lamego, by
10  finally revealing that "Apple does not have any pending patent applications
11  identifying Lamego as an inventor that have not been published."  Op. at 18.

12         Apple has now provided sworn testimony establishing that it can easily
13  obtain the same information for other former employees.  Dkt. 143.  Apple's
14  refusal to provide such information justifies an inference that it intends to allow
15  more applications to publish in this field naming Plaintiffs' former employees as
16  inventors.  Otherwise Apple would represent it has no such applications.

17         Plaintiffs also readily offered to extend Apple's deadline to oppose this
18  Motion if Apple would provide some assurance that it would not publish more
19  of Plaintiffs' trade secrets during the extension.  Dkt. 127.  Apple's refusal
20  heightened Plaintiffs concern that Apple intends to imminently make additional
21  publications.  This demonstrates that the modest requested relief is justified.

22         Apple relies on *Javo Beverage Co. v. Cal. Extraction Ventures, Inc.*, 2020
23  WL 886527 at *5 (S.D. Cal. Feb. 24, 2020).   But *Javo Beverage* is
24  distinguishable on a number of grounds, including that (1) plaintiff sought
25  preliminary injunctive relief "to prohibit Defendants from further **using** Javo's
26  trade secrets" (2) the court was not convinced there was misappropriation, (3)
27  there was little risk of irreparable harm because "construction of [defendant's]
28  facility [was] not yet completed" and regulatory approval was pending, and (4)

-15-

the "alleged injuries … appear[ed] to consist of purely economic harm."  2015 WL 12914441, at *5.  In contrast, here, (1) Plaintiffs merely seek notice and disclosure **before** publication, (2) Plaintiffs make a strong showing of misappropriation, (3) there is a significant risk of harm, and (4) disclosure of Plaintiffs' trade secrets will cause irreparable injuries that cannot be compensated with monetary relief.

### 2.    Apple's Disclosure Would Harm Plaintiffs

Apple argues Plaintiffs have not shown a connection between Plaintiffs' harm and Apple's wrongful acts.   Apple is incorrect.   There is a direct connection between Plaintiffs' harm—the publication of Plaintiffs' trade secrets and elimination of Plaintiffs' advantage based on those trade secrets—and Apple's wrongful disclosure of those trade secrets.

None of Apple's cases support denying relief in these circumstances.  In *Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015), the court's primary focus was the "mismatch" between the alleged harm (threats against the plaintiff) and the type of claim (copyright law).  *See id.* at 744 ("Garcia's harm must stem from copyright—namely, harm to her legal interests *as an author*.").  No such mismatch exists here.

In *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011), the plaintiff failed to show a sufficient connection between the accused conduct and the plaintiff's alleged harm of becoming "very close to bankruptcy."  *Id.* at 981. The plaintiff never established "it was **ever** in sound financial shape" and plaintiff's own evidence showed it "lost money at the beginning" and "has never made up that ground during its 15 years of operation."  *Id.* at 982.

Apple's other cases likewise addressed very different facts.  *See, e.g., Caribbean Marine Servs. v. Baldridge*, 844 F.2d 668, 675 (9th Cir. 1988) (no likely harm where "[m]ultiple contingencies," including intentional torts by plaintiffs' own employees, had to occur before plaintiffs would face harm); *JBF*

-16-

*Interlude 2009 Ltd – Israel v. Quibi Holdings, LLC*, 2020 WL 3963863 at *6 (C.D. Cal. July 13, 2020) (insufficient connection between misappropriation and, for example, alleged "intangible harm to consumer perception and employee recruitment"); *LA Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("alleged injury" was "lost revenues"—a "monetary injury" that "is not normally considered irreparable"); *BrightView Landscapes, LLC v. Stowell*, 2017 WL 10511569 (C.D. Cal. Dec. 11, 2017) (no irreparable harm where plaintiff "quantified" past harm and failed to show harm to "goodwill" would be irreparable).

### 3. The Timing of Plaintiffs' Motion Does Not Diminish Plaintiffs' Risk of Irreparable Harm

#### a. Courts are "Loathe" To Withhold Relief Solely Based on Alleged Delay

Apple misstates the law in arguing delay "is reason enough to deny Plaintiffs' Motion." Op. at 19. "Usually, delay is but a *single* factor to consider in evaluating irreparable injury . . .." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019). As Apple's precedent explains, courts are "*loath* to withhold relief solely on that ground . . .." *Lydo Enters. Inc. v. City of Las Vegas*, 745 F.2d 1211, 1214 (9th Cir. 1984). Indeed, the court in *Planned Parenthood v. U.S. Dept. of Health*, 328 F. Supp. 3d 1133, 1150 (E.D. Wash. 2018), distinguished several of Apple's cases because delay "is only *one* factor in the overall consideration." *Id*. (distinguishing *Garcia v. Google* and *Oakland Tribune, Inc. v. Chronicle Pub. Co.*).

