Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:  (949) 760-0404 Facsimile:  (949) 760-9502

Adam B. Powell (Bar No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone:  (858) 707-4000 Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) Hon. James V. Selna<br>) Magistrate Judge John D. Early<br>)<br>) **DECLARATION OF ADAM B. POWELL IN SUPPORT OF PLAINTIFFS' OPPOSITION TO APPLE INC.'S MOTION TO COMPEL PLAINTIFFS TO PROVIDE A SECTION § 2019.210 DISCLOSURE**<br>)<br>)<br>)<br>)<br>)<br>) |

I, Adam B. Powell, hereby declare as follows:

1.     I am a partner in the law firm of Knobbe, Martens, Olson & Bear, LLP, counsel for Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Ceracor") (collectively, "Plaintiffs") in this action.  I have personal knowledge of the matters set forth in this declaration and, if called upon as a witness, would testify competently thereto.

2.     On July 31, 2020, I met and conferred with counsel of record for Apple regarding this Joint Stipulation.  During that meet and confer, I inquired whether Apple intended to move to dismiss Plaintiffs' Second Amended Complaint.  When Apple implied it may file another motion to dismiss, Plaintiffs explained that they should not have to provide a Section 2019.210 statement while the pleadings remained open.

3.     Attached hereto as **Exhibit 1** is a true and correct copy of Dkt. No. 43-5, [Proposed] Order Granting Defendant Apple Inc.'s Motion For Protective Order Barring Trade Secret-Related Discovery Absent Trade Secret Identification, filed in this case on April 30, 2020.

4.     Attached hereto as **Exhibit 2** is a true and correct copy of Dkt. No. 46, Supplemental Memorandum In Support Of Defendant Apple Inc.'s Motion For Protective Order Barring Trade Secret-Related Discovery Absent Trade Secret Identification, filed in this case on May 7, 2020.

5.     Attached hereto as **Exhibit 3** is a true and correct copy of Dkt. No. 54, Order Denying Defendant's Motion for Protective Order (Dkt. 43), filed in this case on June 15, 2020.

6.     Attached hereto as **Exhibit 4** is a true and correct copy of Dkt. No. 57-1, Memorandum Of Points And Authorities In Support Of Defendant Apple Inc.'s Motion For Review Of And Objections To Magistrate Judge Early's June 15, 2020, Order Denying Defendant's Motion For Protective

Order Barring Trade Secret-Related Discovery Absent Trade Secret Identification, filed in this case on June 19, 2020.

7.      Attached hereto as **Exhibit 5** is a true and correct copy of Dkt. No. 57-17, [Proposed] Order Granting Apple Inc.'s Motion For Review Of And Objections To Magistrate Judge Early's June 15, 2020 Order Denying Defendant's Motion For Protective Order Barring Trade Secret-Related Discovery Absent Trade Secret Identification, filed in this case on June 19, 2020.

8.      Attached hereto as **Exhibit 6** is a true and correct copy of Dkt. No. 79, [In Chambers] Order Regarding Motion for Review of and Objections to Magistrate Judge's Order, filed in this case on July 14, 2020.

9.      Attached hereto as **Exhibit 7** is a true and correct copy of the transcript of the July 10, 2020, hearing before Judge Selna.

10.     Attached hereto as **Exhibit 8** is a true and correct copy of Dkt. No. 92, Order Granting Plaintiffs' Renewed *Ex Parte* Application For An Order Requiring Apple To Comply With The Scheduling Order, filed in this case on July 29, 2020.

11.     Attached hereto as **Exhibit 9** is a true and correct copy of Dkt. No. 71, Defendant Apple Inc.'s Reply In Support Of Motion For Review Of And Objections To Magistrate Judge Early's June 15, 2020 Order, filed in this case on July 6, 2020.

12.     Attached hereto as **Exhibit 10** is a true and correct copy of Dkt. No. 43-1, Joint Stipulation Regarding Defendant Apple Inc.'s Motion For Protective Order Barring Trade Secret-Related Discovery Absent Trade Secret Identification, filed in this case on April 30, 2020.

13.     Attached hereto as **Exhibit 11** is a true and correct copy of Dkt. No. 33, Joint 26(f) Report, filed in this case on April 14, 2020.

14.     Attached hereto as **Exhibit 12** is a true and correct copy of Dkt. No. 37, [In Chambers] Order Re Scheduling Dates, filed in this case on April 17, 2020.

15.     Attached hereto as **Exhibit 13** is a true and correct copy of an email sent from Ilissa Samplin (who is counsel of record for Apple) to myself at 11:37 a.m. on July 17, 2020.

16.     Attached hereto as **Exhibit 14** is a true and correct copy of what appears to be a memo from the State Bar of California regarding Assembly Bill 501.

17.     Attached hereto as **Exhibit 15** is a true and correct copy of Dkt. No. 198 in *Loop AI Labs v. Gatti*, No. 3:15-cv-00798-HSG (N.D. Cal.).

18.     Attached hereto as **Exhibit 16** is a true and correct copy of the Hearing Transcript for the hearing held on February 27, 2014 in *Jobscience, Inc., vs. CVPartners, Inc.* No. 3:13-cv-04519-WHA, Dkt No. 46 (N.D. Cal. Feb. 27, 2014).

19.     Attached hereto as **Exhibit 17** is a true and correct copy of Dkt. No. 47 in *Jobscience, Inc. v. CVPartners, Inc.*, No. 3:13-cv-04519-WHA (N.D. Cal.).

20.     Attached hereto as **Exhibit 18** is a true and correct copy of Dkt. No. 64, Plaintiffs' Opposition To Apple Inc.'s Motion For Review Of And Objections To Magistrate Judge Early's June 15, 2020, Order filed in this case on June 29, 2020.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 28, 2020, at Encinitas, California.

*/s/ Adam B. Powell*
Adam B. Powell

33335281

-3-

# EXHIBIT 1

1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, CERCACOR LABORATORIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **[PROPOSED] ORDER GRANTING DEFENDANT APPLE INC.'S MOTION FOR PROTECTIVE ORDER BARRING TRADE SECRET-RELATED DISCOVERY ABSENT TRADE SECRET IDENTIFICATION** <br><br> Hr'g Date/Time: May 21, 2020, at 10 a.m. <br> Courtroom:        6A <br> Judge:            Hon. John D. Early <br> Discovery Cutoff:  July 5, 2021 <br> Pretrial Conference: March 21, 2022 <br> Trial:            April 5, 2022 |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[PROPOSED] ORDER GRANTING MOTION FOR PROTECTIVE ORDER BARRING TRADE SECRET-RELATED
DISCOVERY ABSENT TRADE SECRET IDENTIFICATION
CASE NO. 8:20-CV-00048-JVS (JDEX)

Exhibit 1
-4-

1   This matter is before the Court pursuant to Defendant Apple Inc.'s ("Apple")

2   Motion for Protective Order Barring Trade Secret-Related Discovery Absent Trade

3   Secret Identification under Federal Rule of Civil Procedure 37 and Local Rule 37-2.

4   Having considered the documents filed in support of and in opposition to the

5   motion, including the parties' Joint Stipulation and the parties' declarations and exhibits,

6   the argument of counsel, and all other matters properly before the Court, being fully

7   advised on the proceedings, and for good cause appearing:

8

9   IT IS HEREBY ORDERED as follows:

10   1. Apple's Motion for Protective Order is GRANTED;

11   2. Apple does not need to respond to Plaintiffs Masimo Corporation and

12   Cercacor Laboratories, Inc.'s (collectively, "Plaintiffs") Requests for

13   Production Nos. 5–25 until fourteen (14) days after Plaintiffs provide a

14   trade secret disclosure in compliance with California Code of Civil

15   Procedure Section 2019.210 ("Section 2019.210"); and

16   3. Plaintiffs shall serve on Apple no later than seven (7) days of the date of

17   this Order a Section 2019.210-compliant disclosure of their alleged trade

18   secrets.

19

20   **IT IS SO ORDERED.**

21

22   Dated: _____          _____

23                                      The Honorable John D. Early
                                        United States Magistrate Judge

24

25

26

27

28

---

[PROPOSED] ORDER GRANTING MOTION FOR PROTECTIVE ORDER BARRING TRADE SECRET-RELATED
DISCOVERY ABSENT TRADE SECRET IDENTIFICATION
CASE NO. 8:20-CV-00048-JVS (JDEx)

Exhibit 1
-5-

# EXHIBIT 2

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 9 of 300   Page ID
#:12074
Case 8:20-cv-00048-JVS-JDE   Document 46   Filed 05/07/20   Page 1 of 7   Page ID #:3602

1  JOSHUA H. LERNER, SBN 220755
      jlerner@gibsondunn.com
2  GIBSON, DUNN & CRUTCHER LLP
   555 Mission Street Suite 3000
3  San Francisco, CA 94105
   Tel.: 415.393.8200 / Fax: 415.393.8306
4
5  H. MARK LYON, SBN 162061
      mlyon@gibsondunn.com
6  GIBSON, DUNN & CRUTCHER LLP
   1881 Page Mill Road
7  Palo Alto, CA 94304-1211
   Tel.:  650.849.5300 / Fax: 650.849.5333

8  BRIAN M. BUROKER, *pro hac vice*          ILISSA SAMPLIN, SBN 314018
      bburoker@gibsondunn.com                   isamplin@gibsondunn.com
9  GIBSON, DUNN & CRUTCHER LLP               GIBSON, DUNN & CRUTCHER LLP
   1050 Connecticut Avenue, N.W.             333 South Grand Avenue
10 Washington, DC 20036                      Los Angeles, CA 90071-3197
   Tel.: 202.955.8541 / Fax: 202.467.0539   Tel.: 213.229.7000 / Fax: 213.229.7520
11
12 BRIAN A. ROSENTHAL, *pro hac vice*        ANGELIQUE KAOUNIS, SBN 209833
      brosenthal@gibsondunn.com                 akaounis@gibsondunn.com
13 GIBSON, DUNN & CRUTCHER LLP               GIBSON, DUNN & CRUTCHER LLP
   200 Park Avenue                           2029 Century Park East Suite 4000
14 New York, NY 10166-0193                   Los Angeles, CA 90067
   Tel.: 212.351.2339 / Fax: 212.817.9539   Tel.: 310.552.8546 / Fax: 310.552.7026

15 *Attorneys for Defendant Apple Inc.*

16

17                **UNITED STATES DISTRICT COURT**
             **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
18                    **SOUTHERN DIVISION**

19 MASIMO CORPORATION,                   CASE NO. 8:20-cv-00048-JVS (JDEx)
   a Delaware corporation; and
20 CERCACOR LABORATORIES, INC.,          **SUPPLEMENTAL MEMORANDUM IN**
   a Delaware corporation,               **SUPPORT OF DEFENDANT APPLE**
21                                        **INC.'S MOTION FOR PROTECTIVE**
               Plaintiffs,               **ORDER BARRING TRADE SECRET-**
22                                        **RELATED DISCOVERY ABSENT**
23      v.                               **TRADE SECRET IDENTIFICATION**

24 APPLE INC.,                           Hr'g Date/Time:  May 21, 2020, at 10 a.m.
   a California corporation,             Courtroom:        6A
25                                        Judge:            Hon. John D. Early
               Defendant.                Discovery Cutoff:  July 5, 2021
26                                        Pretrial Conference:  March 21, 2022
27                                        Trial:            April 5, 2022
28

**Exhibit 2**
**-6-**

Case 8:20-cv-00048-JVS-JDE   Document 46   Filed 05/07/20   Page 2 of 7   Page ID #:3603

## I.   <u>INTRODUCTION</u>

1  Plaintiffs allege that the Apple Watch incorporates their trade secrets, but five

2  months after filing their complaint, and three weeks after Judge Selna stayed trade secret

3  discovery pending compliance with Section 2019.210, Plaintiffs *still* have not described

4  their alleged trade secrets.  While Plaintiffs are stalling in identifying their own secrets,

5  however, they continue to seek access to Apple's confidential information.  This is not

6  the behavior of a company with a legitimate trade secret claim.  To the contrary, it

7  reflects Plaintiffs' intent to concoct a trade secret claim based on *Apple's* confidential

8  information.  This Court should stop Plaintiffs' delay—and protect Apple's confidential

9  information until Plaintiffs comply with Section 2019.210—for three reasons:

10  *First*, Plaintiffs argue that they may take discovery of Apple's sensitive

11  confidential information as part of their patent case because the discovery is not tied

12  *exclusively* to their trade secret claim.  But that is contrary to the plain language of

13  Section 2019.210, which unequivocally bars discovery *relating to* the alleged trade

14  secrets until Plaintiffs describe their alleged secrets.  The information Plaintiffs seek in

15  the RFPs here is *identical* to the information Plaintiffs allege as their trade secrets, and

16  therefore the discovery is indisputably trade secret related.

17  *Second*, Plaintiffs' position erodes the policies promoted by Section 2019.210.

18  Plaintiffs would have the Court allow them to parse through Apple's confidential

19  information—and claim it as their own trade secrets—before Plaintiffs describe a single

20  one of their trade secrets.  Plaintiffs also ask the Court to decide the scope of discovery

21  without providing the disclosure designed to assist the Court in doing so.

22  *Third*, Plaintiffs are wrong to contend that they can provide a Section 2019.210

23  disclosure whenever *they* decide that discovery is trade secret-related.  A trade secret

24  claim is not an invitation to a buffet where Plaintiffs can pick and choose what discovery

25  they want to take before providing a description of their own trade secrets.

26  Apple has agreed to produce documents that relate solely to the patent claims.

27  Plaintiffs must identify their trade secrets with reasonable particularity to get more.

## II.  ARGUMENT

### A.  A Protective Order Is Warranted Under Section 2019.210.

Section 2019.210—with which Plaintiffs already were ordered to comply—requires Plaintiffs to identify their trade secrets "before commencing discovery *relating to* the trade secret." Cal. Code Civ. Proc. § 2019.210 (emphasis added). While Plaintiffs contend that their RFPs seek "patent discovery," the RFPs *also relate to* Plaintiffs' CUTSA claim. Indeed, Plaintiffs' RFPs use the *identical* language Plaintiffs use to allege their trade secrets in the FAC. For example, RFPs 12 through 14 seek, in part, "technical information," "design review documents," "technical specifications," "technical drawings," "product briefs," "product plans," "assembly design" documents, and "invention disclosures," which are the *exact same* categories of information Plaintiffs allege constitute their trade secrets. *Compare* RFPs 12–14, *with* FAC ¶ 211.

Plaintiffs nonetheless stall on the basis that Section 2019.210 applies only to discovery that relates *solely* to their CUTSA claim. There is no such limitation in the statute. This Court has recognized that "*Section 2019.210 does not limit discovery 'exclusively' relating to the trade secrets*. A request that relates to both trade secret and other issues still 'relates to' the trade secret." *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 4284523, at *5 (C.D. Cal. June 11, 2019) (emphasis added).

This is not the first time Plaintiffs have made this misguided argument. After Apple served its portion of the Joint Stipulation, Plaintiffs sought a ruling from Judge Selna that Section 2019.210 does not apply to the very same discovery at issue here. *See* ECF No. 33, at 13–14. Judge Selna ruled in *Apple's* favor, "adopt[ing] patent specific dates" for discovery that do not begin until June 2020, and "stay[ing] the trade secret discovery only pending compliance with 2019.210." ECF No. 37, at 1. Yet Plaintiffs still refuse to provide a trade secret disclosure, claiming that when Judge Selna ordered them to comply with Section 2019.210, he did not mean to stay trade secret-*related* discovery pending compliance, but instead intended to enable Plaintiffs to circumvent Section 2019.210 by claiming the RFPs are patent-related. In short, Plaintiffs' reading

1    of Judge Selna's Order is inconsistent with the statute with which they were ordered to

2    comply.  That simply makes no sense in light of the plain language of Section 2019.210.

3         The cases Plaintiffs cite do not help their cause.  In *Loop AI Labs, Inc v. Gatti*,

4    2015 WL 9269758 (N.D. Cal. Dec. 21, 2015) (Joint Stip. at 33), the plaintiff's non-

5    CUTSA claims—unlike the patent claims here—did not cover the same technology as

6    the CUTSA claim.  *Id.* at *1–2, *4.  Moreover, the plaintiff in *Loop AI Labs* was under

7    court order to provide within 21 days a "thorough and complete" trade secret disclosure,

8    *which it could not amend in the future* absent a showing of good cause.  *Id.* at *4.  Here,

9    Plaintiffs have not even agreed on a date by which they will serve their disclosure.

10        In *Space Data Corp. v. X*, 2017 WL 3007078 (N.D. Cal. July 14, 2017) (Joint

11   Stip. at 31), unlike this case, the plaintiffs provided a Section 2019.210 disclosure *and*

12   amended it prior to the order Plaintiffs cite.  Joint Br. at 2, 2017 WL 3007078, ECF No.

13   105.  In *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826,

14   831 (2005) (Joint Stip. at 30–31), the plaintiff had already served *three* Section 2019.210

15   disclosures; Plaintiffs have not even served one.[1]  And here, unlike in *Advanced*

16   *Modular*, the factual dependency of claims is not at issue—but rather the nature of

17   *specific RFPs*.  RFPs 5 through 25 seek discovery about the categories of information

18   Plaintiffs claim as trade secrets.  Plaintiffs must comply with Section 2019.210 to

19   discover responsive, confidential documents.  *See E. & J. Gallo Winery v. Instituut Voor*

20   *Landbouw-En Visserijonderzoek*, 2018 WL 3062160, at *6 (E.D. Cal. June 19, 2018).[2]

21        Moreover, Plaintiffs are wrong to argue that Apple's position is that "*all* discovery

22   concerning the accused products is barred because it is also relevant to trade secrets."

23

24   _____

     [1]  In *ScaleMP, Inc. v. TidalScale, Inc.*, No. 3:18-cv-04716-EDL, ECF No. 52, at 2 (Joint
25   Stip. at 31–32), the plaintiff likewise had already served a Section 2019.210 disclosure,
     as well as trade secret-identifying documents.

26   [2]  Plaintiffs cite a scheduling order (Joint Stip. at 32 (*Brocade Commc'ns Sys., Inc. v.
     A10 Networks, Inc.*, No. 5:10-cv-03428-LHK, ECF No. 72 (N.D. Cal. Mar. 24, 2011))),
27   in which the court provided a general framework for future discovery but did not assess
     specific RFPs to determine whether they "relate to" a CUTSA claim—the issue before
28   this Court.  Plaintiffs also cite *Bryant v. Mattel, Inc.*, 2007 WL 5430888, at *4 n.3 (C.D.
     Cal. May 18, 2007) (Joint Stip. at 32–33), which merely addresses Section 2019.210 in
     a footnote, and Apple has not found a single court that has relied on it.

Gibson, Dunn &
Crutcher LLP

Supp. Memo ISO Apple's
Mot. for Prot. Order                              3                    Case No. 8:20-cv-00048-JVS (JDEx)

**Exhibit 2**
**-9-**

1   Joint Stip. at 4.  That is not Apple's position.  Nor has Apple "refuse[d] to produce any

2   technical discovery."  *Id.* at 30.  Apple has agreed to produce documents responsive to

3   RFPs 1 through 4.  Apple also has agreed to produce public documents responsive to

4   RFPs 5 through 25.  Apple merely requests that Plaintiffs provide a Section 2019.210

5   disclosure before commencing confidential discovery "relating to" their CUTSA claim,

6   as the text of the statute with which Judge Selna ordered compliance requires.

7   **B.     A Protective Order Promotes The Goals of Section 2019.210.**

8            Section 2019.210 promotes well-investigated claims and dissuades the filing of

9   meritless trade secret complaints.  Plaintiffs' repeated delays in identifying their own

10  trade secrets, while at the same time seeking Apple's confidential information, is

11  inconsistent with the conduct of a plaintiff with a serious trade secret claim.  *See*

12  *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014)

13  ("A true trade secret plaintiff ought to be able to identify, up front, and with specificity

14  the particulars of the trade secrets without any discovery.").

15           Section 2019.210 also prevents plaintiffs from using the discovery process to

16  obtain the *defendant's* trade secrets.  Yet that is exactly what Plaintiffs are doing here

17  after Plaintiffs not only served a subpoena on Apple in the related *True Wearables* action

18  without first complying with Section 2019.210, but also demanded that Apple disclose

19  all unpublished patent applications listing *any previous employee* of Plaintiffs as an

20  inventor even though California rejects the inevitable disclosure doctrine.  If Plaintiffs

21  are permitted to proceed without a disclosure, they will be able to review Apple's

22  confidential information and claim it as their own.  *Id.* ("[I]t is easy to allege theft of

23  trade secrets with vagueness, then take discovery into the defendants' files, and then

24  cleverly specify what ever happens to be there as having been . . . stolen from

25  plaintiff.").  Plaintiffs also will be able to use information obtained in discovery to craft

26  their disclosure, which again defeats the purpose of the statute.  *Gabriel Techs. Corp. v.*

27  *Qualcomm, Inc.*, 2011 WL 6152240 (S.D. Cal. Dec. 12, 2011), ECF No. 178, at 12–13

28  (plaintiff used discovery relating to other claims "to expand the scope of its trade secret

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 14 of 300   Page ID
#:12079
Case 8:20-cv-00048-JVS-JDE   Document 46   Filed 05/07/20   Page 6 of 7   Page ID #:3607

1    to cover [defendant's] technology").  What is worse, Plaintiffs apparently would have

2    the same firm or lawyers review Apple's confidential information and draft Plaintiffs'

3    trade secret disclosure.  *Jardin v. DATAllegro, Inc.*, 2011 WL 3299395, at \*5 (S.D. Cal.

4    July 29, 2011) (ordering "temporary ethical wall" because counsel "could not divorce

5    themselves from their knowledge of Defendants' confidential material").

6          Finally, Section 2019.210 assists the court in framing the scope of discovery.

7    Although there is no serious dispute that Plaintiffs' RFPs 5 through 25 relate to their

8    CUTSA claim, Plaintiffs are withholding the disclosure that would end the debate.

9    **C.    Plaintiffs Must Promptly Serve A Section 2019.210 Disclosure.**

10         There is no excuse for Plaintiffs' delay.  Plaintiffs presumably had a Rule 11 basis

11   for filing their CUTSA claim as well as their repeated threats of a preliminary injunction.

12   At least some of the purported trade secrets are allegedly public in published patent

13   applications.[3]   Furthermore, Plaintiffs argued that they could have described their

14   purported trade secrets in response to an interrogatory *months ago*.  Apple already has

15   offered to treat the disclosure—which, unlike a document produced in discovery, is

16   treated like a pleading—as attorneys' eyes only pending resolution of any issues relating

17   to the stipulated protective order.  Therefore, if Plaintiffs have a valid trade secret claim,

18   they should have no trouble producing a Section 2019.210 disclosure now.   That

19   Plaintiffs continue to stall cuts against any reason to believe there is a valid CUTSA

20   claim here.  The Court should order Plaintiffs to serve their disclosure by May 28, 2020.

21                        **III.   <u>CONCLUSION</u>**

22         Apple requests that the Court (1) enter a protective order against discovery of non-

23   public documents responsive to Plaintiffs' RFPs 5 through 25 until Plaintiffs comply

24   with Section 2019.210, and (2) order Plaintiffs to serve a Section 2019.210 disclosure

25   by May 28, 2020, that includes each of the elements identified in ECF No. 43-1, at 28.

26

27        [3]  Plaintiffs' suggestion that the alleged secrets in these published applications remain
     secret is contrary to decades of case law.  *See, e.g.*, *Henry Hope X–Ray Prods., Inc. v.*
28   *Marron Carrel, Inc.*, 674 F.2d 1336, 1342 (9th Cir. 1982) ("Matters disclosed in a patent
     publication destroy any trade secret contained therein.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated:  May 7, 2020                    Respectfully submitted,

JOSHUA H. LERNER
H. MARK LYON
BRIAN M. BUROKER
BRIAN A. ROSENTHAL
ILISSA SAMPLIN
ANGELIQUE KAOUNIS
GIBSON, DUNN & CRUTCHER LLP


By:  */s/ Joshua H. Lerner*
       Joshua H. Lerner


*Attorneys for Defendant Apple Inc.*

Supp. Memo ISO Apple's
Mot. for Prot. Order                    6                    Case No. 8:20-cv-00048-JVS (JDEx)

**Exhibit 2**
**-12-**

# EXHIBIT 3

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 17 of 300   Page ID
#:12082
Case 8:20-cv-00048-JVS-JDE   Document 74   Filed 06/15/20   Page 1 of 9   Page ID #:3735

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 8:20-cv-00048-JVS (JDEx) | Date | June 15, 2020 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

| Present: The Honorable | John D. Early, United States Magistrate Judge |
|---|---|

| Maria Barr | n/a |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| n/a | n/a |

**Proceedings:**      Order Denying Defendant's Motion for Protective Order (Dkt. 43)

### I.
### INTRODUCTION

Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Plaintiffs") filed their original complaint in this Action against Defendant Apple Inc. ("Apple" or "Defendant") on January 9, 2020. See Dkt. 1. On March 25, 2020, Plaintiffs filed the operative First Amended Complaint, alleging: (1) patent infringement (12 counts); (2) trade secret misappropriation under California Uniform Trade Secrets Act ("CUTSA") Cal. Civ. Code §§ 3426 et seq.; (3) correction of inventorship (five counts); and (4) declaratory relief (six counts). See Dkt. 28 ("FAC") at 11-89. On April 17, 2020, the Honorable James V. Selna, United States District Judge, issued an "Order Re Scheduling Dates" ("Scheduling Order"), adopting "the patent specific dates" provided by the parties in their Rule 26(f) Joint Report and staying "the trade secret discovery only pending compliance with [California Code of Civil Procedure Section] 2019.210." Dkt. 37.

On April 30, 2020, Defendant filed a Motion for Protective Order (Dkt. 43, "Motion")[1], with an accompanying Local Rule 37 Joint Stipulation (Dkt. 43-1, "Joint

---

[1] The Court declines Plaintiff's invitation to strike Defendant's Notice of Motion (Dkt. 48 at 1-2) but directs Defendant to avoid excessively argumentative notices of motion, which per Local Rule 7-4, should, other than containing the caption, title, date and time for hearing, and the name of the judicial officer hearing the motion, only contain a "concise statement of the relief of Court action the movant seeks." The limitation is particularly important in a motion under Local Rule 37-2, which contains detailed procedures for the presentation of the parties' respective arguments.

**Exhibit 3**
**-13-**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 8:20-cv-00048-JVS (JDEx) | Date | June 15, 2020 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

Stipulation" or "Jt. Stip.") and supporting and opposing declarations (Dkt. 43-3, 43-4). On May 7, 2020, each party separately filed a Supplemental Memorandum in support of or in opposition to the Motion. See Dkt. 44, 46. Plaintiffs also filed a declaration and exhibits in support of their Supplemental Memorandum. See Dkt. 45, 45-1 to 45-11.

The Motion seeks a protective order directing that Defendant need not respond to requests for production numbers 5 to 25 ("RFP Nos. 5-25") of Plaintiffs' First Set of Requests for Production of Documents ("RFP") until Plaintiffs "describe their trade secrets with reasonable particularity consistent with California Code of Civil Procedure Section 2019.210" ("Section 2019.210"). Jt. Stip. at 1. A protective order is necessary, Defendant argues, because RFP Nos. 5-25 seek information that is "identical to the information Plaintiffs allege as their trade secrets," and Section 2019.210 "unequivocally bars discovery relating to the alleged trade secrets until Plaintiffs describe their alleged secrets." Dkt. 46 at 1 (emphasis omitted). Without a protective order, Defendant argues that Plaintiffs would be permitted "to parse through Apple's confidential information—and claim it as their own trade secrets—before Plaintiffs describe a single one of their trade secrets," thereby "erod[ing] the policies promoted by Section 2019.210." Id.

In opposition, Plaintiffs contend the Motion "is moot because Judge Selna already decided the issues raised in [this] Motion" in the Scheduling Order. Jt. Stip. at 3-4. Plaintiffs argue that RFP Nos. 5-25 seek patent discovery, which is not stayed under the Schedule Order. See Jt. Stip. at 4, 36; see also Jt. Stip. at 34 (RFP Nos. 5-25 "seek 'core technical documents' about the 'Accused Products,' which Plaintiffs specifically defined as the products accused of patent infringement." (emphasis omitted)). Plaintiffs also argue that the California courts interpret Section 2019.210 as barring "discovery on other claims only if the claim 'hinges upon the factual allegations that [defendant] misappropriated [plaintiff's] trade secrets,'" a condition that is not present here. Jt. Stip. at 30-31 (quoting Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal. App. 4th 826, 834 (2005)) (emphasis omitted). Thus, Plaintiffs argue, Defendant "cannot refuse to produce responsive documents by asserting some of the information may also be relevant to the trade secret claim." Jt. Stip. at 37 (emphasis omitted).

After having carefully reviewed the materials set forth above in support of and in opposition to the Motion, for the reasons set forth below, the Court DENIES the Motion.
/ / /
/ / /
/ / /

**Exhibit 3**
**-14-**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 8:20-cv-00048-JVS (JDEx) | Date | June 15, 2020 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

## II.
## RELEVANT LAW

### A.   Discovery in General

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to
any party's claim or defense and proportional to the needs of the case, considering the
importance of the issues at stake in the action, the amount in controversy, the parties'
relative access to relevant information, the parties' resources, the importance of the
discovery in resolving the issues, and whether the burden or expense of the proposed
discovery outweighs its likely benefit." Fed. R. Civ. P. (singularly, "Rule") 26(b)(1).
"Information within this scope of discovery need not be admissible in evidence to be
discoverable." Id. "Generally, the purpose of discovery is to remove surprise from trial
preparation so the parties can obtain evidence necessary to evaluate and resolve their
dispute." Duran v. Cisco Sys., Inc., 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citations
omitted).

Under Rule 34(a)(1), a party may serve on any other party requests, within the scope
of Rule 26(b), to produce or permit inspection of, among other things, "any designated
documents or electronically stored information." Such requests "must describe with
reasonable particularity each item or category of items to be inspected . . . [and] must
specify a reasonable time, place, and manner for the inspection . . . ." Rule 34(b)(1)(A), (B).

### B.   Motions for Protective Order

"A party or any person from whom discovery is sought may move for a protective
order in the court where the action is pending . . . ." Rule 26(c)(1). For "good cause," a
court may issue a protective order "to prevent disclosure of materials for many types of
information," including "a trade secret or other confidential research, development, or
commercial information." Rule 26(c)(1)(G); see also Phillips ex rel. Estates of Byrd v. Gen.
Motors Corp., 307 F.3d 1206, 1211 (9th Cir. 2002) (noting that the Supreme Court has
interpreted Rule 26(c) "as conferring 'broad discretion on the trial court to decide when a
protective order is appropriate and what degree of protection is required.'" (quoting Seattle
Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984))).

The party seeking a protective order has the burden of "showing specific prejudice or
harm [that] will result if no protective order is granted." Phillips, 307 F.3d at 1210-11. The
showing must be "particularized": "Broad allegations of harm, unsubstantiated by specific
examples or articulated reasoning, do not satisfy the Rule 26(c) test." Rivera v. NIBCO,
Inc., 364 F.3d 1057, 1063 (9th Cir. 2004) (quoting Phillips, 307 F.3d at 1211); accord

**Exhibit 3**
**-15-**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 8:20-cv-00048-JVS (JDEx) | Date | June 15, 2020 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

_Beckman Indus., Inc. v. Int'l Ins. Co._, 966 F.2d 470, 476 (9th Cir. 1992). Moreover, the party seeking the protective order has a "heavy burden" of showing why discovery should be limited. _Blankenship v. Hearst Corp._, 519 F.2d 418, 429 (9th Cir. 1975); _see_ DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) ("The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." (citing _Blankenship_, 519 F.2d at 429)); _see also_ _La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer_, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (citing _DIRECTV, Inc._, 209 F.R.D. at 458, for same proposition).

### C.   Scheduling Orders

Rule 16(b) directs district courts to enter scheduling orders that "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Rule 16(b)(3)(A). Once issued, a scheduling order may be modified only upon a showing of good cause and with the judge's consent. Rule 16(b)(4); _see also_ _Zivkovic v. S. Cal. Edison Co._, 302 F.3d 1080, 1087 (9th Cir. 2002) (citing same). As the Ninth Circuit has explained,

> A scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." [_Gestetner Corp. v. Case Equip. Co._, 108 F.R.D. 138, 141 (D. Me. 1985)]. The district court's decision to honor the terms of its binding scheduling order does not simply exalt procedural technicalities over the merits of [plaintiff's] case. Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation . . . .

_Johnson v. Mammoth Recreations, Inc._, 975 F.2d 604, 610 (9th Cir. 1992); _see also_ _Tessera, Inc. v. Sony Corp._, 2013 WL 97794, at *3 (N.D. Cal. Jan. 7, 2013) ("A scheduling order is not a mere suggestion or a trifle that can be disregarded when it becomes inconvenient; it is an order from the court. Just like any other order, the court expects compliance."); _L.H. v. Schwarzenegger_, 2008 WL 268983, at *6 (E.D. Cal. Jan. 29, 2008) ("Rule 16 and the court's scheduling order are not optional directives; the court is bound by them.").

In addition, this district's Local Rules provide that "[a]ny application to modify an order entered pursuant to [Rule] 16 shall be made to the judicial officer who entered the order." C.D. Cal. R. 16-14. Accordingly, magistrate judges lack authority to deviate from or alter a scheduling order set by a district judge. _See_ _Watts v. Allstate Indem. Co._, 2012

**Exhibit 3**
**-16-**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-00048-JVS (JDEx) | Date | June 15, 2020 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

WL 5289314, at *2 (E.D. Cal. Oct. 23, 2012) (magistrate judge does not have authority to amend district judge's scheduling order or to hear untimely discovery disputes); UMG Recordings, Inc. v. Disco Azteca Distribs., Inc., 2006 WL 2034689, at *3 (E.D. Cal. July 18, 2006) ("Of course, the magistrate judge is not empowered to modify the district judge's scheduling order."); see also Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc., 2018 WL 8193374, at *5 n.3 (C.D. Cal. May 14, 2018) (citing Watts, 2012 WL 5289314, at *2, and UMG Recordings, Inc., 2006 WL 2034689, at *3, for same proposition).

**D.     Section 2019.210**

Section 2019.210 requires that "[i]n any action alleging the misappropriation of a trade secret under the [California] Uniform Trade Secrets Act . . . , before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity . . . ." Cal. Civ. Proc. Code § 2019.210.

When determining a state law claim, federal courts generally apply federal procedural law and the state's substantive law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1939); see also Indep. Living Ctr. of S. Cal., Inc. v. Kent, 909 F.3d 272, 283 (9th Cir. 2018) (noting that "the Erie doctrine 'applies irrespective of whether the source of subject matter jurisdiction is diversity or federal question.'" (quoting Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102 (9th Cir. 2003))). Whether a rule is substantive or procedural "shifts as the legal context changes," and if a state rule conflicts with any applicable federal rule, the federal rule prevails. Hanna v. Plumer, 380 U.S. 460, 471 (1965).

The Ninth Circuit has not decided whether Section 2019.210 must be applied by district courts hearing CUTSA claims, and district courts that have considered the issue have handled the application of Section 2019.210 in various ways. See Conversion Logic, Inc. v. Measured, Inc., 2020 WL 2046391, at *2 (C.D. Cal. Jan. 16, 2020) (noting that the Ninth Circuit has not decided on the issue and outlining the different ways district courts have addressed the issue); E. & J. Gallo Winery v. Instituut Voor Landouw-En Visserijonderzoek, 2018 WL 3062160, at *3 (E.D. Cal. June 19, 2018) ("While the Ninth Circuit has not decided whether Section 2019.210 applies to actions in federal court, district courts within the circuit have reached differing conclusions on the issue." (quoting Social Apps, LLC v. Zynga, Inc., 2012 WL 2203063, at *1 (N.D. Cal. June 14, 2012), and citing Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc., 2007 WL 273949, at *2 (E.D. Cal. Jan. 29, 2007) (finding Section 2019.210 is a procedural provision and does not supersede the directly conflicting discovery requirements under Rule 26)); Gabriel Techs. Corp. v. Qualcomm Inc., 2012 WL 849167, at *2 (S.D. Cal. Mar. 13, 2012) (finding Section

**Exhibit 3**
**-17-**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 8:20-cv-00048-JVS (JDEx) | Date | June 15, 2020 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

2019.210 does not conflict with any federal rule and its application avoids undesirable forum shopping); AtPac, Inc. v. Aptitude Sols., Inc., 2010 WL 11571246, at *1 (E.D. Cal. Sept. 22, 2010) (concluding Section 2019.210 is inapplicable in federal trade secret actions); Hilderman v. Enea TekSci, Inc., 2010 WL 143440, at *2 (S.D. Cal. Jan. 8, 2010) (finding Section 2019.210 conflicts with Rule 26); Advante Int'l Corp. v. Mintel Learning Tech., 2006 WL 3371576 (N.D. Cal. Nov. 21, 2006) (declining to decide applicability of Section 2019.210 in federal cases but using it as guide); Excelligence Learning Corp. v. Oriental Trading Co., Inc., 2004 WL 2452834 (N.D. Cal. June 14, 2004) (finding Section 2019.210 non-binding but applying it because there was no parallel trade secret discovery provision in federal discovery rules); Comput. Econs., Inc. v. Gartner Grp., Inc., 50 F. Supp. 2d 980, 988 (S.D. Cal. 1999) (holding Section 2019.210 complements rather than conflicts with federal discovery rules).

Even so, districts courts "possess[ ] inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Dietz v. Bouldin, 136 S. Ct. 1885, 1891 (2016) (quoting Link v. Wabash R. Co., 370 U.S. 626, 630–631 (1962)); see also Crawford–El v. Britton, 523 U.S. 574, 599 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."); Jardin v. DATAllegro, Inc., 2011 WL 3299395, at *3-4 (S.D. Cal. July 29, 2011) (noting that the district court judge "ordered discovery procedures similar to those" that Section 2019.210 require based on the case's facts and the judge's "responsibility and discretion under the Federal Rules of Civil Procedure," instead of deciding that, legally, Section 2019.210 does not apply).

### III.
### DISCUSSION

The Scheduling Order stays "the trade secret discovery only pending compliance with [Section] 2019.210." Plaintiffs argue the stay applies to discovery that is directed "only" to trade secret issues, but dual-purpose discovery with both patent and trade secret aspects is not stayed. Defendant disagrees.

Defendant contends this interpretation of the Scheduling Order—that only discovery exclusively relating to Plaintiffs' trade secret claim is stayed—is "contrary to the plain language of Section 2019.210, which unequivocally bars discovery relating to the alleged trade secrets until Plaintiffs describe their alleged secrets." Dkt. 46 at 1 (emphasis omitted); see also id. at 2-3 (citing Cal. Civ. Proc. Code § 2019.210). In support of this position,

**Exhibit 3**
-18-

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 8:20-cv-00048-JVS (JDEx) | Date | June 15, 2020 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

Defendant notes that this Court, in an unrelated case, "recognized that 'Section 2019.210 does not limit discovery "exclusively" relating to the trade secrets. A request that relates to both trade secret and other issues still "relates to" the trade secret.'" Dkt. 46 at 2 (citing M/A-COM Tech. Sols., Inc. v. Litrinium, Inc., 2019 WL 4284523, at *5 (C.D. Cal. June 11, 2019)) (emphasis omitted). In addition, Defendant states that "Plaintiffs' RFPs use the identical language Plaintiffs use to allege their trade secrets in the FAC." Dkt. 46 at 2. Specifically, "RFPs 12 through 14 seek, in part, 'technical information,' 'design review documents,' 'technical specifications,' 'technical drawings,' 'product briefs,' 'product plans,' 'assembly design' documents, and 'invention disclosures,' which are the exact same categories of information Plaintiffs allege constitute their trade secrets." Id.; see also Jt. Stip. at 7-8 (RFP Nos. 12-14); FAC ¶ 211. According to Defendant, "[t]he information Plaintiffs seek in the RFPs here is identical to the information Plaintiffs allege as their trade secrets, and therefore the discovery is indisputably trade secret related." Dkt. 46 at 1 (emphasis omitted).

"The district court is given broad discretion in supervising the pretrial phase of litigation." Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002). District courts also retain broad discretion in deciding discovery issues and controlling . See Dietz, 136 S. Ct. at 1891; Crawford–El, 523 U.S. at 599. As noted, the Ninth Circuit has not decided whether Section 2019.210 applies in federal court. However, there are good reasons for applying the general procedures of Section 2019.210 as a guide in cases filed in federal court alleging CUTSA claims. See Advante Int'l Corp., 2006 WL 3371576; see also Jardin, 2011 WL 3299395.

Significantly here, the parties presented many of the same arguments raised in the Joint Stipulation in summary form in their respective portions of their Rule 26 Joint Report to Judge Selna. See Dkt. 33 at 13-20. Having considered those arguments, Judge Selna adopted "the patent specific dates" presented by the parties in the Joint Report, and then, one sentence later, stayed "the trade secret discovery only pending compliance with 2019.210." Dkt. 37. Thus, Judge Selna, having considered the parties' positions, applied the parties agreed-to patent specific procedures, but stayed only the trade secret discovery. The word "only," which follows the phrase "the trade secret discovery," appears to reflect an intent to stay trade secret discovery "only," but permit discovery on the patent claims to proceed. Applying a contrary interpretation, that the word "only" refers to the time the "stay" should last, that is, "only" until Plaintiff complies with 2019.210, would render the word "only" superfluous. That is, the sentence "The Court stays the trade secret discovery only pending compliance with 2019.210" would mean the same thing as "The Court stays

**Exhibit 3**
**-19-**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 8:20-cv-00048-JVS (JDEx) | | Date | June 15, 2020 |
|---|---|---|---|---|
| Title | Masimo Corporation, et al. v. Apple Inc. | | | |

the trade secret discovery pending compliance with 2019.210" if the word "only" modifies "pending compliance" rather than "trade secret discovery."

Courts should avoid interpretations that render a term superfluous. See A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012) ("If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*)" (footnote omitted), noting that "[s]ometimes lawyers will seek to have a crucially important word ignored, such as *only, solely,* or *exclusively* . . ."). The sole interpretation that does not render the word "only" superfluous in the Scheduling Order is an interpretation that "only" limits they type of discovery stayed—trade secret discovery. By staying "only" trade secret discovery, the Scheduling Order, by negative implication, does not stay patent-related discovery, which is subject to the patent-related dates approved in the prior sentence. Regardless of how Section 2019.210 has been applied by California state or other courts, Judge Selna has wide discretion to order pretrial proceeding before him, and the Scheduling Order, binding on this Court and the parties, stays "trade secret discovery only" pending Plaintiff's compliance with Section 2019.210. Discovery that has other purposes is not stayed.

Further, contrary to Defendant's contentions, RFP Nos. 5-25 do not all appear to seek information "identical to the information Plaintiffs allege as their trade secrets." Dkt. 46 at 1. Based on the Court's review, out of the 21 RFPs at issue, only four—RFP Nos. 8, 12, 13 and 14—seek some of the same categories of information Plaintiffs allege as their trade secrets. See Jt. Stip. at 7-8; FAC ¶ 211. Even then, RFP Nos. 8 and 12-14 do not appear to seek solely information related to Plaintiffs' trade secret claim. Indeed, Plaintiffs argue that these requests relate to their patent infringement claims: RFP Nos. 12 to 14 "seek basic technical information about the structure and operation of the Accused Products," and RFP No. 8 seeks information pertaining to "Apple's public assertions about the functionality of its products (including comparisons to other products)," which is "relevant to patent issues, including infringement." Jt. Stip. at 34. Apple itself concedes that RFP Nos. 5-25 "may 'concern the asserted patents and technical information about the products accused of patent infringement' as Plaintiffs contend. . .." Dkt. 33 at 7.

At most, some of RFP Nos. 5-25 may seek documents that overlap with Plaintiffs' trade secret claims. It cannot be said that RFP Nos. 5-25 seek "only" trade secret discovery. In light of Judge Selna's order, which, immediately after approving the patent-specific deadlines approved by the parties, stays "trade secret discovery only" pending Plaintiff's

**Exhibit 3**
**-20-**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:20-cv-00048-JVS (JDEx) | Date | June 15, 2020 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

compliance with Section 2019.210, Defendant has not met has not met its "heavy" burden in seeking a protective order to stay RFP Nos. 5-25. Accordingly, the Motion is denied.

## IV.
## CONCLUSION

For the foregoing reasons, the Motion (Dkt. 43) is DENIED.

IT IS SO ORDERED.

Initials of Clerk:     mba

**Exhibit 3**
**-21-**

# EXHIBIT 4

1   JOSHUA H. LERNER, SBN 220755
        jlerner@gibsondunn.com
2   GIBSON, DUNN & CRUTCHER LLP
    555 Mission Street Suite 3000
3   San Francisco, CA 94105
    Tel.:  415.393.8200 / Fax: 415.393.8306
4
5   H. MARK LYON, SBN 162061
        mlyon@gibsondunn.com
6   GIBSON, DUNN & CRUTCHER LLP
    1881 Page Mill Road
    Palo Alto, CA 94304-1211
7   Tel.:  650.849.5300 / Fax: 650.849.5333

8   BRIAN M. BUROKER, *pro hac vice*          ILISSA SAMPLIN, SBN 314018
        bburoker@gibsondunn.com                   isamplin@gibsondunn.com
9   GIBSON, DUNN & CRUTCHER LLP              GIBSON, DUNN & CRUTCHER LLP
    1050 Connecticut Avenue, N.W.            333 South Grand Avenue
10  Washington, DC 20036                     Los Angeles, CA 90071-3197
    Tel.: 202.955.8541 / Fax: 202.467.0539  Tel.: 213.229.7000 / Fax: 213.229.7520
11
    BRIAN A. ROSENTHAL, *pro hac vice*       ANGELIQUE KAOUNIS, SBN 209833
12      brosenthal@gibsondunn.com                akaounis@gibsondunn.com
    GIBSON, DUNN & CRUTCHER LLP              GIBSON, DUNN & CRUTCHER LLP
13  200 Park Avenue                          2029 Century Park East Suite 4000
    New York, NY 10166-0193                  Los Angeles, CA 90067
14  Tel.: 212.351.2339 / Fax: 212.817.9539  Tel.: 310.552.8546 / Fax: 310.552.7026

15  *Attorneys for Defendant Apple Inc.*

16

17              **UNITED STATES DISTRICT COURT**
    **FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

18
19  MASIMO CORPORATION,                  CASE NO. 8:20-cv-00048-JVS (JDEx)
    a Delaware corporation; and
    CERCACOR LABORATORIES, INC.,         **MEMORANDUM OF POINTS AND**
20  a Delaware corporation,              **AUTHORITIES IN SUPPORT OF**
                                         **DEFENDANT APPLE INC.'S**
21                  Plaintiffs,          **MOTION FOR REVIEW OF AND**
                                         **OBJECTIONS TO MAGISTRATE**
22          v.                           **JUDGE EARLY'S JUNE 15, 2020**
                                         **ORDER DENYING DEFENDANT'S**
23  APPLE INC.,                          **MOTION FOR PROTECTIVE**
    a California corporation,            **ORDER BARRING TRADE SECRET-**
24                                       **RELATED DISCOVERY ABSENT**
                    Defendant.           **TRADE SECRET IDENTIFICATION**
25
26                                       **Hearing**

27                                       Date:        Date: July 20, 2020
                                         Time:        1:30 p.m.
28                                       Courtroom:   10C
                                         Judge:       Hon. James V. Selna

---

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 28 of 300   Page ID
#:12093
Case 8:20-cv-00048-JVS-JDE   Document 57-1   Filed 06/19/20   Page 2 of 18   Page ID
#:3903

1

# **TABLE OF CONTENTS**

2
<u>Page</u>

3

4

5
I.      INTRODUCTION ................................................................................. 1

6
II.     BACKGROUND ................................................................................... 3

7
        A.     Plaintiffs Raise Their Vague Trade Secret Allegations Six Months
               Ago. ........................................................................................... 3

8
        B.     Apple Immediately Seeks a Section 2019.210 Statement. ........................ 3

9
        C.     The Court Stays Trade Secret Discovery Only Pending Compliance
               with Section 2019.210................................................................... 4

10

11
        D.     Following Plaintiffs' Erroneous Reading of the Scheduling Order,
               Judge Early Denies Apple's Motion for a Protective Order. ..................... 5

12
III.    STANDARD OF REVIEW ................................................................... 5

13
IV.     ARGUMENT ........................................................................................ 6

14
        A.     Magistrate Judge Early's Order Is Inconsistent with the Plain
               Language of Section 2019.210....................................................... 6

15

16
        B.     Magistrate Judge Early's Order Is Inconsistent with the Purpose of
               Section 2019.210. ........................................................................ 8

17
V.      CONCLUSION .................................................................................. 13

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

Exhibit 4
-23-

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Columbia Pictures, Inc. v. Bunnell*,
5
   245 F.R.D. 443 (C.D. Cal. 2007) ................................................................. 6

6

*Comput. Econs., Inc. v. Gartner Grp., Inc.*,
7
   50 F. Supp. 2d 980 (S.D. Cal. 1999) ........................................................... 9

8

*Crispin v. Christian Audigier, Inc.*,
9
   717 F. Supp. 2d 965 (C.D. Cal. 2010) ........................................................ 6

10

*Jobscience, Inc. v. CVPartners, Inc.*,
11
   2014 WL 852477 (N.D. Cal. Feb. 28, 2014) ................................... 9, 10, 13

12

*Lilith Games (Shanghai) Co. v. uCool, Inc.*,
13
   2015 WL 4149066 (N.D. Cal. July 9, 2015) ............................................... 9

14

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
15
   2019 WL 4284523 (C.D. Cal. June 11, 2019) ........................................ 5, 7

16

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
   2019 WL 8108729 (C.D. Cal. Sept. 3, 2019) .............................................. 9
17

*Masimo Corp. et al. v. True Wearables Inc. et al.*,
18
   No. 8:18-cv-02001-JVS-JDE ................................................................... 10

19

*Morton v. Mancari*,
20
   417 U.S. 535 (1974) .................................................................................... 8

21

*Radzanower v. Touche Ross & Co.*,
22
   426 U.S. 148 (1976) .................................................................................... 8

23

*Swarmify, Inc. v. Cloudflare, Inc.*,
24
   2018 WL 2445515 (N.D. Cal. May 31, 2018) ............................................ 9

25

*Watt v. Alaska*,
   451 U.S. 259 (1981) ............................................................................... 8, 13
26

**Statutes**
27

28 U.S.C. § 636 ............................................................................................. 5
28

Gibson, Dunn & Crutcher LLP

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 30 of 300   Page ID
#:12095
Case 8:20-cv-00048-JVS-JDE   Document 57-1   Filed 06/19/20   Page 4 of 18   Page ID
#:3905

Cal. Civ. Proc. Code § 2019.210 ................................................................... 7, 9

**Other Authorities**

A. Scalia and B. Garner, *Reading Law: The Interpretation of Legal Texts*
   (2012) ..................................................................................................... 8

**Rules**

Fed R. Civ. P. 72(a) ..................................................................................... 5

Gibson, Dunn &
Crutcher LLP

# I.  **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A), Apple requests that the Court reverse Magistrate Judge Early's June 15, 2020 Order denying Apple's Motion for Protective Order Barring Trade Secret-Related Discovery Absent Trade Secret Identification (the "PO Motion") pending Plaintiffs' compliance with Section 2019.210.  Apple also requests that the Court order Plaintiffs to describe their purported trade secrets by a date certain before Plaintiffs take discovery relating to the purported trade secrets.  Unless Magistrate Judge Early's Order is reversed, Plaintiffs will continue to evade Section 2019.210 by merely claiming that their trade secret-related discovery is also patent related.

Magistrate Judge Early's Order is the result of Plaintiffs' most recent flawed attempt to pursue trade secret-related discovery without first describing their alleged trade secrets.  Apple has been asking Plaintiffs to describe the trade secrets that Plaintiffs allege are incorporated in the Apple Watch Series 4 and 5, as required by Section 2019.210, for *more than four months*.  The Court entered a Scheduling Order staying "trade secret discovery only pending compliance with 2019.210" *more than two months ago*.  Section 2019.210 bars discovery "*relating*" to the alleged trade secrets until Plaintiffs identify their purported trade secrets with reasonable particularity.  A party may not avoid Section 2019.210 merely by claiming that discovery relating to trade secrets also relates to another claim.  Discovery is still related to trade secrets even if it also relates to another claim.  Nonetheless, Plaintiffs still refuse to provide a description of their alleged trade secrets while they pursue discovery that is unmistakably related to their trade secrets.  In conflict with Section 2019.210, Plaintiffs claim that the stay as to "trade secret discovery *only*" in this Court's Scheduling Order authorizes them to take discovery so long as they can claim that the discovery is also related to their patent claims and not *solely* their trade secret claim.  As set forth in greater detail below, it does not make sense to read the word "only" in the Scheduling Order to mean that Plaintiffs may avoid Section 2019.210 merely by claiming discovery is also patent

**Exhibit 4
-26-**

1   related.   Unfortunately, Judge Early erroneously felt compelled to accept Plaintiffs'
2   position, and Apple therefore seeks relief.

3       The reason for reversing Magistrate Judge Early's Order is straightforward:  The
4   Order is contrary to the plain language and intent of Section 2019.210.  It is *impossible*
5   to comply with Section 2019.210 by serving "discovery relating to the trade secret[s]"
6   while refusing to "identify the trade secret[s] with reasonable particularity."
7   Nonetheless, at Plaintiffs' urging, that is exactly what Magistrate Judge Early's Order
8   permits.  Indeed, Magistrate Judge Early's Order renders the core of Section 2019.210—
9   the prohibition on "discovery relating to the trade secret[s]" pending an adequate
10  description of the alleged trade secrets—*meaningless*.  Without identifying their alleged
11  trade secrets with particularity, Plaintiffs are permitted to pursue *any* discovery they
12  deem related to another subject, like their patent infringement claims, even if the
13  discovery also relates to the alleged trade secrets.  Indeed, at no point have Plaintiffs
14  suggested that they do not also need the information they are seeking for their trade
15  secret claim.

16      The result of letting Magistrate Judge Early's Order stand will be exactly what
17  Section 2019.210 was enacted to avoid.  A description of the alleged trade secrets is
18  required because it is easy for a plaintiff to allege theft of trade secrets with vagueness,
19  take discovery, and then claim whatever is found in the defendant's files as trade secrets
20  stolen from the plaintiff.  We now have precisely that risk here.  Plaintiffs are delaying
21  providing a description of their purported secrets until it is most advantageous.  In fact,
22  just last week Plaintiffs claimed in writing that "Judge Selna's order did not require a
23  2019.210 statement at all, much less by a date certain."  Lerner Decl. Ex. N, at 237.  In
24  the interim, Plaintiffs will sift through the discovery they now contend is "patent
25  related"—even though it is *also* trade secret related—and claim Apple's hard work and
26  innovative confidential information as Plaintiffs' own.  This is not how trade secret
27  claims are meant to be prosecuted.

28

Exhibit 4
-27-

Case 8:20-cv-00048-JVS-JDE   Document 57-1   Filed 06/19/20   Page 7 of 18   Page ID #:3908

Apple has been requesting a description of the purported secrets here for almost half a year.  The Court should put an end to Plaintiffs' delay and prevent Plaintiffs from gaining access to Apple's trade secrets before Plaintiffs identify their own.

## II.     BACKGROUND

### A.     Plaintiffs Raise Their Vague Trade Secret Allegations Six Months Ago.

On January 9, 2020, Plaintiffs filed the Original Complaint in this action, alleging that Apple misappropriated seven broad categories of generic business or technical information, "including, but not limited to, Plaintiffs' business plans, know-how, technical information, technical data, designs, manufacturing techniques and other business information."  Lerner Decl. Ex. B (Compl.) ¶ 181.

### B.     Apple Immediately Seeks a Section 2019.210 Statement.

Shortly after the parties first met and conferred on the Complaint, Apple requested that Plaintiffs identify their alleged trade secrets.  *Id.* Ex. D, at 90.  Plaintiffs ignored that request, and later claimed that Section 2019.210 does not apply to this case at all.  *Id.* Ex. I, at 205; Dkt. No. 33, at 13–16.

On March 16, 2020, Plaintiffs propounded 25 requests for production on Apple (the "RFPs"), the majority of which relate to Apple's confidential information and fall within the categories of information Plaintiffs allege comprise their trade secrets.  Lerner Decl. ¶ 7 & Ex. E.  Plaintiffs still refused to provide a Section 2019.210 disclosure.

Based on Plaintiffs' continued refusal to provide a Section 2019.210 disclosure, on March 27, 2020, Apple requested a conference of counsel pursuant to Rule 37-1.  *Id.* Ex. H, at 201.  During that conference of counsel, which took place on April 6, 2020, Plaintiffs maintained their position that Section 2019.210 does not apply to this case, but stated that even if it did, it applied only to discovery that was "solely" related to Plaintiffs' trade secret claim, and not discovery that relates to trade secrets and other matters.  *Id.* ¶¶ 12–13 & Ex. I, at 205–06.  Apple advised Plaintiffs that "solely related" was not the correct standard under Section 2019.210.  *Id.* Ex. I, at 205; Dkt. No. 43-1, at

APPLE'S MPA ISO MOT. FOR REVIEW OF AND
OBJECTIONS TO MAGISTRATE JUDGE'S ORDER     3     CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 4**
**-28-**

17.  Apple also explained that because Plaintiffs' RFPs concern the same subject matter as both the trade secret and patent infringement claims in this case, and because Plaintiffs admitted that at least some of the patent causes of action are "factually dependent on the same [trade secret] misappropriation allegations," Apple had no way to determine absent a Section 2019.210 disclosure which RFPs were "solely" related to Plaintiffs' trade secret claim.  Lerner Decl. Ex. I, at 206.  Plaintiffs still refused to provide a Section 2019.210 statement.

### C.   The Court Stays Trade Secret Discovery Only Pending Compliance with Section 2019.210.

On April 14, 2020, the parties filed a Joint Rule 26(f) Report.  Even though the parties were already briefing the issue for Magistrate Judge Early, Plaintiffs insisted on arguing in their portion of the 26(f) report (again) that Section 2019.210 does not apply to this case.  *See* Dkt. No. 33, at 13–16.  Apple pointed out that Plaintiffs' failure to serve a Section 2019.210 disclosure before commencing trade secret-related discovery threatened the very result Section 2019.210 guards against:  that Plaintiffs will use their patent infringement claims as an end-run around Section 2019.210, to gain access to Apple's files and claim Apple's confidential information as their own.  *Id.* at 8.

The Court issued its Scheduling Order on April 17, 2020.  The Court "adopt[ed] the patent specific dates" and "stay[ed] the trade secret discovery only pending compliance with 2019.210."  Dkt. No. 37, at 1.

On April 22, 2020, Apple once more asked Plaintiffs to serve a Section 2019.210 disclosure, citing the Scheduling Order's directive that Plaintiffs do so.  Lerner Decl. Ex. J, at 214.  Apple offered to treat any such disclosure under an "Attorney's Eyes Only" designation pending an entry of a protective order in this case.  *Id.* at 215. Plaintiffs responded on May 11, 2020, maintaining their position that "[e]ach of Plaintiffs' RFPs 1-25 relate to patent discovery and therefore are not subject to the Court's stay of trade secret discovery only."  *Id.* Ex. K, at 217 (emphasis removed).  On May 22, 2020, Plaintiffs rejected Apple's offer to treat their 2019.210 statement under

1    an "Attorney's Eyes Only" designation, insisting that they "will provide their 2019.210

2    statement and confidential documents after entry of a protective order."  *Id.* Ex. L, at

3    220; *see also id.* Ex. M, at 229.

4         **D.    Following Plaintiffs' Erroneous Reading of the Scheduling Order,**

5              **Judge Early Denies Apple's Motion for a Protective Order.**

6         On April 30, 2020, Apple filed the PO Motion, accompanied by a joint stipulation.

7    *See* Dkt. No. 43.  On May 7, 2020, both parties filed supplemental briefing pursuant to

8    Local Rule 37-2.3.  *See* Dkt. Nos. 44–46.

9         On May 14, 2020, Judge Early vacated the hearing on the PO Motion.  *See* Dkt.

10   No. 47.  On June 15, 2020, Judge Early denied Apple's PO Motion.  *See* Dkt. No. 54.

11   Judge Early agreed that "there are good reasons for applying the general procedures of

12   Section 2019.210 as a guide in cases filed in federal court alleging CUTSA claims."  *Id.*

13   at 7.  Judge Early also recognized that the Court has held that "[a] request that relates to

14   both trade secret and other issues still 'relates to' the trade secret."  *Id.* (quoting *M/A-*

15   *COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 4284523, at *5 (C.D. Cal. June 11,

16   2019)).  Nonetheless, Judge Early was convinced by Plaintiffs' erroneous reading of this

17   Court's Scheduling Order.  Judge Early concluded that "the Scheduling Order, binding

18   on this Court and the parties, stays 'trade secret discovery only' pending Plaintiff's

19   compliance with Section 2019.210," and that "[d]iscovery that has other purposes is not

20   stayed."  *Id.* at 7–8 ("The word 'only,' which follows the phrase 'the trade secret

21   discovery,' appears to reflect an intent to stay trade secret discovery 'only,' but permit

22   discovery on the patent claims to proceed.").  Applying Plaintiffs' interpretation of the

23   Scheduling Order, Judge Early found that "RFP Nos. 5-25 [do not] seek 'only' trade

24   secret discovery," and that Plaintiffs therefore may commence discovery on those RFPs

25   before complying with Section 2019.210.  *Id.* at 8.

26                          **III.    STANDARD OF REVIEW**

27        Under Federal Rule of Civil Procedure 72(a), a District Court "must consider

28   timely objections and modify or set aside any part of the [Magistrate Judge's] order that

1  is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C.

2  § 636(b)(1)(A). "The clearly erroneous standard applies to the magistrate judge's

3  factual findings while the contrary to law standard applies to the magistrate judge's legal

4  conclusions, which are reviewed de novo." *Columbia Pictures, Inc. v. Bunnell*, 245

5  F.R.D. 443, 446 (C.D. Cal. 2007). "Acting as an appellate court, this Court has the

6  power to 'affirm, modify, vacate, set aside or reverse' the magistrate judge's order and

7  'may remand the cause and direct the entry of such appropriate judgment, decree or

8  order, or require such further proceedings to be has as may be just under the

9  circumstances.'" *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 971 (C.D.

10  Cal. 2010) (citations omitted).

## IV.   ARGUMENT

### A.   Magistrate Judge Early's Order Is Inconsistent with the Plain Language of Section 2019.210.

14        In ruling that Plaintiffs need not identify their trade secrets with reasonable

15  particularity before commencing discovery so long as Plaintiffs can claim that the

16  discovery is not solely trade secret related but is also patent related, Judge Early plainly

17  felt constrained by Plaintiffs' reading of the Court's Scheduling Order, which stayed

18  "the trade secret discovery only pending compliance with Section 2019.210." Dkt. No.

19  37, at 1. Plaintiffs improperly claimed—and Magistrate Judge Early unfortunately

20  agreed—that the phrase "trade secret discovery only" in the Scheduling Order means

21  that Plaintiffs may pursue discovery without providing a Section 2019.210 disclosure so

22  long as Plaintiffs can claim that the discovery is not "only" trade secret related. In other

23  words, Plaintiffs may proceed with trade secret-related discovery—without a Section

24  2019.210 statement—as long as they can assert that their discovery is *also* related to

25  another claim.

26        The problem, as explained at the outset of this motion, is that it is *impossible*, as

27  a matter of law and logic, to comply with Section 2019.210 by pursuing discovery

28  *relating* to the trade secrets at issue without identifying the trade secrets with reasonable

1  particularity.  Section 2019.210 expressly states that "before commencing discovery

2  *relating to the trade secret*, the party alleging the misappropriation shall identify the

3  trade secret with reasonable particularity."  Cal. Civ. Proc. Code § 2019.210 (emphasis

4  added).  Yet, Magistrate Judge Early's Order renders the core of Section 2019.210—the

5  prohibition against commencement of "*discovery relating to the trade secret*" pending

6  a description of the secret—meaningless.  Plaintiffs are permitted to take any discovery

7  they wish relating to the alleged trade secrets without providing a Section 2019.210

8  statement merely by claiming that the discovery relates to another claim, like the patent

9  infringement claims, that they concede are "factually dependent on the same [trade

10  secret] misappropriation allegations."  Lerner Decl. ¶¶ 12–13 & Ex. I, at 206.

11       There can be no doubt that Judge Early reached the result he did because of

12  Plaintiffs' reading of the Scheduling Order.  Indeed, in another case, Judge Early

13  recognized that Section 2019.210 is contrary to the *exact* result he reached here:

14  "Section 2019.210 does not limit discovery 'exclusively' relating to the trade secrets.  A

15  request that relates to both trade secret and other issues still "relates to" the trade secret."

16  *M/A-COM Tech.*, 2019 WL 4284523, at *5.[1]  The result in *M/A-COM Tech.* is the right

17  result as a matter of law—it is consistent with Section 2019.210—whereas Magistrate

18  Judge Early's Order here is not.

19       In sum, Judge Early's reading of the Scheduling Order and the language of

20  Section 2019.210 are at odds.  Apple does not believe that this Court's stay of "trade

21  secret discovery only pending compliance with 2019.210" was intended to render

22  Section 2019.210's stay on discovery "relating to the trade secret[s]" meaningless.  It

23  defies common sense to suggest that the Court ordered "compliance with Section

24  2019.210" yet intended to allow Plaintiffs to avoid providing a Section 2019.210

25

26  _____

27  [1] Plaintiffs also claim that they can pursue trade secret-related discovery that is also patent-related because their patent claims do not "hinge" on their trade secret claims. Dkt. No. 54, at 2.  This argument is unavailing because Apple is not claiming that all patent discovery is stayed; only patent discovery that *also* relates to the trade secrets is stayed by the plain language of Section 2019.210.

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 38 of 300   Page ID
#:12103
Case 8:20-cv-00048-JVS-JDE   Document 57-1   Filed 06/19/20   Page 12 of 18   Page ID
#:3913

1  disclosure before taking trade secret-related discovery, which is exactly what

2  compliance with Section 2019.10 requires.  This is reason enough to reverse Magistrate

3  Judge Early's Order as contrary to law.

4        **B.      Magistrate Judge Early's Order Is Inconsistent with the Purpose of
5                Section 2019.210.**

6        The Supreme Court has explained that when reading two sources of law, a court

7  must read both "to give effect to each if [the court] can do so *while preserving their*

8  *sense and purpose*."  *Watt v. Alaska*, 451 U.S. 259, 267 (1981) (emphasis added); *see*

9  *also* A. Scalia and B. Garner, *Reading Law: The Interpretation of Legal Texts* 63 (2012)

10  ("A textually permissible interpretation that *furthers rather than obstructs the*

11  *document's purpose* should be favored." (emphasis added)).  If two sources of law "are

12  capable of co-existence, it is the duty of the courts . . . to regard each as effective."

13  *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976) (quoting *Morton v.*

14  *Mancari*, 417 U.S. 535, 551(1974)).

15        When reading the Scheduling Order in the context of Section 2019.210, Judge

16  Early should have interpreted both provisions "in a way that renders them compatible,

17  not contradictory."  Scalia & Garner, *supra*, at 180.  Specifically, Judge Early should

18  have read the Scheduling Order in a manner consistent with Section 2019.210, which is

19  to say he should have concluded that the stay applies to trade secret-*related* discovery

20  only.  In other words, if there were discovery that was not in *any way* related to the trade

21  secrets, that discovery could proceed, but trade secret-related discovery is stayed.

22  Instead, Judge Early found that a stay on trade secret-related discovery would render the

23  word "only" in the Scheduling Order meaningless, and that "[t]he sole interpretation that

24  does not render the word 'only' superfluous in the Scheduling Order is an interpretation

25  that 'only' limits the type of discovery stayed—trade secret discovery."  Dkt. No. 54, at

26  8 (quoting Scalia and Garner, *supra*, at 174).  This defies the principle that "like all other

27  canons, [the Surplusage Canon] must be applied with judgment and discretion, and *with*

28  *careful regard to context*."  Scalia & Garner, *supra*, at 176 (emphasis added).  As a

Case 8:20-cv-00048-JVS-JDE   Document 57-1   Filed 06/19/20   Page 13 of 18   Page ID #:3914

result, Judge Early's reading of the Scheduling Order renders the entire discovery stay meaningless and frustrates the purposes of Section 2019.210. This is contrary to law.

Section 2019.210's requirement that plaintiffs identify their trade secrets "before commencing discovery *relating to* the trade secret" is based on critical lessons and policies. Cal. Code Civ. Proc. § 2019.210 (emphasis added). Recognizing that trade secret claims are "especially prone to discovery abuse," the California legislature enacted Section 2019.210 "to curb unsupported trade secret lawsuits routinely commenced to harass competitors and former employees." *Comput. Econs., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999). "Experience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify what ever [sic] happens to be there as having been trade secrets stolen from plaintiff." *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014); *see also Swarmify, Inc. v. Cloudflare, Inc.*, 2018 WL 2445515, at *3 (N.D. Cal. May 31, 2018). Importantly, in every case Plaintiffs cited involving both trade secret and patent claims in which the court permitted patent discovery to commence, the plaintiff had already provided a Section 2019.210 statement or the Court had ordered production of the statement by a date certain.

By requiring a plaintiff to identify its trade secrets with particularity before commencing trade secret-related discovery, Section 2019.210 serves four distinct purposes: Section 2019.210 (1) "promotes well-investigated claims and dissuades the filing of meritless trade secret complaints"; (2) "prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets"; (3) "assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope"; and (4) "enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation." *Comput. Econs.*, 50 F. Supp. at 985; *see also, e.g.*, *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D. Cal. Sept. 3, 2019) (quoting *Lilith Games (Shanghai)*

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 40 of 300   Page ID
#:12105
Case 8:20-cv-00048-JVS-JDE   Document 57-1   Filed 06/19/20   Page 14 of 18   Page ID
#:3915

1   *Co. v. uCool, Inc.*, 2015 WL 4149066, at *4 (N.D. Cal. July 9, 2015)) (stating that

2   Section 2019.210's "reasonable particularity" requirement should be understood in light

3   of this four-pronged purpose of the statute).

4         Plaintiffs' strained interpretation and Judge Early's erroneous application of the

5   Scheduling Order to stay only discovery that is solely related to Plaintiffs' trade secret

6   claim frustrates each of these four purposes and effectively renders the ordered discovery

7   stay meaningless.  Such a result is unreasonable, because it interprets the Scheduling

8   Order to require compliance with a statute in a manner that defeats every purpose behind

9   that statute.

10         First, by opening the door for Plaintiffs to gain access to Apple's confidential

11   information before serving a Section 2019.210-compliant description of their alleged

12   trade secrets, Magistrate Judge Early's Order permits Plaintiffs to build their trade secret

13   case on *Apple's* information, instead of requiring Plaintiffs to demonstrate that their

14   trade secret claim was "well-investigated" and not "meritless" at the outset.  *See*

15   *Jobscience, Inc.*, 2014 WL 852477, at *5 ("A true trade secret plaintiff ought to be able

16   to identify, up front, and with specificity the particulars of the trade secrets without any

17   discovery.").

18         Second, Magistrate Judge Early's Order enables Plaintiffs to use patent-related

19   discovery as a means to obtain *Apple's* confidential information before identifying their

20   own alleged trade secrets, instead of preventing such discovery abuse.  This is not the

21   first attempt by Plaintiffs to abuse the discovery process as an end-run around Section

22   2019.210.  Plaintiffs started seeking Apple's confidential information even before filing

23   this action by serving on Apple a third-party subpoena in a related action, *Masimo Corp.*

24   *et al. v. True Wearables Inc. et al.*, No. 8:18-cv-02001-JVS-JDE, one day before filing

25   this lawsuit.  Dkt. No. 43-1, at 25; Lerner Decl. Ex. A, at 7.  The subpoena was directed

26   to the same subject matter as Plaintiffs' trade secret claim in this action (Lerner Decl.

27   Ex. A, at 11–20), and Plaintiffs therefore were plainly aware that it was improper,

28   because it sought Apple's confidential information prior to a Section 2019.210

APPLE'S MPA ISO MOT. FOR REVIEW OF AND
OBJECTIONS TO MAGISTRATE JUDGE'S ORDER    10    CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 4**
**-35-**

1    disclosure when Apple was about to become a defendant in a related trade secret lawsuit.

2    Plaintiffs proceeded anyway.  Plaintiffs then demanded Apple's unpublished patent

3    applications.  *Id.* Exs. C & G.  Plaintiffs even threatened a preliminary injunction, which

4    they never pursued.  *Id.* ¶ 9 & Ex. G, at 199.  The RFPs at issue in the PO Motion are

5    merely another attempt by Plaintiffs to circumvent Section 2019.210.  Plaintiffs have

6    already exhibited their intent to delay describing their alleged trade secrets as long as

7    possible by refusing to even provide a date certain by which they will serve a Section

8    2019.210 disclosure, and Magistrate Judge Early's Order gives Plaintiffs the green light

9    to continue their delay.  Indeed, if Magistrate Judge Early's Order is not reversed,

10   Plaintiffs will have no incentive whatsoever to comply with Section 2019.210 until after

11   they obtain all of Apple's confidential information through patent-related discovery for

12   the very same products at issue in both the patent and trade secret claims.  Any Section

13   2019.210 trade secret description made at that point would be a token gesture—the

14   purposes of Section 2019.210 would already have been frustrated.

15        Third and Fourth, by permitting any discovery that relates to Plaintiffs' patent

16   claims and also relates to Plaintiffs' trade secret claim, Magistrate Judge Early's Order

17   frustrates the Court's ability to frame the appropriate scope of trade secret discovery in

18   this case and Apple's ability to defend itself against Plaintiffs' trade secret claim.

19   Without knowing the extent of Plaintiffs' alleged trade secrets at the outset, the Court

20   cannot effectively determine if Plaintiffs' discovery requests fall outside the appropriate

21   scope of trade secret discovery.  Apple likewise cannot adequately prepare its defense

22   to the trade secret claim without knowing what alleged trade secrets are at issue.

23        Plaintiffs' own arguments in support of their erroneous interpretation of the

24   Scheduling Order illustrate clearly the present ambiguity in the scope of discovery in

25   this case and the prejudicial effect of that ambiguity on Apple's ability to defend against

26   the trade secret claim.  Plaintiffs have repeatedly insisted that the Scheduling Order

27   stayed only discovery "solely" related to their trade secret claim.  But without an

28   adequate Section 2019.210 disclosure, Apple has no way to determine which of

1  Plaintiffs' discovery requests relate "solely" to their trade secret claims and are untimely.

2        Likewise, Magistrate Judge Early's Order adopting Plaintiffs' interpretation of

3  the Scheduling Order demonstrates the difficulty in framing the appropriate scope of

4  discovery.  Magistrate Judge Early's Order states that "RFP Nos. 8 and 12-14 do not

5  appear to seek solely information related to Plaintiffs' trade secret claim," and accepts

6  Plaintiffs' argument that "these requests relate to their patent infringement claims."  Dkt.

7  No. 54, at 8.   But these RFPs use identical language to the broad categories of

8  information Plaintiffs allege in the First Amended Complaint ("FAC") (*see* Lerner Decl.

9  Ex. F, ¶ 211) as comprising their trade secrets.  *Compare, e.g.*, RFP No. 12 ("All

10 technical documents for the Accused Products, including, without limitation, product

11 specifications, diagrams, schematics, memos, conceptual or technical drawings, design

12 requirements documents, design capture documents, technical requirements documents,

13 product briefs, product plans, product requirements, document trees, assembly design

14 documents, design review documents, system design documents, fabricating drawings,

15 manufacturing documents, and technical meeting minutes."), *with* FAC ¶ 211

16 ("Plaintiffs' technical information includes product plans, engineering plans, product

17 briefs, technical drawings, technical specifications, technical data, product designs,

18 system designs, design captures, assembly design requirements, risk analysis, test

19 procedures and results, test data, design review documents, software requirement

20 specifications, technical know-how, manufacturing techniques and procedures,

21 installation techniques and procedures, and invention disclosures.").

22        Because Plaintiffs' alleged trades secrets relate to the very same subject matter as

23 their asserted patents—"non-invasive monitoring of physiological parameters and

24 products to perform such monitoring" (FAC ¶ 211)—there is no meaningful way under

25 Magistrate Judge Early's Order for the Court or Apple to separate trade secret discovery

26 from patent discovery unless the discovery is expressly limited to the asserted patents

27 themselves (e.g., RFP Nos. 1–4).  Thus, Magistrate Judge Early's Order leads to one of

28 two unreasonable conclusions—either the discovery stay in the Scheduling Order is

1  meaningless because almost no discovery here is "solely" related to the trade secret

2  claim, or Magistrate Judge Early's Order frustrates the purposes of Section 2019.210 to

3  permit the Court to ascertain the scope of trade secret discovery and Apple to prepare its

4  defenses.  Either result renders Magistrate Judge Early's Order contrary to law.

5          Apple respectfully submits that the only plausible reading of the Scheduling Order

6  that preserves the "sense and purpose" (*Watt*, 451 U.S. at 267) of Section 2019.210 is

7  that all trade secret-related discovery is stayed pending Plaintiffs' compliance with

8  Section 2019.210 even if that discovery overlaps with Plaintiffs' patent claims.

9          To be clear, Apple is not seeking a stay of all discovery, and in fact would prefer

10  that *all* discovery resume as soon as possible.  That is why Apple has been requesting a

11  Section 2019.210 statement for months.  If Plaintiffs have a legitimate trade secret claim,

12  they "ought to be able to identify, up front, and with specificity the particulars of the

13  trade secrets without any discovery." *Jobscience*, 2014 WL 852477, at *5.  If they do

14  not, they should not be allowed to make one out of whole cloth.  This Court should put

15  a stop to Plaintiffs' dilatory tactics and promptly require a Section 2019.210 disclosure

16  from Plaintiffs so that both the trade secret and patent claims in this case can move

17  forward as soon as possible.

18                          **V.    CONCLUSION**

19          Apple respectfully requests that the Court reverse Judge Early's Order (Dkt. No.

20  54), grant Apple's PO Motion (Dkt. No. 43), and order Plaintiffs to promptly comply

21  with Section 2019.210.

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1   Dated:  June 19, 2020                    Respectfully submitted,

2                                            JOSHUA H. LERNER
                                             H. MARK LYON
3                                            BRIAN M. BUROKER
                                             BRIAN A. ROSENTHAL
4                                            ILISSA SAMPLIN
                                             ANGELIQUE KAOUNIS
5                                            GIBSON, DUNN & CRUTCHER LLP

6

7                                            By:  */s/ Joshua H. Lerner*
                                                  Joshua H. Lerner
8

9                                            *Attorneys for Defendant Apple Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S MPA ISO MOT. FOR REVIEW OF AND
OBJECTIONS TO MAGISTRATE JUDGE'S ORDER          14          CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 4
-39-**

# EXHIBIT 5

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 46 of 300   Page ID
#:12111
Case 8:20-cv-00048-JVS-JDE   Document 57-17   Filed 06/19/20   Page 1 of 2   Page ID
#:4167

1

2

3

4

5

6

7

8

9

10

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

11 | MASIMO CORPORATION,
12 | a Delaware corporation; and
CERCACOR LABORATORIES, INC.,
a Delaware corporation,

CASE NO. 8:20-cv-00048-JVS (JDEx)

13 |                    Plaintiffs,

**[PROPOSED] ORDER GRANTING
APPLE INC.'S MOTION FOR
REVIEW OF AND OBJECTIONS TO
MAGISTRATE JUDGE EARLY'S
JUNE 15, 2020 ORDER DENYING
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER BARRING
TRADE SECRET-RELATED
DISCOVERY ABSENT TRADE
SECRET IDENTIFICATION**

14 |         v.

15 | APPLE INC.,
16 | a California corporation,

17 |                    Defendant.

18

19

20

21

**Hearing**

Date:          Date: July 20, 2020
Time:          1:30 PM
Courtroom:     10C
Judge:         Hon. James V. Selna

22

23

24

25

26

27

28

---

[PROPOSED] ORDER GRANTING APPLE INC.'S MOTION FOR REVIEW OF AND OBJECTIONS TO
MAGISTRATE JUDGE EARLY'S JUNE 15, 2020 ORDER
CASE NO. 8:20-CV-00048-JVS (JDEX)

**Exhibit 5
-40-**

Case 8:20-cv-00048-JVS-JDE   Document 57-17   Filed 06/19/20   Page 2 of 2   Page ID
#:4168

1     This matter is before the Court pursuant to Defendant Apple Inc.'s Motion for

2  Review of and Objections to Magistrate Judge Early's June 15, 2020 Order Denying

3  Defendant's Motion for Protective Order Barring Trade Secret-Related Discovery

4  Absent Trade Secret Identification ("Motion for Review") pursuant to Federal Rule of

5  Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A).

6     Having considered the documents filed in support of and in opposition to the

7  motion, the argument of counsel, the pleadings on file in this action, and all other

8  matters properly before the Court, being fully advised on the proceedings, and for good

9  cause appearing:

10     IT IS HEREBY ORDERED that Defendant Apple Inc.'s Motion for Review is

11  GRANTED.  Magistrate Judge Early's June 15, 2020 Order is REVERSED,

12  Defendant's Motion for Protective Order Barring Trade Secret-Related Discovery

13  Absent Trade Secret Identification (Dkt. No. 43) is GRANTED, and Plaintiffs are

14  ordered to provide to Apple a Section 2019.210-compliant identification of Plaintiffs'

15  alleged secrets within ___ days of this Order, and, in any event, before taking

16  discovery relating to Plaintiffs' alleged trade secrets (even if the discovery also relates

17  to Plaintiffs' other claims).

18

19     **IT IS SO ORDERED.**

20

21   Dated:  _____

22                                                    _____
                                                     The Honorable James V. Selna
22                                                    United States District Judge

23

24

25

26

27

28

---

**Exhibit 5
-41-**

# EXHIBIT 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-48 JVS (JDEx)                           Date   July 14, 2020

Title   **Masimo Corporation et al v. Apple Inc.**

Present: The
Honorable          **James V. Selna, U.S. District Court Judge**

|  Lisa Bredahl  |  Not Present  |
|---|---|
|  Deputy Clerk  |  Court Reporter  |
|  Attorneys Present for Plaintiffs:  |  Attorneys Present for Defendants:  |
|  Not Present  |  Not Present  |

**Proceedings:**     **[IN CHAMBERS] Order Regarding Motion for Review of and
Objections to Magistrate Judge's Order**

Defendant Apple Inc. ("Apple") moved to reverse Magistrate Judge Early's June
15, 2020 Order denying its motion for a protective order.  Mot., Dkt. No. 57.  Plaintiffs
Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor")
(together, "Plaintiffs") opposed.  Opp'n, Dkt. No. 64.  Apple replied.  Reply, Dkt. No.
71.

For the following reasons, the Court **DENIES** the motion.

## I. BACKGROUND

Plaintiffs filed their Complaint against Apple on January 9, 2020.  Dkt. No. 1.  On
March 25, 2020, Plaintiffs filed the operative First Amended Complaint ("FAC"),
alleging patent infringement, trade secret misappropriation under the California Uniform
Trade Secrets Act ("CUTSA") Cal. Civ. Code §§ 3426 et seq., correction of inventorship,
and declaratory relief.  See generally, FAC, Dkt. No. 28.

On March 16, 2020, Plaintiffs served their First Set of Requests for Production
("RFPs"), which included 25 RFPs.  Declaration of Stephen Larson ("Larson Decl."),
Dkt. No. 65, Ex. 1.

On April 14, 2020, the parties filed a Joint Rule 26(f) Report.  Dkt. No. 33.

On April 17, 2020, this Court issued a Scheduling Order "adopt[ing] the patent
specific dates" provided by the parties in their Rule 26(f) Joint Report and "*stay[ing] the*

**Exhibit 6
-42-**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-48 JVS (JDEx)                    Date   July 14, 2020

Title      **Masimo Corporation et al v. Apple Inc.**

*trade secret discovery only* pending compliance with [California Code of Civil Procedure Section] 2019.210."  Dkt. No. 37 (emphasis added).

On April 30, 2020, Apple filed a motion for a protective order.  Dkt. No. 43. Apple sought a protective order directing that it need not respond to RFP Nos. 5-25 until Plaintiffs "describe their trade secrets with reasonable particularity consistent with California Code of Civil Procedure Section 2019.210" ("Section 2019.210").  Dkt. No. 43-1 ("Jt. Stip.") at 1.  A protective order is necessary, Apple argued, because RFP Nos. 5-25 seek information that is "identical to the information Plaintiffs allege as their trade secrets," and Section 2019.210 "unequivocally bars discovery relating to the alleged trade secrets until Plaintiffs describe their alleged secrets."  Dkt. No. 46 at 1 (emphasis omitted). Without a protective order, Apple contended that Plaintiffs would be permitted "to parse through Apple's confidential information—and claim it as their own trade secrets—before Plaintiffs describe a single one of their trade secrets," thereby "erod[ing] the policies promoted by Section 2019.210."  Id.

Plaintiffs argued that RFP Nos. 5-25 seek patent discovery, which is not stayed under the Scheduling Order.  See Jt. Stip. at 4, 36; see also Jt. Stip. at 34.  Plaintiffs also argued that California courts interpret Section 2019.210 as barring "discovery on other claims only if the claim 'hinges upon the factual allegations that [defendant] misappropriated [plaintiff's] trade secrets.'"  Jt. Stip. at 30-31 (quoting Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal. App. 4th 826, 834 (2005)) (emphasis omitted). Therefore, Plaintiffs argued, Apple "cannot refuse to produce responsive documents by asserting some of the information may also be relevant to the trade secret claim."  Jt. Stip. at 37 (emphasis omitted).

On June 15, 2020, Magistrate Judge Early denied Apple's motion for a protective order.  Order, Dkt. No. 54.  Now, Apple requests that this Court reverse Judge Early's Order.  See generally, Mot.  Apple further requests that the Court order Plaintiffs to promptly describe their purported trade secrets in compliance with Section 2019.210. See id.

**II.  LEGAL STANDARD**

**Exhibit 6
-43-**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   SACV 20-48 JVS (JDEx)                    Date   July 14, 2020

Title   **Masimo Corporation et al v. Apple Inc.**

    A magistrate may issue non-dispositive rulings on pre-trial discovery matters.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L.R. 72-2.1.  On a motion to review, a district court may set aside or modify these rulings only when the rulings are "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).  The clearly erroneous standard applies to a magistrate's factual findings, and the contrary to law standard applies to the magistrate's legal conclusions.  See Crispin v. Christian Audigier, Inc., 717 F. Supp. 2d 965, 970–71 (C.D. Cal. 2010).  The clearly erroneous standard is "significantly deferential, requiring a definite and firm conviction that a mistake has been committed." Id. at 971 (internal quotations and citations omitted).  "By contrast, [t]he contrary to law standard . . . permits independent review of purely legal determinations by the magistrate judge."  Id. (internal quotations and citations omitted).  Courts have interpreted this standard "to provide for de novo review by the district court on issues of law." Med. Imaging Centers of Am., Inc. v. Lichtenstein, 917 F. Supp. 717, 719 (S.D. Cal. 1996).  "A decision is contrary to law if it applies an incorrect legal standard or fails to consider an element of the applicable standard."  Forouhar v. Asa, No. C 10–3623 SBA, 2011 WL 4080862, at *1 (N.D. Cal. Sept. 13, 2011) (internal quotation marks and citations omitted).

### III. DISCUSSION

    Section 2019.210 requires that "[i]n any action alleging the misappropriation of a trade secret under the [California] Uniform Trade Secrets Act . . . , before commencing discovery *relating* to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity . . . ." Cal. Civ. Proc. Code § 2019.210 (emphasis added).

    In his Order, Magistrate Judge Early reasoned that this Court stayed discovery pertaining the Plaintiffs' trade secret claims, but did not stay discovery regarding Plaintiffs' patent claims.  Order at 7-8.  Judge Early found that RFP Nos. 5-25 did not seek information that was identical to the information Plaintiffs allege as their trade secrets; at most, four of the RFPs seek some of the same categories of information relevant to the trade secrets.  Id. at 8.  Accordingly, Judge Early concluded that Apple had not met its burden in seeking a protective order to stay RFP Nos. 5-25, and denied Apple's motion for a protective order.  Id. at 9.

    Now, Apple contends that Judge Early's Order is inconsistent with the text and

**Exhibit 6**
**-44-**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-48 JVS (JDEx)                     Date   July 14, 2020

Title   **Masimo Corporation et al v. Apple Inc.**

purpose of Section 2019.210.  Mot. at 6-13.  According to Apple, the Order allows Plaintiffs "to take any discovery they wish relating to the alleged trade secrets without providing a Section 2019.210 statement merely by claiming that the discovery relates to another claim, like the patent infringement claims . . . ."  Id. at 7.  Apple claims that Judge Early should have read the Scheduling Order to state that the stay applies to trade secret-*related* discovery, so as to not conflict with Section 2019.210.  Id. at 8.  And, Apples compares the wording of the RFPs at issue with the wording of the categories of information Plaintiffs allege comprise their trade secrets in their FAC to argue that "Plaintiffs' alleged trades secrets relate to the very same subject matter as their asserted patents."  Id. at 12.

The Court finds that Judge Early's Order was not contrary to law and correctly interpreted the Scheduling Order, which stayed only trade secret discovery pending Plaintiffs' compliance with Section 2019.210.  It did not stay discovery related to Plaintiffs' patent claims.   Apple asserted in the Rule 26(f) Report that "[a]ny discovery-related dates that [it] proposes . . . are subject to Plaintiffs providing an adequate identification of their alleged trade secrets in compliance with Section 2019.210 insofar as such an identification is a prerequisite to such discovery."  Dkt. No. 33 at 26, n.6.  The Court reviewed the Joint Report and rejected this argument that patent discovery was contingent on Plaintiffs' compliance with Section 2019.210.  Plaintiffs' patent claims are separate from the trade secret claims.  See, e.g., Space Data Corp. v. X, 2017 WL 3007078, *4 (N.D. Cal. July 14, 2017).  And Judge Early's finding that at most, "only four" of the 21 RFPs at issue arguably seek "some of the same categories of information" relevant to Plaintiffs' trade secrets was well-supported by the content of the RFPs.  Accordingly, the Court declines to reverse Judge Early's Order.

## IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion.  The Court finds that oral argument would not be helpful in this matter and **vacates** the July 20, 2020 hearing.  Fed. R. Civ. P. 78; L.R. 7-15.

**IT IS SO ORDERED.**

**Exhibit 6**
**-45-**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-48 JVS (JDEx)                                    Date   July 14, 2020

Title   **Masimo Corporation et al v. Apple Inc.**

:        0

Initials of Preparer        lmb

# EXHIBIT 7

**Page 1**

```
 1
 2
 3
 4              UNITED STATES DISTRICT COURT
 5             CENTRAL DISTRICT OF CALIFORNIA
 6                  SOUTHERN DIVISION
 7                      - - -
 8     THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING
 9
10     MASIMO CORPORATION, et al.,  )
                    Plaintiffs,  )
11            vs.                 )
                                  ) SACV-20-00048-JVS
12     APPLE, INC.,               )
                    Defendant.    )
       -------------------------------)
13
14
15         REPORTER'S TRANSCRIPT OF PROCEEDINGS
16              Santa Ana, California
17               July 10, 2020
18
19
20          SHARON A. SEFFENS, RPR
             United States Courthouse
             411 West 4th Street, Suite 1-1053
21           Santa Ana, CA  92701
             (714) 543-0870
22
23
24
25                                        11:46
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Page 2**

```
 1     APPEARANCES OF COUNSEL:
 2     For the Plaintiffs:
 3     JOSEPH R. RE
       STEPHEN JENSEN
 4     KNOBBE MARTENS
       2040 Main Street, 14th Floor
 5     Irvine, CA  92614
       (949) 760-0404
 6
       For the Defendant:
 7
       H. MARK LYON
 8     JOSHUA LERNER
       BRIAN ROSENTHAL
 9     GIBSON DUNN & CRUTCHER, LLP
       1881 Page Mill Road
10     Palo Alto, CA  93403-1211
       (650) 849-5307
11
       JOSHUA LERNER
12     GIBSON DUNN & CRUTCHER, LLP
       555 Mission Street, Suite 3000
13     San Francisco, CA  94105-0921
       (415) 393-8254
14
       BRIAN ROSENTHAL
15     GIBSON DUNN & CRUTCHER, LLP
       200 Park Avenue
16     New York, NY  10166-0193
       (212) 351-2339
17
18
19
20
21
22
23
24
25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Page 3**

```
        1    SANTA ANA, CALIFORNIA; FRIDAY, JULY 10, 2020; 2:58 P.M.
02:58   2             (Per telephonic conference)
02:58   3             THE CLERK:   Calling Item No. 1, SACV-20-00048-JVS,
02:58   4    Masimo Corporation versus Apple, Inc.
02:58   5             Appearances on behalf of the plaintiff, please.
02:58   6             MR. RE:   Thank you.  Good afternoon, Your Honor,
02:58   7    this is Joseph Re of Knobbe Martens on behalf of Masimo
02:58   8    Corporation, and with me is my partner Stephen Jensen.
02:58   9             THE CLERK:   And on behalf of the defendants,
02:58  10    please.
02:58  11             MR. LYON:   Good afternoon, Your Honor.  It's Mark
02:58  12    Lyon on behalf of Apple, and with me is Joshua Lerner, and
02:58  13    Brian Rosenthal.
02:58  14             THE COURT:   Good afternoon.
02:58  15             Thank you for your joint report that you filed
02:58  16    last week.  Let me share my thoughts with you, and then I'd
02:59  17    be happy to hear you.
02:59  18             I believe it's fundamentally unfair to the parties
02:59  19    and inefficient to require reduction of the number of claims
02:59  20    for prior art references prior to the full disclosure of the
02:59  21    infringement contentions and the invalidity contentions.
02:59  22    Let me give you an example of the poker world.  Suppose
02:59  23    Masimo has a claim that it would evaluate as a for basis,
02:59  24    but when Apple makes its invalidity disclosures, it comes up
02:59  25    with prior art that would amount to Royal Fresh.  It's
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Page 4**

```
02:59   1    better for Masimo to designate a claim in light of prior art
02:59   2    demonstrating it wasn't viable.
03:00   3             So my thought is that the initial round of
03:00   4    disclosures ought to come after the parties have made their
03:00   5    invalidity disclosures and their prior art disclosures.  The
03:00   6    date for invalidity contentions is 9/7.  What I would
03:00   7    propose is that within two weeks of that date, the parties
03:00   8    present me with a proposal for an initial reduction of
03:00   9    claims and prior art references that would contemplate
03:00  10    actual disclosure of those reductions within 30 days of the
03:00  11    Court adopting a specific proposal.  I would then
03:00  12    contemplate that there would be a further reduction after
03:00  13    the Markman hearing, and I would leave to your discretion
03:00  14    the time for final disclosure as to what we go to trial on.
03:01  15             I think that may require some adjustments to
03:01  16    events leading to the Markman hearing.  If the invalidity
03:01  17    contentions come in on 9/7, the parties' exchange of
03:01  18    proposed claim terms is 9/21.  I don't think that gives you
03:01  19    enough time to reflect on both sides' disclosures, come up
03:01  20    with your proposal, and then for narrowing selections of
03:01  21    claims and prior art references.
03:01  22             So I think that the dates between the exchange of
03:01  23    claim terms and the Markman hearing need to be adjusted to
03:01  24    accommodate the disclosures pursuant to whatever proposal I
03:01  25    adopt for the disclosures following the invalidity and the
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 7
-47-

**5**

```
03:01  1    infringement contentions and the Markman hearing.  I'm not
03:02  2    adverse to slipping the Markman hearing a month or six weeks
03:02  3    if that makes sense.  That's in February, and we don't have
03:02  4    a trial date in 2021.
03:02  5         So those are my general thoughts.  I'll be happy
03:02  6    to hear you.
03:02  7         Let's begin with you, Mr. Re.
03:02  8         MR. RE:   Thank you, Your Honor.
03:02  9         I think we're in complete agreement with
03:02  10   everything you said.  I do think there needs to be an
03:02  11   exchange of information.  I do want to alert the Court that
03:02  12   we are planning on amending our pleading that's set forth in
03:02  13   the Court's order regarding the Motion to Dismiss.  In fact,
03:02  14   we will be substituting out some patents, so there needs to
03:02  15   be some more time for the parties to fully evaluate the
03:02  16   claims.
03:02  17        And, yes, we have not yet received the other
03:02  18   party's technical documents which were due back in June, and
03:02  19   that we of course need before we do our contentions.  But we
03:02  20   agree with everything you said, and I think the parties will
03:03  21   work it out and will come up with a proposal for this by
03:03  22   September 21 as you indicated.
03:03  23        THE COURT:   Mr. Lyon.
03:03  24        MR. LYON:   Thank you, Your Honor.
03:03  25        Just a couple points.  Let me just raise a court
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**6**

```
03:03  1    concern, and you may have already considered this, but let
03:03  2    me at least just throw it out there so that we can have a
03:03  3    discussion if it's helpful.  The one thing I would say with
03:03  4    not putting in some kind of target limits at this point is
03:03  5    that you end up with potentially hundreds of claims that
03:03  6    both parties are going to be charting, that they're going to
03:03  7    be discussing and potentially arguing over as far as what
03:03  8    claim terms might be involved.
03:03  9         That is not a trivial aspect.  I mean, that's
03:03  10   something where some of these -- I'm sure you've seen them.
03:03  11   Some of these claim charts can wind up being hundreds or
03:03  12   thousands of pages long, which is a very significant effort
03:03  13   to create, even if it is copying and pasting some of the
03:03  14   information because these claims are so related, which still
03:03  15   winds up that somebody has to sit down and analyze each
03:04  16   individual claim to decide whether or not you can simply
03:04  17   copy a paragraph from a different claim or not.  You have to
03:04  18   do that, and then that has to go through whatever levels of
03:04  19   review with the client and with the firm to make sure that
03:04  20   that's okay.
03:04  21        Then to the extent that there's any dispute about
03:04  22   that, instead of having a single claim that the Court is
03:04  23   worrying about, it may end up being 15 or 16 claims, which
03:04  24   the Court would then have to do a similar review to make
03:04  25   sure it all makes sense, and the same argument applies
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**7**

```
03:04  1    equally to each of those 15 or 16 claims.
03:04  2         So our view is that if we set some
03:04  3    number, and it could be --  we don't think the numbers we
03:04  4    picked are terrible, but if there's a higher number, we
03:04  5    could talk about that.  But pick some target numbers now so
03:04  6    that we can get a bit more reign in on the case before we
03:04  7    get into charting everything with the idea that if there's
03:04  8    reasons to change these things down the road, that's
03:04  9    something that can always be done in good cause.
03:05  10        But it really needs to be done at the stage of
03:05  11   preparing it for Markman, and then have that kind of a
03:05  12   target, sort of like page limits in the brief in a lot of
03:05  13   ways.  If you put these claims and limits on people, they'll
03:05  14   make some hard choices that they otherwise wouldn't make or
03:05  15   -- and that they probably should make, but because of the
03:05  16   fact that they don't have to, everything just gets thrown in
03:05  17   with the kitchen sink.
03:05  18        That's why we were suggesting trying to do
03:05  19   something now.  Then if we need to have some discussions
03:05  20   about whether, you know, it's 50, 40, claims, whatever it is
03:05  21   we pick -- maybe the plaintiffs need a little bit more than
03:05  22   that, maybe another ten or so -- we could have those kinds
03:05  23   of discussions and maybe stipulate to that at the beginning.
03:05  24        This is the first we've heard that they're
03:05  25   planning on changing the patents again, so that's a little
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**8**

```
03:05  1    troubling because we are already very far into the case, and
03:06  2    we're already trying to start gearing up for discovery on
03:06  3    the patents that we have.  But that may also throw a monkey
03:06  4    wrench into not just this but to more parts of the case
03:06  5    schedule if it changes substantially.
03:06  6         THE COURT:   I appreciate the fact that at some
03:06  7    point the parties will have to make hard choices.  I believe
03:06  8    they ought to be able to make fair hard choices.  But if you
03:06  9    want to have further discussions among yourselves and come
03:06  10   to a consensus as to how to do some limits at this time,
03:06  11   that's fine, but I'm not going to impose it.
03:06  12        What I'm going to order is that no later than 9/21
03:06  13   the parties will submit a joint proposal for the initial
03:06  14   round of productions and the number of infringement
03:06  15   contentions and prior art references, and a final proposal
03:06  16   as to what we ought to do following the Markman hearing, and
03:06  17   then what we ought to do as a final third stage in terms of
03:06  18   what we're actually going to go to trial on.
03:06  19        MR. RE:   T?hank you, Your Honor.
03:06  20        May I ask one more question about this, though,
03:07  21   Your Honor?  If we have currently set up infringement
03:07  22   contentions due on July 27, which then triggers our
03:07  23   invalidity contentions on September 7 to trigger off of
03:07  24   those -- if the patents are going to be changing because of
03:07  25   the new pleading, I guess I would want to know when is that
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 7
-48-

9

```
03:07  1    going to happen, and are those target changes going to be
03:07  2    reflected in the infringement contentions we are going to
03:07  3    see in July, or is that going to be a completely separate
03:07  4    ball of wax that we have to deal with?
03:07  5            THE COURT:    Well, if Masimo changes the line of
03:07  6    both patents, I would reevaluate the dates for infringement
03:07  7    and invalidity contentions in light of that on a fairly
03:07  8    short ex-parte basis.
03:07  9            Let me circle back to one thing Mr. Re said.  I
03:07  10   don't think that Masimo should be required to make its
03:07  11   infringement contentions until you produce the core
03:08  12   technical information.  I understand that there is presently
03:08  13   in place a protective order to permit that, but to the
03:08  14   extent that production is made, these dates are just going
03:08  15   to drift out there and out there and out there.  And I would
03:08  16   be likely to entertain a motion made to me, not the
03:08  17   magistrate judge, with regard to patent production on the
03:08  18   core confidential information.
03:08  19           MR. LYON:    Your Honor, on that point -- this is
03:08  20   Mark Lyon again, Your Honor.  On that point, we did produce
03:08  21   nonconfidential technical documentation as part of the
03:08  22   schedule, and we're waiting on the protective order which
03:08  23   now is in place.  But as you may know, we filed an objection
03:08  24   to certain orders of Magistrate Early on the staging of
03:08  25   that, which we do hope to have -- because the issue, as you
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10

```
03:08  1    may know, is that there needs to be a 2019 trade secret
03:08  2    statement in place before we can proceed on the trade secret
03:09  3    discovery.
03:09  4            The whole basis for that rule is to really avoid
03:09  5    the situation where plaintiffs get ahold of all these
03:09  6    technical documents and then can hunt and peck and kind of
03:09  7    try to come up with a list of trade secrets that they
03:09  8    otherwise really don't have but that they are trying to
03:09  9    create that way.  That is the whole purpose of being able to
03:09  10   have those trade secrets in before all that technical
03:09  11   information is out.
03:09  12           If that information is provided ahead of getting
03:09  13   those trade secrets, that bell can't be unrung.  That's one
03:09  14   concern, and we actually have that motion in place.  We
03:09  15   understood from yesterday that Masimo was asking us to
03:09  16   produce that information.  The first that had come back
03:09  17   and talked to us was in an email yesterday asking for that
03:09  18   information immediately, knowing that we had these
03:09  19   objections out there.  We may need to actually file some
03:09  20   type of an ex-parte application, if necessary, to seek
03:09  21   relief on that so we can get that issue decided first, if
03:09  22   possible.
03:09  23           I don't know, Mr. Lerner, if you want to say
03:10  24   anything more on that.  Please feel free.
03:10  25           MR. LERNER:    First of all, thank you for having
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11

```
03:10  1    this hearing by telephone, Your Honor.  We know during these
03:10  2    times it's busy, and we appreciate the opportunity to be
03:10  3    heard.
03:10  4            Second, I do not believe that anybody can dispute
03:10  5    the point that once these documents are out then you have
03:10  6    the issue that is raised by every case on point, which is,
03:10  7    one can make vague trade secret allegations and then claim
03:10  8    Apple's valuable confidential information based on years of
03:10  9    hard work on this product as their own.  That simply cannot
03:10  10   be undone once these documents are produced, and it leads to
03:10  11   all kinds of issues.
03:10  12           I think the two most relevant here are that what,
03:10  13   for example, do you do with the people that are going to
03:10  14   work on the trade secret disclosure when first Your Honor
03:11  15   did order compliance with Section 2019.210 many months ago?
03:11  16   What do you do with the lawyers who have seen our
03:11  17   confidential information, but also might want to work on
03:11  18   that disclosure, which does at some point obviously need to
03:11  19   be provided?  Our view, as we briefed, is that it should
03:11  20   have been provided a long time ago.
03:11  21           The other key policy matter here, I think, is that
03:11  22   we would not be having these discussions or these problems
03:11  23   if that disclosure had been provided, because I think the
03:11  24   most basic policy guidance behind the rule is it enables the
03:11  25   Court to determine the proper scope of discovery and whether
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12

```
03:11  1    or not discovery requests fall within it.  That just can't
03:11  2    be done until they provide this document, which the parties
03:11  3    briefed before the scheduling order, which Your Honor then
03:12  4    ruled on.
03:12  5            So as Mr. Lyon says, if necessary -- in fact,
03:12  6    we're planning on it if necessary to raise it as quickly as
03:12  7    possible now, so that we don't run into this waterfall of
03:12  8    problems that will follow if there's not compliance with
03:12  9    this basic rule.
03:12  10           THE COURT:    I guess I analyze things differently.
03:12  11   If core confidential documents are relevant to the patents,
03:12  12   they should be disclosed now, notwithstanding the fact that
03:12  13   they may overlap the trade secrets case.  We need to go
03:12  14   forward with the patent case.  And if and when there is
03:12  15   adequate disclosure for trade secrets, all other materials
03:12  16   should be produced.  But to the extent the core confidential
03:12  17   technical documents are relevant to the patent case, they
03:12  18   should be disclosed now and in advance of Masimo having to
03:12  19   identify which claims it wants to proceed on.
03:13  20           MR. LERNER:    If I may just very briefly respond to
03:13  21   that, Your Honor.  I understand that Masimo has raised that
03:13  22   argument, but it does render the statute a nullity.
03:13  23   2019.210 expressly states:  "Discovery related to the trade
03:13  24   secrets" -- indeed, in cases before Judge Early before, he
03:13  25   said just because discovery relates to a non-trade secret
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 7
-49-

13

```
03:13   1   claim it doesn't mean it also doesn't relate to the trade
03:13   2   secret.  Here, there's no dispute -- there can't be any
03:13   3   dispute that discovery on the patent side relates to the
03:13   4   trade secrets.
03:13   5          So if we're going to do that, it does render the
03:13   6   statute in this instance a nullity, and we will have, I
03:13   7   think, all the problems that follow and are the very basis
03:14   8   for the rule there.  So I think that it is important to
03:14   9   consider both the express language of that statute and then
03:14  10   what's behind it.
03:14  11          The only other thing I will mention is that every
03:14  12   case that Masimo has cited on this point that involved
03:14  13   parallel claims -- every single one there was a prior trade
03:14  14   secret disclosure.  It's possible that it could have been
03:14  15   amended at some later time, but there was at the very least
03:14  16   some disclosure.
03:14  17          The only exception I can think of was one where
03:14  18   there was a date certain order, and the plaintiff would have
03:14  19   had to show good cause if they ever wanted to change it
03:14  20   later.  Because without either the disclosure or that date
03:14  21   certain and an order that it can't be changed without good
03:14  22   cause, then we have the very real situation that Masimo can
03:15  23   just look through our confidential information in a case
03:15  24   with a patent thicket and use our confidential information
03:15  25   to try and craft their purported secrets in a way that (a)
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

14

```
03:15   1   is allegedly theirs, even though it's based on our
03:15   2   confidential information, and (b) tries to weave around
03:15   3   their many patents so they don't run into the problem that
03:15   4   it's been disclosed.
03:15   5          For those reasons, I think it's in some ways of
03:15   6   critical importance here that we do it.  It's even more
03:15   7   important than I would say in a normal case where there
03:15   8   might not be quite so many patents in the space or so many
03:15   9   allegations that the secrets were allegedly disclosed in the
03:15  10   patents.
03:15  11          THE COURT:    Let's assume Masimo never asserted a
03:15  12   trade secret claim.  The confidential information which
03:15  13   involves the discovery would be subject to production
03:15  14   whether it was a trade secret or not.  That's what
03:15  15   protective orders are for.
03:16  16          MR. LERNER:    We completely agree with that, Your
03:16  17   Honor.  If there were no trade secret claims in this case,
03:16  18   this would not be a problem.  But every case where there is
03:16  19   a trade secret, given the express language of the statute,
03:16  20   has found that you can't avoid that language.  I'm not aware
03:16  21   of any finding that ignores the language on point.
03:16  22          That's why in all of the cases there was a trade
03:16  23   secret disclosure before you had a ruling that patent
03:16  24   discovery could go forward, or at least as I said, an order
03:16  25   that the trade secret disclosure be produced by a date
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

15

```
03:16   1   certain along with admonition that the list couldn't change
03:16   2   without good cause.
03:17   3          So, yes, if there were no trade secret claim, then
03:17   4   2019.210 by and large would not come into play.  There are
03:17   5   some cases holding that if it's kind of, you know, a wolf in
03:17   6   sheep's clothing and it's obvious it's coming, then the
03:17   7   Court would say you still have to do the 2019.210
03:17   8   disclosure.
03:17   9          But here we don't have that situation.  This is a
03:17  10   case where they've suggested they have a serious trade
03:17  11   secret claim.  They've never described it with any
03:17  12   specificity whatsoever, even though they allege it has been
03:17  13   disclosed in public patent filings.  One could just say
03:17  14   here's the page and line number.
03:17  15          Not withstanding all of those things, there's no
03:17  16   description in a case that's, you know, roughly seven months
03:17  17   old, and they want this confidential information.  Again,
03:18  18   once that's done, we just cannot undo it, and we'll have I
03:18  19   think unfortunately a lot of unnecessary disputes both about
03:18  20   the scope of discovery, but also what to do about the fact
03:18  21   that you then have lawyers who have seen our secrets
03:18  22   drafting what their alleged secrets are.
03:18  23          THE COURT:   Mr. Re.
03:18  24          MR. RE:   Well, Your Honor, this is at least the
03:18  25   second or third time they've made this argument.  You are
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

16

```
03:18   1   correct.  Our patent case is independent of the trade secret
03:18   2   case.  The case law that we already cited and briefed to
03:18   3   Judge Early on these other motions were breach of contract
03:18   4   cases that were factually dependent on the trade secret
03:18   5   claims.  Our case is not dependent on our trade secret case.
03:18   6   And currently the trade secret case has been dismissed on
03:18   7   their Motion to Dismiss.  It's not even pending before the
03:18   8   Court, and obviously the patent case gets to go forward.
03:18   9          I've never seen such strenuous objections to
03:19  10   producing just the core technical documents in a case.  They
03:19  11   are fighting tooth and nail, and they will keep fighting and
03:19  12   fighting no matter what.  They're going to file more motions
03:19  13   I understand today to prevent the disclosures that were due
03:19  14   back in June.  I think the time has come we move forward now
03:19  15   as the Court has indicated.
03:19  16          THE COURT:    Are you going to replead your trade
03:19  17   secret claim?
03:19  18          MR. RE:    Yes, we are.  We plan on complying with
03:19  19   the 30-day leave to amend date at the end of the month.
03:19  20          THE COURT:    Okay.  Well, I think you have my
03:19  21   general views.  Let's see what motion practice that results
03:19  22   in.
03:19  23          Anything else we should take up today?
03:19  24          MR. RE:   No.  Thank you, Your Honor.
03:20  25          MR. LYON:   Thank you, Your Honor.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 7
-50-



17

```
03:20  1        MR. LERNER:    Thank you very much, Your Honor.
03:20  2        THE COURT:    Okay.  Thank you very much.
03:20  3        (Whereupon, the proceedings were concluded.)
03:20  4                        *   *   *
       5
       6
       7
       8
       9
      10
      11
      12
      13
      14
      15
      16
      17
      18
      19
      20
      21
      22
      23
      24
      25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

18

```
 1
 2
 3
 4                        CERTIFICATE
 5
 6        I hereby certify that pursuant to Section 753,
 7   Title 28, United States Code, the foregoing is a true and
 8   correct transcript of the stenographically reported
 9   proceedings held in the above-entitled matter and that the
10   transcript page format is in conformance with the
11   regulations of the Judicial Conference of the United States.
12
13   Date:  July 20, 2020
14
15            /s/   Sharon A. Seffens  7/20/20
16            _____
17            SHARON A. SEFFENS, U.S. COURT REPORTER
18
19
20
21
22
23
24
25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Exhibit 7**
**-51-**

**/**

/s [1]  18/15

**0**

0193 [1]  2/16
0404 [1]  2/5
0870 [1]  1/21
0921 [1]  2/13

**1**

1-1053 [1]  1/20
10 [2]  1/17 3/1
10166-0193 [1]  2/16
1053 [1]  1/20
1211 [1]  2/10
14th [1]  2/4
15 [2]  6/23 7/1
16 [2]  6/23 7/1
1881 [1]  2/9

**2**

20 [2]  18/13 18/15
200 [1]  2/15
2019 [1]  10/1
2019.210 [4]  11/15 12/23 15/4 15/7
2020 [3]  1/17 3/1 18/13
2021 [1]  5/4
2040 [1]  2/4
21 [3]  4/18 5/22 8/12
212 [1]  2/16
2339 [1]  2/16
27 [1]  8/22
28 [1]  18/7
2:58 [1]  3/1

**3**

30 [1]  4/10
30-day [1]  16/19
3000 [1]  2/12
351-2339 [1]  2/16
393-8254 [1]  2/13

**4**

40 [1]  7/20
411 [1]  1/20
415 [1]  2/13
4th [1]  1/20

**5**

50 [1]  7/20
5307 [1]  1/20
543-0870 [1]  1/21
555 [1]  2/12

**6**

650 [1]  2/10

**7**

7/20/20 [1]  18/15
714 [1]  1/21
753 [1]  18/6
760-0404 [1]  2/5

**8**

8254 [1]  2/13
849-5307 [1]  2/10

**9**

9/21 [2]  4/18 8/12
9/7 [2]  4/6 4/17
92614 [1]  2/5
92701 [1]  1/20
93403-1211 [1]  2/10
94105-0921 [1]  2/13
949 [1]  2/5

**A**

able [2]  8/8 10/9
about [7]  6/21 6/23 7/5 7/20 8/20 15/19 15/20
above [1]  18/9
above-entitled [1]  18/9
accommodate [1]  4/24
actual [1]  4/10
actually [3]  8/18 10/14 10/19
adequate [1]  12/15
adjusted [1]  4/23
adjustments [1]  4/15
admonition [1]  15/1
adopt [1]  4/25
adopting [1]  4/11
advance [1]  12/18
adverse [1]  5/2
after [2]  4/4 4/12
afternoon [3]  3/6 3/11 3/14
again [3]  7/25 9/20 15/17
ago [2]  11/15 11/20
agree [2]  5/20 14/16
agreement [1]  5/9
ahead [1]  10/12
ahold [1]  10/5
al [1]  1/9
alert [1]  5/11
all [9]  6/25 10/5 10/10 10/25 11/11 12/15 13/7 14/22 15/15
allegations [1]  11/7 14/9
allege [1]  15/12
alleged [1]  15/22
allegedly [2]  14/1 14/9
along [1]  15/1
already [4]  6/1 8/1 8/2 16/2
also [4]  8/3 11/17 13/1 15/20
Alto [1]  2/10
always [1]  7/9
amend [1]  16/19
amended [1]  13/15
amending [1]  5/12
among [1]  8/9
amount [1]  3/25
Ana [3]  1/16 1/20 3/1
analyze [2]  6/15 12/10
another [1]  7/22
any [4]  6/21 13/2 14/21 15/11
anybody [1]  11/4
anything [2]  10/24 16/23
APPEARANCES [2]  2/1 3/5
APPLE [4]  1/11 3/4 3/12 3/24
Apple's [1]  11/8
application [1]  10/20
applies [1]  6/25
appreciate [2]  8/6 11/2
are [25]
arguing [1]  6/7
argument [3]  6/25 12/22 15/25
around [1]  14/2
art [7]  3/20 3/25 4/1 4/5 4/9 4/21 8/15
as [18]  3/23 4/14 5/22 6/7 6/7 8/10 8/16 8/17 9/21 9/23 9/25 11/9 11/19 12/5 12/6 12/6 14/24 16/15
ask [1]  8/20
asking [2]  10/15 10/17
aspect [1]  6/9
asserted [1]  14/11
assume [1]  14/11
Avenue [1]  2/15
avoid [1]  4/14 4/20
aware [1]  14/20

**B**

back [4]  5/18 9/9 10/16 16/14
ball [1]  9/4

based [2]  11/8 14/1
basic [2]  11/24 12/9
basis [4]  3/23 9/8 10/4 13/7
be [36]
because [8]  6/14 7/15 8/1 8/24 9/25 11/23 12/25 13/20
been [6]  11/20 11/23 13/14 14/4 15/12 16/6
before [9]  5/19 7/6 10/2 10/10 12/3 12/24 12/24 14/23 16/7
begin [1]  5/7
beginning [1]  7/23
behalf [4]  3/5 3/7 3/9 3/12
behind [2]  11/24 13/10
being [3]  6/11 6/23 10/9
believe [3]  3/18 8/7 11/4
bell [1]  10/13
better [1]  4/1
between [1]  4/22
bit [2]  7/6 7/21
both [5]  4/19 6/6 9/6 13/9 15/19
breach [1]  16/3
BRIAN [3]  2/8 2/14 3/13
brief [1]  7/12
briefed [3]  11/19 12/3 16/2
briefly [1]  12/20
busy [1]  11/2

**C**

CA [4]  1/20 2/5 2/10 2/13
CALIFORNIA [3]  1/5 1/16 3/1
Calling [1]  3/3
can [12]  6/2 6/11 6/16 7/6 7/9 10/2 10/6 10/21 11/4 11/7 13/17 13/22
can't [5]  10/13 12/1 13/2 13/21 14/20
cannot [2]  11/9 15/18
case [22]
cases [4]  12/24 14/22 15/5 16/4
cause [4]  7/9 13/19 13/22 15/2
CENTRAL [1]  1/5
certain [4]  9/24 13/18 13/21 15/1
CERTIFICATE [1]  18/4
certify [1]  18/6
change [3]  7/8 13/19 15/1
changed [1]  13/21
changes [3]  8/5 9/1 9/5
changing [2]  7/25 8/24
charting [2]  6/6 7/7
charts [1]  6/11
choices [3]  7/14 8/7 8/8
circle [1]  9/9
cited [2]  13/12 16/2
claim [15]  3/23 4/1 4/18 4/23 6/8 6/11 6/16 6/17 6/22 11/7 13/1 14/12 15/3 15/11 16/17
claims [15]  3/19 4/9 4/21 5/16 6/5 6/14 6/23 7/1 7/13 7/20 12/19 13/13 14/13 14/17 16/5
client [1]  6/19
clothing [1]  15/6
Code [1]  18/7
come [9]  4/4 4/17 4/19 5/21 8/9 10/7 10/16 15/4 16/14
comes [1]  3/24
coming [1]  15/6
complete [1]  5/9
completely [2]  9/3 14/16
compliance [2]  11/15 12/8
complying [1]  16/18
concern [2]  6/1 10/14
concluded [1]  17/3
conference [2]  3/2 18/11
confidential [10]  9/18 11/8 11/17 12/11 12/16 13/23 13/24 14/2 14/12 15/17
conformance [1]  18/10
consensus [1]  8/10

Exhibit 7
-52-

**C**

consider [1]  13/9
considered [1]  6/1
contemplate [2]  4/9 4/12
contentions [12]  3/21 3/21 4/6 4/17 5/1
  5/19 8/15 8/22 8/23 9/2 9/7 9/11
contract [1]  16/3
copy [1]  6/17
copying [1]  6/13
core [5]  9/11 9/18 12/11 12/16 16/10
CORPORATION [3]  1/9 3/4 3/8
correct [2]  16/1 18/8
could [6]  7/3 7/5 7/22 13/14 14/24 15/13
couldn't [1]  15/1
COUNSEL [1]  2/1
couple [1]  5/25
course [1]  5/19
COURT [10]  1/4 4/11 5/11 6/22 6/24
  11/25 15/7 16/8 16/15 18/16
Court's [1]  5/13
Courthouse [1]  1/19
craft [1]  13/25
create [2]  6/13 10/9
critical [1]  14/6
CRUTCHER [3]  2/9 2/12 2/15
currently [2]  8/21 16/6

**D**

date [8]  4/6 4/7 5/4 13/18 13/20 14/25
  16/19 18/13
dates [3]  4/22 9/6 9/14
day [1]  16/19
days [1]  4/10
deal [1]  9/4
decide [1]  6/16
decided [1]  10/21
Defendant [2]  1/12 2/6
defendants [1]  3/9
demonstrating [1]  4/2
dependent [2]  16/4 16/5
described [1]  15/11
description [1]  15/16
designate [1]  4/1
determine [1]  11/25
did [2]  9/20 11/15
different [1]  6/17
differently [1]  12/10
disclosed [5]  12/12 12/18 14/4 14/9
  15/13
disclosure [13]  3/20 4/10 4/14 11/14
  11/18 11/23 12/15 13/14 13/16 13/20
  14/23 14/25 15/8
disclosures [8]  3/24 4/4 4/5 4/5 4/19
  4/24 4/25 16/13
discovery [9]  8/2 10/3 11/25 12/1 12/23
  12/25 13/3 14/24 15/20
discretion [1]  4/13
discussing [1]  6/7
discussion [1]  6/3
discussions [4]  7/19 7/23 8/9 11/22
Dismiss [2]  5/13 16/7
dismissed [1]  16/6
dispute [4]  6/21 11/4 13/2 13/3
disputes [1]  15/19
DISTRICT [2]  1/4 1/5
DIVISION [1]  1/6
do [19]
document [1]  12/2
documentation [1]  9/21
documents [7]  5/18 10/6 11/5 11/10
  12/11 12/17 16/10
does [3]  11/18 12/22 13/5
doesn't [2]  13/1 13/1
don't [10]  4/18 5/3 7/3 7/16 9/10 10/8
  10/23 12/7 14/3 15/9

done [4]  7/9 7/10 12/12 16/18
down [2]  6/15 7/8
drafting [1]  15/22
drift [1]  9/15
due [3]  5/18 8/22 16/13
DUNN [2]  2/9 2/12 2/15
during [1]  11/1

**E**

each [2]  6/15 7/1
Early [3]  9/24 12/24 16/3
effort [1]  6/12
either [1]  13/20
else [1]  16/23
email [1]  10/17
enables [1]  11/24
end [3]  6/5 6/23 16/19
enough [1]  4/19
entertain [1]  9/16
entitled [1]  18/9
equally [1]  7/1
et [1]  1/9
evaluate [2]  3/23 5/15
even [5]  6/13 14/1 14/6 15/12 16/7
events [1]  13/19
ever [1]  13/19
every [4]  11/6 13/11 13/13 14/18
everything [4]  5/10 5/20 7/7 7/16
ex [2]  9/8 10/20
ex-parte [2]  9/8 10/20
example [2]  3/22 11/13
exception [1]  13/17
exchange [3]  4/17 4/22 5/11
express [2]  13/9 14/19
expressly [1]  12/23
extent [3]  6/21 9/14 12/16

**F**

fact [6]  5/13 7/16 8/6 12/5 12/12 15/20
factually [1]  16/4
fair [1]  8/8
fairly [1]  9/7
fall [1]  12/1
far [2]  6/7 8/1
February [1]  5/3
feel [1]  10/24
fighting [3]  16/11 16/11 16/12
file [2]  10/19 16/12
filed [2]  3/15 9/23
filings [1]  15/13
final [3]  4/14 8/15 8/17
finding [1]  14/21
fine [1]  8/11
firm [1]  6/19
first [5]  7/24 10/16 10/21 10/25 11/14
Floor [1]  2/4
follow [2]  12/8 13/7
following [2]  4/25 8/16
foregoing [1]  18/7
format [1]  18/10
forth [1]  5/12
forward [4]  12/14 14/24 16/8 16/14
found [1]  14/20
Francisco [1]  2/13
free [1]  10/24
Fresh [1]  3/25
FRIDAY [1]  3/1
full [1]  3/20
fully [1]  5/15
fundamentally [1]  3/18
further [2]  4/12 8/9

**G**

gearing [1]  8/2
general [2]  5/5 16/21
get [4]  7/6 7/7 10/5 10/21

gets [2]  7/16 16/8
getting [1]  10/12
GIBSON [3]  2/9 2/12 2/15
give [1]  3/22
given [1]  14/19
gives [1]  4/18
go [6]  4/14 6/18 8/18 12/13 14/24 16/8
going [15]  6/6 6/6 8/11 8/12 8/18 8/24
  9/1 9/1 9/2 9/3 9/14 11/13 13/5 16/12
  16/16
good [7]  3/6 3/11 3/14 7/9 13/19 13/21
  15/2
guess [2]  8/25 12/10
guidance [1]  11/24

**H**

had [5]  10/16 10/18 11/23 13/19 14/23
hank [1]  8/19
happen [1]  9/1
happy [2]  3/17 5/5
hard [4]  7/14 8/7 8/8 11/9
has [10]  3/23 6/15 6/18 12/21 13/12
  14/20 15/12 16/6 16/14 16/15
have [34]
having [4]  6/22 10/25 11/22 12/18
he [1]  12/24
hear [2]  3/17 5/6
heard [2]  7/24 11/3
hearing [7]  4/13 4/16 4/23 5/1 5/2 8/16
  11/1
held [1]  18/9
helpful [1]  6/3
here [5]  11/12 11/21 13/2 14/6 15/9
here's [1]  15/14
hereby [1]  18/6
higher [1]  7/4
holding [1]  15/5
Honor [17]  3/6 3/11 5/8 5/24 8/19 8/21
  9/19 9/20 11/1 11/14 12/3 12/21 14/17
  15/24 16/24 16/25 17/1
HONORABLE [1]  1/8
hope [1]  9/25
how [1]  8/10
hundreds [2]  6/5 6/11
hunt [1]  10/6

**I**

I'd [1]  3/16
I'll [1]  5/5
I'm [5]  5/1 6/10 8/11 8/12 14/20
I've [1]  16/9
idea [1]  7/7
identify [1]  12/19
ignores [1]  14/21
immediately [1]  10/18
importance [1]  14/6
important [2]  13/8 14/7
impose [1]  8/11
INC [2]  1/11 3/4
indeed [1]  12/24
independent [1]  16/1
indicated [2]  5/22 16/15
individual [1]  6/16
inefficient [1]  3/19
information [15]  5/11 6/14 9/12 9/18
  10/11 10/12 10/16 10/18 11/8 11/17
  13/23 13/24 14/2 14/12 15/17
infringement [7]  3/21 5/21 8/14 8/21 9/2
  9/6 9/11
initial [3]  4/3 4/8 8/13
instance [1]  13/6
instead [1]  6/22
invalidity [8]  3/21 3/24 4/5 4/6 4/16 4/25
  8/23 9/7
involved [2]  6/8 13/12
involves [1]  14/13

Exhibit 7
-53-

**I**

Irvine [1]  2/5
is [42]
issue [3]  9/25 10/21 11/6
issues [1]  11/11
it [35]
it's [15]  3/11 3/18 3/25 6/3 7/20 11/2
13/14 14/1 14/4 14/5 14/6 15/5 15/6
15/6 16/7
Item [1]  3/3
its [2]  3/24 9/10

**J**

JAMES [1]  1/8
JENSEN [2]  2/3 3/8
joint [2]  3/15 8/13
JOSEPH [2]  2/3 3/7
JOSHUA [3]  2/8 2/11 3/12
judge [4]  1/8 9/17 12/24 16/3
Judicial [1]  18/11
July [5]  1/17 3/1 8/22 9/3 18/13
July 27 [1]  8/22
June [2]  5/18 16/14
just [13]  5/25 5/25 6/2 7/16 8/4 9/14
12/1 12/20 12/25 13/23 15/13 15/18
16/10
JVS [2]  1/11 3/3

**K**

keep [1]  16/11
key [1]  11/21
kind [4]  6/4 7/11 10/6 15/5
kinds [2]  7/22 11/11
kitchen [1]  7/17
KNOBBE [2]  2/4 3/7
know [8]  7/20 8/25 9/23 10/1 10/23 11/1
15/5 15/16
knowing [1]  10/18

**L**

language [4]  13/9 14/19 14/20 14/21
large [1]  15/4
last [1]  3/16
later [3]  8/12 13/15 13/20
law [1]  16/2
lawyers [2]  11/16 15/21
leading [1]  4/16
leads [1]  11/10
least [4]  6/2 13/15 14/24 15/24
leave [2]  4/13 16/19
LERNER [4]  2/8 2/11 3/12 10/23
let [5]  3/16 3/22 5/25 6/1 9/9
Let's [3]  5/14 11/16 16/21
levels [1]  6/18
light [2]  4/1 9/7
like [1]  7/12
likely [1]  9/16
limits [4]  6/4 7/12 7/13 8/10
line [2]  9/5 15/14
list [2]  10/7 15/1
little [2]  7/21 7/25
LLP [3]  2/9 2/12 2/15
long [2]  6/12 11/20
look [1]  13/23
lot [2]  7/12 15/19
LYON [5]  2/7 3/12 5/23 9/20 12/5

**M**

made [4]  4/4 9/14 9/16 15/25
magistrate [2]  9/17 9/24
Main [1]  2/4
make [9]  6/19 6/24 7/14 7/14 7/15 8/7
8/8 9/10 11/7
makes [3]  3/24 5/3 6/25
many [4]  11/15 14/3 14/8 14/8

MARK [3]  2/7 3/11 9/22
Markman [7]  4/13 4/16 4/23 5/1 5/2 7/11
8/16
MARTENS [2]  2/4 3/7
MASIMO [13]  1/9 3/4 3/7 3/23 4/1 9/5
9/10 10/15 12/18 12/21 13/12 13/22
14/11
materials [1]  12/15
matter [3]  11/21 16/12 18/9
may [10]  4/15 6/1 6/23 8/3 8/20 9/23
10/1 10/19 12/13 12/20
maybe [3]  7/21 7/22 7/23
me [9]  3/8 3/12 3/16 3/22 4/8 5/25 6/2
9/9 9/16
mean [2]  6/9 13/1
mention [1]  13/11
might [3]  6/8 11/17 14/8
Mill [1]  2/9
Mission [1]  2/12
monkey [1]  8/3
month [2]  5/2 16/19
months [2]  11/15 15/16
more [8]  5/15 7/6 7/21 8/4 8/20 10/24
14/6 16/12
most [2]  11/12 11/24
motion [5]  5/13 9/16 10/14 16/7 16/21
motions [2]  16/3 16/12
move [1]  16/14
Mr [1]  12/5
Mr. [5]  5/7 5/23 9/9 10/23 15/23
Mr. Lerner [1]  10/23
Mr. Lyon [1]  5/23
Mr. Re [3]  5/7 9/9 15/23
much [2]  17/1 17/2
my [5]  3/8 3/16 4/3 5/5 16/20

**N**

nail [1]  16/11
narrowing [1]  4/20
necessary [3]  10/20 12/5 12/6
need [7]  4/23 5/19 7/19 7/21 10/19
11/18 12/13
needs [4]  5/10 5/14 7/10 10/1
never [3]  14/11 15/11 16/9
new [2]  2/16 8/25
no [8]  3/8 8/12 13/2 14/17 15/3 15/15
16/12 16/24
non [1]  12/25
non-trade [1]  12/25
nonconfidential [1]  9/21
normal [1]  14/7
not [21]
notwithstanding [1]  12/12
now [7]  7/5 7/19 9/23 12/7 12/12 12/18
16/14
nullity [2]  12/22 13/6
number [5]  3/19 7/3 7/4 8/14 15/14
numbers [2]  7/3 7/5
NY [1]  2/16

**O**

objection [1]  9/23
objections [2]  10/19 16/9
obvious [1]  15/6
obviously [1]  11/18 16/8
off [1]  8/23
okay [3]  6/20 16/20 17/2
old [1]  15/17
once [3]  11/5 11/10 15/18
one [8]  6/3 8/20 9/9 10/13 11/7 13/13
13/17 15/13
only [2]  13/11 13/17
opportunity [1]  7/11
order [9]  5/13 8/12 9/13 9/22 11/15 12/3
13/18 13/21 14/24
orders [2]  9/24 14/15

other [5]  5/17 11/21 12/15 13/11 16/3
otherwise [2]  7/14 10/8
ought [4]  4/4 8/8 8/16 8/17
our [13]  5/12 5/19 7/2 8/22 11/16 11/19
13/23 13/24 14/1 15/21 16/1 16/5 16/5
out [9]  5/14 5/21 6/2 9/15 9/15 9/15
10/11 10/19 11/5
over [1]  6/7
overlap [1]  12/13
own [1]  11/9

**P**

P.M [1]  3/1
page [4]  2/9 7/12 15/14 18/10
pages [1]  6/12
Palo [1]  2/10
paragraph [1]  6/17
parallel [1]  13/13
Park [1]  2/15
part [1]  9/21
parte [2]  9/8 10/20
parties [9]  3/18 4/4 4/7 5/15 5/20 6/6 8/7
parties' [1]  4/17
partner [1]  3/8
parts [1]  8/4
party's [1]  5/18
pasting [1]  6/13
patent [10]  9/17 12/14 12/17 13/3 13/24
14/13 14/23 15/13 16/1 16/8
patents [9]  5/14 7/25 8/3 8/24 9/6 12/11
14/3 14/8 14/10
peck [1]  10/6
pending [1]  16/7
people [2]  7/13 11/13
Per [1]  3/2
permit [1]  9/13
pick [2]  7/5 7/21
picked [1]  7/4
place [4]  9/13 9/23 10/2 10/14
plaintiff [3]  5/3 13/18
plaintiffs [4]  1/10 2/2 7/21 10/5
plan [1]  16/18
planning [3]  5/12 7/25 12/6
play [1]  15/4
pleading [2]  5/12 8/25
please [3]  3/5 3/10 10/24
point [9]  6/4 8/7 9/19 9/20 11/5 11/6
11/18 13/12 14/21
points [1]  5/25
poker [1]  3/22
policy [2]  11/21 11/24
possible [3]  10/22 12/7 13/14
potentially [2]  6/5 6/7
practice [1]  16/21
preparing [1]  7/11
present [1]  4/8
presently [1]  9/12
PRESIDING [1]  1/8
prevent [1]  16/13
prior [9]  3/20 3/20 3/25 4/1 4/5 4/9 4/21
8/15 13/13
probably [1]  7/15
problem [2]  14/3 14/18
problems [3]  11/22 12/8 13/7
proceed [2]  10/2 12/19
proceedings [3]  1/15 17/3 18/9
produce [3]  9/11 9/20 10/16
produced [3]  11/10 12/16 14/25
producing [1]  16/10
product [1]  11/9
production [3]  9/14 9/17 14/13
productions [1]  8/14
proper [1]  11/25
proposal [7]  4/8 4/11 4/20 4/24 5/21
8/13 8/15

Exhibit 7
-54-

**P**

propose [1]  4/7
proposed [1]  4/18
protective [3]  9/13 9/22 14/15
provide [1]  12/2
provided [4]  10/12 11/19 11/20 11/23
public [1]  15/13
purported [1]  13/25
purpose [1]  10/9
pursuant [2]  4/24 18/6
put [1]  7/13
putting [1]  6/4

**Q**

question [1]  8/20
quickly [1]  12/6
quite [1]  14/8

**R**

raise [2]  5/25 12/6
raised [2]  11/6 12/21
RE [5]  2/3 3/7 5/7 9/9 15/23
real [1]  13/22
really [2]  7/10 10/4 10/8
reasons [2]  7/8 14/5
received [1]  5/17
reduction [3]  3/19 4/8 4/12
reductions [1]  4/10
reevaluate [1]  9/6
references [4]  3/20 4/9 4/21 8/15
reflect [1]  4/19
reflected [1]  9/2
regard [1]  9/17
regarding [1]  5/13
regulations [1]  18/11
reign [1]  7/6
relate [1]  13/1
related [2]  6/14 12/23
relates [2]  12/25 13/3
relevant [3]  11/12 12/11 12/17
relief [1]  10/21
render [2]  12/22 13/5
replead [1]  16/16
report [1]  3/15
reported [1]  18/8
REPORTER [1]  18/16
REPORTER'S [1]  1/15
requests [1]  12/1
require [2]  3/19 4/15
required [1]  9/10
respond [1]  12/20
results [1]  16/21
review [2]  6/19 6/24
road [2]  2/9 7/8
ROSENTHAL [3]  2/8 2/14 3/13
roughly [1]  15/16
round [2]  4/3 8/14
Royal [1]  3/25
RPR [1]  1/19
rule [4]  10/4 11/24 12/9 13/8
ruled [1]  12/4
ruling [1]  14/23
run [2]  12/7 14/3

**S**

SACV [2]  1/11 3/3
SACV-20-00048-JVS [2]  1/11 3/3
said [5]  5/10 5/20 9/9 12/25 14/24
same [1]  6/25
San [1]  2/13
Santa [3]  1/16 1/20 3/1
say [5]  6/3 10/23 14/7 15/7 15/13
says [1]  12/5
schedule [2]  8/5 9/22
scheduling [1]  12/3

scope [2]  11/25 11/20 18/28
second [2]  11/4 15/25
secret [20]
secrets [11]  10/7 10/10 10/13 12/13
 12/15 12/24 13/4 13/25 14/9 15/21
 15/22
Section [2]  11/15 18/6
see [2]  9/3 16/21
seek [1]  10/20
seen [4]  6/10 11/16 15/21 16/9
SEFFENS [3]  1/19 18/15 18/16
selections [1]  4/20
SELNA [1]  1/8
sense [2]  5/3 6/25
separate [1]  9/3
September [2]  5/22 8/23
September 21 [1]  5/22
serious [1]  15/10
set [3]  5/12 7/2 8/21
seven [1]  15/16
share [1]  3/16
SHARON [3]  1/19 18/15 18/16
sheep's [1]  15/6
short [1]  9/8
should [7]  7/15 9/10 11/19 12/12 12/16
 12/18 16/23
show [1]  13/19
side [1]  13/3
sides' [1]  4/19
significant [1]  6/12
similar [1]  6/24
simply [2]  6/16 11/9
single [2]  6/22 13/13
sink [1]  7/17
sit [1]  6/15
situation [3]  10/5 13/22 15/9
six [1]  5/2
slipping [1]  5/2
so [19]
some [19]
somebody [1]  6/15
something [3]  6/10 7/9 7/19
sort [1]  7/12
SOUTHERN [1]  1/6
space [1]  14/8
specific [1]  4/11
specificity [1]  15/12
stage [2]  7/10 8/17
staging [1]  9/24
start [1]  8/2
statement [1]  10/2
states [5]  1/4 1/19 12/23 18/7 18/11
statute [4]  12/22 13/6 13/9 14/19
stenographically [1]  18/8
STEPHEN [2]  2/3 3/8
still [2]  6/14 15/7
stipulate [1]  7/23
Street [2]  1/20 2/4 2/12
strenuous [1]  16/9
subject [1]  14/13
submit [1]  8/13
substantially [1]  8/5
substituting [1]  5/14
such [1]  16/9
suggested [1]  15/10
suggesting [1]  7/18
Suite [2]  1/20 2/12
Suppose [1]  3/22
sure [1]  6/10 6/19 6/25

**T**

take [1]  16/23
talk [1]  7/5
talked [1]  10/17
target [4]  6/4 7/5 7/12 9/1
technical [7]  5/18 9/12 9/21 10/6 10/10

12/17 16/10
telephone [1]  11/1
telephonic [1]  3/2
term [2]  7/22
terms [4]  4/18 4/23 6/8 8/17
terrible [1]  7/4
than [3]  7/21 8/12 14/7
thank [3]  3/6 3/15 5/8 5/24 10/25 16/24
 16/25 17/1 17/2
that [119]
that's [13]  5/3 5/12 6/9 6/20 7/8 7/18
 7/25 8/11 10/13 14/14 14/22 15/16
 15/18
their [7]  4/4 4/5 11/9 13/25 14/3 15/22
 16/7
theirs [1]  14/1
them [1]  6/10
then [1]
there [22]
there's [6]  6/21 7/4 7/7 12/8 13/2 15/15
these [14]  6/10 6/11 6/14 7/8 7/13 9/14
 10/5 10/18 11/1 11/5 11/10 11/22 11/22
 16/3
they [18]  7/14 7/15 7/16 8/8 10/7 10/8
 10/16 12/2 12/12 12/13 12/17 13/19
 14/3 15/10 15/12 15/17 16/10 16/11
they'll [1]  7/13
they're [3]  6/6 7/24 16/12
they've [3]  15/10 15/11 15/25
thicket [1]  13/24
thing [3]  6/3 9/9 13/11
things [3]  7/8 12/10 15/15
think [18]  4/15 4/18 4/22 5/9 5/10 5/20
 7/3 9/10 11/12 11/21 11/23 13/7 13/8
 13/17 14/5 15/19 16/14 16/20
third [2]  8/17 15/25
this [23]
those [10]  4/10 5/5 7/1 7/22 8/24 9/1
 10/10 10/13 14/5 15/15
though [3]  8/20 14/1 15/12
thought [1]  4/3
thoughts [2]  3/16 5/5
thousands [1]  6/12
through [2]  6/18 13/23
throw [2]  6/2 8/3
thrown [1]  7/16
time [8]  4/14 4/19 5/15 8/10 11/20 13/15
 15/25 16/14
times [1]  11/2
Title [1]  18/7
today [2]  16/13 16/23
tooth [1]  16/11
trade [27]
transcript [3]  1/15 18/8 18/10
trial [3]  4/14 5/4 8/18
tries [1]  14/2
trigger [1]  8/23
triggers [1]  8/22
trivial [1]  6/9
troubling [1]  8/1
true [1]  18/7
try [2]  10/7 13/25
trying [3]  7/18 8/2 10/8
two [2]  4/7 11/12
type [1]  10/20

**U**

U.S [1]  18/16
understand [3]  9/12 12/21 16/13
understood [1]  10/15
undo [1]  15/18
undone [1]  11/10
unfair [1]  3/18
unfortunately [1]  15/19
UNITED [4]  1/4 1/19 18/7 18/11
unnecessary [1]  15/19

Exhibit 7
-55-

## U

unrung [1]  10/13
until [2]  9/11 12/2
up [11]  3/24 4/19 5/21 6/5 6/11 6/15
  6/23 8/2 8/21 10/7 16/23
us [2]  10/15 10/17
use [1]  13/24

## V

vague [1]  11/7
valuable [1]  11/8
versus [1]  3/4
very [8]  6/12 8/1 12/20 13/7 13/15 13/22
  17/1 17/2
viable [1]  4/2
view [2]  7/2 11/19
views [1]  16/21

## W

waiting [1]  9/22
want [6]  5/11 8/9 8/25 10/23 11/17
  15/17
wanted [1]  13/19
wants [1]  12/19
was [8]  10/15 10/17 13/13 13/15 13/17
  13/18 14/14 14/22
wasn't [1]  4/2
waterfall [1]  12/7
wax [1]  9/4
way [2]  10/9 13/25
ways [2]  7/13 14/5
we [52]
we'll [1]  15/18
we're [6]  5/9 8/2 8/18 9/22 12/6 13/5
we've [1]  7/24
weave [1]  14/2
week [1]  3/16
weeks [2]  4/7 5/2
Well [3]  9/5 15/24 16/20
were [9]  5/18 7/18 14/9 14/17 15/3 16/3
  16/4 16/13 17/3
West [1]  1/20
what [14]  4/6 4/14 6/7 8/12 8/16 8/17
  8/18 11/12 11/16 14/14 15/20 15/22
  16/12 16/21
what's [1]  13/10
whatever [3]  4/24 6/18 7/20
whatsoever [1]  15/12
when [4]  3/24 8/25 11/14 12/14
where [6]  6/10 10/5 13/17 14/7 14/18
  15/10
Whereupon [1]  17/3
whether [4]  6/16 7/20 11/25 14/14
which [13]  5/18 6/12 6/14 6/23 8/22 9/22
  9/25 11/6 11/18 12/2 12/3 12/19 14/12
who [2]  11/16 15/21
whole [2]  10/4 10/9
why [2]  7/18 14/22
will [9]  5/14 5/20 5/21 8/7 8/13 12/8 13/6
  13/11 16/11
wind [1]  6/11
winds [1]  6/15
within [3]  4/7 4/10 12/1
without [3]  13/20 13/21 15/2
withstanding [1]  15/15
wolf [1]  15/5
work [4]  5/21 11/9 11/14 11/17
world [1]  3/22
worrying [1]  6/23
would [20]
wouldn't [1]  7/14
wrench [1]  8/4

## Y

years [1]  11/8

yes [3]  5/17 15/3 16/18
yesterday [2]  10/15 10/17
yet [1]  5/17
York [1]  2/16
you [43]
you've [1]  6/10
your [21]
yourselves [1]  8/9

Exhibit 7
-56-

# EXHIBIT 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

MASIMO CORPORATION,
a Delaware corporation; and
CERCACOR LABORATORIES, INC.,
a Delaware corporation

        Plaintiffs,

    v.

APPLE INC., a California corporation

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 8:20-cv-00048-JVS-JDE

Hon. James V. Selna
Magistrate Judge John D. Early

**ORDER GRANTING PLAINTIFFS' RENEWED *EX PARTE* APPLICATION FOR AN ORDER REQUIRING APPLE TO COMPLY WITH THE SCHEDULING ORDER**

Discovery Cut-Off:    7/5/2021
Pre-Trial Conference:  3/21/2022
Trial:            4/5/2022

Exhibit 8
-57-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 67 of 300   Page ID
#:12132
Case 8:20-cv-00048-JVS-JDE   Document 92   Filed 07/29/20   Page 2 of 3   Page ID #:6324

1    Having considered Plaintiffs' Renewed *Ex Parte* Application for an Order

2  Requiring Apple to Comply with the Scheduling Order, all the papers filed in

3  support thereof, all papers in opposition thereto, nd finding good cause, the

4  Court hereby GRANTS Plaintiffs' application as follows:

5    1.    Apple must produce core technical documents sufficient to show

6          the operation of the Accused Products, including source code,

7          within five (5) days of this Order;

8    2.    The Court rejects Apple's attempt to condition document

9          productions on an "ethical wall";

10   3.    Plaintiffs deadline for "Infringement Contentions (Patent L.R. 3-1

11         and 3-2)" is extended until forty-two (42) days after Apple

12         completes its production of core technical documents; and

13   4.    Should Plaintiffs dispute the sufficiency of Apple's core technical

14         document production, the parties shall present the dispute to this

15         Court on an *ex parte* basis, and Plaintiffs' deadline to present

16         infringement contentions will be tolled until forty-two (42) days

17         after the matter is resolved.

18

19

20

21

22

23

24

25

26

27

28

-1-

Exhibit 8
-58-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 68 of 300   Page ID
#:12133
Case 8:20-cv-00048-JVS-JDE   Document 92   Filed 07/29/20   Page 3 of 3   Page ID #:6325

1          This issue has been litigated multiple times, and Apple has not prevailed.

2    Now is the time for Apple to act: The Court expects prompt and full

3    compliance.   Any further recalcitrance on Apple's part will likely draw an

4    application for contempt or sanctions under 28 U.S.C. § 1927 or an invitation

5    from the Court to seek such relief.

6

7         **IT IS SO ORDERED.**

8

9    DATED: July 29, 2020

10               The Honorable James V. Selna
                 United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

**Exhibit 8
-59-**

# EXHIBIT 9

1   JOSHUA H. LERNER, SBN 220755
      jlerner@gibsondunn.com
2   GIBSON, DUNN & CRUTCHER LLP
    555 Mission Street Suite 3000
3   San Francisco, CA 94105
    Tel.: 415.393.8200 / Fax: 415.393.8306
4
5   H. MARK LYON, SBN 162061
      mlyon@gibsondunn.com
6   GIBSON, DUNN & CRUTCHER LLP
    1881 Page Mill Road
7   Palo Alto, CA 94304-1211
    Tel.:  650.849.5300 / Fax: 650.849.5333

8   BRIAN M. BUROKER, *pro hac vice*
      bburoker@gibsondunn.com
9   BRIAN K. ANDREA, *pro hac vice*        ILISSA SAMPLIN, SBN 314018
      bandrea@gibsondunn.com                 isamplin@gibsondunn.com
10  GIBSON, DUNN & CRUTCHER LLP       GIBSON, DUNN & CRUTCHER LLP
    1050 Connecticut Avenue, N.W.          333 South Grand Avenue
11  Washington, D.C. 20036                 Los Angeles, CA 90071-3197
    Tel.: 202.955.8541 / Fax: 202.467.0539  Tel.: 213.229.7000 / Fax: 213.229.7520
12
13  BRIAN A. ROSENTHAL, *pro hac vice*   ANGELIQUE KAOUNIS, SBN 209833
      brosenthal@gibsondunn.com             akaounis@gibsondunn.com
14  GIBSON, DUNN & CRUTCHER LLP       GIBSON, DUNN & CRUTCHER LLP
    200 Park Avenue                        2029 Century Park East Suite 4000
15  New York, NY 10166-0193                Los Angeles, CA 90067
    Tel.: 212.351.2339 / Fax: 212.817.9539  Tel.: 310.552.8546 / Fax: 310.552.7026

16  *Attorneys for Defendant Apple Inc.*

17              UNITED STATES DISTRICT COURT

18         FOR THE CENTRAL DISTRICT OF CALIFORNIA

19                  SOUTHERN DIVISION

20  MASIMO CORPORATION,              CASE NO. 8:20-cv-00048-JVS (JDEx)
    a Delaware corporation; and
21  CERCACOR LABORATORIES, INC.,     **DEFENDANT APPLE INC.'S REPLY**
    a Delaware corporation,          **IN SUPPORT OF MOTION FOR**
22                                    **REVIEW OF AND OBJECTIONS TO**
                   Plaintiffs,        **MAGISTRATE JUDGE EARLY'S**
23                                    **JUNE 15, 2020 ORDER**
         v.
24                                    **Hearing**
    APPLE INC.,
25  a California corporation,        Date:       July 20, 2020
                                     Time:       1:30 p.m.
26                 Defendant.        Courtroom:  10C
                                     Judge:      Hon. James V. Selna
27

28

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................................ 1

II.   ARGUMENT................................................................................... 3

      A.    Judge Early's Order Is Erroneous and Contrary to Law............................ 3

            1.    This Court Ordered Plaintiffs to Comply with Section
                  2019.210.................................................................... 3

            2.    Judge Early's Order Permits Plaintiffs to Avoid Compliance
                  with Section 2019.210. .................................................... 4

      B.    Apple's Requested Relief Is Consistent with Section 2019.210. ............ 13

III.  CONCLUSION ............................................................................ 15

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Advanced Modular Sputtering, Inc. v. Superior Court*,
5   132 Cal. App. 4th 826 (2005) ................................................................. 6, 7

6

*Bal Seal Eng'g, Inc. v. Nelson Prod., Inc.*,
7   2017 WL 10543565 (C.D. Cal. Mar. 13, 2017) ....................................... 14

8

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
9   No. 5:10-cv-03428-LHK (N.D. Cal. Mar. 24, 2011) ................................ 8

10

*Bryant v. Mattel, Inc.*,
11   2007 WL 5430888 (C.D. Cal. May 18, 2007) ........................................... 8

12

*Comput. Econs., Inc. v. Gartner Grp., Inc.*,
13   50 F. Supp. 2d 980 (S.D. Cal. 1999) ......................................................... 9

14

*E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*,
   2018 WL 3062160 (E.D. Cal. June 19, 2018) ........................................... 8

15

*Gatan, Inc. v. Nion Co.*,
16   2018 WL 2117379 (N.D. Cal. May 8, 2018).............................................. 14

17

*Jobscience, Inc. v. CVPartners, Inc.*,
18   2014 WL 852477 (N.D. Cal. Feb. 28, 2014).............................. 2, 8, 9, 14

19

*Lilith Games (Shanghai) Co. v. uCool, Inc.*,
20   2015 WL 4149066 (N.D. Cal. July 9, 2015) ............................................. 9

21

*Loop AI Labs, Inc v. Gatti*,
22   2015 WL 9269758 (N.D. Cal. Dec. 21, 2015) .......................................... 5

23

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
24   2019 WL 4284523 (C.D. Cal. June 11, 2019)........................................... 3

25

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
   2019 WL 8108729 (C.D. Cal. Sept. 3, 2019) ............................................ 9

26

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
27   2018 WL 2117424 (N.D. Cal. May 8, 2018)............................................. 14

28

Gibson, Dunn &
Crutcher LLP

APPLE'S REPLY ISO MOT. FOR REVIEW OF AND
OBJECTIONS TO MAGISTRATE JUDGE'S ORDER      ii      CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 9**
**-62-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 73 of 300   Page ID
#:12138
Case 8:20-cv-00048-JVS-JDE   Document 71   Filed 07/06/20   Page 4 of 20   Page ID #:5474

*Radzanower v. Touche Ross & Co.*,
    426 U.S. 148 (1976) ................................................................................. 12

*ScaleMP, Inc. v. TidalScale, Inc.*,
    No. 3:18-cv-04716 EDL (N.D. Cal. Mar. 15, 2019) ................................. 6

*Silva v. U.S. Bancorp*,
    2011 WL 7096576 (C.D. Cal. Oct. 6, 2011) ............................................. 9

*Space Data Corp. v. X*,
    2017 WL 3007078 (N.D. Cal. July 14, 2017) ........................................... 5

*Tatum v. Schwartz*,
    2007 WL 419463 (E.D. Cal. Feb. 5, 2007) ............................................... 9

**Statutes**

Cal. Civ. Proc. Code § 2019.210 ...................................................... 1, 4, 12

**Other Authorities**

A. Scalia and B. Garner, *Reading Law: The Interpretation of Legal Texts*
    180 (2012) ............................................................................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit 9**
**-63-**

1

## I.   **INTRODUCTION**

2      Apple's Motion simply seeks Plaintiffs' compliance with Section 2019.210.  This

3   Court entered a Scheduling Order staying "trade secret discovery only pending

4   compliance with Section 2019.210" nearly three months ago, but Plaintiffs still have not

5   made any effort to comply with the statute.  Under the plain language of this Court's

6   Scheduling Order, Plaintiffs' discovery pertaining to trade secrets therefore is stayed.

7   Plaintiffs should not be permitted to end-run around that stay merely by labeling the

8   discovery they seek as "patent discovery."  That is, however, precisely what Magistrate

9   Judge Early's June 15, 2020 Order, adopting Plaintiffs' argument, permits Plaintiffs to

10  do.  As a result, Plaintiffs may continue to thwart the parties' and more importantly the

11  Court's attempts to define the proper scope of discovery.[1]   Judge Early's Order is

12  erroneous and contrary to law, and should be reversed accordingly.

13      The reach of Section 2019.210 is set forth in the statute:  It requires that a plaintiff

14  alleging trade secret misappropriation identify the alleged trade secrets with reasonable

15  particularity before commencing discovery "*relating*" to the alleged trade secrets.  Cal.

16  Civ. Proc. Code § 2019.210 (emphasis added).  Far from identifying their trade secrets

17  with reasonable particularity more than six months into this case, Plaintiffs have yet to

18  even adequately plead those purported trade secrets under Federal Rule of Civil

19  Procedure 8.  *See* Dkt. No. 60, at 6–8.  Nonetheless, Plaintiffs seek broad, technical

20  information from Apple regarding the products that Plaintiffs allege incorporate their

21  unspecified trade secrets (the Apple Watch Series 4 and 5).  In other words, Plaintiffs

22  seek to discover *Apple's* confidential information and trade secrets pertaining to the

23  Apple Watch Series 4 and 5 before they identify any of their own trade secrets.

24      Plaintiffs do not dispute that they seek discovery *relating* to trade secrets.

25  Plaintiffs simply contend that because the discovery they seek relating to trade secrets

26

27      [1]  While Plaintiffs' first amended trade secret claim was dismissed on June 25, 2020
    (Dkt. No. 60), Plaintiffs have confirmed that they intend to replead the claim.  *See* Dkt.
28  No. 68 (Plaintiffs agreeing to a schedule for Apple's motion to dismiss Plaintiffs' to-be-
    repleaded trade secret misappropriation claim).

1  *also* relates to their patent claims (because their trade secret and patent claims concern
2  technical features of the *very same products*), they are permitted to bypass the
3  requirements of Section 2019.210 and the stay imposed by this Court.  That position—
4  which Judge Early adopted based on Plaintiffs' contention that the word "only" in this
5  Court's Scheduling Order stays only discovery that is *solely* related to Plaintiffs' trade
6  secret claim—would frustrate every policy consideration underlying Section 2019.210.
7  *See, e.g.*, *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *5 (N.D. Cal. Feb.
8  28, 2014) ("Experience has shown that it is easy to allege theft of trade secrets with
9  vagueness, then take discovery into the defendants' files, and then cleverly specify what
10  ever [sic] happens to be there as having been trade secrets stolen from plaintiff.").

11       Apple does not believe that this Court's stay of "trade secret discovery only
12  pending compliance with 2019.210" was intended to render Section 2019.210's stay of
13  discovery "relating to the trade secret[s]" meaningless.  It defies common sense to
14  suggest that the Court ordered "compliance with Section 2019.210" yet intended to
15  allow Plaintiffs to avoid providing a Section 2019.210 disclosure before taking trade
16  secret-related discovery—i.e., avoid complying with Section 2019.210 at all—so long
17  as Plaintiffs argued that the discovery also relates to patents.  Unless and until Plaintiffs
18  satisfy the requirements of Section 2019.210, they should not be permitted to obtain
19  discovery from Apple that relates to trade secrets even if it *also* relates to other issues.

20       To that end, Plaintiffs are wrong to contend that Apple's Motion "identifies no
21  error" in Judge Early's Order.  Apple identified the manner in which the Order deviates
22  from (i) the plain language and intent of the statute (Section 2019.210) with which this
23  Court ordered Plaintiffs to comply, and, in turn, (ii) the Scheduling Order wherein the
24  Court ordered compliance.  Indeed, Apple cited a prior case where Judge Early correctly
25  recognized that Section 2019.210 is contrary to the *exact* result he reached here:
26  "Section 2019.210 does not limit discovery 'exclusively' relating to the trade secrets.  A
27  request that relates to both trade secret and other issues still 'relates to' the trade secret."
28  *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 4284523, at *5 (C.D. Cal. June

1    11, 2019) (Early, J.).  Apple also identified how Plaintiffs' erroneous reading of the

2    Scheduling Order—which Judge Early felt compelled to adopt and formed the basis for

3    his ruling—is at odds with Section 2019.210.  Apple's Motion is a 13-page detailed

4    explanation of the error inherent in Judge Early's Order.

5         This Court should prevent Plaintiffs from continuing to obfuscate the proper scope

6    of discovery here and from gaining access to Apple's trade secrets under the guise of

7    patent discovery before they identify their own purported trade secrets with the

8    reasonable particularity required under Section 2019.210.

9                        II.   <u>ARGUMENT</u>

10   **A.    Judge Early's Order Is Erroneous and Contrary to Law.**

11        Judge Early based his ruling on the portion of this Court's Scheduling Order that

12   explicitly incorporates Section 2019.210:  the sentence staying "trade secret discovery

13   only pending compliance with 2019.210." Dkt. No. 37, at 1.  The interpretation of that

14   sentence that Judge Early adopted to decide this dispute is erroneous and contrary to

15   law—as evidenced by, *inter alia*, the language and purpose of the statute that this Court

16   incorporated into that sentence over Plaintiffs' objection.

17             **1.    This Court Ordered Plaintiffs to Comply with Section 2019.210.**

18        Plaintiffs' Opposition Brief proceeds on the incorrect premise that this Court, in

19   entering its Scheduling Order, rejected Apple's position on Section 2019.210.  In the

20   Rule 26(f) Report that preceded entry of the Scheduling Order, Apple advocated for

21   application of Section 2019.210—including by citing the many district courts

22   throughout this Circuit that have applied Section 2019.210 to manage discovery in trade

23   secret cases. Dkt. No. 33, at 17–18 (citing cases).  Plaintiffs resisted entirely—arguing

24   that Section 2019.210 does not apply in federal court, despite Apple's authority to the

25   contrary, and that Apple should seek identification of Plaintiffs' alleged trade secrets

26   through an interrogatory instead.  *Id.* at 6–7.  The Court responded with a Scheduling

27   Order that mandates compliance with Section 2019.210 (Dkt. No. 37), thereby rejecting

28

1    *Plaintiffs'* position on Section 2019.210, not Apple's.[2]

2          Indeed, Plaintiffs' lead argument in opposition to Apple's Motion is that in its

3    Scheduling Order this Court "rejected Apple's attempt to stay patent discovery" (Opp.

4    at 7), but Apple never requested a stay of patent discovery.  In the Rule 26(f) Report that

5    preceded entry of the Scheduling Order, Apple specifically stated that it "intends to

6    move forward with producing responsive discovery that relates solely to Plaintiffs'

7    patent claims" without a Section 2019.210 disclosure.  Dkt. No. 33, at 8.  Apple does

8    not have—and has never had—any objection to producing discovery that relates solely

9    to Plaintiffs' patent claims pending Plaintiffs' compliance with Section 2019.210.

10   Indeed, in Apple's very first responses to Plaintiffs' RFPs, Apple agreed to produce

11   documents responsive to RFPs 1 through 4 on that basis.  *See* Dkt. No. 46, at 4 (Apple's

12   Supplemental Brief).  And now that a Protective Order has been entered (Dkt. No. 67),

13   Apple will begin producing its confidential discovery that relates solely to Plaintiffs'

14   patent claims.  Apple's objection is to Plaintiffs "commencing discovery *relating* to the

15   trade secret[s]" (Cal. Civ. Proc. Code § 2019.210) before they have identified their

16   alleged trade secrets with the reasonable particularity Section 2019.210—and, in turn,

17   the Scheduling Order incorporating the statute—requires.

18          **2.    Judge Early's Order Permits Plaintiffs to Avoid Compliance with**

19                  **Section 2019.210.**

20          There can be no dispute that Judge Early's Order would permit Plaintiffs to

21   commence discovery "relating" to trade secrets before they have complied with Section

22   2019.210, so long as Plaintiffs can claim the discovery is not "only" trade secret related.

23   Of course—as explained below—Plaintiffs' refusal to describe their alleged trade

24   secrets makes it difficult for Apple or the Court to even address Plaintiffs' flawed

25   argument.

26

27   _____

28   [2]  Apple therefore had no reason or basis on which to seek reconsideration of this
     Court's Scheduling Order as Plaintiffs suggest Apple should have done.  *See* Opp. at 9.

a)  **Judge Early's Order Is Inconsistent with the Plain Language of the Statute with which this Court Ordered Plaintiffs to Comply.**

Section 2019.210 requires that Plaintiffs serve an adequate trade secret disclosure before obtaining any discovery from Apple "relating" to their (soon to be repleaded) trade secret claim.  Judge Early's Order, on the other hand, permits Plaintiffs to obtain discovery from Apple "relating" to their trade secret claim *without* a Section 2019.210-compliant disclosure, merely by claiming that the discovery relates to another claim, like their patent infringement claims.  Judge Early's Order is flatly at odds with the plain language of the statute with which this Court ordered Plaintiffs to comply.

The cases Plaintiffs cite do not help their cause.  To the contrary, none of those cases involved plaintiffs that refused to provide *any* disclosure for more than six months—or circumstances where there was not even a schedule for Section 2019.210 compliance—while attempting to take discovery as to the purported trade secrets.  In *Loop AI Labs, Inc v. Gatti*, 2015 WL 9269758 (N.D. Cal. Dec. 21, 2015) (Opp. at 8, 11), the plaintiff expressly alleged that its non-CUTSA claims "are not based on any allegations of misappropriation of trade secrets"—unlike the patent claims here.  *Id.* at *1–2, *4.  Furthermore—and this is critical—the plaintiff in *Loop AI Labs* was under court order to provide within 21 days a "thorough and complete" trade secret disclosure, *which it could not amend in the future* absent a showing of good cause.  *Id.* at *4.  Here, Plaintiffs have not even agreed on a date by which they will serve their disclosure, let alone not to subsequently amend it.  Plaintiffs' sole articulated reason for not producing a Section 2019.210 disclosure for months was the absence of a Protective Order.  *See, e.g.*, Samplin Decl. Ex. B.  A Protective Order has since been entered.  *See* Dkt. No. 67.  Yet Plaintiffs still have not produced a Section 2019.210 disclosure, have not committed to a date by which they will produce a Section 2019.210 disclosure, and have not represented that they will not amend the disclosure they produce in the future.

In *Space Data Corp. v. X*, 2017 WL 3007078 (N.D. Cal. July 14, 2017) (Opp. at 10), unlike this case, the plaintiffs provided a Section 2019.210 disclosure *and* amended

---

1   it prior to the order Plaintiffs cite.  Joint Br. at 2, 2017 WL 3007078, ECF No. 105.  In

2   *ScaleMP, Inc. v. TidalScale, Inc.*, No. 3:18-cv-04716 EDL, ECF No. 52 (N.D. Cal. Mar.

3   15, 2019), at 2 (Opp. at 9–10; Larson Decl. Ex. 8), the plaintiff also had already served

4   a Section 2019.210 disclosure, as well as "a voluminous set of documents" with

5   "hundreds of pages" of extensive highlighting identifying its alleged trade secrets.

6   Larson Decl. Ex. 8, at 88–89 (*ScaleMP*, slip op. at 5–6).  And in *Advanced Modular*

7   *Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 831 (2005) (Opp. at 9–10),

8   the plaintiff likewise had already served *three* trade secret disclosures—the third of

9   which was deemed by the court to be Section 2019.210-compliant.  Plaintiffs here, by

10  contrast, have not even served a single disclosure.

11      Moreover, Plaintiffs are wrong to suggest that the court in *Advanced Modular*

12  held that "hinging" was the test or a requirement under Section 2019.210.  Instead, the

13  court found that on the facts of that particular case, "[a] fair reading of this complaint

14  and its 10 causes of action compels the conclusion that each and every cause of action

15  hinges upon the factual allegation that AMS misappropriated Sputtered Films' trade

16  secrets."  *Id.* at 834.  The court then held that where a complaint is comprised of causes

17  of action that are "factually dependent on the misappropriation allegation," discovery

18  cannot proceed absent a Section 2019.210-compliant disclosure.  The Plaintiffs here

19  already *conceded* that their patent claims are "factually dependent on the same [trade

20  secret] misappropriation allegations" in this case.  Dkt. No. 57, at 4, 7 (quoting Lerner

21  Decl. Ex. I, at 206).  Plaintiffs made that concession because it is obvious from the face

22  of their claims—they allege that the Apple Watch 4 and 5 incorporate their alleged trade

23  secrets and infringe their patents.

24      In their Opposition Brief, Plaintiffs attempt for the first time to distance

25  themselves from this concession, which was made orally during the course of the parties'

26  meet and confers on this topic.  *See* Opp. at 12.  Notably, however, Plaintiffs did not

27  contemporaneously refute Apple's April 7, 2020 summary of the meet and confer in

28  which that statement was made.  *See* Samplin Decl. Ex. A [A. Powell April 7, 2020

1    Response on behalf of Plaintiffs].  Plaintiffs already conceded that this is a case of the

2    type for which *Advanced Modular* requires a Section 2019.210-compliant disclosure.  It

3    is improper for Plaintiffs to attempt to backtrack from that concession now, and argue

4    that their claims do not relate, particularly when they are withholding the description of

5    the alleged trade secrets at issue in their trade secret claim.  Indeed, even if Plaintiffs had

6    never made their concession, it is obvious from the face of Plaintiffs' pleading that their

7    trade secret misappropriation and patent claims hinge on the same facts.  Plaintiffs are

8    accusing the *same* products of incorporating their trade secrets and infringing their

9    patents.  Plaintiffs' position in the Opposition Brief about these claims is inconsistent

10   with their own pleading.

11        In any event, here, unlike in *Advanced Modular*, the factual dependency of *claims*

12   is not at issue—but rather the nature of *specific RFPs*.  Plaintiffs' RFPs at issue in

13   Apple's Motion for a Protective Order that Judge Early denied (Plaintiffs' RFPs 5

14   through 25) seek discovery about the very categories of information Plaintiffs claim as

15   trade secrets.  As Apple explained in its Motion (Mot. at 12)—and as Judge Early found

16   (Dkt. No. 54, at 8)—several of these RFPs seek the same categories of information

17   Plaintiffs allege in the First Amended Complaint ("FAC") (*see* Lerner Decl. Ex. F,

18   ¶ 211) as comprising their trade secrets.  *Compare, e.g.*, RFP No. 12 ("All technical

19   documents   for   the   Accused   Products,   including,   without   limitation,   product

20   specifications, diagrams, schematics, memos, conceptual or technical drawings, design

21   requirements documents, design capture documents, technical requirements documents,

22   product briefs, product plans, product requirements, document trees, assembly design

23   documents, design review documents, system design documents, fabricating drawings,

24   manufacturing   documents,   and   technical   meeting   minutes."),   *with*   FAC   ¶ 211

25   ("Plaintiffs' technical information includes product plans, engineering plans, product

26   briefs, technical drawings, technical specifications, technical data, product designs,

27   system designs, design captures, assembly design requirements, risk analysis, test

28   procedures and results, test data, design review documents, software requirement

1    specifications, technical know-how, manufacturing techniques and procedures,

2    installation techniques and procedures, and invention disclosures."). Plaintiffs did not

3    even attempt to refute this obvious overlap in their Opposition Brief. The information

4    Plaintiffs seek in the RFPs here is identical to the information Plaintiffs allege as their

5    trade secrets, and therefore the discovery is indisputably trade secret related. Plaintiffs

6    must comply with Section 2019.210 to discover confidential documents responsive to

7    the RFPs at issue. *See E. & J. Gallo Winery v. Instituut Voor Landbouw-En*

8    *Visserijonderzoek*, 2018 WL 3062160, at *6 (E.D. Cal. June 19, 2018).

9          Plaintiffs also cite a scheduling order (Opp. at 10 (citing *Brocade Commc'ns Sys.,*

10   *Inc. v. A10 Networks, Inc.*, No. 5:10-cv-03428-LHK, ECF No. 72 (N.D. Cal. Mar. 24,

11   2011))), in which the court provided a general framework for future discovery but did

12   not assess specific RFPs to determine whether they "relate to" a CUTSA claim. In

13   addition, Plaintiffs cite *Bryant v. Mattel, Inc.*, 2007 WL 5430888, at *3 n.3 (C.D. Cal.

14   May 18, 2007) (Opp. at 11), which merely addresses Section 2019.210 in a footnote,

15   and Apple has not found a single court that has relied on it. Neither of these cases help

16   Plaintiffs' position, which is contradicted by the plain language of Section 2019.210,

17   with which this Court ordered them to comply.

18              **b)    Judge Early's Order Is Inconsistent with the Purposes of**

19                      **Section 2019.210.**

20         Judge Early's Order likewise is inconsistent with the purposes of the statute with

21   which this Court ordered Plaintiffs to comply.

22         ***Promoting Well-Investigated Claims***. Apple argued in its Motion that by opening

23   the door for Plaintiffs to gain access to Apple's confidential information before serving

24   a Section 2019.210-compliant description of their alleged trade secrets, Judge Early's

25   Order permits Plaintiffs to build their trade secret case on Apple's information, instead

26   of requiring Plaintiffs to demonstrate that their trade secret claim was "well-

27   investigated" and not "meritless" at the outset. Mot. at 10 (quoting *Jobscience, Inc.*,

28   2014 WL 852477, at *5 ("A true trade secret plaintiff ought to be able to identify, up

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 82 of 300   Page ID
#:12147
Case 8:20-cv-00048-JVS-JDE   Document 71   Filed 07/06/20   Page 13 of 20   Page ID #:5483

1   front, and with specificity the particulars of the trade secrets without any discovery.")).

2   Plaintiffs did not refute this argument in their Opposition Brief, and therefore concede

3   it.  *Cf. Silva v. U.S. Bancorp*, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) (finding

4   that plaintiff conceded that his claim "should be dismissed by failing to address

5   Defendants' arguments in his Opposition"); *Tatum v. Schwartz*, 2007 WL 419463, at *3

6   (E.D. Cal. Feb. 5, 2007) (plaintiff "tacitly concede[d] th[e] claim by failing to address

7   defendants' argument in her opposition").

8           ***Preventing Discovery Abuse***.  Courts throughout this Circuit have recognized that

9   an important purpose of Section 2019.210 is that it "prevents plaintiffs from using the

10   discovery process as a means to obtain the *defendant's* trade secrets."  *Comput. Econs.,*

11   *Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999) (emphasis added);

12   *see also M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D.

13   Cal. Sept. 3, 2019); *Lilith Games (Shanghai) Co. v. uCool, Inc.*, 2015 WL 4149066, at

14   *4 (N.D. Cal. July 9, 2015).  That is Apple's concern here—that Judge Early's Order

15   permits Plaintiffs to use patent-related discovery as a means to obtain *Apple's*

16   confidential information before identifying their own alleged trade secrets, instead of

17   preventing such discovery abuse.

18           Plaintiffs' efforts to distinguish Apple's cases on this score fall flat.  Apple need

19   not cite cases that "analyze the scope of discovery in a trade-secret case including patent

20   infringement claims" to make the basic point that Section 2019.210 is intended to,

21   among other things, prevent the type of discovery abuse that Judge Early's Order

22   threatens to facilitate here.  Opp. at 15.  The case law is clear that prevention of that type

23   of discovery abuse is at the heart of Section 2019.210.  *See, e.g.*, *Jobscience, Inc.*, 2014

24   WL 852477, at *5.  Indeed, in the cases Plaintiffs cite involving both trade secret and

25   patent claims in which the court permitted patent discovery to commence, the plaintiff

26   had already provided a Section 2019.210 disclosure or the Court had ordered production

27   of the disclosure by a date certain.  Plaintiffs therefore are wrong to suggest that Section

28   2019.210   serves   any   different   purpose   in   cases   involving   both   trade   secret

1  misappropriation and patent infringement claims.

2          As Apple explained in its Motion, Plaintiffs have already exhibited their intent to

3  delay describing their alleged trade secrets as long as possible by refusing to even

4  provide a date certain by which they will serve a Section 2019.210 disclosure, and Judge

5  Early's Order gives Plaintiffs the green light to continue their delay.  Mot. at 11.  If

6  Judge Early's Order is not reversed, Plaintiffs will have no incentive whatsoever to

7  comply with Section 2019.210 until after they obtain all of Apple's confidential

8  information through patent-related discovery for the very same products at issue in both

9  the patent and trade secret claims.  Plaintiffs' new offer to "provide their Section

10  2019.210 statement on the *same day* Apple provides its core technical documents and

11  other confidential discovery" (Opp. at 14) is a step in the right direction, but does not

12  solve the problem.  Section 2019.210 disclosures are heavily litigated—with trade secret

13  plaintiffs regularly ordered to amend, often on multiple occasions, before they achieve

14  the reasonable particularity threshold.  There is nothing preventing Plaintiffs from

15  agreeing to their proposed mutual exchange, and then providing a vague and unspecific

16  trade secret disclosure that leaves room for them to later claim ownership of the *Apple*

17  trade secrets they find in Apple's core technical documents and other confidential

18  information.[3]  That is the problem Section 2019.210 is intended to avoid, which would

19  be frustrated by Judge Early's Order requiring Apple to produce documents containing

20  *Apple* confidential information before Plaintiffs have identified their own alleged trade

21  secrets with reasonable particularity.

22          This frustration created by Judge Early's Order is the motivation for Apple's

23  present Motion.  Plaintiffs' suggestion that Apple is motivated by some desire to delay

24  "*all* patent discovery for months while it litigates" the sufficiency of Plaintiffs' Section

25  2019.210 statement (Opp. at 14 (emphasis added)) is, by contrast, demonstrably

26  incorrect.  Apple *already agreed* to produce patent-related discovery that is not also

27

28  [3] For example, Plaintiffs might simply provide the same list of broad categories of alleged trade secrets from their FAC (*see* FAC ¶ 211), which this Court rejected as inadequate even at the pleading stage (Dkt. No. 60).

Gibson, Dunn & Crutcher LLP

**Exhibit 9**
**-73-**

1   trade secret-related.  *See supra* at 4.  And the fact that Apple "signaled that it intends to

2   file *another* motion to dismiss" before receiving Plaintiffs' amended pleading is not

3   indicative of any intent by Apple to delay patent-related discovery as Plaintiffs contend.

4   *Id.*  Rather, it is a natural response to Plaintiffs' stated effort to attempt to replead a claim

5   that this Court already dismissed as insufficiently pled.  Any delay here is a problem of

6   Plaintiffs' own making.  Plaintiffs have refused to produce a Section 2019.210 disclosure

7   *for months*, including after this Court ordered Section 2019.210 compliance.

8        ***Framing Discovery and Enabling a Defense***.  Plaintiffs' refusal to provide a

9   Section 2019.210-compliant disclosure makes it impossible for the Court to properly

10  frame the scope of trade secret-related discovery or for Apple to defend itself against

11  Plaintiffs' trade secret claim.  Plaintiffs' attempt to argue the contrary only highlights

12  the problem with their position.  Plaintiffs assert that the Court can easily frame the

13  appropriate discovery in this case because it can permit all "discovery that would

14  ordinarily be available in a patent infringement case. . . . without knowing if the

15  information is *also* relevant to" Plaintiffs' trade secret claim.  Opp. at 16–17.  But that

16  would turn Section 2019.210 on its head and leave the Court with no guidance by which

17  to determine if Plaintiffs are improperly attempting to discover information "related to"

18  their trade secret claim without first serving a Section 2019.210 statement—exactly as

19  Plaintiffs are attempting to do here.  Plaintiffs' other argument—that the proper scope

20  of *patent*-related discovery would still have to be determined even in the absence of a

21  trade secret claim (*id.* at 17)—is a strawman.  Without a trade secret claim, there would

22  be no need for the Court or Apple to determine which discovery is "related to" trade

23  secrets, because there would be no danger that Plaintiffs could abuse the discovery

24  process to manufacture a trade secret claim out of Apple's confidential information.

25       In sum, Plaintiffs' strained interpretation and Judge Early's erroneous application

26  of the Scheduling Order to stay only discovery that is solely related to Plaintiffs' trade

27  secret claim frustrates each of these purposes and effectively renders the ordered

28  discovery stay meaningless.

**Exhibit 9**
**-74-**

1        In an effort to detract attention from this obvious problem with their position,

2    Plaintiffs lead the policy section of their Opposition Brief by arguing that Apple

3    requested that Judge Early "rewrite" the Scheduling Order.  Opp. at 13.  Not so.  The

4    Scheduling Order clearly and unambiguously mandates compliance with Section

5    2019.210.  *See* Dkt. No. 37, at 1.  And Section 2019.210 clearly and unambiguously

6    prohibits a trade secret plaintiff from commencing discovery relating to the trade secrets

7    before those trade secrets have been identified with reasonable particularity.  *See* Cal.

8    Civ. Proc. Code § 2019.210.  This is all consistent with Apple's argument on this Motion

9    (and in its underlying Motion for Protective Order), and therefore no rewrite of the

10    Scheduling Order was required.  By contrast, Plaintiffs' argument—i.e., that they are

11    absolved of Section 2019.210 compliance if they can show that their requested trade

12    secret-related discovery *also* relates to their patent claims—is patently *inconsistent* with

13    Section 2019.210 and, therefore, this Court's Scheduling Order incorporating that

14    statute.  *Plaintiffs* seek a rewrite of this Court's Scheduling Order, not Apple.

15        This is epitomized by the fact that Plaintiffs' interpretation of the sentence of the

16    Scheduling Order incorporating Section 2019.210—which Judge Early unfortunately

17    adopted—does not render the sentence "compatible" with Section 2019.210, but rather,

18    "contradictory" thereto.  A. Scalia and B. Garner, *Reading Law: The Interpretation of*

19    *Legal Texts* 180 (2012); *see also, e.g.*, *Radzanower v. Touche Ross & Co.*, 426 U.S. 148,

20    155 (1976) (noting that if two sources of law "are capable of co-existence, it is the duty

21    of the courts . . . to regard each as effective").  Judge Early should have read the

22    Scheduling Order in a manner consistent with Section 2019.210, by concluding that the

23    stay applies to trade secret-*related* discovery only—i.e., to discovery that relates solely

24    to trade secrets or to trade secrets and other matters, but *not* to discovery that is not in

25    *any way* related to the trade secrets.  Judge Early's alternative read—which renders the

26    discovery stay meaningless and frustrates the purposes of Section 2019.210—is contrary

27    to law and should be reversed accordingly.  *See* Mot. at 8–9.

28

**B.      Apple's Requested Relief Is Consistent with Section 2019.210.**

This Court should reverse Judge Early's Order and grant Apple's underlying Motion for Protective Order because the motion is consistent with the language and purpose of Section 2019.210 and, in turn, the Scheduling Order incorporating the statute.

Apple's Motion for Protective Order requested relief from Plaintiffs' RFPs seeking discovery "relating to the trade secret[s]" in the absence of a Section 2019.210-compliant disclosure, as well as a Section 2019.210-compliant disclosure.  Plaintiffs asserted a claim of trade secret misappropriation in this case.  While the claim has since been dismissed, Plaintiffs committed to amending their pleading to reassert the claim in the short term.  *See* Opp. at 6.  Section 2019.210 is clear that trade secret plaintiffs like these Plaintiffs must describe their alleged trade secrets with reasonable particularity, yet these Plaintiffs have thrown up every roadblock in resistance to doing so.  Apple has been asking Plaintiffs to describe the trade secrets that Plaintiffs allege are incorporated in the Apple Watch Series 4 and 5 for *more than five months* now.  That is precisely what Section 2019.210 requires of these Plaintiffs—and therefore Apple's Motion for Protective Order requesting that the Court order the same is entirely consistent with the statute.  Plaintiffs' argument that Judge Early's decision should be affirmed alternatively or in addition "because Apple requested relief that far exceeds the scope of Section 2019.210" (Opp. at 18) therefore is another strawman.  A request for a Section 2019.210-compliant disclosure is consistent with, and does not "far exceed," the statute.[4]

Plaintiffs appear to take issue with the specific elements of the Section 2019.210 disclosure Apple requested in its Motion for Protective Order.  *See* Opp. at 18.  But those elements are not new or novel.  They are the elements of Section 2019.210 disclosures that plaintiffs routinely have been ordered to provide by courts within this Circuit.  For

---

[4]  Plaintiffs' suggestion that Apple pursued this relief in its Motion for Protective Order *after* this Court issued its Scheduling Order (Opp. at 18) is wrong.  Consistent with Local Rule 37-2.2, Apple sent Plaintiffs its portion of the Joint Stipulation for the Motion on April 8, 2020, and did not edit it after that point (Samplin Decl. ¶ 5)—including after the Court entered the Scheduling Order on April 17, 2020 (Dkt. No. 37).

Gibson, Dunn & Crutcher LLP

**Exhibit 9
-76-**

1   example, in *Jobscience*, the court ordered the plaintiff to file and serve, consistent with

2   Section 2019.210, a trade secret disclosure with *each* of the elements requested by Apple

3   in its Motion for Protective Order:

4       For each trade secret, plaintiff must file, and serve on counsel, a statement,
        under seal, that should include: (1) a summary of the specific trade secret;
5       (2) the background of the trade secret and a description of how each secret
        has been derived independent, actual or potential economic value by virtue of
6       not being generally known to the public; (3) a description of how each
        secret has been the subject of reasonable efforts to maintain its secrecy; and
7       finally (4) each of the precise claimed trade secrets, numbered, with a list
8       of the specific elements for each, as claims would appear at the end of a
        patent.  Plaintiff may not take any discovery *at all* until a satisfactory
9       statement has been filed under seal and served on counsel for defendants.

10

11  2014 WL 852477, at *5.  The courts in *Openwave Messaging, Inc. v. Open-Xchange,*

12  *Inc.*, 2018 WL 2117424 (N.D. Cal. May 8, 2018) and *Gatan, Inc. v. Nion Co.*, 2018 WL

13  2117379 (N.D. Cal. May 8, 2018) did the same.  *See Openwave Messaging*, 2018 WL

14  2117424, at *4 (stating that to satisfy Section 2019.210, Openwave's trade secret

15  disclosure must include "'(1) a summary of the specific trade secret; (2) the background

16  of the trade secret and a description of how each secret has derived independent, actual

17  or potential economic value by virtue of not being generally known to the public; (3) a

18  description of how each secret has been the subject of reasonable efforts to maintain its

19  secrecy; and finally (4) each of the precise claimed trade secrets, numbered, with a list

20  of the specific elements for each, as claims would appear at the end of a patent'")

21  (quoting *Jobscience*, 2014 WL 852477, at *5); *Gatan*, 2018 WL 2117379, at *4

22  (deeming plaintiff's trade secret disclosure insufficient under Section 2019.210, and

23  ordering a revised disclosure that includes "(i) a summary in plain English of the specific

24  trade secrets at issue and (ii) a numbered list of the trade secrets with a corresponding

25  list of specific elements for each, as claims would appear at the end of a patent"); *see*

26  *also, e.g.*, *Bal Seal Eng'g, Inc. v. Nelson Prod., Inc.*, 2017 WL 10543565, at *3, *6 (C.D.

27  Cal. Mar. 13, 2017) (deeming adequate a trade secret disclosure that included (1) "a two-

28

1   page narrative describing the 'general category' of trade secrets at issue, (2) a list of
2   [plaintiff's] customers and the [plaintiff's] part numbers at issue for each customer
3   (which list contains 26 customers), and (3) drawings or design proposals that 'describe
4   the selected engineering solution and specifications for each part number'") (citation
5   omitted).

6        Even if Apple's requested relief was inconsistent with Section 2019.210 (it is not),
7   that would not be a basis on which to affirm Judge Early's Order as Plaintiffs suggest.
8   Opp. at 18.  If, for example, the Court agrees that Apple should not be required to
9   produce documents in response to Plaintiffs' RFPs 5 through 25 in the absence of a
10   Section 2019.210-compliant disclosure, but nonetheless does not feel compelled to order
11   Plaintiffs to produce such a disclosure on a specified timeline, it could grant only that
12   portion of Apple's Motion for Protective Order seeking relief from the RFPs.  The Court
13   is not constrained by the specific relief requested in Apple's Motion.

14        The bottom line is that Plaintiffs have refused for months to prosecute their trade
15   secret claim, in an effort to get access to *Apple's* confidential information and trade
16   secrets before doing so.  That is inconsistent with the plain language and purpose of
17   Section 2019.210.  Apple requests nothing more than Plaintiffs' prompt compliance with
18   that statute.

19   ### III.   <u>CONCLUSION</u>

20        Based on the foregoing and on Apple's moving brief, Apple respectfully requests
21   that the Court reverse Judge Early's Order (Dkt. No. 54), grant Apple's Motion for
22   Protective Order (Dkt. No. 43), and order Plaintiffs to promptly comply with Section
23   2019.210.
24   //
25   //
26   //
27
28

Gibson, Dunn &
Crutcher LLP

Exhibit 9
-78-

1   Dated:  July 6, 2020              Respectfully submitted,

2

3                            JOSHUA H. LERNER
                            H. MARK LYON
                            BRIAN M. BUROKER

4                            BRIAN A. ROSENTHAL
                            ILISSA SAMPLIN

5                            ANGELIQUE KAOUNIS
                            BRIAN K. ANDREA

6                            GIBSON, DUNN & CRUTCHER LLP

7

8                     By:  */s/ Joshua H. Lerner*
                            Joshua H. Lerner

9

10                    *Attorneys for Defendant Apple Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 10

1    Joseph R. Re (Bar No. 134479)
     joseph.re@knobbe.com
2    Stephen C. Jensen (Bar No. 149894)
     steve.jensen@knobbe.com
3    Perry D. Oldham (Bar No. 216016)
     perry.oldham@knobbe.com
4    Stephen W. Larson (Bar No. 240844)
     stephen.larson@knobbe.com
5    KNOBBE, MARTENS, OLSON &
     BEAR, LLP
6    2040 Main Street, Fourteenth Floor
     Irvine, CA  92614
7    Telephone:  (949)-760-0404
     Facsimile:  (949)-760-9502
8
     Adam B. Powell (SBN 272725)
9    adam.powell@knobbe.com
     KNOBBE, MARTENS, OLSON &
10   BEAR, LLP
     12790 El Camino Real
11   San Diego, CA 92130
     Telephone:  (858) 707-4000
12   Facsimilie:   (858) 707-4001

13   *Attorneys for Plaintiffs Masimo
     Corporation and Cercacor Laboratories,*
14   *Inc.*

     JOSHUA H. LERNER, SBN 220755
       jlerner@gibsondunn.com
     GIBSON, DUNN & CRUTCHER LLP
     555 Mission Street Suite 3000
     San Francisco, CA 94105
     Tel.: 415.393.8200 / Fax: 415.393.8306

     H. MARK LYON, SBN 162061
       mlyon@gibsondunn.com
     GIBSON, DUNN & CRUTCHER LLP
     1881 Page Mill Road
     Palo Alto, CA 94304-1211
     Tel.:  650.849.5300 / Fax: 650.849.5333

     BRIAN M. BUROKER, *pro hac vice*
       bburoker@gibsondunn.com
     GIBSON, DUNN & CRUTCHER LLP
     1050 Connecticut Avenue, N.W.
     Washington, DC 20036
     Tel.: 202.955.8541 / Fax: 202.467.0539

     BRIAN A. ROSENTHAL, *pro hac vice*
       brosenthal@gibsondunn.com
     GIBSON, DUNN & CRUTCHER LLP
     200 Park Avenue
     New York, NY 10166-0193
     Tel.: 212.351.2339 / Fax: 212.817.9539

     *Attorneys for Defendant Apple Inc.*
     [Additional counsel on following page]

15
16
17

18                     **UNITED STATES DISTRICT COURT**
     **FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**
19

20   MASIMO CORPORATION,
     CERCACOR LABORATORIES, INC.,          CASE NO. 8:20-cv-00048-JVS (JDEx)

21            Plaintiffs,                  **JOINT STIPULATION REGARDING
                                           DEFENDANT APPLE INC.'S MOTION**
22        v.                               **FOR PROTECTIVE ORDER
                                           BARRING TRADE SECRET-**
23   APPLE INC.,                           **RELATED DISCOVERY ABSENT
                                           TRADE SECRET IDENTIFICATION**
24            Defendant.

25                                         Hr'g Date/Time:  May 21, 2020, at 10 a.m.
                                           Courtroom:         6A
26                                         Judge:             Hon. John D. Early
                                           Discovery Cutoff:  July 5, 2021
27                                         Pretrial Conference:  March 21, 2022
                                           Trial:             April 5, 2022
28

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 92 of 300   Page ID
#:12157
Case 8:20-cv-00048-JVS-JDE   Document 43-1   Filed 04/30/20   Page 2 of 45   Page ID
#:2967

1

2      ILISSA SAMPLIN, SBN 314018
         isamplin@gibsondunn.com
3      GIBSON, DUNN & CRUTCHER LLP
       333 South Grand Avenue
4      Los Angeles, CA 90071-3197
       Tel.: 213.229.7000 / Fax: 213.229.7520

5      ANGELIQUE KAOUNIS, SBN 209833
         akaounis@gibsondunn.com
6      GIBSON, DUNN & CRUTCHER LLP
       2029 Century Park East Suite 4000
7      Los Angeles, CA 90067
       Tel.: 310.552.8546 / Fax: 310.552.7026
8
       *Attorneys for Defendant Apple Inc.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

---

JOINT STIP. RE APPLE'S MOT. FOR PROT. ORDER              CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 10**
**-81-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 93 of 300   Page ID
#:12158
Case 8:20-cv-00048-JVS-JDE   Document 43-1   Filed 04/30/20   Page 3 of 45   Page ID
#:2968

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTORY STATEMENTS ...................................................................1

    A.   Apple's Introductory Statement .......................................................1

    B.   Plaintiffs' Introductory Statement ....................................................3

II.   The Discovery Requests At Issue .................................................................6

III.   APPLE'S POSITION .....................................................................................10

    A.   FACTS ...........................................................................................10

    1.   Plaintiffs Impermissibly Sought To Obtain Discovery Of Apple's
Confidential Information In The *True Wearables* Case. .........................10

    2.   Plaintiffs Failed To Allege Their Purported Trade Secrets With Any
Particularity. ...............................................................................11

    3.   Plaintiffs Ignored Apple's Request For A Section 2019.210
Disclosure And Propounded Trade Secret-Related Discovery...............11

    4.   Plaintiffs Filed An FAC That Merely Expanded The Generic
Categories Of Information Claimed As Trade Secrets. .........................12

    5.   Plaintiffs' Requests For Production Nos. 5-25 Seek Premature
Trade-Secret Related Discovery From Apple...........................................12

    6.   The Parties Met And Conferred About Plaintiffs' Premature
Requests For Production. ..........................................................17

    B.   ARGUMENT ..................................................................................18

    1.   That Plaintiffs Filed Their CUTSA Claim In Federal Court Does
Not Mean Plaintiffs Need Not Describe Their Secrets...........................19

    2.   Plaintiffs Have Not Identified Their Purported Trade Secrets, And
The FAC Does Not Suffice..........................................................20

    3.   Plaintiffs' Refusal To Comply With Section 2019.210 Frustrates
Each Of The Four Purposes Of The Statute...........................................21

        a)   Plaintiffs Have Not Demonstrated That Their Trade
Secret Claim Has Any Merit. ..............................................22

        b)   Plaintiffs Have Not Demonstrated That They Are
Actually Looking For *Their* Secrets In Apple's Files........24

        c)   Plaintiffs Have Not Assisted The Court In Framing
The Scope Of Trade Secret-Related Discovery. .................26

        d)   Plaintiffs Have Not Enabled Apple To Defend Against
Their Trade Secret Misappropriation Claim. .....................27

1    C.    CONCLUSION .........................................................................28

2  IV.  PLAINTIFFS' POSITION ...............................................................29

3    A.    Judge Selna Already Decided Patent Discovery Is Not Stayed...............29

4    B.    Section 2019.210 Does Not Bar Patent Discovery ..................................30

5    C.    The Discovery At Issue Is Patent Discovery ...........................................34

6    D.    Apple's Other Arguments Are Irrelevant and Incorrect ..........................37

7    E.    Conclusion............................................................................................40

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Defendant Apple Inc. ("Apple"), as movant, and Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor"), as respondents, submit the following Joint Stipulation regarding Apple's Motion for a Protective Order.  Pursuant to Local Rule 37-1, the parties met and conferred in good faith in an effort to resolve the Motion.

## I.   INTRODUCTORY STATEMENTS

### A.   Apple's Introductory Statement

Apple seeks an order barring Plaintiffs from taking trade secret-related discovery until Plaintiffs describe their trade secrets with reasonable particularity consistent with California Code of Civil Procedure Section 2019.210 ("Section 2019.210").   Apple wants to address the trade secret claim in this action as quickly as possible, and therefore has repeatedly requested that Plaintiffs comply with the procedures set out in Section 2019.210 since the outset of the case.  Plaintiffs have refused.

District courts throughout California, *including this Court*, recognize that Section 2019.210 serves an essential function in cases like this one—it discourages meritless trade secret claims, prevents plaintiffs from abusing the discovery process to access the defendant's trade secrets, assists the court in framing the appropriate scope of discovery, and enables a defendant to form "complete and well-reasoned defenses" against claims of misappropriation.  *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D. Cal. Sept. 3, 2019) (Early, J.).

The need for a reasonable description of the alleged secrets in this case is acute.  Plaintiffs' allegations of trade secret misappropriation raise *every* problem that Section 2019.210 is intended to solve:

*First*, the only description of the alleged trade secrets provided by Plaintiffs—in their First Amended Complaint—provides no hint as to the merits of the misappropriation claim.  To the contrary, Plaintiffs' original complaint claimed a non-exhaustive list of seven broad categories of information, such as "business plans" and "technical data."  Lerner Decl. Ex. C (Compl.) ¶ 181.  Plaintiffs then compounded the

1 problem by amending to allege a new list of *50* generalized categories of information,

2 *including but not limited to* "technical information, sales and marketing information, and

3 other business information," as well as unspecified combinations.  *Id.* Ex. G (FAC)

4 ¶ 211.  Plaintiffs allege thousands of potential trade secrets in non-descript categories

5 that cover every aspect of Plaintiffs' business.  These broad categories and combinations

6 are insufficient to plead a claim, and are *unquestionably* insufficient to satisfy Plaintiffs'

7 obligation to identify their alleged secrets with particularity before taking trade secret-

8 related discovery.  Furthermore, Plaintiffs concede that many, if not all, of their

9 purported secrets are now public.  Plaintiffs cannot force Apple to search for the

10 proverbial needle in the haystack by claiming generalized categories of information that

11 might or might not qualify as trade secrets.

12     *Second*, Plaintiffs repeatedly have tried to access Apple's confidential information

13 before they identify their own alleged trade secrets.  Just *one day before* Plaintiffs filed

14 this case, they sought discovery of Apple's confidential information through a third-

15 party subpoena in *Masimo Corp. et al. v. True Wearables Inc. et al.*, No. 8:18-cv-02001-

16 JVS-JDE (the "*True Wearables* Case").  The subpoena created the obvious risk that

17 Section 2019.210 guards against:  Plaintiffs could review whatever confidential

18 information about health monitoring technology they could find in Apple's files and

19 claim it as their own.  Plaintiffs jettisoned their subpoena after Apple sought a protective

20 order and their strategy was exposed.  The requests for production at issue here are

21 merely a continuation of that strategy.  Plaintiffs characterize the requests for production

22 as patent-related, but that is nothing more than an attempted end-run around Section

23 2019.210.  The requests for production, on their face, seek the very categories of

24 information that Plaintiffs allege as their trade secrets.  Plaintiffs cannot use their patents

25 as a vehicle by which to review Apple's confidential information in another effort to

26 concoct a misappropriation claim.

27     *Third*, until Plaintiffs specifically define their alleged trade secrets, neither the

28 Court nor the parties can tailor or manage the discovery process in this case.  Among

1   other things, it is impossible to measure proportionality under Rule 26.  Indeed, Plaintiffs

2   allege that their list of about 50 generalized categories of purported trade secret

3   information, plus unspecified combinations of those categories, is not even complete.

4   Plaintiffs state that their trade secrets "include, but are not limited to," 50 general

5   categories of information (Lerner Decl. Ex. G (FAC) ¶ 211)—a caveat that renders the

6   scope of the already broad categories unbounded, making it impossible to efficiently and

7   effectively conduct discovery in this case.

8          *Fourth*, without a clear articulation of the trade secrets at issue, Apple cannot

9   formulate complete and well-reasoned defenses.  A reasonable description of the alleged

10  secrets will assist Apple in addressing basic issues, including the statute of limitations

11  and, relatedly, which alleged secrets were public and when.  Furthermore, if there are

12  any valid secrets here—and Apple does not believe there are—an adequate description

13  will enable Apple to curtail any purported future harm to Plaintiffs.

14         For these reasons, Apple respectfully requests that the Court grant a protective

15  order prohibiting Plaintiffs from "commencing discovery relating to the [alleged] trade

16  secret[s]" until Plaintiffs provide a Section 2019.210 disclosure that describes their

17  purported secrets with the "reasonable particularity" the law requires.  Cal. Code Civ.

18  Proc. § 2019.210.

19  **B.     Plaintiffs' Introductory Statement**

20         Apple's Motion is moot because Judge Selna already decided the issues raised in

21  Apple's Motion.  After Apple served its portion of the joint stipulation, the parties

22  submitted a Rule 26(f) report addressing whether and how Section 2019.210 applies to

23  this case.  *See* Powell Decl., Ex. 8.  Like it does here, Apple argued Section 2019.210

24  bars discovery of information concerning Plaintiffs' patent case that may *also* be

25  relevant to trade secrets.  *Id*. at 13, 16-20.  Apple "request[e]d that Plaintiffs be barred

26  from commencing" such discovery until Plaintiffs serve a Section 2019.210 statement.

27  *Id*. at 20.  The parties proposed patent-specific dates, including dates for infringement

28  contentions and Apple disclosing "core technical documents" concerning the "accused

1    products." *Id.* at 25-26.  Apple argued, however, that these patent-specific dates should

2    be "subject to Plaintiffs providing an adequate identification of their alleged trade secrets

3    in compliance with Section 2019.210 insofar as such an identification is a prerequisite

4    to such discovery." *Id*. at 26.

5         Judge Selna rejected Apple's argument and resolved the dispute, holding: "The

6    Court ***adopts the patent specific dates***.  The Court stays the ***trade secret discovery only***

7    pending compliance with 2019.210." Powell Decl., Ex. 9 (emphasis added).  After the

8    ruling, Plaintiffs stated they will provide a Section 2019.210 statement before serving

9    trade secret discovery and asked Apple to withdraw this Motion because the requests at

10   issue seek ***patent discovery***, which is ***not*** stayed.  Apple refused, maintaining that ***all***

11   discovery concerning the accused products is barred because it is also relevant to trade

12   secrets.  Apple thus seeks a do-over through this Joint Stipulation.

13        Apple's objective is obvious: Apple intends to litigate the sufficiency of whatever

14   Section 2019.210 statement Plaintiffs serves and thereby delay ***all*** technical discovery.

15   Apple asserts that, in a "typical case," the plaintiff "serves a Section 2019.210 disclosure

16   and the parties litigate the deficiencies."  Joint Stipulation at 20.  Allowing Apple to

17   delay patent discovery while it litigates the sufficiency of Plaintiffs' Section 2019.210

18   disclosure directly contradicts Judge Selna's ruling adopting the "patent specific dates"

19   and staying "trade secret discovery only." Powell Decl., Ex. 9.  This Court should refrain

20   from modifying what the Order already says: patent discovery must move forward.

21        Patent discovery is necessary to comply with Court-ordered deadlines, including

22   infringement contentions.  The requests seek basic information about the accused

23   products.  Some are even directed towards particular claim limitations. For example,

24   RFP No. 16 seeks information about components that "separate light emitted by LEDs

25   from other components of any of the Accused Products."  That is relevant at least to

26   claim language reciting "a light block forming an enclosing wall between the light

27   emission source and the plurality of detectors . . . ."  Powell Decl., Ex. 1 at Claim 1.

28        Even if Judge Selna had not already entered his Order, nothing would support

1    Apple's argument. Apple recites Section 2019.210, but ignores the case law interpreting

2    the statute. *See* Cal. Code Civ. Proc. § 2019.210 ("before commencing discovery

3    relating to the trade secret, the party alleging the misappropriation shall identify the trade

4    secret with reasonable particularity"). Apple argues the "relating to" language bars all

5    patent discovery if the requested information is ***also*** relevant to trade secrets. But the

6    California Court of Appeals construed Section 2019.210 as barring discovery of other

7    claims only if the claim is "factually dependent" or "hinges upon" the misappropriation

8    of trade secrets. *See Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal.

9    App. 4th 826, 835 (2005).

10    As a result, California courts routinely require a defendant to produce technical

11    documents relevant to patent infringement even if the documents could also be relevant

12    to a trade secret claim. *See, e.g.*, *Space Data Corp. v. X*, 2017 WL 3007078, *4 (N.D.

13    Cal. July 14, 2017). Similarly, this Court refused to bar discovery of "drawings and

14    designs for unreleased products" under Section 2019.210 because the information was

15    "relevant to claims other than the trade secret misappropriation claim, such as

16    [plaintiff]'s claim for copyright infringement." *Bryant v. Mattel*, 2007 WL 5430888, *3

17    n.3 (C.D. Cal. May 18, 2007); *see also E. & J. Gallo Winery v. Instituut Voor Landbouw-*

18    *En Visserijonderzoek*, 2018 WL 3062160, at *6 (E.D. Cal. June 19, 2018) (finding

19    Section 2019.210 disclosure was insufficient, but holding the parties "shall proceed with

20    discovery on non-trade secret claims" while plaintiffs prepared an amended disclosure).

21    Apple originally relied on *Advanced Modular* during the meet-and-confer.

22    However, Plaintiffs pointed out that *Advanced Modular* supports Plaintiffs because, in

23    this case, patent infringement is not "factually dependent" on misappropriation of trade

24    secrets. Apple did not argue otherwise, instead abandoning its reliance on *Advanced*

25    *Modular* and relying exclusively on the "related to" language of Section 2019.210.

26    Nothing supports Apple's sweeping interpretation of the statute.

27    Apple also sets forth a series of largely irrelevant and factually misleading

28    arguments. For example, Apple argues the First Amended Complaint broadened

Gibson, Dunn &
Crutcher LLP

**Exhibit 10**
**-88-**

1   Plaintiffs' trade secret definition.  The amendment actually provided additional detail

2   about the categories of trade secrets identified in the initial Complaint.  Apple also

3   asserts "Plaintiffs concede that many, if not all, of their purported secrets are now

4   public."  Joint Stipulation at 2.  That is incorrect.  Plaintiffs alleged Apple published

5   *some* of their trade secrets in patent publications, but never alleged all of their trade

6   secrets are public.

7   Apple also complains about the timing of a subpoena Plaintiffs served on Apple

8   in *Masimo Corp. et al. v. True Wearables Inc. et al.*, No. 8:18-cv-02001-JVS-JDE (the

9   "*True Wearables* Case").  The timing was dictated by the rapidly approaching close of

10   fact discovery.  Once the Court extended the fact discovery deadline, Plaintiffs withdrew

11   the subpoena to determine if it was necessary in view of the extended discovery deadline.

12   Plaintiffs cannot be faulted for trying to avoid unnecessarily burdening the courts.

13   Nothing supports Plaintiffs attempt to bar *all* technical discovery—including

14   patent discovery—until Apple agrees that Plaintiffs have complied with Section

15   2019.210.  Judge Selna already resolved this issue and held that patent discovery should

16   proceed.  Plaintiffs respectfully request the Court deny Apple's motion and order Apple

17   to substantively respond to patent discovery, including RFP Nos. 5-25.

18   ## II.    THE DISCOVERY REQUESTS AT ISSUE

19   In accordance with Local Rule 37-2.1, below are the verbatim Requests for

20   Production that are the subject of this Motion.  Apple has not yet served responses

21   because the parties agreed to extend its time to respond until April 30, 2019.

22   **REQUEST FOR PRODUCTION NO. 5:**

23   Documents sufficient to show the design and operation of the

24   Accused Products.

25   **REQUEST FOR PRODUCTION NO. 6:**

26   All documents and things describing the operation of the Accused

27   Products, including, without limitation, product brochures, user manuals,

28   instructional materials, and directions for use.

**REQUEST FOR PRODUCTION NO. 7:**

All training materials concerning any of the Accused Products, including, without limitation, training manuals, training videos, presentations, and handouts.

**REQUEST FOR PRODUCTION NO. 8:**

All marketing materials concerning any of the Accused Products, including, without limitation, advertisements, promotional materials, pamphlets, brochures, product catalogs, websites, product brochures, informational materials, and videos.

**REQUEST FOR PRODUCTION NO. 9:**

All publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 10:**

All videos or DVDs demonstrating or showing the operation of the Accused Products.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and things that refer or relate to the use, effectiveness, capabilities, functionality, or characteristics of the physiological monitoring features of any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 12:**

All technical documents for the Accused Products, including, without limitation, product specifications, diagrams, schematics, memos, conceptual or technical drawings, design requirements documents, design capture documents, technical requirements documents, product briefs, product plans, product requirements, document trees, assembly design documents, design review documents, system design documents,

1  fabricating drawings, manufacturing documents, and technical meeting
2  minutes.

3  **REQUEST FOR PRODUCTION NO. 13:**

4      All documents and things that refer or relate to technical
5  information, specifications, and research data for any of the Accused
6  Products.

7  **REQUEST FOR PRODUCTION NO. 14:**

8      All documents and things concerning the research, design, and
9  development of any of the Accused Products or any component of any of
10 the Accused Products, including, without limitation, laboratory notebooks,
11 invention disclosures, memoranda, product specifications, conceptual or
12 technical drawings, schematics, diagrams, technical specifications,
13 meeting minutes, presentations, and prototypes.

14 **REQUEST FOR PRODUCTION NO. 15:**

15     All documents and things that refer or relate to optical or structural
16 components of any of the Accused Products, including emitters, sensors,
17 detectors, filters, covers, lenses, masks, housing, adhesives, openings,
18 magnets, magnetic shields, carriers, bodies, interior surfaces, walls,
19 protrusions, and sensor subsystems.

20 **REQUEST FOR PRODUCTION NO. 16:**

21     All documents and things that refer or relate to any components,
22 surface areas, or adhesives that separate light emitted by LEDs from other
23 components of any of the Accused Products.

24 **REQUEST FOR PRODUCTION NO. 17:**

25     Documents sufficient to show the operation of any algorithms used
26 to monitor any physiological parameter in any of the Accused Products.

27 **REQUEST FOR PRODUCTION NO. 18:**

28

Gibson, Dunn &
Crutcher LLP

Exhibit 10
-91-

1  Documents sufficient to show the operation of any heart rate
2  algorithms used in any of the Accused Products.

3  **REQUEST FOR PRODUCTION NO. 19:**

4  All documents and things that refer or relate to the development of
5  the heart rate algorithms for any of the Accused Products.

6  **REQUEST FOR PRODUCTION NO. 20:**

7  All documents and things that refer or relate to selection between
8  any heart rate algorithms used in any of the Accused Products.

9  **REQUEST FOR PRODUCTION NO. 21:**

10  All documents and things that refer or relate to power consumption
11  by any heart rate algorithms used in any of the Accused Products.

12  **REQUEST FOR PRODUCTION NO. 22:**

13  All documents and things that refer or relate to the operation of any
14  LEDs used to determine pulse rate or heart rate for any of the Accused
15  Products, including but not limited to documents and things that refer or
16  relate to LED timing, duty cycle, current, or power usage.

17  **REQUEST FOR PRODUCTION NO. 23:**

18  All documents and things that refer or relate to collecting first heart
19  rate metrics using a first technique during a first period and collecting
20  second heart rate metrics using a second technique during a second period
21  for any of the Accused Products.

22  **REQUEST FOR PRODUCTION NO. 24:**

23  All documents and things that refer or relate to changes in collecting
24  heart rate metrics based on user input for any of the Accused Products.

25  **REQUEST FOR PRODUCTION NO. 25:**

26  All documents and things that refer or relate to changes in collecting
27  heart rate metrics based on a change in operating mode for any of the
28  Accused Products.

Gibson, Dunn &
Crutcher LLP

Exhibit 10
-92-

1

### III.   APPLE'S POSITION

2

**A.   FACTS**

3       For the past 44 years, Apple has been able to revolutionize the mobile and

4    personal computing markets because of its significant investment in technological

5    innovation, and its ability to translate its trade secrets into transformative products, such

6    as the Apple Watch.   Years after the Apple Watch became a commercial success,

7    Plaintiffs filed this lawsuit alleging trade secret misappropriation.   Plaintiffs now

8    improperly seek unfettered access to confidential information relating to the Apple

9    Watch without first describing their alleged secrets.

10       Below, Apple sets forth a timeline of the facts relevant to this Motion.

11          **1.   Plaintiffs Impermissibly Sought To Obtain Discovery Of**

12          **Apple's Confidential Information In The *True Wearables* Case.**

13       One day before Plaintiffs filed the complaint in this case, Plaintiffs served a

14    subpoena on Apple in the *True Wearables* Case.   *See* Lerner Decl. ¶ 2 & Ex. A.   As this

15    Court is likely aware, on November 8, 2018, Plaintiffs filed the *True Wearables* Case

16    against former Apple employee, Marcelo Lamego, and his company, True Wearables,

17    alleging claims of breach of contract, breach of fiduciary duty, trade secret

18    misappropriation, and patent infringement.   Plaintiffs' subpoena to Apple, served nearly

19    one year after discovery began in the *True Wearables* Case, sought information that was

20    not relevant to the *True Wearables* Case, but on its face pertained to the trade secret

21    misappropriation claim Plaintiffs intended to file against Apple the very next day, in this

22    case.

23       After Apple filed a motion to quash and requested a protective order that, *inter*

24    *alia*, identified Plaintiffs' requirement under Section 2019.210 to identify their

25    purported trade secrets with reasonable particularity before commencing trade secret-

26    related discovery from Apple (*Id.* ¶ 3 & Ex. B), Plaintiffs withdrew the subpoena to

27    Apple in the *True Wearables* Case.

28

JOINT STIP. RE APPLE'S MOT. FOR PROT. ORDER   10          CASE NO. 8:20-cv-00048-JVS (JDEx)

Exhibit 10
-93-

1
2

    **2.    Plaintiffs Failed To Allege Their Purported Trade Secrets With Any Particularity.**

3          Plaintiffs' original complaint, filed January 9, 2020, alleged that Apple

4  misappropriated seven broad categories of generic business or technical information,

5  "including, but not limited to, Plaintiffs' business plans, know-how, technical

6  information, technical data, designs, manufacturing techniques and other business

7  information."  Lerner Decl. Ex. C (Compl.) ¶ 181.  Even though Plaintiffs alleged that

8  Apple had disclosed the alleged trade secrets "by filing patent applications containing

9  Masimo's Confidential Information" and disclosed their "Confidential Information . . .

10  in [] patent filings," the complaint failed to identify the portions of Apple's patent filings

11  containing their alleged trade secrets.  *Id.* ¶¶ 185, 187.

12
13

    **3.    Plaintiffs Ignored Apple's Request For A Section 2019.210 Disclosure And Propounded Trade Secret-Related Discovery.**

14          After Plaintiffs filed their complaint, the parties met and conferred on February

15  25, 2020.  Lerner Decl. ¶ 5.  Apple explained that the complaint failed to identify

16  Plaintiffs' alleged trade secrets with sufficient particularity.  *Id.*

17          Shortly thereafter, on March 6, 2020, Apple requested in writing that Plaintiffs

18  identify (by line and page number) their trade secrets that purportedly were disclosed in

19  any published patent application filed by Apple or in any patent held by Apple, as alleged

20  in the complaint.  *Id*. Ex. E.  Apple explained that because Section 2019.210 requires

21  Plaintiffs to describe all of their alleged trade secrets with "reasonable particularity"

22  before commencing trade secret-related discovery, Plaintiffs should be able to identify

23  those secrets promptly.  *Id*.  Plaintiffs ignored this request.

24          Instead, on March 16, 2020, Plaintiffs propounded 25 requests for production on

25  Apple, the majority of which relate to Apple's confidential information—thereby

26  evidencing Plaintiffs' intent to commence trade secret-related discovery in the absence

27  of a Section 2019.210-compliant disclosure.  *Id.* ¶ 8 & Ex. F.

28

Gibson, Dunn &
Crutcher LLP

**Exhibit 10**
**-94-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 106 of 300   Page ID
#:12171
Case 8:20-cv-00048-JVS-JDE   Document 43-1   Filed 04/30/20   Page 16 of 45   Page ID
#:2981

### 4.   Plaintiffs Filed An FAC That Merely Expanded The Generic Categories Of Information Claimed As Trade Secrets.

After Apple filed a motion to dismiss for failure to state a claim, asserting, among other things, that Plaintiffs failed to allege any trade secrets with particularity (*see* Lerner Decl. Ex. D), Plaintiffs voluntarily elected to amend their complaint.  *See* Dkt. No. 21. On March 25, 2020, Plaintiffs filed their First Amended Complaint (the "FAC").  Lerner Decl. ¶ 9 & Ex. G.  Rather than correct the deficiencies in the original complaint, the FAC lists *more—and in some cases, even broader*—categories of generic business information as Plaintiffs' claimed trade secrets.  *Id.* Ex. G (FAC) ¶ 211.  The number of categories of purported trade secrets multiplied from seven to approximately *50*, if not more—given that Plaintiffs now claim that combinations of the 50 categories may *also* be secrets.  In addition, the FAC alleges that the following catch-all categories of illusory information are trade secrets:

- "combinations and selections of the above information";
- "knowledge of the varying importance of the information";
- "knowledge for selecting which information and technology are important for improving reliability, improving measurements, and how to successfully combine and implement them to achieve the desired functionality"; and
- "negative information, what works well under certain conditions, and trade-offs of selecting certain techniques."

*Id*.  Plaintiffs' FAC was not accompanied by a Section 2019.210 disclosure.  To date, Plaintiffs have refused to serve a Section 2019.210 disclosure on Apple.

### 5.   Plaintiffs' Requests For Production Nos. 5-25 Seek Premature Trade-Secret Related Discovery From Apple.

At issue in this Stipulation are Plaintiffs' Requests for Production Nos. 5 through 25.  *See* Lerner Decl. Ex. F.  Each of these requests seek to uncover Apple's confidential information.

Specifically, 12 of the Requests seek confidential information about the design

and/or operation of the Apple Watch's non-invasive monitoring technology—which is not public information, but rather some of Apple's most closely guarded, confidential information:

> **REQUEST FOR PRODUCTION NO. 5:**
> Documents sufficient to show the design and operation of the Accused Products.

> **REQUEST FOR PRODUCTION NO. 6:**
> All documents and things describing the operation of the Accused Products, including, without limitation, product brochures, user manuals, instructional materials, and directions for use.

> **REQUEST FOR PRODUCTION NO. 7:**
> All training materials concerning any of the Accused Products, including, without limitation, training manuals, training videos, presentations, and handouts.

> **REQUEST FOR PRODUCTION NO. 10:**
> All videos or DVDs demonstrating or showing the operation of the Accused Products.

> **REQUEST FOR PRODUCTION NO. 11:**
> All documents and things that refer or relate to the use, effectiveness, capabilities, functionality, or characteristics of the physiological monitoring features of any of the Accused Products.

> **REQUEST FOR PRODUCTION NO. 12:**
> All technical documents for the Accused Products, including, without limitation, product specifications, diagrams, schematics, memos, conceptual or technical drawings, design requirements documents, design capture documents, technical requirements documents, product briefs, product plans, product requirements, document trees, assembly design documents, design review documents, system design documents, fabricating drawings, manufacturing documents, and technical meeting minutes.

**REQUEST FOR PRODUCTION NO. 13:**

All documents and things that refer or relate to technical information, specifications, and research data for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 14:**

All documents and things concerning the research, design, and development of any of the Accused Products or any component of any of the Accused Products, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, conceptual or technical drawings, schematics, diagrams, technical specifications, meeting minutes, presentations, and prototypes.

**REQUEST FOR PRODUCTION NO. 15:**

All documents and things that refer or relate to optical or structural components of any of the Accused Products, including emitters, sensors, detectors, filters, covers, lenses, masks, housing, adhesives, openings, magnets, magnetic shields, carriers, bodies, interior surfaces, walls, protrusions, and sensor subsystems.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and things that refer or relate to any components, surface areas, or adhesives that separate light emitted by LEDs from other components of any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 21:**

All documents and things that refer or relate to power consumption by any heart rate algorithms used in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 22:**

All documents and things that refer or relate to the operation of any LEDs used to determine pulse rate or heart rate for any of the Accused Products, including but not limited to documents and things that refer or relate to LED timing, duty cycle, current, or power usage.

Gibson, Dunn & Crutcher LLP

**Exhibit 10**
**-97-**

Four of the Requests seek materials pertaining to the algorithms Apple developed to monitor heart rates or other "physiological parameters"—again, Apple's confidential information:

> **REQUEST FOR PRODUCTION NO. 17:**
> Documents sufficient to show the operation of any algorithms used to monitor any physiological parameter in any of the Accused Products.
>
> **REQUEST FOR PRODUCTION NO. 18:**
> Documents sufficient to show the operation of any heart rate algorithms used in any of the Accused Products.
>
> **REQUEST FOR PRODUCTION NO. 19:**
> All documents and things that refer or relate to the development of the heart rate algorithms for any of the Accused Products.
>
> **REQUEST FOR PRODUCTION NO. 20:**
> All documents and things that refer or relate to selection between any heart rate algorithms used in any of the Accused Products.

Three of the Requests seek information about how the Apple Watch collects heart rate metrics—confidential technical information that Apple does not publicly disclose, but rather, safely guards:

> **REQUEST FOR PRODUCTION NO. 23:**
> All documents and things that refer or relate to collecting first heart rate metrics using a first technique during a first period and collecting second heart rate metrics using a second technique during a second period for any of the Accused Products.
>
> **REQUEST FOR PRODUCTION NO. 24:**
> All documents and things that refer or relate to changes in collecting heart rate metrics based on user input for any of the Accused Products.
>
> **REQUEST FOR PRODUCTION NO. 25:**
> All documents and things that refer or relate to changes in collecting heart rate metrics based on a change in operating mode for any of the Accused Products.

Exhibit 10
-98-

1  And two of the Requests seek materials related to Apple's marketing strategy for the

2  Apple Watch—which, again, is Apple's confidential and sensitive information that

3  Apple does not disclose publicly:

**REQUEST FOR PRODUCTION NO. 8:**
All marketing materials concerning any of the Accused Products, including, without limitation, advertisements, promotional materials, pamphlets, brochures, product catalogs, websites, product brochures, informational materials, and videos.

**REQUEST FOR PRODUCTION NO. 9:**
All publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to any of the Accused Products.

Plaintiffs therefore seek a soup-to-nuts blueprint of the non-invasive monitoring technology developed by their competitor, Apple—from its inception, to its design, to how the physical parts function together, to the way in which Apple markets its product containing the technology to consumers—without first identifying in a Section 2019.210 disclosure any trade secrets belonging to Plaintiffs that Apple allegedly misappropriated to create the technology.

Plaintiffs contend that certain of these Requests seek information pertaining to their patent claims. Even if that is true, the language of the Requests makes crystal clear that the Requests *also* seek information *relating to* Plaintiffs' trade secret claim. Indeed, Plaintiffs use the term "Accused Products" throughout these Requests, defined as "Apple Watch Series 4 or later, as well as the combination of Apple Watch Series 4 or later with an Apple iOS Product." These are the very same Apple Watches that Plaintiffs contend incorporate their trade secrets. Plaintiffs' Requests for Production 5 through 25 therefore seek discovery that should not commence until Plaintiffs have identified their alleged trade secrets with reasonable particularity under Section 2019.210. *See* Cal. Code Civ. Proc. § 2019.210 ("before commencing discovery *relating to* the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable

Gibson, Dunn & Crutcher LLP

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 111 of 300   Page ID
#:12176
Case 8:20-cv-00048-JVS-JDE   Document 43-1   Filed 04/30/20   Page 21 of 45   Page ID
#:2986

1    particularity") (emphasis added).

2         To be clear, Apple does not seek to withhold responsive, *public* documents

3    pending a Section 2019.210 disclosure.   In particular, Apple acknowledges that

4    Plaintiffs' Requests for Production 5 through 12 seek certain information that is public,

5    and Apple is prepared to produce responsive, public documents—as indicated in its

6    responses and objections to Plaintiffs' Requests for Production.   But to the extent

7    Requests 5 through 12 also seek *non-public* documents, Plaintiffs' discovery of those

8    documents should not commence until Plaintiffs serve an adequate Section 2019.210

9    disclosure.  The remainder of Plaintiffs' Requests for Production—Requests 13 through

10   25—appear to seek only non-public documents and, therefore, Plaintiffs' discovery of

11   documents responsive to those Requests should not commence until Plaintiffs serve an

12   adequate Section 2019.210 disclosure.

13
                    **6.    The Parties Met And Conferred About Plaintiffs' Premature
                            Requests For Production.**
14

15        On March 28, 2020, Apple initiated the meet-and-confer process in connection

16   with this Stipulation.  Lerner Decl. ¶ 11.

17        On April 6, 2020, the parties' counsel met and conferred by telephone.  *Id.* ¶ 13.

18   During that call, Apple reiterated its position that Plaintiffs are required to identify their

19   trade secrets with reasonable particularity pursuant to Section 2019.210 and for the

20   purpose of efficient case management, and therefore, that Plaintiffs are not permitted to

21   proceed with discovery "related to" the alleged trade secrets until an adequate disclosure

22   has been made.  Plaintiffs expressed the view that unless the discovery Requests were

23   "solely" related to trade secrets, they were proper, to which Apple responded that

24   Section 2019.210 does not require that discovery be "solely" related to the trade secrets

25   to be stayed absent a proper trade secret disclosure.  That would defeat the purpose of

26   Section 2019.210, as a plaintiff could simply claim that its discovery touches on a non-

27   trade secret claim.  The test is whether discovery is "related" to the alleged trade secrets.

28   *Id.*  Notably, Plaintiffs *admit* that they are alleging that the "Apple Accused Products"

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 112 of 300   Page ID
#:12177
Case 8:20-cv-00048-JVS-JDE   Document 43-1   Filed 04/30/20   Page 22 of 45   Page ID
#:2987

1    identified as the subject of their patent infringement claims incorporate "some" of

2    Plaintiffs' claimed trade secrets. *Id.*

3        Even though they claim to be ready and able to describe their secrets, Plaintiffs

4    have insisted that Apple serve an interrogatory requesting that Plaintiffs identify their

5    trade secrets. *Id.* Ex. J. Apple responded as it has numerous times previously:

> [T]urning to the question of an interrogatory, as we have explained multiple
> times, Plaintiffs' demand that Apple serve an interrogatory is improper. To
> begin with, Plaintiffs have never agreed—and are not agreeing now—that
> Plaintiffs will not commence discovery relating to trade secrets until they
> provide an adequate description of their alleged secrets.  That is critical
> because, as we explained on the call, there is nothing stopping Plaintiffs
> from cutting and pasting the vague description of the secrets in the FAC
> into an interrogatory response (served 30 days, if not more, after the
> interrogatory is propounded) and claiming that they have complied.  This
> will not solve the lack of disclosure problem—it will just invite motion
> practice, which will further delay the process.  Therefore, contrary to
> Plaintiffs' suggestion that an interrogatory would be faster here, a
> disclosure pursuant to Section 2019.210 will in fact be faster, as well as
> more efficient and fair to the parties.

16   *Id.*

17       The parties have not been able to resolve their dispute informally, and therefore

18   are proceeding with this Stipulation.

19   **B.    ARGUMENT**

20       Apple's position here is not complicated.  *First*, Plaintiffs cannot escape the

21   requirement set forth in Section 2019.210 by claiming it is a state court rule.  It is well-

22   established that in state or federal court, Plaintiffs bringing a claim under California's

23   Uniform Trade Secrets Act ("CUTSA," Cal. Civ. Code § 3426.1 *et seq.*) must provide a

24   description of their alleged secrets before they take trade secret-related discovery.

25   *Second*, the broad allegations in the FAC are not sufficient to satisfy Plaintiffs' burden

26   to identify their alleged secrets with reasonable particularity.  It is well-established that

27   the pleading standard is less demanding—and serves a different purpose—than Section

28   2019.210's requirement that Plaintiffs provide an adequate identification of the alleged

Gibson, Dunn &
Crutcher LLP

**Exhibit 10
-101-**

secrets.  *Third*, application of Section 2019.210 is essential in this case because Plaintiffs' conduct frustrates the common-sense considerations that underlie Section 2019.210 and which are essential to effective case management.

### 1.    That Plaintiffs Filed Their CUTSA Claim In Federal Court Does Not Mean Plaintiffs Need Not Describe Their Secrets.

Plaintiffs refuse to provide a Section 2019.210 disclosure in this case based on their contention that Section 2019.210 does not apply to CUTSA cases filed in federal court.  That is wrong.  Federal courts in California have held that Section 2019.210 applies to CUTSA cases filed in federal court.  Moreover, as this Court has already recognized, Section 2019.210 can and should be applied in federal court under the Court's discretion as a matter of case management.  It assists the Court and the parties in efficiently litigating the case.  *M/A-COM Tech. Sols.*, 2019 WL 4284523, at *2 (finding "that, under the particular facts of this case, the procedural requirements of Section 2019.210 are warranted and appropriate to assist in the orderly and expeditious handling of discovery").

This Court is far from alone in managing discovery in trade secret cases by applying Section 2019.210.  *See, e.g.*, *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018) ("After review of the law and circumstances in this case, the Court will require that Plaintiffs identify their trade secrets with reasonable particularity compliant with Section 2019.210.  Applying Section 2019.210 here will narrow and clarify the basic issues between the parties, thereby furthering the goal of efficiency for the court and litigants."); *Swarmify, Inc. v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018) ("Insofar as controlling law on this subject remains ambiguous, district courts may also exercise discretion in case management to enforce Section 2019.210, and the undersigned judge has in fact done so."); *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014) ("This order agrees and the trade secret disclosure provisions in Section 2019.210 of the California Code of Civil Procedure shall be applied here.").

1   Tellingly, after two and a half weeks of meet and confers on this topic, Plaintiffs

2   provided one case in support of their position—*SMC Networks, Inc. v. Hitron Techs.,*

3   *Inc.*, 2013 WL 12136372 (C.D. Cal. Mar. 15, 2013)—which is from 2013 and has never

4   been followed by another court.  The Rutter Guide, after citing *SMC Networks*, observes

5   that "[e]ven if state law limitations on discovery are not binding in federal actions, the

6   district court will often grant a protective order (FRCP 26(c), ¶ 11:1060 ff) that

7   accomplishes the same result."  Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial

8   Ch. 11(III)-A.

9   As set forth below, application of Section 2019.210 is particularly essential to the

10  management of this case.

### 2. Plaintiffs Have Not Identified Their Purported Trade Secrets, And The FAC Does Not Suffice.

13  This is not the typical case where the trade secret plaintiff serves a

14  Section 2019.210 disclosure and the parties litigate the deficiencies.  Here, Plaintiffs

15  have refused to serve *any* Section 2019.210 disclosure at all.  That is a violation of

16  Section 2019.210, and it calls into question the basis for Plaintiffs' trade secret claim in

17  the first place.

18  Rather than provide a description of their secrets, Plaintiffs have argued that their

19  FAC is sufficient.  Not so.  Again, the FAC sets forth a non-exhaustive list of

20  approximately 50 broad categories of information (*see* Lerner Decl. Ex. G (FAC) ¶ 211),

21  and alleges that Plaintiffs' "trade secrets" also include unspecified "combinations and

22  selections" of those 50 broad categories (*id*).  That is not sufficient to survive a motion

23  to dismiss.  And even if the FAC did adequately plead a trade secret—which it does

24  not—that still would not satisfy Plaintiffs' obligation to describe the alleged secret with

25  specificity.  A finding that allegations are sufficient to survive a motion to dismiss does

26  not mean the trade secret allegations are sufficient under Section 2019.210.  *See, e.g.,*

27  *Gatan, Inc. v. Nion Co.*, 2018 WL 2117379, at *2 (N.D. Cal. May 8, 2018) (explaining

28  that the district court's finding that trade secret allegations were sufficient to survive a

motion to dismiss "did not prejudge whether plaintiff's trade secret allegations satisfied § 2019.210," and concluding that the disclosures were insufficient under Section 2019.210).[1]  Thus, Plaintiffs cannot hide behind a flawed FAC and demand access to Apple's confidential files to manufacture a trade secret claim.  Unless and until Plaintiffs serve an adequate Section 2019.210 disclosure, they should not be permitted to commence with trade secret-related discovery in this case.

### 3.   Plaintiffs' Refusal To Comply With Section 2019.210 Frustrates Each Of The Four Purposes Of The Statute.

Permitting Plaintiffs to commence with trade secret-related discovery in the absence of a sufficient Section 2019.210 disclosure would frustrate the important four-pronged purpose of the statute.

The policy behind Section 2019.210 is straightforward.  The statute was enacted "to curb unsupported trade secret lawsuits routinely commenced to harass competitors and former employees."  *Computer Econs., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999).  The California legislature "understood that plaintiffs in trade secret cases are often unable to identify any trade secrets," and that such claims therefore are "especially prone to discovery abuse."  *Id.*  By requiring a plaintiff to identify its trade secrets early and with particularity, and restricting the plaintiff's ability to engage in discovery until it does so, Section 2019.210 serves four distinct purposes: Section 2019.210 (1) "promotes well-investigated claims and dissuades the filing of meritless trade secret complaints"; (2) "prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets"; (3) "assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's

---

[1]  Indeed, where, as here, the alleged trade secrets reside in "a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1346 (2009); *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968) (plaintiff "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade").

Gibson, Dunn &
Crutcher LLP

**Exhibit 10**
**-104-**

discovery requests fall within that scope"; and (4) "enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation." *Id.* at 985; *see also, e.g.*, *M/A-COM Tech. Sols., Inc.*, 2019 WL 8108729, at *2 (stating that Section 2019.210's "reasonable particularity" requirement should be understood in light of this four-pronged purpose of the statute). Plaintiffs' refusal to comply with Section 2019.210 interferes with each of these goals and will continue to do so unless this Court enters the protective order Apple requests.

### a)   Plaintiffs Have Not Demonstrated That Their Trade Secret Claim Has Any Merit.

In the absence of a Section 2019.210-compliant disclosure, Plaintiffs have done nothing to demonstrate that they have a CUTSA claim justifying discovery of Apple's confidential information. Even a cursory review of Plaintiffs' sole attempt at a list of their purported trade secrets makes clear that Plaintiffs have no idea what, if any, relevant trade secrets they actually possess:

> Plaintiffs own trade secrets that include, but are not limited to, Plaintiffs' technical information, sales and marketing information, and other business information relating to non-invasive monitoring of physiological parameters and products to perform such monitoring. Plaintiffs' technical information includes product plans, engineering plans, product briefs, technical drawings, technical specifications, technical data, product designs, system designs, design captures, assembly design requirements, risk analysis, test procedures and results, test data, design review documents, software requirement specifications, technical know-how, manufacturing techniques and procedures, installation techniques and procedures, and invention disclosures. Plaintiffs' sales and marketing information includes product plans, business plans, customer information, sales pipelines, proposal and quote generation tools, pricing models, pricing schedules, sales training materials, product training materials, marketing and launch plans, marketing analysis, and competitive analysis. Plaintiffs' other business information includes information for successfully operating a noninvasive patient monitoring company, including personnel information, supplier information, and other business spreadsheets and analysis. Plaintiffs trade secrets also include combinations and selections

Gibson, Dunn & Crutcher LLP

Exhibit 10
-105-

1    of the above information, and knowledge of the varying importance of the
2    information.  Plaintiffs trade secrets also include knowledge for selecting
3    which information and technology are important for improving reliability,
4    improving measurements, and how to successfully combine and implement
5    them to achieve the desired functionality.  Plaintiffs' trade secrets also
     include negative information, what works well under certain conditions,
     and trade-offs of selecting certain techniques.

6    Lerner Decl. Ex. G (FAC) ¶ 211.

7            As a threshold matter, the very first line of Plaintiffs' allegation is problematic—

8    using expansive terms like "including" weighs against a finding that secrets have been

9    identified with particularity.  *M/A-COM Tech. Sols., Inc.*, 2019 WL 4284523, at *2

10   (citing *Gatan, Inc.*, 2018 WL 2117379, at *3 (noting the "use of catchall words such as

11   'including' weighs against a finding that the designation satisfies § 2019.210")).

12           The 50 broad categories here, which expand to thousands of broad categories

13   when one accounts for Plaintiffs' vague allegation that the secrets include combinations,

14   is equally problematic.  As this Court previously ruled in another case, "catchall

15   descriptions, lists of categories of alleged trade secrets in broad terms, or a listing of

16   concepts that the plaintiff asserts constitute its trade secret information are all

17   insufficient" bases on which to permit a plaintiff to proceed to discovery in a trade

18   secrets case.  *M/A-COM Tech. Sols., Inc.*, 2019 WL 8108729, at *2 (internal quotations

19   omitted) (prohibiting commencement of discovery until plaintiffs provide supplemental

20   disclosures identifying their purported trade secrets with reasonable particularity); *Loop*

21   *AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1113-1114 (N.D. Cal. 2016) (finding 53

22   paragraphs of asserted trade secret disclosures were not identified with reasonable

23   particularity under Section 2019.210); *Perlan Therapeutics*, 178 Cal. App. 4th at 1350

24   ("Perlan is not entitled to include broad, 'catch-all' language as a tactic to preserve an

25   unrestricted, unilateral right to subsequently amend its trade secret statement.").  But

26   that is the *only* type of information Plaintiffs have supplied Apple with to date.  For

27   example, the FAC's general categories of "technical drawings," "technical know-how,"

28   and "business plans" provide Apple with zero indication about what Plaintiffs

Gibson, Dunn &
Crutcher LLP

**Exhibit 10**
**-106-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 118 of 300   Page ID
#:12183
Case 8:20-cv-00048-JVS-JDE   Document 43-1   Filed 04/30/20   Page 28 of 45   Page ID
#:2993

1    specifically claim are their trade secrets, and instead force Apple—and the Court—to

2    simply "guess at the specifics."  *Loop AI Labs Inc.*, 195 F. Supp. 3d at 1115 (staying

3    discovery of trade secret claims where disclosure was insufficient).  Such generalized

4    descriptions fall short of the specificity the law requires, and, in the absence of any

5    Section 2019.210 disclosure, let alone a reasonably particularized one, constitute the

6    hallmarks of a plaintiff with a meritless CUTSA claim.

7          Particular allegations in the FAC further underscore the problems with Plaintiffs'

8    CUTSA claim.  For example, Plaintiffs describe several categories of purported trade

9    secret information as including "knowledge" about the importance of the information in

10   the health monitoring business.  Lerner Decl. Ex. G (FAC) ¶ 211.  Plaintiffs thereby

11   anchor their CUTSA claim on a theory of inevitable disclosure that California does not

12   recognize (*Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463 (2002) ("Lest there

13   be any doubt about our holding, our rejection of the inevitable disclosure doctrine is

14   complete.")), and seek to thwart former employees' mobility (and competition

15   generally) in violation of California Business and Professions Code Section 16600.  And,

16   again, Plaintiffs allege that Apple incorporated Plaintiffs' undefined trade secrets into

17   Apple's patent applications (Lerner Decl. Ex. G (FAC) ¶ 218), yet Plaintiffs have failed

18   to identify the Apple patent applications that supposedly contain their secrets, let alone

19   where in the thousands of pages of these applications the secrets can be found.

20         A CUTSA claim requires a plaintiff with actual trade secrets, and, in the absence

21   of a Section 2019.210-compliant disclosure, Plaintiffs have done nothing but

22   demonstrate that they *do not* in fact possess relevant, actionable trade secrets.  Permitting

23   Plaintiffs to commence trade secret-related discovery simply is not warranted on this

24   record.

25              **b)      Plaintiffs Have Not Demonstrated That They Are
                          Actually Looking For *Their* Secrets In Apple's Files.**
26

27         Plaintiffs' continued refusal to identify their purported secrets likewise suggests

28   that Plaintiffs hope to sift through Apple's confidential information so that they can

**Exhibit 10
-107-**

1   claim it as their own.  Without a Section 2019.210 disclosure, Plaintiffs have failed to

2   demonstrate that their request for trade secret-related discovery is anything more than

3   an attempt to obtain *Apple's* confidential information.

4         Perhaps the most direct evidence of this improper motive is the third-party

5   subpoena Plaintiffs served on Apple in connection with the *True Wearables* Case just

6   *one day before* filing the complaint in this case.  Rather than simply identify their trade

7   secrets in this case, Plaintiffs attempted an end run around Section 2019.210 by serving

8   a subpoena on Apple in the *True Wearables* Case.  That subpoena on its face called for

9   confidential information from Apple relevant to the subject matter of this case—in a

10  transparent attempt to discover Apple's confidential information in connection with the

11  *True Wearables* Case and claim it as their own in *this* case.  When Plaintiffs were caught

12  red-handed, they withdrew the subpoena.

13        With the subpoena now withdrawn, Plaintiffs have sought expeditious access to

14  Apple's files via the discovery process in this case.  But a plaintiff in a trade secret case

15  is supposed to search the defendant's files for the *plaintiff's* confidential information

16  that was allegedly misappropriated.  In the absence of any identification by Plaintiffs of

17  reasonably particularized trade secrets to search for, it appears that Plaintiffs seek to

18  engage in the type of discovery abuse that was the California legislature's prime

19  motivation for enacting Section 2019.210 in the first place.  *See Computer Econs., Inc.*,

20  50 F. Supp. 2d at 992 (noting that in enacting Section 2019.210, the California legislature

21  "understood that plaintiffs in trade secret cases are often unable to identify any trade

22  secrets," and that such claims therefore are "especially prone to discovery abuse").

23  Plaintiffs should not be permitted to commence trade secret-related discovery in Apple's

24  files unless and until they are able to satisfy Section 2019.210, and thereby demonstrate

25  to Apple and to the Court that Apple's confidential information is not in fact what they

26  are after.

27

28

Gibson, Dunn &
Crutcher LLP

Exhibit 10
-108-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 120 of 300   Page ID
#:12185
Case 8:20-cv-00048-JVS-JDE   Document 43-1   Filed 04/30/20   Page 30 of 45   Page ID
#:2995

1
2

        **c)**     **Plaintiffs Have Not Assisted The Court In Framing The
Scope Of Trade Secret-Related Discovery.**

3              Plaintiffs' refusal to identify their trade secrets with anything close to "reasonable

4   particularity" also makes it impossible for the Court or Apple to properly frame the scope

5   of trade secret-related discovery.

6              First, the only list of Plaintiffs' purported trade secrets that currently exists—the

7   FAC's amorphous list of approximately 50 categories of "trade secrets," as well as

8   unidentified "combination" trade secrets (Lerner Decl. Ex. G (FAC) ¶ 211)—is so broad

9   that it essentially encompasses Plaintiffs' entire business.  Without a particularized trade

10   secret disclosure, it will be impossible for the Court and the parties to define the

11   permissible scope of trade secret-related discovery in this case.  As set forth above,

12   Plaintiffs' open-ended list that "includes" 50 vague categories means Plaintiffs could

13   amend at any time, which is utterly improper.  *Swarmify*, 2018 WL 2445515, at *3

14   ("Swarmify should not be allowed to drag Cloudflare into court based on meritless

15   arguments, only to reboot its alleged trade secrets lineup and try again when the opening

16   skirmish illuminates glaring flaws in Swarmify's case.").  The same is true of Plaintiffs'

17   demand for an interrogatory—Plaintiffs could amend their response.  Plaintiffs'

18   reference to undefined combinations only compounds the problem.  *E. & J. Gallo*

19   *Winery*, 2018 WL 3062160, at *5 ("Section 2019.210 mandates a more refined

20   description of each individual component and combination of components purported to

21   be a trade secret prior to commencing discovery on these claims.").

22             Second, without an adequate description of Plaintiffs' trade secrets, neither the

23   Court nor Apple will have any idea which secrets are in fact public.  Indeed, Plaintiffs

24   allege that their purported trade secrets were *already* disclosed in Apple's published

25   patent applications.  Therefore, Plaintiffs *must* know by page and line number where

26   their alleged secrets appear in Apple's patent applications.  Yet, Plaintiffs have twice

27   refused Apple's request for a disclosure identifying those page and line numbers.  *See*

28   Lerner Decl. ¶¶ 7, 12 & Exs. E & I.  This makes no sense and makes it impossible for

Gibson, Dunn &
Crutcher LLP

Exhibit 10
-109-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 121 of 300   Page ID
#:12186
Case 8:20-cv-00048-JVS-JDE   Document 43-1   Filed 04/30/20   Page 31 of 45   Page ID
#:2996

1  Apple to figure out where the alleged secrets lie.  *See Space Data Corp. v. X*, 2017 WL

2  5013363, at *2 (N.D. Cal. Feb. 16, 2017) ("Moreover, Space Data has not made clear

3  which aspects of its technology and other information are 'part of patents and pending

4  patent applications,' if any, and which are secret.")[2]; *Bladeroom Grp. Ltd. v. Facebook,*

5  *Inc.*, 2015 WL 8028294, at *4 (N.D. Cal. Dec. 7, 2015); *see also M/A-COM Tech. Sols.,*

6  *Inc.*, 2019 WL 8108729, at *4 ("[A]s a general matter, . . . identifying large numbers of

7  documents without any reference to specific pages does not provide an adequate

8  substitute for detailed information of the trade secrets, as a review of the documents may

9  not provide Defendants sufficient information to identify what precisely Plaintiffs are

10  asserting as a trade secret.").

### d)  Plaintiffs Have Not Enabled Apple To Defend Against Their Trade Secret Misappropriation Claim.

13  Finally, without a Section 2019.210 disclosure, Apple is not in a position to

14  formulate "complete and well-reasoned defenses" to Plaintiffs' claim of trade secret

15  misappropriation.  *M/A-COM Tech. Sols., Inc.*, 2019 WL 8108729, at *2.  The most

16  rudimentary example is Apple's inability to possibly formulate a defense to Plaintiffs'

17  allegation that Apple has already disclosed trade secrets belonging to Plaintiffs in Apple

18  patent applications (*see* Lerner Decl. Ex. G (FAC) ¶ 218), because Plaintiffs refuse to

19  identify those purported secrets in the first place.  Without this information, Apple

20  cannot determine whether the allegation has merit, Apple cannot determine whether it

21  has a viable defense, and Apple cannot take steps to remove the alleged trade secrets

22  from patent documents on a prospective basis—to prevent against the harm that

23  Plaintiffs contend will continue unabated.  Instead, Plaintiffs' non-exhaustive list of

24  dozens of vague categories has foisted on Apple the impossible task of deciphering

25  precisely what Plaintiffs claim is actually a trade secret.  *See Loop AI Labs Inc.*, 195 F.

---

[2] Like the court in *Bladeroom Group Ltd. v. Facebook, Inc.*, 2015 WL 8028294 (N.D. Cal. Dec. 7, 2015), the court in *Space Data* focused on the failure to distinguish between public and confidential information even at the pleadings stage.

Supp. 3d at 1115 (defendant could not develop an adequate defense where plaintiff's Section 2019.210 disclosure listed broad categories of potentially protectable secrets, forcing the defendant to "guess" what the actual secrets were); *see also Perlan Therapeutics*, 178 Cal. App. 4th at 1350 (Section 2019.210 disclosure deemed inadequate where plaintiff hid trade secrets "in plain sight" by "including surplusage and voluminous attachments").

Plaintiffs should not be permitted to proceed with trade secret-related discovery at the expense of Apple's ability to defend itself against Plaintiffs' trade secret-related claim.

## C.   CONCLUSION

For all of the aforementioned reasons, Apple respectfully requests that the Court grant its motion; enter a protective order prohibiting Plaintiffs from commencing any trade secret-related discovery (including, without limitation, discovery of any non-public documents responsive to Plaintiffs' Requests for Production 5 through 25) until Plaintiffs identify their alleged trade secrets with the reasonable particularity Section 2019.210 requires; and order Plaintiffs to serve on counsel a statement, under seal, that includes the following:

(1) a summary of the specific alleged trade secrets;

(2) the background of the trade secrets and a description of how each secret has derived independent, actual, or potential economic value by virtue of not being generally known to the public;

(3) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; and

(4) each of the precise claimed trade secrets, numbered with a list of the specific elements for each, as claims would appear at the end of a patent.

# IV.   PLAINTIFFS' POSITION

The Parties' conference of counsel addressed two issues: (1) whether Section 2019.210 applies in Federal Court and (2) if it applies, whether Section 2019.210 also bars patent discovery that may be relevant to the trade secret allegations.  Powell Decl., Ex. 6 at 1-2.  The parties briefed both issues in detail in a 26-page Rule 26(f) report, and Judge Selna decided both issues.  *Id.*, Exs. 7 & 8.  Apple should have withdrawn its Motion instead of unnecessarily burdening this Court.

## A.   Judge Selna Already Decided Patent Discovery Is Not Stayed

In the Rule 26(f) report, the parties presented extensive argument on whether and how Section 2019.210 applies to this case.  Powell Decl., Ex. 8 at 6-8 and 13-20.  Apple acknowledged Requests for Production ("RFP") Nos. 5-25 may "concern the asserted patents and technical information about the products accused of patent infringement . . .."  *Id.* at 7.  However, Apple argued it need not provide such discovery until after Plaintiffs provide a Section 2019.210 disclosure because the discovery is ***also*** relevant to Plaintiffs' trade secret claim.  *Id.* at 7-8.  The Rule 26(f) report contained a deadline to disclose "core technical documents" for infringement contentions.  *Id.* at 26.  But Apple argued such patent-specific dates should not apply until Plaintiffs provided an adequate Section 2019.210 disclosure.  *Id.* at 26, n.6 (stating "discovery-related dates that Apple proposes in this Presumptive Schedule of Pretrial Dates are subject to Plaintiffs providing an adequate identification of their alleged trade secrets in compliance with Section 2019.210").

Plaintiffs originally disputed the applicability of Section 2019.210 in Federal Court based on decisions from this Court holding that Section 2019.210 is a procedural rule that conflicts with Rule 26.  *Id.* at 13-14.  Plaintiffs also argued that, if Section 2019.210 applies, it cannot be used to bar patent discovery merely because the discovery could ***also*** be relevant to trade secrets.  *Id.* at 14-15.  As Plaintiffs explained:

> Apple has refused to provide any responsive information on the grounds
> that Apple believes the requests ***also*** relate to the trade secret allegations.

Exhibit 10
-112-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 124 of 300   Page ID
#:12189
Case 8:20-cv-00048-JVS-JDE   Document 43-1   Filed 04/30/20   Page 34 of 45   Page ID
#:2999

1    Accordingly, Apple is using a California state procedural rule concerning

2    trade secrets to preclude typical patent discovery.  Apple provides no case

3    law to support that position, which has been rejected by at least one court

4    in this District.  *See Bryant v. Mattel*, 2007 WL 5430888, *3 n.3 (C.D. Cal.

5    May 18, 2007) (refusing to limit discovery of product information under

6    Section 2019.210 because the information was also "relevant to claims

7    other than the trade secret misappropriation claim, such as Mattel's claim

8    for copyright infringement").

9    *Id.*  Plaintiffs also repeatedly "object[ed] to Apple's attempt to use a California state

10   procedural rule to bar all discovery, including patent discovery."  *Id.* at 11-12.

11       Judge Selna rejected Apple's request to stay patent deadlines by holding: "The

12   Court adopts the ***patent specific dates***.  The Court stays the ***trade secret discovery only***

13   pending compliance with Section 2019.210."  Powell Decl., Ex. 9 (emphasis added).

14   Thus, Judge Selna determined Section 2019.210 applies to "trade secret discovery

15   only"—not patent discovery that may also be relevant to trade secrets.  Accordingly, all

16   patent discovery should proceed.  Instead, Apple continues to refuse to produce any

17   technical discovery.

18       **B.     Section 2019.210 Does Not Bar Patent Discovery**

19       Even if Judge Selna had not ordered the patent case to proceed, nothing would

20   support Apple's assertion that Section 2019.210 bars all patent discovery on the accused

21   products because that information may ***also*** be relevant to trade secrets.   Section

22   2019.210 states: "In any action alleging the misappropriation of a trade secret under the

23   [CUTSA], before commencing discovery ***relating to*** the trade secret, the party alleging

24   the misappropriation shall identify the trade secret with reasonable particularity"

25   (emphasis added).  Apple asserts the "relating to" language means that ***all*** discovery as

26   to ***all*** causes of action is barred if it is ***also*** related in any way to the trade secret.  Joint

27   Stipulation at 16.  In doing so, Apple ignores that the California Court of Appeals

28   interpreted Section 2019.210 as barring discovery on other claims only if the claim

Gibson, Dunn &
Crutcher LLP

1  "*hinges upon* the factual allegations that [defendant] misappropriated [plaintiff's] trade

2  secrets." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826,

3  835 (2005) (barring contract discovery because the only alleged breach was for

4  disclosing trade secrets) (emphasis added).[3]   Similarly, Apple relies on *Perlan*

5  *Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333 (2009), but that case

6  acknowledged discovery may proceed on "claims not dependent upon proof of

7  [plaintiff]'s claim under the Uniform Trade Secrets Act." *Id.* at 1337 n.2 (noting the

8  trial court did not decide whether non-trade secret claims based "at least in part" on

9  misappropriation of trade secrets also included theories not dependent on proof of

10  misappropriation such that discovery could move forward on those theories).

11       Numerous courts—including at least one on which Apple relies—refuse to stay

12  discovery as to patent claims merely because the discovery could *also* relate to a trade

13  secret.  For example, Apple relies on *Space Data Corp. v. X*, 2017 WL 5013363, at *2

14  (N.D. Cal. Feb. 16, 2017), but omits that a later decision in the same case refused to stay

15  patent discovery that also related to trade secrets.  *See Space Data Corp. v. X*, 2017 WL

16  3007078, *4 (N.D. Cal. July 14, 2017).  Similar to this case, the court in *Space Data* had

17  "stayed trade secret discovery pending Space Data's identification of its trade secrets."

18  *Id.*  Like Apple, the defendant argued it should not have to produce "core technical

19  documents" relevant to patent infringement until after the plaintiff identified its trade

20  secrets.  *Id.*  The court rejected that argument because  "the patent infringement claims

21  asserted in this case are substantive and separate from the trade secret claims."  *Id.*

22       Similarly, in *ScaleMP, Inc. v. TidalScale, Inc.*, No. 18-CV-4716 EDL, Dkt. No.

23  52 (N.D. Cal. Mar. 15, 2019) (Powell Decl., Ex. 3), the defendant also argued it should

---

[3]    Apple's meet-and-confer letter quoted *Advanced Modular* in arguing Section 2019.210 bars discovery of other causes of action.  Powell Decl., Ex. 6 at 2.  Plaintiffs pressed Apple on how patent infringement was "factually dependent" on misappropriation of trade secrets. *Id.* ¶ 8.  Apparently recognizing *Advanced Modular* supports Plaintiffs, Apple avoids citing it (or any other case) to support its argument.

Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. for Prot. Order  31          Case No. 8:20-cv-00048-JVS (JDEx)

**Exhibit 10**
**-114-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 126 of 300   Page ID
#:12191
Case 8:20-cv-00048-JVS-JDE   Document 43-1   Filed 04/30/20   Page 36 of 45   Page ID
#:3001

1   not have to produce technical documents related to the patent claims until after the

2   Plaintiff complied with Section 2019.210.  *Id.* at 7.  The court rejected that argument,

3   explaining:

> 4    While Plaintiff's patent infringement claim is related to its trade secret
>
> 5    misappropriation claim in the sense that the alleged misappropriation led
>
> 6    to Defendant's development of infringing technology, the patent
>
> 7    infringement claim does not "hinge" on the misappropriation allegation.
>
> 8    Plaintiff's ability to succeed on the infringement claim is independent of
>
> 9    the viability of its misappropriation claim.  Thus, the statutory language
>
> 10   does not require a postponement of patent-related disclosures in this case,
>
> 11   even while Plaintiff revises its trade secret disclosures.

12   *Id.* at 8.  The court also rejected the same policy argument that Apple makes here that

13   all technical discovery should be barred to prevent a plaintiff from using technical

14   documents relevant to the patent case "to obtain Defendant's trade secrets."  *Id.* at 8-9.

15        In *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK,

16   Dkt. No. 72 (N.D. Cal. Mar. 24, 2011) (Powell Decl., Ex. 4), the court rejected the

17   defendant's attempt to avoid producing technical information in an action involving

18   trade secret, patent, and copyright claims.  The court held discovery "***unique*** to

19   Plaintiffs' claims of trade secret misappropriation" could not proceed until the plaintiff

20   complied with Section 2019.210.  *Id.* (emphasis added).  However, "[a]ll other discovery

21   shall commence now, including discovery of source code relevant to the copyright and

22   patent infringement claims."  *Id.*

23        Courts also refuse to stay discovery as to claims other than patent infringement

24   pending compliance with Section 2019.210.  For example, in *Bryant v. Mattel*, 2007 WL

25   5430888, *3 n.3 (C.D. Cal. May 18, 2007), the defendant argued that "discovery of

26   drawings and designs for unreleased products is barred unless and until [plaintiff]

27   complies with California Code of Civil Procedure section 2019.210."  *Id.*  The Court

28   rejected that argument because "[d]rawings and designs for unreleased products are

Gibson, Dunn &
Crutcher LLP

Exhibit 10
-115-

1   relevant to claims other than the trade secret misappropriation claim, such as [plaintiff]'s

2   claim for copyright infringement."  *Id.*

3         Apple relies on *E. & J. Gallo Winery v. Instituut Voor Landbouw-En*

4   *Visserijonderzoek*, 2018 WL 3062160, at *6 (E.D. Cal. June 19, 2018), but that decision

5   actually ***rejected*** a defendant's request to stay discovery relevant to contract and unfair

6   competition claims.   The court held that Section 2019.210 applies to trade secret

7   discovery, but held the parties "shall proceed with discovery on non-trade secret claims."

8   *Id.*  Similarly, Apple relies on *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1113-

9   1114 (N.D. Cal. 2016), but omits that an earlier decision in that case ***refused*** to stay

10  discovery relevant to claims other than the trade secret claim.  *See Loop AI Labs Inc. v.*

11  *Gatti*, 2015 WL 9269758, at *4 (N.D. Cal. Dec. 21, 2015); *see also Monolithic Power*

12  *Sys., Inc. v. Silergy Corp.*, 2015 WL 5948159, at *4 (N.D. Cal. Oct. 14, 2015) (refusing

13  to limit discovery relevant to the contract claim because "Defendants have not shown

14  'that this claim is based on an allegation that [] Defendants disclosed or misused

15  [Plaintiff's] trade secrets").

16        Even after Plaintiffs serve the Section 2019.210 disclosure, Apple will continue

17  to refuse discovery by litigating the sufficiency of that disclosure regardless of its

18  specificity.  *See* Joint Stipulation at 20 (arguing in a "typical case," the plaintiff "serves

19  a Section 2019.210 disclosure and the parties litigate the deficiencies").  Apple should

20  not be allowed to hold up ***all*** technical discovery for weeks or months while it litigates

21  the sufficiency of Plaintiffs' disclosure.  That is inconsistent with the language of Judge

22  Selna's Order and court decisions addressing the issue.  *See E. & J. Gallo*, 2018 WL

23  3062160, at *6 (finding Section 2019.210 disclosure was insufficient, but holding the

24  parties "shall proceed with discovery on non-trade secret claims" while plaintiffs

25  prepared an amended trade secret disclosure); *Loop AI*, 2015 WL 9269758, at *4 (same).

26

27

28

Exhibit 10
-116-

Apple fails to cite a single case supporting its position that a California state-law requirement bars patent discovery.[4]   Precedent—including much of Apple's own precedent—is to the contrary.  Moreover, Judge Selna already decided the issue in a decision imposing specific deadlines for Apple to "disclose core technical documents sufficient to show the operation of the accused products" and for Plaintiffs to provide infringement contentions.  Powell Decl., Ex. 8 at 26.  Apple should be ordered to produce discovery pursuant to Plaintiffs' requests.

**C.     The Discovery At Issue Is Patent Discovery**

Plaintiffs crafted RFP Nos. 5-25 to seek "core technical documents" about the "Accused Products," which Plaintiffs specifically defined as the ***products accused of patent infringement***.  The information is highly relevant to upcoming patent deadlines, including infringement contentions.  RFP Nos. 5-15 seek basic technical information about the structure and operation of the Accused Products.  For example, RFP No. 5 seeks "Documents sufficient to show the design and operation of the Accused Products."  Similarly, RFP No. 6 seeks documents "describing the operation of the Accused Products, including, without limitation, product brochures, user manuals, instructional materials, and directions for use."

Apple incorrectly asserts RFP Nos. 8-9 seek "Apple's marketing strategy," which is "confidential and sensitive information that Apple does not disclose publicly."  Joint Stipulation at 16.  That is false.  Those requests expressly seek public information, including "advertisements," "promotional materials," "product brochures," "publications," "press releases," and "internet postings."  Apple's public assertions about the functionality of its products (including comparisons to other products) is relevant to patent issues, including infringement.

---

[4] Any attempt by Apple to add support for the first time in a Supplemental Memorandum would be improper.

1   RFP Nos. 16-25 are specifically tailored towards particular claim limitations of

2   the patents-in-suit.  For example, RFP No. 16 seeks information about "components,

3   surface areas, or adhesives that separate light emitted by LEDs from other components

4   of any of the Accused Products."  Such information is relevant at least to claim 1 of U.S.

5   Patent No. 10,470,695, which recites in part: "a light block forming an enclosing wall

6   between the light emission source and the plurality of detectors . . . ."  Powell Decl., Ex.

7   1 at Claim 1.

8   RFP Nos. 17-20 seek information about heart rate algorithms used in the Accused

9   Products, including selecting different heart rate algorithms.   Such information is

10   relevant at least to claim 1 of U.S. Patent No. 10,433,776, which recites in part:

11   when operating according to the ***first control protocol***, calculating, by the

12   patient monitor, ***measurement values of the pulse rate***, the measurement

13   values responsive to light from the first control protocol light source,

14   detected by a detector of an optical sensor after attenuation by body tissue

15   of the patient using the patient monitor

16   . . .

17   in response to receiving the trigger signal, operating the patient monitor

18   according to a ***second control protocol different from the first control***

19   ***protocol***

20   . . .

21   when operating the patient monitor according to the ***second control***

22   ***protocol***, calculating the ***measurement values of the pulse rate***, the

23   measurement values responsive to light from the second control protocol

24   light source, detected by the detector after attenuation by the body tissue

25   of the patient using the patient monitor.

26   Powell Decl., Ex. 2 at Claim 1 (emphasis added).

27   RFP No. 21 seeks information about the power consumption of the heart rate

28   algorithms used in the Accused Products.  RFP No. 22 seeks information about the

Gibson, Dunn &
Crutcher LLP

Exhibit 10
-118-

1   operation of LEDs used to determine pulse or heart rate, including timing, duty cycle,

2   current, or power usage.  RFP No. 23 seeks information about collecting heart rate

3   metrics using a first technique during a first period and a second technique during a

4   second period.  Such information is relevant at least to Claim 1 of U.S. Patent No.

5   10,433,776, which recites in part:

6        wherein said operating of the patient monitor according to the first control

7        protocol operates the first control protocol light source according to a ***first***

8        ***duty cycle*** and said operating of the patient monitor according to the

9        second control protocol operates the second control protocol light source

10       according to a ***second duty cycle***, wherein ***power consumption*** of the first

11       control protocol light source according to the ***first duty cycle*** is different

12       than ***power consumption*** of the second control protocol light source

13       according to the ***second duty cycle***.

14   Powell Decl., Ex. 2 at Claim 1  (emphasis added).

15        Finally, RFP Nos. 24-25 seeks information about changes in collecting heart rate

16   metrics based on user input or operating mode.  Such information is relevant at least to

17   claim 1 of U.S. Patent No. 10,433,776, which recites in part:

18        in response to receiving the trigger signal, ***operating the patient monitor***

19        ***according to a second control protocol different from the first control***

20        ***protocol***, wherein said operating includes activating a second control

21       protocol light source in accordance with the second control protocol, the

22       second control protocol light source including one or more of the plurality

23       of light sources.

24   Powell Decl., Ex. 2 at Claim 1 (emphasis added).

25        Accordingly, RFP Nos. 5-25 are quintessential patent requests.  By contrast, trade

26   secret RFPs would seek, for example, information about Apple's employment of

27   Plaintiffs' former employees, whether and how those former employees provided

28   Plaintiffs' confidential information to Apple, communications with those former

1    employees, and other trade secret information.  Plaintiffs will serve such RFPs after

2    providing the confidential Section 2019.210 disclosure pursuant to a Protective Order.

3         Apple cannot refuse to produce responsive documents by asserting some of the

4    information may ***also*** be relevant to the trade secret claim.  There is no conceivable

5    interpretation of *Erie* that would permit a defendant in Federal district court to refuse

6    providing discovery relevant to ***Federal claims*** based on a state procedure applying

7    solely to ***state claims***.  Apple cites no case supporting its erroneous position, and Judge

8    Selna already rejected it.  Moreover, Apple's own case law is to the contrary.  The Court

9    should order Apple to produce the requested documents under RFP Nos. 5-25.

10        **D.    Apple's Other Arguments Are Irrelevant and Incorrect**

11        Apple devotes most of its portion of this Joint Stipulation to arguing Plaintiffs

12   should provide a Section 2019.210 disclosure.  *See* Joint Statement at 18-28.  Those

13   arguments are also moot now that Judge Selna determined that Section 2019.210 applies

14   and Plaintiffs will provide a Section 2019.210 disclosure before seeking trade secret

15   discovery.

16        Apple also presents a series of irrelevant and misleading "facts."  *See* Joint

17   Statement at 8-17.  First, Apple faults Plaintiffs for serving a third-party subpoena on

18   Apple in *Masimo Corp. et al. v. True Wearables Inc. et al.*, No. 8:18-cv-02001-JVS-

19   JDE (the "*True Wearables* Case").  Joint Statement at 8.  But Apple admitted it has

20   information relevant to the *True Wearables* Case by arguing the allegations in both cases

21   were "nearly identical" and involved Apple's employment of a former employee of

22   Plaintiffs.  D.I. 14 (Apple's Notice of Related Cases).  There is no dispute that Plaintiffs

23   adequately identified their trade secrets in the *True Wearables* case.  There is no basis

24   for Apple's allegation that Plaintiffs have no valid trade secrets and are simply on a

25   fishing expedition to look at Apple's confidential information.  Apple speculates about

26   the timing of Plaintiffs' subpoena, but that was dictated by the rapidly-approaching

27   deadline for the close of fact discovery.  Once the Court extended the fact discovery

28   deadline, Plaintiffs withdrew the subpoena to determine if it was necessary in view of

Gibson, Dunn & Crutcher LLP

1   the extended discovery deadline.   Plaintiffs cannot be faulted for trying to avoid
2   unnecessarily burdening the courts.

3        Apple's claim that Plaintiffs' withdrawal of the subpoena shows Plaintiffs were
4   "caught red handed" is absurd.   Plaintiffs withdrew its subpoena to avoid unnecessarily
5   burdening the court.   Indeed, Plaintiffs had committed to working with Apple to narrow
6   the existing subpoena and the parties were engaged in ongoing communications
7   regarding the scope of Plaintiffs' subpoena.   Apple unexpectedly cut off the parties'
8   communications and suddenly filed a motion to quash.   Apple's vivid imagination is
9   inconsistent with the actual facts surrounding the subpoena.

10        Second, Apple incorrectly asserts Plaintiffs "ignored" its request for a Section
11   2019.210 disclosure.   Joint Statement at 10.   To the contrary, Plaintiffs repeatedly
12   responded and explained their contention at the time that Section 2019.210 did not apply
13   in Federal Court.  *See, e.g.*, Powell Decl. ¶ 8.   While Judge Selna eventually decided to
14   require such a disclosure, it was not improper or unreasonable for Plaintiffs to rely on
15   cases holding Section 2019.210 conflicts with Rule 26 under the *Erie* doctrine.  *See, e.g.*,
16   *SMC Networks, Inc. v. Hitron Techs., Inc.*, 2013 WL 12136372 (C.D. Cal. Mar. 15,
17   2013); *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, 2007 WL 273949, at *2
18   (E.D. Cal. Jan. 29, 2007).   Indeed, while Apple now argues the application of Section
19   2019.210 in Federal court is clear, the same lawyer representing Apple in this case took
20   a contrary position when representing a trade-secret plaintiff in this Court.  *See General*
21   *Elec. Co. v. Liang*, 2:13-cv-08670-DDP-CW, Dkt. No. 54 (C.D. Cal. Feb. 20, 2014)
22   (Powell Decl., Ex. 5) at 22 (Apple's current counsel asserting: "2019.210 requires that
23   a plaintiff alleging trade secret misappropriation in a ***state court action*** identify the trade
24   secrets at issue before discovery may commence.   Assuming, ***arguendo***, that 2019.210
25   applies here, the statute has been satisfied" by other documents in the lawsuit (emphasis
26   added)).

27        Third, Apple argues the First Amended Complaint does not satisfy Section
28   2019.210.   But that is irrelevant because Apple acknowledges Section 2019.210 does

Gibson, Dunn &
Crutcher LLP

**Exhibit 10
-121-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 133 of 300   Page ID
#:12198
Case 8:20-cv-00048-JVS-JDE   Document 43-1   Filed 04/30/20   Page 43 of 45   Page ID
#:3008

1   not apply to pleadings.  *See* Joint Statement at 17.  Apple also complains that the First

2   Amended Complaint "multiplied" the number of trade secrets "from seven to

3   approximately 50, if not more."  *Id.* at 10-11.  That is not true.  The First Amended

4   Complaint simply provided more detail about each category of trade secrets.  For

5   example, while the initial Complaint alleged Plaintiffs' trade secrets include "technical

6   information," the First Amended Complaint elaborated by stating: "Plaintiffs' technical

7   information includes product plans, engineering plans, product briefs, technical

8   drawings, . . . ." D.I. 28 ¶ 211.  Likewise, while the initial complaint identified "business

9   information," the First Amended Complaint explained what type of sales, marketing,

10  and other information Plaintiffs possess.  *Id.*  Regardless, the sufficiency of Plaintiffs'

11  pleading is a different question that will be addressed by resolving Apple's pending

12  Motion to Dismiss.  *See* D.I. 38.

13      Apple also argues "Plaintiffs concede that many, if not all, of their purported

14  secrets are now public." Joint Statement at 2.  That is also false.  Plaintiffs alleged Apple

15  misappropriated ***some*** of its trade secrets by disclosing them in patent applications.  D.I.

16  28 ¶ 218.  Plaintiffs never limited its trade secrets to information Apple had already

17  disclosed in patent applications.   Moreover, the identification of what in those

18  applications originates from Plaintiffs remains secret.

19      Apple's requested relief also far exceeds the "reasonable particularity"

20  requirement of Section 2019.210.  *See* Joint Statement at 27.  In particular, Apple

21  demands that Plaintiffs also provide background information about the trade secret,

22  contentions regarding economic value, contentions regarding efforts to maintain

23  secrecy, ***and*** format the trade secrets as a list of specific elements "as claims would

24  appear at the end of a patent."  *Id.*  Apple does not even attempt to justify these

25  requirements, which are found nowhere in Section 2019.210.  Indeed, Apple itself

26  appears to acknowledge it is asking for ***more*** than mere compliance with Section

27  2019.210.  *See id.* (requesting an order requiring Plaintiffs to "[1] identify their alleged

28  trade secrets with the reasonable particularity Section 2019.210 requires; ***and*** [2] order

1   Plaintiffs to serve on counsel a statement, under seal, that includes [the additional

2   requirements]" (emphasis added)).  Moreover, Judge Selna already rejected the identical

3   request to impose these four additional requirements.  *See* Powell Decl., Ex. 8 at 20

4   (Apple requesting identical relief); *Id.*, Ex. 9 (Court order requiring only "compliance

5   with 2019.210").  This Court should reject Apple's attempt at a do-over.

6       **E.    Conclusion**

7       Nothing supports Apple's attempt to bar ***all*** technical discovery—including patent

8   discovery—until Apple agrees that Plaintiffs have complied with Section 2019.210.

9   Plaintiffs respectfully request the Court deny Apple's motion and order Apple to engage

10  in patent discovery by producing the documents requested by RFP Nos. 5-25.

11

12  Dated: April 30, 2020                **GIBSON, DUNN & CRUTCHER LLP**

13

14                                   By:   /s/ *Joshua H. Lerner*
                                          Joshua H. Lerner
15                                        H. Mark Lyon
                                          Brian M. Buroker
16                                        Brian A. Rosenthal
                                          Ilissa Samplin
17                                        Angelique Kaounis

18                                   *Attorneys for Defendant Apple Inc.*

19

20  Dated:  April 30, 2020               **Knobbe, Martens, Olson & Bear LLP**

21

22                                   By:   /s/ *Adam B. Powell*
                                          Joseph R. Re
23                                        Stephen C Jensen
                                          Perry D. Oldham
24                                        Stephen W Larson
                                          Adam B. Powell

25                                   *Attorneys for Plaintiffs Masimo Corporation*
                                     *and Cercacor Laboratories, Inc.*
26

27

28

1

2          **ATTESTATION UNDER LOCAL RULE 5-4.3.4(a)(2)(i)**

3          Pursuant to Civil L. R. 5-4.3.4(a)(2)(i), I attest that concurrence in the filing of

4     this document has been obtained from each of the signatories above.

5

6                              By:  */s/ Joshua H. Lerner*
                                    Joshua H. Lerner
7

8                              *Attorney for Defendant Apple Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attachment A

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 137 of 300   Page ID
Case 8:20-cv-00048-JVS-JDE   Document 137-2   Filed 04/17/20   Page 1 of 1   Page ID #:3052
#28052

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-00048JVS(JDEx)                    Date   April 17, 2020

Title   Masimo Corporation, et al v Apple, Inc

Present: The
Honorable            **James V. Selna, U.S. District Court Judge**

        Lisa Bredahl                                    Not Present
        Deputy Clerk                                  Court Reporter

Attorneys Present for Plaintiffs:            Attorneys Present for Defendants:

        Not Present                                    Not Present

**Proceedings:**   **[IN CHAMBERS] ORDER RE SCHEDULING DATES**

        The Court has read and considered the parties Rule 26(f) Report and sets the following dates:

| | |
|---|---|
| **Jury Trial** | **April 5, 2022 at 8:30 a.m.** |
| **Final PreTrial Conference** | **March 21, 2022 at 11:00 a.m.** |
| File PreTrial Documents not later than March 7, 2022 | |
| File motions in limine not later than February 14, 2022 | |
| **Discovery Cut-off** | **July 5, 2021** |
| **Expert Discovery Cut-off** | **December 6, 2021** |
| Initial disclosure of Experts not later than September 6, 2021 | |
| Rebuttal disclosure of Experts not later than October 18, 2021 | |
| **Law and Motion Cut-off** | **February 7, 2022 at 1:30 p.m.** |
| Motions to be filed and served not later than January 10, 2022 | |
| **Markman Hearing** | **February 8, 2021 at 3:00 p.m.** |

        Counsel inform the Court that their selection for a settlement procedure pursuant to Local Rule
16-15 is ADR #3, private mediation.  The Court orders that any settlement discussions shall be
completed not later than November 30, 2021.  Counsel shall file a Joint Report of the parties regarding
outcome of settlement discussions, the likelihood of possible further discussions and any help the Court
may provide with regard to settlement negotiations not later than seven (7) days after the settlement
conference.
        The Court adopts discvoery limits in Sections 6a-c.  Total hours for depositions 100.  Court will
deal with reduction of claims, prior art references at a hearing on **July 10, 2020 at 3:00 p.m.** Parties
shall submit joint/separate proposals in one filing by July 3, 2020.  The Court adopts the patent specific
dates.  The Court stays the trade secret discovery only pending compliance with 2019.210.  Any dispute
over compliance shall be heard before the Magistrate Judge.

                                                              :          0

                                        Initials of Preparer        lmb

**Exhibit 10
-126-**

# EXHIBIT 11

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 139 of 300   Page ID
#:12204
Case 8:20-cv-00048-JVS-JDE   Document 33   Filed 04/14/20   Page 1 of 28   Page ID #:2558

1  Joseph R. Re (Bar No. 134479)
   joseph.re@knobbe.com
2  Stephen C. Jensen (Bar No. 149894)
   steve.jensen@knobbe.com
3  Perry D. Oldham (Bar No. 216016)
   perry.oldham@knobbe.com
4  Stephen W. Larson (Bar No. 240844)
   stephen.larson@knobbe.com
5  **KNOBBE, MARTENS, OLSON &**
6  **BEAR, LLP**
   2040 Main Street, Fourteenth Floor
7  Irvine, CA  92614
   Telephone:  (949)-760-0404
8  Facsimile:  (949)-760-9502

JOSHUA H. LERNER, SBN 220755
   jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Telephone:  415.393.8200
Facsimile:   415.393.8306

9  *Attorneys for Plaintiffs Masimo*
10 *Corporation and Cercacor Laboratories,*
11 *Inc.*

H. MARK LYON, SBN 162061
   mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone:  650.849.5300
Facsimile:   650.849.5333

*Attorneys for Defendant Apple Inc.*
[Additional counsel on following page]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**JOINT 26(f) REPORT**<br><br>Scheduling Conference:<br>Date:   TBD<br>Time:   TBD<br>Ctrm.   TBD |

**Exhibit 11**
**-127-**

1

BRIAN M. BUROKER, *pro hac vice*
bburoker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone:   202.955.8541
Facsimile:    202.467.0539

ILISSA SAMPLIN, SBN 314018
isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:   213.229.7000
Facsimile:    213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Telephone:   310.552.8546
Facsimile:    310.552.7026

*Attorneys for Defendant Apple Inc.*

-1-

Exhibit 11
-128-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 141 of 300   Page ID
#:12206
Case 8:20-cv-00048-JVS-JDE   Document 33   Filed 04/14/20   Page 3 of 28   Page ID #:2560

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and Local Rule 26-1, Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs"), and Defendant Apple Inc. ("Apple") (together with Plaintiffs, the "Parties") hereby submit this Joint Report and [Proposed] Discovery Plan.

On March 10, 2020, counsel for the Parties conducted a telephonic discovery conference to address topics set forth in Fed. R. Civ. P. 26(f) Local Rule 26-1, and this Court's sample Order Setting Rule 26(f) Scheduling Conference.  Participating in the conference were Joseph R. Re, Stephen W. Larson, and Adam B. Powell of Knobbe, Martens, Olson & Bear, LLP, counsel for Plaintiffs, and Brian Rosenthal, Angelique Kaounis, and Joshua Lerner of Gibson, Dunn & Crutcher LLP, counsel for Apple.

**A.**     **<u>Synopsis</u>**

This action involves claims by Plaintiffs against Apple for alleged patent infringement, trade secret misappropriation, correction of inventorship of certain patents assigned to Apple, and declaratory judgment of ownership of certain patents assigned to Apple.   On January 9, 2020, Plaintiffs filed the initial Complaint.  On March 4, 2020, Apple moved to dismiss the initial Complaint. On March 25, 2020, Plaintiffs filed the First Amended Complaint asserting the following causes of action:

(1)     Infringement of U.S. Patent No. 10,258,265;

(2)     Infringement of U.S. Patent No. 10,258,266;

(3)     Infringement of U.S. Patent No. 10,292,628;

(4)     Infringement of U.S. Patent No. 10,299,708;

(5)     Infringement of U.S. Patent No. 10,376,190;

(6)     Infringement of U.S. Patent No. 10,376,191;

(7)     Infringement of U.S. Patent No. 10,470,695;

(8)     Infringement of U.S. Patent No. 6,771,994;

-1-

**Exhibit 11
-129-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 142 of 300   Page ID
#:12207
Case 8:20-cv-00048-JVS-JDE   Document 33   Filed 04/14/20   Page 4 of 28   Page ID #:2561

(9)   Infringement of U.S. Patent No. 8,457,703;

(10)  Infringement of U.S. Patent No. 10,433,776;

(11)  Infringement of U.S. Patent No. 10,588,553;

(12)  Infringement of U.S. Patent No. 10,588,554;

(13)  Trade Secret Misappropriation Under California's Uniform Trade Secret Act;

(14)  Correction of Inventorship of U.S. Patent No. 10,078,052;

(15)  Correction of Inventorship of U.S. Patent No. 10,247,670;

(16)  Correction of Inventorship of U.S. Patent No. 9,952,095;

(17)  Correction of Inventorship of U.S. Patent No. 10,219,754;

(18)  Correction of Inventorship of U.S. Patent No. 10,524,671;

(19)  Declaratory Judgment of Ownership of U.S. Patent No. 10,078,052;

(20)  Declaratory Judgment of Ownership of U.S. Patent No. 10,247,670;

(21)  Declaratory Judgment of Ownership of U.S. Patent No. 9,952,095;

(22)  Declaratory Judgment of Ownership of U.S. Patent No. 10,219,754;

(23)  Declaratory Judgment of Ownership of U.S. Patent No. 10,524,671; and

(24)  Declaratory Judgment of Ownership of U.S. Patent Application No. 15/960,507.

Apple contends that none of the claims have merit;  Apple will respond to the First Amended Complaint by April 20, 2020, pursuant to the Court's April 2, 2020 Order.

**B.**   **Legal Issues**

The Parties identify the following key disputed issues:

1.   Whether Apple has infringed any valid claim of the asserted

-2-

**Exhibit 11**
**-130-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 143 of 300   Page ID
#:12208
Case 8:20-cv-00048-JVS-JDE   Document 33   Filed 04/14/20   Page 5 of 28   Page ID #:2562

patents;

2.      The scope and meaning of certain claim terms of Plaintiffs' asserted patents;

3.      Whether Apple improperly acquired, used, or disclosed Plaintiffs' alleged trade secrets;

4.      Whether Plaintiffs were injured by any alleged improper acquisition, use, or disclosure of Plaintiffs' alleged trade secrets by Apple;

5.      Whether inventorship for certain patents assigned to Apple should be corrected;

6.      Whether Plaintiffs are the owner of certain patents and patent applications assigned to Apple;

7.      Whether Plaintiffs are entitled to damages and, if so, in what amount;

8.      Whether Plaintiffs are entitled to an injunction and, if so, the terms of the injunction; and

9.      Whether this case is exceptional and whether any party is entitled to attorneys' fees and costs.

Apple identifies the following additional key disputed issues:

1.      Whether Plaintiffs' trade secret claim is barred by the applicable statute of limitations, *see* Cal. Civ. Code § 3426.6;

2.      Whether Plaintiffs can show that they own protectable trade secrets, including by describing the alleged trade secrets with sufficient particularity to separate them from matters of general knowledge in the trade, and demonstrating reasonable measures to maintain secrecy and value of the alleged trade secrets;

3.      Whether Plaintiffs' misappropriation claim was brought or maintained in bad faith such that the Court should award

-3-

**Exhibit 11**
**-131-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 144 of 300   Page ID
#:12209
Case 8:20-cv-00048-JVS-JDE   Document 33   Filed 04/14/20   Page 6 of 28   Page ID #:2563

reasonable attorney's fees and costs to Apple under Cal. Civ. Code
Section 3426.4; and

4.  Whether Plaintiffs' patent infringement, correction of inventorship, and patent ownership claims were brought or maintained in bad faith, such that the Court should award reasonable attorney's fees and costs to Apple under 35 U.S.C. § 285.

Plaintiffs disagree with Apple's recitation of "additional key issues" as unduly argumentative, addressing questions that are not actually issues in this case, and identifying incorrect legal standards.

The Parties reserve all rights to identify additional legal issues that may arise, for example, in connection with possible counterclaims or affirmative defenses, based on the development of evidence in this matter.

**C.** **<u>Damages</u>**

<u>Plaintiffs' Statement:</u>

Plaintiffs seek damages in an amount to be ascertained through discovery and proven at trial, plus applicable pre-judgment and post-judgment interest. Plaintiffs seek actual damages, lost profits, unjust enrichment, and/or a reasonable royalty.  The final amount of these categories has yet to be ascertained—and Plaintiffs are unable to provide a realistic range of provable damages until they have obtained further information through discovery which can be provided to their damages expert, including revenue and sales information related to the accused products.  Plaintiffs also allege willful patent infringement, as well as willful and malicious trade secret misappropriation. Thus, Plaintiffs seek reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285 and Cal. Civil Code § 3426.4.  Plaintiffs will also seek punitive and exemplary damages.  Plaintiffs disagree with Apple's contention below that Plaintiffs' claims lack merit because Plaintiffs have not yet calculated damages, especially when Apple is refusing to provide any discovery in this case.

-4-

**Exhibit 11**
**-132-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 145 of 300   Page ID
#:12210
Case 8:20-cv-00048-JVS-JDE   Document 33   Filed 04/14/20   Page 7 of 28   Page ID #:2564

1    **Apple's Statement:**

2         Apple denies that Plaintiffs have been harmed in any way by Apple's

3    conduct, and accordingly Apples denies that any provable damages exist in this

4    case or that Plaintiffs are entitled to any compensatory damages (including lost

5    profits and/or a reasonable royalty), exemplary damages, and/or recovery for

6    unjust enrichment.  The fact that Plaintiffs cannot identify any damages, four

7    months after filing suit, several years after the alleged misappropriation, and

8    over a year after the first accused product was released, is telling.  Apple will

9    respond to any damages theories asserted by Plaintiffs at the appropriate time.

10   Apple reserves the right to assert counterclaims at a later date and may seek

11   damages at that time.  Further, Plaintiffs' misappropriation claim was made, and

12   continues to be maintained, in bad faith such that the Court should award

13   reasonable attorneys' fees and costs to Apple under Cal. Civ. Code Section

14   3426.4.   Among other things, the misappropriation claim is barred by the

15   applicable statute of limitations, *see* Cal. Civ. Code Section 3426.3, and

16   Plaintiffs have not alleged cognizable trade secrets or any plausible facts

17   supporting any colorable theory of misappropriation.

18   **D.    Insurance**

19        The Parties are not aware of any insurance coverage related to this matter.

20   **E.    Motions**

21        While Plaintiffs do not presently contemplate filing any additional

22   amended pleadings or motions to add additional parties or claims, further

23   discovery or issuance of additional patents may result in additional claims or

24   amended pleadings.  Plaintiffs reserve the right to do so, including in response

25   to any Apple counterclaims.

26        Apple does not, at this time, anticipate filing any motions to add parties or

27   transfer venue.  As noted above, Apple filed a motion to dismiss the original

28   Complaint and intends to file a motion to dismiss some or all of the claims in

-5-

**Exhibit 11**
**-133-**

Plaintiffs' First Amended Complaint by April 20, 2020.   Apple has not answered yet and reserves the right to bring counterclaims.

**F.    Discovery and Experts**

With respect to expert disclosures, the Parties have proposed deadlines in the Presumptive Schedule of Pretrial Dates attached hereto as Exhibit A.

**1.    Initial Disclosures**

The Parties do not believe any changes are necessary in the form or requirement for disclosures under Rule 26(a).   The Court granted the Parties' stipulation to exchange Fed. R. Civ. P. 26(a)(1) initial disclosures on April 14, 2020.

**2.    Subjects for Discovery/Discovery Phases/Discovery Cut-Off**

The Parties anticipate that discovery may be needed on at least the topics and disputed issues identified above, as well as any affirmative defenses asserted, and/or counterclaims brought by Apple.   The Parties agree that fact and expert discovery should be conducted in phases.   The proposed timing of expert witness disclosures under Fed. R. Civ. P. 26(a)(2) is set forth below in the proposed schedule attached hereto as Exhibit A.   Although the Parties have served discovery, no discovery has been completed to date.

Plaintiffs' Statement: All discovery should be completed pursuant to the schedule set forth in Exhibit A and in accordance with the Federal Rules of Civil Procedure.   Plaintiffs disagree with Apple's assertion that California Civil Procedure Code Section 2019.210 applies in federal court to bar trade secret discovery until the requirements of the rule are met.   Plaintiffs also disagree with Apple's attempt to use that procedural rule to bar *all* discovery, including patent discovery.   For example, Plaintiffs recently served a narrow set of 25 Requests for Production that concern the asserted patents and technical information about the products accused of patent infringement.   The requested information is   necessary   for   Plaintiffs   to   provide   patent   infringement

-6-

**Exhibit 11**
**-134-**

1    contentions.  Apple has asserted that all discovery is barred, including discovery

2    relating to the products accused of patent infringement because the information

3    is purportedly ***also*** relevant to Plaintiffs' trade secret claims.

4          Regardless, Plaintiffs have repeatedly suggested the proper way for Apple

5    to seek this information is through an interrogatory served under the Federal

6    Rules.  Plaintiffs even offered to give Apple an extra interrogatory if that was

7    the issue.  Apple maintained that all discovery that relates in any way to the

8    trade secret claims (including all patent discovery) is barred until Apple agrees

9    that Plaintiffs have complied with a California state procedural rule.   As

10   addressed in more detail in Section K below, that is improper.

11         Apple's Statement: Apple anticipates patent discovery to be completed

12   pursuant to the schedule set forth in Exhibit A except insofar as Plaintiffs

13   attempt to take trade secret related discovery before providing an adequate

14   description of the alleged trade secrets.  Pursuant to California Code of Civil

15   Procedure Section 2019.210 ("Section 2019.210") and consistent with the

16   principles of orderly case management and discovery, Apple requested that

17   Plaintiffs describe their alleged trade secrets with reasonable particularity before

18   they commence trade secret-related discovery.  Plaintiffs declined, thus far, to

19   do so, and accordingly, Apple is in the process of moving for a protective order

20   preventing Plaintiffs from commencing such discovery.

21         Apple does not agree that Plaintiffs' set of 25 Requests for Production is

22   "narrow."  While the Requests may "concern the asserted patents and technical

23   information about the products accused of patent infringement," as Plaintiffs

24   contend, a large number of the requests *also* concern Plaintiffs' alleged secrets.

25   Indeed, the Apple products accused of patent infringement are the Apple

26   products that Plaintiffs allege incorporate their trade secrets.  Section 2019.210

27   is clear that a trade secret plaintiff must describe its purported secrets with

28   "reasonable particularity" "before commencing discovery *relating to* the trade

-7-

**Exhibit 11
-135-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 148 of 300   Page ID
#:12213
Case 8:20-cv-00048-JVS-JDE   Document 33   Filed 04/14/20   Page 10 of 28   Page ID #:2567

1   secret." Cal. Civ. Code § 2019.210 (emphasis added).  Plaintiffs have refused to

2   define their purported secrets with the reasonable particularity Section 2019.210

3   requires, and therefore may not commence discovery that relates to their

4   misappropriation claim even if it *also* relates to their patent claims.

5        Plaintiffs' conduct threatens the result Section 2019.210 guards against:

6   that Plaintiffs will use their patent infringement claims as an end-run around

7   Section 2019.210, to gain access to Apple's files and claim Apple's confidential

8   information as their own.  Plaintiffs' demand that Apple serve an interrogatory

9   does not sufficiently protect against this result, because, among other things,

10   there is nothing stopping Plaintiffs from cutting and pasting the vague

11   description of the secrets in their First Amended Complaint into an interrogatory

12   response.   Accordingly, Apple intends to move forward with producing

13   responsive discovery that relates solely to Plaintiffs' patent claims, as well as

14   responsive public discovery that pertains to both the patent and trade secret

15   claims.  But as to any non-public discovery that relates to Plaintiffs' trade secret

16   claim or to both the trade secret and patent claims, Apple intends to object to

17   such discovery and await Judge Early's ruling on its protective order motion,

18   which will be filed by joint stipulation of the parties on April 30, 2020.

19                      \*\*\*

20        The Parties have proposed a Presumptive Schedule of Pretrial Dates

21   attached hereto as Exhibit A.  Plaintiffs present these dates for the completion of

22   all discovery in this case; Apple presents these dates for the completion of non-

23   trade secret related discovery in this case.

24       **3.**     **Written Discovery Requests**

25        Plaintiffs anticipate serving, and have begun serving, written discovery

26   (interrogatories, requests for production, requests for admission) directed to at

27   least the following topics: the structure, function, and operation of Apple's

28   products accused of infringing Plaintiffs' asserted patents; Apple's

-8-

**Exhibit 11
-136-**

misappropriation of Plaintiffs' trade secrets; the correct inventorship and ownership of the Apple patents at issue; Apple's affirmative defenses; and Apple's revenue, costs, profits pricing, margins, marketing, revenues and profits relating to the accused products.  Plaintiffs also anticipate third-party discovery may be necessary for some or all of the above topics.

Apple anticipates serving written discovery (interrogatories, requests for production, requests for admission), and has already begun serving such discovery, directed to at least the following topics: whether Plaintiffs brought their trade secret claim within the applicable statute of limitations period; the alleged bases for any supposed delayed discovery of Plaintiffs' trade secret claim; the development of the alleged trade secrets; ownership of the alleged trade secrets; the bases for Plaintiffs' claim of misappropriation by Apple; Plaintiffs' purported efforts to maintain the secrecy of their alleged trade secrets; the value, if any, of the alleged trade secrets; the facts on which Plaintiffs claim that Apple knew or should have known (i) that Marcelo Lamego purportedly disclosed Plaintiffs' alleged trade secrets to Apple, and/or (ii) the scope of Plaintiffs' alleged trade secrets; the validity of the asserted patents and related patents; the development that led to the asserted patents; practice by Plaintiffs of the asserted patents; marking of products of Plaintiffs that allegedly practice the asserted patents; contributions of those Plaintiffs allege should be named inventors on the identified Apple patents and patent applications; factual and legal bases for ownership and/or correction of inventorship of the identified Apple patents and patent application; Plaintiffs' bases for their claims of patent infringement; the notice, if any, Plaintiffs gave to Apple of its alleged infringement; Plaintiffs' efforts to enforce their alleged intellectual property rights; Plaintiffs' licensing or assignment of the asserted patents; Plaintiffs' claims that they have been harmed by any conduct committed by Apple; the bases, if any, for Plaintiffs' claims for damages, enhanced damages, attorney's

-9-

Exhibit 11
-137-

fees, recovery for unjust enrichment, and reasonable royalties, including Plaintiffs' revenue, costs, profits, pricing, margins, marketing, and licensing agreements relating to the alleged trade secrets and patented technology.  Apple also anticipates third-party discovery may be necessary for some or all of the above topics.

### 4.   Depositions

Plaintiffs anticipate taking the depositions of Apple under Fed. R. Civ. P. 30(b)(6), Apple's employees, non-party witnesses, and expert witnesses concerning the issues identified above.  Plaintiffs also anticipate taking the depositions of third parties.

Apple anticipates taking depositions of Plaintiffs under Fed. R. Civ. P. 30(b)(6); Plaintiffs' employees, including but not limited to those employees and former employees identified in the Complaints as inventors on Plaintiffs' relevant patents, and those employees and former employees identified in the Complaints as inventors or contributors to the Apple patents and patent applications; non-party witnesses; and expert witnesses concerning the issues identified above.   Apple's estimates are based on the claims alleged in Plaintiffs' First Amended Complaint filed on March 25, 2020.   Additional discovery will be needed if counterclaims are brought.

### 5.   Electronic Discovery and Document Production

The Parties are negotiating a protocol governing the preservation and production of Electronically Stored Information ("ESI"), which they will submit separately.

### 6.   Limitations on Discovery

The Parties request the following exceptions to the limitations on discovery set forth in the Federal Rules of Civil Procedure:

(1)    A maximum of 35 interrogatories per side;

(2)    A maximum of 50 requests for admission per side; and

-10-

**Exhibit 11**
**-138-**

(3)    Each expert deposition shall be limited to one seven hour day per expert per report.

Additionally, Plaintiffs assert the issues and claims in this case justify 140 hours of fact depositions per side, with each fact deposition counting as having a duration of at least 3.5 hours.  Defendant asserts depositions should be limited to 80 hours of party fact depositions per side, with each party fact deposition counting as having a duration of at least 3.5 hours.

As set forth above, Apple objects to Plaintiffs' commencement of any trade-secret related discovery until Plaintiffs describe their alleged trade secrets with reasonable particularity under Section 2019.210 and will move for a protective order preventing Plaintiffs from taking the same.  Plaintiffs object to Apple's attempt to use a California state procedural rule to bar all discovery, including patent discovery.

**7.    <u>Other Orders</u>**

The Parties intend to request that the Court enter a protective order governing the confidentiality of information in this case.  The Parties will submit to Magistrate Judge Early a proposed protective order under Federal Rule of Civil Procedure 26(c) to govern the exchange and disclosure of confidential documents and information in this case.  Apple will not agree to produce documents unless and until a satisfactory protective order is issued in this case.

The Parties consent to electronic service and agree that such service of papers may be accomplished by electronic mail, with the same result as if such papers had been delivered in person.  If the e-mail serving papers is sent after midnight (Pacific), those papers will be considered to have been received the following day.

At this time, Plaintiffs do not propose that the Court enter any other order under Rule 26(c), Rule 16(b), or Rule 16(c) beyond those normally issued by

-11-

**Exhibit 11 -139-**

1    the Court.  However, as set forth herein, Apple will move for a protective order

2    under Rule 26(c) on the basis that Plaintiffs may not commence any trade

3    secret-related discovery until they comply with Section 2019.210.   Plaintiffs

4    object to Apple's attempt to use a California state procedural rule to bar all

5    discovery, including patent discovery.

6    **G.    Dispositive Motions**

7             Plaintiffs' Statement:

8             Plaintiffs anticipate that they may file motions for summary judgment

9    regarding   patent   infringement,   validity,   trade   secret   misappropriation,

10   inventorship, and/or ownership.  Plaintiffs anticipate they may also file pretrial

11   motions relating to expert testimony and motions *in limine*.

12            Apple's Statement:

13            Apple filed a motion to dismiss Plaintiffs' claims on March 4, 2020.

14   Plaintiffs voluntarily amended their Complaint on March 25, 2020, and Apple

15   intends to move to dismiss some or all of the claims in the First Amended

16   Complaint on or before April 20, 2020.  Apple reserves the right to move to

17   dismiss any future amended complaint.

18            If any claims remain after any future motions to dismiss are decided,

19   Apple anticipates that it will move for summary judgment, partial summary

20   judgment, and/or judgment on the pleadings under Rule 15(c) of Plaintiffs'

21   claims of trade secret misappropriation, patent infringement, patent validity,

22   patent eligibility correction of inventorship, and/or declaratory judgment of

23   ownership, and further, that it may seek sanctions (including possibly case or

24   claim-terminating sanctions) against Plaintiffs under Cal. Civ. Code Section

25   3426.4, among other authorities.  Apple anticipates that it may also file pretrial

26   motions relating to expert testimony and motions *in limine*.  Apple reserves all

27   rights to bring such motions.

28

-12-

**Exhibit 11**
**-140-**

**H.**     <u>Settlement and Settlement Mechanism</u>

The Parties have met and conferred regarding ADR and settlement procedures pursuant to L.R. 16-15.  The Parties propose participating in a private mediation in accordance with Settlement Procedure No. 3.

The Parties have submitted concurrently herewith an ADR-01 "Request; ADR Procedure Selection" Form.  The Parties appreciate and understand that the case will not proceed to trial unless all parties with full authority to settle the case have appeared personally at a settlement conference.

**I.**     <u>Trial Estimate</u>

The Parties agree that trial will be by jury on at least all issues for which there is a right to trial by jury.  The Parties estimate a 10-14 day jury trial in which each Party anticipates calling approximately 10-15 witnesses.  Because the Parties' trial estimate exceeds eight days, the Parties will be prepared to discuss the estimate in detail.  The parties reserve the right to request bifurcation of trial.

**J.**     <u>Timetable</u>

The Parties have submitted the Presumptive Schedule of Pretrial Dates attached as Exhibit A to this report.

**K.**     <u>Other Issues</u>

<u>Plaintiffs' statement</u>:

Apple's has attempted to block all discovery from the outset by demanding that Plaintiffs follow Cal. Civ. Proc. Code § 2019.210.  Apple's position is misplaced because Section 2019.210 is a California procedural requirement that does not apply in federal court.  *See SMC Networks, Inc. v. Hitron Techs., Inc.*, 2013 WL 12136372, at *3 (C.D. Cal. Mar. 15, 2013) (holding that Cal. Civ. Proc. Code § 2019.210 does not apply in federal courts because it violates Fed. R. Civ. P. 26 and the *Erie* doctrine); *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, 2007 WL 273949, at *2 (E.D. Cal. Jan.

-13-

**Exhibit 11**
**-141-**

1   29, 2007) (same).   As *SMC Networks* explained, Section 2019.210 conflicts

2   with the Federal Rules because "§ 2019.210 sets forth a procedural requirement

3   that must be met before discovery may be initiated, while Rule 26 would permit

4   Plaintiff to proceed."   2013 WL 12136372 at *3.   Thus, Section 2019.210's

5   "automatic stay provision 'serve[s] to prevent application of Rule 26.'"   *Id.*

6   (quoting *Funcat*, 2007 WL 273949, at *2).

7          Indeed, Apple's own argument shows why Section 2019.210 should not

8   be applied in federal courts.   Apple asserts that it should not have to respond to

9   Plaintiffs' First Set of Requests for Production ("RFPs") because the RFPs seek

10  "extensive trade secret-related discovery."   But even a cursory review of those

11  25 RFPs show they are standard patent RFPs designed to seek information

12  Plaintiffs need to prepare patent infringement contentions against the "Accused

13  Products."   For example, the requests are narrowly tailored to seek documents

14  concerning the "scope of the Masimo Asserted Patents," the "design and

15  operation of the Accused Products," and the "operation of any heart rate

16  algorithms used in any of the Accused Products."   Some RFPS were even

17  narrowly tailored to particular patent claim limitations.

18         Plaintiffs asked Apple to identify any requests that it believed sought

19  information not directed to the patent infringement allegations, but Apple

20  admitted it could not identify any such request.   Despite that, Apple has refused

21  to provide any responsive information on the grounds that Apple believes the

22  requests *also* relate to the trade secret allegations.   Accordingly, Apple is using a

23  California state procedural rule concerning trade secrets to preclude typical

24  patent discovery.   Apple provides no case law to support that position, which

25  has been rejected by at least one court in this District.   *See Bryant v. Mattel*,

26  2007 WL 5430888, *3 n.3 (C.D. Cal. May 18, 2007) (refusing to limit discovery

27  of product information under Section 2019.210 because the information was

28  / / /

-14-

**Exhibit 11**
**-142-**

1   also "relevant to claims other than the trade secret misappropriation claim, such

2   as Mattel's claim for copyright infringement").

3        Instead of imposing a state procedural rule to bar patent discovery, Apple

4   should serve an interrogatory under the Federal Rules of Civil Procedure.   If

5   Apple had done so immediately after the Rule 26(f) conference on March 10,

6   Plaintiffs would have already responded.   This is precisely the procedure the

7   Court already adopted and followed in *Masimo et al. v. True Wearables et al.*,

8   case no. 8:18-cv-2001-JVS-JDEx, which Apple asserts raises allegations that

9   are "nearly identical" to the allegations in this case.   *See* D.I. 14 (Apple's Notice

10  of Related Cases) at 1.   Apple incorrectly suggests the defendant in *True

11  Wearables* served an interrogatory instead of asking Plaintiffs to identify their

12  trade secrets separate from the interrogatory.   The defendant actually requested

13  a formal identification of trade secrets similar to patent infringement

14  contentions.   This Court addressed the dispute at the scheduling conference and

15  adopted Plaintiffs' argument that the Federal Rules of Civil Procedure apply and

16  Plaintiffs need only respond to an interrogatory asking for such trade secrets.

17       Apple's attempt to obtain a contrary ruling by rushing to Magistrate

18  Judge Early is inappropriate.   As shown throughout this submission, Apple

19  turned the Section 2019.210 dispute into a scheduling issue by asserting it will

20  not comply with the Court's schedule as to trade secret discovery.   Apple's

21  assertion exemplifies the conflict between Section 2019.210 and the Federal

22  Rules, which should be resolved by this Court because it impacts the schedule.

23       Apple also incorrectly asserts it includes the section below "because

24  Plaintiffs insisted on addressing the merits of the parties' Section 2019.210

25  dispute in this filing."   Plaintiffs initial draft did not include this section or

26  discuss Section 2019.210.   Plaintiffs added their position ***in response*** to Apple's

27  extensive arguments on Section 2019.210.   Apple then responded the day before

28  filing by adding additional arguments and citing case law.   But most of Apple's

-15-

**Exhibit 11**
**-143-**

1   cases did not even discuss the *Erie* conflict.  *See M/A-COM Tech. Sols., Inc. v.*
2   *Litrinium, Inc.*, 2019 WL 8108729, at *4 (C.D. Cal. Sept. 3, 2019); *Swarmify,*
3   *Inc. v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018);
4   *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb.
5   28, 2014).  One decision applied Section 2019.210 based on the "circumstances
6   in [that] case," including that plaintiff had initially ***agreed*** to apply Section
7   2019.210.   *E. & J. Gallo Winery v. Instituut Voor Landbouw-En*
8   *Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018).[1]
9   Plaintiffs request the Court apply the standard Federal Rules for discovery just
10   as it did in the *True Wearables* case, which Apple argued involves "nearly
11   identical" allegations.

12        Apple's Statement:[2]  Apple wants to move forward with trade secret
13   discovery *as quickly possible*, and therefore has repeatedly requested that
14   Plaintiffs comply with the procedures set out in California Code of Civil
15   Procedure Section 2019.210.  Apple informed Plaintiffs that their pleading of
16   the alleged trade secrets was insufficient back on *February 25*, requested
17   Plaintiffs' compliance with Section 2019.210 by letter dated *March 6*, and has
18   repeatedly requested Plaintiffs' compliance with Section 2019.210 ever since.
19   Even though Plaintiffs are alleging secrets that are public, Plaintiffs have
20   steadfastly refused to provide an adequate description of those secrets.

21   _____

22   [1] Apple also claims it is seeking to move this case forward "as quickly as
23   possible" and faults Plaintiffs for requesting a 14-day extension to respond to
     Apple's motion for protective order.  Apple omits that it has requested and
24   obtained numerous lengthy extensions to respond to the initial Complaint, file
25   this report, and respond to the Amended Complaint.  D.I. 12; D.I. 26; D.I. 30.

26   [2] Apple includes this section because Plaintiffs insisted on addressing the merits
     of the parties' Section 2019.210 dispute in this filing.  Apple notes, however,
27   that this dispute is in the process of being briefed for Judge Early, in a Joint
28   Stipulation to be filed by the parties on April 30, 2020.

-16-

Exhibit 11
-144-

1   Furthermore, Apple has not attempted to "block all discovery from the outset,"
2   as Plaintiffs contend above.  To the contrary, Apple intends to move forward
3   with discovery that pertains solely to Plaintiffs' patent claims.

4           Consistent with its goal to move forward on the trade secret claims as
5   quickly as possible, on March 27, 2020, Apple began the process of moving for
6   a protective order prohibiting Plaintiffs from commencing trade secret-related
7   discovery unless and until they identify their allegedly misappropriated trade
8   secrets with the "reasonable particularity" Section 2019.210 requires.  Apple
9   was prepared to follow the timing for the motion prescribed by the Local Rules
10  and file on April 15, 2020.  *Plaintiffs* requested that Apple delay the filing so
11  that Plaintiffs could have an additional two weeks to prepare their portion, and
12  Apple agreed.  At *Plaintiffs'* request, the filing has been delayed until April 30,
13  2020.

14          District courts throughout California, *including this Court*, recognize that
15  Section 2019.210 serves an essential function in cases like this one—it
16  discourages meritless trade secret claims, prevents plaintiffs from abusing the
17  discovery process to access the defendant's trade secrets, assists the court in
18  framing the appropriate scope of discovery, and enables a defendant to form
19  "complete and well-reasoned defenses" against claims of misappropriation.
20  *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D.
21  Cal. Sept. 3, 2019) (Early, J.).  A prompt and particularized disclosure of
22  Plaintiffs' purported secrets is critical to each of those functions, as will be
23  described in detail in Apple's forthcoming motion for a protective order.

24          Tellingly, the most recent case Plaintiffs cite in support of their contrary
25  position that Section 2019.210 does not apply to CUTSA cases filed in federal
26  court—*SMC Networks*—is from 2013 and has never been followed by another
27  court.  This Court is far from alone in recently taking a different approach from
28  *SMC*, and managing discovery in trade secret cases by applying Section

-17-

**Exhibit 11
-145-**

1   2019.210.  *See, e.g.*, *E. & J. Gallo Winery v. Instituut Voor Landbouw-En*
2   *Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018);
3   *Swarmify, Inc. v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31,
4   2018); *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal.
5   Feb. 28, 2014).

6          Plaintiffs are wrong to suggest that a contrary approach was taken in the
7   *True Wearables* Case.  In that case, the defendant did not move for a protective
8   order pursuant to Section 2019.210.  Here, Apple initiated the meet and confer
9   process in connection with its motion for a protective order pursuant to Section
10  2019.210 on March 27, 2020, Apple sent Plaintiffs its portion of the joint
11  stipulation Judge Early requires for presentation of such a motion on April 8,
12  2020, and, as a result of Plaintiffs' requested two-week extension, the parties'
13  joint stipulation is scheduled to be filed on April 30, 2020.  Moreover, in *True*
14  *Wearables*, the defendant elected to serve an interrogatory for the identification
15  of trade secrets.  Here, by contrast, Apple has not served an interrogatory for the
16  information covered by Section 2019.210 because an interrogatory response
17  does not sufficiently protect Apple from the harm Section 2019.210 guards
18  against: that Plaintiffs will use a vague identification of their trade secrets to
19  gain access to Apple's files and claim Apple's confidential information as their
20  own.  Plaintiffs say they are willing and able to adequately describe their trade
21  secrets in response to an interrogatory, but refuse to do so in a Section 2019.210
22  disclosure.  The clear reason is that Plaintiffs seek to use the discovery process
23  to manufacture a trade secret case.  Indeed, Plaintiffs prefer an interrogatory to a
24  Section 2019.210 disclosure because they are free to amend their interrogatory
25  responses throughout the discovery process, including in response to the *Apple*
26  confidential information they discover in Apple's files.  Plaintiffs should be
27  required to describe the trade secrets that Apple allegedly misappropriated at the
28  outset of this case.  This is information that Plaintiffs must have in their

-18-

**Exhibit 11
-146-**

1   possession as the result of the Rule 11 investigation they allegedly conducted
2   prior to filing.   Its prompt disclosure will prevent Plaintiffs from simply
3   manufacturing a trade secret claim that did not exist at the time of filing and it
4   will protect Apple's confidential information – which are the precise reasons
5   why Section 2019.210 was enacted.  Forcing Plaintiffs to specify their alleged
6   trade secrets *before* they commence trade secret-related discovery in Apple's
7   files will prevent unnecessary motion practice later.

8        Plaintiffs' further argument that their RFPs somehow fall outside the
9   ambit of Section 2019.210 is not persuasive.  To begin with, and to dispel any
10  confusion, Apple is prepared to produce documents responsive to the RFPs
11  pertaining solely to Plaintiffs' patent claims, as well as public documents
12  responsive to the RFPs pertaining to Plaintiffs' patent and trade secret claims.
13  But Plaintiffs are wrong to suggest that all of their RFPs simply seek patent-
14  related information.   Plaintiffs use the term "Accused Products" throughout
15  their RFPs, defined as "Apple Watch Series 4 or later, as well as the
16  combination of Apple Watch Series 4 or later with an Apple iOS Product."
17  These are the *very same Apple Watches that Plaintiffs contend incorporate their*
18  *trade secrets*.  Accordingly, these overlapping requests are an attempt to end-run
19  the clear requirements of Section 2019.210.  Plaintiffs' discovery of documents
20  pertaining to their purported trade secrets should not commence until Plaintiffs
21  serve an adequate Section 2019.210 disclosure.

22        This case presents a clear example of the very danger that Section
23  2019.210 prevents:  Plaintiffs have plead vague trade secrets claims, which they
24  already amended once, and now seek access to *Apple's* confidential information.
25  Absent a reasonable description of Plaintiffs' alleged secrets first, Plaintiffs will
26  be able to sift through Apple's information and claim whatever seems most
27  valuable as their own.  This is particularly troubling because Apple has a long
28  track record of significant investment in groundbreaking technology, including

-19-

Exhibit 11
-147-

1  the Apple Watch.  Plaintiffs should not be permitted to peruse that information

2  *in search* of a valid claim; they need to first provide at least a description of the

3  secrets at issue here.

4        For these and the reasons set forth in detail in Apple's portion of the

5  parties' filing before Judge Early on Apple's motion for a protective order,

6  Apple therefore requests that Plaintiffs be barred from commencing any trade

7  secret-related discovery until Plaintiffs serve on counsel a statement, under seal,

8  that includes (1) a summary of the specific alleged trade secrets; (2) the

9  background of the trade secrets and a description of how each secret has derived

10  independent, actual, or potential economic value by virtue of not being generally

11  known to the public; (3) a description of how each secret has been the subject of

12  reasonable efforts to maintain its secrecy; and (4) each of the precise claimed

13  trade secrets, numbered with a list of the specific elements for each, as claims

14  would appear at the end of a patent.

15        Separately, Apple anticipates a possibly voluminous document production

16  due to the number of patents at issue in this case.  As noted above, the Parties

17  are currently negotiating a protective order.  Apple does not intend to produce

18  documents until an acceptable protective order is issued.

19  **L.**   **Conflicts**

20        The following are subsidiaries of Plaintiff Masimo Corporation:

21        Masimo (China) Medical Technology Co., Ltd; Masimo (Shanghai)

22  Industrial Co., Ltd.; Masimo 17, LLC; Masimo Americas, Inc.; Masimo Asia

23  Pacific Pte. Ltd; Masimo Australia PTY LTD; Masimo Canada ULC; Masimo

24  International SARL - Dubai, U.A.E.; Masimo de Mexico Holdings I LLC;

25  Masimo de Mexico Holdings II LLC; Masimo Europe Limited – French

26  Branch; Masimo Europe Limited; Masimo Europe Limited - Filiale Italiana;

27  Masimo Europe Limited, Sucursal en España; Masimo Europe Ltd

28  Niederlassung Deutschland; Masimo Holdings LLC; Masimo Holdings LP;

-20-

**Exhibit 11**
**-148-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 161 of 300   Page ID
#:12226
Case 8:20-cv-00048-JVS-JDE   Document 33   Filed 04/14/20   Page 23 of 28   Page ID #:2580

1  Masimo Hong Kong Limited; Masimo Importação e Distribuição de Produtos
2  Médicos Ltda.; Masimo International SARL; Masimo International Sarl –
3  Jordan; Masimo International Sarl (filiaal Nederlands); Masimo International
4  Technologies SARL; Masimo Japan Kabushiki Kaisha; Masimo Korea LLC;
5  Masimo Medical Technologies India Private Ltd; Masimo Medikal Ürünler
6  Ticaret Limited Şirketi; Masimo Mexico, S. de R.L. de C.V.; Masimo
7  Oesterreich GmbH; Masimo Peru S.R.L.; Masimo Polska Spola z.o.o.; Masimo
8  International Saudi Arabia; Masimo Semiconductor, Inc.; Masimo Sweden AB;
9  OC Property Shelter, LLC; OC Property Ventures, LLC; Patient Doctor
10 Technologies, Inc.; SEDLine, Inc.; SpO2.com; VCCB Holdings, LLC; 25
11 Sagamore LLC; 52 Discovery LLC; Alton Office Holdings, LLC; and Alton
12 Office Property, LLC.

13       Apple filed its Statement of Interested Parties and Corporate Disclosure
14 Statement on March 4, 2020.  Dkt. No. 15.

15 **M.    <u>Patent Cases</u>**

16       The Presumptive Schedule of Pretrial Dates in Exhibit A identifies the
17 dates and methodology for claim construction and *Markman* hearing.  Plaintiffs
18 do not propose a specific date for the Markman hearing and instead defer to the
19 Court.  Apple proposes that the Markman hearing be held on February 8, 2021,
20 subject to the Court's availability based on its schedule.

21 **N.    <u>Magistrates</u>**

22       The Parties do not consent to having a Magistrate Judge preside over
23 these proceedings.

24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

-21-

Exhibit 11
-149-

Case 8:20-cv-00048-JVS-JDE  Document 169-4  Filed 09/01/20  Page 162 of 300  Page ID
#:12227
Case 8:20-cv-00048-JVS-JDE  Document 33  Filed 04/14/20  Page 24 of 28  Page ID #:2581

1

Respectfully submitted,

2

KNOBBE, MARTENS, OLSON & BEAR, LLP

3

4

Dated: April 14, 2020       By: */s/ Stephen W. Larson*

Joseph R. Re
5
Stephen C. Jensen
Perry D. Oldham
6
Stephen W. Larson

7

Attorneys for Plaintiffs,
Masimo Corporation and
8
Cercacor Laboratories

9

GIBSON, DUNN & CRUTCHER LLP

10

Dated: April 14, 2020       By: */s/ Ilissa Samplin (with permission)*

11
Joshua H. Lerner
H. Mark Lyon
12
Brian M. Buroker
Ilissa Samplin
13
Angelique Kaounis

14

*Attorneys for Defendant Apple Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-22-

**Exhibit 11**
**-150-**

# EXHIBIT A

### JUDGE JAMES V. SELNA
### PRESUMPTIVE SCHEDULE OF PRETRIAL DATES

| Case No.: | 8:20-cv-00048-JVS (JDEx) |
|---|---|
| Case Name: | Masimo Corporation, et al. v. Apple Inc. |

| Matter | Time | Weeks before trial | Plaintiffs' Request | Defendant's Request | Court Order |
|---|---|---|---|---|---|
| Trial date (jury) Estimated length: 10-14 days | 8:30 am (Tuesday) | | 4/5/2022 | | |
| [Court trial:] File Findings of Fact and Conclusions of Law and Summaries of Direct Testimony | | -1 | N/A | | |
| Final Pretrial Conference: Hearing on Motions in Limine; File Agreed Upon Set of Jury Instructions and Verdict Forms and Joint Statement re Disputed Instructions and Verdict Forms; File Proposed *Voir Dire* Qs and Agreed-to Statement of Case | 11:00 am (Monday) | -2 | 3/21/2022 | | |
| Lodge Pretrial Conf. Order; File Memo of Contentions of Fact and Law; Exhibit List; Witness List; Status Report re Settlement | | -3 | 3/7/2022 | | |
| Last Day for hand-serving Motions in Limine | | -6 | 2/14/2022 | | |
| Last day for hearing motions | 1:30 pm (Monday) | -7 | 2/7/2022 | | |
| Last day to conduct Private ADR | | | 1/24/2022 | | |

-23-

Exhibit 11
-151-

| | | | | |
|---|---|---|---|---|
| Last day for hand-serving motions and filing (other than Motions in Limine) | | -11 | 1/10/2022 | |
| Expert Discovery cut-off | | | 12/6/2021 | |
| Rebuttal Expert Witness Disclosures | | | 10/18/2021 | |
| Opening Expert Witness Disclosures [See F.R. Civ. P. 26(a)(2)]<br><br>Plaintiffs File Final Infringement Contentions,<br><br>Defendant Files Final Invalidity Contentions. | | | 9/6/2021 | |
| Non-expert Discovery cut-off | | -15 | 7/5/2021 | |
| Defendant further reduces the number of asserted prior art references to no more than 6 references per patent and 25 references total.[3] | | | N/A | 14 days after Plaintiffs further reduce number of asserted claims |
| Plaintiffs further reduce number of asserted patents to 6, the number of asserted claims to no more than 3 claims per patent family, and 12 claims total.[4] | | | N/A | 30 days after Markman decision |
| Markman Decision | | | [set by Court] | |

---

[3]      Apple proposes that Plaintiffs and Defendant will narrow their asserted claims and prior art references from the previously narrowed pool of claims and references.

[4]      Plaintiffs believe Defendant's proposal to include deadlines to limit the number of asserted claims and asserted patents is premature and one-sided.

Exhibit 11
-152-

| | | | | |
|---|---|---|---|---|
| Markman Hearing | | | [set by Court] | 2/8/2021 |
| All Parties File Advice of Counsel Disclosures (Patent L.R. 3-7) | | | 1/25/2021 | 30 days after Markman decision |
| Simultaneously Responding Markman Briefs, Tutorials and Presentation Materials (Patent L.R. 4-5) | | | 1/25/2021 | |
| Last Date to Add Parties / Amend Pleadings | | | 12/23/2020 | |
| Simultaneous Opening Markman Briefs (Patent L.R. 4-5) | | | 12/21/2020 | |
| Complete Claim Construction Discovery (Patent L.R. 4-4) | | | 12/7/2020 | |
| Joint Markman Prehearing Statement Patent L.R. 4-3) | | | 11/9/2020 | |
| Exchange Preliminary Claim Constructions and Extrinsic Evidence Patent L.R. 4-2) | | | 10/12/2020 | |
| Exchange of Proposed Claim Terms for Construction (Patent L.R. 4-1) | | | 9/21/2020 | |
| Invalidity Contentions (Patent L.R 3-3 and 3-4) | | | 9/7/2020 | |
| Defendant reduces the number of asserted prior art references to no more than 12 references per patent and 50 references total.[5] | | | N/A | 8/10/2020 |

_____

[5]      Apple proposes that a prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count

-25-

Exhibit 11
-153-

| Infringement Contentions (Patent L.R. 3-1 and 3-2) | | | 7/27/2020 | | |
|---|---|---|---|---|---|
| Plaintiffs reduce number of asserted claims to no more than 8 claims per patent and 32 claims total. | | | N/A | 7/27/2020 | |
| Deadline to disclose core technical documents sufficient to show the operation of the accused products.[6] | | | 6/15/2020 | | |
| Initial Disclosures (Rule 26(a)(1)) | | | 4/14/2020 | | |

as one reference, as shall the closely related work of a single prior artist.

[6]   Any discovery-related dates that Apple proposes in this Presumptive Schedule of Pretrial Dates are subject to Plaintiffs providing an adequate identification of their alleged trade secrets in compliance with Section 2019.210 insofar as such an identification is a prerequisite to such discovery.

-26-

Exhibit 11
-154-

# EXHIBIT 12

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-00048JVS(JDEx)                    Date   April 17, 2020

Title   Masimo Corporation, et al v Apple, Inc

Present: The
Honorable   **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

Not Present                                    Not Present

**Proceedings:   [IN CHAMBERS] ORDER RE SCHEDULING DATES**

The Court has read and considered the parties Rule 26(f) Report and sets the following dates:

| | |
|---|---|
| **Jury Trial** | **April 5, 2022 at 8:30 a.m.** |
| **Final PreTrial Conference** | **March 21, 2022 at 11:00 a.m.** |
| File PreTrial Documents not later than March 7, 2022 | |
| File motions in limine not later than February 14, 2022 | |
| **Discovery Cut-off** | **July 5, 2021** |
| **Expert Discovery Cut-off** | **December 6, 2021** |
| Initial disclosure of Experts not later than September 6, 2021 | |
| Rebuttal disclosure of Experts not later than October 18, 2021 | |
| **Law and Motion Cut-off** | **February 7, 2022 at 1:30 p.m.** |
| Motions to be filed and served not later than January 10, 2022 | |
| **Markman Hearing** | **February 8, 2021 at 3:00 p.m.** |

Counsel inform the Court that their selection for a settlement procedure pursuant to Local Rule 16-15 is ADR #3, private mediation.  The Court orders that any settlement discussions shall be completed not later than November 30, 2021.  Counsel shall file a Joint Report of the parties regarding outcome of settlement discussions, the likelihood of possible further discussions and any help the Court may provide with regard to settlement negotiations not later than seven (7) days after the settlement conference.

The Court adopts discvoery limits in Sections 6a-c.  Total hours for depositions 100.  Court will deal with reduction of claims, prior art references at a hearing on **July 10, 2020 at 3:00 p.m.** Parties shall submit joint/separate proposals in one filing by July 3, 2020.  The Court adopts the patent specific dates.  The Court stays the trade secret discovery only pending compliance with 2019.210.  Any dispute over compliance shall be heard before the Magistrate Judge.

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |

**Exhibit 12**
**-155-**

# EXHIBIT 13

| From: | Samplin, Ilissa |
|---|---|
| To: | Adam.Powell; Mark.Kachner; Masimo.Apple |
| Cc: | Lerner, Joshua H.; Lyon, H. Mark; *** Apple-Masimo |
| Subject: | RE: Masimo v. Apple - Section 2019.210 disclosure and amended interrogatory responses |
| Date: | Friday, July 17, 2020 11:37:29 AM |

Adam,

We obviously disagree with your gross mischaracterization of Apple's position, set forth in the first paragraph of your email below—which is demonstrably wrong based on Apple's production of technical documents to your team less than two hours later.

We also continue to disagree with your incorrect positions on Section 2019.210 and trade secret-related interrogatories.  Plaintiffs should not need to prepare their amended complaint *before* serving a Section 2019.210 disclosure or amended interrogatory responses pertaining to their purported trade secrets because Plaintiffs presumably had a Rule 11 basis for their trade secret allegations when they first asserted them back in January 2020.  In other words, Plaintiffs knew (or should have known) what their alleged trade secrets were back when they first filed this case and therefore should not need to file an amended complaint before they can describe those trade secrets to Apple—in a Section 2019.210 disclosure and amended interrogatory responses that Plaintiffs previously, and repeatedly, agreed to provide once a protective order was entered, and did not make contingent on the earlier-in-time filing of an amended pleading.  Your suggestion that Apple's Motion to Dismiss created this problem is factually incorrect.  Plaintiffs' failure to describe their trade secrets even under Federal Rule of Civil Procedure 8 is, and continues to be, the problem here.  Your two week offer for amended interrogatory responses is *not* "more than diligent" as you contend below, and you have again failed to even commit to a date certain by which you will serve a Section 2019.210-compliant trade secret disclosure.  Please provide a date by which Plaintiffs will serve their Section 2019.210 disclosure; we have been asking for a date for so many months now.

With respect to the ethical wall, are you saying that Plaintiffs intend to review the material Apple produced yesterday without first putting a temporary ethical wall in place?

Apple likewise reserves all rights.

Regards.
Ilissa

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>

**Exhibit 13**
**-156-**

**Sent:** Thursday, July 16, 2020 5:02 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Mark.Kachner <Mark.Kachner@knobbe.com>;
Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; ***
Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Section 2019.210 disclosure and amended interrogatory responses

[External Email]
Ilissa,

Your attempt to tie Apple's technical document production to Masimo possibly substituting patents
is inconsistent with the facts.  I asked you about the timing of Apple's document production on July 8
and July 9.  You refused to answer.  Masimo did not mention it was considering substituting patents
until July 10.  Regardless, as a courtesy, we responded yesterday concerning the possible patent
family reduction to focus this case.  Apple's statement that it is now "preparing" its core technical
document production demonstrates the extent to which Apple has flouted—and continues to flout
—the Court's Scheduling Order.  Apple's statement that it needs more information "before" it
produces documents confirms Apple's open contempt for the Court's Order and numerous rulings
confirming that Order, which required Apple to produce documents weeks ago.

We disagree with your assertions regarding Section 2019.210 and Plaintiffs' interrogatory
responses.  Plaintiffs are in the process of preparing an amended complaint, which will describe
Plaintiffs' asserted trade secrets in more detail.  Plaintiffs' amended complaint will be relevant to the
scope of trade secret discovery in this case and the Section 2019.210 statement.  Apple's Motion to
Dismiss obviously drove that timing.  Moreover, Apple apparently already plans to continue
prolonging the pleading stage by filing another motion to dismiss, even though it has not yet seen
the amended complaint.  Apple's demand that we provide discovery now, before we amend the
complaint, puts the cart before the horse.  It is reasonable for us to amend the complaint first and
then update our interrogatories as they relate to the amended complaint.  Our agreement to
provide discovery just two weeks after amending the complaint is more than diligent.

As for your request that we enact a temporary "ethical wall," that is another baseless attempt to tie
Apple's disclosure of technical documents to Section 2019.210—a procedural ploy the Court has
now rejected at least *four times*.  We are aware of no case imposing such a requirement.  The *Jardin*
case you cited is irrelevant because it affirmed an order creating a temporary ethical wall for lawyers
involved in a separate case.  Apple's ongoing defiance and contempt of this Court's numerous orders
is prejudicial.  Plaintiffs reserve all rights.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe** Martens

**Exhibit 13
-157-**

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Wednesday, July 15, 2020 4:46 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@knobbe.com>
**Subject:** RE: Masimo v. Apple - Section 2019.210 disclosure and amended interrogatory responses

Adam,

We have not answered your question about the timing of technical documents because you still have not answered our question about whether you are dropping a patent family. We are preparing our core technical document production. Before we produce, we need to know if you are contemplating dropping a patent family, and if so, which one(s). This has an impact on what we produce. If you are not contemplating dropping a patent family, we can make our production shortly.

With respect to your second question, no, we do not agree that we will rely on only public materials to defend our client in this case.

With respect to our request for amended interrogatory responses, please explain why your team feels it needs six weeks from the date the protective order was entered to serve the amended interrogatory responses Mark previously represented that your team was working on, and would be able to serve after entry of a protective order? We don't understand why your team needs 2 weeks from the date of amendment to provide the amendments we've been waiting on for weeks.

Notably, you omitted from your email below any reference to the Section 2019.210 disclosure we've been asking about for many months now. There is no reason why you cannot provide the Section 2019.210 disclosure now—indeed, your team has repeatedly represented that the absence of a protective order was the only cause for delay on the Section 2019.210 disclosure front. A protective order has now been entered. Plaintiffs should be in a position to provide the disclosure now, without any further delay. Please confirm that Plaintiffs will produce a Section 2019.210-compliant disclosure this week.

Finally, please confirm that you will maintain an ethical wall to keep Plaintiffs' attorneys who will have actual access to Apple's confidential information from participating in drafting or revising Plaintiffs' Section 2019.210 statement. As I am sure you can understand and appreciate, this temporary ethical wall is necessary because Plaintiffs' counsel who review Apple's core technical production will be unable to "divorce themselves from their knowledge of [Apple's] confidential material when identifying the information [Apple] allegedly misappropriated." *Jardin v. DATAllegro, Inc.*, 2011 WL 3299395, at *5 (S.D. Cal. July 29, 2011) (affirming magistrate judge's order creating a temporary ethical wall because plaintiff's counsel that learns defendant's confidential information "simply cannot unring the bell").

**Exhibit 13**
**-158-**

Thank you,
Ilissa

**Ilissa Samplin**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, July 15, 2020 10:59 AM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Section 2019.210 disclosure and amended interrogatory responses

[External Email]
Ilissa,

You still have not answered the questions I asked last week.  You cannot expect us to drop everything and respond in a single business day to your requests while ignoring our questions for a week.  Please provide an answer to the following questions as soon as possible.

1. What is Apple's basis for continuing to refuse to provide technical documents?
2. Will Apple confirm it will rely solely on public information for its non-infringement positions in this case?

As you know, Plaintiffs' amended complaint is due July 25.  Plaintiffs will agree to supplement their interrogatory answers within two weeks of filing the amended complaint.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Tuesday, July 14, 2020 9:40 PM

**Exhibit 13
-159-**

**To:** Adam.Powell <Adam.Powell@knobbe.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Section 2019.210 disclosure and amended interrogatory responses

Counsel:

We did not receive a response to the email below.  Please confirm, by **10 am PT tomorrow**, whether Plaintiffs will in fact serve their Section 2019.210 disclosure and amended responses to Apple's Interrogatory Nos. 5 through 13, and 17, by June 22, 2020.  We need to know where things stand on these matters as soon as possible, given that the parties have been meeting and conferring about all of them for months now—and Plaintiffs' only purported impediment to production was the absence of a protective order, which has now been entered.

We look forward to your prompt response.

Thank you,
Ilissa
**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Samplin, Ilissa
**Sent:** Monday, July 13, 2020 11:22 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo v. Apple - Section 2019.210 disclosure and amended interrogatory responses

Counsel:

You have repeatedly represented that "despite the stay" pertaining to trade secret discovery that you mistakenly contend applies to all parties, "Plaintiffs were not withholding discovery, even for requests related solely to trade secrets"—but rather, that "Plaintiffs will provide their 2019.210 statement and confidential documents after entry of a protective order."  (5/22/20 Kachner Ltr.; 6/2/20 Kachner Ltr.)  You likewise have represented that Plaintiffs would produce responsive documents, and amend numerous deficient interrogatory responses, upon entry of a protective order.  (*See, e.g.*, 6/6/20 Samplin Ltr. confirming parties' 6/3/20 meet and confer.)  As you know, the Protective Order was entered two weeks ago.  Plaintiffs nonetheless are still withholding their

**Exhibit 13**
**-160-**

Section 2109.210 disclosure, as well as documents and information responsive to Apple's trade secret-related and other discovery requests.  There is no justification for Plaintiffs' continued withholding of this relevant and responsive information.

For starters, please confirm that by no later than July 22, 2020, Plaintiffs will produce a Section 2019.210-compliant disclosure, as well as amended responses to Interrogatory Nos. 5 through 13, and 17.  Plaintiffs have now had *ample* time to prepare their Section 2019.210 disclosure and the amended responses to these Interrogatories.  There is no reason for Plaintiffs to continue to delay their production.

Please provide confirmation by 5 pm PT tomorrow, July 14.


Regards,
Ilissa
**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

**Exhibit 13
-161-**

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

**Exhibit 13**

**-162-**

# EXHIBIT 14

# THE STATE BAR OF CALIFORNIA

*Office of the Legislative Representative*

1310 K STREET                                    SACRAMENTO, CALIFORNIA 95814

TELEPHONE (916) 444-2762

April 5, 1983

The Honorable Elihu Harris
Assemblyman, 13th District
State Capitol, Room 6031
Sacramento, CA  95814

Dear Assemblyman Harris

RE:  Assembly Bill 501

The State Bar Patent, Trademark and Copyright Section has reviewed the above-referenced measure and its comments and position are enclosed herewith.

It is the policy of the State Bar to refer various measures which affect the practice of law to the State Bar Committees or Sections for review and comment.  The Patent, Trademark and Copyright Section, composed of legal experts and attorney practitioners in the area of patent, trademark and copyright law, has reviewed your measure and expressed the enclosed concerns.  The comments are intended to provide input to the legislative process from the expertise and legal resources of the constituency of the State Bar. It should be emphasized that its position and comments are those of the Patent, Trademark and Copyright Section and not the State Bar.

The Office of the Legislative Representative may be contacted for further information.

Sincerely

Peter Jensen
Legislative Representative

PJ:mc

enc.

cc:  Rubin Lopez, Consultant
     Assembly Judiciary Committee

**Exhibit 14**
-163-

March 28, 1983

### ASSEMBLY BILL 501

#### COMMENTS BY THE PATENT, TRADEMARK AND COPYRIGHT SECTION

I.     Background

The subject bill would codify the trade secret law
in California.  The Supreme Court has recognized the propriety
of intellectual property rights (as trade secret rights)
enforceable by state laws (Kewanee Oil Co. v. Bicron Corp.
(S.Ct. 1974), 181 U.S.P.Q. 673.  Such rights have been held
enforceable for as long as the embodying product is sold
(Aronson v. Quick Point Pencil Company (S.Ct. 1979), 201
U.S.P.Q. 1).

In California the law of trade secrets is established
by case law, see Monolith Portland Midwest Company v. Kaiser
Aluminum & Chemical Corporation et al. (C.A. 9 1969), 160
U.S.P.Q. 577.  Generally, California recognizes the restatement
definition of a trade secret, i.e. information which gives a
party an opportunity to obtain an advantage over competitors
(Restatement of Torts, Paragraph 757; Walker v. University
Books, Inc. et al. (C.A. 9 1979), 202 U.S.P.Q. 793).  A
trade secret may constitute a customer list if the list is
truly secret (Mayview Corporation et al. v. Rodstein et al.
(C.A. 9 1973), 178 U.S.P.Q. 449).

A two-year statute of limitations is applicable
to the California law of trade secrets (California Code of
Civil Procedure, Section 339).

-1-

FF-31

Exhibit 14
-164-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 180 of 300   Page ID
#:12245
Case 3:98-cv-03032-WGA   Document 77   Filed 01/22/99   PageID.1496   Page 16 of 24

To support a cause of action for trade secret violation in California, a plaintiff must allege ultimate facts showing the existence of a specific trade secret. Under case law, general allegations of designs, processes, techniques, and know-how are inadequate (Diodes, Inc. v. Franzen et al., 260 C.A.2d 244, 252). Unfortunately, the authority is not always followed. Any trade secret legislation should afford protection against unsupported trade secret litigation.

II.   Summary of Proposed Legislation

AB 501 defines a trade secret in a rather limited context as a basis for injunctive relief. It provides for an injunction that shall be terminated when the trade secret has ceased to exist. The bill provides for permissive damages of the actual loss and exemplary damages if a misappropriation is "willful and malicious".

III.   Section Position

Oppose unless amended.

IV.   Reasons for Position

A. The subject matter of trade secret litigation is almost invariably complex and difficult. The profits from pirating a trade secret can be considerable with

-2-

Exhibit 14
-165-

extreme losses to the owner of the trade secret. Consequently, trade secrets can be enticing to former employees. From the opposite point of view, the trade secret law poses a threat for use by employers to restrain departed employees with baseless trade secret claims.

Against such a background, it is submitted that this legislation should be carefully analyzed and thoroughly considered by persons having a broad base of experience in the field.

B. The following specific changes are now urged in Assembly Bill 501:

1. Page 2, lines 34-35, delete: ", and not being readily ascertainable by proper means by,".

COMMENT:

The clause is somewhat redundant. Presumably, it is intended to further limit the preceding clause. However, if information "derives independent economic value,...from not being generally known" (page 2, lines 33, 34), it likely is not "readily ascertainable".

More significantly, the objectionable language could cast a cloud on most trade secrets by introducing another test. It would invite an argument in almost every trade secret case that, "since the 'trade secret' could have been reverse engineered, or could have been learned from a

-3-

Exhibit 14
-166-

literature search, or could have been compiled from other knowledge, it was 'readily ascertainable'".

The objectionable language would complicate the legal processes and impact negatively on trade secret rights by imposing another criterion.

2.  Page 3, line 4, delete:  "reasonable".

COMMENT:

The word is redundant.  The bill specifies that an injunction be for a "period of time in order to eliminate commercial advantage" (page 3, line 5).  Adding the word "reasonable" to the stated time criterion will only promote confusion.

3.  Page 3, line 14, delete:  "or in lieu of".

COMMENT:

It is submitted to be inappropriate to suggest the substitution of damages for injunctive relief. Plaintiff should be made whole where possible and the trade secrets should be preserved.

4.  Page 3, line 20, change "and" to --or-- (connecting "willful and malicious").

COMMENT:

It is difficult to prove that an activity was "willful" or that it was "malicious".  Either occurrence

-4-

Exhibit 14
-167-

is submitted as sufficient to constitute a basis for exemplary
damages.

                        5.  Page 4, line 19, add:

                        --3426.11  A person alleging trade secret
misappropriation under this Title shall, before commencing
discovery relating to the trade secret cause, and in no
event later than thirty days after filing the action,
identify the trade secrets in issue with particularity
subject to such orders as may be appropriate under §3426.5.---

                        COMMENT:

                                The addition is intended to codify Diodes,
Inc. and afford a measure of protection against the procedure
of initiating an action to pursue extensive discovery
without revelation of the trade secret or secrets.


                        These are the conclusions of several individual
practitioners in the field.  It would be wise and helpful to
allow thirty days to check the conclusions with a broader
spectrum of practitioners.

Exhibit 14
-168-

**Exhibit 14**
**-169-**

MARCH 2, 1983

MEMORANDUM

FROM:   JOHN CARSON and GREG WOOD

RE:   <u>UNIFORM TRADE SECRETS ACT</u>

The following are suggestions for improvement of the Uniform
Trade Secrets Act if it is to be adopted in California.

1.   In the definition Section 3426.1, subsection (d) at page 2,
     lines 30-37, it would be much better to use the definition
     of "trade secret" from existing California Penal Code §499c(3).
     The problems with the Uniform Act definition of "trade secret"
     are that:

     A.   In addition to "not being generally known", the Section
          requires that in order for information to be a trade
          secret it must <u>also</u> "not be readily ascertainable by
          proper means." The phrase "readily ascertainable by
          proper means" can certainly be interpreted to include
          reverse engineering or independent creation. Since
          most trade secrets are capable of reverse engineering
          given sufficient time, and all are capable of independent
          creation, it is likely that much information presently
          considered to be a trade secret under California law
          would not be under the Uniform Act. For example, under
          the Uniform Act one might successfully argue that, while
          admitting the theft, the defendant should nevertheless
          not be penalized since the defendant could have reverse
          engineered the product in less than one year, thus
          satisfying the "readily ascertainable" test.

          It is submitted that the P.C. §499c definition is much
          more appropriate since it defines a "trade secret" as
          that which is secret. This would leave to Uniform Act
          §3426.2(a) the appropriate injunction period based on
          reverse engineering.

     B.   In order for there to be a trade secret under the Section,
          information needs to be not generally known and not
          readily ascertainable by other persons "who can obtain
          economic value from its disclosure or use". This probably
          requires that the only persons qualified to test general
          knowledge or ready ascertainability are competitors.
          This would seem to be an undue limitation since general
          knowledge, even if by others than competitors, should
          disqualify the trade secret.



**Exhibit 14**
**-170-**

2.

Penal Code §499c(3) solves many of these problems by defining a trade secret as that which is "not generally available to the public, and which gives one who uses it an advantage over competitors who do not know of or use" it. This Penal Code Section definition, if substituted into the proposed Civil Code Section, would cure many of the problems stated above.

2. In proposed §3426.2(a), at page 3, line 4, the word "reasonable" should be deleted. The clause states that an injunction may be continued for an additional "reasonable" period of time in order to eliminate commercial advantage. The word "reasonable" seems to add nothing but confusion to the Section since the additional period of time is already to eliminate the commercial advantage. The concept of reasonableness is not appropriate where there is another definition of the period of time in the same section, that is, "in order to eliminate commercial advantage".

3. In proposed Sections 3426.3 and 3426.4, at various places the word "may" should be changed to --shall--. These instances occur at page 3, lines 15, 16, 21, and 27. In our experience, thefts of trade secrets are similar to the problems incurred with counterfeiting and with copyright infringement, that is, theft of trade secrets is easily accomplished and lucrative, but it is very difficult to prove and stop. Therefore, there is much incentive to do it, and not much incentive against it. This leads to the conclusion that just as in the counterfeiting and copyright infringement situations, damages and profits should (shall) be recovered, as well as exemplary damages, attorneys fees and costs in the appropriate situations. The amounts should be the only things that are within the discretion of the Court.

4. In proposed Section 3426.3(a), "or in lieu of" should be deleted. As stated in Paragraph 3, damages are hard to prove in any event, and the defendant should not escape with only an injunction where loss has been caused. Even more importantly, the plaintiff should be made whole where possible.

5. In §3426.3(b), page 3, line 20, and §3426.4, page 3, line 26, the word "and" should be changed to --or--. It is very difficult to prove either wilfullness or maliciousness, much less both. If the conjunctive "and" were retained, this would in effect eliminate, for all practical purposes, the possibility of ever awarding exemplary damages or attorney's fees, both of which are desirable.

6. In §3426.3(b), page 3, line 22, "twice" should be changed to --three times--. The reason for this change is the same



3.

as mentioned above (Paragraph 3) with regard to damages, that
is, it is hard enough to discover and prove these causes
of action, and an incentive is needed against these types
of theft. No good reason is seen for the cap of twice rather
than three times since the amount of the award is in the
discretion of the Court "but not exceeding" the limit.

7. With regard to §3426.4, page 3, line 28, after "attorneys
   fees" there should be added --and costs--. We assume this
   was an oversight since it is more reasonable and usual to
   award costs than attorneys fees.

8. With regard to §3426.6, these provisions appear to be desirable.
   However, at page 3, line 40 - page 4, line 2, this sentence
   is unclear when read with the preceding sentence of that
   Section. The intent only becomes clear in reviewing the
   comments of the National Conference of Commissioners. It
   appears that they intended that the Statute of Limitations
   for both the initial taking and all subsequent uses begins
   running from the initial discovery of the misappropriation,
   and that this was the reason for adding this second sentence
   to the initial sentence of this Section which specifies a
   three year Statute of Limitations. If this is correct, we
   suggest that at the end of line 2 on page 4, after "claim"
   there be added the words --, and the three years for bringing
   an action in any way relating to the initial misappropriation
   or subsequent use runs from the discovery of or period
   for reasonable diligence after the initial misappropriation.--

9. One area not addressed by the Uniform Act is the area of
   plaintiff's abuse in initiating trade secret lawsuits for
   the purpose of harrassing or even driving a competitor out
   of business by forcing the competitor to spend large sums
   in defending unwarranted litigation. For example, where
   a plaintiff's employee quits and opens a competing business,
   a plaintiff often files a lawsuit for trade secret misappro-
   priation which states that the defendant took and is using
   plaintiff's trade secrets, but does not identify the trade
   secrets. The plaintiff can then embark upon extensive discovery
   which the new business is ill equipped to afford. Furthermore,
   by not informing the defendant with any degree of specificity
   as to what the alleged trade secrets are, defendant may be
   forced to disclose its own business or trade secrets, even
   though those matters may be irrelevant, and the defendant may
   not learn of the exact nature of the supposedly misappropriated
   trade secrets until the eve of trial. Therefore, we suggest
   adding a new section which could read:



**Exhibit 14**
**-172-**

4.

(New Section) - Any person bringing an action alleging
trade secret misappropriation shall, before discovery
relating to the trade secret cause can be commenced
by that party, but in any event no later than sixty
days after filing the action, identify the trade
secrets in issue with particularity subject to such
orders as may be appropriate under §3426.5.

10. With regard to §3426.8, page 4, lines 7-10, we are not sure
as to the intent of this Section.  Does this mean that the
California courts should consider themselves bound by case
law in other jurisdictions?  Does this mean that the courts
should look to the legislative history of the National Conference
of Commissioners?  This Section should be made more specific
or should be deleted.

Exhibit 14
-173-

# EXHIBIT 15

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 190 of 300   Page ID
#:12255
Case 4:15-cv-00798-HSG   Document 122   Filed 09/16/15   Page 1 of 32

1 | THOMAS J. LOSAVIO, SBN 51023
JAMES F. REGAN, SBN 252199
2 | LOW, BALL & LYNCH
505 Montgomery Street, 7th Floor
3 | San Francisco, California 94111
Telephone:     (415) 981-6630
4 | Facsimile:      (415) 982-1634
Email: tlosavio@lowball.com
5 | Email: mbeuselinck@lowball.com

6

Attorneys for Defendants
7 | ANNA GATTI and IQ SYSTEMS, LLC

8

9 |                UNITED STATES DISTRICT COURT

10 |          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12 | LOOP AI LABS, INC., a Delaware          Case No. 3:15-CV-00798-HSG
Corporation,
13 |                                          **DEFENDANT IQ SYSTEMS, LLC'S
              Plaintiff,                      ANSWER TO FIRST AMENDED
14 |                                          COMPLAINT;**
              vs.
15 |                                          **JURY TRIAL DEMANDED**
ANNA GATTI, et al.,
16 |
              Defendants.
17 |

18 |          IQ SYSTEMS, LLC, files this answer to Plaintiff Loop AI Labs, Inc.'s ("Plaintiff") complaint.

19 | IQ SYSTEMS, LLC denies each and every allegation contained in the complaint except those expressly

20 | admitted below. Each paragraph of the Answer below responds to the same numbered paragraph of the

21 | complaint.

22 |          **I.      SUMMARY AND NATURE OF THE ACTION**

23 |          1.      With respect to the allegations contained in Paragraph 1, IQ SYSTEMS, LLC denies all

24 | allegations therein.

25 |          2.      With respect to the allegations contained in Paragraph 2, IQ SYSTEMS, LLC admits all

26 | allegations therein except IQ SYSTEMS, LLC denies for lack of knowledge the allegations about

27 | speech analytics.

28 |          3.      With respect to the allegations contained in Paragraph 3, IQ SYSTEMS, LLC denies all

-1-
DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                    Case No. 3:15-CV-00798-HSG

Exhibit 15
-174-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 191 of 300   Page ID
#:12256
Case 4:15-cv-00798-HSG   Document 122   Filed 09/16/15   Page 2 of 32

1 allegations therein.

2   4.  With respect to the allegations contained in Paragraph 4, IQ SYSTEMS, LLC denies all

3 allegations therein except that Anna Gatti was Chief Executive Officer of the Company.

4   5.  With respect to the allegations contained in Paragraph 5, IQ SYSTEMS, LLC denies all

5 allegations therein but admits Anna Gatti was removed as a director of the Company.

6   6.  With respect to the allegations contained in Paragraph 6, IQ SYSTEMS, LLC denies all

7 allegations therein.

8   7.  With respect to the allegations contained in Paragraph 7, IQ SYSTEMS, LLC denies all

9 allegations therein.

10   8.  With respect to the allegations contained in Paragraph 8, IQ SYSTEMS, LLC denies all

11 allegations therein.

12   9.  With respect to the allegations contained in Paragraph 9, IQ SYSTEMS, LLC denies all

13 allegations therein.

14   10.  With respect to the allegations contained in Paragraph 10, IQ SYSTEMS, LLC denies all

15 allegations therein.

16   11.  With respect to the allegations contained in Paragraph 11, IQ SYSTEMS, LLC denies all

17 allegations therein.

18   12.  With respect to the allegations contained in Paragraph 12, IQ SYSTEMS, LLC denies all

19 allegations therein.

20   13.  With respect to the allegations contained in Paragraph 13, IQ SYSTEMS, LLC denies all

21 allegations therein.

22   14.  With respect to the allegations contained in Paragraph 14, IQ SYSTEMS, LLC denies all

23 allegations therein.

24   15.  With respect to the allegations contained in Paragraph 15, IQ SYSTEMS, LLC denies all

25 allegations therein.

26   16.  With respect to the allegations contained in Paragraph 16, IQ SYSTEMS, LLC denies all

27 allegations therein.

28   17.  With respect to the allegations contained in Paragraph 17, IQ SYSTEMS, LLC denies all

DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx          Case No. 3:15-CV-00798-HSG

**Exhibit 15**
**-175-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 192 of 300   Page ID
#:12257
Case 4:15-cv-00798-HSG   Document 122   Filed 09/16/15   Page 3 of 32

1 | allegations therein.

2 |     18.      With respect to the allegations contained in Paragraph 18, IQ SYSTEMS, LLC denies all

3 | allegations therein.

4 |     19.      With respect to the allegations contained in Paragraph 19, IQ SYSTEMS, LLC denies all

5 | allegations therein.

6 |     20.      With respect to the allegations contained in Paragraph 20, IQ SYSTEMS, LLC denies all

7 | allegations therein.

8 |     21.      With respect to the allegations contained in Paragraph 21, IQ SYSTEMS, LLC denies all

9 | allegations therein.

10 |     22.      With respect to the allegations contained in Paragraph 22, IQ SYSTEMS, LLC denies all

11 | allegations therein.

12 |     23.      With respect to the allegations contained in Paragraph 23, IQ SYSTEMS, LLC denies all

13 | allegations therein.

14 |     24.      With respect to the allegations contained in Paragraph 24, IQ SYSTEMS, LLC denies all

15 | allegations therein.

16 |     25.      With respect to the allegations contained in Paragraph 25, IQ SYSTEMS, LLC denies all

17 | allegations therein.

18 |     26.      With respect to the allegations contained in Paragraph 26, IQ SYSTEMS, LLC denies all

19 | allegations therein.

20 |     27.      With respect to the allegations contained in Paragraph 27, IQ SYSTEMS, LLC admits

21 | all allegations therein except denies the first sentence, which alleges that after a venture capital fund

22 | agreed to provide a substantial amount of funding, it included a bridge amount to be paid in October

23 | 2014.

24 |     28.      With respect to the allegations contained in Paragraph 28, IQ SYSTEMS, LLC denies all

25 | allegations therein.

26 |     29.      With respect to the allegations contained in Paragraph 29, IQ SYSTEMS, LLC denies all

27 | allegations therein.

28 |     30.      With respect to the allegations contained in Paragraph 30, IQ SYSTEMS, LLC denies all

-3-
DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx               Case No. 3:15-CV-00798-HSG

Exhibit 15
-176-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 193 of 300   Page ID
#:12258
Case 4:15-cv-00798-HSG   Document 122   Filed 09/16/15   Page 4 of 32

1    allegations therein.

2    31.    With respect to the allegations contained in Paragraph 31, IQ SYSTEMS, LLC denies all

3    allegations therein but admits an email was sent, which is mischaracterized by the allegations.

4    32.    With respect to the allegations contained in Paragraph 32, IQ SYSTEMS, LLC denies all

5    allegations therein.

6    33.    With respect to the allegations contained in Paragraph 33, IQ SYSTEMS, LLC denies all

7    allegations therein.

8    34.    With respect to the allegations contained in Paragraph 34, IQ SYSTEMS, LLC denies all

9    allegations therein.

10                    **II.    THE PARTIES**

11    35.    With respect to the allegations contained in Paragraph 35, IQ SYSTEMS, LLC admits

12    all allegations therein.

13    36.    With respect to the allegations contained in Paragraph 36, IQ SYSTEMS, LLC admits

14    all allegations therein.

15    37.    With respect to the allegations contained in Paragraph 37, IQ SYSTEMS, LLC Admits

16    IQ System LLC is a limited liability company established under the laws of the State of California on

17    January 21, 2014, domiciled in San Francisco, and that Anna Gatti is the sole member of IQ System

18    LLC.  As to all other allegations in Paragraph 37, IQ SYSTEMS, LLC denies all allegations therein.

19    38.    With respect to the allegations contained in Paragraph 38, IQ SYSTEMS, LLC denies all

20    allegations therein.

21    39.    With respect to the allegations contained in Paragraph 39, IQ SYSTEMS, LLC denies all

22    allegations therein.

23    40.    These allegations are not directed at IQ SYSTEMS, LLC and, therefore, no response is

24    required. To the extent a response is required, IQ SYSTEMS, LLC denies for lack of knowledge all

25    allegations contained in Paragraph 40.

26    41.    These allegations are not directed at IQ SYSTEMS, LLC and, therefore, no response is

27    required. To the extent a response is required, IQ SYSTEMS, LLC denies all allegations contained in

28    Paragraph 41.

-4-
DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                    Case No. 3:15-CV-00798-HSG

**Exhibit 15**
**-177-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 194 of 300   Page ID
#:12259
Case 4:15-cv-00798-HSG   Document 122   Filed 09/16/15   Page 5 of 32

1      42.      With respect to the allegations contained in Paragraph 42, IQ SYSTEMS, LLC denies all

2   allegations therein but admits the principal place of business was listed as 24 Clarendon Avenue, San

3   Francisco, California.

### III.      OTHER CO-CONSPIRATORS

5      43.      With respect to the allegations contained in Paragraph 43, IQ SYSTEMS, LLC admits

6   that Antonio Di Napoli is an individual residing in San Francisco at 24 Clarendon Avenue with Gatti.

7   IQ SYSTEMS, LLC denies any and all remaining allegations therein.

8      44.      With respect to the allegations contained in Paragraph 44, IQ SYSTEMS, LLC denies

9   for lack of knowledge the allegations regarding Manuela Micoli's residence. Further, IQ SYSTEMS,

10  LLC denies any and all remaining allegations therein.

11     45.      With respect to the allegations contained in Paragraph 45, IQ SYSTEMS, LLC denies all

12  allegations therein.

13     46.      These allegations are not directed at IQ SYSTEMS, LLC and, therefore, no response is

14  required. To the extent a response is required, IQ SYSTEMS, LLC denies all allegations contained in

15  Paragraph 46 except that Dario Vignudelli is a former consultant of the Company.

16     47.      With respect to the allegations contained in Paragraph 47, IQ SYSTEMS, LLC denies all

17  allegations therein.

18     48.      With respect to the allegations contained in Paragraph 48, no response is required. To

19  the extent a response is required, IQ SYSTEMS, LLC denies all allegations contains therein.

### IV.      JURISDICTION

21     49.      With respect to the allegations contained in Paragraph 49, IQ SYSTEMS, LLC denies

22  for lack of knowledge all allegations therein.

23     50.      With respect to the allegations contained in Paragraph 50, IQ SYSTEMS, LLC denies

24  for lack of knowledge all allegations therein.

25     51.      With respect to the allegations contained in Paragraph 51, IQ SYSTEMS, LLC denies

26  for lack of knowledge all allegations therein.

27     52.      With respect to the allegations contained in Paragraph 52, IQ SYSTEMS, LLC denies

28  for lack of knowledge all allegations therein.

-5-
DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                                    Case No. 3:15-CV-00798-HSG

Exhibit 15
-178-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 195 of 300   Page ID
#:12260
Case 4:15-cv-00798-HSG   Document 102   Filed 09/16/15   Page 6 of 32

53.     With respect to the allegations contained in Paragraph 53, IQ SYSTEMS, LLC denies for lack of knowledge all allegations therein.

54.     With respect to the allegations contained in Paragraph 54, IQ SYSTEMS, LLC denies for lack of knowledge all allegations therein.

55.     With respect to the allegations contained in Paragraph 55, IQ SYSTEMS, LLC denies for lack of knowledge all allegations therein.

56.     With respect to the allegations contained in Paragraph 56, IQ SYSTEMS, LLC denies all allegations therein, but admits a presentation run by Valeria Sandei occurred.

57.     With respect to the allegations contained in Paragraph 57, IQ SYSTEMS, LLC denies for lack of knowledge all allegations therein.

58.     With respect to the allegations contained in Paragraph 58, IQ SYSTEMS, LLC denies for lack of knowledge all allegations therein.

59.     With respect to the allegations contained in Paragraph 59, IQ SYSTEMS, LLC denies for lack of knowledge all allegations therein.

60.     With respect to the allegations contained in Paragraph 60, IQ SYSTEMS, LLC denies all allegations therein.

61.     With respect to the allegations contained in Paragraph 61, IQ SYSTEMS, LLC denies all allegations therein.

62.     With respect to the allegations contained in Paragraph 62 and its subparts, IQ SYSTEMS, LLC denies all allegations therein but admits to the contents of paragraphs beginning at lines 6, 13 and 28 on Page 19, and that Almawave applied for a patent and that emails were exchanged with Angela Nicolella.

63.     With respect to the allegations contained in Paragraph 63, IQ SYSTEMS, LLC denies for lack of knowledge all allegations therein.

64.     With respect to the allegations contained in Paragraph 64, IQ SYSTEMS, LLC denies for lack of knowledge all allegations therein.

65.     With respect to the allegations contained in Paragraph 65, IQ SYSTEMS, LLC denies for lack of knowledge all allegations therein.

DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                                                           Case No. 3:15-CV-00798-HSG

**Exhibit 15**
**-179-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 196 of 300   Page ID
Case 4:15-cv-00798-HSG   Document 122-61 Filed 09/16/15   Page 7 of 32
#:12261

66.      With respect to the allegations contained in Paragraph 66, IQ SYSTEMS, LLC denies for lack of knowledge all allegations therein.

## V.      GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A.      The Company Entered Into The Stock Purchase Agreement In Reliance Upon Gatti's Materially False And Misleading Representations.**

67.      With respect to the allegations contained in Paragraph 67, IQ SYSTEMS, LLC denies all allegations therein.

68.      With respect to the allegations contained in Paragraph 68, IQ SYSTEMS, LLC denies for lack of knowledge all allegations therein.

69.      With respect to the allegations contained in Paragraph 69, IQ SYSTEMS, LLC denies all allegations therein.

70.      With respect to the allegations contained in Paragraph 70, IQ SYSTEMS, LLC denies all allegations therein.

71.      With respect to the allegations contained in Paragraph 71, IQ SYSTEMS, LLC denies all allegations therein.

72.      With respect to the allegations contained in Paragraph 72, IQ SYSTEMS, LLC denies all allegations therein except the first sentence, that Anna Gatti was an independent director of an Italian public company.

73.      With respect to the allegations contained in Paragraph 73, IQ SYSTEMS, LLC denies all allegations therein.

74.      With respect to the allegations contained in Paragraph 74, IQ SYSTEMS, LLC denies all allegations therein.

75.      With respect to the allegations contained in Paragraph 75, IQ SYSTEMS, LLC denies all allegations therein.

76.      With respect to the allegations contained in Paragraph 76, IQ SYSTEMS, LLC denies all allegations therein.

77.      With respect to the allegations contained in Paragraph 77, IQ SYSTEMS, LLC denies all allegations therein.

-7-
DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                                      Case No. 3:15-CV-00798-HSG

Exhibit 15
-180-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 197 of 300   Page ID
#:12262
Case 4:15-cv-00798-HSG   Document 122   Filed 09/16/15   Page 8 of 32

1    78.    With respect to the allegations contained in Paragraph 78, IQ SYSTEMS, LLC denies all

2  allegations therein.

3        **B.    Gatti's Contractual Obligations To The Company**

4    79.    With respect to the allegations contained in Paragraph 79, IQ SYSTEMS, LLC admits

5  all allegations therein.

6    80.    With respect to the allegations contained in Paragraph 80, IQ SYSTEMS, LLC admits

7  all allegations therein.

8    81.    With respect to the allegations contained in Paragraph 81, IQ SYSTEMS, LLC admits

9  all allegations therein.

10    82.    With respect to the allegations contained in Paragraph 82, IQ SYSTEMS, LLC admits

11  all allegations therein.

12    83.    With respect to the allegations contained in Paragraph 83, IQ SYSTEMS, LLC admits

13  all allegations therein.

14    84.    With respect to the allegations contained in Paragraph 84, IQ SYSTEMS, LLC admits

15  all allegations therein.

16    85.    With respect to the allegations contained in Paragraph 85, IQ SYSTEMS, LLC admits

17  all allegations therein.

18    86.    With respect to the allegations contained in Paragraph 86, IQ SYSTEMS, LLC admits

19  all allegations therein.

20        **C.    Unlawful Activities By Gatti And the Other Defendants Since October 2012.**

21    87.    With respect to the allegations contained in Paragraph 87, IQ SYSTEMS, LLC admits

22  all allegations therein.

23    88.    With respect to the allegations contained in Paragraph 88, IQ SYSTEMS, LLC denies all

24  allegations therein.

25    89.    With respect to the allegations contained in Paragraph 89, IQ SYSTEMS, LLC denies all

26  allegations therein except that Anna Gatti's title and assigned role included seeking out venture capital

27  funding for the Company and she was expected to network within the venture capital community and

28  the Northern California technology world, with a view to building awareness of the Company and of

-8-
DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                                    Case No. 3:15-CV-00798-HSG

**Exhibit 15**
**-181-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 198 of 300   Page ID
#:12263
Case 4:15-cv-00798-HSG   Document 112   Filed 09/16/15   Page 9 of 32

1  the value of its proprietary technology, to gather market intelligence that would be useful to the

2  Company, and to find and attempt to close financing from investors.

3  90.      With respect to the allegations contained in Paragraph 90, IQ SYSTEMS, LLC denies all

4  allegations therein.

5  91.      With respect to the allegations contained in Paragraph 91, IQ SYSTEMS, LLC denies all

6  allegations therein.

7  92.      With respect to the allegations contained in Paragraph 92, IQ SYSTEMS, LLC denies all

8  allegations therein.

9  93.      With respect to the allegations contained in Paragraph 93, IQ SYSTEMS, LLC denies all

10  allegations therein.

11                     1.   **The Needs**

12  94.      With respect to the allegations contained in Paragraph 94, IQ SYSTEMS, LLC denies all

13  allegations therein.

14  95.      With respect to the allegations contained in Paragraph 95, IQ SYSTEMS, LLC denies

15  for lack of knowledge all allegations therein.

16  96.      With respect to the allegations contained in Paragraph 96, IQ SYSTEMS, LLC denies all

17  allegations therein.

18  97.      With respect to the allegations contained in Paragraph 97, IQ SYSTEMS, LLC denies all

19  allegations therein except the first sentence, that on October 21, 2013, at Gatti's invitation, Pansa came

20  to the Company's offices in San Francisco to meet with Gatti.

21  98.      With respect to the allegations contained in Paragraph 98, IQ SYSTEMS, LLC admits

22  all allegations therein.

23  99.      With respect to the allegations contained in Paragraph 99, IQ SYSTEMS, LLC denies all

24  allegations therein.

25  100.      With respect to the allegations contained in Paragraph 100, IQ SYSTEMS, LLC denies

26  all allegations therein.

27  101.      With respect to the allegations contained in Paragraph 101, IQ SYSTEMS, LLC denies

28  all allegations therein.

-9-
DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                                    Case No. 3:15-CV-00798-HSG

**Exhibit 15**
**-182-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 199 of 300   Page ID
#: 12264
Case 4:15-cv-00798-HSG   Document 264   Filed 09/16/15   Page 10 of 32

## 2.   The Almaviva Defendants.

102.      With respect to the allegations contained in Paragraph 102, IQ SYSTEMS, LLC denies all allegations therein.

103.      With respect to the allegations contained in Paragraph 103, IQ SYSTEMS, LLC denies all allegations therein except that the Almaviva Defendants operate a technology company and sought to enter the San Francisco and Silicon Valley space.

104.      With respect to the allegations contained in Paragraph 104, IQ SYSTEMS, LLC denies all allegations therein except that the Almaviva Defendants knew that Gatti was already the CEO of the Company.

105.      With respect to the allegations contained in Paragraph 105, IQ SYSTEMS, LLC denies all allegations therein.

106.      With respect to the allegations contained in Paragraph 106, IQ SYSTEMS, LLC denies all allegations therein except that the company was domiciled at Gatti's address.

107.      With respect to the allegations contained in Paragraph 107, IQ SYSTEMS, LLC denies all allegations therein.

108.      With respect to the allegations contained in Paragraph 108, IQ SYSTEMS, LLC denies all allegations therein.

109.      With respect to the allegations contained in Paragraph 109, IQ SYSTEMS, LLC denies all allegations therein.

110.      With respect to the allegations contained in Paragraph 110, IQ SYSTEMS, LLC denies all allegations therein.

111.      With respect to the allegations contained in Paragraph 111, IQ SYSTEMS, LLC denies all allegations therein except that it admits that Almaviva was not interested in investing in the Company.

112.      With respect to the allegations contained in Paragraph 112, IQ SYSTEMS, LLC denies all allegations therein.

113.      With respect to the allegations contained in Paragraph 113, IQ SYSTEMS, LLC denies for lack of knowledge all allegations therein.

DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                                                    Case No. 3:15-CV-00798-HSG

**Exhibit 15**
**-183-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 200 of 300   Page ID
#:12265
Case 4:15-cv-00798-HSG   Document 122   Filed 09/16/15   Page 11 of 32

114.     With respect to the allegations contained in Paragraph 114, IQ SYSTEMS, LLC denies all allegations therein.

115.     With respect to the allegations contained in Paragraph 115, IQ SYSTEMS, LLC denies all allegations therein except admits that the Company was at the Beta Track in Dublin.

116.     With respect to the allegations contained in Paragraph 116, IQ SYSTEMS, LLC denies all allegations therein except that Anna Gatti would remain a point of contact with Investment Fund 4.

117.     With respect to the allegations contained in Paragraph 117, IQ SYSTEMS, LLC denies all allegations therein except for the first sentence, that negotiations advanced to its final stages and the Company and Investment Fund 4 executed a term sheet setting forth some of the terms of a potential agreement.

118.     With respect to the allegations contained in Paragraph 118, IQ SYSTEMS, LLC denies all allegations therein.

119.     With respect to the allegations contained in Paragraph 119, IQ SYSTEMS, LLC denies all allegations therein except that Anna Gatti was removed as a director in the Company.

120.     With respect to the allegations contained in Paragraph 120, IQ SYSTEMS, LLC denies all allegations therein.

121.     With respect to the allegations contained in Paragraph 121, IQ SYSTEMS, LLC denies all allegations therein.

122.     With respect to the allegations contained in Paragraph 122, IQ SYSTEMS, LLC denies all allegations therein except that Mr. DiNapoli was awaiting office space and the company consented to the use of two desks.

123.     With respect to the allegations contained in Paragraph 123, IQ SYSTEMS, LLC denies all allegations therein.

124.     With respect to the allegations contained in Paragraph 124, IQ SYSTEMS, LLC denies all allegations therein except that the company was domiciled at Gatti's address.

125.     With respect to the allegations contained in Paragraph 125, IQ SYSTEMS, LLC denies all allegations therein.

-11-
DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                      Case No. 3:15-CV-00798-HSG

Exhibit 15
-184-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 201 of 300   Page ID
#:12266
Case 4:15-cv-00798-HSG   Document 126   Filed 09/16/15   Page 12 of 32

1    126.        With respect to the allegations contained in Paragraph 126, IQ SYSTEMS, LLC denies

2    all allegations therein.

3    127.        With respect to the allegations contained in Paragraph 127, IQ SYSTEMS, LLC denies

4    all allegations therein.

5    128.        With respect to the allegations contained in Paragraph 128, IQ SYSTEMS, LLC denies

6    all allegations therein.

7    129.        With respect to the allegations contained in Paragraph 129, IQ SYSTEMS, LLC denies

8    all allegations therein and denies for lack of knowledge the allegations about Valeria Sandei .

9    130.        With respect to the allegations contained in Paragraph 130, IQ SYSTEMS, LLC denies

10   all allegations therein.

11   131.        With respect to the allegations contained in Paragraph 131, IQ SYSTEMS, LLC denies

12   all allegations therein.

13          **D.        Gatti and the Amlaviva Defendants' Wrongdoing Is Ongoing**

14   132.        With respect to the allegations contained in Paragraph 132, IQ SYSTEMS, LLC denies

15   all allegations therein.

16   133.        With respect to the allegations contained in Paragraph 133, IQ SYSTEMS, LLC denies

17   all allegations therein.

18   134.        With respect to the allegations contained in Paragraph 134, IQ SYSTEMS, LLC denies

19   all allegations therein.

20   135.        With respect to the allegations contained in Paragraph 135, IQ SYSTEMS, LLC denies

21   all allegations therein but admits Anna Gatti sent an email on that date.

22   136.        With respect to the allegations contained in Paragraph 136, IQ SYSTEMS, LLC denies

23   all allegations therein.

24          **E.        The Confidential Information and Trade Secrets At Issue**

25   137.        With respect to the allegations contained in Paragraph 137, IQ SYSTEMS, LLC denies

26   all allegations therein.

27   138.        With respect to the allegations contained in Paragraph 138, IQ SYSTEMS, LLC denies

28   all allegations therein.

DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                                    Case No. 3:15-CV-00798-HSG

**Exhibit 15
-185-**

Case 8:20-cv-00048-JVS-JDE  Document 169-4  Filed 09/01/20  Page 202 of 300  Page ID
#:12267
Case 4:15-cv-00798-HSG  Document 122  Filed 09/16/15  Page 13 of 32

1    139.      With respect to the allegations contained in Paragraph 139, IQ SYSTEMS, LLC denies

2  all allegations therein.

3    140.      With respect to the allegations contained in Paragraph 140, IQ SYSTEMS, LLC denies

4  all allegations therein.

5    141.      With respect to the allegations contained in Paragraph 141, IQ SYSTEMS, LLC denies

6  all allegations therein.

7    142.      With respect to the allegations contained in Paragraph 142, IQ SYSTEMS, LLC denies

8  all allegations therein.

9    143.      With respect to the allegations contained in Paragraph 143, IQ SYSTEMS, LLC denies

10  all allegations therein.

11    144.      With respect to the allegations contained in Paragraph 144, IQ SYSTEMS, LLC denies

12  all allegations therein.

13    145.      With respect to the allegations contained in Paragraph 145, IQ SYSTEMS, LLC denies

14  all allegations therein.

15    146.      With respect to the allegations contained in Paragraph 146, IQ SYSTEMS, LLC denies

16  for lack of knowledge all allegations therein but admits Anna Gatti sent an email and admits the

17  discussions were confidential.

18    147.      With respect to the allegations contained in Paragraph 147, IQ SYSTEMS, LLC denies

19  for lack of knowledge all allegations therein.

20    148.      With respect to the allegations contained in Paragraph 148, IQ SYSTEMS, LLC denies

21  all allegations therein.

22    149.      With respect to the allegations contained in Paragraph 149, IQ SYSTEMS, LLC denies

23  for lack of knowledge all allegations therein.

24    150.      With respect to the allegations contained in Paragraph 150, IQ SYSTEMS, LLC denies

25  for lack of knowledge all allegations therein.

26    151.      With respect to the allegations contained in Paragraph 151, IQ SYSTEMS, LLC denies

27  for lack of knowledge all allegations therein.

28

DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                    Case No. 3:15-CV-00798-HSG

**Exhibit 15
-186-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 203 of 300   Page ID
#:12268
Case 4:15-cv-00798-HSG   Document 226   Filed 09/16/15   Page 14 of 32

1    152.      With respect to the allegations contained in Paragraph 152, IQ SYSTEMS, LLC denies

2  for lack of knowledge all allegations therein.

3    153.      With respect to the allegations contained in Paragraph 153, IQ SYSTEMS, LLC denies

4  for lack of knowledge all allegations therein.

5    154.      With respect to the allegations contained in Paragraph 154, IQ SYSTEMS, LLC denies

6  for lack of knowledge all allegations therein.

7    155.      With respect to the allegations contained in Paragraph 155, IQ SYSTEMS, LLC denies

8  for lack of knowledge all allegations therein.

9    156.      With respect to the allegations contained in Paragraph 156, IQ SYSTEMS, LLC denies

10  for lack of knowledge all allegations therein.

11    157.      With respect to the allegations contained in Paragraph 157, IQ SYSTEMS, LLC admits

12  to the first sentence but denies all other allegations therein.

13    158.      With respect to the allegations contained in Paragraph 158, IQ SYSTEMS, LLC denies

14  for lack of knowledge all allegations therein.

15    159.      With respect to the allegations contained in Paragraph 159, IQ SYSTEMS, LLC denies

16  for lack of knowledge all allegations therein.

17    160.      With respect to the allegations contained in Paragraph 160, IQ SYSTEMS, LLC denies

18  for lack of knowledge all allegations therein.

19    161.      With respect to the allegations contained in Paragraph 161, IQ SYSTEMS, LLC denies

20  for lack of knowledge all allegations therein.

21    162.      With respect to the allegations contained in Paragraph 162, IQ SYSTEMS, LLC denies

22  for lack of knowledge all allegations therein.

23    163.      With respect to the allegations contained in Paragraph 163, IQ SYSTEMS, LLC admits

24  that the Company was preparing to undergo due diligence and Anna Gatti compiled documents but

25  denies all other allegations therein.

26    164.      With respect to the allegations contained in Paragraph 164, IQ SYSTEMS, LLC denies

27  for lack of knowledge all allegations therein.

28

DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                                   Case No. 3:15-CV-00798-HSG

Exhibit 15
-187-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 204 of 300   Page ID
#:12269
Case 4:15-cv-00798-HSG   Document 122   Filed 09/16/15   Page 15 of 32

1   165.      With respect to the allegations contained in Paragraph 165, IQ SYSTEMS, LLC denies

2   for lack of knowledge all allegations therein.

3   166.      With respect to the allegations contained in Paragraph 166, IQ SYSTEMS, LLC denies

4   all allegations therein.

5   167.      With respect to the allegations contained in Paragraph 167, IQ SYSTEMS, LLC denies

6   all allegations therein.

7   168.      With respect to the allegations contained in Paragraph 168, IQ SYSTEMS, LLC denies

8   all allegations therein.

9   169.      With respect to the allegations contained in Paragraph 169, IQ SYSTEMS, LLC denies

10   all allegations therein.

11   170.      With respect to the allegations contained in Paragraph 170, IQ SYSTEMS, LLC denies

12   all allegations therein.

13   171.      With respect to the allegations contained in Paragraph 171, IQ SYSTEMS, LLC denies

14   all allegations therein.

15   172.      With respect to the allegations contained in Paragraph 171, IQ SYSTEMS, LLC denies

16   for lack of knowledge all allegations therein.

17   173.      With respect to the allegations contained in Paragraph 173, IQ SYSTEMS, LLC denies

18   all allegations therein except that Vignudelli was retained by IQ Systems.

19   174.      With respect to the allegations contained in Paragraph 174, IQ SYSTEMS, LLC denies

20   all allegations therein.

21   175.      With respect to the allegations contained in Paragraph 175, IQ SYSTEMS, LLC denies

22   all allegations therein.

23   176.      With respect to the allegations contained in Paragraph 176, IQ SYSTEMS, LLC denies

24   all allegations therein.

25   177.      With respect to the allegations contained in Paragraph 177, IQ SYSTEMS, LLC denies

26   all allegations therein.

27   178.      With respect to the allegations contained in Paragraph 178, IQ SYSTEMS, LLC denies

28   all allegations therein.

-15-
DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                                  Case No. 3:15-CV-00798-HSG

Exhibit 15
-188-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 205 of 300   Page ID
#:12270
Case 4:15-cv-00798-HSG   Document 122   Filed 09/16/15   Page 16 of 32

1    179.        With respect to the allegations contained in Paragraph 179, IQ SYSTEMS, LLC denies
2    all allegations therein.

3    180.        With respect to the allegations contained in Paragraph 180, IQ SYSTEMS, LLC denies
4    all allegations therein.

5    181.        With respect to the allegations contained in Paragraph 181, IQ SYSTEMS, LLC denies
6    all allegations therein.

7    182.        With respect to the allegations contained in Paragraph 182, IQ SYSTEMS, LLC denies
8    all allegations therein.

9                    **ACTIONS BY THE DEFENDANTS**

10    183.        With respect to the allegations contained in Paragraph 183, IQ SYSTEMS, LLC denies
11    all allegations therein except that Anna Gatti was an employee of Almawave USA.

12    184.        With respect to the allegations contained in Paragraph 184, IQ SYSTEMS, LLC denies
13    all allegations therein.

14    185.        With respect to the allegations contained in Paragraph 185, IQ SYSTEMS, LLC denies
15    all allegations therein.

16    186.        With respect to the allegations contained in Paragraph 186, IQ SYSTEMS, LLC denies
17    all allegations therein.

18    187.        With respect to the allegations contained in Paragraph 187, IQ SYSTEMS, LLC denies
19    all allegations therein.

20    188.        With respect to the allegations contained in Paragraph 188, IQ SYSTEMS, LLC denies
21    for lack of knowledge all allegations therein.

22    189.        With respect to the allegations contained in Paragraph 189, IQ SYSTEMS, LLC denies
23    for lack of knowledge all allegations therein.

24    190.        With respect to the allegations contained in Paragraph 190, IQ SYSTEMS, LLC denies
25    all allegations therein.

26    191.        With respect to the allegations contained in Paragraph 191, IQ SYSTEMS, LLC denies
27    all allegations therein.

28

DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                          Case No. 3:15-CV-00798-HSG

**Exhibit 15
-189-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 206 of 300   Page ID
#:12271
Case 4:15-cv-00798-HSG   Document 122   Filed 09/16/15   Page 17 of 32

1  192.        With respect to the allegations contained in Paragraph 192, IQ SYSTEMS, LLC denies

2  all allegations therein.

3                           **FIRST CAUSE OF ACTION**

4        **(Racketeer Influenced and Corrupt Organizations, 18 U.S.C. §§ 1962 *et seq.*,**

5                            **against All Defendants)**

6  193.        This paragraph incorporates paragraphs 1 through 192 of Plaintiff's complaint. IQ

7  SYSTEMS, LLC likewise incorporates its earlier responses to paragraphs 1 through 192 as if set forth

8  in full.

9  194.        With respect to the allegations contained in Paragraph 194, IQ SYSTEMS, LLC denies

10  all allegations therein.

11  195.        With respect to the allegations contained in Paragraph 195, IQ SYSTEMS, LLC denies

12  for lack of knowledge all allegations therein.

13  196.        With respect to the allegations contained in Paragraph 196, IQ SYSTEMS, LLC denies

14  all allegations therein.

15  197.        With respect to the allegations contained in Paragraph 197, IQ SYSTEMS, LLC denies

16  for lack of knowledge all allegations therein except that Almaviva applied for a patent.

17  198.        With respect to the allegations contained in Paragraph 198, IQ SYSTEMS, LLC denies

18  all allegations therein.

19  199.        With respect to the allegations contained in Paragraph 199, IQ SYSTEMS, LLC denies

20  all allegations therein.

21  200.        With respect to the allegations contained in Paragraph 200, IQ SYSTEMS, LLC denies

22  all allegations therein.

23  201.        With respect to the allegations contained in Paragraph 201, IQ SYSTEMS, LLC denies

24  all allegations therein but admits to Anna Gatti using Loop's email system and meeting in person with

25  Almawave personnel.

26  202.        With respect to the allegations contained in Paragraph 202, IQ SYSTEMS, LLC denies

27  all allegations therein.

28

-17-
DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                    Case No. 3:15-CV-00798-HSG

**Exhibit 15
-190-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 207 of 300   Page ID
#:12272
Case 4:15-cv-00798-HSG   Document 122   Filed 09/16/15   Page 18 of 32

203.     With respect to the allegations contained in Paragraph 203, IQ SYSTEMS, LLC denies all allegations therein.

204.     With respect to the allegations contained in Paragraph 204, IQ SYSTEMS, LLC denies all allegations therein.

205.     With respect to the allegations contained in Paragraph 205, IQ SYSTEMS, LLC denies all allegations therein.

206.     With respect to the allegations contained in Paragraph 206, IQ SYSTEMS, LLC denies all allegations therein.

207.     With respect to the allegations contained in Paragraph 207, IQ SYSTEMS, LLC denies all allegations therein.

208.     With respect to the allegations contained in Paragraph 208, IQ SYSTEMS, LLC denies for lack of knowledge all allegations therein.

209.     With respect to the allegations contained in Paragraph 209, IQ SYSTEMS, LLC denies all allegations therein.

210.     With respect to the allegations contained in Paragraph 210, IQ SYSTEMS, LLC denies all allegations therein.

211.     With respect to the allegations contained in Paragraph 211, IQ SYSTEMS, LLC denies all allegations therein.

212.     With respect to the allegations contained in Paragraph 212, IQ SYSTEMS, LLC denies all allegations therein.

213.     With respect to the allegations contained in Paragraph 213, IQ SYSTEMS, LLC denies all allegations therein but admits to Anna Gatti asking to keep contact with WI Harper.

214.     With respect to the allegations contained in Paragraph 214, IQ SYSTEMS, LLC denies all allegations therein.

215.     With respect to the allegations contained in Paragraph 215, IQ SYSTEMS, LLC denies all allegations therein.

216.     With respect to the allegations contained in Paragraph 216, IQ SYSTEMS, LLC denies all allegations therein.

DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM

Exhibit 15
-191-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 208 of 300   Page ID
#:12273
Case 4:15-cv-00798-HSG   Document 273   Filed 09/16/15   Page 19 of 32

217. With respect to the allegations contained in Paragraph 217, IQ SYSTEMS, LLC denies all allegations therein.

218. With respect to the allegations contained in Paragraph 218, IQ SYSTEMS, LLC denies all allegations therein.

219. With respect to the allegations contained in Paragraph 219, IQ SYSTEMS, LLC denies all allegations therein.

**SECOND CAUSE OF ACTION**

**(Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.,* against All Defendants and Unauthorized Access to Computers, Cal. Penal Code §§ 502 *et seq*. against All Defendants)**

220. This paragraph incorporates paragraphs 1 through 219 of Plaintiff's complaint. IQ SYSTEMS, LLC likewise incorporates its earlier responses to paragraphs 1 through 219 as if set forth in full.

221. With respect to the allegations contained in Paragraph 221, IQ SYSTEMS, LLC denies all allegations therein.

222. With respect to the allegations contained in Paragraph 222, IQ SYSTEMS, LLC denies all allegations therein.

223. With respect to the allegations contained in Paragraph 223, IQ SYSTEMS, LLC denies all allegations therein.

224. With respect to the allegations contained in Paragraph 224, IQ SYSTEMS, LLC denies all allegations therein.

225. With respect to the allegations contained in Paragraph 225, IQ SYSTEMS, LLC denies all allegations therein.

226. With respect to the allegations contained in Paragraph 226, IQ SYSTEMS, LLC denies all allegations therein.

227. With respect to the allegations contained in Paragraph 227, IQ SYSTEMS, LLC denies all allegations therein.

DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                    Case No. 3:15-CV-00798-HSG

**Exhibit 15**
**-192-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 209 of 300   Page ID
#:12274
Case 4:15-cv-00798-HSG   Document 112   Filed 09/16/15   Page 20 of 32

228.     With respect to the allegations contained in Paragraph 228, IQ SYSTEMS, LLC denies all allegations therein.

229.     With respect to the allegations contained in Paragraph 229, IQ SYSTEMS, LLC denies all allegations therein.

230.     With respect to the allegations contained in Paragraph 230, IQ SYSTEMS, LLC denies all allegations therein.

231.     With respect to the allegations contained in Paragraph 231, IQ SYSTEMS, LLC denies all allegations therein.

232.     With respect to the allegations contained in Paragraph 232, IQ SYSTEMS, LLC denies all allegations therein.

### THIRD CAUSE OF ACTION

### (Fraud in the Inducement against IQ SYSTEMS, LLC)

233.     This paragraph incorporates paragraphs 1 through 232 of Plaintiff's complaint. IQ SYSTEMS, LLC likewise incorporates its earlier responses to paragraphs 1 through 232 as if set forth in full.

234.     With respect to the allegations contained in Paragraph 234, IQ SYSTEMS, LLC denies all allegations therein but admits to Anna Gatti earning a salary at Skype.

235.     With respect to the allegations contained in Paragraph 235, IQ SYSTEMS, LLC admits all allegations therein.

236.     With respect to the allegations contained in Paragraph 236, IQ SYSTEMS, LLC denies all allegations therein.

237.     With respect to the allegations contained in Paragraph 237, IQ SYSTEMS, LLC denies all allegations therein.

238.     With respect to the allegations contained in Paragraph 238, IQ SYSTEMS, LLC denies all allegations therein.

239.     With respect to the allegations contained in Paragraph 239, IQ SYSTEMS, LLC denies all allegations therein.

-20-
DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                                Case No. 3:15-CV-00798-HSG

Exhibit 15
-193-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 210 of 300   Page ID
#:12275
Case 4:15-cv-00798-HSG   Document 122   Filed 09/16/15   Page 21 of 32

1   240.       With respect to the allegations contained in Paragraph 240, IQ SYSTEMS, LLC denies

2   all allegations therein.

3   241.       With respect to the allegations contained in Paragraph 241, IQ SYSTEMS, LLC denies

4   all allegations therein.

5                      **FOURTH CAUSE OF ACTION**

6        **(Rescission and Restitution for Failure of Consideration against IQ SYSTEMS, LLC)**

7   242.       This paragraph incorporates paragraphs 1 through 241 of Plaintiff's complaint. IQ

8   SYSTEMS, LLC likewise incorporates its earlier responses to paragraphs 1 through 241 as if set forth

9   in full.

10   243.       With respect to the allegations contained in Paragraph 243, IQ SYSTEMS, LLC denies

11   all allegations therein.

12   244.       With respect to the allegations contained in Paragraph 244, IQ SYSTEMS, LLC denies

13   all allegations therein.

14   245.       With respect to the allegations contained in Paragraph 245, IQ SYSTEMS, LLC denies

15   all allegations therein.

16   246.       With respect to the allegations contained in Paragraph 246, IQ SYSTEMS, LLC denies

17   all allegations therein.

18   247.       With respect to the allegations contained in Paragraph 247, IQ SYSTEMS, LLC denies

19   all allegations therein.

20   248.       With respect to the allegations contained in Paragraph 248, IQ SYSTEMS, LLC denies

21   all allegations therein.

22   249.       With respect to the allegations contained in Paragraph 249, IQ SYSTEMS, LLC denies

23   all allegations therein.

24                      **FIFTH CAUSE OF ACTION**

25                   **(Fraud against All Defendants)**

26   250.       This paragraph incorporates paragraphs 1 through 249 of Plaintiff's complaint. IQ

27   SYSTEMS, LLC likewise incorporates its earlier responses to paragraphs 1 through 249 as if set forth

28   in full.

DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                                    Case No. 3:15-CV-00798-HSG

**Exhibit 15
-194-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 211 of 300   Page ID
#:12276
Case 4:15-cv-00798-HSG   Document 129   Filed 09/16/15   Page 22 of 32

1    251.        With respect to the allegations contained in Paragraph 251, IQ SYSTEMS, LLC denies

2    all allegations therein.

3    252.        With respect to the allegations contained in Paragraph 252, IQ SYSTEMS, LLC denies

4    all allegations therein.

5    253.        With respect to the allegations contained in Paragraph 253, IQ SYSTEMS, LLC denies

6    all allegations therein.

7    254.        With respect to the allegations contained in Paragraph 254, IQ SYSTEMS, LLC denies

8    all allegations therein.

9    255.        With respect to the allegations contained in Paragraph 255, IQ SYSTEMS, LLC denies

10    all allegations therein.

11    256.        With respect to the allegations contained in Paragraph 256, IQ SYSTEMS, LLC denies

12    all allegations therein.

13    257.        With respect to the allegations contained in Paragraph 257, IQ SYSTEMS, LLC denies

14    all allegations therein.

15    258.        With respect to the allegations contained in Paragraph 258, IQ SYSTEMS, LLC denies

16    all allegations therein.

17    259.        With respect to the allegations contained in Paragraph 259, IQ SYSTEMS, LLC denies

18    all allegations therein.

19    260.        With respect to the allegations contained in Paragraph 260, IQ SYSTEMS, LLC denies

20    all allegations therein.

21                              **SIXTH CAUSE OF ACTION**

22                   **(Breach of Contract against IQ SYSTEMS, LLC)**

23    261.        This paragraph incorporates paragraphs 1 through 260 of Plaintiff's complaint. IQ

24    SYSTEMS, LLC likewise incorporates its earlier responses to paragraphs 1 through 260 as if set forth

25    in full.

26    262.        With respect to the allegations contained in Paragraph 262, IQ SYSTEMS, LLC admits

27    the allegations therein, but defendant alleges that the requirement of written consent for concurrent

28    employment was waived by agreement and custom and practice of Loop.

-22-
DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                          Case No. 3:15-CV-00798-HSG

**Exhibit 15**
**-195-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 212 of 300   Page ID
Case 4:15-cv-00798-HSG   Document 227   Filed 09/16/15   Page 23 of 32
#:12277

1    263.    With respect to the allegations contained in Paragraph 263, IQ SYSTEMS, LLC admits

2    all allegations therein.

3    264.    With respect to the allegations contained in Paragraph 264, IQ SYSTEMS, LLC denies

4    all allegations therein.

5    265.    With respect to the allegations contained in Paragraph 265, IQ SYSTEMS, LLC denies

6    all allegations therein.

7    266.    With respect to the allegations contained in Paragraph 266, IQ SYSTEMS, LLC denies

8    all allegations therein.

9    267.    With respect to the allegations contained in Paragraph 267, IQ SYSTEMS, LLC denies

10    all allegations therein.

11    268.    With respect to the allegations contained in Paragraph 268, IQ SYSTEMS, LLC denies

12    all allegations therein.

13    269.    With respect to the allegations contained in Paragraph 269, IQ SYSTEMS, LLC denies

14    all allegations therein.

15    270.    With respect to the allegations contained in Paragraph 270, IQ SYSTEMS, LLC denies

16    all allegations therein.

17    271.    With respect to the allegations contained in Paragraph 271, IQ SYSTEMS, LLC denies

18    all allegations therein.

19    272.    With respect to the allegations contained in Paragraph 272, IQ SYSTEMS, LLC denies

20    all allegations therein.

21    273.    With respect to the allegations contained in Paragraph 273, IQ SYSTEMS, LLC denies

22    all allegations therein.

23    274.    With respect to the allegations contained in Paragraph 274, IQ SYSTEMS, LLC denies

24    all allegations therein.

25    275.    With respect to the allegations contained in Paragraph 275, IQ SYSTEMS, LLC denies

26    all allegations therein.

27    276.    With respect to the allegations contained in Paragraph 276, IQ SYSTEMS, LLC denies

28    all allegations therein.

-23-
DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                    Case No. 3:15-CV-00798-HSG

Exhibit 15
-196-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 213 of 300   Page ID
#:12278
Case 4:15-cv-00798-HSG   Document 122   Filed 09/16/15   Page 24 of 32

**SEVENTH CAUSE OF ACTION**

**(Breach of Duty of Good Faith and Fair Dealing against IQ SYSTEMS, LLC)**

277.    This paragraph incorporates paragraphs 1 through 276 of Plaintiff's complaint. IQ SYSTEMS, LLC likewise incorporates its earlier responses to paragraphs 1 through 276 as if set forth in full.

278.    With respect to the allegations contained in Paragraph 278, IQ SYSTEMS, LLC denies for lack of information all allegations therein.

279.    With respect to the allegations contained in Paragraph 279, IQ SYSTEMS, LLC admits all allegations therein.

280.    With respect to the allegations contained in Paragraph 280, IQ SYSTEMS, LLC denies all allegations therein.

281.    With respect to the allegations contained in Paragraph 281, IQ SYSTEMS, LLC denies all allegations therein.

282.    With respect to the allegations contained in Paragraph 282, IQ SYSTEMS, LLC denies all allegations therein.

283.    With respect to the allegations contained in Paragraph 283, IQ SYSTEMS, LLC denies all allegations therein.

**EIGHT CAUSE OF ACTION**

**(Theft of Corporate Opportunity, against IQ SYSTEMS, LLC)**

284.    This paragraph incorporates paragraphs 1 through 283 of Plaintiff's complaint. IQ SYSTEMS, LLC likewise incorporates its earlier responses to paragraphs 1 through 283 as if set forth in full.

285.    With respect to the allegations contained in Paragraph 285, IQ SYSTEMS, LLC denies all allegations therein.

286.    With respect to the allegations contained in Paragraph 286, IQ SYSTEMS, LLC denies all allegations therein.

287.    With respect to the allegations contained in Paragraph 287, IQ SYSTEMS, LLC denies all allegations therein.

**Exhibit 15**
**-197-**

Case 8:20-cv-00048-JVS-JDE  Document 169-4  Filed 09/01/20  Page 214 of 300  Page ID
#:12279
Case 4:15-cv-00798-HSG  Document 122  Filed 09/16/15  Page 25 of 32

288.     With respect to the allegations contained in Paragraph 288, IQ SYSTEMS, LLC denies all allegations therein.

289.     With respect to the allegations contained in Paragraph 289, IQ SYSTEMS, LLC denies all allegations therein.

### NINTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantage against All Defendants)**

290.     This paragraph incorporates paragraphs 1 through 289 of Plaintiff's complaint. IQ SYSTEMS, LLC likewise incorporates its earlier responses to paragraphs 1 through 289 as if set forth in full.

291.     With respect to the allegations contained in Paragraph 291, IQ SYSTEMS, LLC denies for lack of knowledge all allegations therein.

292.     With respect to the allegations contained in Paragraph 292, IQ SYSTEMS, LLC denies all allegations therein.

293.     With respect to the allegations contained in Paragraph 293, IQ SYSTEMS, LLC admits the economic relations with employees and contractors had the possibility of future economic benefit to the company provided the company could successfully develop and market its product but denies all other allegations therein.

294.     With respect to the allegations contained in Paragraph 294, IQ SYSTEMS, LLC admits all allegations therein.

295.     With respect to the allegations contained in Paragraph 295, IQ SYSTEMS, LLC denies all allegations therein.

296.     With respect to the allegations contained in Paragraph 296, IQ SYSTEMS, LLC denies all allegations therein.

297.     With respect to the allegations contained in Paragraph 297, IQ SYSTEMS, LLC denies all allegations therein.

298.     With respect to the allegations contained in Paragraph 298, IQ SYSTEMS, LLC denies all allegations therein.

DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                                        Case No. 3:15-CV-00798-HSG

**Exhibit 15**
**-198-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 215 of 300   Page ID
#:12280
Case 4:15-cv-00798-HSG   Document 122   Filed 09/16/15   Page 26 of 32

1    299.        With respect to the allegations contained in Paragraph 299, IQ SYSTEMS, LLC denies

2    all allegations therein.

3    300.        With respect to the allegations contained in Paragraph 300, IQ SYSTEMS, LLC denies

4    all allegations therein.

5    301.        With respect to the allegations contained in Paragraph 301, IQ SYSTEMS, LLC denies

6    all allegations therein.

7    302.        With respect to the allegations contained in Paragraph 302, IQ SYSTEMS, LLC denies

8    all allegations therein.

9                              **TENTH CAUSE OF ACTION**

10                   **(Tortious Interference against all Defendants)**

11   303.        This paragraph incorporates paragraphs 1 through 302 of Plaintiff's complaint. IQ

12   SYSTEMS, LLC likewise incorporates its earlier responses to paragraphs 1 through 302 as if set forth

13   in full.

14   304.        With respect to the allegations contained in Paragraph 304, IQ SYSTEMS, LLC denies

15   for lack of information all allegations therein.

16   305.        With respect to the allegations contained in Paragraph 305, IQ SYSTEMS, LLC denies

17   all allegations therein.

18   306.        With respect to the allegations contained in Paragraph 306, IQ SYSTEMS, LLC denies

19   all allegations therein.

20   307.        With respect to the allegations contained in Paragraph 307, IQ SYSTEMS, LLC denies

21   all allegations therein.

22   308.        With respect to the allegations contained in Paragraph 308, IQ SYSTEMS, LLC denies

23   all allegations therein.

24   309.        With respect to the allegations contained in Paragraph 309, IQ SYSTEMS, LLC denies

25   all allegations therein.

26   310.        With respect to the allegations contained in Paragraph 310, IQ SYSTEMS, LLC denies

27   all allegations therein.

28

DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM

**Exhibit 15**
**-199-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 216 of 300   Page ID
#:12281
Case 4:15-cv-00798-HSG   Document 111   Filed 09/16/15   Page 27 of 32

1    311.    With respect to the allegations contained in Paragraph 311, IQ SYSTEMS, LLC denies

2    all allegations therein.

3    312.    With respect to the allegations contained in Paragraph 312, IQ SYSTEMS, LLC denies

4    all allegations therein.

5    313.    With respect to the allegations contained in Paragraph 313, IQ SYSTEMS, LLC denies

6    all allegations therein.

7                              **ELEVENTH CAUSE OF ACTION**

8         **(Misappropriation of Trade Secrets, California Civil Code §§ 3426 *et seq.,* against All**

9                                        **Defendants)**

10    314.    This paragraph incorporates paragraphs 1 through 313 of Plaintiff's complaint. IQ

11    SYSTEMS, LLC likewise incorporates its earlier responses to paragraphs 1 through 313 as if set forth

12    in full.

13    315.    With respect to the allegations contained in Paragraph 315, IQ SYSTEMS, LLC admits

14    that some of the Company's documents and information are generally not known to the public or to

15    other persons who can obtain economic value from their disclosure or use and that some of the

16    Company's documents and information are the subject of efforts by the Company to maintain their

17    secrecy and that they have the potential for economic value from not being generally known.  IQ

18    SYSTEMS, LLC denies each and every other allegation contained in paragraph 315.

19    316.    With respect to the allegations contained in Paragraph 316, IQ SYSTEMS, LLC denies

20    all allegations therein.

21    317.    With respect to the allegations contained in Paragraph 317, IQ SYSTEMS, LLC denies

22    all allegations therein.

23    318.    With respect to the allegations contained in Paragraph 318, IQ SYSTEMS, LLC denies

24    all allegations therein.

25    319.    With respect to the allegations contained in Paragraph 319, IQ SYSTEMS, LLC denies

26    all allegations therein.

27    320.    With respect to the allegations contained in Paragraph 320, IQ SYSTEMS, LLC denies

28    all allegations therein.

---

-27-

DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 217 of 300   Page ID
#:12282
Case 4:15-cv-00798-HSG   Document 122   Filed 09/16/15   Page 28 of 32

1    321.    With respect to the allegations contained in Paragraph 321, IQ SYSTEMS, LLC denies

2  all allegations therein.

3    322.    With respect to the allegations contained in Paragraph 322, IQ SYSTEMS, LLC denies

4  all allegations therein.

5    323.    With respect to the allegations contained in Paragraph 323, IQ SYSTEMS, LLC denies

6  all allegations therein.

7    324.    With respect to the allegations contained in Paragraph 324, IQ SYSTEMS, LLC denies

8  all allegations therein.

9    325.    With respect to the allegations contained in Paragraph 325, IQ SYSTEMS, LLC denies

10  all allegations therein.

11    326.    With respect to the allegations contained in Paragraph 326, IQ SYSTEMS, LLC denies

12  all allegations therein.

13                    **TWELFTH CAUSE OF ACTION**

14            **(Conversion against Gatti and the IQSystem Defendants)**

15    327.    This paragraph incorporates paragraphs 1 through 326 of Plaintiff's complaint.

16  IQSystem, Inc. likewise incorporates its earlier responses to paragraphs 1 through 326 as if set forth in

17  full.

18    328.    With respect to the allegations contained in Paragraph 328, IQ SYSTEMS, LLC denies

19  all allegations therein.

20    329.    With respect to the allegations contained in Paragraph 329, IQ SYSTEMS, LLC denies

21  all allegations therein.

22    330.    With respect to the allegations contained in Paragraph 330, IQ SYSTEMS, LLC denies

23  all allegations therein.

24    331.    With respect to the allegations contained in Paragraph 331, IQ SYSTEMS, LLC denies

25  all allegations therein.

26    332.    With respect to the allegations contained in Paragraph 332, IQ SYSTEMS, LLC denies

27  all allegations therein.

28

-28-
DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                    Case No. 3:15-CV-00798-HSG

**Exhibit 15
-201-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 218 of 300   Page ID
#12283
Case 4:15-cv-00798-HSG   Document 123   Filed 09/16/15   Page 29 of 32

1    333.    With respect to the allegations contained in Paragraph 333, IQ SYSTEMS, LLC denies

2    all allegations therein.

3                           **THIRTEENTH CAUSE OF ACTION**

4        **(Unfair Competition, Bus. & Prof. Code §§ 17200 *et seq.*, against All Defendants)**

5    334.    This paragraph incorporates paragraphs 1 through 333 of Plaintiff's complaint.  IQ

6    SYSTEMS, LLC likewise incorporates its earlier responses to paragraphs 1 through 333 as if set forth

7    in full.

8    335.    With respect to the allegations contained in Paragraph 335, IQ SYSTEMS, LLC denies

9    all allegations therein.

10   336.    With respect to the allegations contained in Paragraph 336, IQ SYSTEMS, LLC denies

11   all allegations therein.

12   337.    With respect to the allegations contained in Paragraph 337, IQ SYSTEMS, LLC denies

13   all allegations therein.

14   338.    With respect to the allegations contained in Paragraph 338, IQ SYSTEMS, LLC denies

15   all allegations therein.

16   339.    With respect to the allegations contained in Paragraph 339, IQ SYSTEMS, LLC denies

17   all allegations therein.

18   340.    With respect to the allegations contained in Paragraph 340, IQ SYSTEMS, LLC denies

19   all allegations therein.

20   341.    With respect to the allegations contained in Paragraph 341, IQ SYSTEMS, LLC denies

21   all allegations therein.

22   342.    With respect to the allegations contained in Paragraph 342, IQ SYSTEMS, LLC denies

23   all allegations therein.

24                           **FOURTEENTH CAUSE OF ACTION**

25                 **(Unjust Enrichment, against All Defendants)**

26   343.    This paragraph incorporates paragraphs 1 through 342 of Plaintiff's complaint. IQ

27   SYSTEMS, LLC likewise incorporates its earlier responses to paragraphs 1 through 342 as if set forth

28   in full.

-29-

DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                                    Case No. 3:15-CV-00798-HSG

**Exhibit 15
-202-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 219 of 300   Page ID
#12284
Case 4:15-cv-00798-HSG   Document 128   Filed 09/16/15   Page 30 of 32

344.     With respect to the allegations contained in Paragraph 344, IQ SYSTEMS, LLC denies all allegations therein.

345.     With respect to the allegations contained in Paragraph 345, IQ SYSTEMS, LLC denies all allegations therein.

346.     With respect to the allegations contained in Paragraph 346, IQ SYSTEMS, LLC denies all allegations therein.

347.     With respect to the allegations contained in Paragraph 347, IQ SYSTEMS, LLC denies all allegations therein.

348.     With respect to the allegations contained in Paragraph 348, IQ SYSTEMS, LLC denies all allegations therein.

**PRAYER FOR RELIEF**

Plaintiff's prayer for relief does not require a response, but insofar as an answer is deemed necessary, IQ SYSTEMS, LLC denies that Plaintiff is entitled to the requested relief or to any relief whatsoever.

**FIRST AFFIRMATIVE DEFENSE**

**(Statutory Limitations)**

Each and every purported cause of action of the complaint is barred by all applicable statutes of limitations.

**SECOND AFFIRMATIVE DEFENSE**

**(Failure to State a Cause of Action)**

Each and every purported cause of action fails to state facts sufficient to constitute a cause of action against IQ SYSTEMS, LLC.

**THIRD AFFIRMATIVE DEFENSE**

**(Laches and Estoppel)**

By virtue of Plaintiff's actions, inactions, and conduct before filing the Complaint, Plaintiff is barred from seeking or being awarded any relief by the doctrines of estoppel and laches.

**FOURTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate Damages)**

-30-
DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                                    Case No. 3:15-CV-00798-HSG

Exhibit 15
-203-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 220 of 300   Page ID
#:12285
Case 4:15-cv-00798-HSG   Document 122   Filed 09/16/15   Page 31 of 32

1    Plaintiff has failed to mitigate its damages, if any exist.

2                        **FIFTH AFFIRMATIVE DEFENSE**

3                              **(Unclean Hands)**

4    Any alleged loss or damage Plaintiff may have suffered was not caused by any act, omission,

5    representation, or negligence on the part of IQ SYSTEMS, LLC, but is solely attributable to the conduct

6    of the Plaintiff or of people other than IQ SYSTEMS, LLC.

7                        **SIXTH AFFIRMATIVE DEFENSE**

8                                **(Waiver)**

9    IQ SYSTEMS, LLC is informed and believes and thereupon alleges that Plaintiff has waived its

10   right to the relief sought in the complaint by virtue of its acts, conduct, representations, and omissions,

11   which constitutes a breach of contract by Plaintiff.

12                       **EIGHTH AFFIRMATIVE DEFENSE**

13                              **(Equity)**

14   Plaintiff's complaint and each cause of action therein, is barred in whole or in part from

15   recovering the relief sought therein as the equities preponderate in favor of IQ SYSTEMS, LLC.

16                       **NINTH AFFIRMATIVE DEFENSE**

17                       **(Good Faith/Lack of Malice)**

18   Plaintiff's complaint and each cause of action therein, are barred in whole or in part because IQ

19   SYSTEMS, LLC acted at all times in good faith, without knowledge of any alleged wrongdoing and

20   without any basis for such knowledge.

21                       **TENTH AFFIRMATIVE DEFENSE**

22                               **(Offset)**

23   Any claim for damages, which IQ SYSTEMS, LLC denies, in Plaintiff's complaint is offset by

24   the damages caused by Plaintiff.

25                      **TWELFTH AFFIRMATIVE DEFENSE**

26        **(Reservation of Rights to Assert Additional Defenses)**

27   IQ SYSTEMS, LLC reserves its right to assert and rely upon such other applicable affirmative

28   defenses as may become available or apparent during the proceedings in this matter.

DEFENDANT IQ SYSTEMS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT; COUNTERCLAIM
K:\2500\sf0173\Pleadings\FAC Answer_IQS.docx                          Case No. 3:15-CV-00798-HSG

**Exhibit 15
-204-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 221 of 300   Page ID
Case 4:15-cv-00798-HSG   Document 128   Filed 09/16/15   Page 32 of 32
#:12286

1

**PRAYER**

2        1.        That the Complaint be dismissed with prejudice and that Plaintiff take nothing thereby;

3        2.        That IQ SYSTEMS, LLC have judgment against Plaintiff in an amount to be determined

4     at trial;

5        3.        For attorneys fees and costs of suit.

6        4.        For such other relief as the Court deems proper.

7

8     Dated: September 16, 2015                              LOW, BALL & LYNCH

9

10                                         By: ___ /s/ Thomas J. LoSavio _____

11                                              THOMAS J. LOSAVIO
                                               JAMES F. REGAN
12                                             Attorneys for Defendants
                                               ANNA GATTI and IQ SYSTEMS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 15
-205-

# EXHIBIT 16

```
 1                    UNITED STATES DISTRICT COURT

 2                  NORTHERN DISTRICT OF CALIFORNIA

 3                 BEFORE THE HONORABLE WILLIAM ALSUP

 4      JOBSCIENCE, INC.,            )
                                     )
 5                  Plaintiff,       )
                                     )
 6           VS.                     ) NO. 3:13-cv-04519-WHA
                                     )
 7      CVPARTNERS, INC., et al.,    )
                                     ) San Francisco, California
 8                  Defendants.      ) Thursday, February 27, 2014
        _____) 8:13 a.m.
 9
                     TRANSCRIPT OF COURT PROCEEDINGS
10


11
        APPEARANCES:
12

13      For Plaintiff:        Counsel Force PC
                               135 Main Street, Suite 1350
14                             San Francisco, California 94105
                          BY:  PATRICK M. TERRY, ESQ.
15

16      For Defendants:       DLA Piper
                               555 Mission Street, Suite 2400
17                             San Francisco, California 94105
                          BY:  RAJIV DHARNIDHARKA, ESQ.
18                             DEBORAH MCCRIMMON, ESQ.

19

20

21

22

23

24
        Reported By:  James C. Pence, RMR, CRR, CSR No. 13059
25                    Official Court Reporter - U.S. District Court
                      Computerized Transcription By Case CATalyst
```

Exhibit 16
-206-

| | |
|---|---|
| 1 | Thursday, February 27, 2014                              8:13 a.m. |
| 2 | ---o0o--- |
| 3 | THE COURT:  All right.  Jobscience versus CVPartners, |
| 4 | 13-4519. |
| 5 | What's this? |
| 6 | THE CLERK:  Just the names, attorney names. |
| 7 | THE COURT:  That's a different case.  This is |
| 8 | Jobscience. |
| 9 | THE CLERK:  Yeah.  It's on there, too. |
| 10 | THE COURT:  Where is it on here?  Oh, I see it. |
| 11 | All right.  Thanks. |
| 12 | THE CLERK:  Okay. |
| 13 | THE COURT:  Yes.  Appearances, please. |
| 14 | MR. TERRY:  Good morning, your Honor.  Patrick Terry |
| 15 | for the plaintiff Jobscience. |
| 16 | THE COURT:  Welcome. |
| 17 | And -- |
| 18 | MR. DHARNIDHARKA:  Rajiv Dharnidharka, DLA Piper, for |
| 19 | all the defendants, and my colleague Deborah McCrimmon is here |
| 20 | with me today. |
| 21 | MS. MCCRIMMON:  Good morning, your Honor. |
| 22 | THE COURT:  What's your name? |
| 23 | MS. MCCRIMMON:  Deborah McCrimmon. |
| 24 | THE COURT:  Welcome. |
| 25 | MS. MCCRIMMON:  Thank you. |

Exhibit 16
-207-

1          THE COURT:  Okay.  This is a motion by you to amend.

2     Go ahead.

3          MR. TERRY:  Yes, your Honor.

4     The plaintiff is prepared to propose a second amended

5     complaint and address the Court's order of January, I think,

6     9th in which several causes of action were addressed by motion.

7     Those causes of action include a trade secret misappropriation,

8     a cause of action for constructive fraud and for breach of the

9     implied covenant of good faith and fair dealing as well as an

10    unfair competition law.

11         Your Honor, we -- the plaintiff has provided for -- with

12    the proposed complaint, we feel we've addressed the

13    deficiencies noted in the order.  As far as the trade secrets

14    are concerned, your Honor, we have listed trade secrets, we

15    believe, with particularity that's required at this stage in

16    the case, which is the pleading stage.

17         The defendants have argued that some of those trade secrets

18    haven't been made public on the Internet.  Our position on that

19    is that there are still trade secrets that are not public, and

20    it's a question of fact.  We believe we've met our burden at

21    this stage under Rule 8.  Also, your Honor, on the causes of

22    action for constructive fraud and the breach of the implied

23    covenant of good faith and fair dealing, we believe we've met

24    our burden.

25         The Court had pointed out with regard to the covenant that

Exhibit 16
-208-

1    it required a fiduciary duty.  We believe we've stated a set of

2    facts that can be interpreted to imply the fiduciary duty was

3    created.  On the constructive fraud claim, we have asserted

4    that the nondisclosure agreement was breached.  There was a

5    duty of confidentiality that was breached, and that's the basis

6    for constructive fraud.

7         Your Honor -- along with the other facts we have asserted

8    in the complaint.  Your Honor, this is a very simple case.  It

9    is basically a case of the theft of intellectual property, a

10   breach of contract, breach of a nondisclosure agreement.  And

11   these breaches occurred, your Honor, while the defendants were

12   under contract with plaintiff not to breach the confidentiality

13   agreement, not to steal trade secrets, not to build a competing

14   product, not to do all the things listed here.

15        A unique factor, your Honor, in this case which I pointed

16   out in the papers is that in this case the defendants entered

17   into a contract of confidentiality and a contract not to

18   develop a competing product and not to reverse-engineer a

19   product.  At the end of that contract -- prior to the end of

20   that contract, they began to reverse-engineer the product.

21   They set up a company to do so.

22        They even went and filed for a trademark, your Honor --

23   that's not on the papers but something we determined -- prior

24   to the end of the agreement.  They then renewed the contract

25   knowing there was a conflict of interest, knowing they were

Exhibit 16
-209-

```
 1    competing with us, knowing they were having access to our trade
 2    secrets.
 3         Your Honor, I believe that has created a special situation
 4    here where a material fact was not disclosed to us at the time
 5    of the renewal, that they had a competing business which was,
 6    in fact, a breach, that they were, in fact, breaching the
 7    confidentiality agreement.
 8              THE COURT:  What do you say to the code section on
 9    the trade secrets law in California, 2019.210?  Have you filed
10    under seal the specification in detail of what these trade
11    secrets were?
12              MR. TERRY:  Not at this time, your Honor, but we're
13    willing to do so.  This is a point in the case where we had
14    approached the Court to have the amended complaint -- request
15    the Court to allow for the amended complaint.
16              THE COURT:  All right.  Let's hear from the other
17    side.
18         Go ahead.
19              MR. DHARNIDHARKA:  Thank you, your Honor.
20         I think it was very wise in the January 9th order to not
21    just grant leave to amend but to make the plaintiffs explain in
22    a motion for leave under Rule 15 why they thought they could do
23    so, and what you've just heard plaintiff's counsel talk about
24    is an extensive breach of contract, and that's one of the two
25    claims that survived.
```

**Exhibit 16**
**-210-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 228 of 300   Page ID
#:12293
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 6 of 36
6

```
 1          The problem you noted in your January 9th order and the

 2     problem we still have today is they're trying to take that

 3     breach of contract and extend it out into a bunch of other

 4     claims.  So I think what happened is they got an opposition

 5     brief, and it said a couple things.

 6          Everything that you're now trying to throw out there as a

 7     trade secret is on your website.  You're saying your trade

 8     secrets are your training manuals.  Well, you've got training

 9     manuals and training videos on your website.  You're saying

10     your pricing is a trade secret.  Well, your trade -- your

11     pricing is attached.

12               THE COURT:  Let me pause there.

13          Let me ask Counsel:  In the rule as you know -- I want you

14     to tell me the truth here -- do you have any trade secrets that

15     are alleged that happen to be on the website?

16               MR. TERRY:  We believe we do, your Honor.  We have

17     know-how.  We have --

18               THE COURT:  Well, how in the world can you claim

19     trade secret for something that's on your website?

20               MR. DHARNIDHARKA:  That's exactly our point.

21               THE COURT:  Wait, wait, wait.

22               MR. TERRY:  Well, not all of our materials are on the

23     website, your Honor --

24               THE COURT:  Well --

25               MR. TERRY:  -- obviously.
```

**Exhibit 16**
-211-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 229 of 300   Page ID
#:12294
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 7 of 36

7

```
1                    THE COURT:  -- if there's -- let's say you're

2      claiming ten things and six of them are on the website and four

3      are not.  The six that are on your website go -- go away.  They

4      cannot be a trade secret.

5                    MR. TERRY:  It's my client's position, your Honor,

6      that 10 to 20 percent of our training materials are on the

7      website.  There's other things that we do with the customers

8      and clients that are not on the website.

9                    THE COURT:  You've got to be -- you know -- okay.

10                   MR. TERRY:  Well, this was a fact brought into

11     evidence by the defendants in their opposition, your Honor.  We

12     haven't had a chance to address the facts.

13                   THE COURT:  All right.  All right.  Okay.  So he's --

14     what he's saying over there is that when -- if he gets to do

15     his specification, he will identify things that are not on the

16     website.  I think that's the best reading of what Counsel is

17     saying.

18         So what do you say to that?

19                   MR. DHARNIDHARKA:  What I say to that is they've

20     asked for leave to amend, and you hit on the Rule 11

21     dealings --

22                   THE COURT:  Well, he can't -- he can't plead in open

23     court the -- the trade secrets.  Then they would be out.  You

24     would be claiming he's now waived it.  So --

25                   MR. DHARNIDHARKA:  Sure.
```

Exhibit 16
-212-

```
 1              THE COURT:  -- he has to be somewhat vague.

 2              MR. DHARNIDHARKA:  Well, I guess the solution, then,

 3     would be to give another chance to seek leave to amend.

 4              THE COURT:  No.  No.  We can just do one of those --

 5     those specifications.  What's wrong with that?

 6              MR. DHARNIDHARKA:  Yeah.  If he can actually allege a

 7     trade secret in good faith after doing his Rule 11 homework and

 8     it's something that's not on the websites, something they

 9     haven't publically disclosed somewhere else, then yes, he could

10     plead a trade secret.

11              THE COURT:  All right.  I've got a plan for this

12     part.

13         Okay.  What else would you like to say?

14              MR. DHARNIDHARKA:  I want to clarify one point, too,

15     because they're also in the reply brief claiming the trade

16     secret includes the copyright or the software, and they said in

17     your January 9th order, "Only bar the trade secret because the

18     copyright is a public disclosure."

19         Your order went much further.  It also said, "Any trade

20     secret based on the software is preempted," and you went into

21     detail.  You went into two pages of detail in your order, and

22     it's absolutely right.  Whether the trade secret is barred on

23     the software because it's publically disclosed is one thing.

24     If the trade secret is preempted under the Copyright Act of

25     Section 301, that's another thing, and that's what you have
```

**Exhibit 16**
-213-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 231 of 300   Page ID
#:12296
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 9 of 36

9

```
 1    ruled.

 2         So in the reply brief, they try to unring the bell on your

 3    January 9th order.

 4              THE COURT:  And you're saying that I went so far as

 5    to say anything that's expressed in the code --

 6              MR. TERRY:  Your Honor --

 7              THE COURT:  -- cannot be a trade secret?  Is that

 8    what I said?

 9              MR. DHARNIDHARKA:  As pled, they can't -- the way

10    they --

11              MR. TERRY:  That's not in your order.

12              THE COURT:  Wait, wait, wait.

13              MR. DHARNIDHARKA:  The order is in my hand.  I'm

14    looking at it.

15              THE COURT:  All right.  Read me the part where I said

16    that.

17              MR. DHARNIDHARKA:  "Plaintiff's misappropriation of

18    trade secrets claim is based on the same nucleus of facts as

19    the copyright infringement claim."  That's Page 6, Line 18 and

20    19.  If you look at Page 7 of your order, Line 3 to 8, "Simply

21    referring to proprietary software applications, which serve as

22    the basis for plaintiff's copyright infringement claim, and

23    vague software code, methods and other trade secrets cannot

24    suffice.

25         "Indeed, plaintiff cannot show efforts to maintain privacy
```

**Exhibit 16**
**-214-**

```
1      of the so-called trade secrets because it received copyrights

2      for its software applications.  Plaintiff's misappropriation of

3      trade secrets claim is thus preempted by the Copyright Act."

4              THE COURT:  Well, that's not quite the same thing as

5      saying --

6              MR. DHARNIDHARKA:  As pled.

7              THE COURT:  -- any -- I don't think I said anything

8      expressed in code never can be a trade secret.

9              MR. DHARNIDHARKA:  Sure, but as pled -- and that's

10     what we're dealing with, is how they've pled it.

11             MR. TERRY:  The cases are clear that code can be a

12     trade secret, and the order as far as we were concerned had to

13     do with the description of the software code as copyrighted.

14             THE COURT:  All right.  All right.  Okay.  Well,

15     look, I've got a plan for your trade secrets part.

16         What else would you like to say?

17             MR. DHARNIDHARKA:  Absolutely.

18         On the breach of implied covenant, again, I think what

19     happened is they read our opposition brief, which cited the

20     alleged -- the contract that's alleged to have been breached.

21     In Section 15.1, it goes into detail about what this contract

22     is not, and it says in plain English, "This contract does not

23     create a fiduciary relationship."

24             THE COURT:  That's true.

25             MR. DHARNIDHARKA:  So in reply, they said, "Wait a
```

**Exhibit 16**
**-215-**

```
 1        minute.  That's not what we allege."  But if you look at the

 2        complaint, the very first sentence of Paragraph 50 says, "By

 3        entering and renewing the agreement, defendant created a

 4        fiduciary relationship."

 5               MR. TERRY:  If I may interject, because that's a

 6        required duty of the implied covenant.  You have to have a

 7        contract.  That's all the complaint says.  The complaint

 8        doesn't --

 9               THE COURT:  But your contract flat-out says it's not

10        -- it does not create a fiduciary duty.

11               MR. TERRY:  Well, this is a tort which occurred

12        outside the contract, and I'll explain the --

13               MR. DHARNIDHARKA:  Can I finish?

14               THE COURT:  No.

15               MR. TERRY:  Well, let me just make my point.

16               THE COURT:  He gets to make his point first.

17               MR. DHARNIDHARKA:  Thank you, your Honor.

18               THE COURT:  Then you've got the floor.

19               MR. TERRY:  In my papers, I've explained --

20               MR. DHARNIDHARKA:  Sure.

21               THE COURT:  Please don't interrupt.

22               MR. TERRY:  I'm sorry.

23               THE COURT:  Go ahead.

24               MR. DHARNIDHARKA:  Okay.  So when the contract says

25        there's no fiduciary relationship, then you have to find a
```

**Exhibit 16**
**-216-**

1    fiduciary relationship outside the contract, and the City of

2    Hope case, which plaintiffs cite and which we explain, says,

3    "Okay.  Fine.  Then the standard is unequal bargaining power,

4    vulnerability, lack of sophistication."  And that's also what

5    you said in your order, citing Pension Trust and Mitsui.

6        So if you look at this case, there's no unequal bargaining

7    power.  There's no difference between Jobscience and

8    CVPartners, and as a matter of fact, the CEO of Jobscience, who

9    signed the contract, is an attorney.  If you look at City of

10   Hope, it looks to these factors and says, "No fiduciary duty

11   outside the contract.  There's no unequal bargaining power.

12   There's no vulnerability.  There's no lack of sophistication."

13   That's what we have here.  So there's no extra contractual

14   fiduciary relationship.

15       They cite Think Village.  Think Village did not have the

16   same contractual waiver of a fiduciary relationship.  Think

17   Village found allegations of unequal bargaining power because

18   it was a little tiny shop going up against Adobe, and it also

19   found the negotiating parties didn't have the same level of

20   sophistication.

21       So the one case they tried to apply to say there's this

22   extra contractual fiduciary relationship is dead wrong, and

23   City of Hope and all the other cases we cited are dead right,

24   and they're consistent with your January 9th order.  So that's

25   my view on the implied covenant claim.

**Exhibit 16**
-217-

```
 1              Constructive fraud is the next claim, and there's two ways
 2      to even get the first element, is the special relationship.
 3      It's either fiduciary duty, which they don't have, or a
 4      confidential relationship, and what the defendants -- I'm
 5      sorry.  What the plaintiffs rely on is this Dealertrack case,
 6      and they literally block-quoted the entire section of the
 7      opinion that even addressed constructive fraud, and it's got no
 8      analysis.
 9              THE COURT:  Well -- but there was a confidential
10      relationship here --
11              MR. DHARNIDHARKA:  Well --
12              THE COURT:  -- wasn't there?  I mean --
13              MR. DHARNIDHARKA:  Sure.
14              THE COURT:  -- that's what the purpose of the
15      contract was.
16              MR. DHARNIDHARKA:  A contractual confidential
17      relationship, but if you look at the law for a confidential
18      relationship for constructive fraud, it again talks about
19      vulnerability, but that's described as based on advanced age,
20      you know, extreme youth --
21              THE COURT:  Well, here -- tell me where I'm wrong on
22      this part because I'm not sure I agree with you on this.
23              MR. DHARNIDHARKA:  Okay.
24              THE COURT:  The purpose of this contract was to allow
25      Jobscience, the plaintiff, to reveal its innermost secrets to
```

**Exhibit 16**

**-218-**

```
 1        the defendant.

 2            Okay.  That's what's alleged, and -- but at the very time

 3        that the contract was being drawn up, the defendants had a

 4        secret plan, it is alleged, to form a competing company and to

 5        use those secrets against the plaintiff.

 6            Let me stop here.  Is that what you allege?

 7                 MR. TERRY:  That's correct, your Honor.

 8                 THE COURT:  All right.

 9                 MR. DHARNIDHARKA:  Yeah, and that --

10                 THE COURT:  So -- wait, wait, wait.  So in order to

11        get at those trade secrets, you knowingly entered into a deal

12        you never intended to abide by, and you steal those trade

13        secrets -- alleged trade secrets -- or even if they're not,

14        whatever they give you, that's confidential.  They -- that you

15        steal it and go and form a competing company, and that was your

16        intent all along, and that's -- that's what's alleged.

17            Now, is it going to be true?  I don't know, but that's

18        what's alleged.

19                 MR. DHARNIDHARKA:  True.

20                 THE COURT:  And why -- to me all day long, that's got

21        to be some kind of a tort.

22                 MR. DHARNIDHARKA:  Absolutely, and that's why --

23                 THE COURT:  Why isn't it constructive fraud, then?

24                 MR. DHARNIDHARKA:  Two reasons.  If you take the spin

25        that was just associated with the complaint and you call it a
```

Exhibit 16
-219-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 237 of 300   Page ID
#:12302
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 15 of 36

15

```
1     trade secret issue, it's preempted by the Trade Secret Act.  So

2     if you find that the issue is arising in a trade secret, then

3     you have trade secret.

4            THE COURT:  What if it's not trade secret?  What if

5     it's just confidential information that you didn't otherwise

6     know?

7            MR. DHARNIDHARKA:  Well, then it still would not be a

8     constructive fraud claim.  It would be breach of contract, and

9     that's what you have.  The difference is there's a very special

10    definition of this confidential relationship.

11           THE COURT:  Honestly, none of it has to be true.  It

12    can be a breach of contract, but if they're willing to prove

13    all this malicious intent up front that you knowingly did this,

14    you have fraudulent intent, you know --

15           MR. DHARNIDHARKA:  Sure.

16           THE COURT:  -- I think there are jury verdicts all

17    over California where companies who have actually done this

18    have been hammered big time, put out of business by a jury

19    verdict.  And, you know, if this is all true, it can happen

20    here.

21           MR. DHARNIDHARKA:  Well, I hear everything you're

22    saying, your Honor.  The element of constructive fraud is a

23    confidential relationship, and it's defined as being this

24    special relationship of inequality, vulnerability, superior

25    position --
```

**Exhibit 16**
**-220-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 238 of 300   Page ID
#:12303
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 16 of 36

16

```
 1                  THE COURT:  No.

 2                  MR. DHARNIDHARKA:  -- based on --

 3                  THE COURT:  It doesn't have to be all those things.

 4                  MR. DHARNIDHARKA:  That's what the case law says.

 5                  THE COURT:  A fiduciary might be, but confidential to

 6      me means that you've got this nondisclosure agreement, and the

 7      only -- and the whole purpose is to keep it in confidence.

 8                  MR. DHARNIDHARKA:  Sure.  I absolutely agree.

 9                  THE COURT:  How else can we -- how else can we --

10      we'll give all those factors to the jury and let them decide.

11                  MR. DHARNIDHARKA:  There's about five or six cases

12      that we've cited that describe what this word means in the

13      context of --

14                  THE COURT:  All right.  Give me your best one, and

15      I'll read that one again.

16                  MR. DHARNIDHARKA:  Sure.  Portney.

17                  THE COURT:  Fortney?

18                  MR. DHARNIDHARKA:  Portney, P-o-r-t-n-e-y.

19                  THE COURT:  Portney?

20                  MR. DHARNIDHARKA:  Yeah.

21                  THE COURT:  Well, I guess I have to read that one.

22                  MR. DHARNIDHARKA:  I mean, they're all the same.

23                  THE COURT:  Portney.

24          All right.  Tell me what Portney says.

25                  MR. DHARNIDHARKA:  Portney says that in the context
```

Exhibit 16
-221-

```
1        of constructive fraud, the required relationship is either

2        fiduciary duty of this confidential relationship, meaning

3        superior position, inequality, vulnerability based on advanced

4        age, youth, lack of education, weakness of mind, grief,

5        sickness, or some other incapacity.

6            And the contracting party for the plaintiffs is their CEO,

7        who's a licensed attorney.  So I don't think he is lacking in a

8        superior position -- he's in an inferior position, unequal or

9        vulnerable because of his age, youth, education, weakness of

10       mind, grief, sickness --

11               THE COURT:  Well, is it alleged in the complaint he

12       was a licensed attorney and all that, or is that just something

13       you're putting in outside the --

14               MR. DHARNIDHARKA:  Well, that's something I'm saying,

15       but it's also not alleged that he's old, young, lacks

16       education, weak mind, grief, sickness, or other incapacity.  So

17       those would be what you have to have alleged to make the

18       relationship --

19               THE COURT:  All right.  All right.

20               MR. DHARNIDHARKA:  -- under the law.

21               THE COURT:  Okay.  I need to give the other side a

22       moment, and then I'm going to tell you my plan.

23           Go ahead.

24               MR. DHARNIDHARKA:  Sure.

25               MR. TERRY:  Your Honor, I point you to the Martone
```

Exhibit 16
-222-

1       case, which is cited in my papers, which --

2               THE COURT:  Say that -- Bartone?

3               MR. TERRY:  Martone, M-a-r-t-o-n-e.

4               THE COURT:  Okay.  I'll read that one too.

5               MR. TERRY:  Your Honor, I would just -- I'd like to

6       point out to the Court that I believe Counsel is mis- --

7       misapplying Portney here.  It had to do with a different set of

8       facts.  There is a confidential relationship basis for

9       constructive fraud which does not rely on all those factors he

10      just cited.  You can look at the Martone case.  It's on point.

11      It's, I believe, from this court.

12              THE COURT:  Was it my case?

13              MR. TERRY:  Not -- I'm sorry.  Not your case but from

14      the Northern District.

15              THE COURT:  Okay.

16              MR. DHARNIDHARKA:  It's a fraud case, not a

17      constructive fraud case.

18              THE COURT:  Uh, uh, uh, uh, uh.

19          Go ahead.

20              MR. DHARNIDHARKA:  I'm sorry.  I'm trying to save you

21      some work.

22              MR. TERRY:  In any event, your Honor, I think it's

23      more on point than Portney, and --

24              THE COURT:  I'm going to look at both of them.

25          Okay.  Anything more?

Exhibit 16
-223-

```
 1                    MR. TERRY:  I'd just like to point out, your Honor,

 2       if you read the fact pattern here, I think you're definitely

 3       correct.  There's definitely something wrong here.  If we look

 4       at the facts, I think constructive fraud applies, I think fraud

 5       applies, but at this time we've chosen the constructive fraud

 6       claim.  But as a discovery procedure, your Honor, I believe we

 7       would --

 8                    THE COURT:  Okay.

 9                    MR. TERRY:  -- possibly add additional claims.

10                    THE COURT:  All right.  Here's the answer.  I don't

11       have any answer on some.  I'm going to have to read some of

12       those decisions on your other claims, but on the trade secrets

13       part, here's what's going to happen, and I'll explain it all

14       for you.

15            You don't even have to reach the question of whether or not

16       that 2019.2010 [sic] applies in Federal Court because I have

17       the authority to do that on my own motion under Rule 16, case

18       management, and I practiced for 25 years before I got this job.

19       I've seen it in a lot of cases as a judge for 15 years now.

20            It's the old trick of alleging trade secrets, getting into

21       the other side's files, and then miraculously finding things in

22       those files that you claim after the fact were trade secrets.

23       This pattern is exactly what led to that statute in California.

24       It's a very good proposition.

25            Now, on the plaintiff's side, you should know exactly what
```

**Exhibit 16**
**-224-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 242 of 300   Page ID
#:12307
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 20 of 36
20

1      your trade secrets are.  You don't need any discovery to find

2      out what your trade secrets are.  You ought to know what they

3      are right now.

4          So what we're going to do is I'm going to allow the trade

5      secrets claim but require the plaintiff to file under seal with

6      Counsel seeing it, attorney's eyes only, the specification as

7      required by state law, and if the defendant doesn't like the

8      way, you can bring a motion to knock it out and say it's not

9      specific enough and so forth.

10         No discovery by plaintiff at all.  Plaintiff can take zero

11     discovery until we get a proper trade secret statement on file.

12     On the other hand, the plaintiff -- the defendant can go right

13     ahead hucklety-buck with discovery.  You have brought this on

14     yourself by alleging trade secrets.  If you want to give up on

15     your trade secrets and go forward with the other discovery,

16     that's fine.  You can do that, but you have to give up all

17     trade secrets.  I'm not going to allow the plaintiff to take

18     any discovery until you get a proper statement on file.

19         Now, I'm also aware of one other old trick, and that is if

20     the defendant brings a motion to knock out the trade secrets

21     submission on some phony-baloney grounds in order to stonewall,

22     then I'm going to give the plaintiff extra time for discovery

23     and not give you any extra time for discovery.  So you ought to

24     be very careful not to bring such a motion unless you feel it's

25     going to win.  So that's what we're going to do on trade

**Exhibit 16**
**-225-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 243 of 300   Page ID
#:12308
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 21 of 36

21

```
 1    secrets.

 2         So I don't know the answer to your other -- your other

 3    contentions yet.  I'm going to -- I'm going to give you

 4    until -- you ought to know what your trade secrets are.  So I'm

 5    going to give you -- I'll see what it is.  Let me look at the

 6    date.

 7         Looks like March 20th is when you have to file your

 8    statement.  You can file it sooner if you want, and then I'll

 9    give the other side seven calendar days after it's filed to

10    bring in any motion to challenge.  After -- on the eighth day,

11    the plaintiff can start taking discovery.

12         So do you understand that schedule?

13              MR. TERRY:  Yes, your Honor.

14              THE COURT:  So you can file your statement tomorrow

15    and get the clock running, but you'll want to file a good one,

16    and if it just is something vague like software, no, that's no

17    good.

18              MR. TERRY:  Yes, your Honor.

19              THE COURT:  You have to say, "The secret we had was

20    we've discovered a way to write the code that would speed up

21    the time to process by 50 percent with this elegant solution,

22    software solution, and here it is," and then you identify the

23    code.

24              MR. TERRY:  Understood.

25              THE COURT:  You can't just use blather.  It has to be
```

**Exhibit 16**
**-226-**

22

```
 1     specific.  If it's not specific, then they can bring motions.

 2     I'm going to grant those motions.  You will be just spinning

 3     your wheels while the discovery period runs out.

 4               MR. TERRY:  Understood.

 5               THE COURT:  All right.  So that's what we're going to

 6     do on the trade secrets thing.

 7               MR. DHARNIDHARKA:  Can I make one clarification?

 8     Because the previous discovery order bifurcated discovery,

 9     though this is the second phase because we still haven't agreed

10     on a source code expert.  We're getting closer.

11               THE COURT:  What did I do?  What -- what are you

12     saying I did?  I don't remember that.

13               MR. DHARNIDHARKA:  At the January 9th CMC right after

14     the motion hearing --

15               THE COURT:  Yeah.

16               MR. DHARNIDHARKA:  -- you agreed that the first phase

17     should be doing the source code comparison.

18          All right.  We've been talking about a source code

19     comparison for years, and your Honor's position was that should

20     really streamline the case.

21               THE COURT:  Has that been done yet?

22               MR. DHARNIDHARKA:  We're still trying to work out --

23               THE COURT:  This is -- this is the end of February.

24               MR. DHARNIDHARKA:  Correct.

25               THE COURT:  And I did that when?
```

**Exhibit 16**
**-227-**

```
1                MR. DHARNIDHARKA:  January 9th.

2                THE COURT:  Well, that's seven or eight weeks ago.

3                MR. DHARNIDHARKA:  Exactly.

4                THE COURT:  You should have had it done by now.

5                MR. DHARNIDHARKA:  I agree.

6                MR. TERRY:  We're debating the expert that we'll use.

7      The plaintiff is --

8                THE COURT:  I'm going to -- okay.  I'm going to give

9      you two more weeks to get that part done.  Then you can do

10     normal discovery after that except the plaintiff can't until we

11     get this trade secrets thing nailed down.

12               MR. DHARNIDHARKA:  Okay.  So --

13               MR. TERRY:  Can I just say one more thing?

14               MR. DHARNIDHARKA:  -- to be clear, can the defendants

15     serve any discovery related to the trade secrets now?

16               THE COURT:  Not now you can't.

17               MR. DHARNIDHARKA:  Okay.

18               THE COURT:  I guess if I did that phasing thing --

19               MR. DHARNIDHARKA:  Sure.

20               THE COURT:  -- you're -- you've got to wait two more

21     weeks.

22               MR. DHARNIDHARKA:  Okay.

23               THE COURT:  You two should hurry up and get that part

24     done.

25               MR. DHARNIDHARKA:  I agree.
```

**Exhibit 16**
**-228-**

```
 1              THE COURT:  Otherwise, I'm just going to give up on

 2     that.

 3          Who talked me into that?

 4              MR. DHARNIDHARKA:  We asked for it, and we've been

 5     trying to get it, and we proposed an expert.

 6              THE COURT:  Well, I made a mistake probably on that.

 7     See, this always happens anytime you bifurcate discovery.  It

 8     sounds so good up front.  Then when you get into it, it's

 9     called Stonewall City, and somebody is goofing it up.  I don't

10     know who it is here, but it's not intended to move the case

11     along.  It's intended to slow things down.  So I should not

12     have gone along with that.

13          So I'm going to give you two more weeks to get that done.

14     If it's not done, then you can take normal discovery except for

15     the plaintiff until you get -- your hands are tied because you

16     want to allege trade secrets, and until you get that all sorted

17     out, no discovery for you.

18              MR. DHARNIDHARKA:  Thank you.

19              MR. TERRY:  Your Honor, can I point out one thing?

20     On the bifurcation, it was supposed to be the code comparison,

21     and then I asked for discovery of R&D related to creating that

22     code.  Your Honor approved --

23              THE COURT:  You don't need discovery.  You don't need

24     that to just do a straightforward comparison.

25              MR. TERRY:  Well, your Honor, the problem is we'll
```

**Exhibit 16**
**-229-**

1    have a piece of code that's been already developed, and you had

2    agreed with me at the time at least that we should be able to

3    look into how that was created, and I suggested a code log be

4    produced, which is sort of a trial-and-error shoot.

5              THE COURT:  Did I say that?  I don't remember.  Did I

6    say that?

7              MR. DHARNIDHARKA:  He proposed -- yeah -- a -- what's

8    it called?  The code log.  We don't have the code log.

9              MR. TERRY:  We requested a code log, but now they've

10   told us they don't have a code log.

11             MR. DHARNIDHARKA:  So we said, "We'll give you the

12   very first version and the current version," and we can --

13   we'll have a source code expert run it -- it's like a redline

14   -- to say either there's copy code or there's not, the very

15   first version and the last version.

16             THE COURT:  What's wrong with that?

17             MR. TERRY:  Well, that's not what I requested because

18   that just shows --

19             THE COURT:  That's what we're going to do because

20   this has turned into a nightmare.  Look, if they're using your

21   code, it ought to be on the code that's in use now, not on some

22   intermediate version.

23             MR. TERRY:  I think the -- the argument was --

24             THE COURT:  You've got a very -- you've got a very

25   attenuated trade secrets claim.  You'd have to resort to --

**Exhibit 16**
**-230-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 248 of 300   Page ID
#:12313
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 26 of 36
26

```
1     somewhere in an intermediate version, you're going to find

2     three lines of your code.  No jury is going to buy that.  Maybe

3     they would.  Maybe you're good enough to persuade a jury, but

4     that's a very weak case.  I thought you were saying that they

5     were using wholesale your code now.

6              MR. TERRY:  That's what we've alleged, your Honor,

7     that their -- when they formally produced their product on the

8     -- in the marketplace, it was exactly the same as our product.

9              THE COURT:  Don't you have a copy of that?

10             MR. TERRY:  We have -- we have screenshots and things

11    like that that we kept, but my point with the code log was if

12    you're developing code, clearly you must have spent some time

13    in designing that code and doing trial-and-error analysis, and

14    they don't have any of that, and they told us -- they told us

15    during that hearing they had a code log.

16             THE COURT:  It could -- look, if it gets to the jury

17    as follows -- if it gets to the jury that "Look at this

18    screenshot.  It's identical to ours" -- is that what you're

19    telling me?

20             MR. TERRY:  Yes.

21             THE COURT:  Okay.  Identical.

22         Okay.  That's pretty good evidence for you, and you have an

23    expert probably say something like "Well, you can't get there

24    unless you've copied the code," and then the other side will be

25    stuck with "We don't have the" -- "we threw away the
```

**Exhibit 16**
**-231-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 249 of 300   Page ID
#:12314
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 27 of 36

27

1    intermediate version."  Well, that looks like throwing away the

2    work papers by an accountant or CPA firm.  That will be pretty

3    good evidence for you.

4         Is that -- does that -- does that --

5              MR. TERRY:  Your Honor --

6              MR. DHARNIDHARKA:  Absolutely.

7              THE COURT:  You're telling me -- wait, wait, wait.

8    Is the defense telling me that the intermediate versions have

9    been destroyed?

10             MR. DHARNIDHARKA:  Not at all.

11             THE COURT:  Where are they?

12             MR. DHARNIDHARKA:  I mean, he can have every single

13   version.  The thing is there's a specific thing.  It's either

14   called a code log or source code repository.

15             THE COURT:  Just give him every single version that

16   you have.

17             MR. DHARNIDHARKA:  Happy to do so.

18             THE COURT:  All right.  Give him every single

19   version.  He can do his own code log.

20             MR. DHARNIDHARKA:  Absolutely.

21             THE COURT:  If it's in there somewhere, you'll find

22   it.

23             MR. DHARNIDHARKA:  And what we want to do --

24             MR. TERRY:  All right.

25             MR. DHARNIDHARKA:  -- with Phase -- with the

Exhibit 16
-232-

28

```
1       bifurcation -- we just want to have a source code comparison.

2       It's basically a redline that runs the very first version and

3       the current version to show there's absolutely no copy.  That's

4       what we've been proposing for two years.  That's what we want

5       to get done.

6               THE COURT:  Why don't you get every version you have.

7       You don't have to do some log.  He can do his own log.

8               MR. DHARNIDHARKA:  Absolutely.  That's fine.

9               THE COURT:  All right.  So turn over every single

10      version.  What you're telling me is he's going to crank it

11      through the machine, and the machine is going to say there's no

12      copying.  Is that your version?  Is that true?

13              MR. DHARNIDHARKA:  Absolutely.

14              THE COURT:  Well --

15              MR. TERRY:  Your Honor, how can a machine --

16              THE COURT:  So how are you going to get around that

17      then?

18              MR. TERRY:  Well, when we had this discussion --

19              THE COURT:  I don't care about a prior discussion.  I

20      don't remember.  I'm telling you the log has been -- has turned

21      out to be a bugaboo, and we're not -- it's stopping the

22      progress of the case.  You can do your own log.  He's going to

23      turn over every single version, intermediate, first, last.

24              MR. TERRY:  Okay.

25              THE COURT:  You ought to be thrilled.
```

**Exhibit 16**
-233-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 251 of 300   Page ID
#:12316
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 29 of 36

29

```
 1                 MR. DHARNIDHARKA:  I don't think he's going to want

 2       that.

 3                 MR. TERRY:  I haven't seen it yet, but the other

 4       thing is they have -- what did you call it? -- an audit --

 5       there's an audit log.

 6                 MR. DHARNIDHARKA:  No.  We don't have an audit log.

 7       A third party has a log that they can get by subpoena or

 8       whatever.  We're trying to give them whatever they want.

 9                 THE COURT:  You want him --

10                 MR. TERRY:  This is something --

11                 THE COURT:  -- to do all of your homework --

12                 MR. DHARNIDHARKA:  Exactly.  Exactly.

13                 THE COURT:  -- pay for all of your homework and do

14       your case on the cheap while making them -- there's no way

15       we're going to do that.

16                 MR. TERRY:  Your Honor --

17                 THE COURT:  Go subpoena those people if you want to

18       take -- if you want to try to get that.

19                 MR. TERRY:  We will, but, your Honor, now it's

20       contrary to your order earlier.  So I'm just trying to --

21                 THE COURT:  I'm not changing any order.  Now I

22       understand it better.  He's going to turn over every single

23       version; right?

24                 MR. DHARNIDHARKA:  If he wants every version, I'm

25       happy to.
```

**Exhibit 16**
**-234-**

```
 1              THE COURT:  No.  No.  He wants every version; right?

 2              MR. DHARNIDHARKA:  You want every version?

 3              MR. TERRY:  I would like to see every version, yes.

 4              THE COURT:  All right.  So then turn over every

 5     version.

 6              MR. DHARNIDHARKA:  And the source code comparison --

 7              THE COURT:  Can you do that by Monday?  Do that by

 8     Monday?

 9              MR. DHARNIDHARKA:  Is that physically possible?

10              MS. MCCRIMMON:  I'd have to check with our clients

11     and see if it's physically possible.

12              THE COURT:  Well, I want it -- it's got to all be

13     done within two weeks.

14              MR. TERRY:  Your Honor, this happened last time we

15     were here.  They said, "We had a code log."  I agreed to that.

16     Now they have to check with their clients again.  I'd like to

17     get some clarity on what their obligations are.  We haven't

18     been able --

19              THE COURT:  They're obligated -- I'm ordering the

20     following:

21         Within seven calendar days, you turn over every single

22     version of the code.

23              MR. DHARNIDHARKA:  Sure.

24         Now, the --

25              THE COURT:  Do you understand that?
```

Exhibit 16
-235-

```
 1                MR. DHARNIDHARKA:  Attorney's eyes only?

 2                THE COURT:  Attorney's eyes only.  Their expert can

 3      see it --

 4                MR. DHARNIDHARKA:  Yeah.

 5                THE COURT:  -- because these experts have got to

 6      crank it through the machine to see if it's copied.  Seven

 7      calendar days.

 8                MR. DHARNIDHARKA:  And to be fair, we did agree to do

 9      -- it's a joint expert.  So the expert can take our code, take

10      their code.  So one person gets the code.

11                THE COURT:  Have you agreed on an expert?

12                MR. TERRY:  We have a fundamental difference of

13      opinion.  We believe the expert needs to have experience in the

14      code.

15                THE COURT:  You're going to let his -- he gets to

16      choose the expert.

17                MR. DHARNIDHARKA:  And he's paying for it?

18                THE COURT:  He's paying for it.

19                MR. DHARNIDHARKA:  All right.

20                MR. TERRY:  We had agreed to split the cost.

21                THE COURT:  No.

22                MR. DHARNIDHARKA:  Nope.  That's what you had asked

23      for.

24                THE COURT:  Come on.

25                MR. TERRY:  Fine.
```

Exhibit 16
-236-

1          THE COURT:  You're the plaintiff.  You're trying to

2     do this case on the cheap.  Come on.

3          MR. DHARNIDHARKA:  And this is a source code

4     comparison actually.  They're going to try to change this into

5     some expert of some other thing.  It's a code comparison.  I

6     just want to be clear.  It's a code comparison.  Look at our

7     code.  Look at our code.  It's the same one.

8          THE COURT:  There's software out there that can crank

9     it through --

10          MR. DHARNIDHARKA:  Exactly.

11          THE COURT:  You can put them in a -- in a -- the, you

12     know, electronic form.  Is that the way you want it, electronic

13     form?

14          MR. TERRY:  Yes, I believe so.  I mean, the code

15     should be read through the programs that these experts use.

16          THE COURT:  Correct.

17       And so you give it to them in electronic form within seven

18     calendar days.  They're going to crank it through --

19          MR. DHARNIDHARKA:  Yeah.  It's called CodeSuite.

20     That's the actual software that does the comparison.

21          THE COURT:  Yeah.  So give it to him in a form that

22     can be read by the machine.

23          MR. DHARNIDHARKA:  Yep.

24          THE COURT:  And now are you going to be greatly

25     disappointed if it turns out that they are right because

**Exhibit 16**
**-237-**

```
 1        there's no copying?

 2                MR. DHARNIDHARKA:  Absolutely not.

 3                THE COURT:  What do you want to do?

 4          I want you to send me, by the way, the people's report

 5        telling me what came out of this.

 6                MR. DHARNIDHARKA:  Certainly.

 7                MR. TERRY:  My concern -- or my client's concern is

 8        if the code comes back and it's different in some fundamental

 9        way -- they use developers offshore.  They could have taken our

10        code.  They could have tweaked it a little bit.  Now it's not

11        exactly the same.

12                THE COURT:  This is a grassy knoll here.  This is a

13        grassy knoll.

14                MR. TERRY:  Well --

15                THE COURT:  This is a grassy knoll.

16                MR. DHARNIDHARKA:  And then they still copyright.

17                THE COURT:  They're out standing behind the wood

18        picket fence on the grassy knoll, shot the rifle, you know --

19        okay.  That's your client's concern?  Prove it.

20                MR. TERRY:  Well --

21                THE COURT:  Prove it.

22                MR. TERRY:  -- that's --

23                THE COURT:  Go prove it.

24                MR. TERRY:  We need to do discovery to at least

25        understand --
```

**Exhibit 16**
**-238-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 256 of 300   Page ID
#:12321
Case 3:13-cv-04519-WHA   Document 46   Filed 03/07/14   Page 34 of 36
34

```
 1              THE COURT:  Well, do a trade secret -- whenever we
 2    get the trade secrets parts down, we'll let you go forward.
 3    You might only have a few weeks left on discovery, but that's
 4    up to you.  You're the one that wanted to claim the things on
 5    the website as a trade secret.
 6              MR. TERRY:  Okay.  Well, we're happy to do the code
 7    comparison and proceed as your Honor has ordered.
 8              THE COURT:  I would like for you when it's done to
 9    send me a letter.  It could be under seal.  Give it to the
10    other side.  I want to know if there was any hits that shows
11    copying.
12         You've done the comparison?  Is that what you're telling
13    me?
14              MR. DHARNIDHARKA:  I can't.  I don't have their code.
15    I don't want their code.
16              THE COURT:  Okay.
17              MR. DHARNIDHARKA:  That's why we use an expert, but
18    we've been offering this code comparison for two years, and
19    we're happy and thrilled to hear that it's finally going to
20    happen.
21         I have nothing else that you --
22              THE COURT:  All right.  Maybe there will be some --
23    maybe you'll find something there.
24         All right.  I will get out an order where we'll have a case
25    management in place and go forward with it.
```

**Exhibit 16**
-239-

35

```
1          Thank you.

2                  MR. DHARNIDHARKA:   Thank you, your Honor.

3                  MR. TERRY:   Thank you, your Honor.

4                  MS. MCCRIMMON:   Thank you.

5          (At 8:45 a.m. the proceedings were adjourned.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Exhibit 16
-240-

1              CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5          I, James C. Pence, Federal Official Realtime Court

6    Reporter, in and for the United States District Court for the

7    Northern District of California, do hereby certify that

8    pursuant to Section 753, Title 28, United States Code that the

9    foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14                      Dated this 7th day of March, 2014.

15

16

17         _____

           JAMES C. PENCE, RMR, CRR, CSR NO. 13059
18         FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25

**Exhibit 16**
**-241-**

# EXHIBIT 17

1   DAVID F. GROSS (Bar No. 083547)
    david.gross@dlapiper.com
2   RAJIV DHARNIDHARKA (Bar No. 234756)
    rajiv.dharnidharka@dlapiper.com
3   DEBORAH MCCRIMMON (Bar No. 229769)
    deborah.mccrimmon@dlapiper.com
4   **DLA PIPER LLP (US)**
    555 Mission Street, Suite 2400
5   San Francisco, CA  94105-2933
    Tel:  415.836.2500
6   Fax:  415.836.2501

7   Attorneys for Defendants
    CVPartners, Inc., Skipan LLC, Skipan SAAS LLC,
8   Brandon Metcalf and Kent Gray

9

10                     UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13   JOBSCIENCE, INC.,                    CASE NO.  CV 13-04519 WHA

14                  Plaintiff,            **DEFENDANTS' ANSWER TO SECOND
                                          AMENDED COMPLAINT AND**
15          v.                            **AFFIRMATIVE DEFENSES**

16   CVPARTNERS, INC., a California       **DEMAND FOR JURY TRIAL**
     Corporation; SKIPAN LLC, a Delaware
17   Limited Liability Company; SKIPAN SAAS
     LLC, d.b.a. TALENT ROVER, a Delaware
18   Limited Liability Company; BRANDON
     METCALF, an individual; KENT GRAY, an
19   individual; and DOES 1-100,

20                  Defendants.

21

22

23

24

25

26

27

28

DLA PIPER LLP (US)
SAN FRANCISCO

WEST\247118145.2                         DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
                                                          CASE NO. CV 13-04519-WHA

**Exhibit 17
-242-**

1    Defendants CVPartners, Inc. ("Defendant CVPartners"), Skipan LLC ("Defendant Skipan

2    LLC"), Skipan SAAS LLC ("Defendant Skipan SAAS"), Brandon Metcalf ("Defendant

3    Metcalf") and Kent Gray ("Defendant Gray") (collectively, "Defendants") answer the Second

4    Amended Complaint ("SAC") of Plaintiff Jobscience, Inc. ("Plaintiff") as follows:

5                                            **ANSWER**

6            Paragraph numbers in this section correspond to the paragraph numbers of the SAC and

7    respond to the allegations of the corresponding paragraph, up to the Affirmative Defenses section

8    of this document.  For each paragraph, if an allegation is not explicitly admitted, it is denied.

9            1.    Defendants are without knowledge or information sufficient to form a belief as to

10   the truth of the allegation in Paragraph 1 that Jobscience is a leading software developer in the

11   business of developing and licensing proprietary software applications and services to the

12   recruiting, placement and staffing industry as well as to corporations with internal human

13   resource and recruiting departments worldwide, and based thereon deny the allegations.

14   Defendants admit that the SAC purports to asserts causes of action for copyright infringement,

15   breach of contract, misappropriation of trade secrets, unfair competition under California

16   Business and Professions Code § 17200, et seq. and constructive fraud.  Defendants deny the

17   remaining allegations contained in this paragraph.

18           2.    The allegations of Paragraph 2 consist of legal conclusions to which no response is

19   required.  Defendants specifically deny that they have caused any damage to Plaintiff or taken

20   any wrongful action direct at Plaintiff.

21                                            **PARTIES**

22           3.    Defendants are without knowledge or information sufficient to form a belief as to

23   the truth of the allegations contained in Paragraph 3 of the SAC and based thereon deny such

24   allegations.

25           4.    Defendants aver that Defendant CVPartners is a corporation organized and

26   existing under the laws of the State of California with its principal place of business located at

27   505 Sansome Street, Suite 1100, San Francisco, California.  Defendants deny the remaining

28   allegations contained in Paragraph 4.

Exhibit 17
-243-

5.      Defendants aver that Defendant Skipan LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 505 Sansome Street, Suite 1100, San Francisco, California.  Defendants deny the remaining allegations contained in Paragraph 5.

6.      Defendants aver that Defendant Skipan SAAS, doing business as Talent Rover, is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 505 Sansome Street, Suite 1020, San Francisco, California.  Defendants deny the remaining allegations contained in Paragraph 6.

7.      Defendants aver that Defendant Gray is an individual residing in Atherton, California.  Defendants further aver that Defendant Gray was one of the founders of Defendant CVPartners and acted as CEO of Defendant CVPartners from the time it was founded until May 2013.  Defendants further aver Defendant Gray is agent for service of process for Defendants CVPartners and Skipan LLC.  Defendants further aver that from January 2012 to the present, Defendant Gray was and is a member of Defendant Skipan LLC.  Defendants further aver that from May 2013 to the present, Defendant Gray was and is the CEO of Defendant Skipan SAAS, which does business as "Talent Rover."  Defendants deny the remaining allegations contained in Paragraph 7.

8.      Defendants aver that Defendant Metcalf is an individual residing in Oakland, California.  Defendants further aver that Defendant Metcalf became a Senior Director of Technology at Defendant CVPartners in 2010.  Defendants further aver that Defendant Metcalf was one of the founders of Defendant Skipan SAAS dba Talent Rover.  Defendants further aver that Defendant Metcalf currently holds the title of COO of Defendant Skipan SAAS and is agent for service of process for Defendant Skipan SAAS.  Defendants deny the remaining allegations contained in Paragraph 8.

9.      Defendants aver that Defendants CVPartners and Skipan LLC use the business address 505 Sansome Street, Suite 1100 San Francisco, California.  Defendants aver that Defendants Skipan SAAS and Metcalf use the business address 505 Sansome Street, Suite 1020, San Francisco, California.  Defendants aver that Defendant Gray uses the business addresses of

DLA PIPER LLP (US)
SAN FRANCISCO

WEST\247118145.2

-2-

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 13-04519-WHA

Exhibit 17
-244-

1  505 Sansome Street, Suites 1100 and 1020, San Francisco, California.  The allegation that

2  "Defendants CVPartners, Skipan, Skipan SAAS are the alter egos of one another and of the

3  individual Defendants" is a legal conclusions to which no response is required.  Defendants deny

4  the remaining allegations contained in Paragraph 9.

5        10.     The allegations of Paragraph 10 consist of legal conclusions to which no response

6  is required.  Defendants deny the allegations contained in Paragraph 10.

7        11.     The allegations of Paragraph 11 consist of legal conclusions to which no response

8  is required.  Defendants deny the allegations contained in Paragraph 11.

9        12.     The allegations of Paragraph 12 consist of legal conclusions to which no response

10  is required.  Defendants deny the allegations contained in Paragraph 12.

11                              **JURISDICTION AND VENUE**

12        13.     The allegations of Paragraph 13 consist of legal conclusions to which no response

13  is required.

14        14.     The allegations of Paragraph 14 consist of legal conclusions to which no response

15  is required.

16        15.     The allegations of Paragraph 15 consist of legal conclusions to which no response

17  is required.

18                              **GENERAL ALLEGATIONS**

19        16.     Defendants are without knowledge or information sufficient to form a belief as to

20  the truth of the allegations contained in Paragraph 16 of the SAC and based thereon deny such

21  allegations.

22        17.     Defendants are without knowledge or information sufficient to form a belief as to

23  the truth of the allegations contained in Paragraph 17 of the SAC and based thereon deny such

24  allegations.

25        18.     Defendants are without knowledge or information sufficient to form a belief as to

26  the truth of the allegations contained in Paragraph 18 of the SAC and based thereon deny such

27  allegations.

28        19.     The allegations of Paragraph 19 consist of legal conclusions to which no response

DLA PIPER LLP (US)
SAN FRANCISCO

-3-

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 13-04519-WHA

**Exhibit 17
-245-**

1   is required.  Defendants deny the allegations contained in Paragraph 19.

2        20.   Admitted.

3        21.   Defendants object that the use of the word "at all relevant times" in Paragraph 21

4   makes this paragraph vague and ambiguous. Defendants aver that Defendant Gray was one of the

5   founders of Defendant CVPartners and acted as CEO of Defendant CVPartners from the time it

6   was founded until May 2013.  Defendants further aver that Defendant Metcalf was employed by

7   Defendant CVPartners from 2007 to 2011.  Defendants deny the remaining allegations of

8   Paragraph 21.

9        22.   Defendants aver that prior to entering into a contractual relationship with

10  Jobscience on or about September 13, 2010, Defendant CVPartners had not developed a software

11  application product or service.  Defendants deny the remaining allegations of Paragraph 22.

12       23.   Admitted.

13       24.   Defendants are without knowledge or information sufficient to form a belief as to

14  the truth of the allegations in Paragraph 24 and based thereon deny such allegations.

15       25.   The allegations of Paragraph 25 consist of legal conclusions to which no response

16  is required.  Defendants deny the allegations of Paragraph 25.

17       26.   Admitted.

18       27.   Defendants are without knowledge or information sufficient to form a belief as to

19  the truth of the allegation in Paragraph 27 that the formation of Defendant Skipan SAAS was

20  unknown to Plaintiff and based thereon deny such allegations.  Defendants aver that Defendant

21  Skipan SAAS was formed in Delaware on November 18, 2011 and registered to do business in

22  California on November 21, 2011.  Defendants also aver that Defendant Metcalf is one of the

23  founders of Defendant Skipan SAAS and is currently acting as Chief Operating Officer of

24  Defendant Skipan SAAS.  Defendants deny the remaining allegations contained in Paragraph 27.

25       28.   Defendants aver that Defendant Metcalf became a Senior Director of Technology

26  at CVPartners in 2010.  Defendants further aver that Defendant Metcalf managed Defendant

27  CVPartners' use of the Jobscience software applications during the course of the contractual

28  relationship between Plaintiff and Defendant CVPartners.  Defendants deny the remaining

DLA PIPER LLP (US)
SAN FRANCISCO

-4-

WEST\247118145.2

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 13-04519-WHA

Exhibit 17
-246-

1    allegations contained in Paragraph 28.

2          29.    Denied.

3          30.    Defendants deny the first sentence of Paragraph 30.  Defendants are without

4    knowledge or information sufficient to form a belief as to the truth of the allegations in the second

5    sentence of Paragraph 30 and based thereon deny such allegations.

6          31.    Denied.

7          32.    Defendants aver that Defendant Skipan LLC was formed in Delaware on January

8    3, 2012.  Defendants further aver that Defendant Skipan LLC registered to do business in

9    California on January 11, 2012.  Defendants further aver that Defendant Gray is one of the

10   founders of Defendant Skipan LLC.  Defendants deny the remaining allegations of Paragraph 32.

11         33.    Denied.

12         34.    Defendants are without knowledge or information sufficient to form a belief as to

13   the truth of the allegation that it "took Jobscience several years and millions of dollars in

14   investment to create and perfect" their software code.  Defendants aver that on or about April 10,

15   2012, Defendant Skipan SAAS registered to do business in San Francisco under the fictitious

16   entity name "Talent Rover" which is the name of Defendant Skipan SAAS's software code.

17   Defendants aver that Defendant Skipan SAAS markets and sells Talent Rover on the

18   Salesforce.com AppExchange.  Defendants deny the remaining allegations contained in

19   Paragraph 34.

20         35.    Denied.

21         36.    Denied.

22         37.    Denied.

23         38.    Admitted.

24         39.    Defendants are without knowledge or information sufficient to form a belief as to

25   the truth of the allegations in Paragraph 39 and based thereon deny such allegations.

26         40.    Defendants are without knowledge or information sufficient to form a belief as to

27   the truth of the allegations in Paragraph 40 regarding Jobscience's communications with

28   Salesforce.com or Jobscience's purported reason for any such communications, and based thereon

DLA PIPER LLP (US)
SAN FRANCISCO

WEST\247118145.2

-5-

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 13-04519-WHA

Exhibit 17
-247-

1   deny such allegations.  Defendants specifically deny that any Defendant copied Plaintiff's job

2   board.  Defendants also specifically deny the existence of any unlawful conspiracy between any

3   Defendants.  Defendants deny the remaining allegations contained in Paragraph 40.

4       41.     The allegations that Defendants' alleged acts constitute a "willful breach of the

5   2010 Master Agreement" is a legal conclusion to which no response is required.  Defendants aver

6   that on or about November 8, 2012, Plaintiff sent a cease and desist letter to Defendant Gray.

7   Defendants deny the remaining allegations contained in Paragraph 41.

8       42.     The allegations of Paragraph 42 requires no response as the content of the Master

9   Subscription Agreement speaks for itself.

10       43.     The last sentence of Paragraph 43 consists of legal conclusions to which no

11   response is required.  The remaining allegations of Paragraph 43 require no response as the

12   contents of any such End User License Agreement speaks for itself.  Defendants deny the

13   remaining allegations contained in Paragraph 43.

14       44.     The first sentence of Paragraph 44 require no response as the content of the Master

15   Subscription Agreement speaks for itself.  The last sentence of Paragraph 44 consists of legal

16   conclusions to which no response is required.  Defendants deny the remaining allegations

17   contained in Paragraph 44.

18       45.     The allegations of Paragraph 45 consist of legal conclusions to which no response

19   is required.  Defendants deny the allegations of Paragraph 45.

20       46.     The allegations of Paragraph 46 consist of legal conclusions to which no response

21   is required.  Defendants deny the allegations of Paragraph 46.

22       47.     The allegations of Paragraph 47 consist of legal conclusions to which no response

23   is required.  Defendants deny the allegations of Paragraph 47.

24       48.     The allegations of Paragraph 48 consist of legal conclusions to which no response

25   is required.  Defendants deny the allegations of Paragraph 48.

26       49.     The allegations of Paragraph 49 consist of legal conclusions to which no response

27   is required.  Defendants deny the allegations of Paragraph 49.

28       50.     Defendants are without knowledge or information sufficient to form a belief as to

Exhibit 17
-248-

1    the truth of the allegations contained in sentences two, seven and nine of Paragraph 50.  The

2    allegations contained in sentences one, three, five, six and eight of Paragraph 50 consist of or

3    contain legal conclusions to which no response is required.  Defendants aver that Defendant

4    Metcalf did not disclose the creation of Skipan SAAS to Plaintiff prior to Defendant CVPartners

5    terminating its contractual relationship with Plaintiff.  Defendants also aver that Defendant Gray

6    did not inform Plaintiff that he was one of the founders and CEO of Skipan SAAS when he

7    renewed the Master Subscription Agreement with Plaintiff on behalf of CVPartners.  Defendants

8    deny the remaining allegations contained in Paragraph 50.  Defendants specifically deny that

9    Defendants CVPartners, Metcalf and Gray knowingly undertook to act for the benefit of

10   Jobscience.

11        51.    The allegations of Paragraph 51 consist of legal conclusions to which no response

12   is required.  Defendants deny the allegations of Paragraph 51.

13        52.    Defendants aver that Plaintiff contacted Defendant Gray on or about November 8,

14   2012 and that Plaintiff asserted that Defendant CVPartners had infringed Plaintiff's intellectual

15   property.  Defendants further aver that Defendant CVPartners received a cease and desist letter

16   from Plaintiff dated November 8, 2012.  Defendants deny the remaining allegations contained in

17   Paragraph 52.  Defendants specifically deny that they have committed any act of infringement or

18   any other wrongful act.

19        53.    Defendants aver that Plaintiff and Defendants made efforts to resolve the instant

20   dispute prior to the filing of the instant lawsuit.  Defendants deny the remaining allegations

21   contained in Paragraph 53.  Defendants specifically deny that they have committed any wrongful

22   act.

23        54.    Defendants aver that they are aware that on or about June 4, 2013, Plaintiff issued

24   a Take-Down Notice pursuant to the Digital Millennium Copyright Act ("DMCA") to

25   Salesforce.com, Inc ("Salesforce").  Defendants further aver that Defendant Skipan SAAS

26   informed Salesforce that there was no infringement.  Defendants deny the remaining allegations

27   contained in Paragraph 54.  Defendants specifically deny that they have committed any wrongful

28   act.

Exhibit 17
-249-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 268 of 300   Page ID
#:12333
Case 3:13-cv-04519-WHA   Document 47   Filed 03/14/14   Page 9 of 17

1       55.     Defendants aver that they are aware that on or about June 14, 2013, Plaintiff issued

2   a Take-Down Notice pursuant to the DMCA to Salesforce.  Defendants further aver that

3   Defendant Skipan SAAS informed Salesforce that there was no infringement.  Defendants deny

4   the remaining allegations contained in Paragraph 55.  Defendants specifically deny that they have

5   committed any wrongful act.

6       56.     The allegations of Paragraph 56 consist of legal conclusions to which no response

7   is required.  Defendants deny the allegations of Paragraph 56.

8       57.     The allegations of Paragraph 57 consist of legal conclusions to which no response

9   is required.  Defendants deny the allegations of Paragraph 57.

10       58.     The allegations of Paragraph 58 consist of legal conclusions to which no response

11   is required.  Defendants deny the allegations of Paragraph 58.  Defendants specifically deny that

12   they are in breach of any agreement or caused any harm to Plaintiff.

13                  **FIRST CAUSE OF ACTION**
              **Copyright Infringement – 17 U.S.C. § 106**

14                   **(Against All Defendants)**

15       59.     In response to Paragraph 59, Defendants repeat and reaver their responses to

16   Paragraphs 1-58, inclusive, as though set forth in full herein.

17       60.     The allegations of Paragraph 60 consist of legal conclusions to which no response

18   is required.  Defendants deny the allegations of Paragraph 60.  Defendants specifically deny that

19   they have infringed, or are infringing, Plaintiff's allegedly copyrighted software.  Defendants

20   specifically deny that they have committed any wrongful act.

21       61.     The allegations of Paragraph 61 consist of legal conclusions to which no response

22   is required.  Defendants deny the allegations of Paragraph 61.  Defendants specifically deny that

23   they have infringed, or are infringing, Plaintiff's allegedly copyrighted software.  Defendants

24   specifically deny that they have committed any wrongful act.

25       62.     The allegations of Paragraph 62 consist of legal conclusions to which no response

26   is required.  Defendants are without knowledge or information sufficient to form a belief as to the

27   truth of the allegations contained in Paragraph 62 of the SAC and based thereon deny such

28   allegations.  Defendants specifically deny that they have infringed, or are infringing, Plaintiff's

DLA PIPER LLP (US)
SAN FRANCISCO

WEST\247118145.2

-8-

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 13-04519-WHA

Exhibit 17
-250-

1   allegedly copyrighted software.  Defendants specifically deny that they have committed any

2   wrongful act.  Defendants specifically deny that they have caused any damage to Plaintiff.

3          63.      The allegations of Paragraph 63 consist of legal conclusions to which no response

4   is required.  Defendants deny the allegations of Paragraph 63.  Defendants specifically deny that

5   they have infringed, or are infringing, Plaintiff's allegedly copyrighted software.  Defendants

6   specifically deny that they have committed any wrongful act.  Defendants specifically deny that

7   they have caused any damage to Plaintiff.

8                      **SECOND CAUSE OF ACTION**
                            **Breach of Contract**
9          **(Against Defendants CVPartners, Gray and Metcalf)**

10         64.      In response to Paragraph 64, Defendants repeat and reaver their responses to

11   Paragraphs 1-63, inclusive, as though set forth in full herein.

12         65.      Defendants aver that only Defendant CVPartners entered into a Master

13   Subscription Agreement with Plaintiff on or about September 13, 2010.  Defendants deny the

14   remaining allegations contained in Paragraph 65.

15         66.      The allegations of Paragraph 66 consist of legal conclusions to which no response

16   is required.  Defendants deny the allegations of Paragraph 66.

17         67.      The allegations of Paragraph 67 consist of legal conclusions to which no response

18   is required.  Defendants deny the allegations of Paragraph 67.  Specifically, Defendants deny that

19   they committed any wrongful act.

20         68.      The allegations of Paragraph 68 consist of legal conclusions to which no response

21   is required.  Defendants deny the allegations of Paragraph 68.  Specifically, Defendants deny that

22   they committed any wrongful act.

23         69.      The allegations of Paragraph 69 consist of legal conclusions to which no response

24   is required.  Defendants deny the allegations of Paragraph 69.  Specifically, Defendants deny that

25   they committed any wrongful act.

26         70.      The allegations of Paragraph 70 consist of legal conclusions to which no response

27   is required.  Defendants deny the allegations of Paragraph 70.  Specifically, Defendants deny that

28   they committed any wrongful act.

DLA Piper LLP (US)
San Francisco

WEST\247118145.2

-9-

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 13-04519-WHA

**Exhibit 17**
**-251-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 270 of 300   Page ID
#:12335
Case 3:13-cv-04519-WHA   Document 47   Filed 03/14/14   Page 11 of 17

1    71.    The allegations of Paragraph 71 consist of legal conclusions to which no response

2    is required.  Defendants deny the allegations of Paragraph 71.  Specifically, Defendants deny that

3    they committed any wrongful act.  Defendants specifically deny that they have caused any

4    damage to Plaintiff.

5                                    **THIRD CAUSE OF ACTION**
                    **Misappropriation of Trade Secret – Cal. Civil Code § 3426 et seq.**
6                                    **(Against All Defendants)**

7    72.    In response to Paragraph 72, Defendants repeat and reaver their responses to

8    Paragraphs 1-71, inclusive, as though set forth in full herein.

9    73.    Defendants are without knowledge or information sufficient to form a belief as to

10   the truth of the allegations contained in the first two sentences of Paragraph 73 of the SAC and

11   based thereon deny such allegations.  Defendants specifically deny the allegation they converted

12   any of Plaintiff's trade secrets for their own use.  Defendants deny the remaining allegations

13   contained in Paragraph 73.

14   74.    The allegations of Paragraph 74 consist of legal conclusions to which no response

15   is required.  Defendants deny the allegations of Paragraph 74.  Specifically, Defendants deny that

16   they committed any wrongful act.

17   75.    The allegations of Paragraph 75 consist of legal conclusions to which no response

18   is required.  Defendants deny the allegations of Paragraph 75.  Specifically, Defendants deny that

19   they committed any wrongful act.

20   76.    The allegations of Paragraph 76 consist of legal conclusions to which no response

21   is required.  Defendants deny the allegations of Paragraph 76.  Specifically, Defendants deny that

22   they committed any wrongful act.

23   77.    The allegations of Paragraph 77 consist of legal conclusions to which no response

24   is required.  Defendants deny the allegations of Paragraph 77.  Specifically, Defendants deny that

25   they committed any wrongful act.

26   78.    The allegations of Paragraph 78 consist of legal conclusions to which no response

27   is required.  Defendants deny the allegations of Paragraph 78.  Specifically, Defendants deny that

28   they committed any wrongful act.  Defendants specifically deny that they have caused any

DLA PIPER LLP (US)
SAN FRANCISCO

WEST\247118145.2

-10-

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 13-04519-WHA

**Exhibit 17**
**-252-**

1    damage to Plaintiff.

2         79.    The allegations of Paragraph 79 consist of legal conclusions to which no response

3    is required.  Defendants deny the allegations of Paragraph 79.  Specifically, Defendants deny that

4    they committed any wrongful act.  Defendants specifically deny that they have caused any

5    damage to Plaintiff.

6         80.    The allegations of Paragraph 80 consist of legal conclusions to which no response

7    is required.  Defendants deny the allegations of Paragraph 80.  Specifically, Defendants deny that

8    they committed any wrongful act.  Defendants specifically deny that they have caused any

9    damage to Plaintiff.

10                          **FOURTH CAUSE OF ACTION**
                **Unfair Competition Cal. Bus. & Prof. Code § 17200, et seq.**
11                **(Against Defendants CVPartners, Metcalf and Gray)**

12         81.    In response to Paragraph 81, Defendants repeat and reaver their responses to

13    Paragraphs 1-80, inclusive, as though set forth in full herein.

14         82.    The allegations of Paragraph 82 consist of legal conclusions to which no response

15    is required.  Defendants deny the allegations of Paragraph 82.  Specifically, Defendants deny that

16    they committed any wrongful act.

17         83.    The allegations of Paragraph 83 consist of legal conclusions to which no response

18    is required.  Defendants deny the allegations of Paragraph 83.  Specifically, Defendants deny that

19    they committed any wrongful act.

20         84.    The allegations of Paragraph 84 consist of legal conclusions to which no response

21    is required.  Defendants deny the allegations of Paragraph 84.  Specifically, Defendants deny that

22    they committed any wrongful act.

23         85.    The allegations of Paragraph 85 consist of legal conclusions to which no response

24    is required.  Defendants deny the allegations of Paragraph 85.  Specifically, Defendants deny that

25    they committed any wrongful act.  Defendants specifically deny that they have caused any

26    damage to Plaintiff.

27         86.    The allegations of Paragraph 86 consist of legal conclusions to which no response

28    is required.  Defendants deny the allegations of Paragraph 86.  Specifically, Defendants deny that

DLA PIPER LLP (US)
SAN FRANCISCO

WEST\247118145.2

-11-

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 13-04519-WHA

Exhibit 17
-253-

1  they committed any wrongful act.  Defendants specifically deny that they have caused any

2  damage to Plaintiff.

3        87.  The allegations of Paragraph 87 consist of legal conclusions to which no response

4  is required.  Defendants deny the allegations of Paragraph 87.  Specifically, Defendants deny that

5  they committed any wrongful act.  Defendants specifically deny that they have caused any

6  damage to Plaintiff.

7                 **FIFTH CAUSE OF ACTION**
                 **Constructive Trust**

8  **(Against Defendants CVPartners, Metcalf and Gray)**

9        88.  In response to Paragraph 88, Defendants repeat and reaver their responses to

10  Paragraphs 1-87, inclusive, as though set forth in full herein.

11        89.  The allegations of Paragraph 89 consist of legal conclusions to which no response

12  is required.  Defendants deny the allegations of Paragraph 89.  Specifically, Defendants deny that

13  they entered into a confidential relationship with Plaintiff at any time.

14        90.  Defendants aver that Defendant CVPartners renewed the Master Subscription

15  Agreement with Plaintiff one time.  The remaining allegations of Paragraph 90 consist of legal

16  conclusions to which no response is required.  Defendants deny the remaining allegations

17  contained in Paragraph 90.

18        91.  The allegations of Paragraph 91 consist of legal conclusions to which no response

19  is required.  Defendants deny the allegations of Paragraph 91.

20        92.  Denied.

21        93.  The allegations of Paragraph 93 consist of legal conclusions to which no response

22  is required.  Defendants deny the allegations of Paragraph 93.  Defendants specifically deny that

23  they have caused any damage to Plaintiff.

24        94.  The allegations of Paragraph 94 consist of legal conclusions to which no response

25  is required.  Defendants deny the allegations of Paragraph 94.  Defendants specifically deny that

26  they have caused any damage to Plaintiff.

27        95.  The allegations of Paragraph 95 consist of legal conclusions to which no response

28  is required.  Defendants deny the allegations of Paragraph 95.  Defendants specifically deny that

DLA Piper LLP (US)
San Francisco

WEST\247118145.2

-12-

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 13-04519-WHA

Exhibit 17
-254-

1    they have caused any damage to Plaintiff.

2                           **AFFIRMATIVE DEFENSES**

3                       **FIRST AFFIRMATIVE DEFENSE**
                           **(Failure to State a Claim)**
4

5         1.      Plaintiff's SAC, and each purported claim therein, fails to state facts sufficient to

6    constitute a claim upon which relief may be granted against any Defendant.

7                      **SECOND AFFIRMATIVE DEFENSE**
                           **(Copyright Invalidity)**
8

9         2.      Plaintiff's copyright infringement claims are barred on the grounds that its

10   copyrights are invalid for lack of originality.

11                      **THIRD AFFIRMATIVE DEFENSE**
                        **(Lack of Copyright Ownership)**
12

13        3.      Plaintiff's copyright infringement claims are barred on the grounds that Plaintiff

14   lacks copyright ownership in the subject matter claimed to be copyrighted.

15                     **FOURTH AFFIRMATIVE DEFENSE**
                           **(Copyright Misuse)**
16

17        4.      Plaintiff's SAC, and each purported claim therein, is barred because of Plaintiff's

18   copyright misuse.

19                      **FIFTH AFFIRMATIVE DEFENSE**
                               **(Fair Use)**
20

21        5.      Plaintiff's SAC, and each purported claim therein, is barred by the fair use

22   doctrine.

23                      **SIXTH AFFIRMATIVE DEFENSE**
                          **(De Minimis Copying)**
24

25        6.      Plaintiff's copyright infringement claims are barred by the de minimis copying

26   doctrine.

27

28

DLA PIPER LLP (US)
SAN FRANCISCO

WEST\247118145.2

-13-

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 13-04519-WHA

**Exhibit 17**
**-255-**

**SEVENTH AFFIRMATIVE DEFENSE**
**(Reverse Engineering 17 U.S.C. § 1201(f))**

7.      Plaintiff's SAC, and each purported claim therein, is barred by the statutory exception provided by 17 U.S.C. § 1201(f) for reverse engineering.

**EIGHTH AFFIRMATIVE DEFENSE**
**(Unclean Hands)**

8.      Plaintiff's SAC, and each purported claim therein, is barred pursuant to the doctrine of unclean hands.

**NINTH AFFIRMATIVE DEFENSE**
**(Standing)**

9.      Plaintiff's claim that Defendants Skipan SAAS and CVPartners have breached the Salesforce.com OEM agreement is barred because of lack of standing.

**TENTH AFFIRMATIVE DEFENSE**
**(Privilege of Competition)**

10.     Plaintiff's unfair business practices claim is barred by the privilege of competition based on the fact that Defendants did not use wrongful means to advance an interest in competing in the free market.

**ELEVENTH AFFIRMATIVE DEFENSE**
**(Laches)**

11.     Plaintiff has delayed, for an unreasonable period of time, asserting its claims against Defendants and those delays have prejudiced Defendants.  Plaintiff's SAC, and each purported claim therein, is therefore barred by the doctrine of laches.

**TWELFTH AFFIRMATIVE DEFENSE**
**(Failure to Mitigate Damages)**

12.     Plaintiff has failed to act reasonably to mitigate or to minimize the damages it has alleged.

Exhibit 17
-256-

**THIRTEENTH AFFIRMATIVE DEFENSE**
**(Estoppel)**

13.     Plaintiff is estopped by its own acts or omissions from recovery against Defendants for the alleged loss, injury or damage suffered by it, if any.

**FOURTEENTH AFFIRMATIVE DEFENSE**
**(Waiver)**

14.     Plaintiff's SAC, and each purported claim therein, is barred pursuant to the doctrine of waiver.

**FIFTEENTH AFFIRMATIVE DEFENSE**
**(Adequate Remedies at Law)**

15.     Plaintiff's claims for injunctive or other equitable relief are barred because Plaintiff has an adequate remedy at law.

**SIXTEENTH AFFIRMATIVE DEFENSE**
**(Preemption)**

16.     Plaintiff's tort claims are preempted by federal copyright law and/or the California Uniform Trade Secret Act.

**SEVENTEENTH AFFIRMATIVE DEFENSE**
**(Failures of Conditions Precedent, Concurrent and/or Subsequent)**

17.     Each and every alleged claim for relief against Defendants which relies on the existence of any contract is barred in whole or in part by failures of conditions precedent, concurrent, and/or subsequent.

**EIGHTEENTH AFFIRMATIVE DEFENSE**
**(Failure to Perform Obligations under Contract)**

18.     Defendants were excused from performing any alleged obligations under any purported contract due to Plaintiff's failure to perform its obligations under the alleged contract.

**NINETEENTH AFFIRMATIVE DEFENSE**
**(Good Faith)**

19.     The SAC and each purported cause of action alleged therein, is barred because

DLA PIPER LLP (US)
SAN FRANCISCO

WEST\247118145.2

-15-

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 13-04519-WHA

Exhibit 17
-257-

1    Defendants' acted at all times in good faith.

2                    **TWENTIETH AFFIRMATIVE DEFENSE**
3            **(Bad Faith Claim of Misappropriation of Trade Secret)**

4        20.    Plaintiff's claim for misappropriation of trade secret is brought in bad faith,

5    without factual or legal basis.  Therefore, Defendants are entitled to recover attorneys' fees and

6    costs pursuant to California Civil Code § 3426.4.

7                              **PRAYER FOR RELIEF**

8        **WHEREFORE**, Defendants pray for judgment as follows:

9        1.    That Plaintiff take nothing by its SAC;

10       2.    That Plaintiff's SAC be dismissed with prejudice in its entirety;

11       3.    That Defendants be awarded their recoverable attorneys' fees and costs; and

12       4.    That this Court award Defendants such other and further relief as it may deem

13   appropriate.

14                                **JURY DEMAND**

15       Defendants demand trial by jury on all claims triable to a jury in this action.

16

17   Dated:  March 14, 2014                Respectfully submitted,

18

19                                          DLA PIPER LLP (US)

20                                          By:    /s/ Deborah McCrimmon
21                                                 Deborah McCrimmon

22                                          Attorneys for Defendants
                                            CVPartners, Inc., Skipan LLC, Skipan
23                                          SAAS LLC, Brandon Metcalf and Kent
                                            Gray

24

25

26

27

28

DLA PIPER LLP (US)
SAN FRANCISCO

WEST\247118145.2

-16-

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 13-04519-WHA

**Exhibit 17**
**-258-**

# EXHIBIT 18

1  Joseph R. Re (Bar No. 134479)
   joseph.re@knobbe.com
2  Stephen C. Jensen (Bar No. 149894)
   steve.jensen@knobbe.com
3  Perry D. Oldham (Bar No. 216016)
   perry.oldham@knobbe.com
4  Stephen W. Larson (Bar No. 240844)
   stephen.larson@knobbe.com
5
6  **KNOBBE, MARTENS, OLSON & BEAR, LLP**
   2040 Main Street, Fourteenth Floor
7  Irvine, CA 92614
   Telephone:  (949)-760-0404 Facsimile:  (949)-760-9502
8
   Adam B. Powell (Bar No. 272725)
9  adam.powell@knobbe.com
   **KNOBBE, MARTENS, OLSON & BEAR, LLP**
10 12790 El Camino Real
   San Diego, CA 92130
11 Telephone: (858) 707-4000 Facsimile: (858) 707-4001
12
   Attorneys for Plaintiffs,
13 Masimo Corporation and Cercacor Laboratories, Inc.

14

15          **IN THE UNITED STATES DISTRICT COURT**

16       **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

17                  **SOUTHERN DIVISION**

18 MASIMO CORPORATION,                 ) Case No. 8:20-cv-00048-JVS-JDE
   a Delaware corporation; and         )
19 CERCACOR LABORATORIES, INC.,        ) Hon. James V. Selna
   a Delaware corporation              ) Magistrate Judge John D. Early
20                                      )
          Plaintiffs,                   ) **PLAINTIFFS' OPPOSITION TO**
21                                      ) **APPLE INC.'S MOTION FOR**
          v.                            ) **REVIEW OF AND OBJECTIONS**
22                                      ) **TO MAGISTRATE JUDGE**
   APPLE INC., a California corporation ) **EARLY'S JUNE 15, 2020, ORDER**
23                                      )
                                        ) Date:       7/20/2020
24        Defendant.                    ) Time:       1:30 p.m.
                                        ) Location:   Courtroom 10C
25 ─────────────────────────────────── )

26

27

28

**Exhibit 18**
**-259-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 279 of 300   Page ID
#:12344
Case 8:20-cv-00048-JVS-JDE   Document 64   Filed 06/29/20   Page 2 of 23   Page ID #:5146

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ...................................................................................1

II.     FACTUAL BACKGROUND ..................................................................2

        A.      Plaintiffs Served Patent Discovery ..................................................2

        B.      This Court Stays "Trade Secret Discovery Only" .........................3

        C.      Judge Early Rejects Apple's Second Bite At The Apple ..............4

        D.      Apple Withholds Core Technical Documents ...............................5

        E.      Apple Rejects Plaintiffs' Many Attempts to Resolve
                These Issues ...................................................................................6

        F.      The Court Resolves Apple's Motion to Dismiss .........................6

III.    ARGUMENT ........................................................................................7

        A.      This Court Rejected Apple's Attempt to Stay Patent
                Discovery .......................................................................................7

        B.      Apple Fails To Show Error in Judge Early's Order ......................8

                1.      None of Apple's Textual Arguments Establish
                        Error ....................................................................................9

                2.      None of Apple's Policy Arguments Establish Error ..........12

                        a.      Judge Early Correctly Rejected Apple's
                                Request to Rewrite the Scheduling Order ...............13

                        b.      Judge Early's Decision Does Not Open the
                                Door For Plaintiffs to Claim Apple's
                                "Innovations" as Their Own.....................................13

                        c.      Judge Early's Decision Does Not Frustrate
                                This Court's Ability to Frame the
                                Appropriate Scope of Discovery .............................16

                        d.      Judge Early's Decision Does Not Render
                                Section 2019.210 Meaningless.................................17

        C.      Apple's Requested Relief Far Exceeds Section 2019.210 ..........18

IV.     CONCLUSION .....................................................................................19

-i-

Exhibit 18
-260-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 280 of 300   Page ID
#:12345
Case 8:20-cv-00048-JVS-JDE   Document 64   Filed 06/29/20   Page 3 of 23   Page ID #:5147

1

**TABLE OF AUTHORITIES**

2

**Page No(s).**

3

4

*Advanced Modular Sputtering, Inc. v. Superior Court*,

5
    132 Cal. App. 4th 826 (2005).................................................................. 9, 12

6

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,

7
    No. 10-CV-03428-LHK, Dkt. 72 (N.D. Cal. Mar. 24, 2011) ...................... 10

8

*Bryant v. Mattel*,
    No. 04-CV-09049-SGL, 2007 WL 5430888 (C.D. Cal. May 18,

9
    2007) ............................................................................................................ 11

10

*Comput. Econs., Inc. v. Gartner Grp., Inc.*,

11
    50 F. Supp. 2d 980 (S.D. Cal. 1999) ...................................................... 15, 16

12

*Jobscience, Inc. v. CV Partners*,

13
    No. 13-04519-WHA, 2014 WL 852477
    (N.D. Cal. Feb. 28, 2014) ............................................................................ 15

14

*Loop AI Labs Inc. v. Gatti*,

15
    No. 15-CV-00798-HSG, 2015 WL 9269758

16
    (N.D. Cal. Dec. 21, 2015)......................................................................... 8, 11

17

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,

18
    No. 19-CV-00220-JVS, 2019 WL 4284523

19
    (C.D. Cal. June 11, 2019).......................................................... 11, 12, 15, 16

20

*Monolithic Power Sys., Inc. v. Silergy Corp.*,
    No. 14-CV-01745-VC, 2015 WL 5948159

21
    (N.D. Cal. Oct. 14, 2015) ............................................................................ 11

22

*Perlan Therapeutics, Inc. v. Sup. Court*,

23
    178 Cal. App. 4th 1333 (2009)...................................................................... 9

24

*Space Data Corp. v. X*,

25
    No. 16-CV-03260-BLF, 2017 WL 3007078, *4
    (N.D. Cal. July 14, 2017) ............................................................................ 10

26

*Swarmfly, Inc. v. Cloudfare, Inc.*,

27
    No. 17-06957-WHA, 2018 WL 2445515

28
    (N.D. Cal. May 31, 2018)............................................................................ 15

**Exhibit 18
-261-**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
(***cont'd***)

**Page No(s).**

**OTHER AUTHORITIES**

California Code of Civil Procedure § 2019.210 ......................................... *passim*

Fed. R. Civ. P. 1 .................................................................................. 15

-iii-

**Exhibit 18**
**-262-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 282 of 300   Page ID
#:12347
Case 8:20-cv-00048-JVS-JDE   Document 64   Filed 06/29/20   Page 5 of 23   Page ID #:5149

# I.  INTRODUCTION

1

2          Apple's Motion seeks—for the ***third*** time—to stay patent discovery until

3   Plaintiffs provide an "adequate" Section 2019.210 statement.  Apple made this

4   same argument in the Rule 26(f) report and this Court rejected it, holding: "The

5   Court adopts the ***patent specific dates***.   The Court stays the ***trade secret***

6   ***discovery only*** pending compliance with Section 2019.210."  Dkt. 37.[1]  Rather

7   than seek reconsideration from this Court, Apple sought a contrary ruling from

8   Magistrate Judge Early.   Judge Early correctly rejected Apple's attempt to

9   relitigate these issues and held that patent discovery is ***not*** stayed.  Dkt. 54 at 8.

10         Apple identifies no error in that decision.   The California Court of

11  Appeals has interpreted Section 2019.210 as barring discovery of non-trade

12  secret claims if the claim "hinges upon" the trade secret allegations.  As a result,

13  courts routinely allow patent discovery to proceed even if the plaintiff has not

14  complied with Section 2019.210.  Apple cites no contrary cases.  Instead, Apple

15  relies primarily on policy arguments.  None have merit, much less establish that

16  Judge Early's decision is clearly erroneous or contrary to law.

17         Indeed, most of Apple's policy arguments are based on a strawman: that

18  Plaintiffs have delayed service of their Section 2019.210 statement so that they

19  could use Apple's technical documents to identify their trade secrets.  That is

20  incorrect.  Like Apple, Plaintiffs are waiting for entry of a protective order to

21  provide confidential information.  Unlike Apple, however, Plaintiffs repeatedly

22  suggested a reciprocal arrangement whereby ***both*** parties would provide their

23  confidential information and hold it on an attorneys-eyes only basis.  Plaintiffs

24  even offered a simultaneous exchange ***on the same day***.  Apple rejected all

25  those proposals, which lays bare the false premise of Apple's motion.

26

27  ─────────────────

28  [1] All emphasis is added unless noted otherwise.

-1-

**Exhibit 18
-263-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 283 of 300   Page ID
#:12348
Case 8:20-cv-00048-JVS-JDE   Document 64   Filed 06/29/20   Page 6 of 23   Page ID #:5150

1     Apple's real goal is to withhold all patent discovery for months while

2  Apple litigates the **sufficiency** of Plaintiffs' impending 2019.210 statement.

3  Apple cites no cases supporting such an approach, which would wreak havoc on

4  this Court's schedule.  Indeed, Apple has already flouted this Court's deadline

5  to provide core technical documents, prejudicing Plaintiffs' ability to prepare

6  their infringement contentions.  Apple is also engaging in self-help by refusing

7  to produce documents, even though it did not seek a stay of Judge Early's

8  Order.  This Court already held that patent discovery should proceed, and Judge

9  Early correctly enforced this Court's decision.  This Court should reject Apple's

10  meritless third attempt to withhold patent discovery.

## II. <u>FACTUAL BACKGROUND</u>

### A.   <u>Plaintiffs Served Patent Discovery</u>

13     On March 16, 2020, Plaintiffs served twenty-five Requests for Production

14  ("RFPs").  Ex. 1.[2]  RFPs 1-4 seek Apple's knowledge of or attempts to design

15  around the "Masimo Asserted Patents."  *Id.* at 8-9.  RFPs 5-25 seek core

16  technical documents and other technical information about the "Accused

17  Products," defined as the products accused of patent infringement.  *Id.* at 7.

18     RFPs 5-15 seek basic information about the structure and operation of the

19  Accused Products.  For example, RFP 5 seeks "Documents sufficient to show

20  the design and operation of the Accused Products."[3]  *Id.* at 9.  RFPs 16-25 are

21  tailored towards particular patent claim limitations.  For example, RFP 16 seeks

22  information about "components, surface areas, or adhesives that separate light

---

[2] All citations to exhibits are citations to the exhibits attached to the Declaration of Stephen Larson filed herewith unless otherwise noted.

[3] Apple previously argued RFPs 8-9 seek "confidential and sensitive" information about "Apple's marketing strategy."  Dkt. 43-1 at 16.  That is incorrect.  Those requests seek public statements, including "press releases" and "internet postings," about how the Accused Products function.  Ex. 1 at 9-10.

-2-

**Exhibit 18**
**-264-**

1   emitted by LEDs from other components of any of the Accused Products."  *Id.*

2   at 11.  Such information is relevant at least to claim 1 of U.S. Patent No.

3   10,470,695, which recites: "a light block forming an enclosing wall between the

4   light emission source and the plurality of detectors . . . ."  Ex. 2 at Claim 1.

5        Similarly, RFP 21 seeks information about the power consumption of the

6   heart rate algorithms used in the Accused Products.  RFP 22 seeks information

7   about the operation of LEDs used to determine pulse or heart rate, including

8   timing, duty cycle, current, or power usage.  RFP 23 seeks information about

9   collecting heart rate metrics using a first technique during a first period and a

10  second technique during a second period.  Such information is relevant at least

11  to Claim 1 of U.S. Patent No. 10,433,776, which recites in part:

12       wherein said operating of the patient monitor according to the first

13       control protocol operates the first control protocol light source
    according to a ***first duty cycle*** and said operating of the patient

14       monitor according to the second control protocol operates the

15       second control protocol light source according to a ***second duty
    cycle***, wherein ***power consumption*** of the first control protocol

16       light source according to the ***first duty cycle*** is different than

17       ***power consumption*** of the second control protocol light source
    according to the ***second duty cycle***.

18

19  Ex. 3 at Claim 1.

20  **B.**    <u>**This Court Stays "Trade Secret Discovery Only"**</u>

21       On April 14, 2020, the parties submitted their Joint Rule 26(f) report.

22  Dkt. 33.  The parties presented extensive argument on whether and how Section

23  2019.210 applies to this case.  *Id.* at 6-8 and 13-20.  Apple acknowledged

24  Plaintiffs' RFPs 1-25 may "concern the asserted patents and technical

25  information about the products accused of patent infringement . . .."  *Id.* at 7.

26  However, Apple argued it need not provide such discovery until after Plaintiffs

27  provide a Section 2019.210 disclosure because the discovery is ***also*** relevant to

28  Plaintiffs' trade secret claim.  *Id.* at 7-8.  Apple also argued the patent-specific

-3-

**Exhibit 18**
**-265-**

1   deadlines in the Rule 26(f) report—including the deadline to produce "core

2   technical documents" that Apple recently ignored—should not apply until

3   Plaintiffs provide an *adequate* Section 2019.210 disclosure.  *Id.* at 26, n.6.

4        Plaintiffs responded that Section 2019.210 does not bar patent discovery

5   merely because it could *also* be relevant to trade secrets.  *Id.* at 14-15 (citing

6   *Bryant v. Mattel*, 2007 WL 5430888, *3 n.3 (C.D. Cal. May 18, 2007)).

7   Plaintiffs objected to Apple's attempt to use a "California state procedural rule

8   concerning trade secrets to preclude typical patent discovery."  *Id.*

9        On April 17, 2020, this Court rejected Apple's argument.  *See* Dkt. 37.

10  The Court held: "The Court adopts the *patent specific dates*.  The Court stays

11  the *trade secret discovery only* pending compliance with Section 2019.210."  *Id.*

12  Thus, this Court determined Section 2019.210 applies to "trade secret discovery

13  only"—not patent discovery that may also be relevant to trade secrets.

14  **C.    Judge Early Rejects Apple's Second Bite At The Apple**

15       Despite the clear language of the Scheduling Order, Apple moved for a

16  protective order on RFPs 5-25.  Dkt. 43.  Apple argued Plaintiffs should be

17  barred from seeking "information pertaining to [Plaintiffs'] patent claims"

18  because the requests "*also* seek information *relating* to Plaintiffs' trade secret

19  claim."   Dkt. 43-1 at 16 (emphasis in original).   In its Supplemental

20  Memorandum, Apple argued that limiting trade secret discovery *only* is

21  inconsistent with Section 2019.210.  *Id.* at 2.

22       On June 15, 2020, Judge Early correctly rejected Apple's argument,

23  explaining:

24       Significantly here, the parties presented many of the same
         arguments raised in the Joint Stipulation in summary form in their
25       respective portions of their Rule 26 Joint Report to Judge Selna.
         See Dkt. 33 at 13-20.  Having considered those arguments, Judge
26       Selna adopted "the patent specific dates" presented by the parties in
         the Joint Report, and then, one sentence later, stayed "the trade
27       secret discovery *only* pending compliance with 2019.210."
28

-4-

**Exhibit 18
-266-**

1  Dkt. 54 at 7.  Judge Early found that this Court necessarily determined patent

2  discovery and the "patent-related dates" are *not* stayed:

> The sole interpretation that does not render the word "only"
> superfluous in the Scheduling Order is an interpretation that "only"
> limits they type of discovery stayed—trade secret discovery.  By
> staying "only" trade secret discovery, the Scheduling Order, by
> negative implication, does ***not stay patent-related discovery, which
> is subject to the patent-related dates approved in the prior
> sentence***.

8  *Id.* at 8.  Judge Early also found that, at most, "only four" of the twenty-one

9  document requests at issue arguably seek "*some* of the same categories of

10  information" relevant to Plaintiffs' trade secrets.  Dkt. 54 at 8.[4]

11  **D.    Apple Withholds Core Technical Documents**

12          Despite Judge Early's ruling, Apple failed to produce its technical

13  documents, including the "core technical documents" due on June 15, 2020,

14  under this Court's Scheduling Order.  Dkt. 33 at 26.  In response to Plaintiffs' *ex*

15  *parte* application to enforce the schedule, Apple argued it did not have to

16  comply because the Court had not yet issued a protective order addressing

17  confidentiality.  Dkt. 56 at 3, 7-9.  Importantly, Apple expressly stated that

18  Section 2019.210 "is not a basis on which Apple relies" for withholding core

19  technical documents.  Dkt. 56 at 7 n.2.  On June 23, 2020, this Court denied

20  Plaintiffs' *ex parte* application without prejudice, ordering the parties to submit

21  their protective order disputes to Judge Early by June 27.  Dkt. 56 at 2.  The

22  parties did so on June 26.  *See* Dkt. 61.

23  / / /

24  / / /

25

---

26  [4] Judge Early also admonished Apple for filing an improperly argumentative

27  Notice of Motion.  Dkt. 54 at 1 n.1.  Despite that admonishment, Apple filed

28  another argumentative notice with the present Motion.  Dkt. 57.

**Exhibit 18
-267-**

1  **E.      Apple Rejects Plaintiffs' Many Attempts to Resolve These Issues**

2          Plaintiffs have repeatedly offered a reciprocal approach in which *both*

3  parties agree to provide confidential information (including Plaintiffs' Section

4  2019.210 statement) pursuant to an agreement to keep the information

5  "Attorneys Eyes Only."  *See, e.g.*, Larson Decl., ¶ 3 & Ex. 5 at 69 ("Plaintiffs

6  simply asked for reciprocal treatment of confidential information – that both

7  parties produce confidential information and treat such information as attorneys'

8  eyes only pending entry of a protective order."); Ex. 6 at 78 (asking Apple

9  whether it would agree "all parties or no party should produce confidential

10  information prior to entry of a protective order").  Apple refused, arguing

11  Plaintiffs' Section 2019.210 statement describing Plaintiffs' trade secrets is

12  somehow less deserving of protection than Apple's confidential documents.  *Id.*,

13  Ex. 7 at 80.  Apple even declined Plaintiffs' offer to provide a 2019.210

14  statement on the *same day* that Apple provides its core technical documents and

15  other technical discovery.  *See id*. ¶ 3; *see also* Dkt. 56 at 9 (acknowledging

16  Plaintiffs made such an offer).

17  **F.      The Court Resolves Apple's Motion to Dismiss**

18          Apple moved to dismiss Plaintiffs' trade secret claim by arguing (1) the

19  claim was barred by the statute of limitations, (2) Plaintiffs did not describe

20  their trade secrets with sufficiency particularity, and (3) Plaintiffs did not

21  adequately plead misappropriation.  Dkt. 38-1.  On June 25, 2020, the Court

22  rejected Apple's statute of limitations argument because Plaintiffs had no

23  "reason to suspect that a trade secret had already been misappropriated" in 2014

24  or 2016.  Dkt. 60 at 6.  The Court also credited Plaintiffs' allegation that Apple

25  deliberately hid its misappropriation by "request[ing] non-publication of various

26  patent applications containing Plaintiffs' trade secrets."  *Id.*  However, the Court

27  required Plaintiffs to describe their trade secrets in more detail within 30 days.

28  *Id.* at 8.  Plaintiffs will do so.

-6-

**Exhibit 18**
**-268-**

### III. ARGUMENT

**A.    This Court Rejected Apple's Attempt to Stay Patent Discovery**

Apple fails to show any error in Judge Early's decision rejecting Apple's attempt to circumvent this Court's Scheduling Order.   As Judge Early recognized, this Court already rejected Apple's argument that patent deadlines should be "subject to Plaintiffs providing an adequate identification of their alleged trade secrets in compliance with Section 2019.210 . . .."  Dkt. 33 (Rule 26 Report) at 26, n.6.  This Court held: "The Court ***adopts the patent specific dates***. The Court stays the ***trade secret discovery only*** pending compliance with 2019.210."  Dkt. 37.   The proper procedure for challenging that Scheduling Order would have been a motion for reconsideration.  Instead, Apple improperly sought a contrary ruling from Judge Early.

As Judge Early held, the plain language of the Scheduling Order "does not stay patent-related discovery, which is subject to the patent-related dates approved in the prior sentence."  Dkt. 54 at 7.  Apple makes no attempt to show error in Judge Early's analysis that Apple's interpretation would render the word "only" superfluous.  As Judge Early explained,

> Courts should avoid interpretations that render a term superfluous. See A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012) ("If possible, every word and every provision is to be given effect (verba cum effectu sunt accipienda)" (footnote omitted), noting that "[s]ometimes lawyers will seek to have a crucially important word ignored, such as only, solely, or exclusively . . ."). The sole interpretation that does not render the word "only" superfluous in the Scheduling Order is an interpretation that "only" limits they type of discovery stayed—trade secret discovery.  By staying "only" trade secret discovery, the Scheduling Order, by negative implication, does not stay patent-related discovery, which is subject to the patent-related dates approved in the prior sentence.

Dkt. 54 at 8.  Judge Early's decision makes sense, particularly in view of the overall Scheduling Order.   Apple asked the Court to stay ***patent-specific***

-7-

**Exhibit 18**
**-269-**

1    *deadlines* pending Plaintiffs providing an "adequate" Section 2019.210

2    disclosure.  Dkt. 33 at 26, n.6.  This Court rejected that argument.  Dkt. 37.  As

3    Judge Early explained, "Judge Selna adopted 'the patent specific dates'

4    presented by the parties in the Joint Report, and then, ***one sentence later***, stayed

5    'the trade secret discovery only pending compliance with 2019.210.'"  Dkt. 54

6    at 7 (quoting Dkt. 37).  By adopting the patent specific dates and using the word

7    "only," the Court made clear it was ***not*** adopting Apple's position.

8         The Scheduling Order thus struck a balance between requiring a Section

9    2019.210 disclosure for the trade secret case and ensuring the patent case would

10   go forward unimpeded.  Indeed, if the Scheduling Order were interpreted to ban

11   some or all patent discovery while the parties disputed the adequacy of

12   Plaintiffs' Section 2019.210 disclosure, it would be impossible for the parties to

13   comply with the "patent specific dates" in the Scheduling Order.  *See* Dkt. 37.

14   Courts routinely refuse to interpret Section 2019.210 in that manner.  *See, e.g.*,

15   *Loop AI Labs Inc. v. Gatti*, No. 15-CV-00798-HSG, 2015 WL 9269758, at *4

16   (N.D. Cal. Dec. 21, 2015) (finding Section 2019.210 disclosure insufficient, but

17   holding discovery on non-trade secret claims must go forward); *ScaleMP, Inc. v.*

18   *TidalScale, Inc.*, No. 18-CV-4716 EDL, Dkt. 52 (N.D. Cal. Mar. 15, 2019) (Ex.

19   8) at 7-9 (same).  Judge Early did not err in confirming the plain language of

20   this Court's Scheduling Order.

21   **B.**    <u>**Apple Fails To Show Error in Judge Early's Order**</u>

22        Rather than address the central holding of Judge Early's Order—that this

23   Court already resolved this issue—Apple argues (1) that Judge Early's Order is

24   inconsistent with the plain language of Section 2019.210 and (2) that Judge

25   Early's Order is inconsistent with the purpose of Section 2019.210.  Neither

26   argument shows Judge Early's decision is "clearly erroneous or is contrary to

27   law," as required by Rule 72(a).

28   / / /

Exhibit 18
-270-

**1.   None of Apple's Textual Arguments Establish Error**

Apple argues Judge Early's Order contradicts the plain language of Section 2019.210.  Dkt. 57-1 at 6.  As discussed above, however, Judge Early correctly interpreted this Court's Scheduling Order, which already rejected Apple's argument.  Because Apple fails to show any error in that holding, its objections should be overruled for that reason alone.  Apple's real disagreement is not with Judge Early's decision, but ***this Court's*** Scheduling Order.  But Apple never sought reconsideration of that Order.  Apple may ***not*** do so by seeking a contrary discovery ruling from Judge Early.

Regardless, Apple's arguments lack merit.  Section 2019.210 states: "In any action alleging the misappropriation of a trade secret under the [CUTSA], before commencing discovery ***relating to the trade secret***, the party alleging the misappropriation shall identify the trade secret with reasonable particularity." Dkt. 57-1 at 7 (emphasis in original).  According to Apple, "relating to" means ***all*** discovery as to ***all*** causes of action in Federal court is barred if the discovery is ***also*** relevant in any way to trade secrets.  *Id.*  Apple is incorrect.

The California Court of Appeals has interpreted "relating to" in Section 2019.210 as barring discovery on "any ***cause of action*** which relates to the trade secret."  *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 830 (2005).  Specifically, Section 2019.210 bars discovery of other claims that "***hinge[] upon*** the factual allegations that [defendant] misappropriated [plaintiff's] trade secrets."  *Id.* at 835.  For example, the statute bars contract discovery if the only alleged breach was for disclosing trade secrets.  *Id.*; *see also Perlan Therapeutics, Inc. v. Sup. Court*, 178 Cal. App. 4th 1333, 1337 n.2 (2009) (noting discovery may proceed on "claims not dependent upon proof of [plaintiff's] claim under the Uniform Trade Secrets Act").

Thus, numerous courts refuse to stay patent discovery even where the discovery could ***also*** be relevant to trade secrets.  Indeed, in *ScaleMP, Inc. v.*

-9-

**Exhibit 18**
**-271-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 291 of 300   Page ID
#:12356
Case 8:20-cv-00048-JVS-JDE   Document 64   Filed 06/29/20   Page 14 of 23   Page ID #:5158

1    *TidalScale, Inc.*, No. 18-CV-4716 EDL, Dkt. 52 (N.D. Cal. Mar. 15, 2019) (Ex.

2    8), the defendant made the identical argument Apple makes here: that it should

3    not have to produce technical documents related to patent infringement before

4    the plaintiff fully complies with Section 2019.210.  *Id.* at 90.  The court rejected

5    that argument, explaining:

6        While Plaintiff's patent infringement claim is ***related to*** its trade

7        secret misappropriation claim in the sense that the alleged
         misappropriation led to Defendant's development of infringing

8        technology, the patent infringement claim does not "hinge" on the
         misappropriation allegation.  ***Plaintiff's ability to succeed on the***

9        ***infringement claim is independent of the viability of its***

10       ***misappropriation claim.***  Thus, the statutory language does not
         require a postponement of patent-related disclosures in this case,

11       even while Plaintiff revises its trade secret disclosures.

12

13   *Id.* at 91.

14       Similarly, in *Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL

15   3007078, *4 (N.D. Cal. July 14, 2017), the court refused to stay patent

16   discovery that also related to trade secrets.  Similar to this Court's Scheduling

17   Order, the court in *Space Data* had "stayed trade secret discovery pending Space

18   Data's identification of its trade secrets."  *Id.*  Like Apple, the defendant argued

19   it should not have to produce technical documents relevant to patent

20   infringement until after the plaintiff identified its trade secrets.  *Id.*  The court

21   rejected that argument because "the patent infringement claims asserted in this

22   case are substantive and separate from the trade secret claims."  *Id.*

23       Likewise, in *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-

24   CV-03428-LHK, Dkt. 72 (N.D. Cal. Mar. 24, 2011) (Ex. 16), the court held

25   discovery "***unique*** to Plaintiffs' claims of trade secret misappropriation" could

26   not proceed, but "[a]ll other discovery shall commence now, including

27   discovery of source code relevant to the copyright and patent infringement

28   claims."  *Id.* at 169.

-10-

Exhibit 18
-272-

1       Yet, again, in *Bryant*, 2007 WL 5430888, *3 n.3, the defendant argued

2  that "discovery of drawings and designs for unreleased products is barred unless

3  and until [plaintiff] complies with California Code of Civil Procedure section

4  2019.210."  *Id.*  The Court rejected that argument because "[d]rawings and

5  designs for unreleased products are relevant to claims other than the trade secret

6  misappropriation claim, such as [plaintiff]'s claim for copyright infringement."

7  *Id.*  Numerous additional cases refuse to stay discovery on claims that do not

8  hinge on allegations of trade secret misappropriation.  *See, e.g.*, *Monolithic*

9  *Power Sys., Inc. v. Silergy Corp.*, No. 14-CV-01745-VC, 2015 WL 5948159, at

10  *4 (N.D. Cal. Oct. 14, 2015) (refusing to limit discovery relevant to the contract

11  claim because "Defendants have not shown that this claim is based on an

12  allegation that [] Defendants disclosed or misused [Plaintiff's] trade secrets");

13  *Loop AI*, 2015 WL 9269758, at *4 (holding that discovery must move forward

14  on sixteen claims that are "not based on any allegations of misappropriation of

15  trade secrets").[5]

16       Apple ignores the above authority and, instead, relies on a single case

17  from Judge Early.  Dkt. 57-1 at 7 (citing *M/A-COM Tech. Sols., Inc. v.*

18  *Litrinium, Inc.*, No. 19-CV-00220-JVS, 2019 WL 4284523, at *5 (C.D. Cal.

19  June 11, 2019)).  But Apple omits that the only non-trade secret claim in *M/A-*

20  *COM* was a **contract** claim that was based on the **same** allegations as the trade

21  secret claim.  *See* Ex. 9 at 103 (*M/A-COM* complaint alleging breach of an

22  "obligation to keep such information confidential").  Thus, *M/A-COM* properly

23  applied Section 2019.210 to a contract claim that "hinge[ed] upon the factual

24

---

25  [5] Apple previously attempted to distinguish Plaintiffs' authorities because the

26  plaintiffs had provided a Section 2019.210 disclosure the court found inadequate.  Dkt. 46 at 3.  But those cases still permitted discovery on non-trade

27  secret claims even where the discovery may have been relevant to trade secrets.

28  That the plaintiff tried and failed to satisfy Section 2019.210 was irrelevant.

Exhibit 18
-273-

1  allegations that [defendant] misappropriated [plaintiff's] trade secrets."  *See*

2  *Advanced Modular*, 132 Cal. App. 4th at 835.[6]

3        Apple itself acknowledged the correct standard in the very Rule 37-1

4  letter giving rise to this dispute.  There, Apple relied on *Advanced Modular* and

5  another case to argue "Section 2019.210 applies not only to claims alleged

6  directly under California's Uniform Trade Secrets Act, but also to those 'claims

7  [that] are ***factually dependent*** on the same misappropriation allegations.'"  Ex.

8  10 at 107 (quoting *CBS Broad. Inc. v. Am. Broad. Companies, Inc.*, No. 12-CV-

9  4073-GAF, 2012 WL 13013028, at \*2 (C.D. Cal. June 26, 2012)).

10        Apple claims Plaintiffs "concede" their patent claims are "factually

11  dependent on the same [trade secret] misappropriation allegations."  Dkt. 57-1 at

12  2, 7.  As support, Apple quotes ***its own argument from its own email***.  Lerner

13  Decl., Ex. I at 206.  Plaintiffs never suggested the patent allegations were

14  "factually dependent" on trade secret misappropriation.  To the contrary,

15  Plaintiffs repeatedly asked Apple to identify non-trade secret claims that are

16  "factually dependent" on the misappropriation allegations, and Apple refused to

17  do so.  Ex. 11 at 109.  Upon realizing that the correct standard required patent

18  discovery to proceed, Apple adopted the erroneous position it asserts here.  *Id*.

19  Apple's textual arguments establish no error in Judge Early's decision.

20        **2.**     <u>**None of Apple's Policy Arguments Establish Error**</u>

21        Unable to establish Judge Early's decision is contrary to ***law***, Apple

22  argues that Judge Early's Order is inconsistent with Apple's characterizations of

23

24  _____

25  [6] Apple argues, in a footnote, that discovery on claims that do not "hinge" upon

26  trade secrets, like patent infringement, should nonetheless be stayed if the

27  ***discovery*** "*also* relates to the trade secrets . . . ."  Dkt. 57-1 at 7 n.1. (emphasis in original).  Apple cites no authority to support that argument, which is contrary

28  to the numerous cases cited herein.  *See* Section III.B.1, *supra*.

**Exhibit 18**
**-274-**

1   the "***purpose*** of Section 2019.210."  Dkt. 57-1 at 8.  None of Apple's policy

2   arguments establish error in Judge Early's decision.

3            a.     **Judge Early Correctly Rejected Apple's Request to**

4                  **Rewrite the Scheduling Order**

5       First, Apple asserts that "when reading two sources of law, a court must

6   read both to give effect to each [if the court] can do so while preserving their

7   sense and purpose."  Dkt. 57-1 at 8.  Apple then argues that Judge Early should

8   have "interpreted" the Scheduling Order consistent with ***Apple's*** view of

9   Section 2019.210.  *Id.*  In particular, Apple argues "Judge Early should have

10  read the Scheduling Order in a manner consistent with Section 2019.210, which

11  is to say he should have concluded that the stay applies to trade secret-***related***

12  discovery only."  *Id.* (emphasis in original).  But that rewrites the Scheduling

13  Order.  Judge Early did not err in crediting the plain language of the Scheduling

14  Order over Apple's vague policy arguments.

15      Apple also claims Judge Early failed to consider the "context of Section

16  of 2019.210."  *Id.* at 8 (citing Scalia & Gardner).  But Judge Early is familiar

17  with Section 2019.210 and dedicated an ***entire section*** of his order to discussing

18  that provision.  Dkt. 54 at 5-6.  Judge Early confirmed that Apple was not

19  permitted to circumvent this Court's Scheduling Order, which is entirely

20  consistent with Section 2019.210 and the numerous cases interpreting that

21  provision.  Judge Early even explained why Apple's own authority supports his

22  decision.   Dkt. 54 at 8 (citing Scalia & Garner for the principle that "Courts

23  should avoid interpretations that render a term superfluous.").

24            b.     **Judge Early's Decision Does Not Open the Door For**

25                  **Plaintiffs to Claim Apple's "Innovations" as Their Own**

26      Second, Apple argues Judge Early's decision "open[s] the door" for

27  Plaintiffs to access Apple's confidential information and "claim Apple's hard

28  work and innovative confidential information as Plaintiffs' own."  Dkt. 57-1 at

-13-

**Exhibit 18**
**-275-**

2, 10.  Again, Apple's real dispute is with this Court's Scheduling Order, which rejected Apple's arguments.  Regardless, Apple's argument makes no sense because Plaintiffs still have to prove ownership and misappropriation of the asserted trade secrets.  Other courts have rejected attempts to use similar policy arguments to justify expansive views of Section 2019.210.  *See ScaleMP* (Ex. 8) at 91-92 (rejecting the policy argument that all technical discovery should be barred to prevent a plaintiff from using technical documents relevant to the patent case "to obtain Defendant's trade secrets").

Moreover, Apple's parade of horribles ignores that Plaintiffs have repeatedly proposed that both parties produce confidential information pursuant to an agreement to keep it "Attorneys Eyes Only."  *See, e.g.*, Larson Decl., ¶ 3 & Ex. 5 at 69; Ex. 6 at 78; Ex. 7 at 80.  Plaintiffs have even offered to provide their 2019.210 statement on the ***same day*** Apple provides its core technical documents and other confidential discovery.  Tellingly, Apple has not entertained that mutual exchange.  Plaintiffs will also be providing more detail in an amended complaint pursuant to this Court's June 25 Order.  *See* Dkt. 60 at 8.  Thus, nothing supports Apple's accusations about Plaintiffs' supposed desire to use Apple's confidential documents to prepare their 2019.210 disclosure.

In reality, Apple seeks to delay all patent discovery for months while it litigates the ***sufficiency*** of Plaintiffs' Section 2019.210 statement.  *See* Dkt. 43-1 at 20 (Apple arguing in a "typical case," the plaintiff "serves a Section 2019.210 disclosure and the parties litigate the deficiencies").  Indeed, before even seeing Plaintiffs' second amended complaint, Apple has signaled that it intends to file ***another*** motion to dismiss.  *See* Ex. 12 at 119 (Apple's proposed stipulation providing the parties will "meet and confer on a schedule for Defendant's response to the [Second Amended Complaint], including any motion to dismiss").  Apple's efforts to delay patent discovery while it endlessly litigates Plaintiffs' description of trade secrets would gut this Court's Scheduling Order

-14-

**Exhibit 18**
**-276-**

1  and contradict the Federal policy of ensuring the "just, speedy, and inexpensive

2  determination of every action and proceeding." Fed. R. Civ. P. 1. Indeed, there

3  is no conceivable interpretation of *Erie* that permits a defendant in Federal court

4  to substantially delay all discovery on Federal claims based on a state procedure

5  applying solely to state claims.

6      Apple cites *Comput. Econs., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d

7  980 (S.D. Cal. 1999), but that case explained the purpose of Section 2019.210 is

8  to prevent plaintiffs from "driving a competitor out of business" by serving

9  "extensive discovery which the new business is ill equipped to afford." *Id.* at

10  985 n.6. There is no risk that Plaintiffs—who are miniscule compared to

11  Apple—could drive Apple ***out of business*** by serving discovery requests.

12      Apple cites other cases, but none analyze the scope of discovery in a

13  trade-secret case including patent infringement claims. Dkt. 57-1 at 9 (citing

14  *Swarmify*, *Comput. Econs.*, *Jobscience*, and *M/A-COM*). *Jobscience* actually

15  ordered the defendant to produce ***source code*** before the plaintiff served a

16  Section 2019.210 statement. Ex. 13 at 142-143, 150-151 (22:7-23:24, 30:19-

17  31:7); *see also Jobscience, Inc. v. CV Partners,* No. 13-04519-WHA, 2014 WL

18  852477 at *6 (N.D. Cal. Feb. 28, 2014) ("This order need not address the

19  inspection and discovery problems concerning the source code ordered at the

20  hearing orally."). *Swarmfly, Inc. v. Cloudfare, Inc.,* No. 17-06957-WHA, 2018

21  WL 2445515 at *3 (N.D. Cal. May 31, 2018) allowed plaintiff to amend its

22  Section 2019.210 statement ***after*** receiving discovery. *Comput. Econs* and *M/A-

23  COM* do not support Apple's argument for the reasons discussed above.

24      In a misguided attempt to show Plaintiffs are trying to use Apple's

25  documents to draft their Section 2019.210 statement, Apple claims Plaintiffs

26  "abuse[d] the discovery process" by serving a third-party subpoena on Apple in

27  *Masimo Corp. et al. v. True Wearables Inc. et al.*, No. 8:18-cv-02001-JVS-JDE

28  ("*True Wearables*"). Dkt. 57-1 at 10. But Apple admitted it has information

-15-

**Exhibit 18 -277-**

1  relevant to *True Wearables* by arguing the allegations in both cases were

2  "nearly identical."   Dkt. 14 (Apple's Notice of Related Cases).   Apple

3  speculates about the timing of Plaintiffs' subpoena, but that was dictated by the

4  approaching close of fact discovery.   Once the Court extended the deadline,

5  Plaintiffs withdrew the subpoena to avoid burdening the courts.   Apple's vivid

6  imagination is inconsistent with the actual facts surrounding the subpoena.

7       Apple similarly misstates the record in pointing to Plaintiffs questions

8  regarding "Apple's unpublished patent applications . . .."   Dkt. 57-1 at 11.

9  Plaintiffs were merely attempting to ascertain whether there was a risk that

10  Apple's unpublished applications could disclose Plaintiffs trade secrets.   When

11  Apple complained about producing its applications, Plaintiffs asked Apple if it

12  had any unpublished applications that (1) concern physiological monitoring, (2)

13  named Plaintiffs' former employees as inventors, and (3) contained information

14  not previously published.   Ex. 14 at 157.   Apple refused to answer that simple

15  "yes" or "no" question, even though it would ***not*** require revealing confidential

16  information.   Plaintiffs have not yet moved for a preliminary injunction because

17  they are trying to avoid unnecessarily burdening the Court if there is no actual

18  dispute.   Unfortunately, Plaintiffs may need to file such a motion because Apple

19  refuses to provide basic information that may show the parties have no dispute.

20       c.   **Judge Early's Decision Does Not Frustrate This Court's**

21            **Ability to Frame the Appropriate Scope of Discovery**

22       Third, Apple argues the Order "frustrates the Court's ability to frame the

23  appropriate scope of trade secret discovery. . .."   Dkt. 57-1 at 11.   Apple claims

24  "without an adequate Section 2019.210 disclosure, Apple has no way to

25  determine which of Plaintiffs' discovery requests relate 'solely' to their trade

26  secret claims and are untimely."   *Id.* at 11-12.   That makes no sense.   The scope

27  of discovery is clear—discovery that would ordinarily be available in a patent

28  infringement case.   The Court can, and Judge Early did, easily make that

-16-

Exhibit 18
-278-

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 298 of 300   Page ID
#:12363
Case 8:20-cv-00048-JVS-JDE   Document 64   Filed 06/29/20   Page 21 of 23   Page ID #:5165

1   determination without knowing if the information is ***also*** relevant to an entirely

2   separate trade secret claim.   Indeed, the parties would have to make that

3   determination even if Plaintiffs did not allege misappropriation of trade secrets

4   in this case.  In contrast, Apple's rule would muddy the scope of discovery by

5   forcing the parties to determine whether information is related ***only*** to patents.

6           **d.    Judge Early's Decision Does Not Render Section**

7                **2019.210 Meaningless**

8           Fourth, Apple argues the Order renders Section 2019.210 "meaningless"

9   because Plaintiffs can "take any discovery they wish" merely by "claiming that

10   the discovery relates to another claim, like patent infringement . . .."  Dkt. 57-1

11   at 7.   But patent discovery will not be dictated by whether Plaintiffs' "claim"

12   discovery relates to patent issues.   Judge Early reviewed the ***actual*** document

13   requests at issue and found, at most, "only four" of the twenty-one requests at

14   issue arguably sought "***some*** of the same categories of information" relevant to

15   Plaintiffs' trade secrets.  Dkt. 54 at 8.   That factual finding is well supported.

16   *See* Section II.A, *supra*.

17           Apple argues RFP 12 and Plaintiffs' description of their trade secrets both

18   reference similar ***types*** of technical documents.   *Id*. (e.g., technical drawings,

19   technical diagrams, and engineering specifications and schematics).   It is not

20   surprising that Plaintiffs' technical documents contain their trade secrets and

21   Apple's technical documents are relevant to patent infringement.  That does not

22   show Plaintiffs are seeking trade secret discovery through their RFPs.   Indeed,

23   RFP 12—like most other RFPs at issue—is specifically directed to "the

24   Accused Products" (i.e., infringing products).

25           Thus, Plaintiffs' RFPs are quintessential patent requests.  *See* Section II.A

26   *supra.*   By contrast, trade secret RFPs would seek, for example, information

27   about Apple's employment of Plaintiffs' former employees, whether and how

28   those former employees provided Plaintiffs' confidential information to Apple,

-17-

**Exhibit 18**
**-279-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 299 of 300   Page ID
#:12364
Case 8:20-cv-00048-JVS-JDE   Document 64   Filed 06/29/20   Page 22 of 23   Page ID #:5166

1   communications with those former employees, and other trade secret

2   information.  Plaintiffs will serve such RFPs after providing the confidential

3   Section 2019.210 disclosure.  None of Apple's "policy" arguments support

4   ignoring the clear language of the Scheduling Order, which is consistent with

5   how courts throughout California interpret Section 2019.210.

6   **C.      Apple's Requested Relief Far Exceeds Section 2019.210**

7          The Court should also affirm Judge Early's decision because Apple

8   requested relief that far exceeds the scope of Section 2019.210.  Apple initially

9   made this overly broad demand in its portion of the Rule 26(f) Report,

10  requesting that the Court order Plaintiffs to provide a statement that contained a

11  (1) summary of the alleged trade secret, (2) the background of the trade secret,

12  (3) contentions regarding economic value, (4) contentions regarding efforts to

13  maintain secrecy, ***and*** (5) format the disclosure as a list of specific elements "as

14  claims would appear at the end of a patent."  Dkt. 33 at 20.  The Court rejected

15  Apple's request.  *See* Dkt. 37 (requiring only "compliance with 2019.210").

16         Unsatisfied with this Court's Order, Apple's Motion for Protective Order

17  asked Judge Early for the ***identical*** relief this Court denied.  Dkt. 43-1 at 28.

18  Apple appeared to acknowledge it was asking for ***more*** than mere compliance

19  with Section 2019.210.  *See id*. (requesting an order requiring Plaintiffs to "[1]

20  identify their alleged trade secrets with the reasonable particularity Section

21  2019.210 requires; ***and*** [2] order Plaintiffs to serve on counsel a statement,

22  under seal, that includes [the additional requirements]."  Judge Early properly

23  denied Apple's request.  Dkt. 57.

24         Apple also requested Plaintiffs provide a Section 2019.210 statement by a

25  date certain.  Dkt. 43-5.  That request is inconsistent with the statute, this

26  Court's order, and Apple's own admissions.  Section 2019.210 requires a

27  plaintiff to identify its trade secrets "before commencing discovery" on the trade

28  secret claim.  Even though the legislature originally proposed requiring

-18-

**Exhibit 18
-280-**

Case 8:20-cv-00048-JVS-JDE   Document 169-4   Filed 09/01/20   Page 300 of 300   Page ID
#:12365
Case 8:20-cv-00048-JVS-JDE   Document 64   Filed 06/29/20   Page 23 of 23   Page ID #:5167

1  disclosure within 30-days of filing suit (Ex. 15 at 163), the statute contains no

2  such requirement.  Consistent with the statute, this Court "*stayed* trade secret

3  discovery only" until Plaintiffs provided a disclosure.  Dkt. 37.  During an April

4  27 meet and confer, Apple admitted Section 2019.210 does ***not*** require

5  disclosure by a date certain and volunteered that Plaintiffs could choose to never

6  serve a Section 2019.210 disclosure if they chose not to pursue trade secret

7  discovery.   Larson Decl. ¶ 2.   Thus, Judge Early properly denied Apple's

8  request for a date certain.  Dkt. 57.  Apple identifies no error in that decision.

9       Finally, Apple may not—through these objections or otherwise—

10  withhold the "core technical documents" required by this Court's Scheduling

11  Order.  Apple sought no such relief from Judge Early and, as discussed above,

12  Apple specifically represented to this Court that it is not relying on Section

13  2019.210 as a basis for withholding such documents.  Dkt. 56 at 7 n.2 (Section

14  2019.210 "is not a basis on which Apple relies" for withholding core technical

15  documents under the Court's Scheduling Order); *see* Section II.D, *supra*.

### IV.  CONCLUSION

17       For the reasons discussed above, the Court should overrule Apple's

18  objections and order Apple to produce the documents requested by RFPs 5-25.

19

20                              Respectfully submitted,

21                              KNOBBE, MARTENS, OLSON & BEAR, LLP

22
      Dated:  June 29, 2020            By: */s/ Stephen W. Larson*
23                                         Joseph R. Re
                                           Stephen C. Jensen
24                                         Perry D. Oldham
                                           Stephen W. Larson
25                                         Adam B. Powell

26                                         Attorneys for Plaintiffs,
                                           Masimo Corporation and
27                                         Cercacor Laboratories

28

                                   -19-

**Exhibit 18
-281-**