Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404 Facsimile: (949) 760-9502

Adam B. Powell (Bar No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000 Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO DISMISS THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date:      October 5, 2020<br>Time:     1:30 p.m.<br>Ctrm:    10C<br>Judge:   Hon. James V. Selna |

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS .................................................................. 1

      A.   The Allegations In The Second Amended Complaint .................... 1

      B.   Procedural History ........................................................................ 2

III.  ARGUMENT ...................................................................................... 3

      A.   Plaintiffs Identified Their Trade Secrets In Detail ........................ 4

           1.   Apple's Criticisms of Plaintiffs' Descriptions Lack
                Merit .................................................................................. 5

                a.   Plaintiffs' Technical Trade Secrets .......................... 5

                b.   Business and Marketing Plans and
                     Strategies ................................................................. 9

                c.   Strategies For Interacting With Hospitals ............... 12

           2.   Plaintiffs' Identification Of Documents Further
                Describes Plaintiffs' Trade Secrets .................................... 14

           3.   Plaintiffs Are Not Required To Identify Precisely
                How Apple Used Plaintiffs' Trade Secrets ......................... 16

      B.   Plaintiffs Plausibly Allege Misappropriation ............................... 18

           1.   Plaintiffs Allege Improper Acquisition ............................. 18

                a.   The SAC Sufficiently Alleges Apple's
                     Knowledge ............................................................... 18

                b.   The SAC Sufficiently Alleges Inducement ............. 20

           2.   Plaintiffs Allege Improper Use And Disclosure ................ 22

                a.   The SAC Sufficiently Alleges Apple Is
                     Directly Liable .......................................................... 22

                b.   The SAC Sufficiently Alleges Apple Is
                     Liable Under The Doctrine Of Respondeat
                     Superior .................................................................... 23

      C.   Denying Leave to Amend Would Be Improper ............................. 25

IV.    CONCLUSION .........................................................................................25

# TABLE OF AUTHORITIES

**Page No(s).**

*Abba Rubber Co. v. Seaquist*,
  235 Cal. App. 3d 1 (Cal. Ct. App. 1991)...............................................10, 11

*Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs.*,
  2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) ..........................................4, 8

*Allen v. Beverly Hills*,
  911 F.2d 367 (9th Cir. 1990).......................................................................25

*AlterG, Inc. v. Boost Treadmills LLC*,
  388 F. Supp. 3d 1133 (N.D. Cal. 2019) ................................................11, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................3, 15

*Autodesk, Inc. v. ZWCAD Software Co.*,
  2015 WL 2265479 (N.D. Cal. May 13, 2015) ...................................4, 16, 21

*Basalite Concrete Prod., LLC v. Nat'l Union Fire Ins.
Co. of Pittsburgh*,
  2013 WL 2156582 (E.D. Cal. May 17, 2013)..............................................25

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
  2018 WL 2298500 (N.D. Cal. May 21, 2018) ...............................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................4, 21

*Brescia v. Angelin*,
  172 Cal. App. 4th 133 (2009)..........................................................5, 10, 13

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
  2011 WL 1044899 (N.D. Cal. Mar. 23, 2011).....................................7, 9, 21

*Calendar Research LLC v. StubHub, Inc.*,
  2017 WL 10378336 (C.D. Cal. Aug. 16, 2017)....................................20, 21

*Calsoft Labs, Inc. v. Panchumarthi*,
  2020 WL 512123 (N.D. Cal. Jan. 31, 2020) ..............................................8, 9

*Carr v. AutoNation, Inc.*,
  2018 WL 288018 (E.D. Cal. Jan. 4, 2018).................................................19

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*,
  2018 WL 2558388 (C.D. Cal. Feb. 27, 2018)............................................4, 7

**TABLE OF AUTHORITIES**
*(Cont'd)*

Page No(s).

*CleanFish, LLC v. Sims,*
   2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) ........................................ 8, 19

*Courtesy Temp. Serv., Inc. v. Camacho,*
   222 Cal. App. 3d 1278 (Cal. Ct. App. 1990) .......................................... 9, 12

*Duncan v. Stuetzle,*
   76 F.3d 1480 (9th Cir. 1996) .................................................................. 9, 12

*Emazing Lights LLC v. De Oca,*
   2016 WL 3658945 (C.D. Cal. Jan. 7, 2016) ........................................... 8, 13

*Erickson v. Pardus,*
   551 U.S. 89 (2007) ....................................................................................... 3

*Extreme Reach, Inc. v. Spotgenie Partners, LLC,*
   2013 WL 12081182 (C.D. Cal. Nov. 22, 2013) ......................................... 24

*Gatan, Inc. v. Nion Co.,*
   2018 WL 2117379 (N.D. Cal. May 8, 2018) ............................................... 5

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.,*
   2016 WL 6601656 (C.D. Cal. July 25, 2016) ............................................ 25

*Glob. Med. Techs., Inc. v. Jackson,*
   2006 WL 3735581 (Cal. Ct. App. Dec. 20, 2006) ..................................... 11

*Imi-Tech Corp. v. Gagliani,*
   691 F. Supp. 214 (S.D. Cal. 1986) ...................................................... 10, 11

*Kavanagh v. Tuller,*
   2017 WL 1496436 (S.D. Cal. Apr. 26, 2017) ............................................ 10

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau,*
   701 F.2d 1276 (9th Cir. 1983) ................................................................... 25

*Language Line Servs., Inc. v. Language Servs. Assocs., LLC,*
   2010 WL 2764714 (N.D. Cal. July 13, 2010) ....................................... 23, 24

*Lilith Games Co. v. uCool, Inc.,*
   2015 WL 4128484 (N.D. Cal. July 8, 2015) .............................................. 19

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.,*
   2019 WL 4284523 (C.D. Cal. June 11, 2019) ............................................. 5

1

## TABLE OF AUTHORITIES
### (*Cont'd*)

2

3

**Page No(s).**

4

*MedioStream, Inc. v. Microsoft Corp.*,
5
  869 F. Supp. 2d 1095 (N.D. Cal. 2012) .................................................. 19, 23

6

*Medtronic MiniMed, Inc. v. Nova Biomed. Corp.*,
  2009 WL 10672947 (C.D. Cal. Aug. 14, 2009) ........................................... 11

7

*Menard v. CSX Transp., Inc.*,
8
  698 F.3d 40 (1st Cir. 2012) ......................................................................... 21

9

*Metricolor LLC v. L'oreal S.A.*,
  2020 WL 3802942 (C.D. Cal. July 7, 2020) ......................................... 16, 21

10

11
*New Show Studios LLC v. Needle*,
  2014 WL 2988271 (C.D. Cal. June 30, 2014) ..................................... 7, 9, 12

12

*Nextdoor.Com, Inc. v. Abhyanker*,
13
  2013 WL 3802526 (N.D. Cal. July 19, 2013) .............................................. 21

