```
           UNITED STATES DISTRICT COURT
           CENTRAL DISTRICT OF CALIFORNIA
           (SOUTHERN DIVISION - SANTA ANA)
```

MASIMO CORPORATION, ET AL,   ) CASE NO: 8:20-CV-00048-JVS-JDEx
                             )
              Plaintiffs,    )            CIVIL
                             )
     vs.                     )       Santa Ana, California
                             )
APPLE, INC,                  )   Wednesday, September 2, 2020
                             )
              Defendant.     )    (3:01 p.m. to 3:45 p.m.)
_____

   TELEPHONIC CONFERENCE RE DEFENDANT'S MOTION TO COMPEL [169]

          BEFORE THE HONORABLE JOHN D. EARLY,
            UNITED STATES MAGISTRATE JUDGE


**APPEARANCES:**          SEE PAGE 2


**Court Reporter:**       Recorded; CourtSmart

**Courtroom Deputy:**     Maria Barr

**Transcribed by:**       Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988


**Proceedings recorded by electronic sound recording;
transcript produced by transcription service.**

<u>**APPEARANCES**</u>:


For Plaintiffs:            STEPHEN C. JENSEN, ESQ.
                          Knobbe Martens Olson & Bear, LLP
                          2040 Main Street
                          14th Floor
                          Irvine, CA 92614


                          ADAM POWELL, ESQ.
                          Knobbe Martens Olson & Bear, LLP
                          12790 El Camino Real
                          San Diego, CA 92130

For Defendant:            JOSHUA H. LERNER, ESQ.
                          Gibson Dunn & Crutcher, LLP
                          555 Mission Street
                          Suite 3000
                          San Francisco, CA 94105


                          ILISSA S. SAMPLIN, ESQ.
                          Gibson Dunn & Crutcher, LLP
                          2029 Century Park East
                          Suite 4000
                          Los Angeles, CA 90067


                          NATALIE POUS, ESQ.
                          Apple in-house counsel

1    **Santa Ana, California; Wednesday, September 2, 2020; 3:01 p.m.**

2         **(Appearances via Zoom Web Video Conference)**

3                   **Call to Order**

4         **THE COURT:**  We're here on the record in *Masimo*

5    *Corporation, et al versus Apple Inc.*, Case Number Central

6    District SA-cv-20-00048-JVS-JDE.

7         We are here because -- I'll take appearances in a

8    moment, but we are here because I requested, this is Magistrate

9    Judge Early, I requested a telephonic conference regarding a

10   Motion that was filed and a Joint Stipulation and supporting

11   evidence filed yesterday regarding a request for a Section

12   2019.210 Disclosure.

13        As I understand it on the call we have on behalf of

14   Plaintiff we have Mr. Stephen Jensen, Mr. Adam Powell.

15        And on behalf of Defendant we have Ms. Ilissa Samplin

16   and Mr. Joshua Lerner, and a representative from Apple whose

17   name we weren't able to catch.

18        Before I get that name could I find out, and don't

19   say anything, but is there anyone else on the call whose name I

20   didn't call other than the representative of Apple?

21      **(No audible response)**

22        **THE COURT:**  All right, if I could get the name of the

23   Apple in house counsel representative who is on the call?

24        **MS. POUS:**  Yes, your Honor, this is Natalie Pous.

25        **THE COURT:**  And I'm sorry, it's a little hard to hear

1    you, could you give me your first and last name slowly, please?

2         **MS. POUS:**  My apologies Natalie and the last name

3    Pous, P-O-U-S.

4         **THE COURT:**  P-O-E-S?

5         **MS. POUS:**  P-O-U-S.

6         **THE COURT:**  U-S.  Thank you.

7         All right, I appreciate Counsel making themselves

8    available on short notice.  Here I want to tell you what I want

9    to do, I want to make your lives easier, that's what I'm here

10   for, not entirely, but maybe partly.  I want to make your lives

11   easier.

12        We issued an Order yesterday on an ex parte

13   application that had some language that I hope Counsel have

14   looked at.

15        There's a lot of Motions being filed, mostly

16   surrounding, not the substance of any issue in the case, but

17   the order in which discovery is going to take place.  It seems

18   like a lot of time, money and effort and on matters that I

19   would expect and anticipate Counsel can work out amongst

20   themselves.

