JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendants. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS** <br><br> **Hearing:** <br> Date:    October 19, 2020 <br> Time:    1:30 p.m. <br> Place:    Courtroom 10C <br> Judge:    Hon. James V. Selna |

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS
CASE NO. 8:20-CV-00048-JVS (JDEx)

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................. 2

    A.    The Case Is in Its Early Stages ................................................................. 2

    B.    The IPR Petitions Will Significantly Narrow the Issues in This
        Case ......................................................................................................... 5

III. LEGAL STANDARD ........................................................................................ 6

IV. ARGUMENT ..................................................................................................... 7

    A.    Factor 1:  The Early Stages of the Patent Infringement Case Favor a
        Stay .......................................................................................................... 8

    B.    Factor 2:  A Stay of the Patent Infringement Case Is Likely to
        Narrow the Issues and Conserve the Parties' and the Court's
        Resources .............................................................................................. 10

    C.    Factor 3:  A Stay Will Not Prejudice Plaintiffs ...................................... 14

        1.    Plaintiffs Will Not Suffer Prejudice or a Tactical
            Disadvantage from a Stay of the Patent Infringement Case .......... 14

        2.    Plaintiffs Will Not Suffer Prejudice or a Tactical
            Disadvantage No Matter What Happens with the Trade
            Secret Case ................................................................................... 19

V. CONCLUSION ................................................................................................. 22

i

Gibson, Dunn &
Crutcher LLP

1

# TABLE OF AUTHORITIES

Page(s)

### Cases

*Allergan Inc. v. Cayman Chem. Co.*,
 No. SACV 07–01316 JVS (RNBx), 2009 WL 8591844 (C.D. Cal. Apr. 9, 2009) ............................................................................................... 7

*Aten Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*,
 No. CV 09-0943 AG, 2010 WL 1462110 (C.D. Cal. Apr. 12, 2010) .......... 7, 8, 9, 10

*Aylus Networks, Inc. v. Apple Inc.*,
 856 F.3d 1353 (Fed. Cir. 2017) ........................................................... 11

*Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*,
 No. SACV131880JLSRNBX, 2014 WL 12854129 (C.D. Cal. May 20, 2014) ............................................................................................... 21

*Blast Motion, Inc. v. Zepp Labs, Inc.*,
 No. 15-CV-700 JLS (NLS), 2016 WL 5107678 (S.D. Cal. Mar. 29, 2016) ............................................................................................... 12

*Clinton v. Jones*,
 520 U.S. 681 (1997) ........................................................................... 6

*Core Optical Techs., LLC v. Fujitsu Network Commc'ns, Inc.*,
 No. SACV1600437AGJPRX, 2016 WL 7507760 (C.D. Cal. Sept. 12, 2016) .............................................................. 8, 9, 10, 13, 15, 17, 18

*In re Cygnus Telecomms. Tech., LLC Patent Litig.*,
 385 F. Supp. 2d 1022 (N.D. Cal. 2005) .................................................. 6

*Delphix Corp. v. Actifio, Inc.*,
 No. 13-CV-04613-BLF, 2014 WL 6068407 (N.D. Cal. Nov. 13, 2014) ........... 20, 21

*Delphix Corp. v. Actifio, Inc.*,
 No. 13-CV-04613-BLF, 2015 WL 4129166 (N.D. Cal. July 8, 2015) .................. 21

*Ethicon, Inc. v. Quigg*,
 849 F.2d 1422 (Fed. Cir. 1988) ............................................................ 6

*Evolutionary Intelligence LLC v. Yelp, Inc.*,
 No. C-13-003587 DMR, 2013 WL 6672451 (N.D. Cal. Dec. 18, 2013) ................ 14

ii

Gibson, Dunn & Crutcher LLP

*Gould v. Control Laser Corp.*,
705 F.2d 1340 (Fed. Cir. 1983) ................................................................. 6

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
No. 14-CV-00876-RS, 2015 WL 13727876 (N.D. Cal. Mar. 30, 2015)............ 12, 17

*Limestone v. Micron Tech.*,
No. CV 15-0278-DOC, 2016 WL 3598109 (C.D. Cal. Jan. 12, 2016) .......... 7, 10, 13

*Lodge Mfg. Co. v. Gibson Overseas, Inc.*,
No. CV188085PSGGJSX, 2019 WL 9443180 (C.D. Cal. Sept. 24, 2019) ................................................................................................... 21

*Nichia Corp. v. Vizio, Inc.*,
No. SACV1600545SJOMRWX, 2017 WL 3485767 (C.D. Cal. Feb. 2, 2017) ................................................................................................... 17

*PersonalWeb Techs., LLC v. Facebook, Inc.*,
No. 5:13-CV-01356-EJD, 2014 WL 116340 (N.D. Cal. Jan. 13, 2014)............ 11, 14

*Pi-Net Int'l, Inc. v. The Hertz Corp.*,
No. 12-cv-10112 PSG, 2013 WL 7158011 (C.D. Cal. June 5, 2013) ...................... 17

*Purecircle USA Inc. v. SweeGen, Inc.*,
No. SACV181679JVSJDEX, 2019 WL 3220021 (C.D. Cal. June 3, 2019) ...................................................................................... 8, 9, 13, 14, 17

*Select Comfort Corp. v. Tempur Sealy Int'l*,
No. 14-245, 2014 U.S. Dist. LEXIS 183450 (D. Minn. Oct. 10, 2014)................... 12

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*,
No. SACV 12-21-JST, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012) ............ 8, 9, 17

*Space Data Corp. v. Alphabet Inc.*,
No. 16-CV-03260-BLF, 2019 WL 1131420 (N.D. Cal. Mar. 12, 2019) ................ 22

*Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*,
No. C-94-20775 RPA (EAI), 1995 WL 20470 (N.D. Cal. Jan. 13, 1995) ................................................................................................... 11

*TAS Energy, Inc. v. San Diego Gas & Elec. Co.*,
No. 12CV2777-GPC BGS, 2014 WL 794215 (S.D. Cal. Feb. 26, 2014)................ 17

Gibson, Dunn &
Crutcher LLP

*Tierravision, Inc. v. Google, Inc.*,
    No. 11-cv-2170 DMS (BGS), 2012 WL 559993 (S.D. Cal. Feb. 21,
    2012) .................................................................................................. 8

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    943 F. Supp. 2d 1028 (C.D. Cal. 2013) ................................................ 7

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014) ........................................................ 8

*Wonderland Nursery Goods Co. v. Baby Trend, Inc.*,
    No. EDCV 14-01153-VAP, 2015 WL 1809309 (C.D. Cal. Apr. 20,
    2015) ................................................................................................ 13

**Statutes**

35 U.S.C. § 314(b) .................................................................................. 6

35 U.S.C. § 315(b) .................................................................................. 5

35 U.S.C. § 315(e)(2) ............................................................................ 11

35 U.S.C. § 316(a)(11) ...................................................................... 6, 18

**Regulations**

37 C.F.R. § 42.107(b) .............................................................................. 6

**Other Authorities**

About Us, Cercacor, https://www.cercacor.com/pages/about-us ................................. 15

