JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br>          Plaintiffs, <br><br>     v. <br><br> APPLE INC., a California corporation, <br><br>          Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **DECLARATION OF BRIAN A. ROSENTHAL IN SUPPORT OF APPLE'S MOTION TO STAY THE PATENT INFRINGEMENT CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS** <br><br> **Hearing:** <br> Date:    October 19, 2020 <br> Time:    1:30 p.m. <br> Place:   Courtroom 10C <br> Judge:   Hon. James V. Selna |

I, Brian Rosenthal, declare and state as follows:

1.      I am an attorney permitted to practice law before this Court *pro hac vice* and am licensed to practice law in New York and the District of Columbia.  I am a partner with the law firm of Gibson, Dunn & Crutcher LLP and counsel of record for Defendant Apple Inc. ("Apple") in the above-captioned action.

2.      I have personal, firsthand knowledge of the facts stated herein and, if called upon to do so, could and would competently testify thereto.

3.      I make this Declaration in support of Apple's Motion to Stay the Patent Infringement Case Pending *Inter Partes* Review Proceedings ("Motion").

4.      Apple and Plaintiffs held a meet and confer regarding Apple's Motion on September 4, 2020.  Counsel for Plaintiffs stated that they will oppose the motion.

5.      No depositions have yet been noticed or scheduled in this action.

6.      On June 15, 2020, Apple produced to Plaintiffs publicly available core technical documents.

7.      On July 10, 2020, the Court held a hearing in which it stated that notwithstanding Plaintiffs' failure to provide a trade secret disclosure, Apple should produce confidential core technical documents that relate to the patent case.  The transcript of that hearing is attached hereto as **Exhibit A**.

8.      On July 16, 2020, Apple produced additional highly confidential core technical documents sufficient to show the structure and operation of the accused features of the accused products, as set forth in Plaintiffs' First Amended Complaint.

9.      On August 3, 2020, Apple made available for inspection the source code for the accused features of the accused products, based on the allegations in the First Amended Complaint.

10.     Plaintiffs served their preliminary infringement contentions on July 27, 2020, which for the first time identified the claims Plaintiffs intend to assert against Apple.  The document did not provide any infringement contentions with respect to U.S.

Patent No. 10,433,776 ("the '776 patent") asserted against Apple.  After Apple pointed out this omission, Plaintiffs informed Apple that contentions for that patent would be forthcoming in its supplemental infringement contentions, but that Plaintiffs were asserting all claims of the '776 patent against Apple.  Plaintiffs have identified "at least" 245 claims across the twelve Asserted Patents that they allege Apple infringes, all of which still remain asserted in this action.   Plaintiffs' July 27, 2020 preliminary infringement contentions are attached hereto as **Exhibit B**.

11.    On September 8, 2020, Apple served its invalidity contentions for U.S. Patent Nos. 10,258,265 ("the '265 patent"), 10,292,628 ("the '628 patent"), 6,771,994 ("the '994 patent"), 8,457,703 ("the '703 patent"), 10,433,776 ("the '776 patent"), 10,588,553 ("the '553 patent"), and 10,588,554 ("the '554 patent"), which Plaintiffs asserted against Apple in the original Complaint and/or the First Amended Complaint (these contentions were initially due on September 7, 2020, but because that day fell on a Court holiday (Labor Day), the parties agreed that Apple may serve these contentions the following day).

12.    Apple has already filed or will file before the hearing on this Motion *Inter Partes* Review ("IPR") petitions challenging at least all asserted claims of all twelve of the Asserted Patents.

13.    Specifically, on August 31, 2020, Apple filed IPR petitions challenging all asserted claims of the '265 patent (IPR2020-01520), the '776 patent (IPR2020-01524), the '994 patent (IPR2020-01526), and the '553 patent (IPR2020-01536 and IPR2020-01537).  These petitions are attached hereto as **Exhibits C-G**, respectively.

14.    On September 2, 2020, Apple filed IPR petitions challenging all claims of the '554 patent (IPR2020-01538 and IPR2020-01539) and all claims of the '628 patent (IPR2020-01521).  These petitions are attached hereto as **Exhibits H-J**, respectively.

15.     On September 9, 2020, Apple filed an IPR petition challenging all asserted claims of the '703 patent (IPR2020-01523).  This petition is attached hereto as **Exhibit K**.

16.     With respect to the five patents newly asserted in Plaintiffs' Second Amended Complaint (U.S. Patent Nos. 10,624,564 ("the '564 patent"), 10,631,765 ("the '765 patent"), 10,702,194 ("the '194 patent"), 10,702,195 ("the '195 patent"), and 10,709,366 ("the '366 patent")), Apple expects to file IPR petitions challenging at least all asserted claims of those patents by the noticed hearing for its Motion.

17.     Before filing each IPR petition, Apple stipulated to Plaintiffs that in the event the Patent Trial and Appeal Board ("PTAB") institutes on any ground raised in its IPR petitions, Apple will not assert in this litigation that same ground against the corresponding claims.   Those stipulations are attached hereto as **Exhibits L-R**, respectively.   Apple will make a similar stipulation before filing IPR petitions challenging the five patents newly asserted in the Second Amended Complaint.

18.     On September 9, 2020, at the urging of Judge Early, the parties held a meet and confer and reached a compromise with respect to two pending disputes between the parties—the sufficiency of Apple's core technical production and Plaintiffs' failure to provide a trade secret disclosure pursuant to California Code of Civil Procedure Section 2019.210.  By the terms of that compromise, the parties agreed that by October 9, 2020, Plaintiffs would provide a Section 2019.210 trade secret disclosure and Apple would produce additional technical documents.   The parties agreed that Plaintiffs would provide preliminary infringement contentions by November 13, 2020.  Other terms of the compromise are reflected in the transcript of the parties' discussion.

19.     Attached hereto as **Exhibit S** is a true and correct copy of the United States Patent Office's ("USPTO") Patent Trial and Appeal Board Trial Statistics, which contains data valid as of July 31, 2020.  This document was retrieved from the USPTO's website

1  (https://www.uspto.gov/sites/default/files/documents/trial_statistics_20200731.pdf)  on

2  September 11, 2020.

3      20.     Attached hereto as **Exhibit T** is a true and correct copy of Lex Machina's

4  Patent Trial and Appeal Board statistics for trials listing Apple Inc. as the Petitioner,

5  which contains data valid as of September 10, 2020.  This document was retrieved from

6  Lex Machina's website (https://lexmachina.com/) on September 11, 2020.

7

8      I declare under penalty of perjury under the laws of the United States of America

9  that the foregoing is true and correct.

10     Executed this 15th day of September, 2020, in Larchmont, NY.

11

12                              By:  /s/ *Brian A. Rosenthal*

13                                   Brian A. Rosenthal

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

**Page 1**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

MASIMO CORPORATION, et al., )
    Plaintiffs, )
      vs. )
        ) SACV-20-00048-JVS
APPLE, INC., )
    Defendant. )
-------------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

July 10, 2020

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA 92701
(714) 543-0870

11:46

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Page 2**

APPEARANCES OF COUNSEL:

For the Plaintiffs:

JOSEPH R. RE
STEPHEN JENSEN
KNOBBE MARTENS
2040 Main Street, 14th Floor
Irvine, CA  92614
(949) 760-0404

For the Defendant:

H. MARK LYON
JOSHUA LERNER
BRIAN ROSENTHAL
GIBSON DUNN & CRUTCHER, LLP
1881 Page Mill Road
Palo Alto, CA  93403-1211
(650) 849-5307

JOSHUA LERNER
GIBSON DUNN & CRUTCHER, LLP
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
(415) 393-8254

BRIAN ROSENTHAL
GIBSON DUNN & CRUTCHER, LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-2339

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Page 3**

SANTA ANA, CALIFORNIA; FRIDAY, JULY 10, 2020; 2:58 P.M.

(Per telephonic conference)

THE CLERK:   Calling Item No. 1, SACV-20-00048-JVS, Masimo Corporation versus Apple, Inc.

Appearances on behalf of the plaintiff, please.

MR. RE:   Thank you.  Good afternoon, Your Honor, this is Joseph Re of Knobbe Martens on behalf of Masimo Corporation, and with me is my partner Stephen Jensen.

THE CLERK:   And on behalf of the defendants, please.

MR. LYON:   Good afternoon, Your Honor.  It's Mark Lyon on behalf of Apple, and with me is Joshua Lerner, and Brian Rosenthal.

THE COURT:   Good afternoon.

Thank you for your joint report that you filed last week.  Let me share my thoughts with you, and then I'd be happy to hear you.

I believe it's fundamentally unfair to the parties and inefficient to require reduction of the number of claims for prior art references prior to the full disclosure of the infringement contentions and the invalidity contentions.

Let me give you an example of the poker world.  Suppose Masimo has a claim that it would evaluate as a for basis, but when Apple makes its invalidity disclosures, it comes up with prior art that would amount to Royal Fresh.  It's

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**Page 4**

better for Masimo to designate a claim in light of prior art demonstrating it wasn't viable.

So my thought is that the initial round of disclosures ought to come after the parties have made their invalidity disclosures and their prior disclosures.  The date for invalidity contentions is 9/7.  What I would propose is that within two weeks of that date, the parties present me with a proposal for an initial reduction of claims and prior art references that would contemplate actual disclosure of those reductions within 30 days of the Court adopting a specific proposal.  I would then contemplate that there would be a further reduction after the Markman hearing, and I would leave to your discretion the time for final disclosure as to what we go to trial on.

I think that may require some adjustments to events leading to the Markman hearing.  If the invalidity contentions come in 9/7, the parties' exchange of proposed claim terms is 9/21.  I don't think that gives you enough time to reflect on both sides' disclosures, come up with your proposal, and then for narrowing selections of claims and prior art references.

So I think that the dates between the exchange of claim terms and the Markman hearing need to be adjusted to accommodate the disclosures pursuant to whatever proposal I adopt for the disclosures following the invalidity and the

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

5

```
03:01   1    infringement contentions and the Markman hearing.  I'm not
03:02   2    adverse to slipping the Markman hearing a month or six weeks
03:02   3    if that makes sense.  That's in February, and we don't have
03:02   4    a trial date in 2021.
03:02   5              So those are my general thoughts.  I'll be happy
03:02   6    to hear you.
03:02   7              Let's begin with you, Mr. Re.
03:02   8              MR. RE:   Thank you, Your Honor.  As you indicated.
03:02   9              I think we're in complete agreement with
03:02  10    everything you said.  I do think there needs to be an
03:02  11    exchange of information.  I do want to alert the Court that
03:02  12    we are planning on amending our pleading that's set forth in
03:02  13    the Court's order regarding the Motion to Dismiss.  In fact,
03:02  14    we will be substituting out some patents, so there needs to
03:02  15    be some more time for the parties to fully evaluate the
03:02  16    claims.
03:02  17              And, yes, we have not yet received the other
03:02  18    party's technical documents which were due back in June, and
03:03  19    that we of course need before we do our contentions.  But we
03:03  20    agree with everything you said, and I think the parties will
03:03  21    work it out and will come up with a proposal for this by
03:03  22    September 21 as you indicated.
03:03  23              THE COURT:   Mr. Lyon.
03:03  24              MR. LYON:   Thank you, Your Honor.
03:03  25              Just a couple points.  Let me just raise a
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

6

```
03:03   1    concern, and you may have already considered this, but let
03:03   2    me at least just throw it out there so that we can have a
03:03   3    discussion if it's helpful.  The one thing I would say with
03:03   4    not putting in some kind of target limits at this point is
03:03   5    that you end up with potentially hundreds of claims that
03:03   6    both parties are going to be charting, that they're going to
03:03   7    be discussing and potentially arguing over as far as what
03:03   8    claim terms might be involved.
03:03   9              That is not a trivial aspect.  I mean, that's
03:03  10    something when some of these -- I'm sure you've seen them.
03:03  11    Some of these claim charts can wind up being hundreds or
03:03  12    thousands of pages long, which is a very significant effort
03:03  13    to create, even if it is copying and pasting some of the
03:03  14    information because these claims are so related, which still
03:03  15    winds up that somebody has to sit down and analyze each
03:03  16    individual claim to decide whether or not you can simply
03:03  17    copy a paragraph from a different claim or not.  You have to
03:04  18    do that, and then that has to go through whatever levels of
03:04  19    review with the client and with the firm to make sure that
03:04  20    that's okay.
03:04  21              Then to the extent that there's any dispute about
03:04  22    that, instead of having a single claim that the Court is
03:04  23    worrying about, it may end up being 15 or 16 claims, which
03:04  24    the Court would then have to do a similar review to make
03:04  25    sure it all makes sense, and the same argument applies
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

7

```
03:04   1    equally to each of those 15 or 16 claims.
03:04   2              So our view that if we let set some
03:04   3    number, and it could be -- we don't think the numbers we
03:04   4    picked are terrible, but if there's a higher number, we
03:04   5    could talk about.  But pick some target numbers now so
03:04   6    that we can get a bit more reign in on the case before we
03:04   7    get into charting everything with the idea that if there's
03:04   8    reasons to change these things down the road, that's
03:04   9    something that can always be done in good cause.
03:05  10              But it really needs to be done at the stage of
03:05  11    preparing it for Markman, and then have that kind of a
03:05  12    target, sort of like page limits in the brief in a lot of
03:05  13    ways.  If you put these claims and limits on people, they'll
03:05  14    make some hard choices that they otherwise wouldn't make or
03:05  15    -- and that they probably should make, but because of the
03:05  16    fact that they don't have to, everything just gets thrown in
03:05  17    with the kitchen sink.
03:05  18              That's why we were suggesting trying to do
03:05  19    something now.  Then if we need to have some discussions
03:05  20    about whether, you know, it's 50, 40, claims, whatever it is
03:05  21    we pick -- maybe the plaintiffs need a little bit more than
03:05  22    that, maybe another ten or so -- we could have those kinds
03:05  23    of discussions and maybe stipulate to that at the beginning.
03:05  24              This is the first we've heard that they're
03:05  25    planning on changing the patents again, so that's a little
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

8

```
03:05   1    troubling because we are already very far into the case, and
03:06   2    we're already trying to start gearing up for discovery on
03:06   3    the patents that we have.  But that may also throw a monkey
03:06   4    wrench into not just this but to more parts of the case
03:06   5    schedule if it changes substantially.
03:06   6              THE COURT:   I appreciate the fact that at some
03:06   7    point the parties will have to make hard choices.  I believe
03:06   8    they ought to be able to make fair hard choices.  But if you
03:06   9    want to have further discussions among yourselves and come
03:06  10    to a consensus as to how to do some limits at this time,
03:06  11    that's fine, but I'm not going to impose it.
03:06  12              What I'm going to order is that no later than 9/21
03:06  13    the parties will submit a joint proposal for the initial
03:06  14    round of productions and the number of infringement
03:06  15    contentions and prior art references, and a final proposal
03:06  16    as to what we ought to do following the Markman hearing, and
03:06  17    then what we ought to do as a final third stage in terms of
03:06  18    what we're actually going to go to trial on.
03:06  19              MR. RE:   T?hank you, Your Honor.
03:07  20              May I ask one more question about this, though,
03:07  21    Your Honor?  If we have currently set up infringement
03:07  22    contentions due on July 27, which then triggers our
03:07  23    invalidity contentions on September 7 to trigger off of
03:07  24    those -- if the patents are going to be changing because of
03:07  25    the new pleading, I guess I would want to know when is that
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit A
Page 7

9

```
03:07  1  going to happen, and are those target changes going to be
03:07  2  reflected in the infringement contentions we are going to
03:07  3  see in July, or is that going to be a completely separate
03:07  4  ball of wax that we have to deal with?
03:07  5      THE COURT:   Well, if Masimo changes the line of
03:07  6  both patents, I would reevaluate the dates for infringement
03:07  7  and invalidity contentions in light of that on a fairly
03:07  8  short ex-parte basis.
03:07  9      Let me circle back to one thing Mr. Re said.  I
03:07  10  don't think that Masimo should be required to make its
03:07  11  infringement contentions until you produce the core
03:08  12  technical information.  I understand that there is presently
03:08  13  in place a protective order to permit that, but to the
03:08  14  extent that production is made, these dates are just going
03:08  15  to drift out there and out there and out there.  And I would
03:08  16  be likely to entertain a motion made to me, not the
03:08  17  magistrate judge, with regard to patent production on the
03:08  18  core confidential information.
03:08  19      MR. LYON:   Your Honor, on that point -- this is
03:08  20  Mark Lyon again, Your Honor.  On that point, we did produce
03:08  21  nonconfidential technical documentation as part of the
03:08  22  schedule, and we're waiting on the protective order which
03:08  23  now is in place.  But as you may know, we filed an objection
03:08  24  to certain orders of Magistrate Early on the staging of
03:08  25  that, which we do hope to have -- because the issue, as you
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10

```
03:08  1  may know, is that there needs to be a 2019 trade secret
03:08  2  statement in place before we can proceed on the trade secret
03:09  3  discovery.
03:09  4      The whole basis for that rule is to really avoid
03:09  5  the situation where plaintiffs get ahold of all these
03:09  6  technical documents and then can hunt and peck and kind of
03:09  7  try to come up with a list of trade secrets that they
03:09  8  otherwise really don't have but that they are trying to
03:09  9  create that way.  That is the whole purpose of being able to
03:09  10  have those trade secrets in before all that technical
03:09  11  information is out.
03:09  12      If that information is provided ahead of getting
03:09  13  those trade secrets, that bell can't be unrung.  That's one
03:09  14  concern, and we actually have that motion in place.  We
03:09  15  understood from yesterday that Masimo was asking us to
03:09  16  produce that information.  The first that they had come back
03:09  17  and talked to us was in an email yesterday asking for that
03:09  18  information immediately, knowing that we had these
03:09  19  objections out there.  We may need to actually file some
03:09  20  type of an ex-parte application, if necessary, to seek
03:09  21  relief on that so we can get that issue decided first, if
03:09  22  possible.
03:10  23      I don't know, Mr. Lerner, if you want to say
03:10  24  anything more on that.  Please feel free.
03:10  25      MR. LERNER:   First of all, thank you for having
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11

```
03:10  1  this hearing by telephone, Your Honor.  We know during these
03:10  2  times it's busy, and we appreciate the opportunity to be
03:10  3  heard.
03:10  4      Second, I do not believe that anybody can dispute
03:10  5  the point that once these documents are out then you have
03:10  6  the issue that is raised by every case on point, which is,
03:10  7  one can make vague trade secret allegations and then claim
03:10  8  Apple's valuable confidential information based on years of
03:10  9  hard work on this product as their own.  That simply cannot
03:10  10  be undone once these documents are produced, and it leads to
03:10  11  all kinds of issues.
03:10  12      I think the two most relevant here are that what,
03:10  13  for example, do you do with the people that are out then you
03:10  14  work on the trade secret disclosure when first Your Honor
03:11  15  did order compliance with Section 2019.210 many months ago?
03:11  16  What do you do with the lawyers who have seen our
03:11  17  confidential information, but also might want to work on
03:11  18  that disclosure, which does at some point obviously need to
03:11  19  be provided?  Our view, as we briefed, is that it should
03:11  20  have been provided a long time ago.
03:11  21      The other key policy matter here, I think, is that
03:11  22  we would not be having these discussions or these problems
03:11  23  if that disclosure had been provided, because I think the
03:11  24  most basic policy guidance behind the rule is it enables the
03:11  25  Court to determine the proper scope of discovery and whether
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12

```
03:11  1  or not discovery requests fall within it.  That just can't
03:11  2  be done until they provide this document, which the parties
03:11  3  briefed before the scheduling order, which Your Honor then
03:11  4  ruled on.
03:12  5      So as Mr. Lyon says, if necessary -- in fact,
03:12  6  we're planning on it if necessary to raise it as quickly as
03:12  7  possible now, so that we don't run into this waterfall of
03:12  8  problems that will follow if there's not compliance with
03:12  9  this basic rule.
03:12  10      THE COURT:   I guess I analyze things differently.
03:12  11  If core confidential documents are relevant to the patents,
03:12  12  they should be disclosed now, notwithstanding the fact that
03:12  13  they may overlap the trade secrets case.  We need to go
03:12  14  forward with the patent case.  And if and when there is
03:12  15  adequate disclosure for trade secrets, all other materials
03:12  16  should be produced.  But to the extent the core confidential
03:12  17  technical documents are relevant to the patent case, they
03:12  18  should be disclosed now and in advance of Masimo having to
03:12  19  identify which claims it wants to proceed on.
03:13  20      MR. LERNER:   If I may just very briefly respond to
03:13  21  that, Your Honor.  I understand that Masimo has raised that
03:13  22  argument, but it does render the statute a nullity.
03:13  23  2019.210 expressly states:  "Discovery related to the trade
03:13  24  secrets" -- indeed, in cases before Judge Early before, he
03:13  25  said just because discovery relates to a non-trade secret
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit A
Page 8

13

1  claim it doesn't mean it also doesn't relate to the trade
2  secret.  Here, there's no dispute -- there can't be any
3  dispute that discovery on the patent side relates to the
4  trade secrets.
5           So if we're going to do that, it does render the
6  statute in this instance a nullity, and we will have, I
7  think, all the problems that follow and are the very basis
8  for the rule there.  So I think that it is important to
9  consider both the express language of that statute and then
10  what's behind it.
11          The only other thing I will mention is that every
12  case that Masimo has cited on this point that involved
13  parallel claims -- every single one there was a prior trade
14  secret disclosure.  It's possible that it could have been
15  amended at some later time, but there was at the very least
16  some disclosure.
17          The only exception I can think of was one where
18  there was a date certain order, and the plaintiff would have
19  had to show good cause if they ever wanted to change it
20  later.  Because without either the disclosure or that date
21  certain and an order that it can't be changed without good
22  cause, then we have the very real situation that Masimo can
23  just look through our confidential information in a case
24  with a patent thicket and use our confidential information
25  to try and craft their purported secrets in a way that (a)

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

14

1  is allegedly theirs, even though it's based on our
2  confidential information, but (b) tries to weave around
3  their many patents so they don't run into the problem that
4  it's been disclosed.
5           For those reasons, I think it's in some ways of
6  critical importance here that we do it.  It's even more
7  important than I would say in a normal case where there
8  might not be quite so many patents in the space or so many
9  allegations that the secrets were allegedly disclosed in the
10  patents.
11          THE COURT:   Let's assume Masimo never asserted a
12  trade secret claim.  The confidential information which
13  involves the patent claims would be subject to production
14  whether it was a trade secret or not.  That's what
15  protective orders are for.
16          MR. LERNER:   We completely agree with that, Your
17  Honor.  If there were no trade secret claims in this case,
18  this would not be a problem.  But every case where there is
19  a trade secret, given the express language of the statute,
20  has found that you can't avoid that language.  I'm not aware
21  of any finding that ignores the language on point.
22          That's why in all of the cases there was a trade
23  secret disclosure before you had a ruling that patent
24  discovery could go forward, or at least as I said, an order
25  that the trade secret disclosure be produced by a date

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

15

1  certain along with admonition that the list couldn't change
2  without good cause.
3           So, yes, if there were no trade secret claim, then
4  2019.210 by and large would not come into play.  There are
5  some cases holding that if it's kind of, you know, a wolf in
6  sheep's clothing and it's obvious it's coming, then the
7  Court would say you still have to do the 2019.210
8  disclosure.
9           But here we don't have that situation.  This is a
10  case where they've suggested they have a serious trade
11  secret claim.  They've never described it with any
12  specificity whatsoever, even though they allege it has been
13  disclosed in public patent filings.  One could just say
14  here's the page and line number.
15          Not withstanding all of those things, there's no
16  description in a case that's, you know, roughly seven months
17  old, and they want this confidential information.  Again,
18  once that's done, we just cannot undo it, and we'll have I
19  think unfortunately not only disputes both about
20  the scope of discovery, but also what to do about the fact
21  that you then have lawyers who have seen our secrets
22  drafting what their alleged secrets are.
23          THE COURT:   Mr. Re.
24          MR. RE:   Well, Your Honor, this is at least the
25  second or third time they've made this argument.  You are

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

16

1  correct.  Our patent case is independent of the trade secret
2  case.  The case law that we already cited and briefed to
3  Judge Early on these other motions were breach of contract
4  cases that were factually dependent on the trade secret
5  claims.  Our case is not dependent on our trade secret case.
6  And currently the trade secret case has been dismissed on
7  their Motion to Dismiss.  It's not even pending before the
8  Court, and obviously the patent case gets to go forward.
9           I've never seen such strenuous objections to
10  producing just the core technical documents in a case.  They
11  are fighting tooth and nail, and they will keep fighting and
12  fighting no matter what.  They're going to file more motions
13  I understand today to prevent the disclosures that were due
14  back in June.  I think the time has come we move forward now
15  as the Court has indicated.
16          THE COURT:   Are you going to replead your trade
17  secret claim?
18          MR. RE:   Yes, we are.  We plan on complying with
19  the 30-day leave to amend date at the end of the month.
20          THE COURT:   Okay.  Well, I think you have my
21  general views.  Let's see what motion practice that results
22  in.
23          Anything else we should take up today?
24          MR. RE:   No.  Thank you, Your Honor.
25          MR. LYON:   Thank you, Your Honor.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER



17

1    MR. LERNER:    Thank you very much, Your Honor.

2    THE COURT:    Okay.  Thank you very much.

3    (Whereupon, the proceedings were concluded.)

4                 *   *   *

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

18

4                        CERTIFICATE

6    I hereby certify that pursuant to Section 753,

7    Title 28, United States Code, the foregoing is a true and

8    correct transcript of the stenographically reported

9    proceedings held in the above-entitled matter and that the

10   transcript page format is in conformance with the

11   regulations of the Judicial Conference of the United States.

13   Date:  July 20, 2020

15                /s/   Sharon A. Seffens  7/20/20

16   SHARON A. SEFFENS, U.S. COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**/s** [1]  18/15

**0**

**0193** [1]  2/16
**0404** [1]  2/5
**0870** [1]  1/21
**0921** [1]  2/13

**1**

**1-1053** [1]  1/20
**10** [2]  1/17 3/1
**10166-0193** [1]  2/16
**1053** [1]  1/20
**1211** [1]  2/10
**14th** [1]  2/4
**15** [2]  6/23 7/1
**16** [2]  6/24 7/1
**1881** [1]  2/9

**2**

**20** [2]  18/13 18/15
**200** [1]  2/15
**2019** [1]  10/1
**2019.210** [4]  11/15 12/23 15/4 15/7
**2020** [3]  1/17 3/1 18/13
**2021** [1]  5/4
**2040** [1]  2/4
**21** [3]  4/18 5/22 8/12
**212** [1]  2/16
**2339** [1]  2/16
**27** [1]  8/22
**28** [1]  18/7
**2:58** [1]  3/1

**3**

**30** [1]  4/10
**30-day** [1]  16/19
**3000** [1]  2/12
**351-2339** [1]  2/16
**393-8254** [1]  2/13

**4**

**40** [1]  7/20
**411** [1]  1/20
**415** [1]  2/13
**4th** [1]  1/20

**5**

**50** [1]  7/20
**5307** [1]  2/10
**543-0870** [1]  1/21
**555** [1]  2/12

**6**

**650** [1]  2/10

**7**

**7/20/20** [1]  18/15
**714** [1]  1/21
**753** [1]  1/20
**760-0404** [1]  2/6

**8**

**8254** [1]  2/13
**849-5307** [1]  2/10

**9**

**9/21** [2]  4/18 8/12
**9/7** [2]  4/6 4/17
**92614** [1]  2/5
**92701** [1]  1/20
**93403-1211** [1]  2/10
**94105-0921** [1]  2/13
**949** [1]  2/5

**A**

**able** [2]  8/8 10/3
**about** [7]  6/21 6/23 7/5 7/20 8/20 15/19 15/20
**above** [1]  18/9
**above-entitled** [1]  18/9
**accommodate** [1]  4/24
**actual** [1]  4/10
**actually** [3]  8/18 10/14 10/19
**adequate** [1]  12/15
**adjusted** [1]  4/23
**adjustments** [1]  4/15
**admonition** [1]  15/1
**adopt** [1]  4/25
**adopting** [1]  4/11
**advance** [1]  12/18
**adverse** [1]  5/2
**after** [2]  4/4 4/12
**afternoon** [3]  3/6 3/11 3/14
**again** [3]  7/25 9/20 15/17
**ago** [2]  11/15 11/20
**agree** [2]  5/20 14/16
**agreement** [1]  5/9
**ahead** [1]  10/12
**ahold** [1]  10/5
**al** [1]  1/9
**alert** [1]  5/11
**all** [9]  6/25 10/5 10/10 10/25 11/11 12/15 13/7 14/22 15/15
**allegations** [2]  11/7 14/9
**allege** [1]  15/12
**alleged** [1]  15/22
**allegedly** [2]  14/1 14/9
**along** [1]  15/1
**already** [4]  6/1 8/1 8/2 16/2
**also** [4]  8/3 11/17 13/1 15/20
**Alto** [1]  2/10
**always** [1]  7/9
**amend** [1]  16/19
**amended** [1]  13/15
**amending** [1]  5/12
**among** [1]  8/9
**amount** [1]  3/25
**Ana** [3]  1/16 1/20 3/1
**analyze** [2]  6/15 12/10
**another** [1]  7/22
**any** [4]  6/21 13/2 14/21 15/11
**anybody** [1]  11/4
**anything** [2]  10/24 16/23
**APPEARANCES** [2]  2/1 3/5
**APPLE** [4]  1/11 3/4 3/12 3/24
**Apple's** [1]  11/8
**application** [1]  10/20
**applies** [1]  6/25
**appreciate** [2]  8/6 11/2
**are** [25]
**arguing** [1]  6/7
**argument** [3]  6/25 12/22 15/25
**around** [1]  14/2
**art** [7]  3/20 3/25 4/1 4/5 4/9 4/21 8/15
**as** [18]  3/23 4/14 5/22 6/7 6/7 8/10 8/16 8/17 9/21 9/23 9/25 11/9 11/19 12/5 12/6 12/6 14/24 16/15
**ask** [1]  8/20
**asking** [2]  10/15 10/17
**aspect** [1]  6/9
**asserted** [1]  14/11
**assume** [1]  14/11
**Avenue** [1]  2/15
**avoid** [1]  4/10 14/20
**aware** [1]  14/20

**B**

**back** [4]  5/18 9/9 10/16 16/14
**ball** [1]  9/4

**based** [2]  11/8 14/1
**basic** [2]  12/8 12/9
**basis** [4]  3/23 9/8 10/4 13/7
**be** [36]
**because** [8]  6/14 7/15 8/1 8/24 9/25 11/23 12/25 13/20
**been** [6]  11/20 11/23 13/14 14/4 15/12 16/6
**before** [9]  5/19 7/6 10/2 10/10 12/3 12/24 12/24 14/23 16/7
**begin** [1]  5/7
**beginning** [1]  7/23
**behalf** [4]  3/5 3/7 3/9 3/12
**behind** [1]  11/24 13/10
**being** [3]  3/18 8/7 11/4
**believe** [3]  3/18 8/7 11/4
**bell** [1]  10/13
**better** [1]  4/1
**between** [1]  4/22
**bit** [2]  7/6 7/21
**both** [5]  4/19 6/6 9/6 13/9 15/19
**breach** [1]  16/3
**BRIAN** [3]  2/8 2/14 3/13
**brief** [1]  7/12
**briefed** [3]  11/19 12/3 16/2
**briefly** [1]  12/20
**busy** [1]  11/2

**C**

**CA** [4]  1/20 2/5 2/10 2/13
**CALIFORNIA** [3]  1/5 1/16 3/1
**Calling** [1]  3/3
**can** [12]  6/2 6/11 6/16 7/6 7/9 10/2 10/6 10/21 11/4 11/7 13/17 13/22
**can't** [5]  10/13 12/1 13/2 13/21 14/20
**cannot** [2]  11/9 15/18
**case** [22]
**cases** [4]  12/24 14/22 15/5 16/4
**cause** [4]  7/9 13/19 13/22 15/2
**CENTRAL** [1]  1/5
**certain** [4]  9/24 13/18 13/21 15/1
**CERTIFICATE** [1]  18/4
**certify** [1]  18/6
**change** [3]  7/8 13/19 15/1
**changed** [1]  13/21
**changes** [3]  8/5 9/1 9/5
**changing** [2]  7/25 8/24
**charting** [2]  6/6 7/7
**charts** [1]  6/11
**choices** [3]  7/14 8/7 8/8
**circle** [1]  9/9
**cited** [2]  13/12 16/2
**claim** [15]  3/23 4/1 4/18 4/23 6/8 6/11 6/16 6/17 6/22 11/7 13/1 14/12 15/3 15/11 16/17
**claims** [15]  3/19 4/9 4/21 5/16 6/5 6/14 6/23 7/1 7/13 7/20 12/19 13/13 14/13 14/17 16/5
**client** [1]  6/19
**clothing** [1]  15/6
**Code** [1]  18/7
**come** [9]  4/4 4/17 4/19 5/21 8/9 10/7 10/16 15/4 16/14
**comes** [1]  3/24
**coming** [1]  15/6
**complete** [1]  5/9
**completely** [2]  9/3 14/16
**compliance** [2]  11/15 12/8
**complying** [1]  16/18
**concern** [2]  6/1 10/14
**concluded** [1]  17/3
**conference** [2]  3/2 18/11
**confidential** [10]  9/18 11/8 11/17 12/11 12/16 13/23 13/24 14/2 14/12 15/12
**conformance** [1]  18/10
**consensus** [1]  8/10

**C**

consider [1] 13/9
considered [1] 6/1
contemplate [2] 4/9 4/12
contentions [12] 3/21 3/21 4/6 4/17 5/1
 5/19 8/15 8/22 8/23 9/2 9/7 9/11
contract [1] 16/3
copy [1] 6/17
copying [1] 6/13
core [5] 9/11 9/18 12/11 12/16 16/10
CORPORATION [1] 1/9 3/4 3/8
correct [2] 16/1 18/8
could [6] 7/3 7/5 7/22 13/14 14/24 15/13
couldn't [1] 15/1
COUNSEL [1] 2/1
couple [1] 5/25
course [1] 5/19
COURT [10] 1/4 4/11 5/11 6/22 6/24
 11/25 15/7 16/8 16/15 18/16
Court's [1] 5/13
Courthouse [1] 1/19
craft [1] 13/25
create [2] 6/13 10/9
critical [1] 14/6
CRUTCHER [3] 2/9 2/12 2/15
currently [2] 8/21 16/6

**D**

date [8] 4/6 4/7 5/4 13/18 13/20 14/25
 16/19 18/13
dates [3] 4/22 9/6 9/14
day [1] 16/19
days [1] 4/10
deal [1] 9/4
decide [1] 6/16
decided [1] 10/21
Defendant [1] 1/12 2/6
defendants [1] 3/9
demonstrating [1] 4/2
dependent [2] 16/4 16/5
described [1] 15/11
description [1] 15/16
designate [1] 4/1
determine [1] 11/25
did [2] 9/20 11/15
different [1] 6/17
differently [1] 12/10
disclosed [5] 12/12 12/18 14/4 14/9
 15/13
disclosure [13] 3/20 4/10 4/14 11/14
 11/18 11/23 12/15 13/14 13/16 13/20
 14/23 14/25 15/8
disclosures [8] 3/24 4/4 4/5 4/5 4/19
 4/24 4/25 16/13
discovery [9] 8/2 10/3 11/25 12/1 12/23
 12/25 13/3 14/24 15/20
discretion [1] 4/13
discussing [1] 6/7
discussion [1] 6/3
discussions [4] 7/19 7/23 8/9 11/22
Dismiss [2] 5/13 16/7
dismissed [1] 16/6
dispute [4] 6/21 11/14 13/2 13/3
disputes [1] 15/19
DISTRICT [2] 1/4 1/5
DIVISION [1] 1/6
do [19]
document [1] 12/2
documentation [1] 9/21
documents [7] 5/18 10/6 11/5 11/10
 12/11 12/17 16/10
does [3] 11/18 12/22 13/5
doesn't [2] 13/1 13/1
don't [10] 4/18 5/3 7/3 7/16 9/10 10/8
 12/23 12/7 14/3 15/9

**E**

each [2] 6/15 7/1
Early [3] 9/24 12/24 16/3
effort [1] 4/12
either [1] 13/20
else [1] 16/23
email [1] 10/17
enables [1] 11/24
end [3] 6/5 6/23 16/19
enough [1] 4/19
entertain [1] 9/16
entitled [1] 18/9
equally [1] 7/1
et [1] 1/9
evaluate [2] 3/23 5/15
even [5] 6/13 14/1 14/6 15/12 16/7
events [1] 14/6
ever [1] 13/19
every [4] 11/6 13/11 13/13 14/18
everything [4] 5/10 5/20 7/7 7/16
ex [2] 9/8 10/20
ex-parte [3] 9/8 10/20
example [2] 3/22 11/13
exception [1] 13/17
exchange [3] 4/17 4/22 5/11
express [2] 13/9 14/19
expressly [1] 12/23
extent [3] 6/21 9/14 12/16

**F**

fact [6] 5/13 7/16 8/6 12/5 12/12 15/20
factually [1] 16/4
fair [1] 8/8
fairly [1] 9/7
fall [1] 12/1
far [2] 6/7 8/1
February [1] 5/3
feel [1] 10/24
fighting [3] 16/11 16/11 16/12
file [2] 10/19 16/12
filed [2] 3/15 9/23
filings [1] 15/13
final [3] 4/14 8/15 8/17
finding [1] 14/21
fine [1] 8/11
firm [1] 6/19
first [5] 7/24 10/16 10/21 10/25 11/14
Floor [1] 2/4
follow [2] 12/8 13/7
following [1] 4/25 8/16
foregoing [1] 18/7
format [1] 18/10
forth [1] 5/12
forward [4] 12/14 14/24 16/8 16/14
found [1] 14/20
Francisco [1] 2/13
free [1] 10/24
Fresh [1] 3/25
FRIDAY [1] 3/1
full [1] 3/20
fully [1] 5/15
fundamentally [1] 3/18
further [2] 4/12 8/9

**G**

gearing [1] 8/2
general [2] 5/5 16/21
get [4] 7/6 7/7 10/5 10/21

done [4] 7/9 7/10 12/2 15/18
down [1] 11/15 15/7
drafting [1] 15/23
drift [1] 9/15
due [3] 5/18 8/22 16/13
DUNN [3] 2/9 2/12 2/15
during [1] 11/1

gets [2] 7/16 16/8
getting [2] 13/10 16/9
GIBSON [3] 2/9 2/12 2/15
give [1] 3/22
given [1] 14/19
gives [1] 4/18
go [6] 4/14 6/18 8/18 12/13 14/24 16/8
going [15] 6/2 6/6 8/11 8/12 8/18 8/24
 9/1 9/1 9/2 9/3 9/14 11/13 13/5 16/12
 16/16
good [7] 3/6 3/11 3/14 7/9 13/19 13/21
 15/2
guess [2] 8/25 12/10
guidance [1] 11/24

**H**

had [5] 10/16 10/18 11/23 13/19 14/23
hank [1] 8/19
happen [1] 9/1
happy [2] 3/17 5/5
hard [4] 7/14 8/7 8/8 11/9
has [10] 3/23 6/15 6/18 12/21 13/12
 14/20 15/12 16/6 16/14 16/15
have [34]
having [4] 6/22 10/25 11/22 12/18
he [1] 12/24
hear [2] 3/17 5/6
heard [2] 7/24 11/3
hearing [7] 4/13 4/16 4/23 5/1 5/2 8/16
 11/1
held [1] 18/9
helpful [1] 6/3
here [5] 11/12 11/21 3/2 14/6 15/9
here's [1] 15/14
hereby [1] 18/6
higher [1] 7/4
holding [1] 15/5
Honor [17] 3/6 3/11 5/8 5/24 8/19 8/21
 9/19 9/20 11/1 11/14 12/3 12/21 14/17
 15/24 16/24 16/25 17/1
HONORABLE [1] 1/8
hope [1] 9/25
how [1] 8/10
hundreds [2] 6/5 6/11
hunt [1] 10/6

**I**

I'd [1] 3/16
I'll [1] 5/5
I'm [5] 5/1 6/10 8/11 8/12 14/20
I've [1] 16/9
idea [1] 7/7
identify [1] 12/19
ignores [1] 14/21
immediately [1] 10/18
importance [1] 14/6
important [2] 13/8 14/7
impose [1] 8/11
INC [2] 1/11 3/4
indeed [1] 12/24
independent [1] 16/1
indicated [2] 5/22 16/15
individual [1] 6/16
inefficient [1] 3/19
information [15] 5/11 6/14 9/12 9/18
 10/11 10/12 10/16 10/18 11/8 11/17
 13/23 13/24 14/2 14/12 15/17
infringement [7] 3/21 5/1 8/14 8/21 9/2
 9/6 9/11
initial [3] 4/3 4/8 8/13
instance [1] 13/6
instead [1] 6/22
invalidity [8] 3/21 3/24 4/5 4/6 4/16 4/25
 8/23 9/7
involved [2] 6/8 13/12
involves [1] 14/13

**I**

Irvine [1]  2/5
is [42]
issue [3]  9/25 10/21 11/6
issues [1]  11/11
it [35]
it's [15]  3/11 3/18 3/25 6/3 7/20 11/2
13/14 14/1 14/4 14/5 14/6 15/5 15/6
15/6 16/7
Item [1]  3/3
its [2]  3/24 9/10

**J**

JAMES [1]  1/8
JENSEN [2]  2/3 3/8
joint [2]  3/15 8/13
JOSEPH [2]  2/3 3/7
JOSHUA [3]  2/8 2/11 3/12
judge [4]  1/8 9/17 12/24 16/3
Judicial [1]  18/11
July [5]  1/17 3/1 8/22 9/3 18/13
July 27 [1]  8/22
June [2]  5/18 16/14
just [13]  5/25 5/25 6/2 7/16 8/4 9/14
12/1 12/20 12/25 13/23 15/13 15/18
16/10
JVS [2]  1/11 3/3

**K**

keep [1]  16/11
key [1]  11/21
kind [4]  6/4 7/11 10/6 15/5
kinds [2]  7/22 11/11
kitchen [1]  7/17
KNOBBE [2]  2/4 3/7
know [8]  7/20 8/25 9/23 10/1 10/23 11/1
15/5 15/16
knowing [1]  10/18

**L**

language [4]  13/9 14/19 14/20 14/21
large [1]  15/4
last [1]  3/16
later [3]  8/12 13/15 13/20
law [1]  16/2
lawyers [2]  11/16 15/21
leading [1]  4/16
leads [1]  11/10
least [4]  6/2 13/15 14/24 15/24
leave [2]  4/13 16/19
LERNER [4]  2/8 2/11 3/12 10/23
let [5]  3/16 3/22 5/25 6/1 9/9
Let's [3]  5/7 14/11 16/21
levels [1]  6/18
light [2]  4/1 9/7
like [1]  7/12
likely [1]  9/16
limits [4]  6/4 7/12 7/13 8/10
line [2]  9/5 15/14
list [2]  10/7 15/1
little [2]  7/21 7/25
LLP [3]  2/9 2/12 2/15
long [2]  6/12 11/20
look [1]  13/23
lot [2]  7/12 15/19
LYON [5]  2/7 3/12 5/23 9/20 12/5

**M**

made [4]  4/4 9/14 9/16 15/25
magistrate [2]  9/17 9/24
Main [1]  2/4
make [9]  6/19 6/24 7/14 7/14 7/15 8/7
8/8 9/10 11/7
makes [3]  3/24 5/3 6/25
many [4]  11/15 14/3 14/8 14/8

MARK [3]  2/7 3/11 9/20
Markman [1]  13/4 13/25 16/5
materials [1]  8/16
MARTENS [2]  2/4 3/7
MASIMO [13]  1/9 3/4 3/7 3/23 4/1 9/5
9/10 10/15 12/18 12/21 13/12 13/22
14/11
materials [1]  12/15
matter [3]  11/21 16/12 18/9
may [6]  4/15 6/1 6/23 8/3 8/20 9/23
10/1 10/19 12/13 12/20
maybe [3]  7/21 7/22 7/23
me [9]  3/8 3/12 3/16 3/22 4/8 5/25 6/2
9/9 9/16
mean [2]  6/9 13/1
mention [1]  13/11
might [3]  6/8 11/17 14/8
Mill [1]  2/9
Mission [1]  2/12
monkey [1]  8/3
month [2]  5/2 16/19
months [2]  11/15 15/16
more [8]  5/15 7/6 7/21 8/4 8/20 10/24
14/6 16/12
most [2]  11/12 11/24
motion [5]  5/13 9/16 10/14 16/7 16/21
motions [2]  16/3 16/12
move [1]  16/14
Mr [1]  12/5
Mr. [5]  5/7 5/23 9/9 10/23 15/23
Mr. Lerner [1]  10/23
Mr. Lyon [1]  5/23
Mr. Re [3]  5/7 9/9 15/23
much [2]  17/1 17/2
my [5]  3/8 3/16 4/3 5/5 16/20

**N**

nail [1]  16/11
narrowing [1]  4/20
necessary [3]  10/20 12/5 12/6
need [7]  4/23 5/19 7/19 7/21 10/19
11/18 12/13
needs [4]  5/10 5/14 7/10 10/1
never [3]  14/11 15/11 16/9
new [2]  2/16 8/25
no [8]  3/3 8/12 13/2 14/17 15/3 15/15
16/12 16/24
non [1]  12/25
non-trade [1]  12/25
nonconfidential [1]  9/21
normal [1]  14/7
not [21]
notwithstanding [1]  12/12
now [7]  7/5 7/19 9/23 12/7 12/12 12/18
16/14
nullity [2]  12/22 13/6
number [5]  3/19 7/3 7/4 8/14 15/14
numbers [2]  7/3 7/5
NY [1]  2/16

**O**

objection [1]  9/23
objections [2]  10/19 16/9
obvious [1]  15/6
obviously [2]  11/18 16/8
off [1]  8/23
okay [3]  6/20 16/20 17/2
old [1]  15/17
once [3]  11/5 11/10 15/18
one [8]  6/3 8/20 9/9 10/13 11/7 13/13
13/17 15/13
only [2]  13/11 13/17
opportunity [1]  7/11
order [9]  5/13 8/12 9/13 9/22 11/15 12/3
13/18 13/21 14/24
orders [2]  9/24 14/15

other [5]  5/17 11/21 12/15 13/11 16/3
otherwise [1]  16/10
ought [4]  4/4 8/8 8/16 8/17
our [13]  5/12 5/19 7/2 8/22 11/16 11/19
11/23 13/24 14/1 15/21 16/1 16/5 16/5
out [9]  5/14 5/21 6/2 9/15 9/15 9/15
10/11 10/19 11/5
over [1]  6/7
overlap [1]  12/13
own [1]  11/9

**P**

P.M [1]  3/1
page [4]  2/9 7/12 15/14 18/10
pages [1]  6/12
Palo [1]  2/10
paragraph [1]  6/17
parallel [1]  13/13
Park [1]  2/15
part [1]  9/21
parte [2]  9/8 10/20
parties [9]  3/18 4/4 4/7 5/15 5/20 6/6 8/7
8/13 12/2
parties' [1]  4/17
partner [1]  3/8
parts [1]  8/4
party's [1]  5/18
pasting [1]  6/13
patent [10]  9/17 12/14 12/17 13/3 13/24
14/13 14/23 15/13 16/1 16/8
patents [9]  5/14 7/25 8/3 8/24 9/6 12/11
14/3 14/8 14/10
peck [1]  10/6
pending [1]  16/7
people [2]  7/13 11/13
Per [1]  3/2
permit [1]  9/13
pick [2]  7/5 7/21
picked [1]  7/4
place [4]  9/13 9/23 10/2 10/14
plaintiff [2]  3/5 13/18
plaintiffs [4]  1/10 2/2 7/21 10/5
plan [1]  16/18
planning [3]  5/12 7/25 12/6
play [1]  15/4
pleading [2]  5/12 8/25
please [3]  3/5 3/10 10/24
point [9]  6/4 8/7 9/19 9/20 11/5 11/6
11/18 13/12 14/21
points [1]  5/25
poker [1]  3/22
policy [2]  11/21 11/24
possible [3]  10/22 12/7 13/14
potentially [2]  6/5 6/7
practice [1]  16/21
preparing [1]  7/11
present [1]  4/8
presently [1]  9/12
PRESIDING [1]  1/8
prevent [1]  16/13
prior [9]  3/20 3/20 3/25 4/1 4/5 4/9 4/21
8/15 13/13
probably [1]  7/15
problem [2]  14/3 14/18
problems [3]  11/22 12/8 13/7
proceed [2]  10/2 12/19
proceedings [3]  1/15 17/3 18/9
produce [3]  9/11 9/20 10/16
produced [3]  11/10 12/16 14/25
producing [1]  16/10
product [1]  11/9
production [3]  9/14 9/17 14/13
productions [1]  8/14
proper [1]  11/25
proposal [7]  4/8 4/11 4/20 4/24 5/21
8/13 8/15

**P**

propose [1] 4/7
proposed [1] 4/18
protective [3] 9/13 9/22 14/15
provide [1] 12/2
provided [4] 10/12 11/19 11/20 11/23
public [1] 15/13
purported [1] 13/25
purpose [1] 10/9
pursuant [2] 4/24 18/6
put [1] 7/13
putting [1] 6/4

**Q**

question [1] 8/20
quickly [1] 12/6
quite [1] 14/8

**R**

raise [2] 5/25 12/6
raised [2] 11/6 12/21
RE [5] 2/3 3/7 5/7 9/9 15/23
real [1] 13/22
really [3] 7/10 10/4 10/8
reasons [2] 7/8 14/5
received [1] 5/17
reduction [3] 3/19 4/8 4/12
reductions [1] 4/10
reevaluate [1] 9/6
references [4] 3/20 4/9 4/21 8/15
reflect [1] 4/19
reflected [1] 9/2
regard [1] 9/17
regarding [1] 5/13
regulations [1] 18/11
reign [1] 7/6
relate [1] 13/1
related [2] 6/14 12/23
relates [2] 12/25 13/3
relevant [3] 11/12 12/11 12/17
relief [1] 10/21
render [2] 12/22 13/5
replead [1] 16/16
report [1] 3/15
reported [1] 18/8
REPORTER [1] 18/16
REPORTER'S [1] 1/15
requests [1] 12/1
require [2] 3/19 4/15
required [1] 9/10
respond [1] 12/20
results [1] 16/1
review [2] 6/19 6/24
road [2] 2/9 7/8
ROSENTHAL [3] 2/8 2/14 3/13
roughly [1] 15/16
round [2] 4/3 8/14
Royal [1] 3/25
RPR [1] 1/19
rule [4] 10/4 11/24 12/9 13/8
ruled [1] 12/4
ruling [1] 14/23
run [2] 12/7 14/3

**S**

SACV [1] 1/11 3/3
SACV-20-00048-JVS [2] 1/11 3/3
said [5] 5/10 5/20 9/9 12/25 14/24
same [1] 6/25
San [1] 2/13
Santa [3] 1/16 1/20 3/1
say [5] 6/3 10/23 14/7 15/7 15/13
says [1] 12/5
schedule [2] 8/5 9/22
scheduling [1] 12/3

scope [2] 11/25 15/20
second [2] 11/7 15/25
secret [20] 4/12 ...
secrets [11] 10/7 10/10 10/13 12/13
  12/15 12/24 13/4 13/25 14/9 15/21
  15/22
Section [2] 11/15 18/6
see [2] 9/3 16/21
seek [1] 10/20
seen [4] 6/10 11/16 15/21 16/9
SEFFENS [3] 1/19 18/15 18/16
selections [1] 4/20
SELNA [1] 1/8
sense [2] 5/3 6/25
separate [1] 9/3
September [2] 5/22 8/23
September 21 [1] 5/22
serious [1] 15/10
set [3] 5/12 7/2 8/21
seven [1] 15/16
share [1] 9/8
SHARON [3] 1/19 18/15 18/16
sheep's [1] 15/6
short [1] 9/8
should [7] 7/15 9/10 11/19 12/12 12/16
  12/18 16/23
show [1] 13/19
side [1] 13/3
sides' [1] 4/19
significant [1] 6/12
similar [1] 6/24
simply [2] 6/16 11/9
single [2] 6/22 13/13
sink [1] 7/17
sit [1] 6/15
situation [3] 10/5 13/22 15/9
six [1] 5/2
slipping [1] 5/2
so [19]
some [19]
somebody [1] 6/15
something [3] 6/10 7/9 7/19
sort [1] 7/12
SOUTHERN [1] 1/6
space [1] 14/8
specific [1] 4/11
specificity [1] 15/12
stage [2] 7/10 8/17
staging [1] 9/24
start [1] 8/2
statement [1] 10/2
states [5] 1/4 1/19 12/23 18/7 18/11
statute [4] 12/22 13/6 13/9 14/19
stenographically [1] 18/8
STEPHEN [2] 2/3 3/8
still [2] 11/4 15/7
stipulate [1] 7/23
Street [3] 1/20 2/4 2/12
strenuous [1] 16/9
subject [1] 14/13
submit [1] 8/13
substantially [1] 8/5
substituting [1] 5/14
such [1] 16/9
suggested [1] 15/10
suggesting [1] 7/18
Suite [2] 1/20 2/12
Suppose [1] 3/22
sure [3] 6/10 6/19 6/25

**T**

take [1] 16/23
talk [1] 7/5
talked [1] 10/17
target [2] 6/4 7/5 7/12 9/1
technical [7] 5/18 9/12 9/21 10/6 10/10

12/17 16/10
telephone [1] 1/991
telephonic [1] 3/2
ten [1] 7/22
terms [4] 4/18 4/23 6/8 8/17
terrible [1] 7/4
than [3] 7/21 8/12 14/7
thank [3] 3/6 3/15 5/8 5/24 10/25 16/24
  16/25 17/1 17/2
that [119]
that's [13] 5/3 5/12 6/9 6/20 7/8 7/18
  7/25 8/11 10/13 14/14 14/22 15/16
  15/18
their [7] 4/4 4/5 11/9 13/25 14/3 15/22
  16/7
theirs [1] 14/1
them [1] 6/10
then [19]
there [22]
there's [6] 6/21 7/4 7/7 12/8 13/2 15/15
these [14] 6/10 6/11 6/4 7/8 7/13 9/14
  10/5 10/18 11/1 11/5 11/10 11/22 11/22
  16/3
they [18] 7/14 7/15 7/16 8/8 10/7 10/8
  10/16 12/2 12/12 12/13 12/17 13/19
  14/3 15/10 15/12 15/17 16/10 16/11
they'll [1] 7/13
they're [3] 6/6 7/24 16/12
they've [3] 15/10 15/11 15/25
thicket [1] 13/24
thing [3] 6/3 9/9 13/11
things [3] 7/8 12/10 15/15
think [18] 4/15 4/18 4/22 5/9 5/10 5/20
  7/3 9/10 11/12 11/21 11/23 13/7 13/8
  13/17 14/5 15/19 16/14 16/20
third [2] 8/17 15/25
this [23]
those [10] 4/10 5/5 7/1 7/22 8/24 9/1
  10/10 10/13 14/5 15/15
though [3] 8/20 14/1 15/12
thought [2] 4/3
thoughts [2] 3/16 5/5
thousands [1] 6/12
through [2] 6/18 13/23
throw [2] 6/2 8/3
thrown [1] 7/16
time [8] 4/14 4/19 5/15 8/10 11/20 13/15
  15/25 16/14
times [1] 11/2
Title [1] 18/7
today [2] 16/13 16/23
tooth [1] 16/11
trade [27]
transcript [3] 1/15 18/8 18/10
trial [3] 4/14 5/4 8/18
tries [1] 14/2
trigger [1] 8/23
triggers [1] 8/22
trivial [1] 6/9
troubling [1] 8/1
true [1] 18/7
try [2] 10/7 13/25
trying [3] 7/18 8/2 10/8
two [4] 4/7 11/12
type [1] 10/20

**U**

U.S [1] 18/16
understand [3] 9/12 12/21 16/13
understood [1] 10/15
undo [1] 15/18
undone [1] 11/10
unfair [1] 3/18
unfortunately [1] 15/19
UNITED [4] 1/4 1/19 18/7 18/11
unnecessary [1] 15/19

**U**

unrung [1]  10/13
until [2]  9/11 12/2
up [11]  3/24 4/19 5/21 6/5 6/11 6/15
 6/23 8/2 8/21 10/7 16/23
us [2]  10/15 10/17
use [1]  13/24

**V**

vague [1]  11/7
valuable [1]  11/8
versus [1]  3/4
very [8]  6/12 8/1 12/20 13/7 13/15 13/22
 17/1 17/2
viable [1]  4/2
view [2]  7/2 11/19
views [1]  16/21

**W**

waiting [1]  9/22
want [6]  5/11 8/9 8/25 10/23 11/17
 15/17
wanted [1]  13/19
wants [1]  12/19
was [8]  10/15 10/17 13/13 13/15 13/17
 13/18 14/14 14/22
wasn't [1]  4/2
waterfall [1]  12/7
wax [1]  9/4
way [2]  10/9 13/25
ways [2]  7/13 14/5
we [52]
we'll [1]  15/18
we're [6]  5/9 8/2 8/18 9/22 12/6 13/5
we've [1]  7/24
weave [1]  14/2
week [1]  3/16
weeks [2]  4/7 5/2
Well [3]  9/5 15/24 16/20
were [9]  5/18 7/18 14/9 14/17 15/3 16/3
 16/4 16/13 17/3
West [1]  1/20
what [14]  4/6 4/14 6/7 8/12 8/16 8/17
 8/18 11/12 11/16 14/14 15/20 15/22
 16/12 16/21
what's [1]  13/10
whatever [3]  4/24 6/18 7/20
whatsoever [1]  15/12
when [4]  3/24 8/25 11/14 12/14
where [6]  6/10 10/5 13/17 14/7 14/18
 15/10
Whereupon [1]  17/3
whether [4]  6/16 7/20 11/25 14/14
which [13]  5/18 6/12 6/14 6/23 8/22 9/22
 9/25 11/6 11/18 12/2 12/3 12/19 14/12
who [2]  11/16 15/21
whole [2]  10/4 10/9
why [2]  7/18 14/22
will [9]  5/14 5/20 5/21 8/7 8/13 12/8 13/6
 13/11 16/11
wind [1]  6/11
winds [1]  6/15
within [3]  4/7 4/10 12/1
without [3]  13/20 13/21 15/2
withstanding [1]  15/15
wolf [1]  15/5
work [4]  5/21 11/9 11/14 11/17
world [1]  3/22
worrying [1]  6/23
would [20]
wouldn't [1]  7/14
wrench [1]  8/4

**Y**

years [1]  11/8

yes [3]  5/17 15/3 16/18
yesterday [1]  19/7 10/17
yet [1]  5/17
York [1]  2/16
you [43]
you've [1]  6/10
your [21]
yourselves [1]  8/9

# Exhibit B

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:  (949) 760-0404 Facsimile:  (949) 760-9502

Adam B. Powell (Bar No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000 Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS' INFRINGEMENT CONTENTIONS**<br><br>Hon. James V. Selna<br>Magistrate Judge John D. Early |

Pursuant to the Court's April 17, 2020, Minute Order Regarding Scheduling Dates (Dkt. 37) and the Northern District of California Patent Local Rules ("PLR"), Plaintiffs MASIMO CORPORATION ("Masimo") and CERCACOR LABORATIES, INC. ("Cercacor") provide to Defendant APPLE, INC. ("Apple") the following Disclosure of Asserted Claims and Infringement Contentions.

Plaintiffs' disclosures are based on information currently available to Plaintiffs. Apple has not yet complied with its obligation to produce core technical documents pursuant to the Scheduling Order. Furthermore, neither the Court nor Apple has addressed claim construction. Thus, Plaintiffs' contentions are based upon Plaintiffs' investigation to date of public information. Plaintiffs have not completed their investigations of the facts relating to this case and have not yet completed discovery, which is ongoing. Accordingly, Plaintiffs reserve all of their rights, including the right to modify, amend, or otherwise supplement these disclosures for any reason, including as new documents and information are revealed through discovery and/or to the extent Apple alters, supplants, or otherwise clarifies documents and information currently available to Plaintiffs.

# I. DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS

## A. Disclosure Pursuant To PLR 3-1(a)

Based on presently available information, Plaintiffs contend that Apple infringes at least the following patents (the "Asserted Patents") and claims (the "Asserted Claims"):

| U.S. Patent No. | Asserted Claims | Applicable Statutory Subsection(s) |
|---|---|---|
| 10,258,265 | 1-3, 6-11, 13, 16-17, 19-25 | 35 U.S.C. § 271(a)-(c) |
| 10,292,628 | 1-6, 20-25, 29-30 | 35 U.S.C. § 271(a)-(c) |

-1-

| 10,588,553 | 1-29 | 35 U.S.C. § 271(a)-(c) |
| 10,588,554 | 1-7, 20-28 | 35 U.S.C. § 271(a)-(c) |
| 10,624,564 | 1-12, 14-30 | 35 U.S.C. § 271(a)-(c) |
| 10,631,765 | 1-8, 10-13, 15-29 | 35 U.S.C. § 271(a)-(c) |
| 10,702,194 | 1-30 | 35 U.S.C. § 271(a)-(c) |
| 10,702,195 | 1-17 | 35 U.S.C. § 271(a)-(c) |
| 10,709,366 | 1-27 | 35 U.S.C. § 271(a)-(c) |
| 6,771,994 | 15 | 35 U.S.C. § 271(a)-(c) |
| 8,457,703 | 1-7, 9-12, 14-18, 20-22, 24 | 35 U.S.C. § 271(a)-(c) |
| 10,433,776 | 1-7, 9-12, 14-18, 20-22, 24 | 35 U.S.C. § 271(a)-(c) |

**B.**   **Disclosure Pursuant To PLR 3-1(b)**

Based on presently available information, Plaintiffs contend the following instrumentalities and/or processes (the "Accused Product" or the "Accused Process") infringe the Asserted Claims:

| U.S. Patent No. | Claim(s) | Accused Product/Process |
|---|---|---|
| 10,258,265 | 1-3, 6-11, 13, 16-17, 19-25 | Apple Watch Series 4 and later |
| | 25 | Apple Watch Series 4 and later in combination with Apple iPhone devices |
| 10,292,628 | 1-6, 20-25, 29-30 | Apple Watch Series 4 and later |
| | 29-30 | Apple Watch Series 4 and later in combination with Apple iPhone devices |

-2-

| U.S. Patent No. | Claim(s) | Accused Product/Process |
|---|---|---|
| 10,588,553 | 1-29 | Apple Watch Series 4 and later |
|  | 7-9, 19, 25-28 | Apple Watch Series 4 and later in combination with Apple iPhone devices |
| 10,588,554 | 1-7, 20-28 | Apple Watch Series 4 and later in combination with Apple iPhone devices |
| 10,624,564 | 1-30 | Apple Watch Series 4 and later alone and in combination with Apple iPhone devices |
| 10,631,765 | 1-8, 10-29 | Apple Watch Series 4 and later in combination with Apple iPhone devices |
| 10,702,194 | 1-30 | Apple Watch Series 4 and later in combination with Apple iPhone devices |
| 10,702,195 | 1-16 | Apple Watch Series 4 and later |
|  | 10-17 | Apple Watch Series 4 and later in combination with Apple iPhone devices |
| 10,709,366 | 1-25 | Apple Watch Series 4 and later |
|  | 26-27 | Apple Watch Series 4 and later in combination with Apple iPhone devices |
| 6,771,994 | 15 | Apple Watch Series 4 and later |

-3-

| U.S. Patent No. | Claim(s) | Accused Product/Process |
|---|---|---|
| 8,457,703 | 1-7, 9-12, 14-18, 20-22, 24 | Apple Watch Series 3 and later |
| 10,433,776 | 1-7, 9-12, 14-18, 20-22, 24 | Apple Watch Series 3 and later |

**C.    Disclosure Pursuant To PLR 3-1(c)**

Based on presently available information, for each of the Asserted Patents, Plaintiffs have attached a corresponding claim chart identifying where and how each limitation of each Asserted Claim is found within each Accused Product or Process.  *See* Exhibit 1 and supporting appendices.

**D.    Disclosure Pursuant To PLR 3-1(d)**

Based on presently available information, in addition to directly infringing the Asserted Patents by manufacturing and selling the Accused Products in the United States, Defendants have also actively induced infringement of the Asserted Patents by others.  For example, Apple actively induced infringement of the Asserted Patents by marketing and selling the Accused Products, and providing instructions for the use of the Accused Products, knowing and intending such system to be used by customers and end users in a manner that infringes the Asserted Patents.  To that end, Apple provides a User Guide with the Accused Products that instructs and teaches customers and end users to use the Accused Products in a manner that infringes the Asserted Patents.  Likewise, Apple has published online directions, demonstrations, videos, and other guides that instruct and teach end users to use the Accused Products in a manner that infringes the Asserted Patents.  In view of Apple's knowledge of the Asserted Patents, Apple knew or should have known that such activities would cause direct infringement of the Asserted Patents by Apple's customers and the end users of the Accused Products.

-4-

**E.     Disclosure Pursuant To PLR 3-1(e)**

Based on presently available information, Plaintiffs contend the Accused Products and Processes literally infringe each of the Asserted Claims.  To the extent any claim limitations are not literally infringed, Plaintiffs contend the limitations are infringed under the doctrine of equivalents because the identified features of the Accused Products perform substantially the same function in substantially the same way to achieve substantially the same result.

**F.     Disclosure Pursuant To PLR 3-1(f)**

Plaintiffs contend the Asserted Claims of the Asserted Patents are entitled to the following priority dates based on their earliest filing dates:

| U.S. Patent No. | Asserted Claims | Priority Filing Date |
|---|---|---|
| 10,258,265 | 1-3, 6-11, 13, 16-17, 19-25 | At least as early as July 3, 2008 |
| 10,292,628 | 1-6, 20-25, 29-30 | At least as early as July 3, 2008 |
| 10,588,553 | 1-29 | At least as early as July 3, 2008 |
| 10,588,554 | 1-7, 20-28 | At least as early as July 3, 2008 |
| 10,624,564 | 1-30 | At least as early as July 3, 2008 |
| 10,631,765 | 1-8, 10-29 | At least as early as July 3, 2008 |
| 10,702,194 | 1-30 | At least as early as July 3, 2008 |
| 10,702,195 | 1-17 | At least as early as July 3, 2008 |
| 10,709,366 | 1-27 | At least as early as July 3, 2008 |
| 6,771,994 | 15 | At least as early as June 18, 1999 |
| 8,457,703 | 1-7, 9-12, 14-18, 20-22, 24 | At least as early as July 2, 2001 |
| 10,433,776 | 1-7, 9-12, 14-18, 20-22, 24 | At least as early as July 2, 2001 |

**G.     Disclosure Pursuant To PLR 3-1(g)**

In accordance with 35 U.S.C. § 287, Plaintiffs provide notice to the public associating at least the following patented articles with the following Asserted Patents:

- The '265 Patent: Pronto-7.
- The '628 Patent: Pronto-7.
- The '703 Patent: All Masimo Monitors and OEM Boards.
- The '776 Patent: All Masimo Monitors and OEM Boards.

**H.     Disclosure Pursuant To PLR 3-1(h)**

Based on presently available information, Plaintiffs contend Apple's infringement began at least as early as September 22, 2017, when Apple began selling the Apple Watch Series 3 in the United States, and continues to this day.

**I.     Disclosure Pursuant To PLR 3-1(i)**

Based on the positions held by Marcelo Lamego, Michael O'Reilly, and other former employees of Plaintiffs' who later worked for Apple, Apple had knowledge of the Asserted Patents.  In light of this knowledge, Apple knew or should have known that its development, manufacturing, marketing and sale of the Accused Products would infringe the Asserted Patents.  Because Apple has continued its acts of infringement after becoming aware of the Asserted Patents and its infringement thereof, Apple has acted in reckless disregard for Plaintiffs' patent rights.  Accordingly, Apple's infringement of the Asserted Patents has been, and continues to be, willful, deliberate, and intentional.

**II.  DOCUMENT PRODUCTION ACCOMPANYING DISLCOSURE**

Based on presently available information, pursuant to PLR 3-2(a)-(j), Plaintiffs are producing, or have already produced, at least the following documents:

| Document Category | Production Numbers |
|---|---|
| (a) Documents (e.g., contracts, purchase orders, invoices, advertisements, marketing materials, offer letters, beta site testing agreements, and third party or joint development agreements) sufficient to evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, or any public use of, the claimed invention prior to the date of application for the patent in suit. | N/A |
| (b) All documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to Patent L.R. 3-1(f), whichever is earlier | N/A |
| (c) A copy of the file history for each patent in suit | MASA00003373-723; MASA00004101-429; MASA00005428-663; MASA00006140-9555; MASA00081278-5586.[1] |

---

[1] The file history for U.S. Patent No. 6,771,994 is not available electronically on PAIR.  Plaintiffs ordered the file history from the Patent Office weeks ago, but Plaintiffs understand it has been delayed due to COVID-19.  Plaintiffs will produce the file history when they receive it.

| Document Category | Production Numbers |
|---|---|
| (d) All documents evidencing ownership of the patent rights by the party asserting patent infringement | MASA00009575-621; MASA00009672-721; MASA00009872-875; MASA00009881-930; MASA00009931-10165; MASA00085587-601. |
| (e) If a party identifies instrumentalities pursuant to Patent L.R. 3-1(g), documents sufficient to show the operation of any aspects or elements of such instrumentalities the patent claimant relies upon as embodying any asserted claims. | Plaintiffs will make appropriate source code and products available for inspection. |
| (f) All agreements, including licenses, transferring an interest in any patent-in-suit. | MASA00081226-72 |
| (g) All agreements that the party asserting infringement contends are comparable to a license that would result from a hypothetical reasonable royalty negotiation | N/A |
| (h) All agreements that otherwise may be used to support the party asserting infringement's damages case | Plaintiffs may rely on Purchasing & Licensing Agreements with third parties.[2] |

---

[2] Masimo's Purchasing & Licensing Agreements ("PLAs") with third parties are subject to confidentiality provisions that prevent Masimo from disclosing such PLAs in litigation without the consent of the corresponding third party. Masimo has not yet received consent to produce any of its PLAs in this action. To the extent Masimo intends to rely on any of its PLAs in this action, Masimo will endeavor to obtain the consent of the third party and produce the corresponding PLA as soon as reasonably possible.

-8-

| Document Category | Production Numbers |
|---|---|
| (i) If a party identifies instrumentalities pursuant to Patent L.R. 3-1(g), documents sufficient to show marking of such embodying accused instrumentalities and if it wants to preserve the right to recover lost profits based on such products, sales, revenues, costs and profits of such embodying accused instrumentalities | Pursuant to 35 U.S.C. § 287(a), Masimo virtually marks its products and identifies the following website that associates the products with the asserted patents: http://www.masimo.com/company/masimo/patents/. *See also* MASA00074890-95; MASA0081273-77 |
| (j) All documents comprising or reflecting a F/RAND commitment or agreement with respect to the asserted patent(s) | N/A |

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: __July 27, 2020__          By: */s/ Perry D. Oldham*
                                                      Joseph R. Re
                                                      Stephen C. Jensen
                                                      Perry D. Oldham
                                                      Stephen W. Larson
                                                      Adam B. Powell

                                                      Attorneys for Plaintiffs,
                                                      Masimo Corporation and
                                                      Cercacor Laboratories

-9-

## <u>PROOF OF SERVICE</u>

I am a citizen of the United States of America and I am employed in Irvine, California.  I am over the age of 18 and not a party to the within action.

On July 27, 2020, I served the within **PLAINTIFFS' INFRINGEMENT CONTENTIONS** on the parties or their counsel shown at the email addresses shown below:

Apple-Masimo@gibsondunn.com

Joshua H. Lerner
JLerner@gibsondunn.com

H. Mark Lyon,
MLyon@gibsondunn.com

Brian M. Buroker
BBuroker@gibsondunn.com

Brian K. Andrea
BAndrea@gibsondunn.com

Brian A. Rosenthal
BRosenthal@gibsondunn.com

Ilissa Samplin
ISamplin@gibsondunn.com

Angelique Kaounis
AKaounis@gibsondunn.com

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on July 27, 2020, at Irvine, California.

Karina Villanueva

33221572

Exhibit B
Page 27

# Exhibit C

Exhibit C
Page 28

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent of:     Poeze, et al.
U.S. Patent No.:    10,258,265        Attorney Docket No.: 50095-0006IP1
Issue Date:     April 16, 2019
Appl. Serial No.:    16/212,440
Filing Date:     December 6, 2018
Title:     MULTI-STREAM DATA COLLECTION SYSTEM FOR NONIN-VASIVE MEASUREMENT OF BLOOD CONSTITUENTS

**Mail Stop Patent Board**
Patent Trial and Appeal Board
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

## PETITION FOR *INTER PARTES* REVIEW OF UNITED STATES PATENT NO. 10,258,265 PURSUANT TO 35 U.S.C. §§ 311–319, 37 C.F.R. § 42

Exhibit C
Page 29

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

# TABLE OF CONTENTS

I.     REQUIREMENTS FOR IPR UNDER 37 C.F.R. §42.104............................1
    A.  Grounds for Standing Under 37 C.F.R. §42.104(a)..................................1
    B.  Challenge Under 37 C.F.R. §42.104(b) and Relief Requested ...............1
    C.  Claim Construction under 37 C.F.R. §§42.104(b)(3)..............................3
    D.  Level of Ordinary Skill in the Art...........................................................3

II.    SUMMARY OF THE '265 PATENT .........................................................4
    A.  Brief Description.....................................................................................4
    B.  Summary of the Prosecution History of the '265 Patent ........................6

III.   THE CHALLENGED CLAIMS ARE UNPATENTABLE............................6
    A.  [GROUND-1A] – Claims 1-4, 6-14, 16, 17, 19-23, and 26-29 are
        rendered obvious by Aizawa in view of Inokawa ..................................6
        1.    Overview of Aizawa.....................................................................6
        2.    Overview of Inokawa....................................................................9
        3.    Combination of Aizawa and Inokawa.........................................13
        4.    Analysis.....................................................................................22
    B.  [GROUND-1B] – Claims 1-4, 6-14, 16, 17, 19-23, and 26-29 are
        rendered obvious by Aizawa in view of Inokawa and Ohsaki ..............48
        1.    Overview of Ohsaki....................................................................48
        2.    Analysis.....................................................................................50
    C.  [GROUND-1C] – Claims 23-24 are rendered obvious by Aizawa in
        view of Inokawa and Mendelson-2006...................................................51
        1.    Overview of Mendelson-2006.....................................................51
        2.    Combination of Aizawa, Inokawa, and Mendelson-2006.............53
        3.    Analysis.....................................................................................55
    D.  [GROUND-1D] – Claims 23-24 are rendered obvious by Aizawa in
        view of Inokawa, Goldsmith, and Lo .....................................................57
        1.    Overview of Goldsmith ...............................................................57
        2.    Overview of Lo ...........................................................................58
        3.    Combination of Aizawa, Inokawa, Goldsmith, and Lo ...............59
        4.    Analysis.....................................................................................61
    E.  [GROUND-1E] – Claim 25 is rendered obvious by Aizawa in view of
        Inokawa, Mendelson-2006, and Beyer ...................................................62
    F.  [GROUND-2A] – Claims 1-4, 6-14, 16-22, and 26-30 are rendered
        obvious by Mendelson-1988 in view of Inokawa ..................................66
        1.    Overview of Mendelson-1988.....................................................66
        2.    Combination of Mendelson-1988 and Inokawa...........................67
        3.    Analysis.....................................................................................71

i

Exhibit C
Page 30

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

G.  [GROUND-2B] – Claims 23-24 are rendered obvious by Mendelson-1988 in view of Inokawa and Mendelson-2006 .....................................95

  1.  Combination of Mendelson-1988, Inokawa, and Mendelson-2006 ...............................................................................................95

  2.  Analysis ......................................................................................97

H.  [GROUND-2C] – Claim 25 is rendered obvious by Mendelson-1988 in view of Inokawa, Mendelson-2006, and Beyer .....................................98

IV.  PAYMENT OF FEES – 37 C.F.R. §42.103 ...............................................100

V.  PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION........100

A.  Factor 1: Institution will increase the likelihood of stay .....................100

B.  Factor 2: District Court schedule .........................................................100

C.  Factor 3: Apple's investment in IPR outweighs forced investment in litigation to date .................................................................................101

D.  Factor 4: The Petition raises unique issues...........................................102

E.  Factor 5: Institution would provide the Board an opportunity to invalidate claims that could later be reasserted against others .............103

F.  Factor 6: Other circumstances support institution................................104

VI.  CONCLUSION...........................................................................................104

VII.  MANDATORY NOTICES UNDER 37 C.F.R §42.8(a)(1)........................104

A.  Real Party-In-Interest Under 37 C.F.R. §42.8(b)(1)............................104

B.  Related Matters Under 37 C.F.R. §42.8(b)(2) ......................................104

C.  Lead And Back-Up Counsel Under 37 C.F.R. §42.8(b)(3)..................105

D.  Service Information ...............................................................................105

Exhibit C
Page 31

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

# EXHIBITS

| APPLE-1001 | U.S. Patent No. 10,258,265 to Poeze, et al. ("the '265 patent") |
|---|---|
| APPLE-1002 | Excerpts from the Prosecution History of the '265 Patent ("the Prosecution History") |
| APPLE-1003 | Declaration of Dr. Thomas W. Kenny |
| APPLE-1004 | Curriculum Vitae of Dr. Thomas W. Kenny |
| APPLE-1005 | *Masimo Corporation, et al. v. Apple Inc.,* Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.) |
| APPLE-1006 | U.S. Pub. No. 2002/0188210 ("Aizawa") |
| APPLE-1007 | JP 2006-296564 ("Inokawa") |
| APPLE-1008 | Certified English Translation of Inokawa and Translator's Declaration |
| APPLE-1009 | U.S. Pat. No. 7,088,040 ("Ducharme") |
| APPLE-1010 | U.S. Pat. No. 8,177,720 ("Nanba") |
| APPLE-1011 | RESERVED |
| APPLE-1012 | U.S. Pat. No. 6,853,304 ("Reisman") |
| APPLE-1013 | U.S. Pub. No. 2004/0220738 ("Nissila") |
| APPLE-1014 | U.S. Pub. No. 2001/0056243 ("Ohsaki") |
| APPLE-1015 | "Design and Evaluation of a New Reflectance Pulse Oximeter |

iii

Exhibit C
Page 32

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

Sensor," Y. Mendelson, et al.; Worcester Polytechnic Institute, Biomedical Engineering Program, Worcester, MA 01609; Association for the Advancement of Medical Instrumentation, vol. 22, No. 4, 1988; pp. 167-173 ("Mendelson-1988")

| | |
|---|---|
| APPLE-1016 | "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Y. Mendelson, et al.; Proceedings of the 28th IEEE EMBS Annual International Conference, 2006; pp. 912-915 ("Mendelson-2006") |
| APPLE-1017 | Excerpt from Merriam-Webster Dictionary |
| APPLE-1018 | "Acrylic: Strong, stiff, clear plastic available in a variety of brilliant colors," available at https://www.curbellplastics.com/Research-Solutions/Materials/Acrylic |
| APPLE-1019 | U.S. Pat. No. 7,031,728 ("Beyer") |
| APPLE-1020 | U.S. Pat. No. 7,092,735 ("Osann, Jr.") |
| APPLE-1021 | U.S. Pat. No. 6,415,166 ("Van Hoy") |
| APPLE-1022 | QuickSpecs; HP iPAQ Pocket PC h4150 Series |
| APPLE-1023 | U.S. Pat. App. Pub. No. 2007/0145255 ("Nishikawa") |
| APPLE-1024 | "Measurement Site and Photodetector Size Considerations in Optimizing Power Consumption of a Wearable Reflectance Pulse Oximeter," Y. Mendelson, et al.; Proceedings of the 25th IEEE EMBS Annual International Conference, 2003; pp. 3016-3019 ("Mendelson-2003") |
| APPLE-1025 | U.S. Pat. No. 6,801,799 ("Mendelson-'799") |
| APPLE-1026 | Declaration of Jacob Munford |
| APPLE-1027 | U.S. Pub. No. 2007/0093786 ("Goldsmith") |
| APPLE-1028 | U.S. Pub. No. 2004/0138568 ("Lo") |

iv

Exhibit C
Page 33

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

APPLE-1029    Wikipedia: The Free Encyclopedia, "Universal asynchronous receiver-transmitter" at https://en.wikipedia.org/wiki/Universal_asynchronous_receiver-transmitter, last accessed 08/27/2020

APPLE-1030    RESERVED

APPLE-1031    Scheduling Order, *Masimo v. Apple et al.*, Case 8:20-cv-00048, Paper 37 (April 17, 2020)

APPLE-1032    Stipulation by Apple

APPLE-1033    Telephonic Status Conference, *Masimo v. Apple et al.*, Case 8:20-cv-00048, Paper 78 (July 13, 2020)

APPLE-1034    Joseph Guzman, "Fauci says second wave of coronavirus is 'inevitable'", TheHill.com (Apr. 29, 2020), available at: https://thehill.com/changing-america/resilience/natural-disasters/495211-fauci-says-second-wave-of-coronavirus-is

APPLE-1035    "Tracking the coronavirus in Los Angeles County," LATimes.com (Aug. 20, 2020), available at https://www.latimes.com/projects/california-coronavirus-cases-tracking-outbreak/los-angeles-county/

v

Exhibit C
Page 34

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

Apple Inc. ("Petitioner" or "Apple") petitions for *inter partes* review ("IPR") under 35 U.S.C. §§311–319 and 37 C.F.R. §42 of claims 1-4, 6-14, and 16-30 ("the Challenged Claims") of U.S. Patent No. 10,258,265 ("'265 patent"). As explained in this petition, there exists a reasonable likelihood that Apple will prevail with respect to at least one of the Challenged Claims.

# I. REQUIREMENTS FOR IPR UNDER 37 C.F.R. §42.104

## A. Grounds for Standing Under 37 C.F.R. §42.104(a)

Apple certifies that the '265 Patent is available for IPR. The present petition is being filed within one year of service of a complaint against Apple in *Masimo Corporation, et al. v. Apple Inc.,* Civil Action No. 8:20-cv-00048 (C.D. Cal.). Apple is not barred or estopped from requesting this review challenging the Challenged Claims on the below-identified grounds.

## B. Challenge Under 37 C.F.R. §42.104(b) and Relief Requested

Apple requests an IPR of the Challenged Claims on the grounds set forth in the table below, and requests that each of the Challenged Claims be found unpatentable. Additional explanation and support is set forth in APPLE-1003, the Declaration of Dr. Thomas W. Kenny. *See* APPLE-1003, ¶¶20-240.

| Ground | Claims | Basis for Rejection |
|--------|--------|---------------------|
| Ground-1A | 1-4, 6-14, 16, 17, 19-23, | §103: Aizawa, Inokawa |

1

Exhibit C
Page 35

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

| Ground | Claims | Basis for Rejection |
|---|---|---|
| | 26-29 | |
| Ground-1B | 1-4, 6-14, 16, 17, 19-23, 26-29 | §103: Aizawa, Inokawa, Ohsaki |
| Ground-1C | 23, 24 | §103: Aizawa, Inokawa, Mendelson-2006 |
| Ground-1D | 23, 24 | §103: Aizawa, Inokawa, Goldsmith, Lo |
| Ground-1E | 25 | §103: Aizawa, Inokawa, Mendelson-2006, Beyer |
| Ground-2A | 1-4, 6-14, 16-22, 26-30 | §103: Mendelson-1988, Inokawa |
| Ground-2B | 23, 24 | §103: Mendelson-1988, Inokawa, Mendelson-2006 |
| Ground-2C | 25 | §103: Mendelson-1988, Inokawa, Mendelson-2006, Beyer |

The '265 patent claims priority to a number of U.S. patent applications, with the earliest filed on 07/02/2009 and to various provisional applications, with the earliest filed on 07/03/2008.  *See* APPLE-1001, Cover.  Solely for purposes of evaluating prior art in this proceeding and without conceding the propriety of these priority claims, this Petition will treat 07/03/2008 as the earliest alleged effective filing date (*i.e.,* the "Earliest Claimed Date") of the '265 patent.  The references relied on in the above grounds qualify as prior art to the '265 patent under either date, at least under the sections shown in the following table.  *See* APPLE-1026.  None of these references were considered during prosecution of the '265 patent.  APPLE-1002.

2

Exhibit C
Page 36

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

| Reference | Qualifying Date | Earliest Claimed Date |
|---|---|---|
| Aizawa | 12/12/2002 | 102(b) |
| Inokawa | 11/02/2006 | 102(b) |
| Ohsaki | 12/27/2001 | 102(b) |
| Mendelson-1988 | August-1988 | 102(b) |
| Mendelson-2006 | 12/26/2007 | 102(a) |
| Beyer | 04/18/2006 | 102(b) |
| Goldsmith | 04/26/2007 | 102(b) |
| Lo | 07/15/2004 | 102(b) |

### C.    Claim Construction under 37 C.F.R. §§42.104(b)(3)

Petitioner submits that all claim terms should be construed according to the *Phillips* standard. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); 37 C.F.R. §42.100. Here, based on the evidence below and the prior art's description of the claimed elements being similar to that of the '265 patent specification, no formal claim constructions are necessary in this proceeding because "claim terms need only be construed to the extent necessary to resolve the controversy." *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011).

### D.    Level of Ordinary Skill in the Art

A person of ordinary skill in the art relating to the subject matter of the '265 patent as of July 3, 2008 ("POSITA") would have been a person with a working knowledge of physiological monitoring technologies. The person would have had a Bachelor of Science degree in an academic discipline emphasizing the design of

3

Exhibit C
Page 37

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

electrical, computer, or software technologies, in combination with training or at least one to two years of related work experience with capture and processing of data or information, including but not limited to physiological monitoring technologies. APPLE-1003, ¶¶21-22. Alternatively, the person could have also had a Master of Science degree in a relevant academic discipline with less than a year of related work experience in the same discipline. *Id.*

## II.   SUMMARY OF THE '265 PATENT

### A.   Brief Description

The '265 patent is directed to "noninvasive methods, devices, and systems for measuring...physiologically relevant patient characteristics." APPLE-1001, 2:22-28; APPLE-1003, ¶¶43-52.

As illustrated in FIG. 1, the '265 patent describes a system that "include[s] a sensor 101 (or multiple sensors) that is coupled to a processing device or physiological monitor 109," where "the sensor 101 and the monitor 109 are integrated together into a single unit" or "separate from each other and communicate one with another in any suitable manner, such as via a wired or wireless connection." *Id.*, 11:56-62.

4

Exhibit C
Page 38

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1001, FIG. 1.

In use, "the detectors 106 can capture and measure light transmitted from the emitter 104 that has been attenuated or reflected from the tissue in the measurement site 102," and "[t]he detectors 106 can output a detector signal 107 responsive to the light captured or measured." *Id.*, 14:11-17. The signal can correspond to, for instance, the pulse rate of the user. *Id.*, 2:28-30. Although the '265 patent mostly describes a transmittance-type measurement device where the emitter and the detector are positioned on opposite sides of the measurement site, the claims do not distinguish over a reflectance-type device where the emitter and the detector are positioned on the same side of the measurement site. *See id.*, 14:12-15, 26:37-38; APPLE-1003, ¶48.

The '265 patent further describes that its sensor can include a plurality of detectors that are disposed within a housing and covered by a transparent cover (*i.e.*,

Exhibit C
Page 39

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

light permeable cover) having a protrusion.  *See* APPLE-1001, 36:38-49, 14D; AP-

PLE-1003, ¶50.

## B.    Summary of the Prosecution History of the '265 Patent

U.S. Patent No. 10,258,265 issued on 04/16/2019 from U.S. Patent Applica-

tion No. 16/212,440, which was filed on 12/06/2018.  APPLE-1001, Cover.  In al-

lowing the application, the examiner amended, via an examiner's amendment, the

then independent claim 2 to add "the light permeable cover comprising a protru-

sion arranged to cover the at least four detectors" and also amended the then inde-

pendent claim 38 to add "the lens portion comprising a protrusion in optical com-

munication with the at least four detectors," in so doing suggesting that the prior

art of record didn't disclose such features.  *Id.*  But such features were well-known

at the time of the '265 patent, and, had the examiner been aware of the prior ad-

vanced in this Petition, the application would not have been allowed.


## III.    THE CHALLENGED CLAIMS ARE UNPATENTABLE

### A.    [GROUND-1A] – Claims 1-4, 6-14, 16, 17, 19-23, and 26-29 are rendered obvious by Aizawa in view of Inokawa

#### 1.    Overview of Aizawa

Aizawa describes a "pulse wave sensor for detecting a pulse wave by detect-

ing light output from a light emitting diode and reflected from the artery of a wrist

of a subject."  APPLE-1006, Abstract; APPLE-1003, ¶¶53-58.

6

Exhibit C
Page 40

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

Aizawa's sensor device detects a user's pulse wave by using an emitter, namely LED 21 (shown in green), to emit light that is picked up by photodetectors 22 (shown in red) that are arranged around the LED.  APPLE-1006, [0023].  In particular, "[n]ear infrared radiation output toward the wrist 10 from the light emitting diode 21 is reflected by a red corpuscle running through the artery 11 of the wrist 10 and this reflected light is detected by the plurality of photodetectors 22 so as to detect a pulse wave."  *Id.*, [0027].



APPLE-1006, FIGS. 1(a)-1(b); APPLE-1003, ¶54.

Aizawa teaches that more detectors may be provided to "further improve detection efficiency."  APPLE-1006, [0032].  In some cases, "a plurality of light emitting diodes 21" may be provided.  *Id.*, [0033]; APPLE-1003, ¶55.

The pulse rate detector of Aizawa is designed to be worn on the wrist such that the emitter/detector assembly faces the wrist:

7

Exhibit C
Page 41

FIG. 2



APPLE-1006, [0026]; APPLE-1003, ¶58.  The emitter/detector assembly is en-cased within a circular housing, shown in red above.

Aizawa further teaches a light permeable cover in the form of an acrylic transparent plate 6 (blue) that is mounted at the detection face 23a:



Light permeable cover

Exhibit C
Page 42

APPLE-1006, FIG. 1(b), [0023]; APPLE-1003, ¶¶56-57.  This transparent plate not only provides a light permeable cover that covers the emitter/detector assembly, in a manner similar to what is described in the '265 patent, but it also provides improved adhesion between the detector and the wrist to "further improv[e] the detection efficiency of a pulse wave."  APPLE-1006, [0030]; APPLE-1003, ¶57.

### 2.    Overview of Inokawa

Similar to Aizawa, Inokawa teaches an optical "pulse sensor."  APPLE-1008, [0056]; APPLE-1003, ¶59.[1]  The pulse sensor of Inokawa can be attached the user's wrist using a wristband 5:



APPLE-1008, FIG. 1, [0057].

---

[1] JP 2006-296564 to Inokawa (APPLE-1007) was published in Japanese.  Thus, all citations to Inokawa are to its English translation (APPLE-1008).

Exhibit C
Page 43

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

Referring to FIG. 2 below, Inokawa senses pulse by using a photodiode detector 25 (shown in red) to receive "light reflected off of the body (i.e. change in the amount of hemoglobin in the capillary artery)." APPLE-1008, [0058]. Inokawa teaches that "sensor-side light-emitting means of various kinds, such as an infrared LED or a green LED" can be used and that "work can be divided between" them as needed. APPLE-1008, [0014]. For example, green light from LED 21 (shown in green) can be used to sense the pulse while infrared light from LED 23 (shown in purple) can be used to sense body motion. APPLE-1008, [0058]-[0059] .



APPLE-1008, FIG. 2; APPLE-1003, ¶60.

Inokawa further teaches that a lens 27 can be "placed on the surface of the sensor-side light-emitting means" to thereby "make[] it possible to increase the light-gathering ability of the LED as well as to protect the LED or PD." APPLE-1008, [0015], [0058]. This structure corresponds to the light permeable cover

Exhibit C
Page 44

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

comprising a protrusion as recited in claim 1 of the '265 patent.  APPLE-1003,

¶61.



APPLE-1008, FIG. 2.

Inokawa also teaches that its sensor (red) can be mounted onto a base device

(blue) that acts as a "charger with communication functionality":

Exhibit C
Page 45

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1008, FIG. 3, [0060]; APPLE-1003, ¶62.  When mounted, vital sign information can be transmitted from the sensor to the base device by using the same LEDs used to measure pulse and body motion.  APPLE-1008, [0066]-[0077], [0109]-[0111].  Referring to FIG. 7, Inokawa teaches that vital sign information from the sensor can be transmitted to a PC (purple) via the base device:

12

Exhibit C
Page 46

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1008, FIG. 7, [0066]-[0077]; APPLE-1003, ¶63.

### 3.    Combination of Aizawa and Inokawa

A POSITA would have been motivated to combine Aizawa and Inokawa ("Aizawa-Inokawa") to obtain additional benefits.  APPLE-1003, ¶¶76-85, 94-99.

(a)    <u>Protrusion</u>

Beyond Aizawa's disclosure that its light permeable cover is an acrylic transparent plate that helps improve "detection efficiency," Aizawa does not provide much other detail, for instance regarding its shape.  APPLE-1006, [0030].  A POSITA would have realized, however, that the plate could be given a shape to achieve Aizawa's objective of improving detection efficiency and, further, would have known how to achieve such shape.  *Id.*, [0013], [0030], [0032]; APPLE-1009 at 3:46-51; APPLE-1003, ¶94.

13

Exhibit C
Page 47

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

A POSITA would have looked to Inokawa to enhance light collection effi-

ciency, specifically by modifying the light permeable cover of Aizawa to include a

convex protrusion that acts as a lens.  APPLE-1003, ¶95-99.  Indeed, as discussed

above in Section III.A.2, Inokawa discloses a lens 27 that is positioned between the

sensor and skin:



APPLE-1008, FIG. 2; APPLE-1003, ¶95.  Inokawa further discloses that the "lens

makes it possible to increase the light-gathering ability of the LED."  APPLE-

1008, [0015].  Thus, a POSITA would have sought to incorporate an Inokawa-like

lens into the cover of Aizawa to increase the light collection efficiency, which

would lead to an improved signal-to-noise ratio (and more reliable pulse detec-

tion).  APPLE-1003, ¶¶96-97.  The lens of Inokawa would provide precisely such a

benefit to Aizawa's device by refracting/concentrating the incoming light signals

reflected by the blood.  *Id.*

14

Exhibit C
Page 48

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

As illustrated below, the device resulting from the obvious combination of Aizawa and Inokawa would have replaced the flat cover (left) with a curved one as per Inokawa (right) to "increase the light-gathering ability."  APPLE-1008, [0015]; APPLE-1003, ¶97.



APPLE-1006, FIG. 1(b); APPLE-1003, ¶97.

A POSITA would have understood how to implement Inokawa's lens-shaped cover in Aizawa's device with a reasonable expectation of success, stemming from the significant overlap across the references in their teaching.  APPLE-1003, ¶98.  For example, as illustrated below, Inokawa teaches that its cover may be either flat (left) such that "the surface is less prone to scratches," APPLE-1008 at [0106], or in the form of a lens (right) to "increase the light-gathering ability of the LED."  *Id.* at [0015].

15

Exhibit C
Page 49

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1008, FIG. 17 (left), FIG. 16 (right); APPLE-1003, ¶98.  A POSITA

would have further recognized that the transparent acrylic material used to make

Aizawa's plate can be readily formed into a lens-like shape as in Inokawa.  AP-

PLE-1003, ¶99 (citing to APPLE-1009 at 3:46-51, FIG. 1, APPLE-1023, FIG. 6,

[0022], [0032], [0035]).  Thus, a POSITA wanting to achieve improved light col-

lection efficiency over reduced susceptibility to scratches could have readily modi-

fied Aizawa's cover to have a lens shape as per Inokawa.  APPLE-1003, ¶99.

The above-described modification would require only routine knowledge of

sensor design and assembly, which were well within the skill of a POSITA prior to

the Critical Date.  APPLE-1003, ¶99.  Thus, to achieve Aizawa's and Inokawa's

shared goal of improving light collection efficiency, a POSITA would have been

motivated to modify Aizawa's light permeable cover to have a lens shape as per

Inokawa with a reasonable expectation of success.  APPLE-1003, ¶¶94-99.

Exhibit C
Page 50

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

(b)      Plurality of emitters

While Aizawa contemplates the use of multiple emitters, Aizawa never specifically identifies the use of multiple emitters operating at different wavelengths in conjunction with multiple detectors.  *Id.*, [0033]; APPLE-1003, ¶¶74-85.

In this context, Inokawa discloses using two different types of emitters "such as an infrared LED or a green LED" and that "work can be divided between the various means, with an infrared LED used to detect vital signs and transmit vital sign information, and a green LED used to detect pulse."  APPLE-1008, [0014]; *see also id.*, [0044], [0058], [0059]; APPLE-1003, ¶75.

A POSITA reviewing Aizawa and Inokawa would have recognized Inokawa's use of two different emitters operating at different wavelengths as a desirable configuration that would reap similar benefits for Aizawa.  APPLE-1003, ¶76. For example, while Aizawa only expressly mentions using "light having a wavelength of an infrared range" to detect the pulse rate, Inokawa discloses dividing the role of a single LED into two different LEDs, specifically "with an infrared LED used to detect vital signs and transmit vital sign information, and a green LED used to detect pulse."  APPLE-1008, [0014], [0044], [0058], [0059].  A POSITA would have recognized, in view of Inokawa, that providing an additional emitter to Aizawa would allow Aizawa's device to use its existing infrared LED to detect body motion while using the added green LED to detect pulse.  *Id.*, [0059]; APPLE-

17

Exhibit C
Page 51

1003, ¶77.  Indeed, Inokawa expressly teaches that its "infrared LED 23 serves to sense body motion from the change in this reflected light" and that its "green LED 21" is used to "sense the pulse from the light reflected off of the body."  APPLE-1008, [0059].  Various other prior art pulse sensing devices teach using a first LED emitting at less than 600 nm (*e.g.*, green) for measuring blood flow and a second LED emitting at greater than 600 nm (*e.g.*, infrared) for measuring body movement.  APPLE-1003, ¶77 (citing to APPLE-1010, 8:45-50).  The added ability to measure body movement can allow for a more reliable pulse measurement that takes into account and corrects for inaccurate readings stemming from body movement.  *Id.*  Thus, a POSITA would have been motivated and found it obvious to divide the single emitter of Aizawa, as shown below, into two emitters operating at two different wavelengths.  *Id.*



APPLE-1006, Fig. 1(b); APPLE-1003, ¶¶77-78.

Exhibit C
Page 52

A POSITA would have found it obvious to modify Aizawa with Inokawa to add an additional emitter because doing so merely entails the use of known solutions to improve similar systems and methods in the same way.  APPLE-1003, ¶¶78-79.  Indeed, "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 417 (2007).  A POSITA would have recognized that applying Inokawa's teachings regarding two different LEDs to Aizawa's sensor would have led to predictable results without significantly altering or hindering the functions performed by Aizawa's sensor.  APPLE-1003, ¶¶78-79.  A POSITA would have been motivated to provide the well-known feature of providing multiple emitters to a pulse sensor to achieve the predictable benefits offered by Inokawa's description of the same.  *Id.*  In fact, Aizawa itself contemplates the addition of extra emitters, albeit for a different purpose.  APPLE-1006, [0033]; APPLE-1003, ¶78.

In addition to the above-described rationale for adding an extra emitter to Aizawa, **Inokawa provides another, or alternative, motivation** for improving Aizawa by adding a second LED/emitter.  Specifically, Aizawa contemplates uploading data to a base device yet is silent about how such data transmission would

19

Exhibit C
Page 53

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

be implemented, instead leaving such implementation details to the POSITA.  AP-

PLE-1006, [0015], [0023], [0035]; APPLE-1003, ¶¶80-86.  In this context, as de-

scribed in Section III.A.2, Inokawa teaches a base device 17 (blue) that is able to

both charge and receive data from the pulse sensor 1 (red):



APPLE-1008, FIG. 3, [0060]; APPLE-1003, ¶81.  By using the sensor's infrared

emitter to transmit data, "it is not necessary to use a wireless communication cir-

cuit or to establish connections via communication cable, which makes it possible

to easily transmit vital sign information with few malfunctions and with a simple

structure."  APPLE-1008, [0007].  A POSITA would have been motivated and

found it obvious and straightforward to incorporate Inokawa's base device and

LED-based data transmission into Aizawa to, for instance, "make[] it possible to

transmit vital sign information to the base device 17 accurately, easily, and without

20

Exhibit C
Page 54

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

malfunction." *Id.,* [0077].  A POSITA would have further recognized that incorporating Inokawa's base device and LED-based data transmission would allow Aizawa to upload data from its sensor in a way that is wireless (thus avoiding the problems of a physical cable) and that does not require a separate RF circuit.  *Id.*, [0007]; APPLE-1003, ¶82.

Notably, Inokawa's sensor is able to transmit data using only a single IR LED.  APPLE-1008, [0062].  However, with reference to FIG. 19 below, Inokawa further teaches that using *two LEDs* further helps improve data transmission accuracy by using the second LED, such as green LED, to transmit checksum information such that "the accuracy of data can be increased." *Id.*, [0111], [0044], [0048]; APPLE-1003, ¶83.



APPLE-1008, FIG. 19; APPLE-1003, ¶83.  Thus, a POSITA would have been motivated and found it obvious to supplement Aizawa's IR LED/emitter with a green

21

Exhibit C
Page 55

LED/emitter to, as per Inokawa, improve accuracy of data transmission from its sensor.  APPLE-1003, ¶84

A POSITA would have found it obvious to modify Aizawa with Inokawa in this manner because doing so entails the use of known solutions to improve similar systems and methods in the same way.  APPLE-1003, ¶85.  Here again, "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious."  *KSR*, 550 U.S. at 417.  A POSITA would have recognized that applying Inokawa's base device and dual-LED-based data transmission to Aizawa's sensor would have led to predictable results without significantly altering or hindering the functions performed by Aizawa's sensor.  APPLE-1003, ¶85.  Indeed, a POSITA would have had a reasonable expectation of success in making this modification, and would have reasonably expected to reap benefits of simple and accurate data transmission.  *Id.*

## 4.    Analysis

### Claim 1

**[1pre]: "A noninvasive optical physiological measurement device adapted to be worn by a wearer, the noninvasive optical physiological measurement device providing an indication of a physiological parameter of the wearer comprising:"**

Aizawa discloses a measurement device in the form of a pulse sensor that is designed to "detect[] the pulse wave of a subject from light reflected from a red

Exhibit C
Page 56

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

corpuscle in the artery of a wrist of the subject by irradiating the artery of the wrist[.]" APPLE-1006, [0002]; APPLE-1003, ¶73.  Aizawa's sensor is designed to be worn on the wrist:



APPLE-1006, FIG. 2, [0026].

**[1a]: "a plurality of emitters of different wavelengths;"**

As explained above in Section III.A.3(b), Inokawa discloses using two emitters at different wavelengths, and a POSITA would have found it obvious to incorporate the two LEDs of Inokawa into Aizawa, as illustrated below.  *Supra* Section III.A.3; APPLE-1003, ¶¶74-86.

Exhibit C
Page 57

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1006, Fig. 1(b); APPLE-1003, ¶77.

It would have been obvious to split the single LED/emitter of Aizawa into two LEDs/emitters having different wavelengths to, for instance, acquire body motion information for improved pulse detection and/or more reliably transmit information from the sensor to a base device with less error.  APPLE-1008, [0007], [0014], [0044], [0048], [0058], [0058], [0059], [0060], [0062], [0077], [0111]; APPLE-1003, ¶¶74-86.

## [1b]: "a housing having a surface and a circular wall protruding from the surface;"

Aizawa discloses "a holder 23 for storing the above light emitting diode 21 and the photodetectors 22."  APPLE-1006, [0023], [0024].  Moreover, Aizawa includes a flat surface (brown) on which the holder 23 is placed:

24

Exhibit C
Page 58

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1006, FIG. 1(b); APPLE-1003, ¶87.  The holder and the flat surface to-
gether provide the claimed housing (red).  APPLE-1003, ¶¶87-88.  Aizawa's
holder provides a circular wall (purple) that protrudes from the surface:



Apple-1006, FIG. 1(a); APPLE-1003, ¶88.

**[1c]: "at least four detectors arranged on the surface and spaced apart from
each other, the at least four detectors configured to output one or more
signals responsive to light from the one or more light emitters attenuated
by body tissue, the one or more signals indicative of a physiological pa-
rameter of the wearer; and"**

25

Exhibit C
Page 59

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

Aizawa discloses "*four photodetectors 22* disposed around the light emitting diode 21 symmetrically on a circle concentric to the light emitting diode 21." APPLE-1006, [0029], [0024], [0032].



APPLE-1006, FIG. 1(a); APPLE-1003, ¶89.  The four detectors are spaced apart from each other by being arranged symmetrically along a circle.  *Id.*  The four detectors, which are connected to a drive circuit 24 on the other side of the housing, are arranged on the surface of the housing:

Exhibit C
Page 60

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1006, FIG. 1(b); APPLE-1003, ¶90.

The detectors of Aizawa detect light "reflected by a red corpuscle running through the artery 11 of the wrist 10...so as to detect a pulse wave."  APPLE-1006, [0027].  Aizawa's device "detect[s] a pulse wave by amplifying the outputs of the photodetectors 22." *Id.*, [0023].  For example, Aizawa's detectors output "waveform of a pulse wave," and the output can be amplified and "converted into a digital signal for the computation of a pulse rate." *Id.*, [0028].  Thus, the detectors of Aizawa "output one or more signals responsive to light from the one or more light emitters attenuated by body tissue."  APPLE-1003, ¶91.

Exhibit C
Page 61

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

**[1d]: "a light permeable cover arranged above at least a portion of the housing, the light permeable cover comprising a protrusion arranged to cover the at least four detectors."**

Aizawa teaches a light permeable cover in the form of an acrylic transparent plate 6 (blue) that is mounted at the detection face 23a over at least a portion of the housing to cover the at least four detectors (red):



APPLE-1006, FIG. 1(b), [0023]; APPLE-1003, ¶¶92-93.

Although Aizawa does not expressly disclose a light permeable cover "comprising a protrusion," the combination of Aizawa and Inokawa, as described above in Section III.A.3(a) and incorporated herein, provides a cover having a convex protrusion/lens for improving light-gathering ability.  APPLE-1008, FIG. 2, [0015], [0030], [0039], [0058], [0099], [0107]; APPLE-1003, ¶¶94-99.  As noted, a POSITA would have found it obvious to modify the flat acrylic plate of Aizawa,

Exhibit C
Page 62

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

as illustrated below, to further Aizawa's objective of enhancing light-collection efficiency.  APPLE-1006, [0013], [0030], [0032]; APPLE-1008, [0015]; APPLE-1003, ¶97.



APPLE-1006, FIG. 1(b); APPLE-1003, ¶97.

## Claim 2

**[2]: "The noninvasive optical physiological measurement device of claim 1, wherein the light permeable cover is attached to the housing and forms an airtight or substantially airtight seal enclosing the at least four detectors."**

As discussed for [1d], Aizawa's light permeable cover is attached to the housing and encloses the detectors:

Exhibit C
Page 63

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1006, FIG. 1(b), [0023]; APPLE-1003, ¶100.

Moreover, a POSITA would have recognized that a wrist-worn, watch-like device, as in Aizawa as well as Inokawa, would be airtight or substantially airtight. APPLE-1003, ¶101. Indeed, it was well-known before the Critical Date that wrist-watch-type monitoring devices are hermetically sealed for improved convenience and functionality, particularly in a device as in Aizawa that is designed for measuring heart rate during exercise. APPLE-1003, ¶101 (citing to APPLE-1012, 5:11-20, 7:1-9; APPLE-1013, [0032]; APPLE-1006, [0004]). Otherwise, condensation, sweat, and other undesirable elements may enter and damage the internal electronics of Aizawa-Inokawa. *Id.* Thus, a POSITA would have recognized or found it obvious that the light permeable cover of Aizawa-Inokawa would form an airtight or substantially airtight seal enclosing the at least four detectors. *Id.*

30

Exhibit C
Page 64

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

## Claim 3

**[3]: "The noninvasive optical physiological measurement device of claim 2, wherein the circular wall creates a gap between the surface and the light permeable cover."**

Aizawa-Inokawa renders obvious [3]. *Supra* Ground-1A [1b]-[1d]; APPLE-1003, ¶¶102-103. For example, the acrylic plate (*i.e.,* light permeable cover) of Aizawa is separated from the surface of the housing by a gap whose size is defined by the height of the circular wall:



APPLE-1006, FIG. 1(b); APPLE-1003, ¶102. To the extent Patent Owner alleges that the gap must include an air gap, which Petitioner doesn't agree with, Aizawa discloses cavities 23b/23c for emitters/detectors that are defined by the housing and the light permeable cover. APPLE-1003, ¶103.

## Claim 4

**[4]: "The noninvasive optical physiological measurement device of claim 2, wherein the housing provides noise shielding for the at least four detectors."**

31

Exhibit C
Page 65

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

The housing of Aizawa, including the holder 23, is opaque and therefore shields the detectors from unwanted ambient light coming from outside the housing.  APPLE-1006, [0012], [0024], FIG. 1(b); APPLE-1003, ¶104.  Indeed, Aizawa describes that cavities formed within the holder 23 define the light receiving area; thus, the filled-in portions of the holder are opaque and effective in blocking light. APPLE-1006, [0024], FIG. 1(b); APPLE-1003, ¶104.

Additionally, Inokawa discloses placing a "visible light-blocking film" in the housing to "block noise from visible light":



APPLE-1008, FIG. 16, [0105]-[0106]; APPLE-1003, ¶105.

Thus, in the Aizawa-Inokawa combination outlined in Section III.A.3(b), a POSITA would have found it obvious to add a similar light-blocking film to the housing of Aizawa—*e.g.,* beneath the acrylic plate and above the detectors—to prevent noise from undesired ambient light generated outside the housing from reaching the detectors while still allowing the desired wavelengths, such as the IR signals, to pass through, thereby reducing the effects of noise and ensuring good

32

Exhibit C
Page 66

light collection efficiency.  APPLE-1003, ¶106.  A POSITA would have recognized that doing so entails the use of known solutions to improve similar systems and methods in the same way.  *Id.*  A POSITA would have recognized that applying Inokawa's light-blocking film to Aizawa's housing would have led to predictable result of reducing noise and improving signal collection without significantly altering or hindering the functions performed by Aizawa.  *Id.*

## Claim 6
**[6]: "The noninvasive optical physiological measurement device of claim 3, wherein the protrusion comprises a continuous protrusion."**

Aizawa-Inokawa renders obvious [6].  *Supra* Ground-1A [1d], Section III.A.3(a).  For example, the lens/protrusion of Inokawa that is incorporated into Aizawa is a continuous protrusion:



APPLE-1008, FIG. 2; APPLE-1003, ¶¶107-108.

33

Exhibit C
Page 67

## Claim 7

**[7]: "The noninvasive optical physiological measurement device of claim 6, wherein the continuous protrusion comprises a convex protrusion."**

Aizawa-Inokawa renders obvious [7]. *Supra* Ground-1A [1d], [7], Section III.A.3(a); APPLE-1003, ¶¶109-110.  For example, Inokawa discloses that its lens/protrusion is a convex protrusion.  APPLE 1008, [0099], [0107], FIGS. 2, 3, 16, 19; APPLE-1003, ¶¶109-110.

## Claim 8

**[8]: "The noninvasive optical physiological measurement device of claim 6, wherein the light permeable cover is comprised of a rigid material."**

The light permeable cover of Aizawa, as modified by Inokawa, would be made of transparent acrylic, which is a well-known rigid material.  APPLE-1006, [0023], [0026], [0030], [0034]; APPLE-1003, ¶111 (citing to APPLE-1018).  To the extent Patent Owner argues the lens/protrusion of Aizawa-Inokawa is not rigid, a POSITA would have found it obvious to use a rigid material to form the lens/protrusion because a rigid lens better preserves its shape and, thereby, offers improved optical performance relative to a pliable lens.  APPLE-1003, ¶112.  Such a rigid lens would provide improved optical performance and light-gathering ability compared to a non-rigid lens that may partially or completely lose its shape during use, degrading its optical properties.  *Id*.

## Claim 9

**[9]: "The noninvasive optical physiological measurement device of claim 8, wherein the light permeable cover is configured to be positioned between**

34

Exhibit C
Page 68

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

**the at least four detectors and tissue of a user when the noninvasive optical physiological measurement device is worn by the user."**

Aizawa-Inokawa renders obvious [9].  *Supra* Ground-1A [1d]; APPLE-1003, ¶¶113-114.  In particular, the light permeable cover of Aizawa is, when worn, positioned between the detectors and the tissue of the user:



APPLE-1006, FIG. 1(b); APPLE-1003, ¶113.  The light permeable cover of Aizawa as modified in view of Inokawa is similarly positioned:

35

Exhibit C
Page 69

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1006, FIG. 1(b) (modified); APPLE-1003, ¶114.

## Claim 10

**[10]: "The noninvasive optical physiological measurement device of claim 9,
wherein the light permeable cover is configured to press against and at
least partially deform tissue of the user when the noninvasive optical
physiological measurement device is worn by the user."**

Aizawa-Inokawa renders obvious [10].  *Supra* Ground-1A [1d]; APPLE-

1003, ¶¶115-116.  In particular, the light permeable cover of Aizawa is designed to

be pressed into the skin with pressure.  APPLE-1006, [0006], [0026]; APPLE-

1003, ¶115.  This will cause at least some deformation of the tissue to occur be-

cause the skin is more pliable than an acrylic plate:

36

Exhibit C
Page 70

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1008, FIG. 2; APPLE-1003, ¶115.

Similarly, applying the lens/protrusion of Inokawa to Aizawa in the manner described above in Section III.A.3(a) will cause the tissue of the user to deform around the convex surface of the lens/protrusion when the device is pressed against the tissue:



37

Exhibit C
Page 71

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

APPLE-1006, FIG. 1(b) (modified); APPLE-1003, ¶116.

## Claim 11

**[11]: "The noninvasive optical physiological measurement device of claim 10, wherein the light permeable cover is configured to act as a tissue shaper and conform tissue of the user to at least a portion of an external surface shape of the light permeable cover when the noninvasive optical physiological measurement device is worn by the user."**

Aizawa-Inokawa renders obvious [11]. *Supra* Ground-1A [10]; APPLE-1003, ¶117. As explained for [10], the light permeable cover of Aizawa-Inokawa deforms the tissue around the lens/protrusion when pressed against the wrist of the user. APPLE-1003, ¶117. Thus, the light permeable cover shapes the tissue around its external surface when the device is worn. *Id.*

## Claim 12

**[12]: "The noninvasive optical physiological measurement device of claim 11, wherein the light permeable cover is configured to reduce a mean path length of light traveling to the at least four detectors."**

A POSITA would have recognized that such feature is rendered obvious by Aizawa-Inokawa. APPLE-1003, ¶118. For example, the lens/protrusion of Inokawa, which is used to modify Aizawa as explained in Section III.A.3(a), serves a condensing function and thus, as with any other lens, refracts light passing through it. APPLE-1008, [0015], [0058]; APPLE-1003, ¶119. Thus, referring to the drawing below which compares the length of non-refracted light (*i.e.*, without a lens, left) bouncing off an artery with that of refracted light (*i.e.*, with a lens, right),

38

Exhibit C
Page 72

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

it can be seen that the mean path length of light traveling to the at least four detectors is reduced—that is, the purple line is shorter than the redline.  APPLE-1003, ¶119.  This holds true for both the total length travelled as well as length travelled/attenuated through skin.  *Id.*



APPLE-1003, ¶119.

Superimposing the two drawings above clearly shows the shortened path traveled by refracted light in the presence of a protrusion/lens, both within the tissue as well as for total path length:



APPLE-1003, ¶120.

Exhibit C
Page 73

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

## Claim 13

**[13]: "The noninvasive optical physiological measurement device of claim 11,
wherein the at least four detectors are evenly spaced from one another."**

Aizawa-Inokawa renders obvious [13].  *Supra* Ground-1A [1c]; APPLE-

1003, ¶121.  Indeed, the four detectors of Aizawa are evenly spaced from one an-

other:



APPLE-1006, FIG. 1(a); APPLE-1003, ¶121.

## Claim 14

**[14]: "The noninvasive optical physiological measurement device of claim 1,
wherein the light permeable cover is configured to reduce a mean path
length of light traveling to the at least four detectors."**

Aizawa-Inokawa renders obvious [14].  *Supra* Ground-1A [12]; APPLE-

1003, ¶122.

## Claim 16

40

Exhibit C
Page 74

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

**[16]: "The noninvasive optical physiological measurement device of claim 13,
wherein the light permeable cover is configured to increase a signal
strength per area of the at least four detectors."**

The combination of Aizawa and Inokawa, as described above in Section

III.A.3(a) and Ground-1A [1d] (incorporated herein), provides a light permeable

cover having a convex protrusion that acts as a lens for improving light-gathering

ability.  APPLE-1003, ¶123.  A POSITA would have recognized that such a lens

structure, as in Inokawa, condenses light onto the detectors, thereby increasing the

signal-to-noise ratio and the signal strength per area of the detectors.  APPLE-

1003, ¶123.

**Claim 17**
**[17]: "The noninvasive optical physiological measurement device of claim 1,
wherein the physiological parameter is pulse rate."**

Aizawa-Inokawa renders obvious [17].  *Supra* Ground-1 [1pre]; APPLE-

1003, ¶124.  For example, Aizawa discloses measuring pulse rate.  *See* APPLE-

1006, [Abstract], [0002], [0008], [0023]-[0036].   Inokawa is also directed to a de-

vice for measuring pulse rate.  *See* APPLE-1008, Abstract, [0001], [0007], [0056]-

[0072].

**Claim 19**
**[19]: "The noninvasive optical physiological measurement device of claim 1,
wherein the noninvasive optical physiological measurement device is a
disposable or a reusable device."**

Exhibit C
Page 75

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

A POSITA would have recognized that the wrist-worn device of Aizawa would be reusable because, among other things, it would be cost-prohibitive to use such a device once and discard each time.  Moreover, Aizawa teaches attaching the sensor to the user's wrist using an attachment belt 7.  APPLE-1006, [0023].  Aizawa also teaches that attaching in this manner using the attachment belt "mak[es] it possible to carry [the pulse rate detector] for a long time."  *Id.*, [0026], [0031].  A POSITA would have recognized that such a device for long-term use is a reusable device.  APPLE-1003, ¶125.  Moreover, if Mendelson-1988 is not reusable, then it is disposable.  *Id.*

**Claim 20**
**[20]: "The noninvasive optical physiological measurement device of claim 1, wherein a first detector is arranged spaced apart from a second detector, and a third detector arranged spaced apart from a fourth detector."**

Aizawa-Inokawa renders obvious [19].  *Supra* Ground-1A [1c], [13]; APPLE-1003, ¶126.  The four detectors of Aizawa are spaced from one another in the manner claimed:

42

Exhibit C
Page 76



APPLE-1006, FIG. 1(a).


## Claim 21
**[21]: "The noninvasive optical physiological measurement device of claim 20, wherein the first detector is arranged across a central axis from the second detector and the third detector is arranged across the central axis from the fourth detector, wherein the first, second, third and fourth detectors form a cross pattern about the central axis."**

The four detectors of Aizawa form a cross pattern (blue) about a central axis

in the manner claimed:

43

Exhibit C
Page 77

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1006, FIG. 1(a); APPLE-1003, ¶127.

**Claim 22**

**[22]: "The noninvasive optical physiological measurement device of claim 20, wherein the noninvasive optical physiological measurement device provides a variation in optical path length to the at least four detectors."**

As discussed in Ground-1A [12] and incorporated herein, Aizawa-Inokawa provides a lens/protrusion that refracts and changes the optical path length to the detectors.  APPLE-1003, ¶128.  Moreover, as Dr. Kenny explains, "since the process for getting light into and out of the tissue depends on scattering, light entering and returning from the tissue will follow many different random paths, with many different lengths."  APPLE-1003, ¶128.

**Claim 23**

**[23]: "The noninvasive optical physiological measurement device of claim 1, wherein the noninvasive optical physiological measurement device is comprised as part of a mobile monitoring device."**

44

Exhibit C
Page 78

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

Aizawa discloses that its "pulse rate detector 1" can be "attached to the wrist 10 with the belt 7...thereby making it possible to carry it for a long time."  APPLE-1006, [0026], [0023], [0031].  Thus, the detector of Aizawa (*i.e.*, noninvasive optical physiological measurement device) becomes a part of a mobile monitoring device, which can be comfortably carried around by the user, by being attached to the user's wrist using a belt.  APPLE-1006, [0026].  In this manner, the detector 1 and belt 7 of Aizawa together provide the mobile monitoring device.  APPLE-1003, ¶129.

## Claim 26

**[26pre]: "A noninvasive optical physiological measurement device adapted to be worn by a wearer providing an indication of a physiological parameter of the wearer comprising:"**

*Supra* Ground-1A [1pre].  APPLE-1003, ¶130.

**[26a]: "a plurality of emitters of different wavelengths;"**

*Supra* Ground-1A [1a].  APPLE-1003, ¶131.

**[26b]: "a circular housing comprising a surface with a raised edge;"**

As explained above for [1b],  Aizawa teaches a holder and a flat surface that together provide the claimed housing.  APPLE-1006, [0023]-[0024].  Further, Aizawa's housing is circular and includes a surface with a raised edge:

45

Exhibit C
Page 79

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1006, FIGS. 1(a)-1(b); APPLE-1003, ¶132.

**[26c]: "at least four detectors arranged on the surface, wherein a first detector is arranged spaced apart from a second detector, and a third detector arranged spaced apart from a fourth detector; and"**

*Supra* Ground-1A [1c], [13].  APPLE-1003, ¶133.

**[26d]: "a cover of the circular housing comprising a lens portion, the lens portion comprising a protrusion in optical communication with the at least four detectors,"**

*Supra* Ground-1A [1d].  APPLE-1003, ¶134.  In particular, because reflected light received by Aizawa's four detectors passes through the protruded lens portion as provided by Inokawa, the lens/protrusion is in optical communication with the detectors.  APPLE-1006, FIG. 1(b), [0023].

**[26e]: "wherein the at least four detectors are configured to output one or more signals responsive to light from the one or more light emitters attenuated by body tissue, the one or more signals indicative of a physiological parameter of the wearer."**

*Supra* Ground-1A [1c].  APPLE-1003, ¶135.

**Claim 27**

46

Exhibit C
Page 80

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

[27]: "**The noninvasive optical physiological measurement device of claim 26, wherein the first detector is arranged across a central axis from the second detector and the third detector is arranged across the central axis from the fourth detector, wherein the first, second, third and fourth detectors form a cross pattern about the central axis.**"

*Supra* Ground-1A [21].  APPLE-1003, ¶136.

## Claim 28

[28]: "**The noninvasive optical physiological measurement device of claim 26, wherein the at least four detectors are arranged in a grid pattern such that the first detector and the second detector are arranged across from each other on opposite sides of a central point along a first axis, and the third detector and the fourth detector are arranged across from each other on opposite sides of the central point along a second axis which is perpendicular to the first axis.**"

*Supra* Ground-1A [21].  For example, the four detectors of Aizawa are arranged relative to a central point and first/second axes in the manner claimed, with the first/second axes being perpendicular to each other:



47

Exhibit C
Page 81

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

APPLE-1006, FIG. 1(a); APPLE-1003, ¶137.  Also, as seen above, the detectors are arranged in a grid pattern.  *Id.*

**Claim 29**

**[29]: "The noninvasive optical physiological measurement device of claim 27, wherein the first, second, third and fourth detectors form a cross pattern about the central axis."**

*Supra* Ground-1A [21].  APPLE-1003, ¶138.

### B.   [GROUND-1B] – Claims 1-4, 6-14, 16, 17, 19-23, and 26-29 are rendered obvious by Aizawa in view of Inokawa and Ohsaki

#### 1.   Overview of Ohsaki

Ohsaki is generally directed to "[a] pulse wave sensor includes a detecting element and a sensor body" where "[t]he pulse wave sensor is worn on the back side of a user's wrist."  APPLE-1014, Abstract.  As seen below, the pulse sensor of Ohsaki is "worn on the back side of the user's wrist 4...in the similar manner as a wristwatch is normally worn,"  *Id.*, [0016]; APPLE-1003, ¶65.

48

Exhibit C
Page 82

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1014, FIG. 1.

Referring to FIG. 2 below, Ohsaki can sense pulse by emitting light through a light emitting element 6 and detecting reflected light using a light receiving element 7.  APPLE-1014, [0017].  Ohsaki also provides a translucent board 8  that is transparent to light and includes a convex surface "in intimate contact with the surface of the user's skin."  *Id.*, [0009], [0017].

49

Exhibit C
Page 83

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1014, FIG. 2; APPLE-1003, ¶64.

### 2. Analysis

As described above in Ground-1A and Section III.A.3(a), a POSITA would have sought to incorporate an Inokawa-like lens into the cover of Aizawa to increase the light collection efficiency.  Here, Ohsaki provides an additional motivation and rationale for a POSITA to modify Aizawa to include a "light permeable cover comprising a protrusion" as per element [1d].  APPLE-1003, ¶¶139-140.

For example, Ohsaki teaches that adding a convex surface to the light permeable cover (*i.e.*, translucent board 8) can help prevent the device from slipping on the tissue when compared to a flat cover.  APPLE-1014, [0025]; APPLE-1003,

Exhibit C
Page 84

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

¶141. In this context, Aizawa similarly seeks to prevent slippage between the device and the user's wrist—and pursues this objective by pressing its light permeable cover (*i.e.*, acrylic transparent plate 6) and trying to improve "adhesion between the wrist 10 and the pulse rate detector 11." APPLE-1006, [0026], [0030].

A POSITA reviewing Aizawa and Ohsaki would have recognized Ohsaki's use of a convex protrusion in its light permeable cover as a desirable configuration that would help to further prevent slippage of Aizawa's device. APPLE-1003, ¶142. Thus, a POSITA wanting to achieve improved adhesion between the detector and the skin, as expressly recognized in Aizawa, would have readily modified Aizawa's cover to have a convex protrusion as per Ohsaki. *Id.*

The resulting combination would have provided all remaining elements of claims 1-4, 6-17, 19-23, and 26-29 in the same manner as previously described in Ground-1A; APPLE-1003, ¶143.

### C. [GROUND-1C] – Claims 23-24 are rendered obvious by Aizawa in view of Inokawa and Mendelson-2006

#### 1. Overview of Mendelson-2006

Mendelson-2006 is generally directed to a "wireless wearable pulse oximeter" device. APPLE-1016, 912; APPLE-1003, ¶¶69-71. Mendelson-2006's pulse oximeter can measure and transmit various physiological parameters such as "arterial oxygen saturation ($SpO_2$), heart rate (HR), body acceleration, and posture information." *Id.*

51

Exhibit C
Page 85

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

Mendelson-2006 includes a sensor module, which can be attached to a user (*e.g.*, at the forehead), as well as a body-worn receiver module, which wirelessly receives information acquired by the sensor module wirelessly via an RF:



APPLE-1016, FIG. 1, 913.

Physiological data received and processed by the receiver module can be wirelessly transmitted "to a PC" for enhanced monitoring of the sensed physiological parameters, such as by medics. *Id.*, 913.  An example PC ("iPAQ Pocket PC") that can be used for receiving data from the receiver module is shown below:

52

Exhibit C
Page 86

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1016, FIG. 3, 913-914.  This particular PDA, HP's iPAQ h4150, "provides a low-cost touch screen interface," and "data from the wireless-enabled PDA can also be downloaded or streamed to a remote base station via Bluetooth or other wireless communication protocols."  *Id.*, 914; *see also generally* APPLE-1022.

### 2. Combination of Aizawa, Inokawa, and Mendelson-2006

As discussed above (Section III.A.3), Aizawa contemplates uploading data to an external display but is silent about how such data transmission would be implemented, instead leaving implementation details to the POSITA.  APPLE-1006,

53

Exhibit C
Page 87

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

[0015], [0023], [0035]; APPLE-1003, ¶144.  Indeed, although Aizawa does not

disclose a specific monitoring device, a POSITA would have recognized that vari-

ous types of well-known monitoring devices could be used to interact with the

wrist-worn sensor of Aizawa and display the measured physiological parameters to

the user in a convenient manner.  *Id*.  In this context, as discussed above in Section

III.C.1, Mendelson-2006 teaches using a receiver module and a portable computer

(*i.e.*, PDA) to communicate with a small, body-worn sensor, as in Aizawa.  AP-

PLE-1016, 913-914, FIGS. 1, 2; APPLE-1003, ¶145.

A POSITA would have been motivated and found it obvious and straightfor-

ward to further modify Aizawa-Inokawa in view of Mendelson-2006 to yield a

pulse detector that can wirelessly transmit data to an external device for monitor-

ing.  APPLE-1003, ¶¶146-147.[2]  Indeed, Aizawa, Inokawa, and Mendelson-2006

are all in the same field of art and relate to body-worn detectors for sensing physio-

logical parameters such as pulse.  APPLE-1006, [0002]; APPLE-1008, [0056]; AP-

PLE-1016, 912.  Mendelson-2006 teaches the use of a receiver module and a porta-

ble computer/PDA to receive pulse data detected by the body-worn detector (as in

Aizawa).  APPLE-1016, 913-914.

---

[2] Alternatively, the combination of Aizawa, Inokawa, and Ohsaki, as described in

Section III.B.2, may be similarly modified in view of Mendelson-2006.

54

Exhibit C
Page 88

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

A POSITA would have been motivated to combine Mendelson-2006's receiver module and PDA with Aizawa's detector to enable a convenient and user-friendly interface with Aizawa's detector (which does not include a separate display/interface) and the ability to remotely monitor the user's physiological parameters.  APPLE-1016, 914; APPLE-1003, ¶147.  A POSITA would have recognized that applying Mendelson-2006's receiver module and PDA to Aizawa's sensor would have led to predictable results without significantly altering or hindering the functions performed by Aizawa's sensor.  *Id*.  Indeed, a POSITA would have had a reasonable expectation of success in making this modification, and would have reasonably expected to reap benefits of convenient interface with and monitoring of Aizawa's sensor.  *Id.*

### 3.    Analysis

**<u>Claim 23</u>**
**[23]: "The noninvasive optical physiological measurement device of claim 1, wherein the noninvasive optical physiological measurement device is comprised as part of a mobile monitoring device."**

As discussed in Section III.C.2, incorporating the receiver module and PDA of Mendelson-2006 into Aizawa's sensor results in a convenient device that can provide mobile monitoring of the user's physiological parameters.  APPLE-1006, [0015], [0023], [0035]; APPLE-1016, 913-914; APPLE-1003, ¶¶144-147.

55

Exhibit C
Page 89

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

Alternatively, in one instance as discussed in Section III.A.3(b) and Ground-1A [1a], the Aizawa-Inokawa combination can rely on the base device 17 of Inokawa to receive the pulse data from Aizawa's sensor.  APPLE-1008, [0007], [0077]; APPLE-1003, ¶¶148-149.  As discussed in Section III.A.2, the base device of Inokawa is further configured to transmit the received data to a PC.  APPLE-1008, FIG. 7, [0066]-[0077].

Here, Inokawa does not place any limitations on the type of a PC to be used.  But a POSITA would have recognized that a mobile PC such as the Pocket PC/PDA used in Mendelson-2006 would have allowed the sensor and the base device to be used in a more convenient, portable manner.  APPLE-1016, FIG. 3, 913-914; APPLE-1003, ¶149.  Thus, the Aizawa-Inokawa device, further combined with the mobile PC of Mendelson-2006 that is connected to Inokawa's base device, provides the claimed mobile monitoring device.  *Id.*  The PDA of Mendelson-2006 may be connected either wirelessly or using a physical cable.  APPLE-1003, ¶¶145, 149 (citing APPLE-1016, 913, FIG. 1; APPLE-1029, APPLE-1022, 8).

**Claim 24**
**[24]: "The noninvasive optical physiological measurement device of claim 1, wherein the mobile monitoring device includes a touch-screen display."**

As discussed for Ground-1C [23], a POSITA would have looked to Mendelson-2006's PDA to enable more convenient monitoring of the user's physiological

Exhibit C
Page 90

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

parameters.  APPLE-1016, 913-914; APPLE-1003, ¶150.  Mendelson-2006's PDA

provides "a low-cost touch screen interface."  APPLE-1016, 914.

### D.      [GROUND-1D] – Claims 23-24 are rendered obvious by Aizawa in view of Inokawa, Goldsmith, and Lo

#### 1.      Overview of Goldsmith

Goldsmith is directed, in part, to a "combined watch and controller device

900" that "includes a housing 905 adapted to be worn or carried by the user" as

well as "a display 910," shown in red below.  APPLE-1027, [0085].  The wrist-

watch controller of Goldsmith is designed to receive "information about a patient"

and, accordingly, "may monitor heart rate or and/or metabolic rate."  *Id.*, [0095].

For example, "data may [be] received directly from a sensor transmitter on the pa-

tient's skin."  *Id.*, [0087].  In some implementations, "the display is a touchscreen

display."  *Id.*, [0086].

Exhibit C
Page 91

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1027, FIG. 9A; Apple-1003, ¶151.

### 2.    Overview of Lo

Lo generally describes a wristwatch-type pulse rate monitor having a display unit 40 (red), a transducer/sensor module 20 (blue), and a wristband 10 (green), as shown below.  APPLE-1028, [0002], [0019], APPLE-1003, ¶152.

Exhibit C
Page 92

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1028, FIG. 1.  Lo teaches that "[i]n a preferred embodiment of the inven-

tion, the monitor is a wristwatch with attached wristband, wherein the [sensor]

module is attached to the wristband."  *Id.*, [0035]; APPLE-1003, ¶152.

While Lo describes a particular type of sensor unit in the form an "ultrasonic

transducer" that uses sonic energy to measure heart rate, Lo also contemplates—

and a POSITA would have understood—that other types of sensors such as optical

sensors may be used.  *Id.*, [0025]-[0026], [0048]; APPLE-1003, ¶152.

### 3.     Combination of Aizawa, Inokawa, Goldsmith, and Lo

As discussed above (Section III.C.2), a POSITA would have recognized that

various types of well-known display/monitoring devices could be used to imple-

ment the wrist-worn device of Aizawa in a convenient manner.  APPLE-1003,

Exhibit C
Page 93

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

¶¶153-156.  In this context, Goldsmith provides a wristwatch-type monitoring device that can "monitor heart rate or and/or metabolic rate" by receiving data "directly from a sensor transmitter on the patient's skin."  APPLE-1027, [0095], [0087].  A POSITA would have been motivated and found it obvious and straightforward to further modify Aizawa-Inokawa, as discussed in Section III.A.3, in view of Goldsmith to enable a user to more conveniently monitor, in real-time, "his/her heart rate at the time of exercise" as expressly contemplated by Aizawa.[3]  APPLE-1006, [0004]; APPLE-1003, ¶154.  Indeed, Goldsmith explicitly teaches that its wristwatch monitor can receive data from a "sensor transmitter on the patient's skin," as Aizawa's device precisely provides.  APPLE-1027, [0087].

While neither Aizawa nor Goldsmith goes into the details of how the sensor and monitor may be physically linked, Lo teaches how this may be achieved.  APPLE-1003, ¶¶154-156.  In particular, Lo, which is similarly directed to a wrist-worn pulse measuring device as in Aizawa/Goldsmith, teaches that the sensor "can be fastened separately on its own strap" (APPLE-1028, [0037]), or that, more pref-

---

[3] Alternatively, the combination of Aizawa, Inokawa, and Ohsaki, as described in Section III.B.2, may be similarly modified in view of Goldsmith and Lo.

Exhibit C
Page 94

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

erably, the sensor part and the monitor part can be integrated into a more conven-
ient wristwatch device by using "[c]onnecting wires [that] are molded into the
wrist band." *Id.*, [0038]; FIG. 1

A POSITA would have been motivated to apply Lo's integrated monitor-
sensor configuration to the Aizawa-Inokawa-Goldsmith device to enable not only a
user-friendly interface display to interface with Aizawa's sensor (which does not
include a separate display/interface) but further provide an integrated, wrist-worn
device that can be conveniently carried around and used during various activities,
such as swimming/diving.  APPLE-1028, [0038]; APPLE-1003, ¶¶153-156.

### 4.    Analysis

**[23]: "The noninvasive optical physiological measurement device of claim 1, wherein the noninvasive optical physiological measurement device is comprised as part of a mobile monitoring device."**

As discussed in Section III.D.3, incorporating the combined Aizawa-In-
okawa-Goldsmith-Lo device results in a convenient and portable monitoring de-
vice that can provide mobile monitoring of the user's physiological parameters.
APPLE-1003, ¶¶151-156.

**[24]: "The noninvasive optical physiological measurement device of claim 1, wherein the mobile monitoring device includes a touch-screen display."**

As discussed in Section III.D.3, a POSITA would have looked to Gold-
smith's wristwatch monitor to provide a convenient user interface in the Aizawa-

Exhibit C
Page 95

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

Inokawa-Goldsmith-Lo combination.  APPLE-1003, ¶¶151-167.  As also discussed, Goldsmith's wristwatch monitor includes a touchscreen display.  APPLE-1027, [0086]; APPLE-1003, ¶¶151, 157.

### E.   [GROUND-1E] – Claim 25 is rendered obvious by Aizawa in view of Inokawa, Mendelson-2006, and Beyer

**Claim 25**
**[25pre]: "A physiological monitoring system comprising:"**

*Supra* Section III.C.2 and Ground-1C [23].  APPLE-1003, ¶158.  In particular, the Aizawa-Inokawa-Mendelson-2006 combination provides a monitoring system that includes, among other things, a wrist-worn sensor (as in Aizawa) and a mobile PC (as in Mendelson-2006).

**[25a]: "the noninvasive optical physiological measurement device of claim 1; and"**

*Supra* Ground-1A [1pre]-[1d].  APPLE-1003, ¶159.

**[25b]: "a processor configured to receive the one or more signals and communicate physiological measurement information to a mobile phone."**

The Aizawa-Inokawa combination[4] modified in view of Mendelson-2006 may further be modified in view of Beyer to render obvious [25b].  APPLE-1003,

---

[4] Alternatively, the combination of Aizawa, Inokawa, and Ohsaki, as described in Section III.B.2, may be similarly modified in view of Mendelson-2006 and Beyer.

Exhibit C
Page 96

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

¶¶160-164.  Specifically, as discussed in Section III.C.2 and Ground-1C [23], the combined system of Aizawa-Inokawa-Mendelson-2006 relies, in one instance, on the receiver module of Mendelson-2006 to receive signals from Aizawa's sensor and further communicate with a PDA.  APPLE-1016, 913-914.  Moreover, the receiver module of Mendelson-2006 includes a microcontroller (μC) for transmitting signals to a PDA:



APPLE-1014, FIG. 2, 913.

While the processor in Mendelson-2006's receiver module communicates physiological measurement information to a PDA, such as HP's iPAQ Pocket PC that is capable of various "wireless communication protocols," Mendelson-2006 does not explicitly disclose the PDA to be a mobile phone.  APPLE-1016, 914; APPLE-1003, ¶161.  Yet it was well-known before the Critical Date that a PDA device, such as the one shown in Mendelson-2006, was often paired with cellular communication technology to provide a combined PDA/phone device that acts a

Exhibit C
Page 97

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

mobile phone.  APPLE-1003, ¶162 (citing to APPLE-1019 and APPLE-1020).

Such a combined device would have provided the user with added convenience of

being able to enjoy the combined functionality of a phone and PDA in a single de-

vice.  APPLE-1003, ¶162.  Moreover, a POSITA would have recognized that "[i]t

is often necessary to review the collected data, such as oxygen saturation, pulse

rate and pulsatility value at a location remote to the patient being monitored."  AP-

PLE-2021, Abstract.  Thus, a POSITA would have looked to PDA devices with

cellular connectivity in order to achieve more reliable patient monitoring.  APPLE-

1003, ¶162 (citing to APPLE-1021, FIG. 3).

In this context, Beyer teaches "cellular PDA/GPS phones" that allow users

"to rapidly call and communicate data among the users by touching display screen

symbols and to enable the users to easily access data concerning other users and

other database information."  APPLE-1021, 1:6-15; APPLE-1003, ¶¶72, 163.  A

side-by-side comparison of Beyer's PDA and Mendelson-2006's PDA is shown

below:

64

Exhibit C
Page 98

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1019, FIG. 1 (left); APPLE-1014, FIG. 3 (right).

A POSITA would have considered using a different PDA than the one mentioned in Mendelson-2006 to be obvious and a routine and conventional design choice.  APPLE-1003, ¶¶163-164; *see also In re Magna Elecs., Inc.*, 611 Fed. Appx. 969, 974 (Fed. Cir. 2015) (citing *In re Kuhle*, 526 F.2d 553, 555 (CCPA 1975) (finding a generic feature that "provides no novel or unexpected result" as "an obvious matter of design choice").  Indeed, using a PDA that is also a mobile phone, as evidenced by Beyer, was common practice well before the Critical Date, and there was nothing new or inventive about changing one type of PDA for another.  *Id.*

65

Exhibit C
Page 99

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

### F.    [GROUND-2A] – Claims 1-4, 6-14, 16-22, and 26-30 are rendered obvious by Mendelson-1988 in view of Inokawa

#### 1.    Overview of Mendelson-1988

Mendelson-1988 is generally directed to an "optical reflectance sensor suitable for noninvasive monitoring of arterial hemoglobin oxygen saturation with a pulse oximeter." APPLE-1015, Abstract. APPLE-1003, ¶66. Mendelson-1988's pulse oximeter, shown below, includes "two red...and two infrared...LED chips...and six silicon photodiodes...arranged symmetrically in a hexagonal configuration." *Id.*, 168.



*Id.*, FIG. 2(A).

Mendelson-1988 describes that the forehead was a favorable location for its sensor due to the "relatively large reflectance photoplethysmographic signals" but

Exhibit C
Page 100

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

further recognizes that "several locations on the body (*e.g.*, forearm, chest, and back)" also allowed the reflectance photoplethysmograms to be detected.  APPLE-1015, 173; APPLE-1003, ¶67.  Subsequent publications by the author of Mendelson-1988, Dr. Mendelson, recognizes that both the wrist and forehead regions are convenient locations for a reflectance-type pulse oximeter.  *See, e.g.*, APPLE-1024, 3017.

### 2.      Combination of Mendelson-1988 and Inokawa

Mendelson-1988 teaches encapsulating emitters/detectors disposed within its housing (red) with an optically clear adhesive/epoxy (blue):



APPLE-1015, FIG. 2(b), 168; APPLE-1003, ¶¶68, 172.  This epoxy layer, thus, serves as a light permeable cover that covers the detectors.  APPLE-1003, ¶¶68, 172.

But beyond Mendelson-1988's disclosure that this cover is made from "optically clear epoxy," Mendelson-1988 does not provide additional details, for in-

Exhibit C
Page 101

stance regarding the precise shape of this layer's interface with the skin. Mendelson-1988 does not indicate, for instance, whether the epoxy layer protrudes slightly above the edge of the housing to protect the user's skin from the sharp edges of the housing. Moreover, a POSITA would have realized that the epoxy layer could have been given a shape that would help further advance Mendelson-1988's objective of improving detection efficiency. *See* APPLE-1015, 168, 173; APPLE-1003, ¶173.

In this context, as described above in Section III.A.2 and shown below, Inokawa provides a pulse sensor with a lens that is positioned over the detectors to "increase the light-gathering ability of the LED as well as to protect the LED or [detector]." APPLE-1008, [0015], [0058].



APPLE-1008, FIG. 2; APPLE-1003, ¶174. Thus, a POSITA would have sought to incorporate an Inokawa-like lens into the cover of Mendelson-1988 to increase the

Exhibit C
Page 102

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

light collection efficiency, which in turn would lead to an improved signal-to-noise ratio (and thus more reliable pulse detection).  A POSITA would have been particularly interested in making such a modification because Mendelson-1988 is expressly interested in maximizing "reflectance photoplethysmographic signals." APPLE-1015, 173.  The lens of Inokawa provides precisely such a benefit to Mendelson-1988's device by refracting and concentrating the incoming light signals that are reflected by the blood.  APPLE-1003, ¶175.

As illustrated below, the device resulting from the obvious combination of Mendelson-1988 and Inokawa would have modified the flat epoxy cover (left) with a curved one as per Inokawa (right) to "increase the light-gathering ability."  APPLE-1008, [0015]; APPLE-1003, ¶176.



APPLE-1015, FIG. 2(B).

69

Exhibit C
Page 103

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

A POSITA would have understood how to implement Inokawa's lens-shaped cover in Mendelson-1988 with a reasonable expectation of success, stemming from the significant overlap across the references in their teaching.  APPLE-1003, ¶177.  Indeed, the above-described modification would require only routine knowledge of sensor design and assembly, which were well within the skill of a POSITA prior to the Critical Date.  *Id.*  Further, as demonstrated by Nishikawa, molding clear epoxy, as in Mendelson-1988, into a lens shape was well understood:



APPLE-1023, FIG. 6, [0022], [0032], [0035]; APPLE-1003, ¶178.

Moreover, both the optical encapsulation layer of Mendelson-1988 and the lens layer of Nishikawa are made from the same material—i.e., optically clear epoxy—that can have the same index of refraction, and, as such, the interface between the encapsulation portion and the lens portion will not adversely affect the optical performance of the modified system.  APPLE-1012, [0037]; APPLE-1003,

70

Exhibit C
Page 104

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

¶179.  Indeed, Nishikawa expressly discloses that any gaps between the encapsulation and lens portions can be minimized by fusing the two portions at the interface to improve optical performance.  *Id.*

Thus, to achieve Mendelson-1988's and Inokawa's shared goal of improving light collection efficiency, a POSITA would have been motivated to modify Mendelson-1988's light permeable cover to have a lens shape as per Inokawa with a reasonable expectation of success.  APPLE-1003, ¶179.

### 3.     Analysis

**[1pre]:**

Mendelson-1988 teaches "a new optical reflectance sensor suitable for non-invasive monitoring of arterial hemoglobin oxygen saturation with a pulse oximeter."  APPLE-1015, Abstract, 167, 172; APPLE-1003, ¶165.  Hemoglobin oxygen saturation is among the physiological parameters mentioned in the '265 patent.  APPLE-1001, Claim 18.  The pulse oximeter of Mendelson-1988 is designed to be worn by being attached to the user's skin.  APPLE-1015, 168, 173.

**[1a]:**

Mendelson-1988 teaches using two red and two infrared LEDs that are centrally located:

Exhibit C
Page 105

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1015, FIG. 2(A), 168; APPLE-1003, ¶166.

**[1b]:**

As illustrated below, Mendelson-1988 discloses that its LEDs and photodiode chips (*i.e.*, emitters and detectors) are mounted on a ceramic substrate (***surface***) and housed within an AIRPAX microelectronic package (***housing***). APPLE-1015, 168; APPLE-1003, ¶167. Mendelson-1988 further discloses "a ring-shaped, optically opaque shield of black Delrin" that is placed around the LEDs (***circular wall***).

72

Exhibit C
Page 106

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1015, FIG. 2(B).



APPLE-1015, FIG. 2(A).

Alternatively, the outer wall of the AIRPAX microelectronic package (***housing***), as indicated below, can be modified to be a circular wall.  APPLE-1015, 168.

73

Exhibit C
Page 107

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1015, FIG. 2(B); APPLE-1003, ¶168.

The particular housing shown above appears to have a square shape, not a circular one.  APPLE-1015, FIG. 2(A).  Yet a POSITA would have recognized that microelectronic packaging as used in Mendelson-1988 comes in various shapes and sizes.  APPLE-1003, ¶169.  For instance, a patent (Mendelson-'799) by the same author of Mendelson-1988 shows a similar detector configuration that is instead housed in a ***circular*** sensor housing 17:

Exhibit C
Page 108

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



*Figure 7*

APPLE-1025, FIG. 7, 9:34-36.

A POSITA would have considered using a differently shaped housing,
namely a circular one, to be obvious.  APPLE-1003, ¶170.  Indeed, using a circular
housing having a circular wall, as evidenced by Mendelson-'799, was common
practice well before the Critical Date, and there was nothing new or inventive
about changing one housing shape for another.  *Id.*

**[1c]:**

As shown below, Mendelson-1988 teaches "six silicon photodiodes...ar-
ranged symmetrically in a hexagonal configuration."  APPLE-10015, 168.  Output
from the detectors are "current pulses...which correspond to the red and infrared

75

Exhibit C
Page 109

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

light intensities reflected from the skin" and are processed to respective photople-

thysmographic waveforms.  APPLE-1015, 169; APPLE-1003, ¶171.



APPLE-1015, FIG. 2(A).  As described above for [1b], the detectors of Mendel-

son-1988 are arranged on the ceramic substrate.  APPLE-1015, 168 FIG. 2(B); AP-

PLE-1003, ¶171.

**[1d]:**

As discussed above in Section III.F.2, the combined Mendelson-1988-Inokawa

device includes a protruded epoxy cover that acts as a lens and covers the at least

four detectors.  *Supra* Section III.F.2; APPLE-1003, ¶¶172-179.

76

Exhibit C
Page 110

According to Dr. Kenny, there are two alternative ways of mapping the

claimed "light permeable cover," or LPC, to the modified cover above.  APPLE-

1003, ¶180.

First, the combined epoxy structure—*i.e.*, the sealing portion and the lens

portion—may be viewed to be the LPC, as illustrated below.  APPLE-1003, ¶180.

Indeed, the LPC as described in the '265 patent, for example with regard to FIG.

14D, appears to envision a two-part structure comprising a flat cover portion and a

protruded lens portion.  APPLE-1001, FIG. 14D.



APPLE-1015, FIG. 2(B) (modified).

Alternatively, just the lens portion of the epoxy structure that is formed over

the underlying sealing portion, as shown below, may be mapped to be the LPC

having a protrusion.  APPLE-1003, ¶181.  Here, as informed through Nishikawa, a

Exhibit C
Page 111

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

POSITA would have used the top portion of the housing (indicated below in purple) to help form the LPC portion of the epoxy on top of the sealing portion below it. *Id.*; APPLE-1023, [0034]-[0038], FIGS. 5-6.



APPLE-1015, FIG. 2(B) (modified).

**[2]:**

As discussed for [1d], the modified LPC in the combination, under either mapping, completely encapsulates and seals the detectors and therefor forms at least a "substantially airtight seal":



Exhibit C
Page 112

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

APPLE-1015, FIG. 2(B) (modified); APPLE-1003, ¶182.  A POSITA would have recognized that such an encapsulating layer would provide a substantially airtight seal.  APPLE-1023, Abstract; APPLE-1003, ¶¶182-183.

Moreover, a POSITA would have recognized that a body-worn device as in Mendelson-1988 would be airtight or substantially airtight since, otherwise, condensation, sweat, and other undesirable elements may enter and damage the internal electronics.  APPLE-1003, ¶183.  Thus, a POSITA would have recognized or found it obvious that the light permeable cover of Mendelson-1988-Inokawa would form an airtight or substantially airtight seal enclosing the at least four detectors.  *Id.*

**[3]:**

Mendelson-1988-Inokawa renders obvious [3].  APPLE-1003, ¶¶184-186.  For example, under the following mapping of LPC, the LPC portion is separated from the surface by a gap:

79

Exhibit C
Page 113

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1015, FIG. 2(B) (modified); APPLE-1003, ¶185 (citing to APPLE-1017, 515 (defining "gap" as "a separation in space")).

The size of the gap above is defined, in part, by a wall of the housing, which as described above for [1b] can be circular, that surrounds the epoxy structure and serves as a mold that define its overall height (and thus the size of the gap).  AP-PLE-1023, [0034]-[0038], FIGS. 5-6; APPLE-1003, ¶¶186-187.

**[4]:**

The circular wall of Mendelson-1988 as identified above in [1b] as being part of the housing is a "a ring-shaped, optically opaque shield of black Delrin [that is] placed between the LEDs and the photodiode chips."  APPLE-1015, 168.  Thus, the circular wall of the housing provides noise shielding by blocking unwanted light from reaching the detectors.  A POSITA would also have recognized the en-

Exhibit C
Page 114

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

tire AIRPAX package of Mendelson-1988 to be opaque and thus capable of block-

ing unwanted light (*i.e.*, light noise) from coming into the detector area, for exam-

ple from the side.  APPLE-1015, 168, FIG. 2; APPLE-1003, ¶188.

**[6]:**

Mendelson-1988-Inokawa renders obvious [6].  *Supra* Ground-2A [1d], Sec-

tion III.F.2; APPLE-1003, ¶¶189-190.  For example, the lens/protrusion of In-

okawa as incorporated into Mendelson-1988 has a continuous protrusion:



APPLE-1015, FIG. 2(B)(modified); APPLE-1003, ¶190.

**[7]:**

Mendelson-1988-Inokawa renders obvious [7].  *Supra* Ground-2A [1d], Sec-

tion III.F.2.  For example, Inokawa discloses that its lens/protrusion is a convex

protrusion.  APPLE-1008, [0099], [0107], FIGS. 2, 3, 16, 19; APPLE-1003, ¶¶191-

192.

Exhibit C
Page 115

**[8]:**

Mendelson-1988-Inokawa renders obvious [8].  *Supra* Ground-2A [1d], Section III.F.2; APPLE-1003, ¶¶193-194.  For example, the light permeable cover of Mendelson-1988 is made of cured resin (*i.e.*, epoxy), which a POSITA would understand to be a rigid material.  APPLE-1015, 168, FIG. 2.  To the extent Patent Owner argues the cured, encapsulating epoxy resin of Mendelson-1988-Inokawa is not rigid, a POSITA would have found it obvious to use a rigid material to form the lens/protrusion of Mendelson-1988-Inokawa because a rigid lens better preserves its shape and, thereby, offers improved optical performance relative to a pliable lens.  APPLE-1003, ¶194.  Such a rigid lens would provide improved optical performance and light-gathering ability compared to a non-rigid lens that may partially or completely lose its shape during use, degrading its optical properties.  APPLE-1003, ¶194.

**[9]:**

Mendelson-1988-Inokawa renders obvious [9].  *Supra* Ground-2A [1d], Section III.F.2; APPLE-1003, ¶¶195-196.  Specifically, the pulse oximeter of Mendelson-1988 is designed to be placed directly on the user's skin (*e.g.*, forehead), and therefore, the modified LPC, which covers the detectors, would be positioned between the detectors and the tissue.  APPLE-1015, 169; APPLE-1003, ¶196.

**[10]:**

Exhibit C
Page 116

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

Mendelson-1988-Inokawa renders obvious [10].  *Supra* Ground-2A [1d], Section III.F.2; APPLE-1003, ¶197.  In particular, the light permeable cover of Mendelson-1988 is designed to be attached directly to the user's skin.  APPLE-1015, 169.  Attaching a rigid device onto the skin in such a manner will cause at least some deformation of the tissue to occur because the skin is more pliable.  Additionally, the lens/protrusion of Inokawa, as applied to Mendelson-1988 in the manner described above in Section III.F.2, acts to further deform the tissue of the user around the convex surface of the lens/protrusion when the device is pressed against the tissue, as shown below:



APPLE-1008, FIG. 2.

**[11]:**

Exhibit C
Page 117

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

Mendelson-1988-Inokawa renders obvious [11].  *Supra* Ground-2A [10]; APPLE-1003, ¶198.  As explained for [10], the light permeable cover of Mendelson-1988-Inokawa deforms the tissue around the lens/protrusion when pressed against the wrist of the user.  *Id.*  Thus, the light permeable cover shapes the tissue around its external surface when the device is worn.  *Id.*

**[12]:**

The lens/protrusion of Inokawa, which is used to modify Mendelson-1988 as explained in Section III.F.2, serves a condensing function and thus, as with any other lens, refracts light passing through it.  APPLE-1008, [0015], [0058]; APPLE-1003, ¶¶199-201.   Thus, referring to the drawing below which compares the length of non-refracted light (*i.e.*, without a lens, left) bouncing off an artery with that of refracted light (*i.e.*, with a lens, right), it can be seen that the mean path length of light traveling to the at least four detectors is reduced—that is, the purple line is shorter than the redline.  APPLE-1003, ¶200.  This hold true for both the total length travelled as well as the length travelled/attenuated through skin.  *Id.*

Exhibit C
Page 118

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1003, ¶200.

As seen below, superimposing the two drawings above clearly shows the shortened path traveled by refracted light in the presence of a protrusion/lens, both within the tissue as well as for total path length:



APPLE-1003, ¶201.

**[13]:**

85

Exhibit C
Page 119

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

Mendelson-1988-Inokawa renders obvious [13]. *Supra* Ground-2A [1c]; APPLE-1003, ¶202. Indeed, the six detectors of Mendelson-1988 are evenly spaced from one another:



APPLE-1015, FIG. 2(A).

**[14]:**

Mendelson-1988-Inokawa renders obvious [14]. *Supra* Ground-2A [12]; APPLE-1003, ¶203.

**[16]:**

The combination of Mendelson-1988 and Inokawa, as described above in Section III.F.2 and Ground-2A [1d] (incorporated herein), provides a light permea-

Exhibit C
Page 120

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

ble cover having a convex protrusion that acts as a lens for improving light-gathering ability.  APPLE-1003, ¶204.  A POSITA would have recognized that such a lens structure, as in Inokawa, condenses light onto the detectors, thereby increasing the signal-to-noise ratio and the signal strength per area of the detectors.  *Id*.

**[17]:**

Mendelson-1988-Inokawa renders obvious [17].  APPLE-1003, ¶205.  For example, Mendelson-1988's pulse oximeter detects photoplethysmograms, which include pulse rate information:



APPLE-1015, FIG. 1 (cropped), 168-170.

**[18]: "The noninvasive optical physiological measurement device of claim 1, wherein the physiological parameter is at least one of: glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, or carbon monoxide."**

The pulse oximeter of Mendelson-1988 is designed to measure "hemoglobin oxygen saturation in arterial blood ($SpO_2$)."  APPLE-1015, 167, Abstract; APPLE-1003, ¶206.

Exhibit C
Page 121

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

**[19]:**

A POSITA would have recognized that the device of Mendelson-1988 would be reusable because, among other things, it would be cost-prohibitive to use such a device once and discard each time.  APPLE-1003, ¶207.  Moreover, if Mendelson-1988 is not reusable, then it is disposable.  *Id.*

**[20]:**

Mendelson-1988-Inokawa renders obvious [20].  *Supra* Ground-2A [1c], [13]; APPLE-1003, ¶208.  Indeed, four of the detectors of Mendelson-1988 are spaced from one another in the manner claimed:



APPLE-1015, FIG. 2(A); APPLE-1003, ¶208.

**[21]:**

88

Exhibit C
Page 122

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

The below-identified detectors of Mendelson-1988 form a cross pattern (blue) about a central axis in the manner claimed:



APPLE-1015, FIG. 2(A); APPLE-1003, ¶209.

**[22]:**

As discussed in Ground-2A [12] and incorporated herein, Mendelson-1988-Inokawa provides a lens/protrusion that refracts and changes the optical path length to the detectors.  APPLE-1003, ¶210.  Moreover, as Dr. Kenny explains, "since the process for getting light into and out of the tissue depends on scattering, light entering and returning from the tissue will follow many different random paths, with many different lengths."  APPLE-1003, ¶210.

**[26pre]:**

Exhibit C
Page 123

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

*Supra* Ground-2A [1pre].  APPLE-1003, ¶211.

**[26a]:**

*Supra* Ground-2A [1a].  APPLE-1003, ¶212.

**[26b]:**

As explained above for [1b], Mendelson-1988 teaches a ceramic substrate
(***surface***) within an AIRPAX microelectronic package (***housing***).  APPLE-1015,
168; APPLE-1003, ¶¶213-216.  Further, Mendelson-1988's housing includes a
raised edge:



APPLE-1015, FIGS. 2(a) and 2(b); APPLE-1003, ¶214.

90

Exhibit C
Page 124

Although the housing above appears to have a square shape, not a circular one, a POSITA would have recognized that microelectronic packaging as used in Mendelson-1988 comes in various shapes and sizes.  APPLE-1003, ¶215.  For instance, Mendelson-'799, written by the same author of Mendelson-1988, shows a similar detector configuration that is instead housed in a ***circular*** sensor housing 17:



*Figure 7*

APPLE-1025, FIG. 7, 9:34-36; APPLE-1003, ¶215.

A POSITA would have considered using a differently shaped housing, namely a circular one, to be obvious.  APPLE-1003, ¶¶215-216.  Indeed, using a circular housing having a circular wall, as evidenced by Mendelson-'799, was common practice well before the Critical Date, and there was nothing new or inventive about changing one housing shape for another.  *Id.*

Exhibit C
Page 125

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

**[26c]:**

*Supra* Ground-2A [1c], [13].  APPLE-1003, ¶217.

**[26d]:**

*Supra* Ground-2A [1d].  APPLE-1003, ¶218.  In particular, because reflected light received by Mendelson-1988's six detectors passes through the protruded lens portion as provided by Inokawa, the lens/protrusion is in optical communication with the detectors.  APPLE-1015, FIG. 2, 168.

**[26e]:**

*Supra* Ground-2A [1c].  APPLE-1003, ¶219.

**[27]:**

*Supra* Ground-2A [21].  APPLE-1003, ¶220.

**[28]:**

The below-identified detectors of Mendelson-1988 are arranged relative to a central point and first/second axes in the manner claimed, with the first/second axes crossing each other:

Exhibit C
Page 126

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265



APPLE-1015, FIG. 2(A); APPLE-1003, ¶221.

However, the first and second axes as shown above are not perpendicular to each other.  APPLE-1003, ¶222.  As an initial matter, Mendelson-1988 does not indicate that its system only works with six detectors.  APPLE-1015, 168.  In fact, Mendelson 1988 explains that "the total amount of backscattered light that can be detected by the reflectance sensor is diretly proportional to the number of photodetectors."  *Id*.  Thus, a POSITA would have recognized that more (or less) detectors may be used depending on the detection requirements of a particular system.  For example, a POSITA looking for increased light detection may add two more detectors to achieve 8 total detectors.  APPLE-1003, ¶222.  Conversely, a

93

Exhibit C
Page 127

POSITA looking for reduced power consumption may remove two detectors to achieve 4 total detectors.  In either case—8 or 4 detectors—the resulting detector configuration results in perpendicular axes as claimed:



APPLE-1003, ¶222.

Moreover, other wearable physiological sensing devices during this period provide further support for arranging 4 or 8 photodetectors as contemplated above such that the alignment axes are pendicular.  For instance, Aizawa expressly discloses wearable pulse sensing devices with 8 and 4 detectors:



94

Exhibit C
Page 128

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

APPLE-1006, FIGS. 4(a) and 1(a), [0032]; APPLE-1003, ¶223.  Thus, a POSITA would have considered using different numbers of spaced-apart detectors, namely 4 or 8, to be obvious and a routine and conventional design choice.  APPLE-1006, [0032]; APPLE-1003, ¶224.  Indeed, using more/fewer detectors based on system/design requirements, as evidenced by Mendelson-1988 and Aizawa, was common practice well before the Critical Date, and there was nothing new or inventive about changing the number.  APPLE-1003, ¶¶223-224.

**[29]:**

*Supra* Ground-2A [21].  APPLE-1003, ¶225.

**[30]: "The noninvasive optical physiological measurement device of claim 27, wherein the physiological parameter is at least one of: glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, or carbon monoxide."**

*Supra* Ground-2A [18].  APPLE-1003, ¶226.

### G.    [GROUND-2B] – Claims 23-24 are rendered obvious by Mendelson-1988 in view of Inokawa and Mendelson-2006

#### 1.    Combination of Mendelson-1988, Inokawa, and Mendelson-2006

As discussed above in Section III.A.2 and incorporated herein, Mendelson-2006 describes a pulse oximeter system comprising a sensor module, a receiver module, and a mobile PC/PDA for wirelessly receiving information acquired by the sensor module.  APPLE-1016, 913-914, FIGS. 1-3.

Exhibit C
Page 129

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

Mendelson-1988 teaches that data from its pulse oximeter was "acquired... using an AT&T 6300 personal computer."  APPLE-1015, 171.  A POSITA would have recognized that a personal computer, together with the pulse oximeter sensor attached to it, is a mobile monitoring device.  While Mendelson-1988 is silent regarding whether a mobile PC could be used in place of a conventional PC, a POSITA would have sought to take advantage of parallel advances in mobile electronics to enable receiving information from the sensing device of Mendelson-1988 in a more convenient manner.  APPLE-1003, ¶227.

As discussed above in Section III.C.1, Mendelson-2006 teaches using a receiver module and a portable computer to communicate with a small, body-worn sensor as in Mendelson-1988.  APPLE-1016, 913-914, FIGS. 1, 2; APPLE-1003, ¶228.  In fact, both sensor modules of Mendelson-1988 and Mendelson-2006 are small devices that can be attached on the forehead and were developed by the same author.  APPLE-1015, 167, FIG. 2; APPLE-1016, 912; FIG. 1; APPLE-1003, ¶228.

A POSITA would have been motivated to combine Mendelson-2006's receiver module and PDA with Mendelson-1988's detector to enable a more convenient and user-friendly interface with Mendelson-1988's detector and the ability to remotely monitor the user's physiological parameters.  APPLE-1016, 914; APPLE-1003, ¶¶229-230.  A POSITA would have recognized that applying Mendelson-

96

Exhibit C
Page 130

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

2006's receiver module and PDA to Mendelson-1988's sensor would have led to predictable results without significantly altering or hindering the functions performed by Mendelson-1988.  *Id.*  Indeed, a POSITA would have had a reasonable expectation of success in making this modification, and would have reasonably expected to reap benefits of a more convenient interface and mobile monitoring capabilities.  *Id.*

## 2.    Analysis

 **[23]:**

As discussed in Section III.G.1, incorporating the receiver module and PDA of Mendelson-2006 into Mendelson-1988's sensor results in a convenient device that can provide mobile monitoring of the user's physiological parameters.  APPLE-1015, 169; APPLE-1016, 913-914; APPLE-1003, ¶¶227-230.  Thus, the detector of Mendelson-1988 becomes, together with the receiver module and PDA of Mendelson-2006, a part of a mobile monitoring device that can be conveniently carried around.  APPLE-1016, 912, 915; APPLE-1003, ¶¶227-230.  The PDA of Mendelson-2006 may be connected either wirelessly or using a physical cable. APPLE-1003, ¶¶145, 149, 228 (citing APPLE-1016, 913, FIG. 1; APPLE-1029, APPLE-1022, 8).

 **[24]:**

Exhibit C
Page 131

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

As discussed for Ground-2B [23], a POSITA would have looked to Mendelson-2006's PDA to enable more convenient monitoring of the user's physiological parameters.  APPLE-1016, 913-914; APPLE-1003, ¶231.  Mendelson-2006's PDA provides "a low-cost touch screen interface."  APPLE-1016, 914.

### H.    [GROUND-2C] – Claim 25 is rendered obvious by Mendelson-1988 in view of Inokawa, Mendelson-2006, and Beyer

**[25pre]:**

*Supra* Section III.G.1 and Ground-2B [23].  APPLE-1003, ¶232.  In particular, the Mendelson-1988-Inokawa-Mendelson-2006 combination provides a monitoring system that includes, among other things, a sensor (Mendelson-1988) and a mobile PC (Mendelson-2006).

**[25a]:**

*Supra* Ground-2A [1pre]-[1d].  APPLE-1003, ¶233.

**[25b]:**

Mendelson-1988-Inokawa-Mendelson-2006 further in view of Beyer renders obvious [25b].  APPLE-1003, ¶¶234-238.  Specifically, as discussed in Section III.G.1 and Ground-2B [23], the combined system of Mendelson-1988-Inokawa-Mendelson-2006 can rely on the receiver module of Mendelson-2006 to receive signals from Mendelson-1988's sensor and communicate with a PDA.  APPLE-

Exhibit C
Page 132

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

1016, 913-914; APPLE-1003, ¶234.  The receiver module of Mendelson-2006 in-cludes a microcontroller (µC) for transmitting signals to a PDA:



APPLE-1014, FIG. 2, 913.

As discussed above for Ground-1E (Claim 25), Mendelson-2006 does not disclose a mobile phone.  APPLE-1016, 914; APPLE-1003, ¶235; *supra* Section III.E.  A POSITA would have looked to PDA devices with cellular connectivity in order to achieve more reliable patient monitoring.  APPLE-1003, ¶236 (citing to APPLE-1021, FIG. 3); *supra* Section III.E.

A POSITA would have considered using a different PDA than the one men-tioned in Mendelson-2006, namely the cellular PDA of Beyer, to be obvious and a routine/conventional design choice.  APPLE-1003, ¶¶72, 237-238; *supra* Section III.E.  Indeed, using a PDA that is also a mobile phone, as evidenced by Beyer, was common practice before the Critical Date, and there was nothing new or in-ventive about changing one type of PDA for another.  *Id.*

Exhibit C
Page 133

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

## IV.    PAYMENT OF FEES – 37 C.F.R. §42.103

Apple authorizes the Patent and Trademark Office to charge Deposit Account No. 06-1050 for the fee set in 37 C.F.R. §42.15(a) for this Petition and further authorizes payment for any additional fees to be charged to this Deposit Account.

## V.    PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION

Consistent with Congressional intent and goals of *NHK*/*Fintiv*, Apple asks the Board alone to consider challenges raised in this Petition. *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11, 6 (PTAB 2020). As explained below, *Fintiv* favors institution.

### A.    Factor 1: Institution will increase the likelihood of stay

Institution will enable the Board to resolve the issue of validity, and a finding of invalidity will relieve the Central District of California (the "District Court") of the need to continue with the companion litigation. Apple intends to move to stay the District Court case, and the opportunity for such simplification increases the likelihood that the court will grant a stay in view of IPR institution. *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case No. 2:16-cv-642-JRG, 2-3 (E.D. Tex. 2017); *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 13-CV-1058, 2015 WL 1069111 (E.D. Tex. 2015).

### B.    Factor 2: District Court schedule

Trial in the District Court case is scheduled for April 5, 2022. APPLE-1031,

Exhibit C
Page 134

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

1.  Based on the 18-month IPR schedule, a Final Written Decision ("FWD") in an IPR arising from the present Petition would issue in early March of 2022, prior to the District Court trial date.

In addition, as in *NHK*, district court trial dates shift, even in normal times. *Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap. 22, 17 (PTAB 2019).  The District Court is one of the country's busiest patent courts.  Scheduling issues cannot be ruled out, as experts have professed that additional COVID-19 outbreaks are likely to arise and California is facing new outbreaks.  APPLE-1034, 1 ("Fauci says second wave of coronavirus is 'inevitable'"); APPLE-1035, 4 ("Los Angeles County is currently" at "275 [cases] per 100,000 [residents]," which is higher than the recommended level (100 per 100,000) for reopening).

### C.    Factor 3: Apple's investment in IPR outweighs forced investment in litigation to date

District court proceedings are still at an early phase.  The parties have yet to file claim construction briefs, no claim construction orders have issued, and the *Markman* hearing is not scheduled until February 8, 2021.  APPLE-1031, 1.  In addition, discovery is not scheduled to close until July 5, 2021.  *Id*.

Apple's substantial investment in these IPR proceedings should counterbalance—if not outweigh—the resources invested in the co-pending litigation given the speed with which Apple is filing IPR petitions on over 150 claims across seven

Exhibit C
Page 135

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

patents.  It would be unjust to consider resources expended in District Court (equally by both parties), without considering Apple resources expended to prepare nine IPR petitions that would be irretrievably lost without consideration on the merits, in addition to the extensive expenses that may be foregone through institution of Apple's petitions and that will otherwise certainly follow in co-pending litigation for which significant milestones exist.  *See, e.g., Apple v. Seven Networks*, IPR2020-00255, Paper 13, 12-15 (PTAB July 28, 2020) (declining to exercise 314(a) discretion on petitions filed 9 months after the commencement of co-pending litigation where a large number of patents were included in the litigation, and a large number of claims from each patent were challenged in the petitions).

### D.      Factor 4: The Petition raises unique issues

Consistent with *Fintiv*, Apple asks the Board to consider the unique challenges raised in the Petition.  Apple has voluntarily stipulated to counsel for Patent Owner that, if the Board institutes the present Petition, Apple will not assert that the challenged claims are invalid on the pending Petition's asserted grounds in *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.).  APPLE-1032, 1; *see, e.g., Apple v. Seven,* 15-17 (finding that such a stipulation by a petitioner "mitigates, at least to some degree, the concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions").

Exhibit C
Page 136

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

In addition, the Petition addresses claims that will not be addressed in District Court.  Although Patent Owner has not yet narrowed the asserted claims, the District Court recently ordered the parties to submit "a joint proposal for an initial reduction of infringement contentions" by September 21, 2020.  APPLE-1033, 1.  Thus, based on this ordered reduction in the asserted claims, the District Court will necessarily address fewer claims than are challenged in this Petition (which challenges all but two claims of the patent), even assuming the District Court addresses validity at all, which is presently unknowable.  *See, e.g., Apple v. Seven,* 18.

In short, grounds in this Petition are unique, and will not be addressed in District Court.  *See, e.g., Apple v. Seven,* 15-20 (weighing this factor against exercising 314(a) discretion where a petitioner challenged several unasserted claims and stipulated that it would not pursue the IPR grounds in the co-pending litigation).

## E.      Factor 5: Institution would provide the Board an opportunity to invalidate claims that could later be reasserted against others

Apple's Petition is potentially helpful to future defendants.  For at least this reason, Apple's status as both Petitioner and defendant is, at worst, a neutral factor.  Taking the relevant circumstances into account, institution would serve overall efficiency and integrity, enabling the Board to determine invalidity of claims that Patent Owner might otherwise later assert against others.

Exhibit C
Page 137

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

### F.    Factor 6: Other circumstances support institution

As *Fintiv* noted, "the factors...are part of a balanced assessment of all the relevant circumstances in the case," and, "if the merits of a ground raised in the petition seem particularly strong…the institution of a trial may serve the interest of overall system efficiency and integrity…." *Fintiv*, 14-15.  As explained in the Petition (and Dr. Wills' testimony), institution would result in invalidation of the Challenged Claims.

## VI.    CONCLUSION

The cited prior art references identified in this Petition provide new, non-cumulative technological teachings which indicate a reasonable likelihood of success as to Petitioner's assertion that the Challenged Claims of the '265 patent are not patentable pursuant to the grounds presented in this Petition.  Accordingly, Petitioner respectfully requests institution of an IPR for those claims of the '265 patent for each of the grounds presented herein.

## VII.    MANDATORY NOTICES UNDER 37 C.F.R §42.8(a)(1)

### A.    Real Party-In-Interest Under 37 C.F.R. §42.8(b)(1)

Petitioner, Apple Inc. is the real party-in-interest.

### B.    Related Matters Under 37 C.F.R. §42.8(b)(2)

Exhibit C
Page 138

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

Petitioner is not aware of any disclaimers, reexamination certificates, or petitions for *inter partes* review for the '265 patent.  The '265 patent is the subject of the civil action *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.).

This Petition is being filed concurrently with IPR petitions of related U.S. Patent No., 10,588,553 (IPR2020-01536 and IPR2020-01537).

### C.     Lead And Back-Up Counsel Under 37 C.F.R. §42.8(b)(3)

Apple provides the following designation of counsel.

| Lead Counsel | Backup counsel |
|---|---|
| W. Karl Renner, Reg. No. 41,265<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email: IPR50095-0006IP1@fr.com | Roberto J. Devoto, Reg. No. 55,108<br>Hyun Jin In, Reg. No. 70,014<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>PTABInbound@fr.com |

### D.     Service Information

Please address all correspondence and service to the address listed above.

Petitioner consents to electronic service by email at IPR50095-0006IP1@fr.com (referencing No. 50095-0006IP1 and cc'ing PTABInbound@fr.com, axf-ptab@fr.com, devoto@fr.com and in@fr.com.

Exhibit C
Page 139

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

Respectfully submitted,

Dated: August 31, 2020          /W. Karl Renner/
                                W. Karl Renner, Reg. No. 41,265
                                Roberto J. Devoto, Reg. No. 55,108
                                Hyun Jin In, Reg. No. 70,014
                                Fish & Richardson P.C.
                                3200 RBC Plaza, 60 South Sixth Street
                                Minneapolis, MN 55402
                                T: 202-783-5070
                                F: 877-769-7945

(Control No. IPR2020-01520)     Attorneys for Petitioner

Exhibit C
Page 140

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

# CERTIFICATION UNDER 37 CFR § 42.24

Under the provisions of 37 CFR § 42.24(d), the undersigned hereby certifies

that the word count for the foregoing Petition for *Inter partes* Review totals 13,995

words, which is less than the 14,000 allowed under 37 CFR § 42.24.


Dated: August 31, 2020          /W. Karl Renner/
                                W. Karl Renner, Reg. No. 41,265
                                Roberto J. Devoto, Reg. No. 55,108
                                Hyun Jin In, Reg. No. 70,014
                                Fish & Richardson P.C.
                                3200 RBC Plaza, 60 South Sixth Street
                                Minneapolis, MN 55402
                                T: 202-783-5070
                                F: 877-769-7945

                                Attorneys for Petitioner

Exhibit C
Page 141

Attorney Docket No. 50095-0006IP1
IPR of U.S. Patent No. 10,258,265

## CERTIFICATE OF SERVICE

Pursuant to 37 CFR §§ 42.6(e)(4)(i) *et seq.* and 42.105(b), the undersigned certifies that on August 31, 2020, a complete and entire copy of this Petition for *Inter partes* Review and all supporting exhibits were provided via Federal Express, to the Patent Owner by serving the correspondence address of record as follows:

KNOBBE, MARTENS, OLSON & BEAR, LLP
MASIMO CORPORATION (MASIMO)
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE CA 92614

/Diana Bradley/
Diana Bradley
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
(858) 678-5667

Exhibit C
Page 142

# Exhibit D

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent of:      Al-Ali
U.S. Patent No.:      10,433,776          Attorney Docket No.:  50095-0003IP1
Issue Date:           October 8, 2019
Appl. Serial No.:     16/174,144
Filing Date:          October 29, 2018
Title:                LOW POWER PULSE OXIMETER

**Mail Stop Patent Board**
Patent Trial and Appeal Board
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

## PETITION FOR *INTER PARTES* REVIEW OF UNITED STATES PATENT NO. 10,433,776 PURSUANT TO 35 U.S.C. §§ 311–319, 37 C.F.R. § 42

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

# TABLE OF CONTENTS

I.   REQUIREMENTS FOR IPR ....................................................................2

   A. Grounds for Standing .....................................................................2

   B. Challenge and Relief Requested.....................................................2

II.  THE '776 PATENT ............................................................................4

   A. Brief Description .............................................................................4

   B. Summary of the Prosecution History .............................................6

   C. Level of Ordinary Skill in the Art .................................................6

   D. Claim Construction.........................................................................7

III. UNPATENTABILITY GROUNDS.....................................................8

   A. GROUND 1A: Claims 1-8 and 11-16 are obvious over Richardson (first mapping) ....................................................................8

     1. Overview of Richardson...........................................................8

     2. Analysis .................................................................................10

   B. GROUND 1B: Claims 1-9 and 11-16 are obvious over Richardson (second mapping) ..............................................................26

   C. GROUND 1C: Claims 9 and 10 are obvious based on Richardson (either mapping) and Bindszus .......................................40

     1. Overview of Bindszus ...........................................................40

     2. Reasons to Combine Richardson and Bindszus ....................41

     3. Claim 9 .................................................................................44

     4. Claim 10 ...............................................................................45

   D. GROUND 2A: Claims 1-9 and 11-16 are obvious based on Richardson and Turcott (first mapping) ..............................................45

     1. Overview of Turcott ..............................................................45

     2. Reasons to Combine Richardson and Turcott .......................46

     3. Analysis .................................................................................48

   E. GROUND 2B: Claims 1-9 and 11-16 are obvious based on Richardson and Turcott (second mapping)...........................................55

     1. Analysis .................................................................................55

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

F.  GROUND 2C: Claims 9 and 10 are obvious based on Richardson and Turcott (either mapping) and Bindszus ....................................................62

IV.  PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION..........63

A. Factor 1: Institution will increase the likelihood of stay .........................63

B. Factor 2: District Court schedule...............................................................63

C. Factor 3: Apple's investment in IPR outweighs forced investment in litigation to date ........................................................................................64

D. Factor 4: The Petition raises unique issues ...............................................65

E. Factor 5: Institution would provide the Board an opportunity to invalidate claims that could later be reasserted against others....................................66

F. Factor 6: Other circumstances support institution....................................67

V.  PAYMENT OF FEES ...........................................................................67

VI.  CONCLUSION.......................................................................................67

VII.  MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1).........................67

A. Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1) ...............................67

B. Related Matters Under 37 C.F.R. § 42.8(b)(2)..........................................68

C. Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3) ....................68

D. Service Information .....................................................................................68

ii

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

## EXHIBITS

| | |
|---|---|
| APPLE-1001 | U.S. Patent No. 10,433,776 to Al-Ali ("the '776 Patent") |
| APPLE-1002 | Excerpts from the Prosecution History of the '776 Patent |
| APPLE-1003 | Declaration of Brian W. Anthony, Ph.D. |
| APPLE-1004 | U.S. Patent No. 5,555,882 to Richardson et al. ("Richardson") |
| APPLE-1005 | U.S. Patent No. 6,178,343 to Bindszus et al. ("Bindszus") |
| APPLE-1006 | U.S. Patent No. 6,527,729 to Turcott ("Turcott") |
| APPLE-1007 | U.S. Patent No. 6,473,008 to Kelly et al. |
| APPLE-1008 | U.S. Patent No. 5,254,992 to Keen et al. |
| APPLE-1009 | U.S. Patent No. 5,924,979 to Swedlow et al. |
| APPLE-1010 | Tremper, *Pulse Oximetry*, Anesthesiology, The Journal of the American Society of Anesthesiologists, Inc., Vol. 70, No. 1 (January 1989) |
| APPLE-1011 | Mendelson, *Skin Reflectance Pulse Oximetry: In Vivo Measurements from the Forearm and Calf*, Journal of Clinical Monitoring, Vol. 7, No. 1 (January 1991) |
| APPLE-1012 | Excerpts from Bronzino, *The Biomedical Engineering Handbook*, CRC Press, Inc. (1995) |
| APPLE-1013 | Konig, *Reflectance Pulse Oximetry – Principles and Obstetric Application in the Zurich System*, Journal of Clinical Monitoring, Vol. 14, No. 6 (August 1998) |
| APPLE-1014-1030 | Reserved |
| APPLE-1031 | Scheduling Order, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 37 (April 17, 2020) |

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

| APPLE-1032 | Stipulation by Apple |
| --- | --- |
| APPLE-1033 | Telephonic Status Conference, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 78 (July 13, 2020) |
| APPLE-1034 | Joseph Guzman, "Fauci says second wave of coronavirus is 'inevitable'", TheHill.com (Apr. 29, 2020), available at: https://thehill.com/changing-america/resilience/natural-disasters/495211-fauci-says-second-wave-of-coronavirus-is |
| APPLE-1035 | "Tracking the coronavirus in Los Angeles County," LATimes.com (Aug. 20, 2020), available at https://www.latimes.com/projects/california-coronavirus-cases-tracking-outbreak/los-angeles-county/ |

iv

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

Apple Inc. ("Petitioner" or "Apple") petitions for *Inter Partes* Review ("IPR") under 35 U.S.C. §§311–319 and 37 C.F.R. §42 of claims 1-16 ("the Challenged Claims") of U.S. Patent No. 10,433,776 ("the '776 patent"). The '776 Patent discloses a purported improvement to "a sleep-mode pulse oximeter... utilizing conventional sleep-mode power reduction" "where the circuitry is powered down," and thus "the pulse oximeter is not functioning during sleep mode" which can result in "miss[ed] events, such as patient oxygen desaturation." APPLE-1001, 1:62-65, 2:14-17. According to the '776 Patent, the improved pulse oximeter uses physiological measurements and signal statistics to "regulate pulse oximeter power dissipation by causing the sensor interface to vary the sampling characteristics of the sensor port and by causing the signal processor... to vary its sample processing characteristics." APPLE-1001, 5:17-26.

But the claimed device is not new. To the contrary, the '776 Patent was granted without full consideration to the wide body of applicable art. As Dr. Brian Anthony explains in his accompanying declaration with respect to the applied prior art, patient monitors such as pulse rate detectors and pulse oximeters commonly included these and other features by the '776 Patent's earliest effective filing date, and a patient monitor including each feature of the Challenged Claims would have been obvious to a POSITA. APPLE-1003, ¶¶35-107. For example, U.S. Patent No. 5,555,882 to Richardson et al. (APPLE-1004) discloses the exact limitations of

1

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

the '776 Patent's proposed solution to the problem found in the prior art "sleep-mode pulse oximeter." APPLE-1001, 1:62-65, 2:14-17. Much like the '776 Patent, Richardson discloses a pulse oximeter that operates in "State 1[, which] is the oximeter's normal operating state" "where both LEDs are turned on and the blood oxygen saturation is monitored" and in "State 2... to detect new noise sources... by turning off the red LED... and measuring ambient noise in the red channel only" while "the infrared channel is still operating" to "monitor pulse rate and otherwise give the appearance of operating normally." APPLE-1004, 7:58-63, 5:53-57, 9:40-47, 6:2-7, 9:52-63. Richardson is not alone, as other references cited herein likewise disclose operating a patient monitor that calculates pulse rate in different power consumption states, as discussed in detail below.

## I.   REQUIREMENTS FOR IPR

### A.   Grounds for Standing

Apple certifies that the '776 Patent is available for IPR. The Petition is being filed within one year of service of a complaint against Apple in *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.). Apple is not barred or estopped from requesting this review challenging the Challenged Claims on the below-identified grounds.

### B.   Challenge and Relief Requested

Apple requests an IPR of the Challenged Claims on the grounds set forth in

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

the table shown below.  An explanation of how these claims are unpatentable under the statutory grounds identified below is provided in the form of a detailed description that follow.  Additional explanation and support for each ground is set forth in the Declaration of Brian W. Anthony, Ph.D. (APPLE-1003), referenced throughout this Petition.

| Ground | Claims | § 103 Basis |
|--------|--------|-------------|
| 1A | 1-8, 11-16 | Richardson (APPLE-1004) (first mapping) |
| 1B | 1-9, 11-16 | Richardson (second mapping) |
| 1C | 9, 10 | Richardson (either mapping) and Bindszus (APPLE-1005) |
| 2A | 1-9, 11-16 | Richardson and Turcott (APPLE-1006) (first mapping) |
| 2B | 1-9, 11-16 | Richardson and Turcott (second mapping) |
| 2C | 9, 10 | Richardson and Turcott (either mapping) and Bindszus |

Each reference pre-dates the provisional application (filed 7/2/2001) and qualifies as prior art:

| Reference | Date | Section |
|-----------|------|---------|
| Richardson | 9/17/1996 (issued) | 102(b) |
| Bindszus | 1/23/2001 (issued) | 102(a) |

3

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

| Reference | Date | Section |
|-----------|------|---------|
| Turcott | 10/11/2000 | 102(e) |

None of these references were cited in any office action by the examiner during prosecution.

## II.    THE '776 PATENT

### A.    Brief Description

The '776 Patent relates to "a low power pulse oximeter" having a signal processor that derives physiological measurements, including oxygen saturation, pulse rate, and plethysmograph, from an input signal.  APPLE-1001, 4:65-5:16, FIG. 3.  The signal processor also derives signal statistics, such as signal strength, noise, and motion artifact.  APPLE-1001, 5:16-17, FIG. 3; APPLE-1003, ¶26.

The pulse oximeter uses the physiological measurements and signal statistics to determine "the occurrence of an event or low signal quality condition."  APPLE-1001, 6:28-31; APPLE-1003, ¶27.  An event determination is based upon the physiological measurements and "may be any physiological-related indication that justifies the processing of more sensor samples and an associated higher power consumption level, such as oxygen desaturation, a fast or irregular pulse rate or an unusual plethysmograph waveform."  APPLE-1001, 6:31-37.  A low signal quality condition is based upon the signal statistics and "may be any signal-related

4

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

indication that justifies the processing or more sensor samples and an associated higher power consumption level, such as a low signal level, a high noise level or motion artifact."  APPLE-1001, 6:37-42.

The pulse oximeter "utilizes multiple sampling mechanisms to alter power consumption."  APPLE-1001, 5:62-64; APPLE-1003, ¶28.  One sampling mechanism is "an emitter duty cycle control" that "determines the duty cycle of the current supplied by the emitter drive outputs 482 to both red and IR sensor emitters."  APPLE-1001, 5:64-6:2.  "In conjunction with an intermittently reduced duty cycle or as an independent sampling mechanism, there may be a 'data off' time period longer than one drive current cycle where the emitter drivers... are turned off."  APPLE-1001, 7:11-15.  The occurrence of an event or low signal quality triggers a higher duty sensor sampling, allowing high fidelity monitoring of the event and providing a larger signal-to-noise ratio.  APPLE-1001, 8:47-61.

The sampling mechanisms "modify power consumption by, in effect, increasing or decreasing the number of input samples received and processed."  APPLE-1001, 6:12-14; APPLE-1003, ¶29.  "Sampling, including acquiring input signal samples and subsequent sample processing, can be reduced during high signal quality periods and increased during low signal quality periods or when critical measurements are necessary."  APPLE-1001, 6:14-18.

Exhibit D
Page 153

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

## B.    Summary of the Prosecution History

In the first office action, original claims 1-16 were rejected.  APPLE-1002, 59-67.  In the response to the first office action, the applicant canceled original claims 1-16 and added new claims 17-36.  APPLE-1002, 86-90.

Subsequently, the examiner issued a notice of allowability.  APPLE-1002, 170-171.  As described in detail below, other prior art references—which were never before the examiner—taught the features addressed in the examiner's statement of reasons for allowance.  *See* APPLE-1002, 170-171; APPLE-1003, ¶31.

## C.    Level of Ordinary Skill in the Art

A person of ordinary skill in the art relating to, and at the time of, the '776 Patent (a "POSITA") would have had a Bachelor of Science degree in an academic discipline emphasizing the design of electrical, computer, or software technologies, in combination with training or at least one to two years of related work experience with capture and processing of data or information, including but not limited to physiological monitoring technologies.  APPLE-1003, ¶32.  Alternatively, the person could have also had a Master of Science degree in a relevant academic discipline with less than a year of related work experience in the same discipline. *Id.*

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

## D.   Claim Construction

Petitioner submits that all claim terms should be construed according to the

*Phillips* standard.  *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); 37

C.F.R. § 42.100.  Here, based on the evidence below and the prior art's description

of the claimed elements being similar to that of the '776 patent specification, no

formal claim constructions are necessary in this proceeding because "claim terms

need only be construed to the extent necessary to resolve the controversy."

*Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011).

7

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

## III.   UNPATENTABILITY GROUNDS

### A.   GROUND 1A: Claims 1-8 and 11-16 are obvious[1] over Richardson (first mapping)

#### 1.  Overview of Richardson[2]

Richardson discloses a method for detecting and reducing the effects of electromagnetic noise on pulse oximeters.  APPLE-1004, 1:11-15, 2:35-37; APPLE-1003, ¶35.  In Richardson, a pulse oximeter includes light sources that emit red and infrared light alternately into a patient's tissue and a photodetector that senses the light transmitted through the tissue.  APPLE-1004, 1:37-45, 2:61-

---

[1] "It is well settled that a disclosure that anticipates under §102 also renders the claim invalid under §103, for anticipation is the epitome of obviousness." *Realtime Data, LLC v. Iancu*, 912 F. 3d 1368, 1373 (Fed. Cir. 2019) (citing *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983); *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1278 n.3 (Fed. Cir. 2017) (noting the Board's conclusion that a prior art reference rendered certain claims obvious "by virtue of its anticipation of them").

[2] General descriptions provided for the references and combinations are incorporated into each subsection addressing/applying those references, as are the discussions of combinations.

Exhibit D
Page 156

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

62, 4:2-5.  Based on the changes in red and infrared light transmission, the pulse oximeter measures a physiological parameter.  APPLE-1004, 1:46-61.

Richardson's oximeter measures noise levels *in situ*, which "may conserve power by reducing LED drive current while maintaining a safe signal-to-noise ratio."  APPLE-1004, 3:3-7.  The oximeter operates in one of three states: State 0, State 1, and State 2.  APPLE-1004, 5:41-43.  In State 0, the oximeter turns off the light sources and monitors the photodetector signal at a given frequency to monitor noise in the oximeter signal.  APPLE-1004, 2:57-64, 5:17-24, 5:43-53.  The measured noise level is used to select a frequency at which the contribution of noise to the signal is relatively low.  APPLE-1004, 3:1-17, 5:53-54, 7:58-63; APPLE-1003, ¶36.

After selecting a frequency, the oximeter operates in a normal operating state, State 1, where both light sources are activated alternately at the frequency and the physiological parameter is monitored.  APPLE-1004, 5:55-57, 6:66-7:3, 7:58-63, 8:46-49.  When the oximeter is operating in State 1, the oximeter displays blood saturation values, a pulse waveform, and heart rate estimates and provides an audible pulse tone.  APPLE-1004, 9:33-38, 9:43-47; APPLE-1003, ¶37.  If the oximeter determines that the signal-to-noise ratio decreases below an acceptable level, it reverts from State 1 to State 0 to search for a new frequency.  APPLE-1004, 5:64-67, 7:3-18, 8:41-43, 8:50-64.

9

The oximeter frequently transitions from State 1 to State 2 to reassess the noise at the current operating frequency.  APPLE-1004, 6:1-2, 8:46, 9:39-43; APPLE-1003, ¶38.  In State 2, the red light source is turned off, and a new noise level is calculated by measuring the ambient noise in the red channel only.  APPLE-1004, 6:2-4, 9:40-43, 9:52-63.  In State 2, the infrared channel is operating, and the oximeter monitors the pulse rate, displays a pulse waveform and heart rate estimates, and provides an audible pulse tone.  APPLE-1004, 6:4-7, 9:43-47.  After calculating the new noise level, the oximeter returns to State 1 and operates normally using the new noise level.  APPLE-1004, 6:7-10, 9:63-65.

## 2.  Analysis

For this first mapping of Richardson to the claim elements, claims 1-8 and 11-16 are mapped to disclosure in Richardson describing the oximeter transitioning from State 2 (as the first control protocol) to State 1 (as the second control protocol).

### (a)    Claim 1

**1[p]: "A method of operating a patient monitor configured to monitor at least a pulse rate of a patient by processing signals responsive to light attenuated by body tissue, the method comprising:"**

Richardson discloses a method of operating a patient monitor that processes signals responsive to light attenuated by body tissue.  APPLE-1003, ¶41.  Richardson discloses a "method... to process photodetection signals obtained with

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

a pulse oximeter."  APPLE-1004, 2:57-59, 1:11-15, 2:35-37.  "Detector 29 is placed upon the finger 14 of a patient 28" as shown in FIG. 1.  APPLE-1004, 3:58-67.  "Utilizing the placement of the detector 29 at the finger 14, all of the readings... are made possible."  APPLE-1004, 3:67-4:2.



APPLE-1004, FIG. 1

"[T]he sensor of the pulse oximeter system... emits light alternately at a red and at an infrared wavelength into the patient's tissue, and a single photodetector senses the light transmitted through the tissue at each wavelength."  APPLE-1004, 1:37-45, 4:2-5; APPLE-1003, ¶42.

Richardson discloses that the patient monitor monitors at least a pulse rate of a patient.  APPLE-1003, ¶43.  For example, Richardson's oximeter operates in "State 1[, which] is the oximeter's normal operating state" "where both LEDs are turned on and the blood oxygen saturation is monitored."  APPLE-1004, 7:58-63,

11

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

5:53-57.  "[I]n State 1, the oximeter is functioning normally and saturation values are presented to the clinician for each detected and accepted pulse."  APPLE-1004, 8:46-49, 9:33-38.  The pulse oximeter also maintains a "pulse waveform display, heart rate estimates, and audible pulse tone."  APPLE-1004, 9:43-47.

**1[a]: "operating the patient monitor according to a first control protocol, wherein said operating includes activating a first control protocol light source in accordance with the first control protocol, the first control protocol light source including one or more of a plurality of light sources; when operating according to the first control protocol, calculating, by the patient monitor, measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source, detected by a detector of an optical sensor after attenuation by body tissue of the patient using the patient monitor;"**

Richardson's "system frequently moves from State 1 to State 2... to reassess the noise."  APPLE-1004, 6:1-2, 8:46, 9:39-43.  "The purpose of State 2 is to detect new noise sources... by turning off the red LED...  and measuring ambient noise in the red channel only."  APPLE-1004, 9:40-43, 6:2-4, 9:52-63.  In State 2, "the infrared channel is still operating," and the sensor emits "an infrared wavelength into the patient's tissue, and a single photodetector senses the light transmitted through the tissue."  APPLE-1004, 9:43-47, 1:37-45.  "Since the infrared channel is still operating, the pulse oximeter can maintain its pulse waveform display, heart rate estimates, and audible pulse tone."  APPLE-1004, 9:43-47.  "In State 2, the pulse oximeter... can monitor pulse rate and otherwise give the appearance of operating normally."  APPLE-1004, 6:4-7; APPLE-1003,

12

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

¶44.

Accordingly, Richardson's oximeter operates according to a first control protocol, e.g., State 2, including activating the infrared light source and operating the red light source in an off state in accordance with the first control protocol. APPLE-1003, ¶45; APPLE-1004, 1:37-45, 6:2-7, 9:40-47, 9:52-63.  When the oximeter is operated according to the first control protocol, the oximeter processes signals responsive to light attenuated by body tissue using the infrared channel and monitors at least a pulse rate of a patient to display a pulse waveform and heart rate estimates.  APPLE-1003, ¶45; APPLE-1004, 9:43-47, 1:37-45, 6:4-7.

**1[b]: "generating a trigger signal, wherein generating said trigger signal is responsive to at least one of: a comparison of processing characteristics to a predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector;"**

In Richardson, "[t]he purpose of State 2 is to detect new noise sources... by turning off the red LED... and measuring ambient noise in the red channel only." APPLE-1004, 9:40-43, 6:2-4, 9:52-63.  "After the noise is assessed in State 2, the system *returns to State 1*... and operates normally, *employing the new noise level calculated in State 2*."  APPLE-1004, 6:2-10, 9:52-65.  As such, the system does not exit State 2 and return to State 1 until the "new noise level" is calculated. APPLE-1003, ¶46; APPLE-1004, 6:2-10, 9:52-65.  Accordingly, the calculation of the "new noise level" (a signal quality characteristic of signals received from the

13

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

detector) causes a trigger signal to be generated.  *Id.*

**1[c]: "in response to receiving the trigger signal, operating the patient monitor according to a second control protocol different from the first control protocol, wherein said operating includes activating a second control protocol light source in accordance with the second control protocol, the second control protocol light source including one or more of the plurality of light sources; and when operating the patient monitor according to the second control protocol, calculating the measurement values of the pulse rate, the measurement values responsive to light from the second control protocol light source, detected by the detector after attenuation by the body tissue of the patient using the patient monitor,"**

In Richardson, "[a]fter the noise is assessed in State 2, the system returns to State 1... and operates normally, employing the new noise level calculated in State 2." APPLE-1004, 6:2-10, 9:52-65.  "State 1 is the oximeter's normal operating state" "where both LEDs are turned on and the blood oxygen saturation is monitored." APPLE-1004, 7:58-63, 5:53-57, 6:61-7:3.  "[T]he sensor of the pulse oximeter system... emits light alternately at a red and at an infrared wavelength into the patient's tissue, and a single photodetector senses the light transmitted through the tissue at each wavelength." APPLE-1004, 1:37-45.  "[I]n State 1, the oximeter is functioning normally and saturation values are presented to the clinician for each detected and accepted pulse." APPLE-1004, 8:46-49, 9:33-38. The pulse oximeter also maintains a "pulse waveform display, heart rate estimates, and audible pulse tone." APPLE-1004, 9:43-47; APPLE-1003, ¶47.

As such, Richardson's oximeter, in response to the trigger signal that causes

14

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

the oximeter to return to State 1, returns to the normal operating state where both the red and infrared light sources are activated alternately, and the oximeter displays blood saturation values, a pulse waveform, and heart rate estimates and provides an audible pulse tone.  APPLE-1003, ¶48; APPLE-1004, 1:37-45, 5:53-57, 6:2-10, 6:61-7:3, 7:58-63, 8:46-49, 9:33-65.  Accordingly, Richardson's oximeter, in response to receiving the trigger signal causing it to return to State 1, operates according to a second control protocol, e.g., State 1, including activating the both the red and infrared light sources in accordance with the second control protocol.  *Id.*  When the oximeter is operated according to the second control protocol, e.g., State 1, the oximeter processes signals responsive to light attenuated by body tissue and monitors at least a pulse rate of a patient to display a pulse waveform and heart rate estimates.  *Id.*

**1[d]: "wherein said operating of the patient monitor according to the first control protocol operates the first control protocol light source according to a first duty cycle and said operating of the patient monitor according to the second control protocol operates the second control protocol light source according to a second duty cycle,"**

Richardson discloses that "[t]he purpose of State 2 is to detect new noise sources... by turning off the red LED... and measuring ambient noise in the red channel only."  APPLE-1004, 9:40-43, 6:2-4, 9:52-63.  In State 2, "the infrared channel is still operating," and the sensor emits "an infrared wavelength into the patient's tissue, and a single photodetector senses the light transmitted through the

15

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

tissue." APPLE-1004, 9:43-47, 1:37-45.  Richardson also discloses that "State 1 is the oximeter's normal operating state" where "[t]he LEDs are activated alternately at a frequency f$_{TMUX}$."  APPLE-1004, 7:58-63, 5:55-57, 6:66-7:3.  Additionally, "[a] clock controls the sequential output of light from the light emitting diodes and to a duty cycle of at least 1 in 4" (at least 25%).  APPLE-1004, 4:6-10; APPLE-1003, ¶49.

As such, in State 2, the red light source is turned off and has a duty cycle of 0%, and the infrared light source is operated with a duty cycle of at least 25%.  APPLE-1003, ¶50; APPLE-1004, 9:40-43, 6:2-4, 9:52-63, 4:6-10.  In State 1, both the red and infrared light sources are activated with a duty cycle of at least 25%.  APPLE-1003, ¶50; APPLE-1004, 7:58-63, 5:55-57, 6:66-7:3, 4:6-10.  Accordingly, Richardson discloses that the first control protocol, e.g., State 2, operates the first control protocol light source according to a first duty cycle, e.g., red LED at 0% duty cycle and infrared LED at 25% duty cycle, and the second control protocol, e.g., State 1, operates the second control protocol light source according to a second duty cycle, e.g., red and infrared LEDs at 25% duty cycle.  APPLE-1003, ¶50; APPLE-1004, 9:40-43, 6:2-4, 9:52-63, 7:58-63, 5:55-57, 6:66-7:3, 4:6-10.  Accordingly, Richardson teaches operating the patient monitor according to different duty cycles, under the proper construction of 1[d].  *Id.*

16

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

**1[e]: "wherein power consumption of the first control protocol light source according to the first duty cycle is different than power consumption of the second control protocol light source according to the second duty cycle."**

As previously discussed (*supra* Ground 1A, 1[d]), Richardson discloses that the first control protocol, e.g., State 2, operates the first control protocol light source according to a first duty cycle, e.g., red LED at 0% duty cycle and infrared LED at a duty cycle of at least 25%, and the second control protocol, e.g., State 1, operates the second control protocol light source according to a second duty cycle, e.g., red and infrared LEDs at a duty cycle of at least 25%.  APPLE-1003, ¶¶49-50; APPLE-1004, 9:40-43, 6:2-4, 9:52-63, 7:58-63, 5:55-57, 6:66-7:3, 4:6-10. Accordingly, the power consumption of the light sources operating according to the first control protocol, e.g., State 2 where the red LED operates according to a first duty cycle of 0%, is different than the power consumption of the light sources operating according to the second control protocol, e.g., State 1 where the red LED operates according to a second duty cycle of at least 25%.  *Id*.

17

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

### (b)    Claim 2

**"2. The method of claim 1, wherein the first control protocol light source operates on the first duty cycle having an active time and an inactive time according to the first control protocol, wherein the second control protocol light source operates on the second duty cycle having an active time and an inactive time according to the second control protocol, the active time of the first duty cycle having a first duration and the active time of the second duty cycle having a second duration, wherein the first duration and the second duration are different."**

As previously discussed (*supra* Ground 1A, 1[d]), Richardson discloses that the first control protocol, e.g., State 2, operates the first control protocol light source according to a first duty cycle, e.g., red LED at 0% duty cycle and infrared LED at a duty cycle of at least 25%, and the second control protocol, e.g., State 1, operates the second control protocol light source according to a second duty cycle, e.g., red and infrared LEDs at a duty cycle of at least 25%.  APPLE-1003, ¶¶49-50, 52; APPLE-1004, 9:40-43, 6:2-4, 9:52-63, 7:58-63, 5:55-57, 6:66-7:3, 4:6-10. Accordingly, for the red LED, the duration of the active time of the first duty cycle of 0% is different from the duration of the active time of the second duty cycle of at least 25%.  *Id*.

### (c)    Claim 3

**"3. The method of claim 2, wherein the second duration is longer than the first duration."**

As previously discussed (*supra* Ground 1A, 1[d]), Richardson discloses that the first control protocol, e.g., State 2, operates the first control protocol light

18

source according to a first duty cycle, e.g., red LED at 0% duty cycle and infrared LED at a duty cycle of at least 25%, and the second control protocol, e.g., State 1, operates the second control protocol light source according to a second duty cycle, e.g., red and infrared LEDs at a duty cycle of at least 25%.  APPLE-1003, ¶¶49-50, 53; APPLE-1004, 9:40-43, 6:2-4, 9:52-63, 7:58-63, 5:55-57, 6:66-7:3, 4:6-10. Accordingly, for the red LED, the duration of the active time of the second duty cycle of at least 25% is longer the duration of the active time of the first duty cycle of 0%.  *Id.*

### (d)    Claim 4

**"4. The method of claim 1, wherein power consumption during said operating at the second control protocol is greater than power consumption during said operating at the first control protocol."**

As previously discussed (*supra* Ground 1A, 1[d]), Richardson discloses that the first control protocol, e.g., State 2, operates the first control protocol light source according to a first duty cycle, e.g., red LED at 0% duty cycle and infrared LED at a duty cycle of at least 25%, and the second control protocol, e.g., State 1, operates the second control protocol light source according to a second duty cycle, e.g., red and infrared LEDs at a duty cycle of at least 25%.  APPLE-1003, ¶¶49-50, 54; APPLE-1004, 9:40-43, 6:2-4, 9:52-63, 7:58-63, 5:55-57, 6:66-7:3, 4:6-10. Accordingly, the power consumption of the light sources operating according to the second control protocol, e.g., State 1 where the red LED operates according to

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

a second duty cycle of at least 25%, is greater than the power consumption of the light sources operating according to the first control protocol, e.g., State 2 where the red LED operates according to a first duty cycle of 0%.  *Id.*

### (e)    Claim 5

**"5. The method of claim 1, wherein said operating the patient monitor according to the first control protocol consumes a relatively small amount of power, and wherein said operating the patient monitor according to the second control protocol consumes a relatively large amount of power."**

As previously discussed (*supra* Ground 1A, 1[d]), Richardson discloses that the first control protocol, e.g., State 2, operates the first control protocol light source according to a first duty cycle, e.g., red LED at 0% duty cycle and infrared LED at a duty cycle of at least 25%, and the second control protocol, e.g., State 1, operates the second control protocol light source according to a second duty cycle, e.g., red and infrared LEDs at a duty cycle of at least 25%.  APPLE-1003, ¶¶49-50, 55; APPLE-1004, 9:40-43, 6:2-4, 9:52-63, 7:58-63, 5:55-57, 6:66-7:3, 4:6-10. Accordingly, operating the light sources according to the first control protocol, e.g., State 2 where the red LED operates according to a first duty cycle of 0%, consumes a relatively small amount of power, and operating the light sources according to the second control protocol, e.g., State 1 where the red LED operates according to a second duty cycle of at least 25%, consumes a relatively large amount of power as compared to State 2.  *Id.*

20

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

### (f)    Claim 6

**"6. The method of claim 1, wherein said operating the patient monitor in accordance with the first control protocol comprises operating the first control protocol light source in a data off state."**

As previously discussed (*supra* Ground 1A, 1[a]), Richardson's oximeter operates in State 2 "to detect new noise sources... by ***turning off the red LED***." APPLE-1004, 9:40-43, 6:2-4, 9:52-63; APPLE-1003, ¶¶44-45.  The '776 patent discloses that a "data off state" "turns off the emitter drivers" and "no sensor samples are processed."  APPLE-1001, 7:13-15, 8:38-40.  Accordingly, operating Richardson's light sources in accordance with the first control protocol, e.g., State 2, includes operating the red light source in a data off state.  APPLE-1003, ¶56; APPLE-1004, 9:40-43, 6:2-4, 9:52-63; APPLE-1001, 7:13-15, 8:38-40.

### (g)    Claim 7

**"7. The method of claim 1, wherein said signals received from the detector are responsive to the detected light of the first control protocol light source or the second control protocol light source."**

As previously discussed (*supra* Ground 1A, 1[a]), Richardson's oximeter operates in State 2 "to detect new noise sources... by turning off the red LED... and measuring ambient noise in the red channel only."  APPLE-1004, 9:40-43, 6:2-4, 9:52-63; APPLE-1003, ¶¶44-45.  In State 2, "the infrared channel is still operating," and the sensor emits "an infrared wavelength into the patient's tissue, and a single photodetector senses the light transmitted through the tissue."

21

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

APPLE-1004, 9:43-47, 1:37-45.  "Since the infrared channel is still operating, the pulse oximeter can maintain its pulse waveform display, heart rate estimates, and audible pulse tone."  APPLE-1004, 9:43-47.  "In State 2, the pulse oximeter... can monitor pulse rate and otherwise give the appearance of operating normally."  APPLE-1004, 6:4-7.  Accordingly, the signals received from the detector described with respect to 1[b] are responsive to the detected light of the infrared light source.  APPLE-1003, ¶57; APPLE-1004, 1:37-45, 6:2-7, 9:40-63.

### (h)    Claim 8

**"8. The method of claim 7, wherein the signal quality characteristics includes at least one of signal strength, a presence of noise, or a presence of motion induced noise."**

Richardson discloses that "[a]fter the noise is assessed in State 2, the system returns to State 1... and operates normally, employing the new noise level calculated in State 2."  APPLE-1004, 6:2-10, 9:52-65.  As such, the system does not exit State 2 and return to State 1 until the "new noise level" is calculated.  APPLE-1003, ¶58; APPLE-1004, 6:2-10, 9:52-65.  Accordingly, the calculation of the "new noise level" (a presence of noise) causes a trigger signal to be generated.  *Id.*

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

### (i)   Claim 11

**11[p1]: "A patient monitor configured to monitor at least a pulse rate of a patient by processing signals responsive to light attenuated by body tissue, the patient monitor comprising:**
**a plurality of light sources;**
**at least one detector of an optical sensor configured to receive light after attenuation by body tissue of the patient using the patient monitor; and"**

*Supra*, Ground 1A, element 1[p]; APPLE-1003, ¶¶41-43.

**11[p2]: "one or more processors configured to:"**

Richardson's oximeter includes a "microprocessor" that performs functions to operate the oximeter in State 1 and State 2.  APPLE-1004, 6:11-8:49, 9:52-65; APPLE-1003, ¶51.  Richardson's "microprocessor" teaches the claimed "one or more processors."  *Id*.

**11[a]: "operate the patient monitor according to a first control protocol, wherein said operating includes activating a first control protocol light source in accordance with the first control protocol, the first control protocol light source including one or more of said plurality of light sources;**
**when operating according to the first control protocol, calculate, by the patient monitor, measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source, detected by said at least one detector after attenuation by the body tissue of the patient using the patient monitor,"**

*Supra*, Ground 1A, 1[a]; APPLE-1003, ¶¶44-45.

23

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

**11[b]: "generate a trigger signal, wherein generation of said trigger signal is responsive to at least one of: a comparison of processing characteristics to a predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector;"**

*Supra*, Ground 1A, 1[b]; APPLE-1003, ¶46.

**11[c]: "in response to receiving the trigger signal, operate the patient monitor according to a second control protocol different from the first control protocol, wherein said operation includes activating a second control protocol light source in accordance with the second control protocol, the second control protocol light source including one or more of said plurality of light sources; and when operating the patient monitor according to the second control protocol, calculate the measurement values of the pulse rate, the measurement values responsive to light from the second control protocol light source, detected by said at least one detector after attenuation by the body tissue of the patient using the patient monitor,"**

*Supra*, Ground 1A, 1[c]; APPLE-1003, ¶¶47-48.

**11[d]: "wherein said operation of the patient monitor according to the second control protocol operates the first control protocol light source according to a first duty cycle and said operation of the patient monitor according to the second control protocol operates the second control protocol light source according to a second duty cycle,"**

*Supra*, Ground 1A, 1[d]; APPLE-1003, ¶¶49-50.

**11[e]: "wherein power consumption of the first control protocol light source according to the first duty cycle is different than power consumption of the second control protocol light source according to the second duty cycle."**

*Supra*, Ground 1A, 1[e]; APPLE-1003, ¶¶49-50.

24

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

(j)     Claim 12

**"12. The patient monitor of claim 11, wherein said operation of the first control protocol light source on the first duty cycle has an active time and an inactive time according to the first control protocol, wherein said operation of the second control protocol light source on the second duty cycle has an active time and an inactive time according to the second control protocol, wherein the active time of the first duty cycle has a first duration and the active time of the second duty cycle has a second duration, wherein the first duration and the second duration are different."**

*Supra*, Ground 1A, Claim 2; APPLE-1003, ¶52.

(k)     Claim 13

**"13. The patient monitor of claim 12, wherein the second duration is longer than the first duration."**

*Supra*, Ground 1A, Claim 3; APPLE-1003, ¶53.

(l)     Claim 14

**"14. The patient monitor of claim 11, wherein power consumption during said operation at the second control protocol is greater than power consumption during said operation at the first control protocol."**

*Supra*, Ground 1A, Claim 4; APPLE-1003, ¶54.

(m)     Claim 15

**"15. The patient monitor of claim 11, wherein said operation of the patient monitor in accordance with the first control protocol comprises operating the first control protocol light source in a data off state."**

*Supra*, Ground 1A, Claim 6; APPLE-1003, ¶56.

25

### (n)    Claim 16

**"16. The patient monitor of claim 11, wherein said signals received from the detector are responsive to the detected light of the first control protocol light source or the second control protocol light source."**

*Supra*, Ground 1A, Claim 7; APPLE-1003, ¶57.

## B.    GROUND 1B: Claims 1-9 and 11-16 are obvious over Richardson (second mapping)

For this alternate mapping of Richardson to the claim elements, claims 1-9 and 11-16 are mapped to disclosure in Richardson describing the oximeter transitioning from a first operating frequency (as the first control protocol) for State 1 to a second, different operating frequency (as the second control protocol) for State 1.

### (a)    Claim 1[3]

**Limitation 1[p]**

*Supra*, Ground 1A, 1[p]; APPLE-1003, ¶¶41-43.

**Limitation 1[a]**

Richardson discloses that "[v]arious available frequencies (discrete or continuous) are evaluated to determine their respective noise levels and one is

---

[3] For the sake of brevity, the remaining analysis will refer to the claim limitations by the identifiers listed in Ground 1A.

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

selected to act as the operating demultiplexer frequency" and "*as many as 1000 frequency channels are available*."  APPLE-1004, 2:35-47, 3:7-13.  "The initial $f_{TMUX}$ is selected on the basis of its quietness from among a group of available frequencies."  APPLE-1004, 5:41-54; APPLE-1003, ¶60.

"State 1 is the oximeter's normal operating state" where "[t]he LEDs are activated alternately at a frequency $f_{TMUX}$."  APPLE-1004, 7:58-63, 5:53-57, 6:61-7:3.  "[T]he sensor of the pulse oximeter system... emits light alternately at a red and at an infrared wavelength into the patient's tissue, and a single photodetector senses the light transmitted through the tissue at each wavelength."  APPLE-1004, 1:37-45.  "[I]n State 1, the oximeter is functioning normally and saturation values are presented to the clinician for each detected and accepted pulse."  APPLE-1004, 8:46-49, 9:33-38.  The pulse oximeter also maintains a "pulse waveform display, heart rate estimates, and audible pulse tone."  APPLE-1004, 9:43-47; APPLE-1003, ¶61.

Accordingly, Richardson's oximeter operates according to a first control protocol, e.g., a first selected frequency, including activating the light sources in accordance with the first control protocol, e.g., the first selected frequency.  APPLE-1003, ¶62; APPLE-1004, 7:58-63, 5:53-57, 6:61-7:3.  When the oximeter is operated according to the first control protocol, e.g., the first selected frequency, the oximeter processes signals responsive to light attenuated by body tissue and

27

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

monitors at least a pulse rate of a patient to display a pulse waveform and heart rate estimates. APPLE-1003, ¶62; APPLE-1004, 8:46-49, 9:33-47.

## Limitation 1[b]

While Richardson's system is operating in State 1, "*if the system determines that the signal-to-noise ratio at f<sub>TMUX</sub>*" (a processing characteristic) "*decreases below an acceptable level*" (a threshold) "it *moves to State 0* (process 4)" (generates a trigger signal) "to search for a new $f_{TMUX}$." APPLE-1004, 5:60-67, 7:3-18. "In State 0, the oximeter does not provide power to the sensor's LEDs but collects a digitized 'signal' from the sensor's photodetector in the red and infrared channels," and "read[s] the ambient noise (both electrical and photic)... to select [the new] $f_{TMUX}$." APPLE-1004, 5:44-54, 2:57-64, 3:1-17, 5:17-24. "The LEDs are activated alternately at a frequency of $f_{TMUX}$." APPLE-1004, 7:58-59. "This frequency agility allows the instrument to shift from a first multiplexing frequency to another in order to avoid the noise appearing at the first multiplexing frequency." APPLE-1004, 2:44-47. Accordingly, Richardson's oximeter generates a trigger signal that causes it to select a new frequency at which to activate the LEDs, in response to determining that signal quality characteristics, e.g., the signal-to-noise ratio, decreased below an acceptable level during the normal operating state. APPLE-1003, ¶63; APPLE-1004, 5:60-67, 7:3-18.

28

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

## Limitation 1[c]

In Richardson, "[w]hen $f_{TMUX}$ is settled on in State 0, the system moves to State 1." APPLE-1004, 5:55-56, 6:61-7:3. "State 1 is the oximeter's normal operating state" where "[t]he LEDs are activated alternately at a frequency $f_{TMUX}$." APPLE-1004, 7:58-63, 5:53-57, 6:61-7:3. "[T]he sensor of the pulse oximeter system... emits light alternately at a red and at an infrared wavelength into the patient's tissue, and a single photodetector senses the light transmitted through the tissue at each wavelength." APPLE-1004, 1:37-45. "[I]n State 1, the oximeter is functioning normally and saturation values are presented to the clinician for each detected and accepted pulse." APPLE-1004, 8:46-49, 9:33-38. The pulse oximeter also maintains a "pulse waveform display, heart rate estimates, and audible pulse tone." APPLE-1004, 9:43-47. As such, in response to selecting the new frequency, the oximeter returns to the normal operating state (State 1) where the light sources are activated alternately at the selected new frequency, and the oximeter displays blood saturation values, a pulse waveform, and heart rate estimates and provides an audible pulse tone. APPLE-1004, ¶¶64-65; APPLE-1004, 6:61-7:3, 7:58-63, 5:53-57 1:37-45, 8:46-49, 9:33-47.

Accordingly, Richardson's oximeter, in response to receiving the trigger signal causing it to select a second frequency at which to activate the LEDs, operates according to a second control protocol, e.g., the second selected

29

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

frequency, including activating the light sources in accordance with the second control protocol, e.g., the second selected frequency. *Id.* When the oximeter is operated according to the second control protocol, e.g., the second selected frequency, the oximeter processes signals responsive to light attenuated by body tissue and monitors at least a pulse rate of a patient to display a pulse waveform and heart rate estimates. *Id.*

**Limitation 1[d]**

Richardson discloses that "[a] clock controls the sequential output of light from the light emitting diodes and to a duty cycle of at least 1 in 4." APPLE-1004, 4:6-10. As such, the light sources are activated at each selected frequency with a duty cycle of at least 25%. APPLE-1003, ¶66; APPLE-1004, 4:6-10. Accordingly, Richardson's light sources are operated according to the first control protocol, e.g., the first selected frequency of 1[a], according to a first duty cycle of at least 25%, and are operated according to the second control protocol, e.g., the second selected frequency of 1[c], according to a second duty cycle of at least 25%. *Id.* Thus, Richardson teaches this limitation under an alternate construction of this limitation that does not require different duty cycles for the first duty cycle and the second duty cycle. *Id.*

**Limitation 1[e]**

As previously discussed (*supra* Ground 1B, 1[d]), Richardson's light

30

sources are operated according to the first control protocol, e.g., the first selected frequency of 1[a], according to a first duty cycle of at least 25%, and are operated according to the second control protocol, e.g., the second selected frequency of 1[c], according to a second duty cycle of at least 25%.  APPLE-1003, ¶66; APPLE-1004, 4:6-10.  Because the first selected frequency of 1[a] and the second selected frequency of 1[c] are different frequencies, but with a duty cycle of at least 25%, the power consumption of the light sources operating at these different frequencies are different.  APPLE-1003, ¶67; APPLE-1004, 4:6-10.  Power consumption levels depend on operating frequency and other system factors, where with other factors held constant, power consumption increases with increasing operating frequency. APPLE-1003, ¶67 (citing APPLE-1007, 2:10-12, 2:31-33; APPLE-1008, 2:25-26; APPLE-1009, 2:5; APPLE-1006, 11:51-59.  Accordingly, operating the light sources at different frequencies results in different power consumption.  *Id.*

### (a)    Claim 2

As previously discussed (*supra* Ground 1B, 1[d]), Richardson's light sources are operated according to the first control protocol, e.g., the first selected frequency of 1[a], according to a first duty cycle of at least 25%, and are operated according to the second control protocol, e.g., the second selected frequency of 1[c], according to a second duty cycle of at least 25%.  APPLE-1003, ¶¶66, 69; APPLE-1004, 4:6-10.  Because the first selected frequency of 1[a] and the second

selected frequency of 1[c] are different frequencies, but with a duty cycle of at least 25%, the time duration of the active time of the first duty cycle is different from the time duration of the active time of the second duty cycle. *Id.* This is illustrated below:





### (b)  Claim 3

As previously discussed (*supra* Ground 1B, 1[b]), Richardson's oximeter generates a trigger signal that causes it to select a new frequency at which to activate the LEDs, in response to determining that signal quality characteristics, e.g., the signal-to-noise ratio, decreased below an acceptable level during the normal operating state.  APPLE-1003, ¶63; APPLE-1004, 5:60-67, 7:3-18.  "This

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

frequency agility allows the instrument to shift from a first multiplexing frequency to another in order to avoid the noise appearing at the first multiplexing frequency" and "as many as 1000 frequency channels are available."  APPLE-1004, 2:44-47; APPLE-1003, ¶70.

There would be times in Richardson where the second selected frequency of 1[c] would be lower than the first selected frequency of 1[a].  APPLE-1003, ¶71; APPLE-1004, 2:35-47, 3:7-13, 5:41-54, 7:58-63, 5:53-57, 6:61-7:3.  Accordingly, in such a scenario, the time duration of the active time of the second duty cycle for the second selected frequency of 1[c] would be longer than the time duration of the active time of the first duty cycle for the first selected frequency of 1[a], as illustrated above (*supra* Ground 1B, claim 2).  *Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1326 (Fed. Cir. 2003) ("prior art product that sometimes, but not always, embodies a claimed method nonetheless teaches that aspect of the invention"); *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 995, 1002 (Fed. Cir. 2016) ("prior art that sometimes meet the claim elements are sufficient").

### (c)    Claim 4

As previously discussed (*supra* Ground 1B, 1[d]), Richardson's light sources are operated according to the first control protocol, e.g., the first selected frequency of 1[a], according to a first duty cycle of at least 25%, and are operated according to the second control protocol, e.g., the second selected frequency of

33

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

1[c], according to a second duty cycle of at least 25%.  APPLE-1003, ¶66; APPLE-1004, 4:6-10.  As previously discussed (*supra* Ground 1B, 1[e]), because the first selected frequency of 1[a] and the second selected frequency of 1[c] are different frequencies, but with a duty cycle of at least 25%, the power consumption of the light sources operating at these different frequencies are different.  APPLE-1003, ¶¶66-67, 72.

Additionally, as previously discussed (*supra* Ground 1B, 1[b]), Richardson's oximeter generates a trigger signal that causes it to select a new frequency at which to activate the LEDs, in response to determining that signal quality characteristics, e.g., the signal-to-noise ratio, decreased below an acceptable level during the normal operating state.  APPLE-1003, ¶63; APPLE-1004, 5:60-67, 7:3-18.  "This frequency agility allows the instrument to shift from a first multiplexing frequency to another in order to avoid the noise appearing at the first multiplexing frequency" and "as many as 1000 frequency channels are available."  APPLE-1004, 2:44-47. There would be times in Richardson where the second selected frequency of 1[c] would be higher than the first selected frequency of 1[a], resulting in more power being consumed by operating the light sources according to the second selected frequency of 1[c] as compared to the power being consumed by operating the light sources according to the first selected frequency of 1[a].  APPLE-1003, ¶73; *Hewlett-Packard*, 340 F.3d at 1326; *Unwired Planet*, 841 F.3d at 1002.

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

Accordingly, in such a scenario, the power consumption during operating the light sources at the second control protocol, e.g., the second selected frequency of 1[c], is greater than the power consumption during operating the light sources at the first control protocol, e.g., the first selected frequency of 1[a]. *Id.*

### (d)    Claim 5

As previously discussed (*supra* Ground 1B, Claim 4), there would be times in Richardson where the second selected frequency of 1[c] would be higher than the first selected frequency of 1[a], resulting in more power being consumed by operating the light sources according to the second selected frequency of 1[c] as compared to the power being consumed by operating the light sources according to the first selected frequency of 1[a].  APPLE-1003, ¶¶66, 63, 73; APPLE-1004, 5:60-67, 7:3-18, 2:44-47.  Accordingly, there would be times where the power consumption of the light sources operating according to the first control protocol, e.g., the first selected frequency of 1[a], consumes a relatively small amount of power, and the power consumption of the light sources operating according to the second control protocol, e.g., the second selected frequency of 1[c], consumes a relatively large amount of power as compared to that of the first selected frequency of 1[a].  APPLE-1003, ¶74; *Hewlett-Packard*, 340 F.3d at 1326; *Unwired Planet*, 841 F.3d at 1002.

35

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

### (e)    Claim 6

Richardson discloses that, during the normal operating state of the oximeter,

"[t]he time-varying photodetector output represents the transmitted red and

infrared signals separated by 'dark' periods during which no light is emitted by the

sensor."  APPLE-1004, 1:45-48.  "One time cycle for each of the two wavelengths

is a 'dark' cycle" where the "LED is turned off."  APPLE-1004, 4:10-12.  The '776

patent discloses that a "data off state" "turns off the emitter drivers" and "no sensor

samples are processed."  APPLE-1001, 7:13-15, 8:38-40.  Accordingly, operating

Richardson's light sources in accordance with the first control protocol, e.g., the

first selected frequency of 1[a], includes operating each light source so that one

time cycle is a "dark" cycle or "data off state" where the light sources are turned

off and no samples from the light sources are processed.  APPLE-1003, ¶75;

APPLE-1004, 1:45-48, 4:10-12.

### (f)    Claim 7

Richardson discloses that "State 1 is the oximeter's normal operating state"

where "[t]he LEDs are activated alternately at a frequency $f_{TMUX}$."  APPLE-1004,

7:58-63, 5:53-57, 6:61-7:3.  "[T]he sensor of the pulse oximeter system... emits

light alternately at a red and at an infrared wavelength into the patient's tissue, and

a single photodetector senses the light transmitted through the tissue at each

wavelength."  APPLE-1004, 1:37-45; APPLE-1003, ¶76.

36

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

While Richardson's system is operating in State 1, "if the system determines that the signal-to-noise ratio at $f_{TMUX}$ decreases below an acceptable level, it moves to State 0 (process 4) to search for a new $f_{TMUX}$." APPLE-1004, 5:60-67, 7:3-18. To determine the signal-to-noise ratio while in State 1, the oximeter "continually monitors high frequency noise in the active signal." APPLE-1004, 5:60-67, 7:3-8. Accordingly, the signals received from the detector described with respect to 1[b] are responsive to the detected light of both the red and infrared light sources. APPLE-1003, ¶77; APPLE-1004, 7:58-63, 5:53-67, 6:61-7:3, 1:37-51, 7:3-18.

### (g)     Claim 8

As previously discussed (*supra* Ground 1B, 1[b]), Richardson's oximeter generates a trigger signal that causes it to select a new frequency at which to activate the LEDs, in response to determining that signal quality characteristics, e.g., the signal-to-noise ratio, decreased below an acceptable level during the normal operating state. APPLE-1003, ¶¶63, 78; APPLE-1004, 5:60-67, 7:3-18. Accordingly, the signal quality characteristics includes the signal-to-noise ratio which indicates the signal strength in the presence of noise. *Id.*

### (h)     Claim 9

**9. The method of claim 1, wherein the physiological event includes at least one of oxygen desaturation, an abnormal pulse rate, or an abnormal plethysmograph waveform.**

Richardson discloses that while the oximeter is operating in State 1, "[i]f the

37

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

pulse is not sufficiently greater than the noise..., it is rejected," and "[i]f several pulses are rejected (e.g., after about 5 seconds), the noise state reverts to State 0" "where a new $f_{TMUX}$ is determined."  APPLE-1004, 8:39-43, 8:50-52, 8:59-60.  The rejection of pulses in a five second time period would result in a pulse rate of zero for the five second time period, which would be an abnormal pulse rate.  APPLE-1003, ¶79.  As such, Richardson's oximeter, in response to detecting this abnormal pulse rate during State 1, generates a trigger signal that causes it to transition from State 1 to State 0 where it selects a new frequency at which to activate the LEDs. *Id.*; APPLE-1004, 8:39-43, 8:50-52, 8:59-60.  Accordingly, Richardson teaches that the physiological event includes an abnormal pulse rate.  *Id.*

### (i)   Claim 11

**Limitation 11[p1]**

*Supra*, Ground 1A, 1[p]; APPLE-1003, ¶¶41-43.

**Limitation 11[p2]**

Richardson's oximeter includes a microprocessor that performs functions to operate the oximeter in State 0 and State 1.  APPLE-1004, 6:11-8:49; APPLE-1003, ¶68.  Richardson's "microprocessor" teaches the claimed "one or more processors."  *Id.*

**Limitation 11[a]**

*Supra*, Ground 1B, 1[a]; APPLE-1003, ¶¶60-62.

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

## Limitation 11[b]

*Supra*, Ground 1B, 1[b]; APPLE-1003, ¶63.

## Limitation 11[c]

*Supra*, Ground 1B, 1[c]; APPLE-1003, ¶¶64-65.

## Limitation 11[d]

*Supra*, Ground 1B, 1[d]; APPLE-1003, ¶66.

## Limitation 11[e]

*Supra*, Ground 1B, 1[e]; APPLE-1003, ¶¶66-67.

### (j)     Claim 12

*Supra*, Ground 1B, Claim 2; APPLE-1003, ¶¶66, 69.

### (k)     Claim 13

*Supra*, Ground 1B, Claim 3; APPLE-1003, ¶¶63, 70-71.

### (l)     Claim 14

*Supra*, Ground 1B, Claim 4; APPLE-1003, ¶¶63, 66-67, 72-73.

### (m)     Claim 15

*Supra*, Ground 1B, Claim 6; APPLE-1003, ¶75.

### (n)     Claim 16

*Supra*, Ground 1B, Claim 7; APPLE-1003, ¶¶76-77.

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

### C.   GROUND 1C: Claims 9 and 10 are obvious based on Richardson (either mapping) and Bindszus

#### 1.  Overview of Bindszus

Similar to Richardson, Bindszus describes a pulse oximeter 60 that provides a pulse rate signal PR indicative of a pulse rate of a patient.  APPLE-1005, 4:14-15; APPLE-1003, ¶102.  Bindszus discloses that "pulse oximetry might not be sufficient[ly] accurate due to a strong impact of pulsatile sources other than the patient's arterial blood flow."  APPLE-1005, 2:18-26.  To provide "improved pulse oximetery," Bindszus' system also includes a heart rate determination unit 70 that provides a heart rate signal HR indicative of a heart rate of the patient.  APPLE-1005, 2:27-28, 4:16-19.  The pulse rate signal and the heart rate signal are provided to a coincidence recognition unit 10 that determines the correlation between the pulse rate and the heart rate and generates a signal 30 indicating the correlation between the pulse rate and the heart rate.  APPLE-1005, 3:56-4:29.  The coincidence recognition unit provides a positive output as signal 30 when the pulse rate and the heart rate are within a certain range and provides a negative output as signal 30 when the pulse rate and the heart rate are not within the given range, indicating a mismatch between the pulse rate and the heart rate.  APPLE-1005, 5:4-20.  Bindszus' pulse oximeter receives the signal 30 from the coincidence recognition unit and initiates suitable measures when the output indicates that a

40

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

mismatch between the pulse rate and the heart rate is detected.  APPLE-1005, 3:35-37.  A high-level functional diagram of Bindszus' system is shown below:



APPLE-1005, Detail of FIG. 2 (annotated)

## 2.  Reasons to Combine Richardson and Bindszus

A POSITA would have been motivated and would have found it obvious and straightforward to combine Richardson (either mapping) and Bindszus to achieve a system that provides the benefit of further improving the accuracy of oxygen saturation values derived by pulse oximetry in the presence of pulsatile sources other than the patient's arterial blood flow.  APPLE-1005, 2:24-28; APPLE-1003, ¶103.  Both Richardson and Bindszus are in the same field of art and relate to responding to noise sources that cause inaccuracies in pulse oximetry.  APPLE-1004, 2:35-48; APPLE-1005, 2:12-28.  Bindszus discloses that "oxygen saturation values derived by pulse oximetry might not be sufficient[ly] accurate due to a

41

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

strong impact of pulsatile sources other than the patient's arterial blood flow."
APPLE-1005, 2:18-26.  Richardson describes "a way to reduce the effects of ambient electromagnetic noise," which is a pulsatile source, in a pulse oximeter by "shift[ing] from a first multiplexing frequency to another in order to avoid noise appearing at the first multiplexing frequency."  APPLE-1004, 2:26-32, 2:44-48.  A POSITA would have recognized that the predictable modification of Richardson's pulse oximeter as suggested by Bindszus would include implementing a system that detects a pulse rate and a heart rate of a patient, determines the correlation between the pulse rate and the heart rate, generates a signal indicating the correlation between the pulse rate and the heart rate, and initiates suitable measures including switching operating frequencies of the pulse oximeter when the signal indicates that a mismatch between the pulse rate and the heart rate is detected, thereby improving the accuracy of oxygen saturation values derived by the pulse oximeter.  APPLE-1004, 2:26-32, 2:44-48; APPLE-1005, 3:35-37, 3:56-4:29; APPLE-1003, ¶103.

Further, a POSITA would have found it obvious to modify Richardson with Bindszus because doing so entails the use of known solutions to improve similar systems and methods in the same way.  APPLE-1003, ¶104.  Here, "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an

42

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

arrangement, the combination is obvious." *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 417 (2007). A POSITA would have recognized that applying Bindszus' teachings to Richardson's pulse oximeter would have led to predictable results without significantly altering or hindering the functions performed by the pulse oximeter. APPLE-1003, ¶104.

In fact, a POSITA would have been motivated to provide the well-known technique of improving the accuracy of oxygen saturation values derived by the pulse oximeter when a mismatch between the patient's pulse rate and heart rate is detected to cause Richardson's oximeter to include such features to achieve the predictable benefits offered by Bindszus' description of the same. APPLE-1004, 2:26-32, 2:44-48; APPLE-1005, 3:35-37, 3:56-4:29; APPLE-1003, ¶¶104-105. Indeed, a POSITA would have had a reasonable expectation of success in making this modification, and would have reasonably expected to reap benefits of improving the accuracy of oxygen saturation values. *Id*. Richardson and Bindszus describe the same types of pulse oximeters and, in combination, Bindszus' features are implemented in combination with Richardson's pulse oximeter just as it is in Bindszus' system. *Id*. Accordingly, implementing Bindszus' teaching of improving the accuracy of oxygen saturation values derived by the pulse oximeter when a mismatch between the patient's pulse rate and heart rate is detected, to operate a pulse oximeter as taught by Richardson, would have been routine and

43

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

straightforward to a POSITA, and it would have been clear that such a combination would predictably work and provide the expected functionality.  *Id.*

### 3.  Claim 9

Bindszus discloses "providing a coincidence detection between a heart rate and a pulse rate."  APPLE-1005, 3:56-59.  "The heart rate signal HR" is "derived from ultrasound or ECG" and "the pulse rate PR" is "derived from pulse oximetry."  APPLE-1005, 4:30-35.  Bindszus discloses that "[t]ypically the values of the heart rate HR... are more accurate and reliable than e.g. optically derived pulse rates PR from pulse oximetry."  APPLE-1005, 5:22-25.  Bindszus' system "provides a positive output when the heart rate HR and the pulse rate PR are within a certain range" and a "negative output... when the heart rate HR and the pulse rate PR are not within the given range" "indicating a mismatch between the pulse rate PR and the heart rate HR."  APPLE-1005, 5:4-8, 5:17-19.  In Bindszus, "[s]uitable measures... might be initiated when a mismatch between the pulse rate and the heart rate is detected."  APPLE-1005, 3:35-37.  A mismatch between the pulse rate and the "more accurate and reliable" heart rate indicates that the detected pulse rate is either abnormally higher (elevated) or abnormally lower than the detected heart rate.  APPLE-1003, ¶106.

A POSITA would have recognized that the predictable combination of Richardson's pulse oximeter as suggested by Bindszus would include

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

implementing a system that provides an output indicating whether the detected pulse rate is either abnormally higher or abnormally lower than the detected heart rate and, when the output indicates that the detected pulse rate is either abnormally higher or abnormally lower than the detected heart rate (trigger signal), initiates suitable measures including causing the pulse oximeter to transition from State 1 to State 0 where it selects a new frequency at which to activate the LEDs.  APPLE-1004, 2:26-32, 2:44-48, 8:39-43, 8:50-52, 8:59-60; APPLE-1005, 3:35-37, 3:56-4:29; APPLE-1003, ¶107.  Accordingly, the combination of Richardson and Bindszus teaches that the physiological event includes an abnormally low or an abnormally high (elevated) pulse rate.  *Id.*

### 4.  Claim 10

**10. The method of claim 9, wherein the physiological event includes the abnormal pulse rate and wherein the abnormal pulse rate includes an elevated pulse rate.**

*Supra*, Ground 1C, Claim 9; APPLE-1003, ¶¶106-107.

### D.   GROUND 2A: Claims 1-9 and 11-16 are obvious based on Richardson and Turcott (first mapping)

#### 1.  Overview of Turcott

Similar to Richardson, Turcott describes a pulse oximeter having a light source, including red and infrared LEDs, and a light detector, such as a photodetector.  APPLE-1006, 11:15-41; APPLE-1003, ¶80.  The light source is

45

driven with a pulse train. APPLE-1006, 11:51-61. Turcott discloses that "[t]he optical power generated by the [light] source is adjusted to optimize the signal to noise ratio and to minimize power consumption" by adjusting "the drive current" or "the duty cycle of the pulse train," and "[t]o conserve energy, the [light] source is preferably driven with a low duty cycle pulse train." APPLE-1006, 11:51-59. In addition to adjusting the drive current or the duty cycle of the pulse train, "the frequency of the pulse train can be shifted such that a quiet region of the noise spectrum is used." APPLE-1006, 11:59-61.

## 2. Reasons to Combine Richardson and Turcott

A POSITA would have been motivated and would have found it obvious and straightforward to combine Richardson and Turcott to achieve a pulse oximeter that optimizes the signal-to-noise ratio and minimizes power consumption. APPLE-1004, 3:1-17, 5:53-54, 7:58-63; APPLE-1006, 11:54-59; APPLE-1003, ¶81. Both Richardson and Turcott are in the same field of art and relate to pulse oximeters. APPLE-1004, 1:37-45, 2:61-62, 4:2-5; APPLE-1006, 11:15-41. Both Richardson and Turcott disclose a need to optimize the signal-to-noise ratio and minimize power consumption. APPLE-1004, 3:1-17, 5:53-54, 7:58-63; APPLE-1006, 11:54-59. Richardson contemplates adjusting the duty cycles (APPLE-1004, 4:6-10 ("duty cycle of at least 1 in 4")), and Turcott confirms that reducing the duty cycle of the light source optimizes the signal-to-noise ratio and minimizes

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

power consumption (APPLE-1006, 11:54-59).  Moreover, Richardson describes shifting the frequency of the pulse train (APPLE-1004, 3:1-17, 5:53-54, 7:58-63), which Turcott mentions is also performed in addition to adjusting the duty cycle (APPLE-1006, 11:59-61).

A POSITA would have thus been motivated to implement Turcott's teaching of reducing the duty cycle to lower power consumption in a pulse oximeter in combination with Richardson's pulse oximeter to further minimize power consumption.  APPLE-1003, ¶82; APPLE-1004, 3:1-17, 5:53-54, 7:58-63; APPLE-1006, 11:54-59.  Accordingly, implementing Turcott's teaching of reducing the duty cycle to minimize power consumption, to operate a pulse oximeter according to a first and second control protocol as taught by Richardson, would have been routine and straightforward to a POSITA, and it would have been clear that such a combination (yielding the claimed limitation) would predictably work and provide the expected functionality.  *Id.*

Further, a POSITA would have found it obvious to modify Richardson with Turcott because doing so entails the use of known solutions to improve similar systems and methods in the same way.  APPLE-1003, ¶83; *KSR*, 550 U.S. at 417. A POSITA would have recognized that applying Turcott's teachings to Richardson's pulse oximeter would have led to predictable results without significantly altering or hindering the functions performed by the pulse oximeter.

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

APPLE-1003, ¶83.

In fact, a POSITA would have been motivated to provide the well-known technique of reducing the duty cycle to lower power consumption, while maintaining a signal to noise ratio above the minimum level needed for particular design or use, and to cause Richardson's oximeter to include such features to achieve the predictable benefits offered by Turcott's description of the same. APPLE-1003, ¶83; APPLE-1004, 3:1-17, 5:53-54, 7:58-63; APPLE-1006, 11:54-59.  Indeed, a POSITA would have had a reasonable expectation of success in making this modification, and would have reasonably expected to reap benefits of reducing the duty cycle to lower power consumption.  *Id*.  Richardson and Turcott describe the same types of pulse oximeters and, in combination, Turcott's features are implemented in Richardson's pulse oximeter just as it is in Turcott's pulse oximeter.  *Id*.  Accordingly, implementing Turcott's teaching of reducing the duty cycle of light sources to minimize power consumption, to operate a pulse oximeter as taught by Richardson, would have been routine and straightforward to a POSITA, and it would have been clear that such a combination would predictably work and provide the expected functionality.  *Id*.

### 3.  Analysis

For the first mapping of Richardson and Turcott to the claim elements, claims 1-8 and 11-16 are mapped to disclosure in Richardson describing the

48

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

oximeter transitioning from State 2 (as the first control protocol) to State 1 (as the second control protocol), as described in detail in Ground 1A.

### (a)   Claim 1

**Limitations 1[p]-1[a]**

*Supra*, Ground 1A, 1[p]-1[a]; APPLE-1003, ¶¶41-45.

**Limitation 1[b]**

In addition to Richardson's disclosure discussed previously (*supra*, Ground 1A, 1[b]; APPLE-1003, ¶46), Turcott discloses that "[t]he optical power generated by the [light] source is adjusted to optimize the signal to noise ratio."  APPLE-1006, 11:51-61.  Accordingly, the "signal to noise ratio" (a signal quality characteristic of signals received from the detector) causes a trigger signal to be generated for adjusting the optical power generated by the light source.  *Id.*; APPLE-1003, ¶85.

**Limitation 1[c]**

*Supra*, Ground 1A, 1[c]; APPLE-1003, ¶¶47-48.

**Limitation 1[d]**

As previously discussed (*supra* Ground 1A, 1[d]), Richardson discloses that in State 2, the red light source 2 is turned off and has a duty cycle of 0%, and the infrared light source is operated with a duty cycle of at least 25%.  APPLE-1003,

49

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

¶¶49-50, 86; APPLE-1004, 9:40-43, 6:2-4, 9:52-63, 7:58-63, 5:55-57, 6:66-7:3, 4:6-10.  In State 1, both the red and infrared light sources are activated with a duty cycle of at least 25%.  *Id.*  Under the proper construction of 1[d] requiring a different duty cycle for operating the infrared light source in State 2 than the duty cycle for operating the infrared or red light source in State 1, Turcott describes a pulse oximeter where "[t]he optical power generated by the [light] source is adjusted to optimize the signal to noise ratio and to minimize power consumption" by adjusting "the duty cycle of the pulse train," and "[t]o conserve energy, the [light] source is preferably driven with a low duty cycle pulse train."  APPLE-1006, 11:51-59.  A POSITA would have recognized that the predictable modification of Richardson's oximeter as suggested by Turcott would include implementing the oximeter to reduce the duty cycle of the pulse train for operating the infrared light source in State 2, as compared to the duty cycle of the pulse train for operating the infrared or red light source in State 1, to minimize power consumption, as suggested by Turcott.  APPLE-1003, ¶87; APPLE-1006, 11:51-59.

**Limitation 1[e]**

As previously discussed (*supra* Ground 2A, 1[d]), the combination of Richardson and Turcott would include implementing the oximeter to reduce the duty cycle of the pulse train for operating the infrared light source in State 2 as

50

compared to the duty cycle of the pulse train for operating the infrared or red light source in State 1.  APPLE-1003, ¶¶49-50, 86-88; APPLE-1004, 9:40-43, 6:2-4, 9:52-63, 7:58-63, 5:55-57, 6:66-7:3, 4:6-10; APPLE-1006, 11:51-59.  Accordingly, the power consumption of State 2, where the red light source is operated at a duty cycle of 0% and the infrared light source is operated at a reduced duty cycle, is different than the power consumption of State 1, where the infrared and red light source are operated according to a higher duty cycle as compared to the reduced duty cycle of State 2.  *Id.*

### (b)    Claim 2

As previously discussed (*supra* Ground 2A, 1[d]), the combination of Richardson and Turcott would include implementing the oximeter to reduce the duty cycle of the pulse train for operating the infrared light source in State 2 as compared to the duty cycle of the pulse train for operating the infrared or red light source in State 1.  APPLE-1003, ¶¶49-50, 86-87, 89; APPLE-1004, 9:40-43, 6:2-4, 9:52-63, 7:58-63, 5:55-57, 6:66-7:3, 4:6-10; APPLE-1006, 11:51-59.  Accordingly, the time duration of the active time of the reduced duty cycle of the pulse train for operating the infrared light source and the time duration of the active time of the 0% duty cycle for operating the red light source in State 2 are different from (in this case shorter than) the time duration of the active time of the duty cycle of the pulse train for operating the infrared or red light source in State 1.  *Id.*

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

### (c)    Claim 3

As previously discussed (*supra* Ground 2A, 1[d]), the combination of Richardson and Turcott would include implementing the oximeter to reduce the duty cycle of the pulse train for operating the infrared light source in State 2 as compared to the duty cycle of the pulse train for operating the infrared or red light source in State 1.  APPLE-1003, ¶¶49-50, 86-87, 90; APPLE-1004, 9:40-43, 6:2-4, 9:52-63, 7:58-63, 5:55-57, 6:66-7:3, 4:6-10; APPLE-1006, 11:51-59.  Accordingly, the time duration of the active time of the duty cycle of the pulse train for operating the infrared and red light sources in State 1 is longer than the time duration of the active time of the reduced duty cycle of the pulse train for operating the infrared light source and longer than the time duration of the active time of the 0% duty cycle for operating the red light source in State 2.  *Id.*

### (d)    Claim 4

As previously discussed (*supra* Ground 2A, 1[d]), the combination of Richardson and Turcott would include implementing the oximeter to reduce the duty cycle of the pulse train for operating the infrared light source in State 2 as compared to the duty cycle of the pulse train for operating the infrared or red light source in State 1, to minimize power consumption.  APPLE-1003, ¶¶49-50, 86-87, 91; APPLE-1004, 9:40-43, 6:2-4, 9:52-63, 7:58-63, 5:55-57, 6:66-7:3, 4:6-10; APPLE-1006, 11:51-59.  Turcott discloses that "[t]o conserve energy, the [light]

52

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

source is preferably driven with a low duty cycle pulse train." APPLE-1006, 11:51-59. Accordingly, the power consumption of State 1, where the infrared and red light source are operated according to a higher duty cycle as compared to that of State 2, is greater than the power consumption of State 2, where the red light source is operated at a duty cycle of 0% and the infrared light source is operated at the reduced duty cycle as compared to that of State 1. APPLE-1006, 11:51-59; APPLE-1003, ¶91.

### (e)    Claim 5

As previously discussed (*supra* Ground 2A, 1[d]), the combination of Richardson and Turcott would include implementing the oximeter to reduce the duty cycle of the pulse train for operating the infrared light source in State 2 as compared to the duty cycle of the pulse train for operating the infrared or red light source in State 1, to minimize power consumption. APPLE-1003, ¶¶49-50, 86-87, 92; APPLE-1004, 9:40-43, 6:2-4, 9:52-63, 7:58-63, 5:55-57, 6:66-7:3, 4:6-10; APPLE-1006, 11:51-59. Turcott discloses that "[t]o conserve energy, the [light] source is preferably driven with a low duty cycle pulse train." APPLE-1006, 11:51-59. Accordingly, operating the light sources according to the first control protocol, e.g., State 2 where the red LED operates according to a first duty cycle of 0% and the infrared LED operates according to a reduced duty cycle as compare to that of State 1, consumes a relatively small amount of power, and operating the

53

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

light sources according to the second control protocol, e.g., State 1 where the red and infrared LEDs operate according to the higher duty cycle as compared to that of State 2, consumes a relatively large amount of power as compared to State 2. APPLE-1003, ¶92; APPLE-1006, 11:51-59.

### (f)    Claims 6-8

*Supra*, Ground 1A, Claims 6-8; APPLE-1003, ¶¶56-58.

### (g)    Claim 11

*Supra*, Ground 2A, Claim 1; APPLE-1003, ¶¶41-50, 85-88.

### (h)    Claim 12

*Supra*, Ground 2A, Claim 2; APPLE-1003, ¶¶49-50, 86-87, 89.

### (i)    Claim 13

*Supra*, Ground 2A, Claim 3; APPLE-1003, ¶¶49-50, 86-87, 90.

### (j)    Claim 14

*Supra*, Ground 2A, Claim 4; APPLE-1003, ¶¶49-50, 86-87, 91.

### (k)    Claim 15

*Supra*, Ground 1A, Claim 6; APPLE-1003, ¶56.

### (l)    Claim 16

*Supra*, Ground 1A, Claim 7; APPLE-1003, ¶57.

54

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

### E.  GROUND 2B: Claims 1-9 and 11-16 are obvious based on Richardson and Turcott (second mapping)

For the second mapping of Richardson and Turcott to the claim elements, claims 1-9 and 11-16 are mapped to disclosure in Richardson describing the oximeter transitioning from a first operating frequency (as the first control protocol) for State 1 to a second, different operating frequency (as the second control protocol) for State 1, as described in detail in Ground 1B.  The discussion of reasons to combine Richardson and Turcott from Ground 2A is hereby incorporated into the present ground.

#### 1.  Analysis

##### (a)  Claim 1

**Limitations 1[p]-1[a]**

*Supra*, Ground 1A, 1[p]; Ground 2A, 1[a]; APPLE-1003, ¶¶41-43, 60-62.

**Limitation 1[b]**

*Supra*, Ground 1B, 1[b]; Ground 2A, 1[b]; APPLE-1003, ¶¶63, 46, 85.

**Limitation 1[c]**

*Supra,* Ground 1B, 1[c]; APPLE-1003, ¶¶64-65.

**Limitation 1[d]**

As previously discussed (*supra* Ground 1B, 1[d]), Richardson's light sources are operated according to the first control protocol, e.g., the first selected

55

frequency of 1[a], according to a first duty cycle of at least 25%, and are operated

according to the second control protocol, e.g., the second selected frequency of

1[c], according to a second duty cycle of at least 25%.  APPLE-1003, ¶66; APPLE-

1004, 4:6-10.  Under the proper construction of 1[d] requiring different duty cycles

for the first duty cycle and the second duty cycle, Turcott describes a pulse

oximeter where "[t]he optical power generated by the [light] source is adjusted to

optimize the signal to noise ratio and to minimize power consumption" by

adjusting "the duty cycle of the pulse train," and "[t]o conserve energy, the [light]

source is preferably driven with a low duty cycle pulse train."  APPLE-1006,

11:51-59; APPLE-1003, ¶94.  Turcott discloses that in addition to adjusting the

duty cycle, "the frequency of the pulse train can be shifted such that a quiet region

of the noise spectrum is used."  APPLE-1006, 11:59-61.

A POSITA would have recognized that the predictable modification of

Richardson's oximeter as suggested by Turcott would include implementing the

oximeter to adjust the duty cycle of the pulse train to minimize power

consumption, as suggested by Turcott, in addition to shifting the frequency of the

pulse train to a quiet region of the noise spectrum to optimize the signal-to-noise

ratio, as disclosed in Richardson and Turcott.  APPLE-1003, ¶95; APPLE-1004,

4:6-10; APPLE-1006, 11:59-61.  When the oximeter is operating in State 0 to

select a frequency for operating the light sources during the normal operating state,

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

the oximeter also adjusts the duty cycle of the pulse train to minimize power consumption during the normal operating state. *Id.*

As previously discussed (*supra* Ground 1B, 1[e]), the first selected frequency of 1[a] and the second selected frequency of 1[c] are different frequencies, and the power consumption of the light sources operating at these different frequencies are different. APPLE-1003, ¶¶66-67; APPLE-1004, 2:35-47, 3:7-13, 5:60-67, 7:3-18. Additionally, a POSITA would have found it obvious that the duty cycle for these different frequencies would be adjusted differently to minimize the power consumption, and thus the duty cycle for the first selected frequency of 1[a] would be different from the duty cycle for the second selected frequency of 1[c]. APPLE-1003, ¶96; APPLE-1004, 4:6-10; APPLE-1006, 11:59-61. Accordingly, the combination of Richardson and Turcott teaches that the light sources operated according to the first control protocol is operated according to the first selected frequency of 1[a] and corresponding duty cycle that optimizes the signal-to-noise ratio and minimizes power consumption, and that the light sources operated according to the second control protocol is operated according to the second selected frequency of 1[c] and corresponding different duty cycle that optimizes the signal-to-noise ratio and minimizes power consumption. *Id.*

**Limitation 1[e]**

As previously discussed (*supra* Ground 2B, 1[d]), the combination of

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

Richardson and Turcott teaches that the light sources operated according to the first control protocol is operated according to the first selected frequency of 1[a] and corresponding duty cycle that optimizes the signal-to-noise ratio and minimizes power consumption, and that the light sources operated according to the second control protocol is operated according to the second selected frequency of 1[c] and corresponding different duty cycle that optimizes the signal-to-noise ratio and minimizes power consumption.  APPLE-1003, ¶¶66-67, 94-97; APPLE-1004, 4:6-10; APPLE-1006, 11:59-61.  Because the first control protocol and the second control protocol have different frequencies and different duty cycles, there would be times where the power consumption of the light sources operating according to these different control protocols are different.  *Id.*; *Hewlett-Packard*, 340 F.3d at 1326; *Unwired Planet*, 841 F.3d at 1002.

### (b)    Claim 2

As previously discussed (*supra* Ground 2B, 1[d]), the combination of Richardson and Turcott teaches that the light sources operated according to the first control protocol is operated according to the first selected frequency of 1[a] and corresponding duty cycle that optimizes the signal-to-noise ratio and minimizes power consumption, and that the light sources operated according to the second control protocol is operated according to the second selected frequency of 1[c] and corresponding different duty cycle that optimizes the signal-to-noise ratio

58

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

and minimizes power consumption.  APPLE-1003, ¶66-67, 94-96, 98; APPLE-1004, 4:6-10; APPLE-1006, 11:59-61.  Because the first control protocol and the second control protocol have different frequencies and different duty cycles, there would be times where the time duration of the active time of the first duty cycle is different from the time duration of the active time of the second duty cycle.  *Id.*; *Hewlett-Packard*, 340 F.3d at 1326; *Unwired Planet*, 841 F.3d at 1002.

### (c)   Claim 3

As previously discussed (*supra* Ground 2B, 1[d]), the combination of Richardson and Turcott teaches that the light sources operated according to the first control protocol is operated according to the first selected frequency of 1[a] and corresponding duty cycle that optimizes the signal-to-noise ratio and minimizes power consumption, and that the light sources operated according to the second control protocol is operated according to the second selected frequency of 1[c] and corresponding different duty cycle that optimizes the signal-to-noise ratio and minimizes power consumption.  APPLE-1003, ¶66-67, 94-96, 99; APPLE-1004, 4:6-10; APPLE-1006, 11:59-61.  Because the first control protocol and the second control protocol have different frequencies and different duty cycles, there would be times where the time duration of the active time of the second duty cycle is longer than the time duration of the active time of the first duty cycle.  *Id.*; *Hewlett-Packard*, 340 F.3d at 1326; *Unwired Planet*, 841 F.3d at 1002.

59

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

**(d)   Claim 4**

As previously discussed (*supra* Ground 2B, 1[d]), the combination of

Richardson and Turcott teaches that the light sources operated according to the

first control protocol is operated according to the first selected frequency of 1[a]

and corresponding duty cycle that optimizes the signal-to-noise ratio and

minimizes power consumption, and that the light sources operated according to the

second control protocol is operated according to the second selected frequency of

1[c] and corresponding different duty cycle that optimizes the signal-to-noise ratio

and minimizes power consumption.  APPLE-1003, ¶66-67, 94-96, 100; APPLE-

1004, 4:6-10; APPLE-1006, 11:59-61.  Also as previously discussed (*supra*

Ground 2B, 1[e]), because the first control protocol and the second control

protocol have different frequencies and different duty cycles, there would be times

where the power consumption of the light sources operating according to these

different control protocols are different.  APPLE-1003, ¶100; APPLE-1004, 4:6-

10; APPLE-1006, 11:59-61.  Because there would be times where the first control

protocol and the second control protocol have different frequencies and different

duty cycles resulting in different power consumption, there would be times where

the power consumption during operating the light sources at the second control

protocol is greater than the power consumption during operating the light sources

at the first control protocol.  *Id.*; *Hewlett-Packard*, 340 F.3d at 1326; *Unwired*

60

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

*Planet*, 841 F.3d at 1002.

### (e)    Claim 5

As previously discussed (*supra* Ground 2B, 1[d]), the combination of

Richardson and Turcott teaches that the light sources operated according to the

first control protocol is operated according to the first selected frequency of 1[a]

and corresponding duty cycle that optimizes the signal-to-noise ratio and

minimizes power consumption, and that the light sources operated according to the

second control protocol is operated according to the second selected frequency of

1[c] and corresponding different duty cycle that optimizes the signal-to-noise ratio

and minimizes power consumption.  APPLE-1003, ¶66-67, 94-96, 101; APPLE-

1004, 4:6-10; APPLE-1006, 11:59-61.  Also as previously discussed (*supra*

Ground 2B, 1[e]), because the first control protocol and the second control

protocol have different frequencies and different duty cycles, there would be times

where the power consumption of the light sources operating according to these

different control protocols are different.  APPLE-1003, ¶¶66-67, 94-97, 101;

APPLE-1004, 4:6-10; APPLE-1006, 11:59-61.  Because there would be times

where the first control protocol and the second control protocol have different

frequencies and different duty cycles resulting in different power consumption,

there would be times where the amount of power consumed during operating the

light sources at the first control protocol is relatively small and the amount of

61

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

power consumed during operating the light sources at the second control protocol is relatively large.  *Id.*; *Hewlett-Packard*, 340 F.3d at 1326; *Unwired Planet*, 841 F.3d at 1002.

### (f)  Claims 6-9

*Supra*, Ground 1B, Claims 6-9; APPLE-1003, ¶¶75-79.

### (g)  Claim 11

*Supra*, Ground 2B, Claim 1; APPLE-1003, ¶¶41-43, 46, 60-67, 85, 94-97.

### (h)  Claim 12

*Supra*, Ground 2B, Claim 2; APPLE-1003, ¶¶66-67, 94-96, 98.

### (i)  Claim 13

*Supra*, Ground 2B, Claim 3; APPLE-1003, ¶¶66-67, 94-96, 99.

### (j)  Claim 14

*Supra*, Ground 2B, Claim 4; APPLE-1003, ¶¶66-67, 94-96, 100.

### (k)  Claim 15

*Supra*, Ground 1B, Claim 6; APPLE-1003, ¶75.

### (l)  Claim 16

*Supra*, Ground 1B, Claim 7; APPLE-1003, ¶76.

### F.  GROUND 2C: Claims 9 and 10 are obvious based on Richardson and Turcott (either mapping) and Bindszus

For similar reasons as discussed in Ground 1C, the combination of

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

Richardson, Turcott, and Bindszus renders obvious claims 9 and 10. *Supra*, Ground 1C; APPLE-1003, ¶¶102-107.

## IV.   PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION

Consistent with Congressional intent and goals of *NHK*/*Fintiv*, Apple asks the Board alone to consider challenges raised in this Petition. *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11, 6 (PTAB 2020). As explained below, *Fintiv* favors institution.

### A.   Factor 1: Institution will increase the likelihood of stay

Institution will enable the Board to resolve the issue of validity, and a finding of invalidity will relieve the Central District of California (the "District Court") of the need to continue with the companion litigation. Apple intends to move to stay the District Court case, and the opportunity for such simplification increases the likelihood that the court will grant a stay in view of IPR institution. *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case No. 2:16-cv-642-JRG, 2-3 (E.D. Tex. 2017); *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 13-CV-1058, 2015 WL 1069111 (E.D. Tex. 2015).

### B.   Factor 2: District Court schedule

Trial in the District Court case is scheduled for April 5, 2022. APPLE-1031, 1. Based on the 18-month IPR schedule, a Final Written Decision ("FWD") in an

63

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

IPR arising from the present Petition would issue in early March of 2022, prior to the District Court trial date.

In addition, as in *NHK*, district court trial dates shift, even in normal times. *Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap. 22, 17 (PTAB 2019).  The District Court is one of the country's busiest patent courts.  Scheduling issues cannot be ruled out, as experts have professed that additional COVID-19 outbreaks are likely to arise and California is facing new outbreaks.  APPLE-1034, 1 ("Fauci says second wave of coronavirus is 'inevitable'"); APPLE-1035, 4 ("Los Angeles County is currently" at "275 [cases] per 100,000 [residents]," which is higher than the recommended level (100 per 100,000) for reopening).

## C.    Factor 3: Apple's investment in IPR outweighs forced investment in litigation to date

District court proceedings are still at an early phase.  The parties have yet to file claim construction briefs, no claim construction orders have issued, and the *Markman* hearing is not scheduled until February 8, 2021.  APPLE-1031, 1.  In addition, discovery is not scheduled to close until July 5, 2021.  *Id.*

Apple's substantial investment in these IPR proceedings should counterbalance—if not outweigh—the resources invested in the co-pending litigation given the speed with which Apple is filing IPR petitions on over 150

64

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

claims across seven patents.  It would be unjust to consider resources expended in District Court (equally by both parties), without considering Apple resources expended to prepare nine IPR petitions that would be irretrievably lost without consideration on the merits, in addition to the extensive expenses that may be foregone through institution of Apple's petitions and that will otherwise certainly follow in co-pending litigation for which significant milestones exist.  *See, e.g., Apple v. Seven Networks*, IPR2020-00255, Paper 13 at 12-15 (PTAB July 28, 2020) (declining to exercise 314(a) discretion on petitions filed 9 months after the commencement of co-pending litigation where a large number of patents were included in the litigation, and a large number of claims from each patent were challenged in the petitions).

### D.  Factor 4: The Petition raises unique issues

Consistent with *Fintiv*, Apple asks the Board to consider the unique challenges raised in the Petition.  Apple has voluntarily stipulated to counsel for Patent Owner that, if the Board institutes the present Petition, Apple will not assert that the challenged claims are invalid on the pending Petition's asserted grounds in *Masimo Corporation et al. v. Apple Inc*., Case No. 8:20-cv-00048 (C.D. Cal.). APPLE-1032, 1; *see, e.g., Apple v. Seven* at 15-17 (finding that such a stipulation by a petitioner "mitigates, at least to some degree, the concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially

65

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

conflicting decisions").

In addition, the Petition addresses claims that will not be addressed in District Court. Although Patent Owner has not yet narrowed the asserted claims, the District Court recently ordered the parties to submit "a joint proposal for an initial reduction of infringement contentions" by September 21, 2020. APPLE-1033, 1. Thus, based on this ordered reduction in the asserted claims, the District Court will necessarily address fewer claims than are challenged in this Petition (which challenges all claims of the patent), even assuming the District Court addresses validity at all, which is presently unknowable. *See, e.g., Apple v. Seven* at 18.

In short, grounds in this Petition are unique, and will not be addressed in District Court. *See, e.g., Apple v. Seven* at 15-20 (weighing this factor against exercising 314(a) discretion where a petitioner challenged several unasserted claims and stipulated that it would not pursue the IPR grounds in the co-pending litigation).

  **E.**  **Factor 5: Institution would provide the Board an opportunity to invalidate claims that could later be reasserted against others**

Apple's Petition is potentially helpful to future defendants. For at least this reason, Apple's status as both Petitioner and defendant is, at worst, a neutral factor. Taking the relevant circumstances into account, institution would serve overall

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

efficiency and integrity, enabling the Board to determine invalidity of claims that Patent Owner might otherwise later assert against others.

### F.     Factor 6: Other circumstances support institution

As *Fintiv* noted, "the factors ... are part of a balanced assessment of all the relevant circumstances in the case," and, "if the merits of a ground raised in the petition seem particularly strong … the institution of a trial may serve the interest of overall system efficiency and integrity …." *Fintiv*, 14-15.  As explained in the Petition (and Dr. Anthony's testimony), institution would result in invalidation of the Challenged Claims.

## V.     PAYMENT OF FEES

Apple authorizes the Patent and Trademark Office to charge Deposit Account No. 06-1050 for the fee set in 37 C.F.R. § 42.15(a) for this Petition and further authorizes payment for any additional fees to be charged to this Deposit Account.

## VI.     CONCLUSION

Apple respectfully requests institution of an IPR for the Challenged Claims.

## VII.     MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1)

### A.     Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1)

Petitioner, Apple Inc., is the real party-in-interest.

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

## B.     Related Matters Under 37 C.F.R. § 42.8(b)(2)

Apple is not aware of any disclaimers, reexamination certificates, or petitions for *Inter Partes* Revew for the '776 Patent.  The '776 patent is the subject of the civil action *Masimo Corporation et al. v. Apple Inc*., Case No. 8:20-cv-00048 (C.D. Cal.).

The '776 Patent is in the same family as U.S. Patent No. 8.457,703 ("the '703 Patent").  Apple is petitioning for *Inter Partes* Review of the '703 Patent.

U.S. Patent Application No. 15/820,082 filed on November 21, 2017 and U.S. Patent Application No. 16/174,130 filed on October 29, 2018 claim the benefit of the '703 Patent and are currently pending before the Patent Office.

## C.     Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3)

Apple provides the following designation of counsel.

| Lead Counsel | Backup counsel |
|---|---|
| W. Karl Renner, Reg. No. 41,265<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email: IPR50095-0003IP1@fr.com | Dan Smith, Reg. No. 71,278<br>Kim Leung, Reg. No. 64,399<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>PTABInbound@fr.com |

## D.     Service Information

Please address all correspondence and service to the address listed above.

68

Exhibit D
Page 216

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

Petitioner consents to electronic service by email at IPR50095-0003IP1@fr.com

(referencing No. 50095-0003IP1 and cc'ing PTABInbound@fr.com, axf-ptab@fr.com, dsmith@fr.com and leung@fr.com.

Respectfully submitted,

Dated: August 31, 2020          /W. Karl Renner/
                                W. Karl Renner, Reg. No. 41,265
                                Dan Smith, Reg. No. 71,278
                                Kim Leung, Reg. No. 64,399
                                Fish & Richardson P.C.
                                3200 RBC Plaza, 60 South Sixth Street
                                Minneapolis, MN 55402
                                T: 202-783-5070
                                F: 877-769-7945

(Control No. IPR2020-01524)     *Attorneys for Petitioner*

69

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

## CERTIFICATION UNDER 37 CFR § 42.24

Under the provisions of 37 CFR § 42.24(d), the undersigned hereby certifies that the word count for the foregoing Petition for *Inter partes* Review totals 13,897 words, which is less than the 14,000 allowed under 37 CFR § 42.24.


Dated: August 31, 2020                    /W. Karl Renner/
                                          W. Karl Renner, Reg. No. 41,265
                                          Dan Smith, Reg. No. 71,278
                                          Kim Leung, Reg. No. 64,399
                                          Fish & Richardson P.C.
                                          3200 RBC Plaza, 60 South Sixth Street
                                          Minneapolis, MN 55402
                                          T: 202-783-5070
                                          F: 877-769-7945

                                          Attorneys for Petitioner

Attorney Docket No. 50095-0003IP1
IPR of U.S. Patent No. 10,433,776

# CERTIFICATE OF SERVICE

Pursuant to 37 CFR §§ 42.6(e)(4)(i) *et seq.* and 42.105(b), the undersigned

certifies that on August 31, 2020, a complete and entire copy of this Petition for

*Inter partes* Review and all supporting exhibits were provided via Federal Express,

to the Patent Owner by serving the correspondence address of record as follows:


KNOBBE, MARTENS, OLSON & BEAR, LLP
MASIMO CORPORATION (MASIMO)
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE CA 92614


/Diana Bradley/
Diana Bradley
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
(858) 678-5667

# Exhibit E

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent of:     Massi E. Kiani et al.
U.S. Patent No.:     6,771,994          Attorney Docket No.:  50095-0005IP1
Issue Date:          August 3, 2004
Appl. Serial No.:    10/374,303
Filing Date:         February 24, 2003
Title:               PULSE OXIMETER PROBE-OFF DETECTION SYSTEM

**Mail Stop Patent Board**
Patent Trial and Appeal Board
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

## PETITION FOR *INTER PARTES* REVIEW OF UNITED STATES PATENT NO. 6,771,994 PURSUANT TO 35 U.S.C. §§ 311–319, 37 C.F.R. § 42

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

# TABLE OF CONTENTS

I.  REQUIREMENTS FOR IPR ................................................................3
    **A.** Grounds for Standing..............................................................3
    **B.** Challenge and Relief Requested ..............................................3

II. THE '994 PATENT .........................................................................4
    **A.** Brief Description....................................................................4
    **B.** The Prosecution History .........................................................7
    **C.** Level of Ordinary Skill in the Art............................................7
    **D.** Claim Construction ...............................................................8

III. THE CHALLENGED CLAIM IS UNPATENTABLE ...............................10
    **A.** [GROUND 1] – Claim 15 is obvious over Diab, Benjamin, and Melby10
    **B.** [GROUND 2] – Claim 15 is obvious over Webster and Melby............29
    **C.** [GROUND 3] – Claim 15 is obvious over Fine ...................................45
    **D.** [GROUND 4] – Claim 15 is obvious over Fine, Benjamin, and Melby 59

IV. MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1)........................68
    **A.** Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1)..............................68
    **B.** Related Matters Under 37 C.F.R. § 42.8(b)(2) .........................................68
    **C.** Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3)..................68
    **D.** Service Information ...............................................................69

V.  PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION..........69
    A.  Factor 1: Institution will increase the likelihood of stay .......................69
    B.  Factor 2: District Court schedule ............................................................70
    C.  Factor 3: Apple's investment in IPR outweighs forced investment in
        litigation to date....................................................................71
    D.  Factor 4: The Petition raises unique issues.............................................72
    E.  Factor 5: Institution would provide the Board an opportunity to
        invalidate claims that could later be reasserted against others............73
    F.  Factor 6: Other circumstances support institution..................................73

VI. PAYMENT OF FEES – 37 C.F.R. § 42.103 .........................................73

VII. CONCLUSION...............................................................................74

i

## EXHIBITS

| | |
|---|---|
| APPLE-1001 | U.S. Patent No. 6,771,994 |
| APPLE-1002 | File History for U.S. Patent No. 6,771,994 |
| APPLE-1003 | Declaration of Dr. Anthony |
| APPLE-1004 | Reserved |
| APPLE-1005 | Masimo Corporation, et al. v. Apple Inc., Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.) |
| APPLE-1006 | U.S. Patent No. 5,638,818 ("Diab") |
| APPLE-1007 | U.S. Patent No. 4,015,595 ("Benjamin") |
| APPLE-1008 | U.S. Patent No. 5,254,388 ("Melby") |
| APPLE-1009 | WO Pub. No. 1996/41566 ("Fine") |
| APPLE-1010 | Excerpts from Design of Pulse Oximeters, J.G. Webster; Institution of Physics Publishing, 1997 ("Webster") |
| APPLE-1011 | Tremper, Pulse Oximetry, Anesthesiology, The Journal of the American Society of Anesthesiologists, Inc., Vol. 70, No. 1 (January 1989) ("APPLE-1011") |
| APPLE-1012 | Mendelson, Skin Reflectance Pulse Oximetry: In Vivo Measurements from the Forearm and Calf, Journal of Clinical Monitoring, Vol. 7, No. 1 (January 1991) ("APPLE-1012") |
| APPLE-1013 | Excerpts from Bronzino, The Biomedical Engineering Handbook, CRC Press, Inc. (1995) ("APPLE-1013") |
| APPLE-1014 | Konig, Reflectance Pulse Oximetry – Principles and Obstetric Application in the Zurich System, Journal of Clinical Monitoring, Vol. 14, No. 6 (August 1998) ("APPLE-1014") |

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

| APPLE-1015 | Declaration of Jacob Munford |
|---|---|
| APPLE-1016 to 1030 | Reserved |
| APPLE-1031 | Scheduling Order, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 37 (April 17, 2020) |
| APPLE-1032 | Stipulation by Apple |
| APPLE-1033 | Telephonic Status Conference, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 78 (July 13, 2020) |
| APPLE-1034 | Joseph Guzman, "Fauci says second wave of coronavirus is 'inevitable'", TheHill.com (Apr. 29, 2020), available at: https://thehill.com/changing-america/resilience/natural-disasters/495211-fauci-says-second-wave-of-coronavirus-is |
| APPLE-1035 | "Tracking the coronavirus in Los Angeles County," LATimes.com (Aug. 20, 2020), available at https://www.latimes.com/projects/california-coronavirus-cases-tracking-outbreak/los-angeles-county/ |

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

Apple Inc. ("Petitioner") petitions for *Inter Partes* Review ("IPR") of claim 15 ("Challenged Claim") of U.S. Patent No. 6,771,994 ("'994 Patent") under 35 U.S.C. §§ 311–319 and 37 C.F.R. § 42.  As explained in this Petition, there exists a reasonable likelihood that Apple will prevail with respect to the Challenged Claim.

The earliest filed application from which the '994 Patent claims priority is U.S. Provisional Application No. 60/140,000, filed on June 18, 1999.  Thus June 18, 1999 (herein after "Critical Date" or "Earliest Effective Filing Date") is the earliest possible priority date for the '994 Patent.  The '994 Patent discloses a purported improvement to a "pulse oximeter probe to detect when the probe becomes partially or completely dislodged from the patient, but continues to detect" a signal within the normal operating range of the system.  APPLE-1001, Abstract.  According to the '994 Patent, the improved pulse oximeter "provides a number of louvers placed in front of the probe's photodetector" (*id.*, 2:9-12) to "prevent light from an oblique angle from reaching the photodetector" and creating a "false signal" that could be interpreted as an actual physiological signal of a patient.  *Id.*, 2:16-19.

But the claimed device is not new.  APPLE-1003, [0016]-[0029].  To the contrary, the '994 Patent was granted without full consideration of the wide body of applicable art.  As the '994 Patent acknowledges in its "Description of the Related Art," pulse oximetry was a "widely accepted noninvasive procedure for

1

measuring the oxygen saturation level of arterial blood" as of the Critical Date. APPLE-1001, 1:29-31.  A pulse oximetry system at the time "generally consist[ed] of a probe attached to a patient" that included "both red and infrared (IR) light-emitting diode (LED) emitters and a photodiode detector."  *Id*., 1:31-36.  Such a system "determines oxygen saturation by analyzing the differential absorption by arterial blood of the two wavelengths emitted by the probe."  *Id*., 1:44-49.

Similar to the devices described in the '994 Patent's description of known systems and the references cited in this petition, the '994 Patent describes and claims a sensor that generates light of "at least first and second wavelengths" and includes "at least one light emission device," a "light sensitive detector."  *Id*., 8:21-36 (claim 15).  The '994 Patent also claims "a plurality of louvers" that accept light "originating from a general direction" of the light emission device.  *Id*.  The '994 Patent itself describes these louvers, in one "preferred embodiment," as created from commercially available products such as "3M Light Control Film."  APPLE-1001, 6:39-41.

Yet, as Dr. Anthony explains in his accompanying declaration (APPLE-1003) with respect to the applied prior art, optical physiological sensors such as pulse oximeters and other photoplethysmography sensors commonly included these features before the Critical Date, and a sensor including each feature of claim 15 of the '994 Patent would have been obvious to a person of ordinary skill in the

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

art relating to the subject matter of the '994 Patent as of the Critical Date ("POSITA.")  APPLE-1003, [0001]-[0168].

For the reasons explained below, claim 15 of the '994 Patent is eligible for IPR.  Petitioner respectfully submits that IPR institution is warranted, and that claim 15 should be cancelled as unpatentable.

# I.   REQUIREMENTS FOR IPR

## A.   Grounds for Standing

Apple certifies that the '994 Patent is available for IPR.  The present Petition is being filed within one year of service of a complaint against Apple in *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal., served January 13, 2020).  Apple is not barred or estopped from requesting this review on the below-identified grounds.

## B.   Challenge and Relief Requested

Claim 15 is invalid based on the grounds noted in the table below, as further explained in this Petition.  Accompanying explanations and support are provided in the Declaration of Dr. Brian Anthony (APPLE-1003).  APPLE-1003, [0001]-[0168].

| Ground | Claims | Basis |
|--------|--------|-------|
| 1 | 15 | Obvious over Diab in view of Benjamin and Melby |
| 2 | 15 | Obvious over Webster in view of Melby |
| 3 | 15 | Obvious over Fine |
| 4 | 15 | Obvious over Fine in view of Benjamin and Melby |

3

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

Each prior art reference cited in the present Petition pre-dates the Critical date.  Petitioner does not take a position as to whether the '994 Patent is entitled to priority as of the Critical Date, but has applied references that pre-date the Critical Date and qualify as prior art as shown in the table below.

| Reference | Dates | Prior art basis |
|---|---|---|
| Diab (APPLE-1006) | 06/07/1997 (issued) | 102(b) |
| Benjamin (APPLE-1007) | 04/05/1977 (issued) | 102(b) |
| Melby (APPLE-1008) | 10/19/1993 (issued) | 102(b) |
| Webster (APPLE-1010) | 1997 (published) | 102(b) |
| Fine (APPLE-1009) | 12/27/1996 (published) | 102(b) |

## II.    THE '994 PATENT

### A.    Brief Description

The '994 Patent relates to a "pulse oximetry monitor (pulse oximeter)." APPLE-1001, 1:44-46.  Specifically, the '994 Patent is directed to a pulse oximetry sensor that includes a first LED, a second LED, and a photodetector, as shown in FIG. 1 (reproduced below).  APPLE-1001, 3:21-55, FIG. 1.

4

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994



APPLE-1001, FIG. 1 (annotated)

The two LEDs are "preferably configured to produce different wavelengths of light." *Id.* Pulse oximetry "relies on the differential light absorption of oxygenated hemoglobin, HbO$_2$, and deoxygenated hemoglobin, Hb" that is measured using two different wavelengths of light. *Id.*, 3:3-20. For example, blood oxygen saturation measurements can be "based upon a ratio of the time-varying or AC portion" of the detected signals. *Id.*

5

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

The '994 Patent describes and depicts its photodetector as being placed opposite the light emitters to detect transmitted light as it emerges from the user's body tissue.  *See id*., 1:41-43 (describing the configuration of known pulse oximetry probes as positioning the detector "opposite the LED"), 4:19-25 ("the emitters located within the probe are spaced opposite the detector assembly 235…such that the light from the emitters passes…through the finger 250 and is incident upon the detector assembly 235"), FIGS. 2A-B, 4, 5A-B.

The '994 Patent also includes a number of louvers placed in front of the sensor's photodetector.  *Id*., 6:24-41.  The louvers "block light rays travelling along an oblique path 410 (i.e., light that does not originate from in front of the detector assembly 235….)"  *Id*.  By blocking light travelling along an oblique path, or at an angle, from reaching the detector, the louvers prevent inaccurate reads that can occur when rays of light travelling along the oblique path "generate an AC signal that could be interpreted by the pulse oximeter 140 as a physiological signal" (*id*.) even though the probe is not properly attached, which can lead to missed desaturation events.  *Id*., 4:35-45.  The louvers are, "[i]n a preferred embodiment…created from commercially available '3M Light Control Film.'"  *Id*., 6:39-41; *see also* APPLE-1003, [0030]-[0035].

6

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994



*FIG.5B*

APPLE-1001, FIG. 5B (annotated)

## B.     The Prosecution History

The '994 Patent has not been the subject of any previous IPRs.  No Office

Actions were issued during the prosecution of the application from which the '994

Patent issued.  *See generally* APPLE-1002.

## C.     Level of Ordinary Skill in the Art

A POSITA would have been a person with a working knowledge of

physiological monitoring technologies.  The POSITA would have had a Bachelor

of Science degree in an academic discipline emphasizing the design of electrical,

computer, or software technologies, in combination with training or at least one to

two years of related work experience with capture and processing of data or

7

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

information, including but not limited to physiological monitoring technologies.

APPLE-1003, [0001]-[0015], [0036]-[0037].  Additional education in a relevant

field or industry experience may compensate for one of the other aspects of the

POSITA characteristics stated above.  *Id.*

## D.    Claim Construction

Petitioner submits that all claim terms should be construed according to the

*Phillips* standard.  *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); 37

C.F.R. § 42.100.  Here, based on the evidence below and the prior art's description

of the claimed elements being similar to that of the '994 Patent specification, no

formal claim constructions, except those discussed below, are necessary in this

proceeding because "claim terms need only be construed to the extent necessary to

resolve the controversy."  *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355,

1361 (Fed. Cir. 2011).  Petitioner reserves the right to respond to any constructions

that Patent Owner offers or the Board adopts.  Petitioner is not waiving any

arguments concerning indefiniteness or claim scope.

**1.    "a plurality of louvers positioned over the light sensitive
detector to accept light from the at least one light emission
device originating from a general direction of the at least
one light emission device and then transmitting through
body tissue carrying pulsing blood, wherein the louvers
accept the light when the sensor is properly applied to tissue
of a patient."**

Petitioner construes this claim limitation as requiring the light sensitive

8

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

detector to be positioned opposite the at least one light emission device such that the body tissue carrying pulsing blood positioned between the light sensitive detector and the at least one light emission device.  This construction is consistent with the specification and figures of the '994 Patent, which only depict and describe the placement of the body tissue carrying pulsing blood between the at least one light emission device and the light sensitive detector.  APPLE-1001, 1:41-43 (the "photodiode is positioned opposite the LED so as to detect the LED transmitted light as it emerges from the [body] tissue.")



FIG.5B

APPLE-1001, FIG. 5B (annotated)

Indeed, the plain language of the claim requires such a configuration, as the light that is accepted by the louvers must originate "from a general direction of the

9

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

at least one light emission device," and then transmit through the body tissue before "pass[ing] directly through the louvers 502 along a direct path 510." *Id.*, 6:30-34; APPLE-1003, [0038]-[0040].

Petitioner does not concede that each challenged feature satisfies all statutory requirements, such as those recited in 35 U.S.C. § 112.

## III.   THE CHALLENGED CLAIM IS UNPATENTABLE

### A.   [GROUND 1] – Claim 15 is obvious over Diab, Benjamin, and Melby

#### 1.   Overview of Diab

Diab describes an "optical probe for measurements" (APPLE-1006, Abstract) for use in "non-invasive energy absorption (or reflection)" detection methods such as pulse oximetry. *Id.*, 3:12-14. The device includes a "light source, such as an LED" (*id.*, 3:30-31) and a "detector, such as a photodetector." *Id.*, 3:19-21. Diab's light source includes, for example, two "LEDs 430a and 430b," one which emits "red wavelengths" and one which emits "infrared wavelengths." *Id.*, 18:8-22.

10

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994



APPLE-1006, FIG. 24 (excerpt, annotated)

Non-invasive methods, as described by Diab, are "often desirable" in order to "monitor a patient without unnecessary drawing of blood or tissue."  APPLE-1006, 5:49-59.  For example, "in the medical field, instead of extracting material from a patient's body for testing," non-invasive techniques often use "light or sound energy…incident on the patient's body" that is transmitted or reflected.  *Id.*, 1:13-22; APPLE-1003, [0041]-[0042].

### 2.    Overview of Benjamin

Benjamin describes an improved "photoplethysmograph," or device that uses a "light source and a specifically selected photo-sensitive cell that responds to

11

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

light absorbed by the arterial blood in the peripheral vascular bed over which the sensor is placed." APPLE-1007, 1:5-15. The photo-sensitive cell responds to the light absorbed by the blood such that the "amount of pulsating light it registers is proportional to the amount of pulsating arterial blood" within its field of detection and thus provides a measure of "pulsatile blood flow." *Id.* In order to "improve the accuracy of the photoplethysmographic pickup of the blood flow pulse," Benjamin employs a "light control film" to collimate light passing through and "thereby make the photosensitive cell…more nearly dependent only upon the light beam directly reflected from the field being measured." *Id.*, 2:53-57. Such light films were "known in the art and…commercially available." *Id.*, 2:50-52; APPLE-1003, [0043].



APPLE-1007, FIG. 1 (annotated)

12

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

### 3.    Overview of Melby

Melby, a patent from nearly 30 years ago and almost 6 years prior to the Critical Date, is assigned to the Minnesota Mining and Manufacturing Company (3M) and discloses a light control film, or a "louvered plastic film."  APPLE-1008, Abstract.  Melby describes a film that includes "louver elements" that can be canted to direct light that passes through.  *Id*., 1:9-22, 3:46-62. The '994 patent itself notes that its "louvers" can be "created from commercially available '3M Light Control Film,'" such as that described in Melby.  *See* APPLE-1001, 6:39-41; APPLE-1003, [0044].

### 4.    Claim 15

**(a)    [15pre]: "A sensor which generates at least first and second intensity signals from a light-sensitive detector which detects light of at least first and second wavelengths transmitted through body tissue carrying pulsing blood; the sensor comprising:"**

To the extent the preamble is limiting, in the combination, Diab teaches a sensor having a detector that detects "attenuated light energy signal [that] emerges from" a section of a subject's body, "such as a finger, an earlobe, a toe, an organ, or a portion of tissue."  APPLE-1006, 3:12-43.  Diab's sensor includes "a ***probe*** for use in both invasive and ***non-invasive energy absorption*** (or reflection)

13

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

*measurements*.”  APPLE-1006, 3:11-47.[1]  The probe includes a “***detector, such as a photodetector***” and a “***light source***, such as an LED” that is affixed “opposite the photodetector.”  *Id*.  Diab’s LED “emits light energy which propagates through and is absorbed by the material along the optical path length” and “an attenuated light energy signal emerges from the material.”  *Id*.  Diab’s “***photodetector produces an electrical signal indicative of the intensity of the signal transmitted by the material***,” such as a subject’s “finger 428.”  *Id*.  The subject’s finger, for example, contains body tissue carrying pulsing blood.  APPLE-1003, [0045]-[0048].

As shown below, Diab’s device includes two “LEDs 430a and 430b” that “alternately emit[] energy which is absorbed by the finger 428 and received by the photodetector 426” such that the photodetector “produces an electrical signal which corresponds to the intensity of the light energy striking the photodetector 426 surface.”  APPLE-1006, 18:43-47.

---

[1] All emphasis added unless indicated otherwise.

14

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994



APPLE-1006, FIG. 24 (annotated)

Diab's probe is "coupled to an oximeter…known in the art which utilizes

light attenuation measurements," such as a "*pulse oximeter*" that measures signals

from "*two measured signals at different wavelengths*, one of which is typically

red and the other of which is typically infrared, [that] are alternately passed

through the finger 428."  APPLE-1006, 17:62-18:8.  These signals are "processed

to determine the amount of oxygen available to the body" by "finding the

saturation of oxygenated hemoglobin in blood comprising both oxygenated and

deoxygenated hemoglobin."  *Id*.  The two signals are generated by "[t]wo LEDs

430a and 430b, one LED 430a emitting red wavelengths and another LED 430b

emitting infrared wavelengths" that are placed adjacent to the subject's finger, for

example, on top of the finger, and the photodetector is placed under the finger.  *Id*.

Accordingly, the combination of Diab, Benjamin, and Melby renders

15

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

obvious a "sensor which generates at least first and second intensity signals from a light-sensitive detector which detects light of at least first and second wavelengths transmitted through body tissue carrying pulsing blood."

### (b)    [15a]: "at least one light emission device;"

As previously discussed (*see* [15pre]), in the combination, Diab teaches a sensor that measures first and second intensity signals using a photodetector to detect light from at least two LEDs emitting at two different wavelengths. APPLE-1006, 3:11-47, 17:62-18:22, FIG. 24; APPLE-1003, [0045]-[0048].

As shown in FIG. 24 (reproduced below), Diab teaches two light emitting diodes (LEDs) that emit at two different wavelengths, and thus teaches at least one light emission device.



APPLE-1006, FIG. 24 (annotated)

16

Diab's LEDs 430a and 430b (light emission devices) emit "red wavelengths" and "infrared wavelengths" and are "placed adjacent the finger 428." APPLE-1006, 18:9-11; APPLE-1003, [0049]-[0052].

Accordingly, the combination of the combination of Diab, Benjamin, and Melby renders obvious "at least one light emission device."

### (c)   [15b]: "a light sensitive detector; and"

As explained above with respect to [15pre]-[15a], in the combination, Diab describes a sensor that measures first and second intensity signals using a photodetector to detect light from at least two LEDs emitting at two different wavelengths.  APPLE-1006, 3:11-47, 17:62-18:22, FIG. 24; APPLE-1003, [0045]-[0052].

As shown in FIG. 24 (reproduced below), Diab's photodetector "is mounted within the chamber, typically in the bottom of the chamber" (*id.*, 3:19-21) positioned across from the two LEDs.  *Id.*, 3:30-31.  The detector thus measures "[a]n attenuated light energy signal [that] emerges from the material, into the chamber" and "produces an electrical signal indicative of the intensity of the signal transmitted by the material."  *Id.*, 3:34-35.  This electrical signal is then input "to a processor which analyzes the signal to determine information about the medium through which light energy has been transmitted."  *Id.*

17

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994



Photodetector 426

APPLE-1006, FIG. 24 (annotated)

Diab's photodetector produces signals that can be "***processed to determine the amount of oxygen available to the body***" as part of a pulse oximeter.  *Id.*, 18:4-6.  For example, the photodetector can be connected to "***a single channel of common processing circuitry*** including an amplifier 530 which is in turn connected to a band pass filter 540" (*id.*, 18:14-17) that includes "a plurality of output channels."  *Id.*, 18:17-19.  One of the output channels "is for signals corresponding to visible wavelengths and another output channel is for signals corresponding to infrared wavelengths."  *Id.*, 18:19-22; APPLE-1003, [0053]-[0056].

Accordingly the combination of the combination of Diab, Benjamin, and Melby renders obvious "a light sensitive detector."

18

> **(d)    [15c]: "a plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through body tissue carrying pulsing blood, wherein the louvers accept the light when the sensor is properly applied to tissue of a patient."**

As previously discussed ([15pre]-[15b]), in the combination, Diab teaches a sensor that measures first and second intensity signals using a photodetector to detect light from at least two LEDs emitting at two different wavelengths. APPLE-1006, 3:11-47, 17:62-18:22, FIG. 24; APPLE-1003, [0045]-[0056].

Diab further describes the use of a scattering medium positioned over the photodetector to provide an "improved optical signal-to-noise ratio" by minimizing the effects of local artifacts resulting from scattering as a result of motion.  *Id.*, 3:63-4:5.  For example, Diab's system can include a scattering medium "between the material [being tested] and the photodetector," "result[ing] in an improved optical signal-to-noise ratio."  *Id.*, 4:6-12.

Benjamin also recognizes the problem of variations in the amount of scattered light reaching the detector as well.  APPLE-1007, 1:35-49; APPLE-1003, [0059].  Benjamin describes a device that "senses blood flow by means of a probe placed on the surface of the skin of any part of the body."  APPLE-1007, 1:6-8.  Benjamin's probe "contains a tiny ***light source*** and a specifically selected ***photo-sensitive cell*** that responds to light absorbed by the arterial blood in the peripheral

19

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

vascular bed over which the sensor is placed." *Id.* 1:8-12, *see also id.*, 2:26-61.

The motivating factor behind Benjamin's invention is that "***variations in the amount of scattered light reaching the photocell cause variations in the operating point of the photocell***," which "adversely affects the accuracy of the measurement." *Id.*, 1:35-40; APPLE-1003, [0057]-[0059].

As a solution, Benjamin identifies, as one of its main improvements, the addition of light control film to stabilize the amount of scattered light that reaches the detector:

> In accordance with one feature of the invention means are provided for holding the operating point of the photocell constant by overcoming the adverse [effects] of the scattered light reaching the photocell. To this end, the amount of scattered light reaching the photocell can be made closer to constant by ***placing in front of the photocell and light source a small piece of light control film. This film has the effect of collimating the light thereby to make the sensor more nearly dependent only upon the light beam directly reflected from the pulsating blood field***.

*Id.*, 1:56-66.

For example, as shown in FIG. 1 of Benjamin, reproduced below, "***a light control film 22 is mounted*** within the casing 12 to extend across the window 16" such that "the light emitted from the light source 18 ***passes through the light***

20

*control film 22* to the field to be measured and light is reflected from this field back through the light control film 22 to the photo-sensitive cell 20." *Id.*, 2:42-61. Benjamin's film is described as being made of "cellulose acetate butyrate" and as being "known in the art." *Id.*, 2:50-57. In further detail, the film "*has the effect of collimating the light passing therethrough [sic] to thereby make the photo-sensitive cell 20 more nearly dependent only upon the light beam directly reflected from the field being measured*" and "is commercially available." *Id.*



APPLE-1007, FIG. 1 (annotated)

A POSITA would have been motivated by the disclosure of Benjamin to modify Diab's sensor to include a light control film in place of Diab's scattering medium. APPLE-1003, [0062]. Indeed, a POSITA would have been motivated and would have found it obvious to combine Diab and Benjamin to provide an

21

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

optical physiological sensor that reduces variations in the amount of light detected by the photodetectors of the sensor in order to "collimat[e] the light emitted from the light source and reflected back to the photo-sensitive cell," which would lead to a more consistent and accurate measurement of blood oxygen saturation. *Id.*, [0057]-[0062]; *see, e.g.,* APPLE-1007, Abstract.

A POSITA would have understood that the beneficial effects of a particular component as used within Benjamin's system would have applied in a predictable manner to Diab's system. APPLE-1003, [0064]. For example, both Diab and Benjamin describe photoplethysmograph (PPG) devices and relate to reducing the effects of noise in detected signals resulting from describes a pulse oximeter, which measures oxygen saturation level (SpO$_2$) and is also a PPG. *See* APPLE-1006, 17:62-18:22. Diab's device can measure the change in the volume of arterial blood with each pulse beat, and while it is more complex than Benjamin's device, it operates according to similar principles. APPLE-1003, [0064]. Thus, a POSITA would have understood that Benjamin's teachings as applied to its own system and resulting advantages would have been clearly applicable to Diab as well. *Id.*

Based on the combined disclosure of Diab and Benjamin, a POSITA would have understood that a pulse oximeter having two emitters emitting light of two different wavelengths and a detector can be improved by placing a light control film over the detector to reduce the amount of light that reaches the detector but

22

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

has not passed through the tissue.  APPLE-1003, [0065].  Indeed, a POSITA would have understood that a light control film placed over the detector could thus accept light from the light emission device from a particular direction based on the angle of the louvers within the light control film.  *Id.*

As described above, the light from pulse oximeter emitters is directed at, for example, "a section of a patient's body" that carries pulsing blood, such as "a finger," (APPLE-1006, 3:11-19) and "propagates through and is absorbed by the material."  APPLE-1006, 3:30-34.  Then "attenuated light energy emerges from the" portion of the patient's body.  *Id.*   Finally, the photodetector detects the attenuated light energy and "produces an electrical signal indicative of the intensity of the signal transmitted by" the patient's body.  *Id.*, 3:34-43.  Thus, a POSITA would have understood that, in the combination, Diab teaches light that originated from a general direction of the light emission devices, transmitted through body tissue carrying pulsing blood.  APPLE-1003, [0066].  In the combination, a POSITA would have understood the light control film to restrict the amount of light that reaches the detector from a particular direction, and therefore that the louvers accept the light only when the sensor is properly applied to the patient's body.  *Id.*  This would confer the benefit of reducing false readings based on misalignment of the sensor, thereby improving the accuracy and utility of the combined device.  *Id.*

Exhibit E
Page 247

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

Further, a POSITA would have found it obvious to modify Diab with Benjamin's disclosure of placing a light control film over the photodetector in place of a scattering medium because doing so entails the use of known solutions to improve similar systems and methods in the same way.  APPLE-1003, [0067].  Indeed, "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007).  A POSITA would have recognized that applying Benjamin's teachings to Diab's pulse oximeter would have led to predictable results without significantly altering or hindering the functions performed by the pulse wave examination apparatus.  APPLE-1003, [0067].  In fact, a POSITA would have been motivated to use the well-known component of a light control film to cause Diab's pulse oximeter to include such features to achieve the predictable benefits offered by Benjamin's description of the same. *Id*.; *see*, *e.g.*, APPLE-1006, 3:63-4:13; APPLE-1007, 1:5-49, 2:26-61.  Indeed, a POSITA would have had a reasonable expectation of success in making this modification, and would have reasonably expected to reap benefits of collimating light on its way to the detector "to thereby make the photo-sensitive cell…more nearly dependent only upon the light beam directly reflected from the field being measured."  APPLE-1007, 2:42-61; APPLE-1003, [0067].  Diab and Benjamin

24

describe the same types of physiological sensor devices and, in combination, Benjamin's feature is implemented in Diab's pulse oximeter just as it is in Benjamin's PPG.  APPLE-1003, [0067].  Accordingly, implementing Benjamin's teachings in Diab's pulse oximeter would have been routine and straightforward to a POSITA, and it would have been clear that such a combination would predictably work and provide the expected functionality.  *Id.*, [0067]-[0068].

Also in the combination, Melby describes a light control film that can be used with the combined Diab/Benjamin system.  APPLE-1003, [0069].  In further detail, Melby describes a "***louvered plastic film [that] has louvers*** including central regions with a relatively high coefficient[] of extinction and outer regions with relatively low coefficients of extinction."  APPLE-1008, Abstract.  Melby is a 3M patent that describes a commercially available louvered light film made of "cellulose acetate butyrate (CAB)".  *See*, *e.g.*, APPLE-1008, 2:19-23, APPLE-1007, 2:42-57 (describing light control film made of "cellulose acetate butyrate film" and stating that "[l]ight control film of this type is known in the art and is commercially available").

As shown in FIGS. 1 and 2 (reproduced below), Melby explains the mechanism by which the louvers control light.  APPLE-1003, [0069].  Melby teaches that "***a louvered plastic film has a plurality of clear regions separated by louvers***," where each louver has "a central region with a relatively high coefficient

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

of extinction and outer regions, adjacent said clear regions, having relatively low

coefficients of extinction."  APPLE-1008, 3:1-8.



APPLE-1008, FIGS. 1 and 2

In further detail, Melby describes its louvered film as including "cover

sheets 11 provided for clarification and includes alternating clear layers, such as

layer 12 and *louvers, such as louver 14*," that "includes outer layers 16 and 18 and

inner layer 20."  *Id.*, 3:46-53.  The operation of the louvers, described with

26

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

reference to FIG. 2 (reproduced above), is explained as follows:

> *A light ray 22 enters transparent layer 12. It then strikes layer 16 at surface 24*. Because layer 16 has only a low concentration of carbon black, there is not a large difference in index of refraction between it and layer 12. Therefore very little of the light is reflected by layer 24. *Most of the light will enter layer 16 and be refracted*. As the light traverses layer 16, some will be absorbed. Some, however, will strike layer 20 on surface 26. Some of light beam 22 will enter layer 20 where, due to the relatively high concentration of carbon black, it will be absorbed. Some of light beam 22 will be reflected at surface 26 due to the large difference in index of refraction between layer 16 and layer 20.

*Id.*, 3:65-4:10.

Melby explicitly states that its advantage lies with "the effective optical density of a medium is directly proportional to the distance that the light must travel through that medium and the fact that reflection at an interface between two materials with different indices of refraction increases with increasing angle of incidence." APPLE-1008, 4:11-17; APPLE-1003, [0069]-[0072].

Thus, a POSITA viewing the disclosure of Diab/Benjamin would have recognized that Melby's film could be used in the Diab/Benjamin device to control light such that only light originating from the direction of the light emitters reaches

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

the detector.  APPLE-1003, [0073].  A POSITA would have found it obvious to look to Melby for details regarding the implementation of the light control film. *Id*.  Indeed, Benjamin teaches that light control film was "known in the art and…commercially available."  APPLE-1007, 2:50-53; APPLE-1003, [0073].  Furthermore, Benjamin and Melby describe commercially available light control film of the same material, cellulose acetate butyrate (CAB).  APPLE-1007, 2:47-53; APPLE-1008, 2:18-21, 4:29-31.  Incorporating Melby's details regarding the implementation of Benjamin's light control film would have been obvious to a POSITA because doing so entails the use of known solutions to improve similar systems and methods in the same way.  APPLE-1003, [0073].  A POSITA would have been motivated to make this modification to further increase the directionality of the light signal received in the combined device, thereby leading to a device that is less susceptible to the influence of ambient light and thus provides more accurate readings.  *Id.*, 3:65-4:10.  A POSITA would have recognized that applying Melby's teachings to the Diab/Benjamin pulse oximeter would have led to predictable results without significantly altering or hindering the functions performed by the pulse oximeter.  APPLE-1003, [0073].  For example, such a modification is shown below.

28

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994



APPLE-1006, FIG. 24 (excerpt, annotated)

From this and related disclosure, a POSITA would have found the sensor resulting from the combination of Diab, Benjamin, and Melby to render obvious "a plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through body tissue carrying pulsing blood, wherein the louvers accept the light when the sensor is properly applied to tissue of a patient" under the proposed construction.  APPLE-1003, [0057]-[0074].

### B.    [GROUND 2] – Claim 15 is obvious over Webster and Melby

### 1.    Overview of Webster

Webster provides an overview of the history and design of pulse oximeters, stating that "[p]ulse oximetry was introduced in 1983 as a noninvasive method for

29

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

monitoring the arterial oxygen saturation of a patient's blood."  APPLE-1010, xvi; *see also* APPLE-1015.  The book details "both the hardware and software required to fabricate a pulse oximeter as well as the equations, methods, and software required for effective functioning" in addition to "testing methods."  *Id.*  Webster gives a comprehensive summary of the state of the art as of its publication, and describes, in detail, the purpose of components of a pulse oximeter as well as the design process and selection criteria for particular components.  *See*, *generally*, APPLE-1010, Chapters 2 and 5-7; APPLE-1003, [0075].

### 2.    Claim 15

(a)    **[15pre]: "A sensor which generates at least first and second intensity signals from a light-sensitive detector which detects light of at least first and second wavelengths transmitted through body tissue carrying pulsing blood; the sensor comprising:"**

To the extent the preamble is limiting, in the combination, Webster describes devices known as "pulse oximeters," which provide "an empirical measure of arterial saturation."  APPLE-1010, 13.  These devices operate by shining "light of two wavelengths through a tissue bed such as the finger or earlobe and measures the transmitted light signal."  *Id.*

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994



APPLE-1010, FIG. 7.1 (annotated, captioned: "Probe using transmittance principle.  Light from two LEDs passes alternately through the tissue of the finger and is detected by the photodiode")

In further detail, and as shown in FIG. 7.1 of Webster, reproduced above, Webster explains that the "probe of a pulse oximeter consists of **two LEDs** of selected wavelengths and a detector."  APPLE-1010, 86.  The LEDs can emit wavelengths of, for example, "***660 nm and 940 nm***," and "the ***detector*** used is a photodiode."  *Id*.  Because light from the LEDs "is partially reflected, transmitted, absorbed, and scattered by the skin and other tissues and the blood before it

31

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

reaches the detector," reducing the amount of light that eventually reaches the detector, the assembly "must be protected from the ambient light for the wavelengths to which the photodiode is sensitive." *Id*.  Because the pulse oximeter "uses two specific wavelengths, spectral response, or the ***relative response of the device to different wavelengths*** must be considered." *Id*., 71.

The LEDs can be "powered alternately so that light of one particular wavelength will pass through the tissue, and the transmitted light will be detected by the photodiode" before light of the other wavelength is emitted. *Id*.  Webster notes that the "***intensity of the light emerging from the tissue is attenuated by the amount of blood present in the tissue***." *Id*.  Because this intensity "varies with the arterial pulse," it can be used "as a measure to indicate the pulse rate." *Id*.

From this and related disclosure, a POSITA would have recognized Webster to teach a sensor that generates first and second intensity signals from a detector, such as a photodiode.  APPLE-1003, [0076]-[0079].  The photodiode is able to detect, and therefore is sensitive to, light of a first wavelength, such as 660 nm, and light of a second wavelength, such as 940 nm, and such light has been "attenuated by the amount of blood present in the tissue" of a subject."  APPLE-1010, 86; APPLE-1003, [0076]-[0082].

The use of two different wavelengths allows pulse oximeters to "determine the oxygen saturation of arterial blood" by "using the arterial pulsation to

32

differentiate between absorbance of arterial blood and other absorbers." *Id.*, 44.

Indeed, Webster explains the basics of pulse oximetry as follows:

> A pulse oximeter shines light of two wavelengths through a tissue bed such as the finger or earlobe and measures the transmitted light signal. The device operates on the following principles:
>
> 1. The light absorbance of oxygenated hemoglobin and deoxygenated hemoglobin at the two wavelengths is different…[and]
>
> 2. The pulsatile nature of arterial blood results in a waveform in the transmitted signal that allows the absorbance effects of arterial blood to be identified from those of nonpulsatile venous blood and other body tissue. By using a quotient of the **two effects at different wavelengths** it is possible to obtain a measure requiring no absolute calibration with respect to overall tissue absorbance. **This is a clear advantage of pulse oximeters over previous types of oximeters**.

APPLE-1010, 13-14.

Accordingly, the combination of Webster and Melby renders this limitation obvious.

### (b)    [15a]: "at least one light emission device;"

As explained above with respect to [15pre], in the combination, Webster teaches a sensor that measures first and second intensity signals using a

33

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

photodetector, such as a diode, to detect light from at least two LEDs emitting at two different wavelengths.  *See* APPLE-1010, 13-14, 44, 86, FIG. 7.1; APPLE-1003, [0076]-[0083].

As shown in FIG. 7.1 of Webster, reproduced below, Webster teaches two light emitting diodes (LEDs) that emit at two different wavelengths, and thus teaches at least one light emission device.  APPLE-1010, 13-14; APPLE-1003, [0084].



APPLE-1010, FIG. 7.1 (annotated)

34

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

In further detail, Webster describes that in the modern medical environment, "**a light source** is required that is powerful enough to penetrate more than a centimeter of tissue yet diminutive enough to fit in a small probe."  APPLE-1010, 56.  Such light sources are preferably LEDs because they "have a very narrow emission spectrum, which minimizes error in the measurement of arterial oxygen saturation ($S_aO_2$)."  *Id.*  Indeed, Webster explains that "[l]ight emitting diodes are the light source of choice for all pulse oximeters on the market today" due to their "small size, excellent drive characteristics, and large light output over a very narrow bandwidth make them the ideal choice for the source of light at **both the red and infrared wavelengths used in pulse oximetry**."  *Id.*; APPLE-1003, [0083]-[0086].

Accordingly, the combination of Webster and Melby renders this limitation obvious.

### (c)     [15b]: "a light sensitive detector; and"

As explained above with respect to [15pre]-[15a], in the combination, Webster teaches a sensor that measures first and second intensity signals using a photodetector, such as a diode, to detect light from at least two LEDs emitting at two different wavelengths.  *See* APPLE-1010, 13-14, 44, 56, 86, FIG. 7.1; APPLE-1003, [0076]-[0087].

As shown in FIG. 7.1 of Webster, reproduced below, Webster teaches a light

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

sensitive photodiode detector.  APPLE-1003, [0088].



APPLE-1010, FIG. 7.1 (annotated)

In further detail, Webster explains that its "***photodiode*** has to ***detect the light***

***transmitted through the tissue***" and is "placed in line with the LEDs so that the

maximum amount of transmitted light is detected."  APPLE-1010, 87.  Indeed,

Webster teaches that "the photodiode should be placed as close as possible to the

36

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

skin without exerting force on the tissue" and therefore that "the LEDs and the photodiode [should be placed] facing each other." *Id*. Examples of photodiodes that can be used include "***both the standard p-n diodes and p-i-n*** (New and Corenman 1987) ***diodes***," which are "currently in use today as the ***photodetectors of choice*** for use in pulse oximetry systems" due to "their relatively low cost and linear output current response to incident light." *Id*., 76. Webster also contemplates the use of other light sensitive detector devices, including "photocells…phototransistors, and integrated circuit (IC) sensors." *Id*., 71.

Webster warns that a phenomenon knowns as optical shunting can occur "when light from the sensor's LEDs reaches the photodiode without passing through the tissue" and "***leads to erroneous readings in the value of $S_aO_2$ as the amount of light detected by the photodiode is greatly increased by optical shunting***." *Id*., 95. This undesirable effect "can be eliminated by choosing an appropriate sensor for the patient's size and by ***ensuring that the sensor remains securely in position***." *Id*.; APPLE-1003, [0087]-[0091].

37

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994



APPLE-1010, FIG. 7.13 (captioned: "Light that does not pass through arterioles
causes optical shunting")

Accordingly, the combination of Webster and Melby renders this limitation

obvious.

    **(d)**    **[15c]: "a plurality of louvers positioned over the light
sensitive detector to accept light from the at least one
light emission device originating from a general
direction of the at least one light emission device and
then transmitting through body tissue carrying
pulsing blood, wherein the louvers accept the light
when the sensor is properly applied to tissue of a
patient."**

As explained above with respect to [15pre]-[15b], in the combination,

Webster teaches a sensor that measures first and second intensity signals using a

photodetector, such as a diode, to detect light from at least two LEDs emitting at

two different wavelengths.  APPLE-1010, 13-14, 44, 56, 71, 76, 86, FIGS. 7.1,

38

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

7.13; APPLE-1003, [0076]-[0092].

Webster describes the importance of preventing light other than the actual signals of interest (e.g., light that has passed through the tissue carrying pulsing blood) from reaching the detector.  APPLE-1010, 95, FIG. 7.13.

Webster proposes that, in order to "minimize the effects from light other than the optical signals of interest," "some type of *light filter*" can be placed over the detector.  APPLE-1010, 79.  Using a light filter allows "light of wavelengths of interest to pass through the filter but does not allow light of other wavelengths to pass through the filter."  *Id*.  Webster contemplates that in order for the pulse oximeter device to function effectively, "most of the light being transmitted from the LEDs **must not reach the photodiode unless it has passed through tissue containing arterial blood**."  *Id*.  Indeed, Webster warns that in order to "minimize errors, the pulse oximeter designer must attempt to **limit the light reaching the photodiode to that which has traveled through tissue containing arterial blood**" and suggests the use of "**[l]ight impervious barriers should be placed between LEDs and the photodiode** in all areas where the emitted light could reach the photodiode without passing through tissue."  *Id*.

A POSITA would have recognized the advantages of using a light filter as suggested by Webster.  APPLE-1003, [0092]-[0095].

Also in the combination, Melby describes a light control film that can be

39

used with the combined Webster system.  APPLE-1003, [0096].  In further detail, Melby describes a "louvered plastic film [that] has louvers including central regions with a relatively high coefficient[] of extinction and outer regions with relatively low coefficients of extinction."  APPLE-1008, Abstract.

As shown in FIGS. 1 and 2 of Melby, reproduced below, Melby explains the mechanism by which the louvers control light.  APPLE-1003, [0097].  Melby teaches "*a louvered plastic film has a plurality of clear regions separated by louvers*," where each louver has "a central region with a relatively high coefficient of extinction and outer regions, adjacent said clear regions, having relatively low coefficients of extinction."  APPLE-1008, 3:1-8.



APPLE-1008, FIGS. 1 and 2

40

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

In further detail, Melby describes its louvered film as including "cover sheets 11 provided for clarification and includes alternating clear layers, such as layer 12 and **louvers, such as louver 14**," that "includes outer layers 16 and 18 and inner layer 20." *Id.*, 3:46-4:25.  The operation of the louvers, described with reference to FIG. 2 (reproduced above), is explained as follows:

> **A light ray 22 enters transparent layer 12. It then strikes layer 16 at surface 24**. Because layer 16 has only a low concentration of carbon black, there is not a large difference in index of refraction between it and layer 12. Therefore very little of the light is reflected by layer 24. **Most of the light will enter layer 16 and be refracted**. As the light traverses layer 16, some will be absorbed. Some, however, will strike layer 20 on surface 26. Some of light beam 22 will enter layer 20 where, due to the relatively high concentration of carbon black, it will be absorbed. Some of light beam 22 will be reflected at surface 26 due to the large difference in index of refraction between layer 16 and layer 20.

*Id*.

Melby explicitly states that its advantage lies with "the effective optical density of a medium is directly proportional to the distance that the light must travel through that medium and the fact that reflection at an interface between two materials with different indices of refraction increases with increasing angle of

41

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

incidence."  APPLE-1008, 3:46-4:25.

Thus, a POSITA viewing the disclosure of Webster would have recognized that Melby's film could be used in the Webster device as the "light filter" to control light such that only light originating from the direction of the light emitters reaches the detector.  APPLE-1010, 79; APPLE-1003, [0092]-[0100].

A POSITA would have been motivated by Melby to include a light control film in the sensor described by Webster.  APPLE-1003, [0101].  Indeed, a POSITA would have been motivated and would have found it obvious to combine Webster and Melby to provide a pulse oximeter that "minimize[s] errors" by limiting "the light reaching the photodiode to that which has traveled through tissue containing arterial blood."  APPLE-1010, 79.

A POSITA would have understood that the beneficial effects of a particular component as described by Melby would have applied in a predictable manner to Webster's system.  APPLE-1003, [0102].  Further, a POSITA would have found it obvious to modify Webster to include a light control film as described by Melby placing a light control film over the photodetector in place of a scattering medium because doing so entails the use of known solutions to improve similar systems and methods in the same way.  *Id*.  For example, such a modification is illustrated below.

42

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994



APPLE-1010, FIG. 7.1 (annotated)

A POSITA would have recognized that applying Melby's teachings to Webster's pulse oximeter would have led to predictable results without significantly altering or hindering the functions performed by the pulse wave examination apparatus.  APPLE-1003, [0103].  Accordingly, implementing Melby's teachings in Webster's pulse oximeter would have been routine and straightforward to a POSITA, and it would have been clear that such a combination would predictably work and provide the expected functionality.  *Id*.

Indeed, a POSITA would have understood that a light control film placed over the detector could thus accept light from the light emission device from a

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

particular direction based on the angle of the louvers within the light control film. *Id*. As described above, the light from pulse oximeter emitters is directed at, for example, "the tissue of the finger" of a subject (APPLE-1010, 87) and "travels through the tissue, and is detected at the photodiode." *Id*., 88. Thus, in the combination, a POSITA would have understood Webster to render obvious light that originated from a general direction of the light emission devices, transmitted through body tissue carrying pulsing blood. APPLE-1003, [0104]. In the combination, a POSITA would have understood the light control film to restrict the amount of light that reaches the detector from a particular direction, and therefore that the louvers accept the light when the sensor is properly applied to the patient's body. *Id*.

From this and related disclosure, a POSITA would have found the sensor resulting from the combination of Webster and Melby to render obvious "a plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through body tissue carrying pulsing blood, wherein the louvers accept the light when the sensor is properly applied to tissue of a patient" under the proposed construction. APPLE-1003, [0092]-[0105].

44

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

## C.    [GROUND 3] – Claim 15 is obvious over Fine

In the event that [15c] is interpreted more broadly than its plain and ordinary meaning as set forth in the proposed construction so as to encompass reflectance pulse oximeters, in which the emitters and detectors are positioned on the same side of the body tissue carrying pulse blood, Grounds 3 and 4 also render obvious claim 15 of the '994 Patent.  APPLE-1003, [0106].

### 1.    Overview of Fine

Fine describes sensor "for optical blood oximetry" that uses "two point-like light emitters positioned in the center of the device" and in proximity to "annular detector terminals" that lead to detectors such as "photodiodes."  APPLE-1009, Abstract.



APPLE-1009, FIG. 7 (annotated)

45

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

Fine's sensor is applied to a subject's skin and illuminates tissue "via the light emitting terminal by the two light sources" such that the light is "absorbed and partially reflected by the tissue and the pulsatile changes of the light absorption" within the portion of the tissue that is illuminated.  APPLE-1009, 16:17-26.  The intensities of integral light signals received by the two light detector terminals can be used to determine "a degree of attenuation of the light" within the tissue and parameters such as "the oxygen saturation of the blood in the tissue." *Id.*, 16:26-30.  Fine uses optical fiber bundles that "constitute first and second detector terminals" for the sensor to direct the light to the detectors.  APPLE-1009, 16:31-17:5.  The oblique cut of the ends of the fibers define the scope of the direction of light (annotated in yellow) that will reach the detectors at the other end of the fibers.  APPLE-1009, 17:21-18:7, 18:7-18; APPLE-1003, [0107]-[0108]



APPLE-1009, FIG. 5 (left, annotated), FIG. 6 (right, annotated)

46

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

## 2. Claim 15

**(a)** **[15pre]: "A sensor which generates at least first and
second intensity signals from a light-sensitive detector
which detects light of at least first and second
wavelengths transmitted through body tissue carrying
pulsing blood; the sensor comprising:"**

To the extent the preamble is limiting, Fine teaches a "new sensor for optical

blood oximetry as well as a method and apparatus in which the new sensor is

used." APPLE-1009, Abstract. The sensor "includes two point-like *light emitters*

positioned in the center of the device in close proximity to each other and at least

one and preferably two annular detector terminals concentrically surrounding the

light emitters." *Id*. Fine's light sources may include "two laser diodes emitting

each monochromatic light within the range of 670-940 nm" and "[t]he detector

devices are, for example, photodiodes." *Id*.; APPLE-1003, [0109]-[0115].

As shown in FIG. 2 of Fine, reproduced below, Fine's sensor includes fiber

optic bundles that contact a patient's skin to detect light transmitted through body

tissue.

Exhibit E
Page 271

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994



APPLE-1009, FIG. 2

In further detail, Fine's sensor includes an applicator block having "*a contact surface 21* and a central bore 22 holding two bundles 23 and 24 of optical fibers which constitute two light emitter terminals and which are connected to a pair of light sources."  APPLE-1009, 15:17-24.  These two light emitter terminals are " linked to *two distinct light sources* (not shown) generating light of different wavelengths" and the light detector terminals "constituted by the optical fibers 32 and 39…are linked to optical detector devices (not shown)."  *Id*., 16:12-16.

In operation, Fine's sensor is "applied to a skin portion above a tissue 44 which is sequentially illuminated via the light emitting terminal by the two light sources" using the applicator block.  *Id*., 16:17-20.  The light is "absorbed and partially reflected by the tissue," and a "ratio of the intensities" of the signals produced in response to the light sources is "used for determining the desired

48

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

characteristics such as the *oxygen saturation* of the blood in the tissue 44." *Id.*,

16:21-30.  Indeed, Fine teaches a pulse oximeter.  *Id.*, 1:1-5.



APPLE-1009, FIG. 7 (annotated)

As shown in FIG. 7 of Fine, reproduced above, Fine teaches a pulse

oximeter that includes "two light sources 92 and 93, e.g. two laser diodes,

generating light of two different wavelengths for the sequential illumination of a

tissue under investigation" and "two photodetectors 94 and 95" that generate

signals used for "computing the characteristic of interest which is displayed on a

display 100."  APPLE-1009, 18:19-30.

From this and related disclosure, a POSITA would have recognized Fine to

teach or suggest a sensor which generates at least first and second intensity signals

49

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

from a light-sensitive detector which detects light of at least first and second wavelengths transmitted through body tissue carrying pulsing blood.  APPLE-1003, [0109]-[0115].

Accordingly, Fine renders this limitation obvious.

### (b)     [15a]: "at least one light emission device;"

As explained above with respect to [15pre], Fine teaches a sensor that measures first and second intensity signals using a photodetector, such as a diode, to detect light from at least two LEDs emitting at two different wavelengths. APPLE-1009, Abstract, 1:1-5, 15:17-24, 16:12-30, 18:19-30, FIGS. 2, 7; APPLE-1003, [0109]-[0116].

As shown in FIG. 7 of Fine, reproduced below, Fine teaches two light emitting diodes (LEDs) that emit at two different wavelengths, and thus teaches at least one light emission device.  APPLE-1003, [0117].

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994



Fig.7

APPLE-1009, FIG. 7 (annotated)

In further detail, Fine's "two light emitter terminals are linked to two distinct light sources (not shown) generating light of different wavelengths."  APPLE-1009, 16:12-30.  When in operation, Fine's light sources "sequentially illuminate[]" the portion of skin to which the applicator block is applied.  *Id*.  The light sources can be, for example, "laser diodes emitting light at the two wavelengths of about 750 and 780 nm."  *Id*.; *see also id*., 18:19-30 (describing "two light sources 92 and 93, e.g. two laser diodes, generating light of two different wavelengths for the sequential illumination of a tissue under investigation," where the light sources "are controlled by the microprocessor 98 via a timing controller unit 101"); APPLE-1003, [0116]-[0119].

Accordingly, Fine renders obvious "at least one light emission device."

51

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

### (c)    [15b]: "a light sensitive detector; and"

As previously discussed (*see* [15pre]-[15a]), Fine teaches a sensor that measures first and second intensity signals using at least one photodetector, such as a diode, to detect light from at least two LEDs emitting at two different wavelengths.  APPLE-1009, Abstract, 1:1-5, 15:17-24, 16:12-30, 18:19-30, FIGS. 2, 7; APPLE-1003, [0109]-[0120].

As shown in FIG. 7 of Fine, reproduced below, Fine discloses two light sensitive photodiode detectors, and thus renders obvious at least a light sensitive detector.  APPLE-1003, [0121].



APPLE-1009, FIG. 7 (annotated)

52

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

In further detail, Fine includes "two *photodetectors* 94 and 95" that detect light and generate signals that are then "transformed and modulated into electric signals which are amplified by an analogue processing unit 96, digitized by an A/D converter 97 and transmitted to a microprocessor 98." APPLE-1009, 18:19-30. The microprocessor computes "the characteristic of interest which is displayed on a display 100," such as a value of oxygen saturation. *Id*.

Additionally, the light detectors are connected to "two light detector terminals constituted by the optical fibers 32 and 39 located respectively in the annular spaces 27 and 35." APPLE-1009, 16:12-30. The light that is "absorbed and partially reflected by the tissue and the pulsatile changes of the light absorption in the annular section A of tissue 44" can be estimated by "comparing the integral light signal received by the first light detector terminal constituted by the optical fibers 32 with the integral light signal received by the second light detector terminal constituted by the optical fibers 39." *Id*.; APPLE-1003, [0120]-[0124]

Accordingly, Fine renders obvious "a light sensitive detector."

(d)     **[15c]: "a plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through body tissue carrying pulsing blood, wherein the louvers accept the light when the sensor is properly applied to tissue of a patient."**

As previously discussed (*see* [15pre]-[15a]), Fine teaches a sensor that

53

measures first and second intensity signals using a photodetector, such as a diode, to detect light from at least two LEDs emitting at two different wavelengths. APPLE-1009, Abstract, 1:1-5, 15:17-24, 16:12-30, 18:19-30, FIGS. 2, 7; APPLE-1003, [0109]-[0125].

As shown in FIG. 4 (reproduced below), Fine's fiber bundles 63 and 64 further teach a plurality of louvers positioned over its detector that accept light from the LEDs originating from the LEDs through tissue.  APPLE-1003, [0126]; *see* APPLE-1009, 16:31-17:5.



APPLE-1009, FIG. 4

54

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

Fine teaches fiber optic bundles including a plurality of optical fibers that "terminate[] with an oblique cut." APPLE-1009, 17:14-18. These bundles "guid[e] at least two light sources (not shown) to light emitting terminals," and thus are placed over the light detector. *Id.*, 16:31-17:5; APPLE-1003, [0127]. The oblique cut on the end of each optical fiber forms "an acute angle with the axis of the fiber such that the light-acquiring end of each fiber is either flush with or parallel to the contact surface 53." APPLE-1009, 17:14-18. Indeed, a motivating factor behind Fine's disclosure is "overcoming the problem of ***shunting of the emitted light*** on the outer surface of the tissue between the light source and the detector." *Id.*, 3:21-28.

In further detail, a single fiber 70 ("assumed to form part of the bundle 63") of Fine is shown in FIG. 5, reproduced below. *Id.*, 17:21-23. The fiber "is characterized by an acute angle a formed between the cut end face 72 and a plane 73 perpendicular to the fiber's axis." *Id.*, 17:24-25. The "actual scope of vision of the fiber 70 extends between a left-hand ray 74 and a right-hand ray 75 and may be calculated from the angle α and the optical parameters of the fiber." *Id.*, 17:25-28. Due to the oblique cut on the end of the fiber, and "[a]s will readily be understood by those skilled in the art, the ***specular reflection and shunted light*** which mostly come to the 30 surface 72 from left of the ray 74 ***will not be perceived by the detector***," while ***light arriving from the reflective deep layers of the tissue in***

55

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

*directions substantially perpendicular* to surface 71 in a rather wide area confined between rays 74 and 75" will be perceived by the detector.  *Id.*, 17:28-18:1; APPLE-1003, [0128].



APPLE-1009, FIG. 5 (annotated)

In another configuration, as shown in FIG. 6 of Fine, reproduced below, a fiber 80 is placed such that "the fiber axis is perpendicular to a surface 81 of a tissue." *Id.*, 18:8-18.  As in the embodiment of FIG. 5, the "**angle α determines the scope of vision of the fiber 80**, which is defined by a left-hand beam 84 and a right-hand beam 85," and in the example depicted in FIG. 6, "**the scope of vision of the cut-ended optic fiber 80 is shifted from the shorter to the longer side wall**." *Id.*

56

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994



Fig.6

APPLE-1009, FIG. 6 (annotated)

A POSITA would have understood that each of Fine's fibers in its fiber optic bundle is connected to its detectors, and thus is positioned over a light detector of Fine's probe.  APPLE-1003, [0125]-[0130].  Indeed, a POSITA would have recognized that each of the separate fibers within the fiber optic bundle 57 acts as a louver positioned over a light detector of Fine's probe.  APPLE-1003, [XX].  For example, a POSITA would have understood fibers 70 and 80 to teach separate louvers because the walls of the fibers serve to direct light and control the scope of vision of the fibers.  APPLE-1003, [0130].

57

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994



APPLE-1009, FIG. 4 (annotated)

Indeed, a POSITA would have understood that the fibers could thus accept light from the light emission device from a particular direction based on the angle of the louvers within the light control film.  *Id*.  As described above, the light from pulse oximeter emitters is directed at, for example, "blood perfused tissue" (APPLE-1009, 2:10-13) and "light absorption by the tissue is determined by a suitable light sensor."  *Id*., 1:12-17.  The signal measured is thus attenuated by the tissue.  APPLE-1003, [0131].  Thus, a POSITA would have understood Fine to teach permitting light that originated from a general direction of the light emission

58

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

devices (under the broader construction of the claim limitation), transmitted through body tissue carrying pulsing blood.  In the combination, a POSITA would have understood the light control film to restrict the amount of light that reaches the detector from a particular direction, and therefore that the louvers accept the light when the sensor is properly applied to the patient's body.  APPLE-1003, [0125]-[0132].

Accordingly, Fine renders this limitation obvious.

### D.     [GROUND 4] – Claim 15 is obvious over Fine, Benjamin, and Melby

#### 1.     Claim 15

As explained above in Ground 3, Fine renders all features of claim 15 obvious.  However, to the extent Patent Owner argues that Fine does not render obvious feature [15c], the combination of Fine, Benjamin, and Melby renders this feature obvious.  All other features of claim 15 are rendered obvious for the reasons explained above in Ground 3, [15pre]-[15b].  APPLE-1003, [0133].

> **(a)     [15c]: "a plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through body tissue carrying pulsing blood, wherein the louvers accept the light when the sensor is properly applied to tissue of a patient."**

To the extent that Fine does not explicitly disclose louvers, a POSITA would have been motivated to modify Fine to implement louvers and improve light

control, an aspect of the system which Fine identifies as a motivating factor.

APPLE-1009, 3:21-28 (discussing "overcoming the problem of shunting of the emitted light on the outer surface of the tissue between the light source and the detector"); APPLE-1003, [0134]-[0151].

In the combination, Benjamin recognizes the problem of variations in the amount of scattered light reaching the detector as well.  APPLE-1007, 1:35-49; APPLE-1003, [0135].  Benjamin describes a device that "senses blood flow by means of a probe placed on the surface of the skin of any part of the body." APPLE-1007, 1:6-8.  Benjamin's probe "contains a tiny *light source* and a specifically selected *photo-sensitive cell* that responds to light absorbed by the arterial blood in the peripheral vascular bed over which the sensor is placed."  *Id*. 1:8-12, *see also id*., 2:26-61.  The motivating factor behind Benjamin's invention is that "*variations in the amount of scattered light reaching the photocell cause variations in the operating point of the photocell*," which "adversely affects the accuracy of the measurement."  *Id*., 1:35-40; APPLE-1003, [0135].

As a solution, Benjamin identifies, as one of its main improvements, the addition of light control film to stabilize the amount of scattered light that reaches the detector:

> In accordance with one feature of the invention means are provided for holding the operating point of the photocell constant by overcoming the adverse [effects] of

60

the scattered light reaching the photocell. To this end, the amount of scattered light reaching the photocell can be made closer to constant by *placing in front of the photocell and light source a small piece of light control film. This film has the effect of collimating the light thereby to make the sensor more nearly dependent only upon the light beam directly reflected from the pulsating blood field*.

*Id*., 1:56-66.

For example, as shown in FIG. 1 of Benjamin, reproduced below, "*a light control film 22 is mounted* within the casing 12 to extend across the window 16" such that "the light emitted from the light source 18 *passes through the light control film 22* to the field to be measured and light is reflected from this field back through the light control film 22 to the photo-sensitive cell 20." *Id*., 2:42-61. In further detail, the film "is known in the art and is commercially available," and "*has the effect of collimating the light passing therethrough [sic] to thereby make the photo-sensitive cell 20 more nearly dependent only upon the light beam directly reflected from the field being measured*." *Id*., 2:50-57.

61

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994



APPLE-1007, FIG. 1 (annotated)

A POSITA would have been motivated by the disclosure of Benjamin to modify Fine's sensor to include a light control film. APPLE-1003, [0134]-[0138]. Indeed, a POSITA would have been motivated and would have found it obvious to combine Fine and Benjamin to provide an optical physiological sensor that reduces variations in the amount of light detected by the photodetectors of the sensor in order to "collimat[e] the light emitted from the light source and reflected back to the photo-sensitive cell." APPLE-1007, Abstract.

A POSITA would have understood that the beneficial effects of a particular component as used within Benjamin's system would have applied in a predictable manner to Fine's system. APPLE-1003, [0139]. For example, both Fine and Benjamin describe PPG devices and relate to reducing the effects of noise in

62

detected signals resulting from describes a pulse oximeter, which measures oxygen saturation level ($SpO_2$) and is also a PPG.  APPLE-1009, Abstract, 1:1-5, 15:17-24, 16:12-30, 18:19-30.  Fine's device measures the change in the volume of arterial blood with each pulse beat, and while more complex than Benjamin's device, operates according to similar principles.  APPLE-1003, [0139].

A POSITA would have understood, from the combined disclosure of Fine and Benjamin, that a pulse oximeter can be improved by placing a light control film over the detector to reduce the amount of light that reaches the detector but has not passed through the tissue.  APPLE-1003, [0140].

Further, a POSITA would have found it obvious to modify Fine with Benjamin's disclosure of placing a light control film over the photodetector in place of a scattering medium because doing so entails the use of known solutions to improve similar systems and methods in the same way.  APPLE-1003, [0141].  Indeed, "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious."  *KSR*, 550 U.S. at 417.  A POSITA would have recognized that applying Benjamin's teachings to Fine's pulse oximeter would have led to predictable results without significantly altering or hindering the functions performed by the pulse wave examination apparatus.  APPLE-1003, [0141].  Indeed, a POSITA would have had a reasonable

63

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

expectation of success in making this modification, and would have reasonably expected to reap benefits of collimating light on its way to the detector "to thereby make the photo-sensitive cell…more nearly dependent only upon the light beam directly reflected from the field being measured." APPLE-1007, 2:42-61; APPLE-1003, [0141]. Fine and Benjamin describe the same types of physiological sensor devices and, in combination, Benjamin's feature is implemented in Fine's pulse oximeter just as it is in Benjamin's PPG. APPLE-1003, [0141]. Accordingly, implementing Benjamin's teachings in Fine's pulse oximeter would have been routine and straightforward to a POSITA, and it would have been clear that such a combination would predictably work and provide the expected functionality. *Id.*

Also in the combination, Melby describes a light control film that can be used with the combined Fine/Benjamin system. APPLE-1003, [0142]. In further detail, Melby describes a "louvered plastic film [that] has louvers including central regions with a relatively high coefficient[] of extinction and outer regions with relatively low coefficients of extinction." APPLE-1008, Abstract.

As shown in FIGS. 1 and 2 of Melby, reproduced below, Melby explains the mechanism by which the louvers control light. APPLE-1003, [0143]. Melby teaches "*a louvered plastic film has a plurality of clear regions separated by louvers,*" where each louver has "a central region with a relatively high coefficient of extinction and outer regions, adjacent said clear regions, having relatively low

64

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

coefficients of extinction."  APPLE-1008, 3:1-8.



APPLE-1008, FIGS. 1 and 2

In further detail, Melby describes its louvered film as including "cover sheets 11 provided for clarification and includes alternating clear layers, such as layer 12 and ***louvers, such as louver 14***," that "includes outer layers 16 and 18 and inner layer 20."  *Id.*, 3:46-53.  The operation of the louvers, described with reference to FIG. 2 (reproduced above), is explained as follows:

65

> *A light ray 22 enters transparent layer 12. It then strikes layer 16 at surface 24*. Because layer 16 has only a low concentration of carbon black, there is not a large difference in index of refraction between it and layer 12. Therefore very little of the light is reflected by layer 24. *Most of the light will enter layer 16 and be refracted*. As the light traverses layer 16, some will be absorbed. Some, however, will strike layer 20 on surface 26. Some of light beam 22 will enter layer 20 where, due to the relatively high concentration of carbon black, it will be absorbed. Some of light beam 22 will be reflected at surface 26 due to the large difference in index of refraction between layer 16 and layer 20.

*Id.*, 3:65-4:10.

Melby explicitly explains that its advantage lies with "the effective optical density of a medium is directly proportional to the distance that the light must travel through that medium and the fact that reflection at an interface between two materials with different indices of refraction increases with increasing angle of incidence." APPLE-1008, 4:11-17; APPLE-1003, [0142]-[0146].

Thus, a POSITA viewing the disclosure of Fine/Benjamin would have recognized that Melby's film could be used in the Fine/Benjamin device to control light such that only light originating from the direction of the light emitters (under the broader construction of the claim limitation) reaches the detector. APPLE-

66

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

1003, [0147].

A POSITA would have found it obvious to look to Melby for details
regarding the implementation of the light control film.  *Id.*, [0148]  Indeed,
Benjamin teaches that light control film was "known in the art and…commercially
available."  APPLE-1007, 2:50-53; APPLE-1003, [0148].  Furthermore, Benjamin
and Melby describe commercially available light control film of the same material,
cellulose acetate butyrate.  APPLE-1007, 2:47-53; APPLE-1008, 2:18-21, 4:29-31.
Incorporating Melby's details regarding one such commercially available light
control film into the implementation of Benjamin's light control film as applied to
Fine's sensor would have been obvious to a POSITA because doing so entails the
use of known solutions to improve similar systems and methods in the same way.
APPLE-1003, [0149].  A POSITA would have recognized that applying Melby's
teachings to the Fine/Benjamin pulse oximeter would have led to predictable
results without significantly altering or hindering the functions performed by the
pulse oximeter.  APPLE-1003, [0149].

Indeed, a POSITA would have understood that the fibers could thus accept
light from the light emission device from a particular direction based on the angle
of the louvers within the light control film.  *Id.*  As described above, the light from
pulse oximeter emitters is directed at, for example, "blood perfused tissue"
(APPLE-1009, 2:10-13) and "light absorption by the tissue is determined by a

67

suitable light sensor." *Id.*, 1:12-17.  The signal measured is thus attenuated by the tissue.  Thus, in the combination, Fine teaches permitting light that originated from a general direction of the light emission devices (under the broader construction of the claim limitation), transmitted through body tissue carrying pulsing blood.  APPLE-1003, [0150]-[0151].  In the combination, a POSITA would have understood the light control film to restrict the amount of light that reaches the detector from a particular direction, and therefore that the louvers accept the light when the sensor is properly applied to the patient's body.  APPLE-1003, [0134]-[0151].

Accordingly, the combination of Fine, Benjamin, and Melby renders this limitation obvious.

## IV.  MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1)

### A.  Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1)

Apple Inc. is the real party-in-interest (RPI).

### B.  Related Matters Under 37 C.F.R. § 42.8(b)(2)

Patent Owner filed a complaint on January 9, 2020 in the U.S. District Court for the Central District of California (CDCA) (Case No. 8:20-cv-00048) against Apple, alleging infringement by Petitioner of the '994 Patent.  The complaint was served to Apple on January 13, 2020.

### C.  Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3)

Petitioner provides the following designation of counsel.

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

| LEAD COUNSEL | BACKUP COUNSEL |
|---|---|
| W. Karl Renner, Reg. No. 41,265<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email:  IPR50095-0005IP1@fr.com | Daniel D. Smith, Reg. No. 71,278<br>Andrew B. Patrick, Reg. No. 63,471<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email: PTABInbound@fr.com |

### D.     Service Information

Please address all correspondence and service to the address listed above.

Petitioner consents to electronic service by email at IPR50095-0005IP1@fr.com

(referencing No. 50095-0005IP1 and cc'ing PTABIn-bound@fr.com, axf-

ptab@fr.com, dsmith@fr.com and patrick@fr.com).

## V.     PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION

Consistent with Congressional intent and goals of *NHK*/*Fintiv*, Apple asks

the Board alone to consider challenges raised in this Petition.  *Apple Inc. v. Fintiv,*

*Inc.*, IPR2020-00019, Paper 11, 6 (PTAB 2020).  As explained below, *Fintiv*

favors institution.

### A.     Factor 1: Institution will increase the likelihood of stay

Institution will enable the Board to resolve the issue of validity, and a

finding of invalidity will relieve the Central District of California (the "District

Court") of the need to continue with the companion litigation.  Apple intends to

move to stay the District Court case, and the opportunity for such simplification

69

increases the likelihood that the court will grant a stay in view of IPR institution.

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case No. 2:16-cv-642-JRG, 2-3 (E.D. Tex. 2017); *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 13-CV-1058, 2015 WL 1069111 (E.D. Tex. 2015).

### B.    Factor 2: District Court schedule

Trial in the District Court case is scheduled for April 5, 2022.  APPLE-1031, 1.  Based on the 18-month IPR schedule, a Final Written Decision ("FWD") in an IPR arising from the present Petition would issue in early March of 2022, prior to the District Court trial date.

In addition, as in *NHK*, district court trial dates shift, even in normal times. *Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap. 22, 17 (PTAB 2019).  The District Court is one of the country's busiest patent courts.  Scheduling issues cannot be ruled out, as experts have professed that additional COVID-19 outbreaks are likely to arise and California is facing new outbreaks.  APPLE-1034, 1 ("Fauci says second wave of coronavirus is 'inevitable'"); APPLE-1035, 4 ("Los Angeles County is currently" at "275 [cases] per 100,000 [residents]," which is higher than the recommended level (100 per 100,000) for reopening).

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

## C.    Factor 3: Apple's investment in IPR outweighs forced investment in litigation to date

District court proceedings are still at an early phase.  The parties have yet to file claim construction briefs, no claim construction orders have issued, and the *Markman* hearing is not scheduled until February 8, 2021.  APPLE-1031, 1.  In addition, discovery is not scheduled to close until July 5, 2021.  *Id.*

Apple's substantial investment in these IPR proceedings should counterbalance—if not outweigh—the resources invested in the co-pending litigation given the speed with which Apple is filing IPR petitions on over 150 claims across seven patents.  It would be unjust to consider resources expended in District Court (equally by both parties), without considering Apple resources expended to prepare nine IPR petitions that would be irretrievably lost without consideration on the merits, in addition to the extensive expenses that may be foregone through institution of Apple's petitions and that will otherwise certainly follow in co-pending litigation for which significant milestones exist.  *See, e.g., Apple v. Seven Networks*, IPR2020-00255, Paper 13 at 12-15 (PTAB July 28, 2020) (declining to exercise 314(a) discretion on petitions filed 9 months after the commencement of co-pending litigation where a large number of patents were included in the litigation, and a large number of claims from each patent were challenged in the petitions).

71

### D.    Factor 4: The Petition raises unique issues

Consistent with *Fintiv*, Apple asks the Board to consider the unique challenges raised in the Petition.  Apple has voluntarily stipulated to counsel for Patent Owner that, if the Board institutes the present Petition, Apple will not assert that the challenged claims are invalid on the pending Petition's asserted grounds in *Masimo Corporation et al. v. Apple Inc*., Case No. 8:20-cv-00048 (C.D. Cal.). APPLE-1032, 1; *see, e.g., Apple v. Seven* at 15-17 (finding that such a stipulation by a petitioner "mitigates, at least to some degree, the concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions").

In addition, the Petition addresses claims that will not be addressed in District Court.  Although Patent Owner has not yet narrowed the asserted claims, the District Court recently ordered the parties to submit "a joint proposal for an initial reduction of infringement contentions" by September 21, 2020.  APPLE-1033, 1.  Thus, based on this ordered reduction in the asserted claims, the District Court will necessarily address fewer claims than are challenged in this Petition (which challenges all claims of the patent), even assuming the District Court addresses validity at all, which is presently unknowable.  *See, e.g., Apple v. Seven* at 18.

In short, grounds in this Petition are unique, and will not be addressed in

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

District Court. *See, e.g., Apple v. Seven* at 15-20 (weighing this factor against exercising 314(a) discretion where a petitioner challenged several unasserted claims and stipulated that it would not pursue the IPR grounds in the co-pending litigation).

### E. Factor 5: Institution would provide the Board an opportunity to invalidate claims that could later be reasserted against others

Apple's Petition is potentially helpful to future defendants. For at least this reason, Apple's status as both Petitioner and defendant is, at worst, a neutral factor. Taking the relevant circumstances into account, institution would serve overall efficiency and integrity, enabling the Board to determine invalidity of claims that Patent Owner might otherwise later assert against others.

### F. Factor 6: Other circumstances support institution

As *Fintiv* noted, "the factors ... are part of a balanced assessment of all the relevant circumstances in the case," and, "if the merits of a ground raised in the petition seem particularly strong … the institution of a trial may serve the interest of overall system efficiency and integrity …." *Fintiv*, 14-15. As explained in the Petition (and Dr. Anthony's testimony), institution would result in invalidation of the Challenged Claims.

## VI. PAYMENT OF FEES – 37 C.F.R. § 42.103

Apple authorizes the Patent and Trademark Office to charge Deposit Account No. 06-1050 for the fee set in 37 C.F.R. § 42.15(a) for this Petition and

73

further authorizes payment for any additional fees to be charged to this Deposit Account.

## VII.  CONCLUSION

The cited prior art references disclose or render obvious claim 15 of the '994 Patent for at least the reasons explained above.  Accordingly, Apple respectfully requests institution of an IPR for claim 15, and that the claim be found unpatentable.

Respectfully submitted,

Dated: August 31, 2020          /W. Karl Renner/
                                W. Karl Renner, Reg. No. 41,265
                                Daniel D. Smith, Reg. No. 71,278
                                Andrew B. Patrick, Reg. No. 63,471
                                Fish & Richardson P.C.
                                3200 RBC Plaza, 60 South Sixth Street
                                Minneapolis, MN 55402
                                T: 202-783-5554
                                F: 877-769-7945

(Control No. IPR2020-01526)     *Attorneys for Petitioner*

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

# CERTIFICATION UNDER 37 CFR § 42.24

Under the provisions of 37 CFR § 42.24(d), the undersigned hereby certifies

that the word count for the foregoing Petition for *Inter Partes* Review totals 12,561

words, which is less than the 14,000 allowed under 37 CFR § 42.24.


Dated: August 31, 2020          /W. Karl Renner/
                                W. Karl Renner, Reg. No. 41,265
                                Daniel D. Smith, Reg. No. 71,278
                                Andrew B. Patrick, Reg. No. 63,471
                                Fish & Richardson P.C.
                                3200 RBC Plaza, 60 South Sixth Street
                                Minneapolis, MN 55402
                                T: 202-783-5070
                                F: 877-769-7945

                                *Attorneys for Petitioner*

Attorney Docket No. 50095-0005IP1
IPR of U.S. Patent No. 6,771,994

# CERTIFICATE OF SERVICE

Pursuant to 37 CFR §§ 42.6(e)(4)(i) *et seq.* and 42.105(b), the undersigned

certifies that on August 31, 2020, a complete and entire copy of this Petition for

*Inter partes* Review and all supporting exhibits were provided via Federal Express,

to the Patent Owner by serving the correspondence address of record as follows:

KNOBBE, MARTENS, OLSON & BEAR, LLP
MASIMO CORPORATION (MASIMO)
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE CA 92614

/Diana Bradley/
Diana Bradley
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
(858) 678-5667

# Exhibit F

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent of:    Jeroen Poeze et al.

U.S. Patent No.:    10,588,553       Attorney Docket No.: 50095-0012IP1

Issue Date:    March 17, 2020

Appl. Serial No.:    16/534,949

Filing Date:    August 7, 2019

Title:    MULTI-STREAM DATA COLLECTION SYSTEM FOR NONINVASIVE MEASUREMENT OF BLOOD CONSTITUENTS

**Mail Stop Patent Board**

Patent Trial and Appeal Board

U.S. Patent and Trademark Office

P.O. Box 1450

Alexandria, VA 22313-1450

## PETITION FOR *INTER PARTES* REVIEW OF UNITED STATES PATENT NO. 10,588,553 PURSUANT TO 35 U.S.C. §§ 311–319, 37 C.F.R. § 42

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

# TABLE OF CONTENTS

I.    MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1) ........................... 3
      A.   Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1) .................... 3
      B.   Related Matters Under 37 C.F.R. § 42.8(b)(2) ......................... 3
      C.   Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3) ................ 4
      D.   Service Information ................................................ 4

II.   PETITIONER HAS STANDING TO REQUEST IPR .................................. 4

III.  OVERVIEW OF THE '553 PATENT ........................................... 5
      A.   Brief Description ................................................... 5
      B.   Level of Ordinary Skill in the Art .................................. 7
      C.   Claim Construction ................................................. 7

IV.   THE CHALLENGED CLAIMS ARE UNPATENTABLE ............................ 8
      A.   Asserted Grounds and References ................................... 8
      B.   GROUND 1: Claims 1-6, 9-18, 20-24, and 29 are obvious over
           Mendelson '799 and Ohsaki .......................................... 10
           1.   Overview of Mendelson '799 ................................... 10
           2.   Overview of Ohsaki ........................................... 18
           3.   Combination of Mendelson '799 and Ohsaki ..................... 20
           4.   Analysis ..................................................... 29
      C.   GROUND 2 – Claims 4, 18, and 24 are obvious over Mendelson '799 in
           view of Ohsaki and Schulz .......................................... 62
           1.   Overview of Schulz ........................................... 62
           2.   Combination of Mendelson '799, Ohsaki, and Schulz ............ 64
           3.   Analysis ..................................................... 71
      D.   GROUND 3 – Claim 25 is obvious over Mendelson '799, Ohsaki, and
           Griffin ............................................................ 74
           1.   Overview of Griffin .......................................... 74
           2.   Combination of Mendelson '799, Ohsaki, and Griffin ........... 76
           3.   Analysis ..................................................... 78
      E.   GROUND 4 – Claims 7 and 19 are obvious over Mendelson '799,
           Ohsaki, and Mendelson 2006 ......................................... 79
           1.   Overview of Mendelson 2006 ................................... 79
           2.   Combination of Mendelson '799, Ohsaki, and Mendelson 2006 .81
           3.   Analysis ..................................................... 90
      F.   GROUND 5 – Claims 8 and 26-28 are obvious over Mendelson '799,
           Ohsaki, Mendelson 2006, and Griffin ................................ 97

i

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

1.  Combination of Mendelson '799, Ohsaki, Mendelson 2006, and Griffin ............................................................................97
2.  Analysis ......................................................................................97

V.   PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION........100
A.   Factor 1: Institution Will Increase Likelihood of Stay .........................101
B.   Factor 2: District Court Schedule ..........................................................102
C.   Factor 3: Apple's Investment in IPR Outweighs Forced Investment in Litigation to Date ..................................................................................102
D.   Factor 4: The Petition Raises Unique Issues ........................................103
E.   Factor 5: The Petition Enables the Board to Resolve Invalidity of Claims that Might Otherwise be Reasserted ....................................................104
F.   Factor 6: Other Circumstances Support Institution ..............................104

VI.  CONCLUSION...........................................................................................105

VII. PAYMENT OF FEES – 37 C.F.R. § 42.103 .............................................105

ii

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

# EXHIBITS

| APPLE-1001 | US Patent No. 10,588,553 |
|---|---|
| APPLE-1002 | File History for U.S. Patent No. 10,588,553 |
| APPLE-1003 | Declaration of Dr. Kenny |
| APPLE-1004 | Curriculum Vitae of Dr. Kenny |
| APPLE-1005 | *Masimo Corporation, et al. v. Apple Inc.*, Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.) |
| APPLE-1006 | US Pub. No. 2002/0188210 ("Aizawa") |
| APPLE-1007 | JP Pub. No. 2006/296564 ("Inokawa") |
| APPLE-1008 | Certified English Translation of Inokawa and Translator's Declaration |
| APPLE-1009 | US Pub. No. 2001/0056243 ("Ohsaki") |
| APPLE-1010 | "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Y. Mendelson, et al.; Proceedings of the 28th IEEE EMBS Annual International Conference, 2006; pp. 912-915 ("Mendelson-2006") |
| APPLE-1011 | RESERVED |
| APPLE-1012 | US Patent No. 6,801,799 ("Mendelson '799") |
| APPLE-1013 | US Pub. No. 2004/0054291 ("Schulz") |
| APPLE-1014 | US Patent No. 7,658,613 ("Griffin") |
| APPLE-1015 | RESERVED |
| APPLE-1016 | RESERVED |

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

| APPLE-1017 | "Design and Evaluation of a New Reflectance Pulse Oximeter Sensor," Y. Mendelson, et al.; Worcester Polytechnic Institute, Biomedical Engineering Program, Worcester, MA 01609; Association for the Advancement of Medical Instrumentation, vol. 22, No. 4, 1988; pp. 167-173 ("Mendelson-1988") |
|---|---|
| APPLE-1018 | "Skin Reflectance Pulse Oximetry: In Vivo Measurements from the Forearm and Calf," Y. Mendelson, et al.; Journal of Clinical Monitoring, vol. 7, No. 1, January 1991 ("Mendelson 1991) |
| APPLE-1019 | Design of Pulse Oximeters, J.G. Webster; Institution of Physics Publishing, 1997 ("Webster") |
| APPLE-1020 | QuickSpecs; HP iPAQ Pocket PC h4150 Series |
| APPLE-1021 | How to Do Everything with Windows Mobile, Frank McPherson; McGraw Hill, 2006 ("McPherson") |
| APPLE-1022 | Master Visually Windows Mobile 2003, Bill Landon, et al.; Wiley Publishing, Inc., 2004 ("Landon") |
| APPLE-1023 | "Stimulating Student Learning with a Novel 'In-House' Pulse Oximeter Design," J. Yao and S. Warren; Proceedings of the 2005 American Society for Engineering Education Annual Conference & Exposition, 2005 ("Yao") |
| APPLE-1024 | US Pub. No. 2008/0194932 ("Ayers") |
| APPLE-1025 | U.S. Patent No. 7,031,728 ("Beyer") |
| APPLE-1026 | US Pub. No. 2007/0145255 ("Nishikawa") |
| APPLE-1027-1030 | RESERVED |
| APPLE-1031 | Scheduling Order, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 37 (April 17, 2020) |
| APPLE-1032 | Stipulation by Apple |

iv

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

APPLE-1033        Telephonic Status Conference, Masimo v. Apple et al., Case
                  8:20-cv-00048, Paper 78 (July 13, 2020)

APPLE-1034        Joseph Guzman, "Fauci says second wave of coronavirus is 'in-
                  evitable'", TheHill.com (Apr. 29, 2020), available at:
                  https://thehill.com/changing-america/resilience/natural-disas-
                  ters/495211-fauci-says-second-wave-of-coronavirus-is

APPLE-1035        "Tracking the coronavirus in Los Angeles County,"
                  LATimes.com (Aug. 20, 2020), available at
                  https://www.latimes.com/projects/california-coronavirus-cases-
                  tracking-outbreak/los-angeles-county/

APPLE-1036        Declaration of Jacob R. Munford

v

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

Apple Inc. ("Petitioner" or "Apple") petitions for *Inter Partes* Review

("IPR") of claims 1-29 ("the Challenged Claims") of U.S. Patent No. 10,588,553

("'553 Patent").  As explained in this Petition, there exists a reasonable likelihood

that Apple will prevail with respect to at least one of the Challenged Claims.

The '553 Patent describes and claims a purported improvement to a "nonin-

vasive optical physiological sensor": a cover with "a single protruding convex sur-

face" that is configured to be located between "at least four" detectors and user tis-

sue, and that is operable to conform user tissue to the surface when the sensor is

worn.  APPLE-1001, 14:3-10, 36:30-41, 44:50-67 (claim 1), FIGS. 1, 14D.  Each

detector "can be implemented using one or more photodiodes, phototransistors, or

the like," "can capture and measure light transmitted from [an] emitter … that has

been attenuated or reflected from the tissue," and can "output a detector signal …

responsive to the light …."  *Id.*, 14:3-10.  Placement of a cover with a protrusion

over the detectors is said to offer multiple benefits; the protrusion may, for exam-

ple, "penetrate[] into the tissue and reduce[] the path length of the light …."  *Id.*,

14:3-10, 24:16-35, 10:61-11:13.

But the claimed sensor was not new.  To the contrary, the '553 Patent was

granted without full consideration to the wide body of applicable prior art.  *See*

*generally* APPLE-1002 (no office actions issued during the prosecution of the ap-

plication from which the '553 Patent issued).  And, as Dr. Thomas Kenny explains

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

in his accompanying declaration with respect to the prior art applied in this Petition, noninvasive optical physiological sensors such as pulse rate detectors and pulse oximeters commonly included covers by the '553 Patent's earliest effective filing date, and a sensor including each feature of the Challenged Claims would have been obvious to a POSITA. APPLE-1003, ¶¶[0040]-[0043]; APPLE-1001, 44:50-47:22.

For example, Mendelson '799 (APPLE-1012) discloses a "sensor for use in an optical measurement device" featuring a sensor housing 17 that accommodates a "light source 12" and an array of twelve "discrete detectors (e.g., photodiodes)." APPLE-1012, Title, Abstract, 9:22-40, 10:16-37, FIGS. 7, 8. And, similar to the '553 Patent, Ohsaki (APPLE-1009) describes an optical sensor that features a cover with a protruding convex surface that is placed "in intimate contact with the surface of the user's skin" when the sensor is worn. APPLE-1009, Title, Abstract, ¶¶[0016], [0017], FIGS. 1, 2. Ohsaki is not alone, as Inokawa (APPLE-1007, APPLE-1008) and other references likewise disclose covers with protruding convex surfaces for use in optical sensors. APPLE-1008, ¶¶14-15, FIGS. 2, 3. And, as Dr. Kenny explains, a POSITA would have found it obvious to utilize such a cover in Mendelson's '799 sensor. APPLE-1003, ¶¶[0040]-[0043], [0078]-[0098].

Accordingly, the Challenged Claims are unpatentable based on teachings set forth in at least the references presented in this Petition. APPLE-1003, ¶¶[0001]-

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

[0325].  Apple respectfully submits that an IPR should be instituted, and that the Challenged Claims should be canceled as unpatentable.

## I.   MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1)

### A. Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1)

Apple Inc. is the real party-in-interest (RPI).

### B. Related Matters Under 37 C.F.R. § 42.8(b)(2)

Patent Owner filed a complaint on January 9, 2020 in the U.S. District Court for the Central District of California (CDCA) (Case No. 8:20-cv-00048) against Apple, alleging infringement by Apple of the '553 patent.  The complaint was served to Apple on January 13, 2020.

This Petition is being filed concurrently with another petition for IPR of the '553 Patent (IPR2020-01537), and with a petition for IPR of related U.S. Patent No. 10,258,265 (IPR2020-01520). [1]  No other petitions for IPR of the '553 Patent have been filed.

---

[1] Pursuant to the Trial Practice Guide, both petitions for IPR of the '553 Patent are being filed with a paper providing a succinct explanation of the differences between the petitions, why the issues addressed by the differences are material, and why the Board should exercise its discretion to institute both petitions.

Exhibit F
Page 310

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

## C. Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3)

Apple provides the following designation of counsel.

| LEAD COUNSEL | BACKUP COUNSEL |
|---|---|
| W. Karl Renner, Reg. No. 41,265<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email: IPR50095-0012IP1@fr.com | Andrew B. Patrick, Reg. No. 63,471<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email: PTABInbound@fr.com |

## D. Service Information

Please address all correspondence and service to the address listed above.

Petitioner consents to electronic service by email at IPR50095-0012IP1@fr.com

(referencing No. 50095-0012IP1 and cc'ing PTABInbound@fr.com, axf-ptab@fr.com and patrick@fr.com.

## II.   PETITIONER HAS STANDING TO REQUEST IPR

Apple certifies that the '553 patent is available for IPR.  The present Petition is being filed within one year of service of a complaint against Apple in *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.).  Apple is not barred or estopped from requesting this review challenging the Challenged Claims on the below-identified grounds.

4

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

## III.   OVERVIEW OF THE '553 PATENT

### A. Brief Description

The system described by the '553 Patent is said to include, in one embodiment, "a noninvasive sensor and a patient monitor communicating with the noninvasive sensor."  APPLE-1001, 2:38-40.  The exemplary data collection system 100 illustrated by the '553 Patent's FIG. 1 (reproduced below) includes "a sensor 101 … that is coupled to a processing device or physiological monitor 109."  *Id.*, 5:35-38, 11:47-49.



**FIG. 1**

APPLE-1001, FIG. 1.

5

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

"The non-invasive sensor may include different architectures," and the "patient monitor" with which the sensor communicates may "include a display device," and "a network interface communicating with any one or combination of a computer network, a handheld computing device, a mobile phone, the Internet, or the like." *Id.*, 2:45-48.

The '553 Patent describes several potential sensor architectures with respect to FIGS. 14A-14I.  APPLE-1001, 6:38-49, 35:36-38:20.  For example, the '553 Patent's FIG. 14C (reproduced below) illustrates a sensor featuring a "detector sub-mount 1400*c* … positioned under [a] protrusion 605*b* in a detector subassembly 1450 illustrated in FIG. 14D" (also reproduced below).



APPLE-1001, FIGS. 14C, 14D.

6

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

As illustrated in FIG. 14D, a housing 1430 including "a transparent cover 1432, upon which the protrusion 605b is disposed" surrounds each of the detectors 1410*c*.  APPLE-1001, 36:30-41.

## B.  Level of Ordinary Skill in the Art

A person of ordinary skill in the art relating to the subject matter of the '553 Patent as of July 3, 2008 ("POSITA") would have been a person with a working knowledge of physiological monitoring technologies.  The person would have had a Bachelor of Science degree in an academic discipline emphasizing the design of electrical, computer, or software technologies, in combination with training or at least one to two years of related work experience with capture and processing of data or information, including but not limited to physiological monitoring technologies.  APPLE-1003, ¶¶[0001]-[0018], [0020]-[0021].  Alternatively, the person could have also had a Master of Science degree in a relevant academic discipline with less than a year of related work experience in the same discipline.  *Id*.

## C.  Claim Construction

Petitioner submits that all claim terms should be construed according to the Phillips standard.  *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); 37 C.F.R. § 42.100.  Here, based on the evidence below and the prior art's description of the claimed elements being similar to that of the '554 patent specification, no formal claim constructions are necessary in this proceeding because "claim terms

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

need only be construed to the extent necessary to resolve the controversy." *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011). APPLE-1003, ¶[0022].

Furthermore, Apple is not conceding that each challenged feature satisfies all statutory requirements such as 35 U.S.C. § 112. As this is an IPR petition, Apple is pursuing prior art-based grounds. Apple is not waiving any arguments concerning other grounds that can only be raised in district court.

## IV. THE CHALLENGED CLAIMS ARE UNPATENTABLE

### A. Asserted Grounds and References

The Challenged Claims are invalid over the grounds identified in the table below, as further explained in this Petition. Accompanying explanations and support are provided in the Declaration of Dr. Thomas Kenny (APPLE-1003). APPLE-1003, ¶¶[0001]-[0325].

| Ground | Claims | Basis for Rejection |
|--------|--------|---------------------|
| 1 | **1-3, 5, 6, 9-18, 20-24, and 29** | Obvious (§ 103) based on Mendelson '799 in combination with Ohsaki |
| 2 | **4, 18, and 24** | Obvious (§ 103) based on Mendelson '799 in combination with Ohsaki and Schulz |
| 3 | **25** | Obvious (§ 103) based on Mendelson '799 in combination with Ohsaki and Griffin |
| 4 | **7 and 19** | Mendelson '799 in combination with |

8

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

| Ground | Claims | Basis for Rejection |
|---|---|---|
| | | Ohsaki and Mendelson 2006 |
| **5** | **8 and 26-28** | Mendelson '799 in combination with Ohsaki, Mendelson 2006, and Griffin |

Each applied reference pre-dates U.S. provisional application 61/078,207, filed on July 3, 2008, which is the earliest filed application from which the '553 Patent claims priority.  Petitioner does not take a position as to whether the '553 Patent is entitled to the priority date of July 3, 2008 (hereinafter "Critical Date" or "Earliest Effective Filing Date"), but has applied references that pre-date the Critical Date and qualify as prior art, as shown in the table below. APPLE-1003, ¶[0019].

| Reference | | Date | Section |
|---|---|---|---|
| Mendelson '799 | US 2002/0188210 | 12/12/2002 (published) | 102(b) |
| Ohsaki | US 2001/0056243 | 12/27/2001 (published) | 102(b) |
| Schulz | US 2004/0054291 | 03/18/2004 (published) | 102(b) |
| Griffin | US 7,658,613 | 01/16/2007 (filed) | 102(e) |
| Mendelson 2006 | (NPL) | 09/2006 (published) | 102(b) |

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

## B. GROUND 1: Claims 1-6, 9-18, 20-24, and 29 are obvious over Mendelson '799 and Ohsaki

### 1. Overview of Mendelson '799

Mendelson '799 is titled "Pulse Oximeter and Method of Operation" and, similar to the '553 Patent, it describes a "sensor for use in an optical measurement device and a method for non-invasive measurement of a blood parameter." AP-PLE-1012, Title, Abstract; *see* APPLE-1036.

In more detail, Mendelson '799's FIG. 7 (reproduced below) illustrates an optical sensor 10 that includes a "light source 12 composed of three closely spaced light emitting elements…generating light of three different wavelengths," "an array of discrete detectors (e.g., photodiodes)," including "a 'far' detector 16 and a 'near' detector 18, arranged in two concentric ring-like arrangements…surrounding the light emitting elements; and a light shield 14." *Id.*, 9:22-33. "All these elements are accommodated in a sensor housing 17," with "[t]he light shield 14 [being] positioned between the photodiodes and the light emitting elements" so as to prevent[] direct optical coupling between them, thereby maximizing the fraction of backscattered light passing through the arterially perfused vascular tissue in the detected light." *Id.*, 9:33-40.

10

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553



APPLE-1012, FIG. 7 (annotated)

Mendelson '799's FIG. 7 illustrates sensor housing 17 as encircling the various components that sensor housing 17 is said to accommodate, but does not present sensor housing 17 in profile.  *See* APPLE-1012, 9:23-40, Abstract, FIG. 7; APPLE-1003, ¶¶[0055]-[0066].  As explained below, to the extent that Mendelson '799 does not explicitly disclose sensor housing 17 as including an opaque wall that circumscribes the accommodated components, a POSITA would have found it obvious to connect, to the illustrated portion of sensor housing 17, an opaque wall configured to circumscribe the array of discrete detectors included in detector rings 16 and 18, both to shield the detectors from ambient light, and protect the detectors from external forces.  *Id.*, 9:24-40, FIG. 7; APPLE-1003, ¶[0057].

11

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

In more detail, Mendelson '799 does not present light shield 14 in profile, but, as noted above, it describes light shield 14 as being "positioned between the photodiodes and the light emitting elements," so as to "prevent[] direct optical coupling between them, thereby maximizing the fraction of backscattered light passing through the arterially perfused vascular tissue in the detected light." APPLE-1012, 9:35-40.

From this and related description, a POSITA would have been motivated to connect an opaque wall to the portion of sensor housing 17 that Mendelson '799 illustrates as circumscribing detectors 16 and 18, so as to shield the detectors from ambient light, and protect the detectors from external forces. APPLE-1003, ¶[0059]; APPLE-1012, Abstract, 9:22-40, 14:1-17, FIG. 7; *see also* APPLE-1019, 79 ("the pulse oximeter designer must…limit the light reaching the photodiode to that which has traveled through tissue containing arterial blood"), 86 ("The probe … must be protected from ambient light"), 94; *see* APPLE-1036.

Indeed, several references that are mentioned within Mendelson '799 itself depict and describe pulse oximeter sensors that feature detectors housed within surrounding walls. APPLE-1003, ¶[0060]; APPLE-1012, 4:13-22 (describing Mendelson 1988 and Mendelson 1991); APPLE-1017, 2-3, 6, FIG. 1; *see* APPLE-1036; APPLE-1018, 1, 2, FIG. 2; *see* APPLE-1036.

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

Yitzhak Mendelson's 1988 paper "Design and Evaluation of a New Reflectance Pulse Oximeter Sensor," for example, describes a sensor in which "LEDs and photodiode chips were mounted…on a ceramic substrate…that was housed in a standard…microelectronic package (AIRPAX, Cambridge, Maryland)…." APPLE-1017, 2-3, 6.  As shown in Mendelson 1988's FIG. 2 (reproduced below), the AIRPAX housing includes walls that surround each of the sensor's six photodiodes, and that are operably connected to the ceramic substrate on which the photodiodes are arranged.  APPLE-1003, ¶[0061], FIG. 2.

13



APPLE-1017, FIG. 2 (annotated excerpt).

Similarly, Yitzhak Mendelson's 1991 paper "Skin Reflectance Pulse Oximetry: In Vivo Measurements from the Forearm and Calf" describes a sensor in which a "multiple photodiode array…is arranged concentric with the LEDs" so as to "maximize[] the amount of backscattered light that is detected by the sensor."  APPLE-1018, 1-3, FIG. 1; APPLE-1003, ¶[0062]-[0063].  As shown in Mendelson 1991's FIG. 1 (reproduced below), the sensor features a silicone rubber wall that

14

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

circumscribes each of the six detectors included in the photodiode array, and that is operably connected to the substrate on which the detectors are arranged.   APPLE-1003, ¶[0063], FIG. 1.



APPLE-1018, FIG. 1 (annotated)

Similar to these and other known configurations in which an opaque wall included within an optical sensor's housing surrounds the photodiodes accommodated by that housing, and thereby shields the photodiodes from both external

15

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

forces and ambient light, a POSITA would have connected an opaque wall configured to circumscribe detectors 16 and 18 to the planar substrate provided by Mendelson '799's sensor housing 17, as shown below in the section view of the sensor that would have resulted.  APPLE-1003, ¶[0064]; APPLE-1012, 4:13-22, 9:33-40, FIG. 7; APPLE-1017, 2-3, 6, FIG. 1; APPLE-1018, 1, 2, FIG. 2; APPLE-1019, 79, 86, 94; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2; APPLE-1006, ¶¶[0023], [0024], FIG. 1(b) (illustrating an opaque wall that is connected to a substrate and configured to circumscribe detectors).



APPLE-1012, FIG. 7 (annotated, with additional section view)

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

As noted above, Mendelson '799 describes its sensor as being configured "for use in an optical measurement device."  APPLE-1012, Abstract, 8:37-41, 9:22-40, 10:15-22; FIGS. 7, 8; APPLE-1003, ¶[0064].  Mendelson '799's FIG. 8 (reproduced below) "illustrates a block-diagram of a pulse oximeter 20 utilizing…sensor 10" (*Id.*, 8:39-40, 10:16-17):



APPLE-1012, FIG. 8 (annotated)

As shown, "[t]he pulse oximeter typically includes a control unit 21, which is composed of an electronic block 22 including A/D and D/A converters connectable to the sensor 10, a microprocessor 24 for analyzing measured data, and a display 26 for presenting measurement results."  *Id.*, 10:16-22; APPLE-1003, ¶¶[0055]-[0066].

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

## 2. Overview of Ohsaki

Ohsaki is titled "Wristwatch-type human pulse wave sensor attached on back side of user's wrist" and, as illustrated in Ohsaki's FIG. 1 (reproduced below), is generally directed to a wrist-worn "pulse wave sensor" 1 featuring a "detecting element" 2 and a translucent board 8 with a convex surface that is placed "in intimate contact with the surface of the user's skin" when the sensor is worn. APPLE-1009, Title, Abstract, ¶¶[0016], [0017].



APPLE-1009, FIG. 1 (annotated)

In more detail, and as illustrated in Ohsaki's FIG. 2 (reproduced below), Ohsaki's "detecting element" 2 includes "a package 5, a light emitting element 6 (e.g., LED), a light receiving element 7 (e.g., PD), and a translucent board 8." APPLE-1009, ¶[0017]. "The package 5 has an opening and includes a" substrate in the form of "circuit board 9," on which light emitting element 6 and

18

light receiving element 7 are arranged.  *Id.*; APPLE-1003, ¶¶[0067]-[0069].



APPLE-1009, FIG. 2 (annotated)

Translucent board 8 is "attached to the opening of the package 5" and is arranged such that, when the sensor is worn "on the user's wrist…the convex surface of the translucent board…is in intimate contact with the surface of the user's skin"; this contact is said to prevent slippage, which increases the strength of the signals obtainable by Ohsaki's sensor.  APPLE-1009, ¶¶[0009], [0010], [0015], [0017], [0023]-[0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0067]-[0069].

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

### 3.  Combination of Mendelson '799 and Ohsaki

As explained above in Section IV.B.1, Mendelson '799 discloses a sensor featuring a sensor housing 17 that accommodates a "light source 12 composed of three closely spaced light emitting elements (e.g., LEDs or laser sources)," an "array of discrete detectors (e.g., photodiodes)" including a "'far' detector 16 and a 'near' detector 18," and a "light shield 14" that is positioned between the photodiodes and the light emitting elements." *Id.*, APPLE-1012, Title, Abstract, 9:22-40, 10:16-37, FIGS. 7, 8.

Further, to the extent that Mendelson '799 does not explicitly disclose sensor housing 17 as including an opaque wall that circumscribes the accommodated components, a POSITA would have found it obvious to connect, to the portion of sensor housing 17 illustrated in Mendelson '799's FIG. 7 (reproduced below), an opaque wall configured to circumscribe the array of discrete detectors included in detector rings 16 and 18.  *Id.*, 9:24-40, FIG. 7; APPLE-1003, ¶¶[0078]-[0098].

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553



APPLE-1012, FIG. 7 (annotated, with additional section view)

As detailed below, a POSITA would have been motivated to combine Mendelson '799 and Ohsaki (hereinafter "Mendelson-Ohsaki combination" or "Mendelson-Ohsaki") to obtain additional benefits.  APPLE-1003, ¶¶[0078]-[0080].

### (a)   *Light permeable cover comprising a protruding convex surface*

Mendelson '799 does not describe a cover configured to be located between user tissue and the components accommodated within sensor housing 17 when the sensor is worn, but a POSITA would have recognized that a light permeable cover with a protruding convex surface would improve adhesion between the sensor and

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

the user's tissue, improve detection efficiency, and protect the elements within sensor housing 17.  APPLE-1003, ¶[0081]; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; *see also* APPLE-1008, ¶¶14-15, FIG. 2 (depicting a convex lens that enhances signal strength and protects a LED and photodetector); APPLE-1024, ¶¶[0033], [0035], FIG. 6 (depicting an LED featuring a convex lens).

Indeed, by the Critical Date, noninvasive optical physiological sensors commonly employed covers.  *See*, *e.g.*, APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b) (depicting a wrist-worn "pulse wave sensor" including a transparent cover located between photodetectors and the user's skin, the cover being said to improve adhesion, "thereby further improving…detection efficiency"); APPLE-1008, ¶¶14-15, FIGS. 1, 2; APPLE-1003, ¶[0082].

For example, and as described above in Section IV.B.2, Ohsaki discloses a wrist-worn "pulse wave sensor" that includes a light permeable convex cover – "translucent board 8" – that is configured to be located between user tissue and a detector when the sensor is worn, where the cover comprises a single protruding convex surface operable to conform tissue of the user, and where a wall operably connects to a substrate and to the cover.  *See* APPLE-1009, ¶¶ [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0067]-[0069], [0083].

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

In more detail, and as shown in Ohsaki's FIG. 2 (reproduced below), translucent board 8 is "attached to the opening of the package 5" and is arranged such that, when the sensor is worn "on the user's wrist…the convex surface of the translucent board…is in intimate contact with the surface of the user's skin"; this contact is said to prevent slippage, which increases the strength of the signals obtainable by Ohsaki's sensor.  APPLE-1009, ¶¶ [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶[0081]-[0084].



APPLE-1009, FIG. 2 (annotated)

As Ohsaki explains with reference to FIGS. 4A and 4B (reproduced below), "if the translucent board 8 has a flat surface, the detected pulse wave is adversely affected by the movement of the user's wrist as shown in FIG. 4B," but that if "the

Exhibit F
Page 330

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

translucent board 8 has a convex surface…variation of the amount of the reflected light…that reaches the light receiving element 7 is suppressed." *Id.*, ¶[0025]. The convex surface is also said to prevent "disturbance light from the outside" from penetrating translucent board 8. *Id.*, ¶[0025]. Thus, when a convex cover is used, "the pulse wave can be detected without being affected by the movement of the user's wrist 4 as shown in FIG. 4A." *Id.*



APPLE-1009, FIGS. 4A, 4B.

From this and related description, a POSITA would have understood that the translucent board 8 that is operably connected to the walls of Ohsaki's package 5

Exhibit F
Page 331

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

improves adhesion between Ohsaki's sensor and the user's skin, improves detection efficiency, and provides protection to the elements accommodated within package 5.  APPLE-1003, ¶¶[0081]-[0086].

Accordingly, Ohsaki would have motivated a POSITA to add a light permeable protruding convex cover to Mendelson '799's sensor, to improve adhesion between the sensor and the user's tissue, to improve detection efficiency, and to provide additional protection to the elements accommodated within sensor housing 17. APPLE-1003, ¶[0087]; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

In more detail, and as shown below in the section view of the Mendelson-Ohsaki sensor, the POSITA would have added a transparent convex cover to sensor 10, the cover being located between tissue of the user and the array of detectors 16 and 18 when worn.  APPLE-1003, ¶[0088]; APPLE-1012, Abstract, 9:22-10:30, FIG. 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; *see also* APPLE-1008, ¶¶14-15, FIGS. 1, 2.  To obtain the advantages described by Ohsaki, the POSITA would have configured the cover to be sufficiently rigid to conform tissue of the user to at least a portion of the cover's surface when worn.  APPLE-1003, ¶[0088]; APPLE-1009, ¶[0025]; APPLE-1009, ¶[0030], FIG. 1(b).  And, consistent with Ohsaki's configuration, the POSITA would have configured Mendel-

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

son '799's circumscribing wall to operably connect, on one side, to the planar substrate on which detectors 16 and 18 are arranged and, on an opposite side, to the convex cover. APPLE-1003, ¶[0088]; APPLE-1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, ¶[0017], FIG. 2.



APPLE-1012, FIG. 7 (annotated, with additional section view)

The above-described modification would require only routine knowledge of sensor design and assembly. APPLE-1003, ¶¶[0089]-[0090]. Indeed, the modification would have amounted to nothing more than the use of a known technique to improve similar devices in the same way, and combining prior art

26

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

elements according to known methods to yield predictable results—improved adhesion of the sensor to the user's skin, and improved signal strength. *KSR v. Teleflex*, 550 U.S. 398, 417 (2007); APPLE-1003, ¶[0090].  Furthermore, the elements of the Mendelson-Ohsaki sensor would each perform functions they had been known to perform prior to the combination—Ohsaki's translucent board 8 would simply be placed over the components accommodated within Mendelson '799's sensor housing 17, and would perform the same function as taught by Ohsaki.  APPLE-1003, ¶¶[0081]-[0090]; APPLE-1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

*(b)*     ***Strap configured to facilitate attachment of part of the physiological monitoring device to a user's arm***

As explained above with respect to Section IV.B.1, Mendelson '799 depicts and describes "a pulse oximeter 20 utilizing … sensor 10."   APPLE-1012, Abstract, 9:22-10:30, FIGS. 7, 8.

As Mendelson '799 acknowledges, "reflection-mode or backscatter type pulse oximetry…allows for measuring SaO2 from multiple convenient locations on the body (e.g. the head, torso, or upper limbs)," and several references that are mentioned within Mendelson '799 depict and describe pulse oximetry devices in

27

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

which at least part of the device is configured to be strapped to the arm of a user. APPLE-1012, 2:14-27, 4:13-22; APPLE-1018, 1-3, FIG. 2.

Similarly, and as shown in Ohsaki's FIG. 1 (reproduced below), Ohsaki explains that the detecting element of its "wristwatch-type human pulse wave sensor" "is attached on the back side of the user's wrist by a dedicated belt [10] so that the convex surface of the translucent member is in intimate contact with the surface of the user's skin." APPLE-1009, ¶¶[0009], [0018], FIG. 1.



APPLE-1009, FIG. 1 (annotated)

As Ohsaki explains, [t]he detecting element 2 is fixed on the user's wrist 4 by a dedicated belt 10," which "may be made from elastic material so that regular pressure is applied to the user's wrist," which is said to prevent "disturbance light from the outside" from penetrating translucent board 8. APPLE-1009, ¶[0018].

28

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

To obtain the advantages described by Ohsaki, a POSITA would have been motivated to incorporate a strap into Mendelson '799's pulse oximetry system, configured to attach at least sensor 10 to the user's arm (e.g., at the wrist).  APPLE-1003, ¶¶[0091]-[0098]; APPLE-1012, 2:14-27, 4:13-22; APPLE-1018, 1, 2, FIG. 2; APPLE-1009, ¶¶[0007], [0018], FIG. 1; *see also* APPLE-1006, ¶¶[0007], [0008], [0023], FIGS. 1(a), 1(b).

The above-described modification would have amounted to nothing more than the use of a known technique to improve similar devices in the same way, and combining prior art elements according to known methods to yield predictable results—improved adhesion of the sensor to the user's skin, and improved signal strength.  *KSR v. Teleflex*, 550 U.S. 398, 417 (2007); APPLE-1003, ¶¶[0097]-[0098].  Furthermore, the elements of the Mendelson-Ohsaki sensor would each perform functions they had been known to perform prior to the combination—Ohsaki's belt 10 would simply be attached to Mendelson '799's sensor housing 17, and would perform the same function as taught by Ohsaki. APPLE-1003, ¶¶[0091]-[0098]; APPLE-1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

## 4.  Analysis

### Claim 1

29

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

*[1pre] A noninvasive optical physiological sensor comprising:*

As illustrated below, and as described above with respect to Sections

IV.B.1-3, the Mendelson-Ohsaki combination would have included an optical sen-

sor 10 configured "for use in an optical measurement device," as part of "a method

for non-invasive measurement of a blood parameter."  APPLE-1003, ¶¶[0055]-

[0069], [0078]-[0098], [0099]-[0103]; APPLE-1012, Abstract, 4:13-22, 7:25-8:41,

9:22-10:30, FIGS. 7, 8; APPLE-1009, Abstract, ¶¶[0003], [0008], [0015]-[0017],

[0020], [0025], FIGS. 1, 2, 4A, 4B.



APPLE-1012, FIG. 7 (annotated, with additional section view)

30

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

Mendelson '799's FIG. 8 (reproduced below) "illustrates a block-diagram of a pulse oximeter 20 utilizing … sensor 10":



APPLE-1012, FIG. 8 (annotated)

Accordingly, [1pre] would have been obvious over Mendelson-Ohsaki.  APPLE-1003, ¶¶[0099]-[0103].


### [1a] a plurality of emitters configured to emit light into tissue of a user;

As explained above with respect to [1pre] and Sections IV.B.1-3, the Mendelson-Ohsaki combination would have included "a light source 12 composed of three closely spaced light emitting elements (e.g., LEDs or laser sources) 12*a*, 12*b* and 12*c* generating light of three different wavelengths, respectively …."  APPLE-1003, ¶¶[0055]-[0069], [0078]-[0098], [0104]-[0107]; APPLE-1012, Abstract, 2:14-28, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 3, 7, 8.

31

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

In more detail, the light emitting elements 12*a*, 12*b*, and 12*c* illustrated in Mendelson '799's FIG. 7 (reproduced below) are "adapted to emit radiation at pre-determined frequencies," and the "detector assembly is adapted to detect reflected radiation … and to generate respective signals" that "are used to determine the parameter of the blood."  APPLE-1012, Abstract, 9:22-40, FIG. 7; APPLE-1003, ¶[0105].



APPLE-1012, FIG. 7 (annotated, with additional section view)

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

Accordingly, 1[a] would have been obvious over Mendelson-Ohsaki.  AP-PLE-1003, ¶¶[0104]-[0107].

> **[1b] at least four detectors, wherein at least one of the at least four detectors is configured to detect light that has been attenuated by tissue of the user, and wherein the at least four detectors are arranged on a substrate;**

As explained above with respect to [1pre], [1a], and Sections IV.B.1-3, the Mendelson-Ohsaki combination would have included "an array of discrete detectors (e.g., photodiodes)," including "a 'far' detector 16 and a 'near' detector 18, arranged in two concentric ring-like arrangements surrounding…light emitting elements…."  APPLE-1003, ¶¶[0055]-[0069], [0078]-[0098], [0108]-[0113]; APPLE-1012, Abstract, 2:14-28, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0017], [0022], FIG. 2.

In more detail, each of the twelve discrete photodiodes included in the detector assembly illustrated in Mendelson '799's FIG. 7 (reproduced below) are "adapted to detect reflected radiation…and to generate respective signals" that "are used to determine the parameter of the blood."  APPLE-1012, Abstract, 9:22-48, FIG. 7; APPLE-1003, ¶[0109].

33

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553



APPLE-1012, FIG. 7 (annotated, with additional section view)

As Mendelson '799 explains, traditional "reflection-mode or backscatter type pulse oximetry" sensors of the type "shown in FIG. 3" (reproduced below) feature "LEDs and [a] photodetector [that] are both mounted side-by-side next to each other on the same planar substrate," which "allows for measuring $SaO_2$ from multiple convenient locations on the body...." *Id.*, 2:14-28.

34

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553



APPLE-1012, FIG. 3.

Similarly, a POSITA would have understood that, although the sensor de-picted in Mendelson '799's FIG. 7 features two concentric rings of discrete photo-detectors that are arranged in a radially-symmetric manner about central light emit-ting elements, the photodetectors and the light emitting elements are arranged on the same planar substrate. *See id.*, 9:22-10:30, FIG. 7; APPLE-1003, ¶¶[0110]-[0111]; APPLE-1017, 2-3, 6, FIG. 2; APPLE-1018, 1-3, FIG. 1.  Indeed, Mendel-

35

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

son '799 describes the FIG. 7 sensor as featuring a light shield 14 "positioned between the photodiodes and the light emitting elements," which is said to "prevent[] direct optical coupling between them, thereby maximizing the fraction of backscattered light passing through the arterially perfused vascular tissue in the detected light."  APPLE-1012, 9:33-40.

Accordingly, [1b] would have been obvious over Mendelson-Ohsaki.  APPLE-1003, ¶¶[0108]-[0113].

### *[1c] a wall configured to circumscribe at least the at least four detectors; and*

As explained above with respect to [1pre]-[1b] and Sections IV.B.1-3, the Mendelson-Ohsaki combination would have included an opaque wall configured to circumscribe the array of discrete detectors included in detector rings 16 and 18. APPLE-1003, ¶¶[0055]-[0069], [0078]-[0098], [0114]-[0126]; APPLE-1012, Abstract, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8.

In more detail, Mendelson '799's FIG. 7 (reproduced below) illustrates sensor housing 17 as encircling the "concentric ring-like arrangements" of discrete detectors included in detectors 16 and 18.  *See* APPLE-1012, 9:23-40, Abstract, FIG. 7; APPLE-1003, ¶[0115].

36

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553



APPLE-1012, FIG. 7 (annotated)

As explained above in Sections IV.B.1-3, and as shown below, a POSITA would have found it obvious to connect, to the illustrated portion of sensor housing 17, an opaque wall configured to circumscribe the array of discrete detectors included in detector rings 16 and 18.  APPLE-1003, ¶¶[0116]-[0121]; APPLE-1012, 4:13-22, 9:33-40, FIG. 7; APPLE-1017, 2-3, 6, FIG. 1; APPLE-1018, 1, 2, FIG. 2; APPLE-1019, 79, 86, 94; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2; APPLE-1006, ¶¶[0023], [0024], FIG. 1(b).

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553



APPLE-1012, FIG. 7 (annotated, with additional section view)

Additionally, as shown in Ohsaki's FIG. 2, Ohsaki discloses that its "detecting element 2 comprises a package 5" that includes a wall that surrounds, or circumscribes, its light emitting element 6 and light receiving element 7.  The opaque wall has an opening over which "a translucent board…transparent to light" is placed.  APPLE-1009, ¶[0017]; *see also* APPLE-1013, ¶[0040], FIGS. 6A-B; APPLE-1003, ¶¶[0122]-[0125].

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

## FIG. 2



APPLE-1009, FIG. 2 (annotated)

Accordingly, [1c] would have been obvious over Mendelson-Ohsaki.  AP-PLE-1003, ¶¶[0114]-[0126].


**[1d] a cover configured to be located between tissue of the user and the at**

**least four detectors when the noninvasive optical physiological sensor**

**is worn by the user, wherein the cover comprises a single protruding**

**convex surface operable to conform tissue of the user to at least a por-**

**tion of the single protruding convex surface when the noninvasive opti-**

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

*cal physiological sensor is worn by the user, and wherein the wall operably connects to the substrate and the cover.*

As explained above with respect to [1pre]-[1c] and Sections IV.B.1-3, and as shown below, the Mendelson-Ohsaki combination would have included a transparent cover with a single protruding convex surface that is configured to be located between user tissue and the array of discrete detectors included in detectors 16 and 18 when sensor 10 is worn, such that user tissue conforms to the surface.  APPLE-1003, ¶¶[055]-[0069], [0078]-[0098], [0127]-[0136]; APPLE-1012, Abstract, 4:13-22, 7:25-8:41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; *see also* APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1008, ¶¶14-15, FIGS. 1, 2; APPLE-1024, ¶¶[0033], [0035], FIG. 6.

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553



APPLE-1012, FIG. 7 (annotated, with additional section view)

As explained above with respect to [1pre]-[1c] and Sections IV.B.1-3, and as shown above, the Mendelson-Ohsaki combination would have included an opaque circumscribing wall that would have operably connected, on one side, to the planar substrate on which detectors 16 and 18 are arranged and, on an opposite side, to the convex cover.  APPLE-1003, ¶¶[; APPLE-1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, ¶[0017], FIG. 2.

Exhibit F
Page 348

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

Accordingly, [1d] would have been obvious over Mendelson-Ohsaki.  AP-
PLE-1003, ¶¶[0127]-[0136].


### Claim 2

*[2] The noninvasive optical physiological sensor of claim 1, wherein the wall
operably connects to the substrate on one side and operably connects to
the cover on an opposite side.*

Mendelson-Ohsaki renders obvious [2].  *Supra* [1pre]-[1d] and Sections
IV.B.1-3.  *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0138]; APPLE-1012,
Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009,
¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.


### Claim 3

*[3] The noninvasive optical physiological sensor of claim 1 wherein the at
least four detectors are arranged evenly spaced from one another.*

Mendelson-Ohsaki renders obvious [3].  APPLE-1003, ¶¶[0139]-[0140].  As
explained above with respect to [1pre]-[1d] and Sections IV.B.1-3, and as shown
below, the Mendelson-Ohsaki combination would have included at least four de-
tectors arranged evenly spaced from one another on a substrate.  APPLE-1003,
¶¶[0055]-[0069], [0078]-[0138], APPLE-1012, Abstract, 7:25-8:13, 8:37-41, 9:22-

42

10:30, FIGS. 3, 7.



APPLE-1012, FIG. 7 (annotated, with additional section view)

*Claim 5*

*[5] The noninvasive optical physiological sensor of claim 1, wherein at least part of the cover is light permeable.*

Mendelson-Ohsaki renders obvious [5].  APPLE-1003, ¶¶[0141]-[0143].  As explained above with respect to [1pre]-[1d] and Sections IV.B.1-3, the Mendelson-Ohsaki combination would have included a transparent protruding convex cover.

43

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

APPLE-1003, ¶¶[0055]-[0069], [0078]-[0138]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1006, ¶[0030], FIG. 1(b).

### Claim 6

**[6] The noninvasive optical physiological sensor of claim 5, wherein the cover is configured to allow light to reach at least one of the at least four detectors.**

Mendelson-Ohsaki renders obvious [6].  APPLE-1003, ¶¶[0144]-[0146].  As explained above with respect to [1pre]-[1d], [5], and Sections IV.B.1-3, the Mendelson-Ohsaki combination would have included twelve discrete detectors "adapted to detect reflected radiation" and a transparent protruding convex cover configured to allow light to reach each of the detectors.  APPLE-1003, ¶¶[0055]-[0069], [0078]-[0136], [0141]-[0143]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1006, ¶[0030], FIG. 1(b).

### Claim 9

**[9] The noninvasive optical physiological sensor of claim 1, wherein the attenuated light is reflected by the tissue.**

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

Mendelson-Ohsaki renders obvious [9].  APPLE-1003, ¶¶[0147]-[0148].  As explained above with respect to [1pre]-[1d], the Mendelson-Ohsaki combination would have included detectors that are configured to detect attenuated light that has been reflected by the user's tissue.  APPLE-1003, ¶¶[0099]-[0136]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 3, 7, 8.

### *Claim 10*

### *[10pre] An optical physiological measurement sensor comprising:*

As illustrated below, and as explained above with respect to [1pre]-[1d] and Sections IV.B.1-3, the Mendelson-Ohsaki combination would have included an optical sensor 10 configured "for use in an optical measurement device," as part of "a method for non-invasive measurement of a blood parameter."  APPLE-1003, ¶¶[0055]-[0069], [0078]-[0136]; APPLE-1012, Abstract, 4:13-22, 7:25-8:41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, Abstract, ¶¶[0003], [0008], [0015]-[0017], [0020], [0025], FIGS. 1, 2, 4A, 4B.

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553



APPLE-1012, FIG. 7 (annotated, with additional section view)

Mendelson '799's FIG. 8 (reproduced below) "illustrates a block-diagram of a pulse oximeter 20 utilizing…sensor 10":

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553



APPLE-1012, FIG. 8 (annotated)

Accordingly, [10pre] would have been obvious over Mendelson-Ohsaki.

APPLE-1003, ¶¶[0149]-[0151].

### [10a] a plurality of emitters configured to emit light into tissue of a user;

Mendelson-Ohsaki renders obvious [10a]. *Supra* [1pre]-[1d] and Sections

IV.B.1-3. *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0136], [0152]-[0153];

APPLE-1012, Abstract, 2:14-28, 4:13-22, 7:25-8:41, 9:22-10:30, FIGS. 3, 7, 8;

APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.  Mendelson '799 ex-

plains, for example, that sensor 10 includes a "light source 12 composed of three

closely spaced light emitting elements (e.g., LEDs or laser sources)."  APPLE-

1012, 9:22-40, FIG. 7.

47

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

### *[10b] a substrate including a planar surface;*

As explained above with respect to [1pre]-[1d] and Sections IV.B.1-3, and as shown below, the Mendelson-Ohsaki combination would have included a substrate including a planar surface.  APPLE-1003, ¶¶[0055]-[0069], [0078]-[0136]; APPLE-1012, Abstract, 2:14-28, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 3, 7, 8.



APPLE-1012, FIG. 7 (annotated, with additional section view)

Accordingly, [10b] would have been obvious over Mendelson-Ohsaki.  APPLE-1003, ¶¶[0154]-[0155].

### [10c] at least four detectors operably arranged on the planar surface of the substrate in a pattern;

As explained above with respect to [1pre]-[1d], and as shown below, the Mendelson-Ohsaki combination would have included twelve discrete detectors that are operably arranged on the planar surface of the sensor's substrate in a radially-symmetric pattern around central light source 12. APPLE-1003, ¶¶[0055]-[0069], [0078]-[0136]; APPLE-1012, Abstract, 2:14-28, 4:13-15, 7:25-8:41, 9:22-10:30, FIGS. 7, 8.



APPLE-1012, FIG. 7 (annotated, with additional section view)

Accordingly, [10c] would have been obvious over Mendelson-Ohsaki.  AP-PLE-1003, ¶¶[0156]-[0158].


**[10d] a cover comprising a single protruding convex surface; and**

Mendelson-Ohsaki renders obvious [10d].  *Supra* [1pre]-[1d], [10a]-[10c], and Sections IV.B.1-3.  *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0136], [0152]-[0160]; APPLE-1012, Abstract, 4:13-22, 7:25-8:41, 9:22-10:30, FIGS. 3, 7, 8; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.


**[10e] a wall that surrounds the at least four detectors, wherein the wall operably connects to the substrate and the cover.**

Mendelson-Ohsaki renders obvious [10e].  *Supra* [1pre]-[1d], [10a]-[10d], and Sections IV.B.1-3.  *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0162]; APPLE-1012, Abstract, 4:13-22, 7:25-8:41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.


**Claim 11**

**[11] The optical physiological measurement sensor of claim 10, wherein the cover is operable to conform tissue of the user to at least a portion of**

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

*the single protruding convex surface when the optical physiological*

*measurement sensor is worn by the user.*

Mendelson-Ohsaki renders obvious [11].  *Supra* [1pre]-[1d], [10pre]-[10e],

and Sections IV.B.1-3.  *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0136],

[0149]-[0166]; APPLE-1012, Abstract, 4:13-22, 7:25-8:41, 9:22-10:30, FIGS. 7, 8;

APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

*Claim 12*

*[12] The optical physiological measurement sensor of claim 10, wherein at*

*least a portion of the cover is sufficiently rigid to be operable to con-*

*form tissue of the user to at least a portion of a shape of the cover.*

Mendelson-Ohsaki renders obvious [12].  *Supra* [1pre]-[1d], [10pre]-[10e],

and Sections IV.B.1-3.  *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0136],

[0149]-[0162], [0167]-[0170]; APPLE-1012, Abstract, 4:13-22, 7:25-8:41, 9:22-

10:30, FIGS. 7, 8; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2,

4A, 4B.

*Claim 13*

*[13] The optical physiological measurement sensor of claim 10, wherein the*

*cover is configured to be positioned between the at least four detectors*

51

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

*and tissue of a user when the optical physiological measurement sensor*

*is worn by the user.*

Mendelson-Ohsaki renders obvious [13]. *Supra* [1pre]-[1d], [10pre]-[10e], and Sections IV.B.1-3. *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0136], [0149]-[0162], [0171]-[0174]; APPLE-1012, Abstract, 4:13-22, 7:25-8:41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

## Claim 14

*[14] The optical physiological measurement sensor of claim 10, wherein the*

*wall comprises an opaque surface.*

Mendelson-Ohsaki renders obvious [14]. *Supra* [1pre]-[1d], [10pre]-[10e], and Sections IV.B.1-3. *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0136], [0149]-[0162], [0175]-[0176]; APPLE-1012, Abstract, 4:13-22, 7:25-8:41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2; APPLE-1017, 2-3, 6, FIG. 1; APPLE-1018, 1, 2, FIG. 2.

## Claim 15

*[15] The optical physiological measurement sensor of claim 10, wherein the*

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

*wall operably connects to the substrate on one side and operably connects to the cover on the other side.*

Mendelson-Ohsaki renders obvious [15].  *Supra* [1pre]-[1d], [10pre]-[10e], and Sections IV.B.1-3.  *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0136], [0149]-[0162], [0177]-[0178]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

## Claim 16

*[16] The optical physiological measurement sensor of claim 10, wherein at least a portion of the cover is light permeable.*

Mendelson-Ohsaki renders obvious [16].  *Supra* [1pre]-[1d], [5], [10pre]-[10e], and Sections IV.B.1-3.  *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0136], [0141]-[0143], [0149]-[0162], [0179]-[0180]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

## Claim 17

*[17] The optical physiological measurement sensor of claim 16, wherein the cover is configured to allow light to reach at least one of the at least*

53

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

*four detectors.*

Mendelson-Ohsaki renders obvious [17].  *Supra* [1pre]-[1d], [6], [10pre]-

[10e], and Sections IV.B.1-3.  *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-

[0136], [0141]-[0146], [0149]-[0162], [0181]-[0182]; APPLE-1012, Abstract,

4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0015],

[0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1006, ¶¶[0023], [0024]; FIG. 1(b);

APPLE-1008, ¶¶14-15, FIGS. 1, 2.

*Claim 18*

*[18] The optical physiological measurement sensor of claim 10 further com-*

*prising: one or more openings that allow light to pass through to the at*

*least four detectors.*

As explained above with respect to [1pre]-[1d], [10pre]-[10e], [11]-[16], and

Sections IV.B.1-3, each of the twelve discrete photodiodes included in the Mendel-

son-Ohsaki combination are "adapted to detect reflected radiation…and to generate

respective signals" that "are used to determine the parameter of the blood."  AP-

PLE-1012, Abstract, 9:22-40, FIG. 7; APPLE-1003, ¶¶[0055]-[0069], [0078]-

[0136], [0149]-[0184].  From this and related description, a POSITA would have

understood that sensor 10 includes one or more openings that allow light to pass

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

through to the twelve detectors.  APPLE-1003, ¶¶[0183]-[0184]; APPLE-1012,

Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIG. 7.

### *Claim 20*

### *[20pre] A noninvasive optical physiological measurement device comprising:*

Mendelson-Ohsaki renders obvious [20pre].  *Supra* [1pre]-[1d], [10pre]-

[10e], and Sections IV.B.1-3.  *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-

[0136], [0149]-[0162], [0185]-[0186]; APPLE-1012, Abstract, 4:13-22, 7:25-8:41,

9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A,

4B.  Mendelson '799 explains, for example, that its sensor is configured "for use in

an optical measurement device" for "non-invasive measurement of a blood param-

eter."  APPLE-1012, Abstract, 9:22-40, FIGS. 7, 8.

### *[20a] a plurality of emitters configured to emit light into tissue of a user;*

Mendelson-Ohsaki renders obvious [20a].  *Supra* [1pre]-[1d], [10pre]-[10e],

[20pre], and Sections IV.B.1-3. *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-

[0136], [0149]-[0162], [0185]-[0186]; APPLE-1012, Abstract, 2:14-28, 8:37-41,

9:22-10:30, FIGS. 3, 7, 8. Mendelson '799 explains, for example, that sensor 10 in-

cludes a "light source 12 composed of three closely spaced light emitting elements

(e.g., LEDs or laser sources)."  APPLE-1012, 9:22-40, FIG. 7; APPLE-1003,

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

¶¶[0187]-[0188].

> **[20b] at least four detectors, wherein at least one of the at least four detectors is configured to detect light that has been attenuated by tissue of the user;**

Mendelson-Ohsaki renders obvious [20b].  *Supra* [1pre]-[1d], [10pre]-[10e], [20pre]-[20a], and Sections IV.B.1-3.  *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0136], [0149]-[0162], [0185]-[0191]; APPLE-1012, Abstract, 2:14-28, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8.  Mendelson '799 explains, for example, that sensor 10 includes "an array of discrete detectors (e.g., photodiodes)…surrounding the light emitting elements."  APPLE-1012, 9:22-40, FIG. 7.

> **[20c] a cover configured to be located between tissue of the user and the at least four detectors when the noninvasive optical physiological measurement device is worn by the user, wherein the cover comprises a protruding surface operable to conform tissue of the user to at least a portion of the protruding surface when the noninvasive optical physiological measurement device is worn by the user, and wherein at least one of the at least four detectors is configured to receive light passed through the protruding surface after attenuation by tissue of the user;**

56

As explained above with respect to [1pre]-[1c] and Sections IV.B.1-3, and as shown below, the Mendelson-Ohsaki combination would have included a transparent cover with a single protruding convex surface located between user tissue and the photodetectors when sensor 10 is worn, the cover being sufficiently rigid to cause user tissue to conform to the protruding surface, and enabling light to pass through the protruding surface and be received by the photodetectors after attenuation by user tissue.  APPLE-1003, ¶¶[0055]-[0069], [0078]-[0126]; APPLE-1012, Abstract, 4:13-22, 7:25-8:41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; *see also* APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1008, ¶¶14-15, FIGS. 1-3; AP-PLE-1024, ¶¶[0033], [0035], FIG. 6.

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553



APPLE-1012, FIG. 7 (annotated, with additional section view)

Accordingly, [20c] would have been obvious over Mendelson-Ohsaki.  AP-
PLE-1003, ¶¶[0192]-[0194].

### [20d] a wall surrounding the at least four detectors; and

As explained above with respect to [1pre]-[1c], [10pre]-[10e], [20pre]-[20c],
and Sections IV.B.1-3, the Mendelson-Ohsaki combination would have included
an opaque wall surrounding the photodetectors included in detectors 16 and 18.

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

APPLE-1003, ¶¶[0055]-[0069], [0078]-[0126], [0149]-[0162], [0185]-[0194]; AP-PLE-1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, ¶[0017], FIG. 2.

Accordingly, [20d] would have been obvious over Mendelson-Ohsaki.  AP-PLE-1003, ¶¶[0195]-[0196].


### [20e] a substrate on which at least the at least four detectors are positioned,

Mendelson-Ohsaki renders obvious [20e].  *Supra* [1pre]-[1d], [10pre]-[10e], [20pre]-[20d], and Sections IV.B.1-3.  *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0126], [0149]-[0162], [0185]-[0196]; APPLE-1012, Abstract, 2:14-17, 4:13-22, 9:22-10:30, FIGS. 3, 7, 8; APPLE-1009, ¶[0017], FIG. 2; APPLE-1017, 2-3, 6, FIG. 1; APPLE-1018, 1, 2, FIG. 2.  Mendelson '799's FIG. 7, for example, depicts sensor 10's twelve photodetectors positioned on a substrate.  APPLE-1003, ¶¶[0197]-[0198]; APPLE-1012, 9:22-40, FIG. 7.


### [20f] wherein the wall operably connects to the substrate and the cover, thereby positioning the at least four detectors within one or more spaces formed by at least the substrate, the wall, and the cover.

As explained above with respect to [1pre]-[1d], [20pre]-[20e], and Sections IV.B.1-3, the Mendelson-Ohsaki combination would have included a wall that

would have operably connected, on one side, to the substrate on which the photo-detectors are arranged and, on an opposite side, to a transparent protruding convex cover.  APPLE-1003, ¶¶[0055]-[0069], [0078]-[0126], [0185]-[0194]; APPLE-1012, Abstract, 2:14-17, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; AP-PLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2.  As such, the discrete detectors included within detectors 16 and 18 would have been positioned within spaces formed by the substrate, wall, and cover, and a POSITA would have found [20f] obvious over Mendelson-Ohsaki.  APPLE-1003, ¶¶[0199]-[200].

### Claim 21

**[21] The noninvasive optical physiological measurement device of claim 20, wherein the cover is further configured to allow passage of light to at least one of the at least four detectors after attenuation by tissue of the user via at least one or more light permeable portions of the cover.**

Mendelson-Ohsaki renders obvious [21].  *Supra* [1pre]-[1d], [10pre]-[10e], [20pre]-[20f], and Sections IV.B.1-3.  *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0126], [0149]-[0162], [0185]-[0204]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

*Claim 22*

*[22] The noninvasive optical physiological measurement device of claim 21, wherein at least a portion of the cover is comprised of a sufficiently rigid material so as to cause the tissue of the user to conform to at least the portion of the protruding surface.*

Mendelson-Ohsaki renders obvious [22].  *Supra* [1pre]-[1d], [10pre]-[10e], [20pre]-[20f], and Sections IV.B.1-3.  *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0126], [0149]-[0162], [0185]-[0200], [0205]-[0206]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2; APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b).

*Claim 23*

*[23] The noninvasive optical physiological measurement device of claim 22, wherein the at least four detectors are evenly spaced from one another.*

Mendelson-Ohsaki renders obvious [23].  *Supra* [1pre]-[1d], [3], [10pre]-[10e], [20pre]-[20f], and Sections IV.B.1-3.  *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0126], [0139]-[0140], [0149]-[0162], [0207]-[0208]; APPLE-1012, Abstract, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 3, 7.

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

*Claim 24*

**[24] The noninvasive optical physiological measurement device of claim 23 further comprising: one or more openings that allow light to pass through to the at least four detectors.**

Mendelson-Ohsaki renders obvious [24]. *Supra* [1pre]-[1d], [10pre]-[10e], [18], and [20pre]-[20f], and Sections IV.B.1-3. *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0126], [0149]-[0162], [0183]-[0184], [0209]-[0210]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-40, FIG. 7.

*Claim 29*

**[29] The noninvasive optical physiological measurement device of claim 20, wherein the attenuated light is reflected by the tissue.**

Mendelson-Ohsaki renders obvious [29]. *Supra* [1pre]-[1d], [9], [10pre]-[10e], [20pre]-[20f], and Sections IV.B.1-3. *See also* APPLE-1003, ¶¶[0055]-[0069], [0078]-[0126], [0147]-[0162], [0209]-[0210], [0211]-[0212]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 3, 7, 8.

### C. GROUND 2 – Claims 4, 18, and 24 are obvious over Mendelson '799 in view of Ohsaki and Schulz

#### 1. Overview of Schulz

Schulz is titled "Pulse Oximetry Ear Sensor"; as illustrated in Schulz's

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

FIG. 19C (reproduced below), Schulz describes a sensor with "opposingly positioned housings 1902 and 1903 that house one or more sensor optical components."  APPLE-1013, ¶[0065].



FIG.  19C

Schulz, FIG. 19C.

The "inward facing shells 1905 and 1906" included within these housings are said to feature "windows 1919 and 1924 that provide an aperture for transmis-

Exhibit F
Page 370

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

sion of optical energy to or from a tissue site"; "lenses 1920 and 1921" are provided in the form of "[t]ranslucent silicone material" that "covers windows 1919 and 1924." *Id.*, ¶[0067], FIGS. 19A-D.

Schulz avoids "saturation of the light detector" by placing "a thin sheet of opaque material" "beneath window 1919 or 1924," with "a window in the opaque material provid[ing] an aperture for transmission of optical energy to or from the tissue site." *Id.*, [0073], FIGS. 19A-D. The opaque material blocks light, "and the window in the opaque material can be sized as needed to block the proper amount of light from entering the aperture to, for example, avoid saturation of the light detector." *Id.*; APPLE-1003, ¶¶[0070]-[0072].

### 2. Combination of Mendelson '799, Ohsaki, and Schulz

As discussed above (Sections IV.B.1-3 and [1pre]-[1d]), and as shown below, the Mendelson-Ohsaki combination would have included "an array of discrete detectors (e.g., photodiodes)," an opaque wall configured to circumscribe the detectors, and a translucent convex cover situated between the sensor and the user's tissue. APPLE-1003, ¶¶[0055]-[0072], [0078]-[0136], [0213]-[0222]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553



APPLE-1012, FIG. 7 (annotated, with additional section view)

As detailed below, a POSITA would have been motivated to combine Mendelson '799 and Ohsaki with Schulz (hereinafter "Mendelson-Ohsaki-Schulz combination" or "Mendelson-Ohsaki-Schulz") to obtain additional benefits. APPLE-1003, ¶[0214]. More specifically, a POSITA would have recognized that the Mendelson-Ohsaki opaque wall would partially shield the detectors from ambient light, but would have understood from Schulz that additional measures could be taken to guard against saturation. APPLE-1019, 79, 86, 94.

65

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

As discussed above (Section IV.C.1), Schulz describes a sensor featuring "a thin sheet of opaque material" placed inside the sensor's housing beneath a lens, with "a window in the opaque material provid[ing] an aperture for transmission of optical energy to or from the tissue site."  APPLE-1013, ¶[0073].  The opaque material blocks light, "and the window in the opaque material can be sized as needed to block the proper amount of light from entering the aperture to, for example, avoid saturation of the light detector."  *Id.*, FIGS. 19A-19C.

As explained below, this and related description from Schulz would have motivated a POSITA to add a layer of opaque material to the Mendelson-Ohsaki sensor, and to size windows in the opaque material as appropriate to avoid saturation of each of the sensor's detectors.  APPLE-1003, ¶¶[0215]-[0216]; APPLE-1013, ¶[0073], FIGS. 19A-19C; *see also* APPLE-1019, 79, 86, 94; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).

In more detail, and as the 1997 textbook "Design of Pulse Oximeters" by J.G. Webster explains, pulse oximetry systems have optical interfaces, and "it is [therefore] important to minimize the effects from light other than the optical signals of interest."  APPLE-1019, 76.  More specifically, "to minimize errors, the pulse oximeter designer must attempt to limit the light reaching the photodiode to that which has traveled through tissue containing arterial blood."  One measure that "can be taken to ensure this" involves "decreas[ing] the angle of incidence to the

66

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

photodiode." *Id.*, 79-80, FIG. 6.6.  One "simple solution" for preventing "[a]mbient light from sources such as sunlight, surgical lamps etc" from causing "errors in $S_aO_2$ readings" "is to cover the sensor site with opaque material which can prevent ambient light from reaching the photodiode." *Id.*, 94.

From Schulz's description, a POSITA would have understood that, in line with textbook recommendations, Schulz's opaque layer limits errors by decreasing the angle of incidence to the photodiode to that enabled by the window included within the layer, and by otherwise preventing ambient light from reaching the photodiode.  APPLE-1003, ¶¶[0217]-[0218]; APPLE-1013, ¶[0073], APPLE-1019, 79-80, 94, FIG. 6.6.

A POSITA would also have readily understood that Schulz's teachings would apply to pulse oximetry sensors featuring multiple photodiodes and that, in such sensors, errors could be limited through the use of an opaque layer with multiple windows, the windows being configured to decrease the angles of incidence to the photodiodes.  APPLE-1003, ¶[0219]; APPLE-1013, ¶[0073], APPLE-1019, 79-80, 94, FIG. 6.6; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b); APPLE-1023, 11-12, FIG. 11; *see* APPLE-1036.  Indeed, by the Critical Date, noninvasive optical physiological sensors with multiple detectors commonly employed opaque layers with multiple windows.  APPLE-1003, ¶[0219]; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b); APPLE-1023, 11-12, FIG. 11.

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

The 2005 article "Stimulating Student Learning with a Novel 'In-House' Pulse Oximeter Design" by J. Yao and S. Warren, for example, includes a photograph (reproduced below) of a pulse oximetry sensor created by an undergraduate student as part of a research project; as shown, the sensor features multiple photodiodes arranged radially about a set of central LEDs, and an opaque layer with multiple corresponding windows. APPLE-1023, 11-12, FIG. 11, APPLE-1003, ¶[0220]. A POSITA would have understood that, like the layer described by Schulz, the layer depicted in the photograph prevents saturation of the photodiodes included in the student's sensor, by limiting the light that reaches the photodiodes to that which has traveled through tissue. *Id*.; APPLE-1023, 1-14, FIG. 11; APPLE-1019, 79-80, 86, 94, FIG. 6.6.

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553



APPLE-1023, FIG. 11 (excerpt, annotations in original).

Similar to these and other known configurations, and as shown below, Schulz would have motivated a POSITA to modify the Mendelson-Ohsaki combination to include an opaque layer that would have blocked light other than at windows corresponding to the sensor's photodiodes.  APPLE-1003, ¶[0221]; APPLE-1013, ¶[0073], FIGS. 19A-19C; APPLE-1023, 1-14, FIG. 11; APPLE-1019, 79-80, 86, 94, FIG. 6.6; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).

69

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553



APPLE-1012, FIG. 7 (annotated, with additional section view)

A POSITA would have combined the teachings of Mendelson '799, Ohsaki, and Schulz, as doing so would have amounted to nothing more than the use of a known technique to improve similar devices in the same way, and combining prior art elements according to known methods to yield predictable results. APPLE-1003, ¶[0222]. Here, the Mendelson-Ohsaki-Schulz combination improves upon the Mendelson-Ohsaki combination by adding a well-known component, an

opaque layer that blocks light other than at windows corresponding to the detectors, in order to "avoid saturation" of the detectors. *Id.*; APPLE-1013, ¶[0073]. Furthermore, the elements of the combined system would each perform similar functions to those they had been known to perform prior to the combination—an opaque layer with appropriately sized windows would be placed over Mendelson '799's photodiodes, and that layer would perform the same function taught by Schulz. APPLE-1003, ¶[0222]; APPLE-1013, ¶[0073].

### 3. Analysis

***Claim 4***

**[4] The noninvasive optical physiological sensor of claim 3 further comprising: an opaque layer blocking light other than at one or more openings that allow light to pass through to at least one of the at least four detectors.**

As explained above with respect to [1pre]-[1d] and Sections IV.B.1-3 and IV.C.1-2, and as shown below, the Mendelson-Ohsaki-Schulz combination would have included an opaque layer blocking light other than at one or more openings that allow light to pass through to the twelve detectors. APPLE-1003, ¶¶[0055]-[0072], [0078]-[0136], [0213]-[0222]; APPLE-1013, ¶[0073], FIGS. 19A-19C;

71

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

APPLE-1023, 1-14, FIG. 11; APPLE-1019, 79-80, 86, 94, FIG. 6.6; APPLE-1006,

¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).



APPLE-1012, FIG. 7 (annotated, with additional section view)

Accordingly, [4] would have been obvious over Mendelson-Ohsaki-Schulz.

APPLE-1003, ¶¶[0223]-[0239].

Exhibit F
Page 379

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

### *Claim 18*

*[18] The optical physiological measurement sensor of claim 10 further comprising: one or more openings that allow light to pass through to the at least four detectors.*

As explained above with respect to [4] and Sections IV.B.1-3 and IV.C.1-2, the Mendelson-Ohsaki-Schulz combination would have included an opaque layer that would have blocked light other than at openings allowing light to pass through to the twelve detectors.  APPLE-1003, ¶¶[0055]-[0072], [0078]-[0136], [0223]-[0239]; APPLE-1013, ¶[0073], FIGS. 19A-19C; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).

For this additional reason, [18] would have been obvious over Mendelson-Ohsaki-Schulz.  APPLE-1003, ¶¶[0240]-[0245].

### *Claim 24*

*[24] The noninvasive optical physiological measurement device of claim 23 further comprising: one or more openings that allow light to pass through to the at least four detectors.*

As explained above with respect to [4] and Sections IV.B.1-3 and IV.C.1-2, the Mendelson-Ohsaki-Schulz combination would have included an opaque layer that would have blocked light other than at openings allowing light to pass through

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

to the twelve detectors.  APPLE-1003, ¶¶[0055]-[0072], [0078]-[0136], [0223]-[0239]; APPLE-1013, ¶[0073], FIGS. 19A-19C; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).

For this additional reason, [24] would have been obvious over Mendelson-Ohsaki-Schulz.  APPLE-1003, ¶[0243]-[0245].

### D. GROUND 3 – Claim 25 is obvious over Mendelson '799, Ohsaki, and Griffin

#### 1. Overview of Griffin

Griffin is titled "Magnetic Connector"; as shown in Griffin's FIGS. 1(a) and 1(b) (reproduced below), Griffin discloses a connector that "uses complimentary magnetic arrays and mating surfaces on its plug and receptacle."  APPLE-1014, Abstract.  More specifically, Griffin's FIGS. 1(a) and 1(b) depict an electrical magnetic connector featuring "a plug having a plug magnet and plug face and a receptacle having a receptacle magnet and receptacle face."  APPLE-1014, 1:54-2:18, 3:26-61, FIGS. 1(a)-1(c).



APPLE-1014, FIGS. 1(a), 1(b).

Griffin's connection mechanism addresses problems that arise when, for example, "connectors are sometimes inadvertently decoupled," which can "result in a broken connector or even damage to the connected electronic device." *Id*., 1:29-42. The plug and receptacle "magnets 5, 7, 9 and 11" depicted in Griffin's FIGS. 1(a) and 1(b) "can be more easily, quickly and safely broken than

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

the physical connection between the connector 13 and [a] portable electronic device." *Id.*, 3:48-53.  As such, "the connector [can] decouple when a sudden force is applied without resulting in any damage to the connector or the associated electronic device." *Id.*, 5:26-38; APPLE-1003, ¶¶[0073]-[0074].

### 2.  Combination of Mendelson '799, Ohsaki, and Griffin

As discussed above (Sections IV.B.1-3 and [1pre]-[1d]), and as shown below, the Mendelson-Ohsaki combination would have included a "pulse oximeter 20 utilizing…sensor 10."  APPLE-1012, Abstract, 10:15-17, FIGS 7, 8.  As Mendelson '799 explains, pulse oximeter 20 includes "a control unit 21, which is composed of an electronic block 22 including A/D and D/A converters connectable to the sensor 10 …."  *Id.*, 10:16-22.



APPLE-1012, FIG. 8 (annotated)

76

As detailed below, a POSITA would have been motivated to combine Mendelson '799 and Ohsaki with Griffin (hereinafter "Mendelson-Ohsaki-Griffin combination" or "Mendelson-Ohsaki-Griffin") to obtain additional benefits.  APPLE-1003, ¶¶[0246]-[0247].

Mendelson '799 does not explicitly describe the mechanism for connecting sensor 10 and electronic block 22 as a magnet but, in view of Griffin's disclosure, a POSITA would have found it obvious to implement that connection with a magnet configured to be used as a connecting mechanism.  APPLE-1003, ¶[0248]; APPLE-1012, 10:16-22, FIG. 8; APPLE-1014, 1:29-2:18, 3:26-61, FIGS. 1(a)-1(c).

Indeed, by the Critical Date, it was well known that electrical connectors relying on a mechanical and/or friction fit to couple a plug to a receptacle were sometimes subject to inadvertent decoupling, and that such decoupling could result in broken connectors and devices.  APPLE-1003, ¶[0249]; APPLE-1014, 1:29-50.  A POSITA would have understood that this problem could be solved with a magnetic connector, like the connecting mechanism described by Griffin.  APPLE-1003, ¶[0249]; APPLE-1014, 1:54-2:18, 3:26-61, 5:26-38, FIGS. 1(a)-1(c).

In accordance with Griffin's teachings, a POSITA would have sought to avoid problems that might arise from sudden and/or forceful decoupling of the

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

connection between sensor 10 and electronic block 22, by implementing that connection with a magnet configured to be used as a connecting mechanism.  APPLE-1003, ¶¶[0246]-[0251]; APPLE-1014, 1:54-2:18, 3:26-61, FIGS. 1(a)-1(c).

### 3.  Analysis

*Claim 25*

*[25] The noninvasive optical physiological measurement device of claim 24 further comprising: a magnet configured to be used as a connecting mechanism.*

As explained above with respect to [1pre]-[1d] and Sections IV.B.1-3 and IV.D.1-2, the Mendelson-Ohsaki-Griffin combination would have included a magnet configured to be used as a connecting mechanism.  APPLE-1003, ¶[0055]-[0072], [0078]-[0136], [0246]-[0251]; APPLE-1012, Abstract, 10:15-22, FIGS 7, 8; APPLE-1014, 1:29-2:18, 3:26-61, 5:26-38, FIGS. 1(a)-1(c).

Accordingly, [25] would have been obvious over Mendelson-Ohsaki-Griffin. APPLE-1003, ¶¶[0252]-[0260].

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

## E. GROUND 4 – Claims 7 and 19 are obvious over Mendelson '799, Ohsaki, and Mendelson 2006

### 1. Overview of Mendelson 2006

Mendelson 2006 details the structure and testing of a "wireless wearable pulse oximeter" system. APPLE-1010, Abstract; *see* APPLE-1036. Mendelson 2006's system uses pulse oximetry, a "widely accepted method that is used for noninvasive monitoring of $SpO_2$ and [heart rate]," to monitor a subject's physiological signals. *Id.*, 912. By wirelessly transmitting the collected data, Mendelson 2006's system provides "numerous advantages," including the ability to determine the condition of a subject "remotely" without requiring a healthcare provider to be physically present. *Id.*

The system includes a sensor module, a receiver module, and a PDA. *Id.*, 913. As shown in Mendelson 2006's FIGS. 1 and 2 (reproduced below), the sensor module includes an "optical reflectance transducer" having two LEDs and a photodiode that "receives and processes the [photoplethysmographic (PPG)] signals" and transmits these signals wirelessly to the PDA through the receiver module. *Id.*; FIGS. 1 and 2 (reproduced below).

Exhibit F
Page 386

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553





Fig. 1.  (Top) Attachment of Sensor Module to the skin; (Bottom) photograph of the Receiver Module (left) and Sensor Module (right).

Fig. 2. System block diagram of the wearable, wireless, pulse oximeter. Sensor Module (top), Receiver Module (bottom).

APPLE-1010, FIG. 1 (left) and FIG. 2 (right)

The PDA is a handheld computing device that provides a "touch screen" interface and a simple graphical user interface (GUI) "configured to present the input and output information to the user and allow [for] easy activation of various functions."  APPLE-1010, 1-4, FIG. 3 (reproduced below); *see also* APPLE-1021, Cover, xvii-xviii, 10-12, 17, 63, 363; APPLE-1022, 4-11, 30-31; APPLE-1003, ¶¶[0075]-[0077]; *see* APPLE-1036.

Exhibit F
Page 387

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553



Fig. 3.  Sample PDA Graphical User Interface (GUI).

APPLE-1010, FIG. 3

### 2.  Combination of Mendelson '799, Ohsaki, and Mendelson 2006

As explained above with respect to [1pre]-[1d] and Sections IV.B.1-3, and as illustrated below, the Mendelson-Ohsaki combination would have included an optical sensor 10 configured "for use in an optical measurement device," as part of "a method for non-invasive measurement of a blood parameter."  APPLE-1003, ¶¶[0055]-[0072], [0078]-[0136]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-

81

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2,

4A, 4B.



APPLE-1012, FIG. 7 (annotated, with additional section view)

Mendelson '799's FIG. 8 (reproduced below) "illustrates a block-diagram of

a pulse oximeter 20 utilizing…sensor 10":

Exhibit F
Page 389



APPLE-1012, FIG. 8 (annotated)

*Id.*, 8:39-40, 10:16-17.  As shown, "[t]he pulse oximeter typically includes a control unit 21, which is composed of an electronic block 22 including A/D and D/A converters connectable to the sensor 10, a microprocessor 24 for analyzing measured data, and a display 26 for presenting measurement results."  Id., 10:16-22.  "The measured data (i.e., electrical output of the sensor 10 indicative of the detected light) is directly processed in the block 22, and the converted signal is further processed by the microprocessor 24," which "is operated by a suitable software model for analyzing the measured data and utilizing reference data (i.e., calibration curve stored in a memory) to compute the oxygen saturation value, which is then presented on the display 26."  *Id.*, 10:22-30.

In at least this way, Mendelson '799 depicts and describes a physiological monitoring device that includes both a noninvasive optical physiological sensor 10

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

and a pulse oximeter 20 with a display 26 that is configured to utilize sensor 10. *Id.*, Abstract, 7:25-8:13 ("a pulse oximeter utilizing a sensor…and a control unit for operating the sensor and analyzing data generated thereby"), 8:37-41, 9:22-40, 10:16-30, FIGS. 7, 8; APPLE-1003, ¶¶[0261]-[0263].

As detailed below, a POSITA would have been motivated to combine Mendelson '799 and Ohsaki with Mendelson 2006 (hereinafter "Mendelson-Ohsaki-Mendelson-2006 combination" or "Mendelson-Ohsaki-Mendelson-2006") to obtain additional benefits.  APPLE-1003, ¶¶[0261]-[0264].

*(a)    Touch-screen display*

Mendelson '799 does not explicitly describe pulse oximeter 20's display 26 as a touch-screen display, but in view of Mendelson 2006's disclosure, a POSITA would have found it obvious to implement display 26 as a touch-screen display. APPLE-1003, ¶[0265]; APPLE-1012, 10:16-30, FIG. 8; APPLE-1009, 1-4, FIG. 3.

Indeed, by the Critical Date, physiological monitoring devices commonly included touch-screen displays configured to provide user interfaces.  APPLE-1003, ¶[0266]; APPLE-1009, 1-4, FIG. 3; APPLE-1024, Abstract, ¶¶[0026], [0044], FIGS. 1-6.  For example, and as discussed above (Section IV.E.1), Mendelson 2006 describes a "body-worn" pulse oximetry system that includes a sensor module, a receiver module, and a PDA.  APPLE-1009, 1-3.

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

The PDA is said to "provide[] a low-cost touch screen interface." *Id.*, 3-4; *see also* APPLE-1020, 1-4 (depicting and describing the touch-screen display included within the HP iPAQ h4150 Pocket PC PDA utilized in Mendelson 2006's system); *see* APPLE-1036; APPLE-1021, Cover, xvii-xviii, 10-12, 17, 63, 363; APPLE-1022, 4-11, 30-31. In more detail, and as shown in Mendelson 2006's FIG. 3 (reproduced below), the PDA's "simple GUI" is "configured to present…input and output information to the user" and to allow "easy activation of various functions." *Id.*, 3.



APPLE-1010, FIG. 3

Exhibit F
Page 392

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

As described above, Mendelson '799 envisions "a pulse oximeter utilizing a sensor…and a control unit for operating the sensor and analyzing data generated thereby."  APPLE-1012, 7:61-64.  To enable easy activation of various functions through a user-friendly interface similar to that described by Mendelson 2006, a POSITA would have found it obvious to implement pulse oximeter 20's display 26 as a touch-screen display.  APPLE-1003, ¶¶[0265]-[0268]; APPLE-1012, Abstract, 7:61-64, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIG. 3; *see also* AP-PLE-1020, 1-4; APPLE-1009, ¶¶[0005], [0020]; APPLE-1003, ¶¶[0261]-[0268].

### *(b)   Communication of information to PDA*

Mendelson '799 does not explicitly describe wireless communication but, in view of Mendelson 2006's disclosure, a POSITA would have found it obvious to enable Mendelson-Ohsaki's sensor 10 and pulse oximeter 20 to communicate wire-lessly with a PDA featuring a touch-screen display and/or mobile phone function-ality.  APPLE-1003, ¶[0269]; APPLE-1012, 10:16-30, FIG. 8; APPLE-1010, 1-4, FIG. 3; APPLE-1021, Cover, xvii-xviii, 10-12, 63, 73-101, 363; APPLE-1022, 4-11, 30-31, 284-297.

Indeed, by the Critical Date, physiological sensor devices commonly com-municated wirelessly with handheld computing devices.  APPLE-1003, ¶[0270].  For example, and as discussed above (Section IV.E.1), Mendelson 2006 describes

86

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

a "body-worn" pulse oximetry system that includes a sensor module, a receiver module, and a PDA.  APPLE-1010, 1-4, FIGS. 1-3.

In more detail, and as shown in Mendelson 2006's FIG. 2 (reproduced below), the sensor module includes an "optical reflectance transducer" for measuring photoplethysmographic (PPG) signals, and the receiver module includes "an embedded microcontroller."  *Id.*, 1-2.  "Signals acquired by the Sensor Module are received by the embedded microcontroller which synchronously converts the corresponding PD output to R and IR PPG signals," and "[d]edicated software is used to filter the signals and compute [arterial oxygen saturation (SpO$_2$)] and [heart rate (HR)] based on the relative amplitude and frequency content of the reflected PPG signals."[2]  *Id.*

---

[2]Similar to Mendelson '799's sensor 10, which provides "measured data (i.e., electrical output of the sensor 10 indicative of the detected light" to pulse oximeter 20 for processing, Mendelson 2006's sensor module provides acquired signals to the receiver module for processing.  APPLE-1003, ¶[0271]; APPLE-1012, 10:22-30, FIG. 8; APPLE-1010, 2.

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553



APPLE-1010, FIG. 2 (annotated)

"[I]nformation acquired by the Sensor Module is transmitted wirelessly via an RF link over a short range to a body-worn Receiver Module," and data processed by the receiver module is "transmitted wirelessly to a PDA." *Id.*, 2, FIG. 2. Mendelson 2006's system uses "the HP iPAQ h4150 PDA because it can support both 802.11b and Bluetooth™ wireless communication." *Id.*, 3. The PDA is used "as a local terminal," and it "also provides a low-cost touch screen interface." *Id.*; APPLE-1020, 1-4.

In more detail, and as shown in Mendelson 2006's FIG. 3 (reproduced below), the handheld PDA's "simple GUI" is "configured to present … input and

88

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

output information to the user" and to allow "easy activation of various functions." *Id.*, 4. Wireless communication with the handheld PDA is, moreover, said to enable transfer of information pertaining to physiological and wellness parameters such as "$SpO_2$, HR, body acceleration, and posture information" to the PDA; and, when the PDA is "carried by medics or first responders," this information is said to enhance their ability "to extend more effective medical care, thereby saving the lives of critically injured persons." *Id.*



APPLE-1010, FIG. 3.

To obtain these and other advantages described by Mendelson 2006, a

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

POSITA would have been motivated to wirelessly transmit information or data acquired or processed by sensor 10 and pulse oximeter 20 to a PDA featuring a touch-screen display and/or mobile phone functionality[3], using either or both of 802.11b and Bluetooth[TM].  APPLE-1003, ¶¶[0261]-[0274]; APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-4; *see also* APPLE-1021, xvii-xviii, 10-12, 17, 63, 73-101, 176, 190-193, 363; APPLE-1022, 4-11, 30-31, 56-67, 72-92.

### 3.  Analysis

*Claim 7*

**[7pre] A physiological monitoring device comprising:**

---

[3] Mendelson 2006 does not explicitly disclose its PDA to be a mobile phone.  APPLE-1003, ¶[0274].  Yet it was well-known before the Critical Date that a PDA device was often paired with cellular communication technology to provide a combined PDA/phone device that acts a mobile phone.  *Id*.; APPLE-1025, Title ("Cellular Phone/PDA Communication System"), Abstract, 1:6-15, 7:6-10:11 (describing "a small handheld cellular phone/PDA communications system" featuring "an LCD display 16 that is also a touch screen system"), FIGS. 1-3.

90

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

As illustrated below, and as explained above with respect to [1pre]-[1d] and Sections IV.B.1-3 and IV.E.1-2, the Mendelson-Ohsaki-Mendelson-2006 combination would have included an optical sensor 10 configured "for use in an optical measurement device," as part of "a method for non-invasive measurement of a blood parameter." APPLE-1003, ¶¶[0055]-[0077], [0078]-[0136], [; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.



APPLE-1012, FIG. 7 (annotated, with additional section view)

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

Mendelson '799's FIG. 8 (reproduced below) "illustrates a block-diagram of a pulse oximeter 20 utilizing … sensor 10":



APPLE-1012, FIG. 8 (annotated)

Accordingly, [7pre] would have been obvious over Mendelson-Ohsaki-Mendelson-2006.  APPLE-1003, ¶¶[0275]-[0280].

**[7a] the noninvasive optical physiological sensor of claim 1;**

As explained above, [1pre]-[1d] would have been obvious over Mendelson-Ohsaki.  APPLE-1003, ¶¶[0055]-[0136].  Accordingly, [7a] would have been obvious over Mendelson-Ohsaki-Mendelson-2006.  APPLE-1003, ¶[0281]; APPLE-

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009,

Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

### *[7b] a touch-screen display;*

As explained above with respect to [7pre] and Sections IV.E.1-2, a POSITA

would have found it obvious to implement pulse oximeter 20's display 26 as a

touch-screen display, and to wirelessly transmit information or data acquired or

processed by sensor 10 and pulse oximeter 20 to a PDA featuring a touch-screen

display and/or mobile phone functionality.  APPLE-1003, ¶¶[0055]-[0077],

[0261]-[0274], [0281]-[0282]; APPLE-1012, Abstract, 8:37-64, 9:22-10:30, FIGS.

7, 8; APPLE-1009, 1-4, FIGS. 1-3; APPLE-1020, 1-4; APPLE-1021, xvii-xviii,

10-12, 17, 63, 73-101, 176, 190-193, 363; APPLE-1022, 4-11, 30-31, 56-67, 72-

92.

Accordingly, [7b] would have been obvious over Mendelson-Ohsaki-Men-

delson-2006.  APPLE-1003, ¶[0282]-[0290].

### *[7c] one or more processors configured to receive data or one or more signals*

### *from at least one of the at least four detectors and cause communica-*

### *tion of physiological measurement information to at least one of: the*

### *touch-screen display or a mobile phone; and*

Exhibit F
Page 400

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

As illustrated below, and as explained above with respect to [1pre]-[1d], [7pre]-[7b], and Sections IV.B.1-3 and IV.E.1-2, Mendelson-Ohsaki-Mendelson-2006 would have included "a pulse oximeter 20 utilizing … sensor 10," the pulse oximeter 20 featuring "a control unit 21 … connectable to the sensor 10, a micro-processor 24 for analyzing measured data, and a display 26 for presenting measure-ment results." Id., 10:16-22. APPLE-1012, Abstract, 10:15-17, FIGS 7, 8.



APPLE-1012, FIG. 8 (annotated)

In addition, and as explained above with respect to Sections IV.E.1-2, a POSITA would have found it obvious to wirelessly transmit information or data acquired or processed by sensor 10 and pulse oximeter 20 to a PDA featuring a touch-screen display and/or mobile phone functionality. APPLE-1003, ¶¶[0055]-[0136], [0261]-[0295]; APPLE-1012, Abstract, 8:37-64, 9:22-10:30, FIGS. 7, 8; APPLE-1009, 1-4, FIGS. 1-3; APPLE-1020, 1-4; *see also* APPLE-1021, xvii-xviii,

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

10-12, 17, 63, 73-101, 176, 190-193, 363; APPLE-1022, 4-11, 30-31, 56-67, 72-92.

Accordingly, [7c] would have been obvious over Mendelson-Ohsaki-Mendelson-2006.  APPLE-1003, ¶¶[0291]-[0295].

**[7d] a strap configured to facilitate attachment of at least part of the physiological monitoring device to an arm of a user of the physiological monitoring device.**

As explained above with respect to Sections IV.B.1-3, the Mendelson-Ohsaki combination would have included a strap configured to facilitate attachment of sensor 10 to the user's arm (e.g., at the wrist).  APPLE-1003, ¶¶[0055]-[0077], [0261]-[0274]; APPLE-1012, 2:14-27, 4:13-22; APPLE-1018, 1, 2, FIG. 2; APPLE-1009, ¶¶[0009], [0018], FIG. 1; APPLE-1009, ¶¶[0007], [0008], [0023], FIGS. 1(a), 1(b).  The Mendelson-Ohsaki-Mendelson-2006 combination would have included the same strap.  APPLE-1003, ¶¶[0296]-[0302]; APPLE-1020, 1-3 (describing a "body-worn pulse oximeter" including a sensor module that is attached to the user's skin), FIG. 1 (depicting "Attachment of Sensor Module to the skin").

Accordingly, [7d] would have been obvious over Mendelson-Ohsaki-Mendelson-2006.  APPLE-1003, ¶¶[0296]-[0302].

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

*Claim 19*

**[19] *The optical physiological measurement sensor of claim 18 further comprising: one or more processors configured to: receive one or more signals from at least one of the at least four detectors, the one or more signals indicative of a physiological parameter of the user of the optical physiological measurement sensor; and cause output of information indicative of measurements of the physiological parameter to at least one of: a touch-screen display or a mobile phone.***

Mendelson-Ohsaki-Mendelson-2006 renders obvious [19].  *Supra* [1pre]-[1d], [10pre]-[10e], [7pre]-[7d], [18], Sections IV.B.1-3 and IV.E.1-2.  *See also* APPLE-1003, ¶¶[0055]-[0136], [0261]-[0274], [0281]-[0282], [0303]-[0308]; APPLE-1012, Abstract, 7:61-8:12, 9:22-10:37, FIGS. 7, 8; APPLE-1009, 1-4, FIG. 3; APPLE-1020, 1-3; APPLE-1021, xvii-xviii, 10-12, 17, 63, 73-101, 176, 190-193, 363; APPLE-1022, 4-11, 30-31, 56-67, 72-92.

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

### F.  GROUND 5 – Claims 8 and 26-28 are obvious over Mendelson '799, Ohsaki, Mendelson 2006, and Griffin

#### 1.  Combination of Mendelson '799, Ohsaki, Mendelson 2006, and Griffin

As explained above with respect to Sections IV.B.1-3, IV.D.1-2, and IV.E.1-2, a POSITA would have found it obvious to combine Mendelson '799 with each of Ohsaki, Mendelson 2006, and Griffin.  APPLE-1003, ¶¶[0055]-[0098], [0213]-[0222], [0246]-[0251], [0261]-[0274], [0275]-[0302], [0309].  To obtain the benefits described in those sections, a POSITA would have found it obvious to combine the teachings of each of those references within a single device (hereinafter referred to as "Mendelson-Ohsaki-Mendelson-2006-Griffin combination" or "Mendelson-Ohsaki-Mendelson-2006-Griffin").  APPLE-1003, ¶[0309].

#### 2.  Analysis

*Claim 8*

*[8] The physiological monitoring device of claim 7 further comprising: a magnet configured to be used as a connecting mechanism.*

Mendelson-Ohsaki-Mendelson-2006-Griffin renders obvious [8].  *Supra* [1pre]-[1d], [7pre]-[7d], [20pre]-[20f], [21]-[25], Sections IV.B.1-3, IV.D.1-2, and IV.E.1-2.  *See also* APPLE-1003, ¶¶[0055]-[0098], [0201]-[0210], [0213]-[0222], [0246]-[0274], [0275]-[0302], [0309], [0310]-[0316]; APPLE-1012, Abstract, 10:15-22, FIGS. 7, 8; APPLE-1014, 1:29-2:18, 3:26-61, 5:26-38, FIGS. 1(a)-1(c).

97

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

*Claim 26*

**[26] The noninvasive optical physiological measurement device of claim 25 further comprising: one or more processors configured to: receive data or one or more signals from at least one of the at least four detectors, the data or one or more signals indicative of a physiological parameter of the user of the noninvasive optical physiological measurement device; and cause output of information indicative of measurements of the physiological parameter to at least one of: a touch-screen display or a mobile phone.**

Mendelson-Ohsaki-Mendelson-2006-Griffin renders obvious [26].  *Supra* [1pre]-[1d], [10pre]-[10e], [7pre]-[7d], [18]-[25], Sections IV.B.1-3, IV.D.1-2, and IV.E.1-2.  *See also* APPLE-1003, ¶¶[0055]-[0098], [0185]-[0210], [0213]-[0222], [0246]-[0274], [0275]-[0302], [0309], [0310]-[0318]; APPLE-1012, Abstract, 7:61-8:12, 8:37-41, 9:23-10:37, FIGS. 7, 8; APPLE-1009, 1-4, FIG. 3; APPLE-1020, 1-3; APPLE-1021, xvii-xviii, 10-12, 17, 63, 73-101, 176, 190-193, 363; AP-PLE-1022, 4-11, 30-31, 56-67, 72-92.

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

*Claim 27*

**[27] The noninvasive optical physiological measurement device of claim 26, further comprising a touch-screen display.**

Mendelson-Ohsaki-Mendelson-2006-Griffin renders obvious [27]. *Supra* [1pre]-[1d], [10pre]-[10e], [7pre]-[7d], [18]-[26], Sections IV.B.1-3, IV.D.1-2, and IV.E.1-2. *See also* APPLE-1003, ¶¶[0055]-[0098], [0185]-[0210], [0213]-[0222], [0246]-[0274], [0275]-[0302], [0309], [0310]-[0320]; APPLE-1012, Abstract, 7:61-8:12, 8:37-41, 9:23-10:37, FIGS. 7, 8; APPLE-1009, 1-4, FIG. 3; APPLE-1020, 1-3; APPLE-1021, xvii-xviii, 10-12, 17, 63, 73-101, 176, 190-193, 363; APPLE-1022, 4-11, 30-31, 56-67, 72-92.

*Claim 28*

**[28] The noninvasive optical physiological measurement device of claim 27, wherein the physiological parameter comprises at least one of: pulse rate, glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, or carbon monoxide.**

As explained above with respect to [1pre]-[1d], [10pre]-[10e], [7pre]-[7d], and [18]-[27], the Mendelson-Ohsaki-Mendelson-2006-Griffin combination would have included a processor 24 configured to receive signals that are indicative of a physiological parameter of a user from detectors included within sensor 10, and to

99

cause output of information indicative of measurements of the physiological parameter to a touch-screen display.  APPLE-1003, ¶¶[0055]-[0098], [0185]-[0210], [0213]-[0222], [0246]-[0274], [0275]-[0302], [0309], [0310]-[0320]; APPLE-1012, Abstract, 7:61-8:12, 8:37-41, 9:23-10:37, FIGS. 7, 8; APPLE-1009, 1-4, FIG. 3; APPLE-1020, 1-3.

Mendelson '799 discloses that the physiological parameters measured by sensor 10 and pulse oximeter 20 include oxygen saturation.  APPLE-1012, 10:16-37, 13:53-61; *see also* APPLE-1009, Abstract (describing a pulse wave sensor); APPLE-1009, 1 (describing measurement of oxygen saturation and heart rate).

Accordingly, [28] would have been obvious over Mendelson-Ohsaki-Mendelson-2006-Griffin.  APPLE-1003, ¶¶[0321]-[0323].

## V.   PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION

Consistent with Congressional intent and goals of *NHK*/*Fintiv*[4], Apple asks

---

[4] Unlike *NHK*, there is no basis for discretionary denial of this Petition under § 325(d), which would only be appropriate if the same or substantially the same art or arguments were previously presented to the Office.  *Advanced Bionics LLC v. MED-EL Elektromedizinische Gerate GmbH*, IPR2019-01469 Pap. 6, 8-10 (PTAB

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

the Board alone to consider challenges raised in this Petition. *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11, 6 (PTAB 2020). As explained below, *Fintiv* favors institution.

## A.    Factor 1: Institution Will Increase Likelihood of Stay

Institution will enable the Board to resolve the issue of validity, and a finding of invalidity will relieve the Central District of California (the "District Court") of the need to continue with the companion litigation. Apple intends to move to stay the District Court case, and the opportunity for such simplification increases the likelihood that the court will grant a stay in view of IPR institution. *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case No. 2:16-cv-642-JRG, 2-3 (E.D. Tex. 2017); *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 13-CV-1058, 2015 WL 1069111 (E.D. Tex. 2015).

---

Feb. 13, 2020)(precedential). The arguments advanced in this Petition are premised on combinations of references that were never presented to the Office in connection with the '553 Patent. Mendelson '799 does appear as one among hundreds of listed references, but there is no indication that it was substantively considered; indeed, and as noted above, no office actions issued during the prosecution of the application from which the '553 Patent issued. *See, generally,* APPLE-1002.

101

## B.     Factor 2: District Court Schedule

Trial in the District Court case is scheduled for April 5, 2022.  APPLE-1031, 1.  Based on the 18-month IPR schedule, a Final Written Decision ("FWD") in an IPR arising from the present Petition would issue in early March of 2022, prior to the District Court trial date.

In addition, as in *NHK*, district court trial dates shift, even in normal times. *Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap. 22, 17 (PTAB 2019).  The District Court is one of the country's busiest patent courts.  Scheduling issues cannot be ruled out, as experts have professed that additional COVID-19 outbreaks are likely to arise and California is facing new outbreaks.  APPLE-1034, 1 ("Fauci says second wave of coronavirus is 'inevitable'"); APPLE-1035, 4 ("Los Angeles County is currently" at "275 [cases] per 100,000 [residents]").

## C.     Factor 3: Apple's Investment in IPR Outweighs Forced Investment in Litigation to Date

District court proceedings are still at an early phase.  The parties have yet to file claim construction briefs, no claim construction orders have issued, and the *Markman* hearing is not scheduled until February 8, 2021.  APPLE-1031, 1.  In addition, discovery is not scheduled to close until July 5, 2021.  *Id.*

Apple's substantial investment in these IPR proceedings should counterbalance—if not outweigh—the resources invested in the co-pending litigation given

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

the speed with which Apple is filing IPR petitions on over 150 claims across seven patents.  It would be unjust to consider resources expended in District Court (equally by both parties), without considering Apple resources expended to prepare nine IPR petitions that would be irretrievably lost without consideration on the merits, in addition to the extensive expenses that may be foregone through institution of Apple's petitions and that will otherwise certainly follow in co-pending litigation for which significant milestones exist.

### D.    Factor 4: The Petition Raises Unique Issues

Consistent with *Fintiv*, Apple asks the Board to consider the unique challenges raised in the Petition. Apple has voluntarily stipulated to counsel for Patent Owner that, if the Board institutes the present Petition, Apple will not assert that the Challenged Claims are invalid on the pending Petition's asserted grounds in *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.). APPLE-1032, 1; *see, e.g.*, *Apple v. Seven* at 15-17 (finding that such a stipulation by a petitioner "mitigates, at least to some degree, the concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions").

In addition, the Petition addresses claims that will not be addressed in District Court.  Although Patent Owner has not yet narrowed the asserted claims, the District Court recently ordered the parties to submit "a joint proposal for an initial

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

reduction of infringement contentions" by September 21, 2020. APPLE-1033, 1. Thus, based on this ordered reduction in the asserted claims, the District Court will necessarily address fewer claims than are challenged in this Petition (which challenges all claims of the patent), even assuming the District Court addresses validity at all, which is presently unknowable. *See*, *e.g.*, *Apple v. Seven* at 18.

In short, grounds in this Petition are unique, and will not be addressed in District Court. *See*, *e.g.*, *Apple v. Seven* at 15-20 (weighing this factor against exercising 314(a) discretion where a petitioner challenged several unasserted claims and stipulated that it would not pursue the IPR grounds in the co-pending litigation).

### E.     Factor 5: The Petition Enables the Board to Resolve Invalidity of Claims that Might Otherwise be Reasserted

Apple's Petition is potentially helpful to future defendants. For at least this reason, Apple's status as both Petitioner and defendant is, at worst, a neutral factor. Taking the relevant circumstances into account, institution would serve overall efficiency and integrity, enabling the Board to determine invalidity of claims that Patent Owner might otherwise later assert against others.

### F.     Factor 6: Other Circumstances Support Institution

As *Fintiv* noted, "the factors ... are part of a balanced assessment of all the relevant circumstances in the case," and, "if the merits of a ground raised in the petition seem particularly strong ... the institution of a trial may serve the interest of

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

overall system efficiency and integrity ….” *Fintiv*, 14-15.  As explained in the Petition (and Dr. Kenny's testimony), institution would result in invalidation of the Challenged Claims.

## VI.    CONCLUSION

The cited prior art references disclose or render obvious the Challenged Claims of the '553 patent for the reasons noted hereinabove.  APPLE-1003, ¶¶[0324]-[0325].  Accordingly, Apple respectfully requests institution of an IPR for the Challenged Claims.

## VII.    PAYMENT OF FEES – 37 C.F.R. § 42.103

Petitioner authorizes the Patent and Trademark Office to charge Deposit Account No. 06-1050 for the fee set in 37 C.F.R. § 42.15(a) for this Petition and further authorizes payment for any additional fees to be charged to this Deposit Account.

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

Respectfully submitted,


Dated: August 31, 2020          /W. Karl Renner/
                                W. Karl Renner, Reg. No. 41,265
                                Andrew B. Patrick, Reg. No. 63,471
                                Fish & Richardson P.C.
                                3200 RBC Plaza, 60 South Sixth Street
                                Minneapolis, MN 55402
                                T: 202-783-5553
                                F: 877-769-7945


(Control No. IPR2020-01536)     Attorneys for Petitioner

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

# CERTIFICATION UNDER 37 CFR § 42.24

Under the provisions of 37 CFR § 42.24(d), the undersigned hereby certifies that the word count for the foregoing Petition for *Inter partes* Review totals 13,988 words, which is less than the 14,000 allowed under 37 CFR § 42.24.


Dated: August 31, 2020          /W. Karl Renner/
                               W. Karl Renner, Reg. No. 41,265
                               Andrew B. Patrick, Reg. No. 63,471
                               Fish & Richardson P.C.
                               3200 RBC Plaza, 60 South Sixth Street
                               Minneapolis, MN 55402
                               T: 202-783-5070
                               F: 877-769-7945

                               *Attorneys for Petitioner*

Attorney Docket No. 50095-0012IP1
IPR of U.S. Patent No. 10,588,553

## CERTIFICATE OF SERVICE

Pursuant to 37 CFR §§ 42.6(e)(4)(i) *et seq.* and 42.105(b), the undersigned

certifies that on August 31, 2020, a complete and entire copy of this Petition for *Inter partes* Review and all supporting exhibits were provided via Federal Express,

to the Patent Owner by serving the correspondence address of record as follows:

KNOBBE, MARTENS, OLSON & BEAR, LLP
MASIMO CORPORATION (MASIMO)
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE CA 92614

/Diana Bradley/
Diana Bradley
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
(858) 678-5667

1

# Exhibit G

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent of:  Jeroen Poeze et al.
U.S. Patent No.:  10,588,553          Attorney Docket No.:  50095-0012IP2
Issue Date:  March 17, 2020
Appl. Serial No.:  16/534,949
Filing Date:  August 7, 2019
Title:  MULTI-STREAM DATA COLLECTION SYSTEM FOR
        NONINVASIVE MEASUREMENT OF BLOOD CONSTITU-
        ENTS

**Mail Stop Patent Board**
Patent Trial and Appeal Board
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

## PETITION FOR *INTER PARTES* REVIEW OF UNITED STATES PATENT NO. 10,588,553 PURSUANT TO 35 U.S.C. §§ 311–319, 37 C.F.R. § 42

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

# TABLE OF CONTENTS

I.   MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1)............................3
     A.  Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1)....................3
     B.  Related Matters Under 37 C.F.R. § 42.8(b)(2) ...........................3
     C.  Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3)...................4
     D.  Service Information ....................................................4

II.  PETITIONER HAS STANDING TO REQUEST IPR...................................4

III. OVERVIEW OF THE '553 PATENT ............................................5
     A.  Brief Description......................................................5
     B.  Level of Ordinary Skill in the Art....................................7
     C.  Claim Construction ...................................................7

IV.  APPLICATION OF PRIOR ART TO THE '553 PATENT CLAIMS...........8
     A.  Asserted Grounds and References .......................................8
     B.  GROUND 1: Claims 1-6, 9-18, 20-24, and 29 are obvious over Aizawa, Inokawa, and Ohsaki.................................................9
         1.  Overview of Aizawa..............................................9
         2.  Overview of Inokawa............................................12
         3.  Overview of Ohsaki.............................................15
         4.  Combination of Aizawa, Inokawa, and Ohsaki ...................16
         5.  Manner in which Aizawa-Inokawa-Ohsaki discloses Claims 1-6, 9-18, 20-24, and 29.........................................32
     C.  GROUND 2 – Claims 7 and 19 are obvious over Aizawa, Inokawa, Ohsaki, and Mendelson-2006 .......................................75
         1.  Overview of Mendelson-2006.....................................75
         2.  Combination of Aizawa, Inokawa, Ohsaki, and Mendelson-2006 ...................................................77
         3.  Manner in which Aizawa, Inokawa, Ohsaki, and Mendelson-2006 render obvious Claims 7 and 19....................................83
     D.  GROUND 3 – Claims 8 and 25-28 are obvious over Aizawa, Inokawa, Ohsaki, Mendelson-2006, and Sherman...............................94
         1.  Overview of Sherman...........................................94
         2.  Combination of Aizawa, Inokawa, Ohsaki, Mendelson-2006, and Sherman......................................................95
         3.  Manner in which Aizawa, Inokawa, Ohsaki, Mendelson-2006, and Sherman render obvious Claims 8 and 25-28 ............................98

V.   PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION........101
     E.  Factor 1: Institution Will Increase Likelihood of Stay ......................101

i

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

F.   Factor 2: District Court Schedule ........................................................102

G.   Factor 3: Apple's Investment in IPR Outweighs Forced Investment in Litigation to Date ................................................................................102

H.   Factor 4: The Petition Raises Unique Issues ........................................103

I.   Factor 5: The Petition Enables the Board to Resolve Invalidity of Claims that Might Otherwise be Reasserted ....................................................104

J.   Factor 6: Other Circumstances Support Institution .............................105

VI.   CONCLUSION........................................................................................105

VII.   PAYMENT OF FEES – 37 C.F.R. § 42.103 ............................................105

ii

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

# EXHIBITS

APPLE-1001         US Patent No. 10,588,553

APPLE-1002         File History for U.S. Patent No. 10,588,553

APPLE-1003         Declaration of Dr. Kenny

APPLE-1004         Curriculum Vitae of Dr. Kenny

APPLE-1005         *Masimo Corporation, et al. v. Apple Inc.*, Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.)

APPLE-1006         US Pub. No. 2002/0188210 ("Aizawa")

APPLE-1007         JP Pub. No. 2006/296564 ("Inokawa")

APPLE-1008         Certified English Translation of Inokawa and Translator's Declaration

APPLE-1009         US Pub. No. 2001/0056243 ("Ohsaki")

APPLE-1010         "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Y. Mendelson, et al.; Proceedings of the 28th IEEE EMBS Annual International Conference, 2006; pp. 912-915 ("Mendelson-2006")

APPLE-1011         US Patent No. 4,941,236 ("Sherman")

APPLE-1012         RESERVED

APPLE-1013         US Pub. No. 2004/0054291 ("Schulz")

APPLE-1014-1018         RESERVED

APPLE-1019         Design of Pulse Oximeters, J.G. Webster; Institution of Physics Publishing, 1997 ("Webster")

iii

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

| APPLE-1020 | QuickSpecs; HP iPAQ Pocket PC h4150 Series |
|---|---|
| APPLE-1021 | How to Do Everything with Windows Mobile, Frank McPherson; McGraw Hill, 2006 ("McPherson") |
| APPLE-1022 | Master Visually Windows Mobile 2003, Bill Landon, et al.; Wiley Publishing, Inc., 2004 ("Landon") |
| APPLE-1023 | "Stimulating Student Learning with a Novel 'In-House' Pulse Oximeter Design," J. Yao and S. Warren; Proceedings of the 2005 American Society for Engineering Education Annual Conference & Exposition, 2005 ("Yao") |
| APPLE-1024 | US Pub. No. 2008/0194932 ("Ayers") |
| APPLE-1025 | U.S. Patent No. 7,031,728 ("Beyer") |
| APPLE-1026 | US Pub. No. 2007/0145255 ("Nishikawa") |
| APPLE-1027-1030 | RESERVED |
| APPLE-1031 | Scheduling Order, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 37 (April 17, 2020) |
| APPLE-1032 | Stipulation by Apple |
| APPLE-1033 | Telephonic Status Conference, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 78 (July 13, 2020) |
| APPLE-1034 | Joseph Guzman, "Fauci says second wave of coronavirus is 'inevitable'", TheHill.com (Apr. 29, 2020), available at: https://thehill.com/changing-america/resilience/natural-disasters/495211-fauci-says-second-wave-of-coronavirus-is |
| APPLE-1035 | "Tracking the coronavirus in Los Angeles County," LATimes.com (Aug. 20, 2020), available at https://www.latimes.com/projects/california-coronavirus-cases-tracking-outbreak/los-angeles-county/ |

iv

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

APPLE-1036        Declaration of Jacob R. Munford

v

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

Apple Inc. ("Petitioner" or "Apple") petitions for *Inter Partes* Review ("IPR") of claims 1-29 ("the Challenged Claims") of U.S. Patent No. 10,588,553 ("'553 Patent"). As explained in this Petition, there exists a reasonable likelihood that Apple will prevail with respect to at least one of the Challenged Claims.

The '553 Patent describes and claims a purported improvement to a "noninvasive optical physiological sensor": a cover with "a single protruding convex surface" that is configured to be located between "at least four" detectors and user tissue, and that is operable to conform user tissue to the surface when the sensor is worn. APPLE-1001, 14:3-10, 36:30-41, 44:50-67 (claim 1), FIGS. 1, 14D. Each detector "can be implemented using one or more photodiodes, phototransistors, or the like," "can capture and measure light transmitted from [an] emitter … that has been attenuated or reflected from the tissue," and can "output a detector signal … responsive to the light …." *Id.*, 14:3-10. Placement of a cover with a protrusion over the detectors is said to offer multiple benefits; the protrusion may, for example, "penetrate[] into the tissue and reduce[] the path length of the light …." *Id.*, 14:3-10, 24:16-35, 10:61-11:13.

But the claimed sensor was not new. To the contrary, the '553 Patent was granted without full consideration to the wide body of applicable prior art. *See generally* APPLE-1002 (no office actions issued during the prosecution of the application from which the '553 Patent issued). And, as Dr. Thomas Kenny explains

in his accompanying declaration with respect to the prior art applied in this Petition, noninvasive optical physiological sensors such as pulse rate detectors and pulse oximeters commonly included covers by the '553 Patent's earliest effective filing date, and a sensor including each feature of the Challenged Claims would have been obvious to a POSITA.  APPLE-1003, ¶¶[0040]-[0043]; APPLE-1001, 44:50-47:22.

For example, Aizawa (APPLE-1006) describes a pulse wave sensor featuring "four photodetectors" disposed around a central light source and a "holder" that secures the light source and photodetectors.  APPLE-1003, ¶[0023]; APPLE-1006, FIGS. 1(a), 1(b).  And, similar to the '553 Patent, Ohsaki (APPLE-1009) describes an optical sensor that features a cover with a protruding convex surface that is placed "in intimate contact with the surface of the user's skin" when the sensor is worn.  APPLE-1009, Title, Abstract, ¶¶[0016], [0017], FIGS. 1, 2.  Ohsaki is not alone, as Inokawa (APPLE-1007, APPLE-1008) and other references likewise disclose covers with protruding convex surfaces for use in optical sensors.  APPLE-1008, ¶¶14-15, FIGS. 2, 3.   And, as Dr. Kenny explains, a POSITA would have found it obvious to utilize such a cover in Aizawa's sensor.  APPLE-1003, ¶¶[0055]-[0063], [0068]-[0094].

Accordingly, the Challenged Claims are unpatentable based on teachings set forth in at least the references presented in this Petition.  APPLE-1003, ¶¶[0001]-

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

[0326].  Apple respectfully submits that an IPR should be instituted, and that the Challenged Claims should be canceled as unpatentable.

## I.   MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1)

### A. Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1)

Apple Inc. is the real party-in-interest (RPI).

### B. Related Matters Under 37 C.F.R. § 42.8(b)(2)

Patent Owner filed a complaint on January 9, 2020 in the U.S. District Court for the Central District of California (CDCA) (Case No. 8:20-cv-00048) against Apple, alleging infringement by Apple of the '553 Patent.  The complaint was served to Apple on January 13, 2020.

This Petition is being filed concurrently with another petition for IPR of the '553 Patent (IPR2020-01536) and with a petition for IPR of related U.S. Patent No. 10,258,265 (IPR2020-01520).[1]  No other petitions for IPR of the '553 Patent have been filed.

---

[1] Pursuant to the Trial Practice Guide, both petitions for IPR of the '553 Patent are being filed with a paper providing a succinct explanation of the differences between the petitions, why the issues addressed by the differences are material, and why the Board should exercise its discretion to institute both petitions.

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

## C. Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3)

Apple provides the following designation of counsel.

| LEAD COUNSEL | BACKUP COUNSEL |
|---|---|
| W. Karl Renner, Reg. No. 41,265<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email:  IPR50095-0012IP2@fr.com | Andrew B. Patrick, Reg. No. 63,471<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email: PTABInbound@fr.com |

## D. Service Information

Please address all correspondence and service to the address listed above.

Petitioner consents to electronic service by email at IPR50095-0012IP2@fr.com

(referencing No. 50095-0012IP2 and cc'ing PTABInbound@fr.com, axf-ptab@fr.com and patrick@fr.com).

## II.   PETITIONER HAS STANDING TO REQUEST IPR

Apple certifies that the '553 Patent is available for IPR.  This Petition is being filed within one year of service of a complaint against Apple in *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.).  Apple is not barred or estopped from requesting review on the below-identified grounds.

4

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

## III.   OVERVIEW OF THE '553 PATENT

### A. Brief Description

The '553 Patent generally relates to "noninvasive methods, devices, and systems for measuring a blood constituent or analyte … or for measuring many other physiologically relevant patient characteristics."  APPLE-1001, 2:29-37.

The system described by the '553 Patent is said to include, in one embodiment, "a noninvasive sensor and a patient monitor communicating with the noninvasive sensor."  APPLE-1001, 2:38-40.  The exemplary data collection system 100 illustrated by the '553 Patent's FIG. 1 (reproduced below) includes "a sensor 101 … that is coupled to a processing device or physiological monitor 109."  *Id.*, 5:35-38, 11:47-49.



APPLE-1001, FIG. 1

5

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

"The non-invasive sensor may include different architectures," and the "patient monitor" with which the sensor communicates may "include a display device," and "a network interface communicating with any one or combination of a computer network, a handheld computing device, a mobile phone, the Internet, or the like." *Id.*, 2:45-48.

The '553 Patent describes several potential sensor architectures with respect to FIGS. 14A-14I.  APPLE-1001, 6:38-49, 35:36-38:20.  For example, the '553 Patent's FIG. 14C (reproduced below) illustrates a sensor featuring a "detector submount 1400*c* … positioned under [a] protrusion 605*b* in a detector subassembly 1450 illustrated in FIG. 14D" (also reproduced below).



APPLE-1001, FIGS. 14C, 14D

6

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

As illustrated in FIG. 14D, a housing 1430 including "a transparent cover 1432, upon which the protrusion 605b is disposed" surrounds each of the detectors 1410*c*.  APPLE-1001, 36:30-41; APPLE-1003, ¶¶[0044]-[0054].

## B.  Level of Ordinary Skill in the Art

A person of ordinary skill in the art relating to the subject matter of the '553 Patent as of July 3, 2008 ("POSITA") would have been a person with a working knowledge of physiological monitoring technologies.  The POSITA would have had a Bachelor of Science degree in an academic discipline emphasizing the design of electrical, computer, or software technologies, in combination with training or at least one to two years of related work experience with capture and processing of data or information, including but not limited to physiological monitoring technologies.  APPLE-1003, ¶¶[0001]-[0018], [0020]-[0021].  Additional education in a relevant field or industry experience may compensate for one of the other aspects of the POSITA characteristics stated above.  *Id.*

## C.  Claim Construction

Petitioner submits that all claim terms should be construed according to the Phillips standard.  *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); 37 C.F.R. § 42.100.  Here, based on the evidence below and the prior art's description of the claimed elements being similar to that of the '554 patent specification, no formal claim constructions are necessary in this proceeding because "claim terms

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

need only be construed to the extent necessary to resolve the controversy." *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011).  APPLE-1003, ¶[0022].

Furthermore, Apple is not conceding that each challenged feature satisfies all statutory requirements such as 35 U.S.C. § 112.  As this is an IPR petition, Apple is pursuing prior art-based grounds.  Apple is not waiving any arguments concerning other grounds that can only be raised in district court.

## IV.    APPLICATION OF PRIOR ART TO THE '553 PATENT CLAIMS

### A. Asserted Grounds and References

The Challenged Claims are invalid based on the grounds noted in the table below, as further explained in this Petition.  Accompanying explanations and support are provided in the Declaration of Dr. Thomas Kenny (APPLE-1003).  APPLE-1003, ¶¶[0001]-[0328].

| Ground | Claims | Basis for Rejection |
|--------|--------|---------------------|
| 1 | 1-6, 9-18, 20-24, and 29 | Obvious (§ 103) based on Aizawa in combination with Inokawa and Ohsaki |
| 2 | 7 and 19 | Obvious (§ 103) based on Aizawa in combination with Inokawa, Ohsaki, and Mendelson-2006 |
| 3 | 8 and 25-28 | Obvious (§ 103) based on Aizawa in combination with Inokawa, Ohsaki, Mendelson-2006, and Sherman |

8

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

Each applied reference pre-dates U.S. provisional application 61/078,207, filed on July 3, 2008, which is the earliest filed application from which the '553 Patent claims priority.  Petitioner does not take a position as to whether the '553 Patent is entitled to the priority date of July 3, 2008 (hereinafter "Critical Date" or "Earliest Effective Filing Date"), but has applied references that pre-date the Critical Date and qualify as prior art, as shown in the table below.  APPLE-1003, ¶[0019].

| Reference | | Date | Section |
|---|---|---|---|
| Aizawa | US 2002/0188210 | 12/12/2002 (published) | 102(b) |
| Inokawa | JP 2006/296564 | 11/02/2006 (published) | 102(b) |
| Ohsaki | US 2001/0056243 | 12/27/2001 (published) | 102(b) |
| Mendelson-2006 | (NPL) | 09/2006 (published) | 102(b) |
| Sherman | US 4,941,236 | 07/17/1990 (issued) | 102(b) |

## B. GROUND 1: Claims 1-6, 9-18, 20-24, and 29 are obvious over Aizawa, Inokawa, and Ohsaki

### 1. Overview of Aizawa

Aizawa relates to a "pulse wave sensor…detecting light output from a light emitting diode and reflected from the artery of a wrist of a subject."  AP-PLE-1006, Abstract.  Aizawa's sensor includes "four photodetectors disposed

9

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

around the light emitting diode" and a "holder" that secures the light emitting diode (LED) and photodetectors.  *Id.*, ¶[0023]; FIGS. 1(a), 1(b).

The sensor can be worn by a subject with the LED facing toward the subject's wrist, and fastened using a belt.  *Id.*, ¶[0026].  In operation, the light emitting diode irradiates an artery of the wrist "with light having a wavelength of an infrared range," and the optical sensor non-invasively detects "the pulse wave…from light reflected from a red corpuscle in the artery."  APPLE-1006, ¶¶[0002], [0008]-[0018]; APPLE-1003, ¶¶[0055]-[0060].

In more detail, and as shown in Aizawa's FIGS. 1(a) and 1(b), Aizawa's "pulse wave detector" includes an optical sensor featuring "an **LED** 21," **four photodetectors** 22 disposed symmetrically on a circle concentric to the LED 21, and "a **holder** 23 for storing the above light emitting diode 21 and the photodetectors 22."[2]  APPLE-1006, ¶[0023].

---

[2] Throughout this Petition, bolding in quotations is added for emphasis, unless otherwise indicated.

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

FIG. 1(a)



FIG. 1(b)



APPLE-1006, FIGS. 1(a) (top, annotated), 1(b) (bottom, annotated)

As illustrated, Aizawa's pulse rate detector also includes "a **drive detection circuit** 24 for detecting a pulse wave by amplifying the outputs of the photodetectors 22," "an **arithmetic circuit** [3] for computing a pulse rate from the detected pulse wave data," and "a **transmitter** [4] for transmitting the above pulse rate data to an unshown **display**."  APPLE-1006, ¶[0023].

11

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

Aizawa's pulse wave sensor transmits its data to an "unshown display," and can be "coupled to devices making use of bio signals" and/or a device that performs computations. *Id.*, ¶[0023], [0028], [0035].

To improve adhesion between the sensor and the subject's wrist, Aizawa's sensor also includes an acrylic transparent plate positioned between the photodetectors and the wrist. APPLE-1006, ¶[0034]. For example, Aizawa's FIG. 1(b) shows the plate in contact with the user's wrist. *Id.*, FIG. 1(b).



APPLE-1006, FIG. 1(b) (annotated)

## 2. Overview of Inokawa

Inokawa is directed to a wearable optical sensing system that gathers "various kinds of vital sign information such as pulse." APPLE-1008, ¶[0001]. Inokawa's system includes a sensor and a base device. *Id.*, ¶¶[0055]-[0066].

12

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

The sensor includes a "pair of light-emitting elements," the reflected light of which is used to "sense the pulse" of the subject by detecting "change in the amount of hemoglobin in the capillary artery," and to sense "body motion"; the sensor also includes a "single photodiode" that "receives the reflected light" from the light-emitting elements. *Id.*, ¶¶[0058]-[0059], FIG. 2. A convex lens (highlighted in light blue) is placed between the photodiode and the subject's skin. *Id.*, The lens is sufficiently rigid to make the tissue conform to the convex surface of the lens. *Id.*



APPLE-1008, FIG. 2 (annotated)

The base device is "a charger with communication functionality that is

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

used when the pulse sensor…is mounted." *Id*., ¶[0060]; FIG. 3. When the sensor is mounted onto the base device, "vital sign information…such as pulse and body motion, is transmitted to the base device…using the…infrared LED." *Id*., ¶[0076]. In other words, the sensor component transmits the collected data to a computer through the base device, using an optical communications interface implemented through the infrared LED. APPLE-1003, ¶¶[0061]-[0062].



APPLE-1008, FIG. 3

Exhibit G
Page 436

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

### 3.  Overview of Ohsaki

Ohsaki is titled "Wristwatch-type human pulse wave sensor attached on back side of user's wrist" and, as illustrated in Ohsaki's FIG. 1 (reproduced below), is generally directed to a wrist-worn "pulse wave sensor" (APPLE-1009, ¶[0016]) featuring a "light emitting element" and a "light receiving element." *Id.*, ¶[0017].  Ohsaki's sensor addresses problems such as user discomfort and movement of the sensor by using a "translucent board" with a convex surface that is "in intimate contact with the surface of the user's skin" to prevent slippage.  *Id.*, ¶¶[0009]-[0010].  Because the intensity of the light received by the detecting element "largely varies depending on the shift amount," or amount of movement of the detecting element, Ohsaki's convex surface reduces the "variation of the amount of reflected light which is emitted" from the LED and reaches the detecting element after reflection from the user's skin.  *Id.*, ¶[0025], FIG. 2; APPLE-1003, ¶[0063].

Exhibit G
Page 437

# FIG. 2



APPLE-1009, FIG. 2

## 4.   Combination of Aizawa, Inokawa, and Ohsaki

*Plurality of emitters*

As described in Section IV.B.1, Aizawa discloses a pulse wave sensor in which multiple detectors are disposed around a centrally located LED/emitter. APPLE-1006, ¶[0023].  Aizawa explains that "[t]he arrangement of the light emitting diode 21 and the photodetectors 22 is not limited" to that shown or described in connection with any particular embodiment.  APPLE-1006, ¶[0032]. Although Aizawa emphasizes the desirability of disposing photodetectors "on a

16

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

circle concentric to" a light source, so as to enable accurate pulse wave detection "even when the attachment position of the pulse rate detector 1 is dislocated," Aizawa describes alternative arrangements in which "a plurality of light emitting diodes 21" are employed. *Id.*, ¶¶[0032]-[0033].

A POSITA would have combined the teachings of Aizawa and Inokawa such that Aizawa's pulse wave sensor would include an additional LED as taught by Inokawa to improve the detected pulse wave by distinguishing between blood flow detection and body movement.  APPLE-1008, ¶[0059] (describing the use of the "S-side green LED 21…to sense the pulse from the light reflected off of the body (i.e. change in the amount of hemoglobin in the capillary artery), while the S-side infrared LED 23 serves to sense body motion from the change in this reflected light"); APPLE-1006, ¶[0006] (recognizing the problem of weak signals from a wearable sensor because the sensor "detects the motion of a red corpuscle…and is easily affected by noise caused by the shaking of the body of the subject), ¶[0028] (describing a device for "computing the amount of motion load" such that the motion can be compensated for); APPLE-1003, ¶¶[0068]-[0083].

As explained in Section IV.B. 2, Inokawa is directed to a wearable optical sensing system that gathers "various kinds of vital sign information," (APPLE-1008, ¶[0001]) including pulse and body motion. *Id.*, ¶¶[0058]-[0059]; FIG. 2.

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

Indeed, in addition to enabling optical communication, the use of multiple LEDs emitting light at different wavelengths—e.g. infrared and green LEDs—enables Inokawa's sensor to detect body motion.  APPLE-1008, ¶[0014]; APPLE-1003, ¶¶[0061]-[0062], [0071]-[0072].  As Inokawa explains, "when using sensor-side light-emitting means of various kinds…the manner of use can be adjusted according to the properties of each respective means" such that "work can be divided between the various means, with an infrared LED used to **detect vital signs** and **transmit** vital sign information, and a green LED used to **detect pulse**."  APPLE-1008, ¶¶[0014], [0040].

As explained in Section IV.B.2, a "green LED" is used to determine a subject's pulse whereas an "infrared LED" is used to sense "body motion."  *Id*., ¶¶[0058]-[0059]; APPLE-1003, ¶¶[00061]-[0062].



(FIG. 2)

APPLE-1008, FIG. 2 (annotated)

Exhibit G
Page 440

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

To obtain the advantages described by Inokawa (e.g., to improve the detected pulse wave by enabling the sensor to distinguish between blood flow detection and body movement, in addition to enabling wireless communication between the sensor and a base station), a POSITA would have configured Aizawa's pulse wave sensor to include at least two LEDs.  APPLE-1003, ¶[; APPLE-1008, ¶¶[0058]-[0059]; APPLE-1006, ¶¶[0006], [0028].

As illustrated below, the Aizawa-Inokawa sensor would have featured two LEDs in place of Aizawa's LED 21.  APPLE-1003, ¶[0075].



Exhibit G
Page 441

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553



APPLE-1006, FIGS. 1(a) (top, annotated) and 1(b) (bottom, annotated)

Aizawa-Inokawa would have utilized two LEDs that emit two different wavelengths.  APPLE-1003, ¶[0076].  LED 21 in the implementation shown in Aizawa's FIG. 1(b) would be replaced with two LEDs.  In this manner, Aizawa's sensor would have been improved through the implementation of a separate LED to account for motion load that the system records and accounts for. APPLE-1006, ¶¶[0006], [0028], [0035].

A POSITA would have combined the teachings of Aizawa and Inokawa as doing so would have amounted to nothing more than the use of a known technique to improve similar devices in the same way and combining prior art elements according to known methods to yield predictable results.  *KSR v. Teleflex*, 550 U.S. 398, 417 (2007); APPLE-1003, ¶[0077].  Here, the combination is

20

nothing more than improving Aizawa's pulse wave sensor that uses a single LED with the use of a known technique disclosed by Inokawa to detect and record body motion in addition to blood flow.  *Id.*

Furthermore, the elements of the combined system would each perform similar functions they had been known to perform prior to the combination.  *Id.* For instance, in Aizawa-Inokawa, Aizawa's photodetectors would still detect light emitted by the LEDs and reflected by the subject's wrist, and Inokawa's two LEDs would still be used to emit light at different wavelengths.  *Id.*  Furthermore, a POSITA would have readily understood how to select different photodiodes with different sensitivities to detect the different wavelengths of light emitted by the two LEDs.  *Id.*

A POSITA would have looked to Inokawa's disclosure of two LEDs emitting light of different wavelengths, in part, because it provides additional functionality, including that of wireless communication with a base station.  *Id.* In particular, Inokawa's base device 17 receives, for example, "pulse and body motion" data through "the S-side infrared LED 23 of the pulse sensor 1 and the B-side PD 45 of the base device 17."  APPLE-1008, ¶[0076].  "As a result, there is no need to use a special wireless communication circuit or a communication cable as previously, which makes it possible to transmit vital sign information to the base device 17 accurately, easily, and without malfunction."  *Id.*, ¶[0077].

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

In other words, the LEDs provided on the sensor can also be used to "accurately, easily, and without malfunction" transmit the sensed data to a base station.  APPLE-1003, ¶[0078].

Although Inokawa shows its two emitters emitting light toward a centrally located detector, a POSITA would have recognized that the same effect can be achieved by having the emitters located centrally instead and emitting radially outward.  APPLE-1003, ¶[0079].  Indeed, Aizawa itself recognizes this reversibility, stating that while the configurations depicted include a central emitter surrounded by detectors, the "same effect can be obtained when…a plurality of light emitting diodes 21 are disposed around the photodetector 22." APPLE-1006, ¶[0033].

With reference to FIG. 19 below, Inokawa further teaches that the use of two LEDs instead of one helps improve data transmission accuracy by using the second LED to transmit checksum information.  APPLE-1003, ¶[0080].  For example, Inokawa describes that "the presence of two pairs of light-emitting and light-receiving elements makes it possible to efficiently transmit information," including increasing the "**accuracy of data**…by transmitting and receiving a **checksum signal** using, for example, the S-side green LED 165 and the other B-side PD 157."  APPLE-1008, ¶¶[0111], [0044], [0048].

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

(FIG. 19)



APPLE-1008, FIG. 19 (annotated)

Intrinsic and extrinsic records confirm that a POSITA would have naturally looked to another wearable physiological sensor, as disclosed in Inokawa, for transmission details.  APPLE-1003, ¶[0081].  Aizawa's device contemplates uploading data to a base device but is silent about how such transmission would be implemented.  APPLE-1006, ¶[0023] (describing its "transmitter for transmitting the above pulse rate data to an unshown display"), ¶[0028] (describing that the transmitter also transmits data to "a device for computing the amount of motion load"); APPLE-1003, ¶[0081].  A POSITA would have recognized that

Exhibit G
Page 445

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

the LED of Aizawa could be used for data communication to a computing device for further analysis in a way that is wireless, eliminating problems associated with a physical cable, and that does not require a separate RF circuit, as taught by Inokawa.  APPLE-1008, ¶¶[0003], [0067], [0075]; APPLE-1003, ¶[0081].  A POSITA would have further recognized that the use of two distinct LEDs to perform such communication would result in enhanced accuracy of the transmitted information.  *Id.*, ¶¶[0068]-[0083].

*Convex surface*

Additionally, a POSITA would have combined the teachings of Aizawa-Inokawa with the teachings of Ohsaki such that the cover of Aizawa-Inokawa's wrist-worn sensor would include a convex surface, improving adhesion between a subject's wrist and a surface of the sensor.  APPLE-1009, ¶[0025] (the convex surface prevents slippage of the detecting element from its position on the subject's wrist, and the convex nature of the surface suppresses the "variation of the amount of the reflected light" that reaches the detecting element); APPLE-1003, ¶[0084].

In more detail, Ohsaki describes a "detecting element" that includes "a package 5, a light emitting element 6 (e.g., LED), a light receiving element 7 (e.g., PD), and a translucent board 8."  APPLE-1009, ¶[0017].  "The package 5 has an open-

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

ing and includes a" substrate in the form of "circuit board 9," on which light emitting element 6 and light receiving element 7 are arranged.  *Id.*; APPLE-1003, ¶[0085].  As shown in Ohsaki's FIG. 2, translucent board 8 is arranged such that, when the sensor is worn "on the user's wrist … the convex surface of the translucent board … is in intimate contact with the surface of the user's skin"; this contact between the convex surface and the user's skin is said to prevent slippage, which increases the strength of the signals obtainable by Ohsaki's sensor.  APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.



APPLE-1009, FIG. 2 (annotated)

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

Ohsaki explains that "if the translucent board 8 has a flat surface, the de-tected pulse wave is adversely affected by the movement of the user's wrist as shown in FIG. 4B (reproduced below)," but that if "the translucent board 8 has a convex surface…variation of the amount of the reflected light…that reaches the light receiving element 7 is suppressed."  APPLE-1009, ¶[0025].  The convex sur-face is also said to prevent "disturbance light from the outside" from penetrating translucent board 8.  *Id*.  Thus, when a convex cover is used, "the pulse wave can be detected without being affected by the movement of the user's wrist 4 as shown in FIG. 4A."  *Id*.

26

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553



APPLE-1009, FIGS. 4A, 4B

As shown below, the POSITA would have found it obvious to modify the
sensor's flat cover (left) to include a lens/protrusion (right), similar to Ohsaki's
translucent board 8, so as to improve adhesion between the user's wrist and the
sensor's surface, improve detection efficiency, and protect the elements within the
sensor housing.  APPLE-1009, ¶[0025] (explaining that the convex surface of
translucent board 8 prevents slippage of a detecting element from its position on
the wrist, and suppresses the "variation of the amount of the reflected light" that
reaches the detecting element); APPLE-1024, ¶¶[0012], [0024], [0033], [0035],

27

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

FIG. 6 (depicting an LED featuring a convex lens); APPLE-1003, ¶¶[0086]-[0088].



APPLE-1006, FIG. 1(b) (annotated)

A POSITA would have combined the teachings of Aizawa-Inokawa and Ohsaki as doing so would have amounted to nothing more than the use of a known technique to improve similar devices in the same way.  APPLE-1003, ¶¶[0084]-[0091].  A POSITA would have recognized that incorporating Ohsaki's convex surface is simply improving Aizawa-Inokawa's transparent plate 6 that has a flat surface to improve adhesion to a subject's skin and reduce variation in the signals detected by the sensor.  *Id.*  Furthermore, the elements of the combined system would each perform similar functions they had been known to perform prior to the combination—Aizawa-Inokawa's transparent plate 6 would remain in the same position, performing the same function, but with a convex surface as taught by Ohsaki.  *Id.*

*Substrate*

28

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

A POSITA would have found it obvious that Aizawa's photodetectors are arranged on a substrate.  APPLE-1003, ¶[0092].  For example, a POSITA would have understood that Aizawa's photodetectors are secured to the sensor device, provided with power by a power source (also not shown), and can receive signals from and transmit signals to other portions of the device, such as drive detection circuit 24, through such a structure.  *Id.*  A POSITA would have understood that the substrate provides physical support and electrical connectivity and is connected to the holder 23.  *Id.*  Moreover, a POSITA would have found it obvious to use such a substrate because it provides a simpler manufacturing process and more compact design than using and routing wires would allow.  *Id.*  As shown in FIG. 1(b), Aizawa illustrates a substrate, but does not label or describe such a structure.

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

# F I G . 1 ( b )



APPLE-1006, FIG. 1(b) (annotated)

To the extent that the surface of holder 23 does not explicitly disclose a substrate, a POSITA would have been motivated to modify Aizawa to incorporate a substrate, such as Ohsaki's circuit board 9 to secure photodetectors 22 and enable photodetectors 22 to send signals to other portions of the sensor.  APPLE-1003, ¶[0093].

30

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

# FIG. 2



APPLE-1009, FIG. 2 (annotated)

A POSITA would have been motivated to modify Aizawa to incorporate

Ohsaki's circuit board 9 to enable photodetectors 22 to send signals to other

portions of the sensor.  APPLE-1003, ¶¶[0092]-[0094]; APPLE-1006, Abstract,

¶¶[0002], [0005], [0008]-[0016], [0023], [0027]-[0029], [0032]-[0033], FIGS.

1, 2, 3, 4(a); APPLE-1009, ¶[0017], FIG. 2.

31

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

### 5. Manner in which Aizawa-Inokawa-Ohsaki discloses Claims 1-6, 9-18, 20-24, and 29

*Claim 1*

***[1pre] A noninvasive optical physiological sensor comprising:***

To the extent the preamble is limiting, Aizawa-Inokawa-Ohsaki renders obvious [1pre]. For example, Aizawa discloses "a pulse wave sensor for detecting a pulse wave by detecting light output from a light emitting diode and reflected from the artery of a wrist of a subject." APPLE-1006, Abstract, FIGS. 1(a), 1(b), 2. In operation, the light emitting diode irradiates an artery of the subject's wrist "with light having a wavelength of an infrared range," and the optical sensor noninvasively detects "the pulse wave…from light reflected from a red corpuscle in the artery." APPLE-1006, ¶¶[0002], [0008]-[0016]. Aizawa's FIG. 2 illustrates the structure of the optical pulse wave sensor and its placement on the subject's wrist. *Id.*, ¶[0018]; APPLE-1003, ¶¶[0095]-[0099].



APPLE-1006, FIG. 2

Exhibit G
Page 454

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

### *[1a] a plurality of emitters configured to emit light into tissue of a user;*

Aizawa-Inokawa-Ohsaki renders obvious [1a].  APPLE-1003, ¶¶[0055]-[0060], [0068]-[0094], [0100]-[0119].  For example, as explained above in Section IV.B.4 and shown in FIGS. 1(a) and 1(b) below, Aizawa and Inokawa, when combined, render obvious using two emitters at different wavelengths in a pulse wave sensor, as illustrated below.



Exhibit G
Page 455

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553



APPLE-1006, FIGS. 1a (top, annotated) and 1b (bottom, annotated)

As explained in Section IV.B.4, using two LEDs emitting light into a tissue of the user at different wavelengths would have been obvious to, for instance, (i) acquire body motion information for improved pulse detection and/or (ii) more reliably transmit information from the sensor to a base device with less error.  APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0018], [0023], [0026]-[0027], [0032]-[0033], FIGS. 1(a), 1(b), 2; APPLE-1008, ¶¶[0001], [0006]-[0007], [0014], [0040], [0055]-[0067], [0074]-[0077], FIGS. 2, 3, 19; APPLE-1003, ¶¶[0100]-[0119].

***[1b] at least four detectors, wherein at least one of the at least four detectors is configured to detect light that has been attenuated by tissue of the user, and wherein the at least four detectors are arranged on a substrate;***

Aizawa-Inokawa-Ohsaki renders obvious [1b].  APPLE-1003, ¶¶[0055]-[0063], [0068]-[0094].  For example, Aizawa discloses a sensor that "**detect[s] light** output from a light emitting diode and **reflected from the artery of a wrist**

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

of a subject." APPLE-1006, ¶[0009].  In particular, "[n]ear infrared radiation output toward the wrist 10 from the light emitting diode 21 is reflected by a red corpuscle running through the artery 11 of the wrist 10 and this reflected light is detected by the plurality of photodetectors 22 so as to detect a pulse wave." *Id*., ¶[0027].

For example, "the waveform of a pulse wave" detected by Aizawa's photodetectors 22 can be displayed as represented by FIG. 3. *Id*., ¶¶[0028]-[0029].



APPLE-1006, FIG. 3

The photodetectors 22 are "disposed at an **equal distance** from the light emitting diode" (APPLE-1006, ¶[0011]) and arranged such that "even when the attachment position of the pulse rate detector 1 is dislocated, one of the photodetectors 22 is located near the artery 11, thereby making it possible to detect a pulse

Exhibit G
Page 457

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

wave accurately." *Id.*, ¶[0027]. As illustrated in Aizawa's FIGS. 1(a), 1(b), 2, and 4(a), at least four photodetectors are "disposed symmetrically" within holder 23 and used "to detect the pulse wave of the wrist," although the "arrangement of the light emitting diode 21 and the photodetectors 22 is not limited to this." *Id.*, ¶[0032].



APPLE-1006, FIG. 1(a) (annotated)

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

# F I G . 1 (b)



APPLE-1006, FIG. 1(b) (annotated)

# F I G . 2



APPLE-1006, FIG. 2 (annotated)

Exhibit G
Page 459

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

# F I G. 4 (a)



APPLE-1006, 4(a) (annotated)

To the extent that Aizawa does not explicitly describe photodetectors 22 as being arranged on a substrate or that the substrate itself is not explicitly labelled or described, a POSITA would have found it obvious that Aizawa's photodetectors are arranged on a substrate because photodetectors 22 are disposed on a surface of holder 23 and are further connected, through the surface of holder 23, to drive detection circuit 24.  APPLE-1003, ¶[0125].  As described in Section IV.B.4 and illustrated below, a POSITA would have found it obvious that the surface of holder 23 acts as a substrate through which at least four photodetectors 22 and drive detection circuit 24 are connected and on which they are arranged because it reduces

38

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

the manufacturing complexity and footprint of the device as compared to using

wires.  APPLE-1003, ¶¶[0068]-[0094], [0125]-[0126].



APPLE-1006, FIG. 1(b) (annotated)

A POSITA would have found it obvious that photodetectors 22 are arranged

on the surface of holder 23 on one side and drive detection circuit 24 is arranged

on another surface of holder 23 on the other side, and further that photodetectors

22, drive detection circuit 24, and other electronics such as arithmetic circuit 3 are

physically and electrically connected through the surface of holder 23.  *Id.*

In addition or alternatively, it would have been obvious to modify Aizawa to

incorporate a substrate on which photodetectors 22 are arranged.  For example,

Ohsaki discloses a substrate—circuit board 9.  APPLE-1009, ¶[0017], FIG. 2.

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

# FIG. 2



APPLE-1009, FIG. 2 (annotated)

Thus, the Aizawa-Inokawa-Ohsaki noninvasive optical physiological sensor would have included at least four detectors that are arranged evenly spaced from one another on a substrate, and that are configured to detect light that has been attenuated by the user's tissue. *See supra* Section IV.B.4.  APPLE-1003, ¶¶[0120]-[0129].

**[1c] *a wall configured to circumscribe at least the at least four detectors; and***

Aizawa-Inokawa-Ohsaki renders obvious [1c].  APPLE-1003, ¶¶ [0130]-[0139].  For example, as discussed for [1pre]-[1b] and further illustrated below, Aizawa depicts and describes a noninvasive optical physiological sensor that includes

40

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

"holder 23 for storing…the photodetectors 22," in addition to other structural elements.  APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0018], [0023]-[0024], [0026]-[0029], [0032]-[0033], FIGS. 1(a), 1(b), 2, 3, 4(a); APPLE-1003, ¶¶[0055]-[0063], [0068]-[0129].

In more detail, and as illustrated in Aizawa's FIGS. 1(a) and 1(b) below, the outer surface of holder 23 (outlined in green) forms a wall that circumscribes photodetectors 22.



APPLE-1006, FIG. 1a (annotated)

Exhibit G
Page 463

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553



APPLE-1006, FIG. 1(b) (annotated)

Additionally, as shown in Ohsaki's FIG. 2, Ohsaki discloses that its "detecting element 2 comprises a package 5" that includes a wall that surrounds, or circumscribes, its light emitting element 6 and light receiving element 7.  The opaque wall has an opening over which "a translucent board…transparent to light" is placed.  APPLE-1009, ¶[0017].

42

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553



APPLE-1009, FIG. 2 (annotated)

Thus, the Aizawa-Inokawa-Ohsaki sensor discloses a wall configured to circumscribe at least the at least four detectors.  APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0018], [0023]-[0024], [0026]-[0029], [0032]-[0033], FIGS. 1(a), 1(b), 2, 3, 4(a); APPLE-1009, ¶[0017], FIG. 2; *see also* APPLE-1013, ¶[0040], FIGS. 6A-B.

**[1d] *a cover configured to be located between tissue of the user and the at least four detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises a single protruding convex surface operable to conform tissue of the user to at least a portion of the single protruding convex surface when the noninvasive optical physiological sensor is worn by the user, and wherein the wall operably connects to the substrate and the cover.***

Exhibit G
Page 465

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

Aizawa-Inokawa-Ohsaki renders obvious [1d].  APPLE-1003, ¶¶[0140]-[0152].  As explained above in Section IV.B.4, the combination of Aizawa, Inokawa, and Ohsaki discloses a sensor plate 6 with a convex surface (similar to Ohsaki's translucent board 8) to realize improved adhesion between the user's wrist and the sensor's surface, improve detection efficiency, and protect the elements within the sensor housing.  APPLE-1003, ¶[0055]-[0063], [0068]-[0139]; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; *see also* APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1008, ¶¶14-15, FIG. 1; APPLE-1024, ¶¶[0033], [0035], FIG. 6.



APPLE-1006, FIG. 1(b) (annotated)

In the combination, the cover with a convex surface (outlined in blue in FIG. 1(b) above) is located between the user tissue and the detectors 22 when the sensor

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

is worn by the user.  APPLE-1006, ¶[0023]; APPLE-1003, ¶[0144].  Moreover, the surface of the user tissue conforms to the single protruding convex surface when the sensor is worn by the user.  *Id*.

In particular, a POSITA would have understood that, when Aizawa's attachment belt 7 is wrapped around the user's wrist, acrylic transparent plate 6 would have been pressed against the user's skin.  *Id*.  And because glass is a rigid material, acrylic transparent plate 6 would have caused tissue of the user to conform to at least a portion of transparent glass when the sensor is worn by the user during its operation.  *Id*.  In fact, Aizawa explicitly describes plate 6 as improving "adhesion between the wrist 10 and the pulse rate detector 1."  APPLE-1006, ¶¶[0026], [0030].

FIG. 1(b) also clearly illustrates that the wall (outlined in green) portion of the holder 23 extends from the substrate to the convex plate 6 and connects the substrate to the convex plate 6.  APPLE-1003, ¶[0146]; *see also infra* claim [2].  Furthermore, a POSITA would have understood that the convex plate 6 is a cover that covers "the detection face 23a of the holder 23" so that adhesion with the user tissue is improved.  APPLE-1006, ¶¶[0026], [0030], [0034]; APPLE-1003, ¶¶[0142]-[0152].

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

## *Claim 2*

**[2] The noninvasive optical physiological sensor of claim 1, wherein the wall operably connects to the substrate on one side and operably connects to the cover on an opposite side.**

Aizawa-Inokawa-Ohsaki renders obvious [2].  APPLE-1003, ¶¶[0153]-[0154].  As discussed for [1pre]-[1d], the Aizawa-Inokawa-Ohsaki sensor includes a wall that circumscribes the photodetectors and operably connects to the substrate on one side and operably connects to the cover on an opposite side.  APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152].

For example, annotated FIG. 1(b) of Aizawa-Inokawa-Ohsaki illustrates a wall that circumscribes the photodetectors 22 and operably connects to the substrate on one side and operably connects to the cover on the opposite side.

46

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

# F I G . 1 ( b )



APPLE-1006, FIG. 2 (annotated)

## Claim 3

*[3] The noninvasive optical physiological sensor of claim 1 wherein the at least four detectors are arranged evenly spaced from one another.*

Aizawa-Inokawa-Ohsaki renders obvious [3].  APPLE-1003, ¶¶[0157]-[0159].  For example, Aizawa explicitly discloses that at least "four photodetectors 22 [are] disposed around the light emitting diode 21 **symmetrically on a circle** concentric to the light emitting diode 21."  APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a), claim 3; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.  The detectors are each 90º apart from neighboring detectors in the circle shown in FIG. 1(a); APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152].

47

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

# F I G . 1 (a)



APPLE-1006, FIG. 1(a) (annotated)

Exhibit G
Page 470

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553





APPLE-1006, FIG. 4(a) (annotated)

Exhibit G
Page 471

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

## *Claim 4*

**[4] The noninvasive optical physiological sensor of claim 3 further comprising: an opaque layer blocking light other than at one or more openings that allow light to pass through to at least one of the at least four detectors.**

Aizawa-Inokawa-Ohsaki renders obvious [4].  APPLE-1003, ¶¶[0160]-[0167].  The Aizawa-Inokawa-Ohsaki sensor stores each of the photodetectors 22 in cavities included within the holder 23, an opaque structure extending from the substrate on which the photodetectors 22 are arranged to a translucent convex cover situated between the sensor and the user's tissue.  APPLE-1006, Abstract, ¶¶ [0023] ("a holder 23 for storing the…light emitting diode 21 and the photodetectors 22,") [0024] (LED 21 and "photodetectors 22 are stored in cavities 23b and 23c formed in the detection face 23a,") FIGS. 1(a), 1(b).

For example, as shown in FIG. 1(b) below, Aizawa's holder 23 blocks light other than at cavities 23b and 23c for the light emitting diode 21 and the photodetectors 22, with each opening 23c allowing light to pass through to the corresponding detectors.  APPLE-1006, ¶[0024]; APPLE-1003, ¶[0162].  The optical paths taken by light exiting cavity 23b and entering cavities 23c are indicated by arrows.

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

# F I G. 1 (b)



APPLE-1006, FIG. 1(b) (annotated).

A POSITA would have readily understood that Aizawa's holder 23, the wall circumscribing the photodetectors, itself is opaque, and any surface of the wall, including the detection face 23a of the holder 23 would be an opaque layer.  APPLE-1003, ¶[0163].  For instance, if the holder 23 were not opaque, then detectors 22 would have detected light emitted from the LED(s) 21 without having been attenuated from the skin.  *Id.*  This would have resulted in Aizawa's pulse rate detector 1 not to operate as desired as signals that have not interacted with user tissue would be used to generate results.  Indeed, a POSITA would have understood that for Aizawa's pulse rate detector 1 to operate as desired, Aizawa's holder 23 would have been an opaque layer to prevent contamination of detected signals.  APPLE-1003, ¶[0163]; *see also* APPLE-1019, 79, 86, 94 ("Ambient light from sources such as sunlight, surgical lamps etc. may cause errors in $SaO_2$ readings; APPLE-1036.  In

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

order to prevent this, the simple solution is to cover the sensor site with opaque
material which can prevent ambient light from reaching the photodiode"); APPLE-
1006, ¶¶[0012], [0023], [0024],  FIGS. 1(a), 1(b) (illustrating an opaque holder
with cavities for storing each of a plurality of photodetectors, the cavities being
sized as appropriate to enable a proper amount of light to reach each detector).

The '553 Patent describes such an opaque layer as being integral to the con-
tact area of the sensor.  APPLE-1001, 19:28-48 (describing that the "contact area
370 of the protrusion 305 can include openings or windows 320, 321, 322, and
323" and "the windows 320, 321, 322, and 323 mirror specific detector placements
layouts such that light can impinge through the protrusion 305 onto the photodetec-
tors.")  A POSITA would have understood that Aizawa's cavities 23b and 23c are
openings or windows that mirror specific detector placement layouts "such that
light can impinge…onto the photodetectors" that are formed in the contact face of
holder 23.  APPLE-1003, ¶[0164].  Although not explicitly shown, a POSITA
would have understood that an opening 23c is implemented for each photodetector
22. *Id*.

Indeed, by the '553 Patent's Critical Date, optical sensors commonly em-
ployed opaque layers with windows corresponding to detectors.  APPLE-1003,
¶[0165]; *see* APPLE-1013, ¶[0073], FIGS. 19A-19C; APPLE-1006, ¶¶[0012],
[0013], [0023], [0024], [0030],  FIGS. 1(a), 1(b).

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

<u>Claim 5</u>

**[5] The noninvasive optical physiological sensor of claim 1, wherein at least part of the cover is light permeable.**

Aizawa-Inokawa-Ohsaki renders obvious [5].  APPLE-1003, ¶¶[0168]-[0169].  As discussed for [1pre]-[1d], and illustrated in FIG. 1(b) of Aizawa, the Aizawa-Inokawa-Ohsaki sensor includes a transparent (or translucent), convex cover configured to be located between tissue of the user and the photodetectors when the sensor is worn by the user.  APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152]; APPLE-1006, [0030] ("the acrylic **transparent** plate is provided on the detection face 23a of the holder 23"), [0032]-[0033], FIG. 1(b); APPLE-1009, ¶[0025] ("The detecting element 2 is arranged on the user's wrist 4 so that the con-vex surface of the **translucent** board 8 is in intimate contact with the surface of the user's skin"), FIGS. 1, 2, 4A, 4B.

53

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553



APPLE-1006, FIG. 1(b) (annotated)

*Claim 6*

**[6] The noninvasive optical physiological sensor of claim 5, wherein the cover is configured to allow light to reach at least one of the at least four detectors.**

Aizawa-Inokawa-Ohsaki renders obvious [6].  APPLE-1003, ¶¶[0170]-[0173].  As discussed for [1pre]-[1d] and [5], the Aizawa-Inokawa-Ohsaki sensor would have included four or more photodetectors and a transparent, convex cover configured to be located between tissue of the user and the photodetectors when the sensor is worn by the user.  APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0168]-[0169]; APPLE-1006, [0030], [0032]-[0033], FIG. 1(b); APPLE-1009,

Exhibit G
Page 476

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

¶[0025], FIGS. 1, 2, 4A, 4B.  A POSITA would have recognized that the transparent cover would have been configured to allow light to reach each of the four or more photodetectors included in the resulting sensor along the optical paths indicated by arrows.  APPLE-1003, ¶[0172].



APPLE-1006, FIG. 1(b) (annotated)

*Claim 9*

**[9] The noninvasive optical physiological sensor of claim 1, wherein the attenuated light is reflected by the tissue.**

Aizawa-Inokawa-Ohsaki renders obvious [9].  APPLE-1003, ¶[0174]-[0175].  As discussed for [1pre]-[1d], the Aizawa-Inokawa-Ohsaki sensor would have included a plurality of light emitting diodes, and at least four detectors that

55

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

are configured to detect attenuated light that has been reflected by the user's tissue. APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152]; APPLE-1006, ¶¶[0009] (Aizawa's photodetectors "detect light output from a light emitting diode and **reflected from the artery of a wrist** of a subject"—this light emitted by the light emitting diode is necessarily attenuated by the tissue of the subject), [0027].


_Claim 10_

**[10pre] An optical physiological measurement sensor comprising:**

To the extent the preamble is limiting, Aizawa-Inokawa-Ohsaki renders obvious [10pre].  APPLE-1003, ¶¶[0176]-[0177].  As discussed for [1pre]-[1d], the Aizawa-Inokawa-Ohsaki sensor is a non-invasive physiological measurement sensor using an optical detection technique, or an optical physiological measurement sensor.  APPLE-1006, Abstract ("a pulse wave sensor for detecting a pulse wave by detecting **light output**"), ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152].


**[10a] a plurality of emitters configured to emit light into tissue of a user;**

Aizawa-Inokawa-Ohsaki renders obvious [10a].  _Supra_, [1a], Sections IV.B.1-5; _see also_ APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0178]-[0179];

56

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], FIGS., 1(a), 1(b), 2.

### [10b] a substrate including a planar surface;

Aizawa-Inokawa-Ohsaki renders obvious [10b].  APPLE-1003, ¶¶[0180]-[0184].  As discussed for [1pre]-[1d], the Aizawa-Inokawa-Ohsaki sensor would have included a substrate.  APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027]-[0029], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, ¶[0017], FIG. 2.

Furthermore, the surface of Aizawa's holder 23 on which photodetectors 22 are arranged is shown to be a flat, planar surface.  APPLE-1003, ¶[0181].



APPLE-1006, FIG. 1(b)

Additionally, Ohsaki's circuit board 9 on which the "light emitting element 6 and light receiving element 7" are arranged is shown to be a flat, planar surface.

Exhibit G
Page 479

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

APPLE-1009, ¶[0017].



APPLE-1009, FIG. 2 (annotated).

To the extent that Aizawa-Inokawa-Ohsaki does not explicitly disclose a planar surface, a POSITA would have understood Aizawa-Inokawa-Ohsaki to render obvious a planar surface.  APPLE-1003, ¶¶[0180]-[0184].

Exhibit G
Page 480

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

***[10c] at least four detectors operably arranged on the planar surface of the substrate in a pattern;***

Aizawa-Inokawa-Ohsaki renders obvious [10c].  APPLE-1003, ¶¶[0185]-[0188].  As discussed for [1pre]-[1d], the Aizawa-Inokawa-Ohsaki sensor would have included at least four detectors operably arranged on the substrate in a pattern.  APPLE-1006, Abstract (a wrist-worn "pulse wave sensor" includes a light emitting diode and "four photodetectors disposed around the light emitting diode symmetrically on a circle concentric to the light emitting diode," ¶[0011] ("disposed at an equal distance from the light emitting diode"); APPLE-1003, ¶¶[0185], [0120]-[0129]; *see also supra* [1b].



APPLE-1006, FIG. 1(a) (annotated)

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

# F I G . 1 ( b )



APPLE-1006, FIG. 1(b) (annotated)

# F I G . 4 ( a )



APPLE-1006, FIG. 4(a) (annotated)

60

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

From this and related description, a POSITA would have understood that Aizawa-Inokawa-Ohsaki renders obvious that photodetectors 22 are arranged on the planar surface of the substrate.  APPLE-1003, ¶¶[0185]-[0188].

### [10d] a cover comprising a single protruding convex surface; and

Aizawa-Inokawa-Ohsaki renders obvious [10d].  APPLE-1003, ¶¶[0189]-[0191].  *Supra* [1d], Sections IV.B.1-5; APPLE-1006, ¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1009, Abstract ("A pulse wave sensor includes a detecting element and a sensor body … [t]he detecting element includes a translucent member on its top, and the translucent member has a convex surface"), [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152]; *see also* Section IV.B.5.

### [10e] a wall that surrounds the at least four detectors, wherein the wall operably connects to the substrate and the cover.

Aizawa-Inokawa-Ohsaki renders obvious [10e].  *Supra* [1d] and [2], Sections IV.B.1-5; APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0055]-[0063], [0068]-[0156], [0192]-[0194].  For example, as illustrated below, the Aizawa-Inokawa-Ohsaki sensor would have rendered obvious, to a POSITA, a wall that surrounds the at least four detectors, wherein the wall operably connects to the substrate and the cover.  APPLE-1003, ¶¶[0192]-[0194].

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

# F I G. 1 (b)



APPLE-1006, FIG. 1(b) (annotated)

*Claim 11*

**[11] The optical physiological measurement sensor of claim 10, wherein the cover is operable to conform tissue of the user to at least a portion of the single protruding convex surface when the optical physiological measurement sensor is worn by the user.**

Aizawa-Inokawa-Ohsaki renders obvious [11].  *Supra* [1pre]-[1d] and

[10pre]-[10e], Sections IV.B.1-4; APPLE-1006, Abstract, ¶¶[0002], [0005],

[0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a);

APPLE-1009, Abstract (describing a "translucent member [that] has a convex sur-

face"), ¶¶[0009] ("The detecting element is attached on the back side of the user's

wrist by a dedicated belt so that the convex surface of the translucent member is **in**

62

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

**intimate contact with the surface of the user's skin**"), [0015], [0017], [0025] ("it

is prevented that the detecting element 2 slips off the detecting position of the

user's wrist 4"), FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0055]-[0063], [0068]-

[0152], [0176]-[0198].

*Claim 12*

**[12] The optical physiological measurement sensor of claim 10, wherein at least
a portion of the cover is sufficiently rigid to be operable to conform tissue of the
user to at least a portion of a shape of the cover.**

Aizawa-Inokawa-Ohsaki renders obvious [12].  *Supra* [1pre]-[1d] and

[10pre]-[10e], Sections IV.B.1-4; APPLE-1006, Abstract, ¶¶[0002], [0005],

[0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a);

APPLE-1009, Abstract, ¶¶[0009], [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; AP-

PLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0176]-[0194], [0199]-[0202].

For example, as illustrated in Ohsaki's FIG. 2, Ohsaki discloses that "the

convex surface of the translucent board 8 is in intimate contact with the surface of

the user's skin," and that slippage of the detecting element "off the detecting posi-

tion of the user's wrist" is thereby prevented.  APPLE-1009, ¶[0025], FIGS. 1, 2.

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

## FIG. 2



APPLE-1009, FIG. 2 (annotated).

From this and related disclosure, a POSITA would have understood and
would have been motivated to implement a translucent board 8 that is sufficiently
rigid to conform tissue of the user to its convex shape.  APPLE-1003, ¶¶[0199]-
[0202].

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

*Claim 13*

**[13] The optical physiological measurement sensor of claim 10, wherein the cover is configured to be positioned between the at least four detectors and tissue of a user when the optical physiological measurement sensor is worn by the user.**

Aizawa-Inokawa-Ohsaki renders obvious [13]. *Supra* [1pre]-[1d] and [10pre]-[10e], Sections IV.B.1-4; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, Abstract, ¶¶[0009], [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0176]-[0194], [0203]-[0206].



APPLE-1006, FIG. 1(b) (annotated)

65

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

*Claim 14*

**[14] The optical physiological measurement sensor of claim 10, wherein the wall comprises an opaque surface.**

Aizawa-Inokawa-Ohsaki renders obvious [14].  *Supra* [1pre]-[1d], [4], and [10pre]-[10e], Sections IV.B.1-4; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, Abstract, ¶¶[0009], [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; AP-PLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0176]-[0194], [0207]-[0211].  For example, a POSITA would have readily understood that any surface of Aizawa-In-okawa-Ohsaki's wall, including the detection face 23a of the holder 23 would be an opaque surface.  APPLE-1003, ¶[0209].  A POSITA would have thus found it obvious that Aizawa's holder 23 discloses, or at least suggests, a wall that comprises an opaque surface.  APPLE-1003, ¶¶[0207]-[0211].

*Claim 15*

**[15] The optical physiological measurement sensor of claim 10, wherein the wall operably connects to the substrate on one side and operably connects to the cover on the other side.**

Aizawa-Inokawa-Ohsaki renders obvious [15].  *Supra* [1pre]-[1d], [2], [10pre]-[10d], [11], and [14]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-

66

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0055]-[0063], [0068]-[0156], [0176]-[0198], [0207]-[0214].

*Claim 16*

**[16] The optical physiological measurement sensor of claim 10, wherein at least a portion of the cover is light permeable.**

Aizawa-Inokawa-Ohsaki renders obvious [16]. *Supra* [1pre]-[1d], [5], [10pre]-[10e], and [11]-[15]; APPLE-1006, ¶¶[0030], [0032]-[0033], FIG. 1(b); APPLE-1009, ¶[0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0168]-[0169], [0176]-[0217].

*Claim 17*

**[17] The optical physiological measurement sensor of claim 16, wherein the cover is configured to allow light to reach at least one of the at least four detectors.**

Aizawa-Inokawa-Ohsaki renders obvious [17]. *Supra* [1pre]-[1d], [5], [10pre]-[10e], and [11]-[15]; APPLE-1006, ¶¶[0030], [0032]-[0033], FIG. 1(b); APPLE-1009, ¶[0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0168]-[0169], [0176]-[0220].

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

*Claim 18*

**[18] The optical physiological measurement sensor of claim 10 further comprising: one or more openings that allow light to pass through to the at least four detectors.**

Aizawa-Inokawa-Ohsaki renders obvious [18].  *Supra* [1pre]-[1d], [4], [10pre]-[10e], and [11]-[16]; APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIG. 1(b); APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0168]-[0169], [0176]-[0223].

Each of the cavities 23c discloses an opening that allows light to pass through the opaque surface of holder 23 to photodetectors 22.  APPLE-1003, ¶¶[0221]-[0223].



APPLE-1006, FIG. 1(b) (annotated)

Exhibit G
Page 490

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

*Claim 20*

**[20pre] A noninvasive optical physiological measurement device comprising:**

As explained above with respect to [1pre]-[1d] and [10pre]-[10e], the sensor resulting from the combination of Aizawa, Inokawa, and Ohsaki discloses a noninvasive optical physiological measurement device.  APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0168]-[0169], [0176]-[0225]; APPLE-1006, Abstract ("a pulse wave sensor for detecting a pulse wave by detecting light output from a light emitting diode and reflected from the artery of a wrist of a subject "), ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a).

Accordingly, [20pre] would have been obvious over Aizawa in view of Inokawa and Ohsaki.  APPLE-1003, ¶¶[0224]-[0225].

**[20a] a plurality of emitters configured to emit light into tissue of a user;**

Aizawa-Inokawa-Ohsaki renders obvious [20a].  *Supra* [1a], Sections IV.B.1-4; *see also* APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0168]-[0169], [0176]-[0194], [0226]-[0227]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], FIGS., 1(a), 1(b), 2.

**[20b] at least four detectors, wherein at least one of the at least four detectors is configured to detect light that has been attenuated by tissue of the user;**

Aizawa-Inokawa-Ohsaki renders obvious [20b].  *Supra* [1b], Sections IV.B.1-4; *see also* APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0168]-[0169],

69

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

[0176]-[0194], [0228]-[0230]; APPLE-1006, Abstract, [0002], [0005], [0008]-

[0016], [0023], [0027]-[0029], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009,

[0017], FIG. 2.

***[20c] a cover configured to be located between tissue of the user and the at least
four detectors when the noninvasive optical physiological measurement device is
worn by the user, wherein the cover comprises a protruding surface operable to
conform tissue of the user to at least a portion of the protruding surface when
the noninvasive optical physiological measurement device is worn by the user,
and wherein at least one of the at least four detectors is configured to receive
light passed through the protruding surface after attenuation by tissue of the
user;***

Aizawa-Inokawa-Ohsaki renders obvious [20c].  *Supra* [1pre]-[1d], [10pre]-

[10e], and [20pre]-[20b], Sections IV.B.1-5; APPLE-1006, ¶[0012], [0013],

[0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1009, Abstract, ¶¶[0015], [0017],

[0025], FIGS. 1, 2, 4A, 4B; ¶¶[0055]-[0063], [0068]-[0152], [0168]-[0169],

[0176]-[0194], [0231]-[0233].  A POSITA would have found it obvious that the

Aizawa-Inokawa-Ohsaki sensor would have included a transparent cover compris-

ing a single protruding convex surface configured to be located between tissue of

the user and twelve detectors when the noninvasive optical physiological measure-

ment device is worn by the user, wherein the cover comprises a single protruding

convex surface operable to conform tissue of the user to at least a portion of the

single protruding convex surface when the noninvasive optical physiological meas-

urement device is worn by the user.  APPLE-1003, ¶¶[0231]-[0233].

***[20d] a wall surrounding the at least four detectors; and***

70

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

Aizawa-Inokawa-Ohsaki renders obvious [20d].  APPLE-1003, ¶¶[0234]-[0235].  As described for [1c], the Aizawa-Inokawa-Ohsaki sensor would have included a wall that surrounds the at least four detectors.  APPLE-1006, ¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1009, Abstract, [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0168]-[0169], [0176]-[0194], [0234]-[0235].

**[20e] a substrate on which at least the at least four detectors are positioned,**

Aizawa-Inokawa-Ohsaki renders obvious [20e].  *Supra* [1b], Sections IV.B.1-4; *see also* APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0168]-[0169], [0176]-[0194], [0236]-[0237]; APPLE-1006, Abstract, [0002], [0005], [0008]-[0016], [0023], [0027]-[0029], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, [0017], FIG. 2.

**[20f] wherein the wall operably connects to the substrate and the cover, thereby positioning the at least four detectors within one or more spaces formed by at least the substrate, the wall, and the cover.**

Aizawa-Inokawa-Ohsaki renders obvious [20f].  *Supra* [2], Sections IV.B.1-4; *see also* APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0168]-[0169], [0176]-[0194], [0238]-[0239]; APPLE-1006, Abstract, [0002], [0005], [0008]-[0016], [0023], [0027]-[0029], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, [0017], FIG. 2.

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

For example, as illustrated below, Aizawa illustrates a wall operably connected to the substrate and the cover, thereby positioning the photodetectors 22 within a space formed by the substrate, the wall, and the cover.  APPLE-1003, ¶[0239].



APPLE-1006, FIG. 1(b) (annotated)

*Claim 21*

**[21] The noninvasive optical physiological measurement device of claim 20, wherein the cover is further configured to allow passage of light to at least one of the at least four detectors after attenuation by tissue of the user via at least one or more light permeable portions of the cover.**

Aizawa-Inokawa-Ohsaki renders obvious [21].  *Supra* [1pre]-[1d], [5], [6], [9], [10pre]-[10d], and [20pre]-[20f], Sections IV.B.1-4; APPLE-1006, ¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1009, Abstract, ¶¶[0015],

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

[0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0168]-[0194], [0224]-[0243].

For example, a POSITA would have understood the Aizawa-Inokawa-Ohsaki sensor to include a cover configured to allow passage of light to the photo-detectors after attenuation by tissue of the subject through transparent, or translucent, portions of the cover.  APPLE-1003, ¶¶[0240]-[0243].

*Claim 22*

**[22] The noninvasive optical physiological measurement device of claim 21, wherein at least a portion of the cover is comprised of a sufficiently rigid material so as to cause the tissue of the user to conform to at least the portion of the protruding surface.**

Aizawa-Inokawa-Ohsaki renders obvious [22].  *Supra* [1pre]-[1d], [10pre]-[10e], [12], and [20pre]-[20f], Sections IV.B.1-4; *see also* APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0176]-[0194], [0199]-[0202], [0224]-[0239], [0244]-[0245]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], FIGS., 1(a), 1(b), 2.APPLE-1006, ¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1009, Abstract, [0015], [0017], [0025], FIGS. 1, 2.

*Claim 23*

**[23] The noninvasive optical physiological measurement device of claim 22, wherein the at least four detectors are evenly spaced from one another.**

73

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

Aizawa-Inokawa-Ohsaki renders obvious [23]. *Supra*, [1pre]-[1d], [3], and [20pre]-[20f], Sections IV.B.1-4; *see also* APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0157]-[0159], [0224]-[0239], [0246]-[0247]; APPLE-1006, Abstract, [0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

## *Claim 24*

**[24] The noninvasive optical physiological measurement device of claim 23 further comprising: one or more openings that allow light to pass through to the at least four detectors.**

Aizawa-Inokawa-Ohsaki renders obvious [24]. *Supra*, [6] and [23], Sections IV.B.1-4; *see also* APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0170]-[0173], [0246]-[0250];APPLE-1006, ¶[0012], [0013], [0023], [0024], [0030], FIG. 1(b); APPLE-1009, [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

## *Claim 29*

**[29] The noninvasive optical physiological measurement device of claim 20, wherein the attenuated light is reflected by the tissue.**

Aizawa-Inokawa-Ohsaki renders obvious [29]. *Supra*, [9] and [20pre]-[20f], Sections IV.B.1-4; *see also* APPLE-1003, ¶¶[0055]-[0063], [0068]-[0152], [0174]-[0175], [0224]-[0239], [0251]-[0252]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], FIGS., 1(a), 1(b), 2.

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

## C. GROUND 2 – Claims 7 and 19 are obvious over Aizawa, Inokawa, Ohsaki, and Mendelson-2006

### 1. Overview of Mendelson-2006

Mendelson-2006 details the structure and testing of a "wireless wearable pulse oximeter" system.  APPLE-1010, Abstract.  Mendelson-2006's system uses pulse oximetry, a "widely accepted method that is used for noninvasive monitoring of $SpO_2$ and [heart rate]," to monitor a subject's physiological signals.  *Id.*, 1.  By transmitting the collected data wirelessly, Mendelson-2006's system provides "numerous advantages," including the ability to determine the condition of a subject "remotely" without requiring the healthcare provider to be physically present.  *Id*.

The system includes a sensor module, a receiver module, and a PDA.  *Id.*, 2.  As shown in FIGS. 1 and 2 of Mendelson-2006, the sensor module includes an "optical reflectance transducer" having two LEDs and a photodiode that "receives and processes the [photoplethysmographic (PPG)] signals" and transmits these signals wirelessly to the PDA through the receiver module.  *Id.*; FIGS. 1 and 2.

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553



Fig. 1. (Top) Attachment of Sensor Module to the skin; (Bottom) photograph of the Receiver Module (left) and Sensor Module (right).



Fig. 2. System block diagram of the wearable, wireless, pulse oximeter. Sensor Module (top), Receiver Module (bottom).

APPLE-1010, FIG. 1 (left) and FIG. 2 (right)

The PDA is a handheld computing device that includes a "touch screen" interface and a simple graphical user interface (GUI) "configured to present the input and output information to the user and allow[ for] easy activation of various functions." APPLE-1010, FIG. 3; *see also* APPLE-1021, Cover, xvii-xviii, 10-12, 17, 63, 363; APPLE-1022, 4-11, 30-31; APPLE-1036, APPLE-1003, ¶¶[0064]-[0066].

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553



Fig. 3.  Sample PDA Graphical User Interface (GUI).

APPLE-1010, FIG. 3

## 2.  Combination of Aizawa, Inokawa, Ohsaki, and Mendelson-2006

Aizawa's pulse rate detector is communicably connected to and transmits "pulse wave data to an unshown display."  APPLE-1006, ¶[0023].  This display is "for displaying the…pulse rate data."  *Id.*, ¶[0028].  Although Aizawa does not depict or describe the display for its pulse wave sensor 2, a POSITA would have found it obvious to implement display 26 as a touch-screen display.  *Id.*, ¶¶[0015], [0023], [0028], [0035]; APPLE-1010, 1-4, FIG. 3; APPLE-1003, ¶[0253]-[0264].  Indeed, by the '553 Patent's 2008 Critical Date, physiological monitoring devices commonly employed touch-screen displays.  APPLE-1003, ¶[0255].  Yitzhak Mendelson's 2006 paper "A Wearable Reflectance Pulse Oximeter for Remote

77

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

Physiological Monitoring," for example, describes a "body-worn" pulse oximetry system that includes a sensor module, a receiver module, and a PDA.  APPLE-1010, 3.

As discussed above in Section IV.C.1 and incorporated herein, Mendelson-2006's system includes a sensor module that transmits signals wirelessly to a PDA through a receiver module.  *Id.*, 2, FIGS. 1-3.  The PDA is said to "provide[] a low-cost touch screen interface."  *Id.*, 3-4; *see also* APPLE-1020, 1-4 (depicting and describing the touch-screen display included within the HP iPAQ h4150 Pocket PC PDA utilized in Mendelson-2006's system); APPLE-1021, Cover, xvii-xviii, 10-12, 17, 63, 363; APPLE-1022, 4-11, 30-3; APPLE-1036.  In more detail, and as shown in Mendelson-2006's FIG. 3 (reproduced below), the PDA's "simple GUI" is "configured to present…input and output information to the user" and to allow "easy activation of various functions."  APPLE-1010, 4; APPLE-1003, ¶¶[0256]-[0257]

A POSITA would have been motivated to look to other physiological sensor systems, such as Mendelson-2006, for details regarding data transmission and display of the data collected using the Aizawa-Inokawa-Ohsaki sensor.  APPLE-1003, ¶[0258].  In more detail and as shown in Mendelson-2006's FIG. 2, the sensor module includes an "optical reflectance transducer" for measuring photoplethys-

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

mographic (PPG) signals, and the receiver module includes "an embedded micro-controller." *Id.*, 1-2. "Signals acquired by the Sensor Module are received by the embedded microcontroller which synchronously converts the corresponding PD output to R and IR PPG signals," and "[d]edicated software is used to filter the signals and compute [arterial oxygen saturation ($SpO_2$)] and [heart rate (HR)] based on the relative amplitude and frequency content of the reflected PPG signals." *Id.*



APPLE-1010, FIG. 2 (annotated)

"[I]nformation acquired by the Sensor Module is transmitted wirelessly via an RF link over a short range to a body-worn Receiver Module," and data processed by the receiver module is "transmitted wirelessly to a PDA." *Id.*, 2, FIG. 2. Mendelson-2006's system uses "the HP iPAQ h4150 PDA because it can support

Exhibit G
Page 501

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

both 802.11b and Bluetooth<sup>TM</sup> wireless communication." *Id.*, 3.  The PDA is used

"as a local terminal," and it "also provides a low-cost touch screen interface." *Id.*;

*see also* APPLE-1020, 1-4 (depicting and describing the HP iPAQ h4150 Pocket

PC PDA utilized in Mendelson-2006's system); *see also* APPLE-1021, Cover,

xvii-xviii, 10-12, 17, 63, 73-101, 176, 190-193, 363; APPLE-1022, 4-11, 30-31,

56-67, 72-92, 284-297; APPLE-1003, ¶¶[0259]-[0260].

Wireless communication with the handheld PDA is, moreover, said to ena-

ble transfer of information pertaining to physiological and wellness parameters

such as "$SpO_2$, HR, body acceleration, and posture information" to the PDA; and,

when the PDA is "carried by medics or first responders," this information is said to

enhance their ability "to extend more effective medical care, thereby saving the

lives of critically injured persons."  APPLE-1010, 2; APPLE-1003, ¶[0261].

80

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553



APPLE-1010, FIG. 3 (left) and APPLE-1020, 1 (right)

To obtain these and other advantages described by Mendelson-2006, a POSITA would have been motivated to implement Aizawa's pulse wave sensor as part of a physiological measurement system including a handheld computing device, and to enable a physiological sensor device including sensor 1 to communicate wirelessly with the handheld computing device.  APPLE-1003, ¶[0262]; APPLE-1006, Abstract ("a pulse wave sensor for detecting a pulse wave by detecting light output from a light emitting diode and reflected from the artery of a wrist of a subject "), ¶¶[0002], [0005], [0008]-[0016], [0023] (describing transmitting "pulse rate data to an unshown display"), [0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1010, 1-4, FIG. 3; *see also* APPLE-1020, 1-4.

81

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

Indeed, by the Critical Date, physiological monitoring devices commonly included touch-screen displays configured to provide user interfaces. APPLE-1003, ¶[0263]; APPLE-1009, 1-4, FIG. 3; APPLE-1024, Abstract, ¶¶[0026], [0044], FIGS. 1-6. A POSITA would have recognized that applying Mendelson-2006's teachings to the Aizawa-Inokawa-Ohsaki sensor would have led to predictable results without altering or hindering the functions performed by the sensor. APPLE-1003, ¶[0263]. In fact, a POSITA would have been motivated to implement the well-known technique of connecting a physiological sensor to a handheld device to cause Aizawa-Inokawa-Ohsaki's sensor to include such features to achieve the predictable benefits offered by Mendelson-2006's description of the same. *Id.* For example, a POSITA would have incorporated, into Aizawa-Inokawa-Ohsaki sensor, Mendelson-2006's disclosure of a PDA with a touch-screen display and "simple GUI" to present "information to the user" and provide "easy activation of various functions." APPLE-1010, 4. Indeed, a POSITA would have had a reasonable expectation of success in making this modification, and would have reasonably expected to reap benefits of displaying a measured waveform representative of a patient's pulse. *Id.*

For at least these reasons, a POSITA would have found it obvious to implement Aizawa's unshown display as a PDA featuring a touch-screen display and/or

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

mobile phone functionality[3] using either or both of 802.11b and Bluetooth[TM].  AP-PLE-1006, ¶[0015], [0023], [0028], [0035]; *see also* APPLE-1020, 1-4; APPLE-1009, ¶[0020]; APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-4; APPLE-1003, ¶¶[0253]-[0264].

### 3.  Manner in which Aizawa, Inokawa, Ohsaki, and Mendelson-2006 render obvious Claims 7 and 19

<u>*Claim 7*</u>

**[7pre] A physiological monitoring device comprising:**

To the extent the preamble is limiting, Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [7pre].  APPLE-1003, ¶¶[0265]-[0266].  As discussed for Section IV.B.5 [1pre]-[1d], Aizawa discloses an optical physiological measurement sensor.  APPLE-1006, Abstract ("a pulse wave sensor for detecting a pulse

---

[3] Mendelson-2006 does not explicitly disclose its PDA to be a mobile phone.  AP-PLE-1003, ¶[0264].  Yet it was well known before the Critical Date that a PDA device was often paired with cellular communication technology to provide a combined PDA/phone device that acts a mobile phone.  *Id*.; APPLE-1025, Title ("Cellular Phone/PDA Communication System"), Abstract, 1:6-15, 7:6-10:11 (describing "a small handheld cellular phone/PDA communications system" featuring "an LCD display 16 that is also a touch screen system"), FIGS. 1-3.

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

wave by detecting light output from a light emitting diode and reflected from the artery of a wrist of a subject "), [0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0055]-[0066], [0068]-[0152], [0253]-[0264].

***[7a] the noninvasive optical physiological sensor of claim 1;***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [7a].  *Supra*, [1pre]-[1d], Sections IV.B.1-4; *see also* APPLE-1003, ¶¶[0055]-[0066], [0068]-[0152], [0253]-[0264], [0267]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], FIGS., 1(a), 1(b), 2.

***[7b] a touch-screen display;***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [7b].  APPLE-1003, ¶¶[0268]-[0282].  For example, Mendelson-2006 discloses a PDA that "provides a low-cost touch screen interface."  APPLE-1010, 3-4; *see als*o APPLE-1020, 1-4 (depicting and describing the touch-screen display included within the HP iPAQ h4150 Pocket PC PDA utilized in Mendelson-2006's system).  A POSITA would have found it obvious to wirelessly transmit information or data acquired or processed by sensor 10 and pulse oximeter 20 to a PDA featuring a touch-screen display and/or mobile phone functionality.  APPLE-1006, Abstract, [0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS.

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

1, 2, 3, 4(a); APPLE-1009, ¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1020, 1-4; APPLE-1021, xvii-xviii, 10-12, 17, 63, 73-101, 176, 190-193, 363; AP-PLE-1022, 4-11, 30-31, 56-67, 72-92; APPLE-1003, ¶¶[0055]-[0066], [0068]-[0152], [0253]-[0264], [0268]-[0282].

***[7c] one or more processors configured to receive data or one or more signals from at least one of the at least four detectors and cause communication of physiological measurement information to at least one of: the touch-screen display or a mobile phone; and***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [7c].  APPLE-1003, ¶¶[0283]-[0287].  As discussed for [1pre]-[1d] and [7pre]-[7b], the Aizawa-Inokawa-Ohsaki-Mendelson 2006 sensor depicts and describes a "pulse wave sensor and **means of computing** the pulse rate of a subject based on the output of the pulse wave sensor."  APPLE-1006, Abstract; APPLE-1003, ¶¶[0055]-[0066], [0068]-[0152], [0253]-[0264], [0265]-[0282].  This "means of computing" includes a "**drive detection circuit 24** for detecting a **pulse wave** by amplifying the outputs of the photodetectors 22," an "**arithmetic circuit** for computing a pulse rate from the detected pulse wave data," that "has a threshold value and computes the number of outputs above the threshold value per unit time so as to calculate a pulse rate," and a transmitter for transmitting the pulse rate "to a display for displaying…the pulse rate data and a **device for computing** the amount of motion load."  APPLE-1006, ¶[0028]; *see also* APPLE-1009, ¶¶[0014]-[0015], [0023]; APPLE-

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

1021, xvii-xviii, 10-12, 17, 63, 73-101, 176, 190-193, 363; APPLE-1022, 4-11, 30-31, 56-67, 72-92.



APPLE-1006, FIG. 1(b) (annotated)

Aizawa's arithmetic circuit and device for computing the amount of motion load disclose at least two processors configured to receive data or one or more signals from Aizawa's photodetectors and cause communication of the pulse rate, which is physiological measurement information, to a display.  APPLE-1006, ¶[0028]; APPLE-1003, ¶[0283].  For example, "the waveform of a pulse wave" of the subject wearing Aizawa's sensor can be displayed as represented by FIG. 3. APPLE-1006, ¶¶[0028]-[0029].

Exhibit G
Page 508

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553





APPLE-1006, FIG. 3

Additionally, Ohsaki's wrist-worn pulse rate sensor includes "a **microcomputer** 12, and a monitor display (not shown)."  The microcomputer "calculates the pulse rate from the reflected light received by the detecting element," where the "reflected light varies with the user's pulsation."  APPLE-1009, ¶[0020].

87

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553



APPLE-1009, FIG. 2 (annotated).

To the extent that, in the combination, Aizawa's arithmetic circuit does not

disclose a processor, a POSITA would have been motivated by Ohsaki's disclosure

to include a microprocessor as disclosed by Ohsaki to perform the computations

necessary to detect pulse waves and cause communication of the measured pulse

waves to a display, such as touch-screen display.  APPLE-1003, ¶¶[0285]-[0287].

A POSITA would have understood that a microprocessor having multiple func-

tions can replace, for example, the drive detection circuit 24 and arithmetic circuit

Exhibit G
Page 510

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

3 such that the number of components in Aizawa's sensor can be reduced. *Id.*, ¶¶[0283]-[0287].

### *[7d] a strap configured to facilitate attachment of at least part of the physiological monitoring device to an arm of a user of the physiological monitoring device.*

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [7d].  APPLE-1003, ¶¶[0288]-[0292].  For example, Aizawa describes a pulse rate detector featuring an "attachment belt" that is configured to facilitate attachment of the detector to the user's arm (e.g., on the wrist).  APPLE-1006, ¶¶[0007], [0008], [0023], FIGS. 1(a), 1(b).

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553



APPLE-1006, FIG. 1 (annotated).

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553



APPLE-1006, FIG. 2 (annotated).

As Aizawa explains, when a sensor is "dislocated" from its "attachment position," "no output can be obtained"; Aizawa's sensor is said to be "easily attached," and a POSITA would have understood that attachment belt 7 enables that sensor to remain in position when worn, thereby improving the quality of obtainable signals.  APPLE-1006, ¶¶[0007], [0008]; APPLE-1003, ¶[0289].

Similarly, and as shown in Ohsaki's FIG. 1 (reproduced below), Ohsaki explains that the detecting element of its "wristwatch-type human pulse wave sensor"

"is attached on the back side of the user's wrist by a dedicated belt so that the convex surface of the translucent member is in intimate contact with the surface of the user's skin."  APPLE-1009, ¶¶ [0009], [0018], FIG. 1.



APPLE-1009, FIG. 1 (annotated).

As Ohsaki explains, "[t]he detecting element and the sensor body 3 is attached to the user's wrist 4 by the dedicated belts 10 and 14, respectively."  APPLE-1009, ¶ [0026].  In further detail, "[t]he detecting element 2 is fixed on the user's wrist 4 by a dedicated belt 10," which "may be made from elastic material

so that regular pressure is applied to the user's wrist," which is said to prevent "disturbance light from the outside" from penetrating translucent board 8.  *Id*., [0018].  The "sensor body 5 is arranged on top of the detecting element 2, and fixed on the user's wrist 4 by a dedicated belt 14 attached to the sensor body 3." *Id*., [0021]; APPLE-1003, ¶¶[0288]-[0292].

*Claim 19*

**[19] The optical physiological measurement sensor of claim 18 further comprising: one or more processors configured to: receive one or more signals from at least one of the at least four detectors, the one or more signals indicative of a physiological parameter of the user of the optical physiological measurement sensor; and cause output of information indicative of measurements of the physiological parameter to at least one of: a touch-screen display or a mobile phone.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [19].  APPLE-1003, ¶¶[0293]-[0298].  As discussed for [1pre]-[1d], [10pre]-[10e], [7pre]-[7d], and [18], the Aizawa-Inokawa-Ohsaki-Mendelson-2006 sensor teaches one or more processors configured to receive pulse wave signals, or signals indicative of a physiological parameter of the subject wearing Aizawa's sensor, from photodetectors 22 and output information indicative of the signals to a touch-screen display. APPLE-1010, 3-4; APPLE-1020, 1-4; APPLE-1006, Abstract, [0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1021, xvii-xviii, 10-12, 17, 63, 73-101, 176, 190-193, 363; APPLE-1022, 4-11, 30-31, 56-67,

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

72-92; APPLE-1003, ¶¶[0055]-[0066], [0068]-[0152], [0176]-[0194], [0253]-[0298].

### D. GROUND 3 – Claims 8 and 25-28 are obvious over Aizawa, Inokawa, Ohsaki, Mendelson-2006, and Sherman

#### 1. Overview of Sherman

Sherman discloses a magnetic fastening mechanism for "wrist instruments," such as wristwatches. APPLE-1011, 1:4-10. Sherman's system provides "an improved clasp for a flexible strap which eliminates buckles or other types of protruding mechanisms" and is "secured, yet easy to engage when desired." *Id.*, 2:1-11. As shown in FIGS. 2 and 5 of Sherman, the mechanism includes a pair of flexible strap ends having "permanently magnetizable material" of opposite polarities in addition to "mutually nesting uniformly spaced protuberances and indentations." *Id.*, 2:43-62; FIGS. 2 and 5; APPLE-1003, ¶[0067].

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553





APPLE-1011, FIG. 2 (top) and FIG. 5 (bottom)

### 2.  Combination of Aizawa, Inokawa, Ohsaki, Mendelson-2006, and Sherman

As explained above with respect to [7pre]-[7d], Aizawa depicts and describes "a pulse wave sensor for detecting a pulse wave by detecting light output

Exhibit G
Page 517

from a light emitting diode and reflected from the artery of a wrist of a subject."

APPLE-1006, Abstract, [0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1010, 1-4; APPLE-1020, 1-4; APPLE-1003, ¶¶[0299]-[0303].

The Aizawa-Inokawa-Ohsaki-Mendelson-2006 sensor does not describe the mechanism for closing the attachment strap 7 that fastens the sensor onto the subject's wrist, but a POSITA would have been motivated to look to other wearable, and specifically wrist worn, devices such as Sherman, for details regarding a mechanism for fastening the sensor to the subject's wrist.  APPLE-1003, ¶[0300].

Indeed, by the '553 Patent's 2008 Critical Date, it was well known that wristwatches that are fastened by a mechanism such as a buckle or clasp can be difficult to fasten and can be "unsightly or ha[ve] corners which catch upon sleeves or clothing," and that such clasps could result in broken connectors or accidental snagging.  APPLE-1011, 1:11-24; APPLE-1003, ¶[0301].  A POSITA would have understood that this problem could be solved with a magnetic connector, providing an "improved flexible strap" that "eliminates buckles or other types of protruding members thereby permitting a thinner, more comfortable flexible strap attachment."  APPLE-1003, ¶[0301]; APPLE-1011, 2:1-11, 2:43-62, FIGS. 1-11.  Sherman's strap ends are "adapted to curve around the wrist of a wearer and to overlap

one another" such that the "magnetized particles provide a holding force resisting separation of the strap ends."  APPLE-1011, 2:43-62.

A POSITA would have looked to Sherman's disclosure of an "improved clasp for a wrist [instrument] which is secured, yet easy to engage when desired," in part, because it provides additional functionality, including that of ease of engagement and improved user comfort.  APPLE-1011, 2:9-11.  Sherman teaches that its strap provides a solution for "unsightly" fastening mechanisms that have "corners which catch upon sleeves or clothing."  *Id*., 1:11-25; APPLE-1003, ¶[0302].

A POSITA would have combined the teachings of Aizawa, Inokawa, Ohsaki, Mendelson-2006, and Sherman as doing so would have amounted to nothing more than the use of a known technique to improve similar devices in the same way and combining prior art elements according to known methods to yield predictable results.  *KSR*, 550 U.S. at 417; APPLE-1003, ¶[0303].  The combination is nothing more than applying a known technique to fasten two ends of a strap for attaching a wrist worn device to a subject's arm.  APPLE-1003, ¶[0303].  Furthermore, the elements of the combined system would each perform similar functions they had been known to perform prior to the combination.  *Id*.  Indeed, a POSITA would have readily understood how to implement magnetic strap ends for a "wrist

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

instrument" having an attachment strap.  APPLE-1011, 1:5-11; APPLE-1003, ¶¶[0299]-[0303].

### 3. Manner in which Aizawa, Inokawa, Ohsaki, Mendelson-2006, and Sherman render obvious Claims 8 and 25-28

*Claim 8*

**[8] The physiological monitoring device of claim 7 further comprising: a magnet configured to be used as a connecting mechanism.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Sherman renders obvious [8]. *Supra*, [7], Sections IV.B.1-5 and IV.C.1-3; *see also* APPLE-1003, ¶¶[0055]-[0094], [0253]-[0264], [0299]-[0313]; APPLE-1011, 1:11-24, 2:1-11, 2:43-62, 4:13-35, FIGS. 1-5.  For example, Sherman discloses a magnetic connector for straps of a wristwatch where "both strap ends 6 and 7 have embedded therein permanently magnetizable particles of high magnetic remanance" such that "a holding force is developed between strap ends 6, 7 when placed in any of the various longitudinal positions provided by the interlocking teeth or ridges."  APPLE-1011, 4:13-35; APPLE-1003, ¶¶[0304]-[0313].

*Claim 25*

**[25] The noninvasive optical physiological measurement device of claim 24 further comprising: a magnet configured to be used as a connecting mechanism.**

98

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Sherman renders obvious [25].

*Supra* [8] and [24], Sections IV.B.1-5 and IV.C.1-3; *see also* APPLE-1003,

¶¶[0055]-[0094], [0248]-[0250], [0253]-[0264], [0299]-[0319]; APPLE-1011,

1:11-24, 2:1-11, 2:43-62, 4:13-35, FIGS. 1-5.

### *Claim 26*

***[26] The noninvasive optical physiological measurement device of claim 25 further comprising: one or more processors configured to: receive data or one or more signals from at least one of the at least four detectors, the data or one or more signals indicative of a physiological parameter of the user of the noninvasive optical physiological measurement device; and cause output of information indicative of measurements of the physiological parameter to at least one of: a touch-screen display or a mobile phone.***

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Sherman renders obvious [26].

*Supra* [1pre]-[1d], [10pre]-[10e], [7pre]-[7d], and [25].  APPLE-1003, ¶¶[0055]-

[0152], [0176]-[0194], [0253]-[0292], [0299]-[0321]; APPLE-1006, Abstract,

[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS.

1, 2, 3, 4(a); APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-

1010, 1-4; APPLE-1020, 1-4; APPLE-1021, xvii-xviii, 10-12, 17, 63, 73-101, 176,

190-193, 363; APPLE-1022, 4-11, 30-31, 56-67, 72-92.

### *Claim 27*

***[27] The noninvasive optical physiological measurement device of claim 26, further comprising a touch-screen display.***

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Sherman renders obvious [27].

*Supra* [1pre]-[1d], [10pre]-[10e], [7pre]-[7d], and [18]-[26].  APPLE-1003, ¶¶[0055]-[0152], [0176]-[0194], [0253]-[0292], [0299]-[0323]; APPLE-1006, Abstract, [0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1010, 1-4; APPLE-1020, 1-4; APPLE-1021, xvii-xviii, 10-12, 17, 63, 73-101, 176, 190-193, 363; APPLE-1022, 4-11, 30-31, 56-67, 72-92.

*Claim 28*

**[28] The noninvasive optical physiological measurement device of claim 27, wherein the physiological parameter comprises at least one of: pulse rate, glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, or carbon monoxide.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Sherman renders obvious [28].

*Supra* [1pre]-[1d], [10pre]-[10e], [7pre]-[7d], and [18]-[27]; APPLE-1003, ¶¶[0055]-[0152], [0176]-[0194], [0253]-[0292], [0299]-[0326].  For example, Aizawa discloses that the physiological parameters measured by a pulse wave sensor includes a pulse rate.  APPLE-1006, Abstract; APPLE-1009, Abstract; APPLE-1010, 1.

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

# V.   PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION

Consistent with Congressional intent and goals of *NHK*/*Fintiv*[4], Apple asks the Board alone to consider challenges raised in this Petition.  *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11, 6 (PTAB 2020).  As explained below, *Fintiv* favors institution.

## E. Factor 1: Institution Will Increase Likelihood of Stay

Institution will enable the Board to resolve the issue of validity, and a finding of invalidity will relieve the Central District of California (the "District Court") of the need to continue with the companion litigation.  Apple intends to move to stay the District Court case, and the opportunity for such simplification increases the likelihood that the court will grant a stay in view of IPR institution.  *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case No. 2:16-cv-642-JRG, 2-3 (E.D. Tex.

---

[4] Unlike *NHK*, there is no basis for discretionary denial of this Petition under § 325(d), which would only be appropriate if the same or substantially the same art or arguments were previously presented to the Office.  *Advanced Bionics LLC v. MED-EL Elektromedizinische Gerate GmbH*, IPR2019-01469 Pap. 6, 8-10 (PTAB Feb. 13, 2020)(precedential).  The arguments advanced in this Petition are premised on combinations of references that were never presented to the Office in connection with the '553 Patent.

2017); *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 13-CV-1058, 2015 WL 1069111 (E.D. Tex. 2015).

### F. Factor 2: District Court Schedule

Trial in the District Court case is scheduled for April 5, 2022.  APPLE-1031, 1.  Based on the 18-month IPR schedule, a Final Written Decision ("FWD") in an IPR arising from the present Petition would issue in early March of 2022, prior to the District Court trial date.

In addition, as in *NHK*, district court trial dates shift, even in normal times. *Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap. 22, 17 (PTAB 2019).  The District Court is one of the country's busiest patent courts.  Scheduling issues cannot be ruled out, as experts have professed that additional COVID-19 outbreaks are likely to arise and California is facing new outbreaks.  APPLE-1034, 1 ("Fauci says second wave of coronavirus is 'inevitable'"); APPLE-1035, 4 ("Los Angeles County is currently" at "275 [cases] per 100,000 [residents]," which is higher than the recommended level (100 per 100,000) for reopening).

### G. Factor 3: Apple's Investment in IPR Outweighs Forced Investment in Litigation to Date

District court proceedings are still at an early phase.  The parties have yet to file claim construction briefs, no claim construction orders have issued, and the

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

*Markman* hearing is not scheduled until February 8, 2021.  APPLE-1031, 1.  In addition, discovery is not scheduled to close until July 5, 2021.  *Id.*

Apple's substantial investment in these IPR proceedings should counterbalance—if not outweigh—the resources invested in the co-pending litigation given the speed with which Apple is filing IPR petitions on over 150 claims across seven patents.  It would be unjust to consider resources expended in District Court (equally by both parties), without considering Apple resources expended to prepare nine IPR petitions that would be irretrievably lost without consideration on the merits, in addition to the extensive expenses that may be foregone through institution of Apple's petitions and that will otherwise certainly follow in co-pending litigation for which significant milestones exist.  *See, e.g., Apple v. Seven Networks*, IPR2020-00255, Paper 13 at 12-15 (PTAB July 28, 2020) (declining to exercise 314(a) discretion on petitions filed 9 months after the commencement of co-pending litigation where a large number of patents were included in the litigation, and a large number of claims from each patent were challenged in the petitions).

### H. Factor 4: The Petition Raises Unique Issues

Consistent with *Fintiv*, Apple asks the Board to consider the unique challenges raised in the Petition. Apple has voluntarily stipulated to counsel for Patent Owner that, if the Board institutes the present Petition, Apple will not assert that the Challenged Claims are invalid on the pending Petition's asserted grounds in

*Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.). AP-PLE-1032, 1; *see, e.g., Apple v. Seven* at 15-17 (finding that such a stipulation by a petitioner "mitigates, at least to some degree, the concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions").

In addition, the Petition addresses claims that will not be addressed in District Court. Although Patent Owner has not yet narrowed the asserted claims, the District Court recently ordered the parties to submit "a joint proposal for an initial reduction of infringement contentions" by September 21, 2020. APPLE-1033, 1. Thus, based on this ordered reduction in the asserted claims, the District Court will necessarily address fewer claims than are challenged in this Petition (which challenges all claims of the patent), even assuming the District Court addresses validity at all, which is presently unknowable.

In short, grounds in this Petition are unique, and will not be addressed in District Court. *See, e.g., Apple v. Seven* at 15-20 (weighing this factor against exercising 314(a) discretion where a petitioner challenged several unasserted claims and stipulated that it would not pursue the IPR grounds in the co-pending litigation).

## I. Factor 5: The Petition Enables the Board to Resolve Invalidity of Claims that Might Otherwise be Reasserted

Apple's Petition is potentially helpful to future defendants. For at least this reason, Apple's status as both Petitioner and defendant is, at worst, a neutral factor.

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

Taking the relevant circumstances into account, institution would serve overall efficiency and integrity, enabling the Board to determine invalidity of claims that Patent Owner might otherwise later assert against others.

### J. Factor 6: Other Circumstances Support Institution

As *Fintiv* noted, "the factors ... are part of a balanced assessment of all the relevant circumstances in the case," and, "if the merits of a ground raised in the petition seem particularly strong … the institution of a trial may serve the interest of overall system efficiency and integrity …." *Fintiv*, 14-15. As explained in the Petition (and Dr. Kenny's testimony), institution would result in invalidation of the Challenged Claims.

## VI. CONCLUSION

The cited prior art references disclose or render obvious the Challenged Claims of the '553 patent for the reasons noted hereinabove. APPLE-1003, ¶¶[0327]-[0328]. Accordingly, Apple respectfully requests institution of an IPR for the Challenged Claims. *Id.*, ¶¶[0001]-[0328].

## VII. PAYMENT OF FEES – 37 C.F.R. § 42.103

Petitioner authorizes the Patent and Trademark Office to charge Deposit Account No. 06-1050 for the fee set in 37 C.F.R. § 42.15(a) for this Petition and further authorizes payment for any additional fees to be charged to this Deposit Account.

105

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

Respectfully submitted,


Dated: August 31, 2020          /W. Karl Renner/
                                W. Karl Renner, Reg. No. 41,265
                                Andrew Patrick, Reg. No. 63,471
                                Fish & Richardson P.C.
                                3200 RBC Plaza, 60 South Sixth Street
                                Minneapolis, MN 55402
                                T: 202-783-5553
                                F: 877-769-7945


(Control No. IPR2020-01537)     *Attorneys for Petitioner*

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

# CERTIFICATION UNDER 37 CFR § 42.24

Under the provisions of 37 CFR § 42.24(d), the undersigned hereby certifies that the word count for the foregoing Petition for *Inter partes* Review totals 13,966 words, which is less than the 14,000 allowed under 37 CFR § 42.24.

Dated: August 31, 2020            /W. Karl Renner/
                                  W. Karl Renner, Reg. No. 41,265
                                  Andrew B. Patrick, Reg. No. 63,471
                                  Fish & Richardson P.C.
                                  3200 RBC Plaza, 60 South Sixth Street
                                  Minneapolis, MN 55402
                                  T: 202-783-5070
                                  F: 877-769-7945

                                  *Attorneys for Petitioner*

Attorney Docket No. 50095-0012IP2
IPR of U.S. Patent No. 10,588,553

# CERTIFICATE OF SERVICE

Pursuant to 37 CFR §§ 42.6(e)(4)(i) *et seq.* and 42.105(b), the undersigned

certifies that on August 31, 2020, a complete and entire copy of this Petition for *Inter partes* Review and all supporting exhibits were provided via Federal Express,

to the Patent Owner by serving the correspondence address of record as follows:

KNOBBE, MARTENS, OLSON & BEAR, LLP
MASIMO CORPORATION (MASIMO)
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE CA 92614

/Diana Bradley/
Diana Bradley
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
(858) 678-5667

1

# Exhibit H

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent of:     Jeroen Poeze et al.
U.S. Patent No.:    10,588,554          Attorney Docket No.:  50095-0013IP1
Issue Date:          March 17, 2020
Appl. Serial No.:   16/544,713
Filing Date:         August 19, 2019
Title:                MULTI-STREAM DATA COLLECTION SYSTEM FOR
                     NONINVASIVE MEASUREMENT OF BLOOD CONSTITU-
                     ENTS

**Mail Stop Patent Board**
Patent Trial and Appeal Board
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

## PETITION FOR *INTER PARTES* REVIEW OF UNITED STATES PATENT NO. 10,588,554 PURSUANT TO 35 U.S.C. §§ 311–319, 37 C.F.R. § 42

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

# TABLE OF CONTENTS

I.    MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1) ........................... 3
      A.   Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1) ...................... 3
      B.   Related Matters Under 37 C.F.R. § 42.8(b)(2) ............................... 3
      C.   Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3) ................... 4
      D.   Service Information ................................................................. 5

II.   PETITIONER HAS STANDING TO REQUEST IPR ................................... 5

III.  OVERVIEW OF THE '554 PATENT ...................................................... 5
      A.   Brief Description .................................................................... 5
      B.   Level of Ordinary Skill in the Art .............................................. 10
      C.   Claim Construction ................................................................ 11

IV.   APPLICATION OF PRIOR ART TO THE '554 PATENT CLAIMS ......... 11
      A.   Asserted Grounds and References .............................................. 11
      B.   GROUND 1: Claims 1-7 and 20-28 are obvious over Mendelson-799,
           Ohsaki, Schulz, and Mendelson-2006 ....................................... 12
           1.   Overview of Mendelson-799 ............................................. 12
           2.   Overview of Ohsaki ........................................................ 20
           3.   Overview of Schulz ........................................................ 22
           4.   Overview of Mendelson-2006 ............................................ 23
           5.   Combination of Mendelson-799, Ohsaki, Schulz, and Mendelson-
                2006 ............................................................................. 25
           6.   Analysis ........................................................................ 43

V.    PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION .......... 97
      A.   Factor 1: Institution Will Increase Likelihood of Stay ...................... 97
      B.   Factor 2: District Court Schedule .............................................. 98
      C.   Factor 3: Apple's Investment in IPR Outweighs Forced Investment in
           Litigation to Date ................................................................. 99
      D.   Factor 4: The Petition Raises Unique Issues ................................. 99
      E.   Factor 5: The Petition Enables the Board to Resolve Invalidity of Claims
           that Might Otherwise be Reasserted .......................................... 100
      F.   Factor 6: Other Circumstances Support Institution .......................... 100

VI.   CONCLUSION ................................................................................. 101

VII.  PAYMENT OF FEES – 37 C.F.R. § 42.103 .......................................... 101

Exhibit H
Page 533

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

# EXHIBITS

| | |
|---|---|
| APPLE-1001 | US Patent No. 10,588,554 |
| APPLE-1002 | File History for U.S. Patent No. 10,588,554 |
| APPLE-1003 | Declaration of Dr. Kenny |
| APPLE-1004 | Curriculum Vitae of Dr. Kenny |
| APPLE-1005 | *Masimo Corporation, et al. v. Apple Inc.*, Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.) |
| APPLE-1006 | US Pub. No. 2002/0188210 ("Aizawa") |
| APPLE-1007 | JP Pub. No. 2006/296564 ("Inokawa") |
| APPLE-1008 | Certified English Translation of Inokawa and Translator's Declaration |
| APPLE-1009 | US Pub. No. 2001/0056243 ("Ohsaki") |
| APPLE-1010 | "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Y. Mendelson, et al.; Proceedings of the 28th IEEE EMBS Annual International Conference, 2006; pp. 912-915 ("Mendelson-2006") |
| APPLE-1011 | RESERVED |
| APPLE-1012 | US Patent No. 6,801,799 ("Mendelson799") |
| APPLE-1013 | US Pub. No. 2004/0054291 ("Schulz") |
| APPLE-1014 | RESERVED |
| APPLE-1015 | RESERVED |
| APPLE-1016 | RESERVED |

ii

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

| APPLE-1017 | "Design and Evaluation of a New Reflectance Pulse Oximeter Sensor," Y. Mendelson, et al.; Worcester Polytechnic Institute, Biomedical Engineering Program, Worcester, MA 01609; Association for the Advancement of Medical Instrumentation, vol. 22, No. 4, 1988; pp. 167-173 ("Mendelson-1988") |
|---|---|
| APPLE-1018 | "Skin Reflectance Pulse Oximetry: In Vivo Measurements from the Forearm and Calf," Y. Mendelson, et al.; Journal of Clinical Monitoring, vol. 7, No. 1, January 1991 ("Mendelson 1991) |
| APPLE-1019 | Excerpts from Design of Pulse Oximeters, J.G. Webster; Institution of Physics Publishing, 1997 ("Webster") |
| APPLE-1020 | QuickSpecs; HP iPAQ Pocket PC h4150 Series |
| APPLE-1021 | Excerpts from How to Do Everything with Windows Mobile, Frank McPherson; McGraw Hill, 2006 ("McPherson") |
| APPLE-1022 | Excerpts from Master Visually Windows Mobile 2003, Bill Landon, et al.; Wiley Publishing, Inc., 2004 ("Landon") |
| APPLE-1023 | "Stimulating Student Learning with a Novel 'In-House' Pulse Oximeter Design," J. Yao and S. Warren; Proceedings of the 2005 American Society for Engineering Education Annual Conference & Exposition, 2005 ("Yao") |
| APPLE-1024 | US Pub. No. 2008/0194932 ("Ayers") |
| APPLE-1025 | U.S. Patent No. 7,031,728 ("Beyer") |
| APPLE-1026 | US Pub. No. 2007/0145255 ("Nishikawa") |
| APPLE-1027 | National Instruments LabVIEW User Manual |
| APPLE-1028 to 1030 | RESERVED |
| APPLE-1031 | Scheduling Order, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 37 (April 17, 2020) |

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

APPLE-1032        Stipulation by Apple

APPLE-1033        Telephonic Status Conference, Masimo v. Apple et al., Case
                  8:20-cv-00048, Paper 78 (July 13, 2020)

APPLE-1034        Joseph Guzman, "Fauci says second wave of coronavirus is 'in-
                  evitable'", TheHill.com (Apr. 29, 2020), available at:
                  https://thehill.com/changing-america/resilience/natural-disas-
                  ters/495211-fauci-says-second-wave-of-coronavirus-is

APPLE-1035        "Tracking the coronavirus in Los Angeles County,"
                  LATimes.com (Aug. 20, 2020), available at
                  https://www.latimes.com/projects/california-coronavirus-cases-
                  tracking-outbreak/los-angeles-county/

APPLE-1036        Declaration of Jacob R. Munford

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

Apple Inc. ("Petitioner" or "Apple") petitions for *Inter Partes* Review

("IPR") of claims 1-7 and 20-28 ("the Challenged Claims") of U.S. Patent No.

10,588,554 ("'554 patent").  As explained in this Petition, there exists a reasonable

likelihood that Apple will prevail with respect to at least one of the Challenged

Claims.

The '554 Patent describes and claims a purported improvement to a "physio-

logical sensor device" included within a "physiological measurement system": a

cover with "a single protruding convex surface" that is configured to be located be-

tween "at least four" detectors and user tissue, and that is sufficiently rigid to cause

user tissue to conform to the surface when the sensor is worn.  APPLE-1001, 14:3-

10, 36:30-41, 44:50-45:21 (claim 1), FIGS. 1, 14D.  Each detector "can be imple-

mented using one or more photodiodes, phototransistors, or the like," "can capture

and measure light transmitted from [an] emitter … that has been attenuated or re-

flected from the tissue," and can "output a detector signal … responsive to the light

…." *Id.*, 14:3-10.  Placement of a cover with a protrusion over the detectors is said

to offer multiple benefits; the protrusion may, for example, "penetrate[] into the

tissue and reduce[] the path length of the light …." *Id.*, 14:3-10, 24:16-35, 10:61-

11:13.

But the claimed sensor was not new.  To the contrary, the '554 Patent was

granted without full consideration to the wide body of applicable prior art.  *See*

1

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

*generally* APPLE-1002.  And, as Dr. Thomas Kenny explains in his accompanying declaration with respect to the prior art applied in this Petition, physiological sensor devices such as pulse rate detectors and pulse oximeters commonly included covers by the '554 Patent's earliest effective filing date, and a sensor including each feature of the sensor device of the Challenged Claims would have been obvious to a POSITA.  APPLE-1003, ¶¶[0001]-[0273]; APPLE-1001, 44:50-47:22.

For example, Mendelson-799 (APPLE-1012) discloses a "sensor for use in an optical measurement device" featuring a sensor housing 17 that accommodates a "light source 12" and an array of twelve "discrete detectors (e.g., photodiodes)." APPLE-1012, Title, Abstract, 9:22-40, 10:16-37, FIGS. 7, 8.  And, similar to the '554 Patent, Ohsaki (APPLE-1009) describes an optical sensor that features a cover with a protruding convex surface that is placed "in intimate contact with the surface of the user's skin" when the sensor is worn.  APPLE-1009, Title, Abstract, ¶¶[0016], [0017], FIGS. 1, 2.  Ohsaki is not alone, as Inokawa (APPLE-1007, AP-PLE-1008) and other references likewise disclose covers with protruding convex surfaces for use in optical sensors. APPLE-1008, ¶¶14-15, FIGS. 2, 3.  And, as Dr. Kenny explains, a POSITA would have found it obvious to utilize such a cover in Mendelson's '799 sensor.  APPLE-1003, ¶¶[0081]-0110].

In addition to the "physiological sensor device" described above, the '554

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

Patent's claimed "physiological measurement system" includes "a handheld computing device in wireless communication with the physiological sensor device." *See*, *e.g.*, APPLE-1001, 45:4-22 (claim 1).

Yet, physiological sensor devices commonly communicated with handheld computing devices by the '554 Patent's earliest effective filing date.  Mendelson-2006, for example, describes a "wireless wearable pulse oximeter" system in which a body-worn pulse oximeter communicates wirelessly with a PDA.  APPLE-1010, Abstract, 1-4, FIGS. 1-3.  Moreover, and as Dr. Kenny explains, the claimed "handheld computing device" is a generic computing device, and each of its recited components are generic computing components.  APPLE-1003, ¶¶[0040]-[0059]; APPLE-1001, 2:45-48, 15:60-16:11, 18:9-28, FIGS. 1, 2D.

Accordingly, the Challenged Claims are unpatentable based on teachings set forth in at least the references presented in this Petition.  APPLE-1003, ¶¶[0001]-[0273].  Apple respectfully submits that an IPR should be instituted, and that the Challenged Claims should be canceled as unpatentable.

## I.  MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1)

### A.  Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1)

Apple Inc. is the real party-in-interest (RPI).

### B.  Related Matters Under 37 C.F.R. § 42.8(b)(2)

Patent Owner filed a complaint on January 9, 2020 in the U.S. District Court for the Central District of California (CDCA) (Case No. 8:20-cv-00048) against

Exhibit H
Page 539

Apple, alleging infringement by Apple of the '554 patent.  The complaint was served to Apple on January 13, 2020.

This Petition is being filed concurrently with another petition for IPR of the '554 Patent (IPR2020-01539),[1] and with a petition for IPR of related U.S. Patent 10,292,628 (IPR2020-01521).  No other petitions for IPR of the '554 Patent have been filed.  On August 31, 2020, Apple filed petitions for IPR of related U.S. Patents 10,588,553 (IPR2020-01536 and IPR2020-01537) and 10,258,265 (IPR2020-01520).

## C. Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3)

Apple provides the following designation of counsel.

| LEAD COUNSEL | BACKUP COUNSEL |
| --- | --- |
| W. Karl Renner, Reg. No. 41,265<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email:  IPR50095-0013IP1@fr.com | Andrew B. Patrick, Reg. No. 63,471<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email: PTABInbound@fr.com |

---

[1] Pursuant to the Trial Practice Guide, both petitions for IPR of the '554 Patent are being filed with a paper providing a succinct explanation of the differences between the petitions, why the issues addressed by the differences are material, and why the Board should exercise its discretion to institute both petitions.

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

### D. Service Information

Please address all correspondence and service to the address listed above.

Petitioner consents to electronic service by email at IPR50095-0013IP1@fr.com

(referencing No. 50095-0013IP1 and cc'ing PTABInbound@fr.com, axf-

ptab@fr.com and patrick@fr.com).

## II.      PETITIONER HAS STANDING TO REQUEST IPR

Apple certifies that the '554 patent is available for IPR.  This present Peti-

tion is being filed within one year of service of a complaint against Apple in

*Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.).  Ap-

ple is not barred or estopped from requesting this review challenging the Chal-

lenged Claims on the below-identified grounds.

## III.      OVERVIEW OF THE '554 PATENT

### A. Brief Description

The system described by the '554 Patent is said to include, in one embodi-

ment, "a noninvasive sensor and a patient monitor communicating with the nonin-

vasive sensor."  APPLE-1001, 2:38-40.  The '554 Patent explains that "[t]he non-

invasive sensor may include different architectures," adding that "an artisan will

recognize that the non-invasive sensor may include or may be coupled to other

components, such as a network interface, and the like."  *Id.*, 2:40-44.  The "patient

5

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

monitor" with which the sensor communicates may itself "include a display device," and "a network interface communicating with any one or combination of a computer network, a handheld computing device, a mobile phone, the Internet, or the like." *Id.*, 2:45-48.

In more detail, the exemplary physiological measurement system 100 illustrated by the '554 Patent's FIG. 1 (reproduced below) includes "a sensor 101…that is coupled to a processing device or physiological monitor 109." *Id.*, 5:35-38, 11:47-49.



**FIG. 1**

APPLE-1001, FIG. 1.

Exhibit H
Page 542

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

The '554 Patent explains that "[i]n an embodiment, the sensor 101 and the monitor 109 are integrated together into a single unit." *Id.*, 11:49-51.  "In another embodiment, the sensor 101 and the monitor 109 are separate from each other and communicate one with another in any suitable manner, such as via a wired or wireless connection." *Id.*, 11:51-57; 17:40-44.

In more detail, the '554 Patent's FIGS. 2A-2D (reproduced below) illustrate "example monitoring devices 200 in which the data collection system 100 can be housed."  APPLE-1001, 5:39-42, 16:20-31.



APPLE-1001, FIGS. 2A-2D.

Exhibit H
Page 543

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

Each of the illustrated "monitoring devices 200" include a sensor 201 and a monitor 209.  *Id.*, FIGS. 2A-2D, 16:20-18:28.  From this and related description, a POSITA would have understood that the sensor and monitor described by the '554 Patent together act as components of a physiological sensor device, regardless of whether they are integrated into a single unit, or are instead separated but configured to communicate with each other.  APPLE-1003, ¶¶[0040]-[0049]; APPLE-1001, 2:38-48, 11:49-57, 16:20-18:28, FIGS. 1, 2A-2D.

FIG. 2D illustrates a "monitoring device 200D [that] includes a finger clip sensor 201*d* connected to a monitor 209*d* via a cable 212," in addition to "an optional universal serial bus (USB) port 216 and an Ethernet port 218 [that] can be used, for example, to transfer information between the monitor 209*d* and a computer (not shown) via a cable."  *Id.*, 18:9-28.

From this and related description, a POSITA would have understood that the sensor 201 and monitor 209 together act as components of a physiological sensor device, and that in at least one embodiment that device is part of a larger system including a computer with which the physiological sensor device communicates. APPLE-1003, ¶¶[0049]-[0050]; APPLE-1001, 2:38-48, 11:49-57, 16:20-18:28, FIGS. 1, 2A-2D.

8

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

The sensor included in the physiological sensor device "may include different architectures"; the '554 Patent describes several potential architectures with respect to FIGS. 14A-14I.  APPLE-1001, 6:38-49, 35:36-38:20.  For example, the '554 Patent's FIG. 14C (reproduced below) illustrates a sensor featuring a "detector submount 1400*c*…positioned under [a] protrusion 605*b* in a detector subassembly 1450 illustrated in FIG. 14D" (also reproduced below).



FIG. 14C          FIG. 14D

APPLE-1001, FIGS. 14C, 14D.

As illustrated in FIG. 14D, a housing 1430 including "a transparent cover 1432, upon which the protrusion 605*b* is disposed" surrounds each of the detectors 1410*c*.  APPLE-1001, 36:30-41.  As illustrated in FIG. 14F (reproduced below), the sensor may also include a "shielding enclosure 1490" featuring a window 1492*a* corresponding to each of "the detectors 1410*c*, which allows light to be

9

transmitted onto the detectors 1410*c*." *Id.*, 37:9-17; *see also id.*, 23:61-63, FIGS.

4A-4C; APPLE-1003, ¶¶[0051]-[0059].



**FIG. 14F**

APPLE-1001, FIG. 14F.

## B. Level of Ordinary Skill in the Art

A person of ordinary skill in the art relating to the subject matter of the '554

Patent as of July 3, 2008 ("POSITA") would have been a person with a working

knowledge of physiological monitoring technologies.  The person would have had

a Bachelor of Science degree in an academic discipline emphasizing the design of

electrical, computer, or software technologies, in combination with training or at

least one to two years of related work experience with capture and processing of

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

data or information, including but not limited to physiological monitoring technologies.  APPLE-1003, ¶¶[0001]-[0018], [0020]-[0021].  Alternatively, the person could have also had a Master of Science degree in a relevant academic discipline with less than a year of related work experience in the same discipline.  *Id.*

### C. Claim Construction

Petitioner submits that all claim terms should be construed according to the Phillips standard.  *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); 37 C.F.R. § 42.100.  Here, based on the evidence below and the prior art's description of the claimed elements being similar to that of the '554 patent specification, no formal claim constructions are necessary in this proceeding because "claim terms need only be construed to the extent necessary to resolve the controversy."  *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011).  APPLE-1003, ¶[0022].

### IV.   APPLICATION OF PRIOR ART TO THE '554 PATENT CLAIMS

#### A. Asserted Grounds and References

The Challenged Claims are invalid based on the ground noted in the table below, as further explained in this Petition.  Accompanying explanations and support are provided in the Declaration of Dr. Thomas Kenny (APPLE-1003).  APPLE-1003, ¶¶[0001]-[0273].

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

| Ground | Claims | Basis for Rejection |
|---|---|---|
| 1 | 1-7 and 20-28 | Obvious (§ 103) based on Mendelson-799 in combination with Ohsaki, Schulz, and Mendelson-2006 |

Each applied reference pre-dates U.S. provisional application 61/078,207, filed on July 3, 2008, which is the earliest filed application from which the '554 patent claims priority. Petitioner does not take a position as to whether the '554 Patent is entitled to the priority date of July 3, 2008 (hereinafter "Critical Date" or "Earliest Effective Filing Date"), but has applied references that pre-date the Critical Date and qualify as prior art as shown in the table below.

| Reference | Date | | Section |
|---|---|---|---|
| Mendelson-799 | US 6,801,799 | 07/31/2003 (published) | 102(b) |
| Ohsaki | US 2001/0056243 | 12/27/2001 (published) | 102(b) |
| Schulz | US 2004/0054291 | 03/18/2004 (published) | 102(b) |
| Mendelson-2006 | (NPL) | 09/2006 (published) | 102(b) |

## B. GROUND 1: Claims 1-7 and 20-28 are obvious over Mendelson-799, Ohsaki, Schulz, and Mendelson-2006

### 1. Overview of Mendelson-799

Mendelson-799 is titled "Pulse Oximeter and Method of Operation" and, similar to the '554 Patent, it describes a "sensor for use in an optical measurement

Exhibit H
Page 548

device and a method for non-invasive measurement of a blood parameter."  AP-PLE-1012, Title, Abstract; *see* APPLE-1036.

In more detail, Mendelson-799's FIG. 7 (reproduced below) illustrates an optical sensor 10 that includes a "light source 12 composed of three closely spaced light emitting elements…generating light of three different wavelengths," "an array of discrete detectors (e.g., photodiodes)," including "a 'far' detector 16 and a 'near' detector 18, arranged in two concentric ring-like arrangements…surrounding the light emitting elements; and a light shield 14." *Id.*, 9:22-33.  "All these elements are accommodated in a sensor housing 17," with "[t]he light shield 14 [being] positioned between the photodiodes and the light emitting elements" so as to prevent[] direct optical coupling between them, thereby maximizing the fraction of backscattered light passing through the arterially perfused vascular tissue in the detected light." *Id.*, 9:33-40.

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1012, FIG. 7 (annotated)

Mendelson-799's FIG. 7 illustrates sensor housing 17 as encircling the various components that sensor housing 17 is said to accommodate, but does not present sensor housing 17 in profile.  *See* APPLE-1012, 9:23-40, Abstract, FIG. 7; APPLE-1003, ¶¶[0061]-[0071].  As explained below, to the extent that Mendelson-799 does not explicitly disclose sensor housing 17 as including an opaque wall that circumscribes the accommodated components, a POSITA would have found it obvious to connect, to the illustrated portion of sensor housing 17, an opaque wall configured to circumscribe the array of discrete detectors included in detector rings 16 and 18, both to shield the detectors from ambient light, and protect the detectors from external forces.  *Id.*, 9:24-40, FIG. 7; APPLE-1003, ¶[0063].

14

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

In more detail, Mendelson-799 does not present light shield 14 in profile, but, as noted above, it describes light shield 14 as being "positioned between the photodiodes and the light emitting elements," so as to "prevent[] direct optical coupling between them, thereby maximizing the fraction of backscattered light passing through the arterially perfused vascular tissue in the detected light."  APPLE-1012, 9:35-40.

From this and related description, a POSITA would have been motivated to connect an opaque wall to the portion of sensor housing 17 that Mendelson-799 illustrates as circumscribing detectors 16 and 18, so as to shield the detectors from ambient light, and protect the detectors from external forces.  APPLE-1003, ¶¶[0064]-[0065]; APPLE-1012, Abstract, 9:22-40, 14:1-17, FIG. 7; *see also* APPLE-1019, 79 ("the pulse oximeter designer must attempt to limit the light reaching the photodiode to that which has traveled through tissue"), 86 ("The probe…must be protected from ambient light"), 94; *see* APPLE-1036.

Indeed, several references that are mentioned within Mendelson-799 itself depict and describe pulse oximeter sensors that feature detectors housed within surrounding walls.  APPLE-1003, ¶[0066]; APPLE-1012, 4:13-22; APPLE-1017, 2-3, 6, FIG. 1; *see* APPLE-1036; APPLE-1018, 1, 2, FIG. 2; *see* APPLE-1036.

Yitzhak Mendelson's 1988 paper "Design and Evaluation of a New Reflec-

Exhibit H
Page 551

tance Pulse Oximeter Sensor," for example, describes "an optical reflectance sensor" in which "LEDs and photodiode chips were mounted…on a ceramic substrate …that was housed in a standard…microelectronic package (AIRPAX, Cambridge, Maryland)."  APPLE-1017, 2-3, 6.  As shown in Mendelson 1988's FIG. 2 (reproduced below), the AIRPAX housing includes walls that surround each of the sensor's six photodiodes, and that are operably connected to the ceramic substrate on which the photodiodes are arranged.  APPLE-1003, ¶[0067], FIG. 2.



APPLE-1017, FIG. 2 (annotated excerpt).

16

Similarly, Yitzhak Mendelson's 1991 paper "Skin Reflectance Pulse Oximetry: In Vivo Measurements from the Forearm and Calf" describes "a reflectance pulse oximeter sensor" in which a "multiple photodiode array…is arranged concentric with the LEDs" so as to "maximize[] the amount of backscattered light that is detected by the sensor."  APPLE-1018, 1-3, FIG. 1; APPLE-1003, ¶[0062]-[0063].  As shown in Mendelson 1991's FIG. 1 (reproduced below), the sensor features a silicone rubber wall that circumscribes each of the six detectors included in the photodiode array, and that is operably connected to the substrate on which the detectors are arranged.   APPLE-1003, ¶[0063], FIG. 1.



APPLE-1018, FIG. 1 (annotated)

Exhibit H
Page 553

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

Similar to these and other known configurations in which an opaque wall included within an optical sensor's housing surrounds the photodiodes accommodated by that housing, and thereby shields the photodiodes from both external forces and ambient light, a POSITA would have connected an opaque wall configured to circumscribe detectors 16 and 18 to the planar substrate provided by Mendelson-799's sensor housing 17, as shown below in the section view of the sensor that would have resulted.  APPLE-1003, ¶¶[0068]-[0069]; APPLE-1012, 4:13-22, 9:33-40, FIG. 7; APPLE-1017, 2-3, 6, FIG. 1; APPLE-1018, 1, 2, FIG. 2; APPLE-1019, 79, 86, 94; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2; APPLE-1006, ¶¶[0023], [0024], FIG. 1(b) (illustrating an opaque wall that is connected to a substrate and configured to circumscribe detectors).



APPLE-1012, FIG. 7 (annotated, with additional section view)

As noted above, Mendelson-799 describes its sensor as being configured "for use in an optical measurement device."  APPLE-1012, Abstract, 8:37-41, 9:22-40, 10:15-22; FIGS. 7, 8; APPLE-1003, ¶[0070].  Mendelson-799's FIG. 8 (reproduced below) "illustrates a block-diagram of a pulse oximeter 20 utiliz-ing…sensor 10" (APPLE-1012, 8:39-40, 10:16-17):



APPLE-1012, FIG. 8 (annotated)

As shown, "[t]he pulse oximeter typically includes a control unit 21, which is composed of an electronic block 22 including A/D and D/A converters connecta-ble to the sensor 10, a microprocessor 24 for analyzing measured data, and a dis-play 26 for presenting measurement results."  *Id.*, 10:16-22; APPLE-1003, ¶¶[0061]-[0071].

19

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

## 2. Overview of Ohsaki

Ohsaki is titled "Wristwatch-type human pulse wave sensor attached on back side of user's wrist" and, as illustrated in Ohsaki's FIG. 1 (reproduced below), is generally directed to a wrist-worn "pulse wave sensor" 1 featuring a "detecting element" 2 and a translucent board 8 with a convex surface that is placed "in intimate contact with the surface of the user's skin" when the sensor is worn.  APPLE-1009, Title, Abstract, ¶¶[0016], [0017].



APPLE-1009, FIG. 1 (annotated)

In more detail, and as illustrated in Ohsaki's FIG. 2 (reproduced below), Ohsaki's "detecting element" 2 includes "a package 5, a light emitting element 6 (e.g., LED), a light receiving element 7 (e.g., PD), and a translucent board 8." APPLE-1009, ¶[0017].  "The package 5 has an opening and includes a" substrate in the form of "circuit board 9," on which light emitting element 6 and

20

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

light receiving element 7 are arranged.  *Id.*; APPLE-1003, ¶¶[0067]-[0069].



APPLE-1009, FIG. 2 (annotated)

Translucent board 8 is "attached to the opening of the package 5" and is arranged such that, when the sensor is worn "on the user's wrist…the convex surface of the translucent board…is in intimate contact with the surface of the user's skin"; this contact between the convex surface and the user's skin is said to prevent slippage, which increases the strength of the signals obtainable by Ohsaki's sensor.  APPLE-1009, ¶¶[0009], [0010], [0015], [0017], [0023]-[0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0072]-[0074].

21

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

### 3. Overview of Schulz

Schulz is titled "Pulse Oximetry Ear Sensor"; as illustrated in Schulz's FIG. 19C (reproduced below), Schulz describes a sensor with "opposingly positioned housings 1902 and 1903 that house one or more sensor optical components." APPLE-1013, ¶[0065].



*FIG. 19C*

Schulz, FIG. 19C.

22

The "inward facing shells 1905 and 1906" included within these housings are said to feature "windows 1919 and 1924 that provide an aperture for transmission of optical energy to or from a tissue site"; "lenses 1920 and 1921" are provided in the form of "[t]ranslucent silicone material" that "covers windows 1919 and 1924." *Id.*, ¶[0067], FIGS. 19A-D.

Schulz avoids "saturation of the light detector" by placing "a thin sheet of opaque material" "beneath window 1919 or 1924," with "a window in the opaque material provid[ing] an aperture for transmission of optical energy to or from the tissue site." *Id*., [0073], FIGS. 19A-D.  The opaque material blocks light, "and the window in the opaque material can be sized as needed to block the proper amount of light from entering the aperture to, for example, avoid saturation of the light detector." *Id*.; APPLE-1003, ¶¶[0075]-[0077].

## 4.  Overview of Mendelson-2006

Mendelson-2006 details the structure and testing of a "wireless wearable pulse oximeter" system.  APPLE-1010, Abstract.  Mendelson-2006's system uses pulse oximetry to monitor a subject's physiological signals.  *Id*., 1.  By wirelessly transmitting the collected data, Mendelson-2006's system provides "numerous advantages," including the ability to determine the condition of a subject "remotely." *Id*.

The system includes a sensor module, a receiver module, and a PDA.  *Id*.,

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

913.  As shown in Mendelson 2006's FIGS. 1 and 2 (reproduced below), the sensor module includes an "optical reflectance transducer" having two LEDs and a photodiode that "receives and processes the [photoplethysmographic (PPG)] signals" and transmits these signals wirelessly to the PDA through the receiver module.  *Id*.; FIGS. 1 and 2 (reproduced below).




Fig. 1.  (Top) Attachment of Sensor Module to the skin; (Bottom) photograph of the Receiver Module (left) and Sensor Module (right).

Fig. 2. System block diagram of the wearable, wireless, pulse oximeter. Sensor Module (top), Receiver Module (bottom).

APPLE-1010, FIG. 1 (left) and FIG. 2 (right)

The PDA is a handheld computing device that provides a "touch screen" interface and a simple graphical user interface (GUI) "configured to present the input and output information to the user and allow[ for] easy activation of various functions."  APPLE-1010, FIG. 3 (reproduced below); APPLE-1003, ¶¶[0078]-[0080].

Exhibit H
Page 560

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



Fig. 3.  Sample PDA Graphical User Interface (GUI).

APPLE-1010, FIG. 3

### 5.  Combination of Mendelson-799, Ohsaki, Schulz, and Mendelson-2006

As explained above in Section IV.B.1, Mendelson-799 discloses a "sensor for use in an optical measurement device" featuring a sensor housing 17 that accommodates a "light source 12 composed of three closely spaced light emitting elements (e.g., LEDs or laser sources)" and an "array of discrete detectors (e.g., photodiodes)."  APPLE-1012, Title, Abstract, 9:22-40, 10:16-37, FIGS. 7, 8; APPLE-1003, ¶¶[0061]-[0071], [0081].

Further, to the extent that Mendelson-799 does not explicitly disclose sensor housing 17 as including an opaque wall that circumscribes the accommodated components, a POSITA would have found it obvious to connect, to the portion of

25

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

sensor housing 17 illustrated in Mendelson '799's FIG. 7 (reproduced below), an opaque wall configured to circumscribe the array of discrete detectors included in detector rings 16 and 18.  *Id.*, 9:24-40, FIG. 7; APPLE-1003, ¶[0082].



APPLE-1012, FIG. 7 (annotated, with additional section view)

As detailed below, a POSITA would have been motivated to combine Mendelson-799, Ohsaki, Schulz, and Mendelson-2006 (hereinafter "Mendelson-Ohsaki-Schulz-Mendelson-2006 combination" or "Mendelson-Ohsaki- Schulz-Mendelson-2006") to obtain additional benefits.  APPLE-1003, ¶[0083].

### (a)   *Light permeable cover comprising a protruding convex surface*

Mendelson-799 does not describe a cover configured to be located between

26

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

user tissue and the components accommodated within sensor housing 17 when the sensor is worn, but a POSITA would have recognized that a light permeable cover with a protruding convex surface would improve adhesion between the sensor and the user's tissue, improve detection efficiency, and protect the elements within sensor housing 17.  APPLE-1003, ¶[0084]; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1008, ¶¶14-15, FIG. 2 (depicting a convex lens that enhances signal strength and protects a LED and photodetector); APPLE-1024, ¶¶[0033], [0035], FIG. 6.

Indeed, by the Critical Date, noninvasive optical physiological sensors commonly employed covers.  *See*, *e.g.*, APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1008, ¶¶14-15, FIGS. 1, 2; APPLE-1003, ¶[0085].

For example, and as described above in Section IV.B.2, Ohsaki discloses a wrist-worn "pulse wave sensor" that includes a light permeable convex cover – "translucent board 8" – that is configured to be located between user tissue and a detector when the sensor is worn, where the cover comprises a single protruding convex surface operable to conform tissue of the user, and where a wall operably connects to a substrate and to the cover.  APPLE-1009, ¶¶ [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶[0086].

27

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

In more detail, and as shown in Ohsaki's FIG. 2 (reproduced below), translucent board 8 is "attached to the opening of the package 5" and is arranged such that, when the sensor is worn "on the user's wrist…the convex surface of the translucent board…is in intimate contact with the surface of the user's skin"; this contact prevents slippage, which increases the strength of the signals obtainable by Ohsaki's sensor.  APPLE-1009, ¶¶ [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶[0087].



APPLE-1009, FIG. 2 (annotated)

As Ohsaki explains with reference to FIGS. 4A and 4B (reproduced below), "if the translucent board 8 has a flat surface, the detected pulse wave is adversely affected by the movement of the user's wrist," but if "the translucent board 8 has a

convex surface…variation of the amount of the reflected light…that reaches the light receiving element 7 is suppressed." APPLE-1009, ¶[0025]. The convex surface is also said to prevent "disturbance light from the outside" from penetrating translucent board 8. *Id.*. Thus, when a convex cover is used, "the pulse wave can be detected without being affected by the movement of the user's wrist 4 as shown in FIG. 4A." *Id.*



APPLE-1009, FIGS. 4A, 4B.

From this and related description, a POSITA would have understood that the translucent board 8 that is operably connected to the walls of Ohsaki's package 5

improves adhesion between Ohsaki's sensor and the user's skin, improves detection efficiency, and provides protection to the elements accommodated within package 5.  APPLE-1003, ¶¶[0088]-[0089].

Accordingly, Ohsaki would have motivated a POSITA to add a light permeable protruding convex cover to Mendelson-799's sensor, to improve adhesion between the sensor and the user's tissue, to improve detection efficiency, and to provide additional protection to the elements accommodated within sensor housing 17. APPLE-1003, ¶[0090]; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

In more detail, and as shown below in the section view of the sensor that would have resulted, the POSITA would have added a transparent convex cover to sensor 10, the cover being located between tissue of the user and the array of detectors 16 and 18 when worn.  APPLE-1003, ¶[0091]; APPLE-1012, Abstract, 9:22-10:30, FIG. 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; *see also* APPLE-1008, ¶¶14-15, FIGS. 1, 2.  To obtain the advantages described by Ohsaki, the POSITA would have configured the cover to be sufficiently rigid to conform tissue of the user to at least a portion of the cover's surface when worn. APPLE-1003, ¶[0091]; APPLE-1009, ¶[0025]; *see also* APPLE-1009, ¶[0030], FIG. 1(b).  And, consistent with Ohsaki's configuration, the POSITA would have configured Mendelson '799's circumscribing wall to operably connect, on one

30

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

side, to the planar substrate on which detectors 16 and 18 are arranged and, on an opposite side, to the convex cover.  APPLE-1003, ¶[0091]; APPLE-1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, ¶[0017], FIG. 2.



APPLE-1012, FIG. 7 (annotated, with additional section view)

The above-described modification would require only routine knowledge of sensor design and assembly, which were well within the skill of a POSITA prior to the Critical Date.  APPLE-1003, ¶¶[0084]-[0092].  Indeed, the modification would have amounted to nothing more than the use of a known technique to improve similar devices in the same way, and combining prior art elements according to known

31

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

methods to yield predictable results—improved adhesion of the sensor to the user's skin, and improved signal strength. *KSR v. Teleflex*, 550 U.S. 398, 417 (2007); APPLE-1003, ¶[0092].  Furthermore, the elements of the resulting sensor would each perform functions they had been known to perform prior to the combination—a cover would simply be placed over the components accommodated within Mendelson-799's sensor housing 17, and would perform the same function as taught by Ohsaki.  APPLE-1003, ¶¶[0084]-[0092]; APPLE-1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.


*(b)*     ***Opaque layer with windows corresponding to detectors***

A POSITA would have recognized that an opaque circumscribing wall would partially shield Mendelson-799's detectors from ambient light, but would have understood from Schulz that additional measures could be taken to guard against saturation.  APPLE-1019, 79, 86, 94.

As discussed above (Section IV.B.3), Schulz describes a sensor featuring "a thin sheet of opaque material" placed inside the sensor's housing beneath a lens, with "a window in the opaque material provid[ing] an aperture for transmission of optical energy to or from the tissue site."  APPLE-1013, ¶[0073].  The opaque material blocks light, "and the window in the opaque material can be sized as needed

32

Exhibit H
Page 568

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

to block the proper amount of light from entering the aperture to, for example, avoid saturation of the light detector." *Id.*, FIGS. 19A-19C.

As explained below, this and related description from Schulz would have motivated a POSITA to add a layer of opaque material to the Mendelson-Ohsaki sensor, and to size windows in the opaque material as appropriate to avoid saturation of each of the sensor's detectors. APPLE-1003, ¶¶[0093]-[0101]; APPLE-1013, ¶[0073], FIGS. 19A-19C; *see also* APPLE-1019, 79, 86, 94; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).

In more detail, and as the 1997 textbook "Design of Pulse Oximeters" by J.G. Webster explains, pulse oximetry systems have optical interfaces, and "it is [therefore] important to minimize the effects from light other than the optical signals of interest." APPLE-1019, 76. More specifically, "to minimize errors, the pulse oximeter designer must attempt to limit the light reaching the photodiode to that which has traveled through tissue containing arterial blood." One measure that "can be taken to ensure this" involves "decreas[ing] the angle of incidence to the photodiode." *Id.*, 79-80, FIG. 6.6. One "simple solution" for preventing "[a]mbient light from sources such as sunlight, surgical lamps etc" from causing "errors in $S_aO_2$ readings" "is to cover the sensor site with opaque material which can prevent ambient light from reaching the photodiode." *Id.*, 94.

Exhibit H
Page 569

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

From Schulz's description, a POSITA would have understood that, in line with textbook recommendations, Schulz's opaque layer limits errors by decreasing the angle of incidence to the photodiode to that enabled by the window included within the layer, and by otherwise preventing ambient light from reaching the photodiode.  APPLE-1003, ¶¶[0093]-[0097]; APPLE-1013, ¶[0073], APPLE-1019, 79-80, 94, FIG. 6.6.

A POSITA would also have readily understood that Schulz's teachings would apply to pulse oximetry sensors featuring multiple photodiodes and that, in such sensors, errors could be limited through the use of an opaque layer with multiple windows, the windows being configured to decrease the angles of incidence to the photodiodes.  APPLE-1003, ¶[0098]; APPLE-1013, ¶[0073], APPLE-1019, 79-80, 94, FIG. 6.6; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b); AP-PLE-1023, 11-12, FIG. 11; *see* APPLE-1036.  Indeed, by the Critical Date, noninvasive optical physiological sensors with multiple detectors commonly employed opaque layers with multiple windows.  APPLE-1003, ¶[0098]; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b); APPLE-1023, 11-12, FIG. 11.

The 2005 article "Stimulating Student Learning with a Novel 'In-House' Pulse Oximeter Design" by J. Yao and S. Warren, for example, includes a photograph (reproduced below) of a pulse oximetry sensor created by an undergraduate

Exhibit H
Page 570

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

student as part of a research project; as shown, the sensor features multiple photo-diodes arranged radially about a set of central LEDs, and an opaque layer with multiple corresponding windows.  APPLE-1023, 11-12, FIG. 11, APPLE-1003, ¶[0220].  A POSITA would have understood that, like the layer described by Schulz, the layer depicted in the photograph prevents saturation of the photodiodes included in the student's sensor, by limiting the light that reaches the photodiodes to that which has traveled through tissue.  *Id*.; APPLE-1023, 1-14, FIG. 11; APPLE-1019, 79-80, 86, 94, FIG. 6.6.



APPLE-1023, FIG. 11 (excerpt, annotations in original).

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

Similar to these and other known configurations, and as shown below, Schulz would have motivated a POSITA to modify the sensor resulting from the teachings of Mendleson-799 and Ohsaki to further include an opaque layer that would have blocked light other than at windows corresponding to the sensor's photodiodes.  APPLE-1003, ¶¶[0099]-[0100]; APPLE-1013, ¶[0073], FIGS. 19A-19C; APPLE-1023, 1-14, FIG. 11; APPLE-1019, 79-80, 86, 94, FIG. 6.6; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).



APPLE-1012, FIG. 7 (annotated, with additional section view)

Exhibit H
Page 572

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

A POSITA would have combined the teachings of Mendelson-799, Ohsaki, and Schulz, as doing so would have amounted to nothing more than the use of a known technique to improve similar devices in the same way, and combining prior art elements according to known methods to yield predictable results.  APPLE-1003, ¶[0101].  Here, by adding a well-known component to the sensor, an opaque layer that blocks light other than at windows corresponding to the detectors, in order to "avoid saturation" of the detectors.  *Id.*; APPLE-1013, ¶[0073].  Furthermore, the elements of the combined system would each perform similar functions to those they had been known to perform prior to the combination—an opaque layer with appropriately sized windows would be placed over Mendelson-799's photodiodes, and that layer would perform the same function taught by Schulz. APPLE-1003, ¶[0101]; APPLE-1013, ¶[0073].

*(c)*   ***Communication of information to PDA***

As explained above, the sensor resulting from the teachings of Mendelson-799, Ohsaki, and Schulz, would have been configured "for use in an optical measurement device," as part of "a method for non-invasive measurement of a blood parameter."  APPLE-1003, ¶¶[0102]-[0110]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1012, FIG. 7 (annotated, with additional section view)

Mendelson-799's FIG. 8 (reproduced below) "illustrates a block-diagram of

a pulse oximeter 20 utilizing … sensor 10":

Exhibit H
Page 574

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1012, FIG. 8 (annotated)

*Id*., 8:39-40, 10:16-17.  As shown, "[t]he pulse oximeter typically includes a control unit 21, which is composed of an electronic block 22 including A/D and D/A converters connectable to the sensor 10, a microprocessor 24 for analyzing measured data, and a display 26 for presenting measurement results."  *Id*., 10:16-30.

Mendelson-799 does not explicitly describe wireless communication but, in view of Mendelson 2006's disclosure, a POSITA would have found it obvious to enable sensor 10 and pulse oximeter 20 to communicate wirelessly with a PDA featuring a touch-screen display.  APPLE-1003, ¶¶[0102]-[0104]; APPLE-1012, 10:16-30, FIG. 8; APPLE-1010, 1-4, FIG. 3; *see also* APPLE-1021, Cover, xvii-xviii, 10-12, 63, 73-101, 363; APPLE-1022, 4-11, 30-31, 284-297.

Indeed, by the Critical Date, physiological sensor devices commonly communicated wirelessly with handheld computing devices.  APPLE-1003, ¶[0105].

39

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

For example, and as discussed above (Section IV.B.4), Mendelson-2006 describes a "body-worn" pulse oximetry system that includes a sensor module, a receiver module, and a PDA.  APPLE-1010, 1-4, FIGS. 1-3.

In more detail, and as shown in Mendelson-2006's FIG. 2 (reproduced below), the sensor module includes an "optical reflectance transducer" for measuring photoplethysmographic (PPG) signals, and the receiver module includes "an embedded microcontroller." *Id.*, 1-2.  "Signals acquired by the Sensor Module are received by the embedded microcontroller which synchronously converts the corresponding PD output to R and IR PPG signals," and "[d]edicated software is used to filter the signals and compute [arterial oxygen saturation (SpO$_2$)] and [heart rate (HR)] based on the relative amplitude and frequency content of the reflected PPG signals."[2]  *Id.*

---

[2]Similar to Mendelson-799's sensor 10, which provides "measured data (i.e., electrical output of the sensor 10 indicative of the detected light" to pulse oximeter 20 for processing, Mendelson-2006's sensor module provides acquired signals to the receiver module for processing.  APPLE-1003, ¶[0106]; APPLE-1012, 10:22-30, FIG. 8; APPLE-1010, 2.

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1010, FIG. 2 (annotated)

"[I]nformation acquired by the Sensor Module is transmitted wirelessly via an RF link over a short range to a body-worn Receiver Module," and data processed by the receiver module is "transmitted wirelessly to a PDA." *Id.*, 2, FIG. 2. Mendelson-2006's system uses "the HP iPAQ h4150 PDA because it can support both 802.11b and Bluetooth™ wireless communication." *Id.*, 3. The PDA is used "as a local terminal," and it "also provides a low-cost touch screen interface." *Id.*; APPLE-1020, 1-4.

In more detail, and as shown in Mendelson-2006's FIG. 3 (reproduced below), the handheld PDA's "simple GUI" is "configured to present … input and

41

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

output information to the user" and to allow "easy activation of various functions." *Id.*, 4. Wireless communication with the handheld PDA is, moreover, said to enable transfer of information pertaining to physiological and wellness parameters such as "$SpO_2$, HR, body acceleration, and posture information" to the PDA; and, when the PDA is "carried by medics or first responders," this information is said to enhance their ability "to extend more effective medical care, thereby saving the lives of critically injured persons." *Id.*



APPLE-1010, FIG. 3.

To obtain these and other advantages described by Mendelson-2006, a POSITA would have been motivated to wirelessly transmit information or data acquired or processed by sensor 10 and pulse oximeter 20 to a PDA featuring a

42

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

touch-screen display, using either or both of 802.11b and Bluetooth<sup>TM</sup>.  APPLE-

1003, ¶¶[0102]-[0110]; APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8;

APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-4; *see also* APPLE-1021, xvii-xviii,

10-12, 17, 63, 73-101, 176, 190-193, 363; APPLE-1022, 4-11, 30-31, 56-67, 72-

92.


## 6.  Analysis

*Claim 1*

### [1pre] A physiological measurement system comprising

As illustrated below, and as described above with respect to Sections

IV.B.1-5, the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would

have included an optical sensor 10 configured "for use in an optical measurement

device," as part of "a method for non-invasive measurement of a blood parameter."

APPLE-1012, Abstract, 8:37-41, 9:22-40, 10:15-22, FIGS. 7, 8; APPLE-1003,

¶¶[0061]-[0110], [0111]-[0115].

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1012, FIG. 7 (annotated, with additional section view)

Mendelson '799's FIG. 8 (reproduced below) "illustrates a block-diagram of a pulse oximeter 20 utilizing … sensor 10":



APPLE-1012, FIG. 8 (annotated)

44

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

As shown, "[t]he pulse oximeter typically includes a control unit 21, which is composed of an electronic block 22 including A/D and D/A converters connectable to the sensor 10, a microprocessor 24 for analyzing measured data, and a display 26 for presenting measurement results." *Id.*, 10:16-22.

Thus, Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included a physiological measurement system comprising a physiological sensor device.  APPLE-1003, ¶¶[0111]-[0115]; APPLE-1012, Abstract, 7:25-8:13, 8:37-41, 9:22-40, 10:16-30, FIGS. 7, 8; APPLE-1009, Abstract, ¶¶[0003], [0008], [0016], [0017], [0020], FIGS. 1, 2.  Moreover, and as explained above with respect to Sections IV.B.4-5, a POSITA would have found it obvious to enable the physiological sensor device comprising sensor 10 and pulse oximeter 20 to communicate wirelessly with a handheld computing device such as a PDA featuring a touch-screen display. APPLE-1003, ¶¶[0061]-[0110]; APPLE-1012, 10:16-30, FIG. 8; APPLE-1010, 1-4, FIG. 3; APPLE-1021, Cover, xvii-xviii, 10-12, 63, 73-101, 363; APPLE-1022, 4-11, 30-31, 284-297.

Accordingly, [1pre] would have been obvious over Mendelson-Ohsaki-Schulz-Mendelson-2006.  APPLE-1003, ¶¶[0111]-[0115].

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

### [1a] a physiological sensor device comprising:

As explained above with respect to [1pre] and Sections IV.B.1-5, the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would have included a physiological sensor device including sensor 10 and pulse oximeter 20.  APPLE-1012, Abstract, 7:25-8:13, 8:37-41, 9:22-40, 10:16-30, FIGS. 7, 8; APPLE-1003, ¶¶[0061]-[0110], [0111]-[0117].

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [1a].  APPLE-1003, ¶¶[0116]-[0117].

### [1b] a plurality of emitters configured to emit light into tissue of a user;

As explained above with respect to [1pre]-[1a] and Sections IV.B.1-3, the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would have included "a light source 12 composed of three closely spaced light emitting elements (e.g., LEDs or laser sources) 12*a*, 12*b* and 12*c* generating light of three different wavelengths, respectively…."  APPLE-1012, Abstract, 7:25-8:13, 8:37-41, 9:22-40, 10:16-30, FIGS. 7, 8; APPLE-1003, ¶¶[0061]-[0117].

In more detail, the light emitting elements 12*a*, 12*b*, and 12*c* illustrated in Mendelson-799's FIG. 7 (reproduced below) are "adapted to emit radiation at predetermined frequencies," and the "detector assembly is adapted to detect reflected

46

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

radiation…and to generate respective signals" that "are used to determine the parameter of the blood." *Id.*, Abstract, 9:22-40, FIG. 7; APPLE-1003, ¶¶[0118]-[0119].



APPLE-1012, FIG. 7 (annotated).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [1b]. APPLE-1003, ¶¶[0118]-[0121].

***[1c] at least four detectors, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector;***

As explained above with respect to [1pre]-[1b] and Sections IV.B.1-5, the

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would have included "a sensor housing 17" accommodating "an array of discrete detectors (e.g., photodiodes)," including "a 'far' detector 16 and a 'near' detector 18, arranged in two concentric ring-like arrangements … surrounding … light emitting elements …." APPLE-1012, Abstract, 2:14-28, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1003, ¶¶[0061]-[0117].

In more detail, each of the twelve discrete photodiodes included in the detector assembly illustrated in Mendelson-799's FIG. 7 (reproduced below) are "adapted to detect reflected radiation … and to generate respective signals" that "are used to determine the parameter of the blood." APPLE-1012, Abstract, 9:22-48, FIG. 7; APPLE-1003, ¶[0123].



APPLE-1012, FIG. 7 (annotated).

Exhibit H
Page 584

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

As explained above with respect to Sections IV.B.1-5, and as illustrated below, a POSITA would have found it obvious to implement sensor 10 with an opaque layer blocking optical paths to each detector, other than at windows allowing light to pass through to corresponding detectors.  APPLE-1003, ¶¶[0122]-[0131]; APPLE-1013, ¶[0073], FIGS. 19A-19C; APPLE-1019, 79, 86, 94; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).



APPLE-1012, FIG. 7 (annotated, with additional section view).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [1c].  APPLE-1003, ¶¶[0122]-[0131].

49

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

**[1d] *a wall that surrounds at least the at least four detectors; and***

As explained above with respect to [1pre]-[1c] and Sections IV.B.1-5, the

Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would have included an

opaque wall configured to circumscribe the twelve detectors included in detector

rings 16 and 18.  APPLE-1003, ¶¶[0061]-[0131]; APPLE-1012, Abstract, 7:25-

8:41, 9:22-10:30, FIGS. 7, 8.

In more detail, Mendelson-799's FIG. 7 (reproduced below) illustrates sen-

sor housing 17 as encircling the "concentric ring-like arrangements" of discrete de-

tectors included in detectors 16 and 18.  *See* APPLE-1012, 9:23-40, Abstract, FIG.

7; APPLE-1003, ¶[0133].

50

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1012, FIG. 7 (annotated).

As explained above in Sections IV.B.1-5, and as shown below, a POSITA

would have found it obvious to connect, to the illustrated portion of sensor housing

17, an opaque wall configured to circumscribe the array of discrete detectors in-

cluded in detector rings 16 and 18.  APPLE-1003, ¶¶[0132]-[0144]; APPLE-1012,

4:13-22, 9:33-40, FIG. 7; APPLE-1017, 2-3, 6, FIG. 1; APPLE-1018, 1, 2, FIG. 2;

APPLE-1019, 79, 86, 94; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2; AP-

PLE-1006, ¶¶[0023], [0024], FIG. 1(b).

Exhibit H
Page 587

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1012, FIG. 7 (annotated, with additional section view)

Additionally, as shown in Ohsaki's FIG. 2, Ohsaki discloses that its "detecting element 2 comprises a package 5" that includes a wall that surrounds, or circumscribes, its light emitting element 6 and light receiving element 7. The opaque wall has an opening over which "a translucent board…transparent to light" is placed. APPLE-1009, ¶[0017]; *see also* APPLE-1013, ¶[0040], FIGS. 6A-B; APPLE-1003, ¶¶[0122]-[0125].

Exhibit H
Page 588

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

## FIG. 2



APPLE-1009, FIG. 2 (annotated)

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[1d]. APPLE-1003, ¶¶[0132]-[0144].

***[1e] a cover that operably connects to the wall and that is configured to be located between tissue of the user and the at least four detectors when the physiological sensor device is worn by the user, wherein:***

As explained above with respect to [1pre]-[1d] and Sections IV.B.1-5, the

Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would have included a

transparent cover with a single protruding convex surface that is configured to be

located between user tissue and the array of discrete detectors included in detectors

16 and 18 when sensor 10 is worn, such that user tissue conforms to the surface.

53

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

APPLE-1003, ¶¶[0061]-[0144]; APPLE-1012, Abstract, 4:13-22, 7:25-8:41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; *see also* APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); AP-PLE-1008, ¶¶14-15, FIGS. 1, 2; APPLE-1024, ¶¶[0033], [0035], FIG. 6.



APPLE-1012, FIG. 7 (annotated, with additional section view)

As explained above with respect to [1pre]-[1d] and Sections IV.B.1-5, and as shown above, the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would have included an opaque circumscribing wall that would have operably con-

54

nected, on one side, to the planar substrate on which detectors 16 and 18 are arranged and, on an opposite side, to the convex cover.  APPLE-1003, ¶¶[0145]-[0155]; APPLE-1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, ¶[0017], FIG. 2.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [1e].  APPLE-1003, ¶¶[0145]-[0155].

**[1f] the cover comprises a single protruding convex surface, and**

As explained above with respect to [1e] and Sections IV.B.1-5, the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would have included a cover comprising a single protruding convex surface.  APPLE-1003, ¶¶[0061]-[0155]; APPLE-1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [1f].  APPLE-1003, ¶¶[0156]-[0157].

**[1g] at least a portion of the cover is sufficiently rigid to cause tissue of the user to conform to at least a portion of a shape of the single protruding convex surface when the physiological sensor device is worn by the user; and**

As explained above with respect to [1e] and Sections IV.B.1-5, the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would have included a cover comprising a single protruding convex surface, at least a portion of which would have been sufficiently rigid to cause user tissue to conform to the surface when the physiological sensor device is worn.  APPLE-1003, ¶¶[0061]-[0157]; APPLE-

55

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

In more detail, and as shown in Ohsaki's FIG. 2 (reproduced below), Ohsaki discloses that "the convex surface of the translucent board 8 is in intimate contact with the surface of the user's skin," and that slippage of the detecting element "off the detecting position of the user's wrist" is thereby prevented.  APPLE-1009, ¶[0025], FIGS. 1, 2.  As depicted, the user's tissue conforms to the shape of the cover's surface when the sensor is worn.  APPLE-1003, ¶[0159]; FIG. 2.



APPLE-1009, FIG. 2 (annotated).

From this and related disclosure, a POSITA would have understood that Ohsaki's translucent board 8 is operable to conform tissue of the user to its convex shape, and would have been motivated to ensure that the cover included in the

Exhibit H
Page 592

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

Mendelson-Ohsaki-Schulz-Mendelson-2006 combination was sufficiently rigid to cause user tissue to conform to the surface when the physiological sensor device is worn.  APPLE-1003, ¶¶[0158]-[0161]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, Abstract ,¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [1g].  APPLE-1003, ¶¶[0158]-[0161].

**[1h] a handheld computing device in wireless communication with the physiological sensor device, wherein the handheld computing device comprises:**

As explained above with respect to [1pre]-[1g] and Sections IV.B.4-5, a POSITA would have found it obvious to enable the physiological sensor device comprising sensor 10 and pulse oximeter 20 to communicate wirelessly with a handheld computing device such as a PDA featuring a touch-screen display.  APPLE-1003, ¶¶[0061]-[0161]; APPLE-1012, 10:16-30, FIG. 8; APPLE-1010, 1-4, FIG. 3; APPLE-1021, Cover, xvii-xviii, 10-12, 63, 73-101, 363; APPLE-1022, 4-11, 30-31, 284-297.

In more detail, the version of Mendelson-799's FIG. 7 reproduced below illustrates optical sensor 10, as modified in view of Ohsaki, Schulz, and Mendelson-2006:

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1012, FIG. 7 (annotated, with additional section view).

Mendelson-799's FIG. 8 (reproduced below) "illustrates a block-diagram of a pulse oximeter 20 utilizing … sensor 10":

Exhibit H
Page 594

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1012, FIG. 8 (annotated).

*Id.*, 8:39-40, 10:16-17.

As discussed above (Section IV.B.4), Mendelson-2006 describes a "body-worn" pulse oximetry system that includes a sensor module, a receiver module, and a PDA.  APPLE-1010, 1-4, FIGS. 1-3.  Similar to Mendelson-799's sensor 10, which provides "measured data (i.e., electrical output of the sensor 10 indicative of the detected light" to pulse oximeter 20 for processing, Mendelson 2006's sensor module provides acquired signals to its receiver module for processing.  APPLE-1003, ¶¶[0162]-[0167]; APPLE-1012, 10:22-30, FIG. 8; APPLE-1010, 1-4, FIGS. 1-3.  Data processed by Mendelson-2006's receiver module is transmitted wirelessly to a PDA.  APPLE-1010, 2, FIG. 2.  Mendelson-2006's system uses "the HP iPAQ h4150 PDA because it can support both 802.11b and Bluetooth™ wireless

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

communication." *Id.*, 3.  The PDA is used "as a local terminal," and it "also provides a low-cost touch screen interface."  *Id.*; *see also* APPLE-1020, 1-4; *see also* APPLE-1021, Cover, xvii-xviii, 10-12, 17, 63, 363; APPLE-1022, 4-11, 30-31.

In more detail, and as shown in Mendelson-2006's FIG. 3 (reproduced below), the handheld PDA's "simple GUI" is "configured to present … input and output information to the user" and to allow "easy activation of various functions." APPLE-1010, 4.  Wireless communication with the handheld PDA is, moreover, said to enable transfer of information pertaining to physiological and wellness parameters such as "$SpO_2$, HR, body acceleration, and posture information" to the PDA; and, when the PDA is "carried by medics or first responders," this information is said to enhance their ability "to extend more effective medical care, thereby saving the lives of critically injured persons."  *Id.*

60

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1010, FIG. 3 (left).

To obtain these and other advantages described by Mendelson-2006, a POSITA would have found it obvious to wirelessly transmit information or data acquired or processed by a physiological sensor device including sensor 10 and pulse oximeter 20 to a PDA such as the HP iPAQ h4150, using either or both of 802.11b and Bluetooth$^{TM}$.  APPLE-1003, ¶¶[0162]-[0171]; APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-4..

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [1h].  APPLE-1003, ¶¶[0162]-[0176].

61

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

***[1i] one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user;***

As explained above with respect to [1pre]-[1h] and Sections IV.B.1-5, a POSITA would have found it obvious to place a handheld computing device such as the HP iPAQ h4150 PDA in wireless communication with the physiological sensor device resulting from the combined teachings of Mendelson-799, Ohsaki, Schulz, and Mendelson-2006.  APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-4; APPLE-1003, ¶¶[0061]-[0176].

In implementing this physiological measurement system, the POSITA would have configured a processor of the PDA to wirelessly receive signals from the physiological sensor device, the signals being responsive to physiological parameters of the user.  APPLE-1003, ¶[0178]; APPLE-1012, 9:23-10:37, FIGS. 7, 8; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-3, 6-8.

In more detail, Mendelson-2006 describes the wireless transmission of "vital physiological information" acquired and processed by a "body-worn pulse oximeter" to the HP iPAQ h4150 PDA, which is utilized "as a local terminal" with a "low-cost touch screen interface" featuring a "simple GUI" "configured to present…input and output information to the user." APPLE-1010, 1-2, FIGS. 1-3. Mendelson-2006's FIG. 3, for example, is a photograph of an HP iPAQ h4150

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

PDA being used to display indicia responsive to measurements of $SpO_2$ and HR, the PDA having wirelessly received signals responsive to the user's SpO2 and HR from the body-worn pulse oximeter.  APPLE-1003, ¶[0179]; APPLE-1010, 2-3, FIG. 3.

The iPAQ h4150 PDA is said by Mendelson-2006 to include "sufficient computational resources for the intended application," and the PDA's user manual confirms that it typically included a "400 MHz Intel Xscale[TM] technology-based processor."  *Id.*, 3; APPLE-1020, 1-3; APPLE-1022, 4.  The iPAQ h4150 PDA is said by Mendelson-2006 to support both 802.11b and Bluetooth[TM] wireless communication, and the PDA's user manual confirms that it typically included "Integrated WLAN 802.11b" and "Integrated Bluetooth[TM]."  APPLE-1010, 3; APPLE-1020, 1-3, 6-8; APPLE-1021, 173-203; APPLE-1022, 56-67, 72-92.

For at least these reasons, a POSITA would have found it obvious to configure a processor of the PDA to wirelessly receive signals from the physiological sensor device, the signals being responsive to physiological parameters of the user. APPLE-1003, ¶¶[0177]-[0182]; APPLE-1012, 9:23-10:37, FIGS. 7, 8; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-3, 6-8.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [1i].  APPLE-1003, ¶¶[0177]-[0182].

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

***[1j] a touch-screen display configured to provide a user interface, wherein: the user interface is configured to display indicia responsive to measurements of the physiological parameter, and an orientation of the user interface is configurable responsive to a user input; and***

As explained above with respect to [1pre]-[1i] and Sections IV.B.1-5, a POSITA would have found it obvious to place a handheld computing device such as the HP iPAQ h4150 PDA in wireless communication with the physiological sensor device resulting from the combined teachings of Mendelson-799, Ohsaki, Schulz, and Mendelson-2006.  APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-4; APPLE-1003, ¶¶[0061]-[0182].

In implementing this physiological measurement system, the POSITA would have configured a touch-screen display of the PDA to provide a user interface, the user interface being configured to display indicia responsive to measurements of the physiological parameter, and an orientation of the user interface being configurable responsive to a user input.  APPLE-1003, ¶[0184].

In more detail, Mendelson-2006 describes the wireless transmission of "vital physiological information" acquired and processed by a "body-worn pulse oximeter" to the HP iPAQ h4150 PDA, which is utilized "as a local terminal" with a "low-cost touch screen interface" featuring a "simple GUI" "configured to present … input and output information to the user" and to allow "easy activation of vari-

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

ous functions." APPLE-1010, 1-2, FIGS. 1-3; *see also* APPLE-1020, 3 (confirm-

ing that the HP iPAQ h4150 typically included a touch screen display). As Men-

delson-2006 explains, a "dedicated National Instruments LabVIEW program was

developed to control all interactions between the PDA and the wearable unit via a

graphical user interface (GUI)," with "[o]ne part of the LabVIEW software [being]

used to control the flow of information through the 802.11b radio system on the

PDA." APPLE-1010, 3.

As shown below, Mendelson-2006's FIG. 3 is a photograph of an HP iPAQ

h4150 PDA being used to display indicia responsive to measurements of $SpO_2$ and

HR, the PDA having wirelessly received signals responsive to the user's $SpO_2$ and

HR from the body-worn pulse oximeter. APPLE-1003, ¶[0186]; APPLE-1010, 1-

3, FIG. 3.

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1010, FIG. 3.

Mendelson-2006 does not explicitly state that an orientation of the GUI pro-vided by the PDA is configurable responsive to a user input, but a POSITA would have understood that the LabVIEW software that was used "to control all interac-tions between the PDA and the wearable unit via [t]he graphical user interface" in-cluded the option to configure an orientation of a user interface as a standard fea-ture.   APPLE-1003, ¶[0187]; APPLE-1027, 186 ("You can use the Report Genera-tion VIs to … Set the report orientation—portrait or landscape").

66

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

Additionally, Mendelson-2006 describes the "LabVIEW program" as interacting with the "Windows CE™" operating system.  APPLE-1010, 3.  A POSITA would have understood that, as a standard feature, that operating system enabled users to dynamically switch the screen orientation between portrait and landscape modes.   APPLE-1003, ¶[0188]; APPLE-1020, 1; APPLE-1021, xvii-xviii ("Microsoft has changed the software name…[f]irst it was Windows CE…and now Windows Mobile"), 63 ("Windows Mobile 2003SE and Windows Mobile 5 can switch the screen orientation from portrait…to landscape"); APPLE-1022, 8.

Consistent with Mendelson-2006's description of the PDA's "simple GUI" being configured to allow for "easy activation of various functions," a POSITA would have found it obvious to make an orientation of the PDA's user interface configurable responsive to a user input, for the sake of user convenience.  APPLE-1003, ¶[0189]; APPLE-1010, 3, FIG. 3; APPLE-1020, 1-8; APPLE-1021, xvii-xviii, 63; APPLE-1022, 8.

For at least these reasons a POSITA would have found it obvious to configure a touch-screen display of the PDA to provide a user interface, the user interface being configured to display indicia responsive to measurements of the physiological parameter, and an orientation of the user interface being configurable responsive to a user input.  APPLE-1003, ¶[0190]; APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIG. 3; APPLE-1020, 1-4; *see also* APPLE-

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

1009, ¶¶[0005], [0020].

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [1j].  APPLE-1003, ¶¶[0183]-[0191].

**[1k] a storage device configured to at least temporarily store at least the measurements of the physiological parameter.**

As explained above with respect to [1pre]-[1j], a POSITA would have found it obvious to place a handheld computing device such as the HP iPAQ h4150 PDA in wireless communication with the physiological sensor device resulting from the combined teachings of  Mendelson-799, Ohsaki, Schulz, and Mendelson-2006. APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-4; APPLE-1003, ¶¶[0061]-[0191].

In implementing this physiological measurement system, the POSITA would have found it obvious to configure a storage device of the PDA to at least temporarily store measurements of physiological parameters (e.g., $SpO_2$ and HR).  APPLE-1003, ¶[0193]; APPLE-1010, 3, FIG. 3; APPLE-1020, 3, 10; APPLE-1021, 31-36; APPLE-1022, 50-51.

As Mendelson-2006 explains, the "PDA can also serve to temporarily store vital medical information received from the wearable unit."  APPLE-1010, 3.  A POSITA would have understood that the vital medical information would have included measurements of the physiological parameters obtained by the physiological sensor device (e.g., SpO2 and HR).  APPLE-1003, ¶[0194]; APPLE-1010, 1-4,

68

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

FIG. 3.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[1k].  APPLE-1003, ¶¶[0192]-[0195].


*Claim 2*

**[2] The physiological measurement system of claim 1, wherein the at least four detectors comprise at least eight detectors.**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [2].  *Supra*

[1pre]-[1c] and Sections IV.B.1-5.  *See also* APPLE-1003, ¶¶[0061]-[0155],

[0196]-[0198]; APPLE-1012, Abstract, 2:14-28, 7:25-8:13, 8:37-41, 9:22-10:30,

FIGS. 7, 8.


*Claim 3*

**[3] The physiological measurement system of claim 2, wherein at least part of the single protruding convex surface is light permeable to provide at least one optical path to at least one of the at least four detectors**

As explained above with respect to [1pre]-[1k] and Sections IV.B.1-5, the

Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would have included a

transparent protruding convex cover configured to be located between tissue of the

user and the array of discrete detectors included in detectors 16 and 18 when the

sensor is worn by the user. APPLE-1003, ¶¶[0061]-[0195], [0196]-[0198]; AP-PLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

In accordance with the teachings of Ohsaki, and as shown below, the transparent cover would have been light permeable, so as to provide at least one optical path to at least one of the at least four detectors. APPLE-1003, ¶[0200]; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1012, 2:8-28, 9:22-40, FIGS. 3, 7; APPLE-1006, ¶[0030], FIG. 1(b).



APPLE-1012, FIG. 7 (annotated, with additional section view).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [3]. APPLE-1003, ¶¶[0199]-[0201].

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

*Claim 4*

**[4] The physiological measurement system of claim 3, wherein the physiological sensor device further comprises: an at least partially opaque layer blocking one or more optical paths to at least one of the at least four detectors, wherein the at least partially opaque layer comprises the windows that allow light to pass through to the corresponding detectors.**

As explained above with respect to [1pre]-[1k] and [2]-[3], the sensor resulting from the combined teachings of Mendelson-799, Ohsaki, Schulz, and Mendelson-2006 would have included an opaque layer blocking one or more optical paths to at least one of the detectors, the opaque layer including windows that allow light to pass through to the corresponding detectors. APPLE-1003, ¶¶[0061]-[0195], [0196]-[0206]; APPLE-1013, ¶[0073], FIGS. 19A-19C; *see also* APPLE-1019, 79, 86, 94; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).

Schulz, for example, describes a pulse oximetry sensor featuring "a thin sheet of opaque material" placed inside the sensor's housing, with "a window in the opaque material provid[ing] an aperture for transmission of optical energy to or from the tissue site." APPLE-1013, ¶[0073]. The opaque material blocks light, "and the window in the opaque material can be sized as needed to block the proper amount of light from entering the aperture to, for example, avoid saturation of the light detector." *Id.*, FIGS. 19A-19C.

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

This and related description would have motivated a POSITA to add a layer of opaque material to Mendelson-799's sensor, and to size windows in the opaque material as appropriate to avoid saturation of each of the sensor's detectors.  AP-PLE-1003, ¶[0204]; APPLE-1013, ¶[0073], FIGS. 19A-19C; *see also* APPLE-1019, 79, 86, 94; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b) (illustrating an opaque holder with cavities for storing each of a plurality of photodetectors, the cavities being sized as appropriate to enable a proper amount of light to reach the corresponding detectors).

As shown below, in the sensor that would have resulted from the combination of Mendelson-799, Ohsaki, Schulz, and Mendelson-2006, each of the twelve detectors would have had a corresponding window allowing light to pass through to the detector.  APPLE-1003, ¶[0205]; APPLE-1013, ¶[0073], FIGS. 19A-19C; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1012, FIG. 7 (annotated, with additional section view).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[4].  APPLE-1003, ¶¶[0202]-[0206].

*Claim 5*

**[5] The physiological measurement system of claim 4, wherein the physiological sensor device further comprises: a substrate having a first surface, wherein the at least four detectors are arranged on the first surface.**

As explained above with respect to [1pre]-[1d], the sensor resulting from the

combined teachings of Mendelson-799, Ohsaki, Schulz, and Mendelson-2006

Exhibit H
Page 609

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

would have included "an array of discrete detectors (e.g., photodiodes)," including "a 'far' detector 16 and a 'near' detector 18, arranged in two concentric ring-like arrangements…surrounding…light emitting elements…." APPLE-1012, Abstract, 2:14-28, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1003, ¶¶[0061]-[0144], [0207]-[0210].

As Mendelson-799 explains, traditional "reflection-mode or backscatter type pulse oximetry" sensors of the type "shown in FIG. 3" feature "LEDs and [a] photodetector [that] are both mounted side-by-side next to each other on the same planar substrate," which "allows for measuring $SaO_2$ from multiple convenient locations on the body (e.g. the head, torso, or upper limbs), where conventional transmission-mode measurements are not feasible." *Id.*, 2:14-28. Similarly, a POSITA would have understood that, although the sensor depicted in Mendelson-799's FIG. 7 features two concentric rings of discrete photodetectors that are arranged in a radially-symmetric manner about central light emitting elements, the photodetectors and the light emitting elements are arranged on a first surface of a planar substrate. *See id.*, 9:22-10:30, FIG. 7; APPLE-1003, ¶[0208] (citing APPLE-1013, ¶[0073]; APPLE-1017, 4-3, 6, FIG. 2; APPLE-1018, 1-3, FIG. 1).

As such, and as shown below, a POSITA would have found it obvious to include a substrate having a first surface in the sensor resulting from the combined

74

teachings of Mendelson-799, Ohsaki, Schulz, and Mendelson-2006, with each of
the detectors being arranged on that first surface.  APPLE-1003, ¶[0209].



APPLE-1012, FIG. 7 (annotated, with additional section view).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[5].  APPLE-1003, ¶¶[0207]-[0210].

*Claim 6*

**[6] The physiological measurement system of claim 5, wherein: the wall sur-
rounds at least the at least four detectors on the first surface, the wall operably
connects to the substrate on one side of the wall, and  the wall operably connects
to the cover on an opposing side of the wall.**

75

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

As explained above with respect to [1pre]-[1e] and [2]-[5], and as shown below, the sensor resulting from the combined teachings of Mendelson-799, Ohsaki, Schulz, and Mendelson-2006 would have included a wall surrounding the photodiodes included in far detector 16 and near detector 18, the wall being operably connected on one side to the planar substrate on which the detectors are arranged, and on an opposing side to a cover.  APPLE-1003, ¶¶[0061]-[0155], [0196]-[0212]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 3, 7, 8; APPLE-1019, 79, 86, 94; APPLE-1017, 4-3, 6, FIG. 2; APPLE-1018, 1-3, FIG. 1; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2; *see also* APPLE-1006, ¶¶[0023], [0024], FIG. 1(b).

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1012, FIG. 7 (annotated, with additional section view).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[6].  APPLE-1003, ¶¶[0211]-[0212].

*Claim 7*

**[7] The physiological measurement system of claim 6, wherein the wall creates one or more gaps between the first surface of the substrate and a surface of the cover that is interior to the physiological sensor device, and  wherein the at least four detectors are positioned on the first surface of the substrate within the one or more gaps.**

Exhibit H
Page 613

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

As explained above with respect to [1pre]-[1e] and [2]-[6], the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would have included a wall surrounding the photodiodes included in far detector 16 and near detector 18, the wall being operably connected on one side to the planar substrate on which the detectors are arranged, and on an opposing side to a cover. APPLE-1003, ¶¶[0061]-[0155], [0196]-[0215]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 3, 7, 8; APPLE-1019, 79, 86, 94; APPLE-1017, 4-3, 6, FIG. 2; APPLE-1018, 1-3, FIG. 1; APPLE-1009, ¶¶[0015], [0017] ("[t]he light emitting element 6 and light receiving element 7 are included in the package 5 and arranged on the circuit board 9. The translucent board 8 is … attached to the opening of the package 5"), [0025], FIGS. 1, 2; APPLE-1006, ¶¶[0023], [0024], FIG. 1(b).

In the resulting configuration, and as shown below, the wall would have created a donut-shaped gap between the first surface of the substrate and a surface of the cover that is interior to the physiological sensor device, and each of the detectors would have been positioned on the first surface of the substrate within the gap. APPLE-1003, ¶[0214]; APPLE-1012, 9:22-10:30, FIG. 7; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2; APPLE-1006, ¶¶[0023], [0024], FIG. 1(b).

Exhibit H
Page 614

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1012, FIG. 7 (annotated, with additional section view).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[7].  APPLE-1003, ¶¶[0213]-[0215].

*Claim 20*

**[20pre] A physiological measurement system comprising:**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [20pre].  *Supra*

[1pre]-[1k], Sections IV.B.1-5; *see also* APPLE-1003, ¶¶[0061]-[0195], [0216]-

[0224]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 3,

79

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

7, 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1013, ¶[0073], FIGS. 19A-19C; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-11; AP-PLE-1019, 79, 86, 94; APPLE-1017, 4-3, 6, FIG. 2; APPLE-1018, 1-3, FIG. 1; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).

### [20a] a physiological sensor device comprising:

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [20a].  Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [20a].  *Supra* [1pre]-[1k], [20pre], and Sections IV.B.1-5; *see also* APPLE-1003, ¶¶[0061]-[0195], [0216]-[0226]; APPLE-1012, Abstract, 7:25-8:13, 8:37-41, 9:22-40, 10:16-30, FIGS. 7, 8.

### [20b] a plurality of emitters configured to emit light into tissue of a user;

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [20b].  *Supra* [1pre]-[1k], [20pre]-[20a], and Sections IV.B.1-5; *see also* APPLE-1003, ¶¶[0061]-[0195], [0216]-[0228]; APPLE-1012, Abstract, 2:14-28, 8:37-41, 9:22-10:30, FIGS. 3, 7, 8; APPLE-1009, ¶¶[0017], [0020], [0022], FIG. 2.

### [20c] at least four detectors, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector;

80

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [20c].  *Supra* [1pre]-[1k], [20pre]-[20b], and Sections IV.B.1-5; *see also* APPLE-1003, ¶¶[0061]-[0195], [0216]-[0230]; APPLE-1012, Abstract, 2:14-28, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1013, ¶[0073], FIGS. 19A-19C; *see also* AP-PLE-1019, 79, 86, 94; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).

**[20d] a wall that surrounds at least the at least four detectors; and**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [20d].  *Supra* [1pre]-[1k], [20pre]-[20c], Sections IV.B.1-5; *see also* APPLE-1003, ¶¶[0061]-[0195], [0216]-[0232]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 3, 7, 8; APPLE-1019, 79, 86, 94; APPLE-1017, 4-3, 6, FIG. 2; AP-PLE-1018, 1-3, FIG. 1; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2; AP-PLE-1006, ¶¶[0023], [0024], FIG. 1(b).

**[20e] a cover comprising a single protruding convex surface, wherein the single protruding convex surface is configured to be located between tissue of the user and the at least four detectors when the physiological sensor device is worn by the user, wherein at least a portion of the single protruding convex surface is sufficiently rigid to cause tissue of the user to conform to at least a portion of a shape of the single protruding convex surface when the physiological sensor device is worn by the user, and wherein the cover operably connects to the wall; and**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [20e].  *Supra* [1pre]-[1k], [20pre]-[20d], and Sections IV.B.1-5; APPLE-1003, ¶¶[0061]-[0195],

81

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

[0216]-[0234]; APPLE-1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

**[20f] a handheld computing device in wireless communication with the physiological sensor device.**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [20f]. *Supra* [1pre]-[1k], [20pre]-[20e], and Sections IV.B.1-5; APPLE-1003, ¶¶[0061]-[0195], [0216]-[0236]; APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-4.

*Claim 21*

**[21a] The physiological measurement system of claim 20, wherein the handheld computing device comprises: one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user;**

As explained above with respect to [1pre]-[1k], [20pre]-[20f], and Sections IV.B.1-5, the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would have included a handheld computing device including one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user. APPLE-1003, ¶¶[0061]-[0195], [0216]-[0236]; APPLE-1012, Abstract,

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-3,

6-8.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[21a].  APPLE-1003, ¶¶[0237]-[0238].

**[21b] a touch-screen display configured to provide a user interface, wherein:**

As explained above with respect to [1pre]-[1k], [20pre]-[20f], [21a], and

Sections IV.B.1-5, the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination

would have included a handheld computing device including touch-screen display

configured to provide a user interface.  APPLE-1003, ¶¶[0061]-[0195], [0216]-

[0238]; APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-

3, FIGS. 1-3; APPLE-1020, 1-3, 6-8.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[21b].  APPLE-1003, ¶¶[0239]-[0240].

**[21c] the user interface is configured to display indicia responsive to measure-
ments of the physiological parameter, and**

As explained above with respect to [1pre]-[1k], [20pre]-[20f], and [21a]-

[21b], and Sections IV.B.1-5, the user interface included in the handheld compu-

ting device of the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would

83

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

have been configured to display indicia responsive to measurements of the physio-logical parameter. APPLE-1003, ¶¶[0061]-[0195], [0216]-[0240]; APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIG. 3 (depicting display of indicia responsive to measurements of $SpO_2$ and HR); APPLE-1020, 1-3, 6-8.



APPLE-1010, FIG. 3.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [21c]. APPLE-1003, ¶¶[0241]-[0242].

Exhibit H
Page 620

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

**[21d] an orientation of the user interface is configurable responsive to a user input; and**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [21d].  *Supra* [1pre]-[1k], [20pre]-[20f], [21a]-[21c], and Sections IV.B.1-5; APPLE-1003, ¶¶[0061]-[0195], [0216]-[0244]; APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1; APPLE-1021, xvii-xviii, 63; APPLE-1022, 8.

**[21e] a storage device configured to at least temporarily store at least the measurements of the physiological parameter.**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [21d].  *Supra* [1pre]-[1k], [20pre]-[20f], [21a]-[21d], and Sections IV.B.1-5; APPLE-1003, ¶¶[0061]-[0195], [0216]-[0246]; APPLE-1010, 3, FIG. 3; APPLE-1020, 3, 10; APPLE-1021, 31-36; APPLE-1022, 50-51.

## Claim 22

**[22] The physiological measurement system of claim 21, wherein the at least four detectors comprise at least eight detectors.**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [22].  *Supra* [1pre]-[1k] and Sections IV.B.1-5.  *See also* APPLE-1003, ¶¶[0061]-[0195], [0247]-[0248]; APPLE-1012, Abstract, 2:14-28, 7:25-8:13, 8:37-41, 9:22-10:30,

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

FIGS. 7, 8.

*Claim 23*

**[23] The physiological measurement system of claim 22, wherein at least part of the single protruding convex surface is light permeable to allow light to reach at least one of the at least four detectors.**

As explained above with respect to [1pre]-[1k], [20pre]-[20f], [21]-[22], [3], and Sections IV.B.1-5, the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would have included a transparent protruding convex cover configured to be located between tissue of the user and the array of discrete detectors included in detectors 16 and 18 when the sensor is worn by the user.  APPLE-1003, ¶¶[0061]-[0195], [0199]-[0201], [0216]-[0248]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

In accordance with the teachings of Ohsaki, and as shown below, the transparent cover would have been light permeable, so as to provide at least one optical path to at least one of the at least four detectors.  APPLE-1003, ¶[0250]; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; *see also* APPLE-1012, 2:8-28, 9:22-40, FIGS. 3, 7; APPLE-1006, ¶[0030], FIG. 1(b).

Exhibit H
Page 622

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1012, FIG. 7 (annotated, with additional section view).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[23].  APPLE-1003, ¶*¶[0249]-[0251].

*Claim 24*

**[24] The physiological measurement system of claim 23, wherein the physiological sensor device further comprises: an at least partially opaque layer blocking one or more optical paths to at least one of the at least four detectors, wherein the at least partially opaque layer comprises the windows that allow light to pass through to the corresponding detectors.**

87

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [24].  *Supra* [20pre]-[20f], [21]-[23], [4], and Sections IV.B.1-5.  *See also* APPLE-1003, ¶¶[0061]-[0195], [0202]-[0206], [0216]-[0251]; APPLE-1012, Abstract, 2:14-28, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1013, ¶[0073], FIGS. 19A-19C; APPLE-1019, 79, 86, 94; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).  As shown below, each of the twelve detectors in the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would have had a corresponding window allowing light to pass through to the detector .  APPLE-1003, ¶¶[0252]-[0256].



APPLE-1012, FIG. 7 (annotated, with additional section view).

Exhibit H
Page 624

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

*Claim 25*

**[25] The physiological measurement system of claim 24, wherein the physiological sensor device further comprises: a substrate having a first surface, wherein the at least four detectors are arranged on the first surface, and wherein the wall surrounds at least the at least four detectors on the first surface, wherein: the wall operably connects to the substrate on one side of the wall, and  the wall operably connects to the cover on an opposing side of the wall.**

As explained above with respect to [1pre]-[1k], [20pre]-[20f], [21]-[24], [5], and Sections IV.B.1-5, the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would have included a substrate having a first surface, with each of the photodiodes included in far detector 16 and near detector 18 being arranged on that first surface.  APPLE-1003, ¶¶[0061]-[0195], [0207]-[0212], [0216]-[0256].

As explained above with respect to [1pre]-[1e], [20pre]-[20f], [22]-[24], [6], and Sections IV.B.1-5, and as shown below, the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination would have included a wall surrounding the photodiodes included in far detector 16 and near detector 18, the wall being operably connected on one side to the planar substrate on which the detectors are arranged, and on an opposing side to a cover.  APPLE-1003, ¶[0258]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 3, 7, 8; APPLE-1019, 79, 86, 94; APPLE-1017, 4-3, 6, FIG. 2; APPLE-1018, 1-3, FIG. 1; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2; APPLE-1006, ¶¶[0023], [0024], FIG. 1(b).

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1012, FIG. 7 (annotated, with additional section view).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[25].  APPLE-1003, ¶¶[0257]-[0259].


*Claim 26*

**[26] The physiological measurement system of claim 25, wherein a surface of the handheld computing device positions the touch-screen display.**

90

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

As explained above with respect to [1pre]-[1k], [20pre]-[20f], [21]-[25], and Sections IV.B.1-5, the physiological measurement system resulting from the combined teachings of Mendelson-799, Ohsaki, Schulz, and Mendelson-2006 would have included a handheld computing device featuring a touch-screen display.  APPLE-1003, ¶¶[0061]-[0195], [0216]-[0259].

In more detail, Mendelson-2006 describes the wireless transmission of "vital physiological information" acquired and processed by a "body-worn pulse oximeter" to the HP iPAQ h4150 PDA, which is utilized "as a local terminal" with a "low-cost touch screen interface" featuring a "simple GUI" "configured to present…input and output information to the user" and to allow "easy activation of various functions."  APPLE-1010, 1-2, FIGS. 1-3; APPLE-1020, 3.  As shown below, a surface of the HP iPAQ h4150 positions the touch-screen display.  APPLE-1003, ¶[0261]; APPLE-1010, FIG. 3; APPLE-1020, 1.

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1010, FIG. 3 (left) and APPLE-1020, 1 (right).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [26].  APPLE-1003, ¶¶[0260]-[0262].

*Claim 27*

**[27] The physiological measurement system of claim 26, wherein the physiological parameter comprises at least one of: pulse rate, glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, carbon monoxide, or a state or trend of wellness of the user.**

As explained above with respect to [1pre]-[1k], [20pre]-[20f], [21]-[26], and

Sections IV.B.1-5, the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination

Exhibit H
Page 628

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

would have included a processor configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user.  APPLE-1003, ¶¶[0061]-[0195], [0216]-[0236]; APPLE-1012, Abstract, 7:61-8:12, 8:37-41, 9:23-10:37, FIGS. 7, 8; APPLE-1010, 1-4, FIG. 3.

Mendelson-799 discloses that the physiological parameters measured by sensor 10 and pulse oximeter 20 include oxygen saturation.  APPLE-1012, 10:16-37, 13:53-61; APPLE-1009, Abstract (describing a pulse wave sensor); APPLE-1010, 1 (describing measurement of oxygen saturation and heart rate).

Further, and as shown below, Mendelson-2006 discloses that the HP iPAQ h4150 PDA displays indicia responsive to measurements of physiological parameters that include $SpO_2$ and HR, the PDA having wirelessly received signals responsive to the user's SpO2 and HR from a body-worn pulse oximeter.  APPLE-1003, ¶[0265]; APPLE-1010, 2-3, FIG. 3.

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554



APPLE-1010, FIG. 3.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[27].  APPLE-1003, ¶¶[0263]-[0266].

### Claim 28

**[28] The physiological measurement system of claim 27, wherein the single protruding convex surface protrudes a height greater than 2 millimeters and less than 3 millimeters.**

As explained above with respect to [1pre]-[1k], [20pre]-[20f], [21]-[27], and

Sections IV.B.1-5, the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination

Exhibit H
Page 630

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

would have included a cover featuring a single protruding convex surface.  AP-PLE-1003, ¶¶[0061]-[0195], [0216]-[0266]; APPLE-1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

In more detail, and as shown below, the convex cover taught by Ohsaki is designed to be "in intimate contact with the surface of the user's skin," so as to prevent slippage of the detecting element from its position on the user's wrist.  AP-PLE-1009, ¶¶[0009]-[0010], FIG. 2.



APPLE-1009, FIG. 2 (annotated).

In incorporating Ohsaki's teachings, a POSITA would have found it obvious that a device designed to fit on a user's wrist would be on the order of millimeters. APPLE-1003, ¶[0269]; *see also* APPLE-1010, 2 (describing its "optical reflectance

transducer" as "small ($\varnothing = 22$mm)"); APPLE-1017, 2 (describing a "standard 24-pin (dimensions: 19 x 19 mm) microeletronic package" for its sensor).  Additionally, the POSITA would have taken the user's comfort into consideration—Ohsaki's convex cover, for example, is said to solve the problem of "the user feel[ing] uncomfortable" due to pressure from the device and belt on the user's limbs.  APPLE-1009, ¶[0006].

A POSITA would have found it obvious that in order to provide a comfortable cover featuring a protruding convex surface that prevents slippage, the surface should protrude a height greater than 2 millimeters and less than 3 millimeters.  APPLE-1003, ¶[0270].  Indeed, there would have been a finite range of possible protruding heights, and it would have been obvious to select a protruding height that would have been comfortable to the user.  *Id*.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [28].  APPLE-1003, ¶¶[0267]-[0271].

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

# V.   PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION

Consistent with Congressional intent and goals of *NHK/Fintiv*[3], Apple asks the Board alone to consider challenges raised in this Petition. *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11, 6 (PTAB 2020). As explained below, *Fintiv* favors institution.

## A.   Factor 1: Institution Will Increase Likelihood of Stay

Institution will enable the Board to resolve the issue of validity, and a finding of invalidity will relieve the Central District of California (the "District Court") of the need to continue with the companion litigation. Apple intends to move to stay the District Court case, and the opportunity for such simplification increases

---

[3] Unlike *NHK*, there is no basis for discretionary denial of this Petition under § 325(d), which would only be appropriate if the same or substantially the same art or arguments were previously presented to the Office. *Advanced Bionics LLC v. MED-EL Elektromedizinische Gerate GmbH*, IPR2019-01469 Pap. 6, 8-10 (PTAB Feb. 13, 2020)(precedential). The arguments advanced in this Petition are premised on combinations of references that were never presented to the Office in connection with the '554 Patent. Mendelson-799 does appear as one among hundreds of listed references, but there is no indication that it was considered by the examiner. *See, generally,* APPLE-1002.

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

the likelihood that the court will grant a stay in view of IPR institution. *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case No. 2:16-cv-642-JRG, 2-3 (E.D. Tex. 2017); *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 13-CV-1058, 2015 WL 1069111 (E.D. Tex. 2015).

### B.   Factor 2: District Court Schedule

Trial in the District Court case is scheduled for April 5, 2022.  APPLE-1031, 1.  Based on the 18-month IPR schedule, a Final Written Decision ("FWD") in an IPR arising from the present Petition would issue in early March of 2022, prior to the District Court trial date.

In addition, as in *NHK*, district court trial dates shift, even in normal times. *Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap. 22, 17 (PTAB 2019).  The District Court is one of the country's busiest patent courts.  Scheduling issues cannot be ruled out, as experts have professed that additional COVID-19 outbreaks are likely to arise and California is facing new outbreaks.  APPLE-1034, 1 ("Fauci says second wave of coronavirus is 'inevitable'"); APPLE-1035, 4 ("Los Angeles County is currently" at "275 [cases] per 100,000 [residents]," which is higher than the recommended level (100 per 100,000) for re-opening).

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

### C.    Factor 3: Apple's Investment in IPR Outweighs Forced Investment in Litigation to Date

District court proceedings are still at an early phase.  The parties have yet to file claim construction briefs, no claim construction orders have issued, and the *Markman* hearing is not scheduled until February 8, 2021.  APPLE-1031, 1.  In addition, discovery is not scheduled to close until July 5, 2021.  *Id*.

Apple's substantial investment in these IPR proceedings should counterbalance—if not outweigh—the resources invested in the co-pending litigation given the speed with which Apple is filing IPR petitions on over 150 claims across seven patents.  It would be unjust to consider resources expended in District Court (equally by both parties), without considering Apple resources expended to prepare nine IPR petitions that would be irretrievably lost without consideration on the merits, in addition to the extensive expenses that may be foregone through institution of Apple's petitions and that will otherwise certainly follow in co-pending litigation for which significant milestones exist.

### D.    Factor 4: The Petition Raises Unique Issues

Consistent with *Fintiv*, Apple asks the Board to consider the unique challenges raised in the Petition. Apple has voluntarily stipulated to counsel for Patent Owner that, if the Board institutes the present Petition, Apple will not assert that the Challenged Claims are invalid on the pending Petition's asserted grounds in

*Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.). AP-
PLE-1032, 1; *see*, *e.g.*, *Apple v. Seven* at 15-17 (finding that such a stipulation by a
petitioner "mitigates, at least to some degree, the concerns of duplicative efforts
between the district court and the Board, as well as concerns of potentially con-
flicting decisions").

In short, grounds in this Petition are unique, and will not be addressed in
District Court.  *See*, *e.g.*, *Apple v. Seven* at 15-20 (weighing this factor against ex-
ercising 314(a) discretion where a petitioner challenged several unasserted claims
and stipulated that it would not pursue the IPR grounds in the co-pending litiga-
tion).

### E.    Factor 5: The Petition Enables the Board to Resolve Invalidity of Claims that Might Otherwise be Reasserted

Apple's Petition is potentially helpful to future defendants.  For at least this
reason, Apple's status as both Petitioner and defendant is, at worst, a neutral factor.
Taking the relevant circumstances into account, institution would serve overall ef-
ficiency and integrity, enabling the Board to determine invalidity of claims that Pa-
tent Owner might otherwise later assert against others.

### F.    Factor 6: Other Circumstances Support Institution

As *Fintiv* noted, "the factors ... are part of a balanced assessment of all the
relevant circumstances in the case," and, "if the merits of a ground raised in the pe-
tition seem particularly strong … the institution of a trial may serve the interest of

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

overall system efficiency and integrity …." *Fintiv*, 14-15. As explained in the Petition (and Dr. Kenny's testimony), institution would result in invalidation of the Challenged Claims.

## VI. CONCLUSION

The cited prior art references disclose or render obvious the Challenged Claims of the '554 patent for the reasons noted hereinabove. APPLE-1003, ¶¶[0001]-[0273]. Accordingly, Apple respectfully requests institution of an IPR for the Challenged Claims.

## VII. PAYMENT OF FEES – 37 C.F.R. § 42.103

Apple authorizes the Patent and Trademark Office to charge Deposit Account No. 06-1050 for the fee set in 37 C.F.R. § 42.15(a) for this Petition and further authorizes payment for any additional fees to be charged to this Deposit Account.

Respectfully submitted,

Dated: September 2, 2020

 /W. Karl Renner/
W. Karl Renner, Reg. No. 41,265
Andrew B. Patrick, Reg. No. 63,471
Fish & Richardson P.C.
3200 RBC Plaza, 60 South Sixth Street
Minneapolis, MN 55402
T: 202-783-5554
F: 877-769-7945

(Control No. IPR2020-01538)         *Attorneys for Petitioner*

Exhibit H
Page 637

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

# CERTIFICATION UNDER 37 CFR § 42.24

Under the provisions of 37 CFR § 42.24(d), the undersigned hereby certifies that the word count for the foregoing Petition for *Inter partes* Review totals 13,962 words, which is less than the 14,000 allowed under 37 CFR § 42.24.


Dated: September 2, 2020              /W. Karl Renner/
_____
W. Karl Renner, Reg. No. 41,265
Andrew B. Patrick, Reg. No. 63,471
Fish & Richardson P.C.
3200 RBC Plaza, 60 South Sixth Street
Minneapolis, MN 55402
T: 202-783-5070
F: 877-769-7945

*Attorneys for Petitioner*

Attorney Docket No. 50095-0013IP1
IPR of U.S. Patent No. 10,588,554

# CERTIFICATE OF SERVICE

Pursuant to 37 CFR §§ 42.6(e)(4)(i) *et seq.* and 42.105(b), the undersigned

certifies that on September 2, 2020, a complete and entire copy of this Petition for

*Inter partes* Review and all supporting exhibits were provided via Federal Express,

to the Patent Owner by serving the correspondence address of record as follows:

KNOBBE, MARTENS, OLSON & BEAR, LLP
MASIMO CORPORATION (MASIMO)
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE CA 92614

/Diana Bradley/
Diana Bradley
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
(858) 678-5667

Exhibit H
Page 639

# Exhibit I

Exhibit I
Page 640

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent of:    Jeroen Poeze et al.

U.S. Patent No.:    10,588,554        Attorney Docket No.:  50095-0013IP2

Issue Date:    March 17, 2020

Appl. Serial No.:    16/544,713

Filing Date:    August 19, 2019

Title:    MULTI-STREAM DATA COLLECTION SYSTEM FOR NONINVASIVE MEASUREMENT OF BLOOD CONSTITU-ENTS

**Mail Stop Patent Board**

Patent Trial and Appeal Board

U.S. Patent and Trademark Office

P.O. Box 1450

Alexandria, VA 22313-1450

**<u>PETITION FOR *INTER PARTES* REVIEW OF UNITED STATES PATENT NO. 10,588,554 PURSUANT TO 35 U.S.C. §§ 311–319, 37 C.F.R. § 42</u>**

Exhibit I
Page 641

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

# TABLE OF CONTENTS

I.   MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1)..........................3
     A.   Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1)....................3
     B.   Related Matters Under 37 C.F.R. § 42.8(b)(2) ..........................3
     C.   Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3)....................4
     D.   Service Information ................................................4

II.  PETITIONER HAS STANDING TO REQUEST IPR....................................5

III. OVERVIEW OF THE '554 PATENT ..............................................5
     A.   Brief Description..................................................5
     B.   Level of Ordinary Skill in the Art................................10
     C.   Claim Construction ...............................................11

IV.  APPLICATION OF PRIOR ART TO THE '554 PATENT CLAIMS.........11
     A.   Asserted Grounds and References ..................................11
     B.   GROUND 1: Claims 1-7 and 20-28 are obvious over Aizawa, Inokawa,
          Ohsaki, and Mendelson-2006 ......................................13
          1.   Overview of Aizawa..........................................13
          2.   Overview of Inokawa ........................................16
          3.   Overview of Ohsaki..........................................19
          4.   Overview of Mendelson-2006..................................20
          5.   Combination of Aizawa, Inokawa, Ohsaki, and Mendelson-2006
               ...........................................................22
          6.   Manner in which Aizawa, Inokawa, Ohsaki, and Mendelson-2006
               render obvious Claims 1-7 and 20-28 ........................41
     C.   GROUND 2: Claims 8-19 are obvious over Aizawa, Inokawa, Ohsaki,
          Mendelson-2006, and Bergey .......................................87
          1.   Overview of Bergey .........................................87
          2.   Combination of Aizawa, Inokawa, Ohsaki, Mendelson-2006 and
               Bergey......................................................88
          3.   Manner in which Aizawa, Inokawa, Ohsaki, Mendelson-2006, and
               Bergey render obvious Claims 8-19...........................89

V.   PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION..........98
     A.   Factor 1: Institution Will Increase Likelihood of Stay ...........99
     B.   Factor 2: District Court Schedule ................................99
     C.   Factor 3: Apple's Investment in IPR Outweighs Forced Investment in
          Litigation to Date ..............................................100
     D.   Factor 4: The Petition Raises Unique Issues .....................101

i

Exhibit I
Page 642

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

E.   Factor 5: The Petition Enables the Board to Resolve Invalidity of Claims that Might Otherwise be Reasserted ........................................................102

F.   Factor 6: Other Circumstances Support Institution ..............................102

VI.   CONCLUSION.............................................................................................103

VII.   PAYMENT OF FEES – 37 C.F.R. § 42.103.................................................103

ii

Exhibit I
Page 643

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

# EXHIBITS

| | |
|---|---|
| APPLE-1001 | US Patent No. 10,588,554 |
| APPLE-1002 | File History for U.S. Patent No. 10,588,554 |
| APPLE-1003 | Declaration of Dr. Kenny |
| APPLE-1004 | Curriculum Vitae of Dr. Kenny |
| APPLE-1005 | *Masimo Corporation, et al. v. Apple Inc.*, Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.) |
| APPLE-1006 | US Pub. No. 2002/0188210 ("Aizawa") |
| APPLE-1007 | JP Pub. No. 2006/296564 ("Inokawa") |
| APPLE-1008 | Certified English Translation of Inokawa and Translator's Declaration |
| APPLE-1009 | US Pub. No. 2001/0056243 ("Ohsaki") |
| APPLE-1010 | "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Y. Mendelson, et al.; Proceedings of the 28th IEEE EMBS Annual International Conference, 2006; pp. 912-915 ("Mendelson-2006") |
| APPLE-1011 | RESERVED |
| APPLE-1012 | US Patent No. 6,801,799 ("Mendelson799") |
| APPLE-1013 | US Pub. No. 2004/0054291 ("Schulz") |
| APPLE-1014 | RESERVED |
| APPLE-1015 | RESERVED |
| APPLE-1016 | US Patent No. 3,789,601 ("Bergey") |

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

| | |
|---|---|
| APPLE-1017 | "Design and Evaluation of a New Reflectance Pulse Oxime-ter Sensor," Y. Mendelson, et al.; Worcester Polytechnic In-stitute, Biomedical Engineering Program, Worcester, MA 01609; As-sociation for the Advancement of Medical Instru-mentation, vol. 22, No. 4, 1988; pp. 167-173 ("Mendelson-1988") |
| APPLE-1018 | RESERVED |
| APPLE-1019 | Excerpts from Design of Pulse Oximeters, J.G. Webster; Insti-tution of Physics Publishing, 1997 ("Webster") |
| APPLE-1020 | QuickSpecs; HP iPAQ Pocket PC h4150 Series |
| APPLE-1021 | Excerpts from How to Do Everything with Windows Mobile, Frank McPherson; McGraw Hill, 2006 ("McPherson") |
| APPLE-1022 | Excerpts from Master Visually Windows Mobile 2003, Bill Landon, et al.; Wiley Publishing, Inc., 2004 ("Landon") |
| APPLE-1023 | RESERVED |
| APPLE-1024 | US Pub. No. 2008/0194932 ("Ayers") |
| APPLE-1025 | U.S. Patent No. 7,031,728 ("Beyer") |
| APPLE-1026 | US Pub. No. 2007/0145255 ("Nishikawa") |
| APPLE-1027 | National Instruments LabVIEW User Manual |
| APPLE-1028 to 1030 | RESERVED |
| APPLE-1031 | Scheduling Order, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 37 (April 17, 2020) |
| APPLE-1032 | Stipulation by Apple |
| APPLE-1033 | Telephonic Status Conference, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 78 (July 13, 2020) |

iv

Exhibit I
Page 645

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

APPLE-1034     Joseph Guzman, "Fauci says second wave of coronavirus is 'in-
               evitable'", TheHill.com (Apr. 29, 2020), available at:
               https://thehill.com/changing-america/resilience/natural-disas-
               ters/495211-fauci-says-second-wave-of-coronavirus-is

APPLE-1035     "Tracking the coronavirus in Los Angeles County,"
               LATimes.com (Aug. 20, 2020), available at
               https://www.latimes.com/projects/california-coronavirus-cases-
               tracking-outbreak/los-angeles-county/

APPLE-1036     Declaration of Jacob R. Munford

v

Exhibit I
Page 646

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

Apple Inc. ("Petitioner" or "Apple") petitions for *Inter Partes* Review

("IPR") of claims 1-28 ("the Challenged Claims") of U.S. Patent No. 10,588,554

("'554 patent").  As explained in this Petition, there exists a reasonable likelihood

that Apple will prevail with respect to at least one of the Challenged Claims.

The '554 Patent describes and claims a purported improvement to a "physio-

logical sensor device" included within a "physiological measurement system": a

cover with "a single protruding convex surface" that is configured to be located be-

tween "at least four" detectors and user tissue, and that is sufficiently rigid to cause

user tissue to conform to the surface when the sensor is worn.  APPLE-1001, 14:3-

10, 36:30-41, 44:50-45:21 (claim 1), FIGS. 1, 14D.  Each detector "can be imple-

mented using one or more photodiodes, phototransistors, or the like," "can capture

and measure light transmitted from [an] emitter … that has been attenuated or re-

flected from the tissue," and can "output a detector signal … responsive to the light

…." *Id.*, 14:3-10.  Placement of a cover with a protrusion over the detectors is said

to offer multiple benefits; the protrusion may, for example, "penetrate[] into the

tissue and reduce[] the path length of the light …." *Id.*, 14:3-10, 24:16-35, 10:61-

11:13.

But the claimed sensor was not new.  To the contrary, the '554 Patent was

granted without full consideration to the wide body of applicable prior art.  *See*

*generally* APPLE-1002.  And, as Dr. Thomas Kenny explains in his accompanying

1

Exhibit I
Page 647

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

declaration with respect to the prior art applied in this Petition, physiological sensor devices such as pulse rate detectors and pulse oximeters commonly included covers by the '554 Patent's earliest effective filing date, and a sensor including each feature of the sensor device of the Challenged Claims would have been obvious to a POSITA.  APPLE-1003, ¶¶[0001]-[0322]; APPLE-1001, 44:50-47:22.

For example, Aizawa (APPLE-1006) describes a pulse wave sensor featuring "four photodetectors" disposed around a central light source and a "holder" that secures the light source and photodetectors.  APPLE-1006, FIGS. 1(a), 1(b). And, similar to the '554 Patent, Ohsaki (APPLE-1009) describes an optical sensor that features a cover with a protruding convex surface that is placed "in intimate contact with the surface of the user's skin" when the sensor is worn.  APPLE-1009, Title, Abstract, ¶¶[0016], [0017], FIGS. 1, 2.  Ohsaki is not alone, as Inokawa (APPLE-1007, APPLE-1008) and other references likewise disclose covers with protruding convex surfaces for use in optical sensors. APPLE-1008, ¶¶14-15, FIGS. 2, 3.  And, as Dr. Kenny explains, a POSITA would have found it obvious to utilize such a cover in Aizawa's sensor.  APPLE-1003, ¶¶[0081]-[0110].

In addition to the "physiological sensor device" described above, the '554 Patent's claimed "physiological measurement system" includes "a handheld computing device in wireless communication with the physiological sensor device." *See*, *e.g.*, APPLE-1001, 45:4-22 (claim 1).

Exhibit I
Page 648

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

Yet, physiological sensor devices commonly communicated with handheld computing devices by the '554 Patent's earliest effective filing date.  Mendelson-2006, for example, describes a "wireless wearable pulse oximeter" system in which a body-worn pulse oximeter communicates wirelessly with a PDA.  APPLE-1010, Abstract, 1-4, FIGS. 1-3.  Moreover, and as Dr. Kenny explains, the claimed "handheld computing device" is a generic computing device, and each of its recited components are generic computing components.  APPLE-1003, ¶¶[0040]-[0059]; APPLE-1001, 2:45-48, 15:60-16:11, 18:9-28, FIGS. 1, 2D.

The Challenged Claims are unpatentable based on teachings set forth in at least the references presented in this Petition.  Apple respectfully submits that an IPR should be instituted, and that the Challenged Claims should be canceled as un-patentable.

## I.   MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1)

### A. Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1)

Apple Inc. is the real party-in-interest (RPI).

### B. Related Matters Under 37 C.F.R. § 42.8(b)(2)

Patent Owner filed a complaint on January 9, 2020 in the U.S. District Court for the Central District of California (CDCA) (Case No. 8:20-cv-00048) against Apple, alleging infringement by Apple of the '554 patent.  The complaint was served to Apple on January 13, 2020.

This Petition is being filed concurrently with another petition for IPR of the

Exhibit I
Page 649

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

'554 Patent (IPR2020-01538),[1] and with a petition for IPR of related U.S. Patent 10,292,628 (IPR2020-01521).  No other petitions for IPR of the '554 Patent have been filed.  On August 31, 2020, Apple filed petitions for IPR of related U.S. Patents 10,588,553 (IPR2020-01536 and IPR2020-01537) and 10,258,265 (IPR2020-01520).

### C. Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3)

Apple provides the following designation of counsel.

| LEAD COUNSEL | BACKUP COUNSEL |
|---|---|
| W. Karl Renner, Reg. No. 41,265<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email:  IPR50095-0013IP2@fr.com | Andrew B. Patrick, Reg. No. 63,471<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email: PTABInbound@fr.com |

### D. Service Information

Please address all correspondence and service to the address listed above.

Petitioner consents to electronic service by email at <u>IPR50095-0013IP2@fr.com</u>

---

[1] Pursuant to the Trial Practice Guide, both petitions for IPR of the '554 Patent are being filed with a paper providing a succinct explanation of the differences between the petitions, why the issues addressed by the differences are material, and why the Board should exercise its discretion to institute both petitions.

Exhibit I
Page 650

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

(referencing No. 50095-0013IP2 and cc'ing PTABInbound@fr.com, axf-ptab@fr.com and patrick@fr.com).

## II.     PETITIONER HAS STANDING TO REQUEST IPR

Apple certifies that the '554 patent is available for IPR.  This Petition is being filed within one year of service of a complaint against Apple in *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.).  Apple is not barred or estopped from requesting this review challenging the Challenged Claims on the below-identified grounds.

## III.    OVERVIEW OF THE '554 PATENT

### A. Brief Description

The system described by the '554 Patent includes, in one embodiment, "a noninvasive sensor and a patient monitor communicating with the noninvasive sensor."  APPLE-1001, 2:38-40.  The '554 Patent explains that "[t]he non-invasive sensor may include different architectures," adding that "an artisan will recognize that the non-invasive sensor may include or may be coupled to other components, such as a network interface, and the like."  *Id.*, 2:40-44.  The "patient monitor" with which the sensor communicates may "include a display device," and "a network interface communicating with any one or combination of a computer network, a handheld computing device, a mobile phone, the Internet, or the like."  *Id.*, 2:45-48.

Exhibit I
Page 651

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

In more detail, the '554 Patent's FIG. 1 (reproduced below) includes the exemplary physiological measurement system 100 that includes "a sensor 101 … that is coupled to a processing device or physiological monitor 109." *Id.*, 5:35-38, 11:47-49.



APPLE-1001, FIG. 1.

"In an embodiment, the sensor 101 and the monitor 109 are integrated together into a single unit." *Id.*, 11:49-51. "In another embodiment, the sensor 101 and the monitor 109 are separate from each other and communicate one with another in any suitable manner, such as via a wired or wireless connection." *Id.*, 11:51-57; *see also* 17:40-44; APPLE-1003, ¶[0046].

6

Exhibit I
Page 652

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

The '554 Patent's FIGS. 2A-2D (reproduced below) illustrate "example monitoring devices 200 in which the data collection system 100 can be housed." APPLE-1001, 5:39-42, 16:20-31.



APPLE-1001, FIGS. 2A-2D.

Each of the "monitoring devices 200" include a sensor 201 and a monitor 209. *Id.*, FIGS. 2A-2D, 16:20-18:28. From this and related description, a POSITA would have understood that the sensor and monitor described by the '554 Patent together act as components of a physiological sensor device, regardless of whether

Exhibit I
Page 653

they are integrated into a single unit, or are instead separated but configured to communicate with each other. APPLE-1003, ¶[0049]; APPLE-1001, 2:38-48, 11:49-57, 16:20-18:28, FIGS. 1, 2A-2D.

FIG. 2D illustrates a "monitoring device 200D [that] includes a finger clip sensor 201*d* connected to a monitor 209*d* via a cable 212," in addition to "an optional universal serial bus (USB) port 216 and an Ethernet port 218 [that] can be used, for example, to transfer information between the monitor 209*d* and a computer (not shown) via a cable." APPLE-1001, 18:9-28.

From this and related description, a POSITA would have understood that the sensor 201 and monitor 209 are components of a physiological sensor device, and that that device is part of a larger system including a computer with which the physiological sensor device communicates. APPLE-1003, ¶[0050]; APPLE-1001, 2:38-48, 11:49-57, 16:20-18:28, FIGS. 1, 2A-2D.

The sensor in the physiological sensor device "may include different architectures"; the '554 Patent describes several potential architectures with respect to FIGS. 14A-14I. APPLE-1001, 6:38-49, 35:36-38:20. For example, the '554 Patent's FIG. 14C (reproduced below) illustrates a sensor featuring a "detector submount 1400*c* … positioned under [a] protrusion 605*b* in a detector subassembly 1450 illustrated in FIG. 14D" (also reproduced below).

Exhibit I
Page 654

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554



**FIG. 14C**     **FIG. 14D**

APPLE-1001, FIGS. 14C, 14D.

As illustrated in FIG. 14D, a housing 1430 including "a transparent cover
1432, upon which the protrusion 605b is disposed" surrounds each of the detectors
1410*c*.  APPLE-1001, 36:30-41.  As illustrated in FIG. 14F (reproduced below),
the sensor may also include a "shielding enclosure 1490" featuring a window
1492*a* corresponding to each of "the detectors 1410*c*, which allows light to be
transmitted onto the detectors 1410*c*."  *Id.*, 37:9-17; *see also id.*, 23:61-63, FIGS.
4A-4C; APPLE-1003, ¶¶[0040]-[0059].

9

Exhibit I
Page 655

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554



**FIG. 14F**

APPLE-1001, FIG. 14F.

## B. Level of Ordinary Skill in the Art

A person of ordinary skill in the art relating to the subject matter of the '554 Patent as of July 3, 2008 ("POSITA") would have been a person with a working knowledge of physiological monitoring technologies.  The person would have had a Bachelor of Science degree in an academic discipline emphasizing the design of electrical, computer, or software technologies, in combination with training or at least one to two years of related work experience with capture and processing of data or information, including but not limited to physiological monitoring technologies.  APPLE-1003, ¶¶[0001]-[0018], [0020]-[0021].  Additional education in a

Exhibit I
Page 656

relevant field or industry experience may compensate for one of the other aspects of the POSITA characteristics stated above.   *Id.*

## C. Claim Construction

Petitioner submits that all claim terms should be construed according to the *Phillips* standard.   *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); 37 C.F.R. § 42.100.   Here, based on the evidence below and the prior art's description of the claimed elements being similar to that of the '554 patent specification, no formal claim constructions are necessary in this proceeding because "claim terms need only be construed to the extent necessary to resolve the controversy."   *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011); APPLE-1003, ¶[0022].

## IV.    APPLICATION OF PRIOR ART TO THE '554 PATENT CLAIMS

### A. Asserted Grounds and References

The Challenged Claims are invalid based on the ground noted in the table below, as further explained in this Petition.   Accompanying explanations and support are provided in the Declaration of Dr. Thomas Kenny (APPLE-1003).   *See* APPLE-1003, ¶¶[0001]-[0322].

Exhibit I
Page 657

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

| Ground | Claims | Basis for Rejection |
|--------|--------|---------------------|
| 1 | **1-7 and 20-28** | Obvious (§ 103) based on Aizawa in combination with Inokawa, Ohsaki, and Mendelson-2006 |
| 2 | **8-19** | Obvious (§ 103) based on Aizawa in combination with Inokawa, Ohsaki, Mendelson-2006, and Bergey |

Each applied reference pre-dates U.S. provisional application 61/078,207, filed on July 3, 2008, which is the earliest filed application from which the '554 patent claims priority.  Apple does not take a position as to whether the '554 patent is entitled to the priority date of July 3, 2008 (hereinafter "Critical Date" or "Earliest Effective Filing Date"), but has applied references that pre-date the Critical Date and qualify as prior art as shown in the table below.

| Reference | | Date | Section |
|-----------|---|------|---------|
| Aizawa | US 2002/0188210 | 12/12/2002 (published) | 102(b) |
| Inokawa | JP 2006/296564 | 11/02/2006 (published) | 102(b) |
| Ohsaki | US 2001/0056243 | 12/27/2001 (published) | 102(b) |
| Mendelson-2006 | (NPL) | 09/2006 (published) | 102(b) |
| Bergey | US 3,789,601 | 02/05/1974 (issued) | 102(b) |

Exhibit I
Page 658

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

## B. GROUND 1: Claims 1-7 and 20-28 are obvious over Aizawa, Inokawa, Ohsaki, and Mendelson-2006

### 1. Overview of Aizawa

Aizawa discloses a "pulse wave sensor…detecting light output from a light emitting diode and reflected from the artery of a wrist of a subject."  APPLE-1006, Abstract.  Aizawa's sensor includes "four photodetectors disposed around the light emitting diode" and a "holder" that secures the light emitting diode (LED) and photodetectors.  *Id.*, ¶[0023]; FIGS. 1(a), 1(b).

The sensor can be worn by a subject with the LED facing toward the subject's wrist, and fastened using a belt.  *Id.*, ¶[0026].  In operation, the LED irradiates an artery of the wrist "with light having a wavelength of an infrared range," and the optical sensor non-invasively detects "the pulse wave…from light reflected from a red corpuscle in the artery."  APPLE-1006, ¶¶[0002], [0008]-[0018]; APPLE-1003, ¶¶[0055]-[0060].

In more detail, and as shown in Aizawa's FIGS. 1(a) and 1(b), Aizawa's "pulse wave detector" includes an optical sensor featuring "an **LED** 21," **four photodetectors** 22 disposed symmetrically on a circle concentric to the LED 21, and "a **holder** 23 for storing the above light emitting diode 21 and the photodetectors

Exhibit I
Page 659

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

22."[2]  APPLE-1006, ¶[0023].





APPLE-1006, FIGS. 1(a) (top, annotated), 1(b) (bottom, annotated)

As illustrated, Aizawa's pulse rate detector also includes "a **drive detection**

---

[2] Throughout this Petition, bolding in quotations is added for emphasis, unless otherwise indicated.

Exhibit I
Page 660

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

**circuit** 24 for detecting a pulse wave by amplifying the outputs of the photodetectors 22," "an **arithmetic circuit** [3] for computing a pulse rate from the detected pulse wave data," and "a **transmitter** [4] for transmitting the above pulse rate data to an unshown **display**." APPLE-1006, ¶[0023].

Aizawa's pulse wave sensor transmits its data to an "unshown display," and can be "coupled to devices making use of bio signals" and/or a device that performs computations. *Id.*, ¶¶[0023], [0028], [0035].

To improve adhesion between the sensor and the subject's wrist, Aizawa's sensor also includes an acrylic transparent plate positioned between the photodetectors and the wrist. APPLE-1006, ¶[0034]. For example, Aizawa's FIG. 1(b) shows the plate in contact with the user's wrist. *Id.*, FIG. 1(b); APPLE-1003, ¶¶[0061]-[0063].



APPLE-1006, FIG. 1(b) (annotated)

Exhibit I
Page 661

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

### 2. Overview of Inokawa

Inokawa discloses a wearable optical sensing system that gathers "various kinds of vital sign information." APPLE-1008, ¶[0001]. Inokawa's system includes a sensor and a base device. *Id*., ¶¶[0055]-[0066]. The sensor includes a "pair of light-emitting elements," the reflected light of which is used to "sense the pulse" of the subject by detecting hemoglobin change in the capillary artery and to sense "body motion.," A photodiode receives the light from the light-emitting elements that is reflected. *Id*., ¶¶[0058]-[0059]; FIG. 2. A convex lens (highlighted in light blue) is placed between the photodiode and the subject's skin. *Id*. The lens is sufficiently rigid to make the tissue conform to the convex surface of the lens.



APPLE-1008, FIG. 2 (annotated)

16

Exhibit I
Page 662

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

The base device is "a charger with communication functionality that is used when the pulse sensor…is mounted." *Id.*, ¶(0060); FIG. 3.  When the sensor is mounted onto the base device, "vital sign information…such as pulse and body motion, is transmitted to the base device…using the…infrared LED." *Id.*, ¶(0076); APPLE-1003, ¶[0065].



APPLE-1008, FIG. 3

Exhibit I
Page 663

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

With reference to FIG. 19 below, Inokawa teaches that two LEDs, instead of one, improve data transmission accuracy.  APPLE-1003, ¶[0065].  In particular, Inokawa describes that "the presence of two pairs of light-emitting and light-receiving elements makes it possible to efficiently transmit information," including increasing the "**accuracy of data**…by transmitting and receiving a **checksum signal** using, for example, the S-side green LED 165 and the other B-side PD 157."  APPLE-1008, ¶¶[0111], [0044], [0048]; APPLE-1003, ¶¶[0064]-[0065].

(FIG. 19)



APPLE-1008, FIG. 19 (annotated)

Exhibit I
Page 664

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

### 3. Overview of Ohsaki

As illustrated in Ohsaki's FIG. 2 (reproduced below), Ohsaki discloses a wrist-worn "pulse wave sensor" (APPLE-1009, ¶[0016]) featuring a "light emitting element" and a "light receiving element." *Id.*, ¶[0017].  Ohsaki's sensor addresses problems such as user discomfort and sensor movement by using a "translucent board" with a convex surface that is "in intimate contact with the surface of the user's skin" to prevent slippage. *Id.*, ¶¶[0009]-[0010].  Because the intensity of the light received by the detecting element "largely varies depending on the shift amount," or amount of movement of the detecting element, Ohsaki's convex surface reduces the "variation of the amount of reflected light which is emitted" from the LED and reaches the detecting element after reflection from the user's skin. *Id.*, ¶[0025], FIG. 2; APPLE-1003, ¶[0066].

Exhibit I
Page 665

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

# FIG. 2



APPLE-1009, FIG. 2

## 4.  Overview of Mendelson-2006

Mendelson-2006 discloses a "wireless wearable pulse oximeter" system that is used to monitor a subject's physiological signals such as $SpO_2$ and heart rate. APPLE-1010, Abstract, 1.  Mendelson-2006 explains that by wirelessly transmitting the collected data, the condition of a subject can be determined "remotely" without requiring the healthcare provider to be physically present.  *Id*.

20

Exhibit I
Page 666

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

Mendelson-2006's system includes a sensor module, a receiver module, and a PDA.  *Id.*, 2.  As shown in Mendelson-2006's FIGS. 1 and 2, the sensor module includes an "optical reflectance transducer" having two LEDs and a photodiode that "processes the [photoplethysmographic (PPG)] signals" and transmits signals wirelessly to the PDA through the receiver module.  *Id.*; FIGS. 1 and 2.




Fig. 1.  (Top) Attachment of Sensor Module to the skin; (Bottom) photograph of the Receiver Module (left) and Sensor Module (right).

Fig. 2. System block diagram of the wearable, wireless, pulse oximeter. Sensor Module (top), Receiver Module (bottom).

APPLE-1010, FIG. 1 (left) and FIG. 2 (right)

The PDA is a handheld device that provides a "touch screen" interface and a simple graphical user interface (GUI) "configured to present the input and output information to the user and allow[ for] easy activation of various functions."  AP-PLE-1010, FIG. 3; *see also* APPLE-1021, Cover, xvii-xviii, 10-12, 17, 63, 363; APPLE-1022, 4-11, 30-31; APPLE-1036, APPLE-1003, ¶¶[0067]-[0069].

21

Exhibit I
Page 667



Fig. 3.  Sample PDA Graphical User Interface (GUI).

APPLE-1010, FIG. 3

## 5.  Combination of Aizawa, Inokawa, Ohsaki, and Mendel-son-2006

*Plurality of emitters*

As described in Section IV.B.1, Aizawa discloses a pulse wave sensor in which multiple detectors are disposed around a centrally located LED/emitter. APPLE-1006, ¶[0023].  Aizawa explains that "[t]he arrangement of the light emitting diode 21 and the photodetectors 22 is not limited" to that shown or described in connection with any particular embodiment.  APPLE-1006, ¶[0032]. In particular, Aizawa describes arrangements in which multiple light emitting diodes 21 are employed.  *Id.*, ¶¶[0032]-[0033].

A POSITA would have combined the teachings of Aizawa and Inokawa

Exhibit I
Page 668

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

such that Aizawa's pulse wave sensor would have been modified to include an additional LED as taught by Inokawa to improve the detected pulse wave by distinguishing between blood flow detection and body movement.  APPLE-1008, ¶(0059) (describing the use of the "S-side green LED 21…to sense the pulse from the light reflected off of the body (e.g., change in the amount of hemoglobin in the capillary artery), while the S-side infrared LED 23 serves to sense body motion from the change in this reflected light"); APPLE-1006, ¶[0006] (recognizing the problem of weak signals from a wearable sensor because the sensor "detects the motion of a red corpuscle…and is easily affected by noise caused by the shaking of the body of the subject), ¶[0028] (describing a device for "computing the amount of motion load" such that the motion can be compensated for); APPLE-1003, ¶¶[0061]-[0063], [0071]-[0072].

A POSITA would also have looked to Inokawa's disclosure of two LEDs emitting light of different wavelengths, in part, because it provides additional functionality, including that of a wireless communication method.  *Id*.  Inokawa's base device 17 receives, for example, "pulse and body motion" data through "the S-side infrared LED 23 of the pulse sensor 1 and the B-side PD 45 of the base device 17."  APPLE-1008, ¶[0076].  The LEDs eliminate the need for "a special wireless communication circuit or a communication cable as previously" and allows "vital sign information to the base device 17 accurately,

Exhibit I
Page 669

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

easily, and without malfunction." *Id.*, ¶[0077]. In other words, the LEDs provided on the sensor can be used not only to detect pulse rate but also to "accurately, easily, and without malfunction" transmit the sensed data to a base station. APPLE-1003, ¶[0073].

Intrinsic and extrinsic records confirm that a POSITA would have naturally looked to another wearable physiological sensor, as disclosed in Inokawa, for transmission details. APPLE-1003, ¶[0074]. Aizawa discloses uploading data to a base device but is silent about how such transmission would be implemented. APPLE-1006, ¶¶[0023], [0028]; APPLE-1003, ¶[0074]. A POSITA would have recognized that Aizawa's LED could have been used for wireless data communication with a personal computer to eliminate problems associated with a physical cable, and, as taught by Inokawa, without requiring a separate RF circuit. APPLE-1003, ¶[0074]. A POSITA would have further recognized that using two LEDs to perform such communication would result in enhanced accuracy of the transmitted information. *Id.*

To obtain the advantages described by Inokawa (e.g., to improve the detected pulse wave by enabling the sensor to distinguish between blood flow detection and body movement, in addition to enabling wireless communication between the sensor and a base station), a POSITA would have been motivated to modify Aizawa's pulse wave sensor to include an additional LED. APPLE-

Exhibit I
Page 670

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

1003, ¶[0075]; APPLE-1008, ¶¶[0058]-[0059]; APPLE-1008, ¶¶[0006], [0028].

As illustrated below, the Aizawa-Inokawa sensor would have featured

two LEDs in place of Aizawa's LED 21.  APPLE-1003, ¶[0076].







APPLE-1006, FIGS. 1(a) (top, annotated) and 1(b) (bottom, annotated)

25

Exhibit I
Page 671

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

Aizawa-Inokawa would have utilized two LEDs that emit two different wavelengths.  APPLE-1003, ¶[0077].  Aizawa's LED 21 would have been replaced with two LEDs.  In this manner, Aizawa's sensor is improved by using a separate LED to account for motion load that the system already records and accounts for.  APPLE-1006, ¶¶[0006], [0028], [0035].

A POSITA would have combined the teachings of Aizawa and Inokawa as doing so would have amounted to nothing more than the use of a known technique to improve similar devices in the same way and combining prior art elements according to known methods to yield predictable results.  *KSR v. Teleflex*, 550 U.S. 398, 417 (2007); APPLE-1003, ¶[0078].  Here, the Aizawa-Inokawa combination improves Aizawa's pulse wave sensor as described above to detect and record body motion in addition to blood flow.  APPLE-1003, ¶[0078].  The elements of the Aizawa-Inokawa system would each perform similar functions they had been known to perform prior to the combination.  *Id*.  For instance, in Aizawa-Inokawa, Aizawa's photodetectors would still detect light emitted by the LEDs and reflected by the subject's wrist, and two LEDs would still be used to emit light at different wavelengths.  *Id*.

Although Inokawa shows its two emitters emitting light toward a centrally located detector, a POSITA would have recognized that the same effect

26

Exhibit I
Page 672

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

can be achieved by having the emitters located centrally instead and emitting radially outward.  Indeed, Aizawa itself recognizes this reversibility, stating that while the configurations depicted include a central emitter surrounded by detectors, the "same effect can be obtained when…a plurality of light emitting diodes 21 are disposed around the photodetector 22."  APPLE-1006, ¶[0033]; APPLE-1003, ¶¶[0071]-[0079].

### *Transmission of information*

When Inokawa's sensor is mounted onto the base station, "vital sign information…such as pulse and body motion, is transmitted to the base device…using the…infrared LED."  APPLE-1008, ¶[0076]. The "base device 17 is connected to a PC 59, and information transmitted from the pulse sensor 1 is downloaded to the PC 59 via the base device 17."  *Id.*; *see also id., ¶¶*[0074] ("in transmission mode, **data stored in the memory 63, such as pulse, is transmitted to the base device 17**. In short, data is downloaded"), [0075]("when the pulse sensor 1 is mounted onto the base device 17, information about pulse, etc. is automatically transmitted from the pulse sensor 1 to the base device 17.  **The base device 17, meanwhile, upon receiving the information transmitted from the pulse sensor 1, transmits this information to the PC 59**"), [0077], [0002], [0003], [0067].

27

Exhibit I
Page 673

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554



APPLE-1008, FIG. 3

A POSITA would have also found it obvious to implement the physiolog-
ical sensor device resulting from the combined teachings of Aizawa, Inokawa,
and Ohsaki as part of a physiological measurement system including a handheld
computing device, and to enable the physiological sensor device to communi-
cate wirelessly with the handheld computing device.  APPLE-1003, ¶¶[0080]-
[0083]; APPLE-1006, Abstract, [0002], [0005], [0008]-[0016], [0023]-[0024],
[0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1008, ¶¶[0002],

28

Exhibit I
Page 674

[0003], [0067], [0074]-[0077]; APPLE-1010, 1-4, FIG. 3.

Indeed, by the '554 patent's 2008 earliest effective filing date, physiological monitoring devices commonly employed touch-screen displays. APPLE-1003, ¶[0084]. For example, Mendelson-2006 describes a "body-worn" pulse oximetry system that includes a sensor module, a receiver module, and a PDA. APPLE-1010, 3. Mendelson-2006's system includes a sensor module that transmits signals wirelessly to a PDA through a receiver module. *Id.*, 913, FIGS. 1-3; *see supra* Section IV.B.4. The PDA provides a low-cost touch screen interface. *Id.*, 3-4; *see also* APPLE-1020, 1-4. In more detail, and as shown in Mendelson-2006's FIG. 3 (reproduced below), the PDA's "simple GUI" is "configured to present … input and output information to the user" and to allow "easy activation of various functions." *Id.*, 4.

A POSITA would have been motivated to look to other physiological sensor systems, such as Mendelson-2006, for details regarding data transmission and display of the data collected using the Aizawa-Inokawa-Ohsaki sensor. APPLE-1003, ¶¶[0085]-[0087].

For example, as explained above in Section IV.B.4, Mendelson-2006's optical reflectance transducer measures PPG signals, and Mendelson-2006's receiver module includes an embedded microcontroller. "Signals acquired by the Sensor

Exhibit I
Page 675

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

Module are received by the embedded microcontroller which then computes the arterial oxygen saturation (SpO$_2$) and heart rate based on the relative amplitude and frequency content of the reflected PPG signals.  APPLE-1010, 1-2.



APPLE-1010, FIG. 2 (annotated)

"[I]nformation acquired by the Sensor Module is transmitted wirelessly via an RF link over a short range to a body-worn Receiver Module," and data processed by the receiver module is "transmitted wirelessly to a PDA."  *Id.*, 2, FIG. 2. Mendelson-2006's system uses "the HP iPAQ h4150 PDA because it can support both 802.11b and Bluetooth$^{TM}$ wireless communication."  *Id.*, 3.  The PDA is used "as a local terminal," and it "also provides a low-cost touch screen interface."  *Id.*; *see also* APPLE-1020, 1-4 (depicting and describing the HP iPAQ h4150 Pocket

30

Exhibit I
Page 676

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

PC PDA utilized in Mendelson-2006's system); APPLE-1021, Cover, xvii-xviii, 10-12, 63, 73-101, 363; APPLE-1022, 4-11, 30-31, 284-297.

Wireless communication with the handheld PDA is, moreover, said to enable transfer of information pertaining to physiological and wellness parameters such as "$SpO_2$, HR, body acceleration, and posture information" to the PDA; and, when the PDA is "carried by medics or first responders," this information is said to enhance their ability "to extend more effective medical care, thereby saving the lives of critically injured persons." APPLE-1010, 1-2.



APPLE-1010, FIG. 3 (left) and APPLE-1020, 1 (right)

To obtain these and other advantages described by Mendelson-2006, a POSITA would have been motivated to implement Aizawa's pulse wave sensor as

31

Exhibit I
Page 677

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

part of a physiological measurement system including a handheld computing device, and to enable a physiological sensor device including sensor 1 to communicate wirelessly with the handheld computing device.  APPLE-1003, ¶¶[0088]-[0091].  APPLE-1006, Abstract ("a pulse wave sensor for detecting a pulse wave by detecting light output from a light emitting diode and reflected from the artery of a wrist of a subject "), ¶¶[0002], [0005], [0008]-[0016], [0023] (describing transmitting "pulse rate data to an unshown display"), [0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1010, 1-4, FIG. 3; *see also* APPLE-1020, 1-4.

Indeed, by the Critical Date, physiological monitoring devices commonly included touch-screen displays configured to provide user interfaces.  APPLE-1003, ¶[0092]; APPLE-1009, 1-4, FIG. 3; APPLE-1024, Abstract, ¶¶[0026], [0044], FIGS. 1-6.  A POSITA would have recognized that applying Mendelson-2006's teachings to the Aizawa-Inokawa-Ohsaki sensor would have led to predictable results without altering or hindering the functions performed by the sensor.  APPLE-1003, ¶[0092].  In fact, a POSITA would have been motivated to implement the well-known technique of connecting a physiological sensor to a handheld device to cause Aizawa-Inokawa-Ohsaki's sensor to include such features to achieve the predictable benefits offered by Mendelson-2006's description of the same.  *Id.*  For example, POSITA would have incorporated Mendelson-2006's disclosure of a

32

Exhibit I
Page 678

PDA with a touch-screen display and "simple GUI" to present "information to the user" and provide "easy activation of various functions." APPLE-1010, 4. Indeed, a POSITA would have had a reasonable expectation of success in making this modification, and would have reasonably expected to reap benefits of displaying a measured waveform representative of a patient's pulse. *Id.*, APPLE-1003, ¶[0092].

For at least these reasons, a POSITA would have found it obvious to implement Aizawa's unshown display as a PDA featuring a touch-screen display and/or mobile phone functionality[3] using either or both of 802.11b and Bluetooth™. APPLE-1006, ¶[0015], [0023], [0028], [0035]; *see also* APPLE-1020, 1-4; APPLE-1009, ¶[0020]; APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-4; APPLE-1003, ¶¶[0080]-[0093]; *see also* APPLE-1021, xvii-xviii, 10-12, 17, 63, 73-101, 176, 190-193,

---

[3] Mendelson-2006 does not explicitly disclose its PDA to be a mobile phone. APPLE-1003, ¶[0093]. Yet it was well known before the Critical Date that a PDA device was often paired with cellular communication technology to provide a combined PDA/phone device that acts a mobile phone. *Id.*; APPLE-1025, Title ("Cellular Phone/PDA Communication System"), Abstract, 1:6-15, 7:6-10:11 (describing "a small handheld cellular phone/PDA communications system" featuring "an LCD display 16 that is also a touch screen system"), FIGS. 1-3.

Exhibit I
Page 679

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

363; APPLE-1022, 4-11, 30-31, 56-67, 72-92.

*Convex surface*

Additionally, a POSITA would have combined the teachings of Aizawa-Inokawa with the teachings of Ohsaki such that the cover of Aizawa-Inokawa's wrist-worn sensor would include a convex surface, improving adhesion between a subject's wrist and a surface of the sensor.  APPLE-1009, ¶[0025] (the convex surface prevents slippage of the detecting element from its position on the subject's wrist, and the convex nature of the surface suppresses the "variation of the amount of the reflected light" that reaches the detecting element); APPLE-1003, ¶[0094].

In more detail, Ohsaki describes a "detecting element" that includes "a package 5, a light emitting element 6 (e.g., LED), a light receiving element 7 (e.g., PD), and a translucent board 8."  APPLE-1009, ¶[0017].  "The package 5 has an opening and includes a" substrate in the form of "circuit board 9," on which light emitting element 6 and light receiving element 7 are arranged.  *Id*.; APPLE-1003, ¶[0095].  As shown in Ohsaki's FIG. 2, translucent board 8 is arranged such that, when the sensor is worn "on the user's wrist … the convex surface of the translucent board … is in intimate contact with the surface of the user's skin"; this contact between the convex surface and the user's skin is said to prevent slippage, which increases the strength of the signals obtainable by Ohsaki's sensor.  APPLE-1009,

Exhibit I
Page 680

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.



APPLE-1009, FIG. 2 (annotated)

Ohsaki explains that "if the translucent board 8 has a flat surface, the detected pulse wave is adversely affected by the movement of the user's wrist as shown in FIG. 4B," but that if "the translucent board 8 has a convex surface…variation of the amount of the reflected light…that reaches the light receiving element 7 is suppressed." APPLE-1009, ¶[0025]. The convex surface is also said to prevent "disturbance light from the outside" from penetrating translucent board 8. *Id.*

35

Exhibit I
Page 681

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

Thus, when a convex cover is used, "the pulse wave can be detected without being affected by the movement of the user's wrist 4 as shown in FIG. 4A." *Id.*



APPLE-1009, FIGS. 4A, 4B

As shown below, the POSITA would have found it obvious to modify the sensor's flat cover (left) to include a lens/protrusion (right), similar to Ohsaki's translucent board 8, so as to improve adhesion between the user's wrist and the sensor's surface, improve detection efficiency, and protect the elements within the

36

Exhibit I
Page 682

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

sensor housing.  APPLE-1009, ¶[0025] (explaining that the convex surface of translucent board 8 prevents slippage of a detecting element from its position on the wrist, and suppresses the "variation of the amount of the reflected light" that reaches the detecting element); APPLE-1024, ¶¶[0033], [0035], FIG. 6 (depicting an LED featuring a convex lens); APPLE-1003, ¶¶[0094]-[0097].



APPLE-1006, FIG. 1(b) (annotated)

A POSITA would have combined the teachings of Aizawa-Inokawa and Ohsaki as doing so would have amounted to nothing more than the use of a known technique to improve similar devices in the same way.  APPLE-1003, ¶[0098].  A POSITA would have recognized that incorporating Ohsaki's convex surface is simply improving Aizawa-Inokawa's transparent plate 6 that has a flat surface to improve adhesion to a subject's skin and reduce variation in the signals detected by the sensor.  *Id.*  Furthermore, the elements of the combined system would each perform similar functions they had been known to perform prior

Exhibit I
Page 683

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

to the combination—Aizawa-Inokawa's transparent plate 6 would remain in the same position, performing the same function, but with a convex surface as taught by Ohsaki. *Id.*, ¶¶[0094]-[0099].

## *Substrate*

A POSITA would have found it obvious that Aizawa's photodetectors are arranged on a substrate. APPLE-1003, ¶[0100]. For example, a POSITA would have understood that Aizawa's photodetectors are secured to the sensor device, provided with power by a power source (also not shown), and can transmit signals to other portions of the sensors through such a structure. *Id.* A POSITA would have understood that the substrate provides physical support and electrical connectivity and is connected to the holder 23. *Id.* Indeed, a POSITA would have found it obvious to use such a substrate because it provides a simpler manufacturing process and more compact design than using and routing wires would allow. *Id.* As shown in FIG. 1(b), Aizawa illustrates a substrate, but does not label or describe such a structure. *Id.*

Exhibit I
Page 684

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554



APPLE-1006, FIG. 1(b) (annotated)

To the extent that the surface of holder 23 does not explicitly disclose a substrate, a POSITA would have been motivated to modify Aizawa to incorporate a substrate, such as Ohsaki's circuit board 9 to secure photodetectors 22 and enable photodetectors 22 to send signals to other portions of the sensor.  APPLE-1003, ¶[0101].

Exhibit I
Page 685

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

# FIG. 2



APPLE-1009, FIG. 2 (annotated)

A POSITA would have been motivated to modify Aizawa to incorporate
Ohsaki's circuit board 9 to enable photodetectors 22 to send signals to other por-
tions of the sensor.  APPLE-1003, ¶¶[0100]-[0102]; APPLE-1006, Abstract,
¶¶[0002], [0005], [0008]-[0016], [0023], [0027]-[0029], [0032]-[0033], FIGS. 1, 2,
3, 4(a); APPLE-1009, ¶[0017], FIG. 2.

Exhibit I
Page 686

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

### 6. Manner in which Aizawa, Inokawa, Ohsaki, and Mendelson-2006 render obvious Claims 1-7 and 20-28

*Claim 1*

**[1pre] A physiological measurement system comprising**

To the extent the preamble is limiting, Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1pre].  APPLE-1003, ¶¶[0061]-[0069], [0071]-[0107].  For example, Aizawa discloses a pulse sensor designed to detect "the pulse wave of a subject from light reflected from a red corpuscle in the artery of a wrist of the subject by irradiating the artery of the wrist."  APPLE-1006, ¶[0002].



APPLE-1006, FIG. 2

**[1a] a physiological sensor device comprising:**

As discussed in Sections IV.B.1-IV.B.5, Aizawa discloses a pulse rate detector 1 that includes an optical sensor featuring "an **LED** 21 [ ] for emitting light

41

Exhibit I
Page 687

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

having a wavelength of a near infrared range, **four phototransistors** 22 [ ] disposed around the light emitting diode 21 symmetrically on a circle concentric to the light emitting diode 21, a **holder** 23 for storing the above light emitting diode 21 and the photodetectors 22," and "an **acrylic transparent plate** [6] mounted to the detection face 23*a* of the holder 23 …."  APPLE-1006, ¶[0023].  Aizawa's sensor also includes "a transmitter [4] for transmitting the above pulse rate data to an unshown display." *Id.*





APPLE-1006, FIGS. 1(a), 1(b) (annotated).

42

Exhibit I
Page 688

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

Accordingly, [1a] would have been obvious over Aizawa in view of In-okawa, Ohsaki, and Mendelson-2006[4].  APPLE-1003, ¶¶[0108]-[0109]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], FIGS. 1(a), 1(b), 2.

***[1b] a plurality of emitters configured to emit light into tissue of a user;***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1b]. APPLE-1003, ¶¶[0061]-[0069], [0071]-[0102], [0110]-[0129].  As explained above in Section IV.B.5, Inokawa discloses using two emitters operating at different wave-lengths, and a POSITA would have found it obvious for multiple reasons to incor-porate the LEDs of Inokawa into Aizawa, as illustrated below.

---

[4] *See infra* [1h].  A POSITA would have been motivated to add Inokawa's base station to Aizawa's physiological sensor device such that the sensor device includes a sensor and a base station with which the sensor communicates and through which the sensor communicates with a handheld device.  *See also* APPLE-1021, Cover, xvii-xviii, 10-12, 63, 73-101, 363; APPLE-1022, 4-11, 30-31, 284-297.

Exhibit I
Page 689

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554







APPLE-1006, FIGS. 1a (top, annotated) and 1b (bottom, annotated)

As explained in Section IV.B.5, using two LEDs to emit light into the user's

tissue at different wavelengths have been obvious to, for instance, (i) ac-

44

Exhibit I
Page 690

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

quire body motion information for improved pulse detection and/or (ii) more reliably transmit information from the sensor to a base device with less error.  APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027], [0033]; APPLE-1008, ¶¶[0014], [0040], [0058]-[0059], FIGS. 2, 3, 19.

**_[1c] at least four detectors, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector;_**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1c].  APPLE-1003, ¶¶[0130]-[0143]; APPLE-1006, ¶¶[0012], [0023], [0024],  FIGS. 1(a), 1(b); APPLE-1013, ¶[0073], FIGS. 19A-19C; APPLE-1019, 79, 86, 94.  For example, Aizawa discloses that its sensor "**detect[s] light** output from a light emitting diode and **reflected from the artery of a wrist** of a subject."  APPLE-1006, ¶[0009].  In particular, the light is "reflected by a red corpuscle running through the artery 11 of the wrist 10" and detected by photodetectors 22 as a pulse wave.  _Id._, ¶[0027].  "[T]he waveform of a pulse wave" detected by Aizawa's photodetectors 22 can be displayed as represented by FIG. 3.  _Id._, ¶¶[0028]-[0029].

Exhibit I
Page 691





APPLE-1006, FIG. 3.

The photodetectors 22 are "disposed at an **equal distance** from the light emitting diode."  APPLE-1006, ¶¶[0011], [0027].



APPLE-1006, FIG. 1(a) (annotated)

46

Exhibit I
Page 692

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554



APPLE-1006, FIG. 1(b) (annotated)



APPLE-1006, FIG. 2 (annotated)

Exhibit I
Page 693

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

# F I G . 4 (a)



APPLE-1006, 4(a) (annotated)

Aizawa's LED 21 and the photodetectors 22 are "**stored in cavities** 23b and 23c **formed in the detection face** 23*a*" of holder 23 such that "the light emitting face 21s of the light emitting diode 21 and the light receiving faces 22s of the photodetectors 22 are set back from the above detection face 23*a*." *Id*., ¶¶[0023]-[0024].

48

Exhibit I
Page 694

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554



**F I G . 1 (a)**





**F I G . 1 (b)**

APPLE-1006, FIG. 1 (annotated).

From this and related description, a POSITA would have understood Ai-
zawa's holder 23 to function as a guide for light from the light emitting diode 21
and to the photodetectors 22.  APPLE-1003, ¶¶[0130]-[0136].  In other words, the
"sectional forms of the above cavities 23b and 23c" function as the "light emitting

Exhibit I
Page 695

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

area of the light emitting diode 21 and the light receiving areas of the photodetectors 22" respectively and the openings of these cavities are "tapered such that their widths increase toward the contact face" in order to "expand" the light emitting and light receiving areas.  APPLE-1006, ¶[0024].

Additionally, a POSITA would have understood that Aizawa's holder 23, which circumscribes the photodetectors, is opaque, and any surface of holder 23, including the detection face 23a of holder 23 would be an opaque layer.  APPLE-1003, ¶[0137].  A POSITA would have thus found it obvious that Aizawa's holder 23 discloses, or at least suggests, an opaque layer.  *Id*.

The '554 patent itself describes that such an opaque layer can be integral to the sensor's contact area.  APPLE-1001, 19:28-48 (describing that the "contact area 370 of the protrusion 305 can include openings or windows 320, 321, 322, and 323" and "the windows 320, 321, 322, and 323 mirror specific detector placements layouts such that light can impinge through the protrusion 305 onto the photodetectors.")  A POSITA would have understood that Aizawa's cavities 23b and 23c are openings or windows that mirror specific detector placement layouts "such that light can impinge…onto the photodetectors" that are formed in the contact face of holder 23.  APPLE-1003, ¶[0138].

Indeed, by the '554 patent's 2008 earliest effective filing date, optical sensors commonly employed opaque layers with windows corresponding to detectors.

Exhibit I
Page 696

APPLE-1003, ¶[0139]; *see*, *e.g.*, APPLE-1013, ¶[0073] (describing a pulse oxime-try sensor featuring "a thin sheet of opaque material" placed inside the sensor's housing, with "a window in the opaque material provid[ing] an aperture for trans-mission of optical energy to or from the tissue site"), FIGS. 19A-19C; APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b).

Thus, a POSITA would have understood that the Aizawa-Inokawa-Ohsaki-Mendelson-2006 holder is an opaque layer, and that the each of the cavities within holder 23 are windows in the opaque material of holder 23 that allow light to travel from the LEDs and to the at least four photodetectors, while avoiding saturation of each of the sensor's detectors.  APPLE-1003, ¶[0141]; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b); *see also* APPLE-1013, ¶[0073], FIGS. 19A-19C; APPLE-1019, 79, 86, 94 ("Ambient light…may cause errors in SaO2 read-ings…the simple solution is to cover the sensor site with opaque material which can prevent ambient light from reaching the photodiode").

Thus, a POSITA would have understood that each of Aizawa's detectors has a corresponding window that allows light to pass through to the detector.  APPLE-1003, ¶¶[0130]-[0143].

### [1d] a wall that surrounds at least the at least four detectors; and

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1d].  For exam-ple, as discussed for [1pre]-[1c] and further illustrated below, Aizawa depicts and

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

describes a physiological sensor that includes "holder 23 for storing…the photode-tectors 22," in addition to other structural elements.  APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027]-[0029], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1003, ¶¶[0061]-[0069], [0071]-[0146].

In more detail, and as illustrated in Aizawa's FIGS. 1(a) and 1(b) below, the outer surface of holder 23 forms a wall that surrounds photodetectors 22.



APPLE-1006, FIG. 1a (annotated)

Exhibit I
Page 698



Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554



APPLE-1006, FIG. 1(b) (annotated)

Thus, the Aizawa-Inokawa-Ohsaki-Mendelson-2006 sensor would have included a wall that surrounds at least four photodetectors 22. APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0029], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, ¶[0017], FIG. 2; APPLE-1003, ¶¶[0144]-[0146].

***[1e] a cover that operably connects to the wall and that is configured to be located between tissue of the user and the at least four detectors when the physiological sensor device is worn by the user, wherein:***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1e]. APPLE-1003, ¶¶[0061]-[0069], [0071]-[0146]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0029], [0032]-[0033], FIGS. 1, 2, 3, 4(a). As explained above in Section IV.B.5, Aizawa-Inokawa-Ohsaki-Mendelson-2006 teaches a cover having a convex lens/protrusion that is placed over holder 23 to realize improved adhesion between the user's wrist and the sensor's surface, improve

53

Exhibit I
Page 699

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

detection efficiency, and protect the elements within the sensor housing.  APPLE-1003, ¶¶[0071]-[0102]; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; *see also* APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1008, ¶¶14-15, FIG. 1; APPLE-1024, ¶¶[0033], [0035], FIG. 6.



APPLE-1006, FIG. 1(b) (annotated)

For at least these reasons, the Aizawa-Inokawa-Ohsaki-Mendelson-2006 sensor would have included a cover that operably connects to the wall and that is configured to be located between tissue of the user and the at least four detectors when the sensor is worn by the user.  APPLE-1003, ¶¶[0147]-[0153].

***[1f] the cover comprises a single protruding convex surface, and***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1f].  APPLE-

54

Exhibit I
Page 700

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

1003, ¶[0154]-[0161].  As discussed for [1pre]-[1e], the Aizawa-Inokawa-Ohsaki-Mendelson-2006 device would have included a sensor with a holder 23 that is configured to circumscribe the plurality of light emitting diodes and photodetectors, and the cover having a single protruding convex surface placed between the tissue of the user and the photodetectors.  APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0029], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1003, ¶¶[0061]-[0069], [0071]-[0153].



APPLE-1006, FIG. 1(b) (annotated)

*[1g] at least a portion of the cover is sufficiently rigid to cause tissue of the user to conform to at least a portion of a shape of the single protruding convex surface when the physiological sensor device is worn by the user; and*

Exhibit I
Page 701

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1g].  APPLE-1003, ¶¶[0162]-[0165].  As discussed for [1pre]-[1f], the Aizawa-Inokawa-Ohsaki-Mendelson-2006 device would have included a cover having a single protruding convex surface, where at least a portion of the cover is sufficiently rigid to cause tissue of the user to conform to the shape of the surface when worn by the user.  APPLE-1003, ¶¶[0061]-[0069], [0071]-[0161]; APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; *see also* APPLE-1008, ¶¶[0058]-[0059]; FIG. 2 (depicting a convex lens placed between a photodiode and the user's skin; the lens is sufficiently rigid to make the tissue conform to the convex surface of the lens).

**[1h] a handheld computing device in wireless communication with the physiological sensor device, wherein the handheld computing device comprises:**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1h].  APPLE-1003, ¶¶[0166]-[0180].  As discussed for [1pre]-[1g], the Aizawa-Inokawa-Ohsaki-Mendelson-2006 device would have included a sensor and a base station, with the sensor being configured to communicate optically with the base station.  APPLE-1003, ¶¶[0061]-[0069], [0071]-[0165]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027], [0033]; APPLE-1008, ¶¶[0014], [0040], [0055]-[0066], FIGS. 2, 3, 19.

As explained in Sections IV.B.2 and IV.B.5 and shown below, when Inokawa's sensor is mounted onto the base station, "vital sign information…such

56

Exhibit I
Page 702

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

as pulse and body motion, is transmitted to the base device…using the…infra-red LED." *Id.*, ¶[0076]. The "base device 17 is connected to a PC 59, and information transmitted from the pulse sensor 1 is downloaded to the PC 59 via the base device 17." *Id.*; *see also id.*, ¶¶[0074], [0075], [0077].



(FIG. 3)

Pulse Sensor 1

Base Device 17

APPLE-1008, FIG. 3

Thus, the combination of Aizawa-Inokawa-Ohsaki-Mendelson-2006, as described above in Section IV.B.5 and incorporated herein, provides a physiological sensor device resulting from the combined teachings of Aizawa, Inokawa, and

57

Exhibit I
Page 703

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

Ohsaki as part of a physiological measurement system including a handheld computing device, and to enable the physiological sensor device's base station to communicate wirelessly with the handheld computing device.  APPLE-1003, ¶¶[0166]-[0180]; APPLE-1006, ¶¶[0015], [0023], [0028], [0035]; APPLE-1008, ¶¶[0002], [0003], [0067], [0074]-[0077]; APPLE-1010, 1-4, FIG. 3; *see also* APPLE-1020, 1-4.  As noted, a POSITA would have been motivated and found it obvious to modify the sensor system of Aizawa-Inokawa-Ohsaki to communicate wirelessly with a handheld computing device as taught by Mendelson-2006.  APPLE-1003, ¶[0176]; APPLE-1006, ¶¶[0015], [0023], [0028], [0035]; APPLE-1008, ¶¶[0002], [0003], [0067], [0074]-[0077]; APPLE-1010, 1-4, FIG. 3; *see also* APPLE-1020, 1-4; APPLE-1021, Cover, xvii-xviii, 10-12, 63, 73-101, 363; APPLE-1022, 4-11, 30-31, 284-297.

Exhibit I
Page 704

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554



APPLE-1010, FIG. 3 (left) and APPLE-1020, 1 (right)

***[1i] one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user;***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1i].  APPLE-1003, ¶¶[0181]-[0186].  In implementing the Aizawa-Inokawa-Ohsaki-Mendelson-2006 physiological measurement system, the POSITA would have configured a processor of the PDA to wirelessly receive signals from the physiological sensor device, the signals being responsive to physiological parameters of the user.  AP-PLE-1003, ¶¶[0061]-[0069], [0071]-[0180]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033];  APPLE-

59

Exhibit I
Page 705

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

1010, 1-4, FIGS. 1-3; APPLE-1020, 1-3, 6-8.

In more detail, Mendelson-2006 describes the wireless transmission of "vital physiological information" acquired and processed by a "body-worn pulse oximeter" to the HP iPAQ h4150 PDA, which is utilized "as a local terminal" with a "low-cost touch screen interface" featuring a "simple GUI" "configured to present … input and output information to the user." APPLE-1010, 1-2, FIGS. 1-3; APPLE-1021, Cover, xvii-xviii, 10-12, 17, 63, 363; APPLE-1022, 4-11, 30-31.  Mendelson-2006's FIG. 3, for example, is a photograph of an HP iPAQ h4150 PDA being used to display indicia responsive to measurements of $SpO_2$ and HR, the PDA having wirelessly received signals responsive to the user's $SpO_2$ and HR from the body-worn pulse oximeter.  APPLE-1003, ¶[0183]; APPLE-1010, 2-3, FIG. 3.

The PDA is said by Mendelson-2006 to include "sufficient computational resources for the intended application," and the PDA's user manual confirms that it typically included a "400 MHz Intel Xscale™ technology-based **processor**."  APPLE-1010, 3; APPLE-1020, 1-3.  The iPAQ h4150 PDA is said by Mendelson-2006, and its user manual confirms, to support both 802.11b and Bluetooth™ wireless communication.  APPLE-1010, 3; APPLE-1020, 1-3, 6-8; APPLE-1021, 173-203; APPLE-1022, 56-67, 72-92.

For at least these reasons, a POSITA would have found it obvious to configure a processor of the PDA to wirelessly receive signals from the physiological

60

Exhibit I
Page 706

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

sensor device, the signals being responsive to physiological parameters of the user. APPLE-1003, ¶¶[0181]-[0186]; APPLE-1006, 9:23-10:37, FIGS. 7, 8;  APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-3, 6-8.

***[1j] a touch-screen display configured to provide a user interface, wherein: the user interface is configured to display indicia responsive to measurements of the physiological parameter, and an orientation of the user interface is configurable responsive to a user input; and***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1j].  APPLE-1003, ¶¶[0187]-[0195].  In implementing the Aizawa-Inokawa-Ohsaki-Mendelson-2006 physiological measurement system, the POSITA would have configured a touch-screen display of the PDA to provide a user interface, the user interface being configured to display indicia responsive to measurements of the physiological parameter, and an orientation of the user interface being configurable responsive to a user input.  APPLE-1003, ¶¶[0061]-[0069], [0071]-[0186]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033]; APPLE-1008, ¶¶[0002], [0003], [0067], [0074]-[0077]; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-4.

For example, Mendelson-2006 describes the wireless transmission of "vital physiological information" acquired and processed by a "body-worn pulse oximeter" to the HP iPAQ h4150 PDA, which is utilized "as a local terminal" with a "low-cost touch screen interface" featuring a "simple GUI" "configured to present

61

Exhibit I
Page 707

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

… input and output information to the user" and to allow "easy activation of various functions."  APPLE-1010, 1-2, FIGS. 1-3; *see also* APPLE-1020, 3 (confirming that the HP iPAQ h4150 typically included a touch screen display).  As Mendelson-2006 explains, a "dedicated National Instruments LabVIEW program was developed to control all interactions between the PDA and the wearable unit via a graphical user interface (GUI)," with "[o]ne part of the LabVIEW software [being] used to control the flow of information through the 802.11b radio system on the PDA."  APPLE-1010, 3.

As shown below, Mendelson-2006's FIG. 3, for example, is a photograph of an HP iPAQ h4150 PDA being used to display indicia responsive to measurements of $SpO_2$ and HR, the PDA having wirelessly received signals responsive to the user's $SpO_2$ and HR from the body-worn pulse oximeter.  APPLE-1003, ¶¶[0187]-[0190]; APPLE-1010, 1-3 (displaying "subject's vital signs" and "a scrollable PPG waveform…transmitted by the wearable device"), FIG. 3.

Exhibit I
Page 708

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554



APPLE-1010, FIG. 3.

Mendelson-2006 does not explicitly state that an orientation of the GUI provided by the PDA is configurable responsive to a user input, but a POSITA would have understood that the LabVIEW software that was used "to control all interactions between the PDA and the wearable unit via [t]he graphical user interface" included the option to configure an orientation of a user interface as a standard feature. APPLE-1003, ¶[0191]; APPLE-1027, 186. Indeed, Mendelson-2006 describes the "LabVIEW program" as interacting with the "Windows CE™" operating system. APPLE-1010, 3. As a standard feature, the operating system enabled

63

Exhibit I
Page 709

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

users to dynamically switch the screen orientation between portrait and landscape modes.  APPLE-1003, ¶[0191]; APPLE-1020, 1; APPLE-1021, xvii-xviii ("Microsoft has changed the software name…[f]irst it was Windows CE…and now Windows Mobile"), 63 ("Windows Mobile 2003SE and Windows Mobile 5 can switch the screen orientation from portrait…to landscape"); APPLE-1022, 8.

Additionally, the HP iPAQ h4150 user manual describes the PDA's operating system as the "Microsoft® Windows® Mobile$^{TM}$ 2003 software for Pocket PC."  APPLE-1020, 2, 6.  A POSITA would have understood that, as a standard feature, that operating system enabled users to change the screen orientation between portrait and landscape on the fly.  APPLE-1003, ¶[0192].

Consistent with Mendelson-2006's description of the PDA's "simple GUI" being configured to allow for "easy activation of various functions," a POSITA would have found it obvious to make an orientation of the PDA's user interface configurable responsive to a user input, for the sake of user convenience.  APPLE-1003, ¶¶[00187]-[0195]; APPLE-1010, 3; APPLE-1020, 2, 6; APPLE-1021, xvii-xviii, 63; APPLE-1022, 8.

***[1k] a storage device configured to at least temporarily store at least the measurements of the physiological parameter.***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1k].  APPLE-1003, ¶¶[0196]-[0199].  In implementing the Aizawa-Inokawa-Ohsaki-Mendelson-2006 physiological measurement system, the POSITA would have configured a

Exhibit I
Page 710

storage device of the PDA to at least temporarily store measurements of physiological parameters (e.g., SpO$_2$ and HR). APPLE-1003, ¶¶[0061]-[0069], [0071]-[0195]; APPLE-1010, 3, FIG. 3 ("The PDA can also serve to temporarily store vital medical information received from the wearable unit"); APPLE-1020, 3, 10 (noting that the HP iPAQ h4150 typically included 64-MB of SDRAM, 32-MB of ROM, and an SD slot for additional storage); APPLE-1021, 31-36; APPLE-1022, 50-51.

As Mendelson-2006 explains, the "PDA can also serve to temporarily store vital medical information received from the wearable unit." APPLE-1010, 3. A POSITA would have understood that the vital medical information would have included measurements of the physiological parameters obtained by the physiological sensor device (e.g., SpO$_2$ and HR). APPLE-1003, ¶[0198]; APPLE-1010, 1-4, FIG. 3.

*Claim 2*

**[2] The physiological measurement system of claim 1, wherein the at least four detectors comprise at least eight detectors.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [2]. *Supra* Section IV.B.6 [1pre]-[1k]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0203]. For example, Aizawa explicitly depicts a sensor that includes eight detectors. APPLE-1006, ¶[0032] (describing that the number of photodetectors can be increased to "further improve detection efficiency.")

65

Exhibit I
Page 711

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

# F I G. 4 (a)



APPLE-1006, FIG. 4(a) (annotated).

Accordingly, [2] would have been obvious over Aizawa-Inokawa-Ohsaki-Mendelson-2006.  APPLE-1003, ¶¶[0200]-[0203].

Exhibit I
Page 712

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

## *Claim 3*

**[3] The physiological measurement system of claim 2, wherein at least part of the single protruding convex surface is light permeable to provide at least one optical path to at least one of the at least four detectors.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [3]. *Supra* Section IV.B.6, [1pre]-[1k]. APPLE-1003, ¶¶[0061]-[0069], [0071]-[0208]. For example, as illustrated below, the Aizawa-Inokawa-Ohsaki-Mendelson-2006 sensor stores each of the photodetectors 22 in cavities included within the opaque holder 23 and beneath a translucent convex cover situated between the sensor and the user's tissue. APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶[204].

As illustrated below, Aizawa's holder 23 blocks light other than at cavities 23b and 23c for the light emitting diode 21 and the photodetectors 22, with each opening 23c allowing light to pass through to the corresponding detectors. APPLE-1006, ¶[0024]; APPLE-1003, ¶[0205]. The optical path taken by light exiting cavity 23b and entering cavities 23c are indicated by arrows. This "sectional view" of the sensor illustrates only two of the at least four photodetectors, and depicts two optical paths, one for each of the two illustrated photodetectors. APPLE-1003, ¶[0205]. Thus, Aizawa discloses at least one optical path to at least one of the at least four detectors. *Id.*

67

Exhibit I
Page 713

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

FIG. 1 (b)



APPLE-1006, FIG. 1(b) (annotated).

As discussed for [1pre]-[1k], and illustrated below, the Aizawa-Inokawa-Ohsaki-Mendelson-2006 sensor includes a transparent (or translucent), convex cover configured to be located between tissue of the user and the photodetectors when the sensor is worn by the user.  APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0029], [0030] ("the acrylic **transparent** plate is provided on the detection face 23a of the holder 23"), [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, ¶¶[0015], [0017], [0025] ("the convex surface of the **translucent** board 8 is in intimate contact with the surface of the user's skin"), FIGS. 1, 2, 4A, 4B; APPLE-1008, ¶¶[0014], [0040], [0058]-[0059], FIGS. 2, 3, 19. A transparent or translucent material is, by definition, at least partially light permeable.  APPLE-1003, ¶¶[0204]-[0208].

68

Exhibit I
Page 714

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554



APPLE-1006, FIG. 1(b) (annotated)

*Claim 4*

**[4] The physiological measurement system of claim 3, wherein the physiological sensor device further comprises: an at least partially opaque layer blocking one or more optical paths to at least one of the at least four detectors, wherein the at least partially opaque layer comprises the windows that allow light to pass through to the corresponding detectors.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [4]. *Supra*, Section IV.B.6, [1pre]-[1d], and [3]. APPLE-1003, ¶¶[0061]-[0069], [0071]-[0215].

For example, a POSITA would have understood Aizawa-Inokawa-Ohsaki-Mendelson-2006's holder 23 to comprise an opaque surface that would block optical paths to the photodetectors but for the cavities 23a that teach windows in the opaque material of holder 23 that allow light through while avoiding saturation of each of the

69

Exhibit I
Page 715

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

sensor's detectors.  APPLE-1003, ¶¶[0209]-[0215]; *see also* APPLE-1019, 79, 86, 94; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).

## *Claim 5*

**[5] The physiological measurement system of claim 4, wherein the physiological sensor device further comprises: a substrate having a first surface, wherein the at least four detectors are arranged on the first surface.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [5].  *Supra* Section IV.B.6, [1pre]-[1k].  APPLE-1003, ¶¶[0216]-[0220].  As discussed for Section IV.5, the Aizawa-Inokawa-Ohsaki-Mendelson-2006 sensor would have included a substrate.  APPLE-1003, ¶¶[0061]-[0069], [0071]-[0215]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027]-[0029], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, ¶[0017], FIG. 2.

For example, a POSITA would have understood the surface of Aizawa's holder 23 on which photodetectors 22 are arranged to be a substrate having a first surface.  APPLE-1003, ¶[0217].

Exhibit I
Page 716

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

# F I G. 1 (a)



APPLE-1006, FIG. 1(a) (annotated)

# F I G. 1 (b)



APPLE-1006, FIG. 1(b) (annotated)

Exhibit I
Page 717

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

# F I G . 4 (a)



APPLE-1006, FIG. 4(a) (annotated)

Additionally, Ohsaki's circuit board 9 on which the "light emitting element 6 and light receiving element 7" are arranged is shown to include a first surface. APPLE-1009, ¶[0017]; APPLE-1003, ¶¶[0216]-[0220].

Exhibit I
Page 718

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

# FIG. 2



APPLE-1009, FIG. 2 (annotated).

<u>*Claim 6*</u>

**[6] The physiological measurement system of claim 5, wherein: the wall surrounds at least the at least four detectors on the first surface, the wall operably connects to the substrate on one side of the wall, and the wall operably connects to the cover on an opposing side of the wall.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [6]. *Supra*, Section IV.B.6, [1pre]-[1k], [4], and [5]. APPLE-1003, ¶¶[0061]-[0069], [0071]-[0227]; APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1009, Abstract, [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

73

Exhibit I
Page 719

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554



APPLE-1006, FIG. 1(b) (annotated)

*Claim 7*

**[7] The physiological measurement system of claim 6, wherein the wall creates one or more gaps between the first surface of the substrate and a surface of the cover that is interior to the physiological sensor device, and wherein the at least four detectors are positioned on the first surface of the substrate within the one or more gaps.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [7].  APPLE-1003, ¶¶[0061]-[0069], [0071]-[0227].  As discussed for [1pre]-[1e] and [2]-[6], a POSITA would have understood Aizawa to include a substrate on which the photo-detectors 22 are arranged, and that this substrate is operably connected to holder 23, which both circumscribes and retain the photodetectors.  APPLE-1006, Ab-stract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0029], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, ¶[0017], FIG. 2.  Additionally, as shown

74

Exhibit I
Page 720

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

in FIG. 1(b), "plate 6 [is] mounted to the detection face 23a of the holder 23" opposite the substrate on which the photodetectors 22 are arranged.  APPLE-1006, ¶[0023].

As shown in FIG. 1(b) of Aizawa, Aizawa illustrates that its wall, holder 23, creates one or more gaps between the surface of the substrate on which the photodetectors 22 are mounted and a surface of the convex cover that is interior to Aizawa's sensor 1.  APPLE-1003, ¶[0229].  In further detail, Aizawa's FIG. 1(b) illustrates that the photodetectors 22 are positioned on the surface of the substrate within the one or more gaps created by holder 23 between the substrate and the cover.



APPLE-1006, FIG. 1(b) (annotated)

Exhibit I
Page 721

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

*Claim 20*

**[20pre] A physiological measurement system comprising:**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [20pre]. *See supra*, Sections IV.B.1-6, [1pre]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0107], [0231]-[0232].

**[20a] a physiological sensor device comprising;**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [20a]. *See supra*, Sections IV.B.1-6, [1a]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0109], [0231]-[0234].

**[20b] a plurality of emitters configured to emit light into tissue of a user;**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [20b]. *See supra*, Sections IV.B.1-6, [1b]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0129], [0231]-[0236].

**[20c] at least four detectors, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector;**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [20c]. *See supra*, Sections IV.B.1-6, [1c]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0143], [0231]-[0238].

**[20d] a wall that surrounds at least the at least four detectors; and**

76

Exhibit I
Page 722

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [20d].  *See supra*, Sections IV.B.1-6, [1d]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0146], [0231]-[0240].

**[20e] a cover comprising a single protruding convex surface, wherein the single protruding convex surface is configured to be located between tissue of the user and the at least four detectors when the physiological sensor device is worn by the user, wherein at least a portion of the single protruding convex surface is sufficiently rigid to cause tissue of the user to conform to at least a portion of a shape of the single protruding convex surface when the physiological sensor device is worn by the user, and wherein the cover operably connects to the wall; and**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [20e].  *See supra*, Sections IV.B.1-6, [1e]-[1f]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0153], [0231]-[0242].

As explained above, the Aizawa-Inokawa-Ohsaki-Mendelson-2006 sensor would have included a cover that "becomes close to the artery 11 of the wrist 10" of a subject wearing Aizawa's wrist-worn pulse sensor, improving "adhesion between the wrist 10 and the pulse rate detector 1."  APPLE-1006, ¶[0026]; APPLE-1003, ¶[0241].  The cover would have comprised a single protruding convex surface, and would have been sufficiently rigid to cause tissue of the user to conform to at least a portion of a shape of the single protruding convex surface when the device is worn by the user.  APPLE-1009, ¶¶[0015], [0017], [0025] (the "convex surface of the translucent board 8 is in intimate contact with the surface of the user's skin"), FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0241]-[0242].

77

Exhibit I
Page 723

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554



APPLE-1006, FIG. 2 (annotated)

*[20f] a handheld computing device in wireless communication with the physiological sensor device.*

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [20f]. *See supra*, Sections IV.B.1-6, [1h]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0180], [0231]-[0244].

<u>*Claim 21*</u>

*[21a] The physiological measurement system of claim 20, wherein the handheld computing device comprises: one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user;*

78

Exhibit I
Page 724

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [21a].  *Supra*, Sections IV.B.1-6, [1i] and [20pre]-[20f]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0186], [0231]-[0246].

***[21b] a touch-screen display configured to provide a user interface, wherein:***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [21b].  *Supra*, Sections IV.B.1-6, [1j], [20pre]-[20f]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0195], [0231]-[0248].

***[21c] the user interface is configured to display indicia responsive to measurements of the physiological parameter, and***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [21c].  *See supra*, Sections IV.B.1-6, [1j], and [20pre]-[20f]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0195], [0231]-[0250].

***[21d] an orientation of the user interface is configurable responsive to a user input; and***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [21d].  *See supra*, Sections IV.B.1-6, [1j] and [20pre]-[20f]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0195], [0231]-[0254].

***[21e] a storage device configured to at least temporarily store at least the measurements of the physiological parameter.***

Exhibit I
Page 725

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [21e].  *See supra*, Sections IV.B.1-6, [1k] and [20pre]-[20f]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0199], [0231]-[0256].

*Claim 22*

**[22] The physiological measurement system of claim 21, wherein the at least four detectors comprise at least eight detectors.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [22].  *See supra*, Sections IV.B.1-6, [2] and [21a]-[21e]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0203], [0245]-[0259].

*Claim 23*

**[23] The physiological measurement system of claim 22, wherein at least part of the single protruding convex surface is light permeable to allow light to reach at least one of the at least four detectors.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [23].  *See supra*, Sections IV.B.1-6, [3] and [22]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0208], [0257]-[0261].

*Claim 24*

**[24] The physiological measurement system of claim 23, wherein the physiological sensor device further comprises: an at least partially opaque layer blocking one or more optical paths to at least one of the at least four detectors, wherein the at least partially opaque layer comprises the windows that allow light to pass through to the corresponding detectors.**

Exhibit I
Page 726

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [24].  *See supra*, Sections IV.B.1-6, [4] and [23]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0215], [0260]-[0263].

*Claim 25*

*[25] The physiological measurement system of claim 24, wherein the physiological sensor device further comprises: a substrate having a first surface, wherein the at least four detectors are arranged on the first surface, and wherein the wall surrounds at least the at least four detectors on the first surface, wherein: the wall operably connects to the substrate on one side of the wall, and the wall operably connects to the cover on an opposing side of the wall.*

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [25].  *See supra*, Sections IV.B.1-6, [5]-[6] and [24]; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0227], [0262]-[0265].

*Claim 26*

*[26] The physiological measurement system of claim 25, wherein a surface of the handheld computing device positions the touch-screen display.*

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [26].  APPLE-1003, ¶¶[0266]-[0268].  As discussed for [1pre]-[1k], [20pre]-[20f], and [21]-[25], the Aizawa-Inokawa-Ohsaki-Mendelson-2006 device would have included a PDA such as the HP iPAQ h4150 PDA, which is utilized "as a local terminal" with a "low-cost touch screen interface" featuring a touch-screen display.  APPLE-1006, Abstract, [0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1008, ¶¶[0002], [0003], [0067], [0074]-[0077];

81

Exhibit I
Page 727

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

APPLE-1010, 1-4, FIG. 3; APPLE-1003, ¶¶[0061]-[0069], [0071]-[0199], [0231]-[0265].

As shown below, a surface of the HP iPAQ h4150 positions the touch-screen display.  APPLE-1003, ¶[0267]; APPLE-1010, FIG. 3; APPLE-1020, 1.



APPLE-1010, FIG. 3 (left) and APPLE-1020, 1 (right)

*Claim 27*

**[27] The physiological measurement system of claim 26, wherein the physiological parameter comprises at least one of: pulse rate, glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, carbon monoxide, or a state or trend of wellness of the user.**

Exhibit I
Page 728

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [27].  APPLE-1003, ¶¶[0269]-[0272].  As discussed for [1pre]-[1k], [20pre]-[20f], and [21]-[26], the physiological measurement system resulting from the combined teachings of Aizawa, Inokawa, Ohsaki, Mendelson-2006 would have been a "**pulse rate** detector" (APPLE-1006, Abstract) including a processor configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user.  APPLE-1003, ¶¶[0061]-[0069], [0071]-[0199], [0231]-[0268]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027]-[0028] ("for displaying the…**pulse rate data**"), [0033]; APPLE-1010, 1-4, FIG. 3.

As shown below, Aizawa discloses displaying the "waveform of a pulse wave" or the "**pulse rate** data" as output by the photodetectors.  APPLE-1006, ¶[0028].



Exhibit I
Page 729

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

APPLE-1006, FIG. 3

Further, and as shown below, Mendelson-2006 discloses that the HP iPAQ h4150 PDA displays indicia responsive to measurements of physiological parameters that include $SpO_2$ and HR, the PDA having wirelessly received signals responsive to the user's $SpO_2$ and HR from a body-worn pulse oximeter.  APPLE-1003, ¶[0271]; APPLE-1010, 2-3, FIG. 3.



APPLE-1010, FIG. 3

Exhibit I
Page 730

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

## *Claim 28*

**[28] The physiological measurement system of claim 27, wherein the single protruding convex surface protrudes a height greater than 2 millimeters and less than 3 millimeters.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [28].  APPLE-1003, ¶¶[0273]-[0277].  As discussed in Sections IV.B.1-6, [1pre]-[1k], [20pre]-[20f], and [21]-[27], the Aizawa-Inokawa-Ohsaki-Mendelson-2006 device would have included a cover featuring a single protruding convex surface.  APPLE-1003, ¶¶[0061]-[0069], [0071]-[0199], [0231]-[0272]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027]-[0028], [0033]; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

The convex cover taught by Ohsaki is designed to be "in intimate contact with the surface of the user's skin," so as to prevent slippage of the detecting element from its position on the user's wrist.  APPLE-1009, ¶¶[0009]-[0010], FIG. 2.

Exhibit I
Page 731

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

# FIG. 2



APPLE-1009, FIG. 2 (annotated).

In incorporating Ohsaki's teachings, a POSITA would have found it obvious that a device designed to fit on a user's wrist would be on the order of millimeters. APPLE-1003, ¶[0275]; *see also* APPLE-1010, 2 (describing its "optical reflectance transducer" as "small (∅ = 22mm)"); *see also* APPLE-1017, 2 (describing a "standard 24-pin (dimensions: 19 x 19 mm) microeletronic package" for its sensor).  Additionally, the POSITA would have taken the user's comfort into consideration— Ohsaki's convex cover, for example, is said to solve the problem of "the user

86

Exhibit I
Page 732

feel[ing] uncomfortable" due to pressure from the device and belt on the user's limbs.  APPLE-1009, ¶[0006].

A POSITA would have found it obvious that in order to provide a comfortable cover featuring a protruding convex surface that prevents slippage, the surface should protrude a height greater than 2 millimeters and less than 3 millimeters. APPLE-1003, ¶[0276].  Indeed, there would have been a finite range of possible protruding heights, and it would have been obvious to select a protruding height that would have been comfortable to the user.  APPLE-1003, ¶¶[0273]-[0277].

## C. GROUND 2: Claims 8-19 are obvious over Aizawa, Inokawa, Ohsaki, Mendelson-2006, and Bergey

### 1. Overview of Bergey

Bergey discloses a wristwatch in which the "electronics are hermetically sealed in the watch case to be free of dust and moisture."  APPLE-1016, Abstract. The components are "sealed to produce a unit that is shockproof and waterproof, regardless of the environment in which it is placed."  *Id*., 2:56-67.

In further detail, Bergey describes a digital wristwatch with "solid state electronic components."  *Id*., 2:56-67.  Bergey's watch assembly "may be hermetically sealed to produce a unit that is shockproof and waterproof, regardless of the environment in which it is placed.  *Id*., 2:56-67.  Bergey discloses a method for sealing the electronics within the watch case in which the internal electronics are "mounted on [the] circuit substrate" and "hermetically sealed all the way around

Exhibit I
Page 733

between [an] inner cover[] and [a] front plate." APPLE-1016, 8:48-9:34. The seal "acts as protection to the electronics and also prevents condensation of water" within the case of the watch. *Id*.; APPLE-1003, ¶[0070].



APPLE-1016, FIG. 7 (annotated)

### 2. Combination of Aizawa, Inokawa, Ohsaki, Mendelson-2006 and Bergey

The Aizawa-Inokawa-Ohsaki-Mendelson-2006 combination does not explicitly disclose that the substrate, the wall, and the cover together hermetically seal the at least four detectors. APPLE-1003, ¶[0278].

However, by the '554 patent's 2008 earliest effective filing date, internal electronics within devices, such as wristwatches, worn on a person's wrist would have been "hermetically sealed in the watch case to be free of dust and moisture,"

Exhibit I
Page 734

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

and the "sealed components [would have been] resiliently mounted for improved shock resistance." *Id.*, ¶[0279]; APPLE-1016, Abstract.

A POSITA would have been motivated to look to prior art such as Bergey, for example, to obtain the advantages described by Bergey (e.g., to hermetically seal the components to produce a waterproof, shockproof device) by modifying the Aizawa-Inokwawa-Ohsaki-Mendelson-2006 device such that the sensor hermetically seals components, such as its LEDs and photodetectors 22, between a cover and a substrate as taught by Bergey to protect the electronics and prevent "condensation of water vapor" inside of the case.  APPLE-1003, ¶[0280]; APPLE-1016, Abstract, 2:56-67, 8:48-9:34.

This and related description would have motivated a POSITA to hermetically seal the at least four photodetectors 22 using the substrate, the holder 23, and the cover.  APPLE-1003, ¶[0281].  Indeed, a POSITA would have understood that the benefits of hermetically sealing internal electronics of a wristwatch would have applied directly to hermetically sealing internal electronics of a physiological sensing system that is similarly configured to be worn on a subject's wrist.  APPLE-1003, ¶¶[0278]-[0281].

### 3. Manner in which Aizawa, Inokawa, Ohsaki, Mendelson-2006, and Bergey render obvious Claims 8-19

*Claim 8*

Exhibit I
Page 735

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

***[8] The physiological measurement system of claim 6, wherein the substrate, the
wall, and the cover together hermetically seal the at least four detectors.***

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Bergey renders obvious [8].  AP-
PLE-1003, ¶¶[0282]-[0287]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-
[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a).

As explained in Sections IV.C.1-2, the Aizawa-Inokawa-Ohsaki-Mendelson-
2006-Bergey device would have been obvious and a POSITA would have been
motivated to hermetically seal its components, including at least four photodetec-
tors 22, between a cover and a substrate.  APPLE-1003, ¶¶[0061]-[0102], [0278]-
[0281]; APPLE-1016, Abstract, 2:56-67, 8:48-9:34, FIG. 7.



APPLE-1016, FIG. 7 (annotated)

*Claim 9*

***[9] The physiological measurement system of claim 8, wherein a surface of the
handheld computing device positions the touch-screen display.***

90

Exhibit I
Page 736

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Bergey renders obvious [9]. *See supra*, Sections IV.B.1-6, IV.C.1-2, [8] and [26]; APPLE-1003, ¶¶[0061]-[0102], [0266]-[0268], [0278]-[0289].

*Claim 10*

**[10] The physiological measurement system of claim 9, wherein the physiological parameter comprises at least one of: pulse rate, glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, or carbon monoxide.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Bergey renders obvious [10]. *See supra*, Sections IV.B.1-6, IV.C.1-2, [9] and [27]; APPLE-1003, ¶¶[0061]-[0102], [0269]-[0272], [0278]-[0291].

*Claim 11*

**[11] The physiological measurement system of claim 10, wherein the single protruding convex surface protrudes a height between 1 millimeter and 3 millimeters.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Bergey renders obvious [11]. *See supra*, Sections IV.B.1-6, IV.C.1-2, [10] and [28]; APPLE-1003, ¶¶[0061]-[0102], [0273]-[0277], [0278]-[0293].

*Claim 12*

**[12] The physiological measurement system of claim 11, wherein at least one of the detectors is configured to detect light that has been attenuated by tissue of the user.**

91

Exhibit I
Page 737

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Bergey renders obvious [12]. APPLE-1003, ¶¶[0294]-[0298].  As discussed in Sections IV.B.1-6, IV.C.1-2, and [1pre]-[1k], the Aizawa-Inokawa-Ohsaki-Mendelson-2006-Bergey sensor would have included a plurality of light emitting diodes, and at least four detectors that are configured to detect attenuated light that has been reflected by the user's tissue. APPLE-1003, ¶¶[0103]-[0199]; APPLE-1006, ¶¶[0009] (Aizawa's photodetectors "detect light output from a light emitting diode and **reflected from the artery of a wrist** of a subject"—this light emitted by the light emitting diode is necessarily attenuated by the tissue of the subject), [0027].

*Claim 13*

**[13] The physiological measurement system of claim 12, wherein the displayed indicia are further responsive to temperature.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Bergey renders obvious [13]. APPLE-1003, ¶¶[0299]-[0301].  As discussed in Sections IV.B.1-6, IV.C.1-2, [1pre]-[1k] and [12], the Aizawa-Inokawa-Ohsaki-Mendelson-2006-Bergey sensor would have included a touch-screen display that provides a GUI including display indicia that are response to a user input.  APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027], [0033]; APPLE-1010, 1-4, FIG. 3; APPLE-1020, 1-4; *see also* APPLE-1009, ¶¶[0005], [0020]); APPLE-1003, ¶¶[0061]-[0199], [0294]-[0298].

92

Exhibit I
Page 738

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

Consistent with Mendelson-2006's description of the PDA's "simple GUI" being configured to allow for "easy activation of various functions," a POSITA would have found it obvious to make an orientation of the PDA's user interface configurable responsive to temperature, for the sake of user convenience.  APPLE-1003, ¶[300]; APPLE-1010, 3; APPLE-1020, 2, 6.  A POSITA would have understood that a display indicia that changes when the temperature reaches a threshold value is responsive to temperature.  *Id.*  Thus, a POSITA would have found it obvious that a system resulting from the combination of Aizawa, Inokawa, Ohsaki, Mendelson-2006, and Bergey would have allowed an orientation of the user interface to be further responsive to temperature.  *Id.*, ¶¶[0299]-[0301].

*Claim 14*

**[14] The physiological measurement system of claim 13, wherein a portion of the physiological sensor device comprises one of at least two sizes, the two sizes intended to be appropriate for larger users and smaller users.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Bergey renders obvious [14].  APPLE-1003, ¶¶[0061]-[0199], [0302]-[0305].  For example, a POSITA would have found it obvious that a device designed to fit on a user's wrist could be of different sizes to accommodate different sizes of users.  APPLE-1003, ¶[0303].  The user's comfort is an important consideration for a wristworn sensing device—Ohsaki's convex cover solves the problem in which "the user feels uncomfortable"

93

Exhibit I
Page 739

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

due to pressure from the device and belt on the user's limbs.  APPLE-1009, ¶[0006].

Indeed, by the '554 patent's 2008 earliest effective filing date, medical devices were commonly adjustable or provided in different sizes to accommodate the needs of different subjects.  APPLE-1003, ¶[0304]; *see* APPLE-1013, ¶¶[0034] (describing that a component of the sensor is "easily bent and shaped to comfortably fit various ear shapes and sizes"), [0057] (the component can be "formed to accommodate a variety of ear shapes and sizes."); APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b).  A POSITA would have been motivated to optimize subject comfort and thus would have found it obvious to modify the Aizawa-Inokawa-Ohsaki-Mendelson-2006-Bergey system to provide different sizes of components for differently sized subjects.  APPLE-1003, ¶¶[0302]-[0305].

*Claim 15*

**[15] The physiological measurement system of claim 14, wherein the at least four detectors are arranged such that a first detector and a second detector of the least four detectors are arranged across from each other on opposite sides of a central point along a first axis, and a third detector and a fourth detector of the least four detectors are arranged across from each other on opposite sides of the central point along a second axis which is different from the first axis.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Bergey renders obvious [15]. APPLE-1003, ¶¶[0061]-[0199], [0306]-[0309]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a).

Exhibit I
Page 740

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

As shown in FIG. 4(a) of Aizawa, a first detector and a second detector are arranged across from each other on opposite sides of a central point along a first axis, and a third detector and a fourth detector are arranged across from each other on opposite sides of the central point along a second axis which is different from the first axis.  APPLE-1003, ¶¶[0307]-[0308]; APPLE-1006, ¶¶[0029], [0011], claim 3.



APPLE-1006, FIG. 4(a) (annotated)

*Claim 16*

**[16] The physiological measurement system of claim 15, wherein the first axis is perpendicular to the second axis, and wherein the first, second, third and fourth detectors form a cross pattern about the central point.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Bergey renders obvious [16].

*Supra* Sections IV.B.1-6, IV.C.1-2; APPLE-1003, ¶¶[0061]-[0199], [0310]-[0312];

95

Exhibit I
Page 741

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a).

For example, as shown in FIG. 4(a) of Aizawa, the first axis is perpendicular to the second axis, and the first, second, third and fourth detectors form a cross pattern about the central point.  APPLE-1003, ¶[0311].



APPLE-1006, FIG. 4(a) (annotated)

*Claim 17*

***[17] The physiological measurement system of claim 16, wherein the single protruding convex surface protrudes a height greater than 2 millimeters and less than 3 millimeters.***

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Bergey renders obvious [17].

*See supra*, Sections IV.B.1-6, IV.C.1-2, [11] and [28]; APPLE-1003, ¶¶[0061]-[0199], [0273]-[0277], [0292]-[0293], [0313]-[0314].

Exhibit I
Page 742

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

*Claim 18*

**[18] The physiological measurement system of claim 17, wherein the attenuated light is reflected by the tissue.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Bergey renders obvious [18].

*See supra*, Sections IV.B.1-6, IV.C.1-2 [12], [17], and [27]; APPLE-1003,

¶¶[0061]-[0199], [0269]-[0272], [0294]-[0316].

*Claim 19*

**[19] The physiological measurement system of claim 9, wherein the physiological parameter comprises a state or trend of wellness of the user.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Bergey renders obvious [19].

APPLE-1003, ¶¶[0317]-[0320].  As discussed in Sections IV.B.1-6, IV.C.1-2,

[1pre]-[1k], [8]-[9], and [27], the Aizawa-Inokawa-Ohsaki-Mendelson-2006-Ber-

gey sensor describes a "pulse wave sensor" that is communicably connected to and

transmits data to a display "for displaying the…**pulse rate** data."  APPLE-1006,

¶[0028]; APPLE-1003, ¶¶[0061]-[0199], [0269]-[0272], [0282]-[0289].

For example, "the waveform of a pulse wave" detected by Aizawa's photo-

detectors 22 can be displayed as represented by FIG. 3.  APPLE-1006, ¶¶[0028]-

[0029].

Exhibit I
Page 743

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554





APPLE-1006, FIG. 3.

A POSITA would have understood that a pulse rate represents a state of wellness of a subject.  APPLE-1003, ¶[0319].  Indeed, a pulse wave signal provides information regarding a subject's pulse rate and a trend of the subject's pulse over time.  *Id*.  A POSITA would have understood that a pulse rate represents a state or trend of wellness of the subject.  *Id*., ¶¶[0317]-[0320].

## V.   PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION

Consistent with Congressional intent and goals of *NHK*/*Fintiv*[5], Apple asks

---

[5] Unlike *NHK*, there is no basis for discretionary denial of this Petition under § 325(d), which would only be appropriate if the same or substantially the same art or arguments were previously presented to the Office.  *Advanced Bionics LLC v.*

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

the Board alone to consider challenges raised in this Petition. *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11, 6 (PTAB 2020). As explained below, *Fintiv* favors institution.

### A.    Factor 1: Institution Will Increase Likelihood of Stay

Institution will enable the Board to resolve the issue of validity, and a finding of invalidity will relieve the Central District of California (the "District Court") of the need to continue with the companion litigation. Apple intends to move to stay the District Court case, and the opportunity for such simplification increases the likelihood that the court will grant a stay in view of IPR institution. *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case No. 2:16-cv-642-JRG, 2-3 (E.D. Tex. 2017); *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 13-CV-1058, 2015 WL 1069111 (E.D. Tex. 2015).

### B.    Factor 2: District Court Schedule

Trial in the District Court case is scheduled for April 5, 2022. APPLE-1031, 1. Based on the 18-month IPR schedule, a Final Written Decision ("FWD") in an

---

*MED-EL Elektromedizinische Gerate GmbH*, IPR2019-01469 Pap. 6, 8-10 (PTAB Feb. 13, 2020)(precedential). The arguments advanced in this Petition are premised on combinations of references that were never presented to the Office in connection with the '554 Patent.

Exhibit I
Page 745

IPR arising from this Petition would issue in early March of 2022, prior to the District Court trial date.

In addition, as in *NHK*, district court trial dates shift, even in normal times. *Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap. 22, 17 (PTAB 2019).  The District Court is one of the country's busiest patent courts.  Scheduling issues cannot be ruled out, as experts have professed that additional COVID-19 outbreaks are likely to arise and California is facing new outbreaks.  APPLE-1034, 1 ("Fauci says second wave of coronavirus is 'inevitable'"); APPLE-1035, 4 ("Los Angeles County is currently" at "275 [cases] per 100,000 [residents]," which is higher than the recommended level (100 per 100,000) for reopening.

### C.    Factor 3: Apple's Investment in IPR Outweighs Forced Investment in Litigation to Date

District court proceedings are still at an early phase.  The parties have yet to file claim construction briefs, no claim construction orders have issued, and the *Markman* hearing is not scheduled until February 8, 2021.  APPLE-1031, 1.  In addition, discovery is not scheduled to close until July 5, 2021.  *Id.*

Apple's substantial investment in these IPR proceedings should counterbalance—if not outweigh—the resources invested in the co-pending litigation given the speed with which Apple is filing IPR petitions on over 150 claims across seven patents.  It would be unjust to consider resources expended in District Court

Exhibit I
Page 746

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

(equally by both parties), without considering Apple resources expended to prepare nine IPR petitions that would be irretrievably lost without consideration on the merits, in addition to the extensive expenses that may be foregone through institution of Apple's petitions and that will otherwise certainly follow in co-pending litigation for which significant milestones exist.

### D.     Factor 4: The Petition Raises Unique Issues

Consistent with *Fintiv*, Apple asks the Board to consider the unique challenges raised in the Petition. Apple has voluntarily stipulated to counsel for Patent Owner that, if the Board institutes this IPR, Apple will not assert that the Challenged Claims are invalid on the pending Petition's asserted grounds in *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.). APPLE-1032, 1; *see*, *e.g.*, *Apple v. Seven* at 15-17 (finding that such a stipulation by a petitioner "mitigates, at least to some degree, the concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions").

In addition, the Petition addresses claims that will not be addressed in District Court.  Although Patent Owner has not yet narrowed the asserted claims, the District Court recently ordered the parties to submit "a joint proposal for an initial reduction of infringement contentions" by September 21, 2020.  APPLE-1033, 1. Thus, based on this ordered reduction in the asserted claims, the District Court will

Exhibit I
Page 747

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

necessarily address fewer claims than are challenged in this Petition (which challenges all claims of the patent), even assuming the District Court addresses validity at all, which is presently unknowable.  *See*, *e.g.*, *Apple v. Seven* at 18.

In short, grounds in this Petition are unique, and will not be addressed in District Court.  *See*, *e.g.*, *Apple v. Seven* at 15-20 (weighing this factor against exercising 314(a) discretion where a petitioner challenged several unasserted claims and stipulated that it would not pursue the IPR grounds in the co-pending litigation).

### E.      Factor 5: The Petition Enables the Board to Resolve Invalidity of Claims that Might Otherwise be Reasserted

Apple's Petition is potentially helpful to future defendants.  For at least this reason, Apple's status as both Petitioner and defendant is, at worst, a neutral factor. Taking the relevant circumstances into account, institution would serve overall efficiency and integrity, enabling the Board to determine invalidity of claims that Patent Owner might otherwise later assert against others.

### F.      Factor 6: Other Circumstances Support Institution

As *Fintiv* noted, "the factors ... are part of a balanced assessment of all the relevant circumstances in the case," and, "if the merits of a ground raised in the petition seem particularly strong … the institution of a trial may serve the interest of

Exhibit I
Page 748

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

overall system efficiency and integrity …." *Fintiv*, 14-15.  As explained in the Petition (and Dr. Kenny's testimony), institution would result in invalidation of the Challenged Claims.

## VI.   CONCLUSION

The cited prior art references disclose or render obvious the Challenged Claims of the '554 patent for the reasons noted hereinabove.  APPLE-1003, ¶¶[0001]-[0322].  Accordingly, Apple respectfully requests institution of an IPR for the Challenged Claims.

## VII.   PAYMENT OF FEES – 37 C.F.R. § 42.103

Apple authorizes the Patent and Trademark Office to charge Deposit Account No. 06-1050 for the fee set in 37 C.F.R. § 42.15(a) for this Petition and further authorizes payment for any additional fees to be charged to this Deposit Account.

Respectfully submitted,

Dated: September 2, 2020

/W. Karl Renner/
W. Karl Renner, Reg. No. 41,265
Andrew B. Patrick, Reg. No. 63,471
Fish & Richardson P.C.
3200 RBC Plaza, 60 South Sixth Street
Minneapolis, MN 55402
T: 202-783-5554
F: 877-769-7945

(Control No. IPR2020-01539)          *Attorneys for Petitioner*

Exhibit I
Page 749

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

## CERTIFICATION UNDER 37 CFR § 42.24

Under the provisions of 37 CFR § 42.24(d), the undersigned hereby certifies that the word count for the foregoing Petition for *Inter partes* Review totals 13,972 words, which is less than the 14,000 allowed under 37 CFR § 42.24.

Dated: September 2, 2020          /W. Karl Renner/
                                  W. Karl Renner, Reg. No. 41,265
                                  Andrew B. Patrick, Reg. No. 63,471
                                  Fish & Richardson P.C.
                                  3200 RBC Plaza, 60 South Sixth Street
                                  Minneapolis, MN 55402
                                  T: 202-783-5070
                                  F: 877-769-7945

                                  *Attorneys for Petitioner*

Exhibit I
Page 750

Attorney Docket No. 50095-0013IP2
IPR of U.S. Patent No. 10,588,554

# CERTIFICATE OF SERVICE

Pursuant to 37 CFR §§ 42.6(e)(4)(i) *et seq.* and 42.105(b), the undersigned

certifies that on September 2, 2020, a complete and entire copy of this Petition for

*Inter partes* Review and all supporting exhibits were provided via Federal Express,

to the Patent Owner by serving the correspondence address of record as follows:

KNOBBE, MARTENS, OLSON & BEAR, LLP
MASIMO CORPORATION (MASIMO)
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE CA 92614

/Diana Bradley/
Diana Bradley
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
(858) 678-5667

1

Exhibit I
Page 751

# Exhibit J

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent of:       Poeze, et al.
U.S. Patent No.:       10,292,628          Attorney Docket No.: 50095-0008IP1
Issue Date:            May 21, 2019
Appl. Serial No.:      16/261,326
Filing Date:           January 29, 2019
Title:                 MULTI-STREAM DATA COLLECTION SYSTEM FOR NONIN-
                       VASIVE MEASUREMENT OF BLOOD CONSTITUENTS

**Mail Stop Patent Board**
Patent Trial and Appeal Board
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

**<u>PETITION FOR *INTER PARTES* REVIEW OF UNITED STATES PATENT
NO. 10,292,628 PURSUANT TO 35 U.S.C. §§ 311–319, 37 C.F.R. § 42</u>**

# TABLE OF CONTENTS

I.   REQUIREMENTS FOR IPR UNDER 37 C.F.R. §42.104...........................1

   A.  Grounds for Standing Under 37 C.F.R. §42.104(a)..................1

   B.  Challenge Under 37 C.F.R. §42.104(b) and Relief Requested ...............1

   C.  Claim Construction under 37 C.F.R. §§42.104(b)(3)............................3

   D.  Level of Ordinary Skill in the Art..........................................3

II.   SUMMARY OF THE '628 PATENT ...................................................4

   A.  Brief Description...................................................................4

   B.  Summary of the Prosecution History of the '628 Patent .......................6

III.   THE CHALLENGED CLAIMS ARE UNPATENTABLE...........................6

   A.  [GROUND-1A] – Claims 1-15, 17, 20-26, and 28 are rendered obvious by Aizawa in view of Inokawa ............................................6

      1.  Overview of Aizawa...........................................................7

      2.  Overview of Inokawa.........................................................9

      3.  Combination of Aizawa and Inokawa.........................................13

      4.  Analysis ...................................................................23

   B.  [GROUND-1B] – Claims 1-15, 17, 20-26, and 28 are rendered obvious by Aizawa in view of Inokawa and Ohsaki ...................43

      1.  Overview of Ohsaki.........................................................43

      2.  Analysis ...................................................................45

   C.  [GROUND-1C] – Claims 18, 19, 29, and 30 are rendered obvious by Aizawa in view of Inokawa, Mendelson-2006, and Beyer ...................46

      1.  Overview of Mendelson-2006...................................................46

      2.  Overview of Beyer .........................................................49

      3.  Combination of Aizawa, Inokawa, Mendelson-2006, and Beyer.50

      4.  Analysis ...................................................................53

   D.  [GROUND-1D] – Claims 18, 19, 29, and 30 are rendered obvious by Aizawa in view of Inokawa, Goldsmith, and Lo ...................55

      1.  Overview of Goldsmith.....................................................55

      2.  Overview of Lo ...........................................................56

      3.  Combination of Aizawa, Inokawa, Goldsmith, and Lo ...............57

      4.  Analysis ...................................................................59

   E.  [GROUND-2A] – Claims 1-17 and 20-28 are rendered obvious by Mendelson-1988 in view of Inokawa .........................................62

      1.  Overview of Mendelson-1988...................................................62

      2.  Combination of Mendelson-1988 and Inokawa........................63

      3.  Analysis ...................................................................67

    **F.**   [GROUND-2B] – Claims 18, 19, 29, and 30 are rendered obvious by Mendelson-1988 in view of Inokawa, Mendelson-2006, and Beyer......87

        1.   Combination of Mendelson-1988, Inokawa, Mendelson-2006, and Beyer Jr..................................................................................87

        2.   Analysis ................................................................................90

**IV.**   PAYMENT OF FEES – 37 C.F.R. §42.103 ........................................................93

**V.**    PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION..........93

    A.  Factor 1: Institution will increase the likelihood of stay ......................93

    B.  Factor 2: District Court schedule ..........................................................94

    C.  Factor 3: Apple's investment in IPR outweighs forced investment in litigation to date ................................................................................94

    D.  Factor 4: The Petition raises unique issues ...........................................95

    E.  Factor 5: Institution would provide the Board an opportunity to invalidate claims that could later be reasserted against others ..............96

    F.  Factor 6: Other circumstances support institution ................................97

**VI.**   CONCLUSION...............................................................................................97

**VII.**  MANDATORY NOTICES UNDER 37 C.F.R §42.8(a)(1).........................98

    **A.**  Real Party-In-Interest Under 37 C.F.R. §42.8(b)(1)...........................98

    **B.**  Related Matters Under 37 C.F.R. §42.8(b)(2) ......................................98

    **C.**  Lead And Back-Up Counsel Under 37 C.F.R. §42.8(b)(3)...................98

    **D.**  Service Information ...............................................................................99

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

# EXHIBITS

| APPLE-1001 | U.S. Patent No. 10,292,628 to Poeze, et al. ("the '628 patent") |
|---|---|
| APPLE-1002 | Excerpts from the Prosecution History of the '628 Patent ("the Prosecution History") |
| APPLE-1003 | Declaration of Dr. Thomas W. Kenny |
| APPLE-1004 | Curriculum Vitae of Dr. Thomas W. Kenny |
| APPLE-1005 | *Masimo Corporation, et al. v. Apple Inc.,* Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.) |
| APPLE-1006 | U.S. Pub. No. 2002/0188210 ("Aizawa") |
| APPLE-1007 | JP 2006-296564 ("Inokawa") |
| APPLE-1008 | Certified English Translation of Inokawa and Translator's Declaration |
| APPLE-1009 | U.S. Pat. No. 7,088,040 ("Ducharme") |
| APPLE-1010 | U.S. Pat. No. 8,177,720 ("Nanba") |
| APPLE-1011 | RESERVED |
| APPLE-1012 | RESERVED |
| APPLE-1013 | RESERVED |
| APPLE-1014 | U.S. Pub. No. 2001/0056243 ("Ohsaki") |
| APPLE-1015 | "Design and Evaluation of a New Reflectance Pulse Oximeter |

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

Sensor," Y. Mendelson, et al.; Worcester Polytechnic Institute, Biomedical Engineering Program, Worcester, MA 01609; Association for the Advancement of Medical Instrumentation, vol. 22, No. 4, 1988; pp. 167-173 ("Mendelson-1988")

APPLE-1016     "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Y. Mendelson, et al.; Proceedings of the 28th IEEE EMBS Annual International Conference, 2006; pp. 912-915 ("Mendelson-2006")

APPLE-1017     RESERVED

APPLE-1018     "Acrylic: Strong, stiff, clear plastic available in a variety of brilliant colors," available at https://www.curbellplastics.com/Research-Solutions/Materials/Acrylic

APPLE-1019     U.S. Pat. No. 7,031,728 ("Beyer")

APPLE-1020     U.S. Pat. No. 7,092,735 ("Osann, Jr.")

APPLE-1021     U.S. Pat. No. 6,415,166 ("Van Hoy")

APPLE-1022     QuickSpecs; HP iPAQ Pocket PC h4150 Series

APPLE-1023     U.S. Pub. No. 2007/0145255 ("Nishikawa")

APPLE-1024     "Measurement Site and Photodetector Size Considerations in Optimizing Power Consumption of a Wearable Reflectance Pulse Oximeter," Y. Mendelson, et al.; Proceedings of the 25th IEEE EMBS Annual International Conference, 2003; pp. 3016-3019 ("Mendelson-2003")

APPLE-1025     U.S. Pat. No. 6,801,799 ("Mendelson-'799")

APPLE-1026     Declaration of Jacob Munford

APPLE-1027     U.S. Pub. No. 2007/0093786 ("Goldsmith")

APPLE-1028     U.S. Pub. No. 2004/0138568 ("Lo")

iv

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

APPLE-1029    Wikipedia: The Free Encyclopedia, "Universal asynchronous receiver-transmitter" at https://en.wikipedia.org/wiki/Universal_asynchronous_receiver-transmitter, last accessed 08/27/2020

APPLE-1030    RESERVED

APPLE-1031    Scheduling Order, *Masimo v. Apple et al.*, Case 8:20-cv-00048, Paper 37 (April 17, 2020)

APPLE-1032    Stipulation by Apple

APPLE-1033    Telephonic Status Conference, *Masimo v. Apple et al.*, Case 8:20-cv-00048, Paper 78 (July 13, 2020)

APPLE-1034    Joseph Guzman, "Fauci says second wave of coronavirus is 'inevitable'", TheHill.com (Apr. 29, 2020), available at: https://thehill.com/changing-america/resilience/natural-disasters/495211-fauci-says-second-wave-of-coronavirus-is

APPLE-1035    "Tracking the coronavirus in Los Angeles County," LATimes.com (Aug. 20, 2020), available at https://www.latimes.com/projects/california-coronavirus-cases-tracking-outbreak/los-angeles-county/

v

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

Apple Inc. ("Petitioner" or "Apple") petitions for *inter partes* review

("IPR") under 35 U.S.C. §§311–319 and 37 C.F.R. §42 of claims 1-30 ("the Chal-

lenged Claims") of U.S. Patent No. 10,292,628 ("'628 patent").  As explained in

this petition, there exists a reasonable likelihood that Apple will prevail with re-

spect to at least one of the Challenged Claims.

## I.     REQUIREMENTS FOR IPR UNDER 37 C.F.R. §42.104

### A.     Grounds for Standing Under 37 C.F.R. §42.104(a)

Apple certifies that the '628 Patent is available for IPR.  The present petition

is being filed within one year of service of a complaint against Apple in *Masimo*

*Corporation, et al. v. Apple Inc.,* Civil Action No. 8:20-cv-00048 (C.D. Cal.).  Ap-

ple is not barred or estopped from requesting this review challenging the Chal-

lenged Claims on the below-identified grounds.

### B.     Challenge Under 37 C.F.R. §42.104(b) and Relief Requested

Apple requests an IPR of the Challenged Claims on the grounds set forth in

the table below, and requests that each of the Challenged Claims be found un-

patentable.  Additional explanation and support is set forth in APPLE-1003, the

Declaration of Dr. Thomas W. Kenny.  *See* APPLE-1003, ¶¶20-239.

| Ground | Claims | Basis for Rejection |
|---|---|---|
| **Ground-1A** | **1-15, 17, 20-26, 28** | §103 over Aizawa, Inokawa |
| **Ground-1B** | **1-15, 17, 20-26, 28** | §103 over Aizawa, Inokawa, Ohsaki |

Exhibit J
Page 759

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

| Ground | Claims | Basis for Rejection |
|---|---|---|
| **Ground-1C** | **18, 19, 29, 30** | §103 over Aizawa, Inokawa, Mendelson-2006, Beyer |
| **Ground-1D** | **18, 19, 29, 30** | §103 over Aizawa, Inokawa, Goldsmith, Lo, |
| **Ground-2A** | **1-17, 20-28** | §103 over Mendelson-1988, Inokawa |
| **Ground-2B** | **18, 19, 29, 30** | §103 over Mendelson-1988, Inokawa, Mendelson-2006, Beyer |

The '628 patent claims priority to a number of U.S. patent applications, the earliest of which was filed on 07/02/2009, as well as to a number of U.S. provisional applications, the earliest of which was filed on 07/03/2008.  APPLE-1001, Cover.  Solely for purposes of evaluating prior art in this proceeding and without conceding the propriety of these priority claims, this Petition will treat 07/03/2008, as the earliest alleged effective filing date (*i.e.,* the "Earliest Claimed Date") of the '628 patent.  The references relied on in the above grounds qualify as prior art to the '628 patent under either date, at least under the sections shown in the following table.  *See* APPLE-1026.  None of these references were considered during prosecution of the '628 patent.  APPLE-1002.

| Reference | Qualifying Date | Earliest Claimed Date |
|---|---|---|
| **Aizawa** | 12/12/2002 | 102(b) |
| **Inokawa** | 11/02/2006 | 102(b) |
| **Ohsaki** | 12/27/2001 | 102(b) |
| **Mendelson-1988** | August-1988 | 102(b) |

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

| Reference | Qualifying Date | Earliest Claimed Date |
|-----------|-----------------|------------------------|
| Mendelson-2006 | 12/26/2007 | 102(a) |
| Beyer | 04/14/2006 | 102(b) |
| Goldsmith | 04/26/2007 | 102(b) |
| Lo | 07/15/2004 | 102(b) |

## C. Claim Construction under 37 C.F.R. §§42.104(b)(3)

Petitioner submits that all claim terms should be construed according to the *Phillips* standard. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); 37 C.F.R. §42.100. Here, based on the evidence below and the prior art's description of the claimed elements being similar to that of the '628 patent specification, no formal claim constructions are necessary in this proceeding because "claim terms need only be construed to the extent necessary to resolve the controversy." *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011).

## D. Level of Ordinary Skill in the Art

A person of ordinary skill in the art relating to the subject matter of the '628 patent as of 07/03/2008 ("POSITA") would have been a person with a working knowledge of physiological monitoring technologies. The person would have had a Bachelor of Science degree in an academic discipline emphasizing the design of electrical, computer, or software technologies, in combination with training or at least one to two years of related work experience with capture and processing of

3

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

data or information, including but not limited to physiological monitoring technologies.  APPLE-1003, ¶¶21-22.  Alternatively, the person could have also had a Master of Science degree in a relevant academic discipline with less than a year of related work experience in the same discipline.  *Id*

## II.    SUMMARY OF THE '628 PATENT

### A.    Brief Description

The '628 patent is directed to "noninvasive methods, devices, and systems for measuring...physiologically relevant patient characteristics."  APPLE-1001, 2:22-28; APPLE-1003, ¶¶43-51.  "These characteristics can relate, for example, to pulse rate, hydration, trending information and analysis, and the like."  APPLE-1001., 2:28-30.

As illustrated in FIG. 1, the '628 patent describes a system that "include[s] a sensor 101 (or multiple sensors) that is coupled to a processing device or physiological monitor 109," where "the sensor 101 and the monitor 109 are integrated together into a single unit" or "separate from each other and communicate one with another in any suitable manner, such as via a wired or wireless connection."  *Id.*, 11:36-43.

4

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1001, FIG. 1.

In use, "the detectors 106 can capture and measure light transmitted from the emitter 104 that has been attenuated or reflected from the tissue in the measurement site 102." and "[t]he detectors 106 can output a detector signal 107 responsive to the light captured or measured." *Id.*, 13:60-66. The signal can correspond to, for instance, the pulse rate of the user. *Id.*, 2:28-30; APPLE-1003, ¶46. Although the '628 patent mostly describes a transmittance-type measurement device where the emitter and the detector are positioned on opposite sides of the measurement site, the claims do not distinguish over a reflectance-type device where the emitter and the detector are positioned on the same side of the measurement site. *See id.*, 13:61-64, 26:15-16; APPLE-1003, ¶¶47-48.

The '628 patent further describes that its sensor can include a plurality of detectors that are disposed within a housing and covered by a transparent cover (*i.e.*,

5

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

light permeable cover) having a protrusion.  APPLE-1001, 36:7-26, 14D; APPLE-1003, ¶49.

## B.    Summary of the Prosecution History of the '628 Patent

U.S. Patent No. 10,292,628 issued on 05/21/2019 from U.S. Patent Application No. 16/261,326 ("the '326 application"), which was filed on 01/29/2019.  APPLE-1001, Cover.  The face of the patent alleges an earliest possible priority date of 07/03/2008 through a chain of parent applications.  *Id.*  The '326 application was not subject to any substantive office action and was allowed on 03/08/2019.  APPLE-1002, 250-260.  In allowing the application, the examiner amended, via an examiner's amendment, the then independent claim 2 to add the plurality of detectors "are configured to receive light passed through the outwardly protruding convex surface after attenuation by tissue of the user" and also amended then independent claims 8 and 21 to recite similar features concerning the "protruding surface," in so doing suggesting that the prior art of record didn't disclose such features.  *Id.*  As will be detailed in this Petition, these and other claimed features were well-known at the time of the '628 patent, and, had the examiner been aware of the prior advanced in this Petition, the application would not have been allowed.

## III.    THE CHALLENGED CLAIMS ARE UNPATENTABLE

### A.    [GROUND-1A] – Claims 1-15, 17, 20-26, and 28 are rendered obvious by Aizawa in view of Inokawa

Exhibit J
Page 764

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

## 1.    Overview of Aizawa

Aizawa is titled "Pulse Wave Sensor and Pulse Rate Detector" and describes a "pulse wave sensor for detecting a pulse wave by detecting light output from a light emitting diode and reflected from the artery of a wrist of a subject." APPLE-1006, Abstract; APPLE-1003, ¶¶52-57.

As illustrated below, Aizawa's sensor device detects a user's pulse wave by using an emitter, namely LED 21 (shown in green), to emit light that is picked up by photodetectors 22 (shown in red) that are arranged around the LED. APPLE-1006, [0023].  In particular, "[n]ear infrared radiation output toward the wrist 10 from the light emitting diode 21 is reflected by a red corpuscle running through the artery 11 of the wrist 10 and this reflected light is detected by the plurality of photodetectors 22 so as to detect a pulse wave." *Id.*, [0027].



APPLE-1006, FIGS. 1(a)-1(b); APPLE-1003, ¶53.

Exhibit J
Page 765

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

Although the example configuration above provides one emitter and four detectors, Aizawa teaches that more detectors may be provided to "further improve detection efficiency." APPLE-1006, [0032]. In some cases, "a plurality of light emitting diodes 21" may be provided. *Id.*, [0033].

As shown below, the pulse rate detector of Aizawa is designed to be worn on the wrist such that the emitter/detector assembly faces the wrist:



APPLE-1006, [0026]; APPLE-1003, ¶57. The emitter/detector assembly is encased within a circular housing, shown in red above.

Aizawa further teaches a light permeable cover in the form of an acrylic transparent plate 6 (blue) that is mounted at the detection face 23a:

8

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



Light permeable cover

APPLE-1006, FIG. 1(b), [0023]; APPLE-1003, ¶¶55-56.  This transparent plate

not only provides a light permeable cover that covers the emitter/detector assembly

but also provides improved adhesion between the detector and the wrist to "im-

prov[e] the detection efficiency of a pulse wave."  APPLE-1006, [0030].

## 2. Overview of Inokawa

Inokawa teaches an "optical vital sensor is a pulse sensor 1 that is able to

sense the pulse, etc. by being attached, for example, to a person's finger or wrist."

9

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

APPLE-1008, [0056];[1]  APPLE-1003, ¶¶58-62.  As seen below, the pulse sensor of

Inokawa can be attached the user's wrist using a wristband 5:



APPLE-1008, FIG. 1, [0057].

Referring to FIG. 2 below, Inokawa senses pulse by using a photodiode de-

tector 25 (shown in red) to receive "light reflected off of the body."  APPLE-1008,

[0058].  Inokawa teaches that "sensor-side light-emitting means of various kinds,

such as an infrared LED or a green LED" can be used and that "work can be di-

vided between" them as needed.  APPLE-1008, [0014].  For example, green light

---

[1] JP 2006-296564 to Inokawa (APPLE-1007) was published in Japanese.  Thus, all

citations to Inokawa are to its English translation (APPLE-1008).

10

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

from LED 21 (shown in green) can be used to sense pulse while infrared light from LED 23 (shown in purple) can be used to sense body motion.  *Id*., [0058]-[0059].



APPLE-1008, FIG. 2; APPLE-1003, ¶59.

Inokawa teaches a lens 27 that can be "placed on the surface of the sensor-side light-emitting means" to "make[] it possible to increase the light-gathering ability of the LED as well as to protect the LED or PD."  APPLE-1008, [0015], [0058].  As further detailed below, such a lens corresponds to the light permeable cover comprising a protrusion as recited in claim 1 of the '628 patent.  APPLE-1003, ¶60.

11

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1008, FIG. 2.

As shown in FIG. 3 below, Inokawa teaches that its wrist sensor (red) can be mounted onto a base device (blue) that acts as a "charger with communication functionality":



12

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

APPLE-1008, FIG. 3, [0060]; APPLE-1003, ¶61.  Vital sign information can be transmitted from the sensor to the base device by using the same LEDs used to measure pulse and body motion.  *See id.*, [0066]-[0077], [0109]-[0111].  Referring to FIG. 7, Inokawa teaches that vital sign information from the sensor can be transmitted to a PC (purple) via the base device:



APPLE-1008, FIG. 7, [0066]-[0077]; APPLE-1003, ¶62

### 3.    Combination of Aizawa and Inokawa

As explained above in Section III.A.1, Aizawa discloses a pulse wave sensor that works by emitting light from an LED that is subsequently reflected by red corpuscles in the artery and then detected by a plurality of photodetectors.  Further, Aizawa teaches a light permeable cover, which is mounted at the detection face of

Exhibit J
Page 771

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

the device, through which the emitted/reflected light passes. *Id*. As detailed below, a POSITA would have been motivated to combine Aizawa and Inokawa ("Aizawa-Inokawa") to obtain additional benefits. APPLE-1003, ¶¶73-85, 89-98.

(a)   Protrusion

Beyond Aizawa's disclosure that its light permeable cover is an acrylic transparent plate that helps improve "detection efficiency," Aizawa does not provide much other detail, for instance regarding its shape. APPLE-1006, [0030]. A POSITA would have realized that the plate could have a shape that for achieving Aizawa's objective of improving detection efficiency. APPLE-1006, [0013], [0030], [0032]; APPLE-1003, ¶¶89-96.

A POSITA would have looked to Inokawa to enhance light collection efficiency, specifically by modifying the light permeable cover of Aizawa to include a convex lens. APPLE-1003, ¶¶91-92. As discussed above in Section III.A.2, Inokawa discloses a side lens 27:

14

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1008, FIG. 2; APPLE-1003, ¶92.  Inokawa further discloses that the "lens makes it possible to increase the light-gathering ability of the LED."  APPLE-1008, [0015].  Thus, a POSITA would have sought to incorporate an Inokawa-like lens into the cover of Aizawa to increase light collection efficiency, thereby leading to an improved signal-to-noise ratio and more reliable pulse detection.  APPLE-1003, ¶93.  The lens of Inokawa provides precisely such a benefit to Aizawa's device by refracting/concentrating incoming light signals reflected by the blood. *Id*.

As illustrated below, the device resulting from the obvious combination of Aizawa and Inokawa would have replaced the flat cover (left) with a curved one as per Inokawa (right) to "increase the light-gathering ability."  APPLE-1008, [0015].

Exhibit J
Page 773

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1006, FIG. 1(b); APPLE-1003, ¶94.

A POSITA would have understood how to implement Inokawa's lens-shaped cover in Aizawa's device with a reasonable expectation of success, stemming from the significant overlap across the references in their teaching.  APPLE-1003, ¶95.  For example, as illustrated below, Inokawa teaches that its cover may be either flat (left) such that "the surface is less prone to scratches," Inokawa at [0106], or in the form of a lens (right) to "increase the light-gathering ability of the LED."  Inokawa at [0015].

Exhibit J
Page 774

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1008, FIG. 17 (left), FIG. 16 (right); APPLE-1003, ¶95.  A POSITA would have further recognized that the transparent acrylic material used to make Aizawa's plate can be readily formed into a lens-like shape as in Inokawa.  APPLE-1003, ¶96 (citing to APPLE-1009 at 3:46-51, FIG. 1, APPLE-1023, FIG. 6, [0022], [0032], [0035]).  Thus, a POSITA wanting to achieve improved light collection efficiency over reduced scratch-susceptibility could have modified Aizawa's cover to have a lens shape as per Inokawa.  *Id.*

The above-described modification would require only routine knowledge of sensor design and assembly, which were well within the skill of a POSITA prior to the Critical Date.  *Id.*  Thus, to achieve Aizawa's and Inokawa's shared goal of improving light collection efficiency, a POSITA would have been motivated to modify Aizawa's light permeable cover to have a lens shape as per Inokawa with a reasonable expectation of success.  *Id.*

17

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

(b)    <u>Plurality of emitters</u>

As described in Section III.A.1, Aizawa discloses a pulse wave sensor in which multiple detectors are disposed around a centrally located LED/emitter.  APPLE-1006, [0023].  While Aizawa further contemplates the use of multiple emitters, Aizawa never specifically identifies the use of multiple emitters operating at different wavelengths in conjunction with multiple detectors.  *Id.*, [0033]; APPLE-1003, ¶¶73-85.

In this context, Inokawa discloses using two different types of emitters "such as an infrared LED or a green LED" and that "work can be divided between the various means, with an infrared LED used to detect vital signs and transmit vital sign information, and a green LED used to detect pulse."  APPLE-1008, [0014]; *see also id.*, [0044], [0058], [0059]; APPLE-1003, ¶74.

A POSITA reviewing Aizawa and Inokawa would have recognized Inokawa's use of two different emitters operating at different wavelengths as a desirable configuration that would reap similar benefits for Aizawa.  APPLE-1003, ¶75.  For example, while Aizawa only expressly mentions using "light having a wavelength of an infrared range" to detect the pulse rate, Inokawa discloses dividing the role of a single LED into two different LEDs, specifically "with an infrared LED used to detect vital signs and transmit vital sign information, and a green LED used to detect pulse."  APPLE-1008, [0014], [0044], [0058], [0059].  A POSITA would

18

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

have recognized, in view of Inokawa, that providing an additional emitter to Aizawa would allow Aizawa's device to use its existing infrared LED to detect body motion while using the added green LED to detect pulse.  *Id.*, [0059].  Indeed, Inokawa expressly teaches that its "infrared LED 23 serves to sense body motion from the change in this reflected light" and that its "green LED 21" is used to "sense the pulse from the light reflected off of the body."  APPLE-1008, [0059].  Various other prior art pulse sensing devices teach using a first LED emitting at less than 600 nm (*e.g.*, green) for measuring blood flow and a second LED emitting at greater than 600 nm (*e.g.*, infrared) for measuring body movement.  APPLE-1003, ¶75 (citing to APPLE-1010, 8:45-50).  The added ability to measure body movement can allow for a more reliable pulse measurement that takes into account and corrects for inaccurate readings stemming from body movement.  *Id*.  Thus, a POSITA would have been motivated and found it obvious to divide the single emitter of Aizawa, as shown below, into two emitters operating at two different wavelengths.  APPLE-1003, ¶76.



APPLE-1006, Fig. 1(b).

A POSITA would have found it obvious to modify Aizawa with Inokawa to add an additional emitter because doing so merely entails the use of known solutions to improve similar systems and methods in the same way.  APPLE-1003, ¶¶77-78.  Indeed, "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 417 (2007).  A POSITA would have recognized that applying Inokawa's teachings regarding two different LEDs to Aizawa's sensor would have led to predictable results without significantly altering or hindering the functions performed by Aizawa's sensor.  APPLE-1003, ¶¶77-78.  A POSITA would have been motivated to provide the well-known feature of providing multiple emitters to a pulse sensor to achieve the predictable benefits offered by Inokawa's description of the same.  *Id.*  In fact, Aizawa itself contemplates the addition of extra emitters, albeit for a different purpose.  APPLE-1006, [0033].

In addition to the above-described rationale for adding an extra emitter to Aizawa, **Inokawa provides another, or alternative, motivation** for improving Aizawa by adding a second LED/emitter.  Specifically, Aizawa contemplates uploading data to a base device yet is silent about how such data transmission would

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

be implemented, instead leaving such implementation details to the POSITA.  AP-PLE-1006, [0015], [0023], [0035]; APPLE-1003, ¶¶79-80.  In this context, as described above in Section III.A.2 and illustrated below, Inokawa teaches a base device 17 (blue) that is able to both charge and receive data from the pulse sensor 1 (red):



APPLE-1008, FIG. 3, [0060].  By using the sensor's infrared emitter to transmit data, "it is not necessary to use a wireless communication circuit or to establish connections via communication cable, which makes it possible to easily transmit vital sign information with few malfunctions and with a simple structure."  AP-PLE-1008, [0007].  A POSITA would have been motivated and found it obvious and straightforward to incorporate Inokawa's base device and LED-based data transmission into Aizawa to, for instance, "make[] it possible to transmit vital sign information to the base device 17 accurately, easily, and without malfunction."  *Id,*

21

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

[0077].  A POSITA would have further recognized that incorporating Inokawa's base device and LED-based data transmission would allow Aizawa to upload data from its sensor in a way that is wireless (thus avoiding the problems of a physical cable) and that does not require a separate RF circuit.  *Id*.; APPLE-1003, ¶81.

Notably, Inokawa's sensor is able to transmit data using only a single IR LED.  APPLE-1008, [0062].  However, with reference to FIG. 19 below, Inokawa further teaches that using ***two LEDs*** further helps improve data transmission accuracy by using the second LED, such as green LED, to transmit checksum information such that "the accuracy of data can be increased."  *Id.*, [0111], [0044], [0048]; APPLE-1003, ¶82.



APPLE-1008, FIG. 19.  Thus, a POSITA would have been motivated and found it obvious to supplement Aizawa's IR LED/emitter with a green LED/emitter to, as

22

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

per Inokawa, improve accuracy of data transmission from its sensor.  APPLE-1003, ¶83

A POSITA would have found it obvious to modify Aizawa with Inokawa in this manner because doing so entails the use of known solutions to improve similar systems and methods in the same way.  APPLE-1003, ¶¶84-85; *see KSR*, 550 U.S. at 417.  A POSITA would have recognized that applying Inokawa's base device and dual-LED-based data transmission to Aizawa's sensor would have led to predictable results without significantly altering or hindering the functions performed by Aizawa's sensor.  APPLE-1003, ¶¶84-85.  Indeed, a POSITA would have had a reasonable expectation of success in making this modification, and would have reasonably expected to reap benefits of simple and accurate data transmission.  *Id.*

### 4.  Analysis

**Claim 1**
**[1pre]: "A noninvasive optical physiological sensor comprising:"**

To the extent the preamble is limiting, Aizawa-Inokawa renders obvious [1.pre].  APPLE-1003, ¶72.  For example, Aizawa discloses a pulse sensor that is designed to "detect[] the pulse wave of a subject from light reflected from a red corpuscle in the artery of a wrist of the subject by irradiating the artery of the wrist[.]"  APPLE-1006, [0002].  Aizawa's sensor is designed to be worn on the user's wrist:

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1006, FIG. 2, [0026].

## [1a]: "a plurality of emitters configured to emit light into tissue of a user;"

As explained above in Section III.A.3, Inokawa discloses emitting into the tissue of a user two different wavelengths (using two different emitters), and a POSITA would have found it obvious to incorporate the two LEDs of Inokawa into Aizawa, as illustrated below.  *Supra* Section III.A.3.



APPLE-1006, Fig. 1(b); APPLE-1003, ¶¶73-85.

24

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

It would have been obvious to split the single LED/emitter of Aizawa into two LEDs/emitters having different wavelengths to (i) acquire body motion information for improved pulse detection and/or (ii) more reliably transmit information from the sensor to a base device with less error.  APPLE-1008, [0007], [0014], [0044], [0048], [0058], [0058], [0059], [0060], [0062], [0077], [0111]; APPLE-1003, ¶¶73-85.

**[1b]: "a plurality of detectors configured to detect light that has been attenuated by tissue of the user, wherein the plurality of detectors comprise at least four detectors;"**

Aizawa discloses "*four photodetectors 22*."  APPLE-1006, [0029], [0024], [0032].



APPLE-1006, FIG. 1(a); APPLE-1003, ¶86.

Exhibit J
Page 783

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

The photodetectors 22 (*i.e.,* detectors) of Aizawa detect light "reflected by a red corpuscle running through the artery 11 of the wrist 10...so as to detect a pulse wave."  APPLE-1006, [0027].  Thus, the detectors of Aizawa "detect light that has been attenuated by tissue of the user."  APPLE-1003, ¶87.

**[1c]: "a housing configured to house at least the plurality of detectors; and"**

Aizawa discloses "a holder 23 for storing the above light emitting diode 21 and the photodetectors 22."  APPLE-1006, [0023], [0024].



APPLE-1006, FIGS. 1(1)-(b); APPLE-1003, ¶88.

Exhibit J
Page 784

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

**[1d]:** **"a light permeable cover configured to be located between tissue of the user and the plurality of detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises an outwardly protruding convex surface configured to cause tissue of the user to conform to at least a portion of the outwardly protruding convex surface when the noninvasive optical physiological sensor is worn by the user and during operation of the noninvasive optical physiological sensor, and wherein the plurality of detectors are configured to receive light passed through the outwardly protruding convex surface after attenuation by tissue of the user."**

Aizawa teaches a light permeable cover in the form of an acrylic transparent plate 6 (blue) that is mounted at the detection face 23a over at least a portion of the housing to cover the at least four detectors (red):



APPLE-1006, FIG. 1(b), [0023]; APPLE-1003, ¶89.  As seen above, the acrylic plate of Aizawa is located between tissue of the user and the plurality of detectors when the noninvasive optical physiological sensor is worn by the user.

27

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

The combination of Aizawa and Inokawa, as described above in Section
III.A.3(a) and incorporated herein, provides a cover having "an outwardly protrud-
ing convex surface configured to cause tissue of the user to conform to at least a
portion of the outwardly protruding convex surface."  APPLE-1008, FIG. 2,
[0015], [0030], [0039], [0058], [0099], [0107].  As noted, a POSITA would have
been motivated and found it obvious to modify the flat acrylic plate of Aizawa, as
illustrated below, to further Aizawa's objective of enhancing its light-collection ef-
ficiency.  APPLE-1006, [0013], [0030], [0032]; APPLE-1008, [0015]; APPLE-
1003, ¶¶93-94.



APPLE-1006, FIG. 1(b).  Thus, reflected light headed toward the detectors is re-
fracted and condensed as it passes the lens/protrusion.  APPLE-1008, [0015],
[0058]; APPLE-1003, ¶93.

As for conforming of the tissue as claimed, the light permeable cover of Aizawa is designed to be pressed on to the skin of the user with pressure.  APPLE-1006, [0006], [0026]; APPLE-1003, ¶¶97-98.  Pressing into the skin in such a manner will cause at least some of the tissue to conform around the protruding surface because the skin is more pliable than an acrylic plate, for example as demonstrated by Inokawa:



APPLE-1008, FIG. 2.

Similarly, applying the lens/protrusion of Inokawa to Aizawa in the manner described above in Section III.A.3(a) will cause the tissue of the user to further conform around the convex surface of the lens/protrusion when the device is pressed against the tissue, as shown below:

29

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1006, FIG. 1(b); APPLE-1003, ¶¶97-98.

## Claim 2

**[2]: "The noninvasive optical physiological sensor of claim 1, wherein the plurality of detectors are arranged on a two-dimensional surface of the housing."**

As discussed for [1c] and further illustrated below, Aizawa discloses a "a

holder 23 for storing the above light emitting diode 21 and the photodetectors 22"

and a two-dimensional surface (brown) on which the holder 23 and the detectors

are arranged:

30

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1006, FIG. 1(b), [0023], [0024]; APPLE-1003, ¶¶99-100.  As seen above, the four detectors, which are connected to a drive circuit 24 on the other side of the housing, are arranged on the two-dimensional surface of the housing.  *Id.*

## Claim 3

**[3]: "The noninvasive optical physiological sensor of claim 2, wherein a first detector and a second detector of the plurality of detectors are arranged across from each other on opposite sides of a central point along a first axis, and a third detector and a fourth detector of the plurality of detectors are arranged across from each other on opposite sides of the central point along a second axis which is perpendicular to the first axis."**

As illustrated below, the four detectors of Aizawa are arranged relative to a central point and first/second axes in the manner claimed, with the first/second axes being perpendicular to each other:

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1006, FIG. 1(a); APPLE-1003, ¶¶101-102.

## Claim 4
**[4]: "The noninvasive optical physiological sensor of claim 3, wherein the light permeable cover is comprised of a rigid material."**

The light permeable cover of Aizawa, as modified by Inokawa, would be made of transparent acrylic, which is a well-known rigid material.  APPLE-1006, [0023], [0026], [0030], [0034]; APPLE-1003, ¶103 (citing to APPLE-1018 ("Acrylic is a transparent plastic material with outstanding strength, stiffness, and optical clarity.)).  To the extent Patent Owner argues the lens/protrusion of Aizawa-Inokawa is not rigid, a POSITA would have found it obvious to use a rigid material to form the lens/protrusion of Aizawa-Inokawa because a rigid lens better preserves its shape and, thereby, offers improved optical performance relative to a

32

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

pliable lens.  APPLE-1003, ¶104.  Such a rigid lens would provide improved optical performance and light-gathering ability compared to a non-rigid lens that may partially or completely lose its shape during use, degrading its optical properties. *Id.*

## Claim 5
**[5]: "The noninvasive optical physiological sensor of claim 4, wherein the at least four detectors are evenly spaced from one another."**

Aizawa-Inokawa renders obvious [5].  *Supra* Ground-1A [1b].  As shown below, the four detectors of Aizawa are evenly spaced from one another:



APPLE-1006, FIG. 1(a); APPLE-1003, ¶105.

## Claim 6
**[6]: "The noninvasive optical physiological sensor of claim 5, wherein the outwardly protruding convex surface is a single outwardly protruding convex surface."**

Aizawa-Inokawa renders obvious [6].  *Supra* Ground-1A [1d], Section

III.A.3(a).  As shown below, the lens/protrusion of Inokawa that is incorporated

into Aizawa is a single outwardly protruding convex surface:



APPLE-1008, FIG. 2; APPLE-1003, ¶¶106-107.


## Claim 7
**[7pre]: "An optical physiological measurement device comprising:"**

*Supra* Ground-1A [1pre].  For example, Aizawa's pulse rate detector 1 is de-

signed to be a wristwatch-like device that is to be worn on the user's wrist using a

belt 7 that attaches the detector to the user.  APPLE-1006, FIG. 2, [0023], [0026];

APPLE-1003, ¶108.  In this manner, the detector 1 and belt 7 of Aizawa together

provide the optical physiological measurement device.  *Id.*

**[7a]: "a plurality of emitters configured to emit light into tissue of a user;"**

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

*Supra* Ground-1A [1a] and Section III.A.3(b); APPLE-1003, ¶109.

**[7b]: "a circular housing including a planar surface;"**

Aizawa discloses a "a holder 23 for storing the above light emitting diode 21

and the photodetectors 22."  APPLE-1006, [0023], [0024].  Moreover, as shown

below, Aizawa includes a planar surface (brown) on which the holder 23 is placed:



APPLE-1006, FIG. 1(b); APPLE-1003, ¶110.  The holder and the planar surface

together provide the claimed housing (green).  Referring to FIG. 1(b) above and

FIG. 1(a) below, Aizawa's housing is circular in shape:

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



Apple-1006, FIG. 1(a); APPLE-1003, ¶111.

**[7c]: "at least four detectors arranged on the planar surface of the circular housing, wherein the four detectors are arranged in a grid pattern; and"**

Aizawa discloses "*four photodetectors 22* disposed around the light emitting diode 21 symmetrically on a circle concentric to the light emitting diode 21."  APPLE-1006, [0029], [0024], [0032].  As seen below, the four detectors form a grid pattern:

Exhibit J
Page 794

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



FIG. 1 (a)

APPLE-1006, FIG. 1(a); APPLE-1003, ¶112.  Moreover, as seen below, the four detectors of Aizawa, which are connected to a drive circuit 24 on the other side of the housing, are arranged on the planar surface of the housing:



APPLE-1006, FIG. 1(b); APPLE-1003, ¶¶113-114.

37

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

**[7d]: "a light permeable cover of the circular housing, wherein at least a portion of the cover comprises a protruding surface that is arranged to allow passage of light to the at least four detectors after attenuation by tissue of the user."**

*Supra* Ground-1A [1d]; APPLE-1003, ¶¶115-116.

## Claim 8

**[8]: "The optical physiological measurement device of claim 7, wherein the cover is configured to cause tissue of the user to conform to at least a portion of the protruding surface of the cover when the optical physiological measurement device is worn by the user."**

Aizawa-Inokawa renders obvious [8].  *Supra* Ground-1A [1d].  As explained for [1d], the light permeable cover of Aizawa-Inokawa deforms the tissue around the lens/protrusion when pressed against the wrist of the user.  APPLE-1003, ¶¶117-118.  Thus, the light permeable cover causes tissue of the user to conform to at least a portion of the protruding surface of the cover  *Id.*

**[9]: "The optical physiological measurement device of claim 8, wherein the four detectors are arranged in the grid pattern such that a first detector and a second detector are arranged across from each other on opposite sides of a central point along a first axis, and a third detector and a fourth detector are arranged across from each other on opposite sides of the central point along a second axis which is perpendicular to the first axis."**

As discussed for Ground-1A [7c], the four detectors of Aizawa are arranged in a grid pattern, and are further arranged relative to a central point and first/second axes in the manner claimed, with the first/second axes being perpendicular to each other:

38

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1006, FIG. 1(a); APPLE-1003, ¶119.

**[10]: "The optical physiological measurement device of claim 9, wherein the cover is comprised of a rigid material."**

*Supra* Ground-1A [4]; APPLE-1003, ¶120.

**[11]: "The optical physiological measurement device of claim 10, wherein the cover is configured to be positioned between the at least four detectors and tissue of a user when the optical physiological measurement device is worn by the user."**

Aizawa-Inokawa renders obvious [11]. *Supra* Ground-1A [1d]. In particular, as shown below, the light permeable cover of Aizawa is, when worn, positioned between the detectors and the tissue of the user:

Exhibit J
Page 797



APPLE-1006, FIG. 1(b); APPLE-1003, ¶121.  The light permeable cover of Ai-

zawa as modified in view of Inokawa is similarly positioned:



APPLE-1006, FIG. 1(b); APPLE-1003, ¶122.


**[12]: "The optical physiological measurement device of claim 11, wherein the
cover is configured to press against and at least partially deform tissue of
the user when the optical physiological measurement device is worn by
the user."**

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

*Supra* Ground-1A [1d]; APPLE-1003, ¶¶123-125.

**[13]: "The optical physiological measurement device of claim 12, wherein the at least four detectors are evenly spaced from one another."**

*Supra* Ground-1A [5]; APPLE-1003, ¶126.

**[14]: "The optical physiological measurement device of claim 13, wherein the protruding surface of the cover comprises a single surface of the cover that covers the at least four detectors."**

*Supra* Ground-1A [1d], [6]; APPLE-1003, ¶127.

**[15]: "The optical physiological measurement device of claim 14, wherein the single surface of the cover comprises a convex surface."**

*Supra* Ground-1A [1d], [6]; APPLE-1003, ¶128.

**[17]: "The optical physiological measurement device of claim 15, wherein the optical physiological measurement device is configured to provide data useable for determining measurements of pulse rate."**

Aizawa-Inokawa renders obvious [17]. *Supra* Ground-1 [1pre]; APPLE-1003, ¶129. For example, Aizawa discloses measuring pulse rate. APPLE-1006, [Abstract], [0002], [0008], [0023]-[0036]. Inokawa is also directed to a device for measuring pulse rate. APPLE-1008, Abstract, [0001], [0007], [0056]-[0072].

**Claim 20**
**[20pre]: "A noninvasive optical physiological sensor comprising:"**

*Supra* Ground-1A [1pre]; APPLE-1003, ¶130.

**[20a]: "a plurality of emitters configured to emit light into tissue of a user;"**

*Supra* Ground-1A [1a] and Section III.A.3(b); APPLE-1003, ¶131.

41

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

**[20b]: "a plurality of detectors configured to detect light that has been attenuated by tissue of the user, wherein the plurality of detectors comprise at least four detectors;"**

*Supra* Ground-1A [1b]; APPLE-1003, ¶132.

**[20c]: "a housing configured to house at least the plurality of detectors; and"**

*Supra* Ground-1A [1c]; APPLE-1003, ¶133.

**[20d]: "a light permeable cover configured to be located between tissue of the user and the plurality of detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises an outwardly protruding surface configured to cause tissue of the user to conform to at least a portion of the outwardly protruding surface when the noninvasive optical physiological sensor is worn by the user and during operation of the noninvasive optical physiological sensor, and wherein the outwardly protruding surface is further configured to allow passage of light to the plurality of detectors after attenuation by tissue of the user."**

*Supra* Ground-1A [1d]; APPLE-1003, ¶134.

## Claim 21
**[21]: "The noninvasive optical physiological sensor of claim 20, wherein the plurality of detectors are arranged on a two-dimensional surface of the housing."**

*Supra* Ground-1A [2]; APPLE-1003, ¶135.

## Claim 22
**[22]: "The noninvasive optical physiological sensor of claim 21, wherein a first detector and a second detector of the plurality of detectors are arranged across from each other on opposite sides of a central point along a first axis, and a third detector and a fourth detector of the plurality of detectors are arranged across from each other on opposite sides of the central point along a second axis which is perpendicular to the first axis."**

*Supra* Ground-1A [3]; APPLE-1003, ¶136.

42

## Claim 23

**[23]: "The noninvasive optical physiological sensor of claim 22, wherein the cover is comprised of a rigid material."**

*Supra* Ground-1A [4]; APPLE-1003, ¶137.

## Claim 24

**[24]: "The noninvasive optical physiological sensor of claim 23, wherein the at least four detectors are evenly spaced from one another."**

*Supra* Ground-1A [5]; APPLE-1003, ¶138.

## Claim 25

**[25]: "The noninvasive optical physiological sensor of claim 24, wherein the outwardly protruding surface comprises a single outwardly protruding surface configured to cover the plurality of detectors."**

*Supra* Ground-1A [6]; APPLE-1003, ¶139.

## Claim 26

**[26]: "The noninvasive optical physiological sensor of claim 25, wherein the single outwardly protruding surface comprises is convex."**

*Supra* Ground-1A [1d], [6], [15]; APPLE-1003, ¶140.

## Claim 28

**[28]: "The noninvasive optical physiological sensor of claim 26, wherein the noninvasive optical physiological sensor is configured to provide data useable for determining measurements of pulse rate."**

*Supra* Ground-1A [17]; APPLE-1003, ¶141.

    **B.**     **[GROUND-1B] – Claims 1-15, 17, 20-26, and 28 are rendered obvious by Aizawa in view of Inokawa and Ohsaki**

        **1.**     **Overview of Ohsaki**

43

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

Ohsaki—titled "Wristwatch-type human pulse wave sensor attached on back side of user's wrist"—is generally directed to "[a] pulse wave sensor includes a detecting element and a sensor body" where "[t]he pulse wave sensor is worn on the back side of a user's wrist."  APPLE-1014, Title, Abstract; APPLE-1003, ¶¶63-64.  As seen below, the pulse sensor of Ohsaki is "worn on the back side of the user's wrist 4...in the similar manner as a wristwatch is normally worn,"  *Id.*, [0016].



APPLE-1014, FIG. 1.

Referring to FIG. 2 below, Ohsaki can sense pulse by emitting light through a light emitting element 6 and detecting reflected light using a light receiving element 7.  APPLE-1014, [0017].  Ohsaki also provides a translucent board 8 that is transparent to light and includes a convex surface "in intimate contact with the surface of the user's skin."  *Id.*, [0009, [0017].

44

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1014, FIG. 2.

### 2.   Analysis

As described above in Ground-1A and Section III.A.3(a), a POSITA would have sought to incorporate an Inokawa-like lens into the cover of Aizawa to increase the light collection efficiency.  Here, Ohsaki provides an additional motivation and rationale for a POSITA to modify Aizawa to include a "light permeable cover comprising a protrusion" as per element [1d]; APPLE-1003, ¶¶142-146.

For example, Ohsaki teaches that adding a convex surface to the light permeable cover (*i.e.*, translucent board 8) can help prevent the device from slipping on the tissue when compared to a flat cover.  APPLE-1014, [0025]; APPLE-1003,

45

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

¶144.  In this context, Aizawa similarly seeks to prevent slippage between the device and the user's wrist—and pursues this objective by pressing its light permeable cover (*i.e.*, acrylic transparent plate 6) and trying to improve "adhesion between the wrist 10 and the pulse rate detector 11."  APPLE-1006, [0026], [0030].

A POSITA reviewing Aizawa and Ohsaki would have recognized Ohsaki's use of a convex protrusion in its light permeable cover as a desirable configuration that would help to further prevent slippage of Aizawa's device.  APPLE-1003, ¶145.  Thus, a POSITA wanting to achieve improved adhesion between the detector and the skin, as expressly recognized in Aizawa, would have readily modified Aizawa's cover to have a convex protrusion as per Ohsaki.  *Id.*

The resulting combination would have provided all remaining elements of claims 1-17 and 20-28 in the same manner as previously described in Ground-1A.  APPPLE-1003, ¶146.

### C.    [GROUND-1C] – Claims 18, 19, 29, and 30 are rendered obvious by Aizawa in view of Inokawa, Mendelson-2006, and Beyer

#### 1.    Overview of Mendelson-2006

Mendelson-2006 is generally directed to a "wireless wearable pulse oximeter" device.  APPLE-1016, 912; APPLE-1003, ¶¶68-70.  Mendelson-2006's pulse

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

oximeter can measure and transmit various physiological parameters such as "arte-

rial oxygen saturation (SpO$_2$), heart rate (HR), body acceleration, and posture in-

formation."  APPLE-1016, 912.

As shown below, Mendelson-2006 includes a sensor module, which can be

attached to a user (*e.g.*, at the forehead), as well as a body-worn receiver module,

which wirelessly receives information acquired by the sensor module wirelessly

via an RF:



APPLE-1016, FIG. 1, 913.

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

Physiological data received and processed by the receiver module can be wirelessly transmitted "to a PC" for enhanced monitoring of the sensed physiological parameters, such as by medics.  *Id.*, 913.  An example PC ("iPAQ Pocket PC") that can be used for receiving data from the receiver module is shown below:



APPLE-1016, FIG. 3, 913-914.  This particular PDA, HP's iPAQ h4150, "provides a low-cost touch screen interface," and "data from the wireless-enabled PDA can also be downloaded or streamed to a remote base station via Bluetooth or other wireless communication protocols."  *Id.*, 914; *see also generally* APPLE-1022.

48

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

### 2. Overview of Beyer

Beyer is titled "Cellular Phone/PDA Communication System" and is generally directed to improved communications using a "conventional cellular phone PDA."  APPLE-1019, Title, Abstract; APPLE-1003, ¶71.  More specifically, Beyer teaches "cellular PDA/GPS phones" that allow users "to rapidly call and communicate data among the users by touching display screen symbols and to enable the users to easily access data concerning other users and other database information."  *Id.*, 1:6-15.  A side-by-side comparison of Beyer's PDA and Mendelson-2006's PDA is shown below:



APPLE-1019, FIG. 1 (left); APPLE-1014, FIG. 3 (right).

49

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

### 3. Combination of Aizawa, Inokawa, Mendelson-2006, and Beyer

As discussed above (Section III.A.3), Aizawa contemplates uploading data to an external display but is silent about how such data transmission would be implemented, instead leaving implementation details to the POSITA.  APPLE-1006, [0015], [0023], [0035]; APPLE-1003, ¶147.  Indeed, although Aizawa does not disclose a specific monitoring device, a POSITA would have recognized that various types of well-known monitoring devices could be used to interact with the wrist-worn sensor of Aizawa and display the measured physiological parameters to the user in a convenient manner.  *Id.*  In this context, as discussed above in Section III.C.1, Mendelson-2006 teaches using a receiver module and a portable computer (*i.e.*, PDA) to communicate with a small, body-worn sensor, as in Aizawa.  APPLE-1016, 913-914, FIGS. 1, 2.

A POSITA would have been motivated and found it obvious and straightforward to further modify Aizawa-Inokawa in view of Mendelson-2006 to yield a pulse detector that can wirelessly transmit data to an external device for monitoring.  APPLE-1003, ¶¶148-150.[2]  Indeed, Aizawa, Inokawa, and Mendelson-2006

---

[2] Alternatively, the combination of Aizawa, Inokawa, and Ohsaki, as described in Section III.B.2, may be similarly modified in view of Mendelson-2006 as described in this section.

50

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

are all in the same field of art and relate to body-worn detectors for sensing physiological parameters such as pulse. APPLE-1006, [0002]; APPLE-1008, [0056]; APPLE-1016, 912. Mendelson-2006 teaches the use of a receiver module and a portable computer/PDA to receive pulse data detected by the body-worn detector (as in Aizawa). APPLE-1016, 913-914. The PDA of Mendelson-2006 may be connected either wirelessly or using a physical cable. APPLE-1003, ¶148 (citing APPLE-1016, 913, FIG. 1; APPLE-1029, APPLE-1022, 8).

A POSITA would have been motivated to combine Mendelson-2006's receiver module and PDA with Aizawa's detector to enable a convenient and user-friendly interface with Aizawa's detector (which does not include a separate display/interface) and the ability to remotely monitor the user's physiological parameters. APPLE-1016, 914; APPLE-1003, ¶¶149-150. The resulting combination yields a measurement device comprising a sensor, a receiver module, and a PDA, in much the same way as a monitoring device as contemplated in the '628 patent. *Id.*, ¶150 (citing APPLE-1001, 17:8-21, FIG. 2B). A POSITA would have recognized that applying Mendelson-2006's receiver module and PDA to Aizawa's sensor would have led to predictable results without significantly altering or hindering the functions performed by Aizawa's sensor. *Id.* Indeed, a POSITA would have had a reasonable expectation of success in making this modification, and would

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

have reasonably expected to reap benefits of convenient interface with and monitoring of Aizawa's sensor.  *Id.*

While the processor in Mendelson-2006's receiver module communicates physiological measurement information to a PDA capable of various "wireless communication protocols," Mendelson-2006 does not explicitly disclose the PDA to be a mobile phone.  APPLE-1016, 914.  Yet it was well-known before the Critical Date that a PDA device, such as the one shown in Mendelson-2006, was often paired with cellular communication technology to provide a combined PDA/phone device that acts a mobile phone.  APPLE-1003, ¶151 (citing to APPLE-1019 and APPLE-1020).  Such a combined device would have provided the user with added convenience of being able to enjoy the combined functionality of a phone and PDA in a single device.  *Id.*  Moreover, a POSITA would have recognized that "[i]t is often necessary to review the collected data, such as oxygen saturation, pulse rate and pulsatility value at a location remote to the patient being monitored."  APPLE-2021, Abstract.  Thus, a POSITA would have looked to PDA devices with cellular connectivity in order to achieve more reliable patient monitoring.  APPLE-1003, ¶151 (citing to APPLE-1021, FIG. 3).

A POSITA would have considered using a different PDA than the one mentioned in Mendelson-2006 to be obvious and a routine and conventional design choice.  APPLE-1003, ¶¶151-153.  Indeed, using a PDA that is also a mobile

52

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

phone, as evidenced by Beyer, was common practice well before the Critical Date,

and there was nothing new or inventive about changing one type of PDA for an-

other.  *Id.*

### 4.    Analysis

**<u>Claim 18</u>**
**[18a]: "The optical physiological measurement device of claim 7 further com-**
       **prising:**
       **a processor configured to:**
              **receive one or more signals from the at least four detectors, the**
       **one or more signals indicative of a physiological parameter of a wearer**
       **of the optical physiological measurement device; and"**
**[18b]: "     output information indicative of measurements of the physiologi-**
       **cal parameter to a mobile phone."**

Aizawa-Inokawa-Mendelson-2006 renders obvious the processor as claimed

in [18a]-[18b].  APPLE-1003, ¶¶147-154.  For example, as discussed in Section

III.C.2~3, incorporating the receiver module and PDA of Mendelson-2006 into Ai-

zawa's device results in a convenient device that can provide mobile monitoring of

the user's physiological parameters.  APPLE-1006, [0015], [0023], [0035]; AP-

PLE-1016, 913-914; APPLE-1003, ¶150.

As to [18a], the combined system of Aizawa-Inokawa-Mendelson-2006 re-

lies on the receiver module of Mendelson-2006 to receive signals from Aizawa's

sensor and further communicate with a PDA.  APPLE-1016, 913-914; APPLE-

1003, ¶154.  As shown below, the receiver module of Mendelson-2006 includes a

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

microcontroller (μC), or processor, that receives pulse data from the sensor module

(via an RF transceiver) and transmits the received signals to a PDA (via UART):



APPLE-1014, FIG. 2, 913.

For [18b], as explained in Section III.C.2~3, Beyer explains improved com-

munication and convenience associated with using a PDA that is also a mobile

phone, informs a POSITA that it was common practice to do so well before the

Critical Date, and demonstrates there was nothing new or inventive about changing

one type of PDA for another.  APPLE-1019, 1:6-15; APPLE-1003, ¶153.

## Claim 19
**[19]: "The optical physiological measurement device of claim 18, further com-
prising a touch-screen display."**

As discussed for Ground-1C [18], a POSITA would have looked to a

phone/PDA to enable more convenient monitoring of the user's physiological pa-

rameters.  APPLE-1016, 913-914; APPLE-1019, 3: 29-33; APPLE-1003, ¶155.

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

Mendelson-2006's PDA provides "a low-cost touch screen interface."  APPLE-1016, 914.

## Claim 29

**[29a]: "A physiological monitoring device comprising: the noninvasive optical physiological sensor of claim 20; and"**

*Supra* Ground-1A [20pre]-[20d]; APPLE-1003, ¶156.

**[29b]: "a processor configured to receive one or more signals from the plurality of detectors and communicate physiological measurement information to a mobile phone."**

*Supra* Ground-1C [18a]-[18b]; APPLE-1003, ¶157.

## Claim 30

**[30]: "The physiological monitoring device of claim 29 further comprising a touch-screen display."**

*Supra* Ground-1C [19]; APPLE-1003, ¶158.

### D.    [GROUND-1D] – Claims 18, 19, 29, and 30 are rendered obvious by Aizawa in view of Inokawa, Goldsmith, and Lo

#### 1.    Overview of Goldsmith

Goldsmith is directed, in part, to a "combined watch and controller device 900" that "includes a housing 905 adapted to be worn or carried by the user" as well as "a display 910," shown in red below.  APPLE-1027, [0085].  The wrist-watch controller of Goldsmith is designed to receive "information about a patient" and, accordingly, "may monitor heart rate or and/or metabolic rate." *Id.*, [0095].

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

For example, "data may [be] received directly from a sensor transmitter on the patient's skin." *Id.*, [0087].  In some implementations, "the display is a touchscreen display." *Id.*, [0086].



APPLE-1027, FIG. 9A; Apple-1003, ¶159.

## 2.    Overview of Lo

Lo generally describes a wristwatch-type pulse rate monitor having a display unit 40 (red), a transducer/sensor module 20 (blue), and a wristband 10 (green), as shown below.  APPLE-1028, [0002], [0019], APPLE-1003, ¶160.



APPLE-1028, FIG. 1.  Lo teaches that "[i]n a preferred embodiment of the invention, the monitor is a wristwatch with attached wristband, wherein the [sensor] module is attached to the wristband."  *Id.*, [0035].

While Lo describes a particular type of sensor unit in the form an "ultrasonic transducer" that uses sonic energy to measure heart rate, Lo also contemplates—and a POSITA would have understood—that other types of sensors such as optical sensors may be used.  *Id.*, [0025]-[0026], [0048].

### 3.    Combination of Aizawa, Inokawa, Goldsmith, and Lo

As discussed above (Section III.C.2~3), a POSITA would have recognized that various types of well-known display/monitoring devices could be used to implement the wrist-worn device of Aizawa in a convenient manner.  APPLE-1003,

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

¶¶161-164.  In this context, Goldsmith provides a wristwatch-type monitoring device that can "monitor heart rate or and/or metabolic rate" by receiving data "directly from a sensor transmitter on the patient's skin."  APPLE-1027, [0095], [0087].  A POSITA would have been motivated and found it obvious and straightforward to further modify Aizawa-Inokawa, as discussed in Section III.A.3, in view of Goldsmith to enable a user to more conveniently monitor, in real-time, "his/her heart rate at the time of exercise" as expressly contemplated by Aizawa.[3] APPLE-1006, [0004]; APPLE-1003, ¶162.  Indeed, Goldsmith explicitly teaches that its wristwatch monitor can receive data from a "sensor transmitter on the patient's skin," as Aizawa's device precisely provides.  APPLE-1027, [0087].

While neither Aizawa nor Goldsmith goes into the details of how the sensor and monitor may be physically linked, Lo teaches how this may be achieved.  APPLE-1003, ¶163.  In particular, Lo, which is similarly directed to a wrist-worn pulse measuring device as in Aizawa/Goldsmith, teaches that the sensor "can be fastened separately on its own strap" (APPLE-1028, [0037]), or that, more preferably, the sensor part and the monitor part can be integrated into a more convenient

---

[3] Alternatively, the combination of Aizawa, Inokawa, and Ohsaki, as described in Section III.B.2, may be similarly modified in view of Goldsmith and Lo as described in this section.

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

wristwatch device by using "[c]onnecting wires [that] are molded into the wrist band." *Id.*, [0038]; FIG. 1

A POSITA would have been motivated to apply Lo's integrated monitor-sensor configuration to the Aizawa-Inokawa-Goldsmith device to enable not only a user-friendly interface display to interface with Aizawa's sensor (which does not include a separate display/interface) but further provide an integrated, wrist-worn device that can be conveniently carried around and used during various activities, such as swimming/diving. APPLE-1028, [0038]; APPLE-1003, ¶164.

### 4. Analysis

**Claim 18**

**[18a]: "The optical physiological measurement device of claim 7 further comprising: a processor configured to: receive one or more signals from the at least four detectors, the one or more signals indicative of a physiological parameter of a wearer of the optical physiological measurement device; and"**

In, the Aizawa-Inokawa-Goldsmith-Lo combination, Goldsmith teaches a "processor 1012" that is contained within the housing of the wrist-watch controller device and is "adapted to process data and commands inputted by the user." APPLE-1027, [0088]. Goldsmith's processor is further coupled to a "transceiver 1018" that "receives information from an analyte sensing device 1060." *Id.* Other types of data, such as heart rate data from Aizawa's sensor, would similarly be received by the Goldsmith's processor via the transceiver. *Id.*, [0095], [0087]; APPLE-1003, ¶¶159-165.

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

**[18b]: "output information indicative of measurements of the physiological parameter to a mobile phone."**

In, the Aizawa-Inokawa-Goldsmith-Lo combination, Goldsmith's processor transmits physiological data to a remote station.  APPLE-1027, [0088], [0099].  Goldsmith also teaches that such remote stations can "include, but are not limited to, a hospital database, ***a cellular telephone, a PDA, a smart phone*** or internet" and that "[f]or example, a cellular phone may be used as a conduit for remote monitoring and programming."  APPLE-1027, [0089]; *see also id.,* [0017], [0018], [0047], [0069].  Thus, physiological parameters received by Goldsmith's processor can be output to a mobile phone.  APPLE-1003, ¶166.  Goldsmith also teaches that the wrist-watch controller device "may be configured so as to have cellular telephone capabilities."  APPLE-1027, [0073]; *see also id*., [0016], [0068], [0097].

## Claim 19
**[19]: "The optical physiological measurement device of claim 18, further comprising a touch-screen display."**

In the Aizawa-Inokawa-Goldsmith-Lo combination, Goldsmith's wrist-watch controller device includes a display that "is a touchscreen display."  *Id.*, [0086].

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1027, FIG. 9A; Apple-1003, ¶167.


## Claim 29

**[29a]: "A physiological monitoring device comprising: the noninvasive optical
physiological sensor of claim 20; and"**

*Supra* Ground-1A [20pre]-[20d]; APPLE-1003, ¶168.


**[29b]: "a processor configured to receive one or more signals from the plural-
ity of detectors and communicate physiological measurement infor-
mation to a mobile phone."**

*Supra* Ground-1D [18a]-[18b]; APPLE-1003, ¶169.


## Claim 30

**[30]: "The physiological monitoring device of claim 29 further comprising a
touch-screen display."**

*Supra* Ground-1C [19]; APPLE-1003, ¶170.


61

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

### E.    [GROUND-2A] – Claims 1-17 and 20-28 are rendered obvious by Mendelson-1988 in view of Inokawa

#### 1.    Overview of Mendelson-1988

Mendelson-1988 is generally directed to an "optical reflectance sensor suitable for noninvasive monitoring of arterial hemoglobin oxygen saturation with a pulse oximeter." APPLE-1015, Abstract; APPLE-1003, ¶¶65-67. Mendelson-1988's pulse oximeter, shown below, includes "two red...and two infrared...LED chips...and six silicon photodiodes...arranged symmetrically in a hexagonal configuration." *Id.*, 168.



*Id.*, FIG. 2(A).

Mendelson-1988 describes that the forehead was a favorable location for its sensor due to the "relatively large reflectance photoplethysmographic signals" but

Exhibit J
Page 820

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

further recognizes that "several locations on the body (*e.g.*, forearm, chest, and back)" also allowed the reflectance photoplethysmograms to be detected.  APPLE-1015, 173; APPLE-1003, ¶66.  Subsequent publications by the author of Mendelson-1988, Dr. Mendelson, recognizes that both the wrist and forehead regions are convenient locations for a reflectance-type pulse oximeter.  *See, e.g.*, APPLE-1024, 3017.

### 2.    Combination of Mendelson-1988 and Inokawa

As illustrated below, Mendelson-1988 teaches encapsulating emitters/detectors disposed within its housing (red) with an optically clear adhesive/epoxy (blue):



APPLE-1015, FIG. 2(b), 168; APPLE-1003, ¶175.  This epoxy layer, thus, serves as a light permeable cover that covers the detectors.  *Id*.

But beyond Mendelson-1988's disclosure that this cover is made from "optically clear epoxy," Mendelson-1988 does not provide additional details, for instance regarding the precise shape of this layer's interface with the skin.  APPLE-1003, ¶176.  Mendelson-1988 does not indicate, for instance, whether the epoxy

Exhibit J
Page 821

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

layer protrudes slightly above the edge of the housing to protect the user's skin from the sharp edges of the housing.  *Id.*  Moreover, a POSITA would have realized that the epoxy layer could have been given a shape that would help further advance Mendelson-1988's objective of improving detection efficiency.  APPLE-1015, 168, 173; APPLE-1003, ¶176.

In this context, as described above in Section III.A.2 and shown below, Inokawa provides a pulse sensor with a lens that is positioned over the detectors to "increase the light-gathering ability of the LED as well as to protect the LED or [detector]."  APPLE-1008, [0015], [0058].



APPLE-1008, FIG. 2; APPLE-1003, ¶177.  Thus, a POSITA would have sought to incorporate an Inokawa-like lens into the cover of Mendelson-1988 to increase the light collection efficiency, which in turn would lead to an improved signal-to-noise ratio (and thus more reliable pulse detection).  APPLE-1003, ¶178.  A POSITA

64

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

would have been particularly interested in making such a modification because Mendelson-1988 is expressly interested in maximizing "reflectance photoplethysmographic signals." APPLE-1015, 173. The lens of Inokawa provides precisely such a benefit to Mendelson'1988's device by refracting and concentrating the incoming light signals that are reflected by the blood. APPLE-1003, ¶178.

As illustrated below, the device resulting from the obvious combination of Mendelson-1988 and Inokawa would have modified the flat epoxy cover (left) with a curved one as per Inokawa (right) to "increase the light-gathering ability." APPLE-1008, [0015].



APPLE-1015, FIG. 2(B); APPLE-1003, ¶179.

A POSITA would have understood how to implement Inokawa's lens-shaped cover in Mendelson-1988 with a reasonable expectation of success, stemming from the significant overlap across the references in their teaching. APPLE-

65

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

1003, ¶¶181-182.  Indeed, the above-described modification would require only routine knowledge of sensor design and assembly, which were well within the skill of a POSITA prior to the Critical Date.  *Id.*  Further, as demonstrated by Nishikawa, molding clear epoxy, as in Mendelson-1988, into a lens shape was well understood:



APPLE-1023, FIG. 6, [0022], [0032], [0035].

Moreover, both the optical encapsulation layer of Mendelson-1988 and the lens layer of Nishikawa are made from the same material—i.e., optically clear epoxy—that can have the same index of refraction, the interface between the encapsulation portion (40) and the lens portion (50) will not adversely affect the optical performance of the modified system.  Indeed, Nishikawa expressly discloses that any gaps between the encapsulation and lens portions can be minimized by fusing the two portions at the interface to improve optical performance.  APPLE-1023, [0037]; APPLE-1003, ¶183.

66

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

Thus, to achieve Mendelson-1988's and Inokawa's shared goal of improving light collection efficiency, a POSITA would have been motivated to modify Aizawa's light permeable cover to have a lens shape as per Inokawa with a reasonable expectation of success.  APPLE-1003, ¶183.

### 3.    Analysis

**[1pre]: "A noninvasive optical physiological sensor comprising:"**

To the extent the preamble is limiting, the combination of Mendelson-1988 and Inokawa ("Mendelson-1988-Inokawa") renders obvious [1pre].  APPLE-1003, ¶171.  For example, Mendelson-1988 teaches "a new optical reflectance sensor suitable for noninvasive monitoring of arterial hemoglobin oxygen saturation with a pulse oximeter."  APPLE-1015, Abstract, 167, 172

**[1a]: "a plurality of emitters configured to emit light into tissue of a user;"**

As shown below, Mendelson-1988 teaches using two red and two infrared LEDs that are centrally located and designed to emit light that is "diffused by the skin in all directions":

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1025, FIG. 2(A), 168; APPLE-1003, ¶172.

**[1b]: "a plurality of detectors configured to detect light that has been attenuated by tissue of the user, wherein the plurality of detectors comprise at least four detectors;"**

As shown below, Mendelson-1988 teaches "six silicon photodiodes...arranged symmetrically in a hexagonal configuration."  APPLE-1015, 168.  Output from the detectors are "current pulses...which correspond to the red and infrared light intensities reflected from the skin" and are processed to respective photoplethysmographic waveforms.  APPLE-1015, 169.

68

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1015, FIG. 2(A); APPLE-1003, ¶173.

**[1c]: "a housing configured to house at least the plurality of detectors; and"**

As illustrated below, Mendelson-1988 discloses that its LEDs and photodiode chips (*i.e.*, emitters and detectors) are mounted on a ceramic substrate and housed within an AIRPAX microelectronic package (**housing**).  APPLE-1015, 168; APPLE-1003, ¶174.



APPLE-1015, FIG. 2(B).

69

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

**[1d]: "a light permeable cover...wherein the cover comprises an outwardly protruding convex surface...."**

As discussed above in Section III.E.2 and illustrated below, the combined Mendelson-1988-Inokawa device includes a protruded epoxy cover that acts as a lens and covers the at least four detectors.  *Supra* Section III.E.2; APPLE-1003, ¶¶175-183.  Thus, reflected light headed toward the detectors is refracted and condensed as it passes the lens/protrusion.  APPLE-1008, [0015], [0058].



APPLE-1015, FIG. 2(B); APPLE-1003, ¶180.

According to Dr. Kenny, there are two alternative ways of mapping the claimed "light permeable cover," or LPC, to the modification above.  APPLE-1003, ¶¶184-185.

First, the combined epoxy structure—*i.e.*, the sealing portion and the lens portion—may be viewed to be the LPC, as illustrated below.  Indeed, the LPC as described in the '628 patent, for example with regard to FIG. 14D, appears to envision a two-part structure comprising a flat cover portion and a protruded lens portion.  APPLE-1001, FIG. 14D; APPLE-1003, ¶184.



APPLE-1015, FIG. 2(B).

Alternatively, just the lens portion of the epoxy structure that is formed over the underlying sealing portion, as shown below, may be mapped to be the LPC having a protrusion.  APPLE-1003, ¶185.  Here, as informed through Nishikawa, a POSITA would have used the top portion of the housing to help form the LPC portion of the epoxy on top of the sealing portion below it.  APPLE-1023, [0034]-[0038], FIGS. 5-6.

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1015, FIG. 2(B); APPLE-1003, ¶185.

As for conforming of the tissue, the light permeable cover of Mendelson-1988 is attached to the user's skin.  APPLE-1015, 169; APPLE-1003, ¶186.  Attaching a rigid device in such a manner will cause at least some deformation of the tissue to occur because the skin is more pliable.  *Id.*  Additionally, the lens/protrusion of Inokawa, as applied to Mendelson-1988 in the manner described above in Section III.E.2, acts to further deform the tissue of the user around the convex surface of the lens/protrusion when the device is pressed against the tissue:

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1008, FIG. 2.

**[2]: "The noninvasive optical physiological sensor of claim 1, wherein the plu-
rality of detectors are arranged on a two-dimensional surface of the housing."**

As discussed for [1c] and further illustrated below, Mendelson-1988 dis-

closes that its LEDs and photodiode chips (i.e., emitters and detectors) are mounted

on a ceramic substrate (***two-dimensional surface***) and housed within an AIRPAX

microelectronic package (***housing***):



Exhibit J
Page 831

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

APPLE-1015, FIG. 2(B), 168; APPLE-1003, ¶187.

**[3]: "The noninvasive optical physiological sensor of claim 2, wherein a first detector and a second detector of the plurality of detectors are arranged across from each other on opposite sides of a central point along a first axis, and a third detector and a fourth detector of the plurality of detectors are arranged across from each other on opposite sides of the central point along a second axis which is perpendicular to the first axis."**

As illustrated below, four of the detectors of Mendelson-1988 are arranged relative to a central point and first/second axes in the manner claimed, with the first/second axes crossing each other:



APPLE-1015, FIG. 2(A); APPLE-1003, ¶188.

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

However, the first and second axes as shown above are not perpendicular to each other.  As an initial matter, Mendelson-1988 does not indicate that its system only works with six detectors.  APPLE-1015, 168.  In fact, Mendelson-1988 explains that "the total amount of backscattered light that can be detected by the reflectance sensor is directly proportional to the number of photodetectors." *Id*. Thus, a POSITA would have recognized that more (or less) detectors may be used depending on the detection requirements of a particular system.  For example, a POSITA looking for increased light detection may add two more detectors to achieve 8 total detectors.  APPLE-1003, ¶189.  Conversely, a POSITA looking for reduced power consumption may remove two detectors to achieve 4 total detectors. In either case—8 or 4 detectors—the resulting detector configuration results in perpendicular axes as claimed:



APPLE-1003, ¶189.

Moreover, other wearable physiological sensing devices during this period provide further support for arranging 4 or 8 photodetectors as contemplated above

such that the alignment axes are pendicular.  For instance, Aizawa expressly

discloses wearable pulse sensing devices with 8 and 4 detectors:



APPLE-1006, FIGS. 4(a) and 1(a), [0032]; APPLE-1003, ¶190.

Thus, a POSITA would have considered using different numbers of spaced-

apart detectors, namely 4 or 8, to be obvious.  APPLE-1006, [0032]; APPLE-1003,

¶191.  Indeed, using more/fewer detectors based on system/design requirements, as

evidenced by Mendelson-1988 and Aizawa, was common practice well before the

Critical Date, and there was nothing new or inventive about changing the number.

*Id*.

### [4]: "The noninvasive optical physiological sensor of claim 3, wherein the light permeable cover is comprised of a rigid material."

Mendelson-1988-Inokawa renders obvious [4].  *Supra* Ground-2A [1d], Sec-

tion III.E.2; APPLE-1003, ¶¶192-194.  For example, the light permeable cover of

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

Mendelson-1988 is made of cured resin (*i.e.*, epoxy), which a POSITA would understand to be a rigid material.  APPLE-1015, 168, [FIG. 2].  To the extent Patent Owner argues the cured, encapsulating epoxy resin of Mendelson-1988-Inokawa is not rigid, a POSITA would have found it obvious to use a rigid material to form the lens/protrusion of Mendelson-1988-Inokawa because a rigid lens better preserves its shape and, thereby, offers improved optical performance relative to a pliable lens.  APPLE-1003, ¶¶193-194.  Such a rigid lens would provide improved optical performance and light-gathering ability compared to a non-rigid lens that may partially or completely lose its shape during use, degrading its optical properties.  *Id.*

**[5]: "The noninvasive optical physiological sensor of claim 4, wherein the at least four detectors are evenly spaced from one another."**

Mendelson-1988-Inokawa renders obvious [5].  *Supra* Ground-2A [1b].  As shown below, the detectors of Mendelson-1988 are evenly spaced from one another:

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1015, FIG. 2(A); APPLE-1003, ¶195.

**[6]: "The noninvasive optical physiological sensor of claim 5, wherein the outwardly protruding convex surface is a single outwardly protruding convex surface."**

Mendelson-1988-Inokawa renders obvious [6]. *Supra* Ground-1A [1d], Section III.E.2. For example, as shown below, the lens/protrusion of Inokawa as incorporated into Mendelson-1988 has a single outwardly protruding convex surface:



Exhibit J
Page 836

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

APPLE-1015, FIG. 2(B) ; APPLE-1008, FIG. 2, [0015], [0030], [0039], [0058], [0099], [0107]; APPLE-1003, ¶¶196-197.

**[7pre]: "An optical physiological measurement device comprising:"**

*Supra* Ground-2A [1pre]; APPLE-1003, ¶198.

**[7a]: "a plurality of emitters configured to emit light into tissue of a user;"**

*Supra* Ground-2A [1a] and Section III.A.3(b); APPLE-1003.  ¶199.

**[7b]: "a circular housing including a planar surface;"**

Mendelson-1988-Inokawa renders obvious [7b]. APPLE-1003, ¶¶200-201.

For example, as illustrated below, Mendelson-1988 discloses that its LEDs and photodiode chips (i.e., emitters and detectors) are mounted on a ceramic substrate (***planar surface***) and housed within an AIRPAX microelectronic package (***housing***):



APPLE-1015, FIG. 2(B), 168; APPLE-1003, ¶200.

79

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

However, the housing shown in Mendelson-1988 appears to have a square shape, not a circular one).  APPLE-1015, FIG. 2(A).  Yet a POSITA would have recognized that microelectronic packaging as used in Mendelson-1988 comes in various shapes and sizes.  For instance, a patent (Mendelson-'799) by the same author of Mendelson-1988 shows a similar detector configuration that is instead housed in a ***circular*** sensor housing 17:



*Figure 7*

APPLE-1025, FIG. 7, 9:34-36; APPLE-1003, ¶201.

A POSITA would have considered using a differently shaped housing, namely a circular one, to be obvious.  APPLE-1003, ¶202.  Indeed, using a circular housing having a circular wall, as evidenced by Mendelson-'799, was common practice well before the Critical Date, and there was nothing new or inventive about changing one housing shape for another.  *Id*.

80

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

**[7c]: "at least four detectors arranged on the planar surface of the circular housing, wherein the four detectors are arranged in a grid pattern; and"**

As shown below, Mendelson-1988 teaches "six silicon photodiodes...arranged symmetrically in a hexagonal configuration" on top of a planar ceramic substrate:



APPLE-1015, FIG. 2(A); 168; APPLE-1003, ¶203.

81

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

Moreover, as illustrated below, a subset of the detectors (*e.g.*, four of them)

are arranged in a grid pattern:



APPLE-1015, FIG. 2(A); APPLE-1003, ¶204.

**[7d]: "a light permeable cover of the circular housing, wherein at least a por-
tion of the cover comprises a protruding surface that is arranged to al-
low passage of light to the at least four detectors after attenuation by tis-
sue of the user."**

*Supra* Ground-2A [1d]; APPLE-1003, ¶205.

**[8]: "The optical physiological measurement device of claim 7, wherein the
cover is configured to cause tissue of the user to conform to at least a
portion of the protruding surface of the cover when the optical physio-
logical measurement device is worn by the user."**

Exhibit J
Page 840

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

Mendelson-1988-Inokawa renders obvious [8]. *Supra* Ground-2A [1d]. As explained for [1d], the light permeable cover of Mendelson-1988-Inokawa deforms the tissue around the lens/protrusion when pressed against the wrist of the user. APPLE-1003, ¶206. Thus, the light permeable cover causes tissue of the user to conform to at least a portion of the protruding surface of the cover *Id.*

**[9]: "The optical physiological measurement device of claim 8, wherein the four detectors are arranged in the grid pattern such that a first detector and a second detector are arranged across from each other on opposite sides of a central point along a first axis, and a third detector and a fourth detector are arranged across from each other on opposite sides of the central point along a second axis which is perpendicular to the first axis."**

*Supra* Ground-2A [3] and [7c]. Indeed, the perpendicularly arranged detectors as per [3] are arranged in a grid pattern:



APPLE-1015, FIG. 2(A); APPLE-1003, ¶207.

83

Exhibit J
Page 841

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

**[10]: "The optical physiological measurement device of claim 9, wherein the cover is comprised of a rigid material."**

*Supra* Ground-2A [4]; APPLE-1003, ¶208.

**[11]: "The optical physiological measurement device of claim 10, wherein the cover is configured to be positioned between the at least four detectors and tissue of a user when the optical physiological measurement device is worn by the user."**

*Supra* Ground-2A [1d]; APPLE-1003, ¶209.

**[12]: "The optical physiological measurement device of claim 11, wherein the cover is configured to press against and at least partially deform tissue of the user when the optical physiological measurement device is worn by the user."**

*Supra* Ground-1A [1d]; APPLE-1003, ¶210.

**[13]: "The optical physiological measurement device of claim 12, wherein the at least four detectors are evenly spaced from one another."**

*Supra* Ground-1A [5]; APPLE-1003, ¶211.

**[14]: "The optical physiological measurement device of claim 13, wherein the protruding surface of the cover comprises a single surface of the cover that covers the at least four detectors."**

*Supra* Ground-1A [1d], [6]; APPLE-1003, ¶212.

**[15]: "The optical physiological measurement device of claim 14, wherein the single surface of the cover comprises a convex surface."**

*Supra* Ground-1A [1d], [6]; APPLE-1003, ¶213.

**[16]: "The optical physiological measurement device of claim 15, wherein the optical physiological measurement device is configured to provide data**

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

useable for determining measurements of at least one of: glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, or carbon monoxide."

The pulse oximeter of Mendelson-1988 is designed to measure "hemoglobin oxygen saturation in arterial blood ($SpO_2$)." APPLE-1015, 167, Abstract; APPLE-1003, ¶214.

**[17]: "The optical physiological measurement device of claim 15, wherein the optical physiological measurement device is configured to provide data useable for determining measurements of pulse rate."**

Mendelson-1988-Inokawa renders obvious [17]. APPLE-1003, ¶215. For example, Mendelson-1988's pulse oximeter detects photoplethysmograms, which as shown below include pulse rate information:



APPLE-1015, FIG. 1 (cropped), 168-170; APPLE-1003, ¶215.

**[20pre]: "A noninvasive optical physiological sensor comprising:"**

*Supra* Ground-2A [1pre]; APPLE-1003, ¶216.

**[20a]: "a plurality of emitters configured to emit light into tissue of a user;"**

*Supra* Ground-2A [1a]; APPLE-1003, ¶217.

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

**[20b]: "a plurality of detectors configured to detect light that has been attenu-
ated by tissue of the user, wherein the plurality of detectors comprise at
least four detectors;"**

*Supra* Ground-2A [1b]; APPLE-1003, ¶218.

**[20c]: "a housing configured to house at least the plurality of detectors; and"**

*Supra* Ground-2A [1c]; APPLE-1003, ¶219.

**[20d]: "a light permeable cover...wherein the cover comprises an outwardly
protruding surface...."**

*Supra* Ground-2A [1d]; APPLE-1003, ¶220.

**[21]: "The noninvasive optical physiological sensor of claim 20, wherein the
plurality of detectors are arranged on a two-dimensional surface of the
housing."**

*Supra* Ground-2A [2]; APPLE-1003, ¶221.

**[22]: "The noninvasive optical physiological sensor of claim 21, wherein a first
detector and a second detector of the plurality of detectors are arranged
across from each other on opposite sides of a central point along a first
axis, and a third detector and a fourth detector of the plurality of detec-
tors are arranged across from each other on opposite sides of the central
point along a second axis which is perpendicular to the first axis."**

*Supra* Ground-2A [3]; APPLE-1003, ¶222.

**[23]: "The noninvasive optical physiological sensor of claim 22, wherein the
cover is comprised of a rigid material."**

*Supra* Ground-2A [4]; APPLE-1003, ¶223.

**[24]: "The noninvasive optical physiological sensor of claim 23, wherein the at
least four detectors are evenly spaced from one another."**

*Supra* Ground-2A [5]; APPLE-1003, ¶224.

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

**[25]:** **"The noninvasive optical physiological sensor of claim 24, wherein the outwardly protruding surface comprises a single outwardly protruding surface configured to cover the plurality of detectors."**

*Supra* Ground-2A [6]; APPLE-1003, ¶225.

**[26]:** **"The noninvasive optical physiological sensor of claim 25, wherein the single outwardly protruding surface comprises is convex."**

*Supra* Ground-2A [1d], [6], [15]; APPLE-1003, ¶226.

**[27]:** **"The noninvasive optical physiological sensor of claim 26, wherein the noninvasive optical physiological sensor is configured to provide data useable for determining measurements of at least one of: glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, or carbon monoxide."**

*Supra* Ground-2A [16]; APPLE-1003, ¶227.

**[28]:** **"The noninvasive optical physiological sensor of claim 26, wherein the noninvasive optical physiological sensor is configured to provide data useable for determining measurements of pulse rate."**

*Supra* Ground-2A [17]; APPLE-1003, ¶228.

**F.      [GROUND-2B] – Claims 18, 19, 29, and 30 are rendered obvious by Mendelson-1988 in view of Inokawa, Mendelson-2006, and Beyer**

**1.      Combination of Mendelson-1988, Inokawa, Mendelson-2006, and Beyer Jr.**

As discussed above in Section III.C.1 and incorporated herein, Mendelson-2006 describes a pulse oximeter system comprising a sensor module, a receiver module, and a mobile PC/PDA for wirelessly receiving information acquired by

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

the sensor module.  APPLE-1016, 913-914, FIGS. 1-3.  As discussed above in Section III.C.2 and incorporated herein, Beyer is directed to a "Cellular Phone/PDA Communication System."  APPLE-1019, Title.

Mendelson-1988 teaches that data from its pulse oximeter was "acquired every 2 s (0.5 Hz) using an AT&T 6300 personal computer."  APPLE-1015, 171.  A POSITA would have recognized that a personal computer, together with the pulse oximeter sensor attached to it, is indeed a mobile monitoring device.  While Mendelson-1988 is silent regarding whether a mobile PC could be used in place of a conventional PC, a POSITA would have sought to take advantage of parallel advances in mobile electronics to enable receiving information from the sensing device of Mendelson-1988 in a more convenient manner.  APPLE-1003, ¶229.

As discussed above in Section III.C.1, Mendelson-2006 teaches using a receiver module and a portable computer (*i.e.*, PDA) to communicate with a small, body-worn sensor as in Mendelson-1988.  APPLE-1016, 913-914, FIGS. 1, 2; APPLE-1003, ¶230.  In fact, both sensor modules of Mendelson-1988 and Mendelson-2006 are small devices that can be attached on the forehead and were developed by the same author.  APPLE-1015, 167, FIG. 2; APPLE-1016, 912; FIG. 1; APPLE-1003, ¶230.

A POSITA would have been motivated to combine Mendelson-2006's re-

Exhibit J
Page 846

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

ceiver module and PDA with Mendelson-1988's detector to enable a more convenient and user-friendly interface with Mendelson-1988's detector and the ability to remotely monitor the user's physiological parameters.  APPLE-1016, 914; APPLE-1003, ¶231.  The resulting combination yields a measurement device comprising a sensor, a receiver module, and a PDA, in much the same way as a monitoring device as contemplated in the '628 patent.  *Id.*, ¶230 (citing APPLE-1001, 17:8-21, FIG. 2B).  A POSITA would have recognized that applying Mendelson-2006's receiver module and PDA to Mendelson-1988's sensor would have led to predictable results without significantly altering or hindering the functions performed by Mendelson-1988.  APPLE-1003, ¶231.  Indeed, a POSITA would have had a reasonable expectation of success in making this modification, and would have reasonably expected to reap benefits of a more convenient interface and mobile monitoring capabilities.  *Id.*

Moreover, as discussed in Section III.C.3, a POSITA would have considered using a different PDA than the one mentioned in Mendelson-2006 to be obvious and a routine and conventional design choice.  APPLE-1003, ¶232.  Indeed, using a PDA that is also a mobile phone, as evidenced by Beyer, was common practice well before the Critical Date, and there was nothing new or inventive about changing one type of PDA for another.  *Id.*

89

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

## 2.  Analysis

**[18a]: "The optical physiological measurement device of claim 7 further comprising:**
**a processor configured to:**
**receive one or more signals from the at least four detectors, the one or more signals indicative of a physiological parameter of a wearer of the optical physiological measurement device; and"**
**[18b]: "     output information indicative of measurements of the physiological parameter to a mobile phone."**

Mendelson-1988-Inokawa-Mendelson-2006 renders obvious the processor as claimed in [18a]-[18b].  APPLE-1003, ¶¶229-233.  For example, as discussed in Section III.F.1, incorporating the receiver module and PDA of Mendelson-2006 into Mendelson-1988's sensor results in a convenient device that can provide mobile monitoring of the user's physiological parameters.  APPLE-1015, 169; APPLE-1016, 913-914; APPLE-1003, ¶230.

As to [18a], the combined system of Mendelson-1988-Inokawa-Mendelson-2006 relies on the receiver module of Mendelson-2006 to receive signals from Mendelson-1988's detector and further communicate with a PDA.  APPLE-1016, 913-914; APPLE-1003, ¶233.  As shown below, the receiver module of Mendelson-2006 includes a microcontroller (μC), or processor, that receives pulse data from the sensor module (via an RF transceiver) and transmits the received signals to a PDA (via UART):

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628



APPLE-1014, FIG. 2, 913.

As to [18b], the processor in Mendelson-2006's receiver module communicates physiological measurement information to a PDA, such as HP's iPAQ Pocket PC that is capable of various "wireless communication protocols."  However, Mendelson-2006 does not explicitly disclose the PDA to be a mobile phone.  APPLE-1016, 914; APPLE-1003, ¶232.  Yet it was well-known before the Critical Date that a PDA device, such as the one shown in Mendelson-2006, was often paired with cellular communication technology to provide a combined PDA/phone device that acts a mobile phone.  APPLE-1003, ¶151 (citing to APPLE-1019 and APPLE-1020).  Such a combined device would have provided the user with added convenience of being able to enjoy the combined functionality of a phone and PDA in a single device.  APPLE-1003, ¶¶151-153.  Moreover, a POSITA would have recognized that "[i]t is often necessary to review the collected data, such as oxygen saturation, pulse rate and pulsatility value at a location remote to the patient being

91

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

monitored." APPLE-2021, Abstract. Thus, a POSITA would have looked to PDA devices with cellular connectivity in order to achieve more reliable patient monitoring. *Id.* (citing to APPLE-1021, FIG. 3). As explained in Section III.C.2~3, Beyer explains improved communication and convenience associated with using a PDA that is also a mobile phone, informs a POSITA that it was common practice to do so well before the Critical Date, and demonstrates there was nothing new or inventive about changing one type of PDA for another. *Id.*

**[19]: "The optical physiological measurement device of claim 18, further comprising a touch-screen display."**

Mendelson-1988-Inokawa-Mendelson-2006 renders obvious [19]. APPLE-1003, ¶234. For example, as discussed for Ground-2B [18], a POSITA would have looked to Mendelson-2006's PDA to enable more convenient monitoring of the user's physiological parameters. APPLE-1016, 913-914. Mendelson-2006's PDA provides "a low-cost touch screen interface." APPLE-1016, 914.

**[29a]: "A physiological monitoring device comprising: the noninvasive optical physiological sensor of claim 20; and"**

*Supra* Ground-2A [20pre]-[20d]; APPLE-1003, ¶235.

**[29b]: "a processor configured to receive one or more signals from the plurality of detectors and communicate physiological measurement information to a mobile phone."**

*Supra* Ground-2B [18a]-[18b]; APPLE-1003, ¶236.

92

**[30]: "The physiological monitoring device of claim 29 further comprising a touch-screen display."**

*Supra* Ground-1B [19]; APPLE-1003, ¶237.

## IV.   PAYMENT OF FEES – 37 C.F.R. §42.103

Apple authorizes the Patent and Trademark Office to charge Deposit Account No. 06-1050 for the fee set in 37 C.F.R. §42.15(a) for this Petition and further authorizes payment for any additional fees to be charged to this Deposit Account.

## V.   PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION

Consistent with Congressional intent and goals of *NHK*/*Fintiv*, Apple asks the Board alone to consider challenges raised in this Petition.  *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11, 6 (PTAB 2020).  As explained below, *Fintiv* favors institution.

### A.   Factor 1: Institution will increase the likelihood of stay

Institution will enable the Board to resolve the issue of validity, and a finding of invalidity will relieve the Central District of California (the "District Court") of the need to continue with the companion litigation.  Apple intends to move to stay the District Court case, and the opportunity for such simplification increases the likelihood that the court will grant a stay in view of IPR institution.  *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case No. 2:16-cv-642-JRG, 2-3 (E.D. Tex.

2017); *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 13-CV-1058, 2015 WL 1069111 (E.D. Tex. 2015).

### B.    Factor 2: District Court schedule

Trial in the District Court case is scheduled for 04/05/2022.  APPLE-1031, 1.  Based on the 18-month IPR schedule, a Final Written Decision ("FWD") in an IPR arising from the present Petition would issue in early March of 2022, prior to the District Court trial date.

In addition, as in *NHK*, district court trial dates shift, even in normal times. *Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap. 22, 17 (PTAB 2019).  The District Court is one of the country's busiest patent courts.  Scheduling issues cannot be ruled out, as experts have professed that additional COVID-19 outbreaks are likely to arise and California is facing new outbreaks.  APPLE-1034, 1 ("Fauci says second wave of coronavirus is 'inevitable'"); APPLE-1035, 4 ("Los Angeles County is currently" at "275 [cases] per 100,000 [residents]," which is higher than the recommended level (100 per 100,000) for reopening).

### C.    Factor 3: Apple's investment in IPR outweighs forced investment in litigation to date

District court proceedings are still at an early phase.  The parties have yet to file claim construction briefs, no claim construction orders have issued, and the

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

*Markman* hearing is not scheduled until 02/08/2021.  APPLE-1031, 1.  In addition, discovery is not scheduled to close until 07/05/2021.  *Id*.

Apple's substantial investment in these IPR proceedings should counterbalance—if not outweigh—the resources invested in the co-pending litigation given the speed with which Apple is filing IPR petitions on over 150 claims across seven patents.  It would be unjust to consider resources expended in District Court (equally by both parties), without considering Apple resources expended to prepare nine IPR petitions that would be irretrievably lost without consideration on the merits, in addition to the extensive expenses that may be foregone through institution of Apple's petitions and that will otherwise certainly follow in co-pending litigation for which significant milestones exist.  *See, e.g., Apple v. Seven Networks*, IPR2020-00255, Paper 13, 12-15 (PTAB July 28, 2020) (declining to exercise 314(a) discretion on petitions filed 9 months after the commencement of co-pending litigation where a large number of patents were included in the litigation, and a large number of claims from each patent were challenged in the petitions).

### D.      Factor 4: The Petition raises unique issues

Consistent with *Fintiv*, Apple asks the Board to consider the unique challenges raised in the Petition.  Apple has voluntarily stipulated to counsel for Patent Owner that, if the Board institutes the present Petition, Apple will not assert that the challenged claims are invalid on the pending Petition's asserted grounds in

*Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.).  AP-PLE-1032, 1; *see, e.g., Apple v. Seven,* 15-17 (finding that such a stipulation by a petitioner "mitigates, at least to some degree, the concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially con-flicting decisions").

In addition, the Petition addresses claims that will not be addressed in Dis-trict Court.  Although Patent Owner has not yet narrowed the asserted claims, the District Court recently ordered the parties to submit "a joint proposal for an initial reduction of infringement contentions" by 09/21/2020.  APPLE-1033, 1.  Thus, based on this ordered reduction in the asserted claims, the District Court will nec-essarily address fewer claims than are challenged in this Petition (which challenges all claims of the patent), even assuming the District Court addresses validity at all, which is presently unknowable.  *See, e.g., Apple v. Seven,* 18.

In short, grounds in this Petition are unique, and will not be addressed in District Court.  *See, e.g., Apple v. Seven,* 15-20 (weighing this factor against exer-cising 314(a) discretion where a petitioner challenged several unasserted claims and stipulated that it would not pursue the IPR grounds in the co-pending litiga-tion).

### E.    Factor 5: Institution would provide the Board an opportunity to invalidate claims that could later be reasserted against others

Apple's Petition is potentially helpful to future defendants.  For at least this

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

reason, Apple's status as both Petitioner and defendant is, at worst, a neutral factor. Taking the relevant circumstances into account, institution would serve overall efficiency and integrity, enabling the Board to determine invalidity of claims that Patent Owner might otherwise later assert against others.

### F.      Factor 6: Other circumstances support institution

As *Fintiv* noted, "the factors...are part of a balanced assessment of all the relevant circumstances in the case," and, "if the merits of a ground raised in the petition seem particularly strong…the institution of a trial may serve the interest of overall system efficiency and integrity…." *Fintiv*, 14-15.  As explained in the Petition (and Dr. Wills' testimony), institution would result in invalidation of the Challenged Claims.

## VI.    CONCLUSION

The cited prior art references identified in this Petition provide new, non-cumulative technological teachings which indicate a reasonable likelihood of success as to Petitioner's assertion that the Challenged Claims of the '628 patent are not patentable pursuant to the grounds presented in this Petition.  Accordingly, Petitioner respectfully requests institution of an IPR for those claims of the '628 patent for each of the grounds presented herein.

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

## VII.   MANDATORY NOTICES UNDER 37 C.F.R §42.8(a)(1)

### A.   Real Party-In-Interest Under 37 C.F.R. §42.8(b)(1)

Petitioner, Apple Inc. is the real party-in-interest.

### B.   Related Matters Under 37 C.F.R. §42.8(b)(2)

Petitioner is not aware of any disclaimers, reexamination certificates, or petitions for *inter partes* review for the '628 patent.  The '628 patent is the subject of the civil action *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.).  APPLE-1005.

This Petition is being filed concurrently with IPR petitions of related U.S. Patent No. 10,588,554 (IPR2020-01538 and IPR2020-01539).  Apple previously filed IPR petitions of related U.S. Patent No. 10,588,533 (IPR2020-01536 and IPR2020-01537) and U.S. Patent No. 10,258,265 (IPR2020-01520).

### C.   Lead And Back-Up Counsel Under 37 C.F.R. §42.8(b)(3)

Apple provides the following designation of counsel.

| Lead Counsel | Backup counsel |
|---|---|
| W. Karl Renner, Reg. No. 41,628<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email: IPR50095-0008IP1@fr.com | Roberto J. Devoto, Reg. No. 55,108<br>Hyun Jin In, Reg. No. 70,014<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>PTABInbound@fr.com |

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

### D.    Service Information

Please address all correspondence and service to the address listed above.

Petitioner consents to electronic service by email at IPR50095-0008IP1@fr.com

(referencing No. 50095-0008IP1 and cc'ing PTABInbound@fr.com, axf-

ptab@fr.com, devoto@fr.com and in@fr.com.

Respectfully submitted,

Dated  September 2, 2020          /W. Karl Renner/
                                 W. Karl Renner, Reg. No. 41,628
                                 Roberto J. Devoto, Reg. No. 55,108
                                 Hyun Jin In, Reg. No. 70,014
                                 Fish & Richardson P.C.
                                 3200 RBC Plaza, 60 South Sixth Street
                                 Minneapolis, MN 55402
                                 T: 202-783-5070
                                 F: 877-769-7945

(Control No. IPR2020-01521)      Attorneys for Petitioner

99

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

# CERTIFICATION UNDER 37 CFR §42.24

Under the provisions of 37 CFR §42.24(d), the undersigned hereby certifies

that the word count for the foregoing Petition for *Inter partes* Review totals 13,972

words, which is less than the 14,000 allowed under 37 CFR §42.24.


Dated  September 2, 2020          /W. Karl Renner/
                                 W. Karl Renner, Reg. No. 41,628
                                 Roberto J. Devoto, Reg. No. 55,108
                                 Hyun Jin In, Reg. No. 70,014
                                 Fish & Richardson P.C.
                                 3200 RBC Plaza, 60 South Sixth Street
                                 Minneapolis, MN 55402
                                 T: 202-783-5070
                                 F: 877-769-7945

                                 Attorneys for Petitioner

100

Attorney Docket No. 50095-0008IP1
IPR of U.S. Patent No. 10,292,628

# CERTIFICATE OF SERVICE

Pursuant to 37 CFR §§42.6(e)(4)(i) *et seq.* and 42.105(b), the undersigned

certifies that on September 2, 2020, a complete and entire copy of this Petition for

*Inter partes* Review and all supporting exhibits were provided via Federal Express,

to the Patent Owner by serving the correspondence address of record as follows:

KNOBBE, MARTENS, OLSON & BEAR, LLP
MASIMO CORPORATION (MASIMO)
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE CA 92614

/Diana Bradley/
Diana Bradley
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
(858) 678-5667

# Exhibit K

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent of:      Al-Ali
U.S. Patent No.:    8,457,703                     Attorney Docket No.:  50095-0002IP1
Issue Date:          June 4, 2013
Appl. Serial No.:    11/939,519
Filing Date:         November 13, 2007
Title:               LOW POWER PULSE OXIMETER

**Mail Stop Patent Board**
Patent Trial and Appeal Board
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

## PETITION FOR *INTER PARTES* REVIEW OF UNITED STATES PATENT NO. 8,457,703 PURSUANT TO 35 U.S.C. §§ 311–319, 37 C.F.R. § 42

# TABLE OF CONTENTS

I.    REQUIREMENTS FOR IPR ................................................................2

  A. Grounds for Standing .....................................................................2

  B. Challenge and Relief Requested......................................................3

II.   THE '703 PATENT ..........................................................................4

  A. Brief Description ............................................................................4

  B. Summary of the Prosecution History ..............................................5

  C. Level of Ordinary Skill in the Art ..................................................5

  D. Claim Construction.........................................................................6

    1. "reducing/reduce activation of an attached sensor" (claims 1 and 15).6

III.  UNPATENTABILITY GROUNDS.....................................................7

  A. GROUND 1A: Claims 9-10, 12-14, 20, and 22-24 are obvious based on Diab and Amano...........................................................7

    1. Overview of Diab ......................................................................7

    2. Overview of Amano ..................................................................8

    3. The Combination of Diab and Amano .......................................9

    4. Reasons to Combine Diab and Amano .....................................10

    5. Claim 9 ...................................................................................11

    6. Claim 10 .................................................................................22

    7. Claim 12 .................................................................................22

    8. Claim 13 .................................................................................25

    9. Claim 14 .................................................................................26

    10. Claim 20 .................................................................................26

    11. Claim 22 .................................................................................27

    12. Claim 23 .................................................................................28

    13. Claim 24 .................................................................................28

  B. GROUND 1B: Claims 11 and 21 are obvious based on Diab, Amano, and Edgar.............................................................................29

    1. Overview of Edgar ..................................................................29

    2. The Combination of Diab, Amano, and Edgar .........................30

Exhibit K
Page 862

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

3.  Reasons to Combine Diab, Amano, and Edgar ................................... 31

4.  Claim 11 ................................................................................. 33

5.  Claim 21 ................................................................................. 37

C.  GROUND 1C: Claims 1-7 and 15-18 are obvious based on Diab, Amano, and Turcott ................................................................................ 37

1.  Overview of Turcott .................................................................. 37

2.  The Combination of Diab, Amano, and Turcott ............................... 37

3.  Reasons to Combine Diab, Amano, and Turcott ............................... 38

4.  Claim 1 ................................................................................... 40

5.  Claim 2 ................................................................................... 43

6.  Claim 3 ................................................................................... 43

7.  Claim 4 ................................................................................... 44

8.  Claim 5 ................................................................................... 44

9.  Claim 6 ................................................................................... 45

10. Claim 7 ................................................................................... 45

11. Claim 15 ................................................................................. 45

12. Claim 16 ................................................................................. 46

13. Claim 17 ................................................................................. 46

14. Claim 18 ................................................................................. 47

D.  GROUND 2A: Claims 9-10, 12-14, 20, and 22-24 are obvious based on Diab and the GK-POSITA;  GROUND 2B: Claims 11 and 21 are obvious based on Diab, the GK-POSITA, and Edgar;  GROUND 2C: Claims 1-7 and 15-18 are obvious based on Diab, the GK-POSITA, and Turcott ..... 47

E.  GROUND 3A: Claims 9-10, 12-14, 20, and 22-24 are obvious based on Amano ..................................................................................... 49

1.  Overview of Amano .................................................................. 49

2.  Claim 9 ................................................................................... 51

3.  Claim 10 ................................................................................. 59

4.  Claim 12 ................................................................................. 59

5.  Claim 13 ................................................................................. 60

6.  Claim 14 ................................................................................. 61

7.  Claim 20 ................................................................................. 62

ii

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

8.  Claim 22 ...........................................................................................63

9.  Claim 23 ...........................................................................................63

10. Claim 24 ...........................................................................................63

F.  GROUND 3B: Claims 1-3 and 15-17 are obvious based on Amano and Turcott .................................................................................................64

1.  The Combination of Amano and Turcott .........................................64

2.  Reasons to Combine Amano and Turcott ........................................64

3.  Claim 1 .............................................................................................66

4.  Claim 2 .............................................................................................67

5.  Claim 3 .............................................................................................68

6.  Claim 15 ...........................................................................................69

7.  Claim 16 ...........................................................................................70

8.  Claim 17 ...........................................................................................70

IV.   PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION ..........70

A.  Factor 1: Institution will increase the likelihood of stay .........................70

B.  Factor 2: District Court schedule ..............................................................71

C.  Factor 3: Apple's investment in IPR outweighs forced investment in litigation to date .........................................................................................72

D.  Factor 4: The Petition raises unique issues ..............................................73

E.  Factor 5: Institution would provide the Board an opportunity to invalidate claims that could later be reasserted against others ...................................74

F.  Factor 6: Other circumstances support institution ....................................74

V.    PAYMENT OF FEES ....................................................................................75

VI.   CONCLUSION ..............................................................................................75

VII.  MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1) ..........................75

A.  Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1) ...............................75

B.  Related Matters Under 37 C.F.R. § 42.8(b)(2) .........................................75

C.  Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3) ......................76

D.  Service Information ....................................................................................76

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

## EXHIBITS

| | |
|---|---|
| APPLE-1001 | U.S. Patent No. 8,457,703 to Al-Ali ("the '703 Patent") |
| APPLE-1002 | Excerpts from the Prosecution History of the '703 Patent |
| APPLE-1003 | Declaration of Brian W. Anthony, Ph.D. |
| APPLE-1004 | U.S. Patent No. 6,293,915 to Amano et al. ("Amano") |
| APPLE-1005 | U.S. Patent No. 6,393,311 to Edgar, Jr. et al. ("Edgar") |
| APPLE-1006 | U.S. Patent No. 6,527,729 to Turcott ("Turcott") |
| APPLE-1007 | U.S. Patent No. 5,632,272 to Diab et al. ("Diab") |
| APPLE-1008 | U.S. Patent No. 6,178,343 to Bindszus et al. |
| APPLE-1009 | U.S. Patent No. 5,924,979 to Swedlow et al. |
| APPLE-1010 | Tremper, *Pulse Oximetry*, Anesthesiology, The Journal of the American Society of Anesthesiologists, Inc., Vol. 70, No. 1 (January 1989) |
| APPLE-1011 | Mendelson, *Skin Reflectance Pulse Oximetry: In Vivo Measurements from the Forearm and Calf*, Journal of Clinical Monitoring, Vol. 7, No. 1 (January 1991) |
| APPLE-1012 | Excerpts from Bronzino, *The Biomedical Engineering Handbook*, CRC Press, Inc. (1995) |
| APPLE-1013 | Konig, *Reflectance Pulse Oximetry – Principles and Obstetric Application in the Zurich System*, Journal of Clinical Monitoring, Vol. 14, No. 6 (August 1998) |
| APPLE-1014 | U.S. Patent No. 5,490,505 to Diab et al. |
| APPLE-1015 | U.S. Patent No. 5,027,410 to Williamson et al. |

iv

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

| | |
|---|---|
| APPLE-1016 | U.S. Patent Application Publication No. 2003/0004428 to Pless et al. |
| APPLE-1017 | U.S. Patent Application Publication No. 2002/0032386 to Sackner et al. |
| APPLE-1018 | U.S. Patent Application Publication No. 2003/0163287 to Vock et al. |
| APPLE-1019 | U.S. Patent No. 6,163,721 to Thompson |
| APPLE-1020 | U.S. Patent No. 5,058,203 to Inagami |
| APPLE-1021 | U.S. Patent No. 6,711,691 to Howard et al. |
| APPLE-1022-1030 | Reserved |
| APPLE-1031 | Scheduling Order, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 37 (April 17, 2020) |
| APPLE-1032 | Stipulation by Apple |
| APPLE-1033 | Telephonic Status Conference, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 78 (July 13, 2020) |
| APPLE-1034 | Joseph Guzman, "Fauci says second wave of coronavirus is 'inevitable'", TheHill.com (Apr. 29, 2020), available at: https://thehill.com/changing-america/resilience/natural-disasters/495211-fauci-says-second-wave-of-coronavirus-is |
| APPLE-1035 | "Tracking the coronavirus in Los Angeles County," LATimes.com (Aug. 20, 2020), available at https://www.latimes.com/projects/california-coronavirus-cases-tracking-outbreak/los-angeles-county/ |
| APPLE-1036 | Order Amending Scheduling Order, Masimo et al. v. True Wearables et al., Case 8:18-CV-02001 (July 7, 2020) |

v

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

Apple Inc. ("Petitioner" or "Apple") petitions for *Inter Partes* Review ("IPR") of claims 1-7, 9-18, and 20-24 ("the Challenged Claims") of U.S. Patent No. 8,457,703 ("the '703 Patent"). The '703 Patent describes a purported improvement to "a sleep-mode pulse oximeter... utilizing conventional sleep-mode power reduction" "where the circuitry is powered down," and thus "the pulse oximeter is not functioning during sleep mode" which can result in "miss[ed] events, such as patient oxygen desaturation." APPLE-1001, 1:63-2:2, 2:18-21. According to the '703 Patent, the improved pulse oximeter uses processing characteristics to "regulate pulse oximeter power dissipation" by "reducing activation of an attached sensor" or "reducing an amount of processing." APPLE-1001, 5:15-23, claims 1 and 9.

But this "improvement" was not new. To the contrary, the '703 Patent was granted without full consideration to the wide body of applicable art. As Dr. Brian Anthony explains in his accompanying declaration with respect to the applied prior art, patient monitors such as pulse rate detectors and pulse oximeters commonly included these and other features before the '703 Patent's earliest effective filing date, and a patient monitor including each feature of the Challenged Claims would have been obvious to a POSITA. APPLE-1003, ¶¶37-127. For example, U.S. Patent No. 6,293,915 to Amano et al. (APPLE-1004) describes the exact limitations of the '703 Patent's proposed solution to the problem found in the prior

1

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

art "sleep-mode pulse oximeter."  APPLE-1001, 1:63-2:2, 2:18-21.  Much like the

'703 Patent, Amano describes a pulse wave examination apparatus that "***reduce[s]***

***power consumption*** in the apparatus" while allowing a subject to "detect his pulse

condition ***continuously*** in his daily life" by suspending body movement processing

operations (reducing an amount of processing) "when... no body movement is

present."  APPLE-1004, 21:50-22:9, 35:54-64, 36:23-27, 38:26-27.  Amano is not

alone, as Turcott (APPLE-1006) describes "minimiz[ing] power consumption" by

adjusting "the drive current" of the light emitter (reducing activation of an attached

sensor).  APPLE-1006, 11:51-59. Other references cited herein likewise disclose

managing power consumption during continuous patient monitoring by adjusting

behavior of a patient monitor, as discussed in detail below.  Apple respectfully

submits that an IPR should be instituted, and that the Challenged Claims should be

canceled as unpatentable.

## I.    REQUIREMENTS FOR IPR

### A.    Grounds for Standing

Apple certifies that the '703 Patent is available for IPR.  The present Petition

is being filed within one year of service of a complaint against Apple in *Masimo*

*Corporation et al. v. Apple Inc*., Case No. 8:20-cv-00048 (C.D. Cal.).  Apple is not

estopped from requesting this review challenging the Challenged Claims on the

below-identified grounds.

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

### B.    Challenge and Relief Requested

An explanation of how these claims are unpatentable under the statutory grounds identified below is provided in the form of a detailed description that follow.  Additional explanation and support for each ground of rejection is set forth in the Declaration of Brian W. Anthony, Ph.D. (APPLE-1003), referenced throughout this Petition.

| Ground | Claims | §103 Basis |
|--------|--------|------------|
| 1A | 9-10, 12-14, 20, 22-24 | Diab (APPLE-1007) and Amano |
| 1B | 11, 21 | Diab, Amano, and Edgar (APPLE-1005) |
| 1C | 1-7, 15-18 | Diab, Amano, and Turcott (APPLE-1006) |
| 2A | 9-10, 12-14, 20, 22-24 | Diab and the General Knowledge of a POSITA (GK-POSITA) |
| 2B | 11, 21 | Diab, GK-POSITA, and Edgar |
| 2C | 1-7, 15-18 | Diab, GK-POSITA, and Turcott |
| 3A | 9-10, 12-14, 20, 22-24 | Amano (APPLE-1004) |
| 3B | 1-3, 15-17 | Amano and Turcott (APPLE-1006) |

Each reference pre-dates the provisional application (filed 7/2/2001) and qualifies as prior art:

3

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

| Reference | Date | Section |
|---|---|---|
| Diab | 5/27/1997 (issued) | 102(b) |
| Amano | 7/16/1999 (filed) | 102(e) |
| Edgar | 10/1/1999 (filed) | 102(e) |
| Turcott | 10/11/2000 (filed) | 102(e) |

None of these references were cited in any office action by the examiner during prosecution.

## II.    THE '703 PATENT

### A.    Brief Description

The '703 Patent relates to "a low power pulse oximeter."  APPLE-1001, 4:64-5:14, 5:14-15, FIG. 3.  The pulse oximeter "utilizes multiple sampling mechanisms to alter power consumption."  APPLE-1001, 5:59-61; APPLE-1003, ¶¶26-29.  The '703 patent describes that the sampling mechanisms "modify power consumption by, in effect, increasing or decreasing the number of input samples received and processed."  APPLE-1001, 6:9-11; APPLE-1003, ¶¶30-31.  The patent states that "[s]ampling, including acquiring input signal samples and subsequent sample processing, can be reduced during high signal quality periods and increased during low signal quality periods or when critical measurements are necessary."  APPLE-1001, 6:11-15.

4

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

## B.   Summary of the Prosecution History

Original claims 1-16 were rejected based on U.S. Patent No. 5,924,979 to Swedlow et al. ("Swedlow").  APPLE-1002, 65-68.  In the response to the first office action, the applicant argued that "Swedlow discloses a 'sleep mode' for a pulse oximeter" and the "sleep mode technologies, including Swedlow, do not teach or suggest continuous determination of measurement values" but "[r]ather, sleep mode disclosures, including Swedlow, simply turn off various portions/electronics for predetermined periods of time."  APPLE-1002, 91.   As described in detail below, other prior art references—which were never before the examiner—teach or suggest the claimed features.  APPLE-1003, ¶32.

## C.   Level of Ordinary Skill in the Art

A person of ordinary skill in the art relating to, and at the time of, the invention of the '703 Patent ("POSITA") would have had a Bachelor of Science degree in an academic discipline emphasizing the design of electrical, computer, or software technologies, in combination with training or at least one to two years of related work experience with capture and processing of data or information, including but not limited to physiological monitoring technologies or a Master of Science degree in a relevant academic discipline with less than a year of related work experience in the same discipline.  APPLE-1003, ¶33.

5

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

### D.    Claim Construction

Petitioner submits that all claim terms should be construed according to the *Phillips* standard.  *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); 37 C.F.R. § 42.100.  Here, based on the evidence below and the prior art's description of the claimed elements being similar to that of the '703 patent specification, no formal claim constructions, except those discussed below, are necessary in this proceeding because "claim terms need only be construed to the extent necessary to resolve the controversy."  *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011).

### 1.    "reducing/reduce activation of an attached sensor" (claims 1 and 15)

We construe this phrase as "reducing the duty cycle of an emitter driver output to the sensor" or "entering a data off state for a time period in which the emitter drivers are turned off."  APPLE-1003, ¶36.  This construction is consistent with the '703 Patent disclosure, as understood by a POSITA, which states that "[i]ntermittently reducing the drive current duty cycle can advantageously reduce power dissipation" and "[i]n conjunction with an intermittently reduced duty cycle or as an independent sampling mechanism, there may be a 'data off' time period longer than one drive current cycle where the emitter drivers... are turned off."  APPLE-1001, 3:28-30, 6:66-7:1, 7:8-12; APPLE-1003, ¶36.

6

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

Moreover, regardless of whether the particular language offered by this proposed construction is adopted, the scope of the phrase "reducing/reduce activation of an attached sensor" should nonetheless be broad enough to encompass "reducing the duty cycle of an emitter driver output to the sensor" and "entering a data off state for a time period in which the emitter drivers are turned off." *See* APPLE-1001, 3:28-30, 6:66-7:1, 7:8-12; APPLE-1003, ¶36.

## III.   UNPATENTABILITY GROUNDS

### A.   GROUND 1A: Claims 9-10, 12-14, 20, and 22-24 are obvious based on Diab and Amano

#### 1.   Overview of Diab[1]

Diab describes "a physiological monitor for pulse oximetry" referred to as "pulse oximeter 299." APPLE-1007, 34:10-12, FIG. 11. The oximeter includes "a digital signal processing system 334" that "provides clean plethysmographic waveforms of the detected signals and provides values for oxygen saturation and pulse rate to the display." APPLE-1007, 35:34-47, 34:24-28, FIGS. 13-14. The signal processor 334 performs functions of a "pulse rate module 410" that includes

---

[1] General descriptions provided for the references, including but not limited to Diab, and combinations thereof are hereby incorporated into each subsection addressing/applying those references, as are the discussions of combinations.

7

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

"a motion status module 584," the output of which is provided to "a motion artifact suppression module 580."   APPLE-1007, 38:61-63, 47:30-38, 47:47-49, FIGS. 14, 20.  An "average peak width value" is input to the motion status module 584, and "if the peaks are wide, this is taken as an indication of motion."  APPLE-1007, 47:50-52, FIG. 20.  "If motion is not detected, spectral estimation on the signals is carried out directly without motion artifact suppression," and "[i]n the case of motion, motion artifacts are suppressed using the motion artifact suppression module 580."  APPLE-1007, 47:52-56.  The "output filter 594" of the pulse rate module 410 provides "the pulse of the patient, which is advantageously provided to the display."  APPPLE-1007, 48:3-5, 50:27-29; APPLE-1003, ¶¶37-40.

## 2.      Overview of Amano

Amano describes a "pulse wave examination apparatus" that includes a "pulse wave detecting section 10."  APPLE-1004, 40:23-24.  Amano teaches that, in the context of processing the detected pulse wave obtained from a LED and a phototransistor of the pulse wave detection section 10, "when the body movement component eliminating section 30 is made to operate for the elimination of the body movement component [from the detected pulse wave] even if there is no body movement,... power is consumed by the body movement eliminating operation."  APPLE-1004, 21:3-57.  Amano provides a solution where "when no body movement is present, the operations of the waveform treating section 21 and

Exhibit K
Page 874

body movement component eliminating section 30 are suspended," which "reduce[s] power consumption in the apparatus." APPLE-1004, 21:65-22:6, 35:54-64. Thus, Amano teaches reducing power consumption by suspending unnecessary processing operations. *Id.*; APPLE-1003, ¶¶41-42.

### 3.    The Combination of Diab and Amano

In light of Amano's teaching that "power is consumed by the body movement eliminating operation," a POSITA would have found obvious that operating Diab's "motion artifact suppression module 580" likewise consumes power. APPLE-1004, 21:50-22:6, 35:54-64; APPLE-1007, 47:52-56, 48:34-49:38; APPLE-1003, ¶43. Additionally, in light of Amano's teaching that suspending "the operations of... body movement component eliminating section" reduces power consumption, a POSITA would have found obvious that performing Diab's "spectral estimation on the signals... directly *without* motion artifact suppression"[2] similarly reduces power consumption. *Id.* In light of Amano's teaching of reducing power consumption by suspending unnecessary processing operations, a POSITA would have found obvious that Diab's oximeter likewise reduces power consumption by performing "spectral estimation on the signals... directly *without* motion artifact suppression." *Id.*

---

[2] All emphasis added unless otherwise indicated.

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

### 4.    Reasons to Combine Diab and Amano

A POSITA would have been motivated to and would have found it obvious and straightforward to supplement Diab's teachings with the teachings of Amano as described above.  APPLE-1003, ¶44.  Both Diab and Amano are in the same field of art and relate to devices that provide pulse waveforms.  APPLE-1004, 21:3-8, 29:23-25, 31:2-8, 33:50-54, 34:3-14, 35:17-21, 36:23-27, 38:26-27, 40:23-27; APPLE-1007, 34:27-28, 35:44-47, 49:25-32.  Both Amano and Diab disclose a need to eliminate motion-induced noise from a pulse waveform.  APPLE-1004, 33:54-67; APPLE-1007, 2:23-26, 2:53-3:9, 34:1-9.

Amano is offered to demonstrate that reducing the amount of processing by suspending operations reduces power consumption.  APPLE-1004, 21:50-22:6, 35:54-64; APPLE-1007, 47:52-56, 48:34-49:38; APPLE-1003, ¶45.  A POSITA faced with Diab's disclosure would look to similar systems, such as Amano, to obtain more information on the effect of Diab's reduction in processing.  *Id*. Amano's teachings reveal to a POSITA that changes in power consumption were obvious from changes in the amount of processing that are contemplated by Diab. *Id*.  A POSITA would have recognized that supplementing Diab's teachings with the teachings of Amano as described above would have led to predictable results without significantly altering or hindering the functions performed by Diab's oximeter.  *Id*.

Exhibit K
Page 876

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

### 5.     Claim 9

**9[p]: "A method of managing power consumption during continuous patient monitoring by adjusting behavior of a patient monitor, the method comprising:"**

In the combination, Diab teaches a method for operating "a physiological monitor for pulse oximetry" referred to as "pulse oximeter 299" that "compute[s] the arterial and venous blood oxygen saturations of a physiological system on a *continuous* or nearly continuous time basis." APPLE-1007, 34:10-12, 63:38-41, FIG. 11; APPLE-1003, ¶46. The oximeter includes "a digital signal processing system 334" that "provides clean plethysmographic waveforms of the detected signals and provides values for oxygen saturation and pulse rate to the display." APPLE-1007, 35:34-47, 34:24-28, FIGS. 13-14. A portion of the functional diagram of the oximeter 299 is shown below:



APPLE-1007, Detail of FIG. 11

11

Diab's signal processor 334 adjusts behavior of the oximeter during continuous patient monitoring by including "a motion status module 584," the output of which is provided to "a motion artifact suppression module 580." APPLE-1007, 47:30-38, 47:47-49, FIGS. 14, 20; APPLE-1003, ¶¶47-48.  An "average peak width value" is input to the motion status module 584, and "if the peaks are wide, this is taken as an indication of motion."  APPLE-1007, 47:50-52, FIG. 20.  "If motion is not detected, spectral estimation on the signals is carried out directly without motion artifact suppression," and "[i]n the case of motion, motion artifacts are suppressed using the motion artifact suppression module 580." APPLE-1007, 47:52-56.  Thus, Diab adjusts the behavior of the oximeter by (1) not performing motion artifact suppression when motion is not detected and (2) suppressing motion artifacts when motion is detected.  APPLE-1007, 47:52-56; APPLE-1003, ¶¶47-48.

Also in the combination, Amano teaches that "when the body movement component eliminating section... is made to operate... power is consumed by the body movement eliminating operation" and "when no body movement is present, the operations of... body movement component eliminating section... are suspended," "thereby *reducing* calculation time and *power consumption*." APPLE-1004, 21:50-22:6, 35:54-64.  A POSITA would have found obvious that operating Diab's "motion artifact suppression module 580" consumes power based

12

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

on Amano's teaching that "power is consumed by the body movement eliminating operation" to Diab's oximeter.  APPLE-1004, 21:50-22:6, 35:54-64; APPLE-1007, 48:34-49:38; APPLE-1003, ¶49.

Additionally, a POSITA would have found obvious that performing "spectral estimation on the signals... directly *without* motion artifact suppression" reduces power consumption based on Amano's teaching that suspending "the operations of... body movement component eliminating section" reduces power consumption.  *Id.*; APPLE-1003, ¶50.  A POSITA would have been motivated and would have found it obvious and straightforward to combine Diab with Amano to manage power consumption by "reducing calculation time and power consumption," as suggested by Amano, "[i]f motion is not detected" by performing "spectral estimation on the signals... directly *without* motion artifact suppression," as taught by Diab.  *Id.*

**9[a]: "driving one or more light sources configured to emit light into tissue of a monitored patient;"**
**9[b]: "receiving one or more signals from one or more detectors configured to detect said light after attenuation by said tissue;"**

In the combination, Diab's "pulse oximeter... non-invasively measures the arterial saturation of oxygen in the blood."  APPLE-1007, 2:66-3:1.  Diab's oximeter 299 includes "***red and infrared light emitters 301, 302*** [that] each emits energy which is absorbed by the finger 310 and received by the ***photodetector 320***"

13

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

after attenuation by the finger.  APPLE-1007, 35:23-27, 4:51-57, 33:51-60, 34:12-19; APPLE-1003, ¶51.  "The finger comprises skin, tissue, muscle, both arterial blood and venous blood, fat, etc., each of which absorbs light energy."  APPLE-1007, 33:60-64.  A portion of the functional diagram of the oximeter 299 showing the sensor is below:



APPLE-1007, Detail of FIG. 11 (annotated)

**9[c]: "continuously operating a patient monitor at a lower power consumption level to determine measurement values for one or more physiological parameters of a patient;"**

In the combination, Diab's oximeter includes "a digital signal processing system 334" that includes a "digital signal processor 362" that carries out "the operations of the pulse oximeter 299" depicted in FIGS. 14-20.  APPLE-1007, 38:31-38, 38:61-63.  The signal processor "provides clean plethysmographic waveforms of the detected signals and provides values for oxygen saturation and pulse rate to the display."  APPLE-1007, 35:34-47, 34:24-28, FIGS. 13-14.  The signal processor 334 of the oximeter 299 performs functions of a "pulse rate

Exhibit K
Page 880

module 410" that includes "a motion status module 584," the output of which is provided to "a motion artifact suppression module 580."   APPLE-1007, 38:61-63, 47:30-38, 47:47-49, FIGS. 14, 20.   "*If motion is not detected*, spectral estimation on the signals is *carried out directly without motion artifact suppression*," and "[i]n the case of motion, motion artifacts are suppressed using the motion artifact suppression module 580." APPLE-1007, 47:52-56.  In this way, Diab's oximeter continuously operates by "comput[ing] the arterial and venous blood oxygen saturations of a physiological system on a *continuous* or nearly continuous time basis... regardless of whether or not the physiological system undergoes voluntary motion." APPLE-1007, 34:10-12, 63:38-41, FIG. 11; APPLE-1003, ¶52.  The "output filter 594" of the pulse rate module 410 provides "the pulse of the patient, which is advantageously provided to the display." APPLE-1007, 48:3-5, 50:27-29.

A functional diagram of Diab's pulse rate module 410 is shown below, with annotations showing the signals (only infrared samples) and the modules 578, 586, 590, 592, and 594 used to determine the pulse rate "without motion artifact suppression" (green line) when motion is not detected by the motion status module 584.  APPLE-1007, 48:6-33, 50:1-29; APPLE-1003, ¶53.  As a comparison, the functional diagram is also annotated to show the signals (infrared samples, red samples, saturation value) and the motion artifact suppression module 580 (purple box) and modules 588, 590, 592, and 594 used to determine the pulse rate (purple

15

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

line) when motion is detected by the motion status module 584.  APPLE-1007,

47:47-49, 47:55-50:29; APPLE-1003, ¶53.



APPLE-1007, Detail of FIG. 20 (annotated)

A functional diagram of the motion artifact suppression module 580 is

shown below, with the additional processing for motion artifact suppression

annotated.  APPLE-1007, 48:34-49:32; APPLE-1003, ¶54.

Exhibit K
Page 882

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703



APPLE-1007, Detail of FIG. 21 (annotated)

While Diab's explicit description that "[i]f motion is not detected, spectral estimation on the signals is carried out directly without motion artifact suppression" and "[i]n the case of motion, motion artifacts are suppressed using the motion artifact suppression module 580" (APPLE-1007, 47:52-56) teaches not executing the motion artifact suppression module 580 if motion is not detected, it would have also been obvious to suspend and not execute the operations of Diab's motion artifact suppression module 580 if motion is not detected based on Amano's teaching of suspending "the operations of... body movement component eliminating section" "when no body movement is present" (APPLE-1004, 21:65-22:6).  APPLE-1003, ¶54.

Based at least on the teachings of Amano, a POSITA would have understood

17

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

that performing "spectral estimation on the signals... directly *without* motion artifact suppression" reduces power consumption based on Amano's teaching that suspending "the operations of... body movement component eliminating section" reduces power consumption.  APPLE-1004, 21:50-22:6, 35:54-64; APPLE-1007, 48:34-49:38; APPLE-1003, ¶55.  A POSITA would have been motivated and would have found it obvious and straightforward to combine Diab with Amano to "reduc[e] calculation time and power consumption," as suggested by Amano, "[i]f motion is not detected" by performing "spectral estimation on the signals... directly *without* motion artifact suppression," as taught by Diab.  *Id.*  Accordingly, the combination of Diab and Amano renders obvious continuously operating the oximeter at a lower power consumption level "[i]f motion is not detected" to determine measurement values for one or more physiological parameters of a patient. *Id.*

**9[d]: "comparing processing characteristics to a predetermined threshold; and"**

In the combination, Diab's oximeter includes "red and infrared light emitters 301, 302 [that] each emits energy which is absorbed by the finger 310 and received by the photodetector 320" that "produces an electrical signal which corresponds to the intensity of the light energy striking the photodetector."  APPLE-1007, 35:23-27, 34:12-19.  The signal processor 334 performs "a saturation transform," which

18

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

is "an operation which converts the sample data from time domain to saturation domain values," to provide "saturation transform power curve[s]." APPLE-1007, 35:34-47, 45:6-10. The signal processor 334 calculates "peak width of a power curve" where "*[t]he width of the peaks provides some indication of motion by the patient—wider peaks indicating motion*." APPLE-1007, 46:13-20, 46:53-55. Accordingly, the red and infrared samples obtained from the photodetector signal are used to calculate the "peak width of a power curve." APPLE-1007, 44:38-46:55; APPLE-1003, ¶56.

Diab's signal processor 334 also performs functions of a "pulse rate module 410" that includes "a motion status module 584," the output of which is provided to "a motion artifact suppression module 580." APPLE-1007, 38:61-63, 47:30-38, 47:47-49, FIGS. 14, 20. An "average peak width value" (processing characteristics) is input to the "motion status module 584." APPLE-1007, 47:50-52, FIG. 20. Diab teaches that "[t]he width of the peaks provides some indication of motion by the patient—wider peaks indicating motion" and "[i]f the peaks are wide, this is taken as an indication of motion." APPLE-1007, 46:53-55, 47:51-52. As such, the motion status module 584 detects motion by determining "*if the peaks are wide*." APPLE-1007, 47:50-56. A POSITA would have understood that in order to determine whether the peaks are "wide," the "average peak width value" would be compared to a width value above which the peaks are considered "wide"

19

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

(a threshold).  *Id.*; APPLE-1003, ¶57.

**9[e]: "when said processing characteristics pass said threshold, transitioning to continuously operating said patient monitor at a higher power consumption level,"**

As previously discussed (*supra* Ground 1A, 9[c]), Diab teaches that "***[i]f motion is not detected***, spectral estimation on the signals is ***carried out directly without motion artifact suppression***," and "***[i]n the case of motion, motion artifacts are suppressed*** using the motion artifact suppression module 580." APPLE-1007, 47:52-56; APPLE-1003, ¶¶52-55.  Based on Diab's and Amano's teachings as previously discussed (*supra*, Ground 1A, 9[p] and 9[c]), a POSITA would have found obvious that, during operation at the lower power consumption level "without motion artifact suppression," when motion is detected based on processing characteristics ("average peak width value") passing the threshold (a value corresponding to "wider peaks indicating motion"), the signal processor 334 transitions to the higher power consumption level where "motion artifacts are suppressed using the motion artifact suppression module 580."  APPLE-1007, 47:52-56; APPLE-1004, 21:50-22:6, 35:54-64; APPLE-1003, ¶¶58, 46-50, 52-55. In the combination, Diab's oximeter continuously operates by "comput[ing] the arterial and venous blood oxygen saturations of a physiological system on a ***continuous*** or nearly continuous time basis... regardless of whether or not the physiological system undergoes voluntary motion."  APPLE-1007, 34:10-12,

20

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

63:38-41, FIG. 11.

**9[f]: "wherein said continuously operating at said lower power consumption level comprises reducing an amount of processing by a signal processor."**

As previously discussed, a POSITA would have found obvious that performing "spectral estimation on the signals... directly *without* motion artifact suppression," as taught by Diab, reduces power consumption based on Amano's teaching that suspending "the operations of... body movement component eliminating section" "reduc[es]... power consumption."  APPLE-1004, 21:50-22:6, 35:54-64; APPLE-1007, 48:34-49:38; APPLE-1003, ¶61.  As previously discussed (*supra* Ground 1A, 9[c]), a POSITA would have understood that Diab's oximeter reduces the amount of processing by the signal processor when motion is not detected by processing less data (only infrared samples) and "without motion artifact suppression."  APPLE-1007, 47:52-56, 48:6-33, 50:1-29; APPLE-1003, ¶¶61, 52-55.  Conversely, a POSITA also would have understood that Diab's oximeter increases the amount of processing by the signal processor when motion is detected by processing more data (infrared samples, red samples, and saturation value) and "using the motion artifact suppression module 580."  APPLE-1007, 47:47-49, 47:55-50:29; APPLE-1003, ¶61.  Also as previously discussed (*supra*, Ground 1A, 9[e]), the combination teaches that Diab's oximeter continuously operates by "comput[ing] the arterial and venous blood oxygen saturations of a

21

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

physiological system on a ***continuous*** or nearly continuous time basis... regardless of whether or not the physiological system undergoes voluntary motion."  APPLE-1007, 34:10-12, 63:38-41, FIG. 11; APPLE-1003, ¶¶46-50, 52-55, 58. Accordingly, in the combination, operating at the lower power consumption level by performing "spectral estimation on the signals... directly without motion artifact suppression" includes reducing an amount of processing because the signal processor processes less data (only infrared samples) and "without motion artifact suppression."  APPLE-1007, 47:52-56, 48:6-33, 50:1-29; APPLE-1003, ¶62.

### 6.    Claim 10

**10. The method of claim 9, wherein said reducing comprises processing less data.**

As previously discussed (*supra*, Ground 1A, 9[f]), the combination of Diab and Amano teaches reducing an amount of processing, including the signal processor processes less data (only infrared samples) and "without motion artifact suppression."  APPLE-1007, 47:52-56, 48:6-33, 50:1-29; APPLE-1003, ¶¶61-63, 46-50, 52-55, 58.

### 7.    Claim 12

**12[p]: "A method of managing power consumption during continuous patient monitoring by adjusting behavior of a patient monitor, the method comprising:"**

*Supra*, Ground 1A, 9[p]; APPLE-1003, ¶¶46-50.

22

**12[a]: "driving one or more light sources configured to emit light into tissue of a monitored patient;"**
**12[b]: "receiving one or more signals from one or more detectors configured to detect said light after attenuation by said tissue;"**

*Supra*, Ground 1A, 9[a]-9[b]; APPLE-1003, ¶51.

**12[c]: "continuously operating a patient monitor at a lower power consumption level to determine measurement values for one or more physiological parameters of a patient;"**

*Supra*, Ground 1A, 9[c]; APPLE-1003, ¶52-55.

**12[d]: "comparing processing characteristics to a predetermined threshold; and"**

*Supra*, Ground 1A, 9[d]; APPLE-1003, ¶¶56-57.

**12[e]: "when said processing characteristics pass said threshold, transitioning to continuously operating said patient monitor at a higher power consumption level,"**

*Supra*, Ground 1A, feature 9[e]; APPLE-1003, ¶¶46-50, 52-55, 58.

**12[f]: "wherein said processing characteristics include an override condition."**

As previously discussed (*supra* Ground 1A, 9[d]), in the combination, Diab

teaches comparing processing characteristics ("average peak width value") to a

predetermined threshold (a value corresponding to "wider peaks indicating

motion").  APPLE-1007, 47:50-56; APPLE-1003, ¶¶56-57.  "If motion is not

detected, spectral estimation on the signals is carried out directly without motion

artifact suppression," and "[i]n the case of motion, motion artifacts are suppressed

23

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

using the motion artifact suppression module 580." APPLE-1007, 47:52-56.

Based on Diab's and Amano's teachings as previously discussed (*supra*, Ground 1A, 9[p] and 9[c]), a POSITA would have found obvious that, during operation at the lower power consumption level "without motion artifact suppression," when motion is detected based on processing characteristics ("average peak width value") passing the threshold (a value corresponding to "wider peaks indicating motion"), the signal processor 334 transitions to the higher power consumption level where "motion artifacts are suppressed using the motion artifact suppression module 580." APPLE-1007, 47:52-56; APPLE-1004, 21:50-22:6, 35:54-64; APPLE-1003, ¶59, 46-50, 52-55.

A POSITA would have understood that when motion is present, the detected condition ***overrides*** the reduced power consumption state (where the signal processor processes only infrared samples "without motion artifact suppression") causing the oximeter to continuously operate at a higher power consumption level where the signal processor processes more data (red samples and saturation value in addition to infrared samples) using the "motion artifact suppression module 580." *Id*.; APPLE-1003, ¶60. Accordingly, the processing characteristics ("average peak width value") passing the threshold (a value corresponding to "wider peaks indicating motion") is an override condition that overrides the reduced power consumption state. *Id*.

24

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

### 8.    Claim 13

**13. The method of claim 12, wherein said override condition comprises measurements during a critical care environment.**

In the combination, Diab's oximeter "provides clean plethysmographic waveforms of the detected signals and provides values for oxygen saturation and pulse rate to the display."  APPLE-1007, 35:34-47, 34:24-28, FIGS. 13-14.  A POSITA would have found it obvious to use Diab's oximeter to obtain "blood oxygen saturation, heart rate, and a clean plethysmographic waveform" during critical care of a patient in a critical care environment; doing so was contemplated by POSITAs at the time of the '703 Patent.  *See*, *e.g.*, APPLE-1005, 1:67-2:10; APPLE-1014, 2:11-18; APPLE-1003, ¶64.  In its description of the prior art in the background section, the '703 patent itself admits that using pulse oximetry devices to obtain measurements during a critical care environment were well known.  APPLE-1001, 1:18-23.  Obtaining the "blood oxygen saturation, heart rate, and a clean plethysmographic waveform" during critical care would include obtaining measurements indicating whether the override condition, e.g., the processing characteristic ("average peak width value") passing a predetermined threshold (a value corresponding to "wider peaks indicating motion"), exists to control the oximeter to operate at either the lower power consumption level or the higher power consumption level.  APPLE-1007, 35:34-47, 34:24-28, 47:50-56; APPLE-

25

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

1003, ¶64.

### 9.    Claim 14

**14. The method of claim 12, wherein said override condition comprises one or more monitored parameters exhibiting predefined behavior.**

As previously discussed (*supra* Ground 1A, 12[f]), in the combination, Diab teaches that the processing characteristic ("average peak width value") passing a predetermined threshold (a value corresponding to "wider peaks indicating motion") is an override condition that overrides operation at the lower power consumption level.  APPLE-1003, ¶¶46-50, 52-57, 59-60; APPLE-1007, 47:50-56. As such, the override condition includes a monitored parameter exhibiting a predefined behavior, e.g., the processing characteristic ("average peak width value") passing a predetermined threshold (a value corresponding to "wider peaks indicating motion").  *Id.*; APPLE-1003, ¶65.

### 10.    Claim 20

**20[p]: "A patient monitor configured to manage power consumption during continuous patient monitoring, the monitor comprising:"**

*Supra*, Ground 1A, 9[p]; APPLE-1003, ¶¶46-50.

**20[a]: "an input configured to receive at least one signal responsive to light detected after attenuation by body tissue of a patient by a noninvasive sensor; and"**

*Supra*, Ground 1A, 9[a]-9[b]; APPLE-1003, ¶51.

26

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

**20[b]: "one or more processors continuously operating at a lower power consumption level to determine measurement values for one or more physiological parameters of said patient,"**

*Supra*, Ground 1A, 9[c]; APPLE-1003, ¶52-55.

**20[c]: "said processors comparing processing characteristics to a predetermined threshold, and"**

*Supra*, Ground 1A, 9[d]; APPLE-1003, ¶¶56-57.

**20[d]: "when said processing characteristics pass said threshold, said processors transitioning to continuously operating at a higher power consumption level,"**

*Supra*, Ground 1A, 9[e]; APPLE-1003, ¶¶46-50, 52-55, 58.

**20[e]: "wherein said processors reduce an amount of processing by a signal processor."**

*Supra*, Ground 1A, 9[f]; APPLE-1003, ¶¶61-62, 46-50, 52-55, 58.

## 11.   Claim 22

**22[p]: "A patient monitor configured to manage power consumption during continuous patient monitoring, the monitor comprising:"**

*Supra*, Ground 1A, 9[p]; APPLE-1003, ¶¶46-50.

**22[a]: "an input configured to receive at least one signal responsive to light detected after attenuation by body tissue of a patient by a noninvasive sensor; and"**

*Supra*, Ground 1A, 9[a]-9[b]; APPLE-1003, ¶51.

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

**22[b]: "one or more processors continuously operating at a lower power consumption level to determine measurement values for one or more physiological parameters of said patient,"**

*Supra*, Ground 1A, 9[c]; APPLE-1003, ¶52-55.

**22[c]: "said processors comparing processing characteristics to a predetermined threshold, and"**

*Supra*, Ground 1A, feature 9[d]; APPLE-1003, ¶¶56-57.

**22[d]: "when said processing characteristics pass said threshold, said processors transitioning to continuously operating at a higher power consumption level,"**

*Supra*, Ground 1A, feature 9[e]; APPLE-1003, ¶¶46-50, 52-55, 58.

**22[e]: "wherein said processing characteristics include an override condition."**

*Supra*, Ground 1A, feature 12[f]; APPLE-1003, ¶¶46-50, 52-57, 59-60.

### 12.    Claim 23

**23. The monitor of claim 22, wherein said override condition comprises measurements during a critical care environment.**

*Supra*, Ground 1A, Claim 13; APPLE-1003, ¶64.

### 13.    Claim 24

**24. The monitor of claim 22, wherein said override condition comprises one or more monitored parameters exhibiting predefined behavior.**

*Supra*, Ground 1A, Claim 14; APPLE-1003, ¶¶46-50, 52-57, 59-60, 65.

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

### B.   GROUND 1B: Claims 11 and 21 are obvious based on Diab, Amano, and Edgar

#### 1.   Overview of Edgar

Edgar describes operating a pulse oximeter to remove motion-induced noise artifacts or other similar artifacts from a measured waveform representative of a patient's arterial pulse.  APPLE-1005, 2:28-42, 5:1-9, 6:15-18; APPLE-1003, ¶66. The pulse oximeter acquires "a segment of data (e.g., five or more pulses or approximately ten seconds)" measured from a light source transmitted through a finger and detected with a sensor.  APPLE-1005, 6:42-46, 6:61-63.  The data segment is subsegmented into its consecutive individual heartbeat pulses.  APPLE-1005, 7:66-8:2.

If there is not sufficient noise in the data segment, only the latest pulse of the data segment is used for calculating arterial oxygen saturation.  APPLE-1005, 8:48-62, 11:42-45, FIG. 11 (steps 230, 250).  If there is sufficient noise in the data segment, the subsegments representing individual pulses of the data segment are combined to create an average pulse that is used for calculating arterial oxygen saturation.  APPLE-1005, 8:48-62, 9:56-10:28, 11:34-36, 11:42-45, FIG. 11 (steps 230, 240). When data for a new pulse is obtained, data for the oldest pulse is removed from the segment of data, and the processing is repeated to calculate a new arterial oxygen saturation value for the new pulse.  APPLE-1005, 11:45-52,

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

FIG. 7; APPLE-1003, ¶67.

## 2.      The Combination of Diab, Amano, and Edgar

To the above-noted combination of Diab with Amano for providing "***the pulse of the patient***," Edgar's teachings would be added to offer an improved technique for removing motion artifacts from a measured signal used to calculate "***blood oxygen saturation***."  APPLE-1003, ¶¶68-69; APPPLE-1007, 48:3-5, 50:27-29; APPLE-1005, 1:64-2:10, 3:58-4:6, 5:1-4.  In particular, Edgar explains that Diab's approach to "removing motion artifacts from measured physiological signals" "is to first generate a noise reference signal from the two measured signals, and then use the noise reference signal as an input to an adaptive noise canceler along with either or both of the measured signals to remove the reference noise signal from the measured signals."  APPLE-1005, 3:58-4:6.  Edgar provides a technique that "eliminate[s] motion-induced noise artifacts from light signals, that is relatively simple computationally, and that does not require more than one sensor."  APPLE-1005, 5:1-11.  A POSITA would have recognized that the predictable modification of Diab (when combined with Amano) as suggested by Edgar would include implementing Edgar's technique, instead of Diab's technique that Edgar seeks to improve upon, for calculating "blood oxygen saturation" in the combined device.  APPLE-1005, 3:58-4:6; APPLE-1003, ¶69.

30

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

### 3.    Reasons to Combine Diab, Amano, and Edgar

A POSITA would have been motivated and would have found it obvious and straightforward to combine Diab, Amano, and Edgar to achieve a pulse oximeter as described above (*supra*, Section III.B.2).  APPLE-1003, ¶¶68-70; APPLE-1005, 2:28-42, 5:1-9, 6:15-18, 8:48-62, 9:56-10:28, 11:34-36, 11:42-45, FIG. 11.  Diab, Amano, and Edgar are in the same field of art and relate to eliminating motion-induced noise from a measured physiological signal.  APPLE-1004, 21:9-20, 21:37-46, 33:63-67, 34:3-15, 35:17-21, 38:23-26; APPLE-1005, 2:28-42, 5:1-9, 6:15-18; APPLE-1007, 2:23-26, 2:53-3:9, 34:1-9.  Diab describes calculating blood oxygen saturation, and Edgar teaches calculating blood oxygen saturation using data from a single pulse or data from an average of multiple pulses depending on the level of noise in a data segment.  APPLE-1007, 33:23-35, 39:25-30, FIG. 14 (module 408); APPLE-1005, 8:48-62, 11:42-45, FIG. 11 (steps 230, 240, 250).  A POSITA would have been motivated to implement Edgar's teaching in Diab's oximeter (as supplemented with Amano's teachings) to provide an oximeter that eliminates motion-induced noise artifacts when calculating arterial oxygen saturation by using data from a single pulse when the noise level in a data segment is low or data from an average of multiple pulses when the noise level in a data segment is high, which is a relatively simple computation as compared to Diab's.  APPLE-1005, 5:1-11; APPLE-1003, ¶71.

31

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

Further, a POSITA would have found it obvious to modify Diab (as supplemented with Amano's teachings) with Edgar because doing so entails the use of known techniques to improve similar systems and methods in the same way. APPLE-1003, ¶72.  "[W]hen a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007).  A POSITA would have recognized that applying Edgar's teachings to Diab's oximeter (as supplemented with Amano's teachings) would have led to predictable results without significantly altering or hindering the functions performed by the combined system.  APPLE-1003, ¶72.  In fact, a POSITA would have been motivated to provide the well-known technique of calculating blood oxygen saturation using data from a single pulse or data from an average of multiple pulses depending on the level of noise in a data segment to cause the combined apparatus to include such features to achieve the predictable benefits offered by Edgar's description of the same.  *Id.; see, e.g.,* APPLE-1004, 36:23-27, 38:26-27; APPLE-1005, 2:22-24, 8:48-62, 11:42-45, FIG. 11 (steps 230, 240, 250).

Indeed, a POSITA would have had a reasonable expectation of success in making this modification, and would have reasonably expected to reap benefits of calculating blood oxygen saturation from a measured waveform representative of a

32

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

patient's arterial pulse.  APPLE-1003, ¶73.  Diab, Amano, and Edgar describe types of devices that provide pulse waveforms and, in combination, Edgar's features are implemented in Diab's oximeter (as supplemented with Amano's teachings) just as it is in Edgar's oximeter.  *Id.*; *see, e.g.,* APPLE-1004, 36:23-27, 38:26-27; APPLE-1005, 2:22-24, 8:48-62, 11:42-45, FIG. 11 (steps 230, 240, 250); APPLE-1007, 34:27-28, 35:44-47, 49:25-32.  Accordingly, implementing Edgar's teaching of calculating blood oxygen saturation in Diab's oximeter (as supplemented with Amano's teachings) would have been routine and straightforward to a POSITA, and it would have been clear that such a combination would predictably work and provide the expected functionality.  *Id.*

### 4.   Claim 11

**11. The method of claim 10, wherein said processing less data comprises reducing an overlap in data blocks being processed.**

As previously discussed (*supra* Ground 1A, 9[f]), the combination of Diab and Amano renders obvious operating at the lower power consumption level by performing "spectral estimation on the signals... directly without motion artifact suppression" when motion is not detected, which includes reducing an amount of processing because the signal processor processes less data (only infrared samples) and "without motion artifact suppression."  APPLE-1007, 47:52-56, 48:6-33, 50:1-29; APPLE-1003, ¶¶74, 61-62, 46-50, 52-55, 58.

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

In the present combination, Edgar describes measuring dispersion to "determine whether there is sufficient noise in the data segment to warrant additional signal processing."  APPLE-1005, 8:48-50.  "[W]here the dispersion is very low," indicating that noise is low, "the use of previous data in combination with the latest pulse would not be required, see blocks 230 and 250 of FIG. 11" reproduced and annotated below.  APPLE-1005, 8:50-53, FIG. 11 (steps 230, 250).



APPLE-1005, FIG. 11 (color added)

Accordingly, Edgar teaches processing less data when the motion-induced noise

34

level is low by using data from only the latest pulse to calculate arterial oxygen saturation.  APPLE-1005, 8:48-62, 11:42-45, FIG. 11 (steps 230, 250); APPLE-1003, ¶75.  A POSITA would have understood that there is no overlap in data being processed when using data from only the latest pulse.  *Id.*

This is in contrast to Edgar's processing of more data that is performed when the noise level is high.  APPLE-1003, ¶76.  In particular, Edgar "begins with acquiring a segment of data (e.g., five or more pulses or approximately ten seconds) measured from a single light source transmitted through a finger and detected with a sensor."  APPLE-1005, 6:42-46.  "Where the dispersion is higher," indicating that noise is high, "the pulses for the time interval being evaluated may be combined to create an average pulse, see blocks 230 and 240 of FIG. 11."  APPLE-1005, 8:53-56, 9:56-10:28, FIG. 11 (steps 230, 240).  "The above methods may be repeated once another full heartbeat pulse of data is collected for both the red and IR signals, see block 140 of FIG. 1."  APPLE-1005, 11:45-48.  "The new pulse of data is added to the red and IR segments, respectively, and the oldest pulse of data is removed."  APPLE-1005, 11:48-52, FIG. 7.

A POSITA would have understood that repeating the processing for a high noise level results in an overlap of data subsegments that are processed to calculate the blood oxygen saturation because data of the four previous pulses are repeatedly processed to create an average pulse.  APPLE-1003, ¶77; *see, e.g.,* APPLE-1005,

6:42-46, 8:53-56, 9:56-10:28, 11:45-48, FIG. 11 (steps 230, 240). Accordingly, Edgar teaches that processing less data when the noise level is low includes reducing an overlap (e.g., no overlap) of data blocks being processed as compared with the overlap of data blocks (e.g., 4 data subsegments) processed when the noise level is high. APPLE-1005, 6:42-46, 8:48-62, 9:56-10:28, 11:42-48, FIG. 11 (steps 230, 240, 250); APPLE-1003, ¶77.

A POSITA would have recognized that the predictable modification of Diab (as supplemented with Amano's teachings) based on Edgar would include calculating arterial oxygen saturation by processing data of only the latest pulse, thereby processing less data as a result of no overlap in the data, when the noise level is low and by combining the pulses for the time interval being evaluated to create an average pulse, thereby processing more data as a result of overlapping data subsegments, when the noise level is high. APPLE-1003, ¶78; APPLE-1005, 6:42-46, 8:48-62, 9:56-10:28, 11:42-48, FIG. 11 (steps 230, 240, 250). Thus, the oximeter of the combination of Diab, Amano, and Edgar would process less data while operating at the lower power consumption level when motion is not detected by (1) performing "spectral estimation on the signals... directly without motion artifact suppression," which includes the signal processor processing less data (only infrared samples) and "without motion artifact suppression," to calculate pulse rate, and (2) by using data from only the latest pulse to calculate blood

36

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

oxygen saturation.  *Id.*; APPLE-1007, 47:52-56, 48:6-33, 50:1-29.

### 5. Claim 21

**21. The monitor of claim 20, wherein said processors reduce an overlap in data blocks being processed.**

*Supra*, Ground 1B, Claim 11; APPLE-1003, ¶¶74-78, 61-62, 46-50, 52-55, 58.

### C. GROUND 1C: Claims 1-7 and 15-18 are obvious based on Diab, Amano, and Turcott

#### 1. Overview of Turcott

Similar to Diab, Turcott describes a pulse oximeter having a light source, including red and infrared LEDs, and a light detector, such as a photodetector. APPLE-1006, 11:15-41; yAPPLE-1003, ¶79.  The light source is driven with a pulse train.  APPLE-1006, 11:51-61.  Turcott describes that "[t]he optical power generated by the [light] source is adjusted to optimize the signal to noise ratio and to minimize power consumption" by adjusting "the drive current" or "the duty cycle of the pulse train," and "[t]o conserve energy, the [light] source is preferably driven with a low duty cycle pulse train."  APPLE-1006, 11:51-59.

#### 2. The Combination of Diab, Amano, and Turcott

Diab describes that the "signal processing system 334 also provides control for driving the light emitters 301, 302 with an emitter current control signal on the

emitter current control output 337" and that "the current could be adjusted for changes in the ambient room light and other changes which would [a]ffect the voltage input to the front end analog signal conditioning circuitry 330." APPLE-1007, 35:50-53, 36:2-6.  In the combination, the modification of Diab's oximeter (as supplemented with Amano's teachings) would include implementing the signal processor 334 to reduce the duty cycle of the light emitters to further minimize power consumption of the combined device based on Turcott's teaching of reducing the duty cycle to lower power consumption.  APPLE-1003, ¶80; APPLE-1006, 11:54-59.

### 3.    Reasons to Combine Diab, Amano, and Turcott

A POSITA would have been motivated and would have found it obvious and straightforward to combine Diab, Amano, and Turcott to achieve a patient monitor that further increases the signal-to-noise ratio and further reduces power consumption.  APPLE-1003, ¶81; APPLE-1004, 21:50-53, 22:4-6, 35:54-64; APPLE-1006, 11:54-59.  Diab, Amano, and Turcott are in the same field of art and relate to devices that provide pulse waveforms.  APPLE-1004, 21:3-8, 29:23-25, 31:2-8, 33:50-54, 34:3-14, 35:17-21, 36:23-27, 38:26-27, 40:23-27; APPLE-1006, 11:15-41; APPLE-1007, 34:27-28, 35:44-47, 49:25-32.  Both Amano and Turcott disclose a need to optimize the signal-to-noise ratio and minimize power consumption.  APPLE-1004, 21:50-53, 22:4-6, 35:54-64; APPLE-1006, 11:54-59.

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

Turcott teaches that reducing the duty cycle of the light source optimizes the

signal-to-noise ratio and minimizes power consumption.  APPLE-1006, 11:54-59.

A POSITA would have been motivated to implement Turcott's teaching of

reducing the duty cycle to lower power consumption in a pulse oximeter in Diab's

oximeter (as supplemented with Amano's teachings) to further minimize power

consumption of the combined device.  APPLE-1003, ¶81; APPLE-1006, 11:54-59.

A POSITA would have understood further minimizing power consumption in the

combined device to be desirable because further minimization would lead to longer

battery life.  *Id.*

Further, a POSITA would have found it obvious to modify Diab (as

supplemented with Amano's teachings) with Turcott because doing so entails the

use of known techniques and solutions to improve similar systems and methods in

the same way.  APPLE-1003, ¶82; *KSR*, 550 U.S. at 417.  A POSITA would have

recognized that applying Turcott's teachings to Diab (as supplemented with

Amano's teachings) would have led to predictable results without significantly

altering or hindering the functions performed by the oximeter.  APPLE-1003, ¶82.

In fact, a POSITA would have been motivated to provide the well-known

technique of reducing the duty cycle to lower power consumption to cause the

combined device to include such features to achieve the predictable benefits

offered by Turcott's description of the same.  *Id.*; APPLE-1006, 11:54-59.

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

Indeed, a POSITA would have had a reasonable expectation of success in making this modification (e.g., because Turcott describes a device operating in the proposed manner), and would have reasonably expected to reap benefits of reducing the duty cycle to lower power consumption. *Id*.; APPLE-1003, ¶83. Diab, Amano, and Turcott describe types of devices that provide pulse waveforms and, in combination, Turcott's features is implemented in Diab's oximeter (as supplemented with Amano's teachings) just as it is in Turcott's oximeter. *Id*. Accordingly, implementing Turcott's teaching of reducing the duty cycle of light sources to minimize power consumption, to operate a device as taught by Diab (as supplemented with Amano's teachings), would have been routine and straightforward to a POSITA, and it would have been clear that such a combination would predictably work and provide the expected functionality. *Id*.

### 4.    Claim 1

**1[p]: "A method of managing power consumption during continuous patient monitoring by adjusting behavior of a patient monitor, the method comprising:"**

*Supra*, Ground 1A, 9[p]; APPLE-1003, ¶¶46-50.

**1[a]: "driving one or more light sources configured to emit light into tissue of a monitored patient;"**
**1[b]: "receiving one or more signals from one or more detectors configured to detect said light after attenuation by said tissue;"**

*Supra*, Ground 1A, 9[a]-9[b]; APPLE-1003, ¶51.

40

**1[c]: "continuously operating a patient monitor at a lower power consumption level to determine measurement values for one or more physiological parameters of a patient;"**

*Supra*, Ground 1A, 9[c]; APPLE-1003, ¶52-55.

**1[d]: "comparing processing characteristics to a predetermined threshold; and"**

*Supra*, Ground 1A, 9[d]; APPLE-1003, ¶¶56-57.

**1[e]: "when said processing characteristics pass said threshold, transitioning to continuously operating said patient monitor at a higher power consumption level,"**

*Supra*, Ground 1A, 9[e]; APPLE-1003, ¶¶46-50, 52-55, 58.

**1[f]: "wherein said continuously operating at said lower power consumption level comprises reducing activation of an attached sensor,"**

In the combination, Diab describes that the "signal processing system 334 also provides control for driving the light emitters 301, 302 with an emitter current control signal on the emitter current control output 337." APPLE-1007, 35:50-53. Diab also teaches that "the current could be adjusted for changes in the ambient room light and other changes which would [a]ffect the voltage input to the front end analog signal conditioning circuitry 330." APPLE-1007, 36:2-6; APPLE-1003, ¶84.

Also in the combination, Turcott describes a pulse oximeter where "[t]he optical power generated by the [light] source is adjusted to optimize the signal to noise ratio and to minimize power consumption" by adjusting "the drive current,

the frequency of the pulse train, the pulse duration, or the duty cycle of the pulse

train," and "[t]o conserve energy, the [light] source is preferably driven with a low

duty cycle pulse train."  APPLE-1006, 11:51-59; APPLE-1003, ¶85.  A POSITA

would have recognized that the predictable modification of Diab (as supplemented

with Amano's teachings) as suggested by Turcott would include implementing the

oximeter's signal processor to reduce the drive current or the duty cycle of the

pulse train of the LEDs when the oximeter is operating at the lower power

consumption level, further minimizing power consumption.  *Id.*; APPLE-1006,

11:51-59.

In the combination, operating the LEDs of Diab with a reduced duty cycle

reduces the activation of the LEDs under the proper construction of "reducing

activation."  APPLE-1003, ¶86; APPLE-1006, 11:51-59.   For example, a reduced

duty cycle means that the power signal spends more time in each cycle in the "off"

state, leading to a reduction in the portion of each cycle during which the LEDs are

"activated."  *Id.*   Additionally, under a broader construction of "reducing

activation," a reduced drive current means that the amount of current used to

activate the LEDs is reduced, leading to reduced activation of the LEDs.  *Id.*

Accordingly, the combination of Diab, Amano, and Turcott teaches that

continuously operating at the lower power consumption state includes the signal

processor reducing activation of an attached sensor by reducing the duty cycle

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

(under the proper construction) or drive current (under a broader construction) of

the LEDs.  *Id.*

**1[g]: "said sensor positioning said light sources and said detectors proximate said tissue."**

*Supra*, Ground 1A, 9[a]-9[b]; APPLE-1003, ¶51.

### 5.    Claim 2

**2. The method of claim 1, wherein said reducing activation comprises reducing a duty cycle of said sensor.**

*Supra*, Ground 1C, 1[f]; APPLE-1003, ¶¶84-86.

### 6.    Claim 3

**3. The method of claim 1, wherein during said operating at said higher power consumption level, monitoring when said processing characteristics recedes from said threshold; and when receded, transitioning to continuously operating said patient monitor at said lower power consumption level.**

Based on Diab's and Amano's teachings as previously discussed (*supra*, Ground 1A, 9[p] and 9[c]), a POSITA would have found obvious that, during operation at the higher power consumption level "using the motion artifact suppression module 580," when motion is not detected based on processing characteristics ("average peak width value") passing the threshold (a value corresponding to "wider peaks indicating motion"), the signal processor 334 transitions to the lower power consumption level where "spectral estimation on the signals is *carried out directly without motion artifact suppression*."  APPLE-

43

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

1007, 47:52-56; APPLE-1004, 21:50-22:6, 35:54-64; APPLE-1003, ¶¶87, 46-50,

52-55.  In the combination, Diab's oximeter continuously operates by

"comput[ing] the arterial and venous blood oxygen saturations of a physiological

system on a ***continuous*** or nearly continuous time basis... regardless of whether or

not the physiological system undergoes voluntary motion."  APPLE-1007, 34:10-

12, 63:38-41, FIG. 11.

### 7.    Claim 4

**4. The method of claim 1, wherein said processing characteristics comprise signal characteristics from one or more light sensitive detectors.**

As previously discussed, the processing characteristics of Diab (the "average

peak width value" of the power curve of the photodetector signal) are signal

characteristics from one or more light sensitive detectors that indicate the presence

of motion-induced noise in the detector signal.  *Supra*, Ground 1A, 9[d]; APPLE-

1003, ¶¶88, 56-57.

### 8.    Claim 5

**5. The method of claim 4, wherein said signal characteristics comprise signal strength.**

In the combination, Diab's signal processor 334 calculates "peak width of a

power curve" where "[t]he width of the peaks provides some indication of motion

by the patient—wider peaks indicating motion."  APPLE-1007, 46:13-20, 46:53-

55.  Accordingly, the "average peak width value" (processing characteristics)

44

obtained from a signal provided by a photodetector indicates a strength of motion-induced noise in the photodetector signal.  APPLE-1003, ¶89.

Also in the combination, Turcott teaches that "[t]he optical power to the source is adjusted to optimize the signal to noise ratio."  APPLE-1006, 11:51-61.  Accordingly, signal to noise ratio indicates strength of the signal as well as the noise.  APPLE-1003, ¶90.

### 9.    Claim 6

**6. The method of claim 4, wherein said signal characteristics comprise a presence of noise.**

*Supra*, Ground 1C, Claim 4; APPLE-1003, ¶¶88, 56-57.

### 10.    Claim 7

**7. The method of claim 4, wherein said signal characteristics comprise a presence of motion induced noise.**

*Supra*, Ground 1C, Claim 4; APPLE-1003, ¶¶88, 56-57.

### 11.    Claim 15

**15[p]: "A patient monitor configured to manage power consumption during continuous patient monitoring, the monitor comprising:"**

*Supra*, Ground 1A, 9[p]; APPLE-1003, ¶¶46-50.

**15[a]: "an input configured to receive at least one signal responsive to light detected after attenuation by body tissue of a patient by a noninvasive sensor; and"**

*Supra*, Ground 1A, 9[a]-9[b]; APPLE-1003, ¶51.

**15[b]: "one or more processors continuously operating at a lower power consumption level to determine measurement values for one or more physiological parameters of said patient,"**

*Supra*, Ground 1A, 9[c]; APPLE-1003, ¶¶52-55.

**15[c]: "said processors comparing processing characteristics to a predetermined threshold, and"**

*Supra*, Ground 1A, 9[d]; APPLE-1003, ¶¶56-57.

**15[d]: "when said processing characteristics pass said threshold, said processors transitioning to continuously operating at a higher power consumption level,"**

*Supra*, Ground 1A, 9[e]; APPLE-1003, ¶¶46-50, 52-55, 58.

**15[e]: "wherein processors reduce activation of an attached sensor."**

*Supra*, Ground 1C, 1[f]; APPLE-1003, ¶¶84-86.

### 12.    Claim 16

**16. The monitor of claim 15, wherein said processors reduce a duty cycle of said sensor.**

*Supra*, Ground 1C, 1[f]; APPLE-1003, ¶¶84-86.

### 13.    Claim 17

**17. The monitor of claim 15, wherein during said operating at said higher power consumption level, said processors monitors when said processing characteristics recedes from said threshold; and when receded, said processors transition to continuously operating at said lower power consumption level.**

*Supra*, Ground 1C, Claim 3; APPLE-1003, ¶¶87, 46-50, 52-55.

46

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

### 14.    Claim 18

**18. The monitor of claim 15, wherein said processing characteristics comprise signal characteristics from one or more light sensitive detectors.**

*Supra*, Ground 1C, Claim 4; APPLE-1003, ¶¶88, 56-57.

> D.    **GROUND 2A: Claims 9-10, 12-14, 20, and 22-24 are obvious based on Diab and the GK-POSITA;**
> **GROUND 2B: Claims 11 and 21 are obvious based on Diab, the GK-POSITA, and Edgar;**
> **GROUND 2C: Claims 1-7 and 15-18 are obvious based on Diab, the GK-POSITA, and Turcott**

As articulated in Ground 1A, in light of Amano's teaching of reducing power consumption by suspending unnecessary processing operations, a POSITA would have found it obvious that Diab's oximeter likewise reduces power consumption by not performing motion artifact suppression when no motion is detected.  APPLE-1004, 21:50-22:6, 35:54-64; APPLE-1007, 47:52-56, 48:34-49:38; APPLE-1003, ¶91.  Diab and Amano is a combination in which Amano is offered to demonstrate a broader concept that is well understood by a POSITA, namely that reducing the amount of processing by suspending operations reduces power consumption.

This concept is well known to a POSITA, and thus, for Grounds 2A-2C, the application of Diab alone reveals to a POSITA, based on their general knowledge and ordinary level of skill, that changes in power consumption were obvious from changes in the amount of processing that are contemplated by Diab.  APPLE-1003,

47

¶92.  This is corroborated by a number of references, such as U.S. Patent No. 5,027,410 (APPLE-1015, 10:62-65); U.S. Publication No. 2003/000442 (APPLE-1016, [0103]); U.S. Publication No. 2002/003238 (APPLE-1017, [0098]); U.S. Patent Application Publication No. 2003/0163287 (APPLE-1018, [0241]); U.S. Patent No. 6,163,721 (APPLE-1019, 2:25-27); U.S. Patent No. 5,058,203 (APPLE-1020, 1:10-12 and 2:23-25); U.S. Patent No. 6,711,691 (APPLE-1021, 1:59-61); and Amano.  *Id.*

A POSITA would have further understood that Diab's oximeter reduces the amount of processing by the signal processor when motion is not detected by processing less data (only infrared samples) and "without motion artifact suppression," thereby reducing the power consumed by the processor.  APPLE-1007, 47:52-56, 48:6-33, 50:1-29; APPLE-1003, ¶93.  Conversely, a POSITA also would have understood that Diab's oximeter increases the amount of processing by the signal processor when motion is detected by processing more data (infrared samples, red samples, and saturation value) and "using the motion artifact suppression module 580." *Id.*  As such, a POSITA would have recognized that reducing unnecessary processing reduces power consumption of the oximeter and increasing the amount of processing increases power consumption of the oximeter. *Id.*  Accordingly, Diab's oximeter, by adjusting the amount of processing based on the presence or absence of motion, manages power consumption during continuous

48

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

patient monitoring.  *Id.*

**E.    GROUND 3A: Claims 9-10, 12-14, 20, and 22-24 are obvious based on Amano**

**1.    Overview of Amano**

Amano describes a "pulse wave examination apparatus" that allows a subject to "detect his pulse condition continuously in his daily life."  APPLE-1004, 36:23-27, 38:26-27; APPLE-1003, ¶_94  The pulse wave examination apparatus includes a "pulse wave detecting section 10" that detects the pulse waveform of the periphery of a subject.  APPLE-1004, 21:3-8, 29:23-25, 31:2-8, 33:50-54, 34:3-14, 35:17-21, 40:23-27.  Amano further describes that "body movement causes the blood flow of the subject to fluctuate," and "a component due to the body movement is superimposed on the pulse waveform" output from the pulse wave detecting section 10, which can cause "difficulty in making an exact judgment of the pulse condition."  APPLE-1004, 33:54-63.  Hence, the pulse wave examination apparatus also includes a judging section 22 that determines whether body movement is present by comparing the body movement detected by the body movement detecting section 20 with a threshold value.  APPLE-1004, 21:57-65, 34:3-15, 35:54-59; APPLE-1003, ¶¶95-96.  When the judging section 22 detects that no body movement is present, the operations of a waveform treating section 21 and a body movement eliminating section 30 are suspended and the pulse

49

waveform from the pulse wave detecting section 10 is output directly from the body movement eliminating section 30.  APPLE-1004, 21:65-22:4, 35:54-64. Amano discloses that suspending the operations of sections 21 and 30 when there is no body movement reduces power consumption of the apparatus.  APPLE-1004, 21:50-53, 22:4-6, 35:54-64; APPLE-1003, ¶_96.

As articulated in Ground 1A, the combination of Diab and Amano renders obvious limitations 9[d], 12[d], 15[c], 20[c], and 22[c] based, e.g., on Diab's detection of motion from a signal provided by a photodetector corresponding to the attenuated visible and infrared light energy signals and determining whether motion is present by comparing the "average peak width value" with a value corresponding to "wider peaks indicating motion."  APPLE-1007, 34:10-20, 35:23-27, 44:38-46:55, 46:53-55, 47:51-56.  In Ground 1A, these limitations are rendered obvious even under a limiting interpretation requiring "processing characteristics" to be obtained from a signal provided by a photodetector.  APPLE-1003, ¶97.

For Grounds 3A-3B, these limitations are rendered obvious by Amano's disclosure of "an acceleration sensor [that] detects the body movement of a subject to output the detected signal as a signal TH" and a "judging section 22 [that] determines whether body movement is present or not, based on the body movement waveform TH, to yield a control signal C... by comparing a threshold value with the body movement waveform TH."  APPLE-1004, 21:57-65, 34:3-15,

35:54-59.  Amano renders obvious these limitations based on the plain meaning  of "processing characteristics."  APPLE-1003, ¶98.  Indeed, the  plain meaning of "processing characteristics" includes characteristics or features obtained from or used for processing information, including Amano's acceleration sensor output, which is used by Amano to provide a body movement waveform that used for processing of the pulse waveform.  Id.; APPLE-1004, 21:9-49.  Accordingly, Grounds 3A-3B rely on Amano's teachings alone to satisfy the "processing characteristics" limitations.

## 2.    Claim 9[3]

**Limitation 9[p]**

Amano teaches a method for operating a "pulse wave examination apparatus" that allows a subject to "detect his pulse condition ***continuously*** in his daily life."  APPLE-1004, 36:23-27, 38:26-27; APPLE-1003, ¶¶99-100.  A portion of the functional diagram of the apparatus is shown below:

---

[3] For the sake of brevity, the remaining analysis will refer to the claim limitations by the identifiers listed in Grounds 1A-1C.

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703



APPLE-1004, Detail of FIG. 1 (*see also* FIGS. 3, 24)

The pulse wave examination apparatus of Amano manages power consumption during continuous patient pulse monitoring by also including a "judging section 22 [that] determines whether body movement is present or not, based on the body movement waveform TH, to yield a control signal C... by comparing a threshold value with the body movement waveform TH."  APPLE-1004, 21:57-65, 34:3-15, 35:54-59; APPLE-1003, ¶101.  "[W]hen the control signal C indicates that no body movement is present, the operations of the waveform treating section 21 and body movement component eliminating section 30 are suspended" and "the pulse waveform MH is output directly from the body movement component eliminating section 30."  APPLE-1004, 21:65-22:4, 35:54-64.  Amano describes that suspending the operations of sections 21 and 30 when there is no body movement "can improve the SN ratio of the output signal from the

52

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

body movement component eliminating section 30 and reduce power consumption in the apparatus," "thereby reducing calculation time and power consumption and improving the SN ratio." *Id.*, 21:50-22:6, 35:54-64.

## Limitations 9[a]-9[b]

In the combination, Amano's pulse wave detecting section 10 is "mounted on the root of a finger," as shown in FIG. 37B reproduced below, and "can monitor the monitor parameters signifying blood pressure noninvasively." APPLE-1004, 40:44-46, 2:46-50, 3:24-28; APPLE-1003, ¶102.



APPLE-1004, Detail of FIG. 37B

The pulse wave detecting section 10 includes an LED (a light source) and a phototransistor (a light detector). APPLE-1004, 41:12-13, FIG. 38; APPLE-1003, ¶103. When the pulse wave examination apparatus is powered on, light is emitted from the LED. APPLE-1004, 41:14-15. "The ***emitted light is reflected***" (and then attenuated) "***by the blood vessel and tissues*** of the subject and is then ***received by the phototransistor***." *Id.*, 41:15-17, 54:13-30.[4] "A combination of such a blue

---

[4] All emphasis added unless otherwise indicated.

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

LED and a phototransistor ensures that a pulse wave is detected."  APPLE-1004.

41:17-39; APPLE-1003, ¶103.

**Limitation 9[c]**

Amano's pulse wave examination apparatus allows a subject to "detect his

pulse condition ***continuously*** in his daily life."  APPLE-1004, 36:23-27, 38:26-27.

"[W]hen... no body movement is present, the operations of the waveform treating

section 21 and body movement component eliminating section 30 are suspended"

and "the pulse waveform MH is output directly from the body movement

component eliminating section 30" to, for example, "an FFT treating section 40

[that] provides the signal MHj, showing a pulse wave component, with FFT

treatment" shown in FIG. 1 below.  APPLE-1004, 21:57-22:9, 34:3-15, 35:54-64,

FIG. 1, *see also* FIGS. 3, 24.  Amano describes that suspending the operations of

sections 21 and 30 when there is no body movement "***reduce[s] power***

***consumption*** in the apparatus."  APPLE-1004, 21:50-22:6, 35:54-64; APPLE-

1003, ¶104.

A functional diagram of the apparatus from FIG. 1 of Amano, with the

suspended operations of sections 21 and 30 annotated and with the pulse waveform

MH output directly from the body movement component eliminating section 30 to

the FFT treating section 40 annotated, is shown below.  A POSITA would have

understood that the sections other than sections 21 and 30 are continuously

54

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

operating to determine a pulse waveform and a pulse condition while sections 21

and 30 are suspended.  APPLE-1003, ¶105; *see, e.g.,* APPLE-1004, 21:57-22:9,

34:3-15, 35:54-64, 36:23-27, 38:26-27, FIGS. 1, 3, 24.



APPLE-1004, Detail of FIG. 1 (annotated)

## Limitation 9[d]

Amano's pulse wave examination apparatus includes "an acceleration sensor

Exhibit K
Page 921

[that] detects the body movement of a subject to output the detected signal as a signal TH" and a "judging section 22 [that] determines whether body movement is present or not, based on the body movement waveform TH, to yield a control signal C... by *comparing a threshold value with the body movement waveform TH*." APPLE-1004, 21:57-65, 34:3-15, 35:54-59. Accordingly, Amano teaches comparing processing characteristics (body movement waveform) to a predetermined threshold (threshold value). *Id.*; APPLE-1003, ¶106.

**Limitation 9[e]**

Amano teaches that "when... no body movement is present, the operations of the waveform treating section 21 and body movement component eliminating section 30 are suspended" and "the pulse waveform MH is output directly from the body movement component eliminating section 30." APPLE-1004, 21:65-22:4, 35:54-64. Amano describes that suspending the operations of sections 21 and 30 when there is no body movement "reduce[s] power consumption in the apparatus." APPLE-1004, 21:50-22:6, 35:54-64; APPLE-1003, ¶107.

A POSITA would have understood that when body movement is detected (based on processing characteristics passing a predetermined threshold), the apparatus continuously operates and performs the operations of the "waveform treating section 21 [that] comprises, for instance, a low-pass filter, and performs waveform-shaping treatment of the signal TH output from the body movement

56

detecting section 20 to output a signal MHt showing a body movement

component," and the "body movement eliminating section 30 [that] subtracts the

signal MHt showing a body movement component from the signal MH output

from the pulse wave detecting section 10 to output a signal MHj showing a pulse

wave component."  APPLE-1004, 21:9-20, 21:37-46, 33:63-67, 36:23-27, 38:23-

27; APPLE-1003, ¶108.  Performing the operations of sections 21 and 30 would

lead to higher power consumption relative to the reduced power consumption when

the operations of sections 21 and 30 are suspended.  *Id.*; APPLE-1004, 21:50-22:6,

35:54-64.

**Limitation 9[f]**

As previously discussed (*supra* Ground 3A, 9[p] and 9[c]), Amano's

apparatus continuously operates at the lower power consumption level by

suspending the operations of sections 21 and 30 when no body movement is

detected.  APPLE-1004, 21:50-22:4, 22:4-6, 34:3-15, 35:54-64, 36:23-27, 38:26-

27; APPLE-1003, ¶¶99-101, 104-105.  The "waveform treating section 21

comprises, for instance, a low-pass filter, and performs waveform-shaping

treatment of the signal TH output from the body movement detecting section 20 to

output a signal MHt showing a body movement component," and the "body

movement eliminating section 30 subtracts the signal MHt showing a body

movement component from the signal MH output from the pulse wave detecting

section 10 to output a signal MHj showing a pulse wave component." APPLE-1004, 21:9-20. As such, the operations of sections 21 and 30 perform processing on and output signals, including signal TH, signal MHt, signal MH, and signal MHj. APPLE-1003, ¶109; APPLE-1004, 21:9-20. Accordingly, suspending the operations of sections 21 and 30 would reduce the amount of processing performed, and power consumed, by Amano's apparatus. *Id.*

Additionally, Amano's pulse wave examination apparatus allows a subject to "detect his pulse condition continuously in his daily life." APPLE-1004, 36:23-27, 38:26-27. A POSITA would have recognized that signal processors are commonly and advantageously used in physiological monitors to process and extract information from data signals continuously in real-time. *Id.*; APPLE-1003, ¶110 (citing APPLE-1005, 1:45-48; APPLE-1007, 1:31-35; APPLE-1014, 4:40-41). Thus, a POSITA would have found obvious that the operations of sections 21 and 30 are performed by a signal processor in order to allow the subject to "detect his pulse condition continuously in his daily life." *Id.*; APPLE-1004, 36:23-27, 38:26-27. Accordingly, a POSITA would have found obvious that suspending the operations of sections 21 and 30 reduces an amount of processing by the signal processor performing the operations of sections 21 and 30. *Id.*; APPLE-1004, 21:9-20.

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

### 3.    Claim 10

As previously discussed (*supra* Ground 3A, 9[f]), Amano's apparatus reduces the amount of processing while the operations of sections 21 and 30 are suspended.  APPLE-1003, ¶¶99-101, 104-105, 109-110; APPLE-1004, 21:50-22:4, 22:4-6, 34:3-15, 35:54-64, 36:23-27, 38:26-27.  The "waveform treating section 21 comprises, for instance, a low-pass filter, and performs waveform-shaping treatment of the signal TH output from the body movement detecting section 20 to output a signal MHt showing a body movement component," and the "body movement eliminating section 30 subtracts the signal MHt showing a body movement component from the signal MH output from the pulse wave detecting section 10 to output a signal MHj showing a pulse wave component."  APPLE-1004, 21:9-20.  While the operations of sections 21 and 30 are suspended, the pulse wave signal is not filtered or treated by removing the body movement component, resulting in less data being processed.  APPLE-1004, 21:50-22:4, 22:4-6, 34:3-15, 35:54-64, 36:23-27, 38:26-27; APPLE-1003, ¶114.

### 4.    Claim 12

**Limitations 12[p]-12[e]**

*Supra*, Ground 3A, 9[p]-9[e]; APPLE-1003, ¶¶99-108.

**Limitation 12[f]**

As previously discussed (*supra* Ground 3A, 9[d]), Amano teaches

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

comparing processing characteristics to a predetermined threshold to determine whether body movement is present in the waveform.  APPLE-1004, 21:57-65, 34:3-15, 35:54-59; APPLE-1003, ¶106.  In Amano, "when... no body movement is present, the operations of the waveform treating section 21 and body movement component eliminating section 30 are suspended" and "the pulse waveform MH is output directly from the body movement component eliminating section 30." APPLE-1004, 21:65-22:4, 35:54-64.  Amano teaches that suspending the operations of sections 21 and 30 when there is no body movement "reduce[s] power consumption in the apparatus."  APPLE-1004, 21:50-22:6, 35:54-64; APPLE-1003, ¶111.

A POSITA would have understood that when body movement is present, the detected condition *overrides* the reduced power consumption state, causing the apparatus to continuously operate at a higher power consumption state and perform the operations of sections 21 and 30.  APPLE-1004, 21:9-20, 21:37-46, 33:63-67, 36:23-27, 38:23-27; APPLE-1003, ¶112.  Accordingly, the processing characteristic passing a predetermined threshold, indicating that body movement is present, is an override condition that overrides the reduced power consumption state.  *Id*.

### 5.    Claim 13

Amano teaches that "various types of medical information can be obtained

60

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

by the detection of pulse wave and analysis of the detected pulse wave... making a diagnosis possible on the basis of these types of information." APPLE-1004, 1:19-27. Amano's apparatus "can judge the pulse condition objectively and accurately." APPLE-1004, 3:20-23; APPLE-1003, ¶115.

A POSITA would have found obvious that Amano's apparatus could be used to obtain various types of medical information, e.g., the pulse condition, "objectively and accurately" during critical care of a patient in a critical care environment. APPLE-1003, ¶116 (citing APPLE-1005, 1:67-2:10; APPLE-1014, 2:11-18). In its description of the prior art in the background section, the '703 patent itself admits that using pulse oximetry devices to obtain measurements during a critical care environment were well known. APPLE-1001, 1:18-23. Obtaining the pulse condition during critical care would include obtaining measurements indicating whether the override condition, e.g., the processing characteristic passing a predetermined threshold indicating motion is present, exists to control the operation of the apparatus in either the reduced power consumption state or the higher power consumption state. *Id.*; APPLE-1004, 1:19-27, 3:20-23; APPLE-1003, ¶116.

### 6. Claim 14

As previously discussed (*supra* Ground 3A, 12[f]), the processing characteristic passing a predetermined threshold, indicating that body movement or

motion is present, is an override condition that overrides the reduced power consumption state. APPLE-1003, ¶¶106, 111-112; APPLE-1004, 21:9-20, 21:37-46, 33:63-67, 36:23-27, 38:23-27. As such, the override condition includes a monitored parameter exhibiting a predefined behavior, e.g., the processing characteristic (e.g., the accelerometer signal of Amano or the average peak width of Diab) passing a predetermined threshold indicating that body movement or motion is present. *Id.*; APPLE-1003, ¶117

### 7. Claim 20

**Limitation 20[p]**

*Supra*, Ground 3A, 9[p]; APPLE-1003, ¶¶99-101.

**Limitation 20[a]**

S*upra*, Ground 3A, 9[a]-9[b]); APPLE-1003, ¶¶102-103.

**Limitation 20[b]**

In addition to Amano's teachings previously discussed (*supra*, Ground 3A, [9c]; APPLE-1003, ¶¶104-105), Amano teaches that the pulse wave examination apparatus includes "CPUs, memories and the like" and "the CPU undergoes various calculating processes and comparing processes on the basis of control programs stored in part of the memories." APPLE-1004, 30:60-67, 41:4-6 ("a CPU controlling various calculations and transformations"). A POSITA would have understood that the "CPUs" (one or more processors) of Amano perform the

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

operations of the sections of the apparatus.  APPLE-1003, ¶113; APPLE-1004, 30:60-67, 41:4-6.

**Limitation 20[c]**

*Supra*, Ground 3A, 9[d], 20[b]; APPLE-1003, ¶¶104-106, 113.

**Limitation 20[d]**

*Supra*, Ground 3A, 9[e], 20[b]; APPLE-1003, ¶¶107-108, 104-105, 113.

**Limitation 20[e]**

*Supra*, Ground 3A, 9[f], 20[b]; APPLE-1003, ¶¶99-101, 104-105, 109-110, 113.

## 8.    Claim 22

**Limitation 22[p]-22[d]**

*Supra*, Ground 3A, 20[p]-20[d]; APPLE-1003, ¶¶99-105, 107-108, 113.

**Limitation 22[e]**

*Supra*, Ground 3A, 12[f]; APPLE-1003, ¶¶106, 111-112.

## 9.    Claim 23

*Supra*, Ground 3A, Claim 13; APPLE-1003, ¶¶115-116.

## 10.    Claim 24

*Supra*, Ground 3A, Claim 14; APPLE-1003, ¶¶106, 111-112, 117.

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

### F.   GROUND 3B: Claims 1-3 and 15-17 are obvious based on Amano and Turcott

#### 1.   The Combination of Amano and Turcott

In the combination, the modification of Amano's apparatus would include implementing the apparatus to reduce the duty cycle of the light emitter to further minimize power consumption of the combined device based on Turcott's teaching of reducing the duty cycle to lower power consumption.  APPLE-1003, ¶118; APPLE-1006, 11:54-59.

#### 2.   Reasons to Combine Amano and Turcott

A POSITA would have been motivated and would have found it obvious and straightforward to combine Amano and Turcott to achieve a pulse wave examination apparatus that optimizes the signal-to-noise ratio and minimizes power consumption.  APPLE-1003, ¶119; APPLE-1004, 21:50-53, 22:4-6, 35:54-64; APPLE-1006, 11:54-59.  Both Amano and Turcott are in the same field of art and relate to pulse wave examination devices.  APPLE-1004, 21:3-8, 29:23-25, 31:2-8, 33:50-54, 34:3-14, 35:17-21, 36:23-27, 38:26-27, 40:23-27; APPLE-1006, 11:15-41.  Both Amano and Turcott disclose a need to optimize the signal-to-noise ratio and minimize power consumption.  APPLE-1004, 21:50-53, 22:4-6, 35:54-64; APPLE-1006, 11:54-59.   Turcott teaches that reducing the duty cycle of the light source optimizes the signal-to-noise ratio and minimizes power consumption.

64

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

APPLE-1006, 11:54-59.  A POSITA would have been motivated to implement Turcott's teaching of reducing the duty cycle to lower power consumption in a pulse oximeter in combination with Amano's pulse wave examination apparatus to further minimize power consumption.  APPLE-1003, ¶119; APPLE-1006, 11:54-59.  A POSITA would have understood further minimizing power consumption in Amano's device to be desirable because further minimization would lead to longer battery life.  *Id.*

Further, a POSITA would have found it obvious to modify Amano with Turcott because doing so entails the use of known solutions to improve similar systems and methods in the same way.  APPLE-1003, ¶120; *KSR*, 550 U.S. at 417. A POSITA would have recognized that applying Turcott's teachings to Amano's pulse wave examination apparatus would have led to predictable results without significantly altering or hindering the functions performed by the pulse wave examination apparatus.  APPLE-1003, ¶120.  In fact, a POSITA would have been motivated to provide the well-known technique of reducing the duty cycle to lower power consumption to cause Amano's pulse wave examination apparatus to include such features to achieve the predictable benefits offered by Turcott's description of the same.  *Id.*; APPLE-1006, 11:54-59.

Indeed, a POSITA would have had a reasonable expectation of success in making this modification, and would have reasonably expected to reap benefits of

65

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

reducing the duty cycle to lower power consumption. *Id.*; APPLE-1003, ¶121.

Amano and Turcott describe the same types of pulse waveform examination devices and, in combination, Turcott's features is implemented in Amano's pulse waveform examination apparatus just as it is in Turcott's pulse oximeter. *Id.* Accordingly, implementing Turcott's teaching of reducing the duty cycle of light sources to minimize power consumption, to operate a pulse detector as taught by Amano, would have been routine and straightforward to a POSITA, and it would have been clear that such a combination would predictably work and provide the expected functionality. *Id.*

### 3.    Claim 1

**Limitations 1[p]-1[e]**

*Supra*, Ground 3A, 9[p]-9[e]; APPLE-1003, ¶¶99-108.

**Limitation 1[f]**

In the combination, Turcott describes a pulse oximeter where "[t]he optical power generated by the [light] source is adjusted to optimize the signal to noise ratio and to minimize power consumption" by adjusting "the drive current, the frequency of the pulse train, the pulse duration, or the duty cycle of the pulse train," and "[t]o conserve energy, the [light] source is preferably driven with a low duty cycle pulse train." APPLE-1006, 11:51-59; APPLE-1003, ¶122.

A POSITA would have recognized that the predictable modification of

66

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

Amano as suggested by Turcott would include implementing the apparatus to reduce the drive current or the duty cycle of the pulse train of the LED, further minimizing power consumption.  APPLE-1003, ¶123; APPLE-1006, 11:51-59. When the apparatus is operating in the lower power consumption state, the apparatus also reduces the drive current or the duty cycle of the pulse train of the LED to further minimize power consumption.  *Id.*

Operating the LED of Amano with a reduced drive current or duty cycle reduces the activation of the LED.  APPLE-1003, ¶124.   For example, a reduced duty cycle means that the power signal spends more time in each cycle in the "off" state, leading to a reduction in the portion of each cycle during which the LED is "activated."   *Id.*   Additionally, a reduced drive current means that the amount of current used to activate the LED is reduced, leading to reduced activation of the LED.  *Id.*  Accordingly, the combination of Amano and Turcott teaches that continuously operating at the lower power consumption state includes reducing activation of an attached sensor by reducing the drive current or the duty cycle of the LED.  *Id.*

**Limitation 1[g]**

*Supra*, Ground 3A, 9[a]-9[b]; APPLE-1003, ¶¶102-103.

### 4.    Claim 2

*Supra*, Ground 3B, 1[f]; APPLE-1003, ¶¶122-124.

67

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

### 5.    Claim 3

In the combination, Amano's pulse wave examination apparatus allows a subject to "detect his pulse condition continuously in his daily life."  APPLE-1004, 36:23-27, 38:26-27; APPLE-1003, ¶125.  As previously discussed (*supra* Ground 3A, 9[d]), Amano teaches comparing processing characteristics to a predetermined value to determine whether body movement is present in the waveform. APPLE-1004, 21:57-65, 34:3-15, 35:54-59; APPLE-1003, ¶106.  When the apparatus of Amano is continuously operating in the higher power consumption state, the apparatus compares processing characteristics to a predetermined value to determine whether motion is present in the waveform.  APPLE-1004, 21:57-65, 34:3-15, 35:54-59; APPLE-1003, ¶125.

Through Amano, the combination provides that "when... no body movement is present, the operations of the waveform treating section 21 and body movement component eliminating section 30 are suspended" and "the pulse waveform MH is output directly from the body movement component eliminating section 30." APPLE-1004, 21:65-22:4, 35:54-64.  Amano teaches that suspending the operations of sections 21 and 30 when there is no body movement "reduce[s] power consumption in the apparatus."  APPLE-1004, 21:50-22:6, 35:54-64; APPLE-1003, ¶126.  Accordingly, Amano teaches that during operating at the higher power consumption level where the operations of sections 21 and 30 are

68

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

performed, the apparatus monitors when the processing characteristics recedes from the threshold, indicating that no body movement or motion is present, and when receded, transitioning to continuously operating the patient monitor at the lower power consumption level where the operations of sections 21 and 30 are suspended.  APPLE-1003, ¶126; APPLE-1004, 21:57-22:4, 34:3-15, 35:54-59.

### 6.    Claim 15

**Limitation 15[p]**

*Supra*, Ground 3A, 9[p]; APPLE-1003, ¶¶99-101.

**Limitation 15[a]**

*Supra*, Ground 3A, 9[a]-9[b]; APPLE-1003, ¶¶102-103.

**Limitation 15[b]**

*Supra*, Ground 3A, 20[b]; APPLE-1003, ¶¶104-105, 113.

**Limitation 15[c]**

*Supra*, Ground 3A, 20[c]; APPLE-1003, ¶¶104-106, 113.

**Limitation 15[d]**

*Supra*, Ground 3A, 20[d]; APPLE-1003, ¶¶107-108, 104-105, 113.

**Limitation 15[e]**

*Supra*, Ground 3A, 20[b]; Ground 3B, 1[f]; APPLE-1003, ¶¶104-105, 113, 122-124.

69

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

### 7. Claim 16

*Supra*, Ground 3A, 20[b]; Ground 3B, 1[f]; APPLE-1003, ¶¶104-105, 113, 122-124.

### 8. Claim 17

*Supra*, Ground 3B, Claim 3; APPLE-1003, ¶¶125-126, 106.

## IV. PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION

Consistent with Congressional intent and goals of *NHK*/*Fintiv*,[5] Apple asks the Board alone to consider challenges raised in this Petition. *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11, 6 (PTAB 2020). As explained below, *Fintiv* favors institution.

### A. Factor 1: Institution will increase the likelihood of stay

Institution will enable the Board to resolve the issue of validity, and a

---

[5] The *NHK-Fintiv* rule should not be applied because it violates the AIA, which allows IPR to proceed in tandem with infringement litigation so long as the petition is filed within one year of service of a complaint of infringement. *See* 35 U.S.C. § 315(b). The rule also is arbitrary and capricious because its vague factors lead to speculative, unpredictable, and unfair outcomes. Further, the rule is procedurally invalid because it was not adopted through notice-and-comment rulemaking.

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

finding of invalidity will relieve the Central District of California (the "District Court") of the need to continue with the companion litigation.  Apple intends to move to stay the District Court case, and the opportunity for such simplification increases the likelihood that the court will grant a stay in view of IPR institution. *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case No. 2:16-cv-642-JRG, 2-3 (E.D. Tex. 2017); *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 13-CV-1058, 2015 WL 1069111 (E.D. Tex. 2015).

### B.    Factor 2: District Court schedule

Trial in the District Court case is scheduled for April 5, 2022.  APPLE-1031, 1.  Based on the 18-month IPR schedule, a Final Written Decision ("FWD") in an IPR arising from the present Petition would issue in early March of 2022, prior to the District Court trial date.

In addition, as in *NHK*, district court trial dates shift, even in normal times. *Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap. 22, 17 (PTAB 2019).  The District Court is one of the country's busiest patent courts, and the trial date of another case in the District Court has recently been postponed by approximately ten months.  APPLE-1036, 2.  Scheduling issues cannot be ruled out, as experts have professed that additional COVID-19 outbreaks are likely to arise and California is facing new outbreaks.  APPLE-1034, 1 ("Fauci says second wave of coronavirus is 'inevitable'"); APPLE-1035, 4 ("Los Angeles

Exhibit K
Page 937

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

County is currently" at "275 [cases] per 100,000 [residents]," which is higher than the recommended level (100 per 100,000) for reopening).

### C.    Factor 3: Apple's investment in IPR outweighs forced investment in litigation to date

District court proceedings are still at an early phase.  The parties have yet to file claim construction briefs, no claim construction orders have issued, and the *Markman* hearing is not scheduled until February 8, 2021.  APPLE-1031, 1.  In addition, discovery is not scheduled to close until July 5, 2021.  *Id.*

Apple's substantial investment in these IPR proceedings should counterbalance—if not outweigh—the resources invested in the co-pending litigation given the speed with which Apple is filing IPR petitions on over 150 claims across seven patents.  It would be unjust to consider resources expended in District Court (equally by both parties), without considering Apple resources expended to prepare nine IPR petitions that would be irretrievably lost without consideration on the merits, in addition to the extensive expenses that may be foregone through institution of Apple's petitions and that will otherwise certainly follow in co-pending litigation for which significant milestones exist.  *See, e.g., Apple v. Seven Networks*, IPR2020-00255, Paper 13 at 12-15 (PTAB July 28, 2020) (declining to exercise 314(a) discretion on petitions filed 9 months after the commencement of co-pending litigation where a large number of patents were

72

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

included in the litigation, and a large number of claims from each patent were challenged in the petitions).

### D.    Factor 4: The Petition raises unique issues

Consistent with *Fintiv*, Apple asks the Board to consider the unique challenges raised in the Petition.  Apple has voluntarily stipulated to counsel for Patent Owner that, if the Board institutes the present Petition, Apple will not assert that the challenged claims are invalid on the pending Petition's asserted grounds in *Masimo Corporation et al. v. Apple Inc*., Case No. 8:20-cv-00048 (C.D. Cal.). APPLE-1032, 1; *see, e.g., Apple v. Seven* at 15-17 (finding that such a stipulation by a petitioner "mitigates, at least to some degree, the concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions").

In addition, the Petition addresses claims that will not be addressed in District Court.  Although Patent Owner has not yet narrowed the asserted claims, the District Court recently ordered the parties to submit "a joint proposal for an initial reduction of infringement contentions" by September 21, 2020.  APPLE-1033, 1.  Thus, based on this ordered reduction in the asserted claims, the District Court will necessarily address fewer claims than are challenged in this Petition (which challenges all claims of the patent), even assuming the District Court addresses validity at all, which is presently unknowable.  *See, e.g., Apple v. Seven*

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

at 18.

In short, grounds in this Petition are unique, and will not be addressed in District Court. *See, e.g., Apple v. Seven* at 15-20 (weighing this factor against exercising 314(a) discretion where a petitioner challenged several unasserted claims and stipulated that it would not pursue the IPR grounds in the co-pending litigation).

### E.    Factor 5: Institution would provide the Board an opportunity to invalidate claims that could later be reasserted against others

Apple's Petition is potentially helpful to future defendants.  For at least this reason, Apple's status as both Petitioner and defendant is, at worst, a neutral factor. Taking the relevant circumstances into account, institution would serve overall efficiency and integrity, enabling the Board to determine invalidity of claims that Patent Owner might otherwise later assert against others.

### F.    Factor 6: Other circumstances support institution

As *Fintiv* noted, "the factors ... are part of a balanced assessment of all the relevant circumstances in the case," and, "if the merits of a ground raised in the petition seem particularly strong … the institution of a trial may serve the interest of overall system efficiency and integrity …." *Fintiv*, 14-15.  As explained in the Petition (and Dr. Anthony's testimony), institution would result in invalidation of the Challenged Claims.

Exhibit K
Page 940

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

## V.   PAYMENT OF FEES

Apple authorizes the Patent and Trademark Office to charge Deposit Account No. 06-1050 for the fee set in 37 C.F.R. § 42.15(a) for this Petition and further authorizes payment for any additional fees to be charged to this Deposit Account.

## VI.   CONCLUSION

Apple respectfully requests institution of an IPR for the Challenged Claims.

## VII.   MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1)

### A.   Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1)

Petitioner, Apple Inc., is the real party-in-interest.

### B.   Related Matters Under 37 C.F.R. § 42.8(b)(2)

Apple is not aware of any disclaimers, reexamination certificates, or petitions for *Inter Partes* Revew for the '703 Patent.  The '703 patent is the subject of the civil action *Masimo Corporation et al. v. Apple Inc*., Case No. 8:20-cv-00048 (C.D. Cal.).

The '703 Patent is in the same family as U.S. Patent No. 10,433,776 ("the '776 Patent").  Apple has petitioned for *Inter Partes* Review of the '776 Patent.

U.S. Patent Application No. 15/820,082 filed on November 21, 2017 and U.S. Patent Application No. 16/174,130 filed on October 29, 2018 claim the

Exhibit K
Page 941

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

benefit of the '703 Patent and are currently pending before the Patent Office.

### C.   Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3)

Apple provides the following designation of counsel.

| Lead Counsel | Backup counsel |
|---|---|
| W. Karl Renner, Reg. No. 41,265<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email: IPR50095-0002IP1@fr.com | Dan Smith, Reg. No. 71,278<br>Kim Leung, Reg. No. 64,399<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>PTABInbound@fr.com |

### D.   Service Information

Please address all correspondence and service to the address listed above.

Petitioner consents to electronic service by email at IPR50095-0002IP1@fr.com

(referencing No. 50095-0002IP1 and cc'ing PTABInbound@fr.com, axf-ptab@fr.com, dsmith@fr.com and leung@fr.com.

Respectfully submitted,

Dated:  September 9, 2020          /W. Karl Renner/
                                   W. Karl Renner, Reg. No. 41,265
                                   Dan Smith, Reg. No. 71,278
                                   Kim Leung, Reg. No. 64,399
                                   Fish & Richardson P.C.
                                   3200 RBC Plaza, 60 South Sixth Street
                                   Minneapolis, MN 55402
                                   T: 202-783-5070

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

F: 877-769-7945

(Control No. IPR2020-01523)          *Attorneys for Petitioner*

77

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

## CERTIFICATION UNDER 37 CFR § 42.24

Under the provisions of 37 CFR § 42.24(d), the undersigned hereby certifies that the word count for the foregoing Petition for *Inter partes* Review totals 13,956 words, which is less than the 14,000 allowed under 37 CFR § 42.24.

Dated:  September 9, 2020      /W. Karl Renner/
W. Karl Renner, Reg. No. 41,265
Dan Smith, Reg. No. 71,278
Kim Leung, Reg. No. 64,399
Fish & Richardson P.C.
3200 RBC Plaza, 60 South Sixth Street
Minneapolis, MN 55402
T: 202-783-5070
F: 877-769-7945

*Attorneys for Petitioner*

78

Attorney Docket No. 50095-0002IP1
IPR of U.S. Patent No. 8,457,703

# CERTIFICATE OF SERVICE

Pursuant to 37 CFR §§ 42.6(e)(4)(i) *et seq.* and 42.105(b), the undersigned

certifies that on September 9, 2020, a complete and entire copy of this Petition for

*Inter partes* Review and all supporting exhibits were provided via Federal Express,

to the Patent Owner by serving the correspondence address of record as follows:

KNOBBE, MARTENS, OLSON & BEAR, LLP
MASIMO CORPORATION (MASIMO)
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE CA 92614

/Diana Bradley/
Diana Bradley
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
(858) 678-5667

# Exhibit L

Exhibit L
Page 946

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Brian Rosenthal
Direct: +1 212.351.2339
Fax: +1 212.817.9539
BRosenthal@gibsondunn.com

August 31, 2020

VIA E-MAIL

Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Stephen W. Larson
Knobbe, Martens, Olson & Bear LLP
2040 Main Street
Irvine, CA 92614

Re:     *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.)

Dear Counsel:

We write regarding a petition for *inter partes* review (IPR) being filed with the Patent Trial and Appeal Board (PTAB) to address claims of U.S. Patent No. 10,258,265. The table below lists grounds asserted by Apple in an IPR petition challenging claims of this patent, along with the implicated claims against which each ground is asserted. We write to inform you that Apple hereby stipulates that in the event the PTAB institutes an *inter partes* review including a ground listed in the table against the corresponding claims listed in the table for that ground ("Instituted Ground"), Apple will not assert that Instituted Ground against the corresponding claims listed in the table for that ground in the above captioned litigation (8:20-cv-00048 ).

| Patent No. | Proceeding No. | Claims | Grounds |
|---|---|---|---|
| 10,258,265 | IPR2020-01520 | 1-4, 6-14, 16, 17, 19-23, 26-29 | Aizawa in view of Inokawa |
| | | 1-4, 6-14, 16, 17, 19-23, 26-29 | Aizawa in view of Inokawa and Ohsaki |
| | | 23, 24 | Aizawa in view of Inokawa and Mendelson-2006 |
| | | 23, 24 | Aizawa in view of Inokawa, Goldsmith, and Lo |

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

Exhibit L
Page 947

# GIBSON DUNN

August 31, 2020
Page 2

| Patent No. | Proceeding No. | Claims | Grounds |
|---|---|---|---|
| | | 25 | Aizawa in view of Inokawa, Mendelson-2006, and Beyer |
| | | 1-4, 6-14, 16-22, 26-30 | Mendelson-1988 in view of Inokawa |
| | | 23, 24 | Mendelson-1988 in view of Inokawa and Mendelson-2006 |
| | | 25 | Mendelson-1988 in view of Inokawa, Mendelson-2006, and Beyer |

In so stipulating, Apple seeks to avoid multiple proceedings addressing the validity of these claims based on the Instituted Grounds.  Rather, consistent with Congressional intent, through this stipulation, Apple expresses its intention to have only the PTAB address the Instituted Grounds of invalidity of these claims.  But, for the sake of clarity and to avoid any doubt, if the PTAB declines to institute any of the grounds identified herein, Apple reserves the right to assert such grounds in this litigation.  Additionally, even in the event of institution, Apple reserves its rights to continue to assert all grounds other than Instituted Grounds.

Sincerely,

Brian Rosenthal

Exhibit L
Page 948

**GIBSON DUNN**

August 31, 2020
Page 3

## Appendix – Prior Art References Used in the Listed Grounds

| Reference Name | Details |
| --- | --- |
| Aizawa | U.S. Pub. No. 2002/0188210 |
| Inokawa | JP 2006-296564 |
| Ohsaki | U.S. Pub. No. 2001/0056243 |
| Mendelson-1988 | "Design and Evaluation of a New Reflectance Pulse Oximeter Sensor," Y. Mendelson, et al.; Worcester Polytechnic Institute, Biomedical Engineering Program, Worcester, MA 01609; Association for the Advancement of Medical Instrumentation, vol. 22, No. 4, 1988; pp. 167-173 |
| Mendelson-2006 | "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Y. Mendelson, et al.; Proceedings of the 28th IEEE EMBS Annual International Conference, 2006; pp. 912-915 |
| Beyer | U.S. Pat. No. 7,031,728 |
| Goldsmith | U.S. Pub. No. 2007/0093786 |
| Lo | U.S. Pub. No. 2004/0138568 |

Exhibit L
Page 949

# Exhibit M

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Brian Rosenthal
Direct: +1 212.351.2339
Fax: +1 212.817.9539
BRosenthal@gibsondunn.com

August 31, 2020

VIA E-MAIL

Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Stephen W. Larson
Knobbe, Martens, Olson & Bear LLP
2040 Main Street
Irvine, CA 92614

Re:    *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.)

Dear Counsel:

We write regarding petitions for *inter partes* review (IPR) being filed with the Patent Trial and Appeal Board (PTAB) to address claims of U.S. Patent No. 10,588,553.  The table below lists grounds asserted by Apple in IPR petitions challenging claims of this patent, along with the implicated claims against which each ground is asserted.  We write to inform you that Apple hereby stipulates that in the event the PTAB institutes an *inter partes* review including a ground listed in the table against the corresponding claims listed in the table for that ground ("Instituted Ground"), Apple will not assert that Instituted Ground against the corresponding claims listed in the table for that ground in the above captioned litigation (8:20-cv-00048 ).

| Patent No. | Proceeding No. | Claims | Grounds |
|---|---|---|---|
| 10,588,553 | IPR2020-01536 | 1-3, 5, 6, 9-18, 20-24, and 29 | Mendelson '799 in view of Ohsaki |
| | | 4, 18, and 24 | Mendelson '799 in view of Ohsaki and Schulz |
| | | 25 | Mendelson '799 in view of Ohsaki and Griffin |
| | | 7 and 19 | Mendelson '799 in view of Ohsaki and Mendelson 2006 |

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

Exhibit M
Page 951

# GIBSON DUNN

August 31, 2020
Page 2

| Patent No. | Proceeding No. | Claims | Grounds |
|---|---|---|---|
| | | 8 and 26-28 | Mendelson '799 in view of Ohsaki, Mendelson 2006, and Griffin |
| 10,588,553 | IPR2020-01537 | 1-6, 9-18, 20-24, and 29 | Aizawa in view of Inokawa and Ohsaki |
| | | 7 and 19 | Aizawa in view of Inokawa, Ohsaki, and Mendelson-2006 |
| | | 8 and 25-28 | Aizawa in view of Inokawa, Ohsaki, Mendelson-2006, and Sherman |

In so stipulating, Apple seeks to avoid multiple proceedings addressing the validity of these claims based on the Instituted Grounds.  Rather, consistent with Congressional intent, through this stipulation, Apple expresses its intention to have only the PTAB address the Instituted Grounds of invalidity of these claims.  But, for the sake of clarity and to avoid any doubt, if the PTAB declines to institute any of the grounds identified herein, Apple reserves the right to assert such grounds in this litigation.  Additionally, even in the event of institution, Apple reserves its rights to continue to assert all grounds other than Instituted Grounds.

Sincerely,

Brian Rosenthal

**GIBSON DUNN**

August 31, 2020
Page 3

**Appendix – Prior Art References Used in the Listed Grounds**

| Reference Name | Details |
|---|---|
| Mendelson '799 | US Patent No. 6,801,799 |
| Ohsaki | US Pub. No. 2001/0056243 |
| Schulz | US Pub. No. 2004/0054291 |
| Griffin | US Patent No. 7,658,613 |
| Mendelson-2006 | "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Y. Mendelson, et al.; Proceedings of the 28th IEEE EMBS Annual International Conference, 2006; pp. 912-915 |
| Aizawa | US Pub. No. 2002/0188210 |
| Inokawa | JP Pub. No. 2006/296564 |
| Sherman | US Patent No. 4,941,236 |

# Exhibit N

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Brian Rosenthal
Direct: +1 212.351.2339
Fax: +1 212.817.9539
BRosenthal@gibsondunn.com

September 2, 2020


<u>VIA E-MAIL</u>

Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Stephen W. Larson
Knobbe, Martens, Olson & Bear LLP
2040 Main Street
Irvine, CA 92614

Re:    *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.)

Dear Counsel:

We write regarding petitions for *inter partes* review (IPR) being filed with the Patent Trial and Appeal Board (PTAB) to address claims of U.S. Patent No. 10,588,554.  The table below lists grounds asserted by Apple in IPR petitions challenging claims of this patent, along with the implicated claims against which each ground is asserted.  We write to inform you that Apple hereby stipulates that in the event the PTAB institutes an *inter partes* review including a ground listed in the table against the corresponding claims listed in the table for that ground ("Instituted Ground"), Apple will not assert that Instituted Ground against the corresponding claims listed in the table for that ground in the above captioned litigation (8:20-cv-00048).

| Patent No. | Proceeding No. | Claims | Grounds |
|---|---|---|---|
| 10,588,554 | IPR2020-01538 | 1-7 and 20-28 | Mendelson-799 in view of Ohsaki, Schulz, and Mendelson-2006 |
| | IPR2020-01539 | 1-7 and 20-28 | Aizawa in view of Inokawa, Ohsaki, and Mendelson-2006 |
| | | 8-19 | Aizawa in view of Inokawa, Ohsaki, Mendelson-2006, and Bergey |

In so stipulating, Apple seeks to avoid multiple proceedings addressing the validity of these claims based on the Instituted Grounds.  Rather, consistent with Congressional intent, through this stipulation, Apple expresses its intention to have only the PTAB address the

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

Exhibit N
Page 955

**GIBSON DUNN**

September 2, 2020
Page 2


Instituted Grounds of invalidity of these claims.  But, for the sake of clarity and to avoid any doubt, if the PTAB declines to institute any of the grounds identified herein, Apple reserves the right to assert such grounds in this litigation.  Additionally, even in the event of institution, Apple reserves its rights to continue to assert all grounds other than Instituted Grounds.

Sincerely,

Brian Rosenthal

# GIBSON DUNN

September 2, 2020
Page 3

**Appendix – Prior Art References Used in the Listed Grounds**

| Reference Name | Details |
|---|---|
| Aizawa | U.S. Pub. No. 2002/0188210 |
| Inokawa | JP 2006-296564 |
| Ohsaki | U.S. Pub. No. 2001/0056243 |
| Mendelson-1988 | "Design and Evaluation of a New Reflectance Pulse Oximeter Sensor," Y. Mendelson, et al.; Worcester Polytechnic Institute, Biomedical Engineering Program, Worcester, MA 01609; Association for the Advancement of Medical Instrumentation, vol. 22, No. 4, 1988; pp. 167-173 |
| Mendelson-2006 | "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Y. Mendelson, et al.; Proceedings of the 28th IEEE EMBS Annual International Conference, 2006; pp. 912-915 |
| Mendelson '799 | US Patent No. 6,801,799 |
| Schulz | US Pub. No. 2004/0054291 |
| Bergey | US Patent No. 3,789,601 |

# Exhibit O

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Brian Rosenthal
Direct: +1 212.351.2339
Fax: +1 212.817.9539
BRosenthal@gibsondunn.com

September 2, 2020

<u>VIA E-MAIL</u>

Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Stephen W. Larson
Knobbe, Martens, Olson & Bear LLP
2040 Main Street
Irvine, CA 92614

Re:   *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.)

Dear Counsel:

We write regarding a petition for *inter partes* review (IPR) being filed with the Patent Trial and Appeal Board (PTAB) to address claims of U.S. Patent No. 10,292,628.  The table below lists grounds asserted by Apple in an IPR petition challenging claims of this patent, along with the implicated claims against which each ground is asserted.  We write to inform you that Apple hereby stipulates that in the event the PTAB institutes an *inter partes* review including a ground listed in the table against the corresponding claims listed in the table for that ground ("Instituted Ground"), Apple will not assert that Instituted Ground against the corresponding claims listed in the table for that ground in the above captioned litigation (8:20-cv-00048).

| Patent No. | Proceeding No. | Claims | Grounds |
|---|---|---|---|
| 10,292,628 | IPR2020-01521 | 1-15, 17, 20-26, 28 | Aizawa in view of Inokawa |
| | | 1-15, 17, 20-26, 28 | Aizawa in view of Inokawa and Ohsaki |
| | | 18, 19, 29, 30 | Aizawa in view of Inokawa, Mendelson-2006, and Beyer |
| | | 18, 19, 29, 20 | Aizawa in view of Inokawa, Goldsmith, and Lo |

# GIBSON DUNN

September 2, 2020
Page 2

| Patent No. | Proceeding No. | Claims | Grounds |
|---|---|---|---|
|  |  | 1-17, 20-28 | Mendelson-1988 in view of Inokawa |
|  |  | 18, 19, 29, 30 | Mendelson-1988 in view of Inokawa, Mendelson-2006, and Beyer |

In so stipulating, Apple seeks to avoid multiple proceedings addressing the validity of these claims based on the Instituted Grounds.  Rather, consistent with Congressional intent, through this stipulation, Apple expresses its intention to have only the PTAB address the Instituted Grounds of invalidity of these claims.  But, for the sake of clarity and to avoid any doubt, if the PTAB declines to institute any of the grounds identified herein, Apple reserves the right to assert such grounds in this litigation.  Additionally, even in the event of institution, Apple reserves its rights to continue to assert all grounds other than Instituted Grounds.

Sincerely,

Brian Rosenthal

**GIBSON DUNN**

September 2, 2020
Page 3

### Appendix – Prior Art References Used in the Listed Grounds

| Reference Name | Details |
| --- | --- |
| Aizawa | U.S. Pub. No. 2002/0188210 |
| Inokawa | JP 2006-296564 |
| Ohsaki | U.S. Pub. No. 2001/0056243 |
| Mendelson-1988 | "Design and Evaluation of a New Reflectance Pulse Oximeter Sensor," Y. Mendelson, et al.; Worcester Polytechnic Institute, Biomedical Engineering Program, Worcester, MA 01609; Association for the Advancement of Medical Instrumentation, vol. 22, No. 4, 1988; pp. 167-173 |
| Mendelson-2006 | "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Y. Mendelson, et al.; Proceedings of the 28th IEEE EMBS Annual International Conference, 2006; pp. 912-915 |
| Beyer | U.S. Pat. No. 7,031,728 |
| Goldsmith | U.S. Pub. No. 2007/0093786 |
| Lo | U.S. Pub. No. 2004/0138568 |

# Exhibit P

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Brian Rosenthal
Direct: +1 212.351.2339
Fax: +1 212.817.9539
BRosenthal@gibsondunn.com

September 8, 2020

<u>VIA E-MAIL</u>

Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Stephen W. Larson
Knobbe, Martens, Olson & Bear LLP
2040 Main Street
Irvine, CA 92614

Re:   _Masimo Corporation et al. v. Apple Inc._, Case No. 8:20-cv-00048 (C.D. Cal.)

Dear Counsel:

We write regarding a petition for _inter partes_ review (IPR) being filed with the Patent Trial and Appeal Board (PTAB) to address claims of U.S. Patent No. 8,457,703.  The table below lists grounds asserted by Apple in an IPR petition challenging claims of this patent, along with the implicated claims against which each ground is asserted.  We write to inform you that Apple hereby stipulates that in the event the PTAB institutes an _inter partes_ review including a ground listed in the table against the corresponding claims listed in the table for that ground ("Instituted Ground"), Apple will not assert that Instituted Ground against the corresponding claims listed in the table for that ground in the above captioned litigation (8:20-cv-00048).

| Patent No. | Proceeding No. | Claims | Grounds |
|---|---|---|---|
| 8,457,703 | IPR2020-01523 | 9-10, 12-14, 20, 22-24 | Diab in view of Amano |
| | | 11, 21 | Diab in view of Amano and Edgar |
| | | 1-7, 15-18 | Diab in view of Amano and Turcott |
| | | 9-10, 12-14, 20, 22-24 | Diab in view of the General Knowledge of a POSITA (GK-POSITA) |

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

## GIBSON DUNN

September 8, 2020
Page 2

| Patent No. | Proceeding No. | Claims | Grounds |
|---|---|---|---|
| | | 11, 21 | Diab in view of GK-POSITA and Edgar |
| | | 1-7, 15-18 | Diab in view of GK-POSITA and Turcott |
| | | 9-10, 12-14, 20, 22-24 | Amano |
| | | 1-3, 15-17 | Amano in view of Turcott |

In so stipulating, Apple seeks to avoid multiple proceedings addressing the validity of these claims based on the Instituted Grounds.  Rather, consistent with Congressional intent, through this stipulation, Apple expresses its intention to have only the PTAB address the Instituted Grounds of invalidity of these claims.  But, for the sake of clarity and to avoid any doubt, if the PTAB declines to institute any of the grounds identified herein, Apple reserves the right to assert such grounds in this litigation.  Additionally, even in the event of institution, Apple reserves its rights to continue to assert all grounds other than Instituted Grounds.

Sincerely,

Brian Rosenthal

**GIBSON DUNN**

September 8, 2020
Page 3

### Appendix – Prior Art References Used in the Listed Grounds

| Reference Name | Details |
| --- | --- |
| Amano | U.S. Patent No. 6,293,915 |
| Edgar | U.S. Patent No. 6,393,311 |
| Turcott | U.S. Patent No. 6,527,729 |
| Diab | U.S. Patent No. 5,632,272 |

# Exhibit Q

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Brian Rosenthal
Direct: +1 212.351.2339
Fax: +1 212.817.9539
BRosenthal@gibsondunn.com

August 31, 2020

<u>VIA E-MAIL</u>

Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Stephen W. Larson
Knobbe, Martens, Olson & Bear LLP
2040 Main Street
Irvine, CA 92614

Re:   *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.)

Dear Counsel:

We write regarding a petition for *inter partes* review (IPR) being filed with the Patent Trial and Appeal Board (PTAB) to address claims of U.S. Patent No. 10,433,776.  The table below lists grounds asserted by Apple in an IPR petition challenging claims of this patent, along with the implicated claims against which each ground is asserted.  We write to inform you that Apple hereby stipulates that in the event the PTAB institutes an *inter partes* review including a ground listed in the table against the corresponding claims listed in the table for that ground ("Instituted Ground"), Apple will not assert that Instituted Ground against the corresponding claims listed in the table for that ground in the above captioned litigation (8:20-cv-00048).

| Patent No. | Proceeding No. | Claims | Grounds |
|---|---|---|---|
| 10,433,776 | IPR2020-01524 | 1-8, 11-16 | Richardson |
| | | 9, 10 | Richardson in view of Bindszus |
| | | 1-9, 11-16 | Richardson in view of Turcott |
| | | 9, 10 | Richardson in view of Turcott and Bindszus |

In so stipulating, Apple seeks to avoid multiple proceedings addressing the validity of these claims based on the Instituted Grounds.  Rather, consistent with Congressional intent, through this stipulation, Apple expresses its intention to have only the PTAB address the

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

Exhibit Q
Page 967

**GIBSON DUNN**

August 31, 2020
Page 2


Instituted Grounds of invalidity of these claims.  But, for the sake of clarity and to avoid any
doubt, if the PTAB declines to institute any of the grounds identified herein, Apple reserves
the right to assert such grounds in this litigation.  Additionally, even in the event of
institution, Apple reserves its rights to continue to assert all grounds other than Instituted
Grounds.



Sincerely,



Brian Rosenthal

**GIBSON DUNN**

August 31, 2020
Page 3

**Appendix – Prior Art References Used in the Listed Grounds**

| Reference Name | Details |
|---|---|
| Richardson | U.S. Patent No. 5,555,882 |
| Bindszus | U.S. Patent No. 6,178,343 |
| Turcott | U.S. Patent No. 6,527,729 |

# Exhibit R

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Brian Rosenthal
Direct: +1 212.351.2339
Fax: +1 212.817.9539
BRosenthal@gibsondunn.com

August 31, 2020

VIA E-MAIL

Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Stephen W. Larson
Knobbe, Martens, Olson & Bear LLP
2040 Main Street
Irvine, CA 92614

Re:     *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.)

Dear Counsel:

We write regarding a petition for *inter partes* review (IPR) being filed with the Patent Trial and Appeal Board (PTAB) to address claim 15 of U.S. Patent No. 6,771,994.  The table below lists grounds asserted by Apple in an IPR petition challenging claim 15 of this patent. We write to inform you that Apple hereby stipulates that in the event the PTAB institutes an *inter partes* review including a ground listed in the table against claim 15 ("Instituted Ground"), Apple will not assert that Instituted Ground against claim 15 as listed in the table for that ground in the above captioned litigation (8:20-cv-00048).

| Patent No. | Proceeding No. | Claim | Grounds |
|---|---|---|---|
| 6,771,994 | IPR2020-01526 | 15 | Diab in view of Benjamin and Melby |
| | | 15 | Webster in view of Melby |
| | | 15 | Fine |
| | | 15 | Fine in view of Benjamin and Melby |

In so stipulating, Apple seeks to avoid multiple proceedings addressing the validity of these claims based on the Instituted Grounds.  Rather, consistent with Congressional intent, through this stipulation, Apple expresses its intention to have only the PTAB address the Instituted Grounds of invalidity of these claims.  But, for the sake of clarity and to avoid any doubt, if the PTAB declines to institute any of the grounds identified herein, Apple reserves the right to assert such grounds in this litigation.  Additionally, even in the event of

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

Exhibit R
Page 971

**GIBSON DUNN**

August 31, 2020
Page 2


institution, Apple reserves its rights to continue to assert all grounds other than Instituted Grounds.


Sincerely,


Brian Rosenthal

**GIBSON DUNN**

August 31, 2020
Page 3

**Appendix – Prior Art References Used in the Listed Grounds**

| Reference Name | Details |
|---|---|
| Diab | U.S. Patent No. 5,638,818 |
| Benjamin | U.S. Patent No. 4,015,595 |
| Melby | U.S. Patent No. 5,254,388 |
| Webster | Design of Pulse Oximeters, J.G. Webster; Institution of Physics Publishing, 1997 |
| Fine | WO Pub. No. 1996/41566 |

# Exhibit S

# Trial Statistics
## IPR, PGR, CBM

Patent Trial and Appeal Board
July 2020



UNITED STATES
PATENT AND TRADEMARK OFFICE

uspto

Exhibit S
Page 976

# Petitions by Trial Type
**(All Time: Sept. 16, 2012 to Jul. 31, 2020)**



IPR
11,015
93%

11,845
Total

CBM
593
5%

PGR
237
2%

Trial types include Inter Partes Review (IPR), Post Grant Review (PGR), and Covered
Business Method (CBM).



3

# Petitions Filed by Technology in FY20
**(FY20: Oct. 1, 2019 to Jul. 31, 2020)**



# Petitions Filed by Month
## (Jul. 2020 and Previous 12 Months: Jul. 1, 2019 to Jul. 31, 2020)





## Institution Rates
### (FY13 to FY20: Oct. 1, 2012 to Jul. 31, 2020)

Institution rate for each fiscal year is calculated by dividing petitions instituted by decisions on institution (i.e., petitions instituted plus petitions denied). The outcomes of decisions on institution responsive to requests for rehearing are excluded.



6

Exhibit S
Page 980

# Institution Rates by Technology
**(All Time: Sept. 16, 2012 to Jul. 31, 2020)**



Bio/Pharma — 58% (544 of 930)

Chemical — 61% (349 of 574)

Design — 38% (20 of 52)

Electrical/Computer — 66% (3,602 of 5,467)

Mechanical & Business Method — 67% (1,556 of 2,323)

Institution rate for each technology is calculated by dividing petitions instituted by decisions on institution (i.e., petitions instituted plus petitions denied). The outcomes of decisions on institution responsive to requests for rehearing are excluded.



7

# Pre-Institution Settlements
**(FY13 to FY20: Oct. 1, 2012 to Jul. 31, 2020)**



Settlement rate for each year is calculated by dividing pre-institution settlements by the sum of proceedings instituted, denied institution, dismissed, terminated with a request for adverse judgment, and settled before decision on institution.



8

Exhibit S
Page 982

# Post-Institution Settlements
**(FY13 to FY20: Oct. 1, 2012 to Jul. 31, 2020)**



Settlement rate for each year is calculated by dividing post-institution settlements by proceedings terminated post-institution (i.e., settled, dismissed, terminated with a request for adverse judgment, and final written decision), excluding joined cases.



9

## Status of Petitions
**(All Time: Sept. 16, 2012 to Jul. 31, 2020)**



These figures reflect the latest status of each petition. The outcomes of decisions on institution responsive to requests for rehearing are incorporated. Once joined to a base case, a petition remains in the Joined category regardless of subsequent outcomes.

10

Exhibit S
Page 984

# Outcome of Concluded Proceedings
## (All Time: Sept. 16, 2012 to Jul. 31, 2020)



Joined and dismissed cases are excluded.



# Exhibit T

# Apple Inc.

## Trials

Showing **464** PTAB trials with Apple Inc. as a party; which Reached Institution Decision; in which the selected party was not a Patent Owner; filed between 2012-09-16 and 2020-09-10.; sorted by most recent document activity.

00:13:03

Manage matter details

### Trial Flow




Petitioner Win **165** 36% Patent Owner Win **194** 42% Partial **34** 7%

All %s out of 464 Petitioned trials

  Lex Machina®

## Summary

### Trial Filings



| | <2015 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020* |
|---|---|---|---|---|---|---|---|
| ● CBM | 35 | 20 | 0 | 0 | 5 | 0 | 0 |
| ● IPR | 68 | 66 | 79 | 34 | 88 | 60 | 9 |
| ● PGR | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

*\* 2020 numbers are year-to-date. Open dots are full-year estimates.*

### Trial Status

Open: 34 (7%)                                                    Terminated: 430 (93%)

### Party Roles

Petitioner: 464 (100%)                                          Patent Owner: 0 (0%)

| USPTO Technology Centers | | |
|---|---|---|
| 2600: Communications | 160 | 34% |
| 2800: Semiconductors, Electrical an… | 87 | 19% |
| 2100: Computer Architecture, Softw… | 84 | 18% |
| 2400: Computer Networks, Multiple… | 82 | 18% |
| 3600: Transportation, Construction, … | 38 | 8% |
| Other Technology Centers | 13 | 3% |

| Judges | | |
|---|---|---|
| Jennifer S. Bisk | 76 | 16% |
| Karl D. Easthom | 60 | 13% |
| Matthew R. Clements | 52 | 11% |
| Miriam L. Quinn | 49 | 11% |
| Gregg I. Anderson | 46 | 10% |
| 97 Other Judges | | |

## Trial Resolutions

| | | |
|---|---|---|
| **Petitioner Win** | 165 | 36% |
| All Claims Unpatentable | 160 | 34% |
| All Claims Amended | 2 | 0% |
| Patent Owner Disclaimed (Pre-Institution) | 0 | 0% |
| Patent Owner Disclaimed (Post-Institution) | 3 | 1% |
| **Patent Owner Win** | 194 | 42% |
| All Claims Upheld | 24 | 5% |
| Denied Institution | 126 | 27% |
| Procedurally Dismissed (Pre-Institution) | 0 | 0% |
| Procedurally Dismissed (Post-Institution) | 5 | 1% |
| Settled (Pre-Institution) | 0 | 0% |
| Settled (Post-Institution) | 39 | 8% |

| | | |
|---|---|---|
| **Partial** | 34 | 7% |
| Mixed Claim Findings | 34 | 7% |
| **Joinder** | 37 | 8% |
| Joined To Other Trial | 37 | 8% |
| **No Trial Resolution** | 34 | 7% |

