REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

JOSHUA H. LERNER, SBN 220755
   jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
   mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
   bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
   bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
   brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
   isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
   akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendants. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S REPLY IN SUPPORT OF APPLE'S MOTION TO DISMISS THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>**Hearing:**<br>Date:      October 5, 2020<br>Time:      1:30 p.m.<br>Place:     Courtroom 10C<br>Judge:    Hon. James V. Selna |

1

2

# TABLE OF CONTENTS

3

I. INTRODUCTION .................................................................................................. 1

II. THIS COURT SHOULD DISMISS PLAINTIFFS' CUTSA CLAIM ..................... 2

    A.    Plaintiffs Still Do Not Describe Their Alleged Trade Secrets With
            Sufficient Particularity ........................................................................ 2

           1.    Plaintiffs' Alleged Techniques And Strategies Are
                 Unbounded, Non-Exhaustive Lists ................................................ 3

           2.    Bates Numbers And File Names Do Nothing To Save
                 Plaintiffs' Claim .......................................................................... 10

           3.    Plaintiffs' Motion For A Preliminary Injunction Is Not
                 Relevant Here ............................................................................. 13

    B.    Plaintiffs Fail To Allege Misappropriation ......................................... 14

           1.    Plaintiffs Fail To Allege Improper Acquisition, Use, Or
                 Disclosure ................................................................................... 14

           2.    None Of Plaintiffs' Six Factual Allegations Shows Apple's
                 Knowledge ................................................................................... 16

           3.    Plaintiffs' Allegations Of Inducement Are Entirely
                 Unsupported ................................................................................. 21

           4.    Plaintiffs Do Not Allege Apple's Respondeat Superior
                 Liability ....................................................................................... 23

III. CONCLUSION ................................................................................................. 25

Gibson, Dunn &
Crutcher LLP

1

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs.*,
2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) ...............................................2, 4, 5, 7

*Alta Devices, Inc. v. LG Elecs., Inc.*,
343 F. Supp. 3d 868 (N.D. Cal. 2018).......................................................................13

*AlterG, Inc. v. Boost Treadmills LLC*,
No. 3:18-cv-7568, Dkt. No. 41 (N.D. Cal. Sept. 5, 2019).........................................6

*In re Am. Apparel, Inc. Shareholder Deriv. Litig.*,
2012 WL 9506072 (C.D. Cal. July 31, 2012) ...........................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................16, 22

*Baden Sports, Inc. v. Wilson Sporting Goods Co.*,
2011 WL 3158607 (W.D. Wash. July 26, 2011)........................................................15

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) ............................................................15

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
2011 WL 1044899 (N.D. Cal. Mar. 23, 2011) ......................................................5, 22

*Calendar Research LLC v. StubHub, Inc.*,
2017 WL 10378336 (C.D. Cal. Aug. 16, 2017) ...................................................22, 23

*CanWe Studios LLC v. Sinclair*,
2013 WL 12120437 (C.D. Cal. Nov. 20, 2013) .......................................................6, 7

*Carr v. AutoNation Inc.*,
2018 WL 288018 (E.D. Cal. Jan. 4, 2018)................................................................21

*Cascade Designs Inc. v. Windcatcher Tech. LLC*,
2016 WL 374564 (W.D. Wash. Feb. 1, 2016) ......................................................3, 15

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*,
2018 WL 2558388 (C.D. Cal. Feb. 27, 2018) ............................................................4

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

*Citcon USA, LLC v. RiverPay Inc.,*
2018 WL 6813211 (N.D. Cal. Dec. 27, 2018) .................................................4, 10, 15

*CleanFish, LLC v. Sims,*
2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) ....................................8, 9, 16, 18, 20

*Courtesy Temp. Serv., Inc. v. Camacho,*
222 Cal. App. 3d 1278 (Cal. Ct. App. 1990)......................................................6

*Cutera, Inc. v. Lutronic Aesthetics, Inc.,*
2020 WL 4937129 (E.D. Cal. Aug. 24, 2020) ....................................3, 5, 7, 14, 22

*Dowell v. Biosense Webster, Inc.,*
179 Cal. App. 4th 564 (2009) ..............................................................17, 18

*Duncan v. Stuetzle,*
76 F.3d 1480 (9th Cir. 1996) ................................................................6

*Edwards v. Arthur Andersen LLP,*
44 Cal. 4th 937 (2008) .....................................................................17, 18

*Emazing Lights LLC v. De Oca,*
2016 WL 3658945 (C.D. Cal. Jan. 7, 2016)..........................................................6, 8

*FLIR Systems, Inc. v. Parrish,*
174 Cal. App. 4th 1270 (2009) ..............................................................19

*Gatan, Inc. v. Nion Co.,*
2018 WL 2117379 (N.D. Cal. May 8, 2018)...........................................................2

*Harris v. Cty. of Orange,*
682 F.3d 1126 (9th Cir. 2012) ..............................................................11

*Kavanagh v. Tuller,*
2017 WL 1496436 (S.D. Cal. Apr. 26, 2017) ........................................................10

*Kramer v. Fed. Home Loan Mortg. Corp.,*
2012 WL 13015003 (C.D. Cal. Sept. 24, 2012).....................................................13, 25

*Lamont v. Krane,*
2019 WL 2010705 (N.D. Cal. May 7, 2019)...........................................................19

*Menzel v. Scholastic, Inc.,*
2018 WL 1400386 (N.D. Cal. Mar. 19, 2018)........................................................22

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

*New Show Studios LLC v. Needle*,
   2014 WL 2988271 (C.D. Cal. June 30, 2014)........................................................5, 9

*Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017) ...................................................................................22

*Pellerin v. Honeywell Int'l, Inc.*,
   877 F. Supp. 2d 983 (S.D. Cal. 2012) .........................................................15, 16, 18

*In re Providian Credit Card Cases*,
   96 Cal. App. 4th 292 (2002) ....................................................................................10

*Pyro-Comm Sys. Inc. v. W. Coast Fire & Integration Inc.*,
   2015 WL 12765143 (C.D. Cal. Apr. 2, 2015)..............................................20, 21, 25

*Rivas v. New Century Mortg. Corp.*,
   2010 WL 330225 (S.D. Cal. Jan. 20, 2010) .........................................................13, 16

*Roadrunner Transportation Servs. v. Tarwater*,
   2010 WL 11483986 (C.D. Cal. Dec. 20, 2010).......................................................5, 9

*Space Data Corp. v. X*,
   2017 WL 5013363 (N.D. Cal. Feb. 16, 2017)....................................................10, 15

*Strategic Partners, Inc. v. Vestagen Protective Techs., Inc.*,
   777 F. App'x 224 (9th Cir. 2019)............................................................................10

*Teva Pharm. USA, Inc. v. Health IQ, LLC*,
   2013 WL 12134185 (C.D. Cal. July 2, 2013) ............................................................4

*TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*,
   2016 WL 3475322 (C.D. Cal. Jan. 29, 2016)............................................................4

*TMX Funding, Inc. v. Impero Techs., Inc.*,
   2010 WL 2509979 (N.D. Cal. June 17, 2010).......................................................4, 8

*U.S. Legal Support, Inc. v. Hofioni*,
   2013 WL 6844756 (E.D. Cal. Dec. 20, 2013).....................................................24, 25

*Vendavo, Inc. v. Price f(x) AG*,
   2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ...........................................................8

*Veronica Foods Co. v. Ecklin*,
   2017 WL 2806706 (N.D. Cal. June 29, 2017)............................................................9

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010) .................................................................... 10

*Whyte v. Schlage Lock Co.*,
   101 Cal. App. 4th 1443 (2002) ......................................................... 17, 19

*Zoom Imaging Sols., Inc. v. Roe*,
   2019 WL 5862594 (E.D. Cal. Nov. 8, 2019) ............................................ 3

**Statutes**

Cal. Civ. Code § 3426.1.................................................................................21

# I.   **INTRODUCTION**

Plaintiffs Masimo Corporation and Cercacor Laboratories' Opposition fails to cure two fatal flaws in the Second Amended Complaint ("SAC"):  (1) Plaintiffs offer no viable excuse for their ongoing failure to bound the broad categories of information that they improperly claim as trade secrets; and (2) Plaintiffs fail to allege Apple's knowledge of misappropriation of any of the broad categories of information alleged as trade secrets in this case.

