# Exhibit A

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**INITIAL DISCLOSURES OF PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.**<br><br>Hon. James V. Selna<br>Magistrate Judge John D. Early |

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs") hereby make the following initial disclosures to Defendant Apple, Inc. ("Apple"). These initial disclosures are based on information and documents presently available to and located by Plaintiffs and its attorneys.  Plaintiffs reserve the right to supplement, revise, correct, or otherwise amend these initial disclosures, to assert additional facts and theories that they later develop, and/or to produce additional information during the course of discovery, as provided by the Federal Rules of Civil Procedure and the Court's Local Rules, and to rely on such information as evidence in this action. By making these disclosures, Plaintiffs do not waive any applicable privilege, work product protection, or other immunity, and reserves the right to object to the production or admissibility of any information included below.

## A. <u>INDIVIDUALS LIKELY TO HAVE KNOWLEDGE OF DISCOVERABLE FACTS</u>

Plaintiffs have not yet identified all of the persons whom they may use to support their claims and defenses in this action.  Upon information and belief, other persons having discoverable information that Plaintiffs may use to support their claims may be uncovered during discovery.  However, pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i), Plaintiffs identify the following persons who may have discoverable information that Plaintiffs may use to support their claims or defenses.  Where indicated, the individuals should be contacted through counsel for Plaintiffs at the following address and telephone number:

Attn: Steve Larson
Knobbe, Martens, Olson & Bear, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
Telephone: (949) 760-0404

| NAME | AREAS OF KNOWLEDGE | CONTACT INFORMATION |
|------|-------------------|---------------------|
| Joe Kiani, Masimo Corporation | Masimo's business and products; Cercacor's business and products. | Masimo Corporation 52 Discovery Irvine, CA 92618

TO BE CONTACTED THROUGH COUNSEL FOR MASIMO |
| Yongsam Lee, Masimo Corporation | Masimo's products, regulatory submissions and manufacturing processes relating to Masimo's products, Masimo's IT policies, confidentiality policies, and document access restrictions. | Masimo Corporation 52 Discovery Irvine, CA 92618

TO BE CONTACTED THROUGH COUNSEL FOR MASIMO |
| Tracy Miller, Masimo Corporation | Masimo's human resources policies, employment and confidentiality agreements | Masimo Corporation 52 Discovery Irvine, CA 92618

TO BE CONTACTED THROUGH COUNSEL FOR MASIMO |
| Mohamed Diab Masimo Corporation | Masimo's research, development, and technology; Masimo's products; subject matter of the disputed patents to which Masimo asserts ownership and/or inventorship should be corrected | Masimo Corporation 52 Discovery Irvine, CA 92618

TO BE CONTACTED THROUGH COUNSEL FOR MASIMO |
| Ammar Al-Ali Masimo Corporation | Masimo's research, development, and technology; Masimo's products; subject matter of the disputed patents to which Masimo asserts ownership and/or inventorship should be corrected | Masimo Corporation 52 Discovery Irvine, CA 92618

TO BE CONTACTED THROUGH COUNSEL FOR MASIMO |

-2-

Exhibit A
Page 9

| NAME | AREAS OF KNOWLEDGE | CONTACT INFORMATION |
|---|---|---|
| Walt Weber Masimo Corporation | Masimo's research, development, and technology; Masimo's products; subject matter of the disputed patents to which Masimo asserts ownership and/or inventorship should be corrected | Masimo Corporation 52 Discovery Irvine, CA 92618<br><br>TO BE CONTACTED THROUGH COUNSEL FOR MASIMO |
| Bilal Muhsin, Masimo Corporation | Masimo's research, development, and technology; Masimo's products | Masimo Corporation 52 Discovery Irvine, CA 92618<br><br>TO BE CONTACTED THROUGH COUNSEL FOR MASIMO |
| Abraham Mazda Kiani, Cercacor Laboratories | Cercacor's business and products. | Cercacor Laboratories 15750 Alton Irvine, CA 92618<br><br>TO BE CONTACTED THROUGH COUNSEL FOR MASIMO |
| Greg Olsen, Cercacor Laboratories | Cercacor's research, development, and technology; Cercacor's products | Cercacor Laboratories 15750 Alton Irvine, CA 92618<br><br>TO BE CONTACTED THROUGH COUNSEL FOR MASIMO |
| Kevin Pauley, Cercacor Laboratories | Cercacor's research, development, and technology; Cercacor's products | Cercacor Laboratories 15750 Alton Pkwy Irvine, CA 92618<br><br>TO BE CONTACTED THROUGH COUNSEL FOR MASIMO |

-3-

| NAME | AREAS OF KNOWLEDGE | CONTACT INFORMATION |
|---|---|---|
| Gerry Hammarth, Cercacor Laboratories | Cercacor's business and products; Cercacor's IT policies, confidentiality policies, and access restrictions; sales and financial harm to Cercacor | Cercacor Laboratories 15750 Alton Pkwy Irvine, CA 92618  TO BE CONTACTED THROUGH COUNSEL FOR MASIMO |
| Former Masimo and/or Cercacor employees who went to Apple, including but not limited to John Aguilar, Johannes Bruinsma, Ottavia Golfetto, Haritha Haridas, Swapnil Harsule, Joseph Jagenow, Shruti Koneru, Marcelo Lamego, Inje Lee, Yinghui Lu, Ehsan Masoumi, Michael O'Reilly, Boris Oreshkin, Cornelius Rath, Will Regan, Felipe Tonello, Vincent Wayne, and Rich Young. | Acquisition, use, and disclosure of Plaintiffs' confidential information | |

Plaintiffs reserve the right to name additional individuals with knowledge concerning their claims and defenses as discovery progresses.

**B.  DOCUMENTS AND THINGS IN THE POSSESSION OF COUNSEL OR THE PARTY**

Plaintiffs identify the following categories of non-privileged documents, electronically stored information, and tangible things that are in their

-4-

possession, custody, or control that Plaintiffs currently believe they may use to support their claims or defenses, unless solely for impeachment.  By providing the following categories of documents, Plaintiffs do not waive their right to object to the production of any document in their possession, custody, or control for any reason, including based on grounds of attorney-client privilege, work product immunity, or any other applicable privilege or immunity.

Plaintiffs' disclosure of the following categories of documents and things is based solely upon information Plaintiffs have been able to discover to the present date and shall not be deemed a representation that additional documents do not exist.  Plaintiffs reserve the right to supplement these disclosures as their investigation of the facts of this case continues.

1.   Documents relating to the design, development and operation of Masimo technology;

2.   Documents pertaining to the asserted patents, including their prosecution histories;

3.   Documents pertaining to any alleged prior art to the asserted patents;

4.   Communications between Masimo and Apple;

5.   License Agreement between Masimo and Cercacor;

6.   Plaintiffs' IT policies, confidentiality policies, and document access restrictions;

7.   Employment Agreements between Plaintiffs and their former employees who went to Apple, including Marcelo Lamego and Michael O'Reilly; and

8.   Documents pertaining to the confidential and proprietary information to which former employees of Plaintiffs who went to Apple, including Marcelo Lamego and Michael O'Reilly, had access at Plaintiffs.

-5-

The documents and things identified above are located at Knobbe, Martens, Olson & Bear, LLP, 2040 Main Street, 14th Floor, Irvine, CA 92614, Masimo Corporation, 52 Discovery, Irvine, CA 92618, and/or Cercacor Laboratories, Inc., 15750 Alton Pkwy, Irvine, CA 92618.

## C.   STATEMENT OF BASIS FOR ANY DAMAGES CLAIMED

Plaintiffs seek monetary relief for all damages sustained by Plaintiffs by virtue of Defendant's acts, as set forth in the Complaint and any amended complaints.   Plaintiffs seek compensatory damages, lost profits, restitution, unjust enrichment, reasonable royalties, punitive damages, and/or exemplary damages.  Plaintiffs also seek reasonable attorneys' fees.

Plaintiffs have not yet made a computation of any category of damages pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii) because Plaintiffs require discovery from Defendant to do so.   Plaintiffs expect that they will produce such information and supporting documentation through an expert witness and report at the appropriate time, pursuant to Fed. R. Civ. P. 26(a)(2) and the Court's case scheduling order in this matter.

## D.   INSURANCE AGREEMENTS IN FORCE

Plaintiffs are not aware of any insurance agreements under which an insurance carrier may be liable to satisfy all or part of any possible judgment or to indemnify or reimburse for payments made to satisfy any such judgment.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  April 14, 2020      By: */s/ Stephen W. Larson*

Joseph R. Re
Stephen C. Jensen
Perry D. Oldham
Stephen W. Larson

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories

-6-

1

**PROOF OF SERVICE**

2

    I am a citizen of the United States of America and I am employed in

3

Irvine, California.  I am over the age of 18 and not a party to the within action.

4

    On April 14, 2020, I served the within **INITIAL DISCLOSURES OF**

5

**PLAINTIFFS    MASIMO    CORPORATION    AND    CERCACOR**

6

**LABORATORIES, INC.** on the parties or their counsel shown at the email

7

addresses shown below:

8

GIBSON, DUNN & CRUTCHER LLP

9

Joshua H. Lerner
10

JLerner@gibsondunn.com

11

H. Mark Lyon,
MLyon@gibsondunn.com
12

13

Brian M. Buroker
BBuroker@gibsondunn.com

14

Ilissa Samplin
15

ISamplin@gibsondunn.com

16

Angelique Kaounis
17

AKaounis@gibsondunn.com

18

    I certify and declare under penalty of perjury under the laws of the State

19

of California that I am employed in the office of a member of the bar of this

20

Court at whose direction the service was made, and that the forgoing is true and

21

correct.

22

    Executed on April 14, 2020, at Irvine, California.

23

24

_____

25

32465232

Karina Villanueva

26

27

28

-7-

# Exhibit B

| From: | Rosenthal, Brian A. |
|---|---|
| To: | Masimo.Apple |
| Cc: | *** Apple-Masimo |
| Subject: | Masimo v Apple - meet and confer regarding motion to stay |
| Date: | Tuesday, September 1, 2020 5:49:12 PM |

Counsel, we intend to move to stay the patent counts of the pending case in view of IPR petitions that have been and will be filed.  Please let us know times tomorrow, Thursday, and Friday of this week that you are available to meet and confer regarding this request.

**Brian A. Rosenthal**


GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.2339 • Mobile +1 703.989.7879
BRosenthal@gibsondunn.com • www.gibsondunn.com

Sent from my mobile device...please excuse typos

# Exhibit C

Exhibit C
Page 17

| From: | Perry.Oldham |
|---|---|
| To: | Rosenthal, Brian A. |
| Cc: | Masimo.Apple; *** Apple-Masimo |
| Subject: | Re: Masimo v. Apple |
| Date: | Thursday, October 1, 2020 8:23:27 PM |

[External Email]

Dear Brian,

We appreciate that Brian Andrea confirmed Apple is gathering documents on Series 6 and SE. However, to obtain our agreement to withdraw our *ex parte* application, you represented to us that Apple would produce its documents "shortly" after releasing the new products such that Plaintiffs could "very quickly" determine if the products infringe.  It has now been over two weeks and Apple produced nothing.  Please tell us what you meant on September 9 when you said Apple would produce these documents "shortly" so that Plaintiffs could "very quickly" make a determination of infringement.  Please also tell us what you meant on September 9 when you said Apple would produce its source code "shortly" after Plaintiffs confirmed the Series 6 and SE were accused products.  Please confirm a date certain by which you will provide these documents and source code.

With regard to your request for specific patents and claims as would be provided in infringement contentions, that information was not required by our agreement.  Apple agreed it would provide documents even before Plaintiffs notified Apple that the Series 6 and SE were accused products in this case.  Nevertheless, as an example, the Series 6 appears to infringe at least the '703 Patent and the Series SE appears to infringe all the unexpired patents in suit. Obviously, with the release of these products just two weeks ago, our investigation is continuing.

Best regards,

Perry

**Perry Oldham**
Partner
949-721-2961
**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Tuesday, September 29, 2020 7:44 AM
**To:** Perry.Oldham <Perry.Oldham@knobbe.com>; BRosenthal@mayerbrown.com <BRosenthal@mayerbrown.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple

Exhibit C
Page 18

Perry,

We are already working on gathering the materials we told you we would provide for the Apple
Watch Series 6 and SE.  As soon as we have collected the documents we will provide them.  Your
email states that Plaintiffs confirm that those products are accused products, but provides no
explanation as to the basis for those allegations – at a minimum, please let us know what patents
and claims Plaintiffs allege those products infringe.

Thanks,
Brian


**Brian Andrea**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Perry.Oldham <Perry.Oldham@knobbe.com>
**Sent:** Monday, September 28, 2020 7:59 PM
**To:** BRosenthal@mayerbrown.com
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>
**Subject:** Masimo v. Apple

[External Email]
Brian,

Plaintiffs write regarding Apple's release of the Series 6 Watch.   On September 9, Apple stated:

> The idea of when the new version of the Apple Watch is released shortly thereafter
> producing the sort of non-source code but other, you know, core technical documents so
> that you can very quickly determine whether you're going to assert the patents in suit
> against that product. If you do assert it, then we will provide the source code shortly
> thereafter.

As you know, Apple announced the Series 6 on September 15 and began selling it on September 18.
To date, Apple has removed redactions to three documents but has not produced its promised core
technical documents on the Series 6.  Please confirm Apple will produce its core technical
documents for Series 6 in the next few days, including documents regarding pulse oximetry.
Regardless, Plaintiffs have confirmed based on public information that the Series 6 is an accused
product in this case.  Accordingly, please confirm when Apple will make its source code for Series 6

Exhibit C
Page 19

available for inspection based on its commitment to do so "shortly" after Plaintiffs confirmed Series 6 was an accused product.  Plaintiffs have also confirmed that the Series SE is also an accused product in this case.  Please let us know when Apple will provide the same information for the Series SE.

Separately, we expect Apple will produce additional information and source code about all accused products by October 9 pursuant to our agreement.  However, Apple should not wait until October 9 to produce the type of information for Series 6 and Series SE that Apple previously produced for the earlier versions of the watch.

Best regards,

Perry

**Perry Oldham**
Partner
949-721-2961
**Knobbe** Martens

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit C
Page 20

# Exhibit D

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent of:      Jeroen Poeze et al.

U.S. Patent No.:     10,624,564        Attorney Docket No.:  50095-0023IP1

Issue Date:         April 21, 2020

Appl. Serial No.:     16/725,292

Filing Date:        December 23, 2019

Title:              MULTI-STREAM DATA COLLECTION SYSTEM FOR NONIN-
VASIVE MEASUREMENT OF BLOOD CONSTITUENTS

**Mail Stop Patent Board**

Patent Trial and Appeal Board

U.S. Patent and Trademark Office

P.O. Box 1450

Alexandria, VA 22313-1450

## PETITION FOR *INTER PARTES* REVIEW OF UNITED STATES PATENT NO. 10,624,564 PURSUANT TO 35 U.S.C. §§ 311–319, 37 C.F.R. § 42

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

# TABLE OF CONTENTS

I.      MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1)...........................3
        A.  Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1)......................3
        B.  Related Matters Under 37 C.F.R. § 42.8(b)(2) ...........................3
        C.  Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3)...................3
        D.  Service Information ...................................................4

II.     PETITIONER HAS STANDING TO REQUEST IPR...................................4

III.    '564 PATENT OVERVIEW ....................................................5
        A.  Brief Description.....................................................5
        B.  Level of Ordinary Skill in the Art...................................8

IV.     APPLICATION OF PRIOR ART TO THE '564 PATENT CLAIMS...........9
        A.  Asserted Grounds and References ......................................9
        B.  GROUND 1: Claims 1-10 and 13-30 are obvious over Aizawa, Ohsaki,
            and Goldsmith ......................................................10
            1.  Overview of Aizawa..............................................10
            2.  Overview of Ohsaki..............................................13
            3.  Overview of Goldsmith...........................................15
            4.  Combination of Aizawa, Ohsaki, and Goldsmith ...................19
            5.  Manner in which Aizawa, Ohsaki, and Goldsmith render obvious
                Claims 1-10 and 13-30 ..........................................41
        C.  GROUND 2 – Claim 11 is obvious over AOG and Sherman ................91
            1.  Overview of Sherman.............................................91
            2.  Combination of AOG and Sherman .................................93
            3.  Manner in which AOG and Sherman render obvious Claim 11 ...94
        D.  GROUND 3 – Claim 12 is obvious over AOG and Rantala ................95
            1.  Overview of Rantala.............................................95
            2.  Combination of AOG and Rantala .................................97
            3.  Manner in which AOG and Rantala render obvious Claim 12 .....99
        E.  GROUND 4 – Claims 1-10 and 13-30 are obvious over Aizawa, Ohsaki,
            Goldsmith, and Ali..................................................99
            1.  Overview of Ali................................................100
            2.  Combination of AOG and Ali and Manner in which AOG-Ali
                renders obvious [1h]...........................................101
        F.  GROUND 5 – Claim 11 is obvious over Aizawa, Ohsaki, Goldsmith,
            Ali, and Sherman; GROUND 6 – Claim 12 is obvious over Aizawa,
            Ohsaki, Goldsmith, Ali, and Rantala ...............................102

V.      PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION........103

i

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

VI.    CONCLUSION...........................................................................108

VII.   PAYMENT OF FEES – 37 C.F.R. § 42.103.............................................108

ii

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

## EXHIBITS

| | |
|---|---|
| APPLE-1001 | U.S. Patent No. 10,624,564 to Jeroen Poeze, et al. ("the '564 patent") |
| APPLE-1002 | Excerpts from the Prosecution History of the '564 Patent ("the Prosecution History") |
| APPLE-1003 | Declaration of Thomas Kenny |
| APPLE-1004 | RESERVED |
| APPLE-1005 | RESERVED |
| APPLE-1006 | US Pub. No. 2002/0188210 ("Aizawa") |
| APPLE-1007 | JP Pub. No. 2006/296564 ("Inokawa") |
| APPLE-1008 | Certified English Translation of Inokawa and Translator's Declaration |
| APPLE-1009 | US Pub. No. 2001/0056243 ("Ohsaki") |
| APPLE-1010 | "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Y. Mendelson, et al.; Proceedings of the 28th IEEE EMBS Annual International Conference, 2006; pp. 912-915 ("Mendelson-2006") |
| APPLE-1011 | US Pub. No. 2007/0093786 ("Goldsmith") |
| APPLE-1012 | *processor,* Merriam Webster's Collegiate Dictionary, 10th Ed., Merriam Webster Inc., 1999 |
| APPLE-1013 | US Patent No. 4,941,236 ("Sherman") |
| APPLE-1014 | "Design and Evaluation of a New Reflectance Pulse Oximeter Sensor," Y. Mendelson, et al., Medical Instrumentation, Vol. 22, No. 4, 1988; pp. 167-173 ("Mendelson-1988") |

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

| | |
|---|---|
| APPLE-1015 | US Pub. No. 2008/0194932 ("Ayers") |
| APPLE-1016 | U.S. Patent No. 7,558,622 ("Tran") |
| APPLE-1017 | U.S. Patent No. 6,351,217 ("Kuhn") |
| APPLE-1018 | U.S. Patent No. 7,656,393 ("King") |
| APPLE-1019 | U.S. Patent No. 6,584,336 ("Ali") |
| APPLE-1020 | US Pub. No. 2004/0054291 ("Schulz") |
| APPLE-1021 | Design of Pulse Oximeters, J.G. Webster; Institution of Physics Publishing, 1997 ("Webster") |
| APPLE-1022 | U.S. Patent No. 6,912,413 ("Rantala") |
| APPLE-1023 | U.S. Patent No. 7,251,513 ("Kondoh") |
| APPLE-1024 | US Pub. No. 2004/0152957 ("Stivoric") |
| APPLE-1025 | JP Pub. No. 2005-270543 ("Tanagi") |
| APPLE-1026 | Certified English Translation of Tanagi and Translator's Declaration |
| APPLE-1027 | Declaration of Jacob Munford |
| APPLE-1028 to 1030 | RESERVED |
| APPLE-1031 | Scheduling Order, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 37 (April 17, 2020) |
| APPLE-1032 | Stipulation by Apple |
| APPLE-1033 | Telephonic Status Conference, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 78 (July 13, 2020) |

iv

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

| | |
|---|---|
| APPLE-1034 | Joseph Guzman, "Fauci says second wave of coronavirus is 'inevitable'", TheHill.com (Apr. 29, 2020), available at: https://thehill.com/changing-america/resilience/natural-disasters/495211-fauci-says-second-wave-of-coronavirus-is |
| APPLE-1035 | "Tracking the coronavirus in Los Angeles County," LATimes.com (Aug. 20, 2020), available at https://www.latimes.com/projects/california-coronavirus-cases-tracking-outbreak/los-angeles-county/ |
| APPLE-1036 | Order Amending Scheduling Order, Masimo et al. v. True Wearables et al., Case 8:18-CV-02001 (July 7, 2020) |
| APPLE-1037 | *Masimo Corporation, et al. v. Apple Inc.*, Second Amended Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.) |
| APPLE-1038 to 1039 | RESERVED |
| APPLE-1040 | Order Granting Stipulation to Amend the Scheduling Order, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 201 (September 21, 2020) |
| APPLE-1041 | U.S. Patent No. 8,040,758 ("Dickinson") |

Apple Inc. ("Petitioner" or "Apple") petitions for *Inter Partes* Review

("IPR") of claims 1-30 ("the Challenged Claims") of U.S. Patent No. 10,624,564

("'564 patent").  As explained in this Petition, there exists a reasonable likelihood

that Apple will prevail with respect to the Challenged Claims.

The '564 patent describes and claims a purported improvement to a "physio-

logical measurement device" ("PMD") that includes one or more emitters, a cover

including "a protruding convex surface" that extends over "at least four" detectors

arranged on a substrate, and that is at least partially rigid.  APPLE-1001, 14:11-19,

36:40-51, 44:63-45:29, 20:25-60, 27:10-24, FIGS. 1, 3E, 7A, 7B, 11A, 11C, 14D.

Each detector "can be implemented using one or more photodiodes, phototransis-

tors," "can capture and measure light transmitted from [an] emitter…that has been

attenuated or reflected from the tissue," and can "output a detector signal…respon-

sive to the light …." *Id.*, 14:11-19.

The PMD was not new.  To the contrary, the '564 patent was granted with-

out full consideration to the wide body of applicable prior art.  *See generally* AP-

PLE-1002 (no office actions issued during prosecution).  As Dr. Thomas Kenny

explains in his declaration (APPLE-1003), PMDs commonly included covers by

the '564 patent's earliest effective filing date, and a monitoring device including

each feature of the PMD of the Challenged Claims would have been obvious to a

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

POSITA.  APPLE-1003, ¶¶[0020]-[0037]; APPLE-1001, 44:63-47:26.

For example, Aizawa (APPLE-1006) describes a sensor featuring "four photodetectors" disposed around a central light source and a "holder" that secures the light source and photodetectors.  APPLE-1006, FIGS. 1(a), 1(b).  And, similar to the '564 patent, Ohsaki (APPLE-1009) renders obvious an optical sensor that features a cover with a protruding convex surface that is placed "in intimate contact with the surface of the user's skin" when the sensor is worn, as does Inokawa (APPLE-1007, APPLE-1008).  APPLE-1009, Title, Abstract, ¶¶[0016], [0017], FIGS. 1, 2; APPLE-1008, ¶¶14-15, FIGS. 2, 3.  And, as Dr. Kenny explains, a POSITA would have found it obvious to utilize such a cover in Aizawa's sensor.  APPLE-1003, ¶¶[0066]-[0070].

The '564 Patent's claimed PMD also includes, e.g., a network interface and a touch-screen display configured to provide a user interface.  APPLE-1001, 45:1-29.  Yet, as Dr. Kenny explains, such features were common in PMDs prior to the '564 Patent's earliest effective filing date.  APPLE-1003, ¶¶[0074]-[0097].  Goldsmith, for example, implemented these and other features in a PMD to facilitate user interaction and remote monitoring of the user's health.  *Id.*; *see infra* Sections IV.B.3-IV.B.5.

Apple respectfully submits that an IPR should be instituted, and that the Challenged Claims should be canceled as unpatentable.

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

# I. MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1)

## A. Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1)

Apple Inc. is the real party-in-interest (RPI).

## B. Related Matters Under 37 C.F.R. § 42.8(b)(2)

Patent Owner filed a second amended complaint on July 24, 2020 in the U.S. District Court for the Central District of California (CDCA) (Case No. 8:20-cv-00048) against Apple, in which Masimo alleged, for the first time, infringement of the '564 patent by Apple.  The initial complaint in the case, which did not allege infringement of the '564 patent, was served to Apple on January 13, 2020.

IPRs challenging claims of related U.S. Patents 10,702,194, 10,702,195, 10,709,366, and 10,631,765 are being filed concurrently or imminently.  No other petitions for IPR of the '564 Patent have been filed.  On August 31, 2020, Apple filed petitions for IPR of related U.S. Patents 10,258,265 (IPR2020-01520), 10,588,553 (IPR2020-01536 and IPR2020-01537).  On September 2, 2020, Apple filed petitions for IPR of related U.S. Patents 10,292,628 (IPR2020-01521) and 10,588,554 (IPR2020-01538 and IPR2020-01539).

## C. Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3)

Apple provides the following designation of counsel.

Exhibit D
Page 30

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

| LEAD COUNSEL | BACKUP COUNSEL |
|---|---|
| W. Karl Renner, Reg. No. 41,265<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 56402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email:  IPR50095-0023IP1@fr.com | Andrew B. Patrick, Reg. No. 63,471<br>Usman A. Khan, Reg. No. 70,439<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 56402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email: PTABInbound@fr.com |

### D. Service Information

Please address all correspondence and service to the address listed above.

Petitioner consents to electronic service by email at IPR50095-0023IP1@fr.com

(referencing No. 50095-0023IP1 and cc'ing PTABInbound@fr.com, axf-ptab@fr.com, patrick@fr.com and khan@fr.com.

## II.  PETITIONER HAS STANDING TO REQUEST IPR

Apple certifies that the '564 patent is available for IPR.  This Petition is being filed within one year of service of a complaint against Apple in *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.).  *See supra* Section I.B.  Apple is not barred or estopped from requesting this review challenging the Challenged Claims on the below-identified grounds.

4

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

## III. '564 PATENT OVERVIEW

### A. Brief Description

The '564 patent discloses "a noninvasive sensor and a patient monitor communicating with the noninvasive sensor." APPLE-1001, 2:47-60. The sensor "may include or be coupled to other components, such as a display device, [and] a network interface." *Id.*, 3:46-56. The "patient monitor" with which the sensor communicates may "include a display device," and "a network interface communicating with any of a computer network, a handheld computing device, a mobile phone, [or] the Internet." *Id.*, 2:54-58; APPLE-1003, ¶¶[0038]-[0042].

An exemplary system 100 shown in the '564 patent's FIG. 1 (reproduced below) includes "a sensor 101…that is coupled to a processing device or physiological monitor 109." APPLE-1001, 11:56-67, 5:44-48. "In an embodiment, the sensor 101 and the monitor 109 are integrated together into a single unit." APPLE-1001, 11:56-67.

5

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



FIG. 1

APPLE-1001, FIG. 1.

The '564 patent's FIGS. 2A-2D (reproduced below) illustrate "example monitoring devices 200 in which the data collection system 100 can be housed." APPLE-1001, 16:31-42, 5:48-51. Each of the "monitoring devices 200" include a sensor 201 and a monitor 209. *Id.*, FIGS. 2A-2D, 16:31-18:38.

Exhibit D
Page 33

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1001, FIGS. 2A-2D.

The '564 patent describes several potential architectures with respect to the detector submount and sensor as shown in FIGS. 14A-14I.  APPLE-1001, 6:48-59, 35:45-38:32.  For example, in FIG. 14D, a housing 1430 including "a transparent cover 1432, upon which the protrusion 605b is disposed" surrounds each of the detectors 1410c.  APPLE-1001, 36:40-51; APPLE-1003, ¶¶[0043]-[0045].

7

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



**FIG. 14D**

APPLE-1001, FIG. 14D.

## B.  Level of Ordinary Skill in the Art

A person of ordinary skill in the art relating to the subject matter of the '564
Patent as of July 3, 2008 ("POSITA") would have been a person with a working
knowledge of physiological monitoring technologies.  The person would have had
a Bachelor of Science degree in an academic discipline emphasizing the design of
electrical, computer, or software technologies, in combination with training or at
least one to two years of related work experience with capture and processing of
data or information, including but not limited to physiological monitoring technol-
ogies.  APPLE-1003, ¶¶[0021]-[0022].  Additional education in a relevant field or
industry experience may compensate for one of the other aspects of the POSITA
characteristics stated above.  *Id.*

Exhibit D
Page 35

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

## IV.   APPLICATION OF PRIOR ART TO THE '564 PATENT CLAIMS

### A.   Asserted Grounds and References

The Challenged Claims are invalid based on the 35 U.S.C § 103 (obviousness) grounds noted in the table below.  Accompanying explanations and support are provided in Dr. Thomas Kenny's Declaration (APPLE-1003).  *See* APPLE-1003, ¶¶[0001]-[0188].

| Ground | Claims | 103 Basis |
|---|---|---|
| 1 | 1-10 and 13-30 | Aizawa in combination with Ohsaki and Goldsmith |
| 2 | 11 | Aizawa in combination with Ohsaki, Goldsmith, and Sherman |
| 3 | 12 | Aizawa in combination with Ohsaki, Goldsmith, and Rantala |
| 4 | 1-10 and 13-30 | Aizawa in combination with Ohsaki, Goldsmith, and Ali |
| 5 | 11 | Aizawa in combination with Ohsaki, Goldsmith, Ali, and Sherman |
| 6 | 12 | Aizawa in combination with Ohsaki, Goldsmith, Ali, and Rantala |

As shown in the table below, each applied reference pre-dates U.S. provisional application 61/078,207, filed on July 3, 2008, which is the earliest filed application from which the '564 patent claims priority.  Apple does not take a position as to whether the '564 patent is entitled to the priority date of July 3, 2008 (hereinafter "Critical Date" or "Earliest Effective Filing Date").

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

| Reference | | Date | Sec-tion |
|---|---|---|---|
| Aizawa | US 2002/0188210 | 12/12/2002 (published) | 102(b) |
| Ohsaki | US 2001/0056243 | 12/27/2001 (published) | 102(b) |
| Goldsmith | US 2007/0093786 | 4/26/2007 (published) | 102(b) |
| Sherman | US 4,941,236 | 07/17/1990 (issued) | 102(b) |
| Ali | US 6,584,336 | 06/24/2003 (issued) | 102(b) |
| Rantala | US 6.912,413 | 06/28/2005 (issued) | 102(b) |

### B.   GROUND 1: Claims 1-10 and 13-30 are obvious over Aizawa, Ohsaki, and Goldsmith

#### 1.  Overview of Aizawa[1]

Aizawa discloses a wrist-worn "sensor…detecting light output from a light emitting diode and reflected from the artery of a wrist of a subject."  APPLE-1006, Abstract, ¶¶[0002], [0026].  In more detail, and as shown in Aizawa's FIGS. 1(a) and 1(b), Aizawa's "pulse wave detector" includes an optical sensor featuring "an **LED** 21," **four photodetectors** 22 disposed…symmetrically on a circle concentric

---

[1] General descriptions provided for this and other references and combinations thereof are incorporated into each subsection and mapping of the claims that includes citations to these references.

10

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

to the LED 21, and "a **holder** 23 for storing the above light emitting diode 21 and the photodetectors 22."[2]  APPLE-1006, ¶¶[0002], [0008]-[0018], [0023]; FIGS. 1(a), 1(b).



APPLE-1006, FIG. 1(a).[3]

---

[2] Throughout this Petition, bolding in quotations is added for emphasis, unless otherwise indicated.

[3] Annotations to the figures throughout this petition are shown in color.

Exhibit D
Page 38

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1006, FIG. 1(b).

As illustrated, Aizawa's sensor also includes "a **drive detection circuit** 24 for detecting a pulse wave by amplifying the outputs of the photodetectors 22," "an **arithmetic circuit** [3] for computing a pulse rate from the detected pulse wave data," and "a **transmitter** [4] for transmitting the above pulse rate data to an unshown **display**." APPLE-1006, ¶¶[0023], [0028], [0035].

Aizawa's sensor also includes a transparent plate positioned between the photodetectors and the wrist. APPLE-1006, ¶[0034]. Aizawa's FIG. 1(b) shows the plate in contact with the user's wrist. *Id*., FIG. 1(b); APPLE-1003, ¶¶[0047]-[0051].

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1006, FIG. 1(b).

## 2. Overview of Ohsaki

Ohsaki discloses a wrist-worn "sensor" 1 featuring a "detecting element" 2 and a translucent board 8 with a convex surface that is placed "in intimate contact with the surface of the user's skin" when the sensor is worn.  APPLE-1009, Title, Abstract, ¶¶[0016], [0017], FIG. 1.

13

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1009, FIG. 1.

As illustrated below in Ohsaki's FIG. 2, "detecting element" 2 includes "a package 5, a light emitting element 6 (e.g., LED), a light receiving element 7 (e.g., PD), and a translucent board 8."  APPLE-1009, ¶[0017].  "The package 5 has an opening and includes a" substrate in the form of "circuit board 9," on which light emitting element 6 and light receiving element 7 are arranged.  *Id.*; APPLE-1003, ¶¶[0052]-[0053].

14

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1009, FIG. 2.

Translucent board 8 is "attached to the opening of the package 5" and when the sensor is worn "on the user's wrist…the convex surface of the translucent board…is in intimate contact with the surface of the user's skin."  APPLE-1009, ¶¶[0009], [0010], [0015], [0017], [0023]-[0025], FIGS. 1, 2, 4A, 4B.  This contact prevents slippage, which increases the detectable signal strength.  *Id*.; APPLE-1003, ¶[0054].

### 3.  Overview of Goldsmith

Goldsmith discloses a medical watch controller device ("WCD") 900.  APPLE-1011, ¶¶[0085], [0095], [0098], [0104], [0010], claim 6.  As illustrated below in Goldsmith's FIGS. 9A and 9B, the WCD includes a wrist band 940 that enables

Exhibit D
Page 42

the WCD 900 to be worn "like a watch." *Id.*, ¶¶[0085], [0095]; APPLE-1003,

¶[0055].



APPLE-1011, FIG. 9A (left), 9B (left).

Goldsmith's WCD can "be used with any number of...diagnostic devices"

including "cardiac and other sensors" to obtain physiological measurements in-

cluding user temperature, blood glucose level, oxygen level, and heart rate.  AP-

PLE-1011, ¶¶[0082]-[0084], [0095], [0037], [0038], claims 25, 26.

Exhibit D
Page 43

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

The WCD's housing 905 includes a display 910 on its front side, which may be "a touchscreen display." *Id.*, ¶¶[0085], [0086], [0093], claims 5, 53. Display 910 may display data received "from a sensor transmitter on the patient's skin," from "any number of therapy/diagnostic devices," and/or from user input. *Id.*, ¶¶[0082], [0087], [0095], [0102]. Goldsmith's WCD can, for example, monitor and display "heart rate," "the patient's temperature...or other characteristic[s]." *Id.*, ¶¶[0002], [0013], [0014], [0035]-[0037], [0082], [0087], [0088], [0095], [0102]; APPLE-1003, ¶¶[0056]-[0057].

Goldsmith's FIG. 10 (reproduced below) depicts exemplary components included in the WCD. APPLE-1011, ¶[0088].



APPLE-1011, FIG. 10.

17

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

Among other components, the WCD includes a memory, processor, transceiver, and display (e.g., a touch-screen).  APPLE-1011, FIG. 10, ¶¶[0088], [0091], [0093], [0095], [0085]-[0087], [0090], [0093], [0102], [0104], claims 9, 10, 12, 13, 26, 43-45.  A "processor 1012…is adapted to process data and commands inputted by the user, and a transmitter/transceiver 1018…coupled to the processor 1012 transmits" communications, including data indicative of a user's physiological parameters, to other devices (e.g., a computer, cellular phone, and/or PDA).  APPLE-1011, ¶¶[0007], [0016]-[0018], [0035], [0052], [0087]-[0089], [0097], [0101].  The transceiver may, e.g., receive diagnostic information from sensors included within the WCD's housing, and transmit that information to other devices.  *Id.*, ¶¶[0052], [0088], [0094], [0087], [0034], [0036]; APPLE-1003, ¶¶[0058]-[0059].  The memory can store data such as heart rate data.  APPLE-1011, ¶¶[0037], [0044], [0091], [0095], [0097].

In some embodiments, the processor is implemented as a custom integrated circuit (IC), as shown in FIG. 8.  APPLE-1011, ¶[0052]; APPLE-1003, ¶[0060].

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1011, FIG. 8.

### 4.  Combination of Aizawa, Ohsaki, and Goldsmith

<u>*(a) Aizawa and Ohsaki*</u>

***Convex surface***

Aizawa and Ohsaki are directed to physiological measurement devices ("PMD") that include pulse sensors.  APPLE-1006, Abstract, ¶[0002]; APPLE-1009, ¶[0016].  Aizawa's PMD can be worn by a user like a watch including an emitter (LED) facing the user's wrist.  APPLE-1006, ¶[0026]; *see supra* Section IV.B.1.  Aizawa's sensor has a flat transparent plate 6 that contacts the user's wrist.  *Id.*, FIG. 1(b); APPLE-1003, ¶[0066].

19

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

# F I G. 1 (b)



APPLE-1006, FIG. 1(b).

A POSITA would have recognized that with a flat plate 6, Aizawa's wrist-worn PMD would have slipped along the user's wrist, resulting in variations in the light detected by the photodetectors, as explained by Ohsaki.  APPLE-1009, ¶[0025]; APPLE-1003, ¶[0067].  Accordingly, a POSITA would have found it obvious to modify Aizawa's sensor to include a cover having a protruding convex surface, improving adhesion between a surface of the sensor and the user's wrist. APPLE-1009, ¶[0025]; APPLE-1003, ¶[0067].  Doing so would have amounted to nothing more than the use of a known technique to improve similar devices in the same way and combining prior art elements according to known methods to yield predictable results.  *See KSR v. Teleflex*, 550 U.S. 398, 417 (2007); APPLE-1003, ¶[67].

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

Ohsaki's translucent board 8 is arranged such that, when Ohsaki's PMD is
worn "the convex surface of the translucent board…is in intimate contact with
the…user's skin"; this contact prevents slippage, which increases the strength of
the obtainable signals.  APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A,
4B; APPLE-1003, ¶[0068].



APPLE-1009, FIG. 2.

Ohsaki explains that "if the translucent board 8 has a flat surface, the de-
tected pulse wave is adversely affected by the movement of the user's wrist as

21

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

shown in FIG. 4B," but that if "the translucent board 8 has a convex surface…vari-

ation of the amount of the reflected light…that reaches the light receiving element

7 is suppressed." APPLE-1009, ¶[0025]. Thus, when a protruding convex cover is

used, "the pulse wave can be detected without being affected by the movement of

the user's wrist 4 as shown in FIG. 4A." *Id*.



APPLE-1009, FIGS. 4A, 4B.

As shown below, a POSITA would have modified Aizawa's flat cover to in-

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

clude a protruding convex surface, similar to Ohsaki's, to improve adhesion between the user's wrist and the sensor, improve detection efficiency, and protect the elements within the housing.  APPLE-1003, ¶¶[0069]-[0070]; APPLE-1009, ¶[0025]; APPLE-1015, ¶¶[0012], [0024], [0033], [0035], FIG. 6.



APPLE-1006, FIG. 1(b) (after modification).

### Substrate

A POSITA would have understood that Aizawa's PMD includes a substrate to accommodate the LED 21 and phototransistors 22.  APPLE-1006, ¶ [0023]; APPLE-1003, ¶[0071].  However, to the extent that the Patent Owner contends that

Exhibit D
Page 50

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

Aizawa does not disclose a substrate, it would have been obvious to arrange Aizawa's photodetectors on a substrate.  APPLE-1003, ¶[0071].  For example, a POSITA would have understood that Aizawa's photodetectors are secured to the PMD, provided with power by a power source (not shown), and can transmit signals to other portions of the PMD through such a substrate.  *Id*.  A POSITA would have understood that the substrate provides physical support and electrical connectivity and is connected to the holder 23.  *Id*.  Indeed, a POSITA would have found it obvious to use such a substrate because it provides a simpler manufacturing process and more compact design than using and routing wires would allow.  *Id*.  Aizawa's FIG. 1(b) illustrates a substrate, but does not label or describe such a structure.  *Id*.



APPLE-1006, FIG. 1(b).

24

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

To the extent that Aizawa does not include a substrate, a POSITA would have modified Aizawa to incorporate a substrate, such as Ohsaki's circuit board 9, to secure photodetectors 22 and enable photodetectors 22 to send signals to other PMD elements.  APPLE-1003, ¶¶[0072]-[0073]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027]-[0029], [0032]-[00 33], FIGS. 1, 2, 3, 4(a); APPLE-1009, ¶[0017], FIG. 2.



APPLE-1009, FIG. 2

Exhibit D
Page 52

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

## (b) Aizawa, Ohsaki, and Goldsmith

Aizawa acknowledges an interest in real-time heart rate measurement "at the time of exercise," and describes its wrist-worn pulse wave sensor as being "easily attached," and "capable of detecting a pulse wave accurately."  APPLE-1006, ¶¶[0004], [0008].  Aizawa goes on to state that its sensor includes "a transmitter for transmitting…pulse rate data to an unshown display," and that its "pulse rate detector…can be coupled to devices making use of bio signals."  APPLE-1006, ¶¶[0023], [0035].  Accordingly, a POSITA would have understood that Aizawa's sensor transmits data to a display and/or another device to which that sensor is coupled; further, the above-noted and related disclosure would have motivated a POSITA to implement Aizawa's pulse rate sensor as part of a device that can monitor and display heart rate during exercise.  APPLE-1003, ¶[0074]; APPLE-1006, ¶¶[0004], [0008], [0023], [0026], [0035], FIGS. 1(a), 1(b), 2.

As explained above in Section IV.B.3, Goldsmith describes a WCD that can be used with diagnostic devices including sensors to obtain, display, and communicate physiological measurements such as user temperature heart rate.  APPLE-1011, ¶¶[0082]-[0084], [0095], [0037], [0038], claims 25, 26.  Goldsmith's WCD has a wrist band and can be worn like a watch such that it can monitor and display data "received from a sensor transmitter on the patient's skin" and "communicate

26

with a remote station."  APPLE-1011, ¶¶[0085], [0087], [0089], [0095], FIGS. 9A, 9B, 10.

From this and related description, a POSITA would have understood that Goldsmith's WCD is capable of receiving heart rate data directly from the transmitter in Aizawa's sensor, which is worn on the user's skin, and that Goldsmith's WCD can both display that data on its included touch-screen display, and wirelessly communicate that data to additional devices, including cellular phones, for remote monitoring.  APPLE-1003, ¶¶[0075]-[0076]; APPLE-1011, ¶¶[0017], [0034], [0036], [0082]-[0085], [0087]-[0089], [0095], [0097], FIGS. 9A, 9B, 10; APPLE-1006, ¶¶[0023], [0026], FIGS. 1(a), 1(b), 2.

As explained in more detail below, a POSITA would have found it obvious to incorporate Aizawa's wrist-worn pulse wave sensor with a protruding convex surface ("Aizawa-Ohsaki sensor") into Goldsmith's integrated wrist-worn WCD that includes, among other features, a touch screen, network interface, storage device, and temperature sensor.  APPLE-1003, ¶[0077]; APPLE-1011, FIG. 10, ¶¶[0085]-[0088], [0090]-[0095], [0102], [0104], [0011], [0013], [0014], [0018], [0022]-[0024], [0035], [0043], [0046], [0050], [0052], FIGS. 8, 10, claims 5, 9, 10, 12, 13, 26, 43-45 53.

Indeed, Goldsmith states that its WCD may receive data "directly from a sensor transmitter on the patient's skin," adding that "the controller device may

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

monitor heart rate," and a POSITA would have understood that Goldsmith's heart rate sensor could be implemented by integrating the Aizawa-Ohsaki sensor into Goldsmith's WCD, which would have enhanced the sensor's utility and improved the user's experience in many ways.  APPLE-1003, ¶[0078]; APPLE-1011, ¶¶[0087], [0095].  For example, and as explained in more detail below, a POSITA would incorporated the Aizawa-Ohsaki sensor into Goldsmith's WCD to enable a user to view and interact with heart rate data during exercise via the WCD's touch-screen display, and to enable heart rate data to be monitored by the user and/or others through any of the devices with which the WCD can communicate.  APPLE-1003, ¶¶[0078]-[0081]; APPLE-1006, ¶¶[0004], [0035]; APPLE-1011, ¶¶[0017], [0034], [0036], [0082]-[0085], [0087]-[0089], [0095], [0097], FIGS. 9A, 9B, 10.

As explained in more detail below, a POSITA would have understood that incorporating the Aizawa-Ohsaki sensor into Goldsmith's WCD would have amounted to nothing more than the use of a known technique to improve similar devices in the same way, and combining prior art elements according to known methods to yield predictable results.  *See KSR*, 550 U.S. at 417; APPLE-1003, ¶¶[0078]-[0082]; *see also* APPLE-1041, Abstract ("A wrist-worn apparatus for monitoring a user's performance…includes…a processor, a heart rate monitor, a timer, a user input, a display, a processor and a memory"), 3:57-4:11 ("User input

28

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

11 may comprise…a touch screen"), FIGS. 1, 2.  Any modifications to the dimensions to Goldsmith's WCD needed to accommodate Aizawa-Ohsaki's sensor would have been obvious design choices.  APPLE-1003, ¶¶[0078]-[0082], [0144], [0147].  Indeed, the '564 Patent evidences that integrating a PMD like Aizawa-Ohsaki's sensor with a touchscreen, as disclosed in Goldsmith, would have been well within the skill set of a POSITA—the '564 Patent mentions a "touch-screen display" in passing among a laundry list of potential displays with the understand that such integration would have been known to a POSITA.  APPLE-1001, 15:57-61, 17:20-26.

As illustrated below, the front side of Goldsmith's WCD features a display 910, and the rear side includes a cover 360.  APPLE-1011, ¶¶[0030]-[0031], ¶[0085].

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



Front side (facing away from the wrist)

FIG. 9A

Rear side (facing the wrist)

FIG 9B

APPLE-1011, FIGS. 9A, 9B.

As illustrated below, the rear side of the Aizawa-Ohsaki sensor includes an emitter, detectors, and a cover with a protruding convex surface facing the user's wrist, which enables light to be emitted onto the user's skin and to be detected after attenuation.  APPLE-1003, ¶[0080].

30

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1009, FIG. 1 (left), APPLE-1006, FIG. 1(b).

Consistent with Aizawa, Ohsaki, and Goldsmith's disclosures, a POSITA would have found it obvious to incorporate the Aizawa-Ohsaki sensor into the rear side of Goldsmith's WCD, such that the included emitter and detectors face the user's skin.  APPLE-1003, ¶[0081]; APPLE-1006, ¶¶[0023]-[0027], FIGS. 1(a), 1(b), 2; APPLE-1009, FIGS. 1, 2; APPLE-1011, ¶[0087].  The resulting physiological monitoring device ("AOG PMD") is illustrated in the figure below.  Other components disclosed by Goldsmith such as the network interface, transceiver, and storage device, would have been located within the AOG PMD's housing, e.g., between the touch-screen display and the substrate supporting the detectors.  APPLE-1011, FIGS. 8, 10; APPLE-1003, ¶[0081].

Exhibit D
Page 58

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1011, FIG. 9B (modified according to APPLE-1006's FIG. 1(a)).

*Network interface*

Goldsmith discloses that the WCD may communicate with a remote station

such as a cellular phone using wireless communications, e.g., RF, IR, Bluetooth, or

the Internet.  APPLE-1011, ¶¶[0089], [0097], [0101], [0016]-[0018], [0047],

[0050], [0068], [0069], claim 41.  For example, Goldsmith teaches communicating

with a cellular phone that may be used "for remote monitoring and programming,"

32

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

by, e.g., the user's parents, nurses, physicians, or even emergency services.  AP-
PLE-1011, ¶¶[0017], [0047], [0069]-[0073], [0089].  Such communication "would
provide an extra layer of monitoring for the user, especially when the user is alone"
and provide a convenient method for the user and others to obtain real-time infor-
mation on the user's health.  APPLE-1011, ¶¶[0072], [0073], [0092], [0017]; AP-
PLE-1003, ¶[0083].

Goldsmith discloses using a transceiver 1018 or a communications block
595 to facilitate communication with remote stations.  APPLE-1011, ¶¶[0052],
FIGS. 8, 10; *supra* Section IV.B.3. "The communications block 595 may be
adapted to provide communication via one or more communications methods, such
as RF 596, a USB 597, and IR 598." *Id.*, ¶¶[0052].  The transceiver may receive
data, e.g., diagnostic information, from sensors, diagnostic devices, and character-
istic determining devices, and may transmit that data to other devices.  *Id.*,
¶¶[0007], [0087], [0088], [0094], [0087], [0034]-[0036]; APPLE-1003, ¶[0084].

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



*FIG. 8*

APPLE-1011, FIG. 8.



APPLE-1011, FIG. 10.

Exhibit D
Page 61

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

It would have been obvious to a POSITA to incorporate the Aizawa-Ohsaki sensor into Goldsmith's WCD such that the sensor would have access to a network interface such as Goldsmith's transceiver or communications block to facilitate remote monitoring, as described in Goldsmith, and such a combination would have been predictable at least because Goldsmith's WCD is configured to integrate a characteristic determining device such as the Aizawa-Ohsaki sensor.  APPLE-1003, ¶[0085]; APPLE-1011, ¶¶[0087]-[0104], [0016]-[0018], [0034]-[0038], [0047], [0050], [0052], [0068], [0069], claims 25, 26, 41.

A POSITA would have understood and been motivated by the fact that integrating the sensor as described above would enable a user to communicate pulse rate data to remote stations, thereby providing a means for the user and/or the user's family, doctor, or emergency services to conveniently receive user health data.  APPLE-1011, ¶¶[0089], [0017], [0047], [0069]-[0073]; APPLE-1003, ¶[0086].  In addition, such a configuration would enable the user to store health information on devices like the user's cellular phone, and to carry that information wherever the user travels.  *Id*.  These additional features would have improved the user experience and enhanced the utility of the Aizawa-Ohsaki sensor.  *Id*.

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

### *Storage Device*

Aizawa teaches detecting a pulse wave and determining the pulse rate by computing the number of outputs above a threshold value per unit time.  APPLE-1006, ¶[0028].  A POSITA would have understood that performing such computations and related operations, would have involved storing pulse rate measurement data in a storage device.  APPLE-1003, ¶[0087].

Moreover, a POSITA would have found it obvious to incorporate the Aizawa-Ohsaki sensor into Goldsmith's WCD in such a way as to enable measured pulse rate data to be stored in a storage device and retrieved for subsequent use.  APPLE-1003, ¶¶[0087]-[0088].  In particular, Goldsmith discloses a memory that stores data indicative of a user's physiological parameter (e.g., heart rate), and a controller programmed to control sensing devices.  APPLE-1011, ¶¶[0037], [0044], [0052], [0091], [0095], [0097], claims 43-45, FIGS. 8, 10.

36

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



*FIG. 8*

APPLE-1011, FIG. 8.



APPLE-1011, FIG. 10.

37

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

The stored data can be used, e.g., to display trend graphs over a period of time.  APPLE-1011, ¶¶[0055], [0059], [0066], [0081], [0086].  A POSITA would have also known that to transmit measurement data to others for remote monitoring purposes, as described above, the data would have to be stored prior to transmission.  APPLE-1003, ¶¶[0085]-[0090].

Accordingly, a POSITA would have found it obvious to incorporate the Aizawa-Ohsaki sensor into Goldsmith's WCD such that the sensor would have access to a storage device, such as the memory shown in Goldsmith's FIGS. 8 and 10, to store pulse rate data.  APPLE-1003, ¶¶[0090]-[0091].  Such stored data would have then been reproducible for display or transmission when needed.  APPLE-1011, ¶¶[0081]-[0086], [0095], [0037], [0038], claims 25, 26.

### Temperature Sensor

As one of several ways of measuring the user's state or trend of wellness, Goldsmith teaches using its WCD to obtain and display heart rate and temperature information.[4]  APPLE-1011, ¶¶[0082]-[0085], [0087], [0095], [0098], [0102], [0104], [0010]-[0011], [0037], [0038], claims 6, 25, 26; *see supra* Section IV.B.3.

---

[4] A POSITA would have understood that temperature sensors, such as thermometers, are commonly used to measure physiological parameters representing a state

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

It would have been obvious to a POSITA to incorporate the Aizawa-Ohsaki sensor into Goldsmith's WCD such that heart rate detection is paired with the additional capability of temperature measurement.  APPLE-1003, ¶¶[0092]-[0093].  In particular, instead of having multiple devices—one for measuring heart rate and one for measuring a person's temperature—such a combination would have permitted multiple physiological measurements to be obtained using a single integrated device, providing "convenience and ease of use" and making "the monitoring procedure fast."  APPLE-1003, ¶[0093]; APPLE-1011, ¶¶[0011], [0087], [0095], [0102].  Such a combination would have been predictable at least because Goldsmith's WCD is an integrated device that is capable of obtaining temperature and heart rate information.  APPLE-1011, ¶[0095].

***Touch-Screen Display with User Interface***

Ohsaki discloses a PMD having a display that shows calculated pulse rate, and Aizawa describes transmitting heart rate data to a display.  APPLE-1006, ¶¶[0015], [0028], [0035]; APPLE-1009, ¶[0020].  A POSITA would have recognized, however, that a static, non-touch display would have been inconvenient to

---

or trend of wellness of a person.  APPLE-1003, footnote 1; APPLE-1017, 1:1-2:33; APPLE-1016, 47:61-48:4.

39

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

the user relative to the touch-screen display that Goldsmith discloses in connection
with its WCD.  APPLE-1003, ¶[0094], APPLE-1011, ¶¶[0086], [0093].

For example, as noted in Goldsmith, the user may want to zoom in or out of
a graph, focus on a portion of a displayed graph, or confirm/select when to receive
and display data.  APPLE-1011, ¶¶[0059], [0062].  As explained by Dr, Kenny, a
user would have been able to execute such operations with more ease and conven-
ience when using a touch screen by simply touching the screen instead of using
physical buttons and keys.  APPLE-1003, ¶[0095]; APPLE-1011, ¶¶[0086],
[0093].

In more detail, a POSITA would have understood that a touch screen allows
a user to provide direct navigation and accessibility through a physical touch.  AP-
PLE-1011, ¶¶[0086], [0093]; APPLE-1003, ¶[0096].  In addition, by reducing or
eliminating the need for physical buttons and keys, the physical footprint for the
device is reduced allowing for smaller devices and/or larger displays to be imple-
mented.  *Id*.  Moreover, on a wrist-worn device such as Goldsmith's WCD, a larger
display would have been beneficial, as it would have allowed for improved view-
ing of, and interaction with, displayed data.  *Id.*; APPLE-1011, ¶[0011] ("[a] large
and simple display minimizes the potential for error in reading and interpreting test
data").

40

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

Accordingly, it would have been obvious to a POSITA to incorporate the Ai-zawa-Ohsaki sensor into Goldsmith's WCD such that it could transmit data to Goldsmith's touch screen, and such that the user could interact with displayed data with Goldsmith's user interface.  APPLE-1011, ¶¶[0086], [0093], [0095], claims 5, 53; *see also* APPLE-1024, ¶¶[0140], [0145] (disclosing a wristwatch having a sensor device with a touch screen); APPLE-1003, ¶[0097].  A POSITA would have understood that integrating the Aizawa-Ohsaki sensor into Goldsmith's WCD in this manner would improve the user experience by providing navigation and other options realizable through the touch screen's user interface.  *Id*.  Such a combination would have been predictable at least because Goldsmith's WCD (with a touch screen) is configured to include a pulse sensor such as the Aizawa-Ohsaki sensor. *Id.*; APPLE-1011, ¶¶[0082]-[0084], [0095], [0037], [0038], claims 25, 26; APPLE-1024, ¶¶[0140], [0145].

### 5.  Manner in which Aizawa, Ohsaki, and Goldsmith render obvious Claims 1-10 and 13-30

<u>Claim 1</u>

**[1pre] A user-worn physiological measurement device comprising:**

To the extent the preamble is limiting, AOG renders obvious [1pre].  AP-PLE-1003, ¶[0098].  As explained in Sections IV.B.1-4, Aizawa discloses a pulse

41

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

wave sensor that a POSITA would have modified in view of Ohsaki, and incorporated into Goldsmith's wrist-worn watch controller device.  APPLE-1006, Abstract, ¶¶[0002], [0008], [0023], [0026], FIG. 2.  As shown in Aizawa's FIG. 2 and Goldsmith's FIG. 9A, the resulting AOG PMD would have been user-worn.  APPLE-1003, ¶[0098].



APPLE-1006, FIG. 2 (left); APPLE-1011, FIG. 9A (right).

**[1a] one or more emitters configured to emit light into tissue of a user;**

As explained in Sections IV.B.1-4 and depicted in Aizawa's FIGS. 1(a) and 1(b), AOG's PMD would have included "an LED 21...for emitting light having a wavelength of a near infrared range" towards and into a user's wrist 10.  APPLE-1006, ¶¶[0023], [0029], [0027], [0024]; APPLE-1003, ¶[0099].

42

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1006, FIG. 1(a)



APPLE-1006, FIG. 1(b).

Exhibit D
Page 70

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

### [1b] at least four detectors arranged on a substrate;

AOG's PMD would have "detect[ed] light output from a light emitting diode and reflected from the artery of a wrist of a subject." APPLE-1006, ¶[0009]. In particular, light emitted from LED 21 would have been "reflected by a red corpuscle running through the artery 11 of the wrist 10" and detected by photodetectors 22 as a pulse wave. *Id*., ¶[0027]. Aizawa's FIGS. 1(a), 2, and 4(a) (reproduced below) show that at least four detectors are used to detect reflected radiation. APPLE-1003, ¶[0100].



APPLE-1006, FIG. 1(a).

Exhibit D
Page 71

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

# F I G . 1 (b)



APPLE-1006, FIG. 1(b).

# F I G . 2



APPLE-1006, FIG. 2.

Exhibit D
Page 72

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

# F I G . 4 (a)



APPLE-1006, 4(a).

The photodetectors 22 are "disposed at an equal distance from the light emit-ting diode." APPLE-1006, ¶¶[0011], [0027]. In addition, for the reasons noted above in Section IV.B.4.a, it would have been obvious to a POSITA that photode-tectors in AOG's PMD are arranged on a substrate. APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027]-[0029], [0032]-[0033], FIGS. 1(a)-4(a); APPLE-1009, ¶[0017], FIG. 2; APPLE-1003, ¶¶[0101]-[0102].

Exhibit D
Page 73

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

***[1c] a cover comprising a protruding convex surface, wherein the protruding convex surface extends over all of the at least four detectors arranged on the substrate, wherein at least a portion of the protruding convex surface is rigid;***

As explained in Section IV.B.4.a, AOG's PMD would have included a cover having a protruding convex surface. The protruding convex surface, as shown in Aizawa's modified FIG. 1(b), would have been used to realize improved adhesion between the user's wrist and the sensor's surface, improve detection efficiency, and protect the elements within the sensor housing. APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; *see also* APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1015, ¶¶[0033], [0035], FIG. 6; APPLE-1003, ¶[0103]; *see supra* Section IV.B.4.a.



FIG. 1 (b)

Cover with protruding convex surface
APPLE-1006, modified FIG. 1(b).

Exhibit D
Page 74

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

Ohsaki explains that its convex surface would have been "in intimate contact with the surface of the user's skin" to prevent slippage.  APPLE-1009, ¶¶[0009]-[0010].  For example, Ohsaki's FIG. 2 shows a cover implemented as a translucent board 8 with a convex surface that has intimate contact with the user's skin and causes the user's skin to deform.  *Id*.  A POSITA would have understood that the skin deformation was due to the rigidity of the convex surface.  APPLE-1003, ¶[0104].



APPLE-1009, FIG. 2.

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

Similarly, a POSITA would have understood that the protruding convex surface in AOG's PMD would have had rigidity to cause the user's skin to deform and to create friction to prevent slippage and realize improved adhesion between the user's wrist and the sensor device's surface.  APPLE-1003, ¶[0105].

Furthermore, as shown in Aizawa's modified FIG. 1(b) above and more clearly in Aizawa's FIG. 1(a) below, the cover would have extended over all of the at least four detectors arranged on the substrate.  APPLE-1006, ¶¶[0023], [0027]; APPLE-1003, ¶[0106].



APPLE-1006, FIG. 1(a).

49

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

***[1d] one or more processors configured to: receive one or more signals from at least one of the at least four detectors, the one or more signals responsive to at least a physiological parameter of the user; and process the one or more signals to determine measurements of the physiological parameter;***

As explained above for [1b], AOG's PMD includes at least four photodetectors 22 disposed around LED 21 that would have been configured to detect a pulse wave reflected back from the user tissue.  APPLE-1006, ¶¶[0023]-[0029], FIGS. 1(a), 4(a).  Aizawa explains that a "detected pulse wave data is amplified by the drive detection circuit 24 and the amplified pulse wave data is transmitted to the arithmetic circuit 3. The arithmetic circuit 3 has a threshold value and computes the number of outputs above the threshold value per unit time so as to calculate a pulse rate and the transmitter 4 transmits the pulse rate to a display for displaying the above pulse rate data."  APPLE-1006, ¶¶[0028], [0023], FIG. 1(b); *see also supra* Section IV.B.1.

50



APPLE-1006, FIG. 1(b).

The '564 patent does not define "processor."  Merriam-Webster's Dictionary defines "processor" as a part of a computer system that operates on data.  APPLE-1012, 929.  Consistent with this definition, a POSITA would have understood that Aizawa's drive detection circuit 24 and arithmetic circuit 3 are "one or more processors" as they receive pulse wave data from the photodetectors and perform signal amplification and calculations to "comput[e] a pulse rate from the detected pulse wave data." APPLE-1006, ¶¶[0023], [0028]; APPLE-1003, ¶¶[0107]-[0108].

Goldsmith also discloses a processor that executes programs to control sensing devices, receives data indicative of a concentration of an analyte, and displays a representation of at least a portion of the information received from or displayed

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

by other devices.  APPLE-1011, ¶¶[0088], [0091], [0008], [0009], [0011], [0012], [0015], [0035]-[0037], [0040], [0043], [0048], [0051], [0059]; FIGS. 1, 6A, 6B, 10; APPLE-1003, ¶[0109]; *see supra* Section IV.B.3.  Recall that Goldsmith's WCD is "used with any number of...diagnostic devices" and sensors to obtain physiological measurements such as user temperature, oxygen level, and heart rate. APPLE-1011, ¶¶[0082]-[0084], [0095], [0037], [0038], claims 25, 26.

Accordingly, it would have been obvious to a POSITA to incorporate the Aizawa-Ohsaki sensor into Goldsmith's WCD such that Goldsmith's processor would have received signals from the detectors and would have processed the one or more signals to display the pulse rate.  APPLE-1003, ¶[0110].  A POSITA would have known that these signals are responsive to at least a physiological parameter (e.g., pulse) of the user and vary as the user's pulse rate varies.  APPLE-1003, ¶[0110].

A POSITA would have also understood that in integrating Aizawa-Ohsaki's PMD into Goldsmith's device, Aizawa's drive detection circuit 24 and arithmetic circuit 3 could operate separately as one of the processors of the integrated AOG PMD or could be integrated into Goldsmith's processor to conserve space.  AP-PLE-1003, ¶¶[0108]-[0111].

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

**[1e] a network interface configured to communicate with a mobile phone;**

As explained in Sections IV.B.1-4, AOG's PMD would have included a network interface configured to communicate with a mobile phone.  APPLE-1003, ¶[0112]; *supra* Section IV.B.4.b.

**[1f] a touch-screen display configured to provide a user interface,**

As explained in Sections IV.B.1-4, AOG's PMD would have included a touch-screen display configured to provide a user interface.  APPLE-1003, ¶[0113]; *supra* Section IV.B.4.b.

**[1g] wherein the user interface is configured to display indicia responsive to the measurements of the physiological parameter, and**

As explained in Section IV.B.4.b, and as disclosed by Goldsmith, AOG's PMD would have included a touch-screen display configured to provide a user interface configured to display indicia responsive to the measurements of the physiological parameter.   APPLE-1011, ¶¶[0086], [0093], claims 5, 53; APPLE-1003, ¶[0114].

In more detail, Goldsmith teaches that its display 910 displays data directly from the sensor monitors, and data "received from a sensor transmitter on the patient's skin."  APPLE-1011, ¶¶[0086], [0087], [0102], FIG. 9A; APPLE-1003, ¶[0115].

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1011, FIG. 9A.

Similarly, both Aizawa and Ohsaki disclose a PMD that displays pulse rate determined from reflected light signals.  APPLE-1006, ¶¶[0015], [0035], [0028]; APPLE-1009, ¶[0020].

Consistent with the disclosure in Aizawa, Ohsaki, and Goldsmith, AOG's PMD would have detected light signals, determined pulse rates based on the detected signals, and displayed the determined pulse rates.  Furthermore, a POSITA would have understood that as the pulse rate changes, the display of the pulse rate would also change.  APPLE-1003, ¶¶[0116]-[0117].

54

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

*[1h] an orientation of the user interface is configurable responsive to a user input;*

As explained in Section IV.B.4.b, AOG's PMD would have included a touch-screen display with a user interface, as disclosed by Goldsmith.  APPLE-1011, ¶¶[0086], [0093], claims 5, 53.  As explained below, it would have been obvious to a POSITA to implement the user interface such that an orientation of the user interface is configurable responsive to a user input.  APPLE-1003, ¶[0118].  As Goldsmith suggests, a POSITA would have found it obvious to include the capability to configure user interface orientation through a user input to provide the user with more control over the display, and a viewing experience customized for the user's preferences.[5]  APPLE-1011, ¶¶[0102], [0104], [0049], [0055], claim 30; APPLE-1003, ¶[0118].

In more detail, Goldsmith teaches that its display can be configured in various different ways to allow the interface to be consistent with the user's preferences and to correct the presentation of information that could be incorrect due to

---

[5] Indeed, as conceded by the Patent Owner, such features would have easily been implemented through a software program for modifying the display of information. APPLE-1019, 12:47-67.

the scaling of graphs or incorrect resolutions.  APPLE-1011, ¶[0049].  Additionally, Goldsmith discloses that its display can be configured to have different operation modes, and to have configurable display graphics such as selectable font size (e.g., a larger font size for vision-impaired users).  APPLE-1011, ¶¶[0102], [0104], [0055], claim 30; APPLE-1003, ¶[0119].

From this and related description, a POSITA would have understood that Goldsmith's display is configurable in various ways based on user input to facilitate user viewing, e.g., to be able to view the contents of a graph more clearly or improve the font size of text.  APPLE-1003, ¶[0120]; APPLE-1011, ¶¶[0049], [0102], [0104], [0107].  Moreover, as of the Critical Date, it was well known and a POSITA would have understood that the ability to configure display graphics would have included configuring the orientation of the WCD display's user interface based on the user input.  APPLE-1003, ¶¶[0120]-[0123].

Several references described briefly below corroborate such an understanding of a POSITA.  For example, as shown in FIGS. 9A and 9B below, King discloses a user being able to change the orientation of displayed content in an electronic device, like a cellular phone, to be either portrait or landscape.  APPLE-1018, 15:30-40, 8:41-50, FIGS. 9A, 9B.

56

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1018, FIGS. 9A, 9B.

In another example, in a patent ("Ali") filed in 2000, ***eight years before*** the Critical Date of the '564 patent, Patent Owner disclosed that sensor devices like a pulse oximeter could display information in a portrait or landscape mode.  APPLE-1019, 5:23-25, 12:7-16, 11:59-67.  As can be seen in Ali's FIG. 8B (portrait mode) and 8C (landscape mode), the depicted graph appears differently in each mode. APPLE-1003, ¶[0122].  Through the selection of a key, a user could switch between different orientations based on whichever orientation offers the user a better view of the graph or a portion of the graph of user interest.  *Id.*; APPLE-1019, 12:47-67; *see also* footnote 7.

Exhibit D
Page 84

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1019, FIGS. 8B, 8C.

As Dr. Kenny explains, the change of orientation in sensor devices or phones based on user input disclosed in King, Ali, and numerous other references are examples of configurable display graphics that were known and would have been understood to be part of the display configuration in AOG. APPLE-1003, ¶[0123]. For instance, King's orientation selection is performed in a cellular phone and Ali's in a sensor device. APPLE-1018, 15:30-40, 8:41-50, FIGS. 9A, 9B; APPLE-1019, 5:23-25, 12:7-16, 11:59-67. Goldsmith explicitly teaches that its integrated WCD can include cellular phone capabilities and integrate characteristic determining devices that can sense analyte concentration. APPLE-1011, ¶¶[0097], [0016], [0068], [0073], [0088], [0094], [0085], [0013], [0014], [0018], [0022]-[0024], [0035], [0043], [0046], [0050], [0052]. Accordingly, it would have been

58

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

obvious to a POSITA that AOG's PMD would have included a user interface hav-

ing an orientation that is configurable responsive to a user input.  APPLE-1003,

¶[0123].  Moreover, to the extent that Patent Owner contends that AOG does not

render [1h] obvious, [1h] would have been rendered obvious by AOG and Ali, as

described below in Ground 4.

### *[1i] a wall that surrounds at least the at least four detectors, wherein the wall operably connects to the substrate and the cover;*

AOG's PMD includes a "holder 23 for storing…the photodetectors 22," in

addition to other structural elements.  APPLE-1006, Abstract, ¶¶[0002], [0005],

[0008]-[0016], [0023], [0027]-[0030], [0032]-[0033], FIGS. 1(a), 2, 3, 4(a).  As

shown in Aizawa's FIG. 1(a) below, the outer surface of holder 23 forms a wall

that surrounds the four photodetectors 22.  APPLE-1003, ¶[0124].

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1006, FIG. 1(a).

Moreover, as explained in Sections IV.B.4.a and IV.B.5.[1b], AOG's PMD

includes a substrate (outlined in brown in FIG. 1(b) below) and more particularly

photodetectors arranged on a substrate of AOG's PMD.  APPLE-1006, Abstract,

¶¶[0002], [0005], [0008]-[0016], [0023], [0027]-[0029], [0032]-[0033], FIGS. 1, 2,

3, 4(a); APPLE-1009, ¶[0017], FIG. 2; APPLE-1003, ¶[0125].  The wall (a portion

of which is outlined in green in FIG. 1(b) below) connects to the substrate and the

cover.  APPLE-1006, ¶¶[0023], [0030].

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

# FIG. 1 (b)



APPLE-1006, FIG. 1(b).

***[1j] a storage device configured to at least temporarily store at least the measurements of the physiological parameter; and***

As explained in Sections IV.B.1-4, Goldsmith discloses a PMD featuring a storage device configured to at least temporarily store at least the measurements of the physiological parameter, and the AOG PMD would have included that storage device.  APPLE-1003, ¶[0126]; *supra* Section IV.B.4.b.

***[1k] a strap configured to position the physiological measurement device on the user.***

As explained in Sections IV.B.1-4, Goldsmith discloses a strap configured to position its PMD on the user, and the AOG PMD would have included that strap.

61

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

APPLE-1003, ¶[0127]; APPLE-1011, FIGS. 9A, 9B, ¶[0086]; *supra* Section

IV.B.4.b.

Moreover, Aizawa discloses a belt 7 attached to the outer casing to position

the PMD to a user's wrist 10.  APPLE-1006, ¶¶[0023], [0026], FIGS. 1a, 1b, 2;

APPLE-1003, ¶[0128]; APPLE-1009, ¶[0019].



APPLE-1006, FIG. 1(a).

Exhibit D
Page 89

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

# F I G. 1 (b)



APPLE-1006, FIG. 1(b).

# F I G. 2



APPLE-1006, FIG. 2.

63

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

*Claim 2*

**[2] The user-worn physiological measurement device of claim 1, wherein the protruding convex surface is configured to be located between tissue of the user and the at least four detectors when the physiological measurement device is worn by the user.**

As explained above in Sections IV.B.4.a and IV.B.5.[1c] and shown in Aizawa's FIGS. 1(b) and 1(a), AOG's PMD would have included a protruding convex surface that is located between the tissue (e.g., wrist) of the user and the detectors when the PMD is worn the user. APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B. The detectors are located at an equal distance apart from the LED but are all positioned between the tissue (e.g., wrist) of the user and the detectors. APPLE-1006, ¶¶[0011], [0027], FIG. 1(a); APPLE-1003, ¶[0129].



APPLE-1006, modified FIG. 1(b)

64

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1006, FIG. 1(a).

_Claim 3_

**[3] The user-worn physiological measurement device of claim 2, wherein at least part of the protruding convex surface is light permeable to allow light to reach at least one of the at least four detectors.**

As explained in Sections IV.B.2 and IV.B.4.a, AOG's PMD would have included a cover with a protruding convex surface similar to Ohsaki's translucent member/board 8.  APPLE-1009, ¶¶[0009], [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶[0130].

Exhibit D
Page 92

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

# F I G . 1 (b)



APPLE-1006, FIG. 1(b) (modified).

## FIG. 2



APPLE-1009, FIG. 2.

66

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

Merriam-Webster's Dictionary defines "translucent" as "permitting the passage of light" and "to shine through."  APPLE-1012, 1255.  Consistent with this definition, a POSITA would have understood that Ohsaki's translucent member/board 8 and AOG's protruding convex surface would have been light permeable to allow light reflected from the user tissue to pass through (as shown by the arrows highlighted in red in Aizawa's modified FIG. 1(b) and Ohsaki's FIG. 2 above) and reach at least one of the at least four detectors.  APPLE-1003, ¶[0131].

## Claim 4

**[4] The user-worn physiological measurement device of claim 2, wherein the at least four detectors are arranged on a first surface of the substrate.**

*See supra* Sections IV.B.4.a and IV.B.5.[1b].  APPLE-1003, ¶[0132].

## Claim 5

**[5] The user-worn physiological measurement device of claim 4, wherein: the wall operably connects to the substrate on one side of the wall, the wall operably connects to the cover on an opposing side of the wall, and the wall surrounds at least the at least four detectors on the first surface.**

*See supra* Sections IV.B.5.[4] and IV.B.5.[1i].  APPLE-1003, ¶[0133].

<u>Claim 6</u>

**[6] The user-worn physiological measurement device of claim 5, further comprising a single unit wearable by the user, the single unit encompassing the one or more emitters, the at least four detectors, the wall, the cover, the one or more processors, the network interface, and the storage device.**

As shown below, and as described above in Section IV.B.4, a POSITA would have incorporated the Aizawa-Ohsaki sensor into Goldsmith's WCD such that the resulting wrist-worn PMD would be a single integrated unit including LED 21 (*see* Section IV.B.5.[1a]), at least four detectors 22 (*see* Section IV.B.5.[1b]), a wall (*see* Section IV.B.5.[1i]), a cover with protruding convex surface (*see* Section IV.B.5.[1c]), one or more processors (*see* Section IV.B.5.[1d]), a network interface (*see* Section IV.B.5.[1e]), and a storage device (*see* Section IV.B.5.[1j]).  APPLE-1003, ¶[0134]; APPLE-1006, Abstract, ¶¶[0023], [0026], [0030], FIGS. 1(a), 1(b), 2; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1011, ¶¶[0085]-[0106], FIGS. 8, 9A, 9B, 10.

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

# F I G. 2



APPLE-1006, FIG. 2.



APPLE-1011, FIG. 9B (modified to include APPLE-1006'S FIG. 1(a)).

Exhibit D
Page 96

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1011, FIG. 8.



APPLE-1011, FIG. 10.

Exhibit D
Page 97

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

*Claim 7*

**[7] The user-worn physiological measurement device of claim 6, wherein a surface of the single unit positions the touch-screen display, and wherein the strap is attached to the single unit.**

AOG's WCD would have included a touch-screen display.  APPLE-1011, ¶¶[0086], [0093], claims 5, 53; *see supra* Sections IV.B.4.b and IV.B.5.[1f].  As shown in FIG. 9A, it would have been obvious to a POSITA that a surface of AOG's PMD positions the touch-screen display at least because the touch-screen display is located at a top surface of the PMD.  APPLE-1003, ¶¶[0135]-[0136].



APPLE-1011, FIG. 9A.

Exhibit D
Page 98

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

AOG's PMD would have also included a strap attached to the single unit, as shown in Goldsmith's FIG. 9A and Aizawa's FIG. 2.  APPLE-1006, ¶¶[0023], [0026], FIGS. 1a, 1b, 2.; APPLE-1009, ¶[0019]; *supra* Section IV.B.5.[1k].



APPLE-1006, FIG. 2.

*Claim 8*

*[8] The user-worn physiological measurement device of claim 7, wherein the network interface is configured to communicate at least the measurements of the physiological parameter to the mobile phone.*

Goldsmith discloses that transceiver 1018 or communications block 595 (which correspond to AOG's network interface) communicates with a cellular phone.  APPLE-1011, ¶¶[0089], [0097], [0101], [0016]-[0018], [0047], [0050], [0068], [0069], claim 41; *see supra* Section IV.B.4.b.  The transceiver receives data from characteristic determining devices (e.g., sensors), and transmits data indicative of the determined concentration of an analyte, e.g., heart rate, of the user

72

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

to a cellular phone.  APPLE-1011, ¶¶[0087]-[0089], [0094], [0097], [0034]-[0036], [0007]; APPLE-1003, ¶[0137].

## Claim 9

**[9] The user-worn physiological measurement device of claim 7, wherein the network interface is further configured to wirelessly communicate with the mobile phone or with a computer network.**

For at least the reasons noted in Sections IV.B.4.b, AOG renders obvious [9].  In particular, recall that Goldsmith's transceiver 1018 or communications block 595 (which correspond to AOG's network interface) communicate with a remote station such as a computer or a cellular phone over various types of computer networks, e.g., RF, IR, Bluetooth, or the Internet.  APPLE-1011, ¶¶[0089], [0097], [0101], [0016]-[0018], [0047], [0050], [0068], [0069], claim 41; APPLE-1003, ¶[0138].

## Claim 10

**[10] The user-worn physiological measurement device of claim 7, wherein the physiological parameter comprises at least one of: pulse rate, glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, or carbon monoxide.**

As explained in Sections IV.B.1- IV.B.4, AOG's PMD is configured to obtain and display pulse rate information, in addition to other physiological infor-

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

mation.  For example, a POSITA would have configured Goldsmith's WCD to ob-

tain pulse rate measurements from the integrated Aizawa-Ohsaki sensor.  APPLE-

1006, ¶¶[0004], [0008], [0023], [0035]; APPLE-1011, ¶¶[0082]-[0085], [0087],

[0095], [0037], [0038], claims 25, 26, FIGS. 9A, 9B, 10; APPLE-1003, ¶[0139].


## *Claim 13*

### [13] The user-worn physiological measurement device of claim 10, wherein the displayed indicia are further responsive to temperature.

For at least the reasons noted above in Section IV.B.4.b, AOG's PMD would

have included a temperature sensor, and would have been configured to display in-

dicia responsive to temperature.  APPLE-1011, ¶¶[0082]-[0085], [0087], [0095],

[0098], [0102], [0104], [0010]-[0011], [0037], [0038], claims 6, 25, 26; *see supra*

Section IV.B.3.  Recall that Goldsmith's WCD 900 can be used to obtain physio-

logical measurements such as user temperature and heart rate.  APPLE-1011,

¶¶[0082]-[0084], [0095], [0037], [0038], claims 25, 26.  Goldsmith's display dis-

plays data received "from a sensor transmitter on the patient's skin" and from "any

number of therapy/diagnostic devices."  *Id.*, ¶¶[0082], [0087], [0095], [0102].

Goldsmith's WCD 900 may monitor and display the patient's temperature or other

characteristics.  *Id.*, ¶¶[0002], [0013], [0014], [0035]-[0037], [0082], [0087],

[0088], [0095], [0102]; APPLE-1003, ¶[0140].

Exhibit D
Page 101

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

*Claim 14*

**[14] The user-worn physiological measurement device of claim 10, wherein the physiological parameter comprises a state or trend of wellness of the user.**

As discussed in Sections IV.B.4.b, IV.B.5.[1pre], IV.B.5.[1g], IV.B.5.[1j], IV.B.5.[10], IV.B.5.[13], AOG's PMD would have measured physiological parameters such as pulse rate and temperature.  APPLE-1017, 1:1-2:33.

A POSITA would have understood that the described measurements represent a state or trend of wellness of a subject.  APPLE-1003, ¶¶[0141]-[0142]; AP-PLE-1001, 2:16-30.  For example, a pulse wave signal provides information regarding a subject's pulse rate and a trend of the subject's pulse over time.  APPLE-1003, ¶[0142].  Indeed, a pulse rate of 0 indicates that a person's heart is not beating, e.g., the person is dead, and a very high pulse rate may indicate that the person is experiencing heart problems such as a heart attack.  *Id*.


*Claim 15*

**[15] The user-worn physiological measurement device of claim 10, wherein a portion of the physiological measurement device comprises one of at least two sizes, the two sizes intended to be appropriate for larger users and smaller users.**

The Courts have previously found that limitations related to size are not sufficient to patentably distinguish over prior art references.  *In re Rinehart,* 531 F.2d 1048, 189 USPQ 143 (CCPA 1976); *Gardner v. TEC Syst., Inc.,* 725 F.2d 1338, 220 USPQ 777 (Fed. Cir. 1984).  Similarly, here, the recitation of a portion of the

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

PMD having two sizes intended for larger and smaller users should not render
claim 15 distinguishable from AOG's PMD, even assuming that there were a dis-
tinction over the applied references.

Moreover, the phrase "the two sizes *intended to be appropriate* for larger
users and smaller users" is directed to intended use and imparts no structural limi-
tation onto the claimed PMD.   And this limitation only requires "at least a por-
tion" of the PMD to be one of two sizes, thus *any* portion of a PMD having two
sizes would satisfy the claim, and such variations are simple design choices.  AP-
PLE-1003, ¶¶[0143]-[0144]. For instance, a POSITA would have understood that
when designing a PMD, a designer may vary the sizes of components such as a
strap, transistor, bus, or sensor, and that such size variations are obvious.  *Id*.  For
at least these reasons, claim 15 is obvious on its face in view of AOG's PMD.

Additionally, Aizawa explicitly discloses size variations.  For example, to
reduce the size of the PMD, the number of photodetectors may be reduced.  AP-
PLE-1006, ¶[0032].  In some embodiments, when the number of LEDs or detectors
is increased, the power and size of the PMD also increases.  APPLE-1006, ¶[0032].
Aizawa also discloses that the size of a sensor can be reduced if the sensor is at-
tached to a smaller body part such as a finger or ear.  APPLE-1006, ¶[0006].

It also would have been obvious for a POSITA to adjust the size of one or
more portions of the PMD such as the strap, display, or sensor when designing the

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

PMD for larger or smaller users.  APPLE-1003, ¶[0145].  Goldsmith, for example,

explains the benefits of different display sizes, namely that "[a] large and simple

display minimizes the potential for error in reading and interpreting test data. A

small overall size permits discretion during self-monitoring and makes it easy to

carry."  APPLE-1011, ¶[0011].  Accordingly, it would have been obvious to design

a larger display for larger users, which would have the additional benefit of mini-

mizing the potential for error.


*Claim 16*

**[16] The user-worn physiological measurement device of claim 10, wherein the
protruding convex surface protrudes a height between 1 millimeter and 3 milli-
meters.**

As noted above in Sections IV.B.2 and IV.B.4.a, AOG's PMD includes a

protruding convex surface similar to the protruding surface of Ohsaki's cover,

which is designed to be "in intimate contact with the surface of the user's skin," to

prevent slippage of the detecting element on the user's wrist.  APPLE-1009,

¶¶[0009]-[0010], FIG. 2.

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1009, FIG. 2.

In incorporating Ohsaki's teachings, a POSITA would have found it obvious that a device designed to fit on a user's wrist would be on the order of millimeters. APPLE-1003, ¶¶[0146]-[0147]; *see also* APPLE-1023, 9:40-65 (describing a protrusion on a biological measurement device that causes a subject's tissue to deform by a depth of about 2 to 20 mm); APPLE-1026, FIGS. 8-10, ¶¶[0074]-[0081] (distance between a lower surface of the watch housing and convex surface being 3 mm); APPLE-1010, 2 (describing its "optical reflectance transducer" as "small (∅ = 22mm)"); APPLE-1014, 2 (describing a "standard 24-pin (dimensions: 19 x 19 mm) microeletronic package" for its sensor).  Additionally, the POSITA would

Exhibit D
Page 105

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

have taken the user's comfort into consideration—Ohsaki's convex cover, for example, is said to solve the problem of "the user feel[ing] uncomfortable" due to pressure from the device and belt on the user's limbs.  APPLE-1009, ¶[0006]; APPLE-1003, ¶¶[0147]-[0148].

A POSITA would have found it obvious that in order to provide a comfortable cover that prevents slippage, the convex surface should protrude a height between 1 millimeter and 3 millimeters.  *Id.*  Indeed, there would have been a finite range of possible protruding heights, and it would have been obvious to select a protruding height that would have been comfortable to the user.  *Id.*  Accordingly, AOG renders obvious [16].

*Claim 17*

**[17] The user-worn physiological measurement device of claim 16, wherein the protruding convex surface protrudes a height greater than 2 millimeters and less than 3 millimeters.**

For the reasons noted above in Section IV.B.5.[16], AOG renders obvious [17].  *See supra* Sections IV.B.2 and IV.B.4.a; APPLE-1003, ¶[0149].

Exhibit D
Page 106

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

*Claim 18*

**[18] The user-worn physiological measurement device of claim 10, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector.**

As explained above in Section IV.B.4, AOG's PMD would have included Aizawa's detectors and holder 23, which includes windows or cavities 23c for each detector 22 to allow light to pass through to each detector.  APPLE-1006, ¶[0024].  As shown below in Aizawa's FIG. 1A, the red circles surrounding the detectors 22 correspond to the windows 23c for each of the at least four detectors 22.  In Aizawa's FIG. 1(b), the windows 23c correspond to an opening of cavities formed in the holder 23.  APPLE-1003, ¶¶[0150]-[0151].



APPLE-1006, FIG. 1(a).

Exhibit D
Page 107

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

# F I G. 1 (b)



APPLE-1006, FIG. 1(b) (shown without the protruding cover).

To facilitate the passage of light to the detectors, Aizawa teaches that "to expand the light emitting area of...the light receiving areas of the photodetectors 22, the sectional forms of the above cavities 23b and 23c are tapered…."  APPLE-1006, ¶[0024].  Accordingly, AOG renders obvious [18].

## *Claim 19*

**[19a] The user-worn physiological measurement device of claim 18 further comprising: an at least partially opaque layer blocking one or more optical paths to at least one of the at least four detectors, wherein the at least partially opaque layer comprises the windows that allow light to pass through to the corresponding detectors.**

As explained above in Section IV.B.4, AOG's PMD would have included Aizawa's LED 21 and the photodetectors 22, which are "**stored in cavities** 23b

Exhibit D
Page 108

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

and 23c **formed in the detection face** 23*a*" of holder 23 such that "the light emitting face 21s of the light emitting diode 21 and the light receiving faces 22s of the photodetectors 22 are set back from the above detection face 23*a*."  APPLE-1006, ¶¶[0023]-[0024].



APPLE-1006, FIG. 1(a).



APPLE-1006, FIG. 1(b) (shown without the protruding cover).

82

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

From this and related description, a POSITA would have understood Aizawa's holder 23 to function as a guide for light from the light emitting diode 21 and to the photodetectors 22. APPLE-1003, ¶¶[0152]-[0153]; APPLE-1006, ¶[0024].

Additionally, a POSITA would have understood that Aizawa's holder 23, which circumscribes the photodetectors, is opaque, and any surface of holder 23, including the detection face 23a of holder 23 would be an opaque layer. APPLE-1003, ¶[0154]. A POSITA would have thus found it obvious that Aizawa's holder 23 discloses, or at least suggests, an opaque layer. *Id*.

The '564 patent itself describes that such an opaque layer can be integral to the sensor's contact area. APPLE-1001, 19:28-48. Indeed, by the '564 patent's 2008 earliest effective filing date, optical sensors commonly employed opaque layers with windows corresponding to detectors. APPLE-1003, ¶[0155]; *see*, *e.g.*, APPLE-1013, ¶[0073], FIGS. 19A-19C; APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b).

Thus, a POSITA would have understood that the AOG's holder 23 is an opaque layer, and that the each of the cavities 23c within holder 23 are windows in the opaque material of holder 23 that allow light to travel from the LEDs and to the at least four photodetectors, while avoiding saturation of each of the sensor's detectors. APPLE-1003, ¶[0156]; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS.

1(a), 1(b); *see also* APPLE-1020, ¶[0073], FIGS. 19A-19C; APPLE-1021, 79, 86, 94.

*Claim 20*

**[20] The user-worn physiological measurement device of claim 10, wherein the at least four detectors are arranged such that a first detector and a second detector of the at least four detectors are arranged across from each other on opposite sides of a central point along a first axis, and a third detector and a fourth detector of the at least four detectors are arranged across from each other on opposite sides of the central point along a second axis which is different from the first axis.**

AOG's PMD would have included a plurality of detectors, as shown, e.g., in Aizawa's FIGS. 1(a).  APPLE-1006, ¶[0023], FIG. 1(a).  This arrangement of detectors corresponds to the claimed features in [20].  APPLE-1003, ¶[0157].



APPLE-1006, FIG. 1(a).

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

*Claim 21*

**[21] The user-worn physiological measurement device of claim 20, wherein the first axis is perpendicular to the second axis.**

As noted above in [20] and shown in Aizawa's FIG. 1(a), AOG's detectors would have been arranged along two perpendicular axes.  APPLE-1003, ¶[0158].



APPLE-1006, FIG. 1(a).

85

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

*Claim 22*

**[22] The user-worn physiological measurement device of claim 20, wherein the first, second, third and fourth detectors form a cross pattern about the central point.**

As noted above in [20] and shown in Aizawa's FIG. 1(a), AOG's detectors would have been arranged along two perpendicular axes that form a cross pattern. APPLE-1003, ¶[0159].



APPLE-1006, FIG. 1(a).

In some alternative embodiments, Aizawa teaches using up to eight detectors "to further improve detection efficiency." APPLE-1006, ¶¶[0032], [0033], FIG. 4(a). As shown in Aizawa's FIG. 4(a), in a PMD with eight detectors, the detectors also form a cross pattern about a central point. APPLE-1003, ¶[0160].

86

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

# F I G . 4 (a)



APPLE-1006, FIG. 4(a).

Implementing such an embodiment in AOG's PMD would have predictably involved increasing the number of detectors and rearranging them, as taught by Aizawa.  APPLE-1006, ¶¶[0032], FIG. 4(a).  The duplication and rearrangement of detectors would have been obvious to a POSITA.  *In re Harza*, 274 F.2d 669, 124 USPQ 378 (CCPA 1960); *In re Japikse*, 181 F.2d 1019, 86 USPQ 70 (CCPA 1950); APPLE-1003, ¶[0161].  Accordingly, AOG renders obvious [22].

Exhibit D
Page 114

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

*Claim 23*

**[23] The user-worn physiological measurement device of claim 10, wherein the wall creates one or more gaps between the first surface of the substrate and a surface of the cover that is interior to the physiological measurement device, and wherein the at least four detectors are positioned on the first surface of the substrate within the one or more gaps.**

As explained above in Section IV.B.5.[18] and shown below in Aizawa's FIG. 1(a), each of AOG's detectors 22 has a corresponding window or cavity 23c that allows light to pass through to the detector 22.  APPLE-1006, ¶[0024].  For example, in FIG. 1A below, the red circles surrounding the detectors 22 correspond to the windows or cavities 23c for each of the at least four detectors 22.  APPLE-1003, ¶[0162].



APPLE-1006, FIG. 1(a).

Exhibit D
Page 115

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

A side view of this detector arrangement shown in Aizawa's FIG. 1(b) reveals that a height of the cavity 23c extends from a first surface of the substrate to the surface of the cover.  Moreover, each detector 22 is stored in a cavity and is positioned on the first surface of the substrate within a corresponding gap.  Accordingly, AOG renders obvious [23].  APPLE-1003, ¶[0163].



APPLE-1006, FIG. 1(b).

### Claim 24

**[24] The user-worn physiological measurement device of claim 10, wherein the at least four detectors comprise at least eight detectors.**

*See supra* Section IV.B.5.[22]; APPLE-1003, ¶[0164].

89

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

_Claim 25_

**[25] The user-worn physiological measurement device of claim 10, wherein at
least one of the detectors is configured to detect light that has been attenuated by
tissue of the user.**

*See supra* Section IV.B.5.[1b]; APPLE-1003, ¶[0165].

_Claim 26_

**[26] The user-worn physiological measurement device of claim 25, wherein the
attenuated light is reflected by the tissue.**

*See supra* Section IV.B.5.[1b]; APPLE-1003, ¶[0166].

_Claim 27_

**[27] A physiological measurement system comprising: the user-worn physiologi-
cal measurement device according to claim 1; and the mobile phone in commu-
nication with the physiological measurement device.**

*See supra* Sections IV.B.4.b, IV.B.5.[1pre]- IV.B.5.[1k]; APPLE-1003,

¶[0167].

_Claim 28_

**[28] The physiological measurement system of claim 27, wherein the network in-
terface of the physiological measurement device is configured to wirelessly com-
municate, and wherein the mobile phone wirelessly communicates with the net-
work interface.**

*See supra* Sections IV.B.4.b, IV.B.5.[1e], IV.B.5.[27]; APPLE-1003,

¶[0168].

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

<u>Claim 29</u>

**[29] A physiological measurement system comprising: the user-worn physiological measurement device according to claim 24; and the mobile phone in communication with the physiological measurement device.**

*See supra* Sections IV.B.4.b, IV.B.5.[1e], IV.B.5.[24]; APPLE-1003,

¶[0169].

<u>Claim 30</u>

**[30] The physiological measurement system of claim 29, wherein the network interface of the physiological measurement device is configured to wirelessly communicate, and wherein the mobile phone wirelessly communicates with the network interface.**

*See supra* Sections IV.B.4.b, IV.B.5.[1e], IV.B.5.[29]; APPLE-1003,

¶[0170].

### C.    GROUND 2 – Claim 11 is obvious over AOG and Sherman

#### 1. Overview of Sherman

Sherman discloses a magnetic fastening mechanism for "wrist instruments," such as wristwatches.  APPLE-1013, 1:4-10.  As shown in Sherman's FIGS. 2 and 5, the mechanism includes a pair of flexible strap ends having "permanently magnetizable material" of opposite polarities.  *Id*., 2:43-62; FIGS. 2 and 5; APPLE-1003, ¶[61].

91

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564





APPLE-1013, FIG. 2 (top) and FIG. 5 (bottom).

Exhibit D
Page 119

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

## 2.  Combination of AOG and Sherman

Goldsmith generally discloses the use of a fastener for carrying a measurement device on a user's body (e.g., wrist) but provides no details describing the fastener.  APPLE-1011, ¶[0039].  Accordingly, to secure AOG's PMD onto a user's wrist using Goldsmith's fastening mechanism, a POSITA would have been motivated to look to other wearable, wrist worn devices such as Sherman's, for details regarding a mechanism for fastening a monitoring device.  APPLE-1003, ¶[0171].

Sherman explains that wristwatches that are fastened can be difficult to fasten and can be "unsightly or ha[ve] corners which catch upon sleeves or clothing" resulting in broken connectors or accidental snagging.  APPLE-1013, 1:11-24.  Sherman explains that this problem could be solved with a magnetic connector providing an "improved flexible strap" that "eliminates buckles or other types of protruding members thereby permitting a thinner, more comfortable flexible strap attachment."  APPLE-1013, 1:11-25, 2:1-62, FIGS. 1-11.  Sherman's strap ends "curve around the wrist of a wearer and [] overlap one another" such that the "magnetized particles provide a holding force resisting separation of the strap ends."  APPLE-1013, 2:43-62; APPLE-1003, ¶[0172].

A POSITA would have looked to Sherman because it provided details of a wrist-worn device fastening mechanism that addresses the above-noted problems,

is easy to engage, and improves user comfort.  APPLE-1013, 1:11-25, 2:9-11; AP-

PLE-1003, ¶[0173].

Combining the teachings of AOG and Sherman would have amounted to

nothing more than the use of a known technique to improve similar devices in the

same way and combining prior art elements according to known methods to yield

predictable results.  *KSR*, 550 U.S. at 417; APPLE-1003, ¶[0174].  The combina-

tion involves nothing more than applying a known technique to fasten two ends of

a strap for attaching a wrist worn device to a user's arm.  *Id*.  Furthermore, the ele-

ments of the combined system would each perform similar functions they had been

known to perform prior to the combination.  *Id*.  Indeed, a POSITA would have

readily understood how to implement magnetic strap ends for a "wrist instrument"

having an attachment strap.  *Id*.; APPLE-1013, 1:5-11.

### 3.  Manner in which AOG and Sherman render obvious Claim 11

*Claim 11*

**[11] The user-worn physiological measurement device of claim 10 further comprising: a magnet configured to be used as a connecting mechanism.**

Sherman discloses a magnetic connector for straps of a wristwatch where

"both strap ends 6 and 7 have embedded therein permanently magnetizable parti-

cles of high magnetic remanance" such that "a holding force is developed between

strap ends 6, 7 when placed in any of the various longitudinal positions provided

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

by the interlocking teeth or ridges." APPLE-1013, 4:13-35. For at least the reasons noted above in Section IV.C.2, it would have been obvious for a POSITA to use Sherman's magnetic connector as a connecting mechanism in AOG's PMD. APPLE-1013, 1:11-24, 2:1-11, 2:43-62, 4:13-35, FIGS. 1-5;APPLE-1003, ¶[0175].

### D.    GROUND 3 – Claim 12 is obvious over AOG and Rantala

### 1. Overview of Rantala

Rantala is directed to minimizing the power consumption in a pulse oximeter without compromising on performance. APPLE-1022, Abstract. Rantala's pulse oximeter includes a control unit 18 connected to a LED Drive 10 that drives LEDs A and B to emit light at different wavelengths. APPLE-1022, 4:47-5:13, FIG. 1 (reproduced below).

95

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564



APPLE-1022, FIG. 1.

To optimize and minimize power consumption in the pulse oximeter, Rantala's control unit 18 changes at least one parameter, such as the pulse width, pulse repetition rate, and pulse amplitude, of the duty cycle of the pulse train driving the LEDs.  APPLE-1022, 5:13-36; APPLE-1003, ¶¶[0062]-[0063].  The control unit can define a signal-to-noise ratio (SNR) and change the duty cycle of a pulse train signal to achieve the desired SNR for the pulse train sig-nal.  APPLE-1022, 5:37-6:19, FIG. 2.  Examples of a pulse train generated by the control unit are shown in Rantala's FIGS. 3a and 4a below, with the pulse width of the pulse train in FIG. 4a being narrower than the pulse width of the

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

pulse train in FIG. 3a.  APPLE-1022, 6:20-56.  As can be seen, the pulse trains

includes pulse width time slots and off time slots.  APPLE-1003, ¶[0064].



APPLE-1022, FIGS. 3a (top), 4a (bottom).

## 2.  Combination of AOG and Rantala

Rantala explains that because oximeters are battery-operated mobile devices

that are used in various environmental conditions and on users with varying char-

acteristics, power consumption must be minimized/optimized without compromis-

ing the performance of the pulse oximeter.  APPLE-1022, 2:25-35, Abstract.

Rantala discloses controlling the duty cycle of the emitters to address the issue of

power optimization in pulse oximeters.  APPLE-1022, 2:54-3:48; APPLE-1003,

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

¶[0176].

A POSITA would have recognized that AOG's PMD, which is a mobile device that uses emitters to obtain user physiological measurement data, would have similar issues of power consumption as a pulse oximeter with emitters.  APPLE-1003, ¶[0177].  Like Rantala's pulse oximeter, the AOG PMD is a battery-operated mobile device that is used in various environmental conditions and on users with varying characteristics.  *Id.*; APPLE-1011, FIG. 8, ¶¶[0053], [0100], [0041].

To optimize power consumption in AOG's PMD, it would have been obvious to a POSITA that AOG PMD's one or more processors would implement Rantala's control unit functionality by changing at least one parameter, e.g., pulse width, pulse repetition rate, and pulse amplitude, of the duty cycle of the pulse train driving the AOG's LED.  APPLE-1022, 5:13-6:19; APPLE-1003, ¶[0178]. Indeed, doing so would have amounted to nothing more than the use of a known technique to improve similar devices (e.g., monitoring devices with optical emitters to sense pulse) in the same way and combining prior art elements according to known methods to yield predictable results.  *Id.*; *KSR*, 550 U.S. at 417.

98

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

### 3.  Manner in which AOG and Rantala render obvious Claim 12

*Claim 12*

**[12] The user-worn physiological measurement device of claim 10, wherein the one or more processors are further configured to modulate a duty cycle of one or more of the one or more emitters, and wherein the modulation includes pulse width time slots and off time slots.**

As explained above in Sections IV.D.1 and IV.D.2, AOG-Rantala renders obvious one or more processors of AOG's PMD being configured to modulate a duty cycle of one or more of the one or more emitters.  Furthermore, as shown in Rantala's FIGS. 3a and 4a, the amplitude modulation of the one or more emitters would have included pulse width time slots and off time slots.  APPLE-1003, ¶[0179].

### E.     GROUND 4 – Claims 1-10 and 13-30 are obvious over Aizawa, Ohsaki, Goldsmith, and Ali

Ground 4 applies the same reasons for unpatentability against claims 1-10 and 13-30 as Ground 1 except for feature [1h].  Prior art mappings and arguments for all claim features other than [1h] in Ground 4 are the same as in Ground 1.  APPLE-1003, ¶[0180].

Exhibit D
Page 126

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

### 1.    Overview of Ali

Ali discloses determining and displaying a user's pulse rate using a pulse oximeter.  APPLE-1019, 4:17-26, 10:41-11:2.  Ali's pulse oximeter can display information in a portrait or landscape mode in response to a user's key selection.  APPLE-1019, 5:23-25, 12:7-16, 12:47-67, 11:59-67.  For example, pulse rate is shown in the portrait orientation in FIG. 8B and in the landscape orientation in FIG. 8C.  The scales for the graphs in the two orientations are different such that the x-axis is spread across the display screen over a larger area in FIG. 8C and consequently can be viewed more clearly.  APPLE-1003, ¶[65].



APPLE-1019, FIGS. 8B, 8C.

100

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

## 2. Combination of AOG and Ali and Manner in which AOG-Ali renders obvious [1h]

**_[1h] an orientation of the user interface is configurable responsive to a user input;_**

Ali's pulse oximeter, like AOG's PMD, "may be incorporated as a module or built-in portion of a multiparameter patient monitoring system." APPLE-1019, 1:23-33. Recall from Sections IV.B.3 and IV.B.4 that AOG's PMD incorporates Goldsmith's touch screen display and user interface and also displays a user's pulse rate. APPLE-1011, ¶¶ [0013], [0014], [0035]-[0038], [0082]-[0088], [0095], [0102]; APPLE-1003, ¶[0181].

Goldsmith acknowledges that rendering of content on its user interface display can be incorrect due to screen formatting, scaling, and resolution issues. AP-PLE-1011, ¶[0049]. Goldsmith then teaches that its display is configurable in various ways based on user input to facilitate user viewing, e.g., to be able to view the contents of a graph more clearly or improve the font size of text. APPLE-1003, ¶[0182]; APPLE-1011, ¶¶[0049], [0102], [0104].

It would have been obvious for a POSITA to incorporate the teachings of Ali into AOG's PMD. APPLE-1003, ¶[0183]. In particular, to address problems in displaying graphs and text as described in Goldsmith, a POSITA would have included Ali's capability to select user interface orientation through a user input such that the user may have greater control over the display and enjoy an improved

Exhibit D
Page 128

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

viewing experience customized for the user's preferences. *Id.*; APPLE-1011, ¶¶[0102], [0104], [0049], [0055].

The AOG-Ali combination would have amounted to nothing more than the use of a known technique to improve similar devices in the same way and combining prior art elements according to known methods to yield predictable results. *KSR*, 550 U.S. at 417; APPLE-1003, ¶[0184]. Here, AOG's PMD is an integrated device that includes a pulse sensor. APPLE-1006, Abstract, ¶[0002]; APPLE-1009, Title, Abstract, ¶¶[0016], [0017], FIG. 1; APPLE-1011, ¶¶[0082]-[0084], [0095], [0037], [0038]. Likewise, Ali's pulse oximeter can be integrated into a monitoring device or system. APPLE-1019, 1:23-33. Implementing Ali's capability to select user interface orientation in AOG's PMD would have been predictable at least because it would have involved incorporating a feature that was simple to implement and known in the industry. APPLE-1003, ¶[0184]; APPLE-1019, 12:47-67.

### F.    GROUND 5 – Claim 11 is obvious over Aizawa, Ohsaki, Goldsmith, Ali, and Sherman; GROUND 6 – Claim 12 is obvious over Aizawa, Ohsaki, Goldsmith, Ali, and Rantala

Claim 1 is rendered obvious under Ground 1 by AOG and under Ground 4 by AOG-Ali. Because claims 11 and 12 depend indirectly from claim 1, the application of Ali to [1h] under Ground 4 also indirectly impacts the grounds asserted against claims 11 and 12.

102

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

A POSITA would have combined Sherman with the combination of AOG and Ali under Ground 5 for the same reasons a POSITA would have been combined Sherman with AOG under Ground 2.  APPLE-1003, ¶¶[0185]-[0186].  A POSITA would have also combined Rantala with the combination of AOG and Ali under Ground 6 for the same reasons a POSITA would have been combined Rantala with AOG under Ground 3.  *Id.*  Therefore, for at least the reasons noted above in Grounds 2 and 3, claim 11 is also obvious in view of AOG, Ali, and Sherman, and claim 12 is also obvious in view of AOG, Ali, and Rantala.  *Id.*

## V.   PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION

The *NHK-Fintiv* rule should not be applied because it violates the AIA, which allows IPR to proceed in tandem with infringement litigation so long as the petition is filed within one year of service of a complaint of infringement.  See 35 U.S.C. § 315(b).  The rule also is arbitrary and capricious because its vague factors lead to speculative, unpredictable, and unfair outcomes.  Further, the rule is procedurally invalid because it was not adopted through notice-and-comment rulemaking.

However, consistent with Congressional intent and goals of *NHK-Fintiv*, Apple asks the Board alone to consider challenges raised in this Petition.  *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11, 6 (PTAB 2020).

103

Unlike *NHK*, there is no basis for denial of this Petition under § 325(d), which would only be appropriate if the same or substantially the same art or arguments were previously presented to the Office. *Advanced Bionics LLC v. MED-EL Elektromedizinische Gerate GmbH*, IPR2019-01469 Pap. 6, 8-10 (PTAB Feb. 13, 2020)(precedential). The Petition's arguments are premised on combinations of references that were never presented to the Office with respect to the '564 patent. Aizawa does appear as one among hundreds of listed references, but there is no indication that it was considered by the examiner. *See, generally,* APPLE-1002.

Moreover, and as explained below, *Fintiv* favors institution.

### A.    Factor 1: Institution Will Increase Likelihood of Stay

Institution will enable the Board to resolve the issue of validity, and a finding of invalidity will relieve the Central District of California (the "District Court") of the need to continue litigation. Apple moved to stay the District Court case, and the opportunity for such simplification increases the likelihood that the court will grant a stay in view of IPR institution. *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case No. 2:16-cv-642-JRG, 2-3 (E.D. Tex. 2017); *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 13-CV-1058, 2015 WL 1069111 (E.D. Tex. 2015).

### B.    Factor 2: District Court Schedule

Trial in the District Court case is scheduled for April 5, 2022. APPLE-1031, 1. Based on the 18-month IPR schedule, a Final Written Decision ("FWD") in an

IPR arising from the present Petition would issue in early April of 2022, near the

District Court trial date.

However, as in *NHK*, district court trial dates shift, even in normal times.

*Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap.

22, 17 (PTAB 2019).  The District Court is one of the country's busiest patent

courts, and the trial date of a case in the District Court in which Patent Owner is a

plaintiff and is before the same judge as the District Court case has recently been

postponed by approximately ten months.  APPLE-1036, 2.  Scheduling issues can-

not be ruled out, as experts have professed that additional COVID-19 outbreaks are

likely to arise and California is facing new outbreaks.  APPLE-1034, 1 ("Fauci

says second wave of coronavirus is 'inevitable'"); APPLE-1035, 4 ("Los Angeles

County is currently" at "275 [cases] per 100,000 [residents]," which is higher than

the recommended level (100 per 100,000) for reopening).  And, as the Board re-

cently found when granting institution in *Juniper Networks, Inc. et al. v. Packet In-*

*telligence LLC*, "it is more likely that the District Court will incur delays due to the

COVID-19 pandemic than the Board."  IPR2020-00388 Pap. 22 at 14 (Sept. 9,

2020)(district court trial scheduled to begin before statutory FWD date).

### C.     Factor 3: Apple's Investment in IPR Outweighs Forced Invest-ment in Litigation to Date

District court proceedings are still at an early phase.  The parties have yet to

file claim construction briefs, no claim construction orders have issued, and the

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

*Markman* hearing is not scheduled until February 8, 2021.  APPLE-1031, 1.  In ad-

dition, discovery is not scheduled to close until July 5, 2021.  *Id.*

Apple's substantial investment in these IPR proceedings should counterbal-

ance—if not outweigh—the resources invested in the co-pending litigation given

the speed with which Apple is filing IPR petitions on over two-hundred fifty

claims across thirteen patents.  It would be unjust to consider resources expended

in District Court (equally by both parties), without considering Apple resources ex-

pended to prepare seventeen IPR petitions that would be irretrievably lost without

consideration on the merits, in addition to the extensive expenses that may be fore-

gone through institution of Apple's petitions and that will otherwise certainly fol-

low in co-pending litigation for which significant milestones exist.

Moreover, Masimo did not assert the '564 patent against Apple until July 24,

2020, and Apple prepared and filed the instant petition challenging the '564 patent

within nine weeks of that date—months ahead of the statutory period provided by

Congress under § 315(b).  *See* APPLE-1037.  *Mylan Pharma. Inc. v. Sanofi-*

*Aventis Deutschland GMBH*, IPR2018-01680, Pap. 22, 18 (PTAB Apr. 3,

2019)(finding that petition filed two months before bar date is "well within the

timeframe allowed by statute, weighing heavily in [petitioner's] favor").

### D.    Factor 4: The Petition Raises Unique Issues

Apple has voluntarily stipulated to Patent Owner's counsel that, if the presnt

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

Petition is instituted, Apple will not assert that the Challenged Claims are invalid on the pending Petition's asserted grounds in *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.). APPLE-1032, 1; *see, e.g., Apple v. Seven* at 15-17 (finding that such a stipulation by a petitioner "mitigates, at least to some degree, the concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions").

In addition, the Petition addresses claims that will not be addressed in District Court.  Although Patent Owner has not yet narrowed the asserted claims, the District Court recently ordered the parties to submit a "Joint Claim Narrowing Proposal" by November 23, 2020.  *See* APPLE-1033, 1; APPLE-1040, 1-3.  Thus, based on this ordered reduction in the asserted claims, the District Court will necessarily address fewer claims than are challenged in this Petition (which challenges all claims of the patent), even assuming the District Court addresses validity at all, which is presently unknowable.  *See, e.g., Apple v. Seven* at 18.

In short, grounds in this Petition are unique, and will not be addressed in District Court.  *See, e.g., Apple v. Seven* at 15-20 (weighing this factor against exercising 314(a) discretion where a petitioner challenged several unasserted claims and stipulated that it would not pursue the IPR grounds in the co-pending litigation).

107

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

### E.  Factor 5: The Petition Enables the Board to Resolve Invalidity of Claims that Might Otherwise be Reasserted

Apple's Petition is potentially helpful to future defendants.  For at least this reason, Apple's status as Petitioner and defendant is, at worst, a neutral factor. Taking the relevant circumstances into account, institution would serve overall efficiency and integrity, enabling the Board to determine invalidity of claims that Patent Owner might later assert against others.

### F.  Factor 6: Other Circumstances Support Institution

As *Fintiv* noted, "the factors...are part of a balanced assessment of all the relevant circumstances in the case," and, "if the merits of a ground raised in the petition seem particularly strong … the institution of a trial may serve the interest of overall system efficiency and integrity …."  *Fintiv*, 14-15.  As explained in the Petition, institution would result in invalidation of the Challenged Claims.

## VI.  CONCLUSION

The cited prior art references render obvious the Challenged Claims of the '564 patent for the reasons noted hereinabove.  APPLE-1003, ¶[0187].

## VII.  PAYMENT OF FEES – 37 C.F.R. § 42.103

Apple authorizes the Patent and Trademark Office to charge Deposit Ac-

108

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

count No. 06-1050 for the fee set in 37 C.F.R. § 42.15(a) for this Petition and fur-

ther authorizes payment for any additional fees to be charged to this Deposit Ac-

count.

Respectfully submitted,

Dated: September 30, 2020           /W. Karl Renner/
                                    W. Karl Renner, Reg. No. 41,265
                                    Andrew B. Patrick, Reg. No. 63,471
                                    Usman A. Khan, Reg. No. 70,439
                                    Fish & Richardson P.C.
                                    3200 RBC Plaza, 60 South Sixth Street
                                    Minneapolis, MN 55402
                                    T: 202-783-5553
                                    F: 877-769-7945

(Control No. IPR2020-01713)         *Attorneys for Petitioner*

109

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

# CERTIFICATION UNDER 37 CFR § 42.24

Under the provisions of 37 CFR § 42.24(d), the undersigned hereby certifies

that the word count for the foregoing Petition for *Inter partes* Review totals 13,990

words, which is less than the 14,000 allowed under 37 CFR § 42.24.


Dated: September 30, 2020        /W. Karl Renner/
                                W. Karl Renner, Reg. No. 41,265
                                Andrew B. Patrick, Reg. No. 63,471
                                Usman A. Khan, Reg. No. 70,439
                                Fish & Richardson P.C.
                                3200 RBC Plaza, 60 South Sixth Street
                                Minneapolis, MN 55402
                                T: 202-783-5070
                                F: 877-769-7945

                                *Attorneys for Petitioner*

Attorney Docket No. 50095-0023IP1
IPR of U.S. Patent No. 10,624,564

## CERTIFICATE OF SERVICE

Pursuant to 37 CFR §§ 42.6(e)(4)(i) *et seq.* and 42.105(b), the undersigned

certifies that on September 30, 2020, a complete and entire copy of this Petition for

*Inter partes* Review and all supporting exhibits were provided via Federal Express,

to the Patent Owner by serving the correspondence address of record as follows:

KNOBBE, MARTENS, OLSON & BEAR, LLP
MASIMO CORPORATION (MASIMO)
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE CA 92614

/Diana Bradley/
Diana Bradley
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
(858) 678-5667

# Exhibit E

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent of:      Jeroen Poeze, et al.
U.S. Patent No.:      10,631,765          Attorney Docket No.:  50095-0024IP1
Issue Date:           April 28, 2020
Appl. Serial No.:     16/725,478
Filing Date:          December 23, 2019
Title:                MULTI-STREAM DATA COLLECTION SYSTEM FOR NONIN-
                      VASIVE MEASUREMENT OF BLOOD CONSTITUENTS

**Mail Stop Patent Board**
Patent Trial and Appeal Board
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

## PETITION FOR *INTER PARTES* REVIEW OF UNITED STATES PATENT NO. 10,631,765 PURSUANT TO 35 U.S.C. §§ 311–319, 37 C.F.R. § 42

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

# TABLE OF CONTENTS

I.  MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1)..........................4
  A.  Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1)....................4
  B.  Related Matters Under 37 C.F.R. § 42.8(b)(2) .........................4
  C.  Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3)...................5
  D.  Service Information .................................................5

II.  PETITIONER HAS STANDING TO REQUEST IPR..................................6

III. OVERVIEW OF THE '765 PATENT .........................................6
  A.  Brief Description...................................................6
  B.  Level of Ordinary Skill in the Art..................................9
  C.  Claim Construction .................................................9

IV.  APPLICATION OF PRIOR ART TO THE '765 PATENT CLAIMS.........10
  A.  Asserted Grounds and References ...................................10
  B.  GROUND 1: Claims 1-8, 10-13, 15-16, 20-29 are obvious over
      Mendelson-799, Ohsaki, Schulz, and Mendelson-2006......................11
      1.  Overview of Mendelson-799......................................11
      2.  Overview of Ohsaki.............................................17
      3.  Overview of Schulz.............................................20
      4.  Overview of Mendelson-2006.....................................21
      5.  Combination of Mendelson-799, Ohsaki, Schulz, and Mendelson-
          2006.......................................................23
      6.  Analysis ...................................................40
  C.  GROUND 2: Claim 9 is obvious over Mendelson-799, Ohsaki, Schulz,
      Mendelson-2006, and Bergey ........................................88
      1.  Overview of Bergey............................................88
      2.  Combination of Mendelson-799, Ohsaki, Schulz, Mendelson-2006
          and Bergey...............................................89
  D.  GROUND 3: Claim 14 is obvious over Mendelson-799, Ohsaki, Schulz,
      Mendelson-2006, and Goldsmith......................................91
      1.  Overview of Goldsmith.........................................91
      2.  Combination of Mendelson-799, Ohsaki, Schulz, Mendelson-2006
          and Goldsmith ...........................................92
  E.  GROUND 4: Claims 17-19 are obvious over Mendelson-799, Ohsaki,
      Schulz, Mendelson-2006, and Aizawa ................................94
      1.  Overview of Aizawa............................................94
      2.  Combination of Mendelson-799, Ohsaki, Schulz, Mendelson-2006
          and Aizawa ..............................................96

i

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

V.      PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION........100

VI.     CONCLUSION............................................................................106

VII.    PAYMENT OF FEES – 37 C.F.R. § 42.103.............................................106

Exhibit E
Page 142

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

# EXHIBITS

| | |
|---|---|
| APPLE-1001 | U.S. Patent No. 10,631,765 |
| APPLE-1002 | File History for the '765 Patent |
| APPLE-1003 | Declaration of Dr. Kenny |
| APPLE-1004 | Curriculum Vitae of Dr. Kenny |
| APPLE-1005 | *Masimo Corporation, et al. v. Apple Inc.*, Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.) |
| APPLE-1006 | US Pub. No. 2002/0188210 ("Aizawa") |
| APPLE-1007 | JP Pub. No. 2006/296564 ("Inokawa") |
| APPLE-1008 | Certified English Translation of Inokawa and Translator's Declaration |
| APPLE-1009 | US Pub. No. 2001/0056243 ("Ohsaki") |
| APPLE-1010 | "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Y. Mendelson, et al.; Proceedings of the 28th IEEE EMBS Annual International Conference, 2006; pp. 912-915 ("Mendelson-2006") |
| APPLE-1011 | US Pub. No. US 2007/0093786 ("Goldsmith") |
| APPLE-1012 | US Patent No. 6,801,799 ("Mendelson-799") |
| APPLE-1013 | US Pub. No. 2004/0054291 ("Schulz") |
| APPLE-1014 | RESERVED |
| APPLE-1015 | RESERVED |
| APPLE-1016 | US Patent No. 3,789,601 ("Bergey") |

iii

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

| APPLE-1017 | "Design and Evaluation of a New Reflectance Pulse Oximeter Sensor," Y. Mendelson, et al.; Worcester Polytechnic Institute, Biomedical Engineering Program, Worcester, MA 01609; Association for the Advancement of Medical Instrumentation, vol. 22, No. 4, 1988; pp. 167-173 ("Mendelson-1988") |
|---|---|
| APPLE-1018 | "Skin Reflectance Pulse Oximetry: In Vivo Measurements from the Forearm and Calf," Y. Mendelson, et al.; Journal of Clinical Monitoring, vol. 7, No. 1, January 1991 ("Mendelson 1991") |
| APPLE-1019 | Excerpts from Design of Pulse Oximeters, J.G. Webster; Institution of Physics Publishing, 1997 ("Webster") |
| APPLE-1020 | QuickSpecs; HP iPAQ Pocket PC h4150 Series |
| APPLE-1021 | Excerpts from How to Do Everything with Windows Mobile, Frank McPherson; McGraw Hill, 2006 ("McPherson") |
| APPLE-1022 | Excerpts from Master Visually Windows Mobile 2003, Bill Landon, et al.; Wiley Publishing, Inc., 2004 ("Landon") |
| APPLE-1023 | "Stimulating Student Learning with a Novel 'In-House' Pulse Oximeter Design," J. Yao and S. Warren; Proceedings of the 2005 American Society for Engineering Education Annual Conference & Exposition, 2005 ("Yao") |
| APPLE-1024 | US Pub. No. 2008/0194932 ("Ayers") |
| APPLE-1025 | U.S. Patent No. 7,031,728 ("Beyer") |
| APPLE-1026 | US Pub. No. 2007/0145255 ("Nishikawa") |
| APPLE-1027 | National Instruments LabVIEW User Manual |
| APPLE-1028 to 1030 | RESERVED |
| APPLE-1031 | Scheduling Order, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 37 (April 17, 2020) |

iv

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

APPLE-1032        Stipulation by Apple

APPLE-1033        Telephonic Status Conference, Masimo v. Apple et al., Case
                  8:20-cv-00048, Paper 78 (July 13, 2020)

APPLE-1034        Joseph Guzman, "Fauci says second wave of coronavirus is 'in-
                  evitable'", TheHill.com (Apr. 29, 2020), available at:
                  https://thehill.com/changing-america/resilience/natural-disas-
                  ters/495211-fauci-says-second-wave-of-coronavirus-is

APPLE-1035        "Tracking the coronavirus in Los Angeles County,"
                  LATimes.com (Aug. 20, 2020), available at
                  https://www.latimes.com/projects/california-coronavirus-cases-
                  tracking-outbreak/los-angeles-county/

APPLE-1036        Order Amending Scheduling Order, Masimo et al. v. True
                  Wearables et al., Case 8:18-CV-02001 (July 7, 2020)

APPLE-1037        *Masimo Corporation, et al. v. Apple Inc.*, Second Amended
                  Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.)

APPLE-1038        U.S. Patent No. 7,558,622 ("Tran")

APPLE-1039        Declaration of Jacob R. Munford

APPLE-1040        Order Granting Stipulation to Amend the Scheduling Order,
                  Masimo v. Apple et al., Case 8:20-cv-00048, Paper 201 (Sep-
                  tember 21, 2020)

APPLE-1041        U.S. Patent No. 7,251,513 ("Kondoh")

APPLE-1042        JP Pub. No. 2005-270543 ("Tanagi")

APPLE-1043        Certified English Translation of Tanagi and Translator's Decla-
                  ration

v

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

Apple Inc. ("Petitioner" or "Apple") petitions for *Inter Partes* Review ("IPR") under 35 U.S.C. §§ 311–319 and 37 C.F.R. § 42 of claims 1–29 ("the Challenged Claims") of U.S. Patent No. 10,631,765 ("the '765 patent"). As explained in this petition, there exists a reasonable likelihood that Apple will prevail with respect to at least one of the Challenged Claims.

The '765 Patent describes and claims a purported improvement to a "physiological sensor device" included within a "physiological measurement system": a cover with a rigid "protruding convex surface" that is configured to be located above "at least four" detectors. APPLE-1001, 10:61-11:14, 14:3-10, 24:16-35, 36:30-41, 44:51-45:15 (claim 1), FIGS. 1, 14D. Each detector "can be implemented using one or more photodiodes, phototransistors, or the like," "can capture and measure light transmitted from [an] emitter…that has been attenuated or reflected from the tissue," and can "output a detector signal…responsive to the light…."

The claimed sensor was not new. To the contrary, the '765 Patent was granted without full consideration to the wide body of applicable prior art. *See generally* APPLE-1002. And, as Dr. Thomas Kenny explains in his accompanying declaration, devices incorporating pulse rate detectors and pulse oximeters with covers were already known by the '765 Patent's earliest effective filing date, and each feature recited in the Challenged Claims would have been obvious to a

2

POSITA.  APPLE-1003, ¶¶[0020]-[0241]; APPLE-1001, 44:50-47:22.

For example, Mendelson-799 (APPLE-1012) discloses a "sensor for...optical measurement" featuring a housing with a "light source 12" and an array of twelve "discrete detectors (e.g., photodiodes)."  APPLE-1012, Title, Abstract, 9:22-40, 10:16-37, FIGS. 7, 8.  And, similar to the '765 Patent, Ohsaki (APPLE-1009) renders obvious an optical sensor that features a cover with a protruding convex surface, as does Inokawa (APPLE-1007, APPLE-1008).  APPLE-1009, Title, Abstract, ¶¶[0016], [0017], FIGS. 1, 2; *see also* APPLE-1008, ¶¶14-15, FIGS. 2, 3.  As Dr. Kenny explains, a POSITA would have found it obvious to utilize such a cover in Mendelson's '799 sensor.  APPLE-1003, ¶¶[0089]-[0100].

Additionally, the '765 Patent's claimed "physiological measurement system," which includes "a handheld computing device in wireless communication with the physiological sensor device," is not new.  *See*, *e.g.*, APPLE-1001, 44:51-45:15 (claim 1).  Indeed, physiological sensor devices commonly communicated with handheld computing devices by the '765 Patent's earliest effective filing date.  For example, Mendelson-2006's "wireless wearable pulse oximeter" system includes a body-worn pulse oximeter that communicates wirelessly with a PDA.  APPLE-1010, Abstract, 1-4, FIGS. 1-3.  Moreover, as Dr. Kenny explains, the claimed "handheld computing device" is a generic computing device, and each of its recited components are generic computing components.  APPLE-1003,

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

¶¶[0041]-[0060]; APPLE-1001, 2:45-48, 15:60-16:11, 18:9-28, FIGS. 1, 2D.

The Challenged Claims are unpatentable based on teachings set forth in at least the references presented in this petition.  Apple respectfully submits that an IPR should be instituted, and that the Challenged Claims should be canceled as un-patentable.

## I.  MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1)

### A. Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1)

Apple Inc. is the real party-in-interest (RPI).

### B. Related Matters Under 37 C.F.R. § 42.8(b)(2)

Patent Owner filed a second amended complaint on July 24, 2020 in the U.S. District Court for the Central District of California (CDCA) (Case No. 8:20-cv-00048) against Apple, in which Masimo alleged, for the first time, infringement of the '765 patent by Apple.  The initial complaint in the case, which did not allege infringement of the '765 patent, was served to Apple on January 13, 2020.

This Petition is being filed concurrently with another petition for IPR of the '765 Patent (IPR2020-01715),[1] and IPRs challenging claims of related U.S. Patents

---

[1] Pursuant to the Trial Practice Guide, both petitions for IPR of the '765 Patent are being filed with a paper providing a succinct explanation of the differences be-tween the petitions, why the issues addressed by the differences are material, and why the Board should exercise its discretion to institute both petitions.

Exhibit E
Page 148

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

10,702,194, 10,702,195, 10,709,366, and 10,624,564 are being filed concurrently or imminently.  No other petitions for IPR of the '765 Patent have been filed.  On August 31, 2020, Apple filed petitions for IPR of related U.S. Patents 10,258,265 (IPR2020-01520), 10,588,553 (IPR2020-01536 and IPR2020-01537).  On September 2, 2020, Apple filed petitions for IPR of related U.S. Patents 10,292,628 (IPR2020-01521) and 10,588,554 (IPR2020-01538 and IPR2020-01539).

## C. Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3)

Apple provides the following designation of counsel.

| Lead Counsel | Backup counsel |
|---|---|
| W. Karl Renner, Reg. No. 41,265<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email: IPR50095-0024IP1@fr.com | Andrew B. Patrick, Reg. No. 63,471<br>Usman Khan, Reg. No. 70,439<br>Grace J. Kim, Reg. No. 71,977<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>PTABInbound@fr.com |

## D. Service Information

Please address all correspondence and service to the address listed above.

Petitioner consents to electronic service by email at IPR50095-0024IP1@fr.com (referencing No. 50095-0024IP1 and cc'ing PTABInbound@fr.com, axf-ptab@fr.com, patrick@fr.com, gkim@fr.com, and khan@fr.com).

5

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

## II.    PETITIONER HAS STANDING TO REQUEST IPR

Apple certifies that the '765 patent is available for IPR.  This present Petition is being filed within one year of service of a complaint against Apple in *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.).  Apple is not barred or estopped from requesting this review challenging the Challenged Claims on the below-identified grounds.

## III.    OVERVIEW OF THE '765 PATENT

### A. Brief Description

An exemplary physiological measurement system 100 illustrated by the '765 Patent's FIG. 1 (reproduced below) includes "a sensor 101…that is coupled to a processing device or physiological monitor 109."  APPLE-1001, 2:38-40, 5:35-38, 11:47-49.



APPLE-1001, FIG. 1.

Exhibit E
Page 150

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

"In an embodiment, the sensor 101 and the monitor 109 are integrated to-gether into a single unit." *Id.*, 11:49-51. "In another embodiment, the sensor 101 and the monitor 109 are separate from each other and communicate one with an-other in any suitable manner, such as via a wired or wireless connection." *Id.*, 11:51-57; 17:40-44. The '765 Patent's FIGS. 2A-2D (reproduced below) illustrate "example monitoring devices 200 in which the data collection system 100 can be housed." APPLE-1001, 5:39-42, 16:20-31.



APPLE-1001, FIGS. 2A-2D.

Exhibit E
Page 151

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

Each of the illustrated "monitoring devices 200" include a sensor 201 and a monitor 209, which act together as components of a physiological sensor device. *Id.*, FIGS. 2A-2D, 16:20-18:28.  APPLE-1003, ¶[0049]; APPLE-1001, 2:38-48, 11:49-57, 16:20-18:28, FIGS. 1, 2A-2D.  In at least one embodiment (depicted in FIG. 2D) that device is part of a larger system including a computer with which the physiological sensor device communicates.  APPLE-1003, ¶[0051]; APPLE-1001, 2:38-48, 11:49-57, 16:20-18:28, FIGS. 1, 2A-2D.

The '765's sensor "may include different architectures."  APPLE-1001, 6:38-49, 35:36-38:20, FIGS. 14A-14I.  For example, FIG. 14C (reproduced below) illustrates a sensor featuring a "detector submount $1400c$…positioned under [a] protrusion $605b$ in a detector subassembly 1450 illustrated in FIG. 14D" (also reproduced below).



**FIG. 14C**          **FIG. 14D**

APPLE-1001, FIGS. 14C, 14D.

8

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

As illustrated in FIG. 14D, a housing 1430 including "a transparent cover 1432, upon which the protrusion 605b is disposed" surrounds each of the detectors 1410*c*.  APPLE-1001, 36:30-41; APPLE-1003, ¶[0054].

## B.  Level of Ordinary Skill in the Art

A person of ordinary skill in the art relating to the subject matter of the '765 Patent as of July 3, 2008 ("POSITA") would have been a person with a working knowledge of physiological monitoring technologies.  The person would have had a Bachelor of Science degree in an academic discipline emphasizing the design of electrical, computer, or software technologies, in combination with training or at least one to two years of related work experience with capture and processing of data or information, including but not limited to physiological monitoring technologies.  APPLE-1003, ¶¶[0021]-[0022].  Alternatively, the person could have also had a Master of Science degree in a relevant academic discipline with less than a year of related work experience in the same discipline.  *Id.*

## C. Claim Construction

Petitioner submits that all claim terms should be construed according to the Phillips standard.  *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); 37 C.F.R. § 42.100.  Here, based on the evidence below and the prior art's description of the claimed elements being similar to that of the '765 patent specification, no formal claim constructions are necessary in this proceeding because "claim terms

need only be construed to the extent necessary to resolve the controversy." *Well-
man, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011).  APPLE-
1003, ¶[0023].

## IV.   APPLICATION OF PRIOR ART TO THE '765 PATENT CLAIMS

### A. Asserted Grounds and References

The Challenged Claims are invalid based on the grounds noted in the table
below, as further explained in this Petition.  Accompanying explanations and sup-
port are provided in the Declaration of Dr. Thomas Kenny (APPLE-1003).  AP-
PLE-1003, ¶¶[0001]-[00243].

| Ground | Claims | Basis for Rejection |
|--------|--------|---------------------|
| 1 | 1-8, 10-13, 15-16, 20-29 | Obvious (§ 103) based on Mendelson-799 in combination with Ohsaki, Schulz, and Mendelson-2006 |
| | 9 | Obvious (§ 103) based on Mendelson-799 in combination with Ohsaki, Schulz, Mendelson-2006, and Bergey |
| | 14 | Obvious (§ 103) based on Mendelson-799 in combination with Ohsaki, Schulz, Mendelson-2006, and Goldsmith |
| | 17-19 | Obvious (§ 103) based on Mendelson-799 in combination with Ohsaki, Schulz, Mendelson-2006, and Aizawa |

Each applied reference pre-dates U.S. provisional application 61/078,207,
filed on July 3, 2008, which is the earliest filed application from which the '765
patent claims priority.  Petitioner does not take a position as to whether the '765
Patent is entitled to the priority date of July 3, 2008 (hereinafter "Critical Date" or

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

"Earliest Effective Filing Date"), but has applied references that pre-date the Critical Date and qualify as prior art as shown in the table below.

| Reference | | Date | Section |
|---|---|---|---|
| Mendelson-799 | US 6,801,799 | 07/31/2003 (published) | 102(b) |
| Ohsaki | US 2001/0056243 | 12/27/2001 (published) | 102(b) |
| Schulz | US 2004/0054291 | 03/18/2004 (published) | 102(b) |
| Mendelson-2006 | (NPL) | 09/2006 (published) | 102(b) |
| Bergey | US 3,789,601 | 02/05/1974 (issued) | 102(b) |
| Goldsmith | US 2007/0093786 | 4/26/2007 (published) | 102(b) |
| Aizawa | US 2002/0188210 | 12/12/2002 (published) | 102(b) |

## B.  GROUND 1: Claims 1-8, 10-13, 15-16, 20-29 are obvious over Mendelson-799, Ohsaki, Schulz, and Mendelson-2006

### 1.  Overview of Mendelson-799

Similar to the '765 Patent, Mendelson-799 describes a "sensor for use in an optical measurement device and a method for non-invasive measurement of a blood parameter."  APPLE-1012, Title, Abstract.

Mendelson-799's FIG. 7 (reproduced below) illustrates an optical sensor 10 that includes a "light source 12 composed of three closely spaced light emitting elements," "an array of discrete detectors (e.g., photodiodes)," including "a 'far' de-

11

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

tector 16 and a 'near' detector 18, arranged in two concentric ring-like arrangements…surrounding the light emitting elements; and a light shield 14." *Id.*, 9:22-33.  "All these elements are accommodated in a sensor housing 17." *Id.*, 9:33-40.



APPLE-1012, FIG. 7 (annotated).

Mendelson-799's FIG. 7 illustrates sensor housing 17 as encircling the various components that sensor housing 17 is said to accommodate, but does not present sensor housing 17 in profile.  *See* APPLE-1012, 9:23-40, Abstract, FIG. 7; APPLE-1003, ¶[0064].  As explained below, to the extent that Mendelson-799 does not disclose sensor housing 17 as including an opaque wall that surrounds the accommodated components, a POSITA would have found it obvious to connect, to

12

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

the illustrated portion of sensor housing 17, an opaque wall that surrounds the ar-

ray of discrete detectors included in detector rings 16 and 18, both to shield the de-

tectors from ambient light, and protect the detectors from external forces. *Id.*,

9:24-40, FIG. 7; APPLE-1003, ¶[0064].

For example, Mendelson-799 does not present light shield 14 in profile, but

describes light shield 14 as being "positioned between the photodiodes and the

light emitting elements," so as to "prevent[] direct optical coupling between them,

thereby maximizing the fraction of backscattered light passing through the arteri-

ally perfused vascular tissue in the detected light." APPLE-1012, 9:35-40.

From this and related description, a POSITA would have recognized Men-

delson-799's goal of protecting the photodiodes from optical noise; accordingly, a

POSITA would have been motivated to connect an opaque wall to the portion of

sensor housing 17 that Mendelson-799 illustrates as circumscribing detectors 16

and 18, so as to shield the detectors from ambient light, and protect the detectors

from external forces. APPLE-1003, ¶[0066]; APPLE-1012, Abstract, 9:22-40,

14:1-17, FIG. 7; *see also* APPLE-1019, 79, 86 ("The probe…must be protected

from ambient light"), 94.

Indeed, several references that are mentioned within Mendelson-799 itself

depict and describe pulse oximeter sensors that feature detectors housed within sur-

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

rounding walls.  APPLE-1003, ¶¶[0067]-[0070]; APPLE-1012, 4:13-22.  For example, and as shown below, two papers by the sole inventor of Mendelson-799 (Yitzhak Mendelson), published in 1988 and 1991, depict walls surrounding the photodiodes included within their respective pulse oximeter sensors.  APPLE-1017, 2-3, 6, FIG. 2; APPLE-1018, 1, 2, FIG. 1.



APPLE-1017, FIG. 2 (annotated excerpt).

Exhibit E
Page 158



APPLE-1018, FIG. 1 (annotated).

Similar to these and other known configurations in which an opaque wall in-
cluded within an optical sensor's housing surrounds the photodiodes accommo-
dated by that housing, and thereby shields the photodiodes from both external
forces and ambient light, a POSITA would have connected an opaque wall config-
ured to circumscribe detectors 16 and 18 to the planar substrate provided by Men-
delson-799's sensor housing 17, as shown below in the section view of the sensor
that would have resulted.  APPLE-1003, ¶¶[0067]-[0070]; APPLE-1012, 4:13-22,
9:33-40, FIG. 7; APPLE-1017, 2-3, 6, FIG. 1; APPLE-1018, 1, 2, FIG. 2; APPLE-
1019, 79, 86, 94; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2 (illustrating
an opaque wall that is connected to a planar substrate and surrounds light emitting
and receiving elements); APPLE-1006, ¶¶[0023], [0024], FIG. 1(b).

15

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1012, FIG. 7 (annotated, with additional section view).

As noted above, Mendelson-799 describes its sensor as being configured "for use in an optical measurement device."  APPLE-1012, Abstract, 8:37-41, 9:22-40, 10:15-22; FIGS. 7, 8; APPLE-1003, ¶[0071].  Mendelson-799's FIG. 8 (reproduced below) "illustrates a block-diagram of a pulse oximeter 20 utilizing…sensor 10" (APPLE-1012, 8:39-40, 10:16-17):

16

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1012, FIG. 8 (annotated).

As shown, "[t]he pulse oximeter typically includes a control unit 21, which is composed of an electronic block 22 including A/D and D/A converters connectable to the sensor 10, a microprocessor 24 for analyzing measured data, and a display 26 for presenting measurement results." *Id*., 10:16-22; APPLE-1003, ¶[0072].

## 2.    Overview of Ohsaki

Ohsaki is generally directed to a wrist-worn "pulse wave sensor" 1 featuring a "detecting element" 2 and a translucent board 8 with a convex surface that is placed "in intimate contact with the surface of the user's skin" when the sensor is worn.  APPLE-1009, Title, Abstract, ¶¶[0016], [0017], FIG. 1.

17

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1009, FIG. 1 (annotated).

In more detail, and as illustrated in Ohsaki's FIG. 2 (reproduced below), Ohsaki's "detecting element" 2 includes "a package 5, a light emitting element 6 (e.g., LED), a light receiving element 7 (e.g., PD), and a translucent board 8." APPLE-1009, ¶[0017].  "The package 5 has an opening and includes a" substrate in the form of "circuit board 9," on which light emitting element 6 and light receiving element 7 are arranged.  *Id.*; APPLE-1003, ¶[0074].

18

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1009, FIG. 2 (annotated).

Translucent board 8 is "attached to the opening of the package 5" and is arranged such that, when the sensor is worn "on the user's wrist…the convex surface of the translucent board…is in intimate contact with the surface of the user's skin"; this contact between the convex surface and the user's skin is said to prevent slippage, which increases the strength of the signals obtainable by Ohsaki's sensor.  APPLE-1009, ¶¶[0009], [0010], [0015], [0017], [0023]-[0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶[0075].

Exhibit E
Page 163

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

### 3.    Overview of Schulz

Schulz is titled "Pulse Oximetry Ear Sensor"; as illustrated in Schulz's

FIG. 19C (reproduced below), Schulz describes a sensor with "opposingly posi-

tioned housings 1902 and 1903 that house one or more sensor optical compo-

nents."  APPLE-1013, ¶[0065].



*FIG.   19C*

Schulz, FIG. 19C.

20

The "inward facing shells 1905 and 1906" included within these housings are said to feature "windows 1919 and 1924 that provide an aperture for transmission of optical energy to or from a tissue site"; "lenses 1920 and 1921" are provided in the form of "[t]ranslucent silicone material" that "covers windows 1919 and 1924." *Id.*, ¶[0067], FIGS. 19A-D.

Schulz avoids "saturation of the light detector" by placing "a thin sheet of opaque material" "beneath window 1919 or 1924," with "a window in the opaque material provid[ing] an aperture for transmission of optical energy to or from the tissue site." *Id*., [0073], FIGS. 19A-D.  The opaque material blocks light, and the window in the opaque material can be sized as needed to block the proper amount of light from entering the aperture.  *Id*.; APPLE-1003, ¶[0078].

## 4.    Overview of Mendelson-2006

Mendelson-2006 details the structure and testing of a "wireless wearable pulse oximeter" system.  APPLE-1010, Abstract, 1.  By wirelessly transmitting physiological data, Mendelson-2006's system provides "numerous advantages," including the ability to determine the condition of a subject "remotely."  *Id.*

The system includes a sensor module, a receiver module, and a PDA.  *Id.*, 913.  As shown in Mendelson 2006's FIGS. 1 and 2 (reproduced below), the sensor module includes an "optical reflectance transducer" having two LEDs and a photodiode that "receives and processes the [photoplethysmographic

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

(PPG)] signals" and transmits these signals wirelessly to the PDA through the receiver module. *Id.*; FIGS. 1 and 2 (reproduced below).





Fig. 1. (Top) Attachment of Sensor Module to the skin; (Bottom) photograph of the Receiver Module (left) and Sensor Module (right).

Fig. 2. System block diagram of the wearable, wireless, pulse oximeter. Sensor Module (top), Receiver Module (bottom).

APPLE-1010, FIG. 1 (left) and FIG. 2 (right).

The PDA is a handheld computing device that provides a "touch screen" and a simple graphical user interface (GUI) "configured to present the input and output information to the user and allow[ for] easy activation of various functions." AP-PLE-1010, FIG. 3 (reproduced below); APPLE-1003, ¶[0081].

22

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



Fig. 3.  Sample PDA Graphical User Interface (GUI).

APPLE-1010, FIG. 3.

### 5.      Combination of Mendelson-799, Ohsaki, Schulz, and Mendelson-2006

As explained above in Section IV.B.1, Mendelson-799 discloses a "sensor for use in an optical measurement device" featuring a sensor housing 17 that accommodates a "light source 12 composed of three closely spaced light emitting elements (e.g., LEDs or laser sources)" and an "array of discrete detectors (e.g., photodiodes)." APPLE-1012, Title, Abstract, 9:22-40, 10:16-37, FIGS. 7, 8; APPLE-1003, ¶¶[0062]-[0072], [0089].

Further, to the extent that Mendelson-799 does not disclose sensor housing 17 as including an opaque wall that surrounds the accommodated components, a POSITA would have found it obvious to connect, to the portion of sensor housing

23

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

17 illustrated in Mendelson-799's FIG. 7 (reproduced below), an opaque wall configured to circumscribe the array of discrete detectors included in detector rings 16 and 18. *Id.*, 9:24-40, FIG. 7; APPLE-1003, ¶¶[0062]-[0072], [0090].



APPLE-1012, FIG. 7 (annotated, with additional section view).

As detailed below, a POSITA would have been motivated to combine Mendelson-799, Ohsaki, Schulz, and Mendelson-2006 (hereinafter "Mendelson-Ohsaki-Schulz-Mendelson-2006 combination" or "Mendelson-Ohsaki- Schulz-Mendelson-2006") to obtain additional benefits. APPLE-1003, ¶¶[0091]-[0117].

### (a)    *Light permeable cover comprising a protruding convex surface*

Mendelson-799 does not describe a cover configured to be located between user tissue and the components accommodated within sensor housing 17, but a

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

POSITA would have recognized that a light permeable cover with a protruding convex surface would improve adhesion between the sensor and the user's tissue, improve detection efficiency, and protect the elements within sensor housing 17. APPLE-1003, ¶[0092]; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1008, ¶¶14-15, FIG. 2; APPLE-1024, ¶¶[0033], [0035], FIG. 6.

Indeed, by the Critical Date, noninvasive optical physiological sensors commonly employed covers. *See*, *e.g.*, APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1008, ¶¶14-15, FIGS. 1, 2; APPLE-1003, ¶[0093].

For example, and as described above in Section IV.B.2, Ohsaki discloses a wrist-worn "pulse wave sensor" that includes a light permeable convex cover – "translucent board 8" – that is configured to be located between user tissue and a detector when the sensor is worn, where the cover comprises a protruding convex surface operable to conform tissue of the user, and where a wall operably connects to a substrate and to the cover. APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶[0073]-[0075], [0094].

As shown in Ohsaki's FIG. 2 (reproduced below), translucent board 8 is "attached to the opening of the package 5" and is arranged such that, when the sensor is worn "on the user's wrist…the convex surface of the translucent board…is in intimate contact with the surface of the user's skin"; this contact prevents slippage,

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

which increases the strength of the signals obtainable by Ohsaki's sensor.  APPLE-1009, ¶¶ [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶[0095].



APPLE-1009, FIG. 2 (annotated).

As Ohsaki explains with reference to FIGS. 4A and 4B (reproduced below), "if the translucent board 8 has a flat surface, the detected pulse wave is adversely affected by the movement of the user's wrist," but if "the translucent board 8 has a convex surface…variation of the amount of the reflected light…that reaches the light receiving element 7 is suppressed."  APPLE-1009, ¶[0025].  Thus, when a convex cover is used, "the pulse wave can be detected without being affected by the movement of the user's wrist 4 as shown in FIG. 4A."  *Id.*



APPLE-1009, FIGS. 4A, 4B.

From this and related description, a POSITA would have understood that translucent board 8 improves adhesion between Ohsaki's sensor and the user's skin, improves detection efficiency, and provides protection to the elements accommodated within package 5.  APPLE-1003, ¶¶[0096]-[0097]; APPLE-1009, ¶[0025].

Accordingly, Ohsaki would have motivated a POSITA to add a light permeable protruding convex cover to Mendelson-799's sensor, to improve adhesion be-

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

tween the sensor and the user's tissue, to improve detection efficiency, and to pro-

vide additional protection to the elements accommodated within sensor housing 17.

APPLE-1003, ¶[0098]; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A,

4B.

In more detail, and as shown below, the POSITA would have added a trans-

parent convex cover to sensor 10, the cover being located over the array of detec-

tors 16 and 18 while also being positioned between tissue of the user and the array

of detectors when worn.  APPLE-1003, ¶[0099]; APPLE-1012, Abstract, 9:22-

10:30, FIG. 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; *see

also* APPLE-1008, ¶¶14-15, FIGS. 1, 2.  To obtain the advantages described by

Ohsaki, the POSITA would have used at least a portion of the protruding convex

surface that is rigid to conform tissue of the user to at least a portion of the cover's

surface when worn.  APPLE-1003, ¶[0099]; APPLE-1009, ¶[0025]; *see also* AP-

PLE-1009, ¶[0030], FIG. 1(b).  And, consistent with Ohsaki's configuration, the

POSITA would have configured a circumscribing wall in Mendelson-799's sensor

to operably connect, on one side, to the planar substrate on which detectors 16 and

18 are arranged and, on an opposite side, to the convex cover.  APPLE-1003,

¶[0099]; APPLE-1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, ¶[0017], FIG.

2.

28

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1012, FIG. 7 (annotated, with additional section view).

The above-described modification would require only routine knowledge of sensor design and assembly. APPLE-1003, ¶¶[0100]. Indeed, the modification would have amounted to nothing more than the use of a known technique to improve similar devices in the same way, and combining prior art elements according to known methods to yield predictable results—improved adhesion of the sensor to the user's skin, and improved signal strength. *KSR v. Teleflex*, 550 U.S. 398, 417 (2007); APPLE-1003, ¶[0100]. APPLE-1003, ¶¶[0062]-[0075], [00100]; APPLE-

29

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

### (b)   *Opaque layer with windows corresponding to detectors*

A POSITA would have recognized that an opaque circumscribing wall would partially shield Mendelson-799's detectors from ambient light, but would have understood from Schulz that additional measures could be taken to guard against saturation.  APPLE-1019, 79, 86, 94; APPLE-1013, ¶[101].

As discussed above (Section IV.B.3), Schulz describes a sensor featuring "a thin sheet of opaque material" placed inside the sensor's housing beneath a lens, with "a window in the opaque material provid[ing] an aperture for transmission of optical energy to or from the tissue site."  APPLE-1013, ¶¶[0076]-[0078], [102]. The opaque material blocks light, "and the window in the opaque material can be sized as needed to block the proper amount of light from entering the aperture to, for example, avoid saturation of the light detector."  *Id*., FIGS. 19A-19C.

This and related description from Schulz would have motivated a POSITA to add a layer of opaque material to the Mendelson-Ohsaki sensor, and to size windows in the opaque material as appropriate to avoid saturation of each of the sensor's detectors.  APPLE-1003, ¶¶[0103]-[0109]; APPLE-1013, ¶[0073], FIGS. 19A-19C; *see also* APPLE-1019, 79, 86, 94; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).

Exhibit E
Page 174

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

In more detail, and as the 1997 textbook "Design of Pulse Oximeters" by
J.G. Webster explains, "to minimize errors, the pulse oximeter designer must at-
tempt to limit the light reaching the photodiode to that which has traveled through
tissue containing arterial blood."  One measure that "can be taken to ensure this"
involves "decreas[ing] the angle of incidence to the photodiode."  *Id.*, 76, 79-80,
94, FIG. 6.6.

From Schulz's description, a POSITA would have understood that, in line
with textbook recommendations, Schulz's opaque layer limits errors by decreasing
the angle of incidence to the photodiode to that enabled by the window included
within the layer, and by otherwise preventing ambient light from reaching the pho-
todiode.  APPLE-1003, ¶¶[0104]-[0105]; APPLE-1013, ¶[0073], APPLE-1019,
79-80, 94, FIG. 6.6.

A POSITA would also have readily understood that Schulz's teachings
would apply to pulse oximetry sensors featuring multiple photodiodes and that, in
such sensors, errors could be limited through the use of an opaque layer with multi-
ple windows, the windows being configured to decrease the angles of incidence to
the photodiodes.  APPLE-1003, ¶[0106]; APPLE-1013, ¶[0073], APPLE-1019, 79-
80, 94, FIG. 6.6; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b); AP-
PLE-1023, 11-12, FIG. 11.  Indeed, by the Critical Date, noninvasive optical phys-
iological sensors with multiple detectors commonly employed opaque layers with

multiple windows.  APPLE-1003, ¶¶[0106]-[0109]; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b); APPLE-1023, 11-12, FIG. 11.

The 2005 article "Stimulating Student Learning with a Novel 'In-House' Pulse Oximeter Design" by J. Yao and S. Warren, for example, includes a photograph (reproduced below) of a pulse oximetry sensor featuring multiple photodiodes arranged radially about a set of central LEDs, and an opaque layer with multiple corresponding windows.  APPLE-1023, 11-12, FIG. 11, APPLE-1003, ¶[0107]. A POSITA would have understood that, like the layer described by Schulz, the layer depicted in the photograph prevents saturation of the photodiodes included in the sensor, by limiting the light that reaches the photodiodes to that which has traveled through tissue.  *Id*.; APPLE-1023, 1-14, FIG. 11; APPLE-1019, 79-80, 86, 94, FIG. 6.6.

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1023, FIG. 11 (excerpt, annotations in original).

Similar to these and other known configurations, and as shown below,

Schulz would have motivated a POSITA to modify the sensor resulting from the

teachings of Mendleson-799 and Ohsaki to further include an opaque layer that

would have blocked light other than at windows corresponding to the sensor's pho-

todiodes.  APPLE-1003, ¶¶[0108]-[0109]; APPLE-1013, ¶[0073], FIGS. 19A-19C;

APPLE-1023, 1-14, FIG. 11; APPLE-1019, 79-80, 86, 94, FIG. 6.6; APPLE-1006,

¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).

Exhibit E
Page 177

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1012, FIG. 7 (annotated, with additional section view)

A POSITA would have combined the teachings of Mendelson-799, Ohsaki, and Schulz, as doing so would have amounted to nothing more than the use of a known technique to improve similar devices in the same way, and combining prior art elements according to known methods to yield predictable results.  APPLE-1003, ¶[0109].  Here, by adding a well-known component to the sensor, an opaque layer that blocks light other than at windows corresponding to the detectors, in order to "avoid saturation" of the detectors.  *Id*.; APPLE-1013, ¶[0073]; APPLE-1003, ¶[0109].

34

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

*(c)*     ***Communication of information to PDA***

As explained above, the sensor resulting from the teachings of Mendelson-799, Ohsaki, and Schulz, would have been configured "for use in an optical measurement device," as part of "a method for non-invasive measurement of a blood parameter."  APPLE-1003, ¶¶[0089]-[0110]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.



APPLE-1012, FIG. 7 (annotated, with additional section view).

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

Mendelson-799's FIG. 8 (reproduced below) "illustrates a block-diagram of a pulse oximeter 20 utilizing … sensor 10."  APPLE-1012, 8:39-40, 10:16-17.



APPLE-1012, FIG. 8 (annotated).

As shown, "[t]he pulse oximeter typically includes a control unit 21, which is composed of an electronic block 22 including A/D and D/A converters connectable to the sensor 10, a microprocessor 24 for analyzing measured data, and a display 26 for presenting measurement results."  *Id.*, 10:16-30.

Mendelson-799 does not explicitly describe wireless communication but, in view of Mendelson-2006's disclosure, a POSITA would have found it obvious to enable sensor 10 and pulse oximeter 20 to communicate wirelessly with a PDA featuring a touch-screen display.  APPLE-1003, ¶[0112]; APPLE-1012, 10:16-30, FIG. 8; APPLE-1010, 1-4, FIG. 3; *see also* APPLE-1021, Cover, xvii-xviii, 10-12, 63, 73-101, 363; APPLE-1022, 4-11, 30-31, 284-297.

36

Indeed, by the Critical Date, physiological sensor devices commonly communicated wirelessly with handheld computing devices.  APPLE-1003, ¶¶[0113]-[0117].  For example, and as discussed above (Section IV.B.4), Mendelson-2006 describes a "body-worn" pulse oximetry system that includes a sensor module, a receiver module, and a PDA.  APPLE-1010, 1-4, FIGS. 1-3.

In more detail, and as shown in Mendelson-2006's FIG. 2 (reproduced below), the sensor module includes an "optical reflectance transducer" for measuring photoplethysmographic (PPG) signals, and the receiver module includes "an embedded microcontroller."  *Id.*, 1-2.  "Signals acquired by the Sensor Module are received by the embedded microcontroller which synchronously converts the corresponding PD output to R and IR PPG signals," and "[d]edicated software is used to filter the signals and compute [arterial oxygen saturation ($SpO_2$)] and [heart rate (HR)] based on the relative amplitude and frequency content of the reflected PPG signals."[2]  *Id.*

---

[2]Similar to Mendelson-799's sensor 10, which provides "measured data (i.e., electrical output of the sensor 10 indicative of the detected light" to pulse oximeter 20 for processing, Mendelson-2006's sensor module provides acquired signals to the receiver module for processing.  APPLE-1003, ¶[0114], FN1; APPLE-1012, 10:22-30, FIG. 8; APPLE-1010, 2.

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1010, FIG. 2 (annotated).

"[I]nformation acquired by the Sensor Module is transmitted wirelessly via an RF link over a short range to a body-worn Receiver Module," and data processed by the receiver module is "transmitted wirelessly to a PDA." *Id.*, 2, FIG. 2. Mendelson-2006's system uses "the HP iPAQ h4150 PDA because it can support both 802.11b and Bluetooth™ wireless communication." *Id.*, 3. The PDA is used "as a local terminal," and it "also provides a low-cost touch screen interface." *Id.*; APPLE-1020, 1-4.

In more detail, and as shown in Mendelson-2006's FIG. 3 (reproduced be-

38

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

low), the handheld PDA's "simple GUI" is "configured to present…input and output information to the user" and to allow "easy activation of various functions." *Id.*, 4. Wireless communication with the handheld PDA is, moreover, said to enable transfer of information pertaining to physiological and wellness parameters such as "SpO$_2$, HR, body acceleration, and posture information" to the PDA; and, when the PDA is "carried by medics or first responders," this information is said to enhance their ability "to extend more effective medical care…." *Id.*



APPLE-1010, FIG. 3.

To obtain these and other advantages described by Mendelson-2006, a POSITA would have been motivated to wirelessly transmit information or data acquired or processed by sensor 10 and pulse oximeter 20 to a PDA featuring a

39

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

touch-screen display, using either or both of 802.11b and Bluetooth™.  APPLE-

1003, ¶¶[0116]-[0117]; APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8;

APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-4; *see also* APPLE-1021, xvii-xviii,

10-12, 17, 63, 73-101, 176, 190-193, 363; APPLE-1022, 4-11, 30-31, 56-67, 72-

92.

## 6.    Analysis

### *Claim 1*

### *[1pre] A physiological measurement system comprising*

As illustrated below, and as described above with respect to Sections

IV.B.1-5, Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included an op-

tical sensor 10 configured "for use in an optical measurement device," as part of "a

method for non-invasive measurement of a blood parameter."  APPLE-1012, Ab-

stract, 8:37-41, 9:22-40, 10:15-22, FIGS. 7, 8; APPLE-1003, ¶¶[0089]-[0118].

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1012, FIG. 7 (annotated, with additional section view).

Mendelson-799's FIG. 8 (reproduced below) "illustrates a block-diagram of

a pulse oximeter 20 utilizing…sensor 10":



APPLE-1012, FIG. 8 (annotated).

41

As shown, "[t]he pulse oximeter typically includes a control unit 21, which is composed of an electronic block 22 including A/D and D/A converters connectable to the sensor 10, a microprocessor 24 for analyzing measured data, and a display 26 for presenting measurement results." *Id.*, 10:16-22.

Thus, Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included a physiological measurement system comprising a physiological sensor device. APPLE-1003, ¶[0121]; APPLE-1012, Abstract, 7:25-8:13, 8:37-41, 9:22-40, 10:16-30, FIGS. 7, 8; APPLE-1009, Abstract, ¶¶[0003], [0008], [0016], [0017], [0020], FIGS. 1, 2. Moreover, as explained above, a POSITA would have found it obvious to enable the physiological sensor device to communicate wirelessly with a handheld computing device. APPLE-1003, ¶¶[0110]-[0117], [0121]; APPLE-1012, 10:16-30, FIG. 8; APPLE-1010, 1-4, FIG. 3.

Accordingly, [1pre] would have been obvious over Mendelson-Ohsaki-Schulz-Mendelson-2006. APPLE-1003, ¶¶[0122].

***[1a] a physiological sensor device comprising:***

As discussed in [1pre] and Sections IV.B.1-5, Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included a physiological sensor device including sensor 10 and pulse oximeter 20. APPLE-1012, Abstract, 7:25-8:13, 8:37-41, 9:22-40, 10:16-30, FIGS. 7, 8; APPLE-1003, ¶¶[0089]-[0117], [0123].

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [1a].  APPLE-1003, ¶¶[0123]-[0124].

**[1b] one or more emitters configured to emit light into tissue of a user;**

As discussed in [1pre]-[1a] and Sections IV.B.1-5, Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included "a light source 12 composed of three closely spaced light emitting elements (e.g., LEDs or laser sources) 12*a*, 12*b* and 12*c* generating light of three different wavelengths, respectively…."  APPLE-1012, Abstract, 7:25-8:13, 8:37-41, 9:22-40, 10:16-30, FIGS. 7, 8; APPLE-1003, ¶[0128].

In more detail, the light emitting elements 12*a*, 12*b*, and 12*c* illustrated in Mendelson-799's FIG. 7 (reproduced below) are "adapted to emit radiation at pre-determined frequencies," and the "detector assembly is adapted to detect reflected radiation…and to generate respective signals" that "are used to determine the parameter of the blood."  APPLE-1012, Abstract, 9:22-40, FIG. 7; APPLE-1003, ¶[0129]

43

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1012, FIG. 7 (annotated).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [1b].  APPLE-1003, ¶¶[0125]-[0127].

**[1c] at least four detectors, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector;**

As discussed in [1pre]-[1b] and Sections IV.B.1-5, Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included "a sensor housing 17" accommodating "an array of discrete detectors (e.g., photodiodes)," including "a 'far' detector

44

16 and a 'near' detector 18, arranged in two concentric ring-like arrangements…surrounding…light emitting elements…." APPLE-1012, Abstract, 2:14-28, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1003, ¶¶[0089]-[0109], [0128].

In more detail, each of the twelve discrete photodiodes included in the detector assembly illustrated in Mendelson-799's FIG. 7 (reproduced below) are "adapted to detect reflected radiation…and to generate respective signals" that "are used to determine the parameter of the blood." APPLE-1012, Abstract, 9:22-48, FIG. 7; APPLE-1003, ¶[0129].



APPLE-1012, FIG. 7 (annotated).

As discussed in Sections IV.B.1-5, and as illustrated below, a POSITA would have found it obvious to implement sensor 10 with an opaque layer blocking

45

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

optical paths to each detector, other than at windows allowing light to pass through to corresponding detectors.  APPLE-1003, ¶¶[0089]-[0109], [0130]; APPLE-1013, ¶[0073], FIGS. 19A-19C; APPLE-1019, 79, 86, 94; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).



APPLE-1012, FIG. 7 (annotated, with additional section view).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [1c].  APPLE-1003, ¶¶[0125]-[0131].

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

**[1d]** *a wall that surrounds at least the at least four detectors; and*

As discussed in [1pre]-[1c] and Sections IV.B.1-5, and as shown below, Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included an opaque wall configured to circumscribe the twelve detectors included in detector rings 16 and 18. APPLE-1003, ¶¶[0062]-[0072], [0089]-[0100], [0133]-[0135]; APPLE-1012, Abstract, 4:13-22, 7:25-8:41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2 (depicting an opaque wall that surrounds light emitting and receiving elements); APPLE-1006, ¶¶[0023], [0024], FIG. 1(b); APPLE-1013, ¶[0040], FIGS. 6A-B; APPLE-1017, 2-3, 6, FIG. 1; APPLE-1018, 1, 2, FIG. 2; APPLE-1019, 79, 86, 94.



APPLE-1012, FIG. 7 (annotated, with additional section view).

Exhibit E
Page 191

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[1d].  APPLE-1003, ¶¶[0062]-[0072], [0089]-[0100], [0132]-[0139].

***[1e] a cover comprising a protruding convex surface, wherein the protruding
convex surface is above all of the at least four detectors,***

As discussed in [1pre]-[1d] and Sections IV.B.1-5, Mendelson-Ohsaki-

Schulz-Mendelson-2006, and as shown below, would have included a transparent

cover with a protruding convex surface, wherein the protruding convex surface is

above all the detectors.  APPLE-1003, ¶¶[0073]-[0075], [0089]-[0100], [0137];

APPLE-1012, Abstract, 2:12-18, 9:22-10:30, FIG. 7; APPLE-1009, Abstract,

¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

48

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1012, FIG. 7 (annotated, with additional section view).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [1e]. APPLE-1003, ¶¶[0073]-[0075], [0089]-[0100], [0137]-[0138].

***[1f] wherein at least a portion of the protruding convex surface is rigid, and wherein the cover operably connects to the wall; and***

As discussed in [1e] and Sections IV.B.1-5, Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included a cover with a protruding convex surface, wherein at least a portion of the protruding convex surface is rigid, and wherein the

49

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

cover operably connects to the wall.  APPLE-1003, ¶¶[0073]-[0075], [0089]-

[0100], [0140]; APPLE-1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, Ab-

stract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

    In more detail, and as shown in Ohsaki's FIG. 2 (reproduced below), Ohsaki

discloses a "convex surface of the translucent board 8."  APPLE-1009, ¶[0025],

FIGS. 1, 2.  As depicted, Ohsaki's translucent board 8 operably connects to

Ohsaki's package 5, and the board's protruding convex surface is rigid enough to

retain its shape when the sensor is worn and the surface is subjected to forces ex-

erted from the user's skin, such that the tissue conforms around the surface.  AP-

PLE-1003, ¶[0141]; FIG. 2.



APPLE-1009, FIG. 2 (annotated).

Exhibit E
Page 194

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

As discussed in [1pre]-[1e] and Sections IV.B.1-5, this and related disclo-
sure would have motivated a POSITA to operably connect Mendelson-Ohsaki-
Schulz-Mendelson-2006's circumscribing wall, on one side, to the planar substrate
on which the detectors are arranged and, on an opposite side, to a cover featuring a
rigid protruding convex surface.  APPLE-1003, ¶¶[0073]-[0075], [0089]-[0100],
[0141]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIG. 7;
APPLE-1009, Abstract ,¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious
[1f].  APPLE-1003, ¶¶[0140]-[0141].

*[1g] a handheld computing device in wireless communication with the physiolog-
ical sensor device, wherein the handheld computing device comprises:*

As discussed in [1pre]-[1f] and Sections IV.B.1-5, a POSITA would have
found it obvious to enable the physiological sensor device comprising sensor 10
and pulse oximeter 20 to communicate wirelessly with a handheld computing de-
vice such as a PDA featuring a touch-screen display.  APPLE-1003, ¶¶[0089]-
[0117], [0145]; APPLE-1012, 10:16-30, FIG. 8; APPLE-1010, 1-4, FIG. 3; AP-
PLE-1021, Cover, xvii-xviii, 10-12, 63, 73-101, 363; APPLE-1022, 4-11, 30-31,
284-297.

In more detail, the version of Mendelson-799's FIG. 7 reproduced below il-
lustrates optical sensor 10, as modified in view of Ohsaki, Schulz, and Mendelson-

51

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

2006:



APPLE-1012, FIG. 7 (annotated, with additional section view).

Mendelson-799's FIG. 8 (reproduced below) "illustrates a block-diagram of

a pulse oximeter 20 utilizing…sensor 10."  APPLE-1012, 8:39-40, 10:16-17.

Exhibit E
Page 196

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1012, FIG. 8 (annotated).

As discussed above (Section IV.B.4), Mendelson-2006 describes a "body-worn" pulse oximetry system that includes a sensor module, a receiver module, and a PDA. APPLE-1010, 1-4, FIGS. 1-3. Similar to Mendelson-799's sensor 10, which provides "measured data (i.e., electrical output of the sensor 10 indicative of the detected light" to pulse oximeter 20 for processing, Mendelson 2006's sensor module provides acquired signals to its receiver module for processing. APPLE-1003, ¶¶[0079]-[0081], [0089]-[0117], [0148]; APPLE-1012, 10:22-30, FIG. 8; APPLE-1010, 1-4, FIGS. 1-3. Data processed by Mendelson-2006's receiver module is transmitted wirelessly to a PDA. APPLE-1010, 2, FIG. 2. Mendelson-2006's system uses "the HP iPAQ h4150 PDA because it can support both 802.11b and Bluetooth™ wireless communication." *Id.*, 3. The PDA is used "as a local

53

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

terminal," and it "also provides a low-cost touch screen interface." *Id.*; *see also* APPLE-1020, 1-4; *see also* APPLE-1021, Cover, xvii-xviii, 10-12, 17, 63, 363; APPLE-1022, 4-11, 30-31.

In more detail, and as shown in Mendelson-2006's FIG. 3 (reproduced below), the handheld PDA's "simple GUI" is "configured to present…input and output information to the user" and to allow "easy activation of various functions." APPLE-1010, 4.  Wireless communication with the handheld PDA is, moreover, said to enable transfer of information pertaining to physiological and wellness parameters such as "$SpO_2$, HR, body acceleration, and posture information" to the PDA; and, when the PDA is "carried by medics or first responders," this information is said to enhance their ability "to extend more effective medical care…." *Id.*

54

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1010, FIG. 3 (left).

As discussed above (Section IV.B.5), to obtain these and other advantages described by Mendelson-2006, a POSITA would have found it obvious to wirelessly transmit information or data acquired or processed by a physiological sensor device including sensor 10 and pulse oximeter 20 to a PDA such as the HP iPAQ h4150, using either or both of 802.11b and Bluetooth™.  APPLE-1003, ¶¶[0110]-[0117], [0150]; APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-4..

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [1g].  APPLE-1003, ¶¶[0145]-[0151].

Exhibit E
Page 199

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

**[1h] one or more processors configured to wirelessly receive one or more signals
from the physiological sensor device, the one or more signals responsive to at
least a physiological parameter of the user;**

As discussed in [1pre]-[1g] and Sections IV.B.1-5, a POSITA would have
found it obvious to place a handheld computing device in wireless communication
with the Mendelson-Ohsaki-Schulz-Mendelson-2006 physiological sensor device.
APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIGS.
1-3; APPLE-1020, 1-4; APPLE-1003, ¶¶[0110]-[0117], [0152].

In implementing this physiological measurement system, the POSITA would
have configured a processor of the PDA to receive signals wirelessly from the
physiological sensor device, the signals being responsive to physiological parame-
ters of the user.  APPLE-1003, ¶[0153]; APPLE-1012, 9:23-10:37, FIGS. 7, 8; AP-
PLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-3, 6-8.

In more detail, Mendelson-2006 describes the wireless transmission of "vital
physiological information" acquired and processed by a "body-worn pulse oxime-
ter" to the HP iPAQ h4150 PDA, which is utilized "as a local terminal" with a
"low-cost touch screen interface" featuring a "simple GUI" "configured to pre-
sent…input and output information to the user." APPLE-1010, 1-3, FIGS. 1-3.
Mendelson-2006's FIG. 3, for example, is a photograph of an HP iPAQ h4150
PDA being used to display indicia responsive to measurements of $SpO_2$ and HR,
the PDA having wirelessly received signals responsive to the user's SpO2 and HR

56

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

from the body-worn pulse oximeter.  APPLE-1003, ¶[0154]; APPLE-1010, 2-3,
FIG. 3.

The iPAQ h4150 PDA is said by Mendelson-2006 to include "sufficient
computational resources for the intended application," and the PDA's user manual
confirms that it typically included a "400 MHz Intel Xscale™ technology-based
processor."  *Id.*, 3; APPLE-1020, 1-3; APPLE-1022, 4.  The iPAQ h4150 PDA is
said by Mendelson-2006 to support both 802.11b and Bluetooth™ wireless com-
munication, and the PDA's user manual confirms that it typically included "Inte-
grated WLAN 802.11b" and "Integrated Bluetooth™."  APPLE-1010, 3; APPLE-
1020, 1-3, 6-8; APPLE-1021, 173-203; APPLE-1022, 56-67, 72-92.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious
[1h].  APPLE-1003, ¶¶[0152]-[0156].


***[1i] a touch-screen display configured to provide a user interface, wherein: the
user interface is configured to display indicia responsive to measurements of the
physiological parameter, and an orientation of the user interface is configurable
responsive to a user input; and***

As discussed in [1pre]-[1h] and Sections IV.B.1-5, a POSITA would have
found it obvious to place a handheld computing device in wireless communication
with the Mendelson-Ohsaki-Schulz-Mendelson-2006 physiological sensor device.
APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIGS.
1-3; APPLE-1020, 1-4; APPLE-1003, ¶¶[0110]-[0117], [0157].

57

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

In implementing this physiological measurement system, the POSITA would have configured a touch-screen display of the PDA to provide a user interface, the user interface being configured to display indicia responsive to measurements of the physiological parameter, and an orientation of the user interface being configurable responsive to a user input.  APPLE-1003, ¶[0158]; APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIG. 3; APPLE-1020, 1-4; *see also* APPLE-1009, ¶¶[0005], [0020].

In more detail, Mendelson-2006 describes the wireless transmission of "vital physiological information" acquired and processed by a "body-worn pulse oximeter" to the HP iPAQ h4150 PDA, which is utilized "as a local terminal" with a "low-cost touch screen interface" featuring a "simple GUI" "configured to present … input and output information to the user" and to allow "easy activation of various functions."  APPLE-1010, 1-2, FIGS. 1-3; *see also* APPLE-1020, 3.  As Mendelson-2006 explains, a "dedicated National Instruments LabVIEW program was developed to control all interactions between the PDA and the wearable unit via a graphical user interface (GUI)," with "[o]ne part of the LabVIEW software [being] used to control the flow of information through the 802.11b radio system on the PDA."  APPLE-1010, 3.

As shown below, Mendelson-2006's FIG. 3 is a photograph of an HP iPAQ h4150 PDA being used to display indicia responsive to measurements of SpO$_2$ and

58

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

HR, the PDA having wirelessly received signals responsive to the user's SpO$_2$ and HR from the body-worn pulse oximeter.  APPLE-1003, ¶[0160]; APPLE-1010, 1-3, FIG. 3.



APPLE-1010, FIG. 3.

Mendelson-2006 does not explicitly state that an orientation of the GUI provided by the PDA is configurable responsive to a user input, but a POSITA would have understood that the LabVIEW software that was used "to control all interactions between the PDA and the wearable unit via [t]he graphical user interface" in-

cluded the option to configure an orientation of a user interface as a standard feature.  APPLE-1003, ¶[0161]; APPLE-1027, 186 ("Set the report orientation—portrait or landscape").

Additionally, Mendelson-2006 describes the "LabVIEW program" as interacting with the "Windows CE™" operating system.  APPLE-1010, 3.  A POSITA would have understood that, as a standard feature, that operating system enabled users to dynamically switch the screen orientation between portrait and landscape modes.   APPLE-1003, ¶[0162]; APPLE-1020, 1; APPLE-1021, xvii-xviii, 63 ("switch the screen orientation from portrait…to landscape"); APPLE-1022, 8.

Consistent with Mendelson-2006's description of the PDA's "simple GUI" being configured to allow for "easy activation of various functions," a POSITA would have found it obvious to make an orientation of the PDA's user interface configurable responsive to a user input, for the sake of user convenience.  APPLE-1003, ¶[0163]; APPLE-1010, 3, FIG. 3; APPLE-1020, 1-8; APPLE-1021, xvii-xviii, 63; APPLE-1022, 8.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [1i].  APPLE-1003, ¶¶[0157]-[0164].

***[1j] a storage device configured to at least temporarily store at least the measurements of the physiological parameter.***

As discussed in [1pre]-[1j], a POSITA would have found it obvious to place

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

a handheld computing device in wireless communication with the Mendelson-Ohsaki-Schulz-Mendelson-2006 physiological sensor device.  APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-4; APPLE-1003, ¶¶[0100]-[0117], [0165].

In implementing this physiological measurement system, the POSITA would have found it obvious to configure a storage device of the PDA to at least temporarily store measurements of physiological parameters (e.g., SpO$_2$ and HR).  APPLE-1003, ¶[0166]; APPLE-1010, 3, FIG. 3; APPLE-1020, 3, 10; APPLE-1021, 31-36; APPLE-1022, 50-51.

As Mendelson-2006 explains, the "PDA can also serve to temporarily store vital medical information received from the wearable unit."  APPLE-1010, 3.  A POSITA would have understood that the vital medical information would have included measurements of the physiological parameters obtained by the physiological sensor device (e.g., SpO2 and HR).  APPLE-1003, ¶[0166]; APPLE-1010, 1-4, FIG. 3.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [1j].  APPLE-1003, ¶¶[0165]-[0168].

61

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

*Claim 2*

**[2] The physiological measurement system of claim 1, wherein the protruding convex surface is configured to be located between tissue of the user and the at least four detectors when the physiological measurement device is worn by the user.**

As discussed in [1pre]-[1j] and Sections IV.B.1-5, Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included a protruding convex surface that is configured to be located between tissue of the user and the at least four detectors when the physiological measurement device is worn by the user.  APPLE-1003, ¶¶[0089]-[0100], [0169]; APPLE-1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [2].  APPLE-1003, ¶¶[0169]-[0170].

*Claim 3*

**[3] The physiological measurement system of claim 2, wherein the at least four detectors comprise at least eight detectors.**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [3].  *Supra* [1pre]-[1c] and Sections IV.B.1-5.  APPLE-1003, ¶¶[0089]-[0100], [0171]; AP-PLE-1012, Abstract, 2:14-28, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8.

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

*Claim 4*

**[4] The physiological measurement system of claim 3, wherein at least part of the protruding convex surface is light permeable to allow light to reach at least one of the at least four detectors.**

As discussed in [1pre]-[1j], [2], [3], and Sections IV.B.1-5, Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included a transparent protruding convex cover configured to be located between tissue of the user and the array of discrete detectors when the sensor is worn by the user.  APPLE-1003, ¶¶[0089]-[0100], [0172]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

In accordance with the teachings of Ohsaki, and as shown below, the transparent cover would have been light permeable, so as to allow light to reach at least one of the at least four detectors.  APPLE-1003, ¶[0173]; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; *see also* APPLE-1012, 2:8-28, 9:22-40, FIGS. 3, 7; APPLE-1006, ¶[0030], FIG. 1(b).

63

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1012, FIG. 7 (annotated, with additional section view).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[4].  APPLE-1003, ¶¶[0172]-[0174].

Exhibit E
Page 208

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

_Claim 5_

**[5] The physiological measurement system of claim 4, wherein the physiological sensor device further comprises: an at least partially opaque layer blocking one or more optical paths to at least one of the at least four detectors, wherein the at least partially opaque layer comprises the windows that allow light to pass through to the corresponding detectors.**

As discussed in [1pre]-[1j] and [2]-[4] and Sections IV.B.1-5, and as shown below, Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included an opaque layer blocking one or more optical paths to at least one of the detectors, the opaque layer including windows that allow light to pass through to the corresponding detectors.  APPLE-1003, ¶¶[0089]-[0100], [0175]; APPLE-1013, ¶[0073], FIGS. 19A-19C; APPLE-1019, 79, 86, 94; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).

65

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1012, FIG. 7 (annotated, with additional section view).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[5].  APPLE-1003, ¶¶[0175]-[0176].


*Claim 6*

**[6] The physiological measurement system of claim 2, wherein the physiological sensor device further comprises: a substrate having a first surface, wherein the at least four detectors are arranged on the first surface.**

As discussed in [1pre]-[1d] and Sections IV.B.1-5, Mendelson-Ohsaki-

Schulz-Mendelson-2006 would have included "an array of discrete detectors (e.g.,

66

photodiodes)." APPLE-1012, Abstract, 2:14-28, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1003, ¶[0177].

As Mendelson-799 explains, sensors of the type "shown in FIG. 3" feature "LEDs and [a] photodetector [that] are both mounted side-by-side next to each other on the same planar substrate," which "allows for measuring SaO$_2$ from multiple convenient locations on the body…." APPLE-1012, 2:14-28. Similarly, a POSITA would have understood that Mendelson-799's FIG. 7 sensor features photodetectors and light emitting elements arranged on a first surface of a planar substrate. *See id.*, 9:22-10:30, FIG. 7; APPLE-1003, ¶[0178] (citing APPLE-1013, ¶[0073]; APPLE-1017, 4-3, 6, FIG. 2; APPLE-1018, 1-3, FIG. 1).

As such, and as shown below, a POSITA would have found it obvious to include a substrate having a first surface in the Mendelson-Ohsaki-Schulz-Mendelson-2006 sensor, with each of the detectors being arranged on that first surface. APPLE-1003, ¶¶[0089]-[0100], [0179].

67

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1012, FIG. 7 (annotated, with additional section view).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[6].  APPLE-1003, ¶¶[0177]-[0180].


_Claim 7_

**[7] The physiological measurement system of claim 6, wherein: the wall sur-
rounds at least the at least four detectors on the first surface, the wall operably
connects to the substrate on one side of the wall, and the wall operably connects
to the cover on an opposing side of the wall.**

As discussed in [1pre]-[1e] and [2]-[6] and Sections IV.B.1-5, and as shown

below, Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included a wall

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

surrounding the photodetectors, the wall being operably connected on one side to the substrate on which the detectors are arranged, and on an opposing side to a cover.  APPLE-1003, ¶¶[0062]-[0072], [0089]-[0100], [0181]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 3, 7, 8; APPLE-1019, 79, 86, 94; APPLE-1017, 4-3, 6, FIG. 2; APPLE-1018, 1-3, FIG. 1; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2; *see also* APPLE-1006, ¶¶[0023], [0024], FIG. 1(b).



APPLE-1012, FIG. 7 (annotated, with additional section view).

Exhibit E
Page 213

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[7].  APPLE-1003, ¶¶[0181]-[0182].

*Claim 8*

**[8] The physiological measurement system of claim 7, wherein the wall creates one or more gaps between the first surface of the substrate and a surface of the cover that is interior to the physiological sensor device, and wherein the at least four detectors are positioned on the first surface of the substrate within the one or more gaps.**

As discussed in [1pre]-[1e] and [2]-[7], Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included a wall surrounding the photodetectors, the wall being operably connected on one side to the substrate on which the detectors are arranged, and on an opposing side to a cover.   APPLE-1003, ¶¶[0062]-[0072], [0089]-[0100], [0183]; APPLE-1012, Abstract, 4:13-22, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 3, 7, 8; APPLE-1019, 79, 86, 94; APPLE-1017, 4-3, 6, FIG. 2; APPLE-1018, 1-3, FIG. 1; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2; APPLE-1006, ¶¶[0023], [0024], FIG. 1(b).

In the resulting configuration, and as shown below, the wall would have created a donut-shaped gap between the first surface of the substrate and a surface of the cover that is interior to the physiological sensor device, and each of the detectors would have been positioned on the first surface of the substrate within the gap.

70

Exhibit E
Page 214

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

APPLE-1003, ¶[0184]; APPLE-1012, 9:22-10:30, FIG. 7; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2; APPLE-1006, ¶¶[0023], [0024], FIG. 1(b).



APPLE-1012, FIG. 7 (annotated, with additional section view).

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [8]. APPLE-1003, ¶¶[0183]-[0185].

Exhibit E
Page 215

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

<u>*Claim 10*</u>

**[10] *The physiological measurement system of claim 7, wherein a surface of the handheld computing device positions the touch-screen display.***

As discussed in [1pre]-[1j], [2]-[8] and Sections IV.B.1-5, Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included a handheld computing device featuring a touch-screen display.  APPLE-1003, ¶¶[0100]-[0117], [0186].  As shown below, a surface of the PDA described by Mendelson-2006 positions the touch-screen display.  APPLE-1003, ¶[0186]; APPLE-1010, 1-2, FIG. 3; APPLE-1020, 1, 3.



APPLE-1010, FIG. 3 (left) and APPLE-1020, 1 (right).

Exhibit E
Page 216

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[10].  APPLE-1003, ¶¶[0186]-[0187].


### Claim 11

**[11] The physiological measurement system of claim 10, wherein the physiological parameter comprises at least one of: pulse rate, glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, or carbon monoxide.**

As discussed in [1pre]-[1j], [2]-[8], [10] and Sections IV.B.1-5, Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included a processor configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user. APPLE-1003, ¶¶[0100]-[0117], [0188]; APPLE-1012, Abstract, 7:61-8:12, 8:37-41, 9:23-10:37, FIGS. 7, 8; APPLE-1010, 1-4, FIG. 3.

Mendelson-799 discloses that the physiological parameters measured by sensor 10 and pulse oximeter 20 include oxygen saturation.  APPLE-1012, 10:16-37, 13:53-61; *see also* APPLE-1009, Abstract; APPLE-1010, 1.

Further, and as shown below, Mendelson-2006 discloses that the HP iPAQ h4150 PDA displays indicia responsive to measurements of physiological parameters that include $SpO_2$ and HR.  APPLE-1003, ¶[0190]; APPLE-1010, 2-3, FIG. 3.

73

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765



APPLE-1010, FIG. 3.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious

[11].  APPLE-1003, ¶¶[0188]-[0191].


## Claim 12

**[12] The physiological measurement system of claim 11, wherein the protruding convex surface protrudes a height between 1 millimeter and 3 millimeters.**

As discussed in [1pre]-[1j], [2]-[8], [10]-[11] and Sections IV.B.1-5, Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included a cover featuring a

Exhibit E
Page 218

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

protruding convex surface.  APPLE-1003, ¶¶[0089]-[0100], [0192]; APPLE-1012, Abstract, 9:22-10:30, FIG. 7; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

In more detail, and as shown below, the convex cover taught by Ohsaki is designed to be "in intimate contact with the surface of the user's skin," so as to prevent slippage of the detecting element on the user's wrist.  APPLE-1009, ¶¶[0009]-[0010], FIG. 2.



APPLE-1009, FIG. 2 (annotated).

In incorporating Ohsaki's teachings, a POSITA would have found it obvious that a device designed to fit on a user's wrist would be on the order of millimeters.

APPLE-1003, ¶[0194]; APPLE-1043, FIGS. 8-10, ¶¶[0074]-[0081] (distance between a lower surface of the watch housing and convex surface being 3 mm); APPLE-1010, 2 (describing its "optical reflectance transducer" as "small (∅ = 22mm)"); APPLE-1017, 2 (describing a "standard 24-pin (dimensions: 19 x 19 mm) microelectronic package" for its sensor); APPLE-1041, 9:40-65 (describing a protrusion on a biological measurement device that causes a subject's tissue to deform by a depth of about 2 to 20 mm) APPLE-1043, FIGS. 8-10, ¶¶[0074]-[0081] (distance between a lower surface of the watch housing and convex surface being 3 mm).  Additionally, the POSITA would have taken the user's comfort into consideration—Ohsaki's convex cover, for example, is said to solve the problem of "the user feel[ing] uncomfortable" due to pressure from the device and belt on the user's limbs.  APPLE-1003, ¶[0194], APPLE-1009, ¶[0006].

A POSITA would have found it obvious that in order to provide a comfortable cover that prevents slippage, the convex surface should protrude a height between 1 millimeter and 3 millimeters.  APPLE-1003, ¶[0195].  Indeed, there would have been a finite range of possible protruding heights, and it would have been obvious to select a protruding height that would have been comfortable to the user. *Id*.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [12].  APPLE-1003, ¶¶[0192]-[0196].

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

*Claim 13*

**[13] The physiological measurement system of claim 11, wherein at least one of the detectors is configured to detect light that has been attenuated by tissue of the user.**

As discussed in [1pre]-[1j] and Sections IV.B.1-5, and as shown below, Mendelson-799 describes "a sensor for use in a reflection-mode or backscatter type pulse oximeter" that "measures light backscattered from...tissue components."  APPLE-1012, FIGS. 3, 7, 6:20-22, 8:26-29, 8:56-59; *see also*, e.g., APPLE-1019, 34, 36, Fig. 3.10.



APPLE-1012, FIG. 3.

Accordingly, Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [13].  APPLE-1003, ¶¶[0197]-[0198].

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

*Claim 15*

***[15] The physiological measurement system of claim 13, wherein a portion of the physiological sensor device comprises one of at least two sizes, the two sizes intended to be appropriate for larger users and smaller users.***

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [15].  APPLE-1003, ¶¶[0199]-[0202].  For example, a POSITA would have found it obvious that a device designed to fit on a user's wrist could be of different sizes to accommodate different sizes of users.  *Id.*

By the Critical Date, it was well known that pulse oximetry and pulse rate monitoring devices could be strapped to the user's arm.  APPLE-1003, ¶[0200]; APPLE-1012, 2:14-27, 4:13-22; APPLE-1018, 1-3, FIG. 2; APPLE-1006, ¶[0026]. Ohsaki, for example, describes a "wristwatch-type human pulse wave sensor" that "is attached on the back side of the user's wrist by a dedicated belt [10]," as shown in Ohsaki's FIG. 1.  APPLE-1009, ¶¶[0009], [0018].



APPLE-1009, FIG. 1 (annotated).

78

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

In particular, Ohsaki's "detecting element 2 is fixed on the user's wrist 4 by a dedicated belt 10," "so that regular pressure is applied to the user's wrist."  AP-PLE-1009, ¶[0018].  A POSITA would have found it obvious to include an attachment feature, such as Ohsaki's belt 10, as part of the Mendelson-Ohsaki-Schulz-Mendelson-2006 sensor device, to enable that device to be secured on the user's wrist.  APPLE-1003, ¶[0201].

Furthermore, a POSITA would have been motivated to ensure user comfort, and would have found it obvious to modify the Mendelson-Ohsaki-Schulz-Mendelson-2006 sensor device to provide different sizes of components (e.g., Ohsaki's belt) for differently sized users, such that "regular pressure is applied to the user's [body]."  APPLE-1003, ¶[0202]; APPLE-1009, ¶¶[0006], [0018]; APPLE-1013, ¶¶[0034], [0057]; APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b).

*Claim 16*

**[16] The physiological measurement system of claim 13, wherein the at least four detectors are arranged such that a first detector and a second detector of the least four detectors are arranged across from each other on opposite sides of a central point along a first axis, and a third detector and a fourth detector of the least four detectors are arranged across from each other on opposite sides of the central point along a second axis which is different from the first axis.**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [16].  APPLE-1003, ¶[0203].  As shown below, Mendelson-799 discloses at least four detectors

79

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

arranged such that a first detector and a second detector of the least four detectors are arranged across from each other on opposite sides of a central point along a first axis, and a third detector and a fourth detector of the least four detectors are arranged across from each other on opposite sides of the central point along a second axis which is different from the first axis.  APPLE-1012, Abstract, 2:14-28, 7:25-8:13, 8:37-41, 9:22-10:30, FIGS. 7, 8.



APPLE-1012, FIG. 7 (annotated).

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

_Claim 20_

**[20] The physiological measurement system of claim 13, wherein the physiological parameter comprises a state or trend of wellness of the user.**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [20].  APPLE-1003, ¶¶[0204]-[0205].  As discussed in [1pre]-[1j], [2]-[8], [10], [11] and Sections IV.B.1-5, Mendelson-799, Ohsaki, and Mendelson-2006 each describe measuring physiological parameters such as a pulse wave signal, oxygen saturation, and heart rate.  APPLE-1003, ¶[0204]; APPLE-1012, Abstract, 7:61-8:12, 8:37-41, 9:23-10:37, 13:53-61, FIGS. 7, 8; APPLE-1009, Abstract; APPLE-1010, 1-4, FIG. 3.

The '765 Patent does not define "wellness", but a POSITA would have understood that the described measurements represent states or trends of wellness of the subject.  APPLE-1003, ¶[0205]; APPLE-1001, 2:15-20.  For example, a pulse wave signal provides information regarding a subject's pulse rate and a trend of the subject's pulse over time.  APPLE-1003, ¶[0205].

_Claim 21_

**[21pre] A physiological measurement system comprising:**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [21pre].  _See_ [1pre]-[1j], Sections IV.B.1-5, _supra_; APPLE-1003, ¶¶[0089]-[0122], [0206].

81

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

***[21a] a physiological sensor device comprising:***

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [21a]. *See* [1pre]-[1j], [21pre], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶¶[0089]-[0100], [0123]-[0124], [0207].

***[21b] one or more emitters configured to emit light into tissue of a user;***

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [21b]. *See* [1pre]-[1j], [21pre]-[21a], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶¶[0089]-[0100], [0125]-[0127], [0208].

***[21c] at least four detectors, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector;***

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [21c]. *See* [1pre]-[1j], [21pre]-[21b], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶¶[0089]-[0100], [0128]-[0131], [0209].

***[21d] a wall that surrounds at least the at least four detectors; and***

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [21d]. *See* [1pre]-[1j], [21pre]-[21c], Sections IV.B.1-5, *supra*; APPLE-1003, ¶¶[0089]-[0100], [0132]-[0136], [0210].

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

**[21e] a cover comprising a protruding convex surface, wherein the protruding convex surface is positioned such that the protruding convex surface is located between tissue of the user and all of the at least four detectors when the physiological sensor device is worn by the user, wherein at least a portion of the protruding convex surface is rigid, and wherein the cover operably connects to the wall; and**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [21e].  *See* [1pre]-[1j], [21pre]-[21d], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶¶[0089]-[0100], [0137]-[0144], [0211].

**[21f] a handheld computing device in wireless communication with the physiological sensor device.**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [21f].  *See* [1pre]-[1j], [21pre]-[21e], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶¶[0100]-[0117].

*Claim 22*

**[22a] The physiological measurement system of claim 21, wherein the handheld computing device comprises: one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user;**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [22a].  *See* [1pre]-[1j], [21pre]-[21f], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶¶[0100]-[0117], [0145]-[0156], [0213].

***[22b] a touch-screen display configured to provide a user interface, wherein:***

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [22b]. *See* [1pre]-[1j], [21pre]-[21f], [22a], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶¶[0100]-[0117], [0157]-[0164], [0214].

***[22c] the user interface is configured to display indicia responsive to measurements of the physiological parameter, and***

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [22c]. *See* [1pre]-[1j], [21pre]-[21f], and [22a]-[22b], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶¶[0100]-[0117], [0157]-[0164], [0215].

***[22d] an orientation of the user interface is configurable responsive to a user input; and***

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [22d]. *See* [1pre]-[1j], [21pre]-[21f], [22a]-[22c], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶¶[0100]-[0117], [0157]-[0164], [0216].

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

**[22e] a storage device configured to at least temporarily store at least the measurements of the physiological parameter.**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [22e].  *See* [1pre]-[1j], [21pre]-[21f], [22a]-[22d], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶¶[0100]-[0117], [0165]-[0167], [0217].

## *Claim 23*

**[23] The physiological measurement system of claim 22, wherein the at least four detectors comprise at least eight detectors.**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [23].  *See* [1pre]-[1j], [2]-[3], [21pre]-[21f], [22a]-[22e], and Sections IV.B.1-5, *supra*; AP-PLE-1003, ¶¶[0089]-[0100], [0171], [0218].

## *Claim 24*

**[24] The physiological measurement system of claim 23, wherein at least part of the protruding convex surface is light permeable to allow light to reach at least one of the at least four detectors.**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [24].  *See* [1pre]-[1j], [2]-[4], [21pre]-[21f], [22a]-[23], and Sections IV.B.1-5, *supra*, AP-PLE-1003, ¶¶[0089]-[0100], [0173], [0219].

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

*Claim 25*

***[25] The physiological measurement system of claim 23, wherein the physiological sensor device further comprises: an at least partially opaque layer blocking one or more optical paths to at least one of the at least four detectors, wherein the at least partially opaque layer comprises the windows that allow light to pass through to the corresponding detectors.***

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [25].  *See* [1pre]-[1j], [2]-[5], [21pre]-[21f], [22a]-[23], and Sections IV.B.1-5, *supra*; AP-PLE-1003, ¶¶[0089]-[0100], [0175]-[0176], [0220].

*Claim 26*

***[26] The physiological measurement system of claim 25, wherein the physiological sensor device further comprises: a substrate having a first surface, wherein the at least four detectors are arranged on the first surface, and wherein the wall surrounds at least the at least four detectors on the first surface, wherein: the wall operably connects to the substrate on one side of the wall, and the wall operably connects to the cover on an opposing side of the wall.***

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [26].  *See* [1pre]-[1j], [2]-[5], [21pre]-[21f], [22a]-[24], and Sections IV.B.1-5, *supra*; AP-PLE-1003, ¶¶[0089]-[0100], [0177]-[0180], [0221].

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

_Claim 27_

**[27] The physiological measurement system of claim 26, wherein a surface of
the handheld computing device positions the touch-screen display.**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [27].  _See_

[1pre]-[1j], [2]-[8], [10], [21pre]-[21f], [22a]-[26], and Sections IV.B.1-5, _supra_;

APPLE-1003, ¶¶[0100]-[0117], [0186]-[0187], [0222].

_Claim 28_

**[28] The physiological measurement system of claim 27, wherein the physiologi-
cal parameter comprises at least one of: pulse rate, glucose, oxygen, oxygen sat-
uration, methemoglobin, total hemoglobin, carboxyhemoglobin, carbon monox-
ide, or a state or trend of wellness of the user.**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [28].  _See_

[1pre]-[1j], [2]-[8], [10], [11], [13], [20], [21pre]-[21f], [22a]-[27], and Sections

IV.B.1-5, _supra_; APPLE-1003, ¶¶[0089]-[0117], [0188]-[0191], [0223].

_Claim 29_

**[29] The physiological measurement system of claim 28, wherein the protruding
convex surface protrudes a height greater than 2 millimeters and less than 3 mil-
limeters.**

Mendelson-Ohsaki-Schulz-Mendelson-2006 renders obvious [29].  _See_

[1pre]-[1j], [12], [18], [21pre]-[21f], [22a]-[28], and Sections IV.B.1-5, _supra_; AP-

PLE-1003, ¶¶[0089]-[0100], [0192]-[0196], [0224].

87

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

## C. GROUND 2: Claim 9 is obvious over Mendelson-799, Ohsaki, Schulz, Mendelson-2006, and Bergey

### 1. Overview of Bergey

Bergey discloses a wristwatch in which the "electronics are hermetically sealed in the watch case to be free of dust and moisture," producing "a unit that is shockproof and waterproof." APPLE-1016, Abstract, 2:56-67.

In further detail, Bergey discloses a method for sealing internal electronics that are "mounted on [the] circuit substrate" and "hermetically sealed all the way around between [an] inner cover[] and [a] front plate" within the watch case. AP-PLE-1016, 8:48-9:34. The seal "acts as protection to the electronics and also prevents condensation of water" within the case. *Id.*; APPLE-1003, ¶¶[0082]-[0083].



APPLE-1016, FIG. 7 (annotated).

88

## 2.    Combination of Mendelson-799, Ohsaki, Schulz, Mendelson-2006 and Bergey

It was well known by the Critical Date that internal electronics within user-worn devices could be "hermetically sealed in the…case to be free of dust and moisture," and that "sealed components [could be] resiliently mounted for improved shock resistance." *Id.*, ¶[0225]; APPLE-1016, Abstract.

Bergey's teachings on protecting electronics within a case would have motivated a POSITA to modify Mendelson-Ohsaki-Schulz-Mendelson-2006 to hermetically seal internal components, including the "array of discrete detectors," using the substrate, wall, and cover.  APPLE-1003, ¶[0226]; APPLE-1016, Abstract, 2:56-67, 8:48-9:34; APPLE-1012, Title, Abstract, 9:22-40, 10:16-37, FIGS. 7, 8; APPLE-1009, Title, Abstract, ¶¶[0016], [0017], FIGS. 1, 2.

Indeed, a POSITA would have understood that the benefits of hermetically sealing internal electronics of a wristwatch would have applied directly to hermetically sealing internal electronics of a physiological sensing system that is similarly configured to be worn by a user (e.g., on the wrist).  APPLE-1003, ¶[0227].  It would have been well within the knowledge and skill of a POSITA to configure the substrate, the wall, and the cover in the Mendelson-Ohsaki-Schulz-Mendelson-2006 combination to hermetically seal the detectors.  APPLE-1003, ¶¶[0227].

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

*Claim 9*

**[9] The physiological measurement system of claim 7, wherein the substrate, the wall, and the cover together hermetically seal the at least four detectors.**

Mendelson-Ohsaki-Schulz-Mendelson-2006-Bergey renders obvious [9].

*See* [1pre]-[1j], [2]-[8], and Sections IV.B.1-5, IV.C.1-2, *supra*; APPLE-1003, ¶¶ [0225]-[0228].  As explained in Sections IV.C.1-2, Bergey would have motivated a POSITA to hermetically the internal components of the Mendelson-Ohsaki-Schulz-Mendelson-2006 sensor, including "an array of discrete detectors (e.g., photodiodes)," within the cover, wall, and substrate.  APPLE-1003, ¶[0228]; AP-PLE-1016, Abstract, 2:56-67, 8:48-9:34, FIG. 7; APPLE-1012, Title, Abstract, 9:22-40, 10:16-37, FIGS. 7, 8.



APPLE-1016, FIG. 7 (annotated).

Exhibit E
Page 234

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

### D. GROUND 3: Claim 14 is obvious over Mendelson-799, Ohsaki, Schulz, Mendelson-2006, and Goldsmith

#### 1.    Overview of Goldsmith

Goldsmith discloses a watch controller device 900.  APPLE-1011, ¶¶[0085], [0098], [0104], [0010], claim 6, FIGS. 9A, 9B.  As depicted in Goldsmith's FIGS. 9A and 9B (reproduced below), device 900 can be "used with any number of...diagnostic devices" and sensors to obtain various physiological measurements, such as user temperature, blood glucose level, and oxygen level.  APPLE-1011, ¶¶[0082]-[0084], [0095], [0037], [0038], claims 25, 26.



APPLE-1011, FIGS. 9A, 9B.

Exhibit E
Page 235

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

In more detail, Goldsmith's device 900 includes a display 910 for displaying data "received from a sensor transmitter on the patient's skin," from "any number of therapy/diagnostic devices," and/or from user input. *Id*., ¶¶[0082], [0087], [0095], [0102]. Goldsmith's device can, for example, conveniently monitor and display "heart rate…as in an exercise monitor," and may monitor and display "the patient's temperature, salinity (from sweat), ketones, or other characteristic[s]." *Id*., ¶¶[0002], [0013], [0014], [0035]-[0037], [0082], [0088], [0095]; APPLE-1003, ¶¶[0084]-[0085].

## 2.     Combination of Mendelson-799, Ohsaki, Schulz, Mendelson-2006 and Goldsmith

Goldsmith's teachings would have motivated a POSITA to modify Mendelson-Ohsaki-Schulz-Mendelson-2006 to display the user's temperature, so as to obtain the advantages of providing multiple physiological measurements in a single integrated device, to "provide convenience and ease of use," and to "make the monitoring procedure fast and accurate." APPLE-1003, ¶¶[0084]-[0085], [0229]; APPLE-1011, ¶¶[0011], [0087], [0095], [0102]. A POSITA would have understood that a user's temperature, like $SaO_2$, represents a state or trend of wellness of the subject, and would have thus been motivated to include the user temperature along with $SaO_2$ as displayed indicia in Mendelson-Ohsaki-Schulz-Mendelson-2006. APPLE-1038, 47:61-48:4; APPLE-1003, ¶[0229].

92

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

Consistent with Mendelson-2006's description of the PDA's "simple GUI" being configured to allow for "easy activation of various functions," the POSITA would have adapted the Mendelson-Ohsaki-Schulz-Mendelson-2006-Goldsmith combination "to monitor the patient's temperature" to "provide convenience and ease of use." APPLE-1003, ¶[0230]; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1011, ¶[0002], [0011], [0037], [0095]; APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8.

### *Claim 14*

**[14] The physiological measurement system of claim 13, wherein the displayed indicia are further responsive to temperature.**

Mendelson-Ohsaki-Schulz-Mendelson-2006 and Mendelson-Ohsaki-Schulz-Mendelson-2006-Goldsmith each render obvious [14]. APPLE-1003, ¶¶[0229]-[0233].

First, to the extent that providing a displayed indicia that is *further* responsive to temperature means a device in which a user's temperature directly affects the displayed indicia (e.g., a $SaO_2$ reading), it would have been obvious that Mendelson-Ohsaki-Schulz-Mendelson-2006 alone provides this feature. APPLE-1003, ¶[0232]. Indeed, a reference mentioned in Medelson-799 describes a "temperature-controlled" sensor and also explains that "locally heating the skin" provides stronger $SaO_2$ readings. APPLE-1018, 2. And, as discussed in [1pre]-[1j] and

93

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

Sections IV.B.1-5, Mendelson-Ohsaki-Schulz-Mendelson-2006 would have included a user interface that provides a "simple GUI" that displays indicia responsive to a user input.  APPLE-1003, ¶¶[0100]-[0117], [0232]; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 3; APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS. 7, 8; APPLE-1020, 1-4.

However, to the extent that providing a displayed indicia that is *further* responsive to temperature means that the device displays a user temperature, it would have also been obvious to a POSITA to modify Mendelson-Ohsaki-Schulz-Mendelson-2006, based on Goldsmith's teachings, to display the user's temperature as discussed above in Sections IV.D.1-2.  APPLE-1003, ¶¶[0229]-[0233]; APPLE-1011, ¶¶[0011], [0087], [0095], [0102].

## E. GROUND 4: Claims 17-19 are obvious over Mendelson-799, Ohsaki, Schulz, Mendelson-2006, and Aizawa

### 1.     Overview of Aizawa

Aizawa discloses a "pulse wave sensor…detecting light output from a light emitting diode and reflected from the artery of a wrist of a subject."  APPLE-1006, Abstract.  As shown in Aizawa's FIGS. 1(a) and 4(a), the sensor features "an LED 21" and "photodetectors 22 disposed symmetrically on a circle concentric to the LED 21," with the photodetectors being arranged across from each other in cross-

94

shaped configurations.  APPLE-1006, ¶¶[0023], [0032]; APPLE-1003, ¶¶[0086]-

[0088].



APPLE-1006, FIG. 1(a) (annotated)



APPLE-1006, FIG. 4(a) (annotated)

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

Regarding FIG. 4(a), Aizawa explains that to "the number of the photodetectors 22 may be increased" to "further improve detection efficiency." *Id*., ¶¶[0023], [0020].

### 2.      Combination of Mendelson-799, Ohsaki, Schulz, Mendelson-2006 and Aizawa

Pulse oximetry and heart rate sensors featuring a variety of detector arrangements, including detectors configured in a cross pattern, were well known before the Critical Date.  APPLE-1003, ¶¶[0086]-[0088], [0234].  In implementing Mendelson-Ohsaki-Schulz-Mendelson-2006, a POSITA would have looked to other prior art, such as Aizawa, for suitable detector configurations, since Aizawa similarly relates to a sensor device that detects light reflected from a user's wrist.  APPLE-1003, ¶[0235].

As Aizawa notes, "the number of the photodetectors 22 may be increased" to "further improve detection efficiency." *Id*., ¶¶[0023], [0020].  And, as shown below in FIG. 4(a), in increasing the number of photodetectors from four to eight, Aizawa maintained a sensor configuration in which first, second, third and fourth detectors form a cross pattern about a central point.  APPLE-1006, ¶¶[0023], [0020], FIGS. 1(a), 4(a); APPLE-1003, ¶[0235].   A POSITA would have recognized that such a pattern allows for an efficient use of the available space on Aizawa's substrate.  APPLE-1003, ¶[0235].

96

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

FIG. 4 (a)



APPLE-1006, FIG. 4(a) (annotated)

Similarly, a POSITA would have been motivated by Aizawa to "improv[e] detection efficiency" by modifying Mendelson-Ohsaki-Schulz-Mendelson-2006 to increase the number of photodiode pairs in the sensor to eight, in a configuration similar to that taught by Aizawa.  APPLE-1003, ¶[0236]; APPLE-1006, ¶¶[0023], [0020], FIG. 4(a); *see also* APPLE-1012, 41-45 ("number of photodetectors in each ring is ***not*** limited").  Furthermore, a POSITA would have recognized other benefits of increasing the number of photodetectors, such as increasing detection of "the total amount of backscattered light" and obtaining "improvements in signal-to-noise ratio."  APPLE-1012, 4:1-13; APPLE-1003, ¶¶[0236]-[0237].

Exhibit E
Page 241

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

As shown below, Mendelson-Ohsaki-Schulz-Mendelson-2006 further modified in view of Aizawa to include more discrete detectors (e.g., eight "far" detectors 16 and eight "near" detectors 18) in a "radially-symmetric photodetector array" would exhibit a cross-shaped configuration.  APPLE-1012, 7:25-37, 4:59-62.



APPLE-1012, FIG. 7 (annotated, further modified in view of Aizawa)

_Claim 17_

 **[17] The physiological measurement system of claim 16, wherein the first axis is perpendicular to the second axis, and wherein the first, second, third and fourth detectors form a cross pattern about the central point.**

Mendelson-Ohsaki-Schulz-Mendelson-2006-Aizawa renders obvious [17].  APPLE-1003, ¶¶[0234]-[0239].  As explained in Sections IV.B.1.5 and IV.E.1-2, a POSITA would have been motivated by Aizawa to modify Mendelson-Ohsaki-

98

Schulz-Mendelson-2006 to provide a sensor in which a first axis is perpendicular to a second axis, and in which the first, second, third and fourth detectors form a cross pattern about the central point.  *See* [1pre]-[1j], [2]-[16], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶¶[0234]-[0239].



APPLE-1012, FIG. 7 (annotated, further modified in view of Aizawa).

## Claim 18

**[18] The physiological measurement system of claim 17, wherein the protruding convex surface protrudes a height greater than 2 millimeters and less than 3 millimeters..**

Mendelson-Ohsaki-Schulz-Mendelson-2006-Aizawa renders obvious [18].

*See* [1pre]-[1j], [2]-[17], and Sections IV.B.1-5 and IV.E.1-2, *supra*; APPLE-1003,

¶¶[0089]-[0100], [0192]-[0196], [0234]-[0240].

## Claim 19

**[19] The physiological measurement system of claim 18, wherein the attenuated light is reflected by the tissue.**

Mendelson-Ohsaki-Schulz-Mendelson-2006-Aizawa renders obvious [19].

*See* [1pre]-[1j], [2]-[18], and Sections IV.B.1-5 and IV.E.1-2, *supra*; APPLE-1003,

¶¶[0089]-[0117], [0234]-[0241].

## V.   PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION

The *NHK-Fintiv* rule should not be applied because it violates the AIA,

which allows IPR to proceed in tandem with infringement litigation so long as the

petition is filed within one year of service of a complaint of infringement.  See 35

U.S.C. § 315(b).  The rule also is arbitrary and capricious because its vague factors

lead to speculative, unpredictable, and unfair outcomes.  Further, the rule is proce-

durally invalid because it was not adopted through notice-and-comment rulemak-

ing.

However, consistent with Congressional intent and goals of *NHK-Fintiv*,

Apple asks the Board alone to consider challenges raised in this Petition.  *Apple*

*Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11, 6 (PTAB 2020).

Unlike *NHK*, there is no basis for discretionary denial of this Petition under

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

§ 325(d), which would only be appropriate if the same or substantially the same art or arguments were previously presented to the Office. *Advanced Bionics LLC v. MED-EL Elektromedizinische Gerate GmbH*, IPR2019-01469 Pap. 6, 8-10 (PTAB Feb. 13, 2020)(precedential). The arguments advanced in this Petition are premised on combinations of references that were never presented to the Office in connection with the '765 Patent. Mendelson-799 does appear as one among hundreds of listed references, but there is no indication that it was considered by the examiner. *See, generally,* APPLE-1002.

Moreover, and as explained below, *Fintiv* favors institution.

## A.    Factor 1: Institution Will Increase Likelihood of Stay

Institution will enable the Board to resolve the issue of validity, and a finding of invalidity will relieve the Central District of California (the "District Court") of the need to continue with the companion litigation. Apple moved to stay the District Court case, and the opportunity for such simplification increases the likelihood that the court will grant a stay in view of IPR institution. *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case No. 2:16-cv-642-JRG, 2-3 (E.D. Tex. 2017); *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 13-CV-1058, 2015 WL 1069111 (E.D. Tex. 2015).

## B.    Factor 2: District Court Schedule

Trial in the District Court case is scheduled for April 5, 2022. APPLE-1031,

Exhibit E
Page 245

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

1.  Based on the 18-month IPR schedule, a Final Written Decision ("FWD") in an

IPR arising from the present Petition would issue in early April of 2022, near the

District Court trial date.

However, as in *NHK*, district court trial dates shift, even in normal times.

*Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap.

22, 17 (PTAB 2019).  The District Court is one of the country's busiest patent

courts, and the trial date of a case in the District Court that is before the same judge

and in which Patent Owner is a plaintiff has recently been postponed by approxi-

mately ten months.  APPLE-1036, 2.  Scheduling issues cannot be ruled out, as ex-

perts have professed that additional COVID-19 outbreaks are likely to arise and

California is facing new outbreaks.  APPLE-1034, 1 ("Fauci says second wave of

coronavirus is 'inevitable'"); APPLE-1035, 4 ("Los Angeles County is currently"

at "275 [cases] per 100,000 [residents]," which is higher than the recommended

level (100 per 100,000) for reopening); And, as the Board recently found when

granting institution in *Juniper Networks, Inc. et al. v. Packet Intelligence LLC*, "it

is more likely that the District Court will incur delays due to the COVID-19 pan-

demic than the Board."  IPR2020-00388 Pap. 22 at 14 (Sept. 9, 2020)(district court

trial scheduled to begin before statutory FWD date).

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

### C.    Factor 3: Apple's Investment in IPR Outweighs Forced Investment in Litigation to Date

District court proceedings are still at an early phase.  The parties have yet to file claim construction briefs, no claim construction orders have issued, and the *Markman* hearing is not scheduled until February 8, 2021.  APPLE-1031, 1.  In addition, discovery is not scheduled to close until July 5, 2021.  *Id.*

Apple's substantial investment in these IPR proceedings should counterbalance—if not outweigh—the resources invested in the co-pending litigation given the speed with which Apple is filing IPR petitions on over two-hundred fifty claims across thirteen patents.  It would be unjust to consider resources expended in District Court (equally by both parties), without considering Apple resources expended to prepare seventeen IPR petitions that would be irretrievably lost without consideration on the merits, in addition to the extensive expenses that may be foregone through institution of Apple's petitions and that will otherwise certainly follow in co-pending litigation for which significant milestones exist.

Moreover, Masimo did not assert the '765 patent against Apple until July 24, 2020, and Apple prepared and filed the instant petition challenging the '765 patent within nine weeks of that date, many months ahead of the statutory period provided by Congress under § 315(b).  *See* APPLE-1037.  In context, it is laudable that Apple was able to muster the resources necessary to file this petition within that timeframe.  *Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH,*

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

IPR2018-01680, Pap. 22, 18 (PTAB Apr. 3, 2019)(finding that petition filed two

months before bar date is "well within the timeframe allowed by statute, weighing

heavily in [petitioner's] favor").

### D.   Factor 4: The Petition Raises Unique Issues

Consistent with *Fintiv*, Apple asks the Board to consider the unique chal-

lenges raised in the Petition. Apple has voluntarily stipulated to counsel for Patent

Owner that, if the Board institutes the present Petition, Apple will not assert that

the Challenged Claims are invalid on the pending Petition's asserted grounds in

*Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.). AP-

PLE-1032, 1; *see*, *e.g.*, *Apple v. Seven* at 15-17 (finding that such a stipulation by a

petitioner "mitigates, at least to some degree, the concerns of duplicative efforts

between the district court and the Board, as well as concerns of potentially con-

flicting decisions").

In addition, the Petition addresses claims that will not be addressed in Dis-

trict Court.  Although Patent Owner has not yet narrowed the asserted claims, the

District Court recently ordered the parties to submit a "Joint Claim Narrowing Pro-

posal" by November 23, 2020.  *See* APPLE-1033, 1; APPLE-1040, 1-3.  Thus,

based on this ordered reduction in the asserted claims, the District Court will nec-

essarily address fewer claims than are challenged in this Petition (which challenges

all claims of the patent), even assuming the District Court addresses validity at all,

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

which is presently unknowable.  *See, e.g., Apple v. Seven* at 18.

In short, grounds in this Petition are unique, and will not be addressed in
District Court.  *See*, *e.g.*, *Apple v. Seven* at 15-20 (weighing this factor against ex-
ercising 314(a) discretion where a petitioner challenged several unasserted claims
and stipulated that it would not pursue the IPR grounds in the co-pending litiga-
tion).

### E.    Factor 5: The Petition Enables the Board to Resolve Invalidity of Claims that Might Otherwise be Reasserted

Apple's Petition is potentially helpful to future defendants.  For at least this
reason, Apple's status as both Petitioner and defendant is, at worst, a neutral factor.
Taking the relevant circumstances into account, institution would serve overall ef-
ficiency and integrity, enabling the Board to determine invalidity of claims that Pa-
tent Owner might otherwise later assert against others.

### F.    Factor 6: Other Circumstances Support Institution

As *Fintiv* noted, "the factors ... are part of a balanced assessment of all the
relevant circumstances in the case," and, "if the merits of a ground raised in the pe-
tition seem particularly strong … the institution of a trial may serve the interest of
overall system efficiency and integrity …." *Fintiv*, 14-15.  As explained in the Pe-
tition (and Dr. Kenny's testimony), institution would result in invalidation of the
Challenged Claims.

## VI.   CONCLUSION

The cited prior art references provided herein disclose or render obvious the

Challenged Claims of the '765 patent.  APPLE-1003, ¶[0020].  Accordingly, Apple

respectfully requests institution of an IPR for the Challenged Claims.

## VII.   PAYMENT OF FEES – 37 C.F.R. § 42.103

Apple authorizes the Patent and Trademark Office to charge Deposit Ac-

count No. 06-1050 for the fee set in 37 C.F.R. § 42.15(a) for this Petition and fur-

ther authorizes payment for any additional fees to be charged to this Deposit Ac-

count.

Respectfully submitted,


Dated  September 30, 2020          /W. Karl Renner/
                                   W. Karl Renner, Reg. No. 41,265
                                   Andrew B. Patrick, Reg. No. 63,471
                                   Usman Khan, Reg. No. 70,439
                                   Grace J. Kim, Reg. No. 71,977
                                   Fish & Richardson P.C.
                                   3200 RBC Plaza, 60 South Sixth Street
                                   Minneapolis, MN 55402
                                   T: 202-783-5070
                                   F: 877-769-7945

(Control No. IPR2020-01714)        Attorneys for Petitioner

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

## CERTIFICATION UNDER 37 CFR § 42.24

Under the provisions of 37 CFR § 42.24(d), the undersigned hereby certifies

that the word count for the foregoing Petition for *Inter partes* Review totals 13,975

words, which is less than the 14,000 allowed under 37 CFR § 42.24.


Dated  September 30, 2020          /W. Karl Renner/
                                   W. Karl Renner, Reg. No. 41,265
                                   Andrew B. Patrick, Reg. No. 63,471
                                   Usman Khan, Reg. No. 70,439
                                   Grace J. Kim, Reg. No. 71,977
                                   Fish & Richardson P.C.
                                   3200 RBC Plaza, 60 South Sixth Street
                                   Minneapolis, MN 55402
                                   T: 202-783-5070
                                   F: 877-769-7945

                                   Attorneys for Petitioner

Attorney Docket No. 50095-0024IP1
IPR of U.S. Patent No. 10,631,765

# CERTIFICATE OF SERVICE

Pursuant to 37 CFR §§ 42.6(e)(4)(i) *et seq.* and 42.105(b), the undersigned

certifies that on September 30, 2020, a complete and entire copy of this Petition for

*Inter partes* Review and all supporting exhibits were provided via Federal Express,

to the Patent Owner by serving the correspondence address of record as follows:

KNOBBE, MARTENS, OLSON & BEAR, LLP
MASIMO CORPORATION (MASIMO)
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE CA 92614

/Diana Bradley/
Diana Bradley
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
(858) 678-5667

# Exhibit F

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent of:    Jeroen Poeze, et al.
U.S. Patent No.:    10,631,765             Attorney Docket No.:  50095-0024IP2
Issue Date:         April 28, 2020
Appl. Serial No.:   16/725,478
Filing Date:        December 23, 2019
Title:              MULTI-STREAM DATA COLLECTION SYSTEM FOR NONIN-
                    VASIVE MEASUREMENT OF BLOOD CONSTITUENTS

**Mail Stop Patent Board**
Patent Trial and Appeal Board
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

## PETITION FOR *INTER PARTES* REVIEW OF UNITED STATES PATENT NO. 10,631,765 PURSUANT TO 35 U.S.C. §§ 311–319, 37 C.F.R. § 42

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

# TABLE OF CONTENTS

I.   MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1)............................3
     A.   Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1).......................3
     B.   Related Matters Under 37 C.F.R. § 42.8(b)(2) .............................3
     C.   Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3)....................4
     D.   Service Information ...................................................5

II.  PETITIONER HAS STANDING TO REQUEST IPR ..................................5

III. OVERVIEW OF THE '765 PATENT ...........................................5
     A.   Brief Description.....................................................5
     B.   Level of Ordinary Skill in the Art...................................8
     C.   Claim Construction ..................................................9

IV.  APPLICATION OF PRIOR ART TO THE '765 PATENT CLAIMS...........9
     A.   Asserted Grounds and References .....................................9
     B.   GROUND 1: Claims 1-8, 10-13, and 15-29 are obvious over Aizawa,
          Inokawa, Ohsaki, and Mendelson-2006 ...............................11
          1.   Overview of Aizawa...........................................11
          2.   Overview of Inokawa .........................................13
          3.   Overview of Ohsaki...........................................16
          4.   Overview of Mendelson-2006...................................17
          5.   Combination of Aizawa, Inokawa, Ohsaki, and Mendelson-2006
               ..............................................................19
          6.   Analysis .....................................................38
     C.   GROUND 2: Claim 9 is obvious over Aizawa, Inokawa, Ohsaki,
          Mendelson-2006, and Bergey .......................................93
          1.   Overview of Bergey...........................................93
          2.   Combination of Aizawa, Inokawa, Ohsaki, Mendelson-2006 and
               Bergey.......................................................94
     D.   GROUND 3: Claim 14 is obvious over Aizawa, Inokawa, Ohsaki,
          Mendelson-2006, and Goldsmith.....................................96
          1.   Overview of Goldsmith........................................96
          2.   Combination of Aizawa, Inokawa, Ohsaki, Mendelson-2006 and
               Goldsmith ...................................................98

V.   PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION........101

VI.  CONCLUSION.............................................................106

VII. PAYMENT OF FEES – 37 C.F.R. § 42.103.................................107

i

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

# EXHIBITS

| | |
|---|---|
| APPLE-1001 | U.S. Patent No. 10,631,765 |
| APPLE-1002 | File History for the '765 Patent |
| APPLE-1003 | Declaration of Dr. Kenny |
| APPLE-1004 | Curriculum Vitae of Dr. Kenny |
| APPLE-1005 | *Masimo Corporation, et al. v. Apple Inc.*, Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.) |
| APPLE-1006 | US Pub. No. 2002/0188210 ("Aizawa") |
| APPLE-1007 | JP Pub. No. 2006/296564 ("Inokawa") |
| APPLE-1008 | Certified English Translation of Inokawa and Translator's Declaration |
| APPLE-1009 | US Pub. No. 2001/0056243 ("Ohsaki") |
| APPLE-1010 | "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Y. Mendelson, et al.; Proceedings of the 28th IEEE EMBS Annual International Conference, 2006; pp. 912-915 ("Mendelson-2006") |
| APPLE-1011 | US Pub. No. US 2007/0093786 ("Goldsmith") |
| APPLE-1012 | US Patent No. 6,801,799 ("Mendelson-799") |
| APPLE-1013 | US Pub. No. 2004/0054291 ("Schulz") |
| APPLE-1014 | RESERVED |
| APPLE-1015 | RESERVED |
| APPLE-1016 | US Patent No. 3,789,601 ("Bergey") |

ii

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

| APPLE-1017 | "Design and Evaluation of a New Reflectance Pulse Oximeter Sensor," Y. Mendelson, et al.; Worcester Polytechnic Institute, Biomedical Engineering Program, Worcester, MA 01609; Association for the Advancement of Medical Instrumentation, vol. 22, No. 4, 1988; pp. 167-173 ("Mendelson-1988") |
|---|---|
| APPLE-1018 | "Skin Reflectance Pulse Oximetry: In Vivo Measurements from the Forearm and Calf," Y. Mendelson, et al.; Journal of Clinical Monitoring, vol. 7, No. 1, January 1991 ("Mendelson 1991") |
| APPLE-1019 | Excerpts from Design of Pulse Oximeters, J.G. Webster; Institution of Physics Publishing, 1997 ("Webster") |
| APPLE-1020 | QuickSpecs; HP iPAQ Pocket PC h4150 Series |
| APPLE-1021 | Excerpts from How to Do Everything with Windows Mobile, Frank McPherson; McGraw Hill, 2006 ("McPherson") |
| APPLE-1022 | Excerpts from Master Visually Windows Mobile 2003, Bill Landon, et al.; Wiley Publishing, Inc., 2004 ("Landon") |
| APPLE-1023 | "Stimulating Student Learning with a Novel 'In-House' Pulse Oximeter Design," J. Yao and S. Warren; Proceedings of the 2005 American Society for Engineering Education Annual Conference & Exposition, 2005 ("Yao") |
| APPLE-1024 | US Pub. No. 2008/0194932 ("Ayers") |
| APPLE-1025 | U.S. Patent No. 7,031,728 ("Beyer") |
| APPLE-1026 | RESERVED |
| APPLE-1027 | National Instruments LabVIEW User Manual |
| APPLE-1028 to 1030 | RESERVED |
| APPLE-1031 | Scheduling Order, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 37 (April 17, 2020) |

| APPLE-1032 | Stipulation by Apple |
|---|---|
| APPLE-1033 | Telephonic Status Conference, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 78 (July 13, 2020) |
| APPLE-1034 | Joseph Guzman, "Fauci says second wave of coronavirus is 'inevitable'", TheHill.com (Apr. 29, 2020), available at: https://thehill.com/changing-america/resilience/natural-disasters/495211-fauci-says-second-wave-of-coronavirus-is |
| APPLE-1035 | "Tracking the coronavirus in Los Angeles County," LATimes.com (Aug. 20, 2020), available at https://www.latimes.com/projects/california-coronavirus-cases-tracking-outbreak/los-angeles-county/ |
| APPLE-1036 | Order Amending Scheduling Order, Masimo et al. v. True Wearables et al., Case 8:18-CV-02001 (July 7, 2020) |
| APPLE-1037 | *Masimo Corporation, et al. v. Apple Inc.*, Second Amended Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.) |
| APPLE-1038 | U.S. Patent No. 7,558,622 ("Tran") |
| APPLE-1039 | Declaration of Jacob R. Munford |
| APPLE-1040 | Order Granting Stipulation to Amend the Scheduling Order, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 201 (September 21, 2020) |
| APPLE-1041 | U.S. Patent No. 7,251,513 ("Kondoh") |
| APPLE-1042 | JP Pub. No. 2005-270543 ("Tanagi") |
| APPLE-1043 | Certified English Translation of Tanagi and Translator's Declaration |

iv

Apple Inc. ("Petitioner" or "Apple") petitions for *Inter Partes* Review ("IPR") under 35 U.S.C. §§ 311–319 and 37 C.F.R. § 42 of claims 1–29 ("the Challenged Claims") of U.S. Patent No. 10,631,765 ("the '765 Patent"). As explained in this petition, there exists a reasonable likelihood that Apple will prevail with respect to at least one of the Challenged Claims.

The '765 Patent describes and claims a purported improvement to a "physiological sensor device" included within a "physiological measurement system": a cover with a rigid "protruding convex surface" that is configured to be located above "at least four" detectors. APPLE-1001, 10:61-11:14, 14:3-10, 24:16-35, 36:30-41, 44:51-45:15 (claim 1), FIGS. 1, 14D. Each detector "can be implemented using one or more photodiodes, phototransistors, or the like," "can capture and measure light transmitted from [an] emitter…that has been attenuated or reflected from the tissue," and can "output a detector signal…responsive to the light…."

The claimed sensor was not new. To the contrary, the '765 Patent was granted without full consideration to the wide body of applicable prior art. *See generally* APPLE-1002. And, as Dr. Thomas Kenny explains in his accompanying declaration, devices incorporating pulse rate detectors and pulse oximeters with covers were already known by the '765 Patent's earliest effective filing date, and each feature recited in the Challenged Claims would have been obvious to a

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

POSITA.  APPLE-1003, ¶¶[20], [111]-[123]; APPLE-1001, 44:50-47:22.

For example, Aizawa (APPLE-1006) describes a pulse wave sensor featuring "four photodetectors" disposed around a central light source and a "holder" that secures the light source and photodetectors.  APPLE-1006, FIGS. 1(a), 1(b). And, similar to the '765 Patent, Ohsaki (APPLE-1009) renders obvious an optical sensor that features a cover with a protruding convex surface that is placed "in intimate contact with the surface of the user's skin" when the sensor is worn.  APPLE-1009, Title, Abstract, ¶¶[0016], [0017], FIGS. 1, 2.  Ohsaki is not alone, as Inokawa (APPLE-1007, APPLE-1008) and other references likewise render obvious covers with protruding convex surfaces for use in optical sensors. APPLE-1008, ¶¶14-15, FIGS. 2, 3.  And, as Dr. Kenny explains, a POSITA would have found it obvious to utilize such a cover in Aizawa's sensor.  APPLE-1003, ¶¶[98]-[102].

In addition to the "physiological sensor device" described above, the '765 Patent's claimed "physiological measurement system" includes "a handheld computing device in wireless communication with the physiological sensor device." *See*, *e.g.*, APPLE-1001, 44:51-45:15 (claim 1).

Yet, physiological sensor devices commonly communicated with handheld computing devices by the '765 Patent's earliest effective filing date.  Mendelson-2006, for example, describes a "wireless wearable pulse oximeter" system in which a body-worn pulse oximeter communicates wirelessly with a PDA.  APPLE-1010,

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

Abstract, 1-4, FIGS. 1-3.  Moreover, and as Dr. Kenny explains, the claimed "handheld computing device" is a generic computing device, and each of its recited components are generic computing components.  APPLE-1003, ¶¶[58]-[60]; APPLE-1001, 2:45-48, 15:60-16:11, 18:9-28, FIGS. 1, 2D.

The Challenged Claims are unpatentable based on teachings set forth in at least the references presented in this Petition.  Apple respectfully submits that an IPR should be instituted, and that the Challenged Claims should be canceled as unpatentable.

# I.  MANDATORY NOTICES UNDER 37 C.F.R § 42.8(a)(1)

## A. Real Party-In-Interest Under 37 C.F.R. § 42.8(b)(1)

Apple Inc. is the real party-in-interest (RPI).

## B. Related Matters Under 37 C.F.R. § 42.8(b)(2)

Patent Owner filed a second amended complaint on July 24, 2020 in the U.S. District Court for the Central District of California (CDCA) (Case No. 8:20-cv-00048) against Apple, in which Masimo alleged, for the first time, infringement of the '765 Patent by Apple.  The initial complaint in the case, which did not allege infringement of the '765 patent, was served to Apple on January 13, 2020.

This Petition is being filed concurrently with another petition for IPR of the

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

'765 Patent (IPR2020-01714),[1] and IPRs challenging claims of related U.S. Patents 10,702,194, 10,702,195, 10,709,366, and 10,624,564 are being filed concurrently or imminently.  No other petitions for IPR of the '765 Patent have been filed.  On August 31, 2020, Apple filed petitions for IPR of related U.S. Patents 10,258,265 (IPR2020-01520), 10,588,553 (IPR2020-01536 and IPR2020-01537).  On September 2, 2020, Apple filed petitions for IPR of related U.S. Patents 10,292,628 (IPR2020-01521) and 10,588,554 (IPR2020-01538 and IPR2020-01539).

## C. Lead And Back-Up Counsel Under 37 C.F.R. § 42.8(b)(3)

Apple provides the following designation of counsel.

| Lead Counsel | Backup counsel |
|---|---|
| W. Karl Renner, Reg. No. 41,265<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email: IPR50095-0024IP2@fr.com | Andrew B. Patrick, Reg. No. 63,471<br>Usman Khan, Reg. No. 70,439<br>Grace J. Kim, Reg. No. 71,977<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>PTABInbound@fr.com |

---

[1] Pursuant to the Trial Practice Guide, both petitions for IPR of the '765 Patent are being filed with a paper providing a succinct explanation of the differences between the petitions, why the issues addressed by the differences are material, and why the Board should exercise its discretion to institute both petitions.

4

### D. Service Information

Please address all correspondence and service to the address listed above.

Petitioner consents to electronic service by email at IPR50095-0024IP2@fr.com

(referencing No. 50095-0024IP2 and cc'ing PTABInbound@fr.com, axf-

ptab@fr.com, patrick@fr.com, gkim@fr.com, and khan@fr.com).

## II.    PETITIONER HAS STANDING TO REQUEST IPR

Apple certifies that the '765 Patent is available for IPR.  This present Peti-

tion is being filed within one year of service of a complaint against Apple in

*Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.).  Ap-

ple is not barred or estopped from requesting this review challenging the Chal-

lenged Claims on the below-identified grounds.

## III.    OVERVIEW OF THE '765 PATENT

### A. Brief Description

An exemplary physiological measurement system 100 illustrated by the '765

Patent's FIG. 1 (reproduced below) includes "a sensor 101…that is coupled to a

processing device or physiological monitor 109."  APPLE-1001, 2:38-40, 5:35-38,

11:47-49.

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765



APPLE-1001, FIG. 1.

"In an embodiment, the sensor 101 and the monitor 109 are integrated together into a single unit." *Id.*, 11:49-51.  "In another embodiment, the sensor 101 and the monitor 109 are separate from each other and communicate one with another in any suitable manner, such as via a wired or wireless connection." *Id.*, 11:51-57; 17:40-44.  The '765 Patent's FIGS. 2A-2D (reproduced below) illustrate "example monitoring devices 200 in which the data collection system 100 can be housed."  APPLE-1001, 5:39-42, 16:20-31.

6

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765



APPLE-1001, FIGS. 2A-2D.

Each of the illustrated "monitoring devices 200" include a sensor 201 and a monitor 209, which act together as components of a physiological sensor device. *Id.*, FIGS. 2A-2D, 16:20-18:28, 2:38-48, 11:49-57; APPLE-1003, ¶¶[41]-[51].  In at least one embodiment (depicted in FIG. 2D) that device is part of a larger system including a computer with which the physiological sensor device communicates. *Id.*; APPLE-1001, 2:38-48, 11:49-57, 16:20-18:28, FIGS. 1, 2A-2D.

The '765's sensor "may include different architectures."  APPLE-1001, 6:38-49, 35:36-38:20, FIGS. 14A-14I.  For example, FIG. 14C (reproduced below)

7

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

illustrates a sensor featuring a "detector submount 1400*c*…positioned under [a]

protrusion 605*b* in a detector subassembly 1450 illustrated in FIG. 14D" (also re-

produced below).



APPLE-1001, FIGS. 14C, 14D.

As illustrated in FIG. 14D, a housing 1430 including "a transparent cover

1432, upon which the protrusion 605b is disposed" surrounds each of the detectors

1410*c*.  APPLE-1001, 36:30-41; APPLE-1003, ¶¶[52]-[60].

## B.  Level of Ordinary Skill in the Art

A person of ordinary skill in the art relating to the subject matter of the '765

Patent as of July 3, 2008 ("POSITA") would have been a person with a working

knowledge of physiological monitoring technologies.  The person would have had

a Bachelor of Science degree in an academic discipline emphasizing the design of

electrical, computer, or software technologies, in combination with training or at

8

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

least one to two years of related work experience with capture and processing of data or information, including but not limited to physiological monitoring technologies.  APPLE-1003, ¶¶[21]-[22].  Alternatively, the person could have also had a Master of Science degree in a relevant academic discipline with less than a year of related work experience in the same discipline.  *Id.*

## C. Claim Construction

Petitioner submits that all claim terms should be construed according to the Phillips standard.  *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); 37 C.F.R. § 42.100.  Here, based on the evidence below and the prior art's description of the claimed elements being similar to that of the '765 Patent specification, no formal claim constructions are necessary in this proceeding because "claim terms need only be construed to the extent necessary to resolve the controversy."  *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011).  APPLE-1003, ¶[23].

## IV.   APPLICATION OF PRIOR ART TO THE '765 PATENT CLAIMS

### A. Asserted Grounds and References

The Challenged Claims are invalid based on the grounds noted in the table below, as further explained in this Petition.  Accompanying explanations and support are provided in the Declaration of Dr. Thomas Kenny.  APPLE-1003, ¶¶[1]-[204].

9

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

| Ground | Claims | Basis for Rejection |
|--------|--------|---------------------|
| 1 | **1-8, 10-13, 15-29** | Obvious (§ 103) based on Aizawa in combination with Inokawa, Ohsaki, and Mendelson-2006 |
| | **9** | Obvious (§ 103) based on Aizawa in combination with Inokawa, Ohsaki, Mendelson-2006, and Bergey |
| | **14** | Obvious (§ 103) based on Aizawa in combination with Inokawa, Ohsaki, Mendelson-2006, and Goldsmith |

Each applied reference pre-dates U.S. provisional application 61/078,207, filed on July 3, 2008, which is the earliest filed application from which the '765 Patent claims priority.  Petitioner does not take a position as to whether the '765 Patent is entitled to the priority date of July 3, 2008 (hereinafter "Critical Date" or "Earliest Effective Filing Date"), but has applied references that pre-date the Critical Date and qualify as prior art as shown in the table below.

| Reference | Date | | Section |
|-----------|------|--|---------|
| Aizawa | US 2002/0188210 | 12/12/2002 (published) | 102(b) |
| Inokawa | JP 2006-296564 | 11/02/2006 (published) | 102(b) |
| Ohsaki | US 2001/0056243 | 12/27/2001 (published) | 102(b) |
| Mendelson-2006 | (NPL) | 09/2006 (published) | 102(b) |
| Bergey | US 3,789,601 | 02/05/1974 (issued) | 102(b) |
| Goldsmith | US 2007/0093786 | 4/26/2007 (published) | 102(b) |

10

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

## B. GROUND 1: Claims 1-8, 10-13, and 15-29 are obvious over Aizawa, Inokawa, Ohsaki, and Mendelson-2006

### 1.      Overview of Aizawa[2]

Aizawa discloses a "pulse wave sensor…detecting light output from a light emitting diode and reflected from the artery of a wrist of a subject."  APPLE-1006, Abstract.  In the embodiment, Aizawa's sensor includes an optical sensor featuring "an **LED** 21," **four photodetectors** 22 disposed symmetrically on a circle concentric to the LED 21, and "a **holder** 23 for storing the" LED and photodetectors 22."[3] APPLE-1006, ¶¶[0002], [0008]-[0018], [0023], FIGS. 1(a), 1(b); APPLE-1003, ¶[62].  The sensor can be worn by a subject with the LED facing toward the subject's wrist, and fastened using a belt.  APPLE-1006, ¶[0026].

---

[2] General descriptions provided for this and other references and combinations thereof are incorporated into each subsection and mapping of the claims that includes citations to these references.

[3] Throughout this Petition, bolding in quotations is added for emphasis, unless otherwise indicated.

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765





APPLE-1006, FIGS. 1(a) (top, annotated), 1(b) (bottom, annotated).

As illustrated, Aizawa's pulse rate detector also includes "a **drive detection circuit** 24 for detecting a pulse wave by amplifying the outputs of the photodetectors 22," "an **arithmetic circuit** [3] for computing a pulse rate from the detected pulse wave data," and "a **transmitter** [4] for transmitting the above pulse rate data

12

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

to an unshown **display**."  APPLE-1006, ¶[0023].  Aizawa's sensor transmits its

data to an "unshown display," and can be "coupled to devices making use of bio

signals" and/or a device that performs computations.  *Id.*, ¶¶[0023], [0028], [0035].

To improve adhesion between the sensor and the subject's wrist, Aizawa's

sensor also includes an acrylic transparent plate positioned between the photode-

tectors and the wrist.  APPLE-1006, ¶[0034].  For example, Aizawa's FIG. 1(b)

shows the plate in contact with the user's wrist.  *Id.*, FIG. 1(b); APPLE-1003,

¶¶[63]-[67].



APPLE-1006, FIG. 1(b) (annotated).

## 2.  Overview of Inokawa

Inokawa discloses a wearable optical sensing system that gathers "various

kinds of vital sign information."  APPLE-1008, ¶[0001].  Inokawa's system in-

cludes a sensor and a base device.  *Id.*, ¶¶[0055]-[0066].  The sensor includes a

13

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

"pair of light-emitting elements" and a photodiode that receives reflected light, which is used to detect pulse and body motion. *Id.*, ¶¶[0058]-[0059]; FIG. 2. A rigid convex lens is placed between the photodiode and the subject's skin. *Id.*



APPLE-1008, FIG. 2 (annotated).

The base device is "a charger with communication functionality that is used when the pulse sensor…is mounted." *Id.*, ¶[0060]; FIG. 3. "[V]ital sign information…such as pulse and body motion, is transmitted to the base device…using the…infrared LED." *Id.*, ¶[0076]; APPLE-1003, ¶¶[68]-[69].

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765



(FIG. 3)   Pulse Sensor 1

Base Device 17

APPLE-1008, FIG. 3.

With reference to FIG. 19 (reproduced below), Inokawa explains that "the presence of two pairs of light-emitting and light-receiving elements makes it possible to efficiently transmit information," including increasing the "**accuracy of data**…by transmitting and receiving a **checksum signal**…." APPLE-1008, ¶¶[0111], [0044], [0048]; APPLE-1003, ¶[70].

15

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

(FIG. 19)



APPLE-1008, FIG. 19 (annotated).

### 3.    Overview of Ohsaki

As illustrated in Ohsaki's FIG. 2 (reproduced below), Ohsaki discloses a wrist-worn "pulse wave sensor" (APPLE-1009, ¶[0016]) featuring a "light emitting element" and a "light receiving element." *Id.*, ¶[0017].

Ohsaki's sensor addresses problems such as user discomfort and sensor movement by using a "translucent board" with a convex surface that is "in intimate contact with the surface of the user's skin" to prevent slippage. *Id.*, ¶¶[0009],

16

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

[0010], [0015], [0017], [0023]-[0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶[71].



APPLE-1009, FIG. 2.

### 4.     Overview of Mendelson-2006

Mendelson-2006 discloses a "wireless wearable pulse oximeter" system that is used to monitor a subject's physiological signals such as $SpO_2$ and heart rate. APPLE-1010, Abstract, 1. Mendelson-2006 explains that by wirelessly transmitting the collected data, the condition of a subject can be determined "remotely" without requiring the healthcare provider to be physically present. *Id.*

17

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

Mendelson-2006's system includes a sensor module, a receiver module, and a PDA. *Id.*, 2. As shown in Mendelson-2006's FIGS. 1 and 2, the sensor module includes an "optical reflectance transducer" having two LEDs and a photodiode that "processes the [photoplethysmographic (PPG)] signals" and transmits signals wirelessly to the PDA through the receiver module. *Id.*; FIGS. 1 and 2.



Fig. 1. (Top) Attachment of Sensor Module to the skin; (Bottom) photograph of the Receiver Module (left) and Sensor Module (right).



Fig. 2. System block diagram of the wearable, wireless, pulse oximeter. Sensor Module (top), Receiver Module (bottom).

APPLE-1010, FIG. 1 (left) and FIG. 2 (right).

The PDA is a handheld device that provides a "touch screen" interface and a simple graphical user interface (GUI) "configured to present the input and output information to the user and allow[ for] easy activation of various functions." AP-PLE-1010, FIG. 3; *see also* APPLE-1021, Cover, xvii-xviii, 10-12, 17, 63, 363; APPLE-1022, 4-11, 30-31; APPLE-1036, APPLE-1003, ¶¶[72]-[74].

18

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765



Fig. 3.  Sample PDA Graphical User Interface (GUI).

APPLE-1010, FIG. 3.

### 5.      Combination of Aizawa, Inokawa, Ohsaki, and Mendelson-2006

*Improved emitter performance and functionality*

As described in Section IV.B.1, Aizawa discloses a pulse wave sensor in which multiple detectors are disposed around a centrally located LED/emitter. APPLE-1006, ¶[0023].  Aizawa explains that "[t]he arrangement of the light emitting diode 21 and the photodetectors 22 is not limited" to that shown or described in connection with any particular embodiment.  APPLE-1006, ¶[0032]. In particular, Aizawa describes arrangements in which multiple light emitting

19

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

diodes 21 are employed.  *Id.*, ¶¶[0032]-[0033].

A POSITA would have combined the teachings of Aizawa and Inokawa such that Aizawa's pulse wave sensor would have been modified to include an additional LED as taught by Inokawa to improve the detected pulse wave by distinguishing between blood flow detection and body movement.  APPLE-1008, ¶(0059) (describing the use of the "S-side green LED 21…to sense the pulse from the light reflected off of the body (e.g., change in the amount of he-moglobin in the capillary artery), while the S-side infrared LED 23 serves to sense body motion from the change in this reflected light"); APPLE-1006, ¶[0006] (recognizing the problem of weak signals from a wearable sensor be-cause the sensor "detects the motion of a red corpuscle…and is easily affected by noise caused by the shaking of the body of the subject), ¶[0028] (describing a device for "computing the amount of motion load" such that the motion can be compensated for); APPLE-1003, ¶¶[79]-[80].

A POSITA would also have looked to Inokawa's disclosure of two LEDs emitting light of different wavelengths, in part, because it provides additional functionality, including that of a wireless communication method.  *Id.*, ¶[81]. Inokawa's base device 17 receives, for example, "pulse and body motion" data through "the S-side infrared LED 23 of the pulse sensor 1 and the B-side PD 45 of the base device 17."  APPLE-1008, ¶[0076].  The LEDs eliminate the need

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

for "a special wireless communication circuit or a communication cable as previously" and allows "vital sign information to the base device 17 accurately, easily, and without malfunction." *Id.*, ¶[0077]. In other words, the LEDs provided on the sensor can be used not only to detect pulse rate but also to "accurately, easily, and without malfunction" transmit the sensed data to a base station. APPLE-1003, ¶[81].

Intrinsic and extrinsic records confirm that a POSITA would have naturally looked to another wearable physiological sensor, as disclosed in Inokawa, for transmission details. APPLE-1003, ¶[82]. Aizawa discloses uploading data to a base device but is silent about how such transmission would be implemented. APPLE-1006, ¶¶[0023], [0028]. A POSITA would have recognized that Aizawa's LED could have been used for wireless data communication with a personal computer to eliminate problems associated with a physical cable, and, as taught by Inokawa, without requiring a separate RF circuit. APPLE-1003, ¶[82]. A POSITA would have further recognized that using two LEDs to perform such communication would result in enhanced accuracy of the transmitted information. *Id.*

To obtain the advantages described by Inokawa (e.g., to improve the detected pulse wave by enabling the sensor to distinguish between blood flow de-

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

tection and body movement, in addition to enabling wireless communication between the sensor and a base station), a POSITA would have been motivated to modify Aizawa's pulse wave sensor to include an additional LED.  APPLE-1003, ¶[83]; APPLE-1008, ¶¶[0058]-[0059]; APPLE-1008, ¶¶[0006], [0028].

As illustrated below, the Aizawa-Inokawa sensor would have featured two LEDs in place of Aizawa's LED 21.  APPLE-1003, ¶[84].





APPLE-1006, FIGS. 1(a) (top, annotated) and 1(b) (bottom, annotated).

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

Aizawa-Inokawa would have utilized two LEDs that emit two different wavelengths.  APPLE-1003, ¶[85].  Aizawa's LED 21 would have been replaced with two LEDs.  In this manner, Aizawa's sensor is improved by using a separate LED to account for motion load that the system already records and accounts for.  APPLE-1006, ¶¶[0006], [0028], [0035].

A POSITA would have combined the teachings of Aizawa and Inokawa as doing so would have amounted to nothing more than the use of a known technique to improve similar devices in the same way and combining prior art elements according to known methods to yield predictable results.  *KSR v. Teleflex*, 550 U.S. 398, 417 (2007); APPLE-1003, ¶[86].  Here, the Aizawa-Inokawa combination improves Aizawa's pulse wave sensor as described above to detect and record body motion in addition to blood flow.  *Id*.  The elements of the Aizawa-Inokawa system would each perform similar functions they had been known to perform prior to the combination.  *Id*.  For instance, in Aizawa-Inokawa, Aizawa's photodetectors would still detect light emitted by the LEDs and reflected by the subject's wrist, and two LEDs would still be used to emit light at different wavelengths.  *Id*.

Although Inokawa shows its two emitters emitting light toward a centrally located detector, a POSITA would have recognized that the same effect could have been achieved by having the emitters located centrally instead and

23

emitting radially outward.  Indeed, Aizawa itself recognizes this reversibility, stating that while the configurations depicted include a central emitter surrounded by detectors, the "same effect can be obtained when…a plurality of light emitting diodes 21 are disposed around the photodetector 22."  APPLE-1006, ¶[0033]; APPLE-1003, ¶[87].

### *Transmission of information*

When Inokawa's sensor is mounted onto the base station, "vital sign information…such as pulse and body motion, is transmitted to the base device…using the…infrared LED."  APPLE-1008, ¶[0076]. The "base device 17 is connected to a PC 59, and information transmitted from the pulse sensor 1 is downloaded to the PC 59 via the base device 17."  *Id.*; *see also id., ¶¶*[0074] ("in transmission mode, **data stored in the memory 63, such as pulse, is transmitted to the base device 17**. In short, data is downloaded"), [0075]("when the pulse sensor 1 is mounted onto the base device 17, information about pulse, etc. is automatically transmitted from the pulse sensor 1 to the base device 17.  **The base device 17, meanwhile, upon receiving the information transmitted from the pulse sensor 1, transmits this information to the PC 59**"), [0077], [0002], [0003], [0067].

24

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

(FIG. 3)



APPLE-1008, FIG. 3.

A POSITA would have also found it obvious to implement the physiological

sensor device resulting from the combined teachings of Aizawa, Inokawa, and

Ohsaki as part of a physiological measurement system including a handheld com-

puting device, and to enable the physiological sensor device to communicate wire-

lessly with the handheld computing device.  APPLE-1003, ¶¶[88]-[89]; APPLE-

1006, Abstract, [0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030],

[0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1008, ¶¶[0002], [0003], [0067], [0074]-

25

Case 8:20-cv-00048-JVS-JDE   Document 211-1   Filed 10/05/20   Page 279 of 674   Page ID
#:15585

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

[0077]; APPLE-1010, 1-4, FIG. 3.

Indeed, by the '765 Patent's 2008 earliest effective filing date, physiological monitoring devices commonly employed touch-screen displays. APPLE-1003, ¶[90]. For example, Mendelson-2006 describes a "body-worn" pulse oximetry system that includes a sensor module, a receiver module, and a PDA. APPLE-1010, 913. Mendelson-2006's system includes a sensor module that transmits signals wirelessly to a PDA through a receiver module. *Id.*, 913, FIGS. 1-3; *see supra* Section IV.B.4. The PDA provides a low-cost touch screen interface. APPLE-1010, 914; *see also* APPLE-1020, 1-4. In more detail, and as shown in Mendelson-2006's FIG. 3 (reproduced below), the PDA's "simple GUI" is "configured to present … input and output information to the user" and to allow "easy activation of various functions." APPLE-1010, 914.

A POSITA would have been motivated to look to other physiological sensor systems, such as Mendelson-2006, for details regarding data transmission and display of the data collected using the Aizawa-Inokawa-Ohsaki sensor. APPLE-1003, ¶¶[91].

For example, as explained above in Section IV.B.4, Mendelson-2006's optical reflectance transducer measures PPG signals, and Mendelson-2006's receiver module includes an embedded microcontroller. "Signals acquired by the Sensor

26

Exhibit F
Page 284

Module are received by the embedded microcontroller which then computes the arterial oxygen saturation ($SpO_2$) and heart rate based on the relative amplitude and frequency content of the reflected PPG signals.  APPLE-1010, 1-2.



APPLE-1010, FIG. 2 (annotated).

"[I]nformation acquired by the Sensor Module is transmitted wirelessly via an RF link over a short range to a body-worn Receiver Module," and data processed by the receiver module is "transmitted wirelessly to a PDA."  *Id.*, 2, FIG. 2. Mendelson-2006's system uses "the HP iPAQ h4150 PDA because it can support both 802.11b and Bluetooth™ wireless communication."  *Id.*, 3.  The PDA is used "as a local terminal," and it "also provides a low-cost touch screen interface."  *Id.*; *see also* APPLE-1020, 1-4 (depicting and describing the HP iPAQ h4150 Pocket

27

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

PC PDA utilized in Mendelson-2006's system); APPLE-1021, Cover, xvii-xviii, 10-12, 63, 73-101, 363; APPLE-1022, 4-11, 30-31, 284-297.

Wireless communication with the handheld PDA is, moreover, said to enable transfer of information pertaining to physiological and wellness parameters such as "SpO2, HR, body acceleration, and posture information" to the PDA; and, when the PDA is "carried by medics or first responders," this information is said to enhance their ability "to extend more effective medical care, thereby saving the lives of critically injured persons." APPLE-1010, 1-2.



APPLE-1010, FIG. 3 (left) and APPLE-1020, 1 (right).

To obtain these and other advantages described by Mendelson-2006, a POSITA would have been motivated to implement Aizawa's pulse wave sensor as

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

part of a physiological measurement system including a handheld computing de-
vice, and to enable a physiological sensor device including sensor 1 to communi-
cate wirelessly with the handheld computing device.  APPLE-1003, ¶¶[91]-[95].
APPLE-1006, Abstract ("a pulse wave sensor for detecting a pulse wave by detect-
ing light output from a light emitting diode and reflected from the artery of a wrist
of a subject "), ¶¶[0002], [0005], [0008]-[0016], [0023] (describing transmitting
"pulse rate data to an unshown display"), [0024], [0027]-[0030], [0032]-[0033],
FIGS. 1, 2, 3, 4(a); APPLE-1010, 1-4, FIG. 3; *see also* APPLE-1020, 1-4.

Indeed, by the Critical Date, physiological monitoring devices commonly in-
cluded touch-screen displays configured to provide user interfaces.  APPLE-1003,
¶[96]; APPLE-1009, 1-4, FIG. 3; APPLE-1024, Abstract, ¶¶[0026], [0044], FIGS.
1-6.  A POSITA would have recognized that applying Mendelson-2006's teachings
to the Aizawa-Inokawa-Ohsaki sensor would have led to predictable results with-
out altering or hindering the functions performed by the sensor.  APPLE-1003,
¶[96].  In fact, a POSITA would have been motivated to implement the well-
known technique of connecting a physiological sensor to a handheld device to
cause Aizawa-Inokawa-Ohsaki's sensor to include such features to achieve the pre-
dictable benefits offered by Mendelson-2006's description of the same.  *Id*.  For
example, POSITA would have incorporated Mendelson-2006's disclosure of a
PDA with a touch-screen display and "simple GUI" to present "information to the

29

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

user" and provide "easy activation of various functions."  APPLE-1010, 4.  Indeed,

a POSITA would have had a reasonable expectation of success in making this

modification, and would have reasonably expected to reap benefits of displaying a

measured waveform representative of a patient's pulse.  *Id.*, APPLE-1003, ¶[96].

For at least these reasons, a POSITA would have found it obvious to im-

plement Aizawa's unshown display as a PDA featuring a touch-screen display

and/or mobile phone functionality[4] using either or both of 802.11b and Blue-

tooth™.  APPLE-1006, ¶[0015], [0023], [0028], [0035]; *see also* APPLE-1020,

1-4; APPLE-1009, ¶[0020]; APPLE-1012, Abstract, 8:37-41, 9:22-10:30, FIGS.

7, 8; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-4; APPLE-1003, ¶[97]; *see*

*also* APPLE-1021, xvii-xviii, 10-12, 17, 63, 73-101, 176, 190-193, 363; AP-

PLE-1022, 4-11, 30-31, 56-67, 72-92.

---

[4] Mendelson-2006 does not explicitly disclose its PDA to be a mobile phone.  AP-

PLE-1003, ¶footnote 1.  Yet it was well known before the Critical Date that a PDA

device was often paired with cellular communication technology to provide a com-

bined PDA/phone device that acts a mobile phone.  *Id.*; APPLE-1025, Title ("Cel-

lular Phone/PDA Communication System"), Abstract, 1:6-15, 7:6-10:11 (describ-

ing "a small handheld cellular phone/PDA communications system" featuring "an

LCD display 16 that is also a touch screen system"), FIGS. 1-3.

30

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

*Convex surface*

Additionally, a POSITA would have combined the teachings of Aizawa-Inokawa with the teachings of Ohsaki such that the cover of Aizawa-Inokawa's wrist-worn sensor would include a convex surface, improving adhesion between a subject's wrist and a surface of the sensor. APPLE-1009, ¶[0025] (the convex surface prevents slippage of the detecting element from its position on the subject's wrist, and the convex nature of the surface suppresses the "variation of the amount of the reflected light" that reaches the detecting element); APPLE-1003, ¶[98].

In more detail, Ohsaki describes a "detecting element" that includes "a package 5, a light emitting element 6 (e.g., LED), a light receiving element 7 (e.g., PD), and a translucent board 8." APPLE-1009, ¶[0017]. "The package 5 has an opening and includes a" substrate in the form of "circuit board 9," on which light emitting element 6 and light receiving element 7 are arranged. *Id.* As shown in Ohsaki's FIG. 2, translucent board 8 is arranged such that, when the sensor is worn "on the user's wrist … the convex surface of the translucent board … is in intimate contact with the surface of the user's skin"; this contact between the convex surface and the user's skin is said to prevent slippage, which increases the strength of the signals obtainable by Ohsaki's sensor. APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B. APPLE-1003, ¶[99].

31

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

# FIG. 2



APPLE-1009, FIG. 2 (annotated).

Ohsaki explains that "if the translucent board 8 has a flat surface, the detected pulse wave is adversely affected by the movement of the user's wrist as shown in FIG. 4B," but that if "the translucent board 8 has a convex surface…variation of the amount of the reflected light…that reaches the light receiving element 7 is suppressed." APPLE-1009, ¶[0025]. The convex surface is also said to prevent "disturbance light from the outside" from penetrating translucent board 8. *Id.* Thus, when a convex cover is used, "the pulse wave can be detected without being

Exhibit F
Page 290

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

affected by the movement of the user's wrist 4 as shown in FIG. 4A." *Id.*



APPLE-1009, FIGS. 4A, 4B.

As shown below, the POSITA would have found it obvious to modify the

sensor's flat cover (left) to include a lens/protrusion (right), similar to Ohsaki's

translucent board 8, so as to improve adhesion between the user's wrist and the

sensor's surface, improve detection efficiency, and protect the elements within the

sensor housing.  APPLE-1009, ¶[0025] (explaining that the convex surface of

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

translucent board 8 prevents slippage of a detecting element from its position on the wrist, and suppresses the "variation of the amount of the reflected light" that reaches the detecting element); APPLE-1024, ¶¶[0033], [0035], FIG. 6 (depicting an LED featuring a convex lens); APPLE-1003, ¶¶[100]-[101].



APPLE-1006, FIG. 1(b) (annotated).

A POSITA would have combined the teachings of Aizawa-Inokawa and Ohsaki as doing so would have amounted to nothing more than the use of a known technique to improve similar devices in the same way.  APPLE-1003, ¶[102].  A POSITA would have recognized that incorporating Ohsaki's convex surface is simply improving Aizawa-Inokawa's transparent plate 6 that has a flat surface to improve adhesion to a subject's skin and reduce variation in the signals detected by the sensor.  *Id*.  Furthermore, the elements of the combined system would each perform similar functions they had been known to perform prior to the combination—Aizawa-Inokawa's transparent plate 6 would remain in the

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

same position, performing the same function, but with a convex surface as taught by Ohsaki. *Id*.

## *Substrate*

As indicated above, Aizawa's sensor includes LED 21 and photodetectors 22. APPLE-1006, ¶ [0023]. A POSITA would have understood that Aizawa's sensor therefore necessarily includes a substrate. APPLE-1003, ¶[103]. To the extent that Aizawa does not inherently disclose a substrate, a POSITA would have found it obvious that Aizawa's photodetectors are arranged on a substrate. *Id*. For example, a POSITA would have understood that Aizawa's photodetectors are secured to the sensor device, provided with power by a power source (also not shown), and can transmit signals to other portions of the sensors through such a structure. *Id*. A POSITA would have understood that the substrate provides physical support and electrical connectivity and is connected to the holder 23. *Id*. Indeed, a POSITA would have found it obvious to use such a substrate because it provides a simpler manufacturing process and more compact design than using and routing wires would allow. *Id*. As shown in FIG. 1(b), Aizawa illustrates a substrate, but does not label or describe such a structure. *Id*.

35

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765



APPLE-1006, FIG. 1(b) (annotated).

To the extent that the surface of holder 23 does not explicitly disclose a substrate, a POSITA would have been motivated to modify Aizawa to incorporate a substrate, such as Ohsaki's circuit board 9 to secure photodetectors 22 and enable photodetectors 22 to send signals to other portions of the sensor.  APPLE-1003, ¶[104].

Exhibit F
Page 294

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

# FIG. 2



APPLE-1009, FIG. 2 (annotated).

A POSITA would have been motivated to modify Aizawa to incorporate

Ohsaki's circuit board 9 to enable photodetectors 22 to send signals to other por-

tions of the sensor.  APPLE-1003, ¶[105]; APPLE-1006, Abstract, ¶¶[0002],

[0005], [0008]-[0016], [0023], [0027]-[0029], [0032]-[0033], FIGS. 1, 2, 3, 4(a);

APPLE-1009, ¶[0017], FIG. 2.

Exhibit F
Page 295

6.      **Analysis**

<u>*Claim 1*</u>

**[1pre] A physiological measurement system comprising**

To the extent the preamble is limiting, Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1pre].  APPLE-1003, ¶[106].  For example, Aizawa discloses a pulse sensor designed to detect "the pulse wave of a subject from light reflected from a red corpuscle in the artery of a wrist of the subject by irradiating the artery of the wrist."  APPLE-1006, ¶[0002].



APPLE-1006, FIG. 2.

**[1a] a physiological sensor device comprising:**

38

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

As discussed in Sections IV.B.1-IV.B.5, Aizawa discloses a pulse rate detector 1 that includes an optical sensor featuring "an **LED** 21 [ ] for emitting light having a wavelength of a near infrared range, **four phototransistors** 22 [ ] disposed around the light emitting diode 21 symmetrically on a circle concentric to the light emitting diode 21, a **holder** 23 for storing the above light emitting diode 21 and the photodetectors 22," and "an **acrylic transparent plate** [6] mounted to the detection face 23*a* of the holder 23…."  APPLE-1006, ¶[0023].  Aizawa's sensor also includes "a transmitter [4] for transmitting the above pulse rate data to an unshown display."  *Id.*

39

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

F I G . 1 ( a )



F I G . 1 ( b )



APPLE-1006, FIGS. 1(a), 1(b) (annotated).

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

Accordingly, [1a] would have been obvious over Aizawa in view of In-

okawa, Ohsaki, and Mendelson-2006[5].  APPLE-1003, ¶¶[107]-[108]; APPLE-

1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], FIGS. 1(a), 1(b), 2.


**[1b] one or more emitters configured to emit light into tissue of a user;**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1b].  APPLE-

1003, ¶¶[109]-[110].  As explained above (*see e.g.,* Sections IV.B2-5, *supra*), In-

okawa discloses using two emitters operating at different wavelengths, and a

POSITA would have found it obvious for multiple reasons to incorporate the LEDs

of Inokawa into Aizawa, as illustrated below.

---

[5] *See infra* [1h].  A POSITA would have been motivated to add Inokawa's base sta-

tion to Aizawa's physiological sensor device such that the sensor device includes a

sensor and a base station with which the sensor communicates and through which

the sensor communicates with a handheld device.  *See also* APPLE-1021, Cover,

xvii-xviii, 10-12, 63, 73-101, 363; APPLE-1022, 4-11, 30-31, 284-297.

41

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765





APPLE-1006, FIGS. 1a (top, annotated) and 1b (bottom, annotated).

As explained in Section IV.B.5, using two LEDs to emit light into the user's

tissue at different wavelengths have been obvious to, for instance, (i) ac-

42

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

quire body motion information for improved pulse detection and/or (ii) more relia-bly transmit information from the sensor to a base device with less error.  APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027], [0033]; APPLE-1008, ¶¶[0014], [0040], [0058]-[0059], FIGS. 2, 3, 19.

**[1c] at least four detectors, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector;**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1c].  APPLE-1003, ¶¶[111]-[119]; APPLE-1006, ¶¶[0012], [0023], [0024],  FIGS. 1(a), 1(b); APPLE-1013, ¶[0073], FIGS. 19A-19C; APPLE-1019, 79, 86, 94.  For example, Aizawa discloses that its sensor "**detect[s] light** output from a light emitting diode and **reflected from the artery of a wrist** of a subject."  APPLE-1006, ¶[0009].  In particular, the light is "reflected by a red corpuscle running through the artery 11 of the wrist 10" and detected by photodetectors 22 as a pulse wave.  *Id*., ¶[0027].  "[T]he waveform of a pulse wave" detected by Aizawa's photodetectors 22 can be displayed as represented by FIG. 3.  *Id*., ¶¶[0028]-[0029].

43

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765





APPLE-1006, FIG. 3.

The photodetectors 22 are "disposed at an **equal distance** from the light emitting diode."  APPLE-1006, ¶¶[0011], [0027].



APPLE-1006, FIG. 1(a) (annotated).

44

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765



APPLE-1006, FIG. 1(b) (annotated).



APPLE-1006, FIG. 2 (annotated).

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

# F I G .  4  (a)



APPLE-1006, 4(a) (annotated).

Aizawa's LED 21 and the photodetectors 22 are "**stored in cavities** 23b and 23c **formed in the detection face** 23*a*" of holder 23 such that "the light emitting face 21s of the light emitting diode 21 and the light receiving faces 22s of the photodetectors 22 are set back from the above detection face 23*a*."  *Id*., ¶¶[0023]-[0024].

Exhibit F
Page 304

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765





APPLE-1006, FIGS. 1(a) (top, annotated), 1(b) (bottom, annotated).

From this and related description, a POSITA would have understood Ai-zawa's holder 23 to function as a guide for light from the light emitting diode 21 and to the photodetectors 22. APPLE-1003, ¶¶[111]-[114]. In other words, the "sectional forms of the above cavities 23b and 23c" function as the "light emitting

Exhibit F
Page 305

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

area of the light emitting diode 21 and the light receiving areas of the photodetectors 22" respectively and the openings of these cavities are "tapered such that their widths increase toward the contact face" in order to "expand" the light emitting and light receiving areas.  APPLE-1006, ¶[0024].

Additionally, a POSITA would have understood that Aizawa's holder 23, which circumscribes the photodetectors, is opaque, and any surface of holder 23, including the detection face 23a of holder 23 would be an opaque layer.  APPLE-1003, ¶[115].  A POSITA would have thus found it obvious that Aizawa's holder 23 discloses, or at least suggests, an opaque layer.  *Id*.

The '765 Patent itself describes that such an opaque layer can be integral to the sensor's contact area.  APPLE-1001, 19:28-48 (describing that the "contact area 370 of the protrusion 305 can include openings or windows 320, 321, 322, and 323" and "the windows 320, 321, 322, and 323 mirror specific detector placements layouts such that light can impinge through the protrusion 305 onto the photodetectors.")  A POSITA would have understood that Aizawa's cavities 23b and 23c are openings or windows that mirror specific detector placement layouts "such that light can impinge…onto the photodetectors" that are formed in the contact face of holder 23.  APPLE-1003, ¶[116].

Indeed, by the '765 Patent's 2008 earliest effective filing date, optical sensors commonly employed opaque layers with windows corresponding to detectors.

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

APPLE-1003, ¶[117]; *see*, *e.g.*, APPLE-1013, ¶[0073] (describing a pulse oxime-try sensor featuring "a thin sheet of opaque material" placed inside the sensor's housing, with "a window in the opaque material provid[ing] an aperture for trans-mission of optical energy to or from the tissue site"), FIGS. 19A-19C; APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1023, 11-12, FIG. 11 (depicting a pulse oximetry sensor featuring multiple photodiodes arranged radially about a set of central LEDs, and an opaque layer with multiple corresponding windows).

Thus, a POSITA would have understood that the Aizawa-Inokawa-Ohsaki-Mendelson-2006 holder is an opaque layer, and that the each of the cavities within holder 23 are windows in the opaque material of holder 23 that allow light to travel from the LEDs and to the at least four photodetectors, while avoiding saturation of each of the sensor's detectors. APPLE-1003, ¶[118]; APPLE-1006, ¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b); *see also* APPLE-1013, ¶[0073], FIGS. 19A-19C; APPLE-1019, 79, 86, 94 ("Ambient light…may cause errors in SaO2 read-ings…the simple solution is to cover the sensor site with opaque material which can prevent ambient light from reaching the photodiode").

Thus, a POSITA would have understood that each of Aizawa's detectors has a corresponding window that allows light to pass through to the detector. APPLE-1003, ¶[119].

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

**[1d] *a wall that surrounds at least the at least four detectors; and***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1d].  APPLE-

1003, ¶¶[120]-[122].  For example, as discussed for [1pre]-[1c] and further illus-

trated below, Aizawa depicts and describes a physiological sensor that includes

"holder 23 for storing…the photodetectors 22," in addition to other structural ele-

ments.  APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027]-

[0029], [0032]-[0033], FIGS. 1, 2, 3, 4(a).

In more detail, and as illustrated in Aizawa's FIGS. 1(a) and 1(b) below, the

outer surface of holder 23 forms a wall that surrounds photodetectors 22.



50

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

APPLE-1006, FIG. 1a (annotated).



APPLE-1006, FIG. 1(b) (annotated).

Thus, the Aizawa-Inokawa-Ohsaki-Mendelson-2006 sensor would have in-
cluded a wall that surrounds at least four photodetectors 22.  APPLE-1006, Ab-
stract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0029], [0032]-
[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, ¶[0017], FIG. 2; APPLE-1003, ¶¶[120]-
[122].


**[1e] a cover comprising a protruding convex surface, wherein the protruding
convex surface is above all of the at least four detectors,**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1e].  APPLE-
1003, ¶[123].  As discussed previously (*see e.g.,* [1pre]-[1d] and Sections IV.B.1-5,
*supra*), and as shown below, the Aizawa-Inokawa-Ohsaki-Mendelson-2006 device

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

would have included a cover that is placed above holder 23 to realize improved adhesion between the user's wrist and the sensor's surface, improve detection efficiency, and protect the elements within the sensor housing, including each of the at least four detectors.  APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0029], [0032]-[0033], FIGS. 1, 2, 3, 4(a).



APPLE-1006, FIG. 1(b) (annotated).

***[1f] wherein at least a portion of the protruding convex surface is rigid, and wherein the cover operably connects to the wall; and***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1f].  APPLE-1003, ¶[124]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-

[0024], [0027]-[0029], [0032]-[0033], FIGS. 1, 2, 3, 4(a).  As explained above (*see* Sections IV.B.1-5 and [1e], *supra*), Aizawa-Inokawa-Ohsaki-Mendelson-2006's cover would have operably connected to the wall (holder 23), and at least a portion of the protruding convex surface of the cover would have been rigid.  APPLE-1003, ¶[124]; APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; *see also* APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1008, ¶¶14-15, FIG. 1; APPLE-1024, ¶¶[0033], [0035], FIG. 6; APPLE-1008, ¶¶[0058]-[0059]; FIG. 2 (depicting a convex lens placed between a photodiode and the user's skin; the lens is rigid such that the tissue conforms to the convex surface of the lens).



APPLE-1006, FIG. 1(b) (annotated).

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

**[1g] a handheld computing device in wireless communication with the physiological sensor device, wherein the handheld computing device comprises:**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1g].  APPLE-1003, ¶¶[125]-[128].  As discussed for [1pre]-[1f], the Aizawa-Inokawa-Ohsaki-Mendelson-2006 device would have included a sensor and a base station, with the sensor being configured to communicate optically with the base station.  APPLE-1003, ¶[125]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027], [0033]; APPLE-1008, ¶¶[0014], [0040], [0055]-[0066], FIGS. 2, 3, 19.

As explained in above Sections (*see e.g.,* IV.B.2 and IV.B.5, *supra*) and shown below, when Inokawa's sensor is mounted onto the base station, "vital sign information…such as pulse and body motion, is transmitted to the base device…using the…infrared LED."  APPLE-1007, ¶[0076]. The "base device 17 is connected to a PC 59, and information transmitted from the pulse sensor 1 is downloaded to the PC 59 via the base device 17." *Id.*; *see also id., ¶¶*[0074], [0075], [0077].



(FIG. 3)  Pulse Sensor 1

Base Device 17

APPLE-1008, FIG. 3.

And, as noted above in Section IV.B.5, a POSITA would have been motivated and found it obvious to modify the sensor system of Aizawa-Inokawa-Ohsaki to communicate wirelessly with a PDA as taught by Mendelson-2006 (e.g., by enabling the physiological sensor device's base station to communicate wirelessly with the PDA).  APPLE-1003, ¶[127]; APPLE-1006, ¶¶[0015], [0023], [0028], [0035]; APPLE-1008, ¶¶[0002], [0003], [0067], [0074]-[0077]; APPLE-1010, 1-4, FIG. 3; *see also* APPLE-1020, 1-4; APPLE-1021, Cover, xvii-xviii, 10-

12, 63, 73-101, 363; APPLE-1022, 4-11, 30-31, 284-297.



APPLE-1010, FIG. 3 (left) and APPLE-1020, 1 (right).

Thus, Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious a handheld

computing device in wireless communication with the physiological sensor device

resulting from the combined teachings of Aizawa, Inokawa, and Ohsaki.  APPLE-

1003, ¶[128]; APPLE-1006, ¶¶[0015], [0023], [0028], [0035]; APPLE-1008,

¶¶[0002], [0003], [0067], [0074]-[0077]; APPLE-1010, 1-4, FIG. 3; *see also* AP-

PLE-1020, 1-4.

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

***[1h] one or more processors configured to wirelessly receive one or more signals
from the physiological sensor device, the one or more signals responsive to at
least a physiological parameter of the user;***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1h].  APPLE-
1003, ¶¶[129]-[132].  In implementing the Aizawa-Inokawa-Ohsaki-Mendelson-
2006 physiological measurement system, the POSITA would have configured a
processor of the PDA to wirelessly receive signals from the physiological sensor
device, the signals being responsive to physiological parameters of the user.  AP-
PLE-1003, ¶[129]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016],
[0023]-[0024], [0027]-[0030], [0032]-[0033]; APPLE-1010, 1-4, FIGS. 1-3; AP-
PLE-1020, 1-3, 6-8.

In more detail, Mendelson-2006 describes the wireless transmission of "vital
physiological information" acquired and processed by a "body-worn pulse oxime-
ter" to the HP iPAQ h4150 PDA, which is utilized "as a local terminal" with a
"low-cost touch screen interface" featuring a "simple GUI" "configured to present
… input and output information to the user." APPLE-1010, 1-2, FIGS. 1-3; AP-
PLE-1021, Cover, xvii-xviii, 10-12, 17, 63, 363; APPLE-1022, 4-11, 30-31.  Men-
delson-2006's FIG. 3, for example, is a photograph of an HP iPAQ h4150 PDA be-
ing used to display indicia responsive to measurements of $SpO_2$ and HR, the PDA
having wirelessly received signals responsive to the user's $SpO_2$ and HR from the
body-worn pulse oximeter.  APPLE-1003, ¶[130]; APPLE-1010, 2-3, FIG. 3.

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

The PDA is said by Mendelson-2006 to include "sufficient computational resources for the intended application," and the PDA's user manual confirms that it typically included a "400 MHz Intel Xscale™ technology-based **processor**."  APPLE-1010, 3; APPLE-1020, 1-3.  The iPAQ h4150 PDA is said by Mendelson-2006, and its user manual confirms, to support both 802.11b and Bluetooth™ wireless communication.  APPLE-1010, 3; APPLE-1020, 1-3, 6-8; APPLE-1021, 173-203; APPLE-1022, 56-67, 72-92.

For at least these reasons, a POSITA would have found it obvious to configure a processor of the PDA to wirelessly receive signals from the physiological sensor device, the signals being responsive to physiological parameters of the user.  APPLE-1003, ¶¶[131]-[132]; APPLE-1006, 9:23-10:37, FIGS. 7, 8;  APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-3, 6-8.

*[1i] a touch-screen display configured to provide a user interface, wherein: the user interface is configured to display indicia responsive to measurements of the physiological parameter, and an orientation of the user interface is configurable responsive to a user input; and*

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1i].  APPLE-1003, ¶¶[133]-[138].  In implementing the Aizawa-Inokawa-Ohsaki-Mendelson-2006 physiological measurement system, the POSITA would have configured a touch-screen display of the PDA to provide a user interface, the user interface being configured to display indicia responsive to measurements of the physiological

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

parameter, and an orientation of the user interface being configurable responsive to a user input.  APPLE-1003, ¶[133]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033]; APPLE-1008, ¶¶[0002], [0003], [0067], [0074]-[0077]; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1020, 1-4.

For example, Mendelson-2006 describes the wireless transmission of "vital physiological information" acquired and processed by a "body-worn pulse oxime-ter" to the HP iPAQ h4150 PDA, which is utilized "as a local terminal" with a "low-cost touch screen interface" featuring a "simple GUI" "configured to present … input and output information to the user" and to allow "easy activation of vari-ous functions."  APPLE-1010, 1-2, FIGS. 1-3; *see also* APPLE-1020, 3 (confirm-ing that the HP iPAQ h4150 typically included a touch screen display).  As Men-delson-2006 explains, a "dedicated National Instruments LabVIEW program was developed to control all interactions between the PDA and the wearable unit via a graphical user interface (GUI)," with "[o]ne part of the LabVIEW software [being] used to control the flow of information through the 802.11b radio system on the PDA."  APPLE-1010, 3.

As shown below, Mendelson-2006's FIG. 3, for example, is a photograph of an HP iPAQ h4150 PDA being used to display indicia responsive to measurements of $SpO_2$ and HR, the PDA having wirelessly received signals responsive to the

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

user's SpO$_2$ and HR from the body-worn pulse oximeter.  APPLE-1003, ¶¶[134]-

[135]; APPLE-1010, 1-3 (displaying "subject's vital signs" and "a scrollable PPG

waveform…transmitted by the wearable device"), FIG. 3.



APPLE-1010, FIG. 3.

Mendelson-2006 does not explicitly state that an orientation of the GUI pro-

vided by the PDA is configurable responsive to a user input, but a POSITA would

have understood that the LabVIEW software that was used "to control all interac-

tions between the PDA and the wearable unit via [t]he graphical user interface" in-

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

cluded the option to configure an orientation of a user interface as a standard feature.  APPLE-1003, ¶[136]; APPLE-1027, 186.  Indeed, Mendelson-2006 describes the "LabVIEW program" as interacting with the "Windows CE™" operating system.  APPLE-1010, 3.  As a standard feature, the operating system enabled users to dynamically switch the screen orientation between portrait and landscape modes.  APPLE-1003, ¶[136]; APPLE-1020, 1; APPLE-1021, xvii-xviii ("Microsoft has changed the software name…[f]irst it was Windows CE…and now Windows Mobile"), 63 ("Windows Mobile 2003SE and Windows Mobile 5 can switch the screen orientation from portrait…to landscape"); APPLE-1022, 8.

Additionally, the HP iPAQ h4150 user manual describes the PDA's operating system as the "Microsoft® Windows® Mobile™ 2003 software for Pocket PC."  APPLE-1020, 2, 6.  A POSITA would have understood that, as a standard feature, that operating system enabled users to change the screen orientation between portrait and landscape on the fly.  APPLE-1003, ¶[137].

Consistent with Mendelson-2006's description of the PDA's "simple GUI" being configured to allow for "easy activation of various functions," a POSITA would have found it obvious to make an orientation of the PDA's user interface configurable responsive to a user input, for the sake of user convenience.  APPLE-1003, ¶[138]; APPLE-1010, 3; APPLE-1020, 2, 6; APPLE-1021, xvii-xviii, 63; APPLE-1022, 8.

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

**[1j] a storage device configured to at least temporarily store at least the measurements of the physiological parameter.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [1j].  APPLE-1003, ¶¶[139]-[140].  In implementing the Aizawa-Inokawa-Ohsaki-Mendelson-2006 physiological measurement system, the POSITA would have configured a storage device of the PDA to at least temporarily store measurements of physiological parameters (e.g., $SpO_2$ and HR).  APPLE-1003, ¶[139]; APPLE-1010, 3, FIG. 3 ("The PDA can also serve to temporarily store vital medical information received from the wearable unit"); APPLE-1020, 3, 10 (noting that the HP iPAQ h4150 typically included 64-MB of SDRAM, 32-MB of ROM, and an SD slot for additional storage); APPLE-1021, 31-36; APPLE-1022, 50-51.

As Mendelson-2006 explains, the "PDA can also serve to temporarily store vital medical information received from the wearable unit."  APPLE-1010, 3.  A POSITA would have understood that the vital medical information would have included measurements of the physiological parameters obtained by the physiological sensor device (e.g., $SpO_2$ and HR).  APPLE-1003, ¶[140]; APPLE-1010, 1-4, FIG. 3.

## Claim 2

**[2] The physiological measurement system of claim 1, wherein the protruding convex surface is configured to be located between tissue of the user and the at**

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

*least four detectors when the physiological measurement device is worn by the user.*

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [2].  APPLE-1003, ¶¶[141]-[142]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0029], [0032]-[0033], FIGS. 1, 2, 3, 4(a); *see also* APPLE-1009, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.  As explained above in Sections IV.B.1-5, *supra*, the Aizawa-Inokawa-Ohsaki-Mendelson-2006 device would have included a cover that is placed above holder 23 to realize improved adhesion between the user's wrist and the sensor's surface, improve detection efficiency, and protect the elements within the sensor housing, including each of the at least four detectors.  APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1008, ¶¶14-15, FIG. 1; APPLE-1024, ¶¶[0033], [0035], FIG. 6.

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765



APPLE-1006, FIG. 1(b) (annotated).

Accordingly, Mendelson-Ohsaki-Mendelson-2006 renders obvious [2].

*Claim 3*

***[3] The physiological measurement system of claim 2, wherein the at least four detectors comprise at least eight detectors.***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [3].  *Supra* Section IV.B.1-5, [1pre]-[1j]; APPLE-1003, ¶¶[143]-[144].  For example, Aizawa explains that the number of photodetectors in its sensor can be increased to "further improve detection efficiency," and Aizawa's FIG. 4(a) (reproduced below) depicts a sensor including eight detectors.  APPLE-1006, ¶[0032].  Consistent with this

64

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

and related disclosure, a POSITA would have been motivated, and would have found it obvious, to implement the Aizawa-Inokawa-Ohsaki-Mendelson-2006 device with eight detectors.  APPLE-1003, ¶[143].



APPLE-1006, FIG. 4(a) (annotated).

Accordingly, [3] would have been obvious over Aizawa-Inokawa-Ohsaki-Mendelson-2006.

*Claim 4*

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

**[4] The physiological measurement system of claim 3, wherein at least part of the protruding convex surface is light permeable to allow light to reach at least one of the at least four detectors.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [4].  *See supra*, Sections IV.B.1-5, [3]; APPLE-1003, ¶[145].  For example, the Aizawa-Inokawa-Ohsaki-Mendelson-2006 sensor stores each of the photodetectors 22 in cavities included within the opaque holder 23, and beneath a translucent convex cover situated between the sensor and the user's tissue.  APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, ¶¶[0015], [0017], [0024], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶[145].

## Claim 5

**[5] The physiological measurement system of claim 4, wherein the physiological sensor device further comprises: an at least partially opaque layer blocking one or more optical paths to at least one of the at least four detectors, wherein the at least partially opaque layer comprises the windows that allow light to pass through to the corresponding detectors.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [5].  *Supra*, Sections IV.B.1-6, [1pre]-[1d], and [2]-[4].  APPLE-1003, ¶[146].  For example, the Aizawa-Inokawa-Ohsaki-Mendelson-2006 sensor's holder 23 includes an opaque surface that would block optical paths to the photodetectors, except for paths through cavities 23a, which are windows in the opaque material of holder 23 that

66

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

allow light to pass through to the corresponding detectors while avoiding satura-

tion.  APPLE-1003, ¶[146]; *see also* APPLE-1019, 79, 86, 94; APPLE-1006,

¶¶[0012], [0023], [0024], FIGS. 1(a), 1(b).

*Claim 6*

**[6] The physiological measurement system of claim 2, wherein the physiological
sensor device further comprises: a substrate having a first surface, wherein the
at least four detectors are arranged on the first surface.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [6].  *Supra* Sec-

tions IV.B.1-6, [1pre]-[1j].  APPLE-1003, ¶¶[147]-[149].  As discussed for Section

IV.B.5, the Aizawa-Inokawa-Ohsaki-Mendelson-2006 sensor would have included

a substrate.  APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023],

[0027]-[0029], [0032]-[0033], FIGS. 1, 2, 3, 4(a); APPLE-1009, ¶[0017], FIG. 2.

For example, a POSITA would have understood the surface of Aizawa's

holder 23 on which photodetectors 22 are arranged to be a substrate having a first

surface.  APPLE-1003, ¶[148].

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

FIG. 1 (a)



APPLE-1006, FIG. 1(a) (annotated).

FIG. 1 (b)



APPLE-1006, FIG. 1(b) (annotated).

68

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

# F I G . 4 (a)



APPLE-1006, FIG. 4(a) (annotated).

Additionally, Ohsaki's circuit board 9 on which the "light emitting element

6 and light receiving element 7" are arranged is shown to include a first surface.

APPLE-1009, ¶[0017]; APPLE-1003, ¶[149].

69

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

# FIG. 2



APPLE-1009, FIG. 2 (annotated).

*Claim 7*

***[7] The physiological measurement system of claim 6, wherein: the wall sur-
rounds at least the at least four detectors on the first surface, the wall operably
connects to the substrate on one side of the wall, and the wall operably connects
to the cover on an opposing side of the wall.***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [7].  *Supra*, Sec-

tions IV.B.1-6, [1pre]-[1j], [2]-[6].  APPLE-1003, ¶[150]; APPLE-1006, ¶¶[0012],

70

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

[0013], [0023], [0024], [0030], FIGS. 1(a), 1(b); APPLE-1009, Abstract, [0015],

[0017], [0025], FIGS. 1, 2, 4A, 4B.



APPLE-1006, FIG. 1(b) (annotated).

<u>*Claim 8*</u>

*[8] The physiological measurement system of claim 7, wherein the wall creates one or more gaps between the first surface of the substrate and a surface of the cover that is interior to the physiological sensor device, and wherein the at least four detectors are positioned on the first surface of the substrate within the one or more gaps.*

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [8].  APPLE-

1003, ¶¶[151]-[152].  As discussed for [1pre]-[1e] and [2]-[7], a POSITA would

have understood Aizawa to include a substrate on which the photodetectors 22 are

71

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

arranged, and that this substrate operably connects to holder 23, which both cir-

cumscribes and retains the photodetectors.  *Id*.; APPLE-1006, Abstract, ¶¶[0002],

[0005], [0008]-[0016], [0023]-[0024], [0027]-[0029], [0032]-[0033], FIGS. 1, 2, 3,

4(a); APPLE-1009, ¶[0017], FIG. 2.  Additionally, as shown in FIG. 1(b), "plate 6

[is] mounted to the detection face 23a of the holder 23" opposite the substrate on

which the photodetectors 22 are arranged.  APPLE-1006, ¶[0023].

As shown in FIG. 1(b) of Aizawa, Aizawa illustrates that its wall, holder 23,

creates one or more gaps between the surface of the substrate on which the photo-

detectors 22 are mounted and a surface of the convex cover that is interior to Ai-

zawa's sensor 1.  APPLE-1003, ¶[152].  In further detail, Aizawa's FIG. 1(b) illus-

trates that the photodetectors 22 are positioned on the surface of the substrate

within the one or more gaps created by holder 23 between the substrate and the

cover.

Exhibit F
Page 330

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765



APPLE-1006, FIG. 1(b) (annotated).

*Claim 10*

**[10] The physiological measurement system of claim 7, wherein a surface of the handheld computing device positions the touch-screen display.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [10].  APPLE-1003, ¶¶[153]-[154].  As discussed for [1pre]-[1j], [2]-[7], the Aizawa-Inokawa-Ohsaki-Mendelson-2006 device would have included a PDA such as the HP iPAQ h4150 PDA, which is utilized "as a local terminal" with a "low-cost touch screen interface" featuring a touch-screen display.  APPLE-1006, Abstract, [0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3,

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

4(a); APPLE-1008, ¶¶[0002], [0003], [0067], [0074]-[0077]; APPLE-1010, 1-4, FIG. 3; APPLE-1003, ¶[153].

As shown below, a surface of the HP iPAQ h4150 positions the touch-screen display.  APPLE-1010, FIG. 3; APPLE-1020, 1.



APPLE-1010, FIG. 3 (left) and APPLE-1020, 1 (right).

Exhibit F
Page 332

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

*Claim 11*

**[11] The physiological measurement system of claim 10, wherein the physiological parameter comprises at least one of: pulse rate, glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, or carbon monoxide.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [11].  APPLE-1003, ¶¶[155]-[157].  As discussed for [1pre]-[1j], [2]-[10], the physiological measurement system resulting from the combined teachings of Aizawa, Inokawa, Ohsaki, Mendelson-2006 would have included a "**pulse rate** detector" (APPLE-1006, Abstract) and a processor configured to wirelessly receive one or more signals responsive to at least the user's pulse rate.  APPLE-1003, ¶[155]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027]-[0028] ("for displaying the…**pulse rate data**"), [0033]; APPLE-1010, 1-4, FIG. 3.

For example, as shown below, Aizawa discloses displaying the "waveform of a pulse wave" or the "**pulse rate** data" output by the photodetectors.  APPLE-1006, ¶[0028].

75

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

# F I G . 3



APPLE-1006, FIG. 3.

Further, and as shown below, Mendelson-2006 discloses that the HP iPAQ h4150 PDA displays indicia responsive to measurements of physiological parameters that include $SpO_2$ and HR, the PDA having wirelessly received signals responsive to the user's $SpO_2$ and HR from a body-worn pulse oximeter.  APPLE-1003, ¶¶[156]-[157]; APPLE-1010, 2-3, FIG. 3.

Exhibit F
Page 334

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765



APPLE-1010, FIG. 3.

## *Claim 12*

**[12] The physiological measurement system of claim 11, wherein the protruding convex surface protrudes a height between 1 millimeter and 3 millimeters.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [12].  APPLE-1003, ¶¶[158]-[161].  As discussed in Sections IV.B.1-5, [1pre]-[1j], and [2]-[11], the Aizawa-Inokawa-Ohsaki-Mendelson-2006 device would have included a cover

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

featuring a protruding convex surface.  APPLE-1003, ¶[158]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027]-[0028], [0033]; APPLE-1009, Abstract, ¶¶[0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

The convex cover taught by Ohsaki is designed to be "in intimate contact with the surface of the user's skin," so as to prevent slippage of the detecting element from its position on the user's wrist.  APPLE-1009, ¶¶[0009]-[0010], FIG. 2.



APPLE-1009, FIG. 2 (annotated).

78

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

In incorporating Ohsaki's teachings, a POSITA would have found it obvious that a device designed to fit on a user's wrist would be on the order of millimeters. APPLE-1003, ¶¶[159]-160]; APPLE-1043, FIGS. 8-10, ¶¶[0074]-[0081] (distance between a lower surface of the watch housing and convex surface being 3 mm); APPLE-1010, 2 (describing its "optical reflectance transducer" as "small (∅ = 22mm)"); APPLE-1017, 2 (describing a "standard 24-pin (dimensions: 19 x 19 mm) microeletronic package" for its sensor); APPLE-1041, 9:40-65 (describing a protrusion on a biological measurement device that causes a subject's tissue to deform by a depth of about 2 to 20 mm).  Additionally, the POSITA would have taken the user's comfort into consideration—Ohsaki's convex cover, for example, is said to solve the problem of "the user feel[ing] uncomfortable" due to pressure from the device and belt on the user's limbs.  APPLE-1009, ¶[0006].

A POSITA would have found it obvious that in order to provide a comfortable cover featuring a protruding convex surface that prevents slippage, the surface should protrude a height between 1 millimeter and 3 millimeters.  APPLE-1003, ¶[161].  Indeed, there would have been a finite range of possible protruding heights, and it would have been obvious to select a protruding height that would have been comfortable to the user.  *Id.*

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

_Claim 13_

**[13] The physiological measurement system of claim 11, wherein at least one of the detectors is configured to detect light that has been attenuated by tissue of the user.**

Aizawa-Inokawa-Ohsaki renders obvious [13].  APPLE-1003, ¶[162].  As discussed in Sections IV.B.1-5, and [1pre]-[1j], *supra*, the Aizawa-Inokawa-Ohsaki-Mendelson-2006 sensor would have included a plurality of light emitting diodes, and at least four detectors that are configured to detect attenuated light that has been reflected by the user's tissue.  APPLE-1003, ¶[162]; APPLE-1006, ¶¶[0009] (Aizawa's photodetectors "detect light output from a light emitting diode and **reflected from the artery of a wrist** of a subject"—this light emitted by the light emitting diode is necessarily attenuated by the tissue of the subject), [0027].

_Claim 15_

**[15] The physiological measurement system of claim 13, wherein a portion of the physiological sensor device comprises one of at least two sizes, the two sizes intended to be appropriate for larger users and smaller users.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [15].  APPLE-1003, ¶¶[163]-[166].  For example, a POSITA would have found it obvious that a device designed to fit on a user's wrist could be of different sizes to accommodate different sizes of users.  APPLE-1003, ¶[163].

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

By the Critical Date, it was well known that pulse oximetry and pulse rate monitoring devices could be strapped to the user's arm. *Id.*, ¶[164]; APPLE-1018, 1-3, FIG. 2; APPLE-1006, ¶[0026]; *see also* APPLE-1012, 2:14-27, 4:13-22. Ohsaki, for example, describes a "wristwatch-type human pulse wave sensor" that "is attached on the back side of the user's wrist by a dedicated belt [10]," as shown in Ohsaki's FIG. 1. APPLE-1009, ¶¶[0009], [0018].



APPLE-1009, FIG. 1 (annotated).

In particular, Ohsaki's "detecting element 2 is fixed on the user's wrist 4 by a dedicated belt 10," "so that regular pressure is applied to the user's wrist." APPLE-1009, ¶[0018]. A POSITA would have found it obvious to include an attachment

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

feature, such as Ohsaki's belt 10, as part of the Aizawa-Inokawa-Ohsaki-Mendelson-2006 sensor device, to enable that device to be secured on the user's wrist. APPLE-1003, ¶[165].

Furthermore, a POSITA would have been motivated to ensure user comfort, and would have found it obvious to modify the Aizawa-Inokawa-Ohsaki-Mendelson-2006 sensor device to provide different sizes of components (e.g., Ohsaki's belt) for differently sized users, such that "regular pressure is applied to the user's [body]." APPLE-1003, ¶[166]; APPLE-1009, ¶[0018]. The user's comfort is an important consideration for a wrist-worn sensing device—Ohsaki's convex cover partially alleviates the problem in which "the user feels uncomfortable" due to pressure from the device and belt on the user's limbs. APPLE-1009, ¶[0006]. Indeed, medical devices were commonly adjustable or provided in different sizes to accommodate the needs of different subjects before the Critical Date. APPLE-1003, ¶[166]; APPLE-1013, ¶¶[0034], [0057]; APPLE-1006, ¶¶[0012], [0013], [0023], [0024], [0030], FIGS. 1(a), 1(b).

*Claim 16*

**[16] The physiological measurement system of claim 13, wherein the at least four detectors are arranged such that a first detector and a second detector of the least four detectors are arranged across from each other on opposite sides of a central point along a first axis, and a third detector and a fourth detector of the least four detectors are arranged across from each other on opposite sides of the central point along a second axis which is different from the first axis.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [16].  APPLE-1003, ¶[167].  APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a).  For example, in each of Aizawa's FIGS. 1(a) and 4(a) (reproduced below), a first detector and a second detector are arranged across from each other on opposite sides of a central point along a first axis, and a third detector and a fourth detector are arranged across from each other on opposite sides of the central point along a second axis which is different from the first axis.  APPLE-1003, ¶[167]; APPLE-1006, ¶¶[0029], [0011], claim 3.

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765



APPLE-1006, FIG. 4(a) (annotated).

*Claim 17*

**[17] The physiological measurement system of claim 16, wherein the first axis is perpendicular to the second axis, and wherein the first, second, third and fourth detectors form a cross pattern about the central point.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [17].  APPLE-1003, ¶[168].  For example, as discussed previously (*see e.g.,* Sections IV.B.1-5, and [1pre]-[1j], [16], *supra*) and as shown in Aizawa's FIGS. 1(a) and 4(a) (reproduced below), Aizawa discloses a sensor configuration that has a first axis is perpendicular to a second axis, and wherein the first, second, third and fourth detectors form a cross pattern about the central point.  APPLE-1006, ¶¶[0023], [0020], FIG. 4(a); *see also* FIG. 1(a).

Exhibit F
Page 342

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765



APPLE-1006, FIG. 4(a) (annotated).

*Claim 18*

 *[18] The physiological measurement system of claim 17, wherein the protruding convex surface protrudes a height greater than 2 millimeters and less than 3 millimeters..*

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [17].  *See* [1pre]-[1j], [2]-[17], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶[169]; APPLE-1010, 2; APPLE-1017, 2; APPLE-1041, 9:40-65.

85

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

*Claim 19*

 **[19] The physiological measurement system of claim 18, wherein the attenuated light is reflected by the tissue.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [19].  *See* [1pre]-[1j], [2]-[18], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶[170]; APPLE-1006, ¶¶[0009], [0027], FIG. 1(b).

*Claim 20*

**[20] The physiological measurement system of claim 13, wherein the physiological parameter comprises a state or trend of wellness of the user.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [20].  APPLE-1003, ¶¶[171]-[172].  As discussed in Sections IV.B.1-5, [1pre]-[1j], and [2]-[19], Aizawa-Inokawa-Ohsaki-Mendelson-2006 would have included a "pulse wave sensor" and "pulse rate detector" (APPLE-1006, Abstract) and a processor configured to wirelessly receive one or more signals responsive to at least the user's pulse.  APPLE-1003, ¶[171]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027]-[0028] ("for displaying the…pulse rate data"), [0033]; APPLE-1010, 1-4, FIG. 3.  Moreover, Aizawa, Ohsaki, and Mendelson-2006 each describe measuring physiological parameters such as a pulse wave signal, oxygen saturation, and heart rate.  APPLE-1009, Abstract; APPLE-1010, 1-4, FIG. 3.

86

A POSITA would have understood that the described measurements represent a state or trend of wellness of a subject.  APPLE-1003, ¶[172].  Indeed, the '765 Patent acknowledges that determining the state or trend of wellness of a patient was well-known as it states, in its background section, that "glucose, oxygen…[and] other physiological parameters" are "useful in determining a state or trend of wellness of a patient." APPLE-1001, 2:15-20.  For example, a pulse wave signal provides information regarding a subject's pulse rate and a trend of the subject's pulse over time.  The '765 Patent does not define "wellness", but a POSITA would have understood that, for example, pulse rate as a function of time represents a state or trend of wellness of the subject.  APPLE-1003, ¶[172].

*Claim 21*

**[21pre] A physiological measurement system comprising:**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [21pre].  *See* [1pre]-[1j], Sections IV.B.1-5, *supra*; APPLE-1003, ¶[173].

**[21a] a physiological sensor device comprising:**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [21a].  *See* [1pre]-[1j], [21pre], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶[174].

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

*[21b] one or more emitters configured to emit light into tissue of a user;*

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [21b].  *See*

[1pre]-[1j], [21pre]-[21a], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶[175].

*[21c] at least four detectors, wherein each of the at least four detectors has a cor-
responding window that allows light to pass through to the detector;*

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [21c].  *See*

[1pre]-[1j], [21pre]-[21b], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶[176].

*[21d] a wall that surrounds at least the at least four detectors; and*

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [21d].  *See*

[1pre]-[1j], [21pre]-[21c], Sections IV.B.1-5, *supra*; APPLE-1003, ¶[177].

*[21e] a cover comprising a protruding convex surface, wherein the protruding
convex surface is positioned such that the protruding convex surface is located
between tissue of the user and all of the at least four detectors when the physio-
logical sensor device is worn by the user, wherein at least a portion of the pro-
truding convex surface is rigid, and wherein the cover operably connects to the
wall; and*

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [21e].  *See*

[1pre]-[1j], [21pre]-[21d], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶[178].

88

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

**[21f] a handheld computing device in wireless communication with the physiological sensor device.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [21f].  *See*

[1pre]-[1j], [21pre]-[21e], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶[179].


<u>Claim 22</u>

**[22a] The physiological measurement system of claim 21, wherein the handheld computing device comprises: one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user;**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [22a].  *See*

[1pre]-[1j], [21pre]-[21f], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶[180].


**[22b] a touch-screen display configured to provide a user interface, wherein:**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [22b].  *See*

[1pre]-[1j], [21pre]-[21f], [22a], and Sections IV.B.1-5, *supra*; APPLE-1003,

¶[181].

89

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

***[22c] the user interface is configured to display indicia responsive to measure-
ments of the physiological parameter, and***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [22c].  *See*
[1pre]-[1j], [21pre]-[21f], and [22a]-[22b], and Sections IV.B.1-5, *supra*; APPLE-
1003, ¶[182].

***[22d] an orientation of the user interface is configurable responsive to a user in-
put; and***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [22d].  *See*
[1pre]-[1j], [21pre]-[21f], [22a]-[22c], and Sections IV.B.1-5, *supra*; APPLE-1003,
¶[183].

***[22e] a storage device configured to at least temporarily store at least the meas-
urements of the physiological parameter.***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [22e].  *See*
[1pre]-[1j], [21pre]-[21f], [22a]-[22d], and Sections IV.B.1-5, *supra*; APPLE-
1003, ¶[184].

*Claim 23*

***[23] The physiological measurement system of claim 22, wherein the at least
four detectors comprise at least eight detectors.***

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [23].  *See* [1pre]-

90

[1j], [2]-[3], [21pre]-[21f], [22a]-[22e], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶[185].

## *Claim 24*

**[24] The physiological measurement system of claim 23, wherein at least part of the protruding convex surface is light permeable to allow light to reach at least one of the at least four detectors.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [24].  *See* [1pre]-[1j], [2]-[4], [21pre]-[21f], [22a]-[23], and Sections IV.B.1-5, *supra*, APPLE-1003, ¶[186].

## *Claim 25*

**[25] The physiological measurement system of claim 23, wherein the physiological sensor device further comprises: an at least partially opaque layer blocking one or more optical paths to at least one of the at least four detectors, wherein the at least partially opaque layer comprises the windows that allow light to pass through to the corresponding detectors.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [25].  *See* [1pre]-[1j], [2]-[5], [21pre]-[21f], [22a]-[23], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶[187].

_Claim 26_

**[26] The physiological measurement system of claim 25, wherein the physiological sensor device further comprises: a substrate having a first surface, wherein the at least four detectors are arranged on the first surface, and wherein the wall surrounds at least the at least four detectors on the first surface, wherein: the wall operably connects to the substrate on one side of the wall, and the wall operably connects to the cover on an opposing side of the wall.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [26].  _See_ [1pre]-[1j], [2]-[5], [21pre]-[21f], [22a]-[24], and Sections IV.B.1-5, _supra_; APPLE-1003, ¶[188].

_Claim 27_

**[27] The physiological measurement system of claim 26, wherein a surface of the handheld computing device positions the touch-screen display.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [27].  _See_ [1pre]-[1j], [2]-[8], [10], [21pre]-[21f], [22a]-[26], and Sections IV.B.1-5, _supra_; APPLE-1003, ¶[189].

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

*Claim 28*

**[28] The physiological measurement system of claim 27, wherein the physiological parameter comprises at least one of: pulse rate, glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, carbon monoxide, or a state or trend of wellness of the user.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [28].  *See* [1pre]-[1j], [2]-[8], [10], [11], [13], [20], [21pre]-[21f], [22a]-[27], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶[190].

*Claim 29*

**[29] The physiological measurement system of claim 28, wherein the protruding convex surface protrudes a height greater than 2 millimeters and less than 3 millimeters.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 renders obvious [29].  *See* [1pre]-[1j], [12], [18], [21pre]-[21f], [22a]-[28], and Sections IV.B.1-5, *supra*; APPLE-1003, ¶[191].

### C. GROUND 2: Claim 9 is obvious over Aizawa, Inokawa, Ohsaki, Mendelson-2006, and Bergey

#### 1.   Overview of Bergey

Bergey discloses a wristwatch in which the "electronics are hermetically sealed in the watch case to be free of dust and moisture," producing "a unit that is shockproof and waterproof."  APPLE-1016, Abstract, 2:56-67.

93

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

In further detail, Bergey discloses a method for sealing internal electronics that are "mounted on [the] circuit substrate" and "hermetically sealed all the way around between [an] inner cover[] and [a] front plate" within the watch case.  APPLE-1016, 8:48-9:34.  The seal "acts as protection to the electronics and also prevents condensation of water" within the case.  *Id.*; APPLE-1003, ¶¶[75]-[76].



APPLE-1016, FIG. 7 (annotated).

### 2.    Combination of Aizawa, Inokawa, Ohsaki, Mendelson-2006 and Bergey

It was well known by the Critical Date that internal electronics within user-worn devices could be "hermetically sealed in the…case to be free of dust and moisture," and that "sealed components [could be] resiliently mounted for improved shock resistance."  *Id.*, ¶[192]; APPLE-1016, Abstract.

Exhibit F
Page 352

Bergey's description of protecting electronics within a case would have motivated a POSITA to modify Aizawa-Inokawa-Ohsaki-Mendelson-2006 to hermetically seal internal components, including the detectors, using the substrate, wall, and cover.  APPLE-1003, ¶[193]; APPLE-1016, Abstract, 2:56-67, 8:48-9:34.

Indeed, a POSITA would have understood that the benefits of hermetically sealing internal electronics of a wristwatch would have applied directly to hermetically sealing internal electronics of a physiological sensing system that is similarly configured to be worn on a subject's wrist.  APPLE-1003, ¶[194].  It would have been well within the knowledge and skill of a POSITA to configure the substrate, the wall, and the cover in the Aizawa-Inokawa-Ohsaki-Mendelson-2006 device to hermetically seal the detectors.  *Id.*

## Claim 9

**[9] The physiological measurement system of claim 7, wherein the substrate, the wall, and the cover together hermetically seal the at least four detectors.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006-Bergey renders obvious [9].  *See* [1pre]-[1j], [2]-[8], and Sections IV.B.1-6, IV.C.1-2, *supra*; APPLE-1003, ¶¶[195]-[196]; APPLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023]-[0024], [0027]-[0030], [0032]-[0033], FIGS. 1, 2, 3, 4(a).

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

As explained in Sections IV.C.1-2, Bergey would have motivated a POSITA to hermetically the internal components of the Aizawa-Inokawa-Ohsaki-Mendelson-2006 device, including the at least four photodetectors 22, within the cover, wall, and substrate.  APPLE-1003, ¶[196]; APPLE-1016, Abstract, 2:56-67, 8:48-9:34, FIG. 7.



APPLE-1016, FIG. 7 (annotated).

### D. GROUND 3: Claim 14 is obvious over Aizawa, Inokawa, Ohsaki, Mendelson-2006, and Goldsmith

#### 1.    Overview of Goldsmith

Goldsmith discloses a watch controller device 900.  APPLE-1011, ¶¶[0085], [0098], [0104], [0010], claim 6, FIGS. 9A, 9B.  As depicted in Goldsmith's FIGS.

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

9A and 9B (reproduced below), device 900 can be "used with any number of...di-

agnostic devices" and sensors to obtain various physiological measurements, such

as user temperature, blood glucose level, and oxygen level. *Id.*, ¶¶[0082]-[0084],

[0095], [0037], [0038], claims 25, 26.



APPLE-1011, FIGS. 9A, 9B.

In more detail, Goldsmith's device 900 includes a display 910 for displaying

data "received from a sensor transmitter on the patient's skin," from "any number

of therapy/diagnostic devices," and/or from user input. *Id.*, ¶¶[0082], [0087],

[0095], [0102]. Goldsmith's device can, for example, conveniently monitor and

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

display "heart rate…as in an exercise monitor," and may monitor and display "the

patient's temperature, salinity (from sweat), ketones, or other characteristic[s]."

*Id*., ¶¶[0002], [0013], [0014], [0035]-[0037], [0082], [0088], [0095]; APPLE-1003,

¶¶[77]-[78].

### 2.   Combination of Aizawa, Inokawa, Ohsaki, Mendelson-2006 and Goldsmith

Goldsmith's teachings would have motivated a POSITA to modify Aizawa-

Inokawa-Ohsaki-Mendelson-2006 to display the user's temperature, so as to obtain

the advantages of providing multiple physiological measurements in a single inte-

grated device, to "provide convenience and ease of use," and to "make the moni-

toring procedure fast and accurate."  APPLE-1003, ¶[197]; APPLE-1011,

¶¶[0011], [0087], [0095], [0102].  A POSITA would have understood that a user's

temperature, like pulse rate or $SaO_2$, represents a state or trend of wellness of the

subject, and would have thus been motivated to include the user temperature along

with $SaO_2$ as displayed indicia in Aizawa-Inokawa-Ohsaki-Mendelson-2006.  AP-

PLE-1038, 47:61-48:4, (explaining that skin surface temperature is indicative of

"thermal regulation" and "changes in blood flow [that]...can be detected [by a sen-

sor] and appropriately [*sic*] treated."); APPLE-1003, ¶[197].

Consistent with Mendelson-2006's description of the PDA's "simple GUI"

being configured to allow for "easy activation of various functions," the POSITA

98

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

would have adapted the Aizawa-Inokawa-Ohsaki-Mendelson-2006 combination
"to monitor the patient's temperature" to "provide convenience and ease of use."
APPLE-1003, ¶[198]; APPLE-1010, 1-4, FIGS. 1-3; APPLE-1011, ¶[0002],
[0011], [0037], [0095].

## *Claim 14*

 **[14] The physiological measurement system of claim 13, wherein the displayed
indicia are further responsive to temperature.**

Aizawa-Inokawa-Ohsaki-Mendelson-2006 and Aizawa-Inokawa-Ohsaki-
Mendelson-2006-Goldsmith each render obvious [14].  APPLE-1003, ¶¶[199]-
[202].

To the extent that providing a displayed indicia that is *further* responsive to
temperature means a device in which a user's temperature directly affects the dis-
played indicia (e.g., a $SaO_2$ reading), it would have been obvious that Aizawa-In-
okawa-Ohsaki-Mendelson-2006 alone provides this feature.  APPLE-1003, ¶[200].
As discussed in Sections IV.B.1-6, IV.C.1-2, [1pre]-[1j] and [2]-[13], the Aizawa-
Inokawa-Ohsaki-Mendelson sensor would have included a touch-screen display
that provides a GUI including display indicia that are response to a user input.  AP-
PLE-1006, Abstract, ¶¶[0002], [0005], [0008]-[0016], [0023], [0027], [0033]; AP-
PLE-1010, 1-4, FIG. 3; APPLE-1020, 1-4; *see also* APPLE-1009, ¶¶[0005],
[0020]); APPLE-1003, ¶[200].

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

Consistent with Mendelson-2006's description of the PDA's "simple GUI" being configured to allow for "easy activation of various functions," a POSITA would have found it obvious to make an orientation of the PDA's user interface configurable responsive to temperature, for the sake of user convenience.  APPLE-1003, ¶[201]; APPLE-1010, 3; APPLE-1020, 2, 6.  A POSITA would have understood that a display indicia that changes when the temperature reaches a threshold value is responsive to temperature.  *Id*.  Thus, a POSITA would have found it obvious that a system resulting from the combination of Aizawa, Inokawa, Ohsaki, and Mendelson-2006 would have allowed an orientation of the user interface to be further responsive to temperature.  APPLE-1003, ¶[201].

However, to the extent that providing a displayed indicia that is *further* responsive to temperature means that the device displays a user temperature, it would have also been obvious to a POSITA to modify Aizawa-Inokawa-Ohsaki-Mendelson-2006, based on Goldsmith's teachings, to display the user's temperature as discussed above in Sections IV.D.1-2.  APPLE-1003, ¶[202]; APPLE-1011, ¶¶[0011], [0087], [0095], [0102].

## V.    PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION

The *NHK-Fintiv* rule should not be applied because it violates the AIA,

which allows IPR to proceed in tandem with infringement litigation so long as the

petition is filed within one year of service of a complaint of infringement.  *See* 35

U.S.C. § 315(b).  The rule also is arbitrary and capricious because its vague factors

lead to speculative, unpredictable, and unfair outcomes.  Further, the rule is proce-

durally invalid because it was not adopted through notice-and-comment rulemak-

ing.

However, consistent with Congressional intent and goals of *NHK-Fintiv*,

Apple asks the Board alone to consider challenges raised in this Petition.  *Apple*

*Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11, 6 (PTAB 2020).

Unlike *NHK*, there is no basis for discretionary denial of this Petition under

§ 325(d), which would only be appropriate if the same or substantially the same art

or arguments were previously presented to the Office.  *Advanced Bionics LLC v.*

*MED-EL Elektromedizinische Gerate GmbH*, IPR2019-01469 Pap. 6, 8-10 (PTAB

Feb. 13, 2020)(precedential).  The arguments advanced in this Petition are prem-

ised on combinations of references that were never presented to the Office in con-

nection with the '765 Patent.  Indeed, there is no indication that Aizawa was con-

sidered by the examiner.  *See, generally,* APPLE-1002.

Moreover, and as explained below, *Fintiv* favors institution.

**A.  Factor 1: Institution Will Increase Likelihood of Stay**

Institution will enable the Board to resolve the issue of validity, and a find-

ing of invalidity will relieve the Central District of California (the "District Court")

of the need to continue with the companion litigation.  Apple moved to stay the

District Court case, and the opportunity for such simplification increases the likeli-

hood that the court will grant a stay in view of IPR institution.  *Uniloc USA, Inc. v.*

*Samsung Elecs. Am., Inc.*, Case No. 2:16-cv-642-JRG, 2-3 (E.D. Tex. 2017); *NFC*

*Techs. LLC v. HTC Am., Inc.*, Case No. 13-CV-1058, 2015 WL 1069111 (E.D.

Tex. 2015).

**B.  Factor 2: District Court Schedule**

Trial in the District Court case is scheduled for April 5, 2022.  APPLE-1031,

1.  Based on the 18-month IPR schedule, a Final Written Decision ("FWD") in an

IPR arising from the present Petition would issue in early April of 2022, near the

District Court trial date.

However, as in *NHK*, district court trial dates shift, even in normal times.

*Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap.

22, 17 (PTAB 2019).  The District Court is one of the country's busiest patent

courts, and the trial date of a case in the District Court that is before the same judge

and in which Patent Owner is a plaintiff has recently been postponed by approxi-

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

mately ten months.  APPLE-1036, 2.  Scheduling issues cannot be ruled out, as ex-

perts have professed that additional COVID-19 outbreaks are likely to arise and

California is facing new outbreaks.  APPLE-1034, 1 ("Fauci says second wave of

coronavirus is 'inevitable'"); APPLE-1035, 4 ("Los Angeles County is currently"

at "275 [cases] per 100,000 [residents]," which is higher than the recommended

level (100 per 100,000) for reopening).  And, as the Board recently found when

granting institution in *Juniper Networks, Inc. et al. v. Packet Intelligence LLC*, "it

is more likely that the District Court will incur delays due to the COVID-19 pan-

demic than the Board."  IPR2020-00388 Pap. 22 at 14 (Sept. 9, 2020)(district court

trial scheduled to begin before statutory FWD date).

### C.    Factor 3: Apple's Investment in IPR Outweighs Forced Investment in Litigation to Date

District court proceedings are still at an early phase.  The parties have yet to

file claim construction briefs, no claim construction orders have issued, and the

*Markman* hearing is not scheduled until February 8, 2021.  APPLE-1031, 1.  In ad-

dition, discovery is not scheduled to close until July 5, 2021.  *Id.*

Apple's substantial investment in these IPR proceedings should counterbal-

ance—if not outweigh—the resources invested in the co-pending litigation given

the speed with which Apple is filing IPR petitions on over two-hundred fifty

claims across thirteen patents.  It would be unjust to consider resources expended

in District Court (equally by both parties), without considering Apple resources expended to prepare seventeen IPR petitions that would be irretrievably lost without consideration on the merits, in addition to the extensive expenses that may be foregone through institution of Apple's petitions and that will otherwise certainly follow in co-pending litigation for which significant milestones exist.

Moreover, Masimo did not assert the '765 Patent against Apple until July 24, 2020, and Apple prepared and filed the instant petition challenging the '765 Patent within nine weeks of that date, many months ahead of the statutory period provided by Congress under § 315(b).  *See* APPLE-1037.  In context, it is laudable that Apple was able to muster the resources necessary to file this petition within that timeframe.  *Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap. 22, 18 (PTAB Apr. 3, 2019)(finding that petition filed two months before bar date is "well within the timeframe allowed by statute, weighing heavily in [petitioner's] favor").

### D.    Factor 4: The Petition Raises Unique Issues

Consistent with *Fintiv*, Apple asks the Board to consider the unique challenges raised in the Petition. Apple has voluntarily stipulated to counsel for Patent Owner that, if the Board institutes the present Petition, Apple will not assert that the Challenged Claims are invalid on the pending Petition's asserted grounds in

*Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.). AP-PLE-1032, 1; *see*, *e.g.*, *Apple v. Seven* at 15-17 (finding that such a stipulation by a petitioner "mitigates, at least to some degree, the concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions").

In addition, the Petition addresses claims that will not be addressed in District Court. Although Patent Owner has not yet narrowed the asserted claims, the District Court recently ordered the parties to submit a "Joint Claim Narrowing Proposal" by November 23, 2020. *See* APPLE-1033, 1; APPLE-1040, 1-3. Thus, based on this ordered reduction in the asserted claims, the District Court will necessarily address fewer claims than are challenged in this Petition (which challenges all claims of the patent), even assuming the District Court addresses validity at all, which is presently unknowable. *See, e.g., Apple v. Seven* at 18.

In short, grounds in this Petition are unique, and will not be addressed in District Court. *See*, *e.g.*, *Apple v. Seven* at 15-20 (weighing this factor against exercising 314(a) discretion where a petitioner challenged several unasserted claims and stipulated that it would not pursue the IPR grounds in the co-pending litigation).

### E.   Factor 5: The Petition Enables the Board to Resolve Invalidity of Claims that Might Otherwise be Reasserted

Apple's Petition is potentially helpful to future defendants. For at least this

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

reason, Apple's status as both Petitioner and defendant is, at worst, a neutral factor.
Taking the relevant circumstances into account, institution would serve overall efficiency and integrity, enabling the Board to determine invalidity of claims that Patent Owner might otherwise later assert against others.

### F.     Factor 6: Other Circumstances Support Institution

As *Fintiv* noted, "the factors ... are part of a balanced assessment of all the relevant circumstances in the case," and, "if the merits of a ground raised in the petition seem particularly strong … the institution of a trial may serve the interest of overall system efficiency and integrity …." *Fintiv*, 14-15.  As explained in the Petition (and Dr. Kenny's testimony), institution would result in invalidation of the Challenged Claims.

## VI.   CONCLUSION

The cited prior art references provided herein disclose or render obvious the Challenged Claims of the '765 Patent.  APPLE-1003, ¶[20].  Accordingly, Apple respectfully requests institution of an IPR for the Challenged Claims.

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

## VII.   PAYMENT OF FEES – 37 C.F.R. § 42.103

Apple authorizes the Patent and Trademark Office to charge Deposit Account No. 06-1050 for the fee set in 37 C.F.R. § 42.15(a) for this Petition and further authorizes payment for any additional fees to be charged to this Deposit Account.

Respectfully submitted,

Dated  September 30, 2020            /W. Karl Renner/
                                     W. Karl Renner, Reg. No. 41,265
                                     Andrew B. Patrick, Reg. No. 63,471
                                     Usman Khan, Reg. No. 70,439
                                     Grace J. Kim, Reg. No. 71,977
                                     Fish & Richardson P.C.
                                     3200 RBC Plaza, 60 South Sixth Street
                                     Minneapolis, MN 55402
                                     T: 202-783-5070
                                     F: 877-769-7945

(Control No. IPR2020-01715)         Attorneys for Petitioner

Exhibit F
Page 365

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

## CERTIFICATION UNDER 37 CFR § 42.24

Under the provisions of 37 CFR § 42.24(d), the undersigned hereby certifies

that the word count for the foregoing Petition for *Inter partes* Review totals 13,826

words, which is less than the 14,000 allowed under 37 CFR § 42.24.


Dated  September 30, 2020          /W. Karl Renner/
                                   W. Karl Renner, Reg. No. 41,265
                                   Andrew B. Patrick, Reg. No. 63,471
                                   Usman Khan, Reg. No. 70,439
                                   Grace J. Kim, Reg. No. 71,977
                                   Fish & Richardson P.C.
                                   3200 RBC Plaza, 60 South Sixth Street
                                   Minneapolis, MN 55402
                                   T: 202-783-5070
                                   F: 877-769-7945

                                   Attorneys for Petitioner

Attorney Docket No. 50095-0024IP2
IPR of U.S. Patent No. 10,631,765

# CERTIFICATE OF SERVICE

Pursuant to 37 CFR §§ 42.6(e)(4)(i) *et seq.* and 42.105(b), the undersigned

certifies that on September 30, 2020, a complete and entire copy of this Petition for

*Inter partes* Review and all supporting exhibits were provided via Federal Express,

to the Patent Owner by serving the correspondence address of record as follows:

KNOBBE, MARTENS, OLSON & BEAR, LLP
MASIMO CORPORATION (MASIMO)
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE CA 92614

/Diana Bradley/
Diana Bradley
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
(858) 678-5667

# Exhibit G

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent of:      Poeze, et al.
U.S. Patent No.:   10,702,194                    Attorney Docket No.: 50095-0025IP1
Issue Date:          July 7, 2020
Appl. Serial No.:   16/829,536
Filing Date:         March 25, 2020
Title:                   MULTI-STREAM DATA COLLECTION SYSTEM FOR NONIN-
                         VASIVE MEASUREMENT OF BLOOD CONSTITUENTS

**Mail Stop Patent Board**
Patent Trial and Appeal Board
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

## PETITION FOR *INTER PARTES* REVIEW OF UNITED STATES PATENT NO. 10,702,194 PURSUANT TO 35 U.S.C. §§ 311–319, 37 C.F.R. § 42

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

# TABLE OF CONTENTS

**I.**    REQUIREMENTS FOR IPR UNDER 37 C.F.R. §42.104.............................1
    **A.**  Grounds for Standing Under 37 C.F.R. §42.104(a)...................1
    **B.**  Challenge Under 37 C.F.R. §42.104(b) and Relief Requested ...............1
    **C.**  Claim Construction under 37 C.F.R. §§42.104(b)(3)..............................3
    **D.**  Level of Ordinary Skill in the Art.................................................3

**II.**    SUMMARY OF THE '194 PATENT ......................................................4

**III.**  THE CHALLENGED CLAIMS ARE UNPATENTABLE...........................7
    **A.**  [GROUND 1] – Claims 1-18, 20, 22-30 are rendered obvious by Aizawa in view of Mendelson-2003, Ohsaki, and Mendelson-2006....................7
        1.   Overview of Aizawa....................................................................7
        2.   Overview of Mendelson-2003...................................................10
        3.   Overview of Ohsaki...................................................................12
        4.   Overview of Mendelson-2006...................................................14
        5.   Combination of Aizawa, Mendelson 2003, Ohsaki, and Mendelson 2006 ......................................................................................16
        6.   Analysis ....................................................................................30
    **B.**  [GROUND 2] – Claims 19 and 21 are rendered obvious by Aizawa in view of Mendelson-2003, Ohsaki, Mendelson-2006, and Beyer ..........82

**IV.**  PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION.........85

**V.**    CONCLUSION..................................................................................90

**VI.**  PAYMENT OF FEES – 37 C.F.R. § 42.103 ......................................90

**VII.**  MANDATORY NOTICES UNDER 37 C.F.R §42.8(a)(1)......................90
    **A.**  Real Party-In-Interest Under 37 C.F.R. §42.8(b)(1)..............................90
    **B.**  Related Matters Under 37 C.F.R. §42.8(b)(2).........................................91
    **C.**  Lead And Back-Up Counsel Under 37 C.F.R. §42.8(b)(3)....................91
    **D.**  Service Information .................................................................92

i

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

# EXHIBITS

| APPLE-1001 | U.S. Patent No. 10,702,194 to Poeze, et al. ("the '194 patent") |
|---|---|
| APPLE-1002 | Excerpts from the Prosecution History of the '194 Patent ("the Prosecution History") |
| APPLE-1003 | Declaration of Dr. Thomas W. Kenny |
| APPLE-1004 | Curriculum Vitae of Dr. Thomas W. Kenny |
| APPLE-1005 | *Masimo Corporation, et al. v. Apple Inc.,* Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.) |
| APPLE-1006 | U.S. Pub. No. 2002/0188210 ("Aizawa") |
| APPLE-1007 | JP 2006-296564 ("Inokawa") |
| APPLE-1008 | Certified English Translation of Inokawa and Translator's Declaration |
| APPLE-1009 | U.S. Pat. No. 7,088,040 ("Ducharme") |
| APPLE-1010 | U.S. Pat. No. 6,198,951 ("Kosuda") |
| APPLE-1011 | Excerpts from How to Do Everything with Windows Mobile, Frank McPherson; McGraw Hill, 2006 ("McPherson") |
| APPLE-1012 | Excerpts from Master Visually Windows Mobile 2003, Bill Landon, et al.; Wiley Publishing, Inc., 2004 ("Landon") |
| APPLE-1013 | National Instruments LabVIEW User Manual |
| APPLE-1014 | U.S. Pub. No. 2001/0056243 ("Ohsaki") |

ii

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

| APPLE-1015 | "Design and Evaluation of a New Reflectance Pulse Oximeter Sensor," Y. Mendelson, et al.; Worcester Polytechnic Institute, Biomedical Engineering Program, Worcester, MA 01609; Association for the Advancement of Medical Instrumentation, Vol. 22, No. 4, 1988; pp. 167-173 ("Mendelson-1988") |
|---|---|
| APPLE-1016 | "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Y. Mendelson, et al.; Proceedings of the 28th IEEE EMBS Annual International Conference, 2006; pp. 912-915 ("Mendelson-2006") |
| APPLE-1017 | "Noninvasive Pulse Oximetry Utilizing Skin Reflectance Photoplethysmography," Y. Mendelson, et al.; IEEE Transactions on Biomedical Engineering, Vol. 35, No. 10, October 1988; pp. 798-805 ("Mendelson-IEEE-1988") |
| APPLE-1018 | "Acrylic: Strong, stiff, clear plastic available in a variety of brilliant colors," available at https://www.curbellplastics.com/Research-Solutions/Materials/Acrylic |
| APPLE-1019 | U.S. Pat. No. 7,031,728 ("Beyer") |
| APPLE-1020 | U.S. Pat. No. 7,092,735 ("Osann, Jr.") |
| APPLE-1021 | U.S. Pat. No. 6,415,166 ("Van Hoy") |
| APPLE-1022 | QuickSpecs; HP iPAQ Pocket PC h4150 Series |
| APPLE-1023 | RESERVED |
| APPLE-1024 | "Measurement Site and Photodetector Size Considerations in Optimizing Power Consumption of a Wearable Reflectance Pulse Oximeter," Y. Mendelson, et al.; Proceedings of the 25th IEEE EMBS Annual International Conference, 2003; pp. 3016-3019 ("Mendelson-2003") |
| APPLE-1025 | U.S. Pat. No. 6,801,799 ("Mendelson-'799") |
| APPLE-1026 | Declaration of Jacob Munford |

| APPLE-1027 | RESERVED |
|---|---|
| APPLE-1028 | U.S. Patent No. 7,251,513 ("Kondoh") |
| APPLE-1029 | Wikipedia: The Free Encyclopedia, "Universal asynchronous receiver-transmitter" at https://en.wikipedia.org/wiki/Universal_asynchronous_receiver-transmitter, last accessed 08/27/2020 |
| APPLE-1030 | RESERVED |
| APPLE-1031 | Scheduling Order, *Masimo v. Apple et al.*, Case 8:20-cv-00048, Paper 37 (April 17, 2020) |
| APPLE-1032 | Stipulation by Apple |
| APPLE-1033 | Telephonic Status Conference, *Masimo v. Apple et al.*, Case 8:20-cv-00048, Paper 78 (July 13, 2020) |
| APPLE-1034 | Joseph Guzman, "Fauci says second wave of coronavirus is 'inevitable'", TheHill.com (Apr. 29, 2020), available at: https://thehill.com/changing-america/resilience/natural-disasters/495211-fauci-says-second-wave-of-coronavirus-is |
| APPLE-1035 | "Tracking the coronavirus in Los Angeles County," LATimes.com (Aug. 20, 2020), available at https://www.latimes.com/projects/california-coronavirus-cases-tracking-outbreak/los-angeles-county/ |
| APPLE-1036 | Order Amending Scheduling Order, Masimo et al. v. True Wearables et al., Case 8:18-CV-02001 (July 7, 2020) |
| APPLE-1037 | *Masimo Corporation, et al. v. Apple Inc.*, Second Amended Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.) |
| APPLE-1038 to 1039 | RESERVED |
| APPLE-1040 | Order Granting Stipulation to Amend the Scheduling Order, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 201 (September 21, 2020) |

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

APPLE-1041          RESERVED

APPLE-1042          U.S. Patent No. 7,230,227 ("Wilcken")

APPLE-1043 to 1047          RESERVED

v

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

Apple Inc. ("Petitioner" or "Apple") petitions for *inter partes* review ("IPR") under 35 U.S.C. §§311–319 and 37 C.F.R. §42 of claims 1-30 ("the Challenged Claims") of U.S. Patent No. 10,702,194 ("'194 patent").  As explained in this petition, there exists a reasonable likelihood that Apple will prevail with respect to at least one of the Challenged Claims.

## I.     REQUIREMENTS FOR IPR UNDER 37 C.F.R. §42.104

### A.     Grounds for Standing Under 37 C.F.R. §42.104(a)

Apple certifies that the '194 Patent is available for IPR.  The present petition is being filed within one year of service of a complaint against Apple in *Masimo Corporation, et al. v. Apple Inc.,* Civil Action No. 8:20-cv-00048 (C.D. Cal.).  Apple is not barred or estopped from requesting this review challenging the Challenged Claims on the below-identified grounds.

### B.     Challenge Under 37 C.F.R. §42.104(b) and Relief Requested

Apple requests an IPR of the Challenged Claims on the grounds set forth in the table below, and requests that each of the Challenged Claims be found unpatentable.  Additional explanation and support is set forth in APPLE-1003, the Declaration of Dr. Thomas W. Kenny.  *See* APPLE-1003, ¶¶20-214.

| Ground | Claims | Basis for Rejection |
|---|---|---|
| **Ground 1** | **1-18, 20, 22-30** | §103 over Aizawa, Mendelson-2003, Ohsaki, Mendelson-2006 |
| **Ground 2** | **19, 21** | §103 over Aizawa, Mendelson- |

1

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

| Ground | Claims | Basis for Rejection |
|--------|--------|---------------------|
|  |  | 2003, Ohsaki, Mendelson-2006, Beyer |

The '194 patent claims priority to a number of U.S. patent applications, the earliest of which was filed on 07/02/2009, as well as to a number of U.S. provisional applications, the earliest of which was filed on 07/03/2008. APPLE-1001, Cover. Solely for purposes of evaluating prior art in this proceeding and without conceding the propriety of these priority claims, this Petition will treat 07/03/2008, as the earliest alleged effective filing date (*i.e.,* the "Earliest Claimed Date") of the '194 patent. The references relied on in the above grounds (as well as other supporting references mentioned in this Petition) are printed publications and qualify as prior art to the '194 patent under either date, at least under the sections shown in the following table. *See* APPLE-1026. None of these references were substantively considered during prosecution of the '194 patent. *See, generally,* APPLE-1002. Mendelson-2003 does appear as one among hundreds of listed references, but there is no indication that it was considered by the examiner. *Id.*

| Reference | Qualifying Date | Earliest Claimed Date |
|-----------|-----------------|-----------------------|
| Aizawa | 12/12/2002 | 102(b) |
| Mendelson-2003 | 09/2003 | 102(b) |
| Ohsaki | 12/27/2001 | 102(b) |
| Mendelson-2006 | 12/26/2007 | 102(a) |
| Beyer | 04/14/2006 | 102(b) |

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

### C.     Claim Construction under 37 C.F.R. §§42.104(b)(3)

Petitioner submits that all claim terms should be construed according to the

*Phillips* standard.  *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); 37

C.F.R. §42.100.  Here, based on the evidence below and the prior art's description

of the claimed elements being similar to that of the '194 patent specification, no

formal claim constructions are necessary in this proceeding because "claim terms

need only be construed to the extent necessary to resolve the controversy."  *Well-*

*man, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011).

### D.     Level of Ordinary Skill in the Art

A person of ordinary skill in the art relating to the subject matter of the '194

patent as of 07/03/2008 ("POSITA") would have been a person with a working

knowledge of physiological monitoring technologies.  The person would have had

a Bachelor of Science degree in an academic discipline emphasizing the design of

electrical, computer, or software technologies, in combination with training or at

least one to two years of related work experience with capture and processing of

data or information, including but not limited to physiological monitoring technol-

ogies.  APPLE-1003, ¶¶21-22.  Alternatively, the person could have also had a

Master of Science degree in a relevant academic discipline with less than a year of

related work experience in the same discipline.  *Id*

Exhibit G
Page 377

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

## II.    SUMMARY OF THE '194 PATENT

The '194 patent is directed to "noninvasive methods, devices, and systems

for measuring...physiologically relevant patient characteristics."  APPLE-1001,

2:40-46; APPLE-1003, ¶¶43-45.  "These characteristics can relate, for example, to

pulse rate, hydration, trending information and analysis, and the like."  APPLE-

1001, 2:46-48.

As illustrated in FIG. 1, the '194 patent describes a system that "include[s] a

sensor 101 (or multiple sensors) that is coupled to a processing device or physio-

logical monitor 109," where "the sensor 101 and the monitor 109 are integrated to-

gether into a single unit" or "separate from each other and communicate one with

another in any suitable manner, such as via a wired or wireless connection."  *Id.*,

11:56-63.

4

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194



**FIG. 1**

APPLE-1001, FIG. 1.

The '194 patent's FIGS. 2A-2D (reproduced below) illustrate "example monitoring devices 200 in which the data collection system 100 can be housed." APPLE-1001, 16:31-33.  Each of the "monitoring devices" as shown below includes a sensor and a "handheld monitor."  *Id.*, 5:48-51.  Further, each device may include components (*e.g.*, monitor and sensor) that are connected "via a wired or wireless connection."  *Id.*, 11:60-63.

Exhibit G
Page 379

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194



APPLE-1001, FIGS. 2A-2D.

In use, "the detectors 106 can capture and measure light transmitted from the emitter 104 that has been attenuated or reflected from the tissue in the measurement site 102," and "[t]he detectors 106 can output a detector signal 107 responsive to the light captured or measured." *Id.*, 14:11-19. The signal can correspond to, for instance, the pulse rate of the user. *Id.*, 2:46-68; APPLE-1003, ¶46. Although the '194 patent mostly describes a transmittance-type measurement device

6

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

where the emitter and the detector are positioned on opposite sides of the measurement site, the claims do not distinguish over a reflectance-type device where the emitter and the detector are positioned on the same side of the measurement site. *See* APPLE-1001, 14:13-16; APPLE-1003, ¶46.

The '194 patent further describes that its sensor can include a plurality of detectors that are disposed within a housing and covered by a transparent cover (*i.e.*, light permeable cover) having a protrusion. APPLE-1001, 26:3-11, 14D; APPLE-1003, ¶47.

## III.   THE CHALLENGED CLAIMS ARE UNPATENTABLE

### A.   [GROUND 1] – Claims 1-18, 20, 22-30 are rendered obvious by Aizawa in view of Mendelson-2003, Ohsaki, and Mendelson-2006

#### 1.   Overview of Aizawa

Aizawa describes a "pulse wave sensor for detecting a pulse wave by detecting light output from a light emitting diode and reflected from the artery of a wrist of a subject." APPLE-1006, Abstract; APPLE-1003, ¶¶49, 55.

Aizawa's sensor device detects a user's pulse wave by using an emitter, namely LED 21 (shown in green), to emit light that is picked up by photodetectors 22 (shown in red) that are arranged around the LED. APPLE-1006, [0023]. In particular, "[n]ear infrared radiation output toward the wrist 10 from the light emitting diode 21 is reflected by a red corpuscle running through the artery 11 of the

wrist 10 and this reflected light is detected by the plurality of photodetectors 22 so

as to detect a pulse wave." *Id.*, [0027].



APPLE-1006, FIGS. 1(a)-1(b); APPLE-1003, ¶50.

Aizawa's device includes windows in the form of tapered cavities, indicated

below in blue, that provide an opening for each of the detectors (and emitter) and

that serve to increase, for instance, the concentration of light collected by the de-

tectors, thereby increasing the signal to noise ratio.  APPLE-1003, ¶51.

8

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194





APPLE-1006, FIG. 1(b) (top), FIG. 1(a) (bottom), [0012], [0024]; APPLE-1003, ¶¶51-52.  In particular, Aizawa describes that such tapered openings "make[] it possible to expand the light emitting area and the light receiving area" such that "a pulse wave can be easily detected[.]"  APPLE-1006, [0012].

Aizawa further teaches a light permeable cover in the form of an acrylic transparent plate 6 (blue) that is mounted at the detection face 23a:

9

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194



APPLE-1006, FIG. 1(b), [0023]; APPLE-1003, ¶53.  This transparent plate not only provides a light permeable cover that covers the emitter/detector assembly, in a manner similar to what is described in the '194 patent, but it also provides improved adhesion between the detector and the wrist to "further improv[e] the detection efficiency of a pulse wave."  APPLE-1006, [0030]; APPLE-1003, ¶54.

## 2.    Overview of Mendelson-2003

Mendelson-2003 is directed to a "wearable pulse oximeter."  APPLE-1024, Abstract.  APPLE-1003, ¶¶56-58.  For this purpose, Mendelson-2003 teaches a "reflectance sensor comprising twelve identical Silicon PD ["photodiode"] chips[.]"  *Id.*, 3017.  As shown below, a first set of "six PDs were positioned in a close inner-ring configuration at a radial distance of 6.0mm from the LEDs," and a

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

"second set of six PDs spaced equally along an outer-ring, separated from the

LEDs by a radius of 10.0mm." *Id.*



APPLE-1024, FIG. 1.

In the detector configuration above, Mendelson-2003 teaches that ***"[e]ach***

***cluster of six PDs were wired in parallel*** and connected through a central hub to

the common summing input of a current-to-voltage converter." *Id.*, 3017.  Men-

delson-2003 teaches that power savings can be achieved by having two rings of de-

tectors arranged in this manner "***by widening the active area of the PD which***

***helps to collect a bigger portion of backscattered light intensity***." *Id.*, 3019.  That

is, Mendelson-2003 teaches a configuration of PDs (*i.e.*, arranged in two rings) that

is better able to collect reflected light than prior art configurations.  *Id.*, 3017,

11

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

3019; APPLE-1003, ¶57.  This configuration of PDs allows the device designer to
decrease the current provided to the LED because a lower brightness LED would
still produce an acceptable signal as a result of the increased light collection effi-
ciency of Mendelson-2003's PD configuration.  *See id.*, 3017 ("...minimizing the
drive currents supplied to the LEDs would contribute considerably toward the
overall power saving in the design of a more efficient pulse oximeter, particularly
in wearable wireless applications.").

Mendelson-2003 further teaches that its sensor can be mounted on the wrist
and can be "incorporated into a wrist watch device."  *Id.*, 3017.  By using the two
sets of photodiodes that are each connected in parallel, Mendelson-2003 discloses
that backscattered signals measured from the wrist were increased by 42% and
73%, respectively, for R and IR signals.  *Id.*, 3019.  Thus, Mendelson-2003 utilizes
its 2-ring PD arrangement to allow power-sensitive wearable devices, such as
wrist-based devices, to consume less power, thereby prolonging, for example, bat-
tery life.  *Id.*, 3017; APPLE-1003, ¶58.

### 3.    Overview of Ohsaki

Ohsaki is titled "Wristwatch-type human pulse wave sensor attached on
back side of user's wrist" and, as illustrated in Ohsaki's FIG. 1 (reproduced be-
low), is generally directed to a wrist-worn "pulse wave sensor" (APPLE-1014,
[0016]) featuring a "light emitting element" and a "light receiving element."

12

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

*Id*., [0017].  APPLE-1003, ¶¶59-60.  Ohsaki's sensor addresses problems such as user discomfort and movement of the sensor by using a "translucent board" with a convex surface that is "in intimate contact with the surface of the user's skin" to prevent slippage.  *Id*., [0009]-[0010].  Because the intensity of the light received by the detecting element "largely varies depending on the shift amount," or amount of movement of the detecting element, Ohsaki's convex surface reduces the "variation of the amount of reflected light which is emitted" from the LED and reaches the detecting element after reflection from the user's skin.  *Id*., [0025], FIG. 2.



FIG. 2

Exhibit G
Page 387

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

APPLE-1014, FIG. 2; APPLE-1003, ¶59.

### 4.      Overview of Mendelson-2006

Mendelson-2006 is generally directed to a "wireless wearable pulse oxime-

ter" device.  APPLE-1016, 912; APPLE-1003, ¶¶61-63.  Mendelson-2006's pulse

oximeter can measure and transmit various physiological parameters such as "arte-

rial oxygen saturation ($SpO_2$), heart rate (HR), body acceleration, and posture in-

formation."  APPLE-1016, 912.

Mendelson-2006 includes a sensor module, which can be attached to a user

(*e.g.*, at the forehead), as well as a body-worn receiver module, which wirelessly

receives information acquired by the sensor module wirelessly via an RF:



Exhibit G
Page 388

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

APPLE-1016, FIG. 1, 913; APPLE-1003, ¶62.

Physiological data received and processed by the receiver module can be wirelessly transmitted "to a PC" for enhanced monitoring of the sensed physiological parameters, such as by medics. APPLE-1016, 913; APPLE-1003, ¶63. An example PC ("iPAQ Pocket PC") that can be used for receiving data from the receiver module is shown below:



APPLE-1016, FIG. 3, 913-914. This particular PDA, HP's iPAQ h4150, "provides a low-cost touch screen interface," and "data from the wireless-enabled PDA can

15

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

also be downloaded or streamed to a remote base station via Bluetooth or other wireless communication protocols." *Id.*, 914; *see also generally* APPLE-1022.

### 5.    Combination of Aizawa, Mendelson 2003, Ohsaki, and Mendelson 2006

*First set of photodiodes connected to one another in parallel to provide a first signal stream / second set of photodiodes connected to one another in parallel to provide a second signal stream*

As described in Section III.A.1 and shown below, Aizawa teaches a first set of photodiodes in the form of four photodetectors 22 that are circularly arranged around a centrally located emitter.  APPLE-1006, [0023].  Moreover, a signal stream from this first set of photodiodes is sent to a drive detection circuit 24 that "amplif[ies] the outputs of the photodetectors." *Id.*; APPLE-1003, ¶66.



APPLE-1006, FIG. 1(a).

16

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

In one embodiment, Aizawa teaches that 8 or more photodetectors may be provided to improve detection efficiency:



FIG. 4 (a)

APPLE-1006, FIG. 4(a); APPLE-1003, ¶67.

Aizawa does not expressly teach "a second set of photodiodes [that] are connected to one another in parallel to provide a second signal stream" as recited in claim 1 of the '194 patent. That is, while Aizawa teaches various ways of using a single ring of multiple detectors to improve detection efficiency, it does not explicitly mention that these multiple detectors may be provided as first and second sets of photodiodes that are each connected in parallel and provide first and second signal streams, respectively. APPLE-1006, [0013], [0030], [0032]; APPLE-1003, ¶68. A POSITA would have realized, however, that the arrangement of Aizawa's

17

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

multiple detectors—which are arranged along a single ring—can be modified in view of Mendelson-2003 to be arranged along two rings, thereby further advancing Aizawa's goal of improving detection efficiency through increased power savings as taught by Mendelson-2003.  APPLE-1006, [0013], [0030], [0032]; APPLE-1024, 3017, 3019; APPLE-1003, ¶68.

For example, as shown below, Mendelson-2003 teaches using two rings of photodiodes/detectors ("near positioned" detectors highlighted in green, and "far positioned" detectors highlighted in red) in a wrist-based application where the detectors in each of the near and far rings are "***wired in parallel*** and connected through a central hub to the common summing input of a current-to-voltage converter."  APPLE-1024, 3017.  Mendelson-2003 further teaches that this configuration "widen[s] the active area of the PD which helps to collect a bigger portion of backscattered light intensity," thereby improving the light collection efficiency  *Id*., 3019; APPLE-1003, ¶69.  This configuration allows additional light to be captured, thereby allowing lower brightness LEDs to be used (and, consequently, reducing power consumption).  *Id*.

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194



APPLE-1024, FIG. 1.

Moreover, Mendelson-2003 is aimed at modifying conventional PD arrange-ments—*like that disclosed in Aizawa where a single ring of multiple PDs are mounted symmetrically around a light source*—to use two distinct rings of PDs that are mounted symmetrically around the light source. *See* APPLE-1024, 3016 (referring to conventional sensor designs based on "radial arrangement" of PDs or LEDs); APPLE-1003, ¶70 (citing APPLE-1006, [0032], APPLE-1015, 168, FIG. 2(A)). Mendelson-2003's 2-ring configuration thus allows additional light to be captured, which enables use of lower brightness LEDs (*i.e.*, LEDs driven by a lower driving current) while still achieving acceptable signals from the PDs. AP-PLE-1024, 3017, 3019; APPLE-1003, ¶70.

A POSITA in possession of both Aizawa and Mendelson-2003 would have recognized Mendelson-2003's use of two concentric rings (near-positioned and far-

Exhibit G
Page 393

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

positioned) of photodiodes as a desirable detector configuration that would reap similar benefits for Aizawa in terms of achieving "power savings in the design of a more efficient" pulse sensing device.  APPLE-1024, 3017; APPLE-1003, ¶71.  Indeed, by using Mendelson-2003's power-saving (and thus efficiency-enhancing) PD configuration, the power consumption of a wrist-based pulse sensing device as in Aizawa can be reduced through use of a less bright and, hence, lower power-consuming LED.  APPLE-1003, ¶71.  This, of course, would allow Aizawa's wrist-based device to enjoy a longer battery life.  *Id.*

An example implementation of adding an additional ring of detectors to Aizawa, as per Mendelson-2003, is illustrated below:



APPLE-1006, FIG. 1(a); APPLE-1003, ¶72.

Exhibit G
Page 394

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

A POSITA would further recognize, in view of Mendelson-2003, that such a two-ring arrangement can be implemented in a wrist sensor device as in Aizawa by wiring each ring of detectors in parallel and summing the input of their respective streams.  APPLE-1024, 3017; APPLE-1003, ¶73 (citing APPLE-1042, 5:20-67, FIGS 1-2; APPLE-1025, 4:23-30).

A POSITA also would have found it obvious to modify Aizawa with Mendelson-2003 to add an additional ring of detectors because doing so merely entails the use of known solutions to improve similar systems and methods in the same way.  APPLE-1003, ¶74.  Indeed, "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 417 (2007).  A POSITA would have recognized that applying Mendelson-2003's teachings regarding two, concentric rings of detectors that are each connected in parallel to Aizawa's sensor would have led to predictable results without significantly altering or hindering the functions performed by Aizawa's sensor.  APPLE-1003, ¶74.  A POSITA would have been motivated to provide the well-known feature of providing multiple rings of emitters to a pulse sensor to achieve the predictable benefits offered by Mendelson-2003's description of the same.  *Id.*.  In fact, Aizawa itself contemplates the addition of extra detectors to improve light collection efficiency, although it does

Exhibit G
Page 395

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

not disclose whether they may be arranged as two concentric rings.  APPLE-1006, [0032]; APPLE-1003, ¶74.  Moreover, as noted above, Mendelson-2003 expressly contemplates adding an additional ring of detectors to a conventional 1-ring PD arrangement precisely as found in Aizawa.  APPLE-1024, 3016; APPLE-1003, ¶74.

*Cover comprising a protruding convex surface*

Additionally, a POSITA would have combined the teachings of Aizawa-Mendelson-2003 with the teachings of Ohsaki such that the cover of Aizawa-Mendelson-2003's wrist-worn sensor would include a convex surface, improving adhesion between a subject's wrist and a surface of the sensor.  APPLE-1014, [0025] (the convex surface prevents slippage of the detecting element from its position on the subject's wrist, and the convex nature of the surface suppresses the "variation of the amount of the reflected light" that reaches the detecting element); APPLE-1003, ¶¶75-83.

In more detail, Ohsaki describes a "detecting element" that includes "a package 5, a light emitting element 6 (e.g., LED), a light receiving element 7 (e.g., PD), and a translucent board 8."  APPLE-1014, [0017].  "The package 5 has an opening and includes a" substrate in the form of "circuit board 9," on which light emitting element 6 and light receiving element 7 are arranged.  *Id.*; APPLE-1003, ¶76.  As shown in Ohsaki's FIG. 2, translucent board 8 is arranged such that, when the sensor is worn "on the user's wrist … the convex surface of the translucent board … is

22

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

in intimate contact with the surface of the user's skin"; this contact between the

convex surface and the user's skin is said to prevent slippage, which increases the

strength of the signals obtainable by Ohsaki's sensor.  APPLE-1014, [0015],

[0017], [0025], FIGS. 1, 2, 4A, 4B.



APPLE-1014, FIG. 2 (annotated)

Ohsaki explains that "if the translucent board 8 has a flat surface, the de-

tected pulse wave is adversely affected by the movement of the user's wrist as

shown in FIG. 4B (reproduced below)," but that if "the translucent board 8 has a

convex surface…variation of the amount of the reflected light…that reaches the

23

light receiving element 7 is suppressed." APPLE-1014, [0025]. The convex surface is also said to prevent "disturbance light from the outside" from penetrating translucent board 8. *Id*. Thus, when a convex cover is used, "the pulse wave can be detected without being affected by the movement of the user's wrist 4 as shown in FIG. 4A." *Id*.; APPLE-1003, ¶77.



APPLE-1014, FIGS. 4A, 4B.

As shown below, a POSITA would have found it obvious to modify the sensor's flat cover (left) to include a lens/protrusion (right), similar to Ohsaki's translucent board 8, so as to improve adhesion between the user's wrist and the sensor's

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

surface, improve detection efficiency, and protect the elements within the sensor housing.  APPLE-1014, ¶[0025] (explaining that the convex surface of translucent board 8 prevents slippage of a detecting element from its position on the wrist, and suppresses the "variation of the amount of the reflected light" that reaches the detecting element); APPLE-1003, ¶78.



APPLE-1006, FIG. 1(b) (annotated).

A POSITA would have combined the teachings of Aizawa-Mendelson-2003 and Ohsaki as doing so would have amounted to nothing more than the use of a known technique to improve similar devices in the same way.  APPLE-1003, ¶79.  A POSITA would have recognized that incorporating Ohsaki's convex surface is simply improving Aizawa-Mendelson-2003's transparent plate 6 that has a flat surface to improve adhesion to a subject's skin and reduce variation in the signals detected by the sensor.  *Id.*  Furthermore, the elements of the combined system would each perform similar functions they had been known to

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

perform prior to the combination—Aizawa-Mendelson-2003's transparent plate 6 would remain in the same position, performing the same function, but with a convex surface as taught by Ohsaki.  *Id*.

Notably, Inokawa (APPLE-1007[1]) provides an additional motivation and rationale for a POSITA to modify Aizawa to include a cover comprising a protruding convex surface.  APPLE-1003, ¶80.  For example, Inokawa discloses a side lens 27:



APPLE-1008, FIG. 2.  Inokawa further teaches that the "lens makes it possible to increase the light-gathering ability of the LED."  APPLE-1008, [0015].  Thus, a

---

[1] JP 2006-296564 to Inokawa (APPLE-1007) was published in Japanese.  Thus, all citations to Inokawa in this petition are to the certified English translation of the same reference (APPLE-1008).

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

POSITA would have understood that adding a protruded convex surface to Aizawa would have the additional benefit of increasing light collection efficiency, thereby leading to an improved signal-to-noise ratio and more reliable pulse detection. AP-PLE-1003, ¶81. The lens of Inokawa provides precisely such an additional benefit to Aizawa's device by refracting/concentrating incoming light signals reflected by the blood. *Id.*; APPLE-1008, [0015].

A POSITA would have further understood, in view of Inokawa, how to implement the convex surface of Ohsaki into Aizawa. APPLE-1003, ¶82. For example, as illustrated below, Inokawa teaches that its cover may be either flat (left) such that "the surface is less prone to scratches," Inokawa at [0106], or in the form of a lens (right) to "increase the light-gathering ability of the LED." Inokawa at [0015].



Exhibit G
Page 401

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

APPLE-1008, FIG. 17 (left), FIG. 16 (right); ¶82.  A POSITA would have further

recognized that the transparent acrylic material used to make Aizawa's plate can be

readily formed to have a convex shape as in Inokawa.  APPLE-1003, ¶83 (citing to

APPLE-1009 at 3:46-51, FIG. 1).

*Handheld computing device*

As discussed above in Section III.A.1, Aizawa contemplates uploading data

to an external display but is silent about how such data transmission would be im-

plemented, instead leaving implementation details to the POSITA.  APPLE-1006,

[0015], [0023], [0035]; APPLE-1003, ¶84.  Indeed, although Aizawa does not dis-

close a specific monitoring device, a POSITA would have recognized that various

types of well-known monitoring devices could be used to interact with the wrist-

worn sensor of Aizawa and display the measured physiological parameters to the

user in a convenient manner.  APPLE-1003, ¶84.  In this context, as discussed

above in Section III.C.1, Mendelson-2006 teaches using a receiver module and a

portable computer (*i.e.*, PDA) to communicate with a small, body-worn sensor, as

in Aizawa.  APPLE-1016, 913-914, FIGS. 1, 2; APPLE-1003, ¶84.

A POSITA would have been motivated and found it obvious and straightfor-

ward to further modify Aizawa-Mendelson-2003-Ohsaki in view of Mendelson-

2006 to yield a pulse detector that can transmit data to an external device—*i.e.*,

28

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

handheld computing device—for monitoring.  APPLE-1003, ¶85.  Indeed, Aizawa, Mendelson-2003, Ohsaki, and Mendelson-2006 are all in the same field of art and relate to body-worn detectors for sensing physiological parameters such as pulse.  APPLE-1006, [0002]; APPLE-1014, [0056]; APPLE-1016, 912; APPLE-1003, ¶85.  Mendelson-2003 and Mendelson-2006 further list the same first author, and Mendelson-2006 expressly cites Mendelson-2003.  Mendelson-2006 teaches the use of a receiver module and a portable computer/PDA to receive pulse data detected by the body-worn detector (as in Aizawa).  APPLE-1016, 913-914; APPLE-1003, ¶85.

A POSITA would have been motivated to combine Mendelson-2006's receiver module and PDA with Aizawa's detector to enable a convenient and user-friendly interface with Aizawa's detector (which does not include a separate display/interface) and the ability to remotely monitor the user's physiological parameters.  APPLE-1016, 914; APPLE-1003, ¶86.  A POSITA would have recognized that applying Mendelson-2006's receiver module and PDA to Aizawa's sensor would have led to predictable results without significantly altering or hindering the functions performed by Aizawa's sensor.  APPLE-1003, ¶86.  Indeed, a POSITA would have had a reasonable expectation of success in making this modification, and would have reasonably expected to reap benefits of convenient interface with and monitoring of Aizawa's sensor.  *Id.*

29

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

6.      **Analysis**

Claim 1

**[1pre]: A physiological measurement system comprising:**

To the extent the preamble is limiting, the Aizawa-Mendelson-2003-Ohsaki-

Mendelson-2006 combination renders obvious [1.pre].  APPLE-1003, ¶87.  For ex-

ample, in the combination as described above in Section III.A.5, Aizawa discloses

a pulse sensor that is designed to "detect[] the pulse wave of a subject from light

reflected from a red corpuscle in the artery of a wrist of the subject by irradiating

the artery of the wrist[.]"  APPLE-1006, [0002].  Mendelson-2006 discloses a re-

ceiver module and a portable computer (*i.e.*, PDA) that is designed to communicate

with a small, body-worn pulse sensor, as in Aizawa, to improve user convenience.

APPLE-1016, 913-914, FIGS. 1, 2; APPLE-1003, ¶87.

**[1a]: a physiological sensor device comprising:**

Aizawa discloses the claimed sensor device in the form of a pulse sensor that

is designed to "detect[] the pulse wave of a subject from light reflected from a red

corpuscle in the artery of a wrist of the subject by irradiating the artery of the

wrist[.]"  APPLE-1006, [0002]; APPLE-1003, ¶88.  As shown below, Aizawa's

sensor device is designed to be worn on the user's wrist:

30

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

FIG. 2



APPLE-1006, FIG. 2, [0026].

**[1b]: one or more emitters configured to emit light into tissue of a user;**

As described above in Section III.A.1, Aizawa's sensor device detects a user's pulse wave by using an emitter in the form of an LED 21 (shown in green below) to emit light that is picked up by photodetectors 22 (shown in red below) that are arranged around the LED. APPLE-1006, [0023]. Light from Aizawa's LED is emitted into the tissue of the user as "[n]ear infrared radiation output toward the wrist 10 from the light emitting diode 21 is reflected by a red corpuscle running through the artery 11 of the wrist 10 and this reflected light is detected by the plurality of photodetectors 22 so as to detect a pulse wave." *Id.*, [0027]; APPLE-1003, ¶89.

Exhibit G
Page 405

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194



APPLE-1006, FIGS. 1(a)-1(b).

**[1c]: a first set of photodiodes, wherein:**

**[1d]: the first set of photodiodes comprises at least four photodiodes,**

The Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 combination renders obvious elements [1c] and [1d].  APPLE-1003, ¶¶90-91  Indeed, as discussed above in Section III.A.5 and shown below, a POSITA would have been motivated, in view of Mendelson-2003, to provide an additional ring of photodiodes/detectors to Aizawa in order to, among other things, "widen[]the active area of the PD" and thereby "collect a bigger portion of backscattered light intensity."  APPLE-1024, 3019; APPLE-1003, ¶90.  As noted above, the resulting widening of the detection area would result in "power savings achieved by widening the overall active area of the PD" as the detectors will be able to more efficiently detect the reflected light coming from the LED (and thus the LED will be able to operate at reduced power).  APPLE-1003, ¶90.

32

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194



APPLE-1006, FIG. 1(a).

In the modified device shown above, where an additional ring of detectors has been added to Aizawa to form two concentric rings as discussed above in Section III.A.5, the inner ring of photodiodes (shown in green) can be equated to the claimed first set of photodiodes and includes at least four photodiodes. APPLE-1006, [0032], FIG. 1(a), FIG. 4(a); APPLE-1003, ¶91.

**[1e]: the photodiodes of the first set of photodiodes are connected to one another in parallel to provide a first signal stream, and**

As discussed above in Section III.A.5, Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious first and second sets of photodiodes. As detailed below, POSITA would have recognized and/or found it obvious that the first set of

33

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

photodiodes are connected to one another in parallel to provide a first signal stream in the manner claimed.  APPLE-1003, ¶¶92-97.

First, a POSITA would have recognized and/or found it obvious that an array of photodiodes, as found in the first set/ring of photodiodes in the modified Aizawa device, would be connected to one another in parallel to thereby form, essentially, a single continuous detector.  APPLE-1025, 4:23-30; APPLE-1003, ¶93.  Indeed, a POSITA would have known that connecting multiple photodiodes together in parallel allows the current generated by the multiple photodiodes in the first set/ring to be added to one another, thereby resulting in a larger total current akin to what would be generated from a single, large detector, which is what the ring of detectors in Aizawa is in effect trying to mimic.  APPLE-1003, ¶93.

Second, Mendelson-2003—whose sensitivity-enhancing photodiode arrangement configuration would have been obvious to incorporate into Aizawa— expressly teaches that the photodiodes in each of the two sets (*i.e.*, rings) of photodiodes are connected to one another in parallel, thereby providing a distinct signal stream for each set/ring.  In particular, Mendelson-2003 teaches that ***"[e]ach cluster of six PDs were wired in parallel*** and connected through a central hub to the common summing input of a current-to-voltage converter."  APPLE-1024, 3017.  Thus, as described above in Section III.A.5, a POSITA seeking to add a second ring of photodiodes to Aizawa would have looked to Mendelson-2003's teachings

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

concerning how the two rings of photodiodes in the modified Aizawa device should be wired.  APPLE-1003, ¶94.  A POSITA would have found, in view of Mendelson-2003's express teachings, wiring two rings of photodiodes such that each ring/set of detectors "were wired in parallel" to be a routine and conventional design choice.  *Id.*  Indeed, connecting photodiodes in a first set of photodiodes to one another in parallel to provide a first signal stream, as evidenced by Mendelson-2003, was common practice well before the Critical Date, and there was nothing new or inventive about changing the way such photodiodes are connected.  APPLE-1003, ¶94 (citing to APPLE-1025, 4:23-30).

Moreover, a POSITA would have recognized that there can be multiple benefits to separately transmitting signals streams from the near and far detectors—as opposed to combining all the signals from the detectors into a single stream.  For example, Mendelson '799 teaches that the detected values from each of its near and far detector arrays can be monitored such that "if both of them are not in the mentioned range, a corresponding alarm is generated indicative of that the sensor position should be adjusted."  APPLE-1025, 13:19-30, FIG. 10A.  In other words, monitoring each signal stream (from each ring of detectors) separately allows the system to determine when the sensor device is so severely located that its position should be adjusted.  *Id.*, APPLE-1003, ¶95.  Mendelson '799 also teaches that its

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

detector configuration can help detect "movement/breathing artifacts" and subsequently generate "a corresponding alarm signal." *Id.,* 13:31-42; APPLE-1003, ¶95. Having two separate signal streams can also offer various advantages during research, testing, and/or calibration, where the ability to monitor each stream separately can be beneficial. *Id.*

Additionally, a POSITA would have known that "[t]he intensity of the backscattered light decreases in direct proportion to the square of the distance between the photodetector and the LEDs." APPLE-1015, 168. In other words, a POSITA would have recognized that the photodiodes in the far ring (*i.e.,* second set of photodiodes) would receive reflected light having a lower intensity than that received by the photodiodes in the near ring (*i.e.,* first set of photodiodes) and would have been motivated and found it obvious to account for this discrepancy. APPLE-1003, ¶96. Indeed, as shown in the plot below, "the light intensity detected by the photodiode decreases roughly exponentially as the radial distance from the LED's is increased." APPLE-1017, 801. This is because "the probability that the incident photons will be absorbed as they traverse a relatively longer path length before reaching the detector is increased." *Id.*

Exhibit G
Page 410

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194



Fig. 4.  The effect of LED/photodiode separation on the dc (□) and ac (○)
components of the reflected infrared photoplethysmograms. Measure-
ments were performed at a skin temperature of 43°C.

APPLE-1017, FIG. 4.

In Aizawa, a "drive detection circuit 24" is used for "amplifying the outputs
of the photodetectors" and transmitting the amplified data to the arithmetic circuit
3, which computes the pulse rate.  APPLE-1006, [0023], [0028]; APPLE-1003,
¶97.  In the modified Aizawa-Mendelson-2003 system, a POSITA would have rec-
ognized that the inner ring is likely to produce far greater currents compared to the
outer ring due to the above-noted exponential relationship between detected light
intensity and distance from the LED.  APPLE-1017, 801; APPLE-1003, ¶97.  To
ensure that the pulse rate data provided by the outer ring is preserved when com-
bined with the pulse rate data provided by the inner ring, a POSITA would have
found it obvious, in some implementations, to keep each ring separately wired and
connected to its own amplifier (*i.e.*, drive detection circuit 24) to thereby keep the

37

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

magnitude of the current signals provided by each ring approximately the same before being combined and transmitted to the arithmetic circuit 3.  APPLE-1003, ¶97.  Otherwise, if all the photodiodes in both the first and second rings in the modified Aizawa's sensor device are connected together in parallel such that a single stream is output (from both rings) to a single amplifier, signals detected by the near/first sets of detectors may drown out the weaker signals coming from the far/second sets of detectors, thereby diminishing the enhanced sensitivity and collection efficiency achieved through the widened detection area.  *Id.*

**[1f]: each of the photodiodes of the first set of photodiodes has a corresponding window that allows light to pass through to the photodiode;**

As discussed above in Section III.A.1, Aizawa teaches windows in the form of tapered cavities that provide an opening for each of the detectors (*e.g.*, each of the photodiodes of the first set of photodiodes) and that serve to increase, for instance, the concentration of light collected by the detectors, thereby increasing the signal to noise ratio.  APPLE-1006, [0024], [0012]; APPLE-1003, ¶¶98-99.

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194





APPLE-1006, FIGS. 1(a) (top), 1(b) (bottom).

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

In particular, Aizawa describes that such tapered openings "make[] it possible to expand the light emitting area and the light receiving area" such that "a pulse wave can be easily detected[.]"  APPLE-1006, [0012].  Thus, in order to enhance light collection efficiency, a POSITA would have provided the above-described window to each photodiode in modified Aizawa's first set of photodiodes.  APPLE-1003, ¶99.  Moreover, as indicated below, light passes through each corresponding window to pass through to the photodiode.  *Id.*



APPLE-1006, FIG. 1(b).

**[1g]: a second set of photodiodes, wherein:**

**[1h]: the second set of photodiodes comprises at least four photodiodes,**

Exhibit G
Page 414

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

The Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 combination renders obvious elements [1g] and [1h].  APPLE-1003, ¶¶100-101.  Indeed, as discussed above in Section III.A.5 and shown below, a POSITA would have been motivated, in view of Mendelson-2003, to provide Aizawa's multiple detectors in two concentric rings in order to, among other things, "widen[]the active area of the PD" and thereby "collect a bigger portion of backscattered light intensity."  APPLE-1024, 3019; APPLE-1003, ¶100.  This effective widening of the detection are would result in "power savings achieved by widening the overall active area of the PD" as the detectors will be able to more efficiently detect the reflected light coming from the LED.  APPLE-1003, ¶100.



APPLE-1006, FIG. 1(a).

Exhibit G
Page 415

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

In the modified device shown above, where an additional ring of detectors has been added to Aizawa to form two concentric rings as discussed above in Section III.A.5, the outer ring of photodiodes (shown in red) can be equated to the claimed second set of photodiodes and includes at least four photodiodes.  APPLE-1006, [0032], FIG. 1(a), FIG. 4(a); APPLE-1003, ¶101.

**[1i]: the photodiodes of the second set of photodiodes are connected to one another in parallel to provide a second signal stream, and**

For reasons discussed above for element [1e], the analysis for which is fully incorporated herein, a POSITA would have found it obvious that the photodiodes in the second/outer ring (*i.e.*, second set of photodiodes) in Aizawa's modified device are connected to one another in parallel to provide a second signal stream. APPLE-1003, ¶102.

**[1j]: each of the photodiodes of the second set of photodiodes has a corresponding window that allows light to pass through to the photodiode;**

The Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 combination renders obvious [1j].  *Supra* [1f]; APPLE-1003, ¶103.  In particular, each photodiode in modified Aizawa's second set of photodiodes would have included a corresponding window to further enhance light collection efficiency.  APPLE-1006, [0024], [0012], FIG. 1(b); APPLE-1003, ¶103.

**[1k]: a wall that surrounds at least the first and second sets of photodiodes; and**

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

The Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 combination renders obvious [1k].  APPLE-1003, ¶104.  For example, Aizawa discloses a "a holder 23 for storing the above light emitting diode 21 and the photodetectors 22."  APPLE-1006, [0023], [0024].  As illustrated below, the outer periphery of Aizawa's holder provides a circular wall (purple) that surrounds at least the first and second sets of photodiodes:



43

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194



APPLE-1006, FIG. 1(a) (top), FIG. 1(b) (bottom); APPLE-1003, ¶104.

**[1l]: a cover comprising a protruding convex surface, wherein the protruding convex surface is above all of the photodiodes of the first and second sets of photodiodes, wherein at least a portion of the protruding convex surface is rigid, and wherein the cover is above the wall; and**

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious [1l].

APPLE-1003, ¶¶105-108  As explained above in Section III.A.5 and illustrated below, the combination of Aizawa and Ohsaki provides a sensor plate 6 with a convex surface (similar to Ohsaki's translucent board 8) to realize improved adhesion between the user's wrist and the sensor's surface, improve detection efficiency, and protect the elements within the sensor housing.  APPLE-1003, ¶105; APPLE-1014, [0009]-[0010].

44

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194



APPLE-1006, FIG. 1(b) (annotated)

In the combination, the cover with a convex surface (outlined in blue in FIG. 1(b) above) is located between the user tissue and the holder 23 (and "above" the wall provided by the holder) when the sensor is worn by the user. APPLE-1006, [0023]; APPLE-1003, ¶106. Moreover, the surface of the user tissue conforms to the single protruding convex surface when the sensor is worn by the user. APPLE-1003, ¶106.

Moreover, as illustrated in Ohsaki's FIG. 2, Ohsaki discloses that "the convex surface of the translucent board 8 is in intimate contact with the surface of the user's skin," and that slippage of the detecting element "off the detecting position of the user's wrist" is thereby prevented. APPLE-1014, [0025], FIGS. 1, 2. A

Exhibit G
Page 419

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

POSITA would have understood that the resulting skin deformation, as shown below, was due to the rigidity of the convex surface.  APPLE-1003, ¶107.



APPLE-1014, FIG. 2 (annotated).

From this and related disclosure, a POSITA would have understood and would have been motivated to implement a translucent board 8 where at least a portion of the protruding convex surface is rigid.  APPLE-1003, ¶108.  Indeed, the light permeable cover of Aizawa is made of transparent acrylic, which is a well-

46

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

known rigid material, and would be sufficiently rigid so as to deform the tissue in

the manner described above.  APPLE-1006, [0023], [0026], [0030], [0034]; AP-

PLE-1003, ¶108 (citing to APPLE-1018 ("Acrylic is a transparent plastic material

with outstanding strength, stiffness, and optical clarity.)).


**[1m]: a handheld computing device in wireless communication with the physi-
ological sensor device, wherein the handheld computing device comprises:**

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious [1m].

APPLE-1003, ¶¶109-111.  For example, as explained above in Section III.A.5, the

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 system includes Aizawa's

wrist-worn sensor device that is in communication with Mendelson-2003's body-

worn receiver module (below left) and PDA (below right):




47

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

APPLE-1016, FIG. 1 (cropped) (left), FIG. 3 (right), 913-914.  The receiver module and the PDA of Mendelson-2003, as incorporated into the modified Aizawa device, provides the claimed handheld computing device.[2]  APPLE-1003, ¶¶109-110.

---

[2] To the extent Patent Owner contends that a "device" refers to a single, integrated device, such a rationale is flawed.  Indeed, the '194 patent itself contemplates a "device" that is made up of multiple parts as contemplated in this combination.  APPLE-1003, ¶110.  For example, referring to the monitoring device shown in FIG. 2B, the '194 patent notes that: (1) the sensor 201b and the monitor 209b together make up the "monitoring device 200b" (APPLE-1001, 17:27-40, FIG. 2B); and (2) the components of the monitoring device (*i.e.*, sensor and monitor) can either be connected to each other via a physical cable or "via a wireless communication link, such as an infrared link, radio frequency channel, or any other wireless communication protocol and channel."  APPLE-1001, 17:41-55.  Thus, according to the '194 patent, the term "device" can include multiple discrete and physically separate parts.  APPLE-1003, ¶110.  Moreover, in some cases, a physical wire may be used to connect Mendelson-2006's PDA to its receiver module.  Indeed, Mendelson-2006's receiver module includes a UART that provides a serial port for data transmission, as seen in FIGS. 1-2.  APPLE-1016, 913; APPLE-1029.  A POSITA

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

Indeed, both the receiver module and the PDA of Mendelson-2006 include processors and are capable of carrying out computations.  APPLE-1016, 913-914, FIG. 2; APPLE-1003, ¶111.  Moreover, both the receiver module and the PDA of Mendelson-2006 are "handheld" because they have a "small size" suitable for being held in the hand and also because they are portable.  APPLE-1016, 913-914, FIG. 2; APPLE-1003, ¶111.  The '194 patent, for instance, uses the term "handheld" and "portable" interchangeably and further describes various device form factors, including one designed to be attached "to a patient's belt, arm, leg, or the like" using "belt clip or straps" as being a "handheld" device.  APPLE-1001, 17:56-62, 5:48-51, FIGS. 2A-2D; APPLE-1003, ¶111.

**[1n]: one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user;**

---

would have recognized that a wire, such as a "Sync Cable," can be used to physically connect Mendelson-1996's PDA to such a port in instances where, for example, a more secure and/or reliable connection is desired.  APPLE-1022, 8; APPLE-1003, ¶110.

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious [1n].

APPLE-1003, ¶¶112-113.  For example, as discussed in Section III.A.5, the combined system of Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 relies on the receiver module of Mendelson-2006 to wirelessly receive signals from Aizawa's sensor and further communicate with a PDA.  APPLE-1016, 913-914; APPLE-1003, ¶112.  As shown below, the receiver module of Mendelson-2006, which is part of the "handheld computing device" as discussed above for element [1m], includes a microcontroller (µC) (*one or more processors*) configured to wirelessly receive signals from Aizawa's sensor and transmitting corresponding signals to a PDA:



APPLE-1016, FIG. 2, 913.  The signals coming from Aizawa's sensor include, for example, "pulse wave data (waveform itself)" and thus correspond to at least a physiological parameter of the user.  APPLE-1006, [0035]; APPLE-1003, ¶113.

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

**[1o]: a touch-screen display configured to provide a user interface, wherein:**

As discussed above in Section III.A.5, a POSITA would have looked to Men-

delson-2006's PDA to enable more convenient monitoring of the user's physiolog-

ical parameters.  APPLE-1016, 913-914; APPLE-1003, ¶114.  Mendelson-2006's

PDA provides "a low-cost touch screen interface."  APPLE-1016, 914.  Moreover,

Mendelson-2006's PDA provides a simple graphical user interface (GUI) "config-

ured to present the input and output information to the user and allow[ for] easy ac-

tivation of various functions."  APPLE-1016, FIG. 3, 914; *see also* APPLE-1011,

Cover, xvii-xviii, 10-12, 17, 63, 363; APPLE-1012, 4-11, 30-31.


**[1p]: the user interface is configured to display indicia responsive to measure-
ments of the physiological parameter, and**

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious [1p].

APPLE-1003, ¶115.  For example, as illustrated below, Mendelson-2006's GUI

"displays the subject's vital signs, activity level, body orientation, and a scrollable

PPG waveform that is transmitted by the wearable device."  APPLE-1016, 917.

Moreover, "[t]e stream of data received from the wearable unit is distributed to

various locations on the PDA's graphical display," and "[t]he most prominent por-

tion of the GUI display is the scrolling PPG waveform, shown in Fig. 3."  *Id.*

51

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194



APPLE-1016, FIG. 3.

**[1q]: an orientation of the user interface is configurable responsive to a user input; and**

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious [1q].

APPLE-1003, ¶¶116-118.  For example, while Mendelson-2006 does not explicitly

state that an orientation of the GUI provided by the PDA is configurable respon-

sive to a user input, a POSITA would have understood that the LabVIEW software

that was used "to control all interactions between the PDA and the wearable unit

via [t]he graphical user interface" included the option to configure an orientation of

52

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

a user interface as a standard feature.   APPLE-1003, ¶116; APPLE-1013, 186

("Set the report orientation—portrait or landscape").

Additionally, Mendelson-2006 describes the "LabVIEW program" as inter-

acting with the "Windows CE™" operating system.  APPLE-1016, 914.  A

POSITA would have understood that, as a standard feature, that operating system

enabled users to dynamically switch the screen orientation between portrait and

landscape modes.   APPLE-1003, ¶117; APPLE-1022, 1; APPLE-1011, xvii-xviii ,

63 ("switch the screen orientation from portrait…to landscape"); APPLE-1012, 8.

Consistent with Mendelson-2006's description of the PDA's "simple GUI"

being configured to allow for "easy activation of various functions," a POSITA

would have found it obvious to make an orientation of the PDA's user interface

configurable responsive to a user input, for the sake of user convenience.  APPLE-

1003, ¶118; APPLE-1016, 3, FIG. 3; APPLE-1022, 1-8; APPLE-1011, xvii-xviii,

63; APPLE-1012, 8.

**[1r]: a storage device configured to at least temporarily store at least the
measurements of the physiological parameter.**

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious [1r].

APPLE-1003, ¶¶119-120.  In implementing the Aizawa-Mendelson-2003-Ohsaki-

Mendelson-2006 measurement system, the POSITA would have configured a stor-

age device of the PDA to at least temporarily store measurements of physiological

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

parameters (e.g., HR).  APPLE-1003, ¶119; APPLE-1016, 3, FIG. 3 ("The PDA can also serve to temporarily store vital medical information received from the wearable unit"); APPLE-1022, 3, 10 (noting that the HP iPAQ h4150 typically included 64-MB of SDRAM, 32-MB of ROM, and an SD slot for additional storage).

As Mendelson-2006 explains, the "PDA can also serve to temporarily store vital medical information received from the wearable unit."  APPLE-1016, 3.  A POSITA would have understood that the vital medical information would have included measurements of the physiological parameters obtained by the physiological sensor device (e.g.,  HR).  APPLE-1003, ¶120; APPLE-1016, 1-4, FIG. 3.


### Claim 2

**[2pre]: The physiological measurement system of claim 1, wherein the physiological sensor device further comprises:**

*See* elements [1pre]-[1r], *supra*.  APPLE-1003, ¶121.

**[2a]: preprocessing electronics configured to preprocess at least one of the first signal stream or the second signal stream.**

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious [2a].

APPLE-1003, ¶122, Section III.A.5.  In particular, as discussed in Section III.A.1, Aizawa teaches that a "drive detection circuit 24" is used for "amplifying the outputs of the photodetectors" and transmitting the amplified data to the arithmetic

circuit 3, which then processes the received data to compute the pulse rate.  AP-

PLE-1006, [0023], [0028].

## Claim 3

**[3]: The physiological measurement system of claim 2, wherein the preprocessing comprises adapting the at least one of the first signal stream or the second signal stream.**

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious [3].  *See*

*supra* [2a], Section III.a.5; APPLE-1003, ¶123.  In particular, Aizawa teaches

adapting its signal stream by "amplifying the outputs of the photodetectors" before

transmitting the amplified data to the arithmetic circuit 3.  APPLE-1006, [0023],

[0028].  Aizawa also teaches that "the amplified output is converted into a digital

signal," where the analog-to-digital conversion process may be viewed as another

form of adapting the signal.  APPLE-1006, [0028]; APPLE-1003, ¶123.

## Claim 4

**[4]: The physiological measurement system of claim 3, wherein the preprocessing further comprises amplifying the at least one of the first signal stream or the second signal stream.**

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious [4].  *See*

*supra* [2a], Section III.A.5; APPLE-1003, ¶124.

## Claim 5

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

**[5]: The physiological measurement system of claim 4, wherein the preprocessing further comprises converting the at least one of the first signal stream or the second signal stream from analog to digital.**

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious [5]. *See supra* [2a], Section III.a.5; APPLE-1003, ¶125. In particular, Aizawa teaches transmitting the amplified output from its drive detection circuit 24 to an arithmetic circuit 3, where "the amplified output is converted into a digital signal." APPLE-1006, [0028]; APPLE-1003, ¶125.

**Claim 6**

**[6pre]: The physiological measurement system of claim 2, wherein the preprocessing electronics comprise at least:**

*See* elements [1pre]-[1r], [2a], *supra*. APPLE-1003, ¶126.

**[6a]: a first amplifier configured to receive the first signal stream from the first set of photodiodes at an input of the first amplifier and at least amplify the first signal stream, and**

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious [6a]. *See supra* [2a], [1e], Section III.A.5; APPLE-1003, ¶¶127-130  As an initial matter, Aizawa teaches, for the single set/ring of photodetectors it expressly discloses, a "drive detection circuit 24" that is used for "amplifying the outputs of the photodetectors." APPLE-1006, [0023], [0028]. Thus, it would have been routine and conventional design choice for a POSITA to, for the case of *two* sets/rings of photodetectors as in Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006, simply double up

56

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

Aizawa's single ring setup and add a second amplifier (*i.e.*, drive detection circuit 24) to accompany the added second ring.  APPLE-1003, ¶127.

Alternatively, Mendelson-2003 provides a blueprint for how to implement the two signal streams (and corresponding amplifiers) in the Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 combination.  As noted above, Mendelson-2003 teaches that ***"[e]ach cluster of six PDs were wired in parallel*** and connected through a central hub ***to the common summing input of a current-to-voltage converter***."  APPLE-1024, 3017.  A POSITA would have understood such a current-to-voltage converter as being typically implemented by a summing transimpedance amplifier that sums the signals, converts the result to a voltage, and amplifies the voltage in the analog domain.  APPLE-1003, ¶128.  Indeed, the use of summing and transimpedance amplifiers in this manner to sum and convert current streams is frequently shown in literature, as illustrated below:

57

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194



APPLE-1042, FIG. 5, 5:39-54.

While the arrangement above does not show a separate amplifier (*e.g.,* transimpedance amplifier) for each signal stream, a POSITA would have understood that there are many different ways of implementing a transimpedance amplifier. APPLE-1003, ¶129.  For example, a POSITA would have recognized that the same effect could be achieved by *first* passing each current stream through individual transimpedance amplifiers *and then* summing the signals using a summing amplifier, as shown below:

58

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194



APPLE-1042, FIG. 4, 5:20-38, 55-67.

Thus, a POSITA would have found it obvious to implement the two rings of

photodiodes in Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 such that

"[e]ach cluster of six PDs [are] wired in parallel and connected through a central

hub to the common summing input of a current-to-voltage converter."  APPLE-

1024, 3017.  Further, a POSITA would have found it obvious to achieve the "com-

mon summing input of a current-to-voltage converter"  by providing an amplifier

for each signal stream such that the first signal stream is received at an input of the

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

first amplifier that amplifies the first signal stream.  APPLE-1042, FIG. 4, 5:20-38,
55-67; APPLE-1003, ¶130.

Additionally, as Dr. Kenny explains, a POSITA would have recognized that
Mendelson-2003 contemplates analog summation of the signal streams from the
two rings and, based on the teachings of Kosuda, that the summation could instead
be performing in the digital domain.  APPLE-1003, ¶131.  In particular, as shown
in FIG. 34 of Kosuda, two current signals from two distinct photodetectors could
be received at a transimpedance differential amplifier shown in FIG. 35 of Kosuda.
APPLE-1010, FIGS. 34-35, 24:32-25:15.  The amplifier shown in FIG. 35 is
simply a specially configured operational amplifier that receives current signals
and, in the analog domain, generates an amplified output voltage that represents
the difference between the two signals.  APPLE-1010, FIG. 35, 25:1-3.  A
POSITA would have recognized that Mendelson-2003's circuit could be similarly
implemented with the current signal stream from each of the two rings being re-
ceived by a transimpedance summing amplifier, which is a known alternative cir-
cuit to a transimpedance differential amplifier that instead generates and amplifies
the sum, rather than the difference, of received currents as an output voltage stream
in the analog domain.  Indeed, such a circuit would be very similar to Kosuda's
FIGS. 34 and 35 circuit, with the only difference being that the operator 340 of
FIG. 34 would be a summing operator and the operational amplifier of FIG. 35

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

would be configured as a summing amplifier, rather than a differential amplifier.

Importantly, Kosuda expressly recognizes a distinct, alternative configuration that

instead determines the difference between the two current signals in the digital do-

main in which "an amplifier [is] provided after each photodiode 32 and 33 to am-

plify the output signals from the photodiodes 32 and 33, after which the amplified

output signals are passed through an AD converter and converted to digital signals,

the difference between which is then calculated by a CPU or other digital signal

processing circuit."  APPLE-1010, 25:4-15.  A POSITA would have recognized

that a similar alternative circuit arrangement could be used in the Aizawa-Mendel-

son-2003-Ohsaki-Mendelson-2006 device by having the current stream received

from each ring be summed in the digital domain, by having each ring's signal path

have its own amplifier and AD converter, with the summation then being calcu-

lated by a digital signal processing circuit as taught by Kosuda.  A POSITA would

have further recognized that this alternative digital summation circuit configuration

may be preferable, in some implementations, to Mendelson-2003's analog summa-

tion circuit configuration because: (1) it allows the content of the current streams,

including the much smaller current of the outer ring, to be preserved in digital

form, which is less affected by noise and interference; and (2) it increases the accu-

racy of the summation of the much smaller current signal of the outer ring with the

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

much larger current of the inner ring by performing the summation in the digital

domain.  APPLE-1003, ¶131.

**[6b]: a second amplifier configured to receive the second signal stream from
the second set of photodiodes at an input of the second amplifier and at least
amplify the second signal stream.**

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious [6b].  *See*

*supra* [2a], [1e], [6a], Section III.A.5; APPLE-1003, ¶132.  In particular, a second

amplifier as claimed is provided by Aizawa-Mendelson-2003-Ohsaki-Mendelson-

2006 for the same reason as described above for element [6a] with respect to the

first amplifier.  APPLE-1003, ¶¶127-132.


**Claim 7**

**[7]: The physiological measurement system of claim 6, wherein the protruding
convex surface is configured to be located between tissue of the user and the
photodiodes of the first and second sets of photodiodes when the physiological
measurement device is worn by the user, and wherein at least part of the pro-
truding convex surface is light permeable to allow light to reach at least one of
the photodiodes of the first or second sets of photodiodes.**

As discussed in Section III.A.5, Aizawa-Mendelson-2003-Ohsaki-Mendel-

son-2006 would have included a protruding convex surface that is configured to be

located between tissue of the user and the photodiodes of the first and sec-nd sets

of photodiodes when the physiological measurement device is worn by the user.

APPLE-1006, FIG. 1(b), [0023];  APPLE-1014, Abstract, [0015], [0017], [0025],

FIGS. 1, 2, 4A, 4B.; APPLE-1003, ¶¶133-134.

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

As illustrated below, a POSITA would have understood that Ohsaki's translucent member/board 8 as well as the protruding convex surface in the modified Aizawa system would have been light permeable to allow light reflected from the user tissue to pass through and reach at least one of the at least four detectors.  APPLE-1006, [0023]; APPLE-1014, [0009], [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶134.



APPLE-1006, FIG. 1(b) (modified).

Exhibit G
Page 437

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194



APPLE-1014, FIG. 2.

## **Claim 8**

*See* elements [1pre]-[1r], [7], *supra*.  APPLE-1003, ¶135. Also, as explained above in Section III.A.1, Aizawa includes LED 21 and photodetectors 22 that are "stored in cavities 23b and 23c formed in the detection face 23*a*" of holder 23 such that "the light emitting face 21s of the light emitting diode 21 and the light receiving faces 22s of the photodetectors 22 are set back from the above detection face 23*a*."  APPLE-1006, [0023]-[0024].

Here, the holder 23 of Aizawa, which includes the claimed windows that allow light to pass through to the corresponding photodiodes as discussed above for

64

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

element [1f], is opaque and therefore shields the detectors from unwanted ambient light coming from outside the housing (thereby blocking one or more optical paths).  APPLE-1006, [0012], [0024], FIG. 1(b); APPLE-1003, ¶136.  Indeed, Aizawa describes that cavities formed within the holder 23 define the light receiving area; thus, the filled-in portions of the holder are opaque and effective in blocking light.  APPLE-1006, [0024], FIG. 1(b); APPLE-1003, ¶136.

## Claim 9

**[9pre]: The physiological measurement system of claim 8, wherein the physiological sensor device further comprises:**

> *See* elements [1pre]-[1r], [8], *supra*.  APPLE-1003, ¶137.

**[9a]: a substrate having a first surface, wherein the photodiodes of the first set of photodiodes and the photodiodes of the second set of photodiodes are arranged on the first surface.**

> As discussed above for element [1k] and further illustrated below, the outer periphery of Aizawa's holder 23 provides a circular wall (purple) that surrounds at least the first and second sets of photodiodes:

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194



APPLE-1006, FIG. 1(a); APPLE-1003, ¶138.

Moreover, Aizawa provides a substrate having a first surface (brown) on which such photodiodes are arranged:



APPLE-1006, FIG. 1(b); APPLE-1003, ¶139.  Aizawa's photodiodes (shown in red above), which are connected to a drive circuit 24 on the other side of the first

66

surface, are arranged on the first surface as would be understood by a POSITA.

APPLE-1003, ¶140.

## Claim 10

**[10pre]: The physiological measurement system of claim 9, wherein:**

*See* elements [1pre]-[1r], [9], *supra*.  APPLE-1003, ¶141.

**[10a]: the wall surrounds at least the first set of photodiodes and the second set of photodiodes on the first surface,**

*See* element [9a], *supra*.  APPLE-1003, ¶142.

**[10b]: the wall operably connects to the substrate on one side of the wall, and**

*See* element [9a], *supra*.  APPLE-1003, ¶143.  In particular, as illustrated below, the wall (purple) operably connects to the substrate (brown) on the bottom side of the wall:



APPLE-1006, FIG. 1(b).

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

**[10c]: the wall operably connects to the cover on an opposing side of the wall.**

*See* element [9a], *supra*.  APPLE-1003, ¶144.  In particular, as illustrated below, the wall (purple) operably connects to the cover (blue) on the opposing/top side of the wall in the proposed Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 combination:



APPLE-1006, FIG. 1(b).

## Claim 11

**[11]: The physiological measurement system of claim 10, wherein a surface of the handheld computing device positions the touch-screen display.**

68

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

As discussed in element [1o] and Section III.A.5, Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 would have included a handheld computing device featuring a touch-screen display.  APPLE-1003, ¶145.  As shown below, a surface of the PDA described by Mendelson-2006 positions the touch-screen display.  *Id.*; APPLE-1016, 913-914, FIG. 3; APPLE-1022, 1, 3.



APPLE-1016, FIG. 3.

**Claim 12**

69

Exhibit G
Page 443

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

**[12]: The physiological measurement system of claim 11, wherein the physio-logical parameter comprises at least one of: pulse rate, glucose, oxygen, oxy-gen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, or car-bon monoxide.**

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious [12].

APPLE-1003, ¶146.  In particular, Aizawa discloses measuring pulse rate.  AP-PLE-1006, Abstract, [0002], [0008], [0023]-[0036].


**<u>Claim 13</u>**

**[13]: The physiological measurement system of claim 12, wherein the protrud-ing convex surface protrudes a height between 1 millimeter and 3 millimeters.**

As noted above in Section III.A.5, the Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 combination includes a protruding convex surface similar to the protruding surface of Ohsaki's cover, which is designed to be "in intimate contact with the surface of the user's skin," to prevent slippage of the detecting element on the user's wrist.  APPLE-1014, [0009]-[0010], FIG. 2.

70

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194



APPLE-1014, FIG. 2; APPLE-1003, ¶147.

In incorporating Ohsaki's teachings, a POSITA would have found it obvious

that a device designed to fit on a user's wrist would be on the order of millimeters.

APPLE-1003, ¶¶148-149; *see also* APPLE-1016, 914 (describing its "optical re-

flectance transducer" as "small (∅ = 22mm)"); APPLE-1015, 168 (describing a

"standard 24-pin (dimensions: 19 x 19 mm) microeletronic package" for its sen-

sor); APPLE-1028, 9:40-65 (describing a protrusion on a biological measurement

device that causes a subject's tissue to deform by a depth of about 2 to 20 mm).

Additionally, the POSITA would have taken the user's comfort into considera-

tion—Ohsaki's convex cover, for example, is said to solve the problem of "the user

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

feel[ing] uncomfortable" due to pressure from the device and belt on the user's limbs.  APPLE-1014, [0006].

A POSITA would have found it obvious that in order to provide a comfortable cover that prevents slippage, the convex surface should protrude a height between 1 millimeter and 3 millimeters.  APPLE-1003, ¶149.  Indeed, there would have been a finite range of possible protruding heights, and it would have been obvious to select a protruding height that would have been comfortable to the user.  *Id*.

## Claim 14

**[14]: The physiological measurement system of claim 12, wherein at least one of the photodiodes is configured to receive light that has been attenuated by tissue of the user.**

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious [14].  APPLE-1003, ¶150.  For example, the detectors of Aizawa detect light "reflected by a red corpuscle running through the artery 11 of the wrist 10...so as to detect a pulse wave."  APPLE-1006, [0027].  Thus, the detectors of Aizawa receive light that has been attenuated by tissue of the user.

## Claim 15

**[15]: The physiological measurement system of claim 14, wherein a portion of the physiological sensor device comprises one of at least two sizes, the two sizes intended to be appropriate for larger users and smaller users.**

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

The Courts have previously found that limitations related to size are not suf-
ficient to patentably distinguish over prior art references.  *In re Rose,* 220 F.2d
459, 105 USPQ 237 (CCPA 1955); *In re Rinehart,* 531 F.2d 1048, 189 USPQ 143
(CCPA 1976); *Gardnerv.TEC Syst., Inc.,* 725 F.2d 1338, 220 USPQ 777 (Fed. Cir.
1984).  Similarly, here, the recitation of a portion of the device having two sizes in-
tended for larger and smaller users should not render claim 15 distinguishable from
the Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 device, even assuming that
there were a distinction over the applied references.

Moreover, the phrase "the two sizes ***intended to be appropriate*** for larger
users and smaller users" is directed to intended use and imparts no structural limi-
tation.   And a close review of this feature reveals that no *specific* portion of the de-
vice is recited in the claim.  Indeed, configuring *any* portion of the device to have
two sizes would satisfy the claim, and such variations are often a simple matter of
design choice.  APPLE-1003, ¶151.

Moreover, Aizawa explicitly discloses size variations.  For example, to en-
sure that the wrist-worn device of Aizawa is attached to the user at an appropriate
pressure, Aizawa incorporates an adjustable belt to its device.  APPLE-1006,
[0026]; APPLE-1003, ¶151.  A POSITA would have recognized and/or found it
obvious that such a belt can include at least two sizes intended to be appropriate for

73

larger users and smaller users.  Aizawa also teaches that the "size" of its device can "become larger" as needed.  APPLE-1006, [0033]; APPLE-1003, ¶151.

## Claim 16

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious [16]. APPLE-1003, ¶152.  For example, as illustrated below, the four detectors of the first set of photodiodes in the modified Aizawa device are arranged relative to a central point and first/second axes and a central point in the manner claimed:



APPLE-1006, FIG. 1(a).

## Claim 17

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

**[17]: The physiological measurement system of claim 14, wherein the protruding convex surface protrudes a height greater than 2 millimeters and less than 3 millimeters.**

For the reasons noted above in [13], Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 renders obvious [17].  *See supra* [13]; APPLE-1003, ¶153.

## Claim 18

*See* element [14], *supra*.  APPLE-1003, ¶154.

## Claim 20

**[20pre]: A physiological measurement system comprising:**

*See* element [1pre], *supra*.  APPLE-1003, ¶155.

**[20a]: a physiological sensor device comprising:**

*See* element [1a], *supra*.  APPLE-1003, ¶156.

**[20b]: one or more emitters configured to emit light into tissue of a user;**

*See* element [1b], *supra*.  APPLE-1003, ¶157.

**[20c]: a first set of photodiodes, the first set of photodiodes comprising at least four photodiodes, the photodiodes of the first set of photodiodes connected to one another in parallel to provide a first signal stream; wherein each of the photodiodes of the first set of photodiodes has a corresponding window that allows light to pass through to the photodiode;**

*See* elements [1c]-[1f], *supra*.  APPLE-1003, ¶158.

**[20d]: a second set of photodiodes, the second set of photodiodes comprising at least four photodiodes, the photodiodes of the second set of photodiodes connected to one another in parallel to provide a second signal stream, wherein**

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

each of the photodiodes of the second set of photodiodes has a corresponding window that allows light to pass through to the photodiode; and

*See* elements [1g]-[1j], *supra*.  APPLE-1003, ¶159.

[20e]: a protruding convex surface, wherein the protruding convex surface is positioned such that the protruding convex surface is located between tissue of the user and the photodiodes of the first and second sets of photodiodes when the physiological sensor device is worn by the user; and

*See* element [1l], *supra*.  APPLE-1003, ¶160.

[20f]: a handheld computing device in wireless communication with the physiological sensor device.

*See* element [1m], *supra*.  APPLE-1003, ¶161.

## Claim 22

[22pre]: The physiological measurement system of claim 20 further comprising:

*See* elements [20pre]-[20f], *supra*.  APPLE-1003, ¶162.

[22a]: preprocessing electronics comprising at least:

*See* element [2a], *supra*.  APPLE-1003, ¶163.

[22b]: a first amplifier configured to receive the first signal stream at an input of the first amplifier and at least amplify the first signal stream, and

*See* element [6a], *supra*.  APPLE-1003, ¶164.

[22c]: a second amplifier configured to receive the second signal stream at an input of the second amplifier and at least amplify the second signal stream.

*See* element [6b], *supra*.  APPLE-1003, ¶165.

Exhibit G
Page 450

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

## Claim 23

*See* element [5], *supra*.  APPLE-1003, ¶166.

## Claim 24

**[24pre]: The physiological measurement system of claim 23, wherein the handheld computing device comprises:**

*See* element [23], *supra*.  APPLE-1003, ¶167.

**[24a]: one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user;**

*See* element [1n], *supra*.  APPLE-1003, ¶168.

**[24b]: a touch-screen display configured to provide a user interface, wherein the user interface is configured to display indicia responsive to measurements of the physiological parameter; and**

*See* elements [1o]-[1p], *supra*.  APPLE-1003, ¶169.

**[24c]: a storage device configured to at least temporarily store at least the measurements of the physiological parameter.**

*See* element [1r], *supra*.  APPLE-1003, ¶170.

## Claim 25

*See* elements [7] and [8a], *supra*.  APPLE-1003, ¶¶171-172.

## Claim 26

**[26pre]: The physiological measurement system of claim 25, wherein the physiological sensor device further comprises:**

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

*See* elements [25pre]-[25a], *supra*.  APPLE-1003, ¶173.

**[26a]: a wall that surrounds at least the first and second sets of photodiodes; and**

*See* element [1k], *supra*.  APPLE-1003, ¶174.

**[26b]: a substrate having a first surface, wherein the photodiodes of the first set of photodiodes and the photodiodes of the second set of photodiodes are arranged on the first surface, wherein the wall surrounds at least the first set of photodiodes and the second set of photodiodes on the first surface; and**

*See* element [9a], [10a], *supra*.  APPLE-1003, ¶175.

**[26c]: a cover comprising the protruding convex surface, wherein:**

*See* element [1l], *supra*.  APPLE-1003, ¶176.

**[26d]: the wall operably connects to the substrate on one side of the wall, and**

*See* element [10b], *supra*.  APPLE-1003, ¶177.

**[26e]: the wall operably connects to the cover on an opposing side of the wall.**

*See* element [10c], *supra*.  APPLE-1003, ¶178.

## Claim 27

**[27]: The physiological measurement system of claim 26, wherein a surface of the handheld computing device positions the touch-screen display.**

*See* element [11], *supra*.  APPLE-1003, ¶179.

## Claim 28

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

**[28]: The physiological measurement system of claim 27, wherein the physiological parameter comprises at least one of: pulse rate, glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, carbon monoxide, or a state or trend of wellness of the user.**

*See* element [12], *supra*.  APPLE-1003, ¶180.

## Claim 29

**[29]: The physiological measurement system of claim 28, wherein the protruding convex surface protrudes a height greater than 2 millimeters and less than 3 millimeters.**

*See* elements [13], [17], *supra*.  APPLE-1003, ¶181.

## Claim 30

**[30pre]: A physiological measurement system comprising:**

*See* element [1pre], *supra*.  APPLE-1003, ¶182.

**[30a]: a physiological sensor device comprising:**

*See* element [1a], *supra*.  APPLE-1003, ¶183.

**[30b]: one or more emitters configured to emit light into tissue of a user;**

*See* element [1b], *supra*.  APPLE-1003, ¶184.

**[30c]: a substrate having a first surface;**

*See* element [9a], *supra*.  APPLE-1003, ¶185.

**[30d]: a first set of photodiodes arranged on the first surface, wherein:**

*See* elements [1c], [1d], [9a], *supra*.  APPLE-1003, ¶186

**[30e]: the first set of photodiodes comprises at least four photodiodes,**

79

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

*See* elements [1c], [1d], [9a], *supra*.  APPLE-1003, ¶187.

**[30f]: the photodiodes of the first set of photodiodes are connected to one another in parallel to provide a first signal stream, and**

*See* elements [1c], [1d], [1e], [9a], *supra*.  APPLE-1003, ¶188.

**[30g]: each of the photodiodes of the first set of photodiodes has a corresponding window that allows light to pass through to the photodiode;**

*See* elements [1f], *supra*.  APPLE-1003, ¶189.

**[30h]: a second set of photodiodes arranged on the first surface, wherein:**

*See* elements [1g], [1h], [9a], *supra*.  APPLE-1003, ¶190.

**[30i]: the second set of photodiodes comprises at least four photodiodes,**

*See* elements [1g], [1h], [9a], *supra*.  APPLE-1003, ¶191.

**[30j]: the photodiodes of the second set of photodiodes are connected to one another in parallel to provide a second signal stream, and**

*See* elements [1g], [1h], [1i], [9a], *supra*.  APPLE-1003, ¶192.

**[30k]: each of the photodiodes of the second set of photodiodes has a corresponding window that allows light to pass through to the photodiode;**

*See* elements [1j], *supra*.  APPLE-1003, ¶193.

**[30l]: a cover comprising a protruding convex surface, wherein:**

*See* elements [1l], *supra*.  APPLE-1003, ¶194.

**[30m]: the protruding convex surface is above all of the photodiodes of the first and second sets of photodiodes,**

*See* elements [1l], *supra*.  APPLE-1003, ¶195.

**[30n]: at least a portion of the protruding convex surface is rigid,**

*See* elements [1l], *supra*.  APPLE-1003, ¶196.

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

**[30o]: the cover is above the wall, and**

    *See* elements [1l], *supra*.  APPLE-1003, ¶197.

**[30p]: the protruding convex surface is configured to be located between tissue of the user and the photodiodes of the first and second sets of photodiodes when the physiological measurement device is worn by the user;**

    *See* elements [7], *supra*.  APPLE-1003, ¶198.

**[30q]: a wall that surrounds at least the first and second sets of photodiodes on the first surface, wherein:**

    *See* elements [1k], *supra*.  APPLE-1003, ¶199.

**[30r]: the wall operably connects to the substrate on one side of the wall, and**

    *See* elements [10b], *supra*.  APPLE-1003, ¶200.

**[30s]: the wall operably connects to the cover on an opposing side of the wall; and**

    *See* elements [10c], *supra*.  APPLE-1003, ¶201.

**[30t]: preprocessing electronics configured to preprocess at least one of the first signal stream or the second signal stream, wherein the preprocessing electronics comprise at least:**

    *See* elements [2a], *supra*.  APPLE-1003, ¶202.

**[30u]: a first amplifier configured to receive the first signal stream from the first set of photodiodes at an input of the first amplifier and at least amplify the first signal stream, and**

    *See* elements [6a], *supra*.  APPLE-1003, ¶203.

**[30v]: a second amplifier configured to receive the second signal stream from the second set of photodiodes at an input of the second amplifier and at least amplify the second signal stream; and**

    *See* elements [6b], *supra*.  APPLE-1003, ¶204.

81

**[30w]: a handheld computing device in wireless communication with the physiological sensor device, wherein the handheld computing device comprises:**

*See* elements [1m], *supra*.  APPLE-1003, ¶205.

**[30x]: one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user, wherein the physiological parameter comprises at least one of: pulse rate, glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, or carbon monoxide;**

*See* elements [12], *supra*.  APPLE-1003, ¶206.

**[30y]: a touch-screen display configured to provide a user interface, wherein the user interface is configured to display indicia responsive to measurements of the physiological parameter; and**

*See* elements [1o]-[1p], *supra*.  APPLE-1003, ¶207.

**[30z]: a storage device configured to at least temporarily store at least the measurements of the physiological parameter.**

*See* elements [1r], *supra*.  APPLE-1003, ¶208.

**B.     [GROUND 2] – Claims 19 and 21 are rendered obvious by Aizawa in view of Mendelson-2003, Ohsaki, Mendelson-2006, and Beyer**

<u>**Claim 19**</u>

**[19]: The physiological measurement system of claim 1, wherein the handheld computing device comprises a mobile phone.**

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 further in view of Beyer

renders obvious [19].  APPLE-1003, ¶¶64, 209-211.  In particular, while the pro-

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

cessor in Mendelson-2006's receiver module communicates physiological meas-
urement information to a PDA, such as HP's iPAQ Pocket PC that is capable of
various "wireless communication protocols," Mendelson-2006 does not explicitly
disclose the PDA to be a mobile phone.  APPLE-1016, 914; APPLE-1003, ¶209.
Yet it was well-known before the Critical Date that a PDA device, such as the one
shown in Mendelson-2006, was often paired with cellular communication technol-
ogy to provide a combined PDA/phone device that acts a mobile phone.  APPLE-
1003, ¶209 (citing to APPLE-1019 and APPLE-1020).  Such a combined device
would have provided the user with added convenience of being able to enjoy the
combined functionality of a phone and PDA in a single device.  Moreover, a
POSITA would have recognized that "[i]t is often necessary to review the collected
data, such as oxygen saturation, pulse rate and pulsatility value at a location remote
to the patient being monitored."  APPLE-2021, Abstract.  Thus, a POSITA would
have looked to PDA devices with cellular connectivity in order to achieve more re-
liable patient monitoring.  APPLE-1003, ¶209 (citing to APPLE-1021, FIG. 3).

        In this context, Beyer teaches "cellular PDA/GPS phones" that allow users
"to rapidly call and communicate data among the users by touching display screen
symbols and to enable the users to easily access data concerning other users and
other database information."  APPLE-1021, 1:6-15; APPLE-1003, ¶210.  A side-
by-side comparison of Beyer's PDA and Mendelson-2006's PDA is shown below:

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194



APPLE-1019, FIG. 1 (left); APPLE-1014, FIG. 3 (right).

A POSITA would have considered using a different PDA than the one mentioned in Mendelson-2006 to be obvious and a routine and conventional design choice.  APPLE-1003, ¶211; *see also In re Magna Elecs*., *Inc*., 611 Fed. Appx. 969, 974 (Fed. Cir. 2015) (citing *In re Kuhle*, 526 F.2d 553, 555 (CCPA 1975) (finding a generic feature that "provides no novel or unexpected result" as "an obvious matter of design choice").  Indeed, using a PDA that is also a mobile phone, as evidenced by Beyer, was common practice well before the Critical Date, and there was nothing new or inventive about changing one type of PDA for another. *Id.*

**<u>Claim 21</u>**

84

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

**[21]: The physiological measurement system of claim 20, wherein the handheld computing device comprises a mobile phone.**

Aizawa-Mendelson-2003-Ohsaki-Mendelson-2006 further in view of Beyer

renders obvious [19].  *See supra* [1pre]-[1r], [19]; APPLE-1003, ¶¶209-212.


## IV.    PTAB DISCRETION SHOULD NOT PRECLUDE INSTITU-TION

The *NHK-Fintiv* rule should not be applied because it violates the AIA,

which allows IPR to proceed in tandem with infringement litigation so long as the

petition is filed within one year of service of a complaint of infringement.  See 35

U.S.C. § 315(b).  The rule also is arbitrary and capricious because its vague factors

lead to speculative, unpredictable, and unfair outcomes.  Further, the rule is proce-

durally invalid because it was not adopted through notice-and-comment rulemak-

ing.

However, consistent with Congressional intent and goals of *NHK-Fintiv*,

Apple asks the Board alone to consider challenges raised in this Petition.  *Apple*

*Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11, 6 (PTAB 2020).

Unlike *NHK*, there is no basis for denial of this Petition under § 325(d),

which would only be appropriate if the same or substantially the same art or argu-

ments were previously presented to the Office.  *Advanced Bionics LLC v. MED-EL*

*Elektromedizinische Gerate GmbH*, IPR2019-01469 Pap. 6, 8-10 (PTAB Feb. 13,

85

2020)(precedential).  The Petition's arguments are premised on combinations of references that were never presented to the Office with respect to the '564 patent. Aizawa does appear as one among hundreds of listed references, but there is no in-dication that it was considered by the examiner.  *See, generally,* APPLE-1002.

Moreover, and as explained below, *Fintiv* favors institution.

### A.    Factor 1: Institution Will Increase Likelihood of Stay

Institution will enable the Board to resolve the issue of validity, and a find-ing of invalidity will relieve the Central District of California (the "District Court") of the need to continue litigation.  Apple moved to stay the District Court case, and the opportunity for such simplification increases the likelihood that the court will grant a stay in view of IPR institution.  *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case No. 2:16-cv-642-JRG, 2-3 (E.D. Tex. 2017); *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 13-CV-1058, 2015 WL 1069111 (E.D. Tex. 2015).

### B.    Factor 2: District Court Schedule

Trial in the District Court case is scheduled for April 5, 2022.  APPLE-1031, 1.  Based on the 18-month IPR schedule, a Final Written Decision ("FWD") in an IPR arising from the present Petition would issue in early April of 2022, near the District Court trial date.

However, as in *NHK*, district court trial dates shift, even in normal times. *Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap.

22, 17 (PTAB 2019).  The District Court is one of the country's busiest patent

courts, and the trial date of a case in the District Court in which Patent Owner is a

plaintiff and is before the same judge as the District Court case has recently been

postponed by approximately ten months.  APPLE-1036, 2.  Scheduling issues can-

not be ruled out, as experts have professed that additional COVID-19 outbreaks are

likely to arise and California is facing new outbreaks.  APPLE-1034, 1 ("Fauci

says second wave of coronavirus is 'inevitable'"); APPLE-1035, 4 ("Los Angeles

County is currently" at "275 [cases] per 100,000 [residents]," which is higher than

the recommended level (100 per 100,000) for reopening).  And, as the Board re-

cently found when granting institution in *Juniper Networks, Inc. et al. v. Packet In-*

*telligence LLC*, "it is more likely that the District Court will incur delays due to the

COVID-19 pandemic than the Board."  IPR2020-00388 Pap. 22 at 14 (Sept. 9,

2020)(district court trial scheduled to begin before statutory FWD date).

### C.    Factor 3: Apple's Investment in IPR Outweighs Forced Invest-ment in Litigation to Date

District court proceedings are still at an early phase.  The parties have yet to

file claim construction briefs, no claim construction orders have issued, and the

*Markman* hearing is not scheduled until February 8, 2021.  APPLE-1031, 1.  In ad-

dition, discovery is not scheduled to close until July 5, 2021.  *Id.*

Apple's substantial investment in these IPR proceedings should counterbal-

ance—if not outweigh—the resources invested in the co-pending litigation given

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

the speed with which Apple is filing IPR petitions on over two-hundred fifty

claims across thirteen patents.  It would be unjust to consider resources expended

in District Court (equally by both parties), without considering Apple resources ex-

pended to prepare seventeen IPR petitions that would be irretrievably lost without

consideration on the merits, in addition to the extensive expenses that may be fore-

gone through institution of Apple's petitions and that will otherwise certainly fol-

low in co-pending litigation for which significant milestones exist.

Moreover, Masimo did not assert the '194 patent against Apple until July 24,

2020, and Apple prepared and filed the instant petition challenging the '194 patent

within nine weeks of that date—months ahead of the statutory period provided by

Congress under § 315(b).  *See* APPLE-1037.  *Mylan Pharma. Inc. v. Sanofi-*

*Aventis Deutschland GMBH*, IPR2018-01680, Pap. 22, 18 (PTAB Apr. 3,

2019)(finding that petition filed two months before bar date is "well within the

timeframe allowed by statute, weighing heavily in [petitioner's] favor").

### D.    Factor 4: The Petition Raises Unique Issues

Apple has voluntarily stipulated to Patent Owner's counsel that, if the pre-

sent Petition is instituted, Apple will not assert that the Challenged Claims are in-

valid on the pending Petition's asserted grounds in *Masimo Corporation et al. v.*

*Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.). APPLE-1032, 1; *see*, *e.g.*, *Apple*

*v. Seven* at 15-17 (finding that such a stipulation by a petitioner "mitigates, at least

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

to some degree, the concerns of duplicative efforts between the district court and
the Board, as well as concerns of potentially conflicting decisions").

In addition, the Petition addresses claims that will not be addressed in District Court. Although Patent Owner has not yet narrowed the asserted claims, the District Court recently ordered the parties to submit a "Joint Claim Narrowing Proposal" by November 23, 2020. *See* APPLE-1033, 1; APPLE-1040, 1-3. Thus, based on this ordered reduction in the asserted claims, the District Court will necessarily address fewer claims than are challenged in this Petition (which challenges all claims of the patent), even assuming the District Court addresses validity at all, which is presently unknowable. *See, e.g., Apple v. Seven* at 18.

In short, grounds in this Petition are unique, and will not be addressed in District Court. *See*, *e.g.*, *Apple v. Seven* at 15-20 (weighing this factor against exercising 314(a) discretion where a petitioner challenged several unasserted claims and stipulated that it would not pursue the IPR grounds in the co-pending litigation).

### E.    Factor 5: The Petition Enables the Board to Resolve Invalidity of Claims that Might Otherwise be Reasserted

Apple's Petition is potentially helpful to future defendants. For at least this reason, Apple's status as Petitioner and defendant is, at worst, a neutral factor. Taking the relevant circumstances into account, institution would serve overall ef-

ficiency and integrity, enabling the Board to determine invalidity of claims that Patent Owner might later assert against others.

### F.      Factor 6: Other Circumstances Support Institution

As *Fintiv* noted, "the factors...are part of a balanced assessment of all the relevant circumstances in the case," and, "if the merits of a ground raised in the petition seem particularly strong … the institution of a trial may serve the interest of overall system efficiency and integrity …." *Fintiv*, 14-15.  As explained in the Petition, institution would result in invalidation of the Challenged Claims.

### V.      CONCLUSION

Accordingly, Petitioner respectfully requests institution of an IPR for those claims of the '194 patent for each of the grounds presented herein.

### VI.      PAYMENT OF FEES – 37 C.F.R. § 42.103

Apple authorizes the Patent and Trademark Office to charge Deposit Account No. 06-1050 for the fee set in 37 C.F.R. § 42.15(a) for this Petition and further authorizes payment for any additional fees to be charged to this Deposit Account.

### VII.      MANDATORY NOTICES UNDER 37 C.F.R §42.8(a)(1)

#### A.      Real Party-In-Interest Under 37 C.F.R. §42.8(b)(1)

90

Petitioner, Apple Inc. is the real party-in-interest.

## B.     Related Matters Under 37 C.F.R. §42.8(b)(2)

Patent Owner filed a second amended complaint on July 24, 2020 in the U.S.
District Court for the Central District of California (CDCA) (Case No. 8:20-cv-
00048) against Apple, in which Masimo alleged, for the first time, infringement of
the '194 patent by Apple.  The initial complaint in the case, which did not allege
infringement of the '194 patent, was served to Apple on January 13, 2020.

IPRs challenging claims of related U.S. Patents 10,702,195, 10,709,366,
10,624,564, and 10,631,765 are being filed concurrently or imminently.  No other
petitions for IPR of the '194 patent have been filed.  On August 31, 2020, Apple
filed petitions for IPR of related U.S. Patents 10,258,265 (IPR2020-01520),
10,588,553 (IPR2020-01536 and IPR2020-01537).  On September 2, 2020, Apple
filed petitions for IPR of related U.S. Patents 10,292,628 (IPR2020-01521) and
10,588,554 (IPR2020-01538 and IPR2020-01539).

## C.     Lead And Back-Up Counsel Under 37 C.F.R. §42.8(b)(3)

Apple provides the following designation of counsel.

| Lead Counsel | Backup counsel |
|---|---|
| W. Karl Renner, Reg. No. 41,265<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070 | Roberto J. Devoto, Reg. No. 55,108<br>Hyun Jin In, Reg. No. 70,014<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402 |

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

| Fax: 877-769-7945<br>Email: IPR50095-0025IP1@fr.com | Tel: 202-783-5070<br>Fax: 877-769-7945<br>PTABInbound@fr.com |
| --- | --- |

### D.    Service Information

Please address all correspondence and service to the address listed above.

Petitioner consents to electronic service by email at IPR50095-0025IP1@fr.com

(referencing No. 50095-0025IP1 and cc'ing PTABInbound@fr.com, axf-ptab@fr.com, devoto@fr.com and in@fr.com.

Respectfully submitted,

Dated  September 30, 2020

   /W. Karl Renner /
W. Karl Renner, Reg. No. 41,265
Roberto J. Devoto, Reg. No. 55,108
Hyun Jin In, Reg. No. 70,014
Fish & Richardson P.C.
3200 RBC Plaza, 60 South Sixth Street
Minneapolis, MN 55402
T: 202-783-5070
F: 877-769-7945

(Control No. IPR2020-01716)          Attorneys for Petitioner

92

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

## CERTIFICATION UNDER 37 CFR §42.24

Under the provisions of 37 CFR §42.24(d), the undersigned hereby certifies

that the word count for the foregoing Petition for *Inter partes* Review totals 13,879

words, which is less than the 14,000 allowed under 37 CFR §42.24.


Dated  September 30, 2020          /W. Karl Renner/
                                  W. Karl Renner, Reg. No. 41,265
                                  Roberto J. Devoto, Reg. No. 55,108
                                  Hyun Jin In, Reg. No. 70,014
                                  Fish & Richardson P.C.
                                  3200 RBC Plaza, 60 South Sixth Street
                                  Minneapolis, MN 55402
                                  T: 202-783-5070
                                  F: 877-769-7945

                                  Attorneys for Petitioner

93

Attorney Docket No. 50095-0025IP1
IPR of U.S. Patent No. 10,702,194

# CERTIFICATE OF SERVICE

Pursuant to 37 CFR §§42.6(e)(4)(i) *et seq.* and 42.105(b), the undersigned

certifies that on September 30, 2020, a complete and entire copy of this Petition for

*Inter partes* Review and all supporting exhibits were provided via Federal Express,

to the Patent Owner by serving the correspondence address of record as follows:

KNOBBE, MARTENS, OLSON & BEAR, LLP
MASIMO CORPORATION (MASIMO)
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE CA 92614

_/Edward G. Faeth/_
Edward G. Faeth
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
(202) 626-6420

# Exhibit H

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent of:     Poeze, et al.
U.S. Patent No.:     10,702,195                    Attorney Docket No.: 50095-0026IP1
Issue Date:          July 7, 2020
Appl. Serial No.:    16/834,467
Filing Date:         March 30, 2020
Title:               MULTI-STREAM DATA COLLECTION SYSTEM FOR NONIN-
                     VASIVE MEASUREMENT OF BLOOD CONSTITUENTS

**Mail Stop Patent Board**
Patent Trial and Appeal Board
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

## PETITION FOR *INTER PARTES* REVIEW OF UNITED STATES PATENT NO. 10,702,195 PURSUANT TO 35 U.S.C. §§ 311–319, 37 C.F.R. § 42

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

# TABLE OF CONTENTS

I.    REQUIREMENTS FOR IPR UNDER 37 C.F.R. §42.104 ............................1
    A.  Grounds for Standing Under 37 C.F.R. §42.104(a) ...................1
    B.  Challenge Under 37 C.F.R. §42.104(b) and Relief Requested ...............1
    C.  Claim Construction under 37 C.F.R. §§42.104(b)(3) ...............................3
    D.  Level of Ordinary Skill in the Art ..............................................3

II.    SUMMARY OF THE '195 PATENT ....................................................4

III.    THE CHALLENGED CLAIMS ARE UNPATENTABLE .............................6
    A.  [GROUND 1] – Claims 1-17 are rendered obvious by Aizawa in view of Mendelson-2003, Ohsaki, and Goldsmith .................................6
        1.    Overview of Aizawa ................................................6
        2.    Overview of Mendelson-2003 ..............................9
        3.    Overview of Ohsaki ...............................................11
        4.    Overview of Goldsmith ........................................13
        5.    Combination of Aizawa, Mendelson-2003, Ohsaki, and Goldsmith .......................................16
        6.    Analysis ..............................................................35
    B.  GROUND 2 – Claims 1-17 are obvious over Aizawa, Mendelso-2003, Ohsaki, Goldsmith, and Ali ...............................86
        1.    Overview of Ali ...................................................86
        2.    Combination of Aizawa-Mendelson-2003-Ohsaki-Goldsmith and Ali ...............................87

IV.    PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION .........89

V.    CONCLUSION ..............................................................94

VI.    PAYMENT OF FEES – 37 C.F.R. § 42.103 .................................95

VII.    MANDATORY NOTICES UNDER 37 C.F.R §42.8(a)(1) ........................95
    A.  Real Party-In-Interest Under 37 C.F.R. §42.8(b)(1) ...............................95
    B.  Related Matters Under 37 C.F.R. §42.8(b)(2) ........................................95
    C.  Lead And Back-Up Counsel Under 37 C.F.R. §42.8(b)(3) ...................96
    D.  Service Information ..............................................................96

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

# EXHIBITS

| | |
|---|---|
| APPLE-1001 | U.S. Patent No. 10,702,195 to Poeze, et al. ("the '195 patent") |
| APPLE-1002 | Excerpts from the Prosecution History of the '195 Patent ("the Prosecution History") |
| APPLE-1003 | Declaration of Dr. Thomas W. Kenny |
| APPLE-1004 | Curriculum Vitae of Dr. Thomas W. Kenny |
| APPLE-1005 | *Masimo Corporation, et al. v. Apple Inc.,* Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.) |
| APPLE-1006 | U.S. Pub. No. 2002/0188210 ("Aizawa") |
| APPLE-1007 | JP 2006-296564 ("Inokawa") |
| APPLE-1008 | Certified English Translation of Inokawa and Translator's Declaration |
| APPLE-1009 | U.S. Pat. No. 7,088,040 ("Ducharme") |
| APPLE-1010 | U.S. Pat. No. 6,198,951 ("Kosuda") |
| APPLE-1011 | RESERVED |
| APPLE-1012 | RESERVED |
| APPLE-1013 | RESERVED |
| APPLE-1014 | U.S. Pub. No. 2001/0056243 ("Ohsaki") |
| APPLE-1015 | "Design and Evaluation of a New Reflectance Pulse Oximeter Sensor," Y. Mendelson, et al.; Worcester Polytechnic Institute, |

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

Biomedical Engineering Program, Worcester, MA 01609; Association for the Advancement of Medical Instrumentation, Vol. 22, No. 4, 1988; pp. 167-173 ("Mendelson-1988")

| APPLE-1016 | "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Y. Mendelson, et al.; Proceedings of the 28th IEEE EMBS Annual International Conference, 2006; pp. 912-915 ("Mendelson-2006") |
| --- | --- |
| APPLE-1017 | "Noninvasive Pulse Oximetry Utilizing Skin Reflectance Photoplethysmography," Y. Mendelson, et al.; IEEE Transactions on Biomedical Engineering, Vol. 35, No. 10, October 1988; pp. 798-805 ("Mendelson-IEEE-1988") |
| APPLE-1018 | "Acrylic: Strong, stiff, clear plastic available in a variety of brilliant colors," available at https://www.curbellplastics.com/Research-Solutions/Materials/Acrylic |
| APPLE-1019 | U.S. Pat. No. 7,031,728 ("Beyer") |
| APPLE-1020 | U.S. Pat. No. 7,092,735 ("Osann, Jr.") |
| APPLE-1021 | U.S. Pat. No. 6,415,166 ("Van Hoy") |
| APPLE-1022 | RESERVED |
| APPLE-1023 | U.S. Pub. No. 2005/276164 ("Amron") |
| APPLE-1024 | "Measurement Site and Photodetector Size Considerations in Optimizing Power Consumption of a Wearable Reflectance Pulse Oximeter," Y. Mendelson, et al.; Proceedings of the 25th IEEE EMBS Annual International Conference, 2003; pp. 3016-3019 ("Mendelson-2003") |
| APPLE-1025 | U.S. Pat. No. 6,801,799 ("Mendelson-'799") |
| APPLE-1026 | Declaration of Jacob Munford |
| APPLE-1027 | U.S. Pub. No. 2007/0093786 ("Goldsmith") |

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

| | |
|---|---|
| APPLE-1028 | U.S. Patent No. 7,251,513 ("Kondoh") |
| APPLE-1029 | Wikipedia: The Free Encyclopedia, "Universal asynchronous receiver-transmitter" at https://en.wikipedia.org/wiki/Universal_asynchronous_receiver-transmitter, last accessed 08/27/2020 |
| APPLE-1030 | U.S. Pat. No. 6,081,735 ("Diab") |
| APPLE-1031 | Scheduling Order, *Masimo v. Apple et al.*, Case 8:20-cv-00048, Paper 37 (April 17, 2020) |
| APPLE-1032 | Stipulation by Apple |
| APPLE-1033 | Telephonic Status Conference, *Masimo v. Apple et al.*, Case 8:20-cv-00048, Paper 78 (July 13, 2020) |
| APPLE-1034 | Joseph Guzman, "Fauci says second wave of coronavirus is 'inevitable'", TheHill.com (Apr. 29, 2020), available at: https://thehill.com/changing-america/resilience/natural-disasters/495211-fauci-says-second-wave-of-coronavirus-is |
| APPLE-1035 | "Tracking the coronavirus in Los Angeles County," LATimes.com (Aug. 20, 2020), available at https://www.latimes.com/projects/california-coronavirus-cases-tracking-outbreak/los-angeles-county/ |
| APPLE-1036 | Order Amending Scheduling Order, Masimo et al. v. True Wearables et al., Case 8:18-CV-02001 (July 7, 2020) |
| APPLE-1037 | *Masimo Corporation, et al. v. Apple Inc.*, Second Amended Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.) |
| APPLE-1038 to 1039 | RESERVED |
| APPLE-1040 | Order Granting Stipulation to Amend the Scheduling Order, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 201 (September 21, 2020) |
| APPLE-1041 | U.S. Patent No. 5,355,242 ("Eastmond") |

iv

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

APPLE-1042        U.S. Patent No. 7,230,227 ("Wilcken")

APPLE-1043        RESERVED

APPLE-1044        U.S. Patent No. 8,040,758 ("Dickinson")

APPLE-1045        U.S. Patent No. 7,656,393 ("King")

APPLE-1046        U.S. Patent No. 6,584,336 ("Ali")

APPLE-1047        RESERVED

v

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

Apple Inc. ("Petitioner" or "Apple") petitions for *inter partes* review ("IPR") under 35 U.S.C. §§311–319 and 37 C.F.R. §42 of claims 1-17 ("the Challenged Claims") of U.S. Patent No. 10,702,195 ("'195 patent").  As explained in this petition, there exists a reasonable likelihood that Apple will prevail with respect to at least one of the Challenged Claims.

## I.      REQUIREMENTS FOR IPR UNDER 37 C.F.R. §42.104

### A.      Grounds for Standing Under 37 C.F.R. §42.104(a)

Apple certifies that the '195 Patent is available for IPR.  The present petition is being filed within one year of service of a complaint against Apple in *Masimo Corporation, et al. v. Apple Inc.,* Civil Action No. 8:20-cv-00048 (C.D. Cal.).  Apple is not barred or estopped from requesting this review challenging the Challenged Claims on the below-identified grounds.

### B.      Challenge Under 37 C.F.R. §42.104(b) and Relief Requested

Apple requests an IPR of the Challenged Claims on the grounds set forth in the table below, and requests that each of the Challenged Claims be found unpatentable.  Additional explanation and support is set forth in APPLE-1003, the Declaration of Dr. Thomas W. Kenny.  *See* APPLE-1003, ¶¶20-193.

| Ground | Claims | Basis for Rejection |
|--------|--------|---------------------|
| **Ground 1** | **1-17** | §103 over Aizawa, Mendelson-2003, Ohsaki, Goldsmith |
| **Ground 2** | **1-17** | §103 over Aizawa, Mendelson- |

1

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

| Ground | Claims | Basis for Rejection |
|---|---|---|
| | | 2003, Ohsaki, Goldsmith, Ali |

The '195 patent claims priority to a number of U.S. patent applications, the earliest of which was filed on 07/02/2009, as well as to a number of U.S. provisional applications, the earliest of which was filed on 07/03/2008.  APPLE-1001, Cover.  Solely for purposes of evaluating prior art in this proceeding and without conceding the propriety of these priority claims, this Petition will treat 07/03/2008, as the earliest alleged effective filing date (*i.e.,* the "Earliest Claimed Date") of the '195 patent.  The references relied on in the above grounds (as well as other supporting references mentioned in this Petition) are printed publications and qualify as prior art to the '195 patent under either date, at least under the sections shown in the following table.  *See* APPLE-1026.  None of these references were substantively considered during prosecution of the '195 patent.  *See, generally,* APPLE-1002.  Mendelson-2003 does appear as one among hundreds of listed references, but there is no indication that it was considered by the examiner.  *Id.*

| Reference | Qualifying Date | Earliest Claimed Date |
|---|---|---|
| Aizawa | 12/12/2002 | 102(b) |
| Mendelson-2003 | 2003 | 102(b) |
| Ohsaki | 12/27/2001 | 102(b) |
| Goldsmith | 4/26/2007 | 102(b) |
| Ali | 6/24/2003 | 102(b) |

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

## C.     Claim Construction under 37 C.F.R. §§42.104(b)(3)

Petitioner submits that all claim terms should be construed according to the *Phillips* standard.  *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); 37 C.F.R. §42.100.  Here, based on the evidence below and the prior art's description of the claimed elements being similar to that of the '195 patent specification, no formal claim constructions are necessary in this proceeding because "claim terms need only be construed to the extent necessary to resolve the controversy."  *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011).

## D.     Level of Ordinary Skill in the Art

A person of ordinary skill in the art relating to the subject matter of the '195 patent as of 07/03/2008 ("POSITA") would have been a person with a working knowledge of physiological monitoring technologies.  The person would have had a Bachelor of Science degree in an academic discipline emphasizing the design of electrical, computer, or software technologies, in combination with training or at least one to two years of related work experience with capture and processing of data or information, including but not limited to physiological monitoring technologies.  APPLE-1003, ¶¶21-22  Alternatively, the person could have also had a Master of Science degree in a relevant academic discipline with less than a year of related work experience in the same discipline.  *Id*

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

## II.  SUMMARY OF THE '195 PATENT

The '195 patent is directed to "noninvasive methods, devices, and systems for measuring...physiologically relevant patient characteristics."  APPLE-1001, 2:40-46; APPLE-1003, ¶¶43-48.  "These characteristics can relate, for example, to pulse rate, hydration, trending information and analysis, and the like."  APPLE-1001, 2:46-48.

As illustrated in FIG. 1, the '195 patent describes a system that "include[s] a sensor 101 (or multiple sensors) that is coupled to a processing device or physio-logical monitor 109," where "the sensor 101 and the monitor 109 are integrated to-gether into a single unit" or "separate from each other and communicate one with another in any suitable manner, such as via a wired or wireless connection."  *Id.*, 11:56-63.



APPLE-1001, FIG. 1.

4

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

The '195 patent's FIGS. 2A-2D (reproduced below) illustrate "example monitoring devices 200 in which the data collection system 100 can be housed." APPLE-1001, 16:31-33.  Each of the "monitoring devices" as shown below includes a sensor and a "handheld monitor."  *Id.*, 5:48-51.  Further, each device may include components (*e.g.*, monitor and sensor) that are connected "via a wired or wireless connection."  *Id.*, 11:60-63.



APPLE-1001, FIGS. 2A-2D.

In use, "the detectors 106 can capture and measure light transmitted from the

5

Exhibit H
Page 480

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

emitter 104 that has been attenuated or reflected from the tissue in the measurement site 102," and "[t]he detectors 106 can output a detector signal 107 responsive to the light captured or measured." *Id.*, 14:11-19.  The signal can correspond to, for instance, the pulse rate of the user. *Id.*, 2:46-68; APPLE-1003, ¶46.  Although the '195 patent mostly describes a transmittance-type measurement device where the emitter and the detector are positioned on opposite sides of the measurement site, the claims do not distinguish over a reflectance-type device where the emitter and the detector are positioned on the same side of the measurement site. *See* APPLE-1001, 14:13-16; APPLE-1003, ¶46.

The '195 patent further describes that its sensor can include a plurality of detectors that are disposed within a housing and covered by a transparent cover (*i.e.*, light permeable cover) having a protrusion.  APPLE-1001, 26:3-11, 14D; APPLE-1003, ¶47.

## III.   THE CHALLENGED CLAIMS ARE UNPATENTABLE

### A.   [GROUND 1] – Claims 1-17 are rendered obvious by Aizawa in view of Mendelson-2003, Ohsaki, and Goldsmith

#### 1.   Overview of Aizawa

Aizawa describes a "pulse wave sensor for detecting a pulse wave by detecting light output from a light emitting diode and reflected from the artery of a wrist of a subject."  APPLE-1006, Abstract; APPLE-1003, ¶¶49-55.

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

Aizawa's sensor device detects a user's pulse wave by using an emitter, namely LED 21 (shown in green), to emit light that is picked up by photodetectors 22 (shown in red) that are arranged around the LED.  APPLE-1006, [0023].  In particular, "[n]ear infrared radiation output toward the wrist 10 from the light emitting diode 21 is reflected by a red corpuscle running through the artery 11 of the wrist 10 and this reflected light is detected by the plurality of photodetectors 22 so as to detect a pulse wave." *Id.*, [0027].



APPLE-1006, FIGS. 1(a)-1(b); APPLE-1003, ¶50.

Aizawa's device includes windows in the form of tapered cavities, indicated below in blue, that provide an opening for each of the detectors (and emitter) and that serve to increase, for instance, the concentration of light collected by the detectors, thereby increasing the signal to noise ratio.  APPLE-1003, ¶51.

Exhibit H
Page 482

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



APPLE-1006, FIG. 1(b) (top), FIG. 1(a) (bottom), [0012], [0024]; APPLE-1003, ¶51.  In particular, Aizawa describes that such tapered openings "make[] it possible to expand the light emitting area and the light receiving area" such that "a pulse wave can be easily detected[.]"  APPLE-1006, [0012].  APPLE-1003, ¶52.

Aizawa further teaches a light permeable cover in the form of an acrylic transparent plate 6 (blue) that is mounted at the detection face 23a:

8

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



APPLE-1006, FIG. 1(b), [0023]; APPLE-1003, ¶53.  This transparent plate not only provides a light permeable cover that covers the emitter/detector assembly, in a manner similar to what is described in the '195 patent, but it also provides improved adhesion between the detector and the wrist to "further improv[e] the detection efficiency of a pulse wave."  APPLE-1006, [0030]; APPLE-1003, ¶54.

## 2.    Overview of Mendelson-2003

Mendelson-2003 is directed to a "wearable pulse oximeter."  APPLE-1024, Abstract.  For this purpose, Mendelson-2003 teaches a "reflectance sensor comprising twelve identical Silicon PD ["photodiode"] chips[.]"  *Id.*, 3017.  As shown below, a first set of "six PDs were positioned in a close inner-ring configuration at a radial distance of 6.0mm from the LEDs," and a "second set of six PDs spaced

9

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

equally along an outer-ring, separated from the LEDs by a radius of 10.0mm." *Id.*;

APPLE-1003, ¶56.



APPLE-1024, FIG. 1.

In the detector configuration above, Mendelson-2003 teaches that ***"[e]ach***

***cluster of six PDs were wired in parallel*** and connected through a central hub to

the common summing input of a current-to-voltage converter." *Id.*, 3017.  Men-

delson-2003 teaches that power savings can be achieved by having two rings of de-

tectors arranged in this manner "***by widening the active area of the PD which***

***helps to collect a bigger portion of backscattered light intensity***." *Id.*, 3019.  That

is, Mendelson-2003 teaches a configuration of PDs (*i.e.*, arranged in two rings) that

is better able to collect reflected light than prior art configurations.  *Id.*, 3017,

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

3019; APPLE-1003, ¶57.  This configuration of PDs allows the device designer to decrease the current provided to the LED because a lower brightness LED would still produce an acceptable signal as a result of the increased light collection efficiency of Mendelson-2003's PD configuration.  *See id.*, 3017 ("...minimizing the drive currents supplied to the LEDs would contribute considerably toward the overall power saving in the design of a more efficient pulse oximeter, particularly in wearable wireless applications.").

Mendelson-2003 further teaches that its sensor can be mounted on the wrist and can be "incorporated into a wrist watch device."  *Id.*, 3017.  By using the two sets of photodiodes that are each connected in parallel, Mendelson-2003 discloses that backscattered signals measured from the wrist were increased by 42% and 73%, respectively, for R and IR signals.  *Id.*, 3019.  Thus, Mendelson-2003 utilizes its 2-ring PD arrangement to allow power-sensitive wearable devices, such as wrist-based devices, to consume less power, thereby prolonging, for example, battery life.  *Id.*, 3017; APPLE-1003, ¶58.

### 3.    Overview of Ohsaki

Ohsaki is titled "Wristwatch-type human pulse wave sensor attached on back side of user's wrist" and, as illustrated in Ohsaki's FIG. 1 (reproduced below), is generally directed to a wrist-worn "pulse wave sensor" (APPLE-1014, [0016]) featuring a "light emitting element" and a "light receiving element."

11

Exhibit H
Page 486

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

*Id.*, [0017]. Ohsaki's sensor addresses problems such as user discomfort and movement of the sensor by using a "translucent board" with a convex surface that is "in intimate contact with the surface of the user's skin" to prevent slippage. *Id.*, [0009]-[0010]. Because the intensity of the light received by the detecting element "largely varies depending on the shift amount," or amount of movement of the detecting element, Ohsaki's convex surface reduces the "variation of the amount of reflected light which is emitted" from the LED and reaches the detecting element after reflection from the user's skin. *Id.*, [0025], FIG. 2; APPLE-1003, ¶¶59-60.



12

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

APPLE-1014, FIG. 2.

### 4.    Overview of Goldsmith

Goldsmith discloses a medical watch controller device 900.  APPLE-1027, [0085], [0095], [0098], [0104], [0010], claim 6.  As illustrated below, Goldsmith teaches a wrist band 940 that enables the device 900 to be worn "like a watch," and Goldsmith's display 910 can include a "touchscreen display."  *Id.*, [0085], [0086], [0093], [0095]; APPLE-1003, ¶61.



APPLE-1027, FIG. 9A.

Exhibit H
Page 488

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

Goldsmith's device can "be used with any number of…diagnostic devices" including "cardiac and other sensors" to obtain physiological measurements including user temperature, blood glucose level, oxygen level, and heart rate.  AP-PLE-1027, [0082]-[0084], [0095], [0037], [0038], claims 25, 26.  The display 910 may display data received "from a sensor transmitter on the patient's skin," from "any number of therapy/diagnostic devices," and/or from user input.  *Id*., [0082], [0087], [0095], [0102].  Goldsmith's device can, for example, monitor and display "heart rate," "the patient's temperature…or other characteristic[s]."  *Id*., [0002], [0013], [0014], [0035]-[0037], [0082], [0087], [0088], [0095], [0102]; APPLE-1003, ¶62.

Goldsmith's FIG. 10 (reproduced below) depicts exemplary components included in the watch controller device.  APPLE-1027, [0088]; APPLE-1003, ¶63.

14

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



APPLE-1027, FIG. 10.

Among other components, Goldsmith includes a memory, processor, transceiver, and display (e.g., a touch-screen).  APPLE-1027, FIG. 10, [0088], [0091], [0093], [0095], [0085]-[0087], [0090], [0093], [0102], [0104], claims 9, 10, 12, 13, 26, 43-45.  A "processor 1012…is adapted to process data and commands inputted by the user, and a transmitter/transceiver 1018…coupled to the processor 1012 transmits" communications, including data indicative of a user's physiological parameters, to other devices (e.g., a computer, cellular phone, and/or PDA).  APPLE-1027, [0007], [0016]-[0018], [0035], [0052], [0087]-[0089], [0097], [0101].  The transceiver may, e.g., receive diagnostic information from sensors included within the watch controller's housing, and transmit that information to other devices.  *Id.,*

15

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

[0052], [0088], [0094], [0087], [0034], [0036]; APPLE-1003, ¶64.  Goldsmith's

memory can store data such as heart rate data.  *Id.*, [0037], [0044], [0091], [0095],

[0097].

In some embodiments, Goldsmith's processor is implemented as a custom

integrated circuit (IC), as shown in FIG. 8.  APPLE-1027, [0052]; APPLE-1003,

¶65.



APPLE-1027, FIG. 8.

### 5.    Combination of Aizawa, Mendelson-2003, Ohsaki, and Goldsmith

#### *(a) Aizawa + Mendelson-2003*

As described in Section III.A.1 and shown below, Aizawa teaches a first set

of photodiodes in the form of four photodetectors 22 that are circularly arranged

16

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

around a centrally located emitter.  APPLE-1006, [0023].  Moreover, a signal stream from this first set of photodiodes is sent to a drive detection circuit 24 that "amplif[ies] the outputs of the photodetectors."  *Id.*; APPLE-1003, ¶68.



APPLE-1006. FIG. 1(a).

In one embodiment, Aizawa teaches that 8 or more photodetectors may be provided to improve detection efficiency:

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



FIG. 4 (a)

APPLE-1006, FIG. 4(a), [0032], [0033]; APPLE-1003, ¶69.

Aizawa does not expressly teach "a second set of photodiodes [that] are connected to one another in parallel to provide a second signal stream" as recited in claim 1 of the '195 patent.  That is, while Aizawa teaches various ways of using a single ring of multiple detectors to improve detection efficiency, it does not explicitly mention that these multiple detectors may be provided as first and second sets of photodiodes that are each connected in parallel and provide first and second signal streams, respectively.  APPLE-1006, [0013], [0030], [0032]; APPLE-1003, ¶70.  A POSITA would have realized, however, that the arrangement of Aizawa's multiple detectors—which are arranged along a single ring—can be modified in view of Mendelson-2003 to be arranged along two rings, thereby further advancing

18

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

Aizawa's goal of improving detection efficiency through increased power savings
as taught by Mendelson-2003.  APPLE-1006, [0013], [0030], [0032]; APPLE-
1024, 3017, 3019; APPLE-1003, ¶70.

For example, as shown below, Mendelson-2003 teaches using two rings of
photodiodes/detectors ("near positioned" detectors highlighted in green, and "far
positioned" detectors highlighted in red) in a wrist-based application where the de-
tectors in each of the near and far rings are "***wired in parallel*** and connected
through a central hub to the common summing input of a current-to-voltage con-
verter."  APPLE-1024, 3017.  Mendelson-2003 further teaches that this configura-
tion "widen[s] the active area of the PD which helps to collect a bigger portion of
backscattered light intensity," thereby improving the light collection efficiency  *Id.*,
3019; APPLE-1003, ¶71.   This configuration allows additional light to be cap-
tured, thereby allowing lower brightness LEDs to be used (and, consequently, re-
ducing power consumption).  APPLE-1003, ¶71.



Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

APPLE-1024, FIG. 1.

Moreover, Mendelson-2003 is aimed at modifying conventional PD arrange-

ments—*like that disclosed in Aizawa where a single ring of multiple PDs are*

*mounted symmetrically around a light source*—to use two distinct rings of PDs

that are mounted symmetrically around the light source. *See* APPLE-1024, 3016

(referring to conventional sensor designs based on "radial arrangement" of PDs or

LEDs); APPLE-1003, ¶72 (citing APPLE-1006, [0032], APPLE-1015, 168, FIG.

2(A)). Mendelson-2003's 2-ring configuration thus allows additional light to be

captured, which enables use of lower brightness LEDs (*i.e.*, LEDs driven by a

lower driving current) while still achieving acceptable signals from the PDs. AP-

PLE-1024, 3017, 3019; APPLE-1003, ¶72.

A POSITA in possession of both Aizawa and Mendelson-2003 would have

recognized Mendelson-2003's use of two concentric rings (near-positioned and far-

positioned) of photodiodes as a desirable detector configuration that would reap

similar benefits for Aizawa in terms of achieving "power savings in the design of a

more efficient" pulse sensing device. APPLE-1024, 3017; APPLE-1003, ¶73. In-

deed, by using Mendelson-2003's power-saving (and thus efficiency-enhancing)

PD configuration, the power consumption of a wrist-based pulse sensing device as

in Aizawa can be reduced through use of a less bright and, hence, lower power-

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

consuming LED.  APPLE-1003, ¶73.  This, of course, would allow Aizawa's wrist-based device to enjoy a longer battery life.  *Id.*

An example implementation of adding an additional ring of detectors to Aizawa , as per Mendelson-2003, is illustrated below:



APPLE-1006, FIG. 1(a); APPLE-1003, ¶74.

A POSITA would further recognize, in view of Mendelson-2003, that such a two-ring arrangement can be implemented in a wrist sensor device as in Aizawa by wiring each ring of detectors in parallel and summing the input of their respective streams.  APPLE-1024, 3017; APPLE-1003, ¶75 (citing APPLE-1041, 2:19-35, FIG, 1; APPLE-1042, 5:20-67, FIGS 1-2; APPLE-1025, 4:23-30).

A POSITA also would have found it obvious to modify Aizawa with Mendelson-2003 to add an additional ring of detectors because doing so merely entails

Exhibit H
Page 496

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

the use of known solutions to improve similar systems and methods in the same way. APPLE-1003, ¶76. Indeed, "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007). A POSITA would have recognized that applying Mendelson-2003's teachings regarding two, concentric rings of detectors that are each connected in parallel to Aizawa's sensor would have led to predictable results without significantly altering or hindering the functions performed by Aizawa's sensor. APPLE-1003, ¶76. A POSITA would have been motivated to provide the well-known feature of providing multiple rings of emitters to a pulse sensor to achieve the predictable benefits offered by Mendelson-2003's description of the same. *Id.* In fact, Aizawa itself contemplates the addition of extra detectors to improve light collection efficiency, although it does not disclose whether they may be arranged as two concentric rings. APPLE-1006, [0032]; APPLE-1003, ¶76. Moreover, as noted above, Mendelson-2003 expressly contemplates adding an additional ring of detectors to a conventional 1-ring PD arrangement precisely as found in Aizawa. APPLE-1024, 3016; APPLE-1003, ¶76.

### *(b) Aizawa + Mendelson-2003 + Ohsaki*

In addition to combining Aizawa and Mendelson-2003 as describe above, a POSITA would have further combined the teachings of Aizawa-Mendelson-

Exhibit H
Page 497

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

2003 with the teachings of Ohsaki such that the cover of Aizawa-Mendelson-2003's wrist-worn sensor would include, for instance, a convex surface to improve adhesion between a subject's wrist and a surface of the sensor.  APPLE-1014, [0025] (the convex surface prevents slippage of the detecting element from its position on the subject's wrist, and the convex nature of the surface suppresses the "variation of the amount of the reflected light" that reaches the detecting element); APPLE-1003, ¶¶77-85.

In more detail, Ohsaki describes a "detecting element" that includes "a package 5, a light emitting element 6 (e.g., LED), a light receiving element 7 (e.g., PD), and a translucent board 8."  APPLE-1014, [0017].  "The package 5 has an opening and includes a" substrate in the form of "circuit board 9," on which light emitting element 6 and light receiving element 7 are arranged.  *Id.*; APPLE-1003, ¶78.  As shown in Ohsaki's FIG. 2, translucent board 8 is arranged such that, when the sensor is worn "on the user's wrist … the convex surface of the translucent board … is in intimate contact with the surface of the user's skin"; this contact between the convex surface and the user's skin is said to prevent slippage, which increases the strength of the signals obtainable by Ohsaki's sensor.  APPLE-1014, [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B.

Exhibit H
Page 498

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

# FIG. 2



APPLE-1014, FIG. 2 (annotated)

Ohsaki explains that "if the translucent board 8 has a flat surface, the detected pulse wave is adversely affected by the movement of the user's wrist as shown in FIG. 4B (reproduced below)," but that if "the translucent board 8 has a convex surface…variation of the amount of the reflected light…that reaches the light receiving element 7 is suppressed."  APPLE-1014, [0025].  The convex surface is also said to prevent "disturbance light from the outside" from penetrating translucent board 8.  *Id.*  Thus, when a convex cover is used, "the pulse wave can be detected without being affected by the movement of the user's wrist 4 as shown

24

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

in FIG. 4A." *Id.*; APPLE-1003, ¶79.



APPLE-1014, FIGS. 4A, 4B.

As shown below, a POSITA would have found it obvious to modify the sensor's flat cover (left) to include a lens/protrusion (right), similar to Ohsaki's translucent board 8, so as to improve adhesion between the user's wrist and the sensor's surface, improve detection efficiency, and protect the elements within the sensor housing.  APPLE-1014, [0025] (explaining that the convex surface of translucent board 8 prevents slippage of a detecting element from its position on the wrist, and

Exhibit H
Page 500

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

suppresses the "variation of the amount of the reflected light" that reaches the detecting element); APPLE-1003, ¶80.



APPLE-1006, FIG. 1(b) (annotated).

A POSITA would have combined the teachings of Aizawa-Mendelson-2003 and Ohsaki as doing so would have amounted to nothing more than the use of a known technique to improve similar devices in the same way.  APPLE-1003, ¶81.  A POSITA would have recognized that incorporating Ohsaki's convex surface is simply improving Aizawa-Mendelson-2003's transparent plate 6 that has a flat surface to improve adhesion to a subject's skin and reduce variation in the signals detected by the sensor.  *Id.*  Furthermore, the elements of the combined system would each perform similar functions they had been known to perform prior to the combination—Aizawa-Mendelson-2003's transparent plate 6 would remain in the same position, performing the same function, but with a convex surface as taught by Ohsaki.  *Id.*

Exhibit H
Page 501

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

Notably, Inokawa (APPLE-1007[1]) provides an additional motivation and rationale for a POSITA to modify Aizawa to include a cover comprising a protruding convex surface.  APPLE-1003, ¶82.  For example, Inokawa discloses a side lens 27:



APPLE-1008, FIG. 2.  Inokawa further teaches that the "lens makes it possible to increase the light-gathering ability of the LED."  APPLE-1008, [0015].  Thus, a POSITA would have understood that adding a protruded convex surface to Aizawa would have the additional benefit of increasing light collection efficiency, thereby

---

[1] JP 2006-296564 to Inokawa (APPLE-1007) was published in Japanese.  Thus, all citations to Inokawa in this petition are to the certified English translation of the same reference (APPLE-1008).

Exhibit H
Page 502

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

leading to an improved signal-to-noise ratio and more reliable pulse detection.  AP-PLE-1003, ¶83.  The lens of Inokawa provides precisely such an additional benefit to Aizawa's device by refracting/concentrating incoming light signals reflected by the blood.  *Id.*; APPLE-1008, [0015].

A POSITA would have further understood, in view of Inokawa, how to im-plement the convex surface of Ohsaki into Aizawa.  APPLE-1003, ¶84.  For exam-ple, as illustrated below, Inokawa teaches that its cover may be either flat (left) such that "the surface is less prone to scratches," Inokawa at [0106], or in the form of a lens (right) to "increase the light-gathering ability of the LED."  Inokawa at [0015].



APPLE-1008, FIG. 17 (left), FIG. 16 (right); ¶84.  A POSITA would have further recognized that the transparent acrylic material used to make Aizawa's plate can be

readily formed to have a convex shape as in Inokawa.  APPLE-1003, ¶85 (citing to APPLE-1009 at 3:46-51, FIG. 1).

### (c) Aizawa + Mendelson-2003 + Ohsaki + Goldsmith (the "Aizawa-Mendelson-2003-Ohsaki-Goldsmith" combination)

As detailed below, a POSITA would have been motivated to further modify Aizawa-Mendelson-2003-Ohsaki in view of Goldsmith.  APPLE-1003, ¶¶86-94. In particular, Aizawa acknowledges an interest in real-time heart rate measurement "at the time of exercise," and describes its wrist-worn pulse wave sensor as being "easily attached," and "capable of detecting a pulse wave accurately."  APPLE-1006, [0004], [0008].  Aizawa goes on to state that its sensor includes "a transmitter for transmitting…pulse rate data to an unshown display," and that its "pulse rate detector…can be coupled to devices making use of bio signals."  APPLE-1006, [0023], [0035].  Accordingly, a POSITA would have understood that Aizawa's sensor transmits data to a display and/or another device to which that sensor is coupled; further, the above-noted and related disclosure would have motivated a POSITA to implement Aizawa's pulse rate sensor as part of a device that can monitor and display heart rate during exercise.  APPLE-1003, ¶86; APPLE-1006, [0004], [0008], [0023], [0026], [0035], FIGS. 1(a), 1(b), 2; APPLE-1026, 912, 915.

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

As explained above in Section III.A.4, Goldsmith describes a watch controller device that can be used with diagnostic devices including sensors to obtain, display, and communicate physiological measurements such as user temperature heart rate.  APPLE-1027, [0082]-[0084], [0095], [0037], [0038], claims 25, 26.  Goldsmith's device has a wrist band and can be worn like a watch such that it can monitor and display data "received from a sensor transmitter on the patient's skin" and "communicate with a remote station."  APPLE-1027, [0085], [0087], [0089], [0095], FIGS. 9A, 9B, 10.  APPLE-1003, ¶87.

From this and related description, a POSITA would have understood that Goldsmith's device is capable of receiving heart rate data directly from the transmitter in Aizawa's sensor, which is worn on the user's skin, and that Goldsmith's device can both display that data on its included touch-screen display, and wirelessly communicate that data to additional devices, including cellular phones, for remote monitoring.  APPLE-1003, ¶88; APPLE-1027, [0017], [0034], [0036], [0082]-[0085], [0087]-[0089], [0095], [0097], FIGS. 9A, 9B, 10; APPLE-1006, [0023], [0026], FIGS. 1(a), 1(b), 2.

As explained in more detail below, a POSITA would have found it obvious to incorporate Aizawa's wrist-worn pulse wave sensor with (i) two rings of photodiodes each connected in parallel (as per Mendelson-2003) and (ii) a protruding

30

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

convex surface (as per Ohsaki) into Goldsmith's integrated wrist-worn watch controller device that includes, among other features, a touch screen, network interface, and storage device.  APPLE-1003, ¶89; APPLE-1027, FIG. 10, [0085]-[0088], [0090]-[0095], [0102], [0104], [0011], [0013], [0014], [0018], [0022]-[0024], [0035], [0043], [0046], [0050], [0052], FIGS. 8, 10, claims 5, 9, 10, 12, 13, 26, 43-45, 53.

Indeed, Goldsmith states that its watch device may receive data "directly from a sensor transmitter on the patient's skin," adding that "the controller device may monitor heart rate," and a POSITA would have understood that Goldsmith's heart rate sensor could be implemented by integrating the Aizawa-Mendelson-2003-Ohsaki sensor into Goldsmith's watch controller device, which would have enhanced the sensor's utility and improved the user's experience in many ways. APPLE-1003, ¶90; APPLE-1027, [0087], [0095].  For example, as explained in more detail below, a POSITA would have incorporated the Aizawa-Mendelson-2003-Ohsaki sensor into Goldsmith's watch device to enable a user to view and interact with heart rate data during exercise via the Goldsmith's touch-screen display, and to enable heart rate data to be monitored by the user and/or others through any of the devices with which Goldsmith's device can communicate.  APPLE-1003, ¶90; APPLE-1006, [0004], [0035]; APPLE-1027, [0017], [0034], [0036], [0082]-[0085], [0087]-[0089], [0095], [0097], FIGS. 9A, 9B, 10.

As explained in more detail below, a POSITA would have understood that incorporating the Aizawa-Mendelson-2003-Ohsaki sensor into Goldsmith's device would have amounted to nothing more than the use of a known technique to improve similar devices in the same way, and combining prior art elements according to known methods to yield predictable results.  *See KSR*, 550 U.S. at 417; APPLE-1003, ¶91; *see also* APPLE-1044, Abstract ("A wrist-worn apparatus for monitoring a user's performance…includes…a processor, a heart rate monitor, a timer, a user input, a display, a processor and a memory"), 3:57-4:11 ("User input 11 may comprise…a touch screen"), FIGS. 1, 2.  Any modifications to the dimensions to Goldsmith's watch controller device needed to accommodate Aizawa-Mendelson-2003-Ohsaki's sensor would have been obvious design choices.  APPLE-1003, ¶91.  Indeed, the '195 Patent evidences that integrating a device like Aizawa-Ohsaki's sensor with a touchscreen, as disclosed in Goldsmith, would have been well within the skill set of a POSITA—the '195 Patent mentions a "touch-screen display" in passing among a laundry list of potential displays with the understand that such integration would have been known to a POSITA.  APPLE-1001, 15:57-61, 17:20-26.

As illustrated below, the front side of Goldsmith's device features a display 910, and the rear side includes a cover 360.  APPLE-1027, [0030]-[0031], [0085]; APPLE-1003, ¶92.

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



APPLE-1027, FIGS. 9A, 9B.

As illustrated below, the rear side of the sensor in both Aizawa and Ohsaki includes an emitter, detectors, and a cover with a protruding convex surface facing the user's wrist, which enables light to be emitted onto the user's skin and to be detected after attenuation.  APPLE-1003, ¶93.

Exhibit H
Page 508

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



APPLE-1014, FIG. 1 (left), APPLE-1006, FIG. 1(b) (right).

Consistent with Aizawa, Ohsaki, and Goldsmith's disclosures, a POSITA would have found it obvious to incorporate the Aizawa-Mendelson-2003-Ohsaki sensor into the rear side of Goldsmith's watch device, such that the included emitter and detectors face the user's skin. APPLE-1003, ¶94; APPLE-1006, [0023]-[0027], FIGS. 1(a), 1(b), 2; APPLE-1014, FIGS. 1, 2; APPLE-1027, [0087]. An exemplary implementation of the resulting physiological monitoring device is illustrated in the figure below. Other components disclosed by Goldsmith such as the network interface, transceiver, and storage device, would have been located within the modified device's housing, *e.g.*, between the touch-screen display and the substrate supporting the detectors. APPLE-1027, FIGS. 8, 10; APPLE-1003, ¶94.

Exhibit H
Page 509

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



APPLE-1027, FIG. 9B (modified according to APPLE-1006.

### 6.    Analysis

### Claim 1

Exhibit H
Page 510

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

**[1pre]: A user-worn physiological measurement device that defines a plurality of optical paths, the physiological measurement device comprising:**

To the extent the preamble is limiting, the Aizawa-Mendelson-2003-Ohsaki-Goldsmith combination renders obvious [1pre].  APPLE-1003, ¶¶95-96.  For example, in the combination device as described above in Section III.A.5, Aizawa discloses a pulse sensor that is designed to "detect[] the pulse wave of a subject from light reflected from a red corpuscle in the artery of a wrist of the subject by irradiating the artery of the wrist[.]"  APPLE-1006, [0002].  Moreover, as illustrated below, the multiple detectors that are arranged around a centrally located emitter define multiple optical paths, one for each emitter, for the light that is emitted and reflected off the user's tissue.  APPLE-1003, ¶95.  Two exemplary optical paths are identified below:



Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

APPLE-1006, FIG. 1(b).

As shown in Aizawa's FIG. 2 and Goldsmith's FIG. 9A, the Aizawa-Men-delson-2003-Ohsaki-Goldsmith would have been user-worn.  APPLE-1003, ¶96.



APPLE-1006, FIG. 2 (left); APPLE-1027, FIG. 9A (right).

**[1a]: one or more emitters configured to emit light into tissue of a user;**

As described above in Section III.A.1, Aizawa's sensor device detects a user's pulse wave by using an emitter in the form of an LED 21 (shown in green below) to emit light that is picked up by  photodetectors 22 (shown in red below) that are arranged around the LED.  APPLE-1006, [0023].  Light from Aizawa's LED is emitted into the tissue of the user as "[n]ear infrared radiation output to-ward the wrist 10 from the light emitting diode 21 is reflected by a red corpuscle

Exhibit H
Page 512

running through the artery 11 of the wrist 10 and this reflected light is detected by the plurality of photodetectors 22 so as to detect a pulse wave." *Id.*, [0027]; APPLE-1003, ¶97.



APPLE-1006, FIGS. 1(a)-1(b).

**[1b]: a first set of photodiodes positioned on a first surface and surrounded by a wall that is operably connected to the first surface, wherein:**

As discussed above in Section III.A.5 and shown below, the Aizawa-Mendelson-2003-Ohsaki-Goldsmith device includes a first set of photodiodes (green):

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



1st set of photodiodes          2nd set of photodiodes

APPLE-1006, FIG. 1(a); APPLE-1003, ¶98.

Moreover, Aizawa provides a substrate having a first surface (brown) on which the photodiodes are arranged:



substrate

Wall

Exhibit H
Page 514

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

APPLE-1006, FIG. 1(b); APPLE-1003, ¶99.  Aizawa's photodiodes (shown in red above), which are connected to a drive circuit 24 on the other side of the first surface, are arranged on the first surface as would be understood by a POSITA.  APPLE-1003, ¶100.

As illustrated above and further below, Aizawa discloses a "a holder 23 for storing the above light emitting diode 21 and the photodetectors 22."  APPLE-1006, [0023], [0024].  The outer periphery of Aizawa's holder 23 provides a circular wall (purple) that surrounds at least the first and second sets of photodiodes:



APPLE-1006, FIG. 1(a); APPLE-1003, ¶101.

Referring back to annotated FIG. 1(b) of Aizawa above, the identified wall (purple) operably connects to the substrate (brown) on the bottom side of the wall.  APPLE-1003, ¶102.

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

**[1c]: the first set of photodiodes comprises at least four photodiodes, and**

As discussed above in Section III.A.5 and illustrated below, the first set of

photodiodes in the Aizawa-Mendelson-2003-Ohsaki-Goldsmith combination in-

cludes at least four photodiodes:



APPLE-1006, FIG. 1(a); APPLE-1003, ¶103.


**[1d]: the photodiodes of the first set of photodiodes are connected to one an-
other in parallel to provide a first signal stream;**


As discussed above in Section III.A.5, Aizawa-Mendelson-2003-Ohsaki-

Goldsmith renders obvious first and second sets of photodiodes.  As detailed be-

low, POSITA would have recognized and/or found it obvious that the first set of

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

photodiodes are connected to one another in parallel to provide a first signal stream.  APPLE-1003, ¶¶104-109.

First, a POSITA would have recognized and/or found it obvious that an array of photodiodes, as found in the first set/ring of photodiodes in the modified Aizawa device, would be connected to one another in parallel to thereby form, essentially, a single continuous detector.  APPLE-1025, 4:23-30; APPLE-1003, ¶105. Indeed, a POSITA would have known that connecting multiple photodiodes together in parallel allows the current generated by the multiple photodiodes in the first set/ring to be added to one another, thereby resulting in a larger total current akin to what would be generated from a single, large detector, which is what the ring of detectors in Aizawa is in effect trying to mimic.  APPLE-1003, ¶105.

Second, Mendelson-2003—whose sensitivity-enhancing photodiode arrangement configuration would have been obvious to incorporate into Aizawa—expressly teaches that the photodiodes in each of the two sets (*i.e.*, rings) of photodiodes are connected to one another in parallel, thereby providing a distinct signal stream for each set/ring.  In particular, Mendelson-2003 teaches that ***"[e]ach cluster of six PDs were wired in parallel** and connected through a central hub to the common summing input of a current-to-voltage converter."*  APPLE-1024, 3017. Thus, as described above in Section III.A.5, a POSITA seeking to add a second ring of photodiodes to Aizawa would have looked to Mendelson-2003's teachings

42

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

concerning how the two rings of photodiodes in the modified Aizawa device should be wired.  APPLE-1003, ¶106.  A POSITA would have found, in view of Mendelson-2003's express teachings, wiring two rings of photodiodes such that each ring/set of detectors "were wired in parallel" to be a routine and conventional design choice.  *Id.*  Indeed, connecting photodiodes in a first set of photodiodes to one another in parallel to provide a first signal stream, as evidenced by Mendelson-2003, was common practice well before the Critical Date, and there was nothing new or inventive about changing the way such photodiodes are connected.  AP-PLE-1003, ¶106 (citing to APPLE-1025, 4:23-30).

Moreover, a POSITA would have recognized that there can be multiple benefits to separately transmitting signals streams from the near and far detectors—as opposed to combining all the signals from the detectors into a single stream.  For example, Mendelson '799 teaches that the detected values from each of its near and far detector arrays can be monitored such that "if both of them are not in the mentioned range, a corresponding alarm is generated indicative of that the sensor position should be adjusted."  APPLE-1025, 13:19-30, FIG. 10A.  In other words, monitoring each signal stream (from each ring of detectors) separately allows the system to determine when the sensor device is so severely located that its position should be adjusted.  *Id.*, APPLE-1003, ¶107.  Mendelson '799 also teaches that its

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

detector configuration can help detect "movement/breathing artifacts" and subsequently generate "a corresponding alarm signal." *Id.,* 13:31-42; APPLE-1003, ¶107.  Having two separate signal streams can also offer various advantages during research, testing, and/or calibration, where the ability to monitor each stream separately can be beneficial.  APPLE-1003, ¶107.

Additionally, a POSITA would have known that "[t]he intensity of the backscattered light decreases in direct proportion to the square of the distance between the photodetector and the LEDs."  APPLE-1015, 168.  In other words, a POSITA would have recognized that the photodiodes in the far ring (*i.e.,* second set of photodiodes) would receive reflected light having a lower intensity than that received by the photodiodes in the near ring (*i.e.*, first set of photodiodes) and would have been motivated and found it obvious to account for this discrepancy.  APPLE-1003, ¶108.  Indeed, as shown in the plot below, "the light intensity detected by the photodiode decreases roughly exponentially as the radial distance from the LED's is increased."  APPLE-1017, 801.  This is because "the probability that the incident photons will be absorbed as they traverse a relatively longer path length before reaching the detector is increased."  *Id.*

44

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



Fig. 4.  The effect of LED/photodiode separation on the dc (□) and ac (○)
components of the reflected infrared photoplethysmograms.  Measure-
ments were performed at a skin temperature of 43°C.

APPLE-1017, FIG. 4.

In Aizawa, a "drive detection circuit 24" is used for "amplifying the outputs

of the photodetectors" and transmitting the amplified data to the arithmetic circuit

3, which computes the pulse rate.  APPLE-1006, [0023], [0028]; APPLE-1003,

¶109.  In the modified Aizawa-Mendelson-2003 system, a POSITA would have

recognized that the inner ring is likely to produce far greater currents compared to

the outer ring due to the above-noted exponential relationship between detected

light intensity and distance from the LED.  APPLE-1017, 801; APPLE-1003, ¶109.

To ensure that the pulse rate data provided by the outer ring is preserved when

combined with the pulse rate data provided by the inner ring, a POSITA would

have found it obvious, in some implementations, to keep each ring separately

wired and connected to its own amplifier (*i.e.*, drive detection circuit 24) to thereby

45

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

keep the magnitude of the current signals provided by each ring approximately the same before being combined and transmitted to the arithmetic circuit 3. APPLE-1003, ¶109. Otherwise, if all the photodiodes in both the first and second rings in the modified Aizawa's sensor device are connected together in parallel such that a single stream is output (from both rings) to a single amplifier, signals detected by the near/first sets of detectors may drown out the weaker signals coming from the far/second sets of detectors, thereby diminishing the enhanced sensitivity and collection efficiency achieved through the widened detection area. *Id.*

**[1e]: a second set of photodiodes positioned on the first surface and surrounded by the wall, wherein:**

As discussed above in Section III.A.5 and shown below, the Aizawa-Mendelson-2003-Ohsaki-Goldsmith device includes a second set of photodiodes (red ring):



Exhibit H
Page 521

APPLE-1006, FIG. 1(a); APPLE-1003, ¶110.

As discussed above for element [1b], the second set of photodiodes in the combination are positioned on the first surface (brown) and surrounded by the wall (purple):





APPLE-1006, FIG. 1(b) (top), FIG. 1(a) (bottom), [0023], [0024]; APPLE-1003, ¶111.

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

**[1f]: the second set of photodiodes comprises at least four photodiodes, and**

As discussed above in Section III.A.5 and illustrated below, the second set of photodiodes in the Aizawa-Mendelson-2003-Ohsaki-Goldsmith combination includes at least four photodiodes:



APPLE-1006, FIG. 1(a); APPLE-1003, ¶112.

**[1g]: the photodiodes of the second set of photodiodes are connected to one another in parallel to provide a second signal stream; and**

*See supra* Sections III.A.5 and [1d].  In particular, second set of photodiodes in Aizawa-Mendelson-2003-Ohsaki-Goldsmith are connected to one another in parallel to provide a second signal stream for the same reason as described above for element [1d] with respect to the first set of photodiodes.  APPLE-1003, ¶113.

48

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

**[1h]: a cover located above the wall and comprising a single protruding convex surface configured to be located between tissue of the user and the first and second sets of photodiodes when the physiological measurement device is worn by the user,**

As discussed in Section III.A.5 and illustrated below, Aizawa-Mendelson-2003-Ohsaki-Goldsmith would have included a cover comprising a single protruding convex surface that is configured to be located above the wall and between tissue of the user and the photodiodes of the first and second sets of photodiodes when the physiological measurement device is worn by the user.  APPLE-1006, FIG. 1(b), [0023];  APPLE-1014, Abstract, [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶114.



APPLE-1006, modified FIG. 1(b).

**[1i]: wherein the physiological measurement device provides a plurality of optical paths, wherein each of the optical paths:**

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

**[1j]: exits an emitter of the one or more emitters,**

**[1k]: passes through tissue of the user,**

**[1l]: passes through the single protruding convex surface, and**

**[1m]: arrives at a corresponding photodiode of the at least one of the first or second sets of photodiodes, the corresponding photodiode configured to receive light emitted by the emitter after traversal by the light of a corresponding optical path of the plurality of optical paths and after attenuation of the light by tissue of the user.**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [1i]-[1m].  *See supra* [1pre]; APPLE-1003, ¶¶¶115-117.  As noted above, Aizawa provides multiple optical paths.



APPLE-1006, FIG. 1(b) (modified).

Exhibit H
Page 525

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

Referring to the annotated figure below where different sections of one of the

optical paths have been labeled, the optical path (A) exits an emitter, (B) passes

through the tissue of the user, (C) passes through the single protruding convex sur-

face, and (D) arrives at a corresponding photodiode:



APPLE-1006, FIG. 1(b) (modified); APPLE-1003, ¶116.

Here, the detected light has been "reflected by a red corpuscle running

through the artery 11 of the wrist 10...so as to detect a pulse wave."  APPLE-1006,

[0027].  Thus, the detectors of Aizawa receive light that has been attenuated by tis-

sue of the user.  APPLE-1003, ¶117.

## Claim 2

**[2pre]: The user-worn physiological measurement device of claim 1 further
comprising:**

Exhibit H
Page 526

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

*See* Claim 1, *supra*.  APPLE-1003, ¶118.

## [2a]: preprocessing electronics configured to preprocess at least one of the first signal stream or the second signal stream.

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [2a].  APPLE-1003, ¶119, Section III.A.5.  In particular, as discussed in Section III.A.1, Aizawa teaches that a "drive detection circuit 24" is used for "amplifying the outputs of the photodetectors" and transmitting the amplified data to the arithmetic circuit 3, which then processes the received data to compute the pulse rate.  APPLE-1006, [0023], [0028]; APPLE-1003, ¶119.

## Claim 3

## [3]: The user-worn physiological measurement device of claim 2, wherein the preprocessing comprises adapting the at least one of the first signal stream or the second signal stream.

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [3].  *See supra* [2a], Section III.A.5; APPLE-1003, ¶120.  In particular, Aizawa teaches adapting its signal stream by "amplifying the outputs of the photodetectors" before transmitting the amplified data to the arithmetic circuit 3.  APPLE-1006, [0023], [0028]; APPLE-1003, ¶120.  Aizawa also teaches that "the amplified output is converted into a digital signal," where the analog-to-digital conversion process may be viewed as another form of adapting the signal.  APPLE-1006, [0028]; APPLE-1003, ¶120.

52

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

## Claim 4

**[4]: The user-worn physiological measurement device of claim 3, wherein the preprocessing further comprises amplifying the at least one of the first signal stream or the second signal stream.**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [4].  *See supra*

[2a], Section III.A.5; APPLE-1003, ¶121.

## Claim 5

**[5]: The user-worn physiological measurement device of claim 4, wherein the preprocessing further comprises converting the at least one of the first signal stream or the second signal stream from analog to digital.**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [5].  *See supra*

[2a], Section III.A.5; APPLE-1003, ¶122.  In particular, Aizawa teaches transmit-

ting the amplified output from its drive detection circuit 24 to an arithmetic circuit

3, where "the amplified output is converted into a digital signal."  APPLE-1006,

[0028]; APPLE-1003, ¶122.

## Claim 6

**[6pre]: The user-worn physiological measurement device of claim 2, wherein the preprocessing electronics comprise at least:**

*See* Claim 2, *supra*.  APPLE-1003, ¶123.

**[6a]: a first common amplifier configured to receive the first signal stream from the first set of photodiodes at an input of the first common amplifier and at least amplify the first signal stream, and**

53

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [6a].  APPLE-1003, ¶¶124-125.  As an initial matter, Aizawa teaches, for the single set/ring of photodetectors it expressly discloses, a "drive detection circuit 24" that is used for "amplifying the outputs of the photodetectors."  APPLE-1006, [0023], [0028]; AP-PLE-1003, ¶124.  Thus, it would have been routine and conventional design choice for a POSITA to, for the case of *two* sets/rings of photodetectors as in Aizawa-Mendelson-2003-Ohsaki-Goldsmith, simply double up Aizawa's single ring setup and add a second amplifier (*i.e.*, drive detection circuit 24) to accompany the added second ring.  APPLE-1003, ¶124.

Alternatively, Mendelson-2003 provides a blueprint for how to implement the two signal streams (and corresponding amplifiers) in the Aizawa-Mendelson-2003-Ohsaki-Goldsmith combination.  As noted above, Mendelson-2003 teaches that *"[e]ach cluster of six PDs were wired in parallel* and connected through a central hub *to the common summing input of a current-to-voltage converter*."  APPLE-1024, 3017.  A POSITA would have understood such a current-to-voltage converter as being typically implemented by a summing transimpedance amplifier that sums the signals, converts the result to a voltage, and amplifies the voltage in the analog domain.  APPLE-1003, ¶125.  Indeed, the use of summing and transim-pedance amplifiers in this manner to sum and convert current streams is frequently shown in literature, as illustrated below:

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



APPLE-1042, FIG. 5, 5:39-54; APPLE-1003, ¶125.

While the arrangement above does not show a common amplifier (*e.g.,* transimpedance amplifier) for each signal stream, a POSITA would have understood that there are many different ways of implementing a transimpedance amplifier. APPLE-1003, ¶126.  For example, a POSITA would have recognized that the same effect could be achieved by *first* passing each current stream through individual transimpedance amplifiers *and then* summing the signals using a summing amplifier, as shown below:

Exhibit H
Page 530

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



APPLE-1042, FIG. 4, 5:20-38, 55-67; APPLE-1003, ¶126.

Thus, a POSITA would have found it obvious to implement the two rings of photodiodes in Aizawa-Mendelson-2003-Ohsaki-Goldsmith such that "[e]ach cluster of six PDs [are] wired in parallel and connected through a central hub to the common summing input of a current-to-voltage converter."  APPLE-1024, 3017. Further, a POSITA would have found it obvious to achieve the "common summing input of a current-to-voltage converter"  by providing an amplifier for each signal stream such that the first signal stream is received at an input of the first common

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

amplifier that amplifies the first signal stream. APPLE-1042, FIG. 4, 5:20-38, 55-67; APPLE-1003, ¶127.

Additionally, as Dr. Kenny explains, a POSITA would have recognized that Mendelson-2003 contemplates analog summation of the signal streams from the two rings and, based on the teachings of Kosuda, that the summation could instead be performing in the digital domain. APPLE-1003, ¶128. In particular, as shown in FIG. 34 of Kosuda, two current signals from two distinct photodetectors could be received at a transimpedance differential amplifier shown in FIG. 35 of Kosuda. APPLE-1010, FIGS. 34-35, 24:32-25:15. The amplifier shown in FIG. 35 is simply a specially configured operational amplifier that receives current signals and, in the analog domain, generates an amplified output voltage that represents the difference between the two signals. APPLE-1010, FIG. 35, 25:1-3. A POSITA would have recognized that Mendelson-2003's circuit could be similarly implemented with the current signal stream from each of the two rings being received by a transimpedance summing amplifier, which is a known alternative circuit to a transimpedance differential amplifier that instead generates and amplifies the sum, rather than the difference, of received currents as an output voltage stream in the analog domain. Indeed, such a circuit would be very similar to Kosuda's FIGS. 34 and 35 circuit, with the only difference being that the operator 340 of FIG. 34 would be a summing operator and the operational amplifier of FIG. 35

57

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

would be configured as a summing amplifier, rather than a differential amplifier.

Importantly, Kosuda expressly recognizes a distinct, alternative configuration that

instead determines the difference between the two current signals in the digital do-

main in which "an amplifier [is] provided after each photodiode 32 and 33 to am-

plify the output signals from the photodiodes 32 and 33, after which the amplified

output signals are passed through an AD converter and converted to digital signals,

the difference between which is then calculated by a CPU or other digital signal

processing circuit." APPLE-1010, 25:4-15. A POSITA would have recognized

that a similar alternative circuit arrangement could be used in the Aizawa-Mendel-

son-2003-Ohsaki-Goldsmith device by having the current stream received from

each ring be summed in the digital domain, by having each ring's signal path have

its own amplifier and AD converter, with the summation then being calculated by a

digital signal processing circuit as taught by Kosuda. A POSITA would have fur-

ther recognized that this alternative digital summation circuit configuration may be

preferable, in some implementations, to Mendelson-2003's analog summation cir-

cuit configuration because: (1) it allows the content of the current streams, includ-

ing the much smaller current of the outer ring, to be preserved in digital form,

which is less affected by noise and interference; and (2) it increases the accuracy of

the summation of the much smaller current signal of the outer ring with the much

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

larger current of the inner ring by performing the summation in the digital domain.

APPLE-1003, ¶128.

**[6b]: a second common amplifier configured to receive the second signal stream from the second set of photodiodes at an input of the second common amplifier and at least amplify the second signal stream.**

*See supra* [6a].  In particular, a second common amplifier as claimed is provided by Aizawa-Mendelson-2003-Ohsaki-Goldsmith for the same reason as described above for element [6a] with respect to the first common amplifier.  AP-PLE-1003, ¶129.

**Claim 7**

**[7]: The user-worn physiological measurement device of claim 6, wherein at least the photodiodes of the first set of photodiodes are arranged such that a first photodiode and a second photodiode are arranged across from each other on opposite sides of a central point along a first axis, and a third photodiode and a fourth photodiode are arranged across from each other on opposite sides of the central point along a second axis which is different from the first axis.**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [7].  APPLE-1003, ¶130.  For example, as illustrated below, the four detectors of the first set of photodiodes in the modified Aizawa device are arranged relative to a central point and first/second axes and a central point in the manner claimed:

Exhibit H
Page 534

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



APPLE-1006, FIG. 1(a); APPLE-1003, ¶130.

## Claim 8

**[8pre]: The user-worn physiological measurement device of claim 6 further comprising:**

*See* Claim 6, *supra.*  APPLE-1003, ¶131.

**[8a]: a plurality of windows, wherein each of the photodiodes of the first set of photodiodes and the second set of photodiodes has a corresponding window of the plurality of windows that allows light to pass through to the photodiode,**

As discussed above in Section III.A.1, Aizawa teaches windows in the form

of tapered cavities that provide an opening for each of the detectors (*e.g.*, each of

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

the photodiodes of the first set of photodiodes) and that serve to increase, for in-stance, the concentration of light collected by the detectors, thereby increasing the signal to noise ratio.  APPLE-1006, [0024], [0012]; APPLE-1003, ¶132.



Exhibit H
Page 536

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



APPLE-1006, FIGS. 1(a) (top), 1(b) (bottom).

In particular, Aizawa describes that such tapered openings "make[] it possible to expand the light emitting area and the light receiving area" such that "a pulse wave can be easily detected[.]"  APPLE-1006, [0012].  Thus, in order to enhance light collection efficiency, a POSITA would have provided the above-described window to each photodiode in modified Aizawa's first set of photodiodes.  APPLE-1003, ¶133.  Moreover, as indicated below, light passes through each corresponding window to pass through to the photodiode.  *Id.*

Exhibit H
Page 537

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



APPLE-1006, FIG. 1(b).

**[8b]: wherein each of the optical paths further:**

*See* [1pre], *supra*.  APPLE-1003, ¶134.

**[8c]: passes through a corresponding window of the plurality of windows.**

*See*  [1pre], [8a], *supra*.  In particular, as illustrated below, each optical path

passes through a corresponding window:

Exhibit H
Page 538

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



APPLE-1006, FIG. 1(b); APPLE-1003, ¶135.

## Claim 9

**[9]: The user-worn physiological measurement device of claim 8, wherein the single protruding convex surface protrudes a height between 1 millimeter and 3 millimeters.**

As noted above in Section III.A.5, the Aizawa-Mendelson-2003-Ohsaki-

Goldsmith combination includes a protruding convex surface similar to the pro-

truding surface of Ohsaki's cover, which is designed to be "in intimate contact

with the surface of the user's skin," to prevent slippage of the detecting element on

the user's wrist.  APPLE-1014, [0009]-[0010], FIG. 2; APPLE-1003, ¶136.

64



APPLE-1014, FIG. 2.

In incorporating Ohsaki's teachings, a POSITA would have found it obvious that a device designed to fit on a user's wrist would be on the order of millimeters. APPLE-1003, ¶137; *see also* APPLE-1016, 914 (describing its "optical reflectance transducer" as "small (∅ = 22mm)"); APPLE-1015, 168 (describing a "standard 24-pin (dimensions: 19 x 19 mm) microeletronic package" for its sensor); APPLE-1028, 9:40-65 (describing a protrusion on a biological measurement device that causes a subject's tissue to deform by a depth of about 2 to 20 mm).  Additionally, the POSITA would have taken the user's comfort into consideration—Ohsaki's

65

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

convex cover, for example, is said to solve the problem of "the user feel[ing] un-

comfortable" due to pressure from the device and belt on the user's limbs.  AP-

PLE-1014, [0006].

A POSITA would have found it obvious that in order to provide a comforta-

ble cover that prevents slippage, the convex surface should protrude a height be-

tween 1 millimeter and 3 millimeters.  APPLE-1003, ¶138.  Indeed, there would

have been a finite range of possible protruding heights, and it would have been ob-

vious to select a protruding height that would have been comfortable to the user.

## Claim 10

**[10pre]: The user-worn physiological measurement device of claim 9 further comprising:**

*See* [9], *supra*.  APPLE-1003, ¶139.

**[10a]: one or more processors configured to:**

**[10b]: receive a signal stream responsive to at least one of the first signal stream or the second signal stream, wherein the signal stream is responsive to at least a physiological parameter of the user; and**

**[10c]: process the signal stream to determine measurements of the physiological parameter;**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [10a]-[10c].

APPLE-1003, ¶¶140-141.  For example, Goldsmith also discloses a processor that

66

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

executes programs to control sensing devices, receives data indicative of a concentration of an analyte, and displays a representation of at least a portion of the information received from or displayed by other devices. APPLE-1027, [0088], [0091], [0008], [0009], [0011], [0012], [0015], [0035]-[0037], [0040], [0043], [0048], [0051], [0059], claims 12, 13; FIGS. 1, 6A, 6B, 10; APPLE-1003, ¶140; *see supra* Section III.A.4. Recall that Goldsmith's device is "used with any number of ... diagnostic devices" and sensors to obtain physiological measurements such as user temperature, blood glucose level, oxygen level, and heart rate. APPLE-1027, [0082]-[0084], [0095], [0037], [0038], claims 25, 26.

Accordingly, it would have been obvious to a POSITA to incorporate the Aizawa-Ohsaki sensor into Goldsmith's watch controller device such that Goldsmith's processor would have received signals from the detectors and would have processed the one or more signals to display the pulse rate. APPLE-1003, ¶141. The signals coming from Aizawa's sensor include, for example, "pulse wave data (waveform itself)" and thus correspond to at least a physiological parameter of the user. APPLE-1006, [0035]; APPLE-1003, ¶141.

### [10d]: a network interface configured to communicate with a handheld computing device;

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [10d]. APPLE-1003, ¶142. For example, Goldsmith discloses that its watch controller may

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

communicate with a remote station such as a PDA or cellular phone using wireless communications, e.g., RF, IR, Bluetooth, or the Internet.  APPLE-1027, [0089], [0097], [0101], [0016]-[0018], [0047], [0050], [0068], [0069], claim 41.  For example, Goldsmith teaches communicating with a PDA cellular phone that may be used "for remote monitoring and programming," by, e.g., the user's parents, nurses, physicians, or even emergency services.  APPLE-1027,[0017], [0047], [0069]-[0073], [0089].  Such communication "would provide an extra layer of monitoring for the user, especially when the user is alone" and provide a convenient method for the user and others to obtain real-time information on the user's health.  APPLE-1027, [0072], [0073], [0092], [0017]; APPLE-1003, ¶142.

Goldsmith discloses using a transceiver 1018 or a communications block 595 to facilitate communication with remote stations.  APPLE-1027, [0052], FIGS. 8, 10. "The communications block 595 may be adapted to provide communication via one or more communications methods, such as RF 596, a USB 597, and IR 598." *Id.*, [0052].  The transceiver may receive data, e.g., diagnostic information, from sensors, diagnostic devices, and characteristic determining devices, and may transmit that data to other devices. *Id.*, [0007], [0087], [0088], [0094], [0087], [0034]-[0036]; APPLE-1003, ¶143.

Exhibit H
Page 543

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



FIG. 8

APPLE-1027, FIG. 8.



APPLE-1027, FIG. 10.

69

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

It would have been obvious to a POSITA to incorporate the modified sensor of Aizawa into Goldsmith's device such that the sensor would have access to a network interface such as Goldsmith's transceiver or communications block to facilitate remote monitoring, as described in Goldsmith.  APPLE-1003, ¶144; APPLE-1027, [0087]-[0104], [0016]-[0018], [0034]-[0038], [0047], [0050], [0052], [0068], [0069], claims 25, 26, 41.

A POSITA would have understood and been motivated by the fact that integrating the sensor as described above would enable a user to communicate pulse rate data to remote stations, thereby providing a means for the user and/or the user's family, doctor, or emergency services to conveniently receive user health data.  APPLE-1027, [0089], [0017], [0047], [0069]-[0073]; APPLE-1003, ¶145.  In addition, such a configuration would enable the user to store health information on devices like the user's cellular phone, and to carry that information wherever the user travels.  *Id*.  These additional features would have improved the user experience and enhanced the utility of Aizawa-Mendelson-2003-Ohsaki-Goldsmith.  *Id*.

**[10e]: a touch-screen display configured to provide a user interface, wherein:**

In the Aizawa-Mendelson-2003-Ohsaki-Goldsmith combination, Goldsmith's wrist-watch controller device includes a display that "is a touchscreen display."  APPLE-1027, [0086].

70

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



APPLE-1027, FIG. 9A; APPLE-1003, ¶146.

Moreover, as noted in Goldsmith, the user can zoom in or out of a graph, focus on a portion of a displayed graph, or confirm/select when to receive and display data.  APPLE-1027, [0059], [0062].  A POSITA would have understood that a touch screen allows a user to provide direct navigation and accessibility through a physical touch.  APPLE-1003, ¶147; APPLE-1027, [0086], [0093].

**[10f]: the user interface is configured to display indicia responsive to the measurements of the physiological parameter, and**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [10f].  For example, Goldsmith teaches that its display 910 displays data directly from the sensor

Exhibit H
Page 546

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

monitors, and data "received from a sensor transmitter on the patient's skin."  AP-

PLE-1027, [0086], [0087], [0102], FIG. 9A; APPLE-1003, ¶148.



APPLE-1027, FIG. 9A.

Consistent with the disclosure in Aizawa, Mendelson-2003, Ohsaki, and

Goldsmith, the display in the combined device would have detected light signals,

determined pulse rates based on the detected signals, and displayed the determined

pulse rates.  APPLE-1003, ¶149.  Furthermore, a POSITA would have understood

that as the pulse rate changes, the display of the pulse rate would also change.  *Id.*

Exhibit H
Page 547

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

**[10g]: an orientation of the user interface is configurable responsive to a user input; and**

As explained in Section III.A.5, Aizawa-Mendelson-2003-Ohsaki-Gold-smith would have included a touch-screen display with a user interface, as disclosed by Goldsmith.  APPLE-1027, [0086], [0093], claims 5, 53.  As explained below, it would have been obvious to a POSITA to implement the user interface such that an orientation of the user interface is configurable responsive to a user input.  APPLE-1003, ¶¶150-155.  As Goldsmith suggests, a POSITA would have found it obvious to include the capability to configure user interface orientation through a user input to provide the user with more control over the display, and a viewing experience customized for the user's preferences.[2]  APPLE-1027, [0102], [0104], [0049], [0055], claim 30; APPLE-1003, ¶150 (citing APPLE-1023, [0008], FIGS. 3, 4A-4D, [0022], [0023]).

In more detail, Goldsmith teaches that its display can be configured in various different ways to allow the interface to be consistent with the user's preferences and to correct the presentation of information that could be incorrect due to the scaling of graphs or incorrect resolutions.  APPLE-1027, [0049]; APPLE-1003,

---

[2] Indeed, as conceded by the Patent Owner, such features would have easily been implemented through a software program for modifying the display of information.  APPLE-1019, 12:47-67.

Exhibit H
Page 548

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

¶151.  Additionally, Goldsmith discloses that its display can be configured to have different operation modes, and to have configurable display graphics such as selectable font size (e.g., a larger font size for vision-impaired users).  APPLE-1027, [0102], [0104], [0055], claim 30.

From this and related description, a POSITA would have understood that Goldsmith's display is configurable in various ways based on user input to facilitate user viewing, e.g., to be able to view the contents of a graph more clearly or improve the font size of text.  APPLE-1003, ¶152; APPLE-1027, [0049], [0102], [0104], [0107].  Moreover, as of the Critical Date, it was well known and a POSITA would have understood that the ability to configure display graphics would have included configuring the orientation of the watch controller display's user interface based on the user input.  APPLE-1003, ¶152.

Several references described briefly below corroborate such an understanding of a POSITA.  For example, as shown in FIGS. 9A and 9B below, King discloses a user being able to change the orientation of displayed content in an electronic device, like a cellular phone, to be either portrait or landscape.  APPLE-1045, 15:30-40, 8:41-50, FIGS. 9A, 9B; APPLE-1003, ¶153.

Exhibit H
Page 549

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



FIG. 9A

FIG. 9B

APPLE-1045, FIGS. 9A, 9B.

In another example, in a patent ("Ali") filed in 2000, **eight years before** the Critical Date of the '195 patent, Patent Owner disclosed that sensor devices like a pulse oximeter could display information in a portrait or landscape mode.  APPLE-1046, 5:23-25, 12:7-16, 11:59-67.  As can be seen in Ali's FIG. 8B (portrait mode) and 8C (landscape mode), the depicted graph appears differently in each mode. APPLE-1003, ¶154.  Through the selection of a key, a user could switch between different orientations based on whichever orientation offers the user a better view of the graph or a portion of the graph the user is interested in.  APPLE-1046, 12:47-67; APPLE-1003, ¶154; *see also* footnote 7.

75

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



APPLE-1046, FIGS. 8B, 8C.

As Dr. Kenny explains, the change of orientation in sensor devices or phones based on user input disclosed in King, Ali, and numerous other references are examples of configurable display graphics that were known and would have been understood to be part of the display configuration in Aizawa-Mendelson-2003-Ohsaki-Goldsmith.  APPLE-1003, ¶155.  For instance, King's orientation selection is performed in a cellular phone and Ali's in a sensor device.  APPLE-1018, 15:30-40, 8:41-50, FIGS. 9A, 9B; APPLE-1046, 5:23-25, 12:7-16, 11:59-67.  Goldsmith explicitly teaches that its integrated watch device can include cellular phone capabilities and integrate characteristic determining devices that can sense analyte concentration.  APPLE-1027, [0097], [0016], [0068], [0073], [0088], [0094], [0085], [0013], [0014], [0018], [0022]-[0024], [0035], [0043], [0046],

76

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

[0050], [0052].  Accordingly, it would have been obvious to a POSITA that Aizawa-Mendelson-2003-Ohsaki-Goldsmith would have included a user interface having an orientation that is configurable responsive to a user input.  APPLE-1003, ¶155.  Moreover, to the extent that Patent Owner contends that Aizawa-Mendelson-2003-Ohsaki-Goldsmith does not render [10g] obvious, [10g] would have been rendered obvious by further modifying in view of Ali, as described below in Ground 2.

**[10h]: a storage device configured to at least temporarily store at least the measurements of the physiological parameter.**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [10h].  APPLE-1003, ¶156.  For example, Goldsmith discloses a memory that stores data indicative of a user's physiological parameter (e.g., heart rate), and a controller programmed to control sensing devices.  APPLE-1027, [0037], [0044], [0052], [0091], [0095], [0097], claims 43-45, FIGS. 8, 10.

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



FIG. 8

APPLE-1027, FIG. 8.



APPLE-1027, FIG. 10.

78

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

The stored data can be used, e.g., to display trend graphs over a period of time.  APPLE-1027, [0055], [0059], [0066], [0081], [0086].  A POSITA would have also known that to transmit measurement data to others for remote monitoring purposes, as described above, the data would have to be stored prior to transmission.  APPLE-1003, ¶157.  Such stored data would have then been reproducible for display or transmission when needed.  APPLE-1027, [0081]-[0086], [0095], [0037], [0038], claims 25, 26.

## Claim 11

**[11]: The user-worn physiological measurement device of claim 10, wherein the physiological parameter comprises at least one of: pulse rate, glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, or carbon monoxide.**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [11].  APPLE-1003, ¶158.  In particular, Aizawa discloses measuring pulse rate.  APPLE-1006, Abstract, [0002], [0008], [0023]-[0036].

## Claim 12

**[12]: The user-worn physiological measurement device of claim 11, wherein the attenuated light is reflected by the tissue.**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [12].  APPLE-1003, ¶159.  For example, the detectors of Aizawa detect light "reflected by a red

corpuscle running through the artery 11 of the wrist 10...so as to detect a pulse wave."  APPLE-1006, [0027].  Thus, the detectors of Aizawa receive light that has been attenuated and reflected by tissue of the user.

### Claim 13

**[13pre]: The user-worn physiological measurement device of claim 12 further comprising:**

**[13a]: a strap configured to position the physiological measurement device on the user, wherein the physiological measurement device comprises a single unit wearable by the user, the single unit encompassing at least: the one or more emitters, the first and second sets of photodiodes, the wall, the cover, the plurality of windows, the one or more processors, the network interface, and the storage device.**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [13pre]-[13a]. APPLE-1003, ¶¶160-161.  For example, Goldsmith discloses a strap, and Aizawa-Mendelson-2003-Ohsaki-Goldsmith would have included such a strap.  APPLE-1003, ¶160; APPLE-1027, FIGS. 9A, 9B, [0086].  Moreover, Aizawa discloses a belt 7 attached to the outer casing to position the sensor to a user's wrist 10.  AP-PLE-1006, [0023], [0026], FIGS. 1a, 1b, 2; APPLE-1003, ¶160.

Moreover, the combined device described above in Section III.A.5 provides a single unit wearable by the user and includes the one or more emitters (*see* element [1a]), the first and second sets of photodiodes (*see supra* [1b]-[1g]), the wall

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

(*see supra* [1b], [1g]), the cover (*see supra* [1h]), the plurality of windows (*see supra* [8a], the one or more processors (*see supra* [10a]-[10c]), the network interface (*see supra* [10d]), and the storage device (*see supra* [10h]).  APPLE-1003, ¶161.

## Claim 14

See supra [10d].  APPLE-1003, ¶162.

## Claim 15

**[15]: The user-worn physiological measurement device of claim 14, wherein the single protruding convex surface protrudes a height greater than 2 millimeters and less than 3 millimeters.**

For the reasons noted above in [9], Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [15].  *See supra* [9]; APPLE-1003, ¶163.

## Claim 16

**[16pre]: A user-worn physiological measurement device that defines a plurality of optical paths, the physiological measurement device comprising:**

See supra [1pre].  APPLE-1003, ¶164.

**[16a]: one or more emitters configured to emit light into tissue of a user;**

See supra [1a].  APPLE-1003, ¶165.

**[16b]: a first set of photodiodes positioned on a first surface and surrounded by a wall that is operably connected to the first surface, wherein:**

See supra [1b].  APPLE-1003, ¶166.

**[16c]: the first set of photodiodes comprises at least four photodiodes, and**

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

*See supra* [1c].  APPLE-1003, ¶167.

**[16d]: the photodiodes of the first set of photodiodes are connected to one another in parallel to provide a first signal stream;**

*See supra* [1d].  APPLE-1003, ¶168.

**[16e]: a second set of photodiodes positioned on the first surface and surrounded by the wall, wherein:**

*See supra* [1e].  APPLE-1003, ¶169.

**[16f]: the second set of photodiodes comprises at least four photodiodes, and**

*See supra* [1f].  APPLE-1003, ¶170.

**[16g]: the photodiodes of the second set of photodiodes are connected to one another in parallel to provide a second signal stream;**

*See supra* [1g].  APPLE-1003, ¶171.

**[16h]: a cover located above the wall and comprising a single protruding convex surface configured to be located between tissue of the user and the first and second sets of photodiodes when the physiological measurement device is worn by the user;**

*See supra* [1h].  APPLE-1003, ¶172.

**[16i]: a plurality of windows, wherein each of the photodiodes of the first set of photodiodes and the second set of photodiodes has a corresponding window of the plurality of windows that allows light to pass through to the photodiode;**

*See supra* [8a].  APPLE-1003, ¶173.

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

**[16j]: preprocessing electronics configured to preprocess at least one of the first signal stream or the second signal stream, wherein the preprocessing electronics comprise at least:**

*See supra* [2a].  APPLE-1003, ¶174.


**[16k]: a first common amplifier configured to receive the first signal stream from the first set of photodiodes at an input of the first common amplifier and at least amplify the first signal stream, and**

*See supra* [6a].  APPLE-1003, ¶175.


**[16l]: a second common amplifier configured to receive the second signal stream from the second set of photodiodes at an input of the second common amplifier and at least amplify the second signal stream;**

*See supra* [6b].  APPLE-1003, ¶176.


**[16m]: one or more processors configured to:**

**[16n]: receive a signal stream responsive to at least one of the first signal stream or the second signal stream after preprocessing of the at least one of the first signal stream and the second signal stream, wherein the signal stream is responsive to at least a physiological parameter of the user, and wherein the physiological parameter comprises at least one of: pulse rate, glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, or carbon monoxide; and**

**[16o]: process the signal stream to determine measurements of the physiological parameter;**

*See supra* [10a]-[10c], [11].  APPLE-1003, ¶177.


**[16p]: a network interface configured to communicate at least the measurements of the physiological parameter to a handheld computing device;**

*See supra* [10d].  APPLE-1003, ¶178.

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

**[16q]: a touch-screen display configured to provide a user interface, wherein
the user interface is configured to display indicia responsive to the measure-
ments of the physiological parameter;**

*See supra* [10e], [10f].  APPLE-1003, ¶179.

**[16r]: a storage device configured to at least temporarily store at least the
measurements of the physiological parameter; and**

*See supra* [10h].  APPLE-1003, ¶180.

**[16s]: a strap configured to position the physiological measurement device on
the user, wherein the physiological measurement device comprises a single
unit wearable by the user, the single unit encompassing at least: the one or
more emitters, the first and second sets of photodiodes, the wall, the cover, the
plurality of windows, the one or more processors, the network interface, and
the storage device,**

*See supra* [13a].  APPLE-1003, ¶181.

**[16t]: wherein the physiological measurement device provides a plurality of
optical paths, wherein each of the optical paths:**

**[16u]: exits an emitter of the one or more emitters,**

**[16v]: passes through tissue of the user,**

**[16w]: passes through the single protruding convex surface and the corre-
sponding window of the plurality of windows, and**

**[16x]: arrives at a corresponding photodiode of the at least one of the first or
second sets of photodiodes, the corresponding photodiode configured to re-
ceive light emitted by the emitter after traversal by the light of a correspond-
ing optical path of the plurality of optical paths and after attenuation of the
light by tissue of the user, and**

*See supra* [1i]-[1m].  APPLE-1003, ¶182.

**[16y]: wherein the attenuated light is reflected by the tissue.**

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

*See supra* [12].  APPLE-1003, ¶183.

## Claim 17

**[17pre]: A physiological measurement system comprising:**

*See* Sections III.A.1~5.  In particular, Goldsmith discloses that transceiver 1018 or communications block 595 communicates with a PDA.  APPLE-1027, [0089], [0097], [0101], [0016]-[0018], [0047], [0050], [0068], [0069], claim 41.  Thus, the Aizawa-Mendelson-2003-Ohsaki-Goldsmith device, as described in Section III.A.5, in conjunction with the PDA with which such device is in communication as per Goldsmith, provides the claimed physiological measurement system. *Id.*; APPLE-1003, ¶184.

**[17a]: a user-worn physiological measurement device according to claim 16; and**

*See supra* Claim 16.  APPLE-1003, ¶185.

**[17b]: a handheld computing device in communication with the user-worn physiological measurement device.**

*See supra* [17pre].  In particular, the Aizawa-Mendelson-2003-Ohsaki-Goldsmith device, as described in Section III.A.5, is in communication with a PDA. APPLE-1027, [0089], [0097], [0101], [0016]-[0018], [0047], [0050], [0068], [0069], claim 41; APPLE-1003, ¶186.

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

## B.   GROUND 2 – Claims 1-17 are obvious over Aizawa, Mendelso-2003, Ohsaki, Goldsmith, and Ali

Ground 2 applies the same rationale for unpatentability against claims 1-17 as Ground 1 except for feature [10g].  Under Ground 2, Petitioner relies on the combination of Aizawa-Mendelson-2003-Ohsaki-Goldsmith and Ali as rendering obvious [10g].  And because feature [10g] is part of sole independent claim 1, all features in claims 1-17 are impacted and rendered obvious by the combination of Aizawa-Mendelson-2003-Ohsaki-Goldsmith and Ali.  Prior art mappings and arguments for all other claim features in Ground 2 remain the same as in Ground 1.

### 1.   Overview of Ali

Ali is directed to determining and displaying a user's pulse rate using a pulse oximeter.  APPLE-1046, 4:17-26, 10:41-11:2.  Ali's pulse oximeter can display information in a portrait or landscape mode in response to the selection of a key by a user.  APPLE-1046, 5:23-25, 12:7-16, 12:47-67, 11:59-67.  For example, pulse rate is shown in the portrait orientation in FIG. 8B and in the landscape orientation in FIG. 8C.  The scales for the graphs in the two orientations are different such that the x-axis is spread across the display screen over a larger area in FIG. 8C and consequently can be viewed more clearly.  APPLE-1003, ¶66.

86

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195



APPLE-1046, FIGS. 8B, 8C.

### 2.   Combination of Aizawa-Mendelson-2003-Ohsaki-Goldsmith and Ali

Ali's pulse oximeter, like Aizawa-Mendelson-2003-Ohsaki-Goldsmith, "may be incorporated as a module or built-in portion of a multiparameter patient monitoring system."  APPLE-1046, 1:23-33.  Recall from Sections III.A.5 that Aizawa-Mendelson-2003-Ohsaki-Goldsmith incorporates Goldsmith's touch screen display and user interface and also displays a user's pulse rate.  APPLE-1027, [0002], [0013], [0014], [0035]-[0038], [0082]-[0088], [0095], [0102], claims 25, 26; APPLE-1003, ¶¶187-191.

Goldsmith acknowledges that the rendering of content on its user interface display can be incorrect due to screen formatting, scaling, and resolution issues. APPLE-1027, [0049]. Goldsmith then teaches that its display is configurable in various ways based on user input to facilitate user viewing, e.g., to be able to view the contents of a graph more clearly or improve the font size of text. APPLE-1003, ¶¶188-189; APPLE-1027, [0049], [0102], [0104].

To the extent that Patent Owner argues that Aizawa-Mendelson-2003-Ohsaki-Goldsmith does not render [10g] obvious for the reason noted above in Section III.A.5, it would have been obvious for a POSITA to incorporate the teachings of Ali into Aizawa-Mendelson-2003-Ohsaki-Goldsmith. APPLE-1003, ¶190. In particular, to address problems in displaying graphs and text as described in Goldsmith, a POSITA would have included Ali's capability to select user interface orientation through a user input such that the user may have more control over the display and enjoy an improved viewing experience customized for the user's preferences. APPLE-1027, [0102], [0104], [0049], [0055], claim 30; APPLE-1003, ¶190.

The Aizawa-Mendelson-2003-Ohsaki-Goldsmith-Ali combination would have amounted to nothing more than the use of a known technique to improve similar devices in the same way and combining prior art elements according to known methods to yield predictable results. *KSR*, 550 U.S. at 417; APPLE-1003, ¶191.

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

Here, Aizawa-Mendelson-2003-Ohsaki-Goldsmith is an integrated device that includes a pulse sensor.  APPLE-1006, Abstract, [0002]; APPLE-1016, Title, Abstract, [0016], [0017], FIG. 1; APPLE-1027, [0082]-[0084], [0095], [0037], [0038], claims 25, 26.   Likewise, Ali's device is a pulse oximeter that can be integrated into a monitoring device or system.  APPLE-1046, 1:23-33.  Implementing Ali's capability to select user interface orientation in Aizawa-Mendelson-2003-Ohsaki-Goldsmith would have been predictable at least because it would have involved incorporating a feature that was simple to implement and known in the industry.  APPLE-1003, ¶191.  For instance, Ali concedes that its user interface orientation selection feature can easily be implemented through a software program for modifying the display of information.  APPLE-1046, 12:47-67.  Furthermore, this combination would require nothing more than applying a known technique, as described by Ali.  APPLE-1003, ¶191.

## IV.   PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION

The *NHK-Fintiv* rule should not be applied because it violates the AIA, which allows IPR to proceed in tandem with infringement litigation so long as the petition is filed within one year of service of a complaint of infringement.  See 35 U.S.C. § 315(b).  The rule also is arbitrary and capricious because its vague factors

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

lead to speculative, unpredictable, and unfair outcomes.  Further, the rule is proce-durally invalid because it was not adopted through notice-and-comment rulemak-ing.

However, consistent with Congressional intent and goals of *NHK-Fintiv*, Apple asks the Board alone to consider challenges raised in this Petition.  *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11, 6 (PTAB 2020).

Unlike *NHK*, there is no basis for denial of this Petition under § 325(d), which would only be appropriate if the same or substantially the same art or argu-ments were previously presented to the Office.  *Advanced Bionics LLC v. MED-EL Elektromedizinische Gerate GmbH*, IPR2019-01469 Pap. 6, 8-10 (PTAB Feb. 13, 2020)(precedential).  The Petition's arguments are premised on combinations of references that were never presented to the Office with respect to the '564 patent. Aizawa does appear as one among hundreds of listed references, but there is no in-dication that it was considered by the examiner.  *See, generally,* APPLE-1002.

Moreover, and as explained below, *Fintiv* favors institution.

## A.     Factor 1: Institution Will Increase Likelihood of Stay

Institution will enable the Board to resolve the issue of validity, and a find-ing of invalidity will relieve the Central District of California (the "District Court") of the need to continue litigation.  Apple moved to stay the District Court case, and the opportunity for such simplification increases the likelihood that the court will

Exhibit H
Page 565

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

grant a stay in view of IPR institution.  *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case No. 2:16-cv-642-JRG, 2-3 (E.D. Tex. 2017); *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 13-CV-1058, 2015 WL 1069111 (E.D. Tex. 2015).

### B.    Factor 2: District Court Schedule

Trial in the District Court case is scheduled for April 5, 2022.  APPLE-1031, 1.  Based on the 18-month IPR schedule, a Final Written Decision ("FWD") in an IPR arising from the present Petition would issue in early April of 2022, near the District Court trial date.

However, as in *NHK*, district court trial dates shift, even in normal times. *Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap. 22, 17 (PTAB 2019).  The District Court is one of the country's busiest patent courts, and the trial date of a case in the District Court in which Patent Owner is a plaintiff and is before the same judge as the District Court case has recently been postponed by approximately ten months.  APPLE-1036, 2.  Scheduling issues cannot be ruled out, as experts have professed that additional COVID-19 outbreaks are likely to arise and California is facing new outbreaks.  APPLE-1034, 1 ("Fauci says second wave of coronavirus is 'inevitable'"); APPLE-1035, 4 ("Los Angeles County is currently" at "275 [cases] per 100,000 [residents]," which is higher than the recommended level (100 per 100,000) for reopening).  And, as the Board re-

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

cently found when granting institution in *Juniper Networks, Inc. et al. v. Packet Intelligence LLC*, "it is more likely that the District Court will incur delays due to the COVID-19 pandemic than the Board." IPR2020-00388 Pap. 22 at 14 (Sept. 9, 2020)(district court trial scheduled to begin before statutory FWD date).

## C.   Factor 3: Apple's Investment in IPR Outweighs Forced Investment in Litigation to Date

District court proceedings are still at an early phase. The parties have yet to file claim construction briefs, no claim construction orders have issued, and the *Markman* hearing is not scheduled until February 8, 2021. APPLE-1031, 1. In addition, discovery is not scheduled to close until July 5, 2021. *Id.*

Apple's substantial investment in these IPR proceedings should counterbalance—if not outweigh—the resources invested in the co-pending litigation given the speed with which Apple is filing IPR petitions on over two-hundred fifty claims across thirteen patents. It would be unjust to consider resources expended in District Court (equally by both parties), without considering Apple resources expended to prepare seventeen IPR petitions that would be irretrievably lost without consideration on the merits, in addition to the extensive expenses that may be foregone through institution of Apple's petitions and that will otherwise certainly follow in co-pending litigation for which significant milestones exist.

Moreover, Masimo did not assert the '195 patent against Apple until July 24, 2020, and Apple prepared and filed the instant petition challenging the '195 patent

92

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

within nine weeks of that date—months ahead of the statutory period provided by

Congress under § 315(b).  *See* APPLE-1037.  *Mylan Pharma. Inc. v. Sanofi-*

*Aventis Deutschland GMBH*, IPR2018-01680, Pap. 22, 18 (PTAB Apr. 3,

2019)(finding that petition filed two months before bar date is "well within the

timeframe allowed by statute, weighing heavily in [petitioner's] favor").

###    D.    Factor 4: The Petition Raises Unique Issues

Apple has voluntarily stipulated to Patent Owner's counsel that, if the pre-

sent Petition is instituted, Apple will not assert that the Challenged Claims are in-

valid on the pending Petition's asserted grounds in *Masimo Corporation et al. v.*

*Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.). APPLE-1032, 1; *see*, *e.g.*, *Apple*

*v. Seven* at 15-17 (finding that such a stipulation by a petitioner "mitigates, at least

to some degree, the concerns of duplicative efforts between the district court and

the Board, as well as concerns of potentially conflicting decisions").

In addition, the Petition addresses claims that will not be addressed in Dis-

trict Court.  Although Patent Owner has not yet narrowed the asserted claims, the

District Court recently ordered the parties to submit a "Joint Claim Narrowing Pro-

posal" by November 23, 2020.  *See* APPLE-1033, 1; APPLE-1040, 1-3.  Thus,

based on this ordered reduction in the asserted claims, the District Court will nec-

essarily address fewer claims than are challenged in this Petition (which challenges

all claims of the patent), even assuming the District Court addresses validity at all,

93

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

which is presently unknowable.  *See, e.g., Apple v. Seven* at 18.

In short, grounds in this Petition are unique, and will not be addressed in District Court.  *See*, *e.g.*, *Apple v. Seven* at 15-20 (weighing this factor against exercising 314(a) discretion where a petitioner challenged several unasserted claims and stipulated that it would not pursue the IPR grounds in the co-pending litigation).

### E.    Factor 5: The Petition Enables the Board to Resolve Invalidity of Claims that Might Otherwise be Reasserted

Apple's Petition is potentially helpful to future defendants.  For at least this reason, Apple's status as Petitioner and defendant is, at worst, a neutral factor.  Taking the relevant circumstances into account, institution would serve overall efficiency and integrity, enabling the Board to determine invalidity of claims that Patent Owner might later assert against others.

### F.    Factor 6: Other Circumstances Support Institution

As *Fintiv* noted, "the factors...are part of a balanced assessment of all the relevant circumstances in the case," and, "if the merits of a ground raised in the petition seem particularly strong … the institution of a trial may serve the interest of overall system efficiency and integrity …."  *Fintiv*, 14-15.  As explained in the Petition, institution would result in invalidation of the Challenged Claims.

### V.    CONCLUSION

Exhibit H
Page 569

Accordingly, Petitioner respectfully requests institution of an IPR for those claims of the '195 patent for each of the grounds presented herein.

## VI.    PAYMENT OF FEES – 37 C.F.R. § 42.103

Apple authorizes the Patent and Trademark Office to charge Deposit Account No. 06-1050 for the fee set in 37 C.F.R. § 42.15(a) for this Petition and further authorizes payment for any additional fees to be charged to this Deposit Account.

## VII.   MANDATORY NOTICES UNDER 37 C.F.R §42.8(a)(1)

### A.    Real Party-In-Interest Under 37 C.F.R. §42.8(b)(1)

Petitioner, Apple Inc. is the real party-in-interest.

### B.    Related Matters Under 37 C.F.R. §42.8(b)(2)

Patent Owner filed a second amended complaint on July 24, 2020 in the U.S. District Court for the Central District of California (CDCA) (Case No. 8:20-cv-00048) against Apple, in which Masimo alleged, for the first time, infringement of the '195 patent by Apple.  The initial complaint in the case, which did not allege infringement of the '195 patent, was served to Apple on January 13, 2020.

IPRs challenging claims of related U.S. Patents 10,702,194, 10,709,366, 10,624,564, and 10,631,765 are being filed concurrently or imminently.  No other petitions for IPR of the '195 patent have been filed.  On August 31, 2020, Apple

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

filed petitions for IPR of related U.S. Patents 10,258,265 (IPR2020-01520),

10,588,553 (IPR2020-01536 and IPR2020-01537).  On September 2, 2020, Apple

filed petitions for IPR of related U.S. Patents 10,292,628 (IPR2020-01521) and

10,588,554 (IPR2020-01538 and IPR2020-01539).

### C.  Lead And Back-Up Counsel Under 37 C.F.R. §42.8(b)(3)

Apple provides the following designation of counsel.

| Lead Counsel | Backup counsel |
|---|---|
| W. Karl Renner, Reg. No. 41,265<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email: IPR50095-0026IP1@fr.com | Roberto J. Devoto, Reg. No. 55,108<br>Hyun Jin In, Reg. No. 70,014<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>PTABInbound@fr.com |

### D.  Service Information

Please address all correspondence and service to the address listed above.

Petitioner consents to electronic service by email at IPR50095-0026IP1@fr.com

(referencing No. 50095-0026IP1 and cc'ing PTABInbound@fr.com, axf-

ptab@fr.com, devoto@fr.com and in@fr.com.

Respectfully submitted,

Dated  September 30, 2020          /W. Karl Renner/

96

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

W. Karl Renner, Reg. No. 41,265
Roberto J. Devoto, Reg. No. 55,108
Hyun Jin In, Reg. No. 70,014
Fish & Richardson P.C.
3200 RBC Plaza, 60 South Sixth Street
Minneapolis, MN 55402
T: 202-783-5070
F: 877-769-7945

(Control No. IPR2020-01733)          Attorneys for Petitioner

Exhibit H
Page 572

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

## CERTIFICATION UNDER 37 CFR §42.24

Under the provisions of 37 CFR §42.24(d), the undersigned hereby certifies

that the word count for the foregoing Petition for *Inter partes* Review totals 13,976

words, which is less than the 14,000 allowed under 37 CFR §42.24.

Dated  September 30, 2020           /W. Karl Renner/
                                    W. Karl Renner, Reg. No. 41,265
                                    Roberto J. Devoto, Reg. No. 55,108
                                    Hyun Jin In, Reg. No. 70,014
                                    Fish & Richardson P.C.
                                    3200 RBC Plaza, 60 South Sixth Street
                                    Minneapolis, MN 55402
                                    T: 202-783-5070
                                    F: 877-769-7945

                                    Attorneys for Petitioner

Attorney Docket No. 50095-0026IP1
IPR of U.S. Patent No. 10,702,195

# CERTIFICATE OF SERVICE

Pursuant to 37 CFR §§42.6(e)(4)(i) *et seq.* and 42.105(b), the undersigned

certifies that on September 30, 2020, a complete and entire copy of this Petition for

*Inter partes* Review and all supporting exhibits were provided via Federal Express,

to the Patent Owner by serving the correspondence address of record as follows:


KNOBBE, MARTENS, OLSON & BEAR, LLP
MASIMO CORPORATION (MASIMO)
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE CA 92614


/Edward G. Faeth/
Edward G. Faeth
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
(202) 783-5070

# Exhibit I

Exhibit I
Page 575

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent of:      Poeze, et al.
U.S. Patent No.:    10,709,366                  Attorney Docket No.: 50095-0027IP1
Issue Date:           July 14, 2020
Appl. Serial No.:    16/829,510
Filing Date:          March 25, 2020
Title:                MULTI-STREAM DATA COLLECTION SYSTEM FOR NONIN-
                      VASIVE MEASUREMENT OF BLOOD CONSTITUENTS

**Mail Stop Patent Board**
Patent Trial and Appeal Board
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

## PETITION FOR *INTER PARTES* REVIEW OF UNITED STATES PATENT NO. 10,709,366 PURSUANT TO 35 U.S.C. §§ 311–319, 37 C.F.R. § 42

Exhibit I
Page 576

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

# TABLE OF CONTENTS

**I.**   **REQUIREMENTS FOR IPR UNDER 37 C.F.R. §42.104**............................1
   **A.**   Grounds for Standing Under 37 C.F.R. §42.104(a)...................................1
   **B.**   Challenge Under 37 C.F.R. §42.104(b) and Relief Requested ...............1
   **C.**   Claim Construction under 37 C.F.R. §§42.104(b)(3).............................3
   **D.**   Level of Ordinary Skill in the Art...........................................................3

**II.**   **SUMMARY OF THE '366 patent** ..........................................................4
   **A.**   Brief Description.......................................................................................4
   **B.**   Summary of the Prosecution History of the '366 patent .........................7

**III.**   **THE CHALLENGED CLAIMS ARE UNPATENTABLE**...........................8
   **A.**   [GROUND 1] – Claims 1-12, 14-27 are rendered obvious by Aizawa in view of Mendelson-2003, Ohsaki, and Goldsmith ..................................8
      1.   Overview of Aizawa...........................................................................8
      2.   Overview of Mendelson-2003...........................................................11
      3.   Overview of Ohsaki............................................................................13
      4.   Overview of Goldsmith......................................................................15
      5.   Combination of Aizawa, Mendelson-2003, Ohsaki, and Goldsmith ..................................................................................................18
      6.   Analysis ...........................................................................................38
   **B.**   [GROUND 2] – Claim 13 is obvious over Aizawa, Mendelson-2003, Ohsaki, Goldsmith, and Sherman ..........................................................84
      1.   Overview of Sherman.........................................................................84
      2.   Combination of Aizawa-Mendelson-2003-Ohsaki-Goldsmith and Sherman...........................................................................................86
      3.   Analysis ...........................................................................................87

**IV.**   **PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION**..........88

**V.**   **CONCLUSION**.........................................................................................93

**VI.**   **PAYMENT OF FEES – 37 C.F.R. § 42.103** .........................................94

**VII.**   **MANDATORY NOTICES UNDER 37 C.F.R §42.8(a)(1)**.......................94
   **A.**   Real Party-In-Interest Under 37 C.F.R. §42.8(b)(1).............................94
   **B.**   Related Matters Under 37 C.F.R. §42.8(b)(2) ......................................94
   **C.**   Lead And Back-Up Counsel Under 37 C.F.R. §42.8(b)(3)...................95
   **D.**   Service Information ................................................................................95

Exhibit I
Page 577

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

# EXHIBITS

| APPLE-1001 | U.S. Patent No. 10,709,366 to Poeze, et al. ("the '366 patent") |
|---|---|
| APPLE-1002 | Excerpts from the Prosecution History of the '366 patent ("the Prosecution History") |
| APPLE-1003 | Declaration of Dr. Thomas W. Kenny |
| APPLE-1004 | Curriculum Vitae of Dr. Thomas W. Kenny |
| APPLE-1005 | *Masimo Corporation, et al. v. Apple Inc.,* Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.) |
| APPLE-1006 | U.S. Pub. No. 2002/0188210 ("Aizawa") |
| APPLE-1007 | JP 2006-296564 ("Inokawa") |
| APPLE-1008 | Certified English Translation of Inokawa and Translator's Declaration |
| APPLE-1009 | U.S. Pat. No. 7,088,040 ("Ducharme") |
| APPLE-1010 | U.S. Pat. No. 6,198,951 ("Kosuda") |
| APPLE-1011 | RESERVED |
| APPLE-1012 | RESERVED |
| APPLE-1013 | RESERVED |
| APPLE-1014 | U.S. Pub. No. 2001/0056243 ("Ohsaki") |
| APPLE-1015 | "Design and Evaluation of a New Reflectance Pulse Oximeter Sensor," Y. Mendelson, et al.; Worcester Polytechnic Institute, |

ii

Exhibit I
Page 578

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

|  | Biomedical Engineering Program, Worcester, MA 01609; Association for the Advancement of Medical Instrumentation, Vol. 22, No. 4, 1988; pp. 167-173 ("Mendelson-1988") |
|---|---|
| APPLE-1016 | "A Wearable Reflectance Pulse Oximeter for Remote Physiological Monitoring," Y. Mendelson, et al.; Proceedings of the 28th IEEE EMBS Annual International Conference, 2006; pp. 912-915 ("Mendelson-2006") |
| APPLE-1017 | "Noninvasive Pulse Oximetry Utilizing Skin Reflectance Photoplethysmography," Y. Mendelson, et al.; IEEE Transactions on Biomedical Engineering, Vol. 35, No. 10, October 1988; pp. 798-805 ("Mendelson-IEEE-1988") |
| APPLE-1018 | "Acrylic: Strong, stiff, clear plastic available in a variety of brilliant colors," available at https://www.curbellplastics.com/Research-Solutions/Materials/Acrylic |
| APPLE-1019 | U.S. Pat. No. 7,031,728 ("Beyer") |
| APPLE-1020 | U.S. Pat. No. 7,092,735 ("Osann, Jr.") |
| APPLE-1021 | U.S. Pat. No. 6,415,166 ("Van Hoy") |
| APPLE-1022 | RESERVED |
| APPLE-1023 | RESERVED |
| APPLE-1024 | "Measurement Site and Photodetector Size Considerations in Optimizing Power Consumption of a Wearable Reflectance Pulse Oximeter," Y. Mendelson, et al.; Proceedings of the 25th IEEE EMBS Annual International Conference, 2003; pp. 3016-3019 ("Mendelson-2003") |
| APPLE-1025 | U.S. Pat. No. 6,801,799 ("Mendelson-'799") |
| APPLE-1026 | Declaration of Jacob Munford |
| APPLE-1027 | U.S. Pub. No. 2007/0093786 ("Goldsmith") |

Exhibit I
Page 579

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

| APPLE-1028 | RESERVED |
|---|---|
| APPLE-1029 | Wikipedia: The Free Encyclopedia, "Universal asynchronous receiver-transmitter" at https://en.wikipedia.org/wiki/Universal_asynchronous_receiver-transmitter, last accessed 08/27/2020 |
| APPLE-1030 | RESERVED |
| APPLE-1031 | Scheduling Order, *Masimo v. Apple et al.*, Case 8:20-cv-00048, Paper 37 (April 17, 2020) |
| APPLE-1032 | Stipulation by Apple |
| APPLE-1033 | Telephonic Status Conference, *Masimo v. Apple et al.*, Case 8:20-cv-00048, Paper 78 (July 13, 2020) |
| APPLE-1034 | Joseph Guzman, "Fauci says second wave of coronavirus is 'inevitable'", TheHill.com (Apr. 29, 2020), available at: https://thehill.com/changing-america/resilience/natural-disasters/495211-fauci-says-second-wave-of-coronavirus-is |
| APPLE-1035 | "Tracking the coronavirus in Los Angeles County," LATimes.com (Aug. 20, 2020), available at https://www.latimes.com/projects/california-coronavirus-cases-tracking-outbreak/los-angeles-county/ |
| APPLE-1036 | Order Amending Scheduling Order, Masimo et al. v. True Wearables et al., Case 8:18-CV-02001 (July 7, 2020) |
| APPLE-1037 | *Masimo Corporation, et al. v. Apple Inc.*, Second Amended Complaint, Civil Action No. 8:20-cv-00048 (C.D. Cal.) |
| APPLE-1038 | RESERVED |
| APPLE-1039 | RESERVED |
| APPLE-1040 | Order Granting Stipulation to Amend the Scheduling Order, Masimo v. Apple et al., Case 8:20-cv-00048, Paper 201 (September 21, 2020) |

iv

Exhibit I
Page 580

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

APPLE-1041        RESERVED

APPLE-1042        U.S. Patent No. 7,230,227 ("Wilcken")

APPLE-1043 to 1046        RESERVED

APPLE-1047        U.S. Patent No. 4,941,236 ("Sherman")

Apple Inc. ("Petitioner" or "Apple") petitions for *inter partes* review ("IPR") under 35 U.S.C. §§311–319 and 37 C.F.R. §42 of claims 1-27 ("the Challenged Claims") of U.S. Patent No. 10,709,366 ("'366 patent").  As explained in this petition, there exists a reasonable likelihood that Apple will prevail with respect to at least one of the Challenged Claims.

## I.      REQUIREMENTS FOR IPR UNDER 37 C.F.R. §42.104

### A.      Grounds for Standing Under 37 C.F.R. §42.104(a)

Apple certifies that the '366 patent is available for IPR.  The present petition is being filed within one year of service of a complaint against Apple in *Masimo Corporation, et al. v. Apple Inc.,* Civil Action No. 8:20-cv-00048 (C.D. Cal.).  Apple is not barred or estopped from requesting this review challenging the Challenged Claims on the below-identified grounds.

### B.      Challenge Under 37 C.F.R. §42.104(b) and Relief Requested

Apple requests an IPR of the Challenged Claims on the grounds set forth in the table below, and requests that each of the Challenged Claims be found unpatentable.  Additional explanation and support is set forth in APPLE-1003, the Declaration of Dr. Thomas W. Kenny.  *See* APPLE-1003, ¶¶20-218.

| Ground | Claims | Basis for Rejection |
|---|---|---|
| **Ground 1** | **1-12, 14-27** | §103 over Aizawa, Mendelson-2003, Ohsaki, Goldsmith |
| **Ground 2** | **13** | §103 over Aizawa, Mendelson- |

| Ground | Claims | Basis for Rejection |
|---|---|---|
|  |  | 2003, Ohsaki, Goldsmith, Sherman |

The '366 patent claims priority to a number of U.S. patent applications, the earliest of which was filed on 07/02/2009, as well as to a number of U.S. provisional applications, the earliest of which was filed on 07/03/2008.  APPLE-1001, Cover.  Solely for purposes of evaluating prior art in this proceeding and without conceding the propriety of these priority claims, this Petition will treat 07/03/2008, as the earliest alleged effective filing date (*i.e.,* the "Earliest Claimed Date") of the '366 patent.  The references relied on in the above grounds (as well as other supporting references mentioned in this Petition) are printed publications and qualify as prior art to the '366 patent under either date, at least under the sections shown in the following table.  *See* APPLE-1026.  None of these references were substantively considered during prosecution of the '366 patent.  *See, generally,* APPLE-1002.  Mendelson-2003 does appear as one among hundreds of listed references, but there is no indication that it was considered by the examiner.  *Id.*

| Reference | Qualifying Date | Earliest Claimed Date |
|---|---|---|
| Aizawa | 12/12/2002 | 102(b) |
| Mendelson-2003 | 2003 | 102(b) |
| Ohsaki | 12/27/2001 | 102(b) |
| Goldsmith | 4/26/2007 | 102(b) |
| Sherman | 7/17/1990 | 102(b) |

Exhibit I
Page 583

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

### C.      Claim Construction under 37 C.F.R. §§42.104(b)(3)

Petitioner submits that all claim terms should be construed according to the

*Phillips* standard.  *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); 37

C.F.R. §42.100.  Here, based on the evidence below and the prior art's description

of the claimed elements being similar to that of the '366 patent specification, no

formal claim constructions are necessary in this proceeding because "claim terms

need only be construed to the extent necessary to resolve the controversy."  *Well-*

*man, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011).

### D.      Level of Ordinary Skill in the Art

A person of ordinary skill in the art relating to the subject matter of the '366

patent as of 07/03/2008 ("POSITA") would have been a person with a working

knowledge of physiological monitoring technologies.  The person would have had

a Bachelor of Science degree in an academic discipline emphasizing the design of

electrical, computer, or software technologies, in combination with training or at

least one to two years of related work experience with capture and processing of

data or information, including but not limited to physiological monitoring technol-

ogies.  APPLE-1003, ¶¶21-22.  Alternatively, the person could have also had a

Master of Science degree in a relevant academic discipline with less than a year of

related work experience in the same discipline.  *Id*

Exhibit I
Page 584

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

## II.    SUMMARY OF THE '366 patent

### A.    Brief Description

The '366 patent is directed to "noninvasive methods, devices, and systems for measuring...physiologically relevant patient characteristics."  APPLE-1001, 2:40-46; APPLE-1003, ¶¶43-47.  "These characteristics can relate, for example, to pulse rate, hydration, trending information and analysis, and the like."  APPLE-1001, 2:46-48.

As illustrated in FIG. 1, the '366 patent describes a system that "include[s] a sensor 101 (or multiple sensors) that is coupled to a processing device or physiological monitor 109," where "the sensor 101 and the monitor 109 are integrated together into a single unit" or "separate from each other and communicate one with another in any suitable manner, such as via a wired or wireless connection."  *Id.*, 11:56-63.

4

Exhibit I
Page 585

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



APPLE-1001, FIG. 1.

The '366 patent's FIGS. 2A-2D (reproduced below) illustrate "example monitoring devices 200 in which the data collection system 100 can be housed." APPLE-1001, 16:31-33.  Each of the "monitoring devices" as shown below includes a sensor and a "handheld monitor."  *Id.*, 5:48-51.  Further, each device may include components (*e.g.*, monitor and sensor) that are connected "via a wired or wireless connection."  *Id.*, 11:60-63.

5

Exhibit I
Page 586

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



APPLE-1001, FIGS. 2A-2D.

In use, "the detectors 106 can capture and measure light transmitted from the emitter 104 that has been attenuated or reflected from the tissue in the measurement site 102," and "[t]he detectors 106 can output a detector signal 107 responsive to the light captured or measured." *Id.*, 14:11-19.  The signal can correspond to, for instance, the pulse rate of the user. *Id.*, 2:46-68; APPLE-1003, ¶46.  Although the '366 patent mostly describes a transmittance-type measurement device

6

Exhibit I
Page 587

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

where the emitter and the detector are positioned on opposite sides of the measurement site, the claims do not distinguish over a reflectance-type device where the emitter and the detector are positioned on the same side of the measurement site. *See* APPLE-1001, 14:13-16.

The '366 patent further describes that its sensor can include a plurality of detectors that are disposed within a housing and covered by a transparent cover (*i.e.*, light permeable cover) having a protrusion.  APPLE-1001, 26:3-11, 14D; APPLE-1003, ¶47.

### B.    Summary of the Prosecution History of the '366 patent

U.S. Patent No. 10,709,366 issued on 07/14/2020 from U.S. Patent Application No. 16/829,510 ("the '510 application"), which was filed on 03/25/2020.  APPLE-1001, Cover.  The face of the patent alleges an earliest possible priority date of 07/03/2008 through a chain of parent applications.  *Id.*  The claims of the '510 application were allowed after a brief examination process involving prior art references substantially different than those relied upon in this petition.  In particular, in response to the Non-Final Rejection of April 27, 2020, applicant amended, *inter alia*, independent claim 15 to recite well-known features such as "a wall configured to surround" the photodiodes as well as "a protrusion that extends over the wall and the photodiodes."  APPLE-1002, ¶¶395-407.  Upon receipt of this amendment and the accompanying remarks, the examiner subsequently allowed the

7

Exhibit I
Page 588

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

claims.  *Id*., ¶¶431-435.  As will be detailed in this Petition, these and other

claimed features were well-known at the time of the '366 patent.  Indeed, had the

examiner been aware of the prior advanced in this Petition, the application would

not have been allowed.

### III.    THE CHALLENGED CLAIMS ARE UNPATENTABLE

#### A.    [GROUND 1] – Claims 1-12, 14-27 are rendered obvious by Aizawa in view of Mendelson-2003, Ohsaki, and Goldsmith

##### 1.    Overview of Aizawa

Aizawa describes a "pulse wave sensor for detecting a pulse wave by detect-

ing light output from a light emitting diode and reflected from the artery of a wrist

of a subject."  APPLE-1006, Abstract; APPLE-1003, ¶¶48-54.

Aizawa's sensor device detects a user's pulse wave by using an emitter,

namely LED 21 (shown in green), to emit light that is picked up by photodetectors

22 (shown in red) that are arranged around the LED.  APPLE-1006, [0023].  Ai-

zawa teaches that photodetectors 22 are "phototransistors," which a POSITA

would understand to be photodiodes.  APPLE-1003, [0023].  In particular, "[n]ear

infrared radiation output toward the wrist 10 from the light emitting diode 21 is re-

flected by a red corpuscle running through the artery 11 of the wrist 10 and this re-

flected light is detected by the plurality of photodetectors 22 so as to detect a pulse

wave."  *Id.*, [0027].

Exhibit I
Page 589

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



APPLE-1006, FIGS. 1(a)-1(b); APPLE-1003, ¶49.

Aizawa's device includes windows in the form of tapered cavities, indicated below in blue, that provide an opening for each of the detectors (and emitter) and that serve to increase, for instance, the concentration of light collected by the detectors, thereby increasing the signal to noise ratio.  APPLE-1003, ¶50.

Exhibit I
Page 590

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



windows / tapered cavities



windows / tapered cavities

windows / tapered cavities

APPLE-1006, FIG. 1(b) (top), FIG. 1(a) (bottom), [0012], [0024].  In particular,

Aizawa describes that such tapered openings "make[] it possible to expand the

light emitting area and the light receiving area" such that "a pulse wave can be eas-

ily detected[.]"  APPLE-1006, [0012].  APPLE-1003, ¶51.

Aizawa further teaches a light permeable cover in the form of an acrylic

transparent plate 6 (blue) that is mounted at the detection face 23a:

10

Exhibit I
Page 591

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



Light permeable cover

\APPLE-1006, FIG. 1(b), [0023]; APPLE-1003, ¶52.  This transparent plate not only provides a light permeable cover that covers the emitter/detector assembly, in a manner similar to what is described in the '366 patent, but it also provides improved adhesion between the detector and the wrist to "further improv[e] the detection efficiency of a pulse wave."  APPLE-1006, [0030]; APPLE-1003, ¶53.

## 2.    Overview of Mendelson-2003

Mendelson-2003 is directed to a "wearable pulse oximeter."  APPLE-1024, Abstract.  For this purpose, Mendelson-2003 teaches a "reflectance sensor comprising twelve identical Silicon PD ["photodiode"] chips[.]"  *Id.*, 3017.  As shown below, a first set of "six PDs were positioned in a close inner-ring configuration at a radial distance of 6.0mm from the LEDs," and a "second set of six PDs spaced

11

Exhibit I
Page 592

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

equally along an outer-ring, separated from the LEDs by a radius of 10.0mm." *Id.;*

APPLE-1003, ¶55.



APPLE-1024, FIG. 1.

In the detector configuration above, Mendelson-2003 teaches that ***"[e]ach***

***cluster of six PDs were wired in parallel*** and connected through a central hub to

the common summing input of a current-to-voltage converter." *Id.*, 3017.  Men-

delson-2003 teaches that power savings can be achieved by having two rings of de-

tectors arranged in this manner "***by widening the active area of the PD which***

***helps to collect a bigger portion of backscattered light intensity***." *Id.*, 3019.  That

is, Mendelson-2003 teaches a configuration of PDs (*i.e.*, arranged in two rings) that

is better able to collect reflected light than prior art configurations.  *Id.*, 3017,

Exhibit I
Page 593

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

3019; APPLE-1003, ¶56.  This configuration of PDs allows the device designer to decrease the current provided to the LED because a lower brightness LED would still produce an acceptable signal as a result of the increased light collection efficiency of Mendelson-2003's PD configuration.  *See id.*, 3017 ("...minimizing the drive currents supplied to the LEDs would contribute considerably toward the overall power saving in the design of a more efficient pulse oximeter, particularly in wearable wireless applications.").

Mendelson-2003 further teaches that its sensor can be mounted on the wrist and can be "incorporated into a wrist watch device." *Id.*, 3017.  By using the two sets of photodiodes that are each connected in parallel, Mendelson-2003 discloses that backscattered signals measured from the wrist were increased by 42% and 73%, respectively, for R and IR signals.  *Id.*, 3019.  Thus, Mendelson-2003 utilizes its 2-ring PD arrangement to allow power-sensitive wearable devices, such as wrist-based devices, to consume less power, thereby prolonging, for example, battery life.  *Id.*, 3017; APPLE-1003, ¶57.

### 3.      Overview of Ohsaki

Ohsaki is titled "Wristwatch-type human pulse wave sensor attached on back side of user's wrist" and, as illustrated in Ohsaki's FIG. 1 (reproduced below), is generally directed to a wrist-worn "pulse wave sensor" (APPLE-1014, [0016]) featuring a "light emitting element" and a "light receiving element."

Exhibit I
Page 594

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

*Id.*, [0017].  Ohsaki's sensor addresses problems such as user discomfort and movement of the sensor by using a "translucent board" with a convex surface that is "in intimate contact with the surface of the user's skin" to prevent slippage.  *Id.*, [0009]-[0010].  Because the intensity of the light received by the detecting element "largely varies depending on the shift amount," or amount of movement of the detecting element, Ohsaki's convex surface reduces the "variation of the amount of reflected light which is emitted" from the LED and reaches the detecting element after reflection from the user's skin.  *Id.*, [0025], FIG. 2; APPLE-1003, ¶¶58-59.



FIG. 2

Exhibit I
Page 595

APPLE-1014, FIG. 2.

### 4. Overview of Goldsmith

Goldsmith discloses a medical watch controller device 900. APPLE-1027, [0085], [0095], [0098], [0104], [0010], claim 6. As illustrated below, Goldsmith teaches a wrist band 940 that enables the device 900 to be worn "like a watch," and Goldsmith's display 910 can include a "touchscreen display." *Id.*, [0085], [0086], [0093], [0095]; APPLE-1003, ¶¶60-64.



APPLE-1027, FIG. 9A.

15

Exhibit I
Page 596

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

Goldsmith's device can "be used with any number of...diagnostic devices" including "cardiac and other sensors" to obtain physiological measurements including user temperature, blood glucose level, oxygen level, and heart rate.  APPLE-1027, [0082]-[0084], [0095], [0037], [0038], claims 25, 26.  The display 910 may display data received "from a sensor transmitter on the patient's skin," from "any number of therapy/diagnostic devices," and/or from user input.  *Id*., [0082], [0087], [0095], [0102].  Goldsmith's device can, for example, monitor and display "heart rate," "the patient's temperature...or other characteristic[s]."  *Id*., [0002], [0013], [0014], [0035]-[0037], [0082], [0087], [0088], [0095], [0102]; APPLE-1003, ¶61.

Goldsmith's FIG. 10 (reproduced below) depicts exemplary components included in the watch controller device.  APPLE-1027, [0088].

16

Exhibit I
Page 597

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



APPLE-1027, FIG. 10; APPLE-1003, ¶62.

Among other components, Goldsmith includes a memory, processor, trans-

ceiver, and display (e.g., a touch-screen).  APPLE-1027, FIG. 10, [0088], [0091],

[0093], [0095], [0085]-[0087], [0090], [0093], [0102], [0104], claims 9, 10, 12, 13,

26, 43-45.  A "processor 1012…is adapted to process data and commands inputted

by the user, and a transmitter/transceiver 1018…coupled to the processor 1012

transmits" communications, including data indicative of a user's physiological pa-

rameters, to other devices (e.g., a computer, cellular phone, and/or PDA).  APPLE-

1027, [0007], [0016]-[0018], [0035], [0052], [0087]-[0089], [0097], [0101].  The

transceiver may, e.g., receive diagnostic information from sensors included within

Goldsmith's housing, and transmit that information to other devices.  *Id.*, [0052],

Exhibit I
Page 598

[0088], [0094], [0087], [0034], [0036]; APPLE-1003, ¶63.  Goldsmith's memory can store data such as heart rate data.  *Id.*, [0037], [0044], [0091], [0095], [0097].

In some embodiments, Goldsmith's processor is implemented as a custom integrated circuit (IC), as shown in FIG. 8.  APPLE-1027, [0052].



APPLE-1027, FIG. 8; APPLE-1003, ¶64.

### 5.    Combination of Aizawa, Mendelson-2003, Ohsaki, and Goldsmith

### *(a) Aizawa + Mendelson-2003*

As described in Section III.A.1 and shown below, Aizawa teaches a first set of photodiodes in the form of four photodetectors 22 that are circularly arranged around a centrally located emitter.  APPLE-1006, [0023].  Moreover, a signal

18

Exhibit I
Page 599

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

stream from this first set of photodiodes is sent to a drive detection circuit 24 that "amplif[ies] the outputs of the photodetectors." *Id.;* APPLE-1003, ¶67.



APPLE-1006. FIG. 1(a).

In one embodiment, Aizawa teaches that 8 or more photodetectors may be provided to improve detection efficiency, in so doing teaching several different configurations that balance trade-offs between detection efficiency, the size of the pulse rate detector, and power consumption:

19

Exhibit I
Page 600

FIG. 4 (a)



APPLE-1006, FIG. 4(a), [0032], [0033]; APPLE-1003, ¶¶67-68.

Aizawa does not expressly teach "a second set of photodiodes are connected to one another in parallel to provide a second signal stream" as recited in claim 1 of the '366 patent.  That is, while Aizawa teaches various ways of using a single ring of multiple detectors to improve detection efficiency, it does not explicitly mention that these multiple detectors may be provided as first and second sets of photodiodes that are each connected in parallel and provide first and second signal streams, respectively.  APPLE-1006, [0013], [0030], [0032]; APPLE-1003, ¶69.  A POSITA would have realized, however, that the arrangement of Aizawa's multiple detectors can be modified in view of Mendelson-2003 to add a second ring of pho-

20

Exhibit I
Page 601

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

todiodes resulting in two rings, thereby further advancing Aizawa's goal of im-

proving detection efficiency through increased power savings as taught by Mendel-

son-2003.  APPLE-1006, [0013], [0030], [0032]; APPLE-1024, 3017, 3019; AP-

PLE-1003, ¶69.

For example, as shown below, Mendelson-2003 teaches using two rings of

photodiodes/detectors ("near positioned" detectors highlighted in green, and "far

positioned" detectors highlighted in red) in a wrist-based application where the de-

tectors in each of the near and far rings are "***wired in parallel*** and connected

through a central hub to the common summing input of a current-to-voltage con-

verter."  APPLE-1024, 3017.  Mendelson-2003 further teaches that this configura-

tion "widen[s] the active area of the PD which helps to collect a bigger portion of

backscattered light intensity," thereby improving the light collection efficiency  *Id*.,

3019; APPLE-1003, ¶70.   This configuration allows additional light to be cap-

tured, thereby allowing lower brightness LEDs to be used (and, consequently, re-

ducing power consumption).  APPLE-1003, ¶70.  Indeed, Mendelson-2003 ex-

plains that of the three configurations that were studied (one "near" ring, one "far"

ring, and the "near" and "far" rings together), the most power savings would be ob-

tained through two concentric rings of PDs (the "near" and "far" rings together):

"In comparing the three PD configurations, we found that by combining both PD

sets to simulate a single large PD area, it is possible to further reduce the driving

Exhibit I
Page 602

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

currents of the LEDs without compromising the amplitude or quality of the de-

tected PPGs."  APPLE-1024, 3019.



APPLE-1024, FIG. 1.

Moreover, Mendelson-2003 is aimed at modifying conventional PD arrange-

ments—*like that disclosed in Aizawa where a single ring of multiple PDs are*

*mounted symmetrically around a light source*—to use two distinct rings of PDs

that are mounted symmetrically around the light source.  *See* APPLE-1024, 3016

(referring to conventional sensor designs based on "radial arrangement" of PDs or

LEDs); APPLE-1003, ¶71 (citing APPLE-1006, [0032], APPLE-1015, 168, FIG.

2(A)).  Mendelson-2003's 2-ring configuration thus allows additional light to be

captured, which enables use of lower brightness LEDs (*i.e.*, LEDs driven by a

lower driving current) while still achieving acceptable signals from the PDs.  AP-

PLE-1024, 3017, 3019; APPLE-1003, ¶71.  Although Aizawa describes a pulse

22

Exhibit I
Page 603

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

rate monitor, a POSITA would have understood that it would have enjoyed the power-saving benefits provided by the configuration of the photodiodes in Mendelson-2003's pulse oximeter.   APPLE-1003, ¶69.

A POSITA in possession of both Aizawa and Mendelson-2003 would have recognized Mendelson-2003's use of two concentric rings (near-positioned and far-positioned) of photodiodes as a desirable detector configuration that would reap similar benefits for Aizawa in terms of achieving "power savings in the design of a more efficient" pulse sensing device.  APPLE-1024, 3017; APPLE-1003, ¶72.  Indeed, by using Mendelson-2003's power-saving (and thus efficiency-enhancing) PD configuration, the power consumption of a wrist-based pulse sensing device as in Aizawa can be reduced through use of a less bright and, hence, lower power-consuming LED.  APPLE-1003, ¶72.  This, of course, would allow Aizawa's wrist-based device to enjoy a longer battery life.  *Id.*  Indeed, Mendelson-2003 explains that, as opposed to "high current pulses, typically in the range between 100-200mA" used in conventional devices, its sensor was able to obtain collect reflected light when the LED current was either 4.2mA or 8.5mA.  APPLE-1024, 3017-3018.

An example implementation of adding an additional ring of detectors to Aizawa , as per Mendelson-2003, is illustrated below:

Exhibit I
Page 604

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



APPLE-1006, FIG. 1(a); APPLE-1003, ¶73.

A POSITA would further recognize, in view of Mendelson-2003, that such a two-ring arrangement can be implemented in a wrist sensor device as in Aizawa by wiring each ring of detectors in parallel and summing the input of their respective streams.  APPLE-1024, 3017; APPLE-1003, ¶¶74-75(citing APPLE-1041, 2:19-35, FIG, 1; APPLE-1042, 5:20-67, FIGS 1-2; APPLE-1025, 4:23-30).

A POSITA also would have found it obvious to modify Aizawa with Mendelson-2003 to add an additional ring of detectors because doing so merely entails the use of known solutions to improve similar systems and methods in the same way.  APPLE-1003, ¶¶74-75  Indeed, "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination

24

Exhibit I
Page 605

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

is obvious." *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 417 (2007).  A POSITA

would have recognized that applying Mendelson-2003's teachings regarding two,

concentric rings of detectors that are each connected in parallel to Aizawa's sensor

would have led to predictable improvements, for example, battery life, without sig-

nificantly altering or hindering the functions performed by Aizawa's sensor.  AP-

PLE-1003, ¶75.  A POSITA would have been motivated to provide the well-known

feature of providing multiple rings of photodiodes to a pulse sensor to achieve the

predictable benefits offered by Mendelson-2003's description of the same.  *Id.*  In

fact, Aizawa itself contemplates the addition of extra detectors to improve light

collection efficiency, although it does not disclose whether they may be arranged

as two concentric rings.  APPLE-1006, [0032]; APPLE-1003, ¶75.  Moreover, as

noted above, Mendelson-2003 expressly contemplates adding an additional ring of

detectors to a conventional 1-ring PD arrangement precisely as found in Aizawa.

APPLE-1024, 3016; APPLE-1003, ¶75.

### *(b) Aizawa + Mendelson-2003 + Ohsaki*

In addition to combining Aizawa and Mendelson-2003 as describe above,

a POSITA would have further combined the teachings of Aizawa-Mendelson-

2003 with the teachings of Ohsaki such that the cover of Aizawa-Mendelson-

2003's wrist-worn sensor would include, for instance, a convex surface to im-

prove adhesion between a subject's wrist and a surface of the sensor.  APPLE-

Exhibit I
Page 606

1014, [0025] (the convex surface prevents slippage of the detecting element
from its position on the subject's wrist, and the convex nature of the surface
suppresses the "variation of the amount of the reflected light" that reaches the
detecting element); APPLE-1003, ¶76.

     In more detail, Ohsaki describes a "detecting element" that includes "a pack-
age 5, a light emitting element 6 (e.g., LED), a light receiving element 7 (e.g., PD),
and a translucent board 8."  APPLE-1014, [0017].  "The package 5 has an opening
and includes a" substrate in the form of "circuit board 9," on which light emitting
element 6 and light receiving element 7 are arranged.  *Id*.; APPLE-1003, ¶77.  As
shown in Ohsaki's FIG. 2, translucent board 8 is arranged such that, when the sen-
sor is worn "on the user's wrist … the convex surface of the translucent board … is
in intimate contact with the surface of the user's skin"; this contact between the
convex surface and the user's skin is said to prevent slippage, which increases the
strength of the signals obtainable by Ohsaki's sensor.  APPLE-1014, [0015],
[0017], [0025], FIGS. 1, 2, 4A, 4B.

Exhibit I
Page 607

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

# FIG. 2



APPLE-1014, FIG. 2 (annotated)

Ohsaki explains that "if the translucent board 8 has a flat surface, the detected pulse wave is adversely affected by the movement of the user's wrist as shown in FIG. 4B (reproduced below)," but that if "the translucent board 8 has a convex surface…variation of the amount of the reflected light…that reaches the light receiving element 7 is suppressed."  APPLE-1014, [0025].  The convex surface is also said to prevent "disturbance light from the outside" from penetrating translucent board 8.  *Id.*  Thus, when a convex cover is used, "the pulse wave can be detected without being affected by the movement of the user's wrist 4 as shown

27

Exhibit I
Page 608

in FIG. 4A." *Id.*; APPLE-1003, ¶78.



APPLE-1014, FIGS. 4A, 4B.

As shown below, a POSITA would have found it obvious to modify the sensor's flat cover (left) to include a lens/protrusion (right), similar to Ohsaki's translucent board 8, so as to improve adhesion between the user's wrist and the sensor's surface, improve detection efficiency, and protect the elements within the sensor housing.  APPLE-1014, [0025] (explaining that the convex surface of translucent board 8 prevents slippage of a detecting element from its position on the wrist, and

Exhibit I
Page 609

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

suppresses the "variation of the amount of the reflected light" that reaches the detecting element); APPLE-1003, ¶79.



APPLE-1006, FIG. 1(b) (annotated).

A POSITA would have combined the teachings of Aizawa-Mendelson-2003 and Ohsaki as doing so would have amounted to nothing more than the use of a known technique to improve similar devices in the same way.  APPLE-1003, ¶80.  A POSITA would have recognized that incorporating Ohsaki's convex surface is simply improving Aizawa-Mendelson-2003's transparent plate 6 that has a flat surface to improve adhesion to a subject's skin and reduce variation in the signals detected by the sensor.  *Id.*  Furthermore, the elements of the combined system would each perform similar functions they had been known to perform prior to the combination—Aizawa-Mendelson-2003's transparent plate 6 would remain in the same position, performing the same function, but with a convex surface as taught by Ohsaki.  *Id.*

29

Exhibit I
Page 610

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

Notably, Inokawa (APPLE-1007[1]) provides an additional motivation and rationale for a POSITA to modify Aizawa to include a cover comprising a protruding convex surface.  APPLE-1003, ¶81.  For example, Inokawa discloses a side lens 27:



APPLE-1008, FIG. 2  Inokawa further teaches that the "lens makes it possible to increase the light-gathering ability of the LED."  APPLE-1008, [0015].  Thus, a POSITA would have understood that adding a protruded convex surface to Aizawa would have the additional benefit of increasing light collection efficiency, thereby

---

[1] JP 2006-296564 to Inokawa (APPLE-1007) was published in Japanese.  Thus, all citations to Inokawa in this petition are to the certified English translation of the same reference (APPLE-1008).

Exhibit I
Page 611

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

leading to an improved signal-to-noise ratio and more reliable pulse detection. AP-PLE-1003, ¶82. The lens of Inokawa provides precisely such an additional benefit to Aizawa's device by refracting/concentrating incoming light signals reflected by the blood. *Id*.; APPLE-1008, [0015].

A POSITA would have further understood, in view of Inokawa, how to implement the convex surface of Ohsaki into Aizawa. APPLE-1003, ¶¶83-84. For example, as illustrated below, Inokawa teaches that its cover may be either flat (left) such that "the surface is less prone to scratches," Inokawa at [0106], or in the form of a lens (right) to "increase the light-gathering ability of the LED." Inokawa at [0015].



APPLE-1008, FIG. 17 (left), FIG. 16 (right); ¶83. A POSITA would have further recognized that the transparent acrylic material used to make Aizawa's plate can be

Exhibit I
Page 612

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

readily formed to have a convex shape as in Inokawa.  APPLE-1003, ¶84 (citing to

APPLE-1009 at 3:46-51, FIG. 1).


### (c) Aizawa + Mendelson-2003 + Ohsaki + Goldsmith (the "Aizawa-Mendelson-2003-Ohsaki-Goldsmith" combination)

As detailed below, a POSITA would have been motivated to further modify

Aizawa-Mendelson-2003-Ohsaki in view of Goldsmith.  APPLE-1003, ¶¶66, 85-

93. In particular, Aizawa acknowledges an interest in real-time heart rate measure-

ment "at the time of exercise," and describes its wrist-worn pulse wave sensor as

being "easily attached," and "capable of detecting a pulse wave accurately."  AP-

PLE-1006, [0004], [0008].  Aizawa goes on to state that its sensor includes "a

transmitter for transmitting…pulse rate data to an unshown display," and that its

"pulse rate detector…can be coupled to devices making use of bio signals."  AP-

PLE-1006, [0023], [0035].  Accordingly, a POSITA would have understood that

Aizawa's sensor transmits data to a display and/or another device to which that

sensor is coupled; further, the above-noted and related disclosure would have moti-

vated a POSITA to implement Aizawa's pulse rate sensor as part of a device that

can monitor and display heart rate during exercise.  APPLE-1003, ¶85; APPLE-

1006, [0004], [0008], [0023], [0026], [0035], FIGS. 1(a), 1(b), 2; APPLE-1016,

912, 915.

Exhibit I
Page 613

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

As explained above in Section III.A.4, Goldsmith describes a watch controller device that can be used with diagnostic devices including sensors to obtain, display, and communicate physiological measurements such as user temperature heart rate.  APPLE-1027, [0082]-[0084], [0095], [0037], [0038], claims 25, 26.  Goldsmith's device has a wrist band and can be worn like a watch such that it can monitor and display data "received from a sensor transmitter on the patient's skin" and "communicate with a remote station."  APPLE-1027, [0085], [0087], [0089], [0095], FIGS. 9A, 9B, 10; APPLE-1003, ¶86.

From this and related description, a POSITA would have understood that Goldsmith's device is capable of receiving heart rate data directly from the transmitter in Aizawa's sensor, which is worn on the user's skin, and that Goldsmith's device can both display that data on its included touch-screen display, and wirelessly communicate that data to additional devices, including cellular phones, for remote monitoring.  APPLE-1003, ¶87; APPLE-1027, [0017], [0034], [0036], [0082]-[0085], [0087]-[0089], [0095], [0097], FIGS. 9A, 9B, 10; APPLE-1006, [0023], [0026], FIGS. 1(a), 1(b), 2.

As explained in more detail below, a POSITA would have found it obvious to incorporate Aizawa's wrist-worn pulse wave sensor with (i) two rings of photodiodes each connected in parallel (as per Mendelson-2003) and (ii) a protruding

Exhibit I
Page 614

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

convex surface (as per Ohsaki) into Goldsmith's integrated wrist-worn watch con-

troller device that includes, among other features, a touch screen, network inter-

face, and storage device.  APPLE-1003, ¶88; APPLE-1027, FIG. 10, [0085]-

[0088], [0090]-[0095], [0102], [0104], [0011], [0013], [0014], [0018], [0022]-

[0024], [0035], [0043], [0046], [0050], [0052], FIGS. 8, 10, claims 5, 9, 10, 12, 13,

26, 43-45, 53.

Indeed, Goldsmith states that its watch device may receive data "directly

from a sensor transmitter on the patient's skin," adding that "the controller device

may monitor heart rate," and a POSITA would have understood that Goldsmith's

heart rate sensor could be implemented by integrating the Aizawa-Mendelson-

2003-Ohsaki sensor into Goldsmith's watch controller device, which would have

enhanced the sensor's utility and improved the user's experience in many ways.

APPLE-1003, ¶89; APPLE-1027, [0087], [0095].  For example, as explained in

more detail below, a POSITA would have incorporated the Aizawa-Mendelson-

2003-Ohsaki sensor into Goldsmith's watch device to enable a user to view and in-

teract with heart rate data during exercise via the Goldsmith's touch-screen dis-

play, and to enable heart rate data to be monitored by the user and/or others

through any of the devices with which Goldsmith's device can communicate.  AP-

PLE-1003, ¶89; APPLE-1006, [0004], [0035]; APPLE-1027, [0017], [0034],

[0036], [0082]-[0085], [0087]-[0089], [0095], [0097], FIGS. 9A, 9B, 10.

Exhibit I
Page 615

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

As explained in more detail below, a POSITA would have understood that incorporating the Aizawa-Mendelson-2003-Ohsaki sensor into Goldsmith's device would have amounted to nothing more than the use of a known technique to improve similar devices in the same way, and combining prior art elements according to known methods to yield predictable results. *See KSR*, 550 U.S. at 417; APPLE-1003, ¶90; *see also* APPLE-1044, Abstract ("A wrist-worn apparatus for monitoring a user's performance…includes…a processor, a heart rate monitor, a timer, a user input, a display, a processor and a memory"), 3:57-4:11 ("User input 11 may comprise…a touch screen"), FIGS. 1, 2.  Any modifications to the dimensions to Goldsmith's watch controller device needed to accommodate Aizawa-Mendelson-2003-Ohsaki's sensor would have been obvious design choices.  APPLE-1003, ¶90.  Indeed, the '366 patent evidences that integrating a device like Aizawa-Ohsaki's sensor with a touchscreen, as disclosed in Goldsmith, would have been well within the skill set of a POSITA—the '366 patent mentions a "touch-screen display" in passing among a laundry list of potential displays with the understand that such integration would have been known to a POSITA.  APPLE-1001, 15:57-61, 17:20-26.

As illustrated below, the front side of Goldsmith's device features a display 910, and the rear side includes a cover 360.  APPLE-1027, [0030]-[0031], [0085]; APPLE-1003, ¶91.

Exhibit I
Page 616

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



Front side (facing away from the wrist)       Rear side (facing the wrist)

FIG. 9A                                        FIG 9B

APPLE-1027, FIGS. 9A, 9B.

As illustrated below, the rear side of the sensor in both Aizawa and Ohsaki includes an emitter, detectors, and a cover with a protruding convex surface facing the user's wrist, which enables light to be emitted onto the user's skin and to be detected after attenuation.  APPLE-1003, ¶92.

36

Exhibit I
Page 617

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



APPLE-1014, FIG. 1 (left), APPLE-1006, FIG. 1(b) (right).

Consistent with Aizawa, Ohsaki, and Goldsmith's disclosures, a POSITA would have found it obvious to incorporate the Aizawa-Mendelson-2003-Ohsaki sensor into the rear side of Goldsmith's watch device, such that the included emitter and detectors face the user's skin.  APPLE-1003, ¶93; APPLE-1006, [0023]-[0027], FIGS. 1(a), 1(b), 2; APPLE-1014, FIGS. 1, 2; APPLE-1027, [0087].  An exemplary implementation of the resulting physiological monitoring device is illustrated in the figure below.  Other components disclosed by Goldsmith such as the network interface, transceiver, and storage device, would have been located within the modified device's housing, *e.g.*, between the touch-screen display and the substrate supporting the detectors.  APPLE-1027, FIGS. 8, 10; APPLE-1003, ¶93.

Exhibit I
Page 618

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



APPLE-1027, FIG. 9B (modified according to APPLE-1006.

### 6.    Analysis

__Claim 1__

Exhibit I
Page 619

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

**[1pre]: A noninvasive physiological parameter measurement device adapted to be worn by a wearer, the noninvasive physiological parameter measurement device comprising:**

To the extent the preamble is limiting, the Aizawa-Mendelson-2003-Ohsaki-Goldsmith combination renders obvious [1pre].  APPLE-1003, ¶94.  For example, in the combination device as described above in Section III.A.5, Aizawa discloses a pulse sensor that is designed to "detect[] the pulse wave of a subject from light reflected from a red corpuscle in the artery of a wrist of the subject by irradiating the artery of the wrist[.]"  APPLE-1006, [0002].  As shown in Aizawa's FIG. 2 and Goldsmith's FIG. 9A, the Aizawa-Mendelson-2003-Ohsaki-Goldsmith would have been worn by a wearer.  APPLE-1003, ¶94.



APPLE-1006, FIG. 2 (left); APPLE-1027, FIG. 9A (right).

Exhibit I
Page 620

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

**[1a]: one or more light emitters;**

As described above in Section III.A.1, Aizawa's sensor device detects a user's pulse wave by using an emitter in the form of an LED 21 (shown in green below) to emit light that is picked up by photodetectors 22 (shown in red below) that are arranged around the LED.  APPLE-1006, [0023]; APPLE-1003, ¶95.





APPLE-1006, FIGS. 1(a)-1(b).

**[1b]: a substrate having a surface;**

Exhibit I
Page 621

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [1b].  APPLE-1003, ¶96.  For example, Aizawa provides a substrate having a surface (brown) on which the detectors/photodiodes are arranged:



APPLE-1006, FIG. 1(b); APPLE-1003, ¶96.

### [1c]: a first set of photodiodes arranged on the surface and spaced apart from each other, wherein:

As discussed above in Section III.A.5 and shown below, the Aizawa-Mendelson-2003-Ohsaki-Goldsmith device includes a first set of photodiodes (green ring) that are spaced apart from each other:

Exhibit I
Page 622

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



APPLE-1006, FIG. 1(a); APPLE-1003, ¶97.

Moreover, as discussed for [1b], Aizawa provides a substrate having a surface (brown) on which the photodiodes are arranged:



42

Exhibit I
Page 623

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

APPLE-1006, FIG. 1(b); APPLE-1003, ¶98.  Aizawa's photodiodes (shown in red above), which are connected to a drive circuit 24 on the other side of the first surface, are arranged on the first surface as would be understood by a POSITA.  APPLE-1003, ¶99.

**[1d]: the first set of photodiodes comprises at least four photodiodes, and**

As discussed above in Section III.A.5 and illustrated below, the first set of photodiodes in the Aizawa-Mendelson-2003-Ohsaki-Goldsmith combination includes at least four photodiodes:



APPLE-1006, FIG. 1(a); APPLE-1003, ¶100.

**[1e]: the photodiodes of the first set of photodiodes are connected to one another in parallel to provide a first signal stream responsive to light from at least one of the one or more light emitters attenuated by body tissue;**

Exhibit I
Page 624

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

As discussed above in Section III.A.5, Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious first and second sets of photodiodes.  As detailed below, POSITA would have recognized and/or found it obvious that the first set of photodiodes are connected to one another in parallel to provide a first signal stream in the manner claimed.  APPLE-1003, ¶¶101-106.

First, a POSITA would have recognized and/or found it obvious that an array of photodiodes, as found in the first set/ring of photodiodes in the modified Aizawa device, would be connected to one another in parallel to thereby form, essentially, a single continuous detector.  APPLE-1025, 4:23-30; APPLE-1003, ¶102.  Indeed, a POSITA would have known that connecting multiple photodiodes together in parallel allows the current generated by the multiple photodiodes in the first set/ring to be added to one another, thereby resulting in a larger total current akin to what would be generated from a single, large detector, which is what the ring of detectors in Aizawa is effectively mimicking.  APPLE-1003, ¶102.

Second, Mendelson-2003—whose sensitivity-enhancing photodiode arrangement configuration would have been obvious to incorporate into Aizawa—expressly teaches that the photodiodes in each of the two sets (*i.e.*, rings) of photodiodes are connected to one another in parallel, thereby providing a distinct signal stream for each set/ring.  In particular, Mendelson-2003 teaches that ***"[e]ach cluster of six PDs were wired in parallel*** and connected through a central hub to the

Exhibit I
Page 625

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

common summing input of a current-to-voltage converter." APPLE-1024, 3017. Thus, as described above in Section III.A.5, a POSITA seeking to add a second ring of photodiodes to Aizawa would have looked to Mendelson-2003's teachings concerning how the two rings of photodiodes in the modified Aizawa device should be wired. APPLE-1003, ¶103. A POSITA would have found, in view of Mendelson-2003's express teachings, wiring two rings of photodiodes such that each ring/set of detectors "were wired in parallel" to be a routine and conventional design choice. *Id.* Indeed, connecting photodiodes in a first set of photodiodes to one another in parallel to provide a first signal stream, as evidenced by Mendelson-2003, was common practice well before the Critical Date, and there was nothing new or inventive about changing the way such photodiodes are connected. AP-PLE-1003, ¶103 (citing to APPLE-1025, 4:23-30).

Moreover, a POSITA would have recognized that there can be multiple benefits to separately transmitting signals streams from the near and far detectors—as opposed to combining all the signals from the detectors into a single stream. For example, Mendelson '799 teaches that the detected values from each of its near and far detector arrays can be monitored such that "if both of them are not in the mentioned range, a corresponding alarm is generated indicative of that the sensor position should be adjusted." APPLE-1025, 13:19-30, FIG. 10A. In other words, monitoring each signal stream (from each ring of detectors) separately allows the

45

Exhibit I
Page 626

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

system to determine when the sensor device is so severely located that its position should be adjusted. *Id.*, APPLE-1003, ¶104. Mendelson '799 also teaches that its detector configuration can help detect "movement/breathing artifacts" and subsequently generate "a corresponding alarm signal." *Id.,* 13:31-42; APPLE-1003, ¶104. Having two separate signal streams can also offer various advantages during research, testing, and/or calibration, where the ability to monitor each stream separately can be beneficial. APPLE-1003, ¶104.

Additionally, a POSITA would have known that "[t]he intensity of the backscattered light decreases in direct proportion to the square of the distance between the photodetector and the LEDs." APPLE-1015, 168. In other words, a POSITA would have recognized that the photodiodes in the far ring (*i.e.,* second set of photodiodes) would receive reflected light having a lower intensity than that received by the photodiodes in the near ring (*i.e.*, first set of photodiodes) and would have been motivated and found it obvious to account for this discrepancy. APPLE-1003, ¶105. Indeed, as shown in the plot below, "the light intensity detected by the photodiode decreases roughly exponentially as the radial distance from the LED's is increased." APPLE-1017, 801. This is because "the probability that the incident photons will be absorbed as they traverse a relatively longer path length before reaching the detector is increased." *Id.*

Exhibit I
Page 627

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



Fig. 4. The effect of LED/photodiode separation on the dc (□) and ac (○)
components of the reflected infrared photoplethysmograms. Measure-
ments were performed at a skin temperature of 43°C.

APPLE-1017, FIG. 4.

In Aizawa, a "drive detection circuit 24" is used for "amplifying the outputs
of the photodetectors" and transmitting the amplified data to the arithmetic circuit
3, which computes the pulse rate.  APPLE-1006, [0023], [0028]; APPLE-1003,
¶106.  In the modified Aizawa-Mendelson-2003 system, a POSITA would have
recognized that the inner ring is likely to produce far greater currents compared to
the outer ring due to the above-noted exponential relationship between detected
light intensity and distance from the LED.  APPLE-1017, 801; APPLE-1003, ¶106.
To ensure that the pulse rate data provided by the outer ring is preserved when
combined with the pulse rate data provided by the inner ring, a POSITA would
have found it obvious, in some implementations, to keep each ring separately
wired and connected to its own amplifier (*i.e.*, drive detection circuit 24) to thereby

47

Exhibit I
Page 628

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

keep the magnitude of the current signals provided by each ring approximately the
same before being combined and transmitted to the arithmetic circuit 3.  APPLE-
1003, ¶106.  Otherwise, if all the photodiodes in both the first and second rings in
the modified Aizawa's sensor device are connected together in parallel such that a
single stream is output (from both rings) to a single amplifier, signals detected by
the near/first sets of detectors may drown out the weaker signals coming from the
far/second sets of detectors, thereby diminishing the enhanced sensitivity and col-
lection efficiency achieved through the widened detection area.  APPLE-1003,
¶106.

**[1f]: a second set of photodiodes arranged on the surface and spaced apart
from each other, wherein:**

As discussed above in Section III.A.5 and shown below, the Aizawa-Mendel-
son-2003-Ohsaki-Goldsmith device includes a second set of photodiodes (red
ring):

Exhibit I
Page 629

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



APPLE-1006, FIG. 1(a); APPLE-1003, ¶107.

As discussed above for element [1c], the photodiodes in the combination are arranged on the surface and spaced apart from each other:



APPLE-1006, FIG. 1(b); APPLE-1003, ¶108.

**[1g]: the second set of photodiodes comprises at least four photodiodes,**

49

Exhibit I
Page 630

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

As discussed above in Section III.A.5 and illustrated below, the second set of photodiodes in the Aizawa-Mendelson-2003-Ohsaki-Goldsmith combination includes at least four photodiodes:



APPLE-1006, FIG. 1(a); APPLE-1003, ¶109.

**[1h]: the photodiodes of the second set of photodiodes are connected to one another in parallel to provide a second signal stream responsive to light from at least one of the one or more light emitters attenuated by body tissue, and**

*See supra* Section III.A.5 and [1e].  In particular, the second set of photodiodes in Aizawa-Mendelson-2003-Ohsaki-Goldsmith are connected to one another in parallel to provide a second signal stream for the same reason as described above for element [1e] with respect to the first set of photodiodes.  APPLE-1003, ¶110.

50

Exhibit I
Page 631

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

**[1i]: at least one of the first signal stream or the second signal stream includes information usable to determine a physiological parameter of a wearer of the noninvasive physiological parameter measurement device**

*See supra* Sections III.A.1, III.A.5, [1e].  In particular, Aizawa teaches that a "drive detection circuit 24" is used for "amplifying the outputs [*i.e.*, signal stream] of the photodetectors" and transmitting the amplified data to the arithmetic circuit 3, which computes the pulse rate, which is a physiological parameter.  APPLE-1006, [0023], [0028]; APPLE-1003, ¶111.

**[1j]: a wall extending from the surface and configured to surround at least the first and second sets of photodiodes; and**

As shown below, Aizawa discloses a "a holder 23 for storing the above light emitting diode 21 and the photodetectors 22."  APPLE-1006, [0023], [0024].  The outer periphery of Aizawa's holder 23 provides a circular wall (purple) that surrounds at least the first and second sets of photodiodes:

Exhibit I
Page 632

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



APPLE-1006, FIG. 1(a); APPLE-1003, ¶112.

Referring further to annotated FIG. 1(b) of Aizawa below, the identified wall (purple) extends from the surface of the substrate (brown).



APPLE-1006, FIG. 1(b); APPLE-1003, ¶113.

**[1k]: a cover arranged to cover at least a portion of the surface of the substrate, wherein the cover comprises a protrusion that extends over all of the**

Exhibit I
Page 633

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

**photodiodes of the first and second sets of photodiodes arranged on the surface, and wherein the cover is further configured to cover the wall**

As discussed in Section III.A.5 and illustrated below, Aizawa-Mendelson-2003-Ohsaki-Goldsmith would have included a cover comprising a protrusion in the form of a convex surface that covers at least a portion of the surface of the substrate (shown in brown).  APPLE-1006, FIG. 1(b), [0023];  APPLE-1014, Abstract, [0015], [0017], [0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶¶114-115.



APPLE-1006, modified FIG. 1(b).  Moreover, as seen above, protruded surface of the cover would extend over all of the photodiodes of the first and second sets of photodiodes arranged on the surface, and the cover further covers the wall (shown in purple).  APPLE-1003, ¶¶114-115.

Exhibit I
Page 634

## Claim 2

**[2pre]: The noninvasive physiological parameter measurement device of claim 1 further comprising preprocessing electronics including at least:**

> *See* Claim 1, *supra*.  APPLE-1003, ¶116.

**[2a]: first preprocessing electronics configured to preprocess the first signal stream; and**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [2a].  APPLE-1003, ¶¶117-121.  As an initial matter, Aizawa teaches, for the single set/ring of photodetectors it expressly discloses, a "drive detection circuit 24" that is used for "amplifying the outputs of the photodetectors."  APPLE-1006, [0023], [0028]; AP-PLE-1003, ¶117.  Thus, it would have been routine and conventional design choice for a POSITA to, for the case of *two* sets/rings of photodetectors as in Aizawa-Mendelson-2003-Ohsaki-Goldsmith, simply double up Aizawa's single ring setup and add a second amplifier (*i.e.*, drive detection circuit 24) to accompany the added second ring.  APPLE-1003, ¶117.  Here, the amplifier (sometimes called a pre-amplifier) that is provided for each ring would provide the preprocessing electronics configured to preprocess the respective signal streams.  *Id.*

Alternatively, Mendelson-2003 provides a blueprint for how to implement the two signal streams (and corresponding amplifiers) in the Aizawa-Mendelson-2003-Ohsaki-Goldsmith combination.  As noted above, Mendelson-2003 teaches that **"[e]ach cluster of six PDs were wired in parallel** and connected through a

54

Exhibit I
Page 635

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

central hub *to the common summing input of a current-to-voltage converter*."

APPLE-1024, 3017.  A POSITA would have understood such a current-to-voltage

converter as being typically implemented by a summing transimpedance amplifier

that sums the signals, converts the result to a voltage, and amplifies the voltage in

the analog domain.  APPLE-1003, ¶118.  Indeed, the use of summing and transim-

pedance amplifiers in this manner to sum and convert current streams is frequently

shown in literature, as illustrated below:



APPLE-1042, FIG. 5, 5:39-54; APPLE-1003, ¶118.

While the arrangement above does not show a common amplifier (*e.g.,* tran-

simpedance amplifier) for each signal stream, a POSITA would have understood

that there are many different ways of implementing a transimpedance amplifier.

Exhibit I
Page 636

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

APPLE-1003, ¶119.  For example, a POSITA would have recognized that the same effect could be achieved by *first* passing each current stream through individual transimpedance amplifiers *and then* summing the signals using a summing amplifier, as shown below:



APPLE-1042, FIG. 4, 5:20-38, 55-67; APPLE-1003, ¶119.

Thus, a POSITA would have found it obvious to implement the two rings of photodiodes in Aizawa-Mendelson-2003-Ohsaki-Goldsmith such that "[e]ach cluster of six PDs [are] wired in parallel and connected through a central hub to the common summing input of a current-to-voltage converter."  APPLE-1024, 3017.

Exhibit I
Page 637

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

Further, a POSITA would have found it obvious to achieve the "common summing input of a current-to-voltage converter" by providing an amplifier for each signal stream such that the first signal stream is received at an input of the first common amplifier that amplifies the first signal stream.  APPLE-1042, FIG. 4, 5:20-38, 55-67; APPLE-1003, ¶120.

Additionally, as Dr. Kenny explains, a POSITA would have recognized that Mendelson-2003 contemplates analog summation of the signal streams from the two rings and, based on the teachings of Kosuda, that the summation could instead be performed in the digital domain.  APPLE-1003, ¶121.  In particular, as shown in FIG. 34 of Kosuda, two current signals from two distinct photodetectors could be received at a transimpedance differential amplifier shown in FIG. 35 of Kosuda.  APPLE-1010, FIGS. 34-35, 24:32-25:15.  The amplifier shown in FIG. 35 is simply a specially configured operational amplifier that receives current signals and, in the analog domain, generates an amplified output voltage that represents the difference between the two signals.  APPLE-1010, FIG. 35, 25:1-3.  A POSITA would have recognized that Mendelson-2003's circuit could be similarly implemented with the current signal stream from each of the two rings being received by a transimpedance summing amplifier, which is a known alternative circuit to a transimpedance differential amplifier that instead generates and amplifies the sum, rather than the difference, of received currents as an output voltage stream

57

Exhibit I
Page 638

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

in the analog domain.  Indeed, such a circuit would be very similar to Kosuda's FIGS. 34 and 35 circuit, with the only difference being that the operator 340 of FIG. 34 would be a summing operator and the operational amplifier of FIG. 35 would be configured as a summing amplifier, rather than a differential amplifier. Importantly, Kosuda expressly recognizes a distinct, alternative configuration that instead determines the difference between the two current signals in the digital domain in which "an amplifier [is] provided after each photodiode 32 and 33 to amplify the output signals from the photodiodes 32 and 33, after which the amplified output signals are passed through an AD converter and converted to digital signals, the difference between which is then calculated by a CPU or other digital signal processing circuit."  APPLE-1010, 25:4-15.  A POSITA would have recognized that a similar alternative circuit arrangement could be used in the Aizawa-Mendelson-2003-Ohsaki-Goldsmith device by having the current stream received from each ring be summed in the digital domain, by having each ring's signal path have its own amplifier and AD converter, with the summation then being calculated by a digital signal processing circuit as taught by Kosuda.  A POSITA would have further recognized that this alternative digital summation circuit configuration may be preferable, in some implementations, to Mendelson-2003's analog summation circuit configuration because: (1) it allows the content of the current streams, including the much smaller current of the outer ring, to be preserved in digital form,

58

Exhibit I
Page 639

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

which is less affected by noise and interference; and (2) it increases the accuracy of the summation of the much smaller current signal of the outer ring with the much larger current of the inner ring by performing the summation in the digital domain. APPLE-1003, ¶121.

**[2b]: second preprocessing electronics configured to preprocess the second signal stream.**

*See supra* [2a]; APPLE-1003, ¶122. In particular, second preprocessing electronics configured to preprocess the second signal stream are provided by Aizawa-Mendelson-2003-Ohsaki-Goldsmith for the same reason as described above for element [2a] with respect to the first preprocessing electronics. APPLE-1003, ¶122.

## Claim 3

**[3pre]: The noninvasive physiological parameter measurement device of claim 2, wherein:**

*See* Claim 2, *supra*. APPLE-1003, ¶123.

**[3a]: the first preprocessing electronics comprise at least a first amplifier configured to receive the first signal stream and at least amplify the first signal stream, and**

*See* element [2a], *supra*. APPLE-1003, ¶124.

**[3a]: the second preprocessing electronics comprise at least a second amplifier configured to receive the second signal stream and at least amplify the second signal stream.**

*See* elements [2a], [2b], *supra*. APPLE-1003, ¶125.

Exhibit I
Page 640

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

## Claim 4

**[4]: The noninvasive physiological parameter measurement device of claim 3, wherein the preprocessing further comprises converting at least one of the first signal stream or the second signal stream from analog to digital.**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [4]. *See supra*

[2a]; APPLE-1003, ¶126. In particular, Aizawa teaches transmitting the amplified

output from its drive detection circuit 24 to an arithmetic circuit 3, where "the am-

plified output is converted into a digital signal." APPLE-1006, [0028]; APPLE-

1003, ¶126.

## Claim 5

**[5]: The noninvasive physiological parameter measurement device of claim 3, wherein the protrusion comprises a convex protrusion, and wherein at least a portion the cover is comprised of a sufficiently rigid material to cause tissue of the wearer to conform to at least a portion of a shape of the cover.**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [5]. *See supra*

Section III.A.5 and [1k]; APPLE-1003, ¶¶127-130. As explained above in Section

III.A.5 and illustrated below, the combination of Aizawa and Ohsaki provides a

sensor plate 6 with a convex surface (similar to Ohsaki's translucent board 8) to re-

alize improved adhesion between the user's wrist and the sensor's surface, improve

detection efficiency, and protect the elements within the sensor housing. APPLE-

1003, ¶127; APPLE-1014, [0009]-[0010].

60

Exhibit I
Page 641

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

## F I G. 1 (b)



APPLE-1006, FIG. 1(b) (annotated)

In the combination, the cover with a convex surface (outlined in blue in FIG. 1(b) above) is located between the user tissue and the holder 23 (and "above" the wall provided by the holder) when the sensor is worn by the user.  APPLE-1006, [0023]; APPLE-1003, ¶128.  Moreover, the surface of the user tissue conforms to the single protruding convex surface when the sensor is worn by the user.  APPLE-1003, ¶128.

Moreover, as illustrated in Ohsaki's FIG. 2, Ohsaki discloses that "the convex surface of the translucent board 8 is in intimate contact with the surface of the user's skin," and that slippage of the detecting element "off the detecting position of the user's wrist" is thereby prevented.  APPLE-1014, [0025], FIGS. 1, 2.  A

61

Exhibit I
Page 642

POSITA would have understood that the resulting skin deformation, as shown below, was due to the rigidity of the convex surface.  APPLE-1003, ¶129.



APPLE-1014, FIG. 2 (annotated).

From this and related disclosure, a POSITA would have understood and would have been motivated to implement a translucent board 8 where at least a portion of the protruding convex surface is rigid.  APPLE-1003, ¶130.  Indeed, the light permeable cover of Aizawa is made of transparent acrylic, which is a well-

Exhibit I
Page 643

known rigid material, and would be sufficiently rigid so as to deform the tissue in
the manner described above.  APPLE-1006, [0023], [0026], [0030], [0034]; AP-
PLE-1003, ¶130 (citing to APPLE-1018 ("Acrylic is a transparent plastic material
with outstanding strength, stiffness, and optical clarity.")).


## Claim 6

**[6]: The noninvasive physiological parameter measurement device of claim 5,
wherein the physiological parameter comprises at least one of: pulse rate, glu-
cose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxy-
hemoglobin, or carbon monoxide.**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [6].  APPLE-
1003, ¶131.  In particular, Aizawa discloses measuring pulse rate.  APPLE-1006,
Abstract, [0002], [0008], [0023]-[0036].


## Claim 7

**[7]: The noninvasive physiological parameter measurement device of claim 6,
wherein at least part of the cover is light permeable.**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [7].  APPLE-
1003, ¶133.  In particular, as illustrated below, a POSITA would have understood
that Ohsaki's translucent member/board 8 as well as the protruding convex surface
in the modified Aizawa system would have been light permeable to allow light re-
flected from the user tissue to pass through and reach at least one of the at least

Exhibit I
Page 644

four detectors.  APPLE-1006, [0023]; APPLE-1014, [0009], [0015], [0017],

[0025], FIGS. 1, 2, 4A, 4B; APPLE-1003, ¶133.



APPLE-1006, FIG. 1(b) (modified).

Exhibit I
Page 645

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



APPLE-1014, FIG. 2.

## Claim 8

**[8pre]: The noninvasive physiological parameter measurement device of claim 6 further comprising:**

*See* Claim 6, *supra*.  APPLE-1003, ¶134.

**[8a]: one or more openings that allow light to pass through to the photodiodes of the first and second sets of photodiodes.**

As discussed above in Section III.A.5, Aizawa teaches openings (or windows) in the form of tapered cavities that provide an opening for each of the detectors (*e.g.*, each of the photodiodes of the first set of photodiodes) and that serve to

65

Exhibit I
Page 646

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

increase, for instance, the concentration of light collected by the detectors, thereby increasing the signal to noise ratio.  APPLE-1006, [0024], [0012]; APPLE-1003, ¶¶135-136.



Exhibit I
Page 647

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



APPLE-1006, FIGS. 1(a) (top), 1(b) (bottom); APPLE-1003, ¶135.

In particular, Aizawa describes that such tapered openings "make[] it possible to expand the light emitting area and the light receiving area" such that "a pulse wave can be easily detected[.]"  APPLE-1006, [0012].  Thus, in order to enhance light collection efficiency, a POSITA would have provided the above-described window to each photodiode in modified Aizawa's first set of photodiodes.  APPLE-1003, ¶136.  Moreover, as indicated below, light passes through each corresponding window/opening to pass through to the photodiode.  *Id.*

Exhibit I
Page 648

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



APPLE-1006, FIG. 1(b); APPLE-1003, ¶136.

## Claim 9

**[9]: The noninvasive physiological parameter measurement device of claim 8, wherein the wall operably connects to the substrate on one side and operably connects to the cover on an opposite side.**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [9]. APPLE-1003, ¶¶137-138. In particular, as illustrated below, the wall (purple) operably connects to the substrate (brown) on the bottom side of the wall:

Exhibit I
Page 649

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



APPLE-1006, FIG. 1(b); APPLE-1003, ¶137.  Moreover, as illustrated below, the wall (purple) operably connects to the cover (blue) on the opposite/top side of the wall in the proposed Aizawa-Mendelson-2003-Ohsaki-Goldsmith combination:



APPLE-1006, FIG. 1(b); APPLE-1003, ¶138.

69

Exhibit I
Page 650

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

## Claim 10

**[10pre]: The noninvasive physiological parameter measurement device of claim 9 further comprising:**

*See* Claim 9, *supra*.  APPLE-1003, ¶139.


**[10a]: a touch-screen display;**

In the Aizawa-Mendelson-2003-Ohsaki-Goldsmith combination, Gold-

smith's wrist-watch controller device includes a display that "is a touchscreen dis-

play."  APPLE-1027, [0086].



APPLE-1027, FIG. 9A; APPLE-1003, ¶140.

Exhibit I
Page 651

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

**[10b]: a strap configured to facilitate attachment of at least part of the noninvasive physiological parameter measurement device to an arm of the wearer; and**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [10b].  APPLE-1003, ¶141.  For example, Goldsmith discloses a strap, and Aizawa-Mendelson-2003-Ohsaki-Goldsmith would have included such a strap.  APPLE-1003, ¶141; APPLE-1027, FIGS. 9A, 9B, [0086].  Moreover, Aizawa discloses a belt 7 attached to the outer casing to position the sensor to a user's arm or wrist.  APPLE-1006, [0023], [0026], FIGS. 1a, 1b, 2; APPLE-1003, ¶141.

**[10c]: one or more processors configured to:**

**[10d]: receive information responsive to at least one of the first signal stream or the second signal stream;**

**[10e]: process the information to determine physiological parameter measurement information; and**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [10c]-[10e].  APPLE-1003, ¶¶142-143.  For example, Goldsmith also discloses a processor that executes programs to control sensing devices, receives data indicative of a concentration of an analyte, and displays a representation of at least a portion of the information received from or displayed by other devices.  APPLE-1027, [0088], [0091], [0008], [0009], [0011], [0012], [0015], [0035]-[0037], [0040], [0043], [0048], [0051], [0059], claims 12, 13; FIGS. 1, 6A, 6B, 10; APPLE-1003, ¶142; *see supra*

71

Exhibit I
Page 652

Section III.A.4.  Recall that Goldsmith's device is "used with any number of ... diagnostic devices" and sensors to obtain physiological measurements such as user temperature, blood glucose level, oxygen level, and heart rate.  APPLE-1027, [0082]-[0084], [0095], [0037], [0038], claims 25, 26.

Accordingly, it would have been obvious to a POSITA to incorporate the Aizawa-Ohsaki sensor into Goldsmith's watch controller device such that Goldsmith's processor would have received signals from the detectors and would have processed the one or more signals to display the pulse rate.  APPLE-1003, ¶143.  The signals coming from Aizawa's sensor include, for example, "pulse wave data (waveform itself)" and thus correspond to at least a physiological parameter of the user.  APPLE-1006, [0035]; APPLE-1003, ¶143.

**[10f]: cause communication of the physiological parameter measurement information to a user interface displayed on the touch-screen display.**

*See supra* [10a], [10c]-[10e].  In particular, Goldsmith's wrist-watch controller device includes a display that "is a touchscreen display."  APPLE-1027, [0086].

72

Exhibit I
Page 653

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366



APPLE-1027, FIG. 9A; APPLE-1003, ¶144.  Moreover, as noted in Goldsmith, the user can zoom in or out of a graph, focus on a portion of a displayed graph, or con-firm/select when to receive and display data.  APPLE-1027, [0059], [0062].  A POSITA would have understood that a touch screen allows a user to provide direct navigation and accessibility through a physical touch.  APPLE-1003, ¶145; AP-PLE-1027, [0086], [0093].  Such touch-screen operation in Goldsmith would be enabled by its processor, which displays a representation of at least a portion of the information received from or displayed by other devices, such as Aizawa's pulse rate data.  APPLE-1006, [0035]; APPLE-1027, [0088], [0091], [0008], [0009], [0011], [0012], [0015], [0035]-[0037], [0040], [0043], [0048], [0051], [0059], claims 12, 13; FIGS. 1, 6A, 6B, 10; APPLE-1003, ¶145; *see supra* Section III.A.4.

Exhibit I
Page 654

## Claim 11

**[11]: The noninvasive physiological parameter measurement device of claim 10, wherein the attenuated light is reflected by the tissue.**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [11].  APPLE-1003, ¶146.  For example, the detectors of Aizawa detect light "reflected by a red corpuscle running through the artery 11 of the wrist 10...so as to detect a pulse wave."  APPLE-1006, [0027].  Thus, the detectors of Aizawa receive light that has been attenuated and reflected by tissue of the user.  APPLE-1003, ¶146.

## Claim 12

**[12pre]: The noninvasive physiological parameter measurement device of claim 11, wherein the one or more processors are further configured to:**

*See* Claim 11, *supra*.  APPLE-1003, ¶147.

**[12a]: cause transmission of the physiological parameter measurement information to at least one of: a mobile phone, or a computer network.**

Aizawa-Mendelson-2003-Ohsaki-Goldsmith renders obvious [12a].  APPLE-1003, ¶148.  In particular, Goldsmith discloses that transceiver 1018 or communications block 595 communicates with a mobile/cellular phone.  APPLE-1027, [0089], [0097], [0101], [0016]-[0018], [0047], [0050], [0068], [0069], claim 41; *see supra* Section III.A.4.  The transceiver receives data from characteristic deter-

Exhibit I
Page 655

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

mining devices (*e.g.*, sensors), and transmits data indicative of the determined concentration of an analyte, *e.g.*, heart rate, of the user to a cellular phone.  APPLE-1027, [0087]-[0089], [0094], [0097], [0034]-[0036], [0007].  APPLE-1003, ¶148.  Moreover, Goldsmith's transceiver 1018 or communications block 595 communicate with a remote station such as a computer or a cellular phone over various types of computer networks, *e.g.,* RF, IR, Bluetooth, or the Internet.  APPLE-1027, [0089], [0097], [0101], [0016]-[0018], [0047], [0050], [0068], [0069], claim 41.

## Claim 14

**[14pre]: A noninvasive physiological parameter measurement device comprising:**

> *See supra* [1pre].  APPLE-1003, ¶149.

**[14a]: one or more light emitters;**

> *See supra* [1a].  APPLE-1003, ¶150.

**[14b]: a first set of photodiodes, the first set of photodiodes comprising at least four photodiodes, the photodiodes of the first set of photodiodes connected to one another in parallel to provide a first signal stream responsive to light from at least one of the one or more light emitters attenuated by body tissue;**

> *See supra* [1c]-[1e].  APPLE-1003, ¶151.

**[14c]: a second set of photodiodes, the second set of photodiodes comprising at least four photodiodes, the photodiodes of the second set of photodiodes connected to one another in parallel to provide a second signal stream responsive to light from at least one of the one or more light emitters attenuated by body tissue;**

75

Exhibit I
Page 656

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

*See supra* [1f]-[1h].  APPLE-1003, ¶152.

**[14d]: a wall configured to surround at least the first and second sets of photo-diodes;**

*See supra* [1j].  APPLE-1003, ¶153.

**[14e]: a protrusion that extends over the wall and the photodiodes of the first and second sets of photodiodes; and**

*See supra* [1k].  APPLE-1003, ¶154.

**[14f]: one or more processors configured to:**

*See supra* [10c]-[10e], Section III.A.4.  APPLE-1003, ¶155.

**[14g]: receive information responsive to at least one of the first signal stream or the second signal stream; and**

*See supra* [10c]-[10e], Section III.A.4.  APPLE-1003, ¶156.

**[14h]: process the information to determine physiological parameter measurement information.**

*See supra* [10c]-[10e], Section III.A.4.  APPLE-1003, ¶157.

## Claim 15

**[15]: The noninvasive physiological parameter measurement device of claim 14, wherein the first and second sets of photodiodes are arranged on a substrate, and wherein the protrusion extends over at least a part of the substrate.**

*See supra* [1c], [1f], [1k], Section III.A.5.  APPLE-1003, ¶158.

## Claim 16

Exhibit I
Page 657

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

**[16pre]: The noninvasive physiological parameter measurement device of
claim 15 further comprising preprocessing electronics including at least:**

*See supra* Claim 15.  APPLE-1003, ¶159.

**[16a]: first preprocessing electronics configured to preprocess the first signal
stream; and**

*See supra* [2a].  APPLE-1003, ¶160.

**[16b]: second preprocessing electronics configured to preprocess the second
signal stream,**

*See supra* [2a]-[2b].  APPLE-1003, ¶161.

**[16c]: wherein the information responsive to the at least one of the first signal
stream or the second signal stream is received by the one or more processors
after preprocessing of the at least one of the first signal stream or the second
signal stream.**

*See supra* [1f]-[1h], [10c]-[10e].  APPLE-1003, ¶162.

## Claim 17

**[17pre]: The noninvasive physiological parameter measurement device of
claim 16, wherein:**

*See supra* Claim 16.  APPLE-1003, ¶163.

**[17a]: the first preprocessing electronics comprise at least a first amplifier
configured to receive the first signal stream and at least amplify the first sig-
nal stream, and**

*See supra* [2a], [3a].  APPLE-1003, ¶164.

Exhibit I
Page 658

**[17b]: the first preprocessing electronics comprise at least a first amplifier configured to receive the first signal stream and at least amplify the first signal stream, and**

*See supra* [2a]-[2b], [3a]-[3b].  APPLE-1003, ¶165.

## Claim 18

**[18]: The noninvasive physiological parameter measurement device of claim 17, wherein the preprocessing further comprises converting at least one of the first signal stream or the second signal stream from analog to digital.**

*See supra* [4].  APPLE-1003, ¶166.

## Claim 19

**[19]: The noninvasive physiological parameter measurement device of claim 17, wherein the protrusion comprises a convex protrusion, and wherein at least a portion the convex protrusion is comprised of a sufficiently rigid material to cause tissue of a wearer of the noninvasive physiological parameter measurement device to conform to at least a portion of a shape of the convex protrusion when the noninvasive physiological parameter measurement device is worn by the wearer.**

*See supra* [1k], [5].  APPLE-1003, ¶167.

## Claim 20

**[20]: The noninvasive physiological parameter measurement device of claim 19, wherein the physiological parameter comprises at least one of: pulse rate, glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, or carbon monoxide.**

*See supra* [6].  APPLE-1003, ¶168.

## Claim 21

**[21]: The noninvasive physiological parameter measurement device of claim 20, wherein at least part of the protrusion is light permeable.**

Exhibit I
Page 659

*See supra* [7].  APPLE-1003, ¶169.


## Claim 22

**[22pre]: The noninvasive physiological parameter measurement device of claim 20 further comprising:**

*See* Claim 20, *supra*.   APPLE-1003, ¶170.


**[22a]: one or more openings that allow light to pass through to the photodiodes of the first and second sets of photodiodes.**

*See supra* [8a].  APPLE-1003, ¶171.


## Claim 23

**[23pre]: The noninvasive physiological parameter measurement device of claim 22 further comprising:**

*See supra* Claim 22.  APPLE-1003, ¶172.

**[23a]: a strap configured to facilitate attachment of at least part of the noninvasive physiological parameter measurement device to an arm of the wearer; and**

*See supra* [10b].  APPLE-1003, ¶173.

**[23b]: a touch-screen display,**

*See supra* [10a], Section III.A.5.  APPLE-1003, ¶174.


**[23c]: wherein the one or more processors are further configured to cause communication of the physiological parameter measurement information to a user interface displayed on the touch-screen display.**

*See supra* [10f].  APPLE-1003, ¶175.

## Claim 24

Exhibit I
Page 660

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

**[24pre]: The noninvasive physiological parameter measurement device of claim 23, wherein the attenuated light is reflected by the tissue.**

*See supra* [11].  APPLE-1003, ¶176.

## Claim 25

**[25pre]: The noninvasive physiological parameter measurement device of claim 24, wherein the one or more processors are further configured to:**

*See supra* Claim 24.  APPLE-1003, ¶177.

**[25a]: cause transmission of the physiological parameter measurement information to at least one of: a mobile phone, or a computer network.**

*See supra* [12a].  APPLE-1003, ¶178.

## Claim 26

**[26pre]: A physiological measurement system comprising:**

*See* Sections III.A.1~5.  In particular, Goldsmith discloses that transceiver 1018 or communications block 595 communicates *with a mobile/cellular phone*. APPLE-1027, [0089], [0097], [0101], [0016]-[0018], [0047], [0050], [0068], [0069], claim 41.  Thus, the Aizawa-Mendelson-2003-Ohsaki-Goldsmith device, as described in Section III.A.5, in conjunction with the mobile/cellular phone with which such device is in communication as per Goldsmith, provides the claimed physiological measurement system.  *Id.*; APPLE-1003, ¶179.

**[26a]: a noninvasive physiological parameter measurement device according to claim 25; and**

*See supra* Claim 25.  APPLE-1003, ¶180.

Exhibit I
Page 661

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

**[26b]: a mobile phone configured to wirelessly communicate with the noninvasive physiological parameter measurement device.**

*See supra* [26pre].  In particular, the Aizawa-Mendelson-2003-Ohsaki-Goldsmith device, as described in Section III.A.5, is in communication with a mobile phone.  APPLE-1027, [0089], [0097], [0101], [0016]-[0018], [0047], [0050], [0068], [0069], claim 41.  APPLE-1003, ¶181.

## Claim 27

Claim 27 would have been obvious based on Aizawa, Mendelson-2003, Ohsaki, and Goldsmith in the same manner as explained above for the corresponding element listed in the following table (*see* APPLE-1003, ¶¶183-210):

| Claim Element | Corresponding Element |
|---|---|
| [27pre] A noninvasive physiological parameter measurement device adapted to be worn by a wearer, the noninvasive physiological parameter measurement device comprising: | [1pre] |
| [27a] one or more light emitters; | [1a] |
| [27b] a substrate having a surface; | [1b] |
| [27c] a first set of photodiodes arranged on the surface and spaced apart from each other, wherein: | [1c] |
| [27d] the first set of photodiodes comprises at least four photodiodes, and | [1d] |
| [27e] the photodiodes of the first set of photodiodes are connected to one another in parallel to provide a first signal stream responsive to light from at least one of the one or more | [1e] |

Exhibit I
Page 662

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

| **Claim Element** | **Corresponding Element** |
|---|---|
| light emitters attenuated by body tissue; | |
| [27f] a second set of photodiodes arranged on the surface and spaced apart from each other, wherein: | [1f] |
| [27g] the second set of photodiodes comprises at least four photodiodes, | [1g] |
| [27h] the photodiodes of the second set of photodiodes are connected to one another in parallel to provide a second signal stream responsive to light from at least one of the one or more light emitters attenuated by body tissue, | [1h] |
| [27i] at least one of the first signal stream or the second signal stream includes information usable to determine a physiological parameter of a wearer of the noninvasive physiological parameter measurement device, and | [1i] |
| [27j] the physiological parameter comprises at least one of: pulse rate, glucose, oxygen, oxygen saturation, methemoglobin, total hemoglobin, carboxyhemoglobin, or carbon monoxide; | [6] |
| [27k] first preprocessing electronics configured to preprocess the first signal stream, the first preprocessing electronics comprising at least a first amplifier configured to receive the first signal stream and at least amplify the first signal stream; | [2a], [3a] |
| [27l] second preprocessing electronics configured to preprocess the second signal stream, the second preprocessing electronics comprising at least a second amplifier configured to receive the second signal stream and at least amplify the second signal stream; | [2b], [3b] |

Exhibit I
Page 663

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

| **Claim Element** | **Corresponding Element** |
|---|---|
| [27m] a wall extending from the surface and configured to surround at least the first and second sets of photodiodes; | [1j] |
| [27n] a cover arranged to cover at least a portion of the surface of the substrate, wherein: | [1k] |
| [27o] the cover comprises a protrusion that extends over all of the photodiodes of the first and second sets of photodiodes arranged on the surface, | [1k] |
| [27p] the protrusion comprises a convex protrusion, | [1k], [5] |
| [27q] at least a portion the cover is comprised of a sufficiently rigid material to cause tissue of the wearer to conform to at least a portion of a shape of the cover, | [5] |
| [27r] the cover is further configured to cover the wall, and | [1k] |
| [27s] the wall operably connects to the substrate on one side and operably connects to the cover on an opposite side; | [9] |
| [27t] one or more openings that allow light to pass through to the photodiodes of the first and second sets of photodiodes; | [8a] |
| [27u] a touch-screen display; | [10a] |
| [27v] a strap configured to facilitate attachment of at least part of the noninvasive physiological parameter measurement device to an arm of the wearer; and | [10b] |
| [27w] one or more processors configured to: | [10c] |
| [27x] receive information responsive to at least one of the first signal stream or the second signal stream; | [10d] |

Exhibit I
Page 664

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

| Claim Element | Corresponding Element |
|---|---|
| [27y] process the information to determine physiological parameter measurement information; | [10e] |
| [27z] cause communication of the physiological parameter measurement information to a user interface displayed on the touch-screen display; and | [10f] |
| [27aa] cause transmission of the physiological parameter measurement information to at least one of: a mobile phone, or a computer network. | [12a] |

## B.    [GROUND 2] – Claim 13 is obvious over Aizawa, Mendelson-2003, Ohsaki, Goldsmith, and Sherman

### 1.  Overview of Sherman

Sherman discloses a magnetic fastening mechanism for "wrist instruments," such as wristwatches.  APPLE-1047, 1:4-10.  As shown in Sherman's FIGS. 2 and 5, the mechanism includes a pair of flexible strap ends having "permanently magnetizable material" of opposite polarities.  *Id.*, 2:43-62; FIGS. 2 and 5; APPLE-1003, ¶65.

84

Exhibit I
Page 665

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366





APPLE-1047, FIG. 2 (top) and FIG. 5 (bottom).

Exhibit I
Page 666

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

### 2. Combination of Aizawa-Mendelson-2003-Ohsaki-Goldsmith and Sherman

Goldsmith generally discloses the use of a fastener for carrying a measure-ment device on a user's body (e.g., wrist) but provides no details describing the fastener.  APPLE-1027, [0039].  Accordingly, to secure the Aizawa-Mendelson-2003-Ohsaki-Goldsmith device onto a user's wrist using Goldsmith's fastening mechanism, a POSITA would have been motivated to look to other wearable, wrist worn devices such as Sherman's, for details regarding a mechanism for fastening a monitoring device.  APPLE-1003, ¶¶211-214.

Sherman explains that wristwatches that are fastened, e.g., by a buckle or clasp, can be difficult to fasten and can be "unsightly or ha[ve] corners which catch upon sleeves or clothing" resulting in broken connectors or accidental snagging.  APPLE-1047, 1:11-24; APPLE-1003, ¶212.  Sherman explains that this problem could be solved with a magnetic connector providing an "improved flexible strap" that "eliminates buckles or other types of protruding members thereby permitting a thinner, more comfortable flexible strap attachment."  APPLE-1003, ¶212; AP-PLE-1047, 1:11-25, 2:1-62, FIGS. 1-11.  Sherman's strap ends "curve around the wrist of a wearer and [] overlap one another" such that the "magnetized particles provide a holding force resisting separation of the strap ends."  APPLE-1047, 2:43-62.

Exhibit I
Page 667

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

A POSITA would have looked to Sherman because it provided details of a wrist-worn device fastening mechanism that addresses the above-noted problems, is easy to engage, and improves user comfort. APPLE-1003, ¶212; APPLE-1047, 1:11-25, 2:9-11.

Combining the teachings of Aizawa-Mendelson-2003-Ohsaki-Goldsmith with Sherman would have amounted to nothing more than the use of a known technique to improve similar devices in the same way and combining prior art elements according to known methods to yield predictable results. *KSR*, 550 U.S. at 417; APPLE-1003, ¶214. The combination involves nothing more than applying a known technique to fasten two ends of a strap for attaching a wrist worn device to a user's arm. APPLE-1003, ¶214. Furthermore, the elements of the combined system would each perform similar functions they had been known to perform prior to the combination. *Id.* Indeed, a POSITA would have readily understood how to implement magnetic strap ends for a "wrist instrument" having an attachment strap. APPLE-1047, 1:5-11; APPLE-1003, ¶214.

### 3. Analysis

**[13pre]: The noninvasive physiological parameter measurement device of claim 12 further comprising:**

*See supra* Ground 1, Claim 12. APPLE-1003, ¶215.

**[13a]: a magnet configured to be used as a connecting mechanism.**

Exhibit I
Page 668

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

Sherman discloses a magnetic connector for straps of a wristwatch where "both strap ends 6 and 7 have embedded therein permanently magnetizable particles of high magnetic remanance" such that "a holding force is developed between strap ends 6, 7 when placed in any of the various longitudinal positions provided by the interlocking teeth or ridges."  APPLE-1047, 4:13-35.  For at least the reasons noted above in Section III.B.2, it would have been obvious for a POSITA to use Sherman's magnetic connector as a connecting mechanism in the modified Aizawa-Mendelson-2003-Ohsaki-Goldsmith device.  APPLE-1047, 1:11-24, 2:1-11, 2:43-62, 4:13-35, FIGS. 1-5;APPLE-1003, ¶216.

## IV.    PTAB DISCRETION SHOULD NOT PRECLUDE INSTITUTION

The *NHK-Fintiv* rule should not be applied because it violates the AIA, which allows IPR to proceed in tandem with infringement litigation so long as the petition is filed within one year of service of a complaint of infringement.  See 35 U.S.C. § 315(b).  The rule also is arbitrary and capricious because its vague factors lead to speculative, unpredictable, and unfair outcomes.  Further, the rule is procedurally invalid because it was not adopted through notice-and-comment rulemaking.

However, consistent with Congressional intent and goals of *NHK-Fintiv*, Apple asks the Board alone to consider challenges raised in this Petition.  *Apple*

Exhibit I
Page 669

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

*Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11, 6 (PTAB 2020).

Unlike *NHK*, there is no basis for denial of this Petition under § 325(d), which would only be appropriate if the same or substantially the same art or arguments were previously presented to the Office. *Advanced Bionics LLC v. MED-EL Elektromedizinische Gerate GmbH*, IPR2019-01469 Pap. 6, 8-10 (PTAB Feb. 13, 2020)(precedential). The Petition's arguments are premised on combinations of references that were never presented to the Office with respect to the '564 patent. Aizawa does appear as one among hundreds of listed references, but there is no indication that it was considered by the examiner. *See, generally,* APPLE-1002.

Moreover, and as explained below, *Fintiv* favors institution.

## A.     Factor 1: Institution Will Increase Likelihood of Stay

Institution will enable the Board to resolve the issue of validity, and a finding of invalidity will relieve the Central District of California (the "District Court") of the need to continue litigation. Apple moved to stay the District Court case, and the opportunity for such simplification increases the likelihood that the court will grant a stay in view of IPR institution. *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case No. 2:16-cv-642-JRG, 2-3 (E.D. Tex. 2017); *NFC Techs. LLC v. HTC Am., Inc.*, Case No. 13-CV-1058, 2015 WL 1069111 (E.D. Tex. 2015).

## B.     Factor 2: District Court Schedule

Trial in the District Court case is scheduled for April 5, 2022. APPLE-1031,

Exhibit I
Page 670

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

1. Based on the 18-month IPR schedule, a Final Written Decision ("FWD") in an IPR arising from the present Petition would issue in early April of 2022, near the District Court trial date.

However, as in *NHK*, district court trial dates shift, even in normal times. *Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap. 22, 17 (PTAB 2019). The District Court is one of the country's busiest patent courts, and the trial date of a case in the District Court in which Patent Owner is a plaintiff and is before the same judge as the District Court case has recently been postponed by approximately ten months. APPLE-1036, 2. Scheduling issues cannot be ruled out, as experts have professed that additional COVID-19 outbreaks are likely to arise and California is facing new outbreaks. APPLE-1034, 1 ("Fauci says second wave of coronavirus is 'inevitable'"); APPLE-1035, 4 ("Los Angeles County is currently" at "275 [cases] per 100,000 [residents]," which is higher than the recommended level (100 per 100,000) for reopening). And, as the Board recently found when granting institution in *Juniper Networks, Inc. et al. v. Packet Intelligence LLC*, "it is more likely that the District Court will incur delays due to the COVID-19 pandemic than the Board." IPR2020-00388 Pap. 22 at 14 (Sept. 9, 2020)(district court trial scheduled to begin before statutory FWD date).

Exhibit I
Page 671

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

### C.     Factor 3: Apple's Investment in IPR Outweighs Forced Investment in Litigation to Date

District court proceedings are still at an early phase.  The parties have yet to

file claim construction briefs, no claim construction orders have issued, and the

*Markman* hearing is not scheduled until February 8, 2021.  APPLE-1031, 1.  In addition, discovery is not scheduled to close until July 5, 2021.  *Id*.

Apple's substantial investment in these IPR proceedings should counterbalance—if not outweigh—the resources invested in the co-pending litigation given

the speed with which Apple is filing IPR petitions on over two-hundred fifty

claims across thirteen patents.  It would be unjust to consider resources expended

in District Court (equally by both parties), without considering Apple resources expended to prepare seventeen IPR petitions that would be irretrievably lost without

consideration on the merits, in addition to the extensive expenses that may be foregone through institution of Apple's petitions and that will otherwise certainly follow in co-pending litigation for which significant milestones exist.

Moreover, Masimo did not assert the '366 patent against Apple until July 24,

2020, and Apple prepared and filed the instant petition challenging the '366 patent

within nine weeks of that date—months ahead of the statutory period provided by

Congress under § 315(b).  *See* APPLE-1037.  *Mylan Pharma. Inc. v. Sanofi-Aventis Deutschland GMBH*, IPR2018-01680, Pap. 22, 18 (PTAB Apr. 3,

Exhibit I
Page 672

2019)(finding that petition filed two months before bar date is "well within the timeframe allowed by statute, weighing heavily in [petitioner's] favor").

### D.    Factor 4: The Petition Raises Unique Issues

Apple has voluntarily stipulated to Patent Owner's counsel that, if the present Petition is instituted, Apple will not assert that the Challenged Claims are invalid on the pending Petition's asserted grounds in *Masimo Corporation et al. v. Apple Inc.*, Case No. 8:20-cv-00048 (C.D. Cal.). APPLE-1032, 1; *see*, *e.g.*, *Apple v. Seven* at 15-17 (finding that such a stipulation by a petitioner "mitigates, at least to some degree, the concerns of duplicative efforts between the district court and the Board, as well as concerns of potentially conflicting decisions").

In addition, the Petition addresses claims that will not be addressed in District Court.  Although Patent Owner has not yet narrowed the asserted claims, the District Court recently ordered the parties to submit a "Joint Claim Narrowing Proposal" by November 23, 2020.  *See* APPLE-1033, 1; APPLE-1040, 1-3.  Thus, based on this ordered reduction in the asserted claims, the District Court will necessarily address fewer claims than are challenged in this Petition (which challenges all claims of the patent), even assuming the District Court addresses validity at all, which is presently unknowable.  *See, e.g., Apple v. Seven* at 18.

In short, grounds in this Petition are unique, and will not be addressed in

92

Exhibit I
Page 673

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

District Court.  *See*, *e.g.*, *Apple v. Seven* at 15-20 (weighing this factor against exercising 314(a) discretion where a petitioner challenged several unasserted claims and stipulated that it would not pursue the IPR grounds in the co-pending litigation).

### E.  Factor 5: The Petition Enables the Board to Resolve Invalidity of Claims that Might Otherwise be Reasserted

Apple's Petition is potentially helpful to future defendants.  For at least this reason, Apple's status as Petitioner and defendant is, at worst, a neutral factor.  Taking the relevant circumstances into account, institution would serve overall efficiency and integrity, enabling the Board to determine invalidity of claims that Patent Owner might later assert against others.

### F.  Factor 6: Other Circumstances Support Institution

As *Fintiv* noted, "the factors...are part of a balanced assessment of all the relevant circumstances in the case," and, "if the merits of a ground raised in the petition seem particularly strong … the institution of a trial may serve the interest of overall system efficiency and integrity …."  *Fintiv*, 14-15.  As explained in the Petition, institution would result in invalidation of the Challenged Claims.

### V.  CONCLUSION

The cited prior art references identified in this Petition provide new, non-cumulative technological teachings which indicate a reasonable likelihood of success

Exhibit I
Page 674

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

as to Petitioner's assertion that the Challenged Claims of the '366 patent are not patentable pursuant to the grounds presented in this Petition.  Accordingly, Petitioner respectfully requests institution of an IPR for those claims of the '366 patent for each of the grounds presented herein.

## VI.    PAYMENT OF FEES – 37 C.F.R. § 42.103

Apple authorizes the Patent and Trademark Office to charge Deposit Account No. 06-1050 for the fee set in 37 C.F.R. § 42.15(a) for this Petition and further authorizes payment for any additional fees to be charged to this Deposit Account.

## VII.   MANDATORY NOTICES UNDER 37 C.F.R §42.8(a)(1)

### A.    Real Party-In-Interest Under 37 C.F.R. §42.8(b)(1)

Petitioner, Apple Inc. is the real party-in-interest.

### B.    Related Matters Under 37 C.F.R. §42.8(b)(2)

Patent Owner filed a second amended complaint on July 24, 2020 in the U.S. District Court for the Central District of California (CDCA) (Case No. 8:20-cv-00048) against Apple, in which Masimo alleged, for the first time, infringement of the '366 patent by Apple.  The initial complaint in the case, which did not allege infringement of the '366 patent, was served to Apple on January 13, 2020.

IPRs challenging claims of related U.S. Patents 10,702,194, 10,702,195,

94

Exhibit I
Page 675

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

10,624,564, and 10,631,765 are being filed concurrently or imminently.  No other

petitions for IPR of the '366 patent have been filed.  On August 31, 2020, Apple

filed petitions for IPR of related U.S. Patents 10,258,265 (IPR2020-01520),

10,588,553 (IPR2020-01536 and IPR2020-01537).  On September 2, 2020, Apple

filed petitions for IPR of related U.S. Patents 10,292,628 (IPR2020-01521) and

10,588,554 (IPR2020-01538 and IPR2020-01539).

### C.    Lead And Back-Up Counsel Under 37 C.F.R. §42.8(b)(3)

Apple provides the following designation of counsel.

| Lead Counsel | Backup counsel |
|---|---|
| W. Karl Renner, Reg. No. 41,265<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>Email: IPR50095-0027IP1@fr.com | Roberto J. Devoto, Reg. No. 55,108<br>Hyun Jin In, Reg. No. 70,014<br>Fish & Richardson P.C.<br>3200 RBC Plaza<br>60 South Sixth Street<br>Minneapolis, MN 55402<br>Tel: 202-783-5070<br>Fax: 877-769-7945<br>PTABInbound@fr.com |

### D.    Service Information

Please address all correspondence and service to the address listed above.

Petitioner consents to electronic service by email at IPR50095-0027IP1@fr.com

(referencing No. 50095-0027IP1 and cc'ing PTABInbound@fr.com, axf-

ptab@fr.com, devoto@fr.com and in@fr.com.

Respectfully submitted,

95

Exhibit I
Page 676

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

Dated  September 30, 2020          /W. Karl Renner/
                                   W. Karl Renner, Reg. No. 41,265
                                   Roberto J. Devoto, Reg. No. 55,108
                                   Hyun Jin In, Reg. No. 70,014
                                   Fish & Richardson P.C.
                                   3200 RBC Plaza, 60 South Sixth Street
                                   Minneapolis, MN 55402
                                   T: 202-783-5070
                                   F: 877-769-7945

(Control No. IPR2020-01737)        Attorneys for Petitioner

Exhibit I
Page 677

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

# CERTIFICATION UNDER 37 CFR §42.24

Under the provisions of 37 CFR §42.24(d), the undersigned hereby certifies

that the word count for the foregoing Petition for *Inter partes* Review totals 13,629

words, which is less than the 14,000 allowed under 37 CFR §42.24.


Dated  September 30, 2020          /W. Karl Renner/
                                   W. Karl Renner, Reg. No. 41,265
                                   Roberto J. Devoto, Reg. No. 55,108
                                   Hyun Jin In, Reg. No. 70,014
                                   Fish & Richardson P.C.
                                   3200 RBC Plaza, 60 South Sixth Street
                                   Minneapolis, MN 55402
                                   T: 202-783-5070
                                   F: 877-769-7945

                                   Attorneys for Petitioner

Exhibit I
Page 678

Attorney Docket No. 50095-0027IP1
IPR of U.S. Patent No. 10,709,366

# CERTIFICATE OF SERVICE

Pursuant to 37 CFR §§42.6(e)(4)(i) *et seq.* and 42.105(b), the undersigned

certifies that on September 30, 2020, a complete and entire copy of this Petition for

*Inter partes* Review and all supporting exhibits were provided via Federal Express,

to the Patent Owner by serving the correspondence address of record as follows:


KNOBBE, MARTENS, OLSON & BEAR, LLP
MASIMO CORPORATION (MASIMO)
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE CA 92614



_____/Edward G. Faeth/_____
Edward G. Faeth
Fish & Richardson P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
(202) 783-5070

Exhibit I
Page 679