**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendants. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS** <br><br> **Hearing:** <br> Date: October 19, 2020 <br> Time: 1:30 p.m. <br> Place: Courtroom 10C <br> Judge: Hon. James V. Selna |

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS
CASE NO. 8:20-CV-00048-JVS (JDEx)

1

# TABLE OF CONTENTS

2

Page

3   I. INTRODUCTION ..................................................................................................... 1

4   II. APPLE HAS DEMONSTRATED THAT A STAY IS WARRANTED ................... 2

5   A.   The Early Stages of the Patent Infringement Case Heavily Favor a
     Stay ................................................................................................................ 2

6
7   1.   The Patent Infringement Case Is Still In Its Infancy ........................ 2

8   2.   Plaintiffs Mischaracterize the Status of the Patent
         Infringement Case ............................................................................. 7

9   B.   Apple's IPR Petitions Will Resolve or Simplify the Issues for Trial ...... 10

10  1.   Apple's IPRs Challenge All Asserted Claims of All Asserted
         Patents .............................................................................................. 10

11
12  2.   Simplification of the Patent Infringement Case Is Very
         Likely ............................................................................................... 11

13  C.   A Stay Will Not Prejudice or Tactically Disadvantage Plaintiffs
     Because They Do Not Compete with Apple ................................................ 16

14
15  1.   The First Two Factors and the Totality of the Circumstances
         Outweigh Any Speculative Prejudice to Plaintiffs and Favor
         a Stay ............................................................................................... 16

16
17  2.   Plaintiffs' Assertion that the Apple Watch Competes with
         Their Products in a Properly Defined Market Is Wrong .............. 18

18  D.   The Court Could Alternatively Opt to Stay the Trade Secret Case ......... 23

19  E.   Ms. Lawton's Irrelevant and Prejudicial Testimony Should Be
     Stricken ....................................................................................................... 24

20
21  III. CONCLUSION .................................................................................................. 25

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aten Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*,
  No. CV 09-0943 AG, 2010 WL 1462110 (C.D. Cal. Apr. 12, 2010) .......................... 4

*Avago Techs. Fiber IP (Singapore Pte. Ltd.) v. IPtronics Inc.*,
  No. 10-CV-02863-EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011)............. 17, 18

*Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*,
  No. SACV131880JLSRNBX, 2014 WL 12854129
  (C.D. Cal. May 20, 2014) ..................................................................................... 24, 25

*Biomet Biologics, LLC v. Bio Rich Med., Inc.*,
  No. SACV 10-1582 DOC, 2011 WL 4448972
  (C.D. Cal. Sept. 26, 2011) ................................................................................. 9, 12, 17

*Cannarella v. Volvo Car USA LLC*,
  2016 WL 9450451, No. CV 16-6195-RSWL-JEMx
  (C.D. Cal. Dec. 12, 2016) ............................................................................................ 23

*Core Optical Techs., LLC v. Fujitsu Network Commc'ns, Inc.*,
  No. SACV1600437AGJPRX, 2016 WL 7507760
  (C.D. Cal. Sept. 12, 2016) ........................................................................... 4, 11, 16, 17

*Cypress Semiconductor Corp. v. LG Elecs., Inc.*,
  2014 WL 5477795 (N.D. Cal. Oct. 29, 2014) ........................................................... 8

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993).................................................................................................. 26

*Document Sec. Sys., Inc. v. Nichia Corp.*,
  No. CV1908172JVSJEMX, 2020 WL 4529613
  (C.D. Cal. June 15, 2020) ..................................................................................... 4, 11

*Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.*,
  No. SACV182043DOCADSX, 2020 WL 2084674
  (C.D. Cal. Jan. 13, 2020) .......................................................................................... 5

*Emblaze Ltd. v. Apple Inc.*,
  52 F. Supp. 3d 949 (N.D. Cal. 2014)........................................................................ 26

**TABLE OF AUTHORITIES (*continued*)**

Page(s)

*Finjan, Inc. v. ESET, LLC*,
No. 17-CV-00183-CAB-BGS, 2018 WL 2095734
(S.D. Cal. May 7, 2018)....................................................................................8

*Hologram USA, Inc v. Vntana, 3D, LLC*,
No. CV1409489BROAGR, 2015 WL 12791513
(C.D. Cal. Dec. 7, 2015) ................................................................................12

*Limestone v. Micron Tech.*,
No. CV 15-0278-DOC, 2016 WL 3598109 (C.D. Cal. Jan. 12, 2016)...............5, 11

*Lodge Mfg. Co. v. Gibson Overseas, Inc.*,
No. CV 18-8085 PSG, 2019 WL 9443180 (C.D. Cal. Sept. 24, 2019)........23, 24, 25

*Longitude Licensing Ltd. v. Apple Inc.*,
No. 14-CV-04275-EDL, 2015 WL 12778777 (N.D. Cal. Oct. 29, 2015) ........................................................................................................7

*Microsoft Corp. v. Licensing*,
No. IPR2015-00486, 2015 WL 4760578 (P.T.A.B. July 15, 2015)........................14

*Netlist, Inc. v. Smart Storage Sys., Inc.*,
No. 13-CV-5889-YGR, 2015 WL 1738192 (N.D. Cal. Apr. 9, 2015).......................7

*Otto Bock HealthCare LP v. Ossur*,
No. SACV1300891CJCANX, 2013 WL 12313020
(C.D. Cal. Dec. 16, 2013) ......................................................................6, 12, 17

*PersonalWeb Techs., LLC v. Apple Inc.*,
69 F. Supp. 3d 1022 (N.D. Cal. 2014).......................................................3

*Polaris PowerLED Techs., LLC v. LG Elecs., Inc.*,
No. 8:20-CV-00125-JVS, Dkt. No. 47 (C.D. Cal. Aug. 26, 2020) ....................4, 10

*Polaris PowerLED Techs., LLC v. TCL Corp.*,
No. 8:20-cv-00127-JVS-DFM, Dkt. 36 (C.D. Cal. July 24, 2020) ....................4, 11

*Purecircle USA Inc. v. SweeGen, Inc.*,
No. SACV181679JVSJDEX, 2019 WL 3220021
(C.D. Cal. June 3, 2019) .................................................................2, 4, 11, 14, 17

iii

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES (*continued*)**

Page(s)

*Select Comfort Corp., v. Tempur Sealy Int'l,*
  Inc., 2014 WL 12600114 (D. Minn. Oct. 10, 2014)................................................... 13

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.,*
  No. SACV 12-21-JST JPRX, 2012 WL 7170593
  (C.D. Cal. Dec. 19, 2012) ........................................................................................ 3, 4

*SoftView LLC v. Apple Inc.,*
  2012 WL 3061027 (D. Del. July 26, 2012) .................................................................. 7

*SpeakWare, Inc. v. Microsoft Corp.,*
  No. SACV181293DOCDFMX, 2019 WL 1878350
  (C.D. Cal. Feb. 21, 2019) ................................................................................ 5, 6, 12

*SZ DJI Tech. Co. v. Yuneec Int'l Co.,*
  No. CV 16-0595-BRO (KKX), 2016 WL 9114148
  (C.D. Cal. Dec. 1, 2016) .......................................................................................... 11

*TeleSign Corp. v. Twilio, Inc.,*
  No. CV 15-3240 PSG, 2016 WL 6821111 (C.D. Cal. Mar. 9, 2016) ...................... 17

*Tierravision, Inc. v. Google, Inc.,*
  No. 11-cv-2170 DMS (BGS), 2012 WL 559993
  (S.D. Cal. Feb. 21, 2012) ........................................................................................... 2

*Toshiba Tec Corp. v. Katun Corp.,*
  No. SACV1501979SJOJCX, 2016 WL 9137646
  (C.D. Cal. Sept. 21, 2016) ............................................................................ 11, 12, 17

*Trusted Knight Corp. v. Int'l Bus. Machs. Corp.,*
  No. 19-cv-01206-EMC, 2020 WL 5107611 (N.D. Cal. Aug. 31, 2020) ........... 16, 17

*Universal Elecs. Inc. v. Roku, Inc.,*
  No. SACV181580JVSADSX, 2019 WL 6974173
  (C.D. Cal. Nov. 4, 2019).............................................................. 5, 7, 8, 11, 16, 20, 21

