Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

*Counsel for Defendant listed on next page.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) **JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO DENY ACCESS TO CONFIDENTIAL INFORMATION**<br>)<br>) [Discovery Document: Referred to Magistrate Judge John D. Early]<br>)<br>) Date:       November 19, 2020<br>) Time:      10:00 a.m.<br>) Ctrm:     6A<br>)<br>) Discovery Cut-Off:      7/5/2021<br>) Pre-Trial Conference:   3/21/2022<br>) Trial:                          4/5/2022<br>)<br>) Hon. James V. Selna<br>) Magistrate Judge John D. Early |

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.:  415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.:  650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8541 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTORY STATEMENTS ...................................................1

    A.    Plaintiffs' Introductory Statement ...............................1

    B.    Apple's Introductory Statement...................................4

II.    CONTENTIONS AND POINTS OF AUTHORITIES ........................7

    A.    Dr. Majid Sarrafzadeh.......................................................7

        1.    Plaintiffs' Contentions and Points of Authority ..............7

            a.    The Patent Prosecution Bar Prevents Sarrafzadeh from Accessing Confidential Information................................................7

            b.    Apple Does Not Explain How Sarrafzadeh Can Simultaneously Comply With Both The Protective Order And His Duty of Candor To The Patent Office .................................9

            c.    Sarrafzadeh's Research and Development Activities Pose an Undue Risk of Competitive Harm ................................11

            d.    The Risks to Plaintiffs Outweigh any Harm to Apple ...............................................16

            e.    For a Technical Expert that is Active in the Field, Agreeing to Refrain from Intentionally or Knowingly Misusing Confidential Information Is Not Sufficient..........17

        2.    Apple's Response ...........................................19

            a.    Dr. Sarrafzadeh Is a Highly Respected Academic Professor Who Poses No Viable Risk of Competitive Harm ....................................21

            b.    The Prosecution Bar Sufficiently Protects the Plaintiffs ........................................28

            c.    Plaintiffs Manufacture Tension between the Protective Order and Dr. Sarrafzadeh's Duties to the Patent Office ....................................31

-i-

**TABLE OF CONTENTS**
*(Cont'd)*

**Page No.**

        d.     Precluding Apple from Engaging Dr. Sarrafzadeh Would Be Unduly Prejudicial ..........33

        e.     Plaintiffs' Proposal is Facially Unreasonable ......35

B.    Dr. Steve Warren ......................................................38

   1.    Plaintiffs' Contentions and Points of Authority .............38

        a.     Warren's Research and Development Activities Pose a Risk of Competitive Harm .......38

        b.     The Risks to Plaintiffs Outweigh Any Harm to Apple .................................................................39

        c.     For a Technical Expert that is Active in the Field, Agreeing to Refrain from Intentionally or Knowingly Misusing Confidential Information Is Not Sufficient ..........40

   2.    Apple's Response ...........................................................41

        a.     Dr. Warren Is a Professor Who Poses No Viable Risk of Competitive Harm........................41

        b.     Precluding Apple from Engaging Dr. Warren Would Be Unduly Prejudicial ................43

        c.     Plaintiffs' Proposal Is Facially Unreasonable ......................................................46

# TABLE OF AUTHORITIES

Page No(s).

*Applied Signal Tech., Inc. v. Emerging Markets Comms., Inc.*,
No. C-09-02180, 2011 WL 197811 (N.D. Cal. Jan. 20, 2011)........*passim*

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir. 1992)...................................................................19

*Brown Bag Software v. Symantec Corp.*,
960 F.2d 1465 (9th Cir. 1992)....................................................................7

*Digital Equip. Corp. v. Micro Tech., Inc.*,
142 F.R.D. 488 (D. Colo. 1992)........................................................15, 28

*Emerson Elec. Co. v. Sipco, LLC*,
No. 16-MC-80164-DMR, 2016 WL 6833741
(N.D. Cal. Nov. 21, 2016) ...............................................................*passim*

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
331 F.3d 1122 (9th Cir. 2003)..........................................................19, 38

*FTC v. Exxon Corp.*,
636 F.2d 1336 (D.C. Cir. 1980) .................................................................2

*GPNE Corp. v. Apple Inc.*,
2014 WL 1027948 (N.D. Cal. Mar. 13, 2014)...................................29, 31

*Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*,
No. 12-CV-05847-WHO, 2015 WL 1744330
(N.D. Cal. Apr. 15, 2015)..........................................................................22

*Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*,
682 F. Supp. 20 (D. Del. 1988) .........................................................15, 28

*Symantec Corp. v. Acronis Corp.*,
No. 11-5310 EMC JSC, 2012 WL 3582974
(N.D. Cal. Aug. 20, 2012) ...............................................................*passim*

*Tailored Lighting, Inc. v. Osram Sylvania Prod., Inc.*,
236 F.R.D. 146 (W.D.N.Y. 2006)......................................................14, 27

*Tehrani v. Polar Elecs. Inc.*,
No. SACV051113DOCRNBX, 2006 WL 8435287
(C.D. Cal. Nov. 8, 2006) ...........................................................................17

*THX, Ltd. v. Apple, Inc.*,
No. 13-cv-01161-HSG-DMR, 2016 WL 2899506
(N.D. Cal., May 13, 2016)................................................................*passim*

-iii-

# TABLE OF AUTHORITIES
## (*Cont'd*)

**Page No(s).**

*Univ. of Virginia Patent Found. v. General Electric Co.*,
   No. 3:14-cv-00051, 2016 WL 379813 (W.D. Va. Jan. 29, 2016).....*passim*

## OTHER AUTHORITIES

37 C.F.R. § 1.56...................................................................................10

F.R.E. 702............................................................................................34

Fed. R. Civ. P. 37..................................................................................1

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Plaintiffs"), as movant, and Defendant Apple Inc. ("Apple"), as respondent, through their respective counsel of record, submit this Joint Stipulation in connection with Plaintiffs' motion to deny access to Plaintiffs' confidential information.

Pursuant to Local Rule 37-1, this Joint Stipulation was prepared following the parties' conferences of counsel, which took place on September 25, 2020, and October 13, 2020.

# I.  INTRODUCTORY STATEMENTS

## A.    Plaintiffs' Introductory Statement

Plaintiffs object to two of Apple's proposed experts receiving access to Plaintiffs' confidential information: Majid Sarrafzadeh and Steve Warren. Plaintiffs object to Sarrafzadeh because he is a named inventor on pending patent applications relating to the technology at issue.  Plaintiffs object to both Sarrafzadeh and Warren because they conduct research and develop technology in the field of non-invasive monitoring.  Their ongoing research presents an unacceptably high risk of prospective use or disclosure of Plaintiffs' confidential information.  Plaintiffs are not asserting that Sarrafzadeh or Warren intend to violate the Protective Order.   Nor are Plaintiffs' objecting to Sarrafzadeh or Warren based on their past research.   Plaintiffs object to Sarrafzadeh and Warren because they are active researchers, and plan to remain active, in the field.  If given access to Plaintiffs' confidential information, they could not be expected to avoid inadvertently using Plaintiffs' information in their future research and development.

In an effort to compromise and reduce the risk of inadvertent use, Plaintiffs suggested that, for the duration of this case plus two years, Sarrafzadeh and Warren agree not to develop competing technology.  The last

time Apple's counsel designated Warren as an expert in a case against Masimo, the court imposed some limitations on his future research activities.  These restrictions operated much like the patent prosecution bar, which prohibits certain activities for a period of time.  Nonetheless, during the meet-and-confer regarding Warren, Apple's counsel asserted that he did not "think [Warren] should be precluded from doing anything."  Ex. 1 at 2.[1]  Sarrafzadeh and Warren have refused to agree to Plaintiffs' proposed restrictions, confirming that they want to be free to develop competing technology and have access to Plaintiffs' confidential information.

The relevant legal standards support excluding Sarrafzadeh and Warren.  Apple previously argued that an attorney poses an unacceptable risk of inadvertent disclosure if the attorney is in close contact with people who are making competitive decisions.  *See* Dkt. 61-1 at 32-33, 39-40.  This motion is about the much greater risk of disclosing confidential information directly to scientists who are developing technology in the field.  Courts have excluded active researchers from receiving confidential information in litigation because "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."  *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980).

The risk to Plaintiffs from the misuse of their confidential information to develop competing technology outweighs any potential inconvenience to Apple.  These are not the only potential experts in this field.  Indeed, Apple has already engaged two other technical experts to whom Plaintiffs did not object.

During the meet-and-confer, Apple asserted that Plaintiffs' objections were insufficiently tied to details of the experts' specific research projects.

---

[1] All exhibits mentioned in Plaintiffs' section of this joint filing are attached to the Declaration of Ben Katzenellenbogen, filed herewith.

Apple is wrong for numerous reasons.  First, the issue is whether the experts' work presents an unacceptable "risk" of improper use or disclosure, not whether it will necessarily occur.

Second, Plaintiffs specifically identified the future risk to Plaintiffs from the experts' knowledge of Plaintiffs' confidential information, which does not depend on the details of the experts' current research.  For example, Apple asserted that Warren is not ***currently*** working on technology for analyzing blood oxygen saturation and other blood analytes, but has previously done so and ***may resume at any time***.  That establishes a credible risk of harm to Plaintiffs if he were allowed access to Plaintiffs' information.

Third, Apple refused to provide the very details it complains Plaintiffs do not have.  Plaintiffs asked for additional details about the technology that Sarrafzadeh, Warren, and their companies are currently developing.  Apple declined to provide it.  Instead, Apple complained that Plaintiffs have not explained how the specific projects on which Sarrafzadeh and Warren are currently working pose a risk of inadvertent use or disclosure.  Apple appears to argue that it can immunize its experts from objection by providing general disclosures and withholding details of the technology on which the experts are working.

As Apple recently argued in another case, when it was seeking to exclude an opposing party representative from having access to confidential information, "[c]ourts have recognized the high risk of inadvertent use of highly confidential information ***if disclosed to inventors, engineers and scientists***."  *Voice Domain Techs., LLC v. Apple, Inc.*, No. 4:13-cv-40138-TSH, Dkt. 45 (D. Mass. July 17, 2014) (emphasis added) (citing cases holding that, even with the best of intentions, it is not reasonable to expect an inventor to segregate information acquired under a protective order).  The same analysis and considerations apply here.  Apple's experts can either continue to invent and develop technology in

the field, *or* they can access Plaintiffs' confidential information.  They should not be allowed to do both.

## B.    Apple's Introductory Statement

Drs. Sarrafzadeh and Warren are well-respected professors and researchers at prestigious universities.  They are both career academics, having been in academia for the last 33 years and 21 years, respectively, and are world-class experts whose technical expertise is uniquely relevant to the issues in this case.  Sarrafzadeh Decl., ¶ 2; Warren Decl., ¶ 2.  They both are also experienced experts who have signed—and abided by—numerous protective orders in the past, including (in the case of Dr. Warren) on a prior case with Masimo.  They do not work for any of Plaintiffs' competitors and they are not developing any products or services, let alone any products or services that could compete with anything Plaintiffs sell.  Plaintiffs' selective quoting, innuendo, and false dichotomies cannot alter these fundamental, undisputed, and dispositive facts.

