**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, | CASE NO. 8:20-cv-00048-JVS (JDEx) |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO DISMISS THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' THIRD AMENDED COMPLAINT** |
| v. | |
| APPLE INC., a California corporation, | |
| Defendants. | **Hearing:** |
| | Date: January 4, 2021 |
| | Time: 1:30 p.m. |
| | Place: Courtroom 10C |
| | Judge: Hon. James V. Selna |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................... 1

II.   PLAINTIFFS' CUTSA CLAIM SHOULD BE DISMISSED ........................... 3

    A.    Plaintiffs Still Do Not Meet the Standard for Alleging Their Trade
          Secrets. ........................................................................... 3

        1.    Plaintiffs Are Still Improperly Hedging by Pleading a Non-
              Exhaustive List of Alleged Trade Secrets. ........................ 3

        2.    It Is Still Impossible to Differentiate the Alleged Trade
              Secrets from the State of the Art. ................................... 5

        3.    Plaintiffs' Copying of Apple's Patent Claims Does Not
              Provide the Required Particularity. ................................ 11

    B.    Plaintiffs' New Allegations Prove that They Failed to Take
          Reasonable Efforts to Maintain Secrecy of Their Alleged Trade
          Secrets. ......................................................................... 12

    C.    After Four Tries, Plaintiffs Still Fail to Plead Facts Sufficient to
          Raise a Plausible Claim that Apple Engaged in Misappropriation.......... 15

        1.    Plaintiffs Still Fail to Allege That Apple Knew It Was
              Acquiring, Using, or Disclosing Plaintiffs' Purported Trade
              Secrets. ..................................................................... 15

        2.    Plaintiffs Still Fail to Allege That Apple Acquired, Used, or
              Disclosed Plaintiffs' Purported Trade Secrets. .................. 20

        3.    Plaintiffs Still Fail to Allege That Apple Induced a Breach.......... 22

        4.    Plaintiffs Still Fail to Allege That Apple Is Vicariously
              Liable Under *Respondeat Superior*. ............................... 23

III.  PLAINTIFFS SHOULD BE DENIED FURTHER LEAVE TO AMEND ....... 24

IV.   CONCLUSION ........................................................................... 25

1

## TABLE OF AUTHORITIES

2

Page(s)

3

### Cases

4

*Abagninin v. AMVAC Chem. Corp.*,
5    545 F.3d 733 (9th Cir. 2008) ..................................................................25

6

*Acrisure of Cal., LLC v. SoCal Com. Ins. Servs.*,
7    2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) ...................................... 1, 3

8

*Aetna Bldg. Maint. Co. v. West*,
9    39 Cal. 2d 198 (Cal. 1952) .......................................................................6

10

*Agency Solutions.com, LLC v. TriZetto Grp., Inc.*,
11    819 F. Supp. 2d 1001 (E.D. Cal. 2011) ...................................................12

12

*Alamar Biosciences Inc. v. Difco Labs. Inc.*,
13    1996 WL 648286 (E.D. Cal. Oct. 13, 1996)...........................................13

14

*Allen v. City of Beverly Hills*,
15    911 F.2d 367 (9th Cir. 1990) ..................................................................25

16

*AlterG, Inc. v. Boost Treadmills LLC*,
    388 F. Supp. 3d 1133 (N.D. Cal. 2019)..............................................9, 10

17

*Ashcroft v. Iqbal*,
18    556 U.S. 662 (2009)................................................................................22

19

*Barnes-Mohammed v. Cty. of Santa Barbara*,
20    2008 WL 793479 (C.D. Cal. Mar. 24, 2008) .........................................25

21

*Basalite Concrete Prod., LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*,
22    2013 WL 2156582 (E.D. Cal. May 17, 2013), *aff'd*, 615 F. App'x 894
23    (9th Cir. 2015) ........................................................................................25

24

*Bell Atl. Corp. v. Twombly*,
25    550 U.S. 544 (2007)................................................................................18

26

*Blantz v. Cal. Dep't of Corr. & Reha., Div. of Corr. Health Care Servs.*,
27    727 F.3d 917 (9th Cir. 2013)...................................................................17

28

*Brenner v. Manson*,
    383 U.S. 519 (1966)................................................................................12

*Brown v. Adidas Int'l,*
   938 F. Supp. 628 (S.D. Cal. 1996) ........................................................................ 21

*Cal. Police Activities League v. Cal. Police Youth Charities, Inc.,*
   2009 WL 537091 (N.D. Cal. Mar. 3, 2009) ........................................................ 11

*Calendar Research LLC v. StubHub, Inc.,*
   2017 WL 10378336 (C.D. Cal. Aug. 16, 2017) ............................................ 22, 23

*Carr v. AutoNation Inc.,*
   2018 WL 288018 (E.D. Cal. Jan. 4, 2018) .......................................................... 16

*In re Century Alum. Co. Sec. Litig.,*
   729 F.3d 1104 (9th Cir. 2013) ............................................................................. 20

*CitCon USA, LLC v. RiverPay Inc.,*
   2018 WL 6813211 (N.D. Cal. Dec. 27, 2018) ................................................. 3, 11

*CleanFish, LLC v. Sims,*
   2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) ....................................... 5, 16, 18, 19

*Cutera, Inc. v. Lutronic Aesthetics, Inc.,*
   2020 WL 4937129 (E.D. Cal. Aug. 24, 2020) ..................................................... 23

*Digital Mentor, Inc. v. Ovivo USA,*
   2018 WL 993944 (W.D. Wash. Feb. 21, 2018) ..................................................... 8

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
   751 F.3d 990 (9th Cir. 2014) ............................................................................... 16

*Edwards v. Arthur Andersen LLP,*
   44 Cal. 4th 937 (2008) ......................................................................................... 18

*Elsevier Inc. v. Doctor Evidence, LLC,*
   2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ..................................................... 9, 10

*Emazing Lights LLC v. De Oca,*
   2016 WL 3658945 (C.D. Cal. Jan. 7, 2016) .......................................................... 9

*Eminence Capital v. Aspeon Inc.,*
   316 F.3d 1048 (9th Cir. 2003) ............................................................................. 25

*Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.,*
   2016 WL 5719819 (S.D. Cal. Sept. 30, 2016), *aff'd*, 729 F. App'x 590
   (9th Cir. 2018) ..................................................................................................... 11

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
    2016 WL 6601656 (C.D. Cal. July 25, 2016) ......................................................... 25

*HiRel Connectors, Inc. v. U.S.*,
    2003 WL 27168678 (C.D. Cal. Apr. 14, 2003) .................................................. 12, 13

*Hooked Media Grp., Inc. v. Apple Inc.*,
    269 Cal. Rptr. 3d 406 (Cal. App. 2020) ...................................................... 17, 18, 19

*IDX Sys. Corp. v. Epic Sys. Corp.*,
    285 F.3d 581 (7th Cir. 2002) ........................................................................................ 4

*Imax Corp. v. Cinema Techs., Inc.*,
    152 F.3d 1161 (9th Cir. 1998) ..................................................................................... 5

*Integral Dev. Corp. v. Tolat*,
    675 F. App'x 700 (9th Cir. 2017) ............................................................................ 12

*Intermedics, Inc. v. Ventritex, Inc.*,
    822 F. Supp. 634 (N.D. Cal. 1993) ....................................................................... 12, 13

*Jobscience, Inc. v. CVPartners, Inc.*,
    2014 WL 1724763 (N.D. Cal. May 1, 2014) .............................................................. 4

*Kavanagh v. Tuller*,
    2017 WL 1496436 (S.D. Cal. Apr. 26, 2017) ............................................................ 9

*Kilgore v. Dir.*,
    2016 WL 8678365 (E.D. Cal. Feb. 26, 2016) .......................................................... 25

*Lamont v. Krane*,
    2019 WL 2113903 (N.D. Cal. May 14, 2019) ......................................................... 19

*Lohan Media LLC v. Thane Int'l, Inc.*,
    2001 WL 1827169 (C.D. Cal. Nov. 16, 2001) ........................................................ 10

