Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Date:  January 4, 2021<br>Time: 1:30pm<br>Ctrm: 10C<br><br>Discovery Cut-Off:          7/5/2021<br>Pre-Trial Conference:    3/21/2022<br>Trial:                                4/5/2022 |

## REDACTED VERSION OF DOCUMENT
## PROPOSED TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ............................................................................ 1

II.    ARGUMENT ................................................................................... 2

    A.    The TAC Describes The Trade Secrets At Issue In Detail ....... 2

        1.    Legal Standard For Identifying Trade Secrets .................. 2

        2.    Plaintiffs Amended To Address The Court's Prior Ruling ............ 4

        3.    Apple's Criticisms of Plaintiffs' Descriptions Lack Merit .............. 6

            a.    ███████████████ .......................... 6

            b.    ████████████████████ ............. 11

            c.    ██████████ ....................................... 12

            d.    ██████████████████ ................. 13

            e.    Business and Marketing Plans and Strategies ................... 14

            f.    Strategies For Interacting With Hospitals ........................... 15

        4.    Apple's Ownership Argument Lacks Merit ................................. 16

    B.    The TAC Plausibly Alleges Efforts To Maintain Secrecy ...... 17

    C.    The TAC Plausibly Alleges Misappropriation ......................... 18

        1.    The TAC Plausibly Alleges Apple's Knowledge .......................... 18

        2.    The TAC Plausibly Alleges Apple's Misappropriation ............... 21

        3.    The TAC Plausibly Alleges Inducement .................................... 23

        4.    The TAC Plausibly Alleges Vicarious Liability........................... 24

    D.    Apple's Motion Is Untimely ...................................................... 25

    E.    Denying Leave to Amend Would Be Improper ....................... 25

III.   CONCLUSION .............................................................................. 25

# TABLE OF AUTHORITIES

**Page No(s).**

*A.O. Smith Corp. v. Petroleum Iron Works Co. of Ohio*,
73 F.2d 531 (6th Cir. 1934) ...................................................................... 5

*Advanced Modular Sputtering v. Superior Court*,
132 Cal. App. 4th 826 (2005) ................................................................... 3

*Aetna Bldg. Maint. Co. v. West*,
39 Cal. 2d 198 (1952) ............................................................................... 9

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*,
819 F. Supp. 2d 1001 (E.D. Cal. 2011) ................................................... 10

*Ajaxo Inc. v. E\*Trade Grp. Inc.*,
135 Cal. App. 4th 21 (2005) ................................................................... 21

*Alamar Biosciences Inc. v. Difco Labs. Inc.*,
1996 WL 648286 (E.D. Cal. Feb. 27, 1996) ........................................... 18

*Alta Devices, Inc. v. LG Elecs, Inc.*,
343 F. Supp. 3d 868 (N.D. Cal. 2018) ..................................................... 23

*Altavion, Inc. v. Konica Minolta Sys. Laboratory, Inc.*,
226 Cal. App. 4th 26 (2014) ......................................................... 7, 10, 15

*AlterG, Inc. v. Boost Treadmills LLC*,
388 F. Supp. 3d 1133 (N.D. Cal. 2019) ................................................... 15

*AlterG, Inc. v. Boost Treadmills LLC*,
Dkt. 41 (N.D. Cal. Sept. 5, 2019) ........................................................... 15

*Autodesk, Inc. v. ZWCAD Software Co.*,
2015 WL 2265479 (N.D. Cal. May 13, 2015) ................................... 19, 23

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
2017 WL 2224838 (N.D. Cal. May 22, 2017) ......................... 9, 10, 13, 14

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
2018 WL 514923 (N.D. Cal. Jan. 23, 2018) ............................................ 10

1
2

**TABLE OF AUTHORITIES**
(*cont'd*)

3

**Page No(s).**

4
5

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
219 F. Supp. 3d 984 (N.D. Cal. 2017) ....................................................... 17

6
7

*Blantz v. California Dep't of Corr. & Rehab.*,
727 F.3d 917 (9th Cir. 2013) ..................................................................... 19

8
9

*Blindlight, LLC, v. Cubbison*,
2017 WL 4769460 (C.D. Cal. July 3, 2017) .............................................. 15

10

*BLK Enterprises v. Unix Packaging, Inc.*,
2018 WL 5993844 (C.D. Cal. June 14, 2018) ............................................ 22

11
12

*Brain Injury Assoc. of California v. Yari*,
2020 WL 3643482 (C.D. Cal. Apr. 30, 2020) ............................................ 25

13
14

*Brescia v. Angelin*,
172 Cal. App. 4th 133 (2009) ....................................................................... 3

15
16

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
2011 WL 1044899 (N.D. Cal. Mar. 23, 2011) ..................................... 10, 15, 19, 23

17
18

*Brown v. Adidas Int.*,
938 F. Supp. 628 (S.D. Cal. 1996) .............................................................. 23

19
20

*Cal. Police Activities League v. Cal. Police Youth Charities, Inc.*,
2009 WL 537091 (N.D. Cal. Mar. 3, 2009) ............................................... 16

21
22

*Calendar Research LLC v. StubHub, Inc.*,
2017 WL 10378336 (C.D. Cal. Aug. 16, 2017) ............................... 19, 23, 24

23

*Carr v. AutoNation, Inc.*,
2018 WL 288018 (E.D. Cal. Jan. 4, 2018) ................................................. 22

24
25

*Cedars Sinai Med. Ctr. V. Quest Diagnostic Inc.*,
2018 WL 2558388 (C.D. Cal. Feb. 27, 2018) .............................................. 7

26
27

*Citcon USA,LLC v. RiverPay Inc.*,
2018 WL 6813211 (N.D. Cal. Dec. 27, 2018) ................................... 10, 16, 17

28

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

*CleanFish, LLC v. Sims*,
    2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) .................................................. 10, 19

*Cutera, Inc. v. Lutronic Aesthetics, Inc.*,
    2020 WL 4937129 (E.D. Cal. Aug. 24, 2020) ................................................. 24

*Digital Mentor, Inc. v. Ovivo USA*,
    2018 WL 993944 (W.D. Wash. Feb. 21, 2018) ........................................... 13

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ...................................................................... 21

*Edwards v. Arthur Anderson LLP*,
    44 Cal. 4th 937 (2008) ................................................................................ 20

*Ellis v. Worldwide Capital Holdings, Inc.*,
    2015 WL 12697722 (C.D. Cal. Mar. 24, 2015) ....................................... 5, 16

*Elsevier Inc. v. Doctor Evidence, LLC*,
    2018 WL 557906 (S.D.N.Y. Jan. 23 2018) .............................................. 14

*Emazing Lights LLC v. De Oca*,
    2016 WL 3658945 (C.D. Cal. Jan. 7, 2016) .............................................. 16

*Extreme Reach, Inc. v. Spotgenie Partners, LLC*,
    2013 WL 12081182 (C.D. Cal. Nov. 22, 2013) ........................................ 25

*Five Star Gourmet Foods, Inc. v. Fresh Express Inc.*,
    2020 WL 513287 (N.D. Cal. Jan. 31, 2020) ........................................ 14, 16

*Genentech, Inc. v. JHL Biotech, Inc.*,
    2019 WL 1045911 (N.D. Cal. Mar. 5, 2019) ..................................... 8, 11, 19

*Head Ski Co. v. Kam Ski Co.*,
    158 F. Supp. 919 (D. Md. 1958) .................................................................. 5

*Highmark Digital, Inc. v Casablanca Design Centers, Inc.*,
    2020 WL 2114940 (C.D. Cal. Mar. 26, 2020) ......................................... 19

**TABLE OF AUTHORITIES**
(*cont'd*)

**Page No(s).**

*HiRel Connectors, Inc. v. Dep't of Def. of U.S.*,
2003 WL 27168678 (C.D. Cal. Apr. 14, 2003) ........................................ 17

*HiRel Connectors, Inc. v. United States*,
2005 WL 4958547 (C.D. Cal. Jan. 4, 2005) ........................... 2, 17, 18, 23

*Hooked Media Grp, Inc. v. Apple Inc.*,
55 Cal. App. 5th 323, 332 (2020) .............................................. 17, 20, 21

*IDX Sys. Corp. v. Epic Sys. Corp.*,
285 F.3d 581 (7th Cir. 2002) ............................................................... 5

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998) ........................................................ 10, 11

*Integral Dev. Corp. v. Tolat*,
675 F. App'x 700 (9th Cir. 2017) ....................................................... 10

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020) ....................................................... *passim*

*Intermedics, Inc. v. Ventritex, Inc.*,
804 F. Supp. 35 (N.D. Cal. 1992) ........................................ 5, 9, 13, 14

*Intermedics, Inc. v. Ventritex, Inc.*,
822 F. Supp. 634 (N.D. Cal. 1993) ..................................................... 18

*Jobscience, Inc. v. CVPartners, Inc.*,
2014 WL 1724763 (N.D. Cal. May 1, 2014) .......................................... 5

*Kavanagh v. Tuller*,
2017 WL 1496436 (S.D. Cal. Apr. 26, 2017) ...................................... 14

*Lamont v. Krane*,
2019 WL 2113903 (N.D. Cal. May 14, 2019) ..................................... 21

*Language Line Servs., Inc. v. Language Servs. Assocs., LLC*,
2010 WL 2764714 (N.D. Cal. July 13, 2010) ...................................... 24

**TABLE OF AUTHORITIES**
(*cont'd*)

**Page No(s).**

*Lilith Games Co. v. uCool, Inc.*,
   2015 WL 4128484 (N.D. Cal. July 8, 2015) ........................... 20

*Lohan Media LLC v. Thane Int'l Inc.*,
   2001 WL 1827169 (C.D. Cal. Nov. 16, 2001) ....................... 16

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
   2019 WL 6655274 (C.D. Cal. Sept. 23, 2019) ....................... 21

*MACOM Tech. Sols. Inc. v. Litrinium, Inc.*,
   2019 WL 4282906 (C.D. Cal. June 3, 2019) (Selna, J.) .................*passim*

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012) ................................ 20

*Medtronic MiniMed, Inc. v. Nova Biomedical Corp.*,
   2009 WL 10671420 (C.D. Cal. May 22, 2009) ..................... 17

*Menzel v. Scholastic, Inc.*,
   2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ....................... 24

*Metricolor LLC v. L'oreal S.A.*,
   2020 WL 3802942 (C.D. Cal. July 7, 2020) ................... 2, 19, 22, 23

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) ........................................................ 9, 13

*New Show Studios LLC v. Needle*,
   2014 WL 2988271 (C.D. Cal. June 30, 2014) ...................... 8, 14

*O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*,
   420 F. Supp. 2d 1070 (N.D. Cal. 2006) ................................... 5

*Pellerin v. Honeywell International, Inc.*,
   877 F. Supp. 2d 983 (S.D. Cal. 2012) ................................ 20, 25

*Physician's Surrogacy, Inc. v. German*,
   2018 WL 638229 (S.D. Cal. 2018) ........................................ 23

1
2

**TABLE OF AUTHORITIES**
(***cont'd***)

3

**Page No(s).**

4
5

*Prolifiq Software Inc. v. Veeva Sys. Inc.*,
2014 WL 2527148 (N.D. Cal. June 4, 2014)..................................................7, 12, 15

6
7

*Proofpoint, Inc. v. Vade Secure, Inc.*,
2020 WL 1911195 (N.D. Cal. Apr. 20, 2020)....................................................... 8

8
9

*Quality Towing, Inc. v. Jackson*,
2016 WL 3017642 (N.D. Cal. May 26, 2016)........................................................ 25

10

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ................................................................ 18, 24

11
12

*Space Data Corp. v. X*,
2017 WL 5013363 (N.D. Cal. Feb. 16, 2017)..................................................... 12, 22

13
14

*Spice Jazz LLC v. Youngevity Int'l Inc.*,
2019 WL 4573705 (S.D. Cal. Sept. 9, 2019) ........................................................ 19

15
16

*TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*,
2016 WL 3475322 (C.D. Cal. Jan. 29, 2016)........................................................ 10

17
18

*TMX Funding, Inc. v. Impero Techs., Inc.*,
2010 WL 2509979 (N.D. Cal. June 17, 2010)........................................................ 14

19
20

*U.S. Legal Support, Inc. v. Hofioni*,
2013 WL 6844756 (E.D. Cal. Dec. 20, 2013)........................................................ 25

21
22

*Veronica Foods Co. v. Ecklin*,
2017 WL 2806706 (N.D. Cal. June 29, 2017).................................................... 22, 25

23

*WeRide Corp. v. Kun Huang*,
379 F. Supp. 3d 834 (N.D. Cal. 2019)........................................................... 9, 21

24
25

*Whyte v. Schlage Lock Co.*,
101 Cal. App. 4th 1443 (2002) ................................................................ 20, 25

26
27

*Williams & Cochrane, LLP v. Quechan Tribe of Fort Yuma Indian Reservation*,
329 F.R.D. 247 (S.D. Cal. 2018) ................................................................ 5

28

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

*Yamaguchi v. Harnsmut,*
   106 Cal. App. 4th 472 (2003) ...................................................................... 25

*Yeiser R&D LLC v. Teknor Apex Co.,*
   281 F. Supp. 3d 1021 (S.D. Cal. 2017) ..................................................... 22

# OTHER AUTHORITIES

Cal. Civ. Code § 3426.1 .............................................................................. 23

Local Rule 5-4.6.1 ...................................................................................... 25

# I. **INTRODUCTION**

Plaintiffs amended their complaint to address this Court's ruling on Apple's prior motion to dismiss, to respond to Apple's previous arguments, and to provide very detailed allegations. Apple now moves the target and raises new arguments it could have raised before. Apple challenges allegations it previously ignored and even attempts to revive arguments it previously dropped. The Court should reject Apple's piecemeal approach.

Apple's new challenges also lack merit. Apple first argues Plaintiffs did not "follow the Court's instructions" to adequately describe their trade secrets. Dkt. 237-1 ("Br.") at 1. That is not correct. The Court found certain phrases rendered Plaintiffs' prior description "non-exhaustive." Plaintiffs removed those phrases, added additional details, and identified each trade secret in numbered lists. Dkt. 233 ("TAC") ¶¶ 39-45. Apple argues the TAC uses "catchall" language by "now" alleging the "value, importance, and appropriateness" of each trade secret. Br. at 1. But Plaintiffs previously identified the "value and importance" of their trade secrets and Apple raised no issue with that language. Dkt. 89-1 ("SAC") ¶¶ 41, 43, 45, 47, 49. Moreover, Plaintiffs' amendment narrowed the identification to the "value, importance, and appropriateness" of *specific* trade secrets. While Plaintiffs added the word "appropriateness," Apple never explains why that justifies attacking previously unchallenged trade secrets.

Critically, Apple does not address many of Plaintiffs' trade secrets. While courts previously disagreed as to whether describing "at least one" trade secret was sufficient, the Ninth Circuit recently held that a plaintiff's burden "is only to identify *at least one trade secret* with sufficient particularity" prior to discovery. *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020).[1] This Court's preliminary injunction order already found Plaintiffs described one trade secret sufficiently. Dkt. 206 at 10.

Next, Apple newly argues Plaintiffs "failed to take reasonable efforts" to protect their trade secrets. According to Apple, Plaintiffs are barred from seeking relief because

---

[1] All emphasis is added unless noted otherwise.

Plaintiffs did not sue Apple soon after Apple published Plaintiffs' trade secrets.  Apple touts a single case to support that proposition, but fails to disclose that a later decision in that case rejected Apple's position.  *See HiRel Connectors, Inc. v. United States*, 2005 WL 4958547, at *7 (C.D. Cal. Jan. 4, 2005).  Regardless, the "reasonable efforts" issue is a merits issue for the jury to decide.

Finally, Apple argues Plaintiffs failed to show ***how*** Lamego and O'Reilly "shared specific information" at Apple.  Br. at 2.  But "there is no requirement that a plaintiff plead ***exactly*** how [d]efendants improperly obtained or used the alleged trade secret."  *Metricolor LLC v. L'oreal S.A.*, 2020 WL 3802942, at *13 n.7 (C.D. Cal. July 7, 2020) (internal quotation omitted).  "That is because, at the pleading stage, 'discovery has not yet commenced' and 'it would be unreasonable to require a plaintiff to demonstrate the precise ***ways*** in which [d]efendants have used their trade secrets, given that [d]efendants are the only ones who possess such information."  *Id.*  Although Apple has provided no trade secret discovery, the TAC provides specific citations to Apple's patents and detailed pictures showing how Apple's devices use Plaintiffs' trade secrets.

## II.  ARGUMENT

### A.    The TAC Describes The Trade Secrets At Issue In Detail

#### 1.    Legal Standard For Identifying Trade Secrets

The California Court of Appeal explained what is required to describe a trade secret with "reasonable particularity":[2]

> "Reasonable particularity" mandated by section 2019.210 does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation.  Nor does it require a discovery referee or trial court to conduct a miniature trial on the merits of a misappropriation claim before discovery may commence.  Rather, it means that the plaintiff must make some showing that is reasonable, *i.e.*, fair,

---

[2] Apple previously argued the "sufficient particularity" pleading standard is lower than the "reasonable particularity" discovery standard.  Dkt. 49 at 14-15.  While Apple has never explained how it believes the two standards differ, there can be no dispute that satisfying the allegedly higher standard is sufficient at the pleading stage.

proper, just and rational [citation], under all of the circumstances to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits.

*Advanced Modular Sputtering v. Superior Court*, 132 Cal. App. 4th 826, 835-36 (2005) (reversing finding that description was inadequate). The plaintiff is "not required, on pain of dismissal, to describe [the trade secret] with the greatest degree of particularity possible, or to reach such an exacting level of specificity that even its opponents are forced to agree the designation is adequate." *Id.* at 836. Designations "should be liberally construed in favor of the trade secret claimant, and . . . doubts about its adequacy should be resolved in favor of permitting discovery to go forward." *Brescia v. Angelin*, 172 Cal. App. 4th 133, 145 (2009) (reversing finding that description was inadequate).

Apple argues a plaintiff must always distinguish trade secrets from information "generally known in the trade." Br. at 5. But even Section 2019.210—which Apple asserts is a higher standard—"does not require in every case that a trade secret claimant explain how the alleged trade secret differs from the general knowledge of skilled persons in the field to which the secret relates." *Brescia*, 172 Cal. App. 4th at 138. The plaintiff need only provide enough detail so "***[t]he defendant*** may then use that level of detail to determine the limits of the trade secret by investigating whether the information disclosed is within the public domain . . .." *Id.* at 147. "[A]bsent a showing that the identification of the alleged trade secret ***alone*** lacks the particularity necessary to serve the statutory purposes, the trade secret claimant ***need not*** specify how the secret or its elements are distinguishable from matters known to skilled persons in the field." *Id.* at 149.

Apple also claims that "[i]dentifying only *some* trade secrets with particularity" is not sufficient. Br. at 11 (emphasis in original). Apple relies on the Court's October 13 order. *See id.* (citing Dkt. 219 at 7). However, the Court reached that conclusion after the parties cited conflicting decisions from other courts. *See* Dkt. 214 at 2; Dkt. 218 at 3. The Ninth Circuit clarified the law days later in *InteliClear*, 978 F.3d at 659. There, the

district court had granted summary judgment before discovery, explaining: "*By only identifying 'some' of its trade secrets*, Plaintiff leaves open the possibility that it might later argue that other unnamed elements of the [plaintiff's] System are trade secrets as well."  *Id.* at 659 (emphasis in original).  The Ninth Circuit reversed, holding:

> At this stage, particularly where no discovery whatsoever had occurred, it is not fatal to [plaintiff's] claim that its hedging language left open the possibility of expanding its identifications later.  [Plaintiff's ***burden is only to identify at least one trade secret with sufficient particularity**] to create a triable issue.

*Id.*  This makes sense because "discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification."  *Id.* at 662.

## 2.    Plaintiffs Amended To Address The Court's Prior Ruling

Apple argues Plaintiffs "fail[ed] to follow the Court's instructions."  Br. at 1.  That is not true.  The Court held the SAC's description of "specific trade secrets" came "under the umbrella of ¶ 39, which the Court has already found insufficient, and ¶ 40, which states that Apple misappropriated '<u>at least</u>' the 'specific trade secrets.'"  Dkt. 219 at 5.  The Court also faulted Plaintiffs' descriptions of specific trade secrets because the preamble of each category used the word "including," which "suggests that the lists that follow each of these broad headings is not exhaustive."  *Id.* at 6.

Plaintiffs' amendments to address this Court's ruling included: (1) eliminating prior paragraph 39, (2) amending prior paragraph 40 (now paragraph 39) to remove the phrase "at least," (3) removing the preamble and word "including" before each list of trade secrets, and (4) defining "Confidential Information" to make clear Apple misappropriated "[t]he aforementioned information in Paragraphs 40-45."  TAC ¶ 39-46.

Apple ignores these revisions and raises three new arguments about long-present phrases.  First, Apple argues Plaintiffs included "catchall language" because Plaintiffs identified a trade secret in the "value, importance, and appropriateness" of their trade secrets.  Br. at 3.  But Plaintiffs' language is not a "catchall"—Plaintiffs identify the

"value, importance, and appropriateness" of **specifically** numbered trade secrets. Such knowledge is protectable. *Head Ski Co. v. Kam Ski Co.*, 158 F. Supp. 919, 923 (D. Md. 1958) ("knowledge of the particular process, method or material which is most appropriate to achieve the desired result may itself be a trade secret"); *O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*, 420 F. Supp. 2d 1070, 1089 (N.D. Cal. 2006) (knowledge of the "optimal" configuration of known elements was a trade secret). As the Sixth Circuit explained: "Facts of great value may, like the lost purse upon the highway, lie long unnoticed upon the public commons. Hundreds pass them by, till one more observant than the rest makes discovery." *A.O. Smith Corp. v. Petroleum Iron Works Co. of Ohio*, 73 F.2d 531, 539 (6th Cir. 1934) (affirming trade secret finding).[3]

Moreover, the SAC included similar language. SAC ¶¶ 41, 43, 45, 47, 49 ("value and importance"). Apple mentioned that phrase in its prior motion, but did not argue it rendered the description unclear. Dkt. 121 at 6. Courts often decline to consider "piecemeal" motions raising issues that could have been included in prior motions to dismiss. *See, e.g.*, *Ellis v. Worldwide Capital Holdings, Inc.*, 2015 WL 12697722, at *2 (C.D. Cal. Mar. 24, 2015); *Williams & Cochrane, LLP v. Quechan Tribe of Fort Yuma Indian Reservation*, 329 F.R.D. 247, 255 (S.D. Cal. 2018).

Second, Apple argues the phrase "at least one of" within the definition of particular trade secrets "leaves open the possibility of Plaintiffs later adding countless other [items]." *See* Br. at 4-5. That is not correct. The TAC uses that phrase to identify using at least one of a closed list of items. ██████████████████████████████████

██████████████████████████████████████████████████

Such language is common in trade secret descriptions. *See Intermedics, Inc. v. Ventritex, Inc.*, 804 F. Supp. 35, 38 (N.D. Cal. 1992) (trade secret required "***at least one*** output

---

[3] Apple's cited cases do not address any similar phrase. *See Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 1724763, at *3 (N.D. Cal. May 1, 2014) (redacting trade secret description that contained "no details"); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) (43-page document insufficient because it did not even identify what portion was a trade secret).

1   capacitor"). Moreover, the SAC included similar language requiring "at least" one of an

2   element, which neither Apple nor the Court criticized. *See, e.g.*, SAC ¶ 40.

3   Third, Apple argues Plaintiffs "muddle" their claim by referring to "Confidential

4   Information" distinct from their trade secrets. Br. at 4. Apple again points to language in

5   the SAC that neither Apple nor the Court criticized. Dkt. 89-1 ¶ 8. Nor is there any

6   ambiguity. The TAC refers to the undefined *lower-case* term "confidential information"

7   as background and defines the *capitalized* term "Confidential Information" as the trade

8   secrets Apple misappropriated. TAC ¶¶ 39-46, 224-252. The TAC quotes a contract that

9   uses the same term (*id.* ¶ 229), but that does not change the TAC's clear definition.

10  Moreover, Plaintiffs provided a Section 2019.210 statement identifying the same trade

11  secrets as misappropriated by Apple. Apple understands the trade secrets at issue.

12  **3.    Apple's Criticisms of Plaintiffs' Descriptions Lack Merit**

13  Plaintiffs' trade-secret description is highly detailed and spans over ten pages. *See*

14  TAC ¶¶ 40-45. The TAC alleges Apple misappropriated ███████████████████████

15  ████████████████████████████████████████████████████████████

16  ██████████. Rather than show any deficiency in the pleading, Apple misquotes the TAC

17  and argues the merits. Moreover, nearly all of the phrases Apple targets were in the SAC

18  and not previously challenged. *Compare* SAC ¶¶ 41, 43, 45, 47, 49 *with* TAC ¶¶ 40-44.

19  **a.    ████████████████████████████████**

20  As a preliminary matter, Apple does not even address several ████████████

21  ████████████████████████████████████████████ which this Court addressed in

22  its preliminary injunction order. *See* Dkt. 206 at 5-10. The Court determined Plaintiffs

23  are likely to prove "the existence of the trade secret" and "Apple misappropriated

24  Plaintiffs' trade secrets." *Id.* at 7-9. The Court found "Plaintiffs have defined their trade

25  secret with sufficient particularity" for Apple to provide "more than twenty pages of

26  detailed analysis" and for "the Court to discern with particularity what is in fact secret."

27

28

1    *Id.* at 10.  That alone shows the TAC is sufficient.  *See InteliClear*, 978 F.3d at 659.[4]

2            Apple fails to show any deficiency for the other ██████████  Apple first

3    argues ████████ is disclosed by two patents.  Br. at 5.  Apple does not explain

4    how either patent discloses each and every element.  *Id*.; *see Altavion, Inc. v. Konica

5    Minolta Sys. Laboratory, Inc.*, 226 Cal. App. 4th 26, 47 (2014) (secret protectable "even if

6    some or all of the elements" were "in the public domain").  Regardless, this Court has

7    explained it "will not undertake a summary judgment-like review of the patents at issue in

8    comparison to the alleged trade secret information to determine whether information has

9    been made public, particularly at the pleading stage where all inferences are to be drawn

10   in Plaintiffs' favor."  *MACOM Tech. Sols. Inc. v. Litrinium, Inc.*, 2019 WL 4282906, at *7

11   (C.D. Cal. June 3, 2019) (Selna, J.) (taking judicial notice of the "existence" of patents but

12   "not the disputed fact that they contain information rendering it implausible that Plaintiffs'

13   allege the existence of trade secret information").  Because patents are "highly technical,"

14   courts are "in no position on a motion to dismiss to sift through patent applications and

15   discern whether they fully disclose everything about [the trade secret]."  *Cedars Sinai

16   Med. Ctr. V. Quest Diagnostic Inc.*, 2018 WL 2558388, at *5 (C.D. Cal. Feb. 27, 2018).

17           If anything, as this Court explained, Apple's ability to provide "detailed analysis

18   about whether Plaintiffs' trade secret was in fact already public knowledge" proves that

19   "Plaintiffs have defined their trade secret with sufficient particularity."  Dkt. 206 at 10; *see

20   also Prolifiq Software Inc. v. Veeva Sys. Inc.*, 2014 WL 2527148, at *3 (N.D. Cal. June 4,

21   2014) (finding "the fact that [defendant] is able to craft detailed arguments for why

22   [plaintiff's] information does not constitute trade secrets means that [plaintiff] has

23   sufficiently identified that information").  Indeed, Apple is separately challenging

24   Plaintiffs' Section 2019.210 statement with a lengthy 100-page expert declaration arguing

25   _____

26   [4] Without explanation, Apple asserts Plaintiffs "narrow[ed]" their trade secret "after Apple
     pointed out" it was not secret.  Br. at 6.  That is not true.  As the Court explained, Apple
27   had argued Plaintiffs' trade secret was generally known using a patent that was irrelevant
     because it published ***after*** Apple's misappropriation.  Dkt. 206 at 6.
28

-7-

1    Plaintiffs' trade secrets are publicly disclosed.  Apple's purported desire for more detail

2    should be resolved in connection with that dispute.  *See InteliClear*, 978 F.3d at 662.

3         Apple next quotes a portion of ████████████ and claims it does not explain

4    ████████████████████  But Apple ***omits*** the portion answering Apple's

5    question: "████████████████████████████████████

6    ████████████████████████████████████████

7    ████████████████████████ (emphasis added to show

8    Apple's omission).   Apple also argues  the  trade  secret  does  not  explain  ████████

9    ████████████████████████████████████████

10   ████████████████████████████████████████

11   ████████████████████████████████████████

12   ████████████████████  Moreover, Apple fails to show "*why* the

13   level of specificity" in the TAC is insufficient because Apple does not show how the TAC

14   "hinders [it] from either crafting a defense" or "hinder[s] the court from crafting discovery

15   parameters."  *See Proofpoint, Inc. v. Vade Secure, Inc.*, 2020 WL 1911195, at *7 (N.D.

16   Cal. Apr. 20, 2020) (emphasis in original); *see also Genentech, Inc. v. JHL Biotech, Inc.*,

17   2019 WL 1045911, at *18 (N.D. Cal. Mar. 5, 2019) (defendant "does not sufficiently

18   show *how* that hinders it from crafting a defense or the Court from crafting discovery").

19   "To the extent more detail is needed, that detail can be obtained through discovery . . .."

20   *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *9 (C.D. Cal. June 30, 2014).

21        Apple's challenges to other trade secrets likewise lack merit.  Apple quotes a

22   portion of ████████████ and complains it does not explain ████████████

23   ████████████  Again, the full trade secret addresses that very question:

24   ████████████████████████████████████████

25   ████████████████████████████████████████

26   ████████████ (emphasis added to show Apple's omission).  Apple again

27   fails to explain why additional detail is necessary for it to defend itself.  *See Proofpoint*,

28   2020 WL 1911195, at *7.  Rather than take issue with Plaintiffs' description, Apple

-8-

appears to be arguing that Plaintiffs can only have narrow trade secrets directed toward specific granular information.  That is contrary to the law.  Trade secrets "fall into a continuum" from "something as high level as a general idea," to "mid-level concepts for developing and implementing the general idea," to "granular information such as source code and algorithms." *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2017 WL 2224838, at *2 (N.D. Cal. May 22, 2017).  High level secrets that can be implemented in different ways need not be limited to "how" they are implemented. *See Intermedics*, 804 F. Supp. at 38. Plaintiffs properly allege they have various trade secrets that fall along this continuum. Apple may argue Plaintiffs' secrets are not protectable on the merits at trial, but that does not mean Plaintiffs inadequately described their secrets at the pleading stage.

Apple also complains ███████████████████ include the word "optionally."  Br. at 6.  But that does not enable Plaintiffs to add subject matter—it merely explains the trade secret may be practiced with or without that component.  Apple next argues ████████ ████████████████████████████████████████████████████████████████ But Apple provides no factual support for that assertion and instead cites a single 1952 case relating to the "procedure for estimating the price of a new contract." *See Aetna Bldg. Maint. Co. v. West*, 39 Cal. 2d 198, 206 (1952).  *Aetna* says nothing about describing technical trade secrets and addressed final judgment—not a pleading.  *Id*.  A trade secret can include "factors" to consider and the "process" used to create algorithms. *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 846-47 (N.D. Cal. 2019).

Apple's sole argument as to ███████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████  That should satisfy the "sufficient particularity" standard at issue here.

Apple argues "patent claims—unlike trade secret allegations—by their nature outline the *minimum* requirements to practice a patented invention."  Br. at 11-12.  Apple

cites patent cases (*SRI Int'l* and *Brenner*), but cites no support for its puzzling assertion that trade secrets cannot be defined such that they can be practiced in combination with other elements.[5]  Such a rule would be contrary to the law that trade secrets "fall into a continuum" and need not be defined at the narrowest granular level.  *BladeRoom*, 2017 WL 2224838, at *2 (N.D. Cal. May 22, 2017).  It would also be contrary to the law that one can practice a trade secret by building on or changing it.  *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 514923, at *9-10 (N.D. Cal. Jan. 23, 2018).  As the Court of Appeal explained, "if a patentable idea is kept secret, the idea itself can constitute information protectable by trade secret law."  *Altavion*, 226 Cal. App. 4th at 47.

Apple's own cited authority approved of trade secrets described in far broader terms.  *Citcon USA,LLC v. RiverPay Inc.*, 2018 WL 6813211, at *4 (N.D. Cal. Dec. 27, 2018) ("hardware and software design of the POS devices").  Other courts similarly approve of far less detail.  *See e.g.*, *MACOM*, 2019 WL 4282906, at *7 ("design for automatic gain control in the TIA to prevent overload"); *TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*, 2016 WL 3475322, at *5 (C.D. Cal. Jan. 29, 2016) ("proprietary design drawings, manufacturing techniques, and manufacturing equipment including moulds and jigs"); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2011 WL 1044899, at *1 (N.D. Cal. Mar. 23, 2011) ("the design and technology best suited for the products, software code . . . performance capabilities, constraints and challenges for the product").

None of Apple's other cases support dismissal.  Apple cites *CleanFish, LLC v. Sims*, 2020 WL 1274991, at *9 (N.D. Cal. Mar. 17, 2020), but the description there broadly alleged the trade secrets included "customer lists, customer purchasing data, customer sales figures and other related customer purchasing analysis and trends."  Apple also cites *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998), but

---

[5] Apple's cited cases merely stated a plaintiff must "clearly identify" its trade secrets. *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 702 (9th Cir. 2017); *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011). Neither held trade secrets cannot be defined as a set of "minimum requirements."

1   *InteliClear* distinguished *Imax* as applying to summary judgment after discovery.  978

2   F.3d at 663.  Moreover, in *Imax* the plaintiff admitted its trade secret was limited to

3   "precise dimensions and tolerances" but failed to identify those dimensions and

4   tolerances.  *Id.*  Plaintiffs do not agree their trade secrets must be limited to the particular

5   "how," "which," and "what" demanded by Apple.  Br. at 5.

6           **b.** ████████████████████████████████████

7         Apple attacks ████████████████████████████████████████

8   by arguing ████████████████████████████████████████

9   █ Apple asserts it needs "more" detail because ██████████████████████████

10  ██████████ But Apple again omits the detail it seeks.  Apple plucks the phrase █████

11  ████████████ from a detailed description of a specific configuration: █████████████

12  █████████████████████████████████████████████████████████████████

13  ████████████████████████████████████ (emphasis added to show Apple's

14  omissions).  Apple fails to show any deficiency in Plaintiffs' actual trade secret.

15        Apple cobbles together portions of ████████████████ to suggest they are a

16  single trade secret. ████████████████████████████████████████████████

17  █████████████████████████████████████████████████████████████████

18  █████████████████████████████████████████████████████████████████

19  ████████████████ Apple claims the TAC does not describe the █████████████

20  ████████████████████ *See Genentech*, 2019 WL 1045911, at *17-18

21  (finding "analytical methods to test and ensure the stability of the biologic" sufficient).

22  Regardless, the TAC includes the detail Apple purports to seek:

23  ████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████

28

1

2

3

4

5   ████████████ (emphasis added to show Apple's omissions).

6        Apple similarly quotes small portions of ██████████████████████

7

8   ███████████████████████████████████████████████  Apple

9   then argues those trade secrets are disclosed by a patent. *Id*. As discussed, whether a

10  trade secret is generally known is a factual matter inappropriate for resolution on the

11  pleadings. *MACOM*, 2019 WL 4282906, at *7. If anything, Apple's ability to identify a

12  patent it claims discloses the secrets demonstrates Plaintiffs adequately described their

13  secrets. Dkt. 206 at 10; *Prolifiq*, 2014 WL 2527148, at *3. Moreover, Apple's cropped

14  quotes again omit several requirements, including that ███████████████████

15  ███████████████████████████████████████████████  Apple

16  cites a single case, but that case is nothing like the TAC. *See Space Data Corp. v. X*, 2017

17  WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (dismissing complaint that merely provided

18  a "high-level overview" such as "data on the environment in the stratosphere").

19         **c.**   ████████████████

20       Apple again selectively quotes and combines phrases from ████████████

21  ████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████

23  ███████████████████████  Apple omits the extensive detail in these secrets:

24

25

26

27

28



██████████ (emphasis added to show Apple's omissions).   Similarly, Apple

combines ██████████████████████████████████

███████████████████████████████████████████

██████████████ Apple complains those secrets do not explain ████████

█████████████████████ But Plaintiffs' trade secrets are far more detailed

and address the very issue Apple raises. ████████████ Regardless, a trade secret need

not be limited to precisely "how" it is implemented. *Intermedics*, 804 F. Supp. at 38.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

       **d.** ██████████████████████████████

       Apple likewise criticizes ████████████████████████ by combining

and quoting portions of them. ██████████████████████

███████████████████████████████████████████

████████████████████████████████████ Apple

again does not address Plaintiffs' actual trade secrets.

       Apple cites *Digital Mentor, Inc. v. Ovivo USA*, 2018 WL 993944, at *2 (W.D.

Wash. Feb. 21, 2018), to argue Plaintiffs needed to identify a specific algorithm.  But

*Digital Mentor* addressed a preliminary injunction where the plaintiff defined its trade

secret as an "algorithm." *Id.* ██████████████████████████████

███████████████████████████████████████████

████████████████████████████████████ Trade secrets

can include "high level" ideas and need not be described as granular "algorithms."

*BladeRoom*, 2017 WL 2224838, *2. Moreover, Apple does not even address ████████

### e.  **Business and Marketing Plans and Strategies**

Apple admits it attempts to "boil down" Plaintiffs' business and marketing plans and strategies ("B&M") to "broad ideas" rewritten by Apple.  Br. at 8.  In less than three lines, Apple generalizes ████████████████████████████████████ ████████████████████████████████  Apple asserts Plaintiffs are claiming "product 'marketing'" as a secret even though the TAC claims no such thing.  Apple also criticizes ████████████████████████████████████████████████████████ ████████████████████████████████  Apple also argues ████████████████ is "the basic job of *any* medical professional," but that is an argument on the merits for the jury.  Apple also fails to acknowledge that secret is dependent on an earlier secret.  *Id.*  Nowhere does Apple show Plaintiffs' ***actual*** descriptions are insufficient.

Apple also complains that Plaintiffs have not identified ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████  Apple cites nothing requiring Plaintiffs to narrow their trade secrets in such a manner, and the law is to the contrary.  *See BladeRoom*, 2017 WL 2224838, *2; *Intermedics*, 804 F. Supp. at 38.  Apple cites *Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23 2018), but that case addressed trade secrets merely described as "data configuration protocols and methods," "interpretation of data," and "analytics, analytics tools, and analytics programming."  Those descriptions bear no resemblance to the TAC.

Apple cites *Kavanagh v. Tuller*, 2017 WL 1496436, at *4 (S.D. Cal. Apr. 26, 2017), to suggest marketing strategies cannot be a secret.  But *Kavanagh* found the information was not secret because plaintiff ***admittedly*** published it—not because marketing strategies cannot be secret.  *Id.*  Courts routinely protect business and marketing strategies, including those described in far less detail.  *See, e.g.*, *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010) ("business methods and marketing plans, such as prospective customer and sales methods for attracting and retaining customers"); *New Show*, 2014 WL 2988271, at *9 ("business plans, pricing, marketing

-14-

1  strategies"); *Brocade*, 2011 WL 1044899, at *1 ("information regarding its products,

2  including customer needs and terms of agreements with customers").

3       Finally, Apple cites *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133,

4  1144-46 (N.D. Cal. 2019), but a later decision in that same case rejected a challenge to the

5  following description: "pricing and market strategy, especially with respect to price-

6  sensitive accounts."  Powell Decl., Ex. 1 (*AlterG, Inc. v. Boost Treadmills LLC*, Dkt. 41

7  (N.D. Cal. Sept. 5, 2019)) at 11.  The court explained that its prior concerns were directed

8  to "technical matters" and that "[p]ricing and marketing strategy, by contrast, are less

9  technical, and their description ***does not demand the same level of specificity . . ..***"  *Id.*

### f.  <u>Strategies For Interacting With Hospitals</u>

11       Apple attacks Plaintiffs' strategies for interacting with hospitals ("SH") trade secret

12  ████████████████████████████████████████

13  ████████████████████████████████████████

14  ████████████████████████████████████████

15  ████████████████████████████████████████

16  ████████████████  The law protects such information.  *See, e.g., Blindlight,*

17  *LLC, v. Cubbison*, 2017 WL 4769460, *10 (C.D. Cal. July 3, 2017) ("The knowledge

18  related to these projects and the requirements of the clients was clearly 'of commercial

19  value' and thus merits trade secret protection").  ████████████████

20  ████████████████████████████████  But a

21  compilation is protectable "even if some or all" of the information is public.  *Altavion*, 226

22  Cal. App. 4th at 47.  Regardless, such attacks on the merits demonstrate Plaintiffs'

23  ***descriptions*** are sufficient.  Dkt. 206 at 10; *see also Prolifiq*, 2014 WL 2527148, at *3.

24       Apple next attacks ████████ by plucking a handful of words from each

25  and combining them.  Br. at 10.  Again, Plaintiffs' actual trade secrets are far more

26  detailed ████████████████████.  Apple disparages

27  ████████████████████████████████████████

28  ████████████████████████████████████████

█████████████████████████████████████████████████████████████

████ Those attacks on the merits are unsupported and improperly ask the Court to draw inferences in Apple's favor when the TAC alleges the opposite. ████████████

█████████████████████████████████████████████████████████████

████████████████ Apple's attorney argument on the merits does not support dismissal.

Apple's remaining arguments merely repeat its endless demands for more detail, █████████████████████████████████████████████████████████████

████████████████████████████████ As discussed, Plaintiffs are not required to narrow their trade secrets, or identify such detail in the complaint. Indeed, Apple's own cited authority did not require such detail. *Citcon USA*, 2018 WL 6813211, at *4 (description of "contact information" sufficient). Courts routinely find far less detailed sales and marketing trade secrets sufficient. Section II.A.3.e, *supra*. Moreover, Apple's cases do not support its position. Apple cites *Emazing Lights LLC v. De Oca*, 2016 WL 3658945, at *2 (C.D. Cal. Jan. 7, 2016), but that case criticized something very different—a description stating "any other information not publically [*sic*] and widely known." Apple cites *Lohan Media LLC v. Thane Int'l Inc.*, 2001 WL 1827169, at *3 (C.D. Cal. Nov. 16, 2001), but that was a preliminary injunction case addressing likelihood of success in establishing a trade secret—not the sufficiency of a pleading.

### 4. **Apple's Ownership Argument Lacks Merit**

Apple next argues Plaintiffs failed to "delineate which trade secrets are owned by whom." Br. at 11. Apple made this argument in its motion to dismiss the FAC (Dkt. 38-1 at 20) but ***not*** in its motion to dismiss the SAC (Dkt. 102-1). Apple offers no explanation why the Court should consider an argument Apple dropped. *See Ellis*, 2015 WL 12697722, at *2. Regardless, Apple's only cited authority merely held that a single plaintiff was required to plead ownership. *See Cal. Police Activities League v. Cal. Police Youth Charities, Inc.*, 2009 WL 537091, at *4 (N.D. Cal. Mar. 3, 2009). Courts do not require multiple plaintiffs to delineate which entity owns each trade secret. *See Five Star Gourmet Foods, Inc. v. Fresh Express Inc.*, 2020 WL 513287, at *7 (N.D. Cal. Jan. 31,

2020) (holding "Plaintiff*s* therefore adequately alleged that *they* owned a trade secret");
*see also BladeRoom Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 991 (N.D. Cal. 2017) (finding plaintiffs could sue jointly on trade secrets as both the owner and licensee).

### B.   The TAC Plausibly Alleges Efforts To Maintain Secrecy

The TAC alleges Plaintiffs took reasonable efforts to protect their trade secrets, including through confidentiality agreements, marking documents as confidential, and restricting access.  TAC ¶ 227.  Apple's cited authority explains that such allegations suffice.  *MACOM*, 2019 WL 4282906, at *8; *Citcon*, 2018 WL 6813211, at *4.

Apple ignores these allegations and argues Plaintiffs did not take reasonable efforts because Plaintiffs sued two years after *Apple* published some of Plaintiffs' trade secrets. Br. at 12-15.  As an initial matter, Apple provides no valid explanation for first raising this issue now. ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████  In fact, this Court cited that allegation to reject Apple's statute of limitations defense.  Dkt. 60 at 6.

Regardless, Apple's argument is legally wrong.  As this Court previously explained, the relevant issue is whether the information constitutes a trade secret *at the time of misappropriation*.  Dkt. 206 at 5 (patent published after Apple's misappropriation "cannot be used as evidence that Plaintiffs' claimed trade secret was public when Apple filed its own application); *see also Medtronic MiniMed, Inc. v. Nova Biomedical Corp.*, 2009 WL 10671420, at *3, *6 (C.D. Cal. May 22, 2009) (finding the expiration of an NDA did not control whether the plaintiff took reasonable efforts to maintain secrecy at the time of misappropriation months earlier).

Apple relies heavily on *HiRel Connectors, Inc. v. Dep't of Def. of U.S.*, 2003 WL 27168678, at *11 (C.D. Cal. Apr. 14, 2003), but a later decision in that case rejected Apple's argument.  *HiRel*, 2005 WL 4958547, at *7.  The later decision held the plaintiff may have lost its claim against those who obtained the information "innocently" but did

-17-

1    **not** lose its claim against those who improperly published the information.  *Id.*  That is

2    because the statute of limitations permits suit "within three years" and "a misappropriator

3    or his privies can[not] baptize their wrongful actions by general publication of the secret."

4    *Id.* (alteration in original; internal quotation omitted).  Apple's other cases merely applied

5    the statute of limitations and did so on summary judgment.  *Alamar Biosciences Inc. v.*

6    *Difco Labs. Inc.*, 1996 WL 648286, at \*6 (E.D. Cal. Feb. 27, 1996); *Intermedics, Inc. v.*

7    *Ventritex, Inc.*, 822 F. Supp. 634, 657 (N.D. Cal. 1993) (where one trade secret claim was

8    brought outside the statute of limitations the statute applied to related trade secrets).  This

9    Court rejected Apple's statute of limitations challenge to the pleadings.  Dkt. 60 at 6.[6]

10   **C.    The TAC Plausibly Alleges Misappropriation**

11          **1.    The TAC Plausibly Alleges Apple's Knowledge**

12          The TAC alleges many facts that, together, show Apple knew the former employees

13   were not authorized to provide Plaintiffs' trade secrets to Apple.  TAC ¶¶ 19-24, 229, 248.

14   This Court already held "Plaintiffs are likely to show that Apple should have known that

15   Lamego possessed confidential information and a duty to maintain secrecy."  Dkt. 206 at

16   7.   The Court explained, "[f]rom these pieces of evidence **combined**, the Court concludes

17   that Plaintiffs are likely to show that Apple misappropriated Plaintiffs' trade secrets

18   through acquisition."  *Id.* at 8-9.  Rather than address Plaintiffs' allegations as a whole,

19   Apple argues each fact alone is insufficient.  Br. at 16-20.  Apple's own authority rejects

20   that approach.  *See Soo Park v. Thompson*, 851 F.3d 910, 929 n.22 (9th Cir. 2017) (while

21   some facts alone may appear innocuous, considering the "entire sequence of events" was

22   "suggestive of illegal conduct and is thus sufficient to survive a motion to dismiss").

23          Each of Apple's specific criticisms also lacks merit.  First, Apple argues the parties'

24   meetings did not show Apple knew of "specific" information.  Br. at 16-17.  But Plaintiffs

25

26   [6] Apple implies Plaintiffs published their trade secrets by citing Apple's patents in an IDS.
     Br. at 14.  But prosecution counsel merely recited the patent numbers along with with
27   **more than 900** others.  Apple RJN, Ex. 9 at 163.  That hardly shows Plaintiffs published
     their trade secrets and, regardless, is irrelevant to Apple's earlier misappropriation.
28

did not allege the meetings in isolation.  Among other things, Plaintiffs allege Apple (1) met with Plaintiffs because it desired Plaintiffs' technology, (2) systematically recruited Plaintiffs' employees, including Masimo's Chief Medical Officer and Cercacor's CEO, when discussions broke down, (3) obtained extensive patent disclosures from Lamego in the short time he worked at Apple, and (4) selectively requested non-publication of Lamego applications containing Plaintiffs' trade secrets. TAC ¶¶ 19-24, 229, 248.  Apple cites *CleanFish*, 2020 WL 1274991, at *10, but that case held that merely contacting plaintiff's employees was insufficient. *Id*.

Second, Apple argues Plaintiffs' allegation that Apple recruited Lamego and O'Reilly ***because*** of their knowledge of Plaintiffs' trade secrets is unsupported. Br. at 17. But that is yet another attack on the merits for trial.  Courts find such allegations sufficient at the pleading stage. *See, e.g.*, *Genentech*, 2019 WL 1045911, *11 (defendant "sought out Genentech's trade secrets by hiring [individuals]").  Plaintiffs allegation is "not that the trade secret merely wafted [Apple]'s way." *Spice Jazz LLC v. Youngevity Int'l Inc.*, 2019 WL 4573705, *9 (S.D. Cal. Sept. 9, 2019).  Plaintiffs' allegation is also supported by other facts discussed above.  Apple argues it has an "equally consistent" explanation, but that is a merits dispute for the jury. *Highmark Digital, Inc. v Casablanca Design Centers, Inc.*, 2020 WL 2114940, at *12 (C.D. Cal. Mar. 26, 2020) (where facts are "susceptible to more than one legitimate inference" the issue "is a question of fact for the jury").

Apple also criticizes the TAC for alleging Apple's motive on "information and belief." Br. at 17.  Such an allegation is permissible because it pertains to facts "not presumptively in the knowledge of the pleading party." *Calendar Research LLC v. StubHub, Inc.*, 2017 WL 10378336, at *4 (C.D. Cal. Aug. 16, 2017); *see also Brocade*, 2011 WL 1044899, at *6 (details were "presumptively in the possession of [defendant], not [plaintiff]"); *Metricolor*, 2020 WL 3802942, at *13; *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015).  Apple's cited cases did not hold otherwise. *Blantz v. California Dep't of Corr. & Rehab.*, 727 F.3d 917, 926-27 (9th Cir. 2013) (suit pursued executive ***in his individual capacity*** by merely assuming he

"directed" others); *Hooked Media Grp, Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 332 (2020) (discussing general employee mobility policy).

Third, Apple argues Plaintiffs' 2014 warning letter was insufficient because it did not disclose the details of Plaintiffs' trade secrets.  Br. at 17-18.  But this Court already rejected that argument.  Dkt. 206 at 8 (finding the letter showed Apple's knowledge). Plaintiffs should not have to ***disclose*** their trade secrets to Apple merely to warn Apple about Lamego's knowledge.  Apple cites *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012), in which the defendant obtained trade secrets from an entity that was ***previously*** authorized to license them.  Based on those facts, the court required the plaintiff to allege the defendant knew the entity was no longer authorized to license the secrets.  *Id.*  Courts distinguish *MedioStream* where, as in this case, there are no allegations "suggesting that [defendant] believed [plaintiff] had consented to [defendant] using its [trade secrets]." *Lilith Games Co. v. uCool, Inc.*, 2015 WL 4128484, at *4 (N.D. Cal. July 8, 2015).  Apple's other cases are irrelevant because they address inevitable disclosure.  *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1462 (2002); *Hooked Media*, 55 Cal. App. 5th at 331-32.   Plaintiffs do not rely on inevitable disclosure.  *See Lilith Games*, 2015 WL 4128484, at *3 (pleading did not rely on "inevitable disclosure" where it alleged defendant acquired and used information it should have known was confidential).  Moreover, this Court already rejected Apple's argument that Plaintiffs' letter reflected an "invalid" inevitable disclosure theory.  Dkt. 206 at 8.

Apple also argues warning letters that do not disclose specific trade secrets "alone ***cannot*** support an inference" of knowledge because otherwise they would "***always*** give rise to" knowledge and liability.  Br. at 18.  But Plaintiffs do not rely on the letter in isolation, much less argue such letters ***always*** show knowledge.  None of Apple's cases support its categorical rule that warning letters ***cannot*** support an inference of knowledge. *See Pellerin v. Honeywell International, Inc.*, 877 F. Supp. 2d 983 (S.D. Cal. 2012) (argument based on "access to" secrets and failure to provide "exculpatory explanation"); *Edwards v. Arthur Anderson LLP*, 44 Cal. 4th 937, 945 (2008) (discussing general policy).

Fourth, Apple dismisses Plaintiffs' allegation that Apple knew Lamego could not develop technology so quickly. Br. at 18. But other courts credit such allegations. *See, e.g., WeRide*, 379 F. Supp. 3d at 849 ("The implausibly fast development of technology can contribute to finding misappropriation."); *Ajaxo Inc. v. E\*Trade Grp. Inc.*, 135 Cal. App. 4th 21, 53 (2005) (affirming misappropriation finding based in part on speedy development). Apple claims *Hooked Media*, 55 Cal. App. 5th at 329, rejected similar allegations, but that was on summary judgment. Apple's other cited cases merely held that quickly developing a product ***alone*** is insufficient. *See M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 6655274, at \*9 (C.D. Cal. Sept. 23, 2019); *Lamont v. Krane*, 2019 WL 2113903, at \*4 (N.D. Cal. May 14, 2019).

Fifth, Apple argues Plaintiffs cannot rely on Apple's non-publication requests because it had a "statutory right" to make those requests. Br. at 19. Just because Apple has a "right" to make such requests does not mean the requests are irrelevant to alleging knowledge. Apple misrepresents this Court's prior order to suggest the Court credited Apple's argument by "explain[ing]" Apple had "submitted more than 300 such requests." *Id.* (citing Dkt. 198 at 8-9). The Court actually rejected Apple's argument because "without knowing the full number of patent applications Apple submits, [that information] does not tell the Court whether submitting non-publication requests is in fact the norm for applications." Dkt. 198 at 8 & 9 (concluding "Plaintiffs were likely to show Apple's knowledge and misappropriation"). Plaintiffs now specifically allege the "vast majority" of Apple's applications do ***not*** include a non-publication request. TAC ¶ 248.

Finally, Apple argues Plaintiffs must plead facts to "exclude" Apple's alternative explanation. Br. at 19-20. But Apple's own cited authority held that is required only where the alternative is "***so convincing*** that plaintiff's explanation is ***implausible***." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014). Apple provides no alternative, much less one rendering Plaintiffs' allegations implausible.

## 2.    The TAC Plausibly Alleges Apple's Misappropriation

Plaintiffs provided specific allegations regarding how Lamego and O'Reilly were

-21-

1   exposed to specific trade secrets and how Apple used them.  TAC ¶¶ 232-244. ███████

2   ████████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████

6   ███████████████████████████████████████████████████

7   Apple complains that Plaintiffs did not provide allegations as to each separately

8   numbered trade secret.  Br. at 20-21.  But a plaintiff is not required to "show in its pleadings

9   how [defendant] incorporated *each* of [plaintiff's] alleged trade secrets . . .."  *Yeiser R&D*

10  *LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, (S.D. Cal. 2017).  It is "*not* common for a

11  plaintiff to know, prior to discovery, the details surrounding an alleged theft of trade

12  secrets."  *Id.*  A complaint is thus sufficient if it alleges the defendant "misappropriate[d]

13  *some* of Plaintiff's trade secrets . . .."  *BLK Enterprises v. Unix Packaging, Inc.*, 2018 WL

14  5993844, at *4 (C.D. Cal. June 14, 2018) (emphasis in original).  Apple's arguments defy

15  the settled rule that "there is *no* requirement that' a plaintiff plead exactly how

16  [d]efendants improperly obtained or used the alleged trade secret."  *Metricolor*, 2020 WL

17  3802942, at n.7 *13.  "That is because, at the pleading stage, discovery has not yet

18  commenced and it would be unreasonable to require a plaintiff to demonstrate the precise

19  ways in which [d]efendants have used their trade secrets, given that [d]efendants are the

20  only ones who possess such information."  *Id.*

21  Apple cites no case holding otherwise.  Most addressed conclusory allegations that

22  simply assumed misappropriation.  *Carr v. AutoNation, Inc.*, 2018 WL 288018, at *2

23  (E.D. Cal. Jan. 4, 2018) (assuming misappropriation because the defendant had limited

24  experience); *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *14 (N.D. Cal. June 29,

25  2017) (assuming misappropriation because the parties sold oil and vinegar to overlapping

26  stores); *Space Data*, 2017 WL 5013363, at *2 (defendant "engaged in other business

27  activity" based on plaintiff's trade secrets); *MACOM*, 2019 WL 4282906, at *9 (defendant

28  "incorporated Plaintiffs' proprietary designs into [its] products").  Apple's other case

addressed whether misappropriation occurred "after the enactment date" of the Federal DTSA. *Physician's Surrogacy, Inc. v. German*, 2018 WL 638229, at *8 (S.D. Cal. 2018).

Apple next argues the "timing" of its own disclosure is "critical" because publishing information extinguishes a trade secret. Br. at 21. As this Court held, the relevant inquiry is whether the information was secret ***at the time of misappropriation***. Dkt. 206 at 5. Apple cannot "baptize [its] wrongful actions by general publication of the secret." *HiRel*, 2005 WL 4958547, at *7. Apple claims Plaintiffs merely point to "similarity" of design features and have not proven Lamego and O'Reilly were responsible. Br. at 21. But courts routinely credit such allegations. *See, e.g.*, *Metricolor*, 2020 WL 3802942, at *13 ("seemingly identical" design); *Alta Devices, Inc. v. LG Elecs, Inc.*, 343 F. Supp. 3d 868, 883-84 (N.D. Cal. 2018) (design "just like" plaintiff's). Plaintiffs cannot be expected to detail, at this stage, ***internal*** Apple meetings or emails where Lamego or O'Reilly shared Plaintiffs' secrets. Apple's cited authority did not hold otherwise. *See Brown v. Adidas Int.*, 938 F. Supp. 628, 634 (S.D. Cal. 1996) (similarities ***alone*** insufficient where drawings were "similar to all soccer shoes the court has ever seen").

### 3.   The TAC Plausibly Alleges Inducement

Apple next argues Plaintiffs may not allege inducement on "information and belief." Dkt. 327-1 at 22. As a preliminary matter, "inducement" is relevant only to acquisition by improper means. Cal. Civ. Code § 3426.1(a). Apple can be liable for use and disclosure of trade secrets without inducement. *Id.* § 3426.1(b)(2)(B). Regardless, Apple is incorrect. This Court has held a plaintiff may allege inducement "on information and belief" because the information "is not presumptively in the knowledge of the pleading party." *Calendar Research*, 2017 WL 10378336, at *4; *see also Brocade*, 2011 WL 1044899, at *6; *Metricolor*, 2020 WL 3802942, at *13; *Autodesk*, 2015 WL 2265479, at *6.

Despite Plaintiffs previously citing the above cases, Apple ignores all but *Calendar Research*. Apple claims *Calendar Research* pleaded "factual content" not alleged here. Br. at 22-23. But Apple points to allegations relevant to the ***individual***. *Id.* For inducement by the ***corporate defendant***, *Calendar Research* relied on three allegations:

-23-

(1) defendant knew of the valuable trade secrets, (2) defendant desired the technology, and (3) defendant knew the individuals were not authorized to possess or disseminate it. 2017 WL 10378336 at *4. The TAC makes similar allegations. TAC ¶¶ 19-24, 229-30. None of Apple's cases support its position. *See Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *3 (N.D. Cal. Mar. 19, 2018) (copyright infringement evidence not peculiarly in defendant's possession); *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 2020 WL 4937129, at *9 (E.D. Cal. Aug. 24, 2020) (dismissing aiding and abetting breach of contract but not mentioning inducement for trade secret). Apple's other cited case actually found "many of the relevant facts here are known only to the defendant . . .." *Park*, 851 F.3d at 928-29.

### 4. <u>The TAC Plausibly Alleges Vicarious Liability</u>

Apple's respondeat superior arguments likewise lack merit. Under respondeat superior, "an innocent employer may be liable for the torts its employee commits while acting within the scope of his employment." *Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, 2010 WL 2764714, at *3 (N.D. Cal. July 13, 2010). An employer is vicariously liable "if the employee's act was an outgrowth of his employment, inherent in the working environment, typical of or broadly incidental to the employer's business, or, in a general way, foreseeable from his duties." *Id.*

Here, the TAC alleges Apple hired O'Reilly to "help develop Defendants' relationships" and "strategic plans for clinical monitoring." TAC ¶ 264. Apple hired Lamego to "help develop Defendant's non-invasive monitoring technology." *Id.* Lamego's and O'Reilly's actions were an "outgrowth of" and "inherent in" the working environment because Apple assigned them tasks related to the trade secrets. *Id.* The actions were "at least typical or broadly incidental to Defendant's business of developing noninvasive monitoring technology, filing patents on such technology, developing relationships with clinicians, and developing strategic plans for clinical monitoring." *Id.*

Courts find similar allegations sufficient. *See, e.g., Language Line*, 2010 WL 2764714, at *3 (employees "acted within the scope of their employment, since an act of this nature was generally foreseeable as part of their duties to solicit customers for

-24-

[defendant]"); *Brain Injury Assoc. of California v. Yari*, 2020 WL 3643482, at *6 (C.D. Cal. Apr. 30, 2020) (employees "used information from [plaintiff's] Master List at least in part for the benefit of [corporate defendant]"); *Extreme Reach, Inc. v. Spotgenie Partners, LLC*, 2013 WL 12081182, at *7 (C.D. Cal. Nov. 22, 2013).  Most of Apple's cases (*Pellerin*, *Universal Analytics*, *Veronica Foods*, *MACOM*, and *Whyte*) do not even address respondeat superior.  Those that do are irrelevant.  *See Yamaguchi v. Harnsmut*, 106 Cal. App. 4th 472, 481 (2003) (reciting general test); *U.S. Legal Support, Inc. v. Hofioni*, 2013 WL 6844756, at *6 (E.D. Cal. Dec. 20, 2013) (no facts showing acts were "required by or incident to [employees'] duties, or could reasonably be foreseen by the employer").

## D.   **Apple's Motion Is Untimely**

Apple's Motion is also technically untimely.  *See* Local Rule 5-4.6.1 ("*all* electronic transmissions of documents must be completed prior to midnight").  Apple did not even *begin* filing until 11:59 pm on the deadline.  Dkt. 236.  Apple filed the bulk of its motion between 12:12am and 1:44am the next morning.  Dkt. 237-239.  While Plaintiffs would not ordinarily address this issue, Apple seems to be making a habit of transmitting portions of its filings after midnight.  *See* Dkt. 125 (filed at 12:22 am); Dkt. 143 (filed at 12:09 am)

## E.   **Denying Leave to Amend Would Be Improper**

Apple has identified no fundamental flaw in the TAC and, instead, merely asks for more detail.  Apple's first ground ("description of trade secrets") makes new arguments, Apple's second ground ("efforts to maintain secrecy") is entirely new, and the Court has never ruled on Apple's third ground ("misappropriation").  Accordingly, it would be inappropriate to deny leave to amend because there is no evidence Plaintiffs are unable to cure the alleged deficiencies. *See Quality Towing, Inc. v. Jackson*, 2016 WL 3017642, at *3 (N.D. Cal. May 26, 2016) ("Because Defendants raised their issue preclusion argument for the first time in this motion, the court cannot yet say that further amendment is futile.").

## III.  CONCLUSION

For the reasons discussed above, Apple's Motion lacks merit and should be denied.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  December 14, 2020       By: */s/ Adam B. Powell*
                                        Joseph R. Re
                                        Stephen C. Jensen
                                        Benjamin A. Katzenellenbogen
                                        Perry D. Oldham
                                        Stephen W. Larson
                                        Adam B. Powell

                                        Attorneys for Plaintiffs
                                        Masimo Corporation and

34050210