REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

Attorneys for Defendant Apple Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendants. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **REPLY IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO DISMISS THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' THIRD AMENDED COMPLAINT** <br><br> **Hearing:** <br> Date: January 4, 2021 <br> Time: 1:30 p.m. <br> Place: Courtroom 10C <br> Judge: Hon. James V. Selna |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................ 1

II.    PLAINTIFFS' CUTSA CLAIM SHOULD BE DISMISSED ............................ 2

       A.     Plaintiffs Do Not Meet the Standard for Alleging Their Trade
              Secrets. ................................................................................................... 2

              1.     It Is Still Impossible to Differentiate the Alleged Trade
                     Secrets from the State of the Art. ................................................. 2

              2.     Plaintiffs Are Still Improperly Hedging by Pleading a Non-
                     Exhaustive List of Alleged Trade Secrets. ................................ 13

              3.     Plaintiffs' Copying of Apple's Patent Claims Does Not
                     Provide the Required Particularity. ........................................... 14

              4.     Plaintiffs Must Properly Allege Ownership of Their Trade
                     Secrets. ...................................................................................... 17

              5.     Plaintiffs' Ever-Shifting Descriptions Require Scrutiny. ......... 17

       B.     Plaintiffs' New Allegations Prove that They Failed to Take
              Reasonable Efforts to Maintain Secrecy of Their Alleged Trade
              Secrets. ................................................................................................. 18

       C.     After Four Tries, Plaintiffs Still Fail to Plead Facts Sufficient to
              Raise a Plausible Claim that Apple Engaged in Misappropriation. ......... 19

              1.     Plaintiffs Still Fail to Allege That Apple Knew It Was
                     Acquiring, Using, or Disclosing Plaintiffs' Purported Trade
                     Secrets. ...................................................................................... 19

              2.     Plaintiffs Still Fail to Allege That Apple Acquired, Used, or
                     Disclosed Plaintiffs' Purported Trade Secrets. ......................... 22

              3.     Plaintiffs Still Fail to Allege That Apple Induced a Breach. ......... 22

              4.     Plaintiffs Still Fail to Allege *Respondeat Superior* Liability. ....... 24

III.   PLAINTIFFS SHOULD BE DENIED FURTHER LEAVE TO AMEND ....... 25

IV.    CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abagninin v. AMVAC Chem. Corp.*,
  545 F.3d 733 (9th Cir. 2008) ........................................................................ 26

*Acrisure of Cal., LLC v. SoCal Com. Ins. Servs.*,
  2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) ..................................... 2, 11

*Advanced Modular Sputtering v. Superior Ct.*,
  132 Cal. App. 4th 826 (2005) ......................................................................... 2

*Agency Solutions.com, LLC v. TriZetto Grp., Inc.*,
  819 F. Supp. 2d 1001 (E.D. Cal. 2011) ...................................................... 16

*Ajaxo Inc. v. E*Trade Grp. Inc.*,
  135 Cal. App. 4th 21 (2005) ......................................................................... 22

*Alamar Biosciences Inc. v. Difco Labs. Inc.*,
  1996 WL 648286 (E.D. Cal. Feb. 27, 1996) ............................................. 19

*Alta Devices, Inc. v. LG Elecs., Inc.*,
  343 F. Supp. 3d 868 (N.D. Cal. 2018) ........................................................ 23

*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*,
  226 Cal. App. 4th 26 (2014) ............................................................ 12, 13, 16

*AlterG, Inc. v. Boost Treadmills LLC*,
  2019 WL 4221599 (N.D. Cal. Sept. 5, 2019) ............................... 1, 11, 15

*AlterG, Inc. v. Boost Treadmills LLC*,
  388 F. Supp. 3d 1133 (N.D. Cal. 2019) ...................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 23

*Autodesk, Inc. v. ZWCAD Software Co.*,
  2015 WL 2265479 (N.D. Cal. May 13, 2015) ........................................... 24

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
  2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) ............................................. 12

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
   2017 WL 2224838 (N.D. Cal. May 22, 2017)............................................................5

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
   2018 WL 514923 (N.D. Cal. Jan. 23, 2018)..........................................................16

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
   2019 F. Supp. 3d 984 (N.D. Cal. 2017)................................................................17

*Blindlight, LLC, v. Cubbison*,
   2017 WL 4769460 (C.D. Cal. July 3, 2017)........................................................12

*Brain Injury Ass'n of Cal. v. Yari*,
   2020 WL 3643482 (C.D. Cal. Apr. 30, 2020)......................................................25

*Brescia v. Angelin*,
   172 Cal. App. 4th 133 (2009)................................................................................2

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
   2011 WL 1044899 (N.D. Cal. Mar. 23, 2011)..................................11, 17, 23, 24

*Calendar Research LLC v. StubHub, Inc.*,
   2017 WL 10378336 (C.D. Cal. Aug. 16, 2017)..............................................23, 24

*CanWe Studios LLC v. Sinclair*,
   2013 WL 12120437 (C.D. Cal. Nov. 20, 2013)....................................................11

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*,
   2018 WL 2558388 (C.D. Cal. Feb. 27, 2018)......................................................13

*Chao v. Aurora Loan Servs., LLC*,
   2013 WL 5487420 (N.D. Cal. Sept. 30, 2013)....................................................18

*Citcon USA, LLC v. RiverPay, Inc.*,
   2018 WL 6813211 (N.D. Cal. Dec. 27, 2018)..................................................5, 16

*CleanFish, LLC v. Sims*,
   2020 WL 1274991 (N.D. Cal. Mar. 17, 2020)..............................................11, 20

*Cutera, Inc. v. Lutronic Aesthetics, Inc.*,
   2020 WL 4937129 (E.D. Cal. Aug. 24, 2020)....................................................23

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014)................................................................................20

Gibson, Dunn & Crutcher LLP

*Ellis v. Worldwide Cap. Holdings, Inc.*,
   2015 WL 12697722 (C.D. Cal. Mar. 24, 2015) ...................................... 18

*Emazing Lights LLC v. De Oca*,
   2016 WL 3658945 (C.D. Cal. Jan. 7, 2016).......................................... 10

*Extreme Reach, Inc. v. Spotgenie Partners, LLC*,
   2013 WL 12081182 (C.D. Cal. Nov. 22, 2013) ..................................... 25

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*,
   2020 WL 513287 (N.D. Cal. Jan. 31, 2020).......................................... 17

*Freeman Inv. Mgmt. Co. v. Frank Russell Co.*,
   2016 WL 5719819 (S.D. Cal. Sept. 30, 2016) ................................. 3, 4, 14

*Genentech, Inc. v. JHL Biotech, Inc.*,
   2019 WL 1045911 (N.D. Cal. Mar. 5, 2019) .................................. 4, 8, 20

*Head Ski Co. v. Kam Ski Co.*,
   158 F. Supp. 919 (D. Md. 1958).......................................................... 14

*Highmark Digit., Inc. v Casablanca Design Ctrs., Inc.*,
   2020 WL 2114940 (C.D. Cal. Mar. 26, 2020) ...................................... 21

*HiRel Connectors, Inc. v. Dep't of Def. of U.S.*,
   2003 WL 27168678 (C.D. Cal. Apr. 14, 2003) ..................................... 19

*HiRel Connectors, Inc. v. Dep't of Def. of U.S.*,
   2005 WL 4958547 (C.D. Cal. Jan. 4, 2005).......................................... 19

*Hooked Media Grp., Inc. v. Apple Inc.*,
   269 Cal. Rptr. 3d 406 (Cal. App. 2020) ............................................... 21

*Imax Corp. v. Cinema Techs, Inc.*,
   152 F.3d 1161 (9th Cir. 1998) ............................................................... 3

*Integral Dev. Corp. v. Tolat*,
   675 F. App'x 700 (9th Cir. 2017) ........................................................ 16

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
   978 F.3d 653 (9th Cir. 2020) ...................................................... 1, 3, 15

*Intermedics, Inc. v. Ventritex, Inc.*,
   804 F. Supp. 35 (N.D. Cal. 1992)................................................ 6, 7, 13

*ISE Entm't Corp. v. Longarzo*,
    2018 WL 5298692 (C.D. Cal. Apr. 16, 2018) ........................................................ 18

*Kavanagh v. Tuller*,
    2017 WL 1496436 (S.D. Cal. Apr. 26, 2017) ........................................................ 13

*KEMA, Inc. v. Koperwhats*,
    2010 WL 3464737 (N.D. Cal. Sept. 1, 2010) ........................................................ 19

*Lacey v. Maricopa Cty.*,
    693 F.3d 896 (9th Cir. 2012) ........................................................ 18

*Language Line Servs., Inc. v. Language Servs. Assocs. LLC*,
    2010 WL 2764714 (N.D. Cal. July 13, 2010) ........................................................ 25

*Lilith Games Co. v. uCool, Inc.*,
    2015 WL 4128484 (N.D. Cal. July 8, 2015) ........................................................ 21

*MACOM Tech. Sols. Inc. v. Litrinium, Inc.*,
    2019 WL 4282906 (C.D. Cal. June 3, 2019) ........................................................ 4, 16

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
    2011 WL 13127544 (C.D. Cal. Sept. 13, 2011) ........................................................ 18

*Menzel v. Scholastic, Inc.*,
    2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ........................................................ 23

*Metricolor LLC v. L'oreal S.A.*,
    2020 WL 3802942 (C.D. Cal. July 7, 2020) ........................................................ 22, 23, 24

*Nautilus, Inc. v. Biosig Instrs., Inc.*,
    572 U.S. 898 (2014) ........................................................ 14

*New Show Studios LLC v. Needle*,
    2014 WL 2988271 (C.D. Cal. June 30, 2014) ........................................................ 4, 11

*Profil Institut fur Stoffwechselforschung GmbH v. ProSciento, Inc.*,
    2017 WL 1198992, at *6 (S.D. Cal. Mar. 31, 2017) ........................................................ 5

*Prolifiq Software Inc. v. Veeva Sys. Inc.*,
    2014 WL 2527148 (N.D. Cal. June 4, 2014) ........................................................ 13

*Proofpoint, Inc. v. Vade Secure, Inc.*,
    2020 WL 1911195 (N.D. Cal. Apr. 20, 2020) ........................................................ 4

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*,
　　2017 WL 67075 (N.D. Cal. Jan. 6, 2017) ........................................................ 19

*In re Providian Credit Card Cases*,
　　96 Cal. App. 4th 292 (2002) ........................................................................... 13

*Quality Towing, Inc. v. Jackson*,
　　2016 WL 3017642 (N.D. Cal. May 26, 2016) ................................................. 26

*Quantum Corp. v. Rodime, PLC*,
　　65 F.3d 1577 (Fed. Cir. 1995) ....................................................................... 14

*SanDisk Corp. v. Memorex Prod., Inc.*,
　　415 F.3d 1278 (Fed. Cir. 2005) ..................................................................... 15

*Soo Park v. Thompson*,
　　851 F.3d 910 (9th Cir. 2017) ............................................................. 20, 23, 24

*Space Data Corp. v. X*,
　　2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) ..................................... 12

*Spice Jazz LLC v. Youngevity Int'l, Inc.*,
　　2020 WL 6484640 (S.D. Cal. Nov. 4, 2020) ................................................... 2

*Strategic Partners, Inc. v. Vestagen Protective Techs., Inc.*,
　　777 F. App'x 224 (9th Cir. 2019) .................................................................... 13

*TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*,
　　2016 WL 3475322 (C.D. Cal. Jan. 29, 2016) ................................................ 17

*TMX Funding, Inc. v. Impero Techs., Inc.*,
　　2010 WL 2509979 (N.D. Cal. June 17, 2010) ................................................ 11

*Vendavo, Inc. v. Price f(x) AG*,
　　2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) .............................................. 5, 8

*WeRide Corp. v. Kun Huang*,
　　379 F. Supp. 3d 834 (N.D. Cal. 2019) ......................................................... 7, 22

*Williams & Cochrane, LLP v. Quechan Tribe of Fort Yuma Indian
　　Reservation*,
　　329 F.R.D. 247 (S.D. Cal. 2018) ................................................................... 18

*Williams Mfg. Co. v. United Shoe Mach. Corp.*,
　　316 U.S. 364 (1942) ....................................................................................... 14

*Yeiser Res. & Dev. LLC v. Teknor Apex Co.*,
    281 F. Supp. 3d 1021 (S.D. Cal. 2017) ...................................................................... 11

**Statutes**

35 U.S.C. § 103 ........................................................................................................... 14

Cal. Civ. Code §§ 3426.1(d)(1)–(2) .......................................................................... 18

**Other Authorities**

Boundary Synonyms, Thesaurus.com,
    https://www.thesaurus.com/browse/boundary (last visited Dec. 21,
    2020) ....................................................................................................................... 14

Lorelei Perez Westin, *Genetic Patents: Gatekeeper to the Promised
    Cures*, 25 T. Jefferson L. Rev. 271, 273 (2002) ...................................................... 15

# TABLE OF ABBREVIATIONS

| Abbreviation | Document |
|---|---|
| Apple | Defendant Apple Inc. |
| Masimo | Plaintiff Masimo Corporation |
| Cercacor | Plaintiff Cercacor Laboratories, Inc. |
| Plaintiffs | Masimo and Cercacor, collectively |
| FAC | Plaintiffs' First Amended Complaint |
| SAC | Plaintiffs' Second Amended Complaint |
| TAC | Plaintiffs' Third Amended Complaint |
| '052 patent | U.S. Patent No. 10,078,052 |
| '095 patent | U.S. Patent No. 9,952,095 |
| '300 patent | U.S. Patent No. 6,792,300 |
| '417 patent | U.S. Patent No. 5,564,417 |
| '670 patent | U.S. Patent No. 10,247,670 |
| '671 patent | U.S. Patent No. 10,524,671 |
| '754 patent | U.S. Patent No. 10,219,754 |
| '763 patent | U.S. Patent No. 6,985,763 |
| '997 patent | U.S. Patent No. 9,723,997 |
| '507 application | U.S. Patent Application No. 15/960,507 |
| '832 application | U.S. Patent Application No. 15/667,832 |
| PTO | U.S. Patent and Trademark Office |
| IDS | Information Disclosure Statement |
| MPEP | Manual of Patent Examining Procedure |

| RJN | Apple's Request for Judicial Notice in Support of Its Motion to Dismiss Plaintiffs' TAC |
|---|---|
| RJN Decl. | Lerner Declaration in Support of Apple's RJN |
| PI Motion | Plaintiffs' Preliminary Injunction Motion |
| MPA | Apple's Memo. of Points and Authorities In Support of Motion to Dismiss the Thirteenth Cause of Action in Plaintiffs' Third Amended Complaint |
| Opp. | Plaintiffs' Opposition to Apple's Motion to Dismiss the Thirteenth Cause of Action in Plaintiffs' Third Amended Complaint |
| A. Kaounis Dec. | Kaounis Declaration in Support of Reply in Support of Apple's Motion to Dismiss the Thirteenth Cause of Action in Plaintiffs' Third Amended Complaint |

# I.   **INTRODUCTION**

Plaintiffs' Opposition to Apple's Motion to Dismiss does nothing to resuscitate the TAC.  The trade secret claim should be dismissed with prejudice.

*First*, as the Court has explained twice:  "[a]t the pleading stage," a trade secret plaintiff "must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'"  *AlterG, Inc. v. Boost Treadmills LLC*, 2019 WL 4221599, at *5 (N.D. Cal. Sept. 5, 2019) (citations and alterations omitted); *see* ECF 219 at 3.  Plaintiffs avoid this test because they have not met it.  For example, Plaintiffs cite *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020) to argue that they need only describe *one* trade secret with particularity to survive this motion.  Opp. 3–4.  *InteliClear*, is a summary judgment case.  It does not address Rule 8.

Plaintiffs also claim they "fixed" their deficient trade secret allegations with a few deletions, but *every* broad category of alleged secrets still includes an even broader catchall category:  ███████████████████████ of the alleged secrets (TAC ¶¶ 40(16), 41(6), 42(6), 43(8), 44(9), 45(4)).  This leaves every broad category open to future expansion without notice.  Further, Plaintiffs simply paste Apple's published patent claims into the TAC and then argue that the patent "reasonable certainty" standard satisfies the trade secret pleading standard under Rule 8.  It does not.

*Second*, Plaintiffs offer *no* explanation for their failure to make any reasonable efforts to protect the information they now allege is secret.  Plaintiffs cited the patents they now claim disclose their alleged secrets *in public disclosures* to the PTO.  Plaintiffs have no explanation, and Plaintiffs' only argument—that the Court cannot address the issue because Apple could have raised it earlier—is wrong.

*Third*, Plaintiffs do nothing to explain how their implausible allegations of misappropriation by their former employees could properly be attributable to Apple under *any* theory.  Plaintiffs' trade secret claim should be dismissed with prejudice.

## II.    **PLAINTIFFS' CUTSA CLAIM SHOULD BE DISMISSED**

**A.    Plaintiffs Do Not Meet the Standard for Alleging Their Trade Secrets.**

**1.    It Is Still Impossible to Differentiate the Alleged Trade Secrets from the State of the Art.**

Plaintiffs lead off by seeking yet again to avoid the standard the Court has set out. Plaintiffs argue that they need not "distinguish [their] trade secrets from information 'generally known in the trade'" because Section 2019.210 does not require that distinction.  Opp. 2–3 & n.2.  But the Court has *twice* explained that to avoid dismissal on the pleadings, Plaintiffs "must describe the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade."  ECF 219 at 3 (quoting *Acrisure of Cal., LLC v. SoCal Com. Ins. Servs.*, 2019 WL 4137618, at *3 (C.D. Cal. Mar. 27, 2019)); ECF 60 at 7 (same).  Furthermore, even if the parties were briefing the adequacy of Plaintiffs' Section 2019.210 disclosure, Plaintiffs' cases *confirm* that this requirement is essential in "highly specialized technical" cases like this one.  *Brescia v. Angelin*, 172 Cal. App. 4th 133, 145–46 (2009) (citing *Advanced Modular Sputtering v. Superior Ct.*, 132 Cal. App. 4th 826, 835–36 (2005)).

Furthermore, it is improper for Plaintiffs to bury a few alleged trade secrets within the broad categories in the TAC and expect Apple (and the Court) to guess where they lie.  Plaintiffs rely on *InteliClear* to argue yet again that the claim should survive a motion to dismiss if they can describe just *one* trade secret with particularity.  Opp. 3–4.  But *InteliClear*—a summary judgment case—does not create a new, less demanding pleading standard for trade secret claims under Rule 8.[1]  It confirms the standard applied by this Court.  ECF 219 at 3 (citing cases).  Furthermore, the alleged secrets in *InteliClear* were nothing like the vague categories here.  In *InteliClear*, the plaintiff filed a declaration "identif[ying] aspects of its database logic and architecture with enough

---

[1]  Later decisions confirm this.  *E.g.*, *Spice Jazz LLC v. Youngevity Int'l, Inc.*, 2020 WL 6484640, at *4 (S.D. Cal. Nov. 4, 2020).

specificity" because it "specified the program processes, tables, columns, and account identifiers from its SQL database that it considered trade secrets." 978 F.3d at 659. Accordingly, the Court held that "a jury properly instructed can make the determination of what trade secrets exist." *Id*. at 660.[2] Here, there is no "concrete identification" of the trade secrets' boundaries (*id*. at 658 (citing *Imax Corp. v. Cinema Techs, Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998)))—the claimed secrets (▮▮▮▮▮, excluding combinations, *see* TAC ¶¶ 40–45) remain open-ended. The Court could not properly instruct the jury on Plaintiffs' trade secret claim in these circumstances. Thus, the logic of *InteliClear* does not apply.

Moreover, *InteliClear* relies on *Freeman Inv. Mgmt. Co. v. Frank Russell Co.*, 2016 WL 5719819, at *11 (S.D. Cal. Sept. 30, 2016), for the proposition that plaintiffs need only identify one trade secret with sufficient particularity. *Id*. at 659. But *Freeman* holds the opposite, and harshly criticizes the very approach Plaintiffs are taking here. *Freeman* granted summary judgment in *defendants'* favor, holding that the plaintiff "failed to meet its burden of identifying its alleged trade secrets with the requisite specificity" where "at least *some*"—but not all—"of the Plaintiff's 492 trade secrets [we]re not sufficiently particular." 2016 WL 5719819, at *11–12. The court held that even plaintiff's narrowed list of eight claimed secrets was "too vague to pass muster." *Id*. at *12. Plaintiffs also attempt—as they did in unsuccessfully fighting dismissal of the SAC—to avoid dismissal based on the Court's ruling on the motion for a preliminary injunction. But that briefing highlights the problem here. Plaintiffs broadly alleged ▮▮▮▮▮▮▮▮▮▮▮ techniques in their opening PI Motion brief. ECF 111-1 at 4–6, ECF 111-3 ¶ 31. When Apple pointed out that these techniques were disclosed in Plaintiffs' own patents, Plaintiffs' reply pivoted away from the broad allegations in their opening brief, and instead focused on a ▮▮▮▮▮▮▮▮.

---

[2] As for the trade secrets whose identification were still in dispute, the Court found that a "small amount of discovery would have let InteliClear *clarify such discrete points*." *Id*. at 662 (emphasis added).

ECF 161-1 at 2–3.  The Court acknowledged that the alleged trade secret was narrowed: "Plaintiffs further focus on how Plaintiffs' two previous patents did not describe ████ ████████████████████ . . . .  In other words, Plaintiffs emphasize how ████ ████████████████████████████████████ was not publicly known."  ECF 206 at 6 (citing ECF 161-1 at 2–3).  Plaintiffs' description should have been narrowly tailored to this step from the outset so that Apple could have a fair opportunity to challenge it.[3]  This is *precisely* the type of prejudice *Freeman* sought to avoid:  "Plaintiff's attempt to revise its trade secret identification at this stage is simply too little too late."  2016 WL 5719819, at *12.  The Court informed Plaintiff . . . that "counsel was entitled to know what we were dealing with before now. . . ."  *Id.*

Plaintiffs rely on *Proofpoint, Inc. v. Vade Secure, Inc.*, 2020 WL 1911195, at *7 (N.D. Cal. Apr. 20, 2020), and *Genentech, Inc. v. JHL Biotech, Inc.*, 2019 WL 1045911, at *18 (N.D. Cal. Mar. 5, 2019), to argue that Apple has not shown that the lack of specificity in the TAC "hinders" it from defending itself or the Court from crafting discovery limits.  Opp. 8.[4]  But, Plaintiffs' "failure to identify those trade secrets that really were sufficiently particular *does not impose a burden on either the Court or Defendant to do so for it*."  *Freeman*, 2016 WL 5719819, at *11 (emphasis added).  In any case, the defendants in *Proofpoint* "failed to explain *why* the level of specificity" was "not reasonable."  2020 WL 1911195, at *7 (emphasis in original).  And the description in *Genentech* was specific enough for defendant to "argu[e] that it is not 'currently using' [plaintiff's] trade secrets."  2019 WL 1045911, at *1.  By contrast, Apple *has* explained why its ability to defend itself is hindered:  Plaintiffs' broad and non-exhaustive trade secret description prevents Apple from "ascertain[ing] at least the boundaries within which the secret lies" (*MACOM Tech. Sols. Inc. v. Litrinium, Inc.*,

---

[3]  Notably, the TAC again alleges the broad ████ secret that Plaintiffs alleged in their opening PI Motion brief—including all of th ████ ps Plaintiffs previously argued were not relevant to the crux of that alleged secret.  *See* TAC ¶ 40.9; ECF 111-3 ¶ 31.

[4]  *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *9 (C.D. Cal. June 30, 2014) is of no help to Plaintiffs (*id.*, addresses consistency of allegations).

1   2019 WL 4282906, at *5 (C.D. Cal. June 3, 2019) (citation omitted)), and determining

2   whether it ever used Plaintiffs' alleged secrets.

3        Plaintiffs also misleadingly assert that because the "continuum" of information

4   that *can* be a trade secret is broad, this somehow excuses them from identifying *their*

5   *own* secrets with particularity.  Opp. 9 (citing *BladeRoom Grp. Ltd. v. Facebook, Inc.*,

6   2017 WL 2224838, at *2 (N.D. Cal. May 22, 2017) ("*BladeRoom I*")).[5]  At the pleading

7   stage, it is not enough to merely describe "the *types of information* that may qualify as

8   protectable trade secrets" instead of "listing [the] particular trade secrets [the plaintiff]

9   has a basis to believe actually were misappropriated."  *Vendavo, Inc. v. Price f(x) AG*,

10  2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018).  Otherwise, a plaintiff would be

11  permitted to execute the very last-minute maneuvers *Freeman* and other courts prohibit.

12       Nor does *InteliClear* overrule cases dismissing inadequately pled categories of

13  information, even where one alleged trade secret is adequately pled.  *See, e.g.*, *Citcon*

14  *USA, LLC v. RiverPay, Inc.*, 2018 WL 6813211, at *6 (N.D. Cal. Dec. 27, 2018); *Profil*

15  *Institut fur Stoffwechselforschung GmbH v. ProSciento, Inc.*, 2017 WL 1198992, at *6

16  (S.D. Cal. Mar. 31, 2017).[6]

17       Next, Plaintiffs assert that in critiquing the TAC's trade secret allegations, Apple

18  omitted critical text.  Opp. 8, 11–12.  Plaintiffs are wrong.  Apple quoted portions of the

19  trade secret allegations for page-limit reasons, and the allegations Apple omitted do not

20  provide the necessary specificity to satisfy Rule 8.  For example:

21  ███████████████████████████████████████████: Plaintiffs argue that

22  the (underlined) omitted portion of this claimed secret explains ██████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25  ███████████████████████████████████████ Opp. 8 (citing MPA 6, and

26  _____

27  [5] *BladeRoom I* never held that a trade secret along a "continuum" did not need to be
    described with reasonable particularity.  *BladeRoom I*, 2017 WL 2224838, at *2.

28  [6] Thus at a minimum, the Court should dismiss the inadequately pled trade secrets.

1   quoting TAC ¶ 40.2).  But the underlined language does not explain how █████████

2   ██████████████████████████████████████████████████ are relevant to

3   █████████████ or what role ████████████████████████████████

4   ████████████████ play therein.  Plaintiffs assert that "Apple well understands

5   the reference to ███████████"—citing to Apple's opposition to Plaintiffs' PI Motion

6   and the supporting expert declaration.  *Id.*  Apple's expert did opine on █████████

7   ███████████ but his opinion concerned ███████████ disclosed in *Plaintiffs' patents*—

8   *not* their alleged trade secrets.  *See* ECF 142 ¶¶ 32–33, 39, 42 (discussing the disclosure

9   in Plaintiffs' '713 and '305 patents).  There is nothing in the TAC that ties Plaintiffs'

10  trade secret allegations to their '713 and '305 patents—indeed, Plaintiffs strenuously

11  argued that those patents *do not* disclose their alleged secrets.  ECF 161-1 at 2–6.

12      Now, after Apple challenged the TAC's trade secret identification, Plaintiffs

13  claim that their alleged █████████ refer to those described in the '713 and '305

14  patents.  But the proper place to identify such ████████ was in the TAC—not in

15  opposition to Apple's Motion to Dismiss.  As with the PI motion, Plaintiffs once again

16  attempt to narrow a trade secret in briefing *after* Apple points out deficiencies.

17      ███████: Plaintiffs again argue that Apple omitted critical (underlined) language

18  that explains ████████████████████████████: ██████████████████████████

19  ██████████████████████████████████████████████████████████

20  █████████████████████████████████ . . . ."  Opp. 8 (citing

21  MPA 6 & quoting TAC ¶ 40.6).  But this text only generally states ████████████

22  ████████████████; it does *not* explain ██████████████.  Plaintiffs

23  also do not address that, as alleged, ████████ does not explain how to ████████

24  ██████████████████████████████████████████████████████████

25  ████.  MPA 6.  Notably, Plaintiffs *also* omit this ████████ language from their brief.

26      Plaintiffs rely on *Intermedics, Inc. v. Ventritex, Inc.*, 804 F. Supp. 35, 38 (N.D.

27  Cal. 1992), to argue that "[h]igh level secrets that can be implemented in different ways

28  need not be limited to 'how' they are implemented."  Opp. 9.  But *Intermedics* held—

on summary judgment—only that a description of a trade secret idea need not disclose "specific functioning embodiments," explaining the relevant question is whether "the *idea of* [the alleged secret] [is] *perceivable* in the documents relied upon by defendants," not whether the description discloses whether "the design idea of [the alleged trade secret] would in fact work." 804 F. Supp. at 38 (emphases in original). *Intermedics* did not hold that a plaintiff need not describe its allegedly secret idea with sufficient particularity at the outset.

███████: Plaintiffs rely on *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 846–47 (N.D. Cal. 2019)—a preliminary injunction case—to argue that the ██████ description is adequate because "[a] trade secret can include 'factors' to consider and the 'process' used to ██████████." Opp. 9. But the *WeRide* plaintiff identified for each trade secret specific source code and described the code's functionality. 379 F. Supp. 3d at 846. The plaintiff also identified "unique" mapping algorithms, "provide[d] the factors a developer must consider in generating such maps," "describe[d] the process *WeRide* uses to create the algorithms," and "specifie[d] that it is not referring to HD mapping algorithms generally." *Id.* at 846–47. That is worlds apart from Plaintiffs' broad description of ██████████████████████████ ██████ (TAC ¶ 40.8), which, as Apple explained in its MPA, "amounts to a description of ████████████████████████████ (MPA 6).

███████████: Plaintiffs point to Apple's identification of a patent that *appears* to include the terms Plaintiffs allege are secret ███ ████████████████████████—and argue that "Apple's ability to identify [this] patent . . . demonstrates Plaintiffs adequately described their secrets." Opp. 12. But Apple expressly stated that "the critical point is *not* whether [this patent] definitively disclose[s] Plaintiffs' alleged secrets, but that the trade secrets, as pleaded in the TAC, *still lack specificity* . . . because [they] *appear to* cover commonly known trade information." MPA 7 (emphasis added). The Court need not determine whether the patent actually discloses trade secrets, but it must have some way,

at this stage, to test whether Plaintiffs have described their alleged secrets "with sufficient particularity to separate [them] from matters of general knowledge in the trade or of special persons who are skilled in the trade." *Vendavo*, 2019 WL 4394402, at *4.

████: Plaintiffs assert that "Apple again omits the [underlined] detail it seeks" for this alleged trade secret: █████████████████████████████████████

█████████████████████████████████████

████ Opp. 11 (quoting TAC ¶ 41.3). But the underlined text provides *no* specificity. The purpose of █████████ *is to* ███████████████████ using it in a pulse oximeter *inherently* ███████████ and Plaintiffs do not explain why █████████████████████████ changes that. TAC ¶ 41.3. Thus, "[w]ithout more, Apple cannot discern what Plaintiffs claim to be secret." MPA 7.

████: Plaintiffs argue that they need not provide additional details on the █████████████████ mentioned in ████. Opp. 11 (citing *Genentech*, 2019 WL 1045911, at *17–18). But *Genentech* never held that merely mentioning "test conditions and procedures" is sufficient. Rather, the defendants in *Genentech* were accused of misappropriating documents that described "analytical [test] methods" secrets, which the plaintiff specifically identified. *Id.* Thus, there was no chance defendants were unaware of the boundaries of the claim. By contrast, Apple has no way to learn what "test conditions and procedures" Plaintiffs allege are secrets.

████: Plaintiffs again argue that Apple omitted critical language (underlined): ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Opp. 12 (quoting TAC ¶ 41.5). But the underlined text merely recites the general concept ██████████████████████████████████████. This adds nothing of substance and provides no detail on ██████████████████████.

1     ██████████████████: Plaintiffs claim that Apple omits "extensive

2 detail" (underlined) in these alleged secrets (Opp. 12[7]): ██████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8 *Id.* (citing TAC ¶ 42.1–42.3).  Put differently, Plaintiffs claim that ████████

9 ████████████████████████████████████████████████████

10 ████████████ is a trade secret.  Decorating a basic concept with elaborate sounding words

11 does not change the fact that on its face, this description is so broad as to be meaningless.

12     ██████████:  Plaintiffs assert these secrets (TAC ¶ 42.4–42.5) are "far more

13 detailed" than Apple claims (Opp. 12–13):



24 The above purports to describe ████████████████████████████

25 ████████████████████████████████████████████████████

26

27 ───────────────────────

28   [7] Plaintiffs' assertion that Apple improperly "combines" the alleged secrets (Opp. 12–13), where those alleged secrets actually incorporate each other (*see* TAC ¶¶ 41.1–41.2, 42.1–42.3, 42.4–42.5), is specious at best.

1    ████████████████████████. *Id*. Plaintiffs claim Apple does not need to know

2    "how" this alleged secret "is implemented." Opp. 13. But without that information, the

3    above (heavily embellished) description of what appears to be a very simple concept is

4    *not* something that Apple can distinguish from what is generally known the industry.

5    ████████████████████: Plaintiffs assert (Opp. 13) that Apple does not

6    address these alleged secrets. This is wrong. Apple's MPA explains that TAC ¶¶ 45.1–

7    45.2 (████████) does not "contain any details on th[e alleged] ████████████

8    ████ MPA 8.[8] Rather than meaningfully respond, Plaintiffs add ambiguity by (i)

9    admitting the alleged secret does *not* a encompass ████████████████, and (ii)

10   arguing that "[t]rade secrets can include 'high level' ideas." Opp. 13. Again, Plaintiffs

11   must do more than allege broad concepts. *Vendavo*, 2018 WL 1456697, at *4.

12   ████████████████████. Apple does not need to "rewrit[e]" the

13   following alleged secrets to show they represent "broad ideas" impossible to

14   differentiate from general knowledge: █████████████████████

15   ████████████████████████████████████████████████

16   ████████████████████████████████████████████████

17   ██████████████████████████████ (TAC ¶ 43.3–43.5). "Any piece

18   of [marketing] information could potentially be labeled a trade secret under this

19   definition." *Emazing Lights LLC v. De Oca*, 2016 WL 3658945, at *2 (C.D. Cal. Jan.

20   7, 2016) (dismissing for lack of alleged secret particularity).

21        Plaintiffs insist that this is "an argument on the merits." Opp. 14. That is wrong,

22   as courts routinely dismiss trade secret allegations that prove indistinguishable from

23   general knowledge. *See, e.g.*, *CleanFish, LLC v. Sims*, 2020 WL 1274991, at *9 (N.D.

24   Cal. Mar. 17, 2020) ("broad categories of information that would be applicable to any

25   business . . . are too high-level"); *Yeiser Res. & Dev. LLC v. Teknor Apex Co.*, 281 F.

26   _____

27   [8] Apple did not separately address ████ because it alleges only the knowledge of ████, thus adding nothing of substance ████ *AlterG, Inc. v. Boost Treadmills LLC*, 388

28   pp. 3d 1133, 1145 (N.D. Cal. 2019) (rejecting allegations of "positive . . . learnings" as "vague").

Supp. 3d 1021, 1046 (S.D. Cal. 2017) ("[T]he Court is hard pressed to see how" "'business strategy' . . . of selling [YRD's] hose products quickly through QVC online followed by sales through brick and mortar," and resultant "success in selling its earlier products with this strategy" "as pleaded, could plausibly constitute a trade secret"); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144–46 (N.D. Cal. 2019) (dismissing based on descriptions such as "'[n]umerous learnings . . . that explored market alternatives that included positive and negative learnings of low cost mechanical unweighted systems, air pressure systems, and Differential Air Pressure systems'").

Plaintiffs' argument that their alleged secrets are saved by "depend[ence] on and incorporat[ion of]" the other alleged secrets in this category is unavailing.   Opp. 14. *None* of Plaintiffs' ████████████████████ separately or together, show any effort to meet the "sufficient particularity" test.   *Acrisure*, 2019 WL 4137618, at *3.

Plaintiffs' cases are inapposite.  In *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010), the trade secret description—including customers' "service needs," "service patterns," and "buying preferences" such as "special terms, discounts, and accessories," and "[l]ogin and password information"— was far more specific than the TAC.  In *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *6–7 (C.D. Cal. June 30, 2014), the defendant moved to dismiss under the wrong standard.  In *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2011 WL 1044899, at *3–6 (N.D. Cal. Mar. 23, 2011), the trade secret description was not even at issue.  And *AlterG*, 2019 WL 4221599, at *6, held "[p]ricing and marketing strategies *tied to specific products* are typical trade secrets." (emphasis added).  Here, Plaintiffs have not tied their ████ secrets to specific products.  *See* TAC ¶ 43; *cf. CanWe Studios LLC v. Sinclair*, 2013 WL 12120437, at *3 (C.D. Cal. Nov. 20, 2013) ("It is also not clear where the boundary of Plaintiff's [product development and marketing strategy] trade secret ends"—e.g., "whether Plaintiff's claim is to all enterprise business networking applications, or just to applications that are similar to CanWe."). ████████████████████████████████████.  These descriptions—e.g.,

1  ████████████████████████████████████████████

2  ████████████████████████████████████████████

3  ████████████ (TAC ¶ 44.1–44.4)—are general to the point of meaninglessness, and

4  Plaintiffs admit certain information (cited in spreadsheets) is public (Opp. 15).

5       Plaintiffs cite *Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th

6  26, 47 (2014), and *Blindlight, LLC, v. Cubbison*, 2017 WL 4769460, at *10 (C.D. Cal.

7  July 3, 2017), to argue that public information is still protectable, but neither case helps

8  them.  *Altavion* held that trade secrets containing public elements are protectible *only*

9  where there has been "an *effective, successful and valuable* integration of the public

10  domain elements" with secrets, and the integration itself "was *secret* and *had*

11  *independent economic value.*"  226 Cal. App. 4th at 47 (emphases added).  *Blindlight*

12  held that the law only protects information "clearly 'of commercial value.'"  2017 WL

13  4769460, at *10.   Though Plaintiffs claim their ███ secrets are "reflected in" ███

14  spreadsheets, they fail to allege which (if any) portions of the spreadsheets are secret,

15  and thus, fail to allege a viable claim.  *See Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2015

16  WL 8028294, at *4 (N.D. Cal. Dec. 7, 2015) ("*Bladeroom II*") ("[I]t is unknown from

17  the current allegations which aspects are publicly known and which are not.  This

18  reaffirms . . . Plaintiffs have not described their trade secret with sufficient

19  particularity."); *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16,

20  2017) (dismissing where "Space Data has not made clear which aspects of its technology

21  and other information . . . are secret.").

22       Plaintiffs' other arguments fail too.  That certain vague TAC descriptions are

23  "dependent on" other vague descriptions (Opp. 15) does not edge the allegations over

24  the line.  And once again, Apple's showing that Plaintiffs' alleged secrets appear to be

25  public is not an "attack[] on the merits" (*id.*).  *See, e.g., Strategic Partners, Inc. v.*

26  *Vestagen Protective Techs., Inc.*, 777 F. App'x 224, 225 (9th Cir. 2019) (court did not

27  err in dismissing "as a matter of law, because Vestagen disclosed its business strategy

28  through its public efforts"); *Kavanagh v. Tuller*, 2017 WL 1496436, at *4 (S.D. Cal.

Apr. 26, 2017) (granting dismissal because "Plaintiff admits that she has publicly disclosed both the method and the name of her product"); *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304–05 (2002) ("telemarketing scripts . . . had been disclosed to the public"). Plaintiffs' cases do not say otherwise. *See Altavion*, 226 Cal. App. 4th at 50 (at issue was *court's* description of trade secrets after *trial*); *see also Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 2018 WL 2558388, at *5 (C.D. Cal. Feb. 27, 2018) (defendant argued "no trade secrets exist because *all the information*" "was publicly disclosed" (emphasis added); *Prolifiq Software Inc. v. Veeva Sys. Inc.*, 2014 WL 2527148, at *3 (N.D. Cal. June 4, 2014) (defendant argued the secrets in the 2019.210 disclosure were public).

## 2. Plaintiffs Are Still Improperly Hedging by Pleading a Non-Exhaustive List of Alleged Trade Secrets.

Plaintiffs claim they use the phrase "at least" "to identify using at least one of a closed list of items." Opp. 5 (citing TAC ¶ 42.1).[9] But Plaintiffs use "at least" with open lists. *See, e.g.*, TAC ¶ 40.5 (███████████████████████████████████████████████████████████████████████████████████████████████████); ¶ 40.9 (████████████████████████████████████████████████████████████████████████████); *id.* (██████████████████████████) (emphasis added). The Court already addressed Plaintiffs' improper use of this catchall phrase. ECF 219, at 5–6. In any event, "at least" is a *minimum*; it is the opposite of a boundary.[10] *See Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1581 (Fed. Cir. 1995) ("[T]he term 'at least' means 'as the minimum,' . . . set[ting] forth an absolute lower limit of a range . . . ." (citations omitted)). Just as describing a trade secret along a "continuum" does not provide its

---

[9]  Plaintiffs' only support is a summary judgment decision that provides no indication the parties or court challenged the term. *Intermedics*, 804 F. Supp. at 38.

[10]  Boundary Synonyms, Thesaurus.com, https://www.thesaurus.com/browse/boundary (last visited Dec. 21, 2020) ("Opposites of boundary" include "minimum").

1  boundaries (*see supra* § II.A.1), describing what it "at least" includes does not do so.

2  Plaintiffs also rely on the term "████████" in their descriptions. Opp. 1, 4–

3  5. But the case they cite—dated well before federal courts adopted the reasonable

4  particularity standard—shows that "████████" is only acceptable (if at all) to

5  signify that which is "most appropriate to achieve [a] desired result." *Head Ski Co. v.*

6  *Kam Ski Co.*, 158 F. Supp. 919, 923 (D. Md. 1958). Here, Plaintiffs use the term to

7  "modify" a laundry list of vaguely claimed secrets in each broad category, such that it

8  "could mean anything . . . . [i]t's devoid of substance," and "unhelpful." *Freeman*, 2016

9  WL 5719819, at *11 (rejecting use of "emphasizes"). "If Plaintiff does not know

10  precisely what its trade secrets are, neither can Defendant or the Court." *Id.*

11  **3.    Plaintiffs' Copying of Apple's Patent Claims Does Not Provide the**
       **Required Particularity.**

12

13  ████████: Without citing a single case, Plaintiffs incorrectly claim that by

14  "cop[ying] method claims from Apple's patents," they adequately pleaded these claimed

15  secrets. Opp. 9. The "reasonable certainty" indefiniteness standard (*see Nautilus, Inc.*

16  *v. Biosig Instrs., Inc.*, 572 U.S. 898, 901 (2014)) does not satisfy the "reasonable

17  particularity" trade secret pleading standard under Rule 8 (Opp. 9).

18  For one, a patent claim almost invariably encompasses elements previously

19  known in the art. 35 U.S.C. § 103; *see* Lorelei Perez Westin, *Genetic Patents:*

20  *Gatekeeper to the Promised Cures*, 25 T. Jefferson L. Rev. 271, 273 (2002) ("[T]he vast

21  majority of utility patents are typically improvement patents."). Simply parroting a

22  claim thus does not meet the requirement that a trade secret plaintiff describe the alleged

23  secret with sufficient particularity to *separate* it from matters of general knowledge

24  (*AlterG, Inc.*, 2019 WL 4221599, at *5): Plaintiffs must *explain* how *they allege* their

25  secrets—even if copies of Apple's patent claims—are "separate" from general trade

26  knowledge. What Apple believes about the scope of its patent claims (or how a court

27  would construe them) is irrelevant to *Plaintiffs'* obligation to describe *their alleged* trade

28  secrets.

Second, patent claims—by definition—recite only minimum requirements of the claimed invention, and cannot convey boundaries of trade secrets, for the same reason that using open-ended language such as "at least" cannot do so. *See SanDisk Corp. v. Memorex Prod., Inc.*, 415 F.3d 1278, 1284 (Fed. Cir. 2005) ("Neither includes, nor comprising, forecloses additional elements that need not satisfy the stated claim limitations."). Plaintiffs disagree, and assert that "trade secrets can "be defined such that they can be practiced in combination with other elements." Opp. 9–10. But Apple has never argued against that proposition for *properly identified* trade secrets—*if* the other elements are clearly identified. Rather, Apple's legitimate concern is that Plaintiffs' boundless description leaves open the possibility that they will later claim unidentified "other elements" as their alleged secrets—as they did in the PI briefing (*supra* § IIA.1). Even if permissible for patent claims, Plaintiffs' own cases hold that this is improper when describing alleged trade secrets. *See, e.g.*, *InteliClear*, 978 F.3d at 658 ("Long lists of general areas of information containing unidentified trade secrets are not substitutes for particularized and concrete trade secrets." (citation omitted)).

Likewise, Plaintiffs' assertion that Apple's cases do not "h[o]ld trade secrets cannot be defined as a set of 'minimum requirements'" (Opp. 10 n.5) misses the point. Both cases Apple cited held that "a [trade secret] plaintiff first must *clearly identify*" the alleged trade secret, even if they did not use the phrase "minimum requirements." *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 702 (9th Cir. 2017) (emphasis added); *see Agency Solutions.com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011). Thus, both cases defeat Plaintiffs' attempts to leave open their trade secret identification to include undefined "other elements." And Plaintiffs' cite to *Altavion*, 226 Cal. App. 4th at 47, to claim that an "idea itself can constitute information protectable by trade secret law" (Opp. 10) is a straw man; Apple has not argued otherwise. But Plaintiffs still must adequately identify their alleged secret "idea."

Plaintiffs also assert that "one can practice a trade secret by building on or changing it." Opp. 10 (citing *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 514923,

at \*9–10 (N.D. Cal. Jan. 23, 2018) ("*BladeRoom III*")).  But *BladeRoom III* held only that *a defendant* cannot escape liability by "building on or changing" a misappropriated trade secret.  2018 WL 514923, at \*9.  *Bladeroom III* never implied that *a plaintiff* does not need to clearly identify *its own* alleged secret.

Further, Plaintiffs' cited cases do not permit "trade secrets described in far broader terms" than those alleged here.  Opp. 10.  For example, in *Citcon*, 2018 WL 6813211, at \*4, unlike here, defendants must have been able to ascertain the boundaries of plaintiff's "POS Device[]" "hardware and software design" trade secret allegations because one defendant was alleged to have taken the device at issue when he left plaintiff's employ.  *Id.* at \*5.  Plaintiffs also claim the trade secret in *MACOM*, 2019 WL 4282906, at \*6—"design for automatic gain control in the TIA to prevent overload"— was alleged with "far less detail."  Opp. 10.  Plaintiffs are incorrect—the description identified a specific TIA component, and the purpose of its design (i.e., "to reduce overload").  *MACOM*, 2019 WL 4282906, at \*6.  Such specificity is absent from Plaintiffs' open-ended allegations.  Moreover, this Court in *MACOM* was concerned about requiring more specificity in a public complaint.  *Id.*  No such concern exists here—the Court has permitted Plaintiffs to file under seal.  ECF 219 at 8; ECF 233.

*TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*, 2016 WL 3475322, at \*5 (C.D. Cal. Jan. 29, 2016), is also inapposite.  The court found sufficient a description of "proprietary design drawings, manufacturing techniques, and manufacturing equipment including moulds and jigs," which defendant received pursuant to an authorization to use those specifications and designs "for a limited purpose."  *Id.* (citing Compl. ¶ 16).  By contrast, Plaintiffs have not alleged that Apple was provided specific information (TAC ¶ 19–26) that would enable Apple to know the specific trade secrets it allegedly misappropriated.  Plaintiffs' reliance on *Brocade*, 2011 WL 1044899, at \*1, is likewise misplaced.  *Brocade* found the misappropriation claim was adequately pleaded; but the defendant never raised, and the court never addressed, whether the secrets were sufficiently described.  *Id.* at \*5 (defendant argued only that plaintiff "alleged 'virtually

no facts supporting the alleged *misappropriation* '" (emphasis added)).

### 4. Plaintiffs Must Properly Allege Ownership of Their Trade Secrets.

Plaintiffs wholly evade the question of how ownership of specific secrets impacts Apple's alleged duties (if any) to each Plaintiff. Opp. 16–17; *see* MPA 11. Instead, Plaintiffs cite *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, 2020 WL 513287 (N.D. Cal. Jan. 31, 2020), but that case simply assessed whether trade secrets had been properly alleged. *Id*. at *6–7. Plaintiffs' cite to *BladeRoom Grp. Ltd. v. Facebook, Inc*., 2019 F. Supp. 3d 984, 989 (N.D. Cal. 2017) ("*BladeRoom IV*") also is unavailing: ownership issues there related to "status as a licensee," and whether a Plaintiff "describe[d] how it was damaged by the alleged misappropriation."

### 5. Plaintiffs' Ever-Shifting Descriptions Require Scrutiny.

Contrary to Plaintiffs' assertion, Apple is not raising "new arguments." Opp. 1. Apple has argued for nearly a year that Plaintiffs' trade secret descriptions are inadequate. ECF 16-1; ECF 38-1; ECF 103-1; ECF 169-1. Nor is Apple's approach "piecemeal" (Opp. 5), because, as Plaintiffs admit (*id*. at 4), they made several substantive (albeit inadequate) changes to their trade secret allegations and misappropriation claim (*e.g.*, TAC ¶¶ 40–45, 232–44), including *after* Apple's previous motions to dismiss were *granted*. Moreover, even if Apple did raise a new argument, the TAC is an "amended complaint [that] supersedes the original." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 925 (9th Cir. 2012) (*en banc*). Apple is therefore permitted to move to dismiss Plaintiffs' "amended pleading based on arguments previously made [and] *new arguments* that were not previously made." *Chao v. Aurora Loan Servs., LLC*, 2013 WL 5487420, at *4 (N.D. Cal. Sept. 30, 2013) (emphasis added); *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 13127544, at *2 (C.D. Cal. Sept. 13, 2011). Plaintiffs' cases do not compel this Court to hold otherwise. *See, e.g.*, *Ellis v. Worldwide Cap. Holdings, Inc.*, 2015 WL 12697722, at *3 (C.D. Cal. Mar. 24, 2015) (claimants had "not substantively alter[ed] their claim"); *ISE Entm't Corp. v. Longarzo*, 2018 WL 5298692, at *4 (C.D. Cal. Apr. 16, 2018) (plaintiff's allegations in the complaint and

1  amended complaint were "identical"); *Williams & Cochrane, LLP v. Quechan Tribe of*
2  *Fort Yuma Indian Reservation*, 329 F.R.D. 247, 255 (S.D. Cal. 2018) (denying motion
3  to dismiss after an unsuccessful motion to strike *the very same pleading*).

4  **B.    Plaintiffs' New Allegations Prove that They Failed to Take Reasonable**
5  **Efforts to Maintain Secrecy of Their Alleged Trade Secrets.**

6       Plaintiffs argue "the relevant issue is whether the information constitutes a trade
7  secret at the time of misappropriation," and that Apple cannot rely on its own publication
8  of information to defeat secrecy.  Opp. 17.  Plaintiffs again miss the point.  Apple's
9  motion does not contest whether Plaintiffs' asserted trade secrets were *in fact* secret at
10 the time of alleged misappropriation.  Rather, Apple's unassailable point is that Plaintiffs
11 do not allege facts showing they *treated* the asserted trade secrets as secrets.  CUTSA
12 requires "efforts that are reasonable under the circumstances to maintain [a secret's]
13 secrecy."  Cal. Civ. Code §§ 3426.1(d)(1)–(2).

14      The TAC alleges that Lamego disclosed Plaintiffs' technologies in Apple's
15 patents and patent applications *every year* since 2016—including in a patent publication
16 that published *fifteen months* before the first Apple patent that purportedly disclosed the
17 alleged secrets.  *See* TAC ¶¶ 239, 255; ECF 38-1 at 4; ECF 38-6 at 11.  Far from treating
18 those patents and patent applications as secret—by making reasonable efforts to object
19 to their alleged disclosures—Plaintiffs repeatedly cited them to the USPTO, representing
20 that they were distinguishable from Plaintiffs' own patent applications.  *See* RJN Exs.
21 8–9, 11–12, 14–15.  Plaintiffs do not allege they took corrective action or objected to
22 any breach in their confidential relationship with Lamego; their Opposition does not
23 dispute this (*id.*, 17–18).  That requires dismissal.  *HiRel Connectors, Inc. v. Dep't of*
24 *Def. of U.S.*, 2003 WL 27168678, at *10–11 (C.D. Cal. Apr. 14, 2003) ("*HiRel I*").

25      Plaintiffs attempt to distinguish the *HiRel I* order, which dismissed the third
26 amended complaint in that case, by pointing to a summary judgment order on the sixth
27 amended complaint.  Opp. 17 (citing *HiRel Connectors, Inc. v. Dep't of Def. of U.S.*,
28 2005 WL 4958547, at *7 (C.D. Cal. Jan. 4, 2005) ("*HiRel II*")).  By the time of summary

judgment, the plaintiff there did what Plaintiffs here have not:  provide an explanation for the complete failure to object to publication.  Further, *HiRel II* rejected the proposition Plaintiffs advance here:  that merely filing suit within the statute of limitations is sufficient to show reasonable efforts.  2005 WL 4958547, at *5.  And unlike in *HiRel II*, which considered a single disclosure (*see id.* at *7), Plaintiffs here allege a series of breaches of Lamego's confidential relationship over several years, and it is indisputable that Plaintiffs knew of and cited the patents allegedly reflecting those breaches (MPA 13–14).  *HiRel I* is also hardly the only decision dismissing allegations inconsistent with reasonable efforts to maintain secrecy.  *See Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 2017 WL 67075, at *7 (N.D. Cal. Jan. 6, 2017) (dismissing complaint that failed to allege facts addressing earlier disclosures about its technology); *KEMA, Inc. v. Koperwhats*, 2010 WL 3464737, at *7 (N.D. Cal. Sept. 1, 2010) (dismissing complaint that failed to address disclosure of source code to a third party).  Plaintiffs also misread *Alamar Biosciences Inc. v. Difco Labs. Inc.*, which rejected one trade secret claim on timeliness and another based on a different claimant's "inactivity" in the face of suspicions of misappropriation rising "to the level of knowledge."  1996 WL 648286, at *6 (E.D. Cal. Feb. 27, 1996).

## C.   After Four Tries, Plaintiffs Still Fail to Plead Facts Sufficient to Raise a Plausible Claim that Apple Engaged in Misappropriation.

### 1.   Plaintiffs Still Fail to Allege That Apple Knew It Was Acquiring, Using, or Disclosing Plaintiffs' Purported Trade Secrets.

The facts alleged in the TAC to support Apple's purported knowledge do not tend to exclude a plausible and innocent alternate explanation.  MPA 16 (citing cases).  Plaintiffs respond to Apple's argument concerning each allegation by pointing to other allegations, but fail to show why all of the allegations taken together are inconsistent with innocent conduct.  That is fatal to their claim.  *See, e.g.*, *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998–99 (9th Cir. 2014) (burden not met under *Iqbal*/*Twombly* because "[a]ll of the facts . . . presented are consistent with both [plaintiffs'] theory of liability and this innocent alternative") (emphasis added); *cf. Soo*

*Park v. Thompson*, 851 F.3d 910, 928 n.22 (9th Cir. 2017) ("unusual course of events" taken in context was suggestive of illegal conduct).

First, Plaintiffs allege meetings in 2013 between Apple and Masimo but fail to support an inference that Apple knew that the *specific* information Lamego or O'Reilly allegedly later used or disclosed contained Plaintiffs' trade secrets. *See CleanFish*, 2020 WL 1274991, at *10. Plaintiffs' Opposition offers no response other than to point to the other similarly insufficient alleged facts. *See* Opp. 18–19.

Second, relying on *Genentech*, Plaintiffs claim their "on information and belief" assertion that Apple hired Plaintiffs' employees *because of* their knowledge of Plaintiffs' alleged secrets is sufficient. Opp. 19 (citing 2019 WL 1045911, at *11). But the plaintiff in *Genentech* alleged facts to support its assertion—including that its employee copied confidential documents onto a laptop she brought to Taiwan to work with defendants, and that defendants knew of her concurrent employment with plaintiff and the sensitivity of the information. *Id*. at *6. By contrast, Plaintiffs offer no facts tending to show that Apple hired employees for their knowledge of Plaintiffs' trade secrets, as opposed to their general knowledge and skill in the field. *See Hooked Media Grp., Inc. v. Apple Inc*., 269 Cal. Rptr. 3d 406, 413 (Cal. App. 2020). Plaintiffs also cite *Highmark Digit., Inc. v Casablanca Design Ctrs., Inc.*, 2020 WL 2114940, at *12 (C.D. Cal. Mar. 26, 2020), mistaking the standard for resolving a factual dispute from that for alleging a plausible claim. Apple does not ask the Court to weigh competing facts about whether it hired Plaintiffs' employees for their knowledge of Plaintiffs' trade secrets; Plaintiffs simply offer no support for the assertion.

Third, Plaintiffs claim "the Court already rejected th[e] argument" that their "2014 warning letter was insufficient because it did not disclose the details of Plaintiffs' trade secrets." Opp. 20. In fact, the Court stated the "confidentiality agreement clearly states a duty to maintain confidentiality"—but it did not find the letter itself identified *specific* information. ECF 206 at 8–9. Apple argues here that general knowledge that Plaintiffs possessed trade secrets does not suffice to show that Apple knew it was wrongfully

acquiring *specific* secrets. Plaintiffs attempt to distinguish *Hooked Media*—which was published five days *after* the Court's aforementioned order (ECF 206)—as "address[ing] inevitable disclosure." Opp. 20 (citing 269 Cal. Rptr. 3d at 414). But the plaintiff in *Hooked Media* did precisely what Plaintiffs seek to do here—"rel[y] on circumstantial evidence" to "generate[] an inference of" misappropriation. *Id*. The court rejected the move as a matter of law, on the basis that the allegations were merely consistent with inevitable disclosure. *Id*. at 414–15. The allegations in *Lilith Games Co. v. uCool, Inc.*, by contrast, did not amount to inevitable disclosure because the defendant would have known its game was a "virtual cut and paste" of the plaintiff's source code, which is well-known to be confidential. 2015 WL 4128484, at *4 (N.D. Cal. July 8, 2015).

Fourth, *Hooked Media* held that facts virtually identical to Plaintiffs' allegations about the pace of Lamego's work were not actionable as a matter of law. 269 Cal. Rptr. 3d at 414. Plaintiffs' cases, by contrast, are substantially different. Unlike here, where Plaintiffs allege Lamego worked at Apple "for less than one year," the *WeRide* plaintiff alleged it "would have been *impossible* to independently develop" a functioning autonomous car in just 10 weeks, 379 F. Supp. 3d at 849–50 (emphasis added). In *Ajaxo Inc. v. E\*Trade Grp. Inc.*, 135 Cal. App. 4th 21, 53 (2005), a jury found that the defendant accessed plaintiff's servers at least 16 times during the mere "weeks" it took the defendant to develop the plaintiff's technology.

Fifth, Plaintiffs argue that Apple's request for non-publication of certain patent applications supports knowledge of misappropriation. But Plaintiffs do not address that non-publication requests are commonplace, and that Plaintiffs themselves submit such requests. *See* RJN Decl. Ex. 16 at 308. Plaintiffs' theory for why this allegation supports knowledge—that Apple intentionally requested non-publication to conceal its purported misappropriation in the applications—is also inconsistent with the fact that Plaintiffs took no action for years after the applications published. *See* MPA 13–15.

In short, Plaintiffs' conclusory allegations are entirely consistent with innocent conduct and at most support an non-actionable inevitable disclosure claim.

2. **Plaintiffs Still Fail to Allege That Apple Acquired, Used, or Disclosed Plaintiffs' Purported Trade Secrets.**

First, Plaintiffs argue they need not identify which secrets are allegedly disclosed in Apple's patents filings, because "[i]t is not common for a plaintiff to know, prior to discovery, the details surrounding an alleged theft of trade secrets." Opp. 22. But Plaintiffs filed this case nearly a year ago, and relevant Apple patents and patent applications began to publish in 2017 (TAC ¶ 239 (████████████)). Plaintiffs do not need discovery to allege which trade secrets are disclosed in public documents.

Second, Plaintiffs misconstrue Apple's argument regarding the timing of disclosures (Opp. 23). Which patents and patent applications disclose which alleged secrets is critical because the patent filings became public at different times, and the TAC (at ¶ 225) alleges only that Plaintiffs' information was secret "at least at the time of . . . misappropriation." Because secrecy is time-dependent according to Plaintiffs' own allegations, it matters when the misappropriation is alleged to have occurred.

Third, Plaintiffs point to *Metricolor LLC v. L'oreal S.A.*, 2020 WL 3802942, at *13 (C.D. Cal. July 7, 2020), and *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 883–84 (N.D. Cal. 2018), to argue the sufficiency of the TAC's allegations about incorporation of Plaintiffs' ████████████ secrets into the Apple Watch (Opp. 23). But the TAC does not even allege that the design features of the Apple Watch are "seemingly identical" to or "just like" Plaintiffs' products. *Cf. Metricolor*, 2020 WL 3802942, at *13; *Alta*, 343 F. Supp. 3d at 883–84. Plaintiffs merely allege their knowledge of ████████████████████████ and point to certain design features of the Apple Watch that perform that function. TAC ¶ 234. *Metricolor* and *Alta* are not on point.

3. **Plaintiffs Still Fail to Allege That Apple Induced a Breach.**

Apple does not contend that Plaintiffs may "not allege inducement on 'information and belief'" (Opp. 23), but rather that *all* allegations in Plaintiffs' complaint must meet the pleading standard outlined in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's one-sentence inducement allegation fails to meet this standard.   Indeed, Plaintiffs do not dispute their failure to plead a single factual allegation describing how Apple purportedly induced a breach of a duty to maintain secrecy, which is dispositive.

Plaintiffs argue that they can properly allege Apple induced a breach "'on information and belief' because the information 'is not presumptively in the[ir] knowledge.'" Opp. 23 (quoting *Calendar Research LLC v. StubHub, Inc.*, 2017 WL 10378336, at *4 (C.D. Cal. Aug. 16, 2017)).   But *Calendar Research* quotes *Brocade*, 2011 WL 1044899, at *6, which was decided before the Ninth Circuit held in *Soo Park* that any allegation based on information and belief must be "based on factual information that makes the inference of culpability plausible."   851 F.3d at 928. Subsequent cases confirm that "[a] conclusory allegation based on information and belief remains insufficient under *Iqbal/Twombly*."  *Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018); *see also Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 2020 WL 4937129, at *9 (E.D. Cal. Aug. 24, 2020) (conclusory allegations of defendant's knowledge insufficient despite defendant's knowledge being "peculiarly" within defendant's "possession and control").[11]

The cases Plaintiffs cite do not demonstrate otherwise.   In *Calendar Research*, plaintiffs alleged that the corporate defendant "attempted unsuccessfully to acquire [plaintiff's subsidiary] and its . . . trade secrets" and so "had full knowledge of the valuable proprietary assets owned"; that plaintiff's former employee "had frequent communications" with defendant's employees, including concerning defendant's desire "to incorporate [plaintiff's] source code . . . into [defendant's] existing and future applications"; and that defendant "knew that [plaintiff's former employees] were no longer authorized to possess or disseminate" the proprietary information when it acquired it.   2017 WL 10378336, at *4.   In stark contrast, here, the TAC includes only

---

[11]  Plaintiffs attempt to distinguish *Menzel* and *Cutera* because they did not address inducement in a trade secret context, but *Soo Park*'s holding that allegations based on information and belief must be "based on factual information that makes the inference of culpability plausible" was not limited to that context.  *See* 851 F.3d at 928.

the conclusory statement that "Defendant induced its employees, including Lamego and O'Reilly, to disclose Plaintiffs' Confidential Information."  TAC ¶ 230.  *Brocade*, 2011 WL 1044899, at *5 and *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015), also cited by Plaintiffs, were both decided before *Soo Park*, and moreover do not support the proposition that an allegation of inducement may be based entirely on a single conclusory sentence in a complaint.  And in *Metricolor*, the court noted that the plaintiff alleged defendants "misappropriated Metricolor's trade secrets *in a number of ways*," only one "example" of which was listed.  2020 WL 3802942, at *13.  Plaintiffs cannot circumvent *Twombly/Iqbal* by using a few magic words.  Their one-sentence inducement allegation is not "based on factual information that makes the inference of culpability plausible," and thus fails to state a claim.  *Soo Park*, 851 F.3d at 928.

### 4. Plaintiffs Still Fail to Allege *Respondeat Superior* Liability.

Plaintiffs argue that "Lamego's and O'Reilly's actions were an 'outgrowth of' and 'inherent in' the working environment" at Apple.  Opp. 24.  But Plaintiffs fail to plead allegations suggesting that those "actions" by their former employees amount to misappropriation for which Apple, in turn, could be held liable.  *See Brain Injury Ass'n of Cal. v. Yari*, 2020 WL 3643482, at *6 (C.D. Cal. Apr. 30, 2020) ("[A]n employer may be vicariously liable *for an employee's tort* so long as it was committed within the scope of the employment." (emphasis added)); MPA at 23–24.

Plaintiffs' cases support Apple's position.  In each, the court *first* held the plaintiff pleaded allegations (or provided evidence) sufficient to show that former employees misappropriated trade secrets.  In *Brain Injury*, it was undisputed that the plaintiff "alleged that [the former employee] misappropriated the Master List," where the plaintiff pleaded detailed allegations that its former employee "transmitted [this] contact list" to a third party for a competing conference and "used the information from the Master List" to grow the conference.  2020 WL 3643482, at *4–5 (emphasis omitted); *see also Language Line Servs., Inc. v. Language Servs. Assocs. LLC*, 2010 WL 2764714,

*4 (N.D. Cal. July 13, 2010) ("undisputed that [former employees] acquired and used the trade secret through improper means"). In *Extreme Reach, Inc. v. Spotgenie Partners, LLC*, before addressing vicarious liability, the court held the former employees "misappropriated trade secrets by obtaining the Customer List." 2013 WL 12081182, at *5–6 (C.D. Cal. Nov. 22, 2013). The court pointed to evidence that a former employee accessed the customer list the day before he resigned and generated and sent reports to his personal email account. *Id.* at *2. No such factual allegations are pled here. Moreover, unlike here, the plaintiffs in those cases adequately described their secrets. Plaintiffs' conclusory allegations of Lamego's and O'Reilly's acts fail to raise a plausible claim that either engaged in misappropriation. This dooms Plaintiffs' *respondeat superior* theory of liability.[12]

## III.   PLAINTIFFS SHOULD BE DENIED FURTHER LEAVE TO AMEND

Plaintiffs argue that "there is no evidence Plaintiffs are unable to cure the alleged deficiencies." Opp. 25. To the contrary, there is *ample evidence* that further amendment would be futile. Plaintiffs have had *four* chances to describe their purported trade secrets. Their "repeated failure to cure deficiencies" the Court identified on multiple occasions warrants denial of Plaintiffs' request for leave to amend. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).[13]

## IV.   CONCLUSION

Apple respectfully requests that the Court dismiss with prejudice Plaintiffs' Thirteenth Cause of Action for trade secret misappropriation.

---

[12] Plaintiffs assert that Apple's Motion was "technically untimely." Opp. 25. Plaintiffs do not argue prejudice, nor do they seek relief. *Id.* Apple sent the sealed papers to Plaintiffs by midnight on November 30. A. Kaounis Decl. ¶ 4 & Ex. A. The *de minimis* filing delay for certain papers was due to illness and a power outage. *Id.* ¶ 5 & Ex. B.

[13] *Quality Towing, Inc. v. Jackson*, 2016 WL 3017642, at *3 (N.D. Cal. May 26, 2016), cited by Plaintiffs, is inapposite because the Court granted leave to amend after granting a motion to dismiss on a ground raised for the first time in that motion.

1  Dated:  December 21, 2020

2                                    JOSHUA H. LERNER
                                     H. MARK LYON
3                                    BRIAN M. BUROKER
                                     BRIAN A. ROSENTHAL
4                                    ILISSA SAMPLIN
                                     ANGELIQUE KAOUNIS
5                                    BRIAN K. ANDREA
                                     GIBSON, DUNN & CRUTCHER LLP
6

7                                    By: */s/ Joshua H. Lerner*
                                         Joshua H. Lerner
8
                                     Attorneys for Defendant APPLE INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28