REDACTED VERSION OF DOCUMENT PROPOSED
TO BE FILED UNDER SEAL

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
KNOBBE, MARTENS, OLSON &
BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:  (949)-760-0404
Facsimile:  (949)-760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
KNOBBE, MARTENS, OLSON &
BEAR, LLP
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000;
Facsimile: (858) 707-4001

*Attorneys for Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc.*

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.:  415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.:  650.849.5300 / Fax: 650.849.5333

*Attorneys for Defendant Apple Inc.*
*[Additional counsel listed on next page]*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, CERCACOR LABORATORIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **JOINT STIPULATION REGARDING DEFENDANT APPLE INC.'S MOTION TO COMPEL PLAINTIFFS TO COMPLY WITH SECTION 2019.210** <br><br> Judge:  Magistrate Judge John D. Early <br> Date/Time:  January 21, 2021 / 10:00 AM <br> Courtroom:  6A <br><br> Discovery Cutoff:  7/5/2021 <br> Pre-trial Conference:  3/21/2022 <br> Trial:  4/5/2022 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTORY STATEMENTS ................................................................ 1

   A.   Apple's Introductory Statement ...................................................... 1

   B.   Plaintiffs' Introductory Statement.................................................... 4

II.   APPLE'S POSITION ...................................................................................... 7

   A.   Factual Background:  Plaintiffs Are Stalling ................................... 7

   B.   Legal Standard:  Plaintiffs Fail to Comply with the Letter and Spirit of Section 2019.210 ............................................................... 9

   C.   Argument:  Plaintiffs' Disclosure Fails to Identify the Trade Secrets at Issue in This Case with Reasonable Particularity. ....................... 11

      1.   Plaintiffs Continue to Hide Behind Vague Descriptions and Non-Exhaustive Lists.................................................................. 11

      2.   Plaintiffs' Disclosure Fails to Differentiate Their Alleged Trade Secrets from Information That is Publicly Known. ............ 16

      3.   Plaintiffs' Disclosure Is Untethered to the Alleged Misappropriation *in This Case*........................................................ 24

      4.   Plaintiffs' Inadequate Disclosure Prejudices Apple ..................... 26

   D.   Conclusion..................................................................................... 29

III.   PLAINTIFFS' POSITION ............................................................................. 30

   A.   Factual Background ....................................................................... 30

      1.   Plaintiffs Addressed Judge Selna's Rulings On The Pleadings .................................................................................... 30

      2.   Plaintiffs Did Not Improperly Delay Serving The Disclosure While Obtaining Discovery From Apple...................................... 31

      3.   Plaintiffs Did Not Change Their Trade Secrets In Their Motion For Preliminary Injunction.............................................. 32

      4.   Plaintiffs' Did Not Delay Resolving The Current Dispute .......... 33

   B.   Legal Standards ............................................................................. 35

   C.   Plaintiffs' Disclosure Complies With Section 2019.210 ............... 36

      1.   Plaintiffs Described Their Trade Secrets In Sufficient Detail ....... 37

         a)   ███████████████████ ............................................... 37

b) ███████████████████████████..............43

c) █████████████............................45

d) ███████████████████████████
   ...........................................................46

e) ███████████████████████████..........48

f) ███████████████████████.......................49

2.   *I-Flow* Demonstrates Plaintiffs' Disclosure Is Sufficient ............51

3.   Expert Testimony Confirms The Disclosure Is Sufficient ...........53

D.   Apple's Other Arguments Lack Merit .....................................................56

1.   Plaintiffs' Disclosure Is Not Vague Or "Non-Exhaustive"...........56

2.   Plaintiffs Need Not Affirmatively Distinguish Their Trade Secrets From Information That Is Generally Known ...................59

3.   Plaintiffs' Section 2019.210 Statement Need Not Identify Apple's Misappropriation ................................................................63

4.   Apple's "Prejudice" Arguments Also Lack Merit.........................67

5.   The Court Should Reject Apple's Additional Requirements ........69

6.   Discovery Should Move Forward..................................................70

1   Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Defendant
2   Apple Inc. ("Apple"), as movant, and Plaintiffs Masimo Corporation ("Masimo") and
3   Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs"), as respondents,
4   respectfully submit the following Joint Stipulation regarding Apple's Motion to Compel
5   Plaintiffs to Comply with California Code of Civil Procedure Section 2019.210
6   ("Section 2019.210").  Pursuant to Local Rule 37-1, the parties met and conferred on
7   October 26, 2020, but the parties were unable to resolve the disputes presented here.

8   ## I.    INTRODUCTORY STATEMENTS

9   ### A.    Apple's Introductory Statement

10   Nearly one year ago, Plaintiffs initiated this case with salacious and
11   unsubstantiated allegations that Apple disclosed unidentified trade secrets in patent
12   applications and incorporated other unidentified secrets in the Apple Watch.  Yet their
13   Section 2019.210 disclosure fails to provide anywhere near a clear picture of the trade
14   secrets Apple is accused of misappropriating.  Under CCP § 2019.210, it "is critical to
15   any [UTSA] cause of action—and any defense—that the information claimed to have
16   been misappropriated be clearly identified."  *Altavion, Inc. v. Konica Minolta Sys. Lab.,*
17   *Inc.*, 226 Cal. App. 4th 26, 43 (2014).  If Plaintiffs have a legitimate claim, they should
18   be able to "identify, up front, and with specificity the particulars of the trade secrets
19   without any discovery."  *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *5
20   (N.D. Cal. Feb. 28, 2014).  Plaintiffs' failure to do so is prejudicing Apple's defense.

21   Courts have observed that "[t]rade secret plaintiffs rarely provide a precise and
22   complete identification of the alleged trade secrets at issue without a court order
23   requiring them to do so.  This is a strategy, not an accident."  *Perlan Therapeutics, Inc.*
24   *v. Superior Court*, 178 Cal. App. 4th 1333, 1344 (2009).  That is the case here.  After
25   the Court held that Section 2019.210 applies, Plaintiffs delayed for ten months while
26   promising to provide their disclosure in "due course."  At the same time, Plaintiffs
27   conducted *voluminous* discovery of Apple's confidential information, arguing that their
28   myriad technical requests were related to their *patent* claims.  Plaintiffs finally provided

a disclosure on October 9, 2020—after Court intervention—but delayed another four weeks in amending it.  The amended disclosure (the "Disclosure") does not adequately identify trade secrets.  Yet now that their patent claims have been stayed, Plaintiffs are arguing that their discovery requests served prior to the stay are related to their *trade secret* claim.  Plaintiffs have changed their position—from claiming that the discovery they seek is patent-related, to now contending that it is trade secret-related—and they will be able to keep playing that game in the absence of a particularized Disclosure.  This is inequitable, unfair, and precisely what Section 2019.210 is meant to protect against.

Plaintiffs' Disclosure suffers from flaws Apple has been calling out for months:

*First*, Plaintiffs' Disclosure remains broadly worded and open-ended, preventing Apple from identifying the alleged secrets at issue.  For example, Plaintiffs copy whole paragraphs of their dismissed Second Amended Complaint ("SAC") nearly word-for-word, repeating broad categories of information.  While Plaintiffs no longer rely on the catch-all term "including" to keep their options open to identify new secrets later, Plaintiffs' new language sews even greater confusion.  Plaintiffs now claim as a trade secret "the value, importance, and appropriateness" of *every* alleged technique or process.  Samplin Ex. E, at 5–6, 8, 10, 12–13.  But Plaintiffs *never* identify a specific value, explain the importance, or pinpoint what exactly would be appropriate.  Therefore, Apple still has no idea where the boundaries of the purported secrets lie.  Plaintiffs also continue to use broad transitional phrases—such as "comprising" and "at least"—that signal a non-exhaustive list.  Neither the Court nor Apple should have to keep explaining to Plaintiffs that this is improper.  Finally, Plaintiffs attempt "to reserve the right to unilaterally . . . broaden [their] lawsuit to include claims [they] hope[] to develop in discovery."  *Perlan*, 178 Cal. App. 4th at 1345.  This is yet another tactic by Plaintiffs that this Court has already criticized, and which would impermissibly allow Plaintiffs to modify their misappropriation claims later based on the Apple confidential information they review in discovery—what Section 2019.210 is meant to guard against.

*Second*, Plaintiffs admit that the alleged secrets are incremental advancements on the state of the art, but fail to provide the "more exacting level of particularity" necessary "to distinguish the alleged trade secrets from matters already known to persons skilled in the field." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 836 (2005). Although Plaintiffs claim their alleged secrets "are not generally known," their vague descriptions fail to provide "an explanation of *how* the alleged trade secret differs from matters known to skilled persons in the field" and fall far short of the particularity necessary for Apple and its expert to discern what is secret and what is public. *Brescia v. Angelin*, 172 Cal. App. 4th 133, 150 (2009) (emphasis added). Plaintiffs claim as secrets such vague concepts as "[c]omparing measurements," "[c]omparing images or data," and engaging in basic trial and error. *E.g.*, Samplin Decl. E, at 2, 7. This evasive terminology is facially inadequate, and its potential impact is problematic: Plaintiffs can leverage this vague language to move the goal posts later. Plaintiffs should identify the specific secrets now. Otherwise, Plaintiffs will be able to selectively unveil them later, giving Apple insufficient time to prepare its defenses.

*Third*, Plaintiffs are hiding behind vague, unbounded descriptions that do not identify specific secrets, let alone the ones *Apple allegedly misappropriated*. This is contrary to the statute, which requires a description of the secrets *allegedly misappropriated in this case*. Cal. Code Civ. Proc. § 2019.210. Plaintiffs have repeatedly alleged that Apple disclosed their secrets in patents and incorporated the secrets in the Apple Watch, but their Disclosure is devoid of any citation to a page or line number of a patent or a specific feature of the Apple Watch. Plaintiffs also do not provide a "concrete identification" of what in the broad categories of information in the Disclosure is secret. *IMAX Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998). This is not a surprise, given that Plaintiffs copied many of the secrets alleged in their Disclosure from their dismissed SAC (barely revising them in their Third Amended Complaint ("TAC")), and admitted that the alleged secrets in the SAC are merely ones they own, not necessarily ones Apple misappropriated. Samplin Decl. Ex. J, at 2. Apple

is still left searching for the boundaries of the specific trade secrets that it allegedly misappropriated, nearly a year into this case.  Apple cannot defend itself without knowing what Plaintiffs contend it misappropriated.

*Fourth*, Plaintiffs' continued refusal to identify their alleged trade secrets with reasonable particularity is compromising Apple's ability to prepare its defense.  Apple does not seek to litigate the merits here, but asks for a fair disclosure that enables Apple and the Court to understand what Plaintiffs contend are the trade secrets Apple allegedly misappropriated before trade secret-related discovery commences, so that discovery can be focused on that particular information.  Plaintiffs should be ordered to set out with particularity their alleged trade secrets in a Section 2019.210-compliant Disclosure.

## B.      Plaintiffs' Introductory Statement

Plaintiffs' trade secret description ("Disclosure") is highly detailed and spans over fourteen pages.  Plaintiffs numbered each trade secret, alleged "Plaintiffs contend Apple misappropriated" those trade secrets, and explained why their trade secrets are not generally known.  Ex. E.[1]  Plaintiffs also engaged in extensive efforts to address Apple's shifting criticisms.  Plaintiffs removed the word "including" and other phrases Apple criticized.  Plaintiffs asked Apple to identify any other objections and explain them on a trade secret by trade secret basis, but Apple refused.  When Plaintiffs amended, Apple shifted its objections by arguing the amended disclosure was "more problematic" due to a phrase that existed in the initial disclosure and as to which Apple had not raised an issue ("value, importance, and appropriateness").  Apple's motion again shifts the target by raising new issues it failed to discuss during the meet and confer.  Apple's shifting approach shows it will challenge the Disclosure as long as this Court entertains it.

Apple's current challenge spends little time on the Disclosure itself.  Instead, Apple casts speculative aspersions on Plaintiffs.  Those aspersions are irrelevant to the

---

[1] In Plaintiffs' sections of the Joint Stipulation, all citations to lettered exhibits are to the exhibits attached to the Declaration of Ilissa Samplin and all citations to numbered exhibits are to the exhibits attached to the Declaration of Adam Powell.  All emphasis in Plaintiffs' sections is added unless noted otherwise.

sole issue before the Court: the adequacy of the Disclosure. Plaintiffs regret that they must respond to Apple's accusations. For example, Apple claims Plaintiffs raised "salacious and unsubstantiated allegations." Jt. Stip. at 1. But Judge Selna found Plaintiffs showed a likelihood of success on the merits with respect to the trade secret addressed in Plaintiffs' preliminary injunction motion. Ex. 1 at 10. Judge Selna also found "Plaintiffs have defined their trade secret with sufficient particularity." *Id.* at 10.

Apple accuses Plaintiffs of "stalling" and "playing [a] game."[2] Jt. Stip. at 2, 7. Nothing supports those accusations. Apple accuses Plaintiffs of delaying amending the disclosure by "four weeks," but Plaintiffs amended just ***one week*** after Apple claimed it had identified all objections. Despite Apple's accusations of delay, and claim that it would provide its portion of this Motion by November 18, Apple did not do so until December 2 after repeated requests by Plaintiffs. Apple also argues that Plaintiffs should have produced a disclosure earlier. But the parties litigated that issue and agreed to a simultaneous exchange of Plaintiffs' Section 2019.210 disclosure and Apple's technical documents relevant to patent infringement. Apple also accuses Plaintiffs of "chang[ing] their position" by using patent requests to seek trade secret discovery. But ***Apple*** argued it was "crystal clear" those requests sought trade secret documents. Plaintiffs merely asked Apple to produce the trade secret documents it actually identified. Far from providing "voluminous discovery," Jt. Stip. at 1, Apple is withholding ***all*** trade secret discovery while obtaining substantial trade secret discovery from Plaintiffs. Plaintiffs gain nothing from delaying resolution of the parties' Section 2019.210 dispute.

With regard to the issue at hand (the adequacy of Plaintiffs' Disclosure), Apple's arguments are remarkably thin. The bulk of Apple's analysis consists of only a few pages of conclusory bullet points. Apple quotes small parts of Plaintiffs' trade secrets and argues those quotes lack detail while omitting the detail it purports to seek. Rather than address the Disclosure as written, Apple rewrites the Disclosure to fit broad

---

[2] Apple's wording choice is troubling given this Court's admonishment against accusing opposing counsel of "gamesmanship." *See* Ex. 2 at 5:10-17, 9:6-13.

1   statements from cases involving far less detailed disclosures. Apple also litigates the

2   merits of the trade secrets rather than address whether they are written with sufficient

3   detail. Apple's introduction raises four high-level criticisms. None have merit.

4   ***First***, Apple argues the Disclosure "copies" portions of Plaintiffs' "dismissed"

5   Second Amended Complaint ("SAC"). Jt. Stip. at 2. However, the Court's ruling

6   criticized only certain words like "including" and a paragraph categorizing trade secrets

7   that Plaintiffs own. Plaintiffs fully addressed Judge Selna's ruling in their amended

8   pleading and the Disclosure. Apple also accuses Plaintiffs of using the "tactic" of

9   "unilaterally" reserving the right to amend. *Id.* As support, Apple quotes Plaintiffs'

10  Disclosure. *Id.* at 15. But Apple's quote crops the Disclosure by inserting an ellipses in

11  place of "under relevant caselaw." Ex. E at 14. Plaintiffs merely stated a routine

12  reservation of rights under relevant caselaw.

13  ***Second***, Apple argues Plaintiffs "admit" the trade secrets are "incremental

14  advancements." Jt. Stip. at 3. Apple provides no citation for that assertion because

15  Plaintiffs made no such admission. Apple relies on that assertion to argue plaintiffs were

16  required, and failed, to provide "an explanation of *how* the alleged trade secret differs"

17  from matters that are generally known. *Id.* Although Apple's cited cases confirm no

18  such description is required, Plaintiffs ***did*** provide such an explanation. Ex. E at 5-14.

19  ***Third***, Apple argues Plaintiffs have not identified the trade secrets that "Apple

20  allegedly misappropriated." Jt. Stip. 3. But the Disclosure clearly states: "[Plaintiffs]

21  hereby identify the following trade secrets that Plaintiffs contend Apple

22  misappropriated." Ex. E at 1. Apple further argues Plaintiffs must explain Apple's

23  misappropriation by "page or line number of a patent or a specific feature of the Apple

24  Watch." Jr. Stip. at 3. But Apple cites no case requiring such misappropriation

25  contentions in a Section 2019.210 disclosure. Apple also contends the Disclosure

26  "copied" trade secrets from the SAC that Plaintiffs admitted are "merely ones they own,

27  not necessarily ones Apple misappropriated." *Id.* at 3-4 (citing Ex. J at 2). But the SAC

28  described both trade secrets Plaintiffs own ***and*** trade secrets Apple misappropriated. As

Plaintiffs explained, "paragraph 39 describes trade secrets that Plaintiffs own" and "paragraphs 41-50, not paragraph 39, describe the trade secrets that Apple misappropriated." Ex. J at 2, 4. The Disclosure included materials from paragraphs 41-50, not paragraph 39. *Compare* Ex. E *with* Ex. H ¶¶ 39-50.

***Fourth***, Apple claims it is having difficulty "prepar[ing] its defense. Jt. Stip. at 4. But Apple has already provided a ***100-page*** expert declaration attempting to show various publications disclose elements of each trade secret. *See* Polson Decl. As Judge Selna explained with respect to Plaintiffs preliminary injunction motion, Apple's ability to provide "detailed analysis about whether Plaintiffs' trade secret was in fact already public knowledge" shows "Plaintiffs have defined their trade secret with sufficient particularity." Ex. 1 at 10. Plaintiffs' Disclosure is more than sufficient.

## II.   APPLE'S POSITION

### A.   Factual Background:  Plaintiffs Are Stalling

*Pleadings*:  From the day this case was filed, Plaintiffs have failed to identify their alleged trade secrets. The Court has twice ruled that Plaintiffs failed to meet even the standard for pleading a trade secret. The Court dismissed the First Amended Complaint ("FAC") because Plaintiffs' "long list of different types of information" and "broad references . . . without reference to specific plans, briefs, or drawings, fail[ed] to plead a trade secret in a manner that gives Apple fair notice of the claim." Samplin Decl. Ex. K, at 7–8. The Court dismissed the SAC after finding that Plaintiffs' "'specific trade secrets'" boiled down to "broad heading[s] . . . certainly not narrow enough to define a clearly identifiable trade secret," followed by lists of impermissibly open-ended examples. *Id.* Ex. L, at 6. Plaintiffs recently filed their TAC on November 12, 2020, which suffers from many of the same problems.

*Discovery*:  Plaintiffs at first refused to comply with Section 2019.210 at all, arguing that it does not apply in federal court. *Id.* Ex. M, at 14–15. Plaintiffs objected to the application of Section 2019.210 in the parties' Rule 26(f) Report, but on April 17, 2020, the Court stayed trade secret discovery only pending compliance with Section

2019.210.  *Id.* Ex. N.  Plaintiffs nonetheless refused to provide a Section 2019.210 disclosure.   For the next *six months*, Plaintiffs delayed in providing a 2019.210 disclosure while taking voluminous discovery of Apple's confidential information—in Plaintiffs' words, "the parties have produced approximately 150,000 pages of discovery and spent 40-45 hours inspecting each other's source code." *Id.* Ex. O, at 20.  On more than three occasions, Plaintiffs responded to Apple's requests with rote statements that they would provide a disclosure in "due course" or at a "reasonable time." *Id.* Ex. P, at 7.   It was only after the Court stepped in (*id.* Ex. Q, at 14:20–16:19), that Plaintiffs finally agreed to a date certain—October 9—to provide a Section 2019.210 disclosure. On a call with Apple's counsel, Plaintiffs claimed they understood "that neither side want[ed] surprises [on] October 9th." *Id.* Ex. R, at 26:11–15.  Yet on that date, Plaintiffs surprised Apple with a woefully deficient disclosure that Plaintiffs would delay another four weeks in amending with superficial changes as discussed below. *Id.* ¶ 4.

*Motions*:   On August 17, 2020, Plaintiffs filed a motion for a preliminary injunction.  Plaintiffs' memorandum claimed broad trade secrets without the specificity that Apple has been seeking since the outset of the case.  When Apple responded by demonstrating that the broad information was made public in *Plaintiffs'* patent filings, Plaintiffs pivoted in their reply brief to one alleged trade secret that Plaintiffs claimed differed from the prior art.  By identifying this one alleged secret for the first time on reply, Plaintiffs deprived Apple of the opportunity to show that even this single narrow alleged secret is not in fact a trade secret.  Apple had no chance to show, among other things, that there is no evidence that the purported secret derives value from not being publicly known, or that Plaintiffs took reasonable measures to protect it.  And the Court already has recognized that alleging one secret in this trickle-down fashion does not put Apple on notice of the trade secrets alleged in this case. *Id.* Ex. L, at 7.

*The Current Disclosure*:   After receiving Plaintiffs' purported 2019.210 disclosure on October 9, Apple wrote a letter to Plaintiffs outlining its many deficiencies. *Id.* ¶ 5; *id.* Ex. B.  After a meet and confer call on October 26, Plaintiffs promised to

amend by removing "some or all" of the catch-all phrases that Judge Selna previously found problematic. *Id.* ¶¶ 6-7; *id.* Ex. C. On November 6, Plaintiffs served an amended Disclosure that pays lip-service to the requirements of 2019.210, yet still fails to provide Apple with fair notice of Plaintiffs' trade secret claims. *Id.* ¶ 9.

**B.    Legal Standard: Plaintiffs Fail to Comply with the Letter and Spirit of Section 2019.210**

Section 2019.210 imposes several requirements on the disclosure a trade secret plaintiff must make before commencing trade secret discovery.

*First*, the text is explicit that the trade secret the plaintiff must identify is that which it alleges was misappropriated. Cal. Civ. Proc. Code § 2019.210. The trade secret plaintiff cannot merely recite information it alleges is a trade secret, but rather must identify the trade secrets "claimed to have been misappropriated." *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1111 (N.D. Cal. 2016); *Advanced Modular Sputtering*, 132 Cal. App. 4th at 834–35 ("[D]iscovery can commence only after the allegedly misappropriated trade secrets have been identified with reasonable particularity[.]"); *VIA Techs., Inc. v. Asus Computer Int'l*, 2016 WL 5930280, at *3 (N.D. Cal. Oct. 12, 2016) ("Focusing first on the fourth purpose of Section 2019.210, to enable ASMedia to prepare a defense against claims that it has misappropriated trade secrets, it will need to know the substance of the secrets it has allegedly stolen."). Where, as here, a method or technique is claimed as a secret, the specific aspects of the method that are secret, i.e., different from the state of the art, must be identified. *Brescia*, 172 Cal. App. 4th at 150 n.2 ("[W]hen, as in *IDX*, the plaintiff's identification 'leaves mysterious exactly which pieces of information are the trade secrets', our interpretation of section 2019.210 permits the court to require a further definition so as to satisfy the purposes of the statute.").

*Second*, "[c]atchall descriptions, lists of categories of alleged trade secrets in broad terms, or a listing of concepts that the plaintiff asserts constitute its trade secret information are all insufficient under Section 2019.210," as are "designations that are

not sufficiently concrete, leaving room for the designating party to change the meaning of the trade secret after the completion of discovery[.]" *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D. Cal. Sept. 3, 2019) (Early, J.) (citation and internal alterations omitted).

*Third*, the trade secret plaintiff must identify with reasonable particularity *why* its alleged secret "belongs in the legal category of trade secret." *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018). This does *not* mean that the plaintiff must prove the merits of its claim; instead, it requires the plaintiff to "distinguish[] the trade secrets 'from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" *Advanced Modular Sputtering*, 132 Cal. App. 4th at 835 (quoting *IMAX Corp.*, 152 F.3d at 1164–65). And where "alleged trade secrets consist of incremental variations on, or advances in the state of the art in a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Loop AI Labs*, 195 F. Supp. 3d at 1112.

"Reasonable particularity" does not require that the disclosure outline "every minute detail of [the] claimed trade secret," but that the plaintiff "make some showing that is *reasonable, i.e., fair, proper, just and rational, under all of the circumstances* to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits." *Advanced Modular Sputtering*, 132 Cal. App. 4th at 835-36 (emphasis added).

"Reasonable particularity" should "be understood in light of the [four] purpose[s] of section 2019.210": (1) to promote well-investigated claims and dissuade the filing of meritless trade secret complaints; (2) to prevent plaintiffs from using discovery as a means to obtain the defendant's trade secrets; (3) to assist the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests

fall within that scope; and (4) to enable defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation. *M/A-COM*, 2019 WL 4284523, at *2 (quoting *Lilith Games (Shanghai) Co. v. uCool, Inc.*, 2015 WL 4149066, at *4 (N.D. Cal. July 9, 2015)) (second alteration added); *see also Computer Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 991–92 (S.D. Cal. 1999).

### C.    Argument:  Plaintiffs' Disclosure Fails to Identify the Trade Secrets at Issue in This Case with Reasonable Particularity.

#### 1.    Plaintiffs Continue to Hide Behind Vague Descriptions and Non-Exhaustive Lists.

In its October 13, 2020 order granting Apple's motion to dismiss Plaintiffs' SAC (the "Order"), the Court held, *inter alia*, that:  (1) Plaintiffs' list of alleged secrets "merely provide[d] *some examples* of what is within [Plaintiffs'] broad allegations"; (2) the "specific trade secrets" included in this list were "[not] defined clearly enough to stand on their own"; and (3) Plaintiffs' reservation of the right to add secrets based on discovery "must be naturally read as showing that Plaintiffs expressly do not intend for the [] list of 'specific trade secrets' to be an exhaustive recitation of the trade secrets that Plaintiffs allege Apple misappropriated." Samplin Decl. Ex. L, at 5–6 (emphasis added). Plaintiffs' Disclosure contains the same flaws.

*First*, as a threshold matter, the Court criticized Plaintiffs for setting forth broad categories of information that *included* non-exhaustive examples of information that could be trade secrets. *Id.* While Plaintiffs deleted this objectionable language from the Disclosure, they did not cure the problem. To the contrary, Plaintiffs simply inserted broad language at the *end* of each category of alleged secrets that preserves Plaintiffs' ability to identify a wide body of trade secrets at a later date. Plaintiffs purport to own an alleged secret (or secrets—it is unclear which) covering the "value, importance, and appropriateness" of each and every alleged technique or process. *Id.* Ex. E, at 5–6, 8, 10, 12–13. This is just as bad, if not worse, than Plaintiffs' prior language. Plaintiffs are

obviously still hedging by failing to identify with specificity the specific secrets at issue. *See Gatan, Inc. v. Nion Co.*, 2018 WL 2117379, at \*3 (N.D. Cal. May 8, 2018) ("If the trade secrets discussed in Nion's SBIR application are in fact the only trade secrets at issue, then Gatan's trade secrets designation should say so."); *Optumsoft, Inc. v. Arista Networks, Inc.*, 2015 Cal. Super. LEXIS 1726, at \*7 (Cal. Super. Ct. Feb. 20, 2015) ("[Plaintiff] cannot include language in the identification that leaves open the possibility that it may not have identified all of the trade secrets at issue."); *see also IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) ("[A] plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition [of a trade secret].").

*Second*, there can be no dispute that the specific examples of alleged trade secrets are methods that include *non-exhaustive* lists of steps. In its Order, the Court held that Plaintiffs' use of "catchall" language "suggests that the lists that follow each of [Plaintiffs'] broad headings is not exhaustive." Samplin Decl. Ex. L, at 6. Yet the Disclosure is still littered with broad, catch-all terms. Although Plaintiffs removed the word "including," equally broad catch-all phases such as "at least" now appear in other places. For example:



Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. to Compel     12     Case No. 8:20-cv-00048-JVS (JDEx)



But these words are synonyms, and it is well established that the "term 'comprising' [also] is synonymous with 'including,' 'containing,' or 'characterized by,' is inclusive or open-ended and does not exclude additional, unrecited elements or method steps." *Fontem Ventures, B. V. v. NJOY, Inc.*, 2015 WL 12731939, at *4 (C.D. Cal. Oct. 22, 2015) (citing Manual of Patent Examination Procedure

§ 2111.03); *see also Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, 2007 WL 1239220, at *6 (N.D. Cal. Apr. 27, 2007) ("In patent parlance, the term 'comprising' is understood to be synonymous with 'including.'").  In other words, Plaintiffs continue to provide Apple with an unbounded set of exemplary information that *could* be secrets.  This is impermissible.  Plaintiffs need to clarify which aspects of the methods set out in the Disclosure are the secrets that they contend Apple misappropriated.

*Third*, Plaintiffs improperly attempt "to reserve the right to unilaterally . . . broaden [their] lawsuit to include claims [they] hope[] to develop in discovery." *Perlan*, 178 Cal. App. 4th at 1345.  Plaintiffs state that "[d]iscovery is ongoing," and attempt to "reserve all rights . . . to amend th[eir] identification." Samplin Decl. Ex. E, at 14.  These "boilerplate reservations of right . . . make[] no attempt to comply with section 2019.210" (*Perlan*, 178 Cal. App. 4th at 1338), but instead attempt an end run around the very purpose of Section 2019.210—to "assist[] the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope." *M/A-COM*, 2019 WL 8108729, at *2.  Unless forced to identify their trade secrets with particularity as required by Section 2019.210 *prior* to engaging in trade secret-related discovery, Plaintiffs will continue to make tactical use of discovery to "change [their] claims to conform to the information defendant revealed in discovery." *Social Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *2 (N.D. Cal. June 14, 2012); *see also Jobscience*, 2014 WL 852477, at *5 ("Experience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify what ever happens to be there as having been trade secrets stolen from plaintiff. A true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery.").  Plaintiffs need to identify their alleged trade secrets now, before they commence trade secret-related discovery in Apple's files.  That is the precise purpose of Section 2019.210.

### 2. Plaintiffs' Disclosure Fails to Differentiate Their Alleged Trade Secrets from Information That is Publicly Known.

Plaintiffs are required to identify "the trade secrets at issue *with sufficient particularity* to . . . distinguish[] the trade secrets from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." *Advanced Modular Sputtering*, 132 Cal. App. 4th at 835 (emphasis added). In a complex case such as this, where "the alleged trade secrets consist of incremental variations on, or advances in the state of the art in a highly specialized technical field, *a more exacting level of particularity may be required* to distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Id.* at 836 (emphasis added); *see also Brescia*, 172 Cal. App. 4th at 150 ("[T]he court may require *an explanation of how* the alleged trade secret differs from matters known to skilled persons in the field as necessary to satisfy those needs.") (emphasis added).

Plaintiffs' mere recitation of things "alleged to be a trade secret" without "clearly articulat[ing] *why* that 'thing' belongs in the legal category of trade secret" fails to satisfy Section 2019.210. *Agency Solutions.Com v. Trizetto Group, Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011) (emphasis added). Plaintiffs identify broad swaths of largely public information and summarily proclaim that this information is "not generally known." Samplin Decl. Ex. E, at 1, 5–8, 10, 12–13. ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████ *Id.* at 5. But Plaintiffs make no effort to actually separate the information in their Disclosure from matters of general knowledge, much less from the special knowledge of persons skilled in the trade of pulse oximetry. *See Acrisure of Cal., LLC v. SoCal Com. Ins. Servs., Inc.*, 2019 WL 4137618, at *4 (C.D. Cal. Mar. 27, 2019) ("Acrisure has not alleged sufficient facts to demonstrate that its customers' contact information is not readily ascertainable through public sources—it simply alleges in a conclusory fashion that they are not

Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. to Compel          16          Case No. 8:20-cv-00048-JVS (JDEx)

generally known."); *see also Sandler Partners, LLC v. Masergy Commc'ns, Inc.*, 2020 WL 3051253, at *5 (C.D. Cal. Feb. 25, 2020) (same); *Optumsoft*, 2015 Cal. Super. LEXIS 1726, at *9 ("[I]it is not sufficient to simply list the purported trade secrets and label them 'reasonably particular' and 'novel.'"); *Perlan*, 178 Cal. App. 4th at 1351 (2019.210 disclosure inadequate where "Perlan did not explain 'how' its alleged trade secrets were novel"); Declaration of Michael J.R. Polson, ("Polson Decl.") ¶¶ 18, 20–229.  Instead, Plaintiffs' broad, "categorical descriptions render it impossible for Defendants to conduct public domain or other research to challenge the alleged secrecy of the information at issue." *Loop AI Labs*, 195 F. Supp. 3d at 1115.[3]

For example, with regard to their alleged technical trade secrets (Samplin Decl. Ex. E, at 1–8, 13):

- Plaintiffs claim their alleged trade secrets include ██████████████ ████████████████████████ *Id.* at 2, 7. But Plaintiffs do not explain how these processes differ from the basic comparison that any researcher or engineer would do to discover the optimal setting for a certain product or process.  Polson Decl. ¶¶ 64–69, 185–91 (opining that ████████████████████ ████████ ███ ████████ ██████████ ██ ████████ ████████████████████████████); *see Agency Solutions*, 819 F. Supp. 2d at 1017 ("Proprietary ways of doing the same thing that others in the same field do are not trade secrets.").  Nor do verbs like ██████████ ████████████████████ provide the requisite specificity to distinguish Plaintiffs' processes from their general meanings, particularly where Plaintiffs do not explain *how* they supposedly ██████████████.  Samplin Decl. Ex. E, at 2, 7; *cf. Freeman Inv. Mgmt. Co., LLC v. Frank Russell*

---

[3] Nor have Plaintiffs made any effort to show that reasonable measures were taken to protect the secrecy of each of their alleged trade secrets. *Jobscience*, 2014 WL 852477, at *5 (instructing plaintiff to set forth "a description of how each secret has been the subject of reasonable efforts to maintain its secrecy"); *see also Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 2018 WL 2117424, at *4 (N.D. Cal. May 8, 2018) (same).

*Co.*, 2016 WL 5719819, at *11 (S.D. Cal. Sept. 30, 2016), *aff'd*, 729 F. App'x 590 (9th Cir. 2018) ("[S]aying 'emphasizes' could mean anything.  It's devoid of substance . . . .  As with a recipe for chocolate cake 'emphasizing chocolate,' [a trade secret description containing this word] is vague and, ultimately, unhelpful.").

- Plaintiffs assert that the process of ███████████████████████████ ████████████████████████████████████████████████████ ██████ is a trade secret.  Samplin Decl. Ex. E, at 2.  This appears to describe the process of trial and error that anyone in the field would be required to undertake. Polson Decl. ¶ 71 (describing ██████████████████████████████████ ████████████████████████████████████); *see Aetna Bldg. Maint. Co. v. West*, 39 Cal. 2d 198, 206 (Cal. 1952) (rejecting the notion that a "procedure for estimating the price of a new contract" constituted a trade secret because "any competitor in the business must consider all of the factors which enter into Aetna's computations").  Critically, the Disclosure provides no information on *how* Plaintiffs supposedly ██████████████████████ ██████, or how Plaintiffs' process is distinct from those generally known in the trade.  Polson Decl. ¶¶ 70–72 (opining that Plaintiffs have not provided sufficient information to distinguish "███████████████████████████████ ████████████████████████████████████████████████████ ███████" from their own published patents); *compare Alta Devices, Inc. v. LG Elec., Inc.*, 2019 WL 176261, at *4 (N.D. Cal. Jan. 10, 2019) (rejecting disclosure that described trade secrets "merely as techniques, processes, and methods that produce certain results," without "describ[ing] what the particular technique, process or method is, or how certain results were achieved"), *with Brescia*, 172 Cal. App. 4th at 141 (finding 2019.210 disclosure adequate where plaintiff provided "a list of the 15 specific ingredients that constituted Brescia's pudding formula," which identified "each ingredient by its common name and the

Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. to Compel     18     Case No. 8:20-cv-00048-JVS (JDEx)

percentage it constitutes of the total pudding," and "listed each step in the mixing, testing, and code marking of the pudding").

• On page 13 of the Disclosure, ███████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████████." Samplin Decl. Ex. E, at 13. Nowhere do Plaintiffs provide any details on ██████████████████████████ ███████████████████. Polson Decl. ¶¶ 214–29 (opining that Plaintiffs have not provided sufficient information to distinguish the "█████████████████████ ████████████" from ██████████████████████████████████████); *see Space Data Corp. v. Alphabet Inc.*, 2018 WL 10647160, at *2 (N.D. Cal. May 8, 2018) ("Here, Space Data is claiming as its trade secret 'an algorithm,' but it has not identified what the algorithm is."); *IMAX Corp.*, 152 F.3d at 1166–67 (holding disclosure insufficient because it did not actually state what "dimensions and tolerances" plaintiff considered to be secret). This affords Apple no way to investigate how Plaintiffs' ██████████████████████████ differs, if at all, from what is publicly known.

• Plaintiffs describe ███████████████████████████████████████████ █████████████████ (Samplin Decl. E, at 6), but offer no details as to █████████████ ████████████████. Polson Decl. ¶¶ 167–170 (opining that Plaintiffs have not provided sufficient information to distinguish ████████████████████████████ ███████████████████████████ from published patents); *see Gabriel Techs. Corp. v. Qualcomm, Inc.*, 2011 WL 6152240, at *5 (S.D. Cal. Dec. 12, 2011) (A "procedural approach or framework can constitute a trade secret" only if it is described in sufficient detail that "the description could [be] handed to a group of engineers and programmers who would . . . know[] what to build."); *IMAX Corp.*, 152 F.3d at 1167 (where a "trade secrets claim involves a

sophisticated and highly complex" system or process, plaintiff must provide a "concrete identification" of each feature of the system or process for which it is claiming trade secret protection).

- At certain points, Plaintiffs cite their "knowledge" of certain techniques or processes. Samplin Decl. E, at 7, 13. But these vague assertions of knowledge have been found inadequate even to state a misappropriation claim. *See AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1145 (N.D. Cal. 2019) ("The references . . . to 'positive and negative learnings' and 'technology and negative information and learnings' are vague. Th[is] type[] of information [is] not tethered to a specific technology; it cannot be discerned which aspects of [defendant's technology] the information pertains to."); *Calendar Research LLC v. StubHub, Inc.*, 2020 WL 4390391, at *5 (C.D. Cal. May 13, 2020) ("Plaintiff now asserts that Defendants' 'know-how' and 'learnings' are trade secrets. These are nebulous concepts that, unless clearly defined, encounter the long-standing tension between employment law and the trade secrets doctrine."). Thus, these vague assertions cannot satisfy Section 2019.210, which has a higher particularity standard. *See M/A-COM*, 2019 WL 4284523, at *3.

Plaintiffs' procession of ambiguities continues with vague references to the "value and importance" of certain techniques and undefined "patterns." Samplin Decl. E, at 1, 5–8, 10, 12–13. But like the descriptions outlined above, "[n]o details are provided for *how* [Plaintiffs] allegedly achieved the desired . . . functionality." *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 1724763, at *3 (N.D. Cal. May 1, 2014) (emphasis added); *see* Polson Decl. ¶¶ 151–53, 181–83, 211–13, 227–29 (collecting statements in Plaintiffs' published patents regarding the "value, importance, and appropriateness" of the public disclosure therein). "Despite the highly technical language used," at certain points, "it is apparent that [Plaintiffs'] description does not provide specific identifications" of any of their purported techniques or processes. *Perlan*, 178 Cal. App. 4th at 1338–39.

Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. to Compel      20      Case No. 8:20-cv-00048-JVS (JDEx)

Plaintiffs' Disclosure is even less specific when it comes to their alleged "███████████████" and "██████████████████████████." Business plans or strategies should be described with specificity. *See N. Am. Lubricants Co. v. Terry*, 2011 WL 5828232, at *6 (E.D. Cal. Nov. 18, 2011) ("Any NALC 'business model,' 'business plan,' and 'marketing materials,' as well as any of the other 'boilerplate' items must be described with particularity (e.g. by author(s), date of creation, subject matter, basis for trade secret claim, etc.) . . . ."). Plaintiffs fail to do so here. For example:

- Plaintiffs list: (1) █████████████████████████████ ███████████████████ ██████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████ Samplin Decl. Ex. E, at 9. These merely describe the basic job of any medical professional.

- Plaintiffs refer to a "███████████████████████████ ███████████████████████████████████████ ████████████████████████████████████" (*id.*), but fail to actually describe the plan itself and provide no clues as to what "████████████████████████████" might mean.

- Plaintiffs cite "██████████████████████████████████ ███████████████████████████████████████ ████████████████████" (*id.* at 9, 1), but again fail to describe what ████████ ██████████████████████ means, i.e., *how* they are done.

- Plaintiffs purport to describe secret █████████████████████ ███████████████████████████████████ (*id.* at 11), but reveal that such "strategies" boil down to ██████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████ of certain facts.  *See Freeman*, 2016 WL 5719819, at *11 ("[S]aying 'emphasizes' could mean anything.  It's devoid of substance[.]").

The alleged trade secrets in Plaintiffs' Disclosure are similar to those rejected in *I-Flow Corp. v. Apex Medical Technologies, Inc.*, 2008 WL 11342257, at *3 (S.D. Cal. Feb. 15, 2008).  The plaintiff in that case, employing the same tactics as Plaintiffs here, "set[] forth 19 categories of alleged trade secret information" related to a portable infusion pump used to deliver intravenous medication (*id.*), including:

- "acceptable ranges for elongation requirements," "acceptable burst rates," and "optimal dip molding processes" (*compare* Samplin Decl. Ex. E, at 2 ("█████████ ███████████████████████████████████████████████████ ██████████████████████████████████████"));

- "process modifications aimed at reducing drying time and equipment wait time," "the results of modulus curve testing," and "information I-Flow obtained from past efforts to manufacture polyisoprene elastomeric infusion pump bladders" (*compare* Samplin Decl. Ex. E, at 2, 9 ("███████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████"));

- "manufacture and product assembly methods including requirements involving alcohol contact" (*compare* Samplin Decl. Ex. E, at 4–8, 13 (referring to █████ ███████████████████████████████████████████████████ ██████████████████████████████████████████████████"));

- "marketing strategies for pain management systems," "marketing of safe elastomeric infusion pump bladders," "sales infrastructure specifically designed

to market pain management systems," "distribution channels for the marketing of pain management systems," "assessments of pain management market and potential opportunities present within the market" (*compare* Samplin Decl. Ex. E, at 9 ("

")); and

- "strategies and processes involved with the manufacture of pain management systems, including the On-Q Pump" (*compare* Samplin Decl. Ex. E, at 11 ("

," etc.)).

The *I-Flow* court held that "[n]owhere" in these descriptions "has Plaintiff endeavored to distinguish between technical information and marketing information that is generally known to those skilled in the trade of infusion pump technology and secret technical and marketing information that Defendants allegedly misappropriated from Plaintiff . . . ." *I-Flow Corp.*, 2008 WL 11342257, at *3. In granting the defendants' motion to compel, the court ordered the plaintiff to describe its trade secrets with "enough particularity that Defendants can determine what secrets they are accused of taking, and such that court can determine the appropriate scope of discovery." *Id.*; *see also Perlan*, 178 Cal. App. 4th at 1352 (Section 2019.210 disclosure inadequate where plaintiff "did not clearly explain how its secrets (or secret combinations of publicly available processes) differed from publicly available knowledge[.]"); *M/A-COM*, 2019 WL 8108729, at *4 (Section 2019.210 disclosure inadequate where "Plaintiffs d[id] not provide any specific information explaining how their 'proprietary designs' differ from publicly available information."); *Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2015 WL 8028294 at *4 (N.D.

Cal. Dec. 7, 2015) (trade secret disclosure inadequate where it was unclear "which aspects are publicly known and which are not").

Similarly here, Apple asks for what is "reasonable, i.e., fair, proper, just and rational"—a trade secret designation that "distinguish[es] the trade secrets from matters of general knowledge in the trade" (*Advanced Modular Sputtering*, 132 Cal. App. 4th at 835–36), and which contains "enough particularity that [Apple] can determine what secrets [it is] accused of taking . . . ." *I-Flow Corp.*, 2008 WL 11342257, at *3.

### 3. Plaintiffs' Disclosure Is Untethered to the Alleged Misappropriation *in This Case*.

Plaintiffs' Disclosure additionally fails to serve its basic function, which is to identify with reasonable particularity the trade secrets that Plaintiffs allege *were misappropriated by Apple*. *See, e.g.*, *Perlan*, 178 Cal. App. 4th at 1336 ("[S]ection 2019.210 requires a plaintiff suing for misappropriation of its trade secrets to identify with 'reasonable particularity' the purported trade secrets *which allegedly have been misappropriated*.") (emphasis added); *Loop AI Labs*, 195 F. Supp. 3d at 1111 ("It is critical to any CUTSA cause of action—and any defense—that the information claimed to have been misappropriated be clearly identified."); *Myrio Corp. v. Minerva Network Inc.*, 2001 U.S. Dist. LEXIS 10461, at *1–3 (N.D. Cal. Apr. 4, 2001) (2019.210 disclosure must "include only items that Plaintiff considers are its actual trade secrets, and only those trade secrets that Plaintiff has reasonable grounds to allege were misappropriated").

Although Plaintiffs purport to comply with this requirement, stating that they "hereby identify the following trade secrets that . . . Apple misappropriated" (Samplin Ex. E, at 1), nothing in the Disclosure links Plaintiffs' trade secret descriptions to the trade secrets Plaintiffs assert in this case, i.e., the secrets allegedly disclosed in patents and incorporated in the Apple Watch. From the beginning of this case, Plaintiffs have alleged that Apple disclosed Plaintiffs' trade secrets in patent applications and incorporated them in the Apple Watch. *See id.* Ex. G ¶¶ 24–25, 218; *id.* Ex. H ¶¶ 24–

25, 236–38; *id.* Ex. I ¶¶ 24–25, 231, 233, 235–37, 239, 244, 247.  The Disclosure, however, provides no connection between its lengthy descriptions of purported trade secrets and *any* alleged disclosure in any patent or *any* feature of the Apple Watch.  This is not a surprise, because Plaintiffs have openly admitted that the SAC—on which Plaintiffs draw heavily in their Disclosure—"describes trade secrets that Plaintiffs *own*, not trade secrets that Plaintiffs assert *Apple misappropriated*."  *Id.* Ex. J, at 2 (emphases added).

Perhaps the best evidence of the Disclosure's deficiency in this regard is the fact that Plaintiffs identify page and line numbers from patents in their TAC as purportedly reflecting certain of their alleged trade secrets (*see, e.g.*, *id.* Ex. I ¶¶ 233, 239), but those page and line numbers appear nowhere in their Disclosure.  Courts routinely find Section 2019.210 disclosures inadequate where, as here, a plaintiff "has the ability (but not the inclination) to provide clearer, more specific information about . . . its alleged trade secrets . . . ."  *Perlan*, 178 Cal. App. 4th at 1345.  For example, in *Loop AI Labs*, the court found the plaintiff's 2019.210 disclosure deficient where the plaintiff "d[id] not specify which contracts and agreements contain[ed] the alleged trade secrets" and "assert[ed] that its patent application is a trade secret," but "d[id] not specify which portion of the application describes the claimed secret." 195 F. Supp. 3d at 1116.  Similarly, in *Space Data Corp. v. X*, the court found the plaintiff's 2019.210 disclosure inadequate where the plaintiff did "not ma[ke] clear which aspects of its technology and other information are 'part of patents and pending patent applications,' if any, and which are secret."  2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017); *see also Lilith Games*, 2015 WL 4149066, at *5 ("In technical cases such as this, a plaintiff must describe the trade secret, not merely the technology."); *Myrio Corp.*, 2001 U.S. Dist. LEXIS 10461, at *1–3 ("If Plaintiff references a document as setting forth one or more trade secrets, it shall specify precisely which portions of the document describe the trade secret(s).").

Here, Plaintiffs' continued refusal for nearly ten months to serve a Section 2019.210 disclosure that identifies by page and line number every alleged disclosure of

1    Plaintiffs' trade secrets in any patent, or any specific feature of the Apple Watch that

2    incorporates the same, is far from "reasonable, i.e., fair, proper, just and rational," and

3    makes it unreasonably difficult for Apple to prepare a defense in this case. *Advanced*

4    *Modular Sputtering*, 132 Cal. App. 4th at 836.

### 4.    Plaintiffs' Inadequate Disclosure Prejudices Apple

6    Apple "cannot reasonably prepare [its] defenses and search for art in the field if

7    the boundaries of the trade secret[s] are . . . undetermined," because the alleged trade

8    secrets have not been identified with reasonable particularity. *Jobscience*, 2014 WL

9    1724763, at *3.  By refusing to describe the alleged trade secrets with any specificity,

10   Plaintiffs make it impossible for Apple to investigate which, if any, part of the Apple

11   Watch or Apple's patents incorporate any of Plaintiffs' confidential information, and to

12   remedy any such alleged misappropriation.  Not only does it defy common sense for

13   Plaintiffs, who supposedly have a valid misappropriation claim, to refuse to identify

14   their alleged trade secrets quickly (so that they can stop Apple's alleged continued

15   misappropriation), it also is unfair to allow Plaintiffs to run up potential damages in this

16   case by keeping Apple from curing any alleged misappropriation.

17   Furthermore, Plaintiffs have been equally cagey about when the alleged secrets

18   were secret.  For example, Plaintiffs allege that the "Confidential Information" recited

19   in the SAC was secret "at least at the time of Defendant's misappropriation."  Samplin

20   Decl. Ex. I ¶ 225.  But if Plaintiffs do not identify a specific set of alleged trade secrets

21   *and* tie the alleged secrets to the patents or Apple Watch, there is no way for Apple to

22   determine whether the alleged secrets in this case were ever secret, were secret at the

23   time of misappropriation as Plaintiffs allege, or are secret today.  The same goes for

24   economic value and reasonable measures—without specifics, Apple cannot pin down

25   the alleged secrets in order to focus on when the alleged secrets could have been valuable

26   and when adequate measures to protect secrecy were necessary.  Finally, Apple also

27   needs this information to determine when Plaintiffs knew or should have known about

28   any alleged trade secret misappropriation, which is directly relevant to, among other

1  things, Apple's statute of limitations defense.

2       Plaintiffs' recent motion for a preliminary injunction is a prime example of the

3  prejudice Apple faces from Plaintiffs' continued refusal to identify their purported trade

4  secrets with specificity.  Plaintiffs filed a motion for a preliminary injunction (Samplin

5  Decl. Ex. U), at first claiming broad trade secrets without specificity, then narrowing the

6  allegations in their reply brief to one alleged trade secret, which supposedly differed

7  from the prior art.  *Id.* Ex. V.  By identifying this one alleged secret for the first time on

8  reply, Plaintiffs deprived Apple of the opportunity to demonstrate, among other things,

9  that there is no evidence that this purported secret derives value from not being publicly

10  known, or that Plaintiffs took reasonable measures to protect it.  If permitted to stay the

11  course, Plaintiffs will continue to assert their trade secrets strategically in motions with

12  short opposition periods, and Apple will be forced to "wait until the eve of trial to

13  effectively defend against charges of trade secret misappropriation."  *Computer Econ.*,

14  50 F. Supp. 2d at 988–92; *see also Via Techs.*, 2016 WL 5930280, at *3 ("[T]o prepare

15  a defense against claims that it has misappropriated trade secrets, [the defendant] will

16  need to know the substance of the secrets it has allegedly stolen[.]").

17       Plaintiffs' change in discovery position is another example of the prejudice Apple

18  faces from Plaintiffs' continued refusal to identify their purported trade secrets with

19  specificity.  Plaintiffs previously characterized certain of their technical discovery

20  requests as patent-related, in arguing that the Court should compel Apple to respond to

21  the requests even in the absence of a Section 2019.210 disclosure (and, in fact, the Court

22  agreed with Plaintiffs).  Yet, now that Plaintiffs' patent claims have been stayed, and

23  Plaintiffs therefore have no basis to compel patent-related discovery from Apple,

24  Plaintiffs have reversed course—arguing that Apple must produce documents

25  responsive to these technical discovery requests because the requests are *trade secret-*

26  *related*.  The following technical discovery requests propounded by Plaintiffs on March

27  16, 2020, well before they served the first iteration of their Disclosure on October 9,

28  2020, are illustrative (Samplin Decl. Ex. W):

- REQUEST FOR PRODUCTION NO. 5: Documents sufficient to show the design and operation of the Accused Products.
- REQUEST FOR PRODUCTION NO. 17: Documents sufficient to show the operation of any algorithms used to monitor any physiological parameter in any of the Accused Products.
- REQUEST FOR PRODUCTION NO. 18: Documents sufficient to show the operation of any heart rate algorithms used in any of the Accused Products.

On April 30, 2020, Plaintiffs argued to the Court that these requests "seek 'core technical documents' about the 'Accused Products,' which Plaintiffs specifically defined as the ***products accused of patent infringement***," and that the requests "are quintessential patent requests." *Id.* Ex. X, at 36 (emphasis in original).  Plaintiffs told the Court that these requests are not trade secret-related, as Apple argued, because "trade secret RFPs would seek, for example, information about Apple's employment of Plaintiffs' former employer employees, whether and how those former employees provided Plaintiffs' confidential information to Apple, communications with those former employees, and other trade secret information," and represented that "Plaintiffs will serve such RFPs after providing the confidential Section 2019.210 disclosure pursuant to a Protective Order." *Id.* at 37.  In other words, Plaintiffs represented to the Court that RFPs 5, 17, 18, and all of their other technical discovery requests served by April 30, 2020 were patent-related and *not* trade secret-related.  Yet, after Plaintiffs' patent claims were stayed on October 13, 2020, Plaintiffs turned around and argued the opposite.  *Id.* Ex. Y.  Plaintiffs will be able to keep changing their position about what constitutes trade secret-related discovery in the absence of a particularized Disclosure, which is *precisely* what Section 2019.210 is meant to prevent.

Other cases demonstrate the risks and costs to Apple that will follow from allowing Plaintiffs to proceed with trade secret-related discovery without first providing an adequate Section 2019.210 disclosure.  In *Freeman*, for example, the plaintiff identified 492 different "overly vague and overly inclusive" trade secrets in its Section

2019.210 disclosure.  2016 WL 5719819, at *11.  The plaintiff was permitted to proceed with trade secret discovery, but then, at the summary judgment hearing, "indicated for the first time that it had no intention of going to trial on 492 trade secrets, but instead assumed that it would be permitted to elect 'twenty [or] nine' trade secrets at the final pretrial conference." *Id.*  The plaintiff's counsel argued that at least *some* of its alleged trade secrets were described with sufficient particularity, but the court held that the plaintiff's strategy of "oh, it's in here somewhere" was untenable, and that the defendant was "entitled to know what [it was] dealing with before now," as it had endured a year and a half of litigation, "hired experts," and "taken depositions, all in the face of a 492-plus trade secret" case that would have "look[ed] completely different" if the plaintiff had simply identified the three trade secrets that it finally asserted with particularity at the eleventh hour.  *Id.* at *12.  "We can't start over now," the court remarked.  *Id.*

Plaintiffs have made serious trade secret misappropriation allegations in this case. It is past time for them to back up the allegations with an adequate Section 2019.210 disclosure.

### D.    Conclusion

Plaintiffs' Disclosure is inadequate.  Plaintiffs should serve on Apple a Section 2019.210 disclosure that includes:  (1) a summary of the specific, alleged trade secrets; (2) the background of the alleged trade secrets and a description of how each alleged secret has derived independent, actual or potential economic value by virtue of not being generally known to the public; (3) a description of how each alleged secret has been the subject of reasonable efforts to maintain its secrecy; and (4) each of the precise claimed trade secrets, numbered, with a list of the specific elements for each, as claims would appear at the end of a patent.  Numerous courts have required exactly this detail in complex cases like this one.  *See, e.g.*, *Jobscience*, 2014 WL 852477, at *5; *Gatan*, 2018 WL 2117379, at *4.

### III.   PLAINTIFFS' POSITION

#### A.   Factual Background

Contrary to Apple's accusations, Plaintiffs have expeditiously sought to move this case forward and resolve disputes without burdening the Court.

##### 1.   Plaintiffs Addressed Judge Selna's Rulings On The Pleadings

Plaintiffs addressed all of Judge Selna's rulings on the pleadings.  Apple originally argued the complaint described the "types" of information at issue instead of specific trade secrets that Apple misappropriated. Ex. 3 at 2.  When the Court agreed, Plaintiffs amended the complaint to more clearly distinguish between (1) the types of trade secrets Plaintiffs "own" (paragraph 39) and (2) the specific trade secrets that Apple misappropriated (paragraphs 40-50). Ex. H ¶¶ 39-51.

Apple again moved to dismiss, this time arguing Plaintiffs included "catchall phrases." Ex. 25 at 1.  In its argument above, Apple states the Court dismissed the pleading because Plaintiffs "'specific trade secrets' *boiled down* to 'broad headings[s].'" Jt. Stip. at 7.  That is not true.  The Court did not criticize the description of any of Plaintiffs' *specific* trade secrets.  *See* Ex. L.  Instead, the Court found the "specific trade secrets" came "under the umbrella of ¶ 39, which the Court has already found insufficient, and ¶ 40, which states that Apple misappropriated '<u>at least</u>' the 'specific trade secrets.'" *Id.* at 5 (emphasis in original).  The Court found the *preambles* before each list of trade secrets were problematic because they used the word "including," which "suggests that the lists that follow each of these broad headings is not exhaustive." *Id.* at 6.  Judge Selna raised no issue with the lists of trade secrets that followed.

Plaintiffs addressed Judge Selna's ruling by (1) entirely eliminating paragraph 39, (2) amending prior paragraph 40 (now paragraph 39) to remove the phrase "at least," (3) removing the preamble and word "including" before each list of trade secrets, and (4) defining "Confidential Information" to make clear Apple misappropriated "[t]he aforementioned information in Paragraphs 40-45." Ex. I ¶¶ 39-46.  Plaintiffs similarly addressed these rulings in their initial Section 2019.210 disclosure.  *See* Ex. A.

## 2. Plaintiffs Did Not Improperly Delay Serving The Disclosure While Obtaining Discovery From Apple

Apple argues Plaintiffs improperly delayed providing a Section 2019.210 disclosure for months while taking "voluminous discovery of Apple's confidential information." Jt. Stip. at 8. Apple's suggestion that Plaintiffs are modifying their Disclosure in view of Apple's documents is not accurate. Apple identifies no connection between the Disclosure and Apple's documents or source code. Indeed, Plaintiffs first provided a detailed description of their trade secret in the SAC on July 24, 2020—before Plaintiffs accessed a single confidential Apple document.[4] Powell Decl. ¶ 2. While Plaintiffs have since made changes to address Apple's criticisms, there is no connection between those details and Apple's document productions.

Apple's assertion that Plaintiffs improperly delayed the Disclosure is also not accurate. The Scheduling Order never set a deadline for Plaintiffs to provide a Section 2019.210 disclosure. *See* Ex. N. Apple asked this Court to impose a deadline to serve a disclosure, but this Court *denied* Apple's motion. Ex. 5 at 8-9. Apple then objected to Judge Selna under Rule 72 and filed an *ex parte* application to stay this Court's ruling, but Judge Selna denied both requests. Ex. 6; Ex. 7. Apple also asked for a date certain during a hearing, which Judge Selna likewise denied. Ex. 8 at 12:10-13, 13:17-14:4, 14:11-15, 16:20-22. Apple then attempted to impose a unilateral "ethical wall" prohibiting counsel who have access to Apple's confidential information from drafting or revising Plaintiffs' Section 2019.210 statement. Ex. 9. Judge Selna again rejected Apple's arguments and ordered Apple to remove its unilateral wall. Ex. 4 at 1.

Apple then filed yet another motion asking this Court to impose a date certain. Ex. P. Plaintiffs explained they planned to serve a Section 2019.210 statement, but circumstances changed when Apple indicated it would move to dismiss the SAC by

---

[4] As discussed below, Apple had produced a handful of confidential documents earlier "subject to" its unilateral "ethical wall." Plaintiffs did not download those documents until after the Court rejected Apple's unilateral wall on July 29, 2020. Powell Decl. ¶ 2.

Gibson, Dunn & Crutcher LLP

arguing Plaintiffs had not adequately identified their trade secrets. *Id.* at 21.  Plaintiffs argued it was not efficient to litigate the sufficiency of Plaintiffs' disclosure in two motions to separate judges. *Id.* at 22.  This Court encouraged the parties to reach an agreement to resolve Apple's motion *and* a separate motion by Plaintiffs to enforce Judge Selna's order that Apple must produce its core technical documents.  Ex. 2 at 23:17-25:11, 29:15-20.  The parties did so and agreed to simultaneously exchange Apple's core technical documents and Plaintiffs' disclosure on October 9.

Apple claims Plaintiffs "surprised" Apple by not complying with the parties' agreement on October 9.  Jt. Stip. at 8.  The opposite is true.  On October 9, Plaintiffs provided a complete Section 2019.210 disclosure while Apple produced just 170 documents totaling 860 pages.  Powell Decl. ¶ 3.  Apple also relies on Plaintiffs' prior statement that the ***parties*** produced 150,000 pages as of September, but omits that ***Plaintiffs*** had produced more than 90,000 pages of those documents. *Id.* ¶ 4.

### 3. Plaintiffs Did Not Change Their Trade Secrets In Their Motion For Preliminary Injunction

Apple argues Plaintiffs' motion for preliminary injunction "claimed broad trade secrets" without specificity and that Plaintiffs "pivoted in their reply" after Apple "demonstrate[ed]" the secret was generally known.  Jt. Stip. at 8.  Apple cites nothing to support those assertions, and they are not true.  Later in its brief, Apple unhelpfully points to Plaintiffs' entire 25-page opening and reply briefs. *Id.* at 27 (citing Exs. U and V).  Plaintiffs and the Court should not have to guess at Apple's actual argument.  Any attempt by Apple to explain its argument in a supplemental memorandum when Plaintiffs have no chance to respond would be improper and prejudice Plaintiffs in the same way Apple claims to have been prejudiced.

Regardless, Apple's argument is incorrect.  Plaintiffs' opening brief provided extensive explanation on how their trade secrets work and how they were developed. *See* Ex U at 4-6; Ex. 10; Ex. 11.  Plaintiffs then explained how Apple misappropriated a specific trade secret corresponding to trade secret A.9 in the Disclosure. *Compare* Ex.

U at 7-11 *with* Ex. E at A.9.  Plaintiffs identified each element, showed that Plaintiffs had developed the element, and then showed where that element was found in Apple's patent publication.  Ex. U at 4-11.  Apple's opposition addressed that trade secret in detail and relied on a detailed declaration from its expert that claimed the trade secret was generally known.  Ex. 12 at 7-13.  In their reply, Plaintiffs explained that (1) Apple had improperly relied on a patent (the '305 Patent) as showing general knowledge even though it published *after* Apple's misappropriation and (2) Apple ignored aspects of Plaintiffs' trade secret that Plaintiffs identified in their opening brief.  Ex. V at 2-6.

Apple identifies nothing in the Court's ruling that relies on any purported change in Plaintiffs' trade secret definition.  Instead, the Court agreed with Plaintiffs that "the '305 Patent cannot be used as evidence that Plaintiffs' claimed trade secret was public when Apple filed its own application."  Ex. 1 at 6.  The Court also held: "Plaintiffs have defined their trade secret with sufficient particularity for Apple to provide more than twenty pages of detailed analysis about whether Plaintiffs' trade secret was in fact already public knowledge. The trade secret was also sufficiently described for the Court to discern with particularity what is in fact secret."  *Id.* at 10 (internal citations omitted).  The Court found Plaintiffs were likely to succeed in showing misappropriation.  *Id.*  The Court denied the motion on other grounds relating to irreparable harm.  *Id.* at 12.

### 4.   Plaintiffs' Did Not Delay Resolving The Current Dispute

Apple claims that, after Plaintiffs provided their Section 2019.210 disclosure on October 9, Plaintiffs "delayed another four weeks" before amending with superficial changes . . . ."  Jt. Stip. at 2, 8.  In reality, Apple did not even challenge Plaintiffs' disclosure until October 16, one week after Plaintiffs served their statement.  Ex. 14.  Apple's letter recited high-level arguments and lacked specific criticisms.  *Id.*  As shown below, Plaintiffs sought Apple's position before amending:

- October 26: Plaintiffs met and conferred with Apple.  Ex. 15.  Plaintiffs asked Apple to discuss each trade secret and why Apple contends it is unclear, but Apple refused.  *Id*. at 1.  Instead, Apple focused on phrases that Apple contended were

objectionable "catchall" phrases.  *Id*. at 2.  While Plaintiffs disagreed, Plaintiffs stated they may be willing to remove certain phrases, but wanted to ensure Apple had identified all such phrases.  *Id*.  Apple promised to let Plaintiffs know if it objected to any additional phrases.  *Id*.

- <u>October 28</u>: Plaintiffs wrote Apple in an attempt to obtain Apple's position.  Ex. 15.  Plaintiffs reminded Apple that Plaintiffs were waiting for Apple to identify any other phrases Apple considers objectionable.  *Id*. at 3.  Plaintiffs stated: "[a]fter we have Apple's position, we will endeavor to provide an amended disclosure in one week or less."  *Id*.

- <u>October 30</u>: Apple responded, but did not answer Plaintiffs' questions or identify any other objectionable phrases.  Ex. 16.  Instead, Apple accused Plaintiffs of "feign[ing] confusion" and engaging in "a bald-faced attempt to make tactical use of discovery."  *Id*. at 1-2.

- <u>November 6</u>: Plaintiffs provided their amended disclosure within seven days as promised.  Ex. E.  Plaintiffs addressed Apple's criticisms by: (1) making clear that Plaintiffs alleged Apple misappropriated each trade secret, (2) including a statement of how each trade secret differed from what is generally known, (3) removing the alleged "catch-all" language, and (4) making clear that Plaintiffs reserved the right to amend only "under relevant caselaw."  *Id*.

- <u>November 12</u>: Apple responded but again declined to criticize any particular trade secret or identify any publications allegedly showing any trade secret was generally known.  Ex. 17.  Apple accused Plaintiffs of "delay" and represented it would serve a joint stipulation by November 18.  *Id*.

- <u>November 18</u>: Apple did not serve a joint stipulation.

- <u>November 20</u>: Plaintiffs followed up on Apple's representation that it would serve a joint stipulation and Apple responded that it was waiting for Plaintiffs to respond to its November 12 letter.  Ex. 18.  Plaintiffs responded that Apple's November 12 letter did not invite or request a response.  *Id*.

- <u>December 1:</u> Plaintiffs again asked Apple why it had not provided the joint stipulation. Powell Decl. ¶ 22. Apple now represented it wanted first to move to dismiss because both Apple's motion to dismiss and Apple's current motion challenged Plaintiffs' trade secret disclosure. *Id.*

- <u>December 2:</u> Apple served its portion of the joint stipulation, which included many arguments it never raised during the parties' meet and confer.

Accordingly, Apple's accusations that Plaintiffs "delayed" are unwarranted. Indeed, Apple never explains why a delay would benefit Plaintiffs. Apple has been relying on its ever-changing criticisms of the Disclosure to withhold **all** trade secret discovery, while simultaneously demanding and receiving extensive discovery from Plaintiffs. Plaintiffs have no reason to delay and continue such one-sided discovery.[5] The Court should reject Apple's unsupported accusations.

### B.    Legal Standards

Section 2019.210 simply provides that "before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity." Cal. Civ. P. Code § 2019.210. The California Court of Appeal summarized the law as follows:

> "Reasonable particularity" mandated by section 2019.210 does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation. Nor does it require a discovery referee or trial court to conduct a miniature trial on the merits of a misappropriation claim before discovery may commence. Rather, it means that the plaintiff must make some showing that is reasonable, *i.e.*, fair, proper, just and rational [citation], under all of the circumstances to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits.

---

[5] Apple argues such one-sided discovery is permissible, but that is not what Judge Selna ordered. *See* Ex. N ("The Court stays the trade secret discovery only pending compliance with 2019.210"). However, rather than maintain that the stay applied to both sides, Plaintiffs agreed to provide trade secret discovery to move this case forward.

*Advanced Modular Sputtering v. Superior Court*, 132 Cal. App. 4th 826, 835-36 (2005) (reversing finding that description was inadequate).  The plaintiff is not required "to describe [the trade secret] with the greatest degree of particularity possible, or to reach such an exacting level of specificity that even its opponents are forced to agree the designation is adequate."  *Id.* at 836.  Section 2019.210 also "does not require in every case that a trade secret claimant explain how the alleged trade secret differs from the general knowledge of skilled persons in the field to which the secret relates.  *Brescia v. Angelin*, 172 Cal. App. 4th 133, 138 (2009) (reversing finding that description was inadequate).  Trade secret designations "should be liberally construed in favor of the trade secret claimant, and . . . doubts about its adequacy should be resolved in favor of permitting discovery to go forward."  *Id.* at 145.

The Ninth Circuit also recently held the plaintiff's "burden is only to identify ***at least one*** trade secret with sufficient particularity" before proceeding with discovery.  *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. Oct. 15, 2020).  In *InteliClear*, the court reversed a district court's decision to grant summary judgment before discovery because the plaintiff had described some—but not all—of its trade secrets with particularity.  *Id.* at 659.  The Ninth Circuit held:

> At this stage, particularly where no discovery whatsoever had occurred, it is not fatal to [plaintiff's] claim that its hedging language left open the possibility of expanding its identifications later. [Plaintiff's] burden is only to identify at least one trade secret with sufficient particularity to create a triable issue.

*Id.*  This makes sense because "discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification."  *Id.* at 662.

## C.   Plaintiffs' Disclosure Complies With Section 2019.210

Apple's portion of the joint stipulation begins with high-level criticisms not directed to specific trade secrets.  Jt. Stip. at 11-17.  Because the issue before this Court

1   is the sufficiency of Plaintiffs' specific descriptions, Plaintiffs begin with that issue.

2   Plaintiffs address Apple's high-level criticisms below in Section III.D.

3   **1.    Plaintiffs Described Their Trade Secrets In Sufficient Detail**

4       Apple's criticisms of Plaintiffs' specific trade secrets are presented in only a

5   handful of superficial bullet points.[6]  Jt. Stip. at 17-22.  Apple ignores many trade secrets

6   and quotes only snippets of others out of context.  This motion should be based on

7   Plaintiffs' actual Disclosure, not one re-written by Apple.  As demonstrated below,

8   Plaintiffs described their trade secrets in more than sufficient detail.

9       **a)**    ████████████████

10      Apple does not even address ████████████████ ("████") trade

11  secrets A.1, A.3-A.5, and A.9.  Plaintiffs described those trade secrets in great detail.

12  For example, below is the text of ████ trade secret A.9:



17

18  _____

19  [6] Apple confusingly addresses Plaintiffs' trade secrets out of order and in combination
    with other unrelated trade secrets.  For the Court's convenience, below is a chart

20  correlating Apple's arguments to Plaintiffs' trade secrets and arguments.

| Apple Bullet Point | Trade Secret / Plaintiffs' Argument |
|---|---|
| 1 (Jt. Stip. at 17:14-18:7) | A.7; C.1 (Jt. Stip. at 41:1-42:2, 45:21-46:15) |
| 2 (Jt. Stip. at 18:8-19:4) | A.8 (Jt. Stip. at 42:3-43:4) |
| 3 (Jt. Stip. at 19:5-20) | F.1 (Jt. Stip. at 50:5-26) |
| 4 (Jt. Stip. at 19:21-20:5) | B.3 (Jt. Stip. at 43:25-44:28) |
| 5 (Jt. Stip. at 20:6-19) | F.3 (Jt. Stip. at 51:4-17) |
| 6 (Jt. Stip. at 21:10-17) | D.2, D.3, D.5 (Jt. Stip. at 48:2-9) |
| 7 (Jt. Stip. at 21:18-22) | D.1 (Jt. Stip. at 47:7-48:9) |
| 8 (Jt. Stip. at 21:23-27) | A.2, D.6 (Jt. Stip. at 39:12-40:9, 48:10-20) |
| 9 (Jt. Stip. at 21:8-22:7) | E.2, E.5 (Jt. Stip. at 48:22-49:21) |



Ex. E at A.9.

That description is far more detailed than other technical descriptions courts have found sufficient.  *See, e.g.*, *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1453 (2002) (concluding the following descriptions were sufficient: "Finishing processes for new and existing Schlage products" and "Composite material process technologies (i.e., the unique composite materials used by Schlage in its products and the processes applied to those composite materials").[7]  District courts often use the disclosure in *Whyte* as a guidepost to determine compliance with Section 2019.210.  For example, *Memry Corp. v. Kentucky Oil. Tech.*, 2005 WL 8162542, at *3-4 (N.D. Cal. Aug. 17, 2005), compared the disclosure to *Whyte* and concluded the following description was sufficient: "Know-how relating to manufacturability issues, including analysis of stress concentration/cracking arising from cell geometry and/or deposition of remelted metal on adjacent tube areas during laser cutting."  *Id.*; *see also Excelligence Learning Corp.*

_____

[7] The court in *Whyte* cited to *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244 (1968), as setting forth the "sufficient particularity" standard.  101 Cal. App. 4th at 1452.  The California Court of Appeal later explained that Section 2019.210 was "intended to codify" the *Diodes* standard.  *Brescia*, 172 Cal. App. 4th at 144.

*v. Oriental Trading Co.*, 2004 WL 2452834, at *3-4 (N.D. Cal. June 14, 2004) (citing *Whyte* and concluding disclosure was sufficient).  Plaintiffs trade secret is described in far more detail than the trade secrets described in *Whyte*.

Indeed, Judge Selna addressed ███ trade secret A.9 ***on the merits*** and determined Plaintiffs are likely to prove "the existence of the trade secret" and "Apple misappropriated Plaintiffs' trade secrets."  Ex. 1 at 7-9.  The Court found "Plaintiffs have defined their trade secret with sufficient particularity for Apple to provide more than twenty pages of detailed analysis" and for "the Court to discern with particularity what is in fact secret."  *Id.* at 10.  Accordingly, Plaintiffs described at least one trade secret with particularity, which is all the Ninth Circuit requires to begin discovery.  *See InteliClear*, 978 F.3d at 659.[8]

As for the trade secrets Apple does address, none of Apple's criticisms has merit.  Apple first challenges ███ trade secret A.2 by rewriting it.  Apple quotes a ***portion*** of it and combines it with an entirely ***separate*** ██████████ trade secret recited elsewhere in Plaintiffs' Disclosure.  *See* Jt. Stip. at 21 (quoting Ex. E at 1 and 9).  Apple then claims the Disclosure does not explain ██████████████.  Jt. Stip. at 21.  But Apple ***omits*** the portion answering Apple's question:

> 2.  ██████████████████████
> ██████████████████████
> ██████████████████████

Ex. E at A.2. (emphasis showing Apple's omission).  Apple cannot rewrite Plaintiffs' trade secrets and quote portions out of context to unfairly criticize them.  Indeed, Apple well understands Plaintiffs' reference to "████████" because Apple and its expert extensively discussed ██████████ in Apple's opposition to Plaintiffs' preliminary injunction motion.  Ex. 12 at 3-4, 11-12.

---

[8] Apple argues the Court already held that "alleging one trade secret" is not sufficient. Jt. Stip. at 8 (citing Ex. L at 7).  However, the Court's order cited by Apple was issued ***before*** the Ninth Circuit clarified the law in *InteliClear*, 978 F.3d at 659.

1    Moreover, a defendant cannot demand more specificity merely by identifying

2    information the trade secret description does not include.  Rather, the defendant must

3    show "*why* the level of specificity" in the Disclosure is insufficient by showing the

4    Disclosure "hinders [it] from either crafting a defense" or "hinder[s] the court from

5    crafting discovery parameters."  *See Proofpoint, Inc. v. Vade Secure, Inc.*, 2020 WL

6    1911195, at *7 (N.D. Cal. Apr. 20, 2020) (emphasis in original); *see also Genentech,*

7    *Inc. v. JHL Biotech, Inc.*, 2019 WL 1045911, at *18 (N.D. Cal. Mar. 5, 2019) (defendant

8    "does not sufficiently show *how* that hinders it from crafting a defense or the Court from

9    crafting discovery").  Apple does not attempt to meet those requirements.

10    As for ████ trade secret A.6, Apple quotes a single word ("████████") out of

11    context and argues Plaintiffs failed to explain ████████████████████.

12    Again, the full trade secret addresses that very question:



13    6.

17    Ex. E at A.6 (emphasis showing Apple's omission).  Apple again fails to explain why

18    additional detail is necessary for it to defend itself.  *See Proofpoint*, 2020 WL 1911195,

19    at *7.  Apple appears to be arguing that Plaintiffs can have only narrow trade secrets

20    directed toward specific granular information.  But that is contrary to law.  Trade secrets

21    "fall into a continuum" from "something as high level as a general idea," to "mid-level

22    concepts for developing and implementing the general idea," to "granular information

23    such as source code and algorithms."  *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2017 WL

24    2224838, at *2 (N.D. Cal. May 22, 2017).  High-level secrets that can be implemented

25    in different ways need not be limited to "how" they are implemented.  *Intermedics, Inc.*

26    *v. Ventritex, Inc.*, 804 F. Supp. 35, 38 (N.D. Cal. 1992).  Apple may argue Plaintiffs'

27    secrets are not protectable on the merits at trial, but that does not mean the Disclosure is

28    inadequate to begin discovery.

For ███ trade secret A.7, Apple quotes a portion ("██████████████") and argues Plaintiffs' patents disclose that portion.  Jt. Stip. at 17.  Apple does not explain how those patents disclose each and every element.  *Id.*; *see Altavion,* 226 Cal. App. 4th at 47 (secret protectable "even if some or all of the elements" were "in the public domain").  Moreover, Apple's own cited authority explains that Section 2019.210 "does not create a procedural device to litigate the ultimate merits of the case—that is, to determine as a matter of law on the basis of evidence presented whether the trade secret actually exists."  *Perlan*, 178 Cal. App. 4th at 1351.  That is "true even if there is ***undeniable evidence*** that the plaintiffs' purported trade secret is actually public knowledge."  *Id.*

Apple argues Plaintiffs failed to "explain how" the "█████████████████" process differs from "the basic comparison that any researcher or engineer would do to discover the optimal setting for a certain product or process."  Jt. Stip. at 17.  Once again, Apple omits the answer to its question in the trade secret as defined by Plaintiffs:

7.


Ex. E at A.7 (emphasis showing Apple's omission).  Apple cites *Agency Solutions*, 819 F. Supp. 2d at 1017, but other courts in this District have distinguished that case where, like here, the disclosure at issues goes "beyond general knowledge."  *Volume Distributors, Inc. v. Khodadad*, 2017 WL 10562964, at *3 (C.D. Cal. Nov. 14, 2017) (explaining that "[e]ven easily discoverable ideas are protectable as trade secrets").

Apple also argues that ███ trade secret A.7 does not explain █████████ ████████████████████ Jt. Stip. at 18.  Again, Plaintiffs' trade secrets need not be limited to precisely "how" Plaintiffs have implemented them.  *See BladeRoom*, 2017 WL 2224838, at *2; *Intermedics*, 804 F. Supp. at 38.  Apple cites *Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*, 2016 WL 5719819, at *11 (S.D. Cal. Sept. 30, 2016), but that case merely held that "emphasizing" volatility in an

1  investment strategy trade secret was unclear.  The disclosure in *Freeman* was nothing
2  like Plaintiffs' Disclosure here.
3          Apple next argues ███ trade secret A.8 describes "████████████████
4  ████████████████████████████████████████████████"  Jt. Stip. at 18.  That is another
5  improper argument on the merits.  Apple also provides no factual support for that
6  assertion and instead cites a single 1952 case relating to the "procedure for estimating
7  the price of a new contract."  *See Aetna Bldg. Maint. Co. v. West*, 39 Cal. 2d 198, 206
8  (1952).  *Aetna* says nothing about describing technical trade secrets and addressed a final
9  judgment on the merits—not a pre-discovery trade secret disclosure.  *Id*.  A trade secret
10  can include "factors" to consider and the "process" used to create algorithms.  *WeRide*
11  *Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 846-47 (N.D. Cal. Apr. 1, 2019).  ████
12  ████████████████████████████████████████████████████████████████████████████
13  ████████████████████████████████████████████████████:
14
15
16
17
18
19
20
21
22  ████████████████████████████████████████████████████████████████████████████
23  ████████████████████████████████████              ██████████████████████████████
24  ████████████████████████████████████████████████████
25          Apple complains the Disclosure does not explain "how" Plaintiffs "████████
26  ████████████████████████████."  Jt. Stip. at 18.  But nothing required Plaintiffs to narrow
27  their trade secrets to the specific way of "how" Plaintiffs practice a given trade secret.
28  *See BladeRoom*, 2017 WL 2224838, at *2; *See Intermedics*, 804 F. Supp. at 38.  Apple

cites *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 176261, at *4 (N.D. Cal. Jan. 10, 2019), but the disclosure there was nothing like this case. *See id.* (criticizing generic descriptions like "manufacturing techniques and road map to improvement" and "manufacturing sequences, and methods").

Apple's sole argument as to ███ trade secrets A.10-A.15 is ████████ ███

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████   ████████████████████████████████████████████████████

Further, as discussed in Section III.D.1, *infra*, nothing supports Apple's argument that trade secret claims cannot be defined such that they can be practiced in combination with other elements.

**b)** ████████████████████████

Apple ignores Plaintiffs' ████████████████████████████ ("███")

trade secrets B.1, B.2, B.4, and B.5, all of which are described in great detail.  For example, below is the text of trade secret B.1:

1. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

Ex. E at B.1.

Apple addresses only ████ trade secret B.3.  Jt. Stip. at 19-20.  Apple argues Plaintiffs claim as a trade secret: ████████████████████████

████████████████  *Id.*  Apple then cites its expert as opining that Plaintiffs have not distinguished such a trade secret "from published patents."  *Id.* at 19.  But again Apple

is prematurely trying to litigate the case on the merits.  Moreover, such a distinction is not required even on the merits.  *See* Cal. Civ. Code § 3426.1(d)(1) (requiring that a trade secret derive independent economic value "from not being ***generally known*** to the public or to other persons who can obtain economic value from its disclosure or use").  Additionally, Apple once again omits detail from ███ trade secret B.3.  Apple plucks that phrase from a detailed description of a specific configuration:

     3. ████████████████████████████████████████
████████████████████████████████████████████
███████

Ex. E at B.3 (emphasis showing Apple's omissions).  Apple fails to show any deficiency in Plaintiffs' ***actual*** trade secret.

     Apple argues that *Gabriel Techs. Corp. v. Qualcomm, Inc.*, 2011 WL 6152240, at *5 (S.D. Cal. Dec. 12, 2011), held a "'procedural approach or framework can constitute a trade secret' ***only if*** it is described in sufficient detail that 'the description could [be] handed to a group of engineers and programmers who would . . . know[] what to build.'" Jt. Stip. at 19-20.  As discussed above, ████████████████████████████
████████████████████████████████████████████████
███████████████  Moreover, Apple rewrites the holding in *Gabriel Techs.* by inserting the phrase "only if."  *See id.*  The court in *Gabriel Techs* found the description would have been sufficient if "all that was left was for engineers to create the mechanical parts," but did ***not*** hold that was a requirement for describing a "procedural approach or framework."  2011 WL 6152240, at *5.

    Apple also cites *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998), but *InteliClear* distinguished *Imax* as applying to summary judgment after discovery.  978 F.3d at 663.  Moreover, in *Imax* the plaintiff admitted its trade secret was limited to "precise dimensions and tolerances" but failed to identify those dimensions and tolerances.  *Id.*  Plaintiffs do not agree their ***actual*** trade secrets must be limited to the particular "how," "which," and "what" demanded by Apple.

c) ███████████

Apple fails to substantively address ███████████ ("███") trade secrets C.2-5, which are described in great detail.  For example, below is the text of ███ trade secret C4.



Ex. E at C.4.  Apple's only argument with respect to this trade secret, along with ███ trade secret C.5, is that they are a █████████████████████████████████████████████████████████████████████████████████████████████████████████████ ███.

. Further, as discussed in Section III.D.1, *infra*, nothing supports Apple's argument that trade secret claims cannot be defined such that they can be practiced in combination with other elements.

As for ███ trade secret C.1, Apple plucks two phrases ████████████ █████████████ out of context and argues such phrases have been publicly disclosed.  Jt. Stip. at 17.  But Apple simply omits the extensive detail in this secret:

Ex. E at C.1 (emphasis showing Apple's omissions). Apple has not shown any deficiency in Plaintiffs' trade secret as written.  Moreover, Apple ignores Plaintiffs' contention as to how their trade secrets differ from that which is generally known in the field, which also answers the very question raised by Apple:



*Id.* at 8.  Apple cites *Freeman*, 2016 WL 5719819, at *11, but that case is distinguishable for the reasons discussed above.  The law does not require Plaintiffs to narrow their trade secrets to specifically "how" Plaintiffs implement each trade secret.  *See BladeRoom*, 2017 WL 2224838, *2; *Intermedics*, 804 F. Supp. at 38.

### d)   Plaintiffs' █████████████████

Apple next argues Plaintiffs' description of their ██████████████████ ████████████████ trade secrets is "less specific" than Plaintiffs' technical trade secrets. Jt. Stip. at 21.  Even if that were true, it is not surprising.  As one district court explained, "[p]ricing and marketing strategy, by contrast, are less technical, and their description ***does not demand the same level of specificity*** that applies to technical matters."  Ex. 19 (*AlterG, Inc. v. Boost Treadmills LLC*, Dkt. 41 (N.D. Cal. Sept. 5, 2019)) at 11.

Courts routinely permit descriptions of business and marketing information that are far less detailed than Plaintiffs' Disclosure.  For example, the California Court of Appeal held the following descriptions were sufficient: "Pricing concessions made by Schlage to its customers," "Promotional discounts made by Schlage to its customers," "Schlage's market research data," "Advertising strategy plans for calendar year 2000,"

and "Schlage's 1, 3 and 5 year strategic plan documents." *Whyte*, 101 Cal. App. 4th at 1453.  As discussed, district courts routinely use *Whyte* as a guidepost to determine compliance with Section 2019.210.  *See, e.g.*, *Memry*, 2005 WL 8162542, at *3-4; *Excelligence*, 2004 WL 2452834, at *3-4 (citing *Whyte* and concluding disclosure was sufficient even though the "vast majority" of the disclosure appeared to reflect publicly available information).

Plaintiffs' Disclosure provides far more detail than the description in *Whyte*. Apple quotes a portion of ▮▮▮ trade secret D.1 and argues ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Jt. Stip. at 21.  Once again, Apple omits the very detail it purports to seek:



Ex. E at D.1 (emphasis showing Apple's omissions).  Apple also ignores Plaintiffs' explanation as to how their trade secrets differ from that which is generally known in the field, which also answers the question raised by Apple:



*Id.* at 10.

Apple disparages ███ trade secrets D.2, D.3, and D.5 as "the basic job of any medical professional." Jt. Stip. at 21. That is again an argument on the merits for the jury. As the California Court of Appeal explained, Section 2019.210 "is not a gatekeeping device for probable cause or the tenability of claims." *Truong v. Philhower*, 2020 WL 3481427, *10 (Cal. Ct. App. June 26, 2020). Apple also fails to acknowledge that all of these trade secrets are dependent on, and include all of the elements of, ███ trade secret D.1 quoted above. Yet, again, nowhere does Apple show Plaintiffs' ***actual*** descriptions are insufficient.

Apple next complains that Plaintiffs fail to describe what "██████" means in ███ trade secret D.6. Again, Apple simply omits the very detail it purports to seek:



Ex. E at D.6 (emphasis showing Apple's omission). Apple cites *N. Am. Lubricants Co. v. Terry*, 2011 WL 5828232, at *6 (E.D. Cal. Nov. 18, 2011), but that case addressed a "boilerplate list, including [plaintiff's] 'customer lists, business plans, formula's [sic], patterns, compilations, programs, devices, methods, techniques or processes and other information that derived independent economic value . . .." That generic list is nothing like Plaintiffs' detailed Disclosure quoted above.

        e)    **Plaintiffs'** ██████████████

Apple ignores Plaintiffs' █████████████████ ("███") trade secrets E.1, E.3, and E.6-E.7, all of which are described in great detail. Apple argues Plaintiffs' ███ trade secrets "boil down" to "██████████████████████████████████████████████████████████████████████████████████████████████████████. Jt. Stip. at 21-22. Apple does not explain it is quoting from ***three separate*** trade secrets, while again omitting extensive details of those secrets:



Ex. E at E.2, E.4, and E.5 (emphasis showing Apple's omissions).    Plaintiffs'
descriptions are once again far more detailed than the description in *Whyte*.  *See Whyte*,
101 Cal. App. 4th at 1453 ("marketing concessions made by Schlage to its customers,"
"[a]dvertising strategy plans for calendar year 2000," and "Schlage's 1, 3 and 5 year
strategic plan documents").  Apple cites *Freeman*, 2016 WL 5719819, at *11, for the
proposition that saying "emphasizes" is "devoid of substance."  But that case dealt with
very different trade secrets and never suggested the word "emphasizes" alone renders a
disclosure inadequate.

**f)** ████████████████████████

Apple ignores ████████████ ("███") trade secrets F.2, which is described in
great detail.  Below is the text of ███ trade secret F.2 and the trade secret on which F.2
depends:

1. █████████████████████████

Gibson, Dunn &
Crutcher LLP

Joint Stip. Re Apple's Mot. to Compel       49       Case No. 8:20-cv-00048-JVS (JDEx)

2. ███████████████████████████

███████████████████████████████

███████████████████████████████

██████████

Ex. E at F.1 and F.2.  Apple argues ██ trade secret F.1 outlines ████████████

██████████████████████████████ Jt. Stip. at 19.  But ██ trade

secret F.1 specifically refers to ████████████████████████████

█████████████████████████.  Apple also argues ██ trade secret F.1

above does not provide "details" on the "█████████████."  Jt. Stip. at 19.  But Apple's

expert, Dr. Polson, never opines that he is unable to understand this term.   As Dr.

Madisetti explains, ████████████████████ is a well-known term of art that means

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████  Madisetti Decl. ¶ 155.

Apple also complains that Plaintiffs have not identified a specific "algorithm" or

the precise type of ████████████████ used in this trade secret.  But trade secrets can

include "high level" ideas and need not be described as granular "algorithms."

*BladeRoom*, 2017 WL 2224838, *2.   Here, Plaintiffs' trade secret is not a specific

algorithm or ████████████████████████████████████████

████████████████████████████████████████

███████████████████████ ██ trade secret F.3, which

Apple ignores, is directed towards "████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████."  Ex. E at F.3.

Apple also cites *Space Data Corp. v. Alphabet Inc.*, 2018 WL 10647160, at *2

(N.D. Cal. May 8, 2018), but Apple's own quotation states that "Space Data is claiming

as its trade secret 'an algorithm,' but it has not identified what the algorithm is."  As

discussed, Plaintiffs are not claiming a specific algorithm.  Apple also cites *IMAX Corp.*,

152 F.3d at 1167, but that summary judgment case is inapposite as discussed above.

Apple's only critique of ██ trade secret F.3 is that it uses the word "knowledge."[9]

Jt. Stip. at 20.  Apple argues that ██ trade secret F.3 makes a "vague assertion[] of

knowledge" and is "not tethered to a specific technology."  *Id.*  But Apple again omits

the detail that "tethered" the Plaintiffs' knowledge to a "specific technology:"

3.   ██████  ████ ██ ████  █████ ████  ███ ████  ██ █████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████████

Ex. E at F.3 (emphasis showing Apple's omission).  Thus, Plaintiffs do not identify

vague "knowledge" in a vacuum.  The descriptions in Apple's cited authority are nothing

like this trade secret.  *See AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133,

1145 (N.D. Cal. 2019) ("positive and negative learnings of low cost mechanical

unweighted systems"); *Calendar Research LLC v. StubHub, Inc.*, 2020 WL 4390391, at

*6 (C.D. Cal. May 13, 2020) ("Methods/techniques/know-how for measuring, testing,

and validating usage and virality").

## 2.   *I-Flow* Demonstrates Plaintiffs' Disclosure Is Sufficient

Apple relies extensively on *I-Flow Corp. v. Apex Medical Technologies, Inc.*,

2008 WL 11342257, at *3 (S.D. Cal. Feb. 15, 2008) ("*I-Flow I*").  Jt. Stip. at 22-23.

Apple plucks phrases from Plaintiffs' trade secrets and argues that those are "similar to

those rejected" in *I-Flow I*.  Jt. Stip. at 22-23.  But Apple omits that a later decision in

that case approved of a description *far less detailed* than Plaintiffs' description in this

---

[9] Apple argues another trade secret uses the word "knowledge" (Jt. Stip. at 20), but
actually points to Plaintiffs description of how a trade secret differ from information that
is generally known.  Ex. E at 7 ("████████████████████████████████████████
██████████████████████████████████████████████████████
█████████████████████████.").

case.  *See I-Flow Corp. v. Apex Med. Techs., Inc.*, 2008 WL 2233962, at *5 (S.D. Cal. May 23, 2008) ("*I-Flow II*"); *see also* Exhibit 20 (I-Flow's amended 2019.210 statement approved of in the *I-Flow II* decision).  Apple also omits that many of the phrases that it claims *I-Flow I* "rejected" were actually ***present*** in the revised disclosure that the court approved of in *I-Flow II*.  *See, e.g.*, Ex. 20 at #1 ("the results of the modulus curve testing"), #5 ("acceptable burst rates"), #6 ("optimal dip molding process" and "[p]rocess modifications aimed at reducing drying time and equipment wait time"), #9 ("marketing of safe elastomeric infusion pump bladders"), #10 ("sales infrastructure specifically designed to market pain management systems"), #11 ("distribution channels for the marketing of pain management systems").  Thus, even if Apple's comparisons between the Disclosure and *I-Flow I* were valid, such comparisons would actually show Plaintiffs' Disclosure is sufficient.

Apple also incorrectly implies that *I-Flow I* required the plaintiff to affirmatively distinguish all of its trade secrets from matters that were generally known in the field.  Jt. Stip. at 23.  To the contrary, the court in *I-Flow II* approved of a disclosure that merely included the plaintiff's ***contention*** as to how its trade secrets differed from that which is generally known.  *See, e.g.*, Ex. 20 at #1 ("I-Flow's requirements for modulus values are not generally known by those skilled in the trade"), #2 ("while certain individual acceptable tensile strength values may be known to those skilled in the trade, I-Flow's compiled range of acceptable tensile strength values are not generally known to those skilled in the trade").

Here, Plaintiffs provided contentions similar to those the court found acceptable in *I-Flow II*.  *See, e.g.*, Ex. E at 1 ("Plaintiffs contend that each trade secret identified below is not generally known"), 5 ("█████████████████████████████████████████ ████████████████████████████████████████████ ████████").  Indeed, for many trade secrets, Plaintiffs went far beyond the statements found to be sufficient in *I-Flow II*.  For example, Plaintiffs' Disclosure explains:



* * *

Ex. E at 7, 10.  Accordingly, far from supporting Apple's position, the *I-Flow* decisions further demonstrate Plaintiffs' Disclosure is sufficient.

### 3.    Expert Testimony Confirms The Disclosure Is Sufficient

Apple also included a 100-page declaration from its expert, Dr. Polson, purportedly opining that certain aspects of Plaintiffs' trade secrets are known.  *See* Polson Decl.  As a preliminary matter, Apple prepared a similar declaration in opposition to Plaintiffs' Motion for Preliminary Injunction and Judge Selna found Apple's ability to provide "detailed analysis about whether Plaintiffs' trade secret was in fact already public knowledge" proves "Plaintiffs have defined their trade secret with sufficient particularity."  Ex. 1 at 10; *see also Prolifiq Software Inc. v. Veeva Sys. Inc.*, 2014 WL 2527148, at *3 (N.D. Cal. June 4, 2014).  The same is true here.

Regardless, Apple's portion of the joint stipulation cites the Polson Declaration only sporadically and never ***explains*** Dr. Polson's opinions.  Because Apple fails to explain the relevance of the Polson Declaration, this Court should decline to consider it. *See U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting

for truffles buried in briefs."). The Polson Declaration is also an improper challenge to the ***merits*** of Plaintiffs' case—not the specificity of Plaintiffs' Disclosure. As the Court of Appeal explained, Section 2019.210 "does not create a procedural device to litigate the ultimate merits of the case—that is, to determine as a matter of law on the basis of evidence presented whether the trade secret actually exists." *Brescia*, 172 Cal. App. 4th at 149; *see also Advanced Modular*, 132 Cal. App. 4th at 835-36 (Section 2019.210 does not "require a discovery referee or trial court to conduct a miniature trial on the merits of a misappropriation claim before discovery may commence"). District courts in California reject similar attempts to litigate the merits through a Section 2019.210 statement. *See, e.g.*, *Excelligence*, 2004 WL 2452834, at *4 (rejecting challenge that "addresses the merits of [plaintiff's] claim rather than its responsibilities under the applicable discovery rules"); *Prolifiq*, 2014 WL 2527148, at *3 (rejecting challenge that "go not to whether [plaintiff] has sufficiently identified what it considers to be its trade secrets, but to the merits of whether that information constitutes trade secrets").

Nevertheless, Plaintiffs' expert, Dr. Vijay Madisetti, responds to Dr. Polson's opinions. *See* Madisetti Decl. Dr. Madisetti has a Ph.D. in Electrical and Computer Engineering and has been a professor at Georgia Tech for more than three decades. *Id.* ¶ 6. Dr. Madisetti reviewed the Disclosure in full and concluded that the Disclosure "is understandable, allows me to understand what Plaintiffs identify as their trade secrets, allows me to understand the differences between the alleged trade secrets and information known to persons in the field, and would allow skilled person in the industry to search to determine whether the alleged trade secret differs from information that is generally known." *Id.* ¶ 26. Dr. Madisetti reviewed each of Dr. Polson's criticisms and concluded that none of them change his opinion. *Id.* ¶¶ 36-162. If anything, Dr. Polson's criticisms indicate that he, like Dr. Madisetti, appears to understand the Disclosure. *Id.* ¶ 28.

While not the relevant standard under section 2019.210, Dr. Madisetti addressed Dr. Polson's opinions attempting to show various publications disclose elements of each

trade secret. *Id.* ¶¶ 36-162. Dr. Madisetti opined that Dr. Polson's opinions have several flaws, including that he relies on documents that published *after* Apple's alleged misappropriation. *Id.* ¶ 30. Dr. Polson even relies on the same '305 Patent that Judge Selna found "cannot be used as evidence that Plaintiffs' claimed trade secret was public when Apple filed its own application." Ex. 1 at 6. Dr. Madisetti also explained that most of Dr. Polson's opinions cobble together multiple publications, which at most would show merely that one *could* discover the trade secret—not that it is actually generally known. *Id.* ¶¶ 31-32. Dr. Madisetti opined on each alleged trade secret addressed by Dr. Polson and concluded that he is not aware of any alleged trade secret being generally known. *Id.* ¶ 36-162. Dr. Madisetti's testimony confirms the Disclosure sufficiently describes Plaintiffs' trade secrets.

Indeed, the disagreement between Dr. Polson and Dr. Madisetti counsels in favor of finding the Disclosure sufficient. Where experts disagree as to whether trade secrets are sufficiently described, "it is appropriate to recognize the existence of this credible dispute, but not necessarily to resolve it." *Advanced Modular*, 132 Cal. App. 4th at 836. "Where, as here, credible experts declare that they are capable of understanding the designation and of distinguishing the alleged trade secrets from information already known to persons in the field, the designation should, as a general rule, be considered adequate to permit discovery to commence." *Id.* Where one expert is "capable of understanding Plaintiff's trade secret identifications," courts "follow[] the general rule" and conclude the disclosure "satisfies the reasonable particularity requirement of Section 2019.210." *See Phoenix Techs., Ltd. V. DeviceVM, Inc.*, 2010 WL 8590525, at *5 (N.D. Cal. Mar. 17, 2010); *see also M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*, 2011 WL 92734, at *2 (N.D. Cal. Jan. 10, 2011) ("The parties apparently dispute whether plaintiffs legitimately may claim trade secret status for the synthesis of any public information in those documents. But that is a matter that remains to be seen and is not, at any rate, an issue for this court to decide in connection with the instant motion.").

### D.   Apple's Other Arguments Lack Merit

Apple also raises high-level arguments not directed to specific trade secrets (Jt. Stip. at 11-16), argues that Plaintiffs have to provide misappropriation contentions (*id.* at 24-26), and argues that it has been prejudiced (*id.* at 26-29).   As discussed below, each of Apple's additional argument lacks merit.

#### 1.   Plaintiffs' Disclosure Is Not Vague Or "Non-Exhaustive"

Apple argues Plaintiffs provided "non-exhaustive lists" that failed to address Judge Selna's prior ruling.   Jt. Stip. at 11.   Apple argues Judge Selna held "the 'specific trade secrets' included in this list were '[not] defined clearly enough to stand on their own.'"   *Id.*   But Apple omits Judge Selna's explanation that "[e]ach of the categories of technical trade secrets uses the word 'including' after a broad heading," which "suggests that the lists that follow each of these broad headings is not exhaustive either."   Ex. L at 6.   Nowhere did Judge Selna criticize any of the specific trade secrets listed after the word "including."   Instead, as discussed above, he disapproved of the inclusion of paragraph 39, the use of the word "at least" in paragraph 40, and the word "including" in the preamble of each category of trade secrets.   *Id.* at 5-6.   Plaintiffs' Disclosure fully addressed those rulings.   *See* Ex. E.   Apple ignores Plaintiffs' revisions and raises three new arguments.

***First***, Apple argues Plaintiffs did not "cure the problem" identified by Judge Selna because they "inserted" the phrase "value, importance, and appropriateness" at the end of each list of trade secrets.   Jt. Stip. at 11-12.   But the SAC included similar language ("value and importance") and Apple did ***not*** argue it rendered the description unclear.   Ex. 25 at 5-9.[10]   Moreover, those words in no way run afoul of Judge Selna's ruling.   Nor are they a "catchall" as Apple argues.   Plaintiffs identify the "value, importance, and

---

[10] Because the SAC included similar language, Apple should have raised this issue in its challenge to the SAC instead of raising improper "piecemeal" motions adding new issues that could have been included in prior motions.   *See ISE Entm't*, 2018 WL 5298692, at *4 (C.D. Cal. Apr. 16, 2018); *Ellis v. Worldwide Capital Holdings, Inc.*, 2015 WL 12697722, at *2 (C.D. Cal. Mar. 24, 2015).

Gibson, Dunn &
Crutcher LLP

appropriateness" of **specifically** numbered trade secrets.  *See, e.g.*, Ex. I ¶ 40 ("The value, importance, and appropriateness of 1-15 above to ███████████ ██████████████████████████").  Such knowledge is protectable. *See Head Ski Co. v. Kam Ski Co.*, 158 F. Supp. 919, 923 (D. Md. 1958) ("knowledge of the particular process, method or material which is most appropriate to achieve the desired result may itself be a trade secret"); *O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*, 420 F. Supp. 2d 1070, 1089 (N.D. Cal. 2006) (knowledge of the "optimal" configuration of known elements was a trade secret).  As the Sixth Circuit explained: "Facts of great value may, like the lost purse upon the highway, lie long unnoticed upon the public commons.  Hundreds pass them by, till one more observant than the rest makes discovery." *A.O. Smith Corp. v. Petroleum Iron Works Co. of Ohio*, 73 F.2d 531, 539 (6th Cir. 1934) (affirming trade secret finding).

None of Apple's cases addressed the phrase "value, importance, and appropriateness" or suggest such a phrase renders a trade secret disclosure unclear. Apple relies on *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002), but in that case the plaintiff provided a general description of the plaintiff's technology instead of an identification of the trade secrets at issue.  The court found the general description insufficient because it did not identify what portion of the technology was a trade secret.  *Id.*  The general description in that case bears no resemblance to Plaintiffs' Disclosure.  Apple cites two other cases, but those cases merely held that a trade secret identification should identify all trade secrets at issue.  *See Gatan, Inc. v. Nion Co.*, 2018 WL 2117379, at *3 (N.D. Cal. May 8, 2018); *Optumsoft, Inc. v. Arista Networks, Inc.*, 2015 Cal. Super. LEXIS 1726 (Cal. Super. Ct. Feb. 20, 2015).  Plaintiffs' Disclosure does that by identifying the "value, importance, and appropriateness" of specifically numbered trade secrets.

**Second**, Apple acknowledges Plaintiffs removed the word "including," but argues "equally broad catch-all phrases such as 'at least' now appear in other places."  Jt. Stip. at 12.  In doing so, Apple ignores a critical distinction in how the word "including" was

used in the SAC versus how the words "at least" are used in the Disclosure.  Judge Selna held the word "including" before lists of trade secrets "suggested that the lists that follow each of these broad headings is not exhaustive either."  Ex. L at 6.  The Disclosure's use of the phrase "at least" is very different.   The Disclosure uses the phrase ***within*** the definition of particular trade secrets to describe the use of at least one of a ***closed*** list of items.  For example, one trade secret requires "████████████████████████ ███████████████████████████████████████████████████."  Ex. E at C.1.  Plaintiffs also use "at least" to require the use of at least a certain number of a particular component.  *See* Ex. E at A.5 ████████████████  The SAC included the same language, which neither Apple nor the Court criticized.  *Compare id. with* Ex. H ¶ 41.   Such language is also common in trade secret descriptions.  *See Intermedics*, 804 F. Supp. at 38 (trade secret required "***at least one*** output capacitor").  Apple also criticizes the phrase "can also use," Jt. Stip. at 13, but Apple was ***not*** quoting Plaintiffs' trade secret.  Apple plucked that phrase from Plaintiffs' ***separate*** paragraph explaining the development of Plaintiffs' trade secrets and how they differ from what is generally known.[11]  *See* Ex. E at 8.

Apple also argues that certain trade secrets are not reasonably particular because ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████.  Apple argues using "open-ended" patent verbiage similar to "comprising" shows that "Plaintiffs continue to provide Apple with an unbounded set of exemplary information that *could* be secrets."  *Id.* at 12 (emphasis in original).  Apple cites patent cases (*Fontem Ventures* and *Abbott Diabetes Care*), but cites no support for its puzzling assertion that a trade secret must be defined

---

[11] Plaintiffs used the phrase "can also use" in that paragraph because they were referring to a trade secret that is ***dependent*** on other trade secrets and, therefore, not always required.  Ex. E at C.3 (████████████████████████████████████████ ).

such that it cannot be practiced in combination with other elements.  Such a rule would be contrary to the law that one still practices a trade secret even if one builds upon or changes it.  *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 514923, at *9-10 (N.D. Cal. Jan. 23, 2018).  Such a rule would also be contrary to the law that trade secrets "fall into a continuum" and can be described "as high level as a general idea."  *BladeRoom*, 2017 WL 2224838, at *2.  Apple's argument is also internally inconsistent.  After arguing it is "impermissible" to use patent verbiage, Apple asks the Court to order Plaintiffs to describe their secrets "with a list of specific elements for each, ***as claims would appear at the end of a patent***."  Jt. Stip. at 15, 29.  As the Court of Appeal explained, "if a patentable idea is kept secret, the idea itself can constitute information protectable by trade secret law."  *Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26, 47 (2014).

*Third*, Apple accuses Plaintiffs of "unilaterally" reserving the right to amend in an "end run" around Section 2019.210 to make "tactical use of discovery."  Jt. Stip. at 15.  Apple's accusations are once again misplaced and unsupported.  Apple relies solely on a quote from Plaintiffs' Disclosure, but crops the quote by omitting three critical words: "under relevant caselaw."  Plaintiffs' full statement reads: "Plaintiffs reserve all rights <u>under relevant caselaw</u> to amend this identification."  Ex. E at 14 (emphasis on Apple's omission).  This statement hardly supports Apple's accusation.  Plaintiffs stated the obvious: they may amend if permitted by relevant caselaw.  That is entirely proper.  *See M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*, 2011 WL 92734, at *2 (N.D. Cal. Jan. 10, 2011) (concluding it was proper for plaintiff to reserve the right to add "other misappropriated claimed trade secrets" that they learn "in discovery").

## 2.    Plaintiffs Need Not Affirmatively Distinguish Their Trade Secrets From Information That Is Generally Known

Apple next argues the "Plaintiffs' Disclosure fails to differentiate their alleged trade secrets from information that is publicly known."  Jt. Stip. at 16 (capitalization omitted).  As a preliminary matter, Plaintiffs provided a paragraph after each set of

numbered trade secrets explaining how Plaintiffs believe those trade secrets differ from that which is generally known.  Ex. E at 5, 6-7, 8, 10, 12-14.  For example, Plaintiffs' Disclosure explains:



Ex. E at 5.  Apple cannot complain that Plaintiffs did not provide more detail because Apple repeatedly refused to identify the publications that it contends disclose Plaintiffs' trade secrets.  *See* Exs. 14-17.

Regardless, the statements that Plaintiffs provided are not even required here. Apple cites *Advanced Modular*, but omits that the California Court of Appeal has since held that Section 2019.210 does ***not*** require such a statement in every case.  *See Brescia*, 172 Cal. App. 4th at 146-150.  The trial court in *Brescia* "reasoned that *Advanced Modular* required [plaintiff] to specify precisely how his [trade secret] were distinguish from matters known to skilled persons in the [relevant] industry."  *Id.* at 146.  The Court of Appeal reversed because the trial court "took language of *Advanced Modular* out of context."  *Id.* at 148.  The court held Section 2019.210 "does not require in every case that a trade secret claimant explain how the alleged trade secret differs from the general knowledge of skilled persons in the field to which the secret relates."  *Id.* at 138.  That is because the purpose of Section 2019.210 is "to require the trade secret claimant to identify the alleged trade secret with adequate detail to ***allow the defendant*** to investigate how it might differ from matters already known and to allow the court to craft relevant discovery."  *Id.* at 147.  Absent "a showing that the identification of the alleged trade secret ***alone*** lacks the particularity necessary to serve the statutory purpose, the trade secret claimant need not specify how the secret or its elements are distinguishable from matters known to skilled persons in the field."  *Id.* at 149.

Here, Apple fails to show the Disclosure lacks the detail necessary for Apple to investigate whether Plaintiffs' trade secrets are generally known.  To the contrary, Apple was able to investigate fully.  As discussed, Apple prepared a 100-page expert declaration attempting to show various references disclose elements of each trade secret.  *See* Polson Decl.  Apple's ability to prepare such a declaration shows that Plaintiffs provided enough detail for Apple to "investigat[e] whether the information disclosed is within the public domain . . . ."  *Brescia*, 172 Cal. App. 4th at 147; *see also Prolifiq Software Inc. v. Veeva Sys. Inc.*, 2014 WL 2527148, at *3 (N.D. Cal. June 4, 2014) (finding "the fact that [defendant] is able to craft detailed arguments for why [plaintiff's] information does not constitute trade secrets means that [plaintiff] has sufficiently identified that information to [defendant] so that it may investigate the merits of [plaintiff's] claim.").  As Judge Selna found, Apple's ability to provide such a declaration shows "Plaintiffs have defined their trade secret with sufficient particularity."  Ex. 1 at 10.

None of Apple's cases support requiring the Disclosure to distinguish Plaintiffs' trade secrets from that which is generally known.  Apple cites *Agency Solutions.Com v. Trizetto Group, Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011), but that was a **preliminary injunction** order addressing the **merits** of whether a trade secret existed.  *See id.* (concluding the plaintiff "failed to demonstrate" the alleged trade secrets "are, in fact, trade secrets").  In contrast, Section 2019.210 "does **not** create a procedural device to litigate the ultimate merits of the case—that is, to determine as a matter of law on the basis of evidence presented whether the trade secret actually exists."  *Brescia*, 172 Cal. App. 4th at 149.  Apple also cites *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1351 (2009), but that case affirmed a plaintiff is "*not* required to convince defendants or the court in its section 2019.210 statement that its alleged trade secrets are not generally known to the public."  *Id.* (emphasis in original).  Moreover, *Perlan* merely held the trial court did not abuse its discretion such that an extraordinary writ was appropriate.  *Id.* at 1353.

Apple's other cases merely required additional detail because plaintiffs did not clearly allege what was a trade secret. *See Acrisure of Cal., LLC v. SoCal Com. Ins. Servs., Inc.*, 2019 WL 4137618, at *4 (C.D. Cal. Mar. 27, 2019) (requiring explanation of whether plaintiff was claiming the "mere identities and locations" of customers as a trade secret);[12] *Sandler Partners, LLC v. Masergy Commc'ns, Inc.*, 2020 WL 3051253, at *5 (C.D. Cal. Feb. 25, 2020) (same); *Optumsoft*, 2015 Cal. Super. LEXIS 1726, at *9 (requiring allegation as to whether all, or only some, of cited documents were trade secrets); *Loop AI Labs, Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1115 (N.D. Cal. 2016) (requiring documentation showing the "contact information" to which plaintiff was referring).

Contrary to Apple's assertions, district courts in California routinely decline to require an affirmative statement distinguishing trade secrets from that which is generally known. *Proofpoint, Inc. v. Vade Secure, Inc.*, 2020 WL 1911195, at *7 (N.D. Cal. Apr. 20, 2020) (explaining "compliance with this particularity requirement does not require the designation itself to detail how the trade secret differs from matters of general knowledge in the trade" because Section 2019.210 was intended to "allow the defendant to investigate"); *Prolifiq*, 2014 WL 2527148, at *3 (same); *M.A. Mobile Ltd.*, 2011 WL 92734, at *1 (same). Indeed, Apple's own cited authority held the designation "***need not*** explain how the alleged trade secrets differ from general knowledge in the trade" and need only allow the "[defendant] to investigate and make that determination." *See Gatan*, 2018 WL 2117379, at *4.

---

[12] *Acrisure* suggests "readily ascertainable" information cannot be a trade secret. 2019 WL 4137618, at *4. The law is the opposite: "[U]nder California law, information ***can be a trade secret even though it is readily ascertainable***, so long as it has not yet been ascertained by others in the industry." *Abba Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 21 (Cal. Ct. App. 1991). As *Abba* explained, "our Legislature chose to exclude from the definition only that information which the industry ***already knows***, as opposed to that which the industry ***could*** easily discover." 235 Cal. App. 3d at 21.

### 3. Plaintiffs' Section 2019.210 Statement Need Not Identify Apple's Misappropriation

Apple next contends that Plaintiffs' Section 2019.210 Statement is deficient because it does not identify the trade secrets that Apple misappropriated.  Jt. Stip. at 24.  But Plaintiffs' Disclosure clearly specifies "Plaintiffs contend Apple misappropriated" the trade secrets identified therein.  Ex. E at 1.  Nothing more is required.

Apple suggests Plaintiffs must explain *how* Apple misappropriated those trade secrets and *where* those trade secrets are found in Apple's documents and products.  *See* Jt. Stip. at 25 (arguing the Disclosure provides no "connection" to "any alleged disclosure in any patent or any feature of the Apple Watch"); *id.* at 26 (arguing the Disclosure does not identify "by page and line number every alleged disclosure of Plaintiffs' trade secrets" and "any specific feature of the Apple Watch that incorporates the same").  But Apple cites nothing to support such a requirement.  Indeed, Apple's own case quotations required only an *identification* of the trade secrets allegedly misappropriated—not an explanation of *how* defendant misappropriated those trade secrets.  *See Perlan*, 178 Cal. App. 4th at 1336 (requiring plaintiff to "identify with 'reasonable particularity' the purported trade secrets which allegedly have been misappropriated"); *Loop AI Labs*, 195 F. Supp. 3d at 1111 (requiring "the information claimed to have been misappropriated be clearly identified"); *Myrio Corp. v. Minerva Network Inc.*, 2011 U.S. Dist. LEXIS 10461, at *1-3 (N.D. Cal. Apr. 4, 2001) (requiring identification of "only those trade secrets that Plaintiff has reasonable grounds to allege were misappropriated").

Apple appears to suggest the plaintiff in *Loop AI*, 195 F. Supp. 3d at 1116, was required to identify its trade secrets in *the defendant's* "contracts," "agreements," and "application."  Jt. Stip. at 25.  That is not correct.  In *Loop AI*, the plaintiff identified its trade secrets as "Plaintiff's confidential contracts and agreements" and "Plaintiff's confidential patent application."  195 F. Supp. 3d at 1116.  The court thus required the plaintiff to identify the portions of its *own* contracts, agreements, and application that

constituted its trade secrets. *Id.* The court did not require the plaintiff to identify where its trade secrets could be found in the defendant's documents. Apple's other cases similarly addressed situations where the plaintiff did not identify which portions of ***its own*** documents were secret. *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Fed. 16, 2017) (plaintiff did not make "clear which aspects of ***its*** technology and other information" were part of its patents); *Perlan*, 178 Cal. App. 4th at 1345 (plaintiff could provide more information about "***its*** alleged trade secrets"); *Myrio Corp.*, 2001 U.S. Dist. LEXIS 10461 (requiring plaintiff to identify the portions of its documents that it claims are secret); *Lilith Games Co. Ltd. v. uCool, Inc.*, 2015 WL 4149066, at *5 (N.D. Cal. July 9, 2015) (finding disclosure sufficient because it identified ***plaintiff's*** source code as a trade secret).

Apple fails to cite any legal support for its unprecedented rule that a Section 2019.210 disclosure must explain ***how*** or ***where*** the defendant uses the plaintiff's trade secrets. That is for discovery. Indeed, Apple has demanded and obtained such information through its trade secret contention interrogatories. Ex. 21 at 24-28. Plaintiffs provided their contentions based on public information and will supplement after Apple provides discovery. *Id.* Apple also ignores that Plaintiffs' TAC provides detailed allegations regarding misappropriation. Ex. I ¶¶ 232-244. As Apple's counsel argued in another case, Section 2019.210 can be satisfied by documents other than a formal Section 2019.210 disclosure. *See* Ex. 22 at 22 (Apple's current counsel arguing Section 2019.210 "has been satisfied by GE's Complaint . . . and the declarations filed in support of GE's Motion for Preliminary Injunction").

Below are quotations from the TAC showing how Apple's patents included Plaintiffs' trade secrets.

233. ███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

1

2

\* \* \*

3

239. ████████████████████████████████████████

4

5

6

7

8

9

10   Ex. I ¶¶ 233, 239.  Below are quotations and annotated pictures from the TAC showing

11   how Apple's products included Plaintiffs' trade secrets:

12   236. ████████████████████████████████████████

13

14

15

16

17



18

19

20   (1)────── ████████████████████ (3)

21

22

23   237. ████████████████████████████████████████

24

25

26

27

28



Ex. I ¶¶ 236-237; *Compare* Ex. I ¶¶ 236-237 *with* Ex. E at B.3 and B.1.  Plaintiffs went above and beyond and have provided far more detail than necessary at this stage.  Indeed, Apple's arguments are internally inconsistent.

Apple attempts to use the above detail in Plaintiffs' complaint against Plaintiffs by arguing the "best evidence" of the Disclosure's "deficiency" is that Plaintiffs "identify page and line numbers from patents in their TAC . . . but those page and line numbers appear nowhere in their Disclosure."  Jt. Stip. at 25.  That should not be surprising.  As discussed, the purpose of Section 2019.210 is to identify Plaintiffs' trade secrets at issue—not how defendant misappropriated those trade secrets.

Apple also misquotes Plaintiffs by claiming they "openly admitted that the SAC— on which Plaintiffs draw heavily in their Disclosure—'describes trade secrets that Plaintiffs *own*, not trade secrets that Plaintiffs assert *Apple misappropriated*.'"  Jt. Stip. at 25 (quoting Ex. J at 2) (emphasis added by Apple).  That is not correct because the SAC described both categories of trade secrets Plaintiffs own ***and*** specific trade secrets Apple misappropriated.  Plaintiffs actually stated "paragraph 39 describes trade secrets

that Plaintiffs own" and "paragraphs 41-50, not paragraph 39, describe the trade secrets that Apple misappropriated."  Ex. J at 2, 4.  The Disclosure included materials from paragraphs 41-50—not paragraph 39.  Compare Ex. E with Ex. H ¶¶ 39-50.  Nothing supports Apple's assertion that the Disclosure "draw[s] heavily" on the portions of the SAC identifying trade secrets Plaintiffs own, not that Apple misappropriated.  Indeed, Apple identifies nothing in the Disclosure similar to paragraph 39 from the SAC.

### 4.    Apple's "Prejudice" Arguments Also Lack Merit

Apple claims it is being prejudiced, arguing in conclusory fashion that Plaintiffs have not described their trade secrets with "any specificity."  Jt. Stip. at 26.  That is not true for all the reasons discussed above.  Apple also argues in conclusory fashion that it cannot "investigate which, if any, part of the Apple Watch or Apple's patents incorporate any of Plaintiffs' confidential information, and to remedy any such alleged misappropriation."  Jt. Stip. at 26.  As discussed above, Apple has not shown it lacks the detail necessary to investigate Plaintiffs' claims.   Moreover, Apple already has Plaintiffs' contentions as to how Apple misappropriated Plaintiffs trade secrets, which will be updated as discovery proceeds.

Apple also argues that Plaintiffs have been "cagey about when the alleged secrets were secret" and points to Plaintiffs assertion that their trade secrets were secret "at least at the time of Defendant's misappropriation."  Jt. Stip. at 26.  Plaintiffs were not "cagey"; they merely recited the appropriate legal standard.  As Judge Selna previously held, the relevant issue is whether the information constitutes a trade secret *at the time of misappropriation*.  Ex. 1 at 6 (patent published after Apple's misappropriation "cannot be used as evidence that Plaintiffs' claimed trade secret was public when Apple filed its own application.").  Apple's argument that it cannot "pin down" the relevant time period simply ignores Plaintiffs' allegations.   For example, Plaintiffs allege that Apple misappropriated Plaintiffs' trade secrets by including them in patent applications that claim priority to a provisional application that Apple filed on September 9, 2014.  Ex. I

¶ 233.  Thus, Apple should have no problem understanding that evidence of what was generally known in 2015 and later is irrelevant to that allegation.

Next, Apple argues Plaintiffs' motion for preliminary injunction is a "prime example" of Apple's supposed prejudice.  Jt. Stip. at 27.  Apple claims that Plaintiffs first identified "broad trade secrets without specificity" and then "narrow[ed] the allegations in their reply."  *Id.*  As discussed above in Section III.A.3, *supra*, Apple never explains this assertion and it is not correct.

Apple also argues Plaintiffs' "change in discovery position" also shows Apple's prejudice.  Jt. Stip. at 27.  Apple argues Plaintiffs "represented" certain discovery requests were "patent-related and *not* trade secret-related."  Jt. Stip. at 28 (emphasis in original).  That is not true.  The issue this Court addressed is whether Section 2019.210 barred **all** discovery that "relates" to trade secrets or only discovery that related **solely** to trade secrets.  While Plaintiffs argued that some of the requests were the "quintessential" type of requests that one would expect to see in a patent case, Plaintiffs never argued the requests were irrelevant to trade secrets.  Instead, Plaintiffs argued it was immaterial if the requests "related" to trade secrets because Plaintiffs were entitled to the discovery if it also "related" to patents.  Ex. X at 30-31; *see also id.* at 37 (arguing Apple could not refuse to produce documents merely because "some of the information may **also** be relevant to the trade secret claim").  After Plaintiffs provided the Disclosure and the Court stayed the patent case, Plaintiffs simply asked Apple to produce responsive documents that related to Plaintiffs' trade secret claims.  That is entirely consistent with Plaintiffs' earlier position that the requests sought information relevant to the patent claim.  By contrast, Apple refuses to produce responsive information even though it previously argued the requests made "crystal clear" that they sought information "relating to Plaintiffs' trade secret claims."  *Id.* at 16.  Thus, it is Apple—not Plaintiffs—that changed its position.

Finally, Apple attempts to bolster its prejudice argument by citing *Freeman*, 2016 WL 5719819, at *11, but the disclosure at issue in that case was nothing like this case.

As Apple acknowledges, *Freeman* addressed 492 trade secrets that the court concluded were "vague and overly inclusive." Jt. Stip. at 29. Here, Plaintiffs assert 49 specific trade secrets that are far more detailed.

### 5. The Court Should Reject Apple's Additional Requirements

At the end of its portion of the joint stipulation, Apple sets forth proposed relief that far exceeds "reasonable particularity" requirement of Section 2019.210. Jt. Stip. at 29. In particular, Apple demands that Plaintiffs also provide background information about the trade secret, contentions regarding economic value, contentions regarding efforts to maintain secrecy, and format the trade secrets as a list of specific elements "as claims would appear at the end of a patent." *Id.*

Apple initially made this identical demand in its portion of the Rule 26(f) Report. Ex. M at 20. The Court rejected Apple's request. *See* Ex. N (requiring only "compliance with 2019.210"). Unsatisfied with Judge Selna's decision, Apple asked this Court for the ***identical*** relief. Ex. X at 28. Apple appeared to acknowledge it was asking for ***more*** than mere compliance with Section 2019.210. *See id.* (requesting an order requiring Plaintiffs to "[1] identify their alleged trade secrets with the reasonable particularity Section 2019.210 requires; ***and*** [2] order Plaintiffs to serve on counsel a statement, under seal, that includes [the additional requirements]." This Court denied Apple's request. Ex. 5. Unsatisfied with this Court's decision, Apple returned to Judge Selna and objected to this Court's ruling. Ex. 23 at 13-15. Judge Selna again declined Apple's request. Ex. 24. This Court should reject Apple's attempt to litigate this issue for the ***fourth*** time.

Apple's request is also unsupported. Apple argues "numerous courts" have imposed those requirements, but cites only two decisions from the Northern District of California. One case imposed those requirements without explanation after concluding "grave doubts remain as to whether or not these alleged secrets will rise to the level of true trade secrets." *See Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *4-5 (N.D. Cal. Feb. 28, 2014). The other case cited to *Jobscience* and imposed some (but

not all) of the *Jobscience* requirements without explanation.  *See Gatan*, 2018 WL 2117379, *4 (requiring (1) a summary in "plain English" and (2) a numbered list "as claims would appear at the end of a patent" but ***not*** (3) an explanation as to how the trade secrets derive value from not being generally known or (4) an explanation of plaintiffs' efforts to maintain secrecy of the trade secrets).  *Gatan* specifically held: "Though the revised designation ***need not explain*** how the trade secrets differ from general knowledge in the trade, the designation must include sufficient detail to ***enable [defendant]*** to investigate and make that determination." *Id.*

Accordingly, neither *Jobscience* nor *Gatan* held or suggested that Section 2019.210 mandates Apple's four additional requirements.   To the contrary, the California Court of Appeal explained that no specific format is required.  *See Advanced Modular*, 132 Cal. App. 4th at 836 (Section 2019.210 may be satisfied by any showing that is "reasonable, i.e. fair, proper, just, and rational, under all of the circumstances").  Apple fails to explain why its additional requirements are necessary or appropriate in this case.

### 6.    Discovery Should Move Forward

Even if the Court were to find that Plaintiffs insufficiently described one or more trade secrets, it should still allow discovery to go forward.  Plaintiffs have sufficiently described "at least one" trade secret with particularity, which is all that is required under recent Ninth Circuit precedent.  *See InteliClear*, 978 F.3d at 659; *see also Delphon Indus., LLC v. Int'l Test Sols., Inc.*, 2012 WL 13049187, at *4 (N.D. Cal. Jan. 4, 2012) (concluding Section 2019.210 disclosure was inadequate, but allowing discovery to go forward while the plaintiff amended); *Via Tech., Inc. v. Asus Comp. Int'l*, 2016 WL 5930280, *5 (N.D. Cal. Oct. 12, 2016) (allowing discovery to go forward in part even though the Section 2019.210 disclosure was inadequate).

1    Dated: December 30, 2020        GIBSON, DUNN & CRUTCHER LLP

2

3                            By:    */s/ Joshua H. Lerner*
                                   Joshua H. Lerner

4                                   H. Mark Lyon
                                 Brian M. Buroker

5                                   Brian A. Rosenthal
                                 Ilissa Samplin

6                                   Angelique Kaounis
                                 Brian K. Andrea

7                          *Attorneys for Defendant Apple Inc.*

8

9    Dated:  December 30, 2020        KNOBBE, MARTENS, OLSON & BEAR LLP

10

11                            By:    */s/ Adam B. Powell*
                                   Joseph R. Re

12                                   Stephen C Jensen
                                 Perry D. Oldham

13                                   Stephen W Larson
                                 Adam B. Powell

14                          *Attorneys for Plaintiffs Masimo Corporation*

15                        *and Cercacor Laboratories, Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. to Compel    71    Case No. 8:20-cv-00048-JVS (JDEx)