JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **DECLARATION OF JOSHUA H. LERNER IN SUPPORT OF DEFENDANT APPLE INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF APPLE'S MOTION TO COMPEL PLAINTIFFS TO COMPLY WITH SECTION 2019.210** <br><br> Judge:       Magistrate Judge John D. Early <br> Date/Time: January 21, 2021 / 10:00 AM <br> Courtroom: 6A |

I, Joshua H. Lerner, declare and state as follows:

1.      I am an attorney duly licensed to practice law before this Court and all courts of the State of California.  I am a partner with the law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn") and counsel of record for Apple Inc. ("Apple") in the above-captioned action.

2.      I have personal, firsthand knowledge of the facts stated herein and, if called upon to do so, could and would competently testify thereto.

3.      I make this Declaration in support of Defendant Apple's Supplemental Brief in Support of Apple's Motion to Compel Plaintiffs to Comply with Section 2019.210.

4.      Attached as **Exhibit A** is a true and correct copy of Judge William Alsup's November 6, 2020 order, ECF No. 31, in *Acorn Bay v. Camelbak Prods. LLC*, No. C 20-05214 (N.D. Cal. Nov. 6, 2020).

5.      Attached as **Exhibit B** is a true and correct copy of the transcript of the parties' September 2, 2020 Telephonic Conference before Your Honor concerning Apple's Motion to Compel.

6.      Attached as **Exhibit C** is a true and correct copy of Judge Selna's January 6, 2020 Order Regarding Apple's Motion to Dismiss Plaintiffs' Thirteenth Cause of Action in the Third Amended Complaint.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed this 7th day of January, 2021, in San Francisco, California.


By:   /s/ *Joshua H. Lerner*
        Joshua H. Lerner

Gibson, Dunn &
Crutcher LLP

1

DECLARATION OF JOSHUA H. LERNER IN SUPPORT OF APPLE'S SUPPLEMENTAL BRIEF
IN SUPPORT OF APPLE'S MOTION TO COMPEL PLAINTIFFS TO COMPLY WITH SECTION 2019.210
CASE NO. 8:20-CV-00048-JVS (JDEX)

# Exhibit A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ACORN BAY,

          Plaintiff,

     v.

CAMELBAK PRODUCTS, LLC,

          Defendant.

No.  C 20-05214 WHA

**CASE MANAGEMENT ORDER, REFERENCE TO MAGISTRATE JUDGE FOR MEDIATION/ SETTLEMENT**

After a case management conference, the Court enters the following order pursuant to Rule 16 of the Federal Rules of Civil Procedure ("FRCP") and Civil Local Rule 16-10:

1. "[A] district court has wide discretion in controlling discovery." *Jeff D. v. Otter*, 643 F.3d 278, 289 (9th Cir. 2011).  In the trade secret context, the framework for discovery laid out by California Code of Civil Procedure § 2019.210 is tried and true.  *Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 WL 2445515, at *2 (N.D. Cal., 2018); *Jobscience, Inc. v. CVPartners, Inc.*, No. C 13-04519 WHA, 2014 WL 852477, at *5 (N.D. Cal., 2014).

2. For each trade secret, plaintiff must file, and serve on counsel, a statement, *under seal,* that should include: (1) a summary of the specific trade secret; (2) the background of the trade secret and a description of how each secret has derived independent, actual or potential economic value by virtue of not being generally known to the public; (3) a description of how each secret has been the subject of reasonable efforts to maintain its

United States District Court
Northern District of California

secrecy; and finally (4) each of the precise claimed trade secrets, numbered, with a list of the specific elements for each, as claims would appear at the end of a patent. This disclosure is due **NOVEMBER 18 AT NOON**.

3. Plaintiff may not take any discovery *at all* until a satisfactory statement has been filed under seal and served on counsel for defendants. Plaintiff's filing shall be for trial counsel's eyes only. Defendants may take discovery immediately, inasmuch as they are not asserting any trade secrets.

4. No further motions under Rule 12 or 56 shall be filed without the advance permission from the undersigned judge. Such permission may be sought via a three-page precis summarizing the proposed motion and explaining how it will advance the resolution of the overall case. Within 48 hours, the other side may submit a response (also limited to three pages). No footnotes, attachments, enclosures or declarations shall be permitted for either submission.

5. All initial disclosures under FRCP 26 must be completed by **NOVEMBER 18**, on pain of preclusion, including full and faithful compliance with FRCP 26(a)(1)(A)(iii).

6. Leave to add any new parties or to amend pleadings must be sought by **DECEMBER 31**.

7. The non-expert discovery cut-off date shall be **JUNE 30, 2021**.

8. The deadline for producing opinions of counsel under Patent Local Rule 3-7 shall be **28 calendar days** before the non-expert discovery cut-off, irrespective of the timeline in said rule.

9. Subject to the exception in the next paragraph, the last date for designation of expert testimony and disclosure of full expert reports under FRCP 26(a)(2) as to any issue on which a party has the burden of proof ("opening reports") shall be **JUNE 30, 2021**. Within **fourteen calendar days** of said deadline, all other parties must disclose any expert reports on the same issue ("opposition reports"). Within **seven calendar days** thereafter, the party with the burden of proof must disclose any reply reports rebutting specific material in opposition reports. Reply reports must be limited to true rebuttal and should be very brief. They should not add new material that should have been placed in

United States District Court
Northern District of California

2

the opening report and the reply material will ordinarily be reserved for the rebuttal or sur-rebuttal phase of the trial. If the party with the burden of proof neglects to make a timely disclosure, the other side, if it wishes to put in expert evidence on the same issue anyway, must disclose its expert report within the fourteen-day period. In that event, the party with the burden of proof on the issue may then file a reply expert report within the seven-day period, subject to possible exclusion for "sandbagging" and, at all events, any such reply material may be presented at trial only after, if at all, the other side actually presents expert testimony to which the reply is responsive. The cutoff for all expert discovery shall be **fourteen calendar days** after the deadline for reply reports. In aid of preparing an opposition or reply report, a responding party may depose the adverse expert sufficiently before the deadline for the opposition or reply report so as to use the testimony in preparing the response. Experts must make themselves readily available for such depositions. Alternatively, the responding party can elect to depose the expert later in the expert-discovery period. An expert, however, may be deposed only once unless the expert is used for different opening and/or opposition reports, in which case the expert may be deposed independently on the subject matter of each report. At least **28 calendar days** before the due date for opening reports, each party shall serve a list of issues on which it will offer any expert testimony in its case-in-chief (including from non-retained experts). This is so that all parties will be timely able to obtain counter-experts on the listed issues and to facilitate the timely completeness of all expert reports. Failure to so disclose may result in preclusion.

10. As to damages studies, the cut-off date for *past damages* will be as of the expert report (or such earlier date as the expert may select). In addition, the experts may try to project *future damages* (*i.e.*, after the cut-off date) if the substantive standards for future damages can be met. With timely leave of Court or by written stipulation, the experts may update their reports (with supplemental reports) to a date closer to the time of trial.

11. At trial, the opening testimony of experts on direct examination will be limited to the matters disclosed in their reports (and any reply reports may be covered only on rebuttal

3

or sur-rebuttal). Omitted material may not ordinarily be added on direct examination. This means the reports must be complete and sufficiently detailed. Illustrative animations, diagrams, charts and models may be used on direct examination only if they were part of the expert's report, with the exception of simple drawings and tabulations that plainly illustrate what is already in the report, which can be drawn by the witness at trial or otherwise shown to the jury. If cross-examination fairly opens the door, however, an expert may go beyond the written report on cross-examination and/or redirect examination. By written stipulation, of course, all sides may relax these requirements. For trial, an expert must learn and testify to the full amount of billing and unbilled time by him or his firm on the engagement.

12. To head off a recurring problem, experts lacking percipient knowledge should avoid vouching for the credibility of witnesses, *i.e.*, whose version of the facts in dispute is correct. This means that they may not, for example, testify that based upon a review of fact depositions and other material supplied by counsel, a police officer did (or did not) violate standards. Rather, the expert should be asked for his or her opinion based — explicitly — upon an assumed fact scenario. This will make clear that the witness is not attempting to make credibility and fact findings and thereby to invade the province of the jury. Of course, a qualified expert can testify to relevant customs, usages, practices, recognized standards of conduct, and other specialized matters beyond the ken of a lay jury. This subject is addressed further in the trial guidelines referenced below.

13. Counsel need not request a motion hearing date and may notice non-discovery motions for any Thursday (except holidays) at 8:00 a.m. The Court sometimes rules on the papers, issuing a written order and vacating the hearing. If a written request for oral argument is filed before a ruling, stating that a lawyer of four or fewer years out of law school will conduct the oral argument or at least the lion's share, then the Court will hear oral argument, believing that young lawyers need more opportunities for appearances than they usually receive. Unless discovery supervision has been referred to a magistrate judge, discovery motions should be as per the supplemental order referenced below.

4

14.  The last day to file dispositive motions shall be **AUGUST 26, 2021**.

15.  The **final pretrial conference** shall be held on **DECEMBER 1, 2021**, at **2:00 p.m.** Although the Court encourages argument and participation by younger attorneys, lead trial counsel must attend the final pretrial conference. For the form of submissions for the final pretrial conference and trial, please see below.

16.  A **jury trial** shall begin on **DECEMBER 6, 2021**, at **7:30 a.m.**, in Courtroom 12, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102. The trial schedule and time limits shall be set at the final pretrial conference. Although almost all trials proceed on the date scheduled, it may be necessary on occasion for a case to trail, meaning the trial may commence a few days or even a few weeks after the date stated above, due to calendar congestion and the need to give priority to criminal trials. Counsel and the parties should plan accordingly, including advising witnesses.

17.  Counsel may not stipulate around the foregoing dates without Court approval.

18.  For many years, the Court conducted a claim construction hearing about mid-way through the fact-discovery period. While this timing gave some guidance to counsel and experts, it had the distinct disadvantage of requiring abstract rulings without the benefit of a more complete record, thus increasing the risk of a claim construction error and a re-trial (and, for that matter, subsequent second appeal). Instead of a stand-alone claim construction hearing, claim construction will now be done on summary judgment or at trial in settling the jury instructions. In this way, the Court will better understand the as-applied meaning of terms advanced by counsel as claim constructions.

19.  After receiving the other side's preliminary claim construction disclosure under Rule 4-2, each party must move promptly to disclose any back-up contentions it may wish (or eventually wish) to make for its infringement or invalidity case in the event the other side's claim construction is thereafter adopted or else any such back-up contentions will be deemed waived. Promptly means within 28 days at the latest. A party, of course, is not required to have a back-up theory and may rest entirely on its own claim construction,

United States District Court
Northern District of California

5

1    but in the event the other side's claim construction prevails, such party will not be
2    allowed to assert back-up theories at that later juncture.

3    20.   A mere letter, email, or disclosure other than the formal disclosure imposes no duty to
4          amend (nor will it satisfy the Patent Local Rules duty to disclose).  What triggers the
5          obligation to amend infringement or invalidity contentions is the formal claim
6          construction disclosure.  The obligation does not extend to any alternative claim
7          constructions set forth by an opponent, even those in a formal disclosure, for that would
8          invite rambling claim construction disclosures that would tend to burden or trap.  It
9          extends only to a cogent claim construction without variables or alternatives.  Nor does a
10         contention waiver apply in the event the other side modifies its claim construction later in
11         its joint statement or opening brief under Rules 4-3 and 4-5.  Any such modification
12         would offer a new opportunity to move to amend to assert backup contingent
13         infringement or invalidity contentions.  For further explanation, the parties shall please
14         refer to *Fluidigm v. IONpath*, No. C 19-05639 WHA, Dkt. No. 128 (Aug. 25, 2020).

15   21.   Each party (or group of related parties) shall be entitled to one summary judgment
16         motion.  If it is granted in full or nearly so, then that party (or group) may ask for leave to
17         file another summary judgment motion as long as the deadline to file one has not passed.
18         Any summary judgment motion must be limited to 25 pages of briefing and 120 pages of
19         declarations and exhibits (not counting the patent itself).  The opposition must be limited
20         to 25 pages of briefing and 140 pages of declarations and exhibits.  The reply must be
21         limited to fifteen pages of briefing and twenty pages of declarations and exhibits.  In the
22         case of voluminous documents and transcripts attached as exhibits, counsel may append
23         only the pages of the document necessary to support the assertions in the briefing and
24         provide reasonable context, along with pages sufficient to identify the documents.  Any
25         judicially noticed material will count as an exhibit, but counsel may rely on exhibits and
26         declarations already filed on the same motion by the other side without counting them
27         against counsel's limit.  All briefing and declarations must be double-spaced with number
28         twelve font with only occasional single-spaced quotes and footnotes.

United States District Court
Northern District of California

22. A movant may move before the summary judgment deadline and before the end of discovery. If it does so, however, it should ordinarily alert the other side of the specific grounds for its contemplated motion reasonably in advance of the motion and cooperate in all discovery the opposing side reasonably needs to meet the issues raised. Once the opposing side is on notice of the contemplated motion, it must act with diligence to investigate and to conduct discovery to meet the anticipated motion. Lack of diligence will undermine any application to postpone the summary judgment motion under FRCP 56(d). Again, if the motion is largely granted, then the prevailing party may seek permission to file yet another summary judgment motion, but if it is largely denied, no further summary judgment motions will be allowed to that party, for a movant should base its motion on its best ground for summary relief. Permission may be sought by filing a five-page application setting forth the ground for the new motion. Any opposition must be filed within three court days.

23. The Court realizes that counsel would prefer to go into a trial or summary judgment knowing how the jury will be instructed as to all claims terms, but even under other case management approaches, that preference is rarely attainable. Postponing claim construction until after the judge has the benefit of the trial evidence or at least the benefit of the summary judgment record is more likely to avoid a mistake in claim construction. Moreover, it is customary in trials of all types for counsel and experts to learn only at the instructions-settling conference near the end of the evidence what instructions will or will not be given. As is routinely done in non-patent trials, patent trial counsel should adjust their trial plan and their expert presentations to account for the risk that their favored claim constructions will be rejected or modified in the final instructions.

24. Although claim construction will only be done in the context of summary judgment (or settling the jury instructions), the infringement and invalidity procedures of our Patent Local Rules must still be followed, including Rules 3-1 to 3-6, and 4-1 to 4-4 (except that the Court prefers six terms rather than ten). Claim construction briefs must still be filed under the schedule provided by Rule 4-5 but on summary judgment, the pertinent parts of

7

United States District Court
Northern District of California

1    the claim construction briefs shall be extracted out and/or cited as relevant.  As stated

2    above, the claim construction hearing under Rule 4-6 shall occur along with summary

3    judgment.  If the action originated in a different district and was subsequently transferred

4    here, then plaintiff must timely refile its infringement contentions to conform to our Rule

5    3-1, which filing shall trigger the due date for the invalidity contentions.

6    25.    While the Court encourages the parties to engage in settlement discussions, please do not

7    ask for any extensions on the ground of settlement discussions or on the ground that the

8    parties experienced delays in scheduling settlement conferences, mediation or ene.  The

9    parties should proceed to prepare their cases for trial.  No continuance (even if stipulated)

10   shall be granted on the ground of incomplete preparation without competent and detailed

11   declarations setting forth good cause.

12   26.    To avoid any misunderstanding with respect to the final pretrial conference and trial, the

13   Court wishes to emphasize that all filings and appearances must be made — on pain of

14   dismissal, default or other sanction — unless and until a dismissal fully resolving the case

15   is received.  It will not be enough to inform the clerk that a settlement in principle has

16   been reached or to lodge a partially executed settlement agreement or to lodge a fully

17   executed agreement (or dismissal) that resolves less than the entire case.

18   Where, however, a fully-executed settlement agreement clearly and fully disposing of the

19   entire case is lodged reasonably in advance of the pretrial conference or trial and only a

20   ministerial act remains, the Court will arrange a telephone conference to work out an

21   alternate procedure pending a formal dismissal.

22   27.    If you have not already done so, please read and follow the "Supplemental Order to Order

23   Setting Initial Case Management Conference in Civil Cases Before Judge William

24   Alsup" and other orders issued by the Clerk's office when this action was commenced.

25   Among other things, the supplemental order explains when submissions are to go to the

26   Clerk's Office (the general rule) versus when submissions may go directly to chambers

27   (rarely).  With respect to the final pretrial conference and trial, please read and follow the

28   "Guidelines For Trial and Final Pretrial Conference in Civil [Jury/Bench] Cases Before

Case 8:20-cv-00048-JVS-JDE   Document 267-13   Filed 01/07/22   Page 12 of 46   Page ID

The Honorable William Alsup."  All orders and guidelines referenced in the paragraph

are available on the district court's website at http://www.cand.uscourts.gov.  The

website also includes other guidelines for attorney's fees motions and the necessary form

of attorney time records for cases before Judge Alsup.  If you do not have access to the

Internet, you may contact Deputy Clerk Angela DiIenno at (415) 522-2020 to learn how

to pick up a hard copy.

28.  This matter is hereby **referred** to **Magistrate Judge Donna M. Ryu** for

**mediation/settlement**, the Court believing that such a conference would be more

effective in settling the present case than any other avenue.

29.  All pretrial disclosures under FRCP 26(a)(3) and objections required by FRCP 26(a)(3)

must be made on the schedule established by said rule.

**IT IS SO ORDERED.**

Dated:  November 6, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California

# Exhibit B

1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION - SANTA ANA)


MASIMO CORPORATION, ET AL,   ) CASE NO: 8:20-CV-00048-JVS-JDEx
                             )
            Plaintiffs,      )              CIVIL
                             )
      vs.                    )        Santa Ana, California
                             )
APPLE, INC,                  )   Wednesday, September 2, 2020
                             )
            Defendant.       )    (3:01 p.m. to 3:45 p.m.)


TELEPHONIC CONFERENCE RE DEFENDANT'S MOTION TO COMPEL [169]

BEFORE THE HONORABLE JOHN D. EARLY,
UNITED STATES MAGISTRATE JUDGE



APPEARANCES:            SEE PAGE 2


Court Reporter:         Recorded; CourtSmart

Courtroom Deputy:       Maria Barr

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 8365
                        Corpus Christi, TX 78468
                        361 949-2988






Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>APPEARANCES</u>:


For Plaintiffs:             STEPHEN C. JENSEN, ESQ.
                            Knobbe Martens Olson & Bear, LLP
                            2040 Main Street
                            14th Floor
                            Irvine, CA 92614


                            ADAM POWELL, ESQ.
                            Knobbe Martens Olson & Bear, LLP
                            12790 El Camino Real
                            San Diego, CA 92130


For Defendant:              JOSHUA H. LERNER, ESQ.
                            Gibson Dunn & Crutcher, LLP
                            555 Mission Street
                            Suite 3000
                            San Francisco, CA 94105


                            ILISSA S. SAMPLIN, ESQ.
                            Gibson Dunn & Crutcher, LLP
                            2029 Century Park East
                            Suite 4000
                            Los Angeles, CA 90067


                            NATALIE POUS, ESQ.
                            Apple in-house counsel

3

 1    **Santa Ana, California; Wednesday, September 2, 2020; 3:01 p.m.**

 2           **(Appearances via Zoom Web Video Conference)**

 3                        **Call to Order**

 4           **THE COURT:**  We're here on the record in *Masimo*

 5    *Corporation, et al versus Apple Inc.*, Case Number Central

 6    District SA-cv-20-00048-JVS-JDE.

 7           We are here because -- I'll take appearances in a

 8    moment, but we are here because I requested, this is Magistrate

 9    Judge Early, I requested a telephonic conference regarding a

10    Motion that was filed and a Joint Stipulation and supporting

11    evidence filed yesterday regarding a request for a Section

12    2019.210 Disclosure.

13           As I understand it on the call we have on behalf of

14    Plaintiff we have Mr. Stephen Jensen, Mr. Adam Powell.

15           And on behalf of Defendant we have Ms. Ilissa Samplin

16    and Mr. Joshua Lerner, and a representative from Apple whose

17    name we weren't able to catch.

18           Before I get that name could I find out, and don't

19    say anything, but is there anyone else on the call whose name I

20    didn't call other than the representative of Apple?

21       **(No audible response)**

22           **THE COURT:**  All right, if I could get the name of the

23    Apple in house counsel representative who is on the call?

24           **MS. POUS:**  Yes, your Honor, this is Natalie Pous.

25           **THE COURT:**  And I'm sorry, it's a little hard to hear

4

1   you, could you give me your first and last name slowly, please?

2        **MS. POUS:**  My apologies Natalie and the last name

3   Pous, P-O-U-S.

4        **THE COURT:**  P-O-E-S?

5        **MS. POUS:**  P-O-U-S.

6        **THE COURT:**  U-S.  Thank you.

7        All right, I appreciate Counsel making themselves

8   available on short notice.  Here I want to tell you what I want

9   to do, I want to make your lives easier, that's what I'm here

10  for, not entirely, but maybe partly.  I want to make your lives

11  easier.

12       We issued an Order yesterday on an ex parte

13  application that had some language that I hope Counsel have

14  looked at.

15       There's a lot of Motions being filed, mostly

16  surrounding, not the substance of any issue in the case, but

17  the order in which discovery is going to take place.  It seems

18  like a lot of time, money and effort and on matters that I

19  would expect and anticipate Counsel can work out amongst

20  themselves.

21       I haven't read all of the cases cited in the Joint

22  Stipulation, but I will.

23       I have looked at all of the briefing and I have

24  looked at all of the supporting documentation and have some

25  concerns.  What I don't want to do is go off the cuff and make

5

```
1    allegations without backing those up and making findings about
2    how the case is being litigated without backing those up with
3    the record, but we're reaching a point where we're probably
4    going to need to start doing that.  And -- but before I do
5    something like that I always like to give a heads up that it's
6    potentially coming.
7              One thing I'll tell you that I've noticed is that
8    both Counsel do agree on something and it's great that you
9    agree on something; it's bad that you agree on this.
10             You both agree that the other side's engaging in
11   gamesmanship.  It's a word you both used referring to the
12   other.  I'm not going to make a finding right now, but I
13   certainly probably could go through the record and find
14   instances where counsel for both sides have engaged in conduct
15   that could meet that definition.  I'm not going to do that yet,
16   I want to give you an opportunity to try to work some of these
17   things out.  And I'll tell you I think it's both Counsel
18   represent clients who's going to take this case very seriously
19   and that's important, that's what we're here for, we do serious
20   work.  I'm sitting in a chair right now where we had a request
21   for detention on a man facing a life sentence for an alleged
22   bombing that resulted in a killing where the victim was
23   literally blown to bits, pieces of her found in a parking lot,
24   on a wall, all other nearby places, two other victims injured.
25             Earlier, not too many days ago, and I thought about
```

6

1   this when I was working on the ex parte, I think it was the

2   fourth one in this case that involved the issues we talked

3   about, not the fourth one for me, I think Judge Selna had the

4   pleasure on the earlier three, but the fourth one seeking

5   expedited resolution.  And I'm going to describe to you a

6   situation we had just a few days ago where someone asked for

7   expedited resolution.  It was a series of search and arrest

8   warrants for a person who had previously been convicted of

9   terrorism and at this time was facing additional charges, and

10  as part of the request for an estimate for when the warrants

11  would be approved one of the -- it was noted that a

12  neighborhood was surrounded by SWAT officers and a law

13  enforcement helicopter was in the air and needed to know

14  whether it needed to refuel before the warrants would be signed

15  off, approved so that the tactical team could make entry safely

16  and without incident, and I'm happy to report that that did

17  happen, it occurred without incident and we completed our

18  hearing this morning regarding the allegations of murder and a

19  request for continued detention.

20          I want you to really think about that when you folks

21  think about whether you're going to re-institute, this is now

22  the ninth Motion regarding the Order in which disclosures will

23  be made in this case.  I know the case is very important to

24  you.

25          I also want you to think about what Judge Selna's

7

1    going through with his calendar with criminal cases circling

2    waiting for trials where the Sixth Amendment mandates trials or

3    the Constitution and the Speedy Trial Act mandate speedy trials

4    where a Court's calendar is not an excuse for delaying a

5    criminal defendant's right to a trial, and the fact that we're

6    under an emergency declaration, and we're under an emergency

7    declaration in this District for the District Courts for being

8    so far down in what they should have in terms of Judges meaning

9    that each Judge in the Central District does about, at this

10   point, getting close to two times the case load of what is

11   expected of District Judges.

12          And I gave you some numbers about if you plotted out

13   if every civil case litigated these issues like you are what it

14   would be like, and obviously not every case is litigated this

15   way, but this one is reaching a point that you folks really

16   need to think about that.

17          And part of this you may be playing tiny violins for

18   your concern about the Courts and the Court's calendar and the

19   fact that we have reduced staffing here, but part of it should

20   also be of concern because what I'm seeing doesn't reflect well

21   on Counsel, and when things don't reflect well on Counsel what

22   happens is things get more complicated at every stage of the

23   proceeding where the Court would like to rely on Counsel as

24   officers of the court to ensure that their complying with Rule

25   Number 1, and it's Rule Number 1 for a reason of the Federal

8

1   Rules of Civil Procedure to ensure the just timely and

2   inexpensive determination and resolution of disputes.  I want

3   you really to think about that and really focus on that as we

4   move forward.  And I don't necessarily expect us to resolve

5   this Motion today, but I want to give you some things to think

6   about.

7          You're going to have Supplemental Memoranda due in

8   about eight days and we may or may not have a hearing on the

9   Motion, but I'll be writing something up and I want you to have

10  an idea of some of the things that I'm thinking about including

11  in the Order and then ultimately you'll do what you'll do and

12  Judge Selna will have a chance to look at it, and you've seen

13  him express his views on some things in this case already and

14  some Orders, so I want you really to think about what's

15  happening in this case, what's happening with how the Court is

16  perceiving Counsel, and how that may affect how the case goes

17  forward.  And, obviously, we don't tie Counsel to their clients

18  and every client is entitled to a day in court and a fair day

19  in court, but I hope that the clients understand that how

20  things are being done may reflect on their representatives as

21  they make further appearances down the road.

22         I'm a lowly Magistrate Judge, though.  I am really

23  here to help you, I'm really here to maybe give you a sense of

24  what things look from this side and what things may look like

25  to Judge Selna, and how things may ultimately appear to a jury.

1          I have tried many cases in this building, I have

2   tried cases with Judge Selna.  I'm in front of Orange County --

3   or was in front of Orange County juries as a lawyer quite a

4   bit, and am still in front of them on consent cases and often

5   -- well, I'm going to leave that aside.

6          But juries don't necessarily like lawyers that snip

7   at each other and fight at each other and can't agree on what

8   even a juror can see is a relatively basic and simple process.

9   I'm not here to point a finger directly at one side or another,

10  but what I can tell you is it appears that this is happening

11  and coming from both sides, and when each side refers to the

12  other as "engaging in gamesmanship" I see support for both of

13  those -- each of those accusations.

14          Turning to the particular Motion that brings us here,

15  and that's Docket Number 169 filed yesterday, I think I heard

16  Mr. Powell had mentioned he's on the call -- Mr. Powell, are

17  you on the call?

18          **MR. POWELL:**  Yes, your Honor.

19          **THE COURT:**  All right.  I want to ask you about some

20  emails that you sent.

21          I'm looking at an email and I'll do it -- the Docket

22  Number, it's Docket Number 169-3, it's Page 7.  These are

23  otherwise referred to as, I think these are exhibits to

24  Ms. Samplin's Declaration, but it's easier for my record to

25  refer to them by their Docket Entry Number and their Page

10

1    Number, and it's a April 21st, 2020 email sent at 7:09 p.m., it

2    looks like Mountain Daylight Time, and you wrote to

3    Ms. Samplin:

4              "We will provide a Section 2019.210 disclosure in due

5              course, but will need a Protective Order in place

6              before doing so."

7              When you wrote that on February 21 of this year,

8    Mr. Powell, what date did you have in mind?

9              **MR. POWELL:**  I'm not sure we had a specific date in

10   mind, your Honor, and things have changed throughout this case.

11   I completely agree with you --

12             **THE COURT:**  Well, let's just focus on my question,

13   you answered it.  I asked what date you had in mind, although

14   you left some wiggle room, you said you're not sure you had a

15   date in mind, and that's -- I understand, it's been what,

16   counting with my fingers May, June, July, August, four and a

17   half months that you might not remember what you thought four

18   and a half months ago and that's fair.

19             I mean, did you have a general sense about a

20   particular event?  You mentioned a Protective Order, so you

21   named that.  Was there any other event you had in mind back in

22   April when you said that you'd make the Section 2019.210

23   disclosure in due course?

24             **MR. POWELL:**  Your Honor, to be honest, it's hard for

25   me to remember exactly what I was thinking on April 21st.

11

1          THE COURT:  Well, I want you -- I understand -- I

2    recognize, I want you to think, and if you say -- it's one

3    thing to say it's hard for you to remember, I acknowledge that,

4    but if you then follow it up by saying "and sitting here today

5    I can't remember" that's okay, tell me that.

6          MR. POWELL:  I don't think -- yeah, no, I can't

7    remember any specific thing.  I can tell you that at the time

8    the issue that we were dealing with with Apple concerned

9    primarily the Protective Order, and the reason is that both

10   parties had said "We won't provide confidential information

11   without a Protective Order."

12         THE COURT:  Okay.

13         MR. POWELL:  I think we just said we would provide

14   the information based on a mutual agreement to exchange it,

15   both parties would agree to (indiscernible) and Apple hadn't,

16   at the time, agreed to that agreement.  So we were and remain

17   to this day, always have been willing to provide confidential

18   information before entry of a Protective Order if both parties

19   did it.

20         THE COURT:  Right.

21         MR. POWELL:  That's all we were asking.

22         THE COURT:  Well, let's continue on.  So that was

23   April.

24         Let's look at Docket Entry -- the same Docket Entry

25   Number 169-3, and this is Page Number 14, this is an email you

12

1    wrote on June 9th so now we're getting a little closer in time,

2    maybe your memory is a little bit better.  We're talking about

3    three months -- a little less than three months ago, email June

4    9th, 2020 at 12:48 p.m. and, again, I'll quote:

5              "Plaintiffs expect to provide a 2019.210 statement

6              and other confidential information within a

7              reasonable period after entry of a Protective Order."

8              What was the reasonable time period you had in your

9    mind when you wrote that --

10             Oh, I'm sorry, that was actually not written by you,

11   that was written by Mr. Kachner.  I wonder, though, since it

12   looks like, Mr. Powell, you were copied on that, and if you had

13   an understanding about what Mr. Kachner meant by that?

14             **MR. POWELL:**  Yeah, I don't know exactly what

15   Mr. Kachner meant, but I think we were assuming that Apple

16   would answer the Amended Complaint after we filed it, and that

17   they would answer and we would provide a 2019 statement.

18             **THE COURT:**  But you don't know what he meant by that?

19             **MR. POWELL:**  I would be guessing if I told you

20   exactly what he meant, your Honor, I'm sorry.

21             **THE COURT:**  All right.  Let's jump ahead now to July

22   9th, so a month after Mr. Kachner's statement by email.  This

23   is Docket Entry Number 169-3 at Page 21, and this is from you,

24   Mr. Powell, once again referring to the 2019 statement.  You

25   write that, and I'm quoting in part:

13

1           "Nonetheless Plaintiffs will provide that statement

2           in due course."

3           What did you mean -- so now we're only talking about,

4   oh, a month and a half ago, what did you mean by "due course,"

5   what date did you have in mind?

6           MR. POWELL:  So, your Honor, at that time, and I'm

7   trying to make sure I get my timeline right, I want to be

8   accurate, but I believe we had filed the Second Amended

9   Complaint at that time and we had provided what we believe was

10  an extraordinary amount of detail in the Second Amended

11  Complaint, and we assumed Apple would answer the Second Amended

12  Complaint, and it was not until I think -- I'll have to get the

13  exact date of the meet and confer, right around when Apple

14  indicated to us that they intended to still move to dismiss,

15  and that's when things really changed here is that we thought

16  this was going to move forward, Apple would answer, we would

17  provide the 2019, and when Apple indicated they would still

18  move to dismiss that's when we realized that it didn't make

19  sense to litigate this, some of this similar and/or identical

20  issues both before your Honor and before Judge Selna at the

21  exact same time, in two separate forums, before two separate

22  Judges.

23          THE COURT:  Well, you indicated that, in your view,

24  there was an "extraordinary amount of disclosure in the Second

25  Amended Complaint," is that -- am I quoting you correctly?

14

```
 1         MR. POWELL:  I think I said "extraordinary," I'm not

 2   sure.  I think we certainly complied with Judge Selna's Order

 3   and I think we actually complied with the reasonable

 4   particularity requirement of 2019.

 5         THE COURT:  All right.  So why not tell Defendant

 6   that, why not tell Apple that?  That "Our Second Amended

 7   Complaint, we stand on that" and then if Judge Selna finds that

 8   to be insufficient so be it.

 9         MR. POWELL:  I'm not sure --

10         MR. JENSEN:  I'm sorry, were you trying to say

11   something else?  I didn't mean to interrupt you.

12         I was trying to ask -- Judge Early, this is Steve

13   Jensen, whether that was a question to Mr. Powell or whether

14   you would like me to address that as our argument?

15         THE COURT:  I guess I'm happy to listen to whomever

16   wants to speak, but ultimately you're each making

17   representations, or it's primarily Mr. Powell making

18   representations in the record before me so I want to understand

19   the bases for the recommendations.

20         You know, here's ultimately -- I don't really mean to

21   make Mr. Powell uncomfortable, if that's what happening, and I

22   hope it's not, but when an officer of the court is making

23   representations to another officer of the court about how the

24   case is proceeding I expect them to live up to the things that

25   they say, and so when they say four months ago that they're
```

15

1    going to be making a disclosure in due course after the entry

2    of a Protective Order, and when that Protective Order is

3    entered on June 30th, and they say in a separate email that

4    they will be making that 2019.210 disclosure in a reasonable

5    time after the entry of the Protective Order the shifting of

6    sands to say "Oh, no, I'm going to not do it because Apple is

7    challenging our Second Amended Complaint."

8            Hey, both sides agree on something, that the Second

9    Amended Complaint, the standard for under Rule 12(b)(6) and

10   Rule 8 for what's sufficient to state a claim is not the same

11   as the standard under 2019.210 for what's stating a trade

12   secret with reasonable particularity.  So a challenge to one

13   doesn't mean a challenge to the other.

14           If Judge Selna denies the Motion to Dismiss that

15   doesn't mean the language contained in the Second Amended

16   Complaint is sufficient under 2019.210.

17           If he grants it, well, since the standard is lower it

18   would, but it doesn't show a lot of faith in the adequacy of

19   the disclosure.

20           I'm troubled by that.  I'm troubled by the

21   argumentativeness of the contention that the issue has been

22   decided multiple times before about the 2019.210 disclosure.

23           The case isn't frozen in time.  What happened in

24   April, May, June in terms of what needs to be disclosed and

25   whether patent-related claims and trademark-related claims are

16

1    stayed or not stayed, or discovery is stayed or not stayed as

2    to Plaintiff's discovery under 2019.210 are -- that's one whole

3    set of issues and that changes over time.

4            But there's another big, big issue and that is

5    leaving aside 2019.210, Rule 26 gives Federal District Courts

6    broad discretion in controlling and scheduling discovery, and

7    you have read Judge Selna's Orders and I have read Judge

8    Selna's Orders and he certainly made it clear what he felt

9    about the issue of Apple not producing core technical data in,

10   what, Judge Selna found to be a timely or untimely fashion.

11           But the -- a corollary of that is Judge Selna wants

12   to get things moving, wants to get this case moving, you can

13   see it from his Orders.  And I'm concerned that Plaintiffs read

14   into that maybe more than they should have, and that Judge

15   Selna didn't say that there would never be a time for the

16   2019.210 disclosures, and he never said that there not be a

17   separate basis, whether it was in an interrogatory response or

18   a general controlling of the discovery process, that we didn't

19   need to get things going on the trade secret disclosure issue.

20           Your hearing in front of Judge Selna on the Motion to

21   Dismiss is, correct me if I'm wrong, it's September -- is it

22   14th?  Somebody tell me, what's the hearing on the Motion to

23   Dismiss?

24           **MR. POWELL:**  Just one moment, your Honor, I'll get

25   it.

17

1        **MR. LERNER:**  Yeah, your Honor, this is Josh Lerner

2   for Apple.  Sorry to jump in.  I think the date you had on the

3   14th is the date for the hearing on the Preliminary Injunction

4   which probably comes from the fact that we mentioned that in

5   our papers because obviously we feel like dealing with that

6   Motion without the disclosure is one of the issues here.  But

7   that's the hearing that's on the 14th, and I believe if

8   Mr. Powell doesn't have it yet, I'll have the date on the

9   Motion to Dismiss here in just one second, I'm just pulling it

10  up --

11       **MR. POWELL:**  Oh, I have it, your Honor, it's October

12  5th.

13       **THE COURT:**  All right.  And why don't I turn -- I'll

14  let Plaintiffs think about some of the things that I've said

15  and I'll turn to Apple.

16       If we just let this Motion that you filed go and let

17  it be heard in a regular hearing, which is probably what we're

18  going to wind up doing today short of giving you some things to

19  think about, if I do exactly what you asked me to do we have a

20  hearing on September 24th, I ordered disclosure in five days,

21  that would be September 29th.  What's the significance of that

22  date?

23       **MR. LERNER:**  The significance of that date, your

24  Honor, is that is the soonest we could find a way to get this

25  disclosure without, again, moving ex parte.  And to your

18

1    Honor's point we did see the language in your Order and we do

2    take it seriously.

3           I have practiced criminal law and I hear you and I

4    definitely get the importance of the matters you are describing

5    kind of as the relative importance of speed, and so the really

6    straightforward answer to your question is we really would like

7    to and I don't think it's overstating it to say we need a

8    disclosure earlier, but we also are aware of the burden on the

9    Court right now and we saw the Order and we didn't think it was

10   prudent to file another ex parte Motion notwithstanding the

11   fact that we are, as I mentioned, litigating it beyond.

12          **THE COURT:**  Well, I'm going out on a limb and saying

13   you had circulated the Joint Stipulation seven days before it

14   was filed so we were already going down that route by the time

15   my Order hit the Docket, right?

16          **MR. LERNER:**  Yes.  And even before that, though, your

17   Honor, I think this goes to your point, it was, I think,

18   evident to everybody that, you know, there are a lot of papers

19   in this case and we're trying to be mindful of that.

20          That said, if we can get this disclosure sooner

21   rather than later, even if it is on the regularly scheduled

22   hearing, that is a huge step forward for us because right now

23   we are litigating the case.  And I do think it's fair to say

24   this isn't disputed, I don't think opposing Counsel would

25   dispute it, they, of course, may, but the information, for

1    example, in the Motion for Preliminary Injunction and the

2    information in the Second Amended Complaint are not even close

3    to the same, and so we, Apple, are facing a situation where we

4    will take the disclosure identifying the secrets in this case

5    as soon as we can get it, and if that is after that hearing on

6    the regularly scheduled Motion and that's the best we can do we

7    absolutely will do that.

8            Now in terms of moving --

9            **THE COURT:**  Has Apple produced all of the core

10   technical data that was the subject of Judge Selna's Order last

11   month?  That's to Apple.

12           **MR. LERNER:**  Not only now, and this is kind of

13   ongoing and there's another Motion that you're probably aware

14   of before Judge Selna right now that's, I believe, also an ex

15   parte Motion from the Plaintiff and so I assume they may

16   disagree with us, but the answer to your Honor's question is we

17   do believe we have complied with that Order.

18           The Complaint was amended for new patents and there

19   is information that we believe is due requests which we have

20   been working very hard to gather with our clients, and I think

21   we can demonstrate well that since that Order came down we not

22   only have produced a ton of information including source code,

23   but also regularly updated that in follow-up requests for

24   anything missing we have responded as quickly as we could and

25   worked with the people on our end.  And Judge Selna's Order was

20

1   not and is not something that we were not taking seriously, so

2   I think, yes, we're in compliance with that part of it.

3            THE COURT:  Let me cut to the chase and make sure I'm

4   clear, that's great that you have produced a ton of

5   information, but if it calls for two tons of information I

6   don't necessarily know.

7            Here's what I want to hear from Apple:

8            Has Apple produced everything that Judge Selna

9   ordered relating to the core technical data?

10           MR. LERNER:  Our view, yes, we have produced the

11  documents that he ordered.  And I don't want to not answer your

12  question, but I do think it's relevant.  I think there is a

13  piece here which is there have been follow-up requests and --

14  yes --

15           THE COURT:  I understand -- let me say this, let me

16  stop you for a second.  I understand the Second Amended

17  Complaint and the parties can dispute how much it changed or

18  didn't change things referring to different patents and whether

19  that's subsumed in the prior Order.  I'm not concerned about

20  that.

21           I just want to know if based -- at the time Judge

22  Selna entered the Order has Apple produced everything that

23  Judge Selna ordered to be produced?

24           MR. LERNER:  Our position is yes, your Honor.

25           THE COURT:  All right.  Let me hear from Plaintiffs

21

1    on that question.

2            Has Apple produced everything that Judge Selna

3    ordered as of the date of that Order, leaving aside whether

4    things have changed in light of the Second Amended Complaint?

5    Has Apple produced everything that Judge Selna ordered as of

6    the date of that Order?

7            **MR. SPEAKER:**  Our position is absolutely not, your

8    Honor, not even close.

9            **THE COURT:**  What have they not -- if you're able to

10   be that definitive tell me specifically and if we need to --

11           **MR. SPEAKER:**  Yes.  There are --

12           **THE COURT:**  -- let me just -- hold on a second.  If

13   we need to --

14           **MR. SPEAKER:**  Okay.

15           **THE COURT:**  -- go with a confidential portion of this

16   proceeding alert me ahead of time and we'll designate the

17   transcript confidential.

18           **MR. SPEAKER:**  Yeah, and I don't have those kinds of

19   details in front of me, and if you want to know exactly if

20   there is a Motion that is --

21           **THE COURT:**  If I could interrupt you again, since

22   we're not here in court I need you to state your name when you

23   speak.

24           **MR. JENSEN:**  Right.  Oh, okay, sorry, this is Steve

25   Jensen.

**EXCEPTIONAL REPORTING SERVICES, INC**

1          There is a subsequent Motion which briefs the

2     deficiencies that we believe were in a place when Apple did not

3     comply with the Judge's Order to provide those core technical

4     documents in five days.  In fact, there were about 30 documents

5     which were produced and there was some source code.  We

6     immediately identified the deficiencies that were on the list.

7     Apple said they would look into it.  Two weeks later they were

8     still looking into it.

9          We did try to work through those things.  Judge Selna

10    had invited us to re-weigh the issue if the production was

11    insufficient.  That Motion, unfortunately, it's another Motion,

12    is briefed before Judge Selna asking that he, again, order them

13    to produce those documents.

14         Now they have subsequently agreed to looking into and

15    produce, there's a long list and it's very specific, of the

16    things we're asking for.  That correspondence has been from my

17    partner, Perry Oldham, and I think Brian Andrea who, I think,

18    have been dealing with the patent side of this case.  But we

19    strongly believe they have not complied with that, and we are

20    seeking those and trying to get those documents from them.

21         Once we filed the subsequent Motion we started

22    getting some additional documents from them.

23         **THE COURT:**  All right, so you strongly, "you" meaning

24    the Plaintiffs, strongly believe that Apple is --

25         **MR. JENSEN:**  Yes.

23

1          **THE COURT:**  -- has not produced the documents

2     required by Judge Selna.

3          You just heard Apple say they -- and Apple disagrees,

4     they think they have complied.

5          **MR. JENSEN:**  Yes.

6          **THE COURT:**  The flip side is, totally different

7     issue, one before -- that one before Judge Selna, now a Motion

8     before me where Apple strongly believes that Plaintiffs have

9     been "playing games," Apple's words, with the 2019 disclosure

10    or lack thereof, and has pointed me to a series of emails

11    which, for lack of a better term, look like a process of

12    stringing along, and Plaintiffs disagree that they have any

13    obligation to make a 2019 disclosure right now.  So you're at

14    loggerheads on the Motion before me; you're at loggerheads on

15    the ex parte application before Judge Selna, each side taking a

16    different view of the other side's recalcitrance.

17         Can you folks step back for a minute and see whether

18    there's a way to pick a date where Apple finishes its review

19    and produces whatever technical data that Plaintiffs claim

20    hasn't been produced in the matter that's sitting on Judge

21    Selna's desk, along with scores of other matters sitting on

22    Judge Selna's desk.  And I'm not kidding, I go up there

23    sometimes and he's got stuff stacked on the floor; he's got

24    stuff all over the place.  He's not in right now, but was in

25    earlier today, and we have got a Motion before me, thankfully

24

```
 1  not anywhere near as difficult, I don't have the burdens that
 2  he does of working criminal trials and finding a way to do this
 3  and, frankly, I think this Motion before me, I'll be able to
 4  get out a ruling on it, neither side is probably going to like
 5  what the ruling says, but I'll be able to get a ruling out on
 6  it.  But we've got loggerheads on production of information,
 7  confidential, sensitive trade secret technical information, and
 8  they both have been thrown into court for the Court to
 9  determine.
10         By the way, probably the worst group of people to
11  make these determinations, Judge Selna is much smarter than I
12  am, but neither one of us knows the technology like your two
13  firms and your two clients know.  Neither one of us know what
14  you really need to prepare your case for Motions, for trial.
15         What both Judge Selna and I can do is smell out
16  gamesmanship and can make findings on that.
17         But what I think, again, I'm here to help, I'm not
18  going to order anything, but what I think you two sides really
19  ought to do is see whether you can take a break for a moment,
20  take a deep breath --
21         I know you've got a Motion for Preliminary
22  Injunction, a very important Motion pending, and you've got
23  another Motion to Dismiss pending.  Even if I order everything
24  that Apple wants it's not going to come until weeks after the
25  Motion for Preliminary Injunction is heard.
```

1           Why don't you two hold off on throwing stuff into

2   court for a while, try a little harder to work stuff out.  Try

3   a little harder to figure out what you really need and what's

4   really being withheld, and if you can't come back, but maybe

5   you can.  I actually think you can.  I look at this and I --

6   although I see a lot of difficulty I think you both know what's

7   going on.  Both of your firms have been on both sides of patent

8   cases, you know what's happening, you know what each side's

9   reasoning behind different things is, take some time, talk

10  amongst yourselves to see whether you can resolve these two

11  things working together in tandem at the same time.

12          Tell me what you think about that, and I'm going to

13  start with Plaintiff, even though they're not the moving party

14  on the Motion in front of me, I'm going to start with

15  Mr. Jensen.

16          **MR. JENSEN:**  Thank you, your Honor.  And, look, we

17  take your workload and what you're saying here very seriously

18  as we did in the Order that you issued the other day.

19          I think what you're suggesting is a fantastic

20  suggestion and we welcome it.  I was not on the phone, but I

21  understand that when they were asking for the 2019 earlier we

22  made a suggestion that we agreed to a mutual exchange date of

23  that.  So I think that, you know, when we get --

24  (indiscernible) for these cases the parties should be able to

25  negotiate, work things out, do a little horse trading and get

26

1  the case moving.  I couldn't agree with you more, your Honor,

2  and so we are more than happy to try to engage in that process

3  the best we can and still represent our clients as well, and I

4  welcome it.  I think it's -- and I know that at least I wasn't

5  on the call, but I know we tried something similar to those

6  before this 2019 thing got out of hand.

7            THE COURT:  I'm going to ask you not to point fingers

8  here, all right?

9            MR. JENSEN:  Okay.

10            THE COURT:  I'm going to turn to -- is it going to be

11  Mr. Lerner or Ms. Samplin to make their response on behalf of

12  Apple?

13            MR. LERNER:  Thank you, your Honor, Joshua Lerner and

14  Ilissa will definitely correct me if I get it wrong in speaking

15  for both of us.

16            But I obviously hear your guidance and it makes sense

17  and we obviously will follow up with the Plaintiff here and

18  appreciate the Court's thinking on it and suggestions.

19            THE COURT:  Well, I want to know, can we do something

20  right now?  You don't need to stroke my ego, whatever ego I get

21  gets knocked off my shoulder the moment I cross the threshold

22  of my own front door.  Let's try to work something out right

23  now, something procedurally where we've got two pending

24  Motions, one ex parte, one in front of Judge Selna, this one in

25  front of me.  Can we come up with a procedural mechanism where

27

1    you let Judge Selna know "Hey, Judge, let's give that a break.

2    We talked about it with Judge Early, there's a separate Motion,

3    we're going to try to work this out for a week and see what we

4    can do."

5           Tell me if that's something you can agree to right

6    now.

7           **MR. LERNER:**  And I apologize for being dense, your

8    Honor.  You just mean communicating to both Judge Selna and

9    obviously yourself that we should put those Motions on hold

10   while the parties meet and confer on it and try and reach an

11   agreement as you discussed?

12          **THE COURT:**  Yes.  Yes.

13          **MR. LERNER:**  And, again, apologies for being dense.

14          **THE COURT:**  No, you're not being dense.  What I'm

15   trying to avoid is turning Judge Selna into Andrew Jackson and

16   have him fight the battle of New Orleans after the war is over.

17   If we can --

18          I don't know where he stands.  It might actually be

19   in for docketing right now or a ruling on the ex parte, I don't

20   know.  But if I say "Okay, you two see if you can talk about it

21   for a little bit," and it takes you -- we're now Wednesday and

22   you can't figure anything out until, you know, we've got a

23   three-day weekend coming up, there's a good chance Judge

24   Selna's going to rule on it and so you'll -- one side will be

25   very unhappy and kicking themselves and the other side who

28

1   winds up winning that is going to be glad that they didn't work

2   it out, but my suggestion is let's see if we can do something

3   right now where we put something on the docket and I try to get

4   ahold of Judge Selna or his chambers and let them know that

5   we're going to put a hold on that and see if you folks can work

6   it out.  Tell me what you think.

7           **MR. LERNER:**  Yes, that makes sense and apologies

8   again for being slow on that.

9           **THE COURT:**  So on behalf of Apple do you agree that I

10  can issue a Minute Order based on today's call that the parties

11  agree that this Motion that I referred to, it's Docket Number

12  169, and the ex parte that Plaintiff filed that's in front of

13  Judge Selna relating to the alleged failure to comply with his

14  July Order, that from Apple's standpoint I can issue an Order

15  and advise Judge Selna the parties agree to, for seven days,

16  hold those Motions in abeyance while the parties attempt to

17  resolve the issues therein.

18          Is that agreeable on behalf of Apple, Mr. Lerner?

19          **MR. LERNER:**  Yes.  Yes.

20          **THE COURT:**  And, Mr. Jensen, do you need me to repeat

21  that or can I just ask is that agreeable on behalf of

22  Plaintiffs?

23          **MR. JENSEN:**  No.  That's agreeable to Plaintiff.

24  (indiscernible)

25          **THE COURT:**  All right.  So what I'm going to do is

1    I'm going to go back into my chambers and write something up

2    very quickly and try to get ahold of Judge Selna's chambers.

3    And what's going to happen from you is you're going to be

4    required on September 9th, by noon, to advise the Court by way

5    of -- I'm going to ask Plaintiff to do it, but maybe I'm

6    expecting too much that I won't then get a counter-response

7    from Defendant, simply advising whether the Motions have been

8    resolved, the ex parte application and the Motions have been

9    resolved, or advising that they haven't been resolved.  No

10   argumentation, I don't need anything else, I just need a one

11   sentence statement that the Motions have been resolved and are

12   no longer needed to be determined by the Courts, or they

13   haven't been resolved.  Is that agreeable, Mr. Jensen?

14          **MR. JENSEN:**  That's agreeable.

15          **THE COURT:**  All right.  So I'm not going to waste any

16   more time, I'm going to go back and write something up and try

17   to get ahold of Judge Selna.

18          In the meantime I'm hoping that you folks can try to

19   work through these things.  I think it's going to be in your

20   best long term interests to do that.

21          But is there anything further?  Since I called it I

22   don't have anything further.  Is there anything further from --

23   on behalf of Plaintiffs with respect to what we've talked about

24   today?

25          **MR. JENSEN:**  Nothing from Plaintiffs, your Honor.

1          **THE COURT:**  And from the Defense?

2          **MR. LERNER:**  Nothing else from me, your Honor, except

3    one (indiscernible), what you mentioned, and hopefully it would

4    be avoided anyways, but should this submission on the 9th be

5    joint?  Just do the parties need to agree on it?  If not back

6    and forth or anything else?

7          **THE COURT:**  The only reason why I didn't want it to

8    be joint is I don't want you spending five hours going back and

9    forth on a one sentence submission.  So, listen, Plaintiffs

10   are --

11         **MR. LERNER:**  Okay.

12         **THE COURT:**  -- directed to file that one sentence

13   submission by noon on September 9th.

14         Defendants, should they desire, are permitted to file

15   a one sentence response to that by 1:00 p.m. on September 9th.

16         I don't want to add anymore because the more I add

17   the longer my Order gets and the greater the likelihood that

18   something from Judge Selna on the earlier ex parte hits the

19   docket, all right?

20         **MR. JENSEN:**  And my goal, your Honor -- this is

21   Mr. Jensen, my goal would be that our filing will not elicit a

22   response from Apple.  How's that?

23         **THE COURT:**  All right, I've got it and we, obviously,

24   can't make any promises so that's going to be --

25         **MR. JENSEN:**  Correct.  Correct.

31

1        **THE COURT:**  -- my Order and I'm going to let you

2    folks go so you have plenty of time to work on it.  And it

3    doesn't --

4        With respect to Judge Selna, what's in front of him

5    it doesn't change anything, you'll just let him know that he

6    can issue an Order.

7        With respect to me your Supplemental Memoranda are

8    due the following day on the 10th so you'll know by noon on the

9    9th whether you need to file a Supplemental Memoranda on the

10   pending Motion before me.

11       All right?

12       **MR. JENSEN:**  And just a clarification on that just so

13   I'm clear, we're not doing anything with Judge Selna now,

14   you're going to take care of that, right?  We're just doing the

15   thing a week from now to let us -- right?

16       **THE COURT:**  I'm going to issue an Order and I'm going

17   to try to reach him to let him know.

18       **MR. JENSEN:**  Okay.

19       **THE COURT:**  All right?

20       **MR. JENSEN:**  All right, sounds great.

21       **THE COURT:**  All right.

22       **MR. JENSEN:**  Thank you.

23       **THE COURT:**  Thank you.  We're adjourned.

24       **MR. LERNER:**  Thank you, your Honor.

25       **MS. SAMPLIN:**  Thank you, your Honor.

    (This proceeding was adjourned at 3:45 p.m.)


                        CERTIFICATION


I certify that the foregoing is a correct transcript from the

electronic sound recording of the proceedings in the above-

entitled matter.



_____              September 9, 2020

          Signed                             Dated


                  TONI HUDSON, TRANSCRIBER

# Exhibit C

## (Filed Under Seal)