Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
KNOBBE, MARTENS, OLSON &
BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:  (949)-760-0404
Facsimile:  (949)-760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
KNOBBE, MARTENS, OLSON &
BEAR, LLP
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000;
Facsimile: (858) 707-4001

*Attorneys for Plaintiffs Masimo Corp. and Cercacor Labs., Inc.*

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.:  415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.:  650.849.5300 / Fax: 650.849.5333

*Attorneys for Defendant Apple Inc.*
*[Additional counsel listed on next page]*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, CERCACOR LABORATORIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **JOINT STIPULATION REGARDING DEFENDANT APPLE INC.'S MOTION TO COMPEL SUPPLEMENTAL RESPONSES TO APPLE'S INTERROGATORY NOS. 4–5 AND 23** <br><br> Judge:      Magistrate Judge John D. Early <br> Date/Time:  February 18, 2021 / 10:00 AM <br> Courtroom: 6A <br><br> Discovery Cutoff:        7/5/2021 <br> Pre-trial Conference:   3/21/2022 <br> Trial:                        4/5/2022 |

BRIAN M. BUROKER, *pro hac vice*
 bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
 bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
 brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
 isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
 akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

# TABLE OF CONTENTS

<u>Page</u>

I.     THE INTERROGATORIES AT ISSUE ........................................................... 1

II.    INTRODUCTORY STATEMENTS ............................................................ 10

     A.    Apple's Introductory Statement ................................................. 10

     B.    Plaintiffs' Introductory Statement ............................................. 12

III.   ARGUMENT ................................................................................... 15

     A.    Apple's Interrogatory Nos. 4 and 5 ......................................... 15

         1.    Apple's Position ............................................................. 15

             a)    Apple Served Its Interrogatories Nine Months Ago ............ 16

             b)    Apple Seeks Basic Information About Plaintiffs' Allegations So That It Can Adequately Prepare Its Defenses ................................................................ 18

             c)    Plaintiffs Have Never Disputed That The Vast Majority Of Information Apple Seeks Is Relevant. .......... 21

             d)    Plaintiffs' Purported Reasons For Refusing To Provide Sufficient Responses Are Baseless ...................... 23

         2.    Plaintiffs' Position ......................................................... 25

             a)    Apple's Interrogatories Are Overbroad And Seek Information That Is Neither Relevant Nor Proportional To The Needs Of This Case ....................................... 25

             b)    Interrogatory Nos. 4 and 5 Are Improper Early Contention Interrogatories ........................................... 27

             c)    Plaintiffs' Responses Are Sufficient At This Time ............ 29

             d)    Apple's Remaining Arguments Are Meritless .................... 32

     B.    Apple's Interrogatory No. 23 ................................................. 34

         1.    Apple's Position ............................................................. 34

         2.    Plaintiffs' Position ......................................................... 39

             a)    Apple's Interrogatory Is Overbroad On Its Face ............... 39

             b)    Apple Seeks Information That Is Neither Relevant Nor Proportional To The Needs Of The Case ........................... 41

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Defendant Apple Inc. ("Apple"), as movant, and Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs"), as respondents, respectfully submit the following Joint Stipulation regarding Apple's Motion to Compel Supplemental Responses to Apple's Interrogatory Nos. 4–5 and 23.  The parties met and conferred on December 9, 2020, but were unable to resolve the disputes presented here.

## I.  THE INTERROGATORIES AT ISSUE

| Interrogatory | Plaintiffs' Objections and Responses |
|---|---|
| **Interrogatory No. 4:**<br>For each of the Apple Patents, identify in detail all facts relating to Plaintiffs' contention that any subject matter of such Apple Patent was invented by each of the Alleged Inventors, including, without limitation, for each Apple Patent and each Alleged Inventor, identifying by column and line number all subject matter of such Apple Patent that Plaintiffs assert was invented by such Alleged Inventor, describing the circumstances under which the Alleged Inventor and/or others conceived of such subject matter and/or reduced such subject | **Plaintiffs' Original Response (May 14, 2020):**<br>Plaintiffs incorporate their General Statement and Objections. Plaintiffs object to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Plaintiffs further object to this interrogatory to the extent it seeks information that is not relevant to any party's claims or defenses nor proportional to the needs of the case. Plaintiffs also object to this interrogatory as vague and ambiguous, particularly based on the phrase "and/or others." Plaintiffs further object to this interrogatory as compound and contend that it should be counted as multiple interrogatories because it combines multiple requests for information into a single interrogatory. Defendants must identify which of the many interrogatories it desires Plaintiffs to answer in this single interrogatory. Plaintiffs further note that inventorship is determined with respect to the subject matter claimed in a patent, not the subject matter disclosed in a patent specification. Many improper subparts of this interrogatory seek information that is irrelevant and where the burden of compiling it would be disproportionate to the needs of the case. Plaintiffs further object that this interrogatory seeks highly confidential information belonging to Plaintiffs. Plaintiffs intend to supplement this interrogatory after a protective order has been entered in this case.<br>Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:<br>U.S. Patent No. 10,078,052 (the "'052 Patent") |

matter to practice, identifying when such conception and reduction to practice took place, describing each Person's contribution to the conception and/or reduction to practice of the subject matter, identifying corroborating evidence of conception and/or reduction to practice, and identifying and describing in detail all evidence to support any contention that the inventors named on that Apple Patent did not solely conceive and/or reduce to practice any of the claims of that Apple Patent.

The '052 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees. For example, Claim 1 of the '052 Patent recites an electronic device comprising a housing defining an aperture; an optical sensing system comprising a light emitter for emitting light through the aperture, the light emitter positioned adjacent the aperture; and a light detector for obtaining a first portion of the light after the first portion of the light reflects from an object; and a reflector disposed about the aperture and adapted to reflect a second portion of the light back into the object after the second portion of the light reflects from the object. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab, while employed by Plaintiffs and while Lamego was under an obligation to assign any such invention to Masimo and/or Cercacor. Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '052 Patent.

U.S. Patent No. 10,247,670 (the "'670 Patent")

The '670 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees. For example, Claim 1 of the '670 Patent recites an electronic device comprising a housing with a surface; a reflective layer that is formed on the surface, wherein the reflective layer has first and second openings; a light emitter that emits light through the first opening; and a light detector that receives the light emitted by the light emitter through the second opening. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab, while employed by Plaintiffs and while Lamego was under an obligation to assign such invention to Masimo and/or Cercacor. Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '670 Patent.

U.S. Patent No. 9,952,095 (the "'095 Patent")

The '095 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees. For example, Claim 1 of the '095 Patent recites an electronic device comprising a housing comprising a surface adapted to be positioned proximate a measurement site of a subject; a biometric sensor positioned at least partially within the surface and comprising: a plurality of light sources for emitting light toward the measurement site at a selected

modulation frequency; and an optical sensor for obtaining light exiting the measurement site; and an input amplifier coupled to the output of the biometric sensor and disposed within the housing; a high pass filter coupled to an output of the input amplifier and disposed within the housing, the high pass filter having a cutoff frequency above that of a periodic biometric property of the measurement site; an output amplifier coupled to an output of the high pass filter and disposed within the housing; and an analog to digital converter coupled to an output of the output amplifier and disposed within the housing. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab, while employed by Plaintiffs and while Lamego was under an obligation to assign such invention to Masimo and/or Cercacor. Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '095 Patent.

U.S. Patent No. 10,219,754 (the "'754 Patent")

The '754 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees. For example, Claim 1 of the '754 Patent recites a method for estimating physiological parameters when modulated light from a first light source and a second light source is emitted toward a body part of a user, the method comprising determining a first multiplier value by: turning on the first light source; generating a first initial signal in response to capturing a first light sample corresponding to the first light source; demodulating the first initial signal to produce first initial demodulated signals; filtering and decimating the first initial demodulated signals; and determining the first multiplier value based on the filtered and decimated first initial demodulated signals; determining a second multiplier value by: turning on the second light source; generating a second initial signal in response to capturing a second light sample corresponding to the second light source; demodulating the second initial signal to produce second initial demodulated signals; filtering and decimating the second initial demodulated signals; and determining the second multiplier value based on the filtered and decimated second initial demodulated signals; capturing multiple light samples while the first light source and the second light source are turned on to emit modulated light toward the body part of

the user and converting the multiple light samples into a captured signal; demodulating the captured signal to produce multiple demodulated signals; performing a first decimation stage by: low pass filtering each demodulated signal; and decimating each demodulated signal; performing a second decimation stage after the first decimation stage by: low pass filtering each demodulated signal; and decimating each demodulated signal; demultiplexing each demodulated signal after the second decimation stage to produce a first signal associated with the first light source and a second signal associated with the second light source; multiplying the first signal by the first multiplier value using a first multiplier circuit to obtain a first conditioned signal; multiplying the second signal by the second multiplier value using a second multiplier circuit to obtain a second conditioned signal; and analyzing the first conditioned signal and the second conditioned signal to estimate the physiological parameter of the user. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Al-Ali, Diab, and Weber, while employed by Plaintiffs and while Lamego was under an obligation to assign such invention to Masimo and/or Cercacor. Accordingly, Al-Ali, Diab, and Weber are joint inventors of any patentable subject matter claimed in the '754 Patent.

U.S. Patent No. 10,524,671 (the "'671 Patent")

The '671 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees. For example, Claim 1 of the '671 Patent recites a wearable device, comprising a first light source; a second light source, the second light source operating at a different wavelength than the first light source; at least one light receiver; and a processing unit communicably coupled to the first light source, the second light source, and the at least one light receiver; wherein the processing unit is configured to: use the first light source and the second light source to emit light into a body part of a user; and dependent on the light emitted by the first light source and received by the at least one light receiver, compute a pulse rate of the user using the light emitted by the second light source and received by the at least one light receiver. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab and

Kiani, while employed by Plaintiffs and while Lamego was under an obligation to assign such invention to Masimo and/or Cercacor. Accordingly, Diab and Kiani are joint inventors of any patentable subject matter claimed in the '671 Patent.

Plaintiffs expect Apple will produce documents and other information that further confirms the named inventors obtained the claimed subject matter from discussions with, or jointly conceived it with, Diab and Kiani.

Discovery in this matter has only recently begun, the Court has not entered a Protective Order, Apple has not yet filed an Answer or provided any discovery, and Plaintiffs are continuing to investigate the subject matter of this interrogatory. Plaintiffs reserve the right to amend and/or supplement this interrogatory response pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure as they identify additional information. In particular, Plaintiffs expect they may provide additional information in accordance with the expert discovery deadlines set forth in the Court's scheduling order.

**Plaintiffs' First Supplemental Response (August 14, 2020)**:
Plaintiffs incorporate their original objections and response above as if set forth in full herein. Subject to and without waiving the foregoing general and specific objections, Plaintiffs further respond as follows:

U.S. Patent No. 9,723,997 (the "'997 Patent")

The '997 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Cercacor employees. For example, Claim 20 of the '997 Patent recites a method for using a mobile personal computing device to obtain health data, comprising using a camera and a proximity sensor to emit light into a body part of a user touching a surface of the mobile personal computing device; using at least two of the camera, an ambient light sensor, or the proximity sensor to receive at least part of the emitted light reflected by the body part of the user and generate sensor data; and computing health data of the user, utilizing the processing unit, using at least the sensor data regarding the received light. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Greg Olsen. Accordingly, Olsen is a

| | |
|---|---|
| | joint inventor of any patentable subject matter claimed in the '997 Patent.<br><br>Discovery in this matter has only recently begun, Apple has provided minimal discovery, and Plaintiffs are continuing to investigate the subject matter of this interrogatory. Plaintiffs reserve the right to amend and/or supplement this interrogatory response pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure as they identify additional information. |
| **Interrogatory No. 5**:<br><br>For each of the Apple Patents and for each of the Apple Applications, identify in detail all facts relating to Plaintiffs' contention that any subject matter of such Apple Patent and/or Apple Application was developed by Marcelo Lamego while working for Plaintiffs and/or was otherwise developed at Masimo, Cercacor, or Plaintiffs, including, without limitation, for each Apple Patent and/or Apple Application, identifying by patent column and line number or application page and paragraph number all subject matter of such Apple Patent or such Apple Application that Plaintiffs assert was developed by Marcelo | **Plaintiffs' Original Response (May 14, 2020)**:<br><br>Plaintiffs incorporate their General Statement and Objections. Plaintiffs object to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Plaintiffs further object to this interrogatory to the extent it seeks information that is not relevant to any party's claims or defenses nor proportional to the needs of the case. Plaintiffs further object to this interrogatory as compound and contend that it should be counted as multiple interrogatories because it combines multiple requests for information into a single interrogatory. Plaintiffs further note that inventorship is determined with respect to the subject matter claimed in a patent, not the subject matter disclosed in a patent specification. Many improper subparts of this interrogatory seek information that is irrelevant and where the burden of compiling it would be disproportionate to the needs of the case. Plaintiffs further object that this interrogatory seeks highly confidential information belonging to Plaintiffs. Plaintiffs intend to supplement this interrogatory after a protective order has been entered in this case.<br><br>Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:<br><br>Plaintiffs incorporate their response to Interrogatory No. 4, including any supplements, in full by reference. Plaintiffs further respond that any inventive contribution that Lamego could have made to the alleged invention of the subject matter claimed in U.S. Patent Application No. 15/960,507 (the "'507 Application) was made while Lamego was employed by Plaintiffs and while Lamego was under an obligation to assign such invention to Masimo and/or Cercacor. For example, |

Lamego, describing the circumstances under which Marcelo Lamego and/or others conceived of such subject matter, identifying when such conception and reduction to practice took place, identifying any other employee of Masimo, Cercacor, or Plaintiffs that contributed to the conception of such subject matter and/or reduction to practice of such subject matter, describing each such Person's contribution to the conception and/or reduction to practice of the subject matter, identifying corroborating evidence of conception and/or reduction to practice, identifying which entity—Masimo, Cercacor, or Plaintiffs—You contend is entitled to joint and/or exclusive ownership of such Apple Patent or Apple Application, and stating in detail any other factual and legal bases for Your contention that You are entitled to joint and/or

Claim 21 of the '507 Application recites a biometric sensor within a housing of a wearable electronic device, the biometric sensor comprising: an emitter for transmitting modulated light toward a measurement site of a subject through a first aperture in the housing; an optical sensor for receiving modulated light through a second aperture in the housing, the modulated light at least partially exiting the measurement site; a high pass filter to receive an output of the optical sensor, the high pass filter having a cutoff frequency above a frequency of a periodic optical property of the measurement site; and an analog to digital converter to receive an output of the high pass filter. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Al-Ali, Diab, and Weber, while they were employees of Masimo, or while Lamego was an employee of Cercacor.

In written assignments, Lamego, as well as Al-Ali, Diab, and Weber, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, or improvements) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter. Those assignments vested in Masimo all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '052, '670, '095, '750 and '671 Patents, and the '507 Application.

In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, or improvements) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter. An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3). Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '052, '670, '095, '750 and '671 Patents, and the '507 Application from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '052, '670, '095, '750 and '671 Patents, and the '507 Application.

| | |
|---|---|
| exclusive ownership of the Apple Patents and/or Apple Applications. | Plaintiffs expect Apple will produce documents and other information that further confirms the named inventors obtained the claimed subject matter from discussions with, Lamego, who in turn obtained the contribution from Al-Ali, Diab and Weber.<br><br>Discovery in this matter has only recently begun, the Court has not entered a Protective Order, Apple has not yet filed an Answer or provided any discovery, and Plaintiffs are continuing to investigate the subject matter of this interrogatory. Plaintiffs reserve the right to amend and/or supplement this interrogatory response pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure as they identify additional information. In particular, Plaintiffs expect they may provide additional information in accordance with the expert discovery deadlines set forth in the Court's scheduling order. |
| | **Plaintiffs' First Supplemental Response (August 14, 2020)**:<br><br>Plaintiffs incorporate their original objections and response above as if set forth in full herein. Subject to and without waiving the foregoing general and specific objections, Plaintiffs further respond as follows:<br><br>In written assignments, Lamego, as well as Olsen, agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter. An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3). Those assignments vested in Cercacor all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Cercacor is at least a joint owner of the '997 Patent and Cercacor has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '997 Patent.<br><br>In at least one written assignment, Lamego agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Masimo, |

Gibson, Dunn & Crutcher LLP

|  |  |
|---|---|
|  | including ownership of all patents and patent applications claiming such subject matter. Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '997 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Masimo, Masimo would be a joint owner of the '997 Patent. |
|  | Discovery in this matter has only recently begun, Apple has provided minimal discovery, and Plaintiffs are continuing to investigate the subject matter of this interrogatory. Plaintiffs reserve the right to amend and/or supplement this interrogatory response pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure as they identify additional information. |
| **Interrogatory No. 23**: | **Plaintiffs' Original Response (November 5, 2020)**: |
| Identify all facts of which You are aware that relate to each of the Apple Patents and each of the Apple Applications. Your response should identify at least the circumstances and dates relating to your first awareness of each of the Apple Patents and each of the Apple Applications. | Plaintiffs incorporate their General Statement and Objections. Plaintiffs object to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Plaintiffs further object to this interrogatory to the extent it seeks information that is not relevant to any party's claims or defenses nor proportional to the needs of the case. Plaintiffs object to this interrogatory as overly broad and unduly burdensome because it requests "all facts of which You are aware that relate to each of the Apple Patents and each of the Apple Applications." Plaintiffs also object to this interrogatory as vague and ambiguous with respect to the phrase "Identify all facts of which You are aware that relate to each of the Apple Patents and each of the Apple Applications." |
|  | Subject to and without waiving the foregoing objections, Plaintiffs respond as follows: |
|  | Plaintiffs incorporate by reference their responses to Interrogatories Nos. 4 and 5, including any supplements thereto. Plaintiffs also incorporate by reference the allegations set forth in their Complaint, including any amendments thereto, regarding the Apple Patents and each of the Apple Applications. Plaintiffs are further aware of the contents of and statements made in the Apple Patents and Applications, as |

| | well as the prosecution histories of the Apple Patents and Applications.<br><br>    Plaintiffs request a meet and confer about the scope of this interrogatory.<br><br>    Plaintiffs are continuing to investigate the subject matter of this interrogatory. Plaintiffs reserve the right to amend and/or supplement this interrogatory response pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure as they identify additional information. |
|---|---|

## II.    INTRODUCTORY STATEMENTS

### A.    Apple's Introductory Statement

Apple moves to compel responses to three interrogatories requesting factual information about Plaintiffs' correction of inventorship and ownership allegations. Plaintiffs' Complaint includes thirteen (13) counts alleging that Plaintiffs' employees are co-inventors of certain Apple patents and an application, and that Plaintiffs have an ownership interest in the patents and application.  Notwithstanding Plaintiffs' very serious allegations against Apple, Plaintiffs have provided virtually no factual basis for these allegations, and instead argue that they should not be required to provide basic information about those allegations, taking the position that it would be "premature" for them to provide the information without taking additional discovery.   Plaintiffs' arguments are backwards and should be rejected.   Plaintiffs brought this case, presumably with some factual basis for doing so.  Plaintiffs have the burden to establish that correction of inventorship and ownership is warranted.  And it is Plaintiffs—and only Plaintiffs—who know what facts they relied on to make these allegations in the first place.  Courts, including this one, have recognized that providing "inventorship contentions" early in the case is appropriate, because such contentions allow the parties to understand the other parties' theories, assess their own case, and prevent the "shifting sands" approach the Federal Circuit has warned against in patent cases.

Correction of inventorship requires Plaintiffs—not Apple—to establish that each of the individuals alleged to be inventors of an invention claimed in a patent made a

Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. to Compel          10          Case No. 8:20-cv-00048-JVS (JDEx)

significant contribution to the invention that is distinguishable from concepts known in the art.  *In re VerHoef*, 888 F.3d 1362, 1366 (Fed. Cir. 2018).  The information sought by Apple's interrogatories is directly relevant to these issues.  Specifically, Interrogatory Nos. 4 and 5 seek the identity of the specific subject matter from each claim Plaintiffs allege their alleged inventors contributed, who invented that subject matter and when, what evidence Plaintiffs are aware of that support their contention, and an identification of how the subject matter they supposedly contributed differs from what was known in the prior art.  Interrogatory No. 23 seeks information about Plaintiffs' first awareness of the disputed Apple patents and application and what steps were taken upon learning about the patents.  Apple requires this information in order to understand what claims are at issue, the scope of the dispute between the parties with respect to each claim, to determine whether claim construction is necessary, and to develop its defenses to Plaintiffs' allegations.

There is no credible reason that Plaintiffs cannot or should not provide the information Apple seeks.  Plaintiffs must have had the information at least as of the filing of their Complaint, as they would not have had a Rule 11 basis to file Counts 14–26 if they did not.  Plaintiffs' refusal to provide the information is plainly an attempt to avoid having to take any positions on what they are actually alleging at this stage—more than one year into the case—so that they can change course later.  This refusal to provide actual positions has been Plaintiffs' *modus operandi* in this case, as their repeated refusals to provide basic information about their allegations have necessitated the filing of multiple motions, placing a significant burden on the Court.  Apple tried to avoid the need for filing this motion, repeatedly urging Plaintiffs to reconsider their position, but Plaintiffs flatly refused Apple's request with no arguable support. For the reasons discussed below, the Court should order Plaintiffs to provide complete responses to Apple's Interrogatory Nos. 4–5 and 23, and put a stop to Plaintiffs' continued attempts to delay this case by refusing to provide basic discovery responses about the claims they filed.

Gibson, Dunn &
Crutcher LLP

Joint Stip. Re Apple's Mot. to Compel          11          Case No. 8:20-cv-00048-JVS (JDEx)

**B.     Plaintiffs' Introductory Statement**

Apple argues Interrogatories 4 and 5 seek "basic information" that Plaintiffs refused to provide.  Both assertions are incorrect.  Apple seeks detailed and complex legal positions as to numerous individuals who contributed to the claimed subject matter of numerous patents.  For example, Apple's interrogatories seek the "column and line number" of all subject matter contributed by each individual, a detailed description of how each person contributed such subject matter, and a detailed description of all supporting evidence.  Ex. A at 18.[1]  Apple now goes further and seeks an identification of how such subject matter differs from the prior art.  Jt. Stip. at 20-21.

Much of the information Apple seeks is irrelevant.  For example, seeking each individual's contribution by "column and line number" of the specification is irrelevant because inventorship is based on the ***claims***, not the specification.  *See Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1376 (Fed. Cir. 2020).  Seeking an explanation of how each individual's contributions differ from the prior art is also irrelevant because a coinventor need not contribute subject matter that is distinguishable over the prior art.  "Virtually all inventions are combinations and virtually all are combinations of old elements."  *Env't Designs Ltd. v. Union Oil Co. of Cal.*, 713 F.2d 693, 698 (Fed. Cir. 1983).  Instead, an inventor must do more than merely explain "***well-known*** concepts and/or the ***current state*** of the art," *In re VerHoef*, 888 F.3d at 1365.  Moreover, Plaintiffs need not contend or establish that ***Apple's*** patent claims are valid.

Apple also argues as if Plaintiffs' responses provided no facts.  That is not true.  Plaintiffs provided reasonable responses and anticipate supplementing their responses as discovery unfolds.  As Plaintiffs explained in their opposition to Apple's other pending motion to compel, Apple served early contention interrogatories as to nearly every aspect of the complaint.  *See, e.g.*, Ex. A at Nos. 2-3 (patent infringement), Nos.

---

[1] All citations to lettered exhibits in Plaintiffs' sections are citations to exhibits attached to the Declaration of Brian Andrea, filed herewith.  All citations to numbered exhibits are citations to exhibits attached to the Declaration of Mark Kachner, filed herewith.  All emphasis added unless otherwise noted.

4-5 (patent ownership), Nos 6-13 (trade secret misappropriation).  Such early contention interrogatories that "systematically track all the allegations in an opposing party's pleadings [are] a ***serious form of discovery abuse***."  *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 337 (N.D. Cal. 1985).  Such interrogatories can be "almost mindlessly generated, can be used to impose ***great burdens*** on opponents, and can generate a great deal of counterproductive friction between parties and counsel."  *Id.*

Apple has also been withholding discovery relating to the very contentions on which it moves to compel.  Apple has produced only a handful of documents regarding ownership and inventorship of Apple's patents.  For months, Apple indicated it would produce more documents on a "rolling basis," but failed to do so.  Apple has even declined to confirm it will produce specific categories of documents.  Apple cannot demand Plaintiffs provide detailed ***contentions*** regarding patent inventorship and ownership while refusing to provide any real discovery relating to those issues.  Indeed, Apple admits its goal is to prevent Plaintiffs from refining their contentions based on facts that may be discovered later.  *See* Jt. Stip. at 11 (arguing plaintiffs will use discovery to "change course later").

Regardless, Plaintiffs identified facts supporting their contentions, including the names of individuals who contributed to claimed subject matter, how those individuals worked with Lamego, and their respective contractual obligations to assign the claimed subject matter to Plaintiffs.  Plaintiffs provided a reasonable response and agreed to supplement as they learn more.  That is sufficient, particularly before Plaintiffs have an opportunity to examine Apple's documents and depose the alleged inventors.  Plaintiffs should not be required to provide detailed contentions and identify supporting evidence before taking relevant discovery.  As the Federal Circuit observed, evaluating joint inventorship is a fact-intensive exercise and "one of the muddiest concepts in the muddy metaphysics of patent law."  *In re VerHoef*, 888 F.3d 1362, 1365 (Fed. Cir. 2018).

As for Interrogatory No. 23, Apple's position has been a moving target.  The interrogatory seeks "all facts of which You are aware that relate to each of the Apple

Patents and each of the Apple Applications." When Plaintiffs pointed out the incredibly broad and unbounded scope of the interrogatory, Apple argued that it sought "at least" certain information. For the first time in its Motion, Apple now suggests it may be seeking *only* specific information, but does not clearly explain how, if at all, it is limiting the request. Regardless, Apple seeks burdensome and privileged discovery, including "discussions with prosecution counsel and litigation counsel." Ex. J at 159.

Apple also fails to show the specific information it now claims to seek is relevant. Apple's introduction argues this information is somehow relevant to showing "what claims are at issue," the "scope of the dispute," and "whether claim construction is necessary." Jt. Stip. at 11. But Apple fails to explain how the date and circumstances of Plaintiffs learning about Apple's patents have anything to do with those issues. Later, Apple argues its requests are relevant to "potential" defenses like laches. But Apple has not yet filed an answer and has refused to identify its defenses in response to Plaintiffs' interrogatories. Apple's most recent response identified no such defenses and stated: "Apple's affirmative defenses *do not yet exist* in this action because it has not filed an Answer to the Complaint in this action." Ex. 1 at 4. Plaintiffs should not have to provide detailed contentions rebutting defenses that Apple argues "do not yet exist." The irony in Apple's Motion is apparent. For Interrogatory Nos. 4 and 5, Apple hopes to restrict Plaintiffs to presently known facts. But with regard to Interrogatory No. 23, Apple demands discovery so that it can formulate its initial answer.

Apple also casts baseless aspersions on Plaintiffs and their counsel. Contrary to Apple's assertions, Plaintiffs had more than enough information to satisfy Rule 11. Indeed, Apple dropped its pleading challenge to Plaintiffs' inventorship and ownership claims. Apple also argues Plaintiffs' "*modus operandi*" has been to delay and refuse to provide discovery. Jt. Stip. at 11. Apple points to its Section 2019.210 motion as support, but this Court has since denied that motion. Jt. Stip. at 21; Ex. 11. Apple's arguments casting aspersions on Plaintiffs lack merit.

1

### III.   **ARGUMENT**

2        Consistent with Local Rule 37-2, in this section the parties address their disputes

3   with respect to individual Interrogatories and responses.   The text of the disputed

4   Interrogatories and Plaintiffs' responses is set forth above.

5   **A.    Apple's Interrogatory Nos. 4 and 5**

6          **1.    Apple's Position**

7        Apple's Interrogatory No. 4 seeks the facts of which Plaintiffs are aware that relate

8   to their allegations that the subject matter set forth in various Apple Patents and a patent

9   application (the "Disputed Patents") were invented by certain employees of Plaintiffs

10  (the "Alleged Inventors").   Similarly, Apple's Interrogatory No. 5 seeks facts relating to

11  Plaintiffs' allegations that the subject matter in the Disputed Patents was invented by

12  Marcelo Lamego while he was employed by Plaintiff Cercacor.[2]

13        In response to Interrogatory No. 4, for each of the Disputed Patents, Plaintiffs

14  merely recite the following canned response:   "The [PATENT] claims subject matter

15  that Lamego obtained from discussions with, or jointly conceived with,

16  [Masimo/Cercacor] employees. For example, [CLAIM] of the [PATENT] recites [FULL

17  QUOTE OF CLAIM].   Lamego obtained this subject matter from discussions with, or

18  jointly conceived it with, [NAMES], while employed by Plaintiffs and while Lamego

19  was under an obligation to assign such invention to Masimo and/or Cercacor.

20  Accordingly, [NAMES] are joint inventors of any patentable subject matter claimed in

21  the [PATENT]."   Andrea Decl., Ex. B at 37–42.   This language is almost verbatim to

22  that contained in Plaintiffs' Third Amended Complaint ("TAC").   Plaintiffs' response to

23  Interrogatory No. 5 offers no additional details, other than to state that Lamego assigned

24  rights to Masimo and Cercacor.   *Id.* at 42–45.

25

26

27  _____

28  [2]  Because of the overlap in the information sought by both interrogatories, and the fact that the parties addressed both interrogatories together in correspondence and during the meet and confer, Apple addresses them together.

Despite many requests, detailed below, Plaintiffs refuse to provide any specifics as to what claims they allege they invented, which individual(s) allegedly invented *what* aspects of the claims, *when* such invention allegedly occurred, and what documents Plaintiffs rely on for such contentions.  Instead, Plaintiffs merely say discovery is in its early stages and they expect to get further discovery on the issue from *Apple*.  But Plaintiffs do not need discovery from Apple to answer these interrogatories.  The information sought by these interrogatories includes, for example, the specific subject matter in each of the claims in each of the Disputed Patents that was allegedly invented by each Alleged Inventor and the circumstances under which each Alleged Inventor and Mr. Lamego allegedly developed the subject matter (including an identification of when such development occurred and documents that support such development).  There should be no dispute that the information sought by these interrogatories is relevant to Plaintiffs' correction of inventorship and ownership allegations (*see* Dkt. 233 ¶¶ 253–349 (Counts 14–26))—indeed, Plaintiffs concede that the vast majority of information Apple seeks via this interrogatory is relevant.  There should also be no dispute that Plaintiffs are in possession of this information if they had a Rule 11 basis to make the allegations in the first place.  Nonetheless, Plaintiffs have refused for *nine months* to provide the information Apple has requested.

### a) Apple Served Its Interrogatories Nine Months Ago.

Apple served Interrogatory Nos. 4 and 5 early in the case, on April 14, 2020, in an effort to obtain critical information about Plaintiffs' allegations.  Andrea Decl., Ex. A at 18–19.  In their initial response to Interrogatory No. 4, Plaintiffs provided a single paragraph for each of the Disputed Patents that summarily alleges that each patent "claims subject matter that [Marcelo] Lamego obtained from discussions with, or jointly conceived with, Masimo employees."[3]  Andrea Decl., Ex. B at 37–42.  For each of the

---

[3]  Nearly all of Plaintiffs' trade secret and correction of inventorship and ownership claims involve Marcelo Lamego, who was previously employed by Plaintiffs and later employed by Apple for approximately six months in 2014.  Mr. Lamego is a listed inventor on each of the Disputed Patents.

Disputed Patents, Plaintiffs listed out verbatim all of the elements of one claim from the patent and concluded that Lamego allegedly developed "this subject matter" while he was employed by Plaintiffs, and identified one or more of Plaintiffs' employees who allegedly co-invented "this subject matter." *Id.* In their initial response to Interrogatory No. 5, Plaintiffs merely added that because Lamego had agreed to assign patentable subject matter conceived during his employment with Plaintiffs, Plaintiffs therefore own the Disputed Patents. *Id.* at 42–45.

After Apple sent a letter to Plaintiffs about their responses, the parties met and conferred and Plaintiffs agreed to supplement after entry of the Protective Order. Andrea Decl., Ex. D at 74. On August 14, 2020, after the Court entered the Protective Order in this case, Plaintiffs served a supplemental response. Their supplemental responses, however, did not provide *any* additional details about the patents discussed in Plaintiffs' initial response; rather, the supplemental responses added the same insufficient level of detail regarding a newly plead Disputed Patent and included likewise conclusory information about that patent. Andrea Decl., Ex. E at 93, 97–98.

On November 19, 2020, Apple sent a letter to Plaintiffs requesting a meet and confer regarding Plaintiffs' responses, noting that Plaintiffs' responses are deficient and "merely provide a laundry list of claim elements that appear in [each Disputed Patent], and assert, in conclusory fashion, that Marcelo Lamego must have obtained information regarding those claim elements from Masimo or Cercacor." Andrea Decl., Ex. H at 151. Apple further noted that "Plaintiffs' Responses provide no information and cite to no documents or other sources in an effort to even attempt to establish that Plaintiffs invented the subject matter they cite in the responses." *Id.* Plaintiffs provided a short response (Andrea Decl., Ex. I at 155–56), and the parties met and conferred on December 9, 2020. Andrea Decl. ¶ 15.

During the meet and confer, Apple explained its position as to why Plaintiffs' responses are deficient, and Plaintiffs agreed to let Apple know whether it would agree to supplement. In a follow-up letter, Apple laid out the information that should be

included in full and complete responses, including "an identification of each Alleged Inventor (including Mr. Lamego) of the subject matter in each [Disputed Patent] and what specific subject matter (by column and line number) in each [Disputed Patent] each Alleged Inventor contributed, along with an identification of supporting evidence (including documents and/or source code) and an explanation as to how the subject matter is distinguishable from what was known in the art."  Andrea Decl., Ex. J at 158–59.

On December 16, 2020, Plaintiffs responded that "Apple's demand for additional detail in response to these contention interrogatories at this stage of the case is premature."  Andrea Decl., Ex. K at 162.  Plaintiffs took the position that they would first need discovery from Apple and a deposition of Marcelo Lamego and indicated that they would "supplement their response to these interrogatories as discovery proceeds in this case."  *Id.*  In an effort to avoid burdening the Court with another motion involving Plaintiffs' refusal to provide sufficient discovery responses, Apple sent another letter to Plaintiffs noting, *inter alia*, that Apple is not seeking information that may later be obtained from discovery, but instead is seeking "a response to the interrogatories with the facts they are aware of that allegedly support their allegations."  Andrea Decl., Ex. L at 165.  Apple asked Plaintiffs to reconsider their position and to let Apple know by December 31, 2020 if Plaintiffs would be willing to provide responses to the interrogatories by January 4, 2021.  *Id.* at 167.  If not, Apple noted that it would "have no choice but to move the Court to compel Plaintiffs to supplement their responses. . . ."  *Id.*

Plaintiffs ignored Apple's email entirely, and never responded to Apple's request that they reconsider their position.

**b)**     **Apple Seeks Basic Information About Plaintiffs' Allegations So That It Can Adequately Prepare Its Defenses.**

Apple's interrogatories seek basic factual information that Plaintiffs undoubtedly already have in their possession and should be required to produce.  As discussed below,

Apple needs this information so that it can understand the scope of the dispute, prepare its defenses, and determine whether or not claim construction is necessary. *See, e.g.*, *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1302 (Fed. Cir. 2002) ("[A]n inventorship analysis, like an infringement or invalidity analysis, begins as a first step with a construction of each asserted claim to determine the subject matter encompassed thereby."). Without knowledge of Plaintiffs' actual allegations, Apple is left to guess as to the contours of Plaintiffs' allegations and the actual dispute between the parties.

To establish that Plaintiffs' own employees should be listed as co-inventors on the Disputed Patents (and that Plaintiffs thus have an ownership right in the Disputed Patents), Plaintiffs will have to prove that each of the Alleged Inventors:

> (1) contribute[d] in some significant manner to the conception or reduction to practice of the invention, (2) ma[d]e a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) [did] more than merely explain to the real inventors well-known concepts and/or the current state of the art.

*VerHoef*, 888 F.3d at 1366. The burden of establishing these elements through clear and convincing evidence is on Plaintiffs, not Apple. Apple's discovery requests seek the factual information of which Plaintiffs are aware that is related to these elements. *See Shum v. Intel Corp.*, 633 F.3d 1067, 1083 (Fed. Cir. 2010); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004); *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998); *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997).

Plaintiffs' responses do not even come close to providing the information Apple requested. The responses for each of the Disputed Patents essentially amount to: "at least one claim of Apple's patent recites the following elements; we invented this claim; therefore we own Apple's patent." Such generic responses are useless as far as providing Apple with information from which it may determine the contours of the actual dispute. As a particularly egregious example, each of the claims of the Disputed

Patents recites the use of a light emitter/light sources and/or a light detector/receiver/sensor.   Andrea Decl., Ex. B at 37–42.   It is inconceivable that Plaintiffs could be alleging that they invented these elements, as the use of light emitters and detectors in physiological monitors has been known for many decades.  *See, e.g.*, Andrea Decl., Ex. S at 324, lines 8–11 (discussing a 1978 publication discussing a physiological sensor that used "5 LEDs and a plurality of photodiodes"); Ex. T at 341 (disclosing a physiological sensor that illuminates blood "with light at four different wavelengths" and detects reflected light using a "photodetector").   Plaintiffs cannot dispute this.   Many other examples abound.   Plaintiffs provide no information as to which claims, and *which* elements of those claims, they allegedly invented, leaving Apple to guess what Plaintiffs actually contend.

Plaintiffs should identify to Apple the underlying factual information that supports their contention.   Such identification should include, for each claim, the specific subject matter Plaintiffs allege they contributed, which individual(s) invented that specific subject matter and when, what evidence Plaintiffs are aware of that support their contention, and an identification of how the subject matter they supposedly contributed differs from what was known in the prior art.[4]   All of these pieces of information are necessary elements of proof for Plaintiffs' case that do not depend on any documents or information in Apple's possession—and thus, Apple's request for such information from Plaintiffs is not premature at all.   Plaintiffs should provide such information (and should have no problem providing such information) for all subject matter they allege their employees or former employees contributed to the inventions in the Disputed Patents.

Plaintiffs' refusal to provide the information requested by the interrogatory—forcing Apple to move the Court—is confounding, but consistent with Plaintiffs' pattern

---

[4]  In correspondence, Apple suggested the use of a table that would clearly delineate which allegations are relevant to each alleged inventor of each Disputed Patent.  Andrea Decl., Ex. J at 158–59.   Plaintiffs stated that they "do not commit to provide supplemental responses" in this format, but have not provided the information in *any* format.  Andrea Decl., Ex. K at 162.

of refusing to provide information *about their own allegations*.  *See, e.g.,* Dkts. 258-1, 266-1, 271-1.  Indeed, as they have done with their trade secret allegations, Plaintiffs have refused to provide any useful information about their correction of inventorship allegations, while at the same time pushed for broad discovery from Apple relating to their allegations.  *See, e.g.,* Andrea Decl., Ex. M (letter from Plaintiffs pushing for production of expansive categories of documents).  There are only two plausible reasons Plaintiffs could be refusing to provide the requested information:  either Plaintiffs want to keep Apple in the dark so that they can adjust their contentions as discovery proceeds; or they cannot provide the requested information because there is none (which would raise serious questions about their Rule 11 basis for bringing the lack of inventorship and ownership claims in the first place).

To be clear, Apple seeks responses to the interrogatories that set forth the facts of which Plaintiffs are aware at this time—to date, Plaintiffs have not provided those facts. Obviously if Plaintiffs timely learn more responsive facts during discovery, they can supplement, as is their obligation.  But Plaintiffs should not need to engage in discovery in order to identify now the facts of which they are currently aware, which they must have possessed to file this case.

c)    **Plaintiffs Have Never Disputed That The Vast Majority Of Information Apple Seeks Is Relevant.**

The only aspect of Apple's request that Plaintiffs dispute is relevant is Apple's request that Plaintiffs identify how the subject matter each Alleged Inventor differs from the prior art.  *See* Andrea Decl., Ex. K at 162.  Contrary to Plaintiffs' position that they "are not required to affirmatively distinguish each subject matter contribution from any and all prior art" (*id.*), the case law makes clear that such an inquiry is relevant to claims for correction of inventorship.  As noted above, one of the elements of a correction of inventorship claim requires a showing that the alleged inventors did "more than merely explain to the real inventors well-known concepts and/or the current state of the art."  *In re Verhoef*, 888 F.3d at 1366; *see also, e.g.,* *Eastman v. Apple Inc.*, 2018 WL 5982440,

at *6 (N.D. Cal. Nov. 14, 2018) (in dismissing a claim for correction of inventorship, citing *In re Verhoef*, and noting that "[t]he Court cannot reasonably infer that an alleged contribution that simply mirrors prior art and is seemingly unrelated to the novel aspect of the invention provides a basis for a nonjoinder claim"); *Caterpillar Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1377 (Fed. Cir. 2004) ("[A] person will not be a co-inventor if he or she does not more than explain to the real inventors concepts that are well known in the current state of the art."); *Ethicon*, 135 F.3d at 1460 ("One who simply provides the inventor with well-known principles or explains the state of the art without ever having a firm and definite idea of the claimed invention as a whole does not qualify as a joint inventor."); *see also Nartron Corp. v. Schukra U.S.A. Inc.*, 558 F.3d 1352, 1356 (Fed. Cir. 2009) (reversing lower court's summary judgment of inventorship upon a finding that alleged co-inventor's contribution was insignificant "not just because it was in the prior art," but "including it as part of the claimed invention was merely the basic exercise of ordinary skill in the art").  In short, whether or not the Alleged Inventors' contributions are known in the prior art is critical to the correction of inventorship inquiry, and Plaintiffs should be required to identify how the subject matter they allege they contributed differs from what is known in the prior art.

Since all of the information sought by Apple's interrogatories is relevant and narrowly tailored to Plaintiffs' allegations—and Plaintiffs surely have the information in their possession, based at least on the fact that they made the allegations in the first place—Plaintiffs should be required to disclose the information to Apple.  *Diagnostics Sys. Corp. v. Symantec Corp.*, 2008 WL 9396386, at *4 (C.D. Cal. Apr. 4, 2008) (Rule 26 "provides that a party may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party' and the court may order discovery of any matter that 'appears reasonably calculated to lead to the discovery of admissible evidence." (internal quotations omitted)); *see also Kajeet, Inc. v. Qustodio, LLC*, 2019 WL 8060078, at *1 (C.D. Cal. Oct. 22, 2019) ("Relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that

1  could bear on,' any party's claim or defense." (quoting *Oppenheimer Fund, Inc. v.*
2  *Sanders*, 437 U.S. 340, 351 (1978))).

3           **d)    Plaintiffs' Purported Reasons For Refusing To Provide**
4                  **Sufficient Responses Are Baseless.**

5           Plaintiffs' sole basis for arguing that Apple's request for complete responses to
6  the interrogatories is "premature" is that they need discovery from *Apple* and a
7  deposition of Marcelo Lamego.  Andrea Decl., Ex. K at 162.  But the fact that there is
8  still discovery to be exchanged is not a valid reason for Plaintiffs to withhold providing
9  information about their claims that is ***currently***—and has been since the beginning of
10 this suit—in their possession.  Plaintiffs' argument is simply another attempt to delay
11 providing meaningful discovery that sets forth the basis of their claims in this case,
12 despite the fact that the case has been pending for *over a year*.

13          As Apple noted to Plaintiffs in the parties' correspondence, courts (including this
14 Court) have recognized that a party seeking correction of inventorship should provide
15 their "inventorship contentions" early in a case.  Andrea Decl., Ex. L at 166–67; *see also*
16 *Huang v. Cal. Inst. of Tech.*, 2004 WL 2296330, at *3 (C.D. Cal. Feb. 18, 2004) (noting
17 that Plaintiff provided early inventorship contentions and revised those contentions as
18 discovery proceeded); *see also, e.g.*, *Dey, L.P. v. Ivax Pharms., Inc.*, 233 F.R.D. 567,
19 570 (C.D. Cal. 2005) ("Defendants were entitled to know [Plaintiff's] position on
20 inventorship during fact discovery so that they could ask [Plaintiff] to state the facts on
21 which it intended to rely to support its position at trial."); *Hoffman-La Roche Inc. v.*
22 *Orchid Chemicals & Pharm. Ltd.*, 2011 WL 5508485, at *3 (D.N.J. Nov. 7, 2011)
23 (Plaintiffs are "entitled to early notice which pins down Defendants' theory of defense
24 involving inventorship").  As the Northern District of California has acknowledged, the
25 same policy considerations requiring parties to "provide early notice of their
26 infringement and invalidity contentions, and to proceed with diligence in amending
27 those contentions when new information comes to light in the course of discovery," also
28 apply to inventorship contentions.  *See, e.g.*, *Swanson v. ALZA Corp.*, 2014 WL

4441161, at *2 (N.D. Cal. Sept. 9, 2014) (quoting *Golden Hour Data Sys., Inc. v. Health Servs. Integration, Inc.*, 2008 WL 2622794, at *2 (N.D. Cal. July 1, 2008)).

Plaintiffs' argument that they need discovery in order to provide their contentions is not credible.  Plaintiffs "must meet the heavy burden of proving [their] case by clear and convincing evidence and must provide evidence to corroborate the alleged joint inventor's conception." *Eli Lilly*, 376 F.3d at 1358 (internal citations omitted).  The reason for this is that the "inventors as named in an issued patent are presumed to be correct." *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d at 980 (quoting *Amax Fly Ash Corp. v. United States*, 514 F.2d 1041, 1047 (1975)); *Eastman v. Apple, Inc.*, 2019 WL 1559015, at *4 (N.D. Cal. Apr. 10, 2019) ("named inventors do not bear the burden of producing such evidence").  Thus, Plaintiffs do not need discovery from Apple and/or third party Lamego to provide their contentions.

Plaintiffs' attempts to delay providing factual information regarding their contentions is exactly the type of "shifting sands" approach the Federal Circuit has cautioned against in patent cases.  *See O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006).  In order for Apple to understand Plaintiffs' allegations, Plaintiffs should provide information regarding those allegations now, and supplement their responses as discovery proceeds, as required by Rule 26.  For now, however, Apple is left without adequate responses to their interrogatories, which were served nine months ago, and Plaintiffs' responses are so generic and conclusory that Apple is left guessing as to what specific subject matter Plaintiffs allege to have invented.  Presumably, Plaintiffs had a Rule 11 basis to bring their claims for correction of inventorship, and Apple is entitled to know the facts that formed that basis.  This lack of disclosure severely prejudices Apple's ability to investigate Plaintiffs' allegations and prepare its defenses.  The Court should put a stop to Plaintiffs' continued attempts to delay this case and order Plaintiffs to supplement their responses to include the information in the tabular format requested in Apple's letter dated December 10, 2020.  Andrea Decl., Ex. J at 159.

### 2.  Plaintiffs' Position

Apple's Interrogatory Nos. 4 and 5 are exceptionally broad and seek information that is neither relevant nor proportional to the needs of the case.  Plaintiffs nevertheless provided a reasonable response and agreed to supplement as discovery progresses.  That is more than sufficient, especially because the interrogatories are classic contention interrogatories that are best answered later in discovery.  Instead of allowing discovery to progress in an orderly fashion, Apple demands that Plaintiffs identify the positions and supporting factual evidence that Plaintiffs will present at trial so Apple can purportedly try to lock them in before Apple provides any discovery.  Apple's approach is inconsistent with the purpose of discovery.  If parties were expected to prove their claims at the outset of litigation, there would be no need for discovery.  Apple's arguments are also inconsistent with Apple's approach to its own discovery obligations.  Apple has never suggested it has, or could, articulate all of its legal theories and identify all of the evidence on which it may rely before taking any discovery of Plaintiffs.  The court should reject Apple's one-sided approach to discovery.

### a)  Apple's Interrogatories Are Overbroad And Seek Information That Is Neither Relevant Nor Proportional To The Needs Of This Case

Apple repeatedly argues these interrogatories seek only "basic information" about Plaintiffs' claims.  Jt. Stip. at 10, 11, 19.  That is not true.  Among other things, these Interrogatories demand that Plaintiffs provide their legal contentions as to (1) the "column and line number" of all subject matter invented by each person, (2) the "circumstances under which" each person conceived of and/or reduced to practice such information, (3) when such conception or reduction to practice occurred, (4) a description of each person's efforts, (5) an identification of all corroborating evidence, and (6) a "detail[ed]" description of "all evidence" to support Plaintiffs' contentions.  While it is unclear if Apple is narrowing its requests, Apple's joint stipulation demands, for "each claim," (1) the "specific subject matter Plaintiffs allege they contributed," (2)

which individual(s) invented that specific subject matter and when, (3) the "evidence" that supports Plaintiffs' legal contentions, and (4) an "identification of how the subject matter they supposedly contributed differs from what was known in the prior art." Jt. Stip. at 20.

Interrogatories seeking "all facts" and "all evidence" relating to contentions are overbroad, especially at this stage of the case. *See Anokiwave, Inc. v. Rebeiz*, 2019 WL 3935817, at *3 (S.D. Cal. Aug. 20, 2019) ("because the contention interrogatories seek 'all facts' supporting Plaintiff's allegations, they are overly broad and unduly burdensome on their face"). The interrogatories are also overbroad because they ask for detailed and complex legal positions as to each separate person who contributed to the claimed subject matter in numerous patents and applications.

Apple's interrogatories also demand that Plaintiffs identify each individual's contribution "by column and line number" of the specification. As Plaintiffs explained in their objections, such information is irrelevant because "inventorship is determined with respect to the subject matter ***claimed*** in a patent, not the subject matter disclosed in a patent specification." Ex. E at 10; *see also Egenera*, 972 F.3d at 1376 ("like validity, inventorship is a ***claim-by-claim*** question"). It is also irrelevant because development does not necessarily occur in that manner. Plaintiffs' interrogatory responses explained that numerous individuals collaborated on the claimed subject matter. Parsing precisely who "invented" every phrase or limitation in each claim is not consistent with how the information was developed and shared at Plaintiffs. Nor is such a response necessary for Plaintiffs to prove their claims because a person is properly named as an inventor of a patent if they contributed to any aspect of any claim.

Finally, Apple asks Plaintiffs to engage in a burdensome exercise of explaining "how the subject matter they supposedly contributed differs from what was known in the prior art." Jt. Stip. at 20. Apple's interrogatories did not request that. Ex. E at 9-10, 15-16. Moreover, Apple misunderstands the relevant inquiry for inventorship. There is no requirement that an inventor contribute subject matter that "differs from what was

known in the prior art." Jt. Stip. at 20. "Virtually all inventions are combinations and virtually all are combinations of old elements." *Env't Designs Ltd.*, 713 F.2d at 698. The standard is that an inventor must do more than merely explain "***well-known*** concepts and/or the ***current state*** of the art," *In re VerHoef*, 888 F.3d at 1365. Thus, Apple's demand that Plaintiffs affirmatively distinguish contributions from "what was ***known*** in the prior art" requests legally irrelevant information and is not proportional to the needs of this case. Even if Apple sought relevant information, its request is overbroad.

Apple's cases do not hold otherwise. Most merely addressed general inventorship standards. *See Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004); *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998); *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997); *Caterpillar Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1377 (Fed. Cir. 2004); *Nartron Corp. v. Schukra U.S.A. Inc.*, 558 F.3d 1352, 1356–57 (Fed. Cir. 2009). Apple's remaining cited case granted a motion to dismiss with leave to amend after finding the alleged contribution as a whole was "well-known in the prior art." *Eastman v. Apple Inc.*, 2018 WL 5982440, at *6 (N.D. Cal. Nov. 14, 2018). None of Apple's cited cases ordered a plaintiff to affirmatively distinguish each individual's contribution over the prior art, particularly where no prior art has been identified.

### b)   Interrogatory Nos. 4 and 5 Are Improper Early Contention Interrogatories

As discussed above, Interrogatory Nos. 4 and 5 ask for Plaintiffs' contentions on who invented each aspect of the claimed subject matter, how they invented it, and more. Ex. E at 9-10, 15-16. These contention interrogatories are objectionable because they assume positions that Plaintiffs have never taken. Plaintiffs explained that Lamego obtained the claimed subject matter "from discussions with, or jointly conceived it with," numerous individuals at Plaintiffs. *See, e.g.*, Ex. A at Ex. B at 13-16, 19. Apple's demand that Plaintiffs identify who "invented" every word in every claim, and how that

Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. to Compel        27        Case No. 8:20-cv-00048-JVS (JDEx)

subject matter differs from the prior art, is inconsistent with the facts already disclosed regarding how the information was developed and shared at Plaintiffs.

It is also still early in the case.  The pleadings have not yet closed, Apple has not pleaded or identified its defenses, the parties are just beginning to discuss ESI discovery, and there have been no depositions.  Kachner Decl. ¶ 2.  "[C]ourts tend to deny contention interrogatories filed before substantial discovery has taken place."  *See AMEC Env't & Infrastructure, Inc. v. Geosyntec Consultants, Inc.*, 2013 WL 3923459, at \*2 (N.D. Cal. July 26, 2013).  Accordingly, "it is generally accepted that courts '[will] ***not*** order responses to contention interrogatories until late in the pretrial period' and that 'the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period.'"  *In re Allergan, Inc. Sec. Litig.*, 2016 WL 10719393, at \*3 (C.D. Cal. Sept. 23, 2016) (quoting *In re Convergent*, 108 F.R.D. at 333).  Apple's approach of serving early contention interrogatories that "systematically track all the allegations in an opposing party's pleadings is a serious form of discovery abuse."  *In re Convergent*, 108 F.R.D. at 333.  Such interrogatories can be "almost mindlessly generated, can be used to impose great burdens on opponents, and can generate a great deal of counterproductive friction between parties and counsel."  *Id.*

In prior briefing, Apple has argued that Plaintiffs' reliance on *Convergent* "is wrong because '*Convergent* is not controlling authority,' and this District 'does not find it persuasive as a rule of general application.'"  Dkt. 271-2 at 2 (quoting *Kraft Ams. v. Oldcastle Precast*, 2013 WL 12125759, at \*7 (C.D. Cal. Dec. 18, 2013)).  Apple implies *Kraft* held "this District" rejects *Convergent*.  In reality, *Kraft* merely declined to follow *Convergent* in that particular case.  *See Kraft*, 2013 WL 12125759, at \*7 ("Whether contention interrogatories are appropriate is appropriately addressed on a case-by-case and interrogatory-by-interrogatory basis.")  Contrary to Apple's assertions, courts in this District routinely follow *Convergent* in finding contention interrogatories are best answered towards the ***end*** of discovery.  *See, e.g., In re Allergan*, 2016 WL 10719393,

at *3 (agreeing with *Convergent* and denying motion to compel); *Kas*, 2011 WL 13234106, at *3 (same); *Sec. & Exch. Comm'n v. Moshayedi*, 2013 WL 12172127, at *1 (C.D. Cal. Mar. 21, 2013) (same); *Timken Co. v. Wilshire Assocs. Inc.*, 2013 WL 12141419, at *4 (C.D. Cal. Jan. 10, 2013) (same); *Open Text Inc v. Northwell Health, Inc.*, 2020 WL 6050595, at *4 (C.D. Cal. Aug. 6, 2020) (agreeing with *Convergent* but granting motion because "discovery closes in less than a month").

Apple claims that courts have found that parties should provide "inventorship contentions early in a case." Jt. Stip. at 23-24. Apple cites two cases from this District, but both required contentions far later in the case. *See Dey, L.P. v. Ivax Pharm., Inc.*, 233 F.R.D. 567, 570-71 (C.D. Cal. 2005) (granting motion where plaintiff stated it would not provide its contentions until after the close of evidence at trial); *Huang v. Cal. Inst. of Tech.*, (C.D. Cal. June 19, 2003), Dkt. No. 40 (setting accelerated schedule whereby the plaintiff provided initial contentions three months before the close of fact discovery and final contentions after the close of fact discovery). Apple also cites *Hoffmann-La Roche Inc. v. Orchid Chems. & Pharm. Ltd.*, 2011 WL 5508485 (D.N.J. Nov. 7, 2011). That case found that an inventorship ***defense*** to a patent infringement claim was "an invalidity defense under § 102(f)" that "trigger[ed]" requirements of the patent local rules. Finally, Apple cites *Swanson v. ALZA Corp.*, 2014 WL 4441161, at *2 (N.D. Cal. Sept. 9, 2014). That case did not involve a motion to compel contention interrogatories. *Swanson* addressed whether a party could amend contentions later in the case even though the parties stipulated to a unique schedule to provide final contentions early in the case. *See* Ex. 2 at 2. None of Apple's cases required final responses to inventorship contention interrogatories in circumstances similar to this case.

### c)   Plaintiffs' Responses Are Sufficient At This Time

Even though Apple's requests are facially overbroad and seek premature contentions, Plaintiffs responded and confirmed they would supplement as they learned additional facts. In another case, Apple successfully argued such responses to contention interrogatories were sufficient even though it was "***not*** early in the case." *See Qualcomm*

*Inc. v. Apple Inc.*, 2018 WL 5829940, at *2 (S.D. Cal. Nov. 7, 2018) (denying motion to compel where Apple "identified certain relevant licenses and states that it will identify others as its investigation proceeds and third parties are given notice").

Apple complains that Plaintiffs' responses "do not even come close" to providing the required information. Jt. Stip. at 20. That is not true. In response to Interrogatory No. 4, Plaintiffs identified at least one claim for each disputed patent, recited the claim elements at issue, and explained that they believe Lamego obtained the claimed subject matter from, or jointly conceived of it with, specifically named Masimo or Cercacor employees. Plaintiffs explained that discovery only recently began and agreed to supplement as they learn new information. Ex. E at 10-15. In response to Interrogatory No. 5, Plaintiffs incorporated their response to Interrogatory No. 4 and provided additional information about Lamego. Plaintiffs explained Lamego's obligation to assign to Masimo and/or Cercacor. Plaintiffs identified and quoted Lamego's relevant obligations to assign and similar obligations of other employees of Plaintiffs. *Id.* at 16-20. Plaintiffs agreed to supplement as they learn information in discovery. *Id.* at 20.

Apple argues it is "particularly egregious" that Plaintiffs' response mentioned light emitters or detectors and argues it is "inconceivable" that Plaintiffs could allege they invented those elements. Jt. Stip. at 20. Once again, Apple takes a small snippet of Plaintiffs' response out of context. Plaintiffs nowhere claimed to have invented light emitters or detectors. Plaintiffs' contentions concern entire patent claims. Apple avoids arguing the entire claims are disclosed in the prior art. Any such argument would be inconsistent with Apple's successful argument to the Patent Office that those claims were novel and non-obvious over the prior art. Apple has not taken the position that its own claims are invalid. Moreover, unlike validity, there is no requirement that a particular inventor's contribution be novel over the prior art. As discussed, "[v]irtually all inventions are combinations and virtually all are combinations of old elements." *Env't Designs Ltd.*, 713 F.2d at 698.

Apple also argues that Plaintiffs should provide contentions now because Plaintiffs bear the burden of proving their inventorship claims. Jt. Stip. at 10, 24. Apple cites no authority to support that assertion. Just because Plaintiffs bear the burden of proof does not mean Apple's early contention interrogatories are proper. Indeed, one purpose of discovery is to obtain information from an opposing party to support a party's claims or defenses. *Surfvivor Media, Inc. v. Survivor Prods.* 406 F.3d 625, 635 (9th Cir. 2005) (citing Fed. R. Civ. P. 26(b)(1)).

Finally, Apple argues its contention interrogatories are not premature because they do "not depend on any documents or information in Apple's possession . . .." Jt. Stip. at 20-21. That too is incorrect. Lamego is a former employee of Plaintiffs who worked at Apple in 2014 and then started his own company. Because these interrogatories ask detailed questions about the contributions of Marcelo Lamego and others who worked with him, Plaintiffs need discovery from Lamego and others. Lamego is a third-party to whom Plaintiffs cannot talk because they are currently suing him and his new company for trade secret misappropriation and patent infringement. *See Masimo v. True Wearables*, Case No. 18-cv-02001-JVS-JVE (C.D. Cal.). Moreover, Apple's documents, or lack of documents, may establish that Lamego could not have made his allegedly inventive contribution while employed at Apple. Apple will likely try to prove the opposite; that Apple employees contributed some or all of the subject matter. Accordingly, information in Apple's possession is relevant to Plaintiffs' interrogatory responses. For many months, however, Apple has withheld ownership discovery, despite Plaintiffs' many attempts to obtain that discovery.

- On August 17, Apple agreed to produce responsive documents regarding Plaintiffs' inventorship and ownership claims. Ex. 3 at 76-103.
- When Apple had not produced any documents after **six weeks**, Plaintiffs wrote to request a meet and confer. Ex. 4. Apple committed to produce documents on a "rolling basis," but did not say when. Ex. 5 at 5.

- When Apple had not produced its documents *four weeks* later, Plaintiffs followed up again and Apple again stated it would produce documents on a "rolling basis." Ex. 6 at 4; Ex. 7 at 4.

- At the parties' December 1, 2020, meet and confer, Apple again refused to commit to producing documents and argued there was no deadline to do so. Ex. 8 at 3.

- Apple produced a small handful of documents on December 16, but omitted critical documents. Kachner Decl. ¶ 3. On December 30, Plaintiffs again wrote to Apple and identified categories of missing documents. *See* Ex. M.

- On January 13, Apple continued to claim it would produce documents on a "rolling basis" at some unidentified date. Ex. 9 at 1-2.

Apple has also withheld documents related to Plaintiffs' trade secret claims, which are relevant here because Plaintiffs assert that Apple misappropriated some of Plaintiffs' trade secrets by publishing them in some of the patents that are the subject of Plaintiffs' inventorship/ownership claims. *See e.g.*, Dkt. No. 233 at ¶¶ 231, 239, 247-249. Plaintiffs served a Section 2019.210 statement on October 9, 2020, and revised it on November 6, 2020, to address Apple's stated concerns. *See* Ex. 10. Apple argued Plaintiffs' statement was insufficient and refused to meet and confer to discuss Plaintiffs' requests for production until after the Court resolved Apple's Section 2019.210 motion. Ex. 5 at 2; Ex. 7 at 4; Ex. 8 at 1-3; Ex. 9 at 2-3; Ex. M at 1-2. On January 21, the Court resolved that motion by rejecting Apple's position and finding Plaintiffs had satisfied Section 2019.210. Ex. 11.

Apple should not be permitted to demand detailed contentions early in discovery while withholding discovery that is relevant to those contentions.

### d)    Apple's Remaining Arguments Are Meritless

Apple makes other assertions that Plaintiffs contend are not relevant to the issue before this Court. Nevertheless, Plaintiffs briefly address them for completeness.

First, Apple argues that Plaintiffs' response to Apple's burdensome contention interrogatories is part of a "pattern" of refusing to provide information.  Jt. Stip. at 21.  In support, Apple cites its own briefing on its Motion To Compel Plaintiffs To Comply With Section 2019.210 (Dkt. Nos. 258-1, 266-1).  This Court rejected that argument when it denied Apple's motion and confirmed that Plaintiffs **had** satisfied Section 2019.210. Ex. 11.  Apple also cites its own Motion To Compel Supplemental Responses to Interrogatories 6, 10, 11, 13.  Dkt. No. 271-1.  That motion is also another attempt by Apple to demand premature responses to contention interrogatories.  Dkt. No. 271-1 at 29-30, 54-55, 58, 60-61, 69-72.

Second, Apple asserts that the reason Plaintiffs have not complied with Apple's demands is because Plaintiffs supposedly "want to keep Apple in the dark so that they can adjust their contentions as discovery proceeds."  Jt. Stip. at 21.  Apple provides nothing to support its attempt to attribute motive to Plaintiffs.  Plaintiffs provided reasonable responses at this time and committed to supplement as they learn more facts, just as required by the Federal Rules.  There is nothing nefarious or improper about recognizing that, as in all cases, Plaintiffs may use the discovery they obtain from their adversary to support and refine their contentions.

Third, Apple repeatedly suggests Plaintiffs had no proper basis to file suit under Rule 11.  *See* Jt. Stip. at 11, 16, 21, 24-25.  That insinuation is baseless.  While Apple's initial motion to dismiss challenged Plaintiffs' inventorship and ownership claims, Apple dropped its challenge after Plaintiffs voluntarily amended to address Apple's minor complaints.  *Compare* Dkt. No. 16-1 *with* Dkt. No. 38-1.  Regardless, this Court rejected the same argument in another case.  *Kas v. Mercedes-Benz U.S.A., LLC*, 2011 WL 13234106, at *3 (C.D. Cal. Nov. 8, 2011) (rejecting the argument that plaintiffs should answer contention interrogatories and rejecting the premise that "Plaintiff was required to have had evidence to support these allegations when she filed her Complaint").

Fourth, Apple cites a patent claim-construction case and accuses Plaintiffs of in engaging in a "shifting sands" approach to discovery. Jt. Stip. at 24 (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006)). But Apple has pointed to nothing to show any changes in Plaintiffs' theories. Plaintiffs provided a reasonable response based on currently available information and agreed to supplement as they learn more. Moreover, Apple does not identify any aspect of Plaintiffs' inventorship and ownership claims that could improperly "shift" based on Apple's discovery. Apple's concern appears to be that Plaintiffs will use discovery from Apple to prove Plaintiffs' claims. That is one of the main purposes of discovery.

Finally, Apple suggests Plaintiffs are attempting to "delay this case." Jt. Stip. at 25. The record rebuts Apple's accusations of "delay." Apple states it served its contention interrogatories "Nine Months Ago." Jt. Stip. at 16. Apple omits that Plaintiffs served their initial responses in May of 2020 and Apple's initial letters identified no purported deficiency in Plaintiffs' response to Interrogatory No. 4. *See* Exs. C and D. Apple identified no deficiencies in Interrogatory No. 4 until *six months later* in November of 2020. *See* Ex. H. Apple conducted the initial meet and confer on Interrogatory No. 5 in June of 2020, but waited *months* before following up in November of 2020. *See* Ex. H. Nothing supports Apple's continued rhetoric accusing Plaintiffs of delay.[5]

**B.      Apple's Interrogatory No. 23**

**      1.      Apple's Position**

Apple's Interrogatory No. 23, served October 6, 2020, seeks all facts of which Plaintiffs are aware that relate to each of the Disputed Patents, including the circumstances and dates relating to Plaintiffs' first awareness of each of the Disputed

---

[5] Apple argues Plaintiffs "ignored" Apple's most recent letter. Jt. Stip. at 18. Apple omits that it sent its letter the day before Christmas Eve, demanded that Plaintiffs agree to supplement by New Years Eve, and demanded Plaintiffs provide the requested supplement one business day after the holidays. *See* Ex. L.

Patents.  Andrea Decl., Ex. F at 138.  In response to Plaintiffs' objections (*id.*, Ex. G at 147–48), Apple clarified during the meet and confer and in follow-up correspondence that the Interrogatory is seeking "facts about Plaintiffs' knowledge, awareness, and actions taken with respect to each [Disputed Patent]" and listed the types of information it was seeking.  Andrea Decl., Ex. J at 159–60 at 2–3.  Specifically, Apple stated that it was seeking the following information:

- the date Plaintiffs first learned about each Disputed Patent;

- how Plaintiffs learned about each Disputed Patent;

- who first learned about each Disputed Patent, who they discussed each [Disputed Patent] with, and when those discussions occurred; and

- what actions Plaintiffs took with respect to each [Disputed Patent] after they learned of them, including but not limited to internal discussions, discussions with prosecution counsel, . . . any steps that were taken to investigate the inventorship/ownership of each [Disputed Patent], and any alleged harm Plaintiffs believe they suffered as a result of Apple's filing of each [Disputed Patent].

*Id.*  Apple explained that it is aware that Plaintiffs identified certain of the Disputed Patents to the U.S. Patent & Trademark Office ("PTO") in information disclosure statements filed during prosecution of Plaintiffs' own patents.  *Id.* at 160.  Apple further stated during the meet and confer that the fact that the Disputed Patents were cited to the PTO long before they filed this litigation demonstrated that Plaintiffs were clearly aware of the Disputed Patents years before they filed their initial Complaint.  To understand more about Plaintiffs' actions, Apple filed this Interrogatory seeking information about when Plaintiffs first learned of the Disputed Patents and what steps were taken once Plaintiffs learned about the patents.

    After the meet and confer, Plaintiffs sent a letter asking why the information Apple seeks is relevant and indicated that, absent such an explanation, "Plaintiffs maintain that this interrogatory seeks information not relevant to any party's claims or

Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. to Compel          35          Case No. 8:20-cv-00048-JVS (JDEx)

defenses because the information sought would not be relevant to any inquiry for inventorship, and is therefor is [sic] not proportional to any needs in the case." Andrea Decl., Ex. K at 162–63. Apple responded that the information sought is "relevant to Apple's potential defenses to Plaintiffs' claims—if, for example, Plaintiffs learned of the [Disputed Patents] and sat on them for years, as it appears they did, that would be relevant to defenses such as waiver, estoppel, and unclean hands." Andrea Decl., Ex. L at 166. Accordingly, Apple urged Plaintiffs to reconsider their position, but Plaintiffs ignored Apple's response, necessitating the present motion. *Id.* at 167.

There should be no dispute that the information sought by Interrogatory No. 23 is relevant to Plaintiffs' correction of inventorship and ownership allegations (*see* Dkt. 233 ¶¶ 253–349 (Counts 14–26)), and more specifically to Apple's potential equitable defenses to those allegations. The subject matter in the Disputed Patents was published by the PTO starting in 2016, and, as noted below, Plaintiffs themselves cited several of the Disputed Patents to the PTO in conjunction with their own patent applications in 2018, 2019, and 2020. For example, the following patents subject to Plaintiffs' inventorship and ownership allegations were cited:

- U.S. Patent No. 10,078,052 ("the '052 patent"), the subject of Counts 14 and 20 in this action (TAC ¶¶ 253–59, 295–302), was published in March 3, 2016. Plaintiffs cited the '052 patent in four separate Information Disclosure Statements ("IDSs") to the PTO (three in 2018 and one in 2019). Andrea Decl., Ex. N at 175, Ex. O at 203, Ex. P at 240, Ex. Q at 255.

- U.S. Patent 9,723,997 ("the '997 patent"), the subject of Counts 18 and 24 in this action (TAC ¶¶ 281–87, 327–34), was published on August 8, 2017. Plaintiffs cited the '997 patent in three separate IDSs to the PTO in 2018. Andrea Decl., Ex. N at 174, Ex. O at 203, Ex. P at 240.

- U.S. Patent 9,952,095 ("the '095 patent"), the subject of Counts 16 and 22 in this action (TAC ¶¶ 267–73, 311–18), was published on April 24,

2018.  Plaintiffs cited the '095 patent in three separate IDSs to the PTO in 2018.  Andrea Decl., Ex. N at 175, Ex. O at 203, Ex. P at 240.

- U.S. Patent 10,247,670 ("the '670 patent"), the subject of Counts 15 and 21 in this action (TAC ¶¶ 260–66, 303–10), was published on December 20, 2018.  Plaintiffs cited the '670 patent in an IDS to the PTO in 2019. Andrea Decl., Ex. Q at 255.

Plaintiffs were indisputably aware of these Disputed Patents (and presumably others) well before they filed this suit early last year; Apple's Interrogatory No. 23 seeks information about Plaintiffs' first awareness of the Disputed Patents and what steps they took upon learning about the patents.  If Plaintiffs were aware of the Disputed Patents and their potential claims for correction of inventorship/ownership and did nothing for years, that may give rise to various equitable defenses such as laches and equitable estoppel.

"[T]he defenses of laches and estoppel have been applied in actions" involving correction of inventorship.  *Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1573 (Fed. Cir. 1994); *see also Ferring B.V. v. Allergan, Inc.*, 980 F.3d 841, 853 (Fed. Cir. 2020) (analyzing equitable estoppel defense to correction of inventorship allegations); *see also Degui Chen v. Jung*, 2018 WL 7500274, at *1 (C.D. Cal. Sept. 12, 2018) (declining to dismiss affirmative defenses of unclean hands, waiver, equitable estoppel and laches alleged against improper inventorship claims).  Here, the question of whether Plaintiffs sat on their claims to their unjust benefit is at the heart of Apple's potential equitable defenses.  *See, e.g., Studio & Partners, s.r.l. v. Kl*, 2007 WL 3342597, at *5 n.7 (E.D. Wis. Nov. 7, 2007) ("the entire purpose of laches and other equitable defenses is to prevent a party from sitting on his rights"); *Peikin v. Kenner*, 2008 WL 11411358, at *7 (C.D. Cal. Oct. 24, 2008) ("The defense of equitable estoppel is intended to promote equity in a case by preventing a party from asserting its rights where the party 'has so conducted [itself] that it would be contrary to equity and good conscience' to permit the party to recover." (quoting *Granite State Ins. Comp. v. Smart Modular Techs., Inc.*, 76

Gibson, Dunn &
Crutcher LLP

Joint Stip. Re Apple's Mot. to Compel        37        Case No. 8:20-cv-00048-JVS (JDEx)

F.3d 1023, 1027 (9th Cir. 1996))); *Vita-Herb Nutriceuticals Inc. v. Probiohealth LLC*, 2012 WL 3903454, at \*9 (C.D. Cal. Sept. 6, 2012).

For example, the defense of laches seeks to prevent a plaintiff who with "full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950–51 (9th Cir. 2001) (internal citations omitted); *see also James v. J2 Cloud Servs., LLC*, 823 F. App'x 945, 948 n.5 (Fed. Cir. 2020); *Intel Corp. v. Tela Innovations, Inc.*, 2020 WL 7868111, at \*13 (N.D. Cal. Dec. 22, 2020). As the Federal Circuit has made clear, "[l]aches is an equitable defense that may bar an inventorship claim." *Serdarevic v. Advanced Med. Optics., Inc.,* 532 F.3d 1352, 1358 (Fed. Cir. 2008). To prevail on a defense of laches, a defendant must prove: (1) "unreasonable delay by the plaintiff" and (2) "prejudice to itself." *Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1036 (9th Cir. 2000) (internal citations omitted). "What constitutes unreasonable delay largely depends on the circumstances of each particular case." *Peikin*, 2008 WL 11411358, at \*7 (citation omitted). Apple simply seeks to learn the facts and circumstances that may be relevant to such a defense and other potential equitable defenses in this case. Plaintiffs' actions with respect to the Disputed Patents suggest that those facts exist.

Moreover, Plaintiffs' awareness of the publication of the Disputed Patents is directly relevant to Plaintiffs' trade secret allegations. Plaintiffs' theory of trade secret misappropriation in this case includes an allegation that Apple improperly disclosed, through publication of patent applications, certain alleged trade secrets belonging to Masimo. TAC ¶¶ 231–39. One of these patent applications was issued as the '997 patent, a patent that is also the subject of Plaintiffs' inventorship and ownership claims. *Id.* ¶¶ 281–87, 327–34. If Plaintiffs learned of the publication of those alleged trade secrets and then did *nothing* about that publication, as appears to be the case, that would bear directly on whether Plaintiffs took adequate steps to reasonably maintain the alleged trade secrets as secrets. *See Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 654 (N.D. Cal. 1993) (where, as here, a plaintiff alleges that the defendant misappropriated

one trade secret, "it is unreasonable for that plaintiff simply to assume that that defendant can be trusted to protect other secrets"); *see also Alamar Biosciences Inc. v. Difco Labs. Inc.*, 1996 WL 648286, at *6 (E.D. Cal. Oct. 13, 1996) ("[Trade secret plaintiff] must exercise eternal vigilance.  This calls for constant warnings to all . . . to whom the trade secret has become known and obtaining from each an agreement, preferably in writing, acknowledging its secrecy and promising to respect it.").  This provides an independent reason why Plaintiffs should be compelled to provide the basic information Interrogatory No. 23 seeks.

Furthermore, Plaintiffs have alleged that Lamego agreed not to compete with them and "volunteered that he would not work on technology similar to Plaintiffs' technology."  TAC ¶¶ 18, 23, 225–29, 248.  Therefore, when Plaintiffs learned that Lamego was an inventor on these patents is also relevant to Plaintiffs' knowledge as to when Lamego allegedly breached the agreements with Plaintiffs.  *Intermedics*, 822 F. Supp. at 652 ("courts' central concern . . . is with identifying the point at which the first apparent breach of the confidential relationship occurred, or when plaintiff knew or should have known about that first breach").

In short, the information Apple has requested from Plaintiffs is relevant to the claims and defenses in this case, and Plaintiffs should have agreed to provide the information without requiring Court intervention.  As discussed above with respect to Interrogatory Nos. 4–5, the Court should put a stop to Plaintiffs' continued attempts to delay this case and order Plaintiffs to supplement their response to Interrogatory No. 23 to include the information requested in Apple's letter dated December 10, 2020.  Andrea Decl., Ex. K at 158–59.

## 2.   Plaintiffs' Position

### a)   Apple's Interrogatory Is Overbroad On Its Face

Interrogatory No. 23 asks Plaintiffs to "[i]dentify all facts of which You are aware that relate to each of the Apple Patents and each of the Apple Applications."  Ex. G at 5.  During the parties meet and confer, Plaintiffs explained "there was no apparent

boundary to this interrogatory" and requested that Apple identify the specific information sought. Ex. K at 1. Plaintiffs expected Apple might limit the interrogatory to the information requested in the second sentence of the interrogatory ("Your response should identify at least the circumstances and dates relating to your first awareness of each of the Apple Patents and each of the Apple Applications"). Instead, Apple identified several broad topics of information that it sought by way of "example," while refusing to narrow its request. Ex. J at 2. In particular, Apple's letter stated:

> **For example**, Plaintiffs should identify **at least** the following information for each Apple Patent or Application:
>
> - the date Plaintiffs first learned about each Apple Patent or Application;
> - how Plaintiffs learned about each Apple Patent or Application;
> - who first learned about each Apple Patent or Application, who they discussed each Apple Patent or Application with, and when those discussions occurred; and
> - what actions Plaintiffs took with respect to each Apple Patent or Application after they learned of them, including but not limited to internal discussions, discussions with prosecution counsel and litigation counsel (while the subject matter of those discussions may be privilege, the date on which they occurred and who was present is not privileged), any steps that were taken to investigate the inventorship/ownership of each Apple Patent or Application, and any alleged harm Plaintiffs believe they suffered as a result of Apple's filing of each Apple Patent or Application. **As an example**, Apple explained that we are aware that Plaintiffs cited specific Apple Patents on information disclosure statements submitted in connection with their own patent applications, and the facts and circumstances surrounding those citations is directly relevant to this case (as well as facts surrounding any other actions Plaintiffs took after learning of the Apple Patents and Application).

Ex. J at 2-3.

In its motion to compel, Apple suggests for the first time that it may be narrowing this interrogatory to four specific bullet points. *See* Jt. Stip. at 35. Apple purports to

quote its letter, but alters the text of the bullet points and omits that its letter used the language "at least" and "for example." *Compare* Jt. Stip. at 35 *with* Ex. J. at 2-3. It remains unclear whether Apple is actually narrowing its request and, if so, whether it is narrowing its request to the bullet points set forth in its letter or the bullet points in its portion of the joint stipulation. If Apple is narrowing its interrogatory, it should make that clear.

### b)     Apple Seeks Information That Is Neither Relevant Nor Proportional To The Needs Of The Case

Even if Apple had narrowed its interrogatory through this Motion, Apple's narrowed request remains overbroad and not proportional to the needs of this case. Apple's bullet point list seeks mainly privileged information by targeting "discussions with prosecution counsel." Jt. Stip. at 35. Apple's letter also targeted "discussions with . . . litigation counsel," though Apple omitted this request in the joint stipulation. *Compare* Ex. J at 2 *with* Jt. Stip. at 35. Apple's arguments in the joint stipulation also focus heavily on Plaintiffs' attorney's citation of the Disputed Patents to the PTO in conjunction with Plaintiffs' patent applications. Thus, Apple's interrogatory calls for privileged information with both prosecution and litigation counsel. Apple's portion of the joint stipulation omits its prior acknowledgement that "while the subject matter of those discussions may be privileged, the date on which they occurred and who was present is not privileged." *See* Ex. J at 2. If all Apple sought was the date of a meeting and who was present, Plaintiffs would have provided such information.[6] However, the additional discovery requested by Apple's bullet points targets privileged communications.

Apple's broad discovery demand is also not justified by its relevancy arguments. First, Apple argues this interrogatory is relevant to several "***potential*** defenses,"

---

[6] Plaintiffs currently understand they likely learned of some of the patents only shortly before the December 2018 IDS filings and the remainder of the patents in 2019 or 2020.

including waiver, estoppel, unclean hands, and laches.  Jt. Stip. at 36.  But Apple has never identified any of those "potential defenses" to Plaintiffs.  Apple has not yet filed an answer and did not disclose any of these defenses in response to Plaintiffs' interrogatory seeking disclosure of Apple's defenses.  Ex. 1 at 3.  Apple's current interrogatory response states: "Apple's affirmative defenses ***do not yet exist in this action*** because it has not filed an Answer to the Complaint in this Action."  Ex. 1 at 4.  Apple identified some defenses to other claims, but did not identify ***any*** defenses to Plaintiffs' ownership/inventorship claims.  *Id.*  The Court should not order discovery as to defenses that Apple has not pleaded and has maintained "do not yet exist."

Apple also recently obtained an extension to answer Plaintiffs' complaint so that Apple's answer is due on February 4—the same day supplemental memorandums are due on this motion.  *See* L.R. 37-2.3.  Apple has not stated whether it will assert waiver, estoppel, unclean hands, or laches defenses in its answer.  If it does, the timing of the present Motion will prevent Plaintiffs from having any opportunity to explain whether Apple's actual defenses warrant the discovery Apple seeks.  Plaintiffs presently have no understanding of what defenses Apple will plead nor the basis for any such defenses.

Apple suggests its "potential" defenses will be meritorious because "Plaintiffs were clearly aware of the Disputed Patents years before they filed their initial Complaint."  Jt. Stip. at 35.  This acknowledges that the defenses do not yet exist and Apple has not pleaded any of the underlying contentions.  Moreover, Apple's support are documents dated no earlier than December 2018—just 13 months before Plaintiffs filed suit.  *See* Jt. Stip. at 36-37 (citing Exs. N-Q); Dkt. No. 1.

Apple's cases also fail to support Apple's motion.  Apple cites cases that describe the elements for laches and equitable estoppel.  These cases highlight that both defenses require facts that Apple has never contended exist.  *See e.g., Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1036 (9th Cir. 2000) (laches requires defendant to prove "prejudice to itself"); *Intel Corp. v. Tela Innovations, Inc.*, 2020 WL 7868111, at *15 (N.D. Cal. Dec. 22, 2020) (equitable estoppel bars claims only when there is "prejudice to the

1    defendant as a result of the delay," "affirmative conduct by the party against whom

2    estoppel is asserted inducing the belief that it had abandoned its claim", and "detrimental

3    reliance by the party asserting estoppel.") Plaintiffs also do not understand what basis

4    Apple has for a "potential" waiver or unclean hands defense, neither of which would

5    appear to be relevant in this case.  At present, it is not clear whether Apple will actually

6    plead any of the "potential" defenses upon which it relies in its Motion.

7         Apple also argues Plaintiffs' awareness of publications is "directly relevant to

8    Plaintiffs' trade secret allegations." Jt. Stip. at 38.  Apple argues Plaintiffs did not take

9    reasonable efforts to protect their trade secrets because Plaintiffs sued two years after

10   **Apple** published some of Plaintiffs' trade secrets.    Jt. Stip. at 38-37.    Apple

11   unsuccessfully made the identical argument in its motion to dismiss and cited the same

12   two cases that it cites here.  *Compare id. with* Ex. 12 at 12 (citing *Intermedics* and

13   *Alamar Biosciences*).  Judge Selna rejected Apple's argument, explaining:

> [I]f the owner of a trade secret allows for one party to publish its trade secrets to the world, and the other takes no reasonable efforts to counteract that misappropriation, the information can hardly be considered "secret" when **other** parties **subsequently** appropriate it.  But this does **not** mean that a suit filed within the statute of limitations against a known misappropriator, alleged in this case to be Apple, must be dropped if the owner does not take immediate action against that misappropriator.

19   Ex. 13 at 10.  Judge Selna also specifically held that Apple's primary cited authority in

20   that motion (*HiRel Connectors*) did not support its position.  *Id.*  Though Judge Selna

21   did not expressly address the two overlapping cases that Apple cited in both motions, he

22   presumably did not mention those cases because they merely applied the statute of

23   limitations and said nothing of Apple's theory on efforts to maintain secrecy.  *See*

24   *Alamar Biosciences Inc. v. Difco Labs. Inc.*, 1996 WL 648286, at *6 (E.D. Cal. Feb. 27,

25   1996); *Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 657 (N.D. Cal. 1993)

26   (where one trade secret claim was brought outside the statute of limitations the statute

27   applied to related trade secrets).

28

Accordingly, Apple's basis for asserting relevance are "potential defenses" that "do not yet exist" and a trade secret theory that Judge Selna rejected.[7]  The Court should deny Apple's Motion.

Dated: January 28, 2021                    GIBSON, DUNN & CRUTCHER LLP

                                           By:   /s/ *Joshua H. Lerner*
                                                 Joshua H. Lerner
                                                 H. Mark Lyon
                                                 Brian M. Buroker
                                                 Brian A. Rosenthal
                                                 Ilissa Samplin
                                                 Angelique Kaounis
                                                 Brian K. Andrea

                                           *Attorneys for Defendant Apple Inc.*

Dated:  January 28, 2021                   KNOBBE, MARTENS, OLSON & BEAR LLP

                                           By:   /s/ *Mark D. Kachner*
                                                 Joseph R. Re
                                                 Stephen C Jensen
                                                 Perry D. Oldham
                                                 Stephen W Larson
                                                 Mark D. Kachner
                                                 Adam B. Powell

                                           *Attorneys for Plaintiffs Masimo Corporation
                                           and Cercacor Laboratories, Inc.*

## ATTESTATION UNDER LOCAL RULE 5-4.3.4(a)(2)(i)

Pursuant to Civil L. R. 5-4.3.4(a)(2)(i), I attest that concurrence in the filing of this document has been obtained from each of the signatories above.

                              By: /s/ *Joshua H. Lerner*
                                  Joshua H. Lerner
                                  *Attorney for Defendant Apple Inc.*

---

[7] Apple also claims this information is "relevant to Plaintiffs' knowledge as to when Lamego allegedly breached the agreements with Plaintiffs." Jt. Stip. at 39.  But Apple never explains how that would be relevant to this case.  Plaintiffs did not assert a breach-of-contract claim and Lamego is not a defendant.