1  Joseph R. Re (Bar No. 134479)
2  joseph.re@knobbe.com
   Stephen C. Jensen (Bar No. 149894)
3  steve.jensen@knobbe.com
4  Perry D. Oldham (Bar No. 216016)
   perry.oldham@knobbe.com
5  Stephen W. Larson (Bar No. 240844)
6  stephen.larson@knobbe.com
   KNOBBE, MARTENS, OLSON & BEAR, LLP
7  2040 Main Street, Fourteenth Floor
8  Irvine, CA 92614
   Telephone: (949) 760-0404 Facsimile: (949) 760-9502
9
10 Adam B. Powell (Bar No. 272725)
   adam.powell@knobbe.com
11 KNOBBE, MARTENS, OLSON & BEAR, LLP
12 12790 El Camino Real
   San Diego, CA 92130
13 Telephone: (858) 707-4000 Facsimile: (858) 707-4001
14
15 Attorneys for Plaintiffs,
   Masimo Corporation and Cercacor Laboratories, Inc.
16
        IN THE UNITED STATES DISTRICT COURT
17
      FOR THE CENTRAL DISTRICT OF CALIFORNIA
18
              SOUTHERN DIVISION
19
   MASIMO CORPORATION,            ) Case No. 8:20-cv-00048-JVS-JDE
20 a Delaware corporation; and    )
   CERCACOR LABORATORIES, INC.,   ) FOURTH AMENDED
21 a Delaware corporation         ) COMPLAINT FOR
                                  ) (1) PATENT INFRINGEMENT
22        Plaintiffs,             ) (2) TRADE SECRET
                                  ) MISAPPROPRIATION
23        v.                      ) (3) CORRECTION OF
                                  ) INVENTORSHIP AND
24 APPLE INC., a California corporation ) (4) OWNERSHIP OF PATENTS
                                  )
25        Defendant.             ) DEMAND FOR JURY TRIAL
                                  )
26                                ) Hon. James V. Selna
                                  )
27
        REDACTED VERSION OF DOCUMENT
28      PROPOSED TO BE FILED UNDER SEAL

Plaintiffs MASIMO CORPORATION ("Masimo") and CERCACOR LABORATIES, INC. ("Cercacor") hereby complain of Defendant APPLE INC. ("Apple"), and allege as follows:

## I.  THE PARTIES

1.     Plaintiff Masimo is a Delaware corporation having its principal place of business at 52 Discovery, Irvine, California 92618.

2.     Plaintiff Cercacor is a Delaware corporation having its principal place of business at 15750 Alton Pkwy, Irvine, California 92618.

3.     Upon information and belief, Defendant Apple is a California corporation having a principal place of business at One Apple Park Way, Cupertino, California, 95014.

## II.  JURISDICTION AND VENUE

4.     This civil action includes claims for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq*., more particularly, 35 U.S.C. §§ 271 and 281.  This civil action includes claims for correction of inventorship of certain United States patents arising under the patent law of the United States, more particularly 35 U.S.C. § 256.   This Complaint further alleges trade secret misappropriation and seeks a declaration of ownership of certain patents and patent applications.

5.     This Court has subject matter jurisdiction over claims 1-12 and 14-18 pursuant to at least 28 U.S.C. §§ 1331 and 1338(a), and has at least supplemental jurisdiction over claims 13 and 19-27 pursuant to at least 28 U.S.C. §§ 1367(a), including because, as alleged in more detail below, they are sufficiently related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6.     Apple has its principal place of business in California.  Apple is subject to personal jurisdiction in California and has committed the acts complained of in this Judicial District.

7.     Venue is proper in the Southern Division of the Central District of California pursuant to 28 U.S.C. § 1400(b) with respect to patent infringement because Defendant has a regular and established place of business in the County of Orange within the Central District of California and committed acts of infringement in this Judicial District.  Defendant also committed acts of misappropriation in this Judicial District.  Inventive contributions to the patents and patent application as to which Plaintiffs seek correction of inventorship and/or declarations of ownership also took place in this Judicial District.  Thus, venue is proper pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District.

### III.  STATEMENT OF THE CASE

8.     This action seeks relief for the theft of Plaintiffs' highly confidential information and trade secrets, and infringement of Masimo's patents by Defendant, correction of inventorship, and ownership of patents assigned to or filed by Apple on subject matter that belongs to Plaintiffs.

### IV.  STATEMENT OF FACTS

9.     Masimo is a medical technology company that revolutionized non-invasive monitoring of physiological parameters, such as pulse rate, arterial oxygen saturation and many others.

10.    Most of these parameters are measured using light that is transmitted through the body tissue.  The received light, that has been attenuated by the various components of the body tissue, including the blood, is known in the industry as a photoplethysmograph or "PPG."  The transmission and receipt

of this light is typically accomplished through a sensor that is applied to a body part such as a finger, arm, toe, forehead or ear.

11.     Before Masimo, non-invasive measurements from the PPG were plagued by unreliability, often when the measurement was needed most, due to the person moving or having low peripheral blood flow (known as "low perfusion").  The industry had essentially given up on solving these problems, concluding they were largely unsolvable.  In the medical context, clinicians had to live with the results – patient monitors gave excessive false alarms, froze their measurements for prolonged periods of time despite potential changes in the physiological parameter (e.g., oxygen saturation or pulse rate), delayed notification of alarms due to long averaging times of sensor data, produced inaccurate measurements, or were unable to obtain data on the most critical patients and babies who cannot be instructed to stay still.  Masimo's pioneering technology, known as Masimo Signal Extraction Technology ("Masimo SET"), solved this problem and dramatically improved the reliability of monitoring and reporting physiological signals derived from the PPG.

12.     Following its initial success with Masimo SET, Masimo invested heavily in developing additional breakthrough measurement technologies, such as non-invasively measuring total hemoglobin, carboxyhemoglobin, and methemoglobin.  Masimo has continued to innovate, succeeding where others have consistently failed.  Masimo was the first, and remains the only, company delivering these game-changing technologies to hospitals in the United States. Use of Masimo's technology in the clinical setting has been proven to reduce blindness in premature infants, detect congenital heart disease in infants, save lives on the general care floor and post-surgery, and improve transfusion management, while saving money.

13.     From its inception, Masimo has continuously developed cutting-edge noninvasive patient monitoring technologies.  Masimo sought and received

numerous U.S. patents for many of its inventions. Masimo's revolutionary technology was a key to its gaining significant market praise and penetration. After introduction into the market, many competitors, much larger than Masimo, used Masimo's technology without a license, resulting in patent infringement lawsuits that ultimately confirmed the validity of Masimo's innovations. Masimo also maintains some technology as trade secrets. Masimo also closely guards its future product and market plans. Only select employees have knowledge of and access to these guarded secrets.

14. Masimo's innovations also include important advances in sensor technologies that work together as part of Masimo's system and algorithms. Masimo's sensors are integral to the success of the revolutionary technologies Masimo has developed.

15. In 1998, Masimo spun certain technologies off into a new company, Masimo Laboratories, Inc. or "Masimo Labs," to further research and develop the technologies. The name of the company was later changed to Cercacor Laboratories Inc. or "Cercacor." Cercacor and Masimo have a cross-license agreement to facilitate confidential collaboration between the companies. Cercacor is not owned by Masimo.

16. Like Masimo, Cercacor is an innovator of non-invasive monitoring technologies. Cercacor is on the frontline of understanding how measuring, tracking, and analyzing physiological parameters can impact pre-diabetic and diabetic patients, sports training and performance and overall health and wellness principally in the consumer market. Cercacor continued the development that started at Masimo on non-invasive total hemoglobin (SpHb®), methemoglobin (SpMet®), and carboxyhemoglobin (SpCO®) and other non-invasive physiological parameters.

17. Leading hospitals around the world use Cercacor technology licensed to Masimo and sold under the name Masimo rainbow SET. Like

Masimo, Cercacor also maintains some technology as trade secrets, and Cercacor closely guards its future product and market plans.   Only select employees have knowledge of and access to these guarded secrets.

18.   Plaintiffs carefully guard the secrecy of their confidential information and documents.   For example, Plaintiffs have policies regarding labeling confidential information and documents as "CONFIDENTIAL AND PROPRIETARY."   They also restrict these documents and information from disclosure to third parties and employees on a need-to-know basis.   Plaintiffs also have policies in place regarding the use of computers and related equipment that govern how their computer systems may be used.   Those policies also govern the protection of Plaintiffs' confidential information.   Plaintiffs have document management systems that restrict access to confidential documents to only those employees with proper security credentials and a need for access. Plaintiffs also require employees to sign agreements precluding the employees from disclosing or making use of any confidential information except as authorized by Plaintiffs and as necessary for the performance of the employees' duties.   Plaintiffs also require third parties, including customers, to execute confidential non-disclosure agreements.   Plaintiffs implemented such policies and procedures to maintain the confidentiality of sensitive information.   These policies remain in place today.

19.   In 2013, Apple contacted Masimo and asked to meet regarding a potential collaboration.   Apple told Masimo that Apple would like to understand more about Masimo's technology to potentially integrate that technology into Apple's products.   Apple and Masimo later entered into a confidentiality agreement, and Masimo's management met with Apple.   The meetings included confidential discussions of Masimo's technology.   After what seemed to Masimo to have been productive meetings, Apple quickly began trying to hire Masimo employees, including engineers and key management.

-6-

20.   Masimo employed Michael O'Reilly as its Chief Medical Officer and Executive Vice President for Medical Affairs beginning in January 2008. As part of the Masimo executive team, O'Reilly was privy to extremely sensitive information, including information about mobile medical products and applications, wellness applications, clinical data gathering and analytics, and other technology of Masimo.  Upon information and belief, Apple employed O'Reilly in July 2013, shortly after the meetings with Masimo, to assist in wellness and mobile applications that include non-invasive measurement of physiological parameters.  Not long after, by December of 2013, O'Reilly was already meeting with the FDA on behalf of Apple to discuss medical applications and discuss medical products that non-invasively measures blood constituents.

21.   Apple systematically recruited other key Masimo personnel, such as Marcelo Lamego, who was the former Chief Technical Officer of Cercacor and a former Research Scientist at Masimo.  Lamego was a Masimo employee during 2000-2001 and 2003-2006, and the Cercacor Chief Technical Officer during 2006-2014.

22.   Lamego had unfettered access to Plaintiffs' highly confidential technical information.  He was trained and mentored at Masimo by the most skilled engineers and scientists, and was taught about the keys to effective non-invasive monitoring, something he was not involved in prior to Masimo. Masimo engineers and scientists taught Lamego about non-invasive monitoring, including, among others, Ammar Al-Ali, Mohamed Diab, and Walter Weber. The Masimo engineers, including Al-Ali, Diab, and Weber, were Masimo employees at all relevant times.   Lamego also had access to and learned guarded secrets regarding Plaintiffs' mobile medical products, including key technology and advance plans for future products.

-7-

23.     When Lamego left Cercacor, he assured Plaintiffs that he would not violate his agreements with Plaintiffs and volunteered that he would not work on technology similar to Plaintiffs' technology.   On January 24, 2014, Plaintiffs sent a letter to Defendant explaining that Lamego possessed Plaintiffs' confidential proprietary information and warning Apple to respect Plaintiffs' rights in such information.   The letter stated "we trust that Apple will employ Mr. Lamego in an area that does not involve healthcare technology, including mobile health applications and the measurement of physiological information." The letter also asked that "Apple refrain from inducing Mr. Lamego to take actions that would violate the Agreement while he performs services for Apple" and asked Apple to "direct Mr. Lamego to honor his obligations to all of his prior employers."   Based on Plaintiffs' conversations with Lamego, Plaintiffs' letter to Apple, and Plaintiffs' confidentiality agreement with Apple, Plaintiffs reasonably believed that Lamego would not use or disclose Plaintiffs' confidential information and that Defendant would not induce Lamego to do so or itself use Plaintiffs' confidential information.

24.     Unbeknownst to Plaintiffs at the time, it now appears that, shortly after joining Apple in January 2014, Lamego began pursuing on behalf of Apple numerous patent applications directed toward technologies he worked on at Plaintiffs, and with which he had no prior experience or knowledge.

25.     Upon information and belief, Apple announced the first version of its watch in September 2014, and began shipping its watch in April 2015.   The Apple Watch Series 3 was released on September 22, 2017, and upon information and belief had significant performance issues with the non-invasive physiological measurements.   Apple announced the Apple Watch Series 4 on September 12, 2018, and upon information and belief, that watch includes technology that tracks Plaintiffs' technologies to solve some of the performance issues.   The Apple Watch Series 5 was announced on September 10, 2019 and

released on September 20, 2019.  Upon information and belief, the Apple Watch Series 5 also includes Plaintiffs' technologies to solve some of the prior performance issues, including technology as to which Lamego was an inventor while at Plaintiffs.  The Apple Watch Series 6 and Series SE were announced on September 15, 2020, and released on September 18, 2020.  Upon information and belief, the Apple Watch Series 6 and Series SE also includes Plaintiffs' technologies to solve some of the prior performance issues, including technology as to which Lamego was an inventor while at Plaintiffs.

26.     As set forth in detail below, and on information and belief, each portion of evidence cited by Plaintiffs, such as the selected portions of Apple patent applications and Apple websites, accurately portrays, in relevant part, the structure, design, function and/or operation of the Apple Watch devices.

## V.  THE PATENTS-IN-SUIT

27.     Masimo is the owner by assignment of U.S. Patent No. 10,258,265 entitled "Multi-stream data collection system for noninvasive measurement of blood constituents" ("the '265 patent"), which the United States Patent and Trademark Office lawfully and duly issued on April 16, 2019.

28.     Masimo is the owner by assignment of U.S. Patent No. 10,292,628 entitled "Multi-stream data collection system for noninvasive measurement of blood constituents" ("the '628 patent"), which the United States Patent and Trademark Office lawfully and duly issued on May 21, 2019.

29.     Masimo is the owner by assignment of U.S. Patent No. 10,588,553 entitled "Multi-Stream Data Collection System For Noninvasive Measurement of Blood Constituents" ("the '553 patent"), which the United States Patent and Trademark Office lawfully and duly issued on March 17, 2020.

30.     Masimo is the owner by assignment of U.S. Patent No. 10,588,554 entitled "Multi-Stream Data Collection System For Noninvasive Measurement

of Blood Constituents" ("the '554 patent"), which the United States Patent and Trademark Office lawfully and duly issued on March 17, 2020.

31.     Masimo is the owner by assignment of U.S. Patent No. 10,624,564 entitled "Multi-Stream Data Collection System For Noninvasive Measurement of Blood Constituents" ("the '564 patent"), which the United States Patent and Trademark Office lawfully and duly issued on April 21, 2020.

32.     Masimo is the owner by assignment of U.S. Patent No. 10,631,765 entitled "Multi-Stream Data Collection System For Noninvasive Measurement of Blood Constituents" ("the '765 patent"), which the United States Patent and Trademark Office lawfully and duly issued on April 28, 2020.

33.     Masimo is the owner by assignment of U.S. Patent No. 10,702,194 entitled "Multi-Stream Data Collection System For Noninvasive Measurement of Blood Constituents" ("the '194 patent"), which the United States Patent and Trademark Office lawfully and duly issued on July 7, 2020.

34.     Masimo is the owner by assignment of U.S. Patent No. 10,702,195 entitled "Multi-Stream Data Collection System For Noninvasive Measurement of Blood Constituents" ("the '195 patent"), which the United States Patent and Trademark Office lawfully and duly issued on July 7, 2020.

35.     Masimo is the owner by assignment of U.S. Patent No. 10,709,366 entitled "Multi-Stream Data Collection System For Noninvasive Measurement of Blood Constituents" ("the '366 patent"), which the United States Patent and Trademark Office lawfully and duly issued on July 14, 2020.

36.     Masimo is the owner by assignment of U.S. Patent No. 6,771,994 entitled "Pulse oximeter probe-off detection system" ("the '994 patent"), which the United States Patent and Trademark Office lawfully and duly issued on August 3, 2004.

37.     Masimo is the owner by assignment of U.S. Patent No. 8,457,703 entitled "Low power pulse oximeter" ("the '703 patent"), which the United States Patent and Trademark Office lawfully and duly issued on June 4, 2013.

38.     Masimo is the owner by assignment of U.S. Patent No. 10,433,776 entitled "Low power pulse oximeter" ("the '776 patent"), which the United States Patent and Trademark Office lawfully and duly issued on October 8, 2019.

## VI.  PLAINTIFFS' TRADE SECRETS

39.     Plaintiffs allege Apple misappropriated the following specific trade secrets discussed in Paragraphs 40-45 below.





















46.     The aforementioned information in Paragraphs 40-45 is referred to herein as Plaintiffs' "Confidential Information."

## VII. THE DISPUTED LAMEGO PATENTS

47.     Lamego is named as an inventor on U.S. Provisional Patent Application No. 62/043,294, filed Aug. 28, 2014 and titled "Reflective Surface Treatments for Optical Sensors."  Related applications that also name Lamego as an inventor include U.S Patent Application Nos. 14/740,196 and 16/114,003, which issued as U.S. Patent Nos. 10,078,052 and 10,247,670.

48.     Lamego is also named as an inventor on U.S. Provisional Patent Application No. 62/047,818, filed Sep. 9, 2014, entitled "Modulation and

Demodulation Techniques for a Health Monitoring System."   A related application that names Lamego as the sole inventor includes U.S Patent Application No. 14/621,268, which issued as U.S. Patent No. 10,219,754.

49.   Lamego is also named as an inventor on U.S. Provisional Patent Application No. 62/056,299, filed on Sep. 26, 2014, and entitled "Electronic Device that Computes Health Data."   Related applications that also name Lamego as the sole inventor include U.S Patent Application Nos. 14/617,422, 15/667,832, and 16/700,710.   The '422 Application issued as U.S. Patent No. 9,723,997 and the '832 Application issued as U.S. Patent No. 10,524,671.

50.   Lamego is also named as an inventor on U.S. Provisional Patent Application No. 62/057,089, filed on Sep. 29, 2014, and entitled "Methods and Systems for Modulation and Demodulation of Optical Signals."   Related applications that also name Lamego as an inventor include U.S Patent Application Nos. 14/618,664 and 15/960,507.   The '664 Application issued as U.S. Patent No. 9,952,095.

## VIII.  FIRST CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,258,265)

51.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

52.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claims 1-3, 6-11, 13, 16-25 of the '265 patent under at least 35 U.S.C. § 271(a), (b), and (c).

53.   Upon information and belief, Defendant has directly infringed one or more claims of the '265 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

54.   For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the

-22-

'265 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.  The Apple Watch Series 4 and later devices are adapted to be worn by a wearer and provide an indication of a physiological parameter (for example, heart rate) of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in International Application Publication WO 2018/226305 (the '305 publication).  For example, the Apple Watch Series 4 and later devices provide an indication of a physiological parameter of the wearer as described in the '305 publication at paragraphs [0055]-[0061].

55.    The Apple Watch Series 4 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared LEDs) and at least four detectors (for example, photodiode sensors) spaced apart from each other as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:

1
2
3
4
5
6
7
8
9
10



11    56.    The detectors output signals responsive to light from the light

12  emitters attenuated by body tissue.  Upon information and belief, the signals are

13  indicative of a physiological parameter (for example, heart rate) of the wearer.

14    57.    Upon information and belief, relevant technology in the Apple

15  Watch Series 4 and later devices is described in the below citation to U.S. Patent

16  Application Publication 2019/0072912 (the '912 publication).   The Apple

17  Watch Series 4 and later devices include a housing having a surface and a

18  circular wall protruding from the surface, and a light permeable cover arranged

19  above a portion of the housing and covering the detectors.  Fig. 4C and the

20  corresponding text of the '912 publication show, for example, such housing:

21
22
23
24
25
26
27
28



FIG. 4C

58.   Upon information and belief, Defendant has knowledge of Masimo's patents, including the '265 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.  Masimo filed provisional patent applications that led to the '265 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Lamego is a named inventor of the '265 patent.  Defendant had knowledge of the '265 patent no later than the filing of the original Complaint.

59.   Upon information and belief, Defendant has actively induced others to infringe the '265 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '265 patent.  To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be

used to infringe the '265 patent. Defendant's acts constitute infringement of the '265 patent in violation of 35 U.S.C. § 271(b).

60. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '265 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '265 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

61. Upon information and belief, Defendant's acts constitute contributory infringement of the '265 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '265 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '265 patent.

62. Defendant's infringement of the '265 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '265 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

63. Because of Defendant's infringement of the '265 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

64.     Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## IX.  SECOND CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,292,628)

65.     Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

66.     Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '628 patent under at least 35 U.S.C. § 271(a), (b), and (c).

67.     Upon information and belief, Defendant has directly infringed one or more claims of the '628 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

68.     For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the '628 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.

69.     The Apple Watch Series 4 and later devices include a housing configured to house a plurality of detectors.  Fig. 4C and the corresponding text of the '912 publication show, for example, such housing:

FIG. 4C

70.    The Apple Watch Series 4 and later devices include a plurality of emitters that emit light into tissue of a user and a plurality of detectors that detect light that has been attenuated by tissue of the user as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



71.   The Apple Watch Series 4 and later devices include a light permeable cover configured to be located between tissue of the user and the plurality of detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises an outwardly protruding convex surface configured to cause tissue of the user to conform to at least a portion of the outwardly protruding convex surface when the noninvasive optical physiological sensor is worn by the user and during operation of the noninvasive optical physiological sensor, and wherein the plurality of detectors are configured to receive light passed through the outwardly protruding convex surface after attenuation by tissue of the user. Fig. 4C and the corresponding text of the '912 publication show, for example, such cover:

*FIG. 4C*

72. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '628 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed provisional patent applications that led to the '628 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor. Lamego is a named inventor of the '628 patent. Defendant had knowledge of the '628 patent no later than the filing of the original Complaint.

73. Upon information and belief, Defendant has actively induced others to infringe the '628 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '628 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be

used to infringe the '628 patent.  Defendant's acts constitute infringement of the '628 patent in violation of 35 U.S.C. § 271(b).

74.     Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '628 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '628 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

75.     Upon information and belief, Defendant's acts constitute contributory infringement of the '628 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '628 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '628 patent.

76.     Defendant's infringement of the '628 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '628 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

77.     Because of Defendant's infringement of the '628 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

78.     Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## X.  THIRD CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,588,553)

79.     Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

80.     Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '553 patent under at least 35 U.S.C. § 271(a), (b), and (c).

81.     Upon information and belief, Defendant has directly infringed one or more claims of the '553 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

82.     For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the '553 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.  The Apple Watch Series 4 and later devices are noninvasive optical physiological sensor devices as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



83.     The Apple Watch Series 4 and later devices include a plurality of emitters configured to emit light into tissue of a user, and at least four detectors, wherein at least one of the at least four detectors is configured to detect light that has been attenuated by tissue of the user, and wherein the at least four detectors are arranged on a substrate as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



84.     The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

85.     Upon information and belief, relevant technology in the Apple
Watch Series 4 and later devices is described in the below citation to U.S. Patent
Application Publication 2019/0072912 (the '912 publication).   The Apple
Watch Series 4 and later devices include a wall configured to circumscribe at
least the at least four detectors and a cover configured to be located between
tissue of the user and the at least four detectors when the noninvasive optical
physiological sensor is worn by the user, wherein the cover comprises a single
protruding convex surface operable to conform tissue of the user to at least a
portion of the single protruding convex surface when the noninvasive optical
physiological sensor is worn by the user, and wherein the wall operably
connects to the substrate and the cover. Fig. 4C and the corresponding text of
the '912 publication show, for example, such wall and cover:



FIG. 4C

86.     Upon information and belief, Defendant has knowledge of Masimo's patents, including the '553 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.   Masimo filed provisional patent applications that led to the '553 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.   Lamego is a named inventor of the '553 patent.   Defendant had knowledge of the '553 patent no later than the filing of the First Amended Complaint.

87.     Upon information and belief, Defendant has actively induced others to infringe the '553 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '553 patent.   To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be used to infringe the '553 patent.   Defendant's acts constitute infringement of the '553 patent in violation of 35 U.S.C. § 271(b).

88.     Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '553 patent.   By way of example only, upon information and belief, Defendant actively induces direct infringement of the '553 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

89.     Upon information and belief, Defendant's acts constitute contributory infringement of the '553 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4

and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '553 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '553 patent.

90.     Defendant's infringement of the '553 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '553 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

91.     Because of Defendant's infringement of the '553 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

92.     Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XI.  <u>FOURTH CAUSE OF ACTION</u>
## <u>(INFRINGEMENT OF U.S. PATENT NO. 10,588,554)</u>

93.     Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

94.     Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 20 of the '554 patent under at least 35 U.S.C. § 271(a), (b), and (c).

95.     Upon information and belief, Defendant has directly infringed one or more claims of the '554 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

96.     For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices in combination with iPhone devices include all of the limitations of Claim 20 of the '554 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.  The Apple Watch Series 4 and later devices combined with Apple iPhones are physiological measurement systems with physiological sensors as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



97.     The Apple Watch Series 4 and later devices include a plurality of emitters configured to emit light into tissue of a user, and at least four detectors, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



98.     The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer. Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].

99.     Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in the below citation to U.S. Patent Application Publication 2019/0072912 (the '912 publication).   The Apple Watch Series 4 and later devices include a wall that surrounds at least the at least four detectors, a cover comprising a single protruding convex surface, wherein the single protruding convex surface is configured to be located between tissue of the user and the at least four detectors when the physiological sensor device is worn by the user, wherein at least a portion of the single protruding convex surface is sufficiently rigid to cause tissue of the user to conform to at least a portion of a shape of the single protruding convex surface when the physiological sensor device is worn by the user, and wherein the cover

operably connects to the wall.  Fig. 4C and the corresponding text of the '912
publication show, for example, such wall and cover:



FIG. 4C

100.  The Apple Watch Series 4 and later devices communicate
wirelessly with handheld computing devices as shown in the image below found
on the Apple website at https://support.apple.com/en-us/HT204666 and as
further described at https://support.apple.com/en-us/HT204505:

101.  Upon information and belief, Defendant has knowledge of Masimo's patents, including the '554 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.  Masimo filed provisional patent applications that led to the '554 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Lamego is a named inventor of the '554 patent.  Defendant had knowledge of the '554 patent no later than the filing of the First Amended Complaint.

102.  Upon information and belief, Defendant has actively induced others to infringe the '554 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '554 patent.  To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be used to infringe the '554 patent.  Defendant's acts constitute infringement of the '554 patent in violation of 35 U.S.C. § 271(b).

103.  Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '554 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '554 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the

Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

104. Upon information and belief, Defendant's acts constitute contributory infringement of the '554 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '554 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '554 patent.

105. Defendant's infringement of the '554 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '554 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

106. Because of Defendant's infringement of the '554 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

107. Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XII.  FIFTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,624,564)

108. Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

-41-

109.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '564 patent under at least 35 U.S.C. § 271(a), (b), and (c).

110.   Upon information and belief, Defendant has directly infringed one or more claims of the '564 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices and the iPhone devices.

111.   For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices in combination with iPhone devices include all of the limitations of Claim 1 of the '564 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.  The Apple Watch Series 4 and later devices are user-worn physiological measurement devices as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



112.   The Apple Watch Series 4 and later devices include one or more emitters configured to emit light into tissue of a user and at least four detectors arranged on a substrate as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



113.   The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

114.   Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in the below citation to U.S. Patent Application Publication 2019/0072912 (the '912 publication).   The Apple Watch Series 4 and later devices include a wall that surrounds at least the at least four detectors and that operably connects to the substrate and a cover comprising a protruding convex surface, wherein the protruding convex surface extends over all of the at least four detectors arranged on the substrate, wherein at least a portion of the protruding convex surface is rigid.  Fig. 4C and the corresponding text of the '912 publication show, for example, such wall and cover:



FIG. 4C

115.   The Apple Watch Series 4 and later devices include one or more processors configured to receive one or more signals from at least one of the at least four detectors, the one or more signals responsive to at least a physiological parameter of the user; and process the one or more signals to determine measurements of the physiological parameter. Further, the Apple Watch Series 4 and later devices include a network interface configured to communicate with a mobile phone and a touch-screen display configured to provide a user interface where the user interface is configured to display indicia responsive to the measurements of the physiological parameter, a storage device configured to at least temporarily store at least the measurements of the physiological parameter, and a strap configured to position the physiological measurement device on the user as shown in the image below found on the

Apple website at https://support.apple.com/en-us/HT204666 and as further described at https://support.apple.com/en-us/HT204505:



116.   The Apple Watch Series 4 and later devices have an orientation of the user interface that is configurable responsive to a user input as described on the Apple website at https://support.apple.com/guide/watch/change-language-orientation-apple-watch-apd0bf18f46b/watchos.

117.   Upon information and belief, Defendant has knowledge of Masimo's patents, including the '564 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.  Masimo filed provisional patent applications that led to the '564 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Lamego is a named inventor of the '564 patent.  Defendant had knowledge of the '564 patent no later than the filing of this Second Amended Complaint.

118.   Upon information and belief, Defendant has actively induced others to infringe the '564 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '564 patent.  To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be

used to infringe the '564 patent. Defendant's acts constitute infringement of the '564 patent in violation of 35 U.S.C. § 271(b).

119.   Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '564 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '564 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

120. Upon information and belief, Defendant's acts constitute contributory infringement of the '564 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '564 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '564 patent.

121.   Defendant's infringement of the '564 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '564 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

122.   Because of Defendant's infringement of the '564 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

123.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XIII.  SIXTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,631,765)

124.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

125.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '765 patent under at least 35 U.S.C. § 271(a), (b), and (c).

126.   Upon information and belief, Defendant has directly infringed one or more claims of the '765 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices and the iPhone devices.

127.   For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices in combination with iPhone devices include all of the limitations of Claim 1 of the '765 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.  The Apple Watch Series 4 and later devices in combination with iPhone devices are physiological measurement systems with physiological sensors as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



128.   The Apple Watch Series 4 and later devices include one or more emitters configured to emit light into tissue of a user, and at least four detectors, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



129.   The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

130.   Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in the below citation to U.S. Patent Application Publication 2019/0072912 (the '912 publication).   The Apple Watch Series 4 and later devices include a wall that surrounds at least the at least four detectors, a cover comprising a protruding convex surface above the detectors that is sufficiently rigid and operably connects to the wall.  Fig. 4C and the corresponding text of the '912 publication show, for example, such wall and cover:



FIG. 4C

131.   The Apple Watch Series 4 and later devices include a storage device configured to at least temporarily store at least the measurements of the physiological parameter and communicate wirelessly with iPhone devices that include a touch-screen display configured to provide a user interface to display indicia responsive to measurements of the physiological parameter and one or

-49-

more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user, and an orientation of the user interface is configurable responsive to a user input as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666 and as further described at https://support.apple.com/en-us/HT204505:



132.   Upon information and belief, Defendant has knowledge of Masimo's patents, including the '765 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.   Masimo filed provisional patent applications that led to the '765 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.   Lamego is a named inventor of the '765 patent.   Defendant had knowledge of the '765 patent no later than the filing of this Second Amended Complaint.

133.   Upon information and belief, Defendant has actively induced others to infringe the '765 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '765 patent.   To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be

used to infringe the '765 patent.  Defendant's acts constitute infringement of the '765 patent in violation of 35 U.S.C. § 271(b).

134.   Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '765 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '765 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

135. Upon information and belief, Defendant's acts constitute contributory infringement of the '765 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '765 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '765 patent.

136.   Defendant's infringement of the '765 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '765 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

137.   Because of Defendant's infringement of the '765 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

138.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XIV.  SEVENTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,702,194)

139.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

140.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '194 patent under at least 35 U.S.C. § 271(a), (b), and (c).

141.   Upon information and belief, Defendant has directly infringed one or more claims of the '194 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

142.   For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices in combination with iPhone devices include all of the limitations of Claim 1 of the '194 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.  The Apple Watch Series 4 and later devices in combination with iPhone devices are physiological measurement systems with physiological sensors as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:

-52-



143.   The Apple Watch Series 4 and later devices include one or more emitters configured to emit light into tissue of a user, and first and second sets of four photodiodes, wherein upon information and belief the photodiodes in each set are connected to one another in parallel to provide a two signal streams each of the at least photodiodes has a corresponding window that allows light to pass through to the photodiode as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



144.   The photodiodes output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are

indicative of a physiological parameter (for example, heart rate) of the wearer.

145.  Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in the below citation to U.S. Patent Application Publication 2019/0072912 (the '912 publication).  The Apple Watch Series 4 and later devices include a wall that surrounds at least the photodiodes, a cover comprising a rigid protruding convex surface above the photodiodes and wall.  Fig. 4C and the corresponding text of the '912 publication show, for example, such wall and cover:



FIG. 4C

146.  The Apple Watch Series 4 and later devices include a storage device configured to at least temporarily store at least the measurements of the physiological parameter and communicate wirelessly with iPhone devices that include one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive

to at least a physiological parameter of the user, and a touch-screen display configured to provide a user interface to display indicia responsive to measurements of the physiological parameter with an orientation of the user interface configurable as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666 and as further described at https://support.apple.com/en-us/HT204505:



147.   Upon information and belief, Defendant has knowledge of Masimo's patents, including the '194 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.   Masimo filed provisional patent applications that led to the '194 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.   Lamego is a named inventor of the '194 patent.   Defendant had knowledge of the '194 patent no later than the filing of this Second Amended Complaint.

148.   Upon information and belief, Defendant has actively induced others to infringe the '194 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '194 patent.   To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be

used to infringe the '194 patent.  Defendant's acts constitute infringement of the '194 patent in violation of 35 U.S.C. § 271(b).

149.   Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '194 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '194 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

150.  Upon information and belief, Defendant's acts constitute contributory infringement of the '194 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '194 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '194 patent.

151.   Defendant's infringement of the '194 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '194 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

152.   Because of Defendant's infringement of the '194 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

153.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XV.  EIGHTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,702,195)

154.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

155.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '195 patent under at least 35 U.S.C. § 271(a), (b), and (c).

156.   Upon information and belief, Defendant has directly infringed one or more claims of the '195 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

157.   For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices in combination with iPhone devices include all of the limitations of Claim 1 of the '195 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.  The Apple Watch Series 4 and later devices are are user-worn physiological measurement devices as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



158.   The Apple Watch Series 4 and later devices include one or more emitters configured to emit light into tissue of a user, a first set of four photodiodes connected to one another in parallel to provide a first signal stream and a second set of four photodiodes connected to one another in parallel to provide a second signal stream and positioned on a first surface and surrounded by a wall that is operably connected to the first surface, as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



159.   Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in the below citation to U.S. Patent Application Publication 2019/0072912 (the '912 publication).   The Apple Watch Series 4 and later devices include a wall that surrounds the photodiodes, a cover located above the wall and comprising a single protruding convex surface configured to be located between tissue of the user and the photodiodes when the physiological measurement device is worn by the user, wherein the physiological measurement device provides a plurality of optical paths, wherein each of the optical paths exits an emitter of the one or more emitters, passes through tissue of the user, passes through the single protruding convex surface, and arrives at a corresponding photodiode of the at least one of the first or second sets of photodiodes, the corresponding photodiode configured to receive light emitted by the emitter after traversal by the light of a corresponding optical path of the plurality of optical paths and after attenuation of the light by tissue of the user.   Fig. 4C and the corresponding text of the '912 publication show, for example, such wall and cover:



FIG. 4C

160. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '195 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.  Masimo filed provisional patent applications that led to the '195 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Lamego is a named inventor of the '195 patent.  Defendant had knowledge of the '195 patent no later than the filing of this Second Amended Complaint.

161. Upon information and belief, Defendant has actively induced others to infringe the '195 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '195 patent.  To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be

used to infringe the '195 patent. Defendant's acts constitute infringement of the '195 patent in violation of 35 U.S.C. § 271(b).

162. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '195 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '195 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

163. Upon information and belief, Defendant's acts constitute contributory infringement of the '195 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '195 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '195 patent.

164. Defendant's infringement of the '195 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '195 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

165. Because of Defendant's infringement of the '195 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

166.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XVI.  <u>NINTH CAUSE OF ACTION</u>
## <u>(INFRINGEMENT OF U.S. PATENT NO. 10,709,366)</u>

167.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

168.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 1 of the '366 patent under at least 35 U.S.C. § 271(a), (b), and (c).

169.   Upon information and belief, Defendant has directly infringed one or more claims of the '366 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

170.   For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 1 of the '366 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.   The Apple Watch Series 4 and later devices are noninvasive physiological parameter measurement devices adapted to be worn by a wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



171.   The   Apple   Watch   Series   4   and   later   devices   include   upon
information and belief one or more emitters, a substrate having a surface, a first
set of four photodiodes arranged on the surface and spaced apart from each
other and connected to one another in parallel to provide a first signal stream
responsive to light from at least one of the one or more light emitters attenuated
by body tissue, a second set of four photodiodes arranged on the surface and
spaced apart from each other and connected to one another in parallel to provide
a second signal stream responsive to light from at least one of the one or more
light emitters attenuated by body tissue, at least one of the first signal stream or
the   second   signal   stream   includes   information   usable   to   determine   a
physiological parameter of a wearer of the noninvasive physiological parameter
measurement device as shown in the image below found on the Apple website at
https://support.apple.com/en-us/HT204666:



172.   Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in the below citation to U.S. Patent Application Publication 2019/0072912 (the '912 publication).   The Apple Watch Series 4 and later devices include a wall extending from the surface and configured to surround at least the first and second sets of photodiodes; and a cover arranged to cover at least a portion of the surface of the substrate, wherein the cover comprises a protrusion that extends over all of the photodiodes of the first and second sets of photodiodes arranged on the surface, and wherein the cover is further configured to cover the wall.  Fig. 4C and the corresponding text of the '912 publication show, for example, such wall and cover:

FIG. 4C

173. Upon information and belief, Defendant has knowledge of Masimo's patents, including the '366 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs. Masimo filed provisional patent applications that led to the '366 patent in August 2008, while O'Reilly and Lamego were with Masimo and/or Cercacor. Lamego is a named inventor of the '366 patent. Defendant had knowledge of the '366 patent no later than the filing of this Second Amended Complaint.

174. Upon information and belief, Defendant has actively induced others to infringe the '366 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '366 patent. To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be

used to infringe the '366 patent. Defendant's acts constitute infringement of the '366 patent in violation of 35 U.S.C. § 271(b).

175. Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '366 patent. By way of example only, upon information and belief, Defendant actively induces direct infringement of the '366 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices, including use with Apple iPhones. Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

176. Upon information and belief, Defendant's acts constitute contributory infringement of the '366 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices and Apple iPhones that constitute material parts of the invention of the asserted claims of the '366 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use and are known by Defendant to be especially made or especially adapted for use in an infringement of the '366 patent.

177. Defendant's infringement of the '366 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '366 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

178. Because of Defendant's infringement of the '366 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

179.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XVII.  TENTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 6,771,994)

180.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

181.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 4 and later devices, infringe at least Claim 15 of the '994 patent under at least 35 U.S.C. § 271(a), (b), and (c).

182.   Upon information and belief, Defendant has directly infringed one or more claims of the '994 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 4 and later devices.

183.   For example, upon information and belief, in operation, the Apple Watch Series 4 and later devices include all of the limitations of Claim 15 of the '994 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.   Upon information and belief, the Apple Watch Series 4 and later devices detect light transmitted through body tissue carrying pulsing blood to determine heart rate as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:

-67-



184.   The Apple Watch Series 4 and later devices include at least one light emission device and a light sensitive detector as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:

185.   The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

186.   Upon information and belief, relevant technology in the Apple Watch Series 4 and later devices is described in the below citation to U.S. Patent Application Publication 2019/0090806 (the '806 publication).   The Apple

Watch Series 4 and later devices include a plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through body tissue carrying pulsing blood, wherein the louvers accept the light when the sensor is properly applied to tissue of a patient.   Upon information and belief, this technology is described, for example, in Fig. 7 and the corresponding text of the '806 publication:



FIG. 7

187.   Upon information and belief, Defendant has knowledge of Masimo's patents, including the '994 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.  Masimo filed a patent application that led to the '994 patent on June 16, 2000.  The '994 patent issued on August 3, 2004, and Masimo has maintained the patent while O'Reilly and Lamego were with Masimo and/or Cercacor.   Defendant had knowledge of the '994 patent no later than the filing of the original Complaint.

188.   Upon information and belief, Defendant has actively induced others to infringe the '994 patent by marketing and selling the above Apple Watch Series 4 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '994 patent.  To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 4 and later devices be used to infringe the '994 patent.  Defendant's acts constitute infringement of the '994 patent in violation of 35 U.S.C. § 271(b).

189.   Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '994 patent.  By way of example only, upon information and belief, Defendant actively induces direct

-69-

infringement of the '994 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 4 and later devices.   Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

190.   Upon information and belief, Defendant's acts constitute contributory infringement of the '994 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 4 and later devices that constitute material parts of the invention of the asserted claims of the '994 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '994 patent.

191.   Defendant's infringement of the '994 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '994 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

192.   Because of Defendant's infringement of the '994 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

193.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XVIII.  ELEVENTH CAUSE OF ACTION

## (INFRINGEMENT OF U.S. PATENT NO. 8,457,703)

194.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

195.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 3 and later devices, infringe at least Claim 1 of the '703 patent under at least 35 U.S.C. § 271(a), (b), and (c).

196.   Upon information and belief, Defendant has directly infringed one or more claims of the '703 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 3 and later devices.

197.   For example, upon information and belief, in operation, the Apple Watch Series 3 and later devices include all of the limitations of Claim 1 of the '703 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.  The Apple Watch Series 3 and later devices provide an indication of a physiological parameter (for example, heart rate) of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



198.   The Apple Watch Series 3 and later devices drive one or more light sources configured to emit light into tissue and receives one or more signals from one or more detectors configured to detect light after attenuation by tissue as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



199.   The detectors output signals responsive to light from the light emitters attenuated by body tissue.  Upon information and belief, the signals are indicative of a physiological parameter (for example, heart rate) of the wearer.

200.   Upon information and belief, the Apple Watch Series 3 and later devices continuously operate at a lower power consumption level to determine measurement values for heart rate, as described at https://support.apple.com/en-us/HT204666:

The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment.

When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.

201.   Upon information and belief, the Apple Watch Series 3 and later devices as described above compare processing characteristics to a predetermined threshold, and when the processing characteristics pass the threshold, the Apple Watch Series 3 and later devices transition to continuously operating at a higher power consumption level, wherein the continuously operating at the lower power consumption level comprises reducing activation of an attached sensor, the sensor positioning the light sources and the detectors proximate to the tissue.  Upon information and belief, relevant technology in the Apple Watch Series 3 and later devices is described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].

202.   Upon information and belief, Defendant has knowledge of Masimo's patents, including the '703 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.  Masimo filed a provisional patent application that led to the '703 patent on July 2, 2001.  The '703 patent issued on June 4, 2013, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Defendant had knowledge of the '703 patent no later than the filing of the original Complaint.

203.   Upon information and belief, Defendant has actively induced others to infringe the '703 patent by marketing and selling the above Apple

-73-

Watch Series 3 and later devices, knowing and intending that such systems would be used by customers and end users in a manner that infringes the '703 patent.  To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 3 and later devices be used to infringe the '703 patent.  Defendant's acts constitute infringement of the '703 patent in violation of 35 U.S.C. § 271(b).

204.  Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '703 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '703 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 3 and later devices.  Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

205.  Upon information and belief, Defendant's acts constitute contributory infringement of the '703 patent in violation of 35 U.S.C. § 271(c).  Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 3 and later devices that constitute material parts of the invention of the asserted claims of the '703 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '703 patent.

206.  Defendant's infringement of the '703 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '703 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

207.   Because of Defendant's infringement of the '703 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

208.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XIX.  TWELFTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,433,776)

209.   Plaintiff Masimo hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

210.   Upon information and belief, Defendant's products, including at least the Apple Watch Series 3 and later devices, infringe at least Claim 1 of the '776 patent under at least 35 U.S.C. § 271(a), (b), and (c).

211.   Upon information and belief, Defendant has directly infringed one or more claims of the '776 patent through manufacture, use, sale, offer for sale, and/or importation into the United States of physiological monitors, including the Apple Watch Series 3 and later devices.

212.   For example, upon information and belief, in operation, the Apple Watch Series 3 and later devices include all of the limitations of Claim 1 of the '776 patent as set forth herein and further illustrated in the claim chart shown in Exhibit 1.   The Apple Watch Series 3 and later devices are configured to monitor at least a pulse rate of a patient by processing signals responsive to light attenuated by body tissue of the wearer as shown in the image below found on the Apple website at https://www.apple.com/apple-watch-series-4/health/:



213.   The Apple Watch Series 3 and later devices drive one or more light sources configured to emit light into tissue and receives one or more signals from one or more detectors configured to detect light after attenuation by tissue as shown in the image below found on the Apple website at https://support.apple.com/en-us/HT204666:



214.   Upon information and belief, the Apple Watch Series 3 and later devices operate according to a first control protocol, wherein said operating includes activating a first control protocol light source in accordance with the

first control protocol, the first control protocol light source including one or more of a plurality of light sources, and when operating according to the first control protocol, calculating, by the patient monitor, measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source, detected by a detector of an optical sensor after attenuation by body tissue of the patient using the patient monitor as explained, for example, on the Apple website at https://support.apple.com/en-us/HT204666.   That webpage explains the optical heart sensor uses photoplethysmography. "Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate."   That webpage further explains that the "optical heart sensor can also use infrared light. This mode is what Apple Watch uses when it measures your heart rate in the background, and for heart rate notifications. Apple Watch uses green LED lights to measure your heart rate during workouts and Breathe sessions, and to calculate walking average and Heart Rate Variability (HRV)."

215.   Upon information and belief, the Apple Watch Series 3 and later devices generate a trigger signal, wherein generating said trigger signal is responsive to at least one of: a comparison of processing characteristics to a predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector, and in response to receiving the trigger signal, operating the patient monitor according to a second control protocol

different from the first control protocol, wherein said operating includes activating a second control protocol light source in accordance with the second control protocol, the second control protocol light source including one or more of the plurality of light sources, and when operating the patient monitor according to the second control protocol, calculating the measurement values of the pulse rate, the measurement values responsive to light from the second control protocol light source, detected by the detector after attenuation by the body tissue of the patient using the patient monitor, wherein said operating of the patient monitor according to the first control protocol operates the first control protocol light source according to a first duty cycle and said operating of the patient monitor according to the second control protocol operates the second control protocol light source according to a second duty cycle, wherein power consumption of the first control protocol light source according to the first duty cycle is different than power consumption of the second control protocol light source according to the second duty cycle.  Upon information and belief, relevant technology in the Apple Watch Series 3 and later devices is described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].

216.  Upon information and belief, Defendant has knowledge of Masimo's patents, including the '776 patent, at least based on O'Reilly and Lamego's former positions with Plaintiffs.  Masimo filed a provisional patent application that led to the '776 patent on July 2, 2001.  The '776 patent issued on June 4, 2013, while O'Reilly and Lamego were with Masimo and/or Cercacor.  Defendant had knowledge of the '776 patent no later than the filing of the original Complaint.

217.  Upon information and belief, Defendant has actively induced others to infringe the '776 patent by marketing and selling the above Apple Watch Series 3 and later devices, knowing and intending that such systems

would be used by customers and end users in a manner that infringes the '776 patent.  To that end, Defendant provides instructions and teachings to its customers and end users that such Apple Watch Series 3 and later devices be used to infringe the '776 patent.  Defendant's acts constitute infringement of the '776 patent in violation of 35 U.S.C. § 271(b).

218.   Upon information and belief, Defendant actively induces users to directly infringe the asserted claims of the '776 patent.  By way of example only, upon information and belief, Defendant actively induces direct infringement of the '776 patent by providing directions, demonstrations, guides, manuals, training for use, and/or other materials necessary for the use of the Apple Watch Series 3 and later devices.  Upon information and belief, Defendant knew or should have known that these activities would cause direct infringement.

219. Upon information and belief, Defendant's acts constitute contributory infringement of the '776 patent in violation of 35 U.S.C. § 271(c). Upon information and belief, Defendant contributorily infringes because, among other things, Defendant offers to sell and/or sells within the United States, and/or imports into the United States, components of the Apple Watch Series 3 and later devices that constitute material parts of the invention of the asserted claims of the '776 patent, are not staple articles or commodities of commerce suitable for substantial non-infringing use, and are known by Defendant to be especially made or especially adapted for use in an infringement of the '776 patent.

220.   Defendant's infringement of the '776 patent is willful, deliberate, and intentional by continuing its acts of infringement after becoming aware of the '776 patent and its infringement thereof, thus acting in reckless disregard of Masimo's patent rights.

221.   Because of Defendant's infringement of the '776 patent, Masimo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

222.   Upon information and belief, unless enjoined, Defendant, and/or others acting on behalf of Defendant, will continue their infringing acts, thereby causing additional irreparable injury to Masimo for which there is no adequate remedy at law.

## XX.  THIRTEENTH CAUSE OF ACTION
## (TRADE SECRET MISAPPROPRIATION UNDER CALIFORNIA'S UNIFORM TRADE SECRET ACT)

223.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

224.   This is a cause of action for Misappropriation of Trade Secrets under California's Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq*., based upon Defendant's and its employees' wrongful and improper acquisition, use, and disclosure of confidential and proprietary trade secret information of Plaintiffs.

225.   Plaintiffs own the Confidential Information.  Plaintiffs' Confidential Information is currently or was, at least at the time of Defendant's and its employees' misappropriation, not generally known to the public or to other persons who can obtain economic value from its disclosure or use.  All individuals with access to Plaintiffs' Confidential Information were instructed to keep it confidential, and they were subject to obligations to keep Plaintiffs' Confidential Information secret.  For example, Plaintiffs marked documents confidential, and instructed those individuals with access to the information to treat it as confidential, restricted access to the information, and required individuals and companies to enter into confidentiality agreements with Plaintiffs in order to receive Plaintiffs' Confidential Information.

226.   Plaintiffs' Confidential Information derives independent economic value, actual and potential, because it is, or was at the time of Defendant's and its employees' misappropriation, not generally known to the public or to other persons who can obtain economic value from its disclosure or use.  The actual and potential independent economic value of Plaintiffs' Confidential Information is derived from not being generally known because it gives or gave Plaintiffs an actual and potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.  If others obtained access to Plaintiffs' Confidential Information, they could use the information to deprive Plaintiffs of the business advantage it has over others, as well as to themselves obtain a business advantage over others.

227.   Plaintiffs made reasonable efforts under the circumstances to keep Plaintiffs' Confidential Information from becoming generally known.   For example, Plaintiffs' efforts included marking documents confidential, instructing individuals with access to the information to treat it as confidential, restricting access to the information, and requiring individuals and companies to enter into confidentiality agreements with Plaintiffs in order to receive Plaintiffs' Confidential Information.   Accordingly, Plaintiffs' Confidential Information constitutes a "trade secret" pursuant to Cal. Civ. Code § 3426.1.

228.  Plaintiffs are informed and believe, and thereon allege, that Defendant misappropriated Plaintiffs' Confidential Information by acquisition at least from Plaintiffs' former employees who left Plaintiffs to work for Defendant. For example, upon information and belief, O'Reilly and Lamego disclosed Plaintiffs' Confidential Information, without Plaintiffs' consent, to Defendant.  At the time of disclosure, O'Reilly and Lamego knew, or had reason to know, that their knowledge of Plaintiffs' Confidential Information was acquired by an employer-employee relationship, fiduciary relationship, and employment agreements, which created a duty for them to keep Plaintiffs' Confidential

-81-

Information secret.  O'Reilly and Lamego also knew, or had reason to know, that disclosing Plaintiffs' Confidential Information to Defendant constituted a breach of those obligations.

229.   At the time of acquisition, Defendant also knew, or had reason to know, that its employees obtained Plaintiffs' Confidential Information pursuant to a duty or obligation to keep Plaintiffs' Confidential Information secret.  This duty or obligation arose from an employer-employee relationship, fiduciary relationship, and employment agreements.  For example, among other things, Defendant knew O'Reilly was the Chief Medical Officer at Masimo.  Defendant knew O'Reilly was in charge of Masimo's data collection efforts at hospitals and was involved in strategic plans for the company.  Defendant also knew Lamego was the Chief Technical Officer of Cercacor and a Research Scientist at Masimo.  Defendant knew Lamego and O'Reilly were each under a duty to maintain the secrecy of the information they obtained from Plaintiffs.  Defendant knew Plaintiffs considered the information confidential by virtue of its prior relationship with Plaintiffs.  Defendant had also received a letter dated January 24, 2014, from Plaintiffs explaining that Lamego possessed Plaintiffs' Confidential Information, asking Defendant not to use such information, and attaching a copy of Lamego's Employee Confidentiality Agreement with Cercacor.  The Employee Confidentiality Agreement stated, among other things, "[a]fter my employment with [Cercacor] has terminated, I will not disclose or make use of any Confidential Information for any purpose, either on my own or on behalf of another business."  Lamego also worked at Apple for less than one year, but quickly disclosed information to Apple that took many years to develop at Plaintiffs.  Apple knew or at least should have known that Lamego could not develop the detailed trade secrets described herein in such a short amount of time.  On information and belief, Apple targeted and recruited Plaintiffs' employees,

including O'Reilly and Lamego, because of their knowledge of Plaintiffs' Confidential Information.

230. Nevertheless, on information and belief, Defendant induced its employees, including Lamego and O'Reilly, to use and/or disclose Plaintiffs' Confidential Information and the employees used and/or disclosed Plaintiffs' Confidential Information for the benefit of Defendant while employed by Defendant. Defendant met with Plaintiffs because Defendant wanted Plaintiffs' technology and wanted to integrate it into Defendant's products. After learning more about the capability of Plaintiffs' technology at the meetings, Defendant began systematically hiring Plaintiffs' employees, including Masimo's Chief Medical Officer, Michael O'Reilly, and many others. Apple's Chief Executive Officer, Tim Cook, interviewed O'Reilly. Tim Cook has publicly stated that he sees healthcare as central to Apple's future. Defendant hired O'Reilly to oversee Apple's strategic objective in healthcare and gave him the title of Apple's Vice President of Medical Technology.

231. ███████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
After Defendant hired Lamego, Plaintiffs informed Apple by letter that Lamego possessed Plaintiffs' Confidential Information and asked Apple to respect Plaintiffs' Confidential Information. Defendant ignored these warnings and sought out and obtained extensive patent disclosures from Lamego in the short time he worked at Apple and selectively requested non-publication of those applications containing Plaintiffs' Confidential Information. ████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

1   ███████████████████████████████████ Apple had Lamego work on the Apple

2   Watch project and tasked him with producing key intellectual property related to

3   bio-sensing, defining required resources for current and future bio-sensing

4   functionalities, proposing and reviewing hardware and algorithm architectures,

5   and advising Apple's team regarding bio-sensing functionalities.

6       232.   Apple provided substantial financial incentives, which had the effect

7   of enticing O'Reilly, Lamego, and others to use and/or disclose Plaintiffs'

8   Confidential Information to help Apple in its strategic objective in healthcare.

9   O'Reilly later informed Plaintiffs that, although he viewed Masimo as his family,

10  Apple had offered him so much money that he simply could not refuse.

11  Defendant knew or should have known that those incentives would cause

12  O'Reilly, Lamego, and others to use and disclosure of Plaintiffs' Confidential

13  Information.  Apple thereby induced Plaintiffs' former employees to use and

14  disclose Plaintiffs' Confidential Information while employed by Apple and for

15  Apple's benefit.  Thus, Defendant acquired Plaintiffs' Confidential Information

16  through the improper means of its employees breaching a duty to maintain secrecy

17  owed to Plaintiffs, as well as inducing its employees to breach a duty to maintain

18  secrecy owed to Plaintiffs.

19      233.   On information and belief, Defendant and its employees used and

20  disclosed Plaintiffs' Confidential Information it obtained from Plaintiffs and their

21  former employees without Plaintiffs' express or implied consent.  Defendant and

22  its employees used and disclosed Plaintiffs' Confidential Information at least by

23  incorporating it into Defendant's products, by filing patent applications containing

24  Plaintiffs' Confidential Information, and using Plaintiffs' business and sales

25  strategies without Plaintiffs' express or implied consent, as discussed in more

26  detail in paragraphs 234-256 below.

27  █████████████████████████████████████████████████████

28  ██████████████████████████████████████████████████████



Apple had

Lamego work on the Apple Watch project and tasked him with producing key intellectual property related to bio-sensing, defining required resources for current and future bio-sensing functionalities, proposing and reviewing hardware and algorithm architectures, and advising Apple's team regarding bio-sensing functionalities.







1

2

3

4

5

6

7

8

9

10

11

12

13    Apple had

14    Lamego work on the Apple Watch project and tasked him with producing key

15    intellectual property related to bio-sensing, defining required resources for current

16    and future bio-sensing functionalities, proposing and reviewing hardware and

17    algorithm architectures, and advising Apple's team regarding bio-sensing

18    functionalities.

19

20

21

22

23

24

25

26

27

28



244. ████████████████████████████████████

████████████████████████████████████████ Apple had Lamego work on the Apple Watch project and tasked him with producing key intellectual property related to bio-sensing, defining required resources for current and future bio-sensing functionalities, proposing and reviewing hardware and algorithm architectures, and advising Apple's team regarding bio-sensing functionalities. ████







247.

Apple's Chief Executive Officer, Tim Cook, interviewed O'Reilly. Tim Cook has publicly stated that he sees healthcare as central to Apple's future. Defendant hired O'Reilly to oversee Apple's strategic objective in healthcare and gave him the title of Apple's Vice President of Medical Technology. O'Reilly represents Apple before the FDA and hospitals about Apple's healthcare projects, including the Apple Watch.







12   Apple's Chief Executive Officer, Tim Cook, interviewed O'Reilly.  Tim Cook has

13   publicly stated that he sees healthcare as central to Apple's future.  Apple hired

14   O'Reilly to oversee Apple's strategic objective in healthcare and gave him the title

15   of Apple's Vice President of Medical Technology.   O'Reilly represents Apple

16   before the FDA and hospitals about Apple's healthcare projects, including the

17   Apple Watch.



256. ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████ Apple had Lamego work on the Apple Watch project and tasked him with producing key intellectual property related to bio-sensing, defining required resources for current and future bio-sensing functionalities, proposing and reviewing hardware and algorithm architectures, and advising Apple's team regarding bio-sensing functionalities. ███████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████

257.   As discussed above, Defendant knew or had reason to know that its knowledge of Plaintiffs' Confidential Information came from Plaintiffs, that its employees' knowledge of Plaintiffs' Confidential Information came from Plaintiffs, and that its employees had previously acquired Plaintiffs' Confidential Information by virtue of employer-employee and fiduciary relationships and employment agreements, all of which created a duty to keep Plaintiffs' Confidential Information secret.  Thus, Apple is directly liable for its use and disclosure of Plaintiffs' Confidential Information.

258.   Upon  information  and  belief,  Plaintiffs'  former  employees

misappropriated Plaintiffs' Confidential Information by use and disclosure. ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

259.   Lamego and O'Reilly used and disclosed Plaintiffs' Confidential

Information without Plaintiffs' consent.  At the time of the use and disclosure,

Lamego and O'Reilly knew, or had reason to know, that their knowledge of

Plaintiffs' Confidential Information was acquired by an employer-employee

relationship, fiduciary relationship, and employment agreements, which created a

duty for them to keep Plaintiffs' Confidential Information secret.  Lamego and

O'Reilly also knew, or had reason to know, that using and disclosing Plaintiffs'

Confidential Information to Defendant constituted a breach of those obligations.

Accordingly, Lamego and O'Reilly each misappropriated Plaintiffs' Confidential

Information through use and disclosure while employed by Apple.

260.   Upon information and belief, Defendant is liable for its employees'

use and disclosure of Plaintiffs' Confidential Information under the doctrine of

respondeat superior because its employees acted within the scope of their

employment, for the benefit of Defendant, and in a manner that was generally

foreseeable as part of their duties.  For example, Defendant hired O'Reilly and assigned him to help develop Defendant's relationships with clinicians and strategic plans for clinical monitoring.  Apple's Chief Executive Officer, Tim Cook, interviewed O'Reilly.  Defendant hired O'Reilly to oversee Apple's strategic objective in healthcare and gave him the title of Apple's Vice President of Medical Technology.  In this position, O'Reilly inquired whether Cercacor was for sale.  When O'Reilly was informed that Cercacor was not for sale, Defendant recruited Cercacor's Chief Technical Officer, Marcelo Lamego.  Defendant assigned Lamego to help develop Defendant's non-invasive monitoring technology, quickly obtained patent disclosures from him, and then applied for numerous patents listing Lamego as an inventor. ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ Apple had Lamego work on the Apple Watch project and tasked him with producing key intellectual property related to bio-sensing, defining required resources for current and future bio-sensing functionalities, proposing and reviewing hardware and algorithm architectures, and advising Apple's team regarding bio-sensing functionalities.  Because Plaintiffs' have leading technology, Apple provided substantial financial incentives to entice O'Reilly, Lamego, and others to help Apple in its strategic objective in healthcare, expecting them to use the specialized knowledge obtained from Plaintiffs.  O'Reilly later informed Plaintiffs that, although he viewed Masimo as his family, Apple had offered him so much money that he simply could not refuse.  Defendant knew or should have known that those incentives, as well as the expectations that they had specialized knowledge from Plaintiffs, would cause

O'Reilly, Lamego, and others to use and disclosure of Plaintiffs' Confidential Information.

261. Accordingly, the former employees used and disclosed Plaintiffs' Confidential Information within the scope of their employment for Defendant and for the benefit of Defendant. As discussed above, the former employees knew or had reason to know that their knowledge of Plaintiffs' Confidential Information was acquired under circumstances giving rise to a duty to maintain its secrecy and limit its use. O'Reilly's actions were an outgrowth of his employment and inherent in the working environment because Defendant assigned O'Reilly to develop Defendant's relationships with clinicians and strategic plans for clinical monitoring. Lamego's actions were an outgrowth of his employment and inherent in the working environment because Defendant assigned Lamego to help develop Defendant's non-invasive monitoring technology and provide patent disclosures. O'Reilly and Lamego's actions were at least typical or broadly incidental to Defendant's business of developing non-invasive monitoring technology, filing patents on such technology, developing relationships with clinicians, and developing strategic plans for clinical monitoring. O'Reilly and Lamego's actions were at least generally foreseeable as part of their duties to develop non-invasive monitoring technology, provide patent disclosures, develop relationships with clinicians, and develop strategic plans for clinical monitoring. As a result, Defendant is liable for its employees' actions under the doctrine of respondeat superior.

262. Plaintiffs had no way of knowing, or learning, of Defendant's and its employees' improper acquisition, use, or disclosure prior to January 10, 2017. Defendant did not publish Plaintiffs' Confidential Information in patent applications until after January 10, 2017, and the first product at issue was not announced until 2018. Additionally, based at least on Plaintiffs' conversations with Lamego, Plaintiffs' letter to Apple, and Plaintiffs' confidentiality

agreement with Apple, Plaintiffs had no reason to suspect or believe that Defendant had ignored Plaintiffs' letter and improperly acquired, used, and disclosed Plaintiffs' Confidential Information until after Plaintiffs discovered patent applications published after January 10, 2017, and accused products announced in 2018.  In September 2020, Apple announced partnerships with three of the health care systems that Plaintiffs were cultivating and targeting for research collaborations on patient health parameter measurements.

263.   Defendant and the former employees also led Plaintiffs to believe they intended to respect Plaintiffs' intellectual property rights and concealed Defendant's and its employees' acquisition, use, and disclosure of Plaintiffs' Confidential Information.  After O'Reilly left Masimo, he assured Plaintiffs that he and Apple were not and would not be competing against Plaintiffs.  Similarly, when Lamego left Cercacor, he assured Plaintiffs that he would not violate his agreements with Plaintiffs and volunteered that he would not work on technology similar to Plaintiffs' technology.  Plaintiffs notified Defendant that Lamego possessed the Confidential Information on January 24, 2014.  Defendant never informed Plaintiffs that Lamego or O'Reilly had used or disclosed the Confidential Information.  Defendant also requested non-publication of patent applications, which prevented Plaintiffs from learning of the contents of those applications until much later.   For example, Defendant requested non-publication of the '268 Application (which issued as the '754 Patent), the '422 Application (which issued as the '997 Patent), and the '664 Application (which issued as the '095 Patent).  On information and belief, Defendant requested non-publication of those applications to prevent Plaintiffs from learning those applications contained Plaintiffs' Confidential Information, and from learning the Defendant had acquired, used and disclosed Plaintiffs' Confidential Information. On information and belief, Defendant does not normally request

non-publication of patent applications and, instead, allows the vast majority of its patent applications to publish in the ordinary course.

264. Plaintiffs were harmed by Defendant's and its employees' acquisition, use, and disclosure of Plaintiffs' Confidential Information, and Defendant's and its employees' actions were substantial factors in causing Plaintiffs' harm. As a direct and proximate result of Defendant's and its employees' willful, improper, and unlawful acquisition, use, and disclosure of Plaintiffs' trade secrets, Plaintiffs have suffered, and will continue to suffer, great harm and damage. Plaintiffs will continue to be irreparably damaged unless Defendant is enjoined from further use and disclosure of Plaintiffs' Confidential Information.

265. Defendant and its employees were unjustly enriched by Defendant's acquisition, use, and disclosure of Plaintiffs' Confidential Information, and Defendant's and its employees' actions were substantial factors in causing Defendant to be unjustly enriched. Defendant and its employees were unjustly enriched because its misappropriation of Plaintiffs' Confidential Information caused Defendant and its employees to receive a benefit that they otherwise would not have achieved.

266. If neither damages nor unjust enrichment caused by Defendant's and its employees' misappropriation of Plaintiffs' Confidential Information is provable at trial, Plaintiffs are entitled to a reasonable royalty for the period of time that Defendant's and its employees use of Plaintiffs' Confidential Information could have been prohibited.

267. The aforementioned acts of Defendant and its employees wrongfully misappropriating Plaintiffs' trade secrets were, and continue to be, willful and malicious, warranting an award of reasonable attorneys' fees, as provided by Cal. Civ. Code § 3426.4, and exemplary damages, as provided by Cal. Civ. Code §§ 3294 and 3426.3(c).

## XXI.  FOURTEENTH CAUSE OF ACTION

## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,078,052)

268.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

269.  Lamego is a named inventor of U.S. Patent 10,078,052 presently recorded as owned by Apple.

270.  The '052 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '052 Patent recites an electronic device comprising a housing defining an aperture; an optical sensing system comprising a light emitter for emitting light through the aperture, the light emitter positioned adjacent the aperture; and a light detector for obtaining a first portion of the light after the first portion of the light reflects from an object; and a reflector disposed about the aperture and adapted to reflect a second portion of the light back into the object after the second portion of the light reflects from the object.  Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab.  Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '052 Patent, and should have been named as an inventor on the '052 Patent.

271.  In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

272.  Those assignments vested in Masimo all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '052 Patent and

Masimo has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '052 Patent.

273.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '052 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '052 Patent and has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '052 Patent.

274.   Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '052 Patent by adding inventor Diab as a named inventor.

## XXII.  FIFTEENTH CAUSE OF ACTION
## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,247,670)

275.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

276.   Lamego is a named inventor of U.S. Patent 10,247,670 presently recorded as owned by Apple.

277.   The '670 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '670 Patent recites an electronic device comprising a housing with a surface; a reflective layer that is formed on the surface, wherein the reflective layer has first and second openings; a light emitter that emits light

through the first opening; and a light detector that receives the light emitted by the light emitter through the second opening.  Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab.  Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '670 Patent, and should have been named as an inventor on the '670 Patent.

278.   In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

279.   Those assignments vested in Masimo all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '670 Patent and Masimo has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '670 Patent.

280.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '670 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '670 Patent and has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '670 Patent.

281. Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '670 Patent by adding inventor Diab as a named inventors.

## XXIII. SIXTEENTH CAUSE OF ACTION
### (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 9,952,095)

282. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

283. Lamego is a named inventor of U.S. Patent 9,952,095 presently recorded as owned by Apple.

284. The '095 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees. For example, Claim 1 of the '095 Patent recites an electronic device comprising a housing comprising a surface adapted to be positioned proximate a measurement site of a subject; a biometric sensor positioned at least partially within the surface and comprising: a plurality of light sources for emitting light toward the measurement site at a selected modulation frequency; and an optical sensor for obtaining light exiting the measurement site; and an input amplifier coupled to the output of the biometric sensor and disposed within the housing; a high pass filter coupled to an output of the input amplifier and disposed within the housing, the high pass filter having a cutoff frequency above that of a periodic biometric property of the measurement site; an output amplifier coupled to an output of the high pass filter and disposed within the housing; and an analog to digital converter coupled to an output of the output amplifier and disposed within the housing. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab. Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '095 Patent, and should have been named as an inventor on the '095 Patent.

285.   In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

286.   Those assignments vested in Masimo all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '095 Patent and Masimo has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '095 Patent.

287.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '095 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '095 Patent and has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '095 Patent.

288.   Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '095 Patent by adding inventor Diab as a named inventor.

## XXIV.  <u>SEVENTEENTH CAUSE OF ACTION</u>
## <u>(CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,219,754)</u>

289.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

290.  Lamego is a named inventor of U.S. Patent 10,219,754 presently recorded as owned by Apple.

291.  The '754 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '754 Patent recites a method for estimating physiological parameters when modulated light from a first light source and a second light source is emitted toward a body part of a user, the method comprising determining a first multiplier value by: turning on the first light source; generating a first initial signal in response to capturing a first light sample corresponding to the first light source; demodulating the first initial signal to produce first initial demodulated signals; filtering and decimating the first initial demodulated signals; and determining the first multiplier value based on the filtered and decimated first initial demodulated signals; determining a second multiplier value by: turning on the second light source; generating a second initial signal in response to capturing a second light sample corresponding to the second light source; demodulating the second initial signal to produce second initial demodulated signals; filtering and decimating the second initial demodulated signals; and determining the second multiplier value based on the filtered and decimated second initial demodulated signals; capturing multiple light samples while the first light source and the second light source are turned on to emit modulated light toward the body part of the user and converting the multiple light samples into a captured signal; demodulating the captured signal to produce multiple demodulated signals; performing a first decimation stage by: low pass filtering each demodulated signal; and decimating each

-109-

demodulated signal; performing a second decimation stage after the first decimation stage by: low pass filtering each demodulated signal; and decimating each demodulated signal; demultiplexing each demodulated signal after the second decimation stage to produce a first signal associated with the first light source and a second signal associated with the second light source; multiplying the first signal by the first multiplier value using a first multiplier circuit to obtain a first conditioned signal; multiplying the second signal by the second multiplier value using a second multiplier circuit to obtain a second conditioned signal; and analyzing the first conditioned signal and the second conditioned signal to estimate the physiological parameter of the user.  Lamego obtained this subject matter from discussions with, or jointly conceived it with, Al-Ali, Diab, and Weber.  Accordingly, Al-Ali, Diab, and Weber are joint inventors of any patentable subject matter claimed in the '754 Patent, and should have been named as inventors on the '754 Patent.

292.   In written assignments, Lamego, as well as Al-Ali, Diab, and Weber, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

293.   Those assignments vested in Masimo all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '754 Patent and Masimo has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '754 Patent.

294.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent

-110-

applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '754 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '754 Patent and has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '754 Patent.

295.   Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '754 Patent by adding inventors Al-Ali, Diab, and Weber as named inventors.

## XXV.  EIGHTEENTH CAUSE OF ACTION
## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 9,723,997)

296.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

297.  Lamego is a named inventor of U.S. Patent 9,723,997 presently recorded as owned by Apple.

298.   The '997 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Cercacor employees.  For example, Claim 20 of the '997 Patent recites a method for using a mobile personal computing device to obtain health data, comprising using a camera and a proximity sensor to emit light into a body part of a user touching a surface of the mobile personal computing device; using at least two of the camera, an ambient light sensor, or the proximity sensor to receive at least part of the emitted light reflected by the body part of the user and generate sensor data; and computing health data of the user, utilizing the processing unit, using at least the sensor data regarding the received light.  Lamego obtained this subject matter from

-111-

discussions with, or jointly conceived it with, Greg Olsen.  Accordingly, Olsen is a joint inventor of any patentable subject matter claimed in the '997 Patent, and should have been named as an inventor on the '997 Patent.

299.   In written assignments, Lamego, as well as Olsen, agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).

300.   Those assignments vested in Cercacor all legal and equitable title to all patents and patent applications reciting inventions made during their employment, such that Cercacor is at least a joint owner of the '997 Patent and Cercacor has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '997 Patent.

301.   In at least one written assignment, Lamego agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.  Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '997 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Masimo, Masimo would be a joint owner of the '997 Patent and has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '997 Patent.

302.   Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '997 Patent by adding inventor Olsen as a named inventor.

-112-

# XXVI.  NINETEENTH CAUSE OF ACTION
## (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 10,524,671)

303.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

304.  Lamego is a named inventor of U.S. Patent 10,524,671 presently recorded as owned by Apple.

305.  The '671 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '671 Patent recites a wearable device, comprising a first light source; a second light source, the second light source operating at a different wavelength than the first light source; at least one light receiver; and a processing unit communicably coupled to the first light source, the second light source, and the at least one light receiver; wherein the processing unit is configured to: use the first light source and the second light source to emit light into a body part of a user; and dependent on the light emitted by the first light source and received by the at least one light receiver, compute a pulse rate of the user using the light emitted by the second light source and received by the at least one light receiver.  Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab.  Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '671 Patent, and should have been named as an inventor on the '671 Patent.

306.  In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

307.  Those assignments vested in Masimo all legal and equitable title to all patents and patent applications reciting inventions made during their

employment, such that Masimo is at least a joint owner of the '671 Patent and Masimo has standing to seek correction of inventorship to perfect Masimo's ownership interest in the '671 Patent.

308.  In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  Accordingly, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '671 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '671 Patent and has standing to seek correction of inventorship to perfect Cercacor's ownership interest in the '671 Patent.

309.  Pursuant to 28 U.S.C. § 2201 and 35 U.S.C. § 256, Plaintiffs seek an order directing the U.S. Patent and Trademark Office to correct the inventorship of the '671 Patent by adding inventor Diab as a named inventor.

## XXVII.  TWENTIETH CAUSE OF ACTION
## (DECLARATORY JUDGMENT OF OWNERSHIP OF
## U.S. PATENT NO. 10,078,052)

310.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

311.  U.S. Patent 10,078,052 is recorded as owned by Apple.

312.  The '052 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '052 Patent recites an electronic device comprising a housing defining an aperture; an optical sensing system comprising a light emitter for

-114-

emitting light through the aperture, the light emitter positioned adjacent the aperture; and a light detector for obtaining a first portion of the light after the first portion of the light reflects from an object; and a reflector disposed about the aperture and adapted to reflect a second portion of the light back into the object after the second portion of the light reflects from the object.  Lamego obtained this subject matter from discussions with, or jointly conceived it with Diab.  Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '052 Patent, and should have been named as an inventor on the '052 Patent

313.  Lamego and Diab made any inventive contributions to at least Claim 1 while they were employees of Masimo.

314.  In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

315.  Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '052 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '052 Patent, including foreign counterparts.

316.  In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  That assignment vested in Cercacor all legal and equitable title to patents

and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '052 Patent from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '052 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '052 Patent, including foreign counterparts.

317. Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '052 Patent (or, to the extent it is determined that Masimo employees invented all of the patentable subject matter claimed in the '052 Patent, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '052 Patent. Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

## XXVIII. **TWENTY-FIRST CAUSE OF ACTION**
## **(DECLARATORY JUDGMENT OF OWNERSHIP OF**
## **U.S. PATENT NO. 10,247,670)**

318. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

319. U.S. Patent 10,247,670 is recorded as owned by Apple.

320. The '670 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees. For example, Claim 1 of the '670 Patent recites an electronic device comprising a housing with a surface; a reflective layer that is formed on the surface, wherein the reflective layer has first and second openings; a light emitter that emits light through the first opening; and a light detector that receives the light emitted by

-116-

the light emitter through the second opening.  Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab.  Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '670 Patent, and should have been named as an inventor on the '670 Patent.

321.   Lamego and Diab made any inventive contributions to at least Claim 1 while they were employees of Masimo.

322.   In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

323.   Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '670 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '670 Patent, including foreign counterparts.

324.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '670 Patent from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '670 Patent and all applications, patents,

-117-

continuations, divisionals, and reissues that claim priority to the '670 Patent, including foreign counterparts.

325.  Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '670 Patent (or, to the extent it is determined that Masimo employees invented all of the patentable subject matter claimed in the '670 Patent, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '670 Patent.  Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

## XXIX.  TWENTY-SECOND CAUSE OF ACTION
## (DECLARATORY JUDGMENT OF OWNERSHIP OF
## U.S. PATENT NO. 9,952,095)

326.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

327.  U.S. Patent 9,952,095 is recorded as owned by Apple.

328.  The '095 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '095 Patent recites an electronic device comprising a housing comprising a surface adapted to be positioned proximate a measurement site of a subject; a biometric sensor positioned at least partially within the surface and comprising: a plurality of light sources for emitting light toward the measurement site at a selected modulation frequency; and an optical sensor for obtaining light exiting the measurement site; and an input amplifier coupled to the output of the biometric sensor and disposed within the housing; a high pass filter coupled to an output of the input amplifier and disposed within the housing, the high pass filter having a cutoff frequency above that of a periodic

-118-

biometric property of the measurement site; an output amplifier coupled to an output of the high pass filter and disposed within the housing; and an analog to digital converter coupled to an output of the output amplifier and disposed within the housing.  Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab.  Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '095 Patent, and should have been named as an inventor on the '095 Patent.

329.   Lamego and Diab made any inventive contributions to at least Claim 1 while they were employees of Masimo.

330.   In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

331.   Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '095 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '095 Patent, including foreign counterparts.

332.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable

-119-

subject matter claimed in the '095 Patent from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '095 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '095 Patent, including foreign counterparts.

333.   Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '095 Patent (or, to the extent it is determined that Masimo employees invented all of the patentable subject matter claimed in the '095 Patent, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '095 Patent.  Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

## XXX.  TWENTY-THIRD CAUSE OF ACTION
## (DECLARATORY JUDGMENT OF OWNERSHIP OF
## U.S. PATENT NO. 10,219,754)

334.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

335.   U.S. Patent 10,219,754 is recorded as owned by Apple.

336.   The '754 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '754 Patent recites a method for estimating physiological parameters when modulated light from a first light source and a second light source is emitted toward a body part of a user, the method comprising determining a first multiplier value by: turning on the first light source; generating a first initial signal in response to capturing a first light sample corresponding to the first light source; demodulating the first initial signal to

-120-

produce first initial demodulated signals; filtering and decimating the first initial demodulated signals; and determining the first multiplier value based on the filtered and decimated first initial demodulated signals; determining a second multiplier value by: turning on the second light source; generating a second initial signal in response to capturing a second light sample corresponding to the second light source; demodulating the second initial signal to produce second initial demodulated signals; filtering and decimating the second initial demodulated signals; and determining the second multiplier value based on the filtered and decimated second initial demodulated signals; capturing multiple light samples while the first light source and the second light source are turned on to emit modulated light toward the body part of the user and converting the multiple light samples into a captured signal; demodulating the captured signal to produce multiple demodulated signals; performing a first decimation stage by: low pass filtering each demodulated signal; and decimating each demodulated signal; performing a second decimation stage after the first decimation stage by: low pass filtering each demodulated signal; and decimating each demodulated signal; demultiplexing each demodulated signal after the second decimation stage to produce a first signal associated with the first light source and a second signal associated with the second light source; multiplying the first signal by the first multiplier value using a first multiplier circuit to obtain a first conditioned signal; multiplying the second signal by the second multiplier value using a second multiplier circuit to obtain a second conditioned signal; and analyzing the first conditioned signal and the second conditioned signal to estimate the physiological parameter of the user. Lamego obtained this subject matter from discussions with, or jointly conceived it with, Al-Ali, Diab, and Weber. Accordingly, Al-Ali, Diab, and Weber are joint inventors of any patentable subject matter claimed in the '754 Patent, and should have been named as inventors on the '754 Patent.

337.   Lamego, Al-Ali, Diab, and Weber made any inventive contributions to at least Claim 1 while they were employees of Masimo.

338.   In written assignments, Lamego, Al-Ali, Diab, and Weber, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

339.   Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '754 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '754 Patent, including foreign counterparts.

340.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '754 Patent from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '754 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '754 Patent, including foreign counterparts.

341.   Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and

-122-

federal patent law, declaring that Masimo is at least a joint owner of the '754 Patent (or, to the extent it is determined that Masimo employees invented all of the patentable subject matter claimed in the '754 Patent, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '754 Patent.  Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

### XXXI.  TWENTY-FOURTH CAUSE OF ACTION
### (DECLARATORY JUDGMENT OF OWNERSHIP OF
### U.S. PATENT NO. 9,723,997)

342.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

343.  U.S. Patent 9,723,997 is recorded as owned by Apple.

344.  The '997 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Cercacor employees.  For example, Claim 20 of the '997 Patent recites a method for using a mobile personal computing device to obtain health data, comprising using a camera and a proximity sensor to emit light into a body part of a user touching a surface of the mobile personal computing device; using at least two of the camera, an ambient light sensor, or the proximity sensor to receive at least part of the emitted light reflected by the body part of the user and generate sensor data; and computing health data of the user, utilizing the processing unit, using at least the sensor data regarding the received light.  Lamego obtained this subject matter from discussions with, or jointly conceived it with, Greg Olsen.  Accordingly, Olsen is a joint inventor of any patentable subject matter claimed in the '997 Patent, and should have been named as an inventor on the '997 Patent.

345.  Lamego and Olsen made any inventive contributions to at least Claim 20 while they were employees of Cercacor.

-123-

346.   In written assignments, Lamego, as well as Olsen, agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).

347.   Those assignments vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Cercacor is at least a joint owner of the '997 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '997 Patent, including foreign counterparts.

348.   In at least one written assignment, Lamego agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.  That assignment vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '997 Patent from, or jointly conceived such subject matter with, Masimo employees while Lamego was an employee of Masimo, Masimo would be a joint owner of the '997 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '997 Patent, including foreign counterparts.

349.   Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Cercacor is at least a joint owner of the '997 Patent (or, to the extent it is determined that Cercacor employees invented all of the patentable subject matter claimed in the '997 Patent, that Cercacor is the

exclusive owner), and, in the alternative, that Masimo is a joint owner of the '997 Patent.  Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Cercacor and/or Masimo.

## XXXII.  TWENTY-FIVE CAUSE OF ACTION
## (DECLARATORY JUDGMENT OF OWNERSHIP OF
## U.S. PATENT NO. 10,524,671)

350.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

351.  U.S. Patent 10,524,671 is recorded as owned by Apple.

352.  The '671 Patent claims subject matter that Lamego obtained from discussions with, or jointly conceived with, Masimo employees.  For example, Claim 1 of the '671 Patent recites a wearable device, comprising a first light source; a second light source, the second light source operating at a different wavelength than the first light source; at least one light receiver; and a processing unit communicably coupled to the first light source, the second light source, and the at least one light receiver; wherein the processing unit is configured to: use the first light source and the second light source to emit light into a body part of a user; and dependent on the light emitted by the first light source and received by the at least one light receiver, compute a pulse rate of the user using the light emitted by the second light source and received by the at least one light receiver.  Lamego obtained this subject matter from discussions with, or jointly conceived it with, Diab.  Accordingly, Diab is a joint inventor of any patentable subject matter claimed in the '671 Patent, and should have been named as an inventor on the '671 Patent.

353.  Lamego and Diab made any inventive contributions to at least Claim 1 while they were employees of Masimo.

354.   In written assignments, Lamego, as well as Diab, agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

355.   Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '671 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '671 Patent, including foreign counterparts.

356.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '671 Patent from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '671 Patent and all applications, patents, continuations, divisionals, and reissues that claim priority to the '671 Patent, including foreign counterparts.

357.   Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '671 Patent (or, to the extent it is determined that Masimo employees invented all of

the patentable subject matter claimed in the '671 Patent, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '671 Patent.  Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

### XXXIII.  TWENTY-SIXTH CAUSE OF ACTION
### (DECLARATORY JUDGMENT OF OWNERSHIP OF
### U.S. PATENT APPLICATION NO. 15/960,507)

358.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

359.  U.S. Patent Application 15/960,507 is recorded as owned by Apple.

360.  Any inventive contribution that Lamego could have made to the alleged invention of the subject matter claimed in the '507 application was made while he was a Masimo employee during 2000-2001 and 2003-2006, or a Cercacor employee during 2006-2014.  This includes, for example, Claim 21 of the '507 Application, which recites "a biometric sensor within a housing of a wearable electronic device, the biometric sensor comprising: an emitter for transmitting modulated light toward a measurement site of a subject through a first aperture in the housing; an optical sensor for receiving modulated light through a second aperture in the housing, the modulated light at least partially exiting the measurement site; a high pass filter to receive an output of the optical sensor, the high pass filter having a cutoff frequency above a frequency of a periodic optical property of the measurement site; and an analog to digital converter to receive an output of the high pass filter."

361.  In written assignments, Lamego agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments,  improvements,  or  trade  secrets)  conceived  during  their

employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

362.   Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '507 Application and all applications, patents, continuations, divisionals, and reissues that claim priority to the '507 Application, including foreign counterparts.

363.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '507 Application from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '507 Application and all applications, patents, continuations, divisionals, and reissues that claim priority to the '507 Application, including foreign counterparts.

364.   Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '507 Application (or, to the extent it is determined that Masimo employees invented all of the patentable subject matter claimed in the '507 Application, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '507 Application.  Plaintiffs also seek an order from the Court directing the

-128-

Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

## XXXIV.  TWENTY-SEVENTH CAUSE OF ACTION
## (DECLARATORY JUDGMENT OF OWNERSHIP OF
## U.S. PATENT APPLICATION NO. 16/700,710)

365.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

366.   U.S. Patent Application 16/700,710 is recorded as owned by Apple.

367.   Any inventive contribution that Lamego could have made to the alleged invention of the subject matter claimed in the '710 application was made while he was a Masimo employee during 2000-2001 and 2003-2006, or a Cercacor employee during 2006-2014.  This includes, for example, Claim 15 of the '710 Application, which recites "a wearable device, comprising: a first light source that operates at a first wavelength; a second light source that operates at a second wavelength; at least one light receiver; and a processing unit that is configured to, upon detection of an object using light of the first wavelength received by the at least one light receiver, use light of the second wavelength received by the at least one light receiver to determine health data for a user."

368.   In written assignments, Lamego agreed to assign and assigned to Masimo all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during their employment at Masimo, including ownership of all patents and patent applications claiming such subject matter.

369.   Those assignments vested in Masimo all legal and equitable title to patents and patent applications reciting inventions made during their employment, such that Masimo is at least a joint owner of the '710 Application and all applications, patents, continuations, divisionals, and reissues that claim priority to the ' 710 Application, including foreign counterparts.

370.   In at least one written assignment, Lamego agreed to assign and assigned to Cercacor all patentable subject matter (as well as all works of authorship, developments, improvements, or trade secrets) conceived during his employment at Cercacor, including ownership of all patents and patent applications claiming such subject matter.  An exemplary agreement conveying such rights was attached as Exhibit A to Apple's Motion to Dismiss (Doc. No. 16-3).  That assignment vested in Cercacor all legal and equitable title to patents and patent applications reciting inventions made during his employment, such that, to the extent the evidence establishes that Lamego obtained patentable subject matter claimed in the '710 Application from, or jointly conceived such subject matter with, Cercacor employees while Lamego was an employee of Cercacor, Cercacor would be a joint owner of the '710 Application and all applications, patents, continuations, divisionals, and reissues that claim priority to the '710 Application, including foreign counterparts.

371.   Based on the forgoing, Plaintiffs seek declaratory relief under at least 28 U.S.C. §§ 2201 & 2202, as well as applicable state contract law and federal patent law, declaring that Masimo is at least a joint owner of the '710 Application (or, to the extent it is determined that Masimo employees invented all of the patentable subject matter claimed in the '710 Application, that Masimo is the exclusive owner), and, in the alternative, that Cercacor is a joint owner of the '710 Application.  Plaintiffs also seek an order from the Court directing the Patent Office to amend the Patent Office records to reflect the ownership interest of Masimo and/or Cercacor.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment in their favor against Defendant for the following relief:

A.      Pursuant to 35 U.S.C. § 271, a determination that Defendant and its officers, agents, servants, employees, attorneys and all others in active concert

-130-

and/or participation with them have infringed each of the '265, '628, '553, '554, '564, '765, '194, '195, '366, '994, '703, and '776 patents through the manufacture, use, importation, offer for sale, and/or sale of infringing products and/or any of the other acts prohibited by 35 U.S.C. § 271;

B. Pursuant to 35 U.S.C. § 283, an injunction enjoining Defendant and its officers, agents, servants, employees, attorneys and all others in active concert and/or participation with them from infringing the '265, '628, '553, '554, '564, '765, '194, '195, '366, '994, '703, and '776 patents through the manufacture, use, importation, offer for sale, and/or sale of infringing products and/or any of the other acts prohibited by 35 U.S.C. § 271, including preliminary and permanent injunctive relief;

C. Pursuant to 35 U.S.C. § 284, an award compensating Masimo for Defendant's infringement of the '265, '628, '553, '554, '564, '765, '194, '195, '366, '994, '703, and '776 patents through payment of not less than a reasonable royalty on Defendant's sales of infringing products;

D. Pursuant to 35 U.S.C. § 284, an award increasing damages up to three times the amount found or assessed by the jury for Defendant's infringement of each of the '265, '628, '553, '554, '564, '765, '194, '195, '366, '994, '703, and '776 patents in view of the willful and deliberate nature of the infringement;

E. Pursuant to 35 U.S.C. § 285, a finding that this is an exceptional case, and an award of reasonable attorneys' fees and non-taxable costs;

F. An assessment of prejudgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, pursuant to 35 U.S.C. § 284;

G. That Defendant be adjudged to have misappropriated Plaintiffs' trade secrets in violation of the California Uniform Trade Secrets Act, Cal. Civ. Code

§ 3426 *et seq*., and that Defendant's acts in doing so be adjudged willful, malicious, oppressive, and done knowingly;

H.     That Defendant be adjudged to have been unjustly enriched;

I.     That Plaintiffs be awarded damages for actual losses, unjust enrichment, and/or a reasonable royalty pursuant to Cal. Civ. Code § 3426.3.

J.     That Defendant, its agents, servants, employees, and attorneys, and all those persons in active concert or participation with Defendant, be forthwith temporarily, preliminarily, and thereafter permanently required to return all of Plaintiffs' trade secrets and confidential information and enjoined from further using and disclosing to any third parties any of Plaintiffs' trade secrets and confidential information;

K.     That Defendant be enjoined from selling or offering to sell any product, including Defendant's Apple Watch Series 4 and later devices, that includes or uses any of Plaintiffs' trade secrets;

L.     That Defendant be directed to file with this Court and to serve on Plaintiffs within thirty (30) days after the service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

M.     That Defendant be required to account to Plaintiffs for any and all gains, profits, and advantages derived by it, and all damages sustained by Plaintiffs, by reason of Defendant's acts complained herein;

N.     That Plaintiffs be awarded exemplary damages and reasonable attorneys' fees pursuant to Cal. Civ. Code § 3426.3(c) and 3426.4;

O.     That the U.S. Patent and Trademark Office be directed to correct the inventorship of the '052, '670, '095, '754, '671, and '997 patents to add the correct inventors;

P.     An order imposing a constructive trust for the benefit of Plaintiffs over: (1) any trade secrets Defendants obtained from Plaintiffs; (2) any profits,

revenues, or other benefits obtained by Defendants as a result of any disclosure or use of trade secrets obtained from Plaintiffs; and (3) the Lamego Patents and the Lamego Patent Applications;

Q.     That Plaintiffs be declared exclusive owners, or at least joint owners, of the patents and patent applications that are based on Plaintiffs' developments, including the '052, '670, '095, '754, '671, and '997 patents, and the '507 and '710 applications, and all applications, patents, continuations, divisionals, and reissues that claim priority to those patents and that patent application, including foreign counterparts;

R.     An award of taxable costs; and

S.     That this Court award such other and further relief as this Court may deem just.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: February 5, 2021     By: */s/ Adam B. Powell*
                                        Joseph R. Re
                                        Stephen C. Jensen
                                        Perry D. Oldham
                                        Stephen W. Larson
                                        Adam B. Powell

                                        Attorneys for Plaintiffs,
                                        Masimo Corporation and
                                        Cercacor Laboratories, Inc.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  February 5, 2021       By: */s/ Adam B. Powell*
                                Joseph R. Re
                                Stephen C. Jensen
                                Perry D. Oldham
                                Stephen W. Larson
                                Adam B. Powell

                                Attorneys for Plaintiffs,
                                Masimo Corporation and
                                Cercacor Laboratories, Inc.

34315472

-134-

# EXHIBIT 1

U.S. Patent No. 10,258,265

| U.S. Patent No. 10,258,265 Claim 1 | Description of Accused Products |
|---|---|
| 1. A noninvasive optical physiological measurement device adapted to be worn by a wearer, the noninvasive optical physiological measurement device providing an indication of a physiological parameter of the wearer comprising: | The Apple Watch Series 4 and later devices are noninvasive optical physiological measurement devices adapted to be worn by a wearer, and provide an indication of a physiological parameter as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The emitters and detectors are used to monitor physiological parameters, such as pulse rate.  *See* https://support.apple.com/en-us/HT204666. |
| a plurality of emitters of different wavelengths; | The Apple Watch Series 4 and later devices include a plurality of emitters of different wavelengths.  The Apple Watch Series 4 and later devices include green and infrared LEDs as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |

| U.S. Patent No. 10,258,265 Claim 1 | Description of Accused Products |
|---|---|
| a housing having a surface and a circular wall protruding from the surface; | The Apple Watch Series 4 and later devices include a housing having a surface and a circular wall protruding from the surface.  Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices. The Apple Watch Series 4 and later devices have, for example, a circular wall arranged on substrate:<br><br>FIG. 4C |

| U.S. Patent No. 10,258,265 Claim 1 | Description of Accused Products |
|---|---|
| at least four detectors arranged on the surface and spaced apart from each other, the at least four detectors configured to output one or more signals responsive to light from the one or more light emitters attenuated by body tissue, the one or more signals indicative of a physiological parameter of the wearer; and | The Apple Watch Series 4 and later devices include at least four detectors arranged on the surface and spaced apart from each other, the at least four detectors configured to output one or more signals responsive to light from the one or more light emitters attenuated by body tissue, the one or more signals indicative of a physiological parameter of the wearer.  The Apple Watch Series 4 and later devices include eight photodiode sensors as found on the Apple website at https://support.apple.com/en-us/HT204666:  The Apple Watches Series 4 and later devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue and is indicative of a physiological parameter of the wearer: <blockquote>The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.</blockquote> https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 10,258,265 Claim 1 | Description of Accused Products |
|---|---|
| a light permeable cover arranged above at least a portion of the housing, the light permeable cover comprising a protrusion arranged to cover the at least four detectors. | The Apple Watch Series 4 and later devices include a light permeable cover arranged above at least a portion of the housing, the light permeable cover comprising a protrusion arranged to cover the at least four detectors.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of the Apple Watch Series 4 and later devices.  The Apple Watch Series 4 and later devices have, for example, a dome-shaped carrier having a surface that protrudes from the back of the watch. The dome-shaped carrier is arranged above at least a portion of the housing and is arranged to cover the at least four detectors:<br><br><br>FIG. 4A    FIG. 4C |

U.S. Patent No. 10,292,628

| U.S. Patent No. 10,292,628 Claim 1 | Description of Accused Products |
|---|---|
| 1. A noninvasive optical physiological sensor comprising: | The Apple Watch Series 4 and later devices are noninvasive optical physiological sensors.<br><br>The Apple Watch Series 4 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared LEDs) and at least four detectors (for example, photodiode sensors) spaced apart from each other as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The emitters and detectors are used to monitor physiological parameters, such as pulse rate.  *See* https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 10,292,628 Claim 1 | Description of Accused Products |
|---|---|
| a plurality of emitters configured to emit light into tissue of a user; | The Apple Watch Series 4 and later devices include a plurality of emitters configured to emit light into tissue of a user.  The Apple Watch Series 4 and later devices include green and infrared LEDs as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The Apple Watches Series 4 and later devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue and is indicative of a physiological parameter of the wearer:<br><br>The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.<br><br>https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 10,292,628 Claim 1 | Description of Accused Products |
|---|---|
| a plurality of detectors configured to detect light that has been attenuated by tissue of the user, wherein the plurality of detectors comprise at least four detectors; | The Apple Watch Series 4 and later devices include a plurality of detectors configured to detect light that has been attenuated by tissue of the user, wherein the plurality of detectors comprise at least four detectors.  The Apple Watch Series 4 and later devices include photodiode sensors as found on the Apple website at https://support.apple.com/en-us/HT204666:  The Apple Watches Series 4 and later devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue and is indicative of a physiological parameter of the wearer: The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate. https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 10,292,628 Claim 1 | Description of Accused Products |
|---|---|
| a housing configured to house at least the plurality of detectors; and | The Apple Watch Series 4 and later devices include a housing configured to house at least the plurality of detectors.  Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication), shows, for example, such housing:<br><br><br>*FIG. 4C* |

| U.S. Patent No. 10,292,628 Claim 1 | Description of Accused Products |
|---|---|
| a light permeable cover configured to be located between tissue of the user and the plurality of detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises an outwardly protruding convex surface configured to cause tissue of the user to conform to at least a portion of the outwardly protruding convex surface when the noninvasive optical physiological sensor is worn by the user and during operation of the noninvasive optical physiological sensor, and wherein the plurality of detectors are configured to receive light passed through the outwardly protruding convex surface after attenuation by tissue of the user. | The Apple Watch Series 4 and later devices include a light permeable cover configured to be located between tissue of the user and the plurality of detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises an outwardly protruding convex surface configured to cause tissue of the user to conform to at least a portion of the outwardly protruding convex surface when the noninvasive optical physiological sensor is worn by the user and during operation of the noninvasive optical physiological sensor, and wherein the plurality of detectors are configured to receive light passed through the outwardly protruding convex surface after attenuation by tissue of the user.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such a cover in the Apple Watch Series 4 and later devices:<br><br><br>FIG. 4A    FIG. 4C |

U.S. Patent No. 10,588,553

| U.S. Patent No. 10,588,553 Claim 1 | Description of Accused Products |
|---|---|
| A noninvasive optical physiological sensor comprising: | The Apple Watch Series 4 and 5 devices are noninvasive optical physiological sensors as found on the Apple website at https://support.apple.com/en-us/HT204666:<br> |

| U.S. Patent No. 10,588,553 Claim 1 | Description of Accused Products |
|---|---|
| a plurality of emitters configured to emit light into tissue of a user; | The Apple Watch Series 4 and 5 devices include a plurality of emitters configured to emit light into tissue of a user.  The Apple Watch Series 4 and 5 devices include green and infrared LEDs as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| at least four detectors, wherein at least one of the at least four detectors is configured to detect light that has been attenuated by tissue of the user, and wherein the at least four detectors are arranged on a substrate; | The Apple Watch Series 4 and 5 devices include at least four detectors, wherein at least one of the at least four detectors is configured to detect light that has been attenuated by tissue of the user, and wherein the at least four detectors are arranged on a substrate.  The Apple Watch Series 4 and 5 devices include eight photodiode sensors on a substrate, as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The Apple Watches Series 4 and 5 devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue: |

| U.S. Patent No. 10,588,553 Claim 1 | Description of Accused Products |
|---|---|
| | The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.<br><br>https://support.apple.com/en-us/HT204666. |
| a wall configured to circumscribe at least the at least four detectors; and | The Apple Watch Series 4 and 5 devices include a wall configured to circumscribe at least the at least four detectors.  Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices.  The Apple Watch Series 4 and later devices have, for example, wall circumscribing photodiode sensors arranged on a substrate:<br><br><br><br>FIG. 4C |

| U.S. Patent No. 10,588,553 Claim 1 | Description of Accused Products |
|---|---|
| a cover configured to be located between tissue of the user and the at least four detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises a single protruding convex surface operable to conform tissue of the user to at least a portion of the single protruding convex surface when the noninvasive optical physiological sensor is worn by the user, and wherein the wall operably connects to the substrate and the cover. | The Apple Watch Series 4 and later devices include a cover configured to be located between tissue of the user and the at least four detectors when the noninvasive optical physiological sensor is worn by the user, wherein the cover comprises a single protruding convex surface operable to conform tissue of the user to at least a portion of the single protruding convex surface when the noninvasive optical physiological sensor is worn by the user, and wherein the wall operably connects to the substrate and the cover.<br><br>The dome-shaped carrier in Figs. 4A and 4C of Apple's '912 publication is illustrative of the Apple Watch Series 4 and later devices.  The dome-shaped carrier has a surface that protrudes from the back of the watch, is located between tissue of the user and the at least four detectors when the noninvasive optical physiological sensor is worn by the user, and comprises a single protruding convex surface operable to conform tissue of the user to at least a portion of the single protruding convex surface when the noninvasive optical physiological sensor is worn by the user, wherein the wall operably connects to the substrate and the cover:<br><br><br>*FIG. 4A*          *FIG. 4C* |

U.S. Patent No. 10,588,554

| U.S. Patent No. 10,588,554 Claim 20 | Description of Accused Products |
|---|---|
| A physiological measurement system comprising: | The Apple Watch Series 4 and later devices in combination with iPhone devices are physiological measurement systems.<br><br>The Apple Watch Series 4 and later devices as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |

| U.S. Patent No. 10,588,554 Claim 20 | Description of Accused Products |
|---|---|
| a physiological sensor device comprising: | The Apple Watch Series 4 and later devices are physiological sensor devices.<br><br>The Apple Watch Series 4 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared LEDs) and at least four detectors (for example, photodiode sensors) spaced apart from each other as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The emitters and detectors are used to monitor physiological parameters, such as pulse rate.  *See* https://support.apple.com/en-us/HT204666. |
| a plurality of emitters configured to emit light into tissue of a user; | The Apple Watch Series 4 and later devices include a plurality of emitters configured to emit light into tissue of a user.  The Apple Watch Series 4 and later devices include green and infrared LEDs as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |

| U.S. Patent No. 10,588,554 Claim 20 | Description of Accused Products |
|---|---|
| at least four detectors, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector; | The Apple Watch Series 4 and later devices include at least four detectors, wherein each of the at least four detectors has a corresponding window that allows light to pass through to the detector. The Apple Watch Series 4 and later devices include eight photodiode sensors with corresponding windows that allow light to pass through to the detector, as found on the Apple website at https://support.apple.com/en-us/HT204666:  The Apple Watches Series 4 and later devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue: <br> The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate. <br> https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 10,588,554 Claim 20 | Description of Accused Products |
|---|---|
| a wall that surrounds at least the at least four detectors; and | The Apple Watch Series 4 and later devices include a wall that surrounds at least the at least four detectors.  Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices.  The Apple Watch Series 4 and later devices have, for example, a wall surrounding photodiode sensors arranged on substrate: <br><br>  <br><br> *FIG. 4C* |

| U.S. Patent No. 10,588,554 Claim 20 | Description of Accused Products |
|---|---|
| a cover comprising a single protruding convex surface, wherein the single protruding convex surface is configured to be located between tissue of the user and the at least four detectors when the physiological sensor device is worn by the user, wherein at least a portion of the single protruding convex surface is sufficiently rigid to cause tissue of the user to conform to at least a portion of a shape of the single protruding convex surface when the physiological sensor device is worn by the user, and wherein the cover operably connects to the wall; and | The Apple Watch Series 4 and later devices include a cover comprising a single protruding convex surface, wherein the single protruding convex surface is configured to be located between tissue of the user and the at least four detectors when the physiological sensor device is worn by the user, wherein at least a portion of the single protruding convex surface is sufficiently rigid to cause tissue of the user to conform to at least a portion of a shape of the single protruding convex surface when the physiological sensor device is worn by the user, and wherein the cover operably connects to the wall; and.<br><br>The Apple Watch Series 4 and later devices include a dome-shaped carrier having a surface that protrudes from the back of the watch. The dome-shaped carrier is located between tissue of the user and the at least four detectors when the noninvasive optical physiological sensor is worn by the user, and comprises a single protruding convex surface operable to conform to tissue of the user to at least a portion of the single protruding convex surface when the noninvasive optical physiological sensor is worn by the user, and wherein the wall operably connects to the substrate and the cover. Figs. 4A and 4C of Apple's '912 publication are illustrative of the dome-shaped cover in the Apple Watch Series 4 and later devices:<br><br><br>FIG. 4A    FIG. 4C |

| U.S. Patent No. 10,588,554 Claim 20 | Description of Accused Products |
|---|---|
| a handheld computing device in wireless communication with the physiological sensor device. | The Apple Watch Series 4 and later devices are physiological sensor devices that communicate wirelessly with handheld computing devices.<br><br>The Apple Watch Series 4 and later devices communicate wirelessly with Apple iOS devices as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The Apple Watch Series 4 and later devices communicate wirelessly with Apple iOS devices as described on the Apple website at https://support.apple.com/en-us/HT204505:<br><br>To set up and use your Apple Watch, you need an iPhone with the latest version of iOS.<br><br>watchOS 6 is compatible with Apple Watch Series 1 and later. Upgrading to watchOS 6 requires an iPhone 6s or later running iOS 13 or later.<br><br>You also need to make sure that your iPhone has Bluetooth turned on, and that it's connected to Wi-Fi or a cellular network.<br><br>If you already set up your Apple Watch but want to use it with a different iPhone, you can transfer your Apple Watch and its content to your new iPhone. |

U.S. Patent No. 10,624,564

| U.S. Patent No. 10,624,564 Claim 1 | Description of Accused Products |
|---|---|
| 1. A user-worn physiological measurement device comprising: | The Apple Watch Series 4 and later devices are user-worn physiological measurement devices as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br> |
| one or more emitters configured to emit light into tissue of a user; | The Apple Watch Series 4 and later devices include one or more emitters configured to emit light into tissue of a user as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br> |
| at least four detectors arranged on a substrate; | The Apple Watch Series 4 and later devices include at least four detectors arranged on a substrate as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,624,564 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| a cover comprising a protruding convex surface, wherein the protruding convex surface extends over all of the at least four detectors arranged on the substrate, wherein at least a portion of the protruding convex surface is rigid; | The Apple Watch Series 4 and later devices include a rigid protruding convex surface that extends over all of the at least four detectors arranged on the substrate.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such a cover in the Apple Watch Series 4 and later devices: |
| one or more processors configured to: | The Apple Watch Series 4 and later devices include one or more processors as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,624,564 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| receive one or more signals from at least one of the at least four detectors, the one or more signals responsive to at least a physiological parameter of the user; and | The Apple Watch Series 4 and later devices  receive one or more signals from at least one of the at least four detectors, the one or more signals responsive to at least a physiological parameter of the user as shown on the Apple website at https://support.apple.com/en-us/HT204666: |
| process the one or more signals to determine measurements of the physiological parameter; | The Apple Watch Series 4 and later devices  process the one or more signals to determine measurements of the physiological parameter as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,624,564 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| a network interface configured to communicate with a mobile phone; | The Apple Watch Series 4 and later devices include a network interface configured to communicate with a mobile phone as shown on the Apple website at https://support.apple.com/en-us/HT204666: |
| a touch-screen display configured to provide a user interface, wherein: | The Apple Watch Series 4 and later devices include a touch-screen display configured to provide a user interface as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,624,564 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| the user interface is configured to display indicia responsive to the measurements of the physiological parameter, and | The Apple Watch Series 4 and later devices include a user interface configured to display indicia responsive to the measurements of the physiological parameter as shown on the Apple website at https://support.apple.com/en-us/HT204666: |
| an orientation of the user interface is configurable responsive to a user input; | The Apple Watch Series 4 and later devices have an orientation of the user interface that is configurable responsive to a user input as shown on the Apple website at https://support.apple.com/guide/watch/change-language-orientation-apple-watch-apd0bf18f46b/watchos. |

| U.S. Patent No. 10,624,564 Claim 1 | Description of Accused Products |
|---|---|
| a wall that surrounds at least the at least four detectors, wherein the wall operably connects to the substrate and the cover; | The Apple Watch Series 4 and later devices include a wall that surrounds at least the at least four detectors and operably connects to the substrate and the cover.<br><br>Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices.  The Apple Watch Series 4 and later devices have, for example, such a wall:<br><br><br><br>FIG. 4C |
| a storage device configured to at least temporarily store at least the measurements of the physiological parameter; and | The Apple Watch Series 4 and later devices include a storage device configured to at least temporarily store at least the measurements of the physiological parameter as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,624,564 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| a strap configured to position the physiological measurement device on the user. | The Apple Watch Series 4 and later devices include a strap configured to position the physiological measurement device on the user as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

**U.S. Patent No. 10,631,765**

| U.S. Patent No. 10,631,765 Claim 1 | Description of Accused Products |
|---|---|
| 1. A physiological measurement system comprising: | The Apple Watch Series 4 and later devices in combination with iPhone devices are physiological measurement systems.<br><br>The Apple Watch Series 4 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared LEDs) and at least four detectors (for example, photodiode sensors) spaced apart from each other as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The emitters and detectors are used to monitor physiological parameters, such as pulse rate.  *See* https://support.apple.com/en-us/HT204666. |
| a physiological sensor device comprising: | The Apple Watch Series 4 and later devices are physiological sensor devices as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,631,765 Claim 1 | Description of Accused Products |
|---|---|
| | <br><br>The emitters and detectors are used to monitor physiological parameters, such as pulse rate.  *See* https://support.apple.com/en-us/HT204666. |
| one or more emitters configured to emit light into tissue of a user; | The Apple Watch Series 4 and later devices include one or more emitters configured to emit light into tissue of a user as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The emitters and detectors are used to monitor physiological parameters, such as pulse rate.  *See* https://support.apple.com/en-us/HT204666. |
| at least four detectors, wherein each of the at least four detectors has a corresponding window that | The Apple Watch Series 4 and later devices include at least four detectors with a corresponding window that allows light to pass through to the detector.<br><br>The Apple Watch Series 4 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared |

| U.S. Patent No. 10,631,765 Claim 1 | Description of Accused Products |
|---|---|
| allows light to pass through to the detector; | LEDs) and at least four detectors (for example, photodiode sensors) spaced apart from each other as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The emitters and detectors are used to monitor physiological parameters, such as pulse rate.  *See* https://support.apple.com/en-us/HT204666.<br><br>*See also* apertures 230 described in US20190090806A1, including Fig. 2. |
| a wall that surrounds at least the at least four detectors; and | The Apple Watch Series 4 and later devices include a wall that surrounds at least the at least four detectors. |

29

| U.S. Patent No. 10,631,765 Claim 1 | Description of Accused Products |
|---|---|
| | Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices.  The Apple Watch Series 4 and later devices have, for example, such a wall:<br><br><br><br>*FIG. 4C* |
| a cover comprising a protruding convex surface, wherein the protruding convex surface is above all of the at least four detectors, wherein at least a portion of the protruding convex surface is rigid, and wherein the cover operably connects to the wall; and | The Apple Watch Series 4 and later devices include a rigid protruding convex surface that is above all of the at least four detectors and operably connects to the wall. |

| U.S. Patent No. 10,631,765 Claim 1 | Description of Accused Products |
|---|---|
| | Figs. 4A and 4C of Apple's '912 publication are illustrative of such a cover in the Apple Watch Series 4 and later devices:<br><br><br>*FIG. 4A*     *FIG. 4C* |
| a handheld computing device in wireless communication with the physiological sensor device, wherein the handheld computing device comprises: | The Apple iPhone devices are in wireless communication with the physiological sensor device as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to | The Apple iPhone devices include one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological parameter of the user as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

31

| U.S. Patent No. 10,631,765 Claim 1 | Description of Accused Products |
|---|---|
| at least a physiological parameter of the user; |  |
| a touch-screen display configured to provide a user interface, wherein: | The iPhone devices include a touch-screen display configured to provide a user interface as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| the user interface is configured to display indicia responsive to measurements of the physiological parameter, and | The Apple iPhone devices include a user interface configured to display indicia responsive to measurements of the physiological parameter as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,631,765 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| an orientation of the user interface is configurable responsive to a user input; and | The Apple iPhone devices have an orientation of the user interface that is configurable responsive to a user input as shown on the Apple website at https://support.apple.com/en-us/HT204547, https://support.apple.com/guide/watch/change-language-orientation-apple-watch-apd0bf18f46b/watchos. |
| a storage device configured to at least temporarily store at least the measurements of the physiological parameter. | The Apple iPhone devices include a storage device configured to at least temporarily store at least the measurements of the physiological parameter as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

U.S. Patent No. 10,702,194

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| 1. A physiological measurement system comprising: | The Apple Watch Series 4 and later devices are physiological measurement systems as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br> |
| a physiological sensor device comprising: | The Apple Watch Series 4 and later devices are physiological sensor devices as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| one or more emitters configured to emit light into tissue of a user; | The Apple Watch Series 4 and later devices include one or more emitters configured to emit light into tissue of a user as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| a first set of photodiodes, wherein: | The Apple Watch Series 4 and later devices include a first set of photodiodes as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| the first set of photodiodes comprises at least four photodiodes, | The Apple Watch Series 4 and later devices include the first set of photodiodes comprises at least four photodiodes as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| the photodiodes of the first set of photodiodes are connected to one another in parallel to provide a first signal stream, and | Upon information and belief, the Apple Watch Series 4 and later devices include a first set of photodiodes connected to one another in parallel to provide a first signal stream as shown on the Apple website at https://support.apple.com/en-us/HT204666: |
| each of the photodiodes of the first set of photodiodes has a corresponding window that allows light to pass through to the photodiode; | The Apple Watch Series 4 and later devices are configured so that each of the photodiodes of the first set of photodiodes has a corresponding window that allows light to pass through to the photodiode as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| | <br><br>See also apertures 230 described in US20190090806A1, including Fig. 2. |
| a second set of photodiodes, wherein: | The Apple Watch Series 4 and later devices include a second set of photodiodes as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| the second set of photodiodes comprises at least four photodiodes, | The Apple Watch Series 4 and later devices include a second set of photodiodes that comprises four photodiodes as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| the photodiodes of the second set of photodiodes are connected to one another in parallel to provide a second signal stream, and | Upon information and belief, the Apple Watch Series 4 and later devices include photodiodes connected to one another in parallel to provide a second signal stream as shown on the Apple website at https://support.apple.com/en-us/HT204666: |
| each of the photodiodes of the second set of photodiodes has a corresponding window that allows light to pass through to the photodiode; | The Apple Watch Series 4 and later devices are configured so that each of the photodiodes of the second set of photodiodes has a corresponding window that allows light to pass through to the photodiode as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| | <br><br>See also apertures 230 described in US20190090806A1, including Fig. 2. |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| a wall that surrounds at least the first and second sets of photodiodes; and | The Apple Watch Series 4 and later devices include a wall that surrounds at least the first and second sets of photodiodes.<br><br>Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices.  The Apple Watch Series 4 and later devices have, for example, such a wall:<br><br><br><br>*FIG. 4C* |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| a cover comprising a protruding convex surface, wherein the protruding convex surface is above all of the photodiodes of the first and second sets of photodiodes, wherein at least a portion of the protruding convex surface is rigid, and wherein the cover is above the wall; and | The Apple Watch Series 4 and later devices include a rigid protruding convex surface that is above all of the photodiodes of the first and second sets of photodiodes and the wall.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such a cover in the Apple Watch Series 4 and later devices:<br><br> |
| a handheld computing device in wireless communication with the physiological sensor device, wherein the handheld computing device comprises: | The Apple iPhone devices are in wireless communication with the physiological sensor device as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| one or more processors configured to wirelessly receive one or more signals from the physiological | The Apple iPhone devices include one or more processors configured to wirelessly receive one or more signals from the physiological sensor device, the one or more signals responsive to at least a physiological |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| sensor device, the one or more signals responsive to at least a physiological parameter of the user; | parameter of the user as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| a touch-screen display configured to provide a user interface, wherein: | The Apple iPhone devices include a touch-screen display configured to provide a user interface as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| the user interface is configured to display indicia responsive to measurements of the physiological parameter, and | The Apple iPhone devices include a user interface configured to display indicia responsive to measurements of the physiological parameter as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,194 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| an orientation of the user interface is configurable responsive to a user input; and | The Apple iPhone devices have an orientation of the user interface that is configurable responsive to a user input as shown on the Apple website at https://support.apple.com/en-us/HT204547, https://support.apple.com/guide/watch/change-language-orientation-apple-watch-apd0bf18f46b/watchos. |
| a storage device configured to at least temporarily store at least the measurements of the physiological parameter. | The Apple iPhone devices include a storage device configured to at least temporarily store at least the measurements of the physiological parameter as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

U.S. Patent No. 10,702,195

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| 1. A user-worn physiological measurement device that defines a plurality of optical paths, the physiological measurement device comprising: | The Apple Watch Series 4 and later devices are user-worn physiological measurement devices that define a plurality of optical paths as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |
| one or more emitters configured to emit light into tissue of a user; | The Apple Watch Series 4 and later devices include one or more emitters configured to emit light into tissue of a user as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| a first set of photodiodes positioned on a first surface and surrounded by a wall that is operably connected to the first surface, wherein: | The Apple Watch Series 4 and later devices include a first set of photodiodes positioned on a first surface and surrounded by a wall that is operably connected to the first surface.<br><br>Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices.  The Apple Watch Series 4 and later devices have, for example, such a wall:<br><br><br><br>FIG. 4C |
| the first set of photodiodes comprises at least four photodiodes, and | The Apple Watch Series 4 and later devices include a first set of photodiodes comprising at least four photodiodes as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| |  |
| the photodiodes of the first set of photodiodes are connected to one another in parallel to provide a first signal stream; | Upon information and belief, the Apple Watch Series 4 and later devices include photodiodes connected to one another in parallel to provide a first signal stream.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such photodiodes in the Apple Watch Series 4 and later devices: |

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| a second set of photodiodes positioned on the first surface and surrounded by the wall, wherein: | The Apple Watch Series 4 and later devices include a second set of photodiodes positioned on the first surface and surrounded by the wall.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such photodiodes in the Apple Watch Series 4 and later devices:<br><br><br>*FIG. 4A*        *FIG. 4C* |
| the second set of photodiodes comprises at least four photodiodes, and | The Apple Watch Series 4 and later devices include a second set of photodiodes that comprises four photodiodes as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| the photodiodes of the second set of photodiodes are connected to one another in parallel to provide a second signal stream; and | Upon information and belief, the Apple Watch Series 4 and later devices include photodiodes of the second set of photodiodes connected to one another in parallel to provide a second signal stream.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such photodiodes in the Apple Watch Series 4 and later devices:<br><br><br>*FIG. 4A*  *FIG. 4C* |

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| a cover located above the wall and comprising a single protruding convex surface configured to be located between tissue of the user and the first and second sets of photodiodes when the physiological measurement device is worn by the user, | The Apple Watch Series 4 and later devices include a cover located above the wall and comprising a single protruding convex surface configured to be located between tissue of the user and the first and second sets of photodiodes when the physiological measurement device is worn by the user. Figs. 4A and 4C of Apple's '912 publication are illustrative of such a cover in the Apple Watch Series 4 and later devices:  *FIG. 4A*     *FIG. 4C* |
| wherein the physiological measurement device provides a plurality of optical paths, wherein each of the optical paths: | The Apple Watch Series 4 and later devices provide a plurality of optical paths as shown on the Apple website at https://support.apple.com/en-us/HT204666:  |

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| exits an emitter of the one or more emitters, | The Apple Watch Series 4 and later devices include an optical path that exits an emitter of the one or more emitters as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br>. |
| passes through tissue of the user, | The Apple Watch Series 4 and later devices include optical paths that pass through tissue of the user as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| passes through the single protruding convex surface, and | The Apple Watch Series 4 and later devices include optical paths that pass through the single protruding convex surface.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such a path in the Apple Watch Series 4 and later devices:<br><br><br>FIG. 4A    FIG. 4C |

| U.S. Patent No. 10,702,195 Claim 1 | Description of Accused Products |
|---|---|
| arrives at a corresponding photodiode of the at least one of the first or second sets of photodiodes, the corresponding photodiode configured to receive light emitted by the emitter after traversal by the light of a corresponding optical path of the plurality of optical paths and after attenuation of the light by tissue of the user. | The Apple Watch Series 4 and later devices provide an optical path that arrives at a corresponding photodiode of the at least one of the first or second sets of photodiodes, the corresponding photodiode configured to receive light emitted by the emitter after traversal by the light of a corresponding optical path of the plurality of optical paths and after attenuation of the light by tissue of the user.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such a path in the Apple Watch Series 4 and later devices:<br><br><br><br>*FIG. 4A*          *FIG. 4C* |

U.S. Patent No. 10,709,366

| U.S. Patent No. 10,709,366 Claim 1 | Description of Accused Products |
|---|---|
| 1. A noninvasive physiological parameter measurement device adapted to be worn by a wearer, the noninvasive physiological parameter measurement device comprising: | The Apple Watch Series 4 and later devices are noninvasive physiological parameter measurement devices adapted to be worn by a wearer as shown on the Apple website at https://support.apple.com/en-us/HT204666:  |
| one or more light emitters; | The Apple Watch Series 4 and later devices include one or more light emitters as shown on the Apple website at https://support.apple.com/en-us/HT204666: |

| U.S. Patent No. 10,709,366 Claim 1 | Description of Accused Products |
|---|---|
| a substrate having a surface; | The Apple Watch Series 4 and later devices include a substrate having a surface.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such substrate in the Apple Watch Series 4 and later devices:<br><br><br>*FIG. 4A*   *FIG. 4C* |
| a first set of photodiodes arranged on the surface and spaced apart from each other, wherein: | The Apple Watch Series 4 and later devices include a first set of photodiodes arranged on the surface and spaced apart from each other.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such photodiodes in the Apple Watch Series 4 and later devices:<br><br><br>*FIG. 4A*   *FIG. 4C* |

| U.S. Patent No. 10,709,366 Claim 1 | Description of Accused Products |
|---|---|
| the first set of photodiodes comprises at least four photodiodes, and the photodiodes of the first set of photodiodes are connected to one another in parallel to provide a first signal stream responsive to light from at least one of the one or more light emitters attenuated by body tissue; | Upon information and belief, the Apple Watch Series 4 and later devices include the first set of photodiodes comprises at least four photodiodes, and the photodiodes of the first set of photodiodes are connected to one another in parallel to provide a first signal stream responsive to light from at least one of the one or more light emitters attenuated by body tissue.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such photodiodes in the Apple Watch Series 4 and later devices:<br><br><br><br>*FIG. 4A*   *FIG. 4C* |

| U.S. Patent No. 10,709,366 Claim 1 | Description of Accused Products |
|---|---|
| a second set of photodiodes arranged on the surface and spaced apart from each other, wherein: | The Apple Watch Series 4 and later devices include a second set of photodiodes arranged on the surface and spaced apart from each other.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such photodiodes in the Apple Watch Series 4 and later devices:<br><br><br>FIG. 4A          FIG. 4C |

| U.S. Patent No. 10,709,366 Claim 1 | Description of Accused Products |
|---|---|
| the second set of photodiodes comprises at least four photodiodes, the photodiodes of the second set of photodiodes are connected to one another in parallel to provide a second signal stream responsive to light from at least one of the one or more light emitters attenuated by body tissue, and | Upon information and belief, the Apple Watch Series 4 and later devices include a second set of photodiodes that comprise at least four photodiodes, the photodiodes of the second set of photodiodes are connected to one another in parallel to provide a second signal stream responsive to light from at least one of the one or more light emitters attenuated by body tissue.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such photodiodes in the Apple Watch Series 4 and later devices:<br><br><br><br>FIG. 4A                    FIG. 4C |
| at least one of the first signal stream or the second signal stream includes information usable to determine a physiological parameter of a wearer of the noninvasive physiological parameter measurement device; | The Apple Watch Series 4 and later devices are configured to provide at least one of a first signal stream or a second signal stream that includes information usable to determine a physiological parameter of a wearer of the noninvasive physiological parameter measurement device as shown on the Apple website at https://support.apple.com/en-us/HT204666:<br><br> |

| U.S. Patent No. 10,709,366 Claim 1 | Description of Accused Products |
|---|---|
| | |
| a wall extending from the surface and configured to surround at least the first and second sets of photodiodes; and | The Apple Watch Series 4 and later devices include a wall extending from the surface and configured to surround at least the first and second sets of photodiodes.<br><br>Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices.  The Apple Watch Series 4 and later devices have, for example, such a wall:<br><br><br><br>*FIG. 4C* |

| U.S. Patent No. 10,709,366 Claim 1 | Description of Accused Products |
|---|---|
| a cover arranged to cover at least a portion of the surface of the substrate, wherein the cover comprises a protrusion that extends over all of the photodiodes of the first and second sets of photodiodes arranged on the surface, and wherein the cover is further configured to cover the wall. | The Apple Watch Series 4 and later devices include a protrusion that extends over all of the photodiodes of the first and second sets of photodiodes arranged on the surface and the wall.<br><br>Figs. 4A and 4C of Apple's '912 publication are illustrative of such a cover in the Apple Watch Series 4 and later devices:<br><br><br>FIG. 4A          FIG. 4C |

**U.S. Patent No. 6,771,994**

| U.S. Patent No. 6,771,994 Claim 15 | Description of Accused Products |
|---|---|
| 15. A sensor which generates at least first and second intensity signals from a light-sensitive detector which detects light of at least first and second wavelengths transmitted through body tissue carrying pulsing blood; the sensor comprising: | The Apple Watch Series 4 and later devices are sensors that generate at least first and second intensity signals from a light-sensitive detector which detects light of at least first and second wavelengths transmitted through body tissue carrying pulsing blood. <br><br> The Apple Watch Series 4 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared LEDs) and at least four detectors (for example, photodiode sensors) as found on the Apple website at https://support.apple.com/en-us/HT204666: <br><br>  <br><br> The emitters and detectors are used to monitor physiological parameters, such as pulse rate.  *See* https://support.apple.com/en-us/HT204666. |

60

| U.S. Patent No. 6,771,994 Claim 15 | Description of Accused Products |
|---|---|
| at least one light emission device; | The Apple Watch Series 4 and later devices include at least one light emission device.  The Apple Watch Series 4 and later devices include green and infrared LEDs as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The Apple Watches Series 4 and later devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue and is indicative of a physiological parameter of the wearer:<br><br>The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.<br><br>https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 6,771,994 Claim 15 | Description of Accused Products |
|---|---|
| a light sensitive detector; and | The Apple Watch Series 4 and later devices include a light sensitive detector.  The Apple Watch Series 4 and later devices include eight photodiode sensors as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The Apple Watches Series 4 and later devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue and is indicative of a physiological parameter of the wearer:<br><br>The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.<br><br>https://support.apple.com/en-us/HT204666. |
| a plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through | The Apple Watch Series 4 and later devices include a plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through body tissue carrying pulsing blood, wherein the louvers accept the light when the sensor is properly applied to tissue of a patient.  Fig. 7 of Apple's U.S. Patent Application Publication 2019/0090806 (the '806 publication) is illustrative of the Apple Watch Series 4 and later devices. The Apple Watch Series 4 and later devices have, for example, a |

| U.S. Patent No. 6,771,994 Claim 15 | Description of Accused Products |
|---|---|
| body tissue carrying pulsing blood, wherein the louvers accept the light when the sensor is properly applied to tissue of a patient. | plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through body tissue carrying pulsing blood: <br><br><br>*FIG. 7* |
| a light block forming an enclosing wall between the light emission source and the plurality of detectors, the light block defining the circular portion of the tissue measurement site, the light emission source arranged proximate a first side of the enclosing wall and the plurality of detectors arranged proximate a second side of the enclosing wall, the first side being different than the second side, | The Apple Watch Series 4 and later devices include a light block forming an enclosing wall between the light emission source and the plurality of detectors, the light block defining the circular portion of the tissue measurement site, the light emission source arranged proximate a first side of the enclosing wall and the plurality of detectors arranged proximate a second side of the enclosing wall, the first side being different than the second side.  Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices.  The Apple Watch Series 4 and later devices have, for example, a wall with LEDs arranged in the interior of the enclosing wall and photodiode sensors arranged on the exterior of the enclosing wall: <br><br><br>*FIG. 4C* |

| U.S. Patent No. 6,771,994 Claim 15 | Description of Accused Products |
|---|---|
| wherein the enclosing wall prevents at least a portion of light emitted from the light emission source from being detected by the plurality of detectors without attenuation by the tissue, and wherein the plurality of detectors are arranged in an array having a spatial configuration corresponding to the circular portion of the tissue measurement site. | The Apple Watch Series 4 and later devices have an enclosing wall that prevents at least a portion of light emitted from the light emission source from being detected by the plurality of detectors without attenuation by the tissue, and wherein the plurality of detectors are arranged in an array having a spatial configuration corresponding to the circular portion of the tissue measurement site.  Fig. 4C of Apple's U.S. Patent Application Publication 2019/0072912 (the '912 publication) is illustrative of the Apple Watch Series 4 and later devices.  The Apple Watch Series 4 and later devices have, for example, a wall with LEDs arranged in the interior of the enclosing wall and photodiode sensors arranged on the exterior of the circular enclosing wall:  FIG. 4C |

U.S. Patent No. 8,457,703

| U.S. Patent No. 8,457,703 Claim 1 | Description of Accused Products |
|---|---|
| 1. A method of managing power consumption during continuous patient monitoring by adjusting behavior of a patient monitor, the method comprising: | The Apple Watch Series 3 and later devices manage power consumption during continuous patient monitoring by adjusting behavior of a patient monitor. The Apple Watch Series 3 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared LEDs) and detectors (for example, photodiode sensors) as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The emitters and detectors are used to monitor physiological parameters, such as pulse rate.  *See* https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 8,457,703 Claim 1 | Description of Accused Products |
|---|---|
| driving one or more light sources configured to emit light into tissue of a monitored patient; | The Apple Watch Series 3 and later devices drive one or more light sources configured to emit light into tissue of a monitored patient.  The Apple Watch Series 3 and later devices include green and infrared LEDs as found on the Apple website at https://support.apple.com/en-us/HT204666:  The Apple Watches Series 3 and later devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue and is indicative of a physiological parameter of the wearer: The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate. The optical heart sensor can also use infrared light. This mode is what Apple Watch uses when it measures your heart rate in the background, and for heart rate notifications. Apple Watch uses green LED lights to measure your heart rate during workouts and Breathe sessions, and to calculate walking average and Heart Rate Variability (HRV). https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 8,457,703 Claim 1 | Description of Accused Products |
|---|---|
| receiving one or more signals from one or more detectors configured to detect said light after attenuation by said tissue; | The Apple Watch Series 3 and later devices receive one or more signals from one or more detectors configured to detect said light after attenuation by said tissue.  The Apple Watch Series 3 and later devices include eight photodiode sensors as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The Apple Watches Series 3 and later devices are worn on the wrist such that the detectors are configured to detect light that has passed through tissue and is indicative of a physiological parameter of the wearer:<br><br>The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.<br><br>The optical heart sensor can also use infrared light. This mode is what Apple Watch uses when it measures your heart rate in the background, and for heart rate notifications. Apple Watch uses green LED lights to measure your heart rate during workouts and Breathe sessions, and to calculate walking average and Heart Rate Variability (HRV).<br><br>https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 8,457,703 Claim 1 | Description of Accused Products |
|---|---|
| continuously operating a patient monitor at a lower power consumption level to determine measurement values for one or more physiological parameters of a patient; | The Apple Watch Series 3 and later devices continuously operate a patient monitor at a lower power consumption level to determine measurement values for one or more physiological parameters of a patient.<br><br>The Apple Watches Series 3 and later devices transmit recorded data to the Health App on iOS devices.  Upon information and belief, the pulse rate determination, the types of LEDs used to determine pulse rate, and the operation of the LEDs varies with pulse rate activity and heart rate context (e.g., background, sedentary, streaming, etc.), as described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].<br><br>*See also* https://developer.apple.com/documentation/healthkit/hkquantitytypeidentifier/1615138-heartrate. |
| comparing processing characteristics to a predetermined threshold; and | Upon information and belief, the Apple Watches Series 3 and later devices compare processing characteristics to a predetermined threshold.<br><br>The Apple Watches Series 3 and later devices transmit recorded data to the Health App on iOS devices.  Upon information and belief, the pulse rate determination, the types of LEDs used to determine pulse rate, and the operation of the LEDs varies with pulse rate activity and heart rate context (e.g., background, sedentary, streaming, etc.).<br><br>*See also* https://developer.apple.com/documentation/healthkit/hkquantitytypeidentifier/1615138-heartrate. |
| when said processing characteristics pass said threshold, transitioning to continuously operating said patient monitor at a higher power consumption level, wherein said continuously operating at said lower power consumption level comprises reducing activation of an attached sensor, said sensor positioning said light sources and said detectors proximate said tissue. | Upon information and belief, the Apple Watches Series 3 and later devices transition to continuously operating said patient monitor at a higher power consumption level.<br><br>Upon information and belief, the Apple Watches Series 3 and later devices continuously operating at said lower power consumption level corresponds with reducing activation of an attached sensor, said sensor positioning said light sources and said detectors proximate said tissue.<br><br>The Apple Watches Series 3 and later devices transmit recorded data to the Health App on iOS devices.  Upon information and belief, the pulse rate determination, the types of LEDs used to determine pulse rate, and the operation of the LEDs varies with pulse rate activity and heart rate context (e.g., background, sedentary, streaming, etc.), as described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].<br><br>*See also* https://developer.apple.com/documentation/healthkit/hkquantitytypeidentifier/1615138-heartrate. |

U.S. Patent No. 10,433,776

| U.S. Patent No. 10,433,776 Claim 1 | Description of Accused Products |
|---|---|
| 1. A method of operating a patient monitor configured to monitor at least a pulse rate of a patient by processing signals responsive to light attenuated by body tissue, the method comprising: | The Apple Watch Series 3 and later devices monitor at least a pulse rate of a patient by processing signals responsive to light attenuated by body tissue.<br><br>The Apple Watch Series 3 and later devices include a plurality of emitters of different wavelengths (for example, green and infrared LEDs) and detectors (for example, photodiode sensors) as found on the Apple website at https://support.apple.com/en-us/HT204666:<br><br><br><br>The emitters and detectors are used to monitor physiological parameters, such as pulse rate.  *See* https://support.apple.com/en-us/HT204666 |
| operating the patient monitor according to a first control protocol, wherein said operating includes activating a first control protocol light source in accordance with the first control protocol, the first control protocol light source including one or more of a plurality of light sources; | The Apple Watch Series 3 and later devices operate according to a first control protocol, wherein said operating includes activating a first control protocol light source in accordance with the first control protocol, the first control protocol light source including one or more of a plurality of light sources.<br><br>The Apple Watches Series 3 and later devices transmit recorded data to the Health App on iOS devices.  Upon information and belief, the pulse rate determination, the types of LEDs used to determine pulse rate, and the operation of the LEDs varies with pulse rate activity and heart rate context (e.g., background, sedentary, streaming, etc.), as described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].<br><br>*See also* https://developer.apple.com/documentation/healthkit/ hkquantitytypeidentifier/1615138-heartrate. |

| U.S. Patent No. 10,433,776 Claim 1 | Description of Accused Products |
|---|---|
| when operating according to the first control protocol, calculating, by the patient monitor, measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source, detected by a detector of an optical sensor after attenuation by body tissue of the patient using the patient monitor; | The Apple Watch Series 3 and later devices calculate measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source, detected by a detector of an optical sensor after attenuation by body tissue of the patient using the patient monitor:<br><br>The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.<br><br>The optical heart sensor can also use infrared light. This mode is what Apple Watch uses when it measures your heart rate in the background, and for heart rate notifications. Apple Watch uses green LED lights to measure your heart rate during workouts and Breathe sessions, and to calculate walking average and Heart Rate Variability (HRV).<br><br>https://support.apple.com/en-us/HT204666. |
| generating a trigger signal, wherein generating said trigger signal is responsive to at least one of: a comparison of processing characteristics to a predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector; | The Apple Watch Series 3 and later devices generate a trigger signal, wherein generating said trigger signal is responsive to at least one of: a comparison of processing characteristics to a predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector.<br><br>The Apple Watches Series 3 and later devices transmit recorded data to the Health App on iOS devices.  Upon information and belief, the pulse rate determination, the types of LEDs used to determine pulse rate, and the operation of the LEDs varies with pulse rate activity and heart rate context (e.g., background, sedentary, streaming, etc.), as described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].<br><br>See also https://developer.apple.com/documentation/healthkit/ hkquantitytypeidentifier/1615138-heartrate. |

| U.S. Patent No. 10,433,776 Claim 1 | Description of Accused Products |
|---|---|
| in response to receiving the trigger signal, operating the patient monitor according to a second control protocol different from the first control protocol, wherein said operating includes activating a second control protocol light source in accordance with the second control protocol, the second control protocol light source including one or more of the plurality of light sources; and | The Apple Watch Series 3 and later devices in response to receiving the trigger signal, operate according to a second control protocol different from the first control protocol, wherein said operating includes activating a second control protocol light source in accordance with the second control protocol, the second control protocol light source including one or more of the plurality of light sources.<br><br>The Apple Watches Series 3 and later devices transmit recorded data to the Health App on iOS devices.  Upon information and belief, the pulse rate determination, the types of LEDs used to determine pulse rate, and the operation of the LEDs varies with pulse rate activity and heart rate context (e.g., background, sedentary, streaming, etc.), as described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].<br><br>See also https://developer.apple.com/documentation/healthkit/hkquantitytypeidentifier/1615138-heartrate. |
| when operating the patient monitor according to the second control protocol, calculating the measurement values of the pulse rate, the measurement values responsive to light from the second control protocol light source, detected by the detector after attenuation by the body tissue of the patient using the patient monitor, | The Apple Watch Series 3 and later devices, when operating according to the second control protocol, calculate the measurement values of the pulse rate, the measurement values responsive to light from the second control protocol light source, detected by the detector after attenuation by the body tissue of the patient using the patient monitor:<br><br>The optical heart sensor in Apple Watch uses what is known as photoplethysmography. This technology, while difficult to pronounce, is based on a very simple fact: Blood is red because it reflects red light and absorbs green light. Apple Watch uses green LED lights paired with light-sensitive photodiodes to detect the amount of blood flowing through your wrist at any given moment. When your heart beats, the blood flow in your wrist — and the green light absorption — is greater. Between beats, it's less. By flashing its LED lights hundreds of times per second, Apple Watch can calculate the number of times the heart beats each minute — your heart rate. The optical heart sensor supports a range of 30–210 beats per minute. In addition, the optical heart sensor is designed to compensate for low signal levels by increasing both LED brightness and sampling rate.<br><br>The optical heart sensor can also use infrared light. This mode is what Apple Watch uses when it measures your heart rate in the background, and for heart rate notifications. Apple Watch uses green LED lights to measure your heart rate during workouts and Breathe sessions, and to calculate walking average and Heart Rate Variability (HRV).<br><br>https://support.apple.com/en-us/HT204666. |

| U.S. Patent No. 10,433,776 Claim 1 | Description of Accused Products |
|---|---|
| | The Apple Watches Series 3 and later devices transmit recorded data to the Health App on iOS devices.  Upon information and belief, the pulse rate determination, the types of LEDs used to determine pulse rate, and the operation of the LEDs varies with pulse rate activity and heart rate context (e.g., background, sedentary, streaming, etc.).<br><br>*See also* https://developer.apple.com/documentation/healthkit/hkquantitytypeidentifier/1615138-heartrate. |
| wherein said operating of the patient monitor according to the first control protocol operates the first control protocol light source according to a first duty cycle and said operating of the patient monitor according to the second control protocol operates the second control protocol light source according to a second duty cycle, wherein power consumption of the first control protocol light source according to the first duty cycle is different than power consumption of the second control protocol light source according to the second duty cycle. | The Apple Watch Series 3 and later devices operates the first control protocol light source according to a first duty cycle and operates the second control protocol light source according to a second duty cycle, wherein power consumption of the first control protocol light source according to the first duty cycle is different than power consumption of the second control protocol light source according to the second duty cycle.<br><br>The Apple Watches Series 3 and later devices transmit recorded data to the Health App on iOS devices.  Upon information and belief, the pulse rate determination, the types of LEDs used to determine pulse rate, and the operation of the LEDs varies with pulse rate activity and heart rate context (e.g., background, sedentary, streaming, etc.), as described in International Application Publication WO 2018/226305 (the '305 publication), for example, at paragraphs [0055]-[0061].<br><br>*See also* https://developer.apple.com/documentation/healthkit/hkquantitytypeidentifier/1615138-heartrate. |