JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>                    Plaintiffs,<br><br>          v.<br><br>APPLE INC., a California corporation,<br><br>                    Defendants. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO DISMISS PORTIONS OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT**<br><br>**Hearing:**<br>Date:      April 19, 2021<br>Time:      1:30 p.m.<br>Place:     Courtroom 10C<br>Judge:     Hon. James V. Selna |

### REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Gibson, Dunn & Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE'S MOTION TO DISMISS THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEX)

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................. 1

II.   PLAINTIFFS' NEWLY PLEADED ALLEGATIONS DO NOT
      RESUSCITATE THE DISMISSED PORTIONS OF THEIR CUTSA
      CLAIM ................................................................................................................ 2

      A.    Plaintiffs Still Do Not Meet the Standard for Alleging Their
            Amended "███████████" Trade Secrets.......................................... 3

      B.    Plaintiffs Still Fail to Plead Misappropriation. ........................................ 9

            1.    Plaintiffs Still Fail to Allege That Apple Misappropriated
                  Plaintiffs' ████████████████████. .................. 9

            2.    Plaintiffs Still Fail to Allege That Apple Misappropriated
                  Plaintiffs' "████████████" Trade Secrets............................ 12

            3.    Plaintiffs Still Fail to Allege That Apple Induced a Breach.......... 14

            4.    Plaintiffs Still Fail to Allege That Apple Is Vicariously
                  Liable Under *Respondeat Superior*. ................................ 16

III.  PLAINTIFFS SHOULD BE DENIED FURTHER LEAVE TO AMEND ....... 22

IV.   CONCLUSION .................................................................................................. 23

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS
OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEX)

Gibson, Dunn & Crutcher LLP

1

# TABLE OF AUTHORITIES

2

Page(s)

3

## Cases

4

*Abagninin v. AMVAC Chem. Corp.*,

5
    545 F.3d 733 (9th Cir. 2008) ......................................................................22

6
*Acrisure of Cal., LLC v. SoCal Com. Ins. Servs.*,

7
    2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) ....................................... 1, 3

8
*Aetna Bldg. Maint. Co. v. West*,

9
    39 Cal. 2d 198 (Cal. 1952)............................................................................9

10
*Allen v. City of Beverly Hills*,
    911 F.2d 367 (9th Cir. 1990) ......................................................................22

11

12
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................3, 15, 16

13
*U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*,

14
    2007 WL 4885468 (M.D. Fla. Nov. 30, 2007), *report and recommendation adopted in part*, 2008 WL 343158 (M.D. Fla. Feb. 5,

15
    2008) ...........................................................................................................11

16
*Barnes-Mohammed v. Cty. of Santa Barbara*,

17
    2008 WL 793479 (C.D. Cal. Mar. 24, 2008) .............................................23

18
*Basalite Concrete Prod., LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*,

19
    2013 WL 2156582 (E.D. Cal. May 17, 2013), *aff'd*, 615 F. App'x 894

20
    (9th Cir. 2015) ............................................................................................22

21
*Bell Atlantic Corp. v. Twombly*,

22
    550 U.S. 544 (2007)................................................................................2, 15

23
*Brain Injury Ass'n of Cal. v. Yari*,

24
    2020 WL 3643482 (C.D. Cal. Apr. 30, 2020)............................................16

25
*CleanFish, LLC v. Sims*,

26
    2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) ...........................................9

27
*Cypress Semiconductor v. Maxim Int. Prod., Inc.*,

28
    236 Cal. App. 4th 243 (2015) ....................................................................17

Gibson, Dunn & Crutcher LLP

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ........................................................................ 15

*Elsevier Inc. v. Doctor Evidence, LLC*,
  2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ..................................................... 7

*Eminence Capital v. Aspeon Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ...................................................................... 22

*Epicor Software Corp. v. Alternative Tech. Sols., Inc.*,
  2013 WL 12130024 (C.D. Cal. Dec. 2, 2013)...................................... 17, 19, 21

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
  2016 WL 6601656 (C.D. Cal. July 25, 2016) ................................................ 22

*Kilgore v. Dir.*,
  2016 WL 8678365 (E.D. Cal. Feb. 26, 2016) ................................................ 23

*Lohan Media LLC v. Thane Int'l, Inc.*,
  2001 WL 1827169 (C.D. Cal. Nov. 16, 2001) ................................................. 6

*MACOM Tech. Sols. Inc. v. Litrinium, Inc.*,
  2019 WL 4282906 (C.D. Cal. June 3, 2019) ................................................... 9

*Mattel, Inc. v. MGA Entm't, Inc.*,
  782 F. Supp. 2d 911 (C.D. Cal. 2011) ........................................................... 8

*Menzel v. Scholastic, Inc.*,
  2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) .............................................. 15

*Physician's Surrogacy, Inc. v. German*,
  2018 WL 638229 (S.D. Cal. Jan. 31, 2018) ................................................. 11

*Soil Retention Products, Inc. v. Brentwood Industries, Inc.*,
  2021 WL 689914 (S.D. Cal. Feb. 23, 2021)................................................... 21

*Space Data Corp. v. X*,
  2017 WL 5013363 (N.D. Cal. Feb. 16, 2017)................................................. 9

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ....................................................................... 12

*Steckman v. Hart Brewing*,
  143 F.3d 1293 (9th Cir. 1998) ..................................................................... 22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS
OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEX)

Gibson, Dunn &
Crutcher LLP

*U.S. Legal Support, Inc. v. Hofioni*,
   2013 WL 6844756 (E.D. Cal. Dec. 20, 2013)..............................................17, 19, 21

*Veronica Foods Co. v. Ecklin*,
   2017 WL 2806706 (N.D. Cal. June 29, 2017)..............................................13, 14, 20

*Whyte v. Schlage Lock Co.*,
   101 Cal. App. 4th 1443 (2002) ...................................................................................16

## Regulations

21 C.F.R. § 54.4 ....................................................................................................................7

21 C.F.R. § 54.4(a)...............................................................................................................7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS
OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEX)

# I. <u>INTRODUCTION</u>

Apple asks the Court to dismiss with prejudice amended trade secrets alleged in Plaintiffs' Fourth Amended Complaint, Plaintiffs' faulty claims of misappropriation of two categories of claimed secrets, and Plaintiffs' inducement and vicarious liability theories.  The Court should do so for five reasons:

*First*, the Court has instructed Plaintiffs *three times* to "describe the trade secret[s] with sufficient particularity to separate [them] from matters of general knowledge" to enable Apple "to ascertain at least the boundaries within which the secret lies."  ECF 264 at 4 (quoting *Acrisure of Cal., LLC v. SoCal Com. Ins. Servs.*, 2019 WL 4137618, at *3 (C.D. Cal. Mar. 27, 2019)); ECF 219 at 3 (same); ECF 60 at 7 (same).  The Court found that Plaintiffs' purported secret of "███████████████████████████████ ███████████████████████████████████████" is "facially public" "information" incapable of trade secret protection.  ECF 264 at 9.  The Court likewise found "unprotectable" the alleged secrets "dependent on" the predicate failed public "secret" regarding ███████████████████.  *Id.*  Plaintiffs nonetheless plead the same failed underlying secret—"██████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████" (Fourth Am. Compl. ¶ 44.2; *see id.* ¶ 248)—and tack on more faulty supplements (*id.* ¶ 44.3–.5).  Accordingly, Plaintiffs still have not adequately pled these alleged trade secrets.

*Second*, Plaintiffs have not amended the misappropriation allegations concerning their purported "████████████████" trade secrets to adequately assert misuse or disclosure of actual confidential information or to plausibly allege anything beyond innocent conduct.

*Third*, Plaintiffs repeat the defective theory that Apple "'is using Plaintiffs' ██████████████████████ because '██████████████████████████████ ██████████████████████████.'"  ECF 264 at 13.  But the Court

1

Gibson, Dunn & Crutcher LLP

1    already found that these allegations were "conclusory" and failed to "rise to the level of

2    plausib[i]lity." *Id.* at 13 (citing Third Am. Compl. ("TAC") ¶ 244). The Fourth

3    Amended Complaint provides nothing new to support Plaintiffs' baseless speculation.

4        *Fourth*, Plaintiffs' allegations still do not support a reasonable inference that

5    Apple induced either of Plaintiffs' former employees to use or disclose Plaintiffs'

6    alleged secrets. Instead, Plaintiffs posit innocuous allegations that Apple (i) paid its

7    employees well, and (ii) hired people for technical subject matter expertise—in other

8    words, Apple acted properly, as an industry-leading technology company would, to

9    advance its business initiatives. Fourth Am. Compl. ¶¶ 230–32.

10        *Finally*, Plaintiffs continue to rely on irrelevant and/or conclusory allegations—

11    which the Court already rejected—to support their theory of *respondeat superior*

12    liability. The so-called "new" allegations parrot statements (sometimes reproduced

13    multiple times) contained in Plaintiffs' prior failed complaints that still fail to plausibly

14    suggest that Plaintiffs' former employees misappropriated Plaintiffs' alleged trade

15    secrets.

16        The Court should dismiss with prejudice Plaintiffs' amended ████████

17    trade secrets, their claim for misappropriation of those alleged secrets and of their

18    ████████████████, and their theories of misappropriation based on

19    inducement and *respondeat superior*.

20    ## II. PLAINTIFFS' NEWLY PLEADED ALLEGATIONS DO NOT

21    ## RESUSCITATE THE DISMISSED PORTIONS OF THEIR CUTSA CLAIM

22        Under Rule 12(b)(6), Plaintiffs must state "enough facts to state a claim to relief

23    that is plausible on its face." ECF 264 at 2 (quoting *Bell Atlantic Corp. v. Twombly*, 550

24    U.S. 544, 570 (2007)). "There is no plausibility 'where the well-pleaded facts do not

25    permit the court to infer more than the mere possibility of misconduct.'" *Id.* at 2–3

26    (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Plaintiffs' newly-pleaded

27    allegations in their Fourth Amended Complaint do not save the already dismissed bases

28    for their trade secret claims.

Gibson, Dunn &
Crutcher LLP

2

## A.   PLAINTIFFS STILL DO NOT MEET THE STANDARD FOR ALLEGING THEIR AMENDED "███████████████" TRADE SECRETS.

"To adequately allege the existence of a trade secret, the plaintiff must describe the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.* at 4 (quoting *Acrisure*, 2019 WL 4137618, at *3). Plaintiffs' amended "███████████████" trade secrets still fail to state a plausible trade secret claim, as they fail to distinguish the alleged trade secrets from matters of general knowledge that could not possibly be secret.

The Court dismissed the bulk of Plaintiffs' alleged "████████████████ ██████" trade secrets as pleaded in the TAC because "the information is facially public." *Id.* at 9. Among these was the claimed secret "████████████ █████████████████████████," which the Court "agree[d] with Apple" "is not secret information capable of protection." *Id.* (dismissing alleged secrets at TAC ¶¶ 44.2–.4). As the following chart demonstrates, Plaintiffs' Fourth Amended Complaint simply rearranged and added window-dressing to the alleged ████████ secrets; Plaintiffs have done nothing to address the defects identified by the Court:

| *Third Amended Complaint* | *Fourth Amended Complaint* |
|---|---|
| ██ ████ ██ █ ████ | █████ ████████ |
| ██████████████ | █████████████ |
| ██████████████ | █████████████ |
| ██████████████ | █████████████ |
| ██████████████ | ████ ██ ██ ███ |

Gibson, Dunn & Crutcher LLP



Gibson, Dunn &
Crutcher LLP



Gibson, Dunn & Crutcher LLP





Now preceded by a superfluous preamble, the alleged ████████████ secret
items 44.2–.5 remain the same—a "█████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████" Fourth Am. Compl. ¶ 44.2; *see id.* ¶ 248 (describing
Masimo's purported "██████████████████████████████████████████████████
██████████████████████████████████████████"). As the Court
recognized, ████████████████████████████████████████████████████
████████████████████████████████████████████████████. *See Lohan Media LLC v. Thane
Int'l, Inc.*, 2001 WL 1827169, at *4 (C.D. Cal. Nov. 16, 2001) (on preliminary
injunction, allegation "that the five payment plan worked better than the ten payment
plan" was not a trade secret because it was "a concept that any first year business school
student would know"); *see also Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL
557906, at *5–6 (S.D.N.Y. Jan. 23, 2018) ("[A]ssessments of the risk of bias of the

Gibson, Dunn &
Crutcher LLP

1    evidence based on the funding source" was an "extraordinarily general categor[y]" that

2    did "not give rise to a plausible allegation of a trade secret's existence [under the

3    DTSA].").  Indeed, as the U.S. Food and Drug Administration ("FDA") has explained:

4    "[t]he most *obvious* conflict" of interest in choosing Data Monitoring Committees for

5    clinical trials "is financial interest that could be substantially affected by the outcome of

6    the trial."  RJN Decl. Ex. 1 at 17 (emphasis added) (March 2006 Guidance for Clinical

7    Trial  Sponsors  Establishment  and  Operation  of  Clinical  Trial  Data  Monitoring

8    Committees).[1]  It is no doubt for this reason that the FDA has a standard "Certification"

9    for "Financial Interests and Arrangements of Clinical Investigators" (RJN Decl. Ex. 3),

10   which  among  other  things,  requires  clinical  investigators  to  disclose  "steps  taken  to

11   minimize  the  potential  for  bias  resulting  from  any  of . . . [financial]  arrangements,

12   interests, or payments" in compliance with 21 C.F.R. § 54 (21 C.F.R. § 54.4).  RJN Decl.

13   Ex. 2 at 48.

14            The remainder of these ▮▮▮▮▮▮ secrets (Fourth Am. Compl. ¶¶ 44.3–.5)

15   fare no better.  Paragraph 44.3 still relies on the fatally flawed paragraph that precedes

16   it, and like that paragraph, describes an act that could not possibly be "secret."  Plaintiffs'

17   purported "▮▮▮▮" of ▮▮▮▮▮▮▮▮▮▮▮

18   ▮▮▮ is a matter of common sense.  Nowhere do Plaintiffs provide any specifics as

19   to which ▮▮▮▮▮ they are addressing.  This is akin to claiming the secret is to

20   avoid  mistakes  or  complications  without  identifying  the  mistakes  or  complications.

21   Plaintiffs attempt to embellish this alleged secret by claiming they explained to O'Reilly

22   "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24   ▮▮▮▮."  *Id*. ¶ 250.  Put differently, Plaintiffs told a ▮▮▮▮▮▮

25   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ accordingly.  Again, that

26
27   [1]  *See* RJN Decl. Ex. 2 at 48 (2013 Guidance for Clinical Investigators, Industry, &
     FDA Staff Financial Disclosure by Clinical Investigators) (citing 21 CFR § 54.4(a),
     which  "requires  applicants  to  certify  the  absence  of  certain  financial  interests . . . of
28   clinical  investigators  that  could  affect [data  reliability],  or  to  disclose  those  financial
     interests . . . to the agency and identify steps taken to minimize the potential for bias").

                                                       7

1  is common sense, and does nothing to distinguish the alleged secrets from general

2  knowledge.

3          Similarly, paragraph 44.4 can hardly be considered information "not generally

4  known," as it merely describes the basic process of ████████████████████████

5  ████████████████████████████████████. *Cf. Mattel, Inc. v. MGA Entm't, Inc.*,

6  782 F. Supp. 2d 911, 968 (C.D. Cal. 2011) ("As described, the concept of projecting

7  sales through market research and communication within the company is general,

8  intuitive, and without dispute derives no independent economic value from its

9  secrecy."). Plaintiffs' "████████" to ██████████████████████████████████

10 ████████████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████████████

13 ████████████████████████████████," Fourth Am. Compl. ¶ 44.4) and to ██████

14 ████████████████████████████████████████████████████████████████████████

15 Plaintiffs admit as much later in the Fourth Amended Complaint, asserting that they (1)

16 "████████████████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████████████████

18 ████████████████████████████████████" (2) "█████████████████████████████

19 ████████████████████████████" and (3) "████████████████████████████████

20 ████████████████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████"[2] *Id*. ¶ 249; *see also id.* ¶

22 251 ("████████████████████████████████████████████████████████████████████

23 ████████████████"). Plaintiffs fail to describe any secret strategy at all. *See Aetna Bldg.*

24 *Maint. Co. v. West*, 39 Cal. 2d 198, 206 (Cal. 1952) ("procedure for estimating the price

25 of a new contract" not a trade secret where "[t]here [was] a total absence of any showing

26

27 _____

   [2] Confusingly, the product in question appears to include Masimo's patented
28 technology. RJN Decl. Ex. 4. Thus, the "secret" appears to be the sale of patented
   technology.

1   that the method of making estimates are secret" and "any competitor in the business

2   must consider all of the factors which enter into [Plaintiff's] computations").

3         Finally, Paragraph 44.5—which has not been amended at all from the language in

4   the TAC—is dependent on the deficient paragraph that precedes it and likewise fails to

5   describe any "strategy" for how Plaintiffs accomplish this alleged trade secret. ████

6   ████████████████████████████████████████████████████

7   ████████████████████████████████" (Fourth Am. Compl. ¶ 44.5) is

8   "indistinguishable from matters of general knowledge within the . . . industry."

9   *CleanFish, LLC v. Sims*, 2020 WL 1274991, at *9 (N.D. Cal. Mar. 17, 2020) (dismissing

10  claim).

11        In sum, Plaintiffs have failed to address the reasons why the Court previously

12  dismissed these alleged "████████████████████." Plaintiffs' addition

13  of extraneous—and indeed, meaningless—language should not obscure the continued

14  deficiency of these allegations.

15  **B.    PLAINTIFFS STILL FAIL TO PLEAD MISAPPROPRIATION.**

16        **1.    Plaintiffs Still Fail to Allege That Apple Misappropriated Plaintiffs'**

17  ████████████████████████████.

18        A trade secret plaintiff must "allege facts providing a reasonable basis for th[e]

19  Court to infer" that the defendant improperly acquired, disclosed, or used the alleged

20  trade secrets. *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16,

21  2017). Since the outset of this case, Plaintiffs have alleged that Apple incorporated their

22  purported secrets into the Apple Watch. ECF 1 ¶¶ 179–91. Yet, over a year later and

23  after months of discovery, Plaintiffs still do not definitively allege *if* the Apple Watch

24  uses their alleged ████████████ trade secrets—let alone *how* it

25  purportedly does so. *See MACOM Tech. Sols. Inc. v. Litrinium, Inc.*, 2019 WL 4282906,

26  at *9 (C.D. Cal. June 3, 2019) (Plaintiffs "do not allege . . . how [their alleged trade

27  secrets] were used[] or when they were used."). Plaintiffs instead parrot their failed

28  TAC allegation that the Court expressly dismissed as "conclusory" (ECF 264 at 13):

1  that the Apple " ████████████████ " use their alleged ██████████ trade

2  secrets.  Fourth Am. Compl. ¶ 255 (emphasis added); *see* TAC ¶ 244.  Plaintiffs'

3  misappropriation claim with respect to their purported ████████████ trade secrets

4  should be dismissed with prejudice.

5      ***Lamego and O'Reilly's Alleged Conduct***:  The Fourth Amended Complaint adds

6  *no* new factual allegations that the Apple Watch incorporates Plaintiffs' allegedly secret

7  ████████████████████ .  Plaintiffs' "new" allegations, even if true

8  (which Apple disputes), only amount to asserting that *Lamego and O'Reilly* worked on,

9  and encouraged Apple to adopt, ████████████████ : (1) O'Reilly

10  and Lamego were " █████████████████████ "; (2)

11  " ██████████████████████████████████

12  ███████ ";  (3)  " █████████████████████████

13  ████████ ; and (4) " ████████████████████

14  ████████████████████████ "  Fourth Am. Compl. ¶ 255; *see*

15  *also id.* ¶ 256 (repeating same allegations).  *Nowhere* in the Fourth Amended Complaint

16  do Plaintiffs plausibly allege that *Apple incorporated* their alleged secret techniques into

17  the Apple Watch or that *Apple* otherwise used or disclosed them.[3]   Thus, these

18  allegations do not support Plaintiffs' misappropriation claim against Apple with respect

19  to this category of alleged trade secrets.

20      ***Apple's Alleged Conduct***:  The Fourth Amended Complaint contains only two

21  allegations concerning *Apple's* actions vis-à-vis Plaintiffs' alleged ██████████

22  ████████ trade secrets.  First, Plaintiffs allege that Apple " ████████

23  ████████████████████████████████████████

24  ████████ "  *Id.* ¶ 255.  Critically, this allegation does not "specifically connect

25  allegations of misappropriation to [Apple's] specific . . . actions."  *Physician's*

---

[3]  During the meet and confer, Plaintiffs also pointed to paragraph 254, but that paragraph contains no new allegations at all—it is an identical copy of Plaintiffs' allegations from the TAC concerning *their* purported *development* of these alleged trade secrets, and thus cannot plausibly support their claim that *Apple misappropriated* those secrets.  *Compare* TAC ¶ 244, *with* Fourth Am. Compl. ¶ 254.

Gibson, Dunn & Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT CASE NO. 8:20-CV-00048-JVS (JDEx)

1   *Surrogacy, Inc. v. German*, 2018 WL 638229, at *8 (S.D. Cal. Jan. 31, 2018) (DTSA

2   claim).  Plaintiffs accuse Apple of using their alleged ████████████████ trade

3   secrets, but those alleged trade secrets, as described, do *not* concern "████

4   ████████████████████████."  Fourth Am. Compl. ¶ 255 (emphasis

5   added).  Instead, according to the Fourth Amended Complaint, the focus of those

6   purported trade secrets is "████████████████████████████████████

7   ████████████████████████████████████████████

8   ████████████████."  *Id.* ¶¶ 45.1–.3 (emphases added).  Further, this

9   allegation simply states a scientific principle inherent in any pulse oximetry device—

10  ████████████████████████████████████████████

11  ████████████.  *See U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, 2007

12  WL 4885468, at *2 (M.D. Fla. Nov. 30, 2007), *report and recommendation adopted in*

13  *part*, 2008 WL 343158 (M.D. Fla. Feb. 5, 2008) ("[P]ulse oximetry . . . measures the

14  patient's oxygen saturation of the arterial blood by using a device that passes *two light*

15  *waves* through a patient's skin to sense *the infrared and red light absorption properties*

16  of deoxygenated and oxygenated hemoglobin." (emphases added)).  This scientific fact

17  has been known for *almost fifty years*, since the invention of pulse oximetry.  *See* RJN

18  Decl. Ex. 5 at 90 (Severinghaus, J.W. & Yoshiyuki Honda, *History of Blood Gas*

19  *Analysis: VII. Pulse Oximetry*, 3 J. Clin. Monitor Comput. 135, 135–37 (1987)) (stating

20  the first pulse oximeter was invented in 1972, and it "measure[d] only the pulsatile

21  changes in light transmission through living tissues to compute the arterial saturation"

22  using "the *red and infrared* bands used in oximetry" (emphasis added)); [4] *see also* ECF

23  288-2 at 341 (U.S. Patent No. 4,854,699, issued in 1989, disclosing a pulse oximeter

24  using "light at four different wavelengths" to measure blood oxygen saturation).  A

25  "court need not . . . accept as true allegations that contradict matters properly subject to

26

27  [4]  Plaintiffs cannot dispute the accuracy of this article because it was downloaded from
    their own website.  *See* RJN Decl., ¶ 6 & Ex. 5.  Separately, regardless of the truth of
28  the content of the article, Plaintiffs should be charged with actual notice of this
    publication.

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS
OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEx)

Gibson, Dunn &
Crutcher LLP

1   judicial notice or by exhibit," or "allegations that are merely conclusory, unwarranted

2   deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266

3   F.3d 979, 988 (9th Cir. 2001).

4       Plaintiffs' second allegation concerning Apple's purported use of their alleged

5   ██████████████████████ trade secrets is the *same one* that the Court already held

6   was insufficient to plausibly allege misappropriation by Apple:  that "███████████████

7   ████████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████████

9   ██████████████████████████████████████████████████████████████████████ "

10  Fourth Am. Compl. ¶ 255 (emphasis added); *see* ECF 264 at 13 (rejecting allegation that

11  "███████████████████████████████████████████████████████████████████████

12  ██████████████" (emphasis added)).  As before, however, Plaintiffs provide no factual

13  support for this conclusory allegation "that allow Plaintiffs' claim to rise to the level of

14  plausib[i]lity." *Id.* at 13.  Because the Fourth Amended Complaint contains no plausible

15  factual allegations supporting Plaintiffs' ██████████████████████ trade secret

16  misappropriation claim, that claim should be dismissed with prejudice.

17      **2.      Plaintiffs Still Fail to Allege That Apple Misappropriated Plaintiffs'**

18            **"████████████████" Trade Secrets.**

19      The Court has not directly ruled on the plausibility of Plaintiffs' claim for

20  misappropriation of their "███████████████████████  *See* ECF 264 at 13

21  (addressing other alleged trade secrets).  As discussed above (Section II.A), the Court

22  dismissed the bulk of these alleged trade secrets as pleaded in the TAC because "the

23  information is facially public," *id.* at 9.  After the Court's dismissal order, Plaintiffs'

24  only surviving ████████████ trade secrets concerned "███████████████████████

25  ████████████████████████████████████████████████████████████████████████

26  ██████ " "██████████████████████████ that secret, and "████████████

27  ██████████████ " of that secret. TAC ¶¶ 44.1 & 44.8–.9; Fourth Am. Compl. ¶¶ 44.1

28  & 44.6–.7.  While recognizing that Plaintiffs failed to distinguish public information

12

Gibson, Dunn &
Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS
OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEx)

from what is secret, the Court permitted these purported trade secrets to remain because "[a] compilation can be a trade secret," ECF 264 at 9.

To allege misappropriation of compilation trade secrets that include public information, however, Plaintiffs must do more—they must provide "specific allegations regarding nondisclosure of, or efforts to keep secret," the information that Plaintiffs allege Apple misappropriated. *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017). Because Plaintiffs fail to do so, they fail to allege misappropriation of the previously surviving ▮▮▮▮▮▮▮▮ trade secrets.

*Veronica Foods* is instructive. As here, plaintiff there alleged that its "*complete* Supplier List [wa]s not public[ly] available." *Id*. at *14; *see* ECF 247-1 at 15. The court held that, with respect to allegations of use or disclosure of this purported trade secret, this allegation "in itself carrie[d] little weight" because there, as here, "material subject to judicial notice show[ed] that Veronica Foods publicly disclosed at least some of its suppliers." *Veronica Foods*, 2017 WL 2806706, at *14; *compare* RJN Decl. Ex. 6 (MASA00080451, rows 1939, 2316) (Plaintiffs identifying ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) (judicial notice taken (ECF 264 at 4)), with RJN Decl. Ex. 7 at 107 (publicly available article touting Masimo's study conducted by the same doctors) (judicial notice taken (ECF 264 at 4)). Thus, "[a]bsent . . . allegations that Defendants misused proprietary, *non-public* knowledge of other *particular* suppliers, Veronica Foods' allegations d[id] not plausibly support the conclusion that Defendants misappropriated trade secrets regarding its suppliers." *Veronica Foods*, 2017 WL 2806706, at *14 (emphases added). Here, Plaintiffs' allegations similarly fail. Plaintiffs' misappropriation allegations that Apple announced ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13

Gibson, Dunn & Crutcher LLP

1  ███████████████████████████████████████████████████████

2  ███████████████ ).

3          Further, Plaintiffs' restated allegations (including Fourth Am. Compl. ¶¶ 44.2–.5)

4  also still fail to state a claim for misappropriation because they are "'merely consistent

5  with' . . . a theory of innocent market entry." *Veronica Foods*, 2017 WL 2806706, at

6  *14 (citation omitted).   For example, Apple's ████████████████ O'Reilly

7  previously pursued for Plaintiffs is equally consistent with an innocuous explanation—

8  *e.g.*, that Apple contacted multiple institutions, some of which had the interest and

9  resources to ████████████████████ with one of the leading technology

10  providers in the world.  And Plaintiffs "new" allegations—which effectively reiterate

11  that O'Reilly purportedly had access to the alleged secrets while working for Plaintiffs

12  (Fourth Am. Compl. ¶¶ 248–50)—add no new facts rendering this claim plausible.

13          Because the Fourth Amended Complaint contains no plausible factual allegations

14  supporting Plaintiffs' ███████████ trade secrets misappropriation claim, that claim

15  should be dismissed with prejudice.

16          **3.    Plaintiffs Still Fail to Allege That Apple Induced a Breach.**

17          This Court dismissed Plaintiffs' theory of induced misappropriation because

18  Plaintiffs' single conclusory "allegation alone [wa]s insufficient to state a claim." ECF

19  264 at 14. Plaintiffs' amended complaint is similarly deficient. First, as discussed below

20  (Section II.B.4), the Fourth Amended Complaint fails to allege any misappropriation

21  committed by O'Reilly, Lamego, or any of Plaintiffs' former employees.  Without

22  allegations that anyone actually breached a duty to maintain secrecy, Plaintiffs cannot

23  allege *inducement* of any breach.  Second, all but one of Plaintiffs' "inducement"

24  additions to its Fourth Amended Complaint are simply restatements of the same

25  allegations about "Lamego and O'Reilly's knowledge of the trade secrets" and

26  "Plaintiffs' warning to Apple about Lamego and O'Reilly's possession of trade secrets"

27  that this Court rejected for "not contain[ing] allegations about how Apple <u>induced</u>

28  misappropriation."  ECF 264 at 14 n.7; *compare* TAC ¶¶ 19–24, 229, *with* Fourth Am.

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS
OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEX)

Compl. ¶¶ 230–32.[5]   Third, Plaintiffs' single new "inducement" allegation does not "nudge[]" Plaintiffs theory "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

The *only* new factual allegations arguably "entitled to the assumption of truth" *Iqbal*, 556 U.S. at 680—only the *second* of which could possibly speak to inducement—are that (1) Tim Cook has publicly stated that he sees healthcare as central to Apple's future, Fourth Am. Compl. ¶ 230, and (2) although O'Reilly "viewed Masimo as his family, Apple had offered him so much money that he simply could not refuse," *id.* ¶ 232.[6]   *At most*, if accepted as true, these allegations suggest that Apple offered to pay O'Reilly more than Plaintiffs were paying him to fill a position related to Apple's purported strategic objectives.   Such a practice does not plausibly suggest improper behavior because it is "not only compatible with, but indeed . . . more likely explained by [the] lawful" employment practice of providing financial incentives to hire executives in a competitive employment market.   *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567); *see also Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("[P]laintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed.").   Using financial incentives to recruit executives to lead strategic objectives is not a basis for alleging Apple induced trade secret misappropriation.   If the result were otherwise, hiring employees away would *necessarily* give rise to an employer's inducement of misappropriation.   This is wrong both as a matter of law, *Iqbal*, 556 U.S. at 680, and of "California public policy strongly

---

[5]   Although Plaintiffs now allege that Lamego worked on "████████████████" at Apple (Fourth Am. Compl. ¶ 231), this Court already rejec███████████████ iffs' nearly identical allegation that Lamego worked on "technologies" for Apple that "he worked on at Plaintiffs" (TAC ¶ 24). ECF 264 at 14 n.7 (citing TAC ¶¶ 19–24, 229).

[6]   Alleging that Apple "provided substantial financial incentives" to "entic[e]" others to "help Apple in its strategic objective in healthcare," Fourth Am. Compl. ¶ 232, without more detail is conclusory, *see* ECF 264 at 14 (citing *Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018)), and insufficient to raise a "plausible suggestion" of induced misappropriation. *Twombly*, 550 U.S. at 566.

Gibson, Dunn &
Crutcher LLP

favor[ing] employee mobility, *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1462 (2002).

Plaintiffs' theory of induced misappropriation must therefore be dismissed again.

**4.    Plaintiffs Still Fail to Allege That Apple Is Vicariously Liable Under *Respondeat Superior.***

This Court dismissed Plaintiffs' theory of *respondeat superior* because the TAC included only "conclusory allegations" that Lamego and O'Reilly *themselves* misappropriated Plaintiffs' trade secrets.  ECF 264 at 14–15.  Plaintiffs still fail to allege misappropriation by their former employees and therefore fail, once again, to allege misappropriation based on a *respondeat superior* theory for which Apple could held liable.  *See id.* at 15 (citing *Brain Injury Ass'n of Cal. v. Yari*, 2020 WL 3643482, at *6 (C.D. Cal. Apr. 30, 2020)).  The Fourth Amended Complaint simply restates and reorganizes the *same* allegations from the TAC that the Court rejected as "conclusory" and "insufficient to state a claim."  *Id.* at 15.  This unsupported theory should be dismissed.

███████████████████████████████ *and* ████████████. Plaintiffs fail to allege that Lamego personally misappropriated ██████████████████ and ██████████ trade secrets.  Plaintiffs' supplemental allegations are insufficient because they are either irrelevant to *Lamego's* purported use/disclosure or mere restatements of the same allegations the Court has already rejected.

First, for both categories, Plaintiffs allege that (1) *Apple* assigned Lamego to work on the ██████████████ and tasked him with producing "████████ ██████████," and (2) *Apple* hired Lamego for his specialized knowledge and "██████████████" because it "██████" that Lamego would use/disclose Plaintiffs' trade secrets.  Fourth Am. Compl. ¶ 236; *id.* ¶ 244 (same).[7]  But allegations

---

[7]   These two "new" (and unsurprisingly vague) allegations are straight from Lamego's LinkedIn profile.  *See* RJN Decl. Ex. 11.

16

Gibson, Dunn & Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEx)

that *Apple* took certain actions are not allegations that *Lamego* used or disclosed Plaintiffs' trade secrets.

Moreover, Plaintiffs' allegation that Apple tasked Lamego with ████████ ████████████████████," *id.* ¶ 236; *id.* ¶ 244 (same), is not materially different from the TAC allegation that "Lamego began pursuing on behalf of Apple numerous patent applications directed toward technologies he worked on at Plaintiffs," TAC ¶ 24.   The Court already rejected this allegation as insufficient to allege that Lamego himself misappropriated Plaintiffs' trade secrets.   *See* ECF 264 at 14–15 (identifying Plaintiffs' "*only* allegations that Lamego and O'Reilly themselves misappropriated Plaintiffs' trade secrets" (emphasis added)).   And in any event, allegations that an employee had knowledge of the trade secrets and then departed for a similar position with a competitor are not sufficient to allege that employee's misappropriation.   *Epicor Software Corp. v. Alternative Tech. Sols., Inc.*, 2013 WL 12130024, at *3 (C.D. Cal. Dec. 2, 2013); *U.S. Legal Support, Inc. v. Hofioni*, 2013 WL 6844756, at *7 (E.D. Cal. Dec. 20, 2013).[8]

Second, for both categories, Plaintiffs added restatements of their previous failed allegations that (1) "████████████████████████████████████████████ ████████████████████████████████ and (2) "█ ████████████████████████████" because he "████████████ █████." Fourth Am. Compl. ¶¶ 236, 244.   These allegations are nearly identical to the allegations in the TAC that (1) "████████████████████████████████ ████████████████████," TAC ¶ 233, (2) "█████████ ████████████████████████████████████████" TAC ¶ 239, and (3) that these patents "name Lamego as the sole inventor," TAC ¶ 48–49.   Plaintiffs specifically argued that they adequately alleged Lamego used the

---

[8]   That Plaintiffs ostensibly do not rely on inevitable disclosure to allege Apple's misappropriation (ECF 264 at 12) is of no moment.   "Given the complete absence of any coherent factual allegations" suggesting Lamego or O'Reilly's misappropriation, Plaintiffs' "theory of relief [i]s an inevitable disclosure claim, or it [i]s no claim at all." *Cypress Semiconductor v. Maxim Int. Prod., Inc.*, 236 Cal. App. 4th 243, 265 (2015).

17

Gibson, Dunn &
Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS
OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEX)

1  trade secrets at Apple because the TAC (1) "███████████████████████

2  ██████████████████████," and (2) "███████████████████████████████

3  ██████████████████████" ECF 262-1 at 5.  The Court rejected this argument.

4  ECF 264 at 14–15.

5      Third, for ██████████████████, Plaintiffs also added that ███████

6  ███████████████████████████, Fourth Am. Compl. ¶ 236, and that Apple's

7  █████████████████████████████████████████████████████████████

8  ██████" *id*. ¶ 235.  But this is intrinsically no different than alleging Lamego used

9  Plaintiffs' ████████████████████████ trade secrets, which this Court has already

10  rejected as conclusory.  ECF 264 at 15 (rejecting allegations that Lamego "used and

11  disclosed Plaintiffs' Confidential Information" and "disclosed Plaintiffs' Confidential

12  Information" (quoting TAC ¶¶ 246, 228)).

13  █████████████████████████████████████████.  For this category, in addition

14  to the same insufficient allegations discussed directly above as to ██████████████

15  ██████████ and ██████████████ (*compare* Fourth Am. Compl. ¶ 241, *with id*.

16  ¶¶ 236, 244), Plaintiffs restated their previous failed allegations:  that "██████████

17  █████████████████████████████████████████████████████████████

18  █████████████████████████████████████████████████████████████

19  ██████████████████████" *Id*. ¶ 241.  But Plaintiffs' TAC *already* alleged that Apple

20  "█████████████████████████████████████████████████████████████

21  ███████████████████" and with "███████████████████████████████████

22  █████████████████████" which purportedly "██████████" "█████████

23  ██████████████" "████████████."  TAC ¶ 235.  The Court dismissed these assertions as

24  insufficient to allege Lamego's use or disclosure of Plaintiffs' trade secrets.  *See* ECF

25  264 at 14–15.

26  ████████████████████████████████████ ***Trade Secrets.*** Plaintiffs' allegations

27  of O'Reilly's misappropriation of the ████████████████████████████████ and

28  ████████████████████ trade secrets are also either irrelevant to *O'Reilly's*

18

Gibson, Dunn &
Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS
OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEX)

purported use/disclosure or not materially different from allegations the Court has
already rejected.  Plaintiffs allege that (1) Apple's CEO interviewed O'Reilly and has
publicly stated that he sees healthcare as central to Apple's future, and (2) Apple hired
O'Reilly as its Vice President of Medical Technology to oversee its healthcare objective.
Fourth Am. Compl. ¶ 247; *id.* ¶ 253 (same).  Allegations that *Apple* took certain actions
do not speak to whether *O'Reilly* used or disclosed Plaintiffs' trade secrets.  And, again,
allegations that an employee had knowledge of alleged secrets and then took a similar
position with a competitor are insufficient to allege that employee's misappropriation.
*Epicor Software*, 2013 WL 12130024, at *3; *U.S. Legal*, 2013 WL 6844756, at *7.

Plaintiffs also allege that "O'Reilly represents Apple before the FDA and
hospitals about Apple's healthcare projects, including the Apple Watch."  Fourth Am.
Compl. ¶ 247; *id.* ¶ 253 (same).  But Plaintiffs previously alleged the same: that O'Reilly
"meet[s] with the FDA on behalf of Apple to discuss medical applications and
discuss[es] medical products that non-invasively measures blood constituents."  TAC ¶
20.  The Court held that this nearly identical TAC allegation did not allege O'Reilly's
misappropriation.  *See* ECF 264 at 14–15.

Plaintiffs admit that some of their so-called new allegations are not in fact new.
For example, they allege: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓," Fourth Am. Compl. ¶ 247, and
(ii) "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓" and with "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓," *id.* ¶ 253.  In both instances, these allegations refer to other
allegations (*id.* ¶¶ 245–46, 248 & 252, respectively), which remain materially unchanged
from Plaintiffs' TAC.  In particular, Plaintiffs previously alleged that "▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓," providing three examples, TAC ¶ 241, and (ii)
"▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Gibson, Dunn &
Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS
OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEx)

1 ███████████████████████████████████████████████████████,"

2 *id*. ¶ 243.  Plaintiffs specifically argued that *these* TAC allegations—which purportedly

3 alleged how "O'Reilly was exposed to the trade secret and how the trade secret was used

4 at Apple"—adequately alleged O'Reilly's misappropriation.  ECF 262-1 at 5 (citing,

5 among others, TAC ¶¶ 240–41, 242–43).  The Court rejected this argument.  ECF 264

6 at 14–15.

7       Moreover, for the same reasons as discussed above (in Section II.B.2) as to

8 Plaintiffs' ██████████████████████, Plaintiffs still fail to allege that

9 *O'Reilly* misappropriated these ████████ because their allegation, for example,

10 regarding Apple's ████████████████████████████████████,

11 is equally consistent with an innocuous explanation.  *Veronica Foods*, 2017 WL

12 2806706, at *14 (citation omitted).

13 ███████████████████████████.  Plaintiffs' allegations concerning

14 █████████████████████████ suffer from similar flaws.  First, Plaintiffs' new

15 allegation of O'Reilly's alleged use/disclosure of these alleged secrets is still

16 insufficient.  Plaintiffs allege that O'Reilly told Plaintiffs that "███████████

17 █████████████████████████" (Fourth Am. Compl. ¶ 255), but what O'Reilly

18 allegedly told Plaintiffs about *Apple's* technology is irrelevant to his purported

19 misappropriation of *Plaintiffs'* information.

20       Second, Plaintiffs' allegations of Lamego's use or disclosure are also still

21 deficient.  At bottom, Plaintiffs' new allegations concerning Lamego are still

22 conclusory—they assert:  (1) ████████████████████████████████████

23 ████████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████████

25 ██████████████████" and (2) "████████████████████████████

26 ████████████████████████████████████████████." Fourth Am.

27 Compl. ¶¶ 255–56.  The first allegation merely amounts to the facially-public and basic

28 technique of ██████████████████████.  Despite Plaintiffs' highly technical

Gibson, Dunn &
Crutcher LLP

1  language, this is not secret information capable of protection. *Cf.* ECF 264 at 9. And in

2  any case, both of these allegations are insufficient—they simply recount the techniques

3  Plaintiffs consider to be their trade secrets: namely, "

4  " (Fourth Am. Compl. ¶ 45.3), "

5  " (*id.* ¶ 45.1), and "

6

7  " *i.e.*, an "

8  " (*id.* ¶ 45.2), respectively. *Compare id.* ¶ 45, *with id.* ¶¶ 255–56. The Court

9  has already rejected such conclusory misappropriation allegations. ECF 264 at 15

10  (rejecting allegations that Lamego "used and disclosed Plaintiffs' Confidential

11  Information" and "disclosed Plaintiffs' Confidential Information" (quoting TAC ¶¶ 246,

12  228)); *see also Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 2021 WL 689914,

13  at *23 (S.D. Cal. Feb. 23, 2021) (granting motion to dismiss because plaintiff failed to

14  allege any non-conclusory facts that plausibly suggest use or disclosure of its trade

15  secrets).

16      Plaintiffs' only other misappropriation allegations concerning their

17  are that O'Reilly and Lamego were exposed to

18  Plaintiffs' techniques and then worked on                        at Apple.

19  Fourth Am. Compl. ¶¶ 255–56. Again, no matter how many times Plaintiffs repeat them,

20  allegations that employees had knowledge of trade secrets and then departed for similar

21  positions with a competitor are not sufficient to allege misappropriation. *Epicor*, 2013

22  WL 12130024, at *3; *U.S. Legal*, 2013 WL 6844756, at *7.

23      Finally, Plaintiffs' catch-all paragraph (Fourth Am. Compl. ¶ 258) cannot save

24  their *respondeat superior* theory of misappropriation. As this Court already has found,

25  attempting to create new allegations by simply affixing them to defective predicate

26  allegations does not save Plaintiffs' claims. ECF 264 at 9 (alleged trade secrets

27  "dependent" on failed allegations likewise fail).

28      Plaintiffs' theory of *respondeat superior* should therefore be dismissed.

21

### III. **PLAINTIFFS SHOULD BE DENIED FURTHER LEAVE TO AMEND**

Plaintiffs' amended "████████████" trade secrets and claim for misappropriation thereof (under any theory), Plaintiffs' misappropriation claim for use of ████████████████ (under any theory), and Plaintiffs' theories of induced misappropriation and *respondeat superior* (for all purported trade secrets) should be dismissed with prejudice.  This Court's discretion to deny leave to amend is "particularly broad" where plaintiff has previously amended the complaint—as Plaintiffs have now done four times.  *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

After *five* chances (three after dismissal) Plaintiffs again have failed.  And unlike some of the Court's prior orders, the Court may now grant partial dismissal for the *same* reasons given in the Court's previous orders.  *See* ECF 264 at 16.  As the Court explained, the "general rule that parties are allowed to amend their pleadings . . . does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal." *Id.* at 15 (quoting *Steckman v. Hart Brewing*, 143 F.3d 1293, 1298 (9th Cir. 1998)); *see Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) ("[r]epeated failure to cure deficiencies" sufficient to deny leave).  Here, further amendment would be futile. *GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, 2016 WL 6601656, at *8 (C.D. Cal. July 25, 2016) (dismissing with prejudice after three failed tries); *see also Basalite Concrete Prod., LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 2013 WL 2156582, at *9 (E.D. Cal. May 17, 2013), *aff'd*, 615 F. App'x 894 (9th Cir. 2015).

Prejudice to the opposing party "carries the greatest weight" in the analysis.  ECF 264 at 15 (quoting *Eminence Capital v. Aspeon Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).  Further amendment would cause further delay and undue prejudice to Apple, who has now spent over a year and millions of dollars responding to serial baseless complaints.  *See Barnes-Mohammed v. Cty. of Santa Barbara*, 2008 WL 793479, at *5 (C.D. Cal. Mar. 24, 2008) (finding undue prejudice to defendants where plaintiff serially

22

Gibson, Dunn & Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT CASE NO. 8:20-CV-00048-JVS (JDEx)

1   "failed . . . to set forth a short and plain statement of her claims, despite repeated attempts

2   by the Court to educate her on the process"); *Kilgore v. Dir.*, 2016 WL 8678365, at *2

3   (E.D. Cal. Feb. 26, 2016) (undue prejudice where amendment would cause "a

4   considerable delay of . . . proceedings").

5         The aforementioned portions of Plaintiffs' trade secret claim should be dismissed

6   without leave to amend.

7   ## IV. <u>CONCLUSION</u>

8         Apple respectfully requests that the Court dismiss with prejudice the above-

9   referenced portions of Plaintiffs' Thirteenth Cause of Action for trade secret

10  misappropriation.

11  Dated:  February 26, 2021

12                            Respectfully submitted,

13                            JOSHUA H. LERNER
    H. MARK LYON

14                            BRIAN M. BUROKER
    BRIAN A. ROSENTHAL

15                            ILISSA SAMPLIN
    ANGELIQUE KAOUNIS

16                            BRIAN K. ANDREA
    GIBSON, DUNN & CRUTCHER LLP

17

18                            By:  */s/ Joshua H. Lerner*

19                                Joshua H. Lerner

20                            *Attorneys for Defendant Apple Inc.*

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS
OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEX)