Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>)<br>) **PLAINTIFFS' OPPOSITION TO**<br>) **APPLE'S MOTION TO DISMISS**<br>) **PORTIONS OF THE THIRTEENTH**<br>) **CAUSE OF ACTION IN FOURTH**<br>) **AMENDED COMPLAINT**<br>)<br>)<br>) Date:    April 19, 2021<br>) Time:    1:30pm<br>) Ctrm:    10C<br>)<br>) Honorable James V. Selna<br>) |

**REDACTED VERSION OF DOCUMENT
PORPOSED TO BE FILED UNDER SEAL**

**TABLE OF CONTENTS**

Page No.

I.    INTRODUCTION ................................................................................................1

II.   ARGUMENT.......................................................................................................2

      A.   The FAC Sufficiently Describes The Hospital-Interactions
           Trade Secrets ................................................................................................2

           1.   The FAC Sufficiently Describes Trade Secret 44.2 ..................3

           2.   The FAC Sufficiently Describes Trade Secret 44.3 ..................7

           3.   The FAC Sufficiently Describes Trade Secret 44.4 ..................8

           4.   The FAC Sufficiently Describes Trade Secret 44.5 ..................9

      B.   The FAC Plausibly Alleges Misappropriation of Plaintiffs'
           ███████████████████████████.................................................10

      C.   The FAC Plausibly Alleges Misappropriation of Trade Secret
           44.1 ...........................................................................................................13

      D.   The FAC Plausibly Alleges Acquisition By Improper Means ...........15

           1.   Plaintiffs Alleges a Plausible Claim Of Improper
                Acquisition................................................................................15

           2.   Apple's Piecemeal Criticisms Lack Merit................................17

      E.   The FAC Plausibly Alleges Liability Under *Respondeat
           Superior* ...................................................................................................19

           1.   The FAC Alleges Lamego And O'Reilly's
                Misappropriation........................................................................19

           2.   Lamego and O'Reilly Acted Within The Scope Of Their
                Employment................................................................................24

      F.   Denying Leave To Amend Would Be Improper....................................25

III.  CONCLUSION ................................................................................................25

1

# TABLE OF AUTHORITIES

2

**Page No(s).**

3

*Advanced Modular Sputtering v. Superior Court,*
    132 Cal. App. 4th 826 (2005) ....................................................................2

4

5

*Aetna Bldg. Maint. Co. v. West,*
    39 Cal. 2d 198, 246 P.2d 11 (1952)...........................................................9

6

*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.,*
    226 Cal. App. 4th 26 (2014) .............................................................7, 14

7

8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).......................................................................2, 18, 23

9

10

*Autodesk, Inc. v. ZWCAD Software Co.,*
    2015 WL 2265479 (N.D. Cal. May 13, 2015)...................................16, 17

11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................2, 18

12

13

*Brain Injury Association of California v. Yari,*
    2020 WL 3643482 (C.D. Cal. Apr. 30, 2020)..........................................19

14

15

*Brescia v. Angelin,*
    172 Cal. App. 4th 133 (2009) .............................................................3, 8

16

*Brocade Comm. Sys., Inc. v. A10 Networks, Inc.,*
    2011 WL 1044899 (N.D. Cal. Mar. 23, 2011) ....................................9, 16

17

18

*By-Buk Co. v. Printed Cellophane Tape Co.,*
    163 Cal. App. 2d 157 (1958) ...................................................................5

19

20

*Calendar Rsch. LLC v. StubHub, Inc.,*
    2017 WL 10378336 (C.D. Cal. Aug. 16, 2017) ......................................16

21

*City of Oakland v. Wells Fargo & Co.,*
    972 F.3d 1112 (9th Cir. 2020) ...............................................................18

22

23

*CleanFish, LLC v. Sims,*
    2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) .......................................10

24

25

*Courtesy Temp. Serv., Inc. v. Camacho,*
    222 Cal. App. 3d 1278 (Cal. Ct. App. 1990).............................................4

26

27

*Cypress Semiconductor Corp. v. Maxim Integrated Prod., Inc.,*
    236 Cal. App. 4th 243 (2015) ...............................................................21

28

# TABLE OF AUTHORITIES
## (*Cont'd*)

**Page No(s).**

*Duncan v. Stuetzle,*
    76 F.3d 1480 (9th Cir. 1996) ................................................................4

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
    751 F.3d 990 (9th Cir. 2014) .......................................................18, 19

*Elsevier Inc. v. Doctor Evidence, LLC,*
    2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ...................................6, 7

*Epicor Software Corp. v. Alternative Tech. Sols., Inc.,*
    2013 WL 12130024 (C.D. Cal. Dec. 2, 2013) ...................................21

*Head Ski Co. v. Kam Ski Co.,*
    158 F. Supp. 919 (D. Md. 1958) .........................................................4

*Imi-Tech Corp. v. Gagliani,*
    691 F. Supp. 214 (S.D. Cal. 1986) ......................................................5

*Ingrassia v. Bailey,*
    172 Cal. App. 2d 117 (1959) ...............................................................4

*InteliClear, LLC v. ETC Glob. Holdings, Inc.,*
    978 F.3d 653, 662 (9th Cir. 2020) .....................................................14

*Language Line Servs., Inc. v. Language Servs. Assocs., LLC,*
    2010 WL 2764714 (N.D. Cal. July 13, 2010) ..................................25

*Lohan Media LLC v. Thane Int'l Inc.,*
    2001 WL 1827169 (C.D. Cal. Nov. 16, 2001) ...................................6

*MACOM Tech. Sols. Inc. v. Litrinium, Inc.,*
    2019 WL 4282906 (C.D. Cal. June 3, 2019).....................................12

*Mattel, Inc. v. MGA Ent., Inc.,*
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ................................................9

*New Show Studios LLC v. Needle,*
    2014 WL 2988271 (C.D. Cal. June 30, 2014) ....................................9

*Nordstrom v. Ryan,*
    762 F.3d 903 (9th Cir. 2014) ......................................................2, 6, 9

*Physician's Surrogacy, Inc. v. German,*
    2018 WL 638229 (S.D. Cal. Jan. 31, 2018) .....................................12

# TABLE OF AUTHORITIES
## (*Cont'd*)

**Page No(s).**

*PMC, Inc. v. Kadisha*,
 78 Cal. App. 4th 1368 (2000) ...............................................................12

*Prolifiq Software Inc. v. Veeva Sys. Inc.*,
 2014 WL 2527148 (N.D. Cal. June 4, 2014).........................................3

*Pyro-Comm Sys. Inc. v. W. Coast Fire & Integration Inc.*,
 2015 WL 12765143 (C.D. Cal. Apr. 2, 2015).......................................11

*Quality Towing, Inc. v. Jackson*,
 2016 WL 3017642 (N.D. Cal. May 26, 2016)........................................25

*SkinMedica, Inc. v. Histogen Inc.*,
 869 F. Supp. 2d 1176 (S.D. Cal. Apr. 23, 2012) .................................12

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
 2021 WL 689914 (S.D. Cal. Feb. 23, 2021).........................................24

*Soo Park v. Thompson*,
 851 F.3d 910 (9th Cir. 2017) ......................................................*passim*

*Space Data Corp. v. X*,
 2017 WL 5013363 (N.D. Cal. Feb. 16, 2017)........................................12

*State Comp. Ins. Fund v. Capen*,
 2015 WL 13322034 (C.D. Cal. Dec. 18, 2015)......................................18

*TMX Funding, Inc. v. Impero Techs., Inc.*,
 2010 WL 2509979 (N.D. Cal. June 17, 2010).........................................9

*U.S. Legal Support, Inc. v. Hofioni*,
 2013 WL 6844756 (E.D. Cal. Dec. 20, 2013)........................................21

*Veronica Foods Co. v. Ecklin*,
 2017 WL 2806706 (N.D. Cal. June 29, 2017)...........................14, 15, 23

*Whyte v. Schlage Lock Co.*,
 101 Cal. App. 4th 1443 (2002) ..............................................................4

## OTHER AUTHORITIES

Cal. Civ. Code § 3426.1.................................................................15, 16

1

## TABLE OF AUTHORITIES
### (*Cont'd*)

**Page No(s).**

Fed. R. Civ. P. 11 ................................................................................... 13

## I.  <u>INTRODUCTION</u>

The Court recently held Plaintiffs' Third Amended Complaint ("TAC") plausibly alleges trade-secret misappropriation.  Dkt. 264.  The Court rejected the vast majority of Apple's arguments and held only a few allegations were insufficient.  *Id.*  Plaintiffs responded by adding substantial detail in the Fourth Amended Complaint ("FAC") to address the Court's ruling.  Ex. A.  Apple now challenges Plaintiffs' allegations by arguing the Court should disregard all allegations from the TAC and find each "new" allegation in the FAC would be insufficient on its own.  This Court rejected a similar piecemeal approach in Apple's prior motion because "the Court must consider the entire sequence of events in context, and not the individual allegations in isolation."  Dkt. 264 at 11 (citing *Soo Park v. Thompson*, 851 F.3d 910, 928 n.22 (9th Cir. 2017)).  Apple does not show Plaintiffs' allegations as a whole are inadequate under this standard.

Apple's specific challenges also lack merit.  ***First***, Apple argues Plaintiffs fail to sufficiently describe their hospital-interactions trade secrets.  Apple incorrectly asserts Plaintiffs failed to address the Court's finding that ███████████████████████ ███████████████████████████████████████████████████████ But Plaintiffs never intended to identify that mere concept as their trade secret and have amended to make clear that is ***not*** Plaintiffs' trade secret.  Plaintiffs describe ███ ███████████████████████████████████████████████████████

***Second***, Apple argues Plaintiffs' misappropriation allegations regarding the hospital-interactions trade secrets are insufficient because Plaintiffs did not amend them.  But Plaintiffs did not amend those allegations because the Court found them sufficient.  Dkt. 264 at 9.  Apple provides no basis to sidestep that ruling and assert new challenges.

***Third***, Apple argues Plaintiffs' misappropriation allegations regarding Plaintiffs' ████████████████████ are insufficient because Plaintiffs purportedly rely only on allegations from the TAC.  Br. at 1-2.  That is incorrect.  Plaintiffs added additional detail, including ████████████████████████████████████████████ ███████████████████████████████████████████ Ex. A.

**Fourth**, Apple argues some of Plaintiffs' inducement allegations are purportedly consistent with an "innocuous" explanation. Br. at 2. But the Ninth Circuit—in a decision Apple previously cited to the Court but now ignores—specifically rejected that approach. *See Soo Park*, 851 F.3d at 928 n.22 (explaining that, while some facts alone may appear innocuous, considering the "entire sequence of events" was "'suggestive of illegal conduct' and is thus sufficient to survive a motion to dismiss").

**Fifth**, Apple argues Plaintiffs' *respondeat superior* theory relies on allegations the Court purportedly found insufficient in the TAC. Br. at 2. That is also incorrect. The Court found the TAC included only two short sentences alleging Lamego and O'Reilly misappropriated trade secrets, and found those two sentences were insufficient. Dkt. 264 at 14-15. The Court cited **none** of the TAC allegations Apple now argues the Court found insufficient. Dkt. 264 at 14-15. Regardless, the FAC adds **pages** of new allegations detailing how Lamego and O'Reilly misappropriated each trade secret. The totality of the allegations provide more than sufficient detail to plead a plausible claim.

## II.  ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility requirement "does not impose a probability requirement" and "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Twombly*, 550 U.S. at 556. Courts "take as true all factual allegations" and "draw all reasonable inferences in the plaintiff's favor." *Nordstrom v. Ryan*, 762 F.3d 903, 906 (9th Cir. 2014).

### A.    The FAC Sufficiently Describes The Hospital-Interactions Trade Secrets

A plaintiff is "not required, on pain of dismissal, to describe [the trade secret] with the greatest degree of particularity possible, or to reach such an exacting level of specificity that even its opponents are forced to agree the designation is adequate." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 836

1  (2005).  Designations "should be liberally construed in favor of the trade secret claimant,

2  and . . . doubts about its adequacy should be resolved in favor of permitting discovery

3  to go forward." *Brescia v. Angelin*, 172 Cal. App. 4th 133, 145 (2009).  Even Section

4  2019.210—which Apple asserts is a higher standard—"does not require in every case

5  that a trade secret claimant explain how the alleged trade secret differs from the general

6  knowledge of skilled persons in the field to which the secret relates." *Id.* at 138.  The

7  plaintiff need only provide enough detail so "***[t]he defendant*** may then use that level of

8  detail to determine the limits of the trade secret by investigating whether the information

9  disclosed is within the public domain . . . ." *Id.* at 147.[1]

10      Apple does not dispute it understands the boundaries of Plaintiffs' alleged trade

11  secrets.  Nor could it.  Apple recently served a lengthy interrogatory response disclosing

12  information that Apple contends shows each trade secret is generally known, including

13  the hospital trade secrets at issue here.  Ex. B at 57-64.  As this Court explained, Apple's

14  ability to provide such contentions shows "Plaintiffs have defined their trade secret with

15  sufficient particularity."  Dkt. 206 at 10; *see also Prolifiq Software Inc. v. Veeva Sys.*

16  *Inc.*, 2014 WL 2527148, at *3 (N.D. Cal. June 4, 2014) (finding "the fact that [defendant]

17  is able to craft detailed arguments for why [plaintiff's] information does not constitute

18  trade secrets means that [plaintiff] has sufficiently identified that information to

19  [defendant] so that it may investigate the merits of [plaintiff's] claim.").

20      Unable to argue the FAC provides insufficient detail, Apple instead challenges

21  the merits by asserting the trade secrets are generally known.  But Plaintiffs are not

22  required to explain how their secrets differ from that which is generally known.  *Brescia*,

23  172 Cal. App. 4th at 145.  Plaintiffs' allegations are sufficient as explained below.

24      **1.    The FAC Sufficiently Describes Trade Secret 44.2**

25      Trade Secret 44.2 describes █████████████████████████████████

26  ████████████████████████████████████████████████████████████████

27  _____

28  [1] All emphasis is added unless noted otherwise.  All lettered exhibits are attached to the
Declaration of Adam B. Powell, filed herewith.

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ████████████████████████████████████████████████

6 ████████████████████████████████████████████████

7 ████████████████████████████████████████████████

8 ████████████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 ████████████████████████████████████████████████

12 ██████████████████████████████████████████

13       Courts routinely protect such business and marketing techniques as trade secrets.

14 *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1456 (2002) ("marketing strategy

15 and plans . . . constitute trade secrets under California law"); *Courtesy Temp. Serv., Inc.*

16 *v. Camacho*, 222 Cal. App. 3d 1278, 1287, 1282 (1990) ("process of acquiring and

17 retaining clientele," including information about customer needs and characteristics,

18 "constitute[d] a protectable trade secret"); *Duncan v. Stuetzle*, 76 F.3d 1480, 1488 n.11

19 (9th Cir. 1996) ("the company's marketing strategy" qualifies as "trade secret"). Such

20 techniques are protectable because they "may well spell the difference between success

21 and failure in such a venture." *Ingrassia v. Bailey*, 172 Cal. App. 2d 117, 122 (1959).

22 Knowing a technique works in particular circumstances is also protectable. *See Head*

23 *Ski Co. v. Kam Ski Co.*, 158 F. Supp. 919, 923 (D. Md. 1958) ("knowledge of the

24 particular process, method or material which is most appropriate to achieve the desired

25 result may itself be a trade secret").

26       Moreover, knowing the particular approach that ***Masimo*** employs is "valuable if

27 known by a competitor because it would allow the competitor to predict and counter

28 [Masimo's] advertising and marketing." *Whyte*, 101 Cal. App. 4th at 1456. Others could

use the information to duplicate Masimo's approach or counter it in the marketplace. Contrary to Apple's suggestion, a trade secret need not appear "patentably nonobvious or novel." *Imi-Tech Corp. v. Gagliani,* 691 F. Supp. 214, 231 (S.D. Cal. 1986). That "misconceive[s] what constitutes a trade secret." *By-Buk Co. v. Printed Cellophane Tape Co.*, 163 Cal. App. 2d 157, 166 (1958). A trade secret need not "be patentable or be something that could not be discovered by others by their own labor and ingenuity." *Id.* "The character of the secret" is "not material"; what matters is whether the secret is "important to the business" and "kept secret by the one who claims it." *Id.*

Apple argues Plaintiffs failed to address the Court's finding that ███████ ██████████████████████████████████████████████████████████ ████████████████████████████████████ But Plaintiffs never intended to identify that mere concept as their trade secret and have amended to make clear they are ***not*** asserting that is a trade secret. In particular, trade secret 44.2 recites:



Apple does not claim it is unable to understand Plaintiffs' trade secret. Rather, Apple dissects the trade secret into parts and attempts to argue each part would be insufficient (considered individually). For example, Apple dismisses the preamble of trade secret 44.2 as "superfluous." Br. at 6. ████████████████████ ███████████████████████████████████████████████████████████████

1 ██████████████████████████████████████████████████████

2 █████████████████   The preamble thus provides the very allegation Apple asserts is

3 missing: an explanation of how the secret differs from that which is generally known.

4       Apple next argues some allegations are similar to allegations in the TAC, which

5 the Court dismissed because ███████████████████████████████████████

6 ██████████████████████████████████████████████████████

7 ██████████████████████████████████████████████████████

8 ██████████████████████████████████████████████████████

9 ███████████████████████████████████████████████

10       Apple similarly argues ████████████████████████████████

11 ██████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████████

13 ██████████████████████████████████████████████████████

14 ██████████████████████████████████████████████████████

15 █████████████████████████████████████████   Apple identifies

16 nothing showing the specific subject matter of Plaintiffs' business technique is generally

17 known, and that would be the ultimate question of fact on the merits.

18       Apple cites ██████████████████████████████████████

19 ██████████████████████████████████████████████████████

20 ██████████████████████████████████████████████████████

21 ███████████████████████████████   Apple may dispute whether

22 Plaintiffs' strategy is generally known, but Plaintiffs' allegations are well supported and

23 accepted as true on a motion to dismiss. *See Nordstrom*, 762 F.3d at 906.

24       Apple cites no case dismissing similar allegations. As Apple acknowledges,

25 *Lohan Media LLC v. Thane Int'l Inc.*, 2001 WL 1827169, at *4 (C.D. Cal. Nov. 16,

26 2001), denied a preliminary injunction motion because the plaintiff had not established

27 a likelihood of success. In *Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at

28 *6 (S.D.N.Y. Jan. 23, 2018), the court did not dismiss a trade secret as generally known.

1  Instead, the court found the plaintiff described only "general categories" without any
2  "methods" or "processes." *Id.* at *6. Here, Plaintiffs describe specific methods.

3         **2.**       **The FAC Sufficiently Describes Trade Secret 44.3**

4        Trade secret 44.3 is narrower than 44.2 in that it contains all aspects of 44.2 ***and***
5  further includes ███████████████████████████████
6  ████████████████████████████████████████
7  ████████████████████████████████████████
8  ████████████████████████████████████████
9  ████████████████████████████████████████
10 ████████████████████████████████████████
11 ████████████████████████████████████████
12 ████████████████████████████████████████
13 ████████████████████████████████████████
14 ████████████████████████████████████████
15 ████████████████████████████████

16       Rather than identify any deficiency in Plaintiffs' description, Apple argues this
17 trade secret must fail because it incorporates trade secret 44.2, which Apple asserts is
18 deficient. Br. at 7. But Apple has it backwards. Trade secret 44.3 is narrower than 44.2
19 because it adds material. Therefore, a showing that 44.2 is not generally known would
20 necessarily show 44.3 is ***also*** not generally known. However, the inverse is not true:
21 44.3 could be protectable even if 44.2 were not. As the California Court of Appeal
22 explained, "even if some or all of the elements of [plaintiff's] design were in the public
23 domain and thus unprotectable, the *combination* was a protectable trade secret if it was
24 secret and had independent economic value." *Altavion, Inc. v. Konica Minolta Sys. Lab.,*
25 *Inc.*, 226 Cal. App. 4th 26, 47 (2014) (emphasis in original). Courts do not examine
26 trade secrets "bit by bit" and require the plaintiff "demonstrate protectability of its
27 elements or some of them rather than the protectability of the [] system as a whole." *Id.*
28       Apple argues ████████████████████████████████

1 ██████████████████████████████████████████████████████████

2 ███████████████████████ But that is again an improper attack on the merits. ████████

3 ██████████████████████████████████████████████████████████

4 ██████████████████████████████████████████████████████████

5 ██████████████████████████████████████████████████████████

6 Moreover, this Court already held that unsupported attorney argument about a trade

7 secret being known is insufficient to grant a motion to dismiss. *See* Dkt. 264 at 8

8 (rejecting Apple's argument that another trade secret was "so broadly known"). Apple

9 may disagree on the merits, but Plaintiffs described their trade secrets in sufficient detail.

10        **3.**     **The FAC Sufficiently Describes Trade Secret 44.4**

11      Trade secret 44.4 is directed specifically towards ████████████████

12 ██████████████████████████████████████████████████████████

13 ██████████████████████████████████████████████████████████

14 ██████████████████████████████████████████████████████████

15 ██████████████████████████████████████████████████████████

16 █████████████████████████████████ The FAC describes this trade secret in

17 sufficient detail for Apple to defend itself. *See Brescia*, 172 Cal. App. 4th at 145.

18      Apple argues this trade secret ████████████████████████████

19 ███████████████████████████████████████████████████ That

20 is not an accurate characterization of trade secret 44.4, which recites Plaintiffs' specific

21 business and marketing strategy as follows:

22 ██████████████████████████████████████████████████████████

23 ██████████████████████████████████████████████████████████

24 ██████████████████████████████████████████████████████████

25 ██████████████████████████████████████████████████████████

26 ██████████████████████████████████████████████████████████

27 ██████████████████████████████████████████████████████████

28 ██████████████████████████████████████████████████████████

FAC ¶ 44.4.  Apple offers only attorney argument for its assertion regarding what was known.  Br. at 8.  As discussed above, such marketing and sales tools, and the knowledge of the techniques employed by competitors, are protectable.  *See supra* Section II.A.1.

Apple's arguments are once again unsupported by case law.  Two of Apple's cases addressed evidence on summary judgment or at trial.  *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 968 (C.D. Cal. 2011) (granting summary judgment where plaintiff failed to show a trade secret was not generally known); *Aetna Bldg. Maint. Co. v. West*, 39 Cal. 2d 198, 206 (1952) (holding "no evidence was introduced" to show information was a trade secret).  At the pleading stage, courts routinely approve far less detailed descriptions than at issue here.  *See, e.g.*, *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010) ("business methods and marketing plans, such as prospective customer and sales methods for attracting and retaining customers"); *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *9 (C.D. Cal. June 30, 2014) ("business plans, pricing, marketing strategies"); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2011 WL 1044899, at *1 (N.D. Cal. Mar. 23, 2011) ("information regarding its products, including customer needs and terms of agreements with customers").  Again, Apple may disagree on the merits, but Plaintiffs' allegations are accepted as true on a motion to dismiss.  *See Nordstrom*, 762 F.3d at 906.

### 4.    The FAC Sufficiently Describes Trade Secret 44.5

Trade secret 44.5 contains all aspects of trade secret 44.4 and adds ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Apple's argues this trade secret is deficient because it incorporates all aspects of trade secret 44.2.  Br. at 9.  That is incorrect because, as discussed above, a narrower trade secret that adds additional material may be protectable regardless of the status of a broader related trade secret.  *See supra* Section II.A.2.

Apple also argues this trade secret is "indistinguishable from matters of general knowledge."  Br. at 9.  But Apple again offers only attorney argument.  Apple cites

-9-

1  *CleanFish, LLC v. Sims*, 2020 WL 1274991, at \*9 (N.D. Cal. Mar. 17, 2020), which

2  dismissed a broad identification reciting: "detailed customer lists, customer purchasing

3  data, customer sales figures and other related customer purchasing analysis and trends."

4  As shown above, Plaintiffs' identify particular strategies for achieving particular

5  results—not the sort of broad categories at issue in *CleanFish*.

6        Accordingly, Plaintiffs describe their trade secrets in sufficient detail.  If the Court

7  has any doubt about these trade secrets, however, Plaintiffs welcome the opportunity to

8  provide a proffer through live testimony to further explain them.

9  **B.**    **The FAC Plausibly Alleges Misappropriation of Plaintiffs'** ████

10 ████████████████████

11       This Court found the TAC sufficiently alleged misappropriation of all trade

12 secrets except Plaintiffs' ██████████████████.  Dkt. 264 at 13.  The

13 Court dismissed those allegations because it agreed with Apple's assertion that ████

14 ████████████████████████████████

15 ████████████████████████████████

16 ████████████████████████

17      Apple claims Plaintiffs' FAC merely "parrot[s]" allegations from the TAC.  Br.

18 at 9.  That is incorrect.  The FAC allegations are much more extensive.  *See* Ex. A.

19 Among other things, the FAC alleges ████████████████████

20 ████████████████████████████████

21 ████████████████████████████████

22 ████████████████████████████████

23 ████████████████████████████████

24 ████████████████████████████████

25 ████████████████████████████████

26 ████████████████████████████████

27 ████████████████████████████████

28 ████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ███████████████████████████

5        Rather than address Plaintiffs' allegations as a whole, Apple dissects them and

6 argues that each allegation would be insufficient in a vacuum.  Br. at 9-12.  This Court

7 rejected that approach and explained it "must consider the entire sequence of events in

8 context, and not the individual allegations in isolation."  Dkt. 264 at 11 (citing *Soo Park*,

9 851 F.3d at 928 n.22).  As *Soo Park* explained, even where some facts may appear

10 innocuous, considering the "entire sequence of events" can be "suggestive of illegal

11 conduct and is thus sufficient to survive a motion to dismiss."  851 F.3d at 928 n.22.

12        Apple's specific criticisms of individual allegations also lack merit.  Apple argues

13 Lamego's actions ***at Apple*** are somehow irrelevant to pleading a claim against Apple.

14 Br. at 10.  Not so.  Such allegations are relevant to showing both direct and indirect

15 liability because they show ███████████████████████

16 ████████████████████████████████  A corporation is liable for

17 the misappropriation of its employees because a "corporation always acts through

18 individuals."  *See Pyro-Comm Sys. Inc. v. W. Coast Fire & Integration Inc.*, 2015 WL

19 12765143, at *5 (C.D. Cal. Apr. 2, 2015).  To the extent Apple is drawing a distinction

20 between Lamego and its other employees, that distinction is irrelevant.  Apple is just as

21 responsible for Lamego's actions as it is for its other employees' actions.

22        Next, Apple argues ████████████████████████

23 ████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████

28 ███████████

1    Apple cites two cases that both addressed conclusory allegations that were far less

2    detailed than Plaintiffs' allegations.  *See Space Data Corp. v. X*, 2017 WL 5013363, at

3    *2 (N.D. Cal. Feb. 16, 2017) (dismissing allegation that "Defendants have engaged in

4    other business activity based on Space Data's confidential trade secret information,

5    which conflict with their legal obligations to Space Data"); *MACOM Tech. Sols. Inc. v.*

6    *Litrinium, Inc.*, 2019 WL 4282906, at *9 (C.D. Cal. June 3, 2019) (dismissing allegation

7    that "Garez incorporated Plaintiffs' proprietary designs into Litrinium products").

8    Apple also cites *Physician's Surrogacy, Inc. v. German*, 2018 WL 638229, at *8 (S.D.

9    Cal. Jan. 31, 2018), which addressed whether the misappropriation occurred before or

10   after enactment of the Federal Defend Trade Secrets Act.  That is irrelevant here.

11   Apple also argues Plaintiffs did not include any new allegations ████████████

12   ████████████████████████████████████ Br. at 12.  But Plaintiffs can show

13   improper use even if ████████████████████████████████ *See*

14   *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (2000) ("use" includes "[e]mploying

15   the confidential information" in almost any way, including in "research or

16   development"); *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D.

17   Cal. Apr. 23, 2012) ("information may be improperly 'used' in that it is unlawfully

18   acquired and then built upon or modified before being disclosed or benefit derived").

19   Moreover, Apple's assertion is incorrect.  Plaintiffs allege ████████████

20   ████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████

28   ████████████████████████████████████

Plaintiffs make their allegation in good faith based on their investigation and their expectation that discovery will support their allegations. A plaintiff may properly rely on factual contentions that "have evidentiary support *or*, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Plaintiffs are entitled to rely on the latter provision in alleging the Apple Watch incorporates Plaintiffs' trade secret and ███████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████ Nothing more is required.

During the meet and confer, Apple accused Plaintiffs of "lying" to the Court in the FAC because Apple claimed it had already produced source code proving Plaintiffs' allegations are incorrect. Powell Decl. ¶ 3. Plaintiffs responded that Apple never produced the relevant code. *Id.* Apple asserted for weeks that it had produced the code before eventually admitting it ***had not done so***. Ex. C.[2] Apple then withheld the code until just ***two days*** before the date of this opposition, ensuring Plaintiffs could not reasonably review the code before opposing Apple's motion. *Id.*[3] Apple's assertion that the code will support Apple's arguments confirms that Apple's arguments are a matter for discovery and eventual resolution on the merits—not on a motion to dismiss.

**C.    The FAC Plausibly Alleges Misappropriation of Trade Secret 44.1**

Apple next challenges misappropriation of trade secret 44.1.[4] Apple claims the

---

[2] Apple's email accused Plaintiffs of not promptly raising this issue. Ex. C. But the Court stayed the patent case the day after Apple's prior production. Dkt. 222. After the stay, Apple objected to producing ████████████████████████████████████████████████████████████████████████

[3] The timing of Apple's late production indicates Apple may make some argument about the source code on reply. Any attempt by Apple to make such arguments—when Plaintiffs have no opportunity to respond—would be improper.

[4] While Apple refers to Plaintiffs' "hospital interaction" trade secrets, Apple challenges only trade secret 44.1. *See* Br. at 12-14 ████████████████████████████████████ ███████████████████████████████ Apple does not challenge misappropriation of the other hospital interactions trade secrets 44.2-44.7.

-13-

1
2
3
4
5
6
7

8
9
10
11
12
13
14
15
16
17
18
19

20
21
22
23
24
25

26
27
28

Court did not rule on this issue.  Br. at 12.  But the Court rejected Apple's arguments regarding misappropriation of all but one trade secret in holding "[m]ost of Apple's arguments that Plaintiffs have failed to state a claim for misappropriation fail." Dkt. 264 at 13.  The only exception was ███████████████████████████ ████████████████████   Indeed, the Court confirmed it considered Apple's arguments on this particular trade secret by citing the specific the portion of Apple's brief that discussed this trade secret.  Dkt. 264 at 13 (citing "Mot. at 21-22").

Apple's arguments show it is attempting to seek reconsideration of the Court's decision without satisfying any of the procedural requirements for doing so.  Apple asserts the Court "recogniz[ed] that Plaintiffs failed to distinguish public information from what is secret" and uses that supposed finding to argue the Court *should* have rejected Plaintiffs' misappropriation allegations.  Br. at 12-13 (citing Dkt. 264 at 9).  But the Court made no such finding.  Apple cites the Court's summary of ***Apple's argument*** and ignores the Court's conclusion that "Apple is holding Plaintiffs to too high of a bar." Dkt. 264 at 9.  The Court found Plaintiffs identified their trade secrets sufficiently for "discovery's 'iterative process[,] where requests between parties lead to a refined and sufficiently particularized trade secret identification,' to run its course." *Id.* (quoting *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir. 2020)).  Apple identifies no reason to reconsider that decision.

Apple also argues that public disclosure of "some" individuals on a list justifies dismissal of the entire trade secret.  Br. at 13.  This Court rejected that argument and evidence in concluding Plaintiffs described this trade secret with sufficient particularity.  Dkt. 264 at 9 (concluding Apple was "holding Plaintiffs to too high of a bar" because a "compilation can be a trade secret"); *see also Altavion*, 226 Cal. App. 4th at 47 ("even if some or all" elements were public, "the combination was a protectable trade secret").

Apple sole support for its assertion is *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017), but the alleged trade secret there was the mere ***identity*** of stores that sold the plaintiff's olive oil.  ████████████████████

1

2

3                                                                    Plaintiffs' trade secret is

4   nothing like the alleged trade secret in *Veronica Foods*.

5   **D.   The FAC Plausibly Alleges Acquisition By Improper Means**

6          **1.    Plaintiffs Alleges a Plausible Claim Of Improper Acquisition**

7          Misappropriation includes improper use, disclosure, or "[a]cquisition of a trade

8   secret of another by a person who knows or has reason to know that the trade secret was

9   acquired by improper means."  Cal. Civ. Code § 3426.1(b)(1).  "Improper means"

10  includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty

11  to maintain secrecy, or espionage through electronic or other means." *Id.* § 3426.1(a).

12  The FAC plausibly alleges at least two theories of acquisition through improper means.

13         First, the FAC alleges Apple acquired Plaintiffs' trade secrets through its

14  employees' breach of their confidentiality agreements with Plaintiffs.  FAC ¶¶ 228-232.

15  Among other things, the FAC alleges the former employees knew they were obligated

16  to maintain the secrecy of Plaintiffs' trade secrets and breached those obligations by

17  using and disclosing information to Apple.  *Id.* ¶ 228.  Apple improperly acquired

18  Plaintiffs' trade secrets by targeting and recruiting Plaintiffs' employees "because of

19  their knowledge of Plaintiffs' Confidential Information." *Id.* ¶ 229.  Apple was aware

20  of Plaintiffs' contracts with those employees and "knew, or had reason to know, that its

21  employees obtained Plaintiffs' Confidential Information pursuant to a duty or obligation

22  to keep Plaintiffs' Confidential Information secret."  *Id.*   Thus, Apple "acquired

23  Plaintiffs' Confidential Information through the improper means of its employees

24  breaching a duty to maintain secrecy owed to Plaintiffs . . . ." *Id.* ¶ 232.

25         Second, the FAC alleges Apple acquired the trade secrets by inducing its

26  employees to breach their confidentiality agreements. *Id.* ¶¶ 228-232.  Plaintiffs allege

27  Apple met with Plaintiffs because it "wanted Plaintiffs' technology and wanted to

28  integrate it into Defendant's products." *Id.* ¶ 230.  After learning about Plaintiffs'

technology, Apple began systematically recruiting Plaintiffs' employees, not for their general experience in the industry, but for the specific purpose of acquiring their "knowledge of Plaintiffs' Confidential Information." *Id.* ¶¶ 229-31. Apple's CEO, Tim Cook, recruited Masimo's Chief Medical Officer, Michael O'Reilly, to oversee Apple's "strategic objective in healthcare." *Id.*

██████████████████████████████████████████████████

Apple then extracted extensive trade secret information from Lamego in just a few short months before terminating him—resulting in a flurry of patent applications. *Id.*

Apple also used "substantial financial incentives, which had the effect of enticing O'Reilly, Lamego, and others to use and/or disclose Plaintiffs' Confidential Information to help Apple in its strategic objective in healthcare." *Id.* ¶ 232. Apple overpaid by so much that O'Reilly "informed Plaintiffs that, although he viewed Masimo as his family . . . he simply could not refuse." *Id.* Apple knew its incentives would cause the individuals to use and disclose Plaintiffs' trade secrets for Apple's benefit and thereby "induced Plaintiffs' former employees to use and disclose Plaintiffs' Confidential Information while employed by Apple and for Apple's benefit." *Id.*

These allegations are more than sufficient. Indeed, courts routinely permit far less detailed misappropriation allegations because the details are "not presumptively in the knowledge of the pleading party." *See Calendar Rsch. LLC v. StubHub, Inc.*, 2017 WL 10378336, at *4 (C.D. Cal. Aug. 16, 2017); *see also Brocade*, 2011 WL 1044899, at *6 ("information about whether and how former [] employees copied [plaintiffs'] source code and used it to create a competing product is presumptively in the possession of [defendant], not [plaintiff]"); *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL

2265479, at *6 (N.D. Cal. May 13, 2015) (holding "it would be unreasonable to require a plaintiff to demonstrate the precise ways in which Defendants may have used [their] trade secrets, given that Defendants are the only ones who possess such information.").

## 2. **Apple's Piecemeal Criticisms Lack Merit**

Apple does not challenge Plaintiffs' allegations that Apple acquired Plaintiffs' trade secrets through the improper means of its employees breaching their agreements. Thus, Plaintiffs' allegations of improper acquisition survive.

Apple challenges only Plaintiffs' allegations that Apple acquired Plaintiffs' trade secrets through the improper means of *inducement*. On that issue, Apple argues the FAC is insufficient because it fails to allege "anyone actually breached a duty to maintain secrecy" and, therefore, "cannot allege *inducement* of any breach." Br. at 14 (emphasis in original). That is false and ignores the *extensive detail* Plaintiffs added in the FAC. As discussed below, the FAC alleges O'Reilly and Lamego breached their obligations to maintain secrecy and misappropriated particular trade secrets. *See infra* Section II.E.1; FAC ¶¶ 228-232, 236, 241, 244, 247, 253, 256.

Apple then dissects Plaintiffs' allegations and argues that any allegation present anywhere in the TAC is irrelevant. Br. at 14-15. As discussed above, that is incorrect because the Court must consider Plaintiffs' allegations as a whole—not "individual allegations in isolation." *See supra* Section II.B; Dkt. 264 at 11; *Soo Park*, 851 F.3d at 928 n.22. Moreover, Apple's present argument is inconsistent with its prior arguments. Apple previously argued the TAC contained only a *single* conclusory sentence relating to inducement. *See* Dkt. 241 at 22 (arguing Plaintiffs alleged only the "naked assertion" that "Defendant induced its employees, including Lamego and O'Reilly, to disclose Plaintiffs' Confidential Information"); Dkt. 252-1 at 24 (arguing Plaintiffs' allegations were "based entirely on a single conclusory sentence"). Yet, Apple now urges the Court to disregard *numerous* other allegations by arguing—contrary to Apple's prior representations—that the TAC contained those allegations all along. Br. at 14.

/ / /

1    Apple then argues each of Plaintiffs' "new" allegations are insufficient.   But
2    Apple begins with a false premise: that Plaintiffs allege only that Apple paid O'Reilly
3    more money than Plaintiffs.  Br. at 15.  That is not correct.  Plaintiffs allege Apple recruited
4    Plaintiffs' employees for the purpose of obtaining access to Plaintiffs' trade secrets.  FAC
5    ¶¶ 229-32.   Apple targeted Masimo's Chief Medical Officer and Cercacor's Chief
6    Technical Officer and paid a premium to entice them to disclose Plaintiffs' trade secrets.
7    *Id.*  Apple did so expecting they would disclose Plaintiffs' trade secrets in return.  *Id.*

8    Apple argues the financial incentives allegation "does not plausibly suggest
9    improper behavior" because it is "more likely" that Apple simply pays employees well.
10   Br. at 15 (citing *Iqbal*, 556 U.S. at 680 and *Twombly*, 550 U.S. at 567).  Neither *Iqbal*
11   nor *Twombly* supports Apple's position.  To the contrary, *Iqbal* held "[t]he plausibility
12   standard is not akin to a 'probability requirement[.]'"  556 U.S. at 678; *see also City of*
13   *Oakland v. Wells Fargo & Co.*, 972 F.3d 1112, 1135 (9th Cir. 2020) (motions to dismiss
14   are decided on "plausibility standard, not a reasonable probability or more-likely-than-
15   not standard").  Moreover, *Iqbal* and *Twombly* determined whether the allegations ***as a***
16   ***whole*** were plausible.  *See* 556 U.S. at 682 (accepting all factual allegations as true and
17   finding discrimination claim not plausible because it should not be surprising that efforts
18   to target Al Qaeda would have a "disparate, incidental impact on Arab Muslims"); 550
19   U.S. at 557 ("naked" parallel conduct allegation insufficient to plead plausible
20   conspiracy claim because parallel conduct alone was not unlawful).

21   Apple cites *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990,
22   996 (9th Cir. 2014), but that case explained that courts must consider allegations as a
23   whole and can dismiss a complaint "only when defendant's plausible alternative
24   explanation is ***so convincing*** that plaintiff's explanation is ***implausible***."  The Ninth
25   Circuit has since explained that, even if some facts alone may appear innocuous,
26   considering the "entire sequence of events" can be "suggestive of illegal conduct and is
27   thus sufficient to survive a motion to dismiss."  *Soo Park*, 851 F.3d at 928 n.22; *see also*
28   *State Comp. Ins. Fund v. Capen*, 2015 WL 13322034, at *6 (C.D. Cal. Dec. 18, 2015)

(explaining *Eclectic Props.* did not support dismissal even if some allegations were "facially legitimate"). Apple does not address Plaintiffs' allegations as a whole, much less present an alternative so compelling it renders Plaintiffs' allegations implausible.

Apple also argues financial incentives cannot support Plaintiffs' claim because "[i]f the result were otherwise, hiring employees away would *necessarily* give rise to an employer's inducement of misappropriation." Br. at 15. But nothing supports Apple's hyperbole. Regardless of financial incentives, a plaintiff would still need to allege other elements of trade secret misappropriation. Moreover, Plaintiffs do not rely on financial incentives in isolation, much less argue financial payments **always** show inducement. Taken as a whole, the FAC plausibly alleges improper acquisition by inducement.

**E.      The FAC Plausibly Alleges Liability Under *Respondeat Superior***

Apple's arguments regarding *respondeat superior* likewise lack merit. "[A]n employer may be vicariously liable for an employee's tort so long as it was committed within the scope of employment." *Brain Injury Ass'n of Cal. v. Yari*, 2020 WL 3643482, at *6 (C.D. Cal. Apr. 30, 2020). *Respondeat superior* thus requires (1) the employee commit a tort (2) within the scope of his or her employment. This Court's order found only the first element was lacking:

> The only allegations that Lamego and O'Reilly themselves misappropriated Plaintiffs' trade secrets are that they "used and disclosed Plaintiffs' Confidential Information within the scope of their employment for Defendant and for the benefit of Defendant," TAC ¶ 246, and they "disclosed Plaintiffs' Confidential Information, without Plaintiffs' consent to Defendant." *Id.* ¶ 228. These are conclusory allegations that are insufficient to state a claim. Without sufficient allegations to state a claim for misappropriation against Apple's employees, Plaintiffs cannot state a theory of respondeat superior against Apple itself.

Dkt. 264 at 14-15. As discussed below, the FAC addresses that ruling.

**1.      The FAC Alleges Lamego And O'Reilly's Misappropriation**

Apple argues the FAC fails to allege misappropriation by the former employees and instead "simply restates and reorganizes the *same* allegations from the TAC that the

-19-

1   Court rejected as 'conclusory' and 'insufficient to state a claim.'"  Br. at 16 (quoting

2   Dkt. 264 at 15) (emphasis in original).  That is not correct.  Plaintiffs added many pages

3   of allegations about how Lamego or O'Reilly misappropriated each category of trade

4   secrets.  FAC ¶¶ 236, 241, 244, 247, 253, 256; *see also* Ex. A (redline showing changes).

5   Plaintiffs also added paragraphs alleging other relevant facts, including that Lamego and

6   O'Reilly knew they were breaching their duty of secrecy.  FAC ¶ 258-259; *see also* Ex.

7   A.  Plaintiffs also modified other allegations to make clear they allege misappropriation

8   by both Apple and its employees.  FAC ¶¶ 224-226, 262-266; *see also* Ex. A.  Plaintiffs

9   address Apple's arguments as to each category of trade secrets below.

10  

11  

12  

13  

14  

15  

16  

17       Apple  disregards                                         because  Plaintiffs'

18  request  for  oral  argument  pointed  to  similar  allegations  and  this  Court  purportedly

19  "rejected" them.  Br. at 17-18.  But the Court did not mention those other allegations.

20  To  the  contrary,  the  Court  held:  "the  *only*  allegations  that  Lamego  and  O'Reilly

21  themselves misappropriated Plaintiffs' trade secrets are that they 'used and disclosed

22  Plaintiffs' Confidential Information within the scope of their employment for Defendant

23  and  for  the  benefit  of  Defendant,'  and  they  'disclosed  Plaintiffs'  Confidential

24  Information, without Plaintiffs' consent to Defendant."  *Id.* at 14-15 (citations omitted).

25  Apple  also  disregards

26  

27                                   That is not true.

28

Apple attempts to downplay Plaintiffs' numerous other allegations by improperly arguing each would be insufficient on its own.  For example, Apple disregards Plaintiffs' allegations about Lamego's job duties at Apple by asserting they show only that "*Apple* took certain actions" and not that "*Lamego* used or disclosed Plaintiffs' trade secrets." Br. at 16-17 (emphasis in original).  That is not correct.  Allegations regarding Lamego's responsibilities, including that ███████████████████████████████ show Lamego—and not someone else—caused Apple to use Plaintiffs' trade secrets. Apple again argues these allegations are irrelevant because they are not "materially different" from a prior allegation in the TAC.  Br. at 17.  As discussed above, courts consider the allegations as a whole and cannot ignore allegations from prior pleadings. *See supra* Section II.B; Dkt. 264 at 11 (citing *Soo Park*, 851 F.3d at 928 n.22).

Apple cites no cases supporting its draconian standard for merely pleading *respondeat superior*.  Two of Apple's cases merely rejected conclusory allegations that a departing employee must be using trade secrets because that was akin to the "inevitable disclosure" doctrine.  *See Epicor Software Corp. v. Alternative Tech. Sols., Inc.*, 2013 WL 12130024, at *3 (C.D. Cal. Dec. 2, 2013); *Cypress Semiconductor Corp. v. Maxim Integrated Prods., Inc.*, 236 Cal. App. 4th 243, 265 (2015).  This Court already concluded Plaintiffs are ***not*** relying on inevitable disclosure and ***did*** include specific allegations of how Apple used and disclosed the information.  Dkt. 264 at 12.  Apple also cites *U.S. Legal Support, Inc. v. Hofioni*, 2013 WL 6844756, at *7 (E.D. Cal. Dec. 20, 2013), but that case concluded the plaintiff had not alleged the employees were acting within the scope of their employment.  Apple does not challenge that element, and Plaintiffs included substantial allegations on that element.  *See infra* Section II.E.2.

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

*1* ████████████████████████████████████████████████

*2* ████████████████████████████████████████████████

*3* ██████████████████████████████████

*4*      Rather than address Plaintiffs' allegations, Apple argues these new allegations are

*5* similar to allegations in the TAC that this Court dismissed as "insufficient to allege

*6* Lamego's use or disclosure of Plaintiffs' trade secrets." Br. at 18 (citing Dkt. 264 at 14-

*7* 15). But the Court's order referenced ***none*** of the allegations Apple cites. Moreover,

*8* courts consider allegations as a whole and do not ignore allegations in prior pleadings.

*9* *See supra* Section II.B; Dkt. 264 at 11 (citing *Soo Park*, 851 F.3d at 928 n.22).

*10*      ***Business, Marketing, and Hospital Related Trade Secrets***. The Court also held

*11* that Plaintiffs plausibly alleged Apple misappropriated Plaintiffs' business, marketing,

*12* and hospital related trade secrets. Dkt. 264 at 13. Plaintiffs amended the FAC to

*13* specifically allege Apple used information that came from O'Reilly. FAC ¶¶ 247, 253.

*14* ████████████████████████████████████████████████

*15* ████████████████████████████████████████████████

*16* ███████████████████████████████████████████

*17*      Rather than address Plaintiffs' allegations as a whole, Apple again attempts to

*18* pick apart and criticize individual sentences. That is improper. *See supra* Section II.B;

*19* Dkt. 264 at 11 (citing *Soo Park*, 851 F.3d at 928 n.22). Apple's arguments also lack

*20* merit. For example, Apple argues "[a]llegations that Apple took certain actions do not

*21* speak to whether *O'Reilly* used or disclosed Plaintiffs' trade secrets." Br. at 19

*22* (emphasis in original). But Apple quotes the specific allegation it asserts is missing:

*23* ████████████████████████████████████████████████

*24* ████████████████████████████████████████████████

*25* ██████████████████ As discussed above, allegations about O'Reilly's responsibilities at

*26* Apple are also relevant to showing O'Reilly was the source of information Apple used.

*27*      Apple then argues Plaintiffs' allegations about O'Reilly representing Apple

*28* before the FDA are irrelevant because "[t]he Court held that this nearly identical TAC

-22-

1   allegation did not allege O'Reilly's misappropriation." Br. at 19.  Again, the Court's

2   prior order referenced *none* of the allegations Apple cites.  Apple argues Plaintiffs'

3   allegations are not "new" because Plaintiffs used the phrase "as discussed above." *Id.*

4   But that does not show Plaintiffs' allegations are not "new."  Indeed, Apple's own

5   citations show the TAC referred to *Apple's* actions, while the FAC added additional

6   allegations about *O'Reilly's* actions.  *Compare* FAC ¶ 252 *with* FAC ¶ 253; Ex. A.

7       Finally, Apple argues ██████████████████████████████████████████████

8   ████████████████████████████████████████████ Br. at 20 (citing *Veronica Foods*,

9   2017 WL 2806706, at *14).  As discussed, the standard is plausibility—not probability.

10  *Iqbal*, 556 U.S. at 678; *see also supra* Section II.D.2.  Moreover, the Ninth Circuit

11  explained that, even if some facts alone may appear innocuous, considering the "entire

12  sequence of events" can be "'suggestive of illegal conduct' and is thus sufficient to

13  survive a motion to dismiss." *Soo Park*, 851 F.3d at 928 n.22.  *Veronica Foods*

14  considered allegations as a whole and concluded they did not give rise to a plausible

15  claim. *Veronica Foods*, 2017 WL 2806706, at *14. Here, as discussed above, Plaintiffs'

16  allegations as a whole give rise to a plausible claim.  Apple does not show otherwise.

17      ██████████████████████████████████████ As discussed above, Plaintiffs

18  added additional allegations sufficient to show Apple's misappropriation and that

19  Lamego used and disclosed Plaintiffs' trade secrets at Apple.  FAC ¶¶ 255-56; *see supra*

20  Section II.B.  Rather than address Plaintiffs' allegations as a whole, Apple once again

21  attempts to pick apart and criticize individual sentences.  That is improper.  *See supra*

22  Section II.B; Dkt. 264 at 11 (citing *Soo Park*, 851 F.3d at 928 n.22).

23      Apple's specific arguments also lack merit.  Apple first points to Plaintiffs'

24  allegation that ████████████████████████████████████████████████████████

25  █████████  Br. at 20.  Apple argues this is irrelevant to showing "misappropriation of

26  *Plaintiffs'* information." *Id.* (emphasis in original).  Apple does not explain its argument.

27  ████████████████████████████████████████████████████████████████████████

28  ███████████████████████████████████████████████████████

1    Next, Apple argues the allegations about ████████████████████

2    ████████████████████████████████████████████████████████████

3    █████████████████████████████████████████████    This argument

4    is unrelated to **misappropriation** and, instead, concerns the adequacy of the alleged trade

5    secret—which this Court found sufficient. Dkt. 264 at 8-9. Moreover, the Court rejected

6    the corresponding argument for other secrets. *Id.* at 8 (rejecting argument that secret

7    was "so general that it amounts to a description of a basic trial-and error process").

8    Nothing supports Apple's attorney argument that this technique is "facially-public."

9    Apple criticizes Plaintiffs for alleging misappropriation using similar language

10   that the Court found sufficient to describe the trade secret. Br. at 21 (arguing Plaintiffs'

11   "simply recount" their trade secrets). But it should be no surprise that detailed

12   misappropriation allegations use similar language as detailed trade secret identifications.

13   Apple suggests the Court "already rejected" Plaintiffs' allegations, but quotes

14   allegations referring to "Confidential Information"—not the specific trade secrets at

15   issue here. Br. at 21 (citing Dkt. 264 at 15). Apple cites *Soil Retention Prods., Inc. v.*

16   *Brentwood Indus., Inc.*, 2021 WL 689914, at *22 (S.D. Cal. Feb. 23, 2021), but the court

17   there addressed allegations regarding "trade secrets" in general rather than any specific

18   trade secret. Here, the FAC contains detailed allegations as to particular trade secrets.[5]

19   **2.    Lamego and O'Reilly Acted Within The Scope Of Their Employment**

20   While the Court's order, and Apple's current motion, do not take issue with the

21   second element (scope of employment), the FAC is highly detailed. FAC ¶¶ 260-61.

22   For example, "Apple's Chief Executive Officer, Tim Cook, interviewed O'Reilly" and

23   Apple hired him to "develop Defendant's relationships with clinicians and strategic

24   plans for clinical monitoring." *Id.* ¶ 260. Apple ████████████████████

25   ─────────────────

26   [5] Apple also argues paragraph 258 "cannot save" Plaintiffs' allegations and ████████

27   █████████████████████████████████████████    Once again, Plaintiffs

28   do not rely on those facts in a vacuum. Those facts support Plaintiffs' allegations that
     Apple's knowledge of Plaintiffs' trade secrets originated with the former employees.

-24-

1  ██████████████████████████████████████████████

2  ██████████████████████████████████████████████

3  ██████████████████████████████████████████████

4  █████████████████████████████████  Apple "provided substantial financial

incentives to entice O'Reilly, Lamego, and others to help Apple in its strategic objective

in healthcare, expecting them to use the specialized knowledge obtained from

Plaintiffs." *Id.*  The FAC explains why those allegations show the former employees

acted within the scope of their employment. *Id.* ¶ 261; *see Language Line Servs., Inc.*

*v. Language Servs. Assocs., LLC*, 2010 WL 2764714, at *3 (N.D. Cal. July 13, 2010).

### F.   Denying Leave To Amend Would Be Improper

Plaintiffs made substantial changes to address each and every one of the Court's

rulings on the prior pleading. *See* Ex. A.  Apple responded with new arguments and

arguments Apple asserts are based on grounds the Court did not address.  Accordingly,

denying leave to amend would be improper because there is no reason to think Plaintiffs

would be unable to cure any deficiencies. *Quality Towing, Inc. v. Jackson*, 2016 WL

3017642, at *3 (N.D. Cal. May 26, 2016) ("Because Defendants raised their issue

preclusion argument for the first time in this motion, the court cannot yet say that further

amendment is futile.").  Plaintiffs believe their allegations are sufficient, but could provide

additional allegations if necessary.  Amendment would not be futile.

Apple argues it has been prejudiced because it spent "millions of dollars responding

to serial baseless complaints." Br. at 22.  Neither of Apple's cited cases held that attorney's

fees constitutes prejudice.  Moreover, Apple's assertion that it had to respond to "serial

baseless complaints" is demonstrably false.  Plaintiffs already established a likelihood of

success on the merits. Dkt. 198 at 7-10.  This Court also held the vast majority of Plaintiffs'

allegations are sufficient. Dkt. 264.  Thus, Plaintiffs' claims are moving forward.

### III.  CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request the Court deny

Apple's Motion, or at least grant leave to amend if additional detail is required.

-25-

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: March 19, 2021

By: /s/ Adam B. Powell
   Joseph R. Re
   Stephen C. Jensen
   Benjamin A. Katzenellenbogen
   Perry D. Oldham
   Stephen W. Larson
   Mark D. Kachner
   Adam B. Powell

   Attorneys for Plaintiffs
   MASIMO CORPORATION and
   CERCACOR LABORATORIES, INC.

34516248

-26-