JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>                    Plaintiffs,<br><br>          v.<br><br>APPLE INC., a California corporation,<br><br>                    Defendants. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**REPLY IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO DISMISS PORTIONS OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT**<br><br>**Hearing:**<br>Date:          April 19, 2021<br>Time:          1:30 p.m.<br>Place:          Courtroom 10C<br>Judge:          Hon. James V. Selna |

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF
THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEX)

1

## TABLE OF CONTENTS

2

Page

I. INTRODUCTION ................................................................................................1

II. PLAINTIFFS' AMENDED ALLEGATIONS DO NOT RESUSCITATE
    THEIR CUTSA CLAIM ..................................................................................2

    A.    Plaintiffs Still Do Not Adequately Plead "███████████"
        Trade Secrets ...........................................................................................2

        1.    The 4th AC Fails to Adequately Describe Trade Secret 44.2 .........2

        2.    The 4th AC Fails to Adequately Describe Trade Secret 44.3 .........5

        3.    The 4th AC Fails to Adequately Describe Trade Secret 44.4 .........7

        4.    The 4th AC Fails to Adequately Describe Trade Secret 44.5 .........8

    B.    Plaintiffs Still Fail to Plead Misappropriation. ...........................................9

        1.    Plaintiffs Still Fail to Plead That Apple Misappropriated
            Plaintiffs' ███████████ Techniques ...................9

        2.    Plaintiffs Still Fail to Allege That Apple Misappropriated
            Plaintiffs' "█████████" Trade Secrets............................14

        3.    Plaintiffs Still Fail to Allege That Apple Induced a Breach..........17

        4.    Plaintiffs Still Fail to Allege That Apple Is Vicariously
            Liable Under *Respondeat Superior* .................................................20

III. PLAINTIFFS SHOULD BE DENIED FURTHER LEAVE TO AMEND ...........24

IV. CONCLUSION.................................................................................................25

i

REPLY IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF THE
THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEX)

Gibson, Dunn &
Crutcher LLP

1

# TABLE OF AUTHORITIES

2

Page(s)

3

## CASES

4

*Acrisure of Cal., LLC v. SoCal Com. Ins. Servs., Inc.*,

5

2019 WL 4137618 (C.D. Cal. Mar. 27, 2019)........................................................5, 6

6

*Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*,

7

226 Cal. App. 4th 26 (2014) ...................................................................................3, 15

8

*Ashcroft v. Iqbal*,

9

556 U.S. 662 (2009)................................................................................................11, 13

10

*Avila v. Bank of Am.*,

11

2017 WL 4168534 (N.D. Cal. Sept. 20, 2017) ............................................................13

12

*Be In, Inc. v. Google Inc.*,

13

2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ...............................................................18

14

*Brain Injury Ass'n of Cal. v. Yari*,

2020 WL 3643482 (C.D. Cal. Apr. 30, 2020) .............................................................20

15

*Broam v. Bogan*,

16

320 F.3d 1023 (9th Cir. Feb. 25, 2003) .......................................................................18

17

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,

18

2011 WL 1044899 (N.D. Cal. Mar. 23, 2011) ..............................................................8

19

*In re Century Aluminum Co. Secs. Litig.*,

20

729 F.3d 1104 (9th Cir. 2013) ......................................................................................19

21

*CleanFish, LLC v. Sims*,

22

2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) ..............................................................4

23

*Courtesy Temp. Serv., Inc. v. Camacho*,

222 Cal. App. 3d 1278 (1990) ........................................................................................5

24

*Cypress Semiconductor Corp. v. Maxim Integrated Products, Inc.*,

25

236 Cal. App. 4th 243 (2015)..................................................................................22, 23

26

*Duncan v. Stuetzle*,

27

76 F.3d 1480 (9th Cir. 1996) .....................................................................................4, 5

28

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF THE
THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEX)

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ........................................................................... 11, 19

*Epicor Software Corp. v. Alternative Tech. Sols., Inc.*,
2013 WL 12130024 (C.D. Cal. Dec. 2, 2013) .......................................................... 23

*Head Ski Co. v. Kam Ski Co.*,
158 F. Supp. 919 (D. Md. 1958) ................................................................................ 5

*Imi-Tech Corp. v. Gagliani*,
691 F. Supp. 214 (S.D. Cal. 1986) ............................................................................. 5

*Kabir v. Flagstar Bank, FSB*,
2016 WL 10999326 (C.D. Cal. May 11, 2016) ........................................................ 13

*Kroeger v. Vertex Aerospace LLC*,
2020 WL 3546086 (C.D. Cal. June 30, 2020) ............................................................ 7

*MACOM Tech. Sols. Inc. v. Litrinium, Inc.*
2019 WL 4282906 (C.D. Cal. June 3, 2019) ............................................................ 12

*MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*,
2020 WL 5064253 (S.D. Cal. Aug. 27, 2020) .......................................................... 17

*Menzel v. Scholastic, Inc.*,
2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) .......................................................... 23

*Morgan Distrib. Co. v. Unidynamic Corp.*,
868 F.2d 992 (8th Cir. 1989) .................................................................................... 18

*New Show Studios LLC v. Needle*,
2014 WL 2988271 (C.D. Cal. June 30, 2014) ........................................................ 7, 8

*Nordstrom v. Ryan*,
762 F.3d 903 (9th Cir. 2014) ...................................................................................... 8

*Physician's Surrogacy, Inc. v. German*,
2018 WL 638229 (S.D. Cal. Jan. 31, 2018) ............................................................. 12

*Resnick v. Hyundai Motor Am., Inc.*,
2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) ............................................................ 9

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ............................................................................... 9, 19

iii

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF THE
THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEx)

*Space Data Corp. v. Alphabet Inc.*,
2018 WL 10647160 (N.D. Cal. May 8, 2018).................................................................... 6

*Space Data Corp. v. X*, 2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) ......................... 12

*State Comp. Ins. Fund v. Capen*,
2015 WL 13322034 (C.D. Cal. Dec. 18, 2015)................................................................ 19

*Sunlight Prod. Techs., Ltd. v. MPOWERD Inc.*,
2015 WL 12655472 (C.D. Cal. March 23, 2015)............................................................. 18

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ......................................................................................... 14

*Syngenta Crop Prot., Inc. v. Helliker*,
138 Cal. App. 4th 1135 (2006) ......................................................................................... 3

*TMX Funding, Inc. v. Impero Techs., Inc.*,
2010 WL 2509979 (N.D. Cal. June 17, 2010)................................................................... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................... 21

*U.S. Legal Support, Inc. v. Hofioni*,
2013 WL 6844756 (E.D. Cal. Dec. 20, 2013) ................................................................. 21

*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*,
707 F. Supp. 1170 (C.D. Cal. 1989), *aff'd*, 914 F.2d 1256 (9th Cir. 1990) ................. 10

*Van Heel v. GCA Educ. Servs., Inc.*,
2020 WL 6541989 (C.D. Cal. Sept. 30, 2020) ............................................................... 13

*Veronica Foods Co. v. Ecklin*,
2017 WL 2806706 (N.D. Cal. June 29, 2017)................................11, 12, 16, 17, 19, 23

*VIA Techs., Inc. v. Asus Computer Int'l*,
2016 WL 5930280 (N.D. Cal. Oct. 12, 2016) .................................................................. 6

*Waterville Inv., Inc.*,
2010 WL 2695287 (E.D.N.Y. July 2, 2010)..................................................................... 6

*Whyte v. Schlage Lock Co.*,
101 Cal. App. 4th 1443 (Cal. Ct. App. 2002)...................................................... 4, 10, 11

iv

Gibson, Dunn &
Crutcher LLP

*Yeiser Res. & Dev. LLC v. Teknor Apex Co.*,
281 F. Supp. 3d 1021 (S.D. Cal. 2017)...............................................................4

**OTHER AUTHORITIES**

Charles Tait Graves & Brian D. Range, *Ident. of Trade Secret Claims in Litig.*, 5 Nw.
J. Tech. & Intell. Prop. 68 (2006) ......................................................................5

**RULES**

Fed. R. Civ. P. 11(b)(3) ...................................................................................13

L.R. 7-18 .........................................................................................................20

Gibson, Dunn &
Crutcher LLP

## I.   INTRODUCTION

This is the third time Plaintiffs have attempted to articulate trade secrets based on supposed "███████████████████." This latest attempt fares no better than their prior efforts, each of which was dismissed by the Court. ECF 264 at 9, 13–15.  At this point it is apparent that these amended trade secrets claims are not viable, and the Court should put an end to Plaintiff's serial attempts to make up these alleged trade secrets. As with the prior complaints, the Court should dismiss this *Fourth Amended Complaint* ("4th AC") for at least the following reasons.

*First*, Plaintiffs ignore the Court's finding that their purported secret (and its "dependent" sub-secrets) of "████████████████████ ███████████████" is "facially public."   ECF 264 at 9. Plaintiffs then defy the Court's *repeated* directives to "describe the trade secret[s] with sufficient particularity to separate [them] from matters of general knowledge," ECF 264 at 4, ECF 219 at 3, ECF 60 at 7 (citations omitted), and instead argue they need not address whether the alleged secrets—on their face—"are generally known."  The Court rejected these arguments in its ruling on the Third Amended Complaint ("TAC").  *See* ECF 264 at 9.  Plaintiffs have given the Court no reason to rule differently here.

*Second*, Plaintiffs claim they did not have to fix their misappropriation allegations concerning their purported "███████████" trade secrets because the Court ostensibly found them sufficient.  Opp. 1.  The Order says no such thing.

*Third*, Plaintiffs claim they remedied their failed conclusory allegations that the Apple Watch "appears" to include their supposedly misappropriated "████████████ ████████"  ECF 264 at 13; *see* Opp. 1.  They did not—simply reiterating the same conclusory basis for the claim only underscores that the claim is pure conjecture.

*Fourth*, Plaintiffs assert that Apple is somehow selectively challenging some of their "inducement" allegations, but ignoring others.  Opp. 2.  But the Court previously dismissed this theory because it was based on one conclusory allegation.  ECF 264 13–14.  Plaintiffs' 4th AC added only one allegation even remotely relevant to

1

inducement—which in fact does not support the theory—and the *totality* of Plaintiffs' allegations still boil down to the innocuous conclusion that Apple hired Plaintiffs' former employees for perceived expertise and offered competitive salaries consistent with that belief.  4th AC ¶¶ 230–32.  That is not inducement to steal trade secrets.

*Finally*, Plaintiffs attempt to circumvent the Court's prior dismissal of their *respondeat superior* theory by claiming Apple attacks the infirmity of TAC allegations the Court did not cite in its Order.  Opp. 2.  This argument incorrectly assumes the Court was required to cite in its Order each allegation that did *not* support Plaintiffs' theory.  Plaintiffs cite no authority for such a rule; they thus cannot rely on previously failed allegations (or even re-worded versions of them) to save their misguided theory.

The Court should dismiss with prejudice Plaintiffs' (i) amended █████ ███████ trade secrets and (ii) corresponding misappropriation claim, (iii) ███ ████████ misappropriation claim, and (iv)-(v) inducement and *respondeat superior* misappropriation theories.

## II. PLAINTIFFS' AMENDED ALLEGATIONS DO NOT RESUSCITATE THEIR CUTSA CLAIM

**A.    Plaintiffs Still Do Not Adequately Plead "████████████████" Trade Secrets**

**1.    The 4th AC Fails to Adequately Describe Trade Secret 44.2**

This Court squarely held that Plaintiffs' alleged trade secret 44.2—"████████ ████████████████████████████████████████████████ ████████"—"is not secret information capable of protection."  ECF 264 at 9 (citing TAC ¶¶ 44.2-44.4).  Rather than address this deficiency, Plaintiffs double-down on it, arguing that "Trade Secret 44.2 describes Plaintiffs' specific ████████████████████ ████████████████████████████████████.  4th AC ¶ 44.2."  Opp. 3.  Plaintiffs attempt to evade the Court's ruling by claiming their "strategy" consists of the same previously dismissed acts (now combined with former failed paragraph 44.3 and 44.4) of ████████████████████████████████████████,"

2

Gibson, Dunn & Crutcher LLP

1   and (ii) ' [REDACTED]

2   [REDACTED] ."  4th AC ¶ 44.2.  Plaintiffs add that this is an ' [REDACTED]

3   [REDACTED] to [REDACTED] , *id.* at 4, but on its face, it is

4   obvious.  Put differently, Plaintiffs claim that [REDACTED]

5   [REDACTED] .  That is not a secret, and Plaintiffs'

6   addition of this generic superfluous language in the 4th AC is pointless.

7       Plaintiffs also argue that paragraph 44.2's preamble is not superfluous because it

8   [REDACTED] ," which  Plaintiffs

9   ostensibly [REDACTED] .  Opp. 5.  But merely [REDACTED] does

10  not create a trade secret.  The [REDACTED] must still be non-obvious and independently

11  valuable.  *See Syngenta Crop Prot., Inc. v. Helliker*, 138 Cal. App. 4th 1135, 1172 (2006)

12  ("Information that is readily ascertainable by a business competitor derives no

13  independent value from not being generally known."); *see also Altavion, Inc. v. Konica*

14  *Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 62 (2014) ("the focus of the inquiry

15  regarding the independent economic value element is on whether the information is

16  generally known to or readily ascertainable by business competitors or others to whom

17  the information would have some economic value").  More importantly, even if

18  Plaintiffs' alleged [REDACTED] were relevant, Plaintiffs themselves

19  admit that [REDACTED] "is *not* Plaintiffs' trade secret."  Opp. 6

20  (emphasis added).  Rather, the alleged secret is Plaintiffs' purported ' [REDACTED]

21  [REDACTED] ," *id.* (emphasis

22  added)—i.e., the same "strategies" the Court already held were "not secret [or] capable

23  of protection."  ECF 264 at 9.

24      Plaintiffs do not seriously contend that their enumerated "strategies" within TAC

25  paragraph 44.2 are materially different from those the Court dismissed.  Opp. 5.  Instead,

26  they claim without explanation that they "have amended to make clear they are *not*"

27  repeating their dismissed allegations; then, they copy and paste allegations from the 4th

28  AC into their brief, and argue that with this, they have "identified their specific

3

1   proprietary strategy . . . ."  Opp. 5.  But as Apple's comparison of the TAC and 4th AC

2   showed, *see* Op. Br. 3–4, Plaintiffs have merely split apart and renumbered their first

3   "strategy" in alleged secret 44.2 (" ███████████████████████████████████

4   ███████████████████████████████████████████████████████████████████

5   ██████████████████████," *id.*), and added an unnecessary preamble about

6   "██████████."  This sleight of hand does not transform the obvious into a secret.

7        Plaintiffs also reject the Court's prior instructions to delineate the boundaries of

8   their alleged secrets (ECF 264, 219, 60).  Plaintiffs insist once more, as they did in their

9   last opposition (ECF 247-1), that Apple's effort to show that these supposed "strategies"

10  are generally known is a merits question.  Opp. 6.  But again—as this Court recognized

11  in dismissing the alleged ███████████ secrets before—that is wrong "where, as here,

12  the information is *facially public*."  ECF 264 at 9 (emphasis added).  Myriad other courts

13  have also held at the motion to dismiss stage that facially public information cannot be

14  a trade secret.  *See CleanFish, LLC v. Sims*, 2020 WL 1274991, at *9 (N.D. Cal. Mar.

15  17, 2020) ("broad categories of information that would be applicable to any business . . .

16  are too high-level"); *Yeiser Res. & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021,

17  1046 (S.D. Cal. 2017) ("[T]he Court is hard pressed to see how" "'business strategy' . . .

18  of selling [YRD's] hose products quickly through QVC online followed by sales through

19  brick and mortar," and resultant "success in selling its earlier products with this strategy"

20  "as pleaded, could plausibly constitute a trade secret").

21        Nothing in Plaintiffs' cases holds otherwise.  *Whyte v. Schlage Lock Co.* did not

22  hold that "market strategy and plans" automatically qualify as trade secrets as Plaintiffs

23  imply, Opp. 4, but instead protected "the results of confidential marketing research,"

24  including the plaintiff's "five-year strategic plan."  101 Cal. App. 4th 1443, 1456 (2002).

25  Likewise, *Duncan v. Stuetzle* did not hold that every "'company's marketing strategy'

26  qualifies as a 'trade secret.'"  Opp. 4 (citing 76 F.3d 1480, 1488 n.11 (9th Cir. 1996)).

27  Instead, the court found a "company's marketing strategy, [a] product's recent income,

28  and the methods by which [a] machine was produced . . . *may* well qualify as 'trade

4

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF THE
THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEX)

secrets'" under certain circumstances. *Duncan*, 76 F.3d at 1488 n.11. In *Courtesy Temp. Serv., Inc. v. Camacho*, the court did not protect a claimed "strategy" or "technique," like Plaintiffs purport to offer here, but a "list of customers or subscribers," 222 Cal. App. 3d 1278, 1282, 1287 (1990)—a different type of trade secret this Court has already ruled on, *see* ECF 264 at 9 ("[a] compilation can be a trade secret"). And *Head Ski Co. v. Kam Ski Co.* stands for the uncontroversial proposition that "knowledge of the best combination of processes, methods, tools and materials" can be a trade secret. 158 F. Supp. 919, 923 (D. Md. 1958). By contrast, Plaintiffs describe their alleged ██████ trade secrets as "techniques" and "strategies"—not combinations—but even had they done so, nowhere do they describe the combination "with sufficient particularity to separate it from matters of general knowledge." *Acrisure of Cal., LLC v. SoCal Com. Ins. Servs., Inc.*, 2019 WL 4137618, at *3 (C.D. Cal. Mar. 27, 2019). Plaintiffs cannot use a new "'combination' theory . . . to gerrymander a claim." Charles Tait Graves & Brian D. Range, *Ident. of Trade Secret Claims in Litig.*, 5 Nw. J. Tech. & Intell. Prop. 68, 77–78 (2006).

And while it is true that a plaintiff need not show that its alleged trade secrets are "patentabl[e]," Opp. 5 (quoting *Imi-Tech Corp. v. Gagliani*, 691 F. Supp. 214, 231 (S.D. Cal. 1986)), it *must* show that "except by use of improper means, there would be difficulty in acquiring the information." *Imi-Tech*, 691 F. Supp. at 231. Plaintiffs' proffer of "facially public" information in alleged secret 44.2 fails to make this showing.

### 2.     The 4th AC Fails to Adequately Describe Trade Secret 44.3

Like alleged trade secret 44.2, alleged secret 44.3—which, according to Plaintiffs "contains all aspects of 44.2" (Opp. 7)—relies on arguments previously rejected by the Court, and which are contrary to law. Plaintiffs argue that secret 44.3 is saved because it is some sort of combination that "is narrower than 44.2" and "adds material" to 44.2. Opp. 7. But in dismissing alleged secret 44.3, the Court rejected this argument too—holding that the alleged secrets "in paragraphs 44.3 through 44.7 *are dependent on . . .*

Gibson, Dunn & Crutcher LLP

*paragraph 44.2*, which the Court finds to be unprotectable." ECF 264 at 9 (emphasis added).[1] Thus, Plaintiffs "combination" argument has already been precluded.

Simply labelling a combination "secret" or "novel" does not make it so— Plaintiffs must *allege* how the combination is distinct from matters generally known. *See Acrisure of Cal., LLC v. SoCal Com. Ins. Servs., Inc.*, 2019 WL 4137618, at *3 (C.D. Cal. Mar. 27, 2019); *cf. VIA Techs., Inc. v. Asus Computer Int'l*, 2016 WL 5930280 at *3 (N.D. Cal. Oct. 12, 2016) ("vague statements that a combination of features . . . represents a trade secret do not constitute such a showing"); *Waterville Inv., Inc.*, 2010 WL 2695287, at *4–5 (E.D.N.Y. July 2, 2010) (no trade secret where plaintiff had only presented conclusory assertions that its trade secret combined public information in a "unique" way).

Plaintiffs have made no such showing, either for their alleged "combination" or any of its components. Plaintiffs' alleged "narrower" secret "███████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████" 4th AC ¶ 44.3. Plaintiffs fail to explain which "████████████████████████" are being modified or how, which ████████████ are at issue, or the technique by which they ████████████████████ ████████████████████████. As Apple explained, Plaintiffs claim a secret in ████████████████████████████████████████████████████ ██████████████████████. *See* Op. Br. 7. The unadorned act of ████████ ████████████████████████████████████████████████████ ██████████t epitomizes "facially public" information. ECF 264 at 9.

Finally, Plaintiffs repeat their refrain that by highlighting the obviousness of Plaintiffs' alleged "strategies," Apple "improper[ly] attack[s] . . . the merits." Opp. 8.

---

[1] At least one other court has applied the same logic in finding a trade secret designation that relies on another inadequate designation is inadequate. *Cf. Space Data Corp. v. Alphabet Inc.*, 2018 WL 10647160, at *3 (N.D. Cal. May 8, 2018) ("Trade Secret Nos. 4 and 5 rely on [inadequate] . . . Nos. 1 and 2, so these disclosures are also insufficient").

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF THE
THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEX)

1   The Court should reject this argument here, as it has three times before. *Supra*, §§ I &

2   II.A.1.

### 3.   The 4th AC Fails to Adequately Describe Trade Secret 44.4

4   In attacking Apple's arguments regarding alleged secret 44.4, Plaintiffs adopt the

5   same tactic they employed as to alleged secret 44.2—they summarily proclaim that

6   Apple's argument "is not an accurate characterization," then copy and paste the entirety

7   of paragraph 44.4 as a rebuttal. Opp. 8. This non-response plainly fails to rebut Apple's

8   showing that Plaintiffs have not described any secret strategy, thereby conceding the

9   point. *See Kroeger v. Vertex Aerospace LLC*, 2020 WL 3546086, at *9 (C.D. Cal. June

10   30, 2020) (where "Plaintiff fail[ed] to address . . . Defendants' argument" in its

11   opposition, Plaintiff "conceded" that argument).

12   As with alleged secret 44.2, Plaintiffs' allegation as to what is "

13   " does not save this alleged secret either. Notwithstanding the implausibility

14   of the claim that "

15   , Plaintiffs admit that this detail is mere

16   "context," Opp. 8. Plaintiffs' alleged secret is "

17

18

19

20   " As Apple has explained, this "

21   " which is well-known. Op. Br. 8. Plaintiffs have no serious

22   response, and indeed admit as much. Opp. 8–9 (describing paragraph 44.4 as "

23   ").

24   Again, Plaintiffs' cases are inapposite. In *TMX Funding, Inc. v. Impero Techs.,*

25   *Inc.*, the trade secret description was far more detailed than "

26   " and included "customer lists" "service needs," "service patterns," and "buying

27   preferences" such as "special terms, discounts, and accessories," and "[l]ogin and

28   password information." 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010). In *New*

7

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF THE
THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEx)

*Show Studios LLC v. Needle*, the defendant's motion to dismiss was denied because it was brought under the wrong standard. 2014 WL 2988271, at *6–7 (C.D. Cal. June 30, 2014). And unlike the plaintiff in *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2011 WL 1044899, at *3–6 (N.D. Cal. Mar. 23, 2011), Plaintiffs do not claim as trade secrets "information regarding [their] products, including customer needs and terms of agreements with customers." Nor did the court in that case even address the plaintiff's trade secret descriptions.

Plaintiffs also cite *Nordstrom v. Ryan*, 762 F.3d 903, 906 (9th Cir. 2014), a Section 1983 action, for the uncontroversial propositions that Courts "take as true all factual allegations" and "draw all reasonable inferences in the plaintiff's favor." Opp. 2, 6, 9. Naturally, that rule does not require a court to disregard a prior finding that allegations did not reach the plausibility standard, where, as here, the information claimed to be secret is indisputably public on its face.

Plaintiffs offer nothing to rebut Apple's argument that alleged trade secret 44.4 is "facially public," or that it differs materially from the already failed language in the TAC; thus, alleged trade secret 44.4 must also be dismissed.

### 4. The 4th AC Fails to Adequately Describe Trade Secret 44.5

Plaintiffs did not even attempt to amend alleged secret 44.5, which contains language identical to the corresponding allegation dismissed from the TAC. Instead, Plaintiffs half-heartedly attempt to relitigate the dismissal of this secret, again asserting, as they did with alleged secret 44.3, that it "adds additional material" and is "narrower" than the dismissed secret on which it depends. Opp. 9. But even independent of the defective allegations upon which it relies, " █████████████████████████████ ███████████████████████████████████████████████████ ████████████████ " *id.*, fails to describe any specific strategy, much less anything secret.

In an apparent admission of their failure to properly allege any secret in paragraphs 44.2–44.5, Plaintiffs invite "the opportunity to provide a proffer through live

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT CASE NO. 8:20-CV-00048-JVS (JDEx)

testimony to further explain" their purported secrets.  Opp. 10.  Were the Court to go beyond the complaint—though it need not—it could simply look at the myriad judicially noticeable public examples of such practices on the internet.[2]  Plaintiffs have had three chances to plead these "secrets."  They have proven they cannot.

**B.    Plaintiffs Still Fail to Plead Misappropriation.**

**1.    Plaintiffs Still Fail to Plead That Apple Misappropriated Plaintiffs'** ▮▮▮▮▮▮▮▮▮▮▮ **Techniques**

Plaintiffs fail to rebut Apple's showing that their allegations do not plausibly allege Apple's misappropriation of their alleged ▮▮▮▮▮▮▮▮▮▮ trade secrets *as described*.[3]  Plaintiffs accuse Apple of improperly "dissect[ing]" their allegations while ignoring the "entire sequence of events," which purportedly shows misappropriation.  Opp. 10–11 (quoting *Soo Park v. Thompson*, 851 F.3d 910, 928 n.22 (9th Cir. 2017) (a Section 1983 case)).  But Plaintiffs' allegations as to "the entire sequence of events" are ***conclusory***—they simply repeat portions of alleged trade secret 45.1 and assert that Apple misappropriated it, without any facts and without tying the trade secret, as alleged, to any improper conduct.

Plaintiffs argue that three allegations are enough for their claim to survive:  (1)



---

[2] *See, e.g.*, Lerner Decl., Ex. 3 at 23 (journal article proposing "an advanced pulse oximetry system for remote monitoring," at home, which "consists of a ▮▮▮▮▮▮ pulse oximeter and a ▮▮▮▮▮▮▮▮▮▮"); ECF 310-3, Exs. 1–3.  Exhibit 3 is judicially noticeable because it is a publicly available scientific article.  *See* ECF 310-3 at 4.

[3] Plaintiffs limit their arguments to alleged ▮▮▮▮▮▮▮▮▮▮▮ trade secret 45.1, Opp. 10–12, and thus have waived any argument concerning alleged trade secrets 45.2–45.4, which should be dismissed, *Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 1531192, at *22 (C.D. Cal. Apr. 13, 2017) ("Failure to oppose an argument raised in a motion to dismiss constitutes waiver.").

9

REPLY IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF THE
THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEx)

Gibson, Dunn &
Crutcher LLP

1 ████████████████████████████████████████████████████

2 ██████████████████''' Opp. 10 (quoting 4th AC ¶¶ 255–56).  Apple disputes

3 these allegations, but even if accepted as true, Plaintiffs fail to tie these three allegations

4 to their alleged ████████████████ trade secret.  Specifically, these allegations

5 do not demonstrate that Apple misappropriated their alleged trade secrets *to* ████████

6 ████████ *using the allegedly protected technique described by alleged trade*

7 *secret 45.1*—i.e., that Apple "███████████████████████████████

8 ████████████████████████████████████████████████

9 ██████████████████████████"  Opp. 11 (quoting 4th AC ¶ 45.1) (emphasis

10 added).  Thus, regardless of whether the allegations are considered separately or in

11 combination, they do not support a plausible inference that Apple misappropriated the

12 alleged trade secret in paragraph 45.1.

13      Plaintiffs' first allegation above—that ███████████████████

14 ███████████████████████"—is wholly irrelevant; it is well-settled that

15 employees such as O'Reilly and Lamego are entitled to carry over trade knowledge, and

16 they are not required to describe to Plaintiffs their new employment.  *See Universal*

17 *Analytics, Inc. v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989),

18 *aff'd*, 914 F.2d 1256 (9th Cir. 1990).[4]  Thus, this allegation adds nothing to the "entire

19 sequence of events."  The second allegation is similarly not connected to the alleged

20 trade secret. ████████████████████████████████████████████," 4th

21 AC ¶ 255, says nothing about whether ██████████████████████████████

22 ████████████████████████████████████████████████████

23 ████████████, *see* 4th AC ¶ 45.1.  After all, according to Plaintiffs' own pleadings,

24 every Series of the Apple Watch until Series 6 has calculated ████████████ *without*

25 ████████████████.  *See, e.g.*, 4th AC ¶ 197 (alleging that Apple Watch Series

---

[4] To the extent Plaintiffs argue that O'Reilly and Lamego must have disclosed their alleged trade secrets because they worked in the same ██████████████████████ field at Apple as they did at Plaintiffs, that argument is foreclosed by California's rejection of the inevitable disclosure doctrine.  *See Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463 (Cal. Ct. App. 2002).

Gibson, Dunn &
Crutcher LLP

1  3 and later devices calculate heart rate); *id.* ¶ 238 (alleging ███████████████

2  ████████████████).  Plaintiffs' allegations do not allege "facts tending to

3  exclude the possibility" that an "alternative explanation is true"—i.e., that Apple

4  improved its ████████ technology independently.[5]  *Eclectic Props. E., LLC v. Marcus*

5  *& Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014); *see also Veronica Foods Co. v.*

6  *Ecklin*, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017) (allegations "consistent

7  with" innocent conduct are not enough to survive motion to dismiss).

8  Plaintiffs' third allegation above—that "████████████████████

9  █████████████████████████████████████████████████

10  █████████████████████████████████████████████████

11  ███████████████████████"—only parrots alleged trade secret 45.1 and

12  adds a conclusory statement that Lamego misappropriated that secret.  Plaintiffs concede

13  as much.  Opp. 10–11 ("These are the precise techniques Plaintiffs identified as their

14  trade secret.").  The identification of the alleged trade secret is not at issue here; rather,

15  it is Apple's alleged ***misappropriation***, and this allegation is devoid of any supporting

16  facts from which the Court could possibly infer that Apple misappropriated anything.

17  "Threadbare recitals of the elements of a [claim], supported by mere conclusory

18  statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, even

19  considering the "entire sequence," Plaintiffs' purportedly "more extensive" allegations,

20  Opp. 10, in fact add nothing of substance to their ***sole*** misappropriation allegation—that

21  █████████████████████████████████████████████████

22  ████████████████████████" 4th AC ¶ 255[6]—which the Court has rejected

23  as insufficient, ECF 264 at 13.[7]

---

24  [5]  Indeed, because pulse oximeters inherently are also capable of ███████████████,
25  accepting Plaintiffs' logic would lead to the absurd conclusion that every pulse oximeter
   manufacturer that has ever separately improved its ██████████████ has
26  misappropriated Plaintiffs' ████████████████ trade secrets.
   [6]  This allegation does not even include the second component of Plaintiffs' alleged
27  secret 45.1—"████████████████████████████████████," *Id.*
   [7]  Plaintiffs concede their other allegation as to the Apple Watch—that it "uses ██████
28  ████████ to ████████████████," 4th AC ¶ 255—"is irrelevant because
   Plaintiffs' trade secret does not mention the ████████████████," Opp. 11.

11

Gibson, Dunn &
Crutcher LLP

1   Plaintiffs' attempts to distinguish Apple's cited cases fail.  Plaintiffs insist that
2   their allegations are far more detailed, but even their own quotations contradict that
3   assertion.  Similar to the allegation in *MACOM Tech. Sols. Inc. v. Litrinium, Inc.* that
4   "Garez incorporated Plaintiffs' proprietary designs into Litrinium products," 2019 WL
5   4282906, at *9 (C.D. Cal. June 3, 2019), Plaintiffs here allege—using even less
6   definitive language—that Apple "████████" have incorporated only the first half of
7   Plaintiffs' alleged ████████████████ trade secret 45.1 into the Apple Watch
8   by "████████████████████████████," 4th AC ¶ 255.
9   Plaintiffs' attempt to distinguish *Physician's Surrogacy, Inc. v. German* is even less
10  persuasive.  Opp. 12 (citing 2018 WL 638229, at *8 (S.D. Cal. Jan. 31, 2018)).  Plaintiffs
11  ignore the plainly applicable rule made clear in that case:  Plaintiffs "must more
12  specifically connect allegations of misappropriation to specific . . . actions" by Apple,
13  which Plaintiffs have failed to do.  *Physician's Surrogacy*, 2018 WL 638229, at *8
14  (citing *Veronica Foods*, 2017 WL 2806706, at *14).[8]

15  Plaintiffs' remaining arguments are ineffective.  First, Plaintiffs mischaracterize
16  Apple's argument as asserting that "Lamego's actions at Apple are somehow irrelevant
17  to pleading a claim against Apple."  Opp. 11.  That is a red herring.  Apple's argument
18  is that Plaintiffs have not plausibly alleged *misappropriation*—either by Lamego or
19  Apple—because their allegations are conclusory.  Similarly irrelevant is Plaintiffs'
20  assertion that Apple is responsible for Lamego's actions.  Opp. 11.  Regardless of
21  Apple's responsibility, Plaintiffs must still plausibly allege that Lamego (or Apple)
22  engaged in misappropriation, and they do not.

23  Second, Plaintiffs once again resort to rewriting their misappropriation allegations
24  to argue that they "can show improper use even if Apple did not incorporate trade secrets
25  into the Apple Watch."  Opp. 12.  But since the outset of this case, Plaintiffs have *only*

---

[8]  Plaintiffs' attempt to limit *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017), to its facts is irrelevant.  Apple merely cited that case for a basic rule:  Plaintiffs must "allege facts providing a reasonable basis for th[e] Court to infer" that Apple committed misappropriation, which Plaintiffs have not done.  Op. Br. 9.

Gibson, Dunn &
Crutcher LLP

argued that Apple misappropriated their alleged trade secrets either by publishing them in Apple's patents (which is not relevant here) or by incorporating them into the Apple Watch. *See, e.g.*, 4th AC ¶ 25 ("Upon information and belief, the Apple Watch Series 6 and Series SE also ***includes Plaintiffs' technologies***." (emphasis added)); *id* ¶ 233 (accusing Apple of "***incorporating [Plaintiffs' secrets] into Defendant's products***, by filing patent applications . . . , and using Plaintiffs' business and sales strategies without Plaintiffs' . . . consent" (emphasis added); *id.* ¶ 255 ("Plaintiffs are . . . informed and believe that ***the Series 6 Watch uses Plaintiffs'*** ███████████████████ ***techniques*." (emphasis added)); *see also* ECF 1 (Compl.) ¶ 28; ECF 28 (FAC) ¶ 218; ECF 89-1 (SAC) ¶ 236; ECF 233 (TAC) ¶ 231.  Plaintiffs "cannot rewrite [their] complaint now in . . . opposition to the motion to dismiss to clarify that the . . . claim . . . is actually based on" different facts.  *Avila v. Bank of Am.*, 2017 WL 4168534, at *4 (N.D. Cal. Sept. 20, 2017) (UCL claim).

Third, Plaintiffs cite Federal Rule of Procedure 11 to argue they may "rely on factual contentions that 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" Opp. 13.  That is beside the point. Rule 8 makes clear that Plaintiffs "may not rely solely on the speculative promises of discovery to survive a motion to dismiss; *Iqbal* and *Twombly* prohibit such fishing expeditions." *Kabir v. Flagstar Bank, FSB*, 2016 WL 10999326, at *4 (C.D. Cal. May 11, 2016).  And Rule 11 requires Plaintiffs to plead contentions that will ***likely*** have evidentiary support, Fed. R. Civ. P. 11(b)(3) (emphasis added).  Plaintiffs' conclusory allegations fail to do so.

Finally, Plaintiffs' accusation that Apple has withheld and lied about access to its source code is an untrue and irrelevant sideshow.  Opp. 13.  "The pleading requirement does not provide a key to 'unlock the doors of discovery for a plaintiff armed with nothing more than conclusions'; a complaint must be plausible on its face." *Van Heel v. GCA Educ. Servs., Inc.*, 2020 WL 6541989, at *4 (C.D. Cal. Sept. 30, 2020) (quoting *Iqbal*, 556 U.S. at 678–79).  In any event, Apple provided the source code for the Series

13

Gibson, Dunn & Crutcher LLP

6 Apple Watch *last October*, and Plaintiffs *inspected it on October 12, 2020—roughly six months ago—without making any complaint at all*. ECF 320-2 (Powell Decl., Ex. C) at 260–61. Although one module was inadvertently omitted, Plaintiffs' counsel led Apple to believe the relevant code was provided; he has since admitted he knew of the omission when he inspected the code last October. *See* Declaration of Joshua Lerner ("Lerner Decl.), Ex. 1 at 3 ("I reviewed Apple's source code on October 12 for approximately three hours and do not recall seeing any source code for the ███████ ██████████.").[9]   Once Apple's counsel learned of the omission, Apple provided the missing module to Plaintiffs as promptly as possible. ECF 320-2 (Powell Decl. Ex. C) at 259.  Thus, any delay is of Plaintiffs' own making.

Plaintiffs' misappropriation allegations as to their alleged ███████████████ ██████████ trade secrets remain conclusory and untethered from those alleged trade secrets, and should be dismissed with prejudice.

## 2. Plaintiffs Still Fail to Allege That Apple Misappropriated Plaintiffs' "████████████████" Trade Secrets.

Plaintiffs cannot refute Apple's argument that they have failed as a matter of law to allege misappropriation of their purported ██████████████ trade secrets.  So they resort to baseless procedural attacks, mischaracterizations of the Court's holdings, and a flawed attempt to distinguish Apple's authority that rests on a rewriting of their alleged trade secret 44.1.[10]  Plaintiffs' attempts fail.

Plaintiffs first argue that the Court already held their misappropriation allegations as to the alleged ██████████████ trade secrets were adequate and correspondingly accuse Apple of improperly seeking reconsideration.  That is false.  In its Order on

---

[9] To the extent the Court considers Plaintiffs' non-judicially noticeable Exhibit C to the Powell Declaration—and it should not, *see Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)), it should consider Apple's Exhibit 2 in the interest of fairness.
[10] Plaintiffs assert that Apple is challenging only alleged ██████████████ trade secret 44.1.  Opp. 13 n.4.  That is false.  Apple expressly challenged misappropriation as to all of "Plaintiffs' restated allegations (including [4th AC] ¶¶ 44.2–.5)"—and by extension those in 4th AC ¶¶ 44.6–.7—"because they are 'merely consistent with' . . . a theory of innocent market entry." Op. Br. 14.

14

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF THE THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT CASE NO. 8:20-CV-00048-JVS (JDEx)

1    Apple's last Motion to Dismiss ("MTD TAC Order"), the Court did not address

2    misappropriation allegations specific to the alleged ███████████ trade secrets

3    even though it mentioned by name every other alleged trade secret category. *See* ECF

4    264 at 13. And in its tentative ruling, the Court initially dismissed *all* of Plaintiffs'

5    alleged ███████████ trade secrets, *see* Lerner Decl., Ex. 2 at 14. There was

6    therefore no reason for the Court to address the misappropriation allegations concerning

7    those alleged trade secrets. Plaintiffs' attempt to rewrite the Court's Order to suggest

8    that the Court somehow "confirmed it considered Apple's arguments on this *particular*

9    trade secret," Opp. 14 (emphasis added, citing ECF 264 at 13 & ECF 241 at 21–22),

10   falls flat. The pages of Apple's Motion cited in the Order addressed *all* categories of

11   Plaintiffs' alleged trade secrets, *see* ECF 241 at 21–22.

12         Indeed, if anything, the Court already rejected *Plaintiffs'* argument. Just like in

13   their current Opposition, Plaintiffs argued in their Request for Oral Argument (regarding

14   the motion to dismiss the TAC) that their alleged trade secrets 44.3-44.9 should survive

15   because they purportedly "contain[ed] additional elements" and were "protectable 'even

16   if some or all of the elements' were 'in the public domain.'" ECF 262-1 at 3 (quoting

17   *Altavion, Inc. v. Konica Minolta Sys. Laboratory, Inc.*, 226 Cal. App. 4th 26, 47 (2014));

18   *cf.* Opp. 14 (quoting same language from *Altavion* to argue that their purported

19   "compilation" is protectable). The Court rejected this argument *sub silentio* and

20   expressly dismissed Plaintiffs' alleged ███████████ trade secrets 44.2–44.7.

21         Plaintiffs next argue that Apple is seeking reconsideration of the Court's

22   (nonexistent) ruling on Plaintiffs' *misappropriation* allegations with respect to their

23   alleged ███████████ trade secrets by pointing to the Court's holding concerning

24   the *description* of those alleged secrets. Opp. 14 (citing ECF 264 at 9). Plaintiffs are

25   again wrong. The Court's holding that alleged trade secret 44.1 is *described* "with

26   sufficient specificity," ECF 264 at 9, says nothing about whether Plaintiffs plausibly

27   allege that Apple *misappropriated* that alleged secret. They do not.

28

Gibson, Dunn &
Crutcher LLP

Plaintiffs' argument that their alleged trade secret 44.1 is protectable as a compilation likewise misses the mark. Opp. 14 (citing ECF 264 at 9). Whether a compilation *can be* a trade secret is not at issue; rather, the question is whether Plaintiffs have plausibly alleged *misappropriation* of that purported "compilation." As Apple explained, "[t]o allege misappropriation of compilation trade secrets that include public information, . . . Plaintiffs must . . . provide 'specific allegations regarding nondisclosure of, or efforts to keep secret,' *the [specific] information that Plaintiffs allege Apple misappropriated*." Op. Br. 13 (quoting *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017)) (emphasis added). Plaintiffs have not done so. Just as in *Veronica Foods*, Plaintiffs' allegations that their "complete" alleged trade secret 44.1 was not publicly known and was misappropriated by Apple "carries little weight" because "material subject to judicial notice shows that [Plaintiffs] publicly disclosed at least some of" their ▮▮▮▮▮▮▮▮, and Plaintiffs "provide[] no specific allegations regarding nondisclosure of, or efforts to keep secret, the identity of" those *specific* ▮▮▮▮▮▮ *Veronica Foods*, 2017 WL 2806706, at *14; *see* Op. Br. 13.

Plaintiffs' conclusory attempt to distinguish *Veronica Foods* is meritless. Plaintiffs argue the trade secret alleged in that case concerned supplier identities, whereas Plaintiffs' alleged trade secret 44.1 purportedly concerns more than just ▮▮▮▮ identities. But the plain language of the 4th AC—*including* alleged trade secret 44.1 *itself*—contradicts Plaintiffs' argument. First, alleged trade secret 44.1 seeks to protect "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Opp. 15 (quoting 4th AC ¶ 44.1) (emphasis added). Second, the "▮▮▮▮▮▮ts" referenced by alleged trade secret 44.1 provide the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.*, ECF 312-1 (RJN Ex. 6) at 93–105. Third, Plaintiffs accuse Apple of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" 4th AC ¶ 252 (emphasis added). Plaintiffs then cite ▮▮▮▮▮▮▮▮▮ from alleged trade secret 44.1 that

16

Gibson, Dunn & Crutcher LLP

1   ███████████████████████████████████████████████████

2   ████████████████████████████████████   *Id.*[11]

3       *Veronica Foods* is thus directly on point because alleged trade secret 44.1

4   concerns the identities of ████████████████████████.   And just

5   like that case, Plaintiffs' "allegations do not plausibly support the conclusion that

6   Defendant[] misappropriated trade secrets regarding" those ██████ because Plaintiffs

7   "publicly disclosed" the identities of some of those ██████ *Veronica Foods*, 2017 WL

8   2806706, at *14; *see* Op. Br. 13–14; ECF 310-4 (RJN Exs. 8–10) at 111–126.

9       **3.   Plaintiffs Still Fail to Allege That Apple Induced a Breach**

10       As Apple explained (Op. Br. 14), the Court rejected Plaintiffs' induced

11   misappropriation theory because Plaintiffs' single conclusory "allegation alone [wa]s

12   insufficient." ECF 264 at 14.  Plaintiffs respond by (i) reiterating irrelevant allegations

13   the Court already found insufficient, and (ii) embellishing the one new (still insufficient)

14   allegation that they argue supports inducement.  Opp. 15–17.  Plaintiffs' efforts fail.

15       Inducement requires an "intentional act[] designed to induce [a] breach."

16   *MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2020 WL 5064253, at *17 (S.D. Cal.

17   Aug. 27, 2020).  Plaintiffs' allegations fail to present a plausible "intentional act."

18   Despite claiming to have added "extensive" detail to the 4th AC, Opp. 17, Plaintiffs

19   merely re-assert allegations that are neither new, *see* TAC (ECF 233) ¶¶ 19–24, 229, nor

20   support a theory of inducement.  Plaintiffs claim: (1) Apple met with Plaintiffs to

21   allegedly learn about their products, ECF 320-2, Ex. A ¶ 230; (2) Apple hired Plaintiffs'

22   former employees, including O'Reilly—as VP of Medical Technology, *id*. ¶¶ 230–31;

23   (3) in his new position, O'Reilly purportedly asked if Cercacor was for sale, *id*. ¶ 231;

24   (4) Plaintiffs asked Apple to respect their intellectual property, *id*.; (5) Apple supposedly

25   ignored their request, *id*.; (6) Apple hired Lamego purportedly because it wanted—and

26   expected—Lamego to use Plaintiffs' trade secrets, *id*.; and (7) Apple tasked Lamego

27   ───────────────────
[11] Indeed, Plaintiffs' request to seal these ████████████, *see* ECF 296-1,
28   ¶ 252—although an improper attempt to seal indisputably public information—further
    proves that their misappropriation allegations are directed to these ██████ identities.

Gibson, Dunn &
Crutcher LLP

17

REPLY IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF THE
THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEx)

1   with working on the Apple Watch, *id*.  None of these allegations (almost all of which

2   were previously pled, *see* TAC ¶¶ 19–24, 229) speak to *inducement*—i.e., that

3   defendants committed an "intentional act" designed to induce breach—and therefore fail

4   to establish *that* theory of misappropriation.  *See Be In, Inc. v. Google Inc.*, 2013 WL

5   5568706, at *3 (N.D. Cal. Oct. 9, 2013) ("two conclusory statements" were insufficient

6   to support apparent inducement theory).

7        Plaintiffs' redline comparison of the TAC and 4th AC only proves Apple's point.

8   *See* ECF 320-2, Ex. A.  Plaintiffs' professed new "inducement" allegation merely asserts

9   that "Apple provided substantial financial incentives" ostensibly to induce Plaintiffs'

10  former employees to misappropriate Plaintiffs' Confidential Information.  *Id.* ¶ 232.

11  However, the only purported *fact* alleged to support this allegation is that O'Reilly chose

12  to leave Masimo (which he supposedly considered to be his "family") to join Apple for

13  better pay.  *Id*.[12]  This assertion, even if accepted as true, does not rise to the level of

14  plausibly alleging inducement—it merely alleges that an employee left Plaintiffs to join

15  one of the world's leading technology companies for a competitive salary.

16       Aware that they have not *alleged* plausible facts to support inducement, Plaintiffs

17  now *argue* in their Opposition that "Apple overpaid" O'Reilly or "paid a premium" to

18  him.  Opp. 16, 18.  But these newfound *assertions*—that O'Reilly was purportedly paid

19  more than he was qualified to earn—appear nowhere in the complaint, and for that

20  reason too, the inducement theory fails.  *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th

21  Cir. Feb. 25, 2003) ("In . . . a Rule 12(b)(6) dismissal, a court *may not* look beyond the

22  complaint to . . . a memorandum in opposition to a defendant's motion to dismiss.");

23  *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("a

24  complaint may not be amended by the briefs in opposition to a motion to dismiss.");

25  *Sunlight Prod. Techs., Ltd. v. MPOWERD Inc.*, 2015 WL 12655472, at *4 (C.D. Cal.

26

27  _____

28  [12]  Plaintiffs assert they "do not rely on financial incentives in isolation, much less argue
financial payments *always* show inducement."  Opp. 19.  But they point to no other
specific inducement allegations to support their theory.

Gibson, Dunn &
Crutcher LLP

1   March 23, 2015) (finding it "improper to introduce . . . new factual allegations" through

2   rebuttal briefing).

3          Applying Plaintiffs' own rule—to read the complaint's allegations together, Opp.

4   18–19—does not change this result.  Even accepting as true the so-called "new"

5   allegations, Plaintiffs' inducement theory still boils down to non-actionable conduct—

6   that Apple (1) had a "strategic objective in healthcare," which was "central to Apple's

7   future," ECF 320-2, Ex. A ¶¶ 230, 232; (2) hired what it believed to be qualified

8   individuals to fill specific roles, *id*. ¶¶ 230–32; and (3) paid one of those individuals

9   more than what Plaintiffs paid him, *id*. ¶ 232.  Put differently, Apple acted as any

10  leading, competitive technology company would to hire talent and pursue market

11  initiatives.  This is not improper inducement.  When two possible explanations are

12  presented, "plaintiffs cannot offer allegations that are merely consistent with their

13  favored explanation but are also consistent with the alternative explanation"; rather

14  "[s]omething more is needed, such as facts tending to exclude the possibility that the

15  alternative explanation is true, in order to render plaintiffs' allegations plausible."

16  *Eclectic Prop*, 751 F.3d at 996–97 (quoting *In re Century Aluminum Co. Secs. Litig.*,

17  729 F.3d 1104 (9th Cir. 2013); *see also Veronica Foods*, 2017 WL 2806706, at *14.

18  The "something more" is sorely lacking here.

19          Further, Plaintiffs' attempts to distinguish Apple's ample support fall flat.  *See*

20  Opp. 18–19.  Plaintiffs conveniently omit the first part of the footnote they cite from *Soo*

21  *Park*, which emphasizes the "rather unusual course of events" in that case as "suggestive

22  of illegal conduct."  *Soo Park*, 851 F.3d at 928 n.22.  But Plaintiffs have not pled that

23  there is anything "rather unusual" about Apple offering competitive compensation to its

24  employees.  And *State Comp. Ins. Fund v. Capen* passed the motion to dismiss stage

25  only because "the Complaint contain[ed] a 'significant level of factual specificity'"

26  regarding Defendants' "inten[t] to defraud."  2015 WL 13322034, at *6 (C.D. Cal. Dec.

27  18, 2015).  Factual specificity is absent here.

28

Gibson, Dunn & Crutcher LLP

19

REPLY IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF THE
THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEx)

Finally, Plaintiffs mischaracterize Apple's arguments—once again, to no avail. Plaintiffs argue that Apple is somehow inconsistent because it previously argued that Plaintiffs' sole conclusory inducement allegation was insufficient, but it now supposedly asks the Court to disregard "numerous" allegations purportedly supporting Plaintiffs' inducement theory. Opp. 17. That is incorrect. Apple argued before that the *only* allegation supporting the inducement theory was conclusory, ECF 241 at 22—and the Court so found, ECF 264 at 14. Plaintiffs' argument that Apple is asking the Court to disregard allegations the Court already found insufficient is tantamount to arguing the Court somehow did not properly consider their prior allegations simply because the Court did not cite every irrelevant allegation individually in its Order. Of course, Plaintiffs cite no authority that the Court had an obligation to do so. The Court should reject Plaintiffs' improper motion for reconsideration regardless. *See* L.R. 7-18 (setting forth grounds for reconsideration motion).

### 4.     Plaintiffs Still Fail to Allege That Apple Is Vicariously Liable Under *Respondeat Superior*

Plaintiffs accuse Apple of adopting a "draconian" standard for pleading *respondeat superior*, Opp. 21, but the standard is simple and well established: liability attaches under a *respondeat superior* theory only where 1) an employee committed a tort, and 2) did so "within the scope of [] employment," *Brain Injury Ass'n of Cal. v. Yari*, 2020 WL 3643482, at *6 (C.D. Cal. Apr. 30, 2020).

Plaintiffs argue that the Court's rejection of their *respondeat superior* theory only pertained to the "first element," i.e., that Lamego and O'Reilly "committed a tort." Opp. 19. This is incorrect—Plaintiffs themselves cite the Court's specific finding that their allegation that "Lamego and O'Reilly . . . used and disclosed Plaintiffs' Confidential Information ***within the scope of their employment***" was "conclusory" and "insufficient." ECF 264 at 14–15 (emphasis added). Plaintiffs do not plausibly allege Lamego and O'Reilly committed a tort, let alone plausibly claim that they did so in the scope of their employment. Similarly, Plaintiffs wrongly suggest that "Apple does not

20

Gibson, Dunn &
Crutcher LLP

challenge [that the employees were acting within the scope of their employment].” Opp. 21. To be clear, Apple contends that Plaintiffs allege only innocuous, legitimate conduct; but, to the extent Plaintiffs *do* claim that any former employee misappropriated trade secrets, Apple strongly contests that “misappropriation and use of Plaintiff[s’] trade secrets [was] either ‘required by or incident to [their] duties, or could reasonably be foreseen by [it] in any event.’” *U.S. Legal Support, Inc. v. Hofioni*, 2013 WL 6844756, at \*7 (E.D. Cal. Dec. 20, 2013) (citation omitted).

Plaintiffs try to rescue their failed claim by adding what they describe as “many pages of allegations” about how Lamego and O’Reilly misappropriated each alleged secret. Opp. 20. Even a glance at Plaintiffs’ redlined allegations shows that characterization is incorrect. ECF 320-2. Plaintiffs’ 4th AC simply restates already failed allegations by tweaking the wording and copying and pasting them repeatedly. *Compare, e.g.*, *id.* ¶ 254 (deleting assertion that “████████████████████████ ███████████████████████”—which the Court found conclusory, ECF 264 at 13), *with id.* ¶ 255 (adding that “████████ ████████████████████████”); *compare also id.* ¶ 228, *with id.* ¶ 259 (copying verbatim the conclusory allegation that “Lamego and O’Reilly used and disclosed Plaintiffs’ Confidential Information without Plaintiffs’ consent” and “had reason to know” of a duty to keep it secret). Allegations that “████████████████████ ████████████,” ¶ 236, or “had Lamego work on the Apple Watch,” *id.*, do not plausibly support Plaintiff’s conclusion that Lamego “████████████ ████████████,” Opp. 20. And no matter how many times Plaintiffs copy in the accusation that Lamego “used and/or disclosed” trade secrets, 4th AC ¶¶ 241, 244, 256, 258, throwing in identical conclusory verbiage does nothing to “nudge[] [the] claims . . . across the line from conceivable to plausible.” *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Gibson, Dunn & Crutcher LLP

1   In an attempt to bolster their threadbare misappropriation allegations regarding

2   ████████████████████ secrets, Plaintiffs *argue* that O'Reilly "admitted" that

3   Apple "████████████████████," which they assert "████████████████

4   ████████████████████████████." Opp. 23. The

5   inference that Apple could not develop the technology is *not* plausibly alleged in the 4th

6   AC which, at most, alleges that "████████████████████████

7   ████████████████   4th AC ¶ 255. Plaintiffs also try to escape

8   unfavorable portions of the Court's ruling by advancing a straw man argument that the

9   Court rejected only allegations about "Confidential Information," not "the specific trade

10  secrets at issue here." Opp. 24 (citing ECF 264 at 15)." They ignore, however, that the

11  description of the alleged ████████████████ trade secrets *remained*

12  *unchanged* from the TAC to the 4th AC; therefore, the Court's ruling on the TAC

13  remains fully on point. ECF 264 at 15.

14      Plaintiffs also claim to provide "new" factual allegations of Lamego

15  misappropriating their alleged ████████████ trade secrets. Opp. 21–22. But as

16  Apple explained, Op. Br. 18, Plaintiffs' TAC already alleged that Apple implemented

17  *specific* "████████████████████████████████████████

18  ████" which purportedly "improved" "████████████████████████"

19  "performance." TAC ¶ 235. The TAC also advanced myriad allegations as to Lamego's

20  role in "████████████████████████" with various approaches to ████

21  ████████. *Id.* ¶ 237. The Court did not find *any* of the TAC allegations sufficient to

22  sustain Plaintiffs' *respondeat superior* theory, ECF 264 at 14–15—and contrary to

23  Plaintiffs' unrealistic assertion, Opp. 22, it did not need to cite *every* arguably relevant

24  clause of the TAC to do so.

25      In addition to the factual infirmity, Plaintiffs' theory also fails on the law. To

26  sidestep contrary authority, Plaintiffs argue that Apple's cases apply only in situations

27  relying on "inevitable disclosure." That is an unreasonably narrow reading of the cases.

28  The plaintiffs in *Cypress Semiconductor Corp. v. Maxim Integrated Products, Inc.*, like

22

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF THE
THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEX)

Plaintiffs here, "expressly disclaimed any reliance on the doctrine of inevitable disclosure," but, also like Plaintiffs here, none of the *Cypress* plaintiff's iterative filings "add[ed] any flesh to the evasive and conclusory assertions of liability in its pleadings." 236 Cal. App. 4th 243, 265 (2015).  In *Epicor Software Corp. v. Alternative Tech. Sols., Inc.*, as in this case, adding a "conclusory, formulaic allegation" was insufficient to save the claim.  2013 WL 12130024, at *3 (C.D. Cal. Dec. 2, 2013).  Plaintiffs attempt to distinguish *Veronica Foods* by making the conclusory argument that the allegations here should be read "as a whole" and on that basis deemed "plausible."  Opp. 23 (citing 2017 WL 2806706, at *14).  But the core principle of *Veronica Foods* is just as applicable as ever—Plaintiffs cannot proceed unless they are able to allege facts that "tend[] to exclude [an] innocuous alternative explanation."  2017 WL 2806706, at *12.  Even if Plaintiffs believe the pertinent facts are "peculiarly within" Apple's control, they are still not excused from "the requirement that the[y] . . . allege something more than bare conclusions."  *Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *3 (N.D. Cal. Mar. 19, 2018).

Throughout their brief, Plaintiffs also argue against the findings and logic of the Court's MTD TAC Order.  First, Plaintiffs repeatedly complain that Apple "pick[ed] apart and criticize[d] individual sentences" in Plaintiffs' allegations.  Opp. 22, 23.  Yet the Court's Order dismissing *portions* of Plaintiffs' misappropriation claim *does* isolate individual allegations and theories.  *See, e.g.*, ECF 264 at 7 ("[T]he failure to describe one trade secret with sufficient particularity properly leads to the dismissal of the misappropriation claim with respect to that trade secret alone."); *id.* at 9 (dismissing claim as to "the secret listed in paragraph 44.2" because it was found to be "unprotectable").  Plaintiffs cite no authority suggesting it is improper to criticize *parts* of a claim.  More troubling, however, are Plaintiffs' repeated exaggerations and misstatements of the Court's prior orders.  Opp. 22, 24.  For example, Plaintiffs' assertion that the Court "held that Plaintiffs plausibly alleged Apple misappropriated Plaintiffs' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" is a bold overreach.

23

Gibson, Dunn &
Crutcher LLP

1  Opp. 22 (emphasis added).  Although the Court found that Plaintiffs' "█████████
2  ████████████████████████████████" were properly alleged when taken in
3  context of Plaintiffs' broader allegations, the Court did ***not*** extend this reasoning to
4  "██████████████████████." ECF 264 at 13.  Plaintiffs likewise ignore the Court's
5  prior rejection of the "conclusory allegations" that "Lamego and O'Reilly themselves
6  misappropriated Plaintiffs' trade secrets." Opp. 20; ECF 264 at 14–15.  Plaintiffs'
7  repetition in the 4th AC of the same misappropriation allegations it had previously raised
8  unsuccessfully is insufficient to breathe new life into these dead claims.  Opp. 20.

9  ### III. PLAINTIFFS SHOULD BE DENIED FURTHER LEAVE TO AMEND

10  Plaintiffs ask the Court for yet another chance to plead viable (i) ████████
11  ████████ secrets, (ii) misappropriation of those ██████████████████ alleged secrets, (iii)
12  misappropriation of their ██████████████████ techniques, and theories of (iv)
13  inducement and (v) *respondeat superior*.  Plaintiffs purport to support this request by
14  arguing that they "made substantial changes" to address the Court's rulings on the prior
15  pleadings.  Opp. 25.  But Plaintiffs' own redline makes clear these "changes" are
16  immaterial, superficial, redundant of previously failed allegations, and/or insufficient.
17  ECF 320-2.  Plaintiffs also claim that Apple moved to dismiss based on "new
18  arguments"—presumably because Apple cited allegations the Court did not specifically
19  cite in its prior orders, Opp. 25.  But as Apple explained, Plaintiffs have cited no
20  authority requiring the Court to provide them a roadmap to allege plausible claims.

21  Plaintiffs also assert that they "could provide additional allegations if necessary,"
22  Opp. 25, but they have failed after *multiple* chances to do so.  If Plaintiffs had ***plausible***
23  additional allegations, they should have pleaded them fifteen months ago, when they
24  filed their original Complaint, instead of forcing Apple to respond to "serial baseless
25  complaints." Op. Br. 22.  That type of conduct has been, and will continue to be,
26  prejudicial to Apple, costing it millions of dollars.  Plaintiffs' attempt to rely on two of
27  this Court's prior orders to argue that their "claims are moving forward," Opp. 25 (citing
28  ECF 198 at 7–10; ECF 264), is misplaced.  The Court's Order Regarding Motion for

24

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF APPLE'S MOTION TO DISMISS PORTIONS OF THE
THIRTEENTH CAUSE OF ACTION IN PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 8:20-CV-00048-JVS (JDEx)

Preliminary Injunction concerned a trade secret not at issue here, ECF 198 at 1–2; ECF 161-1 at 12–13, whereas the MTD TAC Order expressly found the allegations that *are* at issue here to be inadequate, ECF 264 at 9, 13–15.  Plaintiffs have not remedied that inadequacy, and so these portions of the 4th AC should be dismissed with prejudice.

## IV. CONCLUSION

Apple respectfully requests that the Court dismiss with prejudice the above-mentioned portions of Plaintiffs' Thirteenth Cause of Action for trade secret misappropriation.

Dated:  April 2, 2021

Respectfully submitted,

JOSHUA H. LERNER
H. MARK LYON
BRIAN M. BUROKER
BRIAN A. ROSENTHAL
ILISSA SAMPLIN
ANGELIQUE KAOUNIS
BRIAN K. ANDREA
GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Joshua H. Lerner*
      Joshua H. Lerner

*Attorneys for Defendant Apple Inc.*

Gibson, Dunn & Crutcher LLP