1   Joseph R. Re (Bar No. 134479)
    joseph.re@knobbe.com
2   Stephen C. Jensen (Bar No. 149894)
    steve.jensen@knobbe.com
3   Perry D. Oldham (Bar No. 216016)
    perry.oldham@knobbe.com
4   Stephen W. Larson (Bar No. 240844)
    stephen.larson@knobbe.com
5   KNOBBE, MARTENS, OLSON &
6   BEAR, LLP
    2040 Main Street, Fourteenth Floor
7   Irvine, CA 92614
8   Telephone:  (949)-760-0404
    Facsimile:  (949)-760-9502
9
10
    Adam B. Powell (Bar. No. 272725)
11  adam.powell@knobbe.com
12  KNOBBE, MARTENS, OLSON &
    BEAR, LLP
13  12790 El Camino Real
    San Diego, CA 92130
14  Telephone: (858) 707-4000;
15  Facsimile: (858) 707-4001
16  *Attorneys for Plaintiffs Masimo Corp. and Cercacor Labs., Inc.*

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.:  415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.:  650.849.5300 / Fax: 650.849.5333

*Attorneys for Defendant Apple Inc.*
*[Additional counsel listed on next page]*

17
18          **UNITED STATES DISTRICT COURT**
       **FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

19  MASIMO CORPORATION,
20  CERCACOR LABORATORIES, INC.,

21              Plaintiffs,

22      v.

23  APPLE INC.,

24              Defendant.

25

26

27

28

CASE NO. 8:20-cv-00048-JVS (JDEx)

**JOINT STIPULATION REGARDING APPLE'S MOTION TO COMPEL PLAINTIFFS TO IMMEDIATELY PROCEED WITH ESI DISCOVERY**

Judge:       Magistrate Judge John D. Early
Date/Time:  April 29, 2021 / 10:00 AM
Courtroom: 6A

Discovery Cutoff:          7/5/2021
Pre-trial Conference:      3/21/2022
Trial:                     4/5/2022

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

# TABLE OF CONTENTS

**Page**

I. Introductory Statements .................................................................... 1

    A.    Apple's Introduction ......................................................... 1

    B.    Plaintiffs' Introduction ..................................................... 2

II. Apple's Position .............................................................................. 5

    A.    Factual Background .......................................................... 5

    B.    Argument ......................................................................... 10

        1.    Plaintiffs' Refusal to Proceed Absent Agreement on Fifty Custodians Is Inconsistent with the ESI Agreement and Impractical ................................................................. 10

        2.    Starting with Twelve Custodians is Reasonable and Efficient .................................................................... 12

        3.    Plaintiffs' Insistence on Nearly Fifty Custodians Is Demonstrably Not Proportional to the Needs of the Case ....... 16

III. Plaintiffs' Position ........................................................................ 18

    A.    Factual Background .......................................................... 19

    B.    Argument ......................................................................... 24

        1.    Limiting Apple's Search To Just Twelve Custodians Is Not A "Reasonable Search" ............................................. 25

        2.    Apple Has Not Met Its "Heavy Burden" To Limit Discovery ..................................................................... 35

        3.    Apple's Cited Cases Do Not Support Its Position ................... 39

        4.    Plaintiffs Are Not Refusing To Proceed "Absent Agreement On Fifty Custodians" .......................................... 42

        5.    Conclusion ..................................................................... 44

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Defendant Apple Inc., as movant, and Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Plaintiffs"), as respondents, through their respective counsel of record, submit this joint stipulation on Apple's Motion to Compel Plaintiffs to Immediately Proceed with ESI Discovery.  This Joint Stipulation was prepared following the parties' conferences of counsel, which took place on March 17, 2021 and March 29, 2021.

## I.  INTRODUCTORY STATEMENTS

### A.  Apple's Introduction

To meet the Court's Scheduling Order, Apple brings this motion to compel Plaintiffs to proceed with ESI discovery from twelve **agreed-upon** custodians per side, without prejudice to either side's ability to pursue ESI from additional custodians in the future, as reasonable and appropriate.

The problem that requires resolution is straightforward:  The parties have not agreed on a number of document custodians, and need to move forward with ESI discovery.  Apple initially proposed eight custodians, and Plaintiffs proposed nearly fifty. After meeting and conferring numerous times, Apple proposed twelve, but again Plaintiffs refused to agree to less than roughly fifty.  Because the parties must begin substantial document production to comply with the Scheduling Order, Apple proposes, consistent with the ESI Agreement, proceeding with twelve custodians per side who are "knowledgeable about and were involved in the core issues or subjects in this case." Dkt. 51 ¶ 1.  Apple is not foreclosing the possibility that either side propose more custodians in the future if appropriate.  Plaintiffs, however, refused to move forward on **any** custodians; they contend that Apple should search the ESI of **all** of Plaintiffs' proposed custodians, even including Apple's CEO, Tim Cook.  Plaintiffs' position is not only inconsistent with the standard practice of beginning with a reasonable number of custodians and expanding if necessary; Plaintiffs' position is also inconsistent with basic rules governing discovery. Discovery is not unbounded.  Plaintiffs do not have a basis to insist that Apple include as a custodian *every* individual with *any* knowledge of the broad subjects in this case.  The

-1-

custodians and terms the parties use to identify a universe of documents to review for potential production should be relevant and proportional to the needs of the case, as the Court has explained. Demanding nearly fifty custodians at the outset plainly is not.

ESI discovery cannot wait. The deadline for close of fact discovery is quickly approaching (July 5). Apple respectfully requests that the Court order Plaintiffs to proceed with ESI discovery for twelve custodians per side, without prejudice to either side's ability to seek ESI from additional custodians later, if reasonable and appropriate.

**B.** **Plaintiffs' Introduction**

Plaintiffs agree ESI discovery should move forward immediately. Plaintiffs are already collecting and searching data for the twelve custodians that Apple asked Plaintiffs to search. In fact, Plaintiffs are searching ***more*** than those custodians because twelve custodians is not enough for ***either side*** to satisfy their discovery obligations. Thus, Apple's suggestion that Plaintiffs are delaying discovery is false. In fact, as this Court knows from Plaintiffs' prior motion to compel, Plaintiffs have been pressing Apple to move ESI discovery forward for ***six months***.

Rather than seeking to compel ESI discovery, Apple's motion is actually for a protective order to ***limit*** Apple's ESI searching to 12 custodians. "A party seeking a protective order has a 'heavy burden' of showing why discovery should be limited." *Nguyen v. Lotus by Johnny Dung Inc.*, 2019 WL 4579259, at *3 (C.D. Cal. June 7, 2019) (quoting *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)). Apple cannot meet that burden because it relies entirely on attorney argument with no evidence. Apple identifies no burden, does not discuss the disputed custodians or their relevance, and does not discuss relevant discovery requests.

While it is not Plaintiffs' burden, Plaintiffs provided evidence showing custodians beyond the arbitrary twelve Apple identified are both relevant and proportional to the needs of this case. In similar circumstances, this Court and others have required parties to search ***more than 50*** custodians. While Plaintiffs tried to work with Apple to agree on an ESI procedure, the parties' ESI agreement expressly acknowledges the parties may ***not***

-2-

reach a final agreement on ESI searching.  Because the parties were unable to reach an agreement, Apple must conduct reasonable searches under the Federal Rules, just as *Plaintiffs are already doing*.  Apple's demand to limit its search to just twelve custodians is not a "reasonable search" based on the facts and circumstances of this case.

The process that Apple seeks to impose is also deeply prejudicial.  Apple demands Plaintiffs select twelve *Apple* custodians even though Apple refuses to provide the information necessary for Plaintiffs to make an informed decision, including hit counts on a more complete list of potential custodians.  Apple's refusal to provide such information is improper because any burden is primarily associated with the number of *documents* reviewed—not *custodians* searched.  Exchanging hit counts would have allowed the parties to evaluate the relevance of each custodian to prioritize relevant discovery.

Apple also proposes the parties proceed with searching, reviewing, and producing documents on twelve custodians before Plaintiffs could even *ask* for more.  Apple asserts its request is "without prejudice" to more ESI discovery, but its proposed order allows more discovery only "if reasonable and appropriate."  Thus, Apple's requested relief flips the burden and conditions discovery on *Plaintiffs* proving it is necessary.  Moreover, Apple's suggestion to proceed in multiple phases is meaningless because Apple admits fact discovery ends in July, but nowhere proposes extending the schedule to permit such phasing.  Apple thus obscures the inevitable result of its request: a dramatic limitation on discovery without having to meet the "heavy burden" required to obtain a protective order.

Apple attempts to justify its request by arguing that other courts restrict discovery to a similar number of custodians.  As support, however, Apple points almost entirely to cases from the Northern District of California, which has a unique "Model ESI Order" and procedure for patent cases.  This case includes no such order or agreement.  Additionally, Apple's cases limited discovery because there was *no evidence* that additional custodians were appropriate.  As discussed, courts routinely require searching 50 or more custodians when, as in this case, there is evidence that the additional custodians are appropriate.

Apple also attempts to "black hat" Plaintiffs by misrepresenting the meet and

-3-

confer.  Plaintiffs never demanded Apple search "*every* individual with *any* knowledge of the broad subjects in this case."  Jt. Stip. at 1.  Apple refers to an earlier dispute regarding Apple's obligation to simply ***disclose*** potential custodians.  Plaintiffs asked Apple to comply with the ESI agreement and disclose all individuals "who are knowledgeable about and were involved with the core issues or subjects in this case," as required by the agreement.  Dkt. 51 ¶ 1.  Plaintiffs made clear they were ***not*** asking Apple to disclose "every" individual with any knowledge and were ***not*** asking Apple to search every individual that Apple disclosed.  Plaintiffs merely asked for a full disclosure so Plaintiffs could select appropriate custodians to then ***search*** pursuant to the ESI agreement.

Apple also incorrectly argues Plaintiffs "refused to move forward on ***any*** custodians" unless Apple searches "***all*** of Plaintiffs' proposed custodians."  Jt. Stip. at 1 (emphasis in original).  After the parties exchanged disclosures of their own potential custodians, they exchanged custodians that they asked the opposing side to search.  Because Apple's disclosure was inadequate, Plaintiffs took the laboring oar of reviewing Apple's limited document production and providing a list of Apple custodians that Plaintiffs believe are appropriate custodians.  Plaintiffs asked for hit counts so they could prioritize custodians in an attempt to reduce the number of custodians searched and documents reviewed.  Apple refused.

Apple also faults Plaintiffs for seeking document discovery from Tim Cook, but Mr. Cook is directly relevant, including because he recruited O'Reilly to leave Masimo and join Apple.  Moreover, Plaintiffs proposed a narrower set of search terms for Mr. Cook.  If Mr. Cook's documents are truly irrelevant, as Apple suggests, then it should not be burdensome to collect and review the few documents that hit on narrow search terms.

Apple's "factual background" attempts to rewrite history.  Apple represents it initiated the process on October 17, but omits that it was ***responding*** to Plaintiffs' October 1 request to begin the process.  Apple also omits its October 17 letter argued that ESI discovery was "premature and inappropriate."  Apple then ignores Plaintiffs' other letters in falsely asserting Plaintiffs "failed" to respond or "finally" responded much later.

-4-

Plaintiffs agree that ESI discovery should move forward, which is why Plaintiffs have been pressing Apple to do so for **six months**, including by moving to compel. Having dragged its heels for months, Apple now demands Plaintiffs agree to an artificial limit and prejudicial procedure by arguing Plaintiffs could later ask for more even though the schedule would not permit such a process. Nothing supports such an inequitable approach. Plaintiffs are entitled to reasonable discovery commensurate with the needs of this large case. The Court should not permit Apple to use its own delay as a sword to limit Apple's searching and prejudice Plaintiffs' ability to obtain discovery.

## II.  APPLE'S POSITION

### A.  Factual Background

With the close of non-expert discovery less than three months away, the parties must move forward with ESI discovery. The parties' ESI Agreement requires that the parties "provide a proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case," and then "meet and confer in an attempt to reach agreement on custodians and search terms. . . ." Dkt. 51 ¶ 1. Apple has attempted over and over to move the ball forward on searching an agreed upon number of custodians to start—the parties can discuss additional custodians after beginning on an agreed-upon list.

As demonstrated below, Apple has tried countless times for the last few months to get started on custodians and search terms. Plaintiffs have steadfastly refused to get started on an agreed-upon list, insisting instead that Apple first agree to search the files of nearly *fifty* custodians before ESI discovery can proceed at all.

- *October 17, 2020* – Apple proposed that the parties agree on a reasonable number of custodians per side. Ex. D at 25. Plaintiffs refused, arguing that such a discussion was inappropriate because it is not explicitly required by the ESI Agreement. Ex. P at 86.

- *December 2-6, 2020* – Apple proposed a limitation of eight custodians, with the possibility of more for good cause. Ex. G. Plaintiffs promised to "respond to Apple's [proposal] separately." Ex. H at 44.

-5-

- ***December 30, 2020*** – Plaintiffs finally responded to Apple's proposal, rejecting it out of hand and insisting on no limits on custodians.  Ex. I at 48-49.

- ***January 13, 2021*** – Apple tried again to discuss reasonable limits, explaining that such limits were common, and citing model orders from numerous courts with default limits on ESI custodians.  Ex. J at 53-54.

- ***January 21, 2021*** – Rather than respond, Plaintiffs served Apple with a joint stipulation (the "First JS") requesting "the Court order Apple to provide a list of proposed custodians pursuant to the ESI Order."  Ex. K at 64.  The stipulation included a demand for *all* known former employees of Plaintiffs—who worked for Apple at any time, and regardless of job duties—to be included.  *Id.* at 62.

- ***January 25-27, 2021*** – Apple proposed that the parties continue discussing reasonable discovery limits, but agreed to exchange custodian names to avoid unnecessarily burdening the Court.  Ex. L at 69; Ex. M at 73.

- ***February 5, 2021*** – The Parties exchanged custodian lists, with Plaintiffs identifying ***forty-six*** ESI custodians, nearly half of whom are their "former employees."  Apple identified eight custodians with relevant knowledge pursuant to the ESI Agreement.  Ex. N at 79-80; Ex. O at 84.

- ***February 8-10, 2021*** – Apple told Plaintiffs that it was unclear what relevant knowledge the vast majority of their proposed 46 individuals possess and suggested that "the parties agree to supplement their lists with the knowledge each proposed custodian possesses that is relevant to the core issues or subjects in this case."  Ex. N at 78.  Plaintiffs reluctantly agreed, but made clear they believed such an exchange would "not resolve our dispute."  Ex. P at 88.

- ***February 12, 2021*** – The parties exchanged information about the purported relevance of the identified custodians, Ex. Q at 91-92; Ex. R, but for each of the twenty-one "former employees" on their list, Plaintiffs indicated only that each individual's "area

of knowledge" was "former employee later employed by Apple; acquisition, use, and disclosure of Plaintiffs' confidential information." Ex. R.[1]

- *February 12, 2021* – Apple added three names to its custodian list, identified based on its ongoing internal fact gathering. Ex. Q at 91-92.

- *February 17, 2021* – Apple explained that Plaintiffs' meaningless descriptions indicated that Plaintiffs selected the individuals simply because they used to work for Plaintiffs, without regard to whether the individual is likely to possess discoverable information relevant to the claims and defenses at issue in this action. Apple asked Plaintiffs to identify *any* specific knowledge of the "acquisition, use, and disclosure of Plaintiffs' confidential information" possessed by each custodian. Ex. V at 131.

- *February 23, 2021* – Apple noted that it had not received a response to its February 17 email, but proposed "that in the interest of avoiding further delay, *the parties move forward with discussing search terms for custodians on which they agree*." Ex. W at 143.

- *February 24, 2021* – Plaintiffs finally responded a week later, and *thirteen minutes before serving their second joint stipulation*, argued that "*Apple* should determine which of those former employees have knowledge falling within the definition of the ESI Order," and repeated their unhelpful refrain that Apple's proposal to exchange search terms "does not resolve the parties' dispute." *Id.* at 142.

- *March 3, 2021* (the day Apple's portion of Plaintiffs' second joint stipulation was due) – *Apple again asked Plaintiffs for a response to its proposal that the parties move forward with exchanging search terms on undisputed custodians*. Ex. W at 139. Plaintiffs responded that they "cannot discuss search terms for custodians 'on which [the parties] agree' because the parties do not currently agree on any custodians," but

---

[1] Plaintiffs also initially designated their list as "Highly Confidential – Attorneys' Eyes Only," preventing anyone at Apple from reviewing it. Plaintiffs eventually agreed to allow Apple's counsel to share the list with Apple's in-house counsel, but have refused to de-designate the list. Ex. S at 102.

that they "will engage in initial discussions of search terms with [Apple] to determine if the parties can have any meaningful discussions." Ex. X at 153.

- ***March 5, 2021*** – The Court denied Plaintiffs' second joint stipulation, holding it was "based upon an erroneous premise." Order at 2. Specifically, the Court explained it would "[]not order Defendant to 'comply with the ESI Order' because the 'ESI Order' does not order Defendant to take any action," and further noted that the ESI discovery process is "iterative." *Id*. Later that day, Apple offered to engage in "initial discussions" regarding search terms, as Plaintiffs suggested, but ***pressed Plaintiffs to "exchange ESI for the custodians already identified.*** " Ex. AB at 181. Apple explained that "if there is a basis to request discovery from additional custodians, each party may make such a request." *Id.*

- ***March 9, 2021*** – Plaintiffs responded, refusing to move forward per Apple's suggestion, but instead proposing that "each side provide a list of custodians and search terms that they request the opposing party search based on the information they currently have." Ex. AD at 210.

- ***March 11, 2021*** – Apple agreed to Plaintiffs' request to exchange a list of custodians and proposed search terms, and added another name to its own list of ESI custodians based on its ongoing internal fact gathering. Ex. AD at 209.

- ***March 12, 2021*** – The parties exchanged lists of proposed custodians and search terms. Apple identified twenty-two Masimo custodians, noting that it was "willing to consider narrowing this list," but that it required additional information from Plaintiffs about the knowledge possessed by each individual. Ex. AE at 223. Plaintiffs in turn requested that Apple search the ESI of ***forty-nine*** custodians, including Apple CEO Tim Cook, and indicated that they may identify additional "former employees of Plaintiffs now employed by Apple." Ex. AF at 231.

- ***March 17, 2021*** – Apple wrote Plaintiffs pursuant to Local Rule 37.1, explaining that "[t]he parties need to move forward with ESI discovery immediately to complete discovery under the current schedule," and proposing a compromise that would allow

-8-

both parties to do that without ceding their positions.  Ex. AG at 233.  Specifically, Apple proposed that by March 19, 2021, "each party select . . . twelve custodians from the other party's list for whom they would like to pursue ESI discovery *at this time*," without "waiv[ing] the ability to pursue ESI from additional custodians in the future, as reasonable and appropriate."  *Id.* at 234.

- **March 23, 2021** – Plaintiffs responded to Apple's March 17 letter, *completely ignoring* Apple's proposed compromise.  Instead, Plaintiffs reiterated their assertion that "twelve custodians is woefully deficient," and took issue with what they called "Apple's approach of demanding a numerical limit on ESI custodians before discussing search terms."  Ex. AH at 239.  Plaintiffs further repeated their demand for ESI from Apple CEO Tim Cook and insisted that Apple describe the position and duties of each of Plaintiffs' former employees that have worked at Apple, even though Apple already responded to Plaintiffs' interrogatory requesting information about the responsibilities of their ex-employees who have been involved in the development, marketing, and sale of the Apple Watch.  *Id.* at 240.

- **March 23, 2021** – Apple responded that same day, noting, "***our proposal was that the parties move forward with twelve custodians on each side at this time so that this process can get moving***.  We are willing to discuss other custodians, … but we do not believe it is in either side's interest for those discussions and correspondence to hold up ESI discovery completely."  Ex. AI at 247.  Apple asked Plaintiffs to "let us know if you are willing to proceed with our proposal."  *Id.*

- **March 25, 2021** – Instead of responding to Apple's March 23 email or its March 17 letter, Plaintiffs sent their own Rule 37-1 letter, illogically asserting that "Apple's communications make clear Apple will not perform a reasonable search for ESI," and accusing Apple of "self-help to substantially limit its document production."  Ex. AJ at 266.  Plaintiffs once again did not address Apple's offer to compromise, but instead repeated their demand that Apple "search[] all of the custodians included in [their] letter of March 23, 2021."  *Id.* at 267.

-9-

- ***March 26, 2021*** – Apple responded, noting that Plaintiffs "did not provide a firm position … as to whether Plaintiffs would agree to Apple's proposal." Ex. AK at 269. Apple once again asked: "***[w]ill Plaintiffs agree to search the 12 custodians Apple identified in its March 17 letter now, without waiting for an order from the Court?***" *Id.* Apple also stated that "if Plaintiffs would not agree to move forward, Apple was prepared to move forward with running the non-objectionable terms Plaintiffs provided previously for the twelve ESI custodians Apple has identified." *Id.*

- ***March 28, 2021*** – Plaintiffs agreed to run search terms on the twelve custodians chosen by Apple at an unspecified time in the future, but again failed to agree that Apple should proceed with running uncontroversial search terms on the twelve Apple custodians of Plaintiffs' choosing. Ex. AL at 290.

- ***March 29, 2021*** – The parties met and conferred on the issues in Apple's March 17 letter. Apple asked Plaintiffs to explain their refusal to agree to Apple's proposed compromise. Plaintiffs declined, instead stating that they could not make an "on-the-spot" decision and repeating their refrain that Apple must agree to search the files of additional custodians before Plaintiffs can decide which custodians they would like searched. Ex. AM.

**B.    <u>Argument</u>**

### 1.    Plaintiffs' Refusal to Proceed Absent Agreement on Fifty Custodians Is Inconsistent with the ESI Agreement and Impractical

In signing the ESI Agreement, the parties "agree[d] to work in good faith to reach an agreement" on ESI discovery—an obligation echoed in the Local Rules for the Central District of California. *See* Local Rule 37-1. Under the rules of this Court, "counsel for the parties must confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible." *Id.* More specifically, as it relates to the present dispute, the Court already has told the parties they must engage in an "iterative, good faith discovery process." ECF 318. Instead of doing so, Plaintiffs have delayed at every turn based on unbounded demands for roughly fifty ESI custodians

without proper attention to relevance and proportionality.  While Apple has made very clear that it does not agree with Plaintiffs' proposal to immediately search fifty custodians, it has also indicated that it is willing to discuss additional custodians if there is a basis to do so.  Regardless, there is no reason the parties cannot proceed with twelve ***agreed-upon*** custodians on each side now while those discussions continue.

Instead of proceeding with searching the files of the agreed custodians, Plaintiffs have sent serial emails accusing Apple of "exclud[ing] relevant custodians" without any basis for that assertion, and attempted to grind ESI discovery to a halt.  *See* Ex. P at 86. Plaintiffs' accusations are inconsistent with the record, which reflects persistent efforts by Apple to begin ESI discovery, all of which have been inexplicably rejected by Plaintiffs. *First*, Apple suggested the parties discuss reasonable limitations on the number of ESI custodians, which courts routinely require.  Ex. G.  Plaintiffs refused.  Ex. I at 48. *Second*, Apple suggested that the parties exchange information as to each identified custodian's knowledge in an effort to identify any deficiencies in their respective lists.  Ex. P at 89. Plaintiffs reluctantly agreed, but their identified "knowledge" was vague and unhelpful for the majority of their proposed custodians.  Ex. R.  When Apple requested more clarity, Ex. W at 144, Plaintiffs refused to provide it.  *Id.* at 142.  *Third*, after Apple suggested the parties move forward with exchanging search terms for the undisputed custodians while the parties worked to resolve their disputes about other custodians, *id.* at 139, Plaintiffs said doing so would "not resolve the parties' dispute." *Id.* at 142-143. *Finally*, and most recently, Plaintiffs simply *did not respond* to Apple's offer to compromise to move ESI discovery forward, and when pressed on the issue during the parties' meet and confer, repeatedly evaded it.  *See* Exs. AH, AJ.

Apple's common-sense proposal, which would allow both parties to select twelve ESI custodians of their choosing from whom they would like to collect ESI discovery now, ***without prejudice to the ability to pursue ESI from additional custodians in the future***, is indisputably beneficial to both parties.  Further, the proposed compromise comports with the ESI Agreement, which preserves the parties' "right to request

-11-

additional email custodians identified through discovery or additional search terms . . . ." Dkt. 51 at 1.   And, most importantly, the proposed compromise serves the important purpose of moving discovery in this case forward, in compliance with this Court's Scheduling Order.

Rather than engage on the merits of Apple's proposal, or explain how exchanging ESI for agreed-upon custodians could be objectionable, Plaintiffs simply ignored Apple's offer.  Instead, Plaintiffs initiated their own meet and confer process on other issues and repeated their demand that Apple produce ESI from *all* forty-nine custodians Plaintiffs identified.  Ex. AJ.  Such behavior does not represent a "good faith" effort to reach an agreement, but instead simply wastes the Court's resources.  *See, e.g.*, *Soc. Sampling, Inc. v. Dennis Garberg & Assocs., Inc.*, 2014 WL 12561595, at *2 (C.D. Cal. Aug. 21, 2014) (finding that parties did not make "a good-faith effort to resolve each of the discovery disputes" where they failed to make "reasonable compromises"); *Solomon v. Sheldon*, 2021 WL 826053, at *22 (E.D. Cal. Mar. 4, 2021) (sanctioning plaintiff where it was "clear to the Court that, had Plaintiff attempted to meet Defendant's objections in good faith, much of the current discovery dispute could have been resolved without the need for Court intervention").  Apple regrets having to bring this motion, but sees no other path forward given Plaintiffs' refusal to respond to well-intentioned and mutually beneficial overtures designed to advance ESI discovery.  Plaintiffs have not engaged in good faith negotiation on this issue, and ESI discovery has been halted for *months* as a result.

### 2.   Starting with Twelve Custodians is Reasonable and Efficient

Plaintiffs accuse Apple of "not comply[ing] with its obligations under the ESI Agreement," Ex. AH at 239, and call Apple's list of twelve custodians "woefully deficient," *id.*, yet offer few clues as to *why* they believe this to be the case.  "One would think that the relevant and proportional number of document custodians would depend entirely on the relevance and proportionality of the data they possess," *Karinski v. Stamps.com, Inc.*, 2020 WL 5084093, at *2 (C.D. Cal. July 21, 2020), yet Plaintiffs keep pushing Apple to identify other Apple employees who worked with Plaintiffs' ex-

-12-

employees or have been involved with the Apple Watch, even after Apple has made clear that the individuals it listed are the ones who are knowledgeable about and were involved with the core issues in this case.  Plaintiffs' position finds no support in the parties' ESI Agreement or case law, and is wholly contradicted by Plaintiffs' prior position that the parties should not use numerical limits in determining how many custodians are appropriate.  *See, e.g.*, Ex. E at 31.

Plaintiffs argue that the ESI Agreement "requires Apple to identify *all* of its custodians *with knowledge*," generally.  Ex. P at 86; *see* Ex. AJ (contending that ESI Agreement requires Apple to identify more than twelve custodians).  It does not.  Moreover, such an approach is exceedingly inefficient and burdensome.  Apple employs *hundreds* of engineers who work on the Apple Watch and hundreds of people who are involved in the marketing and sale of Apple's products.  Plaintiffs' demand for "all" custodians "with knowledge" of broad categories is nonsensical—such an identification would yield a meaningless list of names, the overwhelming majority of which are irrelevant to the "core issues or subjects in this case." ESI Agreement ¶ 1.[2]  Thus, the ESI Agreement necessarily contemplates that the parties will use their judgment to identify, out of the sea of individuals with possible "knowledge," those individuals "knowledgeable about *and who were involved with* the *core issues or subjects* in this case." *Id.*  As this Court has noted, "defendants have an obligation to search for and produce" a list of custodians "relevant and proportional to the needs of the case." *William Morris Endeavor Entm't, LLC v. Writers Guild of Am. W., Inc.*, 2020 WL 6162797, at *2 (C.D. Cal. June 8, 2020).  That is exactly what Apple has done.  If, "[a]fter searches are conducted and reviews occur," Plaintiffs find Apple's production lacking, "there will be specific

---

[2] Plaintiffs have confirmed that they do not expect Apple to identify everyone who has worked on the Apple Watch, Ex. P at 87, suggesting that they want Apple to choose some number between "all of [Apple's] custodians with knowledge" of the Apple Watch, *id.* at 86, and the number that Apple has already selected.  Plaintiffs have offered no indication of what that number might be or how any such lines should be drawn.

information available to help the parties (and potentially the Court) consider whether additional custodians need to have their files searched." *Id.*; *see also* ESI Agreement at 1 (granting the parties "the right to request additional email custodians identified through discovery or additional search terms, and the right to request other discovery").

Discovery is not unbounded.  Reasonable limits are imposed in every case, consistent with the principles of relevance and proportionality.  Courts have consistently found the selection of custodians in numbers similar to Apple's to be reasonable—and indeed the norm.  For example, in *Alta Devices, Inc. v. LG Elecs., Inc.*—a trade secret case of similar scale to this one—the court found that "Alta Devices' demand for ESI discovery from 33 custodians is not proportional to the needs of this case," and limited the plaintiff's list to "no more than *10* LGE custodians."  2019 WL 8757255, at *1 (N.D. Cal. Feb. 20, 2019) (emphasis added).  The court further noted that "it appears that several of the proposed LGE custodians are on Alta Devices' list because they expressed interest in or requested information, and not because there is a factual basis to believe they actually obtained, used, or disclosed Alta Devices' trade secret information. . . ."  *Id.*  Similarly here, many of the forty-nine individuals on Plaintiffs' list of Apple custodians were included solely because they used to work for Plaintiffs and at some point thereafter worked at Apple—not because there is a factual basis to believe they actually obtained, used, or disclosed the alleged trade secrets at issue in this case.

Likewise, in *Nevro Corp v. Bos. Sci. Corp.*, the court found the defendant's list of "*7* custodians and 7 search terms per custodian . . . appropriate," and rejected the plaintiff's attempt to add six custodians where the plaintiff did not show "a distinct need based on the size, complexity, and issues in this case," or how it would be unfairly prejudiced by the defendant's existing list.  2017 WL 2687806, at *3 (N.D. Cal. June 22, 2017) (emphasis added).

Similarly, in *Bulletin Mktg. LLC v. Google LLC*, the court rejected the plaintiff's argument that Google's list of *eight* custodians was "too limited and omit[ted] custodians who are likely to have responsive documents," where Google represented that its list

-14-

included the "employees substantively responsible for the subject matter" at issue.  2018 WL 6718604, at *2 (N.D. Cal. Dec. 21, 2018).

And in *Handloser v. HCL Am., Inc.*, the court rejected the plaintiff's argument "that the court should order discovery of all five [additional] ESI custodians because they are likely to have relevant evidence," where the plaintiffs "provide[d] essentially no explanation for why additional ESI discovery is warranted," "assert[ed] only that these custodians had 'hiring/staffing roles' in the relevant departments," and "[t]he Court [could] not discern why plaintiffs expect to discover information from these . . . custodians that differs from discovery they have already obtained from the other 16 custodians."  2020 WL 7405686, at *2–3 (N.D. Cal. Dec. 17, 2020); *see also Nat. Alternatives Int'l, Inc. v. Hi-Tech Pharm., Inc.*, 2017 WL 3668738, at *1 (S.D. Cal. May 8, 2017) (ESI order limiting ESI production requests to a total of **ten** custodians per producing party); *Fortinet, Inc v. SRI Int'l, Inc.*, 2013 WL 12144119, at *2 (N.D. Cal. Mar. 27, 2013) (same); *Neustar, Inc. v. F5 Networks, Inc.*, 2013 WL 5711979, at *2 (N.D. Cal. Oct. 17, 2013) (limiting parties to **five** custodians); *Radio Music License Comm., Inc. v. Glob. Music Rights, LLC*, 2020 WL 7636280, at *4 (C.D. Cal. Jan. 2, 2020) (rejecting plaintiff's request to expand list of custodians from **ten** to **thirty two** as "not proportional to the needs of the case").

Many courts have adopted default limits on ESI custodians *lower* than the twelve custodians per side Apple has proposed in this case.  For example, the Northern District of California's Model Stipulation & Order regarding Discovery of Electronically Stored Information for Patent Litigation stipulates that "[e]ach requesting party shall limit its email production requests to a total of **five** custodians per producing party for all such requests."  Ex. Z ¶ 10 (emphasis added); *see also DCG Sys., Inc. v. Checkpoint Techs., LLC*, 2011 WL 5244356, at *1 (N.D. Cal. Nov. 2, 2011) (holding that "[t]hese restrictions are designed to address the imbalance of benefit and burden resulting from email production in most cases," and that "generally, the production burden of expansive e-requests outweighs their benefits").  The Federal Circuit's E-Discovery Model Order

-15-

likewise limits email production requests to *five* custodians per party.  Ex. AA at 2 & ¶ 10 (noting that "[r]outine requests seeking all categories of Electronically Stored Information often result in mass productions of marginally relevant and cumulative documents," the burden of which generally "outweighs the minimal benefits of such broad disclosure").  The Southern District of California similarly publishes a model ESI order limiting each requesting party's document custodians to *ten*.  *See* Ex. Y ¶ 6.

Plainly, neither the ESI Agreement nor relevant case law support Plaintiffs' position that moving forward with twelve custodians at this point is inappropriate, or that discovery cannot go forward until the parties finalize the precise number and identity of all ESI custodians ultimately to be searched in this case.  As this Court has explained, that is not how discovery works.

### 3.   Plaintiffs' Insistence on Nearly Fifty Custodians Is Demonstrably Not Proportional to the Needs of the Case

Plaintiffs' insistence that Apple search the ESI of forty-nine custodians up front is improper and unduly burdensome at this stage in the case, especially because many of Plaintiffs' proposed custodians are demonstrably irrelevant.

First, many courts have recognized what the ESI Agreement makes clear, and what Apple has attempted to communicate to Plaintiffs time and again:  parties are not obligated to identify up front every individual with tangential knowledge of potentially relevant information.  Rather, the parties are free to seek ESI from additional custodians if appropriate after initial rounds of ESI production, and that is exactly the process Apple has proposed.  For example, in *William Morris Endeavor Ent.*, 2020 WL 6162797, at *2, the court found that a review of documents produced by the parties' identified custodians would provide "specific information available to help the parties (and potentially the Court) consider whether additional custodians need to have their files searched."  The court continued:  "At present, however, these particulars are not known, and . . . further development of facts are necessary before the issues about number of custodians to be searched . . . are concrete enough for judicial review."  *Id.*  Numerous courts have taken

-16-

1    this common-sense approach. *See, e.g.*, *Bulletin Mktg.*, 2018 WL 6718604, at *2 ("If it

2    later becomes apparent that the eight agreed-upon custodians do not have responsive

3    documents, or if Bulletin Marketing develops evidence that other custodians' files should

4    also be searched, Bulletin Marketing should first confer with Google to expand the list of

5    custodians and, if necessary, seek an order compelling a search of additional custodians'

6    files."); *Nevro Corp.*, 2017 WL 2687806, at *3 ("If, after reviewing emails produced by

7    these seven custodians Nevro believes it still lacks relevant information, or discovers

8    information that will allow Nevro to establish the additional information is proportional to

9    the needs of the case, the parties may meet and confer to discuss increasing the number of

10   custodians and/or search terms, the proportionality of the request to the needs of the case,

11   and which party shall bear all reasonable costs caused by such additional discovery.").

12   Second, even if Apple were obligated to identify as custodians all individuals with

13   tangential knowledge of potentially relevant information (it is not), Plaintiffs' list of forty-

14   nine custodians is still demonstrably overbroad.  Plaintiffs continue to insist that Apple

15   search the ESI of certain of their former employees who work or have worked at Apple,

16   *see* Ex AF; Ex. V at 130; Ex. W at 142; Ex. T at 108; Ex. P at 86, but ESI discovery is

17   limited to those individuals for which the plaintiff has a "factual basis to believe" have

18   relevant information.  *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 8757255, at *1 (N.D.

19   Cal. Feb. 20, 2019).[3]  Plaintiffs have provided no other reason for identifying these ex-

20   employees other than that they used to work for Plaintiffs.  *See* Ex. R; *see generally ELT

21   Sight, Inc. v. EyeLight, Inc.*, 2020 WL 7862134, at *16 (C.D. Cal. Aug. 28, 2020)

22   (collecting cases rejecting such an inevitable disclosure theory).  Plaintiffs even admit

23   there are no allegations about any of these individuals, *see* Dkt. 296-1 ¶¶ 9–25, 223–267.

24   Thus, there is no basis to allege that they are "knowledgeable about and were involved

25   ─────────────────

26   [3] Apple has listed the only former employee that is relevant to Plaintiffs' claims and for which Apple has their respective email files, i.e., Michael O'Reilly.  *See* Ex. Q.  Plaintiffs

27   have no basis to assert that Apple should have listed any other of Plaintiffs' former employees, since none of them have knowledge relevant to the issues in this case.

28

-17-

with the core issues or subjects of this case." ESI Agreement ¶ 1.

Finally, the production of ESI from forty-nine custodians would be unduly burdensome. There is no question that collecting ESI from almost fifty custodians will cost Apple a substantial sum—*at least* three times its currently anticipated costs for the twelve agreed-upon custodians. Apple is ready and willing to produce ESI from those custodians who are "knowledgeable about and were involved with the core issues or subjects of this case." *Id.* Plaintiffs should follow the ESI Agreement—and the law—and wait until "specific information [is] available" from an initial ESI production "to help the parties . . . consider whether additional custodians need to have their files searched." *William Morris Endeavor Entm't*, 2020 WL 6162797, at *2.

\*   \*   \*

Plaintiffs' insistence that Apple search the files of forty-nine custodians has no support in the ESI Agreement or the law. Rather, the ESI Agreement, the law, and model ESI orders from California and other federal courts demonstrate that Apple's proposal is reasonable and appropriate at this stage. Apple asks the Court to compel Plaintiffs to adopt the mutually beneficial compromise outlined herein to move ESI discovery forward.

### III.  PLAINTIFFS' POSITION

Apple asks the Court to "order Plaintiffs to proceed with ESI discovery for twelve custodians per side, without prejudice to either side's ability to seek ESI from additional custodians later, if reasonable and appropriate." Jt. Stip. at 2. But Plaintiffs are already proceeding with searching the custodians that Apple identified ***and more*** because Plaintiffs do not believe twelve custodians satisfies ***either*** party's obligations. Far from standing in the way of ESI discovery, Plaintiffs are moving forward as expeditiously as possible. Rather than compel Plaintiffs to search for ESI, Apple is actually seeking a protective order to ***limit*** the discovery that ***Apple*** is obligated to provide. But Apple has not attempted to meet its "heavy burden" of a protective order.

As demonstrated below, Plaintiffs have been trying to move ESI discovery forward for ***six months***. After the parties exchanged requested custodians and search terms,

-18-

Plaintiffs expected the parties to meet and confer in good faith on custodians and search terms to prioritize discovery and minimize burden. Rather than proceed, Apple refused to discuss anything other than Apple's unilateral demand to limit the number of custodians.

Apple's arbitrary limits would cause great prejudice. First, Apple's approach would exclude numerous relevant custodians. Second, Apple demands that Plaintiffs agree that Apple should search only twelve custodians at this time and that Plaintiffs select those *Apple* custodians to search even though Apple refuses to provide hit counts and other information necessary for Plaintiffs to make an informed decision. Third, Apple demands the parties proceed with searching, reviewing, and producing documents on those twelve custodians *before* Plaintiffs could even *ask* for additional searching. Fourth, Apple asserts that it will not have to search more custodians unless *Plaintiffs* prove additional discovery is necessary. Finally, Apple suggests the parties could conduct multiple phases of ESI discovery, but made sure there is no time left in the schedule for more than one phase. Apple's suggestion of phased searching is thus illusory because Apple proposes no extension of dates that would be necessary for such phases.

Apple's approach thus rewards Apple with an artificial limit on Apple's discovery, without Apple having to meet its "heavy burden" to obtain a protective order. The Court should not permit Apple to benefit from its own refusal to engage with Plaintiffs regarding ESI custodians and search terms. The Court should deny Apple's motion and order Apple to conduct such a reasonable search under the Federal Rules.

### A.   Factual Background

Apple's "factual background" is revisionist history. Contrary to Apple's assertion, Plaintiffs—not Apple—initiated these discussions and have been attempting to move ESI discovery forward. Apple suggests that its October 17 letter was the beginning of this dispute, Jt. Stip. at 5, but omits that it was responding to Plaintiffs' October 1 request to begin ESI discovery. Apple also ignores that its October 17 letter actually argued ESI

discovery was "premature and inappropriate." Ex. D at 5.[4]  Apple then omits multiple letters from Plaintiffs and responses to Apple's letters.  Plaintiffs ordinarily would not burden the Court with such a lengthy factual background, but are compelled to do so to correct the record.

- *October 1, 2020* - Plaintiffs wrote Apple regarding its failure to provide discovery and requested the parties disclose potential ESI custodians to each other.  Ex. 1 at 5.

- *October 17, 2020* – Apple asserted "the exchange of custodians at this stage in the case is *premature and inappropriate*." Ex. D at 5.  Despite Plaintiffs have already provided their Section 2019.210 disclosure, Apple argued the disclosure was not sufficient to begin discovery.  Apple also argued that Plaintiffs had not adequately responded to Apple's discovery and "Apple has not yet filed an answer." *Id.*  Apple also argued the parties should agree on a custodian limit. *Id.*

- *November 16, 2020* – Plaintiffs wrote again regarding Apple's failure to provide discovery and again asked to begin ESI discovery.  Ex. E.  Plaintiffs explained they had provided an adequate Section 2019.210 disclosure[5] and reminded Apple that it previously agreed not to "use the fact that it has not yet [a]nswered as a basis for refusing to provide or delaying providing discovery." *Id.* at 4.  Plaintiffs explained the ESI agreement does not limit the number of custodians. *Id.*

- *November 25, 2020* – Apple argued "it would be inefficient and unduly burdensome to proceed with exchanging custodians and ESI until the full scope of the case has been crystallized . . . ."  Ex. F at 4.  Apple offered to "begin the stipulated process of

---

[4] All citations to lettered exhibits in Plaintiffs' sections are to the exhibits attached to the Declaration of Brian Andrea, filed herewith.  All citations to numbered exhibits in Plaintiffs' sections are citations to exhibits attached to the Declaration of Adam B. Powell, filed herewith.  All emphasis in Plaintiffs' sections is added unless otherwise noted.

[5] Despite Apple labeling Plaintiffs' disclosure as "woefully deficient," Dkt. 259-1 at 7-8, this Court later confirmed the disclosure was completely sufficient, Dkt. 279.

negotiating search terms and custodians" *if* the parties agreed on a custodian limit, which Apple already knew was not acceptable to Plaintiffs. *Id.*

- *December 1, 2020* – At Plaintiffs' request, the parties met and conferred on various discovery disputes, including the ESI agreement. Ex. H.

- *December 2, 2020* – Apple demanded the parties agree to limit discovery to eight custodians per side and argued additional discovery was appropriate only if "good cause exists to exceed the agreed limitation." Ex. G.

- *December 6, 2020* – Plaintiffs asserted "the parties should begin the stipulated process to agree on search terms and custodians outlined in the ESI Order." Ex. H at 3.

- *December 30, 2020* – Plaintiffs wrote again regarding Apple's failure to provide discovery and again asked to begin ESI discovery. Ex. I. Plaintiffs explained Apple's custodian limit was not consistent with the ESI agreement and asked the parties to disclose all potential custodians "who are knowledgeable about and were involved with the core issues or subjects in this case . . . ." *Id.* at 2-3. Plaintiffs suggested the parties exchange disclosures on January 15, 2021. *Id.* at 3.

- *January 13, 2021* – Apple refused to disclose more than eight custodians, asserting "to begin the stipulated process outlined in the ESI Order, the parties should discuss and attempt to agree upon a reasonable number of ESI custodians" and additional custodians could be added only upon a showing of "good cause." Ex. J at 3

- *January 22, 2021* – Plaintiffs served a joint stipulation seeking to move ESI discovery forward under the ESI agreement. Ex. 2; Ex. 3. Plaintiffs argued Apple's attempt to limit discovery to eight custodians was contrary to the ESI agreement and identified Apple custodians that Apple improperly excluded. Ex. 3 at 4-5.

- *January 25-28, 2021* – Apple convinced Plaintiffs to withdraw their joint stipulation by promising to comply with the ESI agreement. Ex. M at 1-2.

-21-

- ***February 5, 2021*** – Plaintiffs disclosed forty-six ***potential*** Masimo custodians.  Ex. N at 2-3.[6]  Apple self-limited its disclosure to just ***eight*** potential Apple custodians—the precise number it had proposed as a limitation two months earlier.  Ex. O at 3.

- ***February 8-10, 2021*** –Plaintiffs explained Apple's disclosure was deficient because it excluded custodians that Plaintiffs had already identified.  Ex. O at 2.  Plaintiffs again asked Apple to comply with its obligations to disclose all potential custodians that met the definition in the ESI agreement, just as Plaintiffs had done.  Ex. P.[7]

- ***February 12, 2021*** – Apple agreed to add two missing custodians that Plaintiffs identified and one additional custodian.  Ex. Q at 1-2.  Apple also represented for the first time that it could not add two individuals—including Marcelo Lamego himself—because Apple had destroyed their emails and other files.  *Id.* at 2.

- ***February 12-24, 2021*** – The parties exchanged additional emails, but were unable to resolve their dispute regarding the unilateral limit Apple placed on custodians.  Plaintiffs served a second joint stipulation to move ESI discovery forward.  Ex. 4.[8]

- ***March 5, 2021*** – The Court declined to "intervene at this time in a dispute over the interpretation of the parties' agreement . . . ."  Dkt. 318 at 2.  However, the Court

---

[6] Apple's portion of its joint stipulation acts as though Plaintiffs did something improper by disclosing forty-six potential custodians.  Jt. Stip. at 6.  But those were ***Plaintiffs'*** witnesses that ***Apple*** may want to search.  Far from showing Plaintiffs did something improper, Plaintiffs' full and complete disclosure shows that Plaintiffs are complying with their discovery obligations in good faith.

[7] Contrary to Apple's assertions, Plaintiffs did not "reluctantly" agree to provide information on each custodians.  Jt. Stip. at 6.  In fact, Plaintiffs told Apple "at the very beginning of the call" that they would provide such information.  Ex. P at 3.  Plaintiffs simply noted that such an exchange would not resolve the parties' fundamental dispute about Apple's failure to ***disclose*** a full and complete list of ***potential*** ESI custodians.  *Id.*

[8] Apple faults Plaintiffs for the timing of their email and joint stipulation on February 24.  Jt. Stip. at 7.  But Plaintiffs merely confirmed the parties had reached an impasse on an issue that they had been discussing for many months and then served the joint stipulation.  Apple's response confirmed the impasse.  *See* Ex. AC at 1.

"note[d] that all parties will be bound by their agreements, representations to opposing counsel, and representations to the Court, and are placed on notice that failure to do so or any knowing failure to identify in a timely manner all appropriate custodians as part of the iterative, good faith discovery process may result in a future order excluding evidence or other consequences." *Id.*

- ***March 5-11, 2021 –*** The parties agreed to exchange lists of custodians and search terms they wanted the opposing side to search.  Apple added one additional individual to its disclosure, bringing the total to twelve.  Ex. AD.

- ***March 12, 2021*** – Apple identified twenty-two custodians for Plaintiffs to search and Plaintiffs identified forty-nine custodians for Apple to search.  Ex. AE; Ex. 5.

- ***March 17-23, 2021*** – Apple provided its position on numerous aspects of the parties' dispute.  Ex. AG.  Far from "ignoring" Apple's proposal, as Apple asserts, Jt. Stip. at 9, Plaintiffs responded to every part of Apple's letter just four business days later, Ex. AH.  Apple responded by again demanding the parties limit their searches to just twelve custodians without addressing Plaintiffs' arguments.  Ex. AI.

- ***March 25, 2021*** – Contrary to Apple's assertion that Plaintiffs refused to respond to Apple's March 23 email, Jt. Stip. at 9, Plaintiffs responded just two days later, Ex. AK at 2.  Plaintiffs asked Apple to discuss all topics "not just the topics that Apple now wants to discuss." *Id.*  Because Apple appeared intent on limiting its search, Plaintiffs also served a L.R. 37-1 letter requesting a meet and confer.  Ex. AJ.

- ***March 26-28, 2021*** – Apple accused Plaintiffs of delay and refusing to meet and confer.  Ex. AL at 2.  Plaintiffs explained they were ready to confer and again asked Apple to discuss all relevant issues.  *Id.* at 1-2.  Plaintiffs also explained they had already told Apple that they would search the custodians that Apple identified. *Id.* at 1.

- ***March 29, 2021*** – The parties met and conferred.  Far from declining to discuss Apple's proposal as Apple asserts, Jt. Stip. at 10, Plaintiffs discussed Apple's proposal and asked Apple to discuss other related issues, Ex. 6 at 2.  Apple declined and

demanded Plaintiffs agree on the call that Apple could limit its search to only twelve custodians and demanded Plaintiffs identify those twelve custodians on the call. *Id.*

- *March 29-30, 2021* – The parties summarized their positions as to what occurred at the meeting. Ex. AM; Ex. 6. Plaintiffs asked Apple to clarify the relief it was seeking because Plaintiffs already agreed to perform Apple's requested search (and more) and nothing stopped Apple from searching its documents. Ex. 6 at 2. Apple responded that it would "ask the Court to compel Plaintiffs to proceed with ESI discovery on twelve custodians per side, without prejudice to either side's ability to pursue ESI from additional custodians in the future." Ex. 6 at 1. Apple promised to provide its position on the remaining portions of the parties' dispute, *id.*, but did not immediately do so.

- *March 31, 2021* – Apple served the present joint stipulation claiming it seeks to compel ESI discovery, when it actually seeks to limit such discovery. Ex. 7 at 1.

- *April 1, 2021* – Plaintiffs wrote to Apple explaining they did not understand what relief Apple could possibly be moving to compel because "Plaintiffs are already searching the custodians that Apple identified and Apple is free to search its own custodians." Ex. 8 at 2. Plaintiffs asked Apple to provide a proposed order, *id.*, which Apple provided on April 2, 2021, *id.* at 1.

**B.    Argument**

Plaintiffs are already collecting and searching more than the custodians requested by Apple. Thus, Apple actually seeks to *limit* discovery that *Apple* provides rather than *compel* Plaintiffs to conduct discovery. However, Apple avoids calling this a motion for protective order, which would expose *Apple's* attempt to block discovery. Apple has not attempted to meet its burden to show discovery should be limited and does not even recite the legal standard to grant its requested limitation.

This Court has previously set forth the correct standard: "A party seeking a protective order has a 'heavy burden' of showing why discovery should be limited." *Nguyen*, 2019 WL 4579259, at *3. "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule 26(c) test.'" *Id.* (quoting

-24-

*Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004)).  "[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections."  *Id.* (quoting *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006)). Apple cannot meet that burden.

### 1.     Limiting Apple's Search To Just Twelve Custodians Is Not A "Reasonable Search"

Apple's insistence that it will search just twelve custodians is not reasonable. Contrary to Apple's suggestion, courts routinely order parties to search 50 or more custodians in large disputes like this case.  Indeed, this Court recently determined that **_52_** custodians was appropriate in a false claims case against a large pharmaceutical company. *See U.S. v. Allergan, Inc.*, 2021 WL 969215, at *2 (C.D. Cal. Mar. 1, 2021).  Another court ordered a defendant to search **_83_** custodians because the case was a large antitrust dispute.  *Kleen Prods. LLC v. Packaging Corp. of Am.*, 2012 WL 4498465, at *15 (N.D. Ill. Sept. 28, 2012).  Another court found **_76_** custodians appropriate in a case where the defendant had devoted substantial "resources and personnel" to the disputed practice.  *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5055241, at *4 (D.N.J. Aug. 21, 2015).  Another found **_60_** custodians was reasonable in a case with $70 million at stake.  *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 2014 WL 806122, at *7-8 (D. Kan. Feb. 28, 2014).  Another found that **_50_** custodians with broad search terms yielding 493 gigabytes of information was reasonable because the services at issue generated $7 billion dollars in revenue.  *John B v. Goetz*, 879 F. Supp. 2d 787, 882, 883-84 (M.D. Tenn. 2010); *see also Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 543 (N.D. Cal. 2009) (parties stipulated to 140 custodians).

Here, Apple admits it "employs *hundreds* of engineers who work on the Apple Watch and hundreds of people who are involved in the marketing and sale of Apple's products."  Jt. Stip. at 13 (emphasis in original).  Moreover, the Apple Watch is the

-25-

primary driver of a division with revenues of $13 billion *per quarter*.[9]  Thus, this case involves an extremely large defendant, "hundreds" of Apple employees, and potentially ***billions*** of dollars in dispute.  Twelve custodians is woefully deficient.

Indeed, even courts that impose more limited restrictions still allow far more than the paltry twelve custodians that Apple proposes.  *See Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, 331 F.R.D. 194, 198 (D.D.C. 2019) (finding that 34 custodians was reasonable); *Oracle Am., Inc. v. Google Inc.*, 2015 WL 7775243, at *1-2 (N.D. Cal. Dec. 3, 2015) (granting plaintiff's request to search 37 custodians).

Though Apple failed to disclose all potentially relevant ESI custodians pursuant to the ESI agreement, Plaintiffs reviewed Apple's documents and were able to identify individuals that appear to possess responsive and non-duplicative information. While Plaintiffs identified many custodians that Apple impermissibly excluded, Plaintiffs lack knowledge to identify ***all*** relevant Apple custodians.  For example, Apple produced some documents regarding Marcelo Lamego (Cercacor's former Chief Technical Officer), so Plaintiffs were able to identify individuals that worked with Lamego.  However, Apple did not produce documents regarding Michael O'Reilly (Masimo's former Chief Medical Officer), so Plaintiffs have not been able to identify other individuals that worked with O'Reilly.  Apple should have disclosed such individuals pursuant to the ESI agreement instead of trying to flip the burden and force Plaintiffs to identify individuals that Apple had excluded.  Below is an explanation of the relevance for Apple custodians that Apple failed to identify and Plaintiffs were able to identify so far:

- ***Dong Zheng*** – . He likely has technical

[9]    *See*    https://www.apple.com/newsroom/pdfs/FY21%20Q1%20Consolidated%20Financial%20Statements.pdf

-26-

documents relating to the Accused Products and the implementation of Plaintiffs' trade secrets, ██████████████████████████ responsive to many of Plaintiffs' RFPs. *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-79, 83-85, and 181-184.

- **Louis Bokma** – ████████████████████████████████████
████████████████████████████. He likely has technical documents relating to the Accused Products and the implementation of Plaintiffs' trade secrets, ████████████████████ responsive to many of Plaintiffs' RFPs. *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-79, 83-85, 181-184.

- **Akin Kestelli** – ████████████████████████████████████
██████████████████████████████████████. He likely has technical documents relating to the Accused Products and the implementation of Plaintiffs' trade secrets, responsive to many of Plaintiffs' RFPs. *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-79, 83-85, and 181-184.

- **Jack Fu** – ██████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████. He likely has technical documents relating to the Accused Products and the implementation of Plaintiffs' trade secrets, responsive to many of Plaintiffs' RFPs. *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 70-79, 83-85, 181-184, 187-191, 193-197, and 208-213.

- **James Foster** – ████████████████████████████████████
██████████████████████████████████████. He likely has technical documents relating to the Accused Products and the implementation of Plaintiffs' trade secrets, responsive to many of Plaintiffs' RFPs. *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-85, 101, 105, 126, 160-161, 171, 181-184.

- **Ueyn Block** – ██████████████████████████████████████
██████████████████████████. He was the custodian of *175* technical documents Apple produced and likely has additional technical documents relating to the Accused Products and the implementation of Plaintiffs' trade secrets, ██████

-27-

1   ████████████████████████████████, responsive to many of Plaintiffs'

2   RFPs.  *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-79, 83-85, and 187-191.

3   • ***Ravi Narasimhan*** – ████████████████████████████████████████

4   ██████████████████████████████████████████████████████████████

5   ██████████████████████████████████████████████████████████████

6   ██████.  He likely has technical documents relating to the Accused Products and the

7   implementation of Plaintiffs' trade secrets, responsive to many of Plaintiffs' RFPs.

8   *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-79, 83-85, 181-184, 187-191, and 208-213.

9   • ***Lynn Youngs*** – ██████████████████████████████████████████████

10   ██████.  She likely has technical documents relating to the Accused Products and

11   communications with Lamego while he was employed by Plaintiffs, responsive to

12   many of Plaintiffs' RFPs.  *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-79, 83-85, 217.

13   • ***Graham Townsend*** – ████████████████████████████████████████

14   ██████████.  He likely has technical documents relating to the Accused Products,

15   responsive to many of Plaintiffs' RFPs.  *See, e.g.*, Ex. 13 at RFPs 66, 71-77, and 83.

16   • ***Todd Whitehurst*** – ██████████████████████████████████████████

17   ██████████████████████████████████████████████████████████████

18   ███████████████████████████████████████.  He likely has technical

19   documents relating to the Accused Products and the implementation of Plaintiffs' trade

20   secrets, responsive to many of Plaintiffs' RFPs.  *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66,

21   71-85, 101, 105, 126, 160-161, 171, 181-184, 187-191, 193-197, and 208-213.

22   • ***Prashanth Holenarsipur*** – ████████████████████████████████████

23   ███████████████████████████████████.  He likely has at least technical

24   documents relating to the Accused Products and the implementation of Plaintiffs' trade

25   secrets, responsive to many of Plaintiffs' RFPs.  *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66,

26   71-79, 83-85, 181-184, 187-191, 193-197, and 208-213.

27   • ***Daniel Culbert*** – ██████████████████████████████████████████████

28   ████████████████████████████████████████.  He

-28-

likely has technical documents relating to the Accused Products and the implementation of Plaintiffs' trade secrets, responsive to many of Plaintiffs' RFPs. *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-79, 83-85, 181-184, 187-191, 208-213.

- ***Erno Klaasen*** – ███████████████████████████████████ ███████████████████████████████████████. He likely has technical documents relating to the Accused Products and the implementation of Plaintiffs' trade secrets, responsive to many of Plaintiffs' RFPs. *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-79, 83-85, 181-184, 187-191, 193-197, and 208-213.

- ***Jennifer Kong*** – ██████████████████████████████████ ██████████████████████████████. She likely has technical documents relating to the Accused Products and the implementation of Plaintiffs' trade secrets, ███████████████████████████, responsive to many of Plaintiffs' RFPs. *See, e.g.*, Ex. 13 at RFPs 47-49, 66, 71-79, 83, 85, and 187-191.

- ***Benjamin Lyon*** – ███████████████████████████████████ ████████████████████. He likely has technical documents relating to the Accused Products, Apple's policies, and the implementation of Plaintiffs' trade secrets, responsive to many of Plaintiffs' RFPs. *See, e.g.*, Ex. 13 at RFPs 49, 66, 71-77, 83, 108, 122-125, 187-191, 193-197, 224-225.

- ***Tao Shui*** – ████████████████████████████████████████ ██████. He is the custodian of about ***30*** technical documents that Apple produced and likely has more documents relating to the Accused Products and the implementation of Plaintiffs' trade secrets, responsive to many of Plaintiffs' RFPs. *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-79, 83-85, 181-184, 187-191, 193-197, and 208-213.

- ***Serhan Isikman*** – ███████████████████████████████████ ██████████████████████. He likely has technical documents relating to the Accused Products and the implementation of Plaintiffs' trade secrets, ████████████████████████████, responsive to many of Plaintiffs' RFPs. *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-79, 83-85, and 181-184.

-29-

1    • **Anant Rai** – ███████████████████████████████████████. He likely has

2    technical documents relating to the Accused Products and the implementation of

3    Plaintiffs' trade secrets, ███████████████████████ responsive to

4    many of Plaintiffs' RFPs. *See, e.g.*, Ex. 13 at RFPs 63-66, 71-77, 83-84, and 181-184.

5    • **Thayne Miller** – ██████████████████████████████████. He likely has

6    technical documents relating to the Accused Products and the implementation of

7    Plaintiffs' trade secrets, responsive to many of Plaintiffs' RFPs. *See, e.g.*, Ex. 13 at

8    RFPs 47-49, 63-66, 71-79, 83-85, 181-184 and 208-213.

9    • **Jay Blahnik** – ████████████████████████████████████████

10   ███████████████████████████. He likely has technical documents

11   relating to the testing of the Accused Products and the desirability of features,

12   responsive to many of Plaintiffs' RFPs. *See, e.g.*, Ex. 13 at RFPs 80-81, 87, 101-107,

13   109, 126, 159-160, 171, and 198-202.

14   • **John Zhong** – ████████████████████████████████████. He likely has

15   technical documents relating to the Accused Products and the implementation of

16   Plaintiffs' trade secrets, responsive to many of Plaintiffs' RFPs. *See, e.g.*, Ex. 13 at

17   RFPs 71-79, 83-85, and 187-191.

18   • **Nick Allec** – ██████████████████████████████████████████████

19   ████. He likely has technical documents relating to the Accused Products and

20   implementation of Plaintiffs' trade secrets, ████████████████████████

21   ██████████ responsive to many of Plaintiffs' RFPs. *See, e.g.*, Ex. 13 at RFPs 47-49,

22   66, 71-79, 83, 85, and 187-191.

23   • **Vivek Venugopal** – ███████████████████████████████████████

24   ███████████████████████████. He likely has technical documents relating to

25   the Accused Products and implementation of Plaintiffs' trade secrets, █████████

26   ███████████████████████████ responsive to many of Plaintiffs' RFPs.

27   *See, e.g.*, Ex. 13 at RFPs 47-49, 66, 71-79, 83, 85, and 187-191.

28   • **Guocheng Shao** – ███████████████████████████████████████

-30-

1  ███████████████████████████. He likely has technical documents relating to the

2  Accused Products and implementation of Plaintiffs' trade secrets, ████████████

3  ████████████████████████████ responsive to many of Plaintiffs'

4  RFPs.  *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-79, 83-85, 187-191, and 208-213.

5  • ***Matt Riedstra*** – ████████████████████████████████

6  █████████████. He likely has technical documents relating to the Accused Products

7  and the implementation of Plaintiffs' trade secrets, responsive to many of Plaintiffs'

8  RFPs.  *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-79, 83-85, and 181-184.

9  • ***Mathieu Charbonneau-LeFort*** – ███████████████████████

10  ████████████████. He likely has technical documents relating to the Accused

11  Products and the implementation of Plaintiffs' trade secrets, ██████████████

12  ████████████████████████ responsive to many of Plaintiffs'

13  RFPs.  *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-79, 83-85, 187-191, and 208-213.

14  • ***Justin Shi*** – ██████████████████████████████. He likely has

15  technical documents relating to the Accused Products and the implementation of

16  Plaintiffs' trade secrets, responsive to many of Plaintiffs' RFPs.  *See, e.g.*, Ex. 13 at

17  RFPs 47-49, 63-66, 71-79, 83-85, 187-191, and 193-197.

18  • ***Itaru Hiromi*** – █████████████████████████████████

19  ████████. He likely has technical documents relating to the Accused Products and the

20  implementation of Plaintiffs' trade secrets, responsive to many of Plaintiffs' RFPs.

21  *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-79, 83-85, 181-184, and 208-213.

22  • ***Kevin Wen*** – ████████████████████████████████████

23  ████████. He likely has technical documents relating to the Accused Products and the

24  implementation of trade secrets, responsive to many of Plaintiffs' RFPs.  *See, e.g.*, Ex.

25  13 at RFPs 47-49, 63-66, 71-79, 83-85, 181-184, 187-191, and 208-213.

26  • ***Sumbul Desai*** – ██████████████████████████████████. She

27  likely has at least documents relating to Apple's interactions with hospitals responsive

28  to many of Plaintiffs' RFPs.  *See, e.g.*, Ex. 13 at RFPs 70, 102-103, 198-207, 244, 246.

-31-

- **Cornelius Raths** – Former algorithm engineer for Masimo.  He is currently a senior data scientist at Apple.  He likely has technical documents relating to the Accused Products and the implementation of Plaintiffs' trade secrets, and documents authored by Plaintiffs' former employees, responsive to many of Plaintiffs' RFPs.  *See, See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-79, 83-85, 181-184, 187-191, 193-197, 208-213, 223, 226, 228, 230, 233- 235, and 239.

- **Haritha Haridas** – Former clinical research associate for Masimo.  She is currently Apple's Clinical Operations Project Manager.  She likely has documents relating to Apple's interactions with hospitals, and documents authored by Plaintiffs' former employees, responsive to many of Plaintiffs' RFPs.  *See, See, e.g.*, Ex. 13 at RFPs 70, 203-207, 223, 226, 228, 230, 233-235, 239, 244, and 246.

- **Inje Lee** – Worked on clinical research at Masimo.  He is currently involved in the design of studies related to the Apple Watch.  He likely has documents relating to Apple's interactions with hospitals, technical documents relating to the Accused Products and the implementation of Plaintiffs' trade secrets, and documents authored by Plaintiffs' former employees, responsive to many of Plaintiffs' RFPs.  *See, e.g.*, Ex. 13 at RFPs 70, 193-197, 203-207, 223, 226, 228, 230, 233-235, 239, 244, 246.

- **Pekka Talke** – Former consultant for Masimo who later consulted for Apple.  He likely has technical documents relating to the Accused Products and the implementation of Plaintiffs' trade secrets, and documents authored by Plaintiffs' former employees, responsive to many of Plaintiffs' RFPs.  *See, e.g.*, Ex. 13 at RFPs 47-49, 63-66, 71-79, 83-85, 181-184, 187-191, 193-197, 208-213, 223, 226, 228, 230, 233-235, and 239.

- **Mark Rollins** – ███████████████████████████████████████████████ ████████████████████████████████████████████.  He likely has financial documents responsive to many of Plaintiffs' RFPs.  *See, e.g.*, Ex. 13 at RFPs 51, 80-81, 101-103, 105-107, 109 126-127, 159-160, and 171.

- **Tim Cook** – CEO of Apple who recruited O'Reilly to leave Masimo and join Apple.

-32-

He makes high-level strategic decisions and discusses features of the Apple Watch at public presentations and on earnings calls.  He likely has documents relating to the hiring of Plaintiffs' employees, including O'Reilly, high-level strategies for the Accused Product, and damages, responsive to many of Plaintiffs' RFPs.  *See, e.g.*, Ex. 13 at RFPs 51, 80-81, 85, 101-103, 105, 108, 160, 171, 198-202, and 216.

As discussed above, Plaintiffs' requested custodians and search terms are highly likely to have documents responsive to numerous of Plaintiffs' RFPs. ███████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████.  Plaintiffs allege Lamego disclosed each of these techniques to Apple's employees.  Dkt. 296-1 ¶¶ 235-36, 238-41, 243-44, 255-56.  Apple argues it will search for responsive documents ***only*** through ESI custodian searches.  Ex. 14 at 1-2.  But Apple refuses to search ***any*** of the engineers that worked under Lamego.  Because Apple destroyed Lamego's files, Plaintiffs' ***only*** opportunity to obtain responsive documents is for Apple to search the files of engineers who worked with Lamego.

RFP 216 seeks all Apple communications with O'Reilly before he left Masimo.  Ex. 13 at 52.  Such correspondence is relevant to Apple inducing O'Reilly to disclose trade secrets and Apple's knowledge that it was using Plaintiffs' trade secrets.  Apple again argues it will search for responsive documents ***only*** through ESI custodian searches. Despite Plaintiffs alleging Apple's CEO, Tim Cook, helped recruit O'Reilly, Dkt. 296-1 ¶ 230, Apple refuses to search Mr. Cook's emails.  Ex. AG at 4.  Apple argues Mr. Cook is an "apex" witness.  But Apple's own cited authority explained the "apex" doctrine applies to "depositions" and "disagree[d] with [defendant] that simply because a prospective custodian happens to be a senior executive, such custodian is not subject to collection of responsive ESI."  *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 8757255, at *1 (N.D. Cal. Feb. 20, 2019).

RFPs 226, 230, and 233-235 seek documents showing that Plaintiffs' former

-33-

employees took Plaintiffs' information to Apple.  Ex. 13 at 54-55.  Such documents are obviously relevant to Plaintiffs' claim for misappropriation of trade secrets.  Apple again argues it will search for responsive documents *only* through ESI custodian searches (Ex. 14 at 1-2), but refuses to search former employees other than O'Reilly.

Plaintiffs also identified search terms tailored towards the issues discussed above. *See* Ex. AE at 2-3. ██████████████████████████████████████████ ██████████████████████████████████████. Plaintiffs' search terms also target Plaintiffs' trade secrets discussed above, including ████████████████ ███████████████████████████████████ *Id.* Plaintiffs included search terms designed to locate Masimo/Cercacor documents, Lamego and O'Reilly's actions at Apple, and Plaintiffs' sales and marketing trade secrets. *Id.* Plaintiffs also included search terms targeted towards the disputed patents, which are not at issue here since Apple agreed to search most of the named inventors. *Id.* at 3.  Finally, Plaintiffs provided a targeted set of terms for Mr. Cook. *Id.*  Apple has not argued any of Plaintiffs search terms are overbroad or that Plaintiffs proposed too many search terms. Indeed, Plaintiffs' search terms are comparable to many of Apple's search terms. *Compare id.* at 2-3 *with* Ex. 5 at 2-4.

Apple's limitation on discovery thus excludes many relevant documents from many relevant custodians.  Apple's proposal appears to prioritize high-level employees that Apple may want to testify while excluding other executives and low-level employees that worked with Lamego and likely have relevant documents.  That is inappropriate because "lower-level employees may possess important, relevant information which could reasonably lead to admissible evidence." *Kleen Prods.*, 2012 WL 4498465, at *15 (ordering defendant to search 83 custodians, including low-level employees).

Without expressly saying so, Apple is apparently seeking an order to excuse the normal "reasonable search" requirement in the Federal Rules and replace it with Apple searching just twelve custodians requiring Plaintiffs to make a showing that additional custodians are necessary.  But ESI procedures are intended to facilitate the reasonable

-34-

searches that are required under the Federal Rules, not be a vehicle for one party to circumvent its search obligations.   Apple should not be permitted to rely on ESI procedures to avoid conducting a reasonable search for responsive documents.

### 2.   Apple Has Not Met Its "Heavy Burden" To Limit Discovery

As discussed, Apple bears a "heavy burden" of "showing why discovery should be limited." *Nguyen*, 2019 WL 4579259, at *3.   Other courts have similarly rejected attempts to limit ESI custodians without making "a particular and specific demonstration of fact" to show how the additional searching is burdensome and likely to "return irrelevant data and/or duplicative data." *Black & Veatch*, 2014 WL 806122, at *8  (denying motion for protective order and finding 60 custodians reasonable); *see also Kleen Prods.*, 2012 WL 4498465, at *15  (finding 83 custodians reasonable because the defendant had "not established an undue burden to producing information from the additional custodians"); *Garcia Ramirez*, 331 F.R.D. at 198 (denying protective order because defendants "have not articulated sufficient specific facts to support their proportionality argument" with respect to additional custodians).

Here, Apple submits no evidence and has not attempted to meet its burden.  Apple does not submit Plaintiffs' discovery requests, much less show that twelve custodians is adequate to search for responsive documents.  Likewise, Apple does not attempt to show searching more than twelve custodians would be unduly burdensome.  Apple offers only attorney argument and attempts to blame Plaintiffs for supposedly offering "few clues" as to why twelve custodians is insufficient.  That is not true.  As discussed, Plaintiffs provided significant evidence that twelve custodians is artificially limited.

Apple faults Plaintiffs for "pushing Apple to identify other Apple employees who worked with Plaintiffs' ex-employees or have been involved with the Apple Watch" even though Apple "made clear" it already identified the individuals "who are knowledgeable about and were involved with the core issues in this case." Jt. Stip. at 13.  But Plaintiffs identified numerous individuals discussed above that Apple improperly excluded.  To take one example, the documents that Apple already produced show that Lamego worked with

-35-

1     Dong Zheng on ███████████████████████████████████. That is

2     obviously relevant to Plaintiffs' allegation that Lamego used and disclosed Plaintiffs'

3     ████████████████████████████. Zheng is the only custodian of these

4     documents because Apple destroyed Lamego's files.

5         Apple argues that Plaintiffs included "many" individuals "solely because they used

6     to work for Plaintiffs and at some point thereafter worked at Apple." Jt. Stip. at 14. That

7     is neither correct nor supported. Plaintiffs included only five former employees on their

8     list of Apple custodians to search and obtain hit counts.[10] The vast majority of custodians

9     are Apple employees who Plaintiffs have established good reason to believe were

10     involved in the core issues of this case as revealed by the limited documents Apple has

11     already provided. For example, in addition to Dong Zheng, discussed above, Akin

12     Kestelli, Louis Bokma, and Jack Fu are engineers who worked with Lamego and appeared

13     to have received Plaintiffs' trade secrets from Lamego.

14         Apple argues Plaintiffs' position in unsupported by the ESI agreement. Jt. Stip. at

15     13. But the opposite is true. Plaintiffs sought to move ESI discovery forward under the

16     ESI agreement, Dkt. 318, even moving to compel Apple's compliance with the agreement.

17     Thus, as this Court knows, Plaintiffs would be more than happy to proceed under the ESI

18     agreement. However, Apple seeks to impose limitations that are nowhere provided for in

19     the ESI agreement. Thus, Apple's requested limitation is not only unsupported by the ESI

20     agreement—it contradicts it. Regardless, because the parties were unable to reach a final

21     agreement, Apple must conduct a reasonable search under the Federal Rules.

22         Apple argues that it "employs *hundreds* of engineers who work on the Apple Watch

23     and hundreds of people who are involved in the marketing and sale of Apple's products."

24     Jt. Stip. at 13 (emphasis in original). But those facts show that twelve custodians is

25     insufficient. Contrary to Apple's hyperbole, Plaintiffs never took the position that Apple

26

---

27 [10] Unlike the list of custodians that Plaintiffs asked Apple to search, Plaintiffs' ***disclosure***
of potential custodians contained more former employees because Plaintiffs endeavored to
28 provide a complete disclosure of custodians that Apple may ask Plaintiffs to search.

must disclose all such individuals.  Jt. Stip. at 13 (Apple arguing Plaintiffs asserted Apple must identify "'all of its custodians with knowledge,' generally").  The quote that Apple relies on was shorthand in an email about prior discussions, and thus was taken out of context.  Plaintiffs  have always maintained that Apple should have complied with the ESI agreement by disclosing all individuals "who are knowledgeable about and were involved with the core issues or subjects in this case (e.g., the asserted patents, alleged misappropriation of trade secrets, the development, design and operation of the accused products, and sales, marketing and other damages-related information for the accused products)."  Dkt. 51 ¶ 1.  The documents Apple produced—and Apple's new assertion that it employs hundreds of people on the relevant projects—show that twelve custodians is not nearly enough.  Moreover, Apple's approach of refusing to even *disclose* clearly relevant individual and expecting *Plaintiffs* to identify missing *Apple* custodians flips the burden.  Apple should have disclosed its potential custodians.

Apple argues that Plaintiffs' requested ESI custodians are "unduly burdensome at this stage in the case" and that the parties should instead perform ESI searching in multiple rounds.  Jt. Stip. at 16.  But Apple provides no *evidence* to support that supposed burden.  *See Nguyen*, 2019 WL 4579259, at *3 (explaining that "general or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections").

Moreover, Apple knows that the "phased" approach it suggests is not feasible in this case.  Indeed, Apple itself relies on the close of discovery to argue the Court should adopt its proposal.  *See* Jt. Stip. at 2.  The parties do not have the luxury to perform the staged *multiple* rounds of ESI searching suggested by Apple's request to limit discovery. Adopting Apple's procedure would thus greatly prejudice Plaintiffs by running out the clock on discovery before Apple ever begins to comply with its discovery obligations. The parties need to move forward on all aspects of discovery now, which Plaintiffs are already doing by collecting and searching *more* than twelve custodians.

Apple cites several cases adopting the "phased" approach to discovery, but most did

-37-

1   so earlier in the case.  *See* Ex. 15 at 9 (*Bulletin Mktg.* close of fact discovery **over twenty**
2   **months** later); Ex. 16 at 3 (*William Morris* close of fact discovery **over five months** later).
3   In *Nevro Corp.*, the court had to extend the fact discovery deadline and the court was still
4   adjudicating email disputes **seven months** later.  Ex. 17 at 3, Ex. 18 at 1.[11]  Here, Apple
5   did not propose a revised schedule to permit its phased approach to searching, which
6   shows Apple hopes its limit will be final.

7        Apple also argues Plaintiffs' list of custodians is "overbroad" because Plaintiffs
8   asked Apple to search former employees for which Plaintiffs supposedly have no "factual
9   basis to believe" have relevant information.  Jt. Stip. at 14.  But Apple again provides no
10  supporting evidence.  *See Nguyen*, 2019 WL 4579259, at *3.  By contrast, Plaintiffs
11  provided substantial evidence showing why each of their proposed custodians is an
12  appropriate custodian.  Moreover, Plaintiffs asked Apple to search only five former
13  employees, each of which is directly relevant for the reasons discussed above.  Michael
14  O'Reilly is at the heart of Plaintiffs' misappropriation allegations.  The other four
15  individuals (Cornelius Raths, Haritha Haridas, Inje Lee, and Pekka Talke) were employees
16  or consultants working in relevant areas for Plaintiffs that also work or worked in relevant
17  areas for Apple.  Plaintiffs are not requesting that Apple search other former employees
18  that Apple has represented work in unrelated areas.

19       Finally, Apple argues that collecting ESI from Plaintiffs' proposed custodians
20  would be "unduly burdensome" because it would cost "*at least* three times [Apple's]
21  currently anticipated costs" to search twelve custodians.  Jt. Stip. at 18 (emphasis in
22  original).  But Apple again provides no supporting evidence.  *See Nguyen*, 2019 WL
23  4579259, at *3.  Apple has not explained what its current costs are or how those costs

24

25  _____
    [11] Apple also cites *ELT Sight, Inc. v. EyeLight, Inc.*, 2020 WL 7862134, at *16 (C.D. Cal.
26  Aug. 28, 2020), but that case merely rejected a preliminary injunction motion based on the
    inevitable disclosure doctrine.  That case said nothing about the appropriate number of
27  custodians.  Regardless, despite Apple's endless accusations, the Court already concluded
    "Plaintiffs are not relying on the doctrine of inevitable disclosure."  Dkt. 264 at 12.
28

-38-

would increase.  As discussed, the number of **documents** that need to be reviewed is more closely correlated with cost than **custodians** that need to be searched.  For example, reviewing one document from each of ten custodians would cost less than reviewing 1,000 documents from one custodian.  Rather than preemptively limit the number of custodians up front, the normal approach is to review hit counts to arrive at an appropriate and tailored number of **documents** to review.   That approach allows the parties to appropriately limit the burden while increasing accuracy.  Instead, Apple insists—with no evidence—that searching more than twelve custodians would be burdensome.

There is also no **undue** burden because the searching is proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1) (instructing courts to consider the "importance of the issues at stake," the "amount in controversy," the "parties' relative access to relevant information," the "parties' resources," the "importance of the discovery in resolving the issues," and "whether the burden or expense of the proposed discovery outweighs its likely benefit.")  As discussed above, only Apple has access to the discovery at issue, which is directly relevant and important to resolving this dispute.   The amount in controversy is large because the accused product (the Apple Watch) is the primary product in Apple's "wearables" division, which has revenues of $13 billion per quarter.[12] Moreover, Apple is worth $2 trillion and is the most valuable public company on earth, so it cannot show it lacks the resources to search.[13]  Surely, performing a reasonable search under the basic discovery obligations of the Federal Rules does not pose **undue** burden on Apple.  Indeed, Apple presents no evidence of burden.

### 3.    Apple's Cited Cases Do Not Support Its Position

As discussed above, courts routinely order parties to search 50 or more custodians in large disputes like this case.  *See supra* Section III.B.1.  In arguing otherwise, Apple

---

[12] https://www.apple.com/newsroom/pdfs/FY21%20Q1%20Consolidated%20Financial%20Statements.pdf.

[13] https://finance.yahoo.com/news/apple-could-reach-3-trillion-123537828.html.

JOINT STIP. RE APPLE'S MOT. TO COMPEL                    CASE NO. 8:20-cv-00048-JVS (JDEx)

relies almost entirely on cases from the Northern District of California, which has a unique "Model ESI Order" and procedure for patent cases that requires separate email RFPs and imposes tentative limits on searching such email RFPs.  *See* Ex. Z (Model Order); *Alta Devices.*, 2019 WL 8757255, at *1; *Nevro Corp v. Bos. Sci. Corp.*, 2017 WL 2687806, at *3 (N.D. Cal. June 22, 2017); *Bulletin Mktg. LLC v. Google LLC*, 2018 WL 6718604, at *1 (N.D. Cal. Dec. 21, 2018); *Fortinet, Inc v. SRI Int'l, Inc.,* 2013 WL 12144119, at *2 (N.D. Cal. Mar. 27, 2013); *Handloser v. HCL Am., Inc.*, 2020 WL 7405686, at *2-3 (N.D. Cal. Dec. 17, 2020); *Neustar, Inc. v. F5 Networks, Inc.*, 2013 WL 5711979, at *2 (N.D. Cal. Oct. 17, 2013); *DCG Sys., Inc. v. Checkpoint Techs., LLC*, 2011 WL 5244356, at *1 (N.D. Cal. Nov. 2, 2011).  Apple likewise cites model orders (Exs. Y and AA) that similarly provide unique procedures in patent cases.  As discussed, adopting those orders often leads to a "phased" approach, which is not feasible or what Apple actually seeks under the current schedule with just three months remaining in discovery. Regardless, unique procedures in patent cases in other jurisdictions have no bearing here. Nor could such cases and model orders show Apple met its "heavy burden" to limit discovery in this particular case.  *Nguyen*, 2019 WL 4579259, at *3.

Moreover, many of the Northern District of California cases cited by Apple found that the party seeking additional custodians made ***no showing*** that such custodians were appropriate.  *Alta Devices*, 2019 WL 8757255, at *1 (declining to include custodians "whose only known involvement in the matter is the setting up of a meeting, the expression of interest in a meeting or in obtaining information, or the negotiation of an NDA")[14]; *Nevro*, 2017 WL 2687806, at *3 (finding the party failed to show "how information from additional custodians would not be duplicative" and "how it would be proportionate to the needs of this case"); *Bulletin Mktg.*, 2018 WL 6718604, at *1

---

[14] Apple asserts *Alta Devices* was a "similar scale" as this case, but does not explain its position or cite any evidence.  Alta Devices had approximately 80 employees whereas Masimo has 2,000 employees.  Moreover, the *Alta Devices* case was resolved in 20 months whereas this case has been pending for 14 months and is not past the pleadings.

(concluding there was no evidence that additional custodians were likely to have relevant information); *Handloser*, 2020 WL 7405686, at *2-3 (party "provide[d] essentially no explanation for why additional ESI discovery is warranted"). While Plaintiffs do not bear the burden here, Plaintiffs still explained why each custodian is likely to have discoverable and non-duplicative information.

The few cases that Apple cites from outside the Northern District of California do not support its position. In *William Morris*, 2020 WL 6162797, at *2, the Court actually **declined** to set an appropriate "number of custodians" because there was "**no information** about who the custodians might be or how many (or what type of) responsive documents would be found in the files of the unnamed custodians." *Id.* Similarly, in *Radio Music License Comm., Inc. v. Glob. Music Rights, LLC*, 2020 WL 7636280, at *4 (C.D. Cal. Jan. 2, 2020), the Court concluded that documents from additional custodians would be "almost entirely duplicative." Apple cites two other cases, but both involved **stipulated agreements** to proceed with a set number of custodians. *Karinski v. Stamps.com, Inc.*, 2020 WL 5084093, at *2 (C.D. Cal. July 21, 2020) (parties **stipulated** to ten custodians and there was no reason to expand that number); *Nat. Alternatives Int'l, Inc. v. Hi-Tech Pharms., Inc.*, 2017 WL 3668738, at *1 (S.D. Cal. May 8, 2017) (**jointly requested** ESI order). The parties agreed to no such limit here.

As other courts have explained, "the selection of custodians is more than a mathematical count." *Kleen Prod.*, 2012 WL 4498465, at *15. "The selection of custodians must be designed to **respond fully** to document requests and to produce responsive, nonduplicative documents during the relevant period." *Id.* Plaintiffs have done precisely that by providing a well-supported list of custodians and search terms for Apple to search. Plaintiffs necessarily do not have all the information that Apple has, but have endeavored to propose a reasonable solution in view of Apple's refusal to disclose all potential custodians that fit the definition in the ESI agreement. The Court should reject Apple's proposal to search twelve custodians and order Apple to search at least the custodians identified by Plaintiffs.

-41-

### 4.    Plaintiffs Are Not Refusing To Proceed "Absent Agreement On Fifty Custodians"

Rather than arguing the merits, Apple once again devotes much of its brief to attempting to "black hat" Plaintiffs with a series of accusations suggesting Plaintiffs somehow stalled discovery unless Apple agreed to proceed on fifty custodians.  The record shows otherwise.  Plaintiffs are moving forward on ESI discovery by searching the twelve custodians that Apple identified *and more*.  However, Apple has attempted, and continues to attempt by this Motion, to impose a limit before it will proceed.

First, Apple claims Plaintiffs refused to "discuss reasonable limitations on the number of ESI custodians." Jt. Stip. at 11.  But Apple refers to Plaintiffs' request that the parties *disclose* all potential custodians.  That would not have controlled what custodians would actually be searched.  Plaintiffs asked Apple to follow the ESI agreement, which required the parties to disclose all potential custodians "who are knowledgeable about and were involved with the core issues or subjects in this case (e.g., the asserted patents, alleged misappropriation of trade secrets, the development, design and operation of the accused products, and sales, marketing and other damages-related information for the accused products)." *See* Ex. I at 2-3.  Nowhere did Plaintiffs refuse to move forward.  In fact, Plaintiffs are already doing so on a *larger* list than Apple requested.

Second, Apple claims Plaintiffs "reluctantly agreed" to Apple's demand to exchange information about the disclosed custodians and that Plaintiffs then provided no useful information in the exchange.  Jt. Stip. at 11.  But that concerned the disclosure of information about *Plaintiffs'* custodians.  Such a disclosure is irrelevant to whether Apple can limit its searching to just twelve of *Apple's* custodians.  Moreover, Apple's assertion is not true.  Plaintiffs readily provided information about each of the potential custodians that they identified at Plaintiffs.  Ex. P at 3; Ex. S at 4-5.

Third, Apple accuses Plaintiffs of refusing to move forward on "undisputed custodians" because that would "not resolve the parties' dispute." Jt. Stip. at 11.  Again, that assertion is not relevant to Apple's attempt to limit its searching to just twelve Apple

custodians.  The record also contradicts Apple's assertion.  As Plaintiffs have explained, there are no "undisputed custodians."  While Plaintiffs included Apple's twelve custodians on the list of potential custodians for which Plaintiffs would like hit-counts, Apple has not provided the information necessary for Plaintiffs to decide whether those custodians should be prioritized over others if discovery is ultimately limited.  Ex. 6 at 2.  Moreover, Plaintiffs did not refuse to move forward on ESI discovery because it would "not resolve the parties' dispute."  *See* Jt. Stip. at 11.  Plaintiffs merely explained the parties were at an impasse because Apple's suggestion had nothing to do with dispute at issue in that email (Apple's obligation to disclose custodians pursuant to the ESI agreement).  Ex. P at 3.

Fourth, Apple argues Plaintiffs "*did not respond* to Apple's offer to compromise" and "evaded" the issue during the conference of counsel.  Jt. Stip. at 11 (emphasis in original).  However, Plaintiffs have—repeatedly—responded to Apple's demand and explained that they cannot agree to an ***arbitrary*** limit of eight or twelve custodians.  Plaintiffs did not "evade" Apple's questions during the meet and confer.  Plaintiffs answered Apple's questions and asked Apple to discuss ***all*** interrelated issues at once.  Ex. 7 at 2.  Apple declined and insisted the parties discuss only the limit that Apple wanted to discuss.  *Id.*  The parties' differing views of what occurred during such meetings is why Plaintiffs have repeatedly asked that the parties record meet and confers, and continue to desire to record all meet and confers.  Exs. 9-11.  Apple refused.  Ex. 12.

Fifth, Apple accuses Plaintiffs of not working with Apple in good faith, "delay[ing] at every turn," and "attempt[ing] to grind ESI discovery to a halt."  Jt. Stip. at 11.  But Apple never explains what Plaintiffs would have to gain from delaying ESI discovery.  Plaintiffs need discovery from Apple.  In stark contrast to Apple's rhetoric and accusations, the actual ***record*** demonstrates that Plaintiffs have attempted to move ESI discovery forward for months and are collecting data for more than the arbitrary limit imposed by Apple.  *See supra* Section III.A.  Apple seeks a limit, and is refusing to move forward on ESI discovery unless it can first obtain such a limit.

-43-

Finally, Apple accuses Plaintiffs of refusing to "engage on the merits of Apple's proposal, or explain how exchanging ESI for agreed-upon custodians could be objectionable" and "simply ignore[ing] Apple's offer." Jt. Stip. 12. Again, the parties' correspondence demonstrate that Plaintiffs are moving ESI discovery forward, and have been for months. *See* Section III.A, *supra*. Apple cites two decisions, neither of which is remotely similar to Plaintiffs' actions. *See Soc. Sampling, Inc. v. Dennis Garberg & Assocs., Inc.*, 2014 WL 12561595, at *2 (C.D. Cal. Aug. 21, 2014) (criticizing the form of the parties' joint stipulation because it did not "identify what, if anything" a party did to address the other's concerns); *Solomon v. Sheldon*, 2021 WL 826053, at *22 (E.D. Cal. Mar. 4, 2021) (finding that a pro se litigant failed to respond to a large number of discovery requests). Plaintiffs have always acted in good faith.

**5.    Conclusion**

Plaintiffs agree that discovery must move forward expeditiously, which is why Plaintiffs are collecting data and searching the custodians that Apple identified ***and more***. Rather than seeking to compel Plaintiffs to provide discovery, Apple actually moves to ***limit*** discovery that ***Apple*** must provide. Thus, Apple's requested relief is a motion for protective order to limit discovery. But Apple has not come close to meeting its "heavy burden" of proving such a protective order is necessary. Instead, Apple simply demands Plaintiffs agree to an unfair process that would prejudice Plaintiffs' ability to obtain discovery. As demonstrated above, Apple's approach would withhold discovery from numerous relevant custodians. The Court should deny Apple's Motion.


Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

Dated:  April 8, 2021          By: */s/ Joshua H. Lerner*
                                   Joshua H. Lerner
                                   H. Mark Lyon
                                   Brian M. Buroker

-44-

Brian A. Rosenthal
Ilissa Samplin
Brian K. Andrea
Angelique Kaounis

*Attorneys for Defendant Apple Inc.*

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 8, 2021          By: */s/  Adam B. Powell*
Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Perry D. Oldham
Stephen W. Larson
Adam B. Powell

*Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories*

## ATTESTATION UNDER LOCAL RULE 5-4.3.4(a)(2)(i)

Pursuant to Civil L. R. 5-4.3.4(a)(2)(i), I attest that concurrence in the filing of this document has been obtained from each of the signatories above.

Dated: April 8, 2021          By: */s/  Joshua H. Lerner*
Joshua H. Lerner

-45-