JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>APPLE INC., a California corporation,<br><br>        Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**DECLARATION OF BRIAN K. ANDREA IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO COMPEL PLAINTIFFS TO IMMEDIATELY PROCEED WITH ESI DISCOVERY**<br><br>Judge:      Magistrate Judge John D. Early<br>Date/Time:  April 29, 2021 / 10:00 AM<br>Courtroom:  6A<br><br>Discovery Cutoff:      7/5/2021<br>Pre-trial Conference:  3/21/2022<br>Trial:                 4/5/2022 |

Gibson, Dunn & Crutcher LLP

ANDREA DECLARATION IN SUPPORT OF APPLE'S MOTION TO COMPEL
PLAINTIFFS TO IMMEDIATELY PROCEED WITH ESI DISCOVERY
CASE NO. 8:20-CV-00048-JVS (JDEX)

I, Brian K. Andrea, declare and state as follows:

1.     I am an associate with the law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn") and counsel of record for Defendant Apple Inc. ("Apple") in the above-captioned action.

2.     I have personal, firsthand knowledge of the facts stated herein and, if called upon to do so, could and would competently testify thereto.

3.     I make this declaration in support of Apple's Motion to Compel Plaintiffs to Immediately Proceed with ESI Discovery.

4.     A true and correct copy of the ESI Stipulation and [Proposed] Order, filed at Dkt. No. 51, is attached as **Exhibit A.**

5.     A true and correct copy of a March 4, 2020 letter from Perry Oldham, counsel of record for Plaintiffs, to H. Mark Lyon, counsel of record for Apple, is attached as **Exhibit B**.

6.     A true and correct copy of a March 6, 2020 letter from H. Mark Lyon to Perry Oldham is attached as **Exhibit C**.

7.     A true and correct copy of an October 17, 2020 letter from myself to Stephen Larson, counsel of record for Plaintiffs, is attached as **Exhibit D**.

8.     A true and correct copy of a November 16, 2020 letter from Stephen Larson to myself is attached as **Exhibit E**.

9.     A true and correct copy of a November 25, 2020 letter from myself to Stephen Larson is attached as **Exhibit F**.

10.     A true and correct copy of a December 2, 2020 email from myself to Adam Powell, counsel of record for Plaintiffs, is attached as **Exhibit G**.

11.     A true and correct copy of a December 6, 2020 letter from Adam Powell to myself is attached as **Exhibit H (filed under seal)**.

12.     A true and correct copy of a December 30, 2020 letter from Adam Powell to myself is attached as **Exhibit I**.

Gibson, Dunn &
Crutcher LLP

1

ANDREA DECLARATION IN SUPPORT OF APPLE'S MOTION TO COMPEL
PLAINTIFFS TO IMMEDIATELY PROCEED WITH ESI DISCOVERY
CASE NO. 8:20-CV-00048-JVS (JDEX)

13.     A true and correct copy of a January 13, 2021 letter from Ilissa Samplin, counsel of record for Apple, to Adam Powell is attached as **Exhibit J**.

14.     A true and correct copy of Plaintiffs' portion of the Joint Stipulation Plaintiffs served to Apple on January 22, 2021 is attached as **Exhibit K**.

15.     A true and correct copy of a January 28, 2021 email from Adam Powell to myself is attached as **Exhibit L**.

16.     A true and correct copy of a January 28, 2021 email from Adam Powell to myself is attached as **Exhibit M**.

17.     A true and correct copy of a February 8, 2021 email from Adam Powell to myself is attached as **Exhibit N (filed under seal)**.

18.     A true and correct copy of a February 9, 2021 email from myself to Adam Powell is attached as **Exhibit O**.

19.     A true and correct copy of a February 12, 2021 email from Adam Powell to myself is attached as **Exhibit P**.

20.     A true and correct copy of a February 12, 2021 email from myself to Adam Powell is attached as **Exhibit Q**.

21.     A true and correct copy of a February 12, 2021 email from Adam Powell to myself is attached as **Exhibit R (filed under seal)**.

22.     A true and correct copy of a February 17, 2021 email from Ilissa Samplin to Adam Powell is attached as **Exhibit S (filed under seal)**.

23.     A true and correct copy of a February 19, 2021 letter from Adam Powell to Ilissa Samplin is attached as **Exhibit T**.

24.     A true and correct copy of a February 24, 2021 email from Adam Powell to myself is attached as **Exhibit U**.

25.     A true and correct copy of a February 24, 2021 email from Adam Powell to myself is attached as **Exhibit V**.

26.     A true and correct copy of a March 3, 2021 email from myself to Adam Powell is attached as **Exhibit W**.

Gibson, Dunn & Crutcher LLP

2
ANDREA DECLARATION IN SUPPORT OF APPLE'S MOTION TO COMPEL PLAINTIFFS TO IMMEDIATELY PROCEED WITH ESI DISCOVERY CASE NO. 8:20-CV-00048-JVS (JDEX)

27. A true and correct copy of a March 3, 2021 email from Adam Powell to myself is attached as **Exhibit X**.

28. A true and correct copy of the United States District Court for the Southern District of California's Model Order Governing the Discovery of Electronically Stored Information in Patent Cases is attached as **Exhibit Y**.

29. A true and correct copy of the United States District Court for the Northern District of California's Model Stipulation and Order regarding the Discovery of Electronically Stored Information for Patent Litigation is attached as **Exhibit Z**.

30. A true and correct copy of the Federal Circuit Advisory Council's Model E-Discovery Order is attached as **Exhibit AA**.

31. A true and correct copy of a March 5, 2021 email from myself to Adam Powell is attached as **Exhibit AB**.

32. A true and correct copy of a March 9, 2021 email from Adam Powell to myself is attached as **Exhibit AC**.

33. A true and correct copy of a March 11, 2021 email from myself to Adam Powell is attached as **Exhibit AD**.

34. A true and correct copy of a March 12, 2021 email from myself to Adam Powell is attached as **Exhibit AE (filed under seal)**.

35. A true and correct copy of a March 12, 2021 letter from Adam Powell to myself is attached as **Exhibit AF (filed under seal)**.

36. A true and correct copy of a March 17, 2021 letter from myself to Adam Powell is attached as **Exhibit AG (filed under seal)**.

37. A true and correct copy of a March 23, 2021 letter from Adam Powell to myself is attached as **Exhibit AH (filed under seal)**.

38. A true and correct copy of a March 23, 2021 email from myself to Adam Powell is attached as **Exhibit AI (filed under seal)**.

39. A true and correct copy of a March 25, 2021 letter from Adam Powell to myself is attached as **Exhibit AJ**.

Gibson, Dunn &
Crutcher LLP

3

ANDREA DECLARATION IN SUPPORT OF APPLE'S MOTION TO COMPEL
PLAINTIFFS TO IMMEDIATELY PROCEED WITH ESI DISCOVERY
CASE NO. 8:20-CV-00048-JVS (JDEX)

40.     A true and correct copy of a March 26, 2021 email from myself to Adam Powell is attached as **Exhibit AK (filed under seal)**.

41.     A true and correct copy of a March 28, 2021 email from Adam Powell to myself is attached as **Exhibit AL (filed under seal)**.

42.     A true and correct copy of a March 29, 2021 email from Angelique Kaounis, counsel of record for Apple, to Adam Powell is attached as **Exhibit AM**.

43.     On April 17, 2020, this Court entered an Order regarding Scheduling Dates. Dkt. 37.  A true and correct copy of the Order regarding Scheduling Dates is attached as **Exhibit AN**.  Exhibit AN is submitted in compliance with Local Rule 37-2.1.

44.     On September 21, 2020, the Court granted the parties' stipulation to amend the deadlines set out in the April 17, 2020 scheduling order.  Dkt. 205.  A true and correct copy of the parties' stipulation to amend the scheduling order is attached as **Exhibit AO**. Exhibit AO is submitted in compliance with Local Rule 37-2.1.

45.     On October 14, 2020, the Court issued a sealed order granting Apple's Motion to stay claims one through twelve of the Second Amended Complaint pending inter partes review.  Dkt. 220.  This stay, a true and correct copy of which is attached as **Exhibit AP (filed under seal)**, vacates the patent-related deadlines set out in the April 17, 2020 Order and amended in the parties' September 21, 2020 stipulation.  Exhibit AP is submitted in compliance with Local Rule 37-2.1.

\\

\\

\\

\\

\\

\\

\\

\\

Gibson, Dunn &
Crutcher LLP

ANDREA DECLARATION IN SUPPORT OF APPLE'S MOTION TO COMPEL
PLAINTIFFS TO IMMEDIATELY PROCEED WITH ESI DISCOVERY
CASE NO. 8:20-CV-00048-JVS (JDEX)

1          I declare under penalty of perjury under the laws of the United States of

2    America that the foregoing is true and correct.

3

4          Executed this 8th day of April, 2021, in Oakton, Virginia

5

6                            By:   /s/ *Brian K. Andrea*

7                                 Brian K. Andrea

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

ANDREA DECLARATION IN SUPPORT OF APPLE'S MOTION TO COMPEL
PLAINTIFFS TO IMMEDIATELY PROCEED WITH ESI DISCOVERY
CASE NO. 8:20-CV-00048-JVS (JDEX)

# Exhibit A

Case 8:20-cv-00048-JVS-JDE   Document 333-2   Filed 04/08/21   Page 8 of 226   Page ID
Case 8:20-cv-00048-JVS-JDE   Document 513   Filed 06/01/20   Page 1 of 8   Page ID #:9712
#:28808

1

2

3

4

5

6

7

8

9

10

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION,<br>a Delaware corporation; and<br>CERCACOR LABORATORIES, INC.,<br>a Delaware corporation,<br><br>           Plaintiffs,<br><br>    v.<br><br>APPLE INC.,<br>a California corporation,<br><br>           Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**ESI STIPULATION AND<br>[PROPOSED] ORDER**<br><br>Date:<br>Time:<br>Place:<br>Judge: Hon. Magistrate Judge John D.<br>Early |

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs") and Defendant Apple Inc. ("Defendant"), hereby agree that the following procedures shall govern discovery of Electronically-Stored Information ("ESI") in this case:

1. **Custodian names and search terms to be exchanged.** The parties agree to meet and confer in an attempt to reach agreement on a procedure for collection, review, and production of electronically stored information using a reasonable list of custodians and search terms. In connection with the meet and confer process, each party shall provide a proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case (e.g., the asserted patents, alleged misappropriation of trade secrets, the development, design and operation of the accused products, and sales, marketing and other damages-related information for the accused products). The parties then shall meet and confer in an attempt to reach agreement on custodians and search terms to be used for electronic searches of the files from those custodians. The parties agree to meet and confer on the type of ESI that will be collected for each custodian, such as electronic files and email, any necessary negative search limitations to limit unreasonably high search results, and other limitations or requirements proposed by either party. The parties agree to work in good faith to reach an agreement, but recognize they may not reach an agreement. The parties reserve all of their rights, including the right to request additional email custodians identified through discovery or additional search terms, and the right to request other discovery. The parties recognize their discovery obligations may not be met merely by complying with any agreement that may ultimately be reached under this paragraph. Nothing in this Stipulation prevents the parties from using technology assisted review insofar as it improves the efficacy of discovery, or from opposing the use of technology assisted review.

2. **Format for production of documents – documents existing in electronic format.** Except as otherwise provided for in this Stipulation, all documents

1

existing in electronic format shall be produced as Group IV single page TIFF files or in multiple page, searchable PDF format at a resolution of at least 300 dpi in accordance with the following:

A.  **File and Folder Naming**.  Files shall be produced along with Concordance/Opticon image load files that indicate the beginning and ending page of each document.  The file name shall be the same as the Bates number of the first page of the document.  For example, TIFF files shall be named "<PageID>.TIF" (e.g., "ABC000000010.TIF") with no spaces in the filename.  TIFF images will be provided in a folder named "IMAGES" on the production media. All TIFF images for a single document will be in one subfolder within the IMAGES folder, and the number of image files in any one subfolder will not exceed 1000.

B.  **Extracted Text**.  Except with regard to files that are redacted for privilege, the files shall be accompanied by text files containing the extracted text on a document basis, if available.  To the extent a Producing Party provides text files, the Receiving Party accepts the text files "as is" and the Producing Party accepts no liability as to the accuracy of searches conducted upon such files.  The text files shall be named to match the endorsed number assigned to the image of the first page of the document.  For example, a text file accompanying ABC000000010- ABC000000020 would be named ABC000000010.txt.  Text files shall be accompanied by a Control List File ("LST"). The images shall also be accompanied by an image cross-reference load file (such as Opticon or "LFP") providing the beginning and ending endorsed number of each document and the number of pages it comprises.  For documents which already exist in PDF format prior to production, the producing party may provide them in that same PDF format, whether searchable or non-searchable.

C.  **Metadata.**  Load files should include, where applicable, the information listed in the Table of Metadata Fields, attached as Exhibit A. However, the parties are not obligated to include or create metadata for any document that does not contain such metadata in the original.   Notwithstanding the foregoing, if, however, a

2

Gibson, Dunn & Crutcher LLP

party reasonably believes that a produced document has metadata (as reflected in Exhibit A) associated with it—e.g., source code collected from a repository that logs metadata information—then the parties shall meet and confer about the collection of such metadata upon request by the Receiving Party.

        D.    **Production media and encryption of productions.**  Unless otherwise agreed, the parties shall provide document productions in the following manner: The producing party shall provide the production data on CDs, DVDs, external hard drives or SFTP, as appropriate. The producing party shall encrypt the production data using WinRAR or an appropriate encryption, and the producing party shall forward the password to decrypt the production data separately from the CD, DVD, external drive or SFTP to which the production data is saved.

    3.    **Format for production of documents – hardcopy or paper documents.** All documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format, above.

    4.    **Source code.** This Stipulation does not govern the format for production of source code.  To the extent the production of source code is required, it shall be produced pursuant to the relevant provision of the Protective Order.

    5.    **Parent and child emails.**  The parties shall produce email attachments sequentially after the parent email.

    6.    **Native files.**  Multimedia files and spreadsheets shall be produced as natives with a slipsheet.  The parties will meet and confer to discuss additional requests for the production of files in native format, on a case-by-case basis. If the parties are unable to reach agreement with regard to requests for additional documents in native-file format, the parties reserve the right to seek relief from the Court. Documents produced natively shall be represented in the set of imaged documents by a slipsheet indicating the production identification number and confidentiality designation for the native file that is being produced.  Files produced natively shall follow the same

1  naming format as TIFF or PDF images but also contain the confidentiality designation

2  (e.g., "(Confidential) ABC000000010.xls).

3         7.     **Databases.**  Certain types of databases are dynamic in nature and will

4  often contain information that is neither relevant nor reasonably calculated to lead to

5  the discovery of admissible evidence.  Thus, a party may opt to produce relevant and

6  responsive information from databases in an alternate form, such as a report or data

7  table.  These reports or data tables will be produced in a static format.

8        The parties agree to identify the specific databases, by name, that contain the

9  relevant and responsive information that parties produce.

10         8.     **Requests for hi-resolution or color documents.**  The parties agree to

11  respond to reasonable and specific requests for the production of higher resolution or

12  color images.  Nothing in this Stipulation shall preclude a producing party from

13  objecting to such requests as unreasonable in number, timing or scope, provided that a

14  producing party shall not object if the document as originally produced is illegible or

15  difficult to read.  The producing party shall have the option of responding by

16  producing a native-file version of the document.  If a dispute arises with regard to

17  requests for higher resolution or color images, the parties will meet and confer in good

18  faith to try to resolve it.

19         9.     **Foreign language documents.** All documents shall be produced in their

20  original language.  Where a requested document exists in a foreign language and the

21  producing party also is aware of or has identified after a reasonable search an English-

22  language version of that document that it prepared for non-litigation purposes, the

23  producing party shall produce both the original document and all English-language

24  versions, including certified translations.  Nothing in this agreement shall require a

25  producing party to prepare a translation, certified or otherwise, for foreign language

26  documents that are produced in discovery.  Nothing in this paragraph shall modify a

27  party's existing obligations to conduct a reasonable search for documents.

28

10.    **No Waiver**.  This Order shall not constitute a waiver of the right of any Party to claim in this action or otherwise that any documents produced, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this action or any other proceeding.  To the extent that the Court may order that attorney-client privilege or work-product protection is not waived by disclosure in this litigation, such disclosure also shall not be deemed a waiver in any other federal or state proceeding (*see* Fed. R. Evid. 502(d)).

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: May 29, 2020                    GIBSON, DUNN & CRUTCHER LLP

By:    */s/ Joshua H. Lerner*

Joshua H. Lerner, SBN 220755
jlerner@gibsondunn.com
555 Mission Street Suite 3000
San Francisco, CA 94105
Telephone:  415.393.8200
Facsimile:  415.393.8306

H. Mark Lyon, SBN 162061
mlyon@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendant Apple Inc.*

1    Dated:  May 28, 2020                    Knobbe, Martens, Olson & Bear LLP

2

3                                            By:    /s/ Adam B. Powell

4                                            Joseph R Re
                                             joe.re@knobbe.com
5                                            Stephen C Jensen
                                             steve.jensen@knobbe.com
6                                            Perry D. Oldham
                                             perry.oldham@knobbe.com
7                                            Stephen W Larson
                                             stephen.larson@knobbe.com
8                                            2040 Main Street, Fourteenth Floor
                                             Irvine, CA 92614
9                                            Telephone:  (949) 760-0404
                                             Facsimile:  (949) 760-9502
10
                                             Adam B. Powell
11                                           adam.powell@knobbe.com
                                             12790 El Camino Real
12                                           San Diego, CA 92130
                                             Telephone: (858) 707-4000
13                                           Facsimile: (858) 707-4001

14                                           *Attorneys for Plaintiffs*
                                             *Masimo Corporation and*
15                                           *Cercacor Laboratories, Inc.*

16

17   IT IS SO ORDERED.

18   Dated:

19                                           _____
                                             JOHN D. EARLY
20                                           United States Magistrate Judge

21

22

23

24

25

26

27

28

# ATTESTATION REGARDING SIGNATURES

I, Joshua H. Lerner, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED:  May 29, 2020                      By:   /s/ *Joshua H. Lerner*

                                          Joshua H. Lerner

# Exhibit B

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
T (949) 760-0404

Perry D. Oldham
Perry.Oldham@knobbe.com

March 4, 2020

H. Mark Lyon
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road, Palo Alto, CA 94304-1211

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Mark:

Masimo and Cercacor understand from the February 25, 2020, conference of counsel that Apple disputes whether it had reason to know that Marcelo Lamego and Michael O'Reilly had a duty not to disclose Masimo or Cercacor information to Apple.  Based on this position, Masimo and Cercacor are very concerned that Apple will continue to publish Masimo's and Cercacor's confidential information, particularly in patent applications.  Accordingly, Masimo and Cercacor request that Apple immediately request non-publication for any pending applications concerning physiological monitoring that may contain information from former Masimo or Cercacor employees.  At least the following individuals have left Masimo or Cercacor and subsequently worked for Apple:

| | | | |
|---|---|---|---|
| Cornelius Rath | Yinghui Lu | Shruti Koneru | Haritha Haridas |
| Marcelo Lamego | Joseph Jagenow | Swapnil Harsule | Rich Young |
| Ehsan Masoumi | Vincent Wayne | John Aguilar | Johannes Bruinsma |
| Michael O'Reilly | Will Regan | Boris Oreshkin | Felipe Tonello |
| Ottavia Golfetto | Inje Lee | Pekka Talke | |

Masimo and Cercacor also request that Apple notify them before publishing any such applications so that they can evaluate whether such publication would disclose any of their trade secrets.

Please confirm that Apple will honor the above requests.  Thank you for your attention to this matter.

Best regards,

Perry D. Oldham

32323380

# Exhibit C

Exhibit C
-17-

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel 650.849.5300
www.gibsondunn.com

H. Mark Lyon
Direct: +1 650.849.5307
Fax: +1 650.849.5007
MLyon@gibsondunn.com

March 6, 2020

## Via E-Mail

Perry D. Oldham
Knobbe, Martens, Olson & Bear LLP
2040 Main St., 14th Flr.
Irvine, CA 92614
Perry.Oldham@knobbe.com

Re:     *Masimo Corp., et al. v. Apple Inc.,* Case No. 8:20-cv-48 (C.D. Cal.)

Dear Mr. Oldham:

I write in response to your March 4, 2020 letter in the above-titled action (the "Action").

Your letter asserts that during the February 25, 2020 conference of counsel, Apple disputed whether it had reason to know that Marcelo Lamego and Michael O'Reilly had a duty not to disclose Masimo or Cercacor "information" to Apple.  This is a gross oversimplification of the issues at hand.  In fact, as we conveyed on that call, because Masimo and Cercacor have failed to identify their alleged trade secrets with any particularity, and because they have failed to identify any factual basis for Apple to have known that Lamego or O'Reilly had any obligation to maintain secrecy of specific information, Plaintiffs have failed to allege a plausible misappropriation claim against Apple.  Plaintiffs' failure to comply with the basic pleading requirements of Federal Rule of Civil Procedure 8 does not somehow shift the burden to Apple to define what Plaintiffs claim to be confidential information in order to disprove their spurious claim.

Turning to your demands, your sudden expressed concern that "Apple will *continue* to publish Masimo's and Cercacor's confidential information, particularly in patent applications" (emph. added) is belied by the fact that Plaintiffs in this case are asserting that Apple has been misappropriating their trade secrets for roughly *six years*, and yet again, Plaintiffs have never made any effort—before or after filing this lawsuit—to identify any information with sufficient detail for Apple to even identify what was allegedly misappropriated.  Your letter follows the same theme as the Complaint:  without identifying any alleged trade secret information, explaining why Apple would even want or need the information (if it is ever identified), or having a valid basis to question the steps that Apple takes to respect third party rights, you demand that "Apple immediately request non-publication for any pending applications concerning physiological monitoring" that may purportedly contain information from former Masimo or Cercacor (collectively, "Plaintiffs") employees.  Making such a demand without

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

Exhibit C
-18-

**GIBSON DUNN**

Perry D. Oldham
March 6, 2020
Page 2

providing any basis for your claims suggests to us that you do not have a basis for the claims, let alone the demand you are making.

In light of Plaintiffs' assertion—both in your letter and in their Complaint (at ¶¶ 185, 187) in the Action—that Apple has supposedly published such information, Plaintiffs should immediately identify (by line and page number) any alleged trade secrets that have been disclosed in any published patent application filed by Apple or in any patent held by Apple. You no doubt already have this information because you must have conducted an investigation before filing a Complaint alleging that Apple disclosed trade secrets in those patent applications and other published patent filings. If Plaintiffs indeed have a factual basis for these allegations, it is strange that they did not identify this information earlier.

Moreover, because Plaintiffs are required to describe *all* of their allegedly misappropriated secrets pursuant to California Code of Civil Procedure ("CCP") section 2019.210 before they conduct discovery, they should have no issue identifying those secrets now. In that regard, please provide a full CCP § 2019.210 disclosure immediately.

Additionally, because Plaintiffs assert that other current or former Apple employees previously worked for Masimo or Cercacor, please also identify how any of the alleged trade secret information relates to each of those individuals—*e.g.*, which specific technologies each individual contributed to, what aspects of that technology were advanced by their contributions, etc. Finally, if Plaintiffs are claiming joint inventorship as to any patent on which these individuals are named inventors, please identify by page and line number (for each patent) which person invented what.

We look forward to Plaintiffs' prompt CCP § 2019.210 disclosure, including the identification of any Masimo and/or Cercacor alleged trade secrets disclosed in any Apple patent application or patent—as well as the identification of the former Masimo or Cercacor employee information requested above.

Sincerely,

H. Mark Lyon

Cc (all by email): Joshua H. Lerner
Joseph R. Re
Stephen C. Jensen
Stephen W. Larson

Exhibit C
-19-

# Exhibit D

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian K. Andrea
Direct: +1 202.887.3624
Fax: +1 202.530.4220
BAndrea@gibsondunn.com

October 17, 2020

VIA E-MAIL (STEPHEN.LARSON@KNOBBE.COM)

Stephen Larson
Knobbe, Martens, Olson & Bear LLP
2040 Main St., 14th Floor
Irvine, CA 92614

Re:     Masimo Corp. et al. v. Apple, Inc., C.A. 8:20-cv-00048 (C.D. Cal.)

Dear Steve:

I am writing in response to your letter dated October 1, 2020.  In view of the Court's October 14, 2020 Order granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations in your letter are moot, and thus Apple has not responded to those issues.

Your letter raised a kitchen-sink list of objections to three rounds of Apple's discovery requests (the most recent of which were served seven weeks prior to your letter), as well as a host of other issues.  In the interest of accommodating Plaintiffs' request for a letter and meet and confer on these topics, Apple provides this response.  However, it continues to reserve all rights, including without limitation its right to challenge additional aspects of Plaintiffs' October 1 letter that are not addressed in this letter.

**Plaintiffs' First and Second Set of Requests For Production (RFP Nos. 1-60)**

**"Apple's Improper Exclusive Reliance on Custodians and Search Terms":**  Plaintiffs request that Apple identify whether it has identified any RFPs that may be satisfied by use of search terms and custodians alone.  Apple responds that it has identified RFP Nos. 26, 31, 32, 80-82, 89-97, 117, 128, 129, and 136 as RFPs where it intends to use search terms and custodians to identify responsive documents.

**Plaintiffs' RFP Nos. 5-8, 10-11, and 26-27:**  Apple has objected to some or all of these RFPs on grounds other than Plaintiffs' failure to comply with Section 2019.210, including for example Plaintiffs' failure to provide any temporal scope for these RFPs and the overbroad nature of these RFPs, which seek documents with no relevance to any claim or defense in this case and publicly available documents.  *See, e.g.*, May 26, 2020 Letter from I. Samplin to M. Kachner, at 7–8.  Thus, your assertion in your letter that Apple is withholding documents "solely" based on its Section 2019.210-related objection is incorrect.

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

Exhibit D
-21-

**GIBSON DUNN**

Stephen Larson
October 17, 2020
Page 2

In addition, Plaintiffs have argued for months that these RFPs relate to their patent infringement claims, as the Court noted. Dkt. No. 79 at 2 ("Plaintiffs argued that RFP Nos. 5-25 seek patent discovery." (citing Dkt. No. 43-1 at 4, 34, 36)); 6/23/2020 Kachner to Samplin letter. Moreover, Judge Early found that one of these RFPs (RFP 8) "seek[s] some of the same categories of information Plaintiffs allege as their trade secrets," and even then is still "relevant to patent issues, including infringement," as Plaintiffs themselves argued. Dkt. No. 54 at 8 (citing Dkt. No. 43-1 at 34); *see also* Dkt. No. 79 at 4. As explained above, on October 14, 2020, the Court stayed the patent infringement case, which includes discovery related to those claims. Thus, your issues related to these RFPs are moot on that basis alone, and Apple is not obligated to respond to these requests until the patent infringement case is resumed.

Even if these RFPs constitute trade secret discovery—and Plaintiffs have made clear their position that they do not—Plaintiffs' October 9, 2020 attempt at a Section 2019.210 statement is deficient, and thus does not comply with Section 2019.210. Accordingly, Apple will maintain its objection to these RFPs until Plaintiffs serve an adequate Section 2019.210 disclosure.

**Plaintiffs' RFP No. 9:** As explained above, Plaintiffs have consistently argued for months that this Request is "patent discovery," and the Court agreed with Plaintiffs. Accordingly, because the patent infringement case is stayed, your issues with respect to this Request are moot, and Apple is not obligated to respond to this Request until the Court lifts the stay.

In addition, to the extent this Request constitutes trade secret discovery—and not only have Plaintiffs consistently argue that it does not, this Request is also not one of the four that the Court found related to "some of the same categories of information Plaintiffs allege as their trade secrets" (Dkt. No. 54 at 8)—Plaintiffs. have not yet complied with Section 2019.210, and thus Apple is not obligated to respond to this Request because trade secret discovery remains stayed until Plaintiffs comply with Section 2019.210.

**Plaintiffs' RFP Nos. 12-25:** As explained above, Plaintiffs have consistently argued for months that these RFPs are "patent discovery," and the Court agreed with Plaintiffs. Accordingly, because the patent infringement case is stayed, your issues with respect to these RFPs are moot, and Apple is not obligated to respond to these RFPs until the Court lifts the stay.

In addition, to the extent these RFPs constitutes trade secret discovery—and Plaintiffs have consistently argued that they do not—Plaintiffs have not yet complied with Section 2019.210, and thus Apple is not obligated to respond to these RFPs because trade secret discovery remains stayed until Plaintiffs comply with Section 2019.210.

**GIBSON DUNN**

Stephen Larson
October 17, 2020
Page 3

### <u>Plaintiffs' Third Set of Requests For Production (RFP Nos. 61-147)</u>

**<u>Section 2019.210</u>:**  Apple does not understand your issue concerning these RFPs.  In its
August 17, 2020 Objections and Responses to Plaintiffs' Third Set of RFPs, Apple stated for
each of these RFPs that "based on this Court's April 17, June 15, and July 14 Orders (Dkt.
Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to
Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section
2019.210."  Thus, Apple has agreed to produce responsive documents that are not related
solely to Plaintiffs' trade secret misappropriation claim.[1]  Discovery of "documents or things
that relate solely to Plaintiffs' trade secret misappropriation claim" is stayed pending
Plaintiffs' compliance with Section 2019.210.  Dkt. No. 37 at 1.  As explained in our recent
correspondence, Plaintiffs have not yet complied with Section 2019.210, so Apple stands by
this objection.

**<u>"Temporal Scope"</u>:**  Plaintiffs request that Apple identify whether it is withholding
documents based on its objection that certain of Plaintiffs' RFPs lack a temporal limitation.
Apple confirms that it is not withholding documents based on this objection.  As Apple
explained previously, temporal limitations for discovery requests are standard—particularly
requests propounded by plaintiffs who have superior knowledge of the relevant time periods
at issue.  Plaintiffs are in the best position to propose time period limitations here.  Upon
Plaintiffs' identification of relevant time periods, Apple will provide information and
documents in its possession, custody, or control for the relevant time period.

**<u>"Undefined Terms"</u>:**  Plaintiffs request that Apple identify whether it is withholding
documents based on its objection that certain of Plaintiffs' RFPs use vague or ambiguous
terms or phrases.  Apple confirms that it is not withholding documents based on this
objection.  Apple is not refusing to produce responsive documents on the basis that any terms
or phrases are "vague, ambiguous, overly broad, and unduly burdensome." Apple confirms
that it will use the plain and ordinary meaning of the terms in Plaintiffs' RFPs when
searching for responsive documents.

**<u>"Public Documents"</u>:**  Plaintiffs request that Apple identify whether it is withholding
documents based on its objection that certain of Plaintiffs' RFPs seek information already in
Plaintiffs' possession or information that is obtainable from another source.  Apple confirms
that it is not withholding documents based on this objection.  To the extent a reasonable
search yields publicly available documents responsive to Plaintiffs' RFPs, Apple will

---

[1]  To the extent these RFPs seek documents that are relevant to Plaintiffs' patent
infringement claims, patent discovery has been stayed by the Court's October 14, 2020
Order (Dkt. No. 220).

**GIBSON DUNN**

Stephen Larson
October 17, 2020
Page 4

produce them, but it will not specifically search for publicly available documents as those documents are just as easily available to Plaintiffs. Apple also notes that Plaintiffs made this same objection to Apple's RFP Nos. 15, 31, 38, 39, 42, 43, and 47, and the approach to public documents should be reciprocal.

**Plaintiffs' RFP Nos. 67-69, 86, 88, 101, 122, 128-130, and 133-135:**  Plaintiffs request that Apple provide its position with regards to these RFPs in advance of the parties' meet and confer.

Apple objects to RFP Nos. 67-69 and 88 because they are irrelevant to the issues in the present action and not reasonably calculated to lead to the discovery of admissible evidence. Indeed, it is unclear how documents related to FDA correspondence or approval (RFP Nos. 67-79) and physiological parameter evaluation (RFP No. 86) are relevant to this litigation.

Apple objects to RFP Nos. 88, 101, 122, 128-130, and 133-135 because they are overly broad and unduly burdensome and not reasonably tailored to the issues in this case.  As a result, these RFPs seek documents nor proportional to the needs of the case.   However, Apple is willing to meet and confer to discuss what specifically Plaintiffs are seeking through these overbroad requests, as Apple may be willing to agree to provide certain documents if Plaintiffs are willing to narrow the scope of the requests.

Apple objects to RFP No. 128 to the extent it requests "subject matter disclosed or claimed in the disputed patents."  As previously explained, the language of this Request requires Apple to draw a legal conclusion in order to respond.  Apple is willing to meet and confer to discuss the scope of this request.  However, Apple is willing to meet and confer to discuss what specifically Plaintiffs are seeking through these overbroad requests, as Apple may be willing to agree to provide certain documents if Plaintiffs are willing to narrow the scope of the requests.

**Plaintiffs' RFP Nos. 80-82, 101, 136:**  Plaintiffs request that Apple confirm that it will perform a reasonable search for and produce the documents requested by these RFPs.  As explained above, Apple has identified RFP Nos. 80-82 and 136 as RFPs whose discovery obligations are met by a search of (i) the files of specific custodians negotiated between the parties, whose files are in the possession, custody, or control of Apple and (ii) specific search terms negotiated between the parties.  Plaintiffs' inclusion of RFP No. 101 in this list is nonsensical, as Apple did not identify RFP No. 101 as an RFP for which it intends to use search terms and custodians to identify responsive documents.

**Plaintiffs' RFP Nos. 89-97, 129, and 136:**  Apple maintains that these RFPs are overly broad and unduly burdensome, and the use of search terms and custodians to identify responsive documents is the reasonable and proportional way of identifying responsive

# GIBSON DUNN

Stephen Larson
October 17, 2020
Page 5

documents.  However, Apple is willing to meet and confer to discuss what specifically Plaintiffs are seeking through these overbroad requests, as Apple may be willing to agree to perform searches for certain documents if Plaintiffs are willing to narrow the scope of the requests.

**Plaintiffs' RFP Nos. 132 and 144:**  Plaintiffs request that Apple produce organizational charts responsive to their RFPs.  Apple maintains its objection.  As noted in Apple's Responses to these RFPs, Apple does not maintain organizational charts, and thus does not have any documents responsive to this Request that can be located after a reasonably diligent search.

### "Compliance with ESI Order"

Apple believes that the exchange of custodians at this stage in the case is premature and inappropriate.  Indeed, and as discussed above, Plaintiffs have yet to provide a sufficient trade secret disclosure or responses to Apple's discovery, and Apple has not yet filed an answer.  Apple also contends that the parties should discuss reasonable limits on the number of custodians before any exchanges of custodians can occur.

### "Apple's Deficient Document Production"

As Apple's investigation of the facts relevant to this litigation is ongoing and, while its efforts to identify responsive documents are ongoing, its ability to collect certain documents relevant to the issues in this case has been hindered by Plaintiffs inability to provide a sufficient disclosure of its trade secrets.  Apple will continue to produce documents on a rolling basis, as it has been doing since the outset of discovery.

*        *        *

Apple is available to meet and confer with Plaintiffs, as requested by your October 1, 2020 letter, on the following days and times:  Tuesday October 20 between 9am and 10am PT; Wednesday October 21 between 9:30am and 11am PT; and Thursday October 22 between 10am and 11:30am PT.  Please let us know if any of those times work for you.

With respect to your request for confirmation that "Plaintiffs may record the parties' meet and confer," Apple is amenable to recording the meet and confer.  If Plaintiffs would like to record the meet and confer, please arrange for a court reporter to transcribe the call.

Exhibit D
-25-

**GIBSON DUNN**

Stephen Larson
October 17, 2020
Page 6

Sincerely,

Brian K. Andrea

# Exhibit E

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Stephen W. Larson
Stephen.Larson@knobbe.com

November 16, 2020

**VIA EMAIL**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.,
Washington, DC 20036-5306

Re:    Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write in response to your October 17, 2020 letter, and pursuant to Local Rule 37-1 to address various ongoing discovery issues and request a meet and confer.  Apple's letter did not address Plaintiffs' requests for Apple's positions on numerous issues.

### Apple's Reliance on Custodians and Search Terms

Apple has now identified RFP Nos. 26, 31, 32, 80-82, 89-97, 117, 128, 129, and 136 as the only RFPs as to which it intends to solely use search terms to identify responsive documents.  Plaintiffs disagree that Apple can satisfy its discovery obligations as to these requests through ESI searching alone.  For example, RFP 26 requests "[a]ll documents and things identified in, and/or relevant to the subject matter of Apple's responses to Plaintiffs' Interrogatories, including any and all supplements and amendments thereto."  At a minimum, as part of a reasonable search, Apple should identify all the documents it cited in its responses to Plaintiffs' interrogatories and consult with relevant Apple employees that may have other documents responsive to this request.  As another example, RFP 89 requests "[a]ll documents and things that refer or relate to any analysis, reverse engineering, and/or study of any Masimo or Cercacor product or technology."  As part of a reasonable search, at a minimum, Apple should consult with relevant employees to identify responsive documents as well as determine whether Apple currently and/or in the past has maintained files or folders containing responsive documents.  Apple should take a similar approach to identify documents responsive to the other RFPs separate and apart from ESI searching.   Please confirm Apple will do so.

### Plaintiffs' First and Second Set of Requests For Production (RFPs 1-60)

**Plaintiffs' RFPs 1, 3, 4, 34, 40, 51, and 59:**  Plaintiffs' letter requested that Apple identify when it would produce responsive documents.  Apple did not respond.  Please identify Apple's positions as to these RFPs.  To the extent that Apple is asserting that it need not provide responsive documents due to the recent stay of the patent case, Apple should have collected and produced responsive documents months ago and long before the stay.  Regardless, many of these requests seek discovery that is relevant to claims that have not been stayed.  For example, RFP 51 requests year-end financial statements that

INTELLECTUAL PROPERTY + TECHNOLOGY LAW  |  knobbe.com

# Knobbe Martens

are relevant to Plaintiffs' non-patent claims.  Please provide Apple's position as to RFPs 1, 3, 4, 34, 40, 51, and 59.

**Plaintiffs' RFPs 5-27:**  Apple asserts that it need not respond to these requests because the Court stayed the patent infringement case and because Plaintiffs have purportedly not yet served an adequate 2019.210 statement.  Plaintiffs disagree on both points.  First, Plaintiffs 2019.210 statement is adequate.  Indeed, Plaintiffs recently revised their Section 2019.210 statement to address Apple's purported concerns and Apple has failed to identify any specific deficiency.  Second, Apple ignores that it repeatedly argued that documents requested by these RFPs relate to Plaintiffs' trade secret requests.  Indeed, both parties acknowledged these RFPs could be relevant to ***both*** trade secrets and patents.  As such, Apple cannot use the stay to avoid producing responsive documents.  Moreover, Judge Early, found that at least RFPs 8 and 12-14 seek "some of the same categories of information Plaintiffs allege as their trade secrets."  RFP 26, which requests documents related to Apple's interrogatory responses, also clearly seeks documents related to Plaintiffs' non-patent claims.

## Plaintiffs' Third Set of Requests For Production (RFPs 61-147)

**Section 2019.210**:  In our previous letter, we requested that Apple identify each RFP in response to which Apple is withholding documents based on its section 2019.210 objection.  Apple did not respond.  Plaintiffs are entitled to understand the objections upon which Apple is relying to withhold documents in response to each of Plaintiffs' RFPs.  Plaintiffs request again that Apple provide this information so that the parties can have a productive meet and confer.

**Temporal Scope:**  Apple confusingly asserts "it is not withholding documents based on this objection" while also stating that "[u]pon Plaintiffs' identification of relevant time periods, Apple will provide information and documents in its possession, custody, or control for the relevant time period."  Plaintiffs disagree with this approach.  Unless a time frame is specified in a RFP, Apple should produce all documents responsive to that RFP that are obtained after a reasonable search.  To the extent that Apple is limiting its production to a certain time period, Apple should identify such limitations for each RFP so that the parties can conduct a productive meet and confer.

**Products Not Identified in the Complaint:**  Apple did not respond to Plaintiffs' letter regarding this issue.  Please provide Apple's position.  If Apple is relying on this objection to limit its responses to Plaintiffs' RFPs, Apple should identify the RFPs so the parties can have a productive meet and confer.

**Not Limited to the Publicly Released Apple Watch Series 3-5 Devices:**  Apple did not respond to Plaintiffs' letter regarding this issue.  If Apple is relying on this objection to limit its responses to Plaintiffs' RFPs, Apple should identify the RFPs so that the parties can have a productive meet and confer.

**Public Documents:**  Apple asserts that it is not withholding documents based on this objection.  However, Apple also asserts that "it will not specifically search for publicly available documents as those are equally available to Plaintiffs."  Apple cannot unilaterally refuse to search for and produce documents merely because it contends the documents are publicly available elsewhere, particularly without informing Plaintiffs what documents it is refusing to search for.  So that the parties can conduct

# Knobbe Martens

a meaningful meet and confer, please identify the categories of documents that Apple contends are publicly available and that Apple contends it need not search for and produce.

**Plaintiffs' RFPs 63-65, 70-85, and 87:**  Apple did not respond to our letter on this issue.  Please provide Apple's position.  To extent Apple contends that it need not respond to these RFPs because the patent case is stayed, Apple is incorrect.  For example, RFP 70 requests documents related to the clinical trials of the Apple Watch, which are relevant to Apple's misappropriation of Plaintiffs' trade secrets regarding business plans and strategies for interacting with hospitals.  RFP 70 seeks technical documents relevant to many issues in this case.  RFP 71 requests documents sufficient to identify all persons involved in the research, design, and development of any physiological monitoring capability of the Apple Watch Products, which is a general RFP that relates to all of Plaintiffs' non-patent claims and will allow Plaintiffs to evaluate proposed custodians for ESI searching.  Please provide Apple's position on these RFPs.

**Plaintiffs' RFPs 67-69, 86, 88, 101, 122, 128-130, and 133-135:**  We disagree with Apple's positions on these requests.  First, Apple's letter claims it is unclear "how documents related to FDA correspondence or approval (RFP Nos. 67-69) and physiological parameter evaluation (RFP No. 86) are relevant to this litigation."  FDA correspondence and approval, however, are at least relevant to the timing of when various features were incorporated into Apples devices.  They are also relevant to Apple's misappropriation of Plaintiffs' trade secrets regarding business plan and strategies for interacting with hospitals.  These RFPs also seek technical documents relevant to many other issues in this case.

Second, Apple again claims that RFP Nos. 88, 101, 122, 128-130, and 133-135 are overly broad and unduly burdensome.  However, Apple does not explain why.  Apple should provide its position so that the parties can have a productive meet and confer.

Third, Apple objects to RFP No. 128 to the extent it requests "subject matter disclosed or claimed in the disputed patents" because the "language of this Request requires Apple to draw a legal conclusion in order to respond."  Apple need not draw a legal conclusion to produce relevant discovery.  Apple should interpret the phrase "subject matter disclosed or claimed in the disputed patents" according to its plain and ordinary meaning.

**Plaintiffs' RFPs 80-82, and 136:**  Apple continues to identify RFPs 80-82 and 136 as RFPs "whose discovery obligations are met by a search of (i) the files of specific custodians negotiated between the parties, whose files are in the possession, custody, or control of Apple and (ii) specific search terms negotiated between the parties." As discussed above, Apple should perform a reasonable search for documents separate and apart from ESI searching for these RFPs.  Please confirm that Apple will perform a reasonable search for and produce the requested documents.

**Plaintiffs' RFPs 89-97, 129 and 136:**  Apple continues to identify these RFPs as RFPs where it intends to solely use search terms and custodians to identify responsive documents.  As explained above, Apple should perform a reasonable search for documents separate and apart from ESI searching.  Apple also argues that these RFPs are overly broad and unduly burdensome.  However, Apple does not explain why.  Please provide your position so that the parties can have a productive discussion at the meet and confer.  Finally, Apple continues to object to RFPs 91, 129, and 136 because they seek "'any

# Knobbe Martens

communications,' which will be negotiated and produced pursuant to the ESI Order in this case." Plaintiffs' letter asked Apple to explain this objection, but Apple did not do so.  Please explain.

**Plaintiffs' RFPs 98 and 99:**  Apple did not respond to Plaintiffs' letter regarding this issue. Please provide Apple's position.

**Plaintiffs' RFPs 132 and 144:**  Apple continues to assert that it does not have organizational charts.  Please identify what documents Apple maintains that show Apple's organizational structure or the reporting and supervisory obligations of various employees, regardless of whether they are labeled as organization charts.

## Compliance with ESI Order

In the stipulated ESI Order, the parties agreed to "provide a proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case" in conjunction with a meet and confer on ESI.  Apple asserts it is "premature" to do so because "Plaintiffs have yet to provide a sufficient trade secret disclosure or responses to Apple's discovery, and Apple has not yet filed an answer."  Plaintiffs provided an adequate section 2019.210 statement, however, and have responded to Apple's discovery.  Further, in the parties' October 27, 2020, Joint Stipulation, Apple agreed "that it will not use the fact that it has not yet Answered as a basis for refusing to provide or delaying providing discovery."  Thus, it is not premature for the parties to begin the stipulated process to agree on search terms and custodians.  Apple further "contends that the parties should discuss reasonable limits on the number of custodians before any exchanges of custodians can occur."  The stipulated ESI Order, however, does not require this.  Please confirm that Apple will proceed in accordance with the stipulated ESI Order.

## Apple's Deficient Document Production

Apple claims it will produce documents on a rolling basis, but has produced less than 1400 documents.  Apple has not produced responsive documents even as to RFPs as to which it committed to produce documents months ago.  Moreover, Apple agreed to produce the documents identified in its initial disclosures almost four months ago, but has not produced the documents, including documents concerning Apple's conception, reduction to practice, diligence, ownership, marketing, sales, development, operation, regulation, and implementation of the inventions claimed in the patents and patent applications at issue in Plaintiffs' Correction of Inventorship and Declaratory Judgment claims. Please let us know when Apple will make substantial document productions.

## Plaintiffs' Interrogatories Nos. 7-10

As explained in Plaintiffs' letter, Interrogatories 7-9 request details on the design and development of the Apple Watch.  Apple's responses are woefully deficient and provides little of the requested information.  Apple did not respond to Plaintiffs' letter on this topic.  To the extent Apple contends that it need not respond to these interrogatories because the patent case is stayed, Apple is incorrect.  The requested information is relevant to Plaintiffs' non-patent claims at least to show when Plaintiffs' trade secrets were incorporated into the Apple Watch and to show if Apple in fact invented

# Knobbe Martens

any of the subject matter claimed in the disputed patents.  Please confirm that Apple will supplement its response by December 2, 2020.

Interrogatory 10 also requests details on any test, analysis, comparison, or competitive analysis that Apple performed on any non-Apple physiological monitor.  Apple's response requested a meet and confer to discuss the relevance of this interrogatory.  Plaintiffs' letter asked Apple to explain its position, but Apple did not respond.  Again, to the extent that Apple contends that it need not respond to this interrogatory because the patent case is stayed, Apple is incorrect.  The requested information is relevant, for example, to any contention by Apple that it independently derived Plaintiffs' trade secrets and to any contention by Apple that it invented any of the subject matter claimed in the disputed patents. Apple should explain its position on Interrogatory 10 so the parties can have a productive meet and confer.

### Apple Watch Series 6 and SE

Plaintiffs' letter requested that Apple confirm that it will not withhold documents on the Apple Watch Series 6 and SE now that those products are released.  Apple did not respond.  Please confirm that Apple will provide Plaintiffs' requested discovery as to the Apple Watch Series 6 and Series SE.

Best regards,

Stephen W. Larson

32796726

# Exhibit F

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian K. Andrea
Direct: +1 202.887.3624
Fax: +1 202.530.4220
BAndrea@gibsondunn.com

November 25, 2020

<u>VIA E-MAIL</u>

Stephen W. Larson
Knobbe, Martens, Olson & Bear, LLP
2040 Main St., 14th Fl.,
Irvine, CA 92614
Stephen.Larson@Knobbe.com

Re:   *Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.*, Case No. 8:20-cv-
      00048-JVS (JDEx) (C.D. Cal.)

Dear Steve:

I write in response to your letter dated November 16, 2020.

As an initial matter, Apple notes that many of the "issues" identified in Plaintiffs' letter,
including but not limited to the sections of Plaintiffs' letter labeled "Plaintiffs' RFPs 5-27,"
"Section 2019.210 Statement," "Plaintiffs' RFPs 63-65, 70-85, and 87," "Plaintiffs' RFPs 67-
69, 86, 88, 101, 122, 128-130, and 133-135," "Plaintiffs' RFPs 98 and 99," "Plaintiffs' RFPs
98 and 99," "Plaintiffs' Interrogatories Nos. 7-10," and "Apple Watch Series 6 and SE,"
concern the parties' disagreement as to whether or not Plaintiffs' requests seek discovery
related to their trade secret allegations. As Plaintiffs are aware, discovery from Apple related
to Plaintiffs' trade secret allegations has been stayed pending Plaintiffs' compliance with
Section 2019.210. (Dkt. No. 37). As we already informed you, Plaintiffs' November 6
amended disclosure remains deficient, and therefore does not comply with Section 2019.210.
*See* 11/12/2020 Samplin to Powell Ltr.  Accordingly, Apple maintains its objection to
producing any discovery that is solely related to Plaintiffs' trade secret allegations. *See* Cal.
Civ. Code § 2019.210. If Plaintiffs provide a Section 2019.210-complaint disclosure, Apple
will meet and confer with Plaintiffs regarding the relevance and scope of Plaintiffs' discovery
requests.

### **"Apple's Reliance on Custodians and Search Terms"**

Apple is willing to remove RFPs 26, 89-97, and 117 from its list of RFPs that may be satisfied
through the use of search terms and custodians alone. For each of these RFPs, Apple will
perform a reasonable search beyond search terms and custodians to locate information
responsive to such RFPs, to the extent such documents exist.

Exhibit F
-34-

**GIBSON DUNN**

Stephen W. Larson
November 25, 2020
Page 2

Apple maintains its position as to RFPs 31, 32, 80-82, 128, 129, and 136. These RFPs are exceedingly broad in scope, and thus targeted searches for responsive documents without search terms and custodians are unreasonable, unduly burdensome, and disproportionate to the needs of the case. Plaintiffs specifically request clarification of Apple's objection to RFPs 91, 129, and 136 because they seek "'any communications.'" As Plaintiffs are aware, communications such as email will be located and produced pursuant to the ESI Order in this case. Accordingly, Apple will use search terms and custodians to locate "any communications" responsive to these RFPs that may exist.

### Plaintiffs' First and Second Set of Requests For Production (RFPs 1-60)

**Plaintiffs' RFPs 1, 3, 4, 34, 40, 51, and 59:** Plaintiffs' RFPs 1, 3, 4, 34, 40, and 59 are directed to Plaintiffs' patent infringement allegations and seek discovery that is relevant only to claims that have been stayed. Apple is not obligated to respond to these requests unless and until the patent infringement case is resumed. Regarding Plaintiffs' RFP 51, Apple agrees to produce all Apple year-end SEC financial statements and/or annual reports from 2015 to the present.

**Plaintiffs' RFPs 5-27:** To the extent Plaintiffs' RFPs 5-27 are related to Plaintiffs' trade secret allegations, trade secret discovery is stayed. And even if Plaintiffs are correct that these RFPs *also* relate to patents, the patent infringement case is stayed—and, therefore, Apple has no obligation to produce responsive documents based on Plaintiffs' purported patents justification. If Plaintiffs provide a Section 2019.210-compliant disclosure, Apple will meet and confer with Plaintiffs regarding the relevance and scope of these RFPs, as it pertains to the trade secret claim.

### Plaintiffs' Third Set of Requests For Production (RFPs 61-147)

**Section 2019.210 Statement:** Apple is withholding documents responsive to Plaintiffs' RFPs 61-109, 122-25, and 130-47 based on its Section 2019.210 objection. To the extent these RFPs are related to Plaintiffs' trade secret allegations, trade secret discovery is stayed. If Plaintiffs provide a Section 2019.210-compliant disclosure, Apple will meet and confer with Plaintiffs regarding the relevance and scope of these RFPs. With respect to RFPs 110-121 and 126-129, Apple agrees to produce responsive documents, subject to its objections, to the extent any such documents exist and can be located after a reasonable search.

**"Temporal Scope":** Without temporal limitations, the scope of certain RFPs are overbroad and irrelevant to the issues in the present action. For example, Plaintiffs' RFP 106 requests "All documents and things referring or relating to, or otherwise evidencing, valuations of any physiological monitoring technology or intellectual property relating to physiological monitoring technology," and RFP 133 requests "Documents sufficient to identify any legal proceeding involving any of the Apple Watch Products." These Requests are not sufficiently

**GIBSON DUNN**

Stephen W. Larson
November 25, 2020
Page 3

tailored to lead to the discovery of admissible evidence.  Plaintiffs, with superior knowledge of the relevant time periods at issue, are in the best position to propose time period limitations. Apple maintains its position that upon Plaintiffs' identification of relevant time periods, Apple will provide information and documents in its possession, custody, or control for the relevant time period.

**"Products Not Identified in the Complaint"**:  The RFPs for which Plaintiffs raise this discovery issue are directed to Plaintiffs' patent infringement allegations.  The patent infringement case is stayed, and therefore Plaintiffs' purported issues with Apple's responses to these RFPs are moot.  Apple is not obligated to respond to these RFPs unless and until the Court lifts the stay.  If Plaintiffs contend that certain individual Requests seek information Apple is obligated to produce notwithstanding the stay, please identify such Requests and explain in detail Plaintiffs' purported justification for production despite the stay.

**"Not Limited to the Publicly Released Apple Watch Series 3-5 Devices"**:  The RFPs for which Plaintiffs raise this discovery issue are directed to Plaintiffs' patent infringement allegations.  The patent infringement case is stayed, and therefore Plaintiffs' purported issues with Apple's responses to these RFPs are moot.  Apple is not obligated to respond to these RFPs unless and until the Court lifts the stay.  If Plaintiffs contend that certain individual Requests seek information Apple is obligated to produce notwithstanding the stay, please identify such Requests and explain in detail Plaintiffs' purported justification for production despite the stay.

**"Public Documents"**:  Apple agrees not to withhold documents solely on the grounds that they are easily available to Plaintiffs.  Apple will produce responsive public documents to the extent they are located after a reasonable search for responsive documents.

**Plaintiffs' RFPs 63-65, 70-85, and 87**:  Plaintiffs' RFPs 63-65, 70-85, and 87 are directed to Plaintiffs' patent infringement allegations.  The patent infringement case is stayed, and therefore Plaintiffs' issues with Apple's responses to these RFPs are moot,.  Apple is not obligated to respond to these RFPs unless and until the Court lifts the stay.  If Plaintiffs contend that certain individual Requests seek information Apple is obligated to produce notwithstanding the stay, please identify such Requests and explain in detail Plaintiffs' purported justification for production despite the stay.

**Plaintiffs' RFPs 67-69, 86, 88, 101, 122, 128-130, and 133-135**:  To the extent RFPs 67-69, 86, 88, 101, 122, 128-130, and 133-135 are related to Plaintiffs' trade secret allegations, trade secret discovery is stayed.  If Plaintiffs provide a Section 2019.210-compliant disclosure, Apple will meet and confer with Plaintiffs regarding the relevance and scope of these RFPs.

**GIBSON DUNN**

Stephen W. Larson
November 25, 2020
Page 4

**Plaintiffs' RFPs 98-99:**  To the extent that RFPs 98-99 are related to Plaintiffs' trade secret allegations, trade secret discovery is stayed.  If Plaintiffs provide a Section 2019.210-compliant disclosure, Apple will meet and confer with Plaintiffs regarding the relevance and scope of these RFPs.

**Plaintiffs' RFPs 132-144:**  As Apple has explained several times, Apple does not maintain formal or informal organizational charts.  In lieu of organizational charts, Apple maintains and relies upon an internal directory, but no documents responsive to these RFPs have been located in that directory following a reasonable search.

### "Compliance with ESI Order"

Plaintiffs' trade secret discovery is stayed pending compliance with Section 2019.210. Accordingly, Apple's position is that it would be inefficient and unduly burdensome to proceed with exchanging custodians and ESI until the full scope of the case has been crystallized, as opposed to proceeding with custodian and ESI exchanges related to Plaintiffs' inventorship and ownership allegations now and Plaintiffs' trade secret allegations down the road, after Plaintiffs comply with Section 2019.210.  That being said, in the interest of moving the litigation along, Apple is willing to begin the stipulated process of negotiating search terms and custodians, but reiterates its request that the parties first discuss and agree on a reasonable number of custodians before proceeding.  Plaintiffs' position appears to be that the parties can identify an infinite number of custodians, which is entirely unreasonable.

### "Apple's Deficient Document Production"

As Apple has explained previously, Apple's investigation of Plaintiffs' allegations in this case is ongoing and Apple will continue to produce documents on a rolling basis, as it has been doing.  Apple notes that its ability to search for, identify, and produce documents relevant to Plaintiffs' trade secret allegations has been hindered by Plaintiffs' failure to serve a Section 2019.210-compliant disclosure.

### Plaintiffs' Interrogatories Nos. 7-10

As noted above, to the extent these Interrogatories are related to Plaintiffs' trade secret allegations, trade secret discovery is stayed.  If Plaintiffs provide a Section 2019.210-compliant disclosure, Apple will meet and confer with Plaintiffs regarding the relevance and scope of these Interrogatories.

**GIBSON DUNN**

Stephen W. Larson
November 25, 2020
Page 5


### "Apple Watch Series 6 and SE"

As noted above, to the extent information requested regarding the Apple Watch Series 6 and SE is related to Plaintiffs' trade secret allegations, trade secret discovery is stayed.  If Plaintiffs provide a Section 2019.210-compliant disclosure, Apple will meet and confer with Plaintiffs regarding the relevance and scope of Plaintiffs' discovery requests.

*        *        *

Apple is available to meet and confer with Plaintiffs on the following days and times:  Tuesday, December 1 between 11 and 12:30 pm PT or any time Thursday, December 3 after 10 am PT. Please let us know which date and time works for you.


Sincerely,

Brian K. Andrea

# Exhibit G

| | |
|---|---|
| **From:** | Andrea, Brian  BAndrea  ibsondunn. om |
| **Sent:** | ednesday,  e ember 2, 2020 3: 0 PM |
| **To:** | Adam.Powell |
| **Cc:** | *** Apple-Masimo; Masimo.Apple |
| **Subject:** | Masimo Corp. et al. v. Apple In ., 20- v-000 8 - ESI  ustodians |

Adam,

Further to our discussion regarding ESI custodians during the meet and confer yesterday, Apple proposes that the parties be limited to eight (8) custodians, which we believe is appropriate and a reasonable limitation for a case like this.  Of course, Apple envisions that additional custodians could be identified later in the case if good cause exists to exceed the agreed limitation.  Please let us know if Plaintiffs are willing to agree.

Best regards,
Brian


**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit G
-40-

# Exhibit H

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# Exhibit I

Exhibit I
-46-

# Knobbe Martens

KNOBBE,MARTENS,OLSON & BEAR,LLP

12790 El Camino Real, Suite 100, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

December 30, 2020

**VIA EMAIL**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.,
Washington, DC 20036-5306

Re:    Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Ilissa:

    We write to address certain matters in your December 9, 2020, letter as well as Apple's position on ESI custodians.

    **RFPs 61-62, 88, 123-125, 130-132, 136-145, and 147**: We understand from your December 9, 2020, letter that Apple is withdrawing Apple's Section 2019.210 objection to RFPs 61-62, 88, 123-125, 130-132, 136-145, and 147.  We also understand that Apple is no longer withholding documents to these RFPs based on its remaining objections.  Please confirm Apple will be producing documents responsive to these RFPs and inform us when Apple expects to make a substantial production.

    **RFPs 122 and 133-35:**  For these RFPs, Apple first claims that it is withdrawing its Section 2019.210 objection.  Later in the letter, however, Apple argues that, to the extent these RFPs seek trade secret discovery, trade secret discovery is stayed and that "[i]f Plaintiffs provide a Section 2019.210-compliant disclosure, Apple will meet and confer with Plaintiffs regarding the relevance and scope of these RFPs, as they pertain to the trade secret claim."  Please confirm that Apple is withdrawing its Section 2019.210 objection for RFPs 122 and 133-35.  Please also confirm that Apple is not withholding responsive documents to RFPs 122 and 135 based on any other objection and will be producing responsive documents.  For RFPs 133-134, Plaintiffs' agree that Apple's production of public complaints from legal proceedings involving the Apple Watch would satisfy Apple's obligation to respond to RFP 133.  After Apple has produced these documents, Plaintiffs will further consider their position on RFP 134.

    **Apple's Document Production:**  During the parties' meet and confer, Apple confirmed that it would produce documents responsive to Plaintiffs' patent ownership and inventorship RFPs.  However, Apple argued that Plaintiffs should not expect many documents and that Apple's production is likely to consist of a small number of patent prosecution documents.  Apple now appears to have produced some of the file histories for the Disputed Patents and documents related to Apple's policy of compensating employees that file patent applications.  Apple's arguments and recent production raise concerns that Apple is not adequately searching for and producing documents responsive to Plaintiffs' RFPs.  For example, Plaintiffs' RFPs request documents such as:

- Any document on which Apple may or intends to rely to show (a) the alleged contribution of the named inventors to the conception or reduction to practice of the subject matter of the Disputed Patents, (b) that the named inventors satisfy the requirements to have been properly identified as inventors on the Disputed Patents; or (c) that the Disputed Patents were properly assigned to and are owned by Apple;

- Any documents that refute or otherwise relate to (a) any alleged contribution of the named inventors to the conception or reduction to practice of the subject matter of the Disputed Patents, (b) whether the named inventors satisfy the requirements to have been properly identified as inventors on the Disputed Patents; or (c) whether the Disputed Patents were properly assigned to and are owned by Apple;

- All documents reflecting work that the named inventors performed as part of allegedly inventing, developing, or reducing to practice the subject matter of the Disputed Patents, including laboratory notebooks, engineering documents, experiment or test records, communications, reports, meeting minutes, self or other evaluations, and correspondence;

- Communications from or to any named inventor regarding the subject matter of the Disputed Patents;

- Communications regarding Apple's meetings with Plaintiffs;

- All documents reflecting information exchanged between Apple and Plaintiffs, or any of their employees or independent contractors, regarding the subject matter of the Disputed Patents;

- Projections, consumer surveys, or other documents related to the value of the inventions or subject matter of the Disputed Patents; and

- The prosecution files for the Disputed Patents and related patents and patent applications, including any invention disclosures, memoranda, or other documents that provided the basis for preparation of drafts or final version of any of the patents, patent applications, or documents filed during prosecution.

Please confirm that Apple will search for and produce documents, like those listed above, that are responsive to Plaintiffs' patent ownership and inventorship RFPs.

**RFPs 5-27, 63-87, 97-109, 128-132, 148-206, 208-13, 216-22, 234-37, 242-43, and 247:** For these RFPs, Apple has refused to meet and confer on its various objections and has instead claimed that it will not meet and confer on these RFPs until Apple receives a Section 2019.210 disclosure that it deems sufficient. As you know, Plaintiffs contend that their Section 2019.210 is more than sufficient, and no Court has held otherwise. Nothing in the Court's stay allowed Apple to unilaterally withhold discovery based on its position on sufficiency. Accordingly, Apple's blanket refusal to meet and confer on its objections to Plaintiffs' RFPs delays discovery and is contrary to the Local Rules.

**ESI Custodians:** Apple has proposed that the parties be limited to eight custodians. The ESI order does not contain any such limit. Instead, the ESI order states that "each party shall provide a

Exhibit I
-48-

proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case (e.g., the asserted patents, alleged misappropriation of trade secrets, the development, design and operation of the accused products, and sales, marketing and other damages-related information for the accused products)."  Pursuant to the ESI order, the parties should exchange lists of custodians who are knowledgeable about or were involved with core issues or subjects in this case.  The parties can then evaluate the proposed lists of custodians and potentially discuss whether any limitations would be appropriate.  Plaintiffs submit that the parties should exchange their lists of custodians on January 15, 2021.

Best regards,

Adam B. Powell

32796726

Exhibit I
-49-

# Exhibit J

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Ilissa Samplin
Direct: +1 213.229.7354
Fax: +1 213.229.6354
ISamplin@gibsondunn.com

January 13, 2021

<u>VIA E-MAIL</u>

Adam B. Powell
Knobbe, Martens, Olson & Bear, LLP
12790 El Camino Real, Suite 100
San Diego, CA 92130
Adam.Powell@knobbe.com

Re:   *Masimo Corp. et al. v. Apple, Inc.*, C.A. 8:20-cv-00048 (C.D. Cal.)

Dear Adam:

I write in response to your letter dated December 30, 2020.

**RFPs 61-62, 88, 123-125, 130-132, 136-145, and 147:**  Apple confirms that it is withdrawing its Section 2019.210 objection to these RFPs.  Apple is not withholding documents to these RFPs based on any other objections.  As Apple has previously explained, Apple's investigation of Plaintiffs' allegations in this case is ongoing.  Apple will continue to produce responsive, non-privileged documents on a rolling basis, to the extent that such documents exist and can be located after a reasonable search.

**RFPs 122 and 133-35:**  Apple confirms that it is withdrawing its Section 2019.210 objection to these RFPs.  Apple is not withholding documents responsive to RFPs 122 and 135 based on any other objection and will continue to produce responsive, non-privileged documents on a rolling basis, to the extent that such documents exist and can be located after a reasonable search.

With respect to RFPs 133-34, Plaintiffs' December 30, 2020 letter does not address a proposal made by Apple, and which Plaintiffs agreed to consider, during the parties' meet and confer call on December 1, 2020.  Specifically, during the call, Apple noted that Plaintiffs had previously declined to produce documents similar in scope to the documents requested by Plaintiffs' RFP Nos. 133-134, i.e., documents responsive to Apple's RFP Nos. 75-76, which request documents concerning any litigation or prior legal action in which Plaintiffs have made trade secret appropriation claims.  Apple proposed agreeing to produce the complaints from legal proceedings involving the Apple Watch if Plaintiffs likewise agreed to produce the complaints from Plaintiffs' prior legal proceedings that involve claims for trade secret misappropriation.  Please let us know if we have an agreement on this proposal.

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

Exhibit J
-51-

**GIBSON DUNN**

Page 2

**Apple's Document Production:**  Plaintiffs' purported "concerns that Apple is not adequately searching for and producing responsive to Plaintiffs' RFPs" (Dec. 30 2020 Ltr. at 1), are entirely unfounded.  Apple's investigation of Plaintiffs' allegations in this case is ongoing and Apple continues to produce documents on a rolling basis, as Apple has done and intends to continue doing.  Apple has diligently produced the non-privileged documents located to date that are responsive to Plaintiffs' correction of inventorship and ownership allegations, including but not limited to Apple's files for each of the Apple Patents and Apple Application subject to Plaintiffs' claims (including the patents, file histories, and assignment documents), the Marcelo Lamego hiring documents and agreements, and Apple's Patent Recognition Program.  Moreover, I note that Plaintiffs have refused to provide basic factual information regarding their correction of inventorship and ownership allegations in response to Apple's Interrogatory Nos. 4-5 and 23, leaving Apple in the dark as far as the contours of the parties' dispute and the scope of relevant documents.  Plaintiffs' attempt to flip the burden on Plaintiffs' correction of inventorship and ownership allegations, by refusing to provide information to Apple while at the same time seeking broad discovery from Apple, is improper.

Plaintiffs' December 30, 2020 letter also provides eight bullet points listing exemplary categories of documents Plaintiffs seek from Apple, without identifying the RFPs that purport to request those categories of documents.  It is unclear whether Plaintiffs are seeking documents pursuant to RFPs they have already served, or if they are attempting to expand the scope of document discovery by way of correspondence in lieu of formal discovery requests.  As you know, the latter is improper.  Apple has already responded to—and the parties have engaged in extensive correspondence and meet and confers regarding—Plaintiffs' RFPs, and thus Plaintiffs already have Apple's position on the scope of documents it has agreed to produce, to the extent such documents exist and are located after a reasonable search.  Apple refers Plaintiffs to its discovery responses and the parties' correspondence for Apple's position on each of the categories listed in Plaintiffs' letter, to the extent those categories even correspond to existing RFPs.

**RFPs 5-27, 63-87, 97-109, 128-132, 148-206, 208-13, 216-22, 234-37, 242-43, and 247:**  Plaintiffs completely misstate and mischaracterize Apple's position regarding these RFPs.  Apple has not "refused to meet and confer on various objections"; rather, Apple's position (which it made very clear to Plaintiffs during numerous meet and confers) is that Apple believes it is a waste of the parties' time and resources to discuss Apple's objections to these RFPs while the parties' dispute about Plaintiffs' Section 2019.210 statement remains pending.  The scope of Plaintiffs' allegations may change depending on how the Court resolves the dispute, which will in turn impact the scope of Apple's objections and responses to these RFPs.  For example, Apple may have objected to a request based on overbreadth, but may be able to drop that objection later if the Court orders Plaintiffs to identify their alleged secrets with greater particularity and Plaintiffs comply.  Thus, Apple maintains that it would be most

**GIBSON DUNN**

Page 3

efficient for the parties to discuss Apple's full positions on the scope and relevance of these
RFPs once the bounds of the trade secrets are identified.  Accordingly, and contrary to your
letter, Apple suggested holding off on discussing the scope of such RFPs until resolution of
the 2019.210 disclosure issue.  While Apple's position remains that a discussion about the
specific objections to these RFPs is premature and an inefficient use of the parties' resources,
to the extent Plaintiffs insist on discussing Apple's objections beyond its Section 2019.210
objection now, before the Court rules on Apple's Section 2019.210 motion to compel, Apple
is willing to do so—with a reservation of all rights to modify its positions based on the Court's
ruling.

**ESI Custodians:**  Plaintiffs' refusal to even discuss reasonable limits on ESI custodians is
concerning, as it suggests that it is Plaintiffs' position that they may identify an infinite number
of custodians in this case.  As you know, the number of custodians in a case greatly impacts
cost, burdens, and various other factors.  In an effort to prevent this case from spiraling out of
control on either side, Apple submits that the best course of action is for the parties to exchange
their thoughts on a reasonable number of custodians at this juncture.  As you may know, the
Model Order for E-Discovery adopted by the Northern District of California, numerous other
district courts, and the Federal Circuit Advisory Counsel all set limits on the number of
document custodians.  Apple is not proposing anything controversial here.

When Apple first requested that the parties discuss reasonable limits on ESI custodians,
Plaintiffs asked that Apple provide its proposal.  Apple provided its proposal—eight
custodians—to Plaintiffs on December 2, 2020.  To date, Plaintiffs have provided no indication
as to what they consider to be a reasonable number of custodians, instead insisting that there
should be no limit.  This is not a helpful or productive approach to discovery.  It remains
Apple's position that, to begin the stipulated process outlined in the ESI Order, the parties
should discuss and attempt to agree upon a reasonable number of ESI custodians.  A limit on
the number of custodians will help the parties select and prioritize the custodians to identify
and ensure that the scope of discovery is proportional to the needs of the case.  Of course, if
good cause exists for the identification of additional custodians later in the case, Apple would
not oppose, but for now, the parties should be able to agree on a reasonable number on each
side.

**GIBSON DUNN**

Page 4


Accordingly, Apple reiterates its request that Plaintiffs respond to Apple's proposal with the number of ESI custodians they consider reasonable in this case.  Please let us know if we can reach agreement here.  Otherwise, we will need to seek the Court's guidance.

Sincerely,


Ilissa Samplin

# Exhibit K

1   Joseph R. Re (Bar No. 134479)
    joseph.re@knobbe.com
2   Stephen C. Jensen (Bar No. 149894)
    steve.jensen@knobbe.com
3   Benjamin A. Katzenellenbogen (Bar No. 208527)
    ben.katzenellenbogen@knobbe.com
4   Perry D. Oldham (Bar No. 216016)
    perry.oldham@knobbe.com
5   Stephen W. Larson (Bar No. 240844)
    stephen.larson@knobbe.com
6
7   **KNOBBE, MARTENS, OLSON & BEAR, LLP**
    2040 Main Street, Fourteenth Floor
8   Irvine, CA 92614
    Telephone: (949) 760-0404; Facsimile: (949) 760-9502
9
10  Adam B. Powell (Bar. No. 272725)
    adam.powell@knobbe.com
11  **KNOBBE, MARTENS, OLSON & BEAR, LLP**
    12790 El Camino Real
12  San Diego, CA 92130
    Telephone: (858) 707-4000; Facsimile: (858) 707-4001
13
14  Attorneys for Plaintiffs,
    Masimo Corporation and Cercacor Laboratories, Inc.
15
    *Counsel for Defendants listed on next page.*
16
           **IN THE UNITED STATES DISTRICT COURT**
17        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                      **SOUTHERN DIVISION**
18

| | |
|---|---|
| 19  MASIMO CORPORATION, a Delaware corporation; and | ) Case No. 8:20-cv-00048-JVS-JDE |
| 20  CERCACOR LABORATORIES, INC., a Delaware corporation | ) Hon. James V. Selna ) Magistrate Judge John D. Early |
| 21           Plaintiffs, | ) **JOINT STIPILATION** |
| 22        v. | ) **REGARDING PLAINTIFFS'** ) **MOTION TO COMPEL APPLE** ) **TO COMPLY WITH ESI ORDER** |
| 23  APPLE INC., a California corporation | ) |
| 24           Defendant. | ) Date: ) Time:        10:00 a.m. ) Ctrm:        6A |
| 25 | ) |
| 26 | ) Discovery Cut-Off:      7/5/2021 ) Pre-Trial Conference:    3/21/2022 ) Trial:                  4/5/2022 |
| 27 | |
| 28 | |

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.:  415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.:  650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8541 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

Attorneys for Defendant Apple Inc.

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Plaintiffs"), as movant, and Defendant Apple, Inc. ("Apple"), as respondent, through their respective counsel of record, submit this joint stipulation in connection with Masimo's Motion To Compel Apple To Comply With The ESI Order.  This Joint Stipulation was prepared following the parties' conference of counsel, which took place on December 1, 2020.

## I.  INTRODUCTORY STATEMENTS

### A.  Plaintiffs' Introduction

Plaintiffs regret having to bring this Motion because the parties already have an ESI Order from the Court.  In June 2020, the parties stipulated to—and the Court entered—the ESI Stipulation and [Proposed] Order. Ex. 1 ("ESI Order"); Ex. 2 (this Court entering the ESI Order).[1]  The ESI Order provides the parties must exchange lists of custodians who are "knowledgeable about and were involved with the core issues or subjects in this case (e.g., the asserted patents, alleged misappropriation of trade secrets, the development, design and operation of the accused products, and sales, marketing and other damages related information for the accused products)."  ESI Order at 1.  Thereafter, the parties are to meet and confer on the final list of custodians and search terms.  *Id.*

For months, Apple has argued it need not provide its list until Plaintiffs agree to limit the number of custodians at issue in advance.  Apple proposed the parties limit the number to eight.  But nothing in the ESI Order requires or contemplates such an artificial number, much less *before* exchanging lists of potential custodians.  Plaintiffs request the parties follow the ESI Order, which requires the parties to exchange proposed lists of potential custodians and *then* meet and confer on final lists.  The parties can discuss potential limitations once they know the number and identity of potential custodians.

---

[1] In Plaintiffs' section of the Joint Stipulation, all citations to numbered exhibits are to the exhibits attached to the Declaration of Adam Powell.  All emphasis in Plaintiffs' sections is added unless noted otherwise.

Moreover, Apple's proposal for an additional restriction to the ESI Order is insufficient in a case of this magnitude. This case includes claims for trade secret misappropriation and correction of inventorship/ownership of numerous Apple patents and patent applications. There are at least two former employees of Plaintiffs at issue, six other Apple employees named as inventors, and five other Apple employees listed on Apple's initial disclosures. That alone is thirteen custodians without including others who worked on relevant projects at Apple. Without the exchange required by the ESI Order, Plaintiffs have no idea how many Apple employees are at issue and should not be required to limit the number of custodians up front.

Apple's approach is prejudicing Plaintiffs by significantly delaying discovery. Apple is refusing to comply with the ESI Order while arguing it need not produce discovery until the parties agree on final custodians and search terms. If Apple now disagrees with the ESI Order, Apple should have moved the Court for relief long ago.

Apple's approach also risks prejudicing Plaintiffs by concealing evidence relevant to Plaintiffs' claims. Limiting the number of custodians at issue will necessarily limit discovery. The parties and the Court may need to conduct a proportionality analysis to balance Plaintiffs' interest in obtaining discovery against Apple's interest in saving costs. *See* Fed. R. Civ. P. 26. Such analysis is not possible until Apple provides its list of proposed custodians.

As Judge Selna previously explained, requiring Plaintiffs to narrow their case at the onset without sufficient information from Apple is "fundamentally unfair." Ex. 3 at 3:18-4:2 (rejecting Apple's proposal to narrow the asserted patent claims at the onset of this case). Plaintiffs are willing to discuss limiting the number of custodians, but should not have to do so until Apple provides a list of the universe of potential custodians, just as required by the ESI Order.

**B.**     **Apple's Introduction**

\*\*\*

## II.  **PLAINTIFFS' POSITION**

Exhibit K
-59-

## A. <u>Factual Background</u>

Apple prepared the original ESI stipulation and asked Plaintiffs to agree. Ex. 4. The parties made some minor changes, stipulated to the ESI Order on June 1, and the Court entered the Order the same day. *See* Exs. 1 and 2. The ESI Order provides:

> In connection with the meet and confer process, ***each party shall provide a proposed list of individual custodians*** who are knowledgeable about and were involved with the core issues or subjects in this case (e.g., the asserted patents, alleged misappropriation of trade secrets, the development, design and operation of the accused products, and sales, marketing and other damages related information for the accused products). ***The parties then shall meet and confer in an attempt to reach agreement*** on custodians and search terms to be used for electronic searches of the files from those custodians.

ESI Order at 1.

On October 1, Plaintiffs requested the parties exchange the required lists of custodians. Ex. 5 at 5. Apple asserted the exchange was "premature and inappropriate" because (1) Plaintiffs' 2019.210 disclosure was purportedly inadequate, (2) Apple had not yet filed an answer, and (3) the parties should first limit the number of custodians before exchanging lists. Ex. 6 at 2, 5.

Plaintiffs provided their 2019.210 disclosure months ago and explained the disclosure was adequate.[2] Ex. 7 at 2. Plaintiffs also reminded Apple it had previously agreed—as a condition to obtaining an extension—that "it will not use the fact that it has not yet Answered as a basis for refusing to provide or delaying providing discovery." *Id.* at 4. Finally, Plaintiffs explained the ESI Order does not limit the number of custodians up front and asked Apple to "proceed in accordance with the stipulated ESI Order." *Id.*

Apple again demanded the parties agree to limit the number of custodians before exchanging their lists. Ex. 8 at 4. The parties met and conferred on December 1, 2020,

---

[2] This Court recently confirmed Plaintiffs' Section 2019.210 disclosure was and is sufficient. Ex. 13 (Dkt. 279).

1    and exchanged additional correspondence thereafter.  Exs. 9-12.  During a separate

2    hearing on January 21, 2020, Apple asserted the parties had reached an impasse on this

3    issue.  Thus, Plaintiffs seek the Court's assistance.

4    **B.**    <u>**Argument**</u>

5         Despite the entry of the ESI Order six months ago, Apple refuses to engage with

6    Plaintiffs unless Plaintiffs agree to limit the number of custodians in advance.  Apple's

7    approach is inconsistent with the terms of the ESI Order and is prejudicing Plaintiffs.

8         **1.**    <u>**Apple's Position Is Inconsistent With The Order**</u>

9         The ESI Order is clear and unambiguous.  The parties agreed, and the Court

10   ordered, that the parties would exchange a "proposed list of individual custodians who are

11   knowledgeable about and were involved with the core issues or subjects in this case . . .."

12   ESI Order at 1.  Nowhere does the ESI Order limit the number of custodians before the

13   parties exchange lists.  Instead, the order provides the parties should meet and confer to

14   discuss the custodians ***after*** the exchange.  *Id.* ("The parties ***then*** shall meet and confer in

15   an attempt to reach agreement on ***custodians*** and search terms ***to be used*** for electronic

16   searches").  Apple thus defies the ESI Order.

17        Apple's numerical limit of eight is also inappropriate.  Indeed, courts regularly

18   allow parties to ***search*** far more custodians than Apple is even willing to put on a list to

19   begin the discussion.  *See, e.g.*, *Oracle Am., Inc. v. Google Inc.*, 2015 WL 7775243, at \*1-

20   2 (N.D. Cal. Dec. 3, 2015) (granting plaintiff's request to add 10 custodians to existing list

21   of 27 custodians); *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 2014 WL 806122, at \*7-

22   8 (D. Kan. Feb. 28, 2014) (finding that searching 60 custodians was not unreasonable in

23   case with $70 million at issue).

24        This case currently involves numerous claims for trade secret misappropriation and

25   correction of inventorship/ownership of Apple patents and patent applications.  *See* Dkt.

26   No. 230-2 at ¶ 223-231, 245-349.  Plaintiffs' trade secret claims primarily concern secrets

27   taken to Apple by Plaintiffs' former employees, Lamego and O'Reilly.  *Id.* at ¶ 9-25, 223-

28   231,   245-252.    The   correction   of   inventorship/ownership   claims   concern   7

patents/applications that name 6 inventors other than Lamego. Ex. 14. Apple's initial disclosures list five other Apple employees. Ex. 15 at 2-4. That alone would present thirteen possible custodians, not to mention other individuals who may have discoverable information. Apple has recruited more than fifteen of Plaintiffs' employees. Other relevant individuals could include other Apple employees who (1) worked with Lamego, (2) worked with O'Reilly, (3) were involved in the accused aspects of the Apple Watch, (4) were involved in the accused business and marketing strategies, or (5) were involved in the patent applications at issue but not listed as an inventor. To date, Apple has refused to answer discovery requests that would provide some of this information. *See* Ex. 16 at 13-14. Without the required list from Apple, Plaintiffs have no way of knowing how many potential custodians are at issue.

During the meet and confer, Apple argued "Plaintiffs' position appears to be that the parties can identify an infinite number of custodians . . .." Ex. 8 at 4. That is not correct. The ESI Order requires the custodians be "knowledgeable" and "involved with the core issues or subjects in this case . . .." ESI Order at 1. That is not an infinite number of custodians. Moreover, Plaintiffs are not demanding the parties search all custodians identified in the initial lists. The ESI Order—which Apple proposed—provides that the parties must identify such custodians before the parties agree on a final list of custodians. After Apple provides its list, the parties will be more informed and can discuss whether and how to limit the list or apply some terms to a subset of custodians. There is no reason to apply an arbitrary numerical limit up front.

Similarly misplaced are Apple's arguments that courts often limit the number of ESI custodians and that Plaintiffs should propose a specific number. The issue here is not whether limitations may eventually be applied. The issue is whether Apple may unilaterally impose such a restriction in a vacuum without providing the list of custodians required by the ESI Order. Plaintiffs will meet and confer regarding a potential limitation after receiving Apple's list, but should not have to agree to an arbitrary number up front.

Exhibit K
-62-

## 2.    **Apple's Approach Is Prejudicing Plaintiffs**

Apple is prejudicing Plaintiffs' ability to conduct discovery.  For months, Apple has refused to participate in the ESI process while simultaneously refusing to produce documents on the basis that the parties have not yet agreed on custodians and search terms.  *See, e.g.*, Ex. 8 at 2.

Apple's demand also risks substantively harming Plaintiffs.  Apple's artificial limit will necessarily limit discovery and could result in Plaintiffs never learning critical facts.  Ordinarily, the parties and the Court would conduct a proportionality analysis to balance Plaintiffs' interest in obtaining discovery against Apple's purported interest in saving costs.  *See* Fed. R. Civ. P. 26.  But here Apple is withholding the necessary input to that analysis: the list of potentially relevant custodians required by the ESI Order.

Judge Selna previously addressed a similar attempt by Apple to narrow this case before Plaintiffs received sufficient information.  In particular, Apple demanded that Plaintiffs narrow the number of asserted patent claims before substantial discovery took place.  *See* Ex. 3.  Judge Selna found it was "fundamentally unfair and inefficient" to require reductions at that stage.  *Id.* at 3:18-21.  In response to Apple's argument that reductions would force Plaintiffs to make "hard choices," Judge Selna explained Plaintiffs "ought to be able to make *fair* hard choices."  *Id.* at 7:2-8:8.  Similarly, here, Plaintiffs should be able to make an informed decision about the appropriate number of custodians.[3]

Apple has suggested Plaintiffs should first agree to eight custodians and then seek relief from the Court if additional custodians are necessary.  But Apple is withholding the information Plaintiffs may need to make such a showing.  Moreover, because Apple seeks to depart from the ESI Order, Apple should bear the burden of obtaining the Court's permission to deviate from that Order.  Apple's approach would impose that burden on Plaintiffs.  *See* Ex. 12 (Apple arguing Plaintiffs could add additional custodians "if good

---

[3] Other courts have rejected attempts by Apple to artificially limit the number of Apple employees who may be deposed.  *See, e.g., In re Apple iPhone Antitrust Litig.*, case no. 4:20-cv-05640 at *2 (N.D. Cal. Dec. 18, 2020) (attached as Exhibit 17).

Exhibit K
-63-

cause exists for the identification of additional custodians"). That is unreasonable and contrary to law. *See, e.g.*, *Black*, 2014 WL 806122, at \*8 (granting request to search custodians because the party resisting discovery could not make a "particular and specific demonstration" of undue burden).

## C.    <u>Conclusion</u>

For at least the reasons discussed above, Plaintiffs request the Court order Apple to provide a list of proposed custodians pursuant to the ESI Order.

## III.    <u>APPLE'S POSITION</u>

\*\*\*

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: <u>January 22, 2021</u>    By: <u>/s/</u>

Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Perry D. Oldham
Stephen W. Larson
Adam B. Powell

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories

GIBSON, DUNN & CRUTCHER LLP

Dated: <u>January 22, 2021</u>    By: <u>/s/</u>

Joshua H. Lerner
H. Mark Lyon
Brian M. Buroker
Brian A. Rosenthal
Ilissa Samplin
Brian K. Andrea
Angelique Kaounis

Attorneys for Defendant Apple Inc.

## ATTESTATION UNDER LOCAL RULE 5-4.3.4(a)(2)(i)

Pursuant to Civil L. R. 5-4.3.4(a)(2)(i), I attest that concurrence in the filing of this document has been obtained from each of the signatories above.


Dated: ___January 22, 2021___     By: _/s/_____
                                         Adam B. Powell

# Exhibit L

Exhibit L
-66-

| | |
|---|---|
| **From:** | Adam.Powell |
| **Sent:** | Thursday,  anuary 28, 2021 12:  2 PM |
| **To:** | Andrea, Brian; *** Apple-Masimo;  erner,  oshua  .;  yon,   . Mark; Buroker, Brian M.; Samplin, Ilissa;  aounis, Angeli ue; Rosenthal, Brian A. |
| **Cc:** | Masimo.Apple |
| **Subject:** | RE: Masimo v. Apple - Motion to Compel Compliance   ith ESI Order |

Brian,

The ESI Order states: "In connection with the meet and confer process, each party shall provide a proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case (e.g., the asserted patents, alleged misappropriation of trade secrets, the development, design and operation of the accused products, and sales, marketing and other damages-related information for the accused products)."  Please confirm Apple intends to provide a list that complies with the ESI Order.  If so, we agree to an exchange on February 5, 2021.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday,  anuary 2  , 2021 8:18 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner,  oshua H. < Lerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>;  aounis, Angelique <A aounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Motion to Compel Compliance With ESI Order

Dear Adam,

We proposed that the parties exchange lists of the opposing party's custodians in order to facilitate discussions, and based on Plaintiffs' statements in the joint stipulation you sent about the custodians from Apple you believe are appropriate.  In any event, Apple is willing to provide a list of proposed Apple custodians assuming Plaintiffs are willing to provide a list of proposed Plaintiffs' custodians.  We propose that the parties plan to exchange lists on February 5.  Please confirm today that Plaintiffs agree.

Best regards,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

Exhibit L
-67-

1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, anuary 26, 2021 11:2 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, oshua H. < Lerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; aounis, Angelique <A_aounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Motion to Compel Compliance With ESI Order

[External Email]
Brian,

We disagree that the parties did not conduct a meet and confer.  We have been exchanging letters on this issue for months and specifically discussed this issue during our December 1 meet and confer.  During that call, we reiterated our position from prior letters that the parties should not limit the number of custodians before exchanging proposed lists of custodians.  The parties then exchanged additional letters on this topic, but to no avail, necessitating relief from the Court.  Indeed, Apple's  anuary 13 letter ended by threatening to move the Court on this issue.  Moreover, at the hearing last week, Mr. Lerner reiterated Apple's position that the parties had reached an impasse.  Your assertion that we have not met and conferred on a specific numerical limit is irrelevant because we do not believe a numerical limit is appropriate at this time.  Likewise, we disagree with your assertion that our joint stipulation proposed a numerical limit.  Our position remains the same: the parties should exchange lists of potential custodians ***before*** agreeing to any specific numerical limit.

For the first time, Apple now states the parties should identify the ***opposing*** party's witnesses that are knowledgeable about the case.  Apple's proposal is inconsistent with the ESI Order and the parties' prior correspondence.  Indeed, Apple has never suggested that the exchange would identify the opposing party's witnesses.  Apple's proposal also makes no sense.  Plaintiffs have no access to Apple's employees and cannot be expected to identify the Apple employees with knowledge of the issues in the case.  Please let us know if Apple will provide a list of Apple's custodians as required by the ESI Order.  If not, we have no choice but to seek the Court's assistance.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Monday,  anuary 25, 2021 1:36 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner,  oshua H. < Lerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>;  aounis, Angelique <A_aounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Motion to Compel Compliance With ESI Order

Exhibit L
-68-

Dear Adam,

We have reviewed the joint stipulation you sent on Friday night.  As an initial matter, the parties have never met and conferred about the issues raised in the motion.  During the meet and confer on December 1, 2020 mentioned in your motion, Plaintiffs asked Apple for its proposal for a reasonable number of custodians; Apple provided that proposal the next day but the parties have not met and conferred about Apple's proposal.  Indeed, in an effort to avoid burdening the Court with an unnecessary and unripe motion, Apple has been asking Plaintiffs for months to provide their thoughts on the number of custodians from whom they intend to seek ESI.  Plaintiffs' joint stipulation sent on Friday was the first time Plaintiffs have provided any indication as to how many custodians they believe is appropriate.

Now that Plaintiffs have provided the information Apple has been seeking, Apple believes the parties should continue their discussions about an appropriate number of custodians.  If the parties are unable to agree, at least the dispute between the parties will be crystalized so that the Court does not need to decide the issue in a vacuum, before the parties have even had a chance to try to narrow the issues.  While Apple maintains that a discussion of the number of custodians should occur before the exchange of custodian names, Apple is willing to exchange names in order to facilitate discussion and in the interest of trying to avoid burdening the Court with another discovery motion.

Thus, Apple proposes that the parties exchange a list of the custodians from the other side whom they believe are knowledgeable about the issues in this case (i.e., Apple proposes Plaintiffs' custodians and Plaintiffs propose Apple custodians), and then the parties can use those lists to discuss a reasonable number of custodians for each side.   Apple proposes the parties make that exchange on February 5. Please let us know no later than close of business tomorrow (Tuesday,  anuary 26) if you agree.

Thanks,
Brian


**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Friday,  anuary 22, 2021 9:43 PM
**To:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner,  oshua H. < Lerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>;  aounis, Angelique <A_aounis@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Masimo v. Apple - Motion to Compel Compliance With ESI Order

[External Email]
Counsel,

During the hearing yesterday, Apple made clear it believes the parties must limit the number of custodians before providing lists of potentially relevant custodians pursuant to the ESI Order.  Based on that statement, it appears to us that the parties are at an impasse.  Accordingly, attached is a short joint stipulation addressing this issue.  We look forward to receiving Apple's portion of the joint stipulation.

Exhibit L
-69-

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

Exhibit L
-70-

# Exhibit M

| From: | Adam.Powell <Adam.Powell@knobbe.com> |
|---|---|
| Sent: | Thursday, January 28, 2021 11:11 PM |
| To: | Andrea, Brian; *** Apple-Masimo; Lerner, Joshua H.; Lyon, H. Mark; Buroker, Brian M.; Samplin, Ilissa; Kaounis, Angelique; Rosenthal, Brian A. |
| Cc: | Masimo.Apple |
| Subject: | RE: Masimo v. Apple - Motion to Compel Compliance With ESI Order |

[External Email]
Brian,

Plaintiffs intend to comply with the ESI Order.  Based on Apple's representation below, Plaintiffs withdraw their joint stipulation.  Plaintiffs reserve all rights if Apple fails to comply with the ESI Order.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 Direct
**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Thursday, January 28, 2021 1:07 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Motion to Compel Compliance With ESI Order

Adam,

Yes, Apple agrees to provide a list that complies with the ESI order on February 5, 2021, provided Plaintiffs also agree to provide such a list.  Accordingly, please confirm that Plaintiffs no longer intend to file their joint stipulation tomorrow.

Thanks,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

Exhibit M
-72-

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, January 28, 2021 2:52 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Motion to Compel Compliance With ESI Order

[External Email]
Brian,

The ESI Order states: "In connection with the meet and confer process, each party shall provide a proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case (e.g., the asserted patents, alleged misappropriation of trade secrets, the development, design and operation of the accused products, and sales, marketing and other damages-related information for the accused products)." Please confirm Apple intends to provide a list that complies with the ESI Order. If so, we agree to an exchange on February 5, 2021.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, January 27, 2021 8:18 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Motion to Compel Compliance With ESI Order

Dear Adam,

We proposed that the parties exchange lists of the opposing party's custodians in order to facilitate discussions, and based on Plaintiffs' statements in the joint stipulation you sent about the custodians from Apple you believe are appropriate. In any event, Apple is willing to provide a list of proposed Apple custodians assuming Plaintiffs are willing to provide a list of proposed Plaintiffs' custodians. We propose that the parties plan to exchange lists on February 5. Please confirm today that Plaintiffs agree.

Best regards,
Brian

**Brian Andrea**

**GIBSON DUNN**

Exhibit M
-73-

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, January 26, 2021 11:27 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Motion to Compel Compliance With ESI Order

[External Email]
Brian,

We disagree that the parties did not conduct a meet and confer.  We have been exchanging letters on this issue for months and specifically discussed this issue during our December 1 meet and confer.  During that call, we reiterated our position from prior letters that the parties should not limit the number of custodians before exchanging proposed lists of custodians.  The parties then exchanged additional letters on this topic, but to no avail, necessitating relief from the Court.  Indeed, Apple's January 13 letter ended by threatening to move the Court on this issue.  Moreover, at the hearing last week, Mr. Lerner reiterated Apple's position that the parties had reached an impasse.  Your assertion that we have not met and conferred on a specific numerical limit is irrelevant because we do not believe a numerical limit is appropriate at this time.  Likewise, we disagree with your assertion that our joint stipulation proposed a numerical limit.  Our position remains the same: the parties should exchange lists of potential custodians *before* agreeing to any specific numerical limit.

For the first time, Apple now states the parties should identify the *opposing* party's witnesses that are knowledgeable about the case.  Apple's proposal is inconsistent with the ESI Order and the parties' prior correspondence.  Indeed, Apple has never suggested that the exchange would identify the opposing party's witnesses.  Apple's proposal also makes no sense.  Plaintiffs have no access to Apple's employees and cannot be expected to identify the Apple employees with knowledge of the issues in the case.  Please let us know if Apple will provide a list of Apple's custodians as required by the ESI Order.  If not, we have no choice but to seek the Court's assistance.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 Direct

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Monday, January 25, 2021 1:36 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>

3

Exhibit M
-74-

**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Motion to Compel Compliance With ESI Order

Dear Adam,

We have reviewed the joint stipulation you sent on Friday night.  As an initial matter, the parties have never met and conferred about the issues raised in the motion.  During the meet and confer on December 1, 2020 mentioned in your motion, Plaintiffs asked Apple for its proposal for a reasonable number of custodians; Apple provided that proposal the next day but the parties have not met and conferred about Apple's proposal.  Indeed, in an effort to avoid burdening the Court with an unnecessary and unripe motion, Apple has been asking Plaintiffs for months to provide their thoughts on the number of custodians from whom they intend to seek ESI.  Plaintiffs' joint stipulation sent on Friday was the first time Plaintiffs have provided any indication as to how many custodians they believe is appropriate.

Now that Plaintiffs have provided the information Apple has been seeking, Apple believes the parties should continue their discussions about an appropriate number of custodians.  If the parties are unable to agree, at least the dispute between the parties will be crystalized so that the Court does not need to decide the issue in a vacuum, before the parties have even had a chance to try to narrow the issues.  While Apple maintains that a discussion of the number of custodians should occur before the exchange of custodian names, Apple is willing to exchange names in order to facilitate discussion and in the interest of trying to avoid burdening the Court with another discovery motion.

Thus, Apple proposes that the parties exchange a list of the custodians from the other side whom they believe are knowledgeable about the issues in this case (i.e., Apple proposes Plaintiffs' custodians and Plaintiffs propose Apple custodians), and then the parties can use those lists to discuss a reasonable number of custodians for each side.   Apple proposes the parties make that exchange on February 5. Please let us know no later than close of business tomorrow (Tuesday, January 26) if you agree.

Thanks,
Brian


**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Friday, January 22, 2021 9:43 PM
**To:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Masimo v. Apple - Motion to Compel Compliance With ESI Order

[External Email]
Counsel,

Exhibit M
-75-

During the hearing yesterday, Apple made clear it believes the parties must limit the number of custodians before providing lists of potentially relevant custodians pursuant to the ESI Order.  Based on that statement, it appears to us that the parties are at an impasse.  Accordingly, attached is a short joint stipulation addressing this issue.  We look forward to receiving Apple's portion of the joint stipulation.


Best regards,
Adam


**Adam Powell**
Partner
858-707-4245 Direct
**Knobbe Martens**

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit M
-76-

# Exhibit N

REDACTED VERSION OF
DOCUMENT PROPOSED
TO BE FILED UNDER
SEAL

# Exhibit O

| From: | Andrea, Brian <BAndrea@gibsondunn.com> |
|---|---|
| Sent: | Tuesday, February 9, 2021 6:49 PM |
| To: | Adam.Powell |
| Cc: | *** Apple-Masimo; Masimo.Apple |
| Subject: | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Apple ESI Custodians |

Adam,

Apple's disclosure of custodians complies with the ESI Order – Apple provided, in accordance with the ESI Order, a proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case.  We do not understand how Plaintiffs can possibly take the position now that "Apple's list is plainly deficient" when Plaintiffs have refused to have any discussion as to the parties' expectations regarding ESI custodians.  Indeed, this entire exchange could have been avoided had the parties had a discussion prior to the exchange of custodians last Friday, which is precisely the reason Apple has been asking Plaintiffs for months to have a discussion about the number of custodians that are appropriate and what custodians each side expects to see on each others' list.  Plaintiffs refused to have that discussion, and insisted that the parties first exchange lists of proposed custodians.

Your email makes clear that Plaintiffs have a number of custodians that they believe Apple should be identifying and also have specific custodians they want to see on Apple's list of custodians.  Yet, as discussed above, Plaintiffs have refused for months to provide that information.  While Apple is willing to discuss the parties' lists during the meet and confer this week, in order for that discussion to be productive, please let us know in advance what custodians Plaintiffs believe should be on Apple's list.   Your email only addresses Marcelo Lamego—Mr. Lamego, along with David Nazzaro (a listed coinventor on one of the Disputed Apple Patents), is no longer employed by Apple and has not been employed by Apple for over 6 years (both Mr. Lamego and Mr. Nazzaro left Apple in 2014).

Apple also reiterates its request from yesterday that, in order for the parties to have a productive meet and confer regarding ESI custodians, the parties agree to supplement their lists with the knowledge each proposed custodian possesses that is relevant to the core issues or subjects in this case.  We believe that it is in both parties' interests to exchange information about the custodians that are identified such that each party can make an informed assessment of the custodians the other party identifies.  As noted in my email yesterday, Plaintiffs identified forty-six (46) custodians whom they apparently contend are knowledgeable about and were involved with the core issues or subjects in this case.  It is not apparent to Apple what knowledge the vast majority of those individuals possess that would necessitate collection of their ESI, and thus Apple requests that Plaintiffs provide additional information to allow Apple to assess Plaintiffs' proposed list (to be clear, Apple would also provide that information to Plaintiffs regarding its proposed list).  As an example, Plaintiffs identified Boris Oreshkin, who was employed by Masimo for one year in 2014-2015, after which he appears to have held multiple professional positions before his current position at Unity Technologies.  Mr. Oreshkin was an Apple employee in Canada for six months in 2020, during which he worked on "Machine Learning Research and Engineering."  As another example, Plaintiffs identified Rich Young, who was employed by Masimo from 2001-2003, after which he appears to have held multiple professional positions before his current position at Anduril Industries.  Mr. Young was an Apple employee for one year (2019-2020), during which he worked on Airpods Pro and AirPods Max products as well as some other audio products.  It is unclear what knowledge Mr. Oreshkin and Mr. Young, along with the majority of other custodians Plaintiffs identified, may have related to the issues or subjects in this case that would necessitate collection of his ESI.

In short, while the ESI Order may not explicitly require the parties to provide their position on the number of appropriate custodians, the individuals each party expects to see on the other party's list of custodians, or the subject matter the identified individuals possess, it does require that the parties meet and confer regarding the custodians.  Apple believes that the exchange of information discussed above prior to a meet and confer will result in a more productive discussion between the parties and hopefully avoid a dispute that requires Court

Exhibit O
-82-

resolution. Accordingly, please let us know if Plaintiffs are willing to provide, in advance of a meet and confer, the following:

      (1) identification of what additional custodians they believe Apple should have identified, and

      (2) information regarding what knowledge each proposed custodian possesses that is relevant to the core issues or subjects in this case.

Such an exchange of information will allow the parties to have a productive meet and confer regarding ESI custodians and hopefully avoid burdening the Court with a needless dispute that can be avoided by exchanging information the parties clearly have in their possession.

Thanks,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, February 9, 2021 12:34 AM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Apple ESI Custodians

[External Email]
Brian,

We write regarding Apple's ongoing failure to comply with the ESI Order. Plaintiffs previously served a joint stipulation regarding this issue because Apple sought to limit the number of custodians to 8 per side. We withdrew our joint stipulation based on Apple's promise to comply with the ESI order. Rather than simply do so in good faith, Apple engaged in self-help by identifying only 8 custodians—the precise number Apple sought as a limit to ESI searching and about which the parties had an impasse. Apple's list is plainly deficient. It does not even include Lamego or any of the other people identified in Plaintiffs' portion of the joint stipulation, much less those individuals with knowledge that Plaintiffs are not aware of. Please inform us whether Apple will comply with the ESI order, or if Plaintiffs will be required to seek the Court's assistance. Please be prepared to address this issue during the parties' 1:30 pm meet and confer on Wednesday.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, February 5, 2021 6:13 PM
**To:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Apple ESI Custodians

Counsel,

Pursuant to the parties' email agreement, Apple hereby identifies its proposed list of Apple custodians who are knowledgeable about and were involved with the core issues or subjects in this case:

      Michael O'Reilly
      Steve Hotelling
      Brian Land
      Steve Waydo
      Wolf Oetting
      Trevor Ness
      Chinsan Han
      Naoto Matsuyuki

Thanks, and best regards,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit O

# Exhibit P

| | |
|---|---|
| **From:** | Adam.Powell |
| **Sent:** | Friday, February 12, 2021 3:53 PM |
| **To:** | Andrea, Brian |
| **Cc:** | Masimo.Apple; *** Apple-Masimo |
| **Subject:** | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians |

Brian,

We have repeatedly provided the basis for our assertion that Apple's list is deficient.  We did so numerous times during the call and in my emails below.  To repeat yet again, Apple chose to exclude individuals that Apple knew had relevant information, including individuals that we identified in writing before Apple provided its list.  Our prior joint stipulation explained that Apple's proposal to search eight custodians was not enough because Lamego, O'Reilly, the alleged inventors, and the individuals on Apple's initial disclosures totaled more than eight custodians.  We also explained that we expected Apple's list to include relevant Apple employees from at least the following categories: (1) individuals who worked with Lamego, (2) individuals who worked with O'Reilly, (3) individuals who were involved in the accused aspects of the Apple Watch, (4) individuals who were involved in the accused business and marketing strategies, or (5) individuals who were involved in the patent applications at issue but not listed as an inventor.  Apple knew our position when it convinced us to withdraw the prior joint stipulation based on Apple's representation that it would fully comply with the ESI Order.  Our reasonable conclusion was that Apple's list would include these additional people.  Nevertheless, Apple still chose to exclude even the specific people we identified.  We believe Apple did not comply with the ESI Order.  Apple's apparent disagreement identifies a dispute—not that we are refusing to explain the basis for our position.

As for the former employees, we have explained many times that Plaintiffs' complaint alleges that Plaintiffs' former employees, including Lamego and O'Reilly, took Plaintiffs' trade secret to Apple.  The knowledge of which of those individuals should be on Apple's list is in Apple's—not Plaintiffs'—possession.

We have made clear that our dispute is not merely Apple's failure to identify specific individuals.  The parties dispute Apple's fundamental obligations under the ESI Order.  Plaintiffs maintain the ESI Order requires Apple to identify all of its custodians with knowledge.  We believe Apple's decision to exclude relevant custodians shows Apple did not comply with the ESI Order.  However, we do not know all the custodians that Apple excluded.  Thus, Apple's approach of considering specific custodians only after Plaintiffs identify them does not resolve or advance our fundamental dispute as to Apple's obligations under the ESI Order.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** Martens

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Thursday, February 11, 2021 6:30 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Exhibit P
-86-

Adam,

We don't understand how you can continue to claim that Apple's list is "facially deficient" yet continue to refuse to provide the basis for that claim. I asked you multiple times during our call for your basis, and your response was that "it's not Plaintiffs' job to tell Apple who to put on their list." Clearly, there are people that Plaintiffs believe should be on Apple's list and it is unclear why you won't tell us who those people are.

Apple performed a reasonable investigation and identified the people that are knowledgeable about the issues in this case. If you believe there are people missing from that list, please let us know who you believe is missing. As you know, during the meet and confer, after I asked you for this information many times, you did mention Messrs. Lamego and Nazzaro as well as "other people on Apple's initial disclosures." I promised that we would investigate and get back to you regarding those names, and we will do so tomorrow.

I also asked you if you expected Apple to identify every person that ever worked on the Apple Watch; you confirmed that Plaintiffs do not expect Apple to identify every person that worked on the Watch.

Finally, I asked you if you expected Apple to identify every Apple current or former employee that was previously employed by Plaintiffs, regardless of what work they did for Plaintiffs or Apple, which is how Plaintiffs apparently came up with the majority of their forty-six custodians. While you did not give me a straight answer one way or another, I told you that Apple does not believe that the fact that an employee was previously employed by Plaintiffs is a sufficient basis to believe those employees have knowledge about the issues in this case. If you disagree, please let us know the basis for your disagreement.

I reiterate our request for Plaintiffs' basis for their allegation that Apple's list is deficient. If you can't provide us with that information, it is unclear to Apple how Apple can try to resolve Plaintiffs' concerns, since we don't know what Plaintiffs' concerns are.

Thanks,
Brian


**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, February 10, 2021 11:27 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We disagree with your characterization of virtually everything that you claim occurred during the meet and confer. Your email again shows why we have suggested that the parties should record meet and confers.

Exhibit P
-87-

We will reiterate our position.  During the meet and confer, Plaintiffs explained the basis for our assertion that Apple's list is deficient.  In particular, we explained that Apple's list excluded at least the custodians that Plaintiffs had already identified to Apple in its prior joint stipulation and in email correspondence.  We explained that it was not reasonable for Apple to demand that we identify all *other* missing individuals in Apple's list.  While we know Apple's list excluded relevant custodians, we have no way of knowing the universe of custodians that Apple has never disclosed to us.  We explained that we believe the ESI Order puts that obligation on Apple—not Plaintiffs.  This is because only Apple can perform that investigation.  Indeed, that is why we conducted a reasonable investigation on our side and identified 46 potential ESI custodians.

We also told you at the very beginning of the call that we have no problem explaining the relevance of each custodian on our list.  However, we explained that does not resolve our dispute because Apple's list is facially deficient.  Even if Apple explains that its eight custodians are relevant, that does not show that *other* individuals are irrelevant.  Thus, while we will provide the requested information at 5pm pacific on Friday, the exchange will not resolve this dispute.

It is inappropriate for Apple to supplement its list only when Plaintiffs can identify someone who is missing.  We maintain the ESI Order requires Apple to identify the reasonable universe of potential custodians.  We believe the parties are at an impasse because Apple has steadfastly refused to provide such a list.  Therefore, we have a fundamental disagreement as to Apple's obligation under the ESI Order.  That disagreement has not changed.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 Direct

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, February 10, 2021 3:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam—

I write to memorialize the parties' discussion in this afternoon's meet and confer regarding the identification of ESI custodians.

Plaintiffs took the position that Apple's list of ESI custodians was deficient, but refused to provide a basis for that position.  Apple made clear that it conducted a reasonable investigation and identified those individuals knowledgeable about the core issues in this case, as required by the ESI Order, and thus it did not understand how Plaintiffs can possibly claim that Apple's list is deficient.  *See* Dkt. 51.  Apple noted that it seemed that Plaintiffs have individuals in mind that they believe Apple should identify,  but Plaintiffs refused to identify those individuals.  Instead, Plaintiffs took the position that they were not obligated to provide that information to Apple.  Apple disagreed, noting that the meet and confer process is intended to facilitate an exchange of information between the parties so that the parties can come to ground or at least narrow their disputes, and asked multiple times that Plaintiffs provide the basis for their argument that Apple's list is deficient.

Eventually, after multiple requests, Plaintiffs identified two former Apple employees, Marcelo Lamego and David Nazzaro, as well as "individuals identified in Apple's Initial Disclosures."  Apple agreed to consider whether those individuals should be on its list of ESI custodians and indicated that it would get back to Plaintiffs with a response.

Exhibit P
-88-

Plaintiffs also took the position that the parties are at an "impasse." Apple disagreed, noting that it was willing to investigate the issues Plaintiffs raised (as discussed above) and also suggesting that the parties exchange further information that would allow each party to assess the sufficiency of each others' list.  Indeed, Apple noted that it has no idea what the relevance is to this case of the vast majority of the forty-six (46) individuals Plaintiffs identified.  Apple suggested that each party should exchange information about the knowledge that each identified individual has, and after that exchange occurs, the parties should have another call to discuss the sufficiency of each others' lists.  Plaintiffs eventually agreed to exchange this information, and asked that Apple suggest a time for the exchange.  Apple suggests the parties exchange descriptions of the relevant knowledge their respective proposed ESI custodians possess at 5:00 p.m. PST on Friday, February 12, 2021.  Please let us know if Plaintiffs agree.

Best,
Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit P
-89-

# Exhibit Q

| From: | Andrea, Brian <BAndrea@gibsondunn.com> |
|---|---|
| Sent: | Friday, February 12, 2021 4:57 PM |
| To: | Adam.Powell |
| Cc: | Masimo.Apple; *** Apple-Masimo |
| Subject: | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians |

Dear Adam—

Pursuant to our meet and confer earlier this week, and our follow up correspondence, I am writing with the additional information the parties agreed to exchange.

Below is an identification of the knowledge that each of Apple's proposed ESI custodians has that is relevant to the core issues or subjects in this case:

- Mike O'Reilly:  Mr. O'Reilly is the subject of Plaintiffs' allegations related to alleged trade secret misappropriation.

- Steve Hotelling:  Mr. Hotelling was Marcelo Lamego's supervisor during the six months Mr. Lamego was employed by Apple.  Mr. Hotelling is also knowledgeable about the operation and development of the Apple Watch.  Mr. Hotelling is also a named inventor on one of the Apple Disputed Patents and the Apple Disputed Application.

- Brian Land:  Mr. Land is knowledgeable about the operation and development of the Apple Watch hardware.

- Steve Waydo:  Mr. Waydo is knowledgeable about the operation and development of the Apple Watch software.

- Wolf Oetting:  Mr. Oetting is a named inventor on two of the Apple Disputed Patents.

- Trevor Ness:  Mr. Ness is a named inventor on two of the Apple Disputed Patents.

- Chinsan Han:  Mr. Han is a named inventor on two of the Apple Disputed Patents.

- Naoto Matsuyuki:  Mr. Matsuyuki is a named inventor on two of the Apple Disputed Patents.

During the parties' meet and confer, Plaintiffs identified additional individuals that they believe should have been identified by Apple as potential ESI custodians.  Specifically, Plaintiffs identified Marcelo Lamego, David Nazzaro, and "individuals on Apple's initial disclosures."  Apple's response to Plaintiffs' request that Apple identify those individuals is set forth below.

- Myra Haggerty:  Apple identified Ms. Haggerty on its initial disclosures based on her knowledge relevant to Plaintiffs' infringement allegations.  In the interest of moving the case forward, Apple is willing to add Ms. Haggerty to its list of ESI custodians.  She has knowledge about the operation and development of the Apple Watch.

- Deirdre Caldbeck:  Apple identified Ms. Calbeck because she has knowledge relevant to "marketing relating to the Apple Watch Series 4 and Series 5." In the interest of moving the case forward, Apple is willing to add Ms. Calbeck to its list of ESI custodians at this time.  She has knowledge about the marketing of the Apple Watch.

- Mark Rollins:  Mr. Rollins was identified on Apple's initial disclosures as having knowledge of Apple's financial information related to the Apple Watch.  Mr. Rollins is a corporate witness that would testify regarding non-custodial financial information pulled from Apple's financial databases; he is not an individual that is likely to have ESI relevant to the issues in this case.

Exhibit Q
-91-

- <u>Marcelo Lamego</u> and <u>David Nazzaro</u>:  As we noted in our prior correspondence, Messrs. Lamego and Nazzaro are no longer Apple employees and have not been Apple employees since 2014.  Apple no longer has either individual's email files.  To the extent Apple has relevant documents from either individual in non-custodial databases or the files of other custodians, Apple will produce such documents (and in fact has already begun producing such documents).

Finally, Apple is adding <u>Afshad Mistri</u> to its list of ESI custodians.  Mr. Mistri has knowledge about marketing of the Apple Watch and Apple's interactions with hospitals.

Please note that given the position that Plaintiffs have taken with respect to broad swaths of publicly available information—including photographs of Apple's products and public patents—we are not currently able to share critical information about Plaintiffs' allegations with Apple.  Accordingly, we are making these decisions without the benefit of information we might otherwise have if Plaintiffs were not designating public information as AEO.

Of course, Apple's investigation into the issues and allegations in this case is ongoing, and Apple reserves the right to identify additional ESI custodians as its investigation proceeds.  Additionally, Apple reserves the right to request ESI from individuals that do not appear on Plaintiffs' initial list as discovery progresses in this case.

Best regards,
Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Thursday, February 11, 2021 9:30 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We don't understand how you can continue to claim that Apple's list is "facially deficient" yet continue to refuse to provide the basis for that claim.  I asked you multiple times during our call for your basis, and your response was that "it's not Plaintiffs' job to tell Apple who to put on their list."  Clearly, there are people that Plaintiffs believe should be on Apple's list and it is unclear why you won't tell us who those people are.

Apple performed a reasonable investigation and identified the people that are knowledgeable about the issues in this case.  If you believe there are people missing from that list, please let us know who you believe is missing.  As you know, during the meet and confer, after I asked you for this information many times, you did mention Messrs. Lamego and Nazzaro as well as "other people on Apple's initial disclosures."  I promised that we would investigate and get back to you regarding those names, and we will do so tomorrow.

Exhibit Q
-92-

I also asked you if you expected Apple to identify every person that ever worked on the Apple Watch; you confirmed that Plaintiffs do not expect Apple to identify every person that worked on the Watch.

Finally, I asked you if you expected Apple to identify every Apple current or former employee that was previously employed by Plaintiffs, regardless of what work they did for Plaintiffs or Apple, which is how Plaintiffs apparently came up with the majority of their forty-six custodians.  While you did not give me a straight answer one way or another, I told you that Apple does not believe that the fact that an employee was previously employed by Plaintiffs is a sufficient basis to believe those employees have knowledge about the issues in this case.  If you disagree, please let us know the basis for your disagreement.

I reiterate our request for Plaintiffs' basis for their allegation that Apple's list is deficient.  If you can't provide us with that information, it is unclear to Apple how Apple can try to resolve Plaintiffs' concerns, since we don't know what Plaintiffs' concerns are.

Thanks,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, February 10, 2021 11:27 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We disagree with your characterization of virtually everything that you claim occurred during the meet and confer.  Your email again shows why we have suggested that the parties should record meet and confers.

We will reiterate our position.  During the meet and confer, Plaintiffs explained the basis for our assertion that Apple's list is deficient.  In particular, we explained that Apple's list excluded at least the custodians that Plaintiffs had already identified to Apple in its prior joint stipulation and in email correspondence.  We explained that it was not reasonable for Apple to demand that we identify all *other* missing individuals in Apple's list.  While we know Apple's list excluded relevant custodians, we have no way of knowing the universe of custodians that Apple has never disclosed to us.  We explained that we believe the ESI Order puts that obligation on Apple—not Plaintiffs.  This is because only Apple can perform that investigation.  Indeed, that is why we conducted a reasonable investigation on our side and identified 46 potential ESI custodians.

We also told you at the very beginning of the call that we have no problem explaining the relevance of each custodian on our list.  However, we explained that does not resolve our dispute because Apple's list is facially deficient.  Even if

Exhibit Q
-93-

Apple explains that its eight custodians are relevant, that does not show that *other* individuals are irrelevant.  Thus, while we will provide the requested information at 5pm pacific on Friday, the exchange will not resolve this dispute.

It is inappropriate for Apple to supplement its list only when Plaintiffs can identify someone who is missing.  We maintain the ESI Order requires Apple to identify the reasonable universe of potential custodians.  We believe the parties are at an impasse because Apple has steadfastly refused to provide such a list.  Therefore, we have a fundamental disagreement as to Apple's obligation under the ESI Order.  That disagreement has not changed.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, February 10, 2021 3:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam—

I write to memorialize the parties' discussion in this afternoon's meet and confer regarding the identification of ESI custodians.

Plaintiffs took the position that Apple's list of ESI custodians was deficient, but refused to provide a basis for that position.  Apple made clear that it conducted a reasonable investigation and identified those individuals knowledgeable about the core issues in this case, as required by the ESI Order, and thus it did not understand how Plaintiffs can possibly claim that Apple's list is deficient.  *See* Dkt. 51.  Apple noted that it seemed that Plaintiffs have individuals in mind that they believe Apple should identify,  but Plaintiffs refused to identify those individuals.  Instead, Plaintiffs took the position that they were not obligated to provide that information to Apple.  Apple disagreed, noting that the meet and confer process is intended to facilitate an exchange of information between the parties so that the parties can come to ground or at least narrow their disputes, and asked multiple times that Plaintiffs provide the basis for their argument that Apple's list is deficient.

Eventually, after multiple requests, Plaintiffs identified two former Apple employees, Marcelo Lamego and David Nazzaro, as well as "individuals identified in Apple's Initial Disclosures."  Apple agreed to consider whether those individuals should be on its list of ESI custodians and indicated that it would get back to Plaintiffs with a response.

Plaintiffs also took the position that the parties are at an "impasse." Apple disagreed, noting that it was willing to investigate the issues Plaintiffs raised (as discussed above) and also suggesting that the parties exchange further information that would allow each party to assess the sufficiency of each others' list.  Indeed, Apple noted that it has no idea what the relevance is in this case of the vast majority of the forty-six (46) individuals Plaintiffs identified.  Apple suggested that each party should exchange information about the knowledge that each identified individual has, and after that exchange occurs, the parties should have another call to discuss the sufficiency of each others' lists.  Plaintiffs eventually agreed to exchange this information, and asked that Apple suggest a time for the exchange.  Apple suggests the parties exchange descriptions of the relevant knowledge their respective proposed ESI custodians possess at 5:00 p.m. PST on Friday, February 12, 2021.  Please let us know if Plaintiffs agree.

Best,

Exhibit Q
-94-

Brian


**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

Exhibit Q
-95-

# Exhibit R

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# Exhibit S

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Exhibit T

# Knobbe Martens

KNOBBE,MARTENS,OLSON & BEAR,LLP

12790 El Camino Real, Suite 100, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

February 19, 2021

**VIA EMAIL**

Ilissa Samplin
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Ilissa:

We write in response to your letter of February 11, two emails on February 15, and our conference of counsel on February 16 and 17.

**RFPs 61-62, 88, 123-125, 130-132, 136-145, and 147**

Apple indicated it was producing responsive documents on a rolling basis, but declined to commit to a date by which it would make a substantial production other than to say in the "near future." Apple indicated it hoped this week it would produce all documents from Oetting other than documents gathered as a result of ESI search terms.

**RFPs 122 and 133-35**

For RFPs 122 and 135, Apple indicated it was producing documents on a rolling basis, but declined to commit to a date by which it would make a substantial production.

For RFP 135, Apple agreed it would produce public complaints from legal proceedings involving the Apple Watch "shortly." Apple agreed Plaintiffs will consider RFP 134 after Apple produces public complaints.

**Apple's Document Production**

Apple indicated it was producing documents on a rolling basis, but declined to commit to a date by which it would make a substantial production.

Apple stated that it would produce the categories of documents contained in our prior December 30 letter subject to its prior objections on specific RFPs. While Plaintiffs believe Apple has agreed to produce the requested documents based on its responses to our RFPs, Apple's hesitance to clearly state it will produce the requested documents makes us concerned that Apple is interpreting its prior commitment differently than we are. Please clearly state whether Apple will produce each category of documents set forth in our December 30 letter.

**RFPs 207, 214–15, 223–33, 238–41, 244–46, and 248**

- **RFPs 214-15, 224-25**: Apple indicated it was producing documents on a rolling basis, but declined to commit to a date by which it would make a substantial production.

Exhibit T
-107-

- **RFPs 207:** Subject to Plaintiffs' reservation of the right to later seek additional information, Plaintiffs agreed to Apple's proposal (limiting the RFP to "non-privileged documents sufficient to identify Apple's past and planned interactions with hospitals and individual hospital employees, representatives, and decision makers relating to 1) physiological monitoring, and 2) clinical trials or medical studies for Apple products").

- **RFPs 223, 228-229, 238**: With respect to O'Reilly and Lamego, Apple agreed to produce documents responsive to RFPs 223 and 228, agreed to let us know its position on RFP 229, and agreed to produce responsive documents concerning Apple for RFP 238.  As for former employees other than Lamego and O'Reilly, Plaintiffs explained that they already identified the former employees of which they are aware in their list of ESI custodians.  Apple agreed to identify any other former employees of which it was aware that are not listed on Plaintiffs' list of ESI custodians.  Plaintiffs offered to search for and provide the dates that each individual left Plaintiffs if Apple will search for and provide the dates that each individual began working for Apple.  Apple indicated it would get back to us.  Plaintiffs asked if Apple would provide a brief explanation of what each individual did at Apple to help us determine whether we can limit the list of former employees.  Apple again indicated it would get back to us.

- **RFP 226**: Apple agreed to produce responsive documents, but needed to determine how to search for such documents.  Apple indicated it would get back to us on how it planned to search.

- **RFP 227**: We asked if Apple would let us know what type of software Apple uses for typical office documents (e.g., Microsoft Word, Apple Pages), and Apple indicated it would let us know. We also explained that native documents (as opposed to documents already processed by an e-discovery vendor) should contain all relevant metadata.  Thus, Apple should be able to search the "company" (or similar) metadata field for native documents even if Apple itself does not typically include its name in the "company" metadata field and even if its e-discovery vendor does not typically process such data.  Apple agreed to look into this issue.

- **RFP 230**: In addition to the former employees issue discussed above, the parties discussed whether Apple can exclude documents because Apple determines the documents themselves are not relevant to Plaintiffs' Section 2019.210 statement.  Plaintiffs argued this RFP should not be so limited.  Apple agreed to get back to us with its final position.

- **RFPs 231-233**: In addition to the former employees issue discussed above, Apple argued that these RFPs should be limited to "accused features."  Plaintiffs offered to limit RFPs 231-232 to physiological monitoring and argued RFP 233 did not need to be further limited.  Apple agreed on RFP 233 and offered to get back to us with its final position on RFPs 231-232.

- **RFPs 239**: Plaintiffs maintain this request is appropriate and need not be narrowed further. Apple disagreed and indicated the parties are at an impasse.

- **RFPs 240-41**: Plaintiffs maintain these requests are appropriate and need not be narrowed further. Apple disagreed and indicated the parties are at an impasse.

- **RFP 244**: Subject to Plaintiffs' reservation of the right to later seek additional information, Plaintiffs agreed to Apple's proposal (limiting the RFP to "non-privileged documents sufficient to identify Apple's past and planned interactions with hospitals and individual hospital

employees, representatives, and decision makers relating to 1) physiological monitoring, and 2) clinical trials or medical studies for Apple products"). Apple agreed.

- **RFP 245**: Plaintiffs maintain this request is appropriate and need not be narrowed further. Apple disagreed and indicated the parties are at an impasse.

- **RFP 246**: Subject to Plaintiffs' reservation of the right to later seek additional information, Plaintiffs agreed to Apple's proposal (limiting the RFP to "non-privileged documents sufficient to identify Apple's past and planned interactions with hospitals and individual hospital employees, representatives, and decision makers relating to 1) physiological monitoring, and 2) clinical trials or medical studies for Apple products"). Apple agreed.

- **RFP 248**: Plaintiffs maintain this request is appropriate and need not be narrowed further. Apple disagreed and indicated the parties are at an impasse.

**Interrogatories 7-10**

- **Interrogatories 7 and 8**: Plaintiffs explained why these interrogatories were appropriate. Plaintiffs offered to compromise by amending the beginning of Interrogatory 7 to remove the phrase "the design and development of each Apple Watch Product, including without limitation." Apple argued the interrogatories were still too broad because "physiological monitoring" could be read to include using an accelerometer to detect when someone is walking. To the extent such information is used in the determination of a physiological parameter, such as oxygen saturation or pulse rate, we believe such information is relevant. Therefore, we do not agree that "physiological monitoring" is overbroad. We can agree that Apple's responses could initially focus on light-based physiological monitoring, which would include the use of other sensors such as accelerometers to the extent they are used in the determination of a light-based physiological parameter. Please let us know if Apple agrees.

- **Interrogatory 9**: Apple argued that pulse rate algorithms are not relevant to the issues in this case. Plaintiffs disagreed and explained that pulse rate algorithms are relevant to numerous trade secrets. Apple agreed to review Plaintiffs' Section 2019.210 disclosure and get back to us.

- **Interrogatory 10**: Apple argued that all the information Plaintiffs seek is contained in the document produced as APL-MAS_00065312 and asked Plaintiffs to review that document. That document appears to reflect some analysis of certain wrist-worn monitors, but does not appear to provide much of the information sought in Interrogatory No. 10. In particular, the document does not appear to provide the date of Apple's investigation, the individuals who conducted the test or investigation, and to whom the results were communicated. Moreover, is Apple representing that the devices analyzed in APL-MAS_00065312 are the only non-Apple physiological monitors for which Apple has conducted any test, analysis, comparison, or competitive analysis? Is Apple representing that the entirety of its testing, analysis, comparison, or competitive analysis for those devices is contained in APL-MAS_00065312? Is Apple representing that it has no other documents or knowledge regarding any test, analysis, comparison, or competitive analysis of any only non-Apple physiological monitors? Please provide Apple's position so Plaintiffs can determine how to proceed.

**RFPs 5–27, 63–87, 97–109, 128–132, 148–206, 208–13, 216–22, 234–37, 242–43, and 247**

- **RFPs 128, 129**: Plaintiffs explained they did not understand Apple's objections and reiterated what these requests were seeking.  Apple agreed to get back to us with its final position.

- **RFP 130**: Apple stated that it has no affiliates that are related to the products at issue in this case. Apple stated that all relevant information is in the possession, custody, or control of Apple, Inc., and that Apple is not relying on corporate formalities to withhold information in the possession, custody, or control of any affiliates.  Plaintiffs agree to narrow this request to documents sufficient to identify the relationship between Apple and any affiliate involved in the products at issue in this case.  Based on Apple's representation, we understand Apple may have no responsive documents.  Please confirm.

- **RFPs 131-132**: After maintaining for months that it has no organizational charts, Apple newly disclosed that some groups within Apple maintain "informal" organizational charts.  For example, Apple indicated that Steve Hotelling's group maintains an informal organizational chart and committed to producing the chart.  Plaintiffs asked Apple to inquire whether other groups, including any group including O'Reilly, have any organizational charts, informal or otherwise.  Apple indicated it would get back to us.

- **RFP 208**: Apple's email agreed to "produce responsive documents, to the extent such documents exist and can be located following a reasonable search."

- **RFPs 209, 210, 213**: Plaintiffs explained why Apple "considering" certain trade secrets is itself a use and disclose of trade secrets.  Plaintiffs explained that they do not believe this request needs to be narrowed.  Apple agreed to get back to us with its final position.

- **RFP 211, 158-160**: Plaintiffs explained that the value and importance of particular techniques should be separately searched for many reasons.  For example, a document discussing the value and importance of robust measurements is relevant even if the document itself does not reflect the use of particular trade secrets.  Apple agreed to get back to us with its final position.

- **RFP 212**: Plaintiffs indicated that they would arrange a time to review the source code computer and let Apple know if they needed additional information.  Apple indicated that it may remove some information that was previously produced on the source source code computer, but would let us know its final position.  We maintain that Apple has no basis to claw back previously produced material just because the material was produced on a source code computer instead of through an ordinary document production.  Please confirm that Apple will not remove material from the source code computer.

- **RFPs 216, 217**: Plaintiffs maintain these requests are appropriate and need not be narrowed further.  Apple agreed to get back to us with its final position.

- **RFPs 218-221**: Plaintiffs explained why Apple's proposed limitation to documents "sufficient to show" was inappropriate.  Plaintiffs maintain these requests are appropriate as worded and need not be narrowed.  Apple agreed to get back to us with its final position.

- **RFPs 234-235**: Apple indicated that it could not provide its position on these requests over the phone, but would get back to us with its final position.

- **RFPs 236-237**: Plaintiffs maintained that these requests seek a narrow category of relevant documents that should be produced.  Apple argued the parties should continue discussing which former employees should be the subject of discovery.

- **RFPs 242-43**: Apple argued that Plaintiffs should further narrow these requests beyond "physiological monitoring."  Similar to Interrogatory Nos. 7 and 8, we can agree that Apple's responses could initially focus on documents relating to light-based physiological monitoring, which would include the use of other sensors such as accelerometers to the extent they are used in the determination of a light-based physiological parameter.  Please let us know if Apple agrees.

- **RFPs 5-25**: Plaintiffs explained that these RFPs are relevant to the trade secret case even if they also related to the patent case.  Plaintiffs asked if Apple had already gathered responsive documents before the patent case was stayed and suggested it would not be burdensome for Apple to produce what it had already gathered.  Apple agreed to check whether it had already gathered responsive documents and let Plaintiffs know if it had a proposal as to how to narrow any of these RFPs.

- **RFPs 27, 63–65, 70–79, 83–85, 87**: Plaintiffs explained that these RFPs are relevant to the trade secret case even if they also related to the patent case.  Apple agreed to get back to us with its final position.

- **RFPs 67-69, 155-157**: Plaintiffs maintain these requests are appropriate and need not be narrowed further.  Apple agreed to get back to us with its final position.

- **RFPs 97, 100**: During the meet and confer, Apple argued that it was objecting to these requests because they were not limited to the Series 4 and later versions of the Apple Watch.  Plaintiffs explained that Apple has already produced documents from early versions of the Apple Watch that discussed Plaintiffs' trade secrets, which shows why Apple's proposed limitation is inappropriate.  Apple agreed to get back to us with its final position.

- **RFPs 98, 99, 107, 163, 164**: Apple explained that it does not have forecasts "in the way that you think of them."  Plaintiffs asked what type of forecasts Apple had, and Apple responded that it relies on third-party market research.  Plaintiffs asked for copies of such third-party market research and any internal Apple documents and communications discussing such research.  Apple agreed to get back to us with its final position.

- **RFPs 106, 108, 109**: Apple requested that Plaintiffs narrow these requests beyond "physiological monitoring."  We do not believe further narrowing is appropriate for these requests because documents responsive to these requests that relate to non-light-based physiological monitoring technology is still relevant to damages and royalties in this case.  Please let us know Apple's position.

- **RFPs 63-66, 86, 148-154, 172**: Plaintiffs explained why Apple's proposed limitation to documents "sufficient to show" was inappropriate.  Plaintiffs maintain these requests are appropriate as worded and need not be narrowed.  Apple agreed to get back to us with its final position.

- **RFPs 185, 186**: Plaintiffs maintain these requests are appropriate and need not be narrowed further.  Apple agreed to get back to us with its final position.

- **RFPs 80-82, 161**: Plaintiffs explained that these requests were not limited to complaint databases.  Plaintiffs also explained that Apple should be able to narrow its searching from the complaint database by applying search terms.  Plaintiffs asked Apple if it could provide a sample printout with a list of fields so the parties could try to work together on an appropriate search of the complaint database.  Apple agreed to get back to us.

- **RFPs 165-170**: Plaintiffs maintain these requests are appropriate and need not be narrowed further.  Apple agreed to get back to us with its final position.

- **RFPs 184, 196**:  Plaintiffs maintain these requests are appropriate and need not be narrowed further.  Apple agreed to get back to us with its final position.

**RFPs 101–05, 171, 173–83, 187–95, 197–206**

Apple argued that all of these RFPs should be (1) limited to the Apple Watch Series 4 or later and (2) limited to a time period beginning in January 2013.  Plaintiffs explained why the first limitation was inappropriate and Apple indicated it would get back to us.  Plaintiffs explained that they would be willing to consider a time limit limitation but asked Apple to identify when Apple began working on the Apple Watch so that Plaintiffs could make an informed decision.  Please let us know Apple's position.

Apple also raised several issues as to specific RFPs discussed below.

- **RFP 101**: Plaintiffs maintained this request is appropriate and need not be narrowed.  Apple agreed to get back to us with its final position.

- **RFP 102**: Plaintiffs maintained these requests are appropriate and need not be narrowed to just documents "sufficient to show."  Apple agreed to get back to us with its final position on that issue.   Apple requested that we narrow the remainder of the request to refer to "Apple's evaluation of the health care market, including the evaluation of target customers and Apple's considerations in entering and continuing to pursue the health care market."  We would be willing to compromise by agreeing to the following language: "Apple's evaluation of the health care market, including market size, the importance of the healthcare market to Apple's overall business, the evaluation of target customers and Apple's considerations in entering and continuing to pursue the health care market."  Please let us know if Apple agrees.

- **RFP 103**: Plaintiffs explained why Apple's proposed limitation to documents "sufficient to show" was inappropriate.  Plaintiffs maintain this request is appropriate as worded and need not be narrowed.  Apple agreed to get back to us with its final position.

- **RFP 104**: Plaintiffs explained why Apple's proposed limitation to documents "sufficient to show" was inappropriate.  Plaintiffs maintain this request is appropriate as worded and need not be narrowed.  Apple agreed to get back to us with its final position.  Apple also argued this request was still too broad because it could involve marketing efforts unrelated to this case.  Plaintiffs suggested narrowing the request to "physiological monitoring," but Apple suggested that was still too broad.  We do not believe further narrowing is appropriate for this request because documents responsive to this request that relate to non-light-based physiological monitoring technology is still relevant to damages and royalties in this case.  Please let us know Apple's position.

- **RFP 105**: Plaintiffs agreed to Apple's use of the phrase "physiological parameters" if Apple left the remainder of this request unchanged.  Apple agreed to get back to us with its final position.

- **RFP 171**: Plaintiffs explained why Apple's proposed limitation to documents "sufficient to show" was inappropriate.  Plaintiffs maintain this request is appropriate as worded and need not be narrowed.  Apple agreed to get back to us with its final position.

- **RFP 173**: Apple raised no separate issue with this request other than the Series 4 and time period issues discussed above.

- **RFP 174-179**: Despite Apple maintaining its position that it does not understand Plaintiffs' Section 2019.210 statement, Apple confirmed it is not relying on that statement to withhold any documents responsive to these requests.

- **RFP 180**: Apple raised no separate issue with this request.

- **RFP 181-182**: Plaintiffs explained why Apple "considering" certain trade secrets was itself a use and disclose of trade secrets.  Plaintiffs explained that they do not believe these requests need to be narrowed.  Apple agreed to get back to us with its final position.

- **RFP 183**: Plaintiffs explained that the value and importance of particular techniques should be separately searched for many reasons.  For example, a document discussing the value and importance of robust measurements is relevant even if the document itself does not reflect the use of particular trade secrets.  Apple agreed to get back to us with its final position.

- **RFP 187**: Apple raised no separate issue with this request.

- **RFP 188-189**: Plaintiffs explained why Apple "considering" certain trade secrets was itself a use and disclose of trade secrets.  Plaintiffs explained that they do not believe these requests need to be narrowed.  Apple agreed to get back to us with its final position.

- **RFP 190**: Plaintiffs explained that the value and importance of particular techniques should be separately searched for many reasons.  For example, a document discussing the value and importance of robust measurements is relevant even if the document itself does not reflect the use of particular trade secrets.  Apple agreed to get back to us with its final position.

- **RFP 191**: Apple raised no separate issue with this request.

- **RFP 192**: Apple raised no separate issue with this request.

- **RFP 193-194**: Plaintiffs explained why Apple "considering" certain trade secrets was itself a use and disclose of trade secrets.  Plaintiffs explained that they do not believe these requests need to be narrowed.  Apple agreed to get back to us with its final position.

- **RFP 195**: Plaintiffs explained that the value and importance of particular techniques should be separately searched for many reasons.  For example, a document discussing the value and importance of robust measurements is relevant even if the document itself does not reflect the use of particular trade secrets.  Apple agreed to get back to us with its final position.

- **RFP 197**: Apple raised no separate issue with this request.

- **RFP 198**: Plaintiffs explained why Apple's proposed limitation to documents "sufficient to show" was inappropriate. Plaintiffs maintain this request is appropriate as worded and need not be narrowed. Apple agreed to get back to us with its final position.

- **RFP 199-202**: Plaintiffs explained why Apple's proposed limitation to documents "sufficient to show" was inappropriate. Plaintiffs maintain these requests are appropriate as worded and need not be narrowed. Apple agreed to get back to us with its final position.

- **RFP 203**: Plaintiffs explained why Apple's proposed limitation to documents "sufficient to show" was inappropriate. Plaintiffs maintain this request is appropriate as worded and need not be narrowed. Apple agreed to get back to us with its final position.

Thank you for discussing these issues with us. We appreciate that the parties made some progress and remain hopeful that we can resolve at least some of these disputes without requiring Court intervention. As discussed above, Apple indicated it would get back to us on numerous disputed issues. We would appreciate it if Apple provided its position by February 26.

Best regards,

Adam B. Powell

# Exhibit U

| From: | Adam.Powell <Adam.Powell@knobbe.com> |
|---|---|
| Sent: | Wednesday, February 24, 2021 2:57 PM |
| To: | Andrea, Brian; Perry.Oldham |
| Cc: | Masimo.Apple; Karina.Villanueva; *** Apple-Masimo; Lerner, Joshua H.; Lyon, H. Mark; Buroker, Brian M.; Samplin, Ilissa; Kaounis, Angelique; Rosenthal, Brian A. |
| Subject: | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery |

[External Email]

Brian,

We have been working on search terms for Oetting, but Apple's document productions are revealing additional information about non-common terms that Apple uses in its documents.  We are adjusting our search terms in light of Apple's recent document productions and will get back to you as soon as we can.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, February 17, 2021 12:23 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Adam,

Please let us know when you anticipate sending your proposed search terms.  We will review them when we get them and run them on Mr. Oetting's emails.  If a reasonable number of hits comes back, we will proceed with reviewing those hits and get them produced as quickly as we can.  However, if the terms you propose result in an unreasonable number of hits, that will require back and forth between the parties that would extend the process.

In short, we anticipate that this entire process should take only a few weeks, and that we would be in a position to produce the relevant documents that come up from the searches approximately two-three weeks after agreeing to the terms, dependent of course on the volume of hits that need to be reviewed.   We would then schedule Mr. Oetting's deposition as soon after that as practicable, with sufficient time for Plaintiffs to review the documents before the deposition.

Thanks,
Brian

Exhibit U
-116-

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Sunday, February 14, 2021 6:39 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

[External Email]
Brian,

Thank you for your email.  As we explained below,  we never refused short postponements and have already agreed to several such postponements.  Thus, your claim that Plaintiffs "so urgently need to take Mr. Oetting's deposition now" is not correct.  We have been asking for Mr. Oetting's deposition for months because we are trying to move discovery forward.  Regardless, thank you for providing Apple's position.  As we have explained, we cannot agree to Apple's two conditions that it imposed on this deposition.

We appreciate your offer to prioritize Mr. Oetting's document production and will send you our proposed search terms.  Since Apple indicates that only a short postponement should be necessary, please provide some dates when Apple can commit to having already produced Mr. Oetting's documents with sufficient time for us to review them before his deposition.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Thursday, February 11, 2021 2:42 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Exhibit U
-117-

Adam,

As a follow up to the email below, and in an effort to speed up the document collection/review/production process for Mr. Oetting's documents, Apple is willing to consider discussing search terms for Mr. Oetting's ESI now, before we conclude our discussions regarding other ESI custodians.  This would help reduce the length of time we would need to postpone Mr. Oetting's deposition so that you can have all of his documents before the deposition.  Please let us know if that is something that Plaintiffs are interested in pursuing, and if so, please send us a list of proposed search terms so that we can review.

Thanks,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Wednesday, February 10, 2021 11:02 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Dear Adam,

We suggest that the parties have a discussion about these issues rather than continue to exchange correspondence stating the same thing.  Perhaps we can plan to discuss during the meet and confer on Friday?

We have given you Apple's position multiple times.  Plaintiffs have not provided any explanation as to why they so urgently need to take Mr. Oetting's deposition now, when postponing it a couple weeks will allow the parties to complete the ESI negotiations and production and ensure that the parties receive a ruling from the Court on the pending dispute over Plaintiffs' discovery responses  regarding the very allegations about which Plaintiffs seek to question Mr. Oetting.  Based on the limited information Plaintiffs have provided regarding their desire to take Mr. Oetting's deposition now, it is Apple's position that it will only agree to move forward with Mr. Oetting's deposition on February 22 if Plaintiffs agree that (1) they will not seek a second deposition of Mr. Oetting based on the fact that ESI documents are produced after February 22 and (2) Plaintiffs will provide supplemental responses to Apple's interrogatories requested in the pending motion to compel well in advance of the deposition.

To be clear, Apple is willing to reconsider its position if Plaintiffs provide an explanation as to why they would like to take the deposition now as well as what prejudice Plaintiffs would suffer if the deposition is postponed for a couple weeks, particularly in view of the fact that a postponement would achieve both parties' stated goals.  As I noted in my earlier

Exhibit U
-118-

email, a postponement would achieve Plaintiffs' goal of having all of Mr. Oetting's documents before the deposition and would achieve Apple's goals of avoiding a second deposition and getting a ruling on the pending motion.

Thanks,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, February 9, 2021 11:53 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

[External Email]
Brian,

We believe the record is clear and speaks for itself.

In addition, we never refused short postponements of Mr. Oetting's deposition.  We have agreed to several postponements and have discussed this issue with Apple in good faith for months now.  We are trying to ascertain Apple's current position, but Apple has not answered our question as to whether Apple is refusing to produce Mr. Oetting unless Plaintiffs agree to (1) not seek a second deposition and (2) provide updated contentions before the deposition.  Apple's position on this is relevant, regardless of timing.  Please answer our question so that we can assess whether court assistance will be required.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 Direct

## Knobbe Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Monday, February 8, 2021 8:35 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-

Exhibit U
-119-

Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Adam,

Your email completely misrepresents the discussions between the parties regarding Mr. Oetting's deposition and ESI discussions, as well as Apple's positions.

With respect to Apple's document production, your email insinuates that Apple has not produced "patent ownership documents." To the contrary, Apple has produced thousands of documents, many of which relate to the Apple "Disputed Patents." We have outlined the documents that Apple produced many times previously, and have recently made two productions that include additional technical documents beyond what Apple produced previously. Indeed, we have been producing, and will continue to produce, Mr. Oetting's documents as they are reviewed and will have all of his relevant, non-privileged documents produced before February 22 except for emails for which the parties will be negotiating search terms in the coming weeks. As noted in my previous email, we do not believe it is feasible for the parties to complete this process and produce Mr. Oetting's documents prior to February 22. Apple did not delay this process—Plaintiffs delayed the process by refusing to even discuss appropriate limits on ESI custodians before exchanging lists. As you know, Apple provided a proposal regarding an appropriate number of custodians (at Plaintiffs' request) back in December; Plaintiffs never responded to that proposal and insisted that the parties should exchange custodians without any discussion as to the appropriate number of custodians. Plaintiffs' joint stipulation sent recently was the first time Plaintiffs had provided their thoughts on the custodians from whom they intend to seek ESI. And, as you know, once Plaintiffs provided that information, Apple agreed to exchange custodians. Had Plaintiffs provided that information back in December when Apple requested it, the ESI discussions could be complete by now.

Apple also has not "chang[ed] its position as to whether it will allow the deposition to go forward." Apple's position is, and has always been, that multiple depositions of Mr. Oetting would be inappropriate and that Plaintiffs should be required to provide information about their correction of inventorship allegations prior to a deposition of an inventor on the patents for which Plaintiffs seek to correct inventorship. Your email misconstrues the timeline of the parties' discussions. Plaintiffs initially noticed Mr. Oetting's deposition for the latter part of December which, as we explained at the time, coincided with Apple's annual shutdown at the end of December. Apple then offered a date in January, but Plaintiffs asked to push the date until February.

At least two relevant things have happened since Apple agreed to provide Mr. Oetting for a deposition. First, Plaintiffs have demanded that Apple produce all of Mr. Oetting's documents before the deposition. As discussed above, that is not feasible. Second, Plaintiffs made clear that it is their position that they don't have to provide factual information supporting their own allegations until after they take discovery from Apple about those allegations. Your email below, and your supplemental brief filed last week, confirm that is Plaintiffs' position. Apple disagrees, as we have made very clear. Apple is entitled to basic information regarding Plaintiffs' allegations before Mr. Oetting's deposition so that we can properly prepare the witness.

Accordingly, Apple's position is that both parties' objectives can be achieved by postponing Mr. Oetting's deposition for a couple weeks, which will avoid wasting the resources of the parties and Mr. Oetting's time. For example, postponing the deposition will ensure that Plaintiffs have all of Mr. Oetting's documents, including ESI, prior to the deposition, negating Apple's concern that Plaintiffs will argue that they get a second deposition after production of Mr. Oetting's ESI. Postponing the deposition will also allow the Court to rule on the pending joint stipulation and, if the Court agrees with Apple, Plaintiffs can provide the requested discovery prior to the deposition. It is unclear why Plaintiffs would not agree to a short postponement, and Plaintiffs have not provided any explanation as to why they so urgently need to take Mr. Oetting's deposition now.

Exhibit U
-120-

Thanks,
Brian



**Brian Andrea**

<span style="color:blue">**GIBSON DUNN**</span>

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, February 4, 2021 9:06 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

[External Email]
Brian,

We do not believe it is appropriate for Apple to use its own failure to produce documents to delay depositions.   Plaintiffs have been asking Apple to produce patent ownership documents for months and first requested this deposition on November 18.  On December 6, we explained that "Apple should have produced documents months ago and can still produce documents before the deposition."  We have also been asking Apple to exchange ESI custodians since October 1.  Only after we served a joint stipulation did Apple finally agree to exchange custodians as required by the ESI Order.   Please inform us when you expect to produce Mr. Oetting's documents.

Apple also appears to be changing its position as to whether it will allow the deposition to go forward.  Apple initially refused to allow the deposition unless Plaintiffs agreed not to seek a second deposition.  Seven weeks ago, Apple agreed the deposition would go forward subject to its intent to object to a second deposition.  Since then, the parties exchanged scheduling emails and eventually agreed on a date that worked for everyone.  Now, Apple appears to be again refusing to present the witness unless Plaintiffs agree not to seek a second deposition.

Finally, Apple has provided no basis for its new claim that it need not produce ownership/inventorship discovery until after Plaintiffs provide contentions that Apple deems sufficient.  We are aware of no authority supporting this position.  To the contrary, courts routinely hold that detailed contentions are best provided after substantial discovery occurs.

Please confirm whether Apple is now refusing to proceed unless Plaintiffs agree to the conditions you have imposed.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

Exhibit U
-121-

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Monday, February 1, 2021 6:05 AM
**To:** Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Perry,

Thanks for your response.

As we previously made clear, Apple is not willing to put Mr. Oetting up for deposition twice and Apple agrees that this deposition should not occur until after Mr. Oetting's documents have been produced.  As you know, the parties have agreed to exchange a list of ESI custodians next Friday (February 5) and Apple intends to identify Mr. Oetting as a custodian.  Once the parties have agreed on the list of custodians, we will work on negotiating search terms.  We do not believe it is feasible for the parties to complete this process and produce Mr. Oetting's documents prior to  February 22.

Moreover, Plaintiffs' portion of the joint stipulation filed yesterday makes clear that Plaintiffs have no intention of providing any additional information about their correction of inventorship/ownership allegations prior to February 22.  As you know, Apple does not believe it is fair or proper for Plaintiffs to refuse to provide basic information about their allegations while demanding discovery from Apple regarding those allegations.

For both of these reasons, we believe Mr. Oetting's deposition should be postponed until after (1) the parties agree on search terms and all of Mr. Oetting's documents have been produced; and (2) the Court resolves Apple's motion to compel filed yesterday.  This will ensure both parties have all of the information they require to prepare for the deposition and avoid any need to seek a second deposition of Mr. Oetting down the road.  If, however, Plaintiffs would like to proceed with Mr. Oetting's deposition on February 22, please confirm that Plaintiffs will not seek a second deposition of Mr. Oetting even if Mr. Oetting's ESI documents are produced after February 22 and that Plaintiffs will provide supplemental responses to Apple's Interrogatory Nos. 4, 5, and 23 within the next week.  Please let us know how you would like to proceed.

Thanks,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Perry.Oldham <Perry.Oldham@knobbe.com>
**Sent:** Thursday, January 28, 2021 9:40 PM

Exhibit U
-122-

To: Andrea, Brian <BAndrea@gibsondunn.com>; Adam.Powell <Adam.Powell@knobbe.com>
Cc: Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
Subject: Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

[External Email]
Brian,

Please reserve that date for Mr. Oetting's deposition.  We expect Apple will provide Mr. Oetting's documents reasonably in advance of the deposition.

Thanks,

Perry


**Perry Oldham**

Partner

949-721-2961

**Knobbe** Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, January 22, 2021 3:42 PM
**To:** Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Perry,

Mr. Oetting is available for deposition on February 22.  As his calendar fills up rather quickly, please let us know if this date works for you as soon as possible.

Thanks,
Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306

Exhibit U
-123-

Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Thursday, January 14, 2021 5:58 PM
**To:** Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Perry,

Mr. Oetting indicated that he is not available in the first week of February.  We have asked him to provide us some dates in February that he is available and we will let you know as soon as we hear back from him.

Thanks,
Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Perry.Oldham <Perry.Oldham@knobbe.com>
**Sent:** Thursday, January 14, 2021 4:55 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

[External Email]
Hi Brian,

Can you please let us know Mr. Oetting's availability in the first week of February?

Best regards,

Perry

**Perry Oldham**
Partner
949-721-2961
**Knobbe** **Martens**

Exhibit U
-124-

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, December 23, 2020 10:44 AM
**To:** Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Hi Perry,

We did not ask Mr. Oetting for his availability in February, but we will inquire.

Thanks, and happy holidays,
Brian


**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Perry.Oldham <Perry.Oldham@knobbe.com>
**Sent:** Tuesday, December 22, 2020 3:47 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

[External Email]
Brian,

Is Mr. Oetting available the first week in February?

Thanks,

Perry

**Perry Oldham**
Partner
949-721-2961
**Knobbe Martens**

Exhibit U
-125-

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Thursday, December 17, 2020 7:30 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Adam,

Wolf Oetting is available for a deposition by video conference on January 20, 21, or 22, 2020.  We reiterate our position that taking Mr. Oetting's deposition at this stage of the case is premature, particularly if Plaintiffs' intend to identify Mr. Oetting as an ESI custodian.  Should Plaintiffs pursue Mr. Oetting's deposition now, and seek a second deposition of Mr. Oetting later in the case, Apple will oppose a second deposition.

Please let us know how Plaintiffs would like to proceed.  I note that Mr. Oetting has limited availability, so we would appreciate confirmation as to whether you intend to proceed, and on what date, as soon as possible.

Thanks, and best regards,
Brian


**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Sunday, December 6, 2020 4:36 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

[External Email]
Dear Brian,

We understand it is Apple's position that Apple will not make Mr. Oetting available more than once.  However, Plaintiffs cannot agree in advance that Apple' position is appropriate.  The parties should discuss and resolve that issue if it arises.  We also disagree with Apple's position that this deposition is premature because of Apple's own failure to produce documents, such as patent ownership documents.  Apple should have produced documents months ago and

Exhibit U
-126-

can still produce documents before the deposition.  Apple also objects based on Section 2019.210, but Plaintiffs provided a sufficient Section 2019.210 statement and, regardless, Apple cannot rely on Section 2019.210 to preclude all fact discovery.  Apple further objects on the ground that Plaintiffs have not provided 30(b)(6) topics, but Plaintiffs need not provide 30(b)(6) topics to depose an individual.  Finally, your email states that Mr. Oetting will not be available until January because Apple "shuts down at the end of December."  But that does not justify Apple refusing to provide a deposition date at any time during December.  Please provide Mr. Oetting's availability for a deposition in December.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Monday, November 30, 2020 6:06 AM
**To:** Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Counsel,

We have received and reviewed your notice to take the deposition of Wolf Oetting.  As an initial matter, we note that your request is premature given that we have not produced documents from Mr. Oetting and Plaintiffs have not provided a list of 30(b)(6) topics or a sufficient Section 2019.210 statement.  Apple will not make Mr. Oetting available more than once, so if Plaintiffs would like to proceed now, we will need your agreement that you will not pursue a second deposition of Mr. Oetting later in the case.

If you would like to proceed, we will work on getting Mr. Oetting's availability for a deposition.  Please note that Apple shuts down at the end of December, so we do not anticipate him having availability until January at the earliest.

Best regards,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Karina.Villanueva <Karina.Villanueva@knobbe.com>
**Sent:** Wednesday, November 18, 2020 5:41 PM
**To:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>

Exhibit U
-127-

**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

[External Email]
Counsel,

Attached please find Plaintiffs' Notice of Deposition of Wolf Oetting. Please note, Plaintiffs selected December 14 as the deposition date, but are of course willing to make reasonable accommodations based on Mr. Oetting's schedule."

Best,

**Karina Villanueva**
Litigation Paralegal
Karina.Villanueva@knobbe.com

949-721-2928 **Direct**

**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit U
-128-

# Exhibit V

Exhibit V
-129-

| | |
|---|---|
| **From:** | Adam.Powell <Adam.Powell@knobbe.com> |
| **Sent:** | Wednesday, February 24, 2021 9:46 PM |
| **To:** | Andrea, Brian |
| **Cc:** | Masimo.Apple; *** Apple-Masimo |
| **Subject:** | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians |

[External Email]
Brian,

We write to address your February 17, 2021, email regarding Plaintiffs' list of ESI custodians.  The inclusion of Tony Alan in our original list was a clerical error, so we removed him.  As for our descriptions of each employees' knowledge, Apple has already acknowledged the ESI Order does not require such a description.  We provided one as a courtesy and provided a similar or greater amount of detail compared to Apple's descriptions.  Apple criticizes only our descriptions of the former employees' knowledge, but Apple itself refused to provide any information about those individuals.  Apple has argued some of those individuals should not be included because they worked on unrelated projects at Apple.  But Apple has so far declined to explain what all those individuals did at Apple.  Only Apple knows whether each individual, based on their role at Apple, fits within the definition of potential custodians in the ESI Order.  We remain willing to discuss these former employees, but we need more information from Apple.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, February 17, 2021 6:23 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam,

I am responding to your emails sent Friday, February 12 at 3:53pm PT and 5pm PT, and Sunday, February 14 at 3:40pm PT regarding the parties' ongoing discussions regarding ESI custodians.  As an initial matter, you misrepresent the circumstances surrounding Plaintiffs' withdrawal of their joint stipulation.  Plaintiffs' joint stipulation sought to compel Apple to exchange proposed lists of ESI custodians instead of discussing limits on custodians before exchanging proposed lists, as Apple proposed.  While Apple maintains that such a discussion would have been helpful (as evidenced at least by Plaintiffs' complaints about Apple's list of proposed custodians based on the number of custodians identified), Apple did not see the point in burdening the Court with that dispute.   Accordingly, Apple agreed to exchange lists but did not, as your email implies, agree that it would identify any specific individuals.   Your insinuation that Apple agreed to anything else is plainly incorrect.

**Plaintiffs' list of ESI custodians**:

Exhibit V
-130-

While we appreciate your willingness to allow us to share the list with Apple's in-house counsel, we maintain that Plaintiffs' designation of their list as attorneys' eyes only is wholly improper. There is nothing in Plaintiffs' list that reveals any confidential information.

Additionally, Plaintiffs' "areas of knowledge" for many of Plaintiffs' listed ESI custodians is unhelpful. Specifically, Plaintiffs' list includes eighteen (18) former employees of theirs that were later employed by Apple—excluding Lamego and O'Reilly—and for each of those individuals, Plaintiffs cite the "areas of knowledge" as "former employee later employed by Apple; Acquisition, use, and disclosure of Plaintiffs' confidential information." This description provides no information as to what specific relevant knowledge those individuals have other than the fact that they were previously employed by Plaintiffs and were later employed by Apple. Please identify what specific knowledge of the "acquisition, use, and disclosure of Plaintiffs' confidential information" each identified custodian has that is relevant to this case. We also note that Plaintiffs did not provide an "area of knowledge" for Tony Alan, despite listing Tony Alan on Plaintiffs' initial list of ESI custodians. Please confirm that Plaintiffs are dropping Mr. Alan as a proposed ESI custodian; if Plaintiffs intend to keep Mr. Alan on the list, please also identify the specific knowledge that Mr. Alan has that is relevant to this case.

**Apple's list of ESI custodians**:

Plaintiffs still have not provided a response to Apple's request for the basis for their assertion that Apple's list is deficient. As discussed below, we have addressed the specific individuals you have indicated you believe are missing, and we have even added custodians to Apple's list in an attempt to move this process forward. Nonetheless, Plaintiffs continue to assert that Apple is "exclud[ing] individuals Apple knew had relevant information," but also continue to refuse to identify the individuals that you contend are missing. Apple is confused by Plaintiffs' position; Plaintiffs refused to discuss reasonable limits on ESI custodians with Apple previously, arguing that the ESI Order does not require a specific number of individuals, yet Plaintiffs now appear to be complaining about Apple's ESI list based solely on the number of ESI custodians Apple identified.

One of the reasons Apple insisted on exchanging information about the knowledge each proposed custodian has that is relevant to this case is so that the parties can assess whether each others' lists are sufficient and whether there are additional custodians with specific areas of knowledge they believe should be listed on the other party's list. As we have stated several times, and as discussed below, Apple has identified the proposed ESI custodians that have knowledge relevant to this case. If there are additional custodians (or custodians with specific areas of knowledge relevant to the case) that Plaintiffs believe should be identified (either now, or as discovery progresses), please let us know and we would be happy to investigate.

With respect to the categories of Apple employees you listed in your email dated February 12, Apple responds below:

(1) <u>individuals who worked with Lamego</u>: as an initial matter, Mr. Lamego was at Apple for only 6 months. Apple has identified every inventor listed with Mr. Lamego on each of the Disputed Patents, as well as Mr. Lamego's supervisor. It is Plaintiffs' position that Apple should identify every single person that Lamego interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

(2) <u>individuals who worked with O'Reilly</u>: Apple identified Mr. O'Reilly along with Mr. Mistri, who has worked with Mr. O'Reilly. Is it Plaintiffs' position that Apple should identify every single person that O'Reilly has interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

(3) <u>individuals who were involved in the accused aspects of the Apple Watch</u>: Apple has identified Mr. Hotelling, Ms. Haggerty, Mr. Land, and Mr. Waydo, all of whom have knowledge of the "accused aspects of the Apple Watch." It is entirely unclear to Apple what additional individuals Plaintiffs are referring to, particularly in view of your prior representation that you are not requesting that Apple identify every person that has worked on the Apple Watch.

Exhibit V

-131-

(4) <u>individuals who were involved in the accused business and marketing strategies</u>:  Apple has identified Mr. O'Reilly, Ms. Caldbeck, and Mr. Mistri, all of whom have knowledge about the "accused business and marketing strategies."

(5) <u>individuals who were involved in the patent applications at issue but not listed as an inventor</u>:  we have listed every inventor listed with Mr. Lamego on each of the Disputed Patents.  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to.

Furthermore, Plaintiffs are now alleging that Plaintiffs' former employees later employed by Apple should be on Apple's list of ESI custodians, without providing any basis for such a position.  The fact that an employee was previously employed by Plaintiffs is not a sufficient basis to allege those employees have knowledge about the issues in this case, and Plaintiffs have provided no basis for their assertion that the former employees "took Plaintiffs' trade secret to Apple."  The collection of ESI is burdensome, time consuming, and costly, and Apple is not going to agree to identify custodians simply based on an unfound conclusory assertion by Plaintiffs that certain employees "took Plaintiffs' trade secret to Apple."  If you have a specific basis for that assertion, please let us know, but based on Apple's investigation, the nineteen former employees Plaintiffs identified on their list do not have knowledge relevant to the issues in this case.

**Marcelo Lamego and David Nazzaro**:

Your email on Monday (February 15) states that Plaintiffs are "surprised that [Apple is] just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro."  We are not sure why Plaintiffs would be surprised by this—both employees left Apple in 2014, years before Plaintiffs filed their Complaint in this case.  Do Plaintiffs' contend that Apple had some obligation to retain either individuals' documents when they left Apple?  If so, what is your basis for such a contention?

I have addressed your specific questions below:

- Your request that Apple "conduct a company-wide search of 'Lamego' and 'Navarro' and preserve all resulting emails" is unreasonable and overburdensome.  As you know, Apple employs approximately 150,000 employees worldwide.  Apple does not have the ability to run a search across all employees' emails—to accomplish Plaintiffs' requested search, Apple would have to pull the emails for every single employee and run a separate search on the email for each employee separately.  Such a request would be exceedingly costly and time-consuming, and is certainly not proportional to the needs of this case.
- Apple does not have any electronic devices used by Lamego or Navarro, or any images of such devices.  Nor does Apple have files from their computers, text messages, or chat messages other than those that exist is other custodians' files or in non-custodial databases.  Apple has preserved, and is collecting and reviewing, any remaining relevant files that exist.  Indeed, Apple has already begun producing such documents and will continue to do so on a rolling basis, to the extent additional documents are identified.
- Mr. Lamego and Navarro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, in accordance with Apple's procedures for departing employees.  Apple will produce a copy of its document retention and destruction policies and practices.
- With respect to your final question ("Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?"), Apple rejects the implication that Apple somehow acted improperly by "destroy[ing]" any information.  In any event, please let us know which individuals you are referring to.  As a general matter, we are unaware of the removal of the files of any other individuals with knowledge relevant to the issues in this case.

Thanks, and best regards,
Brian

Exhibit V
-132-

**Brian Andrea**

<span style="color:#6fa8dc">GIBSON DUNN</span>

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, February 15, 2021 1:40 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We are surprised that you are just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro.  We request that Apple conduct a company-wide search of "Lamego" and "Navarro" and preserve all resulting emails.  We presume you have done so already, but please confirm that Apple has preserved any remaining files, electronic devices (e.g., computers, phones, storage devices) used by Lamego or Navarro, or any images of such devices.  Please also confirm that Apple will preserve emails, files, and devices for any other individuals that leave the company and are related to this dispute, including all individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area.  Please also provide a copy of Apple's document retention and destruction policies and practices, pursuant to Plaintiffs' RFP No. 107.

We would also like to understand the scope of what has been deleted and whether the deleted files can be recovered.  To that end, please answer the following questions:

1. Does Apple have any other files for Lamego or Navarro, such as files from their computers, text messages, or chat messages?
2. Does Apple have electronic devices used by Lamego or Navarro that are in Apple's custody or control, such as computers, phones, USB storage devices, or cloud storage, or any images of such devices?
3. When did Apple last have custody of Lamego's and Navarro's emails and any files or devices that were destroyed?  Why did Apple destroy them?
4. Does Apple have any form of archive or backup that might contain emails, files, or devices used by Lamego or Navarro?  What did Apple do to confirm the destruction of any of Lamego's and Navarro's emails, files, or devices that were destroyed?
5. Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** <span style="color:#6fa8dc">Martens</span>

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, February 12, 2021 4:57 PM

Exhibit V
-133-

**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam—

Pursuant to our meet and confer earlier this week, and our follow up correspondence, I am writing with the additional information the parties agreed to exchange.

Below is an identification of the knowledge that each of Apple's proposed ESI custodians has that is relevant to the core issues or subjects in this case:

- Mike O'Reilly:  Mr. O'Reilly is the subject of Plaintiffs' allegations related to alleged trade secret misappropriation.

- Steve Hotelling:  Mr. Hotelling was Marcelo Lamego's supervisor during the six months Mr. Lamego was employed by Apple.  Mr. Hotelling is also knowledgeable about the operation and development of the Apple Watch.  Mr. Hotelling is also a named inventor on one of the Apple Disputed Patents and the Apple Disputed Application.

- Brian Land:  Mr. Land is knowledgeable about the operation and development of the Apple Watch hardware.

- Steve Waydo:  Mr. Waydo is knowledgeable about the operation and development of the Apple Watch software.

- Wolf Oetting:  Mr. Oetting is a named inventor on two of the Apple Disputed Patents.

- Trevor Ness:  Mr. Ness is a named inventor on two of the Apple Disputed Patents.

- Chinsan Han:  Mr. Han is a named inventor on two of the Apple Disputed Patents.

- Naoto Matsuyuki:  Mr. Matsuyuki is a named inventor on two of the Apple Disputed Patents.

During the parties' meet and confer, Plaintiffs identified additional individuals that they believe should have been identified by Apple as potential ESI custodians.  Specifically, Plaintiffs identified Marcelo Lamego, David Nazzaro, and "individuals on Apple's initial disclosures."  Apple's response to Plaintiffs' request that Apple identify those individuals is set forth below.

- Myra Haggerty:  Apple identified Ms. Haggerty on its initial disclosures based on her knowledge relevant to Plaintiffs' infringement allegations.  In the interest of moving the case forward, Apple is willing to add Ms. Haggerty to its list of ESI custodians.  She has knowledge about the operation and development of the Apple Watch.

- Deirdre Calbeck:   Apple identified Ms. Calbeck because she has knowledge relevant to "marketing relating to the Apple Watch Series 4 and Series 5." In the interest of moving the case forward, Apple is willing to add Ms. Calbeck to its list of ESI custodians at this time.  She has knowledge about the marketing of the Apple Watch.

- Mark Rollins:  Mr. Rollins was identified on Apple's initial disclosures as having knowledge of Apple's financial information related to the Apple Watch.  Mr. Rollins is a corporate witness that would testify regarding non-custodial financial information pulled from Apple's financial databases; he is not an individual that is likely to have ESI relevant to the issues in this case.

- Marcelo Lamego and David Nazzaro:  As we noted in our prior correspondence, Messrs. Lamego and Nazzaro are no longer Apple employees and have not been Apple employees since 2014.  Apple no longer has either individual's email files.  To the extent Apple has relevant documents from either individual in non-custodial databases or the files of other custodians, Apple will produce such documents (and in fact has already begun producing such documents).

Exhibit V
-134-

Finally, Apple is adding <u>Afshad Mistri</u> to its list of ESI custodians.  Mr. Mistri has knowledge about marketing of the Apple Watch and Apple's interactions with hospitals.

Please note that given the position that Plaintiffs have taken with respect to broad swaths of publicly available information—including photographs of Apple's products and public patents—we are not currently able to share critical information about Plaintiffs' allegations with Apple.  Accordingly, we are making these decisions without the benefit of information we might otherwise have if Plaintiffs were not designating public information as AEO.

Of course, Apple's investigation into the issues and allegations in this case is ongoing, and Apple reserves the right to identify additional ESI custodians as its investigation proceeds.  Additionally, Apple reserves the right to request ESI from individuals that do not appear on Plaintiffs' initial list as discovery progresses in this case.

Best regards,
Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Andrea, Brian
**Sent:** Thursday, February 11, 2021 9:30 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We don't understand how you can continue to claim that Apple's list is "facially deficient" yet continue to refuse to provide the basis for that claim.  I asked you multiple times during our call for your basis, and your response was that "it's not Plaintiffs' job to tell Apple who to put on their list."  Clearly, there are people that Plaintiffs believe should be on Apple's list and it is unclear why you won't tell us who those people are.

Apple performed a reasonable investigation and identified the people that are knowledgeable about the issues in this case.  If you believe there are people missing from that list, please let us know who you believe is missing.  As you know, during the meet and confer, after I asked you for this information many times, you did mention Messrs. Lamego and Nazzaro as well as "other people on Apple's initial disclosures."  I promised that we would investigate and get back to you regarding those names, and we will do so tomorrow.

I also asked you if you expected Apple to identify every person that ever worked on the Apple Watch; you confirmed that Plaintiffs do not expect Apple to identify every person that worked on the Watch.

Finally, I asked you if you expected Apple to identify every Apple current or former employee that was previously employed by Plaintiffs, regardless of what work they did for Plaintiffs or Apple, which is how Plaintiffs apparently came up with the majority of their forty-six custodians.  While you did not give me a straight answer one way or another, I told

Exhibit V
-135-

you that Apple does not believe that the fact that an employee was previously employed by Plaintiffs is a sufficient basis to believe those employees have knowledge about the issues in this case.  If you disagree, please let us know the basis for your disagreement.

I reiterate our request for Plaintiffs' basis for their allegation that Apple's list is deficient.  If you can't provide us with that information, it is unclear to Apple how Apple can try to resolve Plaintiffs' concerns, since we don't know what Plaintiffs' concerns are.

Thanks,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 ▪ Fax +1 202.530.4220
BAndrea@gibsondunn.com ▪ www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, February 10, 2021 11:27 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We disagree with your characterization of virtually everything that you claim occurred during the meet and confer.  Your email again shows why we have suggested that the parties should record meet and confers.

We will reiterate our position.  During the meet and confer, Plaintiffs explained the basis for our assertion that Apple's list is deficient.  In particular, we explained that Apple's list excluded at least the custodians that Plaintiffs had already identified to Apple in its prior joint stipulation and in email correspondence.  We explained that it was not reasonable for Apple to demand that we identify all *other* missing individuals in Apple's list.  While we know Apple's list excluded relevant custodians, we have no way of knowing the universe of custodians that Apple has never disclosed to us.  We explained that we believe the ESI Order puts that obligation on Apple—not Plaintiffs.  This is because only Apple can perform that investigation.  Indeed, that is why we conducted a reasonable investigation on our side and identified 46 potential ESI custodians.

We also told you at the very beginning of the call that we have no problem explaining the relevance of each custodian on our list.  However, we explained that does not resolve our dispute because Apple's list is facially deficient.  Even if Apple explains that its eight custodians are relevant, that does not show that *other* individuals are irrelevant.  Thus, while we will provide the requested information at 5pm pacific on Friday, the exchange will not resolve this dispute.

It is inappropriate for Apple to supplement its list only when Plaintiffs can identify someone who is missing.  We maintain the ESI Order requires Apple to identify the reasonable universe of potential custodians.  We believe the parties are at an impasse because Apple has steadfastly refused to provide such a list.  Therefore, we have a fundamental disagreement as to Apple's obligation under the ESI Order.  That disagreement has not changed.

Exhibit V
-136-

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 Direct

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, February 10, 2021 3:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam—

I write to memorialize the parties' discussion in this afternoon's meet and confer regarding the identification of ESI custodians.

Plaintiffs took the position that Apple's list of ESI custodians was deficient, but refused to provide a basis for that position.  Apple made clear that it conducted a reasonable investigation and identified those individuals knowledgeable about the core issues in this case, as required by the ESI Order, and thus it did not understand how Plaintiffs can possibly claim that Apple's list is deficient.  *See* Dkt. 51.  Apple noted that it seemed that Plaintiffs have individuals in mind that they believe Apple should identify,  but Plaintiffs refused to identify those individuals.  Instead, Plaintiffs took the position that they were not obligated to provide that information to Apple.  Apple disagreed, noting that the meet and confer process is intended to facilitate an exchange of information between the parties so that the parties can come to ground or at least narrow their disputes, and asked multiple times that Plaintiffs provide the basis for their argument that Apple's list is deficient.

Eventually, after multiple requests, Plaintiffs identified two former Apple employees, Marcelo Lamego and David Nazzaro, as well as "individuals identified in Apple's Initial Disclosures."  Apple agreed to consider whether those individuals should be on its list of ESI custodians and indicated that it would get back to Plaintiffs with a response.

Plaintiffs also took the position that the parties are at an "impasse." Apple disagreed, noting that it was willing to investigate the issues Plaintiffs raised (as discussed above) and also suggesting that the parties exchange further information that would allow each party to assess the sufficiency of each others' list.  Indeed, Apple noted that it has no idea what the relevance is to this case of the vast majority of the forty-six (46) individuals Plaintiffs identified.  Apple suggested that each party should exchange information about the knowledge that each identified individual has, and after that exchange occurs, the parties should have another call to discuss the sufficiency of each others' lists.  Plaintiffs eventually agreed to exchange this information, and asked that Apple suggest a time for the exchange.  Apple suggests the parties exchange descriptions of the relevant knowledge their respective proposed ESI custodians possess at 5:00 p.m. PST on Friday, February 12, 2021.  Please let us know if Plaintiffs agree.

Best,
Brian

**Brian Andrea**

**GIBSON DUNN**

Exhibit V
-137-

# Exhibit W

| | |
|---|---|
| **From:** | Andrea, Brian |
| **Sent:** | Wednesday, March 3, 2021 8:30 AM |
| **To:** | Adam.Powell |
| **Cc:** | Masimo.Apple; *** Apple-Masimo |
| **Subject:** | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians |

Adam,

I'm writing regarding the parties' ongoing discussions regarding ESI custodians, including in response to your emails dated February 24, 2021 at 6:18, 6:46, and 6:49 pm PT.

**Plaintiffs' complaints about Apple's ESI custodian list (your 2/24/21 email sent at 6:18pm PT)**:  Apple does not believe there is anything in your email that requires a response in view of Plaintiffs' joint stipulation served 15 minutes after this email.  As you know, Apple disagrees with Plaintiffs' position and is at a loss as to what more can be done regarding Plaintiffs' complaints about Apple's list of ESI custodians if Plaintiffs are going to continue to assert that the list is deficient without providing a basis for their assertion.  While Apple believes the parties could have resolved this issue through the exchange of information, Plaintiffs decided to file their joint stipulation and Apple will respond to Plaintiffs' arguments in its section of that joint stipulation.

**Apple's proposal that the parties move forward with search terms on undisputed search terms**:  We have not yet heard from you as to whether Plaintiffs are willing to move forward with exchanging search terms on undisputed custodians, as Apple suggested more than a week ago.  While you stated that "Apple's proposal does not resolve the parties' dispute," you also indicated that you would "respond to that proposal separately."  Please let us know whether Plaintiffs agree with Apple's proposal and, if so, your availability for a discussion about mutually agreeable custodians.

**Plaintiffs' failure to identify Gerry Hammarth as an ESI custodian**:  In their response to Apple's Interrogatory No. 1 ("Identify by name and title at least five people at Masimo and at least five people at Cercacor having the most knowledge about or responsibility…."), Plaintiffs identified Gerry Hammarth as an individual who is "knowledgeable about Cercacor's products."  Plaintiffs did not, however, identify Mr. Hammarth as an ESI custodian.  Please explain why Plaintiffs did not list Mr. Hammarth as an ESI custodian.

**Plaintiffs' refusal to provide additional information regarding the "former employees" (your 2/24/21 email sent at 6:46pm PT)**:  Apple does not understand your refusal to provide additional specific descriptions about the relevant knowledge that each of the former employees' of Plaintiffs later employed by Apple holds that warranted Plaintiffs identifying each "former employee" on their list of ESI custodians.  As noted in our prior email, stating only that each individual's knowledge is "former employee later employed by Apple; Acquisition, use, and disclosure of Plaintiffs' confidential information" is completely unhelpful and does nothing to help Apple assess why Plaintiffs believe each person has relevant knowledge and should be identified as an ESI custodian. The fact that the "ESI Order does not require such a description" misses the point; Apple requested the additional information so that it can understand why Plaintiffs believe the former employees have relevant knowledge.  Plaintiffs' refusal to provide additional information does nothing to move the ball forward with respect to this dispute.

Apple reiterates its request for information regarding the relevant knowledge that each "former employee" has that warrants Plaintiffs listing them on their list of ESI custodians.  If Plaintiffs' sole reason for listing the "former employees" is the fact that they were at one point employed by Plaintiffs and were later employed by Apple, then please just tell us that.  If there is an additional reason Plaintiffs listed each "former employee," then tell us that instead.

Your email states that Plaintiffs" remain willing to discuss these former employees, but we need more information from Apple."  While Apple has already stated it is willing to provide information regarding each "former employee," including

Exhibit W
-139-

by providing supplemental responses to Interrogatory No. 11 (which asks Apple to "identify all current or former Apple employees who worked at Masimo and/or Cercacro before being employed by Apple…."), the information Apple is willing to provide in response to discovery requests is separate from this dispute.  Plaintiffs identified each former employee as an individual knowledgeable about the issues in this case, pursuant to the ESI Order, and Apple requests the basis for those identifications.  Plaintiffs should not require information from Apple to inform Apple why it is they believe each individual has relevant knowledge.

**Plaintiffs' questions regarding Lamego/Nazzaro emails (your 2/24/21 email sent at 6:49pm PT)**:  Your email did not answer our question as to whether or not Plaintiffs contend that Apple had some obligation to retain either Marcelo Lamego and David Nazzaro's documents when they left Apple in 2014.  Please let us know if that is Plaintiffs' contention and, if so, the basis for such a contention.

Your email asked a number of question, which I have listed below, followed by Apple's response:

- *Does Apple have any form or archive or backup that might contain emails, files, or devices used by Lamego or Navarro?  What did Apple do to confirm the destruction of any of Lamego's and Navarro's emails, files, or devices that were destroyed?*

  Apple response:  Apple does not have any form or archive or backup that might contain emails, files, or devices used by Lamego or Nazzaro.  As noted in my prior email, however, Apple has preserved, and is collecting and reviewing, any remaining relevant files that exist.  Indeed, Apple has already begun producing such documents and will continue to do so on a rolling basis, to the extent additional documents are identified.  Mr. Lamego and Nazzaro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, as confirmed by the group that oversees such procedures in accordance with Apple's document retention and destruction policies and practices.

- *Does Apple have the ability to search groups of email accounts at once?  For example, could Apple search emails from individuals who work in physiological monitoring, individuals in Lamego's group, executives, or a custom list of individuals?*

  Apple response:  Apple does not have the ability to search groups of email accounts at one time.  The only way to search an individual's email is by pulling the email from each individual and performing searches.

- *What do you mean by "non-custodial databases"?  Do such databases include emails, files, text messages, chat messages, or devices used by Lamego or Navarro?  Has Apple ever exported Lamego or Navarro's files for other litigation, such that it could search the custodial data exported for the other litigation?*

  Apple response:  Apple means document repositories that are not "assigned" to any specific custodian, and instead are used by multiple individuals to store files or information.  One example of a "non-custodial database" would be a server folder.  Another example would be Apple's financial records.  Those databases do not include emails, text messages, chat messages, or devices used by Lamego or Nazzaro unless for some reason those individuals attached an email or text/chat message to a document in the database.  Apple has not exported either individual's files for other litigation.

- *Your email is unclear as to whether Apple actually removed Lamego and Navarro's files 4-10 weeks after they left Apple or if you are assuming that is the case because that is Apple's standard practice.  Please provide the actual date that Lamego and Navarro's emails and files were removed.  Please also provide a copy of Apple's document retention and destruction policies and practices, or provide bates numbers if those documents have been produced.*

  Apple response:  Apple has already produced its record management policy.  *See* APL-MAS_75595-99.  As stated in my previous email and again above,  Mr. Lamego and Nazzaro's emails and files were removed from Apple's

Exhibit W
-140-

system sometime between approximately 4 and 10 weeks after they left Apple, as confirmed by the group that oversees such procedures in accordance with Apple's document retention and destruction policies and practices. Apple does not track the "actual date" that files for departing employees are removed, and thus we cannot provide you with that information.

- *Your email asks which individuals we are referring to when we say "other individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area."  We have been discussing the issue of former employees for quite some time and have repeatedly explained our position.  We identified the former employees that we know of in our ESI custodian list.  We asked Apple to identify the former employees that it knows of and identify the individuals that worked in a relevant area.  Apple has so far declined to do so.  Please provide a list of such individuals and identify if Apple has destroyed the files for any such individuals.  Please confirm Apple will retain the files for any such individuals even if they stop working with Apple while this case is pending.*

  <u>Apple response</u>:  Apple still does not understand what Plaintiffs mean by "a relevant area."  Contrary to your statement, Plaintiffs have not explained what they mean by this statement.  As we have indicated many times, Apple has investigated Plaintiffs' allegations in this case and have identified two "former employees" that appear relevant—Michael O'Reilly and Marcelo Lamego.

  It appears that Plaintiffs' position is that the fact that an individual was previously employed by Plaintiffs and later employed by Apple means they "worked for or with Apple in a relevant area."  Apple disagrees, and thus reiterates its request for Plaintiffs to define what they mean by "relevant area."  To the extent Plaintiffs are able to identify relevant individuals, Apple will investigate the responses to your questions.

Finally, Apple asks that Plaintiffs answer the following questions regarding each individual they have identified as an ESI custodian that is no longer employed by Plaintiffs, including but not limited to both Marcelo Lamego and Michael O'Reilly:

- Did Plaintiffs maintain <u>all</u> of each individuals' documents and emails after he/she left Masimo or Cercacor?

- If Plaintiffs deleted any documents from each individual, please provide the date on which those documents were deleted, what documents were deleted, and whether the documents were deleted in accordance with Plaintiffs' document retention and destruction policies or practices.

- Please confirm that Plaintiffs will provide a copy of their document retention and destruction policies and practices, or provide bates numbers if those documents have been produced.

We look forward to receiving your responses.

Thanks, and best regards,
Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

Exhibit W
-141-

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, February 24, 2021 9:18 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

Thank you for your emails.  We disagree with your discussion of Plaintiffs' prior joint stipulation, but it does not appear helpful to further debate that issue by email.   We believe the record is clear.

We also disagree with your assertions regarding Apple's list of ESI custodians.  Simply repeating your assertion that Plaintiffs have not provided a basis for their position does not make your characterization of our position correct.  We have been very clear about our position and will repeat it here again.  The dispute is not about Apple adding a particular name that *Plaintiffs* can identify as missing.  The parties dispute Apple's fundamental obligations under the ESI Order.  Plaintiffs believe Apple must identify the potential ESI custodians that fall within the scope as defined by the ESI Order.  Apple apparently disagrees.  That is the parties' dispute, and simply adding individuals that Plaintiffs identify does not alter that underlying dispute.

We appreciate that Apple has now acknowledged the five categories of individuals that we originally identified for Apple on January 22, but Apple's discussion also does not resolve the parties' dispute.  Your email states that Apple has identified some people in four of the categories but does not state that it has identified all potential ESI custodians with knowledge in each category.  Instead, Apple shifts to trying to characterize Plaintiffs position as an extreme, asking if Plaintiffs are demanding that Apple identify "every single person that Lamego [or O'Reilly] interacted with during his time at Apple, regardless of what their knowledge is about the issues int his case."  We have always been clear that is not our position.  My February 12 email, which was not included in the email chain below, explained that "we expected Apple's list to include *relevant* Apple employees from at least the following categories . . . ."  Thus, we have already told you what we expect.  Our position is that Apple—not Plaintiffs—have the requisite knowledge to identify the individuals within those categories that should be included.

Similarly, we have also never asserted that all of Plaintiffs' former employees should be listed on Apple's list of ESI custodians.  Rather, we explained that *Apple* should determine which of those former employees have knowledge falling within the definition of the ESI Order.  Apple has argued that some individuals lack knowledge because they worked on unrelated projects.  But, again, Apple has declined to list the people that worked on relevant projects.

Apple also asserts it is not listing certain individuals because "the collection of ESI is burdensome, time consuming, and costly."  As we have repeatedly explained, we are not necessarily asserting that all individuals on Apple's list would need to be searched.  Rather, we are asking for a list of potential ESI custodians so that the parties can have an informed discussion as to which ESI custodians would ultimately be searched.  Our position remains that this is what is required by the ESI Order, and we have provided a list in accordance.  Apple could easily provide such a list, and then the parties can discuss how to keep the searching itself reasonable.

For all these reasons, the parties do not appear to be making any progress on the fundamental dispute that we identified above.  The parties continue to dispute Apple's obligations under the ESI Order: whether Apple is required to provide the universe of potential ESI custodians fitting the scope defined in the ESI Order.

Your February 17 email also addresses two other issues: (1) Plaintiffs' list of ESI custodians and (2) the destruction of Marcelo Lamego's and David Nazzaro's files.  Those issues do not appear to be relevant to or advance our fundamental dispute discussed above.  Thus, we will respond to those portions of your email separately.

Exhibit W
-142-

As for your February 23 email, Apple's proposal does not resolve the parties' dispute.  We will also respond to that proposal separately.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Tuesday, February 23, 2021 5:52 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We have not yet received a response to the email below.  In any event, Apple is eager to move forward with the parties' ESI discussions, and proposes that in the interest of avoiding further delay, the parties move forward with discussing search terms for custodians on which they agree.  We propose that the parties have a discussion this week about the custodians to which they agree from both lists, and select a date next week for the mutual exchange of search terms for those custodians.   Please let us know if Plaintiffs agree, and if so, your availability for a discussion this week about mutually agreeable custodians.

Thanks,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Andrea, Brian
**Sent:** Wednesday, February 17, 2021 9:23 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam,

I am responding to your emails sent Friday, February 12 at 3:53pm PT and 5pm PT, and Sunday, February 14 at 3:40pm PT regarding the parties' ongoing discussions regarding ESI custodians.  As an initial matter, you misrepresent the circumstances surrounding Plaintiffs' withdrawal of their joint stipulation.  Plaintiffs' joint stipulation sought to compel Apple to exchange proposed lists of ESI custodians instead of discussing limits on custodians before exchanging

proposed lists, as Apple proposed. While Apple maintains that such a discussion would have been helpful (as evidenced at least by Plaintiffs' complaints about Apple's list of proposed custodians based on the number of custodians identified), Apple did not see the point in burdening the Court with that dispute. Accordingly, Apple agreed to exchange lists but did not, as your email implies, agree that it would identify any specific individuals. Your insinuation that Apple agreed to anything else is plainly incorrect.

**Plaintiffs' list of ESI custodians:**

While we appreciate your willingness to allow us to share the list with Apple's in-house counsel, we maintain that Plaintiffs' designation of their list as attorneys' eyes only is wholly improper. There is nothing in Plaintiffs' list that reveals any confidential information.

Additionally, Plaintiffs' "areas of knowledge" for many of Plaintiffs' listed ESI custodians is unhelpful. Specifically, Plaintiffs' list includes eighteen (18) former employees of theirs that were later employed by Apple—excluding Lamego and O'Reilly—and for each of those individuals, Plaintiffs cite the "areas of knowledge" as "former employee later employed by Apple; Acquisition, use, and disclosure of Plaintiffs' confidential information." This description provides no information as to what specific relevant knowledge those individuals have other than the fact that they were previously employed by Plaintiffs and were later employed by Apple. Please identify what specific knowledge of the "acquisition, use, and disclosure of Plaintiffs' confidential information" each identified custodian has that is relevant to this case. We also note that Plaintiffs did not provide an "area of knowledge" for Tony Alan, despite listing Tony Alan on Plaintiffs' initial list of ESI custodians. Please confirm that Plaintiffs are dropping Mr. Alan as a proposed ESI custodian; if Plaintiffs intend to keep Mr. Alan on the list, please also identify the specific knowledge that Mr. Alan has that is relevant to this case.

**Apple's list of ESI custodians:**

Plaintiffs still have not provided a response to Apple's request for the basis for their assertion that Apple's list is deficient. As discussed below, we have addressed the specific individuals you have indicated you believe are missing, and we have even added custodians to Apple's list in an attempt to move this process forward. Nonetheless, Plaintiffs continue to assert that Apple is "exclud[ing] individuals Apple knew had relevant information," but also continue to refuse to identify the individuals that you contend are missing. Apple is confused by Plaintiffs' position; Plaintiffs refused to discuss reasonable limits on ESI custodians with Apple previously, arguing that the ESI Order does not require a specific number of individuals, yet Plaintiffs now appear to be complaining about Apple's ESI list based solely on the number of ESI custodians Apple identified.

One of the reasons Apple insisted on exchanging information about the knowledge each proposed custodian has that is relevant to this case is so that the parties can assess whether each others' lists are sufficient and whether there are additional custodians with specific areas of knowledge they believe should be listed on the other party's list. As we have stated several times, and as discussed below, Apple has identified the proposed ESI custodians that have knowledge relevant to this case. If there are additional custodians (or custodians with specific areas of knowledge relevant to the case) that Plaintiffs believe should be identified (either now, or as discovery progresses), please let us know and we would be happy to investigate.

With respect to the categories of Apple employees you listed in your email dated February 12, Apple responds below:

(1) <u>individuals who worked with Lamego</u>: as an initial matter, Mr. Lamego was at Apple for only 6 months. Apple has identified every inventor listed with Mr. Lamego on each of the Disputed Patents, as well as Mr. Lamego's supervisor. It is Plaintiffs' position that Apple should identify every single person that Lamego interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

(2) <u>individuals who worked with O'Reilly</u>:  Apple identified Mr. O'Reilly along with Mr. Mistri, who has worked with Mr. O'Reilly.  Is it Plaintiffs' position that Apple should identify every single person that O'Reilly has interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

(3) <u>individuals who were involved in the accused aspects of the Apple Watch</u>:  Apple has identified Mr. Hotelling, Ms. Haggerty, Mr. Land, and Mr. Waydo, all of whom have knowledge of the "accused aspects of the Apple Watch."  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to, particularly in view of your prior representation that you are not requesting that Apple identify every person that has worked on the Apple Watch.

(4) <u>individuals who were involved in the accused business and marketing strategies</u>:  Apple has identified Mr. O'Reilly, Ms. Caldbeck, and Mr. Mistri, all of whom have knowledge about the "accused business and marketing strategies."

(5) <u>individuals who were involved in the patent applications at issue but not listed as an inventor</u>:  we have listed every inventor listed with Mr. Lamego on each of the Disputed Patents.  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to.

Furthermore, Plaintiffs are now alleging that Plaintiffs' former employees later employed by Apple should be on Apple's list of ESI custodians, without providing any basis for such a position.  The fact that an employee was previously employed by Plaintiffs is not a sufficient basis to allege those employees have knowledge about the issues in this case, and Plaintiffs have provided no basis for their assertion that the former employees "took Plaintiffs' trade secret to Apple."  The collection of ESI is burdensome, time consuming, and costly, and Apple is not going to agree to identify custodians simply based on an unfound conclusory assertion by Plaintiffs that certain employees "took Plaintiffs' trade secret to Apple."  If you have a specific basis for that assertion, please let us know, but based on Apple's investigation, the nineteen former employees Plaintiffs identified on their list do not have knowledge relevant to the issues in this case.

**<u>Marcelo Lamego and David Nazzaro</u>:**

Your email on Monday (February 15) states that Plaintiffs are "surprised that [Apple is] just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro."  We are not sure why Plaintiffs would be surprised by this—both employees left Apple in 2014, years before Plaintiffs filed their Complaint in this case.  Do Plaintiffs' contend that Apple had some obligation to retain either individuals' documents when they left Apple?  If so, what is your basis for such a contention?

I have addressed your specific questions below:

- Your request that Apple "conduct a company-wide search of 'Lamego' and 'Navarro' and preserve all resulting emails" is unreasonable and overburdensome.  As you know, Apple employs approximately 150,000 employees worldwide.  Apple does not have the ability to run a search across all employees' emails—to accomplish Plaintiffs' requested search, Apple would have to pull the emails for every single employee and run a separate search on the email for each employee separately.  Such a request would be exceedingly costly and time-consuming, and is certainly not proportional to the needs of this case.
- Apple does not have any electronic devices used by Lamego or Navarro, or any images of such devices.  Nor does Apple have files from their computers, text messages, or chat messages other than those that exist is other custodians' files or in non-custodial databases.   Apple has preserved, and is collecting and reviewing, any remaining relevant files that exist.  Indeed, Apple has already begun producing such documents and will continue to do so on a rolling basis, to the extent additional documents are identified.
- Mr. Lamego and Navarro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, in accordance with Apple's procedures for departing employees.   Apple will produce a copy of its document retention and destruction policies and practices.

Exhibit W
-145-

- With respect to your final question ("Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?"), Apple rejects the implication that Apple somehow acted improperly by "destroy[ing]" any information.  In any event, please let us know which individuals you are referring to.  As a general matter, we are unaware of the removal of the files of any other individuals with knowledge relevant to the issues in this case.

Thanks, and best regards,
Brian


**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, February 15, 2021 1:40 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We are surprised that you are just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro.  We request that Apple conduct a company-wide search of "Lamego" and "Navarro" and preserve all resulting emails.  We presume you have done so already, but please confirm that Apple has preserved any remaining files, electronic devices (e.g., computers, phones, storage devices) used by Lamego or Navarro, or any images of such devices.  Please also confirm that Apple will preserve emails, files, and devices for any other individuals that leave the company and are related to this dispute, including all individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area.  Please also provide a copy of Apple's document retention and destruction policies and practices, pursuant to Plaintiffs' RFP No. 107.

We would also like to understand the scope of what has been deleted and whether the deleted files can be recovered.  To that end, please answer the following questions:

1. Does Apple have any other files for Lamego or Navarro, such as files from their computers, text messages, or chat messages?
2. Does Apple have electronic devices used by Lamego or Navarro that are in Apple's custody or control, such as computers, phones, USB storage devices, or cloud storage, or any images of such devices?
3. When did Apple last have custody of Lamego's and Navarro's emails and any files or devices that were destroyed?  Why did Apple destroy them?
4. Does Apple have any form of archive or backup that might contain emails, files, or devices used by Lamego or Navarro?  What did Apple do to confirm the destruction of any of Lamego's and Navarro's emails, files, or devices that were destroyed?
5. Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?

Exhibit W
-146-

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 Direct

**Knobbe** Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, February 12, 2021 4:57 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam—

Pursuant to our meet and confer earlier this week, and our follow up correspondence, I am writing with the additional information the parties agreed to exchange.

Below is an identification of the knowledge that each of Apple's proposed ESI custodians has that is relevant to the core issues or subjects in this case:

- Mike O'Reilly:  Mr. O'Reilly is the subject of Plaintiffs' allegations related to alleged trade secret misappropriation.

- Steve Hotelling:  Mr. Hotelling was Marcelo Lamego's supervisor during the six months Mr. Lamego was employed by Apple.  Mr. Hotelling is also knowledgeable about the operation and development of the Apple Watch.  Mr. Hotelling is also a named inventor on one of the Apple Disputed Patents and the Apple Disputed Application.

- Brian Land:  Mr. Land is knowledgeable about the operation and development of the Apple Watch hardware.

- Steve Waydo:  Mr. Waydo is knowledgeable about the operation and development of the Apple Watch software.

- Wolf Oetting:  Mr. Oetting is a named inventor on two of the Apple Disputed Patents.

- Trevor Ness:  Mr. Ness is a named inventor on two of the Apple Disputed Patents.

- Chinsan Han:  Mr. Han is a named inventor on two of the Apple Disputed Patents.

- Naoto Matsuyuki:  Mr. Matsuyuki is a named inventor on two of the Apple Disputed Patents.

During the parties' meet and confer, Plaintiffs identified additional individuals that they believe should have been identified by Apple as potential ESI custodians.  Specifically, Plaintiffs identified Marcelo Lamego, David Nazzaro, and "individuals on Apple's initial disclosures."  Apple's response to Plaintiffs' request that Apple identify those individuals is set forth below.

- Myra Haggerty:  Apple identified Ms. Haggerty on its initial disclosures based on her knowledge relevant to Plaintiffs' infringement allegations.  In the interest of moving the case forward, Apple is willing to add Ms. Haggerty to its list of ESI custodians.  She has knowledge about the operation and development of the Apple Watch.

- Deirdre Caldbeck:   Apple identified Ms. Calbeck because she has knowledge relevant to "marketing relating to the Apple Watch Series 4 and Series 5." In the interest of moving the case forward, Apple is

Exhibit W
-147-

willing to add Ms. Calbeck to its list of ESI custodians at this time. She has knowledge about the marketing of the Apple Watch.

- Mark Rollins: Mr. Rollins was identified on Apple's initial disclosures as having knowledge of Apple's financial information related to the Apple Watch. Mr. Rollins is a corporate witness that would testify regarding non-custodial financial information pulled from Apple's financial databases; he is not an individual that is likely to have ESI relevant to the issues in this case.

- Marcelo Lamego and David Nazzaro: As we noted in our prior correspondence, Messrs. Lamego and Nazzaro are no longer Apple employees and have not been Apple employees since 2014. Apple no longer has either individual's email files. To the extent Apple has relevant documents from either individual in non-custodial databases or the files of other custodians, Apple will produce such documents (and in fact has already begun producing such documents).

Finally, Apple is adding Afshad Mistri to its list of ESI custodians. Mr. Mistri has knowledge about marketing of the Apple Watch and Apple's interactions with hospitals.

Please note that given the position that Plaintiffs have taken with respect to broad swaths of publicly available information—including photographs of Apple's products and public patents—we are not currently able to share critical information about Plaintiffs' allegations with Apple. Accordingly, we are making these decisions without the benefit of information we might otherwise have if Plaintiffs were not designating public information as AEO.

Of course, Apple's investigation into the issues and allegations in this case is ongoing, and Apple reserves the right to identify additional ESI custodians as its investigation proceeds. Additionally, Apple reserves the right to request ESI from individuals that do not appear on Plaintiffs' initial list as discovery progresses in this case.

Best regards,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Andrea, Brian
**Sent:** Thursday, February 11, 2021 9:30 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We don't understand how you can continue to claim that Apple's list is "facially deficient" yet continue to refuse to provide the basis for that claim. I asked you multiple times during our call for your basis, and your response was that "it's not Plaintiffs' job to tell Apple who to put on their list." Clearly, there are people that Plaintiffs believe should be on Apple's list and it is unclear why you won't tell us who those people are.

Exhibit W
-148-

Apple performed a reasonable investigation and identified the people that are knowledgeable about the issues in this case. If you believe there are people missing from that list, please let us know who you believe is missing. As you know, during the meet and confer, after I asked you for this information many times, you did mention Messrs. Lamego and Nazzaro as well as "other people on Apple's initial disclosures." I promised that we would investigate and get back to you regarding those names, and we will do so tomorrow.

I also asked you if you expected Apple to identify every person that ever worked on the Apple Watch; you confirmed that Plaintiffs do not expect Apple to identify every person that worked on the Watch.

Finally, I asked you if you expected Apple to identify every Apple current or former employee that was previously employed by Plaintiffs, regardless of what work they did for Plaintiffs or Apple, which is how Plaintiffs apparently came up with the majority of their forty-six custodians. While you did not give me a straight answer one way or another, I told you that Apple does not believe that the fact that an employee was previously employed by Plaintiffs is a sufficient basis to believe those employees have knowledge about the issues in this case. If you disagree, please let us know the basis for your disagreement.

I reiterate our request for Plaintiffs' basis for their allegation that Apple's list is deficient. If you can't provide us with that information, it is unclear to Apple how Apple can try to resolve Plaintiffs' concerns, since we don't know what Plaintiffs' concerns are.

Thanks,
Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, February 10, 2021 11:27 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We disagree with your characterization of virtually everything that you claim occurred during the meet and confer. Your email again shows why we have suggested that the parties should record meet and confers.

We will reiterate our position. During the meet and confer, Plaintiffs explained the basis for our assertion that Apple's list is deficient. In particular, we explained that Apple's list excluded at least the custodians that Plaintiffs had already identified to Apple in its prior joint stipulation and in email correspondence. We explained that it was not reasonable for Apple to demand that we identify all *other* missing individuals in Apple's list. While we know Apple's list excluded relevant custodians, we have no way of knowing the universe of custodians that Apple has never disclosed to us. We explained that we believe the ESI Order puts that obligation on Apple—not Plaintiffs. This is because only Apple can

11

Exhibit W
-149-

perform that investigation. Indeed, that is why we conducted a reasonable investigation on our side and identified 46 potential ESI custodians.

We also told you at the very beginning of the call that we have no problem explaining the relevance of each custodian on our list. However, we explained that does not resolve our dispute because Apple's list is facially deficient. Even if Apple explains that its eight custodians are relevant, that does not show that *other* individuals are irrelevant. Thus, while we will provide the requested information at 5pm pacific on Friday, the exchange will not resolve this dispute.

It is inappropriate for Apple to supplement its list only when Plaintiffs can identify someone who is missing. We maintain the ESI Order requires Apple to identify the reasonable universe of potential custodians. We believe the parties are at an impasse because Apple has steadfastly refused to provide such a list. Therefore, we have a fundamental disagreement as to Apple's obligation under the ESI Order. That disagreement has not changed.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 Direct

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, February 10, 2021 3:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam—

I write to memorialize the parties' discussion in this afternoon's meet and confer regarding the identification of ESI custodians.

Plaintiffs took the position that Apple's list of ESI custodians was deficient, but refused to provide a basis for that position. Apple made clear that it conducted a reasonable investigation and identified those individuals knowledgeable about the core issues in this case, as required by the ESI Order, and thus it did not understand how Plaintiffs can possibly claim that Apple's list is deficient. *See* Dkt. 51. Apple noted that it seemed that Plaintiffs have individuals in mind that they believe Apple should identify, but Plaintiffs refused to identify those individuals. Instead, Plaintiffs took the position that they were not obligated to provide that information to Apple. Apple disagreed, noting that the meet and confer process is intended to facilitate an exchange of information between the parties so that the parties can come to ground or at least narrow their disputes, and asked multiple times that Plaintiffs provide the basis for their argument that Apple's list is deficient.

Eventually, after multiple requests, Plaintiffs identified two former Apple employees, Marcelo Lamego and David Nazzaro, as well as "individuals identified in Apple's Initial Disclosures." Apple agreed to consider whether those individuals should be on its list of ESI custodians and indicated that it would get back to Plaintiffs with a response.

Plaintiffs also took the position that the parties are at an "impasse." Apple disagreed, noting that it was willing to investigate the issues Plaintiffs raised (as discussed above) and also suggesting that the parties exchange further information that would allow each party to assess the sufficiency of each others' list. Indeed, Apple noted that it has no idea what the relevance is to this case of the vast majority of the forty-six (46) individuals Plaintiffs identified. Apple suggested that each party should exchange information about the knowledge that each identified individual has, and after that exchange occurs, the parties should have another call to discuss the sufficiency of each others' lists. Plaintiffs

Exhibit W
-150-

eventually agreed to exchange this information, and asked that Apple suggest a time for the exchange. Apple suggests the parties exchange descriptions of the relevant knowledge their respective proposed ESI custodians possess at 5:00 p.m. PST on Friday, February 12, 2021. Please let us know if Plaintiffs agree.

Best,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

Exhibit W
-151-

# Exhibit X

Exhibit X
-152-

| From: | Adam.Powell <Adam.Powell@knobbe.com> |
|---|---|
| Sent: | Wednesday, March 3, 2021 11:35 AM |
| To: | Andrea, Brian |
| Cc: | Masimo.Apple; *** Apple-Masimo |
| Subject: | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians |

[External Email]
Brian,

We are happy to discuss search terms in general, but cannot discuss search terms for custodians "on which [the parties] agree" because the parties do not currently agree on any custodians.  As we explained in our portion of the joint stipulation, we maintain that Apple's list of potential custodians is incomplete and does not comply with the ESI Order.  Until Apple provides a full and complete list of potential custodians, Plaintiffs cannot make an informed decision as to which custodians should be searched.

As for your request to discuss search terms, we can start that discussion, but we do not believe it can be very meaningful given Apple's failure to provide a list as required by the ESI Order.  For example, whether a particular ESI search term is too broad may depend on the number and identity of custodians.  That is why the ESI order requires that Apple first provide a complete list of custodians.  Thus, we repeat our request that Apple provide such a list.  That being said, we will engage in initial discussions of search terms with you to determine if the parties can have any meaningful discussions.  Perhaps we could begin with search terms that would be applicable to all custodians on each side, or search terms that would be applicable to certain groups (e.g., disputed inventors).  Please note that we will object to any attempt by Apple to use our willingness to engage in these discussions as a basis to argue that Apple should not have to comply with the ESI order and provide a complete list and/or that, because of the parties' discussions, Apple would be prejudiced by later identifying additional individuals whose documents may be searched.

Thanks,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Tuesday, February 23, 2021 5:52 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We have not yet received a response to the email below.  In any event, Apple is eager to move forward with the parties' ESI discussions, and proposes that in the interest of avoiding further delay, the parties move forward with discussing search terms for custodians on which they agree.  We propose that the parties have a discussion this week about the custodians to which they agree from both lists, and select a date next week for the mutual exchange of search terms for those custodians.  Please let us know if Plaintiffs agree, and if so, your availability for a discussion this week about mutually agreeable custodians.

Exhibit X
-153-

Thanks,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Wednesday, February 17, 2021 9:23 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam,

I am responding to your emails sent Friday, February 12 at 3:53pm PT and 5pm PT, and Sunday, February 14 at 3:40pm PT regarding the parties' ongoing discussions regarding ESI custodians. As an initial matter, you misrepresent the circumstances surrounding Plaintiffs' withdrawal of their joint stipulation. Plaintiffs' joint stipulation sought to compel Apple to exchange proposed lists of ESI custodians instead of discussing limits on custodians before exchanging proposed lists, as Apple proposed. While Apple maintains that such a discussion would have been helpful (as evidenced at least by Plaintiffs' complaints about Apple's list of proposed custodians based on the number of custodians identified), Apple did not see the point in burdening the Court with that dispute. Accordingly, Apple agreed to exchange lists but did not, as your email implies, agree that it would identify any specific individuals. Your insinuation that Apple agreed to anything else is plainly incorrect.

**Plaintiffs' list of ESI custodians**:

While we appreciate your willingness to allow us to share the list with Apple's in-house counsel, we maintain that Plaintiffs' designation of their list as attorneys' eyes only is wholly improper. There is nothing in Plaintiffs' list that reveals any confidential information.

Additionally, Plaintiffs' "areas of knowledge" for many of Plaintiffs' listed ESI custodians is unhelpful. Specifically, Plaintiffs' list includes eighteen (18) former employees of theirs that were later employed by Apple—excluding Lamego and O'Reilly—and for each of those individuals, Plaintiffs cite the "areas of knowledge" as "former employee later employed by Apple; Acquisition, use, and disclosure of Plaintiffs' confidential information." This description provides no information as to what specific relevant knowledge those individuals have other than the fact that they were previously employed by Plaintiffs and were later employed by Apple. Please identify what specific knowledge of the "acquisition, use, and disclosure of Plaintiffs' confidential information" each identified custodian has that is relevant to this case. We also note that Plaintiffs did not provide an "area of knowledge" for Tony Alan, despite listing Tony Alan on Plaintiffs' initial list of ESI custodians. Please confirm that Plaintiffs are dropping Mr. Alan as a proposed ESI custodian; if Plaintiffs intend to keep Mr. Alan on the list, please also identify the specific knowledge that Mr. Alan has that is relevant to this case.

**Apple's list of ESI custodians**:

Exhibit X
-154-

Plaintiffs still have not provided a response to Apple's request for the basis for their assertion that Apple's list is deficient. As discussed below, we have addressed the specific individuals you have indicated you believe are missing, and we have even added custodians to Apple's list in an attempt to move this process forward. Nonetheless, Plaintiffs continue to assert that Apple is "exclud[ing] individuals Apple knew had relevant information," but also continue to refuse to identify the individuals that you contend are missing. Apple is confused by Plaintiffs' position; Plaintiffs refused to discuss reasonable limits on ESI custodians with Apple previously, arguing that the ESI Order does not require a specific number of individuals, yet Plaintiffs now appear to be complaining about Apple's ESI list based solely on the number of ESI custodians Apple identified.

One of the reasons Apple insisted on exchanging information about the knowledge each proposed custodian has that is relevant to this case is so that the parties can assess whether each others' lists are sufficient and whether there are additional custodians with specific areas of knowledge they believe should be listed on the other party's list. As we have stated several times, and as discussed below, Apple has identified the proposed ESI custodians that have knowledge relevant to this case. If there are additional custodians (or custodians with specific areas of knowledge relevant to the case) that Plaintiffs believe should be identified (either now, or as discovery progresses), please let us know and we would be happy to investigate.

With respect to the categories of Apple employees you listed in your email dated February 12, Apple responds below:

(1) individuals who worked with Lamego: as an initial matter, Mr. Lamego was at Apple for only 6 months. Apple has identified every inventor listed with Mr. Lamego on each of the Disputed Patents, as well as Mr. Lamego's supervisor. It is Plaintiffs' position that Apple should identify every single person that Lamego interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

(2) individuals who worked with O'Reilly: Apple identified Mr. O'Reilly along with Mr. Mistri, who has worked with Mr. O'Reilly. Is it Plaintiffs' position that Apple should identify every single person that O'Reilly has interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

(3) individuals who were involved in the accused aspects of the Apple Watch: Apple has identified Mr. Hotelling, Ms. Haggerty, Mr. Land, and Mr. Waydo, all of whom have knowledge of the "accused aspects of the Apple Watch." It is entirely unclear to Apple what additional individuals Plaintiffs are referring to, particularly in view of your prior representation that you are not requesting that Apple identify every person that has worked on the Apple Watch.

(4) individuals who were involved in the accused business and marketing strategies: Apple has identified Mr. O'Reilly, Ms. Caldbeck, and Mr. Mistri, all of whom have knowledge about the "accused business and marketing strategies."

(5) individuals who were involved in the patent applications at issue but not listed as an inventor: we have listed every inventor listed with Mr. Lamego on each of the Disputed Patents. It is entirely unclear to Apple what additional individuals Plaintiffs are referring to.

Furthermore, Plaintiffs are now alleging that Plaintiffs' former employees later employed by Apple should be on Apple's list of ESI custodians, without providing any basis for such a position. The fact that an employee was previously employed by Plaintiffs is not a sufficient basis to allege those employees have knowledge about the issues in this case, and Plaintiffs have provided no basis for their assertion that the former employees "took Plaintiffs' trade secret to Apple." The collection of ESI is burdensome, time consuming, and costly, and Apple is not going to agree to identify custodians simply based on an unfound conclusory assertion by Plaintiffs that certain employees "took Plaintiffs' trade secret to Apple." If you have a specific basis for that assertion, please let us know, but based on Apple's investigation, the nineteen former employees Plaintiffs identified on their list do not have knowledge relevant to the issues in this case.

Exhibit X
-155-

**Marcelo Lamego and David Nazzaro**:

Your email on Monday (February 15) states that Plaintiffs are "surprised that [Apple is] just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro."  We are not sure why Plaintiffs would be surprised by this—both employees left Apple in 2014, years before Plaintiffs filed their Complaint in this case.  Do Plaintiffs' contend that Apple had some obligation to retain either individuals' documents when they left Apple?  If so, what is your basis for such a contention?

I have addressed your specific questions below:

- Your request that Apple "conduct a company-wide search of 'Lamego' and 'Navarro' and preserve all resulting emails" is unreasonable and overburdensome.  As you know, Apple employs approximately 150,000 employees worldwide.  Apple does not have the ability to run a search across all employees' emails—to accomplish Plaintiffs' requested search, Apple would have to pull the emails for every single employee and run a separate search on the email for each employee separately.  Such a request would be exceedingly costly and time-consuming, and is certainly not proportional to the needs of this case.
- Apple does not have any electronic devices used by Lamego or Navarro, or any images of such devices.  Nor does Apple have files from their computers, text messages, or chat messages other than those that exist is other custodians' files or in non-custodial databases.   Apple has preserved, and is collecting and reviewing, any remaining relevant files that exist.  Indeed, Apple has already begun producing such documents and will continue to do so on a rolling basis, to the extent additional documents are identified.
- Mr. Lamego and Navarro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, in accordance with Apple's procedures for departing employees.   Apple will produce a copy of its document retention and destruction policies and practices.
- With respect to your final question ("Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?"), Apple rejects the implication that Apple somehow acted improperly by "destroy[ing]" any information.  In any event, please let us know which individuals you are referring to.  As a general matter, we are unaware of the removal of the files of any other individuals with knowledge relevant to the issues in this case.

Thanks, and best regards,
Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, February 15, 2021 1:40 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

Exhibit X
-156-

We are surprised that you are just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro.  We request that Apple conduct a company-wide search of "Lamego" and "Navarro" and preserve all resulting emails.  We presume you have done so already, but please confirm that Apple has preserved any remaining files, electronic devices (e.g., computers, phones, storage devices) used by Lamego or Navarro, or any images of such devices.  Please also confirm that Apple will preserve emails, files, and devices for any other individuals that leave the company and are related to this dispute, including all individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area.  Please also provide a copy of Apple's document retention and destruction policies and practices, pursuant to Plaintiffs' RFP No. 107.

We would also like to understand the scope of what has been deleted and whether the deleted files can be recovered.  To that end, please answer the following questions:

1. Does Apple have any other files for Lamego or Navarro, such as files from their computers, text messages, or chat messages?
2. Does Apple have electronic devices used by Lamego or Navarro that are in Apple's custody or control, such as computers, phones, USB storage devices, or cloud storage, or any images of such devices?
3. When did Apple last have custody of Lamego's and Navarro's emails and any files or devices that were destroyed?  Why did Apple destroy them?
4. Does Apple have any form of archive or backup that might contain emails, files, or devices used by Lamego or Navarro?  What did Apple do to confirm the destruction of any of Lamego's and Navarro's emails, files, or devices that were destroyed?
5. Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 Direct

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, February 12, 2021 4:57 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam—

Pursuant to our meet and confer earlier this week, and our follow up correspondence, I am writing with the additional information the parties agreed to exchange.

Below is an identification of the knowledge that each of Apple's proposed ESI custodians has that is relevant to the core issues or subjects in this case:

- Mike O'Reilly:  Mr. O'Reilly is the subject of Plaintiffs' allegations related to alleged trade secret misappropriation.

- Steve Hotelling:  Mr. Hotelling was Marcelo Lamego's supervisor during the six months Mr. Lamego was employed by Apple.  Mr. Hotelling is also knowledgeable about the operation and development of the

Exhibit X
-157-

Apple Watch. Mr. Hotelling is also a named inventor on one of the Apple Disputed Patents and the Apple Disputed Application.

- Brian Land: Mr. Land is knowledgeable about the operation and development of the Apple Watch hardware.

- Steve Waydo: Mr. Waydo is knowledgeable about the operation and development of the Apple Watch software.

- Wolf Oetting: Mr. Oetting is a named inventor on two of the Apple Disputed Patents.

- Trevor Ness: Mr. Ness is a named inventor on two of the Apple Disputed Patents.

- Chinsan Han: Mr. Han is a named inventor on two of the Apple Disputed Patents.

- Naoto Matsuyuki: Mr. Matsuyuki is a named inventor on two of the Apple Disputed Patents.

During the parties' meet and confer, Plaintiffs identified additional individuals that they believe should have been identified by Apple as potential ESI custodians. Specifically, Plaintiffs identified Marcelo Lamego, David Nazzaro, and "individuals on Apple's initial disclosures." Apple's response to Plaintiffs' request that Apple identify those individuals is set forth below.

- Myra Haggerty: Apple identified Ms. Haggerty on its initial disclosures based on her knowledge relevant to Plaintiffs' infringement allegations. In the interest of moving the case forward, Apple is willing to add Ms. Haggerty to its list of ESI custodians. She has knowledge about the operation and development of the Apple Watch.

- Deirdre Caldbeck: Apple identified Ms. Calbeck because she has knowledge relevant to "marketing relating to the Apple Watch Series 4 and Series 5." In the interest of moving the case forward, Apple is willing to add Ms. Calbeck to its list of ESI custodians at this time. She has knowledge about the marketing of the Apple Watch.

- Mark Rollins: Mr. Rollins was identified on Apple's initial disclosures as having knowledge of Apple's financial information related to the Apple Watch. Mr. Rollins is a corporate witness that would testify regarding non-custodial financial information pulled from Apple's financial databases; he is not an individual that is likely to have ESI relevant to the issues in this case.

- Marcelo Lamego and David Nazzaro: As we noted in our prior correspondence, Messrs. Lamego and Nazzaro are no longer Apple employees and have not been Apple employees since 2014. Apple no longer has either individual's email files. To the extent Apple has relevant documents from either individual in non-custodial databases or the files of other custodians, Apple will produce such documents (and in fact has already begun producing such documents).

Finally, Apple is adding Afshad Mistri to its list of ESI custodians. Mr. Mistri has knowledge about marketing of the Apple Watch and Apple's interactions with hospitals.

Please note that given the position that Plaintiffs have taken with respect to broad swaths of publicly available information—including photographs of Apple's products and public patents—we are not currently able to share critical information about Plaintiffs' allegations with Apple. Accordingly, we are making these decisions without the benefit of information we might otherwise have if Plaintiffs were not designating public information as AEO.

Of course, Apple's investigation into the issues and allegations in this case is ongoing, and Apple reserves the right to identify additional ESI custodians as its investigation proceeds. Additionally, Apple reserves the right to request ESI from individuals that do not appear on Plaintiffs' initial list as discovery progresses in this case.

Best regards,
Brian

Exhibit X
-158-

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Thursday, February 11, 2021 9:30 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We don't understand how you can continue to claim that Apple's list is "facially deficient" yet continue to refuse to provide the basis for that claim.  I asked you multiple times during our call for your basis, and your response was that "it's not Plaintiffs' job to tell Apple who to put on their list."  Clearly, there are people that Plaintiffs believe should be on Apple's list and it is unclear why you won't tell us who those people are.

Apple performed a reasonable investigation and identified the people that are knowledgeable about the issues in this case.  If you believe there are people missing from that list, please let us know who you believe is missing.  As you know, during the meet and confer, after I asked you for this information many times, you did mention Messrs. Lamego and Nazzaro as well as "other people on Apple's initial disclosures."  I promised that we would investigate and get back to you regarding those names, and we will do so tomorrow.

I also asked you if you expected Apple to identify every person that ever worked on the Apple Watch; you confirmed that Plaintiffs do not expect Apple to identify every person that worked on the Watch.

Finally, I asked you if you expected Apple to identify every Apple current or former employee that was previously employed by Plaintiffs, regardless of what work they did for Plaintiffs or Apple, which is how Plaintiffs apparently came up with the majority of their forty-six custodians.  While you did not give me a straight answer one way or another, I told you that Apple does not believe that the fact that an employee was previously employed by Plaintiffs is a sufficient basis to believe those employees have knowledge about the issues in this case.  If you disagree, please let us know the basis for your disagreement.

I reiterate our request for Plaintiffs' basis for their allegation that Apple's list is deficient.  If you can't provide us with that information, it is unclear to Apple how Apple can try to resolve Plaintiffs' concerns, since we don't know what Plaintiffs' concerns are.

Thanks,
Brian

**Brian Andrea**

## GIBSON DUNN

Exhibit X
-159-

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, February 10, 2021 11:27 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We disagree with your characterization of virtually everything that you claim occurred during the meet and confer.  Your email again shows why we have suggested that the parties should record meet and confers.

We will reiterate our position.  During the meet and confer, Plaintiffs explained the basis for our assertion that Apple's list is deficient.  In particular, we explained that Apple's list excluded at least the custodians that Plaintiffs had already identified to Apple in its prior joint stipulation and in email correspondence.  We explained that it was not reasonable for Apple to demand that we identify all *other* missing individuals in Apple's list.  While we know Apple's list excluded relevant custodians, we have no way of knowing the universe of custodians that Apple has never disclosed to us.  We explained that we believe the ESI Order puts that obligation on Apple—not Plaintiffs.  This is because only Apple can perform that investigation.  Indeed, that is why we conducted a reasonable investigation on our side and identified 46 potential ESI custodians.

We also told you at the very beginning of the call that we have no problem explaining the relevance of each custodian on our list.  However, we explained that does not resolve our dispute because Apple's list is facially deficient.  Even if Apple explains that its eight custodians are relevant, that does not show that *other* individuals are irrelevant.  Thus, while we will provide the requested information at 5pm pacific on Friday, the exchange will not resolve this dispute.

It is inappropriate for Apple to supplement its list only when Plaintiffs can identify someone who is missing.  We maintain the ESI Order requires Apple to identify the reasonable universe of potential custodians.  We believe the parties are at an impasse because Apple has steadfastly refused to provide such a list.  Therefore, we have a fundamental disagreement as to Apple's obligation under the ESI Order.  That disagreement has not changed.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, February 10, 2021 3:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam—

Exhibit X
-160-

I write to memorialize the parties' discussion in this afternoon's meet and confer regarding the identification of ESI custodians.

Plaintiffs took the position that Apple's list of ESI custodians was deficient, but refused to provide a basis for that position. Apple made clear that it conducted a reasonable investigation and identified those individuals knowledgeable about the core issues in this case, as required by the ESI Order, and thus it did not understand how Plaintiffs can possibly claim that Apple's list is deficient. *See* Dkt. 51. Apple noted that it seemed that Plaintiffs have individuals in mind that they believe Apple should identify, but Plaintiffs refused to identify those individuals. Instead, Plaintiffs took the position that they were not obligated to provide that information to Apple. Apple disagreed, noting that the meet and confer process is intended to facilitate an exchange of information between the parties so that the parties can come to ground or at least narrow their disputes, and asked multiple times that Plaintiffs provide the basis for their argument that Apple's list is deficient.

Eventually, after multiple requests, Plaintiffs identified two former Apple employees, Marcelo Lamego and David Nazzaro, as well as "individuals identified in Apple's Initial Disclosures." Apple agreed to consider whether those individuals should be on its list of ESI custodians and indicated that it would get back to Plaintiffs with a response.

Plaintiffs also took the position that the parties are at an "impasse." Apple disagreed, noting that it was willing to investigate the issues Plaintiffs raised (as discussed above) and also suggesting that the parties exchange further information that would allow each party to assess the sufficiency of each others' list. Indeed, Apple noted that it has no idea what the relevance is to this case of the vast majority of the forty-six (46) individuals Plaintiffs identified. Apple suggested that each party should exchange information about the knowledge that each identified individual has, and after that exchange occurs, the parties should have another call to discuss the sufficiency of each others' lists. Plaintiffs eventually agreed to exchange this information, and asked that Apple suggest a time for the exchange. Apple suggests the parties exchange descriptions of the relevant knowledge their respective proposed ESI custodians possess at 5:00 p.m. PST on Friday, February 12, 2021. Please let us know if Plaintiffs agree.

Best,
Brian



**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit X
-161-

# Exhibit Y

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| Plaintiff, | Case No.:  00cv0000 |
|        Plaintiff, | |
| | **MODEL ORDER** |
| v. | **GOVERNING DISCOVERY OF** |
| | **ELECTRONICALLY STORED** |
| Defendant, | **INFORMATION IN PATENT CASES** |
|        Defendant. | |

The Court ORDERS as follows:

    1.    This Order supplements all other discovery rules and orders.  It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

    2.    This Order may be modified for good cause.  If the parties cannot resolve their disagreements regarding modifications, the parties may submit their competing proposals and a summary of their dispute.  Proposed modifications or disputes regarding ESI that counsel for the parties are unable to resolve will be presented to the Court at the initial case management conference, Fed. R. Civ. P. Rule 16(b) Scheduling Conference, or as soon as possible thereafter.

    3.    Costs will be shifted for disproportionate ESI production requests pursuant

to Federal Rule of Civil Procedure 26.  Likewise, a party's nonresponsive or dilatory discovery tactics will be cost-shifting considerations.

4.     A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5.     General ESI production requests under Federal Rules of Civil Procedure 34 and 45 must not include metadata absent a showing of good cause.  However, fields showing the date and time that the document was sent and received, as well as the complete distribution list, must generally be included in the production.

6.     Each requesting party will limit its ESI production requests to a total of ten custodians per producing party for all such requests, excluding requests for email which are addressed in paragraphs 8-12.  A custodian may be identified by job description or function so long as it identifies a single person.  The parties may jointly agree to modify this limit without the Court's leave.  The Court will consider contested requests for additional custodians per producing party, or requests for searches of servers, databases or other systems not maintained by a single person, upon showing of good cause and distinct need based on the size, complexity, and issues of this specific case.  Should a party serve ESI production requests for additional custodians beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party may bear all reasonable costs caused by such additional discovery.  While there is no *per se* limit on quantity of search terms for the identified custodians for non-email ESI, a party may not request more than twenty search terms absent consent or Order of the Court granted for good cause shown.  Parties must meet and confer to limit ESI custodians and search terms prior to approaching the Court for assistance on any ESI matters.  Each party must use a common set of search terms for all custodians of another party from whom it seeks ESI.

7.     General ESI production requests under Federal Rules of Civil Procedure 34 and 45 must not include email or other forms of electronic correspondence (collectively "email").  To obtain email parties must propound specific email production requests.

8.    Email production requests will only be propounded for specific issues, rather than general discovery of a product or business.

9.    Email production requests must be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances.  While this provision does not require the production of such information, the Court-encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

10.    Email production requests will identify the custodian, search terms, and time frame.  Tue parties will cooperate to identify the proper custodians, proper search terms and proper time frames.

11.    Each requesting party must limit its email production requests to a total of five custodians per producing party for all such requests.  Tue parties may jointly agree to modify this limit without the Court's leave.  The Court will consider contested requests for additional custodians per producing party, upon showing of good cause and distinct need based on the size, complexity, and issues of this specific case.  Should a party serve email production requests for additional custodians beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party may bear all reasonable costs caused by such additional discovery.

12.    Each requesting party will limit its email production requests to a total of five search terms per custodian per party.  The parties may jointly agree to modify this limit without the Court's leave.  Tue Court will consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case.  The search terms must be narrowly tailored to particular issues.  Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.  A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and will count as a single search

term.  A disjunctive combination of multiple words or phrases (e.g., "computer" or

"system") broadens the search, and thus each word or phrase will count as a separate

search term unless they are variants of the same word.  Use of narrowing search criteria

(e.g., "and," "but not," "w/x") is encouraged to limit the production and must be

considered when determining whether to shift costs for disproportionate discovery.

Should a party serve email production requests with search terms beyond the limits

agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting

party may bear all reasonable costs caused by such additional discovery.

13.    The receiving party must not use ESI that the producing party asserts is

attorney-client privileged or work product protected to challenge the privilege or

protection.

14.    Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a

privileged or work product protected ESI is not a waiver in the pending case or in any

other federal or state proceeding.

15.    The mere production of ESI in a litigation as part of a mass production will

not itself constitute a waiver for any purpose.

IT IS SO ORDERED this _____ day of _____, _____.


_____

United States Magistrate Judge

Exhibit Y
-166-
00cv0000

# Exhibit Z

1
2
3
4
5       **UNITED STATES DISTRICT COURT**
6       **NORTHERN DISTRICT OF CALIFORNIA**

7                                          )   Case Number: C xx-xxxx
8                                          )
                                           )   [MODEL] STIPULATION & ORDER RE:
9              Plaintiff(s),               )   DISCOVERY OF ELECTRONICALLY
                                           )   STORED INFORMATION FOR PATENT
10       vs.                               )   LITIGATION
                                           )
11                                         )
                                           )
12             Defendant(s).               )
13  _____)

14   Upon the stipulation of the parties, the Court ORDERS as follows:

15          1. This Order supplements all other discovery rules and orders. It streamlines

16   Electronically Stored Information ("ESI") production to promote a "just, speedy, and

17   inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

18          2. This Order may be modified in the Court's discretion or by stipulation. The parties

19   shall jointly submit any proposed modifications within 30 days after the Federal Rule of Civil

20   Procedure 16 Conference.

21          3. As in all cases, costs may be shifted for disproportionate ESI production requests

22   pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory

23   discovery tactics are cost-shifting considerations.

24          4. A party's meaningful compliance with this Order and efforts to promote efficiency and

25   reduce costs will be considered in cost-shifting determinations.

26          5. The parties are expected to comply with the District's E-Discovery Guidelines

27   ("Guidelines") and are encouraged to employ the District's Model Stipulated Order Re: the

28   Discovery of Electronically Stored Information and Checklist for Rule 26(f) Meet and Confer

regarding Electronically Stored Information.

6. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests.

7. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

8. Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

9. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe as set forth in the Guidelines.

10. Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

11. Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search

and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

12. Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery. Such topics should be discussed pursuant to the District's E-Discovery Guidelines.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: _____    _____

Counsel for Plaintiff

Dated: _____    _____

Counsel for Defendant

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: _____    _____

UNITED STATES DISTRICT/MAGISTRATE JUDGE

Exhibit Z
-170-

# Exhibit AA

# AN E-DISCOVERY MODEL ORDER

## INTRODUCTION

Since becoming a staple of American civil litigation, e-discovery has been the subject of extensive review, study, and commentary. *See The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production* (2d ed. June 2007).  In view of the growing concern about e-discovery, the Federal Rules of Civil Procedure were amended in 2006 to more fully address e-discovery.  Likewise, several district courts have adopted local e-discovery rules.[1]

Despite these amendments, e-discovery continues to present a broad spectrum of challenges, such as preservation obligations, production format, and the disproportionate cost of e-discovery.[2]  Patent cases, in particular, tend to suffer from disproportionally high discovery expenses.  *See* Emery G. Lee III & Thomas E. Willging, *Litigation Costs in Civil Cases: Multivariate Analysis* 8 (Fed. Judicial Ctr. 2010) ("Intellectual Property cases had costs almost 62% higher, all else equal, than the baseline 'Other' category."); s*ee also* Thomas E. Willging et al., *Discovery and Disclosure Practice, Problems, and Proposals for Change: A Case-*

---

[1]  District Courts in Delaware, Kansas and Maryland have adopted e-discovery local rules.  The Seventh Circuit has adopted an e-discovery pilot program.

[2]  The following are the main cost areas for e-discovery:

**Collection:**  Forensically sound (*e.g.*, preserving the document date) collection can require a trained specialist.  Costs will include vendor fees and/or licensing fees, and media related charges. Inactive data requires restoration and software licensing fees.

**Processing:**  Requires use of licensed assessment or review tools (more than 1 tool are often used for this process).  Expenses will include data and text extraction, de-duplication, imaging fees, project management time and potential hosting fees.  Frequently includes narrowing or broadening the scope of collection based on results.

**Review:**  Requires continued hosting and licensing fees.  Project management time is necessary for database setup and management, additional keyword filtering/assessment and searching.   If human review is involved, this is the largest area of cost.

**Production:**  Requires any additional data and image conversion, text extraction and/or appropriate language OCR generation.  Tech time will include dealing with problematic files (*e.g.*, Excel).  Also requires endorsement and control numbering.  Costs will also be incurred for project management/tech time and media related charges.

**Post Production:**   Project management and load time for importing productions into production review tool or index. Additional costs for associating native files to records.

*Based National Survey of Counsel in Closed Federal Civil Cases* 38-39 (Fed. Judicial Ctr. 1997) (finding that patent cases "stood out for their high discovery expenses").  Such expenses are compounded when attorneys use discovery tools as tactical weapons, which hinders the "just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.

In recent years, the exponential growth of and reliance on electronic documents and communications has exacerbated such discovery abuses. Excessive e-discovery, including disproportionate, overbroad email production requests, carry staggering time and production costs that have a debilitating effect on litigation.  Routine requests seeking all categories of Electronically Stored Information often result in mass productions of marginally relevant and cumulative documents.  Generally, the production burden of these expansive requests outweighs the minimal benefits of such broad disclosure.

Most discovery in patent litigation centers on what the patent states, how the accused products work, what the prior art discloses, and the proper calculation of damages.  These topics are normally the most consequential in patent cases. Thus, far reaching e-discovery, such as mass email searches, is often tangential to adjudicating these issues.

As technology and knowledge play an increasingly important role in our economy, the courts must not become an intolerably expensive way to resolve patent disputes.  Specifically, litigation costs should not be permitted to unduly interfere with the availability of the court to those who seek to vindicate their patent rights—the enforcement of such rights is both an obligation of the legal system and important to innovation.  Likewise, disproportionate expense should not be permitted to force those accused of infringement to acquiesce to non-meritorious claims.  This only serves as an unhealthy tax on legitimate commerce.

Fortunately, district courts have inherent power to control their dockets to further "economy of time and effort for itself, for counsel and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).  Our objective is thus narrow, but important.  The accompanying Model Order Limiting E-Discovery in Patent Cases is intended to be a helpful starting point for district courts to use in requiring the responsible, targeted use of e-discovery in patent cases.  The goal of this Model Order is to promote economic and judicial efficiency by streamlining e-discovery, particularly email production, and requiring litigants to focus on the proper purpose of discovery—the gathering of material information—rather than permitting unlimited fishing expeditions.  It is further intended to encourage

<div align="center">2</div>

discussion and public commentary by judges, litigants, and other interested parties regarding e-discovery problems and potential solutions.

## DISCUSSION OF THE MODEL ORDER

Hard-worn experience in patent cases and recent commentary teach that efforts to identify comprehensively the discovery issues or to produce all "relevant" documents at once at the outset of the case can result in the vastly overbroad production of e-discovery. Indeed, the practice of gathering huge amounts of information at the front of a case and running broad key searches as the issues emerge has come under increasing question. The recently published *Judges' Guide to Cost-Effective E-Discovery* critiqued this practice sharply:

> Some argue that e-discovery is best accomplished by taking large amounts of data from clients and then applying keyword or other searches or filters. While, in some rare cases, this method might be the only option, it is also apt to be the most expensive. In fact, keyword searching against large volumes of data to find relevant information is a challenging, costly, and imperfect process.

Anne Kershaw & Joe Howie, *Judges' Guide to Cost-Effective E-Discovery* 4 (Fed. Judicial Ctr. 2010).

Hence, this Model Order requires a discovery process whereby the parties exchange core documentation concerning the patent, the accused product, the prior art, and the finances before making email production requests. Moreover, email production requests should be focused on a particular issue for which that type of discovery is warranted. Much as Federal Rule of Civil Procedure 30 presumptively limits cases to ten depositions and seven hours per deposition,[3] this Model Order presumptively limits the number of custodians and search terms for all email production requests. However, the parties may jointly agree to modify these limits or request court modification for good cause.

This is not to say a discovering party should be precluded from obtaining more e-discovery than agreed upon by the parties or allowed by the court. Rather, the discovering party shall bear all reasonable costs of discovery that exceeds these

---

[3] Such limits have reformed deposition practice, making it more efficient. *See* Fed. R. Civ. P. 30(a), 1993 Advisory Committee Notes (explaining that Rule 30 limits the number of depositions a party may take in order to "to emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case").

limits.  This will help ensure that discovery requests are being made with a true eye on the balance between the value of the discovery and its cost.

A large source of e-discovery cost is the pre-production review of documents by attorneys or other human reviewers.  Even with clawback provisions, this pre-production review is often undertaken to avoid the disclosure of privileged or other sensitive documents to adversaries.  Accordingly, this Model Order addresses concerns regarding waiver of attorney-client privilege and work product protection in order to minimize human pre-production review.

**E-Discovery Committee**

Chief Judge James Ware (ND Cal)
Judge Virginia Kendall (ND Ill)
Magistrate Judge Chad Everingham (ED Tex)
Chief Judge Randall Rader (Fed. Cir.)
Tina Chappell
Richard "Chip" Lutton
Joe Re
Edward Reines
Steve Susman
John Whealan

Exhibit AA
-175-

Addendum: Discovery Model Order

|                     |   |
|---------------------|---|
| Plaintiff,          |   |
| v.                  | Case No. |
| Defendant.          |   |

**[MODEL] ORDER REGARDING E-DISCOVERY IN PATENT CASES**

The Court ORDERS as follows:

1.      This Order supplements all other discovery rules and orders.   It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2.      This Order may be modified for good cause.   The parties shall jointly submit any proposed modifications within 30 days after the Federal Rule of Civil Procedure 16 conference.   If the parties cannot resolve their disagreements regarding these modifications, the parties shall submit their competing proposals and a summary of their dispute.

3.      Costs will be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26.   Likewise, a party's nonresponsive or dilatory discovery tactics will be cost-shifting considerations.

4.      A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5.      General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include metadata absent a showing of good cause.   However, fields showing the date and time that the document was sent and received, as well as the complete distribution list, shall generally be included in the production.

6.      General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email").   To obtain email parties must propound specific email production requests.

7.      Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

8.      Email production requests shall be phased to occur after the parties have

Exhibit AA
-177-

exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances.   While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

> 9.   Email production requests shall identify the custodian, search terms, and time frame.   The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

> 10.   Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests.   The parties may jointly agree to modify this limit without the Court's leave.   The Court shall consider contested requests for up to five additional custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case.   Should a party serve email production requests for additional custodians beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

> 11.   Each requesting party shall limit its email production requests to a total of five search terms per custodian per party.   The parties may jointly agree to modify this limit without the Court's leave.   The Court shall consider contested requests for up to five additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case.   The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.   A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and

"system") narrows the search and shall count as a single search term.   A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.   Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.   Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

12.   The receiving party shall not use ESI that the producing party asserts is attorney-client privileged or work product protected to challenge the privilege or protection.

13.   Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

14.   The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

Exhibit AA
-179-

# Exhibit AB

**From:** Andrea, Brian
**Sent:** Friday, March 5, 2021 3:17 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

Thanks for your response.  As we have indicated, we would like to move forward with ESI discovery and are willing to have any discussions that will help move the ball forward.  Accordingly, please let us know your availability next Tuesday and Wednesday to have "initial discussions of search terms . . . to determine if the parties can have any meaningful discussions."  While we believe the parties can and should move forward with exchanging search terms for the non-disputed custodians, particularly in view of the Court's Order earlier today, if you would prefer to begin with the "initial discussions" you suggest, we are willing to do so.

Before we have a call, however, we request that you clarify your statement that "the parties do not currently agree on any custodians."  This statement is confusing because Plaintiffs have never indicated that they oppose collection of ESI from the eleven ESI custodians Apple has identified, and the only custodians on Plaintiffs' list that Apple has disputed are the "former employees" (Apple is still waiting for Plaintiffs' response to our email earlier this week regarding that dispute).  Accordingly, it is Apple's understanding that the parties do not dispute, and thus "agree" on, the custodians Apple identified and the custodians Plaintiffs identified other than the former employees, and we don't see any reason that the parties can't move forward with exchanging search terms for those custodians.  If you disagree, please let us know the basis for that disagreement so that we can be prepared to discuss on our call.

To be clear, we understand that Plaintiffs seek "more" custodians from Apple, but we don't see how that has any bearing on the custodians the parties have already identified (other than the former employee dispute, as discussed above).  Indeed, now that the Court has denied Plaintiffs' joint stipulation, do Plaintiffs intend to request that Apple search the files of all eleven custodians Apple has already identified, or do they intend to dispute the relevance of those custodians and/or select only a sub-set of those custodians for ESI discovery?  Similarly, do Plaintiffs intend to oppose performing searches of the custodians they have identified as having knowledge relevant to the issues in this case?

Moreover, Apple reiterates the point that it has been making since the parties first began discussing ESI custodians:  after the parties exchange ESI for the custodians already identified, if there is a basis to request discovery from additional custodians, each party may make such a request.  Such an "iterative" process, as the Court's Order refers to it, is quite common for ESI exchanges.  *See, e.g.*, Dkt. 315 at 30-31 (Apple's portion of the joint stipulation).

Thanks,
Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP

Exhibit AB
-181-

1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, March 3, 2021 11:35 AM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We are happy to discuss search terms in general, but cannot discuss search terms for custodians "on which [the parties] agree" because the parties do not currently agree on any custodians.  As we explained in our portion of the joint stipulation, we maintain that Apple's list of potential custodians is incomplete and does not comply with the ESI Order.  Until Apple provides a full and complete list of potential custodians, Plaintiffs cannot make an informed decision as to which custodians should be searched.

As for your request to discuss search terms, we can start that discussion, but we do not believe it can be very meaningful given Apple's failure to provide a list as required by the ESI Order.  For example, whether a particular ESI search term is too broad may depend on the number and identity of custodians.  That is why the ESI order requires that Apple first provide a complete list of custodians.  Thus, we repeat our request that Apple provide such a list.  That being said, we will engage in initial discussions of search terms with you to determine if the parties can have any meaningful discussions.  Perhaps we could begin with search terms that would be applicable to all custodians on each side, or search terms that would be applicable to certain groups (e.g., disputed inventors).  Please note that we will object to any attempt by Apple to use our willingness to engage in these discussions as a basis to argue that Apple should not have to comply with the ESI order and provide a complete list and/or that, because of the parties' discussions, Apple would be prejudiced by later identifying additional individuals whose documents may be searched.

Thanks,
Adam

**Adam Powell**
Partner

858-707-4245 Direct

**Knobbe Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Tuesday, February 23, 2021 5:52 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We have not yet received a response to the email below.  In any event, Apple is eager to move forward with the parties' ESI discussions, and proposes that in the interest of avoiding further delay, the parties move forward with discussing search terms for custodians on which they agree.  We propose that the parties have a discussion this week about the custodians to which they agree from both lists, and select a date next week for the mutual exchange of search terms for those custodians.  Please let us know if Plaintiffs agree, and if so, your availability for a discussion this week about mutually agreeable custodians.

Exhibit AB
-182-

Thanks,
Brian



**Brian Andrea**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Wednesday, February 17, 2021 9:23 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam,

I am responding to your emails sent Friday, February 12 at 3:53pm PT and 5pm PT, and Sunday, February 14 at 3:40pm PT regarding the parties' ongoing discussions regarding ESI custodians.  As an initial matter, you misrepresent the circumstances surrounding Plaintiffs' withdrawal of their joint stipulation.  Plaintiffs' joint stipulation sought to compel Apple to exchange proposed lists of ESI custodians instead of discussing limits on custodians before exchanging proposed lists, as Apple proposed.  While Apple maintains that such a discussion would have been helpful (as evidenced at least by Plaintiffs' complaints about Apple's list of proposed custodians based on the number of custodians identified), Apple did not see the point in burdening the Court with that dispute.   Accordingly, Apple agreed to exchange lists but did not, as your email implies, agree that it would identify any specific individuals.   Your insinuation that Apple agreed to anything else is plainly incorrect.

**<u>Plaintiffs' list of ESI custodians</u>:**

While we appreciate your willingness to allow us to share the list with Apple's in-house counsel, we maintain that Plaintiffs' designation of their list as attorneys' eyes only is wholly improper.  There is nothing in Plaintiffs' list that reveals any confidential information.

Additionally, Plaintiffs' "areas of knowledge" for many of Plaintiffs' listed ESI custodians is unhelpful.  Specifically, Plaintiffs' list includes eighteen (18) former employees of theirs that were later employed by Apple—excluding Lamego and O'Reilly—and for each of those individuals, Plaintiffs cite the "areas of knowledge" as "former employee later employed by Apple; Acquisition, use, and disclosure of Plaintiffs' confidential information."  This description provides no information as to what specific relevant knowledge those individuals have other than the fact that they were previously employed by Plaintiffs and were later employed by Apple.  Please identify what specific knowledge of the "acquisition, use, and disclosure of Plaintiffs' confidential information" each identified custodian has that is relevant to this case.   We also note that Plaintiffs did not provide an "area of knowledge" for Tony Alan, despite listing Tony Alan on Plaintiffs' initial list of ESI custodians.  Please confirm that Plaintiffs are dropping Mr. Alan as a proposed ESI custodian; if Plaintiffs intend to keep Mr. Alan on the list, please also identify the specific knowledge that Mr. Alan has that is relevant to this case.

**<u>Apple's list of ESI custodians</u>:**

3

Exhibit AB
-183-

Plaintiffs still have not provided a response to Apple's request for the basis for their assertion that Apple's list is deficient.  As discussed below, we have addressed the specific individuals you have indicated you believe are missing, and we have even added custodians to Apple's list in an attempt to move this process forward.  Nonetheless, Plaintiffs continue to assert that Apple is "exclud[ing] individuals Apple knew had relevant information," but also continue to refuse to identify the individuals that you contend are missing.  Apple is confused by Plaintiffs' position; Plaintiffs refused to discuss reasonable limits on ESI custodians with Apple previously, arguing that the ESI Order does not require a specific number of individuals, yet Plaintiffs now appear to be complaining about Apple's ESI list based solely on the number of ESI custodians Apple identified.

One of the reasons Apple insisted on exchanging information about the knowledge each proposed custodian has that is relevant to this case is so that the parties can assess whether each others' lists are sufficient and whether there are additional custodians with specific areas of knowledge they believe should be listed on the other party's list.  As we have stated several times, and as discussed below, Apple has identified the proposed ESI custodians that have knowledge relevant to this case.  If there are additional custodians (or custodians with specific areas of knowledge relevant to the case) that Plaintiffs believe should be identified (either now, or as discovery progresses), please let us know and we would be happy to investigate.

With respect to the categories of Apple employees you listed in your email dated February 12, Apple responds below:

(1) individuals who worked with Lamego:  as an initial matter, Mr. Lamego was at Apple for only 6 months.  Apple has identified every inventor listed with Mr. Lamego on each of the Disputed Patents, as well as Mr. Lamego's supervisor.  It is Plaintiffs' position that Apple should identify every single person that Lamego interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

(2) individuals who worked with O'Reilly:  Apple identified Mr. O'Reilly along with Mr. Mistri, who has worked with Mr. O'Reilly.  Is it Plaintiffs' position that Apple should identify every single person that O'Reilly has interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

(3) individuals who were involved in the accused aspects of the Apple Watch:  Apple has identified Mr. Hotelling, Ms. Haggerty, Mr. Land, and Mr. Waydo, all of whom have knowledge of the "accused aspects of the Apple Watch."  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to, particularly in view of your prior representation that you are not requesting that Apple identify every person that has worked on the Apple Watch.

(4) individuals who were involved in the accused business and marketing strategies:  Apple has identified Mr. O'Reilly, Ms. Caldbeck, and Mr. Mistri, all of whom have knowledge about the "accused business and marketing strategies."

(5) individuals who were involved in the patent applications at issue but not listed as an inventor:  we have listed every inventor listed with Mr. Lamego on each of the Disputed Patents.  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to.

Furthermore, Plaintiffs are now alleging that Plaintiffs' former employees later employed by Apple should be on Apple's list of ESI custodians, without providing any basis for such a position.  The fact that an employee was previously employed by Plaintiffs is not a sufficient basis to allege those employees have knowledge about the issues in this case, and Plaintiffs have provided no basis for their assertion that the former employees "took Plaintiffs' trade secret to Apple."  The collection of ESI is burdensome, time consuming, and costly, and Apple is not going to agree to identify custodians simply based on an unfound conclusory assertion by Plaintiffs that certain employees "took Plaintiffs' trade secret to Apple."  If you have a specific basis for that assertion, please let us know, but based on Apple's investigation, the nineteen former employees Plaintiffs identified on their list do not have knowledge relevant to the issues in this case.

Exhibit AB
-184-

**Marcelo Lamego and David Nazzaro**:

Your email on Monday (February 15) states that Plaintiffs are "surprised that [Apple is] just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro." We are not sure why Plaintiffs would be surprised by this—both employees left Apple in 2014, years before Plaintiffs filed their Complaint in this case. Do Plaintiffs' contend that Apple had some obligation to retain either individuals' documents when they left Apple? If so, what is your basis for such a contention?

I have addressed your specific questions below:

- Your request that Apple "conduct a company-wide search of 'Lamego' and 'Navarro' and preserve all resulting emails" is unreasonable and overburdensome. As you know, Apple employs approximately 150,000 employees worldwide. Apple does not have the ability to run a search across all employees' emails—to accomplish Plaintiffs' requested search, Apple would have to pull the emails for every single employee and run a separate search on the email for each employee separately. Such a request would be exceedingly costly and time-consuming, and is certainly not proportional to the needs of this case.
- Apple does not have any electronic devices used by Lamego or Navarro, or any images of such devices. Nor does Apple have files from their computers, text messages, or chat messages other than those that exist is other custodians' files or in non-custodial databases. Apple has preserved, and is collecting and reviewing, any remaining relevant files that exist. Indeed, Apple has already begun producing such documents and will continue to do so on a rolling basis, to the extent additional documents are identified.
- Mr. Lamego and Navarro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, in accordance with Apple's procedures for departing employees. Apple will produce a copy of its document retention and destruction policies and practices.
- With respect to your final question ("Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?"), Apple rejects the implication that Apple somehow acted improperly by "destroy[ing]" any information. In any event, please let us know which individuals you are referring to. As a general matter, we are unaware of the removal of the files of any other individuals with knowledge relevant to the issues in this case.

Thanks, and best regards,
Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, February 15, 2021 1:40 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]

Exhibit AB
-185-

Brian,

We are surprised that you are just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro.  We request that Apple conduct a company-wide search of "Lamego" and "Navarro" and preserve all resulting emails.  We presume you have done so already, but please confirm that Apple has preserved any remaining files, electronic devices (e.g., computers, phones, storage devices) used by Lamego or Navarro, or any images of such devices.  Please also confirm that Apple will preserve emails, files, and devices for any other individuals that leave the company and are related to this dispute, including all individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area.  Please also provide a copy of Apple's document retention and destruction policies and practices, pursuant to Plaintiffs' RFP No. 107.

We would also like to understand the scope of what has been deleted and whether the deleted files can be recovered.  To that end, please answer the following questions:

1. Does Apple have any other files for Lamego or Navarro, such as files from their computers, text messages, or chat messages?
2. Does Apple have electronic devices used by Lamego or Navarro that are in Apple's custody or control, such as computers, phones, USB storage devices, or cloud storage, or any images of such devices?
3. When did Apple last have custody of Lamego's and Navarro's emails and any files or devices that were destroyed?  Why did Apple destroy them?
4. Does Apple have any form of archive or backup that might contain emails, files, or devices used by Lamego or Navarro?  What did Apple do to confirm the destruction of any of Lamego's and Navarro's emails, files, or devices that were destroyed?
5. Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, February 12, 2021 4:57 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam—

Pursuant to our meet and confer earlier this week, and our follow up correspondence, I am writing with the additional information the parties agreed to exchange.

Below is an identification of the knowledge that each of Apple's proposed ESI custodians has that is relevant to the core issues or subjects in this case:

- Mike O'Reilly:  Mr. O'Reilly is the subject of Plaintiffs' allegations related to alleged trade secret misappropriation.

- Steve Hotelling:  Mr. Hotelling was Marcelo Lamego's supervisor during the six months Mr. Lamego was employed by Apple.  Mr. Hotelling is also knowledgeable about the operation and development of the

Exhibit AB
-186-

Apple Watch.  Mr. Hotelling is also a named inventor on one of the Apple Disputed Patents and the Apple Disputed Application.

- Brian Land:  Mr. Land is knowledgeable about the operation and development of the Apple Watch hardware.

- Steve Waydo:  Mr. Waydo is knowledgeable about the operation and development of the Apple Watch software.

- Wolf Oetting:  Mr. Oetting is a named inventor on two of the Apple Disputed Patents.

- Trevor Ness:  Mr. Ness is a named inventor on two of the Apple Disputed Patents.

- Chinsan Han:  Mr. Han is a named inventor on two of the Apple Disputed Patents.

- Naoto Matsuyuki:  Mr. Matsuyuki is a named inventor on two of the Apple Disputed Patents.

During the parties' meet and confer, Plaintiffs identified additional individuals that they believe should have been identified by Apple as potential ESI custodians.  Specifically, Plaintiffs identified Marcelo Lamego, David Nazzaro, and "individuals on Apple's initial disclosures."  Apple's response to Plaintiffs' request that Apple identify those individuals is set forth below.

- Myra Haggerty:  Apple identified Ms. Haggerty on its initial disclosures based on her knowledge relevant to Plaintiffs' infringement allegations.  In the interest of moving the case forward, Apple is willing to add Ms. Haggerty to its list of ESI custodians.  She has knowledge about the operation and development of the Apple Watch.

- Deirdre Caldbeck:   Apple identified Ms. Calbeck because she has knowledge relevant to "marketing relating to the Apple Watch Series 4 and Series 5." In the interest of moving the case forward, Apple is willing to add Ms. Calbeck to its list of ESI custodians at this time.  She has knowledge about the marketing of the Apple Watch.

- Mark Rollins:  Mr. Rollins was identified on Apple's initial disclosures as having knowledge of Apple's financial information related to the Apple Watch.  Mr. Rollins is a corporate witness that would testify regarding non-custodial financial information pulled from Apple's financial databases; he is not an individual that is likely to have ESI relevant to the issues in this case.

- Marcelo Lamego and David Nazzaro:  As we noted in our prior correspondence, Messrs. Lamego and Nazzaro are no longer Apple employees and have not been Apple employees since 2014.  Apple no longer has either individual's email files.  To the extent Apple has relevant documents from either individual in non-custodial databases or the files of other custodians, Apple will produce such documents (and in fact has already begun producing such documents).

Finally, Apple is adding Afshad Mistri to its list of ESI custodians.  Mr. Mistri has knowledge about marketing of the Apple Watch and Apple's interactions with hospitals.

Please note that given the position that Plaintiffs have taken with respect to broad swaths of publicly available information—including photographs of Apple's products and public patents—we are not currently able to share critical information about Plaintiffs' allegations with Apple.  Accordingly, we are making these decisions without the benefit of information we might otherwise have if Plaintiffs were not designating public information as AEO.

Of course, Apple's investigation into the issues and allegations in this case is ongoing, and Apple reserves the right to identify additional ESI custodians as its investigation proceeds.  Additionally, Apple reserves the right to request ESI from individuals that do not appear on Plaintiffs' initial list as discovery progresses in this case.

Best regards,
Brian

Exhibit AB
-187-

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Thursday, February 11, 2021 9:30 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We don't understand how you can continue to claim that Apple's list is "facially deficient" yet continue to refuse to provide the basis for that claim.  I asked you multiple times during our call for your basis, and your response was that "it's not Plaintiffs' job to tell Apple who to put on their list."  Clearly, there are people that Plaintiffs believe should be on Apple's list and it is unclear why you won't tell us who those people are.

Apple performed a reasonable investigation and identified the people that are knowledgeable about the issues in this case.  If you believe there are people missing from that list, please let us know who you believe is missing.  As you know, during the meet and confer, after I asked you for this information many times, you did mention Messrs. Lamego and Nazzaro as well as "other people on Apple's initial disclosures."  I promised that we would investigate and get back to you regarding those names, and we will do so tomorrow.

I also asked you if you expected Apple to identify every person that ever worked on the Apple Watch; you confirmed that Plaintiffs do not expect Apple to identify every person that worked on the Watch.

Finally, I asked you if you expected Apple to identify every Apple current or former employee that was previously employed by Plaintiffs, regardless of what work they did for Plaintiffs or Apple, which is how Plaintiffs apparently came up with the majority of their forty-six custodians.  While you did not give me a straight answer one way or another, I told you that Apple does not believe that the fact that an employee was previously employed by Plaintiffs is a sufficient basis to believe those employees have knowledge about the issues in this case.  If you disagree, please let us know the basis for your disagreement.

I reiterate our request for Plaintiffs' basis for their allegation that Apple's list is deficient.  If you can't provide us with that information, it is unclear to Apple how Apple can try to resolve Plaintiffs' concerns, since we don't know what Plaintiffs' concerns are.

Thanks,
Brian

**Brian Andrea**

## GIBSON DUNN

Exhibit AB
-188-

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, February 10, 2021 11:27 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We disagree with your characterization of virtually everything that you claim occurred during the meet and confer.  Your email again shows why we have suggested that the parties should record meet and confers.

We will reiterate our position.  During the meet and confer, Plaintiffs explained the basis for our assertion that Apple's list is deficient.  In particular, we explained that Apple's list excluded at least the custodians that Plaintiffs had already identified to Apple in its prior joint stipulation and in email correspondence.  We explained that it was not reasonable for Apple to demand that we identify all *other* missing individuals in Apple's list.  While we know Apple's list excluded relevant custodians, we have no way of knowing the universe of custodians that Apple has never disclosed to us.  We explained that we believe the ESI Order puts that obligation on Apple—not Plaintiffs.  This is because only Apple can perform that investigation.  Indeed, that is why we conducted a reasonable investigation on our side and identified 46 potential ESI custodians.

We also told you at the very beginning of the call that we have no problem explaining the relevance of each custodian on our list.  However, we explained that does not resolve our dispute because Apple's list is facially deficient.  Even if Apple explains that its eight custodians are relevant, that does not show that *other* individuals are irrelevant.  Thus, while we will provide the requested information at 5pm pacific on Friday, the exchange will not resolve this dispute.

It is inappropriate for Apple to supplement its list only when Plaintiffs can identify someone who is missing.  We maintain the ESI Order requires Apple to identify the reasonable universe of potential custodians.  We believe the parties are at an impasse because Apple has steadfastly refused to provide such a list.  Therefore, we have a fundamental disagreement as to Apple's obligation under the ESI Order.  That disagreement has not changed.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, February 10, 2021 3:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam—

Exhibit AB
-189-

I write to memorialize the parties' discussion in this afternoon's meet and confer regarding the identification of ESI custodians.

Plaintiffs took the position that Apple's list of ESI custodians was deficient, but refused to provide a basis for that position.  Apple made clear that it conducted a reasonable investigation and identified those individuals knowledgeable about the core issues in this case, as required by the ESI Order, and thus it did not understand how Plaintiffs can possibly claim that Apple's list is deficient.  *See* Dkt. 51.  Apple noted that it seemed that Plaintiffs have individuals in mind that they believe Apple should identify,  but Plaintiffs refused to identify those individuals.  Instead, Plaintiffs took the position that they were not obligated to provide that information to Apple.  Apple disagreed, noting that the meet and confer process is intended to facilitate an exchange of information between the parties so that the parties can come to ground or at least narrow their disputes, and asked multiple times that Plaintiffs provide the basis for their argument that Apple's list is deficient.

Eventually, after multiple requests, Plaintiffs identified two former Apple employees, Marcelo Lamego and David Nazzaro, as well as "individuals identified in Apple's Initial Disclosures."  Apple agreed to consider whether those individuals should be on its list of ESI custodians and indicated that it would get back to Plaintiffs with a response.

Plaintiffs also took the position that the parties are at an "impasse." Apple disagreed, noting that it was willing to investigate the issues Plaintiffs raised (as discussed above) and also suggesting that the parties exchange further information that would allow each party to assess the sufficiency of each others' list.  Indeed, Apple noted that it has no idea what the relevance is to this case of the vast majority of the forty-six (46) individuals Plaintiffs identified.  Apple suggested that each party should exchange information about the knowledge that each identified individual has, and after that exchange occurs, the parties should have another call to discuss the sufficiency of each others' lists.  Plaintiffs eventually agreed to exchange this information, and asked that Apple suggest a time for the exchange.  Apple suggests the parties exchange descriptions of the relevant knowledge their respective proposed ESI custodians possess at 5:00 p.m. PST on Friday, February 12, 2021.  Please let us know if Plaintiffs agree.

Best,
Brian


**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit AB
-190-

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit AB
-191-

# Exhibit AC

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, March 9, 2021 6:40 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

Thank you for your email.  As an initial matter, we do not understand why Apple keeps combining numerous separate issues into a single email.  That makes the parties' correspondence harder to follow by conflating issues and omitting several of Plaintiffs emails to which Apple is responding.  Nevertheless, we respond to each issue below.

**Apple's List of ESI Custodians**

We do not understand Apple's criticism regarding the timing of our prior email.  We confirmed the parties were at an impasse regarding an issue we have been discussing for many months and, shortly thereafter, we sent you our portion of the joint stipulation.  Your response to that email confirmed the parties' impasse.

**Apple's Proposal Regarding Search Terms**

We responded to Apple's proposal on this issue separately.

**Gerry Hammarth**

Mr. Hammarth has some knowledge of Cercacor's business and products in general, but we do not believe he is "knowledgeable about and [was] involved with the core issues or subjects in this case" as required by the ESI Order.   However, Apple is welcome to include Mr. Hammarth on its list of custodians/search terms that it requests Plaintiffs search.

**Former Employees**

Your assertion that we refused to provide additional details about former employees is not correct.  As we have explained, to the extent Apple employed the former employees in relevant areas, our view is they should be part of the *potential* candidates for ESI searching.  We also believe that Apple's communications with these individuals is relevant to several issues concerning Lamego and O'Reilly, including Apple's knowledge that it was obtaining Plaintiffs' confidential information, inducement of former employees to provide confidential information, and willfulness.  That is why we disclosed them to Apple on Plaintiffs' list of potential ESI custodians.

As for whether Apple should have disclosed these individuals on *Apple's* list of potential ESI custodians, Apple has previously asserted some of these individuals were not relevant because they worked on unrelated projects at Apple, like the Apple Airpods.  We may ultimately agree with Apple, but to make that agreement, we would need to know what each former employee did at Apple.  Apple provided some of that information in response to Interrogatory No. 11, but has not disclosed what each individual did at Apple.

Exhibit AC
-193-

**Lamego and Nazzaro's Emails and Files**

As we have explained, we are asking for facts to determine why these files were deleted and whether they can be recovered from another source.  We need to obtain the facts before we can take a position as to what Apple's legal obligations were at the time Lamego and Nazzaro left Apple.  We address each bullet point below:

- Apple appears to be drawing a distinction between "destroying" files and "removing" them from Apple's system.  Can you explain?  What does Apple do when it "removes" files from its system?  Does Apple move or copy the files to some other location or device?  Or does it delete all instances of those files?  If Apple deletes all instances of those files, does it simply delete the files or does it "wipe" or overwrite files?

- What software does Apple use to search emails?  Most software allows for searching multiple custodians at once, so we may be able to offer some suggestions.

- Apple states that it has not exported Lamego or Nazzaro's files for other litigation.  Has Apple done so for any other purpose?

- It sounds like Apple is taking the position that it must have removed Lamego and Nazzaro's emails and files 4-10 weeks after they left because that is Apple's standard procedure.  Has Apple been able to verify that it actually removed Lamego and Nazzaro's emails 4-10 weeks after they left?  We reviewed APL-MAS_75595-99, but the file is illegible.  Please produce a new copy that is legible.

- Apple claims it does not understand what we mean by "a relevant area."  As we have previously explained, Apple itself asserted that some individuals did not work in a relevant area.  For example, Apple asserted that one individual was not relevant because he worked on the Apple Airpods project.  If that person did not also work on something relevant to the case, we would likely agree with that assessment.  Thus, we are asking Apple to identify the individuals that *Apple* believes worked in an area relevant to the case.

   o Apple also asserts that Plaintiffs are contending any individual who worked for both Plaintiffs and Apple worked in a "relevant area."  We have made clear that is not our position.  We have consistently explained that we are not necessarily asking Apple to search all former employees.  A relevant area may include, by way of example and not limitation, physiological monitoring, sensor design, or health-related app development.  Until Apple explains what each individual did at Apple, it is impossible for us to say whether the individual works in a "relevant area."  Apple—not Plaintiffs—have the requisite knowledge.

   o We reserve all rights if Apple chooses to delete any files of any former employees.

**Plaintiffs' Document Retention**

Apple also asks Plaintiffs about their document retention policies.  We do not understand what this has to do with Plaintiffs' questions about Apple's destruction of Lamego and Nazzaro's files.  Regardless, we will search for and produce any document retention and destruction policies and practices.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** Martens

Exhibit AC
-194-

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, March 3, 2021 5:30 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

I'm writing regarding the parties' ongoing discussions regarding ESI custodians, including in response to your emails dated February 24, 2021 at 6:18, 6:46, and 6:49 pm PT.

**Plaintiffs' complaints about Apple's ESI custodian list (your 2/24/21 email sent at 6:18pm PT)**:  Apple does not believe there is anything in your email that requires a response in view of Plaintiffs' joint stipulation served 15 minutes after this email.  As you know, Apple disagrees with Plaintiffs' position and is at a loss as to what more can be done regarding Plaintiffs' complaints about Apple's list of ESI custodians if Plaintiffs are going to continue to assert that the list is deficient without providing a basis for their assertion.  While Apple believes the parties could have resolved this issue through the exchange of information, Plaintiffs decided to file their joint stipulation and Apple will respond to Plaintiffs' arguments in its section of that joint stipulation.

**Apple's proposal that the parties move forward with search terms on undisputed search terms**:  We have not yet heard from you as to whether Plaintiffs are willing to move forward with exchanging search terms on undisputed custodians, as Apple suggested more than a week ago.  While you stated that "Apple's proposal does not resolve the parties' dispute," you also indicated that you would "respond to that proposal separately."  Please let us know whether Plaintiffs agree with Apple's proposal and, if so, your availability for a discussion about mutually agreeable custodians.

**Plaintiffs' failure to identify Gerry Hammarth as an ESI custodian**:  In their response to Apple's Interrogatory No. 1 ("Identify by name and title at least five people at Masimo and at least five people at Cercacor having the most knowledge about or responsibility…."), Plaintiffs identified Gerry Hammarth as an individual who is "knowledgeable about Cercacor's products."  Plaintiffs did not, however, identify Mr. Hammarth as an ESI custodian.  Please explain why Plaintiffs did not list Mr. Hammarth as an ESI custodian.

**Plaintiffs' refusal to provide additional information regarding the "former employees" (your 2/24/21 email sent at 6:46pm PT)**:  Apple does not understand your refusal to provide additional specific descriptions about the relevant knowledge that each of the former employees' of Plaintiffs later employed by Apple holds that warranted Plaintiffs identifying each "former employee" on their list of ESI custodians.  As noted in our prior email, stating only that each individual's knowledge is "former employee later employed by Apple; Acquisition, use, and disclosure of Plaintiffs' confidential information" is completely unhelpful and does nothing to help Apple assess why Plaintiffs believe each person has relevant knowledge and should be identified as an ESI custodian. The fact that the "ESI Order does not require such a description" misses the point; Apple requested the additional information so that it can understand why Plaintiffs believe the former employees have relevant knowledge.  Plaintiffs' refusal to provide additional information does nothing to move the ball forward with respect to this dispute.

Apple reiterates its request for information regarding the relevant knowledge that each "former employee" has that warrants Plaintiffs listing them on their list of ESI custodians.  If Plaintiffs' sole reason for listing the "former employees" is the fact that they were at one point employed by Plaintiffs and were later employed by Apple, then please just tell us that.  If there is an additional reason Plaintiffs listed each "former employee," then tell us that instead.

Your email states that Plaintiffs" remain willing to discuss these former employees, but we need more information from Apple."  While Apple has already stated it is willing to provide information regarding each "former employee," including by providing supplemental responses to Interrogatory No. 11 (which asks Apple to "identify all current or former Apple employees who worked at Masimo and/or Cercaro before being employed by Apple…."), the information Apple is willing to provide in response to discovery requests is separate from this dispute.  Plaintiffs identified each former

Exhibit AC
-195-

employee as an individual knowledgeable about the issues in this case, pursuant to the ESI Order, and Apple requests the basis for those identifications.  Plaintiffs should not require information from Apple to inform Apple why it is they believe each individual has relevant knowledge.

**Plaintiffs' questions regarding Lamego/Nazzaro emails (your 2/24/21 email sent at 6:49pm PT)**:  Your email did not answer our question as to whether or not Plaintiffs contend that Apple had some obligation to retain either Marcelo Lamego and David Nazzarro's documents when they left Apple in 2014.  Please let us know if that is Plaintiffs' contention and, if so, the basis for such a contention.

Your email asked a number of question, which I have listed below, followed by Apple's response:

- *Does Apple have any form or archive or backup that might contain emails, files, or devices used by Lamego or Navarro?  What did Apple do to confirm the destruction of any of Lamego's and Navarro's emails, files, or devices that were destroyed?*

  Apple response:  Apple does not have any form or archive or backup that might contain emails, files, or devices used by Lamego or Nazzarro.  As noted in my prior email, however, Apple has preserved, and is collecting and reviewing, any remaining relevant files that exist.  Indeed, Apple has already begun producing such documents and will continue to do so on a rolling basis, to the extent additional documents are identified.  Mr. Lamego and Nazzarro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, as confirmed by the group that oversees such procedures in accordance with Apple's document retention and destruction policies and practices.

- *Does Apple have the ability to search groups of email accounts at once?  For example, could Apple search emails from individuals who work in physiological monitoring, individuals in Lamego's group, executives, or a custom list of individuals?*

  Apple response:  Apple does not have the ability to search groups of email accounts at one time.  The only way to search an individual's email is by pulling the email from each individual and performing searches.

- *What do you mean by "non-custodial databases"?  Do such databases include emails, files, text messages, chat messages, or devices used by Lamego or Navarro?  Has Apple ever exported Lamego or Navarro's files for other litigation, such that it could search the custodia data exported for the other litigation?*

  Apple response:  Apple means document repositories that are not "assigned" to any specific custodian, and instead are used by multiple individuals to store files or information.  One example of a "non-custodial database" would be a server folder.  Another example would be Apple's financial records.  Those databases do not include emails, text messages, chat messages, or devices used by Lamego or Nazzarro unless for some reason those individuals attached an email or text/chat message to a document in the database.  Apple has not exported either individual's files for other litigation.

- *Your email is unclear as to whether Apple actually removed Lamego and Navarro's files 4-10 weeks after they left Apple or if you are assuming that is the case because that is Apple's standard practice.  Please provide the actual date that Lamego and Navarro's emails and files were removed.  Please also provide a copy of Apple's document retention and destruction policies and practices, or provide bates numbers if those documents have been produced.*

  Apple response:  Apple has already produced its record management policy.  *See* APL-MAS_75595-99.  As stated in my previous email and again above,  Mr. Lamego and Nazzarro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, as confirmed by the group that oversees such procedures in accordance with Apple's document retention and destruction policies and

Exhibit AC
-196-

practices.  Apple does not track the "actual date" that files for departing employees are removed, and thus we cannot provide you with that information.

- *Your email asks which individuals we are referring to when we say "other individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area."  We have been discussing the issue of former employees for quite some time and have repeatedly explained our position.  We identified the former employees that we know of in our ESI custodian list.  We asked Apple to identify the former employees that it knows of and identify the individuals that worked in a relevant area.  Apple has so far declined to do so.  Please provide a list of such individuals and identify if Apple has destroyed the files for any such individuals.  Please confirm Apple will retain the files for any such individuals even if they stop working with Apple while this case is pending.*

  <u>Apple response</u>:  Apple still does not understand what Plaintiffs mean by "a relevant area."  Contrary to your statement, Plaintiffs have not explained what they mean by this statement.  As we have indicated many times, Apple has investigated Plaintiffs' allegations in this case and have identified two "former employees" that appear relevant—Michael O'Reilly and Marcelo Lamego.

  It appears that Plaintiffs' position is that the fact that an individual was previously employed by Plaintiffs and later employed by Apple means they "worked for or with Apple in a relevant area."  Apple disagrees, and thus reiterates its request for Plaintiffs to define what they mean by "relevant area."  To the extent Plaintiffs are able to identify relevant individuals, Apple will investigate the responses to your questions.

Finally, Apple asks that Plaintiffs answer the following questions regarding each individual they have identified as an ESI custodian that is no longer employed by Plaintiffs, including but not limited to both Marcelo Lamego and Michael O'Reilly:

- Did Plaintiffs maintain <u>all</u> of each individuals' documents and emails after he/she left Masimo or Cercacor?

- If Plaintiffs deleted any documents from each individual, please provide the date on which those documents were deleted, what documents were deleted, and whether the documents were deleted in accordance with Plaintiffs' document retention and destruction policies or practices.

- Please confirm that Plaintiffs will provide a copy of their document retention and destruction policies and practices, or provide bates numbers if those documents have been produced.

We look forward to receiving your responses.

Thanks, and best regards,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, February 24, 2021 9:18 PM

Exhibit AC
-197-

**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

Thank you for your emails.  We disagree with your discussion of Plaintiffs' prior joint stipulation, but it does not appear helpful to further debate that issue by email.   We believe the record is clear.

We also disagree with your assertions regarding Apple's list of ESI custodians.  Simply repeating your assertion that Plaintiffs have not provided a basis for their position does not make your characterization of our position correct.   We have been very clear about our position and will repeat it here again.  The dispute is not about Apple adding a particular name that *Plaintiffs* can identify as missing.  The parties dispute Apple's fundamental obligations under the ESI Order.  Plaintiffs believe Apple must identify the potential ESI custodians that fall within the scope as defined by the ESI Order.  Apple apparently disagrees.  That is the parties' dispute, and simply adding individuals that Plaintiffs identify does not alter that underlying dispute.

We appreciate that Apple has now acknowledged the five categories of individuals that we originally identified for Apple on January 22, but Apple's discussion also does not resolve the parties' dispute.  Your email states that Apple has identified some people in four of the categories but does not state that it has identified all potential ESI custodians with knowledge in each category.  Instead, Apple shifts to trying to characterize Plaintiffs position as an extreme, asking if Plaintiffs are demanding that Apple identify "every single person that Lamego [or O'Reilly] interacted with during his time at Apple, regardless of what their knowledge is about the issues int his case."  We have always been clear that is not our position.  My February 12 email, which was not included in the email chain below, explained that "we expected Apple's list to include *relevant* Apple employees from at least the following categories . . . ."  Thus, we have already told you what we expect.  Our position is that Apple—not Plaintiffs—have the requisite knowledge to identify the individuals within those categories that should be included.

Similarly, we have also never asserted that all of Plaintiffs' former employees should be listed on Apple's list of ESI custodians.  Rather, we explained that *Apple* should determine which of those former employees have knowledge falling within the definition of the ESI Order.  Apple has argued that some individuals lack knowledge because they worked on unrelated projects.  But, again, Apple has declined to list the people that worked on relevant projects.

Apple also asserts it is not listing certain individuals because "the collection of ESI is burdensome, time consuming, and costly."  As we have repeatedly explained, we are not necessarily asserting that all individuals on Apple's list would need to be searched.  Rather, we are asking for a list of potential ESI custodians so that the parties can have an informed discussion as to which ESI custodians would ultimately be searched.  Our position remains that this is what is required by the ESI Order, and we have provided a list in accordance.  Apple could easily provide such a list, and then the parties can discuss how to keep the searching itself reasonable.

For all these reasons, the parties do not appear to be making any progress on the fundamental dispute that we identified above.  The parties continue to dispute Apple's obligations under the ESI Order: whether Apple is required to provide the universe of potential ESI custodians fitting the scope defined in the ESI Order.

Your February 17 email also addresses two other issues: (1) Plaintiffs' list of ESI custodians and (2) the destruction of Marcelo Lamego's and David Nazzaro's files.  Those issues do not appear to be relevant to or advance our fundamental dispute discussed above.  Thus, we will respond to those portions of your email separately.

As for your February 23 email, Apple's proposal does not resolve the parties' dispute.  We will also respond to that proposal separately.

Exhibit AC
-198-

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Tuesday, February 23, 2021 5:52 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We have not yet received a response to the email below.  In any event, Apple is eager to move forward with the parties' ESI discussions, and proposes that in the interest of avoiding further delay, the parties move forward with discussing search terms for custodians on which they agree.  We propose that the parties have a discussion this week about the custodians to which they agree from both lists, and select a date next week for the mutual exchange of search terms for those custodians.   Please let us know if Plaintiffs agree, and if so, your availability for a discussion this week about mutually agreeable custodians.

Thanks,
Brian


**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Wednesday, February 17, 2021 9:23 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam,

I am responding to your emails sent Friday, February 12 at 3:53pm PT and 5pm PT, and Sunday, February 14 at 3:40pm PT regarding the parties' ongoing discussions regarding ESI custodians.  As an initial matter, you misrepresent the circumstances surrounding Plaintiffs' withdrawal of their joint stipulation.  Plaintiffs' joint stipulation sought to compel Apple to exchange proposed lists of ESI custodians instead of discussing limits on custodians before exchanging proposed lists, as Apple proposed.  While Apple maintains that such a discussion would have been helpful (as evidenced at least by Plaintiffs' complaints about Apple's list of proposed custodians based on the number of custodians identified), Apple did not see the point in burdening the Court with that dispute.   Accordingly, Apple agreed to exchange

7

Exhibit AC
-199-

lists but did not, as your email implies, agree that it would identify any specific individuals.   Your insinuation that Apple
agreed to anything else is plainly incorrect.

**Plaintiffs' list of ESI custodians**:

While we appreciate your willingness to allow us to share the list with Apple's in-house counsel, we maintain that
Plaintiffs' designation of their list as attorneys' eyes only is wholly improper.  There is nothing in Plaintiffs' list that
reveals any confidential information.

Additionally, Plaintiffs' "areas of knowledge" for many of Plaintiffs' listed ESI custodians is unhelpful.  Specifically,
Plaintiffs' list includes eighteen (18) former employees of theirs that were later employed by Apple—excluding Lamego
and O'Reilly—and for each of those individuals, Plaintiffs cite the "areas of knowledge" as "former employee later
employed by Apple; Acquisition, use, and disclosure of Plaintiffs' confidential information."  This description provides no
information as to what specific relevant knowledge those individuals have other than the fact that they were previously
employed by Plaintiffs and were later employed by Apple.  Please identify what specific knowledge of the "acquisition,
use, and disclosure of Plaintiffs' confidential information" each identified custodian has that is relevant to this
case.   We also note that Plaintiffs did not provide an "area of knowledge" for Tony Alan, despite listing Tony Alan on
Plaintiffs' initial list of ESI custodians.  Please confirm that Plaintiffs are dropping Mr. Alan as a proposed ESI custodian; if
Plaintiffs intend to keep Mr. Alan on the list, please also identify the specific knowledge that Mr. Alan has that is relevant
to this case.

**Apple's list of ESI custodians**:

Plaintiffs still have not provided a response to Apple's request for the basis for their assertion that Apple's list is
deficient.  As discussed below, we have addressed the specific individuals you have indicated you believe are missing,
and we have even added custodians to Apple's list in an attempt to move this process forward.   Nonetheless, Plaintiffs
continue to assert that Apple is "exclud[ing] individuals Apple knew had relevant information," but also continue to
refuse to identify the individuals that you contend are missing.  Apple is confused by Plaintiffs' position; Plaintiffs
refused to discuss reasonable limits on ESI custodians with Apple previously, arguing that the ESI Order does not require
a specific number of individuals, yet Plaintiffs now appear to be complaining about Apple's ESI list based solely on the
number of ESI custodians Apple identified.

One of the reasons Apple insisted on exchanging information about the knowledge each proposed custodian has that is
relevant to this case is so that the parties can assess whether each others' lists are sufficient and whether there are
additional custodians with specific areas of knowledge they believe should be listed on the other party's list.  As we have
stated several times, and as discussed below, Apple has identified the proposed ESI custodians that have knowledge
relevant to this case.  If there are additional custodians (or custodians with specific areas of knowledge relevant to the
case) that Plaintiffs believe should be identified (either now, or as discovery progresses), please let us know and we
would be happy to investigate.

With respect to the categories of Apple employees you listed in your email dated February 12, Apple responds below:

(1) <u>individuals who worked with Lamego</u>:  as an initial matter, Mr. Lamego was at Apple for only 6
months.  Apple has identified every inventor listed with Mr. Lamego on each of the Disputed Patents, as well as
Mr. Lamego's supervisor.  It is Plaintiffs' position that Apple should identify every single person that Lamego
interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

(2) <u>individuals who worked with O'Reilly</u>:  Apple identified Mr. O'Reilly along with Mr. Mistri, who has worked
with Mr. O'Reilly.  Is it Plaintiffs' position that Apple should identify every single person that O'Reilly has
interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

Exhibit AC
-200-

(3) <u>individuals who were involved in the accused aspects of the Apple Watch</u>:  Apple has identified Mr. Hotelling, Ms. Haggerty, Mr. Land, and Mr. Waydo, all of whom have knowledge of the "accused aspects of the Apple Watch."  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to, particularly in view of your prior representation that you are not requesting that Apple identify every person that has worked on the Apple Watch.

(4) <u>individuals who were involved in the accused business and marketing strategies</u>:  Apple has identified Mr. O'Reilly, Ms. Caldbeck, and Mr. Mistri, all of whom have knowledge about the "accused business and marketing strategies."

(5) <u>individuals who were involved in the patent applications at issue but not listed as an inventor</u>:  we have listed every inventor listed with Mr. Lamego on each of the Disputed Patents.  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to.

Furthermore, Plaintiffs are now alleging that Plaintiffs' former employees later employed by Apple should be on Apple's list of ESI custodians, without providing any basis for such a position.  The fact that an employee was previously employed by Plaintiffs is not a sufficient basis to allege those employees have knowledge about the issues in this case, and Plaintiffs have provided no basis for their assertion that the former employees "took Plaintiffs' trade secret to Apple."  The collection of ESI is burdensome, time consuming, and costly, and Apple is not going to agree to identify custodians simply based on an unfound conclusory assertion by Plaintiffs that certain employees "took Plaintiffs' trade secret to Apple."  If you have a specific basis for that assertion, please let us know, but based on Apple's investigation, the nineteen former employees Plaintiffs identified on their list do not have knowledge relevant to the issues in this case.

**Marcelo Lamego and David Nazzaro**:

Your email on Monday (February 15) states that Plaintiffs are "surprised that [Apple is] just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro."  We are not sure why Plaintiffs would be surprised by this—both employees left Apple in 2014, years before Plaintiffs filed their Complaint in this case.  Do Plaintiffs' contend that Apple had some obligation to retain either individuals' documents when they left Apple?  If so, what is your basis for such a contention?

I have addressed your specific questions below:

- Your request that Apple "conduct a company-wide search of 'Lamego' and 'Navarro' and preserve all resulting emails" is unreasonable and overburdensome.  As you know, Apple employs approximately 150,000 employees worldwide.  Apple does not have the ability to run a search across all employees' emails—to accomplish Plaintiffs' requested search, Apple would have to pull the emails for every single employee and run a separate search on the email for each employee separately.  Such a request would be exceedingly costly and time-consuming, and is certainly not proportional to the needs of this case.
- Apple does not have any electronic devices used by Lamego or Navarro, or any images of such devices.  Nor does Apple have files from their computers, text messages, or chat messages other than those that exist is other custodians' files or in non-custodial databases.   Apple has preserved, and is collecting and reviewing, any remaining relevant files that exist.  Indeed, Apple has already begun producing such documents and will continue to do so on a rolling basis, to the extent additional documents are identified.
- Mr. Lamego and Navarro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, in accordance with Apple's procedures for departing employees.   Apple will produce a copy of its document retention and destruction policies and practices.
- With respect to your final question ("Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?"), Apple rejects the implication that Apple somehow acted improperly by "destroy[ing]" any information.  In any event, please let us

Exhibit AC
-201-

know which individuals you are referring to.  As a general matter, we are unaware of the removal of the files of any other individuals with knowledge relevant to the issues in this case.


Thanks, and best regards,
Brian



**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, February 15, 2021 1:40 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We are surprised that you are just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro.  We request that Apple conduct a company-wide search of "Lamego" and "Navarro" and preserve all resulting emails.  We presume you have done so already, but please confirm that Apple has preserved any remaining files, electronic devices (e.g., computers, phones, storage devices) used by Lamego or Navarro, or any images of such devices.  Please also confirm that Apple will preserve emails, files, and devices for any other individuals that leave the company and are related to this dispute, including all individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area.  Please also provide a copy of Apple's document retention and destruction policies and practices, pursuant to Plaintiffs' RFP No. 107.

We would also like to understand the scope of what has been deleted and whether the deleted files can be recovered.  To that end, please answer the following questions:

1.  Does Apple have any other files for Lamego or Navarro, such as files from their computers, text messages, or chat messages?
2.  Does Apple have electronic devices used by Lamego or Navarro that are in Apple's custody or control, such as computers, phones, USB storage devices, or cloud storage, or any images of such devices?
3.  When did Apple last have custody of Lamego's and Navarro's emails and any files or devices that were destroyed?  Why did Apple destroy them?
4.  Does Apple have any form of archive or backup that might contain emails, files, or devices used by Lamego or Navarro?  What did Apple do to confirm the destruction of any of Lamego's and Navarro's emails, files, or devices that were destroyed?
5.  Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?

Best regards,
Adam

Exhibit AC
-202-

**Adam Powell**
Partner

858-707-4245 Direct

**Knobbe** Martens

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, February 12, 2021 4:57 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam—

Pursuant to our meet and confer earlier this week, and our follow up correspondence, I am writing with the additional information the parties agreed to exchange.

Below is an identification of the knowledge that each of Apple's proposed ESI custodians has that is relevant to the core issues or subjects in this case:

- Mike O'Reilly:  Mr. O'Reilly is the subject of Plaintiffs' allegations related to alleged trade secret misappropriation.

- Steve Hotelling:  Mr. Hotelling was Marcelo Lamego's supervisor during the six months Mr. Lamego was employed by Apple.  Mr. Hotelling is also knowledgeable about the operation and development of the Apple Watch.  Mr. Hotelling is also a named inventor on one of the Apple Disputed Patents and the Apple Disputed Application.

- Brian Land:  Mr. Land is knowledgeable about the operation and development of the Apple Watch hardware.

- Steve Waydo:  Mr. Waydo is knowledgeable about the operation and development of the Apple Watch software.

- Wolf Oetting:  Mr. Oetting is a named inventor on two of the Apple Disputed Patents.

- Trevor Ness:  Mr. Ness is a named inventor on two of the Apple Disputed Patents.

- Chinsan Han:  Mr. Han is a named inventor on two of the Apple Disputed Patents.

- Naoto Matsuyuki:  Mr. Matsuyuki is a named inventor on two of the Apple Disputed Patents.

During the parties' meet and confer, Plaintiffs identified additional individuals that they believe should have been identified by Apple as potential ESI custodians.  Specifically, Plaintiffs identified Marcelo Lamego, David Nazzaro, and "individuals on Apple's initial disclosures."  Apple's response to Plaintiffs' request that Apple identify those individuals is set forth below.

- Myra Haggerty:  Apple identified Ms. Haggerty on its initial disclosures based on her knowledge relevant to Plaintiffs' infringement allegations.  In the interest of moving the case forward, Apple is willing to add Ms. Haggerty to its list of ESI custodians.  She has knowledge about the operation and development of the Apple Watch.

- Deirdre Caldbeck:   Apple identified Ms. Calbeck because she has knowledge relevant to "marketing relating to the Apple Watch Series 4 and Series 5." In the interest of moving the case forward, Apple is willing to add Ms. Calbeck to its list of ESI custodians at this time.  She has knowledge about the marketing of the Apple Watch.

- Mark Rollins:  Mr. Rollins was identified on Apple's initial disclosures as having knowledge of Apple's financial information related to the Apple Watch.  Mr. Rollins is a corporate witness that would testify

Exhibit AC
-203-

regarding non-custodial financial information pulled from Apple's financial databases; he is not an individual that is likely to have ESI relevant to the issues in this case.

- <u>Marcelo Lamego</u> and <u>David Nazzaro</u>:  As we noted in our prior correspondence, Messrs. Lamego and Nazzaro are no longer Apple employees and have not been Apple employees since 2014.  Apple no longer has either individual's email files.  To the extent Apple has relevant documents from either individual in non-custodial databases or the files of other custodians, Apple will produce such documents (and in fact has already begun producing such documents).

Finally, Apple is adding <u>Afshad Mistri</u> to its list of ESI custodians.  Mr. Mistri has knowledge about marketing of the Apple Watch and Apple's interactions with hospitals.

Please note that given the position that Plaintiffs have taken with respect to broad swaths of publicly available information—including photographs of Apple's products and public patents—we are not currently able to share critical information about Plaintiffs' allegations with Apple.  Accordingly, we are making these decisions without the benefit of information we might otherwise have if Plaintiffs were not designating public information as AEO.

Of course, Apple's investigation into the issues and allegations in this case is ongoing, and Apple reserves the right to identify additional ESI custodians as its investigation proceeds.  Additionally, Apple reserves the right to request ESI from individuals that do not appear on Plaintiffs' initial list as discovery progresses in this case.

Best regards,
Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Andrea, Brian
**Sent:** Thursday, February 11, 2021 9:30 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We don't understand how you can continue to claim that Apple's list is "facially deficient" yet continue to refuse to provide the basis for that claim.  I asked you multiple times during our call for your basis, and your response was that "it's not Plaintiffs' job to tell Apple who to put on their list."  Clearly, there are people that Plaintiffs believe should be on Apple's list and it is unclear why you won't tell us who those people are.

Apple performed a reasonable investigation and identified the people that are knowledgeable about the issues in this case.  If you believe there are people missing from that list, please let us know who you believe is missing.  As you know, during the meet and confer, after I asked you for this information many times, you did mention Messrs. Lamego and Nazzaro as well as "other people on Apple's initial disclosures."  I promised that we would investigate and get back to you regarding those names, and we will do so tomorrow.

12

Exhibit AC
-204-

I also asked you if you expected Apple to identify every person that ever worked on the Apple Watch; you confirmed that Plaintiffs do not expect Apple to identify every person that worked on the Watch.

Finally, I asked you if you expected Apple to identify every Apple current or former employee that was previously employed by Plaintiffs, regardless of what work they did for Plaintiffs or Apple, which is how Plaintiffs apparently came up with the majority of their forty-six custodians.  While you did not give me a straight answer one way or another, I told you that Apple does not believe that the fact that an employee was previously employed by Plaintiffs is a sufficient basis to believe those employees have knowledge about the issues in this case.  If you disagree, please let us know the basis for your disagreement.

I reiterate our request for Plaintiffs' basis for their allegation that Apple's list is deficient.  If you can't provide us with that information, it is unclear to Apple how Apple can try to resolve Plaintiffs' concerns, since we don't know what Plaintiffs' concerns are.

Thanks,
Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, February 10, 2021 11:27 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We disagree with your characterization of virtually everything that you claim occurred during the meet and confer.  Your email again shows why we have suggested that the parties should record meet and confers.

We will reiterate our position.  During the meet and confer, Plaintiffs explained the basis for our assertion that Apple's list is deficient.  In particular, we explained that Apple's list excluded at least the custodians that Plaintiffs had already identified to Apple in its prior joint stipulation and in email correspondence.  We explained that it was not reasonable for Apple to demand that we identify all *other* missing individuals in Apple's list.  While we know Apple's list excluded relevant custodians, we have no way of knowing the universe of custodians that Apple has never disclosed to us.  We explained that we believe the ESI Order puts that obligation on Apple—not Plaintiffs.  This is because only Apple can perform that investigation.  Indeed, that is why we conducted a reasonable investigation on our side and identified 46 potential ESI custodians.

We also told you at the very beginning of the call that we have no problem explaining the relevance of each custodian on our list.  However, we explained that does not resolve our dispute because Apple's list is facially deficient.  Even if

Exhibit AC
-205-

Apple explains that its eight custodians are relevant, that does not show that *other* individuals are irrelevant.  Thus, while we will provide the requested information at 5pm pacific on Friday, the exchange will not resolve this dispute.

It is inappropriate for Apple to supplement its list only when Plaintiffs can identify someone who is missing.  We maintain the ESI Order requires Apple to identify the reasonable universe of potential custodians.  We believe the parties are at an impasse because Apple has steadfastly refused to provide such a list.  Therefore, we have a fundamental disagreement as to Apple's obligation under the ESI Order.  That disagreement has not changed.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, February 10, 2021 3:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam—

I write to memorialize the parties' discussion in this afternoon's meet and confer regarding the identification of ESI custodians.

Plaintiffs took the position that Apple's list of ESI custodians was deficient, but refused to provide a basis for that position.  Apple made clear that it conducted a reasonable investigation and identified those individuals knowledgeable about the core issues in this case, as required by the ESI Order, and thus it did not understand how Plaintiffs can possibly claim that Apple's list is deficient.  *See* Dkt. 51.  Apple noted that it seemed that Plaintiffs have individuals in mind that they believe Apple should identify,  but Plaintiffs refused to identify those individuals.  Instead, Plaintiffs took the position that they were not obligated to provide that information to Apple.  Apple disagreed, noting that the meet and confer process is intended to facilitate an exchange of information between the parties so that the parties can come to ground or at least narrow their disputes, and asked multiple times that Plaintiffs provide the basis for their argument that Apple's list is deficient.

Eventually, after multiple requests, Plaintiffs identified two former Apple employees, Marcelo Lamego and David Nazzaro, as well as "individuals identified in Apple's Initial Disclosures."  Apple agreed to consider whether those individuals should be on its list of ESI custodians and indicated that it would get back to Plaintiffs with a response.

Plaintiffs also took the position that the parties are at an "impasse." Apple disagreed, noting that it was willing to investigate the issues Plaintiffs raised (as discussed above) and also suggesting that the parties exchange further information that would allow each party to assess the sufficiency of each others' list.  Indeed, Apple noted that it has no idea what the relevance is to this case of the vast majority of the forty-six (46) individuals Plaintiffs identified.  Apple suggested that each party should exchange information about the knowledge that each identified individual has, and after that exchange occurs, the parties should have another call to discuss the sufficiency of each others' lists.  Plaintiffs eventually agreed to exchange this information, and asked that Apple suggest a time for the exchange.  Apple suggests the parties exchange descriptions of the relevant knowledge their respective proposed ESI custodians possess at 5:00 p.m. PST on Friday, February 12, 2021.  Please let us know if Plaintiffs agree.

Best,

Exhibit AC
-206-

Brian


**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

Exhibit AC
-207-

# Exhibit AD

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Thursday, March 11, 2021 11:14 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

Thanks for your responses and your willingness to move forward with ESI discussions.  We agree with your proposal that "each side provide a list of custodians and search terms that they request the opposing party search based on the information they currently have, including but not limited to each party's list of potential ESI custodians."  We propose that the parties provide their initial lists of custodians and search terms by COB tomorrow.  We appreciate your willingness to discuss the lists on Monday, but suggest the parties push that discussion until mid-week next week to allow each side to consider and run the proposed search terms in order to have a more productive and meaningful discussion.

Please note that Apple is adding Divya Nag to its list of ESI custodians based on its ongoing investigations into Plaintiffs' allegations.  Apple is identifying Ms. Nag because she has knowledge about Apple's interactions with hospitals.

We will separately respond to your other email, including your questions regarding the files of Messrs. Lamego and Nazzaro.  In the meantime, please provide responses to the questions we asked regarding each individual Plaintiffs have identified as an ESI custodian that is no longer employed by Plaintiffs, including but not limited to Marcelo Lamego and Michael O'Reilly.  Specifically:

* Did Plaintiffs maintain all of each individuals' documents and emails after he/she left Masimo or Cercacor?

* If Plaintiffs deleted any documents/emails from any individual, please provide the date on or about which those documents were deleted, what documents were deleted, and whether the documents were deleted in accordance with Plaintiffs' document retention and destruction policies or practices.

While we appreciate your willingness to provide Plaintiffs' document retention and destruction policies and practices, we also require the above information in order to assess whether to request that Plaintiffs search the ESI of those employees.  If, for example, Plaintiffs did not maintain all or some of their files, and thus do not have all or part of their ESI, that may inform whether or not Apple identifies those individuals as custodians.

Thanks,
Brian


**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306

Exhibit AD
-209-

Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, March 9, 2021 8:35 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We are happy to discuss ESI custodians and search terms.  However, your assertion that we agree, or do not dispute, certain custodians is not accurate.  To the extent Apple intends to limit ESI searching to eleven individuals, we cannot agree that the individuals Apple identified so far would be prioritized.  We may later conclude that other custodians should have been prioritized had Apple provided a full disclosure to us.  We have also never suggested that all custodians on the lists that the parties exchange should be searched.  We have explained our view that each party was required to provide a list of all potential custodians so that the opposing party has sufficient information to discuss with the other party the custodians that should be searched.  We maintain that Apple has not met its obligation to provide such a list.  We reserve all of our rights, including the ability to seek an "order excluding evidence or other consequence" as referenced in Judge Early's Order (Dkt. 318).

The ESI stipulation states that, after each party provides a complete list of potential custodians, the "parties shall meet and confer in an attempt to reach agreement on custodians and search terms to be used for electronic searches of the files from those custodians."  Dkt. 51 ¶ 1.  The ESI stipulation further states that the "parties agree to work in good faith to reach an agreement, but recognize they may not reach an agreement."  *Id.*  Despite our position that Apple failed to provide a complete list of potential custodians, we will proceed with the next step in the process.  We suggest each side provide a list of custodians and search terms that they request the opposing party search based on the information they currently have, including but not limited to each party's list of potential ESI custodians.  This will allow the parties to then have a discussion regarding appropriate custodians and search terms.  We suggest exchanging lists this week and meeting and conferring on Monday.  Please let us know if Apple agrees.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, March 5, 2021 2:17 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

Thanks for your response.  As we have indicated, we would like to move forward with ESI discovery and are willing to have any discussions that will help move the ball forward.  Accordingly, please let us know your availability next Tuesday and Wednesday to have "initial discussions of search terms . . . to determine if the parties can have any meaningful discussions."  While we believe the parties can and should move forward with exchanging search terms for the non-

2

Exhibit AD
-210-

disputed custodians, particularly in view of the Court's Order earlier today, if you would prefer to begin with the "initial discussions" you suggest, we are willing to do so.

Before we have a call, however, we request that you clarify your statement that "the parties do not currently agree on any custodians."  This statement is confusing because Plaintiffs have never indicated that they oppose collection of ESI from the eleven ESI custodians Apple has identified, and the only custodians on Plaintiffs' list that Apple has disputed are the "former employees" (Apple is still waiting for Plaintiffs' response to our email earlier this week regarding that dispute).  Accordingly, it is Apple's understanding that the parties do not dispute, and thus "agree" on, the custodians Apple identified and the custodians Plaintiffs identified other than the former employees, and we don't see any reason that the parties can't move forward with exchanging search terms for those custodians.  If you disagree, please let us know the basis for that disagreement so that we can be prepared to discuss on our call.

To be clear, we understand that Plaintiffs seek "more" custodians from Apple, but we don't see how that has any bearing on the custodians the parties have already identified (other than the former employee dispute, as discussed above).  Indeed, now that the Court has denied Plaintiffs' joint stipulation, do Plaintiffs intend to request that Apple search the files of all eleven custodians Apple has already identified, or do they intend to dispute the relevance of those custodians and/or select only a sub-set of those custodians for ESI discovery?  Similarly, do Plaintiffs intend to oppose performing searches of the custodians they have identified as having knowledge relevant to the issues in this case?

Moreover, Apple reiterates the point that it has been making since the parties first began discussing ESI custodians:  after the parties exchange ESI for the custodians already identified, if there is a basis to request discovery from additional custodians, each party may make such a request.  Such an "iterative" process, as the Court's Order refers to it, is quite common for ESI exchanges.  *See, e.g.,* Dkt. 315 at 30-31 (Apple's portion of the joint stipulation).

Thanks,
Brian


**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, March 3, 2021 11:35 AM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We are happy to discuss search terms in general, but cannot discuss search terms for custodians "on which [the parties] agree" because the parties do not currently agree on any custodians.  As we explained in our portion of the joint stipulation, we maintain that Apple's list of potential custodians is incomplete and does not comply with the ESI Order.  Until Apple provides a full and complete list of potential custodians, Plaintiffs cannot make an informed decision as to which custodians should be searched.

Exhibit AD
-211-

As for your request to discuss search terms, we can start that discussion, but we do not believe it can be very meaningful given Apple's failure to provide a list as required by the ESI Order.  For example, whether a particular ESI search term is too broad may depend on the number and identity of custodians.  That is why the ESI order requires that Apple first provide a complete list of custodians.  Thus, we repeat our request that Apple provide such a list.  That being said, we will engage in initial discussions of search terms with you to determine if the parties can have any meaningful discussions.  Perhaps we could begin with search terms that would be applicable to all custodians on each side, or search terms that would be applicable to certain groups (e.g., disputed inventors).  Please note that we will object to any attempt by Apple to use our willingness to engage in these discussions as a basis to argue that Apple should not have to comply with the ESI order and provide a complete list and/or that, because of the parties' discussions, Apple would be prejudiced by later identifying additional individuals whose documents may be searched.

Thanks,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Tuesday, February 23, 2021 5:52 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We have not yet received a response to the email below.  In any event, Apple is eager to move forward with the parties' ESI discussions, and proposes that in the interest of avoiding further delay, the parties move forward with discussing search terms for custodians on which they agree.  We propose that the parties have a discussion this week about the custodians to which they agree from both lists, and select a date next week for the mutual exchange of search terms for those custodians.   Please let us know if Plaintiffs agree, and if so, your availability for a discussion this week about mutually agreeable custodians.

Thanks,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Wednesday, February 17, 2021 9:23 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>

Exhibit AD
-212-

Cc: Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam,

I am responding to your emails sent Friday, February 12 at 3:53pm PT and 5pm PT, and Sunday, February 14 at 3:40pm PT regarding the parties' ongoing discussions regarding ESI custodians.  As an initial matter, you misrepresent the circumstances surrounding Plaintiffs' withdrawal of their joint stipulation.  Plaintiffs' joint stipulation sought to compel Apple to exchange proposed lists of ESI custodians instead of discussing limits on custodians before exchanging proposed lists, as Apple proposed.  While Apple maintains that such a discussion would have been helpful (as evidenced at least by Plaintiffs' complaints about Apple's list of proposed custodians based on the number of custodians identified), Apple did not see the point in burdening the Court with that dispute.   Accordingly, Apple agreed to exchange lists but did not, as your email implies, agree that it would identify any specific individuals.   Your insinuation that Apple agreed to anything else is plainly incorrect.

**Plaintiffs' list of ESI custodians**:

While we appreciate your willingness to allow us to share the list with Apple's in-house counsel, we maintain that Plaintiffs' designation of their list as attorneys' eyes only is wholly improper.  There is nothing in Plaintiffs' list that reveals any confidential information.

Additionally, Plaintiffs' "areas of knowledge" for many of Plaintiffs' listed ESI custodians is unhelpful.  Specifically, Plaintiffs' list includes eighteen (18) former employees of theirs that were later employed by Apple—excluding Lamego and O'Reilly—and for each of those individuals, Plaintiffs cite the "areas of knowledge" as "former employee later employed by Apple; Acquisition, use, and disclosure of Plaintiffs' confidential information."  This description provides no information as to what specific relevant knowledge those individuals have other than the fact that they were previously employed by Plaintiffs and were later employed by Apple.  Please identify what specific knowledge of the "acquisition, use, and disclosure of Plaintiffs' confidential information" each identified custodian has that is relevant to this case.   We also note that Plaintiffs did not provide an "area of knowledge" for Tony Alan, despite listing Tony Alan on Plaintiffs' initial list of ESI custodians.  Please confirm that Plaintiffs are dropping Mr. Alan as a proposed ESI custodian; if Plaintiffs intend to keep Mr. Alan on the list, please also identify the specific knowledge that Mr. Alan has that is relevant to this case.

**Apple's list of ESI custodians**:

Plaintiffs still have not provided a response to Apple's request for the basis for their assertion that Apple's list is deficient.  As discussed below, we have addressed the specific individuals you have indicated you believe are missing, and we have even added custodians to Apple's list in an attempt to move this process forward.   Nonetheless, Plaintiffs continue to assert that Apple is "exclud[ing] individuals Apple knew had relevant information," but also continue to refuse to identify the individuals that you contend are missing.  Apple is confused by Plaintiffs' position; Plaintiffs refused to discuss reasonable limits on ESI custodians with Apple previously, arguing that the ESI Order does not require a specific number of individuals, yet Plaintiffs now appear to be complaining about Apple's ESI list based solely on the number of ESI custodians Apple identified.

One of the reasons Apple insisted on exchanging information about the knowledge each proposed custodian has that is relevant to this case is so that the parties can assess whether each others' lists are sufficient and whether there are additional custodians with specific areas of knowledge they believe should be listed on the other party's list.  As we have stated several times, and as discussed below, Apple has identified the proposed ESI custodians that have knowledge relevant to this case.  If there are additional custodians (or custodians with specific areas of knowledge relevant to the case) that Plaintiffs believe should be identified (either now, or as discovery progresses), please let us know and we would be happy to investigate.

Exhibit AD
-213-

With respect to the categories of Apple employees you listed in your email dated February 12, Apple responds below:

(1) <u>individuals who worked with Lamego</u>:  as an initial matter, Mr. Lamego was at Apple for only 6 months.  Apple has identified every inventor listed with Mr. Lamego on each of the Disputed Patents, as well as Mr. Lamego's supervisor.  It is Plaintiffs' position that Apple should identify every single person that Lamego interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

(2) <u>individuals who worked with O'Reilly</u>:  Apple identified Mr. O'Reilly along with Mr. Mistri, who has worked with Mr. O'Reilly.  Is it Plaintiffs' position that Apple should identify every single person that O'Reilly has interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

(3) <u>individuals who were involved in the accused aspects of the Apple Watch</u>:  Apple has identified Mr. Hotelling, Ms. Haggerty, Mr. Land, and Mr. Waydo, all of whom have knowledge of the "accused aspects of the Apple Watch."  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to, particularly in view of your prior representation that you are not requesting that Apple identify every person that has worked on the Apple Watch.

(4) <u>individuals who were involved in the accused business and marketing strategies</u>:  Apple has identified Mr. O'Reilly, Ms. Caldbeck, and Mr. Mistri, all of whom have knowledge about the "accused business and marketing strategies."

(5) <u>individuals who were involved in the patent applications at issue but not listed as an inventor</u>:  we have listed every inventor listed with Mr. Lamego on each of the Disputed Patents.  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to.

Furthermore, Plaintiffs are now alleging that Plaintiffs' former employees later employed by Apple should be on Apple's list of ESI custodians, without providing any basis for such a position.  The fact that an employee was previously employed by Plaintiffs is not a sufficient basis to allege those employees have knowledge about the issues in this case, and Plaintiffs have provided no basis for their assertion that the former employees "took Plaintiffs' trade secret to Apple."  The collection of ESI is burdensome, time consuming, and costly, and Apple is not going to agree to identify custodians simply based on an unfound conclusory assertion by Plaintiffs that certain employees "took Plaintiffs' trade secret to Apple."  If you have a specific basis for that assertion, please let us know, but based on Apple's investigation, the nineteen former employees Plaintiffs identified on their list do not have knowledge relevant to the issues in this case.

**Marcelo Lamego and David Nazzaro**:

Your email on Monday (February 15) states that Plaintiffs are "surprised that [Apple is] just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro."  We are not sure why Plaintiffs would be surprised by this—both employees left Apple in 2014, years before Plaintiffs filed their Complaint in this case.  Do Plaintiffs' contend that Apple had some obligation to retain either individuals' documents when they left Apple?  If so, what is your basis for such a contention?

I have addressed your specific questions below:

- Your request that Apple "conduct a company-wide search of 'Lamego' and 'Navarro' and preserve all resulting emails" is unreasonable and overburdensome.  As you know, Apple employs approximately 150,000 employees worldwide.  Apple does not have the ability to run a search across all employees' emails—to accomplish Plaintiffs' requested search, Apple would have to pull the emails for every single employee and run a separate search on the email for each employee separately.  Such a request would be exceedingly costly and time-consuming, and is certainly not proportional to the needs of this case.

Exhibit AD
-214-

- Apple does not have any electronic devices used by Lamego or Navarro, or any images of such devices.  Nor does Apple have files from their computers, text messages, or chat messages other than those that exist is other custodians' files or in non-custodial databases.   Apple has preserved, and is collecting and reviewing, any remaining relevant files that exist.  Indeed, Apple has already begun producing such documents and will continue to do so on a rolling basis, to the extent additional documents are identified.
- Mr. Lamego and Navarro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, in accordance with Apple's procedures for departing employees.   Apple will produce a copy of its document retention and destruction policies and practices.
- With respect to your final question ("Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?"), Apple rejects the implication that Apple somehow acted improperly by "destroy[ing]" any information.  In any event, please let us know which individuals you are referring to.  As a general matter, we are unaware of the removal of the files of any other individuals with knowledge relevant to the issues in this case.

Thanks, and best regards,
Brian


**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, February 15, 2021 1:40 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We are surprised that you are just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro.  We request that Apple conduct a company-wide search of "Lamego" and "Navarro" and preserve all resulting emails.  We presume you have done so already, but please confirm that Apple has preserved any remaining files, electronic devices (e.g., computers, phones, storage devices) used by Lamego or Navarro, or any images of such devices.  Please also confirm that Apple will preserve emails, files, and devices for any other individuals that leave the company and are related to this dispute, including all individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area.  Please also provide a copy of Apple's document retention and destruction policies and practices, pursuant to Plaintiffs' RFP No. 107.

We would also like to understand the scope of what has been deleted and whether the deleted files can be recovered.  To that end, please answer the following questions:

1. Does Apple have any other files for Lamego or Navarro, such as files from their computers, text messages, or chat messages?

Exhibit AD
-215-

2. Does Apple have electronic devices used by Lamego or Navarro that are in Apple's custody or control, such as computers, phones, USB storage devices, or cloud storage, or any images of such devices?

3. When did Apple last have custody of Lamego's and Navarro's emails and any files or devices that were destroyed?  Why did Apple destroy them?

4. Does Apple have any form of archive or backup that might contain emails, files, or devices used by Lamego or Navarro?  What did Apple do to confirm the destruction of any of Lamego's and Navarro's emails, files, or devices that were destroyed?

5. Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 Direct

**Knobbe** Martens

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, February 12, 2021 4:57 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam—

Pursuant to our meet and confer earlier this week, and our follow up correspondence, I am writing with the additional information the parties agreed to exchange.

Below is an identification of the knowledge that each of Apple's proposed ESI custodians has that is relevant to the core issues or subjects in this case:

- Mike O'Reilly:  Mr. O'Reilly is the subject of Plaintiffs' allegations related to alleged trade secret misappropriation.

- Steve Hotelling:  Mr. Hotelling was Marcelo Lamego's supervisor during the six months Mr. Lamego was employed by Apple.  Mr. Hotelling is also knowledgeable about the operation and development of the Apple Watch.  Mr. Hotelling is also a named inventor on one of the Apple Disputed Patents and the Apple Disputed Application.

- Brian Land:  Mr. Land is knowledgeable about the operation and development of the Apple Watch hardware.

- Steve Waydo:  Mr. Waydo is knowledgeable about the operation and development of the Apple Watch software.

- Wolf Oetting:  Mr. Oetting is a named inventor on two of the Apple Disputed Patents.

- Trevor Ness:  Mr. Ness is a named inventor on two of the Apple Disputed Patents.

- Chinsan Han:  Mr. Han is a named inventor on two of the Apple Disputed Patents.

- Naoto Matsuyuki:  Mr. Matsuyuki is a named inventor on two of the Apple Disputed Patents.

During the parties' meet and confer, Plaintiffs identified additional individuals that they believe should have been identified by Apple as potential ESI custodians.  Specifically, Plaintiffs identified Marcelo Lamego, David Nazzaro, and

Exhibit AD
-216-

"individuals on Apple's initial disclosures."  Apple's response to Plaintiffs' request that Apple identify those individuals is set forth below.

- Myra Haggerty:  Apple identified Ms. Haggerty on its initial disclosures based on her knowledge relevant to Plaintiffs' infringement allegations.  In the interest of moving the case forward, Apple is willing to add Ms. Haggerty to its list of ESI custodians.  She has knowledge about the operation and development of the Apple Watch.

- Deirdre Caldbeck:   Apple identified Ms. Calbeck because she has knowledge relevant to "marketing relating to the Apple Watch Series 4 and Series 5." In the interest of moving the case forward, Apple is willing to add Ms. Calbeck to its list of ESI custodians at this time.  She has knowledge about the marketing of the Apple Watch.

- Mark Rollins:  Mr. Rollins was identified on Apple's initial disclosures as having knowledge of Apple's financial information related to the Apple Watch.  Mr. Rollins is a corporate witness that would testify regarding non-custodial financial information pulled from Apple's financial databases; he is not an individual that is likely to have ESI relevant to the issues in this case.

- Marcelo Lamego and David Nazzaro:  As we noted in our prior correspondence, Messrs. Lamego and Nazzaro are no longer Apple employees and have not been Apple employees since 2014.  Apple no longer has either individual's email files.  To the extent Apple has relevant documents from either individual in non-custodial databases or the files of other custodians, Apple will produce such documents (and in fact has already begun producing such documents).

Finally, Apple is adding Afshad Mistri to its list of ESI custodians.  Mr. Mistri has knowledge about marketing of the Apple Watch and Apple's interactions with hospitals.

Please note that given the position that Plaintiffs have taken with respect to broad swaths of publicly available information—including photographs of Apple's products and public patents—we are not currently able to share critical information about Plaintiffs' allegations with Apple.  Accordingly, we are making these decisions without the benefit of information we might otherwise have if Plaintiffs were not designating public information as AEO.

Of course, Apple's investigation into the issues and allegations in this case is ongoing, and Apple reserves the right to identify additional ESI custodians as its investigation proceeds.  Additionally, Apple reserves the right to request ESI from individuals that do not appear on Plaintiffs' initial list as discovery progresses in this case.

Best regards,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Thursday, February 11, 2021 9:30 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Exhibit AD
-217-

Adam,

We don't understand how you can continue to claim that Apple's list is "facially deficient" yet continue to refuse to provide the basis for that claim.  I asked you multiple times during our call for your basis, and your response was that "it's not Plaintiffs' job to tell Apple who to put on their list."  Clearly, there are people that Plaintiffs believe should be on Apple's list and it is unclear why you won't tell us who those people are.

Apple performed a reasonable investigation and identified the people that are knowledgeable about the issues in this case.  If you believe there are people missing from that list, please let us know who you believe is missing.  As you know, during the meet and confer, after I asked you for this information many times, you did mention Messrs. Lamego and Nazzaro as well as "other people on Apple's initial disclosures."  I promised that we would investigate and get back to you regarding those names, and we will do so tomorrow.

I also asked you if you expected Apple to identify every person that ever worked on the Apple Watch; you confirmed that Plaintiffs do not expect Apple to identify every person that worked on the Watch.

Finally, I asked you if you expected Apple to identify every Apple current or former employee that was previously employed by Plaintiffs, regardless of what work they did for Plaintiffs or Apple, which is how Plaintiffs apparently came up with the majority of their forty-six custodians.  While you did not give me a straight answer one way or another, I told you that Apple does not believe that the fact that an employee was previously employed by Plaintiffs is a sufficient basis to believe those employees have knowledge about the issues in this case.  If you disagree, please let us know the basis for your disagreement.

I reiterate our request for Plaintiffs' basis for their allegation that Apple's list is deficient.  If you can't provide us with that information, it is unclear to Apple how Apple can try to resolve Plaintiffs' concerns, since we don't know what Plaintiffs' concerns are.

Thanks,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, February 10, 2021 11:27 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

Exhibit AD
-218-

We disagree with your characterization of virtually everything that you claim occurred during the meet and confer. Your email again shows why we have suggested that the parties should record meet and confers.

We will reiterate our position. During the meet and confer, Plaintiffs explained the basis for our assertion that Apple's list is deficient. In particular, we explained that Apple's list excluded at least the custodians that Plaintiffs had already identified to Apple in its prior joint stipulation and in email correspondence. We explained that it was not reasonable for Apple to demand that we identify all *other* missing individuals in Apple's list. While we know Apple's list excluded relevant custodians, we have no way of knowing the universe of custodians that Apple has never disclosed to us. We explained that we believe the ESI Order puts that obligation on Apple—not Plaintiffs. This is because only Apple can perform that investigation. Indeed, that is why we conducted a reasonable investigation on our side and identified 46 potential ESI custodians.

We also told you at the very beginning of the call that we have no problem explaining the relevance of each custodian on our list. However, we explained that does not resolve our dispute because Apple's list is facially deficient. Even if Apple explains that its eight custodians are relevant, that does not show that *other* individuals are irrelevant. Thus, while we will provide the requested information at 5pm pacific on Friday, the exchange will not resolve this dispute.

It is inappropriate for Apple to supplement its list only when Plaintiffs can identify someone who is missing. We maintain the ESI Order requires Apple to identify the reasonable universe of potential custodians. We believe the parties are at an impasse because Apple has steadfastly refused to provide such a list. Therefore, we have a fundamental disagreement as to Apple's obligation under the ESI Order. That disagreement has not changed.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

## Knobbe Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, February 10, 2021 3:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam—

I write to memorialize the parties' discussion in this afternoon's meet and confer regarding the identification of ESI custodians.

Plaintiffs took the position that Apple's list of ESI custodians was deficient, but refused to provide a basis for that position. Apple made clear that it conducted a reasonable investigation and identified those individuals knowledgeable about the core issues in this case, as required by the ESI Order, and thus it did not understand how Plaintiffs can possibly claim that Apple's list is deficient. *See* Dkt. 51. Apple noted that it seemed that Plaintiffs have individuals in mind that they believe Apple should identify, but Plaintiffs refused to identify those individuals. Instead, Plaintiffs took the position that they were not obligated to provide that information to Apple. Apple disagreed, noting that the meet and confer process is intended to facilitate an exchange of information between the parties so that the parties can come to ground or at least narrow their disputes, and asked multiple times that Plaintiffs provide the basis for their argument that Apple's list is deficient.

Exhibit AD
-219-

Eventually, after multiple requests, Plaintiffs identified two former Apple employees, Marcelo Lamego and David Nazzaro, as well as "individuals identified in Apple's Initial Disclosures."  Apple agreed to consider whether those individuals should be on its list of ESI custodians and indicated that it would get back to Plaintiffs with a response.

Plaintiffs also took the position that the parties are at an "impasse." Apple disagreed, noting that it was willing to investigate the issues Plaintiffs raised (as discussed above) and also suggesting that the parties exchange further information that would allow each party to assess the sufficiency of each others' list.  Indeed, Apple noted that it has no idea what the relevance is to this case of the vast majority of the forty-six (46) individuals Plaintiffs identified.  Apple suggested that each party should exchange information about the knowledge that each identified individual has, and after that exchange occurs, the parties should have another call to discuss the sufficiency of each others' lists.  Plaintiffs eventually agreed to exchange this information, and asked that Apple suggest a time for the exchange.  Apple suggests the parties exchange descriptions of the relevant knowledge their respective proposed ESI custodians possess at 5:00 p.m. PST on Friday, February 12, 2021.  Please let us know if Plaintiffs agree.

Best,
Brian

**Brian Andrea**

<span style="color:#4a7ebb">GIBSON DUNN</span>

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit AD
-220-

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit AD
-221-

# Exhibit AE

REDACTED VERSION OF
DOCUMENT PROPOSED TO
BE FILED UNDER SEAL

# Exhibit AF

REDACTED VERSION OF
DOCUMENT PROPOSED TO
BE FILED UNDER SEAL

# Exhibit AG

REDACTED VERSION OF
DOCUMENT PROPOSED TO
BE FILED UNDER SEAL

# Exhibit AH

REDACTED VERSION OF
DOCUMENT PROPOSED TO
BE FILED UNDER SEAL

# Exhibit AI

REDACTED VERSION OF
DOCUMENT PROPOSED TO
BE FILED UNDER SEAL

# Exhibit AJ

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

12790 El Camino Real, Suite 100, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

March 25, 2021

**<u>VIA EMAIL</u>**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
BAndrea@gibsondunn.com

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write to request a conference of counsel pursuant to Local Rule 37-1 to address Apple's failure to conduct a reasonable search for ESI responsive to Plaintiffs' Requests For Production ("RFPs").  Please promptly provide your availability to meet and confer within ten days.

Apple's communications make clear Apple will not perform a reasonable search for ESI in accordance with its discovery obligations.  Despite Apple's failure to provide a list of potential custodians with discoverable information—as required under the parties' ESI stipulation—Plaintiffs identified forty-two custodians likely to have substantial ESI responsive to Plaintiffs' document requests, including at least RFPs 5-26, 47-49, 51, 61-66, 70-85, 87-97, 100-133, 135-147, 158-161, 165-171, 173-184, 187-211, 213-221, 223-226, 228, 230, 233-235, 238-241, 244-248.  Plaintiffs also proposed search terms likely to identify responsive documents from these custodians.

Apple has repeatedly employed self-help to substantially limit its document production.  Most recently, Apple is attempting to limit discovery to just twelve custodians and is refusing to meet and confer as to custodians <u>and</u> search terms, as required by the parties' ESI stipulation.  We believe twelve custodians is woefully deficient, particularly for a case of this magnitude.  Apple's revenue for its watch and wearables division exceeded $13 billion in the fourth quarter of 2020 alone.  Apple has a large team of individuals who have worked on the relevant projects in this case.  Apple also deleted the files of Marcelo Lamego, which means that broader searching is necessary to try to locate relevant information in the files of other custodians that worked with Lamego.  The use of ESI custodians and search terms is intended to balance the need for ESI discovery with the burden associated with searching and reviewing extensive ESI.  It is not a vehicle for a party to avoid performing a reasonable search under the Federal Rules of Civil Procedure.  Apple's position is particularly problematic because, in response to many of Plaintiffs' requests, Apple has stated it intends to rely entirely on search terms to look for relevant ESI.

Apple also refuses to search Tim Cook's files because he is "busy" and purportedly not "directly" involved in the issues of this case.  Given that Apple can search Mr. Cook's files without involving him, we do not understand what Mr. Cook's workload has to do with this issue.  As for Mr. Cook's relevance, Plaintiffs' complaint alleges Mr. Cook personally interviewed O'Reilly and was involved in Apple's efforts to induce O'Reilly to disclose Plaintiffs' trade secrets.  Dkt. 296-1 ¶ 230.  Plaintiffs also allege

Mr. Cook has "publicly stated that he sees healthcare as central to Apple's future" (*id.*), which is relevant to damages.  *Id.*  Mr. Cook has made clear that healthcare is one of his central focuses at Apple. Plaintiffs are entitled to discovery regarding their allegations.

Plaintiffs request that Apple conduct a reasonable search for responsive documents, including by searching all of the custodians included in my letter of March 12, 2021, with the search terms included in that letter and my letter of March 23, 2021.  We hope the parties are able to resolve this dispute without burdening the Court.  If the parties are not able to reach an agreement, Plaintiffs intend to move for an order compelling Apple to conduct such a search.

Please let us know your availability to discuss these matters.

Best regards,

Adam B. Powell

Exhibit AJ
-267-

# Exhibit AK

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# Exhibit AL

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# Exhibit AM

**From:** Kaounis, Angelique
**Sent:** Monday, March 29, 2021 9:02 PM
**To:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We write to memorialize today's meet and confer call.  We are disappointed by Plaintiffs' refusal to agree to Apple moving forward with 12 custodians on each side, particularly in view of the fact that Plaintiffs have indicated they do intend to request that Apple search the ESI of the 12 custodians Apple has identified.  We are endeavoring in good faith to make progress, with the understanding that all parties reserve rights to seek additional custodians later, depending on the discovery that unfolds.   It is likewise disheartening that Plaintiffs cannot commit to providing a final answer to Apple's proposal to begin with 12 custodians by a date certain.  Your suggestion that we asked you for an "on the spot" answer is detached from the documented reality of the parties' discussions.  We presented this proposal to Plaintiffs on March 17, followed up on March 22 asking for a response to allow us to "move forward with ESI discovery immediately," reiterated this request on March 23, and then once again posed the same question on March 26.  In no way were you put on the spot today.  Accordingly, we renew our request that you let us know today—or tomorrow at the latest—whether Plaintiffs will agree to commence ESI discovery with the list of 12 custodians presented in Apple's March 17 letter.

We will respond in writing to the issues raised in your March 23 and March 25 letters later this week.  In the meantime, we need to move forward with an initial set of custodians.  Discovery is an iterative, collaborative process.  The fact that other issues remain to be decided does not justify Plaintiffs' delay.

Thanks,
Angelique


**Angelique Kaounis**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

Exhibit AM
-310-

# Exhibit AN

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-00048JVS(JDEx)                    Date   April 17, 2020

Title   Masimo Corporation, et al v Apple, Inc

---

Present: The Honorable    **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

Not Present                                     Not Present

**Proceedings:**    **[IN CHAMBERS] ORDER RE SCHEDULING DATES**

The Court has read and considered the parties Rule 26(f) Report and sets the following dates:

| | |
|---|---|
| **Jury Trial** | **April 5, 2022 at 8:30 a.m.** |
| **Final PreTrial Conference** | **March 21, 2022 at 11:00 a.m.** |
| File PreTrial Documents not later than March 7, 2022 | |
| File motions in limine not later than February 14, 2022 | |
| **Discovery Cut-off** | **July 5, 2021** |
| **Expert Discovery Cut-off** | **December 6, 2021** |
| Initial disclosure of Experts not later than September 6, 2021 | |
| Rebuttal disclosure of Experts not later than October 18, 2021 | |
| **Law and Motion Cut-off** | **February 7, 2022 at 1:30 p.m.** |
| Motions to be filed and served not later than January 10, 2022 | |
| **Markman Hearing** | **February 8, 2021 at 3:00 p.m.** |

Counsel inform the Court that their selection for a settlement procedure pursuant to Local Rule 16-15 is ADR #3, private mediation.  The Court orders that any settlement discussions shall be completed not later than November 30, 2021.  Counsel shall file a Joint Report of the parties regarding outcome of settlement discussions, the likelihood of possible further discussions and any help the Court may provide with regard to settlement negotiations not later than seven (7) days after the settlement conference.

The Court adopts discvoery limits in Sections 6a-c.  Total hours for depositions 100.  Court will deal with reduction of claims, prior art references at a hearing on **July 10, 2020 at 3:00 p.m.** Parties shall submit joint/separate proposals in one filing by July 3, 2020.  The Court adopts the patent specific dates.  The Court stays the trade secret discovery only pending compliance with 2019.210.  Any dispute over compliance shall be heard before the Magistrate Judge.

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |

Exhibit AN
-312-

# Exhibit AO



1
2
3
4
5
6
7
8
9
10
11          **IN THE UNITED STATES DISTRICT COURT**
12          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
13                    **SOUTHERN DIVISION**
14

MASIMO CORPORATION,                )  Case No. 8:20-cv-00048-JVS-JDE
a Delaware corporation; and        )
CERCACOR LABORATORIES, INC.,       )  Hon. James V. Selna
a Delaware corporation             )  Magistrate Judge John D. Early
                                   )  **ORDER GRANTING**
            Plaintiffs,            )  **STIPULATION TO AMEND THE**
                                   )  **SCHEDULING ORDER**
        v.                         )
                                   )
APPLE INC., a California corporation )
                                   )
            Defendant.            )
                                   )
                                   )
                                   )

23
24
25
26
27
28

This matter is before the Court pursuant to the parties' Stipulation to Amend the Scheduling Order.  Based on the stipulation of the parties, and good cause appearing, the Court GRANTS the Stipulation and AMENDS the Scheduling Order as shown below.

| Event | Current Deadline | New Deadline |
|---|---|---|
| Joint Claim Narrowing Proposal | September 21, 2020 | November 23, 2020 |
| Exchange of Proposed Claim Terms for Construction (Patent L.R. 4-1) | September 21, 2020 | December 7, 2020 |
| Exchange Preliminary Claim Constructions and Extrinsic Evidence (Patent L.R. 4-2) | October 12, 2020 | January 11, 2021 |
| Invalidity Contentions on newly asserted patents (Patent L.R 3-3 and 3-4) | October 22, 2020 | |
| Infringement Contentions (Patent L.R. 3-1 and 3-2) | November 13, 2020 | |
| Joint Markman Prehearing Statement (Patent L.R. 4-3) | November 9, 2020 | February 1, 2021 |
| Complete Claim Construction Discovery (Patent L.R. 4-4) | December 7, 2020 | March 1, 2021 |
| Simultaneous Opening Markman Briefs (Patent L.R. 4-5) | December 21, 2020 | March 15, 2021 |
| Last Date to Add Parties / Amend Pleadings | December 23, 2020 | |

Exhibit A0
-315-

| Event | Current Deadline | New Deadline |
|-------|------------------|--------------|
| Simultaneously Responding Markman Briefs, Tutorials and Presentation Materials (Patent L.R. 4-5) | January 25, 2021 | April 12, 2021 |
| *Markman* hearing | February 8, 2021 | April 26, 2021 at 3:00 p.m. |
| Non-expert Discovery cut off | July 5, 2021 | |

**IT IS SO ORDERED.**

Dated: September 21, 2020

_____
Honorable James V. Selna

33525107

# Exhibit AP

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL