Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
KNOBBE, MARTENS, OLSON &
BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949)-760-0404
Facsimile: (949)-760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
KNOBBE, MARTENS, OLSON &
BEAR, LLP
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000;
Facsimile: (858) 707-4001

*Attorneys for Plaintiffs Masimo Corp. and Cercacor Labs., Inc.*

JOSHUA H. LERNER, SBN 220755
jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

*Attorneys for Defendant Apple Inc.*
*[Additional counsel listed on next page]*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, CERCACOR LABORATORIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **JOINT STIPULATION REGARDING DEFENDANT APPLE INC.'S MOTION TO DE-DESIGNATE** <br><br> Judge: Magistrate Judge John D. Early <br> Date/Time: April 22, 2021 / 10:00 AM <br> Courtroom: 6A <br><br> Discovery Cutoff: 7/5/2021 <br> Pre-trial Conference: 3/21/2022 <br> Trial: 4/5/2022 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTORY STATEMENTS ...................................................... 1

　A.   Apple's Introductory Statement ........................................... 1

　B.   Plaintiffs' Introductory Statement ........................................ 4

II.  ARGUMENT............................................................................... 8

　A.   Allegations in the Fourth Amended Complaint ....................... 8

　　1.   Information at Issue ................................................. 8

　　2.   Apple's Position.................................................... 12

　　　a)   The Alleged Trade Secret Category Headings Do Not Reveal Confidential Information and Their Disclosure Will Not Harm Plaintiffs .................................... 12

　　　b)   Information Published in Patents Is Not Confidential After Publication—Let Alone AEO ................................... 15

　　　c)   Other Pro Forma Allegations Do Not Satisfy AEO Designation Requirements.................................... 25

　　3.   Plaintiffs' Position ................................................ 27

　　　a)   This Court Has Repeatedly Rejected Apple's Arguments Regarding The Importance Of In-House Access ................................................................ 27

　　　b)   Plaintiffs' Trade Secret Categories Are Properly Designated AEO ................................................ 29

　　　c)   Apple's Patents Do Not Affect The Enforceability Of Plaintiffs' Trade Secrets ...................................... 36

　　　d)   Plaintiffs' Other Allegations Were Properly Designated But Could Be Disclosed If Sufficiently Redacted ......................................................... 41

　　　e)   Apple's Requested De-Designation Would Harm Plaintiffs.......................................................... 45

　　　f)   There is Nothing Unusual or Unfair About Parties Having to Rely on Sophisticated Outside Counsel ............ 47

　B.   Images in the Fourth Amended Complaint ............................. 52

　　1.   Information at Issue ............................................... 52

　　2.   Apple's Position.................................................... 53

3. Plaintiffs' Position ........................................................................... 57

C. Plaintiffs' ESI Disclosures ...................................................................... 64

1. Information at Issue ...................................................................... 64

2. Apple's Position............................................................................ 66

3. Plaintiffs' Position ....................................................................... 69

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Defendant Apple Inc. ("Apple"), as movant, and Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs"), as respondents, respectfully submit the following Joint Stipulation regarding Apple's Motion to De-Designate.  The parties met and conferred on January 4, March 1, and March 12, 2021, and resolved certain issues, but were unable to resolve the disputes presented in this Joint Stipulation.  *See* Decl. of Angelique Kaounis ("Kaounis Decl.") ¶¶ 4, 10, 14.

# I.   **INTRODUCTORY STATEMENTS**

## A.   **Apple's Introductory Statement**

Apple moves under the Protective Order in this matter to de-designate three categories of Challenged Information Plaintiffs improperly designated AEO.  The Challenged Information, which is either public or generic language such as argument headings, comes nowhere close to justifying even a "Confidential" designation under the Protective Order (the "PO"), much less an AEO one.  Plaintiffs' improper designations are prejudicing Apple's ability to mount a proper defense by prohibiting Apple's outside counsel from discussing the most basic case information with Apple.

*First*, Plaintiffs designated as AEO *completely* non-confidential allegations in their 4th AC and Amended Section 2019.210 Disclosure ("2019 Disclosure")—including category *headings* that the Court has found not to be trade secrets, information copied from published Apple patents, and boilerplate allegations of misappropriation.  This violates the PO's directive that the AEO designation be limited to *extremely* confidential information and/or *sensitive* "Confidential Information or Items" whose disclosure will cause Plaintiffs competitive harm.  *See* PO §§ 2, 4.4.

*Second*, Plaintiffs designated photographs of the Apple Watch that are readily available from any tear-down of the Apple Watch itself.

*Third*, Plaintiffs designated most of their ESI custodian chart as AEO, which is comprised merely of names and high-level, non-confidential descriptions of individuals' purported knowledge relevant to the case, e.g., "███████████████████."

Plaintiffs have not met their burden to justify their AEO designations under the PO or applicable case law. *See* PO § 8.4 ("The burden of persuasion in any such challenge proceeding shall be on the Designating Party."). The PO's "Confidential" designation is for information that "qualif[ies] for protection under [FRCP] 26," *id.* § 4.3, because it is "confidential"—i.e., the designating party has a "good faith belief that it has been maintained in a confidential, non-public manner," *id.* § 2. Such information may be disclosed to officers, directors, and employees of the Receiving Party, a recipient or custodian of a document containing the information, and witnesses and attorneys during deposition, among others. *See id.* § 9.2. The PO's AEO designation is reserved for information or items that (1) are "*extremely* confidential and/or *sensitive* 'Confidential Information or Items,' [(2) the] disclosure of which to another Party or Non-Party is likely to cause harm or significant competitive disadvantage to the Producing Party." *Id.* § 4.4 (emphases added). AEO material may be disclosed to a limited subset of persons with whom Confidential material may be shared, excluding officers, directors, and employees of the Receiving Party. *Id.* § 9.3.

Plaintiffs do not argue that the Challenged Information is *extremely* confidential or *sensitive* "Confidential Information," and they have offered nothing more than conclusory assertions that the disclosure of the information would cause them harm. The reason for this is simple: Public information, argument headings, and photographs that anyone can take do not meet the definition of Confidential, let alone AEO. The Challenged Information therefore should never have been designated at all. Nonetheless, in February, after months of trying to resolve these issues, Apple offered Plaintiffs a reasonable compromise—which is that the relevant portions of the documents and the pictures, which are not even confidential, be de-designated from AEO to Confidential. Apple's modest request is consistent with principles that "strongly favor[] access to discovery materials to meet the needs of parties engaged in . . . litigation." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003).

1     Although Plaintiffs withdrew their AEO designation for a small subset of the

2   information, they have opted to continue designating critical information that should not

3   even be Confidential as AEO, thereby shielding it from Apple's in-house counsel and

4   potential witnesses who may assist in Apple's defense.  That violates the PO and is

5   prejudicial to Apple's ability to defend itself in this case.  Plaintiffs' indiscriminate AEO

6   designations also undermine the very purpose of an AEO designation—to protect

7   *extremely* confidential information deserving of *highly* restricted dissemination.

8     Apple and its counsel strove to avoid filing this motion, including by holding three

9   meet and confers regarding Apple's de-designation requests and exchanging lengthy

10  correspondence about potential compromises.  Kaounis Decl. ¶¶ 4, 10, 14.  Plaintiffs

11  rejected the majority of Apple's proposals.  Although Plaintiffs offered a "compromise"

12  on March 5, 2021, it took them weeks to even consent to Apple in-house counsel seeing

13  the limited "compromise" merely to assess the offer.  *Id.* ¶ 14.

14    Apple repeatedly urged Plaintiffs to reconsider their position and reminded

15  Plaintiffs that this Court already has cautioned them "to be very judicious in their

16  designation of attorney's-eyes-only information" and do so "as narrowly as possible."

17  Kaounis Decl., Ex. M at 213, 238, *Masimo v. True Wearables* Hr'g Tr. re: Pls.' Mot. to

18  Strike, Dec. 10, 2020 ("Hearing Tr.") at 7:11–12, 32:11.  That was not the first time

19  Masimo has been less than "judicious" with its confidentiality designations.  Another

20  court reprimanded Masimo for similarly overbroad efforts to claim confidentiality,

21  where the confidentiality assertions were "contradicted by Masimo's own papers," and

22  the Court also found those efforts arguably sanctionable.  Kaounis Decl., Ex. N, *In re*

23  *Sotera Wireless, Inc*., Case No. 16-05968-LT11, Dkt. No. 1091, Second Interim Order

24  On Mots. To Seal Documents (Partial Relief) (Sept. 12, 2017) ("Sotera Second Sealing

25  Order") at 250, 258.

26    For the reasons discussed below, continued AEO protection of the Challenged

27  Information is not warranted, and the Court should order Plaintiffs to de-designate that

28  information.  To be clear, Apple disagrees that this information should be designated at

all.  However, solely in the interest of moving this case forward and without prejudice to its ability to revisit this issue at a later date if necessary to defend itself, Apple requests that the Court, at the very least, order Plaintiffs to re-designate the information at issue as "Confidential" only.  This designation, which would require Apple's in-house counsel and personnel to be bound by the terms of the Protective Order, would at least untie Apple's hands enough to permit it to begin fairly defending itself, as it must now that the Court has ruled on Plaintiffs' 2019 Disclosure.

**B.    Plaintiffs' Introductory Statement**

Plaintiffs already agreed that, if it would resolve the dispute, Apple's in-house counsel could access most of the information at issue in the Motion. Apple showed the information to its in-house counsel, but then asserted the offered access would not resolve the dispute. Thus, Apple's in-house counsel has already seen Plaintiffs' trade secret categories and most of the allegations at issue in this Motion. Apple's in-house counsel also has access to Plaintiffs' ESI disclosures. Apple brought this motion anyway.

Apple's motion is not related to preparing its witnesses or its case. Instead, it is a direct attack on the merits of Plaintiffs' trade secrets. Nothing suggests that Apple's in-house counsel needs more access than they have, or that Apple's technical employees need any access to Plaintiffs' contentions. Apple can fully investigate the facts of this case and prepare its witnesses without identifying the information Plaintiffs' allege is their trade secrets. For example, Apple can ask its witnesses about development of components of the Apple Watch, drafting Apple's patents, and information received from Plaintiffs' former employees, without disclosing anything about Plaintiffs' trade secret allegations. Plaintiffs will similarly be able to question Apple's witnesses during depositions and at trial regarding what they did and where they obtained information without disclosing Plaintiffs' contentions regarding their trade secrets.

This Court and Judge Selna have repeatedly rejected Apple's assertion that Apple needs to disclose Plaintiffs' alleged trade secrets to in-house counsel or Apple's technical employees. This Court did so in the Protective Order by excluding Apple's in-

house counsel from accessing Plaintiffs' trade secret disclosure. *See* Kaounis Decl. Ex. AJ (Dkt. 93) at 4-5. Judge Selna rejected a similar attempt by Apple to argue that Plaintiffs could not seal the ***selection*** of material that disclosed Plaintiffs' trade secrets. *See* Katzenellenbogen Decl., Ex. 3 (Dkt. 148). This case is no different than other technology cases between competitors where the parties must rely on sophisticated outside counsel and accept that the parties will not know some information.

Moreover, the restrictions go both ways. Plaintiffs' counsel are constrained by their inability to discuss Apple's technical documents with Plaintiffs' in-house counsel or technical employees. This limits Plaintiffs' ability to obtain valuable input from Plaintiffs' employees about that technology and how it relates to Plaintiffs' trade secrets, including how to explain that Apple's technology uses and was developed with Plaintiffs' trade secrets. While sometimes frustrating, those limitations are reasonable.

With regard to the specific information at issue, Plaintiffs properly designated the categories of technical trade secrets as AEO. Apple asserts the descriptions are not trade secrets in and of themselves, but the AEO tier is not limited to trade secrets. As this Court recently observed in *True Wearables*: "It doesn't even have to be a trade secret to be AEO. That's one ground. It can also be highly confidential or business." Kaounis Decl., Ex. M at 228. The category descriptions are extremely confidential and sensitive information that, if disclosed, would harm Plaintiffs by unfairly allowing Apple or others to focus their research efforts along paths Plaintiffs spent decades identifying. Plaintiffs already allowed Apple's in-house counsel to see this information, and Apple can ask its scientists and engineers how they supposedly developed Apple's technology. Doing so allows Apple to fully investigate the facts and prepare its defense. However, Apple should not be allowed to tell its scientists or engineers what ***Plaintiffs'*** have identified as their trade secrets. Disclosing such information would tell Apple's scientists and engineers where to focus their research to try to learn Plaintiffs' trade secrets.

Apple argues that some of Plaintiffs' designations are improper because Apple's patents contain similar language. But Apple's patents do not identify that material is a

trade secret, much less that it is ***Plaintiffs'*** trade secret. Apple's motion thus improperly seeks judgment on the merits that ***Apple's*** publication rendered Plaintiffs' trade secrets generally known. Apple made and lost this same argument when moving to dismiss Plaintiffs' complaint. Judge Selna held the Court cannot determine, prior to summary judgment, the effect of publication in a patent on Plaintiffs' trade secrets generally known. *See* Katzenellenbogen Decl., Ex. 10 (Dkt. 264) at 7. That is a fact-intensive issue that cannot be resolved on a motion to dismiss, much less a procedural motion to de-designate. Thus, courts properly maintain the secrecy of alleged trade secrets throughout litigation until a final determination on the merits.

Plaintiffs also properly designated images and combinations of images of selected portions of the Apple Watch. Plaintiffs used these images to identify Plaintiffs' trade secrets in specific structures and features of the Apple Watch. Apple concedes that the annotations to the images are properly designated AEO, but asserts that pictures similar to some of the images (without annotations) are public or could be created. Apple does not address that Plaintiffs created and selected only specific images of the Apple Watch, some of which include cut-away portions of the watch that highlight individual features. Apple also ignores that context matters. Plaintiffs' identification of these specific images and combinations of images as illustrating Apple's incorporation of Plaintiffs' trade secrets identifies what Plaintiffs contend are their trade secrets. These are not random pictures or pictures of every component of the Apple Watch. Apple can show its in-house counsel or employees public pictures and ask how the Apple Watch was developed, but Apple cannot disclose Plaintiffs' selection of images or that the images illustrate Plaintiffs' trade secrets.

Finally, Plaintiffs properly designated their ESI disclosure as AEO because it is extremely confidential and sensitive information that identifies Plaintiffs' employees who were involved in developing or otherwise have knowledge of the trade secrets. This information is not public. Apple's arguments again ignore that context matters. While Apple may be able to find public LinkedIn profiles for some employees, Apple would

1   have no way of knowing which of the hundreds of Plaintiffs' employees on LinkedIn

2   are key employees with knowledge of particular trade secrets. Disclosure of this

3   information is likely to harm Plaintiffs by allowing competitors to target and recruit

4   specific employees. This concern is particularly acute with respect to Apple, which has

5   already targeted and recruited key Plaintiffs' employees. Moreover, Plaintiffs agreed

6   that Apple's in-house counsel could have access to the ESI custodian list. There is no

7   reason Apple's other employees would need to see it. As discussed below, all the

8   information at issue was properly designated AEO.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.   ARGUMENT

Consistent with Local Rule 37-2, in this section the parties address their disputes with respect to the information at issue, the text of which is set forth below at the beginning of each section.

**A.   Allegations in the Fourth Amended Complaint**

    **1.   Information at Issue**

| 4th AC | Contested Allegations Designated AEO |
|---|---|
| Headings in Section VI of the 4th AC | ███████████████████████████████<br>███████████████████████████████<br>█████████████████ |
| ¶ 40(10) | [redacted content] |



| 4ᵗʰ AC | Contested Allegations Designated AEO |
|--------|--------------------------------------|
| ¶ 40(11) | |
| ¶ 40(12) | |
| ¶ 40(13) | |
| ¶ 40(14) | |
| ¶ 40(15) | |
| ¶ 42(4) | |
| ¶ 42(5) | |



| 4th AC | Contested Allegations Designated AEO |
|--------|--------------------------------------|
| ¶ 234 | |
| ¶ 235 | |
| ¶ 236 | |
| ¶ 237 | |
| ¶ 241 | |
| ¶ 242 | |
| ¶ 243 | |
| ¶ 244 | |



2.     **Apple's Position**

Apple has been judicious in identifying portions of the 4th AC that should be de-designated. Plaintiffs' purported justifications for designating the information identified in Section I.A–C, *supra*, as AEO fall well short of meeting the PO's AEO standard. This information is indisputably *not* "extremely confidential" or "sensitive 'Confidential Information or Items.'" Furthermore, the disclosure of the information to Apple in-house counsel and Apple personnel is not likely to cause harm or significant competitive disadvantage to Plaintiffs. Plaintiffs' counsels' description of the information as "confidential" or "not public" and their vague and conclusory assertions of harm do not satisfy Plaintiffs' burden of persuasion. Moreover, even if there is a possibility of competitive harm (there is not), the Court must balance that risk against the risk that the AEO designation would "impair prosecution or defense of the claims" in this action. *Nutratech, Inc. v. Syntech Intl, Inc*., 242 F.R.D. 552, 555 (C.D. Cal. Mar. 20, 2007) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992)).

a)     **The Alleged Trade Secret Category Headings Do Not Reveal Confidential Information and Their Disclosure Will Not Harm Plaintiffs**

Plaintiffs' continued AEO designation of the category names of the alleged technical trade secrets is unjustified. Names that merely reflect the broad categories of Plaintiffs' alleged trade secrets—"████████████████████████████████████████████████████████"—do not themselves reveal confidential, let alone extremely confidential, sensitive confidential, or trade secret, information. Nor is their disclosure to Apple in-house counsel or Apple personnel likely to cause harm or significant competitive disadvantage to Plaintiffs. By contrast, Apple continues to be hampered in its ability to adequately defend itself in this litigation—including in collecting documents and interviewing witnesses—while outside counsel is unable to show these broad category names to Apple's in-house counsel and personnel.

Importantly, the Court already concluded that "[e]ach" of the so-called technical trade secret "headings"—" ███████████████████████████████ ███████████████████████████████ "—"is ***certainly not narrow enough to define a clearly identifiable trade secret***."  Kaounis Decl., Ex. AK at 655 (Sealed Order Regarding Motion to Dismiss, Dkt. No. 219) (emphasis added).  The same logic applies to " ██████████████████████████ ," the heading for the fourth "technical" trade secret that was first alleged in the Third Amended Complaint after the Court issued the aforementioned order.

Not only do these headings not reveal a "clearly identifiable trade secret," they do not reveal *any* confidential information at all—much less *extremely* confidential or *sensitive* confidential information that would warrant an AEO designation.  *See* PO § 4.4 (AEO information must be "extremely confidential" or "sensitive 'Confidential Information or Items").  For example, Plaintiffs publicly allege elsewhere in the 4th AC—and every Complaint since the First Amended Complaint (*see, e.g.*, Kaounis Decl., Ex. AH ¶¶ ███████████ (Dkt. No. 28))—that (1) ████████████████████████ ██████████████████ , and/or (2) ██████████████████████████ ██████████ . *See, e.g.*, 4th AC ████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████ .  Once again, Masimo has approached confidentiality assertions "in a haphazard fashion" by "fail[ing] to account for its own public disclosures."  Sotera Second Sealing Order at 246.  And just as in the *Sotera* case, it has attempted to reclaim as confidential information that "Masimo ha[s] either disclosed or allowed to be disclosed."  *Id*. at 252.

*Mitchell International, Inc. v. HealthLift Pharmacy Services, LLC*, is instructive here.  2020 WL 2736094 (D. Utah May 26, 2020), *aff'd*, 2020 WL 5645321 (D. Utah

Sep. 22, 2020).  There, the court considered a de-designation request concerning AEO interrogatory responses that identified broad categories of information.  *Id.* at \*1.  The court concluded that the plaintiff had not met its burden to establish that the responses warranted an AEO designation when they "*merely identif[ied] broad categories of information* and processes that [plaintiff] considers to be trade secrets."  *Id.* at \*2 (emphasis added).  Similarly here, the category names of the alleged technical trade secrets are high level and do not come close to revealing any trade secret information— as this Court has already concluded.  For this reason, disclosure of these headings—in particular to Apple's in-house counsel and personnel—cannot and will not cause competitive harm to Plaintiffs.

Plaintiffs' argument that knowing the headings alone would enable a competitor to determine what Plaintiffs consider to be purportedly valuable trade secrets, Kaounis Decl., Ex. H at 47–48, is baseless for the same reasons—the headings are too broad to reveal anything confidential.  This argument is also not sufficient to overcome the need for Apple's in-house counsel and personnel to see this information to defend this suit.  Indeed, allowing the information to be shared with Apple's in-house counsel and personnel could not create any risk of harm to Plaintiffs.  These individuals will be bound by the terms of the PO, which provides that confidential information "shall be used *solely* for this case . . . and *not* for . . . any business or competitive purpose or function" and cannot "be distributed, disclosed or made available to anyone except as expressly provided in [the PO]."  PO § 5.1 (emphases added).

As discussed further below (in Section III.A.1(b)), outside counsel needs to be able to explain to Apple witnesses the general subject matter of the claimed technical trade secrets at issue.  Identifying witnesses and documents related to this case has been very difficult due to Plaintiffs' overbroad AEO designations.  *See id.*; *see also Mitchell*, 2020 WL 2736094 at \*3 ("Defendants must know broadly what trade secrets are at issue in order to address whether they had access to that information. . . . Those issues can be addressed only by the parties themselves, not by retained experts.").  Plaintiffs do not

Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. to De-Designate   14                   Case No. 8:20-cv-00048-JVS (JDEx)

1  explain how Apple's counsel should interview witnesses and collect documents about
2  ████████ ██ ██████████, for example, if it cannot use the terms
3  "████████████████████" to do so.  Plaintiffs claim they do not object to
4  Apple's outside counsel generally using the terms "████████ █
5  ████████," Kaounis Decl., Ex. L at 199, but they maintain that Apple cannot
6  share even these high-level categories with its witnesses in explaining the claimed trade
7  secrets.  Moreover, Apple personnel undoubtedly will be asked about these topics in
8  deposition, so Plaintiffs' position would lead to an unjust result:  Plaintiffs will be able
9  to question Apple's witnesses about these topics but those witnesses would not know in
10  advance (if at all) that these categories represent Plaintiffs' alleged secrets.

11  The Court should compel Plaintiffs' to withdraw their AEO designation of the
12  headings of their purported technical trade secrets.

13  **b)  Information Published in Patents Is Not Confidential After**
14  **Publication—Let Alone AEO**

15  Ample authority demonstrates that Plaintiffs' attempts to conceal *from Apple*
16  references to *Apple's patents* in paragraphs 40(10)–(15) and 42(4)–(5) of the 4th AC are
17  wholly improper.  Let us not forget that Plaintiffs are accusing Apple of
18  misappropriation based on disclosure of this information—in other words, Apple is
19  allegedly liable for publishing (in Apple patents) the very information that Plaintiffs are
20  concealing.  By definition, *published* patent filings do not contain anything secret.
21  Indeed, long-standing and unequivocal Ninth Circuit case law holds that "[m]atters
22  disclosed in *a patent publication* destroy any trade secret contained therein."  *Henry*
23  *Hope X–Ray Prods., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1342 (9th Cir. 1982)
24  (emphasis added); *see also Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587
25  F.3d 1339, 1355 (Fed. Cir. 2009) ("[I]t is well established that disclosure of a trade secret
26  in a patent places the information comprising the secret into the public domain. ***Once***
27  ***the information is in the public domain and the element of secrecy is gone***, the trade
28  secret is extinguished." (emphasis added)); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d

Gibson, Dunn & Crutcher LLP

520, 528 (N.D. Cal. 2000) ("It is well established that the disclosure of a trade secret in a patent places the information comprising the secret into the public domain."). Because an alleged "trade secret loses its status as a secret when it is made available to the members of the relevant industry," *HiRel Connectors, Inc. v. U.S.*, 2006 WL 3618011, at *10 (C.D. Cal. Jan. 25, 2006), Plaintiffs should not be allowed to continue to assert the AEO designation (or any confidentiality designation) over the portions of their alleged trade secret descriptions they simply copied from Apple's published patent filings. Apple is aware of *no* case holding that a plaintiff may attempt to hold a defendant liable for disclosing a trade secret in a *published* patent (what Plaintiffs seek to do in this litigation) while preventing that defendant from learning the very disclosure at issue, i.e., where in the published patent the secrets are publicly disclosed.

The below chart identifies several irrefutable examples of Plaintiffs having copied their alleged trade secrets, with the exception of minor immaterial changes, nearly verbatim from Apple's ███████ and ███████ into the 4th AC (and Plaintiffs' 2019 Disclosure):[1]



| 4th AC | Contested Allegations Designated AEO | Comparison to Apple's Patents |
|---|---|---|
| ¶ 40(10) | | |

---

[1] The same references in Plaintiffs' 2019 Disclosure (at A(10)–(15) and C(4)–(5)) should be de-designated for the same reasons discussed herein.

Gibson, Dunn & Crutcher LLP



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







In addition, Plaintiffs' allegations in paragraphs 235 and 243 of the 4th AC simply cite to the *locations* in Apple's patents that contain the language Plaintiffs copied from Apple's patents. *See, supra* Section I.A.

It is improper for Plaintiffs to seek to protect the foregoing information as AEO because it is unquestionably in the public domain and already known to Apple. These allegations ipso facto cannot satisfy the first requirement of AEO material, i.e., that they be "*extremely* confidential and/or *sensitive* 'Confidential Information or Items.'" PO § 4.4. Moreover, Plaintiffs expressly allege that certain of their purported trade secrets have been published in Apple's ▮▮▮▮▮ and ▮▮▮▮▮. *See* 4th AC ¶¶ 235, 243. Perhaps more importantly, since the relevant Apple patent filings published, *Plaintiffs* repeatedly cited such documents in their own patent filings *without seeking any confidential treatment*, further underscoring that Plaintiffs never believed the

information therein to be confidential.  *See* Kaounis Decl., Exs. AC, AD, AE, AF, & AG.  And of course, since the relevant patent filings are Apple's own filings, there is no question that in-house Apple lawyers have in fact seen these publications (just as countless other people have).  Plaintiffs' position also has practical implications that endure beyond the prejudice it inflicts on Apple in litigating this case:  Permitting Plaintiffs to designate *Apple's* information as *Masimo's* AEO raises the vexing question of whether Apple is supposed to treat *its* own patent information as Plaintiffs' AEO information after the case has concluded.  If Apple prevails—which it firmly believes it will—would the PO require Apple to nonetheless return or destroy information describing the content of its own patent applications?

Plaintiffs' argument that "the *knowledge* that certain technologies were developed by Plaintiffs is valuable information that Plaintiffs' competitors could use to unfairly compete against Plaintiffs," Kaounis Decl., Ex. H at 46 (emphasis added), is illogical and contradicted by Plaintiffs' own allegations in the 4th AC.  Apple is the owner of the patents in question and its (current and former) employees are listed inventors on those patents.  It is therefore logically impossible that any disclosure *to Apple* of information that is contained in these patents would provide any "knowledge" that Apple does not already possess that it could use "to unfairly compete against Plaintiffs":  Either Apple obtained that patented subject matter from Plaintiffs—which Apple vigorously disputes—and thus *already* knows that it was developed by Plaintiffs, or it did not obtain it from Plaintiffs and Plaintiffs' concerns about such knowledge are irrelevant because Apple independently developed that knowledge.  Moreover, Plaintiffs' public allegation in the 4th AC that their employees ███████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████ █ ████████████████████████, completely contradict their basis for a confidentiality designation—i.e., that mere knowledge they allegedly

developed the technology described in Apple's patents "is valuable information" by virtue of its secrecy—because they themselves have already publicly disclosed that they allegedly developed this technology.  For these reasons, Plaintiffs also cannot satisfy the second requirement of the AEO designation—that "disclosure" is likely to cause them "harm or significant competitive disadvantage."  PO § 4.4.

This Court already has found that such conclusory statements by litigation counsel—attempting to justify overbroad and improper AEO designations—do not satisfy *these Plaintiffs'* burden of persuasion.  *See* Kaounis Decl., Ex. M at 230 (*Masimo v. True Wearables*, Hearing Tr. at 24:4–6 (asking Plaintiffs' counsel, "[i]s there anything from an evidentiary section that supports that [argument regarding disclosure causing an unnecessary risk of harm]?")).  Indeed, it is well settled that "courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" in order to sustain such designations.  8A Wright & A. Miller, Fed. Prac. & Proc. § 2035 (3d ed.).  Here, Plaintiffs have not "successfully carr[ied] the burden of establishing good cause for the confidentiality designations" by (1) demonstrating the "materials fall into one of the[ Protected] categories," (2) showing "a particular need for protection exists," and (3) proffering "*evidence* that a clearly defined and serious injury will result otherwise."  *In re Syngenta Actions*, 2018 WL 309837, at *2 (S.D. Ill. Jan. 5, 2018) (emphasis added; granting motion to de-designate and noting that "Cargill fails to demonstrate the commercial sensitivity of the challenged material, using only generalized conclusory terms to bolster why Cargill would suffer a competitive disadvantage if publicized"); *see also Parsons Xtreme Gold LL v. Taylor Made Gold Co.*, 2018 WL 6242280, at *8 (D. Ariz. 2018) ("Taylor Made's arguments concerning future harm (which are tellingly not substantiated with an affidavit) are largely based on 'mights' and 'ifs' about potential new strategies and designs that either company could theoretically pursue in the future. This is too slender and speculative of a reed on which to deprive PXG's principals of access to important documents in this litigation.").  "[R]hetorical cliche proffered by trial counsel is manifestly inadequate" to

demonstrate "good cause" under the Protective Order or Rule 26(c). *Worldwide Home Prod., Inc. v. Time, Inc.*, 2012 WL 1528533, at *1 (S.D.N.Y. May 1, 2012) ("All that we have been offered is a general and conclusory assertion in defendants' memorandum of law that the agreement contains unspecified 'highly confidential' information and 'sensitive business terms.'").

Plaintiffs also argue that the Court has previously agreed to seal this information and, in the context of finalizing the protective order, did not grant Apple in-house counsel *blanket* access to Plaintiffs' alleged trade secrets. *See* Kaounis Decl., Ex. H at 46. That the Court may have previously agreed to *seal* the Challenged Information that Plaintiffs seek to maintain as AEO is irrelevant because the standard for sealing—i.e., "confidential, privileged, or otherwise protectable," PO § 3—is less stringent than that for an AEO designation, which is reserved for "extremely confidential" or "sensitive 'Confidential Information or Items,'" the disclosure of which is "likely to cause harm or significant competitive disadvantage" to Plaintiffs, *id.* § 4.4. Likewise, the Court's prior denial of in-house counsel's access to the trade secrets writ large does not insulate Plaintiffs from specific challenges to public information that does not merit AEO protection. For example, the Court at that time was not presented with evidence of Plaintiffs' repeated citation to Apple's patents in their own Information Disclosure Statements to the United States Patent and Trademark Office. *See* Kaounis Decl., Exs. AC, AD, AE, AF, & AG. Accordingly, the Court could not have decided "facts or proposal[s] that were not placed before it in the Motion [for a Protective Order]." Kaounis Decl., Ex. AJ at 647 (Order Denying Motion for Reconsideration, Dkt. No. 93).

Also, contrary to Plaintiffs' contentions, Apple is *not* making a merits argument here, i.e., that the information was never Plaintiffs' trade secret. Rather, Apple is making the point that because the information is presently indisputably public, Apple must be able to share it with in-house counsel and Apple employees at this time for the purpose of defending itself against this suit. This is a matter of fairness: Apple has been accused

of taking and disclosing these trade secrets *publicly in patents*, and Apple must be able to see the public information it has been accused of disclosing.

Apple has been and will continue to be hampered in its ability to defend itself without its in-house counsel and Apple personnel being able to see this information in the context of the claims against Apple. The following three practical examples illustrate this point.

*First*, Apple's outside counsel cannot use specific information in Apple's own patents to probe potential witness knowledge or ask potential custodians about documents. Decl. of Joshua Lerner ("Lerner Decl.") ¶ 4. Plaintiffs' position is that Apple cannot focus a potential witness—including the listed *inventors* of Apple's patents—on the alleged secrets in Apple's *own* patent to explain that Apple is accused of misappropriating, for example, the ████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████." 4th AC ¶ 40(10). Naturally, Plaintiffs do not—because they cannot—explain how Apple should ask potential witnesses or custodians about these allegations.

*Second*, Apple's counsel cannot review with Apple or Apple witnesses *any* interrogatory response that (i) cites the relevant portions of Apple's published patents in the context of generally discussing the alleged trade secrets, or (ii) refers to Plaintiffs' high level categories of technical trade secrets. Lerner Decl. ¶ 5; *see supra* Section III.A.1(b) (discussing high level categories). It is therefore unclear how Plaintiffs intend to use these responses during depositions, in potential motions for summary judgment, or at trial.

*Third*, it is indisputable that the inventors listed on the Apple patents in question will be asked about this information in deposition. This illuminates how prejudicial these AEO designations are to Apple: Plaintiffs apparently expect to question Apple

witnesses or third parties—such as, for example, their and Apple's former employee Marcelo Lamego—about specific portions of Apple's patents without those individuals being able to review the information *in the context of Plaintiffs' assertion that those portions of the patents contain Plaintiffs' alleged secrets*. Put differently, Plaintiffs apparently expect Apple's witnesses to guess which information in Apple's patents is purportedly Plaintiffs' misappropriated secrets and what they have been accused of misappropriating. Apple certainly cannot adequately prepare its witnesses under such circumstances because it could not explain to its witnesses which portions of the patents are the subject of Plaintiffs' claim. Alternatively, if Plaintiffs *do* intend to show the specific portions of the patents to those witnesses, then such information cannot be subject to AEO designations. *See* PO §§ 9.2(j) & 9.3. Fundamental fairness requires that this information be de-designated. Again, Plaintiffs' designations would lead to an absurd and unfair result: Apple witnesses would be prevented from knowing which portions of Apple's own patents Plaintiffs allege contain Plaintiffs' trade secrets until (if at all) those witnesses are questioned in deposition about such information.

The Court should order Plaintiffs to withdraw their AEO designation of the allegations identified in foregoing chart (paragraphs 40(10)–(15) and 42(4)–(5) of the 4th AC, and similar information in the 2019 Disclosure), as well as the allegations in paragraphs 235 and 243 of the 4th AC that merely cite to *locations* in Apple's patents.

### c)   Other Pro Forma Allegations Do Not Satisfy AEO Designation Requirements

None of the other allegations from the 4th AC that are at issue (*see supra* Section I.A, citing 4th AC ¶¶ 234, 236–237, 241–242, 244, 247, 250, 253–254, 256, 258) merit an AEO designation—or any designation at all.

These allegations include generic assertions about Plaintiffs' development of their alleged trade secrets (4th AC ¶¶ 234, 237, 242, 254), perfunctory claims of misappropriation by their former employees (Lamego and O'Reilly) which reference the high-level categories of the alleged trade secrets (*id*. ¶¶ 236, 241, 244, 247, 253, 256,

1    258), deductions based on public information (i.e., "███████████████████

2    █████████████████████████████████████████████") (*id.*

3    ¶¶ 236, 244), and high levels of generality as to a relationship with hospitals (*id.* ¶ 250).[2]

4    It is no secret that Plaintiffs attribute purported misappropriation to Lamego and

5    O'Reilly—they repeatedly filed Complaints with public allegations accusing Lamego

6    and O'Reilly of disclosing and/or using their purported confidential information to

7    Apple's benefit. *See, e.g.*, 4th AC ¶¶ 20–25, 58, 72, 86, 101, 117, and 132. These

8    allegations do not reveal Plaintiffs' confidential information, and their disclosure to

9    Apple in-house counsel and Apple personnel is not likely to cause harm or significant

10   competitive disadvantage to Plaintiffs.

11        Once again, during the meet and confer process, Plaintiffs did not provide specific

12   justifications for maintaining these allegations as AEO, thus failing to meet their burden

13   to show that these designations are warranted. *See* Kaounis Decl., Ex. H at 48.

---

[2] ████████████████████████████████████████████████

### 3. Plaintiffs' Position

Plaintiffs' allegations in the Fourth Amended Complaint identify Plaintiffs' trade secrets and other highly confidential and highly sensitive information that, if disclosed, would harm and competitively disadvantage Plaintiffs. Apple asserts that Plaintiffs' allegations **_identifying_** which information is important are somehow public. Apple's arguments are incorrect and ignore that context matters. Part of what is confidential about these allegations is that they identify particular features and technology that Plaintiffs allege are **_Plaintiffs'_** trade secrets.

Apple does not and cannot assert that these allegations regarding the scope and content of Plaintiffs' trade secrets are generally known. Indeed, if those allegations were public, Apple would refer its employees to those public sources. Thus, Apple's request to de-designate confirms that the material Apple seeks to de-designate is **_not_** public. Apple also improperly asks this Court to address the merits of Apple's arguments that Judge Selna previously confirmed are fact intensive issues that cannot be resolved prior to summary judgment.

### a) This Court Has Repeatedly Rejected Apple's Arguments Regarding The Importance Of In-House Access

Throughout its portion of the Joint Stipulation, Apple reargues an issue it repeatedly lost. Specifically, Apple argues that, without access to Plaintiffs' trade secrets, Apple would be "hampered in its ability to adequately defend itself in this litigation—including in collecting documents and interviewing witnesses." Jt. Stip. at 12. Apple already made—and this Court rejected—this same argument many times.

In the Motion for Protective Order, Apple asked the Court to allow in-house counsel access to Plaintiffs' trade secret disclosure because they "need to know the purported trade secrets that Plaintiffs contend were misappropriated" to "advise on strategy—and, more importantly, to guide document collection and production . . . ."

Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. to De-Designate   27          Case No. 8:20-cv-00048-JVS (JDEx)

Ex. 1 (Dkt. 61-1) at 47-48.[3] The Court rejected Apple's position. Ex. AI (Dkt. 67). Apple then filed a motion for reconsideration, arguing in-house counsel needed access for Apple to defend itself. Ex. 2 (Dkt. 72-1). This Court again rejected Apple's position, explaining it considered Apple's "proposal and its supporting evidence and argument on this issue" but disagreed because it "found Plaintiffs' position was well-taken and supported by good cause." Ex. AJ (Dkt. 93) at 5.

Judge Selna also rejected a similar attempt by Apple to argue that Plaintiffs could not seal the **selection** of material that disclosed Plaintiffs' trade secrets. In opposing Plaintiffs' motion for preliminary injunction, Apple cobbled together numerous references in a chart that attempted to show Plaintiffs' trade secret was generally known. Plaintiffs moved to seal the material, and Apple argued Plaintiffs were seeking to seal public information, asserted the request was "frivolous," and asked the Court to sanction Plaintiffs. Ex. 3 (Dkt. 148) at 1, 6. As in this Motion, Apple argued material was not confidential because it had been published in a different context. *Id.* at 3. Plaintiffs explained that Apple ignored the context of its quotations, which addressed what *Plaintiffs* identified as their trade secret. Ex. 4 (Dkt. 149) at 1-2. The Court summarily rejected Apple's position and ordered the clerk to seal Apple's filing. Ex. 5 (Dkt. 152).

Apple argues that Judge Selna's ruling is irrelevant because the standard for sealing information is "less stringent than that for an AEO designation . . . ." Jt. Stip. at 23. To the contrary, the Protective Order suggests that it is not a lower standard. *See* Ex. AI (Dkt. 67) at 2 (designating information under the Protective Order "does not entitle" the parties to file information under seal because Local Rule 79-5 sets forth the relevant procedures). Indeed, the Court rejected Apple's argument that designating information AEO was "presumptively deemed to present good cause for filing under seal." Ex. 1

---

[3] In Plaintiffs' sections of the Joint Stipulation, citations to lettered exhibits are to the exhibits attached to the Declaration of Angelique Kaounis and citations to numbered exhibits are to the exhibits attached to the Declaration of Ben Katzenellenbogen. All emphasis in Plaintiffs' sections is added unless noted otherwise.

(Dkt. 61-1) at 7-8. Regardless of whether the standard is lower, higher, or simply different, Judge Selna's sealing Order appears to reflect a determination that Apple's in-house counsel do not need to see Plaintiffs' trade secret categories for Apple to defend itself.

Apple now asks the Court to contradict these prior rulings by allowing disclosure of this information to in-house counsel, and to further contradict the prior rulings by allowing disclosure of this information to Apple's ***engineers and management***. The Court should reject Apple's attempt to reargue this issue for the third time.

Apple also directly challenges the need for an AEO tier by asserting that "Apple's in-house counsel and personnel could not create any risk of harm to Plaintiffs" because the Protective Order "provides that confidential information 'shall be used *solely* for this case . . . and *not* for . . . any business or competitive purpose or function . . . .'" Jt. Stip. at 14 (citing PO § 5.1). If that were sufficient, there would be no need for an AEO (or Source Code) designation. As discussed, Apple made, and lost, similar arguments when the parties briefed the terms of the Protective Order. *See* Ex. 1 (Dkt. 61-1), Exs. AI & AJ (Dkts. 67 & 93), Ex. 2 (Dkt. 72-1). Even if Apple's employees have the best of intentions, the Protective Order prohibits Apple's in-house counsel and engineers from having access to Plaintiffs' trade secrets and other highly confidential information based on the risk of ***inadvertent*** use or disclosure.

### b)   Plaintiffs' Trade Secret Categories Are Properly Designated AEO

Plaintiffs properly designated as AEO their description of four categories of technical trade secrets at issue. Apple's arguments regarding whether the phrases constitute separately protectable trade secrets in and of themselves are beside the point. Information does not have to be trade secrets to be AEO. Under the Protective Order, information is properly designated AEO if it is extremely confidential or sensitive and disclosing it to another party or non-party is likely to cause harm or significant competitive disadvantage. Ex. AI (Dkt. 67) ¶ 4.4.

Plaintiffs' identification of these four categories of Plaintiffs' trade secrets is extremely confidential and sensitive because it identifies critical areas in which Plaintiffs have developed trade secrets. Disclosing that information to Apple, or third parties, is likely to cause harm or significant competitive disadvantage to Plaintiffs because this information would provide a roadmap for competitors to focus their competitive research on these specific areas. Disclosing these categories would also motivate Apple and other competitors to scour public exhibits and documents in this case in an attempt to uncover Plaintiffs' trade secrets.

As the Sixth Circuit explained: "Facts of great value may, like the lost purse upon the highway, lie long unnoticed upon the public commons. Hundreds pass them by, till one more observant than the rest makes discovery." *A.O. Smith Corp. v. Petroleum Iron Works Co. of Ohio*, 73 F.2d 531, 539 (6th Cir. 1934) (affirming trade secret finding). Identifying the categories of trade secrets is analogous to a large neon sign above the lost purse saying "Look Here!" Apple is using this discovery motion to try to be able to tell its scientists and engineers where to look for Plaintiffs' trade secrets.

Disclosing Plaintiffs' identification of the categories of Plaintiffs' trade secrets would give Apple and other competitors an unfair head start in developing competing "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" by telling them where to focus their research and which aspects of the technology are important. Diab Decl., ¶¶ 6-7. Moreover, Plaintiffs' trade secrets include identifying the value, importance, and appropriateness of each of their trade secret techniques. Diab Decl., ¶ 5. Courts recognize that, in addition to the underlying trade secrets, "knowledge of the particular process, method or material which is most appropriate to achieve the desired result may itself be a trade secret[.]" *Head Ski Co. v. Kam Ski Co.*, 158 F. Supp. 919, 923 (D. Md. 1958); *see O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*, 420 F. Supp. 2d 1070, 1089 (N.D. Cal. 2006) (knowledge of the "optimal" configuration of known elements was a trade secret). Plaintiffs' properly

designated as AEO their identification of the trade secret categories because that information reflects Plaintiffs' knowledge of which techniques, processes, and methods are most appropriate to achieve the desired results. Diab Decl., ¶ 5.

For example, one of Plaintiffs trade secrets is ███████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████ Ex. 6 (4ᵗʰ AC) ¶ 41.5. Disclosing to Apple or others that Plaintiffs' trade secrets relate to ████████████████████████████ would reveal that Plaintiffs believe such techniques are of particular importance. This would provide critical information to Plaintiffs' competitors because few competitors focus as much attention on such techniques. Diab Decl., ¶ 7.

Apple and other competitors should not be allowed to use Plaintiffs' allegations as a roadmap to identify information that Plaintiffs learned was important through decades of research. *See id.* ¶¶ 6-7, 12. Nor should Apple be able to use filings in this case to try to piece together Plaintiffs' trade secrets. Plaintiffs' identification of these categories of Plaintiffs' trade secrets constitute extremely confidential and/or sensitive information, the disclosure of which is likely to cause harm or significant competitive disadvantage to Plaintiffs and are properly designated AEO. *See id.*; Ex. AI (Dkt. 67) ¶ 4.4.

Some of the words in these descriptive categories appear in public disclosures. The fact that Apple is not content to rely on the public disclosures confirms that even Apple recognizes there is a meaningful difference between the information in the public disclosures and the information in Plaintiffs' trade secret categories. If, as Apple asserts, these four headings were "too broad to reveal anything confidential[,]" then they would also be too broad to be of any tactical or strategic importance to Apple. Apple's assertion that revealing Plaintiffs' identification of these specific category descriptions to Apple employees would help Apple prepare its case belies Apple's claims of public

availability. Apple's arguments confirm that disclosing Plaintiffs' identification of these four phrases as describing Plaintiffs' trade secrets would convey substantively meaningful information that is not available from public sources. This is precisely why Apple wants to, but should not be allowed to, share this information with Apple's technical employees or other witnesses.

Apple's briefing also does not clearly acknowledge that ***Plaintiffs already allowed Apple to show these category descriptions to Apple's in-house counsel*** via videoconference and offered to allow Apple's in-house counsel general access to this information if it would resolve the dispute. Katzenellenbogen Decl. ¶¶ 8-9 & Exs. 7 & 8. Thus, Apple's in-house counsel already knows that Plaintiffs asserts trade secrets in these categories and can already use this information to help prepare Apple's case. Apple faults Plaintiffs for not initially permitting in-house counsel to view the material. Jt. Stip. at 12-13. But Plaintiffs were offering Apple a ***compromise*** to resolve this dispute and reasonably did not want to provide Apple with their end of the bargain without receiving any assurance it would resolve the dispute.

Apple also asserts that, "Plaintiffs do not explain how Apple's counsel should interview witnesses and collect documents about ████████████████████, for example, if it cannot use the terms '████████████████████' to do so." Jt. Stip. at 14-15. Plaintiffs need not explain to Apple's sophisticated counsel how to prepare Apple's case while complying with the terms of a protective order. More importantly, Apple recognizes in the immediately following sentence that its concern is unfounded because Plaintiffs told Apple long ago that they "***do not*** object to Apple's outside counsel generally using the terms '████████████████████'" as long as they do not use the terms in a way that identifies Plaintiffs' trade secrets or categories of trade secrets. *Id.* at 15 (emphasis added). Apple is welcome to ask its witnesses how Apple obtained or developed all aspects of its technology, including its ███████████ ████████████ technology, who is knowledgeable about such issues, and where the corresponding documents are located. What Apple cannot do, and what Apple has no

1   reason to do, is tell Apple employees that Plaintiffs have identified that Plaintiffs have

2   ████████████████████████ trade secrets, or that Plaintiffs have asserted such trade

3   secrets in this case. That would improperly disclose to Apple's employees Plaintiffs'

4   identification of the value and importance of focusing on this technology.

5           Apple is correct that, "Apple personnel undoubtedly will be asked about these

6   topics in deposition . . . ." *Id.* Apple can prepare its witnesses to testify about the

7   historical facts without disclosing to its witnesses what Plaintiffs contend are Plaintiffs'

8   trade secrets. Similarly, Plaintiffs can "question Apple's witnesses about these topics"

9   without disclosing Plaintiffs' trade secret information. *See id.* It may turn out that

10  Apple's witnesses "would not know in advance (if at all) that these categories represent

11  Plaintiffs' alleged secrets." *Id.* That would be entirely proper and would not "lead to an

12  unjust result" as Apple claims. Apple's witnesses will properly be deposed about the

13  ***facts***, not their opinions or counsel's rebuttal arguments to Plaintiffs' legal contentions

14  regarding the scope of Plaintiffs' trade secrets. The facts do not depend on the legal

15  arguments that Plaintiffs or Apple will make. Apple's fact witnesses need not know

16  whether their testimony lines up with Apple's legal arguments.

17          While the precise scope of the showing required to designate information AEO

18  can differ from case to case based on the terms of the applicable protective order, a

19  decision from a district court in the Third Circuit is instructive. *See Scranton Prod., Inc.*

20  *v. Bobrick Washroom Equip., Inc.*, 190 F. Supp. 3d 419, 440 (M.D. Pa. 2016). In

21  *Scranton*, the court found an "AEO designation of the four words at issue" was proper.

22  *Id.* Although the four words were not themselves a trade secret, the short phrase at issue

23  was sufficiently related to the alleged trade secrets as to warrant AEO protection. *See id.*

24  The court held that the "four words which relate to the design, manufacturing,

25  composition, and construction of [plaintiff's trade secrets] qualifies as information

26  related to 'confidential research and development, or other confidential technical

27  information' such that its designation as AEO is proper[.]" *Id.* The same is true here.

28  Plaintiffs short descriptive phrases identify information not available to the public,

namely Plaintiffs' identification of their trade secrets categories at issue in this case. This information is properly designated AEO because it would convey to competitors where to focus their efforts by allowing them to piggyback on the decades of research that informed Plaintiffs' focus on these areas.

Apple's reliance on *Mitchell Int'l, Inc. v. HealthLift Pharmacy Servs., LLC*, 2020 WL 2736094, at *2 (D. Utah May 26, 2020), *aff'd*, 2020 WL 5645321 (D. Utah Sept. 22, 2020), is misplaced. The court began by recognizing that "courts routinely allow documents containing trade secrets to be designated as 'attorneys' eyes only' in litigation between competitors." *Id.* at *1. Although the case involved designation of "broad categories" that did not qualify for AEO protection, those categories were much broader and far less descriptive than the trade secret categories at issue here. The interrogatory responses at issue stated the plaintiff "uses algorithms to make certain determinations and identifies the algorithms as a trade secrets, but the algorithms themselves are neither included nor described in detail." *Id.* at *2. The responses also identified "documents and electronic files purportedly containing trade secrets, but do not provide the contents of those documents or files." *Id.* Nothing suggested that the information in the interrogatory response in *Mitchell* identified the type of trade secret algorithms, or that a competitor could use the statements to research and potentially identify the trade secret algorithms. Thus, there was no risk of harm. The four phrases at issue here are much more specific and identify categories of Plaintiffs' trade secrets in sufficient detail that disclosing them to Apple or third parties would harm Plaintiffs. *See* Diab Decl., ¶¶ 4, 6-7. Moreover, *Mitchell* observed that the interrogatory responses at issue "do not provide ***any*** actual, underlying data or a detailed description of the processes." *Mitchell*, 2020 WL 2736094, at *2 (emphasis added); *see also id.* (observing the "interrogatory responses contain nothing akin to technical or financial data, algorithms, or software codes"). Thus, the broad categories in *Mitchell* were provided in lieu of, not in addition to, identification of more specific trade secrets. That is not the case here. Thus, *Mitchell* is inapplicable for numerous reasons.

Apple's arguments reflect two legally improper approaches. First, Apple disputes the established legal premise that information can be "hidden in plain sight." Apple is wrong. Trade secrets can include information that was "long unnoticed upon the public commons" until, through decades of research, "one more observant than the rest makes discovery." *See A.O. Smith*, 73 F.2d at 539. Knowing a technique is worth investigating because it will work in particular circumstances is also protectable. *See Head Ski*, 158 F. Supp. at 923 ("knowledge of the particular process, method or material which is most appropriate to achieve the desired result may itself be a trade secret"). Knowing the approaches that ***Plaintiffs*** employ would be particularly valuable to competitors because Plaintiffs spent decades developing the industry leading technology.

Arguing that someone else, through decades of their own research, could also have discovered the importance of Plaintiffs' categories of trade secrets does not render that information generally known or make any step along the path to its discovery less confidential. Contrary to Apple's suggestion, a trade secret need not appear "patentably nonobvious or novel." *Imi-Tech Corp. v. Gagliani,* 691 F. Supp. 214, 231 (S.D. Cal. 1986). That "misconceive[s] what constitutes a trade secret." *By-Buk Co. v. Printed Cellophane Tape Co.*, 163 Cal. App. 2d 157, 166 (1958). A trade secret need not "be patentable or be something that could not be discovered by others by their own labor and ingenuity." *Id.* "The character of the secrets" is "not material." *Id.* at 164. What matters is whether a trade secret is "important to the business" and "kept secret by the one who claims it." *Id*. at 164, 166. Plaintiffs' trade secret categories are both important to their business and kept secret. *See* Diab Decl., ¶ 5.

Second Plaintiffs are concerned that, if Apple were allowed to disclose aspects of Plaintiffs' trade secrets in various filings, Apple could later try to cobble together those disclosures to argue that additional material is "public" and should be unsealed. Indeed, the Court found that Apple improperly failed to redact Plaintiffs' trade secrets in one filing. *See* Ex. 5 (Dkt. 152). The Court should not allow Apple to publicize individual

1  pieces of information through this litigation, much less allow Apple to argue that the

2  totality of Apple's disclosures affects the enforceability of Plaintiffs' trade secrets.

3  For all of the reasons discussed above, Plaintiffs four categories of trade secrets

4  are properly designated as AEO.

### c)  Apple's Patents Do Not Affect The Enforceability Of Plaintiffs' Trade Secrets

7  Apple next asks this Court for a determination that disclosures in Apple's patents

8  destroyed some of Plaintiffs' trade secrets such that Plaintiffs cannot properly designate

9  the material. Judge Selna already rejected that argument. Months ago, Apple sought to

10 dismiss Plaintiffs' allegations regarding trade secrets that Apple improperly disclosed in

11 Apple's patents. *See* Ex. 9 (Dkt. 241) at 5-7. Apple made the same argument it makes

12 here; namely that anything disclosed in a patent is no longer a trade secret as a matter of

13 law. *See id.* Judge Selna rejected Apple's argument and held that whether information

14 is generally known is a factual issue that cannot be determined on a motion to dismiss.

15 *See* Ex. 10 (Dkt. 264) at 7. Judge Selna held that "the Court will not undertake a

16 summary judgment-like review of the patents at issue in comparison to the alleged trade

17 secret information to determine whether information has been made public, particularly

18 at the pleading stage where all inferences are to be drawn in Plaintiffs' favor." *Id.*

19 (quoting *MACOM Tech. Sols. Inc. v. Litrinium, Inc.*, 2019 WL 4282906, at *7 (C.D. Cal.

20 June 3, 2019)). It would be similarly improper to make such a "summary judgment-like"

21 determination on a procedural motion to de-designate under the Protective Order. *See*

22 *id.*

23 Apple's arguments on the merits are inappropriate on this procedural motion

24 because, as Apple's previously cited authority explains, the issue of public disclosure in

25 a patent is a factual issue "for the *jury* to decide." *Atl. Research Mktg. Sys., Inc. v. Troy*,

26 659 F.3d 1345, 1357 (Fed. Cir. 2011) (emphasis added). Mere publication does not

27 establish that information is "generally known" under California law, such that the

28 information is not a trade secret. *See* Cal. Civ. Code § 3426.1(d); *Kittrich Corp. v.*

Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. to De-Designate   36   Case No. 8:20-cv-00048-JVS (JDEx)

*Chilewich Sultan, LLC*, 2013 WL 12131376, at *4 (C.D. Cal., Feb. 20, 2013) (publication on the Internet does not necessarily destroy information's status as a trade secret).

Apple also fails to establish that anyone would have selected these Apple patents (from among the thousands of patents in this field) as being particularly important, and then focused on specific portions (from among the dozens of columns of text in the patents) as providing critical information. Using hindsight knowledge of a trade secret to assert that a patent discloses all the details of the trade secret, where the patent does not disclose the importance or criticality of the information recognized by the trade secret owner, does not establish that the trade secret is generally known. *See A.O. Smith*, 73 F.2d at 539 (trade secrets can include information that others could have identified); *Imi-Tech,* 691 F. Supp. at 231 (trade secrets do not have to be "patentably nonobvious or novel"); *By-Buk*, 163 Cal. App. 2d at 166.

Moreover, this Court does not have to, and indeed could not properly, resolve the merits of Apple's arguments on this issue. Determining whether information is not a trade secret "requires a fact-intensive analysis" to show that the information is generally known. *Kittrich,* 2013 WL 12131376, at *4. California law directs courts to "preserve the secrecy of an ***alleged*** trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings" during litigation. Cal. Civ. Code § 3426.5 (emphasis added). Accordingly, the Court should protect Plaintiffs' alleged trade secrets from disclosure unless and until Judge Selna or the jury determines on the merits that the alleged trade secrets are generally known.

Apple does not address Judge's Selna's prior ruling or attempt to explain why Apple is now seeking an inconsistent ruling. Apple's motion disregards Judge Selna's ruling that, "to the extent that a defendant believes that an alleged trade secret is already disclosed by patents . . . ***the appropriate time to raise such an argument is during summary judgment***." Ex. 10 (Dkt. 264) at 7 (emphasis added). Judge Selna explained that, "'[w]hether the alleged trade secrets are actually generally known to the public is a

1    *question of fact* and ***beyond the scope of a motion to dismiss***.'" *Id.* (emphases added)

2    (quoting *MACOM*, 2019 WL 4282906, at *7  (citing *Nelson Bros. Pro. Real Estate LLC*

3    *v. Jaussi*, 2017 WL 8220703, at *5 (C.D. Cal. Mar. 23, 2017))). Judge Selna's holding

4    also means that such determinations regarding the merits are beyond the scope of a

5    procedural motion to de-designate.

6         Judge Selna further observed that postponing merits decisions regarding

7    assertions of general knowledge "allows discovery's 'iterative process[,] where requests

8    between parties lead to a refined and sufficiently particularized trade secret

9    identification,' to run its course." *Id.* (alterations in original) (quoting *InteliClear, LLC*

10   *v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir. 2020). Judge Selna's ruling

11   was consistent with the Court's prior determination in *MACOM* that courts can take

12   judicial notice of the "existence" of patents but "not the disputed fact that they contain

13   information rendering it implausible that Plaintiffs' allege the existence of trade secret

14   information[.]"). *MACOM*, 2019 WL 4282906, at *7. Because patents are "highly

15   technical," courts are "in no position on a motion to dismiss to sift through patent

16   applications and discern whether they fully disclose everything about [the trade secret]."

17   *Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 2018 WL 2558388, at *5 (C.D. Cal.

18   Feb. 27, 2018). Courts are similarly in no position to make such determinations on

19   procedural motions regarding confidentiality designations.

20        Without mentioning Judge Selna's ruling on the motion to dismiss, Apple tries to

21   evade Judge Selna's analysis by asserting that, "Apple is *not* making a merits argument

22   here, i.e., that the information was never Plaintiffs' trade secret." Apple asserts that,

23   because it is arguing that "the information is presently indisputably public" it is not

24   seeking a determination on the merits. Jt. Stip. at 23 (emphasis in original). Apple is

25   wrong for three reasons.

26        First, the standard for negating a trade secret under California law is whether the

27   information is generally known, not whether it is amorphously "public."  *See* Cal. Civ.

28   Code § 3426.1(d) (West 2021).

Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. to De-Designate    38            Case No. 8:20-cv-00048-JVS (JDEx)

Second, asking the Court to determine the present status of Plaintiffs' trade secrets is asking for a substantive decision on the merits. Apple is seeking a merits determination of whether Apple's patents necessarily render the information ineligible for trade secret protection. Judge Selna's prior ruling establishes this fact-intensive question cannot be resolved before summary judgment.

Third, Apple's assertion that the present status of Plaintiffs' trade secrets is irrelevant to the merits of this case would make its requested determination even less appropriate. If the determination were irrelevant to the merits of this case, then Apple would be seeking an impermissible advisory opinion regarding the merits of Plaintiffs' ability to enforce their trade secrets against third parties in future cases.

Apple argues that Plaintiffs filed Information Disclosure Statements with the Patent Office that identified the patent numbers of Apple's patents. Jt. Stip. at 20-21, 23. Citing a patent number in an Information Disclosure Statement—along with hundreds of other patent numbers—does not disclose that the patent contains a trade secret, much less a trade secret that would be valuable to the industry because it belongs to Plaintiffs. *See A.O. Smith*, 73 F.2d at 539 (trade secrets can include information that others could have identified); *Imi-Tech,* 691 F. Supp. at 231 (trade secrets do not have to be "patentably nonobvious or novel"). Moreover, this is another argument regarding the merits that cannot be resolved on this procedural motion. The extent to which Plaintiffs' patent citations conveyed information to the public, the scope of that information, and whether any information became generally known, are all factual issues for trial.

Apple cites four cases, but each addressed the fact-intensive issue of the effect of publication on the enforceability of trade secrets after ***trial*** or on ***summary judgment***. *See Henry Hope X-Ray Prods., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336 (9th Cir. 1982) (affirming determining after trial that trade secrets were not disclosed in plaintiff's patents); *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339 (Fed. Cir. 2009) (affirming summary judgment that alleged trade secrets were disclosed in foreign patent); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520 (N.D. Cal. 2000)

1   (summary judgment); *HiRel Connectors, Inc. v. U.S.*, 2006 WL 3618011 (C.D. Cal. Jan.

2   25, 2006) (summary judgment). Thus, Apple's own cited authority proves Plaintiffs'

3   point: determining whether information is protectable as a trade secret is a merits

4   decision for summary judgment or trial.

5       Apple also ignores how inequitable it would be for Apple—the party who

6   improperly published Plaintiffs' information—to be able to use its own improper

7   conduct as a reason to further identify and highlight Plaintiffs' trade secrets. Indeed,

8   Judge Selna found the same case Apple cites here, *HiRel Connectors, Inc. v. Department*

9   *of Defense of the United States*, 2005 WL 4958547 (C.D. Cal. Jan. 4, 2005), inapplicable

10  with respect to "a known misappropriator" like Apple. Ex. 10 (Dkt. 264) at 10.

11      Apple also argues that this Court should reject Plaintiffs' confidentiality

12  designations because another court in *Sotera* found that Plaintiffs did not "'account for

13  its own public disclosures.'" Jt. Stip. at 13 (quoting "Sotera Second Sealing Order at

14  246"). Apple ignores that the *Sotera* decision came after trial on the merits where the

15  court (incorrectly) determined that Masimo had publicly disclosed certain material. Prior

16  to trial, the *Sotera* court sealed all of Masimo's confidential information. Far from

17  supporting Apple's position, Apple's citation to *Sotera* confirms that Apple's arguments

18  are premature and Plaintiffs' alleged trade secrets should remain AEO at least through

19  resolution on the merits.

20      Thus, Apple's cited cases are all consistent with Judge Selna's determination that

21  the effect of publication on the status of a trade secret is a fact-intensive merits issue that

22  cannot be resolved prior to summary judgment. *See* Ex. 10 (Dkt. 264) at 7. Apple's cases

23  are also consistent with the decisions of other district courts in California that have

24  similarly concluded that asking "the court to conduct a review of the evidence to

25  determine whether plaintiffs' trade secrets have been made public" is not a procedural

26  issue and "[t]his sort of review is more appropriate on a motion for summary judgment."

27  *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 WL

28  2463869, at *6 (E.D. Cal. June 1, 2018).

Accordingly, Plaintiffs' trade secrets are properly designated AEO. The time for the Court to address Apple's incorrect arguments regarding the effect of Apple's patents will be when the Court addresses the merits.[4]

### d) Plaintiffs' Other Allegations Were Properly Designated But Could Be Disclosed If Sufficiently Redacted

Apple asserts that contextual allegations in twelve paragraphs of the Fourth Amended Complaint regarding the trade secret information discussed above are not independently highly confidential. Plaintiffs designated Paragraphs 234, 236, 237, 241, 242, 244, 247, 250, 253, 254, 256, and 258 of the Fourth Amended Complaint as AEO because they refer and relate to Plaintiffs' trade secrets and it would be needlessly burdensome for the parties to try to parse the confidentiality of individual words within sentences containing highly confidential trade secret information.

Indeed, almost all of the allegations at issue here contain one or more of the trade secret categories discussed above. Such material should be sealed for the same reasons discussed above. *See* Section II.A.3.b, *supra*. Such material is shown below:



---

[4] Apple incorrectly asserts that Plaintiffs designated "*Apple's* information as *Masimo's* AEO." Jt. Stip. at 21. Plaintiffs did no such thing. Plaintiffs designated Plaintiffs' trade secret information as AEO. Apple's disclosure of Plaintiffs' information in a patent does not make it Apple's information.

Gibson, Dunn & Crutcher LLP



Apple also fails to acknowledge that, during the meet-and-confer process, Plaintiffs agreed that Apple could disclose to its in-house counsel *all* of the challenged allegations above. Again, Apple has not explained why its technical employees need access to this material.

1   Thus, the dispute appears to focus on the following allegations from Paragraphs

2   236 and 244, which Plaintiffs designated AEO because they identify the Apple patents

3   that contain Plaintiffs' trade secrets.



12   Plaintiffs' allegations regarding the patents that contain Plaintiffs' trade secrets

13   identifies where to find Plaintiffs' trade secrets less precisely than Plaintiffs' allegations

14   regarding the particular portions of those patents that contain Plaintiffs' trade secrets.

15   However, the passages from paragraphs 236 and 244 are properly designated AEO based

16   on what they disclose in the context in which they appear in the complaint. Highlighting

17   to Apple or Plaintiffs' other competitors that these Apple patents include trade secrets

18   belonging to Plaintiffs would provide them with extremely valuable information

19   regarding where to look for Plaintiffs' trade secrets. *See A.O. Smith*, 73 F.2d at 539;

20   *Head Ski*, 158 F. Supp. at 923; *Imi-Tech,* 691 F. Supp. at 231. Plaintiffs would be harmed

21   by disclosure of such highly confidential information and properly designated these

22   allegations AEO. *See* Diab Decl., ¶ 9. There is no reason Apple's fact witnesses would

23   need to see any of these allegations.

24   To the extent the Court prefers that the parties designate AEO information at a

25   sub-sentence level of specificity, Plaintiffs would request that the information discussed

26   above (identification of trade secret categories, identification of Apple Patents disclosing

27   Plaintiffs' trade secrets, and identification of portions of Apple Patents containing

28   Plaintiffs' trade secrets) remain designated AEO. In the chart below, brackets indicate

trade secret information discussed above, which should remain AEO, and ellipses indicate allegations Apple is not seeking to de-designate.



Gibson, Dunn & Crutcher LLP



¶ 258

### e) Apple's Requested De-Designation Would Harm Plaintiffs

Apple also disputes that Plaintiffs would be harmed by disclosing their trade secrets to Apple. Apple asserts its employees already know all the information in Apple's patents. Apple argues that it is "logically impossible that any disclosure *to Apple* of information that is contained in these patents would provide any 'knowledge' that Apple does not already possess that it could use 'to unfairly compete against Plaintiffs[.]'" Jt. Stip. at 21. That is false for multiple reasons. Apple's misappropriation of Plaintiffs' trade secrets by disclosing them in patents does not disclose to Apple what in those patents Plaintiffs consider a trade secret. Indeed, Apple "vigorously disputes" that any subject matter in those patents came from Plaintiffs. Jt. Stip. at 21. Apple cannot argue its employees "already know" which information came from Plaintiffs while disputing that any information came from Plaintiffs. Moreover, Apple's argument that others could have reviewed the text of Apple's patents does not support disclosing that Plaintiffs have identified specific portions as corresponding to Plaintiffs' trade secrets. *See A.O. Smith*, 73 F.2d at 539; *Imi-Tech*, 691 F. Supp. at 231. Apple is again arguing that, because the purse was available for others to have noticed, Apple should be allowed to erect a neon sign saying "Look Here!" That would improperly disclose Plaintiffs highly confidential information.

In the absence of the additional context that Apple wants to disclose—this specific information is important because it comes from Plaintiffs—there is no reason Apple or any other competitor would take notice of particular information in Apple's patents. Nor is there any reason to believe that any, much less all, of Apple's current engineers know

which of the information in those patents Plaintiffs consider important. Lamego may have disclosed some of Plaintiffs' trade secrets without identifying them as significant to Plaintiffs. Moreover, to the extent some Apple engineers had knowledge of some of Plaintiffs' trade secrets when the patents were filed, that would not mean all of Apple's engineers currently know all of Plaintiffs' asserted trade secrets. De-designating information identifying Plaintiffs' trade secrets would allow Apple to freely circulate this information among a wider group of Apple's engineers.[5]

Apple also argues that this Court and other courts have required evidence supporting that disclosure would cause an unnecessary risk of harm and cites to a transcript from a hearing in the *True Wearables* case. Jt. Stip. at 22 (citing Ex. M at 230 at 24:4–6). Apple omits this Court's preceding observation during the hearing that emphasizes trade secrets are at the heart of what should be designated AEO: "It doesn't even have to be a trade secret to be AEO. That's one ground." Ex. M at 228 at 22:19-20. Disclosure of Plaintiffs' trade secrets to Apple would likely cause harm or significant competitive disadvantage to Plaintiffs precisely because it would result in disclosure of the trade secret to a direct competitor. Moreover, Plaintiffs' arguments are supported by a declaration from Mohamed Diab, one of Masimo's co-founders, establishing that disclosure of this information would unnecessarily risk harm to Plaintiffs. Diab Decl., ¶¶ 1, 9. Thus, Plaintiffs have established the risk of harm or competitive disadvantage required by the Protective Order.

---

[5] Apple also argues that ███████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████. Moreover, whether ██████████████████████ or any other allegations makes the information publicly known is part of the same fact-intensive merits inquiry that cannot properly be resolved on this Motion.

### f)      There is Nothing Unusual or Unfair About Parties Having to Rely on Sophisticated Outside Counsel

Plaintiffs fully recognize that, as in many technology cases between competitors, the Protective Order imposes limitations on outside counsel that make their job more complicated. It would be much easier for Plaintiffs' counsel if they could freely discuss Apple's technical information with Plaintiffs' in-house attorneys and technical employees. Instead, Plaintiffs' counsel has to rely on their own technical backgrounds and outside experts. That process is sometimes cumbersome and inconvenient. As this Court recently observed in *True Wearables*, the Protective Order "does make things more difficult." Ex. M at 213 at 7:8-9; *id.* at 7:9-10 (reiterating that "[i]t makes things more difficult."). However, the restrictions in the Protective Order are "there for a reason." *Id.* at 7:4-5. The restrictions protect each side's highly confidential information while enabling full disclosure in discovery and facilitating resolution on the merits. *See id.* at 7:6-8 (discussing purpose of a protective order as "to protect competitive harm" and providing "access to the courts" without requiring litigants to "turn over their crown jewels to competitors").

Moreover , the Protective Order "applies to both sides" and "goes both ways." *Id.* at 7:5, 7:9. As this Court explained, "[w]hen you have a case like this with attorneys-eyes-only designations for what's probably going to be very important information to both sides, this is an issue that's going to constantly be boomeranging back one way." *Id.* at 237 at 32:4-8. The inconvenience to outside counsel, and the frustration of in-house counsel at not knowing all the details of the case, affects both sides.

As other courts in this circuit have recognized, "[r]equiring a party to rely on its competent outside counsel does not create an 'undue and unnecessary burden.'" *See Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000) (rejecting Intel's request to allow its in-house counsel access to highly confidential material because Intel was represented by competent outside counsel); *see also CytoSport, Inc. v. Vital Pharm., Inc.*, 2010 WL 1904840, at *2 (E.D. Cal. May 10, 2010) (rejecting request for outside

counsel to view confidential material because "it is not enough that the Protective Order merely increases the difficulty of managing the litigation" and forcing a party to "rely on competent outside counsel does not create an 'undue and unnecessary burden,' sufficient to demonstrate actual prejudice"). Here, both sides have sophisticated outside counsel who are very experienced at advising their clients in technology cases without revealing information that has been designated AEO. There is nothing unique about this case that would necessitate de-designating Plaintiffs' AEO material.

Apple also makes various incorrect assertions regarding why Apple supposedly "must be able to share [Plaintiffs' legal contentions] with in-house counsel and Apple employees at this time for the purpose of defending itself against this suit." Jt. Stip. at 23. As discussed above, this Court and Judge Selna have repeatedly rejected this argument. Apple's present argument is also inconsistent with Apple's prior assertion (when trying to exclude Plaintiffs' lead counsel from seeing AEO material) that "[t]he availability of competent outside counsel is typically sufficient to defeat any claim that exclusion of in-house counsel would unduly prejudice the nonmoving party." Ex. 1 (Dkt. 61-1) at 46. Apple employees can review with counsel the development of the Apple Watch and development of the Apple patents. However, Apple's litigation counsel should not be allowed to disclose Plaintiffs' identification of trade secret categories or Plaintiffs' identification of specific patents, much less specific portions of those patents, as containing Plaintiffs' trade secrets. Again, Apple should not be allowed to erect signs identifying where to look for Plaintiffs' trade secrets. *See A.O. Smith*, 73 F.2d at 539; *Imi-Tech*, 691 F. Supp. at 231.

Apple makes three specific assertions regarding why it supposedly could not possibly litigate this case if the Court were to continue protecting Plaintiffs' alleged trade secrets. First, Apple asserts that "Plaintiffs do not—because they cannot—explain how Apple should ask potential witnesses or custodians about these allegations." Jt. Stip. at 24. Apple can easily ask its witnesses to explain how Apple allegedly developed or contributed to Apple's patents or the Apple Watch, who was involved, and where to

1    locate any related documents. Apple can similarly ask about the information Plaintiffs'

2    former employees provided to Apple and what Apple's employees learned from Lamego

3    and others. Identifying that factual information does not require disclosing to anyone at

4    Apple anything about Plaintiffs' legal contentions or the information that Plaintiffs

5    allege is Plaintiffs' trade secrets.

6         Second, Apple asserts that, because Apple's counsel cannot review with Apple

7    witnesses interrogatory responses that contain Plaintiffs' trade secrets, "[i]t is therefore

8    unclear how Plaintiffs intend to use these responses during depositions, in potential

9    motions for summary judgment, or at trial." Jt. Stip. at 24. This argument makes no

10   sense. Plaintiffs do not intend to use their own interrogatory responses in depositions or

11   at trial. If the confidentiality designation of Apple's interrogatory responses affects

12   Plaintiffs' ability to use them to question Apple's witnesses, that would be an issue for

13   Plaintiffs to address.

14        Third, Apple argues that "it is indisputable that the inventors listed on the Apple

15   patents in question will be asked about this information in deposition." Jt. Stip. at 24.

16   But there is no reason Plaintiffs' questioning would include identifying Plaintiffs' legal

17   contentions regarding which information is Plaintiffs' trade secret. Apple's witnesses

18   are fact witness who will be asked about the facts, not Plaintiffs' legal contentions. Thus,

19   there is no reason Apple's witnesses would need to "review the information *in the

20   context of Plaintiffs' assertion that those portions of the patents contain Plaintiffs'

21   alleged secrets*." Jt. Stip. at 25. To the contrary, it would be concerning if knowing

22   Plaintiffs' legal contentions regarding their trade secrets would change the testimony of

23   Apple's witnesses regarding the underlying facts.

24        Apple's argument regarding the importance of the "context" of Plaintiffs'

25   assertion highlights the inconsistency in Apple's arguments. Apple argues that some

26   information, in the abstract, may be publicly available. At the same time, Apple argues

27   that the publicly available information is insufficient to identify the alleged trade secrets,

28   and so Apple wants to disclose to its employees the specific information that Plaintiffs'

allege is their trade secrets. Apple's argument admits that the information Plaintiffs allege is their trade secrets is ***not*** discernable from other sources. The identification of specific information that is Plaintiffs' trade secrets, from among the sea of public information, is itself highly confidential and properly designated AEO. *See, e.g., A.O. Smith*, 73 F.2d at 539; *Imi-Tech,* 691 F. Supp. at 231; *see also Metricolor LLC v. L'oreal S.A.*, 2020 WL 3802942, at \*12 (C.D. Cal. July 7, 2020) ("combinations of public information from a variety of different sources when combined in a novel way can be a trade secret").

Thus, Apple is wrong when it claims that it "cannot adequately prepare its witnesses under such circumstances because it could not explain to its witnesses which portions of the patents are the subject of Plaintiffs' claim." Jt. Stip. at 25. There is no reason Apple's witnesses would need to know anything about Plaintiffs' allegations or Plaintiffs' claims in order to discuss the ***facts***, or to answer Plaintiffs' questions about facts during depositions and at trial.

Finally, Apple claims that "Plaintiffs' designations would lead to an absurd and unfair result: Apple witnesses would be prevented from knowing which portions of Apple's own patents Plaintiffs allege contain Plaintiffs' trade secrets until (if at all) those witnesses are questioned in deposition about such information." Jt. Stip. at 25. As discussed above, there is no reason Plaintiffs' questioning of Apple's witnesses (or Apple's preparation of witnesses) would require revealing which portions of the patents contain Plaintiffs' trade secrets. There is nothing absurd or unfair about Apple preparing its witnesses to testify about the facts, and Plaintiffs questioning Apple's witnesses regarding the facts, without first informing those witnesses about Plaintiffs' legal contention as to which information is Plaintiffs' trade secrets.

1    Accordingly, Plaintiffs' allegations regarding their trade secrets are properly
2    designated as AEO, particularly in light of the information Plaintiffs have allowed
3    Apple's litigation counsel to share with Apple's in-house counsel.[6]

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

[6] Corresponding disclosures in Plaintiffs' 2019 Disclosure are properly designated AEO for the same reasons.

**B.**     **Images in the Fourth Amended Complaint**

      **1.**     **Information at Issue**

## 2.    Apple's Position

The pictures of the Apple Watch included in the 4th AC following paragraphs 239 and 240 can be derived from a tear down of the commercially available Apple Watch: Anyone is free to buy an Apple Watch, dismantle it, and take pictures of it.  Similar pictures of such interior components of the Apple watch are already widely available on the Internet.  For example, the picture below on the right ████████████████████ ███████████████████████ that is strikingly similar to the picture from the 4th AC that Plaintiffs designated AEO, even though it is publicly available on eBay.  *See* Kaounis Decl., Ex. P.  Notably, paragraph 239 of the 4th AC notes that █████████ ██████████████████████████████████.

| Pictures of the Apple Watch from the Fourth Amended Complaint | Pictures of the Apple Watch Publicly Available Online |
|---|---|
| ████████████████████████████████████ | |
| | *See* Kaounis Decl., Ex. P (available at ██████████████ ████████████ ██████████ ██████) |

Likewise, pictures that are nearly identical to those of the teardown of a Series 6 Apple Watch following paragraph 240 of the 4th AC are also widely available online:

| Pictures of the Apple Watch from the Fourth Amended Complaint | Pictures of the Apple Watch Publicly Available Online |
|---|---|



*See* Kaounis Decl., Ex. R (available at ▇▇▇▇).

*See* Kaounis Decl., Ex. Q (available at ▇▇▇▇.

The first picture on the right above is from a tear down report of an Apple Watch Series 4 available online. *See* Kaounis Decl., Ex. R. The second picture on the right directly below the first picture is from an ▇▇ tear down of an Apple Watch Series 5 also available online, ▇▇▇▇▇▇ *See* Kaounis Decl., Ex. Q.

The similarity of these photos demonstrates that anyone can obtain photos of the internal structure of the Apple Watch by performing a teardown. Indeed, other tear down reports are also widely available online. *See, e.g.*, Kaounis Decl., Ex. S

(https://www.ifixit.com/Teardown/Apple+Watch+Series+6+Teardown/136694), Ex. T (https://www.techinsights.com/blog/apple-watch-teardown). Thus, these pictures (by themselves, without annotations) do not reveal Plaintiffs' Confidential—let alone "extremely confidential" or "sensitive 'Confidential or Items.'" PO § 4.4.

There is no question that Apple's in-house counsel and other personnel should be able to see these pictures—particularly as they are images of products built by Apple, and Apple is therefore already aware of *every* component therein. Plaintiffs' argument that the pictures are confidential because they "reveal selections of Plaintiffs' tear downs of specific components that highlight Plaintiffs' trade secrets," Kaounis Decl., Ex. H at 46, still does not justify maintaining the information as AEO. Critically, Apple is not requesting de-designation of the arrows with which Plaintiffs annotated the pictures of the Apple Watch. Those arrows will remain redacted, so Apple would be able to see only pictures of entire sections of the Apple Watch—pictures that are easily available to the public. *See* Kaounis Decl., Exs. P, Q, R, S, & T.

Plaintiffs likewise fail to meet their burden under the Protective Order with respect to their improper AEO designations of these pictures. Plaintiffs have not argued how disclosure of pictures of the Apple Watch *to Apple* would cause them competitive harm, because there is no possible way it could. Although Apple disputes that it is using Plaintiffs' trade secrets, to the extent these features are *already* incorporated into the Apple Watch, the benefits of these alleged secrets are already known to Apple, and no competitive harm could arise from disclosing these pictures to Apple's in-house counsel or personnel. As explained above, no harm can possibly come from disclosing to Apple that which it already knows.

On the other hand, it is extremely important to Apple's ability to mount a defense that it be allowed to show its in-house counsel and personnel the portion of the Apple Watch structure at issue. Lerner Decl. ¶ 6. The pictures disclose the general location of where the purportedly misappropriated secrets reside in the Apple Watch. *Id.* Sharing this information with Apple personnel under the Protective Order is necessary in order

1   to fully investigate Plaintiffs' allegations, identify the individuals most knowledgeable

2   about the subject matter—including possible custodians and witnesses—and identify

3   relevant documents. *Id.*

4       The Court should compel Plaintiffs to withdraw their AEO designation of the

5   photos of the Apple Watch.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.      Plaintiffs' Position

Plaintiffs' creation, selection, and presentation of certain images of the Apple Watch were properly designated AEO because those images identify aspects of Plaintiffs' trade secrets and disclose highly confidential information about Plaintiffs' trade secrets. That information is not available from public images of the Apple Watch or from Apple's internal schematics of the Apple Watch.

Apple does not dispute that Plaintiffs' use of arrows to annotate the images in the Fourth Amended Complaint reveals Plaintiffs' highly confidential and trade secret information. *See* Jt. Stip. at 55 ("Apple is not requesting de-designation of the arrows with which Plaintiffs annotated the pictures of the Apple Watch" and disputing only whether the pictures "without annotations" are confidential). This concession highlights that Plaintiffs' identification of which portions of the watch embody Plaintiffs' trade secrets is highly confidential. The identification would be slightly less precise without the arrows, but the selected images and combinations of images would still identify components and structures in the Apple Watch that implement Plaintiffs' trade secrets. Accordingly, the images following Paragraphs 239 and 240 (with or without the arrows) are properly designated AEO and should remain AEO because they identify aspects of Plaintiffs' ████████████████████████████ trade secrets.

At the end of Paragraph 239 of the Fourth Amended Complaint, Plaintiffs created and presented two images that identify ███████████████████████████████ ████████████████████████████████████████████ ████████████████ in the Series 4 and Series 5.

Gibson, Dunn &
Crutcher LLP

Joint Stip. Re Apple's Mot. to De-Designate   57                     Case No. 8:20-cv-00048-JVS (JDEx)



Ex. 6 (4ᵗʰAC) ¶ 239.

Plaintiffs allege that these two images identify features of the Apple Watch that incorporate Plaintiffs' ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ trade secrets. Disclosing this allegation to Apple's engineers would help them identify Plaintiffs' trade secrets (with or without the annotating arrows). Again, these images provide a roadmap or sign identifying where to look for Plaintiffs' trade secrets. *See A.O. Smith*, 73 F.2d at 539. Apple's arguments regarding publicly available pictures confirm, rather than refute, this point, and again emphasizes the importance of context. Apple does not identify any publicly available sources that (1) place together images of these two views of the Apple Watch, and only these two views; (2) identify that these two images illustrate important aspects of the Apple Watch; or (3) identify that these two images illustrate ***Plaintiffs' trade secrets***, much less Plaintiffs' ▓▓▓▓▓▓▓▓▓▓▓▓ trade secrets.

Apple attempts to show that images of similar portions of the Apple Watch are publicly available by separating the images and asserting there is a publicly available similar image. Jt. Stip. at 53-55. Arguing that similar images are publicly available if one knew which images to study does not defeat the confidentiality of Plaintiffs' identification of these specific structure as incorporating Plaintiffs' trade secrets. *See A.O. Smith*, 73 F.2d at 539; *Head Ski*, 158 F. Supp. at 923; *Imi-Tech,* 691 F. Supp. at

1  231. Moreover, Apple's selection of specific images is based on reviewing Plaintiffs'

2  allegations. Apple offers no reason why any competitor would have identified those

3  particular images, from among all the images in a teardown, as illustrating particularly

4  relevant information, much less as illustrating aspects of Plaintiffs' trade secrets.

5        The issue is not, as Apple appears to frame it, whether pictures of the Apple Watch

6  in the abstract would be properly designated as AEO. Apple argues that, "[a]nyone is

7  free to buy an Apple Watch, dismantle it, and take pictures of it" and that "[s]imilar

8  pictures of such interior components of the Apple watch are already widely available on

9  the Internet." Jt. Stip. at 53. Apple argues that similar pictures "can be derived from a

10  tear down of the commercially available Apple Watch[.]" *Id.* That is irrelevant because

11  Apple is not seeking to de-designate publicly available images that have nothing to do

12  with this case. Indeed, even Apple admits that, in the context of Plaintiffs' allegations,

13  the individual images at least "disclose the general location of where the purportedly

14  misappropriated secrets reside in the Apple Watch." Jt. Stip. at 55. No public image

15  discloses such information. Moreover, no teardown of an Apple Watch would identify

16  these specific images, or this combination of images, as identifying aspects of Plaintiffs'

17  trade secrets.

18        Plaintiffs created and presented these specific images, and this specific

19  combination of images, to illustrate aspects of Plaintiffs' trade secrets. Disclosing these

20  images in that context would provide highly confidential information about Plaintiffs'

21  trade secrets even without the annotating arrows. *See A.O. Smith*, 73 F.2d at 539; *Head*

22  *Ski*, 158 F. Supp. at 923; *Imi-Tech,* 691 F. Supp. at 231. Competitors, including Apple,

23  could use this information to focus their research and development efforts. Disclosure

24  of such information to others would likely cause harm or significant competitive

25  disadvantage to Plaintiffs. Diab Decl., ¶ 10. Accordingly, Plaintiffs properly designated

26  the images as AEO under the Protective Order and Plaintiffs' selection of those images

27  should retain that designation. *See* Ex. AI (Dkt. 67) ¶ 4.4.

28

1   The three annotated images following Paragraph 240 are properly designated

2   AEO for the same reasons. Plaintiffs created and presented those images because they

3   identify structures in the Apple Watch that incorporate Plaintiffs' trade secrets for

4

5

6

7

8

9

10   Ex. 6 (4th AC) ¶ 240.

11

12

13

14

15

16

17

18

19

20

21

22

23   Plaintiffs created and presented these images as illustrating aspects of Plaintiffs'

24   trade secrets. That information was properly designated AEO and should remain so for

25   the reasons discussed above with respect to the two images that appear after the text of

26   Paragraph 239. Whether others could generate similar pictures is irrelevant to the

27   confidentiality of Plaintiffs' identification of structures that incorporate Plaintiffs' trade

28   secrets. *See A.O. Smith*, 73 F.2d at 539; *Head Ski*, 158 F. Supp. at 923; *Imi-Tech,* 691 F.

Supp. at 231. A complete series of pictures from a teardown of an Apple Watch would provide no information regarding which, if any, of those pictures illustrated structures that Plaintiffs' allege employ their trade secrets. Disclosing such information by disclosing the images Plaintiffs created and presented would cause harm or significant competitive disadvantage to Plaintiffs. Diab Decl., ¶ 10.

Apple's arguments regarding the three images that appear after the text of Paragraph 240 are even weaker than Apple's arguments regarding the images that appears after Paragraph 239. Apple side-by-side chart does not address the three images from Paragraph 240. Jt. Stip. at 53-54. In the chart that supposedly addresses the Paragraph 240 images, Apple presents only the right-side image from Paragraph 240. Apple does not present any publicly available pictures that allegedly correspond to any of the three images following Paragraph 240. Likewise, Apple does not identify publicly available pictures illustrating these specific components, ███████████. *See* Jt. Stip. at 53-55. However, for all the reasons discussed above, it would not matter if Apple had presented similar individual images cherry-picked from another context.

Apple alternatively argues that Plaintiffs' images of the Apple Watch cannot be confidential from Apple, even if they identify Plaintiffs' trade secrets, because Apple is "already aware of *every* component therein." Jt. Stip. at 55. Apple similarly argues that, "Plaintiffs have not argued how disclosure of pictures of the Apple Watch *to Apple* would cause them competitive harm[.]" Jt. Stip. at 55. Again, Apple misses the point. Plaintiffs have not designated the components themselves as AEO. Apple's lawyers are welcome to discuss with Apple's in-house counsel and Apple's engineers the components of the Apple Watch, as well as Apple's schematics for each component, how each component was developed, and the identities of the people likely to be knowledgeable about the development of each component. What Apple's lawyers cannot do is give Apple's technical personnel hints or signs identifying where to look

1  for Plaintiffs' trade secrets by disclosing to Apple the specific components that Plaintiffs

2  contend incorporate Plaintiffs' trade secrets. *See A.O. Smith*, 73 F.2d at 539; *Head Ski*,

3  158 F. Supp. at 923; *Imi-Tech,* 691 F. Supp. at 231.

4        Apple argues that identifying Plaintiffs' trade secrets to Apple could not harm

5  Plaintiffs because, "to the extent these features are *already* incorporated into the Apple

6  Watch, the benefits of these alleged secrets are already known to Apple, and no

7  competitive harm could arise from disclosing these pictures to Apple's in-house counsel

8  or personnel." Jt. Stip. at 55. That is false for same reasons discussed above with respect

9  to Apple's assertion that Plaintiffs could not be harmed by disclosing to Apple the

10  specific portions of Apple's patents that contain Plaintiffs' trade secrets. First, the mere

11  fact that Plaintiffs' trade secrets were incorporated into the Apple Watch does not mean

12  that Apple's current engineers understand the benefit of those trade secrets. Lamego may

13  have brought Plaintiffs' trade secrets to Apple and used them to design aspects of the

14  Apple Watch without explaining the benefits of those trade secrets to anyone currently

15  employed by Apple. Similarly, Lamego or others could have used Plaintiffs' trade

16  secrets to develop components of the Apple Watch without disclosing those trade secrets

17  to the Apple engineers currently working on the Apple Watch. Moreover, even if some

18  Apple engineers once knew some of Plaintiffs' trade secrets that are incorporated into

19  the Apple Watch, it would not mean that all of Apple's engineers currently know or

20  remember all of Plaintiffs' trade secrets that are incorporated into the Apple Watch. De-

21  designating Plaintiffs' allegations would allow Apple to circulate this information

22  among a wider group of Apple's engineers.

23        Apple's final argument is that "it is extremely important to Apple's ability to

24  mount a defense that it be allowed to show its in-house counsel and personnel the portion

25  of the Apple Watch structure at issue." Jt. Stip. at 55. This assertion is inconsistent with

26  Apple's earlier argument that, Apple is "already aware of *every* component" in the Apple

27  Watch. Jt. Stip. at 55. By its own admission, Apple is already in a position to ask its

28  employees about every component of the Apple Watch. Apple's argument is also

inconsistent with the position it took when trying to exclude Plaintiffs' **outside** counsel from having access to Apple's AEO material. At the time, Apple recognized that "[t]he availability of competent outside counsel is typically sufficient to defeat any claim that exclusion of in-house counsel would unduly prejudice the nonmoving party." Ex. 1 (Dkt. 61-1) at 46. Moreover, as discussed above, this Court has repeatedly rejected these same arguments regarding Apple's supposed need to disclose this information to in-house counsel and engineers. *See* Exs. AI & AJ (Dkts. 67 & 93).

Apple cites an attorney assertion that "[s]haring this information with Apple personnel under the Protective Order is necessary in order to fully investigate Plaintiffs' allegations, identify the individuals most knowledgeable about the subject matter— including possible custodians and witnesses—and identify relevant documents." Jt. Stip. at 55-56. Apple makes no attempt to explain this assertion. In addition to being inconsistent with Apple's prior arguments, it is demonstrably false. As discussed above, Apple's attorneys can investigate the facts by asking Apple employees about who is knowledgeable regarding the various features of the Apple Watch, how those features were developed, who was involved in developing those features, where documents related to the development are located, and search terms that can be used to identify email and other electronically stored information regarding such development. None of that requires that Apple's attorneys disclose to Apple employees Plaintiffs' specifically selected images or that Plaintiffs' identified those images as illustrating Plaintiffs' trade secrets.

Accordingly, Plaintiffs' creation, selection, and presentation of these images are properly designated as AEO

Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. to De-Designate   63     Case No. 8:20-cv-00048-JVS (JDEx)

## C.   Plaintiffs' ESI Disclosures

### 1.   Information at Issue

| NAME | AREAS OF KNOWLEDGE |
|------|--------------------|
| ████████ | ███████████████████████ |
| | █ |
| ████████ | ████████████████ |
| | █████████████████████ |
| | ████████████████████ |
| | ████████ |
| ████████ | ███████████████ |
| ████████ | ███████████████ |
| ████████ | ██████████████ |
| █████████ | ████████████████ |
| | ██████████████████████ |
| | █████████████████████ |
| | ████████ |
| ██████ | ██████████████████ |
| | ██████ |
| ██████ | ██████████████████████ |
| ███████ | █████████████ |
| ██ | |
| █████ | ████████████████████████ |
| | ██████████ |
| ████████ | █████████████ |
| ██████ | ████████████████ |
| ██████ | █████████████ |
| | ████████████████████████ |
| | ██████████████████████ |
| | ███████████████████████ |
| | ████████ |
| ███████ | ██████████████████ |
| | ████████ |
| ██████ | ████████████████████ |
| ██████ | ████████████████████ |
| | ████████ |
| ██████ | ████████████████ |
| ██████ | ████████ |
| ██████ | ████████████████ |
| ██████ | ████████ |

Gibson, Dunn & Crutcher LLP

Joint Stip. Re Apple's Mot. to De-Designate   64            Case No. 8:20-cv-00048-JVS (JDEx)

| NAME | AREAS OF KNOWLEDGE |
|------|--------------------|
| ██████████ | ██████████████████████ ██████████ |
| ████████ | ██████████████████████ ██████████ |
| ██████ | ██████████████████ |
| █████ | ████████████████████ |
| | ██████████ |
| ██████ | ████████████████████ ██████████ |
| ██████ | ██████████████████████ |
| | ████████████████████████ |
| | ████████████████████████ |
| | ██████████ |

### 2.   Apple's Position

Plaintiffs' AEO designation of information in its chart identifying potential ESI custodians and their high-level, general relevance to this case (*see* Section § I.C, *supra*) may be the most egregious example of their abuse of confidentiality designations under the PO.  Plaintiffs provided this information—entirely designated as AEO—to Apple's outside counsel during the parties' negotiations concerning ESI custodians.  Plaintiffs claim that the *names of Masimo/Cercacor employees who are easily found on LinkedIn* and their purported high-level relevance to this matter, e.g., that they were employed by Plaintiffs and/or may have information relevant to the claims herein, is somehow AEO information.  Kaounis Decl., Ex. U at 324.  Although Plaintiffs agreed to make an "exception" to permit Apple in-house counsel to see the information, they nonetheless maintain the AEO designation for this information.  *Id*. at 322.[7]  Plaintiffs' only attempted (and wholly insufficient) justification for this plainly improper designation is their unfounded "assertion that Apple has been systematically recruiting employees," based on their fabricated "concern[] that Apple could improperly use this information for recruiting purposes."  *Id*.  Plaintiffs' continued AEO designation for this information is overbroad and improper and Apple requests that this information be completely de-designated.  At the very least, and in the alternative, the designation for the information identified in the chart in Section I.C, *supra*, should be reduced to Confidential.

Plaintiffs' justifications for retaining the AEO designation fail for several reasons.  *First*, according to Plaintiffs' own logic—that information in the chart is somehow confidential because it reflects what individual employees do or know—Plaintiffs should have agreed to de-designate portions of the chart that do not identify an "individual[']s roles and knowledge at Plaintiffs," but they did not do that.

---

[7] During the meet and confer process, Plaintiffs agreed to de-designate to "confidential" other information in the chart that identified *Apple* employees or consultants as potential ESI custodians.

1    *Second*, once parsed, none of the rows in this chart merits an individual AEO

2    designation.   Connecting the name of an individual to statements like "Masimo's

3    research, development, and technology," "Cercacor's research, development, and

4    technology," "Masimo's business and products," "Masimo's marketing," "Masimo's

5    products," "Cercacor's business and products," and "Cercacor's products" does not

6    warrant AEO protection.   Plaintiffs have not even attempted to defend this information

7    as *both* confidential *and* harmful to Plaintiffs if disclosed.   These are generic phrases

8    that would describe practically any of Plaintiffs' employees.   Indeed, many of the

9    individuals identified in the chart maintain public LinkedIn pages that identify their roles

10   at Masimo and Cercacor *in much greater detail*, further showing that it indefensible for

11   Plaintiffs to maintain as AEO such employees' "roles and knowledge."   *See, e.g.*,

12   Kaounis Decl., Ex. V (

13   "); *id.*, Ex. W (

14

15   ); *id.*, Ex. X (

16

17

18

19



20   ).  In this context,                    is a particularly egregious example of Plaintiffs'

21   improper and overbroad designations.   The fact that

22   has knowledge of "Masimo's business and products and "Cercacor's business and

23   products" is hardly confidential.

24                                   *        *        *

25        Plaintiffs have been ordered by this Court to be "very judicious in their

26   designation of attorney's-eyes-only information."   Kaounis Decl. Ex. M at 213, 238

27   (*Masimo v. True Wearables*, Hearing Tr. at 7 :11–12 , 32:11).   They have likewise been

28   chastised by another court for improper assertions of confidentiality in their sealing

efforts.    Sotera Second Sealing Order at 250, 258.   Their approach to their AEO designations here continues to flout these courts' admonitions and should be stopped. The Court should compel Plaintiffs' to withdraw their improper AEO designations of all of the above public information.

### 3. Plaintiffs' Position

Plaintiffs' ESI disclosures convey much more information than the mere fact that someone is employed by Plaintiffs, or public aspects of their job responsibilities. Again, context matters. The identity of Plaintiffs' ESI custodians who are likely to have discoverable information provides a list of key employees with knowledge of the trade secrets at issue. Plaintiffs' competitors could use this highly confidential information to target and recruit Plaintiffs' employees who were involved in developing Plaintiffs' technology and trade secrets. *See In re Adobe Sys., Inc. Sec. Litig*., 141 F.R.D. 155, 163 (N.D. Cal. 1992) (recognizing confidential nature of documents that contain identities of key personnel). Disclosure of such information is likely to cause harm or significant competitive disadvantage to Plaintiffs because Plaintiffs' identification of ESI custodians could be used as a roadmap for how to raid Plaintiffs' research and marketing departments. Diab Decl., ¶ 11. Accordingly, Plaintiffs properly designated their ESI disclosures as AEO under the Protective Order. *See* Ex. AI (Dkt. 67) ¶ 4.4.

Plaintiffs' concern is particularly acute with respect to disclosure to Apple. Apple's misappropriation of Plaintiffs' trade secrets included "systematically hiring Plaintiffs' employees, including Masimo's former Chief Medical Officer, Michael O'Reilly, and many others." Ex. 6 (4[th]AC) ¶ 230. Plaintiffs should not have to share confidential employee information with a competitor that has already shown it will target and recruit Plaintiffs' employees for the purpose of stealing Plaintiffs' trade secrets.

Apple falsely asserts that publicly available social media profiles, including LinkedIn, disclose the same information. A competitor would not be able to compile the list of names in Plaintiffs' ESI disclosures from publicly available job titles and descriptions of positions. Plaintiffs have thousands of employees, hundreds of whom are on LinkedIn, and nothing in their profiles suggests which ones Plaintiffs identified in their ESI disclosures in this case. Information about which of Plaintiffs' employees were involved in developing the highly confidential technology and trade secrets at issue in this case, and which have knowledge about that technology and trade secrets, is ***not***

publicly available. A competitor who tried to guess the names of employees who are knowledgeable about specific aspects of Plaintiffs' business might be correct about some and would be wrong about others. The only way a competitor could compile a comprehensive list would be to use Plaintiffs' ESI custodian list—which confirms it was properly designated AEO.

Apple also fails to acknowledge that ***Plaintiffs already allowed Apple's in-house counsel to have access to Plaintiffs' ESI disclosures***. Ex. 11. Although Apple's in-house counsel has no need for this information, Plaintiffs agreed to allow them to see the list in order to avoid needless motion practice and because Apple represented that its objection to Plaintiffs' designation was that it precluded in-house counsel access. Unfortunately, after giving the information to its in-house counsel, Apple sought even broader disclosure by demanding that it be able to disclose the material to other employees. *See* Exs. 7 & 8.

Apple has no reason why its non-attorney employees would need to see this information. Apple is welcome to ask its employees for the names of anyone at Plaintiffs from whom they think Plaintiffs should collect ESI. Apple employees can provide that information without knowing who Plaintiffs consider reasonably likely to have discoverable information.

Apple asserts that, "once parsed" into individual rows, each individual row might not reveal highly confidential information. Jt. Stip. at 67. Apple's arguments regarding the information that could be gleaned from individual rows, if they were considered in a vacuum, misses the point. Disclosing that the information in the rows, particularly the employee names, ***came from*** Plaintiffs' ESI disclosure would disclose the highly confidential information that those employees were likely involved in developing the technology and trade secrets at issue or have knowledge of such trade secrets.

Apple's argument that Plaintiffs should have "agreed to de-designate portions of the chart that do not identify an 'individual[']s roles and knowledge at Plaintiffs'" similarly ignores that it is primarily the names that are highly confidential. Revealing an

employee is on the ESI list necessarily reveals that they were likely involved in developing the trade secrets and technology at issue or have related knowledge. De-designating the names in left column would reveal this highly confidential information. Plaintiffs would have no issue with de-designating the right column provided the associated names remain AEO, but Apple has never asked for that.

Accordingly, Plaintiffs' ESI disclosures are properly designated as AEO. Apple cannot show any prejudice particularly because Plaintiffs already allowed Apple's in-house counsel to have access to this information.

Dated: April 8, 2021          GIBSON, DUNN & CRUTCHER LLP

By:   /s/ *Joshua H. Lerner*
Joshua H. Lerner
H. Mark Lyon
Brian M. Buroker
Brian A. Rosenthal
Ilissa Samplin
Angelique Kaounis
Brian K. Andrea

*Attorneys for Defendant Apple Inc.*

Dated:  April 8, 2021         KNOBBE, MARTENS, OLSON & BEAR LLP

By:   /s/ *Adam B. Powell*
Joseph R. Re
Stephen C Jensen
Perry D. Oldham
Stephen W Larson
Adam B. Powell

*Attorneys for Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc.*

**ATTESTATION UNDER LOCAL RULE 5-4.3.4(a)(2)(i)**

Pursuant to Civil L. R. 5-4.3.4(a)(2)(i), I attest that concurrence in the filing of this document has been obtained from each of the signatories above.

By: */s  Joshua H. Lerner*
Joshua H. Lerner

*Attorney for Defendant Apple Inc.*

Exhibit A

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   SACV 20-00048JVS(JDEx)                    Date   April 17, 2020

Title   Masimo Corporation, et al v Apple, Inc

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **[IN CHAMBERS] ORDER RE SCHEDULING DATES**

The Court has read and considered the parties Rule 26(f) Report and sets the following dates:

| | |
|---|---|
| **Jury Trial** | **April 5, 2022 at 8:30 a.m.** |
| **Final PreTrial Conference** | **March 21, 2022 at 11:00 a.m.** |
| File PreTrial Documents not later than March 7, 2022 | |
| File motions in limine not later than February 14, 2022 | |
| **Discovery Cut-off** | **July 5, 2021** |
| **Expert Discovery Cut-off** | **December 6, 2021** |
| Initial disclosure of Experts not later than September 6, 2021 | |
| Rebuttal disclosure of Experts not later than October 18, 2021 | |
| **Law and Motion Cut-off** | **February 7, 2022 at 1:30 p.m.** |
| Motions to be filed and served not later than January 10, 2022 | |
| **Markman Hearing** | **February 8, 2021 at 3:00 p.m.** |

Counsel inform the Court that their selection for a settlement procedure pursuant to Local Rule 16-15 is ADR #3, private mediation.  The Court orders that any settlement discussions shall be completed not later than November 30, 2021.  Counsel shall file a Joint Report of the parties regarding outcome of settlement discussions, the likelihood of possible further discussions and any help the Court may provide with regard to settlement negotiations not later than seven (7) days after the settlement conference.

The Court adopts discovoery limits in Sections 6a-c.  Total hours for depositions 100.  Court will deal with reduction of claims, prior art references at a hearing on **July 10, 2020 at 3:00 p.m.** Parties shall submit joint/separate proposals in one filing by July 3, 2020.  The Court adopts the patent specific dates.  The Court stays the trade secret discovery only pending compliance with 2019.210.  Any dispute over compliance shall be heard before the Magistrate Judge.

|   | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |

Exhibit B

1

2

3

4

5

6

7

8

9

10

11 **IN THE UNITED STATES DISTRICT COURT**

12 **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13 **SOUTHERN DIVISION**

14

15 MASIMO CORPORATION, ) Case No. 8:20-cv-00048-JVS-JDE
   a Delaware corporation; and )
16 CERCACOR LABORATORIES, INC., ) Hon. James V. Selna
   a Delaware corporation ) Magistrate Judge John D. Early
17 ) **ORDER GRANTING**
   Plaintiffs, ) **STIPULATION TO AMEND THE**
18 ) **SCHEDULING ORDER**
   v. )
19 )
   APPLE INC., a California corporation )
20 )
   )
21 Defendant. )
   )
22 )

23

24

25

26

27

28

This matter is before the Court pursuant to the parties' Stipulation to Amend the Scheduling Order. Based on the stipulation of the parties, and good cause appearing, the Court GRANTS the Stipulation and AMENDS the Scheduling Order as shown below.

| Event | Current Deadline | New Deadline |
|---|---|---|
| Joint Claim Narrowing Proposal | September 21, 2020 | November 23, 2020 |
| Exchange of Proposed Claim Terms for Construction (Patent L.R. 4-1) | September 21, 2020 | December 7, 2020 |
| Exchange Preliminary Claim Constructions and Extrinsic Evidence (Patent L.R. 4-2) | October 12, 2020 | January 11, 2021 |
| Invalidity Contentions on newly asserted patents (Patent L.R 3-3 and 3-4) | October 22, 2020 | |
| Infringement Contentions (Patent L.R. 3-1 and 3-2) | November 13, 2020 | |
| Joint Markman Prehearing Statement (Patent L.R. 4-3) | November 9, 2020 | February 1, 2021 |
| Complete Claim Construction Discovery (Patent L.R. 4-4) | December 7, 2020 | March 1, 2021 |
| Simultaneous Opening Markman Briefs (Patent L.R. 4-5) | December 21, 2020 | March 15, 2021 |
| Last Date to Add Parties / Amend Pleadings | December 23, 2020 | |

| Event | Current Deadline | New Deadline |
|---|---|---|
| Simultaneously Responding Markman Briefs, Tutorials and Presentation Materials (Patent L.R. 4-5) | January 25, 2021 | April 12, 2021 |
| *Markman* hearing | February 8, 2021 | April 26, 2021 at 3:00 p.m. |
| Non-expert Discovery cut off | July 5, 2021 | |

**IT IS SO ORDERED.**

Dated: September 21, 2020

_____
Honorable James V. Selna

33525107

# Exhibit C

Redacted Version of Exhibit
Proposed to Be Filed Under Seal