Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**DECLARATION OF BENJAMIN KATZENELLENBOGEN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO DE-DESIGNATE**<br><br>[Discovery Document: Referred to Magistrate Judge John D. Early]<br><br>Date:     April 22, 2021<br>Time:    1:30pm<br>Ctrm:   10C<br><br>Discovery Cut-Off:        7/5/2021<br>Pre-Trial Conference:   3/21/2022<br>Trial:                          4/5/2022 |

I, Benjamin A. Katzenellenbogen, hereby declare as follows:

1.      I am a partner in the law firm of Knobbe, Martens, Olson & Bear, LLP, counsel for Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs") in this action.  I have personal knowledge of the matters set forth in this declaration and, if called upon as a witness, would testify competently thereto.  I submit this Declaration in Support of Plaintiffs' Opposition to Apple's Motion to De-Designate.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of a filing in this case entitled "Joint Stipulation Regarding Plaintiffs' Motion For A Protective Order," filed at Dkt. 61-1.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of a filing in this case entitled "Memorandum Of Points And Authorities In Support Of Defendant Apple Inc.'s Motion For Partial Reconsideration Of Protective Order," filed at Dkt. 72-1.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of a filing in this case entitled "Apple's Opposition to Plaintiffs' Application To Seal Documents Filed In Support Of Apple's Opposition To Plaintiffs' Motion For Preliminary Injunction," filed at Dkt. 148.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of a filing in this case entitled "Reply In Support of Plaintiffs' Application To Seal Documents Filed In Support Of Apple's Opposition to Plaintiffs' Motion For Preliminary Injunction," filed at Dkt. 149.

6.      Attached hereto as **Exhibit 5** is a true and correct copy of Judge Selna's "Order Granting Plaintiffs' Application To Seal Documents Filed In Support Of Apple's Opposition To Plaintiffs' Motion For Preliminary Injunction," filed at Dkt. 152.

7.      Attached hereto as **Exhibit 6 [Filed Under Seal]** is a true and correct copy of a filing in this case entitled "Fourth Amended Complaint For (1) Patent Infringement (2) Trade Secret Misappropriation (3) Correction Of Inventorship And (4) Ownership of Patents," filed at Dkt. 296-1.

8.      Attached hereto as **Exhibit 7 [Filed Under Seal]** is a true and correct copy of an email from Adam Powel to Angelique Kaounis, sent March 5, 2021, at approximately 5:14pm, copying counsel of record including me.  The email attached a PDF reflecting a proposed compromise with respect to Plaintiffs' confidentiality designations of the Fourth Amended Complaint.  In the PDF, Plaintiffs highlighted in blue the current AEO material that Plaintiffs offered to allow Apple in-house counsel to see and highlighted in green the current AEO material that Plaintiffs offered to de-designate.

9.      Attached hereto as **Exhibit 8 [Filed Under Seal]** is a true and correct copy of an email from Angelique Kaounis to Adam Powel, sent March 22, 2021, at approximately 2:46pm, copying counsel of record including me.  The email states that counsel for Apple showed Apple's in-house counsel Plaintiffs' proposed compromise via WebEx.

10.     Attached hereto as **Exhibit 9 [Filed Under Seal]** is a true and correct copy of a filing in this case entitled "Memorandum Of Points And Authorities In Support Of Defendant Apple Inc.'s Motion To Dismiss The Thirteenth Cause Of Action In Plaintiffs' Third Amended Complaint," filed UNDER SEAL at Dkt. 241.

11.     Attached hereto as **Exhibit 10 [Filed Under Seal]** is a true and correct copy of Judge Selna's "Order Regarding Motion to Dismiss Thirteenth Cause of Action of the Third Amended Complaint," filed UNDER SEAL at Dkt. 264 in this case.

12.     Attached hereto as **Exhibit 11 [Filed Under Seal]** is a true and correct copy of an email from Adam Powel to Ilissa Samplin, sent February 17, 2021, at approximately 11:55am, copying counsel of record including me.  The email agreed to allow Apple's in-house counsel to view Plaintiffs' AEO ESI disclosure.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on April 7, 2021, at Laguna Niguel, California.

*/s/ Benjamin Katzenellenbogen*
Benjamin Katzenellenbogen

34746823

-2-

# EXHIBIT 1

1   Joseph R. Re (Bar No. 134479)
    joseph.re@knobbe.com
2   Stephen C. Jensen (Bar No. 149894)
    steve.jensen@knobbe.com
3   Perry D. Oldham (Bar No. 216016)
    perry.oldham@knobbe.com
4   Stephen W. Larson (Bar No. 240844)
    stephen.larson@knobbe.com
5   **KNOBBE, MARTENS, OLSON & BEAR, LLP**
    2040 Main Street, Fourteenth Floor
6   Irvine, CA 92614
    Telephone:  (949)-760-0404; Facsimile:  (949)-760-9502
7
8   Adam B. Powell (Bar. No. 272725)
    adam.powell@knobbe.com
9   **KNOBBE, MARTENS, OLSON & BEAR, LLP**
    12790 El Camino Real
10  San Diego, CA 92130
    Telephone: (858) 707-4000; Facsimile: (858) 707-4001
11
12  Attorneys for Plaintiffs,
    Masimo Corporation and Cercacor Laboratories, Inc.
13
14  *Counsel for Defendants listed on next page.*

15          **IN THE UNITED STATES DISTRICT COURT**
          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
16                      **SOUTHERN DIVISION**

17  MASIMO CORPORATION,          ) Case No. 8:20-cv-00048-JVS-JDE
    a Delaware corporation; and  )
18  CERCACOR LABORATORIES, INC., ) **JOINT STIPULATION**
    a Delaware corporation       ) **REGARDING PLAINTIFFS'**
19                               ) **MOTION FOR A PROTECTIVE**
                                 ) **ORDER**
20          Plaintiffs,          )
                                 ) [Discovery Document: Referred to
21          v.                   ) Magistrate Judge John D. Early]
                                 )
22  APPLE INC., a California corporation ) Date:       July 23, 2020
                                 ) Time:       10:00 a.m.
23          Defendant.           ) Ctrm:       6A
                                 )
24                               ) Discovery Cut-Off:      7/5/2021
                                 ) Pre-Trial Conference:   3/21/2022
25                               ) Trial:                  4/5/2022
                                 )
26                               ) Hon. James V. Selna
                                 ) Magistrate Judge John D. Early
27                               )
28

**Exhibit 1**
**-3-**

| | |
|---|---|
| 1 | JOSHUA H. LERNER, SBN 220755 |
| | jlerner@gibsondunn.com |
| 2 | **GIBSON, DUNN & CRUTCHER LLP** |
| | 555 Mission Street Suite 3000 |
| 3 | San Francisco, CA 94105 |
| | Tel.:  415.393.8200 / Fax: 415.393.8306 |
| 4 | |
| | H. MARK LYON, SBN 162061 |
| 5 | mlyon@gibsondunn.com |
| | **GIBSON, DUNN & CRUTCHER LLP** |
| 6 | 1881 Page Mill Road |
| | Palo Alto, CA 94304-1211 |
| 7 | Tel.:  650.849.5300 / Fax: 650.849.5333 |
| 8 | BRIAN M. BUROKER, *pro hac vice* |
| | bburoker@gibsondunn.com |
| 9 | **GIBSON, DUNN & CRUTCHER LLP** |
| | 1050 Connecticut Avenue, N.W. |
| 10 | Washington, DC 20036 |
| | Tel.: 202.955.8541 / Fax: 202.467.0539 |
| 11 | |
| | BRIAN A. ROSENTHAL, *pro hac vice* |
| 12 | brosenthal@gibsondunn.com |
| | **GIBSON, DUNN & CRUTCHER LLP** |
| 13 | 200 Park Avenue |
| | New York, NY 10166-0193 |
| 14 | Tel.: 212.351.2339 / Fax: 212.817.9539 |
| 15 | ILISSA SAMPLIN, SBN 314018 |
| | isamplin@gibsondunn.com |
| 16 | **GIBSON, DUNN & CRUTCHER LLP** |
| | 333 South Grand Avenue |
| 17 | Los Angeles, CA 90071-3197 |
| | Tel.: 213.229.7000 / Fax: 213.229.7520 |
| 18 | |
| | ANGELIQUE KAOUNIS, SBN 209833 |
| 19 | akaounis@gibsondunn.com |
| | **GIBSON, DUNN & CRUTCHER LLP** |
| 20 | 2029 Century Park East Suite 4000 |
| | Los Angeles, CA 90067 |
| 21 | Tel.: 310.552.8546 / Fax: 310.552.7026 |
| 22 | Attorneys for Defendant Apple Inc. |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

**Exhibit 1**
**-4-**

# TABLE OF CONTENTS

Page No.

I.      INTRODUCTORY STATEMENTS .................................................................1

        A.      Plaintiffs' Introductory Statement ..............................................1

        B.      Defendant's Introductory Statement ...........................................4

II.     DISPUTES REGARDING PROTECTIVE ORDER ..........................7

        A.      Section 3 – Filings Under Seal ....................................................7

                1.      Plaintiffs' Position .........................................................8

                2.      Defendant's Position......................................................8

        B.      Sections 5.5 and 6 – Use of Protected Material at Trial ..........11

                1.      Plaintiffs' Position .......................................................12

                2.      Defendant's Position.....................................................13

        C.      Section 9.1 – Export Regulations ............................................15

                1.      Plaintiffs' Position .......................................................15

                2.      Defendant's Position.....................................................16

        D.      Section 9.2(b) and (j)– Disclosure of Confidential
                Information..............................................................................19

                1.      Plaintiffs' Position .......................................................20

                2.      Defendant's Position.....................................................21

        E.      Section 9.2(f) – Disclosure of Confidential Information..........23

                1.      Plaintiffs' Position .......................................................24

                2.      Defendant's Position.....................................................26

        F.      Section 9.3 – Use of Highly Confidential Information.............29

                1.      Plaintiffs' Position .......................................................30

                        a.      The Court Should Reject Apple's
                                "Relationship" Restriction ...................................30

-i-

Exhibit 1
-5-

1

**TABLE OF CONTENTS**
*(Cont'd)*

2

3                                                                              **Page No.**

4          i.   Apple Cannot Show Jensen Will
5               Inadvertently Disclose Protected
                Material ......................................................32

6          ii.  Apple Cannot Show It Will Suffer
7               Harm............................................................33

8          iii. Apple's Restriction Would Prejudice
                Plaintiffs ...................................................34
9

10    b.   The Court Should Reject Apple's Attempt
           to Provide Plaintiffs' Trade Secrets To Its
11         In-House Counsel ......................................35

12   2.   Defendant's Position.......................................36

13    a.   This Court Should Bar Those Who are
           Either Competitive Decision-Makers Or Are
14         Present Board Members Or Were Board
           Members Within The Last Two Years From
15         Accessing Confidential Materials ......................37

16         i.   The Relationship Between Mr. Jensen
17              And Plaintiffs Presents An
                Unacceptable Risk Of Inadvertent
18              Disclosure Of Confidential
19              Information In This Case ..........................39

20         ii.  The Nature of Mr. Jensen's Service
                on Cercacor's Board of Directors
21              Conflicts With The Obligation To
                Remain Silent Under A Protective
22              Order .........................................................41

23         iii. The Risk Of Inadvertent Disclosure
                of Apple's Confidential Information
24              Outweighs Harm To Plaintiffs, If Any ......45

25    b.   Apple's Provision Providing Trade Secrets
26         to its In-House Counsel .........................................47

27  G.   Section 10 – Prosecution Bar...................................49

28    1.   Plaintiffs' Position .........................................52

-ii-

Exhibit 1
-6-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**
*(Cont'd)*

**Page No.**

2.   Defendant's Position......................................................54

    a.   The Prosecution Bar Should Prohibit Those Who Receive Apple's Confidential Information From Participating in *Inter Partes* Review Unless The Patent Owner Does Not Attempt to Amend Its Claims ..............55

    b.   The Significant Risk Of Inadvertent Disclosure Justifies The Inclusion Of An Acquisition Bar In The Protective Order .............59

H.   Sections 4.5 and 11 – Source Code............................................63

  1.   Plaintiffs' Position ..........................................................66

    a.   Section 4.5 ..........................................................67

    b.   Section 11(f)........................................................68

    c.   Section 11(h) .......................................................69

    d.   Section 11(i) ........................................................70

    e.   Section 11(j) ........................................................71

    f.   Section 11(k) .......................................................72

    g.   Section 11(l) ........................................................73

  2.   Defendant's Position......................................................73

    a.   Section 4.5 ..........................................................73

    b.   Section 11(f)........................................................74

      i.   Generating Source Code as PDF Copies..........................................................74

      ii.   Printing More Than 200 Pages .................75

      iii.   Printing Directory Paths Information ........76

    c.   Section 11(h) .......................................................77

**Exhibit 1**
**-7-**

1
2

**TABLE OF CONTENTS**
(*Cont'd*)

3

**Page No.**

4

d.   Section 11(i) .......................................................77

5

e.   Section 11(j) .......................................................79

6

i.   Increasing the Number of Reviewers.........79

7

ii.   Restrictions on how source code may

8

be transported ...............................................80

9

f.   Section 11(k) ......................................................81

10

i.   Bringing Source Code to the

11

Deposition ...................................................81

12

ii.   Maintaining Marked Deposition

Exhibits .........................................................81

13

g.   Section 11(l) ......................................................82

14

I.   Section 17 – Disposition After Trial........................................82

15

1.   Plaintiffs' Position ............................................................83

16

2.   Defendant's Position........................................................83

17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit 1**
**-8-**

1   Plaintiffs MASIMO CORPORATION ("Masimo") and CERCACOR
2   LABORATIES, INC. ("Cercacor") and Defendant APPLE INC. ("Apple")
3   hereby submit this Joint Stipulation Regarding Plaintiffs' Motion for a
4   Protective Order, pursuant to Fed. R. Civ. P. 26(c) and L.R. 37-1 *et seq.*

5   ## I. <u>INTRODUCTORY STATEMENTS</u>

6   Pursuant to Judge Selna's June 23, 2020 Order (ECF No. 59), the parties
7   have appended to Adam Powell's Declaration as Exhibit 4 a redlined version of
8   the protective order that shows the parties' competing proposals on the disputed
9   provisions addressed herein.  The redline changes reflect Apple's proposals that
10  differ from Plaintiffs' proposals.  In addition, a clean version of Plaintiffs' full
11  proposed protective order is appended to Adam Powell's Declaration as Exhibit
12  2, and a clean version of Apple's full proposed protective order is appended to
13  Ilissa Samplin's Declaration as Exhibit A.

14  **A.    <u>Plaintiffs' Introductory Statement</u>**

15  Plaintiffs understand the Court expects customized protective orders to be
16  based on its Model Protective Order (the "Model Order"), which is attached as
17  Powell Decl., Ex. 1.  Thus, Plaintiffs offered to prepare a draft based on the
18  Model Order.  Powell Decl. ¶ 6.  Apple refused and insisted on preparing the
19  initial draft.  *Id.*  Plaintiffs agreed, but only on the condition that Apple would
20  base its draft on the Model Order.  *Id.*  Unfortunately, Apple provided a draft
21  several weeks later that bore no relationship to the Model Order.  *See id.*, Ex. 5
22  at 11-41.  Plaintiffs again asked Apple to provide a draft based on the Model
23  Order, but Apple refused.  *Id.*, Ex. 6 at 2.  Thus, Plaintiffs prepared a draft based
24  on the Model Order.  *Id.*, Ex. 6 at 1, 15-37.  Since then, the parties engaged in
25  numerous meet-and-confers and exchanged numerous drafts to narrow their
26  disputes.  *Id.* ¶¶ 9-10 and Exs. 7-8.  The parties were unable to resolve all issues
27  and now present competing proposals.
28  Plaintiffs' proposal tracks the Court's Model Order as closely as possible.

-1-

**Exhibit 1**
**-9-**

1    For issues not addressed by the Model Order, Plaintiffs proposed using the

2    language this Court recently adopted in *Masimo v. True Wearables*, No. 8:18-

3    cv-02001-JVS-JDE ("*True Wearables*").  The provisions this Court adopted in

4    *True Wearables* make sense here because Apple argued the two cases were

5    related and involve "nearly identical" allegations.  *See* Powell Decl., Ex. 24

6    (Apple's Notice of Related Cases) at 3.  Instead of using this Court's Model

7    Order, or the *True Wearables* Order, Apple primarily relies on provisions from

8    something it calls "Apple's standard protective order."  Apple's proposals are

9    inappropriate for many reasons.

10        First, many of Apple's proposals conflict with the Court's Model Order,

11    Local Rules, and Ninth Circuit precedent.  For example, Apple proposes

12    changing the Model Order by: (1) providing that the mere designation of

13    information as "Highly Confidential" or "Source Code" constitutes good cause

14    for sealing the information (Section II.A, *infra*), (2) eliminating this Court's

15    provisions concerning how information is used at trial (Section II.B, *infra*), (3)

16    improperly limiting the individuals who can access "Confidential" information

17    (Section II.D, *infra*), and (4) modifying the process of returning or destroying

18    designated information after Final Disposition (Section II.J, *infra*).  Apple fails

19    to justify these changes to the Court's Model Order.

20        Second, the parties agreed to add a "Highly Confidential" tier to the

21    Model Order, but Apple inappropriately narrows who may access such

22    information.   *See* Section II.F, *infra*.  Apple proposes language that would

23    deprive Plaintiffs of their chosen counsel, Stephen Jensen, who has been

24    representing Plaintiffs in litigation against Plaintiffs' competitors for decades.

25    This Court rejected nearly identical language in *True Wearables*.  Powell Decl.,

26    Ex. 13 at 8.  This Court then affirmed Jensen is not a "competitive decision-

27    maker" and may access Highly Confidential information.  *Id.*, Ex. 14 at 5-6.

28

**Exhibit 1**
**-10-**

1    Apple identifies no reason why this Court should reach a contrary conclusion in

2    this case.

3          Third, the parties agreed to add a "Source Code" tier to the Model Order,

4    but Apple defines "source code" to include technical documents that are not

5    source code and imposes unreasonable restrictions on reviewing "source code."

6    Section II.H, *infra*.   As a result, Apple's proposal significantly hinders

7    Plaintiffs' ability to review anything Apple designates as source code.   Apple

8    also includes numerous provisions seeking Plaintiffs' work product, including a

9    provision requiring advanced notice of the specific source code printouts

10   Plaintiffs will use at depositions.   Apple's counsel also insists they may review

11   any work product inadvertently left behind by Plaintiffs in the source code

12   review room, which is contrary to their ethical duties.

13         Fourth, Apple asserts that a consultant that worked for Plaintiffs in *True

14   Wearables* may serve as Apple's e-discovery consultant in this case, despite

15   Apple asserting the two cases are "nearly identical."   *See* Section II.E, *infra*.

16   Apple takes that position even though the consultant obtained access to

17   Plaintiffs' highly confidential and ***privileged*** information in *True Wearables*.

18   The consultant also obtained privileged information while serving as Plaintiffs'

19   expert witness in another matter that Apple asserted is relevant to this case.

20   Apple does not explain why it cannot use one of the dozens of other available

21   consultants who have not worked for Plaintiffs on related matters.

22         Fifth, the parties agreed to add a patent prosecution bar to the Model

23   Order, but Apple proposes unworkable terms.   *See* Section II.G, *infra*.   For

24   example, Apple proposes that Plaintiffs' outside counsel may participate in *inter

25   partes* review, but ***only if*** Plaintiffs waive their right to amend the claims.   That

26   is one-sided and forces Plaintiffs to choose between using its preferred counsel

27   and waiving its right to amend the claims.   The Court should adopt Plaintiffs'

28

-3-

**Exhibit 1**
**-11-**

1   proposal, which properly allows outside counsel to participate so long as they
2   are not involved in amending the claims.

3   Finally, Apple insists that Protected Material may not be taken outside the
4   U.S. or provided to any foreign national.  *See* Section II.C, *infra*.  Apple
5   attempts to justify its proposal on U.S. export regulations, but its proposal is
6   more onerous than U.S. export regulations.  For example, Apple's proposal bars
7   Plaintiffs from using foreign nationals as expert witnesses or conducting
8   depositions outside the U.S., even if doing so does not violate export
9   regulations.  The Court should adopt Plaintiffs' proposal, which places the
10  burden on the Receiving Party to comply with applicable export regulations.

11  Accordingly, Plaintiffs respectfully request the Court enter their proposed
12  protective order, which is attached to the Powell Declaration as Exhibit 2.

13  **B.**    **Defendant's Introductory Statement**

14  Plaintiffs have approached the protective order negotiations from the
15  premise that this Court's model protective order—what Plaintiffs term the
16  "Model Order"—governs in the event of any disputes between the parties.
17  Apple respectfully disagrees with Plaintiffs' position, and further notes that
18  Plaintiffs have been more than willing to take a contrary stance when it suits
19  their interests (e.g., advocating for an unprecedented provision that would
20  restrict Apple from using the e-discovery vendor of its choosing).  This Court's
21  instructions state merely that "[a] model protective order is attached below."
22  The Court's rules do not instruct parties to adopt all provisions in the Model
23  Order, do not provide that the Model Order controls in the event of any disputes,
24  and do not even require parties to submit a redline between their protective
25  order proposals and the Model Order.  Plaintiffs' suggestion that their proposed
26  protective order is more appropriate because it purportedly "tracks the Court's
27  Model Order as closely as possible" therefore is not persuasive.  Nor is it true.
28  Plaintiffs are proposing many provisions that do not appear in the Model Order

**Exhibit 1**
**-12-**

1   at all, proving *Apple's* point—which is that this case involving patent, trade

2   secret, and highly sensitive information requires different protections against the

3   use and disclosure of confidential information than a run-of-the mill litigation.

4          Equally unpersuasive is Plaintiffs' argument that any departures from the

5   Court's Model Order should track the language in the protective order entered in

6   the *True Wearables* case.  While it is true that Apple filed a notice of related

7   cases given certain allegations common to this lawsuit and *True Wearables*,

8   Apple is differently situated from True Wearables, including in ways that bear

9   directly on the protective order disputes here.  Apple is one of the largest

10  technology companies in the world and the accused products in this case, the

11  Apple Watch Series 4 and 5, are extremely valuable products already in the

12  wearables space.  True Wearables, Inc., by contrast, is a six-year old medical

13  device start-up.  Moreover, Apple is not a party in *True Wearables* and therefore

14  was not involved in the negotiations regarding the protective order in that case

15  or the briefing leading up to entry of that protective order.  Plaintiffs' suggestion

16  that Apple should be automatically or presumptively bound by the *True*

17  *Wearables* protective order or any other rulings entered in that case therefore is

18  not sensible or fair.  This lawsuit is a separate action involving different parties,

19  considerations, and confidential information.  These protective order disputes

20  should be decided with those facts in mind; the protective order and decisions in

21  *True Wearables* should not be treated as presumptively valid or binding here.

22          Notably, Plaintiffs have resisted—and fail to mention at all—the Model

23  Order the Northern District of California has adopted for cases "involving

24  patents, highly sensitive confidential information and/or trade secrets," in

25  recognition of the heightened protections necessary for, and sensitivities

26  involving, information of the type at issue in this action.  *See* Samplin Decl. Ex.

27  D.  Apple proposed provisions from the Northern District's Model.  Plaintiffs

28  dismissed them on the mere basis that they are not in this Court's Model Order.

**Exhibit 1**
**-13-**

1  But Plaintiffs have recognized the value in adopting provisions from the

2  Northern District's Model for like cases proceeding in this District.  *See, e.g.*,

3  Joint Stip. at 9, *Masimo Corp. v. Mindray DS USA Inc*, 2014 WL 12597116

4  (C.D. Cal. Feb. 13, 2014), ECF No. 111 ("*Masimo's* proposal is modeled after

5  the Northern District of California's Model Protective Order . . . which was the

6  basis for nearly every other aspect of the parties' Proposed Stipulated Protective

7  Order.") (emphasis added).   Judge Selna likewise has looked to Northern

8  District rules in cases like this one.  *See* Samplin Decl. Ex. C, at 52.

9         Apple has agreed to the majority of the provisions contained in this

10  Court's Model Order.  Apple respectfully submits, however, that in this case

11  involving patent, trade secret, and source code information—some of the most

12  sensitive information in Apple's *and* Plaintiffs' possession—certain heightened

13  protections are necessary, including those proposed by Apple here, for example:

14      • precluding a party's competitive decision-makers and Board members

15         form accessing Apple's highly confidential information given the

16         inherent risk for the inadvertent disclosure of confidential information;

17      • extending the agreed-upon prosecution bar to those who receive access

18         to confidential information from participating in the acquisition of new

19         patents given the risk that litigation counsel will use their acquired

20         knowledge to advise a client on which patents to acquire;

21      • barring counsel who receive access to highly confidential materials

22         from participating in IPR proceedings that involve claim amendments

23         given the likelihood that counsel's knowledge will be used to guide

24         co-counsel toward or away from making amendments;

25      • access by a limited number of Apple's in-house counsel to Plaintiffs'

26         highly confidential information, including their alleged trade secrets,

27

28

**Exhibit 1**

**-14-**

1           which is fairly standard in high stakes trade secret cases like this one;[1]

2         • prohibitions on the export of confidential materials—in this case that

3           does not involve parties, experts, or evidence located abroad—given

4           the heightened risk of misuse and unauthorized access; and

5         • automatic return or destruction of the parties' confidential material—

6           including their highly sensitive source code and trade secret-related

7           information—60 days following the final disposition of this action.

8  Apple is advocating for standard and reasonable protections for its sensitive

9  Apple Watch-related information, and respectfully requests that the Court enter

10  its proposed protective order attached to the Samplin Declaration as Exhibit A.

11        **II. DISPUTES REGARDING PROTECTIVE ORDER**

12       The parties have reached an impasse on the following issues.

13  **A.**     **Section 3 – Filings Under Seal**

14       The Parties' dispute on Section 3 is shown below, with underlined text

15  showing Apple's proposed additions to Plaintiffs' proposal and strikethrough

16  text showing Apple's proposed deletions to Plaintiffs' proposal:

17       3.    ACNOWLEDGMENT OF UNDER SEAL FILING

18           PROCEDURE

19       . . . The parties' mere designation of Disclosure or Discovery

20         Material as CONFIDENTIAL does not—without the submission

21         of competent evidence by declaration, establishing that the

22         material sought to be filed under seal qualifies as confidential,

23         privileged, or otherwise protectable—constitute good cause.  But

24         designation of information as HIGHLY CONFIDENTIAL –

25

26       [1] On June 25, 2020, the Court dismissed Plaintiffs' trade secret claim.
ECF No. 60.  However, the Court granted Plaintiffs 30 days to amend.  Apple is

27  cognizant of, and objects to, any protective order provisions that will hinder its
ability to defend against a future trade secret misappropriation claim.

28

-7-

**Exhibit 1
-15-**

1    <u>SOURCE CODE or HIGHLY CONFIDENTIAL – ATTORNEYS'</u>

2    <u>EYES ONLY shall be presumptively deemed to present good</u>

3    <u>cause for filing under seal.  Nothing in this section shall in any way</u>

4    <u>limit or detract from this Protective Order's requirements as to</u>

5    <u>Source Code.</u>

6         **1.    Plaintiffs' Position**

7         Plaintiffs propose adopting the language from this Court's Model Order.

8    *Compare* Powell Decl., Ex. 1 (Model Order) at 3 *with* Ex. 2 (Plaintiffs'

9    proposal) at 2.  Plaintiffs' proposal (and the Model Order) are consistent with

10   the Local Rules, which state that merely designating information "confidential

11   pursuant to a protective order is ***not*** sufficient justification for filing under seal;

12   a person seeking to file such documents under seal must comply with

13   L.R. 79-5.2.2(b)."   L.R. 79-5.2.2(a)(i) (emphasis added).   Apple's proposal

14   deviates from the Model Order and Local Rules by including a provision that

15   the designation of information as highly confidential or source code is

16   "presumptively deemed to present good cause for filing under seal."  *See* Powell

17   Decl., Ex. 4 at 2-3.  Plaintiffs' objection was based solely on the Court's Model

18   Order and Local Rules.

19        **2.    Defendant's Position**

20        Apple's proposal does not alleviate the parties' obligations to follow the

21   procedures set forth in Local Civil Rule 79-5 relating to "CONFIDENTIAL"

22   information.   Apple's proposal merely recognizes that because this case will

23   involve the production of source code, highly confidential competitive

24   information, and potentially trade secrets, elevated designations for such

25   material necessarily raise a presumption of good cause for filing under seal.

26   Throughout the course of the parties' negotiations, Plaintiffs' counsel stated that

27   while they would not advocate for Apple's proposed language, they would

28   indicate to the Court that they do not object to it.  *See, e.g.*, Samplin Decl. Ex.

-8-

**Exhibit 1
-16-**

1  G, at 153 [June 3, 2020 Email from A. Powell] (stating, with respect to Section

2  3 of the protective order, that Plaintiffs "will not include Apple's edits in our

3  draft, but we will indicate that we do not oppose the changes if the Court deems

4  them acceptable").   Apple therefore was surprised when Plaintiffs failed to

5  indicate their non-opposition in this submission.

6       The public's right of access is important, and clearly upheld in Apple's

7  proposed protective order (Samplin Decl. Ex. A [Apple's proposed protective

8  order]; *see also* Powell Decl. Ex. 4 [parties' combined proposed protective

9  orders]), but such a right "is not absolute and can be overridden given

10 sufficiently compelling reasons for doing so." *Foltz v. State Farm Mut. Auto*

11 *Ins. Comp*., 331 F.3d 1122, 1135 (9th Cir. 2003).  Compelling reasons include

12 to protect "sources of business information that might harm a litigant's

13 competitive standing" (*Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d

14 1092, 1097 (9th Cir. 2016), *cert. denied sub nom. FCA U.S. LLC v. Ctr. for Auto*

15 *Safety*, 137 S. Ct. 38 (2016) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S.

16 589, 597 (1978)), and "to prevent disclosure of materials . . . including, *but not*

17 *limited to*, trade secrets or other confidential research, development, or

18 commercial information" (*Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211

19 (9th Cir. 2002) (emphasis in original)).  The parties' agreed definitions of the

20 elevated designations of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

21 ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" *presumptively* fall

22 into those categories worthy of protection:

23       • "'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY':

24         extremely confidential and/or sensitive "Confidential Information or

25         Items," disclosure of which to another Party or Non-Party is likely to

26         cause harm or significant competitive disadvantage to the Producing

27         Party."

28       • "'HIGHLY CONFIDENTIAL – SOURCE CODE': extremely

-9-

**Exhibit 1**
**-17-**

1  sensitive "Confidential Information or Items" representing computer

2  code, scripts, assembly, binaries, object code, source code listings

3  (e.g., file names and path structure), descriptions of source code (e.g.,

4  descriptions of declarations, functions, and parameters), object code

5  listings, and Hardware Description Language (HDL) or Register

6  Transfer Level (RTL) files that describe the hardware design of any

7  ASIC or other chip, disclosure of which to another Party or Non-Party

8  is likely to cause harm or significant competitive disadvantage to the

9  Producing Party . . . ."

10  Compelling reasons are fairly certain to justify the filing under seal of any

11  materials marked with these elevated designations in *this* case—where highly

12  confidential information, source code, competitive information, and potentially

13  trade secrets are at issue.   Put differently, Plaintiffs have no cognizable

14  argument that materials satisfying the above definitions should be available to

15  the public.   In this case where Plaintiffs have asserted that Apple has

16  misappropriated *Plaintiffs'* purported trade secrets (and may continue to attempt

17  to assert their misappropriation claim even though it has thus far been

18  dismissed), Plaintiffs should be equally interested in a presumption preventing

19  disclosure of their highly confidential and source code information.  That is why

20  Apple's proposed language—which would have bilateral effect—makes sense.

21  And if a situation arises in which the presumption is too broad for a particular

22  application, the presumption can be rebutted.

23      Further, this presumption will relieve administrative burden for both the

24  parties and the Court, as it will curtail numerous submissions seeking to justify

25  highly confidential and source code redactions where the parties are in

26  agreement about those redactions.  Apple's proposal would limit the need for

27  briefing on this topic to those situations where the designations actually are

28  disputed.  Apple's proposed approach makes practical and efficient sense in a

-10-

**Exhibit 1
-18-**

case where the parties already know that information designated highly confidential will feature source code and potentially trade secrets that should be redacted in Court submissions.

**B.**     <u>**Sections 5.5 and 6 – Use of Protected Material at Trial**</u>

The Parties' dispute on Sections 5.6 and 6 is shown below, with underlined text showing Apple's proposed additions to Plaintiffs' proposal and strikethrough text showing Apple's proposed deletions to Plaintiffs' proposal:

5.      SCOPE

. . .

5.6      Any use of Protected Material at trial shall be governed by ~~the orders of the trial judge and other applicable authorities~~ <u>a separate agreement or order</u>. This Order does not govern the use of Protected Material at trial.

6.      DURATION

Even after Final Disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing, a court order otherwise directs, or the information was made public during trial. For purposes of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-captioned action with prejudice, including all appeals. ~~Once a case proceeds to trial, information that was designated or maintained pursuant to this protective order used or introduced as an exhibit at trial becomes public and will be presumptively available to all members of the public, including the press, unless compelling reasons supported by specific factual findings to proceed otherwise are made to the trial judge. *See Kamakana*, 447 F.3d at 1180-81 (distinguishing "good cause" showing for sealing documents~~

-11-

Exhibit 1
-19-

1   ~~produced in discovery from "compelling reasons" standard when~~
2   ~~merits related documents are part of court record).~~<u>Pursuant to</u>
3   <u>Paragraph 5.6 above, any use of Protected Material at trial shall be</u>
4   <u>governed by a separate agreement or order.</u>

5   **1.    <u>Plaintiffs' Position</u>**

6   Plaintiffs again propose adopting this Court's Model Order on these
7   provisions.   *Compare* Powell Decl., Ex. 1 (Model Order) at 6 *with* Ex. 2
8   (Plaintiffs' proposal) at 7.[2]  Plaintiffs' proposal (and the Court's Model Order)
9   properly recognize that a separate order from the trial Court will govern the use
10  of Protected Material at trial and that Ninth Circuit precedent imposes a higher
11  burden to seal information introduced at trial.   *See Kamakana v. City and*
12  *County of Honolulu*, 447 F.3d 1172, 1180-81 (9th Cir. 2006).  This language is
13  commonly included in protective orders.   *See, e.g.*, *Glaukos Corp. v. Ivantis,*
14  *Inc.*, No. 8:18-cv-00620-JVS-JDE, Dkt. No. 36 (C.D. Cal. Aug. 3, 2018)
15  (Powell Decl., Ex. 21) at 3.

16  Apple proposes modifying these provisions to improperly provide that the
17  treatment of protected material at trial may be governed by a separate
18  "agreement" without the Court's input.  Powell Decl., Ex. 4 at 7.  Apple also
19  removes the Court's recitation of the Ninth Circuit standard for sealing material
20  at trial.  *See Kamakana*, 447 F.3d at 1180-81; *Oliner v. Kontrabecki*, 745 F.3d
21  1024, 1025–26 (9th Cir. 2014) ("In keeping with the strong public policy
22  favoring access to court records, most judicial records may be sealed only if the
23  court finds 'compelling reasons.'").   Apple provides no justification for

24
25
26      [2] The parties agreed to minor changes to the Model Order to make clear
27  that information designated pursuant to the Protective Order but ***not*** introduced
    at trial remains protected by the Protective Order.  *Compare* Powell Decl., Ex. 1
28  (Model Order) at 6 *with* Ex. 2 (Plaintiffs' proposal) at 7.

-12-

**Exhibit 1
-20-**

1    removing this Court's correct recitation of the law.  The Court should adopt its

2    standard language and reject Apple's unsupported modifications.

3           **2.      <u>Defendant's Position</u>**

4           Apple does not take issue with the Ninth Circuit law cited in this Court's

5    Model Order, or with the uncontroverted fact that there is a strong public policy

6    favoring access to court records, including at trial.  Apple's simple position is

7    that the parties are far off from any trial in this action—having yet to even

8    produce a single confidential document in this case—and therefore the Court

9    should defer entering orders about how the parties' highly sensitive information,

10   including source code and potentially trade secrets, will be treated at a trial.

11   Indeed, this Court's instructions to parties about protective orders states that "no

12   proposed discovery protective order should purport to control the handing of

13   materials at trial," and is precisely what Apple seeks to avoid.

14          Notably, the Northern District's Model Order for cases "involving

15   patents, highly sensitive confidential information and/or trade secrets" provides

16   that "[a]ny use of Protected Material at trial shall be governed by a separate

17   agreement or order"—which is the exact language Apple is proposing here.

18   Samplin Decl. Ex. D, at 59 [Northern District of California's Model Protective

19   Order for Litigation Involving Patents, Highly Sensitive Confidential

20   Information and/or Trade Secrets ("N.D. Cal. Model Order") § 3]; *see also id.*

21   Ex. A, at 12 [Apple's proposed protective order provision for this case].  While

22   Apple recognizes that the Central District of California has not published its

23   own distinct Model Order for cases "involving patents, highly sensitive

24   confidential information and/or trade secrets" (this case involves all three),

25   courts within the Central District routinely follow the Northern District's

26   model.[3]  *See, e.g., Masimo Corp. v. Mindray DS USA Inc*, No. 12-02206-CJC

27   _____

28          [3] The Northern District also uses a default Patent Local Rule 2-2 Interim

-13-

**Exhibit 1
-21-**

Case 8:20-cv-00048-JVS-JDE   Document 336-3   Filed 04/08/21   Page 24 of 129   Page ID
#:30554
Case 8:20-cv-00048-JVS-JDE   Document 61-1   Filed 06/26/20   Page 20 of 92   Page ID
#:4206

1  (JPRx), 2014 WL 12597116 (C.D. Cal. Apr. 15, 2014) (affirming the magistrate

2  judge's protective order, which was based on the Northern District of

3  California's model protective order and provided for a two-year prosecution

4  bar); *see also* Order at 2, *Freed Designs, Inc. v. Sig Sauer, Inc.*, No. 13-9570-

5  ODW (AGRx) (C.D. Cal. July 9, 2014), ECF No. 28 ("The Court is agreeable to

6  the entry of a protective order that tracks the language of the Northern District

7  of California's Patent Local Rule 2-2 Model Protective Order."); Order at 3,

8  *Black Hills Media, LLC v. Pioneer Corp.*, No. 13-05980-SJO (PJWx) (C.D. Cal.

9  Sep. 24, 2013), ECF No. 59 ("If the parties are unable to agree on a protective

10 order, the Court will enter the Northern District of California's Patent Local

11 Rule 2-2 Interim Model Protective Order.").   The Northern District's position

12 on this issue is sensible given the type of Protected Material that will be

13 involved in, and the current posture of, this case.   Indeed, Plaintiff Masimo has

14 previously agreed in this District to the Northern District language that Apple is

15 proposing for this case.   *See* Joint Stip. at 9, *Masimo Corp. v. Mindray DS USA

16 Inc*, 2014 WL 12597116 (C.D. Cal. Feb. 13, 2014), ECF No. 111.

17       To be clear, Apple does not dispute that this Court will need to be

18 involved in any decision about how Protected Material will be treated at trial,

19 should a trial occur in this action.   Apple therefore is confused by Plaintiffs'

20 suggestion that Apple has recommended that the parties reach agreements about

21 trial procedure without this Court's involvement.   To the contrary, Apple fully

22 expects the Court to be instrumental in deciding this issue—with final say about

23

24 Model Protective Order, which courts within the Central District routinely

25 follow as well.   *See* N.D. Cal., Patent Local Rule 2-2 Interim Model Protective

26 Order,     https://www.cand.uscourts.gov/wp-content/uploads/forms/model-
   protective-orders/Interim-Patent-Protective-Order-Rule-2-2.docx   (last   visited

27 June 24, 2020).   The two Northern District model orders are identical in relevant

28 respects.

-14-

**Exhibit 1
-22-**

1  how the parties' Protected Material will be treated at trial.   Apple simply
2  proposes that the Court adopt the Northern District's proffered method for
3  handling the treatment at trial of Protected Material in cases like this one—that
4  is, deferring the issue until the case gets closer to trial, as most litigations
5  resolve before that point, thereby mooting this issue completely.

6  **C.    Section 9.1 – Export Regulations**

7        The Parties' dispute on Section 9.1 is shown below, with underlined text
8  showing Apple's proposed additions to Plaintiffs' proposal and strikethrough
9  text showing Apple's proposed deletions to Plaintiffs' proposal:

10       9.1    Basic Principles.

11       . . .

12       Protected Material must be stored and maintained by a Receiving
13       Party <u>at a location in the United States and</u> in a secure manner that
14       ensures that access is limited to the persons authorized under this
15       Order.   ~~The Receiving Party will take any reasonably necessary~~
16       ~~precautions to comply with applicable United States Export~~
17       ~~Administration Regulations.~~  <u>To ensure compliance with applicable</u>
18       <u>United States Export Administration Regulation, Protected Material</u>
19       <u>may not be exported outside the United States or released to any</u>
20       <u>foreign national (even if within the United States).</u>

21       **1.    Plaintiffs' Position**

22       Plaintiffs again proposed adopting the Court's Model Order, which does
23  not discuss export regulations.  Apple insists that no Protected Material may be
24  taken to *any* foreign country or provided to *any* foreign national (even within
25  the United States).  Powell Decl., Ex. 4 at 12.  Apple attempted to justify those
26  provisions by referencing U.S. export regulations.  But Apple's proposal goes
27  far beyond what is required by U.S. export regulations.  For example, Apple's
28  proposal would prevent a Canadian citizen who is a U.S. permanent resident

-15-

**Exhibit 1**
**-23-**

from serving as outside counsel or as an expert witness.  Apple's proposal would also prevent the parties from taking depositions in *any* other country.  Additionally, Apple's proposal could be interpreted as requiring outside counsel to discriminate based on national origin.

During the conference of counsel, Apple argued the parties could consider deviating from Apple's draconian language on a case-by-case basis.  For example, Apple suggests Plaintiffs could ask Apple's permission to designate a foreign national as an expert, or to take Apple's materials outside the country for depositions.  Apple thereby proposes giving itself improper leverage to deny Plaintiffs their choice of expert witness and prevent depositions that Apple deems undesirable.

The Court should adopt Plaintiffs' proposal, which would accomplish Apple's stated goals without providing Apple undue leverage.  Plaintiffs propose requiring the Receiving Party to take whatever procedures may be reasonably necessary to comply with applicable export regulations.  Such language is common when one or more parties alleges protected material may be subject to export regulations.  Indeed, Apple has recently ***stipulated*** to similar language.  *Pinn, Inc. v. Apple Inc.*, Case No. 8:19-cv-01805-DOC-JDE, Dkt. No. 60 (C.D. Cal. March 13, 2020) (Powell Decl., Ex. 17) at 16 ("Each party receiving Protected Material shall comply with all applicable export control statutes and regulations").

## 2.    **Defendant's Position**

Apple's proposal regarding export control is not controversial.  It provides that Protected Material should not be exported outside the United States or to any foreign national in order to comply with federal regulation and protect the parties' sensitive information.  This provision should not impose *any* burden on Plaintiffs, given that all of Plaintiffs' counsel are located in the United States and discovery regarding the claims and defenses in this case

-16-

Exhibit 1
-24-

1   should not involve sending sensitive information abroad.[4]  By the opposite

2   token, it should be clear why these provisions are critical—given the heightened

3   risk of misuse and unauthorized access of information in countries outside the

4   United States, differing views of business sensitivity and privacy, and Apple's

5   inability to obtain justice, enforce the protective order, or reverse or prevent

6   ongoing harm should its Protected Material be compromised outside the United

7   States.

8        Plaintiffs' quote from one of Apple's "recently ***stipulated***" protective

9   orders does not support their position on this issue.  While Plaintiffs are correct

10  that the protective order they reference from an entirely different case says that

11  the parties "shall" comply with export rules, Plaintiffs omit the lengthy

12  remainder of the paragraph, which is key:  "No party receiving Protected

13  Material may allow it to leave the territorial boundaries of the United States of

14  America or to be made available to any foreign national who is not (i) lawfully

15  admitted for permanent residence in the United States or (ii) identified as a

16  protected individual under the Immigration and Naturalization Act (8 U.S.C.

17  1324b(a)(3))."  The protective order further provided an exception from export

18  prohibitions where non-source code Protected Material is reasonably necessary

19  for use in a deposition in a foreign country.  Apple offered in this case to

20  consider reasonable carve outs to address Plaintiffs' concerns, but Plaintiffs did

21  not propose a workable solution.

22       Instead, Plaintiffs took the position that they should have the right to

23  export Apple material outside the United States at will—but that they would

24  ────────────────────

25       [4] If the case eventually requires depositions or experts located outside the

26  United States, the parties can revisit the issue at that time, and attempt to reach

27  agreement about the export of specific materials to the extent necessary.  Thus far, Plaintiffs have not expressed that they anticipate any need to hire experts or

28  conduct depositions abroad.

-17-

**Exhibit 1**
**-25-**

1   agree to a provision requiring them to give notice to Apple before doing so, and
2   then Apple would have the burden of proving that Plaintiffs should be prevented
3   from exporting.  Plaintiffs' proposal was unworkable, because it would have
4   imposed on Apple the burden to prevent transfer of Apple materials abroad,
5   when the burden should be on *Plaintiffs* to justify any such transfer in the first
6   place.  Notably, in proposing this notice provision, Plaintiffs at least recognized
7   that Apple could be harmed by unfettered disclosure of its confidential material
8   abroad.  Yet, once the parties failed to reach agreement on this export provision,
9   Plaintiffs reverted to their original proposal (sans any notice of export), which
10  leaves Apple's confidential material *without any protections* in this regard.

11      It is not clear to Apple why Plaintiffs are insisting on a provision to
12  permit export of Apple's data outside the United States—particularly given that
13  when Apple asked Plaintiffs if they have export plans, Plaintiffs responded in
14  the negative.  Apple has yet to hear a compelling justification for this dispute,
15  and therefore continues to seek sensible and definitive protections against the
16  export of its sensitive materials abroad, particularly given the information that
17  will be at issue in this case.[5]

18

19  _____

20      [5] The theft of intellectual property by foreign companies and nationals is
21  an indisputable issue for American companies, including Apple; in fact, it is
    considered one of the greatest threats to American businesses and the U.S.
22  economy.  The United States has responded in kind, including with the White
    House Annual Intellectual Property Report from 2019 discussing the country's
23  focus on combatting the theft of trade secrets by international actors
24  (https://www.whitehouse.gov/wp-content/uploads/2020/04/IPEC-2019-Annual-
    Intellectual-Property-Report.pdf), the Department of Justice Task Force on
25  Intellectual Property, which "confront[s] the growing number of domestic and
    international intellectual property (IP) crimes" (https://www.justice.gov/iptf),
26  and a trade deal with China entered earlier this year to, among other things,
27  protect trade secrets, increase the scope of liability for trade secret
    misappropriation, and prohibit unauthorized disclosure by government
28  personnel or third parties in proceedings (Economic and Trade Agreement

-18-

**Exhibit 1**
**-26-**

**D.     Section 9.2(b) and (j)– Disclosure of Confidential Information**

The Parties' dispute on Sections 9.2(b) and (j) is shown below, with underlined text showing Apple's proposed additions to Plaintiffs' proposal and strikethrough text showing Apple's proposed deletions to Plaintiffs' proposal:

9.2     Disclosure of "CONFIDENTIAL" Information or Items.

. . .

(b) ~~the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action~~ <u>Not more than three (3) representatives of the Receiving Party who are officers or employees (including House Counsel) to whom disclosure is reasonably necessary for this Action, provided that:  (a) each such person has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) no unresolved objections to such disclosure exist after proper Pre-Access Disclosure Requirements are provided to all Parties and all objections have been resolved under the Objections Process under 9.2(c) below;</u>

. . .

~~(j) during their depositions, witnesses, and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit A hereto; and (2) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A),~~

---

Between the United States of America and the People's Republic of China: Phase 1 (January 15, 2020)).  In this context, Apple's proposal to limit export of its extremely sensitive materials is not only reasonable, but critical.

-19-

**Exhibit 1**
**-27-**

1  ~~unless otherwise agreed by the Designating Party or ordered by the~~
2  ~~court. Pages of transcribed deposition testimony or exhibits to~~
3  ~~depositions that reveal Protected Material may be separately bound~~
4  ~~by the court reporter and may not be disclosed to anyone except as~~
5  ~~permitted under this Stipulated Protective Order.~~

6  **1.    Plaintiffs' Position**

7    Plaintiffs again propose adopting the Court's Model Order.  *Compare*
8  Powell Decl., Ex. 1 (Model Order) at 10-11 *with* Ex. 2 (Plaintiffs' proposal) at
9  13, 16.  Courts in this district routinely include similar provisions in protective
10 orders.  *See, e.g.*, *Uniloc 2017 LLC v. Netflix, Inc.*, No. 8:18-cv-02055-GW-
11 DFM, Dkt. No. 80 (C.D. Cal. Aug. 5, 2019) (Powell Decl., Ex. 19) at 3-4
12 (permitting disclosure of confidential material to "[t]he officers, directors, and
13 employees of the receiving party to whom disclosure is reasonably necessary,
14 and who have signed the Agreement to Be Bound (Exhibit A)" and "During
15 their depositions, witnesses in the action to whom disclosure is reasonably
16 necessary and who have signed the Agreement to be Bound (Exhibit A)"); *XR*
17 *Comms., LLC v. D-Link Systems, Inc.*, No. 8:17-cv-00596-JVS-JCG, Dkt. No.
18 113 (C.D. Cal. Mar. 6, 2018) (Powell Decl., Ex. 20) at 4 (same).

19   Apple proposes limiting Section 9.2(b) to only three individuals who
20 must be disclosed ***and*** approved by the opposing party.  Powell Decl., Ex. 4 at
21 13.  Apple completely strikes Section 9.2(j).  *Id.*, Ex. 4 at 16.  During the
22 conference of counsel, Apple provided no justification for its proposals.
23 Instead, it asserted its proposal on 9.2(b) was a "standard" Apple provision and
24 that it has not agreed to a provision similar to Section 9.2(j) in other cases.
25 Apple's asserted preference is not sufficient justification for departing from the
26 Court's Model Order.

27   Plaintiffs' proposal (and the Model Order) are reasonable.  Section 9.2(b)
28 allows the parties to show "Confidential" information to party employees if it is

**Exhibit 1
-28-**

1   reasonably necessary.  For example, litigants routinely designate non-public

2   communications between the parties as "Confidential" because they need not be

3   kept confidential from employees of the opposing party, but should not be made

4   public.  Section 9.2(j) allows the parties to show "Confidential" information to

5   witnesses during their depositions if it is "reasonably necessary" and the

6   individual agrees to be bound by the Protective Order.  These provisions are

7   entirely appropriate because they apply only to the lowest tier of "Confidential"

8   information.  *See* Section 9.3 and 11, *infra*.  More sensitive information, like

9   trade secrets, may be designated "Highly Confidential – Attorneys' Eyes Only"

10  or "Highly Confidential – Source Code" and may not be viewed by individuals

11  authorized under Sections 9.2(b) and (h).  That is one important purpose of a

12  multi-tier Protective Order.  The Court should adopt Plaintiffs' proposal.

13       **2.    <u>Defendant's Position</u>**

14       The parties dispute how many and which types of individuals should have

15  access to Protected Material on behalf of the Receiving Party.  Plaintiffs'

16  proposal seeks an unlimited grant of access to all of their officers, directors, and

17  employees under the ambiguous cover of "reasonably necessary" without any

18  advanced designation.   Under this proposal, Apple would have no way of

19  knowing, for example, how many people at Masimo have been shown Apple's

20  confidential information or any basis to discern how Masimo concluded that

21  disclosure to those people was "reasonably necessary."  Apple should not be

22  forced to provide that type of discretion to an adversary.

23       Apple's proposal provides an appropriate safeguard against Plaintiffs

24  applying the vague "reasonably necessary" language in a way that would

25  unnecessarily expose Apple's confidential information to Plaintiffs' employees.

26  In addition, a restriction on the number of employees that may view confidential

27  materials is appropriate to further limit the risk of misuse.  Plaintiffs' proposal

28  does not afford Apple either protection and such protections are absolutely

**Exhibit 1
-29-**

necessarily.  For example, if Plaintiffs have a team of engineers currently working on the development of a potentially competing product (e.g., a competing smartwatch), Apple should have the right to oppose disclosure *before* Plaintiffs determine that disclosure of Apple's confidential information to that team of engineers is reasonably necessary.  Under Plaintiffs' proposal, Plaintiffs could provide this sensitive information to a team of four or more such engineers if Plaintiffs deemed it reasonably necessary.   Under Plaintiffs' proposal, Apple would not have a right to oppose this disclosure, nor would it even know that the disclosure occurred.

Plaintiffs have submitted provisions from protective orders in other cases that do not limit the number of people with access to confidential information and that do not provide a right of objection, but those provisions are inapposite here.  In contrast to the parties in the cited cases, Apple is one of the largest technology companies in the world, whose value lies in the protection and security of its proprietary and confidential information.  The need to limit the exposure and dissemination of its confidential information is apparent and should be observed.   In expanding the number of Plaintiffs' recipients of Apple's confidential information, Plaintiffs' proposal unnecessarily extends the vulnerability and exposure of Apple's confidential information beyond any level necessary to the prosecution of this case.

Moreover, to support their proposal, Plaintiffs identify a practice that some litigants "routinely designate non-public communications between the parties as 'Confidential' . . . because they should not be made public."  In so doing, Plaintiffs disregard the purpose of confidentiality designations as protections against the improper access to private information.   Plaintiffs' argument also neglects the fact that a majority of documents that receive the "confidential" designation receive do so not merely because they should be kept private, but also because they should be kept confidential from employees of the

-22-

Exhibit 1
-30-

1    opposing party—particularly where those employees may be working on a
2    future competitive product or are involved in some other work that would
3    provide the Producing Party with a basis to object.

4         Plaintiffs' Section 9(j) proposal is objectionable for many of the same
5    reasons as their proposal in 9(b).  Like 9(b), Plaintiffs' proposal in Section 9(j)
6    would enable disclosure of confidential information to a deposition witness
7    without any prior ability for Apple to object.  Section 9(j) permits Plaintiffs to
8    transmit Apple's "confidential" information to *any* individual who signs an
9    acknowledgement form, even one signed on the spot during a deposition.
10   Denying Apple the ability to raise any objections to that person seeing Apple's
11   confidential information would create an end-run around the provisions needed
12   in 9(b) for Plaintiffs' employees and is even more important if Plaintiffs seek to
13   depose Apple's competitors, business partners, or others who should not be
14   permitted to review Apple confidential information at all.  Plaintiffs' proposed
15   Section 9(j) would enable *anyone* that Plaintiffs call for deposition in this case
16   to view Apple's non-public information.  That is not how the process is
17   supposed to work—and it risks improper disclosure of Apple's highly sensitive
18   information and gamesmanship on the part of Plaintiffs in noticing depositions
19   in this case.  The Court should reject Plaintiffs' proposed Section 9(j) in its
20   entirety.

21   **E.     Section 9.2(f) – Disclosure of Confidential Information**

22        The Parties' dispute on Section 9.2(f) is shown below, with underlined
23   text showing Apple's proposed additions to Plaintiffs' proposal and
24   strikethrough text showing Apple's proposed deletions to Plaintiffs' proposal:

25             (f) professional jury or trial consultants, mock jurors, and
26             Professional Vendors to whom disclosure is reasonably necessary
27             for this Action and who have signed the "Acknowledgment and
28             Agreement to Be Bound" (Exhibit A), provided that the name of

-23-

**Exhibit 1
-31-**

1    ~~any e-discovery vendors must be disclosed at least fourteen (14)~~
2    ~~days before providing the e-discovery vendor with Protected~~
3    ~~Material so that the Producing Party has an opportunity to object~~
4    ~~pursuant to the objection procedure set forth in subparagraph (c)~~
5    ~~above~~;

6    ### 1.    **Plaintiffs' Position**

7    Plaintiffs propose the parties provide advance disclosure of e-discovery
8    consultants and an opportunity to object.  This provision is not present in the
9    Model Order, but is necessary in this case to prevent a specific risk associated
10   with Apple using Consilio LLC as an e-discovery consultant.  Consilio working
11   for Apple in this case is highly problematic because Consilio worked for
12   Plaintiffs in matters that Apple considers directly relevant to this case.  Consilio
13   thereby obtained access to Plaintiffs' highly confidential and privileged
14   information *relevant to this case*.

15   In particular, Plaintiffs retained Consilio in *True Wearables*, which Apple
16   asserts is a related case that involves issues "nearly identical" to this case.
17   Powell Decl. ¶ 11 and Ex. 24 (Apple's Notice of Related Cases) at 3.  Apple has
18   already pursued discovery concerning *True Wearables*, including requesting
19   "All documents produced by Masimo and Cercacor in [*True Wearables*]."
20   Powell Decl. ¶ 13.  In its role as Plaintiffs' e-discovery consultant in that "nearly
21   identical" case, Consilio collected Plaintiffs' highly confidential and privileged
22   information.  *Id.* ¶ 11.  Consilio hosted Plaintiffs' documents in a database,
23   including non-produced documents that were not responsive and/or privileged.
24   *Id.*  While Plaintiffs have since terminated Consilio's involvement in *True*
25   *Wearables*, Consilio still had access to those files around the time Plaintiffs
26   filed this lawsuit.  *Id.*

27   Consilio was also Plaintiffs' forensic expert in *Masimo Corp. v. Sotera*
28   *Wireless Inc.*, No. 30-2013-00649172-CU-IP-CJC (Cal. Sup. Ct.) ("*Sotera*").

-24-

Exhibit 1
-32-

Case 8:20-cv-00048-JVS-JDE   Document 336-3   Filed 04/08/21   Page 35 of 129   Page ID
#:30565
Case 8:20-cv-00048-JVS-JDE   Document 61-1   Filed 06/26/20   Page 31 of 92   Page ID
#:4217

1   *Id.* ¶ 12.   In *Sotera*, Consilio analyzed forensic images of devices used by

2   former Masimo employees who left to work for Sotera.   *Id.*   One of those

3   employees was a Masimo executive involved in both Masimo's engineering and

4   marketing departments.   *Id.*   Consilio even **testified** for Masimo at trial in that

5   matter.   *Id.*   Two individual forensic consultants who worked for Plaintiffs in

6   *Sotera* are presently Consilio's "Senior Director – Digital Forensics & Expert

7   Services" and "Senior Manager in Digital Forensics and Expert Services (DFES

8   group)."   *Id.*, Ex. 9.   *Sotera* is currently stayed and Consilio retains access to

9   Plaintiffs' information because the matter has not yet been dismissed.   *Id.* ¶ 12.

10   Similar to *True Wearables*, Apple initially asserted *Sotera* was relevant to

11   this case by seeking production of "All Documents and Communications

12   relating to the trade secrets which You alleged were misappropriated by the

13   defendants in [*Sotera*]."   *Id.* ¶ 13.   Apple claims it no longer asserts *Sotera* is

14   relevant because Plaintiffs indicated they are not aware of overlapping trade

15   secrets in the two cases.   *Id.* ¶ 14.   However, Apple expressly reserved the right

16   to pursue discovery regarding *Sotera*.   *Id.*   Additionally, Apple cannot deny that

17   Consilio obtained privileged information in *Sotera* regarding other related

18   issues, including Masimo's strategies for litigating trade secret cases.

19   During the conference of counsel, Plaintiffs told Apple this provision was

20   necessary only to prevent Consilio from working for Apple on this case.   *Id.*

21   Plaintiffs told Apple they would agree to remove this provision if Apple agreed

22   not to use Consilio.   *Id.*   Doing so would both protect Plaintiffs' information

23   **and** reduce the risk of Apple's counsel being disqualified if Consilio

24   intentionally or inadvertently conveyed to them Plaintiffs' privileged

25   information.   Apple refused, but never explained why Apple must use Consilio

26   instead of the dozens of other available e-discovery consultants.   *Id.*   Apple's

27   insistence on using Consilio is troubling.   Consilio apparently has no concern

28   about working for Plaintiffs in *True Wearables* and working for Apple in this

-25-

**Exhibit 1
-33-**

case.   Consilio presents an unacceptably high risk of improperly disclosing Plaintiffs' confidential and privileged information to Apple, even inadvertently, as well as unquestionably presenting an appearance of impropriety and conflicted loyalty.

Disqualification is appropriate where both (1) a confidential relationship exists and (2) confidential information was disclosed to the consultant. *Broadcom Corp. v. Emulex Corp.*, 2010 WL 11465478, at *1 (C.D. Cal. Apr. 5, 2010) (J. Selna).  The Court should "also consider prejudice to both parties and whether disqualification would promote the integrity of the legal process."  *Id.* (granting motion for disqualification).   As discussed above, Consilio had a confidential relationship with Plaintiffs and received confidential and privileged information from Plaintiffs in cases that Apple asserts are relevant to this matter. While the prejudice to Plaintiffs of improper disclosure would be severe (and the appearance of impropriety is already highly concerning), Apple will suffer no prejudice from simply using a different e-discovery consultant.  *See id.* (finding no prejudice because the defendant could find a new expert).  Requiring Apple to use a different consultant would promote the integrity of the legal process by avoiding actual and apparent conflicts of interest.

Accordingly, the Court should bar Apple from using Consilio in this case, or at least adopt Plaintiffs' proposal so that Plaintiffs have an opportunity to object if Apple attempts to retain Consilio in connection with this case.

## 2. __Defendant's Position__

Plaintiffs' efforts to disqualify Apple's discovery vendor Consilio through a proposed protective order provision is unprecedented and inappropriate.  If Plaintiffs have concerns about Apple's use of Consilio in this case, they should attempt to satisfy their burden of disqualifying Apple's discovery vendor through a properly noticed motion on the issue.  A proposed protective order provision is not the appropriate vehicle.

-26-

Exhibit 1
-34-

1    Indeed, Apple suspects that Plaintiffs are attempting to backdoor this

2  issue in through a proposed protective order provision precisely because the

3  case law does not support a request for a discovery vendor's disqualification

4  under the circumstances present here.  In *Gordon v. Kaleida Health*, for

5  example, a discovery vendor (D4) provided services to both the plaintiffs and

6  the defendants *in the same matter*, and the court determined there was "no need

7  to protect Defendants from the risk of possible prejudicial disclosure of

8  Defendants' confidential information as a result of D4's providing ESI

9  consulting services to Plaintiffs."  2013 WL 2250506, at *10 (W.D.N.Y. May

10  21, 2013).  Here, Consilio did not provide any discovery services to Plaintiffs in

11  connection with the present lawsuit—and, therefore, this is even more of a

12  clear-cut case than the *Gordon* case involving services provided to both the

13  plaintiffs and the defendants in the *same* matter.  Consilio's services for

14  Plaintiffs on the related *True Wearables* lawsuit were minimal and short-lived.

15  And Consilio's services for Plaintiffs in the *Sotera* lawsuit were for a matter that

16  Plaintiffs have steadfastly represented has nothing to do with this case.

17    With respect to the *True Wearables* case, to which Apple is not a party,

18  approximately a year and a half ago, Plaintiffs' counsel sent Consilio a

19  comparatively small amount of data.  Consilio processed and hosted that data

20  from Plaintiffs *but never reviewed* the data.  After a few months of no activity,

21  Plaintiffs' counsel asked Consilio to return the data—because Plaintiffs had

22  decided to host the data through their outside counsel—and Consilio complied.

23  Consilio later informed Plaintiffs' counsel that it would work with Apple, not

24  Plaintiffs, on any matters involving Masimo where Apple is a defendant

25  (including this case).  Consilio no longer has possession of any of Plaintiffs'

26  data from *True Wearables*, did not review any of the small amount of *True*

27  *Wearables*-related data that it previously received from Plaintiffs, and has not

28  performed any work for Plaintiffs in connection with the present case.

-27-

Exhibit 1
-35-

Case 8:20-cv-00048-JVS-JDE   Document 336-3   Filed 04/08/21   Page 38 of 129   Page ID
#:30568
Case 8:20-cv-00048-JVS-JDE   Document 61-1   Filed 06/26/20   Page 34 of 92   Page ID
#:4220

1    Plaintiffs' reference to the *Sotera* matter is even more perplexing.  As
2  Apple explained to Plaintiffs during multiple meet and confers, the *only* reason
3  Apple propounded a discovery request in this case that mentioned the *Sotera*
4  matter is because *Sotera* involved allegations of trade secret misappropriation
5  by Plaintiff Masimo.  Given the vague nature of Plaintiffs' allegations of their
6  purported trade secrets in this case, Apple had no basis to rule out the potential
7  relevance of any other claim of trade secret misappropriation brought by either
8  Plaintiff, including by Plaintiff Masimo in the *Sotera* case.  As soon as Plaintiffs
9  represented to Apple that they *did not believe* that any of the trade secrets
10 alleged in *Sotera* overlap with the purported trade secrets alleged in this case,
11 Apple agreed not to further pursue the request—but reserved all rights because
12 Plaintiffs' representation was not a conclusive or definitive one.  In any event,
13 Plaintiffs' repeated position has been that *Sotera* is not relevant to this lawsuit,
14 and Apple has not pressed the issue (and has no plans to do so, particularly now
15 that the trade secret claim has been dismissed).  Plaintiffs' reference to *Sotera* in
16 this submission therefore is surprising, to say the least—as is Plaintiffs'
17 suggestion that Apple would agree or concede that Consilio has obtained
18 "privileged information" about "Masimo's strategies for litigating trade secret
19 cases" that would preclude Consilio from serving as a discovery vendor for
20 Apple in this case.  Apple *disagrees* with that assertion, and believes the case
21 law is clear that the facts at issue here do not create a conflict that warrants
22 Consilio's exclusion, let alone an unprecedented protective order provision with
23 the same effect.

24    Plaintiffs' efforts to disqualify Apple's discovery vendor through a
25 proposed protective order provision are meritless.  If Plaintiffs have non-
26 frivolous concerns about Apple's use of Consilio in this case, they can file a
27 properly noticed motion.  That will give Apple a full and fair opportunity to
28 respond—including with citations to all of the case law that refutes Plaintiffs'

-28-

**Exhibit 1
-36-**

1   argument, with a response to Plaintiffs' bald assertion that Apple "will suffer no

2   prejudice from simply using a different e-discovery consultant," which is false,

3   and with a declaration from Consilio that, among other things, refutes Plaintiffs'

4   suggestion that Consilio has reviewed or continues to have possession of

5   Plaintiffs' privileged information.[6]  A disqualification ruling does not belong in

6   a protective order provision.[7]

7   **F.       Section 9.3 – Use of Highly Confidential Information**

8            The Parties' dispute on Section 9.3 is shown below, with underlined text

9   showing Apple's proposed additions to Plaintiffs' proposal and strikethrough

10  text showing Apple's proposed deletions to Plaintiffs' proposal:

11           9.3.   Disclosure     of    "HIGHLY     CONFIDENTIAL     –

12           ATTORNEYS' EYES ONLY" Information or Items.   Unless

13           otherwise ordered by the court or permitted in writing by the

14           Designating Party, a Receiving Party may disclose any information

15           or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS'

16           EYES ONLY" only to the individuals identified in Paragraphs 9.2

17           (a), (c)-(i), who are not competitive decision makers of a Party,

18           provided that such Outside Counsel under Paragraph 9.2(a) is not

19           involved in competitive decision-making, as defined by *U.S. Steel*

20           *v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on

21   _____

22           [6] Apple has not submitted a declaration from Consilio with this Joint

23   Stipulation given its position that this dispute is not ripe for adjudication in
     connection with protective order briefing.  Apple certainly will be prepared with

24   such a declaration if and when the Court considers this issue, and therefore

25   respectfully requests an opportunity to submit such a declaration at the
     appropriate time—before the Court decides this issue.

26

27           [7] Adding a "notice and objection" provision like the one alternatively
     proposed by Plaintiffs will serve only to kick the can down the road on the same

28   (meritless) issue, and therefore should be rejected.

Exhibit 1
-37-

behalf of a Party or a competitor of a Party and such proposed Outside Counsel did not, at the time the lawsuit was filed or within the previous two (2) years from the date the lawsuit was filed, have a business or ownership interest in a Party (i.e., was not a Board member, Director, officer, employee, or hold a title with a Party). Additionally, whether Plaintiffs' trade secret disclosure under California Code of Civil Procedure Section 2019.210 is designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY," access to said disclosure shall be permitted for three (3) Apple House Counsel.

### 1.      **Plaintiffs' Position**

Plaintiffs again propose language similar to the language this Court adopted in *True Wearables*.  *Compare* Powell Decl., Ex. 2 (Plaintiffs' proposal) at 16 *with* Ex. 13 (*True Wearables*) at 8.  Apple replaced that language with a proposal that (a) seeks to prevent certain of Plaintiffs' ***outside*** counsel from accessing "Highly Confidential" information, yet (b) seeks to allow three of Apple's ***in-house*** counsel access to Plaintiffs' "Highly Confidential" trade secret information in Plaintiffs' Section 2019.210 statement.  *Id.*, Ex. 4 at 17.  The Court should adopt Plaintiffs' proposal on both issues.

### a.      **The Court Should Reject Apple's "Relationship" Restriction**

Apple proposes language that is nearly identical to the language this Court previously rejected in *True Wearables*.  In that case, the defendant asked this Court to allow access only to individuals who, within two years prior to filing suit, did "not have a business or ownership interest in a Party (*i.e.*, not competitive decision makers, Board members, Directors, employees, owners, shareholders, or affiliates of a Party)."  Powell Decl., Ex. 12 at 9.  The defendants were trying to prevent Stephen Jensen from participating in the case.

-30-

Exhibit 1
-38-

Case 8:20-cv-00048-JVS-JDE   Document 336-3   Filed 04/08/21   Page 41 of 129   Page ID
#:30571
Case 8:20-cv-00048-JVS-JDE   Document 61-1   Filed 06/26/20   Page 37 of 92   Page ID
#:4223

After extensive briefing, this Court rejected the defendants' proposal and adopted language similar to the language Plaintiffs propose in this case, which bars only "competitive decisionmakers." *Id.*, Ex. 13 at 8.  This Court then rejected the defendants' direct challenge to Jensen and concluded he was ***not*** a "competitive decisionmaker." *Id.*, Ex. 14 at 5-6.

Here, Apple proposes language that is nearly identical to the language this Court previously rejected.  In particular, Apple seeks to allow access only to individuals who, within two years prior to filing suit, did not "have a business or ownership interest in a Party (i.e., was not a Board member, Director, officer, employee, or hold a title with a Party)."  Powell Decl., Ex. 4 at 17.  Apple has not explained why this provision is necessary or provided any factual or legal basis, whatsoever, for this provision.  Indeed, Apple recently stipulated to a protective order without such language. *See Pinn* (Powell Decl., Ex. 17) at 8.  It appears Apple is proposing this unusual language to exclude Jensen because Apple added the language to its proposal as the parties in *True Wearables* were litigating the same issue.  Moreover, it does not appear that any of Plaintiffs' other outside counsel could be impacted by this provision.  Thus, while Plaintiffs are in the dark as to Apple's reason or basis for this provision, Plaintiffs will direct their arguments towards Jensen in particular.

To restrict access to highly confidential information, Apple has the burden of showing an unacceptably high risk of inadvertent disclosure. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).  Apple also bears "the burden of showing that specific prejudice or harm will result from the disclosure of each document (or item of information) that it seeks to protect." *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 554 (C.D. Cal. 2007) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1130 (9th Cir. 2003)).  The district court must balance the risk of the disclosure against the risk to the receiving party that the denial of access would

**Exhibit 1
-39-**

1   impair prosecution of its claims. *Brown Bag*, 960 F.2d at 1470; *see also In re*
2   *Deutsche Bank,* 605 F.3d 1373, 1380 (Fed Cir. 2010). Apple cannot satisfy any
3   of those requirements here.

4          i.   **Apple Cannot Show Jensen Will Inadvertently**
5               **Disclose Protected Material**

6          To evaluate the risk of inadvertent disclosure, the Court should examine
7   "the factual circumstances surrounding [Jensen's] activities, association, and
8   relationship with a party." *U.S. Steel*, 730 F.2d at 1468. A "crucial factor" is
9   whether Jensen is "involved in 'competitive decisionmaking'; that is advising
10  on pricing or design 'made in light of similar or corresponding information
11  about a competitor.'" *Brown Bag*, 960 F.2d 1470 (quoting *U.S. Steel*, 730
12  F.2d at 1468 n.3). Here, this Court recently determined Jensen is not involved
13  in "competitive decisionmaking" for Plaintiffs. Powell Decl., Ex. 14 at 5-6; *see*
14  *also* Jensen Decl. ¶ 10; Kiani Decl. ¶ 6.

15         A protective order also mitigates risk because courts presume attorneys
16  will abide by protective orders and not expose themselves to contempt
17  sanctions. *Coventry First LLC v. 21st Servs.*, No. 05CV2179-IEG (NLS), 2005
18  WL 8173350, at *5 (S.D. Cal. Dec. 22, 2005) ("[I]n the absence of any actual
19  evidence of bad faith, the Court declines to presume [the attorneys] will disclose
20  [the] confidential information, thereby breaching the protective order and
21  exposing themselves to contempt sanctions.") (*citing Truswal Sys. Corp. v.*
22  *Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987)). Not only have
23  the parties agreed to a protective order, they even agree on barring Jensen and
24  the rest of Plaintiffs' litigation team from engaging in patent prosecution.

25         At most, Apple may show Jensen is in contact with corporate officers
26  who make competitive decisions. But that is not enough. *See Matsushita Elec.*
27  *Indus. Co. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991) (finding
28  "largely irrelevant" regular contact with corporate officials who make policy or

-32-

**Exhibit 1**
**-40-**

Case 8:20-cv-00048-JVS-JDE   Document 336-3   Filed 04/08/21   Page 43 of 129   Page ID
#:30573
Case 8:20-cv-00048-JVS-JDE   Document 61-1   Filed 06/26/20   Page 39 of 92   Page ID
#:4225

1    competitive decisions). Rather, "the factual circumstances surrounding each

2    individual counsel's activities, association, and relationship with a party . . .

3    must govern any concern for inadvertent or accidental disclosure." *U.S. Steel*,

4    730 F.2d at 1468 ("Whether an unacceptable opportunity for inadvertent

5    disclosure exists, however, must be determined, as above indicated, by the facts

6    on a counsel-by-counsel basis").

7         Interaction with decision makers is insufficient because the issue does not

8    turn on the functions of the people a lawyer meets with, but on the functions of

9    the lawyer. As the Federal Circuit observed, "the standard is not 'regular

10   contact' with other corporate officials who make 'policy,' or even competitive

11   decisions, but 'advice and participation' in 'competitive decisionmaking.'" *Id.*

12   at 1580. Lead litigation lawyers regularly report to boards and corporate

13   officers about ongoing litigation, despite the lawyers having access to highly

14   confidential information and the boards and officers engaging in competitive

15   decision-making. The point is that the people who have access to the highly

16   confidential information are not the people making the competitive decisions. If

17   the standard were physical proximity to, or regular interaction with, competitive

18   decision makers, no lead litigation counsel would ever see confidential

19   information.

20        Apple cannot meet its burden of showing Jensen, or any other lawyer at

21   Knobbe Martens, poses an unacceptably high risk of inadvertent disclosure.

22                    **ii.    Apple Cannot Show It Will Suffer Harm**

23        Apple also has not even attempted to meet its "burden of showing that

24   specific prejudice or harm will result from the disclosure of each document (or

25   item of information) that it seeks to protect." *Nutratech*, 242 F.R.D. at 554.

26   Apple's proposed language does not specify any particular information Jensen

27   should be excluded from viewing. Apple also failed to explain any particular

28   harm that Apple would suffer from Jensen viewing such information.

**Exhibit 1**
**-41-**

### iii.    Apple's Restriction Would Prejudice Plaintiffs

Exclusion of Jensen would also prejudice Plaintiffs.  *See In re Deutsche Bank,* 605 F.3d 1373, 1380 (Fed. Cir. 2010) ("[T]he district court must balance [the risk of disclosure] against the potential harm to the opposing party from restrictions on that party's right to have the benefit of counsel of its choice").  Jensen has served as Masimo's outside counsel for over twenty-five years.  *See* Kiani Decl. ¶ 4; Jensen Decl. ¶ 2.  During that time, Jensen has represented Plaintiffs in numerous cases involving Masimo's direct competitors and the exchange of highly confidential information.  Jensen Decl. ¶ 3.  Plaintiffs rely heavily on Jensen to evaluate and manage all of their intellectual property litigation and other litigation concerning the companies' technologies.  *Id.* ¶¶ 6-7; Kiani Decl. ¶¶ 4-5.  Over the years, Jensen has gained extensive knowledge of Plaintiffs' technology.  This has given him a unique ability to readily discern when others are using that technology, assuming, of course, he can see the relevant evidence.  No other lawyer has Jensen's breadth of understanding of Plaintiffs' technology and trade secrets.  Kiani Decl. ¶¶ 5, 9; Jensen Decl. ¶ 5-6, 9-10.

Although numerous opponents have tried to deprive Masimo of Jensen's leadership in litigation, they have never succeeded.  Every court to address this issue has allowed Jensen access to highly confidential materials or information.  Jensen Decl. ¶ 4.  Indeed, this Court twice rejected the *True Wearables* defendants' attempts to bar Jensen from accessing highly confidential information.  Powell Decl., Exs. 22 and 23.  Additionally, Apple's outside counsel in this case unsuccessfully attempted to exclude Jensen on behalf of another client in another case.  *Id.*, Ex. 18 at 24-25.  This recurrence suggests that Plaintiffs' adversaries, including Apple, are well aware that depriving Plaintiffs of their experienced choice of counsel would severely prejudice Plaintiffs.

Exhibit 1
-42-

1    Jensen is accustomed to abiding by protective orders, appropriately
2  handling and maintaining designated materials, and ensuring that he never
3  reveals those materials, or the confidential information they contain, to his
4  clients.  Jensen Decl. ¶¶ 5 and 9; Kiani Decl. ¶ 10.  Moreover, when appropriate,
5  Jensen uses the best safeguard possible—he refrains from engaging in any
6  discussion that could arguably implicate any information revealed to him under
7  a protective order—as should any other outside lawyer.  Jensen Decl. ¶ 5; Kiani
8  Decl. ¶ 10.  Because the actual prejudice to Plaintiffs outweighs any alleged—
9  although unexplained—harm to Apple, this Court should reject Apple's
10  proposed restriction.

11            **b.    The Court Should Reject Apple's Attempt to Provide
12            Plaintiffs' Trade Secrets To Its In-House Counsel**

13    Apple argued Plaintiffs' Section 2019.210 disclosure must be detailed and
14  that this particular case requires a "more exacting level of particularity" than
15  standard trade secret cases.  Powell Decl., Ex. 25 at 21 n.1.  Despite advocating
16  for such a high standard, Apple insists that three of its ***in-house*** lawyers should
17  have access to the highly confidential trade secrets set forth in Plaintiffs'
18  Section 2019.210 disclosure.  *Id.*, Ex. 4 at 17.  Apple provides no support or
19  justification for requiring Plaintiffs to disclose ***trade secrets*** to Apple
20  employees.   Apple's proposal thus creates a significant risk of further
21  misappropriation of Plaintiffs' trade secrets.

22    "Requiring a party to rely on its competent outside counsel does not
23  create an 'undue and unnecessary burden'"  *See Intel Corp. v. VIA Techs., Inc.*,
24  198 F.R.D. 525, 529 (N.D. Cal. 2000) (rejecting Intel's request to allow its in-
25  house counsel access to highly confidential material because Intel was
26  represented by competent outside counsel); *see also CytoSport, Inc. v. Vital
27  Pharm., Inc.*, 2010 WL 1904840, at *2 (E.D. Cal. May 10, 2010) (rejecting
28  request for outside counsel to view confidential material because forcing

-35-

Exhibit 1
-43-

1  defendant to "rely on competent outside counsel does not create an 'undue and

2  unnecessary burden,' sufficient to demonstrate actual prejudice").  Here, Apple

3  is represented by Gibson Dunn, which claims it has 20 offices, 1300+ lawyers,

4  and "129 years of excellence."   *See* https://www.gibsondunn.com (accessed

5  June 19, 2020).  Apple will suffer no prejudice from denying Apple's in-house

6  counsel access to Plaintiffs' trade secrets.

7       Apple's proposal also highlights its continued lopsided approach to

8  litigating this case.   Apple is simultaneously seeking to prevent one of

9  Plaintiffs' ***outside*** counsel from accessing all highly confidential information

10  while providing three of Apple's ***in-house*** counsel access to Plaintiffs ***trade***

11  ***secrets***.  *See* Powell Decl., Ex. 4 at 17.  Nothing supports such a one-sided and

12  inequitable proposal.  The Court should adopt Plaintiffs' proposal.

13       **2.   Defendant's Position**

14       The parties have two disputes over which individuals should receive

15  access to another party's highly confidential information.  *First,* Apple seeks

16  entry of a protective order that denies access of its highly confidential and

17  sensitive "attorneys' eyes only" documents to a party's outside counsel who are

18  competitive decision-makers or have served on a party's Board of Directors

19  within the last two years.  This request is a reasonable and necessary measure to

20  protect Apple's valuable technical information from inadvertent disclosure or

21  misuse.  *Second*, to the extent Plaintiffs replead their trade secret claim, Apple

22  seeks to have a limited number of its in-house counsel receive access to

23  Plaintiffs' alleged trade secrets, given the integral role in-house counsel is

24  playing in the defense of this matter.

25

26

27

28

Exhibit 1
-44-

     **a.**    **This Court Should Bar Those Who are Either Competitive Decision-Makers Or Are Present Board Members Or Were Board Members Within The Last Two Years From Accessing Confidential Materials**

The parties agree that this action will involve disclosure of trade secret and other confidential and proprietary information; the parties disagree as to whether outside counsel who are competitive decision-makers or serve on a party's Board of Directors should be permitted access to highly confidential documents designated by Apple as "Attorneys' Eyes Only." In support of their argument that such persons should have access, Plaintiffs rely on their briefing in the *True Wearables* case. However, Apple was not a party to that briefing and Plaintiffs' attempts to liken this case to *True Wearables* fails in any event. In *True Wearables*, Plaintiffs asserted trade secret and infringement claims against the six-year old medical device start-up True Wearables, Inc. This is an inapposite comparison to the present case with Apple, one of the largest technology companies in the world. The accused products in this case, the Apple Watch Series 4 and 5, are extremely successful and valuable products already in the wearables space—far different than the fledgling startup in *True Wearables*.

Ninth Circuit precedent is clear that district courts may preclude access to a party's confidential and proprietary information from those involved in an opposing party's competitive decision-making. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). The Federal Circuit has defined what "competitive decision-making" means,[8] and, to avoid any doubt as

---

       [8] Competitive decision-making is "[s]horthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions . . . made in light of similar or corresponding information about a competitor." *See U.S. Steel*

-37-

Exhibit 1
-45-

to its meaning, Apple's proposal explicitly incorporates that definition.  Mr. Jensen, is a long-time contributor to Plaintiffs' competitive decision-making.  Mr. Jensen's extensive participation in Plaintiffs' business enterprises creates an untenable risk that his access to Apple's confidential information will lead to the inadvertent disclosure to those most capable of misusing Apple's information.  But excluding competitive decision makers alone is not enough to resolve the dispute, because Plaintiffs argue that one of their outside counsel, Mr. Jensen, should not meet the Court's definition of a competitive decision maker, a position that Apple strongly disputes.  Rather than defer that issue to a later discovery dispute, Apple's proposed protective order also explicitly excludes current Board Members and those that have served in that role within the last two years, which would exclude Mr. Jensen since he is a current member of the Board of Directors of Plaintiff Cercacor.  Restricting access from Board members has been consistently upheld in cases in which courts have been asked to impose those restrictions because participation at Board meetings "present[s] an unacceptable opportunity for the inadvertent disclosure of confidential information" because of the conflicting duty of disclosure inherent in Board service and an individual's consent to abide by a protective order.  *See, e.g.*, *Meridian Enters. Corp. v. Bank of Am. Corp.*, 2008 WL 474326, at *4 (E.D. Mo. Feb. 15, 2008); *Norbrook Labs., Ltd. v. G.C. Hanford Mfg. Co.*, 2003 WL 1956214 (N.D.N.Y. April 24, 2003).

Here, good cause exists for granting Apple's protective order.  *First*, the nature and pervasive scope of Mr. Jensen's involvement with Plaintiffs' business enterprises cannot be adequately separated from his concurrent role in Plaintiffs' wider litigation licensing business in a way that will otherwise ensure the confidentiality of Apple's information.  *Second*, Mr. Jensen's service on

---

*Corp. v. United States*, 730 F.2d 1465, 1468 & n.3 (Fed. Cir. 1984).

-38-

**Exhibit 1
-46-**

1   Plaintiff Cercacor's Board of Directors and its attendant fiduciary duty to that
2   Board evince the conflict of interests inherent in allowing him access to Apple's
3   confidential trade secret information.   *Third*, the balance of hardships clearly
4   favors Mr. Jensen's exclusion in this case.  The harm to Apple of inadvertent
5   disclosure of its most confidential information to Plaintiffs is substantial, given
6   that this information is its "crown jewel," disclosure to other companies of
7   which would create substantial harm to Apple.   *See* Corp. Couns. Gd. To
8   Software Trans. § 8:2; *see also, e.g.*, *buySAFE, Inc. v. Google, Inc.*, No. 3:13-
9   CV-781, 2014 WL 2468553, at *2 (E.D. Va. June 2, 2014).   By contrast,
10  Mr. Jensen's exclusion would pose little harm to Plaintiffs, who employ a
11  variety of highly competent counsel (over fifteen partners and associates have
12  appeared on filings and meet and confers in this case) to represent them in this
13  and other cases.   Accordingly, an order preventing Mr. Jensen and others
14  similarly situated from viewing Apple's confidential information will not
15  meaningfully impair Plaintiffs' ability to conduct this litigation; it will simply
16  prevent the inadvertent misuse or disclosure in other existing or potential
17  litigation of confidential information obtained from this litigation.

18              **i.**      **The Relationship Between Mr. Jensen And**
19                          **Plaintiffs Presents An Unacceptable Risk Of**
20                          **Inadvertent Disclosure Of Confidential**
21                          **Information In This Case**

22              The decision to exclude counsel from discovery requires an assessment in
23  each case of "the risk of inadvertent disclosure."   *In re Matsushita Electric*
24  *Industrial Co. v. United States*, 929 F.2d 1577, 1579 (Fed. Cir. 1994) (quoting
25  *U.S. Steel Corp.*, 730 F.2d at 1468).  That risk, in turn, "must be determined . . .
26  by the facts on a counsel-by-counsel basis."   *Id.*  Although the Federal Circuit
27  has stated that the key inquiry in evaluating that risk involves determining
28  whether the lawyer is involved in his client's "competitive decision making," it

**Exhibit 1**
**-47-**

1    has also made clear that that term is simply "shorthand" for broader

2    considerations relevant to assessing the risk of inadvertent disclosure, such as "a

3    counsel's activities, association, and relationship with a client that are such as to

4    involve counsel's advice and participation in any or all of the client's decisions."

5    *U.S. Steel Corp*. 730 F.2d at 1468 n.3.  As one court has noted, "involvement in

6    competitive decisionmaking, while an important consideration [under *U.S. Steel*

7    *Corp*.], is not necessarily the exclusive one," and proper analysis under *U.S.*

8    *Steel* involves a "careful and comprehensive inquiry" into the lawyer's "role in

9    the affairs of [his client's] company, his association and relationship with those

10   in the corporate hierarchy who are competitive decisionmakers, and any other

11   factor that enhances the risk of inadvertent disclosure."  *Autotech Techs. Ltd.*

12   *P'ship v. AutomationDirect.com, Inc*., 237 F.R.D. 405, 408 (N.D. Ill. 2006).

13        Therefore, the determination of whether Mr. Jensen may be excluded

14   from access to confidential information involves a factual inquiry into whether

15   his "activities, association, and relationship" with Plaintiffs "are such as to

16   involve counsel's advice and participation in any or all" of Plaintiffs' decisions

17   in operating their licensing business.  *U.S. Steel Corp.*, 730 F.2d at 1468 n.3.

18        Over the course of Mr. Jensen's longstanding representation of Plaintiffs,

19   Mr. Jensen has served as both a day-to-day and long-term strategy advisor.  He

20   has evaluated the companies' intellectual property portfolios and overseen legal

21   due diligence, and he also served as Masimo's acting Senior Vice President of

22   OEM Business, Business Development and General Counsel.  *See* Biography of

23   Steve Jensen, *accessible at* https://www.knobbe.com/attorneys/steve-jensen.  It

24   was in this capacity that Mr. Jensen made business decisions relating to the

25   manufacture of Masimo's equipment and components.

26        In a 2020 declaration describing Mr. Jensen's role as Plaintiffs' attorney,

27   the former Chief Technology Officer at Masimo Corporation stated Mr. Jensen

28   "would advise Masimo about when to file patent applications, where to file

-40-

Exhibit 1
-48-

patent applications, whether to pursue continuations, and other decisions related to creating patent portfolio value." *Masimo Corp. v. True Wearables*, No. 3:18-CV-02001-JVS-JDE, Dkt. 82-6, Ex. 6 at ¶ 4 (Mar. 16, 2020).   Indeed, Mr. Jensen is listed as an attorney of record before the USPTO on each of the patents-in-suit and thus, may become a witness in this litigation, as the prosecuting patent attorney may sometimes be deposed regarding the statements made to the Patent and Trademark Office.

Taken together, these facts create a situation in which Mr. Jensen's experience as a business decision-maker is impossible to separate from his role as Plaintiffs' outside counsel.   Given the depth of his involvement and investment in Plaintiffs' business, Mr. Jensen should not be permitted to access Apple's highly confidential information.

### ii.   The Nature of Mr. Jensen's Service on Cercacor's Board of Directors Conflicts With The Obligation To Remain Silent Under A Protective Order

Directors are fiduciaries of a corporation and, as such, occupy positions of trust and confidence on which corporate officials must rely.   *In re Allegheny Int'l, Inc*., 954 F.2d 167, 180 (3d Cir. 1992).   A significant part of a director's duty of loyalty is to disclose to other decision-makers all information in his possession germane to a transaction at issue.   *Id.*

A Board member's duty of disclosure arises from a director's general duties of care, good faith, and loyalty to the corporation, and the duty of disclosure requires that directors "disclose fully and fairly all material information within the board's control." *Skeen v. Jo-Ann Stores*, 750 A.2d 1170 (Del. 2000).   The American Bar Association's Corporate Director's Guidebook states that corporate directors have the following duty of disclosure:

> As fiduciaries, directors have an obligation to take reasonable steps to ensure that shareholders are

-41-

Exhibit 1
-49-

> furnished with all relevant material information known to the directors … . Likewise, directors also have the duty to information their fellow directors and management about information known to the director that is relevant to corporate decisions.

ABA Section of Business Law, Corporate Director's Guidebook Fifth Edition, § 3(C)(4) (2007) (Exhibit A).

Apple's proposal seeks to exclude outside counsel with service on a Party's or a competitor of a Party's Board of Directors.  The reason for this is because such counsel bear fiduciary duties of disclosure to their Board of Directors, yet must also abide by their ethical obligations as attorneys to the protective order.  To permit these oft-conflicting commitments unnecessarily jeopardizes the security of Apple's most sensitive information.

Plaintiffs seek to invite these very risks by requesting that Mr. Jensen, member of both Cercacor's Board of Directors and Masimo's Board of Directors of the Masimo Foundation for Ethics, Innovation and Competition in Healthcare, receive access to Apple's highly confidential information.  Plaintiffs' contentions that Mr. Jensen does not make business decisions would mean that he does not fulfill his obligations to either Board as a director and thus, cannot mean what they said.  Directors are required to make decisions related to the business of the corporation in order to fulfill their fiduciary obligations.  Mr. Jensen's duties of disclosure inherent in his service on the Boards of both Plaintiffs directly fan the flames of the risks created in granting Mr. Jensen access to Apple's protected information.  The confidential technical information about Apple's business which Mr. Jensen learns through an "attorneys' eyes only" disclosure constitutes information that would be relevant to a variety of Plaintiffs' corporate decisions.  As such, Mr. Jensen's fiduciary duty to disclose such information would obligate Mr. Jensen to inform the other directors of Cercacor about any confidential "attorneys' eyes only" information

-42-

Exhibit 1
-50-

of Apple's that was also relevant to Cercacor's corporate decisions. Accordingly, Courts have recognized that there is direct conflict between outside counsel's obligations to abide by a protective order and his simultaneous fiduciary duty to the corporation as a Board member and have uniformly refused to allow access by individuals such as Mr. Jensen to the highly confidential/trade secret information of another party. *See Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co*. 2003 WL1956214, at *5 (N.D.N.Y. Apr. 24, 2003) ("While the court does not doubt [outside counsel and Board member] Mr. Heath's assurances that he will abide by the protective order, it cannot endorse a situation that places Mr. Heath's ethical obligations as an attorney in direct competition with his fiduciary duty to Hanford); *see also Meridian Enters. Corp. v. Bank of Am. Corp*., 2008 WL474326, at *3 (E.D. Mo. Feb. 15, 2008) (finding "that the risk of inadvertent disclosure is great because Mr. McMullin is both a shareholder of [Plaintiff] and a member of its Board of Directors, and therefore has a fiduciary duty to [Plaintiff] to disclose all information in his possession germane to issues discussed").

To the extent Plaintiffs may argue that they have no interest in Apple's underlying technology, that is false.  Plaintiffs' contention is belied by the fact that Cercacor sells a device that "measures hemoglobin" and "are synced via Bluetooth to an app which can display trends over time." *See Medgadget @ CES 2016: Cercacor's Ember Non-Invasive Hemoglobin Sensor*, Scott Jung, Medgadget (Jan. 8, 2016), https://www.medgadget.com/2016/01/medgadget-ces-2016-cercacors-ember-non-invasive-hemoglobin-sensor.html;   *see also Athletes can know their hemoglobin instantly with Ember* (Jan. 18, 2016), https://www.sportswearable.net/athletes-can-know-their-hemoglobin-instantly-with-ember/ ("Cercacor has produced a wearable which will provide you with real-time data.").  Plaintiffs' product is designed to interact with Apple's iPhone and the accused Apple Watch also interacts with the iPhone.  The likelihood of

-43-

Exhibit 1
-51-

1    future overlap between the technology that the accused products practice and
2    those of the products that Plaintiffs sell is increasing.   Indeed, Cercacor's
3    product and the Apple Watch are both wearables and are targeted to the
4    consumer market.   The wearable market is growing, especially as it relates to
5    health-related applications.   It is incredibly unfair and prejudicial for Cercacor
6    to have a member of its Board of Directors with a fiduciary duty to steer that
7    company in the right direction to have had access to Apple's highly confidential
8    technical, financial, and source code information.

9        Assume, for example, that Cercacor is considering introducing a new
10   feature that technical documentation from Apple shows to have been rejected as
11   unsuccessful.   By virtue of his access to Apple's highly confidential financial,
12   technical, and source code information, Mr. Jensen knows that Apple has
13   already rejected that feature as being unworkable.   As a result, Mr. Jensen,
14   sitting in the Board meeting considering the issue, knows that Cercacor will be
15   wasting million dollars if it proceeds.   Does he tell the Board and the
16   shareholders?  Mr. Jensen has a fiduciary duty to advise the company and at the
17   same time, a prohibition from disclosing that information under the protective
18   order in this case.   That is why the concern is so acute for Board members.   As
19   explained in *Norbrook Labs*, Board members and those with competitive
20   decision-making should be denied access to Apple's "attorneys' eyes only"
21   highly confidential technical, financial, and source code information.   2003
22   WL1956214, at *5.

23       And where source code is involved, the risk is even greater.   Indeed,
24   Plaintiffs cite no cases in this court or the Federal Circuit where Board members
25   of a reviewing party are subsequently allowed to view a competitor's guarded
26   technical information.

27
28

**Exhibit 1
-52-**

### iii.    The Risk Of Inadvertent Disclosure of Apple's Confidential Information Outweighs Harm To Plaintiffs, If Any

This litigation involves sensitive and highly confidential technology present in the Accused Products (the Apple Watch Series 4 and 5). Thus, the confidential technical documents at issue is information that Apple must be careful not to allow to fall into the hands of those that may be interested in developing products that may compete with or otherwise exploit the technology in the Accused Products or drafting patent claims to read on those products. Any disclosure or improper use of Apple's confidential information by Mr. Jensen or any outside counsel, even if inadvertent, would severely harm Apple by revealing its proprietary technology. Indeed, Apple could lose the entire competitive advantage offered by its proprietary features if its source code were disclosed.

We emphasize, of course, that our concern is inadvertent disclosure. We do not question Mr. Jensen's integrity as an officer of the court. But as the Federal Circuit has stated, "[i]nadvertence, like the thief-in-the-night, is no respecter of its victims." *U.S. Steel Corp.*, 730 F.2d at 1468. Where counsel is, like Mr. Jensen, an integral part of his client's litigation licensing enterprise, and is exposed to confidential information that may aid in advancing that enterprise, "compartmentalization of protected information is . . . 'a feat beyond the compass of ordinary minds.'" *Autotech*, 237 F.R.D. at 408 (quoting *Shepard v. United States*, 290 U.S. 96 (1933)). Or, to put it more bluntly: "once knowledge has been gained, a person cannot perform a prefrontal lobotomy on himself." *Id.* at 408 n.3.

The issue of inadvertent disclosure can take on additional significance in cases involving patents and trade secrets when the firm representing a party in litigation matters also represents the party in patent prosecution and other

-45-

Exhibit 1
-53-

1    intellectual property matters related to patent prosecution.  *See In re Deutsche*
2    *Bank Tr. Co. Ams.*, 605 F.3d 1373 (Fed. Cir. 2010).  While Mr. Jensen says that
3    he no longer is involved in patent prosecution for Plaintiffs, his partners and
4    associates are.  He works regularly with those colleagues in patent litigation
5    matters and the risk of inadvertent disclosure within his firm is thus a significant
6    concern.  For attorneys involved in "making strategic decisions on the type and
7    scope of patent protection that might be available or worth pursuing, . . .
8    competitive decisionmaking may be a regular party of their representation." *Id.*
9    at 1380.  In such instances, "the risk of inadvertent disclosure of competitive
10   information learned during litigation is therefore much greater."  Even where an
11   attorney is not directly involved in patent prosecution, these attorneys may have
12   "the opportunity to influence the direction of prosecution," and the risk of
13   inadvertent disclosure may nonetheless arise. *Id.*

14        In short, granting Mr. Jensen unrestricted access to confidential
15   information about Apple's methods and systems would expose Apple to endless
16   litigation, even if Mr. Jensen conducts himself entirely in good faith.

17        By contrast, denying Mr. Jensen access to confidential information would
18   impose no significant harm on Plaintiffs.  Plaintiffs retain highly competent
19   outside counsel to conduct their litigation, and have more than adequate
20   resources to retain additional counsel if they deem it necessary.  Plaintiffs have
21   other highly competent counsel that have been involved in this case since its
22   beginning (and even in previous cases).  Indeed, Mr. Jensen is not designated as
23   lead counsel—that is the role of Mr. Joseph Re.  The availability of competent
24   outside counsel is typically sufficient to defeat any claim that exclusion of in-
25   house counsel would unduly prejudice the nonmoving party.  *See, e.g., A.*
26   *Hirsch Inc. v. United States*, 657 F. Supp. 1297, 1305 (Ct. Int'l Trade 1987) ("in
27   view of retained counsel's competence, it is not clear how plaintiffs' position
28   will be prejudiced by excluding [in-house] counsel from access"); *Brown Bag*

-46-

**Exhibit 1
-54-**

1    *Software*, 960 F.2d at 1471 (finding no prejudice where outside counsel had

2    sufficient time and resources to review confidential materials and was

3    competent).   The balance of hardships, therefore, strongly favors denying

4    Mr. Jensen access to Apple's confidential information.

5              **b.    Apple's Provision Providing Trade Secrets to its In-**

6                     **House Counsel**

7              Plaintiffs argue that Apple's proposal would result in a one-sided

8    approach whereby its in-house counsel would receive access to Plaintiffs'

9    alleged trade secrets and Plaintiffs' in-house counsel would not receive the

10   same.   But by nature of their trade secret misappropriation claim, Plaintiffs have

11   alleged that Apple already has possession of their trade secrets.[9]   If Plaintiffs'

12   trade secret information is already in Apple's possession, as Plaintiffs contend,

13   then Plaintiffs should have no qualms about sharing that information with the

14   persons at Apple directly involved in the defense of this lawsuit.   And as Apple

15   has explained repeatedly, a very limited number of Apple's in-house counsel

16   need access to this information in a case where Plaintiffs have asserted a

17   serious, high exposure claim of trade secret misappropriation against the

18   company.   Contrary to Plaintiffs' assertions, the competence of Apple's outside

19   counsel does not absolve in-house counsel's need for access to this information.

20             Apple's in-house counsel is integrally involved in the defense of this

21   lawsuit.   They need to know the purported trade secrets that Plaintiffs contend

22   were misappropriated (to the extent Plaintiffs replead that any purported trade

23   secrets were in fact misappropriated by Apple) in order to advise on strategy—

24   and, more importantly, to guide document collection and production, which

25   _____

26             [9] Of course, Apple recognizes that the trade secret claim has been
     dismissed from this case.  However, because the claim was dismissed with leave
27   to replead, Apple wants to make sure that this protective order adequately serves
     its interests and needs in the event the claim is repleaded.
28

-47-

**Exhibit 1
-55-**

1   depends on the purported trade secrets actually at issue, if any.  In-house

2   counsel is overseeing document discovery, and therefore needs to know the

3   identity of the purported trade secrets so that it can manage the search for

4   responsive documents, and also prevent disclosure of *Apple's* trade secrets.

5          Moreover, Apple genuinely does not believe that it possesses any of

6   Plaintiffs' trade secrets—nor does Apple want any of Plaintiffs' trade secrets.

7   In-house counsel needs to know what information Plaintiffs claim Apple

8   misappropriated, if any, so that it can address the allegations internally and

9   excise any alleged trade secrets from Apple products as soon as possible.  In-

10  house counsel cannot do so without any information about the particular,

11  alleged trade secrets at issue in this case—thereby hindering Apple's ability to

12  mitigate damages to the extent Plaintiffs have a valid misappropriation claim, as

13  is Apple's duty under the law.  For these reasons, it is incredibly common for

14  parties in trade secret cases to agree that a limited number of in-house counsel

15  will have access to attorneys' eyes only information, including the plaintiffs'

16  Section 2019.210 disclosure.  *See, e.g.*, Transcript of Case Management

17  Proceedings, *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA (N.D.

18  Cal. March 16, 2017), ECF. No. 63 (permitting disclosure of highly confidential

19  materials to one in-house counsel upon his or her agreement to be bound by the

20  protective order); Order at 10, *Bladeroom Grp. Ltd., et al., v. Facebook, Inc.*,

21  No. CV-15-01370-EJD (N.D. Cal. Aug. 3, 2015) ECF No. 54 (permitting

22  disclosure of attorneys' eyes only material to two designated in-house counsel

23  who have no involvement in competitive decision-making, to whom disclosure

24  is reasonably necessary for the litigation, and who have agreed to be bound by

25  the protective order); *MMCA Grp., Ltd. v. Hewlett-Packard Co.*, 2009 WL

26  595537, at *1 (N.D. Cal. Mar. 5, 2009) (granting two of defendants' in-house

27  attorneys access to attorneys' eyes only material given small risk of disclosure

28  where the "attorneys who would be given access to AEO materials would be

-48-

Exhibit 1
-56-

1  litigation attorneys with no involvement" in defendants' business affairs); *see*

2  *also, e.g.*, Order at 10, *Mastronardi Int'l Ltd. v. SunSelect*, 18-cv-00737-AWI-

3  JLT, 2019 WL 3996608, at *9 (E.D. Cal. Aug. 23, 2019) ECF No. 60

4  (permitting disclosure of attorneys' eyes only material to any number of

5  designated in-house counsel who are not involved competitive decision-making,

6  to whom disclosure is reasonably necessary for the litigation, and who have

7  agreed to be bound by the protective order).

8  **G.**    **Section 10 – Prosecution Bar**

9        The Parties' proposals regarding the patent prosecution bar in Section 10

10  are not amenable to convenient redlining and are presented separately below.

11  **Plaintiffs' proposal:**

12        After the adoption of this provision by the parties, Outside Counsel

13        of Record and any person associated with a Party who receive a

14        Producing    Party's    material    designated    "HIGHLY

15        CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY

16        CONFIDENTIAL – SOURCE CODE" under this Protective Order

17        who accesses or otherwise learns of, in whole or in part, said

18        material    designated    "HIGHLY    CONFIDENTIAL    –

19        ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL –

20        SOURCE CODE" under this Protective Order shall not prepare,

21        prosecute, supervise, advise, counsel, or assist in the preparation or

22        prosecution of any patent application seeking a patent on behalf of

23        the Receiving Party or its acquirer, successor, or predecessor in the

24        field of non-invasive monitoring during the pendency of this

25        Action and for two years after final termination of this action.  To

26        avoid any doubt, "prosecution" as used in this paragraph does not

27        include representing or advising a Party before a domestic or

28        foreign    agency    in    connection    with    a    reissue,    ex    parte

-49-

Exhibit 1
-57-

1   reexamination, covered business method review, *inter partes*

2   review, opposition, cancelation, or similar proceeding; though in

3   connection with any such agency proceeding involving the patents-

4   in-suit, Outside Counsel of Record for a Receiving Party shall not:

5   (i) participate in the preparation, prosecution, supervision, advice,

6   counsel, or assistance of any amended claims; (ii) reveal a

7   Producing Party's Protected Material to any prosecuting

8   reexamination counsel or agent; or (iii) use a producing Party's

9   Protected Material for any purpose not permitted by Section 5.

10  The applicability of this provision is to be determined on an

11  individual-by-individual basis such that an individual attorney who

12  has not received Protected Material designated "HIGHLY

13  CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY

14  CONFIDENTIAL – SOURCE CODE" is not restricted from

15  undertaking any activities by virtue of this provision even if said

16  individual attorney is employed by or works for the same firm or

17  organization as an individual who has received such Protected

18  Material.

19  **Apple's proposal:**

20  Plaintiffs' Language:  Absent written consent from the Producing

21  Party, any individual who receives access to "CONFIDENTIAL,"

22  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or

23  "HIGHLY CONFIDENTIAL – SOURCE CODE" information

24  shall not be involved, directly or indirectly, in the (i) prosecution

25  of patents or patent applications relating to non-invasive

26  physiological monitoring, including without limitation the patents

27  at issue in this action and any patent or application claiming

28  priority to or otherwise related to the patents at issue in this action,

-50-

Exhibit 1
-58-

1    before any foreign or domestic agency, including the United States

2    Patent and Trademark Office ("the Patent Office") or (ii) the

3    acquisition of patents (including patent applications), or the rights

4    to any such patents or patent applications with the right to

5    sublicense, relating to the functionality, operation, and design of

6    non-invasive physiological monitoring technologies.  For purposes

7    of this Paragraph, "prosecution" means advising on, consulting on,

8    preparing, prosecuting, drafting, editing, and/or amending of patent

9    applications, specifications, claims, and/or responses to office

10   actions, or otherwise affecting the scope of claims in patents or

11   patent applications relating to the functionality, operation, and

12   design of non-invasive physiological monitoring technologies

13   (generally or as described in any patent in suit), before any foreign

14   or domestic agency, including the United States Patent and

15   Trademark Office;.  To avoid any doubt, "prosecution" as used in

16   this Paragraph does not include providing patent prosecution

17   counsel with public information to submit to the Patent Office.

18   "Prosecution" as used in this Paragraph also does not include

19   representing a party before a domestic or foreign agency in a

20   patent challenge (including, but not limited to, a reissue protest, *ex*

21   *parte* reexamination, *inter partes* reexamination, *inter partes*

22   review, covered business method review, post-grant review or

23   other patent office proceedings in the United States or elsewhere

24   on behalf of a patentee but only if no amendments to the claims are

25   made to the patent or patent application by anyone during that

26   process.    If an individual that has had access to

27   "CONFIDENTIAL,"    "HIGHLY    CONFIDENTIAL    –

28   ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL –

-51-

Exhibit 1
-59-

SOURCE CODE" information and participates in a reissue protest, *ex parte* reexamination, *inter partes* reexamination, *inter partes* review, covered business method review, post-grant review, or other patent office proceedings in the United States or elsewhere on behalf of a patentee, the claims of the patent involved in such proceedings may not be amended by anyone without violating this protective order.  These prohibitions are not intended to and shall not preclude counsel from participating directly or indirectly in proceedings on behalf of a Party challenging the validity of any patent. This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information is first received by the affected individual and shall end two (2) years after final resolution of this action, including all appeals.

### 1. **Plaintiffs' Position**

The parties agree to add a prosecution bar to the Court's Model Order.[10] Plaintiffs propose the Court adopt a prosecution bar based on the language from *True Wearables*.  *Compare* Powell Decl., Ex. 2 (Plaintiffs' proposal) at 17-18 *with* Ex. 13 (*True Wearables*) at 18-19.  The *True Wearables* prosecution bar is straightforward and properly allows both sides' outside counsel to participate in post-grant patent proceedings before the Patent Office, but bars outside counsel from participating in amending the claims.  Thus, Plaintiffs' proposal prevents the inadvertent use of highly confidential information to amend claims without substantively prejudicing the patentee.

---

[10] Apple's proposal incorrectly and confusingly begins with the phrase "Plaintiffs' Language."  That appears to be a typographical error.

Exhibit 1
-60-

1    Apple has previously **stipulated** to similar language in other cases.  *Pinn*
2    (Powell Decl., Ex. 17) at 15 (permitting "participation in inter partes review
3    except to amend claims").   This Court also routinely includes similar language.
4    *See Netflix* (Powell Decl., Ex. 19) at 13 (permitting participation in *inter partes*
5    *review* proceedings, "but counsel may not participate in the drafting of any new
6    or amended claims in any such proceeding"); *XR Comms.* (Powell Decl., Ex. 20)
7    at 13 (same); *Uniloc 2017 LLC v. Microsoft Corp.*, No. 8:18-cv-02224-AG-
8    JDE, Dkt. No. 30 (C.D. Cal. May 2, 2019) (Powell Decl., Ex. 23) at 10 (same).
9    Indeed, other courts have rejected this same proposal by Apple in other cases,
10   and adopted restrictions similar to Plaintiffs' proposal.  *LBT IP I LLC v. Apple*
11   *Inc.*, No. 1-19-cv-01245, Dkt. No. 28 (D. Del. April 27, 2020) (Powell Decl.,
12   Ex. 15) at 1 (rejecting Apple's proposal and allowing outside counsel to
13   participate in Patent Office proceedings as long as they are not involved in
14   "direct or indirect claim drafting or claim amendment activity"); *Achates*
15   *Reference Publishing, Inc. v. Symantec et al.*, No. 2:11-cv-294-JRG-RSP, Dkt.
16   No. 447 (E.D. Tex. August 20, 2013) (Powell Decl., Ex. 16) at 1-2 (same).

17   Nevertheless, Apple proposes a one-sided and problematic prosecution
18   bar.  *See* Powell Decl., Ex. 4 at 18-20.  Apple proposes that its outside counsel
19   can always participate in all aspects of challenging Plaintiffs' patents, but
20   Plaintiffs' outside counsel can be involved in such proceedings "**only if** no
21   amendments to the claims are made to the patent or patent application by
22   anyone during this process." *Id.* at 19 (emphasis added).  Apple also proposes
23   that, if Plaintiffs' outside counsel is involved in post-grant proceedings, "the
24   claims of the patent involved in such proceedings may not be amended **by**
25   **anyone** without violating this protective order." *Id.* (emphasis added).  Apple's
26   proposal unfairly forces Plaintiffs to choose between preserving their right to
27   amend their claims during post-grant proceedings or using their preferred
28   counsel.

-53-

**Exhibit 1**
**-61-**

1    Plaintiffs proposal also makes clear that the prosecution bar applies "on

2 an individual-by-individual basis," such that only individual attorneys who

3 actually receive access to Highly Confidential information are barred from

4 patent prosecution.  *Id.*, Ex. 2 at 17-18.  Other individuals at the same firm who

5 have not received highly confidential information should not be restricted

6 because such individuals present no risk of inadvertent use or disclosure.  This

7 language should be included to avoid any later argument that access by

8 individual attorneys disqualifies the entire firm.   The Court should adopt

9 Plaintiffs' proposal.

10       **2.    Defendant's Position**

11    The parties agree that a prosecution bar is appropriate for this matter

12 because individuals granted access to confidential information, especially source

13 code and other technical information, should not be permitted to use that

14 information to prosecute patents.  *See generally In re Deutsche Bank Tr. Co.*

15 *Ams.*, 605 F.3d 1373, 1381 (Fed. Cir. 2010).  The parties disagree, however, as

16 to two issues.  *First*, Apple proposes that the prosecution bar provisions should

17 preclude attorneys and others that have seen Protected Material from

18 participating in any Patent Trial Appeal Board ("PTAB") proceedings such as

19 *inter partes* review ("IPR") proceedings that will involve claim amendments to

20 avoid the risk of inadvertent disclosure of that confidential information during

21 the process of amending the claims.   *Second*, Apple's position is that the

22 prosecution bar should extend to the acquisition of patents because just as patent

23 prosecution involves the risk that an attorney might inadvertently use another

24 party's confidential information to procure patent rights in new and pending

25 applications based on that other party's confidential information, so too can that

26 attorney assist in buying patents that relate to the other party's confidential

27 information.  Plaintiffs did not address this issue in their portion of the joint

28 stipulation, but had previously rejected it during the meet and confer process.

**Exhibit 1
-62-**

a. **The Prosecution Bar Should Prohibit Those Who Receive Apple's Confidential Information From Participating in _Inter Partes_ Review Unless The Patent Owner Does Not Attempt to Amend Its Claims**

The parties dispute the extent to which the protective order should bar outside counsel who access another party's highly confidential materials from participating in IPR proceedings that involve claim amendments. Plaintiffs contend that such counsel should have full ability to participate in all non-amendment aspects of such proceedings. Apple does not object to Plaintiffs' counsel's participation in IPR proceedings that will not involve claim amendments. In that type of proceeding, the claims cannot be narrowed or modified in a way that improperly uses the other party's confidential information. But Apple does object to an attorney that receives confidential, highly confidential and source code material from an opponent from then being an attorney in an IPR where the claims of the patent the attorney is representing will be amended. For purposes of discussion, we will discuss this in the context of Apple's highly confidential information and Plaintiffs' counsel seeking to participate in representing Plaintiffs in IPRs that involve amendments. In that context, Apple's objections to allowing Plaintiffs' counsel that view its confidential, highly confidential, and source code information from participating in any IPR proceeding where the claims of the patent are amended is grounded in the same concern as barring the same counsel from actually amending the claims—the risk of inadvertent disclosure of information.

Plaintiffs' reliance on previous protective orders where Apple has stipulated not to include this additional protection misses the point. Prior experience has demonstrated to Apple the need for this additional level of protection due to the appearance of impropriety that arises in litigation counsel who are barred from working on claim amendments being co-counsel with

-55-

**Exhibit 1
-63-**

1   amendment counsel in the IPR and both sets of counsel signing onto the
2   pleadings with the PTAB.   The concern is particularly acute here because
3   Plaintiffs are highly litigious companies that that have shown time and again
4   that they are willing to sue companies they view as a threat to their business.
5   Knobbe Martens, Plaintiffs' law firm in this litigation (and virtually all of
6   Masimo's intellectual property cases), also handles all of Plaintiffs' patent
7   prosecution and is intimately involved in their corporate strategy and decision-
8   making.   The need for heightened protection of Apple's Protected Material is
9   particularly important here.

10          This issue has arisen in many cases, and courts frequently fashion
11   protective orders that prohibit the participation by litigation counsel in any post-
12   grant review proceedings, in any capacity.[11]   Apple's proposal is much less
13   restrictive, as it would permit Plaintiffs' litigation counsel who have had access
14   to Protected Material to participate in post-grant review proceedings that do not
15   involve claim amendments.   To be clear, counsel that have seen Protected
16   Material have to make a choice at the time an IPR or other PTAB proceeding is
17   filed.  That counsel can choose to appear as counsel for a patent owner in an IPR

18   _____

19          [11] *See, e.g.*, *Boston Sci. Corp. v. Cook Grp. Inc.*, No. 15-980, 2017 WL
20   547903, at *2 (D. Del. Feb. 10, 2017); *Telebuyer, LLC v. Amazon.com, Inc.*, No.
     13-CV-1677, 2014 WL 5804334, at 5-*7 (W.D. Wash. July 7, 2014); *buySAFE,*
21   *Inc. v. Google, Inc.*, No. 3:13-CV-781, 2014 WL 2468553, at *2 (E.D. Va. June
     2, 2014); *Bear Creek Technologies Inc. v. Verizon Services Corp.*, No. 12-CV-
22   600, 2012 WL 3190762, at *2 n.6 (D. Del. July 25, 2012); *Pragmatus AV, LLC*
23   *v. Facebook, Inc*, No. 5:11-CV-2168, 2012 WL 12355858, at *1 (N.D. Cal. July
     5, 2012); *55 Brake, LLC v. Audi of Am.*, No. 1:CV 08-177-BLW, 2011 WL
24   2747523, at *1–*2 (D. Idaho July 13, 2011); *Edwards Lifesciences AG v.*
25   *CoreValve, Inc.*, No. 08-91-GMS, 2011 WL 10565589, at *1 (D. Del. Feb. 23,
     2011); *Methode Electronics, Inc. v. Delphi Automotive Systems LLC*, No. 09-
26   CV-13078, 2009 WL 3875980, at *4 (E.D. Mich. 2009), *affirming and*
27   *modifying in part magistrate's order*,  679 F. Supp. 2d 828, 835–36 (E.D. Mich.
     Jan. 19, 2010).
28

-56-

Exhibit 1
-64-

1    with the understanding that the claims of that patent will not be able to be

2    amended even by other counsel involved in the IPR.  If Plaintiffs believe that an

3    amendment is going to be made, then it can hire other counsel that have not seen

4    Apple's confidential, highly confidential, and source code information to handle

5    the IPR and make the amendments.

6        The protections Apple seeks are especially warranted in cases where, as

7    here, the case concerns the disclosure of a company's source code—valuable

8    information that Apple considers the "crown jewels" of its intellectual property

9    portfolio.  *Unwired Planet LLC v. Apple Inc*., No. 3:12-CV-00505-RCJ, 2013

10   WL 1501489, at *5 (D. Nev. Apr. 11, 2013).  Such cases "may require the bar to

11   extend to post-issuance proceedings because they involve highly confidential

12   information, such as source code, which, if disclosed, could compromise the

13   value of the disclosing party's products."  *Mirror Worlds Techs., LLC v.*

14   *Facebook, Inc*., No. 17-CV-3473 (JGK), 2017 WL 5969334, at *2 (S.D.N.Y.

15   Nov. 20, 2017) (quotations omitted); *cf. Drone Techs., Inc., v. Parrot S.A*., 838

16   F.3d 1283, 1300 n.13 (Fed, Cir. 2016) ("[S]ource code requires additional

17   protections to prevent improper disclosure because it is often a company's most

18   sensitive and most valuable property. As a result, district courts regularly

19   provide for additional restrictions on discovery to account for the unique

20   characteristics of source code.") (citation omitted).

21        Courts have recognized the risks in allowing litigation counsel to

22   participate in post-grant proceedings where claims may be amended.  *See, e.g.*,

23   *Mirror Worlds Techs., LLC* 2017 WL 5969334, at *3 (citing *Telebuyer*, 2014

24   WL 5804334, at *6) ("When a[n] attorney gains access to highly confidential

25   information in an infringement case, there is a risk that the attorney will be able

26   to use that information to . . . amend . . . the scope of [the patent] claims to

27   sustain them against a challenge in a post-issuance proceeding.").  Plaintiffs

28   argue that their attorneys who obtain access to Apple's confidential materials

**Exhibit 1**
**-65-**

1   should be allowed to participate in any IPR proceeding up until the patents are

2   amended.  If Plaintiffs decide to move to amend the challenged patent in the

3   IPR, it is only at that point, Plaintiffs argue, that those attorneys who have

4   viewed Apple's confidential materials could continue as counsel in the IPR and

5   they would simply have co-counsel join the IPR to be the ones to work on the

6   amendments.    However, Plaintiffs' proposal misses the point of these

7   protections.  Those who have viewed Apple's confidential, highly confidential,

8   and source code information are at risk for inadvertently disclosing the

9   information to amendment counsel.  Plaintiffs' counsel with that knowledge

10  would be co-counseling with amendment counsel.  In that environment, the risk

11  of inadvertent disclosure is extremely high—that is, that the litigation counsel

12  with knowledge of Apple's highly confidential information could guide

13  amendment counsel to make amendments that would cover Apple products or

14  steer amendment counsel away from making amendments that would exclude

15  features in Apple's products.    It is difficult "for the human mind to

16  compartmentalize and selectively suppress information once learned, no matter

17  how well-intentioned the effort may be to do so."  *In re Deutsche Bank Tr. Co.*

18  *Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).

19         Plaintiffs further argue that this provision is a matter of fairness.  They

20  call Apple's proposal "one-sided" in that it would permit its outside counsel to

21  participate in all aspects of challenging Plaintiffs' patents.  Again, Plaintiffs fail

22  to appreciate the purpose of this protection.  Plaintiffs' outside counsel are

23  receiving access to Apple's most valuable and protected confidential

24  information.  The need for minimizing the risk of inadvertent disclosure is clear.

25  Even if Apple's litigation counsel reviewed Plaintiffs' highly confidential and

26  source code information, there is no risk of misusing that information in

27  attacking Plaintiffs' patents.

28

-58-

Exhibit 1
-66-

1    Plaintiffs' last paragraph in their statement on this section attempts to

2 characterize the parties as disputing whether the application of the prosecution

3 bar applies on an individual-by-individual basis.  Apple has never taken the

4 position that a prosecution bar should apply to all individuals at the law firm

5 receiving highly confidential information.  Indeed, no reading of its proposal

6 could support such an interpretation.  It is clear from its proposal that the

7 prosecution bar shall apply to those in receipt of highly confidential information

8 on an individual basis.

9    Apple's proposal strikes an appropriate balance between the parties'

10 interests.  It would permit Plaintiffs' trial counsel to represent Plaintiffs in post-

11 grant review proceedings involving asserted patents that are not to be amended

12 during those proceedings—thereby minimizing any burden or hardship on

13 Plaintiffs.  But that decision would need to be made in advance of entering an

14 appearance in that post-grant proceeding.  If amendments are to be made, then

15 Plaintiffs would need to engage other counsel that have not reviewed Apple's

16 confidential, highly confidential, or source code information to represent it in

17 the post-grant proceedings on that patent from the outset of the proceeding.

18 Plaintiffs' proposal, in contrast, would allow Plaintiffs' trial counsel to

19 (consciously or subconsciously) use their knowledge of Apple's highly sensitive

20 documents in such proceedings to strategically narrow Plaintiffs' patent claims

21 in an effort to avoid the prior art while still covering aspects of Apple's

22 products.  The provision that Apple proposes is needed to protect against this

23 exact risk, and should be included in the protective order entered in this case.

24    **b.    The Significant Risk Of Inadvertent Disclosure Justifies**

25    **The Inclusion Of An Acquisition Bar In The Protective**

26    **Order**

27    Both parties agree that a patent prosecution bar should be put in place.

28 The fundamental rationale behind such bars is that a person involved in writing

-59-

**Exhibit 1**
**-67-**

patent claims in a pending patent application may choose to write the claim to cover technology he or she saw in the confidential files of the opposing party or to avoid amending or adding claims in pending patent applications that would not cover the confidential technology of the other party. That fundamental principle is equally applicable when an attorney is advising clients on whether to purchase new patents for its portfolio. In both situations, the attorney is being asked to provide advice to the client that could result in the client having new patent claims that can be asserted against the adversary.

Thus, to prevent counsel's inadvertent reliance on confidential information, a patent acquisition bar provision should be ordered to prohibit any of Plaintiffs' counsel who actually review Apple's sensitive technical material from participating in patent acquisitions relating to that material's subject matter until two year after the case ends.

A patent acquisition bar is a reasonable compromise on a necessary protection. Courts regularly find it appropriate to restrict individuals who receive another party's confidential technical information from later assisting in the acquisition of patents covering the disclosed technology.[12] The rationale for

---

[12] *See, e.g.,* Order at 5, *Realtime Adaptive Streaming LLC v. Google LLC*, No. 18-CV-03629 (C.D. Cal. July 18, 2019), ECF No. 80; *Intellectual Ventures I, LLC v. Lenovo Group Ltd.*, 2019 WL 343242, at *4 (D. Mass. Jan. 25, 2019); Order at 3, *Uniloc USA, Inc. v. Apple Inc.*, No. 18-CV-00572 (N.D. Cal. July 2, 2018), ECF No. 107; Order at 10, *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, No. 14-CV-00051 (W.D. Va. June 11, 2015), ECF No. 61; *Telebuyer*, 2014 WL 5804334, at *7; *Inventor Holdings, LLC v. Google, Inc.*, 2014 WL 4369504, at *2 (D. Del. Aug. 27, 2014); *Catch A Wave Techs., Inc. v. Sirius XM Radio, Inc.*, No. 12-CV-05791, 2013 WL 9868422, at *1 (N.D. Cal. Aug. 6, 2013); *EPL Holdings, LLC v. Apple Inc.*, No. C-12-04306, 2013 WL 2181584, at *5 (N.D. Cal. May 20, 2013); *Unwired Planet LLC v. Apple Inc.*, No. 12-CV-00505, 2013 WL 1501489, at *7 (D. Nev. Apr. 11, 2013); Transcript at 29:20–30:4, *Intellectual Ventures I LLC v. Altera Corp.*, No. 10-CV-00065 (D. Del. Aug. 1, 2012), ECF No. 145; *E-Contact Techs., LLC v. Apple, Inc.*, No. 11-CV-00426,

**Exhibit 1**
**-68-**

1   such restrictions is well-established:  "It is very difficult for the human mind to

2   compartmentalize and selectively suppress information once learned, no matter

3   how well-intentioned the effort may be to do so."  *In re Deutsche Bank Tr. Co.*

4   *Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (alteration omitted) (quoting *FTC v.*

5   *Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980)).  Notwithstanding general

6   provisions "specifying that designated confidential information may be used

7   only for purposes of the current litigation," and notwithstanding the good faith

8   of all individuals involved, courts recognize that "there may be circumstances in

9   which even the most rigorous efforts . . . to preserve confidentiality . . . may not

10  prevent inadvertent compromise."  *Id.*; *see also Catch A Wave Techs., Inc. v.*

11  *Sirius XM Radio, Inc.*, No. 12-CV-05791, 2013 WL 9868422, at *1 (N.D. Cal.

12  Aug. 6, 2013) ("The patent acquisition bar . . . adds an additional layer of

13  protection by prohibiting not just disclosure and use, but also advising.").

14         Plaintiffs recognized and endorsed these settled principles when they

15  agreed to a prosecution bar nearly identical in scope to the proposed acquisition

16  bar.  The justification underlying these two provisions is identical—it will be

17  difficult, if not impossible, for an individual who has seen Apple's confidential

18  information to segregate that information mentally when later advising on patent

19  prosecution or acquisition related to that information.  The risks of inadvertent

20  disclosure and competitive misuse are the same with respect to both prosecution

21  and acquisition:

22              Counsel for Plaintiff has acquiesced to the imposition
23              of a patent prosecution bar and, therefore, apparently
24              agrees that there could possibly be a risk of

25  2012 WL 11924448, at *2 (E.D. Tex. June 19, 2012); *cf. Blackbird Tech LCC v.*

26  *Serv. Lighting & Elec. Supplies, Inc.*, No. 15-CV-00053, 2016 WL 2904592, at

27  *6 (D. Del. May 18, 2016) (requiring covenant not to sue on patents acquired

28  during duration of protective order).

**Exhibit 1**
**-69-**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> inadvertent disclosure of Defendants' confidential information in the course of representing their client before the PTO.  Therefore, it is hard to conceive that there would be little or no risk of inadvertent disclosure when these same attorneys advise their client in matters regarding acquisitions of patents.

*E-Contact Techs., LLC v. Apple, Inc.*, No. 11-CV-00426, 2012 WL 11924448, at *2 (E.D. Tex. June 19, 2012); *see also EPL Holdings, LLC v. Apple Inc.*, No. C-12-04306, 2013 WL 2181584, at *4 (N.D. Cal. May 20, 2013) (explaining that patent acquisition and prosecution create the same risk of inadvertent use because "litigation counsel may consciously or subconsciously use their knowledge . . . to advise a client on which patents to acquire").  And the concern is further heightened here because Plaintiffs seek Apple's valuable source code and other technical documentation.  The disclosure of this confidential technology carries significant risks of inadvertent disclosure and competitive misuse.  *See Telebuyer, LLC v. Amazon.com, Inc.*, No. 13-CV-01677, 2014 WL 5804334, at *2 (W.D. Wash. July 7, 2014) (describing source code as "highly confidential, technical information" that poses a "heightened risk of inadvertent disclosure") (citation omitted); *Applied Signal Technology, Inc. v. Emerging Markets Commc'ns, Inc.*, 2011 WL 197811 at *2 (N.D. Cal. Jan. 20, 2011) ("confidential technical documents, including source code . . . may pose a heightened risk of inadvertent disclosure").

In sum, Apple should not be forced to incur the risk that Plaintiffs' counsel will inadvertently rely on Apple's highly sensitive technical information to make competitive decisions regarding the acquisition of patents or patent rights related to the technology at issue.  In light of the foregoing, this Court should enter Apple's proposed acquisition bar.

**Exhibit 1
-70-**

**H.** **Sections 4.5 and 11 – Source Code**

The Parties' disputes on Sections 4.5 and 11 are shown below, with underlined text showing Apple's proposed additions to Plaintiffs' proposal and strikethrough text showing Apple's proposed deletions to Plaintiffs' proposal:

4.5 "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items: extremely sensitive "Confidential Information or Items" representing computer code, scripts, assembly, binaries, object code, source code listings (e.g., file names and path structure), descriptions of source code comments, (e.g., descriptions of declarations, functions, and parameters), object code listings, and Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any ASIC or other chip, disclosure of which to another Party or Non-Party is likely to cause harm or significant competitive disadvantage to the Producing Party. Other documents that quote source code may be designated pursuant to this Paragraph, provided that the Producing Party also produces a redacted version designated "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY," which removes the quoted source code. Native Computer Aided Design (CAD) files may be designated pursuant to this Paragraph, provided that any printouts of CAD files shall be designated "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY" and will not be included in the page limits discussed in Section 11 below.

11. SOURCE CODE

. . .

-63-

Exhibit 1
-71-

(f)     The Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in Paragraph (c) in the first instance. ~~The Receiving Party may generate PDF copies of limited portions of source code on the source code computer for purposes of asking the Producing Party to produce paper copies.~~ Any printed portion that consists of more than fifteen (15) pages of a continuous block of Source Code ~~or more than two hundred (200) pages total~~ shall be presumed to be excessive, and the burden shall be on the Receiving Party to demonstrate the need for such a printed copy. <u>The Receiving Party may print out no more than two hundred (200) pages total.</u> Within ten (10) days, the Producing Party shall either (i) provide one copy set of such pages to the Receiving Party or (ii) inform the Requesting Party that it objects that the printed portions are excessive and/or not done for a permitted purpose. The Parties will cooperate in good faith if a different timeframe for production is required.   If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Receiving Party shall be entitled to seek a Court resolution of whether the printed Source Code in question is narrowly tailored and was printed for a permitted purpose.   The burden shall be on the Receiving Party to demonstrate that such printed portions are no more than is reasonably necessary for a permitted purpose and not merely printed for the purposes of review and analysis elsewhere.   The printed pages shall constitute

-64-

Exhibit 1
-72-

1    part of the Source Code produced by the Producing Party in this

2    action. ~~Printing of directory paths or structures and file names~~

3    ~~shall not count toward the consecutive or aggregate page count~~

4    ~~listed in this section.~~

5    . . .

6    (h)   . . . The Producing Party shall not be responsible for any

7    items left in the room following each inspection session, and the

8    Receiving Party shall have no expectation of confidentiality for

9    any items left in the room following each inspection session

10   without a prior agreement to that effect.   ~~However, if the~~

11   ~~Producing Party locates any material that appears to contain the~~

12   ~~work product of the Receiving Party, the Producing Party shall not~~

13   ~~review the material and shall contact the Receiving Party in~~

14   ~~accordance with their ethical duties.~~   . . .

15   (i)    . . . Upon ~~three (3) days'~~ one (1) day's advance notice to the

16   Receiving Party by the Producing Party, the Receiving Party shall

17   provide a copy of this log to the Producing Party.

18   (j)    . . . ~~Absent agreement of the Parties or order of this Court,~~

19   ~~no~~No more than a total of fifteen (15) individuals identified by the

20   Receiving Party shall have access to the printed portions of the

21   Source Code (except insofar as such code appears in any court

22   filing or expert report). ~~The Parties agree to cooperate in good~~

23   ~~faith if it becomes necessary for more than fifteen (15) individuals~~

24   ~~to have access to the printed portions of the Source Code.   A~~

25   ~~Producing Party's source code material may only be transported by~~

26   ~~the Receiving Party at the direction of a person authorized under~~

27   ~~these provisions to another person authorized under these~~

28

-65-

**Exhibit 1**
**-73-**

provisions, on paper via hand carry, Federal Express, or other
similarly reliable courier.

(k)     For depositions, the Receiving Party shall not bring copies
of any printed Source Code.  Rather, at least ten (10) days before
the date of the deposition, the Receiving Party shall notify the
Producing Party about the specific portions of Source Code it
wishes to use Source Code at the deposition, and the Producing
Party shall bring printed copies of the Source Code those portions
to the deposition for use by the Receiving Party.  Copies of Source
Code that are marked as deposition exhibits shall not be provided
to the Court Reporter or attached to deposition transcripts; rather,
the deposition record will identify the exhibit by its production
numbers.     The Producing Party shall maintain the marked
deposition exhibits during the pendency of this case.  All other All
paper copies of Source Code brought to the deposition by the
Producing Party shall remain with the Producing Counsel's outside
counsel for secure destruction in a timely manner following the
deposition.

(l)     . . . If a Party reasonably believes that it needs to submit a
portion of Source Code as part of a filing with the Court, the
Parties shall meet and confer as to how to make such a filing while
protecting the confidentiality of the Source Code and such Source
Code will not be filed absent agreement from the Producing Party
that the confidentiality protections will be adequate or order of this
Court. . . .

**1.     Plaintiffs' Position**

The Court's Model Order does not address source code.  Thus, Plaintiffs
proposed the Court adopt language that corresponds to the source code

-66-

**Exhibit 1
-74-**

1    provisions from *True Wearables*.  *See* Ex. 13 (*True Wearables*) at 8-12.  Apple

2    replaced Plaintiffs' proposal in its entirety and refused to compromise.  In an

3    effort to narrow the disputes, Plaintiffs agreed to work from Apple's proposal.

4    Apple adopted some of Plaintiffs' changes but largely maintained its refusal to

5    compromise.  Apple initially refused to even ***explain*** its objections.  *See* Powell

6    Decl., Ex. 8 at 9, 11.  Apple first provided some explanation of its position a

7    few days before Plaintiffs provided their portion of this joint stipulation.  *Id.*,

8    Ex. 8 at 4-8.  Plaintiffs address the disputes in turn below.

9                    **a.    Section 4.5**

10        Plaintiffs proposed including the *True Wearables* definition of "source

11   code."  *See* Ex. 13 at 7 ("To the extent such Protected Material includes

12   computer source code and/or live data (that is, data as it exists residing in a

13   database or databases) (i.e., 'Source Code Material'), the producing party may

14   designate such Protected Material as 'RESTRICTED CONFIDENTIAL

15   SOURCE CODE.'").  That is a standard and commonly used definition of

16   "source code" that includes actual source code and live data.  *See also*

17   *Intellectual Pixels Ltd. v. Sony Interactive Entertainment LLC*, No. 8:19-cv-

18   01432-JVS-KES, Dkt. No. 49 (C.D. Cal. Nov. 15, 2019) (Powell Decl., Ex. 22)

19   at 6 (providing the same definition for "source code").  Nevertheless, Apple

20   rejected Plaintiffs' proposal.

21        In an effort to compromise, Plaintiffs agreed to much of Apple's

22   definition.  However, Plaintiffs could not agree to Apple's insistence that mere

23   "descriptions" of source code can be designated as "source code."  *See* Powell

24   Decl., Ex. 4 at 4.  That term is far too vague and would invite disputes as to

25   whether a technical document describing product functions performed by source

26   code constitutes a "description" of source code.  Apple's proposal will

27   impermissibly sweep in many technical documents that are not source code.

28   Apple's overly broad definition of what constitutes "source code," combined

-67-

Exhibit 1
-75-

1  with Apple's overly restrictive procedures for reviewing source code discussed

2  below, would significantly hinder Plaintiffs' ability to review Apple's technical

3  documents.

4        **b.**    __Section 11(f)__

5       The parties have several disputes regarding Section 11(f).  First, Plaintiffs

6  propose that "[t]he Receiving Party may generate PDF copies of limited

7  portions of source code on the source code computer for purposes of asking the

8  Producing Party to produce paper copies."   Powell Decl., Ex. 4 at 21-22.

9  Generating an electronic PDF copy on the source code computer is the most

10 efficient way for a Receiving Party to tell the Producing Party what portion of

11 the source code it would like printed.  This approach also avoids disputes over

12 whether the Producing Party printed source code in an illegible format, or in a

13 format that uses more of a Receiving Party's allocated pages than necessary.

14      Apple argues the producing party should create paper copies only when

15 they are "not objectionable or any objections are resolved." *Id.*, Ex. 8 at 6.  That

16 makes no sense because this provision does ***not*** involve printing paper copies.

17 It merely allows the Receiving Party to create—***on the source code computer***—

18 an electronic copy that the Producing Party can print ***if*** any objections have been

19 resolved.  Plaintiffs' proposal does not allow the Receiving Party to create paper

20 copies of anything.

21      Second, Plaintiffs propose that the Receiving Party may move the Court

22 for permission to print more than 200 pages total.  *Id.*, Ex. 4 at 22.  Apple argues

23 this provision is unnecessary and could be "misconstrued as Apple agreeing that

24 printing more than 200 pages may be necessary in this case."  *Id.*, Ex. 8 at 6.

25 Plaintiffs recognize Apple does not agree that printing more 200 pages may be

26 necessary.  All Plaintiffs seek is the ability to ***ask the Court*** to increase that

27 page limit.  *See Microsoft* (Powell Decl., Ex. 23) at 7 (permitting party to ask to

28 print additional pages beyond page limit)

**Exhibit 1
-76-**

1    In contrast, Apple proposes language that arguably prohibits the
2    Receiving Party from even *asking* this Court to increase the 200-page total
3    limit.  Powell Decl., Ex. 4 at 22.  Apple's proposal specifically mentions a
4    procedure allowing parties to increase the 15-consecutive-page limit but *not* the
5    200-page total limit.  *Id.*  That language could easily be misconstrued as the
6    parties agreeing the 200-page limit can *never* be increased, particularly in light
7    of Apple' refusal to agree to Plaintiffs' proposal providing that a party may ask
8    the Court for leave to print more than 200 pages.

9    Third, Plaintiffs propose that printing directory paths or structures and
10   filenames do not count towards the consecutive or aggregate page limits
11   described.  *Id.*  This is appropriate because paths and filenames are not source
12   code; they are analogous to a table of contents.  The metadata included in
13   directory listings also establish when a file was last modified and can also be
14   used to show whether a file was modified from a prior version.  A printed copy
15   of the paths and filenames makes review of the actual source code far more
16   efficient.

17   Apple claims Masimo intends to use directory printouts to "facilitate
18   some of its review of the code (which includes the structure of how files are
19   grouped into file paths) outside of the source code review room."  Powell Decl.,
20   Ex. 8 at 5.  That again makes no sense.  While paths and filenames can be
21   designated and protected under the source code provisions, they are *not* actual
22   source code.  Maintaining a copy of paths and filenames is important to easily
23   track a parties' review of the *actual* source code in the source code review
24   room.

25   **c.    Section 11(h)**

26   The parties agree that the Receiving Party should not store notes or other
27   material in the source code review room beyond the time when the party is
28   reviewing code in the room.  However, Plaintiffs believe counsel should abide

-69-

**Exhibit 1
-77-**

1    by their ethical duties not to review any work product that may be inadvertently

2    left behind.  Powell Decl., Ex. 4 at 23.  This is consistent with counsel's ethical

3    duty to "refrain from examining" another attorney's work product and

4    "promptly notify the sender." California Professional Rule of Conduct 4.4; *see*

5    *also Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 808 (2007).  Plaintiffs'

6    proposal is also consistent with the Federal Rules of Civil Procedure and

7    Federal Rules of Evidence, which reject automatic waiver of privilege based on

8    inadvertent disclosure.  *See* Fed. R. Civ. P. 26(b)(5)(B); Fed. R. Evid. 502(b).

9         Apple argues Plaintiffs' proposal is "contrary" to prior provisions stating

10   reviewers have no "expectation of confidentiality for materials left behind in the

11   source code review room" and should "clean up."  Powell Decl., Ex. 8 at 6.

12   That is why Plaintiffs included this provision: to clarify that if a party

13   ***accidentally*** leaves work product behind, it should not be reviewed or used.

14   Apple's refusal to agree to this simple provision is troubling and reinforces the

15   need for Plaintiffs' proposal.

16        **d.    Section 11(i)**

17        The parties agree on this section except Apple demands a ***one-day***

18   response to any requests for a log of individuals who review paper copies of

19   source code.  Powell Decl., Ex. 4 at 23.  That is unreasonable.  For example, one

20   party may request a log on Christmas Eve and assert a violation occurred if the

21   opposing party does not respond on Christmas Day.  Plaintiffs provide a

22   reasonable three-day notice period, which balances prompt disclosure with

23   avoiding unduly harassing opposing counsel on weekends and holidays.  Apple

24   previously stipulated to protective orders that included a similar log, but did not

25   include a one-day response time.  *See Pinn* (Powell Decl., Ex. 17) at 14.  This

26   Court has also adopted orders requiring similar logs be provided on ***seven*** days'

27   notice.  *Microsoft* (Powell Decl., Ex. 23) at 8.

28

**Exhibit 1**
**-78-**

e.     **Section 11(j)**

The parties have two disputes regarding Section 11(j).  First, Plaintiffs propose that the number of individuals authorized to access printed Source Code can be increased beyond 15 individuals, but only by agreement of the parties or order of this Court.  Powell Decl., Ex. 4 at 24.  This could become necessary if, for example, individuals authorized to access source code need to be replaced because they withdraw from this case.  Apple argued that, in other "extremely large cases, the parties have been able to manage within the 10 person limit and thus, Apple cannot imagine a situation in which more than 15 people will become necessary." *Id.*, Ex. 8 at 10.  Whether this provision was necessary in other cases has nothing to do with whether it might become necessary in this case.  There is no valid reason to preclude a party from even ***asking*** Apple or the Court to increase the limit.  *See CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009) ("[D]istrict courts have inherent authority to grant a motion to modify a protective order where 'good cause' is shown.'").

Second, Plaintiffs propose printed source code may be transported to and from individuals authorized to view the source code via hand carry, Federal Express, or other similarly reliable carrier.  Powell Decl., Ex. 4 at 24.  Apple rejected that proposal entirely.  *Id.*  Without this language, counsel may be required to personally fly source code printouts to their experts for use in preparing expert reports.  That would be unduly restrictive.  Indeed, this Court routinely includes language similar to Plaintiffs' proposal.  *See Intellectual Pixels* (Powell Decl., Ex. 22) at 10 (permitting parties to transfer printed source code by "hand carry, via Federal Express, or via other similarly reliable courier with tracking capabilities"); *Microsoft* (Powell Decl., Ex. 23) at 8 (permitting parties to transport printed source code pages by "reliable hand carry" and "Federal Express").  Indeed, Apple previously stipulated to the inclusion of similar language. *See Pinn* (Powell Decl., Ex. 17) at 13 (allowing transportation

-71-

**Exhibit 1
-79-**

1   "via hand carry, Federal Express or other similarly reliable courier").

2       **f.**    <u>**Section 11(k)**</u>

3         The parties have two disputes regarding Section 11(k).  First, Plaintiffs

4   propose that the Producing Party bring all printed source code to depositions

5   upon request.  Powell Decl., Ex. 4 at 24.  This is reasonable and not unduly

6   burdensome because the parties have agreed to a presumptive limit that no more

7   than 200 pages that will be printed.

8         In contrast, Apple requires ten days' advanced notice of the ***specific***

9   portions of printed code that will be addressed at a deposition.  *Id.*  Apple's

10  proposal is highly problematic because it seeks disclosure of work product

11  regarding the specific portions of the code about which the questioning attorney

12  will ask, and would give the Producing Party an unfair advantage by knowing

13  exactly what material will be addressed at a given deposition.  Further,

14  deposition preparation often continues up to the day of the deposition, and

15  relevant code is likely to be identified by the witness during the deposition.  A

16  10-day advance notice that requires identification of only specific portions of

17  code is not workable.  The Court should follow the standard rule that does not

18  require advanced notice of exhibits that will be used at a deposition.  *Sporck v.*

19  *Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("[T]he selection and compilation of

20  documents by counsel in this case in preparation for pretrial discovery falls

21  within the highly-protected category of opinion work product."); *Stevens v.*

22  *Corelogic, Inc*, 2016 WL 397936, at *9 (S.D. Cal. Feb. 2, 2016) ("[C]ourts in

23  this Circuit have viewed *Sporck* favorably.").

24        Second, Plaintiffs propose that the Producing Party maintain marked

25  deposition exhibits during the pendency of this case.  Powell Decl., Ex. 4 at 24.

26  Apple struck this provision and proposes that the Producing Party destroy all

27  deposition exhibits containing source code.  *Id.* at 24-25.  There is no potential

28  harm from the ***Producing Party's*** outside counsel maintaining a copy of the

-72-

**Exhibit 1**
**-80-**

1    exhibit.   Moreover, Apple's proposal could create evidentiary issues if the

2    parties later dispute the content of an exhibit that was introduced at a deposition.

3                    **g.      Section 11(l)**

4         Plaintiffs proposal merely confirms that this Court has the authority to

5    order a party to file source code over the objection of the Producing Party.

6    Powell Decl., Ex. 4 at 25.   That is necessarily part of this Court's inherent

7    authority to manage its docket.   Apple struck Plaintiffs' proposed language and

8    refused to explain its objection even after Plaintiffs repeatedly asked Apple to

9    do so. *See Id.*, Ex. 8 at 8.

10        Accordingly, the Court should adopt Plaintiffs' proposed source code

11   provisions.

12                **2.      Defendant's Position**

13        Over the course of three months, Apple has diligently negotiated with

14   plaintiffs the terms of a protective order, despite Plaintiffs' repeated efforts to

15   delay that process.   Plaintiffs' accusations that Apple has refused to compromise

16   or explain its objections are demonstrably false.   Plaintiffs raised new disputes

17   each time the parties exchanged proposed protective order provisions, making it

18   impossible for the parties to focus on the specific issues in dispute and drawing

19   the negotiation process out indefinitely.

20                    **a.      Section 4.5**

21        The parties dispute whether descriptions of source code should receive a

22   "Highly Confidential – Source Code" designation in order to protect Apple's

23   sensitive technical information.   As Apple explained to Plaintiffs numerous

24   times during this process, Apple's source code is extremely sensitive and every

25   other business in its industry seeks to review its contents.   The designation of

26   descriptions of source code as "highly confidential" and thus requiring the same

27   protections afforded source code is necessary to preserve Apple's valuable

28   technical information from improper disclosure or use.   Apple goes to great

-73-

**Exhibit 1
-81-**

1  lengths to limit the use and review of its source code by any individuals,
2  including its own employees and counsel.   These protections extend to
3  descriptions of the source code.   Descriptions of source code in internal
4  documents and emails can and often do reveal important details about how the
5  source code operates and thus deserve the same level of protection as the source
6  code itself.  Indeed, some descriptions are even more revealing of the operation
7  of the products than the source code itself because the descriptions use simple
8  and clear terms to explain how the source code works rather than source code
9  terminology that can be complex to understand, particularly if one function calls
10  a second function, which in turn calls a third, for example.  Having a higher
11  level description of what is happening is extremely valuable.  Thus, limiting the
12  provision to only source code comments is not sufficient.  Apple's proposal to
13  bestow the same protections accorded to source code unto descriptions of source
14  code is a reasonable and necessary protection of its valuable and sensitive asset.

15      Moreover, Plaintiffs incorrectly claim that Apple's proposal is "overly
16  broad."  Apple's proposal cabins the types of technical documents to which this
17  provision applies by proposing the few types of documents that should receive
18  this designation: "(e.g., descriptions of declarations, functions, and
19  parameters)."  Powell Decl. Ex. 3, at 57.

20      This Court should adopt Apple's proposal.

21          **b.**    **Section 11(f)**

22              **i.**    **Generating Source Code as PDF Copies**

23      Plaintiffs propose generating electronic PDF copies of source code on the
24  source code computer for the purpose of "asking the Producing Party to produce
25  paper copies."   Plaintiffs' proposal is an unreasonable request that does not
26  justify exposing Apple's confidential source code to impermissible disclosure or
27  use by converting it to an electronic PDF copy.  There are far more common and
28  less risky means of telling the Producing Party what portion of the source code

-74-

**Exhibit 1**
**-82-**

1  the Receiving Party would like printed—for instance, indicating the starting and

2  ending points of desired portions of source code.  This is how typical litigation

3  discovery and review of confidential, valuable information occurs.  Notably,

4  such language is not present in the provisions of the Protective Order entered in

5  *True Wearables*.   Powell Decl., Ex. 13.   Yet at the last minute, Plaintiffs

6  requested this unnecessary and inefficient provision.  It should be rejected.

7      Plaintiffs' claim that this provision is "the most efficient" neglects the

8  aims of a protective order—to minimize the unnecessary risk of improper

9  disclosure and use of a party's most sensitive and confidential information.

10  Permitting the printing of Apple's valuable source code to an electronic PDF

11  copy contravenes these aims and this Court therefore should reject Plaintiffs'

12  proposal.

13      **ii.**      **Printing More Than 200 Pages**

14      In the beginning of this negotiation, Apple proposed a one-hundred page

15  limit of any printed portion of source code, because, as it explained to Plaintiffs

16  numerous times and still maintains, such a limit is more than necessary to allow

17  Plaintiffs to sufficiently review any such portion of Apple's information at issue

18  in this case.  In the interests of compromise, Apple agreed to compromise on a

19  two-hundred page limit of any printed portion of source code.  Now, however,

20  Plaintiffs drags the dispute on further.  Plaintiff seeks to add language explicitly

21  permitting a reviewing party to demonstrate the need for any printed portion of

22  source code beyond two hundred pages.  This provision should be rejected for

23  two reasons.  *First*, Plaintiffs' provision is unwarranted in light of the already-

24  agreed provision in the protective order that the Protective Order may be

25  modified by the Court.  *See* Samplin Decl. Ex. A, at 32 ("Protective Order")

26  ("Modification by Court.  This Order is subject to further court order based

27  upon public policy or other considerations, and the Court may modify this Order

28  sua sponte in the interests of justice.   All disputes between the Parties

-75-

**Exhibit 1**
**-83-**

1   concerning Protected Material, however designated, produced under the

2   protection of this Order shall be resolved by the United States District Court for

3   the Central District of California."). *Second*, a two hundred page limit is more

4   than adequate for Plaintiffs to view any printed portion of the source code and,

5   therefore, Apple does not agree to include language that might be interpreted by

6   the Court as suggesting that modification of that limit was contemplated by the

7   parties.

### iii.   Printing Directory Paths Information

9       This is another provision that Plaintiffs inserted late in the parties'

10   negotiations over Section 11, which delayed bringing this protective order

11   dispute to the Court.  As a further attempt to expand the number of pages it can

12   print, Plaintiffs asked for source code directory paths, structures, and file names

13   to be excluded.  But those pieces of information ***are*** source code—they are

14   absolutely necessary to enable a computer to compile the source code into

15   executable instructions and are used universally across computing systems and

16   languages.  Source code directory paths provide detailed information about the

17   source code and are thus just as sensitive as the source code instructions.

18   Source code directory paths and file structures should count toward the page

19   limits described.  Moreover, it was with this understanding that source code

20   directory paths, structures, and file names would be included in the page count

21   that Apple, in the interest of compromise, agreed to a two-hundred-page limit of

22   any printed portion source code, a limit more than adequate for review of any

23   printed portion of the source code.

24       Permitting Plaintiffs to sidestep limits on source code printing takes away

25   the incentive for Plaintiffs to be careful and deliberate in choosing portions of

26   code to print, and encourages Plaintiffs to print out larger portions of code than

27   truly necessary and review them at their leisure in their office or at home (i.e.,

28   outside of the secure environment).  Plaintiffs' preferences and convenience

Exhibit 1
-84-

1    plainly do not outweigh the need to protect Apple's valuable and vulnerable

2    source code.   As Apple explained during meet-and-confer discussions with

3    Plaintiffs, the entire purpose of having a source code review room, in which the

4    source code is made available for review (and the existence of which the parties

5    agree is necessary), is for the review to occur in the secure environment.

6    Plaintiffs' "preference and convenience should not trump the need to protect the

7    source code for what Apple considers to be its crown jewels—the products at

8    issue in this case." *Unwired Planet LLC v. Apple Inc.*, No. 3:12-CV-00505-

9    RCJ, 2013 WL 1501489, at *5 (D. Nev. Apr. 11, 2013).

10                   **c.**     **Section 11(h)**

11           The parties dispute who must bear the burden of locating any material left

12    in the source code review room.  Plaintiffs seek to require the Producing Party

13    to review any confidential material left in the review room and to contact the

14    Receiving Party regarding the identification of such material.

15           Plaintiffs request an unnecessary imposition on the Producing Party to

16    contact the Receiving Party and to make judgments about whether something

17    the Producing Party leaves behind is work product or not.  To streamline the

18    process of the review, Apple requests that Plaintiffs be responsible for all

19    materials, potential work product or otherwise, left in the review room.   If

20    anything is left behind, the Receiving Party should bear the burden of notifying

21    the Producing Party.

22                   **d.**     **Section 11(i)**

23           Apple seeks one-day advance notice for the Receiving Party to provide

24    the Producing Party with a log of the reviewers and recipients of paper copies of

25    the source code.  As Apple has explained to Plaintiffs in the parties' meet-and-

26    confers, if one party determines that its source code has been disclosed or used

27    contrary to the provisions of the Protective Order, that party needs every tool at

28    its disposal to stop the further dissemination of the source code.   These

Exhibit 1
-85-

Case 8:20-cv-00048-JVS-JDE   Document 336-3   Filed 04/08/21   Page 88 of 129   Page ID
#:30618
Case 8:20-cv-00048-JVS-JDE   Document 61-1   Filed 06/26/20   Page 84 of 92   Page ID
#:4270

1   provisions are necessary because past experience demonstrates that misuse can

2   occur and, in fact, in at least one instance, the absence of more urgent measures

3   like this provision impaired Apple's ability to act as quickly as it would have

4   liked to prevent further risk of misuse.   In *Valencell Inc. v. Apple Inc.*, the

5   plaintiffs sent a shipment consisting almost entirely of Apple's documents

6   marked "Highly Confidential – Attorneys' Eyes Only" to be used by the

7   plaintiffs' counsel at the deposition of an Apple witness.   Order at 2, *Valencell*

8   *Inc. v. Apple Inc.* (E.D.N.C. Aug. 28, 2017) ECF No. 216.  Instead of being sent

9   to the hotel where Plaintiffs' counsel was staying, the shipment was misdirected

10   to a third party who then alerted Apple of his receipt of its materials.   Despite

11   being aware of the non-delivery, the plaintiffs delayed in disclosing to Apple the

12   disruptions in the shipment.  *Id.* at 3.  Only when Apple contacted the plaintiffs

13   and requested the source code log did the plaintiffs subsequently notify Apple of

14   this disruption and of a second unrelated missing shipment "consisting of almost

15   1,000 pages of Apple's source code" that been intended to be sent to one of the

16   plaintiffs' experts but instead was reported by FedEx as never having left its

17   distribution center and was not received by the expert.  *Id.*   If Apple's source

18   code is sent to the wrong individual or left at a FedEx distribution center, both

19   of which occurred in *Valencell*, Apple would need to know immediately every

20   person that had access to the source code to identify the potential source of that

21   leak.   In such a situation, three days would be completely inadequate.   Turning

22   Plaintiffs' example around, if Apple source code was leaked on the Internet on

23   Christmas Eve, then Apple would indeed expect to have a list of the people who

24   had access to it on Christmas Day.   This provision hopefully will never be

25   necessary.   But, if it is necessary to request a log, the requesting party deserves a

26   response within one day. Plaintiffs' "preference and convenience should not

27   trump the need to protect the source code for what Apple considers to be its

28   crown jewels—the products at issue in this case." *Unwired Planet LLC v. Apple*

**Exhibit 1**
**-86-**

1  *Inc.*, No. 3:12-CV-00505-RCJ, 2013 WL 1501489, at *5 (D. Nev. Apr. 11,

2  2013).

      **e.**      **Section 11(j)**

4      The parties dispute (1) language concerning how many individuals may

5  review and receive the Producing Party's source code on behalf of the

6  Receiving Party; and (2) the transportation of source code by the Receiving

7  Party.

      **i.**      **Increasing the Number of Reviewers**

9      Much like the dispute over number of pages of source code that can be

10  printed, here, Apple originally proposed a limit of ten people to access source

11  code, but agreed to a compromise of fifteen people on behalf of a Receiving

12  Party.   A limit on the number of reviewers of a party's source code is a

13  necessary protection against the risk of inadvertent disclosure.   Plaintiffs'

14  attempt to permit the increase the limit of the number of reviewers beyond

15  fifteen should fail for the same reason that the Court should reject similar

16  language in the page limit provision above.   Plaintiffs' provision is unwarranted

17  in light of the already-agreed provision that the protective order may be

18  modified.  *See* Samplin Decl. Ex. A, at 32 ("Modification by Court.  This Order

19  is subject to further court order based upon public policy or other

20  considerations, and the Court may modify this Order sua sponte in the interests

21  of justice.   All disputes between the Parties concerning Protected Material,

22  however designated, produced under the protection of this Order shall be

23  resolved by the United States District Court for the Central District of

24  California.").   Further, Apple opposes inclusion of any provision in this

25  protective order suggesting that it agrees that adding more people to that limit

26  was contemplated.   Apple does not contemplate either party needing more than

27  fifteen individuals to review the other side's source code.

28

-79-

**Exhibit 1**
**-87-**

      ii.    **Restrictions on how source code may be transported**

This is another example of Plaintiffs' many attempts to indefinitely draw out the negotiation of the protective order.  Each time the parties exchanged protective order provisions, Plaintiffs inserted new clauses into agreed-upon sections and manufactured new disputes.  This provision was added in the latest version Plaintiffs sent despite months of negotiation over the protective order without any suggestion by Plaintiffs that a transportation provision was needed.

Plaintiffs propose unnecessary language outlining who may transport printed source code to and from individuals authorized to view the source code.  The protective order already provides provisions on how many copies can be made and where they are to be stored and by whom.  *See* Powell Decl. Ex. 3, at 74 ("The Receiving Party's outside counsel of record and any person receiving a copy of any Source Code shall maintain and store any paper copies of the Source Code at their offices in a manner that prevents duplication of or unauthorized access to the Source Code.").  Plaintiffs argue that the absence of this language suggests that a party may be "required to personally fly source code printouts to their experts for use in preparing expert reports."  That may be the case.  Apple's source code is extremely sensitive and Apple should not have to take the risk that it will be lost in the mail, FedEx, or any other courier service.  *See Valencell* at 2 (shipment consisting "almost entirely of Apple documents" marked "Attorneys' Eyes Only" "were intended to be sent to the hotel where [the plaintiffs'] counsel would be staying, but were misdirected by an unknown man to a third party"); *id.* at 2 ("The other shipment . . . [consisting] of almost 1,000 pages of Apple's source code . . . was to be sent to [the plaintiffs'] expert, but he did not receive the shipment and it is reported by FedEx as never having left its Fort Worth Distribution Center.").

Source code is going to be produced in a single location for review.

-80-

**Exhibit 1
-88-**

1   Thus, the experts will be traveling to the source code review room to complete
2   the review.  It is not too much of a burden to require that they obtain printed
3   copies in a similar fashion.

4        **f.**     **Section 11(k)**

5         **i.**     **Bringing Source Code to the Deposition**

6        The parties dispute whether the Producing Party shall bring all printed
7   source code to depositions upon request or whether the Producing Party shall
8   receive ten days' notice to bring specific portions of source code to be addressed
9   at a deposition.

10        Plaintiffs request the Producing Party bear the burden of bringing *all* of
11   the printed source code to the deposition.  Apple does not agree.  Instead,
12   Apple's proposal requires Plaintiffs to identify only the portions of the source
13   code they need and avoid needlessly exposing Apple's source code to
14   inadvertent or improper disclosure.  It also forces Plaintiffs to be careful and
15   deliberate in choosing portions of code to print, discouraging Plaintiffs from
16   requesting the printing of larger portions of code than truly necessary.   Apple's
17   provision ensures the adequate protection of its confidential information.  This
18   Court should accept Apple's proposal.

19         **ii.**     **Maintaining Marked Deposition Exhibits**

20        The parties dispute whether the Producing Party must maintain marked
21   deposition exhibits during the pendency of this case.  Plaintiffs argue that there
22   is no potential harm in requiring Apple to maintain paper copies of its
23   confidential source code.  Not so.  Plaintiffs' proposal unnecessarily preserves
24   Apple's confidential technical information in a medium that allows it to be
25   easily misused.  By contrast, there is no risk, as Plaintiffs argue, that Apple's
26   proposal could create the evidentiary issue that the parties might dispute the
27   content of an exhibit introduced at a deposition.  The exhibit is clearly identified
28   by the court reporter and the deposition transcript and Apple cannot foresee any

**Exhibit 1
-89-**

1     scenario that results in the outcome Plaintiffs describe.

2            **g.**    <u>Section 11(l)</u>

3         The parties dispute whether the protective order requires confirmation

4 that the Court has the authority to order a party to file source code over the

5 objection of the Producing Party. Plaintiffs' provision is redundant and

6 unwarranted in light of the already-agreed provision in the protective order that

7 the Protective Order may be modified. *See* Samplin Decl. Ex. A, at 32

8 ("Modification by Court. This Order is subject to further court order based

9 upon public policy or other considerations, and the Court may modify this Order

10 sua sponte in the interests of justice. All disputes between the Parties

11 concerning Protected Material, however designated, produced under the

12 protection of this Order shall be resolved by the United States District Court for

13 the Central District of California.").

14         As Plaintiffs admit, their proposal merely restates the Court's inherent

15 authority—something that Apple has never disagreed with. This is another

16 example of Plaintiffs' many attempts to indefinitely draw out the negotiation

17 process of the protective order. Each time the parties exchanged protective

18 order provisions, Plaintiffs inserted new clauses into agreed-upon sections,

19 manufacturing new disputes and making it impossible for the parties to identify

20 the issues actually in dispute. This is one such example.

21         In light of the foregoing, this Court should reject Plaintiffs' language.

22 **I.**    <u>**Section 17 – Disposition After Trial**</u>

23         The Parties' dispute on Section 17 is shown below, with underlined text

24 showing Apple's proposed additions to Plaintiffs' proposal and strikethrough

25 text showing Apple's proposed deletions to Plaintiffs' proposal:

26         17.     FINAL DISPOSITION

27         ~~After~~<u>Not later than sixty (60) days after</u> the Final Disposition of

28         this Action, as defined in Paragraph 6, ~~within 60 days of a written~~

-82-

**Exhibit 1**
**-90-**

1    ~~request by the Designating Party,~~ each Receiving Party shall return

2    all Protected Material to the Producing Party or destroy such

3    material. . . .

4    **1.    <u>Plaintiffs' Position</u>**

5    Plaintiffs again propose following the Court's Model Order. *Compare*

6    Powell Decl., Ex. 1 (Model Order) at 14-15 *with* Ex. 2 (Plaintiffs' proposal) at

7    28-29.  The Court's Model Order provides that information should be deleted or

8    returned at the end of the case within 60 days of receiving a request from the

9    opposing party.  This provision makes sense, as it helps prevent inadvertent

10   failures to delete or return information and avoids any dispute as to the precise

11   date of "Final Disposition."  This language is commonly included in protective

12   orders.  *See, e.g.*, *Glaukos* (Powell Decl., Ex. 21) at 16.

13   Apple proposes that the obligation to return or destroy be automatically

14   triggered by "Final Disposition."  Powell Decl., Ex. 4 at 30.  Apple provides no

15   justification for departing from the Court's Model Order other than suggesting

16   Apple used automatic provisions in other cases.  Plaintiffs believe the Court's

17   standard language reflects the better practice.  Plaintiffs also do not believe that

18   Apple's prior practice in other cases is a sufficient reason to depart from this

19   Court's Model Order.  Moreover, it makes practical sense to place the burden on

20   the Producing Party to remember to ask for the return or destruction of its

21   confidential information.  The Court should adopt Plaintiffs' proposal.

22   **2.    <u>Defendant's Position</u>**

23   The parties are in agreement about every aspect of this provision, besides

24   Plaintiffs' request for a requirement of written notice to trigger return or

25   destruction of Protected Material following Final Disposition.  This case will

26   involve production of highly confidential technical information, including

27   source code.  Apple therefore already is certain that it wants Plaintiffs to return

28   or destroy all such material that they receive from Apple following the

-83-

**Exhibit 1**
**-91-**

1  resolution of this action, and Apple assumes that Plaintiffs want the same from
2  Apple with respect to their sensitive information and source code.  The parties
3  should not be required to provide formal, written notice to effectuate that result.

4         Plaintiffs' argument that written notice is necessary to ascertain the
5  timing of "Final Disposition" is wrong.  Apple has reached agreement with
6  opposing parties in scores of other litigations on the language it proposes here
7  (i.e., return or destruction of Protected Material following Final Disposition of
8  the action, without written notice), and has never in those cases encountered an
9  unsolvable issue with respect to the meaning of "Final Disposition."  Final
10  disposition is not a nebulous concept.  It will be very clear to Plaintiffs when
11  they should return or destroy Apple's Protected Material—and on the off chance
12  it is not, Plaintiffs can simply send Apple's counsel an email seeking guidance.

13         Likewise unpersuasive is Plaintiffs' statement that it "makes practical
14  sense to place the burden on the Producing Party to remember to ask for the
15  return or destruction of its confidential information."  In fact, the statement is
16  concerning, as it underscores Plaintiffs' belief that if Apple inadvertently fails to
17  satisfy the formality of written notice, Plaintiffs get to hold onto Apple's highly
18  confidential information, including source code and potentially trade secrets,
19  indefinitely.  That is certainly not how these protective order provisions are
20  meant to work.  Indeed, it would defeat the very purpose of a protective order—
21  which is meant to govern the receipt, possession, and use of other parties'
22  confidential information during the pendency of the lawsuit for which the
23  confidential information was produced in the first place.

24         Finally, as is clear from the text, Apple is not requesting a unilateral
25  provision.   Apple's proposal is bilateral—and would relieve Apple *and*
26  Plaintiffs from the formality of written notice to compel destruction or return of
27  materials that they already know they do not want circulating outside of their
28  respective companies following Final Disposition of this action.  Frankly, Apple

Exhibit 1
-92-

1   is surprised that the parties were unable to resolve this issue without court

2   intervention, as Apple's proposal seems to be in the best interests of all

3   parties—preventing a "gotcha" where a party simply forgets that the protective

4   order requires the formality of written notice to effectuate return or destruction.

5          Apple recognizes that this Court's general Model Order includes the

6   "written request" language Plaintiffs seek.   Apple nonetheless respectfully

7   submits that written requests should not be required to compel return or

8   destruction of the Protected Material that will be involved in this case—which

9   has the potential to include some of the most sensitive information at Apple.

10   Apple notes that the Northern District's Model Order does not require written

11   notice for the return or destruction of Protected Material following Final

12   Disposition of the action.   *See* Samplin Decl. Ex. D, at 74.   While Apple

13   recognizes that this District has not published its own distinct Model Order for

14   cases "involving patents, highly sensitive confidential information and/or trade

15   secrets," Apple submits that the Northern District's language on this dispute, for

16   this particular type of case, is instructive.

17          Simply put, short of pointing to this Court's Model Order, Plaintiffs have

18   provided no practical or legal reason to oppose Apple's sensible and customary

19   proposal.   Apple respectfully requests that the Court so order Apple's proposed

20   version of this protective order provision accordingly.

21                              Respectfully submitted,

22
                               KNOBBE, MARTENS, OLSON & BEAR, LLP
23
     Dated:  June 26, 2020       By: */s/ Adam B. Powell*
24                                   Joseph R. Re
                                     Stephen C. Jensen
25                                   Perry D. Oldham
                                     Stephen W. Larson
26                                   Adam B. Powell
27                                   Attorneys for Plaintiffs
                                     Masimo Corporation and
28                                   Cercacor Laboratories

                                   -85-

Exhibit 1
-93-

1

GIBSON, DUNN & CRUTCHER LLP

2

Dated:  June 26, 2020

3

By: */s/ Ilissa Samplin (with permission)*

Joshua H. Lerner

4

H. Mark Lyon

Brian M. Buroker

5

Brian A. Rosenthal

Ilissa Samplin

6

Angelique Kaounis

7

Attorneys for Defendant Apple Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 1**
**-94-**

# EXHIBIT 2

1   JOSHUA H. LERNER, SBN 220755
      jlerner@gibsondunn.com
2   GIBSON, DUNN & CRUTCHER LLP
    555 Mission Street Suite 3000
3   San Francisco, CA 94105
    Tel.: 415.393.8200 / Fax: 415.393.8306
4
5   H. MARK LYON, SBN 162061
      mlyon@gibsondunn.com
    GIBSON, DUNN & CRUTCHER LLP
6   1881 Page Mill Road
    Palo Alto, CA 94304-1211
7   Tel.: 650.849.5300 / Fax: 650.849.5333

8   BRIAN M. BUROKER, *pro hac vice*
      bburoker@gibsondunn.com
9   BRIAN K. ANDREA, *pro hac vice*       ILISSA SAMPLIN, SBN 314018
      bandrea@gibsondunn.com                isamplin@gibsondunn.com
10  GIBSON, DUNN & CRUTCHER LLP           GIBSON, DUNN & CRUTCHER LLP
    1050 Connecticut Avenue, NW           333 South Grand Avenue
11  Washington, DC 20036                  Los Angeles, CA 90071-3197
    Tel.: 202.955.8500 / Fax: 202.467.0539  Tel.: 213.229.7000 / Fax: 213.229.7520
12
13  BRIAN A. ROSENTHAL, *pro hac vice*    ANGELIQUE KAOUNIS, SBN 209833
      brosenthal@gibsondunn.com             akaounis@gibsondunn.com
    GIBSON, DUNN & CRUTCHER LLP           GIBSON, DUNN & CRUTCHER LLP
14  200 Park Avenue                       2029 Century Park East Suite 4000
    New York, NY 10166-0193               Los Angeles, CA 90067
15  Tel.: 212.351.2339 / Fax: 212.817.9539  Tel.: 310.552.8546 / Fax: 310.552.7026

16  *Attorneys for Defendant Apple Inc.*

17
18              **UNITED STATES DISTRICT COURT**
    **FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**
19
20  MASIMO CORPORATION,                   CASE NO. 8:20-cv-00048-JVS (JDEx)
    a Delaware corporation; and
21  CERCACOR LABORATORIES, INC.,          **MEMORANDUM OF POINTS AND**
    a Delaware corporation,               **AUTHORITIES IN SUPPORT OF**
                                          **DEFENDANT APPLE INC.'S**
22                  Plaintiffs,           **MOTION FOR PARTIAL**
                                          **RECONSIDERATION OF**
23         v.                             **PROTECTIVE ORDER (DKT. NO. 67)**

24  APPLE INC.,
    a California corporation,             **Hearing**
25
                    Defendant.            Date:       August 6, 2020
26                                        Time:       10:00 a.m.
                                          Courtroom:  6A
27                                        Judge:      Hon. John D. Early
28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND ............................................................................................. 3

III.    STANDARD OF REVIEW............................................................................. 3

IV.     ARGUMENT................................................................................................... 4

    **A.**   Disclosure of Plaintiffs' Section 2019.210 Statement to a Limited
        Number of Apple's In-House Counsel (Section 9.3)................................... 4

    **B.**   Inclusion of an Acquisition Bar (Section 10) ............................................ 7

V.      CONCLUSION ............................................................................................. 10

**Exhibit 2
-96-**

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*,
  2011 WL 197811 (N.D. Cal. Jan. 20, 2011)........................................................8

*Blackbird Tech LCC v. Serv. Lighting & Elec. Supplies, Inc.*,
  2016 WL 2904592 (D. Del. May 18, 2016) .....................................................10

*Bladeroom Grp. Ltd., v. Facebook, Inc.*,
  No. CV-15-01370-EJD (N.D. Cal. Aug. 3, 2015).............................................5

*Brown Bag Software v. Symantec Corp.*,
  960 F.2d 1465 (9th Cir. 1992) ..........................................................................5

*Catch A Wave Techs., Inc. v. Sirius XM Radio, Inc.*,
  2013 WL 9868422 (N.D. Cal. Aug. 6, 2013)................................................9, 10

*In re Deutsche Bank Tr. Co. Ams.*,
  605 F.3d 1373 (Fed. Cir. 2010) .........................................................................9

*E-Contact Techs., LLC v. Apple, Inc.*,
  2012 WL 11924448 (E.D. Tex. June 19, 2012) ...........................................9, 10

*EPL Holdings, LLC v. Apple Inc.*,
  2013 WL 2181584 (N.D. Cal. May 20, 2013)...............................................9, 10

*FTC v. Exxon Corp.*,
  636 F.2d 1336 (D.C. Cir. 1980).........................................................................9

*Intellectual Ventures I LLC v. Altera Corp.*,
  No. 10-CV-00065 (D. Del. Aug. 1, 2012).......................................................10

*Intellectual Ventures I, LLC v. Lenovo Group Ltd.*,
  2019 WL 343242 (D. Mass. Jan. 25, 2019)....................................................10

*Inventor Holdings, LLC v. Google, Inc.*,
  2014 WL 4369504 (D. Del. Aug. 27, 2014).....................................................10

*Mastronardi Int'l Ltd. v. SunSelect*,
  2019 WL 3996608 (E.D. Cal. Aug. 23, 2019) ..................................................5

*MMCA Grp., Ltd. v. Hewlett-Packard Co.*,
   2009 WL 595537 (N.D. Cal. Mar. 5, 2009) ................................................ 5

*Realtime Adaptive Streaming LLC v. Google LLC*,
   No. 18-CV-03629 (C.D. Cal. July 18, 2019) ........................................... 10

*Smith v. Massachusetts*,
   543 U.S. 462 (2005) .................................................................................. 3

*Telebuyer, LLC v. Amazon.com, Inc.*,
   2014 WL 5804334 (W.D. Wash. July 7, 2014) ................................. 8, 10

*U.S. Steel Corp. v. United States*,
   730 F.2d 1465 (Fed. Cir. 1984) ............................................................... 5

*Uniloc USA, Inc. v. Apple Inc.*,
   No. 18-CV-00572 (N.D. Cal. July 2, 2018) ........................................... 10

*Univ. of Va. Patent Found. v. Gen. Elec. Co.*,
   No. 14-CV-00051 (W.D. Va. June 11, 2015) ......................................... 10

*Unwired Planet LLC v. Apple Inc.*,
   2013 WL 1501489 (D. Nev. Apr. 11, 2013) ......................................... 10

*Waymo LLC v. Uber Techs., Inc.*,
   No. C 17-00939 WHA (N.D. Cal. March 16, 2017) ................................ 5

**Rules**

Fed. R. Civ. Proc. 54(b) ................................................................................ 3

Local Rule 7-18(c) ........................................................................................ 1

Exhibit 2
-98-

# I.   **INTRODUCTION**

Apple requests that the Court reconsider and amend two provisions of the Protective Order:   (1) Section 9.3, to permit the disclosure of Plaintiffs' Section 2019.210 statement to a limited number of Apple's in-house counsel; and (2) Section 10, to include an acquisition bar.

Apple proposed both of these provisions in its draft protective order submitted on June 26, 2020 (Dkt. No. 61-5, Ex. A), and explained its reasoning in the parties' Joint Stipulation filed the same day (Dkt. No. 61-1, at 47-49, 59-62).  The Court entered a Protective Order without either provision on June 30, 2020 (Dkt. No. 67).  But the Court did not explain its reasons for denying Apple's request to include these provisions.[1]  Apple submits that in the absence of any order or explanation suggesting otherwise, it appears that the Court manifestly failed to consider material facts presented by Apple before entering the Protective Order.   *See* Local Rule 7-18(c).   The Court should reconsider its Order on both issues accordingly.

With respect to Section 9.3, Apple sought access for three of its in-house counsel to the Section 2019.210 statement that Plaintiffs promised to produce in the case.[2]  Protective order provisions that permit a limited number of in-house counsel access to highly confidential information, including Section 2019.210 disclosures, are common in trade secret actions throughout this Circuit because, without them, it is next to impossible for a corporate trade secret defendant to mount a defense. *See* Dkt. No. 61-1, at 48-49 (citing numerous exemplar cases).  Such a provision is particularly warranted here, because Apple's in-house counsel plays a key role in the collection and production

---

[1]   The Court entered the Protective Order without a corresponding decision—and therefore denied, without explanation, additional protective order provisions requested by the parties.  This Motion is limited to Apple's Sections 9.3 and 10 proposals.

[2]   Plaintiffs' first amended trade secret misappropriation claim was dismissed with leave to replead on June 25, 2020 (Dkt. No. 60), but Plaintiffs have confirmed that they intend to replead the claim.  *See* Dkt. No. 68 (Plaintiffs agreeing to schedule for motion to dismiss its soon-to-be repleaded trade secret misappropriation claim).  Thus, Plaintiffs will be required to serve the subject Section 2019.210 disclosure.  *See* Dkt. No. 37 (staying trade secret discovery pending compliance with 2019.210).

Exhibit 2
-99-

1   of documents responsive to Plaintiffs' requests, and because if there is a legitimate trade

2   secret claim (which there does not appear to be), Apple's in-house counsel needs to

3   know the identity of the trade secrets to aid in the defense of the claim and to excise the

4   trade secrets.  Apple's in-house counsel cannot form their own conclusions, or make

5   independent decisions, as to Plaintiffs' trade secret claim without access to a

6   particularized description of the alleged trade secrets at issue in this case.  Apple

7   therefore submits that in issuing a Protective Order without Apple's proposed Section

8   2019.210 provision, the Court failed to consider material facts that will hinder Apple's

9   ability to defend—and potentially resolve—the trade secret misappropriation claim in

10   this case.

11         With respect to Section 10, Apple requested a patent acquisition bar for the same

12   reasons that the parties agreed warrant a patent prosecution bar.  The Court denied

13   Apple's request without explanation and, in doing so, appears to have failed to consider

14   the risks of inadvertent disclosure and competitive misuse previously articulated by

15   Apple throughout its portion of the Joint Stipulation (Dkt. No. 61-1, at 47-49)—

16   particularly by these Plaintiffs who are highly litigious and have shown time and again

17   that they are willing to sue companies they view as a threat to their business.  Apple

18   respectfully submits that in a case like this one—where the parties and the Court agree

19   that a patent prosecution bar is necessary—it makes perfect sense to likewise put in place

20   a patent acquisition bar that prohibits Plaintiffs' counsel who actually review Apple's

21   sensitive technical material from participating in patent acquisitions relating to that

22   material's subject matter until two years after the case ends.  Indeed, Plaintiffs failed to

23   present any facts that weigh in favor of the alternative result adopted by this Court.

24         Apple respectfully submits that without these proposed Sections 9.3 and 10

25   provisions, Apple's ability to defend itself in this litigation will be significantly

26   impaired, and its sensitive, technical information will be at an unacceptably high risk of

27   inadvertent disclosure and competitive misuse.  The Court should reconsider Sections

28   9.3 and 10, and enter an amended Protective Order containing Apple's proposals on

Exhibit 2
-100-

1    these two issues.

## II.   BACKGROUND

3       Recognizing that this litigation will involve some of Apple's most valuable and
4    highly confidential information, for over three months Apple diligently negotiated the
5    terms of a protective order with Plaintiffs.   Apple sought the protections that it
6    reasonably believes it needs to defend itself against Plaintiffs' asserted patent and trade
7    secret claims, and to protect its sensitive and confidential information and trade secrets
8    in the process.  Despite Apple's best efforts, the parties arrived at an impasse on several
9    issues.  The parties briefed those issues to the Court in a Joint Stipulation filed on June
10   26, 2020.   Apple appended to that Joint Stipulation its proposed protective order;
11   Plaintiffs did the same with their proposed protective order.

12       On June 30, 2020, the Court entered the Protective Order.  Dkt. No. 67.  The
13   Protective Order adopts certain of Apple's proposed provisions, while rejecting others
14   in favor of Plaintiffs' proffered provisions.  The Protective Order was not accompanied
15   by a written memorandum or decision.  Apple therefore has no insight into the Court's
16   reasons for rejecting certain of Apple's proposed protective order provisions—
17   including, of relevance to this Motion, the Section 2019.210 language Apple proposed
18   for Section 9.3 and the acquisition bar Apple proposed for Section 10.

## III.   STANDARD OF REVIEW

20      "A district court has the inherent power to reconsider and modify its interlocutory
21   orders prior to the entry of judgment."  *Smith v. Massachusetts*, 543 U.S. 462, 475
22   (2005); Fed. R. Civ. P. 54(b) ("[A]ny order or other decision . . . that adjudicates fewer
23   than all the claims or the rights and liabilities of fewer than all the parties . . . may be
24   revised at any time before the entry of a [final] judgment.").  Local Rule 7-18 provides
25   that a motion for reconsideration may be filed on the following grounds:  "(a) a material
26   difference in fact or law from that presented to the Court before such decision that in the
27   exercise of reasonable diligence could not have been known to the party moving for
28   reconsideration at the time of such decision, or (b) the emergence of new material facts

Gibson, Dunn &
Crutcher LLP

MPA ISO APPLE'S MOT. FOR PARTIAL
RECONSIDERATION OF PROTECTIVE ORDER          3          CASE NO. 8:20-cv-00048-JVS (JDEx)

Exhibit 2
-101-

or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." Local R. 7-18.  This Motion is brought under subsection (c) of Local Rule 7-18.

# IV.  **ARGUMENT**

**A.  Disclosure of Plaintiffs' Section 2019.210 Statement to a Limited Number of Apple's In-House Counsel (Section 9.3)**

Apple sought access for three of its in-house counsel to Plaintiffs' Section 2019.210 disclosure given the integral role Apple's in-house counsel plays in defending cases like this one.  Far from identifying their trade secrets with reasonable particularity more than six months into this case, Plaintiffs have yet to even adequately plead those purported trade secrets under Federal Rule of Civil Procedure 8.  *See* Dkt. No. 60, at 6-8.  As a result, Apple does not know what trade secrets Plaintiffs believe Apple misappropriated or where the alleged trade secrets could be found.  Apple therefore cannot identify or return any alleged trade secret information.  This situation is untenable and unfair now, but it will be even worse if Apple's in-house counsel cannot access the Section 2019.210 disclosure when Plaintiffs finally produce one.  At that point, Plaintiffs will be able to demand trade secret-related discovery, but Apple's in-house counsel will have no ability to provide direction or input on discovery responses or documents.  Nor will Apple's in-house counsel be able to form any independent conclusions as to the merits of the trade secret claim—certainly not as to any possibility of its resolution. Apple therefore respectfully submits that the Court failed to consider the negative impact that will result on this litigation—including its potential resolution—if only the Court and Apple's outside counsel have access to a particularized description of the alleged trade secrets at issue.

In determining whether in-house counsel should be permitted to view the opposing party's trade secrets, the Ninth Circuit has advised courts to balance the risk to the producing party of inadvertent disclosure of its trade secrets to competitors against the risk to the receiving party that protection of the trade secrets will impair the receiving

Case 8:20-cv-00048-JVS-JDE   Document 336-3   Filed 04/08/21   Page 106 of 129   Page ID
#:30636
Case 8:20-cv-00048-JVS-JDE   Document 72-1   Filed 07/08/20   Page 9 of 15   Page ID
#:5520

1    party's defense. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th

2    Cir. 1992). A crucial inquiry is whether in-house counsel was involved in "competitive

3    decisionmaking"—i.e., giving advice or participating in decisions about product design,

4    pricing, and the like in light of similar or corresponding information about a competitor.

5    *Id.* (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984)).

6         Against this backdrop, courts throughout this Circuit routinely permit a limited

7    number of in-house counsel to access attorneys' eyes only information—including

8    Section 2019.210 disclosures—in trade secret cases. *See, e.g.*, *Mastronardi Int'l Ltd. v.*

9    *SunSelect*, 2019 WL 3996608, at *9 (E.D. Cal. Aug. 23, 2019) (permitting disclosure of

10   attorneys' eyes only material to *any number of designated in-house counsel* who are not

11   involved in competitive decision-making, to whom disclosure is reasonably necessary

12   for the litigation, and who have agreed to be bound by the protective order); Transcript

13   of Case Management Proceedings, *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939

14   WHA (N.D. Cal. March 16, 2017), ECF No. 63 (permitting disclosure of highly

15   confidential materials to one in-house counsel upon his or her agreement to be bound by

16   the protective order); Order at 10, *Bladeroom Grp. Ltd., v. Facebook, Inc.*, No. CV-15-

17   01370-EJD (N.D. Cal. Aug. 3, 2015) ECF No. 54 (permitting disclosure of attorneys'

18   eyes only material to two designated in-house counsel who have no involvement in

19   competitive decision-making, to whom disclosure is reasonably necessary for the

20   litigation, and who have agreed to be bound by the protective order); *MMCA Grp., Ltd.*

21   *v. Hewlett-Packard Co.*, 2009 WL 595537, at *1 (N.D. Cal. Mar. 5, 2009) (granting two

22   of defendants' in-house attorneys access to attorneys' eyes only material given small

23   risk of disclosure where the "attorneys who would be given access to AEO materials

24   would be litigation attorneys with no involvement" in defendants' business affairs).

25   Apple is ready and willing to designate attorneys from its litigation group who are not

26   competitive decision makers and who are willing to be bound by the Protective Order.

27        As Apple previously explained, disclosure to in-house counsel is essential in this

28   case for the same reasons it was essential in the other cases in this Circuit where in-

**Exhibit 2**
**-103-**

1    house counsel have been permitted access to highly confidential information, including

2    Section 2019.210 disclosures.  *See* Dkt. No. 61-1, at 47-49.  In particular, Apple's in-

3    house counsel plays a key role in organizing document discovery in this case, and

4    therefore needs to know the identity of the purported trade secrets so that it can manage

5    the search for documents responsive to Plaintiffs' discovery requests and also prevent

6    disclosure of *Apple's* trade secrets in the process.  *Id.* at 48.  This is not a case where

7    outside counsel is—or could be—solely responsible for the collection and review of

8    documents responsive to the opposing party's requests.  Apple's in-house counsel is

9    essential to the process, and will be unable to do their job with respect to the trade secret

10    side of the case if they cannot learn what the alleged trade secrets are.

11          Moreover, Apple genuinely does not believe that it possesses any of Plaintiffs'

12    trade secrets—nor does it want access to any of that information.  Apple's in-house

13    counsel needs to know what information Plaintiffs claim Apple misappropriated so that

14    it can excise the information from Apple's products as soon as possible (to the extent

15    the claim has merit) and mitigate damages consistent with its duty under the law.  *Id.*

16    Indeed, while Apple's outside counsel is capable of defending Apple against Plaintiffs'

17    claim of trade secret misappropriation in the courtroom, Apple's outside counsel will be

18    powerless when it comes to altering Plaintiffs' products and/or mitigating damages if

19    they learn that Plaintiffs' alleged trade secrets are incorporated into Apple's products

20    and cannot advise Apple of that fact.  For these reasons, Apple submits that it is highly

21    appropriate—and, indeed, necessary—for a limited number of its in-house counsel to be

22    permitted access to the Section 2019.210 disclosure served in this action.  It appears that

23    in denying Apple's request for Section 2019.210 disclosure access, the Court failed to

24    consider these material facts.

25          Importantly, granting Apple's in-house counsel the access it seeks would not

26    impose any significant harm on Plaintiffs—and certainly not any harm that outweighs

27    that which will result to Apple if its in-house counsel cannot even discern the purported

28    trade secrets the company is alleged to have misappropriated.  The risk of disclosure is

Gibson, Dunn &
Crutcher LLP

MPA ISO APPLE'S MOT. FOR PARTIAL
RECONSIDERATION OF PROTECTIVE ORDER    6    CASE NO. 8:20-CV-00048-JVS (JDEX)

Exhibit 2
-104-

particularly minimal here where, by nature of their trade secret misappropriation claim, Plaintiffs have alleged that Apple *already has possession of their trade secrets*. If Plaintiffs' trade secret information is already in Apple's possession as Plaintiffs contend, Plaintiffs should have no qualms about sharing that information with the limited number of persons at Apple directly involved in the defense of this lawsuit. Moreover, the in-house counsel for whom Apple will seek access are not involved in competitive decision-making. Therefore, this case is akin to the *many* other cases throughout this Circuit where courts have found the risk of inadvertent disclosure outweighed by the need for effective legal decision making.

The balance of hardships favors Apple's position on this issue. The potential harm to Plaintiffs in disclosing their confidential information to an extremely limited number of Apple's in-house counsel is far outweighed by the impact the preclusion of such information will have on Apple's ability to defend this case. Apple's request for access for the three in-house counsel integrally involved in the defense of this action, who are not involved in competitive decision-making for the company, is reasonable under the standard set out in similar cases in this Circuit.[3] This Court should grant Apple's Motion for Reconsideration with respect to this issue, and modify Section 9.3 of the Protective Order accordingly.

## B.    Inclusion of an Acquisition Bar (Section 10)

In addition to the patent prosecution bar that both parties agree is necessary in this case involving sensitive, technical information, Apple also sought an acquisition bar—to prohibit any of Plaintiffs' counsel who actually review Apple's sensitive, technical material from participating in patent acquisitions relating to that material's subject matter until two years after the case ends. *See* Dkt. No. 61-1, at 59-62. The current Protective Order gives opposing counsel who review Apple's sensitive, technical

---

[3]    While Apple would prefer that access be granted to more than three of its in-house counsel, given the number of in-house counsel involved in this case, Apple narrowed its request to three in-house counsel in response to Plaintiffs' confidentiality concerns. At a minimum, Apple respectfully requests access for two of these in-house counsel.

1   material *carte blanche* to participate in patent acquisitions relating to that material's
2   subject matter—even though this case necessarily will involve the production of some
3   of Apple's most confidential and sensitive technical information that could be misused
4   during the process of advising on an acquisition just as readily as it can be misused
5   during patent prosecution.  Apple submits that the Court failed to consider material facts
6   demonstrating the high risks of inadvertent disclosure and competitive misuse in this
7   case created by a Protective Order without an acquisition bar.

8        Plaintiffs seek access to Apple's highly confidential, sensitive, and valuable,
9   source code.  The disclosure of source code carries significant risks of inadvertent
10  disclosure and competitive misuse.  *See, e.g.*, *Telebuyer, LLC v. Amazon.com, Inc.*, 2014
11  WL 5804334, at *2 (W.D. Wash. July 7, 2014) (describing source code as "highly
12  confidential, technical information" that poses a "heightened risk of inadvertent
13  disclosure") (citation omitted); *Applied Signal Tech., Inc. v. Emerging Markets
14  Commc'ns, Inc.*, 2011 WL 197811, at *2 (N.D. Cal. Jan. 20, 2011) ("confidential
15  technical documents, including source code . . . may pose a heightened risk of
16  inadvertent disclosure").  The concerns about the detrimental impact any inadvertent
17  public disclosure of Apple's source code and technical documentation would have on
18  Apple's business is particularly heightened here—where Plaintiffs are highly litigious
19  companies that that have shown time and again that they are willing to sue companies
20  they view as a threat to their business and who have been involved in numerous corporate
21  acquisitions, including two announced just this year.

22       Given these facts, it is necessary to restrict Plaintiffs' counsel who review Apple's
23  sensitive, technical information from later assisting Plaintiffs in the acquisition of
24  patents covering the disclosed technology.  The rationale for an acquisition bar of the
25  type Apple seeks is well-established:  "It is very difficult for the human mind to
26  compartmentalize and selectively suppress information once learned, no matter how
27  well-intentioned the effort may be to do so."  *In re Deutsche Bank Tr. Co. Ams.*, 605
28  F.3d 1373, 1378 (Fed. Cir. 2010) (alteration omitted) (quoting *FTC v. Exxon Corp.*, 636

F.2d 1336, 1350 (D.C. Cir. 1980)).  Notwithstanding general provisions "specifying that designated confidential information may be used only for purposes of the current litigation," and notwithstanding the good faith of all individuals involved, courts recognize that "there may be circumstances in which even the most rigorous efforts . . . to preserve confidentiality . . . may not prevent inadvertent compromise."  *Id.*; *see also Catch A Wave Techs., Inc. v. Sirius XM Radio, Inc*., 2013 WL 9868422, at *1 (N.D. Cal. Aug. 6, 2013) ("The patent acquisition bar . . . adds an additional layer of protection by prohibiting not just disclosure and use, but also advising.").

Plaintiffs themselves recognized and endorsed these settled principles when they agreed to a prosecution bar nearly identical in scope to Apple's proposed acquisition bar.  The justification underlying both provisions is identical:  it will be difficult, if not impossible, for an individual who has seen Apple's highly confidential information (such as its source code and technical design documents) to segregate that information mentally when later advising on patent prosecution or acquisition related to that information.  The risks of inadvertent disclosure and competitive misuse are the same with respect to both prosecution and acquisition:

> Counsel for Plaintiff has acquiesced to the imposition of a patent prosecution bar, and, therefore, apparently agrees that there could possibly be a risk of inadvertent disclosure of Defendants' confidential information in the course of representing their client before the PTO.  Therefore, it is hard to conceive that there would be little or no risk of inadvertent disclosure when these same attorneys advise their client in matters regarding acquisitions of patents.

*E-Contact Techs., LLC v. Apple, Inc*., 2012 WL 11924448, at *2 (E.D. Tex. June 19, 2012); *see also EPL Holdings, LLC v. Apple Inc.*, 2013 WL 2181584, at *4 (N.D. Cal. May 20, 2013) (explaining that patent acquisition and prosecution create the same risk of inadvertent use because "litigation counsel may consciously or subconsciously use their knowledge . . . to advise a client on which patents to acquire").  Far from novel, the

1    acquisition bar Apple requested—and that this Court denied without explanation—has
2    been routinely granted by courts throughout the country in situations like this one.  *See,*
3    *e.g.*, Order at 5, *Realtime Adaptive Streaming LLC v. Google LLC*, No. 18-CV-03629
4    (C.D. Cal. July 18, 2019), ECF No. 80; *Intellectual Ventures I, LLC v. Lenovo Group*
5    *Ltd.*, 2019 WL 343242, at *4 (D. Mass. Jan. 25, 2019); Order at 3, *Uniloc USA, Inc. v.*
6    *Apple Inc.*, No. 18-CV-00572 (N.D. Cal. July 2, 2018), ECF No. 107; Order at 10, *Univ.*
7    *of Va. Patent Found. v. Gen. Elec. Co.*, No. 14-CV-00051 (W.D. Va. June 11, 2015),
8    ECF No. 61; *Telebuyer*, 2014 WL 5804334, at *7; *Inventor Holdings, LLC v. Google,*
9    *Inc.*, 2014 WL 4369504, at *2 (D. Del. Aug. 27, 2014); *Catch A Wave Techs., Inc.*, 2013
10   WL 9868422, at *1; *EPL Holdings, LLC*, 2013 WL 2181584, at *5; *Unwired Planet*
11   *LLC v. Apple Inc.*, 2013 WL 1501489, at *7 (D. Nev. Apr. 11, 2013); Transcript at 29:20-
12   30:4, *Intellectual Ventures I LLC v. Altera Corp.*, No. 10-CV-00065 (D. Del. Aug. 1,
13   2012), ECF No. 145; *E-Contact Techs., LLC*, 2012 WL 11924448, at *2; *cf. Blackbird*
14   *Tech LCC v. Serv. Lighting & Elec. Supplies, Inc.*, 2016 WL 2904592, at *6 (D. Del.
15   May 18, 2016) (requiring covenant not to sue on patents acquired during duration of
16   protective order).

17        It is undisputed that there is a significant risk of inadvertent disclosure by
18   attorneys that review Apple's confidential, highly confidential and source code
19   information in patent prosecution.  That same risk equally applies when the attorneys
20   are involved in patent acquisitions.  The material fact that the risk is the same for patent
21   prosecution and patent acquisition appears to have been overlooked by the Court because
22   the acquisition bar was not included in the Protective Order.  Therefore, Apple requests
23   reconsideration to include the patent acquisition bar to address this material fact.

## V.    <u>CONCLUSION</u>

25        For the foregoing reasons, Apple respectfully requests that the Court amend the
26   Protective Order to (1) permit disclosure of Plaintiffs' Section 2019.210 disclosure to at
27   least two of Apple's in-house counsel; and (2) include an acquisition bar preventing any
28   of Plaintiffs' counsel who actually review Apple's sensitive technical material from

1   participating in patent acquisitions relating to that material's subject matter until two

2   year after the case ends.

3

4   Dated:  July 8, 2020                              Respectfully submitted,

5                                                     JOSHUA H. LERNER

6                                                     H. MARK LYON
                                                      BRIAN M. BUROKER

7                                                     BRIAN A. ROSENTHAL
                                                      ILISSA SAMPLIN

8                                                     ANGELIQUE KAOUNIS
                                                      BRIAN K. ANDREA

9                                                     GIBSON, DUNN & CRUTCHER LLP

10

11                                                    By:  */s/ Joshua H. Lerner*
                                                            Joshua H. Lerner

12

13                                                    *Attorneys for Defendant Apple Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 2
-109-**

# EXHIBIT 3

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.:  415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.:  650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION,<br>a Delaware corporation; and<br>CERCACOR LABORATORIES, INC.,<br>a Delaware corporation,<br><br>           Plaintiffs,<br><br>   v.<br><br>APPLE INC.,<br>a California corporation,<br><br>           Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx)<br><br>**APPLE'S OPPOSITION TO PLAINTIFFS' APPLICATION TO SEAL DOCUMENTS FILED IN SUPPORT OF APPLE'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>No Hearing Noticed<br>Hon. James V. Selna |

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS'
APPLICATION TO SEAL DOCUMENTS FILED
IN SUPPORT OF APPLE'S OPPOSITION

CASE NO. 8:20-CV-00048-JVS (JDEX)

Exhibit 3
-110-

There is no basis in law or logic for Plaintiffs to request that this Court seal word for word *quotations* from published patents, including patents that Plaintiffs themselves identified and filed publicly in this case.  Nonetheless, that is what Plaintiffs object to in Apple's Opposition to Plaintiffs' Motion for Preliminary Injunction:  Comparisons of the exact language—with no modifications—set out in published patents.

Plaintiffs' Application to Seal Documents Filed in Support of Apple's Opposition to Plaintiffs' Motion for Preliminary Injunction (Dkt. Nos. 145–46) is contrary to Local Rule 79-5.2.2, which requires that any motion to seal must be "narrowly tailored to seal only the sealable material."  L.R. 79-5.2.2 (a)(ii).  Far from being "narrowly tailored," Plaintiffs seek to seal information that *is already public*, and thus cannot show any reason that it should be sealed, much less the required "good cause" or "compelling reasons why the strong presumption of public access in civil cases should be overcome."  L.R. 79-5.2.2 (a)(i).  Plaintiffs' request is likewise contrary to the Protective Order, which does not apply to public information.  And finally, Plaintiffs position lacks any support in the law.  In sum, the request is frivolous, should therefore be denied, and the Court should issue an Order to Show Cause why Plaintiffs should not be sanctioned for filing the request.  *See* Local Rule 11-9.

## I.   Plaintiffs Are Attempting to Seal Quotes From Published Patents

In its Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Opposition") (Dkt. Nos. 138–43), Apple took great care to redact every characterization Plaintiffs made concerning what constitutes their alleged trade secrets.  The *only* relevant portions of its filings that Apple left unredacted are direct quotations from U.S. Patent No. 10,219,754 ("the '754 patent"), which Plaintiffs themselves already made public on this docket.  For example, Plaintiffs filed the '754 patent as an unredacted, public exhibit to their First Amended Complaint ("FAC") (Dkt. No. 28), and alleged in the FAC that the '754 patent contains their trade secrets.  *See* FAC ¶ 220 & Ex. 30.  Further, Plaintiffs described in an unredacted portion of their Second Amended Complaint (Dkt, No. 88-2

Exhibit 3
-111-

1   (redacted version)) ("SAC") how the '754 allegedly contains subject matter that was

2   allegedly obtained from Plaintiffs:

3       For example, Claim 1 of the '754 Patent recites a method for estimating

4       physiological parameters when modulated light from a first light source and a

5       second light source is emitted toward a body part of a user, the method

6       comprising determining a first multiplier value by: turning on the first light

7       source; generating a first initial signal in response to capturing a first light

8       sample corresponding to the first light source; demodulating the first initial

9       signal to produce first initial demodulated signals; filtering and decimating the

10      first initial demodulated signals; and determining the first multiplier value

11      based on the filtered and decimated first initial demodulated signals;

12      determining a second multiplier value by: turning on the second light source;

13      generating a second initial signal in response to capturing a second light

14      sample corresponding to the second light source; demodulating the second

15      initial signal to produce second initial demodulated signals; filtering and

16      decimating the second initial demodulated signals; and determining the

17      second multiplier value based on the filtered and decimated second initial

18      demodulated signals; capturing multiple light samples while the first light

19      source and the second light source are turned on to emit modulated light

20      toward the body part of the user and converting the multiple light samples into

21      a captured signal; demodulating the captured signal to produce multiple

22      demodulated signals; performing a first decimation stage by: low pass

23      filtering each demodulated signal; and decimating each demodulated signal;

24      performing a second decimation stage after the first decimation stage by: low

25      pass filtering each demodulated signal; and decimating each demodulated

26      signal; demultiplexing each demodulated signal after the second decimation

27      stage to produce a first signal associated with the first light source and a

28

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS'
APPLICATION TO SEAL DOCUMENTS FILED
IN SUPPORT OF APPLE'S OPPOSITION          2          CASE NO. 8:20-cv-00048-JVS (JDEx)

Exhibit 3
-112-

1    second signal associated with the second light source; multiplying the first

2    signal by the first multiplier value using a first multiplier circuit to obtain a

3    first conditioned signal; multiplying the second signal by the second

4    multiplier value using a second multiplier circuit to obtain a second

5    conditioned signal; and analyzing the first conditioned signal and the second

6    conditioned signal to estimate the physiological parameter of the user.

7 SAC ¶ 266.  Thus, The contents of the '754 patent were already made public by Plaintiffs

8 themselves, and Apple has every right—as does anyone else—to quote this public

9 document in unsealed filings and compare it, as Apple does, with other published

10 patents.

11     There cannot be good cause to seal public documents like the patents that Apple

12 quotes.  For example, courts, including this Court, routinely and appropriately deny

13 motions to seal information that a party has already filed publicly in the same action.

14 *See, e.g.*, *Joint Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell Banker*

15 *Real Estate Corp.*, 2012 WL 234396, at *2 (C.D. Cal. 2012) ("Defendants' assertions of

16 confidentiality are frivolous in large part because Plaintiffs have already filed many of

17 the same documents without seal on the public docket."); *Prospect Capital Corp. v.*

18 *Enmon*, No. 08 CIV. 3721 (LBS), 2010 WL 2594633, at *2 (S.D.N.Y. June 23, 2010),

19 *aff'd in part and remanded*, 675 F.3d 138 (2d Cir. 2012) ("Arnold & Itkin's motion to

20 file exhibits under seal is also denied.  As Arnold & Itkin concedes, the documents it

21 attempts to seal have already been filed with the Court as exhibits to its Supplemental

22 Memorandum of Law."); *see also Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2014 WL

23 722489, at *1 (N.D. Cal. 2014) (finding that a request to seal figures that were already

24 revealed in a publicly filed brief "goes too far"); *Cooke v. Town of Colorado City, Ariz.*,

25 2013 WL 3155411, at *2 (D. Ariz. 2013) ("There can be no secrets in previously publicly

26 disclosed records that no one has previously sought to protect. As a result, there can be

27 no good cause or compelling reasons to keep such non-existent 'secrets.'").  Because

28

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS' APPLICATION TO SEAL DOCUMENTS FILED IN SUPPORT OF APPLE'S OPPOSITION    3    CASE NO. 8:20-CV-00048-JVS (JDEx)

Exhibit 3
-113-

1    Plaintiffs already filed the entirety of the '754 patent without seal on the public docket,

2    they cannot show as a matter of law any basis for requesting that the Court now seal

3    quotations from that patent.

4         Moreover, even if Plaintiffs did not publicly file the '754 patent on the docket,

5    their request to seal would still be frivolous, because patents are public documents that

6    cannot by definition contain anything secret.  *See Ultimax Cement Mfg. Corp. v. CTS*

7    *Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009) ("[I]t is well established that

8    disclosure of a trade secret in a patent places the information comprising the secret into

9    the public domain.  Once the information is in the public domain and the element of

10   secrecy is gone, the trade secret is extinguished.");  *Henry Hope X–Ray Prods., Inc. v.*

11   *Marron Carrel, Inc.*, 674 F.2d 1336, 1342 (9th Cir. 1982) ("Matters disclosed in a patent

12   publication destroy any trade secret contained therein.");  *Forcier v. Microsoft Corp.*,

13   123 F. Supp. 2d 520, 528 (N.D. Cal. 2000) ("It is well established that the disclosure of

14   a trade secret in a patent places the information comprising the secret into the public

15   domain.").  Thus, Plaintiffs' assertion that "mere publication in a patent does not

16   automatically show specific information is 'generally known' under California law"

17   (Application at 2) is simply false.  Under any applicable law, the subject matter of the

18   '754 patent is in the public domain.

19        Plaintiffs cite *Kittrich Corp. v. Chilewich Sultan, LLC*, 2013 WL 12131376, at *4

20   (C.D. Cal., Feb. 20, 2013), for the proposition that publication on the Internet does not

21   necessarily destroy information's status as a trade secret.  Application at 2.  The court in

22   *Kittrich*, however, explained that "[p]ublication on the Internet does not necessarily

23   destroy the secret *if the publication is sufficiently obscure or transient or otherwise*

24   *limited so that it does not become generally known to the relevant people*, i.e., potential

25   competitors or other persons to whom the information would have some economic

26   value." *Kittrich*, 2013 WL 12131376, at *4 (citation omitted) (emphasis added).  By

27   contrast, a published patent is not akin to some obscure website that may never be visited

28

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS'
APPLICATION TO SEAL DOCUMENTS FILED
IN SUPPORT OF APPLE'S OPPOSITION                4              CASE NO. 8:20-CV-00048-JVS (JDEx)

Exhibit 3
-114-

by the "relevant people," particularly when the relevant people here are "persons of ordinary skill in the art" who are presumed to know all prior patents in the relevant field. *See Custom Accessories, Inc. v. Jeffrey-Allan Industries, Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986). Because the entire '754 patent is public, there can be no basis for sealing direct quotations from it.

Notwithstanding that everything in the '754 is public, Plaintiffs attempt to assert that the Court should seal quotations from that patent because they *allege* that the quoted material constitutes their trade secrets. Application at 2. That does not mean the information is still secret; it does not unpublish the '754 patent. Plaintiffs also attempt to argue that portions of the '754 patent should be sealed because "knowing which particular techniques *Plaintiffs* use or consider effective is valuable information that competitors could use to improperly compete against Plaintiffs." *Id.* at 1–2. This argument is also meritless. Again, anyone can review the patent and see this information. Furthermore, the two other patents that Apple quotes in comparison with the '754 patent (U.S. Patent Nos. 8,471,713 and 9,861,305) are Plaintiffs' patents—the quoted language is language that they made public.

Plaintiffs have not established any good cause or compelling reasons to seal quotations from the '754 patent—either in this request, or their prior request to file their Motion for a Preliminary Injunction under seal. Specifically, nothing in the declaration filed in support of Plaintiffs prior request even mentions the '754 patent, or demonstrates any compelling reason to seal a publicly available document. *See* Dkt. No. 111, ¶ 4.[1] Plaintiffs repeat the same arguments in their current request, but again fail to show any good cause for sealing a public patent. When Apple informed the Court that it intends to oppose Plaintiffs' sealing request, Plaintiffs added an additional purported

---

[1] Plaintiffs point to the fact that the Court granted their Application to Seal their Motion for a Preliminary Injunction (Dkt. No. 110), but the Court granted Plaintiffs' application the very next day (Dkt. No. 113), and there was no basis to argue then or now that the Application meant that Apple could not quote public patents in its defense without referencing any of Plaintiffs' internal documents.

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS'
APPLICATION TO SEAL DOCUMENTS FILED
IN SUPPORT OF APPLE'S OPPOSITION

5

CASE NO. 8:20-CV-00048-JVS (JDEx)

**Exhibit 3
-115-**

1    justification for their request by asserting that the information should be sealed because
2    it was marked "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY."  But the
3    Local Rules are clear that simply because "the information may have been designated
4    confidential pursuant to a protective order is not sufficient justification for filing under
5    seal."  L.R. 79-5.2.2 (a)(i).  Thus, Plaintiffs' designation under the Protective Order
6    cannot support their argument for sealing.

7           In sum, there is nothing to justify sealing quotations from a publicly available
8    patent that Plaintiffs themselves filed without seal on the docket and  described in their
9    complaints.

10   **II.    The Court Should Issue an Order to Show Cause Why Plaintiffs Should Not**
11          **Be Sanctioned for Filing a Frivolous Sealing Request**

12          It is appropriate for a court to issue sanctions when a party files frivolous sealing
13   requests.  *See Nevro Corp. v. Bos. Sci. Corp.*, 312 F. Supp. 3d 804, 805 (N.D. Cal. 2018)
14   (sanctioning law firm $500 per lawyer involved for "objectively frivolous" sealing
15   requests that had "no legitimate justification" and "therefore [were] in clear violation of
16   Rule 11 of the Federal Rules of Civil Procedure").  As discussed above, nothing in
17   Plaintiffs' Application justifies their sealing request.  Requesting to seal quotations
18   comparing two public patents—including from one that Plaintiffs already filed publicly
19   in this action—is the height of frivolity and a clear Rule 11 violation.  It also highlights
20   the greater problem here:  Plaintiffs are going to any lengths to stop Apple from showing
21   that the trade secret claims in this case have been baseless from the outset.

22          Accordingly, Apple respectfully requests that the Court issue an Order to Show
23   Cause why Plaintiffs should not be sanctioned for their frivolous sealing request.

24
25
26
27
28

Gibson, Dunn & Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS'
APPLICATION TO SEAL DOCUMENTS FILED
IN SUPPORT OF APPLE'S OPPOSITION            6            CASE NO. 8:20-CV-00048-JVS (JDEx)

**Exhibit 3
-116-**

1    Dated:  August 25, 2020          Respectfully submitted,

2                                     JOSHUA H. LERNER
                                      H. MARK LYON
3                                     BRIAN M. BUROKER
                                      BRIAN A. ROSENTHAL
4                                     ILISSA SAMPLIN
                                      ANGELIQUE KAOUNIS
5                                     BRIAN K. ANDREA
                                      GIBSON, DUNN & CRUTCHER LLP
6

7

8                                     By:  */s/ Joshua H. Lerner*
                                           Joshua H. Lerner
9

10                                    *Attorneys for Defendant Apple Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

APPLE'S OPPOSITION TO PLAINTIFFS'
APPLICATION TO SEAL DOCUMENTS FILED
IN SUPPORT OF APPLE'S OPPOSITION          7          CASE NO. 8:20-CV-00048-JVS (JDEX)

**Exhibit 3
-117-**

# EXHIBIT 4

1   Joseph R. Re (Bar No. 134479)
    joseph.re@knobbe.com
2   Stephen C. Jensen (Bar No. 149894)
    steve.jensen@knobbe.com
3   Perry D. Oldham (Bar No. 216016)
    perry.oldham@knobbe.com
4   Stephen W. Larson (Bar No. 240844)
    stephen.larson@knobbe.com
5
    **KNOBBE, MARTENS, OLSON & BEAR, LLP**
6   2040 Main Street, Fourteenth Floor
    Irvine, CA 92614
7   Telephone: (949) 760-0404 Facsimile: (949) 760-9502
8
    Adam B. Powell (Bar No. 272725)
9   adam.powell@knobbe.com
    **KNOBBE, MARTENS, OLSON & BEAR, LLP**
10  12790 El Camino Real
    San Diego, CA 92130
11  Telephone: (858) 707-4000 Facsimile: (858) 707-4001
12
    Attorneys for Plaintiffs,
13  Masimo Corporation and Cercacor Laboratories, Inc.

14

15              **IN THE UNITED STATES DISTRICT COURT**

16            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

17                       **SOUTHERN DIVISION**

18
    MASIMO CORPORATION,                ) Case No. 8:20-cv-00048-JVS-JDE
19  a Delaware corporation; and        )
    CERCACOR LABORATORIES, INC.,       ) Hon. James V. Selna
20  a Delaware corporation             ) Magistrate Judge John D. Early
                                       )
21          Plaintiffs,                ) **REPLY IN SUPPORT OF**
                                       ) **PLAINTIFFS' APPLICATION TO**
22        v.                           ) **SEAL DOCUMENTS FILED IN**
                                       ) **SUPPORT OF APPLE'S**
23  APPLE INC., a California corporation ) **OPPOSITION TO PLAINTIFFS'**
                                       ) **MOTION FOR PRELIMINARY**
24          Defendant.                 ) **INJUNCTION**
                                       )
25                                     )
                                       )
26                                     )

27

28

**Exhibit 4**
**-118-**

1    Apple's opposition rests entirely on a strawman: that Plaintiffs
2    supposedly seek to seal quotations from patents or public filings.  But quoting
3    isolated statements from public documents is not the issue.  The issue is the way
4    that Apple compiled and presented the information.

5    Apple's Opposition to Plaintiffs' Motion for Preliminary Injunction
6    purports to "walk[] through each bullet point of Plaintiffs alleged trade secrets
7    (Br. at 7-11) and demonstrate[] that each was disclosed in either the '713 Patent,
8    the '305 Patent, or both, before the publication of Apple's '754 Patent."  Dkt.
9    140 at 8.  But Apple did far more than just quote the '713 Patent and '305
10   Patents in isolation.  For example, Apple included an "Appendix" with two
11   columns: one column that lists each bullet point of Plaintiffs' combination trade
12   secret and a second column purportedly quoting *separate* publications.  Dkt.
13   140-1.  Apple redacted the first column but not the second column.  Thus, Apple
14   did not merely quote public documents.  Apple cobbled together *separate*
15   publications, had its expert *opine* that the publications could "be used together,"
16   and then asserted that the hindsight combination reflects Plaintiffs' trade secret.
17   *See* Dkt. 142 ¶ 142.[1]

18   Plaintiffs should be permitted to redact such information because it
19   operates to identify a combination that Plaintiffs allege is a trade secret.
20   "[C]ompetitors could not obtain [the information] anywhere else."  *See Apple*
21   *Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1229, 1221 (Fed. Cir. 2013).  Indeed,
22   even "combinations of public information from a variety of different sources

23
24   ───────────────

25   [1] Apple also suggests Plaintiffs disclosed their trade secret in the Second
26   Amended Complaint.  Dkt. 148 at 2-3.  But the paragraph Apple quoted was in
     Plaintiffs' *correction of inventorship* cause of action.  *See* Dkt. 88-2 ¶ 266.
27   Plaintiffs merely quoted Claim 1 of the patent—just as Plaintiffs did for all
28   other patents that they seek to correct inventorship.

-1-

**Exhibit 4**
**-119-**

1  when combined in a novel way can be a trade secret." *Metricolor LLC v.*
2  *L'oreal S.A.*, 2020 WL 3802942, at *12 (C.D. Cal. July 7, 2020).

3       Plaintiffs asked this Court to seal the combination that Plaintiffs allege is
4  a trade secret in its Motion for Preliminary Injunction, Apple did not oppose,
5  and this Court granted Plaintiffs' application.  Dkt. 110; Dkt. 113.  Plaintiffs
6  designated the sealed material "HIGHLY CONFIDENTIAL – ATTORNEYS
7  EYES ONLY" pursuant to the Protective Order.  *See* Dkt. 111-1 at 7-9.  Under
8  the Court's Protective Order, Apple had an obligation to not disclose such
9  information except to authorized individuals.  Dkt. 67 ¶ 9.3.  To challenge that
10 designation, Apple must meet and confer with Plaintiffs and file a motion if the
11 parties are unable to resolve their dispute.  *Id* ¶¶ 8.1-8.4.  "Unless the
12 Designating Party has waived or withdrawn the confidentiality designation, all
13 parties shall continue to afford the material in question the level of protection to
14 which it is entitled under the Producing Party's designation until the Court rules
15 on the challenge."  *Id.* ¶ 8.4.  The Protective Order in this case provides the
16 procedure that Apple was required to follow.  Instead of following that
17 procedure, Apple simply published the information.

18      Finally, Apple's arguments on the merits of Plaintiffs' claim are also
19 inappropriate on a procedural application to seal.  As Apple's previously cited
20 authority explains, the issue of public disclosure in a patent is a factual issue
21 "for the ***jury*** to decide."  *Atl. Research Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345,
22 1357 (Fed. Cir. 2011) (emphasis added).  Until then, courts should "preserve the
23 secrecy" of an "***alleged*** trade secret."  *See* Cal. Civ. Code § 3426.5.  The Ninth
24 Circuit has explained that "compelling reasons" to seal exist "when . . . court
25 files have become a vehicle for improper purposes, such as the use of records to
26 . . . release trade secrets."  *Kamakana v. City and County of Honolulu*, 447 F.3d
27 1172, 1179 (9th Cir. 2006).  Accordingly, Plaintiffs respectfully request the
28 Court grant their application to seal.

**Exhibit 4**
**-120-**

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: August 26, 2020    By: */s/ Adam B. Powell*
        Joseph R. Re
        Stephen C. Jensen
        Perry D. Oldham
        Stephen W. Larson
        Adam B. Powell

        Attorneys for Plaintiffs,
        Masimo Corporation and Cercacor
        Laboratories, Inc.

33392037

Exhibit 4
-121-

# EXHIBIT 5

NOTE: CHANGES MADE BY THE COURT

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION,<br>a Delaware corporation; and<br>CERCACOR LABORATORIES, INC.,<br>a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>Hon. James V. Selna<br>Magistrate Judge John D. Early<br><br>**ORDER GRANTING PLAINTIFFS' APPLICATION TO SEAL DOCUMENTS FILED IN SUPPORT OF APPLE'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Exhibit 5
-122-

Having considered Plaintiffs' Application To Seal Documents Filed In Support Of Apple's Opposition To Plaintiffs' Motion For Preliminary Injunction and finding good cause therefor, the Application is GRANTED.

**IT IS HEREBY ORDERED THAT** the clerk shall seal the following docket entries:

(1)     Defendant Apple Inc's Application to File Under Seal Apple's Opposition to Plaintiffs' Motion For Preliminary Injunction And Supporting Documents (Dkt. 138);

(2)     Apple's Opposition To Plaintiffs' Motion For Preliminary Injunction (Dkt. 140); and

(3)     The Declaration Of Majid Sarrafzadeh In Support Of Apple's Opposition To Plaintiffs' Motion For Preliminary Injunction (Dkt. 142).

**Plaintiffs shall file public redacted copies of the above documents within 48 hours.**

DATED :August 27, 2020

The Honorable James V. Selna
United States District Judge

-1-

Exhibit 5
-123-