1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive
San Diego, CA 92130f
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION,<br>a Delaware corporation; and<br>CERCACOR LABORATORIES, INC.,<br>a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL APPLE TO PRODUCE DOCUMENTS AND FULLY ANSWER INTERROGATORIES**<br><br>[Discovery Document: Referred to Magistrate Judge John D. Early]<br><br>Date:    May 13, 2021<br>Time:    10:00 a.m.<br>Ctrm:    6A<br><br>Discovery Cut-Off:    7/5/2021<br>Pre-Trial Conference:  3/21/2022<br>Trial:    4/5/2022<br><br>Hon. James V. Selna<br>Magistrate Judge John D. Early |

# REDACTED VERSION OF DOCUMENT
# PROPOSED TO BE FILED UNDER SEAL

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8541 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

Attorneys for Defendant Apple Inc.

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTORY STATEMENTS ....................................................................1

    A.   Plaintiffs' Introductory Statement ....................................................1

    B.   Defendant's Introductory Statement ..................................................4

II.   PLAINTIFFS' RFPS 63-66, 148-151, 153, 154, 172, AND 186 .........................8

    A.   Plaintiffs' Position .....................................................................19

        1.   RFPs 63-66, 148-151, 153, 154, 172, And 186 Seek Relevant Information And Are Proportional To The Needs Of The Case .......................................................................19

        2.   Apple's Objections and Limitations Lack Merit ........................21

            a.   Heart Rate Is Relevant To This Case ...........................21

            b.   Earlier Versions Of The Apple Watch Are Discoverable ........................................................23

            c.   Apple's Section 2019.210 Limitation Lacks Merit ...........25

    B.   Apple's Position ........................................................................27

        1.   RFPs 148–149 and 186 Are Not in Dispute ..............................28

        2.   Section 2019.210 Frames the Boundaries of Permissible Trade Secret Discovery ..................................................30

        3.   RFPs 63–66, 150, 153, 154, and 172 Are Not Relevant or Proportional ................................................................34

            a.   RFPs 63–66 (Heart Rate Algorithms) ..........................36

            b.   RFPs 150, 153–154, 172 (Pulse Oximetry Algorithms) ....................................................41

            c.   Discovery of Earlier Versions of the Apple Watch Must Relate to Plaintiffs' Alleged Trade Secrets ..............43

        4.   Apple Has Not Asserted Improper Boilerplate Objections ..........46

III.   PLAINTIFFS' RFPS 71-77 AND 83-86 ........................................................47

    A.   Plaintiffs' Position ....................................................................58

    B.   Apple's Position ........................................................................60

# TABLE OF CONTENTS
## (Cont'd)

**Page No.**

IV.  PLAINTIFFS' RFP NOS. 97 AND 100.................................................................63

    A.  Plaintiffs' Position ....................................................................................65

    B.  Apple's Position .......................................................................................66

V.  PLAINTIFFS' RFPS 128, 129, 184, 196 ...........................................................68

    A.  Plaintiffs' Position ....................................................................................71

    B.  Apple's Position .......................................................................................73

VI.  PLAINTIFFS' RFP NOS. 242 AND 243............................................................76

    A.  Plaintiffs' Position ....................................................................................77

    B.  Apple's Position .......................................................................................79

VII.  PLAINTIFFS' INTERROGATORIES 7-8 ..........................................................82

    A.  Plaintiffs' Position ....................................................................................85

        1.  Interrogatories 7 and 8 Seek Relevant Information And Are
            Proportional To The Needs Of The Case...................................85

        2.  Apple's Responses Are Deficient ..............................................86

        3.  Apple's Objections Lack Merit..................................................88

    B.  Apple's Position .......................................................................................89

VIII.  PLAINTIFFS' INTERROGATORY 9................................................................96

    A.  Plaintiffs' Position ....................................................................................97

    B.  Apple's Position .......................................................................................98

# TABLE OF AUTHORITIES

**Page No(s).**

*A. Farber & Partners, Inc. v. Garber*,
234 F.R.D. 186 (C.D. Cal. 2006)................................................................46

*Advanced Modular Sputtering, Inc. v. Superior Court*,
132 Cal. App. 4th 826 (2005) ................................................25, 30, 33

*Advante Int'l Corp v. Mintel Learning Tech.*,
2006 WL 3371576 (N.D. Cal. Nov. 21, 2006) .......................................30

*Albert's Organics, Inc. v. Holzman*,
2020 WL 4368205 (N.D. Cal. July 30, 2020) ...................................4, 32

*Apple Inc. v. Samsung Elecs. Co.*,
2013 WL 4426512 (N.D. Cal. Aug. 14, 2013) ........................25, 65, 88

*BioD, LLC v. Amnio Tech., LLC*,
2014 WL 3864658 (D. Ariz. Aug. 6, 2014) .........................................30

*Brescia v. Angelin*,
172 Cal. App. 4th 133 (2009) ........................................................25, 33

*Budget Rent-A-Car Missouri, Inc. v. Hertz Corp.*,
55 F.R.D. 354 (W.D.. Mo. 1972)............................87, 93, 94, 98

*Calderon v. U.S. Dist. Court for the N. Dist. of Cal.*,
98 F.3d 1102 (9th Cir. 1996) ..............................................................44

*Cancino Castellar v. McAleenan*,
2020 WL 1332485 (S.D. Cal. Mar. 23, 2020) .....................................30

*Carrizosa v. Stassinos*,
2006 WL 1581953 (N.D. Cal. June 6, 2006)...............................22, 98

*Celanese Corp. v. E. I. duPont de Nemours & Co.*,
58 F.R.D. 606 (D. Del. 1973) ............................................................79

*Crown Machine & Tool Co. v. KVP-Sutherland Paper Co.*,
244 F. Supp. 543 (N.D. Cal. 1965) ....................................................79

*Computer Econ., Inc. v. Gartner Grp., Inc.*,
50 F. Supp. 2d 980 (S.D. Cal. 1999)........................4, 26, 30, 31

*Computer Economics, Inc. v. Gartner Group., Inc.*
260 Cal. App. 2d at 253 .....................................................................32

*Crawford-El v. Britton*,
523 U.S. 574 (1998)...........................................................................27

-iii-

# TABLE OF AUTHORITIES
### (*Cont'd*)

**Page No(s).**

*DeSilva v. Allergan USA, Inc.*,
   2020 WL 5947827 (C.D. Cal. Sept. 1, 2020) ............................................19, 27, 36

*Diodes, Inc. v. Franzen*,
   260 Cal. App. 2d 244 (Ct. App. 1968)........................................................30, 31, 32

*DIRECTV, Inc. v. Trone*,
   209 F.R.D. 455 (C.D. Cal. 2002) ........................................................................... 19

*Duran v. Cisco Sys., Inc.*,
   258 F.R.D. 375 (C.D. Cal. 2009)............................................................................27

*Egenera, Inc. v. Cisco Sys., Inc.*,
   972 F.3d 1367 (Fed. Cir. 2020..............................................................................73

*Elkin v. New York Life Ins. Co.*,
   2017 WL 4047235 (C.D. Cal. Sept. 8, 2017) ..............................................22, 34, 98

*Ergocare, Inc. v. D.T. Davis Enterprises, Ltd.*,
   2015 WL 13609787 (C.D. Cal. June 17, 2015)......................................87, 92, 93, 98

*Fresenius Med. Care v. Holding Inc. v. Baxter Int'l Inc.*,
   224 F.R.D. 644 (N.D. Cal. 2004)......................................................................23, 44

*In re Glumetza Antitrust Litig.*,
   2020 WL 3498067 (N.D. Cal. June 29, 2020).................................................27, 35

*ICU Med., Inc. v. B.Braun Med., Inc.*,
   224 F.R.D. 461 (N.D. Cal. 2002)............................................................................79

*Ideal Toy Corp. v. Tyco Indus., Inc.*,
   478 F. Supp. 1191 (D. Del. 1979).........................................................................79

*Jobscience, Inc. v. CVPartners, Inc.*,
   2014 WL 852477 (N.D. Cal. Feb. 28, 2014) ........................................................40

*Kaneka Corp. v. Zhejiang Med. Co.*,
   2016 WL 11266869 (C.D. Cal. Oct. 18, 2016) .............................................23, 44, 87

*Kilroy v. L.A. Unified Sch. Dist. Bd. of Educ.*,
   2018 WL 6071089 (C.D. Cal. Mar. 7, 2018).................................................24, 25, 65

*Liberty Ins. Corp. v. Sw. Traders Incorp.*,
   2013 WL 12140335 (C.D. Cal. Aug. 27, 2013) ...............................................27, 62

# TABLE OF AUTHORITIES
## (*Cont'd*)

**Page No(s).**

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
  2019 WL 8108729 (C.D. Cal. Sept. 3, 2019) .........................................40

*Manzo v. Cty. of Santa Clara*,
  2019 WL 2866047 (N.D. Cal. July 3, 2019) ....................................22, 98

*Mullally v. Havasu Landing Casino*,
  2012 WL 13013031 (C.D. Cal. June 21, 2012)....................................44

*Nguyen v. Lotus by Johnny Dung Inc.*,
  2019 WL 4579259 (C.D. Cal. June 7, 2019).................................*passim*

*P&P Imports LLC v. Johnson Enterprises LLC*,
  2020 WL 4258817 (C.D. Cal. Apr. 16, 2020) .....................................35

*Perlan Therapeutics, Inc. v. Superior Court*,
  178 Cal. App. 4th 1333 (2009) ................................................*passim*

*PMC, Inc. v. Kadisha*,
  78 Cal. App. 4th 1368 (2000) ..............................23, 24, 27, 41

*Process Specialties, Inc. v. Sematech, Inc.*,
  2002 WL 35646608 (E.D. Cal. Sept. 25, 2002) ....................87, 93, 98

*Rivera v. Nibco, Inc.*,
  364 F.3d 1057 (9th Cir. 2004) ................................27, 44, 80

*Saddler v. Musicland-Pickwick Int'l, Inc.*,
  31 Fed. R. Serv. 2d 760 (E.D. Tex. 1980) ............................92

*In re Savitt/Adler Litig.*,
  176 F.R.D. 44 (N.D.N.Y. 1997) ....................................89, 95

*Scovill Manufacturing Co. v. Sunbeam Corp.*,
  61 F.R.D. 598 (D. Del. 1973) ...........................................79

*SkinMedica, Inc. v. Histogen Inc.*,
  869 F. Supp. 2d 1176 (S.D. Cal. Apr. 23, 2012) .............22, 24, 27, 41

*Soc. Apps, LLC v. Zynga, Inc.*,
  2012 WL 2203063 (N.D. Cal. June 14, 2012)....................................33

*Subramani v. Wells Fargo Bank, N.A.*,
  2014 WL 7206888 (N.D. Cal. Dec. 18, 2014)...........................89, 95

# TABLE OF AUTHORITIES
## (*Cont'd*)

**Page No(s).**

*Super Chefs, Inc. v. Second Bite Foods, Inc.*,
  2015 WL 12914441 (C.D. Cal. June 11, 2015) ....................................... 78

*Uniloc USA, Inc. v. Apple Inc.*,
  2018 WL 2002979 (N.D. Cal. Apr. 30, 2018) ......................................... 39

*Valenzuela v. City of Calexico*,
  2015 WL 926149 (S.D. Cal. Mar. 4, 2015) ............................................ 27

*Wheel Grp. Holdings, LLC v. Cub Elecparts, Inc.*,
  2018 WL 6264980 (C.D. Cal. Sept. 4, 2018) ......................................... 36

*Wolowitz v. United States*,
  1975 WL 21125 (Ct. Cl. 1975) .............................................................. 79

# OTHER AUTHORITIES

35 U.S.C. § 122 ......................................................................... 78, 79

Cal. Civ. Code § 3426.3 ................................................................. 65

Cal. Civ. Code § 2019.210 ........................................................ *passim*

Fed. R. Civ. P. 26 ....................................................... 19, 26, 28, 30

Fed. R. Civ. P. 27 ............................................................................. 21

Fed. R. Civ. P. 37 ............................................................................... 1

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Plaintiffs"), as movant, and Defendant Apple, Inc. ("Apple"), as respondent, through their respective counsel of record, submit this joint stipulation in connection with Masimo's Motion To Compel Apple To Produce Documents And Fully Answer Interrogatories.  Pursuant to Local Rule 37-1, this Joint Stipulation was prepared following the parties' conference of counsel, which took place on February 16 and 17, 2021.

# I.  INTRODUCTORY STATEMENTS

## A.  Plaintiffs' Introductory Statement

This motion concerns Apple's refusal to produce technical information directly relevant to Plaintiffs' claims.  While Apple initially agreed to produce responsive documents, Apple attempted to withdraw that commitment when the Court stayed Plaintiffs' patent infringement claims.  *See* Dkt. 222.  After the stay, Apple withheld documents by asserting Plaintiffs had not sufficiently described their trade secrets under California Code of Civil Procedure § 2019.210.  Ex. 10.[1]  Apple argued to the Court that Plaintiffs were "stalling" and "surprised Apple with a woefully deficient disclosure" when the parties exchanged the disclosure and Apple's documents.  Dkt. 259-1 at 7-8.  Contrary to Apple's rhetoric, this Court found Plaintiffs' disclosure sufficient.  Dkt. 279.

While Apple's Section 2019.210 objection was pending, Plaintiffs tried to discuss Apple's other objections, but Apple refused.  Ex. 13.  After the Court's ruling, Apple waited weeks to respond to Plaintiffs and unleashed a torrent of new objections and limitations to producing documents.  Exs. 21 and 22.  Plaintiffs attempted to find a compromise, but were unable to resolve all issues.  Plaintiffs address the disputes below.

*First*, Plaintiffs move to compel on RFPs 63-66, 148-151, 153, 154, 172, and 186, which seek technical documents regarding the pulse rate and oxygen saturation features of

---

[1] All exhibits in Plaintiffs' sections are attached to the Declaration of Adam B. Powell, filed concurrently.  All emphasis in Plaintiffs' sections is added unless noted otherwise.

the Apple Watch.  The requests are directly relevant to core issues in this case, including misappropriation of multiple technical trade secrets.  Apple refuses to produce documents on its pulse rate algorithm by arguing that pulse rate is irrelevant to Plaintiffs' trade secrets.  But Plaintiffs have identified multiple trade secrets related to pulse rate.  Apple also argues it did not misappropriate those trade secrets.  But Apple cannot refuse discovery merely because it contests Plaintiffs' claim on the merits.  Apple also refuses to produce documents regarding early versions of the watch.  But the evolution and development of the watch is relevant to numerous issues discussed in detail below.

Apple also states it will produce documents "only to the extent they relate to the alleged trade secrets in Plaintiffs' Section 2019.210 disclosure." Ex. 24 at 8-9.  Apple thus seeks to withhold any responsive document that—in *Apple's opinion*—does not directly relate to Plaintiffs' description of trade secrets.  That is improper because Section 2019.210 is a procedural requirement to "commenc[e] discovery"—not a basis to withhold documents.  *See* Cal. Civ. P. Code § 2019.210.  As discussed below, the scope of discovery is broader than the specific trade secrets identified in a Section 2019.210 disclosure.  Thus, Section 2019.210 helps *guide* discovery much like a patent claim guides discovery in a patent case.  However, it does not provide a basis for a defendant to selectively withhold specific responsive documents based on the defendant's assertion that the document does not directly relate to Plaintiffs' description of trade secrets.

*Second*, Plaintiffs move to compel on RFPs 71-77 and 83-86, which seek technical documents regarding the physiological monitoring features of the Apple Watch.  In addition to the objections discussed above, Apple argues the term "physiological monitoring" is too broad.  But the parties agreed—and the court entered—a protective order using the same term.  Apple also proposed using this term to narrow other RFPs and used the same term in its own RFPs to Plaintiffs.  Plaintiffs' RFPs are reasonable.

*Third*, Plaintiffs move to compel on RFPs 97 and 100, which seek documents regarding any comparisons between the parties' products.  Apple again seeks to withhold responsive documents that—in *Apple's opinion*—do not directly relate to Plaintiffs'

description of trade secrets.  That makes no sense.  The requested *categories* of documents are relevant and proportional to the needs of this case—consistent with Plaintiffs' identification of trade secrets and the allegations in Plaintiffs' complaint.

*Fourth*, Plaintiffs move to compel on RFPs 128, 129, 184, and 196, which seek documents regarding the Apple patents and patent applications that are the subject of Plaintiffs' correction of inventorship / ownership claims.  Apple asserts it will produce only documents concerning subject matter *claimed* by the patents.  That limitation lacks merit because *disclosed* subject matter is still relevant to Plaintiffs' correction of inventorship / ownership claims.  Moreover, Plaintiffs' trade secret claims assert that Apple improperly *disclosed* Plaintiffs' trade secrets in patents.  Material that is disclosed but not claimed is thus directly relevant.

*Fifth*, Plaintiffs move to compel on RFPs 242 and 243, which seek Apple's unpublished patent applications on physiological monitoring.  Such documents are directly relevant to Plaintiffs' trade secret claims, which assert Apple is improperly disclosing Plaintiffs' trade secrets in patent applications.   Plaintiffs previously moved for a preliminary injunction that would have required Apple to produce applications before allowing them to publish.  Judge Selna found a *likelihood of success* on the merits, but denied the motion because Plaintiffs had not proved it was likely Apple would disclose additional trade secrets in any particular application. Ex. 29 at 7, 9, 10, 11.  Plaintiffs thus reasonably seek copies of Apple's relevant unpublished applications to determine whether Apple will be publishing additional trade secrets belonging to Plaintiffs.

*Sixth*, Plaintiffs move to compel Apple to meaningfully respond to Plaintiffs' Interrogatories 7 and 8, which seek technical information about the development of physiological monitoring capabilities of the Apple Watch.  Such requests are directly relevant to core issues in this case, including misappropriation of Plaintiffs' technical trade secrets.  Apple's responses are deficient because Apple made no attempt to explain the development of *any* feature of the Apple Watch.  Instead, Apple merely cited public websites and cited *every* document and *all* source code that Apple had produced pursuant

to Rule 33(d).  Apple argues the interrogatories are overbroad, but does not address the scope of the interrogatories as narrowed during the meet and confer.

 ***Finally***, Plaintiffs move to compel Apple to meaningfully respond to Interrogatory 9, which seeks technical information about Apple's pulse rate algorithm.  Apple's response merely incorporates its response to Interrogatories 7 and 8, and again cited ***every*** document and ***all*** source code that Apple had produced pursuant to Rule 33(d).  That is deficient for the reasons discussed above.  Apple again argues it should not have to provide information about pulse rate because it believes Plaintiffs claim will fail on the merits.  As discussed, that is inappropriate.  The Court should grant Plaintiffs' Motion.

## B.   **Defendant's Introductory Statement**

 Apple already produced, or has already agreed to produce, the technical information that is relevant to Plaintiffs' claims.  The additional information Plaintiffs seek has no relation to the alleged trade secrets identified in Plaintiffs Section 2019.210 disclosure, and Plaintiffs are simply wrong in asserting that discovery untethered to the disclosure is proper.  Plaintiffs are not entitled to engage in staggeringly broad discovery from Apple's sensitive files for broad swaths of technical information on functions that Plaintiffs do not—and cannot—claim are related to the alleged misappropriation of trade secrets by Mr. Lamego, a former Apple employee who:  (i) only worked for Apple for six months, and (ii) departed Apple over seven years ago.  The very purpose of Section 2019.210 is to define the boundaries of trade secret discovery before it begins, and to assist this Court and the parties in determining whether Plaintiffs' requested discovery falls within those boundaries.  *See Computer Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999) (Section 2019.210 "fram[es] the appropriate scope of discovery" and assists in "determin[ing] whether plaintiff's discovery requests fall within that scope"); *see also, e.g.*, *Albert's Organics, Inc. v. Holzman*, 2020 WL 4368205, at *3 (N.D. Cal. July 30, 2020) ("[S]ection 2019.210 . . . assists the court and parties in defining the appropriate scope of discovery." (citation omitted)).  This Court should reject Plaintiffs' efforts to expand discovery through overbroad requests that go well beyond the alleged trade secrets at issue.

**RFPs 63-66, 148-151, 153-154, 172, and 186**.   Apple already agreed to produce documents responsive to RFPs 148–149, and already produced documents responsive to RFP 186.   As explained in footnote 3, Apple also agreed to produce documents responsive to RFP 151.   The other RFPs—Nos. 63–66, 150, 153, 154, and 172—seek documents that exceed the boundaries of Plaintiffs' Section 2019.210 disclosure, and thus are not relevant or proportional.   Indeed, Plaintiffs admit these RFPs seek information not connected to their alleged trade secrets while fighting the premise of Section 2019.210.   The case law, however, is clear that Section 2019.210 disclosures provide the roadmap for discovery in a trade secret misappropriation case.   If trade secret plaintiffs could propound discovery with no connection to the alleged trade secrets, Section 2019.210 would serve no purpose at all.   Apple has already agreed to produce documents responsive to these RFPs, *to the extent they pertain to Plaintiffs' alleged trade secrets*.   Plaintiffs are not entitled to more.

**RFPs 71-77 and 83-86**.   These RFPs likewise are not tethered to Plaintiffs' alleged trade secrets, and therefore are overbroad.   This is epitomized by Plaintiffs' use in these RFPs of the overbroad term "physiological monitoring"—which extends to matters that go well beyond the alleged trade secrets in this case.   Plaintiffs' attempts to point to other uses of that term are unavailing.   The undisputed fact—which Plaintiffs' counsel conceded during the meet-and-confer process—is that "physiological monitoring" is a broad term that picks up features of the Apple Watch that have nothing to do with this case.   Again, Apple has already agreed to produce documents responsive to these RFPs, to the extent they pertain to Plaintiffs' alleged trade secrets.   Plaintiffs are not entitled to more.

**RFPs 97 and 100**.   These RFPs likewise go beyond the alleged trade secrets in this case, and therefore seek documents that are not relevant or proportional.   Again, Apple has already agreed to produce documents responsive to these RFPs, to the extent they pertain to Plaintiffs' alleged trade secrets.   Plaintiffs are not entitled to more.

**RFPs 128, 129, 184, and 196**.   Apple agreed to produce documents concerning the subject matter of the *claims* of the Apple patents and applications that are the subject of Plaintiffs' correction of inventorship/ownership claims. Plaintiffs' request for more—i.e.,

documents concerning *disclosed* subject matter—is not relevant or proportional because disclosed, but unclaimed, matter is irrelevant to Plaintiffs' claims.

***RFPs 242 and 243***.   Plaintiffs attempt to justify their requests for Apple's unpublished patent applications by pointing to Judge Selna's denial of their preliminary injunction motion that sought to require Apple to produce patent applications to Plaintiffs before allowing them to publish.  But this Court found no likelihood that Apple would publish any of Plaintiffs' trade secrets in its patent applications and denied the production Plaintiffs now seek.  Apple already informed Plaintiffs that it has no pending patent applications from Mr. Lamego or any of their other former employees that relate in any way to Plaintiffs' allegations.  Placing the burden on Apple of reviewing potentially thousands of its other pending patent applications without some showing of relevance by Plaintiffs is unreasonable.  This is a transparent effort by Plaintiffs to gain access to Apple's IP strategy and sensitive patent filings—without any showing that the documents have anything whatsoever to do with the alleged trade secrets—and should be denied.

***Interrogatory Nos. 7 and 8***.  Apple already responded in full to both interrogatories with responsive information in its possession that relates to Plaintiffs' alleged trade secrets, and will supplement if it learns of additional responsive information.  But, Apple is well within its rights to rely on Rule 33(d), like any other litigant responding to interrogatories under the Federal Rules of Civil Procedure.  That Apple's Rule 33(d) responses referenced its productions made as of that date—which, in total, reflect only 1.0% of the pages Apple has produced in this case as of the date of this filing—is of no moment.  Apple prioritized the production of technical documents (which Plaintiffs have now had for months after demanding early discovery in the now-stayed patent case), and thus its early productions included the documents that contain the information responsive to Interrogatory Nos. 7 and 8.  Apple's responses to these interrogatories are proper and complete.

***Interrogatory No. 9***.  Apple also already responded in full to this interrogatory, with the information in its possession that is responsive and relates to Plaintiffs' alleged trade secrets.  Plaintiffs contend that Apple's response is deficient because it does not cover *any*

████████████ used in the Apple Watch. But the *only* ████████████ implicated by Plaintiffs' Section 2019.210 disclosure and pleadings are those ████████████ ████████████ in the Apple Watch. Plaintiffs' request for information beyond its alleged trade secrets is not relevant or proportional. And, again, Plaintiffs' Rule 33(d) arguments are inapposite for the same reasons they fail for Interrogatory Nos. 7 and 8.

At bottom, this motion reflects Plaintiffs' desire to engage in overbroad discovery in a trade secret case where the law is clear that discovery should be tied to the Section 2019.210 disclosure. Apple produced or agreed to produce the documents and information responsive to the discovery requests at issue to the extent relevant to Plaintiffs' alleged trade secrets. Plaintiffs have no credible basis or justification for more.

*[remainder of page left intentionally blank]*

## II.  PLAINTIFFS' RFPS 63-66, 148-151, 153, 154, 172, AND 186

Pursuant to Local Rule 37-2, below is the full text of Plaintiffs' RFPs 63-66, 148-151, 153, 154, 172, 186, and Apple's response to each request.  The parties' respective points and authorities follow below.

### REQUEST FOR PRODUCTION NO. 63:

Documents sufficient to show any heart rate algorithms used in any of the Apple Watch Products.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 63:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrase "heart rate algorithm," which does not appear reasonably limited to the scope of infringement allegations in this litigation. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to other claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210— without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 64:**

All documents and things that refer or relate to selection between any heart rate algorithm used in any of the Apple Watch Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrase "heart rate algorithm," which does not appear reasonably limited to the scope of infringement allegations in this litigation. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to

Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210— without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

## REQUEST FOR PRODUCTION NO. 65:

All documents and things that refer or relate to power consumption by any heart rate algorithm used in any of the Apple Watch Products.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 65:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrase "heart rate algorithm," which does not appear reasonably limited to the scope of infringement allegations in this litigation. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate

to *other* claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37,54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210— without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

## REQUEST FOR PRODUCTION NO. 66:

All documents and things that refer or relate to any testing and/or analysis of the properties and/or characteristics of any of the Apple Watch Products or any component of any of the Apple Watch Products that relate to pulse rate detection, pulse rate measurement, power consumption by pulse rate detection, or power consumption by pulse rate measurement, including, without limitation, testing protocols, reports, results, notes, and summaries.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 66:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request on the grounds that it is overly broad and unduly

burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37,54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 148:**

All document and things that refer or relate to the calculation of oxygen saturation in any Apple Watch Product.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 148:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement.  Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the request. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, to the extent this Request is even relevant to

-12-

Plaintiffs' patent infringement allegations, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request.  Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 149:**

Documents sufficient to show any pulse oximetry algorithms used in any of the Apple Watch Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 149:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence.  Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request.  Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 150:**

All documents and things that refer or relate to selection between any pulse oximetry algorithm used in any of the Apple Watch Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 150:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, including because it uses the undefined phrase "selection between any pulse oximetry algorithm." Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the request. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 151:**

All documents and things that refer or relate to power consumption by any pulse oximetry algorithm used in any of the Apple Watch Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 151:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, including because it uses the undefined phrase "power consumption by any pulse oximetry algorithm." Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the request. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

## REQUEST FOR PRODUCTION NO. 153:

All documents and things that refer or relate to the operation of any LEDs used to determine oxygen saturation for any Apple Watch Product, including but not limited to documents and things that refer or relate to LED timing, duty cycle, current, or power usage.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 153:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege,

immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the request. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, to the extent this Request is even relevant to Plaintiffs' patent infringement allegations, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 154:**

All documents and things that refer or relate to any testing and/or analysis of the properties and/or characteristics of any Apple Watch Product or any component of any Apple Watch Product that relate to pulse oximetry or power consumption by pulse oximetry, including, without limitation, testing protocols, reports, results, notes, and summaries.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 154:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent it seeks

documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the request. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 172:**

All documents and things referring to performance of the pulse oximetry feature in the Apple Watch Series 6, including documents relating or referring to whether the pulse oximetry feature in the Apple Watch Series 6 accurately or reliably measures blood oxygen levels.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 172:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks documents not within Apple's possession, custody, or control. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it

requests "all documents and things" referring to the subject matter of the request. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case,in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motionto Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thusApple declines to respond to this Request. Additionally, to the extent this Request seeksdocuments related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 186:**

Documents sufficient to identify any ███████████████████████ process that You have implemented or ever considered implementing in the Accused Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 186:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protectedfrom discovery by the attorney-client privilege, the work-product doctrine, the commoninterest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculate to lead to the discovery of admissible evidence and is not limited to any relevant time period. In addition, Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210 and thus have not adequately identified what "█████████████████████" techniques or processes they are claiming as trade secrets. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production Nos. 182-83.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, to the extent this Request is even relevant to

Plaintiffs' patent infringement allegations, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request.  Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

## A.   **Plaintiffs' Position**

Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The propounding party bears an initial burden of making a "minimal showing of relevance."  *DeSilva v. Allergan USA, Inc.*, 2020 WL 5947827, at *3 (C.D. Cal. Sept. 1, 2020).  "Once the minimal showing of relevance is made, '[t]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'"  *Id.* (quoting *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)).  As discussed below, RFPs 63-66, 148-151, 153, 154, 172, and 186 seek relevant information and are proportional to the needs of the case.  Apple raises a number of objections and attempts to limit its production, but fails to show discovery should be limited.

### 1.   **RFPs 63-66, 148-151, 153, 154, 172, And 186 Seek Relevant Information And Are Proportional To The Needs Of The Case**

RFPs 63-66, 148-151, 153, 154, 172, and 186 seek information about specific physiological monitoring features at issue in this case.  RFPs 63-66 seek documents about Apple's heart rate/pulse rate algorithms, selecting between separate heart rate/pulse rate algorithms, power consumption of heart rate/pulse rate algorithms, and testing of heart rate/pulse rate algorithms.  RFPs 148-151, 153, 154, and 172 similarly seek documents about Apple's oxygen saturation algorithms, selecting between separate oxygen saturation algorithms, power consumption of oxygen saturation algorithms, LED timing for the

oxygen saturation algorithm, testing of oxygen saturation algorithms, and performance of oxygen saturation algorithms.  RFP 186 seeks documents sufficient to identify any ████████████████████████ process that Apple has implemented or is considering implementing.

All three categories of algorithms are ████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████

These RFPs are also directly relevant to ████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

These RFPs are also proportional to the needs of this case.  Rule 26 instructs that courts are to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 27(b)(1).  As discussed above, the discovery requests seek relevant information about the technical operation of key algorithms at issue in this case.  The accused product (the Apple Watch) is the primary product in Apple's "wearables" division, which has revenues of nearly $13 billion per quarter.  Ex. 34 at 2.  The requested technical information is also in Apple's exclusive possession.  Finally, Apple is worth $2 trillion and is the most valuable public company on earth.  Ex. 35 at 2.  Apple cannot claim that it lacks the resources to gather the requested information.  Thus, these RFPs are relevant and proportional to the needs of the case.

## 2.    Apple's Objections and Limitations Lack Merit

Apple's written responses included pages of boilerplate objections.  Such "general or boilerplate objections" are improper.  *Nguyen v. Lotus by Johnny Dung Inc.*, 2019 WL 4579259, at *3 (C.D. Cal. June 7, 2019).  During the meet and confer, Apple relied on a handful of its objections to unilaterally limit its production.  Apple's objections and limitations each lack merit.

### a.    Heart Rate Is Relevant To This Case

Apple argues RFPs 63-66 do not seek relevant information because information related to "heart rate" or "pulse rate" algorithms is "not relevant to the claims and defenses" in this case.  Ex. 24 at 8-9.  Apple argues

But Plaintiffs are entitled to discovery to test Apple's assertion.  Apple's unsubstantiated argument that Plaintiffs' claim will fail on the merits does not provide a basis to refuse discovery.  *Carrizosa v. Stassinos*, 2006 WL 1581953, at *2 (N.D. Cal. June 6, 2006) (explaining "the propriety of discovery does not turn on one party's belief that the claims are without merit"); *Manzo v. Cty. of Santa Clara*, 2019 WL 2866047, at *2 (N.D. Cal. July 3, 2019) (explaining "the Court does not assess the ultimate merits of the claim or defense" for motions to compel); *Elkin v. New York Life Ins. Co.*, 2017 WL 4047235, at *2 (C.D. Cal. Sept. 8, 2017) ("[T]he current motion presents a discovery dispute, and the Court is not resolving the merits of the parties' claims and defenses.").  If Apple's assertions are correct, it should be anxious to provide the information requested by Plaintiffs to purportedly show it has not misappropriated Plaintiffs' trade secrets.

Plaintiffs also disagree with Apple's attempt to mischaracterize Plaintiffs' trade secrets. While Plaintiffs have alleged Apple uses these techniques in the Apple Watch, Apple is also liable for misappropriation if it "unlawfully acquired and then built upon or modified [the trade secret] before being disclosed or benefit derived."  *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. Apr.

23, 2012).  Similarly, Apple can be liable even if it merely **considered** Plaintiffs' trade secrets and ultimately decided not to implement them.  *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (2000) (explaining that improper "use" of a trade secret includes "[e]mploying the confidential information" in almost any way, including in "research or development").

Plaintiffs are entitled to discovery on Apple's pulse rate algorithm so that Plaintiffs—not Apple—can evaluate misappropriation.  Apple's unsubstantiated arguments do not show why discovery should be limited.  The Court should overrule Apple's relevance objection to RFPs 63-65.

### b.    Earlier Versions Of The Apple Watch Are Discoverable

Apple argues RFPs 63-66, 148-151, 153, 154, 172, and 186 are overbroad because they seek information about all versions of the Apple Watch, rather than the Series 4 and later devices accused of misappropriating Plaintiffs' trade secrets.  Based on that objection, Apple limited its production with respect to the Series 3 and earlier watches to include only "source code" sufficient to show the "relevant operation and functions of the Apple Watch."  Ex. 24 at 9.

Apple's objection and limitation are inappropriate because earlier versions of the Apple Watch are relevant and discoverable.  First, Plaintiffs are entitled to engage in discovery to uncover trade-secret misappropriation of which they are not aware.  *See, e.g., Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1350 n.12 (2009) (crediting plaintiff's concerns regarding "constrain[ed]" discovery that "prevent[s] [plaintiff] from ever finding out about trade secrets that were stolen"); *compare Kaneka Corp. v. Zhejiang Med. Co.*, 2016 WL 11266869, at *4 (C.D. Cal. Oct. 18, 2016) (in the patent context "courts have frequently held that discovery is permitted regarding comparable patents or products"); *Fresenius Med. Care v. Holding Inc. v. Baxter Int'l Inc.*, 224 F.R.D. 644, 652–3 (N.D. Cal. 2004) (granting discovery on products "comparable" to those accused of patent infringement).  In addition, Apple's limitation of discovery on the

earlier watches to a portion of their source code is arbitrary and without basis in any relevance argument.

Second, many of Plaintiffs' allegations focus on the actions of a former employee of Plaintiffs, Marcelo Lamego, who worked at Apple in 2014 when Apple was working on the original Series 1 Apple Watch.  Documents showing Lamego advocated that Apple should implement Plaintiffs' trade secrets would constitute use of Plaintiffs' trade secrets even if Apple did not ultimately incorporate the trade secrets in that version of the watch.  *See PMC*, 78 Cal. App. 4th at 1383 (explaining that improper "use" of a trade secret includes "[e]mploying the confidential information" in almost any way, including in "research or development"); *SkinMedica,* 869 F. Supp. 2d at 1197 ("information may be improperly 'used' in that it is unlawfully acquired and then built upon or modified before being disclosed or benefit derived").  If Apple excludes documents about earlier watches, then Plaintiffs may not learn of such uses of Plaintiffs' trade secrets.

Third, Plaintiffs' requested discovery is also relevant because Plaintiffs are entitled to discovery as to changes and comparisons between earlier watches and the Series 4 and later watches.  Plaintiffs allege Apple modified its earlier versions of the watch to improve the physiological monitoring features in the later versions.  Ex. 26 ¶¶ 25, 238.  Apple's changes over time may also rebut Apple's defense that it independently developed Plaintiffs' trade secrets.  Ex. 27 ¶ 377.  Understanding when and why Apple made design changes that incorporated Plaintiffs' trade secrets will also be important to showing the importance of those changes for Plaintiffs' damages calculation.

Because Apple has no valid objection, Apple cannot limit its production to only include source code for the Series 3 and earlier watches.  *See Kilroy v. L.A. Unified Sch. Dist. Bd. of Educ.*, 2018 WL 6071089, at *1 (C.D. Cal. Mar. 7, 2018) ("If the responding party does not offer a valid objection, it must produce all requested documents that are in its possession, custody, or control.").  Indeed, these requests appropriately seek more than just Apple's source code.  In addition to physiological monitoring algorithms actually implemented, which could potentially be discoverable from source code, these requests

seek information about algorithms Apple considered, testing or analysis of Apple's rate algorithm, the performance of Apple's algorithms, and customer evaluation of Apple's performance.  Apple has not shown why discovery should be limited.  The Court should overrule Apple's objection to RFPs 63-66, 86, 148-151, 153, 154, 172, and 186.

### c.  Apple's Section 2019.210 Limitation Lacks Merit

Apparently relying on the objections discussed above, Apple has stated it will produce documents for many RFPs "only to the extent they relate to the alleged trade secrets in Plaintiffs' Section 2019.210 disclosure."  Ex. 24 at 8-9.  As discussed, however, Apple has no valid objections to these RFPs.  Thus, Apple cannot limit discovery to what *Apple* asserts is "relevant" to Plaintiffs' Section 2019.210.  *See Kilroy*, 2018 WL 6071089, at *1 ("If the responding party does not offer a valid objection, it must produce all requested documents that are in its possession, custody, or control.").

Apple's limitation is also inappropriate because Section 2019.210 is a procedural requirement to "commenc[e] discovery"—not a basis to withhold documents.  *See* Cal. Civ. P. Code § 2019.210.  As the California Court of Appeal explained, the "designation should be liberally construed, and reasonable doubts about its sufficiency resolved in favor of allowing discovery to go forward."  *Brescia v. Angelin*, 172 Cal. App. 4th 133, 149 (2009); *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 837 (2005) ("Any doubt about discovery is to be resolved in favor of disclosure.").

The California Court of Appeal also explained the scope of discovery is broader than the specific trade secrets identified in a Section 2019.210 disclosure.  *See Perlan Therapeutics,* 178 Cal. App. 4th at 1333.  In requiring a plaintiff to identify its trade secrets with "reasonable particularity," the court explained that "[i]f, through discovery, [Plaintiff] uncovers information suggesting defendants misappropriated additional trade secrets, it may have good cause to amend its trade secret statement under appropriate circumstances."  *Id.* at 1350.  The court credited plaintiff's concern that a narrow identification of trade secrets could "constrain[]" discovery and "prevent [plaintiff] from ever finding out about trade secrets that were stolen."  *Id.* at 1351, n.12.  The Court addressed that concern by

explaining "it is important to remember that the parties may conduct discovery 'regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (modification in original).[2]

Apple has previously cited *Computer Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999), for the proposition that one purpose of Section 2019.210 is to "fram[e] the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope." That may be true, but it does not provide a basis for Apple to withhold discovery as to particular documents based on Apple's unilateral decision that the document does not relate to Plaintiffs' Section 2019.210 statement. A Section 2019.210 statement guides the Court's decision as to whether a discovery request seeks relevant documents much like a patent claim guides discovery in a patent case. Once the Court has determined that a request seeks relevant information, however, the defendant cannot withhold particular responsive documents merely because the defendant unilaterally contends that they do not directly relate to a particular trade secret. Such an approach would enable a defendant to unilaterally create undisclosed gaps in its document production, with the opposing party having no ability to challenge the withheld discovery.

Permitting Apple to unilaterally withhold specific documents based on Section 2019.210 would be extremely prejudicial because Apple has already shown it has an unduly narrow view of relevance. As discussed, Apple has already improperly withheld discovery on its pulse rate algorithm just because it believes it does not misappropriate Plaintiffs' trade secrets. *See* Section II.A.2.a, *supra*. Apple also argued it should not have to produce documents showing it "considered" Plaintiffs' trade secrets because

---

[2] The discovery standard in state court differs from federal court, but *Perlan* still shows the scope of discovery is broader than Section 2019.210. Here, Plaintiffs here are entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b).

"considering is not relevant."  Ex. 22 at 5.  As discussed, that is contrary to law.  *See PMC*, 78 Cal. App. 4th at 1383; *SkinMedica*, 869 F. Supp. 2d at 1197.  Apple's limitation would also allow it to withhold evidence showing it misappropriated other trade secrets of which Plaintiffs are not yet aware.  Plaintiffs are entitled to learn of such additional acts of misappropriation.  *See Perlan Therapeutics*, 178 Cal. App. 4th at 1350.

Accordingly, Apple has not shown why discovery should be limited.  The Court should overrule Apple's objections and order Apple to produce all responsive documents.

**B.** **Apple's Position**

To prevail on a motion to compel, "the moving party bears the burden of demonstrating that it is entitled to the requested discovery and that it has satisfied proportionality and other requirements of Rule 26."  *In re Glumetza Antitrust Litig.*, 2020 WL 3498067, at *7 (N.D. Cal. June 29, 2020), *motion for relief from judgment denied*, 2020 WL 4362247 (N.D. Cal. July 22, 2020).  The scope of discovery under Rule 26 is not unlimited.  *Liberty Ins. Corp. v. Sw. Traders Incorp.*, 2013 WL 12140335, at *2 (C.D. Cal. Aug. 27, 2013).  The Court "need not condone the use of discovery to engage in 'fishing expedition[s].'"  *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) (citation omitted).  "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and dictate its sequence."  *Valenzuela v. City of Calexico*, 2015 WL 926149, at *2 (S.D. Cal. Mar. 4, 2015) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).  At bottom, "the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute."  *DeSilva v. Allergan USA, Inc.*, 2020 WL 5947827, at *2 (C.D. Cal. Sept. 1, 2020) (citing *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009)).  None of the RFPs at issue satisfy these standards.

Several of Plaintiffs' RFPs do not belong in this motion, because Apple already agreed to produce (and started to produce) the requested documents.  As for the remaining RFPs, Plaintiffs cannot show that the discovery requests seek evidence necessary to resolve the trade secret disputes in this case, *id.*, because the requests seek information that goes far beyond the alleged trade secrets identified in Plaintiffs' Section 2019.210 disclosure.

Plaintiffs challenge the applicability of Section 2019.210, but as explained in detail below, the law is clear that Section 2019.210 is intended to frame discovery in a trade secret case. Plaintiffs' requests, which they admit go beyond the described functionality in their alleged trade secrets—are impermissibly overbroad.  The requests are not relevant to Plaintiffs' trade secret misappropriation claim or proportional to the needs of this case.  Fed. R. Civ. P. 26(b)(1).  Apple has already agreed to produce (and started to produce) responsive documents that *are* related to Plaintiffs' alleged trade secrets.  Plaintiffs are not entitled to more, and the Court therefore should deny Plaintiffs' motion to compel production in response to RFPs 63–66, 148–151, 153, 154, 172, and 186.

### 1.   <u>RFPs 148–149 and 186 Are Not in Dispute</u>

Plaintiffs are moving to compel with respect to RFPs 148–149 and 186, even though Apple already agreed to produce (and started to produce) the requested documents.  Apple informed Plaintiffs that Apple intended to respond to the RFPs with the documents requested—to the extent in Apple's possession, custody, and control, and located following a reasonable search—but Plaintiffs for some reason chose to include the RFPs in this motion in any event.  Apple has nothing further to produce in response to these RFPs than that which it has already produced or is preparing to produce.

*RFPs 148-149.*  RFPs 148 and 149 concern the calculation of oxygen saturation by the Apple Watch.  RFP 148 requests "[a]ll document and things that refer or relate to the calculation of oxygen saturation in any Apple Watch Product," and RFP 149 requests "[d]ocuments sufficient to show any pulse oximetry algorithms used in any of the Apple Watch Products."  J.S. 12–13.  Apple agreed to produce documents responsive to both requests.  As Apple understands it, Plaintiffs' complaint is that Apple's agreement to produce was limited to the Series 4 and later versions of the Apple Watch—and that, with respect to the Series 3 and earlier versions of the Apple Watch, Apple agreed to produce only certain source code.  *Id.* at 23–25.  But it is undisputed that the only version of the Apple Watch that calculates oxygen saturation is the Series 6, which was only just released on September 18, 2020.  Plaintiffs' Ex. 26 at 271 (¶ 25) (acknowledging that the Series 6

Apple Watch was released on September 18, 2020); *id.* at 349, (¶ 238) (acknowledging that "█████████████████████████████"). Accordingly, both RFPs are *inherently* limited to the Series 6 Apple Watch, about which Apple already agreed to produce documents. Indeed, Apple has already begun producing technical documents related to the oxygen saturation calculation feature of the Series 6 Watch. Samplin Decl. ¶ 10 (exemplary documents produced by Apple that are responsive to these RFPs include APL-MAS_00090783 and APL-MAS_00090817). Apple also made available for inspection the Series 6 Watch source code that relates to calculating oxygen saturation, which Plaintiffs already spent days inspecting. *Id.* ¶¶ 13–16 & Exs. H–K. Apple is not withholding any documents responsive to these RFPs. Plaintiffs' motion with respect to these RFPs therefore should be denied as moot.

 **RFP 186.** RFP 186 seeks "[d]ocuments sufficient to identify any ████████████ ██████████ process that [Apple] ha[s] implemented or ever considered implementing in the Accused Products." Plaintiffs defined "Accused Products" as "Apple Watch Series 3 or later, as well as the combination of Apple Watch Series 4 or later with an Apple iPhone." Plaintiffs' Ex. 3, at 36. Apple has already produced technical documents sufficient to identify any ████████████████ process used by the Series 4 Watch or later, to the extent there is any such use, and has agreed to produce corresponding documents for the Series 3 Watch. Samplin Decl. ¶ 11 (exemplary documents produced by Apple that are responsive to this RFP include APL-MAS_00089399, APL-MAS_00089233, APL-MAS_00089075, APL-MAS_00088927, APL-MAS_00028917, APL-MAS_00077637, APL-MAS_00100273, APL-MAS_00099916). In addition, Plaintiffs have had access to Apple's source code for WatchOS versions 4–6 (which run on the Series 3–5 Apple Watch products) since last August, and Apple's source code for the WatchOS version 7 (used on the Series 6 Watch) since last October. *Id.* ¶¶ 12–16 & Exs. G–K. Apple is not withholding any documents responsive to this RFP. Plaintiffs' motion with respect to this RFP therefore should be denied as moot.

## 2. **Section 2019.210 Frames the Boundaries of Permissible Trade Secret Discovery**

The remainder of the RFPs at issue in this section of the motion—RFPs 63-66, 150, 153, 154, and 172—exceed the boundaries of permissible trade secret discovery, as demonstrated by the fact that they are completely untethered to Plaintiffs' Section 2019.210 disclosure. Plaintiffs' response ignores the relevant case law and the role that Section 2019.210 is intended to play in the discovery process.

Rule 26(b) requires that discovery be relevant to the claim at issue. *See Cancino Castellar v. McAleenan*, 2020 WL 1332485, at *5 (S.D. Cal. Mar. 23, 2020) ("Regardless of its broad nature, however, relevance is not without 'ultimate and necessary boundaries,'" so "courts often link the elements of a cause of action with the discovery sought."). And in trade secret cases like this one, Section 2019.210 "fram[es] the appropriate scope of discovery" and assists "in determining whether plaintiff's discovery requests fall within that scope." *Computer Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999). In other words, a Section 2019.210 statement "delineate[s] the scope of permissible discovery." *Id.* at 992; *see also BioD, LLC v. Amnio Tech., LLC*, 2014 WL 3864658, at *5 (D. Ariz. Aug. 6, 2014) (explaining that a Section 2019.210 disclosure serves to limit discovery "to ensure that plaintiffs are not on a fishing expedition" and so that "the court *and defendants* can discern the relevancy of *plaintiffs'* discovery requests" (emphasis added)); *Advante Int'l Corp v. Mintel Learning Tech.*, 2006 WL 3371576, at *3 n.4 (N.D. Cal. Nov. 21, 2006) (Cal. Civ. Proc. Code § 2019.210 "provides an appropriate guide in the absence of specific provisions in the federal rules governing trade secret discovery."); *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005) (explaining that a Section 2019.210 statement "is not itself a pleading but it functions like one in a trade secret case because it limits the scope of discovery in much the same way as the allegations of a complaint limit discovery in other types of civil actions"); *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (Ct. App. 1968) (noting that one purpose of a trade secret description is "to give both the court and the defendant . . .

reasonable guidance in ascertaining the scope of appropriate discovery"). Plaintiffs' RFPs in this trade secret case must relate to the alleged secrets described in their Section 2019.210 statement. Plaintiffs' alternative reading of Section 2019.210 would render the statute a nullity.

Plaintiffs first argue that they need not limit their discovery requests to their alleged trade secrets because "Section 2019.210 is a procedural requirement to 'commenc[e] discovery.'" J.S. 2, 25. But it would make no sense for Section 2019.210 to prevent commencement of discovery until Plaintiffs sufficiently describe their alleged trade secrets, but then throw open the doors to discovery that is untethered to those alleged secrets. The caselaw is clear that Section 2019.210 not only controls commencement of discovery in a trade secret case, but also guides the discovery process. *See, e.g.*, *Computer Econ.*, 50 F. Supp. 2d at 985 (Section 2019.210 "assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope"); *see also Diodes, Inc.*, 260 Cal. App. 2d at 253 (explaining that a plaintiff "should describe the subject matter of the trade secret . . . . to provide reasonable guidance in ascertaining the scope of appropriate discovery").

Plaintiffs next argue that California cases support their argument that "the scope of discovery is broader than the specific trade secrets identified in a Section 2019.210 disclosure." J.S. 25–26. Plaintiffs are wrong. Nothing in *Perlan Therapeutics, Inc. v. Superior Ct.*, 178 Cal. App. 4th 1333, 1350 (2009), J.S. 25, indicates that Plaintiffs can propound discovery in a trade secret case that is unrelated to the alleged trade secrets. The *Perlan* court merely suggested that if a plaintiff discovers additional misappropriation during discovery, "it may have good cause to amend its trade secret statement under appropriate circumstances." *Perlan*, 178 Cal. App. 4th at 1350. The case proves Apple's point—as there would be no need to amend a trade secret disclosure after discovery commences if that disclosure plays no role in the ongoing discovery process. Indeed, the *Perlan* court explained that it is the trade secret plaintiff who controls the scope of discovery to which it is entitled—by choosing how to describe the trade secrets at issue in

the Section 2019.210 disclosure.  *See id.* n.12 (confirming that it was "conceivable" that a narrow trade secret description "could theoretically prevent" a plaintiff from learning about additional misappropriation).

Plaintiffs' attempt to distinguish *Computer Economics, Inc. v. Gartner Group., Inc.* also fails.  Relying on that case, Plaintiffs inexplicably argue that discovery should not be tied to their trade secret description because a "Section 2019.210 statement guides the *Court's* decision as to whether a discovery request seeks relevant documents," J.S. 26 (emphasis added)—implying that Section 2019.210 can assist *only* the Court, and not a defendant, in that regard.  But this distinction makes no sense and is wrong as a matter of law.  To the extent Plaintiffs are suggesting that Apple should ask the Court to rule on the scope of *each* discovery request it receives from Plaintiffs in reference to the Section 2019.210 disclosure *before* undertaking its own evaluation of the scope of that request, such a proposition is absurd and unworkable.  Plaintiffs' assertion that Apple cannot evaluate the relevance of Plaintiffs' discovery requests vis-à-vis their Section 2019.210 statement and object when such requests are overbroad, *see* J.S. 26, is likewise absurd.  Rule 26 does not require Apple to turn over all of its files to Plaintiffs regardless of relevance so that *Plaintiffs* can be the sole arbiters of what information relates to their alleged trade secrets.[3]  As *Diodes* (which was cited by *Computer Economics*) makes clear, Section 2019.210 provides to "both the court *and the defendant* . . . reasonable guidance in ascertaining the scope of appropriate discovery."  260 Cal. App. 2d at 253 (emphasis added); *see also Albert's Organics, Inc. v. Holzman*, 2020 WL 4368205, at *3 (N.D. Cal. July 30, 2020) ("[S]ection 2019.210 . . . assists the court *and parties* in defining the

---

[3] Plaintiffs accuse Apple of having "an unduly narrow view of relevance" because it purportedly "withheld discovery on its ███████████ just because it believes it does not misappropriate Plaintiffs' trade secrets." J.S. 26.  But, as explained in Section II.B.3.a, *infra* at J.S. 40, that is a gross mischaracterization of Apple's relevance objections, which are based not on the merits of the case, but on the fact that Plaintiffs' requests go well beyond the boundaries established by their trade secrets description.

appropriate scope of discovery." (quoting *Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *2 (N.D. Cal. June 14, 2012)) (emphasis added)).  A key purpose of Section 2019.210 is to provide a lens through which both the Court and the parties can evaluate the boundaries of discovery requests.  When, as here, a plaintiff's discovery requests so plainly lie far outside those boundaries (as detailed in the next section, *infra*), non-production is appropriate and warranted.[4]

The remainder of Plaintiffs arguments also make no sense.  Plaintiffs argue that "[o]nce the Court has determined that a request seeks relevant information," Apple cannot withhold responsive documents based on its Section 2019.210 objection. J.S. 26.  But this argument is a strawman—the Court has not yet ruled that any of the RFPs at issue on this motion call for relevant documents.  Indeed, Apple is arguing that these RFPs are *not* relevant because they seek information far beyond that which relates to the alleged trade secrets Plaintiffs identified in their Section 2019.210 disclosure.  If the Court disagrees with Apple and concludes that these requests are relevant, then Apple will of course comply with that order and produce responsive documents.  But until such time, Apple is entitled to object on the grounds that Plaintiffs' requests plainly exceed the scope of their trade secret description.

Equally unavailing is Plaintiffs' attempt to analogize this dispute to patent law. Plaintiffs assert that their "Section 2019.210 statement guides the Court's decision as to whether a discovery request seeks relevant documents much like a patent claim guides discovery in a patent case." J.S. 26.  That may be true, but it does not support Plaintiffs' attempts to seek discovery unrelated to their alleged trade secrets.  In fact, Plaintiffs'

---

[4] Plaintiffs also cite *Brescia v. Angelin*, 172 Cal. App. 4th 133, 149 (2009), and *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 837 (2005), for the unremarkable proposition that any reasonable doubt about discovery should be resolved in favor of allowing discovery to proceed. J.S. 25.  But, as explained below, there is *no doubt* here that Plaintiffs' requests are *not* related to their alleged trade secrets enumerated in their Section 2019.210 disclosure.

analogy, if taken to its logical conclusion, contradicts their argument:  if, for example, Plaintiffs were to serve a discovery request in a patent infringement case that was unrelated to the patent claims asserted in that case, such a request would be beyond the scope of permissible discovery.  Any defendant would object in such circumstances precisely as Apple has done here, where Plaintiffs have served requests that are not related to their alleged trade secrets.

### 3.   RFPs 63–66, 150, 153, 154, and 172 Are Not Relevant or Proportional

The remainder of the RFPs at issue in this section of Plaintiffs' motion—RFPs 63-66, 150, 153, 154, and 172—are either completely irrelevant or wildly overbroad because they are not tethered to the alleged trade secrets Apple has been accused of misappropriating.  Instead, these RFPs seek information about algorithms (and aspects thereof) that do not implicate Plaintiffs' alleged trade secrets in any way.  With these RFPs, Plaintiffs plainly seek to evade the requirements of Section 2019.210, and to go on an overbroad and unbounded search through Apple's files, presumably to concoct *new* allegations of trade secret misappropriation to assert in this case.  The requested discovery is thus not relevant or proportional to the needs of this case, and flies in the face of the very purposes of Section 2019.210.[5]

Responding to Plaintiffs' overbroad requests would also be disproportionally burdensome and expensive to Apple because the scope of those requests is many times broader than that of Plaintiffs' alleged trade secrets.  The majority of these RFPs seek *all* documents and things that "refer or relate" to: (i) *all* heart rate and oxygen saturation calculation algorithms or aspects thereof, (ii) all information on power consumption, (iii) expansive testing information relating to these algorithms and related components of the

---

[5]  Plaintiffs served Apple with their portion of this Joint Stipulation before Apple had an opportunity to finalize its position with respect to certain of the RFPs now at issue in this Joint Stipulation.  Accordingly, on further reflection after Plaintiffs served their portion of this Joint Stipulation, Apple agreed to produced documents responsive to RFP 151, and therefore RFP 151 is not at issue on this motion.

Apple Watch, and (iv) everything relating or referring to the performance of these algorithms and components. By contrast, Plaintiffs identify only two categories of alleged trade secrets ("████████████████████████" and "████████████████████") that are ██████████████████████████████████. As one example, Plaintiffs' "███████████████████████" trade secrets concern █████████████████████ ████████████████████████████████████████████████████ ████—as Plaintiffs themselves have argued in the past. *See, e.g.*, Samplin Decl. Ex. B, at 16–18 (Plaintiffs' Reply in Support of Their Preliminary Injunction Motion (Dkt. No. 161-1) at 2–4). And Plaintiffs' alleged ██████████████████ trade secrets are limited to ████████████████████████████████████████████████ ██████ Plaintiffs' Ex. 28, at 571 (F.1–.3). Yet Plaintiffs' RFPs broadly seek discovery on all aspects of both ████████████, including aspects ████████████ ███████████ that have nothing to do with their alleged trade secrets. Requiring Apple to locate and produce potentially thousands of documents and ESI on unrelated functionality—particularly when Apple already provided for inspection all of the relevant source code—would be disproportionally burdensome to Apple. The extent of this burden is particularly striking given that Plaintiffs seek this overbroad information for six generations of the Apple Watch, the development of which occurred over eight years and involved thousands of people, whereas their entire misappropriation case with respect to their alleged "███████████████████" and "███████████████████" trade secrets is built upon allegations concerning Mr. Lamego's employment at Apple for only six months seven years ago. "[C]ourts are required to limit discovery" where, as here, "the burden or expense of the proposed discovery outweighs its likely benefit; such is 'the essence of proportionality,' an all-too-often ignored discovery principle." *Glumetza*, 2020 WL 3498067, at *7 (citing Fed. R. Civ. P. 26(b)(1) and *Apple Inc. v. Samsung Elecs. Co.*, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013)); *see also P&P Imports LLC v. Johnson Enterprises LLC*, 2020 WL 4258817, at *1 (C.D. Cal. Apr. 16, 2020) (Early, J.) (explaining that "discovery requests that seek irrelevant information are inherently unduly

burdensome." (citing *Wheel Grp. Holdings, LLC v. Cub Elecparts, Inc.*, 2018 WL 6264980, at *4 (C.D. Cal. Sept. 4, 2018))).[6]

In response to RFPs 63–66, 150, 153, 154, and 172, Apple already produced technical documents and source code that relate to the alleged trade secrets identified in Plaintiffs' Section 2019.210 disclosure. Plaintiffs, however, seek additional discovery that goes beyond the alleged trade secrets identified in their Section 2019.210 disclosure, and thus is not "necessary to evaluate and resolve their [trade secret] dispute." *DeSilva*, 2020 WL 5947827, at *2. Plaintiffs should not be permitted to run roughshod over Section 2019.210 to obtain confidential Apple information that does not relate to the alleged trade secrets they have accused Apple of misappropriating in this case.

### a.    RFPs 63–66 (Heart Rate Algorithms)

Plaintiffs argue that their requests for documents relating to "*any* heart rate algorithms used in *any* of the Apple Watch Products" (RFPs 63, 65), *all* documents relating to "selection between *any* heart rate algorithm" (RFP 64), and *all* documents and things relating to "testing and/or analysis" of "*any* of the Apple Watch Products or any components" thereof that relate to pulse rate detection or measurement[7] (RFP 66) are "relevant to multiple categories of trade secrets at issue in this case." J.S. 8–11, 20 (emphasis added). A closer inspection, however, reveals the flaws in Plaintiffs' argument.

***Not Relevant/Proportional to*** ███████████████. The first category of alleged trade secrets to which Plaintiffs point as the purported justification for

---

[6] Plaintiffs attempt to justify the burden of their overbroad discovery on Apple by arguing that Apple is "the most valuable public company on earth." J.S. 21. But Apple did not become so valuable by wasting its resources on irrelevant discovery. Moreover, accepting Plaintiffs' argument would mean that any party would be subject to overbroad and disproportionate discovery solely due to its financial success. That is not a tenable reading of the proportionality requirements of Rule 26.

[7] The terms "heart rate" and "pulse rate" are synonymous and are used interchangeably herein.

these RFPs is "███████████████████," but these RFPs are not limited to ███████████████████████████████████. Rather, they seek *all* heart rate algorithms across all versions of the Apple Watch, regardless of ████████████████████████████████ Indeed, these RFPs are so broad that they cover ███████████████████████████████████████ ████████████████████████████████████████████████ ██████████ Apple's *selection* between different heart rate algorithms likewise has nothing to do with ████████████████████. These RFPs are not relevant or proportional with respect to Plaintiffs' allegations of misappropriation of alleged ████████████████████████ trade secrets.

**Not Relevant/Proportional to** ████████████ Plaintiffs next argue that their heart rate algorithm RFPs are relevant to their alleged ████████████████████ trade secrets because those alleged trade secrets concern ████████████████████████████████ ████████████████████████████████████████████████ █████████████████████" J.S. 21–22; *see also* Plaintiffs' Ex. 28, at 571 (F.1). But Plaintiffs' requests go well beyond information regarding the ██████████████ ███████████████████████████. Instead, these requests seek information about the heart rate algorithms themselves, ████████████████ ██████████████████████████████████. Apple already agreed to produce documents related to ████████████████████████████ ██████████████████. Accordingly, the additional documents Plaintiffs seek— documents that show all of Apple's heart rate algorithms—would not permit Plaintiffs to evaluate their misappropriation claim because they would not include information about the alleged ████████████████████████████████. These RFPs are not relevant or proportional with respect to Plaintiffs' allegations of misappropriation of alleged ██████████████████ trade secrets.

With respect to RFP 64 in particular, Plaintiffs argue for relevance based on the fact that their alleged trade secrets purportedly "████████████████████████████████

-37-

1   ███████████████████████████████████████████████" J.S. 20–21.  But in doing so,

2   Plaintiffs entirely misstate their second alleged ████████████████ trade secret.

3   That alleged trade secret states that "█████████████████████████████

4   █████████████████████████████████████████████████

5   ████████████████████████████" Plaintiffs' Ex. 28, at 571 (F.2) (emphasis added).

6   Thus, the relevant selection by █████████████████████████████

7   ███████████████████████████████—not between "separate heart

8   rate/pulse rate algorithms" as Plaintiffs assert and RFP 64 states.  J.S. 19.  RFP 64 is not

9   tethered to the alleged trade secret actually identified in Plaintiffs' Section 2019.210

10  disclosure.

11       RFP 66, which seeks "*all* documents and things that refer or relate to *any* testing

12  and/or analysis of the properties and/or characteristics of *any* of the Apple Watch Products

13  or *any* component of any of the Apple Watch Products that relate to pulse rate detection,

14  pulse rate measurement, power consumption by pulse rate detection, or power consumption

15  by pulse rate measurement," J.S. 11 (emphasis added), is likewise overbroad because it is

16  not tethered to Plaintiffs' alleged trade secrets for at least the same reasons discussed above.

17  In addition, this RFP goes beyond Apple's heart rate algorithms, to "*any component*" of

18  the Apple Watch hardware.  Plaintiffs do not (because they cannot) explain how such

19  expansive testing information for Apple's heart rate calculation functionality—which

20  plainly goes well beyond ████████████████████████████

21  ███████—is at all relevant or proportional to their misappropriation claim.  ███████

22  ████████████████████████████████████████████████

23  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████

25  ████████████████████████████████████████████████

26  ████████████████████████████████████████████████

27  ████████████████████████████████████████████████

28  ███████████████████████████████████



-38-

Furthermore, Plaintiffs' heart rate power consumption RFPs relate solely to their patent claims asserting infringement of the low power patents, *see* Plaintiffs' Ex. 26, at 335, 339–40 (¶¶ 201, 215), and should be stayed for that reason alone.

The overbreadth of Plaintiffs' requests is evident from the fact that they are seeking discovery into just about every health-related functionality from six generations of the Apple Watch. Plaintiffs' misappropriation theory, however, rests on allegations that Mr. Lamego—who left Apple before the first Watch was even released—disclosed their alleged trade secrets over a ***six-month period occurring seven years ago***. Moreover, Plaintiffs have alleged that those trade secrets were disclosed in Apple patents naming Lamego as an inventor or in a small subset of specific aspects of the Apple Watch. *See* Plaintiffs' Ex. 26, at 346–360 (¶¶ 234–56). Plaintiffs should not be permitted to discover every document relating to functionalities that they did not (and cannot) allege are the product of Mr. Lamego's limited work years ago—particularly given that thousands of people have worked on the development of features of the Apple Watch since Mr. Lamego's departure that have absolutely no connection to Plaintiffs' allegations in this case. *Cf. Uniloc USA, Inc. v. Apple Inc.*, 2018 WL 2002979, at *1 (N.D. Cal. Apr. 30, 2018) (denying discovery into all of Apple's iOS source code where Apple explained that its code "reflect[s] the work of thousands of engineers and billions of dollars of investment" and "includes code for thousands of features and functions that have no relevance" to that case). Plaintiffs' Section 2019.210 disclosure plays a critically important role in this case: ensuring that Plaintiffs' discovery remains tethered to their actual allegations of trade secret misappropriation.

Critically, Apple has already started to produce "[d]ocuments sufficient to show any heart rate algorithms used in" ███████████████████████████████████████ ███████████████████████████████████████████████████████████. Apple has also made available for inspection—and Plaintiffs' counsel has already inspected, *see* Samplin Decl. ¶¶ 15–16 & Exs. J–K, at 161, 166–167—the very source code that ████████

-39-

1    ██████████████ in the Apple Watch and that Plaintiffs alleged in their Fourth Amended

2    Complaint they need to prove their misappropriation allegations with respect to their

3    alleged ███████████████████████ trade secrets.  *See* Plaintiffs' Ex. 26, at 359 (¶ 255)

4    (alleging that "███████████████████████████████████

5    ██████████████████████████████████████████

6    █████████████████" (emphasis added)).  Thus, Plaintiffs already have (or soon will

7    have) everything they need "to test Apple's assertion" that Apple's ████████████

8    ██████████ does not misappropriate their alleged trade secrets.  J.S. 22.

9           Unable to plausibly connect their RFPs concerning Apple's heart rate algorithms to

10   their alleged trade secrets, Plaintiffs resort to mischaracterizing Apple's objection as an

11   argument on the merits that "does not provide a basis to refuse discovery."  *Id.*  Plaintiffs

12   are wrong.   Apple is not "█████████████████████████████

13   ███████████████████████████."  *Id.*  Rather, Apple's objection is that Plaintiffs'

14   RFPs seek information that is irrelevant to the resolution of the merits of Plaintiffs' claim

15   because it goes well beyond ████████████████████████████████

16   ██████████████████████████████████████████

17          Plaintiffs further mischaracterize Apple's objection by arguing that Apple is refusing

18   to "███████████████████████████████████████

19   ████████████████."  *Id.*   That is wrong.   Apple is not refusing to produce responsive

20   documents on ███████████████████████████████████████

21   ██████████; in fact, Apple has already produced such documents.  *See, e.g.*, Samplin Decl.

22   ¶ 10.  Plaintiffs' RFPs are impermissibly overbroad because ████████████████

23   ████████████████████████████████ and therefore are not alleged trade

24   secrets in this case.  This is precisely the type of overbroad discovery that Section 2019.210

25   and the Federal Rules prohibit, because "it is easy to . . . take discovery into the defendants'

26   files, and then cleverly specify what ever [*sic*] happens to be there as having been trade

27   secrets stolen from plaintiff."  *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL

28   8108729, at *2 (C.D. Cal. Sept. 3, 2019) (quoting *Jobscience, Inc. v. CVPartners, Inc.*,

2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014)).

Plaintiffs also rely on *SkinMedica, Inc. v. Histogen Inc.* to argue that Apple may be liable for "unlawfully acquir[ing] and then buil[ding] upon or modif[ying]" their alleged trade secrets.  J.S. 22–23 (quoting 869 F. Supp. 2d 1176, 1197 (S.D. Cal. Apr. 23, 2012)).  But *SkinMedica* merely rejected an argument that a defendant must use every element of a trade secret before being liable for misappropriation.  869 F. Supp. 2d at 1197.  The *SkinMedica* court explained that even if the defendant did not use several elements of the claimed trade secret, that "d[id] not foreclose the possibility that [defendant's] process was not substantially derived from the claimed trade secrets." *Id.*  But here, Plaintiffs' requests go far beyond their alleged trade secrets and seek information about aspects of the Apple Watch that have nothing to do with their allegations of misappropriation.  *SkinMedica* certainly does not stand for the proposition that courts should open the door to discovery that has nothing to do with the alleged trade secrets in a trade secret misappropriation case.

Plaintiffs' reliance on *PMC, Inc. v. Kadisha* is also misplaced.  J.S. 23 (citing 78 Cal. App. 4th 1368, 1383 (2000)).  The California Court of Appeal explained in that case the unremarkable point that using "confidential information in . . . research or development" may qualify as use of a trade secret under the definition of misappropriation. *PMC*, 78 Cal. App. 4th at 1383.  But such "use" must still relate to the alleged trade secrets, and nothing in *PMC* suggests that Plaintiffs are permitted to seek discovery into Apple's "research and development" efforts that are unrelated to their trade secret description.

### b.    RFPs 150, 153–154, 172 (Pulse Oximetry Algorithms)

Plaintiffs' pulse oximetry algorithm-related RFPs fare no better than their heart rate algorithm-relates ones, because they are wildly overbroad and untethered to the alleged trade secrets Apple is accused of misappropriating.

***RFP 150***, which requests *all* documents and things relating "to selection between any pulse oximetry algorithm used in any of the Apple Watch Products," suffers from the same flaw as RFP 64 discussed above:  it is not tied to the alleged ██████████

████████████████████████████████████████████████████████████



1

2

3

4

5

6

7   " *Id.*

8       ***RFP 153***, which seeks "[a]ll documents and things that refer or relate to the

9   operation of any LEDs used to determine oxygen saturation," J.S. 15, not only is untethered

10  to Plaintiffs' alleged trade secrets, but also plainly concerns only the stayed patent case.

11  Plaintiffs again argue that this RFP is relevant

12

13

14

15

16

17

18                                                                              RFP

19  153 is a transparent attempt by Plaintiffs to bypass the stay of the patent case and obtain

20  patent-related discovery.  Specifically, the low power patents asserted by Plaintiffs (U.S.

21  Patent Nos. 8,457,703 and 10,433,776) expressly claim subject matter directly related to

22  "LED timing, duty cycle, current, or power usage."  J.S. 15; *cf.* Plaintiffs' Ex. 26, at 334–

23  35 (¶ 200) (alleging that Apple infringes the '703 patent because the Apple Watch

24  "continuously operate[s] at a lower power consumption level to determine measurement

25  values for heart rate"); *id.* at 339–40 (¶ 215) (alleging that Apple infringes the '776 patent

26  because the Apple Watch operates according to multiple "duty cycle[s]" with different

27  "power consumption").  Plaintiffs may be entitled to this discovery if and when the stay of

28  the patent case is lifted.  But until such time, this RFP is improper.

**RFP 154**, which seeks *all* documents and things relating to *any* testing of *any* Apple Watch product that relates in *any way* to pulse oximetry, J.S. 16, is significantly broader in scope than Plaintiffs' alleged ███████████████████ trade secrets and covers functionality far beyond that to which those alleged trade secrets relate.  Accordingly, Plaintiffs' motion with respect to this RFP should be denied.

**RFP 172**, which requests information concerning the performance and reliability of Apple's pulse oximetry feature, J.S. 17, is similarly removed from Plaintiffs' alleged ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████  Thus, this RFP is also improper.

    c.    **Discovery of Earlier Versions of the Apple Watch Must Relate to Plaintiffs' Alleged Trade Secrets**

Plaintiffs' complaint about earlier versions of the Apple Watch similarly ignores Section 2019.210.  Plaintiffs argue that early versions of the Apple Watch are discoverable, but Apple has never argued otherwise.  Indeed, as Plaintiffs concede, Apple provided for their inspection the source code "sufficient to show the '*relevant operation and functions*'" of *all* versions of the Apple Watch.  J.S. 23 (emphasis added).  Apple's argument is that it should not be required to produce information pertaining to earlier versions of the Apple Watch in response to RFPs that are *not tethered to Plaintiffs' alleged trade secrets*.

Plaintiffs' real goal, as they candidly admit, is to go on a fishing expedition through Apple's files to manufacture claims of misappropriation not related to the alleged trade secrets identified in their Section 2019.210 disclosure.  *Id.* ("Plaintiffs are entitled to engage in discovery to uncover trade-secret misappropriation of which they are not aware.").  Plaintiffs argue that *Perlan* permits such fishing expeditions, but as discussed above, that is false.  *See* Section II.B.2, *supra*.  This Court and the Ninth Circuit have made clear that "[d]iscovery is not to be used for a fishing expedition to investigate mere

speculation." *Mullally v. Havasu Landing Casino*, 2012 WL 13013031, at *1 (C.D. Cal. June 21, 2012) (citing *Calderon v. U.S. Dist. Court for the N. Dist. of Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996)); *see also Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District Courts need not condone the use of discovery to engage in 'fishing expedition[s].'" (citation omitted)). Plaintiffs' reliance on two patent cases in support of their argument is misplaced. Courts in patent cases permit discovery into products comparable to those accused of infringement because such products are relevant to the calculation of *damages* and *licensing* issues. *See Kaneka Corp. v. Zhejiang Med. Co.*, 2016 WL 11266869, at *15 (C.D. Cal. Oct. 18, 2016) (finding that information concerning a related product not accused of infringement "is sufficiently relevant to the damages issues that it is discoverable"); *Fresenius Med. Care v. Holding Inc. v. Baxter Int'l Inc.*, 224 F.R.D. 644, 652–53 (N.D. Cal. 2004) (permitting discovery into "licenses of comparable products" for damages purposes). Plaintiffs do not argue that all information about earlier versions of the Apple Watch is necessary for their calculation of damages in this trade secret case, and nothing about the patent cases Plaintiffs cite suggests that Plaintiffs should be permitted to sift through Apple's files relating to earlier versions of the Watch for information that has nothing to do with the alleged trade secrets they have actually accused Apple of misappropriating—particularly when Apple already made available to Plaintiffs the source code for these earlier versions of the Apple Watch that shows all functionality that *is* related to Plaintiffs' alleged trade secrets.

Plaintiffs next argue that they should be permitted broad discovery into all versions of the Apple Watch because Lamego worked at Apple during development of the original series of the Apple Watch and any documents purportedly "showing Lamego advocated that Apple should implement Plaintiffs' trade secrets would constitute use of Plaintiffs' trade secrets even if Apple did not ultimately incorporate the trade secrets in that version of the" Apple Watch. J.S. 24. The fatal flaw in this argument is that it is divorced from Plaintiffs' discovery requests, each of which require *actual use* of the information *in* or *by* the Apple Watch *products*. *See, e.g.*, J.S. 8–10 (RFP 63–65 seeking information on "any

heart rate algorithm(s) *used in* any of the Apple Watch Products" (emphasis added)); J.S. 12 (RFP 148 seeking information on "the *calculation* of oxygen saturation in any Apple Watch Product" (emphasis added)); J.S. 13–14 (RFP 149–151 seeking information on "any pulse oximetry algorithm *used in* any of the Apple Watch" (emphasis added)); J.S. 15 (RFP 153 seeking information on "the *operation* of any LEDs used to determine oxygen saturation for any Apple Watch Product" (emphasis added)); J.S. 11, 16 (RFP 66 and 154 seeking information on "testing and/or analysis . . . of any Apple Watch *Product* or any *component*" thereof (emphasis added)); J.S. 17 (RFP 172 (seeking information on the "*performance* of the pulse oximetry feature *in* the Apple Watch Series 6" (emphasis added)).[8]  Critically, Plaintiffs have defined Apple Watch Products to mean "smartwatches produced by Apple, including the Original Apple Watch" and "Apple Watch Series [1–6]," Plaintiffs Ex. 3, at 36—i.e., real Apple Watch devices.  Thus, information relating to what Lamego purportedly advocated while at Apple, if not actually incorporated into any version of the Apple Watch, is not responsive to the RFPs at issue on this motion.

Plaintiffs' last argument with respect to the version issue is that they "are entitled to discovery as to changes and comparisons between earlier [W]atches and the Series 4 and later [W]atches." J.S. 24.  But Apple has never argued otherwise, and the source code for the earlier versions of the Apple Watch that Apple made available to Plaintiffs allows them to do just that—to compare earlier and later versions of the Apple Watch.  Again, Apple's objection is and always has been only to the portions of Plaintiffs' discovery requests that go beyond the scope of their alleged trade secrets.  Plaintiffs are not entitled to discovery into changes and comparisons between earlier and later versions of the Apple Watch that are not related to their alleged trade secrets.

---

[8] As explained above, RFP 186 is not in dispute because Apple has already produced technical documents responsive to it.  And although there is also no dispute with respect to RFPs 148–149 and 151, Apple has included them here to show that they *also* require actual use of the requested information in or by the Apple Watch.

### 4.   **Apple Has Not Asserted Improper Boilerplate Objections**

Throughout their portion of this Joint Stipulation, Plaintiffs repeatedly accuse Apple of including improper "boilerplate objections." *See, e.g.*, J.S. 21 (citing *Nguyen v. Lotus by Johnny Dung Inc.*, 2019 WL 4579259, at *3 (C.D. Cal. June 7, 2019)). Plaintiffs' accusations are baseless. A boilerplate objection is one that does not "set[] forth any explanation or argument why the requested documents are not relevant." *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (quoted in *Nguyen*, 2019 WL 4579259, at *3). Apple clearly explained the bases for all of its objections, including its relevance objections. Apple's objections are not improperly general or boilerplate.

*      *      *

In sum, there is no dispute with respect to Plaintiffs' RFPs 148–149, 151, and 186; Apple is producing (or already has produced) responsive documents in its possession, custody, and control, located following a reasonable search. And with respect to RFPs 63–66, 150, 153, 154, and 172, which are overbroad and seek information that is well beyond the scope of their alleged trade secrets in this case, Plaintiffs' motion to compel should be denied. Apple will continue to produce responsive documents within its possession, custody, and control, located following a reasonable search, that relate to the alleged trade secrets in this trade secret misappropriation case.

*[remainder of page left intentionally blank]*

# III.  PLAINTIFFS' RFPS 71-77 AND 83-86

Pursuant to Local Rule 37-2, below is the full text of Plaintiffs' RFPs 71-77 and 83-86, and Apple's response to each request.  The parties' respective points and authorities follow below.

## REQUEST FOR PRODUCTION NO. 71:

Documents sufficient to identify all persons involved in the research, design, and development of any physiological monitoring capability of the Apple Watch Products.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 71:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents.  Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period.  Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it is not limited to the asserted claims of the patents asserted by Plaintiffs in their Complaint.  Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until

Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

## REQUEST FOR PRODUCTION NO. 72:

All documents concerning any changes made to any of the Apple Watch Products' firmware, software, or comments thereto that relate to physiological monitoring.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 72:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the subject matter of the request. Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it is not limited to the asserted claims of the patents asserted by Plaintiffs in their Complaint. Apple expressly preserves its

-48-

objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210— without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

## REQUEST FOR PRODUCTION NO. 73:

All documents concerning any changes made to firmware, software, or comments thereto, between the Apple Watch Series 3 and Apple Watch Series 4 and later.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 73:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the subject matter of the request. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period.  Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because

-49-

it is not limited to the asserted claims of the patents asserted by Plaintiffs in theirComplaint. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210. Nonetheless, basedon this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple willwithhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request, to the extentsuch information exists and is located after a reasonably diligent search.

## REQUEST FOR PRODUCTION NO. 74:

All documents and things that refer or relate to the performance of non-invasive physiological measurements for the Apple Watch Series 3.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 74:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculatedto lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement.  Apple objects to this Request on the grounds that itis overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple

objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it is not limited to the asserted claims of the patents asserted by Plaintiffs in their Complaint. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210— without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 75:**

All documents and things that refer or relate to the performance of non-invasive physiological measurements for the Apple Watch Series 4 and later.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it is not

-51-

limited to the asserted claims of the patents asserted by Plaintiffs in their Complaint. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

## REQUEST FOR PRODUCTION NO. 76:

All documents and things that refer or relate to changes in the performance of non-invasive physiological measurements between the Apple Watch Series 3 and the Apple Watch Series 4.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 76:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the

Accused Products and, in fact, is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it is not limited to the asserted claims of the patents asserted by Plaintiffs in their Complaint. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210— without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

## REQUEST FOR PRODUCTION NO. 77:

All documents and things that refer or relate to changes in the performance of non-invasive physiological measurements between the Apple Watch Series 4 and the Apple Watch Series 5.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 77:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it is not limited to the asserted claims of the patents asserted by Plaintiffs in their Complaint. Apple expressly preserves its

objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210— without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 83:**

All documents and things that refer or relate to the use, effectiveness, capabilities, functionality, or characteristics of the physiological monitoring features of any of the Apple Watch Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple expressly preserves its objection to

producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to other claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210— without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 84:**

Documents sufficient to show any algorithm used to monitor any physiological parameter in any of the Apple Watch Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request as overly broad and unduly burdensome because it is not reasonably limited to the scope of infringement allegations in this litigation. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if

they also relate to *other* claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

## REQUEST FOR PRODUCTION NO. 85:

All documents and things referring or relating to, or otherwise evidencing, factors Apple considered when selecting technology that it used to monitor any physiological parameter, for use in Defendant's products.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 85:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request because it seeks documents related to "Defendant's products," which is undefined and appears to seek documents related to products that are not relevant to this litigation. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this Request as overly broad and unduly burdensome because it is not reasonably limited to the scope of infringement allegations in this litigation. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210.

-56-

Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

### REQUEST FOR PRODUCTION NO. 86:

All documents and things referring or relating to, or otherwise evidencing, the parameters by which Defendant or its customers evaluates the performance of physiological parameter monitoring technology.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 86:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome because it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement.  Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this Request as overly broad and unduly burdensome because it is not reasonably limited to the scope of infringement allegations in this litigation. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17,

June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple is willing to meet and confer regarding the scope of this Request.

## A.   Plaintiffs' Position

RFPs 71-77 and 83-86 seek technical information that is directly at issue in this case. RFP 71 seeks documents sufficient to identify individuals involved in research and development for the Apple Watch, which is obviously relevant in this technical trade secret case. RFPs 72-77 seek documents about changes made to the physiological monitoring features of the Apple Watch and performance of physiological monitoring features. RFP 84 seeks documents sufficient to show Apple's physiological monitoring algorithms. RFPs 83 and 85-86 seek documents about the effectiveness of Apple's physiological monitoring, and factors Apple or its customers consider when selecting physiological monitoring parameters. As discussed in more detail above, Plaintiffs' trade secrets at issue in this case involve various physiological monitoring techniques. *See* Section II.A.1, *supra*. The documents sought by these RFPs are directly relevant to Plaintiffs' allegations that Apple used Plaintiffs' trade secrets to improve the physiological monitoring features in the Series 4 and later Apple Watches. Ex. 26, ¶¶ 25, 238. The documents are also relevant to damages because they show the importance of monitoring technology and the emphasis that Apple and its customers put on accuracy. *Id.* ¶¶ 256, 260. The RFPs are proportional to the needs of the case for the same reasons discussed above. Among other things, these RFPs seek directly relevant information, the amount in controversy is high, and Apple cannot claim it lacks resources to search because it is the most valuable public company on earth.

Apple's written responses included pages of boilerplate objections. Such "general or boilerplate objections" are improper. *Nguyen*, 2019 WL 4579259, at *3. During the meet and confer, Apple raised a handful of objections to limit its production. Ex. 24. Apple

argued RFP 86 is overbroad because it seeks information about all versions of the watch rather than just versions specifically accused of misappropriating Plaintiffs' trade secrets. *Id.* Apple also stated it will produce documents "only to the extent they relate to the alleged trade secrets in Plaintiffs' Section 2019.210 disclosure" (*Id.* at 8-9), which Apple plans to unilaterally decide itself.  Apple also attempted to limit RFPs 74 and 86 by agreeing to produce only "source code for the earlier versions of the Apple Watch (e.g., the Original Apple Watch through the Apple Watch Series 3) for the relevant operation and functions of the Apple Watch." *Id.* at 9.  Those objections and limitations lack merit for the same reasons discussed above. *See* Section II.A.2.a, Section II.A.2.b, & Section II.A.2.c, *supra*.

Apple also argues RFPs 71, 72, 74-77, and 83-85 are overbroad because they request information about "physiological monitoring," which Apple claims "may encompass features and technologies that are not relevant to any issues in this case." Ex. 24 at 8.  The term "physiological monitoring" appropriately limits these RFPs to exclude features of the Apple Watch that are not at issue, such as the clock and calendar.  This is also a common term that the parties have used to target relevant issues in other aspects of this case.  For example, the protective order requires experts to identify work in "non-invasive *physiological monitoring* technologies."  Dkt. 67 at 14.  The prosecution bar similarly refers to "non-invasive monitoring." *Id.* at 17.

Apple has also agreed that the term "physiological monitoring" appropriately narrows the scope of other RFPs in this case. *See* Ex. 17 at 2 (Apple agreeing to limit RFPs 214 and 215 to "Apple implementing any physiological monitoring products"); Ex. 21 at 2 and 4 (Apple suggesting the parties limit RFPs 207, 244, and 246 to "physiological monitoring").  Apple also used the same term in its own RFPs to Plaintiffs just a few weeks ago. *See, e.g.*, Ex. 30 at RFP 132 ("All Documents reflecting Your efforts to track Apple's development and marketing of any non-invasive *physiological monitoring* technology"), *id. at* RFP 133 ("All of Your draft and published technical bulletins and whitepapers relating to non-invasive *physiological monitoring* technology").  Even if "physiological monitoring" includes some parameters not directly at issue here, discovery on those other

parameters is relevant to damages because it shows the value Apple places on performance and accuracy.  Such evidence is relevant to show the value and importance that Apple placed on acquiring Plaintiffs' technology.

Accordingly, Apple has not shown why discovery should be limited.  The Court should overrule Apple's objections and order Apple to produce all responsive documents.

**B.**   **Apple's Position**

Apple already agreed to produce documents responsive to Plaintiffs' RFPs 71–77 and 83–86 to the extent they relate to Plaintiffs' alleged trade secrets.  In moving to compel more in response to these RFPs, Plaintiffs admit that the requests go well beyond their alleged trade secrets.  Accordingly, these RFPs are overbroad—and, in turn, not relevant or proportional to the needs of this case—at least for the reasons explained in Sections II.B.2.a–.b.[9]

These requests are also overbroad for the related reason that "physiological monitoring"—as Plaintiffs are using that term—goes far beyond the issues in this case.  This term would, for example, include the Apple Watch's electrocardiogram (ECG) functionality, which measures the timing and strength of the electrical signals comprising a person's heartbeat.  *See generally* Plaintiffs' Ex. 32, at 642–43.  This functionality is unrelated to calculating heart rate or ███████ using LEDs (or any form of light emitters), and thus has nothing to do with any of the issues in this case.  Plaintiffs acknowledge as much in this Joint Stipulation, distinguishing the Apple Watch's ECG functionality (for which they are not alleging misappropriation) and heart rate functionalities (for which they are alleging misappropriation).  *See* J.S. 86.  But measuring the timing and strength of a person's heartbeat plainly qualifies as "physiological monitoring," and therefore documents related to the Apple Watch's ECG functionality would be covered by Plaintiffs' RFPs.  As another example, Plaintiffs' use of the term

---

[9]  For the reasons discussed above in Section II.B.5, Apple's objections to these requests are also not improper boilerplate objections.

"physiological monitoring" would encompass the accelerometer functionality in the Apple
Watch used to determine whether a person is moving, even though that functionality also
has nothing to do with any issues in this case (as Plaintiffs themselves have conceded
during meet and confers).  Rule 26 does not permit Plaintiffs such expansive discovery into
every unrelated facet of Apple's technology.

Plaintiffs' arguments to the contrary make no sense.  On one hand, Plaintiffs assert
that "physiological monitoring" is "a common term that the parties have used to target
*relevant* issues," and argue that Apple has used this term in its own requests and to limit
other RFPs.  J.S. 59.  On the other hand, Plaintiffs admit that their requests use that term
in a way that "includes some parameters not directly at issue here."  *Id.*  The disconnect
stems from the fact that Plaintiffs—unlike Apple—are not using this term *as limited by the
issues in this case*.  To be clear, Apple has consistently used the term "physiological
monitoring" to refer to the specific physiological monitoring functionalities that are related
to Plaintiffs' alleged trade secrets and are thus at issue in this case.  Apple has never agreed
that "physiological monitoring" may refer to other, unrelated functionalities simply
because they could monitor a person's physiological parameters in some way.  Although
Plaintiffs half-heartedly argue that discovery into such unrelated features is somehow
relevant to damages and to the purported "value and importance that Apple placed on"
supposedly acquiring Plaintiffs' alleged trade secrets,[10] they do not explain how that is the
case—because it is not.  Discovery into technology *unrelated* to Plaintiffs' alleged trade
secrets cannot possibly evidence Apple's efforts to acquire the alleged trade secrets or
damages concerning any alleged misappropriation of those alleged trade secrets.  Plaintiffs
cannot allege trade secret misappropriation of specific aspects of a product and then get

---

[10] Plaintiffs' attempt to supply relevance based on the purported "value and importance" to
Apple of any physiological parameter should also be rejected for the simple reason that
Plaintiffs can make that argument with respect to any functionality of the Apple Watch,
regardless of whether it has anything to do with this case.  The only purported "value and
importance" relevant here is that tied to Plaintiffs' alleged trade secrets.

discovery about other, unrelated aspects of the product—by simply pointing to the common product.  That defeats the very purposes of Rule 26 and Section 2019.210.

Moreover, RFP 73 is not even limited to physiological monitoring, but rather requests "[a]ll documents concerning *any* changes made to firmware, software, or comments thereto, between the Apple Watch Series 3 and Apple Watch Series 4 and later." J.S. 47.  RFP 73 therefore would cover *any* software update made to the Apple Watch— and there are thousands of such updates—even if it concerned software for functionalities completely unrelated to anything at issue in this case, such as, for example, "the clock and calendar" apps mentioned by Plaintiffs.  J.S. 59.  Plaintiffs are not entitled under Rule 26 to such unbounded discovery.  *See Liberty Ins.*, 2013 WL 12140335, at *2.  Plaintiffs' motion to compel should be denied with respect to all of the RFPs at issue in this section of the motion.

[*remainder of page left intentionally blank*]

## IV.  **PLAINTIFFS' RFP NOS. 97 AND 100**

Pursuant to Local Rule 37-2, below is the full text of Plaintiffs' RFPs 97 and 100, and Apple's response to each request.  The parties' respective points and authorities follow below.

### **REQUEST FOR PRODUCTION NO. 97:**

All documents and things that refer or relate to any comparison between any Masimo or Cercacor product or technology and any of the Apple Watch Products.

### **RESPONSE TO REQUEST FOR PRODUCTION NO. 97:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210— without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple responds that this Request is overly

broad but is willing to meet and confer as part of the ESI negotiation process
to reach an agreement with Plaintiffs on custodians and search terms
applicable to this Request.

**REQUEST FOR PRODUCTION NO. 100:**

All documents and things that relate to any comparison of any of the
Apple Watch Products to any of the Masimo or Cercacor products or
technologies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

Apple incorporates by reference its General Objections and Objections
to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and
things protected from discovery by the attorney-client privilege, the work-
product doctrine, the common interest privilege, and/or any other applicable
privilege, immunity, or protection. Apple objects to this Request as overbroad
and unduly burdensome to the extent it seeks information neither relevant to
the issues in the present action nor reasonably calculated to lead to the
discovery of admissible evidence. Apple objects to this Request to the extent
it seeks documents related to products that are not relevant to this litigation or
documents related to products Plaintiffs have not identified in their Complaint
or otherwise accused of infringement. Apple objects to this Request as vague,
ambiguous, overly broad, and unduly burdensome because it uses the
undefined phrase "Masimo or Cercacor products or technologies." Apple
objects to this Request as overbroad and unduly burdensome because it is not
limited to the publicly released Apple Watch Series 3-5 devices identified and
alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents.
Apple objects to this Request as overbroad and unduly burdensome to the
extent it requests information predating the release of the Accused Products
and, in fact, is not limited to any relevant time period. Apple expressly preserves
its objection to producing any documents or things that relate to Plaintiffs'
trade secret misappropriation claim, even if they also relate to *other* claims,
until Plaintiffs comply with Section 2019.210. Nonetheless, based on this
Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple
will withhold only documents or things that relate solely to Plaintiffs' trade
secret misappropriation claim until Plaintiffs comply with Section
2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific
Objections and under the provisions of the Protective Order and ESI
Stipulation entered in this case, Apple agrees to produce documents responsive

to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

## A.   **Plaintiffs' Position**

RFPs 97 and 100 seek comparisons between Plaintiffs' products or technology and the Apple Watch.  Documents showing Apple's comparisons to Plaintiffs' technology are relevant to showing Apple's desire to obtain and use Plaintiffs' technology.  Such documents could also show Apple's knowledge that it was using Plaintiffs' technology—an issue that Apple has hotly contested.  *See, e.g.*, Dkt. 237-1 at 15 (Apple arguing Plaintiffs failed to adequately allege "Apple knew or had reason to know" it was acquiring Plaintiffs' trade secrets from Plaintiffs' former employees).  The requested documents would also be relevant to showing the importance of Plaintiffs' technology and Apple's willful misappropriation of trade secrets, which are relevant to damages, enhanced damages, and attorneys' fees.  *See* Cal. Civ. Code § 3426.3.  The RFPs are proportional to the needs of the case for the same reasons discussed above.  Among other things, these RFPs seek relevant information, the amount in controversy is high, and Apple cannot claim it lacks resources to search because it is the most valuable public company on earth.

Apple's written responses included pages of boilerplate objections.  Such "general or boilerplate objections" are improper.  *Nguyen*, 2019 WL 4579259, at *3.  During the meet and confer, Apple appeared to drop all of its objections.  *See* Ex. 24 at 9.  However, Apple stated it will produce only "documents responsive to these [requests] to the extent they relate to the alleged trade secrets in Plaintiffs' Section 2019.210 disclosure . . . ."  *Id.*  Because Apple appears to have dropped all of its objections, Apple cannot unilaterally limit its commitment to produce documents.  *See Kilroy*, 2018 WL 6071089, at *1.

Apple's Section 2019.210 limitation also lacks merit for the reasons discussed above.  *See* Section II.A.2.c, *supra*.  Apple's limitation would permit it to unilaterally withhold vast and unknown information if *Apple* determines the information in a particular document is not directly relevant to Plaintiffs' Section 2019.210 statement.  As discussed, permitting such a unilateral decision of relevance would be extremely prejudicial,

particularly because Apple has already indicated that it has a very narrow view of relevance in this case.  Apple's limitation would also allow it to withhold evidence showing it misappropriated other trade secrets of which Plaintiffs are not yet aware.  That would be improper.  *See Perlan Therapeutics*, 178 Cal. App. 4th at 1350.

Accordingly, Apple has not shown why discovery should be limited.  The Court should overrule Apple's objections and order Apple to produce all responsive documents.

**B.**   **Apple's Position**

Apple already agreed to produce documents responsive to Plaintiffs' RFPs 97 and 100 to the extent they relate to Plaintiffs' alleged trade secrets.  These RFPs are overbroad because they go well beyond the alleged trade secrets identified in Plaintiffs' Section 2019.210 disclosure—and therefore are not relevant or proportional.

The following example illustrates the problem.  Masimo developed an app for the iPhone called "Masimo Personal Health," which integrates with Masimo's pulse oximetry devices to provide various physiological information measured by its own device.  Samplin Decl. Ex. L.  This app is not implicated in this case in any way.  *See id.*  However, if, hypothetically, Apple had investigated whether Plaintiffs' app could also run on the Watch in addition to the iPhone, such a comparison would arguably fall under the broad scope of Plaintiffs' RFPs 97 and 100, even though it would have no relevance to this case at all.  As another example, if Apple had, hypothetically, compared the accuracy of the clock on Plaintiffs' device to the time displayed on the Apple Watch, that comparison would not implicate any of Plaintiffs' alleged trade secrets.  Nonetheless, such a comparison would be covered by Plaintiffs' RFPs 97 and 100.

These examples are merely hypotheticals, but they illustrate how far these discovery requests exceed the scope of Plaintiffs' alleged trade secrets.  Accordingly, there requests are overbroad and irrelevant at least for the reasons explained in Sections II.B.2-3, *supra*.  As with Apple's other objections, its objections to these requests are also not improper boilerplate objections.  *See* Section II.B.4, *supra*.  Apple already explained to Plaintiffs that it will produce documents responsive to RFPs 97 and 100 to the extent they relate to the

alleged trade secrets identified in Plaintiffs' Section 2019.210 disclosure.   Plaintiffs' motion to compel more in response to these RFPs should be denied.

*[remainder of page left intentionally blank]*

## V.  PLAINTIFFS' RFPS 128, 129, 184, 196

Pursuant to Local Rule 37-2, below is the full text of Plaintiffs' RFPs 128, 129, 184, and 196, and Apple's response to each request.  The parties' respective points and authorities follow below.

### REQUEST FOR PRODUCTION NO. 128:

All communications between Defendant and Plaintiffs referring or relating to subject matter disclosed or claimed in the Disputed Patents.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 128:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks documents not within Apple's possession, custody, or control. Apple objects to this Request because it seeks "all communications," which will be negotiated and produced pursuant to the ESI Order in this case. Apple objects to this Request to the extent it requires Apple to draw a legal conclusion in order to respond. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information already in Plaintiffs' possession, custody, or control. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to other claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections, Apple is willing to meet and confer regarding the scope of this Request.

### REQUEST FOR PRODUCTION NO. 129:

All communications between Defendant and any individual who previously worked for Plaintiffs referring or relating to subject matter disclosed or claimed in the Disputed Patents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 129:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks documents not within Apple's possession, custody, or control. Apple objects to this Request because it seeks "all communications," which will be negotiated and produced pursuant to the ESI Order in this case. Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple objects to this Request to the extent it requires Apple to draw a legal conclusion in order to respond. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information already in Plaintiffs' possession, custody, or control. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to other claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections, Apple is willing to meet and confer regarding the scope of this Request.

**REQUEST FOR PRODUCTION NO. 184:**

All documents and things that refer or relate to Apple implementing any of the technique(s) described in U.S. Patent Nos. 10,219,754 and 9,952,095 in any of Apple's products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 184:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence and is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, including because it uses the undefined phrase "technique." Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things"relating to the subject matter of the Request.

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.  Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section 2019.210, Apple will amend its response to this Request, to the extent necessary.

**REQUEST FOR PRODUCTION NO. 196:**

All documents and things that refer or relate to Apple implementing any of the technique(s) described in U.S. Patent Nos. 9,723,997 and 10,524,671 in any of Apple's products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 196:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence and is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, including because it uses the undefined phrase "technique." Apple objects to this Request on the

grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the Request.

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time. Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section 2019.210, Apple will amend its response to this Request, to the extent necessary.

## A.   **Plaintiffs' Position**

Plaintiffs' RFPs seek information about the "Disputed Patents," which is defined to include the Apple patents and patent applications that are the subject of Plaintiffs' correction of inventorship / ownership claims.  RFPs 128 and 129 seek communications between Defendant and Plaintiffs or Plaintiffs' former employees relating to the subject matter disclosed or claimed in the Disputed Patents.[11]  RFPs 184 and 196 seek documents about Apple implementing techniques described in four of the Disputed Patents (the '750, '095, '997, and '671 Patents), which Plaintiffs contend contain Plaintiffs' trade secrets.  Such RFPs are relevant and proportional to the needs of the case.  Such documents are relevant, for example, to Plaintiffs' correction of inventorship / ownership claims because they would show where subject matter disclosed in those patents originated.  The requested documents are also relevant to Plaintiffs' trade secret claims because they would show whether one of Plaintiffs' former employees disclosed subject matter to Apple.  The RFPs are proportional to the needs of the case for the same reasons discussed above.  Among

---

[11] Apple may argue Plaintiffs should already possess documents responsive to RFP 128, which concerns communications between Plaintiffs and Apple.  Even if such communications are present in Plaintiffs' files somewhere, Apple should still produce copies of communications because Plaintiffs may not be aware of all such communications. For example, Apple may have obtained information from Plaintiffs' employees without Plaintiffs themselves knowing the exchange occurred.

other things, these RFPs seek directly relevant information, the amount in controversy is high, and Apple cannot claim it lacks resources to search because it is the most valuable public company on earth.

Apple's written responses included pages of boilerplate objections.  Such "general or boilerplate objections" are improper.  *Nguyen*, 2019 WL 4579259, at *3.  During the meet and confer, Apple appeared to drop all of its objections except its objection that the RFPs are "overbroad and unduly burdensome to the extent the RFPs seek documents that are not relevant to the claims or defenses in this case."  *See* Ex. 24 at 6.  Based on that objection, Apple states it will produce only narrow subsets of responsive documents that refer or relate to "subject matter ***claimed***" in the Disputed Patents and implementation of the "***claimed*** inventions" of certain patents.  *Id.* at 6.  Apple thus seeks to withhold all documents about subject matter ***disclosed***—but not claimed—in the Disputed Patents.

Apple's objection and limitation lack merit.  While the ultimate ***merits*** of an inventorship claim are determined with respect to the claimed subject matter, the scope of discovery is not limited to smoking gun documents that would prove the merits of a claim or even documents that would be admissible in evidence.  *See* Fed. R. Civ. P. 26. Documents discussing subject matter disclosed in the disputed patents are relevant to provide important context as to who developed what portion of the disputed patents.  That is true even if the documents themselves do not directly resolve the question of who invented the claimed subject matter.[12]  Moreover, Apple's unilateral limitation would permit it to withhold any document that Apple itself determines does not pertain to the

---

[12] Apple previously moved to compel on an interrogatory seeking Plaintiffs' contentions as to precisely what in each patent was developed by Plaintiffs' employees.  Plaintiffs argued that Apple's request was overbroad and sought irrelevant information because inventorship is determined with respect to the claimed subject matter.  Dkt. 288-1 at 26. Apple's request for ***contentions*** is not the same as Plaintiffs' request for ***documents*** concerning the subject matter of Apple's patents, which may provide relevant discovery under the correct standard for inventorship.

claimed subject matter.  Similar to Apple's Section 2019.210 limitation, permitting Apple to make such unilateral determinations of relevance is inappropriate because Apple has already shown it has an unduly narrow view of "relevance."  *See* Section II.A.2.c, *supra*.

Moreover, the requested information is also directly relevant to Plaintiffs' trade secret that Apple Apple used and disclosed Plaintiffs' trade secrets by incorporating them into Apple's patents.  To prevail on a trade secret claim, Plaintiffs need only prove improper use or disclosure—not that material was actually claimed in Apple's patent.  Thus, information about subject matter that was disclosed but not claimed in Apple's patents is directly relevant to Plaintiffs' trade secret claim.

Accordingly, Apple has not shown why discovery should be limited.  The Court should overrule Apple's objections and order Apple to produce all responsive documents.

**B.**  **Apple's Position**

RFPs 128 and 129 seek communications regarding the "Disputed Patents," which are the Apple patents and patent applications that are the subject of Plaintiffs' correction of inventorship and ownership claims.  J.S. 68-69.  RFPs 184 and 196 seek documents regarding a particular subset of the Disputed Patents (the '754, '095, '997, and '671 Patents).  *Id.* at 69-70.  In addition to its inventorship and ownership claims, Plaintiffs contend that the subset of Disputed Patents in RFPs 184 and 196 disclose Plaintiffs' trade secrets.  J.S. 71.

Correction of inventorship/ownership is a *claim*-specific inquiry.  Indeed, in opposing Apple's motion to compel an identification of each alleged inventor's alleged contribution to the patents by "column and line number" of the specification, Plaintiffs argued that such information "is irrelevant because inventorship is based on the ***claims***, not the specification."  Samplin Decl. Ex. E, at 93, 107 (Dkt. 288-1 at 12, 26) (citing *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1376 (Fed. Cir. 2020)).  Here, Apple agreed to produce documents responsive to these RFPs to the extent they refer or relate to subject matter *claimed* by the claims of the Disputed Patents to which Plaintiffs allege the Alleged Inventors contributes.  Despite Plaintiffs' prior position that information related the claims

is all that is relevant, Plaintiffs rejected Apple's proposal.  Plaintiffs' argument that discovery into the *disclosed* subject matter of the Disputed Patents is "relevant to provide important context as to who developed what portion of the disputed patents," J.S. 72, makes little sense, because it is *irrelevant* who developed any subject matter that is disclosed but *unclaimed*.  Yet Plaintiffs now attempt to distinguish their previous arguments by differentiating (without providing any substantiation or case law support) between a request for *contentions* versus requests for *documents*.  This is a distinction without a difference.

The overbreadth of these RFPs is clear upon analysis of the unclaimed subject matter in the Disputed Patents.  For example, the '052 Patent specification discloses a "health monitoring device" that can be "a smart phone, a gaming device, a digital music player, a sports accessory device," etc.  Samplin Decl. Ex. M at 187 ('052 Patent at 5:52–57).  In effect, this would require Apple to produce all communications referring or relating to health monitoring in *any* device, including the iPhone, iPad, and iPod, in addition to any unreleased or prototype devices, which are not at issue in this case.  By contrast, the *claimed* subject matter of the '052 Patent relates to a particular electronic device, sensor system, and method of optical sensing that each include specific electronic components and/or processes (i.e., amplifiers, filters, etc.).  *Id.* at 185 ('052 Patent at 1:16–18, 1:42–2:47).  Discovery should be limited to these claimed features, which are the features that are at issue in resolving Plaintiffs' correction of inventorship/ownership allegations related to the Disputed Patents.

Plaintiffs' argument that RFPs 128–129 seek communications that are "relevant to Plaintiffs' trade secret claims because they would show whether one of Plaintiffs' former employees disclosed subject matter to Apple" is misplaced.  J.S. 71.  These RFPs are not limited to Plaintiffs' alleged trade secrets because they seek *all* communications concerning the subject matter of these patents.  Critically, Plaintiffs have refused to inform Apple of all locations in these patents where they claim their alleged trade secrets are disclosed.  The only information on this topic Plaintiffs have supplied to date is their

1   allegations in the Fourth Amended Complaint identifying portions of ███████████
2   ████████████████████████████████████████████████████████████████
3   ████████████████████████████████████████████████████████████████
4   ████████████████████████         But RFPs 128–129 are not limited to these portions of these
5   three patents—as Plaintiffs candidly admit, *see* J.S. 71 (seeking discovery into *all* Disputed
6   Patents)[13]—and therefore are impermissibly overbroad.
7           Regarding RFPs 184 and 196, Plaintiffs contend that the enumerated subset of the
8   Disputed Patents therein disclose Plaintiffs' alleged trade secrets.  However, these RFPs
9   are overbroad to the extent they request documents relating to any of the "technique(s)"
10  disclosed in the patents, including "technique(s)" that are wholly unrelated to Plaintiffs'
11  alleged trade secrets as identified in Plaintiffs' Section 2019.210 disclosure.  J.S. 71. ███
12  ████████████████████████████████████████████████████████████████
13  ████████████████████████████████████████████████████████████████
14  ████████████████████████████████████████████████████████████████
15  ████████████████████████         For at least this reason, in addition to the
16  reasons explained in Section II.B above, RFPs 184 and 196 should be limited to the
17  "technique(s)" described in Plaintiffs' Section 2019.210 disclosure—the techniques
18  Plaintiffs have actually accused Apple of misappropriating.

*[remainder of page left intentionally blank]*

---

[13] Plaintiffs refer to a ███████████ J.S. 71.  Apple assumes this is a typographical error and Plaintiffs meant to refer to the ███████ because there is no ███████ at issue in this case.

-75-

# VI.  PLAINTIFFS' RFP NOS. 242 AND 243

Pursuant to Local Rule 37-2, below is the full text of Plaintiffs' RFPs 242 and 243, and Apple's response to each request.  The parties' respective points and authorities follow below.

## REQUEST FOR PRODUCTION NO. 242:

All draft and filed patent applications that refer or relate to physiological monitoring technology.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 242:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence and is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, including because it uses the undefined phrase "physiological monitoring technology."

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time. Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section 2019.210, Apple will amend its response to this Request, to the extent necessary.

## REQUEST FOR PRODUCTION NO. 243:

All patent applications that refer or relate to physiological monitoring technology and as to which Apple has or intends to submit a request for nonpublication.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 243:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence and is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, including because it uses the undefined phrase "physiological monitoring technology."

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.  Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section 2019.210, Apple will amend its response to this Request, to the extent necessary.

## A. **Plaintiffs' Position**

RFPs 242 and 243 seek copies of Apple's patent applications that have not yet issued and refer or relate to physiological monitoring technology.  The RFPs are highly relevant to this case because Plaintiffs allege that Apple misappropriated Plaintiffs' trade secrets by publishing them in patent applications.  *See e.g.,* Ex. 26 ¶¶ 231-233, 235-236, 243-244.  Plaintiffs previously moved for a preliminary injunction based on Apple publishing some of Plaintiffs' trade secrets in patent applications.  Dkt. 116 at 1.  Plaintiffs requested the Court prohibit Apple from publishing other applications without providing advance warning to Plaintiffs.  *Id.*  Judge Selna determined that Plaintiffs were ***likely to succeed*** on the merits of proving their trade secret claim with respect to the information Apple already disclosed in patent applications.  Ex. 29 at 7, 9, 10.  However, the Court denied the preliminary injunction on the basis that Plaintiffs had not shown it was "likely" that Apple would publish additional trade secrets in any particular patent application.  *Id.* at 11.  The only way Plaintiffs will be able to show it is "likely" that Apple would publish additional trade secrets in patent applications is if Apple produces those patent applications in

discovery before the applications publish.  These RFPs are therefore highly relevant and proportional to the needs of the case.

Apple's written responses included pages of boilerplate objections.  Such "general or boilerplate objections" are improper.  *Nguyen*, 2019 WL 4579259, at *3.  During the meet and confer, Apple appeared to drop all of its objections except its objection that RFP 242 is "overbroad to the extent it seeks draft patent applications" and RFP 243 is "overbroad to the extent it seeks patent applications for which Apple has submitted or intends to submit a request for non-publication."  Ex. 24 at 8.  Apple argued the RFPs are "not tailored to the claims or defenses at issue in this case and Plaintiffs have not articulated their purported relevance."  *Id.*

Apple's objection lacks merit.  As discussed above, the RFPs seek information that is directly relevant to Plaintiffs' trade secret claims.  Draft patent applications are important to showing the relative contributions by each individual, including Plaintiffs' former employees.  Patent applications that Apple asked to remain unpublished are relevant to Plaintiffs' trade secret claims for the reasons discussed above.  Apple's attempt to prevent discovery of all applications that have not published would rob Plaintiffs of the opportunity to show it is likely that Apple will published additional trade secrets.  As Apple's own cited authority explained, "the loss of trade secrets cannot be measured in money damages because a trade secret once lost is ***lost forever***."  *Super Chefs, Inc. v. Second Bite Foods, Inc.*, 2015 WL 12914441, at *5 (C.D. Cal. June 11, 2015).  Indeed, by the time Apple adds its portion of this joint stipulation and the parties file this Motion, Apple will have filed a motion to de-designate some of Plaintiffs' trade secrets by arguing ***Apple's own publication*** forever destroyed the trade secret.  The minimal burden in Apple producing unpublished patent applications is far outweighed by the possibility that Apple publishes additional trade secrets belonging to Plaintiffs.

Apple has previously argued it has a "statutory right to keep its pending patent applications secret (*see* 35 U.S.C. § 122(b)(2)(B)), and the standard for seeking discovery on pending patent applications is correspondingly heightened."  Dkt. 139-1 at 22.  But

Apple merely cited garden variety patent cases.  *See ICU Med., Inc. v. B.Braun Med., Inc.*, 224 F.R.D. 461, 462 (N.D. Cal. 2002) (denying motion to compel production of "all pending patent applications that claim priority to, make reference to, or are otherwise related to the patents-in-suit, including their prosecution histories"); *Ideal Toy Corp. v. Tyco Indus., Inc.*, 478 F. Supp. 1191, 1192 (D. Del. 1979) (denying patent defendant's motion to compel production of file wrappers of abandoned and pending patent applications to determine if they contained information that would "reflect adversely on the validity of the patents in suit"); *see also Wolowitz v. United States*, 1975 WL 21125, at *1 (Ct. Cl. 1975) (explaining "the relevancy of a pending patent application to this particular lawsuit has not been adequately shown").  Apple cited no authority supporting its request to limit such discovery in a trade secret case alleging misappropriation based on patent publications.

Moreover, Apple's own cited authority explained that the secrecy requirements of 35 U.S.C. § 122 are "not applicable to the United States District Court."  *See Ideal Toy*, 478 F. Supp. at 1192-93.  The *Ideal Toy* case also cited several authorities that ***did*** order production of pending patent applications where a protective order limited their disclosure to attorneys' eyes only.  *See id.* at 1193 (citing *Scovill Manufacturing Co. v. Sunbeam Corp.*, 61 F.R.D. 598, 602 (D. Del. 1973); *Celanese Corp. v. E. I. duPont de Nemours & Co.*, 58 F.R.D. 606, 611 (D. Del. 1973); *Crown Machine & Tool Co. v. KVP-Sutherland Paper Co.*, 244 F. Supp. 543, 544 (N.D. Cal. 1965)).  Such is the case here, where the Protective Order already provides that Apple can produce the applications as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  *See* Dkt. 67 ¶ 4.4.  Apple has not shown why discovery should be limited.  The Court should overrule Apple's objections and order Apple to produce all responsive documents.

**B.**   **Apple's Position**

RFPs 242 and 243 seek Apple's draft and filed patent applications that refer or relate to *any* physiological monitoring technology, including those for which Apple has or intends to submit a request for nonpublication.  J.S. 76–77.  These RFPs are overbroad at least to

the extent they seek information about physiological monitoring technologies that are not related to the alleged technical trade secrets identified in Plaintiffs' Section 2019.210 disclosure. *See* Section II.B, *supra*. In addition, these RFPs are not limited to patent applications listing Plaintiffs' former employees as inventors, and therefore are not tailored to Plaintiffs' purported efforts to learn the relative contributions of Plaintiffs' former employees, J.S. 77. Indeed, the preliminary injunction Plaintiffs previously sought (which was denied) requested the prevention of publication of only those patent applications naming Plaintiffs' former employees as inventors. *See* Samplin Decl. Ex. A, at 7 (Dkt. 108-1). Thus, even Plaintiffs' justification for these RFPs—to obtain discovery that might buttress their previously requested preliminary injunction, J.S. 76–77—exposes their overbreadth.

Notably, Plaintiffs admit that these RFPs reflect nothing more than a fishing expedition to try and uncover evidence to "be able to show it is 'likely' that Apple would publish additional trade secrets in patent applications"—i.e., what Judge Selna held that they could not show in connection with their motion for a preliminary injunction. Section VI.A, *supra*. Plaintiffs' request for a preliminary injunction on this topic was denied. They should not be permitted to propound speculative RFPs to sift through Apple's files in an effort to manufacture cause for an injunction now. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"). Plaintiffs do not cite *any* authority for a contrary proposition.

Critically, the burden of responding to such overbroad requests is particularly acute here. Apple is widely considered to be the number one innovative company in the world, and accordingly files a very large number of patents applications. Moreover, these requests seek patent applications concerning "physiological monitoring," and given Plaintiffs' broad reading of the term "physiological monitoring" (and their admission that this term "includes some parameters not directly at issue" in this case), *see* J.S. 59–60, there could be potentially thousands of patent applications responsive to these RFPs. The burden on

Apple if it were required to review each one to determine its relevance to Plaintiffs' alleged trade secrets would plainly be disproportional to the needs of this case.

Accordingly, Plaintiffs' motion with respect to RFPs 242 and 243 should be denied. At a minimum, RFPs 242 and 243 should be limited to patent applications that both:  (1) are related to the specific technologies described in Plaintiffs' Section 2019.210 disclosure, *and* (2) list Plaintiffs' former employees as inventors.

[*remainder of page left intentionally blank*]

# VII.  PLAINTIFFS' INTERROGATORIES 7-8

Pursuant to Local Rule 37-2, below is the full text of Plaintiffs' Interrogatories 7 and 8, and Apple's response to each request.  The parties' respective points and authorities follow below.

## INTERROGATORY NO. 7:

Describe in detail, with reference to any supporting documents, information, and materials, the design and development of each Apple Watch Product, including without limitation, when and where the product is and/or was developed (including third party facilities), when and where each product was first released to market, a detailed description of when and why each design change, modification, and improvement concerning physiological monitoring was made between each series of the Apple Watch, a detailed description of the complete development of physiological monitoring capabilities used in the Apple Watch Products, the identity of any competitive products examined, analyzed or tested in connection with its design or development, each person or entity involved in designing and developing the Apple Watch Products, and what role each person or entity had in creating the Apple Watch Products.

## RESPONSE TO INTERROGATORY NO. 7 (AUGUST 17, 2020):

Apple hereby restates and incorporates the General Objections above as though fully set forth herein. Apple objects to this Interrogatory to the extent it seeks information or things protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege, immunity, or protection. Apple objects to this Interrogatory as overly broad and unduly burdensome in that it seeks information related to technical features that are not relevant to this litigation. Apple objects to this Interrogatory to the extent it seeks information related to products that are not relevant to this litigation, which Masimo has not identified in its Complaint or otherwise accused of infringement. Apple objects to this Interrogatory as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Interrogatory as overly broad and unduly burdensome because it is not reasonably limited to the scope of infringement allegations in this litigation. Apple objects to this Interrogatory as overbroad and unduly burdensome as it is not limited to any relevant time period. Apple objects to this Interrogatory as improper as it calls for a narrative. Apple objects to this Interrogatory to the extent it is compound and comprises discrete subparts, and asserts that each subpart of each

compound Interrogatory counts separately toward the discovery limits set forth in the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Central District of California.

Subject to and without waiving the foregoing General and Specific Objections, Apple responds as follows:  The Apple Watch Series 3, 4, and 5 products were developed in Cupertino, California. The Apple Watch Series 3 was first released to market on September 22, 2017. The Apple Watch Series 4 was first released to market on September 21, 2018. The Apple Watch Series 5 was first released to market on September 20, 2019. For a detailed description of the complete development of physiological monitoring capabilities used in the Apple Watch Products, Apple directs Plaintiffs to https://www.apple.com/newsroom/2017/09/apple-watch-series-3-features-built-in-cellular-and-more/, https://www.apple.com/newsroom/2018/09/redesigned- apple-watch-series-4-revolutionizes-communication-fitness-and-health/, and https://www.apple.com/newsroom/2019/09/apple-unveils-apple-watch-series-5/. The Apple Watch Series 3, 4, and 5 products were designed and developed by teams led by Brian Land, Senior Manager, and Steve Waydo, Senior Manager.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Apple incorporates by reference the documents bearing bates numbers APL-MAS_00000001 through APL-MAS_00001192, as well as the source code it has made available for inspection in this action.

Apple reserves the right to supplement and/or amend its response to this Interrogatory as it continues its investigation and as discovery progresses.

## INTERROGATORY NO. 8:

Describe in detail, with reference to any supporting documents, information, and materials, the design and development of the product software related to physiological monitoring for each Apple Watch Product, including without limitation, when and where each portion of the product software is and/or was developed (including third party facilities), all versions or revisions (including name and/or version number) of the product software developed at each facility, the development and/or code management software used to develop each such version of the product software, the version control software or system used for each such version of the product software, the procedure for recording changes between each such version of the product software, the process for releasing versions of the product software, each person or entity involved in the design and development of the product

software, and what role each person or entity had in the design and development of the product software.

**RESPONSE TO INTERROGATORY NO. 8 (AUGUST 17, 2020):**

Apple hereby restates and incorporates the General Objections above as though fully set forth herein. Apple objects to this Interrogatory to the extent it seeks information or things protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege, immunity, or protection. Apple objects to this Interrogatory as duplicative to the extent it seeks information sought by Interrogatory No. 7. Apple objects to this Interrogatory as overly broad and unduly burdensome in that it seeks information related to technical features and/or software that are not relevant to this litigation.  Apple objects to this Interrogatory to the extent it seeks information related to products that are not relevant to this litigation, which Masimo has not identified in its Complaint or otherwise accused of infringement. Apple objects to this Interrogatory as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request as overly broad and unduly burdensome because it is not reasonably limited to the scope of infringement allegations in this litigation. Apple objects to this Interrogatory as overbroad and unduly burdensome as it is not limited to any relevant time period.  Apple objects to this Interrogatory as improper as it calls for a narrative. Apple objects to this Interrogatory to the extent it is compound and comprises discrete subparts, and asserts that each subpart of each compound Interrogatory counts separately toward the discovery limits set forth in the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Central District of California.

Subject to and without waiving the foregoing General and Specific Objections, Apple responds as follows:

Apple incorporates by reference its response to Interrogatory No. 7 in its entirety.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Apple incorporates by reference the documents bearing bates numbers APL-MAS_00000001 through APL-MAS_00001192, as well as the source code it has made available for inspection in this action.

Apple reserves the right to supplement and/or amend its response to this Interrogatory as it continues its investigation and as discovery progresses.

A.    **Plaintiffs' Position**

1.    **Interrogatories 7 and 8 Seek Relevant Information And Are Proportional To The Needs Of The Case**

Interrogatories 7 and 8 seek information about the software/hardware development of physiological monitoring capabilities of the Apple Watch.  Interrogatory 8 is limited to physiological monitoring and Plaintiffs offered to further limit Interrogatory 7 to physiological monitoring during the meet and confer.  *See* Ex. 23 at 3.  Plaintiffs also offered to limit Interrogatories 7 and 8 to "light-based physiological monitoring," so long as that includes other sensors used in the determination of a light-based physiological parameter.  *Id.*  For example, the use of an accelerometer to detect motion for the oxygen saturation measurement should be included.

Thus, Interrogatory 7 seeks descriptions of when and where the watch was released to market, the development of light-based physiological monitoring features, the identity of competitive products examined in developing such features, and the identity/role of each person in creating such features.  Interrogatory 8 seeks descriptions of the design and development of software related to light-based physiological monitoring features, including when and where such software was developed, identification of versions and revisions, the code management system Apple uses, the procedure for recording changes and releasing new versions, and the identity/role of each person in creating such features.

This technical information is at the core of this dispute.  How Apple's physiological monitoring capabilities work and how they were developed is directly relevant to Plaintiffs' trade secrets regarding those physiological monitoring capabilities.  Interrogatory 8 is also important to facilitate review of Apple's source code by understanding how changes are tracked, implemented, and stored in Apple's software.   These interrogatories are proportional to the needs of the case for the reasons discussed above.  Among other things, these interrogatories seek relevant information, the amount in controversy is high, and Apple cannot claim it lacks resources to respond because it is the most valuable public company on earth.

### 2.   **Apple's Responses Are Deficient**

In response to Interrogatory 7, Apple (1) identified the location and date that the Apple Watch Series 3-5 were developed, (2) stated: "For a detailed description of the complete development of physiological monitoring capabilities used in the Apple Watch, Apple directs Plaintiffs to [three public Apple.com websites]," (3) identified two individuals who led Apple's teams, and (4) referred to APL-MAS_00000001-00001192 and its source code under Rule 33(d).   Apple's response to Interrogatory 8 merely incorporated its response to Interrogatory 7 by reference and referred to APL-MAS_00000001-00001192 and its source code under Rule 33(d).   Apple's responses are deficient for many reasons.

First, Apple's responses address only the Series 3-5 watches.   Apple does not mention the Series 1-2 watches, which are relevant and discoverable for the reasons discussed above.   *See* Section II.A.2.b, *supra*.   Apple also does not mention the Series 6 and Series SE watches, which Apple released over six months ago in September 2020, and which Plaintiffs allege incorporate Plaintiffs' trade secrets.

Second, Apple's assertion that ***public*** websites describe the "complete development" of the physiological monitoring capabilities of the Apple Watch strains credulity and does not constitute a good faith response.   Indeed, the websites are merely press-release-style websites that describe capabilities of the Series 3, 4, and 5 watches in broad terms.   *See* Exs. 31-33.   The Series 3 website does not even mention Apple's heart rate technology other than to say it included an "updated Heart Rate app."   Ex. 31.   The Series 4 website mentions that Apple included a new "electrocardiogram (ECG)" sensor, but does not mention any changes to the heart rate technology.   Ex. 32.   The Series 5 website does not even mention the physiological monitoring capabilities of the Series 5.   Ex. 33.   The websites do not discuss the development of the Apple Watch, much less the "complete" development.   Likewise, identifying the names of two individuals who led the development teams at Apple does not actually describe Apple's development efforts.

Third, Apple's reliance on Rule 33(d) is also misplaced.  As the Court has explained, "identifying documents in response to an interrogatory pursuant to rule 33(d) is not appropriate in all circumstances." *Kaneka*, 2016 WL 11266869, at *8.  The answer to the interrogatory "must be capable of being determined by examining records without further explanation" and the burden must be "substantially the same for either party." *Id.*  Apple does not attempt to show that Plaintiffs can determine the answer to Interrogatories 7 and 8 merely by referring to the documents it cites.  Indeed, Apple's documents use internal phrases and code words, and Apple has not yet produced full documentation or source code.  Thus, merely referring to technical documents and source code does not permit Plaintiffs to determine the answer to Interrogatories 7 and 8 "without further explanation." *Id.*  Likewise, Apple is far more familiar with its documentation, source code, and code words so the burden is not "substantially the same for either party." *Id.*

Moreover, Apple appears to have made no attempt to identify specific documents that would provide the requested information.  Instead, it cited ***every single document and all of its source code that it had produced*** as of the date of its interrogatory response.  The Court has explained that simply "referring to all the documents produced is inadequate" under Rule 33(d).  *Ergocare, Inc. v. D.T. Davis Enterprises, Ltd.*, 2015 WL 13609787, at *8 (C.D. Cal. June 17, 2015); *see also Process Specialties, Inc. v. Sematech, Inc.*, 2002 WL 35646608, at *3 (E.D. Cal. Sept. 25, 2002) (Defendant "cannot simply refer to all documents it produces during discovery.  Rather the Rule requires that defendant specify *where* in the records the pertinent information may be found.").  "Rule 33 cannot . . . be used as a procedural device for avoiding the duty to give information by shifting the obligation to find out whether information is ascertainable from the records which have been tendered." *Budget Rent-A-Car Missouri, Inc. v. Hertz Corp.*, 55 F.R.D. 354, 357 (W.D.. Mo. 1972).  Apple's reliance on Rule 33(d) is inappropriate.

Fourth, Apple's incorporation of Interrogatory 7 in its response to Interrogatory 8 is irrelevant because Apple's response to Interrogatory 7 is insufficient and did not answer the question posed by Interrogatory No. 8.

### 3.   <u>Apple's Objections Lack Merit</u>

Apple has no valid basis for refusing to provide a substantive response to Interrogatories 7 and 8.  As discussed, Apple's "general or boilerplate objections" in its written responses are inappropriate.  *See Nguyen*, 2019 WL 4579259, at *3.  During the meet and confer, Apple appeared to drop most of its objections. Ex. 24 at 4-5.  Apple argued only that Interrogatory Nos. 7-8 are "overbroad and unduly burdensome because they are not limited to the techniques alleged by Plaintiffs as trade secrets that Apple purportedly misappropriated." *Id.* at 4.  As discussed above, in an effort to compromise, Plaintiffs offered to limit Interrogatories 7 and 8 to "light-based physiological monitoring," so long as that includes other sensors used in the determination of a light-based physiological parameter. Ex. 23 at 3.

Apple rejected Plaintiffs' compromise and, without offering any counter proposal, demanded that Plaintiffs further narrow these interrogatories.  Ex. 24 at 5 (Apple demanding Plaintiffs propose further modification to "specific information").  But Plaintiffs already narrowed these interrogatories.  Apple's current version of the watch includes just two light-based parameters (pulse rate and oxygen saturation), both of which are highly relevant for the reasons discussed above.  Plaintiffs limitation would thus seek information about those parameters, as well as other sensors (e.g., accelerometers) used in the determination of those sensors.  Plaintiffs seek a fair understanding of the development and operation of those parameters.  The text of the interrogatories also includes examples of the specific information that Plaintiffs are seeking in response.

Apple also again attempted to unilaterally limit its response to information that **Apple** determines is relevant to the trade secrets described in Plaintiffs' Section 2019.210 statement. Ex. 24 at 4-5.  That is improper for the reasons discussed above.  *See* Section II.A.3.a, *supra*.  Apple should not be permitted to omit aspects of its algorithm that Apple unilaterally contends is not relevant or does not misappropriate Plaintiffs' trade secrets.  Indeed, Apple has made clear it intends to provide no information on pulse rate, which is

1   highly relevant.  Apple should provide a full and fair response without applying a unilateral

2   Section 2019.210 relevance filter.

3        Apple also objected to Interrogatory Nos. 7-8 as calling for a "narrative" regarding

4   Apple's design changes, modifications, and development of software processes.  Ex. 24 at

5   4.  But that is the purpose of interrogatories—to obtain a descriptive answer rather than

6   documents discussing an issue.  *See Subramani v. Wells Fargo Bank, N.A.*, 2014 WL

7   7206888, at *2 (N.D. Cal. Dec. 18, 2014) (compelling further responses where the

8   interrogatories properly called for "a narrative answer"); *In re Savitt/Adler Litig.*, 176

9   F.R.D. 44, 48 (N.D.N.Y. 1997) (overruling work product objection because the

10  interrogatories properly sought "a narrative answer, not a reference to documents or objects

11  where the answers might be found").

12       Accordingly, Apple has not shown why discovery should be limited.  The Court

13  should overrule Apple's objections and order Apple to provide full and complete responses.

14  **B.**   **Apple's Position**

15       Interrogatory Nos. 7 and 8 broadly concern the design and development of hardware

16  and software related to physiological monitoring of each Apple Watch product.

17  Specifically, Interrogatory No. 7 requests a narrative regarding each "design change,

18  modification, and improvement concerning physiological monitoring [that] was made

19  between each series of the Apple Watch," as well as "a detailed description of the complete

20  development of physiological monitoring capabilities used in the Apple Watch Products."

21  J.S. 82.  Likewise, Interrogatory No. 8 requests a narrative regarding the development of

22  Apple's software for all versions or revisions of physiological monitoring software,

23  software development processes, procedures for "recording changes," and the "process for

24  releasing versions" of software.  J.S. 83–84.  Nonetheless, Apple responded to both

25  interrogatories with the responsive information that relates to the alleged trade secrets at

26  issue in this case.

27       Plaintiffs contend that Apple's responses are insufficient, and that Apple should

28  respond with information that goes beyond that which is relevant to Plaintiffs' alleged trade

secrets—and further propose a "light-based" limitation to "physiological monitoring" in an effort to narrow both interrogatories.  But even if limited to "*light-based* physiological monitoring," J.S. 85, 88 (emphasis added), both interrogatories are overbroad and unduly burdensome, because they still seek information that goes well beyond the alleged trade secrets in Plaintiffs' Section 2019.210 disclosure.

As explained in Section II.B above, the alleged technical trade secrets described in Plaintiffs' Section 2019.210 disclosure are much narrower in scope than "light-based physiological monitoring," and are instead related to specific ███████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████  *See* Samplin Decl. Ex. C, at 48, 50, 52, 64 (Plaintiffs' Supp. Resp. to Apple's 1st Set of Interrogs. (Nos. 6, 10–11) at 7, 9, 11, 23).  Interrogatory Nos. 7 and 8, as written (and even as further limited to "light-based physiological monitoring"), seek information well beyond that relevant to this case.  For example, these interrogatories, even if limited to "light-based physiological monitoring," would require Apple to provide information regarding *all* features and facets of the heart rate functionality in the Apple Watch, including ██████████████ █████████████████████████████████████████████  Such information is not relevant or proportional to the needs of this case.  Interrogatory Nos. 7 and 8 should be limited to information relating to Plaintiffs' alleged technical trade secrets.

### 1. Apple's Responses to Interrogatory Nos. 7 and 8 Are Sufficient

Apple already provided sufficient responses to Interrogatory Nos. 7 and 8. Plaintiffs' complaints about both responses are without merit.

First, Plaintiffs' complaint about the Apple Watch versions covered by Apple's interrogatory responses is of no moment because Apple has produced to Plaintiffs any relevant information from the earlier Apple Watch versions.  Specifically, Plaintiffs complain that Apple's current responses are insufficient because they address only the Apple Watch Series 3–5.  Apple understands this issue to be largely obviated by its making

available for inspection the source code for the earlier versions of the Apple Watch (i.e., the Original Apple Watch through the Apple Watch Series 3) for the relevant operation and functions of the Apple Watch, as well as an additional source code module relating to the oxygen saturation calculation function of the Apple Watch Series 6 on March 17, 2021. *See* Samplin Decl. ¶ 16 & Ex. K, at 167 (Mar. 17, 2021 Email from B. Andrea to P. Oldham re Source Code Inspection).  Likewise, updated source code for WatchOS 7 was made available to Plaintiffs shortly after the release of the Apple Watch Series 6 and SE and was inspected by Plaintiffs starting on October 12, 2020.  *See* Samplin Decl. ¶¶ 13–15 & Exs. H–J.  This source code illustrates the changes that were made over time to the relevant physiological monitoring functions of the Watch.

Second, Plaintiffs' claim that Apple has asserted that the public websites identified in its responses describe the "complete development" of the physiological monitoring capabilities of the Apple Watch, J.S. 86, is a straw man.  Apple has never asserted that its identification of public websites *alone* describes the "complete development" of the physiological monitoring capabilities of the Apple Watch.  The public websites are a mere portion of Apple's larger responses to Interrogatories Nos. 7 and 8, which also reference 178 documents and the source code made available to Plaintiffs regarding the relevant physiological monitoring features of the Apple Watch.  The websites provide a high-level overview of the major physiological monitoring features added in each version of the Watch, while the documents and source code referenced pursuant to Rule 33(d) provide more granular detail of the features available in each Apple Watch Product.

Third, Plaintiffs' complaint about Apple's reliance on Rule 33(d) in responding to Interrogatories Nos. 7 and 8 is unsupported.  Plaintiffs assert that the burden of examining records without further explanation is not "substantially the same for either party" because "Apple's documents use internal phrases and code words, and Apple has not yet produced full documentation or source code."  J.S. 87.  Notably, Plaintiffs fail to indicate *what* "internal phrases and code words," if any, allegedly require further explanation for Plaintiffs to efficiently examine Apple's records.  Indeed, Plaintiffs' assertion that "Apple

is far more familiar" with Apple's documentation and source code is a truism for any party and its own documents—particularly technical ones. The self-evident proposition that Apple is more familiar with Apple's documents should not preclude Apple from properly relying on Rule 33(d) in answering Plaintiffs' interrogatories. *See Saddler v. Musicland-Pickwick Int'l, Inc.*, 31 Fed. R. Serv. 2d 760 (E.D. Tex. 1980) (explaining that "the applicability of [Rule 33(d)] depends, not upon familiarity with a set of records, but with the relative difficulty of analyzing those records to derive the information desired" because "[i]f a disparity in familiarity necessarily created an inequality in the ease of discovery, the procedure provided by [that rule] would rarely, if ever, be utilized"). This argument could be raised in any litigation, and would eviscerate Rule 33(d) by prohibiting a party from relying on its own documents simply because they are the party's own documents.

Likewise, Plaintiffs' argument that Apple "cited every single document and all of its source code that it had produced as of the date of its interrogatory response" lacks important context. J.S. 87 (emphasis omitted). First, the documents identified in Apple's responses constitute just 1.0% of the total pages of documents produced by Apple as of the date of this filing. Second, the documents identified in Apple's responses encompass Apple's first two document productions, which prioritized the collection of relevant technical documentation responsive to Interrogatories Nos. 7 and 8. Apple prioritized these technical documents because Plaintiffs demanded early technical discovery in relation to the currently-stayed patent case, and Plaintiffs have now had these documents for months. Finally, the source code that Apple has made available for inspection was specifically identified as relevant to the physiological monitoring capabilities of the Apple Watch at issue in this case. Apple made an effort to cull and provide Plaintiffs with relevant technical information in the first instance. That certainly is far from objectionable.

Each of the cases cited by Plaintiffs on this point are inapposite. For example, in *Ergocare Inc. v. D.T. Davis Enterprises, Ltd.*, the court merely stated that "simply referring to all the documents produced is inadequate," but the party had not yet responded to the interrogatory at issue. 2015 WL 13609787, at *8 (C.D. Cal. June 17, 2015) (citing Fed. R.

Civ. P. 33(d)(1)).  As explained above, although the documents identified in response to Interrogatories Nos. 7 and 8 did encompass the entirety of Apple's document productions *at that time*, those documents were initially produced **because** of their relevance to the technical features at issue, and constitute a mere fraction of the total documents produced by Apple to date.

In *Process Specialties, Inc. v. Sematech, Inc.*, the defendant responded to an interrogatory that requested the identities of "all persons with knowledge of relevant facts pertinent to the claims asserted" by naming some persons, but also stating that "[i]n addition to the above named individuals, persons whose names appear in documents produced during discovery may also have knowledge of relevant facts."   2002 WL 35646608, at *2–3 (E.D. Cal. Sept. 25, 2002).  The *Process Specialties* court found that this response did not comply with Rule 33(d) in that "defendant cannot simply refer plaintiff to all documents it produces in discovery."  *Id.* at *3.  As explained above, Apple did not "simply refer [Plaintiffs] to all documents" produced during discovery, *id.*, but instead referred Plaintiffs to a specific prioritized subset of documents produced.

*Budget Rent-A-Car Missouri, Inc. v. Hertz Corp.*, 55 F.R.D. 354, 357 (W.D. Mo. 1972) also is inapposite, because in that case the responding party did not provide information of the type requested—unlike here, where Apple has provided Plaintiffs with the information requested.  In *Budget Rent-A-Car Missouri*, in response to an interrogatory seeking the disclosure of "dates, places, and locations of meetings," the names of the responding party's representatives who attended the meetings, and "documents prepared and used" in connection with those meetings, the responding party merely referred to *a third party's* documents generally, and instead of providing the names of representatives who attended the meetings, merely stated that "representatives of [responding party] . . . have attended meetings of [third party]."  *Id.*  Likewise, in response to an interrogatory asking "whether the rental car association to which defendant belongs publishes any written information . . . and . . . identification of those materials," the responding party stated only that "it has materials published by the association in its possession and that

those materials will be made available to [requesting party]." *Id.* at 358.  And in response
to an interrogatory seeking to discovery the names of certain persons involved with "the
car rental association to which [responding party] is a member," the responding party
referenced only the car rental association "Membership Directory." *Id.*  The court found
that none of these answers were sufficient. *Id.* at 357–58.  Here, by contrast, Apple
responded with, among other things:

- relevant dates,
- websites that provide an overview of the physiological monitoring features of the Apple Watch,
- reference to a specific subset of the total documents Apple has produced to date, and
- reference to the relevant source code Apple already made available to Plaintiffs for inspection.

Apple's interrogatory response is sufficient.

These problems with Plaintiffs' arguments notwithstanding, in an effort to determine
whether there was a compromise to be reached, Apple asked Plaintiffs during the meet-
and-confer process to provide a list of their specific questions concerning Apple's
documents and Apple's development of the Apple Watch—i.e., the specific questions that
they deemed relevant and responsive to the interrogatory, but not addressed in Apple's
interrogatory response.  Plaintiffs declined the invitation.  Plaintiffs apparently seek a
detailed missive about the entire development process of everything related to the Apple
Watch.  A request for such an extensive narrative is not remotely proportional to the needs
of this case.

Finally, Apple's incorporation of its response to Interrogatory 7 in its response to
Interrogatory 8 is wholly appropriate to the extent that the information provided therein
adequately answers the questions posed by both interrogatories—given that the parties
reached an agreement earlier in this case to permit incorporation by reference in
interrogatory responses.  *See* Samplin Decl. ¶ 7 & Ex. D, at 77.

-94-

## 2.   __Apple's Objections are Valid__

As explained in detail above, Interrogatories Nos. 7 and 8 are overbroad and unduly burdensome because they are not limited to the techniques alleged by Plaintiffs as trade secrets in Plaintiffs' Section 2019.210 statement.   Even if Apple accepted Plaintiffs' proposed "compromise" to limit Interrogatories Nos. 7 and 8 to "light-based physiological monitoring," J.S. 85, 88, these interrogatories would still be overbroad because that limitation is still broader than the bounds of the technologies described in Plaintiffs' Section 2019.210 statement. *See* Section II.B, *supra.*

Apple's reliance on Rule 33(d) in its responses to these interrogatories likewise is sufficient and proper, as discussed above.   Indeed, Plaintiffs' cases cited in their effort to reject Rule 33(d) references are inapplicable.   For example, in *Subramani v. Wells Fargo Bank, N.A.*, the interrogatories at issue were contention interrogatories that specifically requested the plaintiff to "state all facts supporting certain contentions" in plaintiff's complaint.   2014 WL 7206888, at *2 (N.D. Cal. Dec. 18, 2014).   Likewise, in *In re Savitt/Adler Litig.*, the "interrogatories at issue direct[ed] a plaintiff to 'state the facts' supporting various allegations in her complaint," and "none of the interrogatories ask[ed] for the evidence or documents supporting those allegations." 176 F.R.D. 44, 49 (N.D.N.Y. 1997).   Interrogatory Nos. 7 and 8 are not contention interrogatories requesting that Apple "state the facts" supporting a contention, and both interrogatories explicitly request "supporting documents, information, and materials."   Accordingly, Apple's objections are meritorious, and its reliance on Rule 33(d) standard and proper.

[*remainder of page left intentionally blank*]

## VIII.  PLAINTIFFS' INTERROGATORY 9

Pursuant to Local Rule 37-2, below is the full text of Plaintiffs' Interrogatory 9, and Apple's response.  The parties' respective points and authorities follow below.

### INTERROGATORY NO. 9:

Describe in detail, with reference to any supporting documents, information, and materials, the operation of pulse rate algorithms associated with each Apple Watch Product, including without limitation the timing, current, and operation of any LEDs used to determine pulse rate, reasons and conditions for changing the timing, current or operation of any LED used to determine pulse rate, reasons and conditions for selecting among algorithms to determine pulse rate, and power usage associated with each type of timing, current, or operation of any LED.

### RESPONSE TO INTERROGATORY NO. 9 (AUGUST 17, 2020):

Apple hereby restates and incorporates the General Objections above as though fully set forth herein. Apple objects to this Interrogatory to the extent it seeks information or things protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege, immunity, or protection. Apple objects to this Interrogatory as overly broad and unduly burdensome in that it seeks information related to technical features that are not relevant to this litigation. Apple objects to this Interrogatory to the extent it seeks information related to products that are not relevant to this litigation, which Masimo has not identified in its Complaint or otherwise accused of infringement. Apple objects to this Interrogatory as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Interrogatory as overly broad and unduly burdensome because it is not reasonably limited to the scope of infringement allegations in this litigation. Apple objects to this Interrogatory as overbroad and unduly burdensome as it is not limited to any relevant time period. Apple objects to this Interrogatory as improper as it calls for a narrative. Apple objects to this Interrogatory to the extent it is compound and comprises discrete subparts, and asserts that each subpart of each compound Interrogatory counts separately toward the discovery limits set forth in the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Central District of California.

Subject to and without waiving the foregoing General and Specific Objections, Apple responds as follows:

Apple incorporates by reference its response to Interrogatory Nos. 7 and 8.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Apple incorporates by reference the documents bearing bates numbers APL-MAS_00000001 through APL-MAS_00001192, as well as the source code it has made available for inspection in this action.

Apple reserves the right to supplement and/or amend its response to this Interrogatory as it continues its investigation and as discovery progresses.

## A.    **Plaintiffs' Position**

Interrogatory 9 seeks information about Apple's pulse rate algorithm. In particular, the interrogatory seeks a description of the operation of the pulse rate algorithm, including the timing, current, and operation of LEDs, reasons and conditions for changing timing, current, or operation, reasons and conditions for selecting among algorithms, and power usage associated with each type of timing, current, or operation. As discussed above, this technical information is at the core of this dispute. ██████████████████

███████████████████████████████████████

███████████████████████████████████████

This interrogatory is proportional to the needs of the case for the reasons discussed above. Among other things, this interrogatory seeks relevant information, the amount in controversy is high, and Apple cannot claim it lacks resources to respond because it is the most valuable public company on earth.

Apple's response is deficient because it merely (1) incorporated by reference its response to Interrogatory Nos. 7 and 8 and (2) referred to APL-MAS_00000001-00001192 and its source code under Rule 33(d). Apple's incorporation of Interrogatory Nos. 7 and 8 is irrelevant because Apple's responses to those interrogatories are insufficient and do not answer the question posed by Interrogatory No. 9. Apple's reliance on Rule 33(d) is also misplaced. Similar to Interrogatories 7 and 8, Apple does not attempt to show that Plaintiffs can determine the answer to Interrogatory 9 merely by referring to the documents and source code that it cites or that the burden on both parties is the same. Indeed, Apple appears to have made no attempt to identify specific documents that would provide the

request information because it cited ***every single document and all of its source code that it had produced*** as of the date of its interrogatory.  Simply "referring to all the documents produced is inadequate" under Rule 33(d).  *Ergocare*, 2015 WL 13609787, at *8; *see also Process Specialties*, 2002 WL 35646608, at *3; *Budget Rent-A-Car*, 55 F.R.D. at 357.

Apple presents no valid basis for refusing to provide a substantive response to Interrogatory 9.  As discussed, Apple's "general or boilerplate objections" in its written responses are inappropriate.  *See Nguyen*, 2019 WL 4579259, at *3.  During the meet and confer, Apple appeared to drop most of its objections.  Ex. 24 at 4-5.  Apple's only current objection for Interrogatory No. 9 is that it seeks "information related to 'pulse rate,' a topic that is not relevant to the claims and defenses in this case or proportional to the needs of this case."  *Id.* at 5.  ███████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████   As discussed above, Apple's arguments lack merit.  *See* Section II.A.2.a, *supra*.  Plaintiffs are entitled to discovery to test Apple's assertion.  Apple's unsubstantiated argument that Plaintiffs' claim will fail on the merits does not provide a basis to refuse discovery.  *Carrizosa*, 2006 WL 1581953, at *2; *Manzo*, 2019 WL 2866047, at *2; *Elkin*, 2017 WL 4047235, at *2.  ██████████████████████████

███████████████████████████████████████████

Accordingly, Apple has not shown why discovery should be limited.  The Court should overrule Apple's objections and order Apple to provide a full and complete response.

**B.**   **Apple's Position**

Interrogatory No. 9 seeks information regarding *any* pulse rate algorithm used in the Apple Watch Products.  In particular, this interrogatory requests a description of the "timing, current, and operation of any LEDs used to determine pulse rate," along with the

reasons for changing those parameters, reasons and conditions for selecting among pulse rate algorithms, and the power usage associated with each type of "timing, current, or operation of any LED." J.S. 96. Notably, this interrogatory appears to be directed to information relating to Plaintiffs' infringement allegations regarding U.S. Patent Nos. 8,457,703 and 10,433,776, both entitled "Low power pulse oximeter." *See* Plaintiffs' Ex. 26, at 273, 333–42 (¶¶ 37–38, 194–222). Because the patent case is stayed, no response to this interrogatory should even be required to the extent Plaintiff seeks information relating to its infringement allegations.

That being said, Apple responded to the portion of this interrogatory that could relate to Plaintiffs' trade secret case. Plaintiffs thus appear to misunderstand Apple's core objection to Interrogatory No. 9. Apple agrees that ███████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ But, as Apple explained during the meet-and-confer process, Interrogatory No. 9 is overbroad as written to the extent that it seeks more information than that—regarding *any* pulse rate algorithm used in the Apple Watch. *See* Samplin Decl. Ex. F, at 131 (Mar. 9, 2021 Letter from I. Samplin to A. Powell at 5). Such information is not relevant or proportional to Plaintiffs' alleged trade secrets. Interrogatory No. 9 should be limited only to ██████████████████████████ ██████████████████████ in the Apple Watch.

To try and get around that result, Plaintiffs argue—in a conclusory fashion—██ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

██████████████████████████████████   Accordingly, Interrogatory No. 9 does not pertain to the alleged ████████████████████ trade secrets at issue in this case.

In addition, for at least the same reasons outlined in Section VII. B.1 above, Apple's response to Interrogatory No. 9 is sufficient and an appropriate invocation of Rule 33(d). Most notably, Apple has provided the source code modules for the relevant blood oxygen saturation functionality of the Apple Watch. Apple properly identified this source code pursuant to Rule 33(d). Plaintiffs remaining arguments regarding the sufficiency of Apple's response are predicated on the same misplaced reliance on inapplicable case law for Interrogatories Nos. 7 and 8, and these arguments are equally inapplicable to Interrogatory No. 9.

*[remainder of page left intentionally blank]*

1                      Respectfully submitted,

2                      KNOBBE, MARTENS, OLSON & BEAR, LLP

3

4   Dated:  April 22, 2021            By: */s/ Adam B. Powell*

5                      Joseph R. Re

6                      Stephen C. Jensen
                     Benjamin A. Katzenellenbogen

7                      Perry D. Oldham
                     Stephen W. Larson

8                      Mark D. Kachner
                     Adam B. Powell

9                      Attorneys for Plaintiffs

10                     MASIMO CORPORATION and
                     CERCACOR LABORATORIES, INC.

11

12                     GIBSON, DUNN & CRUTCHER LLP

13

14   Dated:  April 22, 2021            By: */s/ Ilissa Samplin (with permission)*

15                     Joshua H. Lerner
                     H. Mark Lyon

16                     Brian M. Buroker
                     Brian A. Rosenthal

17                     Ilissa Samplin
                     Angelique Kaounis

18                     Brian K. Andrea

19                     Attorneys for Defendant

20                     APPLE INC.

34838898

21

22

23

24

25

26

27

28