Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) **JOINT STIPULATION REGARDING PLAINTIFFS' SECOND MOTION TO COMPEL APPLE TO PRODUCE DOCUMENTS AND FULLY ANSWER INTERROGATORIES**<br>)<br>) [Discovery Document: Referred to Magistrate Judge John D. Early]<br>)<br>) Date: May 20, 2021<br>) Time: 10:00am<br>) Ctrm: 6A<br>)<br>) Discovery Cut-Off: 7/5/2021<br>) Pre-Trial Conference: 3/21/2022<br>) Trial: 4/5/2022<br>)<br>) Hon. James V. Selna<br>) Magistrate Judge John D. Early |

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

JOSHUA H. LERNER, SBN 220755
   jlerner@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
   mlyon@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
   bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
   bandrea@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8541 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
   brosenthal@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
   isamplin@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
   akaounis@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

Attorneys for Defendant Apple Inc.

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTORY STATEMENTS................................................................1

    A.    Plaintiffs' Introductory Statement ...........................................1

    B.    Defendant's Introductory Statement .........................................4

II.   PLAINTIFFS' RFPS 82, 98, 99, 107, 163, AND 164 .......................8

    A.    Plaintiffs' Position...................................................................14

    B.    Apple's Position ......................................................................16

        1.    Plaintiffs Served this Joint Stipulation Before Allowing the Meet and Confer Process to Conclude............................16

        2.    Plaintiffs' RFPs 107 and 164 Are Overbroad Because They Exceed the Scope of Plaintiffs' Alleged Trade Secrets...............17

III.  PLAINTIFFS' RFPS 101-106, 108, AND 109 ................................19

    A.    Plaintiffs' Position...................................................................27

        1.    RFPs 101-106, 108, and 109 Seek Relevant Information And Are Proportional To The Needs Of The Case.....................28

        2.    Apple's Objections and Limitations Lack Merit ..........................29

            a.    Apple's Relevance and Overbreadth Objections Lack Merit................................................................30

            b.    Apple's Unilateral Section 2019.210 Limitation Lacks Merit................................................................33

    B.    Apple's Position ......................................................................36

        1.    Plaintiffs' RFPs 101-105 Are Overbroad And Unduly Burdensome .........................................................36

        2.    Plaintiffs' RFPs 106, 108, and 109 Are Likewise Overbroad And Unduly Burdensome .............................................47

IV.   PLAINTIFFS' RFPS 165-170...........................................................55

    A.    Plaintiffs' Position...................................................................61

# TABLE OF CONTENTS
## (*Cont'd*)

Page No.

B.   Apple's Position ..................................................... 62

V.   PLAINTIFFS' RFPS 67-70 AND 155-157 ........................ 65

A.   Plaintiffs' Position ............................................... 72

B.   Apple's Position ..................................................... 74

VI.  PLAINTIFFS' RFPS 226 AND 230-235 ........................... 78

A.   Plaintiffs' Position ............................................... 82

B.   Apple's Position ..................................................... 85

VII. PLAINTIFFS' RFPS 236-237, 239-241, 244-246, AND 248 ......... 90

A.   Plaintiffs' Position ............................................... 95

B.   Apple's Position ..................................................... 98

VIII. PLAINTIFFS' INTERROGATORY 10 ............................. 103

A.   Plaintiffs' Position ............................................... 103

B.   Apple's Position ..................................................... 105

IX.  PLAINTIFFS' RFPS 180, 187, 191, 192, 197-206 ............... 107

A.   Plaintiffs' Position ............................................... 118

B.   Apple's Position ..................................................... 120

1.   RFPs 180, 187, 192, 198–201, and 203-206 Are Not Relevant or Proportional Because They Are Not Limited to the Apple Watch ......................... 120

2.   RFPs 200–201 and 203–206 Are Not Relevant or Proportional Because They Are Not Limited to Plaintiffs' Alleged Trade Secrets .................. 125

3.   Plaintiffs' Arguments to the Contrary Lack Merit ....... 127

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Plaintiffs"), as movant, and Defendant Apple, Inc. ("Apple"), as respondent, through their respective counsel of record, submit this joint stipulation in connection with Masimo's Second Motion To Compel Apple To Produce Documents And Fully Answer Interrogatories.  Pursuant to Local Rule 37-1, this Joint Stipulation was prepared following the parties' conference of counsel, which took place on February 16 and 17, 2021.

# I. **INTRODUCTORY STATEMENTS**

## A. **Plaintiffs' Introductory Statement**

Plaintiffs filed a first motion to compel regarding technical information.  This second motion primarily concerns sales/marketing information, and information about Plaintiffs' former employees who went to Apple.  Similar to the first motion, Apple initially agreed to produce responsive documents for some requests.  When the Court stayed Plaintiffs' patent claims, Apple withdrew its commitment and argued Plaintiffs "surprised" Apple with a "woefully deficient disclosure" under California Code of Civil Procedure § 2019.210.  Ex. 10; Dkt. 259-1 at 7-8.[1]  Plaintiffs tried to discuss Apple's other objections while the Section 2019.210 objection was pending, but Apple refused.  Ex. 13.  After the Court found Plaintiffs' Section 2019.210 disclosure sufficient (Dkt. 279), Apple waited weeks and unleashed a torrent of new objections and limitations to producing documents.  Exs. 21 and 22.  Plaintiffs attempted to find a compromise, but were unable to resolve all issues.  Plaintiffs address the parties' disputes below.

***First***, Plaintiffs move to compel on RFPs 82, 98, 99, 107, 163, and 164.  Despite this Court overruling Apples Section 2019.210 objection ***three months ago***, the parties meeting for hours on February 16-17, and Plaintiffs sending at least ***six*** emails and letters, Apple refuses to provide its position on these RFPs.  Apple recently ignored Plaintiffs' March 25

---

[1] All exhibits in Plaintiffs' sections are attached to the Declaration of Adam B. Powell, filed concurrently.  All emphasis in Plaintiffs' sections is added unless noted otherwise.

-1-

letter for weeks and responded on April 11 by again refusing to provide its position. Plaintiffs regret moving to compel on these RFPs without knowing Apple's position, but see no other option now that only three months remain for discovery.

**Second**, Plaintiffs move to compel on RFPs 101-106, 108, and 109, which seek sales and marketing information about the Apple Watch.  Apple asserts the requests are not relevant, but the requests are directly relevant to Plaintiffs' damages and business and marketing trade secrets.  Apple also now claims it cannot "understand" one of these requests, but Apple previously offered to produce documents "sufficient to show" the requested information.  Apple also claims some requests are too broad because they refer to "physiological monitoring."  But the parties have repeatedly targeted their discovery requests to that subject matter.  Indeed, Apple proposed using this term to ***narrow*** other RFPs and used the same term in its own RFPs to Plaintiffs.

Apple also states it will produce documents for some RFPs only if Apple decides they "relate" to "the alleged trade secrets in Plaintiffs' Section 2019.210 disclosure . . . ." Ex. 24 at 10-11.  But Section 2019.210 is a procedural requirement to "commenc[e] discovery"—not a basis to withhold particular documents.  *See* Cal. Civ. P. Code § 2019.210.  The scope of discovery is broader than the specific trade secrets identified in a Section 2019.210 disclosure.  Thus, Section 2019.210 helps ***guide*** discovery much like a patent claim guides discovery in a patent case.  However, it does not provide a basis to withhold specific responsive documents based on the defendant's unilateral decision that those specific documents do not relate to Plaintiffs' Section 2019.210 disclosure.

**Third**, Plaintiffs move to compel on RFPs 165-170, which seek documents about Apple's sales and marketing of Plaintiffs' products.  Apple's sole objection to these requests is that they are not relevant, but the requests are directly relevant to Plaintiffs' damages and Plaintiffs' business and marketing trade secrets.

**Fourth**, Plaintiffs move to compel on RFPs 67-70 and 155-157, which seek information about Apple's attempts to obtain FDA approval of the Apple Watch and Apple's clinical trials for the Apple Watch.  Apple claims it "has not sought FDA approval

or submitted to or received from the FDA or any other government agency any documents for any of the Apple Watch products and thus there are no documents responsive to these RFPs." Ex. 24 at 9. When Plaintiffs showed that was false, Apple argued it sought approval of "apps" that run on the Apple Watch—not the watch itself. Ex. 27 at 2. But Plaintiffs' RFPs, and the issues in this case, do not distinguish between the Apple Watch hardware and the Apple "app" software that interacts with such hardware. Indeed, the "app" at issue here is the Apple "Health" app that is pre-installed on the Apple Watch and provides measurements obtained by Apple's hardware. With respect to clinical trials, Apple again seeks to improperly withhold specific responsive documents that Apple believes do not relate to Plaintiffs' trade secrets.

**Fifth**, Plaintiffs move to compel on RFPs 226 and 230-235, which seek information about the use and disclosure of Plaintiffs' trade secrets by Plaintiffs' former employees. Apple again seeks to withhold specific responsive documents that—in ***its opinion***—do not directly relate to Plaintiffs' description of trade secrets. That is wrong for the reasons discussed above. Apple also argues it should not have to produce documents on former employees other than the two individuals specifically mentioned in the complaint. But Plaintiffs' allegations are broader than those two individuals and Apple does not dispute that it employs many former employees on relevant projects.

**Sixth**, Plaintiffs move to compel on RFPs 236-237, 239-241, 244-246, and 248, which seek documents about Apple's efforts to recruit Plaintiffs' employees, HR files for Plaintiffs' former employees, and documents about promotions and terminations. Such documents are relevant to many issues, including to show Apple knew it was obtaining Plaintiffs' trade secrets. Apple states it will produce only the specific documents within those files that Apple deems relevant. Apple should not be permitted to withhold particular documents within this category of responsive documents. HR files are easy to locate, would not be burdensome to produce, and Apple can redact personal information.

**Seventh**, Plaintiffs move to compel on Interrogatory 10, which seeks information about Apple's comparisons and testing of competitive products. Apple refuses to provide

any response unless Plaintiffs first confirm that the information in a single document that Apple cited "reflects the type of information Plaintiffs seek." *Id.* But Plaintiffs responded to Apple's assertions about that document *two months* ago, explaining that document does *not* provide much of the information sought by this interrogatory.

*Finally*, Plaintiffs move to compel on RFPs 180, 187, 191, 192, and 197-206, which concern technical information similar to information at issue in the first motion to compel. Plaintiffs thought the parties reached an agreement, but Apple raised new objections and now asserts Apple is withholding responsive documents. Apple presents no valid basis for withholding documents. The Court should grant Plaintiffs' motion.

## B.   **Defendant's Introductory Statement**

As Apple explained in response to Plaintiffs' last motion to compel (ECF 353-1), Apple already produced, or has already agreed to produce, responsive information that is relevant and proportional to Plaintiffs' claims. Moreover, the parties were still negotiating the scope of many of the RFPs at issue on this motion at the time Plaintiffs elected to move forward with the Joint Stipulation process. Plaintiffs jumped the gun and insist on wasting the Court's time with a *second* motion that is just as premature and flawed as their first. The additional information Plaintiffs seek has no relation to the alleged trade secrets identified in Plaintiffs' Section 2019.210 disclosure or to the sole product line (the Apple Watch) that Plaintiffs allege in their Fourth Amended Complaint incorporates those alleged trade secrets. Plaintiffs are simply wrong in asserting that discovery that lacks a nexus to their Section 2019.210 disclosure or their complaint is proper, when the very purpose of both documents is to frame the scope of permissible discovery. Plaintiffs are not entitled to engage in staggeringly overbroad discovery from Apple's sensitive files, and the burden on Apple of responding to such broad and irrelevant requests far outweighs any potential benefit here because none of that additional discovery is germane to the issues in this case.

Plaintiffs' accusation that Apple reneged on its agreement to respond to their improper requests is false. Apple objected to the requests on the ground that trade secret-related discovery was stayed until the Court resolved the parties' dispute with respect to

Plaintiffs' Section 2019.210 disclosure.  It would have made no sense for the parties to discuss Apple's other objections to trade secret-related requests before the Court resolved the threshold question of whether Plaintiffs could proceed with trade secret-related discovery at all.  Once the Court ruled on the Section 2019.210 dispute, Apple promptly informed Plaintiffs that it was prepared to meet and confer about its other objections.  At no point did Apple agree to produce documents responsive to overbroad requests—like those at issue on this motion—that are not relevant or proportional to this case.

**RFPs 82, 98, 99, 107, 163, and 164.**  Three of these RFPs request forecast information that Apple *already told* Plaintiffs it does not possess.  And if Plaintiffs had completed the meet-and-confer process before serving this Joint Stipulation, they would have learned that Apple is already seeking permission to produce any *third-party* market data—the only information in its possession that comes close to that which Plaintiffs seek.  Plaintiffs would have also learned that Apple agrees to produce documents responsive to RFP 82, located based on custodians and search terms.  Plaintiffs' efforts to obtain documents in response to the remaining RFPs are unavailing, because those RFPs extend far beyond the alleged trade secrets in this case.

**RFPs 101–106, 108, and 109.**  These RFPs are overbroad and unduly burdensome. They cover documents concerning technology and products that have nothing to do with the misappropriation allegations in this case.  Indeed, many of these RFPs seek information regarding irrelevant Apple products nowhere mentioned in the Complaint.  The Court should order Apple's reasonable compromises with respect to these RFPs—tying them to the alleged trade secrets and accused products in this case.

**RFPs 165–170.**  These RFPs likewise go beyond the accused products in this case— and, in fact, Plaintiffs barely even attempt to justify their overbreadth.  Plaintiffs focus their relevance argument on the fact that they are requesting information about Apple's marketing of Plaintiffs' products, but Plaintiffs have provided no explanation as to how Apple's marketing of *Plaintiffs'* products has anything to do with Plaintiffs' claims that Apple misappropriated Plaintiffs' alleged trade secrets to sell *Apple's* products.

**RFPs 67–70 and 155–157.**  Plaintiffs' motion to compel documents concerning FDA approval should be denied because—as Apple has on numerous occasions explained to Plaintiffs—Apple *has not sought FDA approval* for the Apple Watch or any "Apple Watch Product."  Plaintiffs are correct that Apple sought FDA approval for an app that can be used with the Apple Watch, but the app does not relate—and Plaintiffs do not allege that the app relates—to the alleged trade secrets or other issues in this case.  Documents concerning that FDA approval process are completely irrelevant.

**RFPs 226 and 230–235.**  These RFPs seek information about a broad swatch of "Former Employees"—i.e., employees of Apple who previously worked for Plaintiffs.  Apple has repeatedly explained to Plaintiffs that Apple employees are not relevant to this case merely because they worked for Plaintiffs in the past.  There must be some connection to the claims in this case for Plaintiffs to be entitled to discovery on these topics.  Apple has attempted to continue negotiating the list of relevant "Former Employees" with Plaintiffs in an effort to resolve these disputes.  But Plaintiffs have refused, instead bringing this motion to compel *numerous* categories of information related to an overbroad and unresolved list of "Former Employees."

**RFPs 236–237, 239–241, 244–246, and 248.**  Many of these RFPs concern efforts to solicit Plaintiffs' employees, which are irrelevant because there is no solicitation claim in this case.  Nonetheless, Apple agreed to produce responsive discovery relating to the two former employees actually referenced in the complaint—Michael O'Reilly and Marcelo Lamego.  Plaintiffs' requests for more are unjustified—as is their request for full human resources files for O'Reilly, Lamego, and countless other former employees of Plaintiffs.  These RFPs are not relevant, and they certainly are not proportional.

**Interrogatory No. 10.**  There is nothing for the Court to compel with respect to this interrogatory because Apple *never refused to respond*.  Apple conducted a reasonable investigation to identify responsive information and then sought clarity from Plaintiffs about the interrogatory.  Plaintiffs responded with requests for additional information, and the parties moved forward with negotiations.  Plaintiffs thereafter abruptly served this Joint

Stipulation, making this dispute entirely premature.

　　　**RFPs 180, 187, 191, 192, and 197–206.**   Apple agreed to produce documents responsive to RFPs 191, 197, and 202, and therefore those RFPs are not at issue on this motion.  For other RFPs, the requests again are not tethered to the accused products in this case (as identified in the complaint), and still for other RFPs, the requests again are not tethered to the alleged trade secrets in this case (as identified in Plaintiffs' Section 2019.210 disclosure).  Plaintiffs' continued requests for boundless discovery that is not tethered to the documents setting out their case should be denied.

[<em>remainder of page left intentionally blank</em>]

## II.  PLAINTIFFS' RFPS 82, 98, 99, 107, 163, AND 164

Pursuant to Local Rule 37-2, below is the full text of Plaintiffs' RFPs 82, 98, 99, 107, 163, and 164, and Apple's response to each request.  The parties' respective points and authorities follow below.

### REQUEST FOR PRODUCTION NO. 82:

All documents including all communications related to complaints, concerns, or criticisms about the accuracy or reliability of measurements for pulse rate, heart rate, plethysmograph, or detecting arrhythmia for any Apple Watch Product.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 82:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the subject matter of the request. Apple objects to this Request because it seeks "all communications," which will be negotiated and produced pursuant to the ESI Order in this case. Apple objects to this Request as overly broad and unduly burdensome because it is not reasonably limited to the scope of infringement allegations in this litigation. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to other claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17,

June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search. Unless otherwise expressly agreed in writing by the parties, a reasonable search shall be limited to a search of (i) the files of specific custodians negotiated between the parties, whose files are in the possession, custody, or control of Apple, using (ii) specific search terms negotiated between the parties.

**REQUEST FOR PRODUCTION NO. 98:**

All documents and things referring or relating to forecasts or projections regarding sales, revenue, expenses, and/or profit associated with changes between the Apple Watch Series 3 and the Apple Watch Series 4.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 98:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrase "associated with changes." Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to other claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54,

79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections, Apple is willing to meet and confer to discuss the mutual exchange of relevant and reasonable financial information.

**REQUEST FOR PRODUCTION NO. 99:**

All documents and things referring or relating to forecasts or projections regarding sales, revenue, expenses, and/or profit associated with changes between the Apple Watch Series 4 and the Apple Watch Series 5.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 99:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrase "associated with changes." Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to other claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections, Apple is willing to meet and confer to discuss the mutual exchange of relevant and reasonable financial information.

## REQUEST FOR PRODUCTION NO. 107:

All documents and things referring or relating to, or otherwise evidencing, the impact or projected impact of Defendant's incorporation of any physiological measurement technology in Defendant's Apple Watch Products on the sales price or sales volume of any third-party product that competes for sales with the Apple Watch Products.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 107:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it is not limited to the asserted claims of the patents asserted by Plaintiffs in their Complaint. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrase "physiological measurement technology." Apple objects to this Request as overly broad and unduly burdensome because it is not reasonably limited to the scope of infringement allegations in this litigation. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to other claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply

with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

## REQUEST FOR PRODUCTION NO. 163:

All documents and things referring or relating to forecasts or projections regarding sales, revenue, expenses, and/or profit associated with changes between the Apple Watch Series 5 and the Apple Watch Series 6.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 163:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the request.  Apple objects to this Request as unduly burdensome to the extent it seeks information of a type not maintained by Apple and/or in a format different from the format in which Apple maintains its data in the normal course of business. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request.  Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret

discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 164:**

All documents and things referring or relating to forecasts or projections regarding sales, revenue, expenses, and/or profit associated with including pulse oximetry in an Apple Watch Product.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 164:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement.  Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the request.  Apple objects to this Request as unduly burdensome to the extent it seeks information of a type not maintained by Apple and/or in a format different from the format in which Apple maintains its data in the normal course of business. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

## A.   <u>Plaintiffs' Position</u>

These RFPs seek a variety of information that is directly relevant to Plaintiffs' claims.   RFP 82 seeks documents about the importance of accurate measurements and criticisms regarding the accuracy of certain physiological monitoring features of the Apple Watch, which are relevant at least to showing Apple desired to obtain and incorporate Plaintiffs' more accurate technology.  RFPs 98, 99, and 163 seek documents about financial forecasts and projections for changes between various versions of the Apple Watch, which are relevant to show the value of Plaintiffs' trade secrets that Apple incorporated into later versions of the watch.  RFPs 107 and 164 seeks documents about the impact or projected impact of incorporating physiological monitoring technology, which is relevant for the same reasons.

These RFPs are also proportional to the needs of this case.  Rule 26 instructs that courts are to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 27(b)(1).  As discussed above, the discovery requests seek information that is relevant to damages and Plaintiffs' trade secrets.  The accused product (the Apple Watch) is the primary product in Apple's "wearables" division, which has revenues of nearly $13 billion per quarter.  Ex. 31 at 2.  The requested information is also in Apple's exclusive possession.  Finally, Apple is worth $2 trillion and is the most valuable public company on earth.  Ex. 32 at 2.  Apple cannot claim that it lacks the resources to gather the requested information.  Thus, these RFPs are relevant and proportional to the needs of the case.

Unfortunately, Plaintiffs do not know whether Apple will produce responsive documents for any these requests, or what Apple's objections are.  Plaintiffs first served these requests on July 17, 2020, and Apple responded on August 17, 2020.  Apple agreed to produce responsive documents for many RFPs, but withdrew that commitment on October 17, 2020, after the Court stayed the patent case by arguing Plaintiffs had not

complied with Section 2019.210.   Ex. 10.   Plaintiffs tried to discuss Apple's other objections, but Apple refused.   Ex. 17 ("When Plaintiffs provide a Section 2019.210-compliant disclosure, Apple will meet and confer with Plaintiffs regarding the relevance and scope of these RFPs").

After the Court overruled Apple's Section 2019.210 objection, Plaintiffs contacted Apple again on January 27, 2021, to discuss these RFPs.   Ex. 20.   On February 11, Apple declined to provide its objections in writing and instead stated that it would "discuss" its objections for over *one-hundred* requests live over the phone.   Ex. 21 at 2.   After Plaintiffs pressed Apple for its position in writing, Apple provided its position on February 15 for many RFPs, but declined to do so for these RFPs.   *See* Ex. 22.   When Apple also declined to provide its position during the meet and confer on February 16 and 17, Plaintiffs *again* asked Apple for its position on February 19.   Ex. 23.   On March 9, Apple responded by stating it was "still looking into the questions you raised with respect to these RFPs, and will get back in touch when we have further information."   Ex. 24 at 10.   Plaintiffs followed up again on March 25.   Ex. 25.   When Apple ignored that letter, Plaintiffs followed up again on April 7.   Ex. 26.   Apple responded on April 11 and *again* stated it was "still looking into RFPs 98, 99, 107, 163, and 164, and will get back to you with more information as soon as we can."   Ex. 27 at 3.   Apple mentioned RFP 82 in its heading, but did not provide its position on that request either.   *Id.*   As of the service of this joint stipulation on April 13, 2021, Apple has still *not* provided its position on these RFPs.

Plaintiffs regret having to bring this Motion on these RFPs, but see no other option since Apple is refusing to provide its position.   Discovery is set to close in July.   *See* Ex. 41.   Moreover, Apple recently argued there is so little time left in the schedule that the Court should severely limit Apple's discovery obligations.   Dkt. 332-1 at 1.   Plaintiffs served these requests *nine months ago* and the Court overruled Apple's Section 2019.210 objection *three months ago*.   *See* Dkt. 279.   Plaintiffs waited this long in an effort to resolve the matter informally and avoid burdening the court, but now little time remains in the schedule for Plaintiffs to wait for Apple to respond.   Having failed to present its objections

and meet and confer in good faith, Apple should not be permitted to assert objections and arguments for the first time in its opposition to Plaintiffs' motion.  The Court should order Apple to produce all documents responsive to RFPs 82, 98, 99, 107, 163, and 164.

**B.** **Apple's Position**

    **1.** **Plaintiffs Served this Joint Stipulation Before Allowing the Meet and Confer Process to Conclude**

Plaintiffs served Apple with their portion of this Joint Stipulation before the parties completed their meet and confers for these RFPs.  Had Plaintiffs waited for Apple to finalize its position, they would have learned that RFPs 82, 98, 99, and 163 do not belong in this motion.

*RFP 82.*  Plaintiffs complain that "Apple mentioned RFP 82 in its heading, but did not provide its position on that request," J.S. 15—but the natural response to Apple's inadvertent failure to specifically address RFP 82 in the parties' correspondence about *hundreds* of RFPs would have been for Plaintiffs to follow-up with Apple about RFP 82, not to serve a Joint Stipulation.  If Plaintiffs had followed up and given Apple an opportunity to finalize its position on RFP 82 instead of prematurely serving this Joint Stipulation, they would have learned that Apple agrees to produce documents responsive to RFP 82 identified based on search terms and custodians, and therefore RFP 82 is not at issue on this motion.

*RFPs 98, 99, and 163.*  Similarly, Plaintiffs complain that Apple has failed to provide its position on the forecast-related information requested by these RFPs, but they served their Joint Stipulation before the parties had concluded their negotiations concerning this information.  Apple repeatedly explained to Plaintiffs that Apple does not create such forecast information for the products at issue in this case (the Apple Watch)—as Plaintiffs admit.  Plaintiffs' Ex. 23, at 314 (acknowledging that "Apple explained that it does not have forecasts 'in the way that [Plaintiffs] think of them.'").  Apple simply does not have any Apple information responsive to these Requests.

After Apple explained this to Plaintiffs during the meet-and-confer process, Plaintiffs asked what, if anything, Apple looks to for forecast-related information—to which Apple responded that there may be *third-party* market research data.  That is third-party information that does not belong to Apple.  If Plaintiffs had continued the meet-and-confer process on this issue, they would have also learned that Apple is in the process of sending out the requisite notifications and requests for permission to the relevant third parties to produce this information to Plaintiffs.  Apple informed Plaintiffs that it was still "looking into the questions [Plaintiffs] raised with respect to these RFPs" several times.  Plaintiffs' Ex. 24, at 327; *see also* Plaintiffs' Ex. 27, at 349.  But, instead of waiting for Apple to obtain permissions to produce third-party documents, Plaintiffs served this premature Joint Stipulation.  To be clear, assuming there are no objections to production from the third parties, Apple will produce to Plaintiffs any such third-party information responsive to these RFPs.  Apple is not aware of anything further in its possession, custody, or control that it could produce in response to these RFPs.

## 2. Plaintiffs' RFPs 107 and 164 Are Overbroad Because They Exceed the Scope of Plaintiffs' Alleged Trade Secrets

Finally, Plaintiffs' RFPs 107 and 164 are demonstrably overbroad.  As with the other RFPs, however, if Plaintiffs had simply met and conferred further, they would have learned that Apple has no objection to producing responsive documents so long as the RFPs are limited to the alleged trade secrets Plaintiffs have put forth in their portion of the Joint Stipulation as the sole justification for the RFPs.  The narrative Plaintiffs are trying to create about these RFPs is wrong.  Apple was ready and willing to continue the meet-and-confer discussions about these RFPs before Plaintiffs took the drastic step of serving a Joint Stipulation.  In any event, Apple's position on these RFPs is set forth below.

RFPs 107 and 164 are overbroad because they are not tied to Plaintiffs' alleged trade secrets.  In Plaintiffs' words, RFPs 107 and 164 "seek documents about the impact or projected impact of incorporating physiological monitoring technology," which Plaintiffs contend are "relevant to show the value of Plaintiffs' trade secrets that Apple incorporated

into later versions of the watch."  J.S. 14.  But the concept raised by these RFPs—"physiological monitoring technology"—goes beyond Plaintiffs' purported justification for these RFPs—the alleged "trade secrets" Plaintiffs have accused Apple of incorporating.  In other words, Plaintiffs are requesting more information than that which pertains to the alleged "trade secrets" they have put forth as the sole justification for the information.  That is, by definition, overbroad—because the requested information goes well beyond that which is relevant to the claims in this case.  Accordingly, the RFPs in their current formulation fail Rule 26(b) scrutiny.  *See Cancino Castellar v. McAleenan*, 2020 WL 1332485, at *5 (S.D. Cal. Mar. 23, 2020) ("Regardless of its broad nature, however, relevance is not without 'ultimate and necessary boundaries,'" so "courts often link the elements of a cause of action with the discovery sought.").

In addition, Plaintiffs ignore the very purpose of Section 2019.210, which, as explained below in Section III.B., *infra*, is to define the boundaries of trade secret discovery before it begins, and to assist this Court and the parties in determining whether Plaintiffs' requested discovery falls within those boundaries.  *See Computer Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999) (Section 2019.210 "fram[es] the appropriate scope of discovery" and assists in "determin[ing] whether plaintiff's discovery requests fall within that scope"); *see also, e.g.*, *Albert's Organics, Inc. v. Holzman*, 2020 WL 4368205, at *3 (N.D. Cal. July 30, 2020) ("[S]ection 2019.210 . . . assists the court and parties in defining the appropriate scope of discovery." (citation omitted)).

Finally, Plaintiffs' suggestion that Apple "failed to present its objections and meet and confer in good faith" about RFPs 107 and 164, J.S. 15–16, is plain wrong.  Apple has complained about the overbreadth of both RFPs from the beginning—which is precisely why the parties have a dispute about them.  The RFPs are overbroad and untethered to the alleged trade secrets in this case—and, therefore, Plaintiffs' motion to compel should be denied with respect to both RFPs 107 and 164.

[*remainder of page left intentionally blank*]

-18-

### III.  <u>PLAINTIFFS' RFPS 101-106, 108, AND 109</u>

Pursuant to Local Rule 37-2, below is the full text of Plaintiffs' RFPs 101-106, 108, and 109, and Apple's response to each request.   The parties' respective points and authorities follow below.

### <u>REQUEST FOR PRODUCTION NO. 101:</u>

All documents and things concerning any competitive analysis of any competitor to the Apple Watch Products.

### <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 101:</u>

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrase "competitor to the Apple Watch Products." Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request.  Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it is not limited to the asserted claims of the patents asserted by Plaintiffs in their Complaint. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210.  Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret

-19-

misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections, Apple is willing to meet and confer with Plaintiffs to discuss the scope of this Request.

## REQUEST FOR PRODUCTION NO. 102:

All documents and things related to Apple's evaluation of the health care market for Apple products including the Apple Watch Products, including but not limited to market size, market importance to Apple's business, evaluation of target customers, and Apple's considerations in entering the health care market.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 102:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrases "health care market" and "importance." Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrase "Apple products." Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it is not limited to the asserted claims of the patents asserted by Plaintiffs in their Complaint. Apple expressly preserves its

-20-

objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210— without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 103:**

All documents and things relating to differences, similarities, or comparisons between the consumer market and the health care market for Apple Watch Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 103:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrase "consumer market and the health care market." Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time

period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it is not limited to the asserted claims of the patents asserted by Plaintiffs in their Complaint. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to other claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 104:**

All documents and things that relate to Apple's efforts to promote and/or market any of the Apple Watch Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 104:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to

the subject matter of the request. Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to other claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

## REQUEST FOR PRODUCTION NO. 105:

All documents and things that relate to any market studies, market share, competition, and/or competitor products relating to any of the Apple Watch Products.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 105:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrase "relating to any of the Apple Watch Products." Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request on the grounds that it is overly broad and unduly

burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it is not limited to the asserted claims of the patents asserted by Plaintiffs in their Complaint. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to other claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210— without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 106:**

All documents and things referring or relating to, or otherwise evidencing, valuations of any physiological monitoring technology or intellectual property relating to physiological monitoring technology.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 106:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this Request as overbroad and unduly burdensome to the

extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrase "physiological monitoring technology." Apple objects to this Request as overly broad and unduly burdensome because it is not reasonably limited to the scope of infringement allegations in this litigation. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to other claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 108:**

All documents and things referring or relating to, or otherwise evidencing, any internal intellectual property strategy, business strategy, or plan relating to physiological monitoring technology.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 108:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this Request as overbroad and unduly burdensome to the

extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrase "physiological monitoring technology." Apple objects to this Request as overly broad and unduly burdensome because it is not reasonably limited to the scope of infringement allegations in this litigation. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to other claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 109:**

All documents and things referring or relating to forecasts, projections, or strategic evaluations regarding Defendant's consideration of a purchase, acquisition, or license of technology from any company concerning physiological monitoring.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 109:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent it seeks documents or information that are subject to any protective order interest, privacy interest, contractual obligation, non-disclosure agreement, confidentiality agreement, secrecy order, or other such confidentiality obligation owed to any third party. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or

-26-

documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement.  Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request.  Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrase "physiological monitoring."  Apple objects to this Request as overly broad and unduly burdensome because it is not reasonably limited to the scope of infringement allegations in this litigation.  Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

## A.   Plaintiffs' Position

Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The propounding party bears an initial burden of making a "minimal showing of relevance."  *DeSilva v. Allergan USA, Inc.*, 2020 WL 5947827, at *3 (C.D. Cal. Sept. 1, 2020).  "Once the minimal showing of relevance is made, '[t]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'"  *Id.* (quoting *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)).  As discussed below, RFPs 101-106, 108, and 109 seek relevant information and are proportional to the needs of the case.  Apple

raises a number of objections and attempts to limit its production, but fails to show discovery should be limited.

### 1.   RFPs 101-106, 108, and 109 Seek Relevant Information And Are Proportional To The Needs Of The Case

RFPs 101-106, 108, and 109 seek sales and marketing information about the Apple Watch, and information relevant to the significance and value of various features of the Apple Watch.  This information is relevant to Plaintiffs' trade secrets and damages.  In particular, RFPs 101-106 seek documents about analysis of products that compete against the Apple Watch, Apple's evaluation of healthcare and consumer sales, Apple's efforts to promote the Apple Watch, market studies and market share, and valuations of physiological monitoring technology.  RFP 108 seeks documents about Apple's internal intellectual property strategy and business plans relating to physiological monitoring.  RFP 109 seeks documents about Apple's forecasts, projections, and strategic evaluations regarding Apple purchasing and licensing physiological monitoring technology.

California law entitles a trade secret owner to recover actual damages, unjust enrichment, or a reasonable royalty.  Cal. Civ. Code § 3426.3(a) and (b).  Evidence related to Apple's profit due to the misappropriation is highly relevant to the calculation of damages.  Evidence comparing the Apple Watch to Plaintiffs' products or technology or any other health care technology, is relevant to the value of Plaintiffs' technology in the Apple Watch.  Evidence showing Apple desired improved physiological monitoring to enter or expand sales is relevant to the undue benefit Apple received based on Plaintiffs' trade secrets.  Apple's marketing documents will show the significance Apple placed on improved physiological monitoring performance.  It would also support Apple's motive to misappropriate Plaintiffs' trade secrets.  The evidence discussed above is thus relevant to many forms of damages.  Cal. Civ. Code § 3426.3(a) and (b).

These requests are also relevant to Plaintiffs' business and marketing plans and strategies trade secrets.  One such trade secret recites:



Thus, in addition to damages, these RFPs are directly relevant to Plaintiffs' business and marketing trade secrets.

These RFPs are also proportional to the needs of this case for the same reasons discussed above. Among other things, these RFPs seek relevant information, the amount in controversy is high, and Apple cannot claim it lacks resources to search because it is the most valuable public company on earth.

### 2. Apple's Objections and Limitations Lack Merit

Apple's written responses included pages of boilerplate objections. The Court need not consider such "general or boilerplate objections" that Apple did not maintain and explain. *Nguyen v. Lotus by Johnny Dung Inc.*, 2019 WL 4579259, at *3 (C.D. Cal. June 7, 2019). During the meet and confer, Apple relied on a handful of its objections and attempted to unilaterally limit its production. Ex. 24 at 3-4, 9-11. Apple's objections and limitations lack merit.

### a.   **Apple's Relevance and Overbreadth Objections Lack Merit**

**RFPs 101-102**.   Apple objects to these requests because they purportedly seek information that is not relevant to the claims or defenses in this case.  Ex. 24 at 11.  But Apple raised only a boilerplate relevance objection and never attempted to support it. Apple's most recent April 11 letter also argues RFP 102 was not proportional to the needs of the case.  Ex. 27 at 3.  But Apple raised no proportionality objection in its written responses.   As discussed above, these RFPs are relevant to certain trade secrets and Plaintiffs' damages case.  *See* Section II.A.1, *supra*.  Thus, Apple's objections to RFPs 101-102 lack merit.

**RFP 103**.  Apple originally committed to producing documents "sufficient to show the differences, similarities, or comparisons between the consumer market and the health care market, to the extent such documents exist and can be located following a reasonable search."  Ex. 22 at 2.  Apple eventually agreed to remove its "sufficient to show" limitation for many RFPs in exchange for Plaintiffs removing their "sufficient to show" limitation on various RFPs.  Ex. 40 at 1-2.  However, Apple then refused to produce ***any*** documents in response to this RFP, now claiming it does not "understand the distinction Plaintiffs appear to be attempting to draw between 'the consumer market' and 'the health care market,'" and, "without an understanding of the seeming non-sensical distinction between those markets, Apple does not know how to go about looking for responsive documents."  Ex. 24 at 11.  Apple's new objection lacks merit because Plaintiffs are asking for ***Apple's*** documents about ***Apple's*** understanding of differences, similarities, and comparisons between consumer and health care sales.  ***Plaintiffs'*** understanding is not relevant to Apple providing responsive documents.

██████████████████████████████████   But that is not a basis to refuse discovery.  *See Carrizosa v. Stassinos*, 2006 WL 1581953, at *1 (N.D. Cal. June 6, 2006) (explaining "the propriety of discovery does not turn on one party's belief that the claims are without merit"); *Manzo v. Cty. of Santa Clara*, 2019 WL 2866047, at *2 (N.D. Cal. July 3, 2019) (explaining "the Court does not assess the ultimate merits of the claim or defense" for motions to compel); *Elkin v. New York Life Ins. Co.*, 2017 WL 4047235, at *2 (C.D. Cal. Sept. 8, 2017) ("[T]he current motion presents a discovery dispute, and the Court is not resolving the merits of the parties' claims and defenses.").  Apple's objection lacks merit.

On April 11, Apple raised yet another new objection by arguing RFP 103 was "overly broad" because it asked for documents concerning "differences, similarities, or comparisons."  Ex. 27 at 3.  But Apple offered no argument or evidence to support that objection.  Apple offered to "further discuss" this RFP, but the parties have already attended multiple conferences of counsel, exchanged eight letters, and sent numerous other emails all about this specific RFP.  *See* Exs. 18-27; Powell Decl. ¶ 2.  Apple should not be able to postpone resolution indefinitely by adding new objections months into the parties' discussions.  That is particularly true because Apple is relying on the discovery deadline approaching in three months to ask the Court to dramatically limit its discovery obligations.  Dkt. 332-1 at 1.

*RFP 104*.  Apple argues this request is "overbroad because, as written, it would pick up any advertising or marketing ever done for the Apple Watch."  Ex. 24 at 11.  But Plaintiffs offered to limit this RFP to physiological monitoring features.  *Id.*  Apple argued that is still not narrow enough and limited its response to "light-based physiological monitoring," which would "exclude, for example, an accelerometer."  *Id.*

Apple's objection to the term "physiological monitoring" lacks merit.  The term "physiological monitoring" appropriately limits these RFPs to exclude features of the Apple Watch that are not at issue, such as the clock and calendar.  The parties have repeatedly used this common term to target relevant issues in other aspects of this case.  For example, the protective order requires experts to identify work in "non-invasive

*physiological monitoring* technologies." Dkt. 67 at 14.  The prosecution bar Apple sought in this case similarly refers to "non-invasive monitoring." *Id.* at 17.  Apple has also agreed that the term "physiological monitoring" appropriately narrows the scope of RFPs in this case.  *See* Ex. 17 at 2 (Apple agreeing to limit RFPs 214 and 215 to "Apple implementing any physiological monitoring products"); Ex. 21 at 2 and 4 (Apple suggesting the parties limit RFPs 207, 244, and 246 to "physiological monitoring").  Apple also used the same term in its own RFPs to Plaintiffs just a few weeks ago.  *See, e.g.*, Ex. 30 at RFP 132 ("All Documents reflecting Your efforts to track Apple's development and marketing of any non-invasive *physiological monitoring* technology"), *id. at* RFP 133 ("All of Your draft and published technical bulletins and whitepapers relating to non-invasive *physiological monitoring* technology").

Moreover, Plaintiffs' sales and marketing trade secrets are not limited to the physiological directly parameters at issue in the technical trade secrets.  *See* Ex. 28 ¶ 43.1; *see also* Ex. 29 at 8-9.  Thus, Apple's marketing efforts with respect to the electrocardiogram feature, for example, are relevant to Plaintiffs' sales and marketing trade secrets.  Additionally, discovery on such parameters is relevant to damages because it shows the value Apple places on performance and accuracy.  Such evidence is relevant to show the value and importance that Apple placed on acquiring Plaintiffs' technology.

Apple's alternate proposal to limit this request to "light-based physiological monitoring" to "exclude, for example, an accelerometer" also lacks merit.  *See* Ex. 24 at 11.  As discussed, marketing information for other physiological parameters, such as the watch's electrocardiogram feature, is relevant to Plaintiffs' trade secrets and damages.  Apple's reference to an accelerometer also makes no sense because an accelerometer is a sensor,[2] not a physiological parameter like pulse rate, oxygen saturation, or electrocardiogram.  Moreover, accelerometers *can* be used in the calculation of light-based

---

[2] An accelerometer is "an instrument for measuring acceleration or for detecting and measuring vibrations."  See https://www.merriam-webster.com/dictionary/accelerometer.

parameters.   For example, an accelerometer can be used to detect motion that would decrease the accuracy of the oxygen saturation calculation.[3]

*RFP 105*.   Apple's March 9, letter articulated no objections to this RFP, but limited its production based on Section 2019.210.   Ex. 24 at 10.   That is inappropriate for the reasons discussed below.   *See* Section II.A.2.b, *infra*.   In its April 11 letter, Apple newly argued that RFP 105 is "overbroad" because, as written, it would pick up any market studies ever done for the Apple Watch.   Ex. 27 at 4.   As an initial matter, Apple should not be permitted to inject new objections months into the meet and confer process.   Regardless, Apple's new objection lacks merit because Apple makes no attempt to show the number of market studies is so high that producing them would be burdensome.   If Apple were to articulate such an objection in the future, Plaintiffs would be willing to limit this RFP to "physiological monitoring," which is an appropriate limitation for all of the reasons discussed above.

*RFPs 106, 108, and 109*.   Apple similarly objects to these RFPs as overbroad based on the term "physiological monitoring."   Ex. 24 at 10.   That objection lacks merit for the reasons discussed above.   Rather than impose a "light-based physiological monitoring" limitation as it did for RFP 104, Apple instead applies a unilateral Section 2019.210 limitation.   That limitation lacks merit for the reasons discussed below.

### b.   Apple's Unilateral Section 2019.210 Limitation Lacks Merit

Apple has stated it will produce documents for RFPs 105, 106, 108, and 109 only if Apple determines that they relate to "the alleged trade secrets in Plaintiffs' Section 2019.210 disclosure . . . ."   Ex. 24 at 10-11.   As discussed above, Apple has no valid objection to these RFPs.   Thus, Apple cannot withhold specific documents that *Apple*

---

[3] Patient motion has long caused inaccurate readings in pulse oximeters, which leads to many problems including blindness in premature infants.   Ex. 28 ¶ 11.   Plaintiffs' revolutionized pulse oximetry by creating technology that provided accurate measurements in the presence of motion and low peripheral blood flow.   *Id.*

unilaterally determines are not "relevant" to Plaintiffs' Section 2019.210.  *See Kilroy v. L.A. Unified Sch. District Board of Educ.*, 2018 WL 6071089, at *1 (March 7, 2018) ("If the responding party does not offer a valid objection, it must produce all requested documents that are in its possession, custody, or control.").  Just like any other case, Apple must produce responsive documents and cannot unilaterally limit its production to documents that Apple considers "relevant."

Apple's limitation is also inappropriate because sales and marketing information regarding physiological monitoring is relevant to damages even if not directly relevant to a particular trade secret.  Apple's evaluation of the relevant market(s) and the importance of accurate measurements are directly relevant to damages even if a particular document does not show misappropriation of trade secrets.  That is true even for other physiological monitoring technologies, such as the electrocardiogram feature.  Thus, Apple cannot limit its production to information that directly shows misappropriation.

Moreover, Section 2019.210 is a procedural requirement to "commenc[e] discovery"—not a basis to withhold documents.  *See* Cal. Civ. P. Code § 2019.210.  As the California Court of Appeal explained, the "designation should be liberally construed, and reasonable doubts about its sufficiency resolved in favor of allowing discovery to go forward."  *Brescia v. Angelin*, 172 Cal. App. 4th 133, 149 (2009); *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 837 (2005) ("Any doubt about discovery is to be resolved in favor of disclosure.").

The California Court of Appeal also explained the scope of discovery is broader than the specific trade secrets identified in a Section 2019.210 disclosure.  *See Perlan Therapeutics, Inc. v. Superior Ct.*, 178 Cal. App. 4th 1333 (2009).  In requiring a plaintiff to identify its trade secrets with "reasonable particularity," the court explained that "[i]f, through discovery, [Plaintiff] uncovers information suggesting defendants misappropriated additional trade secrets, it may have good cause to amend its trade secret statement under appropriate circumstances."  *Id.* at 1350.  The court credited plaintiff's concern that a narrow identification of trade secrets could "constrain[]" discovery and "prevent [plaintiff]

-34-

from ever finding out about trade secrets that were stolen." *Id.* at 1351, n.12.  The Court addressed that concern by explaining "it is important to remember that the parties may conduct discovery 'regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence.'"  *Id.* (modification in original).[4]

Apple has previously cited *Computer Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999), for the proposition that one purpose of Section 2019.210 is to "fram[e] the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope."  That may be true, but it does not provide a basis for Apple to withhold discovery as to particular documents based on Apple's own decision that the document does not relate to Plaintiffs' Section 2019.210 statement.  A Section 2019.210 statement guides the Court's decision as to whether a discovery request seeks relevant documents much like a patent claim guides discovery in a patent case.  Once the Court has determined that a request seeks relevant information, however, the defendant should not be permitted to withhold particular responsive documents merely because the defendant contends that they do not directly relate to a particular trade secret.  Such an approach would enable a defendant to create undisclosed gaps in its document production, with the opposing party having no ability to challenge withheld discovery.

Permitting Apple to withhold specific documents based on Section 2019.210 would be extremely prejudicial because Apple has already shown that its view of relevance is much narrower than Plaintiffs.  As discussed in Plaintiffs' first motion to compel, Apple has already improperly withheld discovery on its pulse-rate algorithm just because it

---

[4] The discovery standard in state court differs from federal court, but *Perlan* still shows the scope of discovery is broader than Section 2019.210.  Here, Plaintiffs here are entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b).

believes it did not misappropriate Plaintiffs' trade secrets.  Apple has also argued it should not have to produce documents showing it "considered" Plaintiffs' trade secrets because "considering is not relevant."  Ex. 22 at 5.  That is contrary to law.  *See PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (2000); *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012).  Apple's limitation would also allow it to withhold evidence showing it misappropriated other trade secrets of which Plaintiffs are not yet aware.  Plaintiffs are entitled to learn of such additional acts of misappropriation.  *See Perlan Therapeutics*, 178 Cal. App. 4th at 1350.  Allowing Apple to unilaterally make this relevance determination amounts to self-help limiting discovery.

Accordingly, Apple has not shown why discovery should be limited.  The Court should overrule Apple's objections and order Apple to produce all responsive documents.

**B.   Apple's Position**

**1.   Plaintiffs' RFPs 101-105 Are Overbroad And Unduly Burdensome**

RFPs 101–105 are "hopelessly overbroad, resulting in an undue burden" to Apple because they seek information regarding functionality, competitors, markets, and products "not tied to the specific allegations at issue."  *Castle v. Lugo*, 2020 WL 5356935, at *5 (C.D. Cal. June 19, 2020) (Early, J.).  These RFPs seek *all* documents concerning (1) any competitive analysis of *any competitor to the Apple Watch Products*, even if they do not offer the functionality at issue, (2) Apple's evaluation of the health care market for *any Apple products*, even though only the Apple Watch is mentioned in the complaint, (3) Apple's comparison of *undefined* health care and consumer markets for the Apple Watch, and (4)–(5) Apple's efforts to promote and/or market, and any market studies, market share, and competition relating to, *any* Apple Watch Products, even if the marketing has nothing to do with allegedly misappropriating technology.

In an effort to justify these requests, Plaintiffs focus on small subsets of documents within the RFPs' broader scope, but they ignore the huge swaths of irrelevant information the requests would also require Apple to produce—including information regarding wholly irrelevant Apple products nowhere mentioned in the complaint.  Apple has offered

reasonable compromises to narrow the scope of the RFPs to relevant information, but Plaintiffs have rejected all of them.  Because it is not incumbent on the Court "to rewrite the requests itself," Plaintiffs' motion should be denied.  *Koeper v. BMW of N. Am., LLC*, 2018 WL 6016915, at *1 (C.D. Cal. May 21, 2018) (denying motion to compel when the court "might have been willing to consider allowing some discovery pertaining to" relevant information "had the document requests been sufficiently narrowly written").

Plaintiffs' "proportionality" arguments do not save these requests.  Plaintiffs claim that Apple is "the most valuable public company on earth."  J.S. 29.  But Apple's resources are not unlimited and do not give Plaintiffs license to take whatever discovery they wish. Even when dealing with "a large corporation with substantial resources," the "Court should not be—and is not—insensitive to the[] costs" associated with overbroad discovery.  *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5055241, at *3 (D.N.J. Aug. 21, 2015); *see Koeper*, 2018 WL 6016915, at *1 (explaining that the "significant effort" required to gather large sets of information cannot be ignored even when a defendant has "substantial resources").  Accepting Plaintiffs' argument to the contrary would mean that any party would be subject to overbroad and disproportionate discovery solely based on its financial success.  That is not a tenable reading of the proportionality requirements of Rule 26.  Plaintiffs also claim that the amount in controversy is high, but even if a high amount in controversy were license to engage in overbroad discovery (it is not), Plaintiffs notably refuse to provide any information to Apple—in interrogatory responses or otherwise, Samplin Decl. Ex. E, at 55 (3.12.2021 Samplin Ltr. at 3); *id.* Ex. F, at 62 (4.2.2021 Kachner Ltr. at 5)—as to what this amount in controversy might be.  Plaintiffs have failed to show that their requests are proportional to the needs of this case.

**RFP 101.**  RFP 101 seeks "[a]ll documents and things concerning any competitive analysis of *any competitor to the Apple Watch Products*" (emphasis added).  On its face, this request is impermissibly overbroad:  it encompasses documents relating to *any product that presently competes—or could compete—*with the Apple Watch regardless of whether

that product either provides, or is even capable of providing, functionality that competes with the technology claimed to be a trade secret in this case. *See Anokiwave, Inc. v. Rebeiz*, 2019 WL 3935817, at *2 (S.D. Cal. Aug. 20, 2019) (denying motion to compel because there was no showing that information sought was "relevant to the claims and trade secrets as alleged by Plaintiff"); *In re Outlaw Labs., LP Litig.*, 2020 WL 4436364, at *5 (S.D. Cal. Aug. 3, 2020) (holding RFP overbroad where it "include[ed], but [was] not limited to" accused products). Plaintiffs cite no authority to support their burdensome request.

The Apple Watch provides a host of functionality that has nothing to do with the claimed secrets in this case—e.g., Phone and Messaging, Apple Pay, Siri, Maps, Hotel or Car Key Replacement, Remote Control Functions, Passbook Integration for travel, Digital Touch Communication, and Calendar Notifications—to name a few. *See, e.g.*, https://www.apple.com/apple-watch-se/). Rule 26 does not require Apple to produce documents related to *any* competitive analysis of *any* product that purports to compete with *any* of the foregoing functionality without regard to whether the document relates to the alleged trade secrets at issue. *Id.* In an attempt to compromise, Apple proposed to produce documents responsive to this RFP that relate to the Apple products accused of incorporating Plaintiffs' alleged trade secrets. Plaintiffs' Ex. 27, at 349 (4.11.2021 Samplin Ltr. at 3). Plaintiffs rejected Apple's proposal in favor of their overly broad request.

With respect to proportionality, Plaintiffs argue that Apple did not raise a proportionality objection in its response to this request, J.S. 30, but Apple *did* expressly object to the overbreadth and burdensomeness of this request on three separate grounds, *see* J.S. 19, and offered "to meet and confer . . . to discuss the scope of this Request," *id.* at 19–20. That is more than sufficient to preserve Apple's proportionality objection. *Cf. Westheimer Regency I, L.P. v. Great Lakes Reinsurance (UK) SE*, 2018 WL 7198642, at *2 n.3 (W.D. Tex. Aug. 15, 2018) (objection that RFP "exceed[ed] the scope of authorized discovery by seeking documents beyond the parties' claims or defenses," "essentially raise[ed] a proportionality argument," and was therefore not waived). And regardless of the specific terminology used in Apple's objections, Plaintiffs do not have a right under

-38-

Rule 26(b)(1) to obtain discovery that is not "proportional to the needs of the case." *Id*.
To suggest otherwise renders the rule a nullity. *See Moody v. Cty. of Santa Clara*, 2019
WL 3302722, at *2 (N.D. Cal. July 23, 2019) (objections aside, "[t]he parties and the court
have a collective responsibility to consider the proportionality of all discovery and consider
it in resolving discovery disputes").

A more limited version of RFP 101 is sufficient—namely, documents concerning
any competitive analysis of any product providing *functionality* that competes with those
portions of the Apple Watch Products claimed to incorporate Plaintiffs' trade secrets.
Anything beyond this limitation is overbroad and unduly burdensome.

**RFP 102.**  RFP 102 seeks "[a]ll documents and things related to Apple's evaluation
of the health care market for *Apple products including the Apple Watch Products*"
(emphasis added).  This request is overbroad on its face.  Plaintiffs have not alleged that
*any* product manufactured by Apple, except for the Apple Watch Series 4, 5, and 6,
purportedly "include[] Plaintiffs' technologies."  Plaintiffs' Ex. 28, at 362–63 (4th AC,
¶ 25).  Apple invents and manufactures a host of products that are completely unrelated to
this lawsuit—e.g., the Mac, iPad, iPhone, and Apple TV.  As currently phrased, this RFP
would encompass a hypothetical market evaluation concerning the use of the Apple TV in
a hospital, which is obviously irrelevant.  *See MedImpact Healthcare Sys., Inc. v. IQVIA
Inc.*, 2021 WL 719649, at *2 (S.D. Cal. Feb. 24, 2021) (Plaintiffs' Amended Complaint
"confirm[s] that this case is about . . . "PBM"[] products offered by IQVIA. . . .  Plaintiffs'
RFPs, however, are not limited to PBM products.  Because Plaintiffs' RFPs would require
Defendants to produce documents on products not at issue in this case, the Court declines
to compel . . . further responses."); *Outlaw Labs.*, 2020 WL 4436364, at *5 (RFP was
overbroad where it "include[ed], but [was] not limited to" accused products).

Plaintiffs purport to justify their broad RFP by arguing it seeks information relevant
to damages.  Plaintiffs' Ex. 25, at 334 (3.25.2021 Powell Ltr.).  Plaintiffs thus appear to be
arguing that they may seek damages for products that have not been pleaded as misusing
their alleged secrets.  Again, Plaintiffs cite no authority for this illogical proposition—

because the case law prohibits such overreaching.  *See MedImpact Healthcare*, 2021 WL 719649, at *2.  And even if they could cite authority (which, again, they have not attempted to do), Plaintiffs still have not demonstrated how such an RFP possibly could comport with the proportionality requirement of Rule 26.   When asked to explain their damages justification, Plaintiffs declined to do so.  Plaintiffs' Ex. 42, at 681 (4.13.2021 Powell Ltr.).

As with RFP 101 above, Plaintiffs argue that Apple supposedly did not raise a proportionality objection in its response to this request, J.S. 30.  But for the reasons cited above with regard to RFP 101, this assertion fails.

A more limited version of RFP 102 is sufficient—namely, documents concerning Apple's evaluation of the health care market for *the Apple Watch Products*.   Anything beyond this limitation is overbroad and unduly burdensome.

***RFP 103.***   RFP 103 seeks "[a]ll documents and things relating to differences, similarities, or comparisons between the consumer market and the health care market for Apple Watch Products."   Apple initially objected to this Request as "vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrase "consumer market and the health care market." J.S. 21.  Nevertheless, during meet and confers, Apple proposed to produce documents "sufficient to show the differences, similarities, or comparisons between the consumer market and the health care market, to the extent such documents exist and can be located following a reasonable search."  Plaintiffs' Ex. 22, at 301 (Samplin 2.15.2021 email to Powell at 2).[5]   After further analysis of how it might collect such documents, Apple concluded that it did not understand how *Plaintiffs* "ha[d] attempted to draw" the line "between 'the consumer market' and 'the health care market.'"

---

[5]  Plaintiffs also argue that Apple somehow "newly asserted an overbreadth objection. Plaintiffs are wrong:  Apple specifically objected on the basis of overbreadth.  *See* J.S. 19. During the meet and confer, Apple further explained the request was overbroad "once a sufficient to show limitation is removed."  Plaintiffs' Ex. 27, at 349 (4.11.2021 Samplin Ltr. at 3).

Plaintiffs' Ex. 27, at 349 (4.11.2021 Samplin Ltr. at 3).  Apple explained this to Plaintiffs and requested clarification.  *Id*.

Plaintiffs claim that their "understanding is not relevant."  J.S. 30 (emphasis added).

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████  Plaintiffs' understanding of these markets is thus central to complying with this request.  Rather than explain this difference, Plaintiffs simply declared that "the parties reached an impasse."  Plaintiffs' Ex. 42, at 681 (4.13.2021 Powell Ltr. at 3).

Apple's vagueness and overbreadth objections—and its simple request for clarification—are indisputably proper.  ███████████████████████████

██████████████████████████████████  Plaintiffs also refer to various markets inconsistently in their public filings.  For example, Masimo's 2021 10-K describes "market opportunities in both the hospital and non-hospital care settings," Samplin Decl. Ex. L, at 195, "the fire/alternate care market," "markets such as the physician office and emergency departments," *id*. at 197, the "consumer market," *id*. at 192, and sales in "emergency medical service (EMS) providers, physician offices, veterinarians, [and] long term care facilities," *id*. at 190.  In its 2015 10-K, Masimo also disclosed that it "launched iSpO 2®, a *non-medical use* pulse oximeter intended for *sports and aviation use*," which it is purportedly "marketing . . . in accordance with the FDA's current policy and enforcement discretion which indicates that pulse oximeters that are not intended for medical purposes can be marketed directly to consumers . . . ."  Samplin Decl. Ex. M, at 246 (Masimo 2015 10-K) (emphasis added).  And Masimo further disclosed in its 2021 10-K that it sells its

"non-medical/consumer products through e-commerce Internet sites.  Samplin Decl. Ex. L, at 223.  Do Plaintiffs claim that the "consumer" market encompasses both medical and non-medical uses?  Do they claim that the "consumer" market is any sale of their products to consumers, regardless of use—i.e., even if for consumers' health care?  Do Plaintiffs claim that the "health care market" includes "alternate care" and "long term care facilities"?



Finally, Plaintiffs incorrectly assert that

**RFP 104.**  RFP 104 seeks "[a]ll documents and things that relate to Apple's efforts to promote and/or market any of the Apple Watch Products."  Like RFP 101, this request is facially overbroad because it encompasses documents relating to *any* effort to market the Apple Watch regardless of whether that marketing relates to functionality or technology claimed to be a trade secret in this case.  *See Anokiwave*, 2019 WL 3935817, at *2.[7]  Recognizing this fact, Plaintiffs now offer to limit this request to any advertising or marketing ever done for "physiological monitoring" for the Apple Watch.

---

[6]  For this reason, Plaintiffs' citations to *Carrizosa v. Stassinos*, 2006 WL 1581953, at *1 (N.D. Cal. June 6, 2006), *Manzo v. Cty. of Santa Clara*, 2019 WL 2866047, at *2 (N.D. Cal. July 3, 2019), and *Elkin v. New York Life Ins. Co.*, 2017 WL 4047235, at *2 (C.D. Cal. Sept. 8, 2017) are pointless.

[7]  As currently phrased, this RFP also would appear to encompass documents relating to Plaintiffs' alleged hospital strategy trade secrets, recently dismissed in the Court's order of April 21, 2021.  *See* Samplin Decl Ex. H, at 145–46, 148 (Order at 5–6, 8) (dismissing

This "limit," unfortunately, does not cure the RFP's overbreadth. During the parties' negotiations, Apple explored with Plaintiffs the possibility of at a minimum limiting this RFP to "light-based physiological monitoring," which would "exclude, for example, an accelerometer." *See* Plaintiffs' Ex. 23, at 315; Plaintiffs' Ex. 24, at 328. Apple initially considered this possibility because Plaintiffs suggested this limitation in response to Apple's objections to Interrogatories Nos. 7 and 8. *See id.* at 312. Plaintiffs refused even this limitation, arguing that documents relating to non-light based physiologic monitoring was somehow relevant to damages. Plaintiffs' Ex. 23, at 315. But Plaintiffs have not accused any non-light-based functionalities of misappropriating their alleged trade secrets, and therefore cannot possibly have any claim to damages based on those unrelated functionalities. Moreover, Apple's intent with respect to this RFP was the same as its proposal for Interrogatory No. 7—agreeing "to limit the scope of the information sought to 'light-based physiological monitoring' *related to the alleged trade secrets in Plaintiffs' Section 2019.210 disclosure*." Plaintiffs' Ex. 24, at 321–22 (emphasis added) (explaining this limitation for Interrogatory No. 7). At no point did Apple agree to provide discovery untethered from Plaintiffs' alleged trade secrets. Again, the Apple Watch does far more than what Plaintiffs claim involves their alleged secrets: the Apple Watch Series 4 and later provide "fall detection," through inclusion of a "next generation accelerometer and gyroscope," which allows the Apple Watch to detect a person's "immobility" after "hard falls occur." Samplin Decl. Ex. K, at 180 (09.12.2018 Apple Watch Series 4 Press Release). Mobility is an indicator of physiological function. *Id.* Plaintiffs do not allege Apple stole such technologies, or that their alleged marketing secrets "directly" relate to these  technologies. ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

alleged secrets 44.1–44.4).

-43-

███████████████████████████████████.  Plaintiffs' Ex. 28, at 446–47 (4th AC ¶ 246). Because their complaint does not support this overreaching discovery request, Plaintiffs speculate that "accelerometers ***can*** be used in the calculation of light-based parameters." J.S. 32–33.  Such speculation does not justify even their "narrowed" request—particularly where Plaintiffs' alleged trade secrets have nothing to do with any accelerometer functionality, and Apple has proposed a simple, workable solution that *is* proportional to the needs to the case—limit the RFP to the marketing the technologies actually alleged in the complaint.  *See MedImpact Healthcare*, 2021 WL 719649, at *2.

Plaintiffs' arguments to the contrary make no sense.  Plaintiffs assert that the "parties have repeatedly used [the term 'physiological monitoring'] to target relevant issues," and argue that Apple has agreed to this phrase in the protective order and to limit other RFPs. J.S. 31–32.  To be clear, Apple has consistently used the term "physiological monitoring" to refer to the *specific* physiological monitoring functionalities that are related to Plaintiffs' alleged trade secrets.  Apple has never agreed that "physiological monitoring" may refer to other, unrelated functionalities simply because they could monitor a person's physiological parameters in some way.  Although Plaintiffs half-heartedly argue that discovery into such unrelated features is somehow relevant to damages and to the purported "value and importance that Apple placed on" supposedly acquiring Plaintiffs' alleged trade secrets, J.S. 32,[8] they do not explain how that is the case (it is not).  Discovery into technology *unrelated* to Plaintiffs' alleged trade secrets is irrelevant both to Apple's alleged efforts to acquire the claimed secrets and to damages concerning the alleged misappropriation of the same.

---

[8] Plaintiffs' attempt to argue relevance based on the purported "value and importance" to Apple of any physiological parameter should be rejected.  To the extent there is any purportedly relevant "value and importance" here, it must be tied to Plaintiffs' alleged trade secrets.  *See* Plaintiffs' Ex. 28, at 369–375 (4th AC ¶¶ 40.16, 41.6, 42.6, 43.8, 44.7, 45.4).

-44-

1   Plaintiffs also argue "physiological monitoring" is an appropriate limiting term
2   because "the protective order requires experts to identify work in 'non-invasive
3   physiological monitoring technologies.'"   J.S. 31–32.   But a proposed expert's prior
4   experience with broad categories of technologies that may have contributed to that expert's
5   expertise has no relevance to the scope of permitted discovery, which must be limited to
6   the specific technologies that are at issue in this case.   Moreover, the protective order was
7   negotiated in the context of both the trade secret and patent case.   The phrase "physiological
8   monitoring" is too broad to serve as a limit now that the parties are litigating *only* the trade
9   secret claim.   Also unavailing is Plaintiffs' argument that "Apple has . . . agreed that the
10  term 'physiological monitoring' appropriately narrows the scope of RFPs."   J.S. 32.   The
11  referenced RFPs—RFPs 214 and 215—request documents relating to meetings and
12  agreements, respectively, between Apple and Plaintiffs.   All such meetings and agreements
13  known to Apple have concerned Plaintiffs' technology, *see* Plaintiffs' Ex. 28, at 360, 437
14  (4th AC ¶¶ 19, 230); thus, the term "physiological monitoring" in this context would
15  exclude technologies Plaintiffs do not produce, e.g., non-light-based technologies.[9]

16  Finally, Plaintiffs baldly assert that "Apple's marketing of *any* physiological
17  parameter" also is relevant to damages.   Plaintiffs' Ex. 42, at 681 (04.13.2021 Powell Ltr.
18  3 (emphasis added)).   The example they provide to support that assertion is the Apple
19  Watch's "electrocardiogram feature."   J.S. 34.   But Plaintiffs have not accused that feature
20  of misappropriating their alleged trade secrets, and it is thus irrelevant to any issue in this
21  case, including damages.   As discussed below (Section III.B.2), Plaintiffs' attempt to obtain
22  discovery of irrelevant physiological parameters on the theory that "*any* physiological
23  parameter" is relevant to damages ignores that Plaintiffs cannot seek damages on a theory

24
25
26  ---

[9] RFPs 207, 244, and 246—also referenced by Plaintiffs—similarly request documents
27  related to Apple's interactions with hospitals, which have not concerned non-light-based
28  technologies like accelerometers.

-45-

of misappropriation that is absent from the complaint.  Cal. Civ. Code § 3426.3 (requiring causation).

   ***RFP 105.***  RFP 105 seeks "[a]ll documents and things that relate to any market studies, market share, competition, and/or competitor products relating to any of the Apple Watch Products."  As with RFPs 101 and 104, this request is not tailored to the needs of the case.[10]  Plaintiffs assert that "Apple makes no attempt to show the number of market studies is so high that producing them would be burdensome."  J.S. 33.  Plaintiffs misstate the scope of this RFP by falsely suggesting it seeks only "market studies."  The plain text of the RFP disproves their argument:  "[a]ll documents and things that *relate to* any market studies, market share, competition, and/or competitor products *relating to* any of the Apple Watch Products" (emphasis added).  Not only does this RFP seek overbroad discovery into anything *related* to market studies, it goes even further to seek discovery into anything that relates to *competition and/or competitor products* relating to the Apple Watch.  As explained above, such competition would involve products and functionalities that have nothing to do with this case.  Accordingly, this RFP is overbroad and not proportional.  *See Anokiwave*, 2019 WL 3935817, at \*2.

   In any event, Apple yet again proposed a sensible solution appropriately tailored to the claims and defenses in this case:  "to produce all documents and things relating to market studies for any technology that accomplishes the same functions as the alleged trade secrets in Plaintiffs' Section 2019.210 disclosure."  Plaintiffs' Ex. 27, at 350 (4.11.2021 Samplin Ltr. at 4).  In response, Plaintiffs simply declared the parties were at "an impasse" and served their portion of this Joint Stipulation.  Plaintiffs' Ex. 25, at 335 (3.25.2021 Powell Ltr. at 3); Plaintiffs' Ex. 42, at 681 (4.13.2021 Powell Ltr. at 3).

---

[10]  Plaintiffs incorrectly argue that Apple should not be permitted to assert "new" objections to this Request because Apple's March 9 meet and confer correspondence "articulated no objections to this RFP."  J.S. 33.  Plaintiffs ignore that Apple's response to this RFP expressly asserted multiple overbreadth and burden objections.  *See* J.S. 23–24.

-46-

## 2.    Plaintiffs' RFPs 106, 108, and 109 Are Likewise Overbroad And Unduly Burdensome

As with RFPs 101, 104, and 105, RFPs 106, 108, and 109 are facially overbroad and not tailored to the needs of this case, and Apple objected accordingly. Again, these RFPs contain no limitations that address the alleged trade secrets, the technologies, or the accused products at issue. Instead, the RFPs cover every valuation (RFP 106); every intellectual property strategy, business strategy, or plan (RFP 108); and every forecast, projection, or strategic evaluation regarding a purchase, acquisition, or license (RFP 109) relating to any physiological monitoring technology—even if not alleged to be a misappropriated trade secret—for iPhones, iPads, and a host of other irrelevant Apple products.

Apple requested that Plaintiffs propose a reasonable limitation to narrow these RFPs. Plaintiffs' Ex. 22, at 300 (2.15.2021 Samplin email). Plaintiffs refused to provide such a limitation. Plaintiffs' Ex. 23, at 314 (2.19.2021 Powell Ltr. at 5). In an effort to compromise, Apple offered to limit the RFPs to the claimed trade secrets in Plaintiffs' Section 2019.210 disclosure—i.e., to produce all documents referring or relating to (i) valuations of the alleged trade secrets in Plaintiffs' Section 2019.210 disclosure (RFP 106); (ii) internal intellectual property strategy, business strategy, or plans relating to the alleged trade secrets in Plaintiffs 2019.210 disclosure (RFP 108); and (iii) forecasts, projections, or strategic evaluations regarding Apple's consideration of a purchase, acquisition, or license from any company of technology that accomplishes the same functions as the alleged trade secrets in Plaintiffs' 2019.210 disclosure (RFP 109). Plaintiffs' Ex. 24, at 327 (3.9.2021 Samplin Ltr. at 10). This compromise provides the information Plaintiffs seek while reasonably limiting the discovery to the actual technology and products at issue in this case. Plaintiffs rejected Apple's proposal. Plaintiffs' Ex. 25, at 334 (3.25.2021 Powell Ltr. at 2).

Plaintiffs make no effort to justify the "hopelessly overbroad" request for "records that facially are not tied to the specific allegations at issue here"—the technology and products unrelated to this case. *Castle v. Lugo*, 2020 WL 5356935, at *5 (C.D. Cal. June

-47-

19, 2020) (denying motion to compel when subject matter of document request was "not tied in any way to the particular issues in this case," which resulted in an undue burden).[11] Plaintiffs' only argument is that Apple cannot limit its discovery obligations to the trade secrets *Plaintiffs* have put at issue.  As set forth below, Plaintiffs' argument fails:  the Section 2019.210 disclosure provides reasonable limitations on discovery to ensure proportionality.  Plaintiffs' attempt to seek discovery of technology and products unrelated to this case is not proportional to the needs of the case.  *See id.*; *Koeper*, 2018 WL 6016915, at *1; *MedImpact*, 2021 WL 719649, at *2; *Outlaw Labs.*, 2020 WL 4436364, at *5.

Numerous courts have confirmed:  "[t]he trade secret designation mandated by Section 2019.210 . . . functions like" a "pleading" "in a trade secret case *because it limits the scope of discovery. . . .*"  *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1346 (2009) (emphasis added); *see, e.g.*, *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 4284523, at *5 (C.D. Cal. June 11, 2019) (Early, J.); *Gatan, Inc. v. Nion Co.*, 2018 WL 2117379, at *2 (N.D. Cal. May 8, 2018).  In other words, a Section 2019.210 statement "delineate[s] the scope of permissible discovery."  *Id.* at 992; *see also Albert's Organics, Inc. v. Holzman*, 2020 WL 4368205, at *3 (N.D. Cal. July 30, 2020) ("[S]ection 2019.210 . . . assists the court and parties in defining the appropriate scope of discovery." (citation omitted)); *BioD, LLC v. Amnio Tech., LLC*, 2014 WL 3864658, at *5 (D. Ariz. Aug. 6, 2014) (explaining that a Section 2019.210 disclosure serves to limit discovery "to ensure that plaintiffs are not on a fishing expedition" and so that "the court *and defendants* can discern the relevancy of *plaintiffs'* discovery requests" (emphasis added)); *Advante Int'l Corp v. Mintel Learning Tech.*, 2006 WL 3371576, at *3 n.4 (N.D. Cal. Nov. 21, 2006) (Cal. Civ. Proc. Code § 2019.210 "provides an appropriate guide in the absence of

---

[11]  RFP 108's reference to "business strategy or plan" would also appear to encompass documents relating to Plaintiffs' alleged hospital strategy trade secrets, recently dismissed in the Court's order of April 21, 2021.  *See* Samplin Decl. Ex. H, at 145–46, 148 (Order at 5–6, 8) (dismissing alleged secrets 44.1–44.4).

specific provisions in the federal rules governing trade secret discovery."); *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005) (explaining that a Section 2019.210 statement "is not itself a pleading but it functions like one in a trade secret case because it limits the scope of discovery in much the same way as the allegations of a complaint limit discovery in other types of civil actions"); *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (Ct. App. 1968) (noting that one purpose of a trade secret description is "to give both the court and the defendant . . . reasonable guidance in ascertaining the scope of appropriate discovery"). Plaintiffs agree—admitting that Section 2019.210 "fram[es] the appropriate scope of discovery" and assists "in determining whether plaintiff's discovery requests fall within that scope." J.S. 35 (quoting *Computer Econ.*, 50 F. Supp. at 985 and agreeing, "[t]hat may be true"); *see also* Samplin Decl. Ex. G, at 103–04 (ECF 259-1 at 35–36 (quoting *Advanced Modular*, 132 Cal. App. 4th at 835, and recognizing that a purpose of Section 2019.210 is to "control the scope of . . . discovery"). Thus, Plaintiffs recognize that the RFPs in this trade secret case must relate to the alleged secrets identified in their Section 2019.210 disclosure. Nevertheless, Plaintiffs argue that Apple may *not* rely on Plaintiffs' Section 2019.210 disclosure as a guide to identifying and producing documents that are relevant and responsive to the claims and defenses in this case. J.S. 33–34 (citing Plaintiffs' Ex. 24 at 10–11 (327–28)). Plaintiffs are wrong, and none of their justifications support their misguided position.

Plaintiffs first claim that, even if the sales and marketing information regarding physiological monitoring is not relevant to misappropriation of any of their alleged trade secrets, the discovery is still "relevant to damages." J.S. 34. But Plaintiffs ignore causation completely. California Civil Code § 3426.3 limits damages in a trade secret misappropriation case to "actual loss *caused by misappropriation*," "unjust enrichment *caused by misappropriation*," or a reasonable royalty to cover for the "period of time the use could have been prohibited." *Id.* § 3426.3(a)-(b). In each instance, damages are expressly tied to *the alleged misappropriation*. Thus, Apple's "evaluation of the relevant market(s) and the importance of accurate measurements" or documents relating to "other

physiological monitoring technologies, such as the electrocardiogram feature" that do not relate to misappropriation of the trade secrets at issue cannot be relevant to damages. *See MedImpact*, 2021 WL 719649, at *2; *In re Outlaw Labs.*, 2020 WL 4436364, at *5. Plaintiffs have made no showing to the contrary, nor have they identified any authority for their claim that discovery could be relevant to damages when unrelated to the alleged misappropriation at issue in this case.

Plaintiffs' second argument is just as flawed.  Plaintiffs assert that they need not limit their discovery requests to their alleged trade secrets because "Section 2019.210 is a procedural requirement to 'commenc[e] discovery.'" J.S. 34.  But it would make no sense for Section 2019.210 to prevent commencement of discovery until Plaintiffs sufficiently describe their alleged trade secrets, but then throw open the doors to discovery that is untethered to those alleged secrets.  The caselaw is clear that Section 2019.210 not only controls commencement of discovery in a trade secret case, but also guides the discovery process.

Plaintiffs next argue that *Perlan Therapeutics* permits trade-secret related discovery somehow to be "broader than the specific trade secrets identified in a Section 2019.210 disclosure." J.S. 34–35 (citing 178 Cal. App. 4th at 1346).  Plaintiffs' reliance on *Perlan* is misplaced.  *Perlan* merely explains that a trade secret disclosure may be *amended* based on a showing of good cause.  *Id.* at 1350.  The case proves Apple's point—as there would be no need to amend a trade secret disclosure after discovery commences if that disclosure plays no role in the ongoing discovery process.  Nothing in *Perlan* suggests that a Plaintiff is entitled—*in the first instance*—to discovery outside the bounds of the identified trade secrets, which Plaintiffs admit they are seeking here.  J.S. 36 (arguing Apple's purported "limitation would . . . allow it to withhold evidence showing it **misappropriated other trade secrets of which Plaintiffs are not yet aware.  Plaintiffs are entitled to learn of such additional acts of misappropriation**") (emphasis added)).  Such a rule would vitiate two primary purposes of the trade secret disclosure rule:  (1) to "prevent[] plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets," and (2) to

"fram[e] the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope." *Perlan*, 178 Cal. App. 4th at 1343. Indeed, the *Perlan* court explained that it is the trade secret plaintiff who controls the scope of discovery to which it is entitled—by choosing how to describe the alleged trade secrets at issue in its Section 2019.210 disclosure. *See id.* n.12 (confirming that it was "conceivable" that a narrow trade secret description "could theoretically prevent" a plaintiff from learning about additional misappropriation). Ignoring Plaintiffs' Section 2019.210 disclosure to permit discovery regarding unpleaded secrets is contrary to the law. *See id.*; *see also Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 1724763, at *3 (N. D. Cal. May 1, 2014) (condemning trade secret disclosure where Plaintiff "conceded that nine of the eleven items promised in the complaint were not disclosed in its statement of alleged trade secrets").

Plaintiffs' attempt to distinguish *Computer Economics, Inc. v. Gartner Group., Inc.* also fails. Relying on that case, Plaintiffs inexplicably argue that discovery should not be tied to their trade secret description because a "Section 2019.210 statement guides the *Court's* decision as to whether a discovery request seeks relevant documents," J.S. 35 (emphasis added)—implying that Section 2019.210 can assist *only* the Court, and not a defendant, in that regard. But this distinction makes no sense and is wrong as a matter of law. To the extent Plaintiffs are suggesting that Apple should ask the Court to rule on the scope of *each* discovery request it receives from Plaintiffs in reference to the Section 2019.210 disclosure *before* undertaking its own evaluation of the scope of that request, such a proposition is absurd and unworkable. Plaintiffs' assertion that Apple cannot evaluate the relevance of Plaintiffs' discovery requests vis-à-vis their Section 2019.210 disclosure and object when such requests are overbroad, *see* J.S. 35, is likewise wrong. Rule 26 does not require Apple to turn over all of its files to Plaintiffs regardless of relevance so that *Plaintiffs* can be the sole arbiters of what information relates to their alleged trade secrets. As *Diodes* (which was cited by *Computer Economics*) makes clear, Section 2019.210 provides to "both the court *and the defendant* . . . reasonable guidance in ascertaining the scope of appropriate discovery." 260 Cal. App. 2d at 253 (emphasis

added); *see also Albert's Organics, Inc. v. Holzman*, 2020 WL 4368205, at *3 (N.D. Cal. July 30, 2020) ("[S]ection 2019.210 . . . assists the court *and parties* in defining the appropriate scope of discovery." (quoting *Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *2 (N.D. Cal. June 14, 2012)) (emphasis added)).  A key purpose of Section 2019.210 is to provide a lens through which both the Court and the parties (including the defendant) can evaluate the boundaries of trade secret-related discovery requests.  Where, as here, Plaintiffs' RFPs lie far outside those boundaries, production should be denied.[12]

Plaintiffs also argue once the Court has made a decision "as to whether a discovery request seeks relevant documents," "the defendant should not be permitted to withhold particular responsive documents merely because the defendant contends that they do not directly relate to a particular trade secret."  J.S. 35.  But that is a straw man—the Court has not yet ruled that these specific requests seek relevant documents.   And Plaintiffs' unsupported position is illogical in any event.  Merely because a document is "responsive" to an improper request does not make it relevant or discoverable.  Nor do Plaintiffs explain how a party is supposed to identify and produce documents relevant to the claims and defenses *and* responsive to requests if that party is not permitted to exercise some good faith judgment.

Equally unavailing is Plaintiffs' attempt to analogize this dispute to patent law. Plaintiffs assert that their "Section 2019.210 statement guides the Court's decision as to whether a discovery request seeks relevant documents much like a patent claim guides discovery in a patent case."  J.S. 35.  That may be true, but it does not support Plaintiffs' attempts to seek discovery unrelated to their alleged trade secrets.  In fact, Plaintiffs'

---

[12] Plaintiffs also cite *Brescia v. Angelin*, 172 Cal. App. 4th 133, 149 (2009), and *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 837 (2005), for the unremarkable proposition that any reasonable doubt about discovery should be resolved in favor of allowing discovery to proceed.  J.S. 34.  But, as explained below, there is *no doubt* here that Plaintiffs' requests are *not* related to their alleged trade secrets enumerated in their Section 2019.210 disclosure.

analogy, if taken to its logical conclusion, contradicts their argument:  if, for example, Plaintiffs were to serve a discovery request in a patent infringement case that was unrelated to the patent claims asserted in that case, such a request would be beyond the scope of permissible discovery.  Any defendant would object in such circumstances precisely as Apple has done here, where Plaintiffs have served requests that are not related to their alleged trade secrets.

Plaintiffs' position boils down to the unfounded assertion that Apple will somehow act improperly by "creat[ing] undisclosed gaps in its document production," thereby impeding their "ability to challenge withheld discovery." J.S. 35.  Plaintiffs attempt to justify this meritless contention by claiming Apple has (1) "already improperly withheld discovery on its ████████████ just because it believes it did not misappropriate Plaintiffs' trade secrets," and (2) "argued it should not have to produce documents showing it 'considered' Plaintiffs' trade secrets because 'considering is not relevant.'" *Id.* at 35–36 (citing Plaintiffs' Ex. 22 at 5 (304)).  The first assertion is false.  As Apple explained in the parties' April 22, 2021 Joint Stipulation, it made available for inspection source code for the (undisputed) only version of the Apple Watch that calculates oxygen saturation—the Series 6, Plaintiffs' Ex. 24, at 325, and has also made available for inspection source code for the "for the relevant operation and functions of the" earlier versions of the Apple Watch, *id.* at 326.  In any event, Plaintiffs grossly mischaracterize Apple's relevance objections, which are based not on Apple's belief that it did not misappropriate Plaintiffs' alleged trade secrets, but on the fact that Plaintiffs' document requests go well beyond the boundaries *established by* those alleged trade secrets.  The second assertion cites to Apple's discussion of a *completely separate* RFP—No. 209, *see* Plaintiffs' Ex. 22 at 304—and is thus irrelevant.  More importantly, whether a request seeks information about Apple's alleged implementation of a trade secret or its mere consideration of implementation does not change the analysis—that request must still be tied to Plaintiffs' alleged trade secrets identified in their Section 2019.210 disclosure.

None of Plaintiffs' cases tip the scale in their favor.  Plaintiffs cite *Kilroy v. L.A. Unified School District Board of Education* for the proposition that a party "must produce all requested documents . . . in its possession, custody, or control" if it "does not offer a valid objection."  2018 WL 6071089, at *1 (March 7, 2018); *see* J.S. 34.  As explained above, Apple's objections are valid and rest on well-established principles.  Plaintiffs cite *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (2000), and *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012), for the proposition that Apple should be subject to discovery because it "'considered' Plaintiffs' trade secrets."  J.S. 36.  Plaintiffs fail to explain what is meant by their allegation that Apple "considered" certain of their alleged trade secrets, but in any event, neither cited case concerns discovery nor mentions the import of a party's mere "consideration" of another's alleged trade secrets.  Plaintiffs offer no authority suggesting they are entitled to discovery beyond the bounds of their own Section 2019.210 disclosure—the purpose of which is to identify the alleged trade secrets that they contend are at issue in this case.

[*remainder of page left intentionally blank*]

# IV.  PLAINTIFFS' RFPS 165-170

Pursuant to Local Rule 37-2, below is the full text of Plaintiffs' RFPs 165-170, and Apple's response to each request.  The parties' respective points and authorities follow below.

## REQUEST FOR PRODUCTION NO. 165:

All documents and things related to Masimo's MightySat pulse oximeter.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 165:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks documents not within Apple's possession, custody, or control. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the request. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210,

Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 166:**

All documents and things related to Masimo's iSpO2 pulse oximeter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 166:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks documents not within Apple's possession, custody, or control. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the request. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 167:**

All documents and things related to Apple marketing or selling Masimo's MightySat pulse oximeter, including but not limited to all documents and things related to Apple's inclusion of MightySat on Apple's

website, Apple's removal of MightySat from Apple's website, and Apple's communications with customers about the MightySat.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 167:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, including because it uses the undefined phrase "Apple marketing or selling Masimo's MightySat pulse oximeter." Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks documents not within Apple's possession, custody, or control. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the request. Apple further objects to this Request to the extent it seeks production of ESI in a manner other than that which is to be negotiated between the parties pursuant to the ESI Order in this case. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 168:**

All documents and things related to Apple marketing or selling Masimo's iSpO2pulse oximeter, including but not limited to all documents and things related to Apple Magazine's publication of marketing materials for iSpO2 and Apple's communicationswith customers about iSpO2.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 168:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, including because it uses the undefined phrase "Apple marketing or selling Masimo's iSpO2 pulse oximeter." Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks documents not within Apple's possession, custody, or control. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the request. Apple further objects to this Request to the extent it seeks production of ESI in a manner other than that which is to be negotiated between the parties pursuant to the ESI Order in this case.  Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed

Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 169:**

All documents and things related to Apple's sales or marketing of Masimo's MightySat pulse oximeter, including but not limited to communications discussing salesor marketing of the MightySat in relation to Apple's own marketing, research, or productdevelopment for Apple's own pulse oximetry product.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 169:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, including because it uses the undefined phrase "Apple's sales or marketing of Masimo's MightySat pulse oximeter." Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the request. Apple further objects to this Request to the extent it seeks production of ESI in a manner other than that which is to be negotiated between the parties pursuant to the ESI Order in this case. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 170:**

All documents and things related to Apple's sales or marketing of Masimo's iSpO2 pulse oximeter, including but not limited to communications discussing sales or marketing of the iSpO2 pulse oximeter in relation to Apple's own marketing, research, or product development for Apple's own pulse oximetry product.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 170:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, including because it uses the undefined phrase "Apple's sales or marketing of Masimo's iSpO2 pulse oximeter." Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks documents not within Apple's possession, custody, or control. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the request. Apple further objects to this Request to the extent it seeks production of ESI in a manner other than that which is to be negotiated between the parties pursuant to the ESI Order in this case. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for

reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

### A. **Plaintiffs' Position**

RFPs 165-170 seek documents about Apple's sales and marketing of Plaintiffs' products that interact with Apple's products and that Apple has sold, including the MightySAT and iSpO2 products.  Masimo MightySAT and Masimo iSpO2 are pulse oximeters that are sold to consumers.  Exs. 39-40.  Thus, these products directly compete against at least the physiological monitoring portion of the Apple Watch sold to consumers.

Apple's sales and marketing efforts with respect to these products is directly relevant to trade secret misappropriation and damages.  As discussed, ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████  The RFPs are also proportional to the needs of the case for the same reasons discussed above.  Among other things, these RFPs seek relevant information, the amount in controversy is high, and Apple cannot claim it lacks resources to search because it is the most valuable public company on earth.

Apple's written responses included pages of boilerplate objections.  The Court need not consider such "general or boilerplate objections" that Apple did not maintain and explain.  *Nguyen*, 2019 WL 4579259, at *3.  During the meet and confer, Apple objected

to RFPs 165-170 as "overly broad and unduly burdensome" because Plaintiffs purportedly had not "articulated a justification for why these RFPs are appropriately tailored to seek documents relevant to and proportional to the issues in this case." Ex. 24 at 10. But Plaintiffs explained why these requests were relevant during the parties' meet and confer. As discussed above, these RFPs are relevant to many issues and proportional to the needs of the case. Thus, Apple's objection to RFPs 165-170 lacks merit.

Accordingly, Apple has not shown why discovery should be limited. The Court should overrule Apple's objections and order Apple to produce all responsive documents.

## B.   Apple's Position

Plaintiffs seek "all documents and things" relating to the Masimo MightySAT and Masimo iSpO2 products—products that have no relevance to the trade secret misappropriation allegations in this case. Plaintiffs never provided "any justification for why these RFPs are appropriately tailored to seek documents relevant to and proportional to the issues in this case." Plaintiffs' Ex. 24, at 327 (3.9.2021 Samplin Ltr. at 10). Instead, Plaintiffs merely claimed that the requests "are appropriate and need not be narrowed further." Plaintiffs' Ex. 23, at 315 (2.19.2021 Powell Ltr. at 6). As a compromise, Apple offered to produce—and did produce—sales information relating to Plaintiffs' products. Plaintiffs' Ex. 24, at 327 (3.9.2021 Samplin Ltr. at 10); Samplin Decl. ¶ 10 (exemplary documents produced by Apple that are responsive to these RFPs include a spreadsheet bearing bates number APL-MAS_00082917). Rather than conferring further, Plaintiffs responded with their portion of this Joint Stipulation. Plaintiffs' Ex. 42, at 681 (4.13.2021 Powell Ltr. at 3).

Plaintiffs' portion of this Joint Stipulation for the *first time* provides a cursory attempt to explain why these RFPs are relevant to this case. Notably, Plaintiffs focus only on sales and marketing information covered by these RFPs; Plaintiffs make no effort to justify RFPs 165 and 166, which overbroadly request every document "related to" the MightySAT or iSpO2 products. Plaintiffs' motion to compel should be denied as to RFPs 165 and 166 on that basis alone. *See Castle v. Lugo*, 2020 WL 5356935, at *1 (C.D. Cal.

June 19, 2020) ("Discovery requests that seek irrelevant information are inherently unduly burdensome.").

Moreover, Plaintiffs' attempt to limit the relevance of these RFPs to the marketing of Plaintiffs' products (since Apple already produced the sales information in its possession to Plaintiffs) does not salvage their burdensome and disproportionate scope. Plaintiffs have provided no explanation as to how Apple's marketing of *Plaintiffs*' products has anything to do with Plaintiffs' claims that Apple misappropriated Plaintiffs' alleged trade secrets to sell *Apple*'s products. Plaintiffs also baldly claim that such information would "show the value of Apple's undue benefit from misappropriating Plaintiffs' trade secret." J.S. 61. But they have never alleged any connection between the marketing of Plaintiffs' products (or that any such marketing incorporated Plaintiffs' trade secrets) and any purported benefit relating to Apple's sales or marketing of Apple products; thus, such information irrelevant. *See MedImpact*, 2021 WL 719649, at *2 (declining to "require Defendants to produce documents on products not at issue"). Plaintiffs' only attempt to draw any connection to the alleged misappropriation in this case demonstrates the extent of their overreach: they want *all* marketing information relating to Plaintiffs' products because "███████████ ████████████████████████████████████████ ███████████████" J.S. 61 (emphasis added). Such a speculative theory— disconnected from Plaintiffs' *actual* trade secret allegations in this case—should be rejected. *Cheng v. AIM Sports, Inc.*, 2011 WL 13196557, at *5–6 (C.D. Cal. Mar. 30, 2011) ("It was defendants' obligation to narrowly tailor their discovery requests; the Court will not allow defendants to engage in a fishing expedition.").

Moreover, Plaintiffs' requests for every document relating to these products is not proportional to the needs of this case. *Id.* at *5 ("Although defendants state that the requested documents are relevant to their counterclaims, defendants have completely failed to demonstrate how *all documents* pertaining to [Topic A], as well as *all documents* related to [Topic B], are relevant to those counterclaims. Thus, the Court concludes that any likely benefit of the requested discovery is outweighed by the burden of production."). Indeed,

Plaintiffs conceded that this information is not important to resolving the issues in this case as Plaintiffs, in seeking ESI from Dr. O'Reilly and others, have not requested any discovery or search terms referring to the MightySAT or iSpO2 products.  Plaintiffs' other arguments as to proportionality fail for the reasons discussed above.  *See* Section III.B.1, *supra*.

[*remainder of page left intentionally blank*]

# V.  PLAINTIFFS' RFPS 67-70 AND 155-157

Pursuant to Local Rule 37-2, below is the full text of Plaintiffs' RFPs 67-70 and 155-157, and Apple's response to each request.  The parties' respective points and authorities follow below.

## REQUEST FOR PRODUCTION NO. 67:

All documents and things concerning any attempt to obtain FDA approval of any of the Apple Watch Products.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 67:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Indeed, documents sought by this Request are publicly available and easily accessible by Plaintiffs. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple objects to this Request to the extent it seeks documents or information that are subject to any protective order interest, privacy interest, contractual obligation, non-disclosure agreement, confidentiality agreement, secrecy order, or other such confidentiality obligation owed to any third party. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs'

trade secret misappropriation claim, even if they also relate to other claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections, Apple is willing to meet and confer with Plaintiffs to discuss the scope of this Request.

**REQUEST FOR PRODUCTION NO. 68:**

All documents and things concerning the FDA approval of any of the Apple Watch Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Indeed, documents sought by this Request are publicly available and easily accessible by Plaintiffs. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple objects to this Request to the extent it seeks documents or information that are subject to any protective order

-66-

interest, privacy interest, contractual obligation, non- disclosure agreement, confidentiality agreement, secrecy order, or other such confidentiality obligation owed to any third party. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210— without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections, Apple is willing to meet and confer with Plaintiffs to discuss the scope of this Request.

**REQUEST FOR PRODUCTION NO. 69:**

All documents and things submitted to or received from the FDA or any other governmental agency that refer or relate to the Apple Watch Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Indeed, documents sought by this Request are publicly available and easily accessible by Plaintiffs. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this

-67-

Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple objects to this Request to the extent it seeks documents or information that are subject to any protective order interest, privacy interest, contractual obligation, non- disclosure agreement, confidentiality agreement, secrecy order, or other such confidentiality obligation owed to any third party. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to other claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210— without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections, Apple is willing to meet and confer with Plaintiffs to discuss the scope of this Request.

**REQUEST FOR PRODUCTION NO. 70:**

All documents and things that refer or relate to clinical trials of the Apple WatchProducts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request as overbroad and unduly burdensome because it is not limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents.

Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrase "clinical trials." Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it is not limited to the asserted claims of the patents asserted by Plaintiffs in their Complaint. Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to other claims, until Plaintiffs comply with Section 2019.210. Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210— without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 155:**

All documents and things concerning any decision by Apple not to seek FDA approval of the pulse oximetry feature of any Apple Watch Product.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 155:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request on the

grounds that it is overly broad and unduly burdensome because it requests "all documents and things" concerning the subject matter of the request. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 156:**

All documents and things concerning any attempt to obtain FDA approval of the pulse oximetry feature of any Apple Watch Product.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 156:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" concerning the subject matter of the request. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order

(Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 157:**

All documents and things submitted to or received from the FDA or any other governmental agency that refer or relate to the pulse oximetry feature of any Apple Watch Product.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 157:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions. Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the request. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed

Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

## A.   **Plaintiffs' Position**

RFPs 67-70 and 155-157 seek documents about any attempt to obtain FDA approval for the Apple Watch, as well as documents submitted to the FDA or other governmental agencies even if not connected to any attempt to obtain FDA approval.   RFP 70 seeks documents about clinical trials for the Apple Watch.   RFPs 155-157 seek documents about Apple's decision to attempt or not attempt to seek FDA approval for the pulse oximetry feature of the Apple Watch, and documents submitted to the FDA or other governmental agencies regarding physiological monitoring features of the Apple Watch.

These requests are relevant to many issues in the case.   First, responsive documents would summarize how Apple's products function and, thus, are relevant to the technical trade secrets addressed primarily in Plaintiffs' co-pending first motion to compel.   Second, Apple's communications with the FDA are relevant to damages because they would reveal what importance Apple placed on being able to offer accurate technology.   Such evidence would also be relevant to ████████████████████████████████████████████ ████████████████████████████████████   All such evidence is highly relevant to the undue benefit Apple received by misappropriating Plaintiffs' trade secrets.   Third, responsive documents are also relevant to Plaintiffs' business and marketing trade secrets. As  discussed, █████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████   The RFPs are also proportional to the needs of the case for the same reasons discussed above.   Among other things, these RFPs seek

relevant information, the amount in controversy is high, and Apple cannot claim it lacks resources to search because it is the most valuable public company on earth.

Apple's written responses included pages of boilerplate objections. The Court need not consider such "general or boilerplate objections" that Apple did not maintain and explain. *Nguyen*, 2019 WL 4579259, at *3. During the meet and confer, Apple appeared to drop all of its objections for these requests. Ex. 24 at 9. For RFPs 67-69 and 155-157, Apple stated it "has not sought FDA approval or submitted to or received from the FDA or any other government agency any documents for any of the Apple Watch products and thus there are no documents responsive to these RFPs." *Id.* That is demonstrably false. Not only has Apple submitted documents to the FDA, it actively promotes the watch as being FDA cleared for certain physiological monitoring techniques. *See* Ex. 33 at 2-3.

Apple confirmed it is not relying on any technical differences in the "approval" and "clearance" processes at the FDA. Ex. 27 at 2. Instead, Apple asserts it has no responsive documents because it obtained "FDA approval of 'apps' utilized by certain Apple products" that are "unrelated to the operation of the products themselves." *Id.* Apple's argument lacks merit and is deeply concerning because it suggests that Apple may be limiting its entire production by excluding information about "apps" that run on the "Apple Watch." Indeed, the "app" at issue here is the Apple "Health" app that is pre-installed on the Apple Watch and provides measurements obtained by Apple's hardware. The Court should order Apple to produce responsive documents—for these RFPs and all other RFPs—even if they relate to Apple's "apps" on the Apple Watch rather than the Apple Watch hardware itself.

For RFP 70, Apple stated it will produce documents only "to the extent they relate to the alleged trade secrets in Plaintiffs' Section 2019.210 disclosure . . . ." Ex. 24 at 9. Because Apple dropped all of its objections, however, Apple cannot self-select documents it chooses to produce. *See Kilroy*, 2018 WL 6071089, at *1. Apple's Section 2019.210 limitation also lacks merit for the reasons discussed above. *See* Section III.A.2.b, *supra*. As discussed, sales and marketing information regarding other physiological parameters is

relevant to damages even if it is not directly relevant to a particular trade secret.  Apple's limitation would also permit it to withhold vast and unknown information if **Apple** determines the information in a particular document is not directly relevant to Plaintiffs' Section 2019.210 statement.  As discussed, permitting such a unilateral decision of relevance would be extremely prejudicial, particularly because Apple has already indicated that it has a very narrow view of relevance in this case.  Apple's limitation would also allow it to withhold evidence showing it misappropriated other trade secrets of which Plaintiffs are not yet aware.  That would be improper.  *See Perlan Therapeutics*, 178 Cal. App. 4th at 1350.

Accordingly, Apple has not shown why discovery should be limited.  The Court should overrule Apple's objections and order Apple to produce all responsive documents.

**B.**    **Apple's Position**

Apple has not sought FDA approval for the Apple Watch, or any "Apple Watch Product."  While Plaintiffs are correct that Apple did seek FDA approval for an *app* that can be used with the Apple Watch, the app does not relate—and Plaintiffs do not allege that the app relates—to the alleged trade secrets or other issues in this case.

Indeed, the app offers an ECG feature that does not use the optical sensors or other technology Plaintiffs allege Apple has misappropriated.  The FDA's de novo classification request for the ECG app—which is publicly available—provides a description of how the ECG process works, explaining that the ECG app uses "electrodes on the back of the device which are in continuous contact with the user's wrist" to "acquire the electrical potential between the electrodes and digital crown" so that it can "display a visual representation of the ECG waveform."  Samplin Decl. Ex. I, at 156 (FDA De Novo Classification Request for ECG App at 3); *see also id.* Ex. J, at 170 (09.11.2018 Letter from FDA to Apple re ECG app marketing authorization, at 1) ("The ECG app is *a software-only mobile medical application* intended for use with the Apple Watch to create, record, store, transfer, and display a single channel electrocardiogram (ECG) similar to a Lead I ECG." (emphasis added)).  This summary of how the ECG app works demonstrates conclusively that it does

not use optical signals or other optical sensing features at issue in this lawsuit. Thus, discovery about the process for FDA review or clearance of the ECG app is not germane to this dispute.

Plaintiffs' arguments regarding these RFPs condense down to the boilerplate assertion that Apple should be forced to engage in boundless discovery because it is a large company with "resources." J.S. 73. But even when dealing with "a large corporation with substantial resources," the "Court should not be—and is not—insensitive to the[] costs" associated with overbroad discovery. *Sterling Heights, Inc.*, 2015 WL 5055241, at *3; *see Koeper*, 2018 WL 6016915, at *1 (explaining that the "significant effort" required to gather large sets of information cannot be ignored even when a defendant has "substantial resources"). This argument—which any plaintiff could make in any case against Apple (or any other large company), regardless of subject matter—should not outweigh the fact that the discovery sought by these RFPs is wholly irrelevant, and requiring Apple to search for and produce documents related to its FDA filings is disproportionate to the needs of the case. "[C]ourts are required to limit discovery" where, as here, "the burden or expense of the proposed discovery outweighs its likely benefit; such is 'the essence of proportionality,' an all-too-often ignored discovery principle." *In re Glumetza Antitrust Litig.*, 2020 WL 3498067, at *7 (N.D. Cal. June 29, 2020) (citing Fed. R. Civ. P. 26(b)(1) and *Apple Inc. v. Samsung Elecs. Co.*, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013)); *see also P&P Imports LLC v. Johnson Enters. LLC*, 2020 WL 4258817, at *1 (C.D. Cal. Apr. 16, 2020) (Early, J.) (explaining that "discovery requests that seek irrelevant information are inherently unduly burdensome") (citing *Wheel Grp. Holdings, LLC v. Cub Elecparts, Inc.*, 2018 WL 6264980, at *4 (C.D. Cal. Sept. 4, 2018)). Plaintiffs' arguments to the contrary are unavailing.

First, Plaintiffs argue that the RFPs are relevant because "responsive documents would summarize how Apple's products function." J.S. 72. As discussed above, the operation of Apple's ECG app is irrelevant to the issues in this case. Nothing in Plaintiffs' Complaint or its Section 2019.210 disclosure implicates the ECG app for which Apple

sought FDA approval.  And, in any event, Apple has produced myriad other documents that "summarize how Apple's products function" as it relates to the issues in this case, including visual bills of material (BOMs), detailed structural drawings of the sensor module, circuit diagrams for photodiodes, engineer requirement specification (ERS) documents, design presentations, source code, and user guides.  Plaintiffs completely fail to identify what types of relevant non-duplicative information they believe they would obtain from these RFPs that they have not obtained, or could not obtain, from previously produced documents.  With respect to information related to clinical trials requested by RFP 70, Apple has already agreed to provide (to the extent they exist) "documents related to the technical features accused of infringement and responsive to the unobjectionable scope of this Request," *id.* at 69—i.e., the scope framed by Plaintiffs' trade secret misappropriation allegations.[13]  These past and forthcoming productions are sufficient to provide Plaintiffs with information on "how Apple's products functions."  *Id.* at 72.

Second, Plaintiffs claim that "Apple's communications with the FDA are relevant to damages because they would reveal what importance Apple placed on being able to offer accurate technology" and that "[s]uch evidence would also be relevant to ███████████

████████████████████████████████████████████████████████████████

████████" *Id.*  Plaintiffs cite no facts or law suggesting that Apple's pursuit of FDA clearance for an app that is wholly unrelated to the technology at issue in this case has any relevance to damages or ████████████  Plaintiffs do not even attempt to explain why they believe Apple's FDA communications would reveal the "importance Apple placed on being able to offer accurate technology."  Nor do they explain how such information informs damages.  And, in any event, Apple is producing other documents that are more likely to inform Plaintiffs' damages assessment, including surveys, market research, and sales and financial data relating to the products accused in this case.

---

[13] Apple will produce documents related to Plaintiffs' patent infringement allegations if and when the stay of the patent infringement case is lifted.

Third, Plaintiffs argue that responsive documents are "relevant to Plaintiffs' business and marketing trade secrets" because they reflect ████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████ and therefore relate to alleged trade secret 43.1. *Id.*  But Apple's interactions with the FDA regarding an app that is not at issue in this litigation have no bearing on any alleged trade secret or any other allegations in the Complaint.  Alleged trade secret 43.1 involves ██████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████ Plaintiffs' Ex. 28, at 372. ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████

Apple disputes Plaintiffs' repeated and unfounded accusation that Apple included improper "boilerplate objections."  *See, e.g.*, J.S. 73.  A boilerplate objection is one that does not "set[] forth any explanation or argument why the requested documents are not relevant."  *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (quoted in *Nguyen*, 2019 WL 4579259, at *3).  Apple clearly explained the bases for all of its objections, including its relevance objections.[14]

[*remainder of page left intentionally blank*]

---

[14]  Plaintiffs are also wrong that "Apple appeared to drop all of its objections for these requests."  J.S. 73.  Rather, Apple explained that no responsive documents exist because Apple never sought FDA approval for the "Apple Watch Products" or for any Apple Watch feature applicable to this case (including its pulse oximetry feature).  The fact that Apple did not specifically discuss its objections in conjunction with informing Plaintiffs that no responsive documents exist does not mean Apple "dropped" its objections.

# VI.  PLAINTIFFS' RFPS 226 AND 230-235

Pursuant to Local Rule 37-2, below is the full text of Plaintiffs' RFPs 226 and 230-235, and Apple's response to each request.  The parties' respective points and authorities follow below.

## REQUEST FOR PRODUCTION NO. 226:

All documents and things owned by, created in whole or in part by, or originating with, Masimo or Cercacor.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 226:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence and is not limited to any relevant time period. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the Request, regardless of the subject matter of the documents and things. In addition, to the extent it seeks trade secret-related discovery, Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210.

## REQUEST FOR PRODUCTION NO. 230:

All documents and things authored by, prepared by, provided by, reviewed by, or in the possession, custody, or control of any Former Employee that relate to Masimo or Cercacor or any Masimo or Cercacor products or technologies, including, without limitation, internal and external communications, and any studies, reports, memoranda, presentations, or other documents.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 230:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence and is not limited to any relevant time period. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks documents

not within Apple's possession, custody, or control. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Appleobjects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the Request. In addition, to the extent it seeks trade secret-related discovery, Apple objectsto this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210.

**REQUEST FOR PRODUCTION NO. 231:**

All documents and things authored by, prepared by, provided by, reviewed by, orin the possession, custody, or control of any Former Employee that relate to any of the Apple Watch Products, including, without limitation, internal and external communications, and any studies, reports, memoranda, presentations, or other documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 231:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence and is not limited to any relevant time period. Apple objects to this Request to the extent that it seeks information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the Request. In addition, to the extent it seeks trade secret-related discovery, Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210.

**REQUEST FOR PRODUCTION NO. 232:**

All publications, technical papers, white papers, internal memorandums, conference proceedings, book chapters, speeches, and/or technical presentations, whether published or not, that were authored in whole or in part, authorized, or reviewedby any Former Employee that relate to any of the Apple Watch Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 232:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence and is not limited to any relevant time period. Apple objects to this Request to the extent that it seeks information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all publications, technical papers, white papers, internal memorandums, conference proceedings, book chapters, speeches, and/or technical presentations" relating to the subject matter of the Request. In addition, to the extent it seeks trade secret-related discovery, Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production No. 231.

**REQUEST FOR PRODUCTION NO. 233:**

All publications, technical papers, white papers, internal memorandums, conference proceedings, book chapters, speeches, and/or technical presentations, whether published or not, that were authored in whole or in part, authorized, or reviewed by any Former Employee that relate to Masimo or Cercacor or any Masimo or Cercacor product or technology.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 233:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence and is not limited to any relevant time period. Apple objects to this Request to the extent that it seeks information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all publications, technical papers, white papers, internal memorandums, conference proceedings, book chapters, speeches, and/or

technical presentations" relating to the subject matter of the Request. In addition, to the extent it seeks trade secret-related discovery, Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production No. 223.

**REQUEST FOR PRODUCTION NO. 234:**

All documents and things that refer or relate to any physiological monitoring technology that was developed or manufactured by Plaintiffs or any Former Employee,or that Apple received or obtained from Plaintiffs or any Former Employee.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 234:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request as compound. Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, including because it uses the undefined phrase "physiological monitoring technology." Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks documents not within Apple's possession, custody, or control. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the Request. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production No. 222.

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time. Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section

2019.210, Apple will amend its response to this Request, to the extent necessary.

**REQUEST FOR PRODUCTION NO. 235:**

All documents and things that refer or relate to any disclosure by Plaintiffs or any Former Employee to Apple regarding physiological monitoring technology.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 235:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, including because it uses the undefined phrase "physiological monitoring technology." Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the Request. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production Nos. 222 and 234.

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time. Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section 2019.210, Apple will amend its response to this Request, to the extent necessary.

**A.** **Plaintiffs' Position**

RFPs 226 and 230-235 seek information about Plaintiffs' former employees maintaining, using, and disclosing Plaintiffs' trade secrets.  In particular, the RFPs seek documents that originated with Plaintiffs, documents that Plaintiffs' former employees still have regarding Plaintiffs or Plaintiffs' technology, and publications and other papers authored by the former employee regarding Plaintiffs or Plaintiffs' technology.  The RFPs

also seek equivalent Apple documents that the former employees have regarding the Apple Watch so that Plaintiffs can compare whether Plaintiffs' confidential information was transferred to Apple's documents.

These requests are directly relevant to Plaintiffs' trade secret claims.  Plaintiffs allege that Apple "misappropriated Plaintiffs' Confidential Information by acquisition at least from Plaintiffs' former employees who left Plaintiffs to work for Defendant." Ex. 28 ¶ 228.  Plaintiffs allege that Apple "and its employees used and disclosed Plaintiffs' Confidential Information [they] obtained from Plaintiffs and their former employees without Plaintiffs' express or implied consent." *Id.* ¶ 233.  Plaintiffs discuss O'Reilly and Lamego as examples, but Plaintiffs' allegations are not limited to O'Reilly and Lamego. *See id.* ¶¶ 223-267.  The RFPs are proportional to the needs of the case for the same reasons discussed above.  Among other things, these RFPs seek relevant information, the amount in controversy is high, and Apple cannot claim it lacks resources to search because it is the most valuable public company on earth.

Apple's written responses included pages of boilerplate objections.  The Court need not consider such "general or boilerplate objections" that Apple did not maintain and explain. *Nguyen*, 2019 WL 4579259, at *3.  During the meet and confer, Apple appeared to drop all of its objections for RFPs 231-232 except for its objection that "physiological monitoring" was too broad.  Ex. 24 at 3.  That objection lacks merit for the reasons discussed above. *See* Section III.A.2.a, *supra*.  As discussed, the protective order, Apple's proposals to limit Plaintiffs' RFPs, and Apple's own RFPs all use the term "physiological monitoring."  Moreover, physiological monitoring parameters not directly at issue in the case are still relevant to damages because they show the value Apple places on performance and accuracy.

Apple also appeared to drop all of its objections for RFPs 226 and 230, and 233-235. Ex. 24 at 2, 7, and 9.  However, Apple now claims it will produce documents only "to the extent they relate to the alleged trade secrets in Plaintiffs' Section 2019.210 disclosure . . . ." *Id.*  Because Apple dropped all of its objections, Apple cannot self-limit its commitment

to produce documents.  *See Kilroy*, 2018 WL 6071089, at *1.  Apple's Section 2019.210 limitation also lacks merit for the reasons discussed above.  *See* Section III.A.2.b, *supra*.

With respect to former employees other than Lamego and O'Reilly, Apple also refused to produce any documents responsive to RFPs 233-235 on the basis that such individuals are not relevant. Ex. 21 at 2-4; Ex. 22 at 5.  Apple claimed some of the former employees were not relevant, but for months refused to provide information necessary for Plaintiffs to narrow this request.  Plaintiffs have asked Apple numerous times to explain what each individual did at Apple so that Plaintiffs could remove any individuals that were not relevant to this case, but Apple refused. *See, e.g.*, Ex. 34 at 2. On April 1, Apple finally provided some information about what each individual did at Apple.  Ex. 35 at 3-5.  The individuals fit into three categories:

1. Individuals who do not appear to be relevant (Linus Conrad, Megan Eilers, and Shruti Koneru).  Ex. 36 at 2.

2. Individuals who Apple has not provided enough information to evaluate (Anderson Briglia, Yinghui Lu, Felipe Tonello, Rich Young, Joe Jagenow, Kornelius Raths, John Aguilar, Swapnil Harsule, Ehsan Masoumi, Boris Oreshkin, Mathew Paul, Will Regan, and Vincent Wayne). *Id.* at 2-3.

3. Individuals who are clearly relevant (Johannes Bruinsma, Ottavia Golfetto, Haritha Haridas, and Inje Lee). *Id.* at 3.  Apple represents these individuals worked in its "health technologies division" (Bruinsma), was a "Biomedical Specialist" (Golfetto), was "involved in clinical trials relating to the Apple Watch" (Haridas), and was "involved in the design of studies related to the Apple Watch" (Lee).  Ex. 35 at 4-5.

Plaintiffs told Apple that they would not to seek information on individuals in category 1. Ex. 36 at 2-3.  Plaintiffs asked Apple for more information on individuals in category 2 and asked Apple to produce information on individuals in category 3. *Id.*  Apple has so far declined to respond to Plaintiffs' proposal.  The Court should order Apple to produce information on at least the individuals in category 3 because they are relevant for the

reasons discussed above.  The Court should also order Apple to produce information for any individuals in category 2 that had any involvement in developing or marketing the Apple Watch or any of Apple's health monitoring technology.

Accordingly, Apple has not shown why discovery should be limited.  The Court should overrule Apple's objections and order Apple to produce all responsive documents.

## B.  Apple's Position

Plaintiffs' motion to compel responses to RFPs 226 and 230–235 is unnecessary and premature, as the parties are actively negotiating the scope of Plaintiffs' requests for documents related to Plaintiffs' former employees who were subsequently employed by Apple.  Although Apple has made clear to Plaintiffs that it is willing to provide discovery related to *relevant* former employees, Plaintiffs' requests remain plainly overbroad.

Plaintiffs' motion with respect to these RFPs demonstrates a fundamental misunderstanding of the proper scope of discovery, as it asks the Court to compel Apple to produce documents for any former employee who "had any involvement in developing or marketing the Apple Watch or any of Apple's health monitoring technology."  J.S. 85.  That is not the relevance standard, because it has no connection to Plaintiffs' alleged trade secrets.  As explained above, *see* Section III.B.2 (J.S. 48–54), Section 2019.210 frames the appropriate scope of discovery in a trade secret case.  *See Albert's Organics*, 2020 WL 4368205, at *3; *BioD*, 2014 WL 3864658, at *5; *Advante Int'l*, 2006 WL 3371576, at *3 n.4; *Computer Econ.*, 50 F. Supp. at 985; *Advanced Modular*, 132 Cal. App. 4th at 835; *Diodes*, 260 Cal. App. 2d at 253.  Plaintiffs' requests here vastly exceed the scope of their alleged trade secrets.  Their broad request to fish through the documents of any former employee who had "any involvement" in "developing or marketing the Apple Watch" (which has hundreds of features unrelated to any issue in this case) or in "health monitoring technology" generally, *see* J.S. 85, is antithetical to the letter and spirit of Section 2019.210, which endeavors to prevent Plaintiffs from the worn tactic of "alleg[ing] theft of trade secrets with vagueness, then tak[ing] discovery into the defendants' files, and then cleverly specify[ing] what ever [*sic*] happens to be there as having been trade secrets stolen from

plaintiff." *Jobscience, Inc.*, 2014 WL 852477, at *5. That is what Plaintiffs seek to do through their broad requests for sweeping discovery from former employees who have no connection to the allegations in the Complaint and no known knowledge of or access to any of the identified alleged trade secrets.

The allegations in this case relate to the alleged activity of only two former Masimo employees: Marcelo Lamego and Michael O'Reilly. Although Plaintiffs claim that Lamego and O'Reilly are named "as examples," the Complaint includes only speculative, conclusory allegations about *other* "former employees" that falls well short of alleging any acts of misappropriation or other wrongdoing by those "former employees." To be sure, the sum total of the allegations in Plaintiffs' Fourth Amended Complaint that are even arguably directed at all "former employees" consist of the following:

- "Plaintiffs are informed and believe, and thereon allege, that Defendant misappropriated Plaintiffs' Confidential Information by acquisition at least from Plaintiffs' former employees who left Plaintiffs to work for Defendant." Plaintiffs' Ex. 28, at 435–36 (Dkt. No. 296-1 ¶ 228). Plaintiffs then go on to provide "examples," which are directed only at O'Reilly and Lamego. *Id.*; *see also id.* at 453, 455 (¶¶ 258, 261) (similar allegations).

- "At the time of acquisition, Defendant also knew, or had reason to know, that its employees obtained Plaintiffs' Confidential Information pursuant to a duty or obligation to keep Plaintiffs' Confidential Information secret." *Id.* at 436–37 (¶ 229). Again, that allegation follows with examples directed at only O'Reilly and Lamego. *Id.*

- "On information and belief, Apple targeted and recruited Plaintiffs' employees, including O'Reilly and Lamego, because of their knowledge of Plaintiffs' Confidential Information." *Id.*

- "Nevertheless, on information and belief, Defendant induced its employees, including Lamego and O'Reilly, to use and/or disclose Plaintiffs' Confidential Information and the employees used and/or disclosed Plaintiffs' Confidential

Information for the benefit of Defendant while employed by Defendant." *Id.* at 437 (¶ 230); *see also id.* at 438 (¶ 232) (similar inducement allegations).

- "After learning more about the capability of Plaintiffs' technology at the meetings, Defendant began systematically hiring Plaintiffs' employees, including Masimo's Chief Medical Officer, Michael O'Reilly, and many others." *Id.* at 437 (¶ 230).

- "On information and belief, Defendant and its employees used and disclosed Plaintiffs' Confidential Information it obtained from Plaintiffs and their former employees without Plaintiffs' express or implied consent.  Defendant and its employees used and disclosed Plaintiffs' Confidential Information at least by incorporating it into Defendant's products, by filing patent applications containing Plaintiffs' Confidential Information, and using Plaintiffs' business and sales strategies without Plaintiffs' express or implied consent. . . ." *Id.* at 438 (¶ 233).

- "Defendant and the former employees also led Plaintiffs to believe they intended to respect Plaintiffs' intellectual property rights and concealed Defendant's and its employees' acquisition, use, and disclosure of Plaintiffs' Confidential Information." *Id.* at 456–57 (¶ 263).  Plaintiffs then identify only O'Reilly and Lamego.  *Id.*

The *only* specific allegations related to any of the so-called "former employees" are related to the actions of Lamego and O'Reilly.  Plaintiffs' Complaint never identifies any other "former employee."

Plaintiffs' conclusory allegations do not justify a demand for discovery from a laundry list of individuals whose resumes include various positions at both Apple and Masimo, without regard to the relevance of the employees' positions.  Indeed, Plaintiffs' list of former employees from whom it has sought ESI discovery (a request the parties are still discussing) include plainly irrelevant individuals, such as:  (1) individuals who worked at Masimo *after* they left Apple; (2) former Apple employees who worked in entry-level customer service positions at retail locations; and (3) individuals whose employment with Apple commenced decades after their employment with Plaintiffs ended.  Plaintiffs' Ex. 35, at 638–42 (04.01.2021 Letter from B. Andrea to A. Powell).  Plaintiffs complain that

-87-

Apple spent months "refus[ing] to provide information necessary for Plaintiffs to narrow this request," J.S. 84, but fail to note that Apple has made very clear to Plaintiffs that it is willing to provide discovery related to "former employees" if Plaintiffs can identify any basis for their allegations that such employees misappropriated Plaintiffs' trade secrets, Plaintiffs' Ex. 35, at 638–39 (04.01.2021 Letter from B. Andrea to A. Powell at 1–2); Samplin Decl. Ex. N, at 257–59 (04.14.2021 Letter from B. Andrea to A. Powell at 1–3). All Plaintiffs have provided to date are repeated demands for more information about each of the former employees.  Plaintiffs' Ex. 36, at 646–48 (04.07.2021 Letter from A. Powell to B. Andrea).

Although Plaintiffs have endeavored at every turn to shift their discovery burdens onto Apple, it is not Apple's obligation to dig up information to illustrate the absurdity of Plaintiffs' overbroad requests.  Nonetheless, as Plaintiffs acknowledge, on April 1, Apple sent Plaintiffs a list of information about the former employees' work at Apple.  Plaintiffs' Ex. 35, at 640–42 (04.01.2021 Letter from B. Andrea to A. Powell).  This information was pulled from public sources (e.g., LinkedIn profiles) and was just as accessible to Plaintiffs as it was to Apple; nonetheless, Apple incurred the burden of providing it to Plaintiffs in an attempt to move past this dispute and force Plaintiffs to provide a basis for seeking the widespread discovery they have now moved to compel.  Instead of providing a basis, however, Plaintiffs responded by asking for even *more* free discovery while ignoring information demonstrating the *irrelevance* of many of the identified former employees.

For example, Plaintiffs claim that Inje Lee is "clearly relevant," but the facts belie that assertion:  Mr. Lee's only known work experience with Masimo was an internship a decade ago, before he began pursuing his Bachelor's degree.  Plaintiffs have provided no reason to believe that a pre-college intern was entrusted with Masimo's trade secrets, held on to them through college, graduate school, and numerous post-graduate jobs, and then disclosed them to Apple when he joined in November 2018.  To provide another example, Plaintiffs also claim they "need more information" before they can drop their demand for discovery from Rich Young, but publicly available information shows that Mr. Young left

Masimo in 2003 and worked various jobs for a decade and a half before joining Apple in 2019, where he works on various audio products (e.g., AirPods) that are not at issue in this case.

Because these RFPs purportedly seek to obtain information regarding whether Plaintiffs' former employees "used and disclosed Plaintiffs' Confidential Information," J.S. 83, the individuals listed can only be relevant if they had access to Plaintiffs' Confidential Information in the first place, and were then in a position to use and disclose the information in the course of their work at Apple. Plaintiffs have not even attempted to make such a showing, and instead have demanded that Apple dig up additional biographical information to "narrow this request." *Id.* at 84. Plaintiffs are the ones seeking discovery regarding "former employees" who have no connection to this case and who Plaintiffs do not allege to have misappropriated their trade secrets, *see* Section VII.B (RFPs 240 and 241), *infra*, and thus the burden is on Plaintiffs to demonstrate the relevance of their document requests.

While Plaintiffs' RFPs remain exceedingly overbroad, burdensome, and disproportionate, Apple remains willing to continue discussing how to provide Plaintiffs with the materials they seek for *relevant* former employees. Plaintiffs' motion to compel with respect to these RFPs therefore is premature.[15]

[*remainder of page left intentionally blank*]

---

[15]   Apple has maintained and continues to maintain each of its previously asserted objections. *See* Section II.B.2, *supra*.

-89-

## VII.  PLAINTIFFS' RFPS 236-237, 239-241, 244-246, AND 248

Pursuant to Local Rule 37-2, below is the full text of Plaintiffs' RFPs 236-237, 239-241, 244-246, and 248, and Apple's response to each request.  The parties' respective points and authorities follow below.

### REQUEST FOR PRODUCTION NO. 236:

All communications between Apple and any Former Employee while the Former Employee was working for Masimo or Cercacor.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 236:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome, including because it requests "all communications" with Former Employees, regardless of the subject matter of those communications. Apple further objects to this Request to the extent it seeks production of ESI in a manner other than that which is to be negotiated between the parties pursuant to the ESI Order in this case.

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time. Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section 2019.210, Apple will amend its response to this Request, to the extent necessary.

### REQUEST FOR PRODUCTION NO. 237:

All communications between Apple and any Former Employee before the Former Employee began working for Apple.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 237:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present

action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome, including because it requests "all communications" with Former Employees, regardless of the subject matter of those communications. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production No. 236. Apple further objects to this Request to the extent it seeks production of ESI in a manner other than that which is to be negotiated between the parties pursuant to the ESI Order in this case.

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time. Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section 2019.210, Apple will amend its response to this Request, to the extent necessary.

## REQUEST FOR PRODUCTION NO. 239:

All documents and things that refer or relate to any efforts by Apple or any FormerEmployee to solicit, recruit, or induce any employee or consultant of Masimo or Cercacor to quit his or her employment or to cease doing business with Masimo or Cercacor.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 239:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Appleobjects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks documents not within Apple's possession, custody, or control. Apple objects to this Request to the extent that it seeks information already in Plaintiffs' possession. In addition, to the extent it seeks trade secret-related discovery, Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210. Apple objects tothis Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production Nos. 237-38.

**REQUEST FOR PRODUCTION NO. 240:**

A full and complete copy of Apple's human resources file for each of the Former Employees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 240:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request to the extent it seeks documents or information that are subject to any privacy interest. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests a "full and complete of Apple's human resources file for each of the Former Employees." In addition, to the extent it seeks trade secret-related discovery, Apple objects to this Request as vague and ambiguous, including because Plaintiffs havenot complied with Section 2019.210.

**REQUEST FOR PRODUCTION NO. 241:**

All documents concerning Apple's hiring or termination of any of the Former Employees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 241:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple further objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents" relating to the subject matter of the Request. In addition, to the extent it seeks trade secret-related discovery, Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with

Section 2019.210. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production No. 240.

**REQUEST FOR PRODUCTION NO. 244:**

All communications between Michael O'Reilly and any hospital or healthcare provider in the first twelve months that Mr. O'Reilly worked at Apple.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 244:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, including because it uses the undefined phrase "healthcare provider." Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks documents not within Apple's possession, custody, or control. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all communications between Michael O'Reilly and any hospital or healthcare provider," regardless of the subject matter of that meeting. In addition, to the extent it seeks trade secret-related discovery, Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210. Apple further objects to this Request to the extent it seeks production of ESI in a manner other than that which is to be negotiated betweenthe parties pursuant to the ESI Order in this case.

**REQUEST FOR PRODUCTION NO. 245:**

Documents sufficient to show the date and reason for any of Michael O'Reilly's changes in title or job responsibilities at Apple.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 245:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the

discovery of admissible evidence. In addition, to the extent it seeks trade secret-related discovery, Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production No. 240.

**REQUEST FOR PRODUCTION NO. 246:**

All communications between Marcelo Lamego and any hospital or healthcare provider while Mr. Lamego worked at Apple.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 246:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, including because it uses the undefined phrase "healthcare provider." Apple objects to this Request as overbroadand unduly burdensome to the extent it seeks documents not within Apple's possession, custody, or control.  Apple objects to this Request on the grounds that it is overly broadand unduly burdensome because it requests "all communications between Marcelo Lamego and any hospital or healthcare provider," regardless of the subject matter of thatmeeting. In addition, to the extent it seeks trade secret-related discovery, Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210. Apple further objects to this Request to the extent it seeks production of ESI in a manner other than that which is to be negotiated between the parties pursuant to the ESI Order in this case.

**REQUEST FOR PRODUCTION NO. 248:**

Documents sufficient to show the date and reason for Marcelo Lamego's employment at Apple ending.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 248:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad

and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. In addition, to the extent it seeks trade secret-related discovery, Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production No. 240.

## A.   Plaintiffs' Position

RFP 236, 237, and 239 seeks documents regarding efforts by Apple or Plaintiffs' former employees to solicit Plaintiffs' employees.  RFPs 240 and 241 seek the human resources files for Plaintiffs' former employees and documents about the hiring and termination of Plaintiffs' former employees.  RFPs 245 seeks documents about changes in O'Reilly's job titles or responsibilities.   RFP 248 seeks documents about Apple's termination of Lamego.  RFP 244 and 246 seek documents about O'Reilly and Lamego's contacts with hospitals for the first twelve months that they each worked at Apple.

These requests are relevant to Plaintiffs' trade secret claims, which allege Apple "systematically recruited" Plaintiffs' employees for purposes of gaining access to Plaintiffs' trade secrets.   Ex. 28 ¶¶ 20-21.   Apple "targeted and recruited Plaintiffs' employees, including O'Reilly and Lamego, because of their knowledge of Plaintiffs' Confidential Information."   *Id.* ¶ 229; *see also id.* ¶ 231 (Apple "hired Lamego to lead Apple's biosensor development work because Apple wanted to obtain from Lamego the specialized knowledge of Plaintiffs' trade secrets he had obtained from Cercacor, and Apple expected that Lamego would use and/or disclose that knowledge of Plaintiffs' trade secrets to develop Apple's products").   Accordingly, Apple's efforts to recruit Plaintiffs employees are directly at issue.

Human resources files, and Apple's reasons for promoting and terminating employees, are also directly relevant.  Such documents could show Apple's knowledge that it was using Plaintiffs' technology—an issue that Apple has emphatically contested. *See, e.g.*, Dkt. 237-1 at 15 (Apple arguing Plaintiffs failed to adequately allege "Apple knew or had reason to know" it was acquiring Plaintiffs' trade secrets from Plaintiffs' former

employees).  For example, individuals may have gotten a promotion shortly after providing Plaintiffs' trade secrets to Apple or Apple may have reprimanded an employee for sharing Plaintiffs' trade secrets.  The requested documents would also be relevant to showing the importance of Plaintiffs' technology and Apple's willful misappropriation of trade secrets, which are relevant to damages, enhanced damages, and attorneys' fees. *See* Cal. Civ. Code § 3426.3.  The RFPs are proportional to the needs of the case for the same reasons discussed above.  Among other things, these RFPs seek relevant information, the amount in controversy is high, and Apple cannot claim it lacks resources to search because it is the most valuable public company on earth.

Apple's written responses included pages of boilerplate objections.  The Court need not consider such "general or boilerplate objections" that Apple did not maintain and explain. *Nguyen*, 2019 WL 4579259, at *3.  For RFPs 244 and 246, Apple did not maintain any objections in its letter. *See* Ex. 24 at 3-4.  Instead, Apple limited its document production to Plaintiffs' Section 2019.210 disclosure. *Id.*  Because Apple appears to have dropped all of its objections, Apple cannot limit its commitment to produce documents. *See Kilroy*, 2018 WL 6071089, at *1.  Apple's Section 2019.210 limitation also lacks merit for the reasons discussed above. *See* Section III.A.2.b, *supra*.  Additionally, evidence that Apple knew ***any*** of the former employees misappropriated ***any*** confidential information (including information not identified in the 2019.210 disclosure) is relevant to showing Apple knew it was obtaining Plaintiffs' trade secrets.

For RFPs 236, 237, 239, 240-241, 245, and 248, Apple refused to provide any documents for former employees other than Lamego and O'Reilly.  That is inappropriate for the reasons discussed above. *See* Section VI.A, *supra*.  As discussed, the Court should order Apple to produce information on at least the individuals in category 3 above (Bruinsma, Golfetto, Haridas, and Lee) because they are relevant for the reasons discussed above.  The Court should also order Apple to produce information for any individuals in category 2 (Briglia, Lu, Tonello, Young, Jagenow, Raths, Aguilar, Harsule, Masoumi,

Oreshkin, Paul, Regan, and Wayne) that had any involvement in developing or marketing the Apple Watch or any of Apple's health monitoring technology.

Apple's April 11 letter also refused to provide its position on RFPs 236 and 237 by arguing Plaintiffs failed to disclose whether their list of ESI custodians included all former employees of which Plaintiffs were aware. Ex. 27 at 7. That is false. On March 25, Plaintiffs argued such information was not "necessary for Apple to provide its position," but explained they had "already told Apple that their list of ESI custodians included all former employees of which Plaintiffs were aware." *See* Ex. 25 at 4; *see also id.* (Plaintiffs identifying Devin Stabile as one additional individual who Plaintiffs had learned about since their last correspondence on this issue). Rather than address Plaintiffs' argument, Apple appears to have simply cut and paste its prior response on these RFPs. *See* Ex. 42 at 4.

Apple also argued that Plaintiffs' request for all documents from the human resources files of former employees was too broad. Ex. 24 at 4. Based on that argument, Apple unilaterally limited its production to documents relating to exit interviews, post-employment communications, and other communications relating to trade secrets and/or breach of contract. *Id.* Because Apple has no valid objection, however, Apple cannot unilaterally limit its commitment to produce documents. *See Kilroy*, 2018 WL 6071089, at *1. Moreover, Apple's attempt to withhold specific documents from this category responsive of documents is improper. Human resource files are not burdensome to produce and Plaintiffs agreed Apple can redact personal information (e.g., social security numbers). Apple's approach to determining "relevancy" as to specific documents risks withholding documents that Plaintiffs would consider relevant, and may remove important context from the human resources files.

Apple argues its limitation on production to exit interviews, post-employment communications, and other communications relating to trade secrets and/or breach of contract is proper because the parties agreed to a similar limitation with respect to a request for production that Apple served on Plaintiffs. Ex. 24 at 4. Apple's argument is misplaced

for many reasons.  First, *Apple* proposed narrowing the scope of Apple's similar RFP.  Ex. 37 at 5 ("Apple proposes limiting this Request" and "Please let us know if this proposed modification is acceptable to Plaintiffs.").  While Plaintiffs agreed, Apple cannot use *its own proposal* limiting its own RFP to force Plaintiffs to narrow their RFPs.  Second, Apple never identified any relevance to documents beyond its proposed narrowing of its RFP.  By contrast, the information in Apple's files is relevant to many issues discussed above.

Accordingly, Apple has not shown why discovery should be limited.  The Court should overrule Apple's objections and order Apple to produce all responsive documents.

**B.**   **Apple's Position**

***RFPs 236, 237, and 239.***   In Plaintiffs' words, these RFPs "seek[] documents regarding efforts by Apple or Plaintiffs' former employees to solicit Plaintiffs' employees." J.S. 95.  There is no solicitation claim in this case.

In an effort to get around that hurdle, Plaintiffs point to general allegations in the complaint about Apple's recruitment efforts with respect to former Plaintiff employees and contend that "Apple's efforts to recruit Plaintiffs employees are directly at issue." *Id.*  But all of the complaint allegations Plaintiffs point to focus on O'Reilly and Lamego—the *only* former employees of Plaintiffs alleged to have had access to alleged trade secrets at issue in this case.  Accordingly, despite the fact that there is no solicitation claim in this case— and, therefore, Apple struggles to even understand the relevance of the requested documents at all—Apple agreed to produce documents responsive to each of these RFPs to the extent they pertain to O'Reilly or Lamego.  The face of the complaint belies any suggestion that former employees other than O'Reilly or Lamego are relevant to these solicitation and recruitment allegations.  And, as explained in detail above, Plaintiffs have not justified their request for any discovery related to former employees other than O'Reilly or Lamego.  Again, Apple remains willing to continue discussing how to provide Plaintiffs with the materials they seek for *relevant* former employees.  To date, however, Plaintiffs have not met their burden of showing that documents responsive to these RFPs for former employees other than O'Reilly and Lamego have any relevance to the actual claims in this

case.   On the current record, and with Apple's commitment to produce documents responsive to RFPs 236, 237, and 239 as they pertain to O'Reilly or Lamego, Plaintiffs' motion to compel more in response to these RFPs should be denied.

**RFPs 240 and 241.**   These RFPs seek "a full and complete copy of Apple's human resources file for each of the Former Employees" (RFP 240) and "all documents concerning Apple's hiring or termination of any of the Former Employees" (RFP 241). Plaintiffs' request for information pertaining to the "Former Employees" is problematic for all of the reasons already explained:  Plaintiffs have not identified any universe of former employees of Masimo or Cercacor aside from O'Reilly and Lamego, that are relevant to the claims in this case.  Accordingly, the RFPs are impermissibly overbroad on the basis that Plaintiffs seek intrusive discovery—including sensitive human resources documents— about *dozens* of employees who have no relation to this case.

Moreover, Plaintiffs' asserted justifications for this broad discovery amount to nothing more than speculation. J.S. 95–96. For example, Plaintiffs argue that "individuals *may have* gotten a promotion shortly after providing Plaintiffs' trade secrets to Apple or Apple *may have* reprimanded an employee for sharing Plaintiffs' trade secrets." *Id.* (emphasis added).   Plaintiffs further argue that the documents "*could show* Apple's knowledge that it was using Plaintiffs' technology." *Id.* (emphasis added).  Plaintiffs have put forth no basis for these assertions—particularly as to former employees other than O'Reilly and Lamego.

With respect to O'Reilly and Lamego, Apple *did* agree to produce certain documents responsive to these RFPs.  Specifically, Apple agreed to produce "documents from the human resources files of Marcelo Lamego and Michael O'Reilly that relate to the acquisition, use, or disclosure of confidential or proprietary information, to the extent such documents exist and can be located following a reasonable search."  Plaintiffs' Ex. 24, at 321 (3.9.2021 Samplin Ltr. at 4).  Plaintiffs suggest that this was an effort by Apple to draw lines around what relates to "trade secrets" or "breach of contract." J.S. 97.  Plaintiffs are wrong—because Apple's proposal demonstrably was not limited to information which

Apple first determined was "trade secret" or constituted a "breach of contract." Apple's proposal was broader, to pick up anything in the human resources files of O'Reilly or Lamego that relate in any way to the subject matter of the trade secret misappropriation claim against Apple in this case—which, indeed, is Plaintiffs' asserted justification for this information in the first place. *See* J.S. 95–96 (putting forth only their trade secret misappropriation claim as the purported basis for this discovery).

Notably, when Apple served an RFP on Plaintiffs for these types of documents (Apple's RFP 62, for "All Documents and Communications relating to Your personnel files, including but not limited to, all Documents and Communications relating to any exit interviews, for all of Your former employees who You believe were subsequently employed by Apple, including but not limited to, Marcelo Lamego and Michael O'Reilly," Samplin Decl. Ex. A, at 25 (Apple's First Set of Requests for Production)), Plaintiffs refused and "explained that many documents in personnel files are not relevant to this case," *id.* Ex. B, at 34 (5.22.2020 Kachner Ltr. at 4). That is precisely the *opposite* of what Plaintiffs are now arguing in this Joint Stipulation. Apple ultimately agreed with Plaintiffs that human resources files invariably contain many documents of no relevance to this case, and proposed a narrowing of Apple's RFP 62 based on the subject matter of this case—for "All Documents and Communications relating to any exit interviews, post-employment communications, and other communications relating to trade secrets and/or any alleged breach of contract, for all of Your former employees who You believe were subsequently employed by Apple, including but not limited to, Marcelo Lamego and Michael O'Reilly." *Id.* Ex. C, at 43 (05.26.2020 Samplin Ltr. at 5); *id.* Ex. D, at 50 (06.02.2020 Kachner Ltr. at 3). Plaintiffs agreed to the narrowing with respect to their own human resources files, but are resisting that narrowing for Apple's files. And Plaintiffs have provided *no* explanation for the disparate treatment—other than to point out that Apple was the party who proposed the narrowing, which Apple does not dispute, and which Apple was forced to do based on Plaintiffs' (now hypocritical) position that many documents in personnel files are not relevant to this case. There is no reason why Apple should be required to

produce to Plaintiffs full personnel files when Plaintiffs themselves have resisted discovery based on the admitted irrelevance of the same.

*RFPs 245 and 248*.   These RFPs seek "documents sufficient to show the date and reason for any of Michael O'Reilly's changes in title or job responsibilities at Apple" (RFP 245) and "documents sufficient to show the date and reason for Marcelo Lamego's employment at Apple ending" (RFP 248).  Plaintiffs have failed to show that the documents requested by RFPs 245 and 248 are relevant.  Plaintiffs purportedly have some speculative theories that Apple made changes to O'Reilly's title or job responsibilities because he stole Plaintiffs' alleged trade secrets (neither is true) and that Lamego's employment at Apple ended because he stole Plaintiffs' alleged trade secrets (this is not true either).  *See* J.S. 95–96.  But this is mere speculation—Plaintiffs have not alleged that either of these individuals *were* promoted or received additional duties, or provided any basis to suggest that their alleged secrets had anything to do with Lamego's termination.  In other words, because Plaintiffs have not put forth any argument to support these speculative theories, such theories cannot serve as a basis for an order of production.  Moreover, to the extent any documents exist to support Plaintiffs' speculative theories (none do), they would be responsive to Apple's proposal above with respect to RFPs 240 and 241.  Accordingly, Plaintiffs' RFPs 245 and 248 are duplicative in any event, and Plaintiffs' motion with respect to these RFPs should be denied for that reason alone.

*RFPs 244 and 246*.   RFPs 244 and 246 seek documents about O'Reilly and Lamego's contacts with hospitals for the first twelve months that they each worked at Apple.  Apple did *not* refuse to produce responsive documents.  To the contrary, Apple *agreed* to produce documents responsive to both RFPs, to the extent they relate to the alleged trade secrets in Plaintiffs' Section 2019.210 disclosure, *see* Plaintiffs' Ex. 24, at 320–21—which is all that could be relevant to the claims in this case.  Indeed, in their portion of this Joint Stipulation, Plaintiffs did not even attempt to justify their request for documents responsive to RFPs 244 and 246 that go beyond their alleged trade secrets.  Nor could they, because O'Reilly's and Lamego's communications with hospitals are only

relevant in this trade secret case to extent they implicate alleged hospital interaction trade secrets.

Since Plaintiffs served their portion of this Joint Stipulation, the Court dismissed with prejudice all but one of Plaintiffs' hospital interaction "secrets."  Samplin Decl. Ex. H, at 145–46, 148 (Order at 5–6, 8).  The only one of Plaintiffs' purported hospital interaction secrets that survived dismissal was "██████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████"  *Id.* at 146 (Order at 6); Plaintiffs' Ex. 28, at 374 (¶ 44.5). Thus, the only surviving alleged hospital interaction trade secret specifically requires "████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████"  Plaintiffs' Ex. 28, at 374 (¶ 44.4–44.5).  Apple will produce responsive documents that relate to this surviving alleged trade secret.  But, to the extent O'Reilly or Lamego communicated with hospitals about matters unrelated to this alleged secret, those communications are not relevant or proportional to the needs of this trade secret misappropriation case in view of the Court's dismissal of the other purported "secrets" in this category.  Accordingly, Plaintiffs' RFPs 244 and 246 should be limited to the one remaining alleged hospital interaction secret.

*[remainder of page left intentionally blank]*

# VIII.  PLAINTIFFS' INTERROGATORY 10

Pursuant to Local Rule 37-2, below is the full text of Plaintiffs' Interrogatory 10, and Apple's response.  The parties' respective points and authorities follow below.

## INTERROGATORY NO. 10:

Describe in detail any test, analysis, comparison, or competitive analysis that You performed concerning any non-Apple physiological monitor. To the extent that such test, analysis, comparison, or competitive analysis was based on any scientific or experimental tests or investigations, Your response should identify at least the date of each such investigation, the individuals who conducted the test or investigation, what test or investigation was conducted, the results or conclusions therefrom, to whom the results were communicated, and all documents concerning such test or investigation.

## RESPONSE TO INTERROGATORY NO. 10 (AUGUST 17, 2020):

Apple hereby restates and incorporates the General Objections above as though fully set forth herein. Apple objects to this Interrogatory to the extent it seeks information or things protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege, immunity, or protection. Apple objects to this Interrogatory as overbroad and unduly burdensome as it is not limited to any relevant time period. Apple objects to this Interrogatory as overly broad, unduly burdensome and irrelevant because it seeks information related to "any non-Apple physiological monitor." Apple's inspection of "any non-Apple physiological monitor" is irrelevant to the issues presented in this case. Apple objects to this Interrogatory as overly broad and unduly burdensome because it is not reasonably limited to the scope of infringement allegations in this litigation.

Subject to and without waiving the foregoing General and Specific Objections, Apple responds as follows:

Apple is willing to meet and confer to discuss the relevance of the information sought by Plaintiffs.

Apple reserves the right to supplement and/or amend its response to this Interrogatory as it continues its investigation and as discovery progresses.

## A.  Plaintiffs' Position

Interrogatory 10 seeks a description of any test, analysis, comparison, or competitive analysis that Apple performed concerning non-Apple physiological monitors.  Analysis of competitive physiological monitoring products is directly at issue to Plaintiffs' damages

and trade secret misappropriation.   Evidence showing Apple desired improved physiological monitoring is relevant to the undue benefit Apple received based on Plaintiffs' trade secrets.   Responsive information will show the significance Apple placed on improved physiological monitoring performance.   It would also support Apple's motive to misappropriate Plaintiffs' trade secrets.   This interrogatory is proportional to the needs of the case for the same reasons discussed above.   Among other things, this interrogatory seeks relevant information, the amount in controversy is high, and Apple cannot claim it lacks resources to respond because it is the most valuable public company on earth.

Apple argued this interrogatory is "not relevant to the claims or defenses in this case." Ex. 27 at 7.   As discussed above, Apple's relevance argument is misplaced.   Apple argues it should not have to respond to this interrogatory unless Plaintiffs confirm that the information in a single document identified by Apple "reflects the type of information Plaintiffs seek."   *Id.*   But Plaintiffs responded to Apple's assertions about that document *two months* ago.   As Plaintiffs explained, that document does *not* provide much of the information sought by this interrogatory, including "the date of Apple's investigation, the individuals who conducted the test or investigation, and to whom the results were communicated." Ex. 23 at 3.   Plaintiffs asked Apple if it was representing that the devices analyzed in that document are "the only non-Apple physiological monitors for which Apple has conducted any test, analysis, comparison, or competitive analysis" and if it has any "other documents or knowledge" regarding such tests.   *Id.*   Apple ignored Plaintiffs' position regarding that document and Plaintiffs' follow up questions. Ex. 24 at 5.   Plaintiffs reiterated their position and questions again, but Apple again simply ignored Plaintiffs' position and questions. Ex. 25 at 5; Ex. 27 at 7; Ex. 42 at 5.   Apple should not be permitted to stall discovery for months by refusing to respond to Plaintiffs' letters in good faith.

Accordingly, Apple has not shown why discovery should be limited.   The Court should overrule Apple's objections and order Apple to provide a full and complete response.

**B.**   **Apple's Position**

There is nothing for the Court to compel with regard to Interrogatory No. 10, as Apple never refused to respond to this Interrogatory.  To the contrary, Apple conducted a reasonable investigation to identify responsive information.  This investigation yielded few results, because the Apple Watch was developed in-house by Apple's own engineers.  Nonetheless, Apple did identify a document containing analysis of various wrist-worn monitors, APL-MAS_00065312, and asked Plaintiffs whether the information in this comparison was of the type sought by Interrogatory No. 10.  Plaintiffs' Ex. 24, at 322.  The reason for Apple's inquiry was that the document was essentially a comparison of the publicly known features of various wrist-worn physiological monitors available on the market, and did not include any comparison to Plaintiffs' devices, which is what it appeared Plaintiffs were seeking through Interrogatory No. 10.

Instead of responding to Apple's inquiry, Plaintiffs responded with a list of additional requests for information about Apple's analysis of third-party devices that went well beyond what Interrogatory No. 10 requested.  *See* Plaintiffs' Ex. 23, at 312.  As recently as April 11, Apple continued to ask Plaintiffs to confirm whether "the document in fact reflects the type of information Plaintiffs seek" and if not, to "provide a better description of the information Plaintiffs are looking for so that we can evaluate the request."  Plaintiffs' Ex. 27, at 353.  In sum, Apple has engaged in the meet-and-confer process in a good faith effort to ascertain the type of information Plaintiffs seek so that it can provide a satisfactory response to Interrogatory No. 10, thereby "eliminat[ing] the necessity for hearing the motion" with respect to this Interrogatory.  L.R. 37-1.  Plaintiffs have rejected all of Apple's efforts to do so, and refused to provide additional clarity.  Instead, Plaintiffs have attempted to inject new questions into this Interrogatory in an attempt to gather free discovery not requested through the formal written discovery process.

While Apple has made clear that it is willing to provide certain information about Apple's consideration of third-party devices, it maintains that Plaintiffs' Interrogatory No.

10 is overbroad.  Indeed, as Apple has expressed to Plaintiffs, Apple's consideration of third-party devices other than Plaintiffs' devices have no relevance to the issues in this litigation, as there are no allegations that Apple misappropriated trade secrets from anyone other than Plaintiffs, and Plaintiffs are not entitled to discovery regarding products developed by other companies not at issue in this case.

Moreover, Apple agreed to produce documents responsive to Plaintiffs' RFPs 97 and 100—which seek documents related to any comparison between any Masimo or Cercacor product or technology and any of the Apple Watch Products—to the extent they relate to Plaintiffs' alleged trade secrets.  If relevant documents responsive to RFPs 97 and 100 exist, they will be produced and may help inform the answer to Interrogatory No. 10.  To the extent Plaintiffs seek additional information regarding devices from third parties, Plaintiffs should provide Apple with clarity regarding what exactly it is seeking so that Apple can evaluate Plaintiffs' request.  Apple has made its position clear, and instead of providing the information Apple requested, Plaintiffs moved to compel.  Accordingly, Plaintiffs' motion with respect to Interrogatory No. 10 is premature and should be denied.

[*remainder of page left intentionally blank*]

## IX.  PLAINTIFFS' RFPS 180, 187, 191, 192, 197-206

Pursuant to Local Rule 37-2, below is the full text of Plaintiffs' RFPs 180, 187, 191, 192, and 197-206, and Apple's response to each request.  The parties' respective points and authorities follow below.

### REQUEST FOR PRODUCTION NO. 180:

All documents and things that refer or relate to the ███████████ ████████████████ described under heading "A" of Plaintiffs' Section 2019.210 Statement, including any amendments.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 180:

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210, including with respect to their so-called ████████████ ████████████████████ Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the Request. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production Nos. 178-79.

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time. Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section 2019.210, Apple will amend its response to this Request, to the extent necessary.

### REQUEST FOR PRODUCTION NO. 187:

All documents and things that refer or relate to the ████████████ ████████████████████████████ described under heading "B" of Plaintiffs' Section 2019.210 Statement, including any amendments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 187:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210, including with respect to their so-called █████████████ ███████████████████████████ Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the Request. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production Nos. 178-79.

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time. Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section 2019.210, Apple will amend its response to this Request, to the extent necessary.

**REQUEST FOR PRODUCTION NO. 191:**

Documents sufficient to identify Your █████████████████ ████████████ in any of the Accused Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 191:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculate to lead to the discovery of admissible evidence. In addition, Apple objects to this Request

-108-

as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210 and thus have not adequately identified what "███████████████████████████" techniques they are claiming as trade secrets. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production Nos. 189-90.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, to the extent this Request is even relevant to Plaintiffs' patent infringement allegations, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 192:**

All documents and things that refer or relate to the ████████████████ described under heading "C" of Plaintiffs' Section 2019.210 Statement, including any amendments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 192:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210, including with respect to their so-called ████████████████ Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the Request. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production Nos. 178-79.

-109-

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time. Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section 2019.210, Apple will amend its response to this Request, to the extent necessary.

**REQUEST FOR PRODUCTION NO. 197:**

Documents sufficient to identify any ██████████████████ that You have implemented or ever considered implementing in the Accused Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 197:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculate to lead to the discovery of admissible evidence. In addition, Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210 and thus have not adequately identified what █████ ██████████████ they are claiming as trade secrets. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production Nos. 194-95.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, to the extent this Request is even relevant to Plaintiffs' patent infringement allegations, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 198:**

All documents and things that refer or relate to Plaintiffs' Business and MarketingPlans and Strategies described under heading "D" of Plaintiffs' Section 2019.210 Statement, including any amendments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 198:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210, including with respect to their so-called "Business and Marketing Plans and Strategies." Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the Request. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production No. 178-79.

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time. Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section 2019.210, Apple will amend its response to this Request, to the extent necessary.

**REQUEST FOR PRODUCTION NO. 199:**

All documents and things that refer or relate to Apple implementing or considering any of the Business and Marketing Plans and Strategies described under heading "D" of Plaintiffs' Section 2019.210 Statement, including any amendments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 199:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210, including with respect to their so-called "Business and Marketing Plans and Strategies," and because it uses the undefined phrase "considering." Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the Request. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production Nos. 178-79, and 198.

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time. Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section 2019.210, Apple will amend its response to this Request, to the extent necessary.

**REQUEST FOR PRODUCTION NO. 200:**

All documents and things that refer or relate to Apple's business and marketing plans for products that calculate one or more physiological parameters.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 200:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence and is not limited to any relevant time period. In addition, Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210 and

thus have not adequately identified what "business and marketing plans" they are claiming as trade secrets. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the Request. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 201:**

All documents and things that refer or relate to the value and importance of Apple's business or marketing plans for products that calculate one or more physiological parameters.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 201:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence and is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, including because it uses the undefined phrase "value and importance." In addition, Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210 and thus have not adequately identified what "business and marketing plans" they are claiming as trade secrets. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the

Request. Apple objects to this Request as premature and unduly burdensome because it calls for information that is appropriately the subject of expert discovery and subject to separate timing requirements per the Court's Scheduling Order. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production Nos. 199-200. Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request.  Additionally, to the extent this Request seeks documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 202:**

Your past, present, and future business and marketing plans for the Accused Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 202:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence and is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome because it uses the undefined phrase "business and marketing plans." Apple objects to this Request because it is seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, in view of the Court's October 14, 2020 Order (Dkt. No. 220) granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations are moot and thus Apple declines to respond to this Request. Additionally, to the extent this Request seeks

documents related to trade secret discovery, because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time.

**REQUEST FOR PRODUCTION NO. 203:**

All documents and things that refer or relate to Plaintiffs' Strategies For Interacting With Hospitals described under heading "E" of Plaintiffs' Section 2019.210 Statement, including any amendments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 203:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210, including with respect to their so-called "Strategies For Interacting With Hospitals." Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the Request. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production Nos. 178-79.

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time. Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section 2019.210, Apple will amend its response to this Request, to the extent necessary.

**REQUEST FOR PRODUCTION NO. 204:**

All documents and things that refer or relate to Apple implementing or considering any of the Strategies For Interacting With Hospitals described

under heading"E" of Plaintiffs' Section 2019.210 Statement, including any amendments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 204:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence. Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210, including with respect to their so-called "Strategies For Interacting With Hospitals," and because it uses the undefined phrase "considering." Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the Request. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production Nos. 178-79, and 203.

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time. Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section 2019.210, Apple will amend its response to this Request, to the extent necessary.

**REQUEST FOR PRODUCTION NO. 205:**

All documents and things that refer or relate to Apple implementing or considering any strategy for ███████████████████████████

**RESPONSE TO REQUEST FOR PRODUCTION NO. 205:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad

and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence and is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, including because it uses the undefined phrase "considering." In addition, Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210 and thus have not adequately identified what ███████████ ████████████████████████████ they are claiming as trade secrets. Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the Request.

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time. Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section 2019.210, Apple will amend its response to this Request, to the extent necessary.

**REQUEST FOR PRODUCTION NO. 206:**

All documents and things that refer or relate to the value and importance of any ██████████████████████████████████████

**RESPONSE TO REQUEST FOR PRODUCTION NO. 206:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common- interest privilege, and/or any other applicable privilege, immunity, or protection. Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence and is not limited to any relevant time period. Apple objects to this Request as vague, ambiguous, overly broad, and unduly burdensome, including because it uses the undefined phrase "value and importance." In addition, Apple objects to this Request as vague and ambiguous, including because Plaintiffs have not complied with Section 2019.210 and thus have not adequately identified what ███████████ ████████████████████████████ they are claiming as trade secrets.

Apple objects to this Request on the grounds that it is overly broad and unduly burdensome because it requests "all documents and things" relating to the subject matter of the Request. Apple objects to this Request as premature and unduly burdensome because it calls for information that is appropriately the subject of expert discovery and subject to separate timing requirements per the Court's Scheduling Order. Apple objects to this Request to the extent it is duplicative and/or cumulative of Plaintiffs' Request for Production Nos. 204-05.

Because Plaintiffs' Section 2019.210 Statement, dated November 6, 2020, is deficient, including for reasons identified in Apple's October 16, 2020 letter, and the Court stayed Plaintiffs' trade secret discovery pending compliance with Section 2019.210, Apple declines to respond to this Request at this time. Within thirty days after Apple (or the Court) determines that Plaintiffs have provided an amended disclosure that complies with Section 2019.210, Apple will amend its response to this Request, to the extent necessary.

## A.    **Plaintiffs' Position**

These requests seek technical information similar to the information at issue in Plaintiffs' first motion to compel.  RFPs 180, 187, 192, 198, 199, 203, and 204, seek documents about the specific trade secrets identified in Plaintiffs' Section 2019.210 statement.  RFPs 200-202 and 205-206 seek similar information without referring to the Section 2019.210 disclosure.  The requested documents are thus directly relevant to Plaintiffs' trade secrets at issue in this case.  The RFPs are proportional to the needs of the case for the same reasons discussed above.  Among other things, these RFPs seek relevant information, the amount in controversy is high, and Apple cannot claim it lacks resources to search because it is the most valuable public company on earth.

Plaintiffs did not include these RFPs in the first motion to compel because Apple appeared to have agreed to produce responsive documents. *See* Ex. 25 at 3.  Because Apple "use[d] different language than the RFP," Plaintiffs asked Apple to confirm it was agreeing to produce responsive documents. *Id.*  On April 11 (after Plaintiffs served the first motion to compel and followed up on April 7), Apple responded by stating it "does not agree to produce all documents responsive to [these RFPs]."  Ex. 27 at 5-6.  Apple newly argued

the RFPs were "over[ly]broad and unduly burdensome to the extent it seeks documents that are not relevant to the claims or defenses in this case nor proportional to the needs of this case." *Id.* Apple then repeated its prior limitation for each RFP without explaining what exactly it was withholding. *Id.*

As discussed, the Court need not consider Apple's "general or boilerplate objections." *Nguyen*, 2019 WL 4579259, at *3. Because Apple has not identified any valid objection, it cannot limit its commitment to produce documents. *See Kilroy*, 2018 WL 6071089, at *1. Apple's specific limitations also each lack merit. For RFPs 180, 187, 191, 192, and 197 Apple limits its production to documents that "relate" (instead of "refer or relate") to the "development and implementation" of the each trade secret "in connection with the Apple products accused of incorporating Plaintiffs' alleged trade secrets . . . ." Ex. 27 at 5-6. Apple does not attempt to justify those limitations. As discussed, Apple may be liable for trade secret misappropriation if it considered using Plaintiffs' trade secrets but did not implement them in any product. *See PMC*, 78 Cal. App. 4th at 1383; *SkinMedica*, 869 F. Supp. 2d at 1197. Likewise, Apple is liable even if it incorporated Plaintiffs' trade secrets in other products not currently accused of misappropriating Plaintiffs' trade secrets. Apple should not be permitted to conceal evidence of its misappropriation just because Plaintiffs do not yet know of a particular act of misappropriation. *See Perlan Therapeutics,* 178 Cal. App. 4th at 1333.

Moreover, Apple again appears to be limiting its commitment to only documents that ***Apple*** believes would show misappropriation. For example, Apple appears to be suggesting it will produce no documents responsive to RFP 180 if Apple believes it has not implemented Plaintiffs' ███████████████ trade secrets in the Apple Watch. Apple cannot refuse to produce responsive documents just because it disagrees with Plaintiffs' claims on the merits. *See Carrizosa*, 2006 WL 1581953, at *2 (explaining "the propriety of discovery does not turn on one party's belief that the claims are without merit"); *Manzo*, 2019 WL 2866047, at *2; *Elkin*, 2017 WL 4047235, at *2. Indeed, Apple

can still be liable if it "unlawfully acquired and then built upon or modified [the trade secret] before being disclosed or benefit derived." *SkinMedica*, 869 F. Supp. 2d at 1197.

For RFPs 198-206, Apple agrees to produce documents that (1) "relate to the Apple products accused of incorporating Plaintiffs' alleged trade secrets" and (2) "with a date limitation of July 22, 2013, the date on which Apple hired Michael O'Reilly." Ex. 27 at 6. The first limitation makes no sense because the trade secrets at issue in RFPs 198-206 are a business and marketing trade secrets—not a technical trade secret that can be "incorporated" into a product. Apple cannot withhold responsive documents about the business and marketing trade secrets merely because Apple's use of those trade secrets does not relate to the Apple Watch. The second limitation is also inappropriate because discovery prior to O'Reilly's arrival is important to show changes that Apple made when O'Reilly arrived. Indeed, Plaintiffs allege "after O'Reilly arrived at Apple, Apple has shifted its business to pursue the same business and marketing plans and strategies that O'Reilly discussed and was exposed to at Plaintiffs." Ex. 28 ¶ 247; *see also id.* ¶ 253 (same for the strategies for interacting with hospitals).

Accordingly, Apple has not shown why discovery should be limited. The Court should overrule Apple's objections and order Apple to produce all responsive documents.

**B.**   **Apple's Position[16]**

**1.**   **RFPs 180, 187, 192, 198–201, and 203-206 Are Not Relevant or Proportional Because They Are Not Limited to the Apple Watch**

Plaintiffs argue that these RFPs "seek technical information similar to the information at issue in Plaintiffs' first motion to compel," asserting that all of this information is relevant to their trade secrets. J.S. 118. But Plaintiffs' requests must relate

---

[16]  Plaintiffs served Apple with their portion of this Joint Stipulation before Apple had an opportunity to finalize its position with respect to certain of the RFPs now at issue in this Joint Stipulation. Accordingly, on further reflection after Plaintiffs served their portion of this Joint Stipulation, Apple agreed to produce documents responsive to RFPs 191, 197, and 202, and therefore RFPs 191, 197, and 202 are not at issue on this motion.

not to their alleged trade secrets in a vacuum, but instead must be relevant in the context of the specific trade secret misappropriation *allegations* in their complaint against Apple.[17] *See, e.g.*, *Valenzuela v. City of Calexico*, 2015 WL 926149, at *4 (S.D. Cal. Mar. 4, 2015) (in a false arrest case, "limit[ing] the scope of discovery to the allegations, claims, and defenses present in the complaint"); *cf. Star Envirotech, Inc. v. Redline Detection, LLC*, 2015 WL 12745086, at *6 (C.D. Cal. Feb. 27, 2015) (in a patent case, granting discovery into products that plaintiff alleged infringed its patent because "those allegations frame the scope of discovery"); *Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *2 (N.D. Cal. June 14, 2012) ("[S]ection 2019.210 . . . limits the scope of discovery in much the same way as *the allegations of a complaint limit discovery* in other types of civil actions" (emphasis added) (quoting *Advanced Modular Sputtering, Inc. v. Superior Ct.*, 132 Cal. App. 4th 826, 835 (2005))).  Plaintiffs' RFPs fail this requirement because Plaintiffs' allegations for each of their categories of alleged trade secrets are directed solely against the Apple Watch, but their RFPs are not so limited.

For example, Plaintiffs' RFPs 180, 187, 192, 198, 199, 203, and 204 seek *all* "documents and things that refer or relate to" the ███████████████████████ ██████████████████████████████████████████ Plaintiffs' Business and Marketing Plans and Strategies, and Plaintiffs' Strategies For Interacting With Hospitals categories of alleged trade secrets, respectively.  J.S. 107–11, 115.[18] RFPs 200 and 201 are not even tied to Plaintiffs' alleged trade secrets, but instead seek broad discovery into any "products that calculate one or more physiological parameters," *id.* at 112–13, a term that is so broad that it would encompass functionality that has no connection to this case, *see*

---

[17] RFPs 198–206 do not even seek *technical* information; instead, these requests seek business and marketing information.

[18] RFP 199 appears to be seeking a subset of documents that would be responsive to RFP 198, and is thus duplicative.  Accordingly, Plaintiffs' motion with respect to RFP 199 should be denied for this independent reason.

Section III.B.1, *supra*, & Section IX.B.2, *infra*.  Finally, RFPs 205 and 206 are not limited to *any* products or *any* alleged trade secrets at issue in this case.  J.S. 116–17.  Thus, none of these RFPs are limited to the Apple Watch, which is the sole focus of Plaintiffs' allegations in the Fourth Amended Complaint concerning each of their categories of alleged trade secrets:

█████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████             *Apple had Lamego work on the Apple Watch project* and tasked him with producing key intellectual property related to bio-sensing, defining required resources for current and future bio-sensing functionalities, proposing and reviewing hardware and algorithm architectures, and advising Apple's team regarding bio-sensing functionalities.

Plaintiffs' Ex. 28, at 439–40 (¶ 236) (emphasis added).

██████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

*Id.* at 441 (¶ 238) (emphasis added); *see also id.* at 441–43 (¶¶ 239–240) (including pictures of and allegations directed to the Apple Watch); *id.* at 443 (¶ 241) (alleging that " ██████

████████████████████████████████████████

1  ████████████████" and "Apple had *Lamego work on the Apple Watch project* and

2  tasked him with producing key intellectual property related to bio-sensing" (emphasis

3  added)).

4  ████████████

5  ████████████████████████████████████████████████

6  ████ . . . . Apple hired Lamego to lead Apple's biosensor development work . . . .

7  *Apple had Lamego work on the Apple Watch project . . . .*

8  *Id.* at 445 (¶ 244) (emphasis added).

9  **Business and Marketing Plans and Strategies:**

10 ████████████████████████████████████████

11 ████████████████████████████████████████

12 ████████████████████████████████████████

13 ████████████████████████████████████████

14 ████████████████████████████████████████

15 ████████████████████████████████████████

16 ████████████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████████████

19 ████████████████████████████████████████

20 ████████████████████████████████████████

21 ████

22 *Id.* at 446–47 (¶ 246) (emphasis added).

23 **Strategies For Interacting With Hospitals:**

24 ████████████████████████████████████████

25 ████████████████████████████████████████

26 ████████████████████████████████████████

27 ████████████████████████████████████████

28 ████████████████████████████████████████

-123-

1  ████████████████████████████████████████████████████

2  ████████████████████████████████████

3  *Id.* at 449–50 (¶ 252) (emphasis added).  ████████████████████

4  █████████████████████████████████████████████████████████

5  █████████████████████████████████████████████████████████

6  █████████████████████████████████████████████████████████

7  █████████████████████████████████████████████████████████

8  █████████████████████████████████████████████████████████

9  █████████████████████████████████████████████████████████

10 ████████████████████████████[19]

Plaintiffs' entire Fourth Amended Complaint (and each of their earlier pleadings) center entirely on allegations concerning the Apple Watch. Indeed, the phrase "Apple Watch" appears 176 times in Plaintiffs' Fourth Amended Complaint, and Plaintiffs accuse no other products of misappropriating their alleged trade secrets. *See generally* Plaintiffs' Ex. 28. Even Plaintiffs' currently-stayed patent infringement claims are directed specifically at the Apple Watch. *Id.* at 376–434. Yet Plaintiffs' RFPs encompass every Apple product, including those products that have absolutely no connection to Messrs. Lamego or O'Reilly, and thus are not at issue in this case. Because the Apple Watch is the sole focus of this case, Plaintiffs are not entitled to discovery that goes well beyond that product.

Analogous patent infringement cases, where courts frequently deny overbroad

---

[19] Although not part of these RFPs, Plaintiffs' allegations concerning their alleged ████████████████ trade secrets are also solely related to the Apple Watch. *See, e.g.*, Plaintiffs' Ex. 28, at 451 (¶ 255) ("████████████████████████████████████████████████████████████████████████████████████████████████████████████████" (emphasis added)).

discovery into non-accused products, are instructive.   For example, in *MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, the Southern District refused to compel production where "Plaintiffs' RFPs would require Defendants to produce documents on products not at issue in this case" because Plaintiffs' complaint "confirm[ed] that this case is about . . . 'PBM'[] products offered by IQVIA," but "Plaintiffs' RFPs, however, are not limited to PBM products."   2021 WL 719649, at *2 (S.D. Cal. Feb. 24, 2021).   Other courts have reached the same conclusion in similar circumstances.   *See, e.g.*, *Outlaw Labs.*, 2020 WL 4436364, at *5 (holding RFP overbroad where it "include[ed], but [was] not limited to" accused products); *cf. Mediatek, Inc. v. Freescale Semiconductor, Inc.*, 2013 WL 588760 (N.D. Cal. Feb. 13, 2013) (denying motion to compel discovery related to products that were not specifically identified as accused products in the plaintiff's preliminary infringement contentions); *Icon-IP Pty Ltd. v. Specialized Bike Components, Inc.*, 2014 WL 4593338, at *3 (N.D. Cal. Sept. 15, 2014) (denying discovery on "all" saddles and holding that "if Icon seeks discovery as to the unaccused saddles, it must first amend its infringement contentions to include such models before it is entitled to discovery of them.").   The same principles apply here, where the only product accused by Plaintiffs of incorporating their alleged trade secrets is the Apple Watch.

Because all of Plaintiffs' accusations of trade secret misappropriation are solely directed at the Apple Watch, Plaintiffs' RFPs 180, 187, 192, 198–201, and 203–206 should be limited to the Apple Watch.

**2.**   **RFPs 200–201 and 203–206 Are Not Relevant or Proportional Because They Are Not Limited to Plaintiffs' Alleged Trade Secrets**

Plaintiffs' RFPs 200 and 201 are also overbroad for the related reason that they seek "marketing and business" information on all products that "calculate[e] one or more physiological parameters"—a term that, as Plaintiffs are using it, goes far beyond the issues in this case.   This term would, for example, include the Apple Watch's electrocardiogram (ECG) functionality because the timing and strength of a person's heartbeat plainly qualifies as a "physiological parameter," even though, as explained above, *see* Section

III.B.2, this functionality is unrelated to any of Plaintiffs' alleged trade secrets.  As another example, Plaintiffs' use of the term "physiological parameter" would encompass the accelerometer functionality in the Apple Watch that is used to determine whether a person is moving (a physiological parameter), even though that functionality also has nothing to do with any issues in this case (as Plaintiffs themselves have conceded during meet and confers).  This broad term would even cover the iPhone's Face ID functionality, which has absolutely no connection to anything in this case.  Rule 26 does not permit Plaintiffs such expansive discovery into every unrelated facet of Apple's technology.

**RFPs 201 and 202.**  RFP 201 seeks "[a]ll documents and things that refer or relate to the value and importance of *Apple's* business or marketing plans."  J.S. 113 (emphasis added).  RFP 202 seeks all "past, present, and future business and marketing plans for the *Accused Products*."  *id.* at 114 (emphasis added).  But Plaintiffs' alleged business and marketing trade secrets concern "the value and importance" of *Plaintiffs'* allegedly secret business and marketing plans—not "the value and importance" of Apple's plans—and discovery into Apple's plans that are not in any way related to Plaintiffs alleged trade secrets therefore is irrelevant.  Indeed, RFP 202 is so broad that it would cover Apple's marketing partnerships with Nike and various gyms in connection with the fitness app on the Apple Watch, as well as marketing related to the iPhone, which is included in Plaintiffs' definition of "Accused Products."  None of these business and marketing plans have anything to do with " ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████," Plaintiffs' Ex. 28, 372 (¶ 43.1), which is the focus of Plaintiffs' alleged business and marketing trade secrets.

**RFPs 203-206.**  Plaintiffs' RFPs 203–206 also are unrelated to the alleged trade secrets in this case because they concern hospital interaction "secrets" that this Court just dismissed with prejudice because they were "legally incapable of constituting trade secrets."  Samplin Decl. Ex. H, at 151 (Order at 11).  In fact, the only one of Plaintiffs' purported hospital interaction strategies that survived dismissal was " ██████████

-126-

█████████████████████████████████████████████████

█████████████████████████████████████" *Id.* at 146 (Order at 6); Plaintiffs'

Ex. 28, at 374 (¶ 44.5).  The Court noted that this alleged trade secret survived dismissal

in part because it incorporates the now-dismissed "secret" 44.4.  Samplin Decl. Ex. H, at

146 (Order at 6 n.1).  Thus, the only surviving alleged hospital interaction trade secret

specifically requires "██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████"

Plaintiffs' Ex. 28, at 374 (¶ 44.4–44.5).  Yet, none of these RFPs are limited to this alleged

trade secret.  Indeed, RFPs 205–206 seek information on "*any* █████████████

█████████████████████" J.S. 116–17 (emphasis added), which is facially far broader

than the single alleged hospital interaction trade secret that remains in this case.

These RFPs go far beyond the boundaries of Plaintiffs' alleged trade secrets, and are

thus not relevant or proportional to the issues in this case.  Accordingly, Plaintiffs' motion

with respect to these RFPs should be denied.

### 3.   Plaintiffs' Arguments to the Contrary Lack Merit

Plaintiffs assert that these RFPs "seek technical information" that is "relevant to

Plaintiffs' [alleged] trade secrets at issue in this case."  J.S. 118.  But, as explained above,

many of these RFPs are untethered to Plaintiffs' alleged trade secrets (and many of these

RFPs seek marketing information, not technical information).

Plaintiffs accuse Apple of responding with "general or boilerplate objections" and

"repeat[ing] its prior limitation for each RFP without explaining what exactly it was

withholding."  *Id.* at 118–19 (citing Plaintiffs' Ex. 27, at 5–6 (351–52)).  But Plaintiffs'

own exhibit contradicts that accusation, because Apple expressly informed Plaintiffs' that

it "agrees to produce all documents and things that relate" to their alleged trade secrets "in

connection with the Apple products accused of incorporating Plaintiffs' alleged trade secrets."  Plaintiffs' Ex. 27, at 351–52; *see also* Plaintiffs' Ex. 24, at 329–31.  In other words, Apple was clear that it objected to producing documents that were unrelated to Plaintiffs' alleged trade secrets or unrelated to the Apple Watch.  There is nothing general or boilerplate about that objection.

Plaintiffs next argue that "Apple may be liable for trade secret misappropriation if it considered using Plaintiffs' trade secrets but did not implement them in any product."  J.S. 119.  But this argument is a straw man—Apple's objection to these RFPs is not about the difference between actual implementation and consideration of implementation.  Instead, Apple is objecting because Plaintiffs' requests are not limited to their alleged trade secrets *and* the product (the Apple Watch) that Plaintiffs have alleged incorporates those alleged trade secrets.

Unable to refute that their RFPs should be limited to the sole accused product in this case, Plaintiffs again argue that Apple's objections concern the merits of their allegations. *Id.* at 119.  As explained above, however, Apple's objection is not about the merits of Plaintiffs' claim, but the overbreadth of their discovery requests that go beyond their alleged trade secrets and their accusations directed at the Apple Watch.  And, as likewise explained above, Plaintiffs' reliance on *SkinMedica, Inc. v. Histogen Inc.* to argue that Apple may be liable for "unlawfully acquir[ing] and then buil[ding] upon or modif[ying]" their alleged trade secrets, J.S. 119–20 (quoting 869 F. Supp. 2d 1176, 1197 (S.D. Cal. Apr. 23, 2012)), is misplaced.  *SkinMedica* merely rejected an argument that a defendant must use every element of a trade secret before being liable for misappropriation.  869 F. Supp. 2d at 1197.  Nothing in *SkinMedica* suggests that Plaintiffs' requests could go completely beyond their alleged trade secrets and the accused Apple Watch and obtain broad discovery into unrelated functionality and products not at issue in this case.

Plaintiffs' last argument is that RFPs 198–201 and 203-206 should not be limited to the Apple Watch "because the trade secrets at issue in [those RFPs] are a [*sic*] business and marketing trade secrets—not a technical trade secret that can be 'incorporated' into a

product." J.S. 120.  But, as explained above, Plaintiffs' allegations in the Fourth Amended Complaint concerning each of Plaintiffs' alleged "business and marketing" trade secrets are directed *solely* at the Apple Watch.  *See* Section IX.B.1.  Thus, Plaintiffs' argument lack merit.

In sum, these RFPs are not relevant or proportional to the issued in this case, and Plaintiffs' motion with respect to these RFPs should be denied.

[*remainder of page left intentionally blank*]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  April 28, 2021              By: */s/ Adam B. Powell*
        Joseph R. Re
        Stephen C. Jensen
        Benjamin A. Katzenellenbogen
        Perry D. Oldham
        Stephen W. Larson
        Mark D. Kachner
        Adam B. Powell

        Attorneys for Plaintiffs
        MASIMO CORPORATION and
        CERCACOR LABORATORIES, INC.

GIBSON, DUNN & CRUTCHER LLP

Dated:  April 28, 2021              By: */s/ Ilissa Samplin (with permission)*
        Joshua H. Lerner
        H. Mark Lyon
        Brian M. Buroker
        Brian A. Rosenthal
        Ilissa Samplin
        Angelique Kaounis
        Brian K. Andrea

        Attorneys for Defendant
        APPLE INC.