Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) **PLAINTIFFS' SUPPLEMENTAL**<br>) **MEMORANDUM IN SUPPORT OF**<br>) **PLAINTIFFS' SECOND MOTION TO**<br>) **COMPEL (DKT. 357)**<br>)<br>) [Discovery Document: Referred to<br>) Magistrate Judge John D. Early]<br>)<br>) Date:     May 20, 2021<br>) Time:     10:00 AM<br>) Ctrm:     6C<br>)<br>) Discovery Cut-Off:     7/5/2021<br>) Pre-Trial Conference:   3/21/2022<br>) Trial:                        4/5/2022<br>) |

1         Plaintiffs provide this supplement in support of their Second Motion to Compel

2 (Dkt. 357).  As with Apple's opposition to the first motion, Apple provides no ***evidence***

3 to support its argument that searching for responsive documents would be burdensome,

4 even though it is Apple's burden to do so.  *DeSilva v. Allergan USA, Inc.*, 2020 WL

5 5947827, at *3 (C.D. Cal. Sept. 1, 2020).  Instead, Apple continues to invent reasons to

6 resist legitimate discovery.  Apple asserts some RFPs are not limited to physiological

7 monitoring, or the right type of physiological monitoring.  When RFPs are specifically

8 limited to pulse rate or oxygen saturation, Apple asserts they are not limited to specific

9 trade secrets.  Even when RFPs refer to specific trade secrets in the Section 2019.210

10 disclosure, Apple still finds a reason to object and refuse to provide discovery.  The

11 Court should grant Plaintiffs' Motion.

12 **A.**     **Plaintiffs' Joint Stipulation Is Not Premature**

13         Apple represents it will produce responsive documents for RFPs 82, 98, 99, 163,

14 191, 197, and 202.  J.S. at 16-17, 120.  Plaintiffs welcome Apple's agreement to produce

15 documents, but disagree with Apple's attempt to "black hat" Plaintiffs by using Apple's

16 own concession to argue Plaintiffs "jumped the gun" in moving to compel.  The parties

17 exchanged ***more than a dozen*** letters and repeatedly conferred over ***six months***.  Exs.

18 9-25.  For these RFPs, Apple refused to provide its position for months.  Ex. 21 at 2

19 (February 11); Ex. 24 at 10 (March 9); Ex. 27 at 3 (April 11).  After Plaintiffs served the

20 joint stipulation, Apple suggested more negotiations, asked for an extension, and

21 indicated it might compromise.  Ex. 43.  Plaintiffs granted the extension and twice

22 suggested a meeting.  *Id.*  Apple declined for two weeks before agreeing to produce some

23 documents a few hours before providing its portion of the joint stipulation.  *Id.*

24         Apple argues Plaintiffs' motion on RFPs 226 and 230-235 is "premature" because

25 the parties are "actively negotiating" with respect to former employees.  J.S. at 85.  But

26 the parties have been discussing these RFPs for months and Apple recently refused to

27 provide information on ***any*** former employee besides Lamego and O'Reilly.  Ex. N at

28 2-3.  Apple argues some individuals are irrelevant (J.S. at 87), but Plaintiffs agreed

weeks ago not to seek discovery from two of those individuals (Ex. 36 at 2).  Apple accuses Plaintiffs of seeking "free discovery" on others, but Plaintiffs simply asked for basic information in an attempt to compromise and avoid burdening the Court.  In fact, Plaintiffs explained they hoped to ***drop*** their request for discovery from some individuals if Apple provided some basic information.  Ex. 36 at 2-3.  Apple refused.  Ex. 44 at 2-3.

Last night, Apple sent another letter confirming it will not search ESI of former employees, ***or any other custodian*** beyond the 15 to which it previously agreed, unless Plaintiffs first convince Apple of the individual's relevance.  Ex. 44 at 1.  In doing so, Apple disregards the Court's recent Order to "***immediately proceed*** with the production of electronically stored information ('ESI') for up to 39 custodians per side . . . ."  Dkt. 355 (emphasis added).  Apple refuses to even provide hit counts (which are helpful to evaluating a custodian's relevance) unless Plaintiffs first convince Apple of the custodian's relevance.  Ex. 44 at 3.  Apple's approach is contrary to the Court's order and prior briefing where Plaintiffs explained the basis for the additional custodians.  Apple appears to suggest the Court should adjudicate the relevance of each additional custodian separately, which would further delay the production of Apple documents.

**B.** **Discovery Is Not Limited To Apple's Implementation Of The Technical Trade Secrets In The Apple Watch**

Apple argues several marketing RFPs are too broad because Plaintiffs' claims are limited to misappropriation via the Apple Watch.  J.S. at 36-39, 47, 121-124.  But Plaintiffs' business, marketing, and hospital-interactions trade secrets are not limited to any particular product.  *See* Ex. 29 at 8-13.  Apple fabricates a "hypothetical market evaluation concerning the use of the Apple TV in a hospital" and argues that would be irrelevant.  J.S. at 39.  Apple does not show it conducted any such evaluations, much less so many as to make production burdensome.  Regardless, if Apple used Plaintiffs' trade secrets to market the Apple TV, that would constitute misappropriation.

Apple argues Plaintiffs are "overreaching" by seeking damages for "products that have not been pleaded as misusing their alleged secrets."  J.S. at 39.  Similarly, Apple

argues the term "physiological monitoring" is too broad because the Apple Watch includes monitoring features not at issue in the technical trade secrets, like ECG.  As discussed, several of Plaintiffs' trade secrets are not limited to the Apple Watch, much less specific features of the Apple Watch.  Even for technical trade secrets, one factor for calculating a reasonable royalty is the "existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales."  *See Atlantic Intertial Systems Inc. v. Condor Pacific Industries of Calif.*, 2015 WL 3825318 *10 (C.D. Cal. June 18, 2015) (applying *Georgia-Pacific* factors for trade secret royalties).  Such derivative or convoyed sales beyond the watch are relevant to the determination of a reasonable royalty.  Apple's efforts to market its products, including by emphasizing certain features over others, is also relevant.  *See id.* (*Georgia-Pacific* factors 10 and 11).

## C.  Apple's Section 2019.210 Limitation Lacks Merit

Apple's position on Section 2019.210 lacks merit for the reasons discussed in the joint stipulation and Plaintiffs' supplement supporting the first Motion to Compel.  *See* Dkt. 363 at 1-2.  As discussed therein, a Section 2019.210 disclosure may provide a basis to object to the scope of a request, but not for withholding responsive documents.  *Id.*

## D.  Apple's Other Arguments On The RFPs Lack Merit

Apple argues the term "physiological monitoring" in RFP 164 is too broad.  J.S. at 17-18.  But RFP 164 refers to "pulse oximetry" not "physiological monitoring." Apple presents no argument relating to the actual scope of RFP 164.

Apple argues RFPs 101 and 105 are too broad because they concern any competing product.  J.S. at 37-38.  While Apple never raised this issue, Plaintiffs agree to limit these RFPs to competing products that calculate a physiological parameter.

Apple objects to RFP 103 because Plaintiffs supposedly did not explain their understanding of the consumer and healthcare markets.  J.S. at 40.  But ***Plaintiffs'*** understanding has no bearing on RFP 103, which seeks ***Apple's*** understanding.

Apple argues RFPs 165-170 seek irrelevant information because they concern

1    Plaintiffs' products.  J.S. at 62.  Apple's analysis of Plaintiffs' products is relevant for

2    many reasons, including to show the parties compete, Apple's efforts to copy Plaintiffs'

3    products, and Apple's analysis of the accuracy of Plaintiffs' products.  Apple does assert

4    its responsive documents are so numerous they would be burdensome to produce.

5    Moreover, to the extent Apple has many documents assessing Plaintiffs' product,

6    evidence of Apple's focus on Plaintiffs' products would certainly be relevant.

7         Apple claims Plaintiffs' arguments on RFPs 67-70 and 155-157 "condense down"

8    to the assertion that "Apple should be forced to engage in boundless discovery because

9    it is a large company with 'resources.'"  J.S. at 75.  Plaintiffs never argued that.  Plaintiffs

10   properly argued that Apple's resources are one of many relevant factors under Rule 26.

11   *Id.* at 72-73.  Apple also ignores Plaintiffs' relevance arguments, instead arguing FDA

12   clearance is irrelevant because the FDA is not the "arbiter" of certain issues.  J.S. at 77.

13   The FDA need not be the "arbiter" of such issues for FDA clearance to be relevant.

14        Apple argues RFPs 236, 237, and 239 are irrelevant because there is no

15   "solicitation claim."  J.S. at 98.  That is an irrelevant strawman.  Plaintiffs allege Apple

16   recruited Plaintiffs employees to obtain Plaintiffs' trade secrets.  Ex. 28 ¶¶ 20-21,

17   229, 231.  Apple argues that only Lamego and O'Reilly are relevant because Plaintiffs

18   did not name others in the Complaint.  J.S. at 98.  Apple cites no authority limiting

19   discovery to individual employees identified in the complaint.  Even if such individuals

20   did not use Plaintiffs' trade secrets, Apple's efforts to obtain trade secrets from them

21   would be relevant to showing Apple knew it was obtaining trade secrets from Lamego

22   and O'Reilly—an issue that Apple emphatically contests.  *See* Dkt. 237-1 at 15.

23        For RFPs 240, 241, 245, and 248, Apple claims Plaintiffs are "speculating"

24   because they do not yet know why Apple promoted or fired people.  J.S. at 99-101.  But

25   that is the purpose of discovery—to obtain facts from Apple.  Apple also claims the

26   documents would not support Plaintiffs' allegations.  *Id.* at 101.  Apple cannot withhold

27   discovery by unilaterally asserting it would not support Plaintiffs' case.  Finally, Apple

28   points to its own voluntary limitation of a similar RFP and argues Plaintiffs are being

1    "hypocritical." J.S. at 100.  But Plaintiffs—not Apple—allege misappropriation.  Thus,

2    Apple's HR files are relevant for many reasons that do not apply to Plaintiffs' HR files.

3    Apple argues RFPs 244 and 246 are not relevant because the Court recently

4    dismissed some hospital interaction trade secrets.  J.S. at 101-102.  But these requests

5    seek specific documents that are also relevant to the business and marketing trade

6    secrets.  Ex. 29 at 8-10.  Apple does not attempt to show it would be burdensome to

7    produce them.  Instead, Apple imposes its improper unilateral Section 2019.210 filter.

8    RFPs 180, 187, 192, 198, 199, 203, and 204 refer to specific trade secrets, but

9    Apple nonetheless objects because the RFPs are not limited to the Apple Watch.  J.S. at

10   120-129.  Apple ignores that the scope of discovery is not so limited.  Apple cannot

11   avoid producing documents (or escape liability), by withholding documents regarding

12   its use of the trade secrets in connection with products other than the Apple Watch.

13   Finally, Apple argues RFPs 200, 201, and 203-206 are "not tied" to Plaintiffs'

14   alleged trade secrets.  These requests seek documents relevant to Plaintiffs' business,

15   marketing, and hospital-interactions trade secrets.  Apple argues RFP 201 is not relevant

16   to a trade secret referencing the value of **Plaintiffs**' business plans because RFP 201

17   seeks production regarding **Apple's** business plans.  *Id.* at 126.  Apple's argument makes

18   no sense.  Documents showing Apple incorporated Plaintiffs' plans into its own and/or

19   discussed the value of those plans are highly relevant.

20   **E.      Apple's Arguments On Interrogatory 10 Lack Merit**

21   Apple claims there is nothing to compel on Interrogatory 10 because Apple "never

22   refused to respond to this Interrogatory." J.S. at 105.  But Apple has still not provided

23   **any** substantive response.  Apple argues Plaintiffs failed to say whether the information

24   in one of Apple's documents was "the type of information Plaintiffs seek," but Apple

25   refuses to answer Plaintiffs' questions about that document.  J.S. at 105.  Regardless,

26   Apple cites no support for its assertion that a party may refuse to respond to an

27   interrogatory unless its opponent first agrees that a hypothetical response would be

28   sufficient.  The Court should order Apple to provide a full and complete response.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 30, 2021          By: */s/ Adam B. Powell*

Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Perry D. Oldham
Stephen W. Larson
Mark D. Kachner
Adam B. Powell

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

34769749

-6-