Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>Hon. James V. Selna<br>Magistrate Judge John D. Early<br><br>**PLAINTIFFS' OPPOSITION TO APPLE INC.'S NOTICE AND *EX PARTE* APPLICATION (DKT. 371)** |

## I. INTRODUCTION

Apple's *ex parte* application is based on a hypothetical. Apple refuses to ask any of its witnesses whether they object to an in-person deposition where the attorney, court reporter, and videographer are all fully vaccinated. Instead, Apple speculates that some witnesses **might** be uncomfortable. Rather than present any evidence to support its request, Apple relies on other cases requiring remote depositions months ago, before the widespread availability of COVID-19 vaccines and before infection rates plummeted. Indeed, San Francisco—where the depositions are noticed—is in California's lowest "yellow tier" reflecting "minimal" risk and permitting resumed business indoors. Apple also fails to mention it has been offering in-office vaccinations and special programs to encourage employees to obtain vaccines. Apple also ignores that **Apple itself recently demanded in-person proceedings** in the *Epic v. Apple* case. Apple explained it was "confident that we can have a safe and healthy proceeding" based on prior in-person proceedings. Epic resisted proceeding in person, but the court agreed with Apple and required an in-person trial. The court recognized "cross-examination is different" in person compared to "the comfort of your house," and "the best is in person."

To the extent any witness has a legitimate concern, Plaintiffs offered to consider continuing such depositions until the witness is comfortable. Apple faults Plaintiffs for offering such a compromise by calling it a "delay tactic." Br. at 2. But Apple made the same offer in *Epic* by arguing that proceeding in person was more important than a delay to the schedule. Regardless, Plaintiffs never suggested delaying depositions until after the current fact discovery cutoff. Because Apple refuses to talk to its own witnesses, it has no idea whether any depositions would need to be rescheduled or for how long.

Moreover, Apple has only just begun the ESI process after this Court's recent April 26 Order to search 39 custodians. Dkt. 355. Apple will likely be producing millions of documents that Plaintiffs will need to review prior to the relevant depositions. Thus, it is not feasible to believe that Apple will have reviewed and produced its documents sufficiently in advance of any depositions under the current schedule.

-1-

Because discovery will need to be extended anyway, Apple has no basis for asserting this is an "urgent" emergency. The Court should deny Apple's *ex parte* application.

## II. ARGUMENT

### A. Apple Lacks a Legitimate Reason for Requiring Remote Depositions

Similar to its recent ESI motion, Apple avoids calling its application a motion for protective order even though that is what Apple seeks. As the party seeking to limit discovery, Apple "has a 'heavy burden' of showing why discovery should be limited." *Nguyen v. Lotus by Johnny Dung Inc.*, 2019 WL 4579259, at *3 (C.D. Cal. June 7, 2019) (quoting *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule 26(c) test.'" *Id.* (quoting *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004)). Apple also ignores that, by rule, remote depositions are the exception—not the norm. Fed. R. Civ. P. 30(b)(4) ("The parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means.") As Apple acknowledges, it bears the burden of "advanc[ing] a legitimate reason for seeking a remote deposition." Br. at 4 (quoting *Swensen v. GEICO Casualty Co.*, 336 F.R.D. 206, 209 (D. Nev. Aug. 19, 2020) (internal citations omitted)).

Apple has not even attempted to meet its burden of justifying *any* specific remote depositions, much less a blanket order that *all* depositions must occur remotely.

### 1. Apple Presents No Evidence To Support Its Request

Apple does not present any evidence to support its request. Apple refuses to ask whether its employees would proceed in person, much less present a basis for any particular deposition to proceed remotely. Andrea Decl., Ex. G at 69. That alone dooms Apple's request. *See Nguyen*, 2019 WL 4579259, at *3; *Swensen,* 336 F.R.D. at 209.

Contrary to Apple's speculation, the facts show that in person depositions can be conducted safely. The COVID-19 situation has dramatically improved in recent weeks with vaccines being widely available to all adults since April 15. Powell Decl. Ex. 1. Santa Clara County—where Apple is headquartered—reports that more than 73% of

individuals over age 16 are partially vaccinated and more than 52% are fully vaccinated, with those figures continuing to improve daily. *Id.*, Ex. 2. The Center for Disease Control advises that "if you've been fully vaccinated you can gather indoors with fully vaccinated people without wearing a mask." *Id.*, Ex. 3.

Transmission risk has also decreased significantly. Plaintiffs noticed the depositions to occur in San Francisco, near Apple's headquarters, so that Apple's witnesses do not have to travel. Andrea Decl., Ex. A. Just last week, San Francisco entered California's least-restrictive "yellow" tier, which California characterizes as "minimal" risk. Powell Decl., Ex. 4. The yellow-tier guidelines permit indoor dining, concerts, and movie theaters—regardless of whether attendees are vaccinated.

Plaintiffs will also employ extensive safety measures. Plaintiffs have confirmed that any questioning attorney, court reporter, and videographer at any deposition would be fully vaccinated. Andrea Decl., Ex. C at 47. They would also wear masks. Plaintiffs are also prepared to address any legitimate objections from Apple's witnesses. For example, Plaintiffs could depose the witness outdoors, or in a very large conference room while maintaining social distancing. If a witness is not comfortable proceeding in person now, Plaintiffs even offered to schedule depositions for later, which will be required anyway given that Apple is just beginning the ESI process. *Id.*, Ex. F at 62.

Apple dismisses these facts by speculating that its employees *may* not be vaccinated and *may* not be comfortable. Br. at 6-7. However, Apple does not rely on an actual objection by any witness, much less establish the veracity or genuineness of any such objection. Apple apparently has no idea if its witnesses are fully vaccinated, gathering with friends, or taking vacations. Apple argues it cannot divulge its employees' medical information (Br. at 6), but Plaintiffs have never demanded that as a prerequisite to address witness concerns. Apple cannot simply *assume* its employees would object to in-person depositions without even asking.

Apple also ignores that it is willing to have its employees meet in person when it believes doing so is in its own best interest. For example, Apple demanded an in-person

-3-

trial in *Epic v. Apple* and similarly suggested postponing the trial if necessary to proceed in person. Powell Decl., Ex. 5 at 3-4 (the court explaining "I understand that Apple wants and is committed to a fully in-person trial to the fullest extent possible and they would prefer a date later if that means that we can't have it in May"). Apple's counsel (the same firm that represents Apple here) argued that Apple has developed "careful protocols that we are confident will ensure everyone's safety" and was "confident that we can have a safe and healthy proceeding in part based on our experience during this pandemic." *Id.* at 8. Apple argued "our experience has been that it is safe and workable to do witness testimony without masks" by using "plexiglass shields" and social distancing to "allow a safe proceeding where witnesses can speak clearly without masks." *Id.* at 10-11. Epic asked that the trial occur remotely, but the court agreed with Apple and ordered an in-person trial. *Id.* at 3-4.

Additionally, Apple has been offering its employees COVID-19 vaccines at its offices and implemented incentives to encourage its employees to become vaccinated. Powell Decl., Exs. 6 and 7. Thus, Apple's employees are likely being vaccinated at an even higher rate than the 73% of people in the county where Apple is located. *See id.*, Ex. 2. Apple also reopened all of its U.S. retail locations, where its employees meet in person all day indoors with prospective customers regardless of vaccination status. *Id.*, Ex. 8. Apple's CEO confirmed other employees will likely return to work in June because "it's still very important to physically be in touch with one another." *Id.*, Ex. 9.

### 2. Apple's Cited Authorities Do Not Support Its Position

Rather than present evidence of the circumstances ***in this case***, Apple relies almost exclusively on ***other*** cases addressing different circumstances. Apple relies on decisions from July 2020 through January 2021—before vaccines were available and before California was able to dramatically lower transmission rates. *See, e.g., Chen v. K.O.O. Constr., Inc.*, 445 F. Supp. 3d 1055, 1057 (S.D. Cal. May 8, 2020); *Newirth v. Aegis Senior Comms. LLC*, 2020 WL 4459120 (N.D. Cal. May 27, 2020); *Doyel v. ATOS IT Sols. & Servs., Inc.*, 2020 WL 6528421 (C.D. Cal. June 15, 2020); *Grupo Petrotemex,*

*S.A. de C.V. v. Polymetrix A.G.*, 2020 WL 4218804 (D. Minn. July 23, 2020); *Schoonover v. Iovate Health Scis. U.S.A. Inc.*, 2020 WL 7094061, at *1 (C.D. Cal. Nov. 9, 2020); *Raiser v. San Diego County*, 2021 WL 118901 (S.D. Cal. Jan. 13, 2021).[1] Apple's reliance on *Swenson v. GEICO Cas. Co.*, 336 F.R.D. 206 (D. Nev. 2020), is particularly misplaced because the court there was "unable to predict the creation and distribution of an effective vaccine." *Id.* at 209.

The circumstances are very different now. This Court has recognized that conditions have improved so much since January 2021 that in-person civil hearings and trials are appropriate. *See* Powell Decl., Exs. 10 and 11. Indeed, Apple itself recently demanded an in-person trial in the *Epic* case. *Id.*, Ex. 5. The court agreed and asked the lawyers to investigate any claims of discomfort, instructing: "I'm asking that you as lawyers investigate people who are telling me they can't show up." *Id.* at 6. "What I won't allow is for someone to avoid an in-person cross-examination by claiming a health concern and then we find out that the health concern is not genuine. If I find out, I will consider striking that testimony. I won't be lied to." *Id.*

Apple also relies on the CDC Guidelines (Br. at 5), but ignores that fully vaccinated individuals can gather indoors "without wearing a mask or staying 6 feet apart." Powell Decl., Ex. 3. The guidelines even state that such meetings can include "unvaccinated people of any age from one other household" if the unvaccinated individuals it not at "increased risk for severe illness from COVID-19." *Id.* Because Plaintiffs will ensure the questioning attorney, court reporter, and videographer are all fully vaccinated, the guidelines support in-person depositions.

Apple argues that Plaintiffs' offer to send fully vaccinated individuals is not relevant because "'despite [plaintiffs'] counsel's best efforts, it has no control over third

---

[1] Apple's cases are also distinguishable for other reasons. For example, *Raiser*, 2021 WL 118901, was based primarily on the plaintiff's status as *pro se* litigant, with only a single reference to Covid-19. In *Grupo*, 2020 WL 4218804, the court addressed remote depositions of witnesses living overseas. In *Schoonover*, 2020 WL 7094061, the court permitted a remote deposition of a witness living in a different state.

parties' compliance and comfort with COVID-19 related precautions and cannot guarantee the safety of the parties, counsel, deponents, videographers, court reporters, or other attendees.'" Br. at 6 (citing *Hernandez*, 2020 WL 6063143, at *4). But the *Hernandez* decision was from October 2020—before vaccines were available. Moreover, Apple's position directly contradicts the position it took in *Epic*. Plaintiffs can ensure the court reporters and videographers they hire have proof of vaccination.

Finally, Apple argues the "time it takes for vaccinations to confer immunity" complicates matters. Br. at 6-7 ("All told, it can take roughly six weeks from the first shot of a given vaccine to reach full immunity and protection"). But Apple has **no idea** whether its witnesses are vaccinated and the available data suggests most are vaccinated. *See* Ex. 2. Regardless, the parties can easily accommodate an individual becoming fully vaccinated by adjusting the schedule for that particular deposition.

### 3. In-Person Depositions Are More Effective

Remote depositions are the exception—not the norm. Fed. R. Civ. P. 30(b)(4). That is particularly true because of the importance and technical complexity of this case. Judge Rogers summarized similar issues when ordering the *Epic* trial occur in person, stating "this case is so significant that it warrants the best the judiciary has to give, and the best is in person." Ex. 5 at 4. Like *Epic*, this is a significant case that involves ubiquitous products and public attention. The case involves the operation of physical hardware and software that may need to be examined during depositions. Discovery also involves source code, with unique restrictions against electronic transmissions. Dkt. 67. Those particularized issues further confirm in person depositions are important.

### B. *Ex Parte* Relief Is Inappropriate

As the Court explained in the initial order for this case, *ex parte* applications are "solely for extraordinary relief and should be used with discretion." Dkt. 19 at 3 (citing *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995)). Apple must show: (1) it would be irreparably prejudiced if its application is not granted, and

(2) it was without fault in creating the putative crisis it believes requires *ex parte* relief. *Mission Power*, 883 F. Supp. at 492. Apple fails to carry its burden.

### 1. Apple Will Not Suffer Irreparable Prejudice Absent *Ex Parte* Relief

Apple cannot show it will be irreparably prejudiced absent *ex parte* relief. As discussed above, COVID-19 conditions have improved enormously in the past few months and continue to improve every day. Nonetheless, to the extent any of Apple's witnesses are not yet comfortable proceeding in person, Plaintiffs offered to work with Apple to schedule the deposition at a time when the witness is comfortable appearing in-person. Andrea Decl., Ex. F at 62. Plaintiffs requested that Apple ask its witnesses if they would proceed in person now and, if not, when they would be willing to do so.

Rather than engage with Plaintiffs, Apple refused to even ***ask*** its witnesses those questions. *Id.*, Ex. G at 69. Apple argues it cannot do so because it "is restricted by law from divulging its employees' medical information to Plaintiffs." Br. at 6. But Plaintiffs never asked for such information. Apple can ask a witness if they are comfortable proceeding in person now and, if not, when they would be comfortable, without asking about health or vaccination information. Certainly, at some point in the near future, Apple's witnesses will have no basis to further delay their deposition in person. Apple should not be permitted to use its own refusal to talk to its witnesses as the basis to burden Plaintiffs and the Court with an *ex parte* application.

Illustrating the adage that no good deed goes unpunished, Apple labels Plaintiffs' proposed compromise as a "delay tactic to extend fact discovery." Br. at 2. But Apple made the same offer in the *Epic* case and argued that proceeding in person was more important than a delay to the schedule. Powell Decl., Ex. 5 at 3-4. Moreover, Plaintiffs never suggested delaying such depositions until after the close of fact discovery. If Apple simply talked to its witnesses, it may learn that some would be comfortable proceeding now and others would request a modest continuance. Having failed to even discuss the matter with its witnesses, Apple cannot argue it will suffer irreparable harm. *See Mission*, 883 F. Supp. at 492.

### 2. **Apple Caused The Putative Crisis**

Apple argues *ex parte* relief is appropriate because "a regularly-noticed motion would not be heard until June 10, 2021, and the noticed depositions are scheduled to begin May 25, 2021." Br. at 9. But Apple provided the May 25 date for a witness, and refused to provide ***any*** other dates. Andrea Decl., Ex. E. Thus, Apple created "the putative crisis that it believes requires *ex parte* relief." *See Mission*, 883 F. Supp. at 492.

Apple also drove the larger scheduling crunch that the parties face. As the Court may recall, it took numerous orders for Apple to produce its core technical documents in October 2020—four months late. *See* Dkt. 37; Dkt. 54 at 8; Dkt. 76; Dkt. 79; Dkt. 92 ("This issue has been litigated multiple times and Apple has not prevailed. Now is the time for Apple to act: The Court expects prompt and full compliance."). Apple then refused to produce trade secret discovery until the Court confirmed Plaintiffs' Section 2019.210 disclosure was adequate in January 2021. Dkt. 279. Plaintiffs have also had to file two motions to compel Apple to produce documents and answer interrogatories, which are currently pending. *See* Dkt. 351; Dkt. 357.

Apple delayed ESI discovery for over seven months. *See* Dkt. 332-1 at 19-24 (Plaintiffs reciting the factual history of the parties' ESI disputes). The Court had to issue two orders—including one just two weeks ago—before Apple agreed to search a reasonable number of custodians. Dkt. 318; Dkt. 355. Despite the Court's recent order, Apple ***still*** refuses to search all of the custodians that Plaintiffs requested unless Plaintiffs first convince Apple the individual is relevant. *See* Dkt. 365, Ex. 44 at 1-2. Regretfully, Plaintiffs anticipate filing yet another motion on that issue.

The parties also dispute the volume of ESI searching. Apple's requested search terms hit on ***17 million*** documents of Plaintiffs.[2] Apple agreed to narrow some terms, but refuses to narrow terms that hit on ***12 million*** documents. Yet Apple demands Plaintiffs narrow their search terms even though they hit on a much smaller 3.5 million

---

[2] Plaintiffs did not attach the correspondence on this issue to avoid burdening the Court with an application to seal. Plaintiffs will do so if the Court believes it would be helpful.

-8-

documents of Apple. Plaintiffs are working to narrow their terms, but Apple's refusal to narrow its own terms will likely lead to another dispute and require additional time to address the issue. Even if the parties were to narrow their search terms to 1 million documents each, the parties would need to spend about 40,000 hours of attorney time to complete ESI document production before depositions begin. *See* Ex. 12 (Attorneys conducting document review typically review about 40-50 documents per hour).

Apple appears to be intent on running out the clock to avoid Apple providing discovery. As discussed, it took seven months and two court orders before Apple agreed to search more than twelve custodians. Plaintiffs started the ESI process last October. Had Apple agreed to search a reasonable number of custodians at that time, the parties would not have to produce and review millions of documents, and try to take 100 hours of depositions each, in just six weeks. Apple is at fault for "creating the putative crisis that it believes requires *ex parte* relief." *See Mission*, 883 F. Supp. at 492.

### III.  CONCLUSION

Plaintiffs respectfully request the Court deny Apple's *ex parte* application. The parties should conduct depositions in person absent agreement of the parties, or Court Order based on a specific showing that a particular deposition should proceed remotely.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 11, 2021

By: */s/ Adam B. Powell*
Joseph R. Re
Stephen C. Jensen
Benjamin A. Katzenellenbogen
Perry D. Oldham
Stephen W. Larson
Mark D. Kachner
Adam B. Powell

Attorneys for Plaintiffs
MASIMO CORPORATION and
CERCACOR LABORATORIES, INC.

-9-