Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**DECLARATION OF ADAM B. POWELL IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL APPLE TO COMPLY WITH THE COURT'S ORDER (DKT. 355) BY SEARCHING TIM COOK'S DOCUMENTS**<br><br>[Discovery Document: Referred to Magistrate Judge John D. Early]<br><br>Date:     June 10, 2021<br>Time:    10:00 a.m.<br>Ctrm:    6A<br><br>Discovery Cut-Off:        7/5/2021<br>Pre-Trial Conference:   3/21/2022<br>Trial:                          4/5/2022 |

I, Adam B. Powell, hereby declare as follows:

1.      I am a partner in the law firm of Knobbe, Martens, Olson & Bear, LLP, counsel for Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs") in this action.  I have personal knowledge of the matters set forth in this declaration and, if called upon as a witness, would testify competently thereto.  I submit this Declaration in Support of Plaintiffs' Motion to Compel Apple to Comply with the Court's Order (Dkt. 355) by Searching Tim Cook's Documents (the "Motion").

2.      On April 2, 2021, I participated in a meet and confer with counsel for Apple regarding the parties' ESI disputes.  On May 11, 2021, I participated in another meet and confer with counsel for Apple regarding the parties' ESI disputes.  The parties discussed whether Apple would search Tim Cook's documents.  The parties discussed their respective positions, but were unable to resolve the disputes that are the subject of Plaintiffs' Motion.

3.      Attached hereto as **Exhibit 1** is a true and correct copy of the Court's Order Granting in Part Defendant Apple Inc.'s Motion to Compel Plaintiffs to Immediately Proceed with ESI Discovery, filed on April 26, 2021, at Dkt. 355.

4.      Attached hereto as **Exhibit 2 [Filed Under Seal]** is a true and correct copy of the unredacted Joint Stipulation Regarding Apple's Motion to Compel Plaintiffs to Immediately Proceed with ESI Discovery, filed on April 8, 2021, at Dkt. 332-1.

5.      Attached hereto as **Exhibit 3** is a true and correct copy of the Supplemental Memorandum Regarding Apple's Motion to Compel Plaintiffs to Immediately Proceed with ESI Discovery, filed on April 15, 2021, at Dkt. 344.

6.      Attached hereto as **Exhibit 4** is a true and correct copy of the Court's Order Re:  Plaintiffs' Motion to Compel (Dkt. 314) and Plaintiffs' Application to File Under Seal (Dkt. 316), filed on March 5, 2021, at Dkt. 318.

7.      Attached hereto as **Exhibit 5 [Filed Under Seal]** is a true and correct copy of the unredacted Fourth Amended Complaint, filed on February 5, 2021 at Dkt. 296-1.

8.     Attached hereto as **Exhibit 6** is a true and correct copy of an April 29, 2021, letter from Brian Andrea (who is counsel of record for Apple) to myself.

9.     Attached hereto as **Exhibit 7** is a true and correct copy of a May 1, 2021, letter from myself to Mr. Andrea.

10.     Attached hereto as **Exhibit 8** is a true and correct copy of a May 4, 2021, letter from Mr. Andrea to myself.

11.     Attached hereto as **Exhibit 9** is a true and correct copy of a May 5, 2021, letter from myself to Mr. Andrea.

12.     Attached hereto as **Exhibit 10** is a true and correct copy of a May 10, 2021, email from myself to Mr. Andrea.

13.     Attached hereto as **Exhibit 11** is a true and correct copy of the Discovery Order in *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-5640-YGR (N.D. Cal. Dec. 16, 2020), Dkt. 192 (consolidated with other cases).

14.     Attached hereto as **Exhibit 12** is a true and correct printout of the webpage located at https://www.beckershospitalreview.com/consumerism/behind-apple-s-healthcare-strategy-4-quotes-from-ceo-tim-cook.html, as it existed on May 12, 2021.

15.     Attached hereto as **Exhibit 13** is a true and correct printout of the webpage located at https://www.sportspromedia.com/news/tim-cook-apple-watch-sports-fitness-plus, as it existed on May 12, 2021.

16.     Attached hereto as **Exhibit 14** is a true and correct printout of the webpage located at https://frontofficesports.com/apples-next-move/, as it existed on May 12, 2021.

17.     Attached hereto as **Exhibit 15 [Filed Under Seal]** is a true and correct copy excerpt of a document that Apple produced in discovery as APL-MAS_00098752.

18.     Attached hereto as **Exhibit 16 [Filed Under Seal]** is a true and correct copy excerpt of a document that Apple produced in discovery as APL-MAS_00117006.

19.     Attached hereto as **Exhibit 17** is a true and correct printout of the webpage located at https://www.cnn.com/2020/09/15/cnn-underscored/apple-watch-series-6-preorders, as it existed on May 12, 2021.

20.     Attached hereto as **Exhibit 18** is a true and correct printout of the webpage located at https://www.apple.com/leadership/adrian-perica/, as it existed on May 12, 2021.

21.     Attached hereto as **Exhibit 19 [Filed Under Seal]** is a true and correct copy of a document that Plaintiffs produced in discovery as MASA00085626.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on May 12, 2021, at Encinitas, California.

*/s/ Adam B. Powell*
Adam B. Powell

34934262

# EXHIBIT 1

1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendants. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> ORDER GRANTING IN PART DEFENDANT APPLE INC.'S MOTION TO COMPEL PLAINTIFFS TO IMMEDIATELY PROCEED WITH ESI DISCOVERY |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This matter is before the Court pursuant to the Motion to Compel Plaintiffs to Immediately Proceed with ESI Discovery filed by Defendant Apple Inc.'s ("Apple"). Dkt. 333 ("Motion"). Based on the more than 900 pages of material, including sealing applications and sealed materials, submitted in connection with the Motion, Apple's statement that "ESI discovery cannot wait" (Dkt. 333-1 at 5 (CM/ECF pagination)) and Plaintiffs' statement that "ESI discovery should move forward immediately" (id.), the Court finds the Motion may properly be decided without oral argument or further briefing.

**Exhibit 1**
**-4-**

Having considered the documents filed in support of and in opposition to the Motion, including the parties' Joint Stipulation and respective Supplemental Memoranda, as well as the parties' declarations and exhibits, and all other matters properly before the Court, and for good cause appearing:

IT IS HEREBY ORDERED that Apple's Motion (Dkt. 333) is GRANTED, in part, as follows: the parties are ORDERED, to the extent they have not already done so, to immediately proceed with the production of electronically stored information ("ESI") for up to 39 custodians per side, which the Court, having considered all of the evidence and argument presented by the parties, finds reasonable and proportionate to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." See Fed. R. Civ. P. 26(b)(1). This Order is without prejudice to either side's ability to seek ESI from additional custodians in the future upon an appropriate showing.

IT IS SO ORDERED.

Dated:  April 26, 2021

JOHN D. EARLY
United States Magistrate Judge

Exhibit 1
-5-

# EXHIBIT 3

1  Joseph R. Re (Bar No. 134479)
   joseph.re@knobbe.com
2  Stephen C. Jensen (Bar No. 149894)
   steve.jensen@knobbe.com
3  Perry D. Oldham (Bar No. 216016)
   perry.oldham@knobbe.com
4  Stephen W. Larson (Bar No. 240844)
   stephen.larson@knobbe.com
5  KNOBBE, MARTENS, OLSON &
6  BEAR, LLP
7  2040 Main Street, Fourteenth Floor
8  Irvine, CA 92614
9  Telephone: (949)-760-0404
10 Facsimile: (949)-760-9502

   Adam B. Powell (Bar. No. 272725)
11 adam.powell@knobbe.com
12 KNOBBE, MARTENS, OLSON &
   BEAR, LLP
13 12790 El Camino Real
   San Diego, CA 92130
14 Telephone: (858) 707-4000;
15 Facsimile: (858) 707-4001
16 *Attorneys for Plaintiffs Masimo Corp. and Cercacor Labs., Inc.*

   JOSHUA H. LERNER, SBN 220755
   jlerner@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP
   555 Mission Street Suite 3000
   San Francisco, CA 94105
   Tel.: 415.393.8200 / Fax: 415.393.8306

   H. MARK LYON, SBN 162061
   mlyon@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP
   1881 Page Mill Road
   Palo Alto, CA 94304-1211
   Tel.: 650.849.5300 / Fax: 650.849.5333

   *Attorneys for Defendant Apple Inc.*
   *[Additional counsel listed on next page]*

17                    UNITED STATES DISTRICT COURT

18   FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

19  MASIMO CORPORATION,              CASE NO. 8:20-cv-00048-JVS (JDEx)
20  CERCACOR LABORATORIES, INC.,

21              Plaintiffs,          **SUPPLEMENTAL MEMORANDUM**
                                     **REGARDING APPLE'S MOTION TO**
22         v.                        **COMPEL PLAINTIFFS TO**
                                     **IMMEDIATELY PROCEED WITH ESI**
23  APPLE INC.,                      **DISCOVERY**

24              Defendant.

25                                   Judge:      Magistrate Judge John D. Early
                                     Date/Time:  April 29, 2021 / 10:00 AM
26                                   Courtroom:  6A

27                                   Discovery Cutoff:       7/5/2021
28                                   Pre-trial Conference:   3/21/2022
                                     Trial:                  4/5/2022

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8500 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

Now that Plaintiffs finally lifted their embargo on moving forward with a dozen custodians, Apple asks that the Court enter Apple's proposed order that the parties "proceed with ESI discovery for twelve custodians per side, without prejudice to either side's ability to seek ESI from additional custodians later, if reasonable and appropriate." Both sides win if the Court enters the proposed order to immediately proceed with twelve custodians each:  Plaintiffs can continue to search the custodians they agree are relevant, and Apple may collect, search, and produce documents from key individuals involved with the core issues or subjects in this case.  Plaintiffs can argue for more custodians if there is a reasonable and appropriate basis for doing so, but discovery will not be on hold while they do that.  Indeed, Apple has already agreed to add two additional custodians based on the information Plaintiffs provided (for the first time) in their opposition.

Turning to Plaintiffs' arguments, Apple is—to be clear—not  requesting a protective order.  Apple seeks a simple arrangement that is contemplated by the ESI Agreement and laid out in plain terms in the proposed order.

## A.   Entering the Proposed Order Will Move Discovery Forward Efficiently

The ESI Agreement entered by the parties in this matter is the culmination of lengthy negotiations, during which the parties agreed to work together "in an attempt to reach agreement on a procedure" for ESI discovery "using a reasonable list of custodians" who were "knowledgeable about and who were involved with the core issues or subjects in this case. Dkt. 51 ¶ 1. Since October, Apple has endeavored to do just that—discuss a reasonable procedure.  Plaintiffs have resisted, instead insisting on unbounded ESI discovery and "disclos[ure] [of] all potential custodians," J.S. at 42, an arrangement never contemplated during negotiations, let alone provided for in the final ESI Agreement.  As the chronology of the parties' correspondence on ESI discovery demonstrates, this unfortunate defiance of the spirit and letter of the ESI Agreement  is what ushered this dispute to the Courthouse.

Apple expended considerable energy over the past two months attempting to work with Plaintiffs to discern their basis for alleging that the nearly 50 Apple custodians from

-1-

Exhibit 3
-58-

1 whom they seek ESI have relevant, non-duplicative information.  *See, e.g.*, J.S. at 5–10,

2 Dkt. 333-2, Exs. P, V, AK.  Regrettably, instead of providing that information as part of

3 the meet and confer process and obviating the need for motion practice, Plaintiffs

4 provided this information *for the very first time* in six pages of briefing.  J.S. at 26-33.

5 Although the form and timing is unfortunate, Apple is considering the information

6 Plaintiffs provided and will continue discussions.  While Apple hopes the parties can

7 continue to discuss without the Court's involvement, Apple notes that an initial review of

8 the information Plaintiffs provided illustrates the overbreadth of Plaintiffs' position.  For

9 example, Plaintiffs copied and pasted the phrase "likely has technical documents relating

10 to the Accused Products" 27 times.  (J.S. at 26–31.)  Then, 28 times, Plaintiffs' copied and

11 pasted the  verbatim accusation that proposed custodians may have documents related to

12 the "implementation of Plaintiffs' trade secrets." (J.S. at 27–32.)  The repetition illustrates

13 that Plaintiffs lack a  basis to believe these individuals have relevant, non-duplicative ESI

14 that Plaintiffs will not receive from the individuals Apple identified as those whom

15 actually are " knowledgeable about and were involved with the core issues or subjects in

16 this case," as required by the ESI Agreement.  Dkt. 51 ¶ 1.  To the contrary, Plaintiffs are

17 fishing, and looking for bait wherever they can find it.  For example, it appears that

18 Plaintiffs copied at least 19 names from a New Hire Onboarding document produced by

19 Apple that lists a directory of Apple employees that Mr. Lamego may want to meet. (Dkt.

20 332-3, Ex. 19.)

21      With respect to Tim Cook, the CEO of Apple, his only connection to this case is

22 that the Fourth Amended Complaint alleges that he "interviewed" O'Reilly and made

23 general statements about Apple's commitment to healthcare.  Dkt. 296-1 ¶ 230.  Plaintiffs

24 argue that Mr. Cook is "directly relevant" because he "recruited O'Reilly to leave Masimo

25 and join Apple," J.S. at 4, 32, but that allegation is not in the Complaint and cannot form a

26 legitimate basis to justify collecting his documents.  Mr. Cook is not a relevant custodian

27 and Plaintiffs "do[] not have a factual basis to obtain ESI discovery from [a senior

28 executive]."  *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 8757255, at *1 (N.D. Cal.

SUPP. MEM. RE APPLE'S MOT. TO COMPEL                    CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 3
-59-**

1    Feb. 20, 2019) (holding that plaintiffs "may elect to obtain ESI from a custodian who is a

2    senior executive," only if they "ha[ve] a factual basis to believe that such senior executive

3    has relevant information."); *see also Lauris v. Novartis*, 2016 WL 7178602, at *5 (E.D.

4    Cal. Dec. 8, 2016) ("[T]he Court will require more than mere speculation to order

5    Defendants to include the apex custodians in the search protocol.").

6    **B.**    **The Proportionality Requirement of Rule 26 Supports Apple's Approach**

7         "[T]he right to discovery, even plainly relevant discovery, is not limitless" and must

8    also be proportional to the needs of the case. *AECOM Energy & Construction, Inc. v.*

9    *Ripley*, No. 17-cv-5398-RSWL-SS, 2018 WL 4705914, at *2 (C.D. Cal. Apr. 26, 2018).

10    Plaintiffs' cases highlight that Rule 26 was amended "to confront the problem of over-

11    discovery and to allow the court to proportion discovery." *City of Sterling Heights Gen.*

12    *Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5055241, at *2 (D.N.J. Aug. 21, 2015).

13         Plaintiffs' expansive wish list of nearly fifty custodians remains a disproportionate

14    approach to ESI discovery, and the cases they cite do not suggest otherwise. In an effort

15    to make their list appear palatable, Plaintiffs cherry-pick cases unrelated to trade secrets

16    where the parties agreed that a relatively large number of custodians was appropriate

17    given the scope and history of the case. Despite what Plaintiffs' misleading parentheticals

18    may suggest, these cases nearly uniformly support Apple's proposal to begin with a

19    workable set of key custodians and expand if necessary. Plaintiff's only authority from

20    this jurisdiction is *U.S. v. Allergan, Inc.*, 2021 WL 969215, at *2 (C.D. Cal. Mar. 1, 2021),

21    where the Court rejected the relator's attempt to "add 50 additional custodians" in a false

22    claims act case alleging more than twelve years of fraudulent conduct. The cases they cite

23    from other jurisdictions likewise do not justify starting with 49 custodians in *this* case.

24    *Kleen Products LLC v. Packaging Corporation of America.*, 2012 WL 4498465, at *15

25    (N.D. Ill. Sept. 28, 2012) was an antitrust case alleging seven years of anticompetitive

26    behavior, where the Court afforded plaintiffs the opportunity to select "eight additional

27    custodians" because they "had no input on the initial custodian determinations" and the

28    case was 'still in the early stages of discovery." *Black & Veatch Corp. v. Aspen Ins. (UK)*

-3-

Supp. Mem. Re Apple's Mot. to Compel        Case No. 8:20-cv-00048-JVS (JDEx)

**Exhibit 3**
**-60-**

*Ltd.*, 2014 WL 806122, at *7-8 (D. Kan. Feb. 28, 2014) was decided under a different legal standard, as plaintiffs there were seeking a protective order, but the list of 60 custodians in that case was deemed reasonable as it represented a subset of 467 identified individuals involved in a contract dispute.   The court in *Garcia Ramirez v. U.S. Immigration and Customs Enforcement*, 331 F.R.D. 194, 199 (D.D.C. 2019), a class action challenging immigrant youth detention practices, also was faced with a motion for a protective order but its decision supports Apple's proposal, as discovery there began with eighteen initial custodians.[1]   *City of Sterling Heights*, 2015 WL 5055241, at *3-4 is also fully consistent with the sensible approach Defendants seek: there, the court rejected plaintiffs' request for "22 to 45 additional custodians" and instead allowed "up to an additional ten." Similarly, in *Oracle Am., Inc. v. Google Inc.*, 2015 WL 7775243, at *1–2 (N.D. Cal. Dec. 3, 2015), the court rejected Plaintiffs' proposal "to add twenty-two individuals to the existing list of twenty-seven" and instead allowed "ten additional custodians."

While Plaintiffs harp on the point that Apple is a large and profitable company (*see, e.g.*, J.S. at 26, 39), a lawsuit against Apple does not merit a large number of custodians without regard for proportionality.  *See City of Sterling Heights*, 2015 WL 5055241, at *4 ("Although Prudential is a large corporation with substantial resources, the Court should not be-and is not-insensitive to these costs.").   The fact that Plaintiffs asserted trade secret claims regarding the development of the Apple Watch does not entitle them to discovery from every employee who worked on that device or interacted with someone who did. For example, many of Plaintiffs' allegations—and their alleged basis for seeking ESI from nearly 50 individuals—relate to the conduct of Marcelo Lamego, who worked at Apple for

---

[1] Unlike the situation in *Garcia Ramirez*, Apple has not "gathered and searched" data from Plaintiffs' entire custodian list, and doing so would incur substantial costs. *Williams v. Apple, Inc.*, 2020 WL 5107639 (N.D. Cal. Aug. 31, 2020).  Plaintiffs assert that "any burden is primarily associated with the number of **documents** reviewed—not **custodians** searched."  J.S. at 3; *see also id.* at 39.  Plaintiffs offer no support for this baseless view.

-4-

**Exhibit 3**
**-61-**

six months and had no direct reports, contrary to Plaintiffs' belief otherwise.  The approach laid out in the proposed order is fully in line with what courts do in comparable cases.  *See, e.g.*, *Alta Devices, Inc.*, 2019 WL 8757255, at *1 (finding that plaintiffs' "demand for ESI discovery from 33 custodians is not proportional to the needs of this [trade secrets] case" and limiting the list to "no more than **10** custodians."); *see also Intel Corp. v. Rivers*, 2019 WL 4318583, at *5 (E.D. Cal. Sept. 12, 2019) (finding it "reasonable" to search a "specific set" of **11** custodians in a trade secrets matter.)

At the end of the day, if the goal is to generate relevant, non-duplicative information, the best way to do that is to move forward with a reasonable procedure designed to efficiently identify and produce that information from those that have it.  That's what was contemplated by the parties' ESI Agreement, and what Apple wants to do here.  Plaintiffs ask the Court to "deny Apple's motion and order Apple to conduct [] a reasonable search under the Federal Rules." (JS at 19.)  However, if a reasonable search under the Federal Rules is what Plaintiffs seek, *granting* Apple's motion will provide them their desired outcome.  Thus, Apple respectfully asks the Court to enter the proposed order, and set dates for a mutual exchange of search terms and commencement of rolling productions.

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

Dated:  April 15, 2021         By: */s/*
                                   Joshua H. Lerner
                                   H. Mark Lyon
                                   Brian M. Buroker
                                   Brian A. Rosenthal
                                   Ilissa Samplin
                                   Brian K. Andrea
                                   Angelique Kaounis

                                   *Attorneys for Defendant Apple Inc.*

-5-

**Exhibit 3
-62-**

# EXHIBIT 4

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 8:20-cv-00048-JVS (JDEx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

| Present: The Honorable | John D. Early, United States Magistrate Judge |
|---|---|

| Maria Barr | n/a |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| n/a | n/a |

**Proceedings:**     Order Re: Plaintiffs' Motion to Compel (Dkt. 314) and Plaintiffs' Application to File Under Seal (Dkt. 316)

Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Plaintiffs") filed their original complaint in this action against Defendant Apple Inc. ("Defendant" or "Apple") on January 9, 2020. See Dkt. 1. On November 13, 2020, Plaintiffs filed a Third Amended Complaint ("TAC") alleging claims for: (1) patent infringement (12 counts); (2) trade secret misappropriation under California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 et seq.; (3) correction of inventorship (6 counts); and (4) declaratory relief (7 counts). See Dkt. 230-2 (redacted). On February 5, 2021, Plaintiff filed an application to file a Fourth Amended Complaint under seal, which included a redacted and a sealed unredacted copy of the Fourth Amended Complaint. Dkt. 295-2, 296-1 (sealed).

On March 4, 2021, Plaintiffs filed a "Motion to Compel Apple to Comply with the ESI Order" (Dkt. 314, "Order"), a Joint Stipulation (Dkt. 315, "Jt. Stip."), and supporting and opposing evidence, some of which is sought to be filed under seal (Dkt. 315-1 to 315-4, 316). The sealing request (Dkt. 316) is GRANTED.

The Court finds the Motion may properly be decided without further briefing or oral argument, vacates the hearing set for March 25, 2021, and DENIES the Motion (Dkt. 314) for the following reasons.

By the Motion, Plaintiffs ask the Court to "order [Defendant] to comply with the ESI Order by identifying all custodians who are 'knowledgeable about and were involved with the core issues or subjections in the case (e.g. the asserted patents, alleged misappropriation

**Exhibit 4
-63-**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 8:20-cv-00048-JVS (JDEx) | Date | March 5, 2021 |
|---|---|---|---|
| Title | Masimo Corporation, et al. v. Apple Inc. | | |

of trade secrets, the development, design and operation of the accused products, and sales, marketing and other damages related information for the accused products).' ESI Order at 1." Jt. Stip. at 3. In citing to the "ESI Order," Plaintiffs refer to an order titled "ORDER RE: ESI STIPULATION, Docket Entry No. 52 in this action. See Jt. Stip. at 1; Dkt. 315-1 at ¶ 4; Dkt. 315-1 at 18 (a copy of Dkt. 52).

However, the "ESI Order" referenced by Plaintiff does not, in fact, order the parties to take, or not take, any action. Rather, the full text of the order upon which Plaintiffs base the Motion provides: "Defendant Apple Inc. and Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. have placed their written Stipulation re ESI (Dkt. 51) on the record." See Dkt. 52. Thus, the Court did "order" the parties to do anything, but rather noted the parties' stipulation. In fact, although the parties requested the Court to make their Stipulation an order of the Court (see Dkt. 51 at 6; Dkt. 51-2), the Court declined to do so.

Thus, the Motion is based upon an erroneous premise. The Court cannot order Defendant to "comply with the ESI Order" because the "ESI Order" does not order Defendant to take any action. The Court declines to otherwise intervene at this time in a dispute over the interpretation of the parties' agreement other than to note that all parties will be bound by their agreements, representations to opposing counsel, and representations to the Court, and are placed on notice that failure to do so or any knowing failure to identify in a timely manner all appropriate custodians as part of the iterative, good faith discovery process may result in a future order excluding evidence or other consequences.

If counsel for the parties jointly believe that an informal telephonic discovery conference with the Court is warranted at this time, they may send an email to Maria_Barr@cacd.uscourts.gov, with all parties' counsel copied on the email, by noon on March 8, 2021, jointly requesting such a conference and jointly requesting one of the following dates and times: March 10 at 3:00 p.m., March 11 at 11:00 a.m. or March 11 at 1:00 p.m. Nothing other than a joint request, with a single jointly requested date and time, will be considered.

For the foregoing reasons, the Motion (Dkt. 314) is DENIED and the sealing request (Dkt. 316) is GRANTED.

|  | Courtroom Deputy: | mba |
|---|---|---|

**Exhibit 4
-64-**

# EXHIBIT 6

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian K. Andrea
Direct: +1 202.887.3624
Fax: +1 202.530.4220
BAndrea@gibsondunn.com

April 29, 2021

Adam Powell
Knobbe, Martens, Olson & Bear, LLP
12790 El Camino Real
Suite 100
San Diego, CA 92130

Re:     *Masimo Corp. et al. v. Apple Inc.* (C.A. No. 8:20-cv-48-JVS-JDE)

Dear Adam:

We write in response to your April 21 letter and to summarize the outstanding issues regarding ESI discovery that remain following the Court's April 26 order granting in part Apple's Motion to Compel Plaintiffs to Immediately Proceed with ESI Discovery (ECF 355).

## Plaintiffs' Requested ESI Custodians

Plaintiffs continue to misapply the law when attempting to shift the burden of demonstrating relevance in discovery onto Apple.  Contrary to Plaintiffs' contentions, neither the ESI Agreement, the Federal Rules, nor applicable jurisprudence suggest that Apple has an affirmative obligation to *disprove* the relevance of the laundry list of proposed custodians Plaintiffs have requested.  On the contrary, "the burden of demonstrating relevance rests with the party seeking discovery."  *Martinez v. Walt Disney Co.*, 2012 WL 12913739, at *1 (C.D. Cal. Aug. 8, 2012).  Plaintiffs have not met this burden with respect to its lengthy list of requested custodians.

In accordance with the Court's order, Apple will collect, search, and produce data for "up to 39 custodians" (ECF 355).   The requested custodians, however, must still be likely to possess ESI relevant to this case; the Court's Order does not give either party the right to request custodians without demonstrating their relevance, in accordance with the applicable law, as discussed above.  Thus, to the extent there are additional Apple custodians Plaintiffs intend to identify, please also identify Plaintiffs' basis for contending each custodian possesses relevant ESI, as Apple has been requesting for months.

Additionally, Apple maintains its position that Tim Cook is not an appropriate ESI custodian, and the cases Plaintiffs cite do not suggest otherwise.  In *Dyson, Inc. v. SharkNinja Operating LLC*, 2016 WL 1613489, at *1 (N.D. Ill. Apr. 22, 2016), Dyson agreed that at least some documents from its founder, James Dyson, were relevant because he was "one of the named inventors on the patents that form the basis for this suit."  *Id.*  Because Plaintiffs had already

**Exhibit 6
-272-**

**GIBSON DUNN**

Adam Powell
April 29, 2021
Page 2

collected Mr. Dyson's documents in order to produce materials related to inventorship, the Court found it would not be "unduly burdensome" to require him to produce emails. *Id.* at*2. But the same "logical underpinnings of the apex doctrine" establish that it would *not* be appropriate to run Tim Cook "through the wringer of civil discovery" because he does "not have personal knowledge of the relevant facts" and Apple has not collected his documents for this litigation. *Id.* at *1 (noting that the apex doctrine "bespeaks sensitivity to the risk that very valuable executive time would be wasted where the officer has no real information.")(quoting 8A Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and Procedure*, § 2036 n.7 (3d ed. 2010). Particularly with respect to a senior executive like Cook, an allegation that Cook interviewed O'Reilly and made general statements about Apple's commitment to healthcare "does not make him a repository for relevant and responsive information." *Krueger v. Ameriprise Fin., Inc.*, 2013 Wl 12139425, at *9 (D. Minn. Aug. 15, 2013) (denying adding CEO as a custodian because his attendance at a meeting and webcast regarding the topics at issue in the lawsuit did not "make him a source for information" regarding either party's claims or defenses.).

Plaintiffs have still not cooperated with Apple's request that Plaintiffs provide the "legal basis for seeking documents from a top executive who was not involved in the issues in the case." Apple reiterates that request.

### Former Employees of Plaintiffs Later Employed by Apple

Apple has given more information than required regarding the roles of individuals who previously worked for Plaintiffs. This public information was accessible to either party, and Apple compiled it as a courtesy in an effort to move past this dispute. Apple is aware of its obligations under the ESI Agreement and Federal Rules and is complying with those obligations. Apple disagrees that it has an "obligation" to detail for Plaintiffs the job duties of all former Masimo employees who subsequently worked for Apple, or that doing so would be "reasonable." On the contrary, it is Plaintiffs who have a burden to limit their discovery requests to topics they have reason to believe, "after a reasonable inquiry," are "consistent with [Rule 26]" and "neither unreasonable nor unduly burdensome." Fed. R. Civ. P. 26(g). Plaintiffs now acknowledge that, based on publicly available information, individuals like Linus Conrad, Megan Eilers, and Shruti Koneru are clearly irrelevant to this lawsuit; however, the fact that Plaintiffs ever proposed seeking discovery from them shows a clear lack of a "reasonable inquiry."

Apple also disagrees with the notion that employees can be appropriate custodians simply because they worked in "health technologies" or as a "biomedical scientist" or on "clinical trials relating to the Apple Watch." Plaintiffs disregard the basic principle that "discovery requests are not relevant simply because there is a possibility that the information may be

**Exhibit 6
-273-**

**GIBSON DUNN**

Adam Powell
April 29, 2021
Page 3

relevant to the **general subject matter** of the action." *Cole's Wexford Hotel, Inc. v. Highmark Inc.*, No. CV 10-1609, 2016 WL 5025751, at *1 (W.D. Pa. Sept. 20, 2016), on reconsideration, 2017 WL 432947 (W.D. Pa. Feb. 1, 2017) (emphasis added); *see also Martinez*, 2012 WL 12913739, at *1 ("Without prior court permission on a showing of good cause, a party is not entitled to 'relevant to subject matter' discovery."). Instead, Rule 26 requires parties seeking discovery to limit requests to those that are demonstrably "relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b)(1). As applied to this case, the fact that an individual may have information generally relevant to the Apple Watch (the subject matter in this case) does not mean they have information relevant to whether or not Apple misappropriated Plaintiffs' trade secrets (the specific claims and defenses at issue). Although Bruinsma, Golfetto, Haridas, and Lee held jobs that may (or may not) have made them familiar with certain aspects of the general subject matter of this litigation, Plaintiffs do not allege that any of these individuals—or any of the other individuals named on pages 2-3 of Plaintiffs' April 7 letter—ever misappropriated Plaintiffs' trade secrets or even had access to or knowledge of Plaintiffs' trade secrets. It follows logically that if these individuals had no exposure to Plaintiffs' trade secrets during their employment with Masimo, they could not conceivably have revealed those trade secrets to Apple. Thus, Apple disagrees with Plaintiff's contention that "[t]he time when Mr. Lee worked for Masimo does not show that his role at Apple is irrelevant." If Plaintiffs have a basis for believing that any of their former employees have information relevant to any party's claims or defenses, Plaintiffs should articulate that basis and may include the names of those individuals on their proposed list of up to 39 relevant custodians.

**Search Terms**

As discussed during the parties' April 27 meet and confer teleconference, Apple will continue to work collaboratively with Plaintiffs to refine search terms and narrow hits. Consistent with the Court's April 26 order, Apple will not "provide hit counts for *all* of Plaintiffs' proposed custodians," but Apple will provide hit counts for up to 39 *relevant* custodians.

**Data for Former Employees of Apple and Masimo**

Apple has already provided extensive information regarding its data retention policy and practices. Apple will not provide additional free discovery into Apple's internal systems, especially where, as here, Plaintiffs have not articulated the relevance of this inquiry. Despite Apple's repeated requests for an explanation and supporting authority for why the answers to Plaintiffs' questions are relevant to the assessment of Apple's legal obligations, Plaintiffs have offered none.

Plaintiffs try to disguise their demand for free discovery into Apple's proprietary backend data storage and retention systems as an attempt to "work cooperatively to recover any missing files." While Apple generally appreciates offers to work cooperatively, it remains unclear

**Exhibit 6
-274-**

# GIBSON DUNN

Adam Powell
April 29, 2021
Page 4

specifically what Plaintiffs intend to do with the information they seek or how it would inform whether or not "the parties may have a dispute that requires the court's assistance."  To the extent Plaintiffs have questions about Apple's document retention policies, they should serve formal discovery, such as 30(b)(6) topics, as noted in my email dated April 28, 2021 regarding Plaintiffs' notices of depositions.

As we have told you several times, Apple's investigation is ongoing.  Indeed, as you know, Apple recently located certain documents of Mr. Lamego's, and has already agreed to add Mr. Lamego as an ESI custodian and has indicated that it will produce all relevant, non-privileged documents from Mr. Lamego. If Apple finds additional relevant information through its ongoing investigation, Apple will make that available to Plaintiffs.

Apple reserves all rights and waives none.

Sincerely,

Brian K. Andrea

**Exhibit 6**
**-275-**

# EXHIBIT 7

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

3579 Valley Centre Drive, Suite 300, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

May 1, 2021

**VIA EMAIL**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
BAndrea@gibsondunn.com

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write in response to your letter of April 29, 2021, which responded to our letter of April 21, 2021. We also write pursuant to Local Rule 37-1 to request a conference of counsel on Apple's refusal to comply with the Court's April 26, 2021, Order (Dkt. 355).

**Plaintiffs' Requested ESI Custodians**

We disagree with your assertion that we are attempting to "shift the burden of demonstrating relevance in discovery onto Apple."  As we have explained many times, the ESI Agreement required Apple to identify all individuals who are "knowledgeable about and were involved with the core issues or subjects in this case (e.g., the asserted patents, alleged misappropriation of trade secrets, the development, design and operation of the accused products, and sales, marketing and other damages-related information for the accused products)."  Dkt. 51 at 1.  When Apple refused to do so, the Court warned "any knowing failure to identify in a timely manner all appropriate custodians as part of the iterative, good faith discovery process may result in a future order excluding evidence or other consequences."  Dkt. 318 at 2.  Apple still refused to do so and moved for an order limiting discovery to just twelve custodians.  The Court rejected Apple's position and ordered the parties to "immediately proceed with the production of electronically stored information ('ESI') for up to 39 custodians per side, which the Court, having considered all of the evidence and argument presented by the parties, finds reasonable and proportionate to the needs of the case . . . ."  Dkt. 355 at 1.

Nowhere did the Court suggest that Apple could continue to limit discovery by requiring Plaintiffs to first convince Apple of the relevance of any additional custodians.  Nor did the Court permit Apple to withhold discovery from Mr. Cook.  Your assertion that we have not "cooperated" with Apple's request for legal support contradicts the record, where we have provided extensive support for our position.  Indeed, our prior briefing explained the basis for our requested custodians and provided legal support for Mr. Cook being an appropriate custodian.

Apple's insistence that Plaintiffs must convince Apple of the relevance of each custodian is yet another improper attempt to limit discovery.  Plaintiffs request that Apple reconsider its position and confirm it will search up to 39 custodians, including Mr. Cook.  Please let us know when you are available to

discuss as soon as possible.  Because we have been discussing this matter for quite some time, we suggest a meeting on May 3 or 4.

**Former Employees of Plaintiffs Later Employed by Apple**

We continue to disagree with your position on former employees.  Far from providing sufficient information, Apple admits that it provided only public information.  Apple claims Plaintiffs failed to conduct a "reasonable inquiry" merely because Plaintiffs agreed to drop certain custodians based on the information that Apple provided.  We did so based on Apple's representation that such information was correct.  Please let us know if Apple is now representing that it conducted no independent analysis to verify such information.  Apple still has not identified all custodians in a timely manner as required by the Court.  Dkt. 318 at 2.

We also disagree with your assertion that we have not provided sufficient information to show the relevance of other former employees.  We have provided more than enough of a basis to seek discovery.  That is especially true because Apple has declined our reasonable requests for additional information.

**Search Terms**

The parties are discussing search terms separately.  We disagree with Apple's refusal to provide hit counts for all of Plaintiffs' proposed custodians.  As we have explained, such hit counts will help the parties evaluate the relevance of such custodians.  We disagree with Apple's approach of refusing to provide hit counts unless Plaintiffs first conclusively demonstrate relevance to Apple's liking.

**Data For Former Employees**

Apple ignores the question Plaintiffs asked in my April 21 letter, which stated:

> Apple previously asked us to confirm that we had files and emails for all of Apple's proposed custodians.  Plaintiffs confirmed and, in my April 7 letter, asked Apple to provide the same information regarding the individuals that Plaintiffs asked Apple to search.  Your April 14 letter ignored our request.  Given that Apple demanded that we provide this information, please provide the same information to us.

Please answer our question promptly.

**Lamego and Nazzaro Data**

We also disagree with Apple's position on this issue.  Far from seeking "free discovery," we explained many times that we are trying to assess whether the data Apple deleted can be recovered.  Apple's objection to producing "proprietary" information is resolved by the Protective Order, which permits Apple to designate the information as "Confidential" or "Highly Confidential – Attorneys Eyes Only."

Your April 14 letter asked us to reiterate our questions.  We did so in our April 21 letter as follows:

- Apple appears to be drawing a distinction between "destroying" files and "removing" them from Apple's system.  Can you explain?  What does Apple do when it "removes" files from its system?  Does Apple move or copy the files to some other location or device?  Or does it delete

**Exhibit 7**
**-277-**

all instances of those files?  If Apple deletes all instances of those files, does it simply delete the files or does it "wipe" or overwrite files?

- What software does Apple use to search emails?  Most software allows for searching multiple custodians at once, so we may be able to offer some suggestions.

- Apple states that it has not exported Lamego or Nazzaro's files for other litigation.  Has Apple done so for any other purpose?

- It sounds like Apple is taking the position that it must have removed Lamego and Nazzaro's emails and files 4-10 weeks after they left because that is Apple's standard procedure.  Has Apple been able to verify that it actually removed Lamego and Nazzaro's emails 4-10 weeks after they left?

- Apple claims it does not understand what we mean by "a relevant area."  As we have previously explained, Apple itself asserted that some individuals did not work in a relevant area.  For example, Apple asserted that one individual was not relevant because he worked on the Apple Airpods project.  If that person did not also work on something relevant to the case, we would likely agree with that assessment.  Thus, we are asking Apple to identify the individuals that Apple believes worked in an area relevant to the case.  A relevant area may include, by way of example and not limitation, physiological monitoring, sensor design, or health-related app development.  Until Apple explains what each individual did at Apple, rather than Apple's unilateral conclusion that they are not relevant, we are unable to agree with Apple's legal conclusion.  Apple—not Plaintiffs—have the requisite knowledge.  Please confirm Apple will maintain the files for all individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area.

Your April 29 letter refuses to provide any of this information.  Please answer our questions promptly.

Your letter also states that Apple has recently located certain documents from Mr. Lamego.  However, you do not address my email of April 24, 2021, which stated:

> If Apple located computers or images of computers used by Mr. Lamego, they should be produced as responsive to at least RFP No. 229.  Please confirm Apple will produce any such computers or images.

Please answer our question promptly.

Best regards,

Adam B. Powell

**Exhibit 7**
**-278-**

# EXHIBIT 8

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian K. Andrea
Direct: +1 202.887.3624
Fax: +1 202.530.4220
BAndrea@gibsondunn.com

May 4, 2021

Adam Powell
Knobbe, Martens, Olson & Bear, LLP
12790 El Camino Real
Suite 100
San Diego, CA 92130

Re:     *Masimo Corp. et al. v. Apple Inc.* (C.A. No. 8:20-cv-48-JVS-JDE)

Dear Adam:

We write in response to your May 1 letter.  Your letter purports to "write pursuant to Local
Rule 37-1 to request a conference of counsel on Apple's refusal to comply with the Court's
April 26, 2021, Order (Dkt. 355)."  While we respond to the issues in your letter below, there
are two significant issues with this first sentence of your letter that Apple feels compelled to
address up front.

***First***, Apple has not "refused to comply" with the Court's Order.  To the contrary, Apple's
April 29 letter explicitly stated that "Apple will collect, search, and produce data for 'up to 39
custodians.'"  Plaintiffs still have not sent their list of "up to 39 custodians" from whom they
request ESI, despite your indication that you would be doing so "soon" during our phone call
last Tuesday (April 27) regarding search terms. Moreover, Apple has already searched, and is
already reviewing ESI from, 15 custodians (13 identified by Apple and 2 additional custodians
Plaintiffs requested), most of whom Plaintiffs have noticed for depositions in the coming
weeks.  While Apple remains willing to search ESI from additional relevant custodians, if and
when Plaintiffs identify such individuals, the parties should focus their immediate efforts on
those individuals who have been noticed for deposition.  In any event, we don't understand
how Plaintiffs can allege that Apple is "refusing to comply" when Plaintiffs have not even
identified the custodians whose ESI they request Apple to search.

***Second***, it isn't clear what issue(s) Plaintiffs seek to address "pursuant to Local Rule 37-1."
Indeed, your letter falls far short of compliance with the requirements of L.R. 37-1, which
states that "[t]he moving party's letter" must do all of the following:

- "identify each issue and/or discovery request in dispute,"
- "state briefly as to each such issue/request the moving party's position,"
- "provide any legal authority the moving party believes is dispositive of the dispute as
  to that issue/request," and

**Exhibit 8**
**-279-**

# GIBSON DUNN

Adam Powell
May 4, 2021
Page 2

- "specify the terms of the discovery order to be sought."

Plaintiffs' letter does none of that.  Plaintiffs' letter is organized under five sub-headings, which each represent issues that the parties have been discussing and negotiating over the past several months.  Plaintiffs do not specify which of those are in dispute for purposes of the L.R. 37-1 conference of counsel, nor do Plaintiffs "state briefly" their position on each issue. Plaintiffs also fail to "provide any legal authority [Plaintiffs] believe[] is dispositive of the dispute."  Indeed, Plaintiffs do not cite to a single case, statute, regulation, or other legal authority throughout the entire letter.  The letter also fails to "specify the terms of the discovery order to be sought."

Apple therefore asks that, prior to holding a conference of counsel, Plaintiffs provide a letter that complies with the requirements of L.R. 37-1.  Because the purpose of the conference of counsel is to "eliminate the necessity for hearing the motion," the conference will be most effective if Plaintiffs comply with L.R. 37-1 by providing a letter that identifies each issue in dispute, briefly states Plaintiffs' position, provides supporting legal authority (if any exists), and specifies the terms of the discovery order sought.

Once Plaintiffs provide this information, Apple will "confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible."  L.R. 37-1.

Apple is disappointed by the blatant falsehoods and mischaracterizations that permeate Plaintiffs' May 1 letter.  Apple therefore seeks to correct the record and clarify its position on the issues below:

## Plaintiffs' Requested ESI Custodians

During our telephone call regarding ESI search terms nearly a week ago, on April 27, 2021, you indicated that you would be providing a list of additional custodians Plaintiffs seek to have Apple search in addition to the 15 custodians Apple has already agreed to search, up to 39 total as permitted by the Court's April 26 Order.  We still have not received a list of any additional custodians.  Please identify the additional custodians Plaintiffs seek to have Apple search. Additionally, please let us know your basis for believing the additional custodians you seek to have Apple search are likely to be knowledgeable about or were involved in the core issues or subjects in this case.  If you do not believe Plaintiffs are obligated to provide such a showing of relevance, please state that and provide your authority for such a position.

Turning to your letter, Plaintiffs continue to mischaracterize the ESI Agreement.  The ESI Agreement does not require Apple to identify "**all** individuals" who are knowledgeable about

Exhibit 8
-280-

# GIBSON DUNN

Adam Powell
May 4, 2021
Page 3

and were involved with the core issues or subjects in this case.  Rather, it states that the parties "agree to meet and confer in an attempt to reach agreement on…a **reasonable list** of custodians" and that each party "shall provide a proposed list of individual custodians."  Dkt. 51 at 1:5-15.

Even more egregious is Plaintiffs' mischaracterization of the Court's April 26 Order.  Dkt. 355 at 1.  The Court's Order did not allow either party to request any custodian they want without any regard for the relevance of the custodians.  Nor did the Court's Order include an identification of custodians that the Court deemed to be appropriate or inappropriate custodians for this matter.  Instead, the Court specified a number of custodians ("up to 39") that it considered to be "reasonable and proportionate to the needs of the case."  However, the Court did not waive the fundamental Rule 26 requirement that discovery be "relevant to any party's claim or defense."  The Court also did not express any inclination to overrule the well-established precedent in this district that "the burden of demonstrating relevance rests with the party seeking discovery."  *Martinez v. Walt Disney Co.*, 2012 WL 12913739, at *1 (C.D. Cal. Aug. 8, 2012); *see also TiVo Inc. v. Verizon Comms., Inc.*, 2012 WL 12881961, at *2 (C.D. Cal. 2012) (holding that "stat[ing] only generally that the discovery [plaintiff] seeks is 'necessary' and 'directly relevant' to its case" is "insufficient to meet [plaintiff's] burden to show relevance.").

Plaintiffs try to characterize Apple's request that Plaintiffs bear their burden to show relevance as an "improper attempt to limit discovery" and a "refusal to comply" with the Court's April 26, 2021 Order.  To be clear, Apple will comply with the Court's order in full and will search up to 39 custodians.  However, consistent with the Court's order, the caselaw in this jurisdiction, and the Federal Rules of Civil Procedure, Apple will not include custodians who are not relevant to the claims and defenses in this action, which Plaintiffs have attempted time and time again to include in the list of ESI custodians, as evidenced by the laundry lists of custodians they have provided previously without any basis for alleging they are likely to have relevant ESI.[1]

As discussed during the parties' April 27 meet and confer teleconference, Apple is already in the process of reviewing documents collected from 15 custodians they have identified as the individuals who are knowledgeable about and were involved with the core issues or subject in this case.  As requested above, if there are additional custodians—up to 39 total—that Plaintiffs

---

[1]  Apple maintains that Tim Cook is not likely to have information relevant to any parties' claims or defenses. Plaintiffs insist that they have already "provided legal support for Mr. Cook being an appropriate custodian."  This is not accurate.  At most, Plaintiffs have offered a few cases suggesting that the "Apex" doctrine is given more weight in the context of depositions rather than document collection, on the premise that document collection does not impose a burden on executives.  Plaintiffs have not responded to Apple's request that Plaintiffs provide the "legal basis for seeking documents from a top executive who was not involved in the issues in the case."  Apple reiterates that request.

**Exhibit 8**
**-281-**

**GIBSON DUNN**

Adam Powell
May 4, 2021
Page 4

believe are likely to have relevant ESI, please identify those individuals and your basis for
your contention that they have relevant ESI.

### Search Terms

Consistent with the Court's order, Apple will provide search term hits for up to 39 custodians.
Plaintiffs have not provided any legal precedent for the notion that Apple should provide
search term hits for individuals who are *not* custodians, and doing so is costly and burdensome,
as we have explained to you many times.  Producing a search term report for an individual
who is not relevant is an undue burden.  *Crocs, Inc. v. Effervescent, Inc.*, 2017 WL 1325344,
at *2 (D. Colo. Jan. 3, 2017) (noting that "discovery directed at irrelevant matters imposes a
*per se* undue burden.").

Additionally, we note that Plaintiffs have still not provided revised search terms, despite
Apple's suggestion that the parties exchange revised terms for those terms that hit on a large
number of documents during our call nearly a week ago (on Tuesday April 27).  Although we
did not hear back from you regarding that proposal, Apple nonetheless provided revised
versions of its own terms that hit on a large number of documents to Plaintiffs the next day (on
April 28).  Moreover, given the lack of response from Plaintiffs for the next several days,
Apple has decided to begin reviewing documents that hit on Plaintiffs' unobjectionable terms,
as outlined in our correspondence on April 30.  Please provide your revised terms immediately.

### Plaintiffs' Request for Free Discovery Regarding Former Employees

From the beginning of this case, Plaintiffs have been attempting to obtain free discovery from
Apple employees about whom Plaintiffs have made no allegations of misappropriation or any
other wrongdoing.  Apple has made very clear that it is willing to provide discovery regarding
these "former employees" but only if Plaintiffs can point to some allegation that even relates
to the individuals—the fact that the "former employees" used to be employed by Plaintiffs is
hardly a sufficient showing, and hardly a reason to subject them to discovery in this case.

Indeed, Plaintiffs' statements in the most recent letter are blatant mischaracterizations.
Apple's position that Plaintiffs failed to conduct a "reasonable inquiry," as required by Rule
26(g), is not "merely because" of Plaintiffs' long overdue agreement to "drop certain
custodians."  Rather, the lack of reasonable inquiry is evidenced by the fact that Plaintiffs even
suggested including plainly irrelevant custodians in the first place.  Indeed, on April 1, when
Apple first shared the chart containing the information Plaintiffs requested, Apple told
Plaintiffs that the information was provided was "publicly available" and clarified that it was
improper that Plaintiffs had asked Apple to provide information through informal channels
outside the written discovery process.  Apple maintains that position.

**Exhibit 8
-282-**

**GIBSON DUNN**

Adam Powell
May 4, 2021
Page 5

Plaintiffs ignore several critical points raised in Apple's prior letters.  **First**, as Apple has explained many times, Rule 26 allows discovery into matters relevant to any party's **claim or defense**.  The claims at issue in this phase of litigation relate to Apple's alleged misappropriation of trade secrets.  Plaintiffs do not allege that any of the individuals named on pages 2-3 of Plaintiffs' April 7 letter ever had access to or knowledge of Plaintiffs' trade secrets, let alone misappropriated them.  Individuals who had no exposure to Plaintiffs' trade secrets could not conceivably have revealed those trade secrets to Apple.  Therefore, Plaintiffs can (and should) narrow their list to only include individuals to whom they granted access to Plaintiffs' trade secrets.

**Second**, and relatedly, Plaintiffs' definition of "[a] relevant area"—accompanied by Plaintiffs' demand that Apple provide information on all individuals who worked on a project that fits within this overbroad definition—is untethered from the concept of relevance under Rule 26.  Importantly, Rule 26 does not call for "subject matter discovery."  *See Cole's Wexford Hotel, Inc. v. Highmark Inc.*, No. CV 10-1609, 2016 WL 5025751, at *1 (W.D. Pa. Sept. 20, 2016), on reconsideration, 2017 WL 432947 (W.D. Pa. Feb. 1, 2017) (emphasis added); *see also Martinez*, 2012 WL 12913739, at *1 ("Without prior court permission on a showing of good cause, a party is not entitled to 'relevant to subject matter' discovery.").  In fact, Rule 26 was specifically amended to remove the phrase "subject matter" from the description of relevance in order to prevent parties from seeking to "justify discovery requests that sweep far beyond the claims and defenses of the parties."  *See Committee Notes on Rules—2000 Amendment.* While the topics Plaintiffs identify (*e.g.* "physiological monitoring, sensor design, or health-related app development") may be germane to the general subject matter of the lawsuit, a wholesale identification of every individual who worked in a so-called "relevant area" is not relevant to any party's claims or defenses and not proportionate to the needs of the case.

With this in mind, Apple proposes two simple steps to resolve issues related to former employees without necessitating court involvement:

1.  If Plaintiffs have reason to believe that any individuals who worked for or with Plaintiffs and later worked for or with Apple possess information relevant to any party's claims or defenses, Plaintiffs can include the names of those individuals in their list of up to 39 custodians they would like Apple to search, as discussed above.

2.  If Plaintiffs seek further information, including non-public information, about any individuals who worked for or with Apple, they can request that information through the written discovery process.

**Exhibit 8**
**-283-**

## GIBSON DUNN

Adam Powell
May 4, 2021
Page 6

**Apple's Data Retention Policies and Practices**

In letters dated April 1 and April 14, Apple proposed that if Plaintiffs wanted to continue to inquire into the technical specifics of Apple's internal data retention systems, Plaintiffs should provide three pieces of information:  1) "a specific list of questions," 2) "a detailed explanation for why the answer to each question is relevant to the assessment of Apple's legal obligations," and 3) "supporting legal authority."  Plaintiffs have refused to comply with parts 2 and 3 of Apple's request.  Instead, Plaintiffs presented a list of technical questions about Apple's internal technological processes and proprietary backend systems.  Plaintiffs assure Apple that any concerns about sharing proprietary information can be ameliorated by the "Confidential" and "Highly Confidential – Attorneys' Eyes Only" designations permitted by the Protective Order.  However, Rule 26(c) protective orders are not intended to be an end run around Rule 26(b), which limits the scope of discovery to matters relevant to any party's claim or defense. Accordingly, Apple requests that Plaintiffs identify which claims and/or or defenses relate to the list of questions Plaintiffs posed in their April 21 and May 1 letters.  As explained in Apple's April 28 email and April 29 letter, to the extent Plaintiffs have questions about Apple's document retention policies, they should serve formal discovery, such as 30(b)(6) topics.

**Plaintiffs' Inquiry Regarding Data for Former Employees**

Apple has provided Plaintiffs with a copy of Apple's operative data retention policy, and Plaintiffs may reference this policy to evaluate whether Apple has retained files and emails for each of Plaintiffs' proposed custodians.  To the extent Plaintiffs still have questions about the application of the data retention policy with respect to individual custodians, Apple can address those questions once Plaintiffs provide a list of up to 39 relevant custodians that Plaintiffs would like Apple to search.  Apple reiterates its request that Plaintiffs provide this list promptly.

Lastly, with regard to your inquiry about the recently located documents from Mr. Lamego, as noted in my April 21 email, Apple confirms that it will produce all non-privileged, responsive documents that were located.

Apple reserves all rights and waives none.

Sincerely,

*Brian Andrea*

Brian K. Andrea

**Exhibit 8
-284-**

# EXHIBIT 9

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

3579 Valley Centre Drive, Suite 300, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

May 5, 2021

**VIA EMAIL**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
BAndrea@gibsondunn.com

Re:    Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write in response to your letter of May 4, 2021, which responded to our letter of May 1, 2021.

**Plaintiffs' May 1 Letter Satisfied L.R. 37-1**

We disagree with your assertion that Plaintiffs' letter did not satisfy Local Rule 37-1.  As an initial matter, Apple's position is inconsistent with the position it has taken on Local Rule 37-1 letters in the past.  For example, Apple declined to clearly identify its requested relief on ESI custodians in its March 17 letter, during the meet and confer, in subsequent emails, and in the joint stipulation.

Regardless, we already satisfied Local Rule 37-1 through our March 25 letter and subsequent meet and confer.  Our May 1 letter also satisfied Local Rule 37-1.  We identified the issues in dispute: (1) Apple's requirement that Plaintiffs first convince Apple of the relevance of custodians beyond the fifteen Apple agreed to search, and (2) Apple's refusal to search Mr. Cook's files.  We explained our position on both issues in detail.  We also explained that we had elaborated on our position and provided legal support in prior briefing on Apple's ESI motion.  We also specified the relief that we intended to seek: The Court should compel Apple to search up to 39 custodians, including Mr. Cook.  Please let us know when you are available to meet and confer.  We are available on May 6 after 3pm pacific, or on May 7 after 11am pacific.

**Plaintiffs' Requested ESI Custodians**

We disagree with your assertion that Plaintiffs "mischaracterize" the ESI agreement.  Far from mischaracterizing the agreement, our letter quoted it word-for-word.  *See* 5/1/2021 letter at 1.  Apple newly argues it need not identify all potential custodians because the agreement states that the parties will meet and confer in an attempt to reach a "reasonable list" of custodians.  Apple continues to conflate the concepts of (a) *disclosing* potential custodians and (b) *searching* custodians.  We maintain that the ESI agreement requires full disclosure of potential custodians (as defined in the agreement) and then the parties meet and confer on the "reasonable list" of custodians to search.

Apple claims it is complying with the Court's April 26 Order to search "up to 39 custodians" because Plaintiffs had not yet provided a list of additional custodians.  But Apple states it will not search

additional custodians because Apple believes that Plaintiffs have not shown that each custodian is relevant. Apple made the same argument in prior briefing and the Court rejected Apple's argument. In particular, Apple argued Plaintiffs had not shown more than 12 custodians were relevant. The Court rejected Apple's request to limit discovery to 12 custodians and found 39 custodians was appropriate. As explained in my prior letter, the Court did not suggest that Apple could continue to limit discovery by requiring Plaintiffs to first convince Apple of the relevance of any additional custodians. The Court did not find any of Plaintiffs' proposed custodians, including Tim Cook, were inappropriate. Thus, we believe the Court intended for Plaintiffs to select up to 39 custodians for Apple to search.

Regardless, we have now identified the additional custodians that we are requesting Apple to search at this time. We intend to identify additional custodians up to 39 after Apple produces meaningful discovery. Please confirm Apple will search our requested custodians.[1]

**Search Terms**

We continue to disagree with Apple's refusal to provide hit counts for all of Plaintiffs' proposed custodians. Your letter cites a single case from Colorado, but that case did not address this issue. *Crocs, Inc. v. Effervescent, Inc.*, 2017 WL 1325344, at *2 (D. Colo. Jan. 3, 2017). Apple newly asserts that it would be "costly and burdensome" to provide hit counts, but provides no facts to support that argument. Hit count reports are an important tool to evaluating a potential custodian's relevance.

We also disagree with your assertion that we somehow delayed the process. As we explained during the April 27 meet and confer, Apple had far more to fix in its proposed search terms because they yielded *17 million* documents compared to *3.5 million* documents for Plaintiffs' search terms. While Apple has revised some of its search terms, the unrevised search terms still total *12 million* documents. Thus, Apple has still not revised all of its search terms that need revision. By contrast, our hits totaled just 3.5 million documents but we still provided revised search terms to further narrow discovery.

**The Former Employees**

We continue to disagree with Apple's recitation of the history on this dispute. We also disagree with Apple's assertion that Plaintiffs are seeking "free discovery" about the former employees. We are simply trying to narrow the parties' dispute through the meet and confer process. We disagree with Apple's assertion that we should serve written discovery on these topics, especially because Apple's prior letters made clear that it intends to object to any such written discovery.

Additionally, my prior letter explained that Plaintiffs' commitment to drop certain individual was based on our understanding that Apple represented the information it provided (which Apple asserts is public) was accurate. We asked "if Apple is now representing that it conducted no independent analysis to verify such information." Your letter did not answer our question. Please do so.

---

[1] In a footnote, Apple argues "Plaintiffs have not responded to Apple's request that Plaintiffs provide the 'legal basis for seeking documents from a top executive who was not involved in the issues in the case.'" We have responded to that assertion many times by explaining the legal and factual basis for our request. Apple's apparent disagreement with our assertion does not mean we have "not responded."

**Exhibit 9**
**-286-**

**Data For Former Employees**

My April 21 letter and May 1 letter stated:

> Apple previously asked us to confirm that we had files and emails for all of Apple's proposed custodians.  Plaintiffs confirmed and, in my April 7 letter, asked Apple to provide the same information regarding the individuals that Plaintiffs asked Apple to search.  Your April 14 letter ignored our request.  Given that Apple demanded that we provide this information, please provide the same information to us.

Apple once again refuses to answer this question.  Please answer our question promptly.

**Lamego and Nazzaro Data**

Plaintiffs have repeatedly asked Apple to answer the same basic questions about data that Apple admittedly destroyed.  Apple repeatedly refuses unless Plaintiffs first provide "a detailed explanation for why the answer to each question is relevant to the assessment of Apple's legal obligations" and "supporting legal authority."  As we have explained many times, the issue we are addressing is whether the data exists and can be recovered—not Apple's "legal obligations" to maintain the data.  Thus, Apple's questions are unnecessarily defensive and irrelevant to the issue that we are addressing.

Your letter states that Apple will produce all "responsive documents" that it located from Lamego.  However, Apple still does not answer the question posed in my April 24 email and May 1 letter, which stated:

> If Apple located computers or images of computers used by Mr. Lamego, they should be produced as responsive to at least RFP No. 229.  Please confirm Apple will produce any such computers or images.

Please answer our question promptly.

Best regards,

Adam B. Powell

**Exhibit 9**
**-287-**

# EXHIBIT 10

| | |
|---|---|
| **From:** | Adam.Powell |
| **Sent:** | Monday, May 10, 2021 3:18 PM |
| **To:** | Andrea, Brian |
| **Cc:** | Kaounis, Angelique; *** Apple-Masimo; Masimo.Apple; Schuemann, Susanna G. |
| **Subject:** | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians |

Brian,

We are available at 3pm pacific tomorrow, but we disagree with your email to the extent it attempts to limit our discussion.  Please use the following dial in number:

Phone number: ▉▉▉▉▉▉
Room #: ▉▉▉▉▉▉

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Monday, May 10, 2021 12:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We are available to meet and confer regarding the issues in the second paragraph of your letter dated May 5, 2021 tomorrow (May 11) at 3pm PT.  Please let us know if that works for you, and if so please circulate a dial in number.

Thanks,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**Exhibit 10
-288-**

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, May 10, 2021 10:13 AM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Subject:** Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We still have not received a response with your availability to meet and confer on my May 1 letter.  Please let us know when you are available to meet and confer today.

Best regards,
Adam

> On May 5, 2021, at 8:41 PM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

Brian,

Please see the attached letter.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Tuesday, May 4, 2021 12:51 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

Please see the attached letter.

Best regards,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

**Exhibit 10
-289-**

1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Saturday, May 1, 2021 9:32 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

Please see my attached letter.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** Martens

---

**From:** Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Sent:** Thursday, April 29, 2021 9:46 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

Please see attached correspondence from Brian Andrea.

Best,
Susanna

**Susanna G. Schuemann**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8321 • Fax +1 415.374.8455
SSchuemann@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, April 21, 2021 9:38 AM

3

**Exhibit 10
-290-**

**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

Please see my attached letter.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, April 14, 2021 8:25 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

Please see the attached letter and the attached word document.

Best regards,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, April 7, 2021 10:10 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

**Exhibit 10
-291-**

[External Email]

Brian,

Please see my attached letter and the attached word document.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

# Knobbe Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, April 2, 2021 6:14 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We write to memorialize our April 2 meet and confer teleconference about the issues raised in Plaintiffs' March 23 and March 25 letters and in Apple's April 1 response.

As discussed, we look forward to receiving the following from you:

1. The legal basis for your proposal of forty-nine custodians at the outset of discovery.  You referred to caselaw cited in your prior joint stipulation, but those cases are distinguishable, as we explained in our responsive briefing.  If you have applicable legal support, we are glad to consider it.
2. The specific factual basis for believing that each of the forty-nine proposed custodians is proportional to the needs of the case, and that each one is "knowledgeable about" and "involved in the core issues or subjects in this case" as required by the parties' ESI agreement (Dkt. 51).  As we reiterated on the call, we are willing to discuss including any custodian likely to possess nonduplicative information that is relevant to any party's claim or defense and proportional to the needs of the case.  But as we have made clear in our prior correspondence, we cannot accept Plaintiffs' current proposal, which includes individuals who—as far as we can tell—were never employed by Apple and/or had no involvement in the topics at issue.
3. The legal and factual basis for your request for documents from Tim Cook.  We have asked you repeatedly for your legal basis for this request, including during our March 29 meet and confer correspondence and in our April 1 letter, and you have not cited a single case justifying this request.  As we document in our April 1 letter, the allegations in the complaint do not justify including Mr. Cook as a custodian.  Today, you presented a new unfounded assertion that Mr. Cook has stated that "Apple is focused more and more on healthcare and less and less on

**Exhibit 10 -292-**

computers." You quickly admitted Mr. Cook had *not* actually made that statement, but the fact remains that there is no legitimate basis for collecting documents from Mr. Cook.

Please let us know when we can expect the information you agreed to provide regarding each of your forty-nine proposed custodians, including Mr. Cook.

Regards,

Brian

On Apr 2, 2021, at 11:06 AM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

 [External Email]
Brian,

We are reviewing your letter, but are available to meet and confer regarding Plaintiffs' March 25 letter at 2pm today.  Please confirm that time still works for you.

Thanks,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** **Martens**

---

**From:** Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Sent:** Thursday, April 1, 2021 4:09 PM
**To:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Counsel:

Attached please find correspondence from Brian Andrea and a native copy of APL-MAS_75595.

Best,
Susanna

**Susanna G. Schuemann**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921

6

**Exhibit 10**
**-293-**

Tel +1 415.393.8321 • Fax +1 415.374.8455
SSchuemann@gibsondunn.com • www.gibsondunn.com

On Mar 31, 2021, at 8:56 PM, Kaounis, Angelique <AKaounis@gibsondunn.com> wrote:

Counsel:

Attached please find Apple's portion of the Joint Stipulation regarding Apple's Motion to Compel Plaintiffs to Immediately Proceed With ESI Discovery.

The accompanying attorney declaration and the exhibits (both public and under seal versions of the exhibits) will follow shortly via ShareFile because of their size.  Please let us know if you have any issues retrieving them.

When you send back Plaintiffs' portion, please include proposed redactions in yellow highlighting for Plaintiffs' portion, as well as any proposed redactions for Apple's portion.

We look forward to receiving Plaintiffs' portion of the Joint Stipulation in seven days.

Thanks,
Angelique


**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Kaounis, Angelique
**Sent:** Tuesday, March 30, 2021 7:19 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We write briefly to correct the misstatements in your email.  We have been clear about our proposed compromise and about the relief we intend to seek from the Court if Plaintiffs remain unwilling to proceed with ESI discovery now.  Nonetheless, to reiterate, if we are unable to reach a resolution, Apple will ask the Court to compel Plaintiffs to proceed with ESI discovery on twelve custodians per side, without prejudice to either side's ability to pursue ESI from additional custodians in the future.

Apple is preparing a written response to each of the issues raised in your March 23 and March 25 letters.  The March 29 call was convened due to the urgent need to move forward with a proportional, workable, mutually agreeable set of initial custodians.  In the interest of efficiency, we asked you to show patience for a couple days while we work with our client to finalize responses.  We did not refuse to discuss anything.  Rather, we tried to keep the focus on the most

**Exhibit 10
-294-**

important and time-sensitive issue:  agreeing on a way to move forward with ESI discovery now.  But rather than provide a straightforward explanation of Plaintiffs' position on that issue, you instead insisted that the parties discuss other issues, which we did discuss.  In particular, 1) we invited you to share case law supporting your request for custodial files from Tim Cook, and 2) we told you that although we were not able to replicate the legibility you claim to have with APL-MAS_0075595, that we were trying to solve the issue for you.  Please refer to our forthcoming written responses to the other issues set forth in your March 25 letter for Apple's responses to Plaintiffs' other issues.

Thanks,
Angelique


**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, March 30, 2021 8:51 AM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Angelique and Brian,

I write to memorialize our March 29 meet and confer.  We disagree with your email, which once again does not accurately reflect our meeting.  Our meet and confer was unhelpful because Apple refused to fully discuss the parties' disputes, including the issues raised in Apple's own March 17 letter and Plaintiffs' responsive March 23 letter.  For example, Apple refused to discuss: (1) whether Plaintiffs' former employees are appropriate custodians, (2) whether Tim Cook is an appropriate custodian, (3) Lamego/Nazzaro's files, and (4) whether Apple would produce a new version of APL-MAS_0075595.  Apple argued it need not discuss these issues because Plaintiffs' March 25 Local Rule 37 letter mentioned them and Apple intended to wait ten days to respond to that letter.  We explained that the issues we were trying to discuss were covered by Apple's own March 17 letter and our March 23 response, not just our separate March 25 Local Rule 37 letter.

Rather than discuss all aspects of Apple's own letter, Apple demanded that Plaintiffs preemptively agree to Apple's demand to search just twelve Apple custodians.  Your email below argues that, because both parties will eventually search at least 12 custodians, Plaintiffs should select 12 Apple custodians now.  But Apple is refusing to provide the information that would be necessary for Plaintiffs to make an informed decision even as to 12 custodians, including hit counts for all custodians and search terms.  Such information is important to target and prioritize ESI discovery.  For example, hit counts would help Plaintiffs better understand the relevance of various Apple custodians and prioritize its requests for ESI searching.  We also do not know whether Apple will agree to search Tim Cook's files or whether it will agree to search any of Plaintiffs' former employees other than O'Reilly.  Thus, these issues are interrelated and cannot be isolated.  Indeed, Apple promised in the ESI stipulation that it

8

**Exhibit 10**
**-295-**

would discuss custodians <u>and</u> search terms in an attempt to reach an <u>overall agreement</u>.  Apple's refusal to do so is unnecessarily delaying this process.

Apple's claim that it urgently seeks to "make progress" is belied by the many months in which Apple refused to engage in any ESI discussions.   Apple's demand that Plaintiffs select 12 custodians in the dark makes no sense in view of Apple's commitment to provide the other information and engage in an overall discussion in the next few days.  Likewise, providing our position in writing in less than 24 hours can hardly be considered "delay" or refusing to answer Apple's question by a "date certain."  We simply need reasonable information, consistent with what we have been willing to provide Apple, given Apple's refusal to search more than 12 custodians.

During the call, you stated that Apple will immediately proceed with twelve custodians regardless of whether Plaintiffs agree.  While Plaintiffs maintain that Apple should provide hit counts for <u>all</u> of Plaintiffs' custodians, nothing is preventing Apple from running searches on whatever custodians it likes.  During the meet and confer, Apple threatened to move the Court, but did not indicate what relief Apple seeks.  Even though Local Rule 37-1 required Apple's letter to clearly identify "the terms of the discovery order to be sought," Apple's letter did not do so.  Moreover, plaintiffs have not placed an arbitrary limit on searching, and simply look to find an equitable approach.  Plaintiffs also have not in any way refused to begin that process, which they have already started.  As discussed above, nothing is preventing Apple from performing searches on its own custodians.  Please clarify what relief Apple plans to seek from the Court if the parties do not reach an agreement.

During the meet and confer, the parties also discussed (1) the type of documents covered by ESI searching and (2) Plaintiffs search of the twelve custodians that Apple identified.  On the first issue, Apple stated that it planned to search all files, including messaging and chat logs, but that it envisioned the negotiated ESI search terms would apply only to email searching.  We responded that we would consider Apple's position and get back to you.  On the second issue, Plaintiffs again explained they never refused to search the twelve custodians that Apple identified.  To the contrary, we explained that we had already begun pulling files and would provide hit counts as soon as possible.  Apple demanded Plaintiffs provide a "date certain" as to when we would provide hit counts, while Apple could not provide a date certain itself when we asked the same question.  As we explained, Plaintiffs are working diligently to pull the data, process the data, and provide hit counts as soon as possible.  We likewise request hit counts from Apple.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Monday, March 29, 2021 8:02 PM
**To:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We write to memorialize today's meet and confer call.  We are disappointed by Plaintiffs' refusal to agree to Apple moving forward with 12 custodians on each side, particularly in view of the fact that

**Exhibit 10**
**-296-**

Plaintiffs have indicated they do intend to request that Apple search the ESI of the 12 custodians Apple has identified.  We are endeavoring in good faith to make progress, with the understanding that all parties reserve rights to seek additional custodians later, depending on the discovery that unfolds.   It is likewise disheartening that Plaintiffs cannot commit to providing a final answer to Apple's proposal to begin with 12 custodians by a date certain.  Your suggestion that we asked you for an "on the spot" answer is detached from the documented reality of the parties' discussions.  We presented this proposal to Plaintiffs on March 17, followed up on March 22 asking for a response to allow us to "move forward with ESI discovery immediately," reiterated this request on March 23, and then once again posed the same question on March 26.  In no way were you put on the spot today.  Accordingly, we renew our request that you let us know today—or tomorrow at the latest—whether Plaintiffs will agree to commence ESI discovery with the list of 12 custodians presented in Apple's March 17 letter.

We will respond in writing to the issues raised in your March 23 and March 25 letters later this week.  In the meantime, we need to move forward with an initial set of custodians.  Discovery is an iterative, collaborative process.  The fact that other issues remain to be decided does not justify Plaintiffs' delay.

Thanks,
Angelique


**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

<Joint Stip re ESI Custodians.DOC>

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

**Exhibit 10
-297-**

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**Exhibit 10**
**-298-**

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

<2021-05-05 Letter to Andrea.pdf>

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

**Exhibit 10
-299-**

# EXHIBIT 11



1

2

3

4                             UNITED STATES DISTRICT COURT

5                           NORTHERN DISTRICT OF CALIFORNIA

6

7   IN RE APPLE IPHONE ANTITRUST              Case No.  11-cv-06714-YGR   (TSH)
    LITIGATION
8
                                              **DISCOVERY ORDER**
9
                                              Re: Dkt. Nos. 269, 270, 271, 295, 298
10

11

12   DONALD R. CAMERON, et al.,               Case No.  19-cv-03074-YGR   (TSH)

13             Plaintiffs,

14        v.
                                              Re: Dkt. Nos. 145, 146, 147, 173, 177
15   APPLE INC., et al.,

16             Defendants.

17   EPIC GAMES, INC.,                        Case No.  20-cv-5640-YGR   (TSH)

18             Plaintiff and Counter-

19   defendant
                                              Re: Dkt. Nos. 170, 173
20        v.

21   APPLE INC.,

22             Defendant and

23   Counterclaimant.

24

25        The parties to these related actions have raised a number of discovery disputes.  The Court

26   held a hearing on them on December 15, 2020, and now issues the following order.

27

28

United States District Court
Northern District of California

**Exhibit 11**

**-300-**

**A.      Consumer Plaintiffs' Requests for Production 33-34, 36-41, 44, 47-48, 50-53 (11-6714 ECF No. 269; 19-3074 ECF No. 145)**

<u>RFPs 33-34, 36-38, 44.</u>  For these RFPs, Apple states that it "has produced, or will produce, non-privileged documents responsive to" these RFPs.  ECF No. 269,[1] Ex. E.  This response is satisfactory.  Apple is not obligated to do a new search each time it is served with new RFPs, as long as its prior search, collection and review efforts resulted in the production of documents responsive to the new RFPs.

<u>RFPs 39-41, 50.</u>  For these RFPs, Apple states that "its productions to date have included non-privileged documents responsive to these RFPs."  ECF No. 269, Ex. E.  As written, this sounded like Apple was making a production of only some portion of the responsive documents.  However, at the hearing, Apple clarified that it has produced, or will produce, non-privileged documents responsive to these RFPs.  That response is sufficient.

<u>RFP 47.</u>  This RFP presents a tricky issue in these related cases.  The Consumer Plaintiffs move to compel Apple to produce transactional data related to app sales from foreign App Store storefronts.  They narrow their request to include only aggregate global revenues by month for each app available to U.S. consumers, including revenues from foreign transactions.  In other words, the Consumer Plaintiffs are not requesting revenues for apps that are sold only through a foreign storefront.  They argue that this global revenue is highly relevant because it relates to the profitability of apps and the effect Apple's monopoly has on developers' willingness and/or ability to create apps.

This RFP is tricky because this revenue information seems to be relevant to the Developer Plaintiffs' claims, which do indeed focus on the impact of Apple's policies on developers, but the Court has a hard time understanding its relevance to the Consumer Plaintiffs' claims.  The Consumer Plaintiffs allege a *Kodak*-style aftermarket, asserting that once consumers purchase expensive iPhones, they are "locked in" to the iPhone app aftermarket due to the high price tag of the phone and large switching costs, ECF No. 111 ¶¶ 65, 66, enabling Apple to charge supracompetitive prices in the aftermarket for app sales.  *Id*. ¶ 45.  The proposed class of "All

---

[1] ECF citations in this order are to 11-cv-6714 unless otherwise indicated.

2

**Exhibit 11**

**-301-**

1    persons in the United States" (*id*. ¶ 54) does not include foreign purchasers, and app sales outside

2    of the United States are not part of the alleged "national" aftermarket.  *Id*. ¶ 67.

3         Normally when cases are related, the Court would not spend time scrutinizing which

4    discovery is relevant to which related case because it doesn't matter.  But here is the thing:  This

5    motion to compel was brought by both the Consumer and Developer Plaintiffs *except* that for RFP

6    47, the Developer Plaintiffs specifically disclaim moving to compel.  ECF No. 269 at 2 n.3

7    ("While the Developer Plaintiffs' position is that such data is relevant and responsive to their

8    RFPs, they do not join in Consumers' request to compel at this time, in part because they are

9    working with Apple on a voluntary accommodation regarding certain foreign distribution

10   transactions.").  Proceeding with this motion to compel by Plaintiffs who seem to have no standing

11   to request this information, while the Plaintiffs that do seem to have standing are trying to work

12   out a voluntary accommodation, would discourage cooperation and encourage discovery fights,

13   which is inconsistent with the "just, speedy, and inexpensive determination of every action and

14   proceeding."  Fed. R. Civ. Proc. 1.  The divergent paths taken by the Consumer and Developer

15   Plaintiffs for this RFP are also in tension with the Coordination Order.  *See* ECF No. 194 ¶ 1

16   ("Plaintiffs shall coordinate discovery efforts to minimize expenses and facilitate the orderly and

17   efficient progress of the Related App Store Actions.  Consumer Plaintiffs and Developer Plaintiffs

18   shall consult in good faith and engage in reasonable efforts to coordinate discovery and jointly

19   resolve any disputes concerning discovery they are seeking so as to avoid duplication and

20   unnecessary burden.").

21        However, at the hearing, the Consumer Plaintiffs argued that this information is in fact

22   relevant to their claims and that it is important for their showing of classwide injury in their class

23   certification motion.  They requested an opportunity to submit an expert declaration to

24   demonstrate the relevance of this information to their claims.  The Court is amenable to that

25   approach.  As discussed at the hearing, the parties shall file a joint discovery letter brief by

26   January 6, 2021 discussing the Consumer Plaintiffs' expert declaration (and any competing

27   declaration submitted by Apple).  The Court will hold a hearing on this issue at 9:00 a.m. on

28   January 8, 2021.

United States District Court
Northern District of California

3

**Exhibit 11**
**-302-**

1    RFP 48.  This dispute is not ripe for review.  The Court orders Apple to investigate further

2    and orders the parties to meet and confer further.  In the event this dispute comes back to the

3    Court, Plaintiffs must explain why this information is relevant in an argument that is more

4    developed than one conclusory sentence.

5    RFPs 51-52.  Plaintiffs seek documents or data that Apple provided to Analysis Group in

6    connection with two public reports it published in July 2020 (entitled, "Apple's App Store and

7    Other Digital Marketplaces: A Comparison of Commission Rates" and "How Large is the Apple

8    App Store Ecosystem?"), as well as all communications between Apple and Analysis Group

9    concerning these reports.  This information is clearly relevant, and Apple does not disagree.

10   Apple states that Analysis Group is an expert consultant in this litigation and that the reports were

11   cited in the *Epic Games* preliminary injunction briefing.  Apple therefore claims the

12   communications with Analysis Group (as opposed to the documents or data) are attorney work

13   product.

14          The problem here is that Apple has hired the same company to do two very different

15   things:  publish reports favorable to Apple in what seems like a public relations effort, and serve

16   as expert consultants in litigation.  Apple has also hired the same people (attorneys at Gibson

17   Dunn) to work with Analysis Group for both efforts.  Retaining the same expert for different

18   purposes does not cause work product protection to become a giant blanket that covers everything.

19   And citing a publicly available document in a brief does not magically bestow work product

20   protection on the document's creation.  Apple's invocation of work product over all of its

21   communications with Analysis Group threatens an inappropriate expansion of the work product

22   doctrine.  For example, emails from Gibson Dunn with drafting suggestions for the reports could

23   very well have no attorney work product in them if the edits are unrelated to litigation preparation.

24   Since the reports themselves were not expert reports under Rule 26, it is not reasonable to assume

25   that every communication about them was work product.

26          The Court orders Apple to produce the documents and data it provided Analysis Group in

27   connection with these two reports, since Apple does not claim work product is implicated by

28   those.  As for communications between Apple and Analysis Group concerning these reports, the

United States District Court
Northern District of California

4

**Exhibit 11**
**-303-**

United States District Court
Northern District of California

1    Court orders Apple to produce non-work product communications about the reports.  The Court

2    also orders Apple to log any communications with Analysis Group about these reports over which

3    it claims work product protection.  Ordinarily, litigants do not log communications with their

4    litigation experts, but the Court believes a log is appropriate here because of the dual roles

5    Analysis Group performed and because Apple's blanket argument that all of these

6    communications contain work product is so difficult to believe.  The logging requirement expires

7    on the date these public reports were published because after that date we may infer that Analysis

8    Group wasn't working on the reports anymore.  Its communications with Apple after that date,

9    even if they discuss the reports, are so likely to be in anticipation of litigation that logging them is

10   not a worthwhile endeavor.

11       RFP 53.  This RFP seeks documents concerning Apple's decision to change its app review

12   procedure related to bug fixes that it announced on August 31, 2020.  These documents are

13   relevant to Apple's business justification defense that subjecting all iPhone apps to Apple's review

14   is important to ensure quality and security.  The Court orders Apple to produce responsive

15   documents.  The Court does not order Apple to do a new search for responsive documents if it has

16   already collected them in a previous search.

17   **B.   Apple's Production of Cost and Expense Documents and Data (11-6714 ECF No. 270; 19-3074 ECF No. 146)**

18       Hyperlinked documents.  The issue here is that when Apple employees email each other

19   documents, they are often not sent as attachments to the emails.  Rather, the emails contain a link

20   to either a cloud-based storage system or some other file transfer system.  The link allows the

21   sender to securely transmit a file as it then existed via a link that is often live for a limited period

22   of time.  The file itself could later be edited, renamed, and so on.  What this means is that when

23   Apple collected its custodians' emails for discovery, there was no parent-child relationship

24   between an email and the document that was hyperlinked.  Apple says that when it did custodial

25   document collections, it collected from all the places where each custodian kept documents, and

26   Apple represented at the hearing that this included all the locations where the hyperlinked

27   documents would have been.  To be clear, Apple's search was not hyperlinked-based, meaning it

28

Exhibit 11
-304-

1   did not examine each link and go look in each file transfer system to find things.  Rather, Apple

2   searched the custodial locations, including cloud locations, from which the custodians could have

3   taken the documents to put in the file transfer system.  Apple maintains that this method should

4   have collected all the hyperlinked documents (unless they were not retained by the custodian, but

5   Apple says it is not aware of any non-retention), subject to the caveat that they could have been

6   revised or altered by the custodian.

7        The issue, from Apple's perspective, is that when Plaintiffs point to a custodian's email

8   that has a hyperlinked document and demand that Apple produce that document, it is time-

9   consuming and somewhat uncertain for Apple to identify that document in the custodian's

10  documents.  Apple sometimes has to interview the custodian, and even then it may not be clear if

11  the document that got produced is exactly the same as the one that was hyperlinked because, for

12  example, it may be a different version of a document with the same name.

13       Plaintiffs are skeptical that Apple has in fact produced the custodial documents.  However,

14  there is a bit of a chicken-and-egg problem here:  Plaintiffs see emails with hyperlinks, they can't

15  find linked documents, so it looks like Apple hasn't produced them, so they ask Apple for them,

16  and then Apple takes a while to identify the likely candidates.  While Apple has done this for a

17  limited number of emails, Plaintiffs are staring at a large email production where this hyperlink

18  problem seems to be everywhere.

19       The Court finds that Plaintiffs have not established that any custodial documents are

20  actually missing.  The Court also finds that the burden on Apple to go through its entire document

21  production and for each email to try to identify what all of the hyperlinked documents were would

22  be overwhelming, as well as impossible for documents that were revised after the hyperlink was

23  sent.  However, the Court is not going to let Apple off the hook completely because Apple is in a

24  far better position than Plaintiffs to try to line up emails with hyperlinked documents.  For

25  example, Apple can interview the custodian.  Accordingly, the Court orders Apple, in response to

26  requests by Plaintiffs directed at particular emails, to do its best to identify the hyperlinked

27  documents for a reasonable number of emails.

28       RFP 72.  The Court orders Apple to produce the data used to generate App Store-specific

United States District Court
Northern District of California

6

Exhibit 11
-305-

profit and loss and gross margin information, and documents (if any exist) that show the methodology by which such information was generated, including any apportionment and/or allocation methods.  This information is relevant.  Apple argues that it does not have App Store-specific profit and loss and gross margin information.  That would have been a more persuasive argument had Plaintiffs not attached to the letter brief an App Store-specific P&L calculation that included gross margin (APL_APPSTORE_08883286).  Apple argues that this particular P&L was an estimate and that Apple in the normal course doesn't formally prepare P&L calculations that are specific to the App Store.  However, that does not absolve Apple of the obligation to produce relevant information that it does have.  This P&L calculation is App Store-specific, and it was used in business planning.  There was a method by which this was put together, and there was data someone used to do it.  Plaintiffs are entitled to that same data so they can also estimate P&L information.  Whatever data was used to come up with this real-life P&L calculation, the Court orders Apple to produce that same type of data for the relevant time period.  If there are documents that show the methodology behind this P&L calculation, Apple must produce those too.

Motion to Seal.  The motion to seal is granted in part and denied in part.  Apple's proposed redactions (*see* ECF Nos. 273 & 274) are acceptable.  Since Apple has already filed a public version with these redactions implemented (ECF No. 273-2), no further action is required.  (In other words, Apple has already complied with Civil Local Rule 79-5(f)(3).)

C. **Apple's Production of Transactional Data (11-6714 ECF No. 271; 19-3074 ECF No. 147)**

Proceeds_reason field.  The Court orders Apple to include the Proceeds_reason field in its upcoming production of transactional data.  There are occasions when Apple charges a 15% commission (instead of 30%) for reasons other than that a developer had a subscription for over one year, and without this field all of those instances would be missing from the transactional data production.  (Note that even though the field is entitled "Proceeds_reason," it doesn't give a *reason* for the 15% commission.  The field is either blank (indicating a 30% commission was charged) or has a value stating a different commission amount.)

7

**Exhibit 11**
**-306-**

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Transactional data.  With the above addition, Apple must now produce the transactional data.  The parties discussed the anticipated time frame for this production at the hearing.  Apple has argued that it should only have to make this production once because it is so burdensome.  The Court is sympathetic to Apple on that point.  If Plaintiffs wait until after this production takes place to raise new arguments about other fields that should have been included, they will face a high burden in attempting to get an order requiring Apple to do this again.

Consumer Plaintiffs' RFPs 45 and 46.  It became clear at the hearing that this dispute is not ripe.  The Court orders Apple to promptly investigate these databases further and to promptly meet and confer with Plaintiffs.

Motion to seal.  The motion to seal is granted in part and denied in part.  Apple's proposed redactions (*see* ECF Nos. 275 & 276) are acceptable.  Since Apple has already filed a public version with these redactions implemented (ECF No. 275-2), no further action is required.

**D.      Additional Apple Custodians (11-6714 ECF No. 298; 19-3074 ECF No. 177; 20-5640 ECF No. 173)**

Tim Cook.  Apple has agreed to make Cook a document custodian on the condition that Plaintiffs limit their deposition of him to four hours.  The only issue in dispute between the parties is whether this condition is appropriate.  The Court finds that it is not.  Plaintiffs cannot meaningfully assess how long this deposition should be until they see Cook's documents.  The Court orders Apple to make Cook a document custodian.  The length of his deposition can be addressed later.

Craig Federighi.  Plaintiffs want Apple to make Craig Federighi a document custodian.  Apple has refused and has offered Eric Neuenschwander instead.  Thus, the dispute is not over how many document custodians there should be, but which of these two people should fill this slot.

Federighi is in charge of engineering for all iOS.  Neuenschwander is his subordinate and reports to him.  In meet and confer, Apple stated that Neuenschwander is in charge of the App Store.  In the letter brief Apple states somewhat differently that Neuenschwander oversees privacy across Apple's platforms and also asserts that he oversees a broad spectrum of security issues.

8

**Exhibit 11
-307-**

United States District Court
Northern District of California

1       Plaintiffs want Federighi's documents because he is in charge of iOS.  Plaintiffs observe

2   that at a high level, Apple's business justification defense is about the benefits of the integrated

3   Apple ecosystem, in which the hardware, operating system, App Store and apps are a closed

4   system that Apple says is more secure, protective of privacy, and results in higher quality.  They

5   want Federighi's documents precisely because he is higher up and, they believe, better able to

6   speak to the reasons for Apple's closed, integrated ecosystem.  They also quote some documents

7   that tend to show that Federighi is more of a decisionmaker than Neuenschwander is, which seems

8   inevitably true since he is his boss.

9       Apple cites the default presumption that the party responding to discovery ordinarily has

10   the responsibility and entitlement to choose document custodians.  In practice this is really more

11   of an obligation than a prerogative because the responding party has to live up to its discovery

12   obligations, and most of the time the requesting party would have no idea who the relevant

13   custodians should be.  Beyond that, Apple does not have much to say about why Neuenschwander

14   should be the custodian, other than to assure us that it has considered the issue and thinks it should

15   be him.  Apple also argues Federighi's documents are likely to contain particularly sensitive

16   business information, requiring more extensive individual review, which would further burden

17   Apple.  However, that last argument also tends to suggest that Plaintiffs are right to want

18   Federighi's documents.

19       The Court rules for Plaintiffs and orders Apple to make Federighi a document custodian

20   instead of Neuenschwander.  First, Plaintiffs have shown that Federighi is a higher-level

21   decisionmaker whose documents are more likely to go to the heart of Apple's business

22   justification defense.  Second, if Plaintiffs have guessed wrong, and Federighi's documents are not

23   as relevant as Neuenschwander's are, that hurts Plaintiffs.  Assuming the requests are relevant and

24   proportional, it is up to Plaintiffs to decide what discovery they want to take to prove their claims,

25   and if they make bad choices, that's their problem.

26       <u>Motion to seal.</u>  The motion to seal is granted in part and denied in part.  Apple's proposed

27   redactions (*see* ECF Nos. 305 & 306) are acceptable.  Since Apple has already filed public

28   versions with these redactions implemented (ECF Nos. 305-2 to 305-5), no further action is

**Exhibit 11**
**-308-**

required.

**IT IS SO ORDERED.**


Dated: December 16, 2020

THOMAS S. HIXSON
United States Magistrate Judge

**Exhibit 11**
**-309-**

# EXHIBIT 12



Becker's Healthcare:    Hospital    ASC    Spine    Clinical    Health IT    CFO    Dental + DSO    Payer    Career Center    1.800.417.2035    Email Us

# BECKER'S
# HEALTH IT

Subscribe

Search...    SEARCH

Hundreds of thousands of patient health records are breached each month.
Learn how to better protect your organization's data.    Click Here


COVID-19
COVERAGE

E-Newsletters    Conferences    Virtual Conferences    Webinars    Whitepapers    Podcasts    Print Issue    Multimedia    Lists    About Us

Artificial Intelligence    Consumerism    Cybersecurity    Data Analytics    Digital Marketing    Digital Transformation    EHRs / Interoperability



# Behind Apple's healthcare strategy: 4 quotes from CEO Tim Cook

Jackie Drees - Monday, December 14th, 2020    Print | Email

Share    Tweet    Share 0

Apple CEO Tim Cook expects the tech giant's devices and developments in healthcare and wellness to account for the company's overall greatest contributions.

Apple has been moving into the healthcare space over the past few years, with products including its Apple Watch, Health Records app and iCloud Platform. This year, the company launched Apple Watch Series 6, which includes features for tracking blood oxygen levels and an electrocardiogram app.

In a recent interview for *Outside*'s podcast, Mr. Cook shared some insights on Apple's healthcare strategy and outlook on the future. Here are four quotes from the interview:

1. On Apple Watch's impact on consumers' health: "We thought it was a big idea to continuously monitor the heart. What we didn't necessarily predict was all of these cases were going to come out of it where the person told us, 'I would not have been here any longer. Do you understand? This is life changing for me.'"

3. On the impact that customer's Apple Watch reviews had on innovation process: "After the first few of those, you realize that there's something there. And you start pulling that string further. That led to AFib and then ECG. It led to putting control limits around your heart where, if it gets too low, you get a notification. If it gets too high, you get a notification. … All of these things are in service of the user so they can own their health in a way that they haven't been able to in the past."

3. On Apple's research study initiatives: "We've also got many people enrolled in different research projects; and we have democratized research in a way as well by having much larger constituents that are able to participate. Because a lot of people do want to help, but they don't know how. And now they can opt in, make conscious decisions to take part in that."

4. On Apple's biggest contribution: "I really believe that if you zoom out to the future and you look back to ask: 'What has Apple's greatest contribution been?' It will be in the wellness-and-health area."

Latest articles on consumerism:
Bose releases first direct-to-consumer hearing aids
What healthcare providers can learn from Netflix: 4 insights on consumer engagement
White House teams up with Uber, Lyft to provide free rides to vaccination clinics

**Do not miss our** Radiology Virtual Event **which will take place on Wednesday, June 23rd, 2021**

© Copyright ASC COMMUNICATIONS 2021. Interested in LINKING to or REPRINTING this content? View our policies by *clicking here.*


BREAKTHROUGHS 21


Hillrom.
Advancing
Connected Care,
Everywhere
Explore innovative solutions across care settings.
LEARN MORE

**Related Articles**

1. Singapore to pay residents to track health with Apple Watches: 4 details

2. Fitbit gets $2.5M to test wearable tech COVID-19 early detection algorithm on Northwell Health employees

3. Montefiore, Albert Einstein College of Medicine partner on wearables study for remote monitoring care

4. Moda Health teams up with Fitbit to offer health trackers to 64,000+ members

5. 85% of Apple Watch users that get AFib alert don't have the condition, Mayo Clinic study finds

**Featured Content**

OR evolution at MUSC: How the health system brought 24/7 robotics to emergency surgery

Guidehouse supporting health system entities' and state and local government entities' allocation of $10 billion in federal COVID-19 aid

Reinventing Community-Based Healthcare Delivery in a Value-

Subscribe to the Becker's Hospital Review newsletter for the latest in healthcare news!

Email*

You can unsubscribe from these communications at any time. For more information, please review our Privacy Policy.

Register with Facebook

SUBSCRIBE    OR    Register with LinkedIn

Invite a Friend



7. How to build a viable health equity strategy — The tech and processes healthcare needs

8. The prevention protocol cutting pressure injury incidence at Mayo Clinic — case study

9. How ASCs can improve workflows & patient satisfaction with a secure text messaging platform

10. Advancing the health of underserved populations

**BECKER'S HEALTHCARE**   GET TOP NEWS STORIES DELIVERED TO YOUR INBOX DAILY. *SUBSCRIBE.*

**Becker's Websites**
Hospital
ASC
Spine
Clinical
Health IT
CFO
Dental + DSO
Payer

**Virtual Learning**
Webinars
Whitepapers
Podcasts

**Conferences**
Health IT + Revenue Cycle Conference
ASC Annual Meeting: The Business and Operations of ASCs
CEO + CFO Roundtable
Becker's Hospital Review Annual Meeting
Health IT + Clinical Leadership + Pharmacy Conference
Spine, Orthopedic and Pain Management-Driven ASC + the Future of Spine Conference

**Contact Us**
1.800.417.2035
becker@beckershealthcare.com

Copyright © 2021 Becker's Healthcare. All Rights Reserved. Interested in linking to or reprinting our content? View our policies by clicking here.

# EXHIBIT 13



SportsPro Insider Series   SportsPro Live   SportsPro APAC   OTT Summit   OTT Summit Asia   OTT Summit USA   Motorsport Forum

**SportsPro**

News ▾    Insights ▾    SportsPro Magazine ▾    Podcasts    Playbook    Most Marketable    Events ▾    Shop   •••

Sign up   🐦   f   in   🔍

**SportsPro APAC**   7 & 8 July 2021   **Transformation of sports consumption**   48hrs   FLASH SALE – VIP PASS ONLY $99

# Tim Cook: 'Apple's greatest contribution could be in health and wellness'

Convergent hardware and software sees tech giant's CEO eyeing personal fitness sector.

Posted: February 16 2021    By: Tom Bassam    



Getty Images

- **Apple launched Fitness+ home workout platform in December**
- **Tech giant holds dominant 28% share in smartwatch sector**

**Apple chief executive Tim Cook has suggested that the technology giant could be set to play a major role in the rapidly developing personal fitness sector.**

With people stuck at home during the pandemic, Apple decided to launch subscription home workout platform Fitness+, which went live in December.

- At Large | What would an Apple sports strategy look like?

The platform draws on the company's blend of consumer products, including Apple Watch's measurement tools, Apple Music and larger-screen hardware such as iPads or laptops. In identifying an area which draws together Apple's various offerings, Cook feels personal fitness could be a sector the company comes to define itself by.

Cook told Outside: "I really believe that if you zoom out to the future and then look back and ask, 'what has Apple's greatest contribution been?' it will be in the health and wellness area."

Cook's comments come with Apple appearing to want to double-down on a sector where it also leads the wearable technology race. Reporting on Q3 2020 in December last year, Apple held a 28 per cent share of the smartwatch market, up from 26 per cent in the same quarter in 2019, with sales reaching US$2.3

## Top 5

**1**   Report: Manchester United lose UKE200m training kit deal over fan protests
May 10 2021

**2**   Canelo-Saunders breaks US indoor boxing attendance record
May 10 2021

**3**   OTT platform Recast sees valuation hit US$29m on back of Series A investment
May 10 2021

**4**   Report: Orlando City set to be sold to Wilf family
May 10 2021

**5**   Canelo Alvarez exits US$365m DAZN contract
November 09 2020



Grow your fanbase **with Gen Z**
Gen Z Insights Platform

**Exhibit 13**
**-313-**

billion in that period, up 18 per cent year-over-year.

Cook also hinted that he thinks Apple has room to innovate more as the sector develops.

"Never discount the amount of innovation that can be in the future," he said. "To use a baseball analogy, we are in the early innings."

He added: "We take the challenge to continue innovating in that space just as seriously as we take the challenge to keep innovating in each of the product categories we're in."

POSTED IN: INVESTMENT, MULTIPLE SPORTS, NORTH AMERICA, GLOBAL    


Grow your fanbase with Gen Z   Gen Z Insights

## Latest News



Study: 69% of young sports fans support environmental change



Lions warmup match lands on Channel 4 as it picks up highlights package



NFL returning to London with two games in October



MLB urges Oakland Athletics to relocate



FuboTV updates 2021 forecasts on back of its strongest ever Q1



Study: Premier League could generate US$432m from digital inventory in 2021



Nascar's Darlington race scores 3.09m average audience for Fox



World Rallycross confirms revised 2021 calendar



Extreme E powers up with Zenobe



Phoenix Suns strike Fanatics merchandise deal ahead of playoffs return



Report: KB Partners raising US$100m to invest in sports tech startups



Hong Kong government secures Tokyo Olympics broadcast rights

Load comments

blog comments powered by Disqus



Events
SportsPro Insider Series
SportsPro Live
SportsPro APAC
OTT Summit
OTT Awards
OTT Summit USA
Motorsport Forum

News
Features
Opinion
Movers & Shakers
SportsPro Magazine
Shop

About SportsPro
Daily Deal Newsletter
Black Book
SmartSeries
Advertise
Contact Us

Follow:

© SportsPro Media Limited. All rights reserved. Privacy Policy • Cookie Policy

Exhibit 13
-315-

# EXHIBIT 14

NEWSLETTERS

## FRONT OFFICE SPORTS

Q    SEARCH


⚡FLOSPORTS *Finally*, YOUR SPORT HAS A HOME    LEARN MORE

**FITNESS**

# Tim Cook Believes Health and Wellness Will Be Apple's Legacy

▶ **Apple launched Fitness+ in December.**

▶ **The package integrates Apple Watch, Apple TV, Apple Music, and a workout video recommendation engine.**



APPLE

BY OWEN POINDEXTER
FEBRUARY 15, 2021

Apple CEO Tim Cook wants you to take a break from the devices and move your body.

"I really believe that if you zoom out to the future and then look back and ask, 'What has Apple's greatest contribution been?' it will be in the health and wellness area," Cook told Outside Magazine.

With gyms closed or limited, Apple is bringing the workout experience into homes through Fitness+, a subscription service it launched in December.

Fitness+ combines many of the tech giant's hardware and software capabilities: Apple Watch's heart rate monitor, Apple Music for playlists, iPads to present classes with workout data displayed natively.

**"Never discount the amount of innovation that can be in the future,"** Cook said. "To use a baseball analogy, we are in the early innings."

Fitness hardware and subscriptions have seen impressive investor interest lately.

- Lululemon acquired Mirror for $500 million last June.
- Amazon, Stephen Curry and several other star athletes joined Tonal's $110 million funding round in September.
- Peloton went public at $27 per share in September 2019 and has seen its

**Exhibit 14
-316-**

- Peloton went public at $27 per share in September 2019 and has seen its stock price reach as high as $171 since then.
- Beachbody is going public via a SPAC with a nearly $3 billion dollar valuation.

**So how does Apple prioritize turning off the screens when its products have largely enabled our dependence on them?** Cook admits he doesn't know, but is searching for a solution.

"We take the challenge to continue innovating in that space just as seriously as we take the challenge to keep innovating in each of the product categories we're in," he said.

Beyond workouts, a recent Mount Sinai study found the Apple Watch could detect heart rate variability changes that can help identify COVID-19 — a testament to the potential of Apple's health and wellness ambitions.

---

## Related



FITNESS

**ClassPass, MindBody Health Apps In IPO Talks Together**

BY ABIGAIL GENTRUP / MAY 6, 2021



FITNESS

**Peloton Recalls Treadmills, Stock Tumbles**

BY OWEN POINDEXTER / MAY 5, 2021



FITNESS

**Equinox in SPAC Talks with Warriors Minority Owner**

BY OWEN POINDEXTER / MAY 5, 2021



FITNESS

**Oura Brings In $100M in Funding**

BY ABIGAIL GENTRUP / MAY 5, 2021

---

### FRONT OFFICE SPORTS

BEST EMPLOYERS IN SPORTS    RISING 25    SPORTS MARKETING ESSENTIALS    TRENDING 20    TERMS OF USE/PRIVACY POLICY    ADVERTISE

© 2021 FRONT OFFICE SPORTS

Exhibit 14
-317-

# EXHIBIT 17



**CNN Underscored** is your guide to the everyday products and services that help you live a smarter, simpler and more fulfilling life. The content is created by CNN Underscored. CNN News staff is not involved. When you make a purchase, we receive revenue.

# The Apple Watch Series 6 is official with blood oxygen monitoring and new colors

By [Jacob Krol](#)

Updated 10:15 PM EDT, Tue September 15, 2020



Exhibit 17
-337-

**(CNN) —**  Tick tock, tick tock. It's already September, <u>and Apple's "Time Flies" event is underway</u>. At Apple Park (the company's campus) today, CEO Tim Cook wasted no time diving into two new products: <u>an iPad</u> and the new <u>Apple Watch Series 6</u>.

Health has always been a big focus for the Watch, and it's evident that Apple appreciates how important that is for customers. The new watchOS 7 already featured hand-washing detection and sleep tracking, and this new Apple Watch takes health monitoring functionality even further. You'll be able to monitor blood oxygen levels right from your wrist in just 15 seconds. Plus, Apple's Fitness+ service takes aim at the Peloton and digital workout craze.

Alongside <u>Series 6</u>, Apple announced the <u>$279 (starting) Apple Watch SE</u> and <u>Series 3</u> will stay as the entry point at $199. Full details on the SE are below the fold. There's also a USB power adapter included in the box for any of these Apple Watches, just the cable will stay.

And yes, before we dive in deeper: The <u>Apple Watch Series 6</u> retains all the features from the Series 5 minus Force Touch.

<u>Preorder the new Apple Watch Series 6 and Apple Watch SE now</u>.

- <u>Amazon</u>
- <u>B&H Photo Video</u>

## Blood oxygen monitoring (aka Pulse OX)



**Exhibit 17**
-338-



Apple

The Apple Watch Series 6 can measure your blood oxygen levels

---

[Apple Watch Series 6](#) delivers blood oxygen monitoring right from your wrist. Also known as SpO2 tracking, it monitors the amount of oxygen in your blood. It's a nice addition to the suite of health tracking, and a timely one, as [some doctors have indicated that low blood oxygen levels can be a potential sign of Covid-19](#).

Apple says a blood oxygen measurement can be recorded in just 15 seconds, done with an updated sensor on the rear of the Apple Watch. That's the same location as the heart rate sensor, which also takes electrocardiogram (ECG) right from your wrist. SpO2 joins ECG, heart rate tracking, sleep tracking, fitness tracking and hearing health.

## S6 processor and display upgrades



Apple

**Exhibit 17**
**-339-**

5/12/2021  Case 8:20-cv-00048-JVS-JDE   Apple Watch Series 6 and Apple Watch SE – Your Ultimate Guide to CNN Underscored   Filed 05/20/21   Page 78 of 85   Page ID #:34069

Apple Watch Series 6 and Apple Watch SE

Apple Watch Series 6 will be running watchOS 7 out of the box and is powered by the S6 processor. It's a full system on a chip, made in-house by Apple, similar to the chips that power the iPhone and iPad. To be specific, it's a 64-bit dual-core processor and should be 20% faster than the previous S5 processor in the Series 5. Those coming from a Series 3, 4 or earlier model should see even better improvements.

That chip will be powering an upgraded always-on display and an always-on altimeter. The always-on display premiered on Series 5, and in our review, we noted that it felt more like a traditional timepiece than ever before. New watch faces are also available on the Series 6. Among them, there's a Typography face that focuses in on different numeral styles, and a Memoji face that features your own personal avatar. We're jazzed about the latter. And as before, watch faces are shareable.

Apple also introduced Family Setup for Watch. With this feature, an iPhone is no longer required for each functioning Apple Watch. You can handle setup from one iPhone, and family members can be given a Watch with a separate number and Apple ID. In the realm of parental controls, you can turn on location notifications and monitor and limit who family members can chat with. Family Setup will also retroactively work with Apple Watch Series 4 and later.

You can preorder it right now, and it will begin shipping on September 18. Apple Watch Series 6 starts at $399 for the 40mm GPS variant, and we'll break down all the models below.

- Apple Watch Series 6 40mm GPS Gold Aluminum Case with Pink Sand Sport Band ($399; bhphotovideo.com)
- Apple Watch Series 6 44mm GPS Gold Aluminum Case with Pink Sand Sport Band ($429; amazon.com or bhphotovideo.com)
- Apple Watch Series 6 40mm GPS Space Gray Aluminum Case with Black Sport Band ($399; bhphotovideo.com)
- Apple Watch Series 6 44mm GPS Space Gray Aluminum Case with Black Sport Band ($429; bhphotovideo.com)
- Apple Watch Series 6 40mm GPS Blue Aluminum Case with Deep Navy Sport Band ($399; bhphotovideo.com)
- Apple Watch Series 6 44mm GPS Blue Aluminum Case with Deep Navy Sport Band ($429; amazon.com or bhphotovideo.com)
- Apple Watch Series 6 40mm GPS Silver Aluminum Case with White Sport Band ($399; bhphotovideo.com)
- Apple Watch Series 6 44mm GPS Silver Aluminum Case with White Sport Band ($429; amazon.com or bhphotovideo.com)

- Apple Watch Series 6 40mm GPS Product(RED) Aluminum Case with Red Sport Band ($399; [amazon.com](amazon.com) or [bhphotovideo.com](bhphotovideo.com))
- Apple Watch Series 6 44mm GPS Product(RED) Aluminum Case with Red Sport Band ($429; [amazon.com](amazon.com) or [bhphotovideo.com](bhphotovideo.com))

- Apple Watch Series 6 40mm GPS + Cellular Blue Aluminum Case with Deep Navy Sport Band ($499; [amazon.com](amazon.com))
- Apple Watch Series 6 44mm GPS + Cellular Blue Aluminum Case with Deep Navy Sport Band ($529; [amazon.com](amazon.com))
- Apple Watch Series 6 40mm GPS + Cellular Space Gray Case with Black Sport Band ($499; [amazon.com](amazon.com))
- Apple Watch Series 6 40mm GPS + Cellular Silver Case with White Sport Band ($499; [amazon.com](amazon.com))

## Apple Watch SE



Apple

Apple Watch SE

Apple also announced a second new Watch. Like the affordable iPhone, the [Apple Watch SE](Apple Watch SE) combines the best of Series 6 with affordability. For instance, it has a similar case and industrial

Exhibit 17
-341-

design to the Series 6 and will be offered in the same two sizes: 40mm and 44mm. It has a standard non-always-on display and is powered by the S5 chip (the chip that powers Series 5) . It'll be slightly slower than the Series 6 and likely a lot faster over the Series 3 which is sticking around with a $199 starting price.

The Watch SE also features many of the health monitoring capabilities that you've come to expect. It can monitor noise levels, track activities, detect if you've fallen and even take heart rate measurements. It lacks the electrical heart rate sensor that powers an ECG and it doesn't feature blood oxygen monitoring, though. Surprisingly the SE does feature a compass and the always on altimeter which just premiered on the Series 6.

At $80 more than the Series 3, the SE really brings the value while only snubbing a few features. Like the Series 6, there will be GPS and GPS + Cellular models of the Watch SE. It seems like an excellent choice for children, especially with Family Setup. It starts at $279 and will start shipping on September 18.

- Apple Watch SE 40mm GPS Silver Aluminum Case with White Sport Band ($279; bhphotovideo.com)
- Apple Watch SE 40mm GPS Gold Aluminum Case with Pink Sand Sport Band ($279; amazon.com or bhphotovideo.com)
- Apple Watch SE 40mm GPS Space Gray Aluminum Case with Black Sport Band ($279; bhphotovideo.com)
- Apple Watch SE Nike Edition 40mm GPS Silver Aluminum Case with Pure Platinum Nike Sport Band ($279; bhphotovideo.com)
- Apple Watch SE Nike Edition 40mm GPS Silver Aluminum Case with Anthracite Nike Sport Band ($279; bhphotovideo.com)
- Apple Watch SE 44mm GPS Silver Aluminum Case with White Sport Band ($309; amazon.com)
- Apple Watch SE 44mm GPS Gold Aluminum Case with Pink Sand Sport Band ($309; amazon.com or bhphotovideo.com)
- Apple Watch SE 44mm GPS Space Gray Aluminum Case with Black Sport Band ($309; amazon.com or bhphotovideo.com)
- Apple Watch SE Nike Edition 44mm GPS Silver Aluminum Case with Pure Platinum Nike Sport Band ($309; bhphotovideo.com)
- Apple Watch SE Nike Edition 44mm GPS Silver Aluminum Case with Anthracite Nike Sport Band ($309; bhphotovideo.com)

## Apple Fitness+

Exhibit 17
-342-



Apple

Apple Fitness+

Apple clearly has smart exercise equipment like the Peloton in its sights with its Fitness+ service, announced today along with the new watches. Workout classes with renowned trainers are available right from your wrist and can be streamed to other Apple devices as well, including the iPhone, iPad, Mac and even Apple TV.

The tracking and monitoring, kind of unbelievably, [all happens on your wrist](#). Starting the video on your device will sync with the Apple Watch and have it start tracking a workout. Yoga, Cycling, Dance, Treadmill, Core, Strength, HIT and Rowing are all workout options.

Fitness+ will be $9.99 a month or $79.99 a year and launches later this year. Purchasing an Apple Watch gets you three free months of Fitness+.

Apple One lets you put all of the services together. Apple Music, New+, TV+, Apple Arcade, Fitness+ and Storage. We'll break this down soon, but it should offer some savings.

*Note: The prices above reflect the retailers' listed price at the time of publication.*

**Exhibit 17 -343-**

## Get discounts and exclusive offers

Sign up for our newsletter

Enter your email address          **Sign Up**

By subscribing, you agree to our <u>privacy policy</u>

Search CNN...

US

World

Politics

Business

Opinion

Health

Entertainment

Tech

Style

Travel

Sports

Videos

Audio

Coupons

Weather

More

Exhibit 17 -344-

**FOLLOW CNN UNDERSCORED**



Terms of Use    Privacy Policy    Do Not Sell My Personal Information    Accessibility & CC    About    Newsletters

Transcripts

© 2021 Cable News Network. A Warner Media Company. All Rights Reserved.

CNN Sans ™ & © 2016 Cable News Network.

**Exhibit 17**
**-345-**

# EXHIBIT 18

https://www.apple.com/leadership/adrian-perica/



## Apple Leadership

# Adrian Perica
## Vice President,
## Corporate Development

Adrian Perica is Apple's vice president of Corporate Development, reporting to CEO Tim Cook.

Adrian is responsible for the company's mergers, acquisitions and strategic investing efforts. Since joining Apple in 2009, he has overseen the successful integration of vital technologies and new businesses across hardware, software and services.

Prior to Apple, Adrian worked at Goldman Sachs for eight years and before that, he worked at Deloitte Consulting and was an officer in the US Army.

A Midwest native, Adrian holds a bachelor's degree in Physics from the United States Military Academy at West Point and an MBA from the Massachusetts Institute of Technology. He currently serves on the board of Didi Chuxing.



Exhibit 18 -346-