Apple cites *Oren Enters., Inc. v. Stefanie Cove & Co.*, 2017 WL 8220230 at *5 (C.D. Cal. June 2, 2017), but that case did not rely solely on delay. *Oren* relied on other facts, including that "Plaintiffs tried and failed twice to obtain injunctive relief when a similar action was pending in Los Angeles Superior Court" and that "apparent forum shopping also justifie[d] denying the

-17-

1  provisional equitable relief Plaintiffs seek." *Id.*

2  Apple also cites *Lydo*, where plaintiffs delayed **five years** before taking

3  any action. 745 F.2d at 1213. Nevertheless, "delay [was] **not** the principal basis

4  of [the Ninth Circuit's] decision." *Id.* at 1216. Rather, the plaintiffs' "inchoate

5  claims simply [did] not present serious litigation questions." *Id.* Moreover,

6  another court distinguished *Lydo* where a plaintiff "waited five months" before

7  seeking relief, recognizing that "[o]bviously, a delay of a few months is

8  categorically distinct from a **five-year** delay." *Kettle Range Conservation*

9  *Group v. U.S. Forest Serv.*, 971 F. Supp. 480, 484 (D. Or. 1997).

10  ### b.  Plaintiffs Did Not Unduly Delay

11  Apple also ignores that its precedent primarily relies on **unexplained**

12  delay as indicating a lack of urgency. *See, e.g.*, *Blindlight, LLC v. Cubbinson*,

13  2017 WL 6888498 at *5 (C.D. Cal. May 16, 2017) ("no explanation" for delay

14  in seeking injunction).[8] Indeed, Apple's cited authority explains that "delay

15  may **not** negate" a conclusion of irreparable harm if, for example, "the delay

16  was caused by . . . plaintiff's making good faith efforts to investigate" the

17  relevant issues. *Tough Traveler Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d

18  Cir. 1995).

19  For example, in *Planned Parenthood v. U.S. Dept. of Health*, 328 F.

20  Supp. 3d 1133, 1150 (E.D. Wash. 2018), the Court rejected the defendant's

21  reliance on delay because Plaintiffs "were not sitting idly," but rather "sent

22  letters" attempting to resolve the issue. *Id.* at 1151. Here, Plaintiffs similarly

23  "sent letters" to avoid burdening the Court with something that the parties

24  _____

25  [8] *See also Diversified Silicone Prods. Corp. v. Elastapro Silicone Sheeting LLC,*

26  2020 WL 4390380, at *3 (C.D. Cal. May 19, 2020) (no explanation for plaintiffs' failure to seek relief after investigation "quickly revealed evidence");

27  *Super Chefs, Inc. v. Second Bite Foods, Inc.*, 2015 WL 12914441 at *4-5 (C.D.

28  Cal. June 11, 2015) (plaintiff "failed to articulate good reasons for its delay").

should have been able to resolve themselves.

Apple claims Plaintiffs delayed by waiting four and a half months after Apple "definitively rejected Plaintiffs' request on April 2." Op. at 19. That is not accurate. Plaintiffs spent months communicating with Apple in an attempt to resolve these issues without motion practice. Plaintiffs initially sought to allay Apple's stated concerns by simply asking whether Apple had any pending applications at issue. Ex. 8. Apple suggested it would provide information once the Court entered a protective order. Ex. 9 (Apple refusing because "Plaintiffs are seeking yet again to gain access to Apple's confidential information."). Apple also protested that Plaintiffs allegedly had not identified their trade secrets. *Id*.

After the Court entered the Protective Order and Plaintiffs further identified their trade secrets in the SAC on July 24, Plaintiffs promptly asked if Apple would "finally answer Plaintiffs' questions [] regarding whether Apple may allow additional patent applications to publish that list former Masimo or Cercacor employees as inventors, and whether such unpublished applications currently exist?" Ex. 10. Apple refused on August 13, revealing that Apple's stated concerns were merely excuses and that Apple had no intention of cooperating. Ex. 11. Plaintiffs filed their Motion five days later.

Thus, far from showing a lack of urgency, Plaintiffs' actions show an effort to resolve these issues informally. Indeed, given Apple's suggestion that it would engage after the Court entered a protective order and Plaintiffs' described their trade secrets in more detail, Plaintiffs reasonably presumed Apple would not likely publish Plaintiffs' trade secrets while this dispute was pending. Once Apple revealed those excuses were a ruse, however, Plaintiffs had no choice but to file this Motion. Apple's own precedent recognizes that delay "*after* the end of cease-and-desist process[es]" is more "probative." *JBF Interlude 2009 Ltd – Israel v. Quibi Holdings, LLC*, 2020 WL 3963863 at *6

-19-

1   (C.D. Cal. July 13, 2020).  Here, there was no delay after Plaintiffs' discussions

2   with Apple proved unsuccessful.[9]

3              **c.      <u>Apple Cannot Point to Any Intervening Events That</u>**

4                      <u>**Undermine Plaintiffs' Claim of Irreparable Harm**</u>

5          Apple also ignores that several of its cases discussing "delay" relied on

6   important events that occurred during the delay.  For example, in *Miller v. Cal.*

7   *Pac. Med. Ctr.*, 881 F.2d 536, 544 (9th Cir. 1993), "the detrimental effects, if

8   any," of the accused conduct had "already taken their toll" and it was not clear

9   whether an injunction "would advance any substantial" purpose.  *Id.* at 544.

10  Likewise, in *Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015), the court

11  affirmed that a "film's five-month presence on the Internet" undermined the

12  plaintiff's claim of irreparable harm if the film were not removed.  *Id.* at 737,

13  746.  Apple similarly cites *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762

14  F.2d 1374, 1377 (9th Cir. 1985), where the "exclusivity provisions which

15  plaintiff [sought] to enjoin [had] been in effect for a number of years."  The

16  Court observed that the "basic function of a preliminary injunction is to preserve

17  the *status quo ante litem* pending a determination of the action on the merits."

18  *Id.*

19         Here, there is no intervening disclosure that undermines Plaintiffs'

20  proposed relief.  The requested relief would provide a process to reduce the risk

21  of irreparable harm from ***future*** disclosures before it is too late.  Plaintiffs

22  request is narrowly tailored to merely preserve the *status quo*.[10]

23  _____

24  [9] Apple also argues the Court should look at the time between the '754 Patent
    publishing and Plaintiffs bringing this motion.  Op. at 19.  But the harm from
25  Apple publishing the '754 Patent already occurred.  Plaintiffs seek to prevent a
26  harm that has not yet occurred and would occur only if Apple were to publish
    more of Plaintiffs' trade secrets.

27  [10] Apple cites *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985),
28  but in that case, the plaintiff received notice of the potential harm more than

                                        -20-

## C.      The Balance of Hardships Weigh Heavily in Plaintiffs' Favor

None of Apple's arguments regarding the balance of hardships is persuasive.  First, Apple incorrectly asserts that Plaintiffs seek to protect trade secrets that were previously disclosed.  *Id.* at 21:6-11.  To the contrary, Plaintiffs presented evidence of previous misappropriation to show the risk of future harm.  Br. at 1, 12.  Apple's future publication of additional trade secrets would cause ***further*** irreparable harm.  *Id.* at 18.

Second, Apple claims Plaintiffs' requested relief is insufficiently focused.  Op. at 21:12-20. That is also incorrect.  Plaintiffs' relief targets publications (1) regarding measurement or tracking of health-related or physiological information, and (2) naming one of Plaintiffs' former employees as an inventor.  Br. 7-10.  Plaintiffs' requested injunctive relief is entirely consistent with Apple's previous misappropriation and is further focused to merely require advance ***notice*** of only such publications.

Third, Apple asserts it would be harmed because it has "a statutory right to keep its pending patent applications secret[.]"  Op. at 22:1.  That is irrelevant because the requested relief has nothing to do with patent applications that Apple wants to keep secret.  The relief sought would require advance notice of only applications that Apple ***plans to make public***.

Apple also argues that providing advance notice of pending applications will "give Plaintiffs' employees insight into Apple's product pipeline."  *Id*. at 22:15. Apple contends Plaintiffs will then draft new patent claims to cover Apple's new products.  *Id*. at 22:17-21.  Apple ignores that it is Apple's choice whether to designate the impending publications as "Confidential" or "Highly Confidential – Attorneys Eyes Only" pursuant to the Protective Order, which

---

"nine months" before seeking relief and voluntarily engaged in conduct causing the same harm "of which plaintiffs [] complain[ed]."  *Id*. at 276-77.

contains a patent-prosecution bar.[11]   Moreover, Apple never explains how it could suffer prejudice by disclosing information shortly before Apple intends to disclose that information to the public.

Fourth, Apple argues that, if it did not previously request non-publication, it would have to abandon patent applications to keep them from publishing. Op. at 22:26-23:10. As a threshold matter, Apple has not represented that any such applications exist. Apple claims it routinely requests non-publication. *See* Op. at 15:3-5. Moreover, if 60 days remain before publication, no action would be necessary unless Plaintiffs seek further relief. If less than 60 days remain, Plaintiffs will expedite their review. Finally, Apple ignores the multiple ways it could request non-publication of a pending patent application without losing the right to pursue the application. For example, Apple could file a continuation application and request non-publication. *See* 37 CFR 1.53(b). There are additional ways to seek nonpublication. *See* 35 U.S.C. § 111(b)(7)), 37 CFR 1.53(c), & 35 U.S.C. § 119(e) (collectively allowing for nonpublication of some applications through converting to a provisional application and claiming priority).

Fifth, Apple asserts a generalized First Amendment right to communicate with its customers. Op. at 23:11-25. But Apple never explains how merely providing Plaintiffs with notice of certain specific planned disclosures would impinge Apple's First Amendment rights. To the extent Apple has a need to promptly communicate with its customers, as discussed above, Plaintiffs will expedite their review.

-----

[11] Apple recognizes that the identification of all instances of misappropriation would be improved with the assistance of Plaintiffs' employees. *See* Op. at 22:12-14. Apple is in control over whether it allows Plaintiffs' employees access (and thereby obtains more certainty) or precludes such access and accepts that Plaintiffs may later identify misappropriation that counsel did not recognize.

Lastly, Plaintiffs' proposed process need not impact or delay Apple's patent prosecution efforts.   Apple would retain full control over patent prosecution.  Apple provides no reason why it could not provide disclosures to Plaintiffs sufficiently in advance of a patent publication to allow Plaintiffs to evaluate the disclosures.

**D.      A Preliminary Injunction Is In the Public Interest**

Apple does not persuasively rebut Plaintiffs' arguments that a preliminary injunction would be in the public interest.    Op. at 24:12-25:23.  Instead, Apple points to the "individual" interests of Plaintiffs' former employees who now work for Apple.  *Id.* at 24:12-13.  For example, Apple asserts that "Plaintiffs' proposed injunction reaches non-parties (e.g., impacting the rights of Plaintiffs' former employees *as individuals*)" and hyperbolically asserts the proposed injunctions "tramples over the rights of former employees." *Id.* at 24:12-13, 24:26-27.  Apple does not explain how requiring ***Apple*** to provide Plaintiffs with advance notice of ***Apple's*** upcoming publications would "trample" on the rights of Plaintiffs' former employees.

Apple asserts that "Plaintiffs have tried to prohibit former employees from competing with Plaintiffs[.]"  Op. at 24:27-25:8.  That is incorrect and, again, Apple does not explain how the narrow requested injunctive relief would prevent any former employee from competing with Plaintiffs.

Apple also claims that "Plaintiffs' proposed injunction requires the disclosure of *all* former employees' inventions or publications relating to health information as long as they are listed as an inventor or author."  Op. at 25:9-11. That is incorrect for two reasons.  First, the injunction requires notice only if Apple intends to publish something.  Second, the injunction requires disclosure only of upcoming publications regarding "measurement or tracking" of health-related or physiological information.

Apple then reiterates its arguments regarding likelihood of success and

whether Plaintiffs have a protectable trade secret.  Op. at 24:24-25.  Those arguments are incorrect and irrelevant to the public interest.  Apple also erroneously asserts that Plaintiffs are "arguing that their former employees' inventions will inevitably encompass Plaintiffs' trade secrets, which is improper." *Id.* at 25:13-14.  As discussed above, Plaintiffs do not rely on inevitable disclosure.

Ultimately, Plaintiffs may ask the Court to decide whether an upcoming publication discloses Plaintiffs' trade secrets.  If the Court determines the publication will not disclose Plaintiffs' trade secrets, then the Court will not enjoin any publication and there will be no impact on Apple, the former employees, or the public.  However, if the Court determines the publication is likely to disclose Plaintiffs' trade secrets, then nothing supports allowing Apple to violate the trade secrets laws by publishing the information anyway.  The public has no valid interest in engaging in or benefiting from trade secret misappropriation.   Plaintiffs' requested injunction merely provides an opportunity to prevent Apple from disclosing Plaintiffs' trade secrets before it is too late.

**E.    No Security Is Necessary**

Rather than argue security is necessary, Apple merely requests an opportunity to submit more briefing if the Court enters a preliminary injunction.  Op. at 25 n.9.  Apple has therefore waived any argument that bond is necessary. *See Extreme Reach v, Spotgenie Partners, LLC*, 2013 WL 12081182 at *9-10 (C.D. Cal. Nov. 22, 2013) (declining to require a bond where defendants' opposition failed to identify "specific costs or damages that they would sustain as a result of an injunction and [defendants] do not request a bond").

# III. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request the Court enter a preliminary injunction to preserve the status quo and give Plaintiffs the tools to prevent Apple from further publishing Plaintiffs' trade secrets.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  August 31, 2020          By: */s/ Adam B. Powell*
                                     Joseph R. Re
                                     Stephen C. Jensen
                                     Perry D. Oldham
                                     Stephen W. Larson
                                     Adam B. Powell

                                     Attorneys for Plaintiffs,
                                     Masimo Corporation and
                                     Cercacor Laboratories, Inc.

33426707

-25-