14
*Nordstrom v. Ryan*,
  762 F.3d 903 (9th Cir. 2014) ......................................................................... 3

15

*Pellerin v. Honeywell International, Inc.*,
16
  877 F. Supp. 2d 983 (S.D. Cal. 2012) ................................................... 18, 19

17
*Prolifiq Software Inc. v. Veeva Sys. Inc.*,
  2014 WL 2527148 (N.D. Cal. June 4, 2014) ................................... 10, 13, 17

18

19
*Pyro-Comm Sys. Inc. v. W. Coast Fire & Integration Inc.*,
  2015 WL 12765143 (C.D. Cal. Apr. 2, 2015) .............................................. 18

20

*Roadrunner Transportation Servs. v. Tarwater*,
21
  2010 WL 11483986 (C.D. Cal. Dec. 20, 2010) ....................................... 8, 12

22
*Simonyan v. Ally Fin. Inc.*,
  2013 WL 45453 (C.D. Cal. Jan. 3, 2013) .............................................. 22, 23

23

*Space Data Corp. v. X*,
24
  2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) .......................................... 8, 23

25
*Teva Pharm. USA, Inc. v. Health IQ, LLC*,
  2013 WL 12134185 (C.D. Cal. July 2, 2013) ............................................... 7

26

27
*TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*,
  2016 WL 3475322 (C.D. Cal. Jan. 29, 2016) ............................................... 7

28

# TABLE OF AUTHORITIES
### (*Cont'd*)

**Page No(s).**

*TMX Funding, Inc. v. Impero Techs., Inc.*,
  2010 WL 2509979 (N.D. Cal. June 17, 2010) .....................................7, 9, 12

*UAB "Planner 5D" v. Facebook, Inc.*,
  2019 WL 6219223 (N.D. Cal. Nov. 21, 2019)............................................19

*United States v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) ........................................................................13

*Vendavo, Inc. v. Price*
  2018 WL 1456697 (N.D. Cal. Mar. 23, 2018)............................................16

*Veronica Foods Co. v. Ecklin*,
  2017 WL 2806706 (N.D. Cal. June 29, 2017) ............................................13

*Vinyl Interactive, LLC v. Guarino*,
  2009 WL 1228695 (N.D. Cal. May 1, 2009) ....................................16, 17, 21

*Vivendi SA v. T-Mobile USA Inc.*,
  586 F.3d 689 (9th Cir. 2009)........................................................................22

*W.L. Gore & Assocs. v. GI Dynamics, Inc.*,
  2010 WL 5184254 (D. Ariz. Dec. 15, 2010)..................................................9

*Whyte v. Schlage Lock Co.*,
  101 Cal. App. 4th 1443 (2002)...............................................................9, 20

*Zora Analytics, LLC v. Sakhamuri*,
  2013 WL 12124612 (S.D. Cal. June 18, 2013) ...........................................19

## STATUTES

West's Ann. Cal. Civ. Code § 3426.1
  (1984 Legislative Committee Comments) ...................................................10

Cal. Civ. Code §§ 3426.1 ......................................................................10, 18, 22

Marq. Intell. Prop. L. Rev. 1, 54 (2007).........................................................11

# I.  INTRODUCTION

Apple makes two arguments, neither of which has merit.  First, Apple argues the Second Amended Complaint ("SAC") fails to describe "a single trade secret" and instead pleads only "broad categories of information."  That is not true.  In fact, the description of just one of Plaintiffs' trade secrets is nearly a full page long with ***nine*** detailed steps.  Plaintiffs' other trade secrets are also described in substantial detail.

Second, Apple argues that Plaintiffs did not allege misappropriation because Apple supposedly did not "know or have reason to know" the information it used belonged to Plaintiffs.  But the SAC alleges Apple (1) sought out Plaintiffs' technologies during confidential meetings, (2) targeted key employees, including Masimo's Chief Medical Officer and Cercacor's Chief Technical Officer, (3) received a warning letter asking Apple to respect Plaintiffs' trade secrets, (4) obtained complex technical information from Plaintiffs' former employees shortly after they arrived at Apple, (5) filed patent applications on that information, and (6) selectively requested non-publication of patents containing Plaintiffs' trade secrets.  Those allegations are more than sufficient to state a plausible claim.  The Court should deny Apple's Motion.

## II.  STATEMENT OF FACTS

### A.    The Allegations In The Second Amended Complaint

Plaintiff Masimo revolutionized non-invasive patient monitoring, including pulse rate, arterial oxygen saturation, and more.  SAC ¶ 9.  For years, conventional monitoring was plagued by inaccurate measurements, particularly in the presence of patient motion and low peripheral blood flow.  *Id.* ¶ 11.  The industry believed it was impossible to solve these problems, but Masimo did so with its pioneering Masimo Signal Extraction Technology ("Masimo SET").  *Id.*  Masimo then re-invested heavily in new technologies to measure other blood constituents non-invasively, including to identify carbon monoxide poisoning.

-1-

*Id.* ¶ 12.   In 1998, Masimo spun off some of its technologies into a new company, Masimo Laboratories, which later changed its name to Cercacor.  *Id.* ¶ 15.  Masimo and Cercacor continue to operate under a cross-license.  *Id.*

In 2013, Apple approached Masimo to discuss potentially collaborating. *Id.* ¶ 19.  The parties met several times pursuant to a confidentiality agreement. *Id.*  Apple then hired several of Plaintiffs' employees, including Cercacor's Chief Technical Officer (Marcelo Lamego).  *Id.* ¶¶ 20 and 21.  In January 2014, Plaintiffs notified Apple that Lamego possessed Plaintiffs' trade secrets and owed Plaintiffs a duty of confidentiality.  *Id.* ¶ 23.  Plaintiffs asked Apple to "refrain from inducing Mr. Lamego to take actions that would violate [his employment agreement] while he performs services for Apple" and "direct Mr. Lamego to honor his obligations to all of his prior employers."  *Id.*

Unbeknownst to Plaintiffs at the time, Apple quickly started taking disclosures from Lamego to file patents on the very technology he had spent the prior decade developing with Plaintiffs.  *Id.* ¶ 24.  Within a few months of hiring Lamego, Apple had filed numerous patent applications naming Lamego as the inventor.  *Id.* ¶¶ 53-55.  Apple then requested the Patent Office refrain from publishing certain applications, preventing Plaintiffs from learning of Apple's misappropriation until years later.  *Id.* ¶ 238.

Apple released its Apple Watch Series 3 in September 2017, the Series 4 in 2018, and the Series 5 in 2019.  *Id.* ¶ 25.  In this lawsuit, Plaintiffs contend that Apple's Series 3 and later versions infringe Masimo's patents.  Plaintiffs also contend that Apple used Plaintiffs' trade secrets, including by incorporating them into the Series 4 and later versions.  Plaintiffs also seek to correct inventorship and be recognized as the rightful owners of several Apple patents.

**B.    Procedural History**

Plaintiffs filed the initial Complaint on January 9, 2020.  Dkt. 1.  Apple moved to dismiss all causes of action.  Dkt. 16.  Apple claims Plaintiffs

"initially opposed Apple's motion to dismiss (Dkt. 21), but then—just days before the Court's scheduled hearing on Apple's motion—Plaintiffs filed their [FAC]." Dkt. 121 at 2. That mischaracterizes the record. Plaintiffs filed a half-page "opposition" with no substantive argument simply notifying the Court they would amend and render Apple's motion moot. Dkt. 21 at 1.

Plaintiffs filed the First Amended Complaint ("FAC") on March 25. Dkt. 28. Apple again moved to dismiss, but only on the trade secret claims. Dkt. 38-1. On June 25, 2020, the Court rejected Apple's statute of limitations argument because Plaintiffs had no "reason to suspect that a trade secret had already been misappropriated" in 2014 or 2016. Dkt. 60 at 6. The Court credited Plaintiffs' allegation that Apple deliberately hid its misappropriation by "request[ing] non-publication of various patent applications containing Plaintiffs' trade secrets." *Id.* However, the Court required Plaintiffs to describe their trade secrets in more detail within thirty days. *Id.* at 8.

Before Apple had seen the SAC, Apple suggested it may again move to dismiss. Dkt. 68. Plaintiffs filed the SAC on July 24, 2020. Dkt. 89-1. Apple again moved to dismiss the trade secret allegations, arguing Plaintiffs did not adequately (1) describe their trade secrets and (2) plead misappropriation.

### III. <u>ARGUMENT</u>

A complaint need only contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). In deciding a motion to dismiss, "a judge must accept as true all of the factual allegations" contained in the challenged pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). All reasonable inferences must be drawn in the non-moving party's favor. *Nordstrom v. Ryan*, 762 F.3d 903, 906 (9th Cir. 2014). A complaint must plead enough facts to state a plausible claim for relief, but "[t]he plausibility standard is not akin to a 'probability requirement[.]'" *Iqbal*, 556 U.S. at 678. Rather,

1    Rule 8(a) "simply calls for enough fact to raise a reasonable expectation that
2    discovery will reveal evidence" to support the allegations.  *Bell Atl. Corp. v.*
3    *Twombly*, 550 U.S. 544, 556 (2007).  A motion to dismiss should not be granted
4    "unless it appears beyond doubt that the plaintiff can prove no set of facts in
5    support of his claim which would entitle him to relief."  *Id.* at 561.

6    **A.    Plaintiffs Identified Their Trade Secrets In Detail**

7            As Apple's cited authority explains, a plaintiff is not required to "define
8    every minute detail of its claimed trade secret at the outset of the litigation."
9    *Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs.*, 2019 WL 4137618, at
10   *3 (C.D. Cal. Mar. 27, 2019)).  The "level of detail required in trade secret
11   pleadings is ***not*** high."  *Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 2018
12   WL 2558388, at *3 (C.D. Cal. Feb. 27, 2018);[1] *see also Autodesk, Inc. v.*
13   *ZWCAD Software Co.*, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015)
14   (concluding "courts are in general agreement that trade secrets need not be
15   disclosed in detail in a complaint alleging misappropriation").

16          This Court adopted Apple's argument that Plaintiffs must describe their
17   trade secrets with "sufficient particularity."  *See* Dkt. 60 at 7.  Apple has
18   previously argued the "sufficient particularity" standard is lower than the
19   "reasonable particularity" standard of Section 2019.210.  *See* Dkt. 49 at 14.
20   However, Apple's cases rely on precedent interpreting the "reasonable
21   particularity" standard of Section 2019.210.  *See, e.g. Acrisure*, 2019 WL
22   4137618, at *3 (quoting *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1115
23   (N.D. Cal. 2016) (interpreting and analyzing Section 2019.210)).  Apple has
24   never explained the level of detail it contends satisfies a "sufficient

25

26   _____

27   [1] All emphasis is added unless noted otherwise.  All exhibits are attached to the
28   Declaration of Adam B. Powell unless noted otherwise.

particularity" standard and how that standard differs from the "reasonable particularity" Section 2019.210 standard.[2]

Regardless, Plaintiffs' Second Amended Complaint provides enough detail to satisfy even the "reasonable particularity" Section 2019.210 standard. Section 2019.210 requires only a "showing that is reasonable, i.e., fair, proper, just and rational." *Brescia v. Angelin*, 172 Cal. App. 4th 133, 145 (2009) (reversing trial court's decision that plaintiff had not complied with Section 2019.210).   A plaintiff is ***not*** required to describe its trade secrets "with the greatest degree of particularity possible, or to reach such an exacting level of specificity that even its opponents are forced to agree the designation is adequate." *Id.* at 146.  The designation "should be liberally construed, and reasonable doubts about its sufficiency resolved in favor of allowing discovery to go forward." *Id.* 149.  Given the lack of clarity of any difference between the "reasonable particularity" and "sufficient particularity" standards, Plaintiffs added substantial detail to the SAC to more than satisfy both requirements.

### 1.   Apple's Criticisms of Plaintiffs' Descriptions Lack Merit

#### a.   Plaintiffs' Technical Trade Secrets

Apple avoids quoting Plaintiffs' allegations regarding Plaintiffs' first three categories of technical trade secrets.  Instead, Apple argues that Plaintiffs' descriptions are "highly general statement[s] of a technique or strategy," "examples of general categories related to the field," "broad techniques," or lack "any specific detail."  Dkt. 121 at 5-7.  But the SAC is ***nothing*** like Apple's

---

[2] Apple cited two cases, but neither explained any difference in the standards. *See Gatan, Inc. v. Nion Co.*, 2018 WL 2117379, at *2 (N.D. Cal. May 8, 2018) (concluding the standards were different without elaboration); *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 4284523, at *1 (C.D. Cal. June 11, 2019) (citing *Gatan* and concluding the same).

characterizations.  Below are examples of portions of each of the three technical categories that Apple argues are "highly general" or "broad techniques":



1
2
3
4

5 SAC ¶¶ 41, 43, 45.   Plaintiffs also identified specific source code files and
6 documents reflecting those trade secrets.  *Id.* ¶¶ 42, 44, and 46.

7      The SAC is far more detailed than the descriptions that courts routinely
8 find sufficient.  *See, e.g.*, *Cedars Sinai*, 2018 WL 2558388 at *6 ("scientific,
9 technical, economic, and/or engineering information, including patterns, plans,
10 compilations, program devices, formulas, designs, prototypes, methods,
11 techniques, processes, procedures, programs, or codes, tangible and/or
12 intangible" information related to a particular field); *TMC Aerospace, Inc. v.*
13 *Elbit Sys. of Am. LLC*, 2016 WL 3475322, at *5 (C.D. Cal. Jan. 29, 2016)
14 ("proprietary design drawings, manufacturing techniques, and manufacturing
15 equipment including moulds and jigs"); *Teva Pharm. USA, Inc. v. Health IQ,*
16 *LLC*, 2013 WL 12134185, at *3 (C.D. Cal. July 2, 2013) ("[t]he progress and
17 results of ongoing pre-clinical and clinical trials for Teva's Neugranin and
18 Neutroval products"); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2011
19 WL 1044899, at *1 (N.D. Cal. Mar. 23, 2011) ("the design and technology best
20 suited for the products, software code . . . performance capabilities, constraints
21 and challenges for the product, as well as potential product development
22 plans"); *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 WL 2509979, at *3
23 (N.D. Cal. June 17, 2010) ("software, source codes, data, formulas, and other
24 technical information").

25      Apple argues the SAC is insufficient because it uses the word
26 "including."  Dkt. 121 at 5-6.  But courts routinely find descriptions sufficient
27 notwithstanding their use of "including" or "including but not limited to."  *See,*
28 *e.g.*, *Cedars Sinai*, 2018 WL 2558388 at *6; *TMC Aerospace*, 2016 WL

3475322, at *5; *Brocade*, 2011 WL 1044899, at *1; *TMX Funding*, 2010 WL 2509979, at *3; *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *9 (C.D. Cal. June 30, 2014); *Roadrunner Transportation Servs. v. Tarwater*, 2010 WL 11483986, at *4 (C.D. Cal. Dec. 20, 2010)

Apple cites three cases, none of which held that merely using the word "including" renders a description insufficient. *See Acrisure*, 2019 WL 4137618, at *3 (identifying deficiencies without even mentioning the description began with "including but not limited to"); *Emazing Lights LLC v. De Oca*, 2016 WL 3658945, at *2 (C.D. Cal. Jan. 7, 2016) (commenting on the word "including," but primarily criticizing the broad catchall phrase "any other information not publically [sic] and widely known"); *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) (commenting on the word "include," but primarily criticizing the description for referring to broad categories of documents such as "design review templates").

Apple attempts to analogize the SAC to three other cases, but the SAC's *six*-page description of Plaintiffs' trade secrets provides far more detail. *See CleanFish, LLC v. Sims*, 2020 WL 1274991, at *9 (N.D. Cal. Mar. 17, 2020) (rejecting description reciting "detailed customer lists, customer purchasing data, customer sales figures and other related customer purchasing analysis and trends"); *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (rejecting description reciting "data on the environment in the stratosphere" and "data on the propagation of radio signals from stratospheric balloon-based transceivers"); *Calsoft Labs, Inc. v. Panchumarthi*, 2020 WL 512123, at *6 (N.D. Cal. Jan. 31, 2020) (rejecting description of "customer lists and data, employee lists and data and proprietary training data and programs valuable in the field of technology consulting and staffing").

### b.   <u>Business and Marketing Plans and Strategies</u>

The SAC also describes certain business and marketing plans and strategies that Plaintiffs maintain as trade secrets.  SAC ¶ 47.  The SAC recites:



*Id.*  The SAC then identifies specific plans and strategy documents.  *Id.* ¶ 49.

Courts routinely protect such business and marketing information as trade secrets.  *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1456 (2002) ("marketing strategy and plans . . . constitute trade secrets under California law"); *Courtesy Temp. Serv., Inc. v. Camacho*, 222 Cal. App. 3d 1278,  1287 (Cal. Ct. App. 1990) ("process of acquiring and retaining clientele," including information about customer needs and characteristics, "constitute[d] a protectable trade secret"); *Duncan v. Stuetzle*, 76 F.3d 1480, 1488 n.11 (9th Cir. 1996) ("the company's marketing strategy" qualifies as "trade secret" under California law).

Plaintiffs' descriptions are also far more detailed than descriptions of similar trade secrets that other courts found sufficient.  *See, e.g.*, *TMX Funding*, 2010 WL 2509979, at *3 ("business methods and marketing plans, such as prospective customer and sales methods for attracting and retaining customers"); *Brocade*, 2011 WL 1044899, at *1 ("information regarding its products, including customer needs and terms of agreements with customers"); *New Show*, 2014 WL 2988271, at *9 ("business plans, pricing, marketing

strategies"); *W.L. Gore & Assocs. v. GI Dynamics, Inc.*, 2010 WL 5184254, at *8 (D. Ariz. Dec. 15, 2010) ("market studies, financial information, manufacturing methods, and [counterclaimant's] future plans").

Apple's arguments challenge the merits rather than Plaintiffs' descriptions. For example, Apple cites *Kavanagh v. Tuller*, 2017 WL 1496436, at *4 (S.D. Cal. Apr. 26, 2017) to suggest that business and marketing information cannot be a trade secret. But that case found the plaintiff admitted she published the information she claimed was secret. *Kavanagh* did not hold or suggest that business and marketing plans are inherently not protectable.

Apple also argues Plaintiffs' trade secrets are "not trade secrets" because they are purportedly "obvious" and "easily ascertainable." Dkt. 121 at 7-8. But that is another challenge on the merits. Even Section 2019.210—which Apple asserts is a ***higher*** standard than at issue here—"does not create a procedural device to litigate the ultimate merits of the case." *See Brescia*, 172 Cal. App. 4th at 149. Apple's argument regarding the merits also shows that Plaintiffs described their trade secrets in sufficient detail. *See Prolifiq Software Inc. v. Veeva Sys. Inc.*, 2014 WL 2527148, at *3 (N.D. Cal. June 4, 2014) (finding the plaintiff satisfied Section 2019.210 because "the fact that [defendant] is able to craft detailed arguments for why [plaintiff's] information does not constitute trade secrets means that [plaintiff] has sufficiently identified that information to [defendant] so that it may investigate the merits of [plaintiff's] claim.")

Apple's argument is also legally erroneous. "[I]t is ***not*** required that a trade secret be patentably nonobvious or novel." *Imi-Tech Corp. v. Gagliani*, 691 F. Supp. 214, 231 (S.D. Cal. 1986). The relevant inquiry is whether a trade secret is generally known. Cal Civ. Code § 3426.1(d)(1). "[U]nder California law, information ***can*** be a trade secret even though it is readily ascertainable, so long as it has not yet been ascertained by others in the industry." *Abba Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 21 (Cal. Ct. App. 1991). While the model

-10-

Uniform Act (and many other states) deny protection to "readily ascertainable" information, California's legislature specifically excluded such a requirement from the definition of a trade secret.  West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments).  As *Abba* explained, "our Legislature chose to exclude from the definition only that information which the industry ***already knows***, as opposed to that which the industry ***could*** easily discover." 235 Cal. App. 3d at 21.

"California law emphasizes punishing the wrongful acquisition of information, even if it ***could*** have been obtained legally." *Imi-Tech,* 691 F. Supp. at 231; *see also Glob. Med. Techs., Inc. v. Jackson*, 2006 WL 3735581, at *6 (Cal. Ct. App. Dec. 20, 2006) ("reliance on the information's availability from other sources as a basis for not qualifying as a trade secret is misplaced"). "[I]t is not a defense that someone else ***could have*** easily discovered the information by independent research."  Risch, Why Do We Have Trade Secrets?, 11 Marq. Intell. Prop. L. Rev. 1, 54 (2007).

"Readily ascertainable" remains a defense, but only for showing "an absence of ***misappropriation***, rather than the absence of a trade secret."  *Abba*, 235 Cal. App. 3d at 21 n.9.  Specifically, the defendant can rebut an allegation of misappropriation by showing the information was "readily ascertainable" and that "the defendant's knowledge of [the information] ***resulted from*** that identification process. . .."  *Id.*; *see, e.g.*, *Medtronic MiniMed, Inc. v. Nova Biomed. Corp.*, 2009 WL 10672947, at *2 (C.D. Cal. Aug. 14, 2009) (excluding "readily ascertainable" evidence because defendant alleged only that it "***could*** have used reverse engineering to obtain Plaintiffs' technology, not that it actually did so").  Apple makes no attempt to show there is any support for such a defense, much less that it would be properly addressed on the pleadings.

Apple cites *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144-46 (N.D. Cal. 2019), but that decision did not adopt any sort of

-11-

"obviousness" analysis.  Moreover, a subsequent decision in that case rejected a challenge to the following description: "pricing and market strategy, especially with respect to price-sensitive accounts."  *AlterG, Inc. v. Boost Treadmills LLC*, Dkt. 41 (N.D. Cal. Sept. 5, 2019) (attached as Ex. 1) at 11.  The court explained its "prior concern" arose as to "technical matters" and "[p]ricing and marketing strategy, by contrast, are less technical, and their description does not demand the same level of specificity . . .."  *Id.*  Here, Plaintiffs described their business and marketing plans in far more detail than found sufficient in *AlterG*.

### c.   <u>Strategies For Interacting With Hospitals</u>

The SAC also identifies specific strategies for interacting with hospitals:



*Id.* ¶ 49.  The SAC then identifies documents reflecting Plaintiffs' strategies and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 50.

Courts routinely protect such information as trade secrets.  *Courtesy*, 222 Cal. App. 3d at 1287 ("process of acquiring and retaining clientele," including information about customer needs and characteristics, "constitute[d] a protectable trade secret"); *Duncan*, 76 F.3d at 1488 ("the company's marketing strategy" qualifies as "trade secret" under California law).

Plaintiffs' descriptions are again far more detailed than descriptions of similar trade secrets that other courts found sufficient.  *See, e.g.*, *TMX*, 2010 WL 2509979, at *3 ("customer lists"); *New Show*, 2014 WL 2988271, at *9

("client contacts"); *Roadrunner*, 2010 WL 11483986, at *4 ("customer lists and pricing information").

Rather than show Plaintiffs' descriptions are insufficient, Apple again challenges the merits.  For example, Apple argues these trade secrets are not protectable because Plaintiffs ███████████████████████████████████ ████████████████████████████  Dkt. 121 at 8.  As discussed, even Section 2019.210 "does not create a procedural device to litigate the ultimate merits of the case."  *See Brescia*, 172 Cal. App. 4th at 149.  Further, that Apple makes such arguments shows that Plaintiffs' description is adequate.  *See Prolifiq*, 2014 WL 2527148, at *3.

Apple cites various websites, but those websites are outside the pleadings and not subject to judicial notice.  *See United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).   Regardless, none disclose Plaintiffs' trade secrets.  Plaintiffs are obviously not claiming as a trade secret the "American Society of Anesthesiologists" presentation or merely that Masimo has a relationship with Johns Hopkins.  Dkt. 121 at 8-9.  Rather, Plaintiffs identify specific strategies, including ██████████████████████████████ ████████  SAC ¶ 49.  Plaintiffs even cited specific documents identifying ████████████████████████████████████████████████████████████████ Apple makes no attempt to show such compilations are generally known.

Moreover, Apple's cases are inapposite.  In *Emazing Lights*, 2016 WL 3658945, at *2, the court rejected a catchall description identifying "any . . . information not publically and widely known."   In *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *13 (N.D. Cal. June 29, 2017), the court took judicial notice that the plaintiff "publicized its relationship with many of its customers."  Here, Apple has presented no such evidence, much less evidence subject to judicial notice.  More importantly, Plaintiffs trade secret is not merely the name of hospitals that use Plaintiffs' products.  Plaintiffs identified ██████

-13-

██████████████████████████████████████████████████████

████████████████   SAC ¶¶ 49-50.

### 2.   Plaintiffs' Identification Of Documents Further Describes Plaintiffs' Trade Secrets

In addition to describing Plaintiffs' trade secrets in detail, the SAC cites numerous documents and source code that further describe Plaintiffs' trade secrets.   For example, ██████████████████████████████████

████████████████████████████████████████   ████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████ █████████████████████████████████████████ ██████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

Plaintiffs  also  identified  ██████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████ ███████████████████████████████████████████████ ████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████   Those documents came from Lamego or O'Reilly's files.

Apple claims Plaintiffs' identification of such documents is "smoke and mirrors" and claims the Court "rejected" such an approach.  Dkt. 121 at 10.  But Apple's quotation shows the opposite: the Court criticized the FAC because it did *not* identify "specific plans, briefs, or drawings."  *Id.* (citing Dkt. 60 at 8). Plaintiffs cited specific documents to address the Court's concern.

Apple argues Plaintiffs' documents are "not appropriate for evaluation here" because they are "not attached to the SAC . . .." Dkt. 121 at 11. That Apple does not wish to address Plaintiffs' specific documents is telling. Indeed, Apple previously asked this Court to take judicial notice of documents that are referenced in, but not attached to, the pleadings. *See* Dkt. 38-2 at 2. The Court can do the same here. Apple claims it does not "understand" the "relationship" of these documents to Plaintiffs' claims, but the SAC connects each document with a specific trade secret. *See* SAC ¶¶ 42, 44, 46, 48, 50. Moreover, the documents on their face show how they are relevant. *See, e.g.*, Ex. 4 (MASA00081209-25).

Apple also feigns confusion as to why some documents contain copyright stamps referring to "2019" or "2020." Dkt. 121 at 11. As is common, those documents contain a date that automatically updates when the document is processed and produced. The original documents contain earlier notices. For example, below is the copyright notice for MASA00075947:

CONFIDENTIAL AND PROPRIETARY
© 2013 Masimo Corporation (Unpublished)
All Rights Reserved

*See* Powell Decl. ¶ 10. Moreover, the top of that document is dated "12/18/13." *Id.* Apple further complains that some documents include handwriting, but those are lab notebooks from Plaintiffs' engineers. Plaintiffs are not required to explain each page of such lab notebooks in the complaint. Plaintiffs provided ample notice of the issues the parties will litigate, the discovery Apple may take, and specific documents the parties may focus on. Plaintiffs' allegations are far beyond the required "short and plain statement of the claim showing that the pleader is entitled to relief." *Aschroft*, 556 U.S. at 677-78.

Incredibly, Apple complains that Plaintiffs' "[m]ost egregious[]" infraction was identifying specific source code files. Dkt. 121 at 11. But Apple never explains why Plaintiffs should be ***faulted*** for pointing Apple to specific

-15-

source code files.  Apple claims Plaintiffs' description of source code files "amounts to the same broad description that this Court has already rejected: 'source code.'"  Dkt. 121 at 11-12.  Apple purports to quote the Court's Order (Dkt. 60), but the words "source code" appear nowhere in that order.  Apple claims it needs more "specificity about these source code files" (Dkt. 121 at 11), but Plaintiffs identified *precise* source code files, not source code in general.

Finally, Apple argues the SAC provided less detail than what was found sufficient in *Autodesk*, 2015 WL 2265479, at *5.  That is not true.  In *Autodesk*, the pleading was sufficient despite referring to "source code" and "features" without identifying specific files or features.  Here, Plaintiffs did far more by identifying specific features and *specific source code files*.  SAC ¶¶ 41-42.

### 3. Plaintiffs Are Not Required To Identify Precisely How Apple Used Plaintiffs' Trade Secrets

Apple next argues "[t]he test here is not whether Plaintiffs can simply list categories of information that, in a vacuum, could be trade secrets.  Rather, Plaintiffs must plead with particularity the secrets allegedly misappropriated *in this case*."  Dkt. 121 at 9 (emphasis in original).  Apple argues Plaintiffs "fail that test" because "not a single one" of Plaintiffs trade secrets is "tied to" the Apple Watch or an Apple patent filing."  *Id.*

As this Court explained, however, "'there is no requirement that' a plaintiff 'plead exactly how [d]efendants improperly obtained or used the alleged trade secret.'"  *Metricolor LLC v. L'oreal S.A.*, 2020 WL 3802942, at *13 (C.D. Cal. July 7, 2020) (quoting *Autodesk*, 2015 WL 2265479, at *6).  "That is because, at the pleading stage, 'discovery has not yet commenced' and 'it would be unreasonable to require a plaintiff to demonstrate the precise ways in which [d]efendants have used their trade secrets, given that [d]efendants are the only ones who possess such information.'"  *Id.* (quoting *Autodesk*, 2015 WL

2265479, at *6); *see also Vinyl Interactive, LLC v. Guarino*, 2009 WL 1228695, at *8 (N.D. Cal. May 1, 2009) (same).

Apple's only support for its alleged "test" is *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018). In *Vendazo*, however, the court found the plaintiff "set out its purported trade secrets in broad, categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets Vendavo has a basis to believe actually were misappropriated here." *Id.* *Vendavo* did not suggest any "test" requiring a plaintiff to explain precisely how the defendant misappropriated every asserted trade secret.

Here, unlike in *Vendavo*, Plaintiffs identified the types of trade secrets they own **and** specific categories they allege Apple misappropriated. SAC ¶¶ 39-50.[3] Moreover, contrary to Apple's assertions, Plaintiffs **did** identify specific Apple patent publications that contain Plaintiffs' trade secrets. *Id.* ¶ 238. Plaintiffs also filed a Motion for Preliminary Injunction identifying precisely how one of Apple's patent publications contained the trade secret quoted above on page 6, lines 3-19. *See* Dkt. 116 at 7-10. Apple responded with an expert declaration and a lengthy table discussing numerous aspects of Plaintiffs' trade secret. Apple's response further shows Plaintiffs identified their trade secrets in sufficient detail. *See Prolifiq*, 2014 WL 2527148, at *3.

Accordingly, the Court should reject Apple's challenge to Plaintiffs' description of their trade secrets. Plaintiffs provided more than enough detail to satisfy even the "reasonable particularity" standard of Section 2019.210.

---

[3] Apple complains that Plaintiffs left Paragraph 39 "exactly the same as FAC paragraph 211," but that is because Paragraph 39 describes the type of trade secrets that Plaintiffs **own**. At issue here are Paragraphs 41-50, which describe trade secrets Plaintiffs currently allege Apple misappropriated. *See* SAC ¶ 40.

**B.**     **Plaintiffs Plausibly Allege Misappropriation**

    **1.**     **Plaintiffs Allege Improper Acquisition**

A defendant misappropriates by acquisition if it "knew or had reason to know that the trade secret was acquired by improper means," which includes "breach or inducement of a breach of a duty to maintain secrecy."  Cal. Civ. Code §§ 3426.1(a) & (b)(1).  Plaintiffs' allegations satisfy these requirements.

    **a.**     **The SAC Sufficiently Alleges Apple's Knowledge**

The SAC alleges Apple knew Plaintiffs' former employees were not authorized to provide Plaintiffs' trade secrets to Apple.  *Id.* ¶ 214.  Among other things, Apple met with Plaintiffs to learn about Plaintiffs' technologies and then began hiring Plaintiffs' employees, including Cercacor's Chief Technical Officer, Marcelo Lamego.  *Id.* ¶¶ 19-21.  Plaintiffs notified Apple in writing that Lamego possessed Plaintiffs' trade secrets and asked Apple to refrain from inducing Lamego to disclose those trade secrets.  *Id.* ¶ 23.  Apple quickly began taking patent disclosures from Lamego on the very technology he spent years helping Plaintiffs develop.  *Id.* ¶ 24.  Just a few months after hiring Lamego, Apple filed the applications and requested non-publication, which prevented Plaintiffs from learning what Apple had taken.  *Id.* ¶¶ 53-55.  These facts are more than enough to show Apple knew, or at least should have known, that Lamego used Plaintiffs' information.

Moreover, because a "corporation always acts through individuals," the SAC's allegations of Lamego's knowledge are also "sufficient to allege that [Apple] knew of the misappropriation."  *See Pyro-Comm Sys. Inc. v. W. Coast Fire & Integration Inc.*, 2015 WL 12765143, at *5 (C.D. Cal. Apr. 2, 2015).

Apple largely ignores Plaintiffs' allegations and argues Plaintiffs must plead facts showing Apple knew or should have known the former employees had a duty to maintain the secrecy of each and every "specific" piece of information shared with Apple. Dkt. 121 at 14-15.  But Apple cites ***no*** authority

-18-

1   requiring plaintiffs to show—at the pleading stage with no discovery—such

2   detailed knowledge with regard to every specific trade secret.

3        Apple argues the allegations in this case are "nearly identical to those

4   found to be insufficient in *Pellerin v. Honeywell International, Inc.*, 877 F.

5   Supp. 2d 983 (S.D. Cal. 2012)."  Dkt. 121 at 14.  Not so.  While *Pellerin* and

6   this case both involve a former employee and a warning letter, any similarities

7   end there.  In *Pellerin*, the complaint alleged the trade secret defendant "had

8   access to" trade secrets and failed to provide an "exculpatory explanation"

9   demonstrating it had independently developed the information at issue.  877 F.

10  Supp. 2d at 989-990.  The court held such allegations were insufficient because

11  it was not the trade secret defendant's burden to disprove the claim.  *Id.* at 990.

12  In contrast, as shown above, Plaintiffs allege numerous facts that plausibly show

13  Apple knew or had reason to know it was exploiting Plaintiffs' trade secrets.

14       Apple cites several other cases where the pleading simply ***assumed*** the

15  defendant knew the information was confidential.  *See, e.g.*, *Carr v. AutoNation,*

16  *Inc.*, 2018 WL 288018, at *2 (E.D. Cal. Jan. 4, 2018) (assuming

17  misappropriation because the defendant had limited industry experience); *UAB*

18  *"Planner 5D" v. Facebook, Inc.*, 2019 WL 6219223, at *11 (N.D. Cal. Nov. 21,

19  2019) (assuming defendant knew information it obtained on the internet was a

20  trade secret); *CleanFish*, 2020 WL 1274991, at *10 (failing to allege any facts

21  suggesting the defendant knew it obtained trade secrets).  Those cases bear no

22  resemblance to the facts here.

23       The facts of this case are also nothing like *MedioStream, Inc. v. Microsoft*

24  *Corp.*, 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012).  In *MedioStream*, the

25  complaint alleged Sony acquired trade secrets by licensing them from another

26  defendant.  *Id.*  However, the complaint failed to allege Sony had any reason to

27  know the other defendant, who was once authorized to license the technology,

28  was no longer authorized to do so.  *Id.*  Courts distinguish *MedioStream* where,

-19-

as in this case, there are no allegations "suggesting that [defendant] believed [plaintiff] had consented to [defendant] using its [trade secrets]." *See Lilith Games Co. v. uCool, Inc.*, 2015 WL 4128484, at *4 (N.D. Cal. July 8, 2015).

Apple also cites *Zora Analytics, LLC v. Sakhamuri*, 2013 WL 12124612, at *4 (S.D. Cal. June 18, 2013), where the plaintiff had not "adequately pled the details of the NDA." Here, in contrast, the SAC explains that Plaintiffs required its employees to sign "agreements precluding the employees from disclosing or making use of any confidential information except as authorized by Plaintiffs and as necessary for the performance of the employees' duties." SAC ¶ 18. Plaintiffs also sent Apple a warning letter that included "Lamego's Employee Confidentiality Agreement with Cercacor." SAC ¶ 234. Apple previously requested the Court take judicial notice of that letter, including Lamego's employment agreement. *See* Dkt. 38-2 at 1; Dkt. 38-4, Ex. A at 6-9.

Finally, Apple alleges Plaintiffs' warning letter "violates California law." Dkt. 121 at 16. That is irrelevant and incorrect. Apple cites nothing to show such warning letters are improper. Plaintiffs' letter properly put Apple on notice and requested that Apple respect Plaintiffs' trade secrets. Unlike Apple's only cited authority, *Whyte*, 101 Cal. App. 4th at 1462, Plaintiffs did not assert "inevitable disclosure" or take any legal action against Lamego or Apple at that time. As the actual allegations in the SAC demonstrate, Plaintiffs are ***not*** relying on "inevitable disclosure." Apple's endless arguments to the contrary are irrelevant.

## b.   <u>The SAC Sufficiently Alleges Inducement</u>

Apple also claims Plaintiffs failed to allege facts sufficient to show how Apple induced the former employees to breach their confidentiality obligations to Plaintiffs. Dkt. 121 at 17. But Apple fails to cite a ***single*** case requiring a trade secret plaintiff to plead precisely ***how*** the defendant induced a breach. To the contrary, this Court has specifically held that plaintiffs can properly allege

such allegations "on information and belief" because the information "is not presumptively in the knowledge of the pleading party." *See Calendar Research LLC v. StubHub, Inc.*, 2017 WL 10378336, at *4 (C.D. Cal. Aug. 16, 2017).

Apple claims *Calendar Research* "did not create an exception" to *Twombly*. Dkt. 121 at 17. But *Twombly* did not hold that Plaintiffs must plead specific facts exclusively within the knowledge of the defendant. Moreover, Apple does not even attempt to distinguish this case from *Calendar Research*. Nor could it. The complaint in *Calendar Research* alleged the defendant knew of the plaintiff's valuable trade secrets, desired them, and knew the former employees were "no longer authorized to possess or disseminate that information." 2017 WL 10378336 at *4. The SAC makes similar allegations. *See* SAC ¶¶ 19-24, 238. *Calendar Research* is on point.

Apple also ignores numerous other decisions reaching the same conclusion. *See, e.g.*, *Brocade*, 2011 WL 1044899, at *6 (allegations on "information and belief" sufficient because "information about whether and how former [plaintiff] employees allegedly copied Brocade source code and used it to create a competing product is presumptively in the possession of [defendant], not [plaintiff]"); *Nextdoor.Com, Inc. v. Abhyanker*, 2013 WL 3802526, at *6 (N.D. Cal. July 19, 2013) ("details of how Counter-Defendants shared information amongst themselves, are not the sort of information that would presumptively be within [plaintiff]'s knowledge, so pleading such facts on information and belief is appropriate here"); *Metricolor*, 2020 WL 3802942, at *13 ("[I]t would be unreasonable to require a plaintiff to demonstrate the precise ways in which [d]efendants have used their trade secrets, given that [d]efendants are the only ones who possess such information."); *Autodesk*, 2015 WL 2265479, at *6 (same); *Vinyl*, 2009 WL 1228695, at *8 (same).

Rather than cite a case adopting Apple's impossible standard, Apple relies on general statements of law and policy. *See* Dkt. 121 at 17-18. Not only

are all of Apple's cited cases unrelated to trade secrets, none addressed facts solely in the possession of the defendant. *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (allegation that railroads employees saw the plaintiff's injury insufficient because plaintiff failed to allege he "saw any employees in the vicinity . . . called to anyone for help . . . or that any specific person saw [his] peril"); *Simonyan v. Ally Fin. Inc.*, 2013 WL 45453, at *2 (C.D. Cal. Jan. 3, 2013) (allegation of unfair credit report insufficient where plaintiff failed to allege "what information was inaccurately reported . . . to the credit reporting agencies and why that information was inaccurate"); *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694 (9th Cir. 2009) (bare allegation that German corporation "conducted business in the United States" insufficient).

## 2.   Plaintiffs Allege Improper Use And Disclosure

A defendant misappropriates trade secrets by use or disclosure if it (A) used improper means to acquire the information or (B) knew or had reason to know the information was (i) obtained from a person who acquired it using improper means, (ii) acquired under a duty to maintain its secrecy, *or* (iii) derived from another who had a duty to maintain its secrecy. Cal. Civ. Code §§ 3426.1(b)(2)(A) and (B). The SAC alleges improper use and disclosure in numerous ways.

### a.   The SAC Sufficiently Alleges Apple Is Directly Liable

The SAC alleges Apple used and disclosed Plaintiffs trade secrets by incorporating them into its products and patent applications. *See* SAC ¶¶ 235-36. As discussed above, Apple acquired the information through improper means and knew the information was derived from Plaintiffs' former employees, who had a duty to maintain its secrecy. *Id.* Plaintiffs expressly notified Apple of this fact in a letter when Lamego began working for Apple. *Id.* ¶ 23. Apple previously relied on this letter to argue the risk of misappropriation was so obvious that Plaintiffs—who had no knowledge of Apple's patent applications or unreleased products—should have suspected misappropriation and filed suit earlier. D.I.

-22-

16 at 3, 7.  Additionally, based on Apple's prior exchanges with Plaintiffs and the immediacy of Lamego's disclosures at Apple, Apple knew or should have known that Lamego was using information obtained from Plaintiffs.

Apple argues that Plaintiffs need to allege precisely how the Apple Watch uses each of Plaintiffs' trade secrets.  Dkt. 121 at 14.  But Apple cites no cases requiring a precise allegation of exactly how the accused product incorporates technical trade secrets.  Indeed, the allegations of *Space Data*, 2017 WL 5013363, at *2, were nothing like this case.  In *Space Data*, the plaintiff vaguely alleged "only that 'Defendants have engaged in other business activity based on Space Data's confidential trade secret information, which conflicts with their legal obligations to Space Data."  *Id.* at *2.  Here, Plaintiffs alleged Apple incorporated Plaintiffs' trade secrets into specific patents and specific versions of the Apple Watch.

Apple's reliance on *MedioStream*, 869 F. Supp. 2d at 1113-14, is also misplaced.  There, the plaintiff alleged that several defendants misappropriated trade secrets but failed to identify which defendant misappropriated each trade secret.  No such allegations or ambiguity exists here.

Apple also claims Plaintiffs must identify "by line and page number" where their trade secrets "appear in Apple's patents or applications."  Dkt. 121 at 15.   Again, Apple cites no caselaw to support that assertion.   Apple's accusation that Plaintiffs cannot prove such information is also incorrect. Indeed, Plaintiffs' Motion for Preliminary Injunction recently described in great detail exactly how one of Apple's patents contains Plaintiffs' trade secrets.  *See* Dkt. 111-1 at 7-10.  Nothing required Plaintiffs to put that detail in the SAC.

**b.**   **<u>The SAC Sufficiently Alleges Apple Is Liable Under The Doctrine Of Respondeat Superior</u>**

Apple completely ignores the SAC's respondeat superior allegations, which thus stand unchallenged.  "'Under the doctrine of respondeat superior, an

innocent employer may be liable for the torts its employee commits while acting within the scope of his employment.'" *Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, 2010 WL 2764714, at *3 (N.D. Cal. July 13, 2010) (internal quotations omitted).   An employer is vicariously liable "if the employee's act was an outgrowth of his employment, inherent in the working environment, typical of or broadly incidental to the employer's business, or, in a general way, foreseeable from his duties." *Id.*

In *Language Line*, the court granted a preliminary injunction based on the plaintiff's former employees using the plaintiff's trade secrets while employed by the corporate defendant.   *Id.* at *4.   The court rejected the corporate defendant's argument that it could not be liable because "[the employees'] actions violated [defendant's] policies and were not known to [defendant's] executives."   *Id.*   The court found that the individual employees "acted within the scope of their employment, since an act of this nature was generally foreseeable as part of their duties to solicit customers for [defendant]." *Id.*; *see also Extreme Reach, Inc. v. Spotgenie Partners, LLC*, 2013 WL 12081182, at *7 (C.D. Cal. Nov. 22, 2013) (granting preliminary injunction against corporate defendant that was "liable for the Sales Managers' misappropriation of trade secrets under the doctrine of respondeat superior.").

Similar to *Language Line*, the SAC alleges Apple hired Lamego, assigned him to help develop Apple's non-invasive monitoring technology, quickly obtained patent disclosures from him, and then applied for numerous patents listing Lamego as an inventor.   SAC ¶¶ 21, 24, 53-55.   Lamego knew that he was not permitted to use or disclose Plaintiffs' trade secrets, but did so anyway for Apple's benefit while employed by Apple.   SAC ¶ 235.   Lamego's work on non-invasive monitoring technologies and applying for patents was clearly an "outgrowth of his employment, inherent in the working environment, typical of

or broadly incidental to [Apple's] business, or, in a general way, foreseeable from his duties." *See Language Line*, 2010 WL 2764714 at *3.

## C.  <u>Denying Leave to Amend Would Be Improper</u>

Apple argues the Court should deny leave to amend because Plaintiffs voluntarily amended once to narrow the parties' dispute and amended again after the Court granted Apple's prior motion to dismiss.  Dkt. 121 at 18.  Apple cites nothing precluding further amendment in such circumstances.  Apple's cited cases provided far more chances to amend and/or found an amendment would be futile. *See Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (affirming denial of leave to file fourth complaint that "would likely prove futile"); *GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, 2016 WL 6601656, at *8 (C.D. Cal. July 25, 2016) (denying leave to file "futile" complaint); *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (affirming denial of leave to file "futile" complaint);  *Basalite Concrete Prod., LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2013 WL 2156582, at *9 (E.D. Cal. May 17, 2013) ("While leave to amend must be freely given, the court is not required to permit futile amendments.").

Here, the Court has only once told Plaintiffs to provide more detail about its trade secrets and has never found Plaintiffs' misappropriation allegations insufficient.  Apple identifies no fundamental flaw in the SAC and, instead, endlessly asks for more detail.  If the Court believes Plaintiffs should provide additional detail on any aspect of their claims, Plaintiffs should be given an opportunity to provide such detail.

## IV.  <u>CONCLUSION</u>

For the reasons discussed above, the Court should deny Apple's motion to dismiss.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  September 4, 2020        By: */s/ Adam B. Powell*
                                     Joseph R. Re
                                     Stephen C. Jensen
                                     Perry D. Oldham
                                     Stephen W. Larson
                                     Adam B. Powell

                                     Attorneys for Plaintiffs,
                                     Masimo Corporation and
                                     Cercacor Laboratories

33460905

-26-