21        I haven't read all of the cases cited in the Joint

22   Stipulation, but I will.

23        I have looked at all of the briefing and I have

24   looked at all of the supporting documentation and have some

25   concerns.  What I don't want to do is go off the cuff and make

 1   allegations without backing those up and making findings about
 2   how the case is being litigated without backing those up with
 3   the record, but we're reaching a point where we're probably
 4   going to need to start doing that.  And -- but before I do
 5   something like that I always like to give a heads up that it's
 6   potentially coming.
 7           One thing I'll tell you that I've noticed is that
 8   both Counsel do agree on something and it's great that you
 9   agree on something; it's bad that you agree on this.
10           You both agree that the other side's engaging in
11   gamesmanship.  It's a word you both used referring to the
12   other.  I'm not going to make a finding right now, but I
13   certainly probably could go through the record and find
14   instances where counsel for both sides have engaged in conduct
15   that could meet that definition.  I'm not going to do that yet,
16   I want to give you an opportunity to try to work some of these
17   things out.  And I'll tell you I think it's both Counsel
18   represent clients who's going to take this case very seriously
19   and that's important, that's what we're here for, we do serious
20   work.  I'm sitting in a chair right now where we had a request
21   for detention on a man facing a life sentence for an alleged
22   bombing that resulted in a killing where the victim was
23   literally blown to bits, pieces of her found in a parking lot,
24   on a wall, all other nearby places, two other victims injured.
25           Earlier, not too many days ago, and I thought about

1   this when I was working on the ex parte, I think it was the

2   fourth one in this case that involved the issues we talked

3   about, not the fourth one for me, I think Judge Selna had the

4   pleasure on the earlier three, but the fourth one seeking

5   expedited resolution.  And I'm going to describe to you a

6   situation we had just a few days ago where someone asked for

7   expedited resolution.  It was a series of search and arrest

8   warrants for a person who had previously been convicted of

9   terrorism and at this time was facing additional charges, and

10  as part of the request for an estimate for when the warrants

11  would be approved one of the -- it was noted that a

12  neighborhood was surrounded by SWAT officers and a law

13  enforcement helicopter was in the air and needed to know

14  whether it needed to refuel before the warrants would be signed

15  off, approved so that the tactical team could make entry safely

16  and without incident, and I'm happy to report that that did

17  happen, it occurred without incident and we completed our

18  hearing this morning regarding the allegations of murder and a

19  request for continued detention.

20          I want you to really think about that when you folks

21  think about whether you're going to re-institute, this is now

22  the ninth Motion regarding the Order in which disclosures will

23  be made in this case.  I know the case is very important to

24  you.

25          I also want you to think about what Judge Selna's

1    going through with his calendar with criminal cases circling

2    waiting for trials where the Sixth Amendment mandates trials or

3    the Constitution and the Speedy Trial Act mandate speedy trials

4    where a Court's calendar is not an excuse for delaying a

5    criminal defendant's right to a trial, and the fact that we're

6    under an emergency declaration, and we're under an emergency

7    declaration in this District for the District Courts for being

8    so far down in what they should have in terms of Judges meaning

9    that each Judge in the Central District does about, at this

10   point, getting close to two times the case load of what is

11   expected of District Judges.

12           And I gave you some numbers about if you plotted out

13   if every civil case litigated these issues like you are what it

14   would be like, and obviously not every case is litigated this

15   way, but this one is reaching a point that you folks really

16   need to think about that.

17           And part of this you may be playing tiny violins for

18   your concern about the Courts and the Court's calendar and the

19   fact that we have reduced staffing here, but part of it should

20   also be of concern because what I'm seeing doesn't reflect well

21   on Counsel, and when things don't reflect well on Counsel what

22   happens is things get more complicated at every stage of the

23   proceeding where the Court would like to rely on Counsel as

24   officers of the court to ensure that their complying with Rule

25   Number 1, and it's Rule Number 1 for a reason of the Federal

8

1   Rules of Civil Procedure to ensure the just timely and

2   inexpensive determination and resolution of disputes.  I want

3   you really to think about that and really focus on that as we

4   move forward.  And I don't necessarily expect us to resolve

5   this Motion today, but I want to give you some things to think

6   about.

7            You're going to have Supplemental Memoranda due in

8   about eight days and we may or may not have a hearing on the

9   Motion, but I'll be writing something up and I want you to have

10  an idea of some of the things that I'm thinking about including

11  in the Order and then ultimately you'll do what you'll do and

12  Judge Selna will have a chance to look at it, and you've seen

13  him express his views on some things in this case already and

14  some Orders, so I want you really to think about what's

15  happening in this case, what's happening with how the Court is

16  perceiving Counsel, and how that may affect how the case goes

17  forward.  And, obviously, we don't tie Counsel to their clients

18  and every client is entitled to a day in court and a fair day

19  in court, but I hope that the clients understand that how

20  things are being done may reflect on their representatives as

21  they make further appearances down the road.

22           I'm a lowly Magistrate Judge, though.  I am really

23  here to help you, I'm really here to maybe give you a sense of

24  what things look from this side and what things may look like

25  to Judge Selna, and how things may ultimately appear to a jury.

1          I have tried many cases in this building, I have

2     tried cases with Judge Selna.  I'm in front of Orange County --

3     or was in front of Orange County juries as a lawyer quite a

4     bit, and am still in front of them on consent cases and often

5     -- well, I'm going to leave that aside.

6          But juries don't necessarily like lawyers that snip

7     at each other and fight at each other and can't agree on what

8     even a juror can see is a relatively basic and simple process.

9     I'm not here to point a finger directly at one side or another,

10    but what I can tell you is it appears that this is happening

11    and coming from both sides, and when each side refers to the

12    other as "engaging in gamesmanship" I see support for both of

13    those -- each of those accusations.

14          Turning to the particular Motion that brings us here,

15    and that's Docket Number 169 filed yesterday, I think I heard

16    Mr. Powell had mentioned he's on the call -- Mr. Powell, are

17    you on the call?

18          **MR. POWELL:**  Yes, your Honor.

19          **THE COURT:**  All right.  I want to ask you about some

20    emails that you sent.

21          I'm looking at an email and I'll do it -- the Docket

22    Number, it's Docket Number 169-3, it's Page 7.  These are

23    otherwise referred to as, I think these are exhibits to

24    Ms. Samplin's Declaration, but it's easier for my record to

25    refer to them by their Docket Entry Number and their Page

10

1    Number, and it's a April 21st, 2020 email sent at 7:09 p.m., it

2    looks like Mountain Daylight Time, and you wrote to

3    Ms. Samplin:

4             "We will provide a Section 2019.210 disclosure in due

5             course, but will need a Protective Order in place

6             before doing so."

7             When you wrote that on February 21 of this year,

8    Mr. Powell, what date did you have in mind?

9             **MR. POWELL:**  I'm not sure we had a specific date in

10   mind, your Honor, and things have changed throughout this case.

11   I completely agree with you --

12            **THE COURT:**  Well, let's just focus on my question,

13   you answered it.  I asked what date you had in mind, although

14   you left some wiggle room, you said you're not sure you had a

15   date in mind, and that's -- I understand, it's been what,

16   counting with my fingers May, June, July, August, four and a

17   half months that you might not remember what you thought four

18   and a half months ago and that's fair.

19            I mean, did you have a general sense about a

20   particular event?  You mentioned a Protective Order, so you

21   named that.  Was there any other event you had in mind back in

22   April when you said that you'd make the Section 2019.210

23   disclosure in due course?

24            **MR. POWELL:**  Your Honor, to be honest, it's hard for

25   me to remember exactly what I was thinking on April 21st.

1      **THE COURT:**  Well, I want you -- I understand -- I

2   recognize, I want you to think, and if you say -- it's one

3   thing to say it's hard for you to remember, I acknowledge that,

4   but if you then follow it up by saying "and sitting here today

5   I can't remember" that's okay, tell me that.

6      **MR. POWELL:**  I don't think -- yeah, no, I can't

7   remember any specific thing.  I can tell you that at the time

8   the issue that we were dealing with with Apple concerned

9   primarily the Protective Order, and the reason is that both

10  parties had said "We won't provide confidential information

11  without a Protective Order."

12      **THE COURT:**  Okay.

13      **MR. POWELL:**  I think we just said we would provide

14  the information based on a mutual agreement to exchange it,

15  both parties would agree to (indiscernible) and Apple hadn't,

16  at the time, agreed to that agreement.  So we were and remain

17  to this day, always have been willing to provide confidential

18  information before entry of a Protective Order if both parties

19  did it.

20      **THE COURT:**  Right.

21      **MR. POWELL:**  That's all we were asking.

22      **THE COURT:**  Well, let's continue on.  So that was

23  April.

24      Let's look at Docket Entry -- the same Docket Entry

25  Number 169-3, and this is Page Number 14, this is an email you

1  wrote on June 9th so now we're getting a little closer in time,

2  maybe your memory is a little bit better.  We're talking about

3  three months -- a little less than three months ago, email June

4  9th, 2020 at 12:48 p.m. and, again, I'll quote:

5          "Plaintiffs expect to provide a 2019.210 statement

6          and other confidential information within a

7          reasonable period after entry of a Protective Order."

8          What was the reasonable time period you had in your

9  mind when you wrote that --

10          Oh, I'm sorry, that was actually not written by you,

11  that was written by Mr. Kachner.  I wonder, though, since it

12  looks like, Mr. Powell, you were copied on that, and if you had

13  an understanding about what Mr. Kachner meant by that?

14          **MR. POWELL:**  Yeah, I don't know exactly what

15  Mr. Kachner meant, but I think we were assuming that Apple

16  would answer the Amended Complaint after we filed it, and that

17  they would answer and we would provide a 2019 statement.

18          **THE COURT:**  But you don't know what he meant by that?

19          **MR. POWELL:**  I would be guessing if I told you

20  exactly what he meant, your Honor, I'm sorry.

21          **THE COURT:**  All right.  Let's jump ahead now to July

22  9th, so a month after Mr. Kachner's statement by email.  This

23  is Docket Entry Number 169-3 at Page 21, and this is from you,

24  Mr. Powell, once again referring to the 2019 statement.  You

25  write that, and I'm quoting in part:

1              "Nonetheless Plaintiffs will provide that statement

2              in due course."

3          What did you mean -- so now we're only talking about,

4    oh, a month and a half ago, what did you mean by "due course,"

5    what date did you have in mind?

6          **MR. POWELL:**  So, your Honor, at that time, and I'm

7    trying to make sure I get my timeline right, I want to be

8    accurate, but I believe we had filed the Second Amended

9    Complaint at that time and we had provided what we believe was

10   an extraordinary amount of detail in the Second Amended

11   Complaint, and we assumed Apple would answer the Second Amended

12   Complaint, and it was not until I think -- I'll have to get the

13   exact date of the meet and confer, right around when Apple

14   indicated to us that they intended to still move to dismiss,

15   and that's when things really changed here is that we thought

16   this was going to move forward, Apple would answer, we would

17   provide the 2019, and when Apple indicated they would still

18   move to dismiss that's when we realized that it didn't make

19   sense to litigate this, some of this similar and/or identical

20   issues both before your Honor and before Judge Selna at the

21   exact same time, in two separate forums, before two separate

22   Judges.

23          **THE COURT:**  Well, you indicated that, in your view,

24   there was an "extraordinary amount of disclosure in the Second

25   Amended Complaint," is that -- am I quoting you correctly?

1          **MR. POWELL:**  I think I said "extraordinary," I'm not

2    sure.  I think we certainly complied with Judge Selna's Order

3    and I think we actually complied with the reasonable

4    particularity requirement of 2019.

5          **THE COURT:**  All right.  So why not tell Defendant

6    that, why not tell Apple that?  That "Our Second Amended

7    Complaint, we stand on that" and then if Judge Selna finds that

8    to be insufficient so be it.

9          **MR. POWELL:**  I'm not sure --

10         **MR. JENSEN:**  I'm sorry, were you trying to say

11   something else?  I didn't mean to interrupt you.

12         I was trying to ask -- Judge Early, this is Steve

13   Jensen, whether that was a question to Mr. Powell or whether

14   you would like me to address that as our argument?

15         **THE COURT:**  I guess I'm happy to listen to whomever

16   wants to speak, but ultimately you're each making

17   representations, or it's primarily Mr. Powell making

18   representations in the record before me so I want to understand

19   the bases for the recommendations.

20         You know, here's ultimately -- I don't really mean to

21   make Mr. Powell uncomfortable, if that's what happening, and I

22   hope it's not, but when an officer of the court is making

23   representations to another officer of the court about how the

24   case is proceeding I expect them to live up to the things that

25   they say, and so when they say four months ago that they're

15

1   going to be making a disclosure in due course after the entry

2   of a Protective Order, and when that Protective Order is

3   entered on June 30th, and they say in a separate email that

4   they will be making that 2019.210 disclosure in a reasonable

5   time after the entry of the Protective Order the shifting of

6   sands to say "Oh, no, I'm going to not do it because Apple is

7   challenging our Second Amended Complaint."

8           Hey, both sides agree on something, that the Second

9   Amended Complaint, the standard for under Rule 12(b)(6) and

10  Rule 8 for what's sufficient to state a claim is not the same

11  as the standard under 2019.210 for what's stating a trade

12  secret with reasonable particularity.  So a challenge to one

13  doesn't mean a challenge to the other.

14          If Judge Selna denies the Motion to Dismiss that

15  doesn't mean the language contained in the Second Amended

16  Complaint is sufficient under 2019.210.

17          If he grants it, well, since the standard is lower it

18  would, but it doesn't show a lot of faith in the adequacy of

19  the disclosure.

20          I'm troubled by that.  I'm troubled by the

21  argumentativeness of the contention that the issue has been

22  decided multiple times before about the 2019.210 disclosure.

23          The case isn't frozen in time.  What happened in

24  April, May, June in terms of what needs to be disclosed and

25  whether patent-related claims and trademark-related claims are

16

1   stayed or not stayed, or discovery is stayed or not stayed as

2   to Plaintiff's discovery under 2019.210 are -- that's one whole

3   set of issues and that changes over time.

4          But there's another big, big issue and that is

5   leaving aside 2019.210, Rule 26 gives Federal District Courts

6   broad discretion in controlling and scheduling discovery, and

7   you have read Judge Selna's Orders and I have read Judge

8   Selna's Orders and he certainly made it clear what he felt

9   about the issue of Apple not producing core technical data in,

10  what, Judge Selna found to be a timely or untimely fashion.

11         But the -- a corollary of that is Judge Selna wants

12  to get things moving, wants to get this case moving, you can

13  see it from his Orders.  And I'm concerned that Plaintiffs read

14  into that maybe more than they should have, and that Judge

15  Selna didn't say that there would never be a time for the

16  2019.210 disclosures, and he never said that there not be a

17  separate basis, whether it was in an interrogatory response or

18  a general controlling of the discovery process, that we didn't

19  need to get things going on the trade secret disclosure issue.

20         Your hearing in front of Judge Selna on the Motion to

21  Dismiss is, correct me if I'm wrong, it's September -- is it

22  14th?  Somebody tell me, what's the hearing on the Motion to

23  Dismiss?

24         **MR. POWELL:**  Just one moment, your Honor, I'll get

25  it.

1              **MR. LERNER:**  Yeah, your Honor, this is Josh Lerner

2    for Apple.  Sorry to jump in.  I think the date you had on the

3    14th is the date for the hearing on the Preliminary Injunction

4    which probably comes from the fact that we mentioned that in

5    our papers because obviously we feel like dealing with that

6    Motion without the disclosure is one of the issues here.  But

7    that's the hearing that's on the 14th, and I believe if

8    Mr. Powell doesn't have it yet, I'll have the date on the

9    Motion to Dismiss here in just one second, I'm just pulling it

10   up --

11             **MR. POWELL:**  Oh, I have it, your Honor, it's October

12   5th.

13             **THE COURT:**  All right.  And why don't I turn -- I'll

14   let Plaintiffs think about some of the things that I've said

15   and I'll turn to Apple.

16             If we just let this Motion that you filed go and let

17   it be heard in a regular hearing, which is probably what we're

18   going to wind up doing today short of giving you some things to

19   think about, if I do exactly what you asked me to do we have a

20   hearing on September 24th, I ordered disclosure in five days,

21   that would be September 29th.  What's the significance of that

22   date?

23             **MR. LERNER:**  The significance of that date, your

24   Honor, is that is the soonest we could find a way to get this

25   disclosure without, again, moving ex parte.  And to your

1   Honor's point we did see the language in your Order and we do

2   take it seriously.

3           I have practiced criminal law and I hear you and I

4   definitely get the importance of the matters you are describing

5   kind of as the relative importance of speed, and so the really

6   straightforward answer to your question is we really would like

7   to and I don't think it's overstating it to say we need a

8   disclosure earlier, but we also are aware of the burden on the

9   Court right now and we saw the Order and we didn't think it was

10  prudent to file another ex parte Motion notwithstanding the

11  fact that we are, as I mentioned, litigating it beyond.

12          **THE COURT:**  Well, I'm going out on a limb and saying

13  you had circulated the Joint Stipulation seven days before it

14  was filed so we were already going down that route by the time

15  my Order hit the Docket, right?

16          **MR. LERNER:**  Yes.  And even before that, though, your

17  Honor, I think this goes to your point, it was, I think,

18  evident to everybody that, you know, there are a lot of papers

19  in this case and we're trying to be mindful of that.

20          That said, if we can get this disclosure sooner

21  rather than later, even if it is on the regularly scheduled

22  hearing, that is a huge step forward for us because right now

23  we are litigating the case.  And I do think it's fair to say

24  this isn't disputed, I don't think opposing Counsel would

25  dispute it, they, of course, may, but the information, for

1    example, in the Motion for Preliminary Injunction and the

2    information in the Second Amended Complaint are not even close

3    to the same, and so we, Apple, are facing a situation where we

4    will take the disclosure identifying the secrets in this case

5    as soon as we can get it, and if that is after that hearing on

6    the regularly scheduled Motion and that's the best we can do we

7    absolutely will do that.

8             Now in terms of moving --

9             **THE COURT:**  Has Apple produced all of the core

10   technical data that was the subject of Judge Selna's Order last

11   month?  That's to Apple.

12            **MR. LERNER:**  Not only now, and this is kind of

13   ongoing and there's another Motion that you're probably aware

14   of before Judge Selna right now that's, I believe, also an ex

15   parte Motion from the Plaintiff and so I assume they may

16   disagree with us, but the answer to your Honor's question is we

17   do believe we have complied with that Order.

18            The Complaint was amended for new patents and there

19   is information that we believe is due requests which we have

20   been working very hard to gather with our clients, and I think

21   we can demonstrate well that since that Order came down we not

22   only have produced a ton of information including source code,

23   but also regularly updated that in follow-up requests for

24   anything missing we have responded as quickly as we could and

25   worked with the people on our end.  And Judge Selna's Order was

1    not and is not something that we were not taking seriously, so

2    I think, yes, we're in compliance with that part of it.

3         **THE COURT:**  Let me cut to the chase and make sure I'm

4    clear, that's great that you have produced a ton of

5    information, but if it calls for two tons of information I

6    don't necessarily know.

7         Here's what I want to hear from Apple:

8         Has Apple produced everything that Judge Selna

9    ordered relating to the core technical data?

10        **MR. LERNER:**  Our view, yes, we have produced the

11   documents that he ordered.  And I don't want to not answer your

12   question, but I do think it's relevant.  I think there is a

13   piece here which is there have been follow-up requests and --

14   yes --

15        **THE COURT:**  I understand -- let me say this, let me

16   stop you for a second.  I understand the Second Amended

17   Complaint and the parties can dispute how much it changed or

18   didn't change things referring to different patents and whether

19   that's subsumed in the prior Order.  I'm not concerned about

20   that.

21        I just want to know if based -- at the time Judge

22   Selna entered the Order has Apple produced everything that

23   Judge Selna ordered to be produced?

24        **MR. LERNER:**  Our position is yes, your Honor.

25        **THE COURT:**  All right.  Let me hear from Plaintiffs

21

1    on that question.

2            Has Apple produced everything that Judge Selna

3    ordered as of the date of that Order, leaving aside whether

4    things have changed in light of the Second Amended Complaint?

5    Has Apple produced everything that Judge Selna ordered as of

6    the date of that Order?

7            **MR. SPEAKER:**  Our position is absolutely not, your

8    Honor, not even close.

9            **THE COURT:**  What have they not -- if you're able to

10   be that definitive tell me specifically and if we need to --

11           **MR. SPEAKER:**  Yes.  There are --

12           **THE COURT:**  -- let me just -- hold on a second.  If

13   we need to --

14           **MR. SPEAKER:**  Okay.

15           **THE COURT:**  -- go with a confidential portion of this

16   proceeding alert me ahead of time and we'll designate the

17   transcript confidential.

18           **MR. SPEAKER:**  Yeah, and I don't have those kinds of

19   details in front of me, and if you want to know exactly if

20   there is a Motion that is --

21           **THE COURT:**  If I could interrupt you again, since

22   we're not here in court I need you to state your name when you

23   speak.

24           **MR. JENSEN:**  Right.  Oh, okay, sorry, this is Steve

25   Jensen.

1        There is a subsequent Motion which briefs the

2   deficiencies that we believe were in a place when Apple did not

3   comply with the Judge's Order to provide those core technical

4   documents in five days.  In fact, there were about 30 documents

5   which were produced and there was some source code.  We

6   immediately identified the deficiencies that were on the list.

7   Apple said they would look into it.  Two weeks later they were

8   still looking into it.

9        We did try to work through those things.  Judge Selna

10  had invited us to re-weigh the issue if the production was

11  insufficient.  That Motion, unfortunately, it's another Motion,

12  is briefed before Judge Selna asking that he, again, order them

13  to produce those documents.

14       Now they have subsequently agreed to looking into and

15  produce, there's a long list and it's very specific, of the

16  things we're asking for.  That correspondence has been from my

17  partner, Perry Oldham, and I think Brian Andrea who, I think,

18  have been dealing with the patent side of this case.  But we

19  strongly believe they have not complied with that, and we are

20  seeking those and trying to get those documents from them.

21       Once we filed the subsequent Motion we started

22  getting some additional documents from them.

23       **THE COURT:**  All right, so you strongly, "you" meaning

24  the Plaintiffs, strongly believe that Apple is --

25       **MR. JENSEN:**  Yes.

1          **THE COURT:**  -- has not produced the documents

2   required by Judge Selna.

3          You just heard Apple say they -- and Apple disagrees,

4   they think they have complied.

5          **MR. JENSEN:**  Yes.

6          **THE COURT:**  The flip side is, totally different

7   issue, one before -- that one before Judge Selna, now a Motion

8   before me where Apple strongly believes that Plaintiffs have

9   been "playing games," Apple's words, with the 2019 disclosure

10  or lack thereof, and has pointed me to a series of emails

11  which, for lack of a better term, look like a process of

12  stringing along, and Plaintiffs disagree that they have any

13  obligation to make a 2019 disclosure right now.  So you're at

14  loggerheads on the Motion before me; you're at loggerheads on

15  the ex parte application before Judge Selna, each side taking a

16  different view of the other side's recalcitrance.

17         Can you folks step back for a minute and see whether

18  there's a way to pick a date where Apple finishes its review

19  and produces whatever technical data that Plaintiffs claim

20  hasn't been produced in the matter that's sitting on Judge

21  Selna's desk, along with scores of other matters sitting on

22  Judge Selna's desk.  And I'm not kidding, I go up there

23  sometimes and he's got stuff stacked on the floor; he's got

24  stuff all over the place.  He's not in right now, but was in

25  earlier today, and we have got a Motion before me, thankfully

24

1    not anywhere near as difficult, I don't have the burdens that

2    he does of working criminal trials and finding a way to do this

3    and, frankly, I think this Motion before me, I'll be able to

4    get out a ruling on it, neither side is probably going to like

5    what the ruling says, but I'll be able to get a ruling out on

6    it.  But we've got loggerheads on production of information,

7    confidential, sensitive trade secret technical information, and

8    they both have been thrown into court for the Court to

9    determine.

10          By the way, probably the worst group of people to

11   make these determinations, Judge Selna is much smarter than I

12   am, but neither one of us knows the technology like your two

13   firms and your two clients know.  Neither one of us know what

14   you really need to prepare your case for Motions, for trial.

15          What both Judge Selna and I can do is smell out

16   gamesmanship and can make findings on that.

17          But what I think, again, I'm here to help, I'm not

18   going to order anything, but what I think you two sides really

19   ought to do is see whether you can take a break for a moment,

20   take a deep breath --

21          I know you've got a Motion for Preliminary

22   Injunction, a very important Motion pending, and you've got

23   another Motion to Dismiss pending.  Even if I order everything

24   that Apple wants it's not going to come until weeks after the

25   Motion for Preliminary Injunction is heard.

1          Why don't you two hold off on throwing stuff into

2    court for a while, try a little harder to work stuff out.  Try

3    a little harder to figure out what you really need and what's

4    really being withheld, and if you can't come back, but maybe

5    you can.  I actually think you can.  I look at this and I --

6    although I see a lot of difficulty I think you both know what's

7    going on.  Both of your firms have been on both sides of patent

8    cases, you know what's happening, you know what each side's

9    reasoning behind different things is, take some time, talk

10   amongst yourselves to see whether you can resolve these two

11   things working together in tandem at the same time.

12          Tell me what you think about that, and I'm going to

13   start with Plaintiff, even though they're not the moving party

14   on the Motion in front of me, I'm going to start with

15   Mr. Jensen.

16          **MR. JENSEN:**  Thank you, your Honor.  And, look, we

17   take your workload and what you're saying here very seriously

18   as we did in the Order that you issued the other day.

19          I think what you're suggesting is a fantastic

20   suggestion and we welcome it.  I was not on the phone, but I

21   understand that when they were asking for the 2019 earlier we

22   made a suggestion that we agreed to a mutual exchange date of

23   that.  So I think that, you know, when we get --

24   (indiscernible) for these cases the parties should be able to

25   negotiate, work things out, do a little horse trading and get

26

1   the case moving.  I couldn't agree with you more, your Honor,

2   and so we are more than happy to try to engage in that process

3   the best we can and still represent our clients as well, and I

4   welcome it.  I think it's -- and I know that at least I wasn't

5   on the call, but I know we tried something similar to those

6   before this 2019 thing got out of hand.

7           THE COURT:  I'm going to ask you not to point fingers

8   here, all right?

9           MR. JENSEN:  Okay.

10          THE COURT:  I'm going to turn to -- is it going to be

11  Mr. Lerner or Ms. Samplin to make their response on behalf of

12  Apple?

13          MR. LERNER:  Thank you, your Honor, Joshua Lerner and

14  Ilissa will definitely correct me if I get it wrong in speaking

15  for both of us.

16          But I obviously hear your guidance and it makes sense

17  and we obviously will follow up with the Plaintiff here and

18  appreciate the Court's thinking on it and suggestions.

19          THE COURT:  Well, I want to know, can we do something

20  right now?  You don't need to stroke my ego, whatever ego I get

21  gets knocked off my shoulder the moment I cross the threshold

22  of my own front door.  Let's try to work something out right

23  now, something procedurally where we've got two pending

24  Motions, one ex parte, one in front of Judge Selna, this one in

25  front of me.  Can we come up with a procedural mechanism where

1   you let Judge Selna know "Hey, Judge, let's give that a break.

2   We talked about it with Judge Early, there's a separate Motion,

3   we're going to try to work this out for a week and see what we

4   can do."

5        Tell me if that's something you can agree to right

6   now.

7        **MR. LERNER:**  And I apologize for being dense, your

8   Honor.  You just mean communicating to both Judge Selna and

9   obviously yourself that we should put those Motions on hold

10  while the parties meet and confer on it and try and reach an

11  agreement as you discussed?

12       **THE COURT:**  Yes.  Yes.

13       **MR. LERNER:**  And, again, apologies for being dense.

14       **THE COURT:**  No, you're not being dense.  What I'm

15  trying to avoid is turning Judge Selna into Andrew Jackson and

16  have him fight the battle of New Orleans after the war is over.

17  If we can --

18       I don't know where he stands.  It might actually be

19  in for docketing right now or a ruling on the ex parte, I don't

20  know.  But if I say "Okay, you two see if you can talk about it

21  for a little bit," and it takes you -- we're now Wednesday and

22  you can't figure anything out until, you know, we've got a

23  three-day weekend coming up, there's a good chance Judge

24  Selna's going to rule on it and so you'll -- one side will be

25  very unhappy and kicking themselves and the other side who

28

1  winds up winning that is going to be glad that they didn't work

2  it out, but my suggestion is let's see if we can do something

3  right now where we put something on the docket and I try to get

4  ahold of Judge Selna or his chambers and let them know that

5  we're going to put a hold on that and see if you folks can work

6  it out.  Tell me what you think.

7         **MR. LERNER:**  Yes, that makes sense and apologies

8  again for being slow on that.

9         **THE COURT:**  So on behalf of Apple do you agree that I

10  can issue a Minute Order based on today's call that the parties

11  agree that this Motion that I referred to, it's Docket Number

12  169, and the ex parte that Plaintiff filed that's in front of

13  Judge Selna relating to the alleged failure to comply with his

14  July Order, that from Apple's standpoint I can issue an Order

15  and advise Judge Selna the parties agree to, for seven days,

16  hold those Motions in abeyance while the parties attempt to

17  resolve the issues therein.

18         Is that agreeable on behalf of Apple, Mr. Lerner?

19         **MR. LERNER:**  Yes.  Yes.

20         **THE COURT:**  And, Mr. Jensen, do you need me to repeat

21  that or can I just ask is that agreeable on behalf of

22  Plaintiffs?

23         **MR. JENSEN:**  No.  That's agreeable to Plaintiff.

24  (indiscernible)

25         **THE COURT:**  All right.  So what I'm going to do is

1    I'm going to go back into my chambers and write something up

2    very quickly and try to get ahold of Judge Selna's chambers.

3    And what's going to happen from you is you're going to be

4    required on September 9th, by noon, to advise the Court by way

5    of -- I'm going to ask Plaintiff to do it, but maybe I'm

6    expecting too much that I won't then get a counter-response

7    from Defendant, simply advising whether the Motions have been

8    resolved, the ex parte application and the Motions have been

9    resolved, or advising that they haven't been resolved.  No

10   argumentation, I don't need anything else, I just need a one

11   sentence statement that the Motions have been resolved and are

12   no longer needed to be determined by the Courts, or they

13   haven't been resolved.  Is that agreeable, Mr. Jensen?

14          **MR. JENSEN:**  That's agreeable.

15          **THE COURT:**  All right.  So I'm not going to waste any

16   more time, I'm going to go back and write something up and try

17   to get ahold of Judge Selna.

18          In the meantime I'm hoping that you folks can try to

19   work through these things.  I think it's going to be in your

20   best long term interests to do that.

21          But is there anything further?  Since I called it I

22   don't have anything further.  Is there anything further from --

23   on behalf of Plaintiffs with respect to what we've talked about

24   today?

25          **MR. JENSEN:**  Nothing from Plaintiffs, your Honor.

1          **THE COURT:**  And from the Defense?

2          **MR. LERNER:**  Nothing else from me, your Honor, except

3    one (indiscernible), what you mentioned, and hopefully it would

4    be avoided anyways, but should this submission on the 9th be

5    joint?  Just do the parties need to agree on it?  If not back

6    and forth or anything else?

7          **THE COURT:**  The only reason why I didn't want it to

8    be joint is I don't want you spending five hours going back and

9    forth on a one sentence submission.  So, listen, Plaintiffs

10   are --

11         **MR. LERNER:**  Okay.

12         **THE COURT:**  -- directed to file that one sentence

13   submission by noon on September 9th.

14         Defendants, should they desire, are permitted to file

15   a one sentence response to that by 1:00 p.m. on September 9th.

16         I don't want to add anymore because the more I add

17   the longer my Order gets and the greater the likelihood that

18   something from Judge Selna on the earlier ex parte hits the

19   docket, all right?

20         **MR. JENSEN:**  And my goal, your Honor -- this is

21   Mr. Jensen, my goal would be that our filing will not elicit a

22   response from Apple.  How's that?

23         **THE COURT:**  All right, I've got it and we, obviously,

24   can't make any promises so that's going to be --

25         **MR. JENSEN:**  Correct.  Correct.

1          **THE COURT:**  -- my Order and I'm going to let you

2     folks go so you have plenty of time to work on it.  And it

3     doesn't --

4          With respect to Judge Selna, what's in front of him

5     it doesn't change anything, you'll just let him know that he

6     can issue an Order.

7          With respect to me your Supplemental Memoranda are

8     due the following day on the 10th so you'll know by noon on the

9     9th whether you need to file a Supplemental Memoranda on the

10    pending Motion before me.

11         All right?

12         **MR. JENSEN:**  And just a clarification on that just so

13    I'm clear, we're not doing anything with Judge Selna now,

14    you're going to take care of that, right?  We're just doing the

15    thing a week from now to let us -- right?

16         **THE COURT:**  I'm going to issue an Order and I'm going

17    to try to reach him to let him know.

18         **MR. JENSEN:**  Okay.

19         **THE COURT:**  All right?

20         **MR. JENSEN:**  All right, sounds great.

21         **THE COURT:**  All right.

22         **MR. JENSEN:**  Thank you.

23         **THE COURT:**  Thank you.  We're adjourned.

24         **MR. LERNER:**  Thank you, your Honor.

25         **MS. SAMPLIN:**  Thank you, your Honor.

(This proceeding was adjourned at 3:45 p.m.)


## CERTIFICATION


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.



_____                    **September 9, 2020**

            Signed                                          Dated


*TONI HUDSON, TRANSCRIBER*