Apple Inc. 2019 Form 10-K at 1–2, Apple,
    https://d18rn0p25nwr6d.cloudfront.net/CIK-0000320193/1a919118-
    a594-44f3-92f0-4ecca47b1a7d.pdf .......................................................... 16

Company Profile, Masimo, https://investor.masimo.com/company-
    profile/default.aspx ............................................................................ 15

Letter from Angela C. Krueger, Deputy Director, Office of Device
    Evaluation, FDA, to Apple Inc. (Sept. 11, 2018),
    https://www.accessdata.fda.gov/cdrh_docs/pdf18/DEN180044.pdf ..................... 16

Gibson, Dunn &
Crutcher LLP

Masimo Corp. Form 10-Q (Quarterly Report for the quarterly period ended June 27, 2020), https://d18rn0p25nwr6d.cloudfront.net/CIK-0000937556/331042c3-78cb-4e62-b997-62690c670ebb.pdf ................................16

Masimo Reports Second Quarter 2020 Financial Results, News Details, Masimo, https://investor.masimo.com/news/news-details/2020/Masimo-Reports-Second-Quarter-2020-Financial-Results/default.aspx ................................................................15

Gibson, Dunn & Crutcher LLP

# I. INTRODUCTION

Defendant Apple Inc. ("Apple") respectfully moves this Court to stay at least the present patent infringement causes of action in this case pending final disposition of Apple's petitions for *Inter Partes* Review ("IPR") challenging all asserted claims of the twelve asserted patents before the Patent Trial and Appeal Board ("PTAB").  Apple already filed IPR petitions challenging all asserted claims of the seven asserted patents that were in the First Amended Complaint, and expects to file IPR petitions against all asserted claims of the five patents newly asserted in the Second Amended Complaint before the noticed hearing for this Motion.  Apple expects the PTAB to issue Final Written Decisions on the IPRs before the trial date in this case.

All three of the relevant factors here weigh in favor of a stay of the patent infringement case:

**First**, the patent infringement case has barely begun.  The parties have not yet completed their exchange of infringement and invalidity contentions; the last contentions are not due until mid-November.  Fact discovery has only recently begun; no depositions have been noticed, source code review has just begun, claim construction is months away, and fact discovery cut-off is not for another ten months.  Indeed, five of the twelve asserted patents were added to this case less than two months ago.  Expert discovery will not begin for another year.  In sum, the parties and the Court still have far more work ahead of them on the patent infringement case than behind them.

**Second**, Apple's IPR petitions are likely to materially limit the scope of the issues before the Court—and may dispose of the patent infringement case entirely—which will undoubtedly reduce wasted resources for the parties and the Court.  If the IPRs successfully invalidate any challenged claim, the Court will have no further work on that claim.  If any claims survive, Apple will be estopped from the grounds it raised or reasonably could have raised in the IPR, and the litigation related to such claims will have been substantially narrowed.  Moreover, if any claims survive, the scope of the claims will likely have been narrowed to distinguish prior art.  Thus, resolution of the

1

Gibson, Dunn & Crutcher LLP

Defendant Apple Inc.'s Memorandum of Points and Authorities in Support of Its Motion to Stay the Patent Infringement Case Pending *Inter Partes* Review Proceedings
CASE NO. 8:20-cv-00048-JVS (JDEx)

IPRs, regardless of the result, will result in elimination—or at least significant simplification—of the patent infringement case here.

*Third*, Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. ("Plaintiffs") will not suffer undue prejudice from a stay because Plaintiffs and Apple are not direct competitors, Apple promptly filed its IPR petitions and this Motion, and any harm to Plaintiffs from staying the patent infringement case here can be compensated through monetary damages.   Plaintiffs also will not be tactically disadvantaged because the case will be stayed at a logical stopping point—in the early stages of fact discovery, before exchanges of contentions are complete and before claim construction or expert discovery has even commenced.  The patent infringement case can easily be restarted should Plaintiffs prevail in the PTAB.  On the other hand, if the case is not stayed and any claims survive the IPRs, claim construction would likely need to be reopened to take account of arguments made during the IPRs.  Finally, the trade secret, patent inventorship, and patent ownership claims in this action do not weigh against granting a stay.  To the contrary, Plaintiffs strenuously contend that the trade secret case[1] is separate from their patent claims.  Therefore, it should not be inefficient to move those distinct claims forward.  Even if there were some risk of overlap, courts routinely stay both patent and trade secret claims, and that is an option available to the Court here.

Accordingly, the Court should grant Apple's request to stay at least the patent infringement portion of the present action pending resolution of Apple's IPR petitions.

## II.  BACKGROUND

### A.    The Case Is in Its Early Stages

Trial is not set to commence in this action until April 5, 2022—still over a year and a half away.  ECF 37 at 1 (Order re Scheduling Dates).  As set forth in more detail

---

[1]  Because Plaintiffs' patent inventorship and ownership claims are based on the same underlying facts as their trade secret misappropriation claim (i.e., that Lamego obtained Plaintiffs' information and used it for Apple's benefit, *see, e.g.*, SAC ¶¶ 233–34, 245), for simplicity, Apple will refer to all of these claims as the "trade secret case."

below, Apple reasonably expects that the PTAB will decide the IPRs before the trial date.

Expert discovery is still a year away, scheduled to begin on September 6, 2021. ECF 33 at 24 (Joint Rule 26(f) Report).  No depositions have been noticed or scheduled. *See* Declaration of Brian A. Rosenthal ("Rosenthal Decl.") ¶ 5.  Indeed, the parties have only just started to exchange fact discovery requests and documents.

The patents asserted in this case also changed significantly less than two months ago.  Plaintiffs filed their original Complaint against Apple on January 9, 2020, alleging infringement of ten patents:   U.S. Patent Nos. 10,258,265 ("the '265 patent"), 10,258,266 ("the '266 patent"), 10,292,628 ("the '628 patent"), 10,299,708 ("the '708 patent"), 10,376,190 ("the '190 patent"), 10,376,191 ("the '191 patent"), 10,470,695 ("the '695 patent"), 6,771,994 ("the '994 patent"), 8,457,703 ("the '703 patent"), and 10,433,776 ("the '776 patent").  ECF 1.  After Apple moved to dismiss Plaintiffs' original Complaint, Plaintiffs filed a First Amended Complaint ("FAC") on March 25, 2020, alleging infringement of two additional patents:  U.S. Patent Nos. 10,588,553 ("the '553 patent") and 10,588,554 ("the '554 patent").  ECF 28.  On July 24, 2020, after the Court granted Apple's Motion to Dismiss with leave to amend (ECF 60 at 8), Plaintiffs filed a Second Amended Complaint ("SAC"), removing from the case five of the previously-asserted patents (the '266, '708, '190, '191, and '695 patents) and adding allegations of infringement of five new patents:  U.S. Patent Nos. 10,624,564 ("the '564 patent"), 10,631,765 ("the '765 patent"), 10,702,194 ("the '194 patent"), 10,702,195 ("the '195 patent"), and 10,709,366 ("the '366 patent").  ECF 88-2.  All of the five newly asserted patents are in the same family as the '265, '628, '553, and '554 patents.  Accordingly, Plaintiffs currently assert twelve patents against Apple in the patent infringement case:  five of the originally asserted patents (the '265, '628, '994, '703, and '776 patents), two patents asserted for the first time in the FAC (the '553 and '554

1   patents), and five patents asserted for the first time in the SAC (the '564, '765, '194,

2   '195, and '366 patents) (collectively, the "Asserted Patents").[2]

3    Moreover, the parties have yet to complete the exchange of preliminary patent

4   contentions.   On June 15, 2020, Apple produced publicly available core technical

5   documents.  *See* Rosenthal Decl. ¶ 6.  On July 10, 2020, the Court stated that production

6   of confidential documents in the patent infringement case should move forward even

7   though the trade secret case is stayed.  *See* July 10, 2020 Hr'g Tr. (Rosenthal Decl. Ex.

8   A) at 12:10–19.   Accordingly, on July 16, 2020, Apple produced additional highly

9   confidential core technical documents sufficient to show the structure and operation of

10  all accused features of the accused products in the FAC.  ECF 85 at 2; Rosenthal Decl.

11  ¶ 8.   Plaintiffs then served preliminary infringement contentions on July 27, 2020,

12  alleging infringement of 245 claims across the twelve asserted patents.  *Id.* ¶ 10 & Ex.

13  B, at 18–19.  On July 29, 2020, the Court extended the deadline for Plaintiffs to serve

14  preliminary infringement contentions until 42 days from the completion of Apple's

15  production of core technical documents; the parties have since fixed the deadline for

16  Plaintiffs' infringement contentions to be November 13, 2020.  ECF 92.  On August 6,

17  2020, the Court extended the due date for Apple to serve its invalidity contentions for

18  the five patents newly asserted in the SAC by 45 days to October 22, 2020.  ECF 96.

19  Apple served its invalidity contentions for seven of the twelve Asserted Patents on

20  September 8, 2020.  Rosenthal Decl. ¶ 11.  Thus, the exchange of patent contentions is

21  still underway and will not be complete until mid-November.

22   The trade secret case is even less developed.  As Plaintiffs recently argued, the

23  pleadings are still open, and Apple therefore has neither answered nor asserted any

24  counterclaims.  *See* ECF 169-1 at 5–6; *see also id.* at 21 (Plaintiffs arguing that "this is

25  clearly not the 'eve of trial'" because "Apple has not even answered the Complaint, and

---

27  [2] On August 14, 2020, Apple moved to dismiss the amended trade secret
    misappropriation cause of action in the SAC.  ECF 104.  Per agreement of the parties
28  and the Court's Orders extending Apple's time to do so, Apple has not yet answered any
    complaint in this action.  *See* ECF 31, 70.

Gibson, Dunn &
Crutcher LLP

1  trial is not scheduled until April 2022" (emphasis removed)).  Plaintiffs also have yet to

2  provide any description of their alleged trade secrets pursuant to California Code of Civil

3  Procedure Section 2019.210 ("Section 2019.210"), which they only recently agreed to

4  provide by October 9, 2020.  Rosenthal Decl. ¶ 18.  And finally, the Court recently

5  issued a tentative ruling denying Plaintiffs motion for a preliminary injunction based on

6  failure to show irreparable harm.  In sum, there is nothing in the nascent trade secret

7  claim that weighs against a stay—and certainly not against a stay of the patent

8  infringement claims.

9  **B.     The IPR Petitions Will Significantly Narrow the Issues in This Case**

10  Apple's IPR petitions challenge—or will challenge in the case of five newly

11  asserted patents—***all*** 245 of the asserted claims of ***all*** twelve of the Asserted Patents.[3]

12  Specifically, on August 31, 2020, Apple filed IPR petitions challenging all asserted

13  claims of the '265 patent (IPR2020-01520), the '776 patent (IPR2020-01524), the '994

14  patent (IPR2020-01526), and the '553 patent (IPR2020-01536 and IPR2020-01537).  On

15  September 2, 2020, Apple filed IPR petitions challenging all claims of the '554 patent

16  (IPR2020-01538 and IPR2020-01539) and all claims of the '628 patent (IPR2020-

17  01521).  On September 9, 2020, Apple filed an IPR petition challenging all asserted

18  claims of the '703 patent (IPR2020-01523).  These petitions are attached to the

19  Rosenthal Declaration as Exhibits C–K.  Thus, Apple has already filed IPR petitions

20  challenging the seven Asserted Patents that were included in the original Complaint and

21  the FAC.  These IPRs were filed within eight months of the original Complaint, and four

22  months before the one-year statutory bar for filing.  *See* 35 U.S.C. § 315(b).

23  With respect to the five newly asserted patents in the SAC, Apple expects to file

24  IPR petitions challenging at least all asserted claims of those patents before the noticed

25  hearing for this Motion.  *Id.* ¶ 16.  Apple will file these IPR petitions in short order even

26  —————————————————

27  [3]  Because Plaintiffs have served only preliminary infringement contentions in which
they allege that Apple infringes "at least" the 245 identified claims (Rosenthal Decl. Ex.

28  B, at 18–19), Apple's petitions also seek review of additional claims of the Asserted
Patents that have not been asserted in this case (*see* Rosenthal Decl. Exs. C–K).

5

though all five patents were added to the case *less than two months* ago on July 24, 2020.  ECF 88-2.  Indeed, three of the five new patents did not even issue until July of this year (the '194, '195, and '366 patents), and the other two issued only in April of this year (the '564 and '765 patents).  Apple has moved quickly to ensure that the validity of *all* asserted claims of *all* Asserted Patents will be at issue before the PTAB.  Thus, because Apple's IPR petitions will all be on file before the noticed hearing on this Motion, Apple is bringing this Motion now to act promptly to save the Court's and the parties' time and resources that would otherwise be wasted by additional delay.

As part of its IPR petitions, Apple has stipulated to Plaintiffs that, if the PTAB institutes on any ground raised in the IPR petitions, Apple will not assert that same ground against the corresponding claims in this litigation.  Rosenthal Decl. ¶ 17 & Exs. L–R.  Apple will make a similar stipulation in advance of filing the IPR petitions challenging the five new patents.  *Id.* ¶ 17.

The PTAB will decide whether to institute Apple's IPR petitions approximately six months after filing.  *See* 35 U.S.C. § 314(b); 37 C.F.R. § 42.107(b).  Apple therefore expects the institution decisions for the IPR petitions challenging all twelve patents by March 2021.  The PTAB's Final Written Decisions must issue no later than one year later, roughly by March 2022, before the scheduled trial date in this action (April 5, 2022).  *See* 35 U.S.C. § 316(a)(11); ECF 37 at 1.

### III.  LEGAL STANDARD

A district court has broad discretion and authority to manage its docket and to stay a case pending IPR proceedings.  *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988).  A stay pending patent office proceedings may be "particularly justified where the outcome of the [proceeding] would be likely to assist the court in determining patent validity and, if the claims were cancelled in the [proceeding], would eliminate the need to try the infringement issue."  *In re Cygnus Telecomms. Tech., LLC Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) (citing *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983)).

6

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS CASE NO. 8:20-CV-00048-JVS (JDEX)

Courts in this District often grant stays in these circumstances in light of the "liberal policy in favor of granting motions to stay proceedings pending the outcome of [IPR proceedings], especially in cases that are still in the initial stages of litigation and where there has been little or no discovery." *Limestone v. Micron Tech.*, No. CV 15-0278-DOC (RNBx), 2016 WL 3598109, at *2 (C.D. Cal. Jan. 12, 2016) (quoting *Aten Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*, No. CV 09-0943 AG (MLGx), 2010 WL 1462110, at *6 (C.D. Cal. Apr. 12, 2010)).

To determine whether to stay a case pending IPR proceedings, courts in this District consider three factors: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030–31 (C.D. Cal. 2013) (quoting *Aten Int'l*, 2010 WL 1462110, at *6). Ultimately, "the totality of the circumstances governs." *Limestone*, 2016 WL 3598109, at *2 (quoting *Allergan Inc. v. Cayman Chem. Co.*, No. SACV 07–01316 JVS (RNBx), 2009 WL 8591844, at *2 (C.D. Cal. Apr. 9, 2009)).

## IV. ARGUMENT

Each of the three factors noted above favors staying the patent infringement case here. First, this case is in its earliest stage of proceedings because fact discovery has just commenced and is not due to be completed for months, claim construction and expert discovery have not begun, and the parties have not yet completed their exchange of basic invalidity and infringement contentions. Second, the IPR petitions are likely to narrow—or entirely dispose of—the patent infringement issues in this case because they will address all 245 asserted claims. Third, a stay would not prejudice Plaintiffs or provide an unfair advantage to Apple because the parties are not direct competitors and Apple filed its IPR petitions as expeditiously as possible. Apple addresses each factor below.

Gibson, Dunn & Crutcher LLP

7

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS CASE NO. 8:20-CV-00048-JVS (JDEX)

**A.      Factor 1:  The Early Stages of the Patent Infringement Case Favor a Stay**

The very early stages of the patent infringement case strongly favor a stay.  In determining whether the first factor favors a stay, this Court considers "the progress of discovery, the status of claim construction, and whether a trial date has been set." Minute Order Regarding Motion to Stay at 3, *Polaris PowerLED Techs., LLC v. LG Elecs., Inc.*, No. 8:20-CV-00125-JVS (DFMx), Dkt. No. 47 (C. D. Cal. Aug. 26, 2020) ("*LG Elecs. Order*").[4]  This Court has held that a case is in the early stages of litigation and granted a stay when, for example, "no depositions have been taken," "no expert discovery has occurred," and "claim construction is not complete." *Purecircle USA Inc. v. SweeGen, Inc.*, No. SACV181679JVSJDEX, 2019 WL 3220021, at *2 (C.D. Cal. June 3, 2019); *see also LG Elecs. Order* at 3 (finding discovery to be in its early stages where "[n]o depositions have been scheduled," "written discovery is ongoing," "the *Markman* hearing is months away," and "the jury trial is not set until [13 months away]"); *Aten Int'l*, 2010 WL 1462110, at *6 (finding that the litigation was "in its early stages" where "[n]o depositions have been taken, no expert discovery has been propounded, and no claim construction has taken place"); *Core Optical Techs., LLC v. Fujitsu Network Commc'ns, Inc.*, No. SACV1600437AGJPRX, 2016 WL 7507760, at *1 (C.D. Cal. Sept. 12, 2016) ("This case is still in its early stages" because the parties "have not taken any depositions," "have not engaged in expert discovery," and "have not yet submitted Markman briefs[.]").  Thus, the first factor weighs in favor of a stay "where 'there is more work ahead of the parties and the Court than behind.'"  *Purecircle*, 2019 WL 3220021, at *2 (quoting *Tierravision, Inc. v. Google, Inc.*, No. 11-cv-2170 DMS (BGS), 2012 WL 559993, at *2 (S.D. Cal. Feb. 21, 2012)); *see also Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. SACV 12-21-JST (JPRx), 2012 WL 7170593, at *2 (C.D. Cal. Dec. 19, 2012).

---

[4]  The stage of litigation is measured at the time of filing of a motion to stay.  *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316 (Fed. Cir. 2014).

Here, fact discovery has barely begun, and expert discovery is a year away.  The parties have not even completed the exchange of their infringement and invalidity contentions (Apple's invalidity contentions for the five new patents are due on October, 22, 2020, and Plaintiffs' infringement contentions are due on November 13, 2020).  Claim construction exchanges and claim construction briefing have not yet begun and the *Markman* hearing is currently scheduled for five months from now.  The trial date is still almost 19 months away, and Apple has not even filed an Answer.

The posture of this case is similar—or even earlier—than other cases in which this Court and other courts in this District have granted stays.  For example, just like in *Purecircle*, the parties here have only just begun fact discovery, taken no depositions, and propounded no expert discovery.  *See Purecircle*, 2019 WL 3220021, at *2.  Fact discovery closes on July 5, 2021 and expert discovery closes on December 6, 2021— still ten months and fifteen months away, respectively.  ECF 37 at 1; *cf.* Order Regarding Motion to Stay at 3, *Polaris PowerLED Techs., LLC v. TCL Corp.*, No. 8:20-cv-00127-JVS-DFM, Dkt. 36 (C.D. Cal. July 24, 2020) ("*TCL Corp. Order*") (finding that stage of litigation factor "weighs strongly in favor of a stay" where "fact discovery cut-off is not until [8 months away]").

Moreover, just like in *TCL Corp.*, "the parties have not exchanged their positions related to claim construction," and just like in *Core Optical* and *Semiconductor Energy*, claim construction briefing has not yet started.  *TCL Corp. Order* at 3; *Core Optical*, 2016 WL 7507760, at *1; *Semiconductor Energy*, 2012 WL 7170593, at *2; *see also Aten Int'l*, 2010 WL 1462110, at *6.

Finally, similar to *Core Optical*, although a trial date has been set, it is still 19 months away, scheduled to begin on April 5, 2022.  ECF 37 at 1; *Core Optical*, 2016 WL 7507760, at *1; *see also LG Elecs. Order* at 3 (finding that the first factor supports a stay where "the jury trial is not set until [13 months away]"); *TCL Corp. Order* at 3 (same where trial was set for 15 months away); *Purecircle*, 2019 WL 3220021, at *2 (same where trial was scheduled for 10 months away); *Semiconductor Energy*, 2012 WL

9

1  7170593, at \*2 (same where trial was set for 16 months away); *Aten Int'l*, 2010 WL
2  1462110, at \*6 (same where trial was set for 10 months away).

3    In each of the above cases, this Court and other courts in this District found that
4  the litigation was still in its early stages, which weighed in favor of granting a stay.
5  Because the patent infringement case here is likewise still in its early stages (and is even
6  earlier than many of the above cases), this factor strongly favors a stay of the patent
7  infringement case.

8  **B. Factor 2:  A Stay of the Patent Infringement Case Is Likely to Narrow the Issues and Conserve the Parties' and the Court's Resources**
9

10    The potential for simplification of the issues and conservation of judicial
11  resources—including a potentially complete resolution of the parties' patent
12  infringement dispute—also heavily favors a stay.  Apple's IPR petitions will address ***all***
13  of the asserted claims of ***all*** of the Asserted Patents.  Thus, the IPR proceedings have
14  great potential to dispose of all patent infringement issues in this case.  *See LG Elecs.*
15  *Order* at 4 ("[W]here a defendant is actively involved in the IPR process with respect to
16  all of the asserted claims, simplification is likely."); *Limestone*, 2016 WL 3598109, at
17  \*4 ("Because Defendants have petitioned for review of nearly all claims asserted in this
18  action, the outcome of the IPR has the potential to significantly narrow the scope and
19  complexity of the litigation.").  This Court explained in *LG Electronics* the potential for
20  simplification of the issues:

21    If the PTAB cancels all of the asserted claims, this [patent infringement]
22    action will be rendered moot.  Cancellation of only a portion of the asserted
23    claims may still significantly reduce the scope of this litigation.  Furthermore,
24    the record developed during the IPR [proceedings] even if institution is denied
25    could inform the claim construction process.

26  *LG Elecs. Order* at 4; *see also Core Optical*, 2016 WL 7507760, at \*2 (same).

27    Even if one or more claims survive the IPR challenges, Apple will be estopped
28  from raising in this action invalidity grounds that were raised or reasonably could have

10

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS CASE NO. 8:20-CV-00048-JVS (JDEX)

been raised in the IPR proceedings.  *See* 35 U.S.C. § 315(e)(2).  Moreover, Apple has already stipulated that, if the PTAB institutes an IPR proceeding that includes a ground raised in Apple's IPR petitions, Apple will not assert that same ground against the corresponding claims in this litigation.  *See* Rosenthal Decl. ¶ 17 & Exs. L–R.  Thus, even if some claims survive, by definition the case will be narrower, as Apple's invalidity challenges will have been substantially narrowed.  A stay will therefore allow the parties and the Court to avoid wasting resources addressing claims that the PTAB proceedings could—and are likely to—render invalid.

Moreover, staying the patent infringement case now would allow the Court to have the benefit of the PTAB proceedings *before* the Court is required to construe potentially hundreds of claims across twelve patents.  Even if the claims survive the IPR proceedings, it is very likely that Plaintiffs will have made arguments concerning the scope of claims that will inform claim construction.  *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) ("[S]tatements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer."); *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 5:13-CV-01356-EJD, 2014 WL 116340, at *4 (N.D. Cal. Jan. 13, 2014) ("[W]aiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate trial by providing the court with expert opinion of the PTO and clarifying the scope of the claims.") (quoting *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, No. C-94-20775 RPA (EAI), 1995 WL 20470, at *2 (N.D. Cal. Jan. 13, 1995) (alteration in original)).  Thus, the file histories of all of the Asserted Patents—and the scope of their claims—will remain in flux until the IPR proceedings are complete.  The Court should therefore pause the patent infringement case while the PTAB decides these challenges, so that what is left of the patent infringement case after the IPR proceedings—if anything—will be significantly narrower and focused.

Gibson, Dunn &
Crutcher LLP

11
DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION
TO STAY THE PATENT INFRINGEMENT CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS
CASE NO. 8:20-CV-00048-JVS (JDEx)

1    Statistically, there is a high probability that the IPRs will simplify the case by

2    resulting in a determination that some or all of the claims are invalid.  The USPTO's

3    published statistics show that the PTAB has instituted review on approximately 66% of

4    all IPR petitions challenging "Electrical/Computer" patents filed to date that have

5    reached an institution decision.  Rosenthal Decl., Ex. S at 981.  After institution, 80% of

6    the PTAB's Final Written Decisions resulted in the cancellation of some or all of the

7    reviewed claims, and 62% resulted in the cancellation of all claims instituted for review.

8    *Id.*, Ex. S at 985.

9    The statistics make an even stronger argument for a stay when looking only at

10   Apple's IPR petitions.   Among all IPR petitions filed by Apple that reached the

11   institution stage, 73% (338 out of 464 petitions) were granted for review.  *Id.*, Ex. T at

12   988.  Among the Apple proceedings that resulted in a Final Written Decision, **89%** (196

13   out of 220 decisions) resulted in the cancellation or amendment of at least some claims,

14   and **73%** (160 out of 220 decisions) resulted in the cancellation of **all** challenged claims.

15   *Id.*  These statistics support a fair inference that Apple's "IPR petitions are statistically

16   likely to be instituted, [and] . . . if instituted, the IPR process could substantially narrow

17   the issues in this litigation."  *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-

18   CV-00876-RS, 2015 WL 13727876, at *3 (N.D. Cal. Mar. 30, 2015); *see also Blast*

19   *Motion, Inc. v. Zepp Labs, Inc.*, No. 15-CV-700 JLS (NLS), 2016 WL 5107678, at *6

20   (S.D. Cal. Mar. 29, 2016) (granting in part a stay where the "PTAB's statistics indicate

21   that there is a 60% chance that [Plaintiff]'s claims will be cancelled or amended"); *Select*

22   *Comfort Corp. v. Tempur Sealy Int'l*, No. 14-245 (JNE/JSM), 2014 U.S. Dist. LEXIS

23   183450, at *11 (D. Minn. Oct. 10, 2014) (granting stay where the USPTO's then-current

24   statistics indicated a "3-out-of-4 chance that the USPTO will grant the petition for an

25   IPR").

26   Not only would a stay simplify the issues, a denial of a stay could result in

27   duplicate parallel proceedings that could lead to inconsistent outcomes and additional

28   burden on the parties and the Court.  Indeed, if the case is not stayed, and some claims

Gibson, Dunn &
Crutcher LLP

survive the IPR challenges, there is a great likelihood that not only will claim construction efforts by the Court and parties have been for naught with respect to any canceled claims, but it is very likely that claim construction will have to be reopened for any surviving claims.  By allowing the present case to proceed in parallel with the PTAB proceedings, the Court would "incur[] the risk that developments in the IPR proceedings . . . will necessitate reconsideration of the Court's claim construction order or render certain claim construction disputes moot after the court has already construed the claims," unnecessarily wasting the Court's time.  *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, No. EDCV 14-01153-VAP, 2015 WL 1809309, at *3 (C.D. Cal. Apr. 20, 2015).  A stay of the patent infringement case here avoids that risk.

The potential for simplification and conservation of resources favors a stay even before the PTAB has decided whether to institute IPR proceedings.  *See Purecircle*, 2019 WL 3220021, at *2 ("Although courts in this District have acknowledged the speculative nature of simplification where, as here, the PTAB has not yet made an institution decision, many courts have ultimately been persuaded that the potential to save significant judicial resources sways the analysis in favor of stay."); *see also LG Elecs. Order* at 3; *TCL Corp. Order* at 3–4; *Core Optical*, 2016 WL 7507760, at *1.  This Court and other courts in this District routinely grant stays prior to the PTAB deciding whether to institute because the minimal delay while the PTAB makes its institution decision bears little on the litigation and is outweighed by the potential for "saving significant, and otherwise unnecessary expenditure of time and resources by the parties and the Court."  *Limestone*, 2016 WL 3598109, at *4; *see also, e.g.*, *TCL Corp. Order* at 4; *Purecircle*, 2019 WL 3220021, at *3; *Core Optical*, 2016 WL 7507760, at *2; *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, No. EDCV 14-01153-VAP, 2015 WL 1809309, at *3 (C.D. Cal. Apr. 20, 2015).  This Court has therefore recognized that staying a patent infringement case prior to institution is "the majority position" in this District, and "the parties' and Court's resources are [still] likely to be conserved."  *Purecircle*, 2019 WL 3220021, at *3.  Here, where Apple is challenging all asserted

Gibson, Dunn & Crutcher LLP

13

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS CASE NO. 8:20-CV-00048-JVS (JDEX)

claims of all Asserted Patents, even a potential simplification of the patent infringement case—which currently includes 245 asserted claims—favors a stay while the PTAB issues its findings.

Finally, that Apple has not yet filed its IPR challenges to the five new patents as of the time of this Motion should not dissuade the Court from staying the patent infringement case.  Despite those five patents issuing only a few months ago, and being added to the case less than two months ago, Apple will file its IPR petitions on those patents before the noticed hearing on this Motion.  Thus, Apple has worked extremely diligently to put the IPR petitions for even the new patents on nearly the same track as the IPR petitions on the other seven asserted patents.  Moreover, all five of these newly asserted patents are within the same family as several of the other seven patents, and therefore share the same specification and general subject matter, and are thus just as likely to be instituted as Apple's pending IPR petitions.

In sum, because a stay would simplify the issues and significantly conserve the Court's and the parties' time and resources, the second factor strongly favors granting the stay of the patent infringement case.

## C.   Factor 3:  A Stay Will Not Prejudice Plaintiffs

### 1.   Plaintiffs Will Not Suffer Prejudice or a Tactical Disadvantage from a Stay of the Patent Infringement Case

The third factor likewise favors a stay because Plaintiffs will not suffer undue prejudice or a tactical disadvantage if the Court stays the patent infringement case pending resolution of Apple's IPR petitions.  "The mere possibility of delay, inherent in all proceedings, is insufficient to constitute undue prejudice."  *Purecircle*, 2019 WL 3220021, at *3; *see also PersonalWeb*, 2014 WL 116340, at *5 ("Courts have long acknowledged that a delay inherent to a stay does not, in and of itself, constitute prejudice.").  Therefore, any prejudice that Plaintiffs might claim would result because of the mere passage of time "are consequences that apply to any case where [patent office review] is sought and cannot alone demonstrate undue prejudice."  *Evolutionary*

14

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS CASE NO. 8:20-CV-00048-JVS (JDEX)

*Intelligence LLC v. Yelp, Inc.*, No. C-13-003587 DMR, 2013 WL 6672451, at *8 (N.D. Cal. Dec. 18, 2013).  In addition, any harm caused by the delay could be adequately remedied by money damages.

Apple and Plaintiffs are not direct competitors in the marketplace, which favors a stay.  *See Core Optical*, 2016 WL 7507760, at *2 ("[A] primary issue in an undue prejudice analysis is whether the parties are competitors such that a stay would cause irreparable harm to the patentee in the market.").  Plaintiffs are "medical technology" companies whose "core business" is to provide products for measuring "blood oxygen saturation and pulse rate monitoring . . . to hospitals, emergency medical service (EMS) providers, physician offices, veterinarians, long term care facilities and consumers." Company Profile, Masimo, https://investor.masimo.com/company-profile/default.aspx (last visited September 13, 2020); *see also* About Us, Cercacor, https://www.cercacor.com/pages/about-us (stating that "our proven technologies are used by leading hospitals around the world").  Indeed, Masimo touts to its investors that its pulse oximetry products—its core business—are used by "clinicians" "in post-surgical wards" to "reduce rapid response team activations [and] ICU transfers," and highlights that its products are "estimated to be used on more than 200 million patients in leading hospitals and other healthcare settings around the world."  *See* Masimo Reports Second Quarter 2020 Financial Results, News Details, Masimo, https://investor.masimo.com/news/news-details/2020/Masimo-Reports-Second-Quarter-2020-Financial-Results/default.aspx (last visited September 13, 2020) (section entitled "About Masimo").  Masimo's SEC filings also state that Masimo:

> derives the majority of its product revenue from four primary sources: (i) direct sales under deferred equipment agreements with end-user hospitals . . .; (ii) other direct sales of noninvasive monitoring solutions to end-user hospitals, emergency medical response organizations and other direct customers; (iii) sales of noninvasive monitoring solutions to distributors who then typically resell to end-user hospitals, emergency medical response

15

Gibson, Dunn &
Crutcher LLP

organizations and other customers; and (iv) sales of integrated circuit boards to OEM customers who incorporate [them into their own products].

Masimo Corp. Form 10-Q (Quarterly Report for the quarterly period ended June 27, 2020) at 13, https://d18rn0p25nwr6d.cloudfront.net/CIK-0000937556/331042c3-78cb-4e62-b997-62690c670ebb.pdf (last visited September 13, 2020).  Cercacor likewise targets the healthcare market for its physiological monitoring technology.  *See id.* at 46 (Masimo referring to Cercacor's market as "any product market in which a [physiological monitoring] product is intended to be used by a patient or pharmacist rather than by a professional medical caregiver").

By contrast, Apple is an innovator in the consumer electronics market and "designs, manufactures and markets smartphones, personal computers, tablets, wearables and accessories, and sells a variety of related services" that are directed to customers who "are primarily in the consumer, small and mid-sized business, education, enterprise and government markets."  Apple Inc. 2019 Form 10-K at 1–2, Apple, https://d18rn0p25nwr6d.cloudfront.net/CIK-0000320193/1a919118-a594-44f3-92f0-4ecca47b1a7d.pdf (last visited September 13, 2020).  Although Apple's devices may have applications in healthcare settings, and Apple develops and markets certain technologies for monitoring a consumer's health (e.g., the heart rate, atrial fibrillation (AFib), and ECG functionality built into the Apple Watch), these technologies are still targeted at consumers to be used in their daily lives—they are not designed to replace medical tools or technologies used by professionals to treat patients.  For example, the Food and Drug Administration has stated that Apple's ECG app "is intended for over-the-counter . . . informational use only."  *See* Letter from Angela C. Krueger, Deputy Director, Office of Device Evaluation, FDA, to Apple Inc. at 1 (Sept. 11, 2018), https://www.accessdata.fda.gov/cdrh_docs/pdf18/DEN180044.pdf.  It is simply beyond question that the Apple Watch does not compete in the market for the hospitals, emergency medical response organizations, distributors, and OEM manufacturers that make up the lion's share of Plaintiffs' revenue base.

16

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION
TO STAY THE PATENT INFRINGEMENT CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS
CASE NO. 8:20-CV-00048-JVS (JDEX)

Accordingly, because Plaintiffs do not directly compete with Apple, they "can adequately be compensated with monetary damages for any infringement and will not lose sales or market shares as a result of a stay." *Core Optical*, 2016 WL 7507760, at *2; *see also TAS Energy, Inc. v. San Diego Gas & Elec. Co.*, No. 12CV2777-GPC BGS, 2014 WL 794215, at *5 (S.D. Cal. Feb. 26, 2014) ("The fact that the parties are not competitors weighs in favor of a stay as any harm from a stay can be addressed through damages."). Indeed, Plaintiffs' failure to seek a preliminary injunction in the patent infringement case, even though the case has been on file for almost nine months— despite seeking injunctive relief in the *trade secret* case (*see* ECF 108–111)—makes clear that monetary damages are adequate here. *See Nichia Corp. v. Vizio, Inc.*, No. SACV1600545SJOMRWX, 2017 WL 3485767, at *6 (C.D. Cal. Feb. 2, 2017) ("The fact that Nichia has not sought a preliminary injunction suggests that it considers monetary damages to be adequate." (citing *Semiconductor Energy*, 2012 WL 7170593, at *4)); *see also Karl Storz*, 2015 WL 13727876, at *4 (finding that where plaintiff "did not seek a preliminary injunction or pursue an expedited trial schedule" and the parties "estimated that [the] litigation will require roughly two and a half years in total," plaintiff's "apparent lack of urgency in prosecuting this case" "suggests that its claims of immeasurable competitive injury may be overstated"). Thus, even were the Court to find that Plaintiffs and Apple are competitors in some aspects—which they are not— Plaintiffs still cannot demonstrate that monetary damages are insufficient.[5]

The shortened timeline of IPR proceedings also ensures that any stay granted by the Court will be relatively short, which reduces the likelihood of undue prejudice or tactical disadvantage to Plaintiffs. *See, e.g.*, *Pi-Net Int'l, Inc. v. The Hertz Corp.*, No. 12-cv-10112 PSG (JEMx), 2013 WL 7158011, at *4 (C.D. Cal. June 5, 2013) (finding

---

[5] Moreover, even if the Court were to find that the third factor weighs against a stay because Plaintiffs and Apple are competitors, the Court should still stay the patent infringement case because the other two factors strongly favor the stay. *See Purecircle*, 2019 WL 3220021, at *4 (granting stay where two of the three factors weighed in favor of a stay).

that "any delay that Plaintiff will experience would be minimal" in consideration of the one-year timeline for IPR proceedings imposed by 35 U.S.C. § 316(a)(11)). Because the delay inherent to a stay is not enough to constitute undue prejudice, and because Plaintiffs can adequately be compensated through monetary damages, a stay of the patent infringement case here is proper.

Finally, Plaintiffs will suffer no tactical disadvantage from a stay of the patent infringement case, because Apple did not delay filing its IPR petitions or moving for a stay. Apple filed IPR petitions challenging five of the Asserted Patents eight months after they were first asserted against Apple in Plaintiffs' original Complaint. *See* ECF 1 (filed on January 9, 2020). Apple filed IPR petitions on two of the Asserted Patents only six months after they were first asserted against Apple in the FAC. *See* ECF 28 (filed on March 25, 2020). And Apple will file IPR petitions on the remaining five of the Asserted Patents—which were all issued after this case began—by the end of this month, just two months after those patents were first asserted against Apple in the SAC. *See* ECF 88–89 (filed on July 24, 2020). Given the amount of research, analysis and work required to file the multiple IPR petitions covering over 245 claims of twelve patents, this time frame was eminently reasonable.

Moreover, Plaintiffs only served an incomplete set of preliminary infringement contentions on July 27, 2020—less than two months ago—which for the first time identified the claims Plaintiffs intend to assert against Apple. Rosenthal Decl. Ex. B, at 18–19. Apple acted as expeditiously as possible to file the IPR petitions after these claims were identified. *See Core Optical*, 2016 WL 7507760, at *3 (finding no "dilatory motive" where defendant filed its IPR petition within three months of receiving plaintiff's infringement contentions).

Because Plaintiffs cannot identify any prejudice or harm resulting from a stay of the patent infringement case, and such a stay would provide no tactical advantage to Apple, the third factor also favors a stay.

Defendant Apple Inc.'s Memorandum of Points and Authorities in Support of Its Motion
to Stay the Patent Infringement Case Pending *Inter Partes* Review Proceedings
Case No. 8:20-cv-00048-JVS (JDEx)

### 2. Plaintiffs Will Not Suffer Prejudice or a Tactical Disadvantage No Matter What Happens with the Trade Secret Case

A stay of at least the patent infringement case (Causes of Action Nos. 1–12 in the SAC) will not prejudice Plaintiffs, and is proper in view of the three pertinent factors described above and the totality of the circumstances in this case. Apple's IPR petitions challenge the patents Plaintiffs have asserted against Apple, which are not tied to Plaintiffs' trade secret misappropriation and patent inventorship/ownership claims (Causes of Action Nos. 13–26 in the SAC). As a result, there is no reason that the separate and independent trade secret case could not proceed. Nonetheless, if the Court opts to stay the entire action, such a stay likewise would not cause prejudice to or result in a tactical disadvantage for Plaintiffs, and the third factor therefore supports such a stay in the alternative.

Nothing in the trade secret case could affect the prejudice analysis with respect to the patent infringement case because the two cases are independent of each other. Plaintiffs have strenuously argued throughout this litigation that the patent infringement and trade secret cases are separate. *See, e.g.*, July 10, 2020 Hr'g Tr. at 16:1–2, 5 (Plaintiffs' counsel arguing that "[o]ur patent case is independent of the trade secret case"); *see also id.* at 12:10–19 (the Court recognizing that the two cases are separate and stating that although discovery in the trade secret case was stayed until Plaintiffs provide a disclosure of their alleged trade secrets, "[w]e need to go forward with the patent case"). Plaintiffs have no basis to now claim that Apple's IPR petitions have any bearing on their trade secret case after arguing for the last nine months that the two cases are independent of each other. Further, now that Apple has made its core technical production, discovery in this case going forward should not substantially overlap because, by definition, Plaintiffs' alleged trade secrets have to be distinct from the subject matter that is disclosed and claimed in their Asserted Patents—else that subject

Gibson, Dunn & Crutcher LLP

matter could not be a trade secret.[6]  Plaintiffs have also argued since the outset of this litigation that trade secret discovery was separate from patent discovery.  *See, e.g.*, ECF 43-1 (Joint Stipulation) at 30–31 (Plaintiffs arguing that their patent infringement claims do not "hinge" on their trade secret claims).  As a result, even if some broad areas of discovery may overlap, the majority of relevant fact discovery will target different specific areas.

The posture of this action is very similar to *Delphix Corp. v. Actifio, Inc.*, in which the Northern District granted a stay as to the patent infringement case, but declined to stay the trade secret misappropriation and declaratory judgment claims pending the PTAB's institution decisions.  *Delphix Corp. v. Actifio, Inc.*, No. 13-CV-04613-BLF, 2014 WL 6068407, at *3 (N.D. Cal. Nov. 13, 2014).  There, as here, the case was in its early stages, included patent infringement, trade secret misappropriation, and declaratory judgment claims, and the plaintiff asserted new patents during the course of the litigation.  *See id.* at *1.  The *Delphix* court found that all three factors weighed in favor of staying the patent infringement case, and explained that —just like here—"the patents subject to IPR are a *significant* portion of this action, and [t]here is also little benefit to be gained from having two forums review the validity of the same claims at the same time."  *Id.* at *2 (emphasis in original).  Undertaking the prejudice analysis under the third factor, the *Delphix* court declined to stay the trade secret misappropriation and declaratory judgment claims, explaining that "[b]ecause any IPR is unlikely to affect" those claims, "the parties should be permitted to proceed on those issues."  *Id.*[7]  Thus, while a stay of the entire case might arguably also conserve the

---

[6]  Nothing disclosed in the Asserted Patents could have been a trade secret in 2014, when the events underlying Plaintiffs' trade secret case allegedly took place, because all of the disclosed subject matter was published before then.  The '994 and '703 patents issued in 2004 and 2013, respectively.  The other Asserted Patents are continuations of applications that published at least by 2011.  *See, e.g.*, '265 patent (continuation of U.S. Patent Application No. 12/829,352, which published on January 6, 2011).

[7]  Although the *Delphix* court at first stayed only the patent infringement case, it stayed the entire action after institution of the IPRs, explaining that "it is clear that a substantial
*(Cont'd on next page)*

Gibson, Dunn & Crutcher LLP

parties' and the Court's resources and might also be an appropriate result, by this Motion Apple seeks a stay of at least the patent infringement causes of action because Apple's IPR petitions relate solely to the patent infringement case.  *See Delphix*, 2014 WL 6068407, at *2–3.

In the alternative, the Court could also opt to stay the entire action.  The presence of non-patent infringement claims in this action should not dissuade the Court from doing so because this is not a case where a stay of the entire action could prejudice Plaintiffs.  The trade secret case here is even less advanced than the patent infringement case, and all trade secret discovery has been stayed since April 17, 2020.  ECF 37 at 1. Plaintiffs only very recently agreed to provide a Section 2019.210 disclosure by October 9, 2020, nine months since filing their original Complaint.  Rosenthal Decl. ¶ 18. Because Plaintiffs have been slow-pedaling their trade secret case since the outset, they cannot claim prejudice with respect to that case regardless of whether the Court stays the entire action or only the patent infringement case.

Courts in this District have granted stays pending IPR proceedings in similar circumstances where the cases involved other claims not addressed in the IPR petitions because of the potential of the IPR proceedings to still greatly simplify the issues.  *See, e.g.*, *Lodge Mfg. Co. v. Gibson Overseas, Inc.*, No. CV188085PSGGJSX, 2019 WL 9443180, at *2–3 (C.D. Cal. Sept. 24, 2019) (granting a stay where the case was "in the early stages" and included defenses and counterclaims not at issue in the IPR proceedings because of the recognition that "the IPR can still narrow some issues"). This is particularly so where the IPR proceedings have the potential to eliminate all or most of the asserted claims.  *See Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*, No. SACV131880JLSRNBX, 2014 WL 12854129, at *2–3 (C.D. Cal. May 20, 2014) (granting a stay pending IPR proceedings and finding that "because all of the asserted

portion of the action will remain stayed" during IPR proceedings, and finding that "significant overlaps in the evidence, technology, and legal issues" warranted "a more comprehensive stay." *Delphix Corp. v. Actifio, Inc.*, No. 13-CV-04613-BLF, 2015 WL 4129166, at *2 (N.D. Cal. July 8, 2015).  Similarly, this Court has many options for efficiency, but should stay at least the patent infringement case now, prior to institution.

21

1    patents and most of the asserted claims would be covered by the [IPR]," the presence of

2    trade secret misappropriation and antitrust claims "d[id] not strongly weigh against

3    granting a stay"); *cf. Space Data Corp. v. Alphabet Inc.*, No. 16-CV-03260-BLF, 2019

4    WL 1131420, at *3 (N.D. Cal. Mar. 12, 2019) (denying stay where the litigation was

5    well beyond the early stage of proceedings, but finding that "the simplification of issues

6    factor cuts both ways and is essentially neutral" where the IPR challenged only one of

7    two asserted patents, and "would have no effect" on the other asserted claims).

8         Accordingly, the third factor weighs heavily in favor of staying at least the patent

9    infringement case.  In the event the Court believes that the action should either proceed

10   or be stayed as a whole, however, the third factor also supports a stay of the entire action.

11                                   **V.  CONCLUSION**

12        The totality of the circumstances favors a stay of the patent infringement case here

13   because all three of the most relevant factors weigh in favor of such a stay.  Accordingly,

14   for the foregoing reasons, Apple respectfully requests that the Court stay at least the

15   patent infringement case pending resolution of Apple's IPR Petitions.

16

17   Dated:  September 15, 2020

18                                   Respectfully submitted,

19                                   JOSHUA H. LERNER
                                     H. MARK LYON
20                                   BRIAN M. BUROKER
                                     BRIAN A. ROSENTHAL
21                                   ILISSA SAMPLIN
                                     ANGELIQUE KAOUNIS
22                                   BRIAN K. ANDREA
                                     GIBSON, DUNN & CRUTCHER LLP
23

24                                   By:    */s/ Joshua H. Lerner*
                                            Joshua H. Lerner
25
                                     *Attorneys for Defendant Apple Inc.*
26

27

28

Gibson, Dunn & Crutcher LLP