*First*, as Apple explained in its opening brief, Plaintiffs attempt to avoid dismissal by adding volume to their trade secret allegations.  But volume does not cure the deficient description of the alleged trade secrets.  The SAC sets out non-exhaustive examples of general categories of information.  Plaintiffs qualify every broad category of alleged secrets with catchall phrases, like "including," which renders the boundaries of the alleged trade secrets indecipherable.  Apple is entitled to "fair notice of the claim," just as this Court recognized in dismissing the trade secret claim from Plaintiffs' First Amended Complaint ("FAC").  *See* Order, Dkt. No. 60 at 8.  Plaintiffs' SAC provides no such notice, and also does nothing to clarify which of the purported trade secrets was allegedly misappropriated in *this* case.

Plaintiffs' pursuit of a Preliminary Injunction ("PI"), which was denied, shows that Plaintiffs are treating the overly broad description of the alleged trade secrets in the SAC like a Russian doll—every time Apple identifies a problem with the broad alleged secrets, Plaintiffs simply unveil a smaller subset of secrets.  This is the opposite of a complaint that puts Apple or the Court on notice of the bounds of the alleged trade secrets.

*Second*, Plaintiffs fail to plead misappropriation of any of the alleged trade secrets by Apple.  Because Plaintiffs fail to tie any of the broad categories of information to any alleged misappropriation by Apple, i.e., the incorporation of the alleged trade secrets in the Apple Watch or in an Apple patent filing, Plaintiffs also fail to allege sufficient facts to plausibly claim that Apple acquired, disclosed, or used any of the broad categories of

Gibson, Dunn &
Crutcher LLP

information Plaintiffs identify as purported trade secrets.  Plaintiffs' Opposition points to six harmless facts, and speculates that Apple knew, or should have known, that information from Lamego was a trade secret; those facts—standing alone or taken together—are insufficient as a matter of law and fact to establish Apple's knowledge. And again, the ruling on the Motion for a PI does not save the SAC.

In sum, Plaintiffs have not pled a valid trade secret claim against Apple.  This Court should dismiss Plaintiffs' trade secret claim with prejudice.

## II.     THIS COURT SHOULD DISMISS PLAINTIFFS' CUTSA CLAIM

### A.     Plaintiffs Still Do Not Describe Their Alleged Trade Secrets With Sufficient Particularity

As a threshold matter, Plaintiffs needlessly misstate the standard for pleading a trade secret claim.  The Court set forth the pleading standard in its Order dismissing the trade secret cause of action in Plaintiffs' FAC:  Plaintiffs must describe the trade secret "with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies."  Order, Dkt. No. 60 at 7 (quoting *Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs.*, 2019 WL 4137618, at *3 (C.D. Cal. Mar. 27, 2019)).  Plaintiffs' references to Section 2019.210 are irrelevant.  Judge Early just confirmed that "the standard … under Rule 12(b)(6) and Rule 8 for what's sufficient to state a claim is not the same as the standard under 2019.210 for what's stating a trade secret with reasonable particularity.  So a challenge to one doesn't mean a challenge to the other."  Sept. 2 Hr'g Tr. at 15.  And as Apple explained in its Motion to Compel a Section 2019.210 disclosure, the SAC fails to meet the 2019.210 standard as a matter of well-established law, at least because a 2019.210 statement may not include catchall phrases like those that permeate the SAC. *Gatan, Inc. v. Nion Co.*, 2018 WL 2117379, at *3 (N.D. Cal. May 8, 2018) (the "use of catchall words such as 'including' weighs against a finding that the designation satisfies § 2019.210 'because it does not clearly refer to tangible trade secret material.'").  Apple

withdrew that motion because Plaintiffs agreed to provide the Section 2019.210 disclosure.

### 1. Plaintiffs' Alleged Techniques And Strategies Are Unbounded, Non-Exhaustive Lists

#### a. Plaintiffs' Technical Trade Secrets

Plaintiffs' three technical categories of trade secrets suffer from obvious flaws. In their Opposition, Plaintiffs selectively quote "examples of portions of each of the three technical categories" to try to show that their allegations are sufficiently detailed. Opp. Br. 6–7. Tellingly, Plaintiffs gloss over Apple's critique that the SAC starts by describing each of the three categories of technical trade secrets with a highly general statement and then includes a non-exhaustive list of examples of the category. This pattern highlights a fatal deficiency—that the SAC is overbroad because it alleges *non-exhaustive examples* of general *categories* of information and thus contains no indication of the boundaries of the category.

Courts recently have been alerted to the problems that flow from non-exhaustive allegations like those in the SAC. *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 2020 WL 4937129, at *5 (E.D. Cal. Aug. 24, 2020) ("[A]s defendant points out, the complaint includes a non-exhaustive list of trade secrets; to the extent such a list sweeps in a raft of unspecified assets, it falls short of providing defendant the contours of the trade secrets claim."); *Zoom Imaging Sols., Inc. v. Roe*, 2019 WL 5862594, at *5 (E.D. Cal. Nov. 8, 2019) ("Because the list of Confidential Information is not exhaustive, and because the trade secrets are an unknown subset of the indefinite Confidential Information, plaintiff does not sufficiently identify anything."); *see also Cascade Designs Inc. v. Windcatcher Tech. LLC*, 2016 WL 374564, at *2–3 (W.D. Wash. Feb. 1, 2016) (dismissing trade secret claim because the "pleadings point[ed] to general categories" and "fail[ed] to clarify what specific components of the [counterclaim-plaintiffs' product] design, manufacture, and sale are protected by trade secrets").

The purpose of requiring a plaintiff to "describe the subject matter of the trade

secret with *sufficient particularity*" is in part to "permit the defendant to ascertain at least the boundaries *within which* the secret lies."  Order, Dkt. No. 60 at 7 (emphasis added) (quoting *Acrisure*, 2019 WL 4137618, at *3).  As this Court has recognized, "[t]he pleadings 'must have enough specificity to provide both the Court and defendants with notice of the *boundaries* of this case.'"  *Id.* (emphasis added) (quoting *Citcon USA, LLC v. RiverPay Inc.*, 2018 WL 6813211, at *4 (N.D. Cal. Dec. 27, 2018)).  In other words, a trade secret action needs to have clear parameters so that it does not turn into an ever-unfolding game of "whack-a-mole" for defendants.

Contrary to Plaintiffs' argument, the SAC is *not* "far more detailed than the descriptions that courts routinely find sufficient."  Opp. Br. 7.  The cases Plaintiffs cite are inapposite.  To begin with, *none* of the parties in those cases raised the problem that the *Cutera* and *Zoom* courts have since identified with complaints like the SAC:  using terms like "including" before a long list of broad information renders the allegations insufficient to identify the alleged secrets.  Furthermore, in *Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, the plaintiff did not rely merely on a non-exhaustive list; the court held that "Cedars-Sinai also identifies the specific confidential communications that allegedly contain these trade secrets … [and that t]his *alone* limits the scope … and gives enough detail for Quest 'to prepare a defense and for the court to craft limits on discovery.'"  2018 WL 2558388, at *6 (C.D. Cal. Feb. 27, 2018) (emphasis added).  In *TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*, the plaintiff, unlike Plaintiffs here, provided sufficient specificity to differentiate its secrets from the patent at issue.  2016 WL 3475322, at *5 (C.D. Cal. Jan. 29, 2016) ("[T]he Court finds that Plaintiff has adequately alleged the trade secrets at issue and explained how they differ from the information disclosed in the '735 Patent.").  In *Teva Pharm. USA, Inc. v. Health IQ, LLC*, unlike the SAC's *broad* categories of information, Teva's TAC cured the deficiencies because "it identif[ied] 25 categories of *specific* information."  2013 WL 12134185, at *3 (C.D. Cal. July 2, 2013) (emphasis added).  Plaintiffs also cite *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010),

but there, unlike this case, not every category was preceded by a catchall phrase that rendered the allegations non-exhaustive. *See* Opp. Br. 7–8. In *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *9 (C.D. Cal. June 30, 2014), the defendant, unlike Apple, moved to dismiss under the wrong standard. In *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2011 WL 1044899, at *5 (N.D. Cal. Mar. 23, 2011), the description of the alleged trade secrets was not even an issue. And *Roadrunner Transportation Servs. v. Tarwater*, 2010 WL 11483986, at *1 (C.D. Cal. Dec. 20, 2010) involved "customer files, pricing, revenue reports, and agreements with Plaintiff's customers," not broad, non-exhaustive categories of information like the SAC contains.

There is a practical reason for requiring Plaintiffs to describe their trade secrets with sufficient particularly at the pleading stage. A plaintiff must "sufficiently put defendant on notice of the contours of its complaint *such that allowing discovery will not unleash a 'fishing expedition.'*" *Cutera*, 2020 WL 4937129, at *4 (emphasis added; citation omitted). But a fishing expedition is precisely what Plaintiffs are banking on here. In fact, the SAC admits to it: "Apple misappropriated *at least* the following specific trade secrets discussed in Paragraphs 41–50" and "[t]he full extent of Apple's misappropriation will be *revealed through discovery*." SAC ¶ 40 (emphasis added). This also amounts to an admission that the SAC includes a non-exhaustive list of trade secrets, which means Apple cannot be said to have "fair notice" of Plaintiffs' claim. *Acrisure*, 2019 WL 4137618, at *3. The SAC is not "sufficiently definite to guide discovery in this case in a reasonably focused and fair manner." *Cutera*, 2020 WL 4937129, at *5.

Absent clear boundaries of these so-called technical secrets, the SAC does not give Apple fair notice of Plaintiffs' trade secret claim. Plaintiffs should not be permitted to go on an improper fishing expedition during discovery to aid them in belatedly pleading their claim.

      **b.**    **Plaintiffs'** ████████████████████

Like the alleged technical trade secrets, Plaintiffs' ██████████████

Gibson, Dunn & Crutcher LLP

1   ████████████████████████████ category of trade secrets

2   also uses the problematic catchall phrase "including" and a non-exhaustive list of

3   examples, *see* SAC ¶ 47, which renders the description boundless and therefore

4   insufficient. *See supra*, Part II.A.1.a. Not only that, but the so-called examples that the

5   SAC provides of these ███████████ amount to Plaintiffs' █████████

6   ████████████████████████████████████████████

7   ████████████████████████ *Id*. Given that Masimo ██████████

8   ████████████████████████████████████ *id*. ¶ 12, and Cercacor sells

9   "non-invasive monitoring technologies … in the consumer market," *id*. ¶ 16, "*[a]ny*

10  piece of information [related to ████████] could potentially be labeled a trade secret

11  under this definition." *Emazing Lights LLC v. De Oca*, 2016 WL 3658945, at *2 (C.D.

12  Cal. Jan. 7, 2016) (emphasis added) (granting motion to dismiss due to lack of

13  particularity in describing alleged trade secrets).

14      Contrary to Plaintiffs' suggestion (Opp. Br. 9), labeling information as a

15  "██████████" or "████████" does not guarantee that a trade secret claim will survive

16  a motion to dismiss. Plaintiffs' cited cases do not help them: *Duncan v. Stuetzle*, for

17  example, only states that a "████████████" "may well qualify as 'trade secrets'

18  under California law"—not that it necessarily counts as a trade secret. 76 F.3d 1480,

19  1488 n.11 (9th Cir. 1996). *Courtesy Temp. Serv., Inc. v. Camacho*, only concerns

20  customer lists—which is not something Plaintiffs have identified as falling under the

21  umbrella of their "████████████████████." 222 Cal. App. 3d 1278,

22  1287 (Cal. Ct. App. 1990).

23      More recent case law provides that "[p]ricing and ██████████ *tied to*

24  *specific products* are typical trade secrets." *AlterG, Inc. v. Boost Treadmills LLC*, No.

25  3:18-cv-7568, Dkt. No. 41 at 11 (N.D. Cal. Sept. 5, 2019) (emphasis added) (Pls.' Ex. 1

26  at 13). Plaintiffs, however, have not tied their ████████████████████

27  ████████ trade secrets to any specific product. *See CanWe Studios LLC v. Sinclair*,

28  2013 WL 12120437, at *3 (C.D. Cal. Nov. 20, 2013) ("It is also not clear where the

1   boundary of Plaintiff's [████████████████████] trade secret ends.

2   For example, it is not clear whether Plaintiff's claim is to *all* enterprise business

3   networking applications, or just to applications that are similar to CanWe."). This lack

4   of specificity means there is not a way "to guide discovery in this case in a reasonably

5   focused and fair manner." *Cutera*, 2020 WL 4937129, at *5.

6        Plaintiffs try to dismiss Apple's argument that its trade secrets are "obvious" and

7   "easily ascertainable" as "legally erroneous" and just "another challenge on the merits,"

8   but these rejoinders misapprehend Apple's argument and the law. Opp. Br. 10.

9        *First*, Plaintiffs misconstrue Apple's argument—which concerns the pleading

10  requirement that a plaintiff must "describe the trade secret with sufficient particularity

11  to separate it from matters of general knowledge in the trade or of special knowledge of

12  those persons who are skilled in the trade." *See, e.g.*, Apple Br. 7 (quoting *Acrisure*,

13  2019 WL 4137618, at *3). Plaintiffs do not respond to this argument; Plaintiffs'

14  discussion of whether the trade secrets are "readily ascertainable" is not the issue here.

15  *See* Opp. Br. 10–11.

16       *Second*, courts consider arguments such as Apple's (Apple Br. 7–9) when

17  evaluating whether trade secrets are described with sufficient particularity. For example,

18  in *CanWe Studios*, plaintiff claimed that its "██████████████████████████

19  ███████ for CanWe"—a mobile business networking application—was a trade secret.

20  2013 WL 12120437, at *2. The court noted that the "existing CanWe application has

21  been available for download through the Apple iTunes store and the Android

22  Marketplace since September 2012," and "the concept of remaking a consumer-oriented

23  program for a business audience is publicly known." *Id*. On that basis, the court

24  concluded that "it is unclear what about Plaintiff's ████████████████████████

25  ███████ is distinct from matters that would be known to someone skilled in the trade of

26  business networking application design." *Id*. Similarly, here, because it is publicly

27  known that Plaintiffs sell their products to hospitals and to consumers, SAC ¶¶ 12, 16,

28  it is unclear what about their ██████████████████████ are distinct

from those that are also in the business of selling similar devices.

  **c. Plaintiffs'** ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

  Plaintiffs purport to identify "specific ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆," Opp. Br. 12, yet they fail to identify *any* ▆▆▆▆▆ at all, let alone one described with specificity. Plaintiffs list broad non-exhaustive examples of their so-called ▆▆▆▆ trade secrets:

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆ *Id.* Not only is the description insufficient because it is unbounded, *see supra*, Part II.A.1.a, but these are the type of vague, catchall categories consistently rejected as "too high-level to give the Court or Defendants notice of the boundaries of the alleged trade secret." *CleanFish, LLC v. Sims*, 2020 WL 1274991, at *9 (N.D. Cal. Mar. 17, 2020); *see also Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018) (rejecting "'negative knowhow' learned through the course of research and development," "customer lists," "▆▆▆▆▆▆▆▆ and strategic business development initiatives," and "information related to the development of [plaintiff's] price-optimization software," as "more descriptive of the types of information that generally may qualify as protectable trade secrets" than actual trade secrets). Indeed, Plaintiffs' use of the label ▆▆▆▆▆▆ renders the description meaningless, because "[a]ny piece of information could potentially be labeled as a trade secret under this definition." *Emazing Lights*, 2016 WL 3658945, at *2.

  Contrary to Plaintiffs' claim, none of the cases Plaintiffs cite supports their argument that their ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ description is sufficiently detailed. Opp. Br. 12–13. In *TMX Funding, Inc.*, 2010 WL 2509979, at *3, the trade secret description that the court found sufficient—which included customers' "service needs" and "service patterns," the "buying preferences of customers, including special terms, discounts, and accessories," and "[l]ogin and password information to access the computer networks, servers, computer systems, and telephone systems"—was much

more specific than what Plaintiffs plead here.  The "client lists" and "customer lists and
pricing information" that Plaintiffs highlight as being found sufficient in *New Show
Studios LLC*, 2014 WL 2988271, at *9, and *Roadrunner Transportation Servs.*, 2010
WL 11483986, at *4, are nowhere to be found in Plaintiffs' trade secret descriptions.
*See* Opp. Br. 12.

In fact, cases concerning "client lists" or "client contacts" appear to be entirely
irrelevant, given that Plaintiffs' plead "███████" trade secrets.  Although Plaintiffs allege
that their "████████████████████████" include ███████████████████████
███████████████████████████████████████████  SAC ¶ 49,
this allegation is susceptible to at least two meanings.  It is unclear whether "████████
██████████████" is the alleged trade secret or whether the trade secret is the
████████████████████████████████████████████████.
This confusion alone demonstrates that the trade secret is not sufficiently described.
Moreover, *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *14 (N.D. Cal. June 29,
2017) held that "names and contact information" for decisionmakers responsible for
purchasing plaintiff's products, as well as "information regarding the particular needs,
characteristics, and preferences of each customer," boiled down to "naked assertions"
and "conclusions" unable to survive a motion to dismiss.  And in *CleanFish*, the court
found that "detailed customer lists, customer purchasing data, customer sales figures and
other related customer purchasing analysis and trends" were "broad categories of
information that would be applicable to any business" and "too high-level to give the
Court or Defendants notice of the boundaries of any alleged trade secret."  2020 WL
1274991, at *9–10.  This was true even where plaintiff allegedly possessed a "niche
clientele" that was "environmentally conscious and sought products from sustainable
methods and sources."  *Id.*

Plaintiffs argue that Apple "challenges the merits" by highlighting the fact that
Plaintiffs have publicized their ████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

1   ▮▮▮▮▮▮.   *See* Apple Br. 8.[1]   This is a red herring.   Myriad cases confirm the

2   propriety of showing publication as a means to demonstrate the non-existence of a trade

3   secret on a motion to dismiss.   *See, e.g., Strategic Partners, Inc. v. Vestagen Protective*

4   *Techs., Inc.*, 777 F. App'x 224, 225 (9th Cir. 2019) ("[T]he court did not err in dismissing

5   Vestagen's misappropriation of trade secrets counterclaim as a matter of law, because

6   Vestagen disclosed its ▮▮▮▮▮▮ through its public efforts to have ASTM adopt

7   higher standards favorable to Vestagen."); *Kavanagh v. Tuller*, 2017 WL 1496436, at

8   *4 (S.D. Cal. Apr. 26, 2017) (granting motion to dismiss because "Plaintiff admits that

9   she has publicly disclosed both the method and the name of her product"); *In re*

10   *Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304–05 (2002) (concluding that

11   "telemarketing scripts were not trade secrets because they had been disclosed to the

12   public").   Apple further alleges that Plaintiffs' alleged trade secrets have been published

13   in certain of their patent applications, *see* Dkt. No. 139-1 at 7–13.   Although Plaintiffs

14   contended that the small subset of alleged secrets that they identified in their reply brief

15   in support of a PI was not disclosed in their own patents, *see* Dkt. No. 161-1 at 2–5, there

16   can be no dispute that the broad categories of information in the SAC are not

17   distinguished from the myriad patents at issue here.   *See Space Data Corp. v. X*, 2017

18   WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) ("Moreover, Space Data has not made

19   clear which aspects of its technology and other information are 'part of patents and

20   pending patent applications,' if any, and which are secret.").

21   **2.   Bates Numbers And File Names Do Nothing To Save Plaintiffs' Claim**

22   The Bates-labeled documents and source code that Plaintiffs listed in the SAC—

23   but did not attach—do nothing "to provide both the Court and defendants with notice of

24   the boundaries of this case."   Order, Dkt. No. 60 at 7 (quoting *Citcon*, 2018 WL 6813211,

25   at *4).   In actuality, these documents make the boundaries of Plaintiffs' trade secrets

---

[1]   Plaintiffs are wrong, the Masimo press release (Lerner Decl., Ex. B) is subject to judicial notice "to indicate what was in the public realm at the time."   *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

even fuzzier.

*First*, Plaintiffs maintain that they "cited specific documents to address the Court's concern" that they had not referred to "specific plans, briefs, or drawings" in their FAC. Opp. Br. 14 (citing Dkt. No. 60 at 8). But Plaintiffs fail to satisfy the spirit of the directive. For one, they only selectively attach to their Opposition a small handful of documents (which the SAC lists only by Bates number) so the Court is left entirely in the dark as to the contents of the other documents. Also, the SAC merely alleges that the documents "relate" to certain categories of trade secret—a nebulous description. SAC ¶¶ 42, 44, 46, 48, 50. The SAC provides no clarity—to Apple or the Court—as to whether these documents reveal or contain the alleged trade secrets or what Plaintiffs really mean by their allegation that these documents "relate" to their alleged trade secrets. Neither the Court nor Apple should have to play a guessing game as to what these documents purport to show vis-à-vis the alleged trade secrets.

*Second*, Plaintiffs appear to acknowledge that the documents merely listed in the SAC "do not provide sufficient context for Apple to understand their authenticity or relationship to the misappropriation claim." Apple Br. 11. Plaintiffs try to remedy this deficiency by selectively attaching certain of these documents as exhibits to their Opposition. Plaintiffs' only argument as to why the Court should consider the exhibits is that Apple previously asked the court to take judicial notice of other documents referenced in, but unattached to, the pleadings in this case. Opp. Br. 15. The situations are not analogous. In Dkt. No. 38-2, *Apple* requested judicial notice of a document whose *contents* were alleged in Plaintiffs' FAC and whose authenticity *Apple* did not question. Plaintiffs cannot dispute that they could have but chose not to attach the documents to the SAC and that they did not allege the contents of the documents (or even the titles of the documents) in the SAC. The law is clear that unattached documents may only be judicially noticed where "no party questions their authenticity," *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012), and whose "contents are alleged in the complaint," *In re Am. Apparel, Inc. Shareholder Deriv. Litig.*, 2012 WL 9506072,

at *19 (C.D. Cal. July 31, 2012).  Because neither factor is met here, the Court should not consider these documents in assessing the sufficiency of Plaintiffs' description of their trade secrets in the SAC.

*Third*, Plaintiffs argue that the "SAC connects each document with a specific trade secret" and that "the documents on their face show how they are relevant."  Opp. Br. 15 (citing SAC ¶¶ 42, 44, 46, 48, 50 and Opp. Ex. 4).  If the Court chooses to consider Plaintiffs' cherry-picked exhibits, it should also consider documents that Plaintiffs chose *not* to include as exhibits and which cover topics completely unrelated to the allegations in the SAC.  Rather than provide much needed clarification, the cited documents obscure the boundaries of Plaintiffs' purported trade secrets.  For example, many of the documents listed in the SAC relate to ▮▮▮▮▮▮▮▮—which appears to be unrelated to the misappropriation allegations in the SAC.  *E.g.*, ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮  Another document references "▮▮▮▮▮▮▮▮▮▮▮ which does not seem to fit into Plaintiffs' "▮▮▮▮▮▮▮▮▮▮" category of trade secrets.  Many of the documents are titled ▮▮▮▮▮▮ or ▮▮▮▮▮▮▮▮ but these documents identify various features that are not described as Plaintiffs' trade secrets.  *E.g.*, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮  Many of the documents cited as "relating" to Plaintiffs' ▮▮▮▮ trade secrets say nothing about ▮▮▮▮▮▮▮ at all.  *E.g.*, ▮▮▮▮▮▮▮▮▮▮  The documents allegedly related to ▮▮▮▮▮▮ techniques consist of 162 pages of handwritten and often illegible equations with no context or apparent indication as to how (or even whether) they relate to ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮  Plaintiffs may not be "required to explain each page of such lab notebooks in the complaint," but they *are* required to connect such documents to their allegations "in a manner that gives Apple fair notice of the claim."  Dkt. No. 60 at 8.

The same problem plagues the referenced source code files.  Plaintiffs claim that they did "far more" than required by identifying "*specific source code files*," Opp. Br. 16.  But identifying these files without pinpointing the relevant portions is akin to identifying a residence by giving a "specific" zip code.  The source code files Plaintiffs refer to (SAC ¶¶ 42, 44) consist of thousands of lines of code and contain numerous unidentified functions.  The few comments included in the files fail to sufficiently identify which functions Plaintiffs actually claim are their trade secrets.  The source code consequently does little to provide "boundaries within which the secret lies."  *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018).

*Fourth*, for the first time in their Opposition, Plaintiffs pinpoint specific portions of emails that they claim relate to their alleged ▮▮▮▮▮ trade secret.  Opp. Br. 14 (citing Opp. Ex. 3).  This added context is too little too late.  Plaintiffs' added gloss about this exhibit cannot remedy the deficient descriptions in the SAC or provide the necessary boundaries to their claim.  *See Kramer v. Fed. Home Loan Mortg. Corp.*, 2012 WL 13015003, at \*4 (C.D. Cal. Sept. 24, 2012) ("The opposition brief is not the proper pleading to correct the SAC's deficiencies."); *Rivas v. New Century Mortg. Corp.*, 2010 WL 330225, at \*3 (S.D. Cal. Jan. 20, 2010) ("Additional information … in an opposition to a motion to dismiss does not cure the defects in Plaintiff's original pleading.").

### 3.   Plaintiffs' Motion For A Preliminary Injunction Is Not Relevant Here

In unsuccessfully moving for a PI, Plaintiffs' filed an opening brief that focused *not* on all the broad categories of alleged secrets in the SAC, but on alleged disclosures in a single Apple patent.  Then, when confronted with their own patents that disclosed the alleged trade secrets, Plaintiffs pivoted to a much narrower alleged secret in their reply brief: ▮▮▮▮▮▮▮▮▮▮ Dkt. No. 161-1 at 2–8.  The Court's finding that this far narrower alleged trade secret was adequately described does not help Plaintiffs here.  Dkt. No.

161-1 at 2, 8.[2]  Again, for this motion, "the precise query is different; the court is not analyzing whether plaintiff will likely succeed on *at least one* of its trade secrets claims, but whether plaintiff has sufficiently put defendant on notice of the contours of its complaint such that allowing discovery will not unleash a 'fishing expedition.'" *Cutera*, 2020 WL 4937129, at *4 (emphasis added).  Under the relevant test, the broad and non-exhaustive categories of information alleged in the SAC render it defective, and the Court's earlier finding as to the one sliver of alleged secrets Plaintiffs identified in their PI reply brief does nothing to change that fact.

**B.     Plaintiffs Fail To Allege Misappropriation**

**1.     Plaintiffs Fail To Allege Improper Acquisition, Use, Or Disclosure**

Plaintiffs maintain that "there is no requirement" that they "plead exactly how [Apple] improperly obtained or used the[ir] alleged trade secrets" because Apple "[is] the only one[] who possess such information." Opp. Br. 16.  But information concerning Plaintiffs' own purported trade secrets is entirely in *their* possession.  Further, the contents of Apple's patent publications and products are publicly available and therefore Plaintiffs also possess this information.  Plaintiffs state that their SAC identifies "specific Apple patent publications" (*id.* at 17) and "specific versions of the Apple watch" (*id.* at 23) that allegedly contain Plaintiffs' secrets, but Plaintiffs fail to identify which, if any, of their purported secrets are actually in Apple's patents or products. Because Plaintiffs (if they have a basis for alleging misappropriation) possess this information, it *is* "[]reasonable to require" Plaintiffs to demonstrate the ways in which Apple purportedly acquired, used, or disclosed their secrets.  *Cf. id.* at 16.

Starting with the patents that allegedly disclose Plaintiffs' trade secrets, the SAC does nothing to identify by line and page number where trade secrets are allegedly disclosed.  Instead, Plaintiffs merely point to three patent application numbers.  *See* SAC

---

[2]  Had Apple been able to respond to these brand new arguments in a sur-reply or hearing, Apple would have shown that even the narrow alleged secret was extinguished before any publication by Apple and that, in any event, it was not a trade secret to begin with.

Gibson, Dunn &
Crutcher LLP

¶ 238.   Plaintiffs did not make clear which aspects of their technology and other information are "part of patents," if any, and which are secret. *Space Data Corp.*, 2017 WL 5013363, at \*2 (citing *Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2015 WL 8028294, at \*4 (N.D. Cal. Dec. 7, 2015)).   In a case like this one, where Plaintiffs allege that fourteen patent applications either name Lamego as an inventor or disclose the technology at issue (*id.* at ¶¶ 52–54, 238), Plaintiffs' allegations do not satisfy the Rule 8 pleading requirements.   They do not even give the Court or Apple "notice of the boundaries of this case." Dkt. No. 60 at 7 (quoting *Citcon*, 2018 WL 6813211, at \*4).

Plaintiffs' also fail to identify any specific secrets that are purportedly "incorporated" in any Apple Watch.   This too is fatal at the pleadings stage. *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) ("Here, although Honeywell has identified the end product (foam earplugs) in its Counterclaims, it has failed to describe the manufacturing process with sufficient particularity to put Plaintiffs on notice of what Honeywell claims is a trade secret.").   A "vague description" of the product at issue without identification of what components are protected by trade secrets is insufficient to survive a motion to dismiss. *See Cascade Designs*, 2016 WL 374564, at \*2 (W.D. Wash. Feb. 1, 2016) (citing *Baden Sports, Inc. v. Wilson Sporting Goods Co.*, 2011 WL 3158607, at \*2 (W.D. Wash. July 26, 2011) (pleadings are not adequate to survive a 12(b)(6) motion when a party does not specify in its complaint which components, or combination of components, of a device are protected trade secrets)).

Again, the ruling on the Motion for a PI hurts rather than helps Plaintiffs. Plaintiffs insist they *can* "prove such information" and point to their failed Motion for PI where they alleged that *one* of Apple's patents contained *one* of Plaintiffs' secrets. *Id.* at 17, 23.   Plaintiffs' having identified a single secret for which Plaintiffs purportedly have a basis to believe it was misappropriated cannot save Plaintiffs' SAC.[3]   To survive a motion to dismiss, it is Plaintiffs' "*complaint*" that must "state a claim to relief that is

---

[3]   Again, Apple did not have an opportunity to rebut Plaintiffs' reply arguments.

Gibson, Dunn &
Crutcher LLP

plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added), not Plaintiffs' Motion. *See also*, *cf. Rivas*, 2010 WL 330225, at *3 ("Additional information contained in an opposition to a motion to dismiss does not cure the defects in Plaintiff's original pleading."). If Plaintiffs actually have a basis to plead that Apple misappropriated their secrets, Plaintiffs should have been able to identify their alleged secrets in the Apple Watch and in Apple's public patent filings. Particularly after seven months and three chances to do so.

### 2.    None Of Plaintiffs' Six Factual Allegations Shows Apple's Knowledge

Plaintiffs point to six allegations and maintain that they are sufficient to show that Apple knew, or should have known, that the information Lamego used was Plaintiffs' trade secrets. Opp. Br. 1, 18. Each one fails.

First, Plaintiffs identify their allegation that Apple "(1) sought out Plaintiffs' technologies during confidential meetings." *Id.* at 1, 18. This allegation cannot support an inference that Apple "knew that any information [Lamego used or] communicated to [it] contained trade secrets." *CleanFish*, 2020 WL 1274991, at *10. For example, even "allegations that the [defendant]" "contacted and continuously communicated with [a former employee], while [he] was employed by Plaintiff" did not show defendant's knowledge. *Id.* Indeed, in denying Plaintiffs' Motion for PI, this Court held that "Apple planning to 'dig deep' while meeting with Plaintiffs" did not "suggest[] anything about Lamego's personal obligations to maintain secrecy" and therefore did not show that "Apple should have known that Lamego possessed trade secrets and had a duty to maintain secrecy." Dkt. No. 198 at 8.

Second, the allegations that Apple "(2) targeted key employees, including Masimo's Chief Medical Officer and Cercacor's Chief Technical Officer," and "(3) received a warning letter asking Apple to respect Plaintiffs' trade secrets," Opp. Br. 1, 18, do not show Apple's knowledge that Lamego purportedly used trade secrets. Indeed, the court in *Pellerin* found that counterclaim plaintiff Honeywell did "not allege *any* facts" in support of counterclaim defendants' misappropriation, 877 F. Supp. 2d at

989 (emphasis added), where, like Plaintiffs, Honeywell alleged that their former employee began working for counterclaim defendants, the former employee "was allegedly exposed to trade secrets and confidential information," the former employee signed an agreement that prohibited him from disclosing that information, and Honeywell sent counterclaim defendants a warning letter, *id.* at 986–87.

As Apple has explained, Plaintiffs' reliance on the warning letter to Apple is particularly problematic.  The letter violates California law.  Without identifying any specific trade secrets, Plaintiffs asserted that Lamego had been exposed to Plaintiffs' alleged trade secrets, and asked Apple to "employ Mr. Lamego in an area that does not involve healthcare technology, including mobile health applications and the measurement of physiological information."  SAC ¶ 23.  This is illegal—California law has long rejected the premise that a former employer may control an employee's choice of work (i.e., the area in which the employee may be employed) based only on the notion that the employee will "inevitably disclose" what they know.  *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1462 (2002) ("We agree the doctrine of inevitable disclosure 'creates a de facto covenant not to compete' and 'runs[s] counter to the strong public policy in California favoring employee mobility.'").

Moreover, Plaintiffs based their illegal request on Mr. Lamego's Employee Confidentiality Agreement, Dkt. No. 38-5 at 4–5, but the quoted clauses of this Agreement are void as a matter of law.  *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575 (2009) (collecting cases concluding similar clauses are void).   The Agreement purports to "prohibit[] Mr. Lamego, for a period of two years after the end of his employment with Cercacor, from competing with Cercacor."  Dkt. No. 38-5 at 4. "[B]ecause [this Agreement] restrained [Lamego's] ability to practice his profession," it is "invalid."  *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 948 (2008).  In their letter, Plaintiffs maintained that the clauses were valid because their purpose was to protect trade secrets, Dkt. No. 38-5 at 4, but "the noncompete and nonsolicitation clauses in the [A]greement[] are not narrowly tailored or carefully limited to the protection of

trade secrets, but are so broadly worded as to restrain competition" and are therefore void. *Dowell*, 179 Cal. App. 4th at 577. Even worse than the void clauses in *Dowell*, Plaintiffs' clauses are not "triggered only when the former employee's services for a competitor implicate the use of confidential information," *id.* at 578; rather, they are always triggered *unless* Lamego can "*prove* that the action was taken without the use or disclosure of any of [Cercacor's] trade secrets …," Dkt. No. 38-5 at 5. These clauses are thus "facially void under § 16600" and Plaintiffs' "use of [this] illegal noncompete agreement also violates the UCL [(Unfair Competition Law, § 17200, et seq.)]." *Dowell*, 179 Cal. App. 4th at 575, 579.

This Court held that the warning letter informed Apple of Lamego's "duty to maintain confidentiality." Dkt. No. 198 at 8. Even if this illegal warning letter put Apple "on notice that Lamego possessed confidential information for which he had a duty to maintain secrecy," *id.*, because the warning letter did not identify any specific trade secrets, Apple's receipt of this letter cannot show that Apple knew that any information Lamego actually used contained trade secrets, as is the required showing, *CleanFish*, 2020 WL 1274991, at *10. The anti-competitive letter, which like Plaintiffs' SAC does not reference any specific trade secrets, therefore is not a basis for alleging Apple's knowledge. If the result were otherwise, former employers' sending warning letters (in violation of Section 17200)—which rely on facially void noncompetition clauses (under Section 16600) and do not reference any specific trade secrets—would always give rise to an employer's knowledge of unidentified trade secrets. This is wrong both as a matter of law, *see Pellerin*, 877 F. Supp. 2d at 989, and of "California settled public policy in favor of open competition," *Edwards*, 44 Cal. 4th at 945.

Third, Plaintiffs point to their allegations that Apple "(4) obtained complex technical information from Plaintiffs' former employees shortly after they arrived at Apple" and "(5) filed patent applications on that information." Opp. Br. 1, 18. These allegations are based on pure speculation, which is improper as a matter of law. To begin with, even if Lamego retained Plaintiffs' technical information in his mind, that is

not sufficient to show that Apple acquired or used it. *FLIR Systems, Inc. v. Parrish,* 174 Cal. App. 4th 1270, 1279 (2009) (mere possession of trade secrets by a departing employee not enough for a CUTSA violation). Furthermore, Plaintiffs' suggestion that Apple did something wrong by letting Lamego work in the same area he worked in before is just as improper as Plaintiffs' noncompete agreement. That Lamego drew on knowledge and skills gained from Plaintiffs to work in the same area for Apple is specifically permitted by California's policy favoring free mobility for employees. *See Whyte*, 101 Cal. App. 4th at 1464 (rejecting the "inevitable disclosure" doctrine, under which a claim for trade secret misappropriation is stated if an employee's new job will inevitably lead to reliance on the former employer's trade secrets.). Allowing an action for trade secret misappropriation where a former employee uses his or her own knowledge to benefit a new employer is impermissible because it would be equivalent to retroactively imposing on the employee a covenant not to compete. *Id*. at 1462–63 ("The chief ill in the covenant not to compete imposed by the inevitable disclosure doctrine is its after-the-fact nature: The covenant is imposed after the employment contract is made and therefore alters the employment relationship without the employee's consent.").

Plaintiffs' assertion that the "Lamego Patents" were filed soon after he arrived at Apple likewise do not move the needle. Again, there are no facts suggesting that Apple should have speculated that because Lamego was working quickly in the same space he had worked for many years, he must have been misappropriating trade secrets. That not only would run afoul of California's rejection of the inevitable disclosure doctrine, it would also require Apple to make an assumption where it had no reason to do so. *Lamont v. Krane*, 2019 WL 2010705, at *3 (N.D. Cal. May 7, 2019) ("Plaintiff alleges Mr. Conner disclosed his patent ideas to Mr. Krane [of Google Ventures] … in October 2016. Plaintiff then states that in November 2016 Google Inc. started using artificial intelligence in its Cloud platform. Plaintiff's statements are conclusory and lack reasonable logic. Plaintiff does not show what trade secrets he alleges were stolen, nor

1   does he show that Google knew or had reason to know any trade secret was derived from

2   improper means." (internal citations omitted)).

3       In sum, at best, these allegations may suggest that Apple was aware that Lamego

4   drew on knowledge and skills he gained while working for Plaintiffs to develop a

5   product for his new employer.  Apple did *not* know (and Plaintiffs fail to plead *any* facts

6   to the contrary) whether Lamego was drawing on knowledge and skills he gained while

7   working for Plaintiffs, which is perfectly acceptable, or was using Plaintiffs' trade

8   secrets.  These allegations, therefore, cannot support an inference that Apple "knew that

9   any information [Lamego used or] communicated to [it] contained trade secrets."

10  *CleanFish*, 2020 WL 1274991, at *10.

11      Fourth, Plaintiffs identify their allegation that Apple "(6) selectively requested

12  non-publication of patents containing Plaintiffs' trade secrets." Opp. Br. 1, 18.  Apple's

13  non-publication requests under 35 U.S.C. § 122(b)(2)(B)(ii) are not evidence that Apple

14  knew these patent applications contained trade secrets.  This Court explained that,

15  although non-publication requests are common by Apple ("Apple submitted more than

16  300 such requests in the last six years"), the Court did not know "whether submitting

17  non-publication requests is in fact the norm for publications."  Dkt. No. 198 at 8–9.

18  Importantly, Plaintiffs *also* submit non-publication requests.  *See* Lerner Decl., Ex. A.

19  This is a routine patent procedure, which Apple and Plaintiffs both regularly use.

20  Indeed, both Apple *and* Plaintiffs have a statutory right under § 122 to keep their pending

21  patent applications secret—taking advantage of this right cannot support an allegation

22  of Apple's requisite knowledge.

23      Finally, Plaintiffs maintain "the SAC's allegations of Lamego's knowledge are

24  also 'sufficient to allege that [Apple] knew of the misappropriation.'"  Opp. Br. 18

25  (citing *Pyro-Comm Sys. Inc. v. W. Coast Fire & Integration Inc.*, 2015 WL 12765143,

26  at *5 (C.D. Cal. Apr. 2, 2015)).  Plaintiffs' contention that Lamego's knowledge can be

27  imputed to Apple is flat wrong.  Plaintiffs cannot rely on Lamego's purported knowledge

28  to allege *Apple's* knowledge as a required element of *Apple's* purported

misappropriation.  Indeed, it would eviscerate the knowledge requirement in the statute, which requires knowledge of improper acquisition.   Cal. Civ. Code § 3426.1(b).   It would be improper as a matter of law "to impute an agent's knowledge of a secret to the principal."  *Carr v. AutoNation Inc.*, 2018 WL 288018, at *2 (E.D. Cal. Jan. 4, 2018).

*Pyro-Comm* did not hold otherwise.  In *Pyro-Comm*, plaintiff's complaint alleged that a former employee had access to plaintiff's trade secrets, the former employee left plaintiff to work for defendant, and the former employee copied plaintiff's trade secrets and brought this information to defendants on a hard drive.  *Pyro-Comm*, 2015 WL 12765143, at *2, *3.  Defendant's president paid for the repair of that hard drive "so that [defendant] could use the stolen data to its advantage."  *Id.* at *5.  Defendant's personnel then used plaintiff's trade secrets and confidential information to undercut plaintiff in the marketplace.  *Id.*   The court held that plaintiff's assertion that defendant's "president[] knew of[,] and encouraged the use of [plaintiff's] ill-gotten trade secrets, [wa]s sufficient to allege that [defendant] knew of the misappropriation."  *Id. Pyro-Comm* is therefore inapposite.   The court did not impute the *former employee*'s knowledge to defendant, as Plaintiffs attempt to do here with Lamego.  Rather, the court held that it was plaintiff's allegation of the *defendant's president's* knowledge that was sufficient to allege that defendant knew of the misappropriation.  Plaintiffs have made no such allegation here.

Thus, because Plaintiffs do not allege sufficient facts for this Court to infer that Apple knew or had reason to know that Lamego had a duty to maintain the secrecy of the information purportedly shared with Apple, Lamego breached that duty, or that Apple induced him to do so, Plaintiffs' allegations do not support a plausible inference of misappropriation.

### 3.   Plaintiffs' Allegations Of Inducement Are Entirely Unsupported

Plaintiffs do not dispute their failure to plead a single factual allegation describing how Apple purportedly induced a breach of a duty to maintain secrecy.  The SAC in this regard provides nothing more than an "unadorned, the-defendant-unlawfully-harmed-

1   me accusation." *Iqbal*, 556 U.S. at 678.  This is insufficient to survive Apple's Motion

2   to Dismiss.  *Id.*

3   Plaintiffs argue that they can properly allege Apple induced a breach "'on

4   information and belief' because the information 'is not presumptively in the knowledge

5   of the pleading party.'"  Opp. Br. 20–21 (quoting *Calendar Research LLC v. StubHub,*

6   *Inc.*, 2017 WL 10378336, at *4 (C.D. Cal. Aug. 16, 2017)).  *Calendar Research*,

7   however, quotes *Brocade*, 2011 WL 1044899, at *6, which was decided *before* the Ninth

8   Circuit considered, under *Twombly* and *Iqbal*, the sufficiency of allegations made on

9   "information and belief."  "A conclusory allegation based on information and belief

10  remains insufficient under *Iqbal/Twombly*."  *Menzel v. Scholastic, Inc.*, 2018 WL

11  1400386, at *2 (N.D. Cal. Mar. 19, 2018).  And although the Ninth Circuit held that the

12  *Iqbal/Twombly* standard does not prevent a plaintiff from pleading ***facts*** alleged upon

13  information and belief where the facts are "*peculiarly* within the possession and control

14  of the defendant," *Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (emphasis

15  added), "that does not mean that ***conclusory allegations*** are permitted," *Menzel*, 2018

16  WL 1400386, at *2 (emphasis added).  That the facts are "peculiarly within the

17  possession and control" of the defendant "does not excuse the requirement that the

18  plaintiff allege something more than bare conclusions."  *Id.* at *3; *see also Cutera*, 2020

19  WL 4937129, at *9 (conclusory allegations as to defendant's knowledge insufficient

20  despite the question of defendant's knowledge being "peculiarly" within defendants

21  "possession and control").  Importantly, "[a]n allegation made on information and belief

22  must still be 'based on factual information that makes the inference of culpability

23  plausible.'"  *Menzel*, 2018 WL 1400386, at *2.   For example, in *Park*, even though

24  many of the relevant facts were known only to the defendant, the court concluded Park

25  pleaded sufficient facts to state a plausible claim "*in light of the additional facts alleged*

26  *by Park*."  851 F.3d at 928–29 (emphasis added).  Plaintiffs' SAC fails to meet this

27  standard.

28  Plaintiffs maintain that "*Calendar Research* is on point."  Opp. Br. 21.  It is not.

Calendar Research alleged acquisition by way of the individual defendants' theft of its trade secrets. *Calendar Research*, 2017 WL 10378336, at *4. Unlike Plaintiffs, Calendar Research pleaded factual content sufficient to allow the court to infer that "Defendant StubHub knew or should have known that the individual defendants had stolen Calendar Research's trade secrets." *Id.* As the court explained, Plaintiffs alleged that the individual defendants "downloaded proprietary … information, maintained access to … source code, and planned to build a similar group scheduling application while working for StubHub." *Id.* at *1 (citing Calendar Research's Third Amended Complaint ("TAC")). Plaintiffs also alleged that an individual defendant "'had frequent communications with employees of StubHub,' … 'who informed [him] that … StubHub wanted to incorporate the source code … into StubHub's existing and future applications.'" *Id.* at *4 (quoting Calendar Research's TAC). Based on these allegations and others, the court concluded that Calendar Research adequately alleged that StubHub acquired trade secrets through the individual defendants' theft of trade secrets. *Id.* In stark contrast, here, the SAC includes only the single conclusory statement that "Defendant induced Lamego to disclose Plaintiffs' [CI]." SAC ¶ 234. Nothing more. Plaintiffs allege absolutely *no* facts describing how Apple purportedly induced such a breach. *Calendar Research*, therefore, cannot save them.

Nor can the other cases Plaintiffs cite. Like *Calendar Research*, each of the cases Plaintiffs cite rely on pre-*Park* cases. Moreover, Plaintiffs do not cite a single case where an allegation of inducement, based entirely on a *single* conclusory sentence in the complaint, survived a motion to dismiss.

This Court should therefore dismiss Plaintiffs' trade secret claim at least as to its allegations of inducement.

### 4.    Plaintiffs Do Not Allege Apple's Respondeat Superior Liability

Plaintiffs complain that "Apple completely ignores the SAC's respondeat superior allegations" and that their allegations "stand unchallenged." Opp. Br. 23. But in fact, there simply are no such allegations to ignore. In Plaintiffs' Request for Oral Argument

on their Motion for PI, Plaintiffs argued that their SAC *does* allege liability under respondeat superior, Dkt. No. 195 at 1–2 (citing SAC ¶¶ 233–235), because the SAC alleges that Lamego used and disclosed "Plaintiffs' [CI] for the benefit of Defendant while employed by Defendant," *id.* (quoting SAC ¶ 234 and SAC ¶ 235).  But Plaintiffs pluck these sentences out of context.  Rather, the paragraphs Plaintiffs cite "take[] the Complaint beyond the ambit of *respondeat superior*, … [and] allege[] [] [Apple's] *knowing* participation."  *U.S. Legal Support, Inc. v. Hofioni*, 2013 WL 6844756, at *7 (E.D. Cal. Dec. 20, 2013).  Thus, "as currently pled, the Complaint does not include relevant allegations that might support a *respondeat superior* theory."  *Id.*

SAC Paragraphs 233–234 do not allege that Apple is liable under respondeat superior; rather, they (insufficiently) allege that Apple is *directly* liable for misappropriation by way of acquisition through improper means.  Paragraph 233 begins by stating that "*Defendant* misappropriated Plaintiffs' [CI] by acquisition at least from Plaintiffs' former employees who left Plaintiffs to work for Defendant."  SAC ¶ 233 (emphasis added).  Paragraph 234 begins with "[a]t the time of acquisition, *Defendant* also knew, or had reason to know, that Lamego obtained Plaintiffs' [CI] pursuant to a duty or obligation to keep Plaintiffs' [CI] secret."  *Id.* ¶ 234 (emphasis added).  And paragraph 234 concludes "[t]hus, *Defendant* acquired Plaintiffs' trade secrets through the improper means of its employees breaching a duty to maintain secrecy owed to Plaintiffs, as well as inducing its employees to breach a duty to maintain secrecy owed to Plaintiffs."  *Id.* (emphasis added).  These paragraphs discuss Apple's purported *direct* liability; they contain *no* allegations that might support a respondeat superior theory.

Similarly, SAC Paragraphs 235–236 (insufficiently) allege that Apple is *directly* liable for misappropriation by way of use or disclosure of Plaintiffs' CI.  Paragraph 235 begins by stating:  "*Defendant* used and disclosed Plaintiffs' [CI] it obtained from Plaintiffs and their former employees without Plaintiffs' express or implied consent."  *Id.* ¶ 235 (emphasis added).  Paragraph 236 states that "*Defendant* further used and disclosed Plaintiffs' [CI] at least by incorporating it into Defendant's products and by

filing patent applications ….” *Id.* ¶ 236 (emphasis added).  The paragraph concludes
with “*Defendant* knew or had reason to know that its knowledge of Plaintiffs’ [CI] came
from Plaintiffs, … [and that] Lamego [had a duty] to keep Plaintiffs’ [CI] secret.” *Id.*
(emphasis added).  Again, these paragraphs discuss Apple’s purported *direct* liability;
they do not contain *any* allegations that might support a respondeat superior theory.

At most, Paragraphs 233 and 235 allege Lamego’s *knowledge* of his duty of
secrecy and that disclosure would constitute a breach of that duty.  SAC ¶¶ 233, 235.
Plaintiffs’ SAC thus merely attempts to allege Apple’s *direct* liability by imputing
Lamego’s knowledge to Apple.  SAC ¶¶ 233, 235.  Indeed, this was precisely Plaintiffs’
argument in their opposition to Apple’s Motion to Dismiss Plaintiffs’ FAC.  Dkt. No.
48 at 13 (quoting *Pyro-Comm Sys.*, 2015 WL 12765143, at *5) (“Plaintiffs[’] allegations
concerning Lamego’s knowledge are ‘sufficient to allege that [*Apple*] knew of the
misappropriation.’” *Id.* (emphasis added)).  But as discussed (*supra*, Part II.B.2), this is
incorrect and *Pyro-Comm* did not hold otherwise.  There was *no* mention of Apple’s
liability under the doctrine of respondeat superior in Plaintiffs’ opposition brief nor did
Plaintiffs amend their FAC to include this theory.  Plaintiffs may have finally recognized
this doctrine, but they cannot save their SAC with new arguments in their Opposition to
Apple’s *second* motion to dismiss.  *Kramer*, 2012 WL 13015003, at *4 (“The opposition
brief is not the proper pleading to correct the SAC’s deficiencies.”).

“Plaintiff[s’] *respondeat superior* argument is therefore unavailing.”  *U.S. Legal
Support*, 2013 WL 6844756, at *7.  Plaintiffs may not proceed under this theory.

### III.   CONCLUSION

Apple respectfully requests that the Court dismiss Plaintiffs’ Thirteenth Cause of
Action for Trade Secret Misappropriation under the CUTSA with prejudice.

1 | Dated:  September 18, 2020

2 | Respectfully submitted,

3 | JOSHUA H. LERNER
4 | H. MARK LYON
    BRIAN M. BUROKER
    BRIAN A. ROSENTHAL
5 | ILISSA SAMPLIN
    ANGELIQUE KAOUNIS
6 | BRIAN K. ANDREA
    GIBSON, DUNN & CRUTCHER LLP

7 |

8 | By: ___/s/ Joshua H. Lerner___
        Joshua H. Lerner
9 |

10 | *Attorneys for Defendant Apple Inc.*