*Universal Elecs., Inc. v. Universal Remote Control, Inc.,*
  943 F. Supp.2d 1028 (C.D. Cal. 2013) ..................................................................... 17

*Whalen Furniture Mfg., Inc. v. Z-Line Designs, Inc.,*
  No. 3:11-cv-02958-H-DHB, Slip. Op. (S.D. Cal. July 12, 2013) ............................ 18

iv

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT
CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS
CASE NO. 8:20-CV-00048-JVS (JDEX)

# TABLE OF AUTHORITIES (*continued*)

Page(s)

*Wonderland Nursery Goods Co. v. Baby Trend, Inc.*,
   2015 WL 1809309 (C.D. Cal. Apr. 20, 2015) .................................................... 13, 21

*Zomm, LLC v. Apple Inc.*,
   391 F. Supp. 3d 946 (N.D. Cal. 2019) ...................................................................... 14

**Statutes**

35 U.S.C. § 314(b) ............................................................................................................ 10

35 U.S.C. § 315(e)(2) ................................................................................................. 12, 13

35 U.S.C. § 316(a)(11) ...................................................................................................... 10

**Other Authorities**

*Facelake ® FL400 Pulse Oximeter*, Amazon.com,
   https://www.amazon.com/dp/B0117V8Q2O/ ............................................................. 23

*f͠enix® 6 - Pro Solar Edition*, Garmin, https://buy.garmin.com/en-
   US/US/p/702902 ........................................................................................................ 22

*How to use your Fitbit to monitor your blood oxygen levels*, The Verge,
   https://www.theverge.com/2020/1/29/21113434/fitbit-blood-oxygen-
   levels-monitor-sleep-data-how-to (Jan. 29, 2020) .................................................... 21

*Pulse Ox Frequently Asked Questions for Garmin Watches*, Garmin,
   https://support.garmin.com/en-
   US/?faq=SK2Y9a9aBp5D6n4sXmPBG7 .................................................................. 21

*SpO2 Signature Clock Face*, Fitbit,
   https://gallery.fitbit.com/details/fadb02f3-5d1b-4588-a05c-
   e6a9db74bf7a ............................................................................................................. 21

*V19 Fitness Activity Tracker & Health Smart Watch with Dual Heart Rate
   HRV Monitor Blood Pressure Oxygen SpO2*, Amazon.com,
   https://www.amazon.com/Activity-Pressure-Scientific-Waterproof-
   Exercise/dp/B086QPLY19 (last visited Oct. 1, 2020) .............................................. 22

**Regulations**

37 C.F.R. § 42.107(b) ........................................................................................................ 10

v

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT
CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS
CASE NO. 8:20-CV-00048-JVS (JDEx)

Gibson, Dunn &
Crutcher LLP

# I.   INTRODUCTION

Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. oppose Defendant Apple Inc.'s ("Apple") Motion to Stay by manufacturing a story of competition and prejudice that is simply unfounded and untrue.  Plaintiffs market "clinical grade" pulse oximetry devices (costing thousands of dollars in some cases) to hospitals and medical providers, while the Apple Watch is a *consumer* electronic product with hundreds of additional features unrelated to pulse oximetry, and which is expressly not intended for "clinical grade" use.  Even if, as Plaintiffs contend, the Apple Watch competes with Plaintiffs' medical-grade pulse oximeters, then so too do dozens of third party wrist-worn consumer wearables that have supported pulse oximetry and other physiological monitoring for years, belying Plaintiffs' concocted narrative that they are in a "race" with Apple for consumer-focused physiological monitors that Apple is somehow trying to win through this stay Motion.  If such a race existed, Plaintiffs would not have delayed for over two years after the launch of the accused Apple Watch Series 3 (September 22, 2017) before suing Apple on its allegedly infringing Apple Watch products.

Moreover, even if Apple and Plaintiffs were viewed as direct competitors—which they are not—any alleged prejudice to Plaintiffs from a stay is far outweighed by the other relevant factors, which all favor a stay:  the stage of the case, simplification of issues, and the totality of the circumstances.  Perhaps as a result, plaintiffs' Opposition, which focuses heavily on salacious allegations and unproven online rumors about Apple that are totally irrelevant to the propriety of a stay, is designed to be nothing more than a marketing tool[1] and an attempt to distract the Court from the fact that the applicable law overwhelmingly supports a stay of the patent case at this early stage.

After stripping away Plaintiffs' irrelevant arguments, the undisputed facts show that:  (i) this litigation is still in its very early stages and the vast majority of work for the parties and the Court still remains ahead; (ii) Apple has filed IPR petitions on ***all***

---

[1]  Plaintiffs marketing efforts caused a Bloomberg article describing their arguments to appear mere hours after Plaintiffs filed their Opposition.  It is attached hereto as Exhibit V to the Declaration of Brian K. Andrea ("Andrea Decl.").

Gibson, Dunn &
Crutcher LLP

asserted claims of *all* Asserted Patents, and the requested stay will therefore almost certainly simplify (if not eliminate) the patent infringement issues for trial; and (iii) whether or not the parties are competitors, Plaintiffs have not presented any valid basis for finding that the requested stay will prejudice Plaintiffs to any degree that might outweigh the benefits of a stay. The Court should reject Plaintiffs' attempts at misdirection toward its allegations about Apple's business practices, and stay at least the patent infringement action pending resolution of Apple's IPR petitions.

## II.  APPLE HAS DEMONSTRATED THAT A STAY IS WARRANTED

### A.  The Early Stages of the Patent Infringement Case Heavily Favor a Stay

Plaintiffs' argument that this case has advanced beyond its early stages relies on an inaccurate characterization of the status of the case and a mistaken view of the law. Plaintiffs focus on the number of docket entries and motions filed (many of which were caused by Plaintiffs' adding and dropping of asserted patents and continued refusal to describe their alleged trade secrets, ███████████████████████████████████ ███████████████████████████████████████), but completely ignore the extensive amount of work that remains to be completed by the parties and the Court between now and trial. As this Court has explained, the stage of litigation factor weighs in favor of a stay "where 'there is more work ahead of the parties and the Court than behind.'" *Purecircle USA Inc. v. SweeGen, Inc.*, No. SACV181679JVSJDEX, 2019 WL 3220021, at *2 (C.D. Cal. June 3, 2019) (quoting *Tierravision, Inc. v. Google, Inc.*, No. 11-cv-2170 DMS (BGS), 2012 WL 559993, at *2 (S.D. Cal. Feb. 21, 2012)).

### 1.  The Patent Infringement Case Is Still In Its Infancy

The vast majority of litigation milestones in this case lie ahead: (i) trial is set for April 2022, a year and a half away; (ii) fact discovery has barely begun and is not set to close for another 9 months; (iii) the parties have not even negotiated ESI terms or custodians; (iv) no fact depositions have been noticed or taken; (v) expert discovery— reports or depositions—is still a year away; (vi) dispositive motions are nowhere close;

(vii) the exchange of the parties' infringement and invalidity contentions will not be complete for over a month; (viii) claim construction has not commenced; and (ix) the *Markman* hearing is still seven months away.  ECF 37 at 1; ECF 33 at 24 (Exhibit A); ECF 96; ECF 205; Opening Br. at 2–5; Andrea Decl. ¶¶ 6–8, 10.  Moreover, the pleadings are not even closed, ███████████████████████████████████████ ████████████████████.  The amount of work ahead for the parties and the Court is many times over that which has already taken place.

Plaintiffs' argument that discovery is advanced because "the parties have produced approximately 150,000 pages of discovery and spent 40-45 hours inspecting each other's source code" (Opp. at 20) completely ignores the complexity of this twelve-patent infringement case that Plaintiffs chose to bring against Apple, and the resultant massive amount of discovery that a case of this size necessitates.  *See PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1026–27 (N.D. Cal. 2014) (stage of litigation factor favored a stay where "the parties have exchanged over 100 requests for production" and "over 50 interrogatories," have "produced over 500,000 pages," and "have taken a dozen depositions" because "while much has been done, much remains, and the remaining work is costly"); *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. SACV 12-21-JST JPRX, 2012 WL 7170593, at *2 (C.D. Cal. Dec. 19, 2012) (holding that the stage of litigation "factor weighs in favor of a stay, because considering the general time line of patent litigation, there is more work ahead of the parties and the Court").  Plaintiffs have asserted 245 claims across twelve patents, accusing of infringement both hardware and software components of the Apple Watch.  Plaintiffs also have yet again expanded the accused products in this case.[2]  *See* Andrea Decl. ¶ 11 & Ex. C, at 19–20.  The parties have neither noticed nor taken a single deposition, and there will be many, including the 10 named inventors.  *See* Andrea Decl. Ex. A, at 9–11

---

[2]  Plaintiffs accused the Apple Watch Series 3 for the first time just two months ago in the Second Amended Complaint ("SAC") (*see, e.g.*, ECF 89-1 ¶ 200), and accused two new products—the Apple Watch Series 6 and the Apple Watch SE—only a few days ago (Andrea Decl. Ex. C, at 19–20).

3

Gibson, Dunn & Crutcher LLP

(Plaintiffs identifying at least 29 persons with discoverable information). The complexity of the technology at issue, the number of asserted patents, and the range of accused products requires substantial discovery that will vastly eclipse the minimal basic discovery provided to date.

While focusing on document production (which itself is in the early stages), Plaintiffs also fail to address the plethora of other milestones in this patent infringement case described above that are still ahead of the parties and the Court. Out of the thirty scheduled events listed in the parties' Joint Rule 26(f) report, only *two* (exchange of the parties' Initial Disclosures and Apple's core technical production) have been completed. ECF 33 at 23–26 (Exhibit A). Moreover, just two weeks ago, the Court extended all of the patent-related deadlines, by agreement of the parties. *See* ECF 205. Thus, a stay here is warranted because a tremendous amount of work still remains for the parties and the Court on the patent infringement case, and a stay would save the parties and this Court significant resources that can be focused on Plaintiffs' trade secret case if it proceeds. *See Purecircle*, 2019 WL 3220021, at *2.

As Apple explained in its opening brief, the posture of this case is similar to—or even earlier than—many other cases in which this Court and other courts in this District have granted stays. *See* Opening Br. at 8–10 (citing Minute Order Regarding Motion to Stay at 3, *Polaris PowerLED Techs., LLC v. LG Elecs., Inc.*, No. 8:20-CV-00125-JVS (DFMx), Dkt. No. 47 (C. D. Cal. Aug. 26, 2020) ("*LG Elecs. Order*"); Order Regarding Motion to Stay at 3, *Polaris PowerLED Techs., LLC v. TCL Corp.*, No. 8:20-cv-00127-JVS-DFM, Dkt. 36 (C.D. Cal. July 24, 2020) ("*TCL Corp. Order*")*Core Optical Techs., LLC v. Fujitsu Network Commc'ns, Inc.*, No. SACV1600437AGJPRX, 2016 WL 7507760, at *1 (C.D. Cal. Sept. 12, 2016); *Semiconductor Energy*, 2012 WL 7170593, at *2; *Aten Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*, No. CV 09-0943 AG (MLGx), 2010 WL 1462110, at *6 (C.D. Cal. Apr. 12, 2010)); *see also Document Sec. Sys., Inc. v. Nichia Corp.*, No. CV1908172JVSJEMX, 2020 WL 4529613, at *2 (C.D. Cal. June 15, 2020) (finding that the case is "in the relatively early stages of litigation" where

4

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT
CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS
CASE NO. 8:20-CV-00048-JVS (JDEx)

"discovery is underway, the parties have exchanged infringement and invalidity [contentions], the Court considered a motion to dismiss, and the initial claim construction briefs have been filed"); *Universal Elecs. Inc. v. Roku, Inc.*, No. SACV181580JVSADSX, 2019 WL 6974173, at *2 (C.D. Cal. Nov. 4, 2019) (holding that although the *Markman* hearing already occurred and depositions had commenced, the stage of the litigation factor favored a stay because "there [was] still much work left to be done"); *Limestone v. Micron Tech.*, No. CV 15-0278-DOC (RNBx), 2016 WL 3598109, at *2 (C.D. Cal. Jan. 12, 2016) (holding that the stage of litigation factor "weighs heavily in favor of granting a stay" where "[d]iscovery is still in its early stages" and "the parties have not briefed the Court on claim construction"). In each of these cases, this Court and other courts in this District concluded that the stage of litigation factor weighed heavily in favor of a stay. Plaintiffs fail to even mention the stage of litigation analyses in these cases, much less attempt to distinguish them. The Court should apply the same reasoning here and reach the same conclusion.

The cases on which Plaintiffs rely in support of their argument are distinguishable and fail to support a denial of a stay here. In *Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.*, discovery was in its advanced stages, with less than four months remaining, and the parties had already scheduled depositions and served subpoenas. No. SACV182043DOCADSX, 2020 WL 2084674, at *1 (C.D. Cal. Jan. 13, 2020). The *Ellison* court noted that the PTAB would not even decide whether to institute the IPR petition until "almost two full months ***after the close of discovery***." *Id* at *2 (emphasis added). Moreover, the IPR petition there was filed less than ten months before trial. *Id.* By contrast, discovery here has barely begun, no depositions have been noticed or scheduled, no subpoenas have been served, trial is not set to start for another eighteen months, and the PTAB will necessarily decide whether to institute all twelve of Apple's IPR petitions prior to the cut-off for fact discovery that is still nine months away. Thus, *Ellison* provides no support for Plaintiffs' argument against a stay because the patent infringement case here is much less advanced than the litigation there.

Gibson, Dunn & Crutcher LLP

5

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS
CASE NO. 8:20-CV-00048-JVS (JDEx)

1     Equally unavailing is Plaintiffs' reliance on *SpeakWare, Inc. v. Microsoft Corp*.,

2   which was a consolidated action involving five separate cases against six defendants.

3   No. SACV181293DOCDFMX, 2019 WL 1878350, at *1 (C.D. Cal. Feb. 21, 2019).

4   Only one of the defendants (Google LLC) filed IPR petitions in *SpeakWare* and thus

5   was the only defendant that was estopped from raising the same invalidity grounds in

6   both proceedings.  Moreover, defendants waited almost two months after Google filed

7   its IPR petitions to move for a stay.  *Id.* at *2.  During that delay, the court resolved a

8   motion to consolidate the five cases, several defendants moved to dismiss, discovery

9   proceeded at a rapid pace, and depositions were noticed.  *Id.*; Defendants' Joint Reply

10  at 1, *SpeakWare*, No. SACV181293DOCDFMX (C.D. Cal. Feb. 11, 2019) (ECF 53).

11  On these facts, the *SpeakWare* court concluded that "the litigation has proceeded

12  significantly since the filing of the Complaint."  *SpeakWare*, 2019 WL 1878350, at *1.

13  By contrast, Apple promptly notified Plaintiffs of its intent to bring this Motion ***one day***

14  after filing its first IPR petitions, and filed this Motion only ***six days*** after filing the last

15  IPR petition challenging the patents asserted in the First Amended Complaint ("FAC").

16  Andrea Decl. ¶ 9 & Ex. B, at 16; Opening Br. at 5; ECF 196.  In addition, discovery in

17  this case is proceeding at a far slower pace than in *SpeakWare* due to the ever-changing

18  list of asserted patents and Plaintiffs' failure to identify its trade secrets.  *SpeakWare*

19  does not support a denial of a stay here.

20     Finally, Plaintiffs omit critical facts from *Otto Bock HealthCare LP v. Ossur hf*

21  that actually supports finding that the stage of litigation factor here weighs in favor of a

22  stay.  The court in *Otto Bock* denied a stay in part because it found that "[a]lthough it is

23  true that discovery has only just commenced in this case, this factor is less weighty here

24  *where the parties have already submitted expert declarations regarding the construction*

25  *of all four asserted independent claims* and have fully briefed Otto Bock's motion for a

26  preliminary injunction."  No. SACV1300891CJCANX, 2013 WL 12313020, at *3 (C.D.

27  Cal. Dec. 16, 2013) (emphasis added).  The court also explained that it had already

28  "considered the parties briefs and expert declarations and issued an order that provided

6

Gibson, Dunn &
Crutcher LLP

a preliminary construction of two of the key claim limitations at issue in [that] case." *Id.*
By contrast, no claim construction briefing has taken place here, the Court has not yet
issued a *Markman* ruling, and Plaintiffs have not moved for a preliminary injunction
with respect to the patent infringement case despite filing their case nine months ago.
*Otto Bock*, therefore, supports granting a stay here.[3]

### 2.   Plaintiffs Mischaracterize the Status of the Patent Infringement Case

Given the wealth of authority and the general practice of this Court to stay the
patent case, Plaintiffs resort to counting docket entries and motions and falsely accusing
Apple of delaying this case.  Plaintiffs' attempt to present a distorted picture of the
progress of this case fails.

Plaintiffs first argue that the progress of this case is advanced because "this case
already has more than two[] hundred docket entries" and the Court has "decided fourteen
motions and *ex parte* applications."  Opp. at 19 (emphasis removed).  But Plaintiffs cite
no authority and Apple has found none suggesting that the number of docket entries is
in any way indicative of the stage of litigation.  Indeed, this Court and courts in the
Northern District have found cases to be in their early stages and granted stays pending
IPR proceedings when there were hundreds of entries on the docket.  *See Roku*, 2019
WL 6974173, at *2–3 (ECF 143); *Netlist, Inc. v. Smart Storage Sys., Inc.*, No. 13-CV-
5889-YGR, 2015 WL 1738192, at *1 (N.D. Cal. Apr. 9, 2015) (ECF 330) (granting stay
because "[d]epositions and expert discovery remain" and "a claim construction decision,
assessment of the merits, trial, or other 'point of no return'" had not yet occurred).

Plaintiffs' argument that a stay is not warranted because the Court has decided
fourteen motions is also baseless, and courts have rejected similar arguments.  *See, e.g.*,
*Longitude Licensing Ltd. v. Apple Inc.*, No. 14-CV-04275-EDL, 2015 WL 12778777, at
*3 (N.D. Cal. Oct. 29, 2015) (rejecting argument that "substantial motion practice that

---

[3]  Plaintiffs also cite to *SoftView LLC v. Apple Inc.*, 2012 WL 3061027, at *4 (D. Del.
July 26, 2012), in which the Delaware district court denied a stay because the early stage
of the reexamination proceedings meant that they "are likely to take 6.5 to 8 years to
reach a final decision."  *Id.*  By contrast, the PTAB will, by statute, decide all of Apple's
IPR petitions before trial commences in this case in April, 2022.

has already occurred" weighed against a stay and granting stay where claim construction just started, fact discovery was ongoing, and summary judgment briefing had not commenced because "there remain[ed] much more work to be done"); *see also Finjan, Inc. v. ESET, LLC*, No. 17-CV-00183-CAB-BGS, 2018 WL 2095734, at *1 (S.D. Cal. May 7, 2018) (granting in part a stay where "[t]he litigation has proceeded through the regular rounds of motion practice, including motions to dismiss, motions to transfer and an earlier motion to stay," fact discovery cut-off was in three months, and a *Markman* order had issued).  Critically, none of the fourteen motions have addressed the merits of the patent claims, instead addressing discovery disputes (*e.g.*, ECF 54, 59, 76, 79, 93, 159), administrative issues (*e.g.*, ECF 17 (transferring case to Judge Selna); ECF 36–37 (scheduling orders); ECF 67 (entering protective order); ECF 147 (denying leave to file sur-reply)), or withdrawn issues (ECF 135).  *See Cypress Semiconductor Corp. v. LG Elecs., Inc.*, 2014 WL 5477795, at *2 (N.D. Cal. Oct. 29, 2014) (stage of litigation factor favored a stay where "[t]here has been no dispositive motion practice"); *cf. Roku*, 2019 WL 6974173, at *2 (stage of litigation factor favored a stay where plaintiff argued that "'dispositive motion practice' is underway").  Thus, while the Court has devoted time and resources to resolving these disputes, the number of motions on the docket that are unrelated to the merits of the patent dispute does not say anything about the progress of this patent case and does not weigh against a stay.

Plaintiffs also incorrectly attempt to blame the stage of this case on Apple by arguing that Apple has purposefully delayed this case allegedly "by repeatedly disregarding the Court's orders" and "failing to produce technical documents."  Opp. at 20.  Apple has never disregarded this Court's orders.  Apple has promptly provided all technical documents sufficient to show the operation of the accused products, as the Local Rules and the Court's orders required, and has been diligently working to collect and produce additional technical documents (for the newly-asserted patents and products, and those that are beyond "core" documents) since then.  Andrea Decl. ¶ 5; ECF 85 at 2.  By contrast, Plaintiffs' tactics have delayed the case.  Plaintiffs have kept

8

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS
CASE NO. 8:20-CV-00048-JVS (JDEx)

the patent infringement case in flux by amending their complaint twice, adding new patents to the case both times and dropping patents from the latest complaint. *See* ECF 28, 89-1. Plaintiffs have also refused to narrow the number of asserted claims and patents in this case, insisting on asserting virtually all claims from all twelve asserted patents. *See* ECF 69 at 1–5. On the trade secret front, Plaintiffs have steadfastly refused to comply with Section 2019.210 or cooperate with Apple on basic discovery for nine months since the start of this case, and it required an intervention from this Court before Plaintiffs even agreed on a date certain by which they would describe their alleged trade secrets. ███████████████████████████████████████████████ ██████████████████████. Thus, to the extent any delays have occurred in this case, Plaintiffs at least share the blame. In any event, even without any extensions, the original schedule in this case would still have left the patent case at effectively the same stage. *See* ECF 33 (Exhibit A).

Plaintiffs' reliance on *Biomet Biologics* here is misplaced. *See* Opp. at 20 (citing *Biomet Biologics, LLC v. Bio Rich Med., Inc.*, No. SACV 10-1582 DOC, 2011 WL 4448972, at *2 (C.D. Cal. Sept. 26, 2011)). The defendants there delayed the progress of the case by failing to timely respond to the complaint until a default was entered (despite requesting and receiving an extension of time to respond), failing to timely respond to discovery requests, refusing to negotiate a protective order for months, and delaying filing their reexamination request by five months. Plaintiffs' Opposition to Defendants' Motion to Stay Litigation at 2–4, 6–7, *Biomet Biologics*, No. SACV 10-1582 DOC (C. D. Cal. Aug. 29, 2011) (ECF 57) (attached hereto as Andrea Decl. Ex. W). In addition, other patents were at issue in that case that were not subject to the reexamination request. *Id.* at 11. By contrast, Apple has promptly responded to all complaints in this case by filing (and prevailing on) motions to dismiss, timely responded to all of Plaintiffs' discovery requests, and diligently attempted to negotiate a protective order. Further, Apple did not delay filing its IPR petitions, and moved for a stay within days of their filing. Thus, *Biomet Biologics* is inapposite because Plaintiffs

9

Gibson, Dunn & Crutcher LLP

1  have provided no evidence of dilatory tactics by Apple (because there is none), and

2  Plaintiffs' attempt to distinguish Apple's cited authority on that basis is without merit.

3       In sum, the patent infringement case is still in the earliest stages, and an immense

4  amount of work remains for the Court and the parties.  Accordingly, a stay of at least the

5  patent infringement case here is warranted, because it will save significant party and

6  judicial resources and avoid wasting those resources on claims later held invalid by the

7  PTAB.  Thus, the stage of the litigation factor weighs heavily in favor of a stay.

8  **B.**  **Apple's IPR Petitions Will Resolve or Simplify the Issues for Trial**

9       **1.**  **Apple's IPRs Challenge All Asserted Claims of All Asserted Patents**

10       Apple has now filed IPR petitions challenging *all* 245 of the asserted claims of *all*

11  twelve of the Asserted Patents.  Specifically, on September 30, 2020, Apple filed six

12  IPR petitions challenging all claims of the remaining five patents that were newly

13  asserted in the Second Amended Complaint ("SAC"):  U.S. Patent Nos. 10,624,564

14  (IPR2020-01713),  10,631,765  (IPR2020-01714  and  IPR2020-01715),  10,702,194

15  (IPR2020-01716),  10,702,195  (IPR2020-01733),  and  10,709,366  (IPR2020-01737).

16  These petitions are attached to the Andrea Declaration as Exhibits D–I.  Together with

17  the nine IPR petitions Apple previously filed challenging the seven patents that were

18  asserted in the original Complaint and the FAC (*see* Opening Br. at 5), Apple has now

19  challenged before the PTAB all 245 asserted claims.  Moreover, as Plaintiffs' concede,

20  the PTAB's Final Written Decisions must issue approximately by March 2022, before

21  trial is set to commence on April 5, 2022.  *See* 35 U.S.C. §§ 314(b), 316(a)(11); 37

22  C.F.R. § 42.107(b).[4]  Thus, Apple's IPR proceedings have great potential to dispose of

23  *all* (or at the very least greatly simplify *all*) patent infringement issues in this case before

24  trial.  *See LG Elecs. Order* at 4 ("[W]here a defendant is actively involved in the IPR

25  process with respect to all of the asserted claims, simplification is likely."); *Core*

---

[4]  Plaintiffs argue that the PTAB may extend the time for its decisions by six months (to September 2022) (Opp. at 18), but such extensions are extremely rare—as of October 2, 2020, out of a total of 3,052 IPRs where a final decision was reached, only 176 (5.8%) required more than 365 days to issue a Final Written Decision, and only 116 (3.8%) Final Written Decisions were issued after 13 months.  *See* Andrea Decl. Ex. P.

Gibson, Dunn &
Crutcher LLP

1   *Optical*, 2016 WL 7507760, at *2 (stay will simplify issues where all asserted claims

2   were challenged in the IPR); *Limestone*, 2016 WL 3598109, at *4.

3     **2.**  **Simplification of the Patent Infringement Case Is Very Likely**

4     Plaintiffs' argument that simplification of the issues prior to institution is "highly

5   speculative" (Opp. at 20–21) has been consistently rejected by this Court and others in

6   this District, and their assertion that "[t]his Court routinely declines to grant pre-

7   institution stays" (*id.*) is wrong.  Rather, the exact opposite is true—this Court has

8   explained that it and other "courts in this District have adopted the *majority position* that

9   *even if IPR has not yet been instituted*, the simplification factor may still weigh in favor

10  of a stay" because "*many courts* have ultimately been persuaded that the potential to

11  save significant judicial resources sways the analysis in favor of stay." *Purecircle*, 2019

12  WL 3220021, at *2–3 (emphasis added); *see also TCL Corp. Order* at 4; *Nichia*, 2020

13  WL 4529613, at *2; *Roku*, 2019 WL 6974173, at *2.  As another court in this District

14  explained, Plaintiffs' argument that simplification is speculative "likely applies in all

15  stay motions, and thus proves too much." *Core Optical*, 2016 WL 7507760, at *2.

16    The cases on which Plaintiffs rely are inapposite.  In each, the simplification factor

17  weighed against a stay because the IPR petitions at issue were scheduled to be resolved

18  well *after* the trial date or did not challenge all of the asserted claims (or both).  For

19  example, in *SZ DJI*, the IPR proceedings "would not resolve many of the issues raised

20  in this litigation" because they were due to be resolved six months after trial and involved

21  "only two of seven patents-in-suit." *SZ DJI Tech. Co. v. Yuneec Int'l Co.*, No. CV 16-

22  0595-BRO (KKX), 2016 WL 9114148, at *2–3 (C.D. Cal. Dec. 1, 2016).  In *Toshiba*,

23  the court found no simplification of the issues where IPR petitions were due to be

24  resolved five months after trial, challenged only "two of the nine asserted patents," and

25  only "arguably implicate[d] the same technology as four other asserted patents."

26  *Toshiba Tec Corp. v. Katun Corp.*, No. SACV1501979SJOJCX, 2016 WL 9137646, at

27  *3 (C.D. Cal. Sept. 21, 2016).  The *Toshiba* court also explained that "courts regularly

28  deny motions to stay where IPRs are instituted on only a portion of the claims asserted."

Gibson, Dunn &
Crutcher LLP

*Id.* at \*4 (collecting cases). In *Hologram*, simplification was unlikely because the IPR petitions were not even due to be *instituted* until a month *after* trial, and challenged only a subset of the asserted claims. *Hologram USA, Inc v. Vntana, 3D, LLC*, No. CV1409489BROAGR, 2015 WL 12791513, at \*3 (C.D. Cal. Dec. 7, 2015). Likewise, the courts in *Otto Bock* and *Biomet Biologics* found that the simplification factor weighed against a stay because the reexamination proceedings involved only a subset of the asserted claims, and thus would not "eliminate[] the need for a trial." *Otto Bock*, 2013 WL 12313020, at \*2 (IPR petition "encompasse[d] only two of the four asserted claims in th[e] case"); *Biomet Biologics*, 2011 WL 4448972, at \*3 (the court would still need to litigate "two unrelated patents that are not subject to reexamination"). Finally, *SpeakWare* is also distinguishable because it was a consolidated action where only one of the six defendants filed an IPR petition, and the other defendants therefore were not estopped by the IPR proceedings from raising the same invalidity challenges in the district court case. *See SpeakWare*, 2019 WL 1878350, at \*1–2.

By contrast, Apple's IPR petitions are due to be decided before the current trial date, cover all asserted claims of all Asserted Patents, and Apple is the only defendant in this lawsuit. Further, Apple will be estopped from raising in this action invalidity grounds that were raised or reasonably could have been raised in the IPR proceedings, and has already stipulated that, if the PTAB institutes an IPR proceeding that includes a ground raised in Apple's IPR petitions, it will not assert that same ground against the corresponding claims in this litigation. *See* 35 U.S.C. § 315(e)(2); Opening Br. at 10–11; Andrea Decl. Exs. J–N. Unlike the cases on which Plaintiffs rely, therefore, the IPR proceedings here will very likely greatly simplify the patent infringement case.

Plaintiffs also argue that simplification is unlikely because by stipulating to not raise the same grounds on which IPR is instituted against corresponding claims in this litigation, Apple is somehow attempting to avoid "IPR estoppel," but this argument makes no sense. Opp. at 24. Apple will be estopped *by statute* from raising invalidity grounds in this action that it raised or reasonably could have raised in instituted IPR

12

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT
CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS
CASE NO. 8:20-CV-00048-JVS (JDEX)

proceedings, once a Final Written Decision issues.  *See* 35 U.S.C. § 315(e)(2).  Apple's stipulations *go even further*.  Apple has voluntarily foregone the right to even *pursue* invalidity grounds that are raised in the IPRs *upon institution* of the IPR (*i.e.,* a year before IPR estoppel would otherwise preclude reliance on such grounds).  Apple's retention of the right to assert *other* invalidity defenses in this action, including those based on 35 U.S.C. § 112, does not diminish the potential for simplification in this case, because Apple has agreed not to assert in this action any instituted invalidity ground against corresponding claims, thus narrowing its invalidity challenges.  To the extent that any of the patent claims survive an IPR proceeding, *statutory estoppel* will prevent Apple from raising any grounds that were or reasonably could have been raised, necessarily streamlining and focusing any case that remains.

Plaintiffs also attempt to distinguish the cases cited in Apple's opening brief by arguing that they are "inapplicable because they found simplification where the litigation involved only a single patent."  Opp. at 23 (attempting to distinguish *Purecircle*; *Core Optical*; *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, 2015 WL 1809309 (C.D. Cal. Apr. 20, 2015); and *Select Comfort Corp., v. Tempur Sealy Int'l*, Inc., 2014 WL 12600114, at *2 (D. Minn. Oct. 10, 2014)) (emphasis removed).  But the large number of patents in this case actually makes a stay even *more* appropriate here than in those cases.  The burden on the parties and the Court of litigating this twelve-patent case on top of Plaintiffs' allegations of trade secret misappropriation and claims for correction of inventorship and patent ownership is substantially greater than the burden in those one-patent cases—and so is the corresponding potential for simplification of the issues resulting from Apple's IPR challenges to these twelve patents.[5]

Plaintiffs' other arguments that simplification here is speculative are likewise without merit.  For example, Plaintiffs argue that *four* of Apple's *fifteen* IPR petitions

---

[5]  Plaintiffs also assert without *any* support that because Apple's is challenging twelve patents across three families, the PTAB "will likely assign the petitions to different panels," which "could add more complexity with inconsistent decisions."  Opp. at 23. But Plaintiffs do not explain how different panels deciding validity of patents in *different families* could result in inconsistent decisions or cite a single example in support.

are not likely to be instituted "because Apple is reusing references already submitted to the PTO." Opp. at 21–22 & n.6. Plaintiffs ignore that the references they identify were merely cited to the Examiner in an Information Disclosure Statement submitted during prosecution, but were never relied on by the Examiner in any office action. The PTAB has routinely instituted IPRs in such circumstances because, as here, "the references were not applied against the claims and there is no evidence that the Examiner considered the particular disclosures cited by [the petitioner] in the [IPR] Petition." *Microsoft Corp. v. Licensing*, No. IPR2015-00486, 2015 WL 4760578, at *8 (P.T.A.B. July 15, 2015). In any case, even if the PTAB were to deny institution of these four petitions on this basis (which is highly unlikely), the PTAB is still likely to institute the remaining *eleven* of Apple's IPR petitions, thus still greatly simplifying the patent infringement case here.

Plaintiffs complain that Apple had not filed all of its IPR petitions prior to bringing this Motion, yet Apple notified Plaintiffs of its intention to move for a stay two weeks before filing this Motion. Andrea Decl. Ex. B . Plaintiffs' argument that they were not able to review all of Apple's IPR petitions for potential deficiencies before filing their Opposition (Opp. at 22) is confusing because any alleged deficiencies in Apple's IPR petitions are the province of the PTAB, not this Court, and in any event would result in a "relatively short" stay if no IPRs are instituted. *Purecircle*, 2019 WL 3220021, at *2. It is remarkable that Plaintiffs on one hand argue that Apple should have delayed bringing this Motion while on the other hand accusing Apple of delaying this case. Opp. at 19–20. Further, Apple's latest IPR petitions challenge patents that share the same specification as several of the patents Apple challenged prior to filing this Motion. More importantly, all of Apple's IPR petitions have now been filed, and the Court can consider all of those petitions in deciding this Motion. *See Zomm, LLC v. Apple Inc.*, 391 F. Supp. 3d 946, 956 (N.D. Cal. 2019) (a court is "not obligated to ignore advances in the litigation at the time it considers the motion" (citation omitted)).

Plaintiffs' attack on Apple's statistics also fails.  Plaintiffs argue that institution rates for IPR proceedings have recently declined, but concede that a majority of petitions are still instituted.  Opp. at 22.  Further, recent statistics concerning only Apple's IPR petitions make an even stronger argument for granting a stay here.  Specifically, the institution rate for Apple's IPR petitions filed since the beginning of 2019 is actually *higher* (76%) than the institution rate for its petitions since IPR proceedings were created in 2012 (73%).  Andrea Decl. Ex. O; Opening Br. at 12.  Plaintiffs further distort the PTAB's statistics by arguing that "64.6%" of IPRs that did not settle "have resulted in decisions favorable to the patent owner by either denying institution or confirming the patentability of one or more claims."  Opp. at 22 (emphasis omitted).  But Plaintiffs omit that less than 10% of those decisions found *all* challenged claims patentable.  Rosenthal Decl. (ECF 197) Ex. S, at 985.  Thus, there is a high probability that *at least some* of the asserted claims challenged in Apple's IPR petitions will be invalidated, which will necessarily simplify the case.

Similarly, plaintiffs' attempt to undermine Apple's arguments about the likelihood of institution by referencing Apple's pending lawsuit against the PTO is unavailing.  Opp. at 23.  As Plaintiffs admit, that lawsuit concerns the PTAB's so-called "*NHK-Fintiv* rule," which consists of several factors that the PTAB applies in considering whether to deny institution based on parallel district court proceedings.  But that rule is of marginal relevance to Apple's IPR petitions in this case because two of the factors most weighed by the PTAB (proximity of the trial and Final Written Decision dates and whether petitioner stipulated to not pursue the same grounds in both forums) both favor institution of Apple's IPRs.

In sum, Plaintiffs make no reasonable argument that a stay would not resolve or at the very least greatly simplify the patent infringement issues for trial.  Apple's IPR petitions challenge all asserted claims of all Asserted Patents, and are therefore likely to result in the invalidation of numerous asserted claims, a substantial reduction in invalidity arguments raised in this action, and the development of an intrinsic record that

will be helpful to the Court even if any claims survive the IPR proceedings.  Further, in the very unlikely event that the PTAB does not institute any of Apple's IPR petitions, the stay will be relatively short.  Accordingly, the potential for significant conservation of the Court's and the parties' resources tilts this factor strongly in favor of a stay.

## C.     A Stay Will Not Prejudice or Tactically Disadvantage Plaintiffs Because They Do Not Compete with Apple

There will be no undue prejudice or tactical disadvantage to Plaintiffs from a stay. The crux of Plaintiffs' argument for prejudice—that Plaintiffs and Apple are "direct competitors" in the amorphously defined "field of wearable home monitoring" vis-à-vis the oxygen saturation feature in the newly-released Apple Watch Series 6—is false.  But even if Apple and Plaintiffs were direct competitors, the benefits of a stay due to the factors discussed above (stage of case, simplification of issues, etc.) far outweigh any alleged prejudice to Plaintiffs.  *See, e.g., Trusted Knight Corp. v. Int'l Bus. Machs. Corp.*, No. 19-cv-01206-EMC, 2020 WL 5107611, at *5–6 (N.D. Cal. Aug. 31, 2020).

In any event, the reality is that Plaintiffs have not demonstrated that any of Plaintiffs' supposedly "clinical grade" blood oxygen monitors, such as "the MightySAT, iSpO2, and Masimo Sleep," actually compete with the Apple Watch. ██████████

██████████████████████████████████████████████████████

██████ Because the Apple Watch does not compete with Plaintiffs' current products, a stay will not prejudice Plaintiffs.  *See, e.g., Core Optical*, 2016 WL 7507760, at *2. Even if Plaintiffs and Apple were competitors (and they are not), they are not *sole* competitors, because dozens of other companies have marketed *for years* wrist-worn and fingertip pulse oximeter devices to consumers, which undermines any claim of prejudice to Plaintiffs.  *See Roku*, 2019 WL 6974173, at *3.

## 1.     The First Two Factors and the Totality of the Circumstances Outweigh Any Speculative Prejudice to Plaintiffs and Favor a Stay

At most, ████████████████████████████████████████████

███████████████████████████████████████████████████████████

16

Gibson, Dunn &
Crutcher LLP

1    ██████████████████████████████████, and certainly

2    Masimo and Apple are not the only companies offering consumer products with pulse

3    oximetry functionality.  For at least that reason, a stay is favored.  *See, e.g.*, *Core Optical*,

4    2016 WL 7507760, at *2.

5          But even if Plaintiffs and Apple were direct competitors, the first two factors—

6    the early stage of the case and the likely narrowing of issues—far outweigh any potential

7    prejudice that could result from such purported competition.  This Court and others have

8    granted stays in cases involving direct competitors where the first two factors weigh in

9    favor of granting a stay.  *See, e.g.*, *PureCircle*, 2019 WL 3220021, at *4; *TeleSign Corp.*

10    *v. Twilio, Inc.*, No. CV 15-3240 PSG (SSx), 2016 WL 6821111, at *4–5 (C.D. Cal. Mar.

11    9, 2016) (granting stay where plaintiff "presented some evidence of prejudice" based on

12    market competition, but finding that the prejudice "factor weighs only slightly against a

13    stay"); *Trusted Knight*, 2020 WL 5107611, at *5–6 (granting stay because even

14    "[a]ssuming that Trusted Knight and IBM are properly considered direct competitors,"

15    the other factors favor a stay and so "this factor tips only moderately . . . against a stay").

16          Even assuming that Masimo's products compete with the Apple Watch—they do

17    not—the cases relied upon by Plaintiffs are distinguishable on factors other than undue

18    prejudice.  For example, as discussed above, in *Otto Bock*, *Toshiba*, and *Biomet*

19    *Biologics*, the IPR or reexamination petitions challenged only a subset of the asserted

20    claims, and thus did not substantially simplify the issues for trial.  *See Otto Bock*, 2013

21    WL 12313020, at *2; *Toshiba*, 2016 WL 9137646, at *3; *Biomet Biologics*, 2011 WL

22    4448972, at *3.  In *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, by the time

23    defendant filed its IPR petitions, the court had already "spent substantial effort

24    construing the claims."  943 F. Supp. 2d 1028, 1032 (C.D. Cal. 2013).  By contrast,

25    Apple filed its IPR petitions just eight months into the case, before claim construction

26    has even begun and while the *Markman* hearing is still seven months away.  *Avago*

27    *Techs. Fiber IP (Singapore Pte. Ltd.) v. IPtronics Inc.* is also inapposite, because that

28    court "decline[d] to officially impose" a stay on the basis that no estoppel resulted from

17

*ex parte* reexaminations and "congestion in the Court's calendar" that significantly delayed claim construction allowed the court "to realize the benefits of the PTO proceedings" without a stay.  No. 10-CV-02863-EJD, 2011 WL 3267768, at *5–6 (N.D. Cal. July 28, 2011).  In *Whalen Furniture Mfg., Inc. v. Z-Line Designs, Inc.*, trial was set to begin in four months, whereas reexamination was likely to "take at least two years to be completed."  No. 3:11-cv-02958-H-DHB, Slip. Op. at 5 (S.D. Cal. July 12, 2013) (Ex. 36 to Lawton Decl.).  Here, as explained above, the case is in its early stages, Apple has challenged all asserted claims and is subject to IPR estoppel, and expects the PTAB's decisions to issue before trial.  Thus, the totality of the circumstances favors a stay, *even if* the court considers the parties to be direct competitors.

## 2. Plaintiffs' Assertion that the Apple Watch Competes with Their Products in a Properly Defined Market Is Wrong

Plaintiffs fail to establish any prejudice because their amorphous references to "wearable home monitoring" and "at-home health monitoring solutions" do not establish that Apple and Plaintiffs are direct competitors.  *See, e.g.*, Opp. at 13.  For example, neither Plaintiffs nor their expert Ms. Lawton ever define the market in which the products allegedly compete, even though it is Plaintiffs' burden to do so in order to show competition.  Davis Decl. ¶ 11 (explaining that a market should have been defined in order to determine whether products are competing).

### a. Plaintiffs Have Not Shown that Any Masimo Products Compete with the Apple Watch

Plaintiffs describe all of the allegedly competing products—the MightySAT, iSpO2, and the Radius PPG with the "Masimo Sleep" app—as *clinical grade* products they allegedly market to consumers, and argue that Apple likewise is "touting its products for clinical use."  Opp. at 4, 10, 13.  But Apple's materials cited by Plaintiffs belie this comparison.  For example, Plaintiffs quote from an Apple press release that states:  "Blood Oxygen app measurements *are not intended for medical use*, including self-diagnosis or consultation with a doctor, and are only designed for general fitness

18

and wellness purposes." ECF 207-1 (Larson Decl.) Ex. 25, at 131 (emphasis added). Likewise, Plaintiffs hone in on a sole reference to "patients" on Apple's website, but omit that the same website explains that the heart rate, irregular heart rhythm notifications, and ECG information provided by the Apple Watch is intended to notify a user to seek "further evaluation" by a medical professional. ECF 207-1 (Larson Decl.) Ex. 14, at 97–98; *cf.* Davis Decl. ¶¶ 13–17, 19 (explaining that an analysis of competing products requires a comparison of their relative functionality and designed use). Moreover, Plaintiffs fail to even mention that their own corporate filings reveal that Plaintiffs "derive[] the majority of [their] product revenue" not from consumers, but from sales to hospitals, emergency medical response organizations, distributors, and OEM manufacturers, whereas Apple is an innovator in the consumer electronics market, as Apple pointed out in its opening brief. Opening Br. at 15–16.

The form factor of each of the allegedly competing products is also plainly distinguishable from the wrist-worn design of the Apple Watch. For example, Masimo describes the MightySAT as a "Fingertip Pulse Oximeter" and the iSpO2 as a "Pulse Oximeter" with a fingertip sensor that connects by a cable to iOS or Android devices for use with the Masimo Personal Health app. ECF 207-1 (Larson Decl.) Ex. 4 at 15, Ex. 5 at 46. And the Masimo Sleep is not even a physical product, but an app used with the Radius PPG wireless fingertip sensor. *See id.*, Ex. 7 at 63–64; Opp at 4. Conversely, the Apple Watch Series 6 is a wrist-worn, smartwatch product with a huge number of functions, only one of which is computation of blood oxygen saturation (a feature that was just announced on September 15, 2020). In view of these substantial differences between the products, Plaintiffs have proffered *no* evidence that a consumer would consider any of Masimo's products to be suitable substitutes for the Apple Watch. Davis Decl. ¶¶ 13–20 (stating that an analysis of competing products would typically include surveys or other consumer analysis to determine whether the products are substitutable). Plaintiffs also provide no analysis of the relative prices of their allegedly competing

19

Gibson, Dunn &
Crutcher LLP

products and the Apple Watch.  *Id.* ¶¶ 13–18 (explaining that an analysis of the relative price points is critical to determining whether products compete).

Moreover, the Apple Watch includes *hundreds* of features beyond the Blood Oxygen app, such as Phone, Messages, Calendar, Weather, Apple Pay, Siri, Apple Music, and Apple Maps apps, to name only a few.  By contrast, Masimo's purportedly competing products are single function devices:  pulse oximeters.  *Id.* ¶¶ 13–17, 19 (explaining the inherent difficulty in determining whether a complex, multi-function device competes with single or much-fewer-function devices).  Simply alleging that two products compete because they both measure oxygen saturation is akin to saying a flashlight competes with a car (with headlights) because they both provide light.  *Id.*

In sum, Plaintiffs do not come close to demonstrating that their products actually compete with the Apple Watch.  *Id.* ¶¶ 9–20.  As such, Plaintiffs' reliance on competitor cases is inapposite here.  As explained in Apple's opening brief, because Plaintiffs and Apple are not competitors, Plaintiffs can be adequately compensated with monetary damages and will not lose sales or market shares a result of a stay.

### b.    Any Potential Prejudice to Plaintiffs Is Minimal Because Plaintiffs and Apple Are Certainly Not *Sole* Competitors

Even where parties to a lawsuit are direct competitors, one relevant consideration is whether the parties are *sole competitors* in the relevant markets.  *Roku*, 2019 WL 6974173, at *3.  In *Roku*, this Court recognized that the defendant had "introduced evidence of other competitors in the marketplace," and acknowledged that "'[w]hile this does not definitively show that there will be no undue prejudice to Plaintiff, it undermines the weight that should be afformed Plaintiff's contentions of undue harm.'"  *Id.* (quoting *Wonderland Nursery*, 2015 WL 1809309 at *4).

Under any definition of "wearable home monitoring," there are numerous manufacturers offering competing products that measure blood oxygen saturation.  Davis Decl. ¶¶ 21–27.  For example, in January 2020, Fitbit rolled out blood oxygen monitoring to five of its devices: the Versa, Versa 2, Versa Lite, Ionic, and Charge 3.

20

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS
CASE NO. 8:20-CV-00048-JVS (JDEX)

*See How to use your Fitbit to monitor your blood oxygen levels*, The Verge, https://www.theverge.com/2020/1/29/21113434/fitbit-blood-oxygen-levels-monitor-sleep-data-how-to (Jan. 29, 2020).  Fitbit's devices demonstrating this feature are prominently displayed on Fitbit's website:



*SpO2 Signature Clock Face*, Fitbit, https://gallery.fitbit.com/details/fadb02f3-5d1b-4588-a05c-e6a9db74bf7a (last visited Oct. 5, 2020) (Andrea Decl. Ex. Q)

Garmin likewise offers several watch devices that include a "Pulse Ox" feature, including at least the fēnix 6, Approach S62, Forerunner 245/245 Music, vivomove 3/3S, vivomove Luxe, vivomove Style, vivosmart 4, Forerunner 945, Venu, and vivoactive 4/4S.  *See Pulse Ox Frequently Asked Questions for Garmin Watches*, Garmin, https://support.garmin.com/en-US/?faq=SK2Y9a9aBp5D6n4sXmPBG7  (last visited Oct. 5, 2020).  Garmin also prominently displays this feature on their website:



*fēnix® 6 - Pro Solar Edition*, Garmin, https://buy.garmin.com/en-US/US/p/702902 (last visited Oct. 5, 2020) (Andrea Decl. Ex. R).

Similarly, a search on Amazon for "wrist pulse oximeter" yields at least a ***dozen*** other such wrist-worn products, most of which have been available for years:

Gibson, Dunn & Crutcher LLP



*See, e.g.*, *V19 Fitness Activity Tracker & Health Smart Watch with Dual Heart Rate HRV Monitor Blood Pressure Oxygen SpO2*, Amazon.com, https://www.amazon.com/dp/B086QPLY19 (last visited Oct. 5, 2020) (Andrea Decl. Ex. S).

The Apple Watch is also not the first device to offer pulse oximetry functionality to consumers. There are numerous manufacturers of fingertip pulse oximeters for consumer use with products that have been on the market for years. For example, a search on Amazon for "fingertip pulse oximeter" returns ***401 results***. Below is just one example, which has been on the market since July 8, 2015:



*Facelake ® FL400 Pulse Oximeter*, Amazon.com, https://www.amazon.com/dp/B0117V8Q2O/ (last visited Oct. 5, 2020) (Andrea Decl. Ex. T).

In short, the abundance of competitors in the "field of wearable home monitoring" that offer pulse oximetry undermines Plaintiffs' claim that they are "likely to lose market share and sales to Apple." *See* Davis Decl. ¶¶ 21–27. This claim is rank speculation, lacking any evidentiary support that Plaintiffs might have made those sales instead of any one of these other manufacturers. *See, e.g.*, *Lodge Mfg. Co. v. Gibson Overseas,*

22

1   *Inc.*, No. CV 18-8085 PSG (GJSx), 2019 WL 9443180, at *4–5 (C.D. Cal. Sept. 24,

2   2019) (granting stay where there were "numerous players" in the relevant market and

3   plaintiffs presented minimal evidence of its market competition with defendant).



20   **D.      The Court Could Alternatively Opt to Stay the Trade Secret Case**

21          Plaintiffs agree with Apple that the separate and independent trade secret case

22   should proceed forward ████████████████████████████████████████

23   ████████████████. *See* Opp. at 24–25.  As Apple explained in its opening brief, however,

24   the Court *could sua sponte* decide to stay the entire action.  Plaintiffs' arguments to the

25   contrary are meritless.  Plaintiffs contend that they would be prejudiced by a stay of the

26   trade secret case, but it is Plaintiffs that have delayed prosecuting their trade secret case

27

28   ⁶ Moreover, the photo included in Plaintiffs' Opposition and the Kiani Declaration
     does not even evidence a functioning device, as nothing is displayed on the screen.

23

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT
CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS
CASE NO. 8:20-CV-00048-JVS (JDEx)

Gibson, Dunn &
Crutcher LLP

*for months*.  Plaintiffs have fought tooth and nail to avoid providing a Section 2019.210 disclosure, even though the trade secret case is effectively stayed until they do so.  *See, e.g.*, ECF 33 at 13; ECF 169-1 at 19–26; ECF 37 at 1.  Moreover, Plaintiffs have repeatedly argued that trade secret discovery was stayed indefinitely.  *See, e.g.*, ECF 169-3 (Exhibit C, at 12–13) (Plaintiffs stating that "Judge Selna's order did not require a 2019.210 statement at all, much less by a date certain"); *see also* ECF 169-1 at 20 (making the same argument).  It is incredible that Plaintiffs are now claiming that a stay will cause them prejudice, when they have outright refused to move the trade secret case forward. ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

The cases Apple's cited in its opening brief make clear that this Court could opt to stay the trade secret case as well.  *See* Opening Br. 21–22 (citing *Lodge*, 2019 WL 9443180, at *2–3, and *Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*, No. SACV131880JLSRNBX, 2014 WL 12854129, at *2–3 (C.D. Cal. May 20, 2014)).  Plaintiffs' attempt to distinguish these cases falls flat, because both cases were stayed as a whole even though each included additional claims not affected by IPR proceedings.  *Lodge*, 2019 WL 9443180, at *3; *Bal Seal* 2014 WL 12854129, at *2–3.

In short, the three relevant factors and the totality of the circumstances support a stay of the patent infringement case.  The parties agree that the trade secret case should move forward, but the Court could in its discretion opt to stay the entire action.

E.    **Ms. Lawton's Irrelevant and Prejudicial Testimony Should Be Stricken**

The Court should strike at least paragraphs 14, 17, 19–26, 32–65, 82–103, and 105 of Ms. Lawton's declaration.  Paragraphs 14, 17, 19–26, and 82–103 should be stricken because they are not cited anywhere in Plaintiffs' Opposition, and thus appear to be an attempted run around briefing page limits.  In addition, Paragraphs 32–65, 97, and 105 should also be stricken because they consist of Ms. Lawton's opinions on irrelevant and unproven alleged misconduct by Apple.  These opinions are primarily in the form of extensive quotations from books, articles, and blog posts about products

24

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS
CASE NO. 8:20-CV-00048-JVS (JDEx)

other than the Apple Watch and thus, are irrelevant to the issue of whether Plaintiffs will be prejudiced by a stay in this case.  Moreover, Ms. Lawton's arguably defamatory accusation that "[w]hen Apple lacks expertise in a particular industry, Apple has a history of taking technology from others," and her characterization of Apple as having "always been shameless about stealing great ideas" (ECF 208-3 (Lawton Decl.) ¶¶ 58–65) are a clear example of the type of gamesmanship that Judge Early warned the parties to avoid just one month ago (Andrea Decl. Ex. U, at 931 (Tr. at 9:6–13)), and should be stricken because they have no place in this litigation.  These inflammatory anti-Apple "opinions" are also based solely on the work of two commentators, one of whom admits that his blog post was not "fact-checked" and may not be "entirely accurate."  ECF 207-1 (Larson Decl.) Ex. 11 at 81 (same "infographic").[7]  At a minimum, Ms. Lawton's opinions are more prejudicial than probative under Federal Rule of Evidence 403. Likewise, Ms. Lawton's opinions do not pass muster under Federal Rule of Evidence 702, because they are not based on sufficient facts or data, and will not assist the Court in determining whether Apple competes with Plaintiffs for purposes of this Motion. Notably, Ms. Lawton has a history of including such irrelevant and inflammatory statements in her testimony, which have been stricken in the past under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  For example, her similar testimony that "Steve Jobs is a thief or worse" was excluded in a prior case against Apple, where the court made an "easy call" to restrict Ms. Lawton from "engag[ing] in such emotional appeals."  *Emblaze Ltd. v. Apple Inc.*, 52 F. Supp. 3d 949, 959 (N.D. Cal. 2014).  Such immaterial testimony should likewise be stricken here.

## III.   CONCLUSION

Plaintiffs have failed to show that any of the factors or the totality of the circumstances weigh against a stay.  Accordingly, the Court should grant Apple's Motion and stay at least the patent infringement case pending final resolution of Apple's IPR petitions.

---

[7]  Exhibit 11 to the Larson Declaration should be stricken for this reason as well.

25

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT
CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS
CASE NO. 8:20-CV-00048-JVS (JDEx)

Gibson, Dunn &
Crutcher LLP

1    Dated:  October 5, 2020

2                                    Respectfully submitted,

3                                    JOSHUA H. LERNER
                                     H. MARK LYON
4                                    BRIAN M. BUROKER
                                     BRIAN A. ROSENTHAL
5                                    ILISSA SAMPLIN
                                     ANGELIQUE KAOUNIS
6                                    BRIAN K. ANDREA
                                     GIBSON, DUNN & CRUTCHER LLP
7

8                                    By:     /s/ Joshua H. Lerner
                                             Joshua H. Lerner
9
                                     *Attorneys for Defendant Apple Inc.*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE PATENT INFRINGEMENT
CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS
CASE NO. 8:20-CV-00048-JVS (JDEX)