*As a threshold matter*, Plaintiffs' allegations that Drs. Sarrafzadeh and Warren pose an "unacceptably high risk" of competitive harm are based on rank speculation and hypotheticals—they point to no facts or caselaw that support preventing either expert from having access to confidential material despite the thorough provisions of the Protective Order, which both experts have signed. Boiled down, Plaintiffs' argument is as follows:  **(1)** anyone who *works or researches* in the same or related general technological field as Plaintiffs is Plaintiffs' competitor or potential competitor, regardless of who they work for or what they do; **(2)** the provisions of the Protective Order are insufficient to protect Plaintiffs because Drs. Sarrafzadeh and Warren cannot help but use the information they learn in this Action to further their concocted "competition" with Plaintiffs; and **(3)** the only way to sufficiently protect Plaintiffs is to force Drs. Sarrafzadeh and Warren to forgo *all research* with respect to any physiological parameter that Plaintiffs monitor (including oxygen saturation and

1   pulse rate), regardless of what that research is or how it is performed.

2        Taken separately, each of these premises are facially erroneous; taken

3   together, they fail the straight-face test.  With regard to Plaintiffs' point **(1)**, not

4   all *work and research* is competitive.  Throughout their motion, Plaintiffs seek

5   to take principles and caselaw from one end of the competitive spectrum

6   (individuals developing products that are commercially competitive) and apply

7   them to the opposite end of that spectrum (Drs. Sarrafzadeh and Warren, who

8   are researchers not developing any products let alone products for Plaintiffs'

9   competitors).[2]  For point **(2)**, Plaintiffs' argument renders the "Scope" limitation

10  of the Protective Order a dead letter—if human minds are unable to cabin

11  knowledge for a particular purpose, as Plaintiffs argue, then there is no point in

12  requiring that "[a]ll Protected Material shall be used solely for this case or any

13  related appellate proceeding."  Dkt. 67 ¶ 5.1.  That is of course not true; Drs.

14  Sarrafzadeh and Warren have agreed to be bound by numerous protective orders

15  in the past and have always complied with them.  Indeed, Dr. Warren *has*

16  *already seen Masimo's confidential information* under a protective order in

17  another case, and Plaintiffs have not asserted that he failed to abide by the

18  protective order in that case.  There is absolutely no reason to believe that these

19  two experts would have any issue complying in this case.  Finally, for point **(3)**,

20  Plaintiffs' proposal that the experts essentially curtail all research efforts in the

21  broad field of physiological parameter monitoring is inherently unreasonable.

22  Indeed, Apple asked Plaintiffs if their technical expert would agree to a similar

23  proposal if the Court deems the Protective Order's protections insufficient, and

24

25        [2] By contrast, Apple recently objected to Plaintiffs' proposed financial
26  expert because his firm has done, and continues to do, a significant amount of
    work for Apple that involves receipt and review of its confidential information.
27  Apple is seeking assurances from Plaintiffs that their proposed expert has not
    had access to, nor will receive access to, Apple's confidential information in
28  those matters.

1    Plaintiffs refused.

2            With respect to Dr. Sarrafzadeh, Plaintiffs also baldly claim that the
3    existence of pending patent applications that list him as inventor renders him
4    incapable of both complying with the Prosecution Bar and satisfying his duties
5    to the Patent Office.  But there is no such tension; the duty of disclosure to the
6    PTO requires only that an inventor disclose prior art material to his invention,
7    which is not implicated by Dr. Sarrafzadeh's review of Plaintiffs' *confidential*
8    information in this case.  By Plaintiffs' logic, any inventor with pending patent
9    applications could not serve as an expert in a patent case in the same field.

10           Finally, Plaintiffs repeatedly claim that Apple "refused" to answer certain
11   questions, which they allege confirm Plaintiffs' suspicions.  None of that is true.
12   Drs. Sarrafzadeh and Warren are professors at public universities—they have
13   nothing to hide about their activities.  The Protective Order does not envision a
14   literally endless exchange of information after an objection is made.   The
15   Protective Order requires an identification of all of the person's past and current
16   employment and consulting relationships in the past five years.  Dkt. 67 ¶ 9.2.
17   The Protective Order also requires that the "Party seeking to disclose Protected
18   Material shall provide such other information regarding the person's
19   professional activities reasonably requested by the Producing Party for it to
20   evaluate whether good cause exists to object to the disclosure of Protected
21   Material to the outside expert or consultant."  *Id.* (emphasis added).  Apple
22   complied with both provisions.   Contrary to Plaintiffs' assertions, Apple
23   continued to answer round after round of follow-up questions long *after*
24   Plaintiffs already objected to Apple's experts.  Only after almost *two months* of
25   follow-up questions—after it became clear that Plaintiffs had no intention of
26   withdrawing their objections—Apple insisted that the parties resolve the
27   dispute.

28   / / /

-6-

## II.  CONTENTIONS AND POINTS OF AUTHORITIES

**A.    Dr. Majid Sarrafzadeh**

      **1.    Plaintiffs' Contentions and Points of Authority**

Under the Protective Order, if a party objects to the disclosure of confidential information to an expert, "[t]he objecting Party shall have the burden of proving the need for a protective order."  Dkt. 67 at ¶ 9.2(c); *see also Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (objecting party bears the burden of establishing risk of disclosure).

As explained below, Sarrafzadeh's pending patent applications in the field and his planned ongoing research and development in the field present an unacceptably high risk of improper use or disclosure of Plaintiffs' confidential information.

        **a.    The Patent Prosecution Bar Prevents Sarrafzadeh from Accessing Confidential Information**

The Protective Order includes a patent prosecution bar.  It states that a person who accesses highly confidential information or source code:

> [S]hall not prepare, prosecute, supervise, advise, counsel, or assist in the preparation or prosecution of any patent application seeking a patent on behalf of the Receiving Party or its acquirer, successor, or predecessor in the field of non-invasive monitoring during the pendency of this Action and for two years after final termination of this action.

Dkt. 67 ¶ 10.  The Protective Order defines the relevant patent field as "non-invasive monitoring."  Dkt. 67, ¶ 10.

Sarrafzadeh is a named inventor on currently pending patent applications in the field of non-invasive monitoring.  For example, Sarrafzadeh is the first named inventor on U.S. Patent App. No. 16/296,018, which is entitled "Apparatus, Systems, and Methods For Tissue Oximetry and Perfusion

Imaging." Ex. 3.  Sarrafzadeh's patent application is not only directed to non-invasive monitoring generally, it is directed to non-invasively measuring oxygen saturation using light.  For example, Sarrafzadeh's patent discloses that it is directed to "[a]n apparatus for monitoring perfusion oxygenation of a target tissue region of a patient, comprising: . . . one or more photodiodes for controlling the emission and reception of light from the sensor array to obtain perfusion oxygenation data associated with the target tissue region." *Id.* at ¶ 0114.

Where, as here, an expert already has pending patent applications in the field, a patent prosecution bar has the effect of preventing the expert from accessing confidential information.  *Univ. of Virginia Patent Found. v. General Electric Co.*, No. 3:14-cv-00051, 2016 WL 379813 at *1, n.1 (W.D. Va. Jan. 29, 2016).  That is because an expert with pending applications likely cannot avoid continuing to prosecute pending applications.  *Id.* (a patent prosecution bar "restricts the patent-related activities of an individual who receives confidential information from a party during litigation, or **limits the receipt of such information** if the individual has already engaged in certain activities" (emphasis added)).

Numerous courts recognize this as the typical effect of a patent prosecution bar.  That is why court opinions addressing experts typically address a request to *exempt* an expert from the bar, and why courts typically deny such requests.  For example, one court recognized that, "[a]llowing experts who prosecute patents themselves to access confidential technical information *without* the protection of a prosecution bar thus poses a tremendous risk of inadvertent disclosure."  *Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc*., No. C-09-02180 SBA DMR, 2011 WL 197811, at *5 (N.D. Cal. Jan. 20, 2011) (emphasis in original).  The court in *Applied Signal* did not expressly address whether it would be possible for an expert with pending

applications in the field to comply with a prosecution bar.  However, the court indicated that at least one potential expert concluded it would not be possible and, therefore, declined to be an expert in the case.  *Id.*  The court observed that such self-recusal "demonstrates that the proposed prosecution bar worked exactly as it should, by preventing an individual who would admittedly be working as a competitive decisionmaker in the same field from having access to [the opponent's] confidential information."  *Id.*

In *University of Virginia*, the proffering party similarly asserted that requiring its expert to agree to the patent prosecution bar "will cause him to forego his work in this case rather than give up his efforts as an inventor." *Univ. of Virginia*, 2016 WL 379813 at *5.  While the court expressed some skepticism as to whether that was necessarily true, the court also remarked that it would be a "feature" of the prosecution bar, not a "bug."  *Id.* (suggesting, for example, that if the party wanted the expert badly enough, it could compensate him for the surrendered patent opportunities).

Here, Sarrafzadeh has not recused himself.  To the extent he can assist Apple without accessing Plaintiffs' confidential information, he may do so. However, under the patent prosecution bar, his being named as an inventor on pending patent applications in the field should preclude him from accessing Plaintiffs' confidential information.[3]

**b.   Apple Does Not Explain How Sarrafzadeh Can Simultaneously Comply With Both The Protective Order And His Duty of Candor To The Patent Office**

Apple refuses to explain how Sarrafzadeh will simultaneously comply with his obligations under the Protective Order and his duty of candor to the

---

[3] Sarrafzadeh's issued patents do not present the same concerns. Sarrafzadeh does not have an ongoing duty to disclose information to the patent office in connection with his issued patents.

1   Patent Office.  Apple makes no attempt to explain what Sarrafzadeh would do
2   if, for example, he identified confidential information from Plaintiffs that could
3   be considered prior art to his own pending patent applications.

4          The Protective Order prevents Sarrafzadeh from using Plaintiffs'
5   confidential information for any purpose other than this litigation, including for
6   "patent prosecution."   Dkt. 67 ¶ 5.1.   It also prevents Sarrafzadeh from
7   "assist[ing] in the preparation or prosecution of any patent application" in the
8   field of non-invasive monitoring.  *Id.* ¶ 10.  The patent laws, however, provide
9   that, as a named inventor, Sarrafzadeh "has a duty of candor and good faith in
10  dealing with the Office, which includes a duty to disclose to the Office all
11  information known to that individual to be material to patentability as defined in
12  this section."  37 C.F.R. § 1.56(a).  "The duty to disclose information exists with
13  respect to each pending claim until the claim is cancelled or withdrawn from
14  consideration, or the application becomes abandoned."  *Id.* at § 1.56(a).

15         Complying with this duty of candor is not a ministerial task.   The
16  Northern District of California recently addressed a case where a party
17  characterized its expert's role in patent prosecution "as being limited to
18  examining prior art and merely 'providing input' on what the prior art
19  discloses."  *Emerson Elec. Co. v. Sipco, LLC*, No. 16-MC-80164-DMR, 2016
20  WL 6833741, at *2 (N.D. Cal. Nov. 21, 2016).  The party argued that analyzing
21  prior art is distinct from competitive decision-making and strategic patent
22  prosecution.  *See id.*  The court held that "[s]uch hair-splitting is unpersuasive."
23  *Id*.  The court identified "investigating prior art relating to . . . inventions" as
24  "substantive patent prosecution work" and held that, "by reviewing prior art and
25  'providing input,' [the expert] is at the very least indirectly affecting the scope
26  or maintenance of [the] patent claims, even if counsel is responsible for using
27  the expert's input to advise the client on the ultimate strategic decisions."  *Id.*

28         Plaintiffs do not understand how Apple proposes that Sarrafzadeh could

-10-

comply with the Protective Order and his duty of candor to the Patent Office. Plaintiffs want to understand Apple's position so all parties can proceed under the same interpretations of the scope of the patent prosecution bar and other restrictions in the Protective Order.  Accordingly, during the meet-and-confer, Plaintiffs asked Apple what Sarrafzadeh would do if he received Plaintiffs' confidential information that he believed he had a duty to submit to the Patent Office.  Ex. 4 at 2-3.  Apple refused to provide any explanation and simply asserted that Sarrafzadeh had agreed to be bound by the Protective Order.  *Id.* Apple made no attempt to explain what Sarrafzadeh would do if, for example, he learns of non-public prior art or other confidential information that refutes, or is inconsistent with, a position taken during prosecution in asserting an argument of patentability or opposing an argument of unpatentability.  *See id.* §1.56(b).

Neither Plaintiffs nor Sarrafzadeh should be placed in a position where Sarrafzadeh potentially has to choose between complying with the Protective Order or breaching his duty of candor to the Patent Office.

### c. Sarrafzadeh's Research and Development Activities Pose an Undue Risk of Competitive Harm

Plaintiffs also object to Sarrafzadeh having access to Plaintiffs' confidential information because his research and development activities pose an unnecessarily high risk of inadvertent use or disclosure.  In addition to his teaching responsibilities at UCLA, Sarrafzadeh assists with health initiatives at UCLA.  Sarrafzadeh is a co-director of UCLA's Center for Systematic, Measurable, Actionable, Resilient and Technology (SMART) Health, which develops and tests health care devices and systems.  *See* Ex. 5 at 1. Sarrafzadeh is also a co-director for the BRITE center and a co-founder of UCLA's Wireless Health Institute (WHI), which is involved in continuous wireless patient monitoring.  *See id.*  Sarrafzadeh has also founded multiple medical device

-11-

1   companies, including MediSens, Bruin Biometrics, and WANDA.  *Id.* at 2.
2   WANDA offers a cloud-based platform to analyze medical information across
3   multiple sources to identify declines in patient health.  Ex. 6.

4        Many of these organizations are involved in research and development
5   that currently or potentially compete with Plaintiffs' continuous wireless patient
6   monitoring and data aggregation technologies.  One such example of Plaintiffs'
7   technology is Masimo Root, a "powerful, expandable patient monitoring and
8   connectivity hub that integrates an array of technologies, devices, and systems
9   to provide multimodal monitoring and connectivity solutions – in a single,
10  clinician-centric platform."  Ex. 7 at 1.  Root works with many Masimo
11  monitors, including the Radius-7 "Wearable Pulse Co-Oximeter for tetherless
12  continuous monitoring." *Id* at 7.

13       Because of the overlap between Sarrafzadeh's research and the
14  technology at issue, Plaintiffs asked for additional information about each
15  organization with which Sarrafzadeh is involved and Sarrafzadeh's role in each
16  organization.  Ex 4 at 4.  Apple stated Sarrafzadeh does not anticipate having
17  any "technical engagement" with each organization in the "foreseeable future."
18  Ex. 8 at 1-2.  However, Apple refused to provide any information about what
19  Sarrafzadeh actually does for each organization.  *Id.*

20       Apple has taken the position that it need not provide specific information
21  until Plaintiffs meet their burden of showing a risk of harm.  Apple cannot
22  withhold information related to the identified risk of harm and then argue
23  Plaintiffs have not met their burden to cite such information.  The Protective
24  Order imposed an obligation to identify Sarrafzadeh's past and present
25  consulting relationships, "including but not limited to," identifying entities for
26  whom Sarrafzadeh "provides consulting services relating to the design,
27  development, operation, or patenting of non-invasive physiological monitoring
28  technologies, or relating to the acquisition of intellectual property assets relating

to non-invasive physiological monitoring."   Dkt. 67 ¶ 9.2(c).   The Protective Order also states that, "[t]he Party seeking to disclose Protected Material **shall** provide such other information regarding the person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside expert or consultant."   *Id.* at 15 (emphasis added).   Apple cannot refuse to provide the requested information and complain that Plaintiffs have not presented the information that Apple withheld.

Apple recently took the opposite position in another case.   In that case, the court told Apple's adversary "that if it wished to persuade the court that [two disputed individuals] should gain access to Apple's sensitive financial and licensing information, [the adversary] would **need to provide detailed information about their duties** . . . ."   *THX, Ltd. v. Apple, Inc*., No. 13-cv-01161-HSG-DMR, 2016 WL 2899506, at *4 (N.D. Cal., May 13, 2016) (emphasis added).   However, Apple's adversary "who is in sole possession of this information, [] remained vague."   *Id.*   The court analyzed the limited disclosures that were provided and concluded that granting the disputed individuals access to Apple's confidential information risked putting Apple at a competitive disadvantage.   *Id.*   The Court should reach the same conclusion here.

Regardless, the information Apple provided indicates Sarrafzadeh is actively involved "in the field of non-invasive monitoring," which is the relevant technical field set forth in the Protective Order.   *See* Dkt. 67 ¶ 10.   That raises a legitimate concern about Sarrafzadeh's plans to engage in future research regarding competing technology.   The Northern District of California has observed that, "[a] review of the relevant case law supports a finding that [an expert's] ongoing work in the field of [the litigation] creates a substantial risk and that absent a showing that [the expert] possesses unique expertise he

-13-

should not be allowed access to [a party's] highly confidential information." *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC JSC, 2012 WL 3582974, at *3 (N.D. Cal. Aug. 20, 2012). The court noted that, "[n]either the parties nor the Court on its own have been able to identify a case within the Ninth Circuit where a party's objections to an expert were overruled where that expert actively consulted in the very field at issue." *Id.* at n.1. The court added that sustaining the objections did not effectively allow veto power with respect to the other side's experts. *Id.* The court found it was entirely reasonable to insist that litigants retain technical experts who do not work for or consult with competitors in the field of the litigation. *Id.*

The Northern District reached this conclusion without requiring a specific identification of the exact competing technology on which the expert was currently working. Plaintiffs need to establish a "risk" of inadvertent disclosure or competitive use, not that a violation of the Protective Order is imminent or certain. *See Applied Signal*, 2011 WL 197811, at *5 ("*Deutsche Bank* does not hold that the party seeking a prosecution bar must show actual evidence that an individual will ignore a protective order"). Nor is there any requirement that Plaintiffs establish Sarrafzadeh or his companies are directly competing with Plaintiffs. One court observed that it was unable to find "any cases to suggest that the disclosure of proprietary information to an opposing patent inventor would be appropriate merely because the parties were not currently direct competitors . . . ." *Tailored Lighting, Inc. v. Osram Sylvania Prod., Inc.*, 236 F.R.D. 146, 149 (W.D.N.Y. 2006) (refusing to allow opposing party's president and inventor of the asserted patent to have access to confidential information, including because the inventor licenses the patent to a direct competitor).

Sarrafzadeh's pending patent applications in the field exacerbate the risk of competitive harm to Plaintiffs. *See Univ. of Virginia*, 2016 WL 379813, at *4 ("The contention that a foremost mind in the fiercely competitive and lucrative

field of medical technology does not act as a 'competitive decisionmaker' when inventing new technologies and seeking their patent protection is not sustainable."); *Applied Signal*, 2011 WL 197811, at *5 ("an expert witness who prepares or applies for patents themselves is undoubtedly a competitive decisionmaker").

Moreover, the risk is not merely that Sarrafzadeh will use Plaintiffs' information in his current work, but that he may inadvertently use it in his future work. "As individuals cannot simply purge selected information from their memory, the risk is that they may ***later*** use the knowledge gained from the confidential material, however inadvertently, in the prosecution of future patents." *Applied Signal*, 2011 WL 197811, at *3 (emphasis added). Courts consider an expert's current work as well as the scope of their future work. Once an expert has acquired knowledge, it "cannot be 'unlearned' or utilized only on a selective basis." *Digital Equip. Corp. v. Micro Tech., Inc.*, 142 F.R.D. 488, 492 (D. Colo. 1992); *see also Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988) ("Mr. Greene is a man of great moral fiber, we nonetheless question his human ability during future years of research to separate the applications he has extrapolated from Sundstrand's documents from those he develops from his own ideas.").

As discussed above, Sarrafzadeh works with several companies that compete or may compete against Plaintiffs, including in the fields of continuous patient monitoring and data aggregation. Indeed, Sarrafzadeh has a long history of designing and developing medical devices. Sarrafzadeh would be able to develop competing technology using Plaintiffs' information without expending the resources that Plaintiffs invested in developing their innovative products. The Court should not allow such an unfair result. *See Symantec*, 2012 WL 3582974, at *3.

/ / /

### d. The Risks to Plaintiffs Outweigh any Harm to Apple

Courts also balance the risk of inadvertent use or disclosure against the potential harm to the non-movant from restricting its choice of experts. As the party seeking disclosure, Apple bears the burden to show that there is a dearth of experts in the field or that Apple will be seriously prejudiced by the exclusion of these particular experts. *See Applied Signal*, 2011 WL 197811, at *5; *Emerson Elec.*, 2016 WL 6833741, at *5 (party seeking access bears the burden of establishing that the injury from restrictions imposed on its choice of expert exceeds the risk of inadvertent use).

As the court explained in *Applied Signal*, the typical "concerns about the potential injury" from denying a party their "choice of counsel" are not present when excluding experts. 2011 WL 197811 at *5 ("Requiring a party to replace counsel with whom they may have a longstanding relationship 'creates a much greater burden than requiring a party to hire different experts.'") In that case, the court noted that the party had "already been able to retain two experts" and made "no showing that there is a dearth of experts in the field . . .." *Id.*

Similarly, Apple cannot show an absence of other acceptable experts. As in *Applied Signal*, Apple has already retained and cleared two technical experts under the Protective Order other than Sarrafzadeh and Warren. Apple has not articulated any way in which other experts would be less useful than Sarrafzadeh. Ex. 4 at 5. During the meet-and-confer, Plaintiffs asked if there was anything specific about Sarrafzadeh's background on which Apple would seek to rely. *Id.* Apple declined to identify anything specific, instead relying on the entirety of his background as a whole. *Id.* Accordingly, Apple has not identified any prejudice that would outweigh the risk of inadvertent disclosure or misuse of Plaintiffs' information. The Court should exclude Sarrafzadeh from accessing Plaintiffs' confidential information.

/ / /

**e.**     **For a Technical Expert that is Active in the Field, Agreeing to Refrain from Intentionally or Knowingly Misusing Confidential Information Is Not Sufficient**

During the meet-and-confer, Apple asserted that Sarrafzadeh's agreement to be bound by the Protective Order automatically resolves Plaintiffs' objections.  If that were true, there would be no reason for the Protective Order to provide for objections to experts because all experts agree to be bound by the Protective Order.  There would also be no reason for the patent prosecution bar, because the Protective Order would preclude misuse of the information.  One court specifically held that an expert offering to "sign the Protective Order" and "send drafts of proposed articles relating to [the technology at issue] to Defendant prior to publication" were insufficient to "meaningfully address the risk" posed by a technical expert who was active in the field.  *Symantec*, 2012 WL 3582974, at *3, n.2.  The concern is the "potential unconscious, but improper, use of technical information in the future."  *Tehrani v. Polar Elecs. Inc.*, No. SACV051113DOCRNBX, 2006 WL 8435287, at *2 (C.D. Cal. Nov. 8, 2006) (identifying various risks including incorporating adversary's confidential information "into derivative patents").

In light of the risk that Sarrafzadeh will inadvertently use Plaintiffs' confidential information due to his current and future research and development, as evidenced by his own patents in the field, Sarrafzadeh should not have access to Plaintiffs' confidential information unless he agrees to additional restrictions to limit the risk to Plaintiffs.  Plaintiffs asked Sarrafzadeh to agree that, for the duration of this case plus two years:

> He will not directly research or develop, or supervise those who are researching or developing, technology for measuring ECG, respiration from the pleth, oxygen saturation, or any other parameter measured by Rainbow SET; … .

-17-

1  Ex. 9 at 1-2.  Sarrafzadeh refused.  *Id.* at 1.

2         Sarrafzadeh's refusal seems to lead to two possibilities: Sarrafzadeh will

3  work on developing competing technologies after receiving Plaintiffs'

4  confidential information, or he will not.  If he does not, then there would be no

5  harm (or any effect at all) in agreeing to the proposed restrictions.  However, if

6  he does engage in such activities, then he would pose an unnecessarily high risk

7  of improper use or disclosure.  Thus, Sarrafzadeh's current and future work in

8  the field of non-invasive monitoring presents too great a risk of misuse of

9  Plaintiffs' information.

10        In light of Apple's inability to explain how Sarrafzadeh proposed to

11  comply with the terms of the Protective Order and his duty of candor to the

12  Patent Office, Plaintiffs also asked him to confirm his understanding of the

13  patent prosecution bar.  Plaintiffs specifically asked him to confirm that:

14              His agreement to Paragraph 10 of the Protective Order includes,

15              but is not limited to, his agreement that he will not: (a) file, or

16              assist in the filing of, any new patent application naming him as an

17              inventor that relates to such technology; or (b) analyze or identify

18              for disclosure to the Patent Office any potential prior art in

19              connection with any patent or patent application naming him as an

20              inventor that relates to such technology.

21  Ex. 9 at 1-2.  Sarrafzadeh's refusal to agree highlights that Apple is interpreting

22  the patent prosecution bar somehow more liberally than Plaintiffs.  Apple has

23  refused to explain how they think the prosecution bar would allow the conduct

24  Plaintiffs contend would be prohibited.  Thus, allowing Sarrafzadeh access to

25  Plaintiffs' confidential information would place him in an untenable position

26  with respect to any Plaintiffs' confidential information that he acquired in this

27  litigation and determined was material to his pending patent application.

28        Accordingly, the Court should grant Plaintiffs' request and prevent

-18-

Sarrafzadeh from accessing Plaintiffs' confidential information unless he is subject to additional reasonable restrictions.

### 2. **Apple's Response**

The Protective Order sets forth thorough provisions to limit the risk of improper use or disclosure, inadvertent or otherwise, of each party's confidential information.  For example, the Protective Order limits the purposes for which confidential information can be used (Dkt. 67 ¶ 5.1), prescribes that such information be clearly identified with a "Confidentiality legend" (*id.* ¶ 7.2), limits who may access confidential information (*id.* ¶ 9), and forbids the patent-related activities of individuals who receive certain information in its Prosecution Bar (*id.* ¶ 10).  Both of the experts who are the subject of this stipulation have agreed to be bound by all of the Protective Order's provisions. Neither has requested any exemptions.

Plaintiffs thus bear the burden of showing that the provisions are insufficient to safeguard their confidential information—they have "the burden of proving the need for a protective order."  *Id.* ¶ 9.2.  Federal Rule 26(c) provides that the party seeking a protective order must establish "good cause." *See also id.* (stating that additional information about an expert may be provided to the Producing Party "for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside expert or consultant").  The Ninth Circuit has elaborated on the "good cause" standard, reasoning that it requires a "showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

Plaintiffs fall well short of satisfying their burden.  Apple addresses each

of Plaintiffs' arguments below.  As an initial matter, however, Apple notes that none of the cases Plaintiffs cite support their repeated claims that highly qualified experts who are *not working on competing products* should nevertheless be excluded or that Apple has taken contrary positions with respect to disclosures required for expert witnesses.  The cases that Plaintiffs often rely on for these propositions are readily distinguishable:

- In *University of Virginia Patent Foundation v. General Electric Co.*, No. 3:14-cv-00051, 2016 WL 379813 (W.D. Va. Jan. 29, 2016), *Applied Signal Tech., Inc. v. Emerging Markets Comms., Inc.*, No. C-09-02180, 2011 WL 197811 (N.D. Cal. Jan. 20, 2011), and *Emerson Electric Co. v. SIPCO, LLC*, No. 16-80164, 2016 WL 6833741 (N.D. Cal. Nov. 21, 2016), the disputes were whether an expert should be subject to a prosecution bar.  2016 WL 379813, at *1; 2011 WL 197811, at *1; 2016 WL 6833741 at *1.  That is a non-issue here:  Drs. Sarrafzadeh and Warren have agreed to be bound by the Prosecution Bar.  Moreover, in all three cases, the experts were found to be "competitive decisionmakers" based on their involvement in patent prosecution or IPR strategy.  2016 WL 379813, at *1; 2011 WL 197811, at *3; 2016 WL 6833741, at *4.  Plaintiffs have not and cannot allege that Drs. Sarrafzadeh or Warren do anything similar.

- *Symantec Corp. v. Acronis Corp.*, No. 11-5310, 2012 WL 3582974 (N.D. Cal. Aug. 20, 2012) is even farther afield—the expert was objected to "because he actively consults on product development and publishes on product comparison in the field of virtualization."  Id. at *2.  Drs. Sarrafzadeh and Warren do not consult on any product development and certainly not on any products that might compete with Plaintiffs' products.

- Plaintiffs repeatedly assert that Apple's position in this case conflicts with

-20-

positions it took in two other cases, namely *Voice Domain Techs., LLC v. Apple, Inc.*, No. 4:13-cv-40138, Dkt. 67 (D. Mass. July 17, 2014) and *THX, Ltd. v. Apple, Inc.*, No. 13-cv-01161, 2016 WL 2899506 (N.D. Cal. May 13, 2016). The circumstances here are not even remotely similar to those cases. In *Voice Domain*, the purported expert was the sole employee of Apple's party opponent and prosecuted the asserted patents, and thus clearly was a competitive decisionmaker. *Voice Domain Techs., LLC* at 1-2. In *THX*, Apple moved to preclude disclosure to in-house counsel of Apple's party opponent who was also involved in licensing negotiations. 2016 WL 2899506, at *3-4. The facts in these cases are not even remotely similar to the facts presented here.

Plaintiffs' allegations are unsupported in caselaw or in the record and instead amount to speculation and innuendo. Plaintiffs thus fall well short of meeting the "good cause" standard.

### a. Dr. Sarrafzadeh Is a Highly Respected Academic Professor Who Poses No Viable Risk of Competitive Harm

Plaintiffs assert that permitting Dr. Sarrafzadeh access to their confidential information without additional precautions would allow Dr. Sarrafzadeh "to develop competing technology using Plaintiffs' information without expending the resources that Plaintiffs invested in developing their innovative products." Joint Stipulation ("J.S.") at 15. Dr. Sarrafzadeh is a well-respected professor and researcher who has been in academia for the last 30 years, first at Northwestern University and now at UCLA. Ex. 5 at 63. He is not, nor is he employed by, a competitor of Plaintiffs. Nor is he developing or planning to develop any products at all, let alone products that might compete with Plaintiffs' products.

In the initial identification of Dr. Sarrafzadeh, Apple told Plaintiffs that

-21-

Dr. Sarrafzadeh is not an "employee of … a competitor of a party to this litigation, nor is he anticipated to become an … employee of … a competitor of a party to this litigation" and that he is also "not involved in competitive decision making on behalf of … a competitor of a party to this litigation." Ex. 4 at 60. Plaintiffs have never challenged that representation, nor would they have any basis for doing so. The Protective Order does not define a "competitor," but courts in the Ninth Circuit have defined a competitor as an entity who sells goods or services in the same market as another. *See Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-CV-05847-WHO, 2015 WL 1744330, at *10 (N.D. Cal. Apr. 15, 2015) (collecting cases). Under that definition, or any other reasonable definition of "compete," Dr. Sarrafzadeh is not Plaintiffs' competitor (nor anyone else's competitor for that matter); he is a professor and researcher who is *not currently developing, marketing, or selling any products or services nor does he have any plans to do so*. Sarrafzadeh Decl., ¶ 2. Despite that fundamental and undisputed fact, Plaintiffs have tried to concoct a speculative case of competitive harm where no such harm exists. All of those efforts fail.

*First*, Plaintiffs state that Dr. Sarrafzadeh "assists with health initiatives at UCLA" and cite Dr. Sarrafzadeh's work with: (1) Systematic, Measurable, Actionable, Resilient and Technology (SMART) Health; (2) the BRITE center; (3) UCLA's Wireless Health Institute (WHI); (4) MediSens; (5) Bruin Biometrics; and (6) WANDA. J.S. at 11-12. According to Plaintiffs, these organizations are "involved in research and development that currently or potentially compete with Plaintiffs' continuous wireless patient monitoring and data aggregation technologies." *Id*. at 12. But as Apple has explained to Plaintiffs, Dr. Sarrafzadeh's affiliations with these six organizations pose no threat of competitive harm to Plaintiffs. As Apple explained, for at least the last year, Dr. Sarrafzadeh has not had *any* technical discussions/activities with any

of these organizations, and he does not expect any technical engagement with them in the foreseeable future.  Ex. 1 at 9.  And while Plaintiffs cite the "Masimo Root" product, Plaintiffs conspicuously fail to even allege that any of these six organizations develop, market, or sell products or services that compete with Masimo Root (or any other of Plaintiffs' products).  Indeed, Plaintiffs do not even assert what activities of three of the six organizations (MediSens, BRITE, and Bruin Biometrics) might be objectionable.  And while Plaintiffs generally (and conclusorily) recite the activities of the other three organizations, Apple told Plaintiffs that Dr. Sarrafzadeh is "unaware of [the] current activities" of two of these organizations, *i.e.*, SMART Health and UCLA WHI.  *Id.*  As for the final organization, WANDA, Apple told Plaintiffs that this organization was "sold last year" and that "Dr. Sarrafzadeh has had no technical discussions/activities with them in at least the past year and does not expect any technical engagement with them in the foreseeable future."  *Id.*  Thus, to the extent Dr. Sarrafzadeh is even still involved with the six organizations that Plaintiffs cite, that involvement poses no threat of competitive harm and Plaintiffs have not identified anything remotely suggestive of such harm.

*Second*, unable to identify a concrete risk of competitive harm, Plaintiffs resort to innuendo.  Plaintiffs assert that "Apple has taken the position that it need not provide specific information until Plaintiffs meet their burden of showing a risk of harm."  J.S. at 12.  Tellingly, Plaintiffs do not cite anything to support this allegation.  Indeed, elsewhere, Plaintiffs go so far as to assert that uncertainty regarding an expert's work should be "resolved against Apple and in favor of denying access to Plaintiffs' confidential information."  *Id.* at 38-39.

To be clear—Dr. Sarrafzadeh has nothing to hide.  He is a professor at a public research university (UCLA) and has a publicly available webpage that lists his research interests and projects and links to both his publications and his research lab, *i.e.*, http://web.cs.ucla.edu/~majid/ (last visited Oct. 24, 2020).

Contrary to Plaintiffs' allegations (J.S. at 12-13) and as established above, Apple is not required to answer every endless follow-up question that Plaintiffs might have.  Indeed, the questions that Plaintiffs say Apple refused to answer were asked 31 days *after* Plaintiffs had already decided that good cause allegedly existed to object to Dr. Sarrafzadeh.  *Compare* Ex. 4 at 52 *with id.* at 59.  Even more telling, Plaintiffs' email objecting to Dr. Sarrafzadeh did not set forth *any* indication that Plaintiffs needed more information before they decided they had good cause to object; instead, Plaintiffs' email stated:  "Plaintiffs *cannot agree* to allow Dr. Sarrafzadeh to review Plaintiffs' proprietary technology."  *Id.* at 59 (emphasis added).  The extent to which Apple went to resolve Plaintiffs' objections and provide additional information is illustrated in the timeline below:

- On **August 18**, Apple disclosed Dr. Majid Sarrafzadeh as an expert witness per Section 9.2(c) of the Protective Order. Ex. 4 at 59-60.

- On **August 31**, the last day for objections, Plaintiffs objected to Dr. Sarrafzadeh. *Id.* at 58-59.

- On **September 9**, after Apple's many requests for Plaintiffs to explain their objections and identify which "specific experiences of Dr. Sarrafzadeh's Plaintiffs are objecting to" (*id.* at 57-59), Plaintiffs provided some additional detail. *Id.* at 56.

- On **September 17**, Apple provided additional information in response to Plaintiffs' concerns (*id.* at 55), and the parties met and conferred on **September 25**.

- On **October 1**, nearly a month *after they had already objected*, Plaintiffs asked Apple a series of further follow-up questions.  *Id.* at 52-53.

- On **October 2**, Apple responded to Plaintiffs' follow-up questions, explaining for example that Dr. Sarrafzadeh had "no involvement in

technical discussions or activities for any of the organizations" that Plaintiffs asked about in their October 1 email. *Id.* at 51-52.

- On **October 4**, Plaintiffs asked still more questions. *Id.* at 50-51.

- On **October 7**, Apple told Plaintiffs that Apple had "accommodated your numerous requests for additional information and have already provided far more than what the Protective Order requires for disclosing experts. Your requests for additional information are unreasonable, and we are not willing to continue to request additional information from Dr. Sarrafzadeh." *Id.* at 49.

- On **October 8**, Plaintiffs wrote back, stating that "[b]ecause Apple refuses to engage in further discussion, Plaintiffs will maintain their objections to Dr. Sarrafzadeh for the reasons discussed in the conference of counsel and this email chain." *Id.*

Despite not being required to do so, Apple answered round after round of Plaintiffs' follow-up questions. For example, after the parties' meet-and-confer, Apple followed up with Dr. Sarrafzadeh and then explained to Plaintiffs that he is minimally (if at all) involved with the six organizations that Plaintiffs identified as being potentially problematic. Ex. 1 at 9. Apple further confirmed that Dr. Sarrafzadeh is not involved in any technical consulting with any of the six organizations. *Id.*

Plaintiffs further assert that "Apple recently took the opposite position in another case," namely *THX, Ltd.*, 2016 WL 2899506. J.S. at 13. That is incorrect. As noted above, *THX* relates to *in-house counsel*. 2016 WL 2899506, at *4. The Protective Order distinguishes between "officers, directors, and employees (including House counsel)" and "Experts." Dkt. 67 ¶¶ 9.2(b), (c). Thus, any position on what disclosure was required of *in-house counsel* in the *THX* decision does not apply to what disclosures are required for *experts* in this case. In addition, in *THX*, Apple affirmatively argued that the individuals in

-25-

question were "engaged in competitive decision-making" for a party to the litigation.   2016 WL 2899506, at *4.   But here, Apple confirmed that Dr. Sarrafzadeh is not "involved in competitive decision making on behalf of a party to this litigation or a competitor of a party to this litigation."   Ex. 4 at 60. Plaintiffs have never disputed that representation.   Additionally, in this case Apple has provided detailed information about Dr. Sarrafzadeh, both through the disclosures required by the Protective Order, and Apple's willingness to answer Plaintiffs' follow-up questions.

*Third*, Plaintiffs argue that "the information Apple provided indicates Sarrafzadeh is actively involved 'in the field of non-invasive monitoring,'" and that this allegedly "raises a legitimate concern about Sarrafzadeh's plans to engage in future research regarding competing technology."   J.S. at 13.   Even if that were true, Plaintiffs' argument is based on rank speculation—Plaintiffs offer no explanation as to how hypothetical future *research* could cause any competitive harm.   Indeed, as noted above, Dr. Sarrafzadeh has no plans to develop products or services.   For support, Plaintiffs cite *Symantec*, but as noted above, that case supports Apple, not Plaintiffs.   *See* J.S. at 13-14.   As relevant here, the court in *Symantec* expressly limited its ruling to a consultant who "actively consult[ed] with [a party's] competitors."   2012 WL 3582974, at *3. *Symantec* therefore cannot apply in this case where there is no showing whatsoever that Dr. Sarrafzadeh is engaged in technical consulting with any of Plaintiffs' competitors.   Indeed, the objecting party in *Symantec* grounded its objection on the fact that the consultant "actively consults on product development and publishes on product comparison."   *Id.* at *2.   Plaintiffs have not, and cannot in good faith, make a similar allegation with respect to Dr. Sarrafazadeh.

*Fourth*, and tellingly, Plaintiffs are highly selective when they quote from cases that they allege support their allegations.   None of those cases actually

-26-

1    support Plaintiffs.

2    • Plaintiffs cite *Applied Signal* for the proposition that Plaintiffs only

3      need to "establish a 'risk' of inadvertent disclosure or competitive use,

4      not that a violation of the Protective Order is imminent or certain."

5      J.S. at 14. But *Applied Signal* concerns only whether a prosecution

6      bar was appropriate. *See, e.g.*, 2011 WL 197811, at *1. That case did

7      not consider what standard the objecting party must meet before an

8      expert is completely barred from access to confidential information,

9      and it certainly did not hold that a mere "risk" of inadvertent

10      disclosure or competitive use—which is present whenever confidential

11      information is produced—is sufficient to bar disclosure.

12    • Plaintiffs cite *Tailored Lighting, Inc. v. Osram Sylvania Prod., Inc.*,

13      236 F.R.D. 146, 149 (W.D.N.Y. 2006) for the proposition that

14      Plaintiffs need not establish that Dr. Sarrafzadeh *directly* competes

15      with Plaintiffs. J.S. at 14. *Tailored Lighting* is inapposite—that case

16      precludes disclosure to the president of the party opponent who

17      licensed the patent-in-suit to the disclosing party's direct competitor.

18      236 F.R.D. at 148-49. Plaintiffs cannot allege that Dr. Sarrafzadeh

19      directly or indirectly competes with Plaintiffs nor can they allege that

20      he has *any* relationship with any of Plaintiffs' competitors, let alone

21      one like the relationship at issue in *Tailored Lighting*.

22    • Plaintiffs cite *University of Virginia* and *Applied Signal* for the

23      proposition that Dr. Sarrafzadeh's "pending patent applications in the

24      field exacerbate the risk of competitive harm to Plaintiffs." J.S. at 14-

25      15. But as noted above, both of these decisions found that a

26      prosecution bar—which Dr. Sarrafzadeh *has agreed to*—sufficiently

27      addresses concerns relating to pending patent applications. 2016 WL

28      379813, at *5-6; 2011 WL 197811, at *5.

- Plaintiffs cite three decisions to support their argument that "the risk is not merely that Sarrafzadeh will use Plaintiffs' information in his current work, but that he may inadvertently use it in his future work." J.S. at 15.  But none of those decisions holds that such "risk" must be zero, particularly where the expert is not the objecting party's competitor.  *Applied Signal*, 2011 WL 197811, at *4-5 (permitting retention of expert witnesses subject to the imposition of a prosecution bar); *Digital Equip. Corp. v. Micro Tech., Inc.*, 142 F.R.D. 488, 491-92 (D. Colo. 1992) (finding that expert's ongoing service as a "consultant … in connection with [competitor-receiving party's] patent licensing activities" "precludes him from being categorized as an 'independent expert'"); *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988) (precluding disclosure of confidential information to direct competitor's president where receiving party refused to "curtail his future research of [the subject matter of the litigation]" and had "yet to investigate the availability of qualified outside experts").

### b.    The Prosecution Bar Sufficiently Protects the Plaintiffs

Plaintiffs assert that "[w]here, as here, an expert already has pending patent applications in the field, a patent prosecution bar has the effect of preventing the expert from accessing confidential information."  J.S. at 8.  Plaintiffs are wrong for at least three reasons.

*First*, the Protective Order's Prosecution Bar poses no issue for Dr. Sarrafzadeh.  The Prosecution Bar states that individuals who receive certain types of confidential information (*i.e.*, the "Receiving Party") "shall not prepare, prosecute, supervise, advise, counsel, or assist in the preparation or prosecution of any patent application seeking a patent *on behalf of the Receiving Party or its acquirer, successor, or predecessor* in the field of non-invasive monitoring …."

-28-

Dkt. 67 ¶ 10 (emphasis added).  As noted above, Dr. Sarrafzadeh is a researcher at a public university.  He has not applied for, nor does he have any plans to, apply for a patent on behalf of himself (or any successor or predecessor in interest).  Sarrafzadeh Decl., ¶ 5.  Although Dr. Sarrafzadeh is named as an inventor on several patent applications, all such applications have been assigned to his employer.  *Id.*[4]

*Second*, the Prosecution Bar does not bar disclosure to anyone named as an inventor in a pending application.  Plaintiffs attempt to argue that the Prosecution Bar has this "effect" because "an expert with pending applications likely cannot avoid continuing to prosecute pending applications."  J.S. at 8. However, Plaintiffs fail to explain why an individual named as an inventor *must* engage in any of the activities set forth in the Prosecution Bar.  There is no requirement—and Plaintiffs cite none—that a named inventor must "prepare, prosecute, supervise, advise, counsel, or assist in the preparation or prosecution of any patent application."  Dkt. 67 ¶ 10.  Moreover, Dr. Sarrafzadeh has explicitly confirmed that he has agreed to the Prosecution Bar.  Sarrafzadeh Decl., ¶ 5.  Thus, he will not "prepare, prosecute, supervise, advise, counsel, or assist in the preparation or prosecution of any patent application" in the field of non-invasive monitoring for the term of the prosecution bar.  Dkt. 67 ¶ 10.  As the Northern District of California recently reasoned, Dr. Sarrafzadeh's representations—which Plaintiffs have no reason to dispute—completely address Plaintiffs' concerns regarding compliance with the Prosecution Bar. *GPNE Corp. v. Apple Inc*., 2014 WL 1027948, at *2 (N.D. Cal. Mar. 13, 2014) ("The language of the order requires that the individual not participate in the

---

[4] Per the Prosecution Bar, Dr. Sarrafzadeh may not use confidential information from this Action in the prosecution of those applications that name him as an inventor.  Dr. Sarrafzadeh is still subject to, for example, the "Scope" provision that limits use to "this case or any related appellate proceeding, and not for any other purpose whatsoever."  Dkt. 67 ¶ 5.1.

1  drafting, amending, advising, or maintenance of a patent application before the
2  PTO after they are granted access to 'attorney's eyes only' information under
3  the protective order.  [Here, the expert] has indicated that he is willing to forego
4  any such involvement with the applications that he has pending, and particularly
5  because many of the patents involved appear to be assigned to other entities, the
6  court has no reason to discredit that representation.").

7      Plaintiffs' suggestion that any expert that has pending applications in the
8  field of a case can *by definition* not qualify under a standard protective order in a
9  patent case is absurd.

10     *Third*, the cases that Plaintiffs cite (J.S. at 8-9) support Apple—they show
11 that a Prosecution Bar sufficiently addresses the producing party's concerns
12 regarding a receiving party's pending applications.  *Univ. of Virginia*, 2016 WL
13 379813, at *5 ("If an attorney's ability to: influence a client's (i.e., inventor's)
14 'product design'; receive 'disclosure material for new inventions and inventions
15 under development'; make 'strategic decisions' regarding the patent application,
16 and; have an 'opportunity to control' the patent application's content all mean
17 he should be subject to a prosecution bar … then logically the inventor himself
18 should be." (internal citation omitted)); *Applied Signal*, 2011 WL 197811, at *5
19 ("Allowing experts who prosecute patents themselves to access confidential
20 technical information *without* the protection of a prosecution bar thus poses a
21 tremendous risk of inadvertent disclosure." (emphasis in original)).  That certain
22 individuals in each of those cases determined, on their own, that they could not
23 comply with the prosecution bar does not, of course, mean that it is *impossible*
24 for a person named as an inventor on pending applications to comply.

25     Accordingly, Plaintiffs' assertion that the presence of the Prosecution
26 Bar—which, again, Dr. Sarrafzadeh has agreed to and has not sought exemption
27 from—somehow has the "effect" of preventing him from accessing confidential
28 information should be rejected.

-30-

### c.    Plaintiffs Manufacture Tension between the Protective Order and Dr. Sarrafzadeh's Duties to the Patent Office

Plaintiffs assert that "Apple refuses to explain how Sarrafzadeh will simultaneously comply with his obligations under the Protective Order and his duty of candor to the Patent Office." J.S. at 9-10.  There is no such tension.  As one court recently reasoned, Dr. Sarrafzadeh "would only violate his duty to the PTO under Rule 1.56 if he were exposed to *public information that was material to the patentability of his claims*."  *GPNE Corp.*, 2014 WL 1027948, at *2 (emphasis added).  Public information, however, cannot be designated as confidential under the Protective Order and thus is irrelevant to Dr. Sarrafzadeh's duties under the Protective Order.  *See id.* ("There is—or should be—no greater risk of [the expert] encountering such information under the 'confidential—attorney's eyes only' designation than anywhere else.").

In an effort to escape this straightforward conclusion, Plaintiffs refer to "non-public prior art or other confidential information that refutes, or is inconsistent with, a position taken during prosecution in asserting an argument of patentability or opposing an argument of unpatentability." J.S. at 11.  The existence of such material is purely speculative.  For example, it is unclear what (if any) non-public or confidential information would constitute prior art and/or how such information could possibly be "inconsistent with[] a position taken during prosecution."

Moreover, Plaintiffs again resort to innuendo, repeatedly asserting that "Apple refuses" to explain what Dr. Sarrafzadeh would do if his duties under the Protective Order and to the PTO conflict.  That is not true—what Apple has refused to do is answer Plaintiffs' numerous hypotheticals that are completely untethered to any facts in this case.  Nothing in the Protective Order's requirements for expert disclosures requires Apple to engage in such speculation.

Finally, it should be noted that Plaintiffs' expert Dr. Madisetti would similarly be in a position where he has to choose "between complying with the Protective Order or breaching his duty of candor to the Patent Office" (J.S. at 14).  Dr. Madisetti is listed as an inventor of U.S. Patent Application Publication No. 2020/0202039 ("the '039 Application"), which relates to "cloud databases and cloud storage services where confidential and sensitive information are stored, more specifically, to systems and methods for securing cloud storage and databases from insider threats and optimizing performance."  Ex. A at 21.[5]  Dr. Madisetti may be asked to analyze "non-public prior art or other confidential information that refutes, or is inconsistent with, a position taken during prosecution in asserting an argument of patentability or opposing an argument of unpatentability" with respect to the '039 Application.  Indeed, in the course of discovery, Plaintiffs demanded that Apple produce documents showing all of the storage devices that store physiological parameter information and what physiological parameter information is stored in each such device.  Apple did not ask Plaintiffs to explain how Dr. Madisetti would comply with his duties under the Protective Order and to the Patent Office if any of the materials that Apple disclosed were relevant to the '039 Application because that question is speculative and frankly irrelevant to whether an expert is objectionable.  Dr. Madisetti agreed to be bound by the Protective Order—as did Dr. Sarrafzadeh—and Apple expects that he will abide by that agreement.

Tellingly, Plaintiffs are unable to cite any cases that actually support their argument.  While Plaintiffs cite *Emerson Electric* (*see* J.S. at 10), that case expressly does not apply here.  In *Emerson Electric*, the court found that an

---

[5] All alphabetically labelled exhibits in Apple's sections refer to the exhibits attached to the Declaration of Brian Andrea, filed herewith.  All numerically labelled exhibits in Apple's sections refer to exhibits attached to the Declaration of Ben Katzenellenbogen.

expert's review of prior art cited in an IPR pertaining to one of the expert's patents and providing input to IPR counsel fell within the activities prohibited by the prosecution bar in that case.  2016 WL 6833741, at *5.  Here, there is no allegation that Dr. Sarrafzadeh is reviewing prior art cited in the prosecution of any application, nor is there an allegation that he is providing any input about prior art.

Accordingly, aside from conjecture detached from the facts of this case, Plaintiffs provide nothing to support their contention that Dr. Sarrafzadeh's duties under the Protective Order would conflict with his duties to the Patent Office.

### d.   <u>Precluding Apple from Engaging Dr. Sarrafzadeh Would Be Unduly Prejudicial</u>

Plaintiffs erroneously assert that "Apple bears the burden to show that there is a dearth of experts in the field or that Apple will be seriously prejudiced by the exclusion of these particular experts."  J.S. at 16.  Plaintiffs' allegation is contradicted by their earlier acknowledgement that the Protective Order places the burden on Plaintiffs.  J.S. at 7.  The only authority that Plaintiffs cite to support their argument are the *Applied Signal* and *Emerson Electric* cases.  *Id.* But in both of those cases, the burden shifting was the result of the courts determining that the expert at issue was involved in "competitive decisionmaking."  *Applied Signal*, 2011 WL 197811, at *3; *Emerson Elec.*, 2016 WL 6833741, at *3.  Plaintiffs have not even alleged (let alone proved) that Dr. Sarrafzadeh is involved in competitive decisionmaking.

Despite not bearing the burden, the record shows that Apple would be materially prejudiced by not being able to retain Dr. Sarrafzadeh.  Dr. Sarrafzadeh is a Distinguished Professor of Computer Science at UCLA and is the author of hundreds of texts, chapters, journal papers, and conference papers in the fields of embedded medical systems, algorithm design and analysis, and

1   health analytics.  Further, Dr. Sarrafzadeh has authored numerous publications
2   regarding algorithms and electronic components for mobile non-invasive health
3   monitoring and wireless communications, which are the subjects of the patents-
4   in-suit, and his expertise makes him uniquely qualified for this case.  *See* Ex. 5
5   at 79, 89, 92, 94, 110, 120 ("Optimal Node Scheduling for Effective Energy
6   Usage in Sensor Networks"; "Light-weight Wireless Medical System for
7   Triage"; "Detection of Gestures Associated with Medication Adherence using
8   Smartwatch-based Inertial Sensors"; "Feasibility of a Secure Wireless Sensing
9   Smartwatch Application for the Self-Management of Pediatric Asthma"; "A
10  Survey of Smartwatches in Remote Health Monitoring"; "Wireless Sensor
11  Networks For Health Monitoring"; "MET Calculations from On-Body
12  Accelerometers.").  In short, he precisely fits the requirements for this case of a
13  person with uniquely "specialized knowledge [that] will help the trier of fact to
14  understand the evidence…."  *See* F.R.E. 702(a).

15      Plaintiffs assert that "Apple has already retained and cleared two
16  technical experts under the Protective Order other than Sarrafzadeh and
17  Warren."  J.S. at 16.  But neither of those experts are adequate substitutes for
18  Dr. Sarrafzadeh (or Dr. Warren).  Most fundamentally, the technical experts that
19  Plaintiffs refer to—Mr. David Rich and Dr. Michael Polson—are no longer
20  working in the technical field of this litigation.  Plaintiffs' objections to Drs.
21  Sarrafzadeh and Warren, if sustained, would mean that Apple would be denied
22  the counsel of anyone who is currently researching non-invasive monitoring.

23      In addition, while Mr. Rich has significant experience in industry, he does
24  not have a Ph.D. like Drs. Sarrafzadeh and Warren.  And Dr. Polson is located
25  in the United Kingdom, and current travel restrictions would limit Apple's
26  ability to even meet with Dr. Polson in-person.  Indeed, Apple does not have
27  plans to use either expert in a testifying capacity in this case, but does plan to
28  use Dr. Sarrafzadeh (and Dr. Warren) in such a capacity given his unique and

-34-

1    extensive experience in the field and reputation in the academic community.

2                    e.    **Plaintiffs' Proposal is Facially Unreasonable**

3          Plaintiffs assert that, in light of the purported "risk" Dr. Sarrafzadeh poses

4    to Plaintiffs' confidential information, he "should not have access to Plaintiffs'

5    confidential information unless he agrees to additional restrictions to limit the

6    risk to Plaintiffs." J.S. at 17.  As established above and as Apple told Plaintiffs,

7    Plaintiffs have not established good cause for imposing any restrictions beyond

8    what is already called for by the Protective Order.  That is reason enough to

9    reject Plaintiffs' proposal.

10         Plaintiffs' proposal is further unacceptable because its breadth is facially

11   unreasonable—as such, it is not a serious "proposal" at all, but rather a

12   transparent attempt to *appear* reasonable.  Plaintiffs' proposal is not limited to

13   developing products/services that might pose some competitive harm—it

14   forbids not only "research" but also "supervis[ing] those who are researching"

15   certain technology.  Plaintiffs fail to explain how supervising research by

16   college students in a particular field poses any risk of competitive harm.

17   Supervising research is a necessary, and indeed critical, part of a professor's

18   duties, and thus the proposal would effectively require Dr. Sarrafzadeh (and Dr.

19   Warren) to quit their jobs.  Indeed, in his academic career at Northwestern

20   University and UCLA, Dr. Sarrafzadeh has supervised more than 100 students

21   who have received their M.S. degree under his supervision.  Sarrafzadeh Decl.,

22   ¶ 3.

23         The technical field that Plaintiffs' proposal restrains is similarly

24   unworkable.  The excluded field is not limited to optical—or even non-

25   invasive—physiological monitoring technology, and thus is even broader than

26   what Plaintiffs say is the "technical field set forth in the Protective Order," *i.e.*,

27   "non-invasive monitoring."  J.S. at 13.  Plaintiffs' proposal covers every

28

                                          -35-

parameter measured by Rainbow SET—parameters that include "pulse rate."[6] The proposal would therefore prevent an expert witness from researching technologies that extend far beyond this case and far beyond any products/services that Plaintiffs sell.  As just a few examples, the proposal would bar work related to *medical equipment* for measuring ECG; administering *blood tests* for oxygen saturation, total hemoglobin, carboxyhemoglobin, and methemoglobin; and even researching stethoscopes for measuring heart rate.

Plaintiffs further allege that Dr. Sarrafzadeh's refusal to agree to such a facially unreasonable proposal "seems to lead to two possibilities:  Sarrafzadeh will work on developing competing technologies after receiving Plaintiffs' confidential information, or he will not."  J.S. at 18.  That is a false dichotomy. It is premised on the flawed assumption that any work in the immensely broad technical field of Plaintiffs' proposal "pose[s] an unnecessarily high risk of improper use or disclosure."  But supervising research cannot pose any risk of competitive harm.    Likewise, Plaintiffs cannot establish that all possible technologies covered by the overbroad field of their proposal competes with Plaintiffs.    Further, when Apple asked whether Plaintiffs and Dr. Madisetti would agree to a similar requirement (that he not research technology in the subject matter of this litigation as it relates to Apple's products), Plaintiffs did not agree to Apple's request.  Ex. B at 32-34.  Plaintiffs' refusal to agree to similar restrictions underscores the unreasonableness of their proposal.

Plaintiffs also misrepresent their own correspondence in their Joint Stipulation.  Plaintiffs state:  "[i]n light of Apple's inability to explain how Sarrafzadeh proposed to comply with the terms of the Protective Order and his

---

[6] Masimo 2019 Form 10K, available at https://s24.q4cdn.com/336820108/files/doc_financials/2019/q4/Masimo-2019-10K.pdf (last visited 10/28/2020) at 4;  *see also*  https://www.masimo.com/technology/co-oximetry/rainbow/  (last visited 10/28/2020).

duty of candor to the Patent Office, Plaintiffs also asked him to confirm his understanding of the patent prosecution bar." J.S. at 18. Plaintiffs further state that Dr. Sarrafzadeh refused to confirm. *Id.* That is incorrect—Plaintiffs' request for confirmation was included in their proposal. Ex. 9 at 158-59. Apple rejected the proposal as a whole because it is, as established above, unreasonable. As Apple told Plaintiffs: "Plaintiffs have not set forth a reason for why Apple or Dr. Sarrafzadeh should agree to restrict his ability to work and, thus, neither Apple nor Dr. Sarrafzadeh are willing to agree to your proposal." Ex. 9 at 158. Apple did not, as Plaintiffs imply, refuse to confirm an understanding with respect to the Prosecution Bar.

Moreover, contrary to Plaintiffs' assertions, what Plaintiffs asked Dr. Sarrafzadeh to confirm is unreasonable because it relates to technology much broader in scope than set forth in the Prosecution Bar. The field of the Prosecution Bar is limited to "non-invasive monitoring." Dkt. 67 ¶ 10. But what Plaintiffs asked Apple to confirm related to "such technology," which Apple can only understand as referring to the earlier recitation of the unreasonably broad technology in Plaintiffs' proposal. Thus, any refusal to agree to Plaintiffs' request for confirmation does not "highlight[] that Apple is interpreting the patent prosecution bar somehow more liberally than Plaintiffs." J.S. at 18. Rather, it highlights the unreasonably broad agreement Plaintiffs seek.

Finally, Plaintiffs claim that "[d]uring the meet-and-confer, Apple asserted that Sarrafzadeh's agreement to be bound by the Protective Order automatically resolves Plaintiffs' objections." J.S. at 17. That is incorrect—Apple did not take that position, and tellingly, Plaintiffs have no citation to support that statement. Apple's position is not that agreeing to be bound by the Protective Order immunizes an expert—it is that, as established above, given the thorough protections offered to the disclosing party's information, the party

1  objecting to an expert who has agreed to be bound should have to explain why

2  those protections are insufficient.  *See, e.g.*, *Foltz*, 331 F.3d at 1130.

3  **B.   Dr. Steve Warren**

4       **1.   Plaintiffs' Contentions and Points of Authority**

5            **a.   Warren's Research and Development Activities Pose a**

6                  **Risk of Competitive Harm**

7       Warren's research and development activities similarly pose an

8  unacceptable risk of competitive harm.  Warren is the director of the "K-State

9  Medical Component Design Laboratory," which is involved in "wearable

10  sensors and signal processing techniques to determine human/animal health."

11  Ex. 10.  During the meet and confer, Apple explained that Warren was involved

12  in research and development on several projects involving monitoring

13  physiological parameters of humans and canines.  Ex. 1 at 1.  Plaintiffs asked

14  Apple to identify the physiological parameters each project was measuring so

15  that Plaintiffs could determine the extent of overlap with Plaintiffs'

16  technologies.  *Id.*   During the conference, Apple indicated Warren is not

17  ***currently*** involved in developing technology to measure oxygen saturation

18  and/or blood analytes, but he has developed such technology in the past and

19  ***may resume at any time***.  *Id.*  at 2.

20       Similar to Apple's approach to Sarrafzadeh, Apple appears to be taking

21  the position that it need not disclose information that would potentially confirm

22  the specific technology overlap because Plaintiffs have not yet proven a risk of

23  harm.  *See* Ex. 1 at 1-2.  The Protective Order requires Apple to provide the

24  requested information.  *See* Dkt. 67 at 14-15.  Moreover, the withheld

25  information would either confirm or refute Plaintiffs' concerns.  Apple's refusal

26  to provide the information suggests the details would confirm that Warren

27  presents an unacceptable risk.  Moreover, as discussed above, Apple's

28  withholding of details regarding Warren's work in the field is improper and

-38-

should result in any uncertainty being resolved against Apple and in favor of denying access to Plaintiffs' confidential information.  *See THX*, 2016 WL 2899506, at *4.

Nonetheless, the information that Apple has provided shows that Warren is active in the "field of non-invasive monitoring."  Warren's current and future work in the field of non-invasive monitoring presents too great a risk of misuse of Plaintiffs' information.  *See Symantec*, 2012 WL 3582974, at *3 (explaining the court was aware of no case "within the Ninth Circuit where a party's objections to an expert were overruled where that expert actively consulted in the very field at issue").

As discussed above, Warren has developed competing technologies and indicated he may resume such work at any time.  The risk is confirmed by his refusal to agree to reasonable restrictions.

### b. <u>The Risks to Plaintiffs Outweigh Any Harm to Apple</u>

As set forth above, Apple bears the burden to show there are no other experts available or that those who are available would be less useful.  *See Applied Signal*, 2011 WL 197811, at *5; *Emerson Elec.*, 2016 WL 6833741, at *5.  Apple cannot meet its burden.

Apple cannot show there are no other acceptable experts.  As in *Applied Signal*, Plaintiffs have already cleared two other Apple technical experts under the Protective Order.  *See* 2011 WL 197811 at *5 (declining to find any prejudice where the party had "already been able to retain two experts" and made "no showing that there is a dearth of experts in the field").  Apple did not identify any prejudice it would suffer from not being able to use Warren, or articulate anything specific about Warren's background that would make him irreplaceable. *See, e.g.*, Ex. 1 at 1-3.

Accordingly, Apple has not identified any prejudice that would outweigh the risk of inadvertent disclosure or misuse of Plaintiffs' information.  The

1    Court should exclude Warren from accessing Plaintiffs' confidential
2    information.

3              **c.    For a Technical Expert that is Active in the Field,**
4                      **Agreeing to Refrain from Intentionally or Knowingly**
5                      **Misusing Confidential Information Is Not Sufficient**

6         As discussed above, Warren's agreement to be bound by the Protective
7    Order does not resolve Plaintiffs' objections.  *See* Section II. A.1.e, *supra*.  It
8    does not address the risks of unintentional or inadvertent use by an expert that is
9    active in development and invention of technology in the field.  In light of the
10   risks with respect to Warren, Plaintiffs offered to withdraw their objections if
11   Warren agreed to the same restriction discussed above with respect to
12   Sarrafzadeh.  Ex. 1 at 3.  Apple and Warren refused.[7]

13        Warren's refusal to engage on the restriction is troubling because other
14   courts have placed similar restrictions on Warren's future work before allowing
15   him access to Masimo's confidential information.  Apple's counsel previously
16   retained Warren in another case adverse to Masimo.  Masimo objected to
17   Warren based on his research and development activities.  Ex. 11 at 3:20-4:6.
18   Masimo requested the court impose additional restrictions that expressly
19   precluded him from engaging in research and development activities regarding
20   the technology at issue in that case.  *Id.* at 25:10-26:1.  The court imposed
21   additional restrictions for the duration of the lawsuit plus two years.  *Id.* at 30:5-
22   15, 33:21-34:16, 40:23-41:23.   Plaintiffs seek corresponding restrictions
23   regarding the technology at issue in this case for the same amount of time

24   _____

25        [7] The proposed restrictions on Warren identifying prior art in connection
26   with pending patent applications in the field likely do not apply to Warren
     because Apple did not identify any such applications naming Warren as an
27   inventor.  Warren would have to first breach the patent prosecution bar by filing
     such a patent application before any duty to disclose material information would
28   arise.

1  preventing research.

2       Accordingly, the Court should grant Plaintiffs' request and prevent

3  Warren from accessing Plaintiffs' confidential information (unless subject to

4  additional reasonable restrictions).

5       **2.    Apple's Response**

6       At the outset Apple notes the absurdity of Plaintiffs' position.  Dr. Warren

7  was designated as an expert in a prior patent case involving pulse oximetry, and

8  *has already seen* the confidential information of Masimo on the same subject

9  matter as is at issue in this case.  It has been years since that case concluded, and

10 to this day Plaintiffs have never asserted that Dr. Warren violated that case's

11 protective order in any way.  Dr. Warren was not previously subjected to the

12 broad restrictions Plaintiffs seek to impose now, and fully complied with the

13 protective order in that prior case.  Plaintiffs' argument that Dr. Warren should

14 not be permitted to see their confidential information—even though he has

15 already had access to that information—makes no sense and should be rejected.

16       **a.    Dr. Warren Is a Professor Who Poses No Viable Risk of**

17            **Competitive Harm**

18       Plaintiffs' argument that Dr. Warren poses a threat of competitive harm is

19 absurd, and their short argument all but proves it.  As Plaintiffs acknowledge,

20 Dr. Warren is the director of the "K-State Medical Component Design

21 Laboratory," which is involved in "wearable sensors and signal processing

22 techniques to determine human/animal health," and Dr. Warren's research

23 relates to "several projects involving monitoring physiological parameters of

24 humans and canines."  J.S. at 38.  Going beyond the disclosure requirements set

25 forth in the Protective Order, Apple told Plaintiffs that Dr. Warren's "current

26 research involves sensor beds for children with severe disabilities, monitoring

27 health of individuals on autistic spectrum, monitoring emotional state of

28 companion animals, and tracking animal behavior" and that "Dr. Warren

-41-

currently has no research efforts that target blood oxygen saturation or determination of blood analytes."  Ex. 1 at 5.  And like Dr. Sarrafzadeh, Dr. Warren is not currently developing any products or services and has no plans to do so.  Warren Decl., ¶ 6.  Plaintiffs have never challenged any of these representations.

None of Dr. Warren's research poses any threat of competitive harm—let alone a "concrete" threat—and Plaintiffs do not allege otherwise.  *See* J.S. at 38-39.  Instead, Plaintiffs generically allege that "the information that Apple has provided shows that Warren is active in the 'field of non-invasive monitoring'" and that is allegedly enough to conclude that Dr. Warren's "current and future work in the field of non-invasive monitoring presents too great a risk of misuse of Plaintiffs' information."  J.S. at 39.  Plaintiffs cite no support for the proposition that research in the same general field of the litigation establishes that the expert "presents too great a risk of misuse of Plaintiffs' information."  Rather, Plaintiffs cite one case (*Symantec*), and as noted above, the expert in that case actively provided consulting for the producing party's competitors.  2012 WL 3582974, at *2-3.  Nothing could be farther from the case for Dr. Warren—again, his *research* involves (1) *sensor beds for children with severe disabilities*, (2) monitoring *health of individuals on autistic spectrum*, (3) monitoring *emotional state of companion animals*, and (4) tracking *animal behavior*.  He does no work with any companies even arguably competitive with Plaintiffs, and Plaintiffs have not alleged otherwise.

In addition, Plaintiffs acknowledge that Dr. Warren was an expert against Masimo in a prior litigation.  J.S. at 40.  Having already seen Masimo's confidential information, it bends the mind to imagine how Dr. Warren seeing it again could somehow pose any threat of competitive harm.

Failing to establish any concrete risk of competitive harm, Plaintiffs again resort to innuendo.  Plaintiffs allege that Apple refused to provide certain

information and that "Apple's refusal to provide the information suggests the details would confirm that Warren presents an unacceptable risk."  J.S. at 38. Plaintiffs asked the questions that Plaintiffs say Apple refused to answer nearly one month after Apple had disclosed Dr. Warren and two weeks after Plaintiffs had objected to Dr. Warren.  Ex. 1 at 3, 11.  Plaintiffs' allegation obscures the fact that Apple did try in good faith to address Plaintiffs' follow-up questions. For example, after Plaintiffs' objection, Apple provided detailed information about Dr. Warren's duties at the Laboratory (Ex. 1 at 8) and Dr. Warren's current research projects (*id.* at 5).  The answers to Plaintiffs' endless stream of questions are available publicly and/or in the materials Apple provided to them. The question that Plaintiffs say Apple refused to answer is "what physiological parameters" are being measured in each of Dr. Warren's four areas of research. Dr. Warren regularly publishes his work and, as indicated on his CV, has several papers related to his research.  Warren Decl., App. A at 9-11.  Plaintiffs did not indicate that they reviewed any of these papers, let alone establish why these papers are insufficient to answer their questions.

Accordingly, Dr. Warren poses no concrete risk of competitive harm, and that alone establishes that Plaintiffs' objection to him should be overruled.

**b.**     **Precluding Apple from Engaging Dr. Warren Would Be Unduly Prejudicial**

As noted above (J.S. at 33), contrary to Plaintiffs' assertions, Apple does not bear the burden to establish that there are "no other acceptable experts."  *See contra* J.S. at 39.  And as also established above (J.S. at 34-35), the technical experts that Plaintiffs have permitted to clear under the Protective Order are not adequate substitutes for Drs. Sarrafzadeh and Warren.

Moreover, Dr. Warren has very specific experience in the narrow field of reflectance-based, wearable, non-invasive optical sensors (which are at issue for ten of the twelve asserted patents) as evidenced by, for example, the papers

-43-

described below.  In this specialized subject alone, Dr. Warren has authored several highly relevant journal papers and textbook chapters.

- Li, K. *et al.*, A Wireless Reflectance Pulse Oximeter Suitable for Wearable and Surface-Integratable Designs that Produces High-Quality Unfiltered Photoplethysmograms, *IEEE Transactions on Biomedical Circuits and Systems, 3(6)*, 269–278 (June 2012) (presenting a small, low-cost pulse oximeter design appropriate for wearable and surface-based applications that also produces quality, unfiltered photo-plethysmograms (PPGs) ideal for emerging diagnostic algorithms);

- Li, K. *et al.*, Onboard Tagging for Real-Time Quality Assessment of Photoplethysmograms Acquired by a Wireless Reflectance Pulse Oximeter, *IEEE Transactions on Biomedical Circuits and Systems, 1(6)*, 54-63 (February 2012) (describing the development of a unique onboard feature detection algorithm to assess the quality of PPGs acquired with a custom reflectance mode, wireless pulse oximeter);

- Krishnan, R. *et al.*, Two-Stage Approach for Detection and Reduction of Motion Artifacts in Photoplethysmographic Data, *IEEE Transactions on Biomedical Engineering, 8(57)*, 1867–1876 (February 13, 2010) (presenting novel and consistent techniques to detect the presence of motion artifact in PPGs given higher order statistical information present in the data);

- Warren, S. *et al.*, Chapter 3: Wireless Communication Technologies for Wearable Systems, *Wearable Monitoring Systems, First Edition*, 51-80 (December 2, 2010) (authored a chapter titled "Wireless Communication Technologies for Wearable Systems" in textbook describing wearable technologies);

- Li, K. et al., Initial Study on Pulse Wave Velocity Acquired from One Hand Using Two Synchronized Wireless Reflectance Pulse Oximeters, *33rd Annual International Conference of the IEEE Engineering in Medicine and*

-44-

*Biology Society*, 6907–6910 (August 30 – September 3, 2011) (presenting an approach to measure PWV using two synchronized, wireless pulse oximeters placed on the wrist and fingertip of the same hand);

- Li, K. *et al.*, A High-Performance Wireless Reflectance Pulse Oximeter for Photo-Plethysmogram Acquisition and Analysis in the Classroom, *2010 Annual Conference and Exposition, American Society for Engineering Education*, (June 20–23, 2010) (presenting the novel design and initial application of a high-performance, wireless reflectance pulse oximeter that exhibits a filter-free design and offers full access to relevant waveform data);

- Thompson, D. *et al.*, A Small, High-Fidelity Reflectance Pulse Oximeter, *2007 Annual Conference and Exposition, American Society for Engineering Education*, (June 24–27, 2007) (publication addressing a new design for a silver-dollar-sized reflectance pulse oximeter that is easy for students to use and incorporates multiple design enhancements that result in high-quality photo-plethysmograms);

- Thompson, D. *et al.*, Pulse Oximeter Improvement with an ADC-DAC Feedback Loop and a Radial Reflectance Sensor, *28th Annual Conference of the IEEE EMBS*, 815-818 (August 30 – September 3, 2006) (publication describing pulse oximeter design changes that produced order-of-magnitude improvements in signal quality);

- Yao, J. *et al.*, A Novel Algorithm to Separate Motion Artifacts from Photoplethysmographic Signals Obtained with a Reflectance Pulse Oximeter, *26th Annual Conference of the IEEE EMBS*, 2153–2156 (September 1–5, 2004) (publication presenting a novel algorithm to separate the motion artifacts from plethysmographic data gathered by pulse oximeters);

There are likely only 2-3 experts in the world that have the sort of extensive, hands-on expertise in the field of Plaintiffs' patents that Dr. Warren has. To preclude Apple from relying on his expert testimony in this case *because of his*

-45-

1  expertise—as Plaintiffs' arguments would require—is facially unfair and
2  unreasonable.

3          **c.**     **Plaintiffs' Proposal Is Facially Unreasonable**

4         Plaintiffs offered Dr. Warren the same "proposal" they offered Dr.
5  Sarrfazadeh, *i.e.*, to essentially give up his research interests and his career as a
6  supervising professor.  As noted above (J.S. at 35-36), that proposal is facially
7  unreasonable.  Plaintiffs further attempt to justify their overbroad proposal by
8  noting that Dr. Warren was subject to certain restrictions in the prior case in
9  which he was an expert against Masimo (the "*Philips* case").  Specifically,
10 Plaintiffs assert that they are "seek[ing] ***corresponding restrictions*** regarding
11 the technology at issue in this case …."  J.S. at 40 (emphasis added).  That is
12 false.  The imposition in the *Philips* case was for four narrow parameters that
13 Masimo argued were so cutting edge that they required special treatment,
14 namely total hemoglobin, oxygen content, carboxyhemoglobin, and
15 methemoglobin.  Ex. 11 at 34:2-16.  Plaintiffs' proposal in this case
16 inexplicably goes *far beyond* those four parameters, including ubiquitous
17 parameters like oxygen saturation and pulse rate, which have been measured
18 optically for almost 50 years.  Moreover, agreeing to Plaintiffs' proposal would
19 cause Dr. Warren concrete harm, forcing Dr. Warren to, for example, refrain
20 from supervising any research involving pulse oximetry.

21        Plaintiffs' proposal is unreasonable by any standard, and should not be
22 imposed on Dr. Warren, who poses no discernible competitive threat to
23 Plaintiffs.

24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

-46-

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: October 29, 2020        By: /s/ Benjamin A. Katzenellenbogen
                                   Joseph R. Re
                                   Stephen C. Jensen
                                   Benjamin A. Katzenellenbogen
                                   Perry D. Oldham
                                   Stephen W. Larson
                                   Adam B. Powell

                                   Attorneys for Plaintiffs
                                   Masimo Corporation and
                                   Cercacor Laboratories

GIBSON, DUNN & CRUTCHER LLP

Dated: October 29, 2020        By: /s/ H. Mark Lyon
                                   Joshua H. Lerner
                                   H. Mark Lyon
                                   Brian M. Buroker
                                   Brian A. Rosenthal
                                   Ilissa Samplin
                                   Brian K. Andrea
                                   Angelique Kaounis

                                   Attorneys for Defendant Apple Inc.

**ATTESTATION UNDER LOCAL RULE 5-4.3.4(a)(2)(i)**

Pursuant to Civil L. R. 5-4.3.4(a)(2)(i), I attest that concurrence in the filing of this document has been obtained from each of the signatories above.

Dated: October 29, 2020        By: /s/ Benjamin A. Katzenellenbogen
                                   Benjamin A. Katzenellenbogen

33784199

-47-