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
    2019 WL 6655274 (C.D. Cal. Sept. 23, 2019) .................................................... 19, 20

*MACOM Tech. Sols. Inc. v. Litrinium, Inc.*,
    2019 WL 4282906 (C.D. Cal. June 3, 2019) ...................................................20, 21, 24

*MAI Sys. Corp. v. Peak Comput.*,
    991 F.2d 511 (9th Cir. 1993) ...................................................................................... 8

*MedioStream, Inc. v. Microsoft Corp.*,
    869 F. Supp. 2d 1095 (N.D. Cal. 2012) ................................................... 17

*Menzel v. Scholastic, Inc.*,
    2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ....................................... 23

*Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017) ................................................................. 23

*Pellerin v. Honeywell Int'l, Inc.*,
    877 F. Supp. 2d 983 (S.D. Cal. 2012) ............................................. 18, 24

*Physician's Surrogacy, Inc. v. German*,
    2018 WL 638229 (S.D. Cal. Jan. 31, 2018) ........................................... 20

*Space Data Corp. v. X*,
    2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) .......................... 7, 20, 21, 22

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
    775 F.2d 1107 (Fed. Cir. 1985) ............................................................. 12

*Steckman v. Hart Brewing*,
    143 F.3d 1293 (9th Cir. 1998) ............................................................... 25

*U.S. Legal Support, Inc. v. Hofioni*,
    2013 WL 6844756 (E.D. Cal. Dec. 20, 2013) ........................................ 24

*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*,
    707 F. Supp. 1170 (C.D. Cal. 1989), *aff'd*, 914 F.2d 1256 (9th Cir.
    1990) ...................................................................................................... 24

*Veronica Foods Co. v. Ecklin*,
    2017 WL 2806706 (N.D. Cal. June 29, 2017) .......................... 16, 21, 22, 24

*Whyte v. Schlage Lock Co.*,
    101 Cal. App. 4th 1443 (2002) ........................................... 17, 19, 24

*Yamaguchi v. Harnsmut*,
    106 Cal. App. 4th 472 (Cal. App. 2003) ............................................... 23

**Statutes**

Cal. Civ. Code § 3426.1 .................................................................................. 16

1

## Other Authorities

2

MPEP § 724.02 ............................................................................................................. 14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF ABBREVIATIONS

| Abbreviation | Document |
| --- | --- |
| Apple | Defendant Apple Inc. |
| Masimo | Plaintiff Masimo Corporation |
| Cercacor | Plaintiff Cercacor Laboratories, Inc. |
| Plaintiffs | Masimo and Cercacor, collectively |
| FAC | Plaintiffs' First Amended Complaint |
| SAC | Plaintiffs' Second Amended Complaint |
| TAC | Plaintiffs' Third Amended Complaint |
| '052 patent | U.S. Patent No. 10,078,052 |
| '095 patent | U.S. Patent No. 9,952,095 |
| '300 patent | U.S. Patent No. 6,792,300 |
| '417 patent | U.S. Patent No. 5,564,417 |
| '670 patent | U.S. Patent No. 10,247,670 |
| '754 patent | U.S. Patent No. 10,219,754 |
| '763 patent | U.S. Patent No. 6,985,763 |
| '997 patent | U.S. Patent No. 9,723,997 |
| '507 application | U.S. Patent Application No. 15/960,507 |
| '832 application | U.S. Patent Application No. 15/667,832 |
| PTO | U.S. Patent and Trademark Office |
| IDS | Information Disclosure Statement |
| MPEP | Manual of Patent Examining Procedure |

1

2

| RJN | Apple's Request for Judicial Notice in Support of Its Motion to Dismiss (filed concurrently herewith) |
|---|---|
| RJN Decl. | Lerner Declaration in Support of Apple's Request for Judicial Notice |
| PI Motion | Plaintiffs' Preliminary Injunction Motion |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.   **INTRODUCTION**

2       Plaintiffs have failed *four* times to plead a viable trade secret misappropriation

3   claim.  Plaintiffs' TAC proves that it is time to dismiss the claim with prejudice.  There

4   are three reasons to do so.

5       *First*, the Court has instructed Plaintiffs *twice* to "describe the trade secret[s] with

6   sufficient particularity to separate [them] from matters of general knowledge" to enable

7   Apple "to ascertain at least the boundaries within which the secret lies."  ECF 219 at 3

8   (quoting *Acrisure of Cal., LLC v. SoCal Com. Ins. Servs.*, 2019 WL 4137618, at *3 (C.D.

9   Cal. Mar. 27, 2019); ECF 60 at 7 (same).  The Court also expressly advised Plaintiffs

10  that they "must disclose" the alleged trade secrets.  ECF 219 at 8.  Yet Plaintiffs *still* fail

11  to follow the Court's instructions.  While Plaintiffs deleted the phrase "including" from

12  the beginning of the lists of alleged secrets in the TAC, Plaintiffs moved the problem to

13  the end:  Plaintiffs now allege the trade secrets include unidentified ███████████

14  ████████████████   of every category of alleged secrets.  The TAC is just the latest

15  move in a shell game that makes it impossible for Apple—and the Court—to discern the

16  boundaries of the trade secret claim.  Further, the individual examples continue to suffer

17  from the same flaws the Court previously identified:  they are still full of vague terms

18  and catchall phrases like "at least."  Thus, Plaintiffs still fail to adequately plead the

19  alleged trade secrets.

20      *Second*, the reason for Plaintiffs' shifting descriptions is now apparent:  Even if

21  the vague examples were secrets (they are not), Plaintiffs *utterly* failed to take reasonable

22  efforts to protect them.  Plaintiffs accused Apple of hiring Lamego to obtain Plaintiffs'

23  trade secrets in 2014.  Yet Plaintiffs plead no reasonable efforts thereafter to protect the

24  alleged trade secrets.  To the contrary, the face of the TAC shows that Plaintiffs did

25  *nothing* as patent applications naming Lamego as an inventor began to publish in early

26  *2016* and *every* year thereafter.  The patent publications contained not just Plaintiffs'

27  claimed inventions, but the very information that Plaintiffs now allege as trade secrets.

28  Plaintiffs' alleged trade secrets first published more than *two years* before Plaintiffs filed

this case, but Plaintiffs did nothing in the interim.  Each publication, according to Plaintiffs, violated Lamego's agreements with Plaintiffs to assign inventions and protect trade secrets.  But far from taking steps to protect their alleged secrets, Plaintiffs did the opposite, repeatedly citing Lamego's patents to the PTO in IDSs *without taking any steps to protect confidentiality or limit exposure*.  Such a proliferation of disclosure casts doubt on whether Plaintiffs ever considered this information secret before filing this case; but, the Court need not reach that question because Plaintiffs' failure to take any reasonable steps to protect the confidentiality of the alleged secrets which published *year after year* can be addressed here as a matter of law.

Finally, Plaintiffs fail to plead Apple's misappropriation of any specific trade secret.  As before, Plaintiffs' allegations do not support a reasonable inference that Apple knew or had reason to know that Plaintiffs' former employees—Lamego or O'Reilly— purportedly shared *specific* information comprising Plaintiffs' alleged trade secrets. Instead, Plaintiffs' theories of impropriety turn on two impermissible foundations:  that Apple (i) should have assumed Plaintiffs' former employees would inevitably disclose Plaintiffs' unspecified confidential information in their employment for Apple (TAC ¶ 247), and (ii) should not have exercised its statutory right to request non-publication of certain patent applications (*id.*, ¶ 248)—which Plaintiffs themselves exercise—to shield alleged misappropriation.  Neither is viable.  And Plaintiffs fail to allege that Apple used or disclosed any *specific* trade secrets—instead vaguely claiming that broad technical subject matter to which the alleged secrets pertain (i) is referenced in Apple patent filings and (ii) relates to the Apple Watch.  Further, Plaintiffs fail to allege any facts supporting their theory that Apple induced either former employee to breach a duty of secrecy to Plaintiffs or that Apple is liable under a *respondeat superior* theory.

If Plaintiffs had a valid trade secret claim against Apple, they would have taken action as soon as Apple published its first patent naming Lamego as an inventor instead of sitting on their hands for almost three years; they also would have specified the alleged secrets long ago and alleged a colorable misappropriation theory—they have not.

1   Plaintiffs' trade secret claim should be dismissed with prejudice.

2   ## II.   PLAINTIFFS' CUTSA CLAIM SHOULD BE DISMISSED[1]

3   ### A.   Plaintiffs Still Do Not Meet the Standard for Alleging Their Trade Secrets.

4   The Court has given Plaintiffs two opportunities to "describe the trade secret with

5   *sufficient particularity* to separate it from matters of general knowledge in the trade or

6   of special knowledge of those persons who are skilled in the trade, and to permit [Apple]

7   to *ascertain at least the boundaries within which the secret lies*." ECF 219 at 3 (quoting

8   *Acrisure*, 2019 WL 4137618, at *3 (emphasis added); ECF 60 at 7 (same).

9   ### 1.   Plaintiffs Are Still Improperly Hedging by Pleading a Non-
Exhaustive List of Alleged Trade Secrets.

10

11   The question once again before the Court is whether Plaintiffs' latest amendment

12   to their trade secret allegations "narrow[s] the scope of the alleged trade secrets" to

13   "address the Court's underlying concern." ECF 219 at 7. Because Plaintiffs still fail to

14   "provide . . . notice of the boundaries of this case," the answer is no. *Id.* (quoting *CitCon*

15   *USA, LLC v. RiverPay Inc.*, 2018 WL 6813211, at *4 (N.D. Cal. Dec. 27, 2018)).

16   The Court ruled that the threshold flaw in the SAC was that "merely stat[ing] what

17   is 'at least' included" in Plaintiffs' alleged secrets is insufficient to identify the full scope

18   of those claimed secrets. ECF 219 at 6. That catchall language "show[ed] that Plaintiffs

19   expressly do not intend for the . . . 'specific trade secrets' to be an exhaustive recitation"

20   of what they "allege Apple misappropriated." *Id.* at 5.

21   In the TAC, Plaintiffs delete the term "including" from the introduction to the list

22   of exemplary alleged trade secrets, but Plaintiffs do not solve the problem; they

23   exacerbate it. The TAC still includes broad open-ended language. The difference is that

24   Plaintiffs moved the catchall language from the beginning of the list to the end of each

25   broad category. For each and every alleged category of trade secrets, Plaintiffs now

26   claim as a secret the unidentified ███████████████████████ of each

27   alleged secret in the entire category. Plaintiffs provide *no* specifics that explain *how* the

28

[1] As the Court has set out the relevant legal standard twice, Apple does not repeat it.

1   other alleged secrets ███████████████████████. TAC ¶¶ 40–45.  Thus, the

2   new language is at least as problematic as Plaintiffs' prior catchall language because

3   "[n]o details are provided for how [Plaintiffs] allegedly achieve[] the desired" ██████

4   ████████████████████████—thus "mak[ing] it virtually impossible to distinguish

5   the alleged trade secrets from knowledge in the field." *Jobscience, Inc. v. CVPartners,*

6   *Inc.*, 2014 WL 1724763, at *3 (N.D. Cal. May 1, 2014); *IDX Sys. Corp. v. Epic Sys.*

7   *Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) ("[A] plaintiff must do more than just identify

8   a kind of technology and then invite the court to hunt through the details in search of

9   items meeting the statutory definition [of a trade secret].").

10        Further, several of the amended alleged trade secrets still employ the catchall

11   phrase "at least one of" followed by an open-ended list of items, thereby at best

12   providing a floor for the alleged secrets, but no ceiling.  For example, Plaintiffs' alleged

13   ██████████████████████████████████████████████████████████████████

14   ██████████████████████████████████████████████████████████████████

15   ████████████████████████ (TAC ¶ 42 (No. 1) (emphasis added)), which leaves open the

16   possibility of Plaintiffs later adding countless other types of sensors to the list.  Plaintiffs'

17   ██████████████████████████████████████████████████████████████████

18   ██████████████████████████████████████████████████████████████████

19   ██████████████████████████████████████████████████████████████████

20   ███████████████████████████ *Id.* ¶ 43 (Nos. 4–5) (emphases added).  These

21   "examples" still "do not actually 'narrow'" the preceding descriptions.  ECF 219 at 6.

22        Plaintiffs further muddle their claim with references to "Confidential

23   Information" that is apparently distinct from their alleged trade secrets.  *See* TAC ¶ 8

24   ("seek[ing] relief for the theft of Plaintiffs' highly confidential information *and* trade

25   secrets" (emphasis added)); *id.* ¶ 229 (alleging Apple misappropriated Plaintiffs'

26   "Confidential Information" as defined—*differently*—in "Lamego's Employee

27   Confidentiality Agreement" (ECF 38-5 at 2; ECF 60 at 4)).  At the same time, Plaintiffs

28   define the term "Confidential Information" in the TAC to suggest equivalence with their

1    trade secrets.   TAC ¶ 46 ("[I]nformation in Paragraphs 40–45 is . . . Plaintiffs'

2    'Confidential Information.'").   This inconsistency further renders the alleged trade

3    secrets impermissibly vague.

4         **2.    It Is Still Impossible to Differentiate the Alleged Trade Secrets from
               the State of the Art.**

5

6         Each of Plaintiffs' "technical" categories of secrets (TAC ¶¶ 40–42, 45) is

7    described in general terms that provide no way to determine if the category is exhaustive

8    or to distinguish the alleged secrets from information generally known in the trade.

9    ████████████████████████████: As just one example, Plaintiffs allege as a

10   trade secret ███████████████████████████████████████████

11   ████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████

13   ███████████████████████ TAC ¶ 40 (No. 7).  Plaintiffs do not explain how basic

14   knowledge that ████████████████████████████████████████ can

15   be be secret.  Nor do they explain *how* they ████████████████████████

16   ████████████████████████████████████████████████████████

17   ██████   This lack of detail leaves the "description of . . . purported 'trade secrets'

18   indistinguishable from matters of general knowledge within the . . . industry," which in

19   this case has been known for decades.  *CleanFish, LLC v. Sims*, 2020 WL 1274991, at

20   *9 (N.D. Cal. Mar. 17, 2020) (dismissing claim); *see Imax Corp. v. Cinema Techs., Inc.*,

21   152 F.3d 1161, 1167 (9th Cir. 1998) (because plaintiff's trade secret claim involved a

22   "sophisticated and highly complex" system, "reasonable specificity could only be

23   achieved by identifying the precise numerical dimensions and tolerances as trade

24   secrets"); *see e.g.*, ██████████████████████████████████████

25   ████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████

1 ██████████████████████████████████████████████████████

2 ████████████    Moreover, allowing such broad allegations without any specifics as to

3 how to use the alleged secret would allow Plaintiffs to later narrow any of these alleged

4 secrets to counter Apple's defenses—as Plaintiffs did in their reply in support of their

5 PI Motion after Apple pointed out that Plaintiffs' broadly alleged secrets could not be

6 secret. *Compare* ECF 111-1 at 4–6, *with* ECF 161-1 at 2–3.

7     Plaintiffs also describe ████████████████████████████████

8 █████████████████████████████████████████████████████████

9 █████████████████████████████████████████████████████████

10 ████████    TAC ¶ 40 (No. 2).   Similarly, Plaintiffs describe ████████████

11 █████████████████████████████████████████████████████████

12 █████████████████████████████████████████████████████████

13 █████████████████████████████████████████████████████████

14 █████████████████████████████████████████████████████████

15 ████████████████    TAC ¶ 40 (No. 6).   Plaintiffs also continue to improperly include

16 catchall language (e.g., "optionally").  *Id.* (Nos. 3, 6).   And Plaintiffs' allegation of

17 █████████████████████████████████████████████████████████

18 █████████████████████████████████████████████████████████

19 ██████████████████████████████████████████████████████████.

20 *See Aetna Bldg. Maint. Co. v. West*, 39 Cal. 2d 198, 206 (Cal. 1952) ("procedure for

21 estimating the price of a new contract" not a trade secret where "any competitor in the

22 business must consider all of the factors which enter into [Plaintiff's] computations").

23 ███████████████████████████████████████:  Plaintiffs claim as secret

24 ██████████████████████████████████.  TAC ¶ 41 (No. 3).  ████████████████

25 █████████████████████████████████████████████████████████

26 ████—before Plaintiffs allege Apple misappropriated the lens.  *See* RJN Decl. Ex. 3;

27 TAC ¶ 235 (alleging that ████████████████████████████████████████

28 ████████████████████████████████████████; *id.* ¶ 25 ("Apple announced

the Apple Watch Series 4 on September 12, 2018"). Without more, Apple cannot discern what Plaintiffs claim to be secret about this use.

Plaintiffs also claim as secret ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

TAC ¶ 41 (Nos. 4–5). But Plaintiffs do not describe *how* to ████████████████

████████████████████████ Plaintiffs also allege that ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ *Id*. ¶ 41 (Nos. 1–2). But this also is too general to distinguish from general trade knowledge, as Plaintiffs' own early patents illustrate. *E.g.,* ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████ ████████████████████████████████████████████████████

████████████████ Again, the critical point here is not whether these patents definitively disclose Plaintiffs' alleged secrets, but that the trade secrets, as pleaded in the TAC, still lack specificity such that Apple cannot fairly determine the bounds of the alleged secrets because Plaintiffs' broad allegations appear to cover commonly known trade information. *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (claim dismissed where it was "not made clear which aspects of its technology and other information are part of patents and pending patent applications, if any, and which are secret" (citation omitted)).

████████████████: Plaintiffs' allegations here also remain non-exhaustive and indistinct from trade knowledge. Plaintiffs allege that ████████████████████

████████████████████████████████████████████████████████

████████████████████████ TAC ¶ 43 (Nos. 1–3). But Plaintiffs do not identify *how* or against *what* ████████████████████████████████████

1   ███████████████████████████████████████.  Plaintiffs also claim

2   as secret ██████████████████████████████████████████

3   ███████████████████████████████████████████████████████

4   ████████████████████████ *Id.* (Nos. 4–5).

5     *Oxygen Saturation Calculation Techniques*:  These allegations include even less

6   detail to separate them from general trade knowledge.  For example, Plaintiffs appear to

7   claim as secret the general process of using pulse oximetry:  ████████████████

8   ███████████████████████████████████████████████████████

9   ███████████████████████████████████████████████████████

10  ███████████████████████████████████████████████████████

11  ████████████   *Id.* ¶ 45 (Nos. 1–2).  Nowhere does the TAC contain any details on this

12  ████████████████████████.  *See Digital Mentor, Inc. v. Ovivo USA*, 2018 WL

13  993944, at \*2 (W.D. Wash. Feb. 21, 2018) (on preliminary injunction motion, "[s]imply

14  stating that an algorithm exists and indicating that it collects information, produces an

15  action, and indicates how to perform that action is not enough information to determine

16  whether [defendant] has misappropriated that algorithm" (citing *MAI Sys. Corp. v. Peak

17  Comput.*, 991 F.2d 511, 522 (9th Cir. 1993)).

18  █████████████████████████████:  This category's allegations have

19  not materially changed from the SAC.  Rather, they still boil down to the broad ideas of

20  ███████████████████████████████████████████████████████

21  ███████████████████████████████████████████████████████

22  ███████████████████████.  This paragraph is devoid of allegations explaining how

23  █████████████████████████████████████████ are any different

24  from those generally known in the physiological monitoring device industry.

25    For example, Plaintiffs allege that their strategies include ████████████

26  ███████████████████████████████████████████████████████

27  ███████████████████████████████████████████████████████

28  ███████████████████████████ TAC ¶ 43 (Nos. 1–4, 6).  Plaintiffs do not



identify:  specific products, applications, or portals, or how they work; differences between using those products inside or outside the professional patient care field; what data is collected or how it is analyzed; or how any of these "strategies" streamline medical research.  And Plaintiffs still claim their product "marketing" constitutes a trade secret, even though Apple previously explained that Plaintiffs' product sales' locations and dates are publicly available.  ECF 121 at 8 (citing *Kavanagh v. Tuller*, 2017 WL 1496436, at *4 (S.D. Cal. Apr. 26, 2017) (disclosure "to the public through marketing and sales of [a] product" is "'fatal to the existence of a trade secret.'" (citation omitted))).  Plaintiffs also allege that ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████  TAC ¶ 43 (No. 3); *see Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) (dismissing under the DTSA "general assertions regarding 'analytics, analytics tools, and analytics programming'"); *see also AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144–46 (N.D. Cal. 2019).  Plaintiffs even claim as secret the basic job of *any* medical professional:  ████████████

████████████████████████████████████████████████████████

████████████████████████████████████  TAC ¶ 43 (No. 5); *see id.* (No. 2) ███████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████  This category describes the alleged secrets at such a high-level of generality that they are "thorough[]" to the point of "meaninglessness" where "[a]ny piece of information could potentially be labeled as a trade secret." *Emazing Lights LLC v. De Oca*, 2016 WL 3658945, at *2 (C.D. Cal. Jan. 7, 2016).  Plaintiffs still cite ████████████████████████████████████

████████████████  without explaining what information therein is allegedly secret.  TAC ¶ 44 (No. 1).  This is particularly troubling because some of the information is

1  indisputably public.  *Compare* RJN Decl. Ex. 17 ███████████████████

2  ██████████████████████████████████████████  *with* RJN Decl.

3  Ex. 6 at 101 (publicly available article touting Masimo's study conducted by the same

4  doctors).  Plaintiffs also allege as secret their ████████████████████

5  ████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████

7  ███████████████████████  TAC ¶ 44 (Nos. 5–7).  Again, Plaintiffs fail to

8  explain what ████████████████████████████████████████

9  ████████████████████████████████████████████████████████

10 ██████████████████████████████  can possibly qualify as a trade secret.

11     The other alleged secrets in this category strain credulity.  Plaintiffs allege a secret

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████

16 TAC ¶ 44 (Nos. 2–4).  Any researcher knows ██████████████████

17 ███████████████████████████████, and the suggestion that ████████

18 ██████████████████████████  is beyond belief.  *See Lohan Media*

19 *LLC v. Thane Int'l, Inc.*, 2001 WL 1827169, at *4 (C.D. Cal. Nov. 16, 2001) (on

20 preliminary injunction, allegation "that the five payment plan worked better than the ten

21 payment plan" was not a trade secret because it was "a concept that any first year

22 business school student would know."); *see also Elsevier*, 2018 WL 557906, at *5–6

23 ("[A]ssessments of the risk of bias of the evidence based on the funding source" was an

24 "extraordinarily general categor[y]" that did "not give rise to a plausible allegation of a

25 trade secret's existence [under the DTSA].").

26     Plaintiffs also allege that the ██████████████████████████████

27 ████████████████  is *itself* a trade secret.  Such allegations of "positive . . .

28 learnings" "are vague" and fail to state a claim.  *AlterG*, 388 F. Supp. 3d at 1145.

Further compounding the above deficiencies is Plaintiffs' failure to delineate which trade secrets are owned by whom. *See Cal. Police Activities League v. Cal. Police Youth Charities, Inc.*, 2009 WL 537091, at *4 (N.D. Cal. Mar. 3, 2009) (dismissing trade secret claim because the complaint did not allege "factual basis of ownership").  Apple has thus been deprived notice of what *each* Plaintiff claims are its trade secrets, which affects Apple's purported duties with respect to the information.

Even assuming that the TAC sufficiently identifies *one* alleged trade secret (it does not), that does not satisfy Rule 8 because the alleged secrets are still engulfed within general categories of information indistinguishable from trade knowledge.  Identifying only *some* trade secrets with particularity does not provide the necessary "*notice as to the boundaries* of the case when the overall allegations of Plaintiffs' trade secrets are impermissibly broad." ECF 219 at 7 (quoting *CitCon*, 2018 WL 6813211, at *4) (emphasis added); *see generally Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*, 2016 WL 5719819, at *11 (S.D. Cal. Sept. 30, 2016), *aff'd*, 729 F. App'x 590 (9th Cir. 2018) (on summary judgment, "where at least some of the Plaintiff's 492 trade secrets are not sufficiently particular[,] Plaintiff's failure to identify those trade secrets that really were sufficiently particular does not impose a burden on either the Court or Defendant to do so for it").

### 3.    Plaintiffs' Copying of Apple's Patent Claims Does Not Provide the Required Particularity.

Several alleged trade secrets in the TAC are simply copies of method claims from Apple's patents, which only highlights their lack of particularity. ██████████

██████████

██████████

████████████  Likewise, alleged ████████████████

██████████

██████████

This is insufficient to provide notice of alleged secrets because patent claims—unlike

trade secret allegations—by their nature outline the *minimum* requirements to practice a patented invention. *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) ("The law does not require . . . that an applicant describe in his specification every conceivable and possible future embodiment of his invention."); *see also Brenner v. Manson*, 383 U.S. 519, 534 (1966).

By contrast, "a [trade secret] plaintiff first must *clearly identify* the information" to show it "qualifies as a trade secret." *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 702 (9th Cir. 2017) (emphasis added); *see Agency Solutions.com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011) ("plaintiff must clearly identify what the 'thing' is that is alleged to be a trade secret," and "be able to clearly articulate why that 'thing' belongs in the legal category of trade secret"). Merely copying Apple's patent claim language, which covers embodiments that may not be expressly disclosed, is far from "clearly identifying" the claimed secrets. Plaintiffs' alleged secrets "are [still not] defined clearly enough to stand on their own" and remain non-exhaustive in a way that "does not address the Court's underlying concern." ECF 219 at 7.

## B. Plaintiffs' New Allegations Prove that They Failed to Take Reasonable Efforts to Maintain Secrecy of Their Alleged Trade Secrets.

The face of the TAC demonstrates that Plaintiffs did *not* take reasonable efforts to maintain secrecy of their alleged trade secrets. A trade secret owner fails to take reasonable efforts where it has suspicions or knows another is disclosing its secrets but fails to timely object. *See HiRel Connectors, Inc. v. U.S.*, 2003 WL 27168678, at *10–11 (C.D. Cal. Apr. 14, 2003). Where, as here, a plaintiff alleges that the defendant misappropriated one trade secret, "it is unreasonable for that plaintiff simply to assume that that defendant can be trusted to protect other secrets." *Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 653 (N.D. Cal. 1993). "[T]o withstand a motion to dismiss" where disclosures are alleged, the owner must allege facts showing it did not "fail to object." *HiRel*, 2003 WL 27168678, at *10–11; *see Alamar Biosciences Inc. v. Difco Labs. Inc.*, 1996 WL 648286, at *6 (E.D. Cal. Oct. 13, 1996) ("[Trade secret plaintiff]

must exercise eternal vigilance.  This calls for constant warnings to all . . . to whom the trade secret has become known and obtaining from each an agreement, preferably in writing, acknowledging its secrecy and promising to respect it.").  Here, Plaintiffs failed in their "responsibility to take prompt and assertive corrective action with respect to all of [their] interests whenever [they] detect[ed] a fracture in a once confidential relationship" with their former employees.  *Intermedics*, 822 F. Supp. at 654.

In *HiRel*, the plaintiff sued the federal government and others, alleging misappropriation of secrets in a missile component specification.  2003 WL 27168678, at *4–7.  The court dismissed because the plaintiffs failed to plead reasonable efforts.  *Id*. at *10–11.  While the plaintiff—just like Plaintiffs here—pointed to its boilerplate description of NDAs and physical security to protect its trade secrets, the plaintiffs— just like Plaintiffs here—failed to plead *any* corrective action for years after the government published the alleged secrets.  *Id*.  Thus, the allegations of reasonable efforts were deficient as a matter of law.  *Id*.

As the timeline below demonstrates, Plaintiffs sent Apple a letter attaching Lamego's employment agreement with Plaintiffs, and warning that employing Lamego in his area of expertise would breach the agreement.  But Plaintiffs did nothing for years after patent applications that Plaintiffs claim breached the agreement began to publish. Indeed, Plaintiffs make *no allegations whatsoever* about their efforts to object or otherwise take action over the course of years of Apple patent publications naming Lamego as an inventor or after the release of multiple versions of the Apple Watch.

*2014*:  As the Court is well aware, Plaintiffs were watching Apple, having sent Apple a letter demanding that Apple not employ Lamego in an area that involves "healthcare technology."  ECF 38-5 at 2; ECF 60 at 5.

*2016*:  Plaintiffs were on notice of any breach of Lamego's agreement with them more than three and a half years before they filed this case.  On March 3, 2016, an application for the '052 patent published with Lamego listed as an inventor.  ECF 38-6 at 2; ECF 60 at 4.  While Plaintiffs now claim that Lamego was contractually required

to assign inventions in the '052 patent to Plaintiffs (TAC ¶¶ 253–59), at the time—and for the intervening years before filing this case—*Plaintiffs did nothing*. They never approached Apple nor warned against future publications. Plaintiffs did, however, cite the '052 patent in *two* separate IDSs to the PTO in 2018. RJN Decl. Exs. 8 at 125, 9 at 153.[2]

*2017*: On August 8, 2017, the '997 patent published and listed Lamego as an inventor. RJN Decl. Ex. 7 at 106. Plaintiffs now allege that the '997 patent disclosed Plaintiffs' alleged ███████████████ secrets and inventions—in breach of Lamego's agreements with Plaintiffs. TAC ¶¶ 238–39, 283. But again, Plaintiffs did nothing at the time, nor in the intervening two years (plus), before filing this lawsuit. They never approached Apple nor warned against future publications. Instead, Plaintiffs cited the '997 patent in *two* IDSs to the PTO in 2018 (RJN Decl. Exs. 8 at 124, 11 at 153)—*without* seeking confidential treatment for those IDSs and their now-claimed secrets, even though the PTO regulations provide for such treatment where IDSs contain alleged trade secrets (*see* MPEP § 724.02 (RJN Decl. Ex. 13)).

*2018*: In 2018, Plaintiffs watched two Apple patents and one patent application naming Lamego as an inventor publish—each time, they did nothing to claim secrecy. The '095 and '670 patents and the '507 application published on April 24, 2018, December 20, 2018, and August 23, 2018, respectively. ECF 28-29 at 1184; ECF 28-28 at 1165; RJN Decl. Ex. 10 at 166. While Plaintiffs now claim that Lamego was contractually required to assign the inventions in the '095 and '670 patents and the '507 application to Plaintiffs (TAC ¶¶ 263, 270, 346), at the time—and for the intervening years before filing this case—*Plaintiffs did nothing*. They never approached Apple nor warned against future publications. They did, however, cite the '095 patent in *two* IDSs to the PTO in 2018 and the '670 patent in *two* IDSs to the PTO in 2019 and 2020. RJN

---

[2] That Plaintiffs repeatedly cited to the disputed Lamego patents in their IDSs makes it all the more egregious that they have tried to keep certain patent claims under seal, and withheld them from Apple's in-house counsel and expert. *E.g.*, ECF 61-1 at 35–36.

1  Decl. Exs. 8 at 125, 11 at 208, 12 at 223, 14 at 267, 269.

2      Apple announced the Apple Watch Series 4 on September 12, 2018, widely

3  publicizing its optical heart rate sensors capable of taking electrocardiograms.   TAC

4  ¶¶ 25, 236.   Despite this, Plaintiffs never approached Apple about its alleged

5  incorporation of Plaintiffs' ███████████████████████████ trade secrets in the

6  Apple Watch Series 4 or Apple's alleged use of Plaintiffs' ███████████████

7  ███████████████████████████ *See id.* ¶ 235–37, 241.

8      ***2019***:   The '754 patent published on March 5, 2019, and listed Lamego as an

9  inventor.   ECF 28-30 at 1201.   Plaintiffs now allege that the '754 patent disclosed

10  Plaintiffs' alleged ███████████████████ secrets and Plaintiffs' inventions—

11  in breach of Lamego's agreements with Plaintiffs.   TAC ¶¶ 232–33, 277.   Indeed,

12  Plaintiffs relied on a narrow slice of the '754 patent in arguing that they could assert a

13  trade secret claim in their PI Motion.   ECF 111-1 at 7; ECF 161-1 at 2–3.   But Plaintiffs

14  did nothing in the nine months before Plaintiffs filed this lawsuit.   They never

15  approached Apple nor warned against future publications.   Plaintiffs did, however,

16  *repeatedly* cite the '754 patent in two IDSs to the PTO—including one filed *two days*

17  before filing this lawsuit—without seeking any confidential treatment for the

18  information they now claim as a secret.   RJN Decl. Exs. 14 at 269, 15 at 302.

19      In sum, Plaintiffs have not—and indeed cannot—plead reasonable efforts with

20  respect to the alleged trade secrets.   Plaintiffs took no measures to protect the alleged

21  secrets here for years after the secrets—along with Plaintiffs' claimed inventions—

22  purportedly published in violation of the very contracts that Plaintiffs rely on to allege

23  confidentiality and inventorship here.

24  **C.   After Four Tries, Plaintiffs Still Fail to Plead Facts Sufficient to Raise a
      Plausible Claim that Apple Engaged in Misappropriation.**

25
26      **1.   Plaintiffs Still Fail to Allege That Apple Knew It Was Acquiring,
          Using, or Disclosing Plaintiffs' Purported Trade Secrets.**

27
28  Plaintiffs still do not allege facts showing that Apple knew or had reason to know

(i) that Lamego and O'Reilly provided Apple with Plaintiffs' trade secrets in breach of a duty, or that Apple, without authorization, (ii) used or (iii) disclosed Plaintiffs' alleged trade secrets.  Cal. Civ. Code § 3426.1; *e.g.*, *Carr v. AutoNation Inc.*, 2018 WL 288018, at *2 (E.D. Cal. Jan. 4, 2018).  To plead a trade secret claim, a Plaintiff must "allege facts that tend to exclude general knowledge or innocuous (*i.e.*, competitive marketplace) explanations." *CleanFish*, 2020 WL 1274991, at *11; *see Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) ("plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent" with an innocuous explanation); *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017) (similar).  Here, the TAC's allegations are entirely consistent with innocent conduct, and thus, insufficient to state a misappropriation claim.

First, Plaintiffs allege that in 2013 Apple and Masimo "entered into a confidentiality agreement" and held meetings that "included confidential discussions of Masimo's technology." TAC ¶ 19. But even if Apple was aware Masimo had confidential information, that does not support an inference that Apple knew the *specific* information Lamego or O'Reilly allegedly later used or disclosed contained Plaintiffs' trade secrets.  *CleanFish*, 2020 WL 1274991, at *10 (allegation that defendant "contacted and continuously communicated with [former employee], while . . . employed by Plaintiff" insufficient to show knowledge).  Indeed, in denying Plaintiffs' PI Motion, this Court held that "Apple planning to 'dig deep' while meeting with Plaintiffs" did not "suggest[] anything about Lamego's personal obligations to maintain secrecy" and so did not show that "Apple should have known that Lamego possessed trade secrets and had a duty to maintain secrecy." ECF 198 at 7-8.[3]  This disconnect is

---

[3]  While the Court's PI Order stated that Plaintiffs were likely to succeed in showing misappropriation (ECF 198 at 8-9), the Court's later Order granting Apple's Motion to Dismiss Plaintiffs' SAC did not address Plaintiffs' failure to adequately plead misappropriation, and it stated that Plaintiffs were still required to satisfy Rule 8's pleading requirements.  ECF 219 at 7.

underscored by the fact that Plaintiffs narrowed the alleged secrets at issue during the PI briefing, but they have not alleged that Apple knew the narrowed example was a secret. *Compare* ECF 111-1 at 4–6, *with* ECF 161-1 at 2–3 *and* TAC ¶¶ 229, 245.

Second, Plaintiffs allege, "on information and belief," that "Apple targeted and recruited Plaintiffs' employees, including O'Reilly and Lamego, because of their knowledge of Plaintiffs' Confidential Information." TAC ¶ 229. Such conclusory allegations raised "on information and belief," unaccompanied by specific factual allegations of Defendant's alleged improper actions, are insufficient. *See Blantz v. Cal. Dep't of Corr. & Reba., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 926–27 (9th Cir. 2013). And Plaintiffs' allegations about recruitment are equally consistent with the truth: that Apple hired these individuals for their perceived knowledge and skill in relevant fields, which California law specifically allows. *Hooked Media Grp., Inc. v. Apple Inc.*, 269 Cal. Rptr. 3d 406, 413 (Cal. App. 2020) ("California's policy favoring free mobility of employees specifically allows" engineers to "dr[a]w on knowledge and skills they gained from [prior employer]" for new employer).

Third, Plaintiffs allege they sent Apple a January 24, 2014 letter, warning that Lamego possessed Plaintiffs' confidential information and attaching his employment agreement. TAC ¶ 23. But a letter stating that Lamego generally possessed *unspecified* confidential information—and seeking to prohibit him from working in the *entire* "healthcare technology" field (*id*.)—does not establish that Apple knew or had reason to know that Apple wrongfully acquired *specific* alleged trade secrets. *See MedioStream, Inc. v. Microsoft Corp.,* 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012). Plaintiffs' reliance on the warning letter is particularly problematic because the letter violates longstanding California law that a former employer may not control a former employee's ability to earn a living based only on the notion that the employee will "inevitably" rely on a former employer's trade secrets. *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1462 (2002). Put simply, "evidence that Apple hired [employees] with knowledge of [Plaintiffs'] trade secrets and that the [employees] inevitably would

1    have relied on that knowledge in their work for Apple does not support a claim for

2    improper acquisition of a trade secret." *Hooked Media*, 269 Cal. Rptr. 3d at 413–14.

3        Even if this ill-founded warning letter put Apple "on notice" that Lamego had

4    some confidential information that he was required to keep secret (ECF 198 at 8), the

5    letter did not specify any trade secrets (ECF 38-5 at 2; ECF 60 at 4).  Thus, the letter

6    alone cannot support an inference that Apple knew or should have known that Lamego

7    actually disclosed to Apple or used any trade secret-protected information, as is required.

8    *CleanFish*, 2020 WL 1274991, at *10.  Were the result otherwise, former employers'

9    warning letters—which (i) rely on facially void noncompete clauses (under Cal. Bus. &

10   Prof. Code Section 16600) and (ii) do not reference specific trade secrets—would

11   seemingly always give rise to a new employer's knowledge of unidentified trade secrets

12   and discourage hiring and employee mobility.  This is wrong as a matter of law (*Pellerin

13   v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012)), and is at odds with

14   "California settled public policy in favor of open competition" (*Edwards v. Arthur

15   Andersen LLP*, 44 Cal. 4th 937, 945 (2008)).

16       Fourth, Plaintiffs allege Lamego "worked at Apple for less than one year," and

17   "Apple knew or at least should have known that Lamego could not develop" independent

18   technology "in such a short amount of time."  TAC ¶ 229.  Plaintiffs' claim relies on

19   rank speculation insufficient to withstand a motion to dismiss.  *Bell Atl. Corp. v.

20   Twombly*, 550 U.S. 544, 555 (2007) ("[Factual allegations must be enough to raise a

21   right to relief above the speculative level[.]").  Indeed, in *Hooked Media*, the plaintiff

22   argued that its former employees performed "tasks at Apple similar to the work they did

23   [for plaintiff]" and "within weeks" created a "detailed plan" for a system "much like

24   [plaintiff's] version" that had allegedly "similar" source code.  269 Cal. Rptr. 3d at 413–

25   14.  The court rejected this evidence as insufficient to support a claim for improper

26   acquisition of trade secrets.  *Id*.  The same analysis applies here.  That Lamego's tenure

27   at Apple was productive is "merely consistent" with Plaintiffs' allegations—it does not

28   "plausibly suggest" Apple knew or should have known he was using or disclosing

1   Plaintiffs' purported trade secrets. *Twombly*, 550 U.S. at 557. "[T]he mere fact that a

2   competitor markets a product faster than it took another . . . to develop their product,

3   does not plausibly allege that the competitor's product must have been created with trade

4   secrets." *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc*., 2019 WL 6655274, at *9 (C.D.

5   Cal. Sept. 23, 2019).

6        Plaintiffs' assertion that the "Lamego Patents" were filed soon after Lamego

7   arrived at Apple likewise does not move the needle. Plaintiffs allege no facts to support

8   that Apple should have speculated, due to Lamego's work pace—in an industry in which

9   he had worked for years—that he *must* have misappropriated trade secrets. *E.g.*, *Lamont*

10  *v. Krane*, 2019 WL 2113903, at *4 (N.D. Cal. May 14, 2019) (defendant's alleged use

11  of AI in its cloud platform one month after meeting with inventor of AI technologies

12  insufficient to state claim). Plaintiffs' allegations at best may suggest Apple was aware

13  Lamego drew on knowledge and skills he gained while working for Plaintiffs to develop

14  a product for his new employer. That is not actionable. *Hooked Media*, 269 Cal. Rptr.

15  3d at 413–14; *Whyte*, 101 Cal. App. 4th at 1464. And Plaintiffs fail to plead facts

16  supporting a plausible inference that Apple knew or should have known Lamego was

17  exceeding his own knowledge and skills. Plaintiffs' allegations, therefore, cannot

18  support an inference that Apple "knew that any information [Lamego used or]

19  communicated to [it] contained trade secrets." *CleanFish*, 2020 WL 1274991, at *10.

20       Fifth, Plaintiffs allege that Apple requested non-publication of certain patent

21  applications, and that "[o]n information and belief," Apple normally does not do so.

22  TAC ¶ 248. Apple's exercise of its statutory right to not publish under 35 U.S.C.

23  § 122(b)(2)(B)(i) does not reflect that Apple knew certain patent applications contained

24  trade secrets. As this Court has explained, "Apple submitted more than 300 such

25  requests in the last six years," ECF 198 at 8–9, and importantly, it is a judicially

26  noticeable fact that Plaintiffs *also* submit such requests. *See* RJN Decl. Ex. 16 at 308.

27  Invoking this right cannot support a plausible inference of Apple's requisite knowledge

28  "within the meaning of *Iqbal* and *Twombly*"—to the contrary, "[w]hen faced with two

possible explanations, . . . plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation. . . . Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true." *In re Century Alum. Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (internal quotation marks and citations omitted).

### 2. Plaintiffs Still Fail to Allege That Apple Acquired, Used, or Disclosed Plaintiffs' Purported Trade Secrets.

A trade secret plaintiff must "allege facts providing a reasonable basis for th[e] Court to infer" that the defendant improperly acquired, disclosed, or used the alleged trade secrets. *Space Data*, 2017 WL 5013363, at *2 (use); *see Physician's Surrogacy, Inc. v. German*, 2018 WL 638229, at *8 (S.D. Cal. Jan. 31, 2018) (under DTSA, "Plaintiff must more specifically connect allegations of misappropriation to specific Defendants' actions"). Plaintiffs have been alleging for *eleven months* that Apple incorporated their purported secrets in the Apple Watch and Apple's patent filings. ECF 1 ¶¶ 179–91. Yet Plaintiffs still "do not allege which trade secrets were purportedly used, how they were used, or when they were used." *MACOM Tech. Sols. Inc. v. Litrinium, Inc.*, 2019 WL 4282906, at *9 (C.D. Cal. June 3, 2019). Plaintiffs instead point to similarities in product design and conduct by Apple that is consistent with innocent conduct and not actionable by itself.

*First*, Plaintiffs assert that Apple ███████████████████████████████ ████████████████████████████████████████████ in certain patent filings and patents. TAC ¶¶ 233, 239. But █████████████████████████ █████████████████████████████████████. TAC ¶ 40. And although the information is in Plaintiffs' possession—indeed, they are the *only* ones who ostensibly understand the bounds of those claimed secrets, Plaintiffs fail to allege *which of these sixteen purported secrets* from among this set Apple allegedly "included," when they were included, and in which patent filings. *M/A COM*, 2019 WL 4282906, at *9. While it is true that Plaintiffs identify portions of three issued patents that purportedly

include some alleged secrets (TAC ¶¶ 233, 239), they only vaguely allege their
"Confidential Information is currently or was, *at least at the time of Defendant's
misappropriation*, not generally known" (*id.* ¶ 225 (emphasis added)).  Further, the
timing of alleged disclosure, including whether the alleged specific secrets were
incorporated into specific patent applications, is critical, because if "'the information is
in the public domain . . . secrecy is gone [and] the trade secret is extinguished.'"
*Veronica Foods*, 2017 WL 2806706, at *13 (citation omitted).  By failing to allege how
and when misappropriation occurred as to each secret, Plaintiffs fail to state a claim.
*MACOM*, 2019 WL 4282906, at *9; *Space Data*, 2017 WL 5013363, at *2.

    *Second*, Plaintiffs allege "Apple implemented Plaintiffs' ███████
████████████████████s in the Apple Watch," pointing to aspects of the
design of the Apple Watch like the inclusion of ████████████████.  TAC
¶¶ 234–37.   The mere similarity of these design features to Plaintiffs' products is
insufficient to support a reasonable inference that their inclusion in the Apple Watch
resulted from misappropriation.  *Brown v. Adidas Int'l*, 938 F. Supp. 628, 634 (S.D. Cal.
1996) (similarities in product design, without more, do not support a misappropriation
claim).  And Plaintiffs offer no concrete allegations to support that these design features
arose from misappropriation.  For example, although Plaintiffs allege that Lamego was
involved in discussions and experiments concerning ████████████ while he was
employed with Plaintiffs (TAC ¶ 234), Plaintiffs nowhere allege that Lamego was
responsible for—or even involved with—designing the ████████████████
Plaintiffs identified as embodying Plaintiffs' trade secrets (*see id.* ¶¶ 236–37).
Requiring Plaintiffs to allege facts that "'tend[] to exclude' an innocent explanation,"
*Veronica Foods*, 2017 WL 2806706, at *14, is all the more critical when dealing with
technologies, like a Fresnel lens, that have existed for centuries.  RJN Decl. Ex. 4.

    *Third*, Plaintiffs allege Apple misappropriated Plaintiffs' ████████████



(*id.* ¶¶ 241–43).  These allegations do not state a claim for misappropriation because they are "'merely consistent with' . . . a theory of innocent market entry." *Veronica Foods*, 2017 WL 2806706, at *14 (citation omitted). For  example,

with one of the leading technology providers in the world.

*Finally*, for certain purported trade secrets, Plaintiffs allege no facts whatsoever to support an inference of misappropriation.  Plaintiffs allege, "[o]n information and belief, Apple is using Plaintiffs'

TAC ¶ 244.  These conclusory allegations, devoid of facts, are insufficient to state a claim.  *Space Data*, 2017 WL 5013363, at *2.

### 3.    Plaintiffs Still Fail to Allege That Apple Induced a Breach.

Plaintiffs allege that Apple induced Lamego and O'Reilly to breach their duty to maintain secrecy in conclusory fashion: "on information and belief, Defendant induced its employees, including Lamego and O'Reilly, to disclose Plaintiffs' Confidential Information."  TAC ¶ 230.  The TAC in this regard provides nothing more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This "naked assertion" does not meet the pleading standard. *Id*.

Plaintiffs wrongly contend that they are not required to allege precisely how Apple induced a breach, because pleading "on information and belief" is adequate if the information "'is not presumptively in the[ir] knowledge.'" ECF 180-1 at 20–22 (quoting *Calendar Research LLC v. StubHub, Inc*., 2017 WL 10378336, at *4 (C.D. Cal. Aug. 16, 2017)).  But unlike here, the plaintiff in *Calendar Research* pleaded detailed factual content  including  that  individual  defendant(s)  [1] "downloaded  proprietary . . . information, [2] maintained access to . . . source code, [3] planned to build a similar

group-scheduling application while working for StubHub," and [4] "had frequent communications" with StubHub employees who disclosed that "StubHub wanted to incorporate the source code . . . into [its] existing and future applications." *Id.* at *1, *4 (citation omitted).  Based on these allegations and others, the court concluded that Calendar Research adequately alleged that StubHub acquired trade secrets through the individual defendants' theft. *Id.  Calendar Research* cannot save Plaintiffs' claim.

Even if the facts were "peculiarly within" Apple's control (they are not), that "does not excuse the requirement that the plaintiff allege something more than bare conclusions." *Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *3 (N.D. Cal. Mar. 19, 2018); *see Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 2020 WL 4937129, at *9 (E.D. Cal. Aug. 24, 2020) (conclusory allegations of defendant's knowledge insufficient despite question of knowledge being "peculiarly" within defendant's control).  Information and belief allegations "must still be 'based on factual information that makes the inference of culpability plausible.'" *Menzel*, 2018 WL 1400386, at *2; *e.g.*, *Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (even though relevant facts were known only to defendant, Park pleaded sufficient facts about the "entire sequence of events").

This Court should dismiss Plaintiffs' inducement trade secret claim, because their "bare" conclusory allegations based on information and belief are insufficient under *Twombly* and *Iqbal*.  *Menzel*, 2018 WL 1400386, at *2–3.

### 4.  Plaintiffs Still Fail to Allege That Apple Is Vicariously Liable Under *Respondeat Superior*.

Plaintiffs fail to allege liability under the doctrine of *respondeat superior at least* because they fail to allege any trade secret misappropriation committed by their former employees for which Apple could be held liable.  *See generally Yamaguchi v. Harnsmut*, 106 Cal. App. 4th 472, 481 (Cal. App. 2003) (setting forth doctrinal test).  For one, as discussed above (in Section II.A.), Plaintiffs fail to allege that their Confidential Information actually constitute trade secrets.  Nor can Plaintiffs establish that Lamego or O'Reilly used or disclosed that Confidential Information while employed by Apple.

1   Plaintiffs make only conclusory "information and belief" allegations that Lamego

2   and O'Reilly used or disclosed Plaintiffs' Confidential Information.  *See, e.g.*, TAC

3   ¶ 230.  Plaintiffs fail to allege each of the purported trade secrets Lamego allegedly

4   disclosed and Apple allegedly included in its patent applications.  TAC ¶¶ 24–25; *see*

5   *supra*, Section II.C.2.  Generic allegations that a former employee works in a similar

6   area and improves a competing product cannot show misappropriation.  *Universal*

7   *Analytics, Inc. v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177–78 (C.D. Cal.

8   1989), *aff'd*, 914 F.2d 1256 (9th Cir. 1990).  Similarly, Plaintiffs' allegations that ▉▉▉▉

9   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (TAC ¶ 241) are merely

10  consistent with innocent market entry.  *Veronica Foods*, 2017 WL 2806706, at *14.

11  At most, Plaintiffs allege facts showing that Lamego and O'Reilly had access to

12  and learned of Plaintiffs' Confidential Information while employed by Plaintiffs.  TAC

13  ¶¶ 20, 22–23, 228–29.  But mere "'access to and acqui[sition of] trade secret

14  information'" by a former employee "is insufficient to establish misappropriation".

15  *Pellerin*, 877 F. Supp. 2d at 989; *MACOM*, 2019 WL 4282906, at *9 ("mere allegation

16  that [former employee] left … for a competitor … is insufficient to infer that [former

17  employee] acquired, disclosed, and/or used Plaintiffs' trade secret information").

18  Plaintiffs' assertion of *respondeat superior* against Apple is thus nothing more

19  than a claim based on inevitable disclosure.  Imposing vicarious liability under

20  *respondeat superior* here would directly conflict with California's rejection of the

21  inevitable disclosure doctrine and chill employee mobility in the same way and to the

22  same degree as the inevitable disclosure doctrine itself.  *See U.S. Legal Support, Inc. v.*

23  *Hofioni*, 2013 WL 6844756, at *11 n.8 (E.D. Cal. Dec. 20, 2013) (recognizing conflict

24  between use of *respondeat superior* in misappropriation claim against new employer

25  and inevitable disclosure doctrine); *Whyte*, 101 Cal. App. 4th at 1458.

26  **III.   PLAINTIFFS SHOULD BE DENIED FURTHER LEAVE TO AMEND**

27  Plaintiffs' trade secret claim should be dismissed with prejudice.  This Court's

28  "discretion to deny leave to amend is *particularly* broad where plaintiff has previously

1  amended the complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir.

2  1990) (emphasis added).  As the Court explained, the "general rule that parties are

3  allowed to amend their pleadings . . . does not extend to cases in which any amendment

4  would be an exercise in futility, or where the amended complaint would also be subject

5  to dismissal."  ECF 219 at 8 (quoting *Steckman v. Hart Brewing*, 143 F.3d 1293, 1298

6  (9th Cir. 1998)); *see Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir.

7  2008) ("[r]epeated failure to cure deficiencies" sufficient to deny leave).  Further,

8  prejudice to the opposing party "carries the greatest weight" in the analysis.  ECF 219

9  at 8 (quoting *Eminence Capital v. Aspeon Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

10  After *four* chances (two after dismissal) to plead a plausible trade secret claim,

11  Plaintiffs again have failed.  Further amendment would be futile.  *GeoData Sys. Mgmt.,*

12  *Inc. v. Am. Pac. Plastic Fabricators, Inc.*, 2016 WL 6601656, at *8 (C.D. Cal. July 25,

13  2016) (dismissing with prejudice after three failed tries); *see also Basalite Concrete*

14  *Prod., LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 2013 WL 2156582, at *9

15  (E.D. Cal. May 17, 2013), *aff'd*, 615 F. App'x 894 (9th Cir. 2015).  Further amendment

16  would also cause delay and undue prejudice to Apple, which has now spent nearly a year

17  and millions of dollars responding to serial baseless complaints.  *See Barnes-Mohammed*

18  *v. Cty. of Santa Barbara*, 2008 WL 793479, at *5 (C.D. Cal. Mar. 24, 2008) (finding

19  undue prejudice to defendants where plaintiff serially "failed . . . to set forth a short and

20  plain statement of her claims, despite repeated attempts by the Court to educate her on

21  the process"); *Kilgore v. Dir.*, 2016 WL 8678365, at *2 (E.D. Cal. Feb. 26, 2016) (undue

22  prejudice where amendment would cause "a considerable delay of . . . proceedings").

23  Plaintiffs' trade secret claim should be dismissed without leave to amend.

## IV.   CONCLUSION

25  Apple respectfully requests that the Court dismiss with prejudice Plaintiffs'

26  Thirteenth Cause of Action for trade secret misappropriation.

1    Dated:  November 30, 2020

2

                                JOSHUA H. LERNER

3

                                H. MARK LYON
                                BRIAN M. BUROKER

4

                                BRIAN A. ROSENTHAL
                                ILISSA SAMPLIN

5

                                ANGELIQUE KAOUNIS
                                BRIAN K. ANDREA

6

                                GIBSON, DUNN & CRUTCHER LLP

7

                                By: */s/ Joshua H. Lerner*

8

                                        Joshua H. Lerner

9

                                Attorneys for Defendant APPLE INC.

10    104247126.38

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP