# EXHIBIT 1

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:  (949)-760-0404
Facsimile:  (949)-760-9502

Attorneys for Plaintiffs,
**Masimo Corporation and Cercacor Laboratories, Inc.**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) **PLAINTIFFS MASIMO**<br>) **CORPORATION AND**<br>) **CERCACOR LABORATORIES,**<br>) **INC.'S FIRST SET OF REQUESTS**<br>) **FOR PRODUCTION OF**<br>) **DOCUMENTS TO DEFENDANT**<br>) **APPLE INC. (NOS. 1-25)**<br>)<br>)<br>) Hon. James V. Selna<br>)<br>)<br>)<br>) |

Exhibit 1
-10-

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs MASIMO CORPORATION ("Masimo") and CERCACOR LABORATORIES, INC. ("Cercacor") (collectively, "Plaintiffs") hereby request that Defendant APPLE INC. ("Apple") respond to the following Requests for the Production of Documents and Things (the "Requests") within thirty (30) days of service of these Requests and produce the documents and things described herein at the offices of counsel for Masimo within the time prescribed by the Federal Rules of Civil Procedure. These Requests are deemed continuing in nature, requiring amended or supplemental responses as necessary.

## **DEFINITIONS**

Notwithstanding any definition set forth below, each word, term or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. As used in these Requests, the following terms are to be interpreted in accordance with these definitions:

1.      The terms "Apple," "Defendant," "You," and "Your" mean Defendant Apple, Inc., as well as any present or former officer, director, employee, agent, attorney, or other representative acting for or on behalf of Defendant Apple, Inc.

2.      "Masimo" means Masimo Corporation, including its divisions, departments, parents, subsidiaries, affiliates or predecessors.

3.      "Cercacor" means Cercacor Laboratories, Inc., including its divisions, departments, parents, subsidiaries, affiliates or predecessors.

4.      The term "Plaintiffs" shall mean Masimo and Cercacor as defined above.

5.      "Masimo Asserted Patents" means the patents Plaintiffs are asserting in this case, including U.S. Patent No. 10,258,265, U.S. Patent No. 10,258,266, U.S. Patent No. 10,292,628, U.S. Patent No. 10,299,708, U.S. Patent No. 10,376,190, U.S. Patent No. 10,376,191, U.S. Patent No. 10,470,695,

Exhibit 1
-11-

U.S. Patent No. 6,771,994, U.S. Patent No. 8,457,703, and U.S. Patent No. 10,433,776.   To the extent Masimo asserts additional patents in a future pleading, "Masimo Asserted Patents" shall be construed to include such patents.

6.      "Apple iOS Products" means products that use Apple's mobile iOS operating system.

7.      "Accused Products" means Apple Watch Series 4 or later, as well as the combination of Apple Watch Series 4 or later with an Apple iOS Product.

8.      The term "documents" shall be construed to include all writings and graphics of any sort whatsoever, together with any data stored in electronic or any other form, including, but not limited to, books, records, microfilm, tape or video recordings, emails, voice mails, handwritten notes, phone messages, pictures, and all copies of such documents except those that are identical in every respect to the original document.

9.      The term "things" shall mean all tangible objects of any type, composition, construction, or nature.

10.     The term "and" shall be construed to include "or" and vice versa, and each of them shall be the logical equivalent of "and/or."

11.     The term "concerning" shall mean relating to, referring to, describing, evidencing, or constituting.

12.     The term "communication" shall mean and refer to the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

13.     The use of the singular form of any word also includes the plural and vice versa, and a verb tense includes all other verb tenses wherever possible.

**INSTRUCTIONS**

1.      Produce all documents specified below that are in Your possession, custody, or control, or otherwise known and available to You, Your agents, employees, representatives, investigators, attorneys or their agents, employees, representatives, or investigators at the time and place indicated.

Exhibit 1
-12-

2.     If You claim that any requested documents or things are privileged, then provide all information falling within the scope of the Request that is not privileged and identify with sufficient particularity for purposes of a motion to compel the information, document, or thing, separately, with respect to which You claim a privilege, and state:

        a.     the basis on which the privilege is claimed;

        b.     the author or creator of the information, document, or thing;

        c.     each individual or other person to whom the information, document, copy thereof, or thing was sent or otherwise disclosed; and

        d.     the date of the information or document.

3.     If You are aware of the existence, past or present, of a requested document or thing, but the document or thing is not in Your possession, custody, or control, then so state in Your response to the request for that document or thing.  Identify such document or thing and identify, by name, title, and address, the person who last maintained possession, custody, or control of the document or thing.  If the requested document or thing no longer exists, then Your response should state when, how, and why this is the case.

4.     Produce each requested document or thing along with all non-identical drafts thereof.  Furthermore, produce each document in its entirety, without abbreviation or redaction.

5.     Identify specifically the derivation and source of each document and thing to be produced.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

All documents and things that refer or relate to the Masimo Asserted Patents.

**REQUEST FOR PRODUCTION NO. 2:**

All documents and things that refer or relate to Apple's first awareness of

Exhibit 1
-13-

1   the Masimo Asserted Patents.

2   **REQUEST FOR PRODUCTION NO. 3:**

3   All documents and things that refer or relate to any efforts to design any

4   of the Accused Products around the inventions claimed in the Masimo Asserted

5   Patents.

6   **REQUEST FOR PRODUCTION NO. 4:**

7   All documents and things concerning, evaluating, discussing, and/or

8   commenting on the existence, infringement, or scope of the Masimo Asserted

9   Patents.

10   **REQUEST FOR PRODUCTION NO. 5:**

11   Documents sufficient to show the design and operation of the Accused

12   Products.

13   **REQUEST FOR PRODUCTION NO. 6:**

14   All documents and things describing the operation of the Accused

15   Products, including, without limitation, product brochures, user manuals,

16   instructional materials, and directions for use.

17   **REQUEST FOR PRODUCTION NO. 7:**

18   All training materials concerning any of the Accused Products, including,

19   without limitation, training manuals, training videos, presentations, and

20   handouts.

21   **REQUEST FOR PRODUCTION NO. 8:**

22   All marketing materials concerning any of the Accused Products,

23   including, without limitation, advertisements, promotional materials, pamphlets,

24   brochures, product catalogs, websites, product brochures, informational

25   materials, and videos.

26

27

28

Exhibit 1
-14-

**REQUEST FOR PRODUCTION NO. 9:**

All publications, articles, abstracts, papers, presentations, seminars, speeches, press releases, and internet postings relating to any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 10:**

All videos or DVDs demonstrating or showing the operation of the Accused Products.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and things that refer or relate to the use, effectiveness, capabilities, functionality, or characteristics of the physiological monitoring features of any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 12:**

All technical documents for the Accused Products, including, without limitation, product specifications, diagrams, schematics, memos, conceptual or technical drawings, design requirements documents, design capture documents, technical requirements documents, product briefs, product plans, product requirements, document trees, assembly design documents, design review documents, system design documents, fabricating drawings, manufacturing documents, and technical meeting minutes.

**REQUEST FOR PRODUCTION NO. 13:**

All documents and things that refer or relate to technical information, specifications, and research data for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 14:**

All documents and things concerning the research, design, and development of any of the Accused Products or any component of any of the Accused Products, including, without limitation, laboratory notebooks, invention disclosures, memoranda, product specifications, conceptual or

Exhibit 1
-15-

technical drawings, schematics, diagrams, technical specifications, meeting minutes, presentations, and prototypes.

**REQUEST FOR PRODUCTION NO. 15:**

All documents and things that refer or relate to optical or structural components of any of the Accused Products, including emitters, sensors, detectors, filters, covers, lenses, masks, housing, adhesives, openings, magnets, magnetic shields, carriers, bodies, interior surfaces, walls, protrusions, and sensor subsystems.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and things that refer or relate to any components, surface areas, or adhesives that separate light emitted by LEDs from other components of any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 17:**

Documents sufficient to show the operation of any algorithms used to monitor any physiological parameter in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 18:**

Documents sufficient to show the operation of any heart rate algorithms used in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 19:**

All documents and things that refer or relate to the development of the heart rate algorithms for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 20:**

All documents and things that refer or relate to selection between any heart rate algorithms used in any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 21:**

All documents and things that refer or relate to power consumption by any heart rate algorithms used in any of the Accused Products.

Exhibit 1
-16-

**REQUEST FOR PRODUCTION NO. 22:**

All documents and things that refer or relate to the operation of any LEDs used to determine pulse rate or heart rate for any of the Accused Products, including but not limited to documents and things that refer or relate to LED timing, duty cycle, current, or power usage.

**REQUEST FOR PRODUCTION NO. 23:**

All documents and things that refer or relate to collecting first heart rate metrics using a first technique during a first period and collecting second heart rate metrics using a second technique during a second period for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 24:**

All documents and things that refer or relate to changes in collecting heart rate metrics based on user input for any of the Accused Products.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and things that refer or relate to changes in collecting heart rate metrics based on a change in operating mode for any of the Accused Products.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: _March 16, 2020_      By: _/s/ Stephen W. Larson_

> Joseph R. Re
> Stephen C. Jensen
> Perry D. Oldham
> Stephen W. Larson
>
> Attorneys for Plaintiffs,
> Masimo Corporation and
> Cercacor Laboratories, Inc.

-7-

Exhibit 1
-17-

## **PROOF OF SERVICE**

I am a citizen of the United States of America and I am employed in Irvine, California.  I am over the age of 18 and not a party to the within action.

On March 16, 2020, I served the within **PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT APPLE INC. (NOS. 1-25)** on the parties or their counsel shown at the email addresses shown below:

GIBSON, DUNN & CRUTCHER LLP

JOSHUA H. LERNER
jlerner@gibsondunn.com

H. MARK LYON,
mlyon@gibsondunn.com

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on March 16, 2020, at Irvine, California.

Karina Villanueva

32027361

-8-

Exhibit 1
-18-

# EXHIBIT 2

| From: | Adam.Powell |
| To: | Samplin, Ilissa |
| Cc: | Perry.Oldham; Stephen.Larson; Steve.Jensen; Joe.Re; Lerner, Joshua H.; Lyon, H. Mark; Buroker, Brian M.; Kaounis, Angelique |
| Subject: | RE: Masimo v. Apple - Section 2019.210 compliance |
| Date: | Monday, April 27, 2020 12:31:00 PM |

Ilissa,

Your rhetoric is not helpful. Friday was only the second day into a ten-day response period, presuming your letter complied with Local Rule 37-1. However, your letter does not satisfy the requirements of Local Rule 37-1, which provides the letter must "specify the terms of the discovery order to be sought" and "provide any legal authority the moving party believes is dispositive of the dispute." Your letter stated Apple intended to "raise Plaintiffs' continued failure to comply with Section 2019.210 promptly with Judge Early" but did not state any requested relief or authority for such requested relief. Such information is necessary for us to prepare for the conference of counsel (and for Apple to comply with LR 37-1).

We also have now asked you three times whether Apple intends to move forward with the joint stipulation in its present form. You refused to answer that question each time, despite knowing that we were expending resources on our portion of the joint stipulation. Please answer that simple "yes" or "no" question in advance of our call today. That information is also necessary for us to prepare for the conference of counsel. In the event Apple does not file a motion for protective order addressing this issue but continues to refuse to provide patent discovery, Plaintiffs will file a motion to compel.

We also note that the parties have now disagreed over what happened during several teleconferences, including the Rule 26 conference and the April 6, 2020, conference concerning Apple's pending motion for protective order. To avoid similar disputes, we request that the parties record such teleconferences moving forward. Please confirm Apple agrees. We will, of course, indicate the conference is being recorded during each call that we record.

Finally, 3pm this afternoon will not work for us anymore. Please let us know if 4pm works for you.

Best regards,

Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

## Knobbe Martens

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Sunday, April 26, 2020 9:23 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Section 2019.210 compliance

Adam,

It seems we are speaking past each other, which could have been avoided if your team would have gotten on the phone sooner. In any event, we will speak to you at 3 pm tomorrow. We can use the following dial-in:

Exhibit 2
-19-

███████████

Please be prepared to discuss on the call the date by which Plaintiffs will serve a Section 2019.210 compliant trade secret disclosure. We told you that we would agree to treat the disclosure as AEO until a Protective Order is in place—therefore, there's absolutely no reason for Plaintiffs to keep dragging out their obligation to provide the trade secret disclosure Judge Selna ordered. We need a date certain from Plaintiffs, and expect to receive that from you during tomorrow's call.

Regards,

Ilissa

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Saturday, April 25, 2020 4:38 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>
**Subject:** Re: Masimo v. Apple - Section 2019.210 compliance

[External Email]

Ilissa,

Our response **_more quickly_** than required by the Local Rules is certainly reasonable. Regardless, your letter did not say you wanted to talk about the current joint stipulation. We asked you twice whether Apple intends to move forward with the current joint stipulation. You refused to answer both times even though you know we are expending resources working on our portion of the joint stipulation. From your email, it now sounds like Apple does not plan to move forward with the joint stipulation in its present form. If that is correct, please inform us immediately so that we can stop wasting resources on our response this weekend. We are happy to discuss the timing of Apple's anticipated revisions and our portion or a new motion on Monday afternoon after 3pm.

Best regards,

Adam

On Apr 24, 2020, at 8:49 PM, Samplin, Ilissa <ISamplin@gibsondunn.com> wrote:

Adam,

The status of the Motion for Protective Order is part of what we want to discuss on a call. We would have gotten on the phone with you yesterday or today to discuss. You didn't take us up on the offer.

We disagree with your assertion below – plaintiffs are clearly dragging this out because their failure to comply with Section 2019.210 has been an ongoing issue over which the parties have exchanged countless letters and briefing already. To say you need to

Exhibit 2
-20-

spend days considering our short letter before getting on the phone with us to hash out these issues seems disingenuous, and appears to be another attempt to push off for another week the issue of plaintiffs' noncompliance with Section 2019.210.

We, like you, want to get to the bottom of the parties' dispute here so that we can promptly get it before the Court. A call is most efficient in this regard, and I trust that by Monday morning your team will have had sufficient time to prepare for that call. Please propose a time.

Thanks,

Ilissa

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Friday, April 24, 2020 6:18 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Section 2019.210 compliance

[External Email]

Ilissa,

We disagree with your assertion that we dragged anything out by not responding to a L.R. 37-1 letter in less than two days. We are reviewing your letter and will respond in due course. However, your letter appears to address the same issues as Apple's existing Motion for Protective Order. If Apple intends to withdraw that motion in favor of filing a different Motion for Protective Order, please inform us immediately so that we can stop working on our portion of the Joint Stipulation. If Apple intends to move forward with the existing Motion for Protective Order, we do not see why Apple is demanding a meet and confer on a second duplicative motion.

Best regards,

Adam

**Adam Powell**
Partner
858-707-4245 Direct

**Knobbe Martens**

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Friday, April 24, 2020 11:41 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>

Exhibit 2
-21-

**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Section 2019.210 compliance

Adam,

I have not heard back from you on our request for a meet and confer. There's no reason to drag this out. You raised the issue, and therefore should be able to hop on the phone to discuss it. Please let us know if there is a time you can speak this afternoon or Monday morning.

Thanks,

Ilissa

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

**From:** Samplin, Ilissa
**Sent:** Wednesday, April 22, 2020 5:21 PM
**To:** 'Adam.Powell' <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Section 2019.210 compliance

Adam,

Please see the attached correspondence.

Regards,

Ilissa

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, April 21, 2020 6:09 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>;

Exhibit 2
-22-

Kaounis, Angelique <AKaounis@gibsondunn.com>

**Subject:** RE: Masimo v. Apple - Section 2019.210 compliance

[External Email]

Ilissa,

We will provide a Section 2019.210 disclosure in due course, but will need a Protective Order in place before doing so. We are reviewing Apple's edits that it provided late Thursday evening and will respond to Angelique as soon as we can.

Judge Selna's order also made clear that he was staying "trade secret discovery only," not discovery of other claims that might also "relate" to trade secret claims. Since Apple acknowledged Plaintiffs' RFPs 1-25 all relate to the patent case, please confirm Apple will withdraw its Motion for Protective Order and substantively respond to those requests.

Best regards,

Adam

**Adam Powell**

Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Monday, April 20, 2020 5:27 PM
**To:** Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>
**Subject:** Masimo v. Apple - Section 2019.210 compliance

Counsel:

Please confirm, by close of business tomorrow, the date on which we can expect to receive a Section 2019.210-compliant trade secret disclosure, per Judge Selna's April 17 Order.

Regards,

Ilissa

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Exhibit 2
-23-

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 2
-24-

# EXHIBIT 3

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | Kaounis, Angelique; Joe.Re; Steve.Jensen; Stephen.Larson |
| **Cc:** | Perry.Oldham; Samplin, Ilissa; Lerner, Joshua H.; Semendyai, Vladimir J.; Lyon, H. Mark; Buroker, Brian M. |
| **Subject:** | RE: Masimo et al. v. Apple: meet and confer |
| **Date:** | Thursday, April 30, 2020 12:32:00 PM |
| **Attachments:** | Joint Stipulation re Apple MPO both portions (Final w Plaintiffs Signature).DOCX |

Angelique,

Attached is a version of the joint stipulation adding myself to the caption page and including my signature. Assuming you made no changes to the joint stipulation or supporting papers other than what you identified in your email below, you may file this version.

We understand Apple included the language of the RFPs at issue in its section, but we do not agree with Apple doing so in an argumentative fashion. Additionally, the Local Rules require the text of the RFPs "followed by each party's contentions." Thus, we maintain the RFPs should be included in a non-argumentative joint section after the introductory statements and before each party's contentions.

Best regards,

Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

## Knobbe Martens

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Wednesday, April 29, 2020 9:17 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Semendyai, Vladimir J. <VSemendyai@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

Adam,

I am re-attaching the PDF version of the Joint Stipulation here – it looks like it didn't attach to the below email.

Thanks,

Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Kaounis, Angelique
**Sent:** Wednesday, April 29, 2020 8:59 PM
**To:** 'Adam.Powell' <Adam.Powell@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>

Exhibit 3
-25-

**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Semendyai, Vladimir J. <VSemendyai@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>

**Subject:** RE: Masimo et al. v. Apple: meet and confer

Adam,

Thanks for your email.

Attached please find the Final Joint Stipulation (and attachment, per L.R. 37-2.1) and Declarations (with exhibits) to be filed tomorrow. We updated the cover page with the relevant dates based on the Scheduling Order, as required by the Local Rules. We also added Brian Rosenthal's name to the signature block since his PHV application was recently approved by the Court, and added the Rule 5-4.3.4 attestation at the end.

I've attached both a word and PDF version of the Joint Stipulation. Please confirm tomorrow as soon as practicable that we may file the Joint Stipulation (and attachment) and Declarations (with exhibits) in their current form. Also, please either insert your /s signature or confirm that we may do so.

Finally, please note that we do not think the section reciting the text of the RFPs that Plaintiffs added is necessary, given that we had already complied with the local rule by reciting the text of the RFPs at issue. Now, with Plaintiffs' addition, the Joint Stipulation is duplicative because it recites the RFPs multiple times. Nonetheless, we can leave in the section that Plaintiffs added if you insist that it remain.

We look forward to receiving Plaintiffs' confirmation that we may file tomorrow.

Thanks very much,

Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, April 29, 2020 4:42 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Semendyai, Vladimir J. <VSemendyai@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

[External Email]

Counsel,

Attached is Plaintiffs' portion of the Joint Stipulation and a supporting declaration. Please note, we also included a section reciting the text of the RFPs at issue before the Parties' arguments, as required by the Local Rules. Please send us the final version of the filing for our approval to file tomorrow.

Exhibit 3
-26-

Best regards,

Adam

**Adam Powell**

Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Wednesday, April 8, 2020 4:57 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Semendyai, Vladimir J. <VSemendyai@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

Counsel:

Attached please find Apple's portion of the Joint Stipulation, along with the accompanying declaration and exhibits.

We look forward to receiving Plaintiffs' portion by 5 pm on April 29.

Regards,

Ilissa

**Ilissa Samplin**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

**From:** Kaounis, Angelique
**Sent:** Tuesday, April 7, 2020 7:42 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Semendyai, Vladimir J. <VSemendyai@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

Thanks, Adam. We agree. Have a good night.

**Angelique Kaounis**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, April 7, 2020 7:28 PM

Exhibit 3
-27-

**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Semendyai, Vladimir J. <VSemendyai@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>
**Subject:** Re: Masimo et al. v. Apple: meet and confer
[External Email]
Angelique,

Thank you for your email. We agree that Apple may have a 15-day extension to serve its responses to the outstanding RFPs and may provide its portion of the joint stipulation tomorrow. We also agree to both parties providing their portion of the joint stipulations by 5pm. While we appreciate you drafting a stipulation, we actually do not think it is necessary because these extensions do not impact any court deadlines. The parties are always free to provide extensions for discovery responses and Local Rule 37-2.2 describes the joint stipulation schedule "[u]nless the parties agree otherwise." Thus, we prefer to agree to the timeline you suggested below without bothering the Court.

Thanks,

Adam

> On Apr 7, 2020, at 6:49 PM, Kaounis, Angelique <AKaounis@gibsondunn.com> wrote:

Adam,
Just checking in – can you please confirm that the stip is acceptable? Thanks.
**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Kaounis, Angelique
**Sent:** Tuesday, April 7, 2020 3:19 PM
**To:** 'Adam.Powell' <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Cc:** Buroker, Brian M. <BBuroker@gibsondunn.com>; Semendyai, Vladimir J. <VSemendyai@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer
Adam,
Thanks for your email. Apple agrees to Plaintiffs' request for the 14-day extension in exchange for a similar extension of time to serve its responses and objections to Plaintiffs' RFPs. We request, however, that the extension to Apple on the RFP

Exhibit 3
-28-

responses and objections be 15 days so that the schedule for the motion begins tomorrow, and we can finalize some things on our end, including getting a briefing stip on file. While we appreciate that you see the RFP responses and objections as a separate matter, we do not. We timed the protective order motion with the deadline for Apple's responses and objections to Plaintiffs' RFPs in mind—and so if you are asking to change the deadlines for the protective order motion prescribed by the local rules, then we will need Plaintiffs to agree to an extension on the RFP responses that makes their deadline the same as the date on which the parties will file the protective order motion.

In that vein, we propose the following schedule, as also memorialized in the attached draft stipulation:

(1) Apple to send its portion of the joint stipulation on the protective order motion to Plaintiffs by 5 pm on April 8;

(2) Plaintiffs to send their portion of the joint stipulation on the protective order motion to Apple by 5 pm on April 29;

(3) Parties to file the joint stipulation on April 30;

(4) Apple's responses and objections to Plaintiffs' Requests for Production due on April 30.

We are flexible on the times. 5 pm is just a suggestion.


Please let me know if we have an agreement and confirm that we may file the attached stipulation with your consent.

Thank you,

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, April 7, 2020 12:56 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Semendyai, Vladimir J. <VSemendyai@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

[External Email]
Angelique,

Nothing in your email contradicts my summary of our conversation. Among other things, Apple confirmed it will not (or cannot) identify any RFPs that relate solely to the trade secret claims and not to the patent claims. Apple also confirmed that it will not

Exhibit 3
-29-

(or cannot) identify any claims other than the trade secret claim that are "factually dependent" on the misappropriation allegations. Your assertion that this is irrelevant is belied by Apple's own letter, which expressly relied on this legal standard in citing the *CBS* and *Advanced Modular* cases. We do not understand why you would be surprised or assert it is "not well taken" for us to ask Apple about a legal standard that Apple included in its own letter.

As for the extension, Apple continues to apply extensions in an inappropriate and non-reciprocal manner. As you know, Apple has requested three extensions in this case (responding to the Complaint, serving Initial Disclosures, and responding to the First Amended Complaint), all of which Plaintiffs granted. When Plaintiffs requested a reciprocal extension to respond to Apple's first motion to dismiss, Apple offered a mere 4-day extension in exchange for a 10-day extension on Apple's reply brief. When Plaintiffs requested a reciprocal extension to respond to Apple's anticipated second motion to dismiss, Apple again offered a non-reciprocal extension while simultaneously demanding expedited treatment of Apple's motion for protective order. We pointed out that this appeared to be an improper tactical request for extension and suggested the parties deal with both issues together. Apple responded by accusing us of being unprofessional and conflating two separate issues. Despite our better judgment, we granted Apple the requested extension "based on our understanding that Apple will start agreeing to similar courtesies, including an extension of time on Apple's requested motion for protective order if we believe that is necessary."

Against that backdrop, we requested a reasonable two-week extension of time for a total of three weeks to respond to Apple's anticipated motion for protective order. That is less time than Plaintiffs provided to Apple in all three of Apple's requested extensions. In particular, we provided a 30-day extension on the initial Complaint (more than 7 weeks total), a 3-week extension on the Initial Disclosures (5 weeks total), and a 12-day extension to respond to the First Amended Complaint (26-days total). We also originally agreed to a 14-day extension of time to respond to the First Amended Complaint, but settled on a mutual 12-day extension based on Apple's desire not to prepare its reply brief over memorial day. We agreed to the last extension even though we believed Apple did not need that much time because its second motion to dismiss appeared to be a subset of its first motion to dismiss. Despite those courtesies, Apple now offers only a 1-week extension (2-weeks total), demands we respond in less than one business day, and threatens to serve its portion of the joint stipulation if we do not respond by 2pm even though nothing requires Apple to do so today.

Please confirm Apple will agree to the requested 14-day extension. While we believe the deadline to respond to Plaintiffs' RFPs is a separate matter, we will agree Apple may have the same 14-day extension if Apple needs it.

Best regards,

Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Tuesday, April 7, 2020 7:48 AM

Exhibit 3
-30-

**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Perry.Oldham <Perry.Oldham@knobbe.com>; Buroker, Brian M.
<BBuroker@gibsondunn.com>; Semendyai, Vladimir J.
<VSemendyai@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>;
Samplin, Ilissa <ISamplin@gibsondunn.com>; Lyon, H. Mark
<MLyon@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson
<Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

Adam,

We write in response to your email. We respond to the substance of the points you
raise below.

First, as threshold matter, you stated that the parties would not agree on the
applicability of Section 2019.210 here. We therefore are unclear why you seem
surprised that we are moving forward with the motion for protective order.
Second, Section 2019.210 states that in "any action alleging the misappropriation
of a trade secret under [CUTSA], before commencing discovery *relating* to the
trade secret, the party alleging misappropriation shall identify the trade secret
with reasonable particularity . . . ." *Id.* (emph. added). Thus, Apple's position that
Plaintiffs cannot take discovery "relating" to the alleged secrets until they identify
the alleged trade secrets with reasonable particularity is fully supported by the
law, including the plain language of the statute itself.

Third, you are correct that RFPs 5-25 relate to the secrets. They do not just relate
in some vague "way." To the contrary, these RFPs seek discovery of documents
that the FAC expressly alleges are trade secrets. For example, as we mentioned on
the call, Request No. 13 seeks "All documents and things that refer or relate to
*technical information, specifications*, and research *data* for any of the Accused
Products" (emphases added). Plaintiffs' FAC alleges (at para. 211) that their vastly
overbroad trade secrets include "technical information" such as "technical
specifications, [and] technical data." Similarly, Request No. 12 seeks "All *technical
documents* for the Accused Products, including, without limitation, product
*specifications*, ... conceptual or *technical drawings*, *design requirements* documents,
*design capture documents*, technical requirements documents, *product briefs*,
*product plans*, product requirements, document trees, *assembly design documents*,
*design review documents*, *system design documents*, fabricating drawings,
*manufacturing documents*, and technical meeting minutes" (emphases added).
Again, Plaintiffs' FAC alleges (at para. 211) that their trade secrets include "design
captures, assembly design requirements," "product briefs, technical drawings,"
"product plans," "design review documents," "system designs," and
"manufacturing techniques and procedures." These few examples make
abundantly clear that Plaintiffs' requests seek discovery "related to" their alleged
trade secrets.

Fourth, when you asked about RFPs "solely related to the trade secrets," you did
not cite any case holding that "solely related" is the appropriate standard. It is not.
And when we asked you how we should determine the scope of discovery without
an adequate trade secret disclosure—given the broad categories alleged in the

Exhibit 3
-31-

FAC—you suggested that we should simply ask what discovery is relevant to the
patent claims. Given that Plaintiffs have more than once—including on our meet
and confer today—suggested that Apple is attempting to delay discovery and
refused to provide a trade secret disclosure, we want to be clear that we cannot at
this point identify requests that "solely" relate to the trade secrets, and we believe
that your request that we do so is needlessly delaying the Court's ruling on the
legal issue here, which is *not* whether the discovery is solely related to trade
secrets.

Fifth, your suggestion that Apple refused to identify which claims are "factually
dependent" on the trade secrets is not well taken. As we explained to you, our
letter of March 27, 2020 states six times that the test is whether the discovery
**relates** to the alleged trade secrets. You asked us about the *CBS* case, which cites
*Advanced Modular*, in holding that 2019.210 applies to discovery that is aimed at
claims that are dependent or factually dependent on the trade secret allegations.
Far from refusing to answer, we told you our answer was the same. Based on the
allegations in the FAC, the RFPs we identified seek information that relates to—
and is dependent upon—the trade secret allegations. Importantly, with respect to
your demands that we identify the RFPs that are solely related to the trade secret
allegations or factually dependent on the trade secret allegations, you confirmed
that at least some of the patent causes of action are "factually dependent on the
same misappropriation allegations." Specifically, we asked you to confirm that
Plaintiffs are alleging the Apple Watch (Series 4 and 5 and later) incorporates
Plaintiffs' trade secrets, and you responded affirmatively that Plaintiffs were
alleging that those products incorporated "some secrets." Given the FAC's broad
allegation that the 4 and 5 series "includes technology that tracks technologies to
solve some of the performance issues"—and your confirmation that Plaintiffs are
alleging the Watch incorporates some (as yet unidentified) secrets—we are not
sure why Plaintiffs are claiming to be confused about Apple's position.

Sixth, we are not sure why you asked us about Ninth Circuit cases addressing
2019.210. Judge Early recently found that "the Ninth Circuit has not decided
whether Section 2019.210 applies in federal court," and went on to hold that in
that case, "the procedural requirements of Section 2019.210 are warranted and
appropriate to assist in the orderly and expeditious handling of discovery." *M/A-
COM Tech. Sols., Inc. v. Litrinium, Inc.*, No. SACV1900220JVSJDEX, 2019 WL
4284523, at *2 (C.D. Cal. June 11, 2019).

Seventh, turning to the question of an interrogatory, as we have explained
multiple times, Plaintiffs' demand that Apple serve an interrogatory is improper.
To begin with, Plaintiffs have never agreed—and are not agreeing now—that
Plaintiffs will not commence discovery relating to trade secrets until they provide
an adequate description of their alleged secrets. That is critical because, as we
explained on the call, there is nothing stopping Plaintiffs from cutting and pasting
the vague description of the secrets in the FAC into an interrogatory response
(served 30 days, if not more, after the interrogatory is propounded) and claiming
that they have complied. This will not solve the lack of disclosure problem—it will
just invite motion practice, which will further delay the process. Therefore,

Exhibit 3
-32-

contrary to Plaintiffs' suggestion that an interrogatory would be faster here, a disclosure pursuant to Section 2019.210 will in fact be faster, as well as more efficient and fair to the parties.

Finally, as for timing, as explained above, Plaintiffs have now argued more than once that Apple is trying to delay discovery. To the contrary, we want to get to the bottom of the trade secret allegations and manage the scope of discovery as quickly as possible. That's why we asked for a disclosure so long ago. It is telling that you conceded that if you can respond to an interrogatory, you should be able to provide a description immediately. In fact, you should have been able to provide one as soon as you filed the original complaint. Regardless, we are not aware of any other information that you have asked us for on this topic, and we understood that you believe there is an unsurmountable issue as to whether Section 2019.210 applies here, even as a case management tool. Therefore, we believe the meet-and-confer process has culminated, and that the parties should move as quickly as possible to seek judicial intervention to resolve this issue. We are not sure why you would need two weeks in addition to the week provided for under the rules, particularly given that the parties have been conferring about these issues for weeks now. Nonetheless, in the interest of mutual courtesy, why don't Plaintiffs take one week in addition to the week provided under the rules, and we will take one additional week to respond to Plaintiffs' first set of RFPs? Please let us know if that works, and we will prepare a stipulation to that effect. If we don't receive your confirmation that you are willing to extend the deadline for the responses by 2 pm Pacific, we will serve Apple's portion of the Joint Stip. by EOD and proceed with the briefing schedule set by the Local Rules.

Thanks very much,
Angelique
**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, April 6, 2020 7:38 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Semendyai, Vladimir J. <VSemendyai@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Subject:** RE: Masimo et al. v. Apple: meet and confer
[External Email]
Angelique, Josh, Brian, and Vlad,
Thank you for meeting with me today. During the meeting, Apple maintained that all

Exhibit 3
-33-

discovery as to any federal claim that merely "relates" to a California state-law misappropriation claim is barred until the plaintiff complies with California procedural law. During the call, I asked which RFPs Apple asserts "relate" to the trade secret allegations. You responded that nearly all of Masimo's RFPS—RFPs 5 to 25—"relate" to the trade secret allegations in some way and are thus barred until Masimo provides a 2019 statement under California law. I attempted to determine whether Apple would at least acknowledge the RFPs seek discovery relevant to Plaintiffs' patent infringement claims. When I specifically asked which, if any, RFPs Apple asserts "relate" solely to the trade secret claims (and not to the patent claims), you said the question was irrelevant, but that you would get back to me.

We also discussed Apple's case citation and assertion in its letter that discovery as to non-trade secret claims is barred if the claims are "factually dependent on the same misappropriation allegations." I asked Apple to identify which claims are "factually dependent" on the misappropriation allegations. Apple refused, arguing the question is irrelevant because all discovery "relating" in any way to a trade secret claim is barred. We disagree and would like to understand the assertions in Apple's letter, including Apple's own assertions regarding the legal standard Apple identified. Please indicate which causes of action are "factually dependent on the same misappropriation allegations."

Apple also indicated it is not aware of any cases from the Ninth Circuit holding that Section 2019.210 should be applied in Federal Court. I again indicated Plaintiffs would be happy to answer an interrogatory asking them to identify their trade secrets. Apple refused to serve such an interrogatory unless Plaintiffs agreed in advance to stay all discovery that Apple believes relates in any way to trade secrets (including patent-related discovery) until Apple agreed (or the Court held) that the interrogatory answer satisfies California state law.

Finally, Apple indicated it plans to serve its portion of the joint stipulation tomorrow, which would make Plaintiffs portion due on April 14. Because the parties are still actively discussing this matter and agreed to get back to each other on various issues, we do not believe it is appropriate to push forward with a joint stipulation tomorrow. If Apple does serve the joint stipulation tomorrow, however, we request a two week extension of time to respond after receiving Apple's portion. We will, of course, agree to a reciprocal extension of time if Apple would like more time to prepare its portion of the joint stipulation.

Best regards,

Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Thursday, April 2, 2020 9:42 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>;

Exhibit 3
-34-

Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>

**Subject:** RE: Masimo et al. v. Apple: meet and confer

Hi Adam,

Yes, Monday at 4 pm will work. We will circulate a dial in.

Thanks.

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, April 2, 2020 7:17 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Lyon, H. Mark <MLyon@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Subject:** Re: Masimo et al. v. Apple: meet and confer

[External Email]

Angelique,

I won't be able to meet tomorrow. Are you available on Monday at 4pm?

Thanks,

Adam

> On Apr 2, 2020, at 5:26 PM, Kaounis, Angelique <AKaounis@gibsondunn.com> wrote:
>
>
> Hi Adam,
> Just following up on the below. Will you be able to meet and confer with us tomorrow regarding Apple's proposed Protective Order motion? If so, please let us know what time works.
> Thanks very much,
> Angelique
> **Angelique Kaounis**
>
> ## GIBSON DUNN
>
> Gibson, Dunn & Crutcher LLP
> 2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
> Tel +1 310.552.8546 • Fax +1 310.552.7026
> AKaounis@gibsondunn.com • www.gibsondunn.com
>
> **From:** Adam.Powell <Adam.Powell@knobbe.com>

Exhibit 3
-35-

**Sent:** Monday, March 30, 2020 6:54 PM
**To:** Kaounis, Angelique <[AKaounis@gibsondunn.com](mailto:AKaounis@gibsondunn.com)>
**Cc:** Lyon, H. Mark <[MLyon@gibsondunn.com](mailto:MLyon@gibsondunn.com)>; Lerner, Joshua H. <[JLerner@gibsondunn.com](mailto:JLerner@gibsondunn.com)>; Buroker, Brian M. <[BBuroker@gibsondunn.com](mailto:BBuroker@gibsondunn.com)>; Joe.Re <[Joe.Re@knobbe.com](mailto:Joe.Re@knobbe.com)>; Stephen.Larson <[Stephen.Larson@knobbe.com](mailto:Stephen.Larson@knobbe.com)>; Steve.Jensen <[Steve.Jensen@knobbe.com](mailto:Steve.Jensen@knobbe.com)>; Perry.Oldham <[Perry.Oldham@knobbe.com](mailto:Perry.Oldham@knobbe.com)>
**Subject:** RE: Masimo et al. v. Apple: meet and confer

[External Email]

Angelique,

We are investigating the issues and cases raised in this letter and doubt we will be prepared to discuss the issues with you on Tuesday or Wednesday. We will provide our availability for a meet and confer after we have had a chance to complete our review.

Best regards,

Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

**From:** Kaounis, Angelique <[AKaounis@gibsondunn.com](mailto:AKaounis@gibsondunn.com)>
**Sent:** Friday, March 27, 2020 9:18 PM
**To:** Joe.Re <[Joe.Re@knobbe.com](mailto:Joe.Re@knobbe.com)>; Adam.Powell <[Adam.Powell@knobbe.com](mailto:Adam.Powell@knobbe.com)>; Stephen.Larson <[Stephen.Larson@knobbe.com](mailto:Stephen.Larson@knobbe.com)>; Steve.Jensen <[Steve.Jensen@knobbe.com](mailto:Steve.Jensen@knobbe.com)>; Perry.Oldham <[Perry.Oldham@knobbe.com](mailto:Perry.Oldham@knobbe.com)>
**Cc:** Lyon, H. Mark <[MLyon@gibsondunn.com](mailto:MLyon@gibsondunn.com)>; Lerner, Joshua H. <[JLerner@gibsondunn.com](mailto:JLerner@gibsondunn.com)>; Buroker, Brian M. <[BBuroker@gibsondunn.com](mailto:BBuroker@gibsondunn.com)>
**Subject:** Masimo et al. v. Apple: meet and confer

Dear Counsel,

Please see attached.

Thanks very much,

Angelique

**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
[AKaounis@gibsondunn.com](mailto:AKaounis@gibsondunn.com) • [www.gibsondunn.com](http://www.gibsondunn.com)

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by

Exhibit 3
-36-

others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the

Exhibit 3
-37-

firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

<103855731_2 _Apple_Masimo - Stip re Protective Order Motion & RFP Responses.DOCX>

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 3
-38-

# EXHIBIT 4

# Knobbe Martens

**KNOBBE, MARTENS, OLSON & BEAR, LLP**

12790 El Camino Real, Suite 100, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

May 11, 2020

<u>**VIA EMAIL**</u>

Angelique Kaounis
Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067

Re:    Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Angelique:

We write pursuant to Local Rule 37-1 to address deficiencies in Apple's Objections and Responses to Plaintiffs' First Set of Requests For Production.  Plaintiffs' review of Apple's responses is ongoing, and Plaintiffs reserve the right to raise additional issues identified at a later date.

<u>**Section 2019.210**</u>:  Apple objected to each RFP (except for RFP No. 2), as "premature on the ground that Plaintiffs have not identified their purported trade secrets with reasonable particularity, as required by Section 2019.210, and therefore are not permitted to commence such discovery."  The Court's scheduling order "stay[ed] the trade secret discovery ***only*** pending compliance with 2019.210."  Dkt. No. 37 (emphasis added).  Each of Plaintiffs' RFPs 1-25 relate to patent discovery and therefore are not subject to the Court's stay of trade secret discovery ***only***.  As you know, the parties briefed this issue in Apple's pending Motion for Protective Order.  *See* Dkt. No. 43.  Please confirm Apple will abide by the Court's ruling on that Motion or identify any aspect of this objection that Apple believes is not at issue in the Motion for Protective Order.

<u>**Protective Order and ESI Agreement**</u>:  Apple refused to produce any documents until "entry of an acceptable protective order and ESI stipulation in this action."   Apple's position is inconsistent with Apple's assertion that Plaintiffs should provide confidential information prior to entry of a protective order.   Please confirm whether Apple asserts all parties or no party should produce confidential information prior to entry of a protective order.   In addition, please confirm Apple will produce documents that do not require electronic searching pending entry of an ESI stipulation.  Apple also states it will produce only information that is located via search terms.  During the conference of counsel on the ESI agreement, the parties discussed and agreed that search terms alone would ***not*** satisfy their discovery obligations.  Please confirm Apple will withdraw this objection.

<u>**Temporal Scope:**</u>  Apple objects to most of Plaintiffs' RFPs on the ground that they are "vague, ambiguous, overly broad, and unduly burdensome" because the request does not identify a relevant time period.  There is no need for an artificial time limit for any of these requests.  If Apple believes that any particular request should be limited to a specific time period, please identify the request, the proposed time period, the basis for the request, and the basis for withholding responsive documents from outside the time period.

**Boilerplate Objections**: Apple raises other boilerplate objections that are not specific to the requests and do not serve as a basis to withhold relevant discovery.  For example, Apple objects to numerous requests on the ground they seek publicly available documents, or documents that Apple suspects may already be in Plaintiffs' possession.  This is not a basis to withhold relevant discovery.  For further example, Apple objects to certain requests that use "undefined terms" such as but not limited to: "instructional materials," "directions for use," "concerning," "evaluating," "training manuals," "training videos," "marketing materials," "promotional materials," internet postings," "physiological monitoring features," "physiological parameter," "heart rate algorithms," and "adhesives."  There is no need to define such terms.  Apple should respond to these requests using the plain and ordinary meaning of these terms.  Please confirm Apple is not using these objections as a basis to withhold requested discovery.

**RFP No. 3-4, 12-25**: Apple objects to these requests on the ground that they are not "limited to the asserted claims . . .."  That is not a basis to withhold discovery.  For example, all efforts to design-around the asserted patents, even if regarding unasserted claims, are relevant and discoverable.  Additionally, the Court already denied Apple's request for an early date requiring Plaintiffs to limit the number of asserted claims.  Please confirm Apple will withdraw this objection and is not relying on it as a basis to withhold documents.

**RFP Nos. 2, 3, and 10**: Apple limited its response to documents "sufficient to show" certain information even though these requests were not so limited.  Please confirm Apple will produce the full scope of requested documents.

**RFP Nos. 5-8, 10-25:** Apple improperly agreed to produce only "public documents."   These requests are not limited to public documents.  Please confirm Apple will produce documents on the full scope of these Requests including non-public documents.

**RFP No. 11, 15-25:** Apple improperly agreed to produce documents responsive to the "unobjectionable scope" of these requests.  Apple's responses include many improper objections discussed throughout this letter.  Please confirm Apple will produce documents on the full scope of these Requests, or state with specificity what responsive documents Apple is withholding and the basis therefore.

**RFP No. 9:** Apple refused to produce responsive documents and states it is willing to meet and confer.  This request seeks clearly relevant documents.  We look forward to discussing Apple's objection.

Please let us know your availability within the next ten days to meet and confer to address the issues raised in this letter.  We suggest doing so when the parties discuss Apple's letter to Plaintiffs' concerning Plaintiffs' responses to Apple's Requests for Production, which Apple sent today.  We are currently reviewing that letter and will provide our availability to meet and confer.

Best regards,

Adam B. Powell

32796726

Exhibit 4
-40-

# EXHIBIT 5

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

1925 Century Park East, Suite 600, Los Angeles, CA 90067
**T** (310) 551-3450

Mark Kachner
Mark.Kachner@knobbe.com

June 2, 2020

<u>**VIA EMAIL**</u>

Ilissa Samplin
Gibson, Dunn & Crutcher LLP
333 South Grand Ave.
Los Angeles, CA 90071

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Angelique:

We write to respond to your May 26, 2020 letter regarding the parties' meet and confer calls on May 19 and May 20, 2020.

As a preliminary matter, we disagree the entirety of the second paragraph of your May 26, 2020 letter, your characterization of Plaintiffs' May 11, 2020 letter, and your commentary on the efficiency of the parties' meet and confer.

## I.  **APPLE'S MAY 11 LETTER**

**<u>Discovery Related to Trade Secrets</u>**: Your letter repeatedly and incorrectly states Plaintiffs have refused to produce trade secret discovery until after the Court lifts the stay on trade secret discovery only.  As explained in my letter to you dated May 22, 2020, "despite the stay, Plaintiffs were not withholding discovery, even for requests related solely to trade secrets."  We also explained that "Plaintiffs will provide their 2019.210 statement and confidential documents after entry of a protective order."  In view of my May 22, 2020, letter, we are confused as to why Apple believes this is a dispute on which the parties have reached an impasse.

**<u>Apple's RFP No. 15</u>**: Plaintiffs maintain their objections to this request as clarified by Apple.  Despite your statement that Apple is "willing to limit the Request," Apple still seeks "documents produced, filed, or served in any litigation or proceeding involving the Asserted Patents or any of their family members."  Apple seeks litigation files and reproduction of all written discovery and document productions, for unrelated lawsuits involving patents not at issue in this case.  Accordingly, Plaintiffs continue to object because, among other things, Apple's request is overly broad and unduly burdensome, is not reasonably tailored to the issues in this case, and thereby seeks documents neither relevant to any claim or defense in this litigation nor proportional to the needs of the case.

**<u>Apple's RFP No. 17</u>**: Subject to Plaintiffs' objections, Plaintiffs will produce non-privileged documents sufficient to show actual or constructive notice to Apple of any alleged infringement of the Asserted Patents, located after a reasonable search that are within their possession, custody, or control.

**Apple's RFP Nos. 24-25**: Subject to Plaintiffs' objections, Plaintiffs will produce documents sufficient to identify the departments within Masimo and Cercacor.

**Apple's RFP No. 33**: Subject to Plaintiffs' objections, Plaintiffs will produce non-privileged documents and communications concerning the inventorship of the inventions claimed in the Asserted Patents, including documents concerning each inventor's contribution to the Asserted Patents, located after a reasonable search that are within their possession, custody, or control.

**Apple's RFP No. 34**: As we've discussed, Apple's requests that broadly seek documents about all counterparts to the Asserted Patents are overbroad and unduly burdensome, not reasonably tailored to the issues in this case, and thereby seek documents neither relevant to any claim or defense in this litigation nor proportional to the needs of the case.  Subject to Plaintiffs' objections, Plaintiffs agree to produce non-privileged, non-litigation communications concerning each attempt by Plaintiffs or any Licensee—whether successful or unsuccessful—to assign, license, or enforce any of the Asserted Patents, located after a reasonable search that are within their possession, custody, or control.

**Apple's RFP No. 38**: As we've discussed and like Plaintiffs' objections to Apple's RFP No. 34, Apple's requests that broadly seek documents about all counterparts to the Asserted Patents are overbroad and unduly burdensome, not reasonably tailored to the issues in this case, and thereby seek documents neither relevant to any claim or defense in this litigation nor proportional to the needs of the case. Subject to Plaintiffs' objections, Plaintiffs agree to produce Prior Art that is relevant to the validity, invalidity, enforceability, or unenforceability of the Asserted Patents, located after a reasonable search that are within their possession, custody, or control.

**Apple's RFP No. 44**: Your May 26th letter does not address the issue raised in our earlier May 22nd letter on this request.  Plaintiffs have explained that the only practical way to search for responsive documents for this request is by using ESI search terms and custodians.  Apple previously agreed to consider whether it would agree that electronic searching would satisfy this request.  Please let us know your position.

**Apple's RFP Nos. 45-46**: As we've discussed and like Plaintiffs' objections to Apple's RFP No. 34 and 38, Apple's requests that broadly seek documents about all counterparts or "family members" of the Asserted Patents are overbroad and unduly burdensome, not reasonably tailored to the issues in this case, and thereby seek documents neither relevant to any claim or defense in this litigation nor proportional to the needs of the case.

**Apple's RFP Nos. 47, 48, 49, 50, and 52**: Further to Plaintiffs' prior objections and responses, Plaintiffs agree to produce agreements involving transfer of rights in the Asserted Patents, agreements specifically tied to licensing revenue for the Asserted Patents, as well as any agreements regarding a specific financial interest in this lawsuit distinct from any general financial interest in the Plaintiffs themselves, that such agreements are located after a reasonable search.

**Apple's RFP Nos. 58-59**: Subject to Plaintiffs' objections, Plaintiffs will produce non-privileged representative documents evidencing confidentiality obligations owed by employees, contractors, or third parties to Plaintiffs with respect to Plaintiffs' asserted trade secrets, located after a reasonable search that are within their possession, custody, or control.

Exhibit 5

-42-

**Apple's RFP No. 62**: In response to Apple's amended RFP No. 62, subject to Plaintiffs' prior objections, Plaintiffs will produce responsive non-privileged documents located after a reasonable search that are within their possession, custody, or control.

**Apple's RFP No. 63**: Apple's May 26th letter did not address Plaintiffs objection that this request is overbroad and not proportional to the needs of the case, since it seeks all communications between certain individuals, even communications unrelated to any issue in the case.  Plaintiffs suggested limiting this request (as well as RFP No. 72) to communications relevant to issues in this case.  Apple narrowed RFP No. 72, but Apple did not respond to Plaintiffs' proposal on this RFP.

**Apple's RFP No. 65 and 67**: Your characterization of Plaintiffs' position is incorrect.  As we have explained numerous times, Plaintiffs are not withholding documents based on the stay of trade secret discovery only.  Plaintiffs have also explained they will provide their 2019.210 statement and other confidential information after entry of a protective order.

**Apple's RFP No. 69**: In response to Apple's amended RFP No. 69, subject to Plaintiffs' prior objections, Plaintiffs will produce responsive non-privileged documents located after a reasonable search that are within their possession, custody, or control.

**Apple's RFP No. 72**: In response to Apple's amended RFP No. 72, subject to Plaintiffs' prior objections, Plaintiffs will produce responsive non-privileged documents located after a reasonable search that are within their possession, custody, or control.

## II.  PLAINTIFFS' MAY 11 LETTER

**Objections to Producing Documents Beyond Those Located by Custodian and Keyword Searching (RFP Nos. 1-4, 7, 8, and 10-25)**: Plaintiffs have repeatedly asked Apple to confirm it agrees that using search terms alone to identify responsive documents would not satisfy Apple's discovery obligations.  Rather than confirm, in Apple's latest edits to the ESI Protocol, Apple changed the ESI Protocol to state that the parties agree search terms "may" not satisfy their discovery obligations.  This confirms that Apple maintains its position that using search terms and custodians alone to identify responsive documents will satisfy Apple's discovery obligations in at least some circumstances.  Accordingly, we repeat our prior request raised during the meet and confer and reiterated in my May 22, 2020 letter – please specifically identify which of Plaintiffs RFPs Apple believes could be responded to based only on searching for ESI documents by custodian and search terms.

**Production of Non-Public Documents (RFP Nos. 5-8 and 10-25)**: We continue to disagree with Apple's position on the scope of the Court's trade secret only discovery stay.  This issue has been briefed to the Court in Apple's Motion for a Protective Order.

**Apple's Objection to Requests Not Limited To the Asserted Claims in the First Amended Complaint (General Objection 6-7 and RFP Nos. 3-4, 12-25)**:  Apple has now withdrawn this objection for Plaintiffs' RFPs Nos. 3-4, but Apple maintains this objection for Plaintiffs' RFPs Nos. 12-25 and stated that it intends to withhold any documents that are relevant specifically to any claim not asserted in this action.  Apple could not explain how this objection would impact Apple's document collection process or Apple's process for determining whether to produce a responsive document,

Exhibit 5
-43-

particularly given that (1) the First Amended Complaint asserts patents but does not yet identify asserted claims, and (2) Plaintiffs have not yet narrowed the asserted patents to identify any unasserted claims. For Plaintiffs' RFPs Nos. 12-25, the parties are at an impasse on this issue.

**Plaintiffs' RFP No. 9**: The parties are at an impasse regarding Apple's refusal to produce documents Apple determines are publicly available.

Best regards,

Mark D. Kachner

32886275

Exhibit 5
-44-

# EXHIBIT 6

| From: | Mark.Kachner |
|-------|--------------|
| To: | Samplin, Ilissa |
| Cc: | Masimo.Apple; Adam.Powell; Lerner, Joshua H.; Lyon, H. Mark; Buroker, Brian M.; Rosenthal, Brian A.; Kaounis, Angelique; Steve.Jensen; Joe.Re; Perry.Oldham; Stephen.Larson; Morgan, Tracy A. |
| Subject: | RE: Masimo v. Apple - Meet and Confer |
| Date: | Wednesday, June 3, 2020 9:24:42 AM |

Ilissa,

There is no moving target.  Plaintiffs have consistently articulated the same position.

The Court stayed discovery regarding trade secrets only, whether requested by Apple or Plaintiffs.  Despite the stay, Plaintiffs are not withholding any discovery on the basis of the stay.  Plaintiffs are not withdrawing their objection, they are simply not withholding documents or information on the basis of their objection.

Both parties articulated they will produce confidential information and documents after entry of a protective order.  Accordingly, Plaintiffs will provide their confidential portions of their discovery responses after entry of a protective order.  Separately, Plaintiffs will provide their confidential 2019.210 statement after entry of a protective order.

Regards, Mark

**Mark Kachner**
Partner

310-407-3472 **Direct**

**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Tuesday, June 2, 2020 7:56 PM
**To:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** Re: Masimo v. Apple - Meet and Confer

Mark,

We are confused about your position on trade secret-related documents, as it has been a moving target during the course of these meet and confers.

During our meet and confer calls, you stated Plaintiffs' position (that the trade secret-related stay goes both ways—which, of course, Apple disagrees with), but noted that for certain trade secret-related document requests, Plaintiffs will produce responsive documents despite the stay.  You were

Exhibit 6
-45-

clear, however, that Plaintiffs would not be producing documents in response to *all* of Apple's trade secret-related requests now, in light of Plaintiffs' position on the stay.  Are you now saying that your May 22 letter evinces a change in that position—such that Plaintiffs do not in fact intend to withhold or delay the production of any trade secret-related discovery based on their position on the stay?  In other words, Plaintiffs are not withholding responsive documents to Apple's trade secret-related RFPs on the basis of Judge Early's stay, and so that objection is withdrawn?  We need you to articulate Plaintiffs' position on this as soon as possible because it has been less than clear.

Relatedly, you wrote in your May 22 letter that "for certain requests [Plaintiffs are] unable to provide responsive documents at this time, such as Apple's request to produce documents sufficient to show Plaintiffs' trade secrets, until after Plaintiffs serve the 2019.210 statement and after entry of a protective order."  We need you to identify each Apple request for which plaintiffs are "unable to provide responsive documents at this time . . . until after Plaintiffs serve the 2019.210 statement and after entry of a protective order."  A "such as" reference is not productive in the context of a meet and confer like this one, where Apple is trying in good faith to understand the full scope of Plaintiffs' positions so that it can determine whether there is a need for court intervention.

We are reviewing the balance of your letter and will be back in touch about those portions.  We would appreciate your prompt response on these trade secret-related questions—ideally, in advance of our 1:15 pm call tomorrow so that we can discuss any follow-up then.

Thank you,
Ilissa

**Ilissa Samplin**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 ● Fax +1 213.229.6354
ISamplin@gibsondunn.com ● www.gibsondunn.com

On Jun 2, 2020, at 1:12 PM, Mark.Kachner <Mark.Kachner@knobbe.com> wrote:

 [External Email]
Ilissa,

Please see the attached response letter.

Regards, Mark

**Mark Kachner**
Partner
310-407-3472 **Direct**

Exhibit 6
-46-

**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Tuesday, May 26, 2020 4:24 PM
**To:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Cc:** Adam.Powell <Adam.Powell@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>
**Subject:** RE: Masimo v. Apple - Meet and Confer

Mark,

Attached please find our response to your letter, including further follow-up to the parties' meet and confers last week.

Thanks,
Ilissa

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Sent:** Friday, May 22, 2020 2:00 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Adam.Powell <Adam.Powell@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>
**Subject:** RE: Masimo v. Apple - Meet and Confer

[External Email]
Ilissa,

Exhibit 6
-47-

The attached letter is a follow-up to the parties' meet-and-confer this week.

Regards, Mark

**Mark Kachner**
Partner
310-407-3472 **Direct**
**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Friday, May 15, 2020 8:40 PM
**To:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Cc:** Adam.Powell <Adam.Powell@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>
**Subject:** RE: Masimo v. Apple - Meet and Confer

Counsel,

Please see the attached letter in response to Plaintiffs' May 11th letter.  May 19th at 1:30 pm PT works for the meet and confer; thank you for accommodating the time change.  We can use this dial in:



Have a nice weekend,
Ilissa

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Sent:** Friday, May 15, 2020 6:09 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Adam.Powell <Adam.Powell@knobbe.com>; Lerner, Joshua H.

Exhibit 6
-48-

<JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com> Kaounis, Angelique <AKaounis@gibsondunn.com>; Steve.Jensen <Steve.Jensen@knobbe.com> <Joe.Re <Joe.Re@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>

**Subject:** RE: Masimo v. Apple - Meet and Confer

[External Email]
Counsel,

Please see the attached letter in response to Apple's May 11th discovery letter.  Please let us know about your availability for the meet and confer on May 19.

Regards, Mark

**Mark Kachner**
Partner
**310-407-3472** Direct



INTELLECTUAL PROPERTY LAW

**five decades. one focus.**

---

**From:** Samplin, Ilissa [mailto:ISamplin@gibsondunn.com]
**Sent:** Thursday, May 14, 2020 5:39 PM
**To:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Cc:** Adam.Powell <Adam.Powell@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com> Kaounis, Angelique <AKaounis@gibsondunn.com>; Steve.Jensen <Steve.Jensen@knobbe.com> <Joe.Re <Joe.Re@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>
**Subject:** RE: Masimo v. Apple - Meet and Confer

Mark,
Can your team make some time available earlier in the day on Tuesday, May 19?  We have team members joining from the east coast.  The Wednesday time is fine, and agreed on the letter exchange tomorrow.
I obviously reject the other characterizations in your email below, but I'm not going to spend time going into that here.
Thanks,
Ilissa

**Ilissa Samplin**

Exhibit 6
-49-

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

**From:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Sent:** Thursday, May 14, 2020 7:17 AM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Adam.Powell <Adam.Powell@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>
**Subject:** RE: Masimo v. Apple - Meet and Confer

[External Email]
Ilissa,

To the extent you are insinuating there is something inappropriate about the timing of Plaintiffs' LR 37-1 letter, we reject that as baseless.  Further, in your May 11th letter, as you have repeatedly done in this case, you set a tight artificial deadline and demanded a meet and confer on many issues on less than 24-hours notice.  We are available to meet and confer on Tuesday May 19th after 3:30pm PT to discuss the issues raised in both parties' May 11th discovery letters.  To the extent we cannot complete the meet-and-confers on the 19th, we are available to continue the meet and confer on Wednesday May 20th starting at 10am PT.  We also agree that this Friday the parties will exchange written responses to each other's May 11th letters.


Regards, Mark


**Mark Kachner**
Partner

310-407-3472 **Direct**

**Knobbe Martens**
INTELLECTUAL PROPERTY LAW
**five decades. one focus.**


Begin forwarded message:

>   **From:** "Samplin, Ilissa" <ISamplin@gibsondunn.com>
>   **Date:** May 12, 2020 at 7:49:00 PM PDT

Exhibit 6
-50-

**To:** "Adam.Powell" <Adam.Powell@knobbe.com>, "Lerner, Joshua H." <JLerner@gibsondunn.com>, "Lyon, H. Mark" <MLyon@gibsondunn.com>, "Buroker, Brian M." <BBuroker@gibsondunn.com>, "Rosenthal, Brian A." <BRosenthal@gibsondunn.com>, "Kaounis, Angelique" <AKaounis@gibsondunn.com>
**Cc:** "Steve.Jensen" <Steve.Jensen@knobbe.com>, "Joe.Re" <Joe.Re@knobbe.com>, "Perry.Oldham" <Perry.Oldham@knobbe.com>, "Stephen.Larson" <Stephen.Larson@knobbe.com>
**Subject: RE:  Masimo v. Apple - Meet and Confer**


Adam,

We sent you Apple's letter about Plaintiffs' deficient RFP responses yesterday morning (attached).  For the avoidance of doubt, that letter is our 37-1 letter.  We did not hear back from you about our proposed meet and confer time until hours later, after your team had pulled together a 37-1 letter of your own—in an effort to get these disputes on parallel tracks.  We are willing to agree to your request that the meet and confers take place at the same time.  Having said that, we believe the conversation will be most productive if the parties exchange written responses to the letters in advance of a call.  We propose that the parties exchange written responses on Friday, May 15, and that we schedule a call for Monday, May 18 – all within the Local Rule 37-1 ten day time period for both our disputes, which began running yesterday.  If that works for you, please propose a time on May 18 for the call.

Thank you,
Ilissa

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, May 11, 2020 10:09 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique

Exhibit 6 -51-

<AKaounis@gibsondunn.com>
**Cc:** Steve.Jensen <Steve.Jensen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>
**Subject:** Masimo v. Apple - Meet and Confer


[External Email]
Counsel,

Please see my attached letter.

Best regards,
Adam

**Adam Powell**
Partner
**858-707-4245 Direct**
**Knobbe Martens**


NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Exhibit 6
-52-

Please see our website at https://www.gibsondunn.com/ for information regarding
the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain
confidential and privileged information. Any unauthorized review, use, disclosure or
distribution is prohibited. If you are not the intended recipient, please contact the sender by
reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use
of the intended recipient. Any review, disclosure, distribution by others or
forwarding without express permission is strictly prohibited. If it has been sent to
you in error, please reply to advise the sender of the error and then immediately
delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding
the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain
confidential and privileged information. Any unauthorized review, use, disclosure or
distribution is prohibited. If you are not the intended recipient, please contact the sender by
reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use
of the intended recipient. Any review, disclosure, distribution by others or
forwarding without express permission is strictly prohibited. If it has been sent to
you in error, please reply to advise the sender of the error and then immediately
delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding
the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain
confidential and privileged information. Any unauthorized review, use, disclosure or
distribution is prohibited. If you are not the intended recipient, please contact the sender by
reply email and destroy all copies of the original message.

<2020-06-02 - MDK to Ilissa re RFP follow-up.pdf>

This message may contain confidential and privileged information for the sole use of the
intended recipient. Any review, disclosure, distribution by others or forwarding without
express permission is strictly prohibited. If it has been sent to you in error, please reply to
advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm
and/or our privacy policy.

Exhibit 6
-53-

EXHIBIT 7

| From: | Mark.Kachner |
|---|---|
| To: | Samplin, Ilissa; Perry.Oldham; Adam.Powell; Joe.Re; Steve.Jensen; Masimo.Apple |
| Cc: | Lerner, Joshua H.; Lyon, H. Mark; Buroker, Brian M.; Kaounis, Angelique; Rosenthal, Brian A.; Morgan, Tracy A. |
| Subject: | RE: Masimo v. Apple - Plaintiffs" Responses to Apple"s First Set of Interrogatories |
| Date: | Friday, June 12, 2020 8:38:08 AM |

Ilissa,

Apple has been the cause of any delay in this case, not Plaintiffs.  Apple has continued to refuse any discovery, including as to patent issues for which discovery is not stayed.  Apple has not yet produced a single document, and refuses to produce confidential documents until the Court enters a protective order, notwithstanding Plaintiffs' repeated offers to maintain those documents as attorneys-eyes-only pending entry of an order.  Apple also delayed submission of such an order by insisting on many changes to Judge Early's Model Order and delaying its responses to Plaintiffs' repeated attempts to compromise.  In contrast, Plaintiffs have already started producing documents.  Moreover, Plaintiffs simply asked for reciprocal treatment of confidential information – that both parties produce confidential information and treat such information as attorneys' eyes only pending entry of a protective order.  Apple repeatedly rejected any reciprocal approach.

Nothing supports Apple's demand that Plaintiffs provide a date certain by which they will serve any 2019.210 statement.  As we have repeatedly explained, Judge Selna's order did not require a 2019.210 statement at all, much less by a date certain.  During prior conferences of counsel, Apple admitted that nothing requires Plaintiffs to serve a 2019.210 statement by a date certain.  Moreover, Apple already filed a motion with Judge Early seeking such relief, despite admitting it was not required by Judge Selna.  That motion has also not been granted.  Even though it is not required, Plaintiffs explained they are willing to negotiate an appropriate reciprocal timeline.  However, Apple flatly refused to "negotiate a reciprocal timeline."

Apple's ongoing refusal to meet its discovery obligations is prejudicing Plaintiffs' ability to prepare their case.  Based on Apple's positions discussed herein, we are concerned that Apple may not comply with its Court-ordered obligation to provide core technical documents on June 15, introducing further delay.  We expect Apple to comply with its obligations and reserve all our rights in the event that Apple fails to comply with the June 15 deadline.

Regards, Mark

**Mark Kachner**
Partner

310-407-3472 Direct

**Knobbe** **Martens**
INTELLECTUAL PROPERTY LAW

**five decades. one focus.**

---

**From:** Samplin, Ilissa [mailto:ISamplin@gibsondunn.com]
**Sent:** Wednesday, June 10, 2020 1:52 PM
**To:** Mark.Kachner <Mark.Kachner@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>;

Exhibit 7
-54-

Adam.Powell <Adam.Powell@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Plaintiffs' Responses to Apple's First Set of Interrogatories

Mark,

Plaintiffs are continuing to delay the progress of this case.  Your suggestion that trade secret discovery should be reciprocal ties back to your mischaracterization (or misunderstanding) of how Section 2019.210 works.  *Plaintiffs* asserted a trade secret claim in this case.  They may not commence discovery of trade secret-related information until they define their trade secrets with reasonable particularity.  We have been asking Plaintiffs to do so for months, but we still don't even have an attempt at a Section 2019.210-compliant disclosure from Plaintiffs.  We are not going to negotiate a reciprocal timeline here.

Please give us a time certain soon after the entry of the protective order when you will provide the 2019.210 statement.  We've told you repeatedly that a "reasonable time period" is not a sufficient response, particularly with respect to the 2019.210 statement we have been requesting since the outset of the case.  We have no idea how Plaintiffs or your law firm defines a "reasonable time period."  Indeed, Judge Selna ruled back on April 17, 2020 that Plaintiffs must provide a 2019.210 statement, and Plaintiffs' sole justification for not yet doing so is that they are awaiting entry of a protective order (even though Apple agreed to treat the disclosure as AEO in the interim). Therefore, you should be in a position to commit to a time certain soon after entry of that protective order.  If you cannot provide a time certain, let us know immediately.

Regards,
Ilissa


**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Sent:** Tuesday, June 9, 2020 12:48 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>;

Exhibit 7
-55-

Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>;
Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Morgan, Tracy A.
<TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Plaintiffs' Responses to Apple's First Set of Interrogatories

[External Email]
Ilissa,

Plaintiffs expect to provide a 2019.210 statement and other confidential information within a
reasonable time period after entry of a protective order.  Obviously, document production will
happen over a period of time consistent with the parties' prior discussions.  Will Apple promptly
provide the extensive discovery it is withholding upon entry of a protective order and service of
Plaintiffs' 2019.210 statement?  We are willing to consider a specific reciprocal timeline.


Regards, Mark


**Mark Kachner**
Partner
310-407-3472 **Direct**
**Knobbe Martens**

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Saturday, June 6, 2020 1:42 PM
**To:** Mark.Kachner <Mark.Kachner@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>;
Adam.Powell <Adam.Powell@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen
<Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>;
Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>;
Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Morgan, Tracy A.
<TMorgan2@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Plaintiffs' Responses to Apple's First Set of Interrogatories

Mark,

Please see the attached letter regarding our meet and confer about Plaintiffs' responses to Apple's
First Set of Interrogatories.

As discussed during the meet and confer, please provide a timeline for how long after entry of a
Protective Order Plaintiffs will provide the trade secret-related information they have been
withholding—including amended interrogatory responses, a Section 2019.210 statement, and
documents.  Plaintiffs were unable to provide a specific timeline during our meet and confer call, but
agreed to discuss internally and revert to Apple with the information requested.  We have requested
this information on multiple occasions now, and for months.  Please provide it by close of business
on Tuesday, June 9.

Thank you,

Exhibit 7
-56-

Ilissa

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

**From:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Sent:** Tuesday, June 2, 2020 1:05 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>;
Adam.Powell <Adam.Powell@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen
<Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>;
Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>;
Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Plaintiffs' Responses to Apple's First Set of Interrogatories

[External Email]
Plaintiffs' Responses to Apple's First Set of Interrogatories.

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Tuesday, June 2, 2020 1:01 PM
**To:** Mark.Kachner <Mark.Kachner@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>;
Adam.Powell <Adam.Powell@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen
<Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>;
Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>;
Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Plaintiffs' Responses to Apple's First Set of Interrogatories

Mark-
Which of my two 5/26 letters are you referring to?  Or are you referring to both?  This will help me
determine who else from my team will be joining, so I can get back to you on time.  Thanks.

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

Exhibit 7
-57-

**From:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Sent:** Tuesday, June 2, 2020 12:59 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Plaintiffs' Responses to Apple's First Set of Interrogatories

[External Email]
I have a noon meeting tomorrow that I expect will spill over past 1p.  I think I'm safe starting at 1:15, otherwise we can start at 3.

**Mark Kachner**
Partner
310-407-3472 **Direct**
**Knobbe** Martens

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Tuesday, June 2, 2020 12:55 PM
**To:** Mark.Kachner <Mark.Kachner@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Plaintiffs' Responses to Apple's First Set of Interrogatories

I have a 2 pm meet and confer in another matter.  Can you start at 1 pm instead?

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Sent:** Tuesday, June 2, 2020 12:50 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>;

Exhibit 7
-58-

Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Plaintiffs' Responses to Apple's First Set of Interrogatories

[External Email]
Ilissa,

We are available to meet and confer on your 5/26 letter tomorrow at 1:30 pm PDT.  Please let me know if that works with your schedule.

Regards, Mark

**Mark Kachner**
Partner
310-407-3472 **Direct**
**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Monday, June 1, 2020 9:11 AM
**To:** Mark.Kachner <Mark.Kachner@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Plaintiffs' Responses to Apple's First Set of Interrogatories

Mark,

Please provide your availability for this meet and confer.  You have had our request for almost a week now.

Would sometime today or tomorrow work?

Thanks,
Ilissa

**Ilissa Samplin**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Sent:** Friday, May 29, 2020 10:52 AM

Exhibit 7
-59-

**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Plaintiffs' Responses to Apple's First Set of Interrogatories

[External Email]
Ilissa,

We are evaluating the issues raised in your 5/26 letter on Plaintiffs' interrogatory responses.  We are not available for your requested meet and confer at the times you requested.  We are looking into our availability next week.

Regards, Mark

**Mark Kachner**
Partner
310-407-3472 **Direct**
**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Tuesday, May 26, 2020 9:49 PM
**To:** Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Plaintiffs' Responses to Apple's First Set of Interrogatories

Counsel:

Please see the attached correspondence.

Regards,
Ilissa

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

7

Exhibit 7
-60-

**From:** Perry.Oldham <Perry.Oldham@knobbe.com>
**Sent:** Thursday, May 14, 2020 8:01 PM
**To:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>
**Subject:** Masimo v. Apple - Plaintiffs' Responses to Apple's First Set of Interrogatories

[External Email]
Counsel,

Please find attached Plaintiffs' Responses to Apple's First Set of Interrogatories.

Best regards,

Perry

**Perry Oldham**
Partner
949-721-2961
**Knobbe Martens**

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Exhibit 7
-61-

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original

Exhibit 7
-62-

message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 7
-63-

# EXHIBIT 8

| From: | Stephen.Larson |
|---|---|
| To: | Samplin, Ilissa; Masimo.Apple; Lerner, Joshua H.; Lyon, H. Mark; Buroker, Brian M.; Kaounis, Angelique; Rosenthal, Brian A.; Morgan, Tracy A. |
| Cc: | Joe.Re; Steve.Jensen; Perry.Oldham; Adam.Powell; Andrea, Brian |
| Subject: | RE: Masimo v. Apple: ex parte application to enforce scheduling order |
| Date: | Thursday, June 18, 2020 2:04:59 PM |

Ilissa,

We disagree with your assertion that we are attempting to "hold Apple to a different standard" than Plaintiffs.  Plaintiffs have repeatedly suggested a reciprocal approach whereby both parties produce confidential information and keep it AEO.  Apple has repeatedly rejected those offers and insisted that Plaintiffs provide confidential information while Apple is not required to do so.

Moreover, Apple should not be surprised that Plaintiffs are seeking this relief.  Plaintiffs raised concerns about Apple complying with this deadline last Friday, and Apple ignored Plaintiffs' email.  Plaintiffs raised this issue again yesterday and Apple ignored that email as well.  I also called you and two other members of your team today to discuss this matter, and no one from your team has called me back.  Further, the parties have extensively discussed these issues in numerous emails and attorney conferences, and are obviously at an impasse.  Indeed, your email again asserts Apple's position that a "Protective Order must be entered before Apple produces any non-public, technical information to Plaintiffs."  We disagree with that position, which will result in substantial delay and prejudice Plaintiffs' ability to provide infringement contentions in accordance with the Scheduling Order.  Given that deadline, and Apple's refusal to produce documents in accordance with the Scheduling Order, *ex parte* relief is more than appropriate under the circumstances.  If you are now suggesting Apple is willing to promptly provide its core technical documents before entry of a formal protective order please let us know by 4 p.m. PST.  If not, we will inform the Court that Apple will oppose Plaintiff's application.

Thanks,
Steve

---

**From:** Samplin, Ilissa [mailto:ISamplin@gibsondunn.com]
**Sent:** Thursday, June 18, 2020 1:10 PM
**To:** Stephen.Larson <Stephen.Larson@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Cc:** Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Subject:** RE: Masimo v. Apple: ex parte application to enforce scheduling order

Steve,

Exhibit 8
-64-

We are surprised by your email.

As you know, Apple's technical information related to the accused products is highly confidential and there is not yet a Protective Order in place.  And both iterations of the Protective Order the parties are proposing (for which we expect to receive Plaintiffs' portion of the joint stipulation tomorrow) include important protections for highly confidential documents like these that extend well beyond the restriction of their use by and disclosure to outside counsel.  A Protective Order must be entered before Apple produces any non-public, technical information to Plaintiffs.  Notably, Plaintiffs have taken the exact same position with respect to their allegedly confidential information.  Plaintiffs have refused to produce complete interrogatory responses, a 2019.210 statement, or trade secret-related discovery until a Protective Order is entered (even though Apple offered to treat such information as attorneys' eyes only pending entry of a Protective Order).  Moreover, Plaintiffs' document productions to date have consisted of entirely public information, pending entry of a Protective Order.  There is no basis for Plaintiffs' inconsistent positions, and blatant attempt to hold Apple to a different standard than the one by which they have been guiding their own discovery conduct.

Nor is there any basis for Plaintiffs to move for ex parte relief.  As the Central District has explained, "ex parte applications are disfavored except in true emergencies."  *Gilliam v. Bank of Am., N.A.*, 2017 WL 11001706, at *1 (C.D. Cal. Aug. 21, 2017).  Given that Plaintiffs are seeking to modify the scheduling order, and if successful, will still have 42 days to file their infringement contentions, there is no "true emergency" here.  Plaintiffs therefore cannot make the requisite good cause showing as to why a regularly-noticed motion would be insufficient.  Moreover, the Central District does not permit the filing of discovery motions on an ex parte basis, which is precisely what Plaintiffs seek to do here (the relief requested in your point 1 below is that of a motion to compel).  *See* L.R. 37-3 ("Unless the Court in its discretion otherwise allows, no discovery motions may be filed or heard on an ex parte basis absent a showing of irreparable injury or prejudice not attributable to the lack of diligence of the moving party.").  Accordingly, a full-fledged meet-and-confer process is required for Plaintiffs' motion.  Plaintiffs have not even attempted to engage in that meet-and-confer process yet —but rather have taken inconsistent positions on productions in the absence of a protective order, while threatening to go to Court within just a few hours of giving Apple notice of the dispute.

Apple is ready and willing to engage in the meet-and-confer process the Local Rules require.  Please let us know your team's availability for a call tomorrow.  If you refuse, and instead move forward with the ex parte, we will be sure to let the Court know that Plaintiffs resisted Apple's requests for a Local Rule-compliant meet and confer.

Thanks,
Ilissa

**Ilissa Samplin**

<span style="color:blue">GIBSON DUNN</span>

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354

Exhibit 8
-65-

ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Stephen.Larson <Stephen.Larson@knobbe.com>
**Sent:** Thursday, June 18, 2020 12:05 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Cc:** Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>
**Subject:** Masimo v. Apple: ex parte application to enforce scheduling order

[External Email]
Counsel,

Plaintiffs intend to file an *ex parte* application today seeking an order (1) requiring Apple to comply with the Scheduling Order by producing core technical documents and (2) modifying the Scheduling Order such that Plaintiffs' infringement contentions are due 42 days after Apple provides such a production.  Please let us know if Apple will oppose.

Thanks,
Steve

**Stephen Larson**
Partner
949-721-5301 **Direct**
**Knobbe Martens**

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 8
-66-

# EXHIBIT 9

| From: | Adam.Powell |
|---|---|
| To: | Samplin, Ilissa; Kaounis, Angelique; Lerner, Joshua H. |
| Cc: | Masimo.Apple; *** Apple-Masimo |
| Subject: | RE: Masimo v. Apple - Core technical documents and infringement contentions |
| Date: | Thursday, July 9, 2020 12:19:43 PM |

Ilissa,

Apple's deadline to produce core technical documents was nearly one month ago on June 15.  Thus, Apple's proposal to "discuss a production timeline" continues to flout that deadline.  What is Apple's basis for continuing to refuse to provide core technical documents?

Plaintiffs' Section 2019.210 statement is a different issue with no due date.  Nonetheless, Plaintiffs will provide that statement in due course.

Your email also ignores my second question concerning confidential information for infringement contentions.  Please confirm immediately that Apple will rely solely on public information for its non-infringement positions in this case.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Thursday, July 9, 2020 12:01 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Core technical documents and infringement contentions

Adam,

Thank you for your email.  While we are happy to discuss a production timeline with you in response to your inquiries below, we note that it has now been nearly six months since we first asked for Plaintiffs' Section 2019.210 disclosure.  As you note below, Judge Early entered a protective order last week, and we still have not received Plaintiffs' Section 2019.210 disclosure.  Please let us know when Plaintiffs will produce this document, which you previously agreed to produce after a protective order was entered.

Thanks,
Ilissa
**Ilissa Samplin**

Exhibit 9
-67-

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, July 8, 2020 10:32 AM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>;
Lerner, Joshua H. <JLerner@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>
**Subject:** Masimo v. Apple - Core technical documents and infringement contentions

[External Email]
Counsel,

It has now been nearly a month since Apple ignored the Court's June 15 deadline for Apple to
produce its "core technical documents."  In response to Plaintiffs' *ex parte* application to enforce
that deadline, Apple pointed to the lack of a formal protective order.  Dkt. 56 at 7-9.  Apple
specifically represented that it was **not** relying on Section 2019.210 to withhold such documents.  *Id.*
at 7 n.2.  The Court denied Plaintiffs' application without prejudice and ordered the parties to
promptly submit their protective order disputes to Judge Early, who entered a protective order a
week ago.  Despite this, Apple has still not produced a single additional document.  Moreover, in its
reply brief filed on Monday, Apple appeared to indicate it will withhold core technical documents
until after the parties litigate the sufficiency of Plaintiffs' Section 2019.210 disclosure.  Dkt. 71 at 10.

Apple's ongoing refusal to comply with the Court's Scheduling Order is prejudicial to Plaintiffs,
contrary to Apple's express representations to the Court, and contrary to Judge Selna's and Judge
Early's rulings declining to stay patent discovery.  Please let us know by noon tomorrow Apple's
position as to the "core technical documents" required by the Scheduling Order, including when
Apple will comply with that deadline.

Additionally, Apple's portion of the joint submission to Judge Selna on Friday argued that Plaintiffs
do not require confidential technical documents to prepare infringement contentions.  Dkt. 69 at 9.
Based on that argument, please also confirm by noon tomorrow that Apple will rely solely on public
information for its non-infringement positions in this case.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

Exhibit 9
-68-

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 9
-69-

# EXHIBIT 10

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | Samplin, Ilissa |
| **Cc:** | Masimo.Apple; *** Apple-Masimo |
| **Subject:** | Masimo v. Apple - Ex Parte |
| **Date:** | Friday, July 10, 2020 4:12:10 PM |

Ilissa,

We write in response to Apple's request to stay enforcement of Judge Early's Order denying Apple's Motion for Protective Order.  We have considered the matter and do not agree to Apple's request. Please indicate in Apple's *ex parte* application that Plaintiffs will oppose.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

Exhibit 10
-70-

# EXHIBIT 11

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | Samplin, Ilissa; Mark.Kachner; Masimo.Apple |
| **Cc:** | Lerner, Joshua H.; Lyon, H. Mark; *** Apple-Masimo |
| **Subject:** | RE: Masimo v. Apple - Section 2019.210 disclosure and amended interrogatory responses |
| **Date:** | Wednesday, July 15, 2020 10:59:29 AM |

Ilissa,

You still have not answered the questions I asked last week.  You cannot expect us to drop everything and respond in a single business day to your requests while ignoring our questions for a week.  Please provide an answer to the following questions as soon as possible.

1. What is Apple's basis for continuing to refuse to provide technical documents?
2. Will Apple confirm it will rely solely on public information for its non-infringement positions in this case?

As you know, Plaintiffs' amended complaint is due July 25.  Plaintiffs will agree to supplement their interrogatory answers within two weeks of filing the amended complaint.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Tuesday, July 14, 2020 9:40 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Section 2019.210 disclosure and amended interrogatory responses

Counsel:

We did not receive a response to the email below.  Please confirm, by **10 am PT tomorrow**, whether Plaintiffs will in fact serve their Section 2019.210 disclosure and amended responses to Apple's Interrogatory Nos. 5 through 13, and 17, by June 22, 2020.  We need to know where things stand on these matters as soon as possible, given that the parties have been meeting and conferring about all of them for months now—and Plaintiffs' only purported impediment to production was the absence of a protective order, which has now been entered.

We look forward to your prompt response.

Exhibit 11
-71-

Thank you,
Ilissa
**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Samplin, Ilissa
**Sent:** Monday, July 13, 2020 11:22 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo v. Apple - Section 2019.210 disclosure and amended interrogatory responses

Counsel:

You have repeatedly represented that "despite the stay" pertaining to trade secret discovery that you mistakenly contend applies to all parties, "Plaintiffs were not withholding discovery, even for requests related solely to trade secrets"—but rather, that "Plaintiffs will provide their 2019.210 statement and confidential documents after entry of a protective order." (5/22/20 Kachner Ltr.; 6/2/20 Kachner Ltr.)  You likewise have represented that Plaintiffs would produce responsive documents, and amend numerous deficient interrogatory responses, upon entry of a protective order.  (*See, e.g.,* 6/6/20 Samplin Ltr. confirming parties' 6/3/20 meet and confer.)  As you know, the Protective Order was entered two weeks ago.  Plaintiffs nonetheless are still withholding their Section 2109.210 disclosure, as well as documents and information responsive to Apple's trade secret-related and other discovery requests.  There is no justification for Plaintiffs' continued withholding of this relevant and responsive information.

For starters, please confirm that by no later than July 22, 2020, Plaintiffs will produce a Section 2019.210-compliant disclosure, as well as amended responses to Interrogatory Nos. 5 through 13, and 17.  Plaintiffs have now had *ample* time to prepare their Section 2019.210 disclosure and the amended responses to these Interrogatories.  There is no reason for Plaintiffs to continue to delay their production.

Please provide confirmation by 5 pm PT tomorrow, July 14.

Regards,
Ilissa
**Ilissa Samplin**

Exhibit 11
-72-

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

Exhibit 11
-73-

# EXHIBIT 12

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | Samplin, Ilissa |
| **Cc:** | *** Apple-Masimo; Morgan, Tracy A.; Joe.Re; Steve.Jensen; Perry.Oldham; Stephen.Larson; Masimo.Apple |
| **Subject:** | RE: Masimo v. Apple - Apple Production (APLPROD002) |
| **Date:** | Friday, July 17, 2020 2:09:39 PM |

Ilissa,

We write in response to Apple's purported document production last night.  Along with the production, Apple stated "[t]hese documents should be treated as subject to the ethical wall referenced in my colleague Ilissa Samplin's July 15, 2020 email."

Apple cannot unilaterally impose restrictions on its document production.  As we explained in our email yesterday, there is no wall in this case and nothing would support imposing Apple's proposed wall.  The parties briefed over twenty protective order disputes to Judge Early, and no such wall exists.  Apple has asked the Court at least four times to condition production of technical documents on Section 2019.210 and the Court rejected every single one of Apple's requests.  Apple's attempt to impose a unilateral wall is baseless and demonstrates Apple's continued contempt of the Court's numerous orders on this subject.  Apple's ongoing contempt is prejudicial to Plaintiffs.

Because we do not agree to Apple's unilateral attempt to impose a wall, we have not downloaded Apple's purported document production and do not consider the documents produced.  Please immediately confirm Apple withdraws its unilateral attempt to impose a wall.

Best regards,
Adam


**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**


---

**From:** Morgan, Tracy A. <TMorgan2@gibsondunn.com>
**Sent:** Thursday, July 16, 2020 6:51 PM
**To:** Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo v. Apple - Apple Production (APLPROD002)

Counsel,

Documents bearing production numbers APL-MAS_00000842 - APL-MAS_00001192 are available for download.  The credentials to access the SFTP site are below.  The SFTP password and production .RAR file password will be sent separately.  Please note these files will only remain available on the SFTP site for seven days.  These documents should be treated as subject to the ethical wall

Exhibit 12
-74-

referenced in my colleague Ilissa Samplin's July 15, 2020 email.

Production Volume: APLPROD002
Bates Range: APL-MAS_00000842 - APL-MAS_00001192
Password: Sent separately



| Host | |
| --- | --- |
| Connection type | |
| Port | |
| Username | |
| Password to SFTP | |

Sincerely,

**Tracy A. Morgan, CP**
Certified Paralegal

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.4186 • Fax +1 949.475.4686
TMorgan2@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

Exhibit 12
-75-

# EXHIBIT 13

1

1

2

3

4              UNITED STATES DISTRICT COURT

5             CENTRAL DISTRICT OF CALIFORNIA

6                   SOUTHERN DIVISION

7                      - - -

8       THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

9

10      MASIMO CORPORATION, et al.,    )
                        Plaintiffs, )
             vs.                      )
11                                    )  SACV-20-00048-JVS
        APPLE, INC.,                  )
12                      Defendant.  )
        -----------------------------)

13

14

15         REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              Santa Ana, California

17               July 10, 2020

18

19                  SHARON A. SEFFENS, RPR
                    United States Courthouse
20                  411 West 4th Street, Suite 1-1053
                    Santa Ana, CA  92701
21                  (714) 543-0870

22

23

24

25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 13
-76-

2

```
 1    APPEARANCES OF COUNSEL:

 2    For the Plaintiffs:

 3    JOSEPH R. RE
      STEPHEN JENSEN
 4    KNOBBE MARTENS
      2040 Main Street, 14th Floor
 5    Irvine, CA  92614
      (949) 760-0404
 6
      For the Defendant:
 7
      H. MARK LYON
 8    JOSHUA LERNER
      BRIAN ROSENTHAL
 9    GIBSON DUNN & CRUTCHER, LLP
      1881 Page Mill Road
10    Palo Alto, CA  93403-1211
      (650) 849-5307
11
      JOSHUA LERNER
12    GIBSON DUNN & CRUTCHER, LLP
      555 Mission Street, Suite 3000
13    San Francisco, CA  94105-0921
      (415) 393-8254
14
      BRIAN ROSENTHAL
15    GIBSON DUNN & CRUTCHER, LLP
      200 Park Avenue
16    New York, NY  10166-0193
      (212) 351-2339
17

18

19

20

21

22

23

24

11:46  25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 13
-77-

3

```
        1   SANTA ANA, CALIFORNIA; FRIDAY, JULY 10, 2020; 2:58 P.M.
02:58   2              (Per telephonic conference)
02:58   3              THE CLERK:  Calling Item No. 1, SACV-20-00048-JVS,
02:58   4   Masimo Corporation versus Apple, Inc.
02:58   5              Appearances on behalf of the plaintiff, please.
02:58   6              MR. RE:  Thank you.  Good afternoon, Your Honor,
02:58   7   this is Joseph Re of Knobbe Martens on behalf of Masimo
02:58   8   Corporation, and with me is my partner Stephen Jensen.
02:58   9              THE CLERK:  And on behalf of the defendants,
02:58  10   please.
02:58  11              MR. LYON:  Good afternoon, Your Honor.  It's Mark
02:58  12   Lyon on behalf of Apple, and with me is Joshua Lerner, and
02:58  13   Brian Rosenthal.
02:58  14              THE COURT:  Good afternoon.
02:58  15              Thank you for your joint report that you filed
02:58  16   last week.  Let me share my thoughts with you, and then I'd
02:59  17   be happy to hear you.
02:59  18              I believe it's fundamentally unfair to the parties
02:59  19   and inefficient to require reduction of the number of claims
02:59  20   for prior art references prior to the full disclosure of the
02:59  21   infringement contentions and the invalidity contentions.
02:59  22   Let me give you an example of the poker world.  Suppose
02:59  23   Masimo has a claim that it would evaluate as a for basis,
02:59  24   but when Apple makes its invalidity disclosures, it comes up
02:59  25   with prior art that would amount to Royal Fresh.  It's
```

Exhibit 13
-78-

02:59   1    better for Masimo to designate a claim in light of prior art
02:59   2    demonstrating it wasn't viable.
03:00   3          So my thought is that the initial round of
03:00   4    disclosures ought to come after the parties have made their
03:00   5    invalidity disclosures and their prior art disclosures.  The
03:00   6    date for invalidity contentions is 9/7.  What I would
03:00   7    propose is that within two weeks of that date, the parties
03:00   8    present me with a proposal for an initial reduction of
03:00   9    claims and prior art references that would contemplate
03:00   10   actual disclosure of those reductions within 30 days of the
03:00   11   Court adopting a specific proposal.  I would then
03:00   12   contemplate that there would be a further reduction after
03:00   13   the Markman hearing, and I would leave to your discretion
03:00   14   the time for final disclosure as to what we go to trial on.
03:01   15         I think that may require some adjustments to
03:01   16   events leading to the Markman hearing.  If the invalidity
03:01   17   contentions come in on 9/7, the parties' exchange of
03:01   18   proposed claim terms is 9/21.  I don't think that gives you
03:01   19   enough time to reflect on both sides' disclosures, come up
03:01   20   with your proposal, and then for narrowing selections of
03:01   21   claims and prior art references.
03:01   22         So I think that the dates between the exchange of
03:01   23   claim terms and the Markman hearing need to be adjusted to
03:01   24   accommodate the disclosures pursuant to whatever proposal I
03:01   25   adopt for the disclosures following the invalidity and the

Exhibit 13
-79-

5

| | | |
|---|---|---|
| 03:01 | 1 | infringement contentions and the Markman hearing.  I'm not |
| 03:02 | 2 | adverse to slipping the Markman hearing a month or six weeks |
| 03:02 | 3 | if that makes sense.  That's in February, and we don't have |
| 03:02 | 4 | a trial date in 2021. |
| 03:02 | 5 | So those are my general thoughts.  I'll be happy |
| 03:02 | 6 | to hear you. |
| 03:02 | 7 | Let's begin with you, Mr. Re. |
| 03:02 | 8 | MR. RE:  Thank you, Your Honor. |
| 03:02 | 9 | I think we're in complete agreement with |
| 03:02 | 10 | everything you said.  I do think there needs to be an |
| 03:02 | 11 | exchange of information.  I do want to alert the Court that |
| 03:02 | 12 | we are planning on amending our pleading that's set forth in |
| 03:02 | 13 | the Court's order regarding the Motion to Dismiss.  In fact, |
| 03:02 | 14 | we will be substituting out some patents, so there needs to |
| 03:02 | 15 | be some more time for the parties to fully evaluate the |
| 03:02 | 16 | claims. |
| 03:02 | 17 | And, yes, we have not yet received the other |
| 03:02 | 18 | party's technical documents which were due back in June, and |
| 03:02 | 19 | that we of course need before we do our contentions.  But we |
| 03:02 | 20 | agree with everything you said, and I think the parties will |
| 03:03 | 21 | work it out and will come up with a proposal for this by |
| 03:03 | 22 | September 21 as you indicated. |
| 03:03 | 23 | THE COURT:  Mr. Lyon. |
| 03:03 | 24 | MR. LYON:  Thank you, Your Honor. |
| 03:03 | 25 | Just a couple points.  Let me just raise a |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 13
-80-

6

03:03  1    concern, and you may have already considered this, but let
03:03  2    me at least just throw it out there so that we can have a
03:03  3    discussion if it's helpful.  The one thing I would say with
03:03  4    not putting in some kind of target limits at this point is
03:03  5    that you end up with potentially hundreds of claims that
03:03  6    both parties are going to be charting, that they're going to
03:03  7    be discussing and potentially arguing over as far as what
03:03  8    claim terms might be involved.

03:03  9          That is not a trivial aspect.  I mean, that's
03:03  10   something where some of these -- I'm sure you've seen them.
03:03  11   Some of these claim charts can wind up being hundreds or
03:03  12   thousands of pages long, which is a very significant effort
03:03  13   to create, even if it is copying and pasting some of the
03:03  14   information because these claims are so related, which still
03:03  15   winds up that somebody has to sit down and analyze each
03:03  16   individual claim to decide whether or not you can simply
03:04  17   copy a paragraph from a different claim or not.  You have to
03:04  18   do that, and then that has to go through whatever levels of
03:04  19   review with the client and with the firm to make sure that
03:04  20   that's okay.

03:04  21         Then to the extent that there's any dispute about
03:04  22   that, instead of having a single claim that the Court is
03:04  23   worrying about, it may end up being 15 or 16 claims, which
03:04  24   the Court would then have to do a similar review to make
03:04  25   sure it all makes sense, and the same argument applies

Exhibit 13
-81-

03:04    1    equally to each of those 15 or 16 claims.

03:04    2              So our view of this would be if we set some

03:04    3    number, and it could be --  we don't think the numbers we

03:04    4    picked are terrible, but if there's a higher number, we

03:04    5    could talk about that.  But pick some target numbers now so

03:04    6    that we can get a bit more reign in on the case before we

03:04    7    get into charting everything with the idea that if there's

03:04    8    reasons to change these things down the road, that's

03:04    9    something that can always be done in good cause.

03:05   10              But it really needs to be done at the stage of

03:05   11    preparing it for Markman, and then have that kind of a

03:05   12    target, sort of like page limits in the brief in a lot of

03:05   13    ways.  If you put these claims and limits on people, they'll

03:05   14    make some hard choices that they otherwise wouldn't make or

03:05   15    -- and that they probably should make, but because of the

03:05   16    fact that they don't have to, everything just gets thrown in

03:05   17    with the kitchen sink.

03:05   18              That's why we were suggesting trying to do

03:05   19    something now.  Then if we need to have some discussions

03:05   20    about whether, you know, it's 50, 40, claims, whatever it is

03:05   21    we pick -- maybe the plaintiffs need a little bit more than

03:05   22    that, maybe another ten or so -- we could have those kinds

03:05   23    of discussions and maybe stipulate to that at the beginning.

03:05   24              This is the first we've heard that they're

03:05   25    planning on changing the patents again, so that's a little

| | | |
|---|---|---|
| 03:05 | 1 | troubling because we are already very far into the case, and |
| 03:06 | 2 | we're already trying to start gearing up for discovery on |
| 03:06 | 3 | the patents that we have.  But that may also throw a monkey |
| 03:06 | 4 | wrench into not just this but to more parts of the case |
| 03:06 | 5 | schedule if it changes substantially. |
| 03:06 | 6 | THE COURT:  I appreciate the fact that at some |
| 03:06 | 7 | point the parties will have to make hard choices.  I believe |
| 03:06 | 8 | they ought to be able to make fair hard choices.  But if you |
| 03:06 | 9 | want to have further discussions among yourselves and come |
| 03:06 | 10 | to a consensus as to how to do some limits at this time, |
| 03:06 | 11 | that's fine, but I'm not going to impose it. |
| 03:06 | 12 | What I'm going to order is that no later than 9/21 |
| 03:06 | 13 | the parties will submit a joint proposal for the initial |
| 03:06 | 14 | round of productions and the number of infringement |
| 03:06 | 15 | contentions and prior art references, and a final proposal |
| 03:06 | 16 | as to what we ought to do following the Markman hearing, and |
| 03:06 | 17 | then what we ought to do as a final third stage in terms of |
| 03:06 | 18 | what we're actually going to go to trial on. |
| 03:07 | 19 | MR. RE:  T?hank you, Your Honor. |
| 03:07 | 20 | May I ask one more question about this, though, |
| 03:07 | 21 | Your Honor?  If we have currently set up infringement |
| 03:07 | 22 | contentions due on July 27, which then triggers our |
| 03:07 | 23 | invalidity contentions on September 7 to trigger off of |
| 03:07 | 24 | those -- if the patents are going to be changing because of |
| 03:07 | 25 | the new pleading, I guess I would want to know when is that |

Exhibit 13
-83-

9

| | | |
|---|---|---|
| 03:07 | 1 | going to happen, and are those target changes going to be |
| 03:07 | 2 | reflected in the infringement contentions we are going to |
| 03:07 | 3 | see in July, or is that going to be a completely separate |
| 03:07 | 4 | ball of wax that we have to deal with? |
| 03:07 | 5 | THE COURT:  Well, if Masimo changes the line of |
| 03:07 | 6 | both patents, I would reevaluate the dates for infringement |
| 03:07 | 7 | and invalidity contentions in light of that on a fairly |
| 03:07 | 8 | short ex-parte basis. |
| 03:07 | 9 | Let me circle back to one thing Mr. Re said.  I |
| 03:07 | 10 | don't think that Masimo should be required to make its |
| 03:07 | 11 | infringement contentions until you produce the core |
| 03:08 | 12 | technical information.  I understand that there is presently |
| 03:08 | 13 | in place a protective order to permit that, but to the |
| 03:08 | 14 | extent that production is made, these dates are just going |
| 03:08 | 15 | to drift out there and out there and out there.  And I would |
| 03:08 | 16 | be likely to entertain a motion made to me, not the |
| 03:08 | 17 | magistrate judge, with regard to patent production on the |
| 03:08 | 18 | core confidential information. |
| 03:08 | 19 | MR. LYON:  Your Honor, on that point -- this is |
| 03:08 | 20 | Mark Lyon again, Your Honor.  On that point, we did produce |
| 03:08 | 21 | nonconfidential technical documentation as part of the |
| 03:08 | 22 | schedule, and we're waiting on the protective order which |
| 03:08 | 23 | now is in place.  But as you may know, we filed an objection |
| 03:08 | 24 | to certain orders of Magistrate Early on the staging of |
| 03:08 | 25 | that, which we do hope to have -- because the issue, as you |

Exhibit 13
-84-

03:08    1    may know, is that there needs to be a 2019 trade secret

03:08    2    statement in place before we can proceed on the trade secret

03:09    3    discovery.

03:09    4            The whole basis for that rule is to really avoid

03:09    5    the situation where plaintiffs get ahold of all these

03:09    6    technical documents and then can hunt and peck and kind of

03:09    7    try to come up with a list of trade secrets that they

03:09    8    otherwise really don't have but that they are trying to

03:09    9    create that way.  That is the whole purpose of being able to

03:09   10    have those trade secrets in before all that technical

03:09   11    information is out.

03:09   12            If that information is provided ahead of getting

03:09   13    those trade secrets, that bell can't be unrung.  That's one

03:09   14    concern, and we actually have that motion in place.  We

03:09   15    understood from yesterday that Masimo was asking us to

03:09   16    produce that information.  The first that they had come back

03:09   17    and talked to us was in an email yesterday asking for that

03:09   18    information immediately, knowing that we had these

03:09   19    objections out there.  We may need to actually file some

03:09   20    type of an ex-parte application, if necessary, to seek

03:09   21    relief on that so we can get that issue decided first, if

03:09   22    possible.

03:10   23            I don't know, Mr. Lerner, if you want to say

03:10   24    anything more on that.  Please feel free.

03:10   25            MR. LERNER:  First of all, thank you for having

Exhibit 13
-85-

| | | |
|---|---|---|
| 03:10 | 1 | this hearing by telephone, Your Honor.  We know during these |
| 03:10 | 2 | times it's busy, and we appreciate the opportunity to be |
| 03:10 | 3 | heard. |
| 03:10 | 4 | Second, I do not believe that anybody can dispute |
| 03:10 | 5 | the point that once these documents are out then you have |
| 03:10 | 6 | the issue that is raised by every case on point, which is, |
| 03:10 | 7 | one can make vague trade secret allegations and then claim |
| 03:10 | 8 | Apple's valuable confidential information based on years of |
| 03:10 | 9 | hard work on this product as their own.  That simply cannot |
| 03:10 | 10 | be undone once these documents are produced, and it leads to |
| 03:10 | 11 | all kinds of issues. |
| 03:10 | 12 | I think the two most relevant here are that what, |
| 03:10 | 13 | for example, do you do with the people that are going to |
| 03:10 | 14 | work on the trade secret disclosure when first Your Honor |
| 03:11 | 15 | did order compliance with Section 2019.210 many months ago? |
| 03:11 | 16 | What do you do with the lawyers who have seen our |
| 03:11 | 17 | confidential information, but also might want to work on |
| 03:11 | 18 | that disclosure, which does at some point obviously need to |
| 03:11 | 19 | be provided?  Our view, as we briefed, is that it should |
| 03:11 | 20 | have been provided a long time ago. |
| 03:11 | 21 | The other key policy matter here, I think, is that |
| 03:11 | 22 | we would not be having these discussions or these problems |
| 03:11 | 23 | if that disclosure had been provided, because I think the |
| 03:11 | 24 | most basic policy guidance behind the rule is it enables the |
| 03:11 | 25 | Court to determine the proper scope of discovery and whether |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 13
-86-

| 03:11 | 1 | or not discovery requests fall within it.  That just can't |
| 03:11 | 2 | be done until they provide this document, which the parties |
| 03:11 | 3 | briefed before the scheduling order, which Your Honor then |
| 03:12 | 4 | ruled on. |
| 03:12 | 5 | So as Mr. Lyon says, if necessary -- in fact, |
| 03:12 | 6 | we're planning on it if necessary to raise it as quickly as |
| 03:12 | 7 | possible now, so that we don't run into this waterfall of |
| 03:12 | 8 | problems that will follow if there's not compliance with |
| 03:12 | 9 | this basic rule. |
| 03:12 | 10 | THE COURT:  I guess I analyze things differently. |
| 03:12 | 11 | If core confidential documents are relevant to the patents, |
| 03:12 | 12 | they should be disclosed now, notwithstanding the fact that |
| 03:12 | 13 | they may overlap the trade secrets case.  We need to go |
| 03:12 | 14 | forward with the patent case.  And if and when there is |
| 03:12 | 15 | adequate disclosure for trade secrets, all other materials |
| 03:12 | 16 | should be produced.  But to the extent the core confidential |
| 03:12 | 17 | technical documents are relevant to the patent case, they |
| 03:12 | 18 | should be disclosed now and in advance of Masimo having to |
| 03:12 | 19 | identify which claims it wants to proceed on. |
| 03:13 | 20 | MR. LERNER:  If I may just very briefly respond to |
| 03:13 | 21 | that, Your Honor.  I understand that Masimo has raised that |
| 03:13 | 22 | argument, but it does render the statute a nullity. |
| 03:13 | 23 | 2019.210 expressly states:  "Discovery related to the trade |
| 03:13 | 24 | secrets" -- indeed, in cases before Judge Early before, he |
| 03:13 | 25 | said just because discovery relates to a non-trade secret |

Exhibit 13
-87-

03:13  1    claim it doesn't mean it also doesn't relate to the trade
03:13  2    secret.  Here, there's no dispute -- there can't be any
03:13  3    dispute that discovery on the patent side relates to the
03:13  4    trade secrets.
03:13  5         So if we're going to do that, it does render the
03:13  6    statute in this instance a nullity, and we will have, I
03:13  7    think, all the problems that follow and are the very basis
03:14  8    for the rule there.  So I think that it is important to
03:14  9    consider both the express language of that statute and then
03:14  10   what's behind it.
03:14  11        The only other thing I will mention is that every
03:14  12   case that Masimo has cited on this point that involved
03:14  13   parallel claims -- every single one there was a prior trade
03:14  14   secret disclosure.  It's possible that it could have been
03:14  15   amended at some later time, but there was at the very least
03:14  16   some disclosure.
03:14  17        The only exception I can think of was one where
03:14  18   there was a date certain order, and the plaintiff would have
03:14  19   had to show good cause if they ever wanted to change it
03:14  20   later.  Because without either the disclosure or that date
03:14  21   certain and an order that it can't be changed without good
03:14  22   cause, then we have the very real situation that Masimo can
03:15  23   just look through our confidential information in a case
03:15  24   with a patent thicket and use our confidential information
03:15  25   to try and craft their purported secrets in a way that (a)

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 13
-88-

14

03:15   1   is allegedly theirs, even though it's based on our

03:15   2   confidential information, but (b) tries to weave around

03:15   3   their many patents so they don't run into the problem that

03:15   4   it's been disclosed.

03:15   5          For those reasons, I think it's in some ways of

03:15   6   critical importance here that we do it.  It's even more

03:15   7   important than I would say in a normal case where there

03:15   8   might not be quite so many patents in the space or so many

03:15   9   allegations that the secrets were allegedly disclosed in the

03:15   10  patents.

03:15   11         THE COURT:  Let's assume Masimo never asserted a

03:15   12  trade secret claim.  The confidential information which

03:15   13  involves the patent claims would be subject to production

03:16   14  whether it was a trade secret or not.  That's what

03:16   15  protective orders are for.

03:16   16         MR. LERNER:  We completely agree with that, Your

03:16   17  Honor.  If there were no trade secret claims in this case,

03:16   18  this would not be a problem.  But every case where there is

03:16   19  a trade secret, given the express language of the statute,

03:16   20  has found that you can't avoid that language.  I'm not aware

03:16   21  of any finding that ignores the language on point.

03:16   22         That's why in all of the cases there was a trade

03:16   23  secret disclosure before you had a ruling that patent

03:16   24  discovery could go forward, or at least as I said, an order

03:16   25  that the trade secret disclosure be produced by a date

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 13
-89-

03:16    1   certain along with admonition that the list couldn't change

03:16    2   without good cause.

03:17    3         So, yes, if there were no trade secret claim, then

03:17    4   2019.210 by and large would not come into play.  There are

03:17    5   some cases holding that if it's kind of, you know, a wolf in

03:17    6   sheep's clothing and it's obvious it's coming, then the

03:17    7   Court would say you still have to do the 2019.210

03:17    8   disclosure.

03:17    9         But here we don't have that situation.  This is a

03:17   10   case where they've suggested they have a serious trade

03:17   11   secret claim.  They've never described it with any

03:17   12   specificity whatsoever, even though they allege it has been

03:17   13   disclosed in public patent filings.  One could just say

03:17   14   here's the page and line number.

03:17   15         Not withstanding all of those things, there's no

03:17   16   description in a case that's, you know, roughly seven months

03:17   17   old, and they want this confidential information.  Again,

03:18   18   once that's done, we just cannot undo it, and we'll have I

03:18   19   think unfortunately a lot of unnecessary disputes both about

03:18   20   the scope of discovery, but also what to do about the fact

03:18   21   that you then have lawyers who have seen our secrets

03:18   22   drafting what their alleged secrets are.

03:18   23         THE COURT:  Mr. Re.

03:18   24         MR. RE:  Well, Your Honor, this is at least the

03:18   25   second or third time they've made this argument.  You are

Exhibit 13
-90-

03:18  1   correct.  Our patent case is independent of the trade secret

03:18  2   case.  The case law that we already cited and briefed to

03:18  3   Judge Early on these other motions were breach of contract

03:18  4   cases that were factually dependent on the trade secret

03:18  5   claims.  Our case is not dependent on our trade secret case.

03:18  6   And currently the trade secret case has been dismissed on

03:18  7   their Motion to Dismiss.  It's not even pending before the

03:19  8   Court, and obviously the patent case gets to go forward.

03:19  9           I've never seen such strenuous objections to

03:19  10  producing just the core technical documents in a case.  They

03:19  11  are fighting tooth and nail, and they will keep fighting and

03:19  12  fighting no matter what.  They're going to file more motions

03:19  13  I understand today to prevent the disclosures that were due

03:19  14  back in June.  I think the time has come we move forward now

03:19  15  as the Court has indicated.

03:19  16          THE COURT:  Are you going to replead your trade

03:19  17  secret claim?

03:19  18          MR. RE:  Yes, we are.  We plan on complying with

03:19  19  the 30-day leave to amend date at the end of the month.

03:19  20          THE COURT:  Okay.  Well, I think you have my

03:19  21  general views.  Let's see what motion practice that results

03:19  22  in.

03:19  23          Anything else we should take up today?

03:19  24          MR. RE:  No.  Thank you, Your Honor.

03:20  25          MR. LYON:  Thank you, Your Honor.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 13
-91-

17

03:20    1              MR. LERNER:  Thank you very much, Your Honor.

03:20    2              THE COURT:  Okay.  Thank you very much.

03:20    3          (Whereupon, the proceedings were concluded.)

03:20    4                        *     *     *

         5

         6

         7

         8

         9

        10

        11

        12

        13

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 13
-92-

18

**CERTIFICATE**

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  July 20, 2020

/s/   Sharon A. Seffens  7/20/20
_____
SHARON A. SEFFENS, U.S. COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit 13
-93-

**/**
/s [1]  18/15

**0**
**0193 [1]**  2/16
**0404 [1]**  2/5
**0870 [1]**  1/21
**0921 [1]**  2/13

**1**
**1-1053 [1]**  1/20
**10 [2]**  1/17 3/1
**10166-0193 [1]**  2/16
**1053 [1]**  1/20
**1211 [1]**  2/10
**14th [1]**  2/4
**15 [2]**  6/23 7/1
**16 [2]**  4/4 4/12
**1881 [1]**  2/9

**2**
**20 [2]**  18/13 18/15
**200 [1]**  2/15
**2019 [1]**  10/1
**2019.210 [4]**  11/15 12/23 15/4 15/7
**2020 [3]**  1/17 3/1 18/13
**2021 [1]**  5/4
**2040 [1]**  2/4
**21 [3]**  4/18 5/22 8/12
**212 [1]**  2/16
**2339 [1]**  2/16
**27 [1]**  8/22
**28 [1]**  18/7
**2:58 [1]**  3/1

**3**
**30 [1]**  4/10
**30-day [1]**  16/19
**3000 [1]**  2/12
**351-2339 [1]**  2/16
**393-8254 [1]**  2/13

**4**
**40 [1]**  7/20
**411 [1]**  1/20
**415 [1]**  2/13
**4th [1]**  1/20

**5**
**50 [1]**  7/20
**5307 [1]**  2/10
**543-0870 [1]**  1/21
**555 [1]**  2/12

**6**
**650 [1]**  2/10

**7**
**7/20/20 [1]**  18/15
**714 [1]**  1/21
**753 [1]**  18/6
**760-0404 [1]**  2/5

**8**
**8254 [1]**  2/13
**849-5307 [1]**  2/10

**9**
**9/21 [2]**  4/18 8/12
**9/7 [2]**  4/6 4/17
**92614 [1]**  2/5
**92701 [1]**  2/10
**93403-1211 [1]**  2/10
**94105-0921 [1]**  2/13
**949 [1]**  2/5

**A**
**able [2]**  8/8 16/8
**about [7]**  6/21 6/23 7/5 7/20 8/20 15/19 15/20
**above [1]**  18/9
**above-entitled [1]**  18/9
**accommodate [1]**  4/24
**actual [1]**  4/10
**actually [3]**  8/18 10/14 10/19
**adequate [1]**  12/15
**adjusted [1]**  4/23
**adjustments [1]**  4/15
**admonition [1]**  15/1
**adopt [1]**  4/25
**adopting [1]**  4/11
**advance [1]**  12/18
**adverse [1]**  5/2
**after [2]**  4/4 4/12
**afternoon [3]**  3/6 3/11 3/14
**again [3]**  7/25 9/20 15/17
**ago [2]**  11/15 11/20
**agree [2]**  5/20 14/16
**agreement [1]**  5/9
**ahead [1]**  10/12
**ahold [1]**  10/5
**al [1]**  1/9
**alert [1]**  5/11
**all [9]**  6/25 10/5 10/10 10/25 11/11 12/15 13/7 14/22 15/15
**allegations [2]**  11/7 14/9
**allege [1]**  15/12
**alleged [1]**  15/22
**allegedly [2]**  14/1 14/9
**along [1]**  15/1
**already [4]**  6/1 8/1 8/2 16/2
**also [4]**  8/3 11/17 13/1 15/20
**Alto [2]**  1/16 3/1
**always [1]**  7/9
**amend [1]**  16/19
**amended [1]**  13/15
**amending [1]**  5/12
**among [1]**  8/9
**amount [1]**  3/25
**Ana [3]**  1/16 1/20 3/1
**analyze [2]**  6/15 12/10
**another [1]**  7/22
**any [4]**  6/21 13/2 14/21 15/11
**anybody [1]**  11/4
**anything [2]**  10/24 16/23
**APPEARANCES [2]**  2/1 3/5
**APPLE [4]**  1/11 3/4 3/12 3/24
**Apple's [1]**  11/8
**application [1]**  10/20
**applies [1]**  6/25
**appreciate [2]**  8/6 11/2
**are [25]**
**arguing [1]**  6/7
**argument [3]**  6/25 12/22 15/25
**around [1]**  14/2
**art [7]**  3/20 3/25 4/1 4/5 4/9 4/21 8/15
**as [18]**  3/23 4/14 5/22 6/7 8/10 8/16 8/17 9/21 9/23 9/25 11/9 11/19 12/5 12/6 12/6 14/24 16/15
**ask [1]**  8/20
**asking [2]**  10/15 10/17
**aspect [1]**  6/9
**asserted [1]**  14/11
**assume [1]**  14/11
**Avenue [1]**  2/15
**avoid [1]**  14/20
**aware [1]**  14/20

**B**
**back [4]**  5/18 9/9 10/16 16/14
**ball [1]**  9/4

**based [2]**  11/8 14/1
**basis [2]**  9/21 13/10
**basis [4]**  3/23 9/8 10/4 13/7
**be [36]**
**because [8]**  6/14 7/15 8/1 8/24 9/25 11/23 12/25 13/20
**been [6]**  11/20 11/23 13/14 14/4 15/12 16/6
**before [9]**  5/19 7/6 10/2 10/10 12/3 12/24 12/24 14/23 16/7
**begin [1]**  5/7
**beginning [1]**  7/23
**behalf [4]**  3/5 3/7 3/9 3/12
**behind [2]**  11/24 13/10
**being [3]**  6/11 6/23 10/9
**believe [3]**  3/18 8/7 11/4
**bell [1]**  10/13
**better [1]**  4/1
**between [1]**  4/22
**bit [2]**  7/6 7/21
**both [5]**  4/19 6/9 6/9 9/6 13/9 15/19
**breach [1]**  16/3
**BRIAN [3]**  2/8 2/14 3/13
**brief [1]**  7/12
**briefed [3]**  11/19 12/3 16/2
**briefly [1]**  12/20
**busy [1]**  11/2

**C**
**CA [4]**  1/20 2/5 2/10 2/13
**CALIFORNIA [3]**  1/5 1/16 3/1
**Calling [1]**  3/3
**can [12]**  6/2 6/11 6/16 7/6 7/9 10/2 10/6 10/21 11/4 11/7 13/17 13/22
**can't [5]**  10/13 12/1 13/2 13/21 14/20
**cannot [2]**  11/9 15/18
**case [22]**
**cases [4]**  12/24 14/22 15/5 16/4
**cause [4]**  7/9 13/19 13/22 15/2
**CENTRAL [1]**  1/5
**certain [4]**  9/24 13/18 13/21 15/1
**CERTIFICATE [1]**  18/4
**certify [1]**  18/6
**change [3]**  7/8 13/19 15/1
**changed [1]**  13/21
**changes [3]**  8/5 9/1 9/5
**changing [2]**  7/25 8/24
**charting [2]**  6/6 7/7
**charts [1]**  6/11
**choices [3]**  7/14 8/7 8/8
**circle [1]**  9/9
**cited [2]**  13/12 16/2
**claim [15]**  3/23 4/1 4/18 4/23 6/8 6/11 6/16 6/17 6/22 11/7 13/1 14/12 15/3 15/11 16/17
**claims [15]**  3/19 4/9 4/21 5/16 6/5 6/14 6/23 7/1 7/13 7/20 12/19 13/13 14/13 14/17 16/5
**client [1]**  6/19
**clothing [1]**  15/6
**Code [1]**  18/7
**come [6]**  4/4 4/17 4/19 5/21 8/9 10/7 10/16 15/4 16/14
**comes [1]**  3/24
**coming [1]**  15/6
**complete [1]**  5/9
**completely [2]**  9/3 14/16
**compliance [2]**  11/15 12/8
**complying [1]**  16/18
**concern [2]**  6/1 10/14
**concluded [1]**  17/3
**conference [2]**  3/2 18/11
**confidential [10]**  9/18 11/8 11/17 12/11 12/16 13/23 13/24 14/2 14/12 15/12
**conformance [1]**  18/10
**consensus [1]**  8/10

Exhibit 13

-94-

**C**

**consider** [1] 13/9
**considered** [1] 6/1
**contemplate** [2] 4/9 4/12
**contentions** [12] 3/21 3/21 4/6 4/17 5/1
5/19 8/15 8/22 8/23 9/2 9/7 9/11
**contract** [1] 16/3
**copy** [1] 6/17
**copying** [1] 6/13
**core** [5] 9/11 9/18 12/11 12/16 16/10
**CORPORATION** [3] 1/9 3/4 3/8
**correct** [2] 16/1 18/8
**could** [6] 7/3 7/5 7/22 13/14 14/24 15/13
**couldn't** [1] 15/1
**COUNSEL** [1] 2/1
**couple** [1] 5/25
**course** [1] 5/19
**COURT** [10] 1/4 4/11 5/11 6/22 6/24
11/25 15/7 16/8 16/15 18/16
**Court's** [1] 5/13
**Courthouse** [1] 1/19
**craft** [1] 13/25
**create** [2] 6/13 10/9
**critical** [1] 14/6
**CRUTCHER** [3] 2/9 2/12 2/15
**currently** [2] 8/21 16/6

**D**

**date** [8] 4/6 4/7 5/4 13/18 13/20 14/25
16/19 18/13
**dates** [3] 4/22 9/6 9/14
**day** [1] 16/19
**days** [1] 4/10
**deal** [1] 9/4
**decide** [1] 6/16
**decided** [1] 10/21
**Defendant** [1] 1/12 2/6
**defendants** [1] 3/9
**demonstrating** [1] 4/2
**dependent** [2] 16/4 16/5
**described** [1] 15/11
**description** [1] 15/16
**designate** [1] 4/1
**determine** [1] 11/25
**did** [2] 9/20 11/15
**different** [1] 6/17
**differently** [1] 12/10
**disclosed** [5] 12/12 12/18 14/4 14/9
15/13
**disclosure** [13] 3/20 4/10 4/14 11/14
11/18 11/23 12/15 13/14 13/16 13/20
14/23 14/25 15/8
**disclosures** [8] 3/24 4/4 4/5 4/5 4/19
4/24 4/25 16/13
**discovery** [9] 8/2 10/3 11/25 12/1 12/23
12/25 13/3 14/24 15/20
**discretion** [1] 4/13
**discussing** [1] 6/7
**discussion** [1] 6/3
**discussions** [4] 7/19 7/23 8/9 11/22
**Dismiss** [2] 5/13 16/7
**dismissed** [1] 16/6
**dispute** [4] 6/21 11/14 13/2 13/3
**disputes** [1] 15/19
**DISTRICT** [1] 1/4 1/5
**DIVISION** [1] 1/6
**do** [19]
**document** [1] 12/2
**documentation** [1] 9/21
**documents** [7] 5/18 10/6 11/5 11/10
12/11 12/17 16/10
**does** [3] 11/18 12/22 13/5
**doesn't** [2] 13/1 13/1
**don't** [10] 4/18 5/3 7/3 7/16 9/10 10/8
12/23 12/7 14/3 15/9

**done** [4] 7/9 7/10 12/2 15/18
**down** [1] 15/22
**drafting** [1] 13/17
**drift** [1] 9/15
**due** [3] 5/18 8/22 16/13
**DUNN** [3] 2/9 2/12 2/15
**during** [1] 11/1

**E**

**each** [2] 6/15 7/1
**Early** [3] 9/24 12/24 16/3
**effort** [1] 4/12
**either** [1] 13/20
**else** [1] 16/23
**email** [1] 10/17
**enables** [1] 11/24
**end** [3] 6/5 6/23 16/19
**enough** [1] 4/19
**entertain** [1] 6/15
**entitled** [1] 18/9
**equally** [1] 7/1
**et** [1] 1/9
**evaluate** [2] 3/23 5/15
**even** [5] 6/13 14/1 14/6 15/12 16/7
**events** [1] 14/6
**ever** [1] 13/19
**every** [4] 11/6 13/11 13/13 14/18
**everything** [4] 5/10 5/20 7/7 7/16
**ex** [2] 9/8 10/20
**ex-parte** [2] 9/8 10/20
**example** [2] 3/22 11/13
**exception** [1] 13/17
**exchange** [3] 4/17 4/22 5/11
**express** [2] 13/9 14/19
**expressly** [1] 12/23
**extent** [3] 6/21 9/14 12/16

**F**

**fact** [6] 5/13 7/16 8/6 12/5 12/12 15/20
**factually** [1] 16/4
**fair** [1] 8/8
**fairly** [1] 9/7
**fall** [1] 12/1
**far** [2] 6/7 8/1
**February** [1] 5/3
**feel** [1] 10/24
**fighting** [3] 16/11 16/11 16/12
**file** [2] 10/19 16/12
**filed** [2] 3/15 9/23
**filings** [1] 15/13
**final** [3] 4/14 8/15 8/17
**finding** [1] 14/21
**fine** [1] 8/11
**firm** [1] 6/19
**first** [5] 7/24 10/16 10/21 10/25 11/14
**Floor** [1] 2/4
**follow** [2] 12/8 13/7
**following** [2] 4/25 8/16
**foregoing** [1] 18/7
**format** [1] 18/10
**forth** [1] 5/12
**forward** [4] 12/14 14/24 16/8 16/14
**found** [1] 14/20
**Francisco** [1] 2/13
**free** [1] 10/24
**Fresh** [1] 3/25
**FRIDAY** [1] 3/1
**full** [1] 3/20
**fully** [1] 5/15
**fundamentally** [1] 3/18
**further** [2] 4/12 8/9

**G**

**gearing** [1] 8/2
**general** [2] 5/5 16/21
**get** [4] 7/6 7/7 10/5 10/21

**gets** [2] 7/16 16/8
**getting** [1] 9/9 12/540
**GIBSON** [3] 2/9 2/12 2/15
**give** [1] 3/22
**given** [1] 14/19
**gives** [1] 4/18
**go** [6] 4/14 6/18 8/18 12/13 14/24 16/8
**going** [15] 6/6 6/6 8/11 8/12 8/18 8/24
9/1 9/1 9/2 9/3 9/9 11/13 13/5 16/12
16/16
**good** [7] 3/6 3/11 3/14 7/9 13/19 13/21
15/2
**guess** [2] 8/25 12/10
**guidance** [1] 11/24

**H**

**had** [5] 10/16 10/18 11/23 13/19 14/23
**hank** [1] 8/19
**happen** [1] 9/1
**happy** [2] 3/17 5/5
**hard** [4] 7/14 8/7 8/8 11/9
**has** [10] 3/23 6/15 6/18 12/21 13/12
14/20 15/12 16/6 16/14 16/15
**have** [34]
**having** [4] 6/22 10/25 11/22 12/18
**he** [1] 12/24
**hear** [2] 3/17 5/6
**heard** [2] 7/24 11/3
**hearing** [7] 4/13 4/16 4/23 5/1 5/2 8/16
11/1
**held** [1] 18/9
**helpful** [1] 6/3
**here** [5] 11/12 11/21 13/2 14/6 15/9
**here's** [1] 15/14
**hereby** [1] 18/6
**higher** [1] 7/4
**holding** [1] 15/5
**Honor** [17] 3/6 3/11 5/8 5/24 8/19 8/21
9/19 9/20 11/1 11/14 12/3 12/21 14/17
15/24 16/24 16/25 17/1
**HONORABLE** [1] 1/8
**hope** [1] 9/25
**how** [1] 8/10
**hundreds** [2] 6/5 6/11
**hunt** [1] 10/6

**I**

**I'd** [1] 3/16
**I'll** [1] 5/5
**I'm** [5] 5/1 6/10 8/11 8/12 14/20
**I've** [1] 16/9
**idea** [1] 7/7
**identify** [1] 12/19
**ignores** [1] 14/21
**immediately** [1] 10/18
**importance** [1] 14/6
**important** [2] 13/8 14/7
**impose** [1] 8/11
**INC** [2] 1/11 3/4
**indeed** [1] 12/24
**independent** [1] 16/1
**indicated** [2] 5/22 16/15
**individual** [1] 6/16
**inefficient** [1] 3/19
**information** [15] 5/11 6/14 9/12 9/18
10/11 10/12 10/16 10/18 11/8 11/17
13/23 13/24 14/2 14/12 15/17
**infringement** [7] 3/21 5/1 8/14 8/21 9/2
9/6 9/11
**initial** [3] 4/3 4/8 8/13
**instance** [1] 13/6
**instead** [1] 6/22
**invalidity** [8] 3/21 3/24 4/5 4/6 4/16 4/25
8/23 9/7
**involved** [2] 6/8 13/12
**involves** [1] 14/13

Exhibit 13
-95-

## I

irvine [1]  2/5
is [42]
issue [3]  9/25 10/21 11/6
issues [1]  11/11
it [35]
it's [15]  3/11 3/18 3/25 6/3 7/20 11/2
13/14 14/1 14/4 14/5 14/6 15/5 15/6
15/6 16/7
Item [1]  3/3
its [2]  3/24 9/10

## J

JAMES [1]  1/8
JENSEN [2]  2/3 3/8
joint [2]  3/15 8/13
JOSEPH [2]  2/3 3/7
JOSHUA [3]  2/8 2/11 3/12
judge [4]  1/8 9/17 12/24 16/3
Judicial [1]  18/11
July [5]  1/17 3/1 8/22 9/3 18/13
July 27 [1]  8/22
June [2]  5/18 16/14
just [13]  5/25 5/25 6/2 7/16 8/4 9/14
12/1 12/20 12/25 13/23 15/13 15/18
16/10
JVS [2]  1/11 3/3

## K

keep [1]  16/11
key [1]  11/21
kind [4]  6/4 7/11 10/6 15/5
kinds [2]  7/22 11/11
kitchen [1]  7/17
KNOBBE [2]  2/4 3/7
know [8]  7/20 8/25 9/23 10/1 10/23 11/1
15/5 15/16
knowing [1]  10/18

## L

language [4]  13/9 14/19 14/20 14/21
large [1]  15/4
last [1]  3/16
later [3]  8/12 13/15 13/20
law [1]  16/2
lawyers [2]  11/16 15/21
leading [1]  4/16
leads [1]  11/10
least [4]  6/2 13/15 14/24 15/24
leave [2]  4/13 16/19
LERNER [4]  2/8 2/11 3/12 10/23
let [5]  3/16 3/22 5/25 6/1 9/9
Let's [3]  5/7 14/11 16/21
levels [1]  6/18
light [2]  4/1 9/7
like [1]  7/12
likely [1]  9/16
limits [4]  6/4 7/12 7/13 8/10
line [2]  9/5 15/14
list [2]  10/7 15/1
little [2]  7/21 7/25
LLP [3]  2/9 2/12 2/15
long [2]  6/12 11/20
look [1]  13/23
lot [2]  7/12 15/19
LYON [5]  2/7 3/12 5/23 9/20 12/5

## M

made [4]  4/4 9/14 9/16 15/25
magistrate [1]  9/17 9/24
Main [1]  2/4
make [9]  6/19 6/24 7/14 7/14 7/15 8/7
8/8 9/10 11/7
makes [3]  3/24 5/3 6/25
many [4]  11/15 14/3 14/8 14/8

## MARK [3]  2/7 3/11 9/20

Markman [7]  3/13 4/18 6/3 9/2 12/7 15/1
8/16
MARTENS [2]  2/4 3/7
MASIMO [13]  1/9 3/4 3/7 3/23 4/1 9/5
9/10 10/15 12/18 12/21 13/12 13/22
14/11
materials [1]  12/15
matter [3]  11/21 16/12 18/9
may [4]  4/15 6/1 6/23 8/3 8/20 9/23
10/1 10/19 12/13 12/20
maybe [3]  7/21 7/22 7/25
me [9]  3/8 3/12 3/16 3/22 4/8 5/25 6/2
9/9 9/16
mean [2]  6/9 13/1
mention [1]  14/8
might [3]  6/8 11/17 14/8
Mill [1]  2/9
Mission [1]  2/12
monkey [1]  8/3
month [2]  5/2 16/19
months [2]  11/15 15/16
more [8]  5/15 7/6 7/21 8/4 8/20 10/24
14/6 16/12
most [2]  11/12 11/24
motion [5]  5/13 9/16 10/14 16/7 16/21
motions [2]  16/3 16/12
move [1]  16/14
Mr [1]  12/5
Mr. [5]  5/7 5/23 9/9 10/23 15/23
Mr. Lerner [1]  10/23
Mr. Lyon [1]  5/23
Mr. Re [3]  5/7 9/9 15/23
much [2]  17/1 17/2
my [5]  3/8 3/16 4/3 5/5 16/20

## N

nail [1]  16/11
narrowing [1]  4/20
necessary [3]  10/20 12/5 12/6
need [7]  4/23 5/19 7/19 7/21 10/19
11/18 12/13
needs [4]  5/10 5/14 7/10 10/1
never [3]  14/11 15/11 16/9
new [2]  2/16 8/25
no [8]  3/3 8/12 13/2 14/17 15/3 15/15
16/12 16/24
non [1]  12/25
non-trade [1]  12/25
nonconfidential [1]  9/21
normal [1]  14/7
not [21]
notwithstanding [1]  12/12
now [7]  7/5 7/19 9/23 12/7 12/12 12/18
16/14
nullity [2]  12/22 13/6
number [5]  3/19 7/3 7/4 8/14 15/14
numbers [2]  7/3 7/5
NY [1]  2/16

## O

objection [1]  9/23
objections [2]  10/19 16/9
obvious [1]  15/6
obviously [2]  11/18 16/8
off [1]  8/23
okay [3]  6/20 16/20 17/2
old [1]  15/17
once [3]  11/5 11/10 15/18
one [8]  6/3 8/20 9/9 10/13 11/7 13/13
13/17 15/13
only [2]  13/11 13/17
opportunity [1]  7/11
order [9]  5/13 8/12 9/13 9/22 11/15 12/3
13/18 13/21 14/24
orders [2]  9/24 14/15

## other [5]  5/17 11/21 12/15 13/11 16/3

otherwise [2]  9/7 15/10
ought [4]  4/4 8/8 8/16 8/17
our [13]  5/12 5/19 7/2 8/22 11/16 11/19
13/23 13/24 14/1 15/21 16/1 16/5 16/5
out [9]  5/14 5/21 6/2 9/15 9/15 9/15
10/11 10/19 11/5
over [1]  6/7
overlap [1]  12/13
own [1]  11/9

## P

P.M [1]  3/1
page [4]  2/9 7/12 15/14 18/10
pages [1]  6/12
Palo [1]  2/10
paragraph [1]  6/17
parallel [1]  13/13
Park [1]  2/15
part [1]  9/21
parte [2]  9/8 10/20
parties [9]  3/18 4/4 4/7 5/15 5/20 6/6 8/7
8/13 12/2
parties' [1]  4/17
partner [1]  3/8
parts [1]  8/4
party's [1]  5/18
pasting [1]  6/13
patent [10]  9/17 12/14 12/17 13/3 13/24
14/13 14/23 15/13 16/1 16/8
patents [9]  5/14 7/25 8/3 8/24 9/6 12/11
14/3 14/8 14/10
peck [1]  10/6
pending [1]  16/7
people [2]  7/13 11/13
Per [1]  3/2
permit [1]  9/13
pick [2]  7/5 7/21
picked [1]  7/4
place [4]  9/13 9/23 10/2 10/14
plaintiff [2]  3/5 13/18
plaintiffs [4]  1/10 2/2 7/21 10/5
plan [1]  16/18
planning [3]  5/12 7/25 12/6
play [1]  15/4
pleading [5]  5/12 8/25
please [3]  3/5 3/10 10/24
point [9]  6/4 8/7 9/19 9/20 11/5 11/6
11/18 13/12 14/2 16/3
points [1]  5/25
poker [1]  3/22
policy [2]  11/21 11/24
possible [2]  10/22 12/7 13/14
potentially [2]  6/5 6/7
practice [1]  16/21
preparing [1]  7/11
present [1]  4/8
presently [1]  9/12
PRESIDING [1]  1/8
prevent [1]  16/13
prior [9]  3/20 3/20 3/25 4/1 4/5 4/9 4/21
8/15 13/13
probably [1]  7/15
problem [2]  14/3 14/18
problems [3]  11/22 12/8 13/7
proceed [2]  10/2 12/19
proceedings [3]  1/15 17/3 18/9
produce [3]  9/11 9/20 10/16
produced [3]  11/10 12/16 14/25
producing [1]  16/10
product [1]  11/9
production [3]  9/14 9/17 14/13
productions [1]  8/14
proper [1]  11/25
proposal [7]  4/8 4/11 4/20 4/24 5/21
8/13 8/15

Exhibit 13
-96-

**P**

propose [1]  4/7
proposed [1]  4/18
protective [3]  9/13 9/22 14/15
provide [1]  12/2
provided [4]  10/12 11/19 11/20 11/23
public [1]  15/13
purported [1]  13/25
purpose [1]  10/9
pursuant [2]  4/24 18/6
put [1]  7/13
putting [1]  6/4

**Q**

question [1]  8/20
quickly [1]  12/6
quite [1]  14/8

**R**

raise [2]  5/25 12/6
raised [2]  11/6 12/21
RE [5]  2/3 3/7 5/7 9/9 15/23
real [1]  13/22
really [3]  7/10 10/4 10/8
reasons [2]  7/8 14/5
received [1]  5/17
reduction [3]  3/19 4/8 4/12
reductions [1]  4/10
reevaluate [1]  9/6
references [4]  3/20 4/9 4/21 8/15
reflect [1]  4/19
reflected [1]  9/2
regard [1]  9/17
regarding [1]  5/13
regulations [1]  18/11
reign [1]  7/6
relate [1]  13/1
related [2]  6/14 12/23
relates [2]  12/25 13/3
relevant [3]  11/12 12/11 12/17
relief [1]  10/21
render [2]  12/22 13/5
replead [1]  16/16
report [1]  3/15
reported [1]  18/8
REPORTER [1]  18/16
REPORTER'S [1]  1/15
requests [1]  12/1
require [2]  3/19 4/25
required [1]  9/10
respond [1]  12/20
results [1]  16/21
review [2]  6/19 6/24
road [2]  2/9 7/8
ROSENTHAL [3]  2/8 2/14 3/13
roughly [1]  15/16
round [2]  4/3 8/14
Royal [1]  3/25
RPR [1]  1/19
rule [4]  10/4 11/24 12/9 13/8
ruled [1]  12/4
ruling [1]  14/23
run [2]  12/7 14/3

**S**

SACV [1]  1/11 3/3
SACV-20-00048-JVS [2]  1/11 3/3
said [5]  5/10 5/20 9/9 12/25 14/24
same [1]  6/25
San [1]  2/13
Santa [3]  1/16 1/20 3/1
say [5]  6/3 10/23 14/7 15/7 15/13
says [1]  12/5
schedule [2]  8/5 9/22
scheduling [1]  12/3

scope [2]  11/25 15/20
reconoce [2]  18/6 15/23
secret [20]  10/7 10/7
secrets [11]  10/7 10/10 10/13 12/13
  12/15 12/24 13/4 13/25 14/9 15/21
  15/22
Section [2]  11/15 18/6
see [2]  9/3 16/21
seek [1]  10/20
seen [6]  6/10 11/16 15/21 16/9
SEFFENS [3]  1/19 18/15 18/16
selections [1]  4/20
SELNA [1]  1/8
sense [2]  5/3 6/25
separate [1]  9/3
September [1]  5/22 8/23
September 21 [1]  5/22
serious [1]  15/10
set [3]  5/12 7/2 8/21
seven [1]  15/16
share [1]  5/11
SHARON [3]  1/19 18/15 18/16
sheep's [1]  15/6
short [1]  9/8
should [7]  7/15 9/10 11/19 12/12 12/16
  12/18 16/23
show [1]  13/19
side [1]  13/3
sides' [1]  4/19
significant [1]  6/12
similar [1]  6/24
simply [2]  6/16 11/9
single [2]  6/22 13/13
sink [1]  7/17
sit [1]  6/15
situation [3]  10/5 13/22 15/9
six [1]  5/2
slipping [1]  5/2
so [19]
some [19]
somebody [1]  6/15
something [3]  6/10 7/9 7/19
sort [1]  7/12
SOUTHERN [1]  1/6
space [1]  4/19
specific [1]  4/11
specificity [1]  15/12
stage [2]  7/10 8/17
staging [1]  9/24
start [1]  8/2
statement [1]  10/2
states [5]  1/4 1/19 12/23 18/7 18/11
statute [4]  12/22 13/6 13/9 14/19
stenographically [1]  18/8
STEPHEN [1]  2/3 3/8
still [2]  6/14 15/7
stipulate [1]  7/23
Street [3]  1/20 2/4 2/12
strenuous [1]  16/9
subject [1]  14/13
submit [1]  8/13
substantially [1]  8/5
substituting [1]  5/14
such [1]  16/9
suggested [1]  15/10
suggesting [1]  7/18
Suite [2]  1/20 2/12
Suppose [1]  3/22
sure [3]  6/10 6/19 6/25

**T**

take [1]  16/23
talk [1]  7/5
talked [1]  10/17
target [4]  6/4 7/5 7/12 9/1
technical [7]  5/18 9/12 9/21 10/6 10/10

12/17 16/10
telephone [1]  18/16
telephonic [1]  3/2
ten [1]  7/22
terms [4]  4/18 4/23 6/8 8/17
terrible [1]  7/4
than [3]  7/21 8/12 14/7
thank [3]  3/6 3/15 5/8 5/24 10/25 16/24
  16/25 17/1 17/2
that [119]
that's [13]  5/3 5/12 6/9 6/20 7/8 7/18
  7/25 8/11 10/13 14/14 14/22 15/16
  15/18
their [7]  4/4 4/5 11/9 13/25 14/3 15/22
  16/7
theirs [1]  14/1
them [1]  6/10
then [19]
there [22]
there's [6]  6/21 7/4 7/7 12/8 13/2 15/15
these [14]  6/10 6/11 6/4 7/8 7/13 9/14
  10/5 10/18 11/1 11/5 11/10 11/22 11/22
  16/3
they [18]  7/14 7/15 7/16 8/8 10/7 10/8
  10/16 12/2 12/12 12/13 12/17 13/19
  14/3 15/10 15/12 15/17 16/10 16/11
they'll [1]  7/13
they're [3]  6/6 7/24 16/12
they've [3]  15/10 15/11 15/25
thicket [1]  13/24
thing [3]  6/3 9/9 13/11
things [3]  7/8 12/10 15/15
think [18]  4/15 4/18 4/22 5/9 5/10 5/20
  7/3 9/10 11/12 11/21 11/23 13/7 13/8
  13/17 14/5 15/19 16/14 16/20
third [2]  8/17 15/25
this [23]
those [10]  4/10 5/5 7/1 7/22 8/24 9/1
  10/10 10/13 14/5 15/15
though [3]  8/20 14/1 15/12
thought [1]  4/3
thoughts [2]  3/16 5/5
thousands [1]  6/12
through [2]  6/18 13/23
throw [2]  6/2 8/3
thrown [1]  7/16
time [8]  4/14 4/19 5/15 8/10 11/20 13/15
  15/25 16/14
times [1]  11/2
Title [1]  18/7
today [2]  16/13 16/23
tooth [1]  16/11
trade [27]
transcript [3]  1/15 18/8 18/10
trial [3]  4/14 5/4 8/18
tries [1]  14/2
trigger [1]  8/23
triggers [1]  8/22
trivial [1]  6/9
troubling [1]  8/1
true [1]  18/7
try [2]  10/7 13/25
trying [3]  7/18 8/2 10/8
two [2]  4/7 11/12
type [1]  10/20

**U**

U.S [1]  18/16
understand [3]  9/12 12/21 16/13
understood [1]  10/15
undo [1]  15/18
undone [1]  11/10
unfair [1]  3/18
unfortunately [1]  15/19
UNITED [4]  1/4 1/19 18/7 18/11
unnecessary [1]  15/19

Exhibit 13
-97-

## U

**unrung [1]** 10/13
**until [2]** 9/11 12/2
**up [11]** 3/24 4/19 5/21 6/5 6/11 6/15
6/23 8/2 8/21 10/7 16/23
**us [2]** 10/15 10/17
**use [1]** 13/24

## V

**vague [1]** 11/7
**valuable [1]** 11/8
**versus [1]** 3/4
**very [8]** 6/12 8/1 12/20 13/7 13/15 13/22
17/1 17/2
**viable [1]** 4/2
**view [2]** 7/2 11/19
**views [1]** 16/21

## W

**waiting [1]** 9/22
**want [6]** 5/11 8/9 8/25 10/23 11/17
15/17
**wanted [1]** 13/19
**wants [1]** 12/19
**was [8]** 10/15 10/17 13/13 13/15 13/17
13/18 14/14 14/22
**wasn't [1]** 4/2
**waterfall [1]** 12/7
**wax [1]** 9/4
**way [2]** 10/9 13/25
**ways [2]** 7/13 14/5
**we [52]**
**we'll [1]** 15/18
**we're [6]** 5/9 8/2 8/18 9/22 12/6 13/5
**we've [1]** 7/24
**weave [1]** 14/2
**week [1]** 3/16
**weeks [2]** 4/7 5/2
**Well [3]** 9/5 15/24 16/20
**were [9]** 5/18 7/18 14/9 14/17 15/3 16/3
16/4 16/13 17/3
**West [1]** 1/20
**what [14]** 4/6 4/14 6/7 8/12 8/16 8/17
8/18 11/12 11/16 14/14 15/20 15/22
16/12 16/21
**what's [1]** 13/10
**whatever [3]** 4/24 6/18 7/20
**whatsoever [1]** 15/12
**when [4]** 3/24 8/25 11/14 12/14
**where [6]** 6/10 10/5 13/17 14/7 14/18
15/10
**Whereupon [1]** 17/3
**whether [4]** 6/16 7/20 11/25 14/14
**which [13]** 5/18 6/12 6/14 6/23 8/22 9/22
9/25 11/6 11/18 12/2 12/3 12/19 14/12
**who [2]** 11/16 15/21
**whole [2]** 10/4 10/9
**why [2]** 7/18 14/22
**will [9]** 5/14 5/20 5/21 8/7 8/13 12/8 13/6
13/11 16/11
**wind [1]** 6/11
**winds [1]** 6/15
**within [3]** 4/7 4/10 12/1
**without [3]** 13/20 13/21 15/2
**withstanding [1]** 15/15
**wolf [1]** 15/5
**work [4]** 5/21 11/9 11/14 11/17
**world [1]** 3/22
**worrying [1]** 6/23
**would [20]**
**wouldn't [1]** 7/14
**wrench [1]** 8/4

## Y

**years [1]** 11/8

**yes [3]** 5/17 15/3 16/18
**yesterday [2]** 3/10 11/13
**yet [1]** 5/17
**York [1]** 2/16
**you [43]**
**you've [1]** 6/10
**your [21]**
**yourselves [1]** 8/9

Exhibit 13
-98-

# EXHIBIT 15

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian K. Andrea
Direct: +1 202.887.3624
Fax: +1 202.530.4220
BAndrea@gibsondunn.com

October 17, 2020

VIA E-MAIL (STEPHEN.LARSON@KNOBBE.COM)

Stephen Larson
Knobbe, Martens, Olson & Bear LLP
2040 Main St., 14th Floor
Irvine, CA 92614

Re:   Masimo Corp. et al. v. Apple, Inc., C.A. 8:20-cv-00048 (C.D. Cal.)

Dear Steve:

I am writing in response to your letter dated October 1, 2020.  In view of the Court's October 14, 2020 Order granting Apple's Motion to Stay, the issues related to Plaintiffs' patent infringement allegations in your letter are moot, and thus Apple has not responded to those issues.

Your letter raised a kitchen-sink list of objections to three rounds of Apple's discovery requests (the most recent of which were served seven weeks prior to your letter), as well as a host of other issues.  In the interest of accommodating Plaintiffs' request for a letter and meet and confer on these topics, Apple provides this response.  However, it continues to reserve all rights, including without limitation its right to challenge additional aspects of Plaintiffs' October 1 letter that are not addressed in this letter.

**Plaintiffs' First and Second Set of Requests For Production (RFP Nos. 1-60)**

**"Apple's Improper Exclusive Reliance on Custodians and Search Terms":**  Plaintiffs request that Apple identify whether it has identified any RFPs that may be satisfied by use of search terms and custodians alone.  Apple responds that it has identified RFP Nos. 26, 31, 32, 80-82, 89-97, 117, 128, 129, and 136 as RFPs where it intends to use search terms and custodians to identify responsive documents.

**Plaintiffs' RFP Nos. 5-8, 10-11, and 26-27:**  Apple has objected to some or all of these RFPs on grounds other than Plaintiffs' failure to comply with Section 2019.210, including for example Plaintiffs' failure to provide any temporal scope for these RFPs and the overbroad nature of these RFPs, which seek documents with no relevance to any claim or defense in this case and publicly available documents.  *See, e.g.*, May 26, 2020 Letter from I. Samplin to M. Kachner, at 7–8.  Thus, your assertion in your letter that Apple is withholding documents "solely" based on its Section 2019.210-related objection is incorrect.

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

Exhibit 15
-120-

**GIBSON DUNN**

Stephen Larson
October 17, 2020
Page 2

In addition, Plaintiffs have argued for months that these RFPs relate to their patent infringement claims, as the Court noted.  Dkt. No. 79 at 2 ("Plaintiffs argued that RFP Nos. 5-25 seek patent discovery." (citing Dkt. No. 43-1 at 4, 34, 36)); 6/23/2020 Kachner to Samplin letter.  Moreover, Judge Early found that one of these RFPs (RFP 8) "seek[s] some of the same categories of information Plaintiffs allege as their trade secrets," and even then is still "relevant to patent issues, including infringement," as Plaintiffs themselves argued.  Dkt. No. 54 at 8 (citing Dkt. No. 43-1 at 34); *see also* Dkt. No. 79 at 4.  As explained above, on October 14, 2020, the Court stayed the patent infringement case, which includes discovery related to those claims.  Thus, your issues related to these RFPs are moot on that basis alone, and Apple is not obligated to respond to these requests until the patent infringement case is resumed.

Even if these RFPs constitute trade secret discovery—and Plaintiffs have made clear their position that they do not—Plaintiffs' October 9, 2020 attempt at a Section 2019.210 statement is deficient, and thus does not comply with Section 2019.210.  Accordingly, Apple will maintain its objection to these RFPs until Plaintiffs serve an adequate Section 2019.210 disclosure.

**Plaintiffs' RFP No. 9:**  As explained above, Plaintiffs have consistently argued for months that this Request is "patent discovery," and the Court agreed with Plaintiffs.  Accordingly, because the patent infringement case is stayed, your issues with respect to this Request are moot, and Apple is not obligated to respond to this Request until the Court lifts the stay.

In addition, to the extent this Request constitutes trade secret discovery—and not only have Plaintiffs consistently argue that it does not, this Request is also not one of the four that the Court found related to "some of the same categories of information Plaintiffs allege as their trade secrets" (Dkt. No. 54 at 8)—Plaintiffs.  have not yet complied with Section 2019.210, and thus Apple is not obligated to respond to this Request because trade secret discovery remains stayed until Plaintiffs comply with Section 2019.210.

**Plaintiffs' RFP Nos. 12-25:**  As explained above, Plaintiffs have consistently argued for months that these RFPs are "patent discovery," and the Court agreed with Plaintiffs.  Accordingly, because the patent infringement case is stayed, your issues with respect to these RFPs are moot, and Apple is not obligated to respond to these RFPs until the Court lifts the stay.

In addition, to the extent these RFPs constitutes trade secret discovery—and Plaintiffs have consistently argued that they do not—Plaintiffs have not yet complied with Section 2019.210, and thus Apple is not obligated to respond to these RFPs because trade secret discovery remains stayed until Plaintiffs comply with Section 2019.210.

Exhibit 15
-121-

**GIBSON DUNN**

Stephen Larson
October 17, 2020
Page 3

## Plaintiffs' Third Set of Requests For Production (RFP Nos. 61-147)

**Section 2019.210:**  Apple does not understand your issue concerning these RFPs.  In its August 17, 2020 Objections and Responses to Plaintiffs' Third Set of RFPs, Apple stated for each of these RFPs that "based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210."  Thus, Apple has agreed to produce responsive documents that are not related solely to Plaintiffs' trade secret misappropriation claim.[1]  Discovery of "documents or things that relate solely to Plaintiffs' trade secret misappropriation claim" is stayed pending Plaintiffs' compliance with Section 2019.210.  Dkt. No. 37 at 1.  As explained in our recent correspondence, Plaintiffs have not yet complied with Section 2019.210, so Apple stands by this objection.

**"Temporal Scope":**  Plaintiffs request that Apple identify whether it is withholding documents based on its objection that certain of Plaintiffs' RFPs lack a temporal limitation.  Apple confirms that it is not withholding documents based on this objection.  As Apple explained previously, temporal limitations for discovery requests are standard—particularly requests propounded by plaintiffs who have superior knowledge of the relevant time periods at issue.  Plaintiffs are in the best position to propose time period limitations here.  Upon Plaintiffs' identification of relevant time periods, Apple will provide information and documents in its possession, custody, or control for the relevant time period.

**"Undefined Terms":**  Plaintiffs request that Apple identify whether it is withholding documents based on its objection that certain of Plaintiffs' RFPs use vague or ambiguous terms or phrases.  Apple confirms that it is not withholding documents based on this objection.  Apple is not refusing to produce responsive documents on the basis that any terms or phrases are "vague, ambiguous, overly broad, and unduly burdensome." Apple confirms that it will use the plain and ordinary meaning of the terms in Plaintiffs' RFPs when searching for responsive documents.

**"Public Documents":**  Plaintiffs request that Apple identify whether it is withholding documents based on its objection that certain of Plaintiffs' RFPs seek information already in Plaintiffs' possession or information that is obtainable from another source.  Apple confirms that it is not withholding documents based on this objection.  To the extent a reasonable search yields publicly available documents responsive to Plaintiffs' RFPs, Apple will

---

[1]  To the extent these RFPs seek documents that are relevant to Plaintiffs' patent infringement claims, patent discovery has been stayed by the Court's October 14, 2020 Order (Dkt. No. 220).

Exhibit 15
-122-

**GIBSON DUNN**

Stephen Larson
October 17, 2020
Page 4

produce them, but it will not specifically search for publicly available documents as those
documents are just as easily available to Plaintiffs. Apple also notes that Plaintiffs made this
same objection to Apple's RFP Nos. 15, 31, 38, 39, 42, 43, and 47, and the approach to
public documents should be reciprocal.

**Plaintiffs' RFP Nos. 67-69, 86, 88, 101, 122, 128-130, and 133-135:**  Plaintiffs request that
Apple provide its position with regards to these RFPs in advance of the parties' meet and
confer.

Apple objects to RFP Nos. 67-69 and 88 because they are irrelevant to the issues in the
present action and not reasonably calculated to lead to the discovery of admissible evidence.
Indeed, it is unclear how documents related to FDA correspondence or approval (RFP Nos.
67-79) and physiological parameter evaluation (RFP No. 86) are relevant to this litigation.

Apple objects to RFP Nos. 88, 101, 122, 128-130, and 133-135 because they are overly
broad and unduly burdensome and not reasonably tailored to the issues in this case.  As a
result, these RFPs seek documents nor proportional to the needs of the case.   However,
Apple is willing to meet and confer to discuss what specifically Plaintiffs are seeking through
these overbroad requests, as Apple may be willing to agree to provide certain documents if
Plaintiffs are willing to narrow the scope of the requests.

Apple objects to RFP No. 128 to the extent it requests "subject matter disclosed or claimed in
the disputed patents."  As previously explained, the language of this Request requires Apple
to draw a legal conclusion in order to respond.  Apple is willing to meet and confer to discuss
the scope of this request.  However, Apple is willing to meet and confer to discuss what
specifically Plaintiffs are seeking through these overbroad requests, as Apple may be willing
to agree to provide certain documents if Plaintiffs are willing to narrow the scope of the
requests.

**Plaintiffs' RFP Nos. 80-82, 101, 136:**  Plaintiffs request that Apple confirm that it will
perform a reasonable search for and produce the documents requested by these RFPs.  As
explained above, Apple has identified RFP Nos. 80-82 and 136 as RFPs whose discovery
obligations are met by a search of (i) the files of specific custodians negotiated between the
parties, whose files are in the possession, custody, or control of Apple and (ii) specific search
terms negotiated between the parties.  Plaintiffs' inclusion of RFP No. 101 in this list is
nonsensical, as Apple did not identify RFP No. 101 as an RFP for which it intends to use
search terms and custodians to identify responsive documents.

**Plaintiffs' RFP Nos. 89-97, 129, and 136:**  Apple maintains that these RFPs are overly
broad and unduly burdensome, and the use of search terms and custodians to identify
responsive documents is the reasonable and proportional way of identifying responsive

Exhibit 15
-123-

**GIBSON DUNN**

Stephen Larson
October 17, 2020
Page 5

documents.  However, Apple is willing to meet and confer to discuss what specifically Plaintiffs are seeking through these overbroad requests, as Apple may be willing to agree to perform searches for certain documents if Plaintiffs are willing to narrow the scope of the requests.

**Plaintiffs' RFP Nos. 132 and 144:**  Plaintiffs request that Apple produce organizational charts responsive to their RFPs.  Apple maintains its objection.  As noted in Apple's Responses to these RFPs, Apple does not maintain organizational charts, and thus does not have any documents responsive to this Request that can be located after a reasonably diligent search.

### "Compliance with ESI Order"

Apple believes that the exchange of custodians at this stage in the case is premature and inappropriate.  Indeed, and as discussed above, Plaintiffs have yet to provide a sufficient trade secret disclosure or responses to Apple's discovery, and Apple has not yet filed an answer.  Apple also contends that the parties should discuss reasonable limits on the number of custodians before any exchanges of custodians can occur.

### "Apple's Deficient Document Production"

As Apple's investigation of the facts relevant to this litigation is ongoing and, while its efforts to identify responsive documents are ongoing, its ability to collect certain documents relevant to the issues in this case has been hindered by Plaintiffs inability to provide a sufficient disclosure of its trade secrets.  Apple will continue to produce documents on a rolling basis, as it has been doing since the outset of discovery.

*          *          *

Apple is available to meet and confer with Plaintiffs, as requested by your October 1, 2020 letter, on the following days and times:  Tuesday October 20 between 9am and 10am PT; Wednesday October 21 between 9:30am and 11am PT; and Thursday October 22 between 10am and 11:30am PT.  Please let us know if any of those times work for you.

With respect to your request for confirmation that "Plaintiffs may record the parties' meet and confer," Apple is amenable to recording the meet and confer.  If Plaintiffs would like to record the meet and confer, please arrange for a court reporter to transcribe the call.

Exhibit 15
-124-

**GIBSON DUNN**

Stephen Larson
October 17, 2020
Page 6

Sincerely,

Brian K. Andrea

Exhibit 15
-125-

EXHIBIT 16

# Knobbe Martens

**KNOBBE, MARTENS, OLSON & BEAR, LLP**

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Stephen W. Larson
Stephen.Larson@knobbe.com

October 1, 2020

**<u>VIA EMAIL</u>**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.,
Washington, DC 20036-5306

Re:    Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

        We write pursuant to Local Rule 37-1 to address various discovery issues and request a meet and confer.

### <u>Plaintiffs' First and Second Set of Requests For Production (RFPs 1-60)</u>

        **Apple's Improper Exclusive Reliance on Custodians and Search Terms:**  Apple has taken the position that, as to one or more requests, it may rely <u>solely</u> on search terms and ESI searches to look for responsive documents.  That is improper.  Apple should perform a reasonable search for documents separate and apart from ESI searching by, for example, talking to potential custodians and witnesses to determine where relevant documents may exist.  During the parties June 30th meet and confer, "Apple agreed to let Plaintiffs know if it determines that it will use search terms and custodians alone to satisfy Apple's discovery obligations for a particular RFP."  However, to date, Apple has not identified any such RFPs.  Please confirm that Apple will satisfy its discovery obligations and will not limit its searching to the use of search terms and custodians for any RFP.

        **Plaintiffs' RFPs 1, 3, 4, 34, 40, 51, and 59:**  Based on the correspondence between the parties, we understand that Apple is not withholding and does not intend to withhold documents based on its objections for these RFPs and that Apple intends to produce all non-privileged documents responsive to these RFPs.  Please confirm and let us know when Apple intends to produce such documents.

        **Plaintiffs' RFPs 5-8, 10-11, and 26-27:**  Based on the correspondence between the parties, we understand that Apple has withheld documents responsive to these RFPs based solely on Apple's position that Plaintiffs must first serve a Section 2019.210 statement that Apple deems adequate. Because the Court rejected Apple's position in its April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), we expect Apple will produce these documents.  Please confirm and let us know when Apple intends to produce such documents.

        **Plaintiffs' RFP 9:**  Based on the correspondence between the parties, we understand Apple has withheld documents responsive to this RFP based on Apple's position that Plaintiffs must serve its Section 2019.210 statement.  As explained above, the Court rejected Apple's position.  Thus, please confirm Apple will no longer withhold documents based on that position.  Apple also previously stated

# Knobbe Martens

that it intends to withhold publicly available documents.  As we previously explained, this is improper.  Apple should produce all documents in its possession, custody, or control, even if they are otherwise publicly available.  Please confirm Apple will produce such documents.  We understand Apple is not withholding and does not intend to withhold documents based on any other objections.  Please let us know if that is incorrect.

**Plaintiffs' RFPs 12-25:**  Based on the correspondence between the parties, we understand Apple has withheld documents responsive to this RFP based on Apple's position that Plaintiffs must serve its Section 2019.210 statement.  As explained above, the Court rejected Apple's position.  Thus, please confirm Apple will no longer withhold documents based on that position.  Apple also previously stated that it intends to withhold any documents that are "relevant specifically to any claim not asserted in this action."   As we have explained, Apple is not permitted to withhold responsive documents based on Apple's contention those documents are relevant to unasserted claims.  Indeed, Plaintiffs are entitled to Apple's documents, including for the purposes of selecting asserted claims.  Please confirm Apple will not maintain this objection.  We understand Apple is not withholding any documents based on any other objection.  Please let us know if that is incorrect.

**Plaintiffs' RFPs 28-33, 35-39, 41-46, 58, 60:**  Based on the correspondence between the parties, we understand Apple contends that these RFPs are premature until it receives Plaintiffs' infringement contentions, but that Apple will produce documents responsive to these RFPs upon receiving such contentions.  We disagree, but look forward to promptly receiving Apple's documents after Plaintiffs serve their infringement contentions.  Please let us know when you will provide these documents.

**Plaintiffs' RFPs 47-49:**  Based on the correspondence between the parties, we understand Apple intends to provide documents related only to how often a user's heart rate is measured and the operation of the LEDs in the Accused Products, but not as to the remainder of these Requests.  As we have previously explained, that is improper.  Please confirm Apple will produce all documents responsive to this request.

**Apple's Improper Attempts to Limit Document Productions to Accused Features:**  Apple has thus far improperly limited Apple's core technical document production to include only documents that relate to features Apple claims were accused of infringement.  Apple has not stated any such objection to RFPs 1-60 and any such objection would be improper.  Please confirm that Apple will produce all responsive documents, including—at a minimum—all responsive documents related to physiological monitoring.

## Plaintiffs' Third Set of Requests For Production (RFPs 61-147)

**Section 2019.210**:  Apple objects to all RFPs 61-147 on the basis of Section 2019.210 and states that it will "withhold" "documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210. . . ."  None of Plaintiffs' RFPs, however, seek only documents relevant to Plaintiffs' trade secret misappropriation claim.  If Apple disagrees and is withholding documents on this basis, please identify the specific RFPs and explain Apple's position.

**Temporal Scope:**  Apple objects to Plaintiffs' RFPs 67-74, 76, 78, 79, 88-91, 97, 98, 100-109, 122-125, 129, 131-135, and 143 on the ground that they are "vague, ambiguous, overly broad, and

**Knobbe Martens**

unduly burdensome" because the request does not identify a relevant time period.  If Apple is withholding or intends to withhold documents based on this objection, please identify the specific RFPs,

**Undefined Terms:**  Apple objects to certain requests that use "undefined" terms or phrases such as but not limited to: "refer or relate to," "concerning," "evaluating," "discussing," "commenting," "instructional materials," "directions for use," "training materials," "training manuals," "training videos," "marketing materials," "promotional materials," "informational materials," "internet postings," "physiological monitoring features," "technical documents," "technical information," "specifications," "research data," "pulse rate," "heart rate," "optical . . . components," "structural components," "components," "surface areas," "adhesives," "physiological parameter," "heart rate algorithms," "development," "first heart rate metrics," "first technique," "first period," "second heart rate metrics," "second technique," "second period," "changes in collecting heart rate metrics," "change in operating mode," and "user input."  Please confirm Apple will interpret these terms and phrases according to their plain and ordinary meaning and produce responsive documents accordingly.  If Apple is withholding or intends to withhold documents based on this objection, please identify the specific RFPs,

**Products Not Identified in the Complaint:**  Apple objects to Plaintiffs RFPs 63-72, 74, 76, 78-84, 86, 87, 97, 100-109, and 131-134 to the extent that they seek "documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of infringement."  Apple is incorrect that products not specifically accused of infringement are not relevant to this litigation.  For example, the features of the Series 1 Watch are relevant to this case at least because a comparison between the Series 1 Watch and the Series 3 and later watches may be relevant to showing the value of the features in the later watches.  Apple also objects to RFP 85 because it requests documents related to "Defendant's products" and Apple claims that this term is "undefined and appears to seek documents related to products that are not relevant to this litigation."  This RFP requests documents "referring or relating to, or otherwise evidencing, factors Apple considered when selecting technology that it used to monitor any <u>physiological parameter</u>, for use in Defendant's products."  This request is clear and seeks relevant documents.  Please confirm Apple is not relying on and does not intend to rely on these objections to withhold relevant documents.

**Not Limited to the Publicly Released Apple Watch Series 3-5 Devices:**  Apple objects to Plaintiffs' RFPs 63-73, 75, 79, 80, 82-84, 97, 100-105, 107, and 131-134 as overbroad and unduly burdensome because they are not "limited to the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the Asserted Patents."  As a preliminary matter, Plaintiffs have not yet served their infringement contentions because the Court extended Plaintiffs' deadline to do so.  To the extent Apple's objection is based on Plaintiffs' preliminary contentions that were limited to public information only, that is improper.  Further, as discussed above, Apple is incorrect that products not accused of infringement cannot be relevant to this litigation.  Please confirm Apple is not using this objection as a basis to withhold requested discovery.

**Public Documents**:  Apple objects to Plaintiffs' RFPs 61-96, 104, 110- 112, 114-121, 126-129, 133, 134, 136-142, and 145-147, to the extent they seek "information already in Plaintiffs' possession or information that is obtainable from another source, such as publicly available materials, that is more convenient, less burdensome, or less expensive."  To the extent Apple intends to withhold documents within Apple's possession, custody, or control based on this objection, that is improper.  Please confirm

**Knobbe Martens**                                                                          Page 4

---

Apple is not withholding and does not intend to withhold public documents within Apple's possession, custody, or control.

**Plaintiffs' RFPs 63-65, 70-85, and 87:**  In addition to the issues identified above, Apple has indicated that it only "agrees to produce documents related to the technical features accused of infringement" for these RFPs.  As the parties have discussed, this objection is improper.  Please confirm that Apple will produce all responsive documents, including—at a minimum—all responsive documents related to physiological monitoring.

**Plaintiffs' RFPs 67-69, 86, 88, 101, 122, 128-130, and 133-135:**  In addition to the issues identified above, Apple has requested that the parties meet and confer on the scope of these requests.  Plaintiffs believe that the scope of these requests is appropriate, but are willing to meet and confer.  So that the parties can have a productive discussion, please provide Apple's position on what documents it is willing to provide in advance of the parties' meet and confer.

**Plaintiffs' RFPs 80-82, 101, 136:**  In addition to the issues identified above, Apple's objections limit its production of documents responsive to these RFPs to documents identified in a "search of (i) the files of specific custodians negotiated between the parties, whose files are in the possession, custody, or control of Apple, using (ii) specific search terms negotiated between the parties."  As discussed above, Apple should perform a reasonable search for documents separate and apart from ESI searching.  Please confirm that Apple will perform a reasonable search for and produce the requested documents.

**Plaintiffs' RFPs 89-97:**  In addition to the issues identified above, Apple contends that these requests are "overly broad but is willing to meet and confer as part of the ESI negotiation process to reach an agreement with Plaintiffs on custodians and search terms applicable to this Request."  As explained above, Apple should perform a reasonable search for documents separate and apart from ESI searching.  Please confirm that Apple will perform a reasonable search for and produce the requested documents.  Further, Plaintiffs believe that the scope of these requests is appropriate but are willing to meet and confer both on these requests specifically and on ESI more generally as discussed below.

**Plaintiffs' RFPs 91, 129, and 136:**  In addition to the issues identified above, Apple objects to these requests because they seek any or all communications that Apple contends "will be negotiated and produced pursuant to the ESI Order in this case."  Plaintiffs do not understand this objection or its basis.  Please explain this objection and confirm that Apple is not relying on and does not intend to rely on this objection to withhold any requested discovery.

**Plaintiffs' RFPs 98 and 99:**  In addition to the issues identified above, Apple has indicated that it "is willing to meet and confer to discuss the mutual exchange of relevant and reasonable financial information."  These RFPs relate to forecasts and projections that are prepared in the ordinary course of business.  Thus, there is no need to wait for a future mutual exchange of generated financial spreadsheets.  However, Plaintiffs are willing to meet and confer.  So that the parties can have a productive discussion, please explain Apple's position on these RFPs prior to the meet and confer.

**Plaintiffs' RFPs 132 and 144:**  In addition to the issues identified above, Apple has stated that it will not produce documents responsive to these requests because "Apple does not maintain organizational charts, and thus does not have any documents responsive to this Request that can be

**Knobbe Martens**                                                                 Page 5

---

located after a reasonably diligent search." Plaintiffs find it difficult to believe that a company the size of Apple does not have documents showing Apple's organizational structure or the reporting and supervisory obligations of various employees.  Apple should produce documents providing the requested information, regardless of whether Apple internally labels these documents as "organizational charts."  Please confirm Apple will produce such documents.

### Compliance with ESI Order

Pursuant to Section 1 of the ESI order, the parties agreed to exchange proposed custodians "who are knowledgeable about and were involved with the core issues or subjects in this case" in connection with the meet and confer process on ESI.  Moreover, as discussed above, Apple has referenced and conditioned its production of documents with reference to its production of ESI.  Plaintiffs propose that the parties exchange proposed custodians on October 15.  Please let us know if Apple agrees.  If Apple does not agree, please propose another date for this exchange.

### Apple's Deficient Document Production

To date, Apple has produced approximately 1,000 documents.  Apple has failed to produce responsive documents even as to RFPs as to which it committed to produce documents months ago.  Please let us know when Apple will make substantial document productions.

### Plaintiffs Interrogatories Nos. 1 and 6-10

**Plaintiffs' Interrogatory No. 1:**  This interrogatory requests details on Apple's non-infringement positions.  Apple previously indicated it would provide a full response to Interrogatory No. 1 after Plaintiffs provide infringement contentions.  Under the new schedule proposed by the Parties, Plaintiffs' infringement contentions are due November 13, 2020.  Plaintiffs request that Apple will provide a full response by December 7, 2020.  Please confirm Apple will do so.

**Plaintiffs' Interrogatory No. 7:**  This interrogatory requests details on the design and development of the Apple Watch.  Apple's response is woefully deficient and provides little of the requested information.  Please confirm that Apple will supplement its response by October 8

**Plaintiffs' Interrogatory No. 8:**  This interrogatory requests details on the design and development of the product software related to physiological monitoring for each Apple Watch product.  Again, Apple's response is woefully deficient and provides little of the requested information.  Please confirm Apple will supplement its response by October 8.

**Plaintiffs' Interrogatory No. 9:**  This interrogatory requests details on the operation of the pulse rate algorithm associated with each of the Apple Watches.  Yet again, Apple's response is deficient and provides little of the requested information.  Please confirm Apple will supplement its response by October 8.

**Plaintiffs' Interrogatory No. 10.**  This interrogatory requests details on any test, analysis, comparison, or competitive analysis that Apple performed on any non-Apple physiological monitor.  Apple's response requests a meet and confer to discuss the relevance of the information sought by Plaintiffs.  This interrogatory clearly seeks relevant information and Apple needs to provide a

# Knobbe Martens

substantive response.  So that the parties can have a productive discussion, please explain Apple's position prior to the meet and confer.

## Invalidity Contentions and Plaintiffs' Interrogatory No. 2

Apples' invalidity contentions are woefully deficient.  Apple was required, among other things, to provide "an explanation of why the prior art renders the asserted claim obvious, including an identification of any combinations of prior art showing obviousness."  Apple's invalidity contentions failed to provide the necessary obviousness analysis and instead asserts that Apple may rely on any potential combination of its identified references for any potential claim.  This amounts to billions of potential combinations.  Apple also fails to provide any evidence or reasoned explanation on how or why limitations missing in any particular reference would be obvious to a person of ordinary skill in the art.  Please confirm Apple will immediately provide proper invalidity contentions.

Plaintiffs' Interrogatory No. 2 asks for Apple's invalidity positions in this case, including an explanation of why it would have been obvious to combine the prior art references on which you rely in alleging obviousness.  Apple has previously taken the position that it will provide a response to this interrogatory "in accordance with the Scheduling Order entered in this case."  Apple has served invalidity contentions, but as discussed above, those contentions are deficient.  Please confirm that Apple will fully respond to interrogatory number two, including an identification of the specific prior-art combinations on which Apple will rely and an explanation of why it would have been obvious to combine such references.

## Apple Watch Series 6 and SE

Apple recently released the Apple Watch Series 6 and Series SE.  We notified you that these products are accused of infringement in this case.  Moreover, Plaintiffs' definition of "Accused Products" and "Apple Watch Products" encompass both of these products.  Please confirm that, as to each of Plaintiffs' RFPs, Apple will provide the requested discovery as to the Apple Watch Series 6 and Series SE.

## Apple's Refusal to Comply with Paragraph 4.5 of the Protective Order

Apple has inappropriately refused to produce documents contained in the "docs" subdirectory with respect to AppleRTPFirmware-115.9.  Per Paragraph 4.5 of the Protective Order, Apple must produce these documents.  Apple incorrectly claims it is entitled to redact the entirety of the documents under the Protective Order.  The Protective Order allows Apple to redact only the portions that "contain *specific* descriptions of source code (e.g. descriptions of declarations, functions, and parameters) that describe how the source code operates, to be *narrowly applied*."  The documents contained in the "docs" subdirectory for AppleRTPFirmware-115.9 extend well beyond "specific descriptions of source code (e.g. descriptions of declarations, functions, and parameters)."  Please confirm that Apple will produce these documents.

Please let us know your availability to meet and confer pursuant to L.R. 37-1, to address the issues in this letter.  Please also provide the responses requested by this letter before the meet and confer.  In addition, please confirm Plaintiffs may record the parties' meet and confer.

# Knobbe Martens

Best regards,

Stephen W. Larson

32796726

# EXHIBIT 17

| | |
|---|---|
| **From:** | Morgan, Tracy A. |
| **To:** | Joe.Re; Steve.Jensen; Perry.Oldham; Adam.Powell; Stephen.Larson; Masimo.Apple |
| **Cc:** | *** Apple-Masimo |
| **Subject:** | Masimo v. Apple - Apple Production (APLPROD014) |
| **Date:** | Wednesday, October 14, 2020 5:42:53 PM |

Counsel,

Documents are available for download.  The credentials to access the SFTP site are below.  The SFTP password and production .RAR file password will be sent separately.  Please note these files will only remain available on the SFTP site for seven days.

Production Volume: APLPROD014
Bates Range: APL-MAS_00057148 - APL-MAS_00057602
Password: Sent separately

| | |
|---|---|
| **Host** | |
| **Connection type** | |
| **Port** | |
| **Username** | |
| **Password to SFTP** | |

**Tracy A. Morgan, CP**
Certified Paralegal

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.4186 • Fax +1 949.475.4686
TMorgan2@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 17
-133-

EXHIBIT 18

| | |
|---|---|
| **From:** | Morgan, Tracy A. |
| **To:** | Joe.Re; Steve.Jensen; Perry.Oldham; Adam.Powell; Stephen.Larson; Masimo.Apple |
| **Cc:** | *** Apple-Masimo |
| **Subject:** | Masimo v. Apple - Apple Production (APLPROD015) |
| **Date:** | Monday, December 14, 2020 1:15:29 PM |

Counsel,

Documents are available for download.  The credentials to access the SFTP site are below.  The SFTP password and production .RAR file password will be sent separately.  Please note these files will only remain available on the SFTP site for seven days.

Production Volume: APLPROD015
Bates Range: APL-MAS_00057603 - APL-MAS_00060546
Password: Sent separately

| Host | |
|---|---|
| **Connection type** | |
| **Port** | |
| **Username** | |
| **Password to SFTP** | |

**Tracy A. Morgan, CP**
Certified Paralegal

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.4186 • Fax +1 949.475.4686
TMorgan2@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 18
-134-

# EXHIBIT 19

| | |
|---|---|
| **From:** | Stephen.Larson |
| **To:** | Andrea, Brian |
| **Cc:** | Masimo.Apple; *** Apple-Masimo |
| **Subject:** | RE: Masimo v. Apple |
| **Date:** | Monday, November 16, 2020 2:57:36 PM |
| **Attachments:** | 2020_11_16 Larson to Andrea.pdf |

Brian,

Please see the attached letter.

Best,
Steve

---

**From:** Stephen.Larson
**Sent:** Tuesday, October 20, 2020 10:13 AM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple

Brian,

Thank you for your October 17 letter.  However, your letter fails to address numerous issues in my October 1 letter and we continue to believe it would be helpful for Apple to address these issues in writing before the parties meet and confer.  We will follow up with an additional letter outlining these issues.

Best,
Steve

---

**From:** Stephen.Larson
**Sent:** Saturday, October 10, 2020 10:32 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple

Brian,

We disagree, but in the interest of conducting a meaningful meet and confer, Plaintiffs will await Apple's responsive letter next week.

Best,
Steve

Exhibit 19
-135-

**From:** Andrea, Brian [mailto:BAndrea@gibsondunn.com]
**Sent:** Friday, October 9, 2020 6:18 PM
**To:** Stephen.Larson <Stephen.Larson@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Re: Masimo v. Apple

Steve,

It is unclear why you contend Apple should have met and conferred this week. The local rules require a meet and confer within 10 days - the 10th day falls on a holiday weekend, and thus I offered to meet and confer with you on Tuesday. In any event, your letter complains about discovery responses that Apple served 7 weeks before you sent your letter, so there does not appear to be any urgency to resolve your issues.

We will endeavor to provide a response to your letter next week.  Please let me know if you would like to meet and confer on Tuesday, as I offered, or if you would prefer to wait until after your receive our response.

Thanks,

**Brian Andrea**
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

On Oct 9, 2020, at 7:13 PM, Stephen.Larson <Stephen.Larson@knobbe.com> wrote:

 [External Email]
Brian,

Plaintiffs maintain that Apple should have met and conferred with Plaintiffs by this week.  Plaintiffs also believe it would be extremely helpful for Apple to provide its positions in writing before the meet and confer, to facilitate the discussion and hopefully avoid burdening the Court with unnecessary disputes.  When does Apple expect to provide its responsive letter?

Thanks,
Steve

---

**From:** Andrea, Brian [mailto:BAndrea@gibsondunn.com]
**Sent:** Thursday, October 8, 2020 5:57 PM
**To:** Stephen.Larson <Stephen.Larson@knobbe.com>

Exhibit 19
-136-

**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple

Steve,

Further to my email earlier today, I am available on Tuesday at 1pm ET to meet and confer, although please note that we do not anticipate having a response to your letter ready by that time, as your letter requested.  If you would prefer to hold off on the meet and confer until after you receive our response, please let me know.

During the call, please be prepared to discuss Mark's email earlier today regarding Plaintiffs' response to Apple's Interrogatory No. 2.

Thanks,
Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Thursday, October 8, 2020 2:33 PM
**To:** Stephen.Larson <Stephen.Larson@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple

Steve,

We are still reviewing your letter and preparing our responses to the various issues you raise.  We are not available to meet and confer tomorrow, and will provide our availability for a meet and confer when we respond.

Thanks,
Brian

**Brian Andrea**

GIBSON DUNN

Exhibit 19
-137-

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Stephen.Larson <Stephen.Larson@knobbe.com>
**Sent:** Thursday, October 8, 2020 2:05 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple

[External Email]
Brian,

We have not received a response to our October 1 letter and our request to meet and confer under Local Rule 37-1.  Please let us know if Apple is available to meet and confer tomorrow at 2 p.m. PST. If not, please propose another time to meet and confer tomorrow.

Thanks,
Steve

---

**From:** Stephen.Larson
**Sent:** Thursday, October 1, 2020 5:42 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo v. Apple

Brian,

Please see the attached letter.

Best,

Steve

**Stephen Larson**
Partner
949-721-5301 **Direct**

**Knobbe Martens**

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and

Exhibit 19
-138-

privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 19
-139-

EXHIBIT 20

# Knobbe Martens

**KNOBBE, MARTENS, OLSON & BEAR, LLP**

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Stephen W. Larson
Stephen.Larson@knobbe.com

November 16, 2020

**VIA EMAIL**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.,
Washington, DC 20036-5306

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write in response to your October 17, 2020 letter, and pursuant to Local Rule 37-1 to address various ongoing discovery issues and request a meet and confer.  Apple's letter did not address Plaintiffs' requests for Apple's positions on numerous issues.

### Apple's Reliance on Custodians and Search Terms

Apple has now identified RFP Nos. 26, 31, 32, 80-82, 89-97, 117, 128, 129, and 136 as the only RFPs as to which it intends to solely use search terms to identify responsive documents.  Plaintiffs disagree that Apple can satisfy its discovery obligations as to these requests through ESI searching alone.  For example, RFP 26 requests "[a]ll documents and things identified in, and/or relevant to the subject matter of Apple's responses to Plaintiffs' Interrogatories, including any and all supplements and amendments thereto."  At a minimum, as part of a reasonable search, Apple should identify all the documents it cited in its responses to Plaintiffs' interrogatories and consult with relevant Apple employees that may have other documents responsive to this request.  As another example, RFP 89 requests "[a]ll documents and things that refer or relate to any analysis, reverse engineering, and/or study of any Masimo or Cercacor product or technology."  As part of a reasonable search, at a minimum, Apple should consult with relevant employees to identify responsive documents as well as determine whether Apple currently and/or in the past has maintained files or folders containing responsive documents.  Apple should take a similar approach to identify documents responsive to the other RFPs separate and apart from ESI searching.  Please confirm Apple will do so.

### Plaintiffs' First and Second Set of Requests For Production (RFPs 1-60)

**Plaintiffs' RFPs 1, 3, 4, 34, 40, 51, and 59:**  Plaintiffs' letter requested that Apple identify when it would produce responsive documents.  Apple did not respond.  Please identify Apple's positions as to these RFPs.  To the extent that Apple is asserting that it need not provide responsive documents due to the recent stay of the patent case, Apple should have collected and produced responsive documents months ago and long before the stay.  Regardless, many of these requests seek discovery that is relevant to claims that have not been stayed.  For example, RFP 51 requests year-end financial statements that

**Knobbe Martens**                                                                    Page 2

are relevant to Plaintiffs' non-patent claims.  Please provide Apple's position as to RFPs 1, 3, 4, 34, 40,
51, and 59.

**Plaintiffs' RFPs 5-27:**  Apple asserts that it need not respond to these requests because the
Court stayed the patent infringement case and because Plaintiffs have purportedly not yet served an
adequate 2019.210 statement.  Plaintiffs disagree on both points.  First, Plaintiffs 2019.210 statement is
adequate.  Indeed, Plaintiffs recently revised their Section 2019.210 statement to address Apple's
purported concerns and Apple has failed to identify any specific deficiency.  Second, Apple ignores that
it repeatedly argued that documents requested by these RFPs relate to Plaintiffs' trade secret requests.
Indeed, both parties acknowledged these RFPs could be relevant to ***both*** trade secrets and patents.  As
such, Apple cannot use the stay to avoid producing responsive documents.  Moreover, Judge Early,
found that at least RFPs 8 and 12-14 seek "some of the same categories of information Plaintiffs allege
as their trade secrets."  RFP 26, which requests documents related to Apple's interrogatory responses,
also clearly seeks documents related to Plaintiffs' non-patent claims.

## Plaintiffs' Third Set of Requests For Production (RFPs 61-147)

**Section 2019.210**:  In our previous letter, we requested that Apple identify each RFP in response
to which Apple is withholding documents based on its section 2019.210 objection.  Apple did not
respond.  Plaintiffs are entitled to understand the objections upon which Apple is relying to withhold
documents in response to each of Plaintiffs' RFPs.  Plaintiffs request again that Apple provide this
information so that the parties can have a productive meet and confer.

**Temporal Scope:**  Apple confusingly asserts "it is not withholding documents based on this
objection" while also stating that "[u]pon Plaintiffs' identification of relevant time periods, Apple will
provide information and documents in its possession, custody, or control for the relevant time period."
Plaintiffs disagree with this approach.  Unless a time frame is specified in a RFP, Apple should produce
all documents responsive to that RFP that are obtained after a reasonable search.  To the extent that
Apple is limiting its production to a certain time period, Apple should identify such limitations for each
RFP so that the parties can conduct a productive meet and confer.

**Products Not Identified in the Complaint:**  Apple did not respond to Plaintiffs' letter regarding
this issue.  Please provide Apple's position.  If Apple is relying on this objection to limit its responses to
Plaintiffs' RFPs, Apple should identify the RFPs so the parties can have a productive meet and confer.

**Not Limited to the Publicly Released Apple Watch Series 3-5 Devices:**  Apple did not
respond to Plaintiffs' letter regarding this issue.  If Apple is relying on this objection to limit its
responses to Plaintiffs' RFPs, Apple should identify the RFPs so that the parties can have a productive
meet and confer.

**Public Documents:**  Apple asserts that it is not withholding documents based on this objection.
However, Apple also asserts that "it will not specifically search for publicly available documents as
those are equally available to Plaintiffs."  Apple cannot unilaterally refuse to search for and produce
documents merely because it contends the documents are publicly available elsewhere, particularly
without informing Plaintiffs what documents it is refusing to search for.  So that the parties can conduct

**Knobbe Martens**                                                                          Page 3

a meaningful meet and confer, please identify the categories of documents that Apple contends are publicly available and that Apple contends it need not search for and produce.

**Plaintiffs' RFPs 63-65, 70-85, and 87:**  Apple did not respond to our letter on this issue.  Please provide Apple's position.  To extent Apple contends that it need not respond to these RFPs because the patent case is stayed, Apple is incorrect.  For example, RFP 70 requests documents related to the clinical trials of the Apple Watch, which are relevant to Apple's misappropriation of Plaintiffs' trade secrets regarding business plans and strategies for interacting with hospitals.  RFP 70 seeks technical documents relevant to many issues in this case.  RFP 71 requests documents sufficient to identify all persons involved in the research, design, and development of any physiological monitoring capability of the Apple Watch Products, which is a general RFP that relates to all of Plaintiffs' non-patent claims and will allow Plaintiffs to evaluate proposed custodians for ESI searching.  Please provide Apple's position on these RFPs.

**Plaintiffs' RFPs 67-69, 86, 88, 101, 122, 128-130, and 133-135:**  We disagree with Apple's positions on these requests.  First, Apple's letter claims it is unclear "how documents related to FDA correspondence or approval (RFP Nos. 67-69) and physiological parameter evaluation (RFP No. 86) are relevant to this litigation."  FDA correspondence and approval, however, are at least relevant to the timing of when various features were incorporated into Apples devices.  They are also relevant to Apple's misappropriation of Plaintiffs' trade secrets regarding business plan and strategies for interacting with hospitals.  These RFPs also seek technical documents relevant to many other issues in this case.

Second, Apple again claims that RFP Nos. 88, 101, 122, 128-130, and 133-135 are overly broad and unduly burdensome.  However, Apple does not explain why.  Apple should provide its position so that the parties can have a productive meet and confer.

Third, Apple objects to RFP No. 128 to the extent it requests "subject matter disclosed or claimed in the disputed patents" because the "language of this Request requires Apple to draw a legal conclusion in order to respond."  Apple need not draw a legal conclusion to produce relevant discovery.  Apple should interpret the phrase "subject matter disclosed or claimed in the disputed patents" according to its plain and ordinary meaning.

**Plaintiffs' RFPs 80-82, and 136:**  Apple continues to identify RFPs 80-82 and 136 as RFPs "whose discovery obligations are met by a search of (i) the files of specific custodians negotiated between the parties, whose files are in the possession, custody, or control of Apple and (ii) specific search terms negotiated between the parties." As discussed above, Apple should perform a reasonable search for documents separate and apart from ESI searching for these RFPs.  Please confirm that Apple will perform a reasonable search for and produce the requested documents.

**Plaintiffs' RFPs 89-97, 129 and 136:**  Apple continues to identify these RFPs as RFPs where it intends to solely use search terms and custodians to identify responsive documents.  As explained above, Apple should perform a reasonable search for documents separate and apart from ESI searching.  Apple also argues that these RFPs are overly broad and unduly burdensome.  However, Apple does not explain why.  Please provide your position so that the parties can have a productive discussion at the meet and confer.  Finally, Apple continues to object to RFPs 91, 129, and 136 because they seek "'any

**Knobbe Martens**

communications,' which will be negotiated and produced pursuant to the ESI Order in this case." Plaintiffs' letter asked Apple to explain this objection, but Apple did not do so.  Please explain.

     **Plaintiffs' RFPs 98 and 99:**  Apple did not respond to Plaintiffs' letter regarding this issue. Please provide Apple's position.

     **Plaintiffs' RFPs 132 and 144:**  Apple continues to assert that it does not have organizational charts.  Please identify what documents Apple maintains that show Apple's organizational structure or the reporting and supervisory obligations of various employees, regardless of whether they are labeled as organization charts.

## Compliance with ESI Order

     In the stipulated ESI Order, the parties agreed to "provide a proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case" in conjunction with a meet and confer on ESI.  Apple asserts it is "premature" to do so because "Plaintiffs have yet to provide a sufficient trade secret disclosure or responses to Apple's discovery, and Apple has not yet filed an answer."  Plaintiffs provided an adequate section 2019.210 statement, however, and have responded to Apple's discovery.  Further, in the parties' October 27, 2020, Joint Stipulation, Apple agreed "that it will not use the fact that it has not yet Answered as a basis for refusing to provide or delaying providing discovery."  Thus, it is not premature for the parties to begin the stipulated process to agree on search terms and custodians.  Apple further "contends that the parties should discuss reasonable limits on the number of custodians before any exchanges of custodians can occur."  The stipulated ESI Order, however, does not require this.  Please confirm that Apple will proceed in accordance with the stipulated ESI Order.

## Apple's Deficient Document Production

     Apple claims it will produce documents on a rolling basis, but has produced less than 1400 documents.  Apple has not produced responsive documents even as to RFPs as to which it committed to produce documents months ago.  Moreover, Apple agreed to produce the documents identified in its initial disclosures almost four months ago, but has not produced the documents, including documents concerning Apple's conception, reduction to practice, diligence, ownership, marketing, sales, development, operation, regulation, and implementation of the inventions claimed in the patents and patent applications at issue in Plaintiffs' Correction of Inventorship and Declaratory Judgment claims. Please let us know when Apple will make substantial document productions.

## Plaintiffs' Interrogatories Nos. 7-10

     As explained in Plaintiffs' letter, Interrogatories 7-9 request details on the design and development of the Apple Watch.  Apple's responses are woefully deficient and provides little of the requested information.  Apple did not respond to Plaintiffs' letter on this topic.  To the extent Apple contends that it need not respond to these interrogatories because the patent case is stayed, Apple is incorrect.  The requested information is relevant to Plaintiffs' non-patent claims at least to show when Plaintiffs' trade secrets were incorporated into the Apple Watch and to show if Apple in fact invented

# Knobbe Martens

any of the subject matter claimed in the disputed patents.  Please confirm that Apple will supplement its response by December 2, 2020.

Interrogatory 10 also requests details on any test, analysis, comparison, or competitive analysis that Apple performed on any non-Apple physiological monitor.  Apple's response requested a meet and confer to discuss the relevance of this interrogatory.  Plaintiffs' letter asked Apple to explain its position, but Apple did not respond.  Again, to the extent that Apple contends that it need not respond to this interrogatory because the patent case is stayed, Apple is incorrect.  The requested information is relevant, for example, to any contention by Apple that it independently derived Plaintiffs' trade secrets and to any contention by Apple that it invented any of the subject matter claimed in the disputed patents.  Apple should explain its position on Interrogatory 10 so the parties can have a productive meet and confer.

## Apple Watch Series 6 and SE

Plaintiffs' letter requested that Apple confirm that it will not withhold documents on the Apple Watch Series 6 and SE now that those products are released.  Apple did not respond.  Please confirm that Apple will provide Plaintiffs' requested discovery as to the Apple Watch Series 6 and Series SE.

Best regards,

Stephen W. Larson

32796726

# EXHIBIT 21

| From: | Adam.Powell |
|---|---|
| To: | Samplin, Ilissa |
| Cc: | *** Apple-Masimo; Lerner, Joshua H.; Lyon, H. Mark; Buroker, Brian M.; Andrea, Brian; Rosenthal, Brian A.; Kaounis, Angelique; Masimo.Apple |
| Subject: | RE: Masimo v. Apple - Section 2019.210 Statement |
| Date: | Monday, November 23, 2020 2:11:36 PM |

Ilissa,

Your November 12 letter continued to contain only high-level generalizations and no specifics.  The letter also did not invite or request a response.  Instead, Apple stated: "We plan to send our portion of the joint brief to you by November 18."

When we met and conferred on November 18 about another issue, you also never said you were waiting for a response to your November 12 letter.  You requested written confirmation regarding other discovery items.  We agreed to provide our position on those other issues in writing, and told you our response would not be ready by Friday, November 20.  We are working on a written response and plan to have that for you this week.  We note that Apple has also not sent us its written response to issues raised during the meet and confer.

Finally, your email did not answer my question regarding Steve Larson's November 16 letter.  Please let us know when Apple is available to meet and confer on the issues raised in that letter.

Best regards,
Adam


**Adam Powell**
Partner
858-707-4245 **Direct**
# Knobbe Martens

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Friday, November 20, 2020 6:19 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Re: Masimo v. Apple - Section 2019.210 Statement

Adam,

Frankly, we thought you might have a response to our letter.  But since it's clear you do not, we will be sending you our portion of the joint stipulation regarding Section 2019.210. We were hoping to wrap up the meet and confer about the supplemental interrogatory responses at the same time but we still haven't heard back from you or Mark about when you can be ready with the positions you agreed to go back to your team on. As you know, we proposed today. When works?

Exhibit 21
-145-

Thanks,
Ilissa

**Ilissa Samplin**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com


On Nov 20, 2020, at 6:05 PM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

 [External Email]
Ilissa,

Your letter attached to your email below indicated that Apple would send its portion of
the joint stipulation regarding Section 2019.210 by November 18.  We did not hear
from you.  We also have not heard when you are available to meet and confer on the
issues raised in Steve Larson's letter of November 16.  Please let us know when you are
available for a meet and confer on that letter.


Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

_____

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Thursday, November 12, 2020 12:27 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H.
Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>;
Andrea, Brian <BAndrea@gibsondunn.com>; Rosenthal, Brian A.
<BRosenthal@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Section 2019.210 Statement

Adam,

Please see the attached correspondence.

2

Exhibit 21
-146-

Regards,
Ilissa

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Friday, November 6, 2020 7:12 PM
**To:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Masimo v. Apple - Section 2019.210 Statement

[External Email]
Counsel,

Pursuant to our meet and confer, attached is Plaintiffs' revised Section 2019.210 Statement.  This document has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the Protective Order.  All changes made in this revised statement are being made without prejudice or admission.  Plaintiffs reserve all rights under relevant caselaw to amend this identification.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe** Martens

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit 21
-147-

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 21
-148-

EXHIBIT 23

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | Andrea, Brian |
| **Cc:** | Masimo.Apple; *** Apple-Masimo; Stephen.Larson |
| **Subject:** | RE: Masimo v. Apple |
| **Date:** | Sunday, December 6, 2020 1:57:03 PM |
| **Attachments:** | 2020-12-06 Letter re 12-03 meet and confer.pdf |

Brian,

Please see my attached letter regarding our December 3 meet and confer.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe** Martens

---

**From:** Stephen.Larson <Stephen.Larson@knobbe.com>
**Sent:** Tuesday, November 24, 2020 4:10 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo v. Apple

Brian,

Please see the attached letter.

Thanks,
Steve

**Stephen Larson**
Partner
949-721-5301 **Direct**
**Knobbe** Martens

Exhibit 23
-153-

EXHIBIT 24

# Knobbe Martens

**KNOBBE, MARTENS, OLSON & BEAR, LLP**

12790 El Camino Real, Suite 100, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

December 6, 2020

**VIA EMAIL**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.,
Washington, DC 20036-5306

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

        We write to memorialize our December 3, 2020, meet and confer regarding the issues raised by our November 24, 2020, letter.

        **Section 2019.210:**  Apple confirmed that it was withholding documents responsive to Plaintiffs' RFPs 148–206, 208–13, 216–22, 234–37, 242–43, and 247 "pending compliance with Section 2019.210."  Apple further confirmed that, absent its Section 2019.210 objection, it believed that these requests were "fair" and that Apple would produce documents 30 days after Apple or the Court determined that Plaintiffs' Section 2019.210 statement was adequate.  As we have discussed, Plaintiffs believe their Section 2019.210 statement is more than adequate, and that Apple should not be withholding these documents.

        **Patent Discovery:**  Apple stated that, to the extent that Plaintiffs' RFPs' 148–72, 185–202, and 212–13 are related to the patent case, Apple believes those RFPs are stayed.  Plaintiffs disagree, but Plaintiffs requested that Apple inform Plaintiffs if there are any other RFPs that Apple believes are impacted by the patent stay in Plaintiffs' Fourth and Fifth Set of RFPs.

        **RFPs 207, 214–15, 223–33, 238–41, 244–46, and 248:**  Apple stated that it was objecting to these RFPs on the basis of Section 2019.210.  Apple distinguished these RFPs from the RFPs discussed in "Section 2019.210" above by stating it would produce documents for the RFPs discussed in "Section 2019.210" above after the Section 2019.210 dispute was resolved, but that there are purportedly additional issues with RFPs 207, 214–15, 223–33, 238–41, 244–46, and 248.  The parties then discussed Apple's issues with these RFPs as outlined below:

- RFP 207 – Apple asserted that this RFP is not relevant because it requests documents on planned interactions with hospitals.  Plaintiffs explained that, to the extent Apple was planning to target specific hospitals based on Masimo's trade secrets, but had not yet done so, this could still be trade secret misappropriation.  Apple agreed to further consider this RFP and provide its position to Plaintiffs.

- RFPs 214-15 – Apple claimed these RFPs are too broad because they purportedly include no subject matter or date restriction.  While Plaintiffs do not believe the parties have had enough meetings to justify further restrictions, Plaintiffs are willing to restrict these RFPs to meetings

regarding Plaintiffs' patient monitoring products or Apple implementing any physiological monitoring technology, if that would resolve the parties' dispute regarding these RFPs. Please let us know if Apple agrees that change would address its concerns.

- RFP 223 – Plaintiffs explained that this RFP seeks documents that Former Employees authored, prepared, edited, modified, or reviewed while employed at Masimo or Cercacor. Plaintiffs further explained that these RFPs request only documents that are in Apple's possession, custody, or control. Apple agreed to further consider this RFP and provide its position to Plaintiffs.

- RFPs 224-225 – Plaintiffs explained that these RFPs seek documents such as agreements and policies regarding the use of confidential information received by an employee from their former employer or other employee onboarding documents. Apple agreed Plaintiffs are entitled to such documents but argued that the RFPs were too broad as written. Plaintiffs also believe that agreements and policies with the Former Employees related to Apple's treatment of its own confidential information and/or noncompete agreements are also relevant because Apple has argued that Plaintiffs have not taken reasonable efforts to maintain the secrecy of their trade secrets and violated California's public policy against employee mobility. Apple's actions on those topics are relevant to showing whether Plaintiffs acted reasonably. Please let us know if Apple agrees.

- RFP 226 – Apple asserted that it could not search for documents related to this RFP because the RFP goes to an ultimate issue in the case. Plaintiffs explained that this RFP seeks documents such as documents that contain Masimo or Cercacor's name. Apple agreed that Plaintiffs were entitled to such documents but argued that the RFPs were too broad as written. Plaintiffs disagree and believe it is not unduly burdensome for Apple to search for documents that mention Masimo or Cercacor. If such a search results in too many documents, then the parties can discuss whether further modifications are appropriate. Please let us know if Apple agrees.

- RFP 227 – Apple agreed to investigate whether it has documents with a "Company" or similar metadata field and if so, to produce those documents responsive to this RFP.

- RFPs  228-229 – Apple stated it would likely produce the requested computers, Computer Media, networks, or databases, but Apple would provide its position in writing.

- RFP 230 – Apple asserted it could not search for documents related to this RFP because the RFP goes to an ultimate issue in the case. Plaintiffs maintain that Apple should still provide documents that relate to Masimo and Cercacor, or their products. While Apple may claim it cannot identify all such documents on their face, that does not mean that Apple should not produce documents that it can identify. Please provide Apple's position.

- RFPs 231-233 – Apple agreed to further consider these RFPs and provide its position to Plaintiffs.

- RFP 238 – Apple argued it did not know how to search for documents responsive to this RFP. Apple stated that it wanted to "table" this RFP until the parties reach agreement on Apple's

Exhibit 24
-155-

production of employee onboarding documents.  We do not believe that is necessary, but will await Apple's position on the employee onboarding documents.

- RFP 239 – Apple claimed this RFP is too broad because it is not limited to soliciting Former Employees to disclose trade secrets.  Plaintiffs maintain that Apple's efforts to recruit Plaintiffs' employees are directly relevant to this case and Apple should not withhold documents just because it asserts a given document by itself does not show Apple recruited an employee to obtain trade secrets.  Please let us know if Apple will agree to produce responsive documents.

- RFPs 240 – Apple asserted that this request was too broad, but that Apple would consider producing employee onboarding documents and reviews, reprimands, and promotions.  Apple agreed to provide its position in writing.

- RFP 241 – Apple claimed that this request was too broad, but that Apple would consider producing documents that related to Apple's hiring or termination of Former Employees related to their use of Masimo or Cercacor information.  Plaintiffs maintain that Apple cannot unilaterally withhold documents merely because it contends the documents themselves do not prove Apple hired or terminated an employee for their use of Masimo or Cercacor confidential information.  Please let us know if Apple will produce.

- RFPs 244-245 – Apple asserted that these RFPs are too broad because they are purportedly not limited by subject matter.  Plaintiffs explained that these RFPs are narrowly limited in time and thus Apple should produce all the communications so that Plaintiffs could themselves examine these communications.  Apple agreed to consider this request and provide its position to Plaintiffs.

- RFPs 246 and 248 – Apple agreed to further consider these requests and provide its position to Plaintiffs.

**Overbroad and Unduly Burdensome:**  Apple argued that RFPs 148-72 are overbroad because the patent case is stayed and these RFPs allegedly implicate the patent case.  Apple argued that these RFPs are also overbroad because Plaintiffs have purportedly not yet provided a Section 2019.210 statement.  Apple confirmed it is withholding all responsive documents to these RFPs based on these objections.  Plaintiffs disagree with Apple's position and request that Apple produce the requested documents.  Apple also argued that RFPs 178-248 are overbroad because Plaintiffs have purportedly not provided a sufficient Section 2091.210 statement.  Plaintiffs asked Apple if it is objecting to these RFPs as overbroad for any reason beyond Section 2019.210.  Apple explained that it did not believe so, but that it would confirm.  Plaintiffs again disagree with Apple's position and request that Apple produce the requested documents.

**Vague and Ambiguous:**  Apple explained that it is currently only objecting to Plaintiffs' RFPs 173–83, 185–95, 197–211, 214–15, 223–27, 229–33, 238–41, 244–46, and 248 as vague an ambiguous based on Plaintiffs Section 2019.210 statement.  As discussed, Plaintiffs believe their Section 2019.210 statement is more than adequate, and that Apple should not be withholding these documents.

**Temporal Scope:**  Apple confirmed it would provide its position to Plaintiffs on this issue in writing.

Exhibit 24
-156-

**Products Not Identified in the Complaint:**  Apple refused to discuss its position on this issue until after Apple agrees Plaintiffs' Section 2019.210 statement is adequate.

**Expert Discovery:**  Apple confirmed it is not withholding documents based on this objection.

**ESI Order:**  Apple stated that it is objecting to producing "communications," particularly emails, except through the procedure outlined in the ESI order. Apple stated that it would, however, produce letters stored as documents on Apple computers.  Plaintiffs maintain that the ESI procedure does not relieve Apple of its obligation of performing reasonable searches for the requested documents.

**Information In Plaintiffs' Possession And Publicly Available Documents:**  Apple confirmed it is not relying on these objections to withhold documents.

**Undefined Terms:**  Apple agreed to interpret these terms according to their plain and ordinary meaning.

**Plaintiffs' RFPs 152, 185, and 212:**  Apple stated that it would revisit these RFPs after Apple agrees that Plaintiffs' Section 2019.210 statement is adequate.  Plaintiffs asked if Apple would produce these documents if the Court found Plaintiffs' current Section 2019.210 statement to be adequate.  Apple refused to provide its position based on Plaintiffs' current Section 2019.210 statement.

**Plaintiffs' RFPs 161 and 163-64:**  The parties discussed Apple's objection that these RFPs sought "information of a type not maintained by Apple and/or in a format different from the format in which Apple maintains its data in the normal course of business."  Apple confirmed that it is not withholding documents based on this objection.

**Plaintiffs' RFP 207:**  Apple agreed to revisit this RFP as discussed above.

**Plaintiffs' RFP 240:**  Apple agreed to revisit this RFP as discussed above.  Apple further agreed that it would not withhold documents responsive to this RFP based on its privacy interest objection but would instead simply redact sensitive personal information such as social security numbers.

**Plaintiffs' RFPs 228 and 229:**  The parties specifically discussed Apple's objections to these RFPs "to the extent [they seek] the production of intangible things."  In particular, the parties discussed how to handle any cloud databases that may be at issue.  The parties agreed to further discuss these RFPs if cloud databases or other similar databases become an issue in the case.

At the end of our call, Apple agreed it would provide its position on all outstanding issues by early in the week of December 7, 2020.

Best regards,

Adam B. Powell

32796726

Exhibit 24
-157-

# EXHIBIT 25

| From: | Adam.Powell |
|---|---|
| To: | Samplin, Ilissa; Andrea, Brian |
| Cc: | *** Apple-Masimo; Fong, Oliver; Joe.Re; Steve.Jensen; Perry.Oldham; Stephen.Larson; Mark.Kachner; Masimo.Apple |
| Subject: | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence |
| Date: | Wednesday, December 30, 2020 3:05:48 PM |
| Attachments: | 2020-12-30 Letter to OPC re Discovery.pdf |

Ilissa,

Please see my attached letter.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

___

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Wednesday, December 9, 2020 11:48 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Fong, Oliver <OFong@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

Adam:

Please see the attached response to your letter referenced below.

Regards,
Ilissa

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

___

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Sunday, December 6, 2020 1:47 PM

1

Exhibit 25
-158-

**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Fong, Oliver
<OFong@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen
<Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson
<Stephen.Larson@knobbe.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; Masimo.Apple
<Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

[External Email]
Brian,

Please see my attached letter regarding our December 1 meet and confer.

Best regards,
Adam

**Adam Powell**
Partner
**858-707-4245** Direct
**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Monday, November 30, 2020 9:53 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Fong, Oliver
<OFong@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen
<Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson
<Stephen.Larson@knobbe.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; Masimo.Apple
<Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

Adam,

That works for us.  We will also be prepared to meet and confer regarding Steve's latest letter dated
11/24 during the call.

Thanks,
Brian

**Brian Andrea**

**GIBSON DUNN**

Exhibit 25
-159-

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, November 30, 2020 12:33 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Fong, Oliver <OFong@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

[External Email]

Brian,

We received your letter and can talk to you on December 1 at 11am.  Please use the following dial in number:



Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Fong, Oliver <OFong@gibsondunn.com>
**Sent:** Wednesday, November 25, 2020 6:14 PM
**To:** Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

Counsel,

Please see attached correspondence.

Sincerely,
**Oliver Fong**

Exhibit 25
-160-

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.6373 • Fax +1 212.817.9573
OFong@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

Exhibit 25
-161-

# EXHIBIT 26

# Knobbe Martens

KNOBBE,MARTENS,OLSON & BEAR,LLP

12790 El Camino Real, Suite 100, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

December 30, 2020

<u>**VIA EMAIL**</u>

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.,
Washington, DC 20036-5306

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Ilissa:

        We write to address certain matters in your December 9, 2020, letter as well as Apple's position on ESI custodians.

        **RFPs 61-62, 88, 123-125, 130-132, 136-145, and 147**: We understand from your December 9, 2020, letter that Apple is withdrawing Apple's Section 2019.210 objection to RFPs 61-62, 88, 123-125, 130-132, 136-145, and 147.  We also understand that Apple is no longer withholding documents to these RFPs based on its remaining objections.  Please confirm Apple will be producing documents responsive to these RFPs and inform us when Apple expects to make a substantial production.

        **RFPs 122 and 133-35:**  For these RFPs, Apple first claims that it is withdrawing its Section 2019.210 objection.  Later in the letter, however, Apple argues that, to the extent these RFPs seek trade secret discovery, trade secret discovery is stayed and that "[i]f Plaintiffs provide a Section 2019.210-compliant disclosure, Apple will meet and confer with Plaintiffs regarding the relevance and scope of these RFPs, as they pertain to the trade secret claim."  Please confirm that Apple is withdrawing its Section 2019.210 objection for RFPs 122 and 133-35.  Please also confirm that Apple is not withholding responsive documents to RFPs 122 and 135 based on any other objection and will be producing responsive documents.   For RFPs 133-134, Plaintiffs' agree that Apple's production of public complaints from legal proceedings involving the Apple Watch would satisfy Apple's obligation to respond to RFP 133.  After Apple has produced these documents, Plaintiffs will further consider their position on RFP 134.

        **Apple's Document Production:**  During the parties' meet and confer, Apple confirmed that it would produce documents responsive to Plaintiffs' patent ownership and inventorship RFPs.  However, Apple argued that Plaintiffs should not expect many documents and that Apple's production is likely to consist of a small number of patent prosecution documents.  Apple now appears to have produced some of the file histories for the Disputed Patents and documents related to Apple's policy of compensating employees that file patent applications.  Apple's arguments and recent production raise concerns that Apple is not adequately searching for and producing documents responsive to Plaintiffs' RFPs.  For example, Plaintiffs' RFPs request documents such as:

- Any document on which Apple may or intends to rely to show (a) the alleged contribution of the named inventors to the conception or reduction to practice of the subject matter of the Disputed Patents, (b) that the named inventors satisfy the requirements to have been properly identified as inventors on the Disputed Patents; or (c) that the Disputed Patents were properly assigned to and are owned by Apple;

- Any documents that refute or otherwise relate to (a) any alleged contribution of the named inventors to the conception or reduction to practice of the subject matter of the Disputed Patents, (b) whether the named inventors satisfy the requirements to have been properly identified as inventors on the Disputed Patents; or (c) whether the Disputed Patents were properly assigned to and are owned by Apple;

- All documents reflecting work that the named inventors performed as part of allegedly inventing, developing, or reducing to practice the subject matter of the Disputed Patents, including laboratory notebooks, engineering documents, experiment or test records, communications, reports, meeting minutes, self or other evaluations, and correspondence;

- Communications from or to any named inventor regarding the subject matter of the Disputed Patents;

- Communications regarding Apple's meetings with Plaintiffs;

- All documents reflecting information exchanged between Apple and Plaintiffs, or any of their employees or independent contractors, regarding the subject matter of the Disputed Patents;

- Projections, consumer surveys, or other documents related to the value of the inventions or subject matter of the Disputed Patents; and

- The prosecution files for the Disputed Patents and related patents and patent applications, including any invention disclosures, memoranda, or other documents that provided the basis for preparation of drafts or final version of any of the patents, patent applications, or documents filed during prosecution.

Please confirm that Apple will search for and produce documents, like those listed above, that are responsive to Plaintiffs' patent ownership and inventorship RFPs.

**RFPs 5-27, 63-87, 97-109, 128-132, 148-206, 208-13, 216-22, 234-37, 242-43, and 247:** For these RFPs, Apple has refused to meet and confer on its various objections and has instead claimed that it will not meet and confer on these RFPs until Apple receives a Section 2019.210 disclosure that it deems sufficient. As you know, Plaintiffs contend that their Section 2019.210 is more than sufficient, and no Court has held otherwise. Nothing in the Court's stay allowed Apple to unilaterally withhold discovery based on its position on sufficiency. Accordingly, Apple's blanket refusal to meet and confer on its objections to Plaintiffs' RFPs delays discovery and is contrary to the Local Rules.

**ESI Custodians:** Apple has proposed that the parties be limited to eight custodians. The ESI order does not contain any such limit. Instead, the ESI order states that "each party shall provide a

Exhibit 26
-163-

proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case (e.g., the asserted patents, alleged misappropriation of trade secrets, the development, design and operation of the accused products, and sales, marketing and other damages-related information for the accused products)."  Pursuant to the ESI order, the parties should exchange lists of custodians who are knowledgeable about or were involved with core issues or subjects in this case.  The parties can then evaluate the proposed lists of custodians and potentially discuss whether any limitations would be appropriate.  Plaintiffs submit that the parties should exchange their lists of custodians on January 15, 2021.

Best regards,

Adam B. Powell

32796726

Exhibit 26
-164-

# EXHIBIT 27

| From: | Adam.Powell |
|---|---|
| To: | *** Apple-Masimo; Lerner, Joshua H.; Lyon, H. Mark; Buroker, Brian M.; Samplin, Ilissa; Kaounis, Angelique; BAndrea@gibsondunn.com; BRosenthal@gibsondunn.com |
| Cc: | Masimo.Apple |
| Subject: | Masimo v. Apple - Motion to Compel Compliance With ESI Order |
| Date: | Friday, January 22, 2021 6:43:07 PM |
| Attachments: | 2021-01-22 Joint Stipulation re ESI Order.DOC |
|  | 2021-01-22 Powell Declaration.pdf |
|  | Exhibits 1-17.pdf |

Counsel,

During the hearing yesterday, Apple made clear it believes the parties must limit the number of custodians before providing lists of potentially relevant custodians pursuant to the ESI Order.  Based on that statement, it appears to us that the parties are at an impasse.  Accordingly, attached is a short joint stipulation addressing this issue.  We look forward to receiving Apple's portion of the joint stipulation.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

Exhibit 27
-165-

# EXHIBIT 28

| From: | Adam.Powell |
|---|---|
| To: | Andrea, Brian; *** Apple-Masimo; Lerner, Joshua H.; Lyon, H. Mark; Buroker, Brian M.; Samplin, Ilissa; Kaounis, Angelique; Rosenthal, Brian A. |
| Cc: | Masimo.Apple |
| Subject: | RE: Masimo v. Apple - Motion to Compel Compliance With ESI Order |
| Date: | Thursday, January 28, 2021 8:10:39 PM |

Brian,

Plaintiffs intend to comply with the ESI Order.  Based on Apple's representation below, Plaintiffs withdraw their joint stipulation.  Plaintiffs reserve all rights if Apple fails to comply with the ESI Order.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Thursday, January 28, 2021 1:07 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Motion to Compel Compliance With ESI Order

Adam,

Yes, Apple agrees to provide a list that complies with the ESI order on February 5, 2021, provided Plaintiffs also agree to provide such a list.  Accordingly, please confirm that Plaintiffs no longer intend to file their joint stipulation tomorrow.

Thanks,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306

Exhibit 28
-166-

Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, January 28, 2021 2:52 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Motion to Compel Compliance With ESI Order

[External Email]
Brian,

The ESI Order states: "In connection with the meet and confer process, each party shall provide a proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case (e.g., the asserted patents, alleged misappropriation of trade secrets, the development, design and operation of the accused products, and sales, marketing and other damages-related information for the accused products)."  Please confirm Apple intends to provide a list that complies with the ESI Order.  If so, we agree to an exchange on February 5, 2021.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, January 27, 2021 8:18 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Motion to Compel Compliance With ESI Order

Dear Adam,

We proposed that the parties exchange lists of the opposing party's custodians in order to facilitate discussions, and based on Plaintiffs' statements in the joint stipulation you sent about the custodians

from Apple you believe are appropriate.  In any event, Apple is willing to provide a list of proposed Apple custodians assuming Plaintiffs are willing to provide a list of proposed Plaintiffs' custodians.  We propose that the parties plan to exchange lists on February 5.  Please confirm today that Plaintiffs agree.


Best regards,
Brian



**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, January 26, 2021 11:27 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Motion to Compel Compliance With ESI Order

[External Email]
Brian,


We disagree that the parties did not conduct a meet and confer.  We have been exchanging letters on this issue for months and specifically discussed this issue during our December 1 meet and confer.  During that call, we reiterated our position from prior letters that the parties should not limit the number of custodians before exchanging proposed lists of custodians.  The parties then exchanged additional letters on this topic, but to no avail, necessitating relief from the Court.  Indeed, Apple's January 13 letter ended by threatening to move the Court on this issue.  Moreover, at the hearing last week, Mr. Lerner reiterated Apple's position that the parties had reached an impasse.  Your assertion that we have not met and conferred on a specific numerical limit is irrelevant because we do not believe a numerical limit is appropriate at this time.  Likewise, we disagree with your assertion that our joint stipulation proposed a numerical limit.  Our position remains the same: the parties should exchange lists of potential custodians ***before*** agreeing to any specific numerical limit.

For the first time, Apple now states the parties should identify the ***opposing*** party's witnesses that are knowledgeable about the case.  Apple's proposal is inconsistent with the ESI Order and the

Exhibit 28
-168-

parties' prior correspondence.  Indeed, Apple has never suggested that the exchange would identify the opposing party's witnesses.  Apple's proposal also makes no sense.  Plaintiffs have no access to Apple's employees and cannot be expected to identify the Apple employees with knowledge of the issues in the case.  Please let us know if Apple will provide a list of Apple's custodians as required by the ESI Order.  If not, we have no choice but to seek the Court's assistance.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Monday, January 25, 2021 1:36 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo v. Apple - Motion to Compel Compliance With ESI Order

Dear Adam,

We have reviewed the joint stipulation you sent on Friday night.  As an initial matter, the parties have never met and conferred about the issues raised in the motion.  During the meet and confer on December 1, 2020 mentioned in your motion, Plaintiffs asked Apple for its proposal for a reasonable number of custodians; Apple provided that proposal the next day but the parties have not met and conferred about Apple's proposal.  Indeed, in an effort to avoid burdening the Court with an unnecessary and unripe motion, Apple has been asking Plaintiffs for months to provide their thoughts on the number of custodians from whom they intend to seek ESI.  Plaintiffs' joint stipulation sent on Friday was the first time Plaintiffs have provided any indication as to how many custodians they believe is appropriate.

Now that Plaintiffs have provided the information Apple has been seeking, Apple believes the parties should continue their discussions about an appropriate number of custodians.  If the parties are unable to agree, at least the dispute between the parties will be crystalized so that the Court does not need to decide the issue in a vacuum, before the parties have even had a chance to try to narrow the issues.  While Apple maintains that a discussion of the number of custodians should occur before the exchange of custodian names, Apple is willing to exchange names in order to facilitate discussion and in the interest of trying to avoid burdening the Court with another discovery motion.

Exhibit 28
-169-

Thus, Apple proposes that the parties exchange a list of the custodians from the other side whom they believe are knowledgeable about the issues in this case (i.e., Apple proposes Plaintiffs' custodians and Plaintiffs propose Apple custodians), and then the parties can use those lists to discuss a reasonable number of custodians for each side.   Apple proposes the parties make that exchange on February 5. Please let us know no later than close of business tomorrow (Tuesday, January 26) if you agree.

Thanks,
Brian

**Brian Andrea**

### GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Friday, January 22, 2021 9:43 PM
**To:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Masimo v. Apple - Motion to Compel Compliance With ESI Order

[External Email]
Counsel,

During the hearing yesterday, Apple made clear it believes the parties must limit the number of custodians before providing lists of potentially relevant custodians pursuant to the ESI Order.  Based on that statement, it appears to us that the parties are at an impasse.  Accordingly, attached is a short joint stipulation addressing this issue.  We look forward to receiving Apple's portion of the joint stipulation.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

Exhibit 28
-170-

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 28
-171-

# EXHIBIT 30

| From: | Andrea, Brian |
|---|---|
| To: | Adam.Powell |
| Cc: | *** Apple-Masimo; Masimo.Apple |
| Subject: | Masimo Corp. et al. v. Apple Inc., 20-cv-00048 - ESI custodians |
| Date: | Wednesday, December 2, 2020 3:50:00 PM |

Adam,

Further to our discussion regarding ESI custodians during the meet and confer yesterday, Apple proposes that the parties be limited to eight (8) custodians, which we believe is appropriate and a reasonable limitation for a case like this.  Of course, Apple envisions that additional custodians could be identified later in the case if good cause exists to exceed the agreed limitation.  Please let us know if Plaintiffs are willing to agree.

Best regards,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 30
-174-

# EXHIBIT 31

| From: | Andrea, Brian |
| --- | --- |
| To: | Masimo.Apple |
| Cc: | *** Apple-Masimo |
| Subject: | Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Apple ESI Custodians |
| Date: | Friday, February 5, 2021 6:13:26 PM |

Counsel,

Pursuant to the parties' email agreement, Apple hereby identifies its proposed list of Apple custodians who are knowledgeable about and were involved with the core issues or subjects in this case:

- Michael O'Reilly
- Steve Hotelling
- Brian Land
- Steve Waydo
- Wolf Oetting
- Trevor Ness
- Chinsan Han
- Naoto Matsuyuki

Thanks, and best regards,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5509
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 31
-175-

EXHIBIT 32

| From: | Adam.Powell |
|---|---|
| To: | Andrea, Brian |
| Cc: | *** Apple-Masimo; Fong, Oliver; Joe.Re; Steve.Jensen; Perry.Oldham; Stephen.Larson; Mark.Kachner; Masimo.Apple |
| Subject: | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence |
| Date: | Wednesday, December 2, 2020 4:41:50 PM |

Brian,

Thank you for discussing Plaintiffs' discovery requests with us yesterday.  As discussed, we look forward to continuing our call at 10 am tomorrow, December 3.  Please use the following dial in number:



Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
## Knobbe Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Monday, November 30, 2020 9:53 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Fong, Oliver <OFong@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

Adam,

That works for us.  We will also be prepared to meet and confer regarding Steve's latest letter dated 11/24 during the call.

Thanks,
Brian


**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP

Exhibit 32
-176-

1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, November 30, 2020 12:33 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Fong, Oliver <OFong@gibsondunn.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

[External Email]
Brian,

We received your letter and can talk to you on December 1 at 11am.  Please use the following dial in number:



Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Fong, Oliver <OFong@gibsondunn.com>
**Sent:** Wednesday, November 25, 2020 6:14 PM
**To:** Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>; Stephen.Larson <Stephen.Larson@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>; Mark.Kachner <Mark.Kachner@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Correspondence

Counsel,

Please see attached correspondence.

Sincerely,
**Oliver Fong**

Exhibit 32
-177-

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.6373 • Fax +1 212.817.9573
OFong@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 32
-178-

EXHIBIT 38

| From: | Adam.Powell |
|-------|-------------|
| To: | Andrea, Brian |
| Cc: | Masimo.Apple; *** Apple-Masimo |
| Subject: | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians |
| Date: | Friday, February 12, 2021 3:52:47 PM |

Brian,

We have repeatedly provided the basis for our assertion that Apple's list is deficient.  We did so numerous times during the call and in my emails below.  To repeat yet again, Apple chose to exclude individuals that Apple knew had relevant information, including individuals that we identified in writing before Apple provided its list.  Our prior joint stipulation explained that Apple's proposal to search eight custodians was not enough because Lamego, O'Reilly, the alleged inventors, and the individuals on Apple's initial disclosures totaled more than eight custodians.  We also explained that we expected Apple's list to include relevant Apple employees from at least the following categories: (1) individuals who worked with Lamego, (2) individuals who worked with O'Reilly, (3) individuals who were involved in the accused aspects of the Apple Watch, (4) individuals who were involved in the accused business and marketing strategies, or (5) individuals who were involved in the patent applications at issue but not listed as an inventor.  Apple knew our position when it convinced us to withdraw the prior joint stipulation based on Apple's representation that it would fully comply with the ESI Order.  Our reasonable conclusion was that Apple's list would include these additional people.  Nevertheless, Apple still chose to exclude even the specific people we identified.  We believe Apple did not comply with the ESI Order.  Apple's apparent disagreement identifies a dispute —not that we are refusing to explain the basis for our position.

As for the former employees, we have explained many times that Plaintiffs' complaint alleges that Plaintiffs' former employees, including Lamego and O'Reilly, took Plaintiffs' trade secret to Apple.  The knowledge of which of those individuals should be on Apple's list is in Apple's—not Plaintiffs'— possession.

We have made clear that our dispute is not merely Apple's failure to identify specific individuals.  The parties dispute Apple's fundamental obligations under the ESI Order.  Plaintiffs maintain the ESI Order requires Apple to identify all of its custodians with knowledge.  We believe Apple's decision to exclude relevant custodians shows Apple did not comply with the ESI Order.  However, we do not know all the custodians that Apple excluded.  Thus, Apple's approach of considering specific custodians only after Plaintiffs identify them does not resolve or advance our fundamental dispute as to Apple's obligations under the ESI Order.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

Exhibit 38
-182-

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Thursday, February 11, 2021 6:30 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We don't understand how you can continue to claim that Apple's list is "facially deficient" yet continue to refuse to provide the basis for that claim.  I asked you multiple times during our call for your basis, and your response was that "it's not Plaintiffs' job to tell Apple who to put on their list."  Clearly, there are people that Plaintiffs believe should be on Apple's list and it is unclear why you won't tell us who those people are.

Apple performed a reasonable investigation and identified the people that are knowledgeable about the issues in this case.  If you believe there are people missing from that list, please let us know who you believe is missing.  As you know, during the meet and confer, after I asked you for this information many times, you did mention Messrs. Lamego and Nazzaro as well as "other people on Apple's initial disclosures."  I promised that we would investigate and get back to you regarding those names, and we will do so tomorrow.

I also asked you if you expected Apple to identify every person that ever worked on the Apple Watch; you confirmed that Plaintiffs do not expect Apple to identify every person that worked on the Watch.

Finally, I asked you if you expected Apple to identify every Apple current or former employee that was previously employed by Plaintiffs, regardless of what work they did for Plaintiffs or Apple, which is how Plaintiffs apparently came up with the majority of their forty-six custodians.  While you did not give me a straight answer one way or another, I told you that Apple does not believe that the fact that an employee was previously employed by Plaintiffs is a sufficient basis to believe those employees have knowledge about the issues in this case.  If you disagree, please let us know the basis for your disagreement.

I reiterate our request for Plaintiffs' basis for their allegation that Apple's list is deficient.  If you can't provide us with that information, it is unclear to Apple how Apple can try to resolve Plaintiffs' concerns, since we don't know what Plaintiffs' concerns are.

Thanks,
Brian


**Brian Andrea**

GIBSON DUNN

Exhibit 38
-183-

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, February 10, 2021 11:27 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We disagree with your characterization of virtually everything that you claim occurred during the meet and confer.  Your email again shows why we have suggested that the parties should record meet and confers.

We will reiterate our position.  During the meet and confer, Plaintiffs explained the basis for our assertion that Apple's list is deficient.  In particular, we explained that Apple's list excluded at least the custodians that Plaintiffs had already identified to Apple in its prior joint stipulation and in email correspondence.  We explained that it was not reasonable for Apple to demand that we identify all **_other_** missing individuals in Apple's list.  While we know Apple's list excluded relevant custodians, we have no way of knowing the universe of custodians that Apple has never disclosed to us.  We explained that we believe the ESI Order puts that obligation on Apple—not Plaintiffs.  This is because only Apple can perform that investigation.  Indeed, that is why we conducted a reasonable investigation on our side and identified 46 potential ESI custodians.

We also told you at the very beginning of the call that we have no problem explaining the relevance of each custodian on our list.  However, we explained that does not resolve our dispute because Apple's list is facially deficient.  Even if Apple explains that its eight custodians are relevant, that does not show that **_other_** individuals are irrelevant.  Thus, while we will provide the requested information at 5pm pacific on Friday, the exchange will not resolve this dispute.

It is inappropriate for Apple to supplement its list only when Plaintiffs can identify someone who is missing.  We maintain the ESI Order requires Apple to identify the reasonable universe of potential custodians.  We believe the parties are at an impasse because Apple has steadfastly refused to provide such a list.  Therefore, we have a fundamental disagreement as to Apple's obligation under the ESI Order.  That disagreement has not changed.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

Exhibit 38
-184-

**Knobbe Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, February 10, 2021 3:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam—

I write to memorialize the parties' discussion in this afternoon's meet and confer regarding the identification of ESI custodians.

Plaintiffs took the position that Apple's list of ESI custodians was deficient, but refused to provide a basis for that position.  Apple made clear that it conducted a reasonable investigation and identified those individuals knowledgeable about the core issues in this case, as required by the ESI Order, and thus it did not understand how Plaintiffs can possibly claim that Apple's list is deficient.  *See* Dkt. 51. Apple noted that it seemed that Plaintiffs have individuals in mind that they believe Apple should identify,  but Plaintiffs refused to identify those individuals.  Instead, Plaintiffs took the position that they were not obligated to provide that information to Apple.  Apple disagreed, noting that the meet and confer process is intended to facilitate an exchange of information between the parties so that the parties can come to ground or at least narrow their disputes, and asked multiple times that Plaintiffs provide the basis for their argument that Apple's list is deficient.

Eventually, after multiple requests, Plaintiffs identified two former Apple employees, Marcelo Lamego and David Nazzaro, as well as "individuals identified in Apple's Initial Disclosures."  Apple agreed to consider whether those individuals should be on its list of ESI custodians and indicated that it would get back to Plaintiffs with a response.

Plaintiffs also took the position that the parties are at an "impasse." Apple disagreed, noting that it was willing to investigate the issues Plaintiffs raised (as discussed above) and also suggesting that the parties exchange further information that would allow each party to assess the sufficiency of each others' list.  Indeed, Apple noted that it has no idea what the relevance is to this case of the vast majority of the forty-six (46) individuals Plaintiffs identified.  Apple suggested that each party should exchange information about the knowledge that each identified individual has, and after that exchange occurs, the parties should have another call to discuss the sufficiency of each others' lists. Plaintiffs eventually agreed to exchange this information, and asked that Apple suggest a time for the exchange.  Apple suggests the parties exchange descriptions of the relevant knowledge their respective proposed ESI custodians possess at 5:00 p.m. PST on Friday, February 12, 2021.  Please let us know if Plaintiffs agree.

Best,
Brian

**Exhibit 38**
**-185-**

**Brian Andrea**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 38
-186-

EXHIBIT 40

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | Andrea, Brian |
| **Cc:** | Masimo.Apple; *** Apple-Masimo |
| **Subject:** | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians |
| **Date:** | Wednesday, February 24, 2021 6:17:43 PM |

Brian,

Thank you for your emails.  We disagree with your discussion of Plaintiffs' prior joint stipulation, but it does not appear helpful to further debate that issue by email.   We believe the record is clear.

We also disagree with your assertions regarding Apple's list of ESI custodians.  Simply repeating your assertion that Plaintiffs have not provided a basis for their position does not make your characterization of our position correct.   We have been very clear about our position and will repeat it here again.  The dispute is not about Apple adding a particular name that ***Plaintiffs*** can identify as missing.  The parties dispute Apple's fundamental obligations under the ESI Order.  Plaintiffs believe Apple must identify the potential ESI custodians that fall within the scope as defined by the ESI Order.  Apple apparently disagrees.  That is the parties' dispute, and simply adding individuals that Plaintiffs identify does not alter that underlying dispute.

We appreciate that Apple has now acknowledged the five categories of individuals that we originally identified for Apple on January 22, but Apple's discussion also does not resolve the parties' dispute.  Your email states that Apple has identified some people in four of the categories but does not state that it has identified all potential ESI custodians with knowledge in each category.  Instead, Apple shifts to trying to characterize Plaintiffs position as an extreme, asking if Plaintiffs are demanding that Apple identify "every single person that Lamego [or O'Reilly] interacted with during his time at Apple, regardless of what their knowledge is about the issues int his case."  We have always been clear that is not our position.  My February 12 email, which was not included in the email chain below, explained that "we expected Apple's list to include ***relevant*** Apple employees from at least the following categories . . . ."  Thus, we have already told you what we expect.  Our position is that Apple—not Plaintiffs—have the requisite knowledge to identify the individuals within those categories that should be included.

Similarly, we have also never asserted that all of Plaintiffs' former employees should be listed on Apple's list of ESI custodians.  Rather, we explained that ***Apple*** should determine which of those former employees have knowledge falling within the definition of the ESI Order.  Apple has argued that some individuals lack knowledge because they worked on unrelated projects.  But, again, Apple has declined to list the people that worked on relevant projects.

Apple also asserts it is not listing certain individuals because "the collection of ESI is burdensome, time consuming, and costly."  As we have repeatedly explained, we are not necessarily asserting that all individuals on Apple's list would need to be searched.  Rather, we are asking for a list of potential ESI custodians so that the parties can have an informed discussion as to which ESI custodians would ultimately be searched.  Our position remains that this is what is required by the ESI Order, and we have provided a list in accordance.  Apple could easily provide such a list, and then the parties can discuss how to keep the searching itself reasonable.

Exhibit 40
-190-

For all these reasons, the parties do not appear to be making any progress on the fundamental dispute that we identified above.  The parties continue to dispute Apple's obligations under the ESI Order: whether Apple is required to provide the universe of potential ESI custodians fitting the scope defined in the ESI Order.

Your February 17 email also addresses two other issues: (1) Plaintiffs' list of ESI custodians and (2) the destruction of Marcelo Lamego's and David Nazzaro's files.  Those issues do not appear to be relevant to or advance our fundamental dispute discussed above.  Thus, we will respond to those portions of your email separately.

As for your February 23 email, Apple's proposal does not resolve the parties' dispute.  We will also respond to that proposal separately.

Best regards,
Adam

**Adam Powell**
Partner
**858-707-4245** **Direct**
**Knobbe** **Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Tuesday, February 23, 2021 5:52 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We have not yet received a response to the email below.  In any event, Apple is eager to move forward with the parties' ESI discussions, and proposes that in the interest of avoiding further delay, the parties move forward with discussing search terms for custodians on which they agree.  We propose that the parties have a discussion this week about the custodians to which they agree from both lists, and select a date next week for the mutual exchange of search terms for those custodians.   Please let us know if Plaintiffs agree, and if so, your availability for a discussion this week about mutually agreeable custodians.

Thanks,
Brian

**Brian Andrea**

**GIBSON DUNN**

Exhibit 40
-191-

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Andrea, Brian
**Sent:** Wednesday, February 17, 2021 9:23 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam,

I am responding to your emails sent Friday, February 12 at 3:53pm PT and 5pm PT, and Sunday, February 14 at 3:40pm PT regarding the parties' ongoing discussions regarding ESI custodians.  As an initial matter, you misrepresent the circumstances surrounding Plaintiffs' withdrawal of their joint stipulation.  Plaintiffs' joint stipulation sought to compel Apple to exchange proposed lists of ESI custodians instead of discussing limits on custodians before exchanging proposed lists, as Apple proposed.  While Apple maintains that such a discussion would have been helpful (as evidenced at least by Plaintiffs' complaints about Apple's list of proposed custodians based on the number of custodians identified), Apple did not see the point in burdening the Court with that dispute. Accordingly, Apple agreed to exchange lists but did not, as your email implies, agree that it would identify any specific individuals.   Your insinuation that Apple agreed to anything else is plainly incorrect.

**Plaintiffs' list of ESI custodians**:

While we appreciate your willingness to allow us to share the list with Apple's in-house counsel, we maintain that Plaintiffs' designation of their list as attorneys' eyes only is wholly improper.  There is nothing in Plaintiffs' list that reveals any confidential information.

Additionally, Plaintiffs' "areas of knowledge" for many of Plaintiffs' listed ESI custodians is unhelpful. Specifically, Plaintiffs' list includes eighteen (18) former employees of theirs that were later employed by Apple—excluding Lamego and O'Reilly—and for each of those individuals, Plaintiffs cite the "areas of knowledge" as "former employee later employed by Apple; Acquisition, use, and disclosure of Plaintiffs' confidential information."  This description provides no information as to what specific relevant knowledge those individuals have other than the fact that they were previously employed by Plaintiffs and were later employed by Apple.  Please identify what specific knowledge of the "acquisition, use, and disclosure of Plaintiffs' confidential information" each identified custodian has that is relevant to this case.   We also note that Plaintiffs did not provide an "area of knowledge" for Tony Alan, despite listing Tony Alan on Plaintiffs' initial list of ESI custodians. Please confirm that Plaintiffs are dropping Mr. Alan as a proposed ESI custodian; if Plaintiffs intend to keep Mr. Alan on the list, please also identify the specific knowledge that Mr. Alan has that is relevant to this case.

Exhibit 40
-192-

**Apple's list of ESI custodians**:

Plaintiffs still have not provided a response to Apple's request for the basis for their assertion that Apple's list is deficient.  As discussed below, we have addressed the specific individuals you have indicated you believe are missing, and we have even added custodians to Apple's list in an attempt to move this process forward.   Nonetheless, Plaintiffs continue to assert that Apple is "exclud[ing] individuals Apple knew had relevant information," but also continue to refuse to identify the individuals that you contend are missing.  Apple is confused by Plaintiffs' position; Plaintiffs refused to discuss reasonable limits on ESI custodians with Apple previously, arguing that the ESI Order does not require a specific number of individuals, yet Plaintiffs now appear to be complaining about Apple's ESI list based solely on the number of ESI custodians Apple identified.

One of the reasons Apple insisted on exchanging information about the knowledge each proposed custodian has that is relevant to this case is so that the parties can assess whether each others' lists are sufficient and whether there are additional custodians with specific areas of knowledge they believe should be listed on the other party's list.  As we have stated several times, and as discussed below, Apple has identified the proposed ESI custodians that have knowledge relevant to this case.  If there are additional custodians (or custodians with specific areas of knowledge relevant to the case) that Plaintiffs believe should be identified (either now, or as discovery progresses), please let us know and we would be happy to investigate.

With respect to the categories of Apple employees you listed in your email dated February 12, Apple responds below:

> (1) individuals who worked with Lamego:  as an initial matter, Mr. Lamego was at Apple for only 6 months.  Apple has identified every inventor listed with Mr. Lamego on each of the Disputed Patents, as well as Mr. Lamego's supervisor.  It is Plaintiffs' position that Apple should identify every single person that Lamego interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

> (2) individuals who worked with O'Reilly:  Apple identified Mr. O'Reilly along with Mr. Mistri, who has worked with Mr. O'Reilly.  Is it Plaintiffs' position that Apple should identify every single person that O'Reilly has interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

> (3) individuals who were involved in the accused aspects of the Apple Watch:  Apple has identified Mr. Hotelling, Ms. Haggerty, Mr. Land, and Mr. Waydo, all of whom have knowledge of the "accused aspects of the Apple Watch."  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to, particularly in view of your prior representation that you are not requesting that Apple identify every person that has worked on the Apple Watch.

> (4) individuals who were involved in the accused business and marketing strategies:  Apple has identified Mr. O'Reilly, Ms. Caldbeck, and Mr. Mistri, all of whom have knowledge about

Exhibit 40
-193-

the "accused business and marketing strategies."

    (5) <u>individuals who were involved in the patent applications at issue but not listed as an inventor</u>:  we have listed every inventor listed with Mr. Lamego on each of the Disputed Patents.  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to.

Furthermore, Plaintiffs are now alleging that Plaintiffs' former employees later employed by Apple should be on Apple's list of ESI custodians, without providing any basis for such a position.  The fact that an employee was previously employed by Plaintiffs is not a sufficient basis to allege those employees have knowledge about the issues in this case, and Plaintiffs have provided no basis for their assertion that the former employees "took Plaintiffs' trade secret to Apple."  The collection of ESI is burdensome, time consuming, and costly, and Apple is not going to agree to identify custodians simply based on an unfound conclusory assertion by Plaintiffs that certain employees "took Plaintiffs' trade secret to Apple."  If you have a specific basis for that assertion, please let us know, but based on Apple's investigation, the nineteen former employees Plaintiffs identified on their list do not have knowledge relevant to the issues in this case.

**Marcelo Lamego and David Nazzaro**:

Your email on Monday (February 15) states that Plaintiffs are "surprised that [Apple is] just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro."  We are not sure why Plaintiffs would be surprised by this—both employees left Apple in 2014, years before Plaintiffs filed their Complaint in this case.  Do Plaintiffs' contend that Apple had some obligation to retain either individuals' documents when they left Apple?  If so, what is your basis for such a contention?

I have addressed your specific questions below:

- Your request that Apple "conduct a company-wide search of 'Lamego' and 'Navarro' and preserve all resulting emails" is unreasonable and overburdensome.  As you know, Apple employs approximately 150,000 employees worldwide.  Apple does not have the ability to run a search across all employees' emails—to accomplish Plaintiffs' requested search, Apple would have to pull the emails for every single employee and run a separate search on the email for each employee separately.  Such a request would be exceedingly costly and time-consuming, and is certainly not proportional to the needs of this case.
- Apple does not have any electronic devices used by Lamego or Navarro, or any images of such devices.  Nor does Apple have files from their computers, text messages, or chat messages other than those that exist is other custodians' files or in non-custodial databases.   Apple has preserved, and is collecting and reviewing, any remaining relevant files that exist.  Indeed, Apple has already begun producing such documents and will continue to do so on a rolling basis, to the extent additional documents are identified.
- Mr. Lamego and Navarro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, in accordance with Apple's procedures for departing employees.   Apple will produce a copy of its document retention and destruction policies and practices.

Exhibit 40
-194-

With respect to your final question ("Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?"), Apple rejects the implication that Apple somehow acted improperly by "destroy[ing]" any information.  In any event, please let us know which individuals you are referring to.  As a general matter, we are unaware of the removal of the files of any other individuals with knowledge relevant to the issues in this case.

Thanks, and best regards,

Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, February 15, 2021 1:40 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]

Brian,

We are surprised that you are just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro.  We request that Apple conduct a company-wide search of "Lamego" and "Navarro" and preserve all resulting emails.  We presume you have done so already, but please confirm that Apple has preserved any remaining files, electronic devices (e.g., computers, phones, storage devices) used by Lamego or Navarro, or any images of such devices.  Please also confirm that Apple will preserve emails, files, and devices for any other individuals that leave the company and are related to this dispute, including all individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area.  Please also provide a copy of Apple's document retention and destruction policies and practices, pursuant to Plaintiffs' RFP No. 107.

We would also like to understand the scope of what has been deleted and whether the deleted files can be recovered.  To that end, please answer the following questions:

1. Does Apple have any other files for Lamego or Navarro, such as files from their computers, text messages, or chat messages?
2. Does Apple have electronic devices used by Lamego or Navarro that are in Apple's custody or control, such as computers, phones, USB storage devices, or cloud storage, or any images of

Exhibit 40
-195-

such devices?

3. When did Apple last have custody of Lamego's and Navarro's emails and any files or devices that were destroyed?  Why did Apple destroy them?

4. Does Apple have any form of archive or backup that might contain emails, files, or devices used by Lamego or Navarro?  What did Apple do to confirm the destruction of any of Lamego's and Navarro's emails, files, or devices that were destroyed?

5. Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, February 12, 2021 4:57 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam—

Pursuant to our meet and confer earlier this week, and our follow up correspondence, I am writing with the additional information the parties agreed to exchange.

Below is an identification of the knowledge that each of Apple's proposed ESI custodians has that is relevant to the core issues or subjects in this case:

- Mike O'Reilly:  Mr. O'Reilly is the subject of Plaintiffs' allegations related to alleged trade secret misappropriation.

- Steve Hotelling:  Mr. Hotelling was Marcelo Lamego's supervisor during the six months Mr. Lamego was employed by Apple.  Mr. Hotelling is also knowledgeable about the operation and development of the Apple Watch.  Mr. Hotelling is also a named inventor on one of the Apple Disputed Patents and the Apple Disputed Application.

- Brian Land:  Mr. Land is knowledgeable about the operation and development of the Apple Watch hardware.

- Steve Waydo:  Mr. Waydo is knowledgeable about the operation and development of the Apple Watch software.

Exhibit 40
-196-

- **Wolf Oetting**:  Mr. Oetting is a named inventor on two of the Apple Disputed Patents.

- **Trevor Ness**:  Mr. Ness is a named inventor on two of the Apple Disputed Patents.

- **Chinsan Han**:  Mr. Han is a named inventor on two of the Apple Disputed Patents.

- **Naoto Matsuyuki**:  Mr. Matsuyuki is a named inventor on two of the Apple Disputed Patents.

During the parties' meet and confer, Plaintiffs identified additional individuals that they believe should have been identified by Apple as potential ESI custodians.  Specifically, Plaintiffs identified Marcelo Lamego, David Nazzaro, and "individuals on Apple's initial disclosures."  Apple's response to Plaintiffs' request that Apple identify those individuals is set forth below.

- **Myra Haggerty**:  Apple identified Ms. Haggerty on its initial disclosures based on her knowledge relevant to Plaintiffs' infringement allegations.  In the interest of moving the case forward, Apple is willing to add Ms. Haggerty to its list of ESI custodians.  She has knowledge about the operation and development of the Apple Watch.

- **Deirdre Caldbeck**:   Apple identified Ms. Calbeck because she has knowledge relevant to "marketing relating to the Apple Watch Series 4 and Series 5." In the interest of moving the case forward, Apple is willing to add Ms. Calbeck to its list of ESI custodians at this time.  She has knowledge about the marketing of the Apple Watch.

- **Mark Rollins**:  Mr. Rollins was identified on Apple's initial disclosures as having knowledge of Apple's financial information related to the Apple Watch.  Mr. Rollins is a corporate witness that would testify regarding non-custodial financial information pulled from Apple's financial databases; he is not an individual that is likely to have ESI relevant to the issues in this case.

- **Marcelo Lamego** and **David Nazzaro**:  As we noted in our prior correspondence, Messrs. Lamego and Nazzaro are no longer Apple employees and have not been Apple employees since 2014.  Apple no longer has either individual's email files.  To the extent Apple has relevant documents from either individual in non-custodial databases or the files of other custodians, Apple will produce such documents (and in fact has already begun producing such documents).

Finally, Apple is adding **Afshad Mistri** to its list of ESI custodians.  Mr. Mistri has knowledge about marketing of the Apple Watch and Apple's interactions with hospitals.

Please note that given the position that Plaintiffs have taken with respect to broad swaths of publicly available information—including photographs of Apple's products and public patents—we are not currently able to share critical information about Plaintiffs' allegations with Apple.  Accordingly, we are making these decisions without the benefit of information we might otherwise have if Plaintiffs were not designating public information as AEO.

Exhibit 40
-197-

Of course, Apple's investigation into the issues and allegations in this case is ongoing, and Apple
reserves the right to identify additional ESI custodians as its investigation proceeds.  Additionally,
Apple reserves the right to request ESI from individuals that do not appear on Plaintiffs' initial list as
discovery progresses in this case.

Best regards,
Brian


**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Thursday, February 11, 2021 9:30 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We don't understand how you can continue to claim that Apple's list is "facially deficient" yet
continue to refuse to provide the basis for that claim.  I asked you multiple times during our call for
your basis, and your response was that "it's not Plaintiffs' job to tell Apple who to put on their list."
Clearly, there are people that Plaintiffs believe should be on Apple's list and it is unclear why you
won't tell us who those people are.

Apple performed a reasonable investigation and identified the people that are knowledgeable about
the issues in this case.  If you believe there are people missing from that list, please let us know who
you believe is missing.  As you know, during the meet and confer, after I asked you for this
information many times, you did mention Messrs. Lamego and Nazzaro as well as "other people on
Apple's initial disclosures."  I promised that we would investigate and get back to you regarding
those names, and we will do so tomorrow.

I also asked you if you expected Apple to identify every person that ever worked on the Apple
Watch; you confirmed that Plaintiffs do not expect Apple to identify every person that worked on
the Watch.

Finally, I asked you if you expected Apple to identify every Apple current or former employee that

Exhibit 40
-198-

was previously employed by Plaintiffs, regardless of what work they did for Plaintiffs or Apple, which is how Plaintiffs apparently came up with the majority of their forty-six custodians.  While you did not give me a straight answer one way or another, I told you that Apple does not believe that the fact that an employee was previously employed by Plaintiffs is a sufficient basis to believe those employees have knowledge about the issues in this case.  If you disagree, please let us know the basis for your disagreement.

I reiterate our request for Plaintiffs' basis for their allegation that Apple's list is deficient.  If you can't provide us with that information, it is unclear to Apple how Apple can try to resolve Plaintiffs' concerns, since we don't know what Plaintiffs' concerns are.

Thanks,
Brian


**Brian Andrea**

### GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, February 10, 2021 11:27 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We disagree with your characterization of virtually everything that you claim occurred during the meet and confer.  Your email again shows why we have suggested that the parties should record meet and confers.

We will reiterate our position.  During the meet and confer, Plaintiffs explained the basis for our assertion that Apple's list is deficient.  In particular, we explained that Apple's list excluded at least the custodians that Plaintiffs had already identified to Apple in its prior joint stipulation and in email correspondence.  We explained that it was not reasonable for Apple to demand that we identify all *other* missing individuals in Apple's list.  While we know Apple's list excluded relevant custodians, we have no way of knowing the universe of custodians that Apple has never disclosed to us.  We explained that we believe the ESI Order puts that obligation on Apple—not Plaintiffs.  This is because only Apple can perform that investigation.  Indeed, that is why we conducted a reasonable

Exhibit 40
-199-

investigation on our side and identified 46 potential ESI custodians.

We also told you at the very beginning of the call that we have no problem explaining the relevance of each custodian on our list.  However, we explained that does not resolve our dispute because Apple's list is facially deficient.  Even if Apple explains that its eight custodians are relevant, that does not show that *other* individuals are irrelevant.  Thus, while we will provide the requested information at 5pm pacific on Friday, the exchange will not resolve this dispute.

It is inappropriate for Apple to supplement its list only when Plaintiffs can identify someone who is missing.  We maintain the ESI Order requires Apple to identify the reasonable universe of potential custodians.  We believe the parties are at an impasse because Apple has steadfastly refused to provide such a list.  Therefore, we have a fundamental disagreement as to Apple's obligation under the ESI Order.  That disagreement has not changed.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, February 10, 2021 3:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam—

I write to memorialize the parties' discussion in this afternoon's meet and confer regarding the identification of ESI custodians.

Plaintiffs took the position that Apple's list of ESI custodians was deficient, but refused to provide a basis for that position.  Apple made clear that it conducted a reasonable investigation and identified those individuals knowledgeable about the core issues in this case, as required by the ESI Order, and thus it did not understand how Plaintiffs can possibly claim that Apple's list is deficient.  *See* Dkt. 51. Apple noted that it seemed that Plaintiffs have individuals in mind that they believe Apple should identify,  but Plaintiffs refused to identify those individuals.  Instead, Plaintiffs took the position that they were not obligated to provide that information to Apple.  Apple disagreed, noting that the meet and confer process is intended to facilitate an exchange of information between the parties so that the parties can come to ground or at least narrow their disputes, and asked multiple times that Plaintiffs provide the basis for their argument that Apple's list is deficient.

Exhibit 40
-200-

Eventually, after multiple requests, Plaintiffs identified two former Apple employees, Marcelo Lamego and David Nazzaro, as well as "individuals identified in Apple's Initial Disclosures."  Apple agreed to consider whether those individuals should be on its list of ESI custodians and indicated that it would get back to Plaintiffs with a response.

Plaintiffs also took the position that the parties are at an "impasse." Apple disagreed, noting that it was willing to investigate the issues Plaintiffs raised (as discussed above) and also suggesting that the parties exchange further information that would allow each party to assess the sufficiency of each others' list.  Indeed, Apple noted that it has no idea what the relevance is to this case of the vast majority of the forty-six (46) individuals Plaintiffs identified.  Apple suggested that each party should exchange information about the knowledge that each identified individual has, and after that exchange occurs, the parties should have another call to discuss the sufficiency of each others' lists. Plaintiffs eventually agreed to exchange this information, and asked that Apple suggest a time for the exchange.  Apple suggests the parties exchange descriptions of the relevant knowledge their respective proposed ESI custodians possess at 5:00 p.m. PST on Friday, February 12, 2021.  Please let us know if Plaintiffs agree.

Best,
Brian


**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended

**Exhibit 40**
-201-

recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 40
-202-

EXHIBIT 41

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | *** Apple-Masimo |
| **Cc:** | Masimo.Apple |
| **Subject:** | Masimo v. Apple - Motion to Compel Compliance With ESI Order |
| **Date:** | Wednesday, February 24, 2021 6:30:48 PM |
| **Attachments:** | 2021-02-24 Joint Stipulation.doc |
| | Powell Declaration.pdf |

Counsel,

Attached is a joint stipulation addressing our dispute on the ESI Order.  I will send the exhibits in a separate email because of their size.  Please let me know if you do not receive them.

We look forward to receiving Apple's portion in seven days.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

Exhibit 41
-203-

EXHIBIT 42

| From: | Adam.Powell |
|---|---|
| To: | Andrea, Brian |
| Cc: | Masimo.Apple; *** Apple-Masimo |
| Subject: | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians |
| Date: | Tuesday, March 9, 2021 5:40:00 PM |

Brian,

Thank you for your email.  As an initial matter, we do not understand why Apple keeps combining numerous separate issues into a single email.  That makes the parties' correspondence harder to follow by conflating issues and omitting several of Plaintiffs emails to which Apple is responding.  Nevertheless, we respond to each issue below.

**Apple's List of ESI Custodians**

We do not understand Apple's criticism regarding the timing of our prior email.  We confirmed the parties were at an impasse regarding an issue we have been discussing for many months and, shortly thereafter, we sent you our portion of the joint stipulation.  Your response to that email confirmed the parties' impasse.

**Apple's Proposal Regarding Search Terms**

We responded to Apple's proposal on this issue separately.

**Gerry Hammarth**

Mr. Hammarth has some knowledge of Cercacor's business and products in general, but we do not believe he is "knowledgeable about and [was] involved with the core issues or subjects in this case" as required by the ESI Order.   However, Apple is welcome to include Mr. Hammarth on its list of custodians/search terms that it requests Plaintiffs search.

**Former Employees**

Your assertion that we refused to provide additional details about former employees is not correct.  As we have explained, to the extent Apple employed the former employees in relevant areas, our view is they should be part of the ***potential*** candidates for ESI searching.  We also believe that Apple's communications with these individuals is relevant to several issues concerning Lamego and O'Reilly, including Apple's knowledge that it was obtaining Plaintiffs' confidential information, inducement of former employees to provide confidential information, and willfulness.  That is why we disclosed them to Apple on Plaintiffs' list of potential ESI custodians.

As for whether Apple should have disclosed these individuals on ***Apple's*** list of potential ESI custodians, Apple has previously asserted some of these individuals were not relevant because they worked on unrelated projects at Apple, like the Apple Airpods.  We may ultimately agree with Apple, but to make that agreement, we would need to know what each former employee did at Apple. Apple provided some of that information in response to Interrogatory No. 11, but has not disclosed

Exhibit 42
-204-

what each individual did at Apple.

**Lamego and Nazzaro's Emails and Files**

As we have explained, we are asking for facts to determine why these files were deleted and
whether they can be recovered from another source.  We need to obtain the facts before we can
take a position as to what Apple's legal obligations were at the time Lamego and Nazzaro left Apple.
We address each bullet point below:

- Apple appears to be drawing a distinction between "destroying" files and "removing" them
  from Apple's system.  Can you explain?  What does Apple do when it "removes" files from its
  system?  Does Apple move or copy the files to some other location or device?  Or does it
  delete all instances of those files?  If Apple deletes all instances of those files, does it simply
  delete the files or does it "wipe" or overwrite files?

- What software does Apple use to search emails?  Most software allows for searching multiple
  custodians at once, so we may be able to offer some suggestions.

- Apple states that it has not exported Lamego or Nazzaro's files for other litigation.  Has Apple
  done so for any other purpose?

- It sounds like Apple is taking the position that it must have removed Lamego and Nazzaro's
  emails and files 4-10 weeks after they left because that is Apple's standard procedure.  Has
  Apple been able to verify that it actually removed Lamego and Nazzaro's emails 4-10 weeks
  after they left?  We reviewed APL-MAS_75595-99, but the file is illegible.  Please produce a
  new copy that is legible.

- Apple claims it does not understand what we mean by "a relevant area."  As we have
  previously explained, Apple itself asserted that some individuals did not work in a relevant
  area.  For example, Apple asserted that one individual was not relevant because he worked on
  the Apple Airpods project.  If that person did not also work on something relevant to the case,
  we would likely agree with that assessment.  Thus, we are asking Apple to identify the
  individuals that ***Apple*** believes worked in an area relevant to the case.
  - Apple also asserts that Plaintiffs are contending any individual who worked for both
    Plaintiffs and Apple worked in a "relevant area."  We have made clear that is not our
    position.  We have consistently explained that we are not necessarily asking Apple to
    search all former employees.  A relevant area may include, by way of example and not
    limitation, physiological monitoring, sensor design, or health-related app development.
    Until Apple explains what each individual did at Apple, it is impossible for us to say
    whether the individual works in a "relevant area."  Apple—not Plaintiffs—have the
    requisite knowledge.

  - We reserve all rights if Apple chooses to delete any files of any former employees.

**Plaintiffs' Document Retention**

Exhibit 42
-205-

Apple also asks Plaintiffs about their document retention policies.  We do not understand what this has to do with Plaintiffs' questions about Apple's destruction of Lamego and Nazzaro's files.  Regardless, we will search for and produce any document retention and destruction policies and practices.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** **Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, March 3, 2021 5:30 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

I'm writing regarding the parties' ongoing discussions regarding ESI custodians, including in response to your emails dated February 24, 2021 at 6:18, 6:46, and 6:49 pm PT.

**Plaintiffs' complaints about Apple's ESI custodian list (your 2/24/21 email sent at 6:18pm PT)**:
Apple does not believe there is anything in your email that requires a response in view of Plaintiffs' joint stipulation served 15 minutes after this email.  As you know, Apple disagrees with Plaintiffs' position and is at a loss as to what more can be done regarding Plaintiffs' complaints about Apple's list of ESI custodians if Plaintiffs are going to continue to assert that the list is deficient without providing a basis for their assertion.  While Apple believes the parties could have resolved this issue through the exchange of information, Plaintiffs decided to file their joint stipulation and Apple will respond to Plaintiffs' arguments in its section of that joint stipulation.

**Apple's proposal that the parties move forward with search terms on undisputed search terms**:
We have not yet heard from you as to whether Plaintiffs are willing to move forward with exchanging search terms on undisputed custodians, as Apple suggested more than a week ago.  While you stated that "Apple's proposal does not resolve the parties' dispute," you also indicated that you would "respond to that proposal separately."  Please let us know whether Plaintiffs agree with Apple's proposal and, if so, your availability for a discussion about mutually agreeable custodians.

**Plaintiffs' failure to identify Gerry Hammarth as an ESI custodian**:  In their response to Apple's Interrogatory No. 1 ("Identify by name and title at least five people at Masimo and at least five

3

Exhibit 42
-206-

people at Cercacor having the most knowledge about or responsibility….”), Plaintiffs identified Gerry Hammarth as an individual who is “knowledgeable about Cercacor’s products.”  Plaintiffs did not, however, identify Mr. Hammarth as an ESI custodian.  Please explain why Plaintiffs did not list Mr. Hammarth as an ESI custodian.

**Plaintiffs’ refusal to provide additional information regarding the “former employees” (your 2/24/21 email sent at 6:46pm PT)**:  Apple does not understand your refusal to provide additional specific descriptions about the relevant knowledge that each of the former employees’ of Plaintiffs later employed by Apple holds that warranted Plaintiffs identifying each “former employee” on their list of ESI custodians.  As noted in our prior email, stating only that each individual’s knowledge is “former employee later employed by Apple; Acquisition, use, and disclosure of Plaintiffs’ confidential information” is completely unhelpful and does nothing to help Apple assess why Plaintiffs believe each person has relevant knowledge and should be identified as an ESI custodian. The fact that the “ESI Order does not require such a description” misses the point; Apple requested the additional information so that it can understand why Plaintiffs believe the former employees have relevant knowledge.  Plaintiffs’ refusal to provide additional information does nothing to move the ball forward with respect to this dispute.

Apple reiterates its request for information regarding the relevant knowledge that each “former employee” has that warrants Plaintiffs listing them on their list of ESI custodians.  If Plaintiffs’ sole reason for listing the “former employees” is the fact that they were at one point employed by Plaintiffs and were later employed by Apple, then please just tell us that.  If there is an additional reason Plaintiffs listed each “former employee,” then tell us that instead.

Your email states that Plaintiffs” remain willing to discuss these former employees, but we need more information from Apple.”  While Apple has already stated it is willing to provide information regarding each “former employee,” including by providing supplemental responses to Interrogatory No. 11 (which asks Apple to “identify all current or former Apple employees who worked at Masimo and/or Cercacro before being employed by Apple….”), the information Apple is willing to provide in response to discovery requests is separate from this dispute.  Plaintiffs identified each former employee as an individual knowledgeable about the issues in this case, pursuant to the ESI Order, and Apple requests the basis for those identifications.  Plaintiffs should not require information from Apple to inform Apple why it is they believe each individual has relevant knowledge.

**Plaintiffs’ questions regarding Lamego/Nazzaro emails (your 2/24/21 email sent at 6:49pm PT)**:  Your email did not answer our question as to whether or not Plaintiffs contend that Apple had some obligation to retain either Marcelo Lamego and David Nazzaro’s documents when they left Apple in 2014.  Please let us know if that is Plaintiffs’ contention and, if so, the basis for such a contention.

Your email asked a number of question, which I have listed below, followed by Apple’s response:

- *Does Apple have any form or archive or backup that might contain emails, files, or devices used by Lamego or Navarro?  What did Apple do to confirm the destruction of any of Lamego’s and Navarro’s emails, files, or devices that were destroyed?*

    Apple response:  Apple does not have any form or archive or backup that might contain

Exhibit 42
-207-

emails, files, or devices used by Lamego or Nazzarro.  As noted in my prior email, however, Apple has preserved, and is collecting and reviewing, any remaining relevant files that exist. Indeed, Apple has already begun producing such documents and will continue to do so on a rolling basis, to the extent additional documents are identified.  Mr. Lamego and Nazzarro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, as confirmed by the group that oversees such procedures in accordance with Apple's document retention and destruction policies and practices.

- *Does Apple have the ability to search groups of email accounts at once?  For example, could Apple search emails from individuals who work in physiological monitoring, individuals in Lamego's group, executives, or a custom list of individuals?*

   <u>Apple response</u>:  Apple does not have the ability to search groups of email accounts at one time.  The only way to search an individual's email is by pulling the email from each individual and performing searches.

- *What do you mean by "non-custodial databases"?  Do such databases include emails, files, text messages, chat messages, or devices used by Lamego or Navarro?  Has Apple ever exported Lamego or Navarro's files for other litigation, such that it could search the custodial data exported for the other litigation?*

   <u>Apple response</u>:  Apple means document repositories that are not "assigned" to any specific custodian, and instead are used by multiple individuals to store files or information.  One example of a "non-custodial database" would be a server folder.  Another example would be Apple's financial records.  Those databases do not include emails, text messages, chat messages, or devices used by Lamego or Nazzarro unless for some reason those individuals attached an email or text/chat message to a document in the database.  Apple has not exported either individual's files for other litigation.

- *Your email is unclear as to whether Apple actually removed Lamego and Navarro's files 4-10 weeks after they left Apple or if you are assuming that is the case because that is Apple's standard practice.  Please provide the actual date that Lamego and Navarro's emails and files were removed.  Please also provide a copy of Apple's document retention and destruction policies and practices, or provide bates numbers if those documents have been produced.*

   <u>Apple response</u>:  Apple has already produced its record management policy.  *See* APL-MAS_75595-99.  As stated in my previous email and again above,  Mr. Lamego and Nazzarro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, as confirmed by the group that oversees such procedures in accordance with Apple's document retention and destruction policies and practices.  Apple does not track the "actual date" that files for departing employees are removed, and thus we cannot provide you with that information.

- *Your email asks which individuals we are referring to when we say "other individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area."  We have been discussing the issue of former employees for quite some time and have repeatedly explained our position.  We identified the former employees that we know of in our ESI*

Exhibit 42
-208-

*custodian list.  We asked Apple to identify the former employees that it knows of and identify the individuals that worked in a relevant area.  Apple has so far declined to do so.  Please provide a list of such individuals and identify if Apple has destroyed the files for any such individuals.  Please confirm Apple will retain the files for any such individuals even if they stop working with Apple while this case is pending.*

Apple response:  Apple still does not understand what Plaintiffs mean by "a relevant area." Contrary to your statement, Plaintiffs have not explained what they mean by this statement. As we have indicated many times, Apple has investigated Plaintiffs' allegations in this case and have identified two "former employees" that appear relevant—Michael O'Reilly and Marcelo Lamego.

It appears that Plaintiffs' position is that the fact that an individual was previously employed by Plaintiffs and later employed by Apple means they "worked for or with Apple in a relevant area."  Apple disagrees, and thus reiterates its request for Plaintiffs to define what they mean by "relevant area."  To the extent Plaintiffs are able to identify relevant individuals, Apple will investigate the responses to your questions.

Finally, Apple asks that Plaintiffs answer the following questions regarding each individual they have identified as an ESI custodian that is no longer employed by Plaintiffs, including but not limited to both Marcelo Lamego and Michael O'Reilly:

- Did Plaintiffs maintain <u>all</u> of each individuals' documents and emails after he/she left Masimo or Cercacor?

- If Plaintiffs deleted any documents from each individual, please provide the date on which those documents were deleted, what documents were deleted, and whether the documents were deleted in accordance with Plaintiffs' document retention and destruction policies or practices.

- Please confirm that Plaintiffs will provide a copy of their document retention and destruction policies and practices, or provide bates numbers if those documents have been produced.

We look forward to receiving your responses.

Thanks, and best regards,
Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>

Exhibit 42
-209-

**Sent:** Wednesday, February 24, 2021 9:18 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

Thank you for your emails.  We disagree with your discussion of Plaintiffs' prior joint stipulation, but it does not appear helpful to further debate that issue by email.   We believe the record is clear.

We also disagree with your assertions regarding Apple's list of ESI custodians.  Simply repeating your assertion that Plaintiffs have not provided a basis for their position does not make your characterization of our position correct.   We have been very clear about our position and will repeat it here again.  The dispute is not about Apple adding a particular name that ***Plaintiffs*** can identify as missing.  The parties dispute Apple's fundamental obligations under the ESI Order.  Plaintiffs believe Apple must identify the potential ESI custodians that fall within the scope as defined by the ESI Order.  Apple apparently disagrees.  That is the parties' dispute, and simply adding individuals that Plaintiffs identify does not alter that underlying dispute.

We appreciate that Apple has now acknowledged the five categories of individuals that we originally identified for Apple on January 22, but Apple's discussion also does not resolve the parties' dispute.  Your email states that Apple has identified some people in four of the categories but does not state that it has identified all potential ESI custodians with knowledge in each category.  Instead, Apple shifts to trying to characterize Plaintiffs position as an extreme, asking if Plaintiffs are demanding that Apple identify "every single person that Lamego [or O'Reilly] interacted with during his time at Apple, regardless of what their knowledge is about the issues int his case."  We have always been clear that is not our position.  My February 12 email, which was not included in the email chain below, explained that "we expected Apple's list to include ***relevant*** Apple employees from at least the following categories . . .."  Thus, we have already told you what we expect.  Our position is that Apple—not Plaintiffs—have the requisite knowledge to identify the individuals within those categories that should be included.

Similarly, we have also never asserted that all of Plaintiffs' former employees should be listed on Apple's list of ESI custodians.  Rather, we explained that ***Apple*** should determine which of those former employees have knowledge falling within the definition of the ESI Order.  Apple has argued that some individuals lack knowledge because they worked on unrelated projects.  But, again, Apple has declined to list the people that worked on relevant projects.

Apple also asserts it is not listing certain individuals because "the collection of ESI is burdensome, time consuming, and costly."  As we have repeatedly explained, we are not necessarily asserting that all individuals on Apple's list would need to be searched.  Rather, we are asking for a list of potential ESI custodians so that the parties can have an informed discussion as to which ESI custodians would ultimately be searched.  Our position remains that this is what is required by the ESI Order, and we

**Exhibit 42**
-210-

have provided a list in accordance.  Apple could easily provide such a list, and then the parties can discuss how to keep the searching itself reasonable.

For all these reasons, the parties do not appear to be making any progress on the fundamental dispute that we identified above.  The parties continue to dispute Apple's obligations under the ESI Order: whether Apple is required to provide the universe of potential ESI custodians fitting the scope defined in the ESI Order.

Your February 17 email also addresses two other issues: (1) Plaintiffs' list of ESI custodians and (2) the destruction of Marcelo Lamego's and David Nazzaro's files.  Those issues do not appear to be relevant to or advance our fundamental dispute discussed above.  Thus, we will respond to those portions of your email separately.

As for your February 23 email, Apple's proposal does not resolve the parties' dispute.  We will also respond to that proposal separately.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Tuesday, February 23, 2021 5:52 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We have not yet received a response to the email below.  In any event, Apple is eager to move forward with the parties' ESI discussions, and proposes that in the interest of avoiding further delay, the parties move forward with discussing search terms for custodians on which they agree.  We propose that the parties have a discussion this week about the custodians to which they agree from both lists, and select a date next week for the mutual exchange of search terms for those custodians.   Please let us know if Plaintiffs agree, and if so, your availability for a discussion this week about mutually agreeable custodians.

Thanks,
Brian

**Brian Andrea**

Exhibit 42
-211-

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Wednesday, February 17, 2021 9:23 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam,

I am responding to your emails sent Friday, February 12 at 3:53pm PT and 5pm PT, and Sunday, February 14 at 3:40pm PT regarding the parties' ongoing discussions regarding ESI custodians.  As an initial matter, you misrepresent the circumstances surrounding Plaintiffs' withdrawal of their joint stipulation.  Plaintiffs' joint stipulation sought to compel Apple to exchange proposed lists of ESI custodians instead of discussing limits on custodians before exchanging proposed lists, as Apple proposed.  While Apple maintains that such a discussion would have been helpful (as evidenced at least by Plaintiffs' complaints about Apple's list of proposed custodians based on the number of custodians identified), Apple did not see the point in burdening the Court with that dispute.  Accordingly, Apple agreed to exchange lists but did not, as your email implies, agree that it would identify any specific individuals.   Your insinuation that Apple agreed to anything else is plainly incorrect.

**Plaintiffs' list of ESI custodians**:

While we appreciate your willingness to allow us to share the list with Apple's in-house counsel, we maintain that Plaintiffs' designation of their list as attorneys' eyes only is wholly improper.  There is nothing in Plaintiffs' list that reveals any confidential information.

Additionally, Plaintiffs' "areas of knowledge" for many of Plaintiffs' listed ESI custodians is unhelpful. Specifically, Plaintiffs' list includes eighteen (18) former employees of theirs that were later employed by Apple—excluding Lamego and O'Reilly—and for each of those individuals, Plaintiffs cite the "areas of knowledge" as "former employee later employed by Apple; Acquisition, use, and disclosure of Plaintiffs' confidential information."  This description provides no information as to what specific relevant knowledge those individuals have other than the fact that they were previously employed by Plaintiffs and were later employed by Apple.  Please identify what specific knowledge of the "acquisition, use, and disclosure of Plaintiffs' confidential information" each identified custodian has that is relevant to this case.   We also note that Plaintiffs did not provide an "area of knowledge" for Tony Alan, despite listing Tony Alan on Plaintiffs' initial list of ESI custodians. Please confirm that Plaintiffs are dropping Mr. Alan as a proposed ESI custodian; if Plaintiffs intend

9

Exhibit 42
-212-

to keep Mr. Alan on the list, please also identify the specific knowledge that Mr. Alan has that is relevant to this case.

**Apple's list of ESI custodians:**

Plaintiffs still have not provided a response to Apple's request for the basis for their assertion that Apple's list is deficient.  As discussed below, we have addressed the specific individuals you have indicated you believe are missing, and we have even added custodians to Apple's list in an attempt to move this process forward.   Nonetheless, Plaintiffs continue to assert that Apple is "exclud[ing] individuals Apple knew had relevant information," but also continue to refuse to identify the individuals that you contend are missing.  Apple is confused by Plaintiffs' position; Plaintiffs refused to discuss reasonable limits on ESI custodians with Apple previously, arguing that the ESI Order does not require a specific number of individuals, yet Plaintiffs now appear to be complaining about Apple's ESI list based solely on the number of ESI custodians Apple identified.

One of the reasons Apple insisted on exchanging information about the knowledge each proposed custodian has that is relevant to this case is so that the parties can assess whether each others' lists are sufficient and whether there are additional custodians with specific areas of knowledge they believe should be listed on the other party's list.  As we have stated several times, and as discussed below, Apple has identified the proposed ESI custodians that have knowledge relevant to this case.  If there are additional custodians (or custodians with specific areas of knowledge relevant to the case) that Plaintiffs believe should be identified (either now, or as discovery progresses), please let us know and we would be happy to investigate.

With respect to the categories of Apple employees you listed in your email dated February 12, Apple responds below:

> (1) individuals who worked with Lamego:  as an initial matter, Mr. Lamego was at Apple for only 6 months.  Apple has identified every inventor listed with Mr. Lamego on each of the Disputed Patents, as well as Mr. Lamego's supervisor.  It is Plaintiffs' position that Apple should identify every single person that Lamego interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

> (2) individuals who worked with O'Reilly:  Apple identified Mr. O'Reilly along with Mr. Mistri, who has worked with Mr. O'Reilly.  Is it Plaintiffs' position that Apple should identify every single person that O'Reilly has interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

> (3) individuals who were involved in the accused aspects of the Apple Watch:  Apple has identified Mr. Hotelling, Ms. Haggerty, Mr. Land, and Mr. Waydo, all of whom have knowledge of the "accused aspects of the Apple Watch."  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to, particularly in view of your prior representation that you are not requesting that Apple identify every person that has worked on the Apple Watch.

Exhibit 42
-213-

(4) <u>individuals who were involved in the accused business and marketing strategies</u>:  Apple has identified Mr. O'Reilly, Ms. Caldbeck, and Mr. Mistri, all of whom have knowledge about the "accused business and marketing strategies."

(5) <u>individuals who were involved in the patent applications at issue but not listed as an inventor</u>:  we have listed every inventor listed with Mr. Lamego on each of the Disputed Patents.  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to.

Furthermore, Plaintiffs are now alleging that Plaintiffs' former employees later employed by Apple should be on Apple's list of ESI custodians, without providing any basis for such a position.  The fact that an employee was previously employed by Plaintiffs is not a sufficient basis to allege those employees have knowledge about the issues in this case, and Plaintiffs have provided no basis for their assertion that the former employees "took Plaintiffs' trade secret to Apple."  The collection of ESI is burdensome, time consuming, and costly, and Apple is not going to agree to identify custodians simply based on an unfound conclusory assertion by Plaintiffs that certain employees "took Plaintiffs' trade secret to Apple."  If you have a specific basis for that assertion, please let us know, but based on Apple's investigation, the nineteen former employees Plaintiffs identified on their list do not have knowledge relevant to the issues in this case.

**Marcelo Lamego and David Nazzaro**:

Your email on Monday (February 15) states that Plaintiffs are "surprised that [Apple is] just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro."  We are not sure why Plaintiffs would be surprised by this—both employees left Apple in 2014, years before Plaintiffs filed their Complaint in this case.  Do Plaintiffs' contend that Apple had some obligation to retain either individuals' documents when they left Apple?  If so, what is your basis for such a contention?

I have addressed your specific questions below:

- Your request that Apple "conduct a company-wide search of 'Lamego' and 'Navarro' and preserve all resulting emails" is unreasonable and overburdensome.  As you know, Apple employs approximately 150,000 employees worldwide.  Apple does not have the ability to run a search across all employees' emails—to accomplish Plaintiffs' requested search, Apple would have to pull the emails for every single employee and run a separate search on the email for each employee separately.  Such a request would be exceedingly costly and time-consuming, and is certainly not proportional to the needs of this case.
- Apple does not have any electronic devices used by Lamego or Navarro, or any images of such devices.  Nor does Apple have files from their computers, text messages, or chat messages other than those that exist is other custodians' files or in non-custodial databases.   Apple has preserved, and is collecting and reviewing, any remaining relevant files that exist.  Indeed, Apple has already begun producing such documents and will continue to do so on a rolling basis, to the extent additional documents are identified.
- Mr. Lamego and Navarro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, in accordance with Apple's

Exhibit 42
-214-

procedures for departing employees.   Apple will produce a copy of its document retention and destruction policies and practices.

- With respect to your final question ("Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?"), Apple rejects the implication that Apple somehow acted improperly by "destroy[ing]" any information.  In any event, please let us know which individuals you are referring to.  As a general matter, we are unaware of the removal of the files of any other individuals with knowledge relevant to the issues in this case.

Thanks, and best regards,
Brian


**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, February 15, 2021 1:40 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We are surprised that you are just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro.  We request that Apple conduct a company-wide search of "Lamego" and "Navarro" and preserve all resulting emails.  We presume you have done so already, but please confirm that Apple has preserved any remaining files, electronic devices (e.g., computers, phones, storage devices) used by Lamego or Navarro, or any images of such devices.  Please also confirm that Apple will preserve emails, files, and devices for any other individuals that leave the company and are related to this dispute, including all individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area.  Please also provide a copy of Apple's document retention and destruction policies and practices, pursuant to Plaintiffs' RFP No. 107.

We would also like to understand the scope of what has been deleted and whether the deleted files can be recovered.  To that end, please answer the following questions:

1. Does Apple have any other files for Lamego or Navarro, such as files from their computers, text messages, or chat messages?

Exhibit 42
-215-

2. Does Apple have electronic devices used by Lamego or Navarro that are in Apple's custody or control, such as computers, phones, USB storage devices, or cloud storage, or any images of such devices?

3. When did Apple last have custody of Lamego's and Navarro's emails and any files or devices that were destroyed?  Why did Apple destroy them?

4. Does Apple have any form of archive or backup that might contain emails, files, or devices used by Lamego or Navarro?  What did Apple do to confirm the destruction of any of Lamego's and Navarro's emails, files, or devices that were destroyed?

5. Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, February 12, 2021 4:57 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam—

Pursuant to our meet and confer earlier this week, and our follow up correspondence, I am writing with the additional information the parties agreed to exchange.

Below is an identification of the knowledge that each of Apple's proposed ESI custodians has that is relevant to the core issues or subjects in this case:

- Mike O'Reilly:  Mr. O'Reilly is the subject of Plaintiffs' allegations related to alleged trade secret misappropriation.

- Steve Hotelling:  Mr. Hotelling was Marcelo Lamego's supervisor during the six months Mr. Lamego was employed by Apple.  Mr. Hotelling is also knowledgeable about the operation and development of the Apple Watch.  Mr. Hotelling is also a named inventor on one of the Apple Disputed Patents and the Apple Disputed Application.

- Brian Land:  Mr. Land is knowledgeable about the operation and development of the Apple Watch hardware.

Exhibit 42
-216-

- Steve Waydo:  Mr. Waydo is knowledgeable about the operation and development of the Apple Watch software.

- Wolf Oetting:  Mr. Oetting is a named inventor on two of the Apple Disputed Patents.

- Trevor Ness:  Mr. Ness is a named inventor on two of the Apple Disputed Patents.

- Chinsan Han:  Mr. Han is a named inventor on two of the Apple Disputed Patents.

- Naoto Matsuyuki:  Mr. Matsuyuki is a named inventor on two of the Apple Disputed Patents.

During the parties' meet and confer, Plaintiffs identified additional individuals that they believe should have been identified by Apple as potential ESI custodians.  Specifically, Plaintiffs identified Marcelo Lamego, David Nazzaro, and "individuals on Apple's initial disclosures."  Apple's response to Plaintiffs' request that Apple identify those individuals is set forth below.

- Myra Haggerty:  Apple identified Ms. Haggerty on its initial disclosures based on her knowledge relevant to Plaintiffs' infringement allegations.  In the interest of moving the case forward, Apple is willing to add Ms. Haggerty to its list of ESI custodians.  She has knowledge about the operation and development of the Apple Watch.

- Deirdre Caldbeck:   Apple identified Ms. Calbeck because she has knowledge relevant to "marketing relating to the Apple Watch Series 4 and Series 5." In the interest of moving the case forward, Apple is willing to add Ms. Calbeck to its list of ESI custodians at this time.  She has knowledge about the marketing of the Apple Watch.

- Mark Rollins:  Mr. Rollins was identified on Apple's initial disclosures as having knowledge of Apple's financial information related to the Apple Watch.  Mr. Rollins is a corporate witness that would testify regarding non-custodial financial information pulled from Apple's financial databases; he is not an individual that is likely to have ESI relevant to the issues in this case.

- Marcelo Lamego and David Nazzaro:  As we noted in our prior correspondence, Messrs. Lamego and Nazzaro are no longer Apple employees and have not been Apple employees since 2014.  Apple no longer has either individual's email files.  To the extent Apple has relevant documents from either individual in non-custodial databases or the files of other custodians, Apple will produce such documents (and in fact has already begun producing such documents).

Finally, Apple is adding Afshad Mistri to its list of ESI custodians.  Mr. Mistri has knowledge about marketing of the Apple Watch and Apple's interactions with hospitals.

Please note that given the position that Plaintiffs have taken with respect to broad swaths of publicly available information—including photographs of Apple's products and public patents—we are not

Exhibit 42
-217-

currently able to share critical information about Plaintiffs' allegations with Apple.  Accordingly, we are making these decisions without the benefit of information we might otherwise have if Plaintiffs were not designating public information as AEO.

Of course, Apple's investigation into the issues and allegations in this case is ongoing, and Apple reserves the right to identify additional ESI custodians as its investigation proceeds.  Additionally, Apple reserves the right to request ESI from individuals that do not appear on Plaintiffs' initial list as discovery progresses in this case.

Best regards,
Brian

**Brian Andrea**

### GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Andrea, Brian
**Sent:** Thursday, February 11, 2021 9:30 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We don't understand how you can continue to claim that Apple's list is "facially deficient" yet continue to refuse to provide the basis for that claim.  I asked you multiple times during our call for your basis, and your response was that "it's not Plaintiffs' job to tell Apple who to put on their list." Clearly, there are people that Plaintiffs believe should be on Apple's list and it is unclear why you won't tell us who those people are.

Apple performed a reasonable investigation and identified the people that are knowledgeable about the issues in this case.  If you believe there are people missing from that list, please let us know who you believe is missing.  As you know, during the meet and confer, after I asked you for this information many times, you did mention Messrs. Lamego and Nazzaro as well as "other people on Apple's initial disclosures."  I promised that we would investigate and get back to you regarding those names, and we will do so tomorrow.

I also asked you if you expected Apple to identify every person that ever worked on the Apple Watch; you confirmed that Plaintiffs do not expect Apple to identify every person that worked on

**Exhibit 42**
-218-

the Watch.

Finally, I asked you if you expected Apple to identify every Apple current or former employee that
was previously employed by Plaintiffs, regardless of what work they did for Plaintiffs or Apple, which
is how Plaintiffs apparently came up with the majority of their forty-six custodians.  While you did
not give me a straight answer one way or another, I told you that Apple does not believe that the
fact that an employee was previously employed by Plaintiffs is a sufficient basis to believe those
employees have knowledge about the issues in this case.  If you disagree, please let us know the
basis for your disagreement.

I reiterate our request for Plaintiffs' basis for their allegation that Apple's list is deficient.  If you can't
provide us with that information, it is unclear to Apple how Apple can try to resolve Plaintiffs'
concerns, since we don't know what Plaintiffs' concerns are.

Thanks,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, February 10, 2021 11:27 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We disagree with your characterization of virtually everything that you claim occurred during the
meet and confer.  Your email again shows why we have suggested that the parties should record
meet and confers.

We will reiterate our position.  During the meet and confer, Plaintiffs explained the basis for our
assertion that Apple's list is deficient.  In particular, we explained that Apple's list excluded at least
the custodians that Plaintiffs had already identified to Apple in its prior joint stipulation and in email
correspondence.  We explained that it was not reasonable for Apple to demand that we identify all
***other*** missing individuals in Apple's list.  While we know Apple's list excluded relevant custodians, we

Exhibit 42
-219-

have no way of knowing the universe of custodians that Apple has never disclosed to us. We explained that we believe the ESI Order puts that obligation on Apple—not Plaintiffs. This is because only Apple can perform that investigation. Indeed, that is why we conducted a reasonable investigation on our side and identified 46 potential ESI custodians.

We also told you at the very beginning of the call that we have no problem explaining the relevance of each custodian on our list. However, we explained that does not resolve our dispute because Apple's list is facially deficient. Even if Apple explains that its eight custodians are relevant, that does not show that *other* individuals are irrelevant. Thus, while we will provide the requested information at 5pm pacific on Friday, the exchange will not resolve this dispute.

It is inappropriate for Apple to supplement its list only when Plaintiffs can identify someone who is missing. We maintain the ESI Order requires Apple to identify the reasonable universe of potential custodians. We believe the parties are at an impasse because Apple has steadfastly refused to provide such a list. Therefore, we have a fundamental disagreement as to Apple's obligation under the ESI Order. That disagreement has not changed.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, February 10, 2021 3:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam—

I write to memorialize the parties' discussion in this afternoon's meet and confer regarding the identification of ESI custodians.

Plaintiffs took the position that Apple's list of ESI custodians was deficient, but refused to provide a basis for that position. Apple made clear that it conducted a reasonable investigation and identified those individuals knowledgeable about the core issues in this case, as required by the ESI Order, and thus it did not understand how Plaintiffs can possibly claim that Apple's list is deficient. *See* Dkt. 51. Apple noted that it seemed that Plaintiffs have individuals in mind that they believe Apple should identify, but Plaintiffs refused to identify those individuals. Instead, Plaintiffs took the position that they were not obligated to provide that information to Apple. Apple disagreed, noting that the meet and confer process is intended to facilitate an exchange of information between the parties so that

Exhibit 42
-220-

the parties can come to ground or at least narrow their disputes, and asked multiple times that Plaintiffs provide the basis for their argument that Apple's list is deficient.

Eventually, after multiple requests, Plaintiffs identified two former Apple employees, Marcelo Lamego and David Nazzaro, as well as "individuals identified in Apple's Initial Disclosures." Apple agreed to consider whether those individuals should be on its list of ESI custodians and indicated that it would get back to Plaintiffs with a response.

Plaintiffs also took the position that the parties are at an "impasse." Apple disagreed, noting that it was willing to investigate the issues Plaintiffs raised (as discussed above) and also suggesting that the parties exchange further information that would allow each party to assess the sufficiency of each others' list. Indeed, Apple noted that it has no idea what the relevance is to this case of the vast majority of the forty-six (46) individuals Plaintiffs identified. Apple suggested that each party should exchange information about the knowledge that each identified individual has, and after that exchange occurs, the parties should have another call to discuss the sufficiency of each others' lists. Plaintiffs eventually agreed to exchange this information, and asked that Apple suggest a time for the exchange. Apple suggests the parties exchange descriptions of the relevant knowledge their respective proposed ESI custodians possess at 5:00 p.m. PST on Friday, February 12, 2021. Please let us know if Plaintiffs agree.

Best,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit 42
-221-

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 42
-222-

EXHIBIT 44

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

12790 El Camino Real, Suite 100, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

March 25, 2021

**VIA EMAIL**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
BAndrea@gibsondunn.com

Re:    Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write to request a conference of counsel pursuant to Local Rule 37-1 to address Apple's failure to conduct a reasonable search for ESI responsive to Plaintiffs' Requests For Production ("RFPs").  Please promptly provide your availability to meet and confer within ten days.

Apple's communications make clear Apple will not perform a reasonable search for ESI in accordance with its discovery obligations.  Despite Apple's failure to provide a list of potential custodians with discoverable information—as required under the parties' ESI stipulation—Plaintiffs identified forty-two custodians likely to have substantial ESI responsive to Plaintiffs' document requests, including at least RFPs 5-26, 47-49, 51, 61-66, 70-85, 87-97, 100-133, 135-147, 158-161, 165-171, 173-184, 187-211, 213-221, 223-226, 228, 230, 233-235, 238-241, 244-248.  Plaintiffs also proposed search terms likely to identify responsive documents from these custodians.

Apple has repeatedly employed self-help to substantially limit its document production.  Most recently, Apple is attempting to limit discovery to just twelve custodians and is refusing to meet and confer as to custodians and search terms, as required by the parties' ESI stipulation.  We believe twelve custodians is woefully deficient, particularly for a case of this magnitude.  Apple's revenue for its watch and wearables division exceeded $13 billion in the fourth quarter of 2020 alone.  Apple has a large team of individuals who have worked on the relevant projects in this case.  Apple also deleted the files of Marcelo Lamego, which means that broader searching is necessary to try to locate relevant information in the files of other custodians that worked with Lamego.  The use of ESI custodians and search terms is intended to balance the need for ESI discovery with the burden associated with searching and reviewing extensive ESI.  It is not a vehicle for a party to avoid performing a reasonable search under the Federal Rules of Civil Procedure.  Apple's position is particularly problematic because, in response to many of Plaintiffs' requests, Apple has stated it intends to rely entirely on search terms to look for relevant ESI.

Apple also refuses to search Tim Cook's files because he is "busy" and purportedly not "directly" involved in the issues of this case.  Given that Apple can search Mr. Cook's files without involving him, we do not understand what Mr. Cook's workload has to do with this issue.  As for Mr. Cook's relevance, Plaintiffs' complaint alleges Mr. Cook personally interviewed O'Reilly and was involved in Apple's efforts to induce O'Reilly to disclose Plaintiffs' trade secrets.  Dkt. 296-1 ¶ 230.  Plaintiffs also allege

Mr. Cook has "publicly stated that he sees healthcare as central to Apple's future" (*id.*), which is relevant to damages. *Id.* Mr. Cook has made clear that healthcare is one of his central focuses at Apple. Plaintiffs are entitled to discovery regarding their allegations.

Plaintiffs request that Apple conduct a reasonable search for responsive documents, including by searching all of the custodians included in my letter of March 12, 2021, with the search terms included in that letter and my letter of March 23, 2021.  We hope the parties are able to resolve this dispute without burdening the Court.  If the parties are not able to reach an agreement, Plaintiffs intend to move for an order compelling Apple to conduct such a search.

Please let us know your availability to discuss these matters.

Best regards,

Adam B. Powell

Exhibit 44
-231-

EXHIBIT 45

| From: | Adam.Powell |
|---|---|
| To: | Andrea, Brian |
| Cc: | Masimo.Apple; *** Apple-Masimo |
| Subject: | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians |
| Date: | Sunday, March 28, 2021 4:29:23 PM |

Brian,

Thank you for your email.  Apple again accuses Plaintiffs of delaying the process, but we maintain the record demonstrates the opposite.  Plaintiffs first contacted Apple to move ESI searching forward on October 1.  Apple argued our request was "premature and inappropriate."  After Plaintiffs followed up, the parties discussed the issue on December 1 and Apple argued the parties should agree to limit searching to eight custodians.  Plaintiffs tried to resolve the disagreement with Apple for weeks before concluding it had no choice but to pursue court assistance, and served a joint stipulation on January 22.  Apple the convinced Plaintiffs to withdraw the joint stipulation by promising that Apple would comply with the ESI agreement.  Apple had to understand that the clear implication in this commitment was that it would identify more than 8 custodians.  Apple then identified just eight custodians, knowing that Plaintiffs had long objected to such a limit.  Apple eventually identified a few additional custodians, but did not provide a complete list.  Plaintiffs again attempted to resolve the dispute with Apple for weeks before serving another joint stipulation on February 25.

On March 5, the Court declined to enforce the ESI agreement as an agreement between the parties, but warned that failing to abide by the agreement to "identify in a timely manner all appropriate custodians" may "result in a future order excluding evidence or other consequences." After the Court's Order, Apple identified only one additional custodian.  On March 12, Plaintiffs identified additional Apple custodians of which they were aware.  On March 17, Apple engaged in self-help by limiting Plaintiffs' list to twelve Apple custodians.  Plaintiffs responded to Apple's full letter on March 23.  Apple again demanded the parties limit their search to just twelve custodians. Apple promised to "respond to the remainder of [Plaintiffs' March 23] letter as soon as possible," but still has not done so.

Contrary to your email, we never "refus[ed] to meet and confer on the issues raised in Apple's letter dated March 17."  Rather, we responded just four business days later by asking Apple to include **all** issues of the ESI agreement in the meet and confer—not just the portions of the agreement that Apple wanted to discuss.  We disagree with your suggestion that we did something improper by requesting a meet and confer on our letter "within ten days."  We did so to comply with the Local Rules, but asked Apple to meet with us earlier.  Apple refused.

We have also never suggested that we were refusing to search the twelve custodians that Apple identified now.  As we explained in my March 23 letter (to which Apple has not responded), Plaintiffs confirmed they have emails and files for all of the custodians that Apple asked Plaintiffs to search. We told you we began pulling relevant data and have been "evaluating how to best perform Apple's requested searches based on the software used by Masimo and Cercacor."  We did that in just four business days and have been continuing our efforts since then.  We will let you know as soon as we are able to run Apple's search terms on the twelve custodians so that we can discuss whether modifications are appropriate.

Exhibit 45
-232-

We have also not refused to meet and confer on Monday.  To the contrary, my email below asked
you to "let us know your availability early next week."  Please let us know if 2pm pacific works.  If
not, please provide your availability as we requested in my email below.


Best regards,
Adam


**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, March 26, 2021 10:07 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians


Adam,

On March 17, Apple sent Plaintiffs a Rule 37 letter with a proposal to move forward, while
maintaining both parties' ability to pursue additional custodians.  Plaintiffs did not respond to that
letter until March 23, after we followed up twice.  Plaintiffs' responsive letter did not provide a firm
position one way or another as to whether Plaintiffs would agree to Apple's proposal, and we
immediately responded and again asked if Plaintiffs are willing to agree to our proposal and
requested that if Plaintiffs would not agree, the parties meet and confer this week.  We also
indicated that if Plaintiffs would not agree to move forward, Apple was prepared to move forward
with running the non-objectionable terms Plaintiffs provided previously for the twelve ESI custodians
Apple has identified.

Rather than provide us with Plaintiffs' firm position on Apple's proposal, Plaintiffs refused to meet
and confer as Apple requested and last night sent their own Rule 37 letter requesting a meet and
confer on their own issues "within ten days."  As we have made clear, the parties need to move
forward with ESI discovery now.  Plaintiffs' refusal to meet and confer on the issues raised in Apple's
letter dated March 17 is inappropriate and concerning, and emblematic of Plaintiffs' continued
refusal to engage in ESI discovery in a reasonable manner.

Apple will respond to your letter next week and will provide its availability for a meet and confer
within ten days, as you requested.  In the meantime, please let us know your availability for a meet
and confer regarding Apple's proposal on Monday.   If you are unwilling to meet and confer on
Monday, please at least answer the following two questions:

Exhibit 45
-233-

- Notwithstanding Plaintiffs' desire that Apple search the files of nearly 50 custodians, do Plaintiffs intend to request at any point that Apple search the files of the 12 Apple custodians we have identified?

- Will Plaintiffs agree to search the 12 custodians Apple identified in its March 17 letter now, without waiting for an order from the Court?

If Plaintiffs are unwilling to meet and confer on Monday and if Plaintiffs can't provide a direct answer to the questions provided above, we will proceed under the assumption that the parties are at an impasse.

Finally, Apple also intends to proceed with searching the files of its own twelve custodians, as outlined in my email dated March 23, despite the fact that Plaintiffs have not indicated whether they will reciprocate.  If Plaintiffs would like to substitute a different custodian for one of the twelve custodians Apple has identified, please let us know immediately.

Best regards,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, March 25, 2021 9:23 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

Thank you for your email.  Plaintiffs want to move this case forward and have attempted to do so for months.  However, Apple's position with respect to the ESI agreement have hampered, and are continuing to hamper, the parties' progress.  Most recently, having failed to convince Plaintiffs or the Court to limit the number of custodians, Apple now turns to self-help by demanding the parties move forward with Apple's deficient list of only twelve custodians.

Plaintiffs request a meet and confer on <u>all</u> matters contemplated by the ESI agreement.  In particular, in the ESI agreement, the parties agreed to meet and confer on, among other things,

Exhibit 45
-234-

"custodians and search terms to be used for electronic searches of the files from those custodians" and "the type of ESI that will be collected for each custodian, such as electronic files and emails." Dkt. 51 at 1.  We believe any meet and confer should discuss all of those topics, as Apple promised— not just the topics that Apple now wants to discuss.  Thus, we object to the extent Apple intends to limit the parties' discussion to search terms on just twelve custodians.

Because Apple has made clear it will not perform Plaintiffs' requested ESI searching, and Apple refuses to meet and confer as contemplated by the parties' ESI agreement, it appears Plaintiffs have little choice but to seek relief from the Court.  Thus, please see the attached Local Rule 37-1 letter.  We request that we also discuss that letter during our meet and confer.  Please let us know your availability early next week.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Tuesday, March 23, 2021 8:15 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

Thanks for your response.  As indicated in our letter, our proposal was that the parties move forward with twelve custodians on each side at this time so that this process can get moving.  We are willing to discuss other custodians, and will respond to the remainder of your letter as soon as possible, but we do not believe it is in either side's interest for those discussions and correspondence to hold up ESI discovery completely.  Please let us know if you are willing to proceed with our proposal, and if so, what twelve custodians' files you would like Apple to search.  While Apple has identified the twelve custodians it believes are most knowledgeable about and were involved in the core issues in this case, Plaintiffs are free to substitute those with other custodians.

If Plaintiffs are unwilling to proceed with this approach, please let us know your availability this week for a meet and confer.  Additionally, please note that if Plaintiffs are unwilling to proceed, Apple is prepared to move forward with running the terms you provided previously for the twelve ESI custodians we identified.  We would proceed on the terms you provided previously that are not objectionable, and let you know what is objectionable and why.  Our hope is that Plaintiffs will reciprocate and agree to move forward with searching the files of the twelve Plaintiffs' custodians we identified in our letter last week.

Exhibit 45
-235-

Thanks, and best regards,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, March 23, 2021 6:11 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

Please see my attached letter.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, March 17, 2021 1:08 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

Please see the attached letter.

Thanks,
Brian

Exhibit 45
-236-

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Tuesday, March 16, 2021 5:12 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We are still reviewing your letter and discussing with our client.  We anticipate we will get back to you tomorrow with a proposal to move the ESI discovery process forward; we suggest the parties meet and confer after Plaintiffs have had a chance to review our proposal.

Additionally, we note that Plaintiffs' search terms on page 2 contain Apple confidential information – please confirm you will treat at least the search terms on page 2 as highly confidential – attorneys' eyes only.

Thanks,
Brian

---

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Friday, March 12, 2021 9:00 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]

Exhibit 45
-237-

Brian,

Please see the attached letter containing Plaintiffs' proposed custodians and search terms.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, March 12, 2021 5:49 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

6:00 works.  We will send ours then.

On Mar 12, 2021, at 8:44 PM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

 [External Email]
Brian,

We are ready now if you want to exchange at 6:00.  Please let us know.  Otherwise, we will stick with 6:30.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, March 12, 2021 4:22 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Sure, let's plan on 6:30.

Exhibit 45
-238-

On Mar 12, 2021, at 7:21 PM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

[External Email]
Hi Brian,

We will not be ready by 5pm.  Does 6:30 or 7pm work for you?

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, March 12, 2021 4:11 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam – we are still waiting to hear from you; can we plan to exchange at 5pm PT?

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Friday, March 12, 2021 3:51 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We anticipate we can exchange our proposed custodians and search terms at the end of the day, but we don't have a precise time yet.  We will let you know later this afternoon when we are ready for a mutual exchange.

Exhibit 45
-239-

We are also adding the following individuals to our list of Plaintiffs' potential ESI custodians: Yassir Abdul-Hafiz, Christiano Dalvi, and Sean Merritt.  These individuals have knowledge of certain trade secrets as stated in our supplemental response to Interrogatory No. 11 that we served earlier this week.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Thursday, March 11, 2021 11:14 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

Thanks for your responses and your willingness to move forward with ESI discussions.  We agree with your proposal that "each side provide a list of custodians and search terms that they request the opposing party search based on the information they currently have, including but not limited to each party's list of potential ESI custodians."  We propose that the parties provide their initial lists of custodians and search terms by COB tomorrow.  We appreciate your willingness to discuss the lists on Monday, but suggest the parties push that discussion until mid-week next week to allow each side to consider and run the proposed search terms in order to have a more productive and meaningful discussion.

Please note that Apple is adding Divya Nag to its list of ESI custodians based on its ongoing investigations into Plaintiffs' allegations.  Apple is identifying Ms. Nag because she has knowledge about Apple's interactions with hospitals.

We will separately respond to your other email, including your questions regarding the files of Messrs. Lamego and Nazzaro.  In the meantime, please provide responses to the questions we asked regarding each individual Plaintiffs have identified as an ESI custodian that is no longer employed by Plaintiffs, including but not limited to Marcelo Lamego and Michael O'Reilly.  Specifically:

- Did Plaintiffs maintain all of each individuals' documents and emails after he/she left Masimo or Cercacor?

- If Plaintiffs deleted any documents/emails from any individual, please provide the date on or about which those documents were deleted, what documents were deleted, and whether the documents were deleted in accordance with Plaintiffs' document retention and destruction

**Exhibit 45**
**-240-**

policies or practices.

While we appreciate your willingness to provide Plaintiffs' document retention and destruction policies and practices, we also require the above information in order to assess whether to request that Plaintiffs search the ESI of those employees.  If, for example, Plaintiffs did not maintain all or some of their files, and thus do not have all or part of their ESI, that may inform whether or not Apple identifies those individuals as custodians.

Thanks,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, March 9, 2021 8:35 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We are happy to discuss ESI custodians and search terms.  However, your assertion that we agree, or do not dispute, certain custodians is not accurate.  To the extent Apple intends to limit ESI searching to eleven individuals, we cannot agree that the individuals Apple identified so far would be prioritized.  We may later conclude that other custodians should have been prioritized had Apple provided a full disclosure to us.  We have also never suggested that all custodians on the lists that the parties exchange should be searched.  We have explained our view that each party was required to provide a list of all potential custodians so that the opposing party has sufficient information to discuss with the other party the custodians that should be searched.  We maintain that Apple has not met its obligation to provide such a list.  We reserve all of our rights, including the ability to seek an "order excluding evidence or other consequence" as referenced in Judge Early's Order (Dkt. 318).

The ESI stipulation states that, after each party provides a complete list of potential custodians, the "parties shall meet and confer in an attempt to reach agreement on custodians and search terms to be used for electronic searches of the files from those custodians."  Dkt. 51 ¶ 1.  The ESI stipulation further states that the "parties agree to work in good faith to reach an agreement, but recognize they may not reach an agreement."  *Id.*  Despite our position that Apple failed to provide a complete

Exhibit 45
-241-

list of potential custodians, we will proceed with the next step in the process.  We suggest each side provide a list of custodians and search terms that they request the opposing party search based on the information they currently have, including but not limited to each party's list of potential ESI custodians.  This will allow the parties to then have a discussion regarding appropriate custodians and search terms.  We suggest exchanging lists this week and meeting and conferring on Monday.  Please let us know if Apple agrees.


Best regards,
Adam


**Adam Powell**
Partner
**858-707-4245** Direct
# Knobbe Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, March 5, 2021 2:17 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians


Adam,

Thanks for your response.  As we have indicated, we would like to move forward with ESI discovery and are willing to have any discussions that will help move the ball forward.  Accordingly, please let us know your availability next Tuesday and Wednesday to have "initial discussions of search terms . . . to determine if the parties can have any meaningful discussions."  While we believe the parties can and should move forward with exchanging search terms for the non-disputed custodians, particularly in view of the Court's Order earlier today, if you would prefer to begin with the "initial discussions" you suggest, we are willing to do so.

Before we have a call, however, we request that you clarify your statement that "the parties do not currently agree on any custodians."  This statement is confusing because Plaintiffs have never indicated that they oppose collection of ESI from the eleven ESI custodians Apple has identified, and the only custodians on Plaintiffs' list that Apple has disputed are the "former employees" (Apple is still waiting for Plaintiffs' response to our email earlier this week regarding that dispute).  Accordingly, it is Apple's understanding that the parties do not dispute, and thus "agree" on, the custodians Apple identified and the custodians Plaintiffs identified other than the former employees, and we don't see any reason that the parties can't move forward with exchanging search terms for those custodians.  If you disagree, please let us know the basis for that disagreement so that we can be prepared to discuss on our call.

To be clear, we understand that Plaintiffs seek "more" custodians from Apple, but we don't see how that has any bearing on the custodians the parties have already identified (other than the former

Exhibit 45
-242-

employee dispute, as discussed above).  Indeed, now that the Court has denied Plaintiffs' joint stipulation, do Plaintiffs intend to request that Apple search the files of all eleven custodians Apple has already identified, or do they intend to dispute the relevance of those custodians and/or select only a sub-set of those custodians for ESI discovery?  Similarly, do Plaintiffs intend to oppose performing searches of the custodians they have identified as having knowledge relevant to the issues in this case?

Moreover, Apple reiterates the point that it has been making since the parties first began discussing ESI custodians:  after the parties exchange ESI for the custodians already identified, if there is a basis to request discovery from additional custodians, each party may make such a request.  Such an "iterative" process, as the Court's Order refers to it, is quite common for ESI exchanges.  *See, e.g.,* Dkt. 315 at 30-31 (Apple's portion of the joint stipulation).

Thanks,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, March 3, 2021 11:35 AM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We are happy to discuss search terms in general, but cannot discuss search terms for custodians "on which [the parties] agree" because the parties do not currently agree on any custodians.  As we explained in our portion of the joint stipulation, we maintain that Apple's list of potential custodians is incomplete and does not comply with the ESI Order.  Until Apple provides a full and complete list of potential custodians, Plaintiffs cannot make an informed decision as to which custodians should be searched.

As for your request to discuss search terms, we can start that discussion, but we do not believe it can be very meaningful given Apple's failure to provide a list as required by the ESI Order.  For example, whether a particular ESI search term is too broad may depend on the number and identity

Exhibit 45
-243-

of custodians.  That is why the ESI order requires that Apple first provide a complete list of custodians.  Thus, we repeat our request that Apple provide such a list.  That being said, we will engage in initial discussions of search terms with you to determine if the parties can have any meaningful discussions.  Perhaps we could begin with search terms that would be applicable to all custodians on each side, or search terms that would be applicable to certain groups (e.g., disputed inventors).  Please note that we will object to any attempt by Apple to use our willingness to engage in these discussions as a basis to argue that Apple should not have to comply with the ESI order and provide a complete list and/or that, because of the parties' discussions, Apple would be prejudiced by later identifying additional individuals whose documents may be searched.

Thanks,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Tuesday, February 23, 2021 5:52 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We have not yet received a response to the email below.  In any event, Apple is eager to move forward with the parties' ESI discussions, and proposes that in the interest of avoiding further delay, the parties move forward with discussing search terms for custodians on which they agree.  We propose that the parties have a discussion this week about the custodians to which they agree from both lists, and select a date next week for the mutual exchange of search terms for those custodians.   Please let us know if Plaintiffs agree, and if so, your availability for a discussion this week about mutually agreeable custodians.

Thanks,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

Exhibit 45
-244-

**From:** Andrea, Brian
**Sent:** Wednesday, February 17, 2021 9:23 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam,

I am responding to your emails sent Friday, February 12 at 3:53pm PT and 5pm PT, and Sunday, February 14 at 3:40pm PT regarding the parties' ongoing discussions regarding ESI custodians.  As an initial matter, you misrepresent the circumstances surrounding Plaintiffs' withdrawal of their joint stipulation.  Plaintiffs' joint stipulation sought to compel Apple to exchange proposed lists of ESI custodians instead of discussing limits on custodians before exchanging proposed lists, as Apple proposed.  While Apple maintains that such a discussion would have been helpful (as evidenced at least by Plaintiffs' complaints about Apple's list of proposed custodians based on the number of custodians identified), Apple did not see the point in burdening the Court with that dispute.  Accordingly, Apple agreed to exchange lists but did not, as your email implies, agree that it would identify any specific individuals.   Your insinuation that Apple agreed to anything else is plainly incorrect.

**Plaintiffs' list of ESI custodians**:

While we appreciate your willingness to allow us to share the list with Apple's in-house counsel, we maintain that Plaintiffs' designation of their list as attorneys' eyes only is wholly improper.  There is nothing in Plaintiffs' list that reveals any confidential information.

Additionally, Plaintiffs' "areas of knowledge" for many of Plaintiffs' listed ESI custodians is unhelpful.  Specifically, Plaintiffs' list includes eighteen (18) former employees of theirs that were later employed by Apple—excluding Lamego and O'Reilly—and for each of those individuals, Plaintiffs cite the "areas of knowledge" as "former employee later employed by Apple; Acquisition, use, and disclosure of Plaintiffs' confidential information."  This description provides no information as to what specific relevant knowledge those individuals have other than the fact that they were previously employed by Plaintiffs and were later employed by Apple.  Please identify what specific knowledge of the "acquisition, use, and disclosure of Plaintiffs' confidential information" each identified custodian has that is relevant to this case.   We also note that Plaintiffs did not provide an "area of knowledge" for Tony Alan, despite listing Tony Alan on Plaintiffs' initial list of ESI custodians.  Please confirm that Plaintiffs are dropping Mr. Alan as a proposed ESI custodian; if Plaintiffs intend to keep Mr. Alan on the list, please also identify the specific knowledge that Mr. Alan has that is relevant to this case.

**Apple's list of ESI custodians**:

Plaintiffs still have not provided a response to Apple's request for the basis for their assertion that

Exhibit 45
-245-

Apple's list is deficient.  As discussed below, we have addressed the specific individuals you have indicated you believe are missing, and we have even added custodians to Apple's list in an attempt to move this process forward.   Nonetheless, Plaintiffs continue to assert that Apple is "exclud[ing] individuals Apple knew had relevant information," but also continue to refuse to identify the individuals that you contend are missing.  Apple is confused by Plaintiffs' position; Plaintiffs refused to discuss reasonable limits on ESI custodians with Apple previously, arguing that the ESI Order does not require a specific number of individuals, yet Plaintiffs now appear to be complaining about Apple's ESI list based solely on the number of ESI custodians Apple identified.

One of the reasons Apple insisted on exchanging information about the knowledge each proposed custodian has that is relevant to this case is so that the parties can assess whether each others' lists are sufficient and whether there are additional custodians with specific areas of knowledge they believe should be listed on the other party's list.  As we have stated several times, and as discussed below, Apple has identified the proposed ESI custodians that have knowledge relevant to this case. If there are additional custodians (or custodians with specific areas of knowledge relevant to the case) that Plaintiffs believe should be identified (either now, or as discovery progresses), please let us know and we would be happy to investigate.

With respect to the categories of Apple employees you listed in your email dated February 12, Apple responds below:

(1) individuals who worked with Lamego:  as an initial matter, Mr. Lamego was at Apple for only 6 months.  Apple has identified every inventor listed with Mr. Lamego on each of the Disputed Patents, as well as Mr. Lamego's supervisor.  It is Plaintiffs' position that Apple should identify every single person that Lamego interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

(2) individuals who worked with O'Reilly:  Apple identified Mr. O'Reilly along with Mr. Mistri, who has worked with Mr. O'Reilly.  Is it Plaintiffs' position that Apple should identify every single person that O'Reilly has interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

(3) individuals who were involved in the accused aspects of the Apple Watch:  Apple has identified Mr. Hotelling, Ms. Haggerty, Mr. Land, and Mr. Waydo, all of whom have knowledge of the "accused aspects of the Apple Watch."  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to, particularly in view of your prior representation that you are not requesting that Apple identify every person that has worked on the Apple Watch.

(4) individuals who were involved in the accused business and marketing strategies:  Apple has identified Mr. O'Reilly, Ms. Caldbeck, and Mr. Mistri, all of whom have knowledge about the "accused business and marketing strategies."

(5) individuals who were involved in the patent applications at issue but not listed as an inventor:  we have listed every inventor listed with Mr. Lamego on each of the Disputed

Exhibit 45
-246-

Patents.  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to.

Furthermore, Plaintiffs are now alleging that Plaintiffs' former employees later employed by Apple should be on Apple's list of ESI custodians, without providing any basis for such a position.  The fact that an employee was previously employed by Plaintiffs is not a sufficient basis to allege those employees have knowledge about the issues in this case, and Plaintiffs have provided no basis for their assertion that the former employees "took Plaintiffs' trade secret to Apple."  The collection of ESI is burdensome, time consuming, and costly, and Apple is not going to agree to identify custodians simply based on an unfound conclusory assertion by Plaintiffs that certain employees "took Plaintiffs' trade secret to Apple."  If you have a specific basis for that assertion, please let us know, but based on Apple's investigation, the nineteen former employees Plaintiffs identified on their list do not have knowledge relevant to the issues in this case.

**Marcelo Lamego and David Nazzaro**:

Your email on Monday (February 15) states that Plaintiffs are "surprised that [Apple is] just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro."  We are not sure why Plaintiffs would be surprised by this—both employees left Apple in 2014, years before Plaintiffs filed their Complaint in this case.  Do Plaintiffs' contend that Apple had some obligation to retain either individuals' documents when they left Apple?  If so, what is your basis for such a contention?

I have addressed your specific questions below:

- Your request that Apple "conduct a company-wide search of 'Lamego' and 'Navarro' and preserve all resulting emails" is unreasonable and overburdensome.  As you know, Apple employs approximately 150,000 employees worldwide.  Apple does not have the ability to run a search across all employees' emails—to accomplish Plaintiffs' requested search, Apple would have to pull the emails for every single employee and run a separate search on the email for each employee separately.  Such a request would be exceedingly costly and time-consuming, and is certainly not proportional to the needs of this case.
- Apple does not have any electronic devices used by Lamego or Navarro, or any images of such devices.  Nor does Apple have files from their computers, text messages, or chat messages other than those that exist is other custodians' files or in non-custodial databases.   Apple has preserved, and is collecting and reviewing, any remaining relevant files that exist.  Indeed, Apple has already begun producing such documents and will continue to do so on a rolling basis, to the extent additional documents are identified.
- Mr. Lamego and Navarro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, in accordance with Apple's procedures for departing employees.   Apple will produce a copy of its document retention and destruction policies and practices.
- With respect to your final question ("Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?"), Apple rejects the implication that Apple somehow acted improperly by "destroy[ing]" any information.  In any event, please let us know which individuals you are referring to.  As a

Exhibit 45
-247-

general matter, we are unaware of the removal of the files of any other individuals with knowledge relevant to the issues in this case.

Thanks, and best regards,

Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, February 15, 2021 1:40 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We are surprised that you are just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro.  We request that Apple conduct a company-wide search of "Lamego" and "Navarro" and preserve all resulting emails.  We presume you have done so already, but please confirm that Apple has preserved any remaining files, electronic devices (e.g., computers, phones, storage devices) used by Lamego or Navarro, or any images of such devices.  Please also confirm that Apple will preserve emails, files, and devices for any other individuals that leave the company and are related to this dispute, including all individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area.  Please also provide a copy of Apple's document retention and destruction policies and practices, pursuant to Plaintiffs' RFP No. 107.

We would also like to understand the scope of what has been deleted and whether the deleted files can be recovered.  To that end, please answer the following questions:

1. Does Apple have any other files for Lamego or Navarro, such as files from their computers, text messages, or chat messages?
2. Does Apple have electronic devices used by Lamego or Navarro that are in Apple's custody or control, such as computers, phones, USB storage devices, or cloud storage, or any images of such devices?
3. When did Apple last have custody of Lamego's and Navarro's emails and any files or devices that were destroyed?  Why did Apple destroy them?
4. Does Apple have any form of archive or backup that might contain emails, files, or devices

Exhibit 45
-248-

used by Lamego or Navarro?  What did Apple do to confirm the destruction of any of
Lamego's and Navarro's emails, files, or devices that were destroyed?

5. Did Apple destroy emails, files, or devices of any other individual who worked for or with
Plaintiffs and later worked for or with Apple in a relevant area?

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, February 12, 2021 4:57 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam—

Pursuant to our meet and confer earlier this week, and our follow up correspondence, I am writing
with the additional information the parties agreed to exchange.

Below is an identification of the knowledge that each of Apple's proposed ESI custodians has that is
relevant to the core issues or subjects in this case:

- Mike O'Reilly:  Mr. O'Reilly is the subject of Plaintiffs' allegations related to alleged
trade secret misappropriation.

- Steve Hotelling:  Mr. Hotelling was Marcelo Lamego's supervisor during the six
months Mr. Lamego was employed by Apple.  Mr. Hotelling is also knowledgeable
about the operation and development of the Apple Watch.  Mr. Hotelling is also a
named inventor on one of the Apple Disputed Patents and the Apple Disputed
Application.

- Brian Land:  Mr. Land is knowledgeable about the operation and development of
the Apple Watch hardware.

- Steve Waydo:  Mr. Waydo is knowledgeable about the operation and development
of the Apple Watch software.

- Wolf Oetting:  Mr. Oetting is a named inventor on two of the Apple Disputed
Patents.

- Trevor Ness:  Mr. Ness is a named inventor on two of the Apple Disputed Patents.

**Exhibit 45**
-249-

- <u>Chinsan Han</u>:  Mr. Han is a named inventor on two of the Apple Disputed Patents.

- <u>Naoto Matsuyuki</u>:  Mr. Matsuyuki is a named inventor on two of the Apple Disputed Patents.

During the parties' meet and confer, Plaintiffs identified additional individuals that they believe should have been identified by Apple as potential ESI custodians.  Specifically, Plaintiffs identified Marcelo Lamego, David Nazzaro, and "individuals on Apple's initial disclosures."  Apple's response to Plaintiffs' request that Apple identify those individuals is set forth below.

- <u>Myra Haggerty</u>:  Apple identified Ms. Haggerty on its initial disclosures based on her knowledge relevant to Plaintiffs' infringement allegations.  In the interest of moving the case forward, Apple is willing to add Ms. Haggerty to its list of ESI custodians.  She has knowledge about the operation and development of the Apple Watch.

- <u>Deirdre Caldbeck</u>:   Apple identified Ms. Calbeck because she has knowledge relevant to "marketing relating to the Apple Watch Series 4 and Series 5." In the interest of moving the case forward, Apple is willing to add Ms. Calbeck to its list of ESI custodians at this time.  She has knowledge about the marketing of the Apple Watch.

- <u>Mark Rollins</u>:  Mr. Rollins was identified on Apple's initial disclosures as having knowledge of Apple's financial information related to the Apple Watch.  Mr. Rollins is a corporate witness that would testify regarding non-custodial financial information pulled from Apple's financial databases; he is not an individual that is likely to have ESI relevant to the issues in this case.

- <u>Marcelo Lamego</u> and <u>David Nazzaro</u>:  As we noted in our prior correspondence, Messrs. Lamego and Nazzaro are no longer Apple employees and have not been Apple employees since 2014.  Apple no longer has either individual's email files.  To the extent Apple has relevant documents from either individual in non-custodial databases or the files of other custodians, Apple will produce such documents (and in fact has already begun producing such documents).

Finally, Apple is adding <u>Afshad Mistri</u> to its list of ESI custodians.  Mr. Mistri has knowledge about marketing of the Apple Watch and Apple's interactions with hospitals.

Please note that given the position that Plaintiffs have taken with respect to broad swaths of publicly available information—including photographs of Apple's products and public patents—we are not currently able to share critical information about Plaintiffs' allegations with Apple.  Accordingly, we are making these decisions without the benefit of information we might otherwise have if Plaintiffs were not designating public information as AEO.

Of course, Apple's investigation into the issues and allegations in this case is ongoing, and Apple reserves the right to identify additional ESI custodians as its investigation proceeds.  Additionally, Apple reserves the right to request ESI from individuals that do not appear on Plaintiffs' initial list as

Exhibit 45
-250-

discovery progresses in this case.

Best regards,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Thursday, February 11, 2021 9:30 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We don't understand how you can continue to claim that Apple's list is "facially deficient" yet continue to refuse to provide the basis for that claim.  I asked you multiple times during our call for your basis, and your response was that "it's not Plaintiffs' job to tell Apple who to put on their list."  Clearly, there are people that Plaintiffs believe should be on Apple's list and it is unclear why you won't tell us who those people are.

Apple performed a reasonable investigation and identified the people that are knowledgeable about the issues in this case.  If you believe there are people missing from that list, please let us know who you believe is missing.  As you know, during the meet and confer, after I asked you for this information many times, you did mention Messrs. Lamego and Nazzaro as well as "other people on Apple's initial disclosures."  I promised that we would investigate and get back to you regarding those names, and we will do so tomorrow.

I also asked you if you expected Apple to identify every person that ever worked on the Apple Watch; you confirmed that Plaintiffs do not expect Apple to identify every person that worked on the Watch.

Finally, I asked you if you expected Apple to identify every Apple current or former employee that was previously employed by Plaintiffs, regardless of what work they did for Plaintiffs or Apple, which is how Plaintiffs apparently came up with the majority of their forty-six custodians.  While you did not give me a straight answer one way or another, I told you that Apple does not believe that the fact that an employee was previously employed by Plaintiffs is a sufficient basis to believe those

**Exhibit 45
-251-**

employees have knowledge about the issues in this case.  If you disagree, please let us know the
basis for your disagreement.

I reiterate our request for Plaintiffs' basis for their allegation that Apple's list is deficient.  If you can't
provide us with that information, it is unclear to Apple how Apple can try to resolve Plaintiffs'
concerns, since we don't know what Plaintiffs' concerns are.

Thanks,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, February 10, 2021 11:27 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We disagree with your characterization of virtually everything that you claim occurred during the
meet and confer.  Your email again shows why we have suggested that the parties should record
meet and confers.

We will reiterate our position.  During the meet and confer, Plaintiffs explained the basis for our
assertion that Apple's list is deficient.  In particular, we explained that Apple's list excluded at least
the custodians that Plaintiffs had already identified to Apple in its prior joint stipulation and in email
correspondence.  We explained that it was not reasonable for Apple to demand that we identify all
**other** missing individuals in Apple's list.  While we know Apple's list excluded relevant custodians, we
have no way of knowing the universe of custodians that Apple has never disclosed to us.  We
explained that we believe the ESI Order puts that obligation on Apple—not Plaintiffs.  This is because
only Apple can perform that investigation.  Indeed, that is why we conducted a reasonable
investigation on our side and identified 46 potential ESI custodians.

We also told you at the very beginning of the call that we have no problem explaining the relevance
of each custodian on our list.  However, we explained that does not resolve our dispute because

**Exhibit 45
-252-**

Apple's list is facially deficient.  Even if Apple explains that its eight custodians are relevant, that does not show that **other** individuals are irrelevant.  Thus, while we will provide the requested information at 5pm pacific on Friday, the exchange will not resolve this dispute.

It is inappropriate for Apple to supplement its list only when Plaintiffs can identify someone who is missing.  We maintain the ESI Order requires Apple to identify the reasonable universe of potential custodians.  We believe the parties are at an impasse because Apple has steadfastly refused to provide such a list.  Therefore, we have a fundamental disagreement as to Apple's obligation under the ESI Order.  That disagreement has not changed.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, February 10, 2021 3:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam—

I write to memorialize the parties' discussion in this afternoon's meet and confer regarding the identification of ESI custodians.

Plaintiffs took the position that Apple's list of ESI custodians was deficient, but refused to provide a basis for that position.  Apple made clear that it conducted a reasonable investigation and identified those individuals knowledgeable about the core issues in this case, as required by the ESI Order, and thus it did not understand how Plaintiffs can possibly claim that Apple's list is deficient.  *See* Dkt. 51.  Apple noted that it seemed that Plaintiffs have individuals in mind that they believe Apple should identify,  but Plaintiffs refused to identify those individuals.  Instead, Plaintiffs took the position that they were not obligated to provide that information to Apple.  Apple disagreed, noting that the meet and confer process is intended to facilitate an exchange of information between the parties so that the parties can come to ground or at least narrow their disputes, and asked multiple times that Plaintiffs provide the basis for their argument that Apple's list is deficient.

Eventually, after multiple requests, Plaintiffs identified two former Apple employees, Marcelo Lamego and David Nazzaro, as well as "individuals identified in Apple's Initial Disclosures."  Apple agreed to consider whether those individuals should be on its list of ESI custodians and indicated that it would get back to Plaintiffs with a response.

Exhibit 45
-253-

Plaintiffs also took the position that the parties are at an "impasse." Apple disagreed, noting that it was willing to investigate the issues Plaintiffs raised (as discussed above) and also suggesting that the parties exchange further information that would allow each party to assess the sufficiency of each others' list.  Indeed, Apple noted that it has no idea what the relevance is to this case of the vast majority of the forty-six (46) individuals Plaintiffs identified.  Apple suggested that each party should exchange information about the knowledge that each identified individual has, and after that exchange occurs, the parties should have another call to discuss the sufficiency of each others' lists. Plaintiffs eventually agreed to exchange this information, and asked that Apple suggest a time for the exchange.  Apple suggests the parties exchange descriptions of the relevant knowledge their respective proposed ESI custodians possess at 5:00 p.m. PST on Friday, February 12, 2021.  Please let us know if Plaintiffs agree.

Best,
Brian


**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Exhibit 45
-254-

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and

Exhibit 45
-255-

privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is

Exhibit 45
-256-

strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

Exhibit 45
-257-

EXHIBIT 46

| From: | Adam.Powell |
|---|---|
| To: | Kaounis, Angelique; Masimo.Apple |
| Cc: | *** Apple-Masimo |
| Subject: | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians |
| Date: | Thursday, April 1, 2021 8:32:00 PM |

Angelique,

We were very surprised to receive your joint stipulation late last night.  Your last email on March 30 did not call for a response or assert the parties had reached an impasse.  Instead, you specifically stated that you would be responding to us on all outstanding issues in a "forthcoming written response" that we received this afternoon after Apple served its joint stipulation.  We reasonably expected that Apple would be providing its response and the parties would engage in further discussions.

Indeed, even after receiving your joint stipulation, we still do not understand what Apple is requesting from us or the Court.  Your email stated Apple would ask the Court to "compel Plaintiffs to proceed with ESI discovery on twelve custodians per side" if the parties did not reach an agreement, but did not explain what specific relief you would be requesting.  Your motion likewise does not explain the specific relief you are seeking and did not include a proposed order.  As we explained, Plaintiffs are already searching the custodians that Apple identified and Apple is free to search its own custodians. Please explain the relief sought and provide a proposed order for our review by tomorrow.

We also request a courtesy one week extension to serve our response.  Please let us know if Apple agrees.

Best regards,
Adam

**Adam Powell**
Partner

**858-707-4245 Direct**

**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Wednesday, March 31, 2021 8:57 PM
**To:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Counsel:

Attached please find Apple's portion of the Joint Stipulation regarding Apple's Motion to Compel Plaintiffs to Immediately Proceed With ESI Discovery.

Exhibit 46
-258-

The accompanying attorney declaration and the exhibits (both public and under seal versions of the exhibits) will follow shortly via ShareFile because of their size.  Please let us know if you have any issues retrieving them.

When you send back Plaintiffs' portion, please include proposed redactions in yellow highlighting for Plaintiffs' portion, as well as any proposed redactions for Apple's portion.

We look forward to receiving Plaintiffs' portion of the Joint Stipulation in seven days.

Thanks,
Angelique

**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Kaounis, Angelique
**Sent:** Tuesday, March 30, 2021 7:19 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We write briefly to correct the misstatements in your email.  We have been clear about our proposed compromise and about the relief we intend to seek from the Court if Plaintiffs remain unwilling to proceed with ESI discovery now.  Nonetheless, to reiterate, if we are unable to reach a resolution, Apple will ask the Court to compel Plaintiffs to proceed with ESI discovery on twelve custodians per side, without prejudice to either side's ability to pursue ESI from additional custodians in the future.

Apple is preparing a written response to each of the issues raised in your March 23 and March 25 letters.  The March 29 call was convened due to the urgent need to move forward with a proportional, workable, mutually agreeable set of initial custodians.  In the interest of efficiency, we asked you to show patience for a couple days while we work with our client to finalize responses.  We did not refuse to discuss anything.  Rather, we tried to keep the focus on the most important and time-sensitive issue:  agreeing on a way to move forward with ESI discovery now.  But rather than provide a straightforward explanation of Plaintiffs' position on that issue, you instead insisted that the parties discuss other issues, which we did discuss.  In particular, 1) we invited you to share case law supporting your request for custodial files from

Exhibit 46
-259-

Tim Cook, and 2) we told you that although we were not able to replicate the legibility you
claim to have with APL-MAS_0075595, that we were trying to solve the issue for you.  Please
refer to our forthcoming written responses to the other issues set forth in your March 25 letter
for Apple's responses to Plaintiffs' other issues.

Thanks,
Angelique

**Angelique Kaounis**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, March 30, 2021 8:51 AM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple
<Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Angelique and Brian,

I write to memorialize our March 29 meet and confer.  We disagree with your email, which once
again does not accurately reflect our meeting.  Our meet and confer was unhelpful because Apple
refused to fully discuss the parties' disputes, including the issues raised in Apple's own March 17
letter and Plaintiffs' responsive March 23 letter.  For example, Apple refused to discuss: (1) whether
Plaintiffs' former employees are appropriate custodians, (2) whether Tim Cook is an appropriate
custodian, (3) Lamego/Nazarro's files, and (4) whether Apple would produce a new version of APL-
MAS_0075595.  Apple argued it need not discuss these issues because Plaintiffs' March 25 Local
Rule 37 letter mentioned them and Apple intended to wait ten days to respond to that letter.  We
explained that the issues we were trying to discuss were covered by Apple's own March 17 letter
and our March 23 response, not just our separate March 25 Local Rule 37 letter.

Rather than discuss all aspects of Apple's own letter, Apple demanded that Plaintiffs preemptively
agree to Apple's demand to search just twelve Apple custodians.  Your email below argues that,
because both parties will eventually search at least 12 custodians, Plaintiffs should select 12 Apple
custodians now.  But Apple is refusing to provide the information that would be necessary for
Plaintiffs to make an informed decision even as to 12 custodians, including hit counts for all
custodians and search terms.  Such information is important to target and prioritize ESI discovery.
For example, hit counts would help Plaintiffs better understand the relevance of various Apple
custodians and prioritize its requests for ESI searching.  We also do not know whether Apple will

Exhibit 46
-260-

agree to search Tim Cook's files or whether it will agree to search any of Plaintiffs' former employees other than O'Reilly.  Thus, these issues are interrelated and cannot be isolated.  Indeed, Apple promised in the ESI stipulation that it would discuss custodians <u>and</u> search terms in an attempt to reach an <u>overall agreement</u>.  Apple's refusal to do so is unnecessarily delaying this process.

Apple's claim that it urgently seeks to "make progress" is belied by the many months in which Apple refused to engage in any ESI discussions.   Apple's demand that Plaintiffs select 12 custodians in the dark makes no sense in view of Apple's commitment to provide the other information and engage in an overall discussion in the next few days.  Likewise, providing our position in writing in less than 24 hours can hardly be considered "delay" or refusing to answer Apple's question by a "date certain."  We simply need reasonable information, consistent with what we have been willing to provide Apple, given Apple's refusal to search more than 12 custodians.

During the call, you stated that Apple will immediately proceed with twelve custodians regardless of whether Plaintiffs agree.  While Plaintiffs maintain that Apple should provide hit counts for <u>all</u> of Plaintiffs' custodians, nothing is preventing Apple from running searches on whatever custodians it likes.  During the meet and confer, Apple threatened to move the Court, but did not indicate what relief Apple seeks.  Even though Local Rule 37-1 required Apple's letter to clearly identify "the terms of the discovery order to be sought," Apple's letter did not do so.  Moreover, plaintiffs have not placed an arbitrary limit on searching, and simply look to find an equitable approach.  Plaintiffs also have not in any way refused to begin that process, which they have already started.  As discussed above, nothing is preventing Apple from performing searches on its own custodians.  Please clarify what relief Apple plans to seek from the Court if the parties do not reach an agreement.

During the meet and confer, the parties also discussed (1) the type of documents covered by ESI searching and (2) Plaintiffs search of the twelve custodians that Apple identified.  On the first issue, Apple stated that it planned to search all files, including messaging and chat logs, but that it envisioned the negotiated ESI search terms would apply only to email searching.  We responded that we would consider Apple's position and get back to you.  On the second issue, Plaintiffs again explained they never refused to search the twelve custodians that Apple identified.  To the contrary, we explained that we had already begun pulling files and would provide hit counts as soon as possible.  Apple demanded Plaintiffs provide a "date certain" as to when we would provide hit counts, while Apple could not provide a date certain itself when we asked the same question.  As we explained, Plaintiffs are working diligently to pull the data, process the data, and provide hit counts as soon as possible.  We likewise request hit counts from Apple.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

***

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>

Exhibit 46
-261-

**Sent:** Monday, March 29, 2021 8:02 PM
**To:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We write to memorialize today's meet and confer call.  We are disappointed by Plaintiffs' refusal to agree to Apple moving forward with 12 custodians on each side, particularly in view of the fact that Plaintiffs have indicated they do intend to request that Apple search the ESI of the 12 custodians Apple has identified.  We are endeavoring in good faith to make progress, with the understanding that all parties reserve rights to seek additional custodians later, depending on the discovery that unfolds.   It is likewise disheartening that Plaintiffs cannot commit to providing a final answer to Apple's proposal to begin with 12 custodians by a date certain.  Your suggestion that we asked you for an "on the spot" answer is detached from the documented reality of the parties' discussions.  We presented this proposal to Plaintiffs on March 17, followed up on March 22 asking for a response to allow us to "move forward with ESI discovery immediately," reiterated this request on March 23, and then once again posed the same question on March 26.  In no way were you put on the spot today.  Accordingly, we renew our request that you let us know today—or tomorrow at the latest—whether Plaintiffs will agree to commence ESI discovery with the list of 12 custodians presented in Apple's March 17 letter.

We will respond in writing to the issues raised in your March 23 and March 25 letters later this week.  In the meantime, we need to move forward with an initial set of custodians.  Discovery is an iterative, collaborative process.  The fact that other issues remain to be decided does not justify Plaintiffs' delay.

Thanks,
Angelique


**Angelique Kaounis**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Exhibit 46
-262-

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 46
-263-

EXHIBIT 47

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | Andrea, Brian |
| **Cc:** | Kaounis, Angelique; *** Apple-Masimo; Schuemann, Susanna G.; Masimo.Apple |
| **Subject:** | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians |
| **Date:** | Wednesday, April 7, 2021 7:10:26 PM |
| **Attachments:** | 2021-04-07 Letter to Andrea re ESI.pdf |
| | Plaintiffs" Proposed Search Terms and Custodians.docx |

Brian,

Please see my attached letter and the attached word document.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, April 2, 2021 6:14 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We write to memorialize our April 2 meet and confer teleconference about the issues raised in Plaintiffs' March 23 and March 25 letters and in Apple's April 1 response.

As discussed, we look forward to receiving the following from you:

1. The legal basis for your proposal of forty-nine custodians at the outset of discovery.  You referred to caselaw cited in your prior joint stipulation, but those cases are distinguishable, as we explained in our responsive briefing.  If you have applicable legal support, we are glad to consider it.

2. The specific factual basis for believing that each of the forty-nine proposed custodians is proportional to the needs of the case, and that each one is "knowledgeable about" and "involved in the core issues or subjects in this case" as required by the parties' ESI agreement (Dkt. 51).  As we reiterated on the call, we are willing to discuss including any custodian likely to possess nonduplicative information that is relevant to any party's claim or defense and proportional to the needs of the case.  But as we have made clear in our prior correspondence, we cannot accept Plaintiffs' current proposal, which includes individuals who —as far as we can tell—were never employed by Apple and/or had no involvement in the

Exhibit 47
-264-

topics at issue.

3. The legal and factual basis for your request for documents from Tim Cook.  We have asked you repeatedly for your legal basis for this request, including during our March 29 meet and confer correspondence and in our April 1 letter, and you have not cited a single case justifying this request.  As we document in our April 1 letter, the allegations in the complaint do not justify including Mr. Cook as a custodian.  Today, you presented a new unfounded assertion that Mr. Cook has stated that "Apple is focused more and more on healthcare and less and less on computers." You quickly admitted Mr. Cook had *not* actually made that statement, but the fact remains that there is no legitimate basis for collecting documents from Mr. Cook.

Please let us know when we can expect the information you agreed to provide regarding each of your forty-nine proposed custodians, including Mr. Cook.

Regards,
Brian

On Apr 2, 2021, at 11:06 AM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

 [External Email]
Brian,

We are reviewing your letter, but are available to meet and confer regarding Plaintiffs' March 25 letter at 2pm today.  Please confirm that time still works for you.

Thanks,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Sent:** Thursday, April 1, 2021 4:09 PM
**To:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Counsel:

Attached please find correspondence from Brian Andrea and a native copy of APL-MAS_75595.

Best,
Susanna

Exhibit 47
-265-

**Susanna G. Schuemann**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8321 • Fax +1 415.374.8455
SSchuemann@gibsondunn.com • www.gibsondunn.com

On Mar 31, 2021, at 8:56 PM, Kaounis, Angelique <AKaounis@gibsondunn.com> wrote:

Counsel:

Attached please find Apple's portion of the Joint Stipulation regarding Apple's Motion to Compel Plaintiffs to Immediately Proceed With ESI Discovery.

The accompanying attorney declaration and the exhibits (both public and under seal versions of the exhibits) will follow shortly via ShareFile because of their size. Please let us know if you have any issues retrieving them.

When you send back Plaintiffs' portion, please include proposed redactions in yellow highlighting for Plaintiffs' portion, as well as any proposed redactions for Apple's portion.

We look forward to receiving Plaintiffs' portion of the Joint Stipulation in seven days.

Thanks,
Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Kaounis, Angelique
**Sent:** Tuesday, March 30, 2021 7:19 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Exhibit 47
-266-

Adam,

We write briefly to correct the misstatements in your email.  We have been clear about our proposed compromise and about the relief we intend to seek from the Court if Plaintiffs remain unwilling to proceed with ESI discovery now.  Nonetheless, to reiterate, if we are unable to reach a resolution, Apple will ask the Court to compel Plaintiffs to proceed with ESI discovery on twelve custodians per side, without prejudice to either side's ability to pursue ESI from additional custodians in the future.

Apple is preparing a written response to each of the issues raised in your March 23 and March 25 letters.  The March 29 call was convened due to the urgent need to move forward with a proportional, workable, mutually agreeable set of initial custodians.  In the interest of efficiency, we asked you to show patience for a couple days while we work with our client to finalize responses.  We did not refuse to discuss anything.  Rather, we tried to keep the focus on the most important and time-sensitive issue:  agreeing on a way to move forward with ESI discovery now.  But rather than provide a straightforward explanation of Plaintiffs' position on that issue, you instead insisted that the parties discuss other issues, which we did discuss.  In particular, 1) we invited you to share case law supporting your request for custodial files from Tim Cook, and 2) we told you that although we were not able to replicate the legibility you claim to have with APL-MAS_0075595, that we were trying to solve the issue for you.  Please refer to our forthcoming written responses to the other issues set forth in your March 25 letter for Apple's responses to Plaintiffs' other issues.

Thanks,
Angelique

**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, March 30, 2021 8:51 AM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Angelique and Brian,

I write to memorialize our March 29 meet and confer.  We disagree with your email, which once

Exhibit 47
-267-

again does not accurately reflect our meeting.  Our meet and confer was unhelpful because Apple refused to fully discuss the parties' disputes, including the issues raised in Apple's own March 17 letter and Plaintiffs' responsive March 23 letter.  For example, Apple refused to discuss: (1) whether Plaintiffs' former employees are appropriate custodians, (2) whether Tim Cook is an appropriate custodian, (3) Lamego/Nazarro's files, and (4) whether Apple would produce a new version of APL-MAS_0075595.  Apple argued it need not discuss these issues because Plaintiffs' March 25 Local Rule 37 letter mentioned them and Apple intended to wait ten days to respond to that letter.  We explained that the issues we were trying to discuss were covered by Apple's own March 17 letter and our March 23 response, not just our separate March 25 Local Rule 37 letter.

Rather than discuss all aspects of Apple's own letter, Apple demanded that Plaintiffs preemptively agree to Apple's demand to search just twelve Apple custodians.  Your email below argues that, because both parties will eventually search at least 12 custodians, Plaintiffs should select 12 Apple custodians now.  But Apple is refusing to provide the information that would be necessary for Plaintiffs to make an informed decision even as to 12 custodians, including hit counts for all custodians and search terms.  Such information is important to target and prioritize ESI discovery.  For example, hit counts would help Plaintiffs better understand the relevance of various Apple custodians and prioritize its requests for ESI searching.  We also do not know whether Apple will agree to search Tim Cook's files or whether it will agree to search any of Plaintiffs' former employees other than O'Reilly.  Thus, these issues are interrelated and cannot be isolated.  Indeed, Apple promised in the ESI stipulation that it would discuss custodians <u>and</u> search terms in an attempt to reach an <u>overall agreement</u>.  Apple's refusal to do so is unnecessarily delaying this process.

Apple's claim that it urgently seeks to "make progress" is belied by the many months in which Apple refused to engage in any ESI discussions.   Apple's demand that Plaintiffs select 12 custodians in the dark makes no sense in view of Apple's commitment to provide the other information and engage in an overall discussion in the next few days.  Likewise, providing our position in writing in less than 24 hours can hardly be considered "delay" or refusing to answer Apple's question by a "date certain." We simply need reasonable information, consistent with what we have been willing to provide Apple, given Apple's refusal to search more than 12 custodians.

During the call, you stated that Apple will immediately proceed with twelve custodians regardless of whether Plaintiffs agree.  While Plaintiffs maintain that Apple should provide hit counts for <u>all</u> of Plaintiffs' custodians, nothing is preventing Apple from running searches on whatever custodians it likes.  During the meet and confer, Apple threatened to move the Court, but did not indicate what relief Apple seeks.  Even though Local Rule 37-1 required Apple's letter to clearly identify "the terms of the discovery order to be sought," Apple's letter did not do so.  Moreover, plaintiffs have not placed an arbitrary limit on searching, and simply look to find an equitable approach.  Plaintiffs also have not in any way refused to begin that process, which they have already started.  As discussed above, nothing is preventing Apple from performing searches on its own custodians.  Please clarify what relief Apple plans to seek from the Court if the parties do not reach an agreement.

During the meet and confer, the parties also discussed (1) the type of documents covered by ESI searching and (2) Plaintiffs search of the twelve custodians that Apple identified.  On the first issue, Apple stated that it planned to search all files, including messaging and chat logs, but that it

Exhibit 47
-268-

envisioned the negotiated ESI search terms would apply only to email searching.  We responded that we would consider Apple's position and get back to you.  On the second issue, Plaintiffs again explained they never refused to search the twelve custodians that Apple identified.  To the contrary, we explained that we had already begun pulling files and would provide hit counts as soon as possible.  Apple demanded Plaintiffs provide a "date certain" as to when we would provide hit counts, while Apple could not provide a date certain itself when we asked the same question.  As we explained, Plaintiffs are working diligently to pull the data, process the data, and provide hit counts as soon as possible.  We likewise request hit counts from Apple.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Monday, March 29, 2021 8:02 PM
**To:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We write to memorialize today's meet and confer call.  We are disappointed by Plaintiffs' refusal to agree to Apple moving forward with 12 custodians on each side, particularly in view of the fact that Plaintiffs have indicated they do intend to request that Apple search the ESI of the 12 custodians Apple has identified.  We are endeavoring in good faith to make progress, with the understanding that all parties reserve rights to seek additional custodians later, depending on the discovery that unfolds.  It is likewise disheartening that Plaintiffs cannot commit to providing a final answer to Apple's proposal to begin with 12 custodians by a date certain.  Your suggestion that we asked you for an "on the spot" answer is detached from the documented reality of the parties' discussions.  We presented this proposal to Plaintiffs on March 17, followed up on March 22 asking for a response to allow us to "move forward with ESI discovery immediately," reiterated this request on March 23, and then once again posed the same question on March 26.  In no way were you put on the spot today.  Accordingly, we renew our request that you let us know today—or tomorrow at the latest—whether Plaintiffs will agree to commence ESI discovery with the list of 12 custodians presented in Apple's March 17 letter.

We will respond in writing to the issues raised in your March 23 and March 25 letters later this week.  In the meantime, we need to move forward with an initial set of custodians.  Discovery is an iterative, collaborative process.  The fact that other issues remain to be decided does not justify Plaintiffs' delay.

Exhibit 47
-269-

Thanks,
Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

<Joint Stip re ESI Custodians.DOC>

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Exhibit 47
-270-

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 47
-271-

# EXHIBIT 52

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian K. Andrea
Direct: +1 202.887.3624
Fax: +1 202.530.4220
BAndrea@gibsondunn.com

April 29, 2021

Adam Powell
Knobbe, Martens, Olson & Bear, LLP
12790 El Camino Real
Suite 100
San Diego, CA 92130

Re:    *Masimo Corp. et al. v. Apple Inc.* (C.A. No. 8:20-cv-48-JVS-JDE)

Dear Adam:

We write in response to your April 21 letter and to summarize the outstanding issues regarding ESI discovery that remain following the Court's April 26 order granting in part Apple's Motion to Compel Plaintiffs to Immediately Proceed with ESI Discovery (ECF 355).

## Plaintiffs' Requested ESI Custodians

Plaintiffs continue to misapply the law when attempting to shift the burden of demonstrating relevance in discovery onto Apple. Contrary to Plaintiffs' contentions, neither the ESI Agreement, the Federal Rules, nor applicable jurisprudence suggest that Apple has an affirmative obligation to *disprove* the relevance of the laundry list of proposed custodians Plaintiffs have requested. On the contrary, "the burden of demonstrating relevance rests with the party seeking discovery." *Martinez v. Walt Disney Co.*, 2012 WL 12913739, at *1 (C.D. Cal. Aug. 8, 2012). Plaintiffs have not met this burden with respect to its lengthy list of requested custodians.

In accordance with the Court's order, Apple will collect, search, and produce data for "up to 39 custodians" (ECF 355). The requested custodians, however, must still be likely to possess ESI relevant to this case; the Court's Order does not give either party the right to request custodians without demonstrating their relevance, in accordance with the applicable law, as discussed above. Thus, to the extent there are additional Apple custodians Plaintiffs intend to identify, please also identify Plaintiffs' basis for contending each custodian possesses relevant ESI, as Apple has been requesting for months.

Additionally, Apple maintains its position that Tim Cook is not an appropriate ESI custodian, and the cases Plaintiffs cite do not suggest otherwise. In *Dyson, Inc. v. SharkNinja Operating LLC*, 2016 WL 1613489, at *1 (N.D. Ill. Apr. 22, 2016), Dyson agreed that at least some documents from its founder, James Dyson, were relevant because he was "one of the named inventors on the patents that form the basis for this suit." *Id.* Because Plaintiffs had already

Exhibit 52
-297-

**GIBSON DUNN**

Adam Powell
April 29, 2021
Page 2

collected Mr. Dyson's documents in order to produce materials related to inventorship, the Court found it would not be "unduly burdensome" to require him to produce emails. *Id.* at*2. But the same "logical underpinnings of the apex doctrine" establish that it would *not* be appropriate to run Tim Cook "through the wringer of civil discovery" because he does "not have personal knowledge of the relevant facts" and Apple has not collected his documents for this litigation. *Id.* at *1 (noting that the apex doctrine "bespeaks sensitivity to the risk that very valuable executive time would be wasted where the officer has no real information.")(quoting 8A Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and Procedure*, § 2036 n.7 (3d ed. 2010). Particularly with respect to a senior executive like Cook, an allegation that Cook interviewed O'Reilly and made general statements about Apple's commitment to healthcare "does not make him a repository for relevant and responsive information." *Krueger v. Ameriprise Fin., Inc.*, 2013 Wl 12139425, at *9 (D. Minn. Aug. 15, 2013) (denying adding CEO as a custodian because his attendance at a meeting and webcast regarding the topics at issue in the lawsuit did not "make him a source for information" regarding either party's claims or defenses.).

Plaintiffs have still not cooperated with Apple's request that Plaintiffs provide the "legal basis for seeking documents from a top executive who was not involved in the issues in the case." Apple reiterates that request.

**Former Employees of Plaintiffs Later Employed by Apple**

Apple has given more information than required regarding the roles of individuals who previously worked for Plaintiffs. This public information was accessible to either party, and Apple compiled it as a courtesy in an effort to move past this dispute. Apple is aware of its obligations under the ESI Agreement and Federal Rules and is complying with those obligations. Apple disagrees that it has an "obligation" to detail for Plaintiffs the job duties of all former Masimo employees who subsequently worked for Apple, or that doing so would be "reasonable." On the contrary, it is Plaintiffs who have a burden to limit their discovery requests to topics they have reason to believe, "after a reasonable inquiry," are "consistent with [Rule 26]" and "neither unreasonable nor unduly burdensome." Fed. R. Civ. P. 26(g). Plaintiffs now acknowledge that, based on publicly available information, individuals like Linus Conrad, Megan Eilers, and Shruti Koneru are clearly irrelevant to this lawsuit; however, the fact that Plaintiffs ever proposed seeking discovery from them shows a clear lack of a "reasonable inquiry."

Apple also disagrees with the notion that employees can be appropriate custodians simply because they worked in "health technologies" or as a "biomedical scientist" or on "clinical trials relating to the Apple Watch." Plaintiffs disregard the basic principle that "discovery requests are not relevant simply because there is a possibility that the information may be

Exhibit 52
-298-

**GIBSON DUNN**

Adam Powell
April 29, 2021
Page 3

relevant to the **general subject matter** of the action." *Cole's Wexford Hotel, Inc. v. Highmark Inc.*, No. CV 10-1609, 2016 WL 5025751, at *1 (W.D. Pa. Sept. 20, 2016), on reconsideration, 2017 WL 432947 (W.D. Pa. Feb. 1, 2017) (emphasis added); *see also Martinez*, 2012 WL 12913739, at *1 ("Without prior court permission on a showing of good cause, a party is not entitled to 'relevant to subject matter' discovery."). Instead, Rule 26 requires parties seeking discovery to limit requests to those that are demonstrably "relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b)(1). As applied to this case, the fact that an individual may have information generally relevant to the Apple Watch (the subject matter in this case) does not mean they have information relevant to whether or not Apple misappropriated Plaintiffs' trade secrets (the specific claims and defenses at issue). Although Bruinsma, Golfetto, Haridas, and Lee held jobs that may (or may not) have made them familiar with certain aspects of the general subject matter of this litigation, Plaintiffs do not allege that any of these individuals—or any of the other individuals named on pages 2-3 of Plaintiffs' April 7 letter— ever misappropriated Plaintiffs' trade secrets or even had access to or knowledge of Plaintiffs' trade secrets. It follows logically that if these individuals had no exposure to Plaintiffs' trade secrets during their employment with Masimo, they could not conceivably have revealed those trade secrets to Apple. Thus, Apple disagrees with Plaintiff's contention that "[t]he time when Mr. Lee worked for Masimo does not show that his role at Apple is irrelevant." If Plaintiffs have a basis for believing that any of their former employees have information relevant to any party's claims or defenses, Plaintiffs should articulate that basis and may include the names of those individuals on their proposed list of up to 39 relevant custodians.

**Search Terms**

As discussed during the parties' April 27 meet and confer teleconference, Apple will continue to work collaboratively with Plaintiffs to refine search terms and narrow hits. Consistent with the Court's April 26 order, Apple will not "provide hit counts for *all* of Plaintiffs' proposed custodians," but Apple will provide hit counts for up to 39 *relevant* custodians.

**Data for Former Employees of Apple and Masimo**

Apple has already provided extensive information regarding its data retention policy and practices. Apple will not provide additional free discovery into Apple's internal systems, especially where, as here, Plaintiffs have not articulated the relevance of this inquiry. Despite Apple's repeated requests for an explanation and supporting authority for why the answers to Plaintiffs' questions are relevant to the assessment of Apple's legal obligations, Plaintiffs have offered none.

Plaintiffs try to disguise their demand for free discovery into Apple's proprietary backend data storage and retention systems as an attempt to "work cooperatively to recover any missing files." While Apple generally appreciates offers to work cooperatively, it remains unclear

Exhibit 52
-299-

**GIBSON DUNN**

Adam Powell
April 29, 2021
Page 4


specifically what Plaintiffs intend to do with the information they seek or how it would inform whether or not "the parties may have a dispute that requires the court's assistance."  To the extent Plaintiffs have questions about Apple's document retention policies, they should serve formal discovery, such as 30(b)(6) topics, as noted in my email dated April 28, 2021 regarding Plaintiffs' notices of depositions.

As we have told you several times, Apple's investigation is ongoing.  Indeed, as you know, Apple recently located certain documents of Mr. Lamego's, and has already agreed to add Mr. Lamego as an ESI custodian and has indicated that it will produce all relevant, non-privileged documents from Mr. Lamego. If Apple finds additional relevant information through its ongoing investigation, Apple will make that available to Plaintiffs.

Apple reserves all rights and waives none.

Sincerely,


Brian K. Andrea

Exhibit 52
-300-

EXHIBIT 54

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | *** Apple-Masimo; Rosenthal, Brian A.; Lerner, Joshua H.; Samplin, Ilissa; Lyon, H. Mark; Kaounis, Angelique; Buroker, Brian M.; Andrea, Brian |
| **Cc:** | Masimo.Apple |
| **Subject:** | Masimo v. Apple - Deposition Notices and ESI Custodians |
| **Date:** | Thursday, May 13, 2021 8:00:43 PM |
| **Attachments:** | 2021-05-13 Deposition Notice - Jack Fu.pdf |
| | 2021-05-13 Deposition Notice - Afshad Mistri.pdf |
| | 2021-05-13 Deposition Notice - Jeff Williams.pdf |
| | 2021-05-13 Deposition Notice - Louis Bakma.pdf |
| | 2021-05-13 Deposition Notice - Ueyn Block.pdf |
| | 2021-05-13 Deposition Notice - Steve Smith.pdf |
| | 2021-05-13 Deposition Notice - Divya Nag.pdf |
| | 2021-05-13 Deposition Notice - Adrian Perica.pdf |
| | 2021-05-13 Deposition Notice - Tao Shui.pdf |
| | 2021-05-13 Deposition Notice - Dong Zheng.pdf |

Counsel,

Please see the attached deposition notices.

Additionally, Plaintiffs request that Apple add the following individuals to the list of custodians that Apple searches pursuant to the parties' ESI discussions.

1. Adrian Perica
2. Steve Smith
3. Jeff Williams

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

Exhibit 54
-304-

EXHIBIT 58

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

3579 Valley Centre Drive, Suite 300, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

April 21, 2021

**VIA EMAIL**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
BAndrea@gibsondunn.com

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write in response to your letter of April 14, 2021, which responded to our letter of April 7, 2021.

**ESI Custodians**

We continue to disagree with Apple's recitation of the history of this dispute. Contrary to Apple's assertions, it did not take Apple filing a joint stipulation for Plaintiffs to provide information about the relevance of Plaintiffs' proposed ESI custodians. Your letter (and supplemental memorandum) continue to conflate two separate issues: (1) *disclosure* of each parties' own *potential* custodians and (2) the list of custodians that each side asked the other to search. After Plaintiffs served their list of Apple custodians on March 12, Apple demanded Plaintiffs limit their list to twelve custodians without discussing the relevance of additional custodians. Apple did not ask about the relevance of the custodians that Plaintiffs asked Apple to search until an April 2 meeting on a separate motion—*after* Apple served its joint stipulation on March 31. Plaintiffs explained the relevance of the custodians during the meeting, in writing after the meeting, and in their portion of the joint stipulation just three business days later. Emails and letters prior to March 12 refer to the relevance of each side's own potential custodians that they disclosed to the other side, not the issue here—the relevance of the custodians that each side asked the other to search on March 12.

We also disagree with your assertion that we identified Apple custodians based on "rank speculation" because we used a similar description for some of the custodians. Plaintiffs identified individuals with documented interactions with Lamego regarding the trade secrets at issue, with citations to *specific* Apple documents. Plaintiffs identified particular trade secrets and RFPs as to which these custodians are likely to have responsive documents. Regardless, *Apple* is obligated to perform a reasonable search for Apple documents. Apple's continued attempt to place the burden on Plaintiffs to identify that Apple should search is not supported by any case cited by Apple or the Federal Rules. Unfortunately, Apple continues to refuse to disclose a full list of *potential* custodians that it has identified, so Plaintiffs have been forced to identify some potential custodians that Apple should have identified.

Notably, Apple never explained what each custodian does at Apple and why *Apple* believes the additional custodians lack relevant information. To the contrary, your letter argues that the "proper

way" for us to seek information about Apple's employees is "through the formal discovery process, which permits Apple to make formal objections . . . ." Letter at 2 (discussing Plaintiffs' former employees now working for Apple). We disagree with Apple's approach of withholding information about its custodians and then complaining that Plaintiffs' explanations are incomplete. Apple—not Plaintiffs—has the burden of identifying relevant Apple custodians. Plaintiffs' identification of missing custodians shows Apple's list is incomplete.

Apple's letter also asks us to provide the "specific basis" for the inclusion of each custodians. Again, that improperly attempts to place the burden of identifying custodians at Apple on Plaintiffs. We already provided sufficient information to establish that Apple's list of custodians is far from complete. We provided that information in our prior letter and in our portion of the joint stipulation. Please provide the basis for Apple's assertion that each of the additional custodians should **not** be included. Without such information, we cannot reasonably assess Apple's requested unilateral limit to just twelve custodians. Thank you for agreeing to add Ueyn Block and Tao Shui as ESI custodians.

We also continue to disagree with Apple's reliance on the "apex" doctrine to avoid **searching** Mr. Cook's files. Apple's reliance on *Lauris v. Novartis*, 2016 WL 7178602, at *5 (E.D. Cal. Dec. 8, 2016), is misplaced because that case expressly held "[t]he Court is **not** persuaded that the apex doctrine applies to the discovery at issue here." As Plaintiffs explained, Apple's other cited authority found the "apex" doctrine applies to depositions—not document collection. *See* Dkt. 332-1 at 33 (quoting *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 8757255, at *1 (N.D. Cal. Feb. 20, 2019)). Other courts agree. *See, e.g.*, *Dyson, Inc. v. SharkNinja Operating LLC*, 2016 WL 1613489, at *2 (N.D. Ill. Apr. 22, 2016) (concluding "all of the cases this Court reviewed on the [apex] issue were concerned with preventing **depositions** of high ranking corporate officials"); *Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *1 (N.D. Cal. Feb. 7, 2018) (rejecting apex argument for collecting documents). Even if the "apex" doctrine applies, **Apple** bears the burden of limiting discovery. *See Dyson*, 2016 WL 1613489, at *2 (finding that, even if the doctrine applied to document collection, the responding party has the burden). Apple has never even attempted to show it would be burdensome to collect ESI from Tim Cook.

## Former Employees of Plaintiffs Later Employed by Apple

As an initial matter, we disagree with Apple's rhetoric and assertion that our letter was "disingenuous." The fact that Apple purportedly provided only public information in its own letter hardly shows that **Plaintiffs** did anything improper. We have been asking you to cooperate for months in good faith to try to avoid burdening the Court. Apple refused to provide any information at all and now admits that it provided only public information. As we explained in our prior letters, Apple has not provided nearly enough information for us to identify for Apple the relevance of each of Apple's own custodians. The information we are seeking is in Apple's possession and would be simple to provide. We disagree with Apple's attempt to delay this process by trying to avoid its obligation to perform a reasonable search. Apple's refusal to provide basic information on the potential custodians that appear relevant based on documents Apple has produced only delays the possible narrowing of the dispute and narrowing of the list of potential custodians at Apple.

Your letter also states that Bruinsma, Golfetto, Haridas, and Lee "do not fit" the description set forth in the ESI agreement. But Apple's discovery obligations are not limited to merely identifying individuals that "fit" the description of potentially relevant custodians in the ESI agreement. Apple also has not explained its position. Apple acknowledges Bruinsma previously worked in the "health technologies

Exhibit 58
-419-

division," Golfetto is a "biomedical scientist" for Apple, and Haridas was a "Clinical Operations Project Manager" and "involved in clinical trials relating to the Apple Watch." Apple has not attempted to explain why such individuals are not relevant to this dispute. Apple's assertions regarding Mr. Lee are also misplaced because Apple admits Mr. Lee is "involved in the design of studies related to the Apple Watch." The time when Mr. Lee worked for Masimo does not show that his role at Apple is irrelevant.

<u>Search Terms</u>

We never told you that we had "yet to acquire the technological infrastructure" needed to run search terms. Rather, we told you that Apple's particular search terms could not be run on Plaintiffs' software, so Plaintiffs were exporting data to be processed by a vendor. Plaintiffs provided a hit count report for several custodians on April 16 and will continue to do so promptly as their vendor completes searching the remaining custodians. We reiterate our request that Apple provide hit counts for *all* of Plaintiffs' proposed custodians—not just the twelve or fourteen custodians that Apple agreed to ultimately search. Obtaining hit counts for all proposed custodians would allow the parties to prioritize discovery and evaluate Apple's assertion that searching additional custodians would be burdensome.

<u>Data For Former Employees</u>

Apple previously asked us to confirm that we had files and emails for all of Apple's proposed custodians. Plaintiffs confirmed and, in my April 7 letter, asked Apple to provide the same information regarding the individuals that Plaintiffs asked Apple to search. Your April 14 letter ignored our request. Given that Apple demanded that we provide this information, please provide the same information to us.

<u>Lamego and Nazzaro Data</u>

Your letter purports to be "baffled by Plaintiffs' continued interest in Apple's data systems." Apple asserts it "has not asked for Plaintiffs' advice or input on the recoverability of data, and it is unclear what unique technical expertise Plaintiffs have to offer here." Apple then asks us to simply take Apple at its word that it has done everything it can to recover the missing files and is following its obligations under the law. The purpose of exploring the issue is to determine whether we agree with Apple. If not, the parties may have a dispute that requires the court's assistance. Apple's refusal to cooperate with us in trying to recover the missing data is deeply concerning.

Your letter also asks that we provide a "provide a specific list of questions, a detailed explanation for why the answer to each question is relevant to the assessment of Apple's legal obligations, and supporting legal authority." As we explained in our April 7 letter, Apple's focus on its "legal obligations" to preserve evidence is not relevant because our focus is on recovering the data. The defensive position Apple has taken suggests that Apple is unwilling to explore the destruction and recovery. We already provided a detailed list of questions on March 9 to which Apple has repeatedly refused to respond. Below is the list of questions from our March 9 email. Please answer our questions so that the parties can work cooperatively to try to recover any missing files.

- Apple appears to be drawing a distinction between "destroying" files and "removing" them from Apple's system. Can you explain? What does Apple do when it "removes" files from its system? Does Apple move or copy the files to some other location or device? Or does it delete

Exhibit 58
-420-

all instances of those files?  If Apple deletes all instances of those files, does it simply delete the files or does it "wipe" or overwrite files?

- What software does Apple use to search emails?  Most software allows for searching multiple custodians at once, so we may be able to offer some suggestions.

- Apple states that it has not exported Lamego or Nazzarro's files for other litigation.  Has Apple done so for any other purpose?

- It sounds like Apple is taking the position that it must have removed Lamego and Nazzarro's emails and files 4-10 weeks after they left because that is Apple's standard procedure.  Has Apple been able to verify that it actually removed Lamego and Nazzarro's emails 4-10 weeks after they left?

- Apple claims it does not understand what we mean by "a relevant area."  As we have previously explained, Apple itself asserted that some individuals did not work in a relevant area.  For example, Apple asserted that one individual was not relevant because he worked on the Apple Airpods project.  If that person did not also work on something relevant to the case, we would likely agree with that assessment.  Thus, we are asking Apple to identify the individuals that Apple believes worked in an area relevant to the case.  A relevant area may include, by way of example and not limitation, physiological monitoring, sensor design, or health-related app development.  Until Apple explains what each individual did at Apple, rather than Apple's unilateral conclusion that they are not relevant, we are unable to agree with Apple's legal conclusion.  Apple—not Plaintiffs—have the requisite knowledge.  Please confirm Apple will maintain the files for all individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area.

Best regards,

Adam B. Powell

-4-

Exhibit 58
-421-

# EXHIBIT 63

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

3579 Valley Centre Drive, Suite 300, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

May 1, 2021

**VIA EMAIL**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
BAndrea@gibsondunn.com

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write in response to your letter of April 29, 2021, which responded to our letter of April 21, 2021. We also write pursuant to Local Rule 37-1 to request a conference of counsel on Apple's refusal to comply with the Court's April 26, 2021, Order (Dkt. 355).

**Plaintiffs' Requested ESI Custodians**

We disagree with your assertion that we are attempting to "shift the burden of demonstrating relevance in discovery onto Apple."  As we have explained many times, the ESI Agreement required Apple to identify all individuals who are "knowledgeable about and were involved with the core issues or subjects in this case (e.g., the asserted patents, alleged misappropriation of trade secrets, the development, design and operation of the accused products, and sales, marketing and other damages-related information for the accused products)." Dkt. 51 at 1.  When Apple refused to do so, the Court warned "any knowing failure to identify in a timely manner all appropriate custodians as part of the iterative, good faith discovery process may result in a future order excluding evidence or other consequences." Dkt. 318 at 2.  Apple still refused to do so and moved for an order limiting discovery to just twelve custodians.  The Court rejected Apple's position and ordered the parties to "immediately proceed with the production of electronically stored information ('ESI') for up to 39 custodians per side, which the Court, having considered all of the evidence and argument presented by the parties, finds reasonable and proportionate to the needs of the case . . . ." Dkt. 355 at 1.

Nowhere did the Court suggest that Apple could continue to limit discovery by requiring Plaintiffs to first convince Apple of the relevance of any additional custodians.  Nor did the Court permit Apple to withhold discovery from Mr. Cook.  Your assertion that we have not "cooperated" with Apple's request for legal support contradicts the record, where we have provided extensive support for our position. Indeed, our prior briefing explained the basis for our requested custodians and provided legal support for Mr. Cook being an appropriate custodian.

Apple's insistence that Plaintiffs must convince Apple of the relevance of each custodian is yet another improper attempt to limit discovery.  Plaintiffs request that Apple reconsider its position and confirm it will search up to 39 custodians, including Mr. Cook.  Please let us know when you are available to

Exhibit 63
-487-

discuss as soon as possible.  Because we have been discussing this matter for quite some time, we suggest a meeting on May 3 or 4.

**Former Employees of Plaintiffs Later Employed by Apple**

We continue to disagree with your position on former employees.  Far from providing sufficient information, Apple admits that it provided only public information.  Apple claims Plaintiffs failed to conduct a "reasonable inquiry" merely because Plaintiffs agreed to drop certain custodians based on the information that Apple provided.  We did so based on Apple's representation that such information was correct.  Please let us know if Apple is now representing that it conducted no independent analysis to verify such information.  Apple still has not identified all custodians in a timely manner as required by the Court.  Dkt. 318 at 2.

We also disagree with your assertion that we have not provided sufficient information to show the relevance of other former employees.  We have provided more than enough of a basis to seek discovery.  That is especially true because Apple has declined our reasonable requests for additional information.

**Search Terms**

The parties are discussing search terms separately.  We disagree with Apple's refusal to provide hit counts for all of Plaintiffs' proposed custodians.  As we have explained, such hit counts will help the parties evaluate the relevance of such custodians.  We disagree with Apple's approach of refusing to provide hit counts unless Plaintiffs first conclusively demonstrate relevance to Apple's liking.

**Data For Former Employees**

Apple ignores the question Plaintiffs asked in my April 21 letter, which stated:

> Apple previously asked us to confirm that we had files and emails for all of Apple's proposed custodians.  Plaintiffs confirmed and, in my April 7 letter, asked Apple to provide the same information regarding the individuals that Plaintiffs asked Apple to search.  Your April 14 letter ignored our request.  Given that Apple demanded that we provide this information, please provide the same information to us.

Please answer our question promptly.

**Lamego and Nazzaro Data**

We also disagree with Apple's position on this issue.  Far from seeking "free discovery," we explained many times that we are trying to assess whether the data Apple deleted can be recovered.  Apple's objection to producing "proprietary" information is resolved by the Protective Order, which permits Apple to designate the information as "Confidential" or "Highly Confidential – Attorneys Eyes Only."

Your April 14 letter asked us to reiterate our questions.  We did so in our April 21 letter as follows:

- Apple appears to be drawing a distinction between "destroying" files and "removing" them from Apple's system.  Can you explain?  What does Apple do when it "removes" files from its system?  Does Apple move or copy the files to some other location or device?  Or does it delete

Exhibit 63
-488-

all instances of those files?  If Apple deletes all instances of those files, does it simply delete the files or does it "wipe" or overwrite files?

- What software does Apple use to search emails?  Most software allows for searching multiple custodians at once, so we may be able to offer some suggestions.

- Apple states that it has not exported Lamego or Nazzaro's files for other litigation.  Has Apple done so for any other purpose?

- It sounds like Apple is taking the position that it must have removed Lamego and Nazzaro's emails and files 4-10 weeks after they left because that is Apple's standard procedure.  Has Apple been able to verify that it actually removed Lamego and Nazzaro's emails 4-10 weeks after they left?

- Apple claims it does not understand what we mean by "a relevant area."  As we have previously explained, Apple itself asserted that some individuals did not work in a relevant area.  For example, Apple asserted that one individual was not relevant because he worked on the Apple Airpods project.  If that person did not also work on something relevant to the case, we would likely agree with that assessment.  Thus, we are asking Apple to identify the individuals that Apple believes worked in an area relevant to the case.  A relevant area may include, by way of example and not limitation, physiological monitoring, sensor design, or health-related app development.  Until Apple explains what each individual did at Apple, rather than Apple's unilateral conclusion that they are not relevant, we are unable to agree with Apple's legal conclusion.  Apple—not Plaintiffs—have the requisite knowledge.  Please confirm Apple will maintain the files for all individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area.

Your April 29 letter refuses to provide any of this information.  Please answer our questions promptly.

Your letter also states that Apple has recently located certain documents from Mr. Lamego.  However, you do not address my email of April 24, 2021, which stated:

If Apple located computers or images of computers used by Mr. Lamego, they should be produced as responsive to at least RFP No. 229.  Please confirm Apple will produce any such computers or images.

Please answer our question promptly.

Best regards,

Adam B. Powell

-3-

Exhibit 63
-489-

EXHIBIT 64

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

3579 Valley Centre Drive, Suite 300, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

May 5, 2021

**VIA EMAIL**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
BAndrea@gibsondunn.com

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write in response to your letter of May 4, 2021, which responded to our letter of May 1, 2021.

**Plaintiffs' May 1 Letter Satisfied L.R. 37-1**

We disagree with your assertion that Plaintiffs' letter did not satisfy Local Rule 37-1.  As an initial matter, Apple's position is inconsistent with the position it has taken on Local Rule 37-1 letters in the past.  For example, Apple declined to clearly identify its requested relief on ESI custodians in its March 17 letter, during the meet and confer, in subsequent emails, and in the joint stipulation.

Regardless, we already satisfied Local Rule 37-1 through our March 25 letter and subsequent meet and confer.  Our May 1 letter also satisfied Local Rule 37-1.  We identified the issues in dispute: (1) Apple's requirement that Plaintiffs first convince Apple of the relevance of custodians beyond the fifteen Apple agreed to search, and (2) Apple's refusal to search Mr. Cook's files.  We explained our position on both issues in detail.  We also explained that we had elaborated on our position and provided legal support in prior briefing on Apple's ESI motion.  We also specified the relief that we intended to seek: The Court should compel Apple to search up to 39 custodians, including Mr. Cook.  Please let us know when you are available to meet and confer.  We are available on May 6 after 3pm pacific, or on May 7 after 11am pacific.

**Plaintiffs' Requested ESI Custodians**

We disagree with your assertion that Plaintiffs "mischaracterize" the ESI agreement.  Far from mischaracterizing the agreement, our letter quoted it word-for-word.  *See* 5/1/2021 letter at 1.  Apple newly argues it need not identify all potential custodians because the agreement states that the parties will meet and confer in an attempt to reach a "reasonable list" of custodians.  Apple continues to conflate the concepts of (a) *disclosing* potential custodians and (b) *searching* custodians.  We maintain that the ESI agreement requires full disclosure of potential custodians (as defined in the agreement) and then the parties meet and confer on the "reasonable list" of custodians to search.

Apple claims it is complying with the Court's April 26 Order to search "up to 39 custodians" because Plaintiffs had not yet provided a list of additional custodians.  But Apple states it will not search

Exhibit 64
-490-

additional custodians because Apple believes that Plaintiffs have not shown that each custodian is relevant.  Apple made the same argument in prior briefing and the Court rejected Apple's argument.  In particular, Apple argued Plaintiffs had not shown more than 12 custodians were relevant.  The Court rejected Apple's request to limit discovery to 12 custodians and found 39 custodians was appropriate.  As explained in my prior letter, the Court did not suggest that Apple could continue to limit discovery by requiring Plaintiffs to first convince Apple of the relevance of any additional custodians.  The Court did not find any of Plaintiffs' proposed custodians, including Tim Cook, were inappropriate.  Thus, we believe the Court intended for Plaintiffs to select up to 39 custodians for Apple to search.

Regardless, we have now identified the additional custodians that we are requesting Apple to search at this time.  We intend to identify additional custodians up to 39 after Apple produces meaningful discovery.  Please confirm Apple will search our requested custodians.[1]

**<u>Search Terms</u>**

We continue to disagree with Apple's refusal to provide hit counts for all of Plaintiffs' proposed custodians.  Your letter cites a single case from Colorado, but that case did not address this issue.  *Crocs, Inc. v. Effervescent, Inc.*, 2017 WL 1325344, at *2 (D. Colo. Jan. 3, 2017).  Apple newly asserts that it would be "costly and burdensome" to provide hit counts, but provides no facts to support that argument.  Hit count reports are an important tool to evaluating a potential custodian's relevance.

We also disagree with your assertion that we somehow delayed the process.  As we explained during the April 27 meet and confer, Apple had far more to fix in its proposed search terms because they yielded *17 million* documents compared to *3.5 million* documents for Plaintiffs' search terms.  While Apple has revised some of its search terms, the unrevised search terms still total *12 million* documents.  Thus, Apple has still not revised all of its search terms that need revision.  By contrast, our hits totaled just 3.5 million documents but we still provided revised search terms to further narrow discovery.

**<u>The Former Employees</u>**

We continue to disagree with Apple's recitation of the history on this dispute.  We also disagree with Apple's assertion that Plaintiffs are seeking "free discovery" about the former employees.  We are simply trying to narrow the parties' dispute through the meet and confer process.  We disagree with Apple's assertion that we should serve written discovery on these topics, especially because Apple's prior letters made clear that it intends to object to any such written discovery.

Additionally, my prior letter explained that Plaintiffs' commitment to drop certain individual was based on our understanding that Apple represented the information it provided (which Apple asserts is public) was accurate.  We asked "if Apple is now representing that it conducted no independent analysis to verify such information."  Your letter did not answer our question.  Please do so.

---

[1] In a footnote, Apple argues "Plaintiffs have not responded to Apple's request that Plaintiffs provide the 'legal basis for seeking documents from a top executive who was not involved in the issues in the case.'"  We have responded to that assertion many times by explaining the legal and factual basis for our request.  Apple's apparent disagreement with our assertion does not mean we have "not responded."

Exhibit 64
-491-

**Data For Former Employees**

My April 21 letter and May 1 letter stated:

> Apple previously asked us to confirm that we had files and emails for all of Apple's proposed custodians. Plaintiffs confirmed and, in my April 7 letter, asked Apple to provide the same information regarding the individuals that Plaintiffs asked Apple to search. Your April 14 letter ignored our request. Given that Apple demanded that we provide this information, please provide the same information to us.

Apple once again refuses to answer this question. Please answer our question promptly.

**Lamego and Nazzaro Data**

Plaintiffs have repeatedly asked Apple to answer the same basic questions about data that Apple admittedly destroyed. Apple repeatedly refuses unless Plaintiffs first provide "a detailed explanation for why the answer to each question is relevant to the assessment of Apple's legal obligations" and "supporting legal authority." As we have explained many times, the issue we are addressing is whether the data exists and can be recovered—not Apple's "legal obligations" to maintain the data. Thus, Apple's questions are unnecessarily defensive and irrelevant to the issue that we are addressing.

Your letter states that Apple will produce all "responsive documents" that it located from Lamego. However, Apple still does not answer the question posed in my April 24 email and May 1 letter, which stated:

> If Apple located computers or images of computers used by Mr. Lamego, they should be produced as responsive to at least RFP No. 229. Please confirm Apple will produce any such computers or images.

Please answer our question promptly.

Best regards,

Adam B. Powell

-3-

Exhibit 64
-492-

# EXHIBIT 67

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | Schuemann, Susanna G.; Andrea, Brian |
| **Cc:** | Kaounis, Angelique; *** Apple-Masimo; Masimo.Apple |
| **Subject:** | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians |
| **Date:** | Wednesday, May 12, 2021 8:45:47 PM |
| **Attachments:** | [Sealed] Joint Stipulation re Plaintiffs  Motion to Compel ESI from Tim Cook.DOC |

Susanna and Brian,

Thank you for discussing this matter with me, but we disagree with your attempt to summarize the teleconference.  During the call, we asked if Apple would consider any potential compromises with respect to Mr. Cook's documents.  Apple declined and confirmed that it would not agree to search Mr. Cook's documents.  Plaintiffs maintained their position that Mr. Cook is a relevant custodian.

We also discussed the Court's ruling on Apple's ESI motion.  Plaintiffs believe the Court already considered the parties' arguments with respect to custodians identified in prior briefing, including Mr. Cook, and ordered the parties to proceed immediately on up to 39 custodians.  We do not agree with Apple's position that the phrase "up to" gives Apple discretion to refuse to search custodians addressed in prior briefing, including Mr. Cook.  We interpret the phrase as allowing the parties to designate up to 39 custodians each without requiring the parties to do so immediately.  That is why we designated additional custodians but are reserving some slots to request additional searching later without having to burden the Court.

Based on Apple's representations, Plaintiffs are not currently requesting that Apple search the files of Mr. Rollins or Mr. Raths.  However, Plaintiffs maintain their request that Apple search Mr. Cook's files.  Because the parties reached an impasse on that issue, attached is a brief joint stipulation.  Other supporting documents may be downloaded from the following link: ██████████████████████████████.  The sealed documents should be treated as Highly Confidential – Attorneys' Eyes Only.  We look forward to receiving Apple's portion of the joint stipulation in seven days.


Best regards,
Adam


**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Sent:** Wednesday, May 12, 2021 12:51 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Exhibit 67
-498-

Dear Adam,

We write to memorialize the parties' May 12, 2021 meet and confer teleconference.  As we stated during the call, in accordance with the Court's order, **Apple will collect, search for, and produce ESI for up to 39 custodians**.  Apple has asked Plaintiffs to provide a list of up to 39 custodians for Apple to search.  As long as those custodians are likely to possess relevant ESI, Apple will search each of those custodians.  So far, Plaintiffs have proposed 30 custodians, and Apple has agreed to search all of those custodians with the exception of three individuals (Tim Cook, Mark Rollins, and Cornelius Raths) who Apple maintains are not likely to have ESI relevant to this case and are thus not appropriate ESI custodians in this case, as set forth in our email dated May 7, 2021.  Plaintiffs have not responded to that email or Apple's position regarding the lack of relevance of those three individuals.  If Plaintiffs have additional information suggesting that those three custodians are relevant, Apple is willing to consider it.  But at this point, Apple has confirmed it will search 27 identified custodians, and has invited Plaintiffs to propose up to 12 additional custodians for a total of up to 39 custodians.  Accordingly, **it is not necessary or appropriate to ask the Court for an order compelling Apple to search up to 39 custodians**.  Apple agrees to do so.

Our understanding from today's call is that Plaintiffs contend the parties have a dispute as to the words "up to" in the Court's order.  Apple's reading of the Court order is that the phrase "up to" refers to the **number** of custodians that Apple must search ("up to 39").  Plaintiffs contend that the phrase "up to" means that Plaintiffs may select any 39 custodians that <u>they</u> consider relevant, and that Apple is required to search those particular custodians regardless of Apple's own position as to whether the custodians are relevant.  As we explained, the Federal Rules governing discovery still apply to ESI custodians.  There is nothing in Judge Early's order abrogating Rule 26 here—nor have you pointed to (and we are not aware of) any authority in that regard.  Apple is permitted to make objections to Plaintiffs' ESI discovery requests, including based on relevance, burden, and proportionality, just as it is permitted to make those objections to other discovery requests.  Apple disagrees with Plaintiffs' reading of the Court's order to the extent that Plaintiffs contend that the Court order exempted Plaintiffs from the responsibility to demonstrate that the discovery they seek is relevant and proportionate to the needs of the case.

Best,
Susanna

**Susanna G. Schuemann**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8321 • Fax +1 415.374.8455
SSchuemann@gibsondunn.com • www.gibsondunn.com

_____

**From:** Adam.Powell <Adam.Powell@knobbe.com>

Exhibit 67
-499-

**Sent:** Monday, May 10, 2021 3:18 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We are available at 3pm pacific tomorrow, but we disagree with your email to the extent it attempts to limit our discussion.  Please use the following dial in number:



Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Monday, May 10, 2021 12:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We are available to meet and confer regarding the issues in the second paragraph of your letter dated May 5, 2021 tomorrow (May 11) at 3pm PT.  Please let us know if that works for you, and if so please circulate a dial in number.

Thanks,
Brian


**Brian Andrea**

Exhibit 67
-500-

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, May 10, 2021 10:13 AM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Subject:** Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We still have not received a response with your availability to meet and confer on my May 1 letter. Please let us know when you are available to meet and confer today.

Best regards,
Adam


On May 5, 2021, at 8:41 PM, Adam.Powell <Adam.Powell@knobbe.com> wrote:


Brian,

Please see the attached letter.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245  **Direct**

**Knobbe Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Tuesday, May 4, 2021 12:51 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI

Exhibit 67
-501-

Custodians

Adam,

Please see the attached letter.

Best regards,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Saturday, May 1, 2021 9:32 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

Please see my attached letter.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

## Knobbe Martens

---

**From:** Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Sent:** Thursday, April 29, 2021 9:46 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI

Exhibit 67
-502-

Custodians

Adam,

Please see attached correspondence from Brian Andrea.

Best,
Susanna

**Susanna G. Schuemann**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8321 • Fax +1 415.374.8455
SSchuemann@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, April 21, 2021 9:38 AM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

Please see my attached letter.

Best regards,
Adam

**Adam Powell**
Partner
**858-707-4245 Direct**

## Knobbe Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, April 14, 2021 8:25 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Schuemann, Susanna G.

Exhibit 67
-503-

<SSchuemann@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI
Custodians

Adam,

Please see the attached letter and the attached word document.

Best regards,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, April 7, 2021 10:10 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>; Schuemann, Susanna G.
<SSchuemann@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI
Custodians

[External Email]
Brian,

Please see my attached letter and the attached word document.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

## Knobbe Martens

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, April 2, 2021 6:14 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>; Schuemann, Susanna G.

Exhibit 67
-504-

<<SSchuemann@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We write to memorialize our April 2 meet and confer teleconference about the issues raised in Plaintiffs' March 23 and March 25 letters and in Apple's April 1 response.

As discussed, we look forward to receiving the following from you:

1. The legal basis for your proposal of forty-nine custodians at the outset of discovery.  You referred to caselaw cited in your prior joint stipulation, but those cases are distinguishable, as we explained in our responsive briefing.  If you have applicable legal support, we are glad to consider it.
2. The specific factual basis for believing that each of the forty-nine proposed custodians is proportional to the needs of the case, and that each one is "knowledgeable about" and "involved in the core issues or subjects in this case" as required by the parties' ESI agreement (Dkt. 51).  As we reiterated on the call, we are willing to discuss including any custodian likely to possess nonduplicative information that is relevant to any party's claim or defense and proportional to the needs of the case.  But as we have made clear in our prior correspondence, we cannot accept Plaintiffs' current proposal, which includes individuals who—as far as we can tell—were never employed by Apple and/or had no involvement in the topics at issue.
3. The legal and factual basis for your request for documents from Tim Cook.  We have asked you repeatedly for your legal basis for this request, including during our March 29 meet and confer correspondence and in our April 1 letter, and you have not cited a single case justifying this request.  As we document in our April 1 letter, the allegations in the complaint do not justify including Mr. Cook as a custodian.  Today, you presented a new unfounded assertion that Mr. Cook has stated that "Apple is focused more and more on healthcare and less and less on computers." You quickly admitted Mr. Cook had *not* actually made that statement, but the fact remains that there is no legitimate basis for collecting documents from Mr. Cook.

Please let us know when we can expect the information you agreed to provide regarding each of your forty-nine proposed custodians, including Mr. Cook.

Regards,
Brian

On Apr 2, 2021, at 11:06 AM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

 [External Email]

Exhibit 67
-505-

Brian,

We are reviewing your letter, but are available to meet and confer regarding Plaintiffs' March 25 letter at 2pm today.  Please confirm that time still works for you.

Thanks,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Sent:** Thursday, April 1, 2021 4:09 PM
**To:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Counsel:

Attached please find correspondence from Brian Andrea and a native copy of APL-MAS_75595.

Best,
Susanna

**Susanna G. Schuemann**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8321 • Fax +1 415.374.8455
SSchuemann@gibsondunn.com • www.gibsondunn.com

On Mar 31, 2021, at 8:56 PM, Kaounis, Angelique <AKaounis@gibsondunn.com> wrote:

Counsel:

Attached please find Apple's portion of the Joint Stipulation regarding Apple's

Exhibit 67
-506-

Motion to Compel Plaintiffs to Immediately Proceed With ESI Discovery.

The accompanying attorney declaration and the exhibits (both public and under seal versions of the exhibits) will follow shortly via ShareFile because of their size. Please let us know if you have any issues retrieving them.

When you send back Plaintiffs' portion, please include proposed redactions in yellow highlighting for Plaintiffs' portion, as well as any proposed redactions for Apple's portion.

We look forward to receiving Plaintiffs' portion of the Joint Stipulation in seven days.

Thanks,
Angelique

**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Kaounis, Angelique
**Sent:** Tuesday, March 30, 2021 7:19 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Andrea, Brian
<BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple
<Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI
Custodians

Adam,

We write briefly to correct the misstatements in your email.  We have been clear about our proposed compromise and about the relief we intend to seek from the Court if Plaintiffs remain unwilling to proceed with ESI discovery now. Nonetheless, to reiterate, if we are unable to reach a resolution, Apple will ask the Court to compel Plaintiffs to proceed with ESI discovery on twelve custodians per side, without prejudice to either side's ability to pursue ESI from additional custodians in the future.

Apple is preparing a written response to each of the issues raised in your March 23 and March 25 letters.  The March 29 call was convened due to the urgent need

Exhibit 67
-507-

to move forward with a proportional, workable, mutually agreeable set of initial custodians.  In the interest of efficiency, we asked you to show patience for a couple days while we work with our client to finalize responses.  We did not refuse to discuss anything.  Rather, we tried to keep the focus on the most important and time-sensitive issue:  agreeing on a way to move forward with ESI discovery now.  But rather than provide a straightforward explanation of Plaintiffs' position on that issue, you instead insisted that the parties discuss other issues, which we did discuss.  In particular, 1) we invited you to share case law supporting your request for custodial files from Tim Cook, and 2) we told you that although we were not able to replicate the legibility you claim to have with APL-MAS_0075595, that we were trying to solve the issue for you.  Please refer to our forthcoming written responses to the other issues set forth in your March 25 letter for Apple's responses to Plaintiffs' other issues.

Thanks,
Angelique

**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, March 30, 2021 8:51 AM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Angelique and Brian,

I write to memorialize our March 29 meet and confer.  We disagree with your email, which once again does not accurately reflect our meeting.  Our meet and confer was unhelpful because Apple refused to fully discuss the parties' disputes, including the issues raised in Apple's own March 17 letter and Plaintiffs' responsive March 23 letter.  For example, Apple refused to discuss: (1) whether Plaintiffs' former employees are appropriate custodians, (2) whether Tim Cook is an appropriate custodian, (3) Lamego/Nazarro's files, and (4) whether Apple would produce a new version of APL-MAS_0075595.  Apple argued it need not discuss these issues because Plaintiffs' March

Exhibit 67
-508-

25 Local Rule 37 letter mentioned them and Apple intended to wait ten days to
respond to that letter.  We explained that the issues we were trying to discuss were
covered by Apple's own March 17 letter and our March 23 response, not just our
separate March 25 Local Rule 37 letter.

Rather than discuss all aspects of Apple's own letter, Apple demanded that Plaintiffs
preemptively agree to Apple's demand to search just twelve Apple custodians.  Your
email below argues that, because both parties will eventually search at least 12
custodians, Plaintiffs should select 12 Apple custodians now.  But Apple is refusing to
provide the information that would be necessary for Plaintiffs to make an informed
decision even as to 12 custodians, including hit counts for all custodians and search
terms.  Such information is important to target and prioritize ESI discovery.  For
example, hit counts would help Plaintiffs better understand the relevance of various
Apple custodians and prioritize its requests for ESI searching.  We also do not know
whether Apple will agree to search Tim Cook's files or whether it will agree to search
any of Plaintiffs' former employees other than O'Reilly.  Thus, these issues are
interrelated and cannot be isolated.  Indeed, Apple promised in the ESI stipulation that
it would discuss custodians <u>and</u> search terms in an attempt to reach an <u>overall
agreement</u>.  Apple's refusal to do so is unnecessarily delaying this process.

Apple's claim that it urgently seeks to "make progress" is belied by the many months in
which Apple refused to engage in any ESI discussions.   Apple's demand that Plaintiffs
select 12 custodians in the dark makes no sense in view of Apple's commitment to
provide the other information and engage in an overall discussion in the next few days.
Likewise, providing our position in writing in less than 24 hours can hardly be
considered "delay" or refusing to answer Apple's question by a "date certain."  We
simply need reasonable information, consistent with what we have been willing to
provide Apple, given Apple's refusal to search more than 12 custodians.

During the call, you stated that Apple will immediately proceed with twelve custodians
regardless of whether Plaintiffs agree.  While Plaintiffs maintain that Apple should
provide hit counts for <u>all</u> of Plaintiffs' custodians, nothing is preventing Apple from
running searches on whatever custodians it likes.  During the meet and confer, Apple
threatened to move the Court, but did not indicate what relief Apple seeks.  Even
though Local Rule 37-1 required Apple's letter to clearly identify "the terms of the
discovery order to be sought," Apple's letter did not do so.  Moreover, plaintiffs have
not placed an arbitrary limit on searching, and simply look to find an equitable
approach.  Plaintiffs also have not in any way refused to begin that process, which they
have already started.  As discussed above, nothing is preventing Apple from performing
searches on its own custodians.  Please clarify what relief Apple plans to seek from the
Court if the parties do not reach an agreement.

During the meet and confer, the parties also discussed (1) the type of documents
covered by ESI searching and (2) Plaintiffs search of the twelve custodians that Apple
identified.  On the first issue, Apple stated that it planned to search all files, including

Exhibit 67
-509-

messaging and chat logs, but that it envisioned the negotiated ESI search terms would apply only to email searching.  We responded that we would consider Apple's position and get back to you.  On the second issue, Plaintiffs again explained they never refused to search the twelve custodians that Apple identified.  To the contrary, we explained that we had already begun pulling files and would provide hit counts as soon as possible.  Apple demanded Plaintiffs provide a "date certain" as to when we would provide hit counts, while Apple could not provide a date certain itself when we asked the same question.  As we explained, Plaintiffs are working diligently to pull the data, process the data, and provide hit counts as soon as possible.  We likewise request hit counts from Apple.

Best regards,
Adam

**Adam Powell**
Partner

**858-707-4245** **Direct**

**Knobbe Martens**

From: Kaounis, Angelique <AKaounis@gibsondunn.com>
Sent: Monday, March 29, 2021 8:02 PM
To: Masimo.Apple <Masimo.Apple@knobbe.com>
Cc: *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
Subject: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We write to memorialize today's meet and confer call.  We are disappointed by Plaintiffs' refusal to agree to Apple moving forward with 12 custodians on each side, particularly in view of the fact that Plaintiffs have indicated they do intend to request that Apple search the ESI of the 12 custodians Apple has identified.  We are endeavoring in good faith to make progress, with the understanding that all parties reserve rights to seek additional custodians later, depending on the discovery that unfolds.   It is likewise disheartening that Plaintiffs cannot commit to providing a final answer to Apple's proposal to begin with 12 custodians by a date certain.  Your suggestion that we asked you for an "on the spot" answer is detached from the documented reality of the parties' discussions.  We presented this proposal to Plaintiffs on March 17, followed up on March 22 asking for a response to allow us to "move forward with ESI discovery immediately," reiterated this request on March 23, and then once again posed the same question on March 26.  In no way were you put on the spot today.  Accordingly, we renew our request that you let us know today—or tomorrow at the latest—whether Plaintiffs will agree to commence ESI discovery with the list of 12 custodians presented in Apple's March 17 letter.

Exhibit 67
-510-

We will respond in writing to the issues raised in your March 23 and March 25 letters later this week.  In the meantime, we need to move forward with an initial set of custodians.  Discovery is an iterative, collaborative process.  The fact that other issues remain to be decided does not justify Plaintiffs' delay.

Thanks,
Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

<Joint Stip re ESI Custodians.DOC>

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or

Exhibit 67
-511-

distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit 67
-512-

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

<2021-05-05 Letter to Andrea.pdf>

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 67
-513-

EXHIBIT 70

# Answering Your Questions about Legal Document Review

**BLOG**   October 10, 2019 by BIA | 9 min read



Back in 2017, we partnered with Emily Cobb from Ropes & Gray, LLC and the team at ACEDS to host a webinar covering the ins and outs of successful document review. It was a thoughtful, helpful discussion on strategies and tips for improving the document review process, and we covered a lot of ground during the one-hour program, from modern approaches to managed review, technology-assisted review (TAR), putting together a review team and more.

Attendees posed a lot of great questions and we shared them on the BIA Blog. Since managed review tools and strategies are always changing for the better, we thought it would be beneficial to refresh and re-share the Q&A to keep the discussion fresh and ongoing. We hope you find this information helpful!

Exhibit 70
-546-

# 1. What is the average rate of legal document review, per reviewer, on an hourly basis?

It all depends on the complexity of the legal document review protocol, really. Reviews with simple protocols and easy "yes" or "no" questions will go very quickly, but if your review project is highly complex, then the review rate will be slower.

For example, the average rate of legal document review for emails only, if you're only coding for responsiveness, could be anywhere from 70-80 documents per hour. However, if your reviewers are sifting through formulas in spreadsheets, you can expect them to spend a lot more time on each document, not only to review the information but to open the document in its native software. While some review platforms provide a decent spreadsheet view, the best way to view all the information in a spreadsheet is still to open it in Excel or Google Sheets. That means a reviewer may only look at 20-30 documents in an hour.

In general, assuming that reviewers are looking at a mix of documents that include some spreadsheets, most reviewers average 40-50 documents per hour.

# 2. When a law firm associate is overseeing an eDiscovery/managed legal document review project, what is the role of the project manager at the vendor or corporate client?

Put simply, the role of the project manager is to work with a law firm associate to keep him or her informed on the status of each step of the project, including document collection, processing, search results, review and production. In addition to providing reports and metrics on the case, the project manager is also there to troubleshoot any issues or facilitate things like complicated search term requests.

A project manager at the corporate client would be in a similar position. There's usually a point person at the corporation who takes the lead in facilitating data collections. During the webinar, our colleague and fellow presenter Emily Cobb pointed out that it's the law firm's neck on the line in terms of what's reported out. As such, it's the law firm associate that has the final say on most substantive issues.

Exhibit 70
-547-

We also did a previous webinar on the role of the eDiscovery project manager, which goes more in-depth, and can be seen here.

## 3. Does outside counsel need to do 100% of the quality control of documents reviewed by contract attorneys or the managed review vendor?

Generally speaking, no. Of course, that assumes that you have a reasonable level of confidence in the process, the people and the vendor. Whether done in-house with contract attorneys or outsourced to a vendor, quality results depend on a quality process from the outset. It helps to have an ongoing dialogue between the review team and counsel so there is a process to track questions asked and answered. This promotes consistency and quality in the review product.

Quality control in document review typically involves random samplings throughout the review process. If the review is being handled by a vendor's review team or contract attorneys, they usually have their own QC process, in addition to what outside counsel will do.

We suggest that the samplings happen more often and are more encompassing at the beginning of the process, looking at the results on an individual reviewer basis to get a sense of how accurately each person is coding. Also look to see if any problems are widespread, as this could mean the review protocol was not properly explained or understood.

It's also good to look at overturn reports, which show when document coding was overturned by the QC person. If there are patterns there – such as certain types of documents that get changed often, or if one reviewer's coding calls are overturned more regularly – you can gain insight into any potential issues and make adjustments as needed.

With a strong focus on quality, combined with both general and individual feedback addressing any quality concerns from the outset, you can help ensure that the overall process is a success. As that proceeds and you become comfortable with your reviewers and the protocols for that review project, the QC process can be scaled back a bit, but should still include random samplings of the entire document set throughout the review.

That said, there are certain documents for which we do recommend to have a 100% quality-check review, whether it's done by outside counsel or senior level reviewers at your vendor (or

Exhibit 70
-548-

a combination of both). At BIA, for example, we always make sure there is a second set of eyes from our team on all documents coded as privileged or "hot."

## 4. How has the quality control process matured over time with the "modern" approach? How can we best leverage technology to track errors, etc.?

Technology now allows us to more easily locate items that need to be quality controlled. For example, we utilize TAR technologies not just in review, but also in our QC processes, helping to quickly highlight any quality concerns. In the past, we would have had to go through the entire document review process before there were insights to pull. Now, we can quickly and easily glean valuable insights, such as specific areas of documents that need to be quality controlled.

## 5. What kind of supervision do you give to a first or second-year associate managing an eDiscovery/managed legal document review project?

We do give more training and support to people who are new to the process. We believe it is BIA's responsibility to our clients to make sure all associates – and really everyone involved – fully understand and are comfortable with the proven processes that we have established. We don't want anyone to fail.

## 6. Why do firms not utilize eDiscovery staff attorneys more?

This is an interesting question. Before BIA, I (Barry) worked at a law firm that managed document review projects with more than 160 contract attorneys on multiple projects. What we found was that having so many contract attorneys on multiple projects kept us from building institutional knowledge for a case or client. We changed that process to employ 10-11 staff attorneys and recruited out of our existing talent pool of 160+ contract attorneys.

Staff attorneys cost less because they're not on the partner track at a firm, but they still bill higher than contract attorneys – so there are two sides at play. But in general, staff attorneys *build cost-effective institutional knowledge*, and they provide consistent coding.

Exhibit 70
-549-

That's the same philosophy that we use at BIA with our Managed Document Review Services team, which provides the benefits of staff attorneys – including being cost-effective and maintaining institutional knowledge – with the ability for our clients to use our attorneys as needed like one would with a contract attorney review team.

## 7. Are there any quality issues with the per-doc model's incentive to get through legal document review quickly?

No, quite the opposite. With the per-document pricing model, the incentive is directly built into the model to get it right the first time around.

BIA's preferred practice is to bill per document versus per hour, as we find it's not only more predictable for the client, but easier for everyone to manage. We touched on this somewhat during the webinar, and it is discussed in more depth here.

Simply put, legal document review must be done accurately, or, regardless of how quickly it was done or how it was billed, it will have to be done again. Our per-doc model of review puts that burden where it should be – on us. If we don't maintain the highest quality, then documents will need to be re-reviewed, which negatively impacts our profit on the project. Thus, inherent in the very model is the incentive for quality from the outset.

BIA's well-designed process allows for reviewers to take the necessary time to code documents correctly the first time and includes both team management and our comprehensive quality control process all in one simple price. We are convinced of this model's effectiveness for several reasons, but our favorite is that not a single BIA client utilizing this model has ever looked back.

## 8. If the other party does not specify format can you produce in the format you deem reasonable?

Per the federal rules, the answer is yes. However, what one side deems reasonable isn't necessarily what the other side will agree upon. It's good to confirm – more than once – what the specified format will be, just to avoid any back-and-forth in court. It's not worth the money or time on either side to argue about the format. We suggest agreeing on an ESI production protocol at the outset of a matter to minimize ambiguity when completing productions.

Exhibit 70
-550-

# 9. How do you measure, monitor and track productivity and quality?

This is a good sum-up question. At BIA, we look at each individual reviewer's rate of review (documents per hour) and then measure speed, accuracy, the difficulty of the review material, amount of errors per set and time spent reviewing. Conducting these measurements gives us a good indication of how the review is going and points out areas for improvement, be that for an individual or an entire team.

Want to streamline your document review? Check out our webinar, **Document Review: The EDRM's Final Frontier**, that discusses how to approach, plan for and execute a successful document review.

Want to learn about using analytics in document review? In our recent Practical Uses of Brainspace webinar, we discuss how we leverage their technology to deliver unparalleled accuracy and cost savings to our Managed Document Review offering.

Exhibit 70
-551-

EXHIBIT 71

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Ilissa Samplin
Direct: +1 213.229.7354
Fax: +1 213.229.6354
ISamplin@gibsondunn.com

May 10, 2021

VIA E-MAIL

Adam B. Powell
Knobbe, Martens, Olson & Bear, LLP
12790 El Camino Real, Suite 100
San Diego, CA 92130
Adam.Powell@knobbe.com

Re:     *Masimo Corp. et al. v. Apple, Inc.*, C.A. 8:20-cv-00048 (C.D. Cal.)

Dear Adam:

I write in response to your letter dated May 5, 2021.

**Reasonable Searches for Responsive Documents:**   This sentence from your letter is
confusing and contradictory:  **"**Even if Apple asserts documents can only 'practically' be
obtained through ESI searching, Plaintiffs believe Apple has an obligation to search for such
documents even if they are not included in the ESI custodian/search terms that the parties are
discussing."   Of course, if Apple's position is that the documents can only practically be
identified through ESI searching, then Apple is relying on ESI searching to locate any
responsive documents that exist.   Apple is searching non-custodial files where it can identify
non-custodial sources of data of relevance to particular document requests.   Apple is not aware
of any precedent for Plaintiffs' seeming suggestion that Apple conduct a search of non-
custodial files for every single RFP at issue in this case.   We suspect that Plaintiffs are not
doing that either.   If it would be helpful to talk through this on a meet-and-confer call, we are
available to do so.

**Specific RFPs**

- **RFPs 47-49:**   In view of the Court's Order granting Apple's Motion to Stay, RFPs 47-49,
which relate to Plaintiffs' patent infringement allegations, are moot and thus Apple is not
obligated to respond with respect to these RFPs at the present time.

- **RFP 50:**   With respect to Plaintiffs' request for samples of the Apple Watch Series 3,
Apple Watch Series 6, and Apple Watch SE, Apple's means of purchasing these products
are the normal retail channels equally available to Plaintiffs.   Plaintiffs are thus equally
capable of purchasing these products.   With respect to the Original Apple Watch, the Series
1 Watch, the Series 2 Watch, the Series 4 Watch, and the Series 5 Watch, Apple looked
into the matter and determined that it is unable to obtain samples.

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

Exhibit 71
-552-

**GIBSON DUNN**

Page 2

- **RFPs 80, 81, 161:**  As I stated in my May 5 email, Apple has offered to conduct a reasonable search of its complaint database if Plaintiffs propose a reasonable number of simple search terms.  Apple does not know what Plaintiffs are looking for in the complaint database—indeed, in Apple's view, the complaint database is unlikely to have any information relevant to this case. Plaintiffs are requesting the data and presumably therefore know what they hope to find in the database.  It therefore makes the most sense for Plaintiffs to propose a handful of simple search terms. Your statement about Apple having superior knowledge of how the complaint database works is beside the point—because such knowledge is not instructive for purposes of crafting search terms, as it does not provide Apple with any information about the substance of the complaints in the database, which is what the search terms would be searching.  Please provide a reasonable list of simple search terms if you want Apple to fulfill Plaintiffs' request of querying the complaint database.

- **RFP 222:**  Apple accepts Plaintiffs' revision, and therefore will produce non-privileged, documents in Apple's possession, custody, or control, that are responsive to the following revised iteration of RFP 222, to the extent such documents exist and can be located following a reasonable search:

  > All documents and things in Apple's possession, custody, or control that refer or relate to any Former Employee **(1)** obtaining~~, or~~ accessing, ~~or transferring,~~ any documents, data, files or information from Masimo or Cercacor, including from any of Masimo's or Cercacor's computers, Computer Media, networks, or databases, after the Former Employee left Masimo or Cercacor **or before leaving for purposes of taking it with them, or (2) downloading or transferring any documents, data, files or information from Masimo or Cercacor, including from any of Masimo's or Cercacor's computers, Computer Media, networks, or databases**.

- **RFP 227:** After much attention to this issue, Apple has figured out how to search the "company" metadata field to which you have referred.  It is not a field that Apple searches and produces in the regular course, which was the cause for the confusion, but we have determined that it is a field that Apple is able to retrieve—and Apple has done so for purposes of this case.  Apple will search the field for "Masimo" and "Cercacor" within the agreed-upon custodians' files and produce all responsive documents that exist.

Exhibit 71
-553-

**GIBSON DUNN**

Page 3

- **RFP 228:**   Apple will not search for or produce devices in its employees' personal possession.  As previously explained, Apple's employees' personal devices are not within Apple's possession, custody, or control.  *See, e.g.*, *Goolsby v. Cty. of San Diego*, 2019 WL 3891128, at *4 (S.D. Cal. Aug. 19, 2019) (denying motion to compel production of personal devices); *Cotton v. Costco Wholesale Corp.*, 2013 WL 3819974, at *6 (D. Kan. July 24, 2013) (denying discovery of employee text messages and emails where the text messages and emails were not issued by the employer or used for a business purposes).  The cases cited in your May 5 letter do not compel a different conclusion.  The plaintiffs in *A. Farber & Partners, Inc. v. Garber* moved to compel supplemental responses from defendant businessman to their "almost 200 document requests."  234 F.R.D. 186, 187 (C.D. Cal. 2006).  The court found that the defendant had failed to conduct a "reasonable inquiry" where he produced approximately 666 pages of documents and no records from the "several telecommunications companies, financial institutions, and governmental entities with which he, his various business enterprises, and his counsel ha[d] dealings."  234 F.R.D. at 189 (ordering defendant conduct a "reasonable inquiry," make a supplemental production of documents, and "provide plaintiff with declarations or affidavits detailing the nature of [defendant's] 'reasonable inquiry' to locate responsive documents, and such declarations must address the inquiry he made on a request-by-request basis").  We see no relevance to the personal devices of Apple's employees.  And in *Toranto v. Jaffurs*, the court found that the defendant university had an obligation to "search the *work email addresses* of individuals potentially having responsive documents."  2018 WL 4613149, at *3 (S.D. Cal. Sept. 26, 2018) (emphasis added).  Apple is searching the work email addresses of relevant employees; it has no obligation to search—and no possession, custody, or control over—those employees' personal devices or emails.

Sincerely,

*[signature]*

Ilissa Samplin

Exhibit 71
-554-

EXHIBIT 72

| From: | Adam.Powell |
|---|---|
| To: | Andrea, Brian; Perry.Oldham |
| Cc: | Masimo.Apple; Karina.Villanueva; *** Apple-Masimo; Lerner, Joshua H.; Lyon, H. Mark; Buroker, Brian M.; Samplin, Ilissa; Kaounis, Angelique; Rosenthal, Brian A. |
| Subject: | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery |
| Date: | Wednesday, February 24, 2021 11:56:36 AM |

Brian,

We have been working on search terms for Oetting, but Apple's document productions are revealing additional information about non-common terms that Apple uses in its documents.  We are adjusting our search terms in light of Apple's recent document productions and will get back to you as soon as we can.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, February 17, 2021 12:23 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Adam,

Please let us know when you anticipate sending your proposed search terms.  We will review them when we get them and run them on Mr. Oetting's emails.  If a reasonable number of hits comes back, we will proceed with reviewing those hits and get them produced as quickly as we can.  However, if the terms you propose result in an unreasonable number of hits, that will require back and forth between the parties that would extend the process.

In short, we anticipate that this entire process should take only a few weeks, and that we would be in a position to produce the relevant documents that come up from the searches approximately two-three weeks after agreeing to the terms, dependent of course on the volume of hits that need to be reviewed.   We would then schedule Mr. Oetting's deposition as soon after that as practicable, with sufficient time for Plaintiffs to review the documents before the deposition.

Thanks,

Exhibit 72
-555-

Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Sunday, February 14, 2021 6:39 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva
<Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner,
Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian
M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique
<AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

[External Email]
Brian,

Thank you for your email.  As we explained below,  we never refused short postponements and have
already agreed to several such postponements.  Thus, your claim that Plaintiffs "so urgently need to
take Mr. Oetting's deposition now" is not correct.  We have been asking for Mr. Oetting's deposition
for months because we are trying to move discovery forward.  Regardless, thank you for providing
Apple's position.  As we have explained, we cannot agree to Apple's two conditions that it imposed
on this deposition.

We appreciate your offer to prioritize Mr. Oetting's document production and will send you our
proposed search terms.  Since Apple indicates that only a short postponement should be necessary,
please provide some dates when Apple can commit to having already produced Mr. Oetting's
documents with sufficient time for us to review them before his deposition.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Thursday, February 11, 2021 2:42 PM

Exhibit 72
-556-

**To:** Adam.Powell <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Adam,

As a follow up to the email below, and in an effort to speed up the document collection/review/production process for Mr. Oetting's documents, Apple is willing to consider discussing search terms for Mr. Oetting's ESI now, before we conclude our discussions regarding other ESI custodians.  This would help reduce the length of time we would need to postpone Mr. Oetting's deposition so that you can have all of his documents before the deposition.  Please let us know if that is something that Plaintiffs are interested in pursuing, and if so, please send us a list of proposed search terms so that we can review.

Thanks,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Andrea, Brian
**Sent:** Wednesday, February 10, 2021 11:02 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Dear Adam,

We suggest that the parties have a discussion about these issues rather than continue to exchange correspondence stating the same thing.  Perhaps we can plan to discuss during the meet and confer on Friday?

**Exhibit 72
-557-**

We have given you Apple's position multiple times.  Plaintiffs have not provided any explanation as to why they so urgently need to take Mr. Oetting's deposition now, when postponing it a couple weeks will allow the parties to complete the ESI negotiations and production and ensure that the parties receive a ruling from the Court on the pending dispute over Plaintiffs' discovery responses regarding the very allegations about which Plaintiffs seek to question Mr. Oetting.  Based on the limited information Plaintiffs have provided regarding their desire to take Mr. Oetting's deposition now, it is Apple's position that it will only agree to move forward with Mr. Oetting's deposition on February 22 if Plaintiffs agree that (1) they will not seek a second deposition of Mr. Oetting based on the fact that ESI documents are produced after February 22 and (2) Plaintiffs will provide supplemental responses to Apple's interrogatories requested in the pending motion to compel well in advance of the deposition.

To be clear, Apple is willing to reconsider its position if Plaintiffs provide an explanation as to why they would like to take the deposition now as well as what prejudice Plaintiffs would suffer if the deposition is postponed for a couple weeks, particularly in view of the fact that a postponement would achieve both parties' stated goals.  As I noted in my earlier email, a postponement would achieve Plaintiffs' goal of having all of Mr. Oetting's documents before the deposition and would achieve Apple's goals of avoiding a second deposition and getting a ruling on the pending motion.

Thanks,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, February 9, 2021 11:53 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

[External Email]
Brian,

Exhibit 72
-558-

We believe the record is clear and speaks for itself.

In addition, we never refused short postponements of Mr. Oetting's deposition.  We have agreed to several postponements and have discussed this issue with Apple in good faith for months now.  We are trying to ascertain Apple's current position, but Apple has not answered our question as to whether Apple is refusing to produce Mr. Oetting unless Plaintiffs agree to (1) not seek a second deposition and (2) provide updated contentions before the deposition.  Apple's position on this is relevant, regardless of timing.  Please answer our question so that we can assess whether court assistance will be required.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Monday, February 8, 2021 8:35 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Adam,

Your email completely misrepresents the discussions between the parties regarding Mr. Oetting's deposition and ESI discussions, as well as Apple's positions.

With respect to Apple's document production, your email insinuates that Apple has not produced "patent ownership documents."  To the contrary, Apple has produced thousands of documents, many of which relate to the Apple "Disputed Patents."  We have outlined the documents that Apple produced many times previously, and have recently made two productions that include additional technical documents beyond what Apple produced previously.  Indeed, we have been producing, and will continue to produce, Mr. Oetting's documents as they are reviewed and will have all of his relevant, non-privileged documents produced before February 22 except for emails for which the parties will be negotiating search terms in the coming weeks.  As noted in my previous email, we do not believe it is feasible for the parties to complete this process and produce Mr. Oetting's documents prior to February 22.   Apple did not delay this process—Plaintiffs delayed the process by refusing to even discuss appropriate limits on ESI custodians before exchanging lists.  As you know,

Exhibit 72
-559-

Apple provided a proposal regarding an appropriate number of custodians (at Plaintiffs' request) back in December; Plaintiffs never responded to that proposal and insisted that the parties should exchange custodians without any discussion as to the appropriate number of custodians. Plaintiffs' joint stipulation sent recently was the first time Plaintiffs had provided their thoughts on the custodians from whom they intend to seek ESI.   And, as you know, once Plaintiffs provided that information, Apple agreed to exchange custodians.  Had Plaintiffs provided that information back in December when Apple requested it, the ESI discussions could be complete by now.

Apple also has not "chang[ed] its position as to whether it will allow the deposition to go forward." Apple's position is, and has always been, that multiple depositions of Mr. Oetting would be inappropriate and that Plaintiffs should be required to provide information about their correction of inventorship allegations prior to a deposition of an inventor on the patents for which Plaintiffs seek to correct inventorship.  Your email misconstrues the timeline of the parties' discussions.  Plaintiffs initially noticed Mr. Oetting's deposition for the latter part of December which, as we explained at the time, coincided with Apple's annual shutdown at the end of December.  Apple then offered a date in January, but Plaintiffs asked to push the date until February.

At least two relevant things have happened since Apple agreed to provide Mr. Oetting for a deposition.  First, Plaintiffs have demanded that Apple produce all of Mr. Oetting's documents before the deposition.  As discussed above, that is not feasible.  Second, Plaintiffs made clear that it is their position that they don't have to provide factual information supporting their own allegations until after they take discovery from Apple about those allegations.  Your email below, and your supplemental brief filed last week, confirm that is Plaintiffs' position.  Apple disagrees, as we have made very clear.  Apple is entitled to basic information regarding Plaintiffs' allegations before Mr. Oetting's deposition so that we can properly prepare the witness.

Accordingly, Apple's position is that both parties' objectives can be achieved by postponing Mr. Oetting's deposition for a couple weeks, which will avoid wasting the resources of the parties and Mr. Oetting's time.  For example, postponing the deposition will ensure that Plaintiffs have all of Mr. Oetting's documents, including ESI, prior to the deposition, negating Apple's concern that Plaintiffs will argue that they get a second deposition after production of Mr. Oetting's ESI.  Postponing the deposition will also allow the Court to rule on the pending joint stipulation and, if the Court agrees with Apple, Plaintiffs can provide the requested discovery prior to the deposition.   It is unclear why Plaintiffs would not agree to a short postponement, and Plaintiffs have not provided any explanation as to why they so urgently need to take Mr. Oetting's deposition now.

Thanks,
Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306

Exhibit 72
-560-

Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, February 4, 2021 9:06 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

[External Email]
Brian,

We do not believe it is appropriate for Apple to use its own failure to produce documents to delay depositions.   Plaintiffs have been asking Apple to produce patent ownership documents for months and first requested this deposition on November 18.  On December 6, we explained that "Apple should have produced documents months ago and can still produce documents before the deposition."  We have also been asking Apple to exchange ESI custodians since October 1.  Only after we served a joint stipulation did Apple finally agree to exchange custodians as required by the ESI Order.   Please inform us when you expect to produce Mr. Oetting's documents.

Apple also appears to be changing its position as to whether it will allow the deposition to go forward.  Apple initially refused to allow the deposition unless Plaintiffs agreed not to seek a second deposition.  Seven weeks ago, Apple agreed the deposition would go forward subject to its intent to object to a second deposition.  Since then, the parties exchanged scheduling emails and eventually agreed on a date that worked for everyone.  Now, Apple appears to be again refusing to present the witness unless Plaintiffs agree not to seek a second deposition.

Finally, Apple has provided no basis for its new claim that it need not produce ownership/inventorship discovery until after Plaintiffs provide contentions that Apple deems sufficient.  We are aware of no authority supporting this position.  To the contrary, courts routinely hold that detailed contentions are best provided after substantial discovery occurs.

Please confirm whether Apple is now refusing to proceed unless Plaintiffs agree to the conditions you have imposed.

Best regards,
Adam


**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

Exhibit 72
-561-

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Monday, February 1, 2021 6:05 AM
**To:** Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Perry,

Thanks for your response.

As we previously made clear, Apple is not willing to put Mr. Oetting up for deposition twice and Apple agrees that this deposition should not occur until after Mr. Oetting's documents have been produced.  As you know, the parties have agreed to exchange a list of ESI custodians next Friday (February 5) and Apple intends to identify Mr. Oetting as a custodian.  Once the parties have agreed on the list of custodians, we will work on negotiating search terms.  We do not believe it is feasible for the parties to complete this process and produce Mr. Oetting's documents prior to  February 22.

Moreover, Plaintiffs' portion of the joint stipulation filed yesterday makes clear that Plaintiffs have no intention of providing any additional information about their correction of inventorship/ownership allegations prior to February 22.  As you know, Apple does not believe it is fair or proper for Plaintiffs to refuse to provide basic information about their allegations while demanding discovery from Apple regarding those allegations.

For both of these reasons, we believe Mr. Oetting's deposition should be postponed until after (1) the parties agree on search terms and all of Mr. Oetting's documents have been produced; and (2) the Court resolves Apple's motion to compel filed yesterday.  This will ensure both parties have all of the information they require to prepare for the deposition and avoid any need to seek a second deposition of Mr. Oetting down the road.  If, however, Plaintiffs would like to proceed with Mr. Oetting's deposition on February 22, please confirm that Plaintiffs will not seek a second deposition of Mr. Oetting even if Mr. Oetting's ESI documents are produced after February 22 and that Plaintiffs will provide supplemental responses to Apple's Interrogatory Nos. 4, 5, and 23 within the next week.  Please let us know how you would like to proceed.

Thanks,
Brian

**Brian Andrea**

GIBSON DUNN

Exhibit 72
-562-

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Perry.Oldham <Perry.Oldham@knobbe.com>
**Sent:** Thursday, January 28, 2021 9:40 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

[External Email]
Brian,

Please reserve that date for Mr. Oetting's deposition.  We expect Apple will provide Mr. Oetting's documents reasonably in advance of the deposition.

Thanks,

Perry

**Perry Oldham**

Partner

949-721-2961

## Knobbe Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, January 22, 2021 3:42 PM
**To:** Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Perry,

Exhibit 72
-563-

Mr. Oetting is available for deposition on February 22.  As his calendar fills up rather quickly, please let us know if this date works for you as soon as possible.

Thanks,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Thursday, January 14, 2021 5:58 PM
**To:** Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Perry,

Mr. Oetting indicated that he is not available in the first week of February.  We have asked him to provide us some dates in February that he is available and we will let you know as soon as we hear back from him.

Thanks,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Perry.Oldham <Perry.Oldham@knobbe.com>
**Sent:** Thursday, January 14, 2021 4:55 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; Adam.Powell <Adam.Powell@knobbe.com>

Exhibit 72
-564-

**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

[External Email]
Hi Brian,

Can you please let us know Mr. Oetting's availability in the first week of February?

Best regards,

Perry

**Perry Oldham**
Partner
949-721-2961
**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, December 23, 2020 10:44 AM
**To:** Perry.Oldham <Perry.Oldham@knobbe.com>; Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Hi Perry,

We did not ask Mr. Oetting for his availability in February, but we will inquire.

Thanks, and happy holidays,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220

Exhibit 72
-565-

BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Perry.Oldham <Perry.Oldham@knobbe.com>
**Sent:** Tuesday, December 22, 2020 3:47 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>; Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

[External Email]
Brian,

Is Mr. Oetting available the first week in February?

Thanks,

Perry

**Perry Oldham**
Partner
949-721-2961
**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Thursday, December 17, 2020 7:30 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Adam,

Wolf Oetting is available for a deposition by video conference on January 20, 21, or 22, 2020.  We reiterate our position that taking Mr. Oetting's deposition at this stage of the case is premature, particularly if Plaintiffs' intend to identify Mr. Oetting as an ESI custodian.  Should Plaintiffs pursue Mr. Oetting's deposition now, and seek a second deposition of Mr. Oetting later in the case, Apple will oppose a second deposition.

Please let us know how Plaintiffs would like to proceed.  I note that Mr. Oetting has limited

Exhibit 72
-566-

availability, so we would appreciate confirmation as to whether you intend to proceed, and on what
date, as soon as possible.

Thanks, and best regards,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Sunday, December 6, 2020 4:36 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; Karina.Villanueva
<Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner,
Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian
M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique
<AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

[External Email]
Dear Brian,

We understand it is Apple's position that Apple will not make Mr. Oetting available more than once.
However, Plaintiffs cannot agree in advance that Apple' position is appropriate.  The parties should
discuss and resolve that issue if it arises.  We also disagree with Apple's position that this deposition
is premature because of Apple's own failure to produce documents, such as patent ownership
documents.  Apple should have produced documents months ago and can still produce documents
before the deposition.  Apple also objects based on Section 2019.210, but Plaintiffs provided a
sufficient Section 2019.210 statement and, regardless, Apple cannot rely on Section 2019.210 to
preclude all fact discovery.  Apple further objects on the ground that Plaintiffs have not provided
30(b)(6) topics, but Plaintiffs need not provide 30(b)(6) topics to depose an individual.  Finally, your
email states that Mr. Oetting will not be available until January because Apple "shuts down at the
end of December."  But that does not justify Apple refusing to provide a deposition date at any time
during December.  Please provide Mr. Oetting's availability for a deposition in December.

Best regards,
Adam

**Adam Powell**
Partner

**Exhibit 72**
-567-

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Monday, November 30, 2020 6:06 AM
**To:** Karina.Villanueva <Karina.Villanueva@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

Counsel,

We have received and reviewed your notice to take the deposition of Wolf Oetting.  As an initial matter, we note that your request is premature given that we have not produced documents from Mr. Oetting and Plaintiffs have not provided a list of 30(b)(6) topics or a sufficient Section 2019.210 statement.  Apple will not make Mr. Oetting available more than once, so if Plaintiffs would like to proceed now, we will need your agreement that you will not pursue a second deposition of Mr. Oetting later in the case.

If you would like to proceed, we will work on getting Mr. Oetting's availability for a deposition.  Please note that Apple shuts down at the end of December, so we do not anticipate him having availability until January at the earliest.

Best regards,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Karina.Villanueva <Karina.Villanueva@knobbe.com>
**Sent:** Wednesday, November 18, 2020 5:41 PM
**To:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>

Exhibit 72
-568-

**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Discovery

[External Email]
Counsel,

Attached please find Plaintiffs' Notice of Deposition of Wolf Oetting. Please note, Plaintiffs selected December 14 as the deposition date, but are of course willing to make reasonable accommodations based on Mr. Oetting's schedule."

Best,

**Karina Villanueva**
Litigation Paralegal
Karina.Villanueva@knobbe.com

949-721-2928 **Direct**

**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 72
-569-

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit 72
-570-

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 72
-571-

# EXHIBIT 73

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Ilissa Samplin
Direct: +1 213.229.7354
Fax: +1 213.229.6354
ISamplin@gibsondunn.com

May 21, 2021

<u>VIA E-MAIL</u>

Alan G. Laquer
Knobbe Martens
2040 Main Street
Irvine, CA  92614

Cheryl T. Burgess
Knobbe Martens
2040 Main Street
Irvine, CA  92614

Re:     *Masimo et al. v. Apple Inc.*, C.A. 8:20-cv-00048-JVS-JDE (C.D. Cal.)

Dear Alan and Cheryl:

I am writing in response to your emails sent the evening of May 19, 2021, regarding
deposition scheduling, and to address the current case schedule dispute between the parties.

Plaintiffs' proposal of an interim stay while motions about the case schedule are briefed does
not work because, as we noted previously, the parties have no power to effect their own stay
of the case—particularly one that would cause them to fall out of compliance with the
Court's Scheduling Order.  Indeed, in response to the stay proposal, Judge Early yesterday
commented that he has no power to change the schedule either.  Accordingly, we recommend
that the parties agree to interim dates for the exchange of ESI discovery parameters,
scheduling of depositions, substantial completion of document discovery, and depositions—
so that we continue to move forward with progressing the case in view of the current
Scheduling Order by which all parties are presently bound.  To the extent Plaintiffs intend to
continue to object to my May 12 declaration after Judge Early's comments yesterday, we
also need to immediately discuss that dispute so that we can resolve the question of remote
depositions.  We are available today or over the weekend to discuss a mutually agreeable
schedule and any remaining remote deposition issues.  **Please provide Plaintiffs'
availability as soon as possible.**

With respect to your emails about depositions, Plaintiffs certainly are free to move forward
with depositions of Apple witnesses as soon as they would like to do so.  But, as Judge Early
made clear at yesterday's hearing, Plaintiffs will do so at the risk of not getting a second

Exhibit 73
-572-

# GIBSON DUNN

Alan G. Laquer
Cheryl T. Burgess
May 21, 2021
Page 2

deposition if documents pertaining to those deponents are produced later.  Apple does not
intend to make its witnesses available for deposition more than once.  You have indicated
that Plaintiffs will take the same position with respect to their deponents (who you are
offering for deposition *before* production of their documents).  That is why we believe it is
most efficient for both sides to come up with a schedule for the case that sets dates for the
exchange of ESI discovery parameters, substantial completion of document production, and
Plaintiffs' 30(b)(6) notice, in advance of a deadline for fact depositions.

## Mr. Laquer's Email Regarding Plaintiffs' Requested Depositions

Mr. Laquer's email mischaracterizes the parties' prior correspondence, and ignores the fact
that Apple has already made its position on scheduling abundantly clear.  Contrary to Mr.
Laquer's suggestion that Plaintiffs previously accepted the deposition dates for Apple's
custodians that Apple provided on April 29 (nearly 3 weeks ago), Plaintiffs have only stated
that Apple should "reserve all of the dates" pending the outcome of the parties' dispute based
on Plaintiffs' unwillingness to take Apple's depositions remotely.[1]  As Apple informed
Plaintiffs, however, Apple's witnesses are unable to indefinitely keep dates open on their
calendar, and thus Apple requested multiple times that Plaintiffs confirm the dates.
***Plaintiffs did not do so until Mr. Laquer's email earlier this week***.

Furthermore, Mr. Laquer's email makes clear that Plaintiffs have no intention of serving
Apple with their 30(b)(6) notice prior to these depositions, despite Apple's repeated requests
for Plaintiffs' notice before Apple puts its witnesses up for deposition and despite the fact
that Apple already served its 30(b)(6) notice to afford Plaintiffs that courtesy.  As we have
explained multiple times, many of Apple's witnesses are likely to be corporate designees in
this case and Apple is not willing to make its deponents available more than once.  Apple
therefore has reasonably requested Plaintiffs' 30(b)(6) topics, so that it can prepare the
appropriate corporate designees who have also been designated in their individual capacities.
Plaintiffs have refused.  If Plaintiffs insist on taking the noticed depositions prior to
providing their 30(b)(6) topics, Apple will reserve the right to designate their deponents'
deposition testimony as Apple's 30(b)(6) testimony after Plaintiffs serve their 30(b)(6)

---

[1]  Plaintiffs have taken the position that "Apple's application was denied" for each of the 11
deponents that are the subject of my May 12 declaration.  Judge Early did not endorse
Plaintiffs' position at yesterday's conference.  Plaintiffs' position following the
conference is not yet clear to Apple.  And if Plaintiffs continue to insist that "Apple's
application was denied" despite the discussion at yesterday's hearing, it is further unclear
to Apple whether Plaintiffs are expecting that Apple will continue to keep all dates open
while the dispute about my declaration is resolved.

Exhibit 73
-573-

**GIBSON DUNN**

Alan G. Laquer
Cheryl T. Burgess
May 21, 2021
Page 3

topics.  In view of Plaintiffs' unwillingness to agree that they will not seek second
depositions from Apple's witnesses, even if the witnesses' documents are produced after
their deposition, Apple cannot agree to make its witnesses available for deposition at this
time.

**Ms. Burgess' Email Regarding Apple's Requested Depositions**

Ms. Burgess' email similarly mischaracterizes the parties' correspondence and seeks to place
conditions on Apple's ability to depose Plaintiffs' deponents.  Ms. Burgess' email offers—
*for the first time*—dates for Plaintiffs' deponents, starting as early as next week.  We have
been asking for dates for weeks.  It is unreasonable of Plaintiffs to provide one-weeks' notice
for these deponents.  Ms. Burgess' email also makes clear that Plaintiffs will not be
providing documents for their deponents prior to the dates Plaintiffs are offering for
deposition, and that if Apple wants to take the depositions on the proposed dates, it must
agree not to seek second depositions of those witnesses.  In other words, Apple must forego
its right to take depositions of Plaintiffs' witnesses with the benefit of Plaintiffs' documents.
These conditions are unreasonable; Apple will not accept Plaintiffs' attempt to impose such
conditions.

We are also compelled to address Ms. Burgess' attempt to equate Plaintiffs' conditions on
Apple taking Plaintiffs' depositions to the vastly different situation that was presented with
respect to Plaintiffs' attempt to depose Wolf Oetting seven (7) months ago.  On November
18, 2020, Plaintiffs noticed Mr. Oetting—and only Mr. Oetting—for deposition.  In response,
Apple stated that taking Mr. Oetting's deposition on the date noticed would be premature
given the stage of the case.  Indeed, Apple had not yet produced Mr. Oetting's documents or
ESI, and Plaintiffs had not yet provided their 30(b)(6) notice.  Apple also noted that Mr.
Oetting was not available on the date Plaintiffs noticed due to Apple's annual company-wide
shut down the final two weeks of December.  Nonetheless, Apple offered to make Mr.
Oetting available for deposition on January 20, 21, or 22, but made clear that it would object
to any efforts to take Mr. Oetting's deposition a second time in view of the fact that the
parties had not yet completed their document productions.  In other words, Plaintiffs could
choose to take Mr. Oetting's deposition knowing that his documents had not been
produced—which was their prerogative—but they could not secure a second bite of the apple
later having made that choice to proceed early.  Plaintiffs then asked if Mr. Oetting could
instead be available in February, and Apple offered February 22.  Plaintiffs next demanded
that Apple produce all of Mr. Oetting's documents prior to his deposition.  Apple agreed to
do so on February 8, and did in fact produce all of Mr. Oetting's documents, with the
exception of ESI, prior to February 22.  With respect to ESI, Apple offered on February 24 to
prioritize searching and producing Mr. Oetting's ESI if Plaintiffs provided search terms that

Exhibit 73
-574-

**GIBSON DUNN**

Alan G. Laquer
Cheryl T. Burgess
May 21, 2021
Page 4

they wished to apply to the ESI.  Plaintiffs responded a week later that they were "adjusting
[Plaintiffs'] search terms," but Apple did not hear again from Plaintiffs until March 12, when
Plaintiffs provided search terms for nearly 50 custodians.

In short, the record is clear that Apple was more than willing to produce Mr. Oetting's
documents—including ESI—prior to his deposition in order to avoid a later request by
Plaintiffs to take his deposition a second time.  Apple expects that Plaintiffs will do the same
for the individuals Apple seeks to depose.

**The Parties Need to Set a Schedule That Will Allow Discovery to Move Forward Now**

Apple is eager to move discovery forward now and, as we have made clear, we are willing to
work with Plaintiffs to come up with a sensible schedule with that goal in mind.  In
particular, as I note above, we are available today or over the weekend to discuss an interim
schedule while briefing on the Scheduling Order is pending, so that the parties can continue
to work towards progressing this case under the current Schedule Order by which they are
bound.

With respect to the parties' dispute about an extension of the Scheduling Order, Apple
provided Plaintiffs with the following proposed amended schedule that would allow both
parties to take depositions with full knowledge of each other's 30(b)(6) topics as well as
documents (including ESI) for all deponents:

Exhibit 73
-575-

# GIBSON DUNN

Alan G. Laquer
Cheryl T. Burgess
May 21, 2021
Page 5

| Event | Current Deadline | Proposed Deadline |
|---|---|---|
| Plaintiffs serve 30(b)(6) notice | N/A | May 19, 2021 |
| Final ESI search terms | N/A | June 4, 2021 |
| Deposition schedule set | N/A | June 11, 2021 |
| Substantial completion of document production | N/A | June 25, 2021 |
| Discovery cut-off | July 5, 2021 | July 5, 2021 (except depositions) (includes cut-off for motions to compel) |
| | | August 13, 2021 (depositions only) |
| Opening expert reports | Sept. 6, 2021 | October 27, 2021 |
| Rebuttal expert reports | Oct. 18, 2021 | December 8, 2021 |
| Expert discovery cut-off | Dec. 6, 2021 | December 22, 2021 |
| Law and Motion– motions filed no later than | Jan. 10, 2022 | January 24, 2022 |
| Law and Motion cut-off | Feb. 7, 2022 at 1:30 pm | February 14, 2022 at 1:30 pm |
| MILs | Feb. 14, 2022 | |
| Pretrial documents | Mar. 7, 2022 | |
| Final pretrial conference | March 21, 2022 | |
| Trial | Apr. 5, 2022 | |

Plaintiffs have not provided any proposal that would allow the parties to move forward with scheduling and taking depositions any time in the near future.  To the contrary, in response to Apple's proposal, Plaintiffs proposed that the parties agree to extend the discovery cut-off deadline 90 days after the final IPR decisions.[2]  In other words, Plaintiffs' proposal seeks to extend discovery until at least the summer of 2022 and, with any appeals from the IPRs, potentially well into 2023.  Such a proposal is clearly not intended to allow for discovery to proceed expeditiously now, and would result in a trial date in 2023 or 2024 at the earliest. We urge Plaintiffs to reconsider Apple's proposal.

---

[2]  Plaintiffs have also rebuffed Apple's proposal to include firm deadlines for Plaintiffs to serve their 30(b)(6) notice, negotiate ESI search terms, set a deposition schedule, and substantially complete document production.

Exhibit 73
-576-

**GIBSON DUNN**

Alan G. Laquer
Cheryl T. Burgess
May 21, 2021
Page 6


We look forward to hearing from you as soon as possible about Plaintiffs' availability to meet and confer today or over the weekend.

Sincerely,

Ilissa Samplin

Exhibit 73
-577-

# EXHIBIT 75

# Knobbe Martens

KNOBBE,MARTENS,OLSON & BEAR,LLP

12790 El Camino Real, Suite 100, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

February 19, 2021

**VIA EMAIL**

Ilissa Samplin
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Ilissa:

We write in response to your letter of February 11, two emails on February 15, and our conference of counsel on February 16 and 17.

**RFPs 61-62, 88, 123-125, 130-132, 136-145, and 147**

Apple indicated it was producing responsive documents on a rolling basis, but declined to commit to a date by which it would make a substantial production other than to say in the "near future." Apple indicated it hoped this week it would produce all documents from Oetting other than documents gathered as a result of ESI search terms.

**RFPs 122 and 133-35**

For RFPs 122 and 135, Apple indicated it was producing documents on a rolling basis, but declined to commit to a date by which it would make a substantial production.

For RFP 135, Apple agreed it would produce public complaints from legal proceedings involving the Apple Watch "shortly."  Apple agreed Plaintiffs will consider RFP 134 after Apple produces public complaints.

**Apple's Document Production**

Apple indicated it was producing documents on a rolling basis, but declined to commit to a date by which it would make a substantial production.

Apple stated that it would produce the categories of documents contained in our prior December 30 letter subject to its prior objections on specific RFPs.  While Plaintiffs believe Apple has agreed to produce the requested documents based on its responses to our RFPs, Apple's hesitance to clearly state it will produce the requested documents makes us concerned that Apple is interpreting its prior commitment differently than we are.  Please clearly state whether Apple will produce each category of documents set forth in our December 30 letter.

**RFPs 207, 214–15, 223–33, 238–41, 244–46, and 248**

- **RFPs 214-15, 224-25**: Apple indicated it was producing documents on a rolling basis, but declined to commit to a date by which it would make a substantial production.

- **RFPs 207:** Subject to Plaintiffs' reservation of the right to later seek additional information, Plaintiffs agreed to Apple's proposal (limiting the RFP to "non-privileged documents sufficient to identify Apple's past and planned interactions with hospitals and individual hospital employees, representatives, and decision makers relating to 1) physiological monitoring, and 2) clinical trials or medical studies for Apple products").

- **RFPs 223, 228-229, 238**: With respect to O'Reilly and Lamego, Apple agreed to produce documents responsive to RFPs 223 and 228, agreed to let us know its position on RFP 229, and agreed to produce responsive documents concerning Apple for RFP 238. As for former employees other than Lamego and O'Reilly, Plaintiffs explained that they already identified the former employees of which they are aware in their list of ESI custodians. Apple agreed to identify any other former employees of which it was aware that are not listed on Plaintiffs' list of ESI custodians. Plaintiffs offered to search for and provide the dates that each individual left Plaintiffs if Apple will search for and provide the dates that each individual began working for Apple. Apple indicated it would get back to us. Plaintiffs asked if Apple would provide a brief explanation of what each individual did at Apple to help us determine whether we can limit the list of former employees. Apple again indicated it would get back to us.

- **RFP 226**: Apple agreed to produce responsive documents, but needed to determine how to search for such documents. Apple indicated it would get back to us on how it planned to search.

- **RFP 227**: We asked if Apple would let us know what type of software Apple uses for typical office documents (e.g., Microsoft Word, Apple Pages), and Apple indicated it would let us know. We also explained that native documents (as opposed to documents already processed by an e-discovery vendor) should contain all relevant metadata. Thus, Apple should be able to search the "company" (or similar) metadata field for native documents even if Apple itself does not typically include its name in the "company" metadata field and even if its e-discovery vendor does not typically process such data. Apple agreed to look into this issue.

- **RFP 230**: In addition to the former employees issue discussed above, the parties discussed whether Apple can exclude documents because Apple determines the documents themselves are not relevant to Plaintiffs' Section 2019.210 statement. Plaintiffs argued this RFP should not be so limited. Apple agreed to get back to us with its final position.

- **RFPs 231-233**: In addition to the former employees issue discussed above, Apple argued that these RFPs should be limited to "accused features." Plaintiffs offered to limit RFPs 231-232 to physiological monitoring and argued RFP 233 did not need to be further limited. Apple agreed on RFP 233 and offered to get back to us with its final position on RFPs 231-232.

- **RFPs 239**: Plaintiffs maintain this request is appropriate and need not be narrowed further. Apple disagreed and indicated the parties are at an impasse.

- **RFPs 240-41**: Plaintiffs maintain these requests are appropriate and need not be narrowed further. Apple disagreed and indicated the parties are at an impasse.

- **RFP 244**: Subject to Plaintiffs' reservation of the right to later seek additional information, Plaintiffs agreed to Apple's proposal (limiting the RFP to "non-privileged documents sufficient to identify Apple's past and planned interactions with hospitals and individual hospital

Exhibit 75
-585-

employees, representatives, and decision makers relating to 1) physiological monitoring, and 2) clinical trials or medical studies for Apple products"). Apple agreed.

- **RFP 245**: Plaintiffs maintain this request is appropriate and need not be narrowed further. Apple disagreed and indicated the parties are at an impasse.

- **RFP 246**: Subject to Plaintiffs' reservation of the right to later seek additional information, Plaintiffs agreed to Apple's proposal (limiting the RFP to "non-privileged documents sufficient to identify Apple's past and planned interactions with hospitals and individual hospital employees, representatives, and decision makers relating to 1) physiological monitoring, and 2) clinical trials or medical studies for Apple products"). Apple agreed.

- **RFP 248**: Plaintiffs maintain this request is appropriate and need not be narrowed further. Apple disagreed and indicated the parties are at an impasse.

### Interrogatories 7-10

- **Interrogatories 7 and 8**: Plaintiffs explained why these interrogatories were appropriate. Plaintiffs offered to compromise by amending the beginning of Interrogatory 7 to remove the phrase "the design and development of each Apple Watch Product, including without limitation." Apple argued the interrogatories were still too broad because "physiological monitoring" could be read to include using an accelerometer to detect when someone is walking. To the extent such information is used in the determination of a physiological parameter, such as oxygen saturation or pulse rate, we believe such information is relevant. Therefore, we do not agree that "physiological monitoring" is overbroad. We can agree that Apple's responses could initially focus on light-based physiological monitoring, which would include the use of other sensors such as accelerometers to the extent they are used in the determination of a light-based physiological parameter. Please let us know if Apple agrees.

- **Interrogatory 9**: Apple argued that pulse rate algorithms are not relevant to the issues in this case. Plaintiffs disagreed and explained that pulse rate algorithms are relevant to numerous trade secrets. Apple agreed to review Plaintiffs' Section 2019.210 disclosure and get back to us.

- **Interrogatory 10**: Apple argued that all the information Plaintiffs seek is contained in the document produced as APL-MAS_00065312 and asked Plaintiffs to review that document. That document appears to reflect some analysis of certain wrist-worn monitors, but does not appear to provide much of the information sought in Interrogatory No. 10. In particular, the document does not appear to provide the date of Apple's investigation, the individuals who conducted the test or investigation, and to whom the results were communicated. Moreover, is Apple representing that the devices analyzed in APL-MAS_00065312 are the only non-Apple physiological monitors for which Apple has conducted any test, analysis, comparison, or competitive analysis? Is Apple representing that the entirety of its testing, analysis, comparison, or competitive analysis for those devices is contained in APL-MAS_00065312? Is Apple representing that it has no other documents or knowledge regarding any test, analysis, comparison, or competitive analysis of any only non-Apple physiological monitors? Please provide Apple's position so Plaintiffs can determine how to proceed.

Exhibit 75
-586-

**RFPs 5–27, 63–87, 97–109, 128–132, 148–206, 208–13, 216–22, 234–37, 242–43, and 247**

- **RFPs 128, 129**: Plaintiffs explained they did not understand Apple's objections and reiterated what these requests were seeking.  Apple agreed to get back to us with its final position.

- **RFP 130**: Apple stated that it has no affiliates that are related to the products at issue in this case.  Apple stated that all relevant information is in the possession, custody, or control of Apple, Inc., and that Apple is not relying on corporate formalities to withhold information in the possession, custody, or control of any affiliates.  Plaintiffs agree to narrow this request to documents sufficient to identify the relationship between Apple and any affiliate involved in the products at issue in this case.  Based on Apple's representation, we understand Apple may have no responsive documents.  Please confirm.

- **RFPs 131-132**: After maintaining for months that it has no organizational charts, Apple newly disclosed that some groups within Apple maintain "informal" organizational charts.  For example, Apple indicated that Steve Hotelling's group maintains an informal organizational chart and committed to producing the chart.  Plaintiffs asked Apple to inquire whether other groups, including any group including O'Reilly, have any organizational charts, informal or otherwise.  Apple indicated it would get back to us.

- **RFP 208**: Apple's email agreed to "produce responsive documents, to the extent such documents exist and can be located following a reasonable search."

- **RFPs 209, 210, 213**: Plaintiffs explained why Apple "considering" certain trade secrets is itself a use and disclose of trade secrets.  Plaintiffs explained that they do not believe this request needs to be narrowed.  Apple agreed to get back to us with its final position.

- **RFP 211, 158-160**: Plaintiffs explained that the value and importance of particular techniques should be separately searched for many reasons.  For example, a document discussing the value and importance of robust measurements is relevant even if the document itself does not reflect the use of particular trade secrets.  Apple agreed to get back to us with its final position.

- **RFP 212**: Plaintiffs indicated that they would arrange a time to review the source code computer and let Apple know if they needed additional information.  Apple indicated that it may remove some information that was previously produced on the source source code computer, but would let us know its final position.  We maintain that Apple has no basis to claw back previously produced material just because the material was produced on a source code computer instead of through an ordinary document production.  Please confirm that Apple will not remove material from the source code computer.

- **RFPs 216, 217**: Plaintiffs maintain these requests are appropriate and need not be narrowed further.  Apple agreed to get back to us with its final position.

- **RFPs 218-221**: Plaintiffs explained why Apple's proposed limitation to documents "sufficient to show" was inappropriate.  Plaintiffs maintain these requests are appropriate as worded and need not be narrowed.  Apple agreed to get back to us with its final position.

- **RFPs 234-235**: Apple indicated that it could not provide its position on these requests over the phone, but would get back to us with its final position.

Exhibit 75
-587-

- **RFPs 236-237**: Plaintiffs maintained that these requests seek a narrow category of relevant documents that should be produced.  Apple argued the parties should continue discussing which former employees should be the subject of discovery.

- **RFPs 242-43**: Apple argued that Plaintiffs should further narrow these requests beyond "physiological monitoring."  Similar to Interrogatory Nos. 7 and 8, we can agree that Apple's responses could initially focus on documents relating to light-based physiological monitoring, which would include the use of other sensors such as accelerometers to the extent they are used in the determination of a light-based physiological parameter.  Please let us know if Apple agrees.

- **RFPs 5-25**: Plaintiffs explained that these RFPs are relevant to the trade secret case even if they also related to the patent case.  Plaintiffs asked if Apple had already gathered responsive documents before the patent case was stayed and suggested it would not be burdensome for Apple to produce what it had already gathered.  Apple agreed to check whether it had already gathered responsive documents and let Plaintiffs know if it had a proposal as to how to narrow any of these RFPs.

- **RFPs 27, 63–65, 70–79, 83–85, 87**: Plaintiffs explained that these RFPs are relevant to the trade secret case even if they also related to the patent case.  Apple agreed to get back to us with its final position.

- **RFPs 67-69, 155-157**: Plaintiffs maintain these requests are appropriate and need not be narrowed further.  Apple agreed to get back to us with its final position.

- **RFPs 97, 100**: During the meet and confer, Apple argued that it was objecting to these requests because they were not limited to the Series 4 and later versions of the Apple Watch.  Plaintiffs explained that Apple has already produced documents from early versions of the Apple Watch that discussed Plaintiffs' trade secrets, which shows why Apple's proposed limitation is inappropriate.  Apple agreed to get back to us with its final position.

- **RFPs 98, 99, 107, 163, 164**: Apple explained that it does not have forecasts "in the way that you think of them."  Plaintiffs asked what type of forecasts Apple had, and Apple responded that it relies on third-party market research.  Plaintiffs asked for copies of such third-party market research and any internal Apple documents and communications discussing such research.  Apple agreed to get back to us with its final position.

- **RFPs 106, 108, 109**: Apple requested that Plaintiffs narrow these requests beyond "physiological monitoring."  We do not believe further narrowing is appropriate for these requests because documents responsive to these requests that relate to non-light-based physiological monitoring technology is still relevant to damages and royalties in this case.  Please let us know Apple's position.

- **RFPs 63-66, 86, 148-154, 172**: Plaintiffs explained why Apple's proposed limitation to documents "sufficient to show" was inappropriate.  Plaintiffs maintain these requests are appropriate as worded and need not be narrowed.  Apple agreed to get back to us with its final position.

- **RFPs 185, 186**: Plaintiffs maintain these requests are appropriate and need not be narrowed further.  Apple agreed to get back to us with its final position.

Exhibit 75
-588-

- **RFPs 80-82, 161**: Plaintiffs explained that these requests were not limited to complaint databases.  Plaintiffs also explained that Apple should be able to narrow its searching from the complaint database by applying search terms.  Plaintiffs asked Apple if it could provide a sample printout with a list of fields so the parties could try to work together on an appropriate search of the complaint database.  Apple agreed to get back to us.

- **RFPs 165-170**: Plaintiffs maintain these requests are appropriate and need not be narrowed further.  Apple agreed to get back to us with its final position.

- **RFPs 184, 196**:  Plaintiffs maintain these requests are appropriate and need not be narrowed further.  Apple agreed to get back to us with its final position.

**RFPs 101–05, 171, 173–83, 187–95, 197–206**

Apple argued that all of these RFPs should be (1) limited to the Apple Watch Series 4 or later and (2) limited to a time period beginning in January 2013.  Plaintiffs explained why the first limitation was inappropriate and Apple indicated it would get back to us.  Plaintiffs explained that they would be willing to consider a time limit limitation but asked Apple to identify when Apple began working on the Apple Watch so that Plaintiffs could make an informed decision.  Please let us know Apple's position.

Apple also raised several issues as to specific RFPs discussed below.

- **RFP 101**: Plaintiffs maintained this request is appropriate and need not be narrowed.  Apple agreed to get back to us with its final position.

- **RFP 102**: Plaintiffs maintained these requests are appropriate and need not be narrowed to just documents "sufficient to show."  Apple agreed to get back to us with its final position on that issue.  Apple requested that we narrow the remainder of the request to refer to "Apple's evaluation of the health care market, including the evaluation of target customers and Apple's considerations in entering and continuing to pursue the health care market."  We would be willing to compromise by agreeing to the following language: "Apple's evaluation of the health care market, including <u>market size, the importance of the healthcare market to Apple's overall business,</u> the evaluation of target customers and Apple's considerations in entering and continuing to pursue the health care market."  Please let us know if Apple agrees.

- **RFP 103**: Plaintiffs explained why Apple's proposed limitation to documents "sufficient to show" was inappropriate.  Plaintiffs maintain this request is appropriate as worded and need not be narrowed.  Apple agreed to get back to us with its final position.

- **RFP 104**: Plaintiffs explained why Apple's proposed limitation to documents "sufficient to show" was inappropriate.  Plaintiffs maintain this request is appropriate as worded and need not be narrowed.  Apple agreed to get back to us with its final position.  Apple also argued this request was still too broad because it could involve marketing efforts unrelated to this case.  Plaintiffs suggested narrowing the request to "physiological monitoring," but Apple suggested that was still too broad.  We do not believe further narrowing is appropriate for this request because documents responsive to this request that relate to non-light-based physiological monitoring technology is still relevant to damages and royalties in this case.  Please let us know Apple's position.

Exhibit 75
-589-

- **RFP 105**: Plaintiffs agreed to Apple's use of the phrase "physiological parameters" if Apple left the remainder of this request unchanged.  Apple agreed to get back to us with its final position.

- **RFP 171**: Plaintiffs explained why Apple's proposed limitation to documents "sufficient to show" was inappropriate.  Plaintiffs maintain this request is appropriate as worded and need not be narrowed.  Apple agreed to get back to us with its final position.

- **RFP 173**: Apple raised no separate issue with this request other than the Series 4 and time period issues discussed above.

- **RFP 174-179**: Despite Apple maintaining its position that it does not understand Plaintiffs' Section 2019.210 statement, Apple confirmed it is not relying on that statement to withhold any documents responsive to these requests.

- **RFP 180**: Apple raised no separate issue with this request.

- **RFP 181-182**: Plaintiffs explained why Apple "considering" certain trade secrets was itself a use and disclose of trade secrets.  Plaintiffs explained that they do not believe these requests need to be narrowed.  Apple agreed to get back to us with its final position.

- **RFP 183**: Plaintiffs explained that the value and importance of particular techniques should be separately searched for many reasons.  For example, a document discussing the value and importance of robust measurements is relevant even if the document itself does not reflect the use of particular trade secrets.  Apple agreed to get back to us with its final position.

- **RFP 187**: Apple raised no separate issue with this request.

- **RFP 188-189**: Plaintiffs explained why Apple "considering" certain trade secrets was itself a use and disclose of trade secrets.  Plaintiffs explained that they do not believe these requests need to be narrowed.  Apple agreed to get back to us with its final position.

- **RFP 190**: Plaintiffs explained that the value and importance of particular techniques should be separately searched for many reasons.  For example, a document discussing the value and importance of robust measurements is relevant even if the document itself does not reflect the use of particular trade secrets.  Apple agreed to get back to us with its final position.

- **RFP 191**: Apple raised no separate issue with this request.

- **RFP 192**: Apple raised no separate issue with this request.

- **RFP 193-194**: Plaintiffs explained why Apple "considering" certain trade secrets was itself a use and disclose of trade secrets.  Plaintiffs explained that they do not believe these requests need to be narrowed.  Apple agreed to get back to us with its final position.

- **RFP 195**: Plaintiffs explained that the value and importance of particular techniques should be separately searched for many reasons.  For example, a document discussing the value and importance of robust measurements is relevant even if the document itself does not reflect the use of particular trade secrets.  Apple agreed to get back to us with its final position.

- **RFP 197**: Apple raised no separate issue with this request.

Exhibit 75
-590-

- **RFP 198**: Plaintiffs explained why Apple's proposed limitation to documents "sufficient to show" was inappropriate.  Plaintiffs maintain this request is appropriate as worded and need not be narrowed.  Apple agreed to get back to us with its final position.

- **RFP 199-202**: Plaintiffs explained why Apple's proposed limitation to documents "sufficient to show" was inappropriate.  Plaintiffs maintain these requests are appropriate as worded and need not be narrowed.  Apple agreed to get back to us with its final position.

- **RFP 203**: Plaintiffs explained why Apple's proposed limitation to documents "sufficient to show" was inappropriate.  Plaintiffs maintain this request is appropriate as worded and need not be narrowed.  Apple agreed to get back to us with its final position.

Thank you for discussing these issues with us.  We appreciate that the parties made some progress and remain hopeful that we can resolve at least some of these disputes without requiring Court intervention.  As discussed above, Apple indicated it would get back to us on numerous disputed issues. We would appreciate it if Apple provided its position by February 26.

Best regards,

Adam B. Powell

Exhibit 75
-591-

# EXHIBIT 76

# Knobbe Martens

KNOBBE,MARTENS,OLSON & BEAR,LLP

1925 Century Park East, Suite 600, Los Angeles, CA 90067
**T** (310) 551-3450

Mark Kachner
Mark.Kachner@knobbe.com

March 22, 2021

**VIA EMAIL**

Ilissa Samplin
Gibson, Dunn & Crutcher LLP
333 South Grand Ave.
Los Angeles, CA 90071

Re:     Masimo Corp. and Cercacor Laboratories v. Apple Inc.

Dear Ilissa:

We write to respond to your letter dated March 12, 2021.

**Apple's RFPs 55, 56, 66, 71, 77, 78, 84–89, 92, 99–101:**  We confirm that Plaintiffs are not withholding and do not intend to withhold responsive non-privileged documents based on our objections for these RFPs.  We intend to produce all non-privileged documents responsive to these RFPs found in a reasonable search.  We have been collecting documents and will continue to produce documents on a rolling basis.

**Apple's RFP 62:**  We confirm Apple's understanding of the parties' agreement on the limited scope of this RFP: "All Documents and Communications relating to any exit interviews, post-employment communications, and other communications relating to trade secrets and/or any alleged breach of contract, for all of Your former employees who You believe were subsequently employed by Apple, including but not limited to, Marcelo Lamego and Michael O'Reilly."  *See* Letter from Ilissa Samplin to Mark Kachner at 5 (May 26, 2020); Letter from Mark Kachner to Ilissa Samplin at 3 (June 2, 2020).  We have been collecting documents and will continue to produce documents on a rolling basis.

**Apple's RFP 68:**  Your letter mischaracterizes our correspondence.  Plaintiffs objected to this RFP as "overly broad and unduly burdensome."  At our meet and confers in on May 19, 2020 and May 20, 2020, Apple stated it could not narrow this request without Plaintiffs' 2019.210 disclosure.  *See* Letter from Ilissa Samplin to Mark Kachner at 6 (May 26, 2020).  In January 2021, the Court approved Plaintiffs' 2019.210 disclosure.  Dkt. 279.  Has Apple now considered whether it will narrow this request?

**Apple's Interrogatory 7:**  Plaintiffs' response is complete based on our investigation to date.  To the extent Plaintiffs' ongoing investigation reveals additional responsive information, Plaintiffs will supplement.

**Apple's Interrogatory 8:**  Plaintiffs' response is complete based on our investigation to date.  To the extent Plaintiffs' ongoing investigation reveals additional responsive information, Plaintiffs will supplement.  Further, this interrogatory seeks information in the possession of Apple, Marcelo Lamego, Michael O'Reilly, and other former employees of Plaintiffs who later worked for Apple.  Further

Exhibit 76
-592-

**Knobbe Martens**

supplement has been impeded by Apple's refusal to produce documents in response to our discovery requests on this issue. We expect Apple to promptly comply with its discovery obligations.

**Apple's Interrogatory 9:**  Plaintiffs' response is complete based on our investigation to date. To the extent Plaintiffs' ongoing investigation reveals additional responsive information, Plaintiffs will supplement. Like interrogatory 8, this interrogatory seeks information in the possession of Apple, Marcelo Lamego, Michael O'Reilly, and other former employees of Plaintiffs who later worked for Apple. Further supplement to this interrogatory has been impeded by Apple's failure to produce documents in response to our trade secret related discovery requests. We expect Apple to promptly comply with its discovery obligations.

**Apple's Interrogatory 12:**  Plaintiffs' response is complete based on its investigation to date. To the extent Plaintiffs' investigation reveals additional responsive information, Plaintiffs will supplement.

**Apple's Interrogatory 17:**  Your letter mischaracterizes our correspondence on this interrogatory, and ignores Plaintiffs' own related discovery requests that Apple has not responded to. You incorrectly assert that "the persons with knowledge, and the supporting documents, are entirely within Plaintiffs' control." Plaintiffs' harm, and the comprehensive list of individuals with knowledge of that harm, depend on the nature and extent of Apple's misappropriation of Plaintiffs' trade secrets. For example, Apple has not yet identified persons knowledgeable about Apple's sales of the products using Plaintiffs' trade secrets. As we have previously discussed, Plaintiffs' further supplement to this interrogatory has been impeded by Apple's failure to produce documents in response to our trade secret related discovery requests. *See* Letter from Mark Kachner to Ilissa Samplin (Dec. 7, 2020). We expect Apple to promptly comply with its discovery obligations.

Nevertheless, Plaintiffs will supplement their response and identify Plaintiffs' employees with information about Plaintiffs' harm caused by Apple's trade secret misappropriation.

**Apple's Interrogatory 26:**  Plaintiffs objected that this interrogatory seeks information that is not relevant and not proportional to the needs of the case. For example, Apple's insistence that Plaintiffs describe *every* past, present, and future use of Plaintiffs' trade secrets is neither relevant nor proportional to the needs of the case, and frankly not plausible. Please explain the relevance of a *comprehensive* identification of each product incorporating Plaintiffs' trade secrets, the functionality that incorporates the trade secret, when the trade secret began being incorporated into the product or functionality, and when the trade secret stopped being incorporated into the product or functionality. Please also explain why such an overbroad request is proportional to the needs of the case. To the extent that Apple is aware of authority supporting your arguments on this interrogatory, please send us the authority prior to the meet and confer so we may consider it.

If Apple seeks specific information, Apple should narrow this interrogatory to ask for the specific information it seeks, and we can consider such a narrowed request.

**Apple's Interrogatory 27:**  Your letter concedes that much of the information requested by Apple's interrogatory is not within Plaintiffs' possession, custody, or control, and the calculations that Apple seeks is premature at this early stage in the case. Your letter specifically identifies three of the at least seven

knobbe.com

Exhibit 76
-593-

**Knobbe** Martens

subparts to this interrogatory as "information [] entirely within Plaintiffs' possession and control." Assuming *arguendo* that this is true, the at least four other subparts of this interrogatory depend on information, which Apple has resisted producing.  For example, "the extent to which others could obtain economic value were the secrecy of the alleged Trade Secret not maintained" and "the amount of time, money, and/or labor that you contend Apple saved by using the alleged Trade Secret" both require trade secret discovery from Apple, which Apple has resisted.  Without this information, which Apple's interrogatory itself suggests are components of the independent economic value calculation, Plaintiffs cannot provide Apple with either a bottom line independent economic value of the alleged trade secrets nor describe the calculation to reach that value as requested.  Moreover, it would be inappropriate to perform this calculation at this time as said calculation is within the scope of expert discovery.  To the extent that Apple is aware of authority supporting your arguments on this interrogatory, please send us the authority prior to the meet and confer so we may consider it.

If Apple seeks specific information relating to "the amount of time, money, and/or labor [Plaintiffs] expended in developing the alleged Trade Secrets," Apple should narrow this interrogatory to ask for this information, and we can consider such a narrowed request.

Plaintiffs' response is complete based on its ongoing investigation to date.  To the extent Plaintiffs' investigation reveals additional responsive information, Plaintiffs will supplement.

We are available for the requested meet and confer on March 22, 2021 at 3 p.m. PDT.

Best regards,

Mark D. Kachner

34614797

knobbe.com

Exhibit 76
-594-

# EXHIBIT 77

| From: | Adam.Powell |
|---|---|
| To: | Samplin, Ilissa |
| Cc: | Masimo.Apple; *** Apple-Masimo |
| Subject: | RE: Masimo v. Apple - Discovery Letter |
| Date: | Thursday, April 8, 2021 3:43:29 PM |

Ilissa,

We agree to Apple's requested one-week extension, provided that Apple does not argue the one-week extension lessens the urgency of our request.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Thursday, April 8, 2021 10:25 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter

Adam:

We have relevant team members out next week, including for childrens' spring breaks.  Will Plaintiffs return the courtesy of a one-week extension that we have previously agreed to?

Thank you,
Ilissa

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, April 7, 2021 10:08 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-

Exhibit 77
-595-

Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter


[External Email]
Ilissa,

Attached is a joint stipulation, notice of motion, and proposed order for Plaintiffs' motion to compel
regarding several discovery requests on which the parties have reached an impasse.  My supporting
declaration and exhibits may be downloaded from the following link:
███████████████████████████████████████████.  All sealed material should
be treated as "Highly Confidential."  We look forward to receiving Apple's portion of the joint
stipulation, including any proposed redactions to the joint stipulation, in seven days.

Additionally, we have not received a response to my letter below that we sent nearly two weeks
ago.  We note that Apple has not provided its final position on several discovery requests that we
served months ago.  Please provide Apple's position promptly so that we can determine if additional
motion practice will be necessary.


Best regards,
Adam


**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Adam.Powell
**Sent:** Thursday, March 25, 2021 6:38 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter


Ilissa,

Please see my attached letter.


Best regards,
Adam


**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>

Exhibit 77
-596-

**Sent:** Tuesday, March 9, 2021 9:51 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter

Adam,

Please see the attached correspondence.

Best regards,
Ilissa

**Ilissa Samplin**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Samplin, Ilissa
**Sent:** Monday, March 8, 2021 9:23 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Re: Masimo v. Apple - Discovery Letter

Adam,

We have been running down a few items. We will have our response to you tomorrow.

Thanks,
Ilissa

**Ilissa Samplin**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

On Mar 8, 2021, at 6:32 PM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

Exhibit 77
-597-

[External Email]

Ilissa,

I am writing to follow up on my email below.  Apple indicated it would respond to us last week, but I do not believe we received a response.  Please let us know when Apple will provide its position.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Monday, March 1, 2021 11:45 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter

Adam,

As you know, there were many issues covered in the letter/our multiple meet and confers.  We are working through them, but it is naturally taking time.  We anticipate having a response to you in the second half of this week.

Thanks,
Ilissa

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, March 1, 2021 11:43 AM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>

Exhibit 77
-598-

**Subject:** RE: Masimo v. Apple - Discovery Letter

[External Email]
Ilissa,

We have not received a response to our February 19 letter.  Please let us know when
Apple expects to provide its position.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

_____

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Friday, February 19, 2021 6:59 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter

Ilissa,

Please see my attached letter regarding our meet and confer.

Thanks,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

_____

**From:** Adam.Powell
**Sent:** Friday, February 12, 2021 4:31 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter

Ilissa,

Thank you for sending us the letter.  After our initial review, we noticed that Apple has
not provided its position as to RFPs 5–27, 63–87, 97–109, 128–132, 148–206, 208–13,

Exhibit 77
-599-

216–22, 234–37, 242–43, and 247.  While Apple's formal responses included its objections, Apple has not explained whether it is willing to search for and produce responsive documents for any of these requests.  If Apple will produce documents, we do not know if Apple is relying on its objections to narrow its search or withhold documents.  While we appreciate that Apple is willing to discuss its responses during the meet and confer, we think it would be inefficient to review each RFP one-by-one over the phone to learn whether Apple intends to produce responsive documents.  We assume that Apple intends to produce responsive documents for the vast majority of these RFPs, so we can save a lot of time if you tell us Apple's position for each RFP in advance.  We would appreciate it if you could provide Apple's position at least 24 hours before our call at 2pm on Tuesday.

Please use the following dial in number for our call:



Best regards,
Adam

**Adam Powell**
Partner
**858-707-4245** **Direct**
**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Thursday, February 11, 2021 4:46 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter

Adam,

Thank you for your patience.  Attached please find our response to your January 27 letter.  Please let us know if your team can accommodate the requested 9 am meet and confer tomorrow.  As noted in my separate correspondence to you, unfortunately the necessary members of our team for this meet and confer are not available in the afternoon.

Thank you,
Ilissa

**Ilissa Samplin**

Exhibit 77
-600-

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue, Los Angeles, CA 90071-3197

Tel +1 213.229.7354 • Fax +1 213.229.6354

ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, February 8, 2021 6:12 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter

[External Email]
Ilissa,

We will talk to you on Wednesday at 1:30pm.  Please use the following dial in number:



Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Monday, February 8, 2021 11:08 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Re: Masimo v. Apple - Discovery Letter

We will have our written response to you tomorrow. If you would rather meet and confer on Thursday, that's fine too.

**Ilissa Samplin**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue, Los Angeles, CA 90071-3197

Exhibit 77
-601-

Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

On Feb 8, 2021, at 11:06 AM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

 [External Email]
Ilissa,

We are available at 1:30pm on Wednesday to discuss this issue and the issue mentioned in Brian's email on February 5.  Please confirm that you will have your written response to us today.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Friday, February 5, 2021 7:15 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Re: Masimo v. Apple - Discovery Letter

Adam:

Brian emailed earlier about this. We are available to discuss these issues on Wednesday as well, and we will have our written response to you before then. Please let us know if the time slot we proposed on Wednesday will work for your team.

Thank you,
Ilissa

**Ilissa Samplin**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354

Exhibit 77
-602-

ISamplin@gibsondunn.com • www.gibsondunn.com

On Feb 5, 2021, at 6:36 PM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

 [External Email]
Dear Ilissa,

We have not yet received your response to our letter of January 27.  Pursuant to Rule 37-1, the parties should meet and confer on the issues raised by our letter by Monday, February 8.  Please provide your written response to our letter by Monday morning.  Please also provide you availability to meet and confer on Tuesday.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Adam.Powell
**Sent:** Wednesday, January 27, 2021 10:12 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; ***
Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo v. Apple - Discovery Letter

Ilissa,

Please see the attached letter.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or

Exhibit 77
-603-

distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by

Exhibit 77
-604-

reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 77
-605-

EXHIBIT 78

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | Samplin, Ilissa |
| **Cc:** | Masimo.Apple; *** Apple-Masimo |
| **Subject:** | RE: Masimo v. Apple - Discovery Letter |
| **Date:** | Tuesday, April 13, 2021 8:57:45 PM |
| **Attachments:** | 2021-04-13 Letter to OPC re Discovery.pdf |
| | Joint Stipulation re 2nd MTC RFPs and Rogs.DOC |
| | Notice of Motion.pdf |
| | Proposed Order.pdf |

Ilissa,

Please see the attached response to your April 11 letter.

Additionally, attached is a joint stipulation, notice of motion, and proposed order for Plaintiffs' second motion to compel.  My supporting declaration and exhibits may be downloaded from the following link: ███████████████████████████  All sealed material should be treated as "Highly Confidential."  We look forward to receiving Apple's portion of the joint stipulation, including any proposed redactions to the joint stipulation, in seven days.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

_____

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Sunday, April 11, 2021 8:35 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter

Adam:

Attached please find our response to your letter.

Best regards,
Ilissa

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354

Exhibit 78
-606-

ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, April 7, 2021 10:08 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter

[External Email]
Ilissa,

Attached is a joint stipulation, notice of motion, and proposed order for Plaintiffs' motion to compel regarding several discovery requests on which the parties have reached an impasse.  My supporting declaration and exhibits may be downloaded from the following link: ███████████████████████████.  All sealed material should be treated as "Highly Confidential."  We look forward to receiving Apple's portion of the joint stipulation, including any proposed redactions to the joint stipulation, in seven days.

Additionally, we have not received a response to my letter below that we sent nearly two weeks ago.  We note that Apple has not provided its final position on several discovery requests that we served months ago.  Please provide Apple's position promptly so that we can determine if additional motion practice will be necessary.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Adam.Powell
**Sent:** Thursday, March 25, 2021 6:38 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter

Ilissa,

Please see my attached letter.

Best regards,
Adam

Exhibit 78
-607-

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Tuesday, March 9, 2021 9:51 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter

Adam,

Please see the attached correspondence.

Best regards,
Ilissa

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Samplin, Ilissa
**Sent:** Monday, March 8, 2021 9:23 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Re: Masimo v. Apple - Discovery Letter

Adam,

We have been running down a few items. We will have our response to you tomorrow.

Thanks,
Ilissa

**Ilissa Samplin**

GIBSON DUNN

Exhibit 78
-608-

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue, Los Angeles, CA 90071-3197

Tel +1 213.229.7354 ● Fax +1 213.229.6354

ISamplin@gibsondunn.com ● www.gibsondunn.com

On Mar 8, 2021, at 6:32 PM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

 [External Email]
Ilissa,

I am writing to follow up on my email below.  Apple indicated it would respond to us last week, but I do not believe we received a response.  Please let us know when Apple will provide its position.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Monday, March 1, 2021 11:45 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter

Adam,

As you know, there were many issues covered in the letter/our multiple meet and confers.  We are working through them, but it is naturally taking time.  We anticipate having a response to you in the second half of this week.

Thanks,
Ilissa

**Ilissa Samplin**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

Exhibit 78
-609-

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, March 1, 2021 11:43 AM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter

[External Email]
Ilissa,

We have not received a response to our February 19 letter.  Please let us know when Apple expects to provide its position.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Friday, February 19, 2021 6:59 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter

Ilissa,

Please see my attached letter regarding our meet and confer.

Thanks,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Adam.Powell
**Sent:** Friday, February 12, 2021 4:31 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-

Exhibit 78
-610-

[Masimo@gibsondunn.com](mailto:Masimo@gibsondunn.com)>
**Subject:** RE: Masimo v. Apple - Discovery Letter

Ilissa,

Thank you for sending us the letter.  After our initial review, we noticed that Apple has not provided its position as to RFPs 5–27, 63–87, 97–109, 128–132, 148–206, 208–13, 216–22, 234–37, 242–43, and 247.  While Apple's formal responses included its objections, Apple has not explained whether it is willing to search for and produce responsive documents for any of these requests.  If Apple will produce documents, we do not know if Apple is relying on its objections to narrow its search or withhold documents.  While we appreciate that Apple is willing to discuss its responses during the meet and confer, we think it would be inefficient to review each RFP one-by-one over the phone to learn whether Apple intends to produce responsive documents.  We assume that Apple intends to produce responsive documents for the vast majority of these RFPs, so we can save a lot of time if you tell us Apple's position for each RFP in advance.  We would appreciate it if you could provide Apple's position at least 24 hours before our call at 2pm on Tuesday.

Please use the following dial in number for our call:



Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Samplin, Ilissa <[ISamplin@gibsondunn.com](mailto:ISamplin@gibsondunn.com)>
**Sent:** Thursday, February 11, 2021 4:46 PM
**To:** Adam.Powell <[Adam.Powell@knobbe.com](mailto:Adam.Powell@knobbe.com)>
**Cc:** [Masimo.Apple](mailto:Masimo.Apple@knobbe.com) <[Masimo.Apple@knobbe.com](mailto:Masimo.Apple@knobbe.com)>; *** Apple-Masimo <[Apple-Masimo@gibsondunn.com](mailto:Apple-Masimo@gibsondunn.com)>
**Subject:** RE: Masimo v. Apple - Discovery Letter

Adam,

Thank you for your patience.  Attached please find our response to your January 27 letter.  Please let us know if your team can accommodate the requested 9 am meet and confer tomorrow.  As noted in my separate correspondence to you, unfortunately the necessary members of our team for this meet and confer are not available in the

Exhibit 78
-611-

afternoon.

Thank you,
Ilissa

**Ilissa Samplin**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, February 8, 2021 6:12 PM
**To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo v. Apple - Discovery Letter

[External Email]
Ilissa,

We will talk to you on Wednesday at 1:30pm.  Please use the following dial in number:



Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Monday, February 8, 2021 11:08 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Re: Masimo v. Apple - Discovery Letter

We will have our written response to you tomorrow. If you would rather meet and confer on Thursday, that's fine too.

Exhibit 78
-612-

**Ilissa Samplin**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

On Feb 8, 2021, at 11:06 AM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

 [External Email]
Ilissa,

We are available at 1:30pm on Wednesday to discuss this issue and the issue mentioned in Brian's email on February 5.  Please confirm that you will have your written response to us today.

Best regards,
Adam

**Adam Powell**
Partner
**858-707-4245** Direct

**Knobbe Martens**

---

**From:** Samplin, Ilissa <ISamplin@gibsondunn.com>
**Sent:** Friday, February 5, 2021 7:15 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Re: Masimo v. Apple - Discovery Letter

Adam:

Brian emailed earlier about this. We are available to discuss these issues on Wednesday as well, and we will have our written response to you before then. Please let us know if the time slot we proposed on Wednesday will work for your team.

Thank you,
Ilissa

**Ilissa Samplin**

Exhibit 78
-613-

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7354 • Fax +1 213.229.6354
ISamplin@gibsondunn.com • www.gibsondunn.com

> On Feb 5, 2021, at 6:36 PM, Adam.Powell <Adam.Powell@knobbe.com> wrote:
>
>  [External Email]
> Dear Ilissa,
>
> We have not yet received your response to our letter of January 27.  Pursuant to Rule 37-1, the parties should meet and confer on the issues raised by our letter by Monday, February 8.  Please provide your written response to our letter by Monday morning.  Please also provide you availability to meet and confer on Tuesday.
>
> Best regards,
> Adam
>
> **Adam Powell**
> Partner
> 858-707-4245 **Direct**
> **Knobbe Martens**
>
> ---
>
> **From:** Adam.Powell
> **Sent:** Wednesday, January 27, 2021 10:12 PM
> **To:** Samplin, Ilissa <ISamplin@gibsondunn.com>
> **Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
> **Subject:** Masimo v. Apple - Discovery Letter
>
> Ilissa,
>
> Please see the attached letter.
>
> Best regards,
> Adam
>
> **Adam Powell**
> Partner
> 858-707-4245 **Direct**

9

Exhibit 78
-614-

**Knobbe Martens**

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the

Exhibit 78
-615-

firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 78
-616-

# EXHIBIT 80

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | Andrea, Brian |
| **Cc:** | Kaounis, Angelique; *** Apple-Masimo; Masimo.Apple; Schuemann, Susanna G. |
| **Subject:** | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians |
| **Date:** | Monday, May 10, 2021 3:18:27 PM |

Brian,

We are available at 3pm pacific tomorrow, but we disagree with your email to the extent it attempts to limit our discussion.  Please use the following dial in number:



Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Monday, May 10, 2021 12:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We are available to meet and confer regarding the issues in the second paragraph of your letter dated May 5, 2021 tomorrow (May 11) at 3pm PT.  Please let us know if that works for you, and if so please circulate a dial in number.

Thanks,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

Exhibit 80
-620-

1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, May 10, 2021 10:13 AM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Subject:** Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We still have not received a response with your availability to meet and confer on my May 1 letter. Please let us know when you are available to meet and confer today.

Best regards,
Adam


On May 5, 2021, at 8:41 PM, Adam.Powell <Adam.Powell@knobbe.com> wrote:


Brian,

Please see the attached letter.

Best regards,
Adam


**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Tuesday, May 4, 2021 12:51 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Exhibit 80
-621-

Adam,

Please see the attached letter.

Best regards,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Saturday, May 1, 2021 9:32 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

Please see my attached letter.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

**From:** Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Sent:** Thursday, April 29, 2021 9:46 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Exhibit 80
-622-

Adam,

Please see attached correspondence from Brian Andrea.

Best,
Susanna

**Susanna G. Schuemann**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8321 • Fax +1 415.374.8455
SSchuemann@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, April 21, 2021 9:38 AM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

Please see my attached letter.

Best regards,
Adam

**Adam Powell**
Partner
**858-707-4245 Direct**
## Knobbe Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, April 14, 2021 8:25 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI

Exhibit 80
-623-

Custodians

Adam,

Please see the attached letter and the attached word document.

Best regards,
Brian

**Brian Andrea**

### GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, April 7, 2021 10:10 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

Please see my attached letter and the attached word document.

Best regards,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, April 2, 2021 6:14 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Schuemann, Susanna G. <SSchuemann@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI

Exhibit 80
-624-

Custodians

Adam,

We write to memorialize our April 2 meet and confer teleconference about the issues raised in Plaintiffs' March 23 and March 25 letters and in Apple's April 1 response.

As discussed, we look forward to receiving the following from you:

1. The legal basis for your proposal of forty-nine custodians at the outset of discovery.  You referred to caselaw cited in your prior joint stipulation, but those cases are distinguishable, as we explained in our responsive briefing.  If you have applicable legal support, we are glad to consider it.
2. The specific factual basis for believing that each of the forty-nine proposed custodians is proportional to the needs of the case, and that each one is "knowledgeable about" and "involved in the core issues or subjects in this case" as required by the parties' ESI agreement (Dkt. 51).  As we reiterated on the call, we are willing to discuss including any custodian likely to possess nonduplicative information that is relevant to any party's claim or defense and proportional to the needs of the case.  But as we have made clear in our prior correspondence, we cannot accept Plaintiffs' current proposal, which includes individuals who—as far as we can tell—were never employed by Apple and/or had no involvement in the topics at issue.
3. The legal and factual basis for your request for documents from Tim Cook.  We have asked you repeatedly for your legal basis for this request, including during our March 29 meet and confer correspondence and in our April 1 letter, and you have not cited a single case justifying this request.  As we document in our April 1 letter, the allegations in the complaint do not justify including Mr. Cook as a custodian.  Today, you presented a new unfounded assertion that Mr. Cook has stated that "Apple is focused more and more on healthcare and less and less on computers." You quickly admitted Mr. Cook had *not* actually made that statement, but the fact remains that there is no legitimate basis for collecting documents from Mr. Cook.

Please let us know when we can expect the information you agreed to provide regarding each of your forty-nine proposed custodians, including Mr. Cook.

Regards,
Brian

On Apr 2, 2021, at 11:06 AM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

 [External Email]
Brian,

Exhibit 80
-625-

We are reviewing your letter, but are available to meet and confer regarding Plaintiffs' March 25 letter at 2pm today.  Please confirm that time still works for you.

Thanks,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**

**Knobbe Martens**

**From:** Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Sent:** Thursday, April 1, 2021 4:09 PM
**To:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Counsel:

Attached please find correspondence from Brian Andrea and a native copy of APL-MAS_75595.

Best,
Susanna

**Susanna G. Schuemann**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8321 • Fax +1 415.374.8455
SSchuemann@gibsondunn.com • www.gibsondunn.com

On Mar 31, 2021, at 8:56 PM, Kaounis, Angelique <AKaounis@gibsondunn.com> wrote:

Counsel:

Attached please find Apple's portion of the Joint Stipulation regarding Apple's Motion to Compel Plaintiffs to Immediately Proceed With ESI Discovery.

Exhibit 80
-626-

The accompanying attorney declaration and the exhibits (both public and under seal versions of the exhibits) will follow shortly via ShareFile because of their size. Please let us know if you have any issues retrieving them.

When you send back Plaintiffs' portion, please include proposed redactions in yellow highlighting for Plaintiffs' portion, as well as any proposed redactions for Apple's portion.

We look forward to receiving Plaintiffs' portion of the Joint Stipulation in seven days.

Thanks,
Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

**From:** Kaounis, Angelique
**Sent:** Tuesday, March 30, 2021 7:19 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We write briefly to correct the misstatements in your email.  We have been clear about our proposed compromise and about the relief we intend to seek from the Court if Plaintiffs remain unwilling to proceed with ESI discovery now. Nonetheless, to reiterate, if we are unable to reach a resolution, Apple will ask the Court to compel Plaintiffs to proceed with ESI discovery on twelve custodians per side, without prejudice to either side's ability to pursue ESI from additional custodians in the future.

Apple is preparing a written response to each of the issues raised in your March 23 and March 25 letters.  The March 29 call was convened due to the urgent need to move forward with a proportional, workable, mutually agreeable set of initial custodians.  In the interest of efficiency, we asked you to show patience for a

Exhibit 80
-627-

couple days while we work with our client to finalize responses.  We did not refuse to discuss anything.  Rather, we tried to keep the focus on the most important and time-sensitive issue:  agreeing on a way to move forward with ESI discovery now.  But rather than provide a straightforward explanation of Plaintiffs' position on that issue, you instead insisted that the parties discuss other issues, which we did discuss.  In particular, 1) we invited you to share case law supporting your request for custodial files from Tim Cook, and 2) we told you that although we were not able to replicate the legibility you claim to have with APL-MAS_0075595, that we were trying to solve the issue for you.  Please refer to our forthcoming written responses to the other issues set forth in your March 25 letter for Apple's responses to Plaintiffs' other issues.

Thanks,
Angelique

**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, March 30, 2021 8:51 AM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Angelique and Brian,

I write to memorialize our March 29 meet and confer.  We disagree with your email, which once again does not accurately reflect our meeting.  Our meet and confer was unhelpful because Apple refused to fully discuss the parties' disputes, including the issues raised in Apple's own March 17 letter and Plaintiffs' responsive March 23 letter.  For example, Apple refused to discuss: (1) whether Plaintiffs' former employees are appropriate custodians, (2) whether Tim Cook is an appropriate custodian, (3) Lamego/Nazarro's files, and (4) whether Apple would produce a new version of APL-MAS_0075595.  Apple argued it need not discuss these issues because Plaintiffs' March 25 Local Rule 37 letter mentioned them and Apple intended to wait ten days to respond to that letter.  We explained that the issues we were trying to discuss were

Exhibit 80
-628-

covered by Apple's own March 17 letter and our March 23 response, not just our separate March 25 Local Rule 37 letter.

Rather than discuss all aspects of Apple's own letter, Apple demanded that Plaintiffs preemptively agree to Apple's demand to search just twelve Apple custodians.  Your email below argues that, because both parties will eventually search at least 12 custodians, Plaintiffs should select 12 Apple custodians now.  But Apple is refusing to provide the information that would be necessary for Plaintiffs to make an informed decision even as to 12 custodians, including hit counts for all custodians and search terms.  Such information is important to target and prioritize ESI discovery.  For example, hit counts would help Plaintiffs better understand the relevance of various Apple custodians and prioritize its requests for ESI searching.  We also do not know whether Apple will agree to search Tim Cook's files or whether it will agree to search any of Plaintiffs' former employees other than O'Reilly.  Thus, these issues are interrelated and cannot be isolated.  Indeed, Apple promised in the ESI stipulation that it would discuss custodians <u>and</u> search terms in an attempt to reach an <u>overall agreement</u>.  Apple's refusal to do so is unnecessarily delaying this process.

Apple's claim that it urgently seeks to "make progress" is belied by the many months in which Apple refused to engage in any ESI discussions.   Apple's demand that Plaintiffs select 12 custodians in the dark makes no sense in view of Apple's commitment to provide the other information and engage in an overall discussion in the next few days.  Likewise, providing our position in writing in less than 24 hours can hardly be considered "delay" or refusing to answer Apple's question by a "date certain."  We simply need reasonable information, consistent with what we have been willing to provide Apple, given Apple's refusal to search more than 12 custodians.

During the call, you stated that Apple will immediately proceed with twelve custodians regardless of whether Plaintiffs agree.  While Plaintiffs maintain that Apple should provide hit counts for <u>all</u> of Plaintiffs' custodians, nothing is preventing Apple from running searches on whatever custodians it likes.  During the meet and confer, Apple threatened to move the Court, but did not indicate what relief Apple seeks.  Even though Local Rule 37-1 required Apple's letter to clearly identify "the terms of the discovery order to be sought," Apple's letter did not do so.  Moreover, plaintiffs have not placed an arbitrary limit on searching, and simply look to find an equitable approach.  Plaintiffs also have not in any way refused to begin that process, which they have already started.  As discussed above, nothing is preventing Apple from performing searches on its own custodians.  Please clarify what relief Apple plans to seek from the Court if the parties do not reach an agreement.

During the meet and confer, the parties also discussed (1) the type of documents covered by ESI searching and (2) Plaintiffs search of the twelve custodians that Apple identified.  On the first issue, Apple stated that it planned to search all files, including messaging and chat logs, but that it envisioned the negotiated ESI search terms would apply only to email searching.  We responded that we would consider Apple's position

Exhibit 80
-629-

and get back to you.  On the second issue, Plaintiffs again explained they never refused to search the twelve custodians that Apple identified.  To the contrary, we explained that we had already begun pulling files and would provide hit counts as soon as possible.  Apple demanded Plaintiffs provide a "date certain" as to when we would provide hit counts, while Apple could not provide a date certain itself when we asked the same question.  As we explained, Plaintiffs are working diligently to pull the data, process the data, and provide hit counts as soon as possible.  We likewise request hit counts from Apple.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** Martens

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Monday, March 29, 2021 8:02 PM
**To:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We write to memorialize today's meet and confer call.  We are disappointed by Plaintiffs' refusal to agree to Apple moving forward with 12 custodians on each side, particularly in view of the fact that Plaintiffs have indicated they do intend to request that Apple search the ESI of the 12 custodians Apple has identified.  We are endeavoring in good faith to make progress, with the understanding that all parties reserve rights to seek additional custodians later, depending on the discovery that unfolds.   It is likewise disheartening that Plaintiffs cannot commit to providing a final answer to Apple's proposal to begin with 12 custodians by a date certain.  Your suggestion that we asked you for an "on the spot" answer is detached from the documented reality of the parties' discussions.  We presented this proposal to Plaintiffs on March 17, followed up on March 22 asking for a response to allow us to "move forward with ESI discovery immediately," reiterated this request on March 23, and then once again posed the same question on March 26.  In no way were you put on the spot today.  Accordingly, we renew our request that you let us know today—or tomorrow at the latest—whether Plaintiffs will agree to commence ESI discovery with the list of 12 custodians presented in Apple's March 17 letter.

We will respond in writing to the issues raised in your March 23 and March 25

Exhibit 80
-630-

letters later this week.  In the meantime, we need to move forward with an initial set of custodians.  Discovery is an iterative, collaborative process.  The fact that other issues remain to be decided does not justify Plaintiffs' delay.

Thanks,
Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

<Joint Stip re ESI Custodians.DOC>

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

Exhibit 80
-631-

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of

Exhibit 80
-632-

the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

<2021-05-05 Letter to Andrea.pdf>

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 80
-633-

# EXHIBIT 81

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Alan Laquer
Alan.Laquer@knobbe.com

May 4, 2021
via email

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
BAndrea@gibsondunn.com

Re: Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write pursuant to Local Rule 37-1 to request a conference of counsel regarding Apple's Responses to Plaintiffs' Sixth Set of Requests for Production.

**Request for Production No. 249**

Plaintiffs' Request No. 249 seeks "All documents and things related to decisions to research, design, and/or develop products or components used to calculate one or more physiological parameters including but not limited to pulse oximetry."

Apple raises several objections that all lack merit. Apple's improper objections include objections "to the extent it seeks . . . documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of incorporating Plaintiff's alleged trade secrets," and "to the extent it seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court," and "to the extent it seeks information related to Apple's unreleased products." Those objections lack merit because Apple's use of Plaintiff's trade secrets is relevant regardless of whether the use has occurred in a current or unreleased product. *See, e.g., PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (2000) (explaining that improper "use" of a trade secret includes "[e]mploying the confidential information" in almost any way, including in "research or development"); *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. Apr. 23, 2012) (defendant can be liable if it "unlawfully acquired and then built upon or modified [the trade secret] before being disclosed or benefit derived").

Apple cites nothing to the contrary. Apple's reliance on *EPOS Techs. v. Pegasus Techs.*, 842 F. Supp. 2d 31 (D.D.C. 2012), *Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*, No. 04-cv-0038, 2005 WL 2304190 (D. Del. Sept. 20, 2005), and *AGA Medical Corp. v. W.L. Gore & Associates, Inc.*, No. 10-cv-3734, 2011 WL 11023511 (D. Minn. Oct. 19, 2011) is misplaced at least because none of those cases involved trade secret claims.

Please confirm that Apple is not relying on its objections to withhold documents and will promptly produce all responsive documents.

INTELLECTUAL PROPERTY + TECHNOLOGY LAW

knobbe.com

Exhibit 81
-634-

**Knobbe Martens**

**Request for Production No. 250**

Plaintiffs' Request No. 250 seeks "All documents and things related to decisions to research, design, and/or develop any Apple wrist worn monitor that performs pulse oximetry and/or any component of any Apple wrist worn monitor that performs pulse oximetry."

Apple raises several objections that all lack merit.  Apple's improper objections include objections "as overbroad and unduly burdensome because it seeks information neither relevant to any party's claim or defense nor proportional to the needs of the case," "to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of incorporating Plaintiffs' alleged trade secrets," "to the extent it seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court," and "to the extent it seeks information relating to Apple's unreleased products." Those objections lack merit for the same reasons as Request No. 249.

Please confirm that Apple is not relying on its objections to withhold documents and will promptly produce all responsive documents.

**Request for Production No. 251**

Plaintiffs' Request No. 251 seeks "An inspection of any Apple product that calculates one or more physiological parameters including but not limited to pulse oximetry, including without limitation, prior and future planned versions and prototypes."

Apple raises several objections that all lack merit.  Apple's improper objections include objections "as overbroad and unduly burdensome because it seeks information neither relevant to any party's claim or defense nor proportional to the needs of the case," "as overbroad and unduly burdensome because it requests documents related to "physiological parameters," a term that encompasses features and technologies that are not relevant to any issues in this case," "the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not identified in their Complaint or otherwise accused of incorporating Plaintiffs' alleged trade secrets," "to this Request to the extent it seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court," and "to the extent it seeks information relating to Apple's unreleased products."  Apple further responded that it "will not make available any future planned versions and prototypes of the Apple Watch."  Those objections lack merit for the same reasons as Request No. 249.

Please confirm that Apple is not relying on its objections to withhold documents and will promptly provide fully responsive inspections, including of responsive future planned versions and prototypes of the Apple Watch.

**Request for Production No. 252**

Plaintiffs' Request No. 252 seeks "An inspection of any Apple wrist worn monitor that performs pulse oximetry, including without limitation, prior and future planned versions and prototypes."

Apple raises several objections that all lack merit.  Apple's improper objections include objections "as overbroad and unduly burdensome because it seeks information neither relevant to any party's claim or defense nor proportional to the needs of the case," "to the extent it seeks documents related to products that are not relevant to this litigation or documents related to products Plaintiffs have not

**knobbe.com**

Exhibit 81
-635-

**Knobbe Martens**

identified in their Complaint or otherwise accused of incorporating Plaintiffs' alleged trade secrets," "to the extent it seeks discovery related to Plaintiffs' patent infringement allegations, which have been stayed by the Court," and "to the extent it seeks information relating to Apple's unreleased products." Apple further responded that it "will not make available any future planned versions and prototypes of the Apple Watch." Those objections lack merit for the same reasons as Request No. 249.

Please confirm that Apple is not relying on its objections to withhold documents and will promptly provide fully responsive inspections, including of responsive future planned versions and prototypes of the Apple Watch.

### Request for Production No. 253

Plaintiffs' Request No. 253 seeks "All trial and deposition transcripts of testimony by any current or former Apple employee in any litigation or legal proceeding, related to calculating one or more physiological parameters including but not limited to pulse oximetry." Apple responded that it is willing to meet and confer with Plaintiffs to discuss the scope of this Request. Plaintiffs hereby request that meet and confer.

### Request for Production No. 255

Plaintiffs' Request No. 255 seeks "All communications between an Apple employee or Apple representative, including Apple's inhouse or outside counsel, and any employee of Plaintiffs while the employee was employed by Plaintiffs." Apple responded that it is willing to meet and confer with Plaintiffs to discuss the scope of this Request. Plaintiffs hereby request that meet and confer.

### Request for Production No. 256

Plaintiffs' Request No. 256 seeks "All business reports related to anticipated or actual profitability by product or business unit, related to Apple Watch Products." Apple responded that it is willing to meet and confer with Plaintiffs to discuss the scope of this Request. Plaintiffs hereby request that meet and confer.

We are available to meet and confer regarding these Requests on May 5 between 11am-4pm PT, May 6 between 8am-2pm and after 3pm PT, May 7 between 8am-2pm PT, and May 10 between 8am-10:30am or after 1pm PT. Please confirm Apple's availability during one of those times.

Best regards,

Alan G. Laquer

knobbe.com

Exhibit 81
-636-

EXHIBIT 82

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian K. Andrea
Direct: +1 202.887.3624
Fax: +1 202.530.4220
BAndrea@gibsondunn.com

May 13, 2021

VIA E-MAIL

Alan G. Laquer
Knobbe, Martens, Olson & Bear, LLP
2040 Main Street, 14th Floor,
Irvine, CA 92614
Alan.Laquer@knobbe.com

Re:    *Masimo Corp. et al. v. Apple, Inc.*, C.A. 8:20-cv-00048 (C.D. Cal.)

Dear Alan:

I write in response to your letter dated May 4, 2021, regarding Plaintiffs' Sixth Set of Requests for Production.

**RFP Nos. 249–252:** Apple's objections to these overbroad requests are supported by law. As Apple has twice explained in its portions of Plaintiffs' two recent motions to compel (Dkt. Nos. 353-1; 359-1), discovery in this case is cabined by the alleged trade secrets in Plaintiffs' Section 2019.210 disclosure and Plaintiffs' allegations in the Fourth Amended Complaint, which accuse only the Apple Watch of incorporating Plaintiffs' purported trade secrets. Plaintiffs' attempt to obtain discovery beyond these limits is improper.

RFPs 249–252 are overbroad on their face because they request discovery into products that are not accused in this action and are therefore irrelevant. Plaintiffs have alleged only that the Apple Watch Series 4, 5, and 6 purportedly "include[] Plaintiffs' technologies." Dkt. No. 296-1, ¶ 25). Apple independently researches, develops, and manufactures a host of products that are completely unrelated to this lawsuit—e.g., the Mac, iPad, iPhone, Apple TV, and AirPods. For example, as currently phrased, RFPs 249 and 251 would encompass any number of features, such as the iPhone's Face ID feature, which is obviously irrelevant to any claim or defense in this case. Similarly, RFPs 250 and 252 encompass unreleased products that Plaintiffs have not accused in this case. In short, Plaintiffs' discovery is bounded by their allegations in the Complaint, and Plaintiffs are not entitled to more. *See MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2021 WL 719649, at *2 (S.D. Cal. Feb. 24, 2021) (Plaintiffs' Amended Complaint "confirm[s] that this case is about . . . "PBM"[] products offered by IQVIA . . . Plaintiffs' RFPs, however, are not limited to PBM products. Because Plaintiffs' RFPs would require Defendants to produce documents on products not at issue in this case, the Court declines to compel . . . further responses."); *In re Outlaw Labs., LP Litig.*, 2020 WL 4436364, at *5 (S.D. Cal. Aug. 3, 2020) (RFP was overbroad where it "include[ed], but [was] not limited to" accused products).

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

Exhibit 82
-637-

**GIBSON DUNN**

Alan G. Laquer
Page 2

Plaintiffs' reliance on *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1383 (2000), and *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. Apr. 23, 2012), is misplaced. In *PMC*, The California Court of Appeal explained the unremarkable point that using "confidential information in . . . research or development" may qualify as use of a trade secret under the definition of misappropriation. *Id.* at 1383. Nothing in *PMC* suggests that Plaintiffs here are entitled to discovery into Apple's unreleased products or other products that Plaintiffs have not accused of incorporating their alleged trades secrets. Indeed, the products at issue in *PMC* were already being sold, and plaintiffs identified those products in their allegations. *See id.* at 1377 (noting plaintiffs' allegations that defendants already "beg[a]n producing [the accused] products); Appellant's Opening Brief at *2, *PMC, Inc. v. Kadisha*, 1999 WL 33738694 (Cal. App. 2 Dist. Nov. 22, 1999) (plaintiffs arguing that defendants' accused products "continue[d] to be produced and sold"). The products at issue in *SkinMedica* were also limited to those accused of misappropriation, and that court's discussion of building upon and modifying an allegedly misappropriated trade secret was only part of its holding that a defendant need not use every element of the secret to misappropriate it. *See* 869 F. Supp. 2d at 1197 (S.D. Cal. 2012). In short, neither *PMC* nor *SkinMedica* provides support for Plaintiffs' misguided argument that they should be allowed to sift through Apple's confidential files for information that is wholly unrelated to their allegations in this case.

For at least the reasons explained in my November 12, 2020 letter to Stephen Larson, information regarding Apple's unreleased products is irrelevant to this litigation because Apple has not put such information at issue. *See* November 12, 2020 Letter from Brian Andrea to Stephen Larson at 1. By contrast, Apple's discovery requests regarding Plaintiffs' prototype "wrist worn monitor" are directly relevant, reasonable, and appropriate, because Plaintiffs *themselves* "intentionally put its prototype 'wrist worn monitor' at issue in this case by arguing that there is evidence that Masimo competes or will compete with Apple." *Id.*; *see* Dkt. 209-1 at 4, 13. Plaintiffs' attempt to distinguish Apple's cited cases on the ground that they did not involve trade secret claims is unpersuasive. Regardless of the claim, requests seeking information into unreleased products are routinely denied because they are "outside the scope of discovery." *Fenster*, 2005 WL 2304190, at *6. Accordingly, Plaintiffs' attempt to seek discovery into Apple's unreleased products is improper because such discovery is not "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Apple will produce non-privileged documents responsive to these requests that it locates after a reasonable search and that are limited to the Apple Watch Series 4–6 and SE products, which are the specific products accused in this case. Plaintiffs are not entitled under Rule 26 to unbounded discovery.

Exhibit 82
-638-

**GIBSON DUNN**

Alan G. Laquer
Page 3

**RFP No. 253:**  This RFP is addressed in the separate letter from Ilissa Samplin to Mark Kachner dated May 7, 2021.

**RFP Nos. 255 and 256:**  Per Plaintiffs' request, Apple is available as noted below to meet and confer with Plaintiffs to discuss the scope of these RFPs .

*     *     *

Apple is available to meet and confer with Plaintiffs regarding these RFPs on Friday, May 14, 2021, between 9 am and noon Pacific.  Please let us know what time therein works for Plaintiffs, and we will circulate a dial-in.

Sincerely,

Brian K. Andrea

Exhibit 82
-639-

EXHIBIT 84

| | |
|---|---|
| **From:** | Karina.Villanueva |
| **To:** | *** Apple-Masimo; Lerner, Joshua H.; Lyon, H. Mark; Buroker, Brian M.; Samplin, Ilissa; Kaounis, Angelique; BAndrea@gibsondunn.com; BRosenthal@gibsondunn.com |
| **Cc:** | Masimo.Apple |
| **Subject:** | Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Document Production (MASA016-017) |
| **Date:** | Friday, May 7, 2021 2:48:56 PM |

Counsel,

Documents bearing production numbers MASA00159364 - MASA00184089 (MASA016-MASA017) are available for download at ███████████████████████████. Please note a portion of the documents are designated Highly Confidential – Attorneys' Eyes Only pursuant to the parties protective order. The password to the zip files is the same as the prior productions.

Best regards,
Karina


**Karina Villanueva**
Litigation Paralegal
Karina.Villanueva@knobbe.com

949-721-2928 **Direct**

**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com

Exhibit 84
-644-

EXHIBIT 85

| From: | Karina.Villanueva |
|---|---|
| To: | *** Apple-Masimo; Lerner, Joshua H.; Lyon, H. Mark; Buroker, Brian M.; Samplin, Ilissa; Kaounis, Angelique; BAndrea@gibsondunn.com; BRosenthal@gibsondunn.com |
| Cc: | Masimo.Apple |
| Subject: | Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Document Production (MASA018) |
| Date: | Monday, May 10, 2021 11:25:09 AM |

Counsel,

Documents bearing production numbers MASA00184090 - MASA00184172 (MASA018) are available for download at ███████████████████████████████████████████████. Please note the production is designated Highly Confidential – Attorneys' Eyes Only pursuant to the parties protective order. The password to the zip files is the same as the prior productions.

Best,

**Karina Villanueva**
Litigation Paralegal
Karina.Villanueva@knobbe.com

949-721-2928 **Direct**

**Knobbe Martens**

2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com

Exhibit 85
-645-

# EXHIBIT 88

| | |
|---|---|
| **From:** | Perry.Oldham |
| **To:** | Kaounis, Angelique |
| **Cc:** | *** Apple-Masimo; Masimo.Apple |
| **Subject:** | RE: Masimo Corp. et al. v. Apple Inc., Case No. 8:20-cv-00048-JVS-JDE - Draft Agreement for Dr. Marco Perez |
| **Date:** | Friday, May 21, 2021 10:34:14 PM |
| **Attachments:** | Proposed Order.pdf |
| | Notice of Motion.pdf |
| | Oldham Declaration and Exhibits.pdf |
| | Joint Stipulation re Expert Perez.DOC |

Dear Angelique,

We have not received a response to my email from earlier today, and it appears the parties are at an impasse.

Please find attached Plaintiffs' portion of the Joint Stipulation, along with the Oldham Declaration, Proposed Order, and Notice of Motion.

Please provide your availability to discuss the briefing schedule. I am available over the weekend if needed.

Best regards,

Perry

**Perry Oldham**
Partner
949-721-2961
**Knobbe Martens**

---

**From:** Perry.Oldham
**Sent:** Friday, May 21, 2021 3:35 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc., Case No. 8:20-cv-00048-JVS-JDE - Draft Agreement for Dr. Marco Perez

Dear Angelique,

Thank you for agreeing to the further limitations in Paragraph No. 1. We seem to be making progress.

On the clinical trial issue, we do not understand your claim that the language somehow restricts Dr. Perez' ability to practice medicine, and that is not our intent. Thus, it appears you may be interpreting the language differently than we intend. We simply maintain that, if he actually reviews Plaintiffs' highly confidential information (some of which has been refined over the past 30 years) on

**Exhibit 88**
-651-

how they design and conduct clinical trials in the specifically identified areas, that Dr. Perez should not provide design input for clinical trials in the same area in the future.  Your email suggests that Dr. Perez will under no circumstances agree to any restrictions on him designing clinical trials in the future, even directly in the area of those clinical trial designs he saw in Plaintiffs' highly confidential documents.  But, that is not simply practicing medicine.  Please let us know immediately if our understanding is incorrect, as we would like to clarify the language if the issue can be resolved.

We did not intend the language on clinical trials to place restrictions on Dr. Perez ability to practice medicine. It only places restrictions on the development of clinical protocols in the subject areas for which he receives confidential information revealing how Plaintiffs design or conduct clinical trial.  Please let us know immediately why this limitation would prevent Dr. Perez from practicing medicine.

Plaintiffs have not attempted to redefine the word employee. Rather, your arguments continue to attribute a position to Plaintiffs that Plaintiffs have never taken.

The simple fact remains that Dr. Perez was retained by Apple to "design the protocols for the Apple Heart Study," and not as an individual "to whom disclosure [was] reasonably necessary for this Action." Thus, the work that Dr. Perez previously performed for Apple was not pursuant to being a consultant as that term is defined in the protective order.  The label Apple chooses to apply to the prior work does not change the nature of that work.  Designing protocols for the Apple Heart Study does not make Dr. Perez an individual "to whom disclosure [was] reasonably necessary for this Action."

To be clear on something you appear to have misunderstood, as I stated earlier, "[t]he conference of counsel occurred on Friday, May 14, and we will timely provide Plaintiff's portion of the Joint Stipulation later today on May 21."

The Protective Order does not specify which party is to request  a conference of counsel when objections are made.  Rather, Paragraph 9.2(c) of the Protective Order simply states "the Parties agree to meet and confer within seven (7) days following the objection and to use good faith to resolve any such objection."  Previously, Apple requested the conference of counsel when Plaintiffs made objections under the protective order.  *See*, *e.g.*, Brian Andrea's 9/1/2020 email to Adam Powell requesting a meet and confer. When you raised the issue with respect to Dr. Perez, we promptly conferred with you.

Plaintiffs maintain that this course of action is consistent with the Protective Order and the parties' prior interactions.

Assuming we do not get further agreement from Apple, we will provide the Joint Stipulation later today.

Best regards,

Perry

Exhibit 88
-652-

**Perry Oldham**
Partner
949-721-2961
**Knobbe Martens**

---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Friday, May 21, 2021 1:42 PM
**To:** Perry.Oldham <Perry.Oldham@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc., Case No. 8:20-cv-00048-JVS-JDE - Draft Agreement for Dr. Marco Perez

Perry,
Thanks for your email.  As you note below, Dr. Perez already agreed to a compromise as set forth in Paragraph No. 1 of the proposed agreement I sent you.  We expect Dr. Perez will agree to Plaintiffs' addition limitations in Paragraph No. 1 highlighted below:

> I will not review algorithms for calculating heart rate, oxygen saturation, electrocardiograms, or arrhythmia detection designated by Plaintiffs as "Confidential" or "Highly Confidential".

However, as we've explained, Dr. Perez cannot agree to a future limitation on his ability to conduct research and practice medicine.  Plaintiffs' speculative concern that he will violate the terms of the Protective Order in his future consulting work based on his past work for Apple does not justify such an unreasonable restriction.  Dr. Perez already has agreed to abide by the terms of the Protective Order.

Plaintiffs' discussion of Section 9.2(c) below does not advance the dialogue.  Plaintiffs' attempt to redefine the term "employee" to include a "consultant"—by claiming the phrase "contract employee" (which appears nowhere in the PO) somehow encompasses a "consultant" is unsupported by the PO.  Plaintiffs are attempting to retroactively insert a restriction into the Protective Order that they could have negotiated, or presented to the Court at the time they submitted their proposed Protective Order, but did not.  We encourage Plaintiffs to reconsider their position. However, if they choose not to do so, we expect to receive Plaintiffs' portion of the joint stipulation today.

Finally, as you know, it remains Apple's position that Plaintiffs waived their objections to Dr. Perez by failing to timely meet and confer or timely provide their portion of the joint stipulation under the terms of the PO and the local rules, as I previously explained.  Your attempt to characterize last week's meet and confer as a "timely conference of counsel" is not well-taken for the reasons I previously described.  Apart from the timeliness issue, as you know, Plaintiffs did not serve a letter requesting such a Rule 37 conference—let alone identify any legal authority Plaintiffs believe is dispositive of the dispute or specify the terms of the

3

Exhibit 88
-653-

discovery order to be sought as required by Rule 37.

Apple reserves all rights.
Thanks,
Angelique

**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Perry.Oldham <Perry.Oldham@knobbe.com>
**Sent:** Thursday, May 20, 2021 11:50 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Re: Masimo Corp. et al. v. Apple Inc., Case No. 8:20-cv-00048-JVS-JDE - Draft Agreement for Dr. Marco Perez

[External Email]
Dear Angelique,

The document you attached today appears to be the same document you sent two days ago. Please confirm that you have simply reverted to your prior draft, without further compromise.

Based on our understanding that you intended to send us the same document again, we accepted your changes and made a further compromise for your consideration. The redlines include more specificity to the types of algorithms that Dr. Perez will not receive, and establish that Dr. Perez will not develop clinical studies in areas for which he receives Plaintiffs' confidential information regarding clinical studies.

It also appears that you have misunderstood our interpretation of Protective Order.

Consultants can be employed in a variety of contexts, including both legal and non-legal matters. Section 9.2(c) uses the term "consultants" in the context of legal matters ("to whom disclosure is reasonably necessary for this Action"). Apple's prior retention of Dr. Perez was not in the context of a legal matter. Rather, it was in the context of the type of work that would be done by a contract employee.

4

Exhibit 88
-654-

Regardless, whether he was called a "consultant" or something else in the context of his work for Apple is irrelevant.  Our understanding is that Dr. Perez worked for Apple in a non-legal context, advising on physiological measurement analysis and clinical studies.  We believe that type of work presents a very high risk of inadvertent disclosure.

The conference of counsel occurred on Friday, May 14, and we will timely provide Plaintiff's portion of the Joint Stipulation on Friday, May 21.

Please let us know if Apple agrees with any portion of the redlines in the attached document, or if Apple stands on its original draft.

Best regards,

Perry


**Perry Oldham**

Partner

949-721-2961

# Knobbe Martens


---

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Tuesday, May 18, 2021 6:29 PM
**To:** Perry.Oldham <Perry.Oldham@knobbe.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc., Case No. 8:20-cv-00048-JVS-JDE - Draft Agreement for Dr. Marco Perez

Perry,
Thanks for the draft proposal.  Plaintiffs' proposal is not workable for Dr. Perez.  As we explained on last week's call, Plaintiffs' further limitations on Dr. Perez's ability to practice medicine and engage in clinical research are not required by the Protective Order.  Among other things, as we pointed out, the PO distinguishes between consulting and employment roles, a distinction that Plaintiffs now wish to ignore.
We reiterate our proposal to not show Dr. Perez Plaintiffs' algorithms and have revised the attached proposed agreement accordingly. We also have stricken some unnecessary language. Please let us know if this proposal is acceptable or if Plaintiffs intend to maintain their objection. If the latter, please send us Plaintiffs' portion of the joint stipulation tomorrow. Apple reserves all rights.
Thanks,
Angelique

Exhibit 88
-655-

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Perry.Oldham <Perry.Oldham@knobbe.com>
**Sent:** Monday, May 17, 2021 10:21 AM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc., Case No. 8:20-cv-00048-JVS-JDE - Draft Agreement for Dr. Marco Perez

[External Email]
Dear Angelique,

Attached is a draft agreement for Dr. Perez that incorporates some of the ideas we discussed last week.  Please let me know when you are ready to discuss further.

Best regards,

Perry


**Perry Oldham**

Partner

949-721-2961

## Knobbe Martens

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Exhibit 88
-656-

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 88
-657-

# EXHIBIT 89

| From: | Andrea, Brian |
|---|---|
| To: | Masimo.Apple |
| Cc: | *** Apple-Masimo |
| Subject: | Masimo v. Apple - Goldberg and Smith Disclosures |
| Date: | Friday, May 21, 2021 4:02:06 PM |

Counsel,

I write in response to your disclosure of Jack Goldberg and John Smith pursuant to Section 9.2 of the Protective Order.

Apple objects to Plaintiffs' designation of Jack Goldberg and John Smith.  Based on Plaintiffs' objections to date and Plaintiffs' continuing objection to Dr. Perez, Plaintiffs appear to be taking the position that the proper standard for technical experts to obtain designated material under the Protective Order is that an expert cannot undertake consulting or other work in any field relating to non-invasive physiological monitoring unless s/he agrees to future restrictions beyond the terms of the PO.  While Plaintiffs attempt to distinguish between litigation and non-litigation work, they provide no rational basis for that distinction.  Since that is Plaintiffs' proposed standard for experts, then Plaintiffs also must meet that standard with respect to their own experts.

Apple objects to the disclosure of confidential information to Jack Goldberg because he appears to be currently involved in engineering and consulting in non-invasive physiological monitoring for Metrionix, Inc.  Apple also objects to the disclosure of confidential information to John Smith because he is currently involved in consulting in the areas of various non-invasive physiological monitoring technologies, including noninvasive blood measurements.  Please provide more information about the engineering and consulting activities of John Smith and Jack Goldberg.

Best regards,
Brian Andrea

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 89
-658-

# EXHIBIT 90

DISCOVERY-CJB,MEDIATION-MPT,PATENT

**U.S. District Court**
**District of Delaware (Wilmington)**
**CIVIL DOCKET FOR CASE #: 1:19-cv-00097-CFC-CJB**

| | |
|---|---|
| Magnolia Medical Technologies, Inc. v. Kurin, Inc. | Date Filed: 01/16/2019 |
| Assigned to: Judge Colm F. Connolly | Jury Demand: Plaintiff |
| Referred to: Judge Christopher J. Burke | Nature of Suit: 830 Patent |
| Cause: 35:271 Patent Infringement | Jurisdiction: Federal Question |

**Plaintiff**

**Magnolia Medical Technologies, Inc.**          represented by     **Douglas Edward McCann**
Fish & Richardson, P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
302- 652-5070
Fax: 302-652-0607
Email: dmccann@fr.com
*TERMINATED: 03/15/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rodger Dallery Smith , II**
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 351-9205
Email: rdsefiling@mnat.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anthony David Raucci**
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302-351-9392
Email: araucci@mnat.com
*ATTORNEY TO BE NOTICED*

**Ashok Ramani**
Email: ashok.ramani@davispolk.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Corrin N. Drakulich**
Email: drakulich@fr.com
*TERMINATED: 03/15/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David J. Lisson**
Email: david.lisson@davispolk.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

Exhibit 90
-659-

**Katherine D. Prescott**
Pro Hac Vice
Email: prescott@fr.com
*TERMINATED: 03/15/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kathryn B. Bi**
Email: kathryn.bi@davispolk.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maria Elena Stiteler**
Email: stiteler@fr.com
*TERMINATED: 12/06/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mathias Samuel**
Email: samuel@fr.com
*TERMINATED: 01/29/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Micah G. Block**
Email: micah.block@davispolk.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Philip T. Sheng**
Email: philip.sheng@davispolk.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert M. Oakes**
Fish & Richardson, P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
302-778-8477
Email: Oakes@fr.com
*TERMINATED: 03/15/2021*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kurin, Inc.**                    represented by **Cyndi Claxton**
Email: claxton@turnerboyd.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jacob Zweig**
Email: zweig@turnerboyd.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Seraphine**
Email: seraphine@turnerboyd.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Hangartner**

Exhibit 90
-660-

Email: jon@x-patents.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen I. Boyd**
Email: boyd@turnerboyd.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth Laurence Dorsney**
Morris James LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
(302) 888- 6855
Fax: (302) 571-1750
Email: kdorsney@morrisjames.com
*ATTORNEY TO BE NOTICED*

**Louis L. Wai**
Email: wai@turnerboyd.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Kurin, Inc.**                    represented by   **Kenneth Laurence Dorsney**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Magnolia Medical Technologies, Inc.**      represented by   **Douglas Edward McCann**
(See above for address)
*TERMINATED: 03/15/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katherine D. Prescott**
(See above for address)
*TERMINATED: 03/15/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert M. Oakes**
(See above for address)
*TERMINATED: 03/15/2021*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Kurin, Inc.**                    represented by   **Jacob Zweig**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karen I. Boyd**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kenneth Laurence Dorsney**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Louis L. Wai**

Exhibit 90
-661-

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Magnolia Medical Technologies, Inc.**                    represented by    **Douglas Edward McCann**
(See above for address)
*TERMINATED: 03/15/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katherine D. Prescott**
(See above for address)
*TERMINATED: 03/15/2021*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert M. Oakes**
(See above for address)
*TERMINATED: 03/15/2021*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/16/2019 | 1 | COMPLAINT for PATENT INFRINGEMENT filed with Jury Demand against Kurin, Inc. - Magistrate Consent Notice to Pltf. ( Filing fee $ 400, receipt number 0311-2546273.) - filed by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Civil Cover Sheet)(nmg) (Entered: 01/17/2019) |
| 01/16/2019 | 2 | Notice, Consent and Referral forms re: U.S. Magistrate Judge jurisdiction. (nmg) (Entered: 01/17/2019) |
| 01/17/2019 | | No Summons Issued. (nmg) (Entered: 01/17/2019) |
| 01/17/2019 | 3 | Report to the Commissioner of Patents and Trademarks for Patent/Trademark Number(s) US 9,855,001 ;US 10,028,689 . (McCann, Douglas) (Entered: 01/17/2019) |
| 01/17/2019 | 4 | Disclosure Statement pursuant to Rule 7.1: No Parents or Affiliates Listed filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 01/17/2019) |
| 01/23/2019 | | Case Assigned to Judge Colm F. Connolly. Please include the initials of the Judge (CFC) after the case number on all documents filed. (rjb) (Entered: 01/23/2019) |
| 03/07/2019 | 5 | First AMENDED COMPLAINT against Kurin, Inc.- filed by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T) (McCann, Douglas) (Attachment 4 replaced on 3/11/2019) (fms). (Entered: 03/07/2019) |
| 03/08/2019 | | Summons Issued with Magistrate Consent Notice attached as to Kurin, Inc. on 3/8/2019. (lak) (Entered: 03/08/2019) |
| 03/11/2019 | | PATENT REPORT NOTICE: Please note that if patents are being added to this case (D.I. 5 ), the filing party should complete the Report to Commissioner of Patents & Trademarks, and enter it on the docket using the PATENT/TRADEMARK REPORT event in the OTHER DOCUMENT list. The patent report form can be found at www.ded.uscourts.gov under the Clerk's Office FORMS button. (fms) (Entered: 03/11/2019) |
| 03/11/2019 | 6 | Report to the Commissioner of Patents and Trademarks for Patent/Trademark Number(s) US 9,855,001 ;US 10,028,689 ;US 10,039,483 ;US 10,220,139 . (McCann, Douglas) (Entered: 03/11/2019) |
| 03/11/2019 | 7 | SUMMONS Returned Executed by Magnolia Medical Technologies, Inc.. Kurin, Inc. served on 3/8/2019, answer due 3/29/2019. (McCann, Douglas) (Entered: 03/11/2019) |
| 03/11/2019 | | CORRECTING ENTRY: Per request of filer, Exhibit D to D.I. 5 has been removed and replaced with the full version of the exhibit. (fms) (Entered: 03/11/2019) |

Exhibit 90
-662-

| 03/19/2019 | 8 | STIPULATION TO EXTEND TIME for Defendant Kurin, Inc. to answer, move or otherwise respond to the First Amended Complaint to April 29, 2019 - filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 03/19/2019) |
|---|---|---|
| 03/20/2019 | | SO ORDERED, re 8 STIPULATION TO EXTEND TIME for Defendant Kurin, Inc. to answer, move or otherwise respond to the First Amended Complaint to April 29, 2019 filed by Kurin, Inc. Set/Reset Answer Deadlines: Kurin, Inc. answer due 4/29/2019. Signed by Judge Colm F. Connolly on 3/20/2019. (fms) (Entered: 03/20/2019) |
| 04/29/2019 | 9 | ANSWER to Amended Complaint, re: 5 Amended Complaint,, with Jury Demand , COUNTERCLAIM against All Plaintiffs by Kurin, Inc..(Dorsney, Kenneth) (Entered: 04/29/2019) |
| 04/29/2019 | 10 | Disclosure Statement pursuant to Rule 7.1: No Parents or Affiliates Listed filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 04/29/2019) |
| 04/30/2019 | 11 | MOTION for Pro Hac Vice Appearance of Attorney Karen I. Boyd, Louis Wai and Jacob S. Zweig - filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 04/30/2019) |
| 05/01/2019 | | SO ORDERED, re 11 MOTION for Pro Hac Vice Appearance of Attorney Karen I. Boyd, Louis Wai and Jacob S. Zweig filed by Kurin, Inc. Signed by Judge Colm F. Connolly on 5/1/2019. (fms) (Entered: 05/01/2019) |
| 05/03/2019 | | Pro Hac Vice Attorneys Jacob Zweig, Louis Wai, and Karen I. Boyd for Kurin, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (ddp) (Entered: 05/03/2019) |
| 05/09/2019 | 12 | Order Setting Scheduling Conference: A Scheduling Conference is set for 6/17/2019 at 03:30 PM in Chambers before Judge Colm F. Connolly. Signed by Judge Colm F. Connolly on 5/9/2019. (nmf) (Entered: 05/09/2019) |
| 05/09/2019 | 13 | FIRST AMENDED ANSWER and COUNTERCLAIMS against Magnolia Medical Technologies, Inc. by Kurin, Inc.(fms) (Entered: 05/10/2019) |
| 05/10/2019 | | D.I. 13 has been re-docketed using the answer docket event. (fms) (Entered: 05/10/2019) |
| 05/10/2019 | 14 | ANSWER to 13 Answer to Complaint, Counterclaim by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 05/10/2019) |
| 05/23/2019 | 15 | MOTION for Pro Hac Vice Appearance of Attorney Mathias Samuel, Juanita Brooks, Corrin Drakulich, Bethany Mihalik and Maria Elena Stiteler - filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 05/23/2019) |
| 05/23/2019 | | SO ORDERED, re 15 MOTION for Pro Hac Vice Appearance of Attorney Mathias Samuel, Juanita Brooks, Corrin Drakulich, Bethany Mihalik and Maria Elena Stiteler filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 5/23/2019. (fms) (Entered: 05/23/2019) |
| 05/30/2019 | 16 | NOTICE OF SERVICE of (1) First set of requests for production and (2) First set of interrogatories filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 05/30/2019) |
| 05/31/2019 | 17 | MOTION for Pro Hac Vice Appearance of Attorney Jennifer Seraphine - filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 05/31/2019) |
| 06/04/2019 | | SO ORDERED, re 17 MOTION for Pro Hac Vice Appearance of Attorney Jennifer Seraphine filed by Kurin, Inc. Signed by Judge Colm F. Connolly on 6/4/2019. (fms) (Entered: 06/04/2019) |
| 06/05/2019 | 18 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s First Set of Requests for Production to Defendant Kurin, Inc. (Nos. 1-59) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 06/05/2019) |
| 06/14/2019 | 19 | NOTICE of Appearance by Robert M. Oakes on behalf of Magnolia Medical Technologies, Inc. (Oakes, Robert) (Entered: 06/14/2019) |
| 06/14/2019 | 20 | PROPOSED ORDER Proposed Scheduling Order by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Letter to Judge Connolly from Robert M. Oakes)(Oakes, Robert) (Entered: 06/14/2019) |
| 06/17/2019 | | Minute Entry for proceedings held before Judge Colm F. Connolly - Scheduling Conference held on 6/17/2019. (Court Reporter V. Gunning.) Counsel to submit the final revised proposed scheduling order to the Court. (nmf) (Entered: 06/17/2019) |
| 06/20/2019 | 21 | PROPOSED ORDER Proposed Scheduling Order by Magnolia Medical Technologies, Inc.. (Oakes, Robert) (Entered: 06/20/2019) |

Exhibit 90
-663-

| 06/20/2019 | 22 | PROPOSED ORDER Protective Order by Magnolia Medical Technologies, Inc.. (Oakes, Robert) (Entered: 06/20/2019) |
| --- | --- | --- |
| 06/21/2019 | 23 | SO ORDERED, re 22 STIPULATED PROTECTIVE ORDER. Signed by Judge Colm F. Connolly on 6/20/2019. (nmf) (Entered: 06/21/2019) |
| 06/21/2019 | 24 | SCHEDULING ORDER: Case referred to the Magistrate Judge for the purpose of exploring ADR. Joinder of Parties due by 12/16/2019. Amended Pleadings due by 12/16/2019. Discovery due by 7/17/2020. Dispositive Motions due by 2/5/2021. Joint Claim Construction Brief due by 2/11/2020. A Markman Hearing is set for 3/19/2020 at 09:00 AM in Courtroom 4B before Judge Colm F. Connolly. A Final Pretrial Conference is set for 6/30/2021 at 04:00 PM in Courtroom 4B before Judge Colm F. Connolly. A Jury Trial is set for 7/12/2021 at 09:00 AM in Courtroom 4B before Judge Colm F. Connolly. Signed by Judge Colm F. Connolly on 6/20/2019. (nmf) (Entered: 06/21/2019) |
| 06/21/2019 | | CASE REFERRED to Chief Magistrate Judge Mary Pat Thynge for Mediation. Please see Standing Order dated January 20, 2016, regarding disclosure of confidential ADR communications. A link to the standing order is provided here for your convenience at http://www.ded.uscourts.gov/general-orders/magistrate-judges-standing-order-adr-mediation (cak) Modified on 6/21/2019 (cak). (Entered: 06/21/2019) |
| 06/21/2019 | | CORRECTING ENTRY: This matter has been referred to Chief Magistrate Judge Mary Pat Thynge, not Judge Fallon (cak) (Entered: 06/21/2019) |
| 06/24/2019 | 25 | NOTICE OF SERVICE of Defendant Kurin, Inc.'s Rule 26(a)(1) Initial Disclosures filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 06/24/2019) |
| 06/25/2019 | 26 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Initial Disclosures filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 06/25/2019) |
| 06/27/2019 | | CORRECTING ENTRY: The order previously filed as D.I. 27 setting an ADR teleconference before Judge Fallon has been deleted per the correcting entry issued on 6/21/2019. (lih) (Entered: 06/27/2019) |
| 07/01/2019 | 27 | NOTICE OF SERVICE of Responses to First Set of Requests for Production filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 07/01/2019) |
| 07/08/2019 | 28 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Objections and Responses to Defendant Kurin, Inc.'s First Set of Requests for Production of Documents and Things (Nos. 1-38) and Objections and Responses to Defendant Kurin, Inc.'s First Set of Interrogatories (Nos. 1-8) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 07/08/2019) |
| 07/08/2019 | 29 | NOTICE of Subpoena to Produce Documents to Richard G. Patton by Kurin, Inc. (Dorsney, Kenneth) (Entered: 07/08/2019) |
| 07/10/2019 | 30 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and Subpoena to Testify at a Deposition in a Civil Action filed by Magnolia Medical Technologies, Inc..(Oakes, Robert) (Entered: 07/10/2019) |
| 07/17/2019 | | Pro Hac Vice Attorney Maria Elena Stiteler,Corrin N. Drakulich,Mathias Samuel for Magnolia Medical Technologies, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (lak) (Entered: 07/17/2019) |
| 07/24/2019 | 31 | NOTICE OF SERVICE of Third Party Pathway, LLC's objections to Plaintiff's Subpoena to Produce Documents filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 07/24/2019) |
| 07/24/2019 | | Set Hearings: A Discovery Conference is set per request of counsel for 10/2/2019 at 09:00 AM in Courtroom 4B before Judge Colm F. Connolly. (nmf) (Entered: 07/24/2019) |
| 07/25/2019 | 32 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Disclosure of Asserted Claims and Infringement Contentions filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 07/25/2019) |
| 08/29/2019 | 33 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s First Set of Interrogatories to Defendant Kurin, Inc. (Nos. 1-9) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/29/2019) |
| 09/03/2019 | 34 | NOTICE OF SERVICE of Defendant Kurin, Inc.'s Invalidity Contentions filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 09/03/2019) |
| 09/26/2019 | | The 10/2/2019 Discovery Conference is cancelled per counsel as it is no longer needed. (nmf) (Entered: 09/26/2019) |

Exhibit 90
-664-

| 09/27/2019 | 35 | Letter to The Honorable Colm F. Connolly from Douglas E. McCann regarding Parties request to Amend Section G of the Protective Order - re 23 SO ORDERED, Protective Order. (Attachments: # 1 Proposed Stipulated Amended Protective Order)(McCann, Douglas) (Entered: 09/27/2019) |
|---|---|---|
| 10/01/2019 | 36 | NOTICE OF SERVICE of (1) Kurin's response to Magnolia's First Set of Interrogatories (Nos. 1-8); and (2) Kurin's Disclosure of Claim Terms for Construction filed by Kurin, Inc..(Dorsey, Kenneth) (Entered: 10/01/2019) |
| 10/01/2019 | 37 | STIPULATED AMENDED PROTECTIVE ORDER. Signed by Judge Colm F. Connolly on 10/1/2019. (fms) (Entered: 10/01/2019) |
| 10/02/2019 | 38 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Proposed Terms for Construction filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 10/02/2019) |
| 10/07/2019 | 39 | ORDER REFERRING CASE to Magistrate Judge Christopher J. Burke for all disputes relating to discovery and the protective order. Signed by Judge Colm F. Connolly on 10/7/2019. (nmf) (Entered: 10/07/2019) |
| 10/07/2019 | 40 | STIPULATION TO EXTEND TIME of Proposed Claim Construction Dates to Various - filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 10/07/2019) |
| 10/08/2019 | 41 | ORAL ORDER: The Court, having reviewed the case history in light of the October 7, 2019 referral, hereby ORDERS that the procedures for resolving a dispute relating to discovery or the protective order set out in the Scheduling Order, (D.I. 24 at 9-10), will be modified as follows: Should counsel find, after good faith efforts including verbal communication among Delaware and Lead Counsel for all parties to the dispute, that they are unable to resolve a discovery or protective order matter, the parties involved in the dispute shall submit a joint letter with the text set out in the Court's standard Rule 16 Scheduling Order for Patent cases, which can be found in the "Forms" tab of Magistrate Judge Burke's page on the District Court's website. For disputes relating to discovery, the moving party (i.e., the party seeking relief from the Court) should also file a Motion For Teleconference To Resolve Discovery Dispute, and for disputes relating to protective orders, the parties shall file a Joint Motion for Teleconference to Resolve Protective Order Dispute. The suggested text for these motions can be found in the same Forms tab. The Court will thereafter set a discovery or protective order dispute telephone conference. Ordered by Judge Christopher J. Burke on 10/8/2019. (mlc) (Entered: 10/08/2019) |
| 10/08/2019 | | SO ORDERED, re 40 STIPULATION TO EXTEND TIME of Proposed Claim Construction Dates to Various filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 10/8/2019. (fms) (Entered: 10/08/2019) |
| 10/10/2019 | 42 | NOTICE OF SERVICE of proposed constructions for claim terms filed by Kurin, Inc..(Dorsey, Kenneth) (Entered: 10/10/2019) |
| 10/11/2019 | 43 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Proposed Claim Constructions filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 10/11/2019) |
| 10/21/2019 | 44 | STIPULATION TO EXTEND TIME for Parties to File Joint Claim Construction Chart to October 23, 2019 - filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 10/21/2019) |
| 10/22/2019 | | SO ORDERED, re 44 STIPULATION TO EXTEND TIME for Parties to File Joint Claim Construction Chart to October 23, 2019 filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 10/22/2019. (fms) (Entered: 10/22/2019) |
| 10/23/2019 | 46 | MOTION for Claim Construction - filed by Magnolia Medical Technologies, Inc.(Oakes, Robert) (Entered: 10/23/2019) |
| 10/23/2019 | 47 | MOTION Claim Construction - filed by Kurin, Inc. (nmf) (Entered: 10/24/2019) |
| 10/23/2019 | 48 | CLAIM Construction Chart by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A - Disputed Terms, # 2 Exhibit B - Agreed-Upon Terms, # 3 Exhibit C - '001 patent, # 4 Exhibit D - '689 patent, # 5 Exhibit E - '483 patent, # 6 Exhibit F - '139 patent, # 7 Exhibit G - App. No. 15457082 re '001 patent, # 8 Exhibit H - App. No. 15832087 re '689 patent, # 9 Exhibit I - App. No. 15832091 re '483 patent, # 10 Exhibit J - App. No. 15899856 re '139 patent, # 11 Exhibit K - App. No. 60870599, # 12 Exhibit L - App. No. 11955635, # 13 Exhibit M - App. No. 13954528, # 14 Exhibit N - App. No. 14049326, # 15 Exhibit O - App. No. 14498102, # 16 Exhibit P - App. No. 14088842, # 17 Exhibit Q - App. No. 15432310, # 18 Exhibit R - App. No. 15435684, # 19 Exhibit S - App. No. 15448891)(Oakes, Robert) Modified on 10/24/2019 (fms). (Entered: 10/23/2019) |
| 10/24/2019 | | CORRECTING ENTRY: Kurin Inc.'s Motion for Claim Construction has been refiled correctly with the correct pdf per request of filer. (nmf) (Entered: 10/24/2019) |
| 10/24/2019 | | Remark re: D.I. 45 Claim Construction Chart (Exhibits C-S). The parties are to submit with the Joint Claim |

Exhibit 90
-665-

| | | |
|---|---|---|
| | | Construction Chart separate text-searchable pdfs for each asserted patent(s). Parties shall file the separate pdfs electronically using CM/ECF. Each separate pdf shall be labeled using the last three digits of the number of the patent in question so that it is possible to determine from looking at the docket sheet the patent in a particular exhibit. (fms) (Entered: 10/24/2019) |
| 10/24/2019 | | Remark: The claim construction chart filed at D.I. 45 has been removed from the docket as it has been refiled at D.I. 48 in accordance with Judge Connolly's filing requirements. The file date of D.I. 48 has been adjusted to 10/23/2019. (fms) (Entered: 10/24/2019) |
| 11/08/2019 | 49 | NOTICE OF SERVICE of Kurin's Second Set of Interrogatories to Plaintiff (No. 9) filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 11/08/2019) |
| 11/26/2019 | 50 | NOTICE OF SERVICE of Plaintiff's Opening Claim Construction Brief filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 11/26/2019) |
| 12/06/2019 | 51 | NOTICE of Withdrawal of Maria Elena Stiteler as Counsel by Magnolia Medical Technologies, Inc. (McCann, Douglas) (Entered: 12/06/2019) |
| 12/09/2019 | 52 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Objections and Responses to Defendant Kurin, Inc.'s Second Set of Interrogatories (No. 9) filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 12/09/2019) |
| 01/07/2020 | 53 | NOTICE OF SERVICE of (1) Kurin's Answering Claim Construction Brief; (2) Declaration of Warren P. Heim in support filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 01/07/2020) |
| 01/15/2020 | | ORAL ORDER: Due to a conflict in the Court's schedule, the Markman Hearing is rescheduled for 4/15/2020 at 09:00 AM in Courtroom 4B before Judge Colm F. Connolly. Ordered by Judge Colm F. Connolly on 1/15/2020. (nmf) (Entered: 01/15/2020) |
| 01/22/2020 | 54 | NOTICE OF SERVICE of Plaintiff's Reply Claim Construction Brief filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 01/22/2020) |
| 01/22/2020 | 55 | ORAL ORDER: This matter has been referred to Chief Magistrate Judge Mary Pat Thynge for ADR. Counsel are to advise on or before Wednesday, February 11, 2020, by email to Judge Thynge, with a copy to her Judicial Administrator, Ms. Kennedy, as well as opposing counsel, their clients interest in mediation and the timing when mediation is preferred with a very brief explanation why. Ordered by Chief Magistrate Judge Mary Pat Thynge on 1/22/20. (cak) (Entered: 01/22/2020) |
| 01/27/2020 | 56 | MOTION for Pro Hac Vice Appearance of Attorney Sabrina D. Wilson - filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 01/27/2020) |
| 01/27/2020 | | SO ORDERED, re 56 MOTION for Pro Hac Vice Appearance of Attorney Sabrina D. Wilson filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 1/27/2020. (nmf) (Entered: 01/27/2020) |
| 02/03/2020 | 57 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Second Set of Requests for Production to Defendant Kurin, Inc. (Nos. 60-66) and Second Set of Interrogatories to Defendant Kurin, Inc. (Nos. 9-12) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 02/03/2020) |
| 02/05/2020 | 58 | NOTICE OF SERVICE of Sur-reply claim construction brief filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 02/05/2020) |
| 02/11/2020 | 59 | JOINT CLAIM CONSTRUCTION BRIEF filed by Magnolia Medical Technologies, Inc.. (Oakes, Robert) (Entered: 02/11/2020) |
| 02/11/2020 | 60 | Joint APPENDIX re 59 Joint Claim Construction Brief by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Appendix JA0001-JA0199, # 2 Appendix JA0200-JA0350)(Oakes, Robert) (Entered: 02/11/2020) |
| 02/19/2020 | 61 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Third Set of Interrogatories to Defendant Kurin, Inc. (Nos. 13-14) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 02/19/2020) |
| 03/02/2020 | 62 | NOTICE OF SERVICE of (1) Kurin's response to Magnolia's Second Set of Interrogatories (Nos. 9-12); (2) Kurin's response to Magnolia's Second Set of Requests for Production (Nos. 60-66); and (3) Kurin's Third Set of Interrogatories to Magnolia (No. 10) filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 03/02/2020) |
| 03/05/2020 | 63 | MOTION for Pro Hac Vice Appearance of Attorney Jon Hangartner - filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 03/05/2020) |
| 03/05/2020 | | SO ORDERED, re 63 MOTION for Pro Hac Vice Appearance of Attorney Jon Hangartner filed by Kurin, |

Exhibit 90
-666-

| | | Inc. Signed by Judge Colm F. Connolly on 3/5/2020. (fms) (Entered: 03/05/2020) |
|---|---|---|
| 03/09/2020 | 64 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Amended Initial Disclosures filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 03/09/2020) |
| 03/16/2020 | 65 | NOTICE OF SERVICE of Kurin's response to Magnolia's Third Set of Interrogatories (Nos. 13-14) filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 03/16/2020) |
| 03/27/2020 | 66 | CLAIM Construction Chart by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A - Disputed Constructions, # 2 Exhibit B - Agreed-Upon Constructions)(McCann, Douglas) (Entered: 03/27/2020) |
| 03/27/2020 | 67 | Letter to The Honorable Colm F. Connolly from Douglas E. McCann regarding Claim Construction Hearing. (McCann, Douglas) (Entered: 03/27/2020) |
| 04/02/2020 | 68 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Objections and Responses to Defendant Kurin, Inc.'s Third Set of Interrogatories (No. 10) filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 04/02/2020) |
| 04/02/2020 | | ORAL ORDER: The Court has reviewed Plaintiff's letter dated March 27, 2020 (D.I. 67 ). In light of Defendant's objection to the use of a shared software presentation, the Court will convene the hearing by telephone at 9:15 a.m. on April 15, 2020. Defendant shall be responsible for arranging the teleconference. If a party wishes to rely on slides during the telephone hearing, it must submit the slides by email to the Court no later than 24 hours before the telephone hearing. Ordered by Judge Colm F. Connolly on 4/2/2020. (nmf) (Entered: 04/02/2020) |
| 04/14/2020 | | ORAL ORDER: The Court has reviewed carefully the parties' claim construction briefing. Defendant is hereby reminded that it is the practice of this judge not to entertain invalidity and unenforceability contentions made directly or indirectly through claim construction briefing and argument. The Court would like to know at the outset of tomorrow's argument whether the parties would agree to construe "diverter" to mean "a component that changes the direction of the flow of the fluid." Defendant shall be prepared to explain to the Court how "sequester" is different from "isolate." Plaintiff shall be prepared to explain to the Court how a housing can exist without housing anything and how an enclosure can exist without enclosing anything. The Court expects that the argument tomorrow should last no more than 60 minutes. Ordered by Judge Colm F. Connolly on 4/14/2020. (nmf) (Entered: 04/14/2020) |
| 04/15/2020 | | Minute Entry for proceedings held before Judge Colm F. Connolly - Markman Hearing held on 4/15/2020. (Court Reporter V. Gunning.) (nmf) (Entered: 04/15/2020) |
| 04/15/2020 | 69 | STIPULATION Regarding Extension of Discovery Deadlines by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 04/15/2020) |
| 04/15/2020 | 70 | Letter to The Honorable Colm F. Connolly from Douglas E. McCann regarding the reduction in claim terms. (McCann, Douglas) (Entered: 04/15/2020) |
| 04/16/2020 | | SO ORDERED, re 69 Stipulation filed by Magnolia Medical Technologies, Inc., Set/Reset Scheduling Order Deadlines: Fact Discovery completed by 9/18/2020., Opening Expert Reports due by 10/16/2020., Rebuttal Expert Reports due by 11/6/2020. Signed by Judge Colm F. Connolly on 4/16/2020. (fms) (Entered: 04/16/2020) |
| 04/22/2020 | 71 | Letter to The Honorable Colm F. Connolly from Douglas E. McCann regarding Proposed Structure for "Diverter". (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(McCann, Douglas) (Entered: 04/22/2020) |
| 04/24/2020 | 72 | PROPOSED ORDER re Claim Construction by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 04/24/2020) |
| 04/29/2020 | 73 | Letter to The Honorable Colm F. Connolly from Kenneth L. Dorsney regarding response to Magnolia's supplemental claim construction letter regarding the structure for "diverter". (Dorsney, Kenneth) (Entered: 04/29/2020) |
| 05/20/2020 | 74 | MEMORANDUM OPINION Signed by Judge Colm F. Connolly on 5/20/2020. (nmf) (Entered: 05/20/2020) |
| 05/20/2020 | 75 | CLAIM CONSTRUCTION ORDER Signed by Judge Colm F. Connolly on 5/20/2020. (nmf) (Entered: 05/20/2020) |
| 06/11/2020 | 76 | Letter to Magistrate Judge Christopher J. Burke from Robert M. Oakes and Kenneth L. Dorsney regarding Request for Scheduling a Discovery Teleconference. (Oakes, Robert) (Entered: 06/11/2020) |
| 06/12/2020 | 77 | ORAL ORDER: Setting Teleconference: The Court has reviewed the parties' June 11, 2020 letter requesting a discovery teleconference regarding two discovery disputes. (D.I. 76) It hereby ORDERS as follows with |

Exhibit 90
-667-

| | | |
|---|---|---|
| | | regard to these disputes: (1) A discovery dispute teleconference is set for June 29, 2020 at 1:00 p.m. before Judge Christopher J. Burke.; (2) By no later than June 17, 2020, any party seeking relief shall file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining the issues in dispute and its position on those issues.; (3) By no later than June 22, 2020, any party opposing the application for relief may file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining that party(s) reasons for its opposition.; (4) The moving party shall file the Motion For Teleconference To Resolve Discovery Dispute discussed in the Courts October 8, 2019 Oral Order. (D.I. 41); (5) By no later than June 26, 2020, the parties shall jointly provide the Court's Courtroom Deputy, Ms. Benyo, with a dial-in number via e-mail to use for the call.; and (6) It is possible that the Court may choose to resolve some or all of these disputes prior to the telephone conference and may, in that event, cancel the conference. Ordered by Judge Christopher J. Burke on 6/12/2020. (dlb) (Entered: 06/12/2020) |
| 06/12/2020 | 78 | Letter To The Honorable Colm F. Connolly from Kenneth L. Dorsney regarding Kurin's request for leave to file a motion for summary judgment of noninfringement of asserted patent 9,855,001. (Dorsney, Kenneth) (Entered: 06/12/2020) |
| 06/15/2020 | 79 | Letter To The Honorable Colm F. Connolly from Robert M. Oakes regarding Response to Defendant's request for leave to file an early summary judgment motion - re 78 Letter. (Oakes, Robert) (Entered: 06/15/2020) |
| 06/15/2020 | 80 | NOTICE OF SERVICE of Magnolia Medical Technologies, Inc.'s Subpoena to Testify at a Deposition and Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 06/15/2020) |
| 06/16/2020 | 81 | NOTICE OF SERVICE of Kurin's Privilege Log filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 06/16/2020) |
| 06/17/2020 | 82 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Privilege Log filed by Magnolia Medical Technologies, Inc..(Oakes, Robert) (Entered: 06/17/2020) |
| 06/17/2020 | 83 | [SEALED] Letter to Magistrate Judge Christopher J. Burke from Robert M. Oakes regarding Discovery Dispute - re 76 Letter. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Oakes, Robert) (Entered: 06/17/2020) |
| 06/17/2020 | 84 | MOTION for Discovery *Teleconference to Resolve Discovery Dispute* - filed by Magnolia Medical Technologies, Inc.. Motions referred to Christopher J. Burke.(Oakes, Robert) (Entered: 06/17/2020) |
| 06/19/2020 | 85 | [SEALED] Letter to The Honorable Colm F. Connolly from Robert M. Oakes regarding Plaintiff's opposition to Defendant's letter seeking leave to file an early motion for summary judgment of non-infringement of asserted patent 9,855,001 - re 78 Letter. (Oakes, Robert) (Entered: 06/19/2020) |
| 06/22/2020 | 86 | Letter to The Honorable Colm F. Connolly from Kenneth L. Dorsney regarding Kurin's request for leave to file an early motion for summary judgment of non-infringement. (Dorsney, Kenneth) (Entered: 06/22/2020) |
| 06/22/2020 | 87 | NOTICE OF SERVICE of Kurin's supplemental response to Magnolia's Interrogatories (No. 4) filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 06/22/2020) |
| 06/22/2020 | 88 | Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding Kurin's responsive discovery dispute letter - re 77 Order Setting Teleconference,,,,,. (Dorsney, Kenneth) (Entered: 06/22/2020) |
| 06/23/2020 | 89 | REDACTED VERSION of 83 Letter, *regarding Discovery Dispute* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Oakes, Robert) (Entered: 06/23/2020) |
| 06/23/2020 | 90 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Revised Privilege Log filed by Magnolia Medical Technologies, Inc..(Oakes, Robert) (Entered: 06/23/2020) |
| 06/24/2020 | 91 | REDACTED VERSION of 85 Letter, *regarding Plaintiff's opposition to Defendant's letter seeking leave to file an early motion for summary judgment of non-infringement of asserted patent 9,855,001* by Magnolia Medical Technologies, Inc.. (Oakes, Robert) (Entered: 06/24/2020) |
| 06/24/2020 | | ORAL ORDER: A telephone conference will be held on July 1, 2020 at 1:00 p.m. to address Defendant's request for leave to file a motion for summary judgment of noninfringement of the #001 patent. The Court notes that stopping a flow is not the same thing as diverting a flow. The parties shall be prepared to explain to the Court during the telephone conference whether the porous plug and umbrella valve depicted in the engineering drawings on page 3 of Plaintiff's letter (1) stop, (2) divert, or (3) can both stop and divert the "first flow path (U-shaped sequestration reservoir)" depicted in the image on page 2 of Plaintiff's letter. If either party thinks it would be helpful to the Court, it is invited to provide (either jointly or individually) the Court with a sample of the accused product before the telephone conference. ORDER Setting Teleconference: |

Exhibit 90
-668-

| | | |
|---|---|---|
| | | Counsel for Defendant to coordinate the call and email the dial-in information to chambers. A Telephone Conference is set for 7/1/2020 at 01:00 PM before Judge Colm F. Connolly. Ordered by Judge Colm F. Connolly on 6/24/2020. (nmf) (Entered: 06/24/2020) |
| 06/29/2020 | 92 | NOTICE OF SERVICE of Objections to Plaintiff's Third Party Subpoena of David Stroup filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 06/29/2020) |
| 06/29/2020 | | Minute Entry for proceedings held before Judge Christopher J. Burke - Discovery dispute teleconference held on 6/29/2020. The Court heard argument from the parties regarding Plaintiff's discovery dispute. The Court took the matter under advisement and will issue an order. (Court Reporter Valerie Gunning. Clerk: M. Crawford) Appearances: R. Oakes, C. Drakulich, M. Samuel for Plaintiff; B. Townsend, K. Boyd, J. Zweig for Defendant. (mlc) (Entered: 06/29/2020) |
| 06/30/2020 | 93 | MOTION for Pro Hac Vice Appearance of Attorney Cyndi Claxton - filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 06/30/2020) |
| 06/30/2020 | | Pro Hac Vice Attorney Jennifer Seraphine for Kurin, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (kmd) (Entered: 06/30/2020) |
| 06/30/2020 | 94 | DECLARATION re Oral Order,,,,, Order Setting Teleconference,,,, *executed by Jonathan Hangartner in support of Kurin's Samples of the Accused Product* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 06/30/2020) |
| 06/30/2020 | | SO ORDERED, re 93 MOTION for Pro Hac Vice Appearance of Attorney Cyndi Claxton filed by Kurin, Inc. Signed by Judge Colm F. Connolly on 6/30/2020. (fms) (Entered: 06/30/2020) |
| 07/01/2020 | | Minute Entry for proceedings held before Judge Colm F. Connolly - Telephone Conference held on 7/1/2020. (Court Reporter V. Gunning.) (nmf) (Entered: 07/01/2020) |
| 07/01/2020 | 95 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Supplemental Privilege Log filed by Magnolia Medical Technologies, Inc..(Oakes, Robert) (Entered: 07/01/2020) |
| 07/01/2020 | 96 | ORAL ORDER: The Court, having considered Plaintiff Magnolia Medical Technologies, Inc.'s ("Magnolia") discovery dispute motion ("Motion"), (D.I. 84), in which it asks the Court to order Defendant Kurin, Inc. ("Kurin") to provide complete written responses to Magnolia''s Interrogatory Nos. 4 and 10, (D.I. 83 at 1), the parties' letter briefs relating thereto, (D.I. 83; D.I. 88), and having heard argument on June 29, 2020, hereby ORDERS that the Motion is GRANTED-IN-PART as follows: (1) With respect to Interrogatory No. 4, the parties have agreed that Magnolia's request is now MOOT. (2) With respect to Interrogatory No. 10, Magnolia's request is GRANTED to the extent that by no later than July 31, 2020, Kurin shall serve a written limitation-by-limitation response describing why it believes each prior art reference or combination of prior art references invalidates the asserted claims of the 001, 483, and 139 patents, including the alleged motivation to combine each combination, and why it believes each asserted claim of the '001, '483 and '139 patents is invalid under 35 U.S.C. § 112. Magnolia served Interrogatory No. 10 on January 31, 2020, and Kurin has not yet substantively responded. (D.I. 83 at 1-2) The Federal Rules, however, require a party to serve its answers and any objections within 30 days after being served with an interrogatory (absent the parties' agreement or a court order setting forth a different deadline). Fed. R. Civ. P. 33(b)(2). Rule 33 does not permit a party to unilaterally set its own deadline to respond to an interrogatory, and there is no good reason why Kurin should not respond to this interrogatory during the discovery period in this case. Moreover, in light of the lack of explanation in Kurin's invalidity contentions (and in its supplemental letter) with respect to Kurin's obviousness contentions (e.g., why certain references read on certain claim language, or why a POSITA would have been motivated to combine certain references for obviousness purposes) and in its Section 112 defenses, the Court can certainly understand why Magnolia served Interrogatory No. 10 in the first place. (See D.I. 83, exs. C, D) The Court is mindful of Kurin's argument that Kurin may have to amend its invalidity contentions (which would likely impact any response to Interrogatory No. 10) if Magnolia amends its infringement contentions (as Magnolia hopes to do by mid-July); thus, if Kurin were required to respond to Interrogatory No. 10 right now, and then have to supplement that response after receipt of any properly amended infringement contentions, this would cause Kurin some extra work. (D.I. 88 at 3) However, the Court is also mindful that Interrogatory No. 10 has now been pending for six months. The Court's Order is meant to account both for Kurins extra work concern, but also for Magnolias need to get a long-overdue answer to this interrogatory. Thus, if Magnolia serves amended infringement contentions by July 17, 2020 (as it says it plans to do), and Kurin does not object to such contentions on "good cause" grounds, then Kurin's interrogatory response on July 31 will be able to account for those amended contentions. But if such amended infringement contentions are not in the case by then (e.g., because Kurin has objected on "good cause" grounds to Magnolia's proposed amended infringement contentions, and there has been no resolution to that "good cause" dispute), Kurin shall nevertheless still be required serve a response to Interrogatory No. 10 by July 31, absent further order of the Court. (3) With respect to Magnolia's request during the teleconference that the Court require Kurin to narrow its invalidity contentions to three primary references for each asserted |

Exhibit 90
-669-

| | | |
|---|---|---|
| | | claim, the Court DENIES the request. That dispute is not yet ripe and therefore has not been properly teed up before the Court. To extent the parties seek further relief regarding case narrowing after further meeting and conferring, they may bring that issue to the Courts attention in the future. Ordered by Judge Christopher J. Burke on 7/1/2020. (dlb) (Entered: 07/01/2020) |
| 07/15/2020 | 97 | [SEALED] NOTICE of 30(b)(6) Deposition Notice of Magnolia Medical Technologies, Inc. by Kurin, Inc. (Dorsney, Kenneth) (Entered: 07/15/2020) |
| 07/16/2020 | 98 | NOTICE of Rule 30(b)(6) Deposition of Kurin, Inc. by Magnolia Medical Technologies, Inc. (Oakes, Robert) (Entered: 07/16/2020) |
| 07/16/2020 | 99 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Second Amended Initial Disclosures and Plaintiff Magnolia Medical Technologies, Inc.'s First Supplemental Objections and Responses to Defendant Kurin, Inc.'s First Set of Interrogatories (Nos. 1, 3, 4, 7, 8) filed by Magnolia Medical Technologies, Inc..(Oakes, Robert) (Entered: 07/16/2020) |
| 07/20/2020 | 100 | NOTICE OF SERVICE of Magnolia's First Amended Disclosure of Asserted Claims and Infringement Contentions filed by Magnolia Medical Technologies, Inc..(Oakes, Robert) (Entered: 07/20/2020) |
| 07/21/2020 | 101 | REDACTED VERSION of 97 Notice (Other) *of 30(b)(6) Deposition to Plaintiff* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 07/21/2020) |
| 07/28/2020 | 102 | NOTICE OF SERVICE of (1) Kurin's subpoena to testify at deposition to Kathryn Beal; (2) Kurin's subpoena to testify at deposition to Shan Gaw; (3) Kurin's subpoena to testify at deposition to Jay Miazga; (4) Kurin's subpoena to produce documents to Kathryn Beal; (5) Kurin's subpoena to produce documents to Shan Gaw; and (6) Kurin's subpoena to produce documents to Jay Miazga filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 07/28/2020) |
| 07/30/2020 | 103 | NOTICE OF SERVICE of Objections to 30(b)(6) notice of deposition filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 07/30/2020) |
| 07/31/2020 | 104 | NOTICE OF SERVICE of Kurin's Supplemental Response to Magnolia's Interrogatory No. 10 filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 07/31/2020) |
| 08/04/2020 | 105 | [SEALED] MOTION for Leave to File *Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions* - filed by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Text of Proposed Order)(McCann, Douglas) (Entered: 08/04/2020) |
| 08/04/2020 | 106 | [SEALED] OPENING BRIEF in Support re 105 MOTION for Leave to File *Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions* filed by Magnolia Medical Technologies, Inc..Answering Brief/Response due date per Local Rules is 8/18/2020. (McCann, Douglas) (Entered: 08/04/2020) |
| 08/04/2020 | 107 | [SEALED] DECLARATION re 106 Opening Brief in Support, *of Douglas E. McCann* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A - Volume 1)(McCann, Douglas) (Entered: 08/04/2020) |
| 08/04/2020 | 108 | [SEALED] EXHIBIT re 107 Declaration *Exhibit B - Volume 2* by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/04/2020) |
| 08/04/2020 | 109 | [SEALED] EXHIBIT re 107 Declaration *Exhibit C-R - Volume 3* by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/04/2020) |
| 08/05/2020 | 110 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Notice of Subpoena on Ward Sparacio, Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and Subpoena to Testify at a Deposition in a Civil Action filed by Magnolia Medical Technologies, Inc..(Oakes, Robert) (Entered: 08/05/2020) |
| 08/05/2020 | 111 | MOTION for Pro Hac Vice Appearance of Attorney James Huguenin-Love - filed by Magnolia Medical Technologies, Inc.. (Oakes, Robert) (Entered: 08/05/2020) |
| 08/06/2020 | | SO ORDERED, re 111 MOTION for Pro Hac Vice Appearance of Attorney James Huguenin-Love filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 8/6/2020. (fms) (Entered: 08/06/2020) |
| 08/10/2020 | 112 | MOTION for Pro Hac Vice Appearance of Attorney Katherine D. Prescott and Charles N. Reese, Jr. - filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/10/2020) |
| 08/10/2020 | 113 | Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding request for the scheduling of a discovery teleconference. (Dorsney, Kenneth) (Entered: 08/10/2020) |
| 08/11/2020 | | SO ORDERED, re 112 MOTION for Pro Hac Vice Appearance of Attorney Katherine D. Prescott and |

Exhibit 90
-670-

| | | |
|---|---|---|
| | | Charles N. Reese, Jr. filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 8/11/2020. (fms) (Entered: 08/11/2020) |
| 08/11/2020 | 114 | NOTICE OF SERVICE of (1) Kurin's notice of deposition of Greg Bullington; (2) Kurin's notice of deposition of Bob Gerberich; (3) Kurin's notice of deposition of Tamara Johnson; (4) Kurin's notice of deposition of Richard Patton; and (5) Kurin's notice of deposition of Matthew Stuckert filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 08/11/2020) |
| 08/11/2020 | 115 | NOTICE OF SERVICE of Second supplemental privilege log filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 08/11/2020) |
| 08/11/2020 | 116 | REDACTED VERSION of 105 MOTION for Leave to File *Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Text of Proposed Order)(McCann, Douglas) (Entered: 08/11/2020) |
| 08/11/2020 | 117 | REDACTED VERSION of 106 Opening Brief in Support, by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/11/2020) |
| 08/11/2020 | 118 | REDACTED VERSION of 107 Declaration of *Douglas E. McCann* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A - Volume 1)(McCann, Douglas) (Entered: 08/11/2020) |
| 08/11/2020 | 119 | REDACTED VERSION of 108 Exhibit to a Document *Exhibit B - Volume 2* by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/11/2020) |
| 08/11/2020 | 120 | REDACTED VERSION of 109 Exhibit to a Document *Exhibit C-R - Volume 3* by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/11/2020) |
| 08/12/2020 | 121 | NOTICE to Take Deposition of Bob Rogers on August 17, 2020 filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/12/2020) |
| 08/12/2020 | 122 | NOTICE to Take Deposition of Chuck Covington on August 19, 2020 filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/12/2020) |
| 08/12/2020 | 123 | NOTICE to Take Deposition of Matt Heindel on August 21, 2020 filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/12/2020) |
| 08/12/2020 | 124 | NOTICE to Take Deposition of Kevin Nason on August 20, 2020 filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/12/2020) |
| 08/12/2020 | 125 | NOTICE to Take Deposition of Abby Norfleet on September 2, 2020 filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/12/2020) |
| 08/12/2020 | 126 | NOTICE OF SERVICE of Kathryn Beal, M.D.'s Objections and Responses to Kurin, Inc.'s Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action; Shan E. Gaw's Objections and Responses to Kurin, Inc.'s Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and Jay M. Miazga's Objections and Responses to Kurin, Inc.'s Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/12/2020) |
| 08/12/2020 | 127 | NOTICE OF SERVICE of (1) Kurin's First Set of Requests for Admission to Plaintiff (Nos. 1-29); (2) Kurin's Second Set of Requests for Production to Plaintiff (Nos. 39-52); and (3) Kurin's Fourth Set of Interrogatories to Plaintiff (Nos. 11-23) filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 08/12/2020) |
| 08/14/2020 | 128 | NOTICE to Take Deposition of David Lloyd on September 18, 2020 filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/14/2020) |
| 08/17/2020 | 129 | ORAL ORDER Setting Teleconference: The Court has reviewed the parties' August 10, 2020 letter requesting a discovery teleconference regarding two discovery disputes. (D.I. 113) It hereby ORDERS as follows with regard to these disputes: (1) A discovery dispute teleconference is set for August 31, 2020 at 1:00 p.m. before Judge Christopher J. Burke.; (2) By no later than August 20, 2020, any party seeking relief shall file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining the issues in dispute and its position on those issues.; (3) By no later than August 26, 2020, any party opposing the application for relief may file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining that party(s) reasons for its opposition.; (4) The moving party shall file the Motion For Teleconference To Resolve Discovery Dispute discussed in the Courts October 8, 2019 Oral Order. (D.I. 41); (5) By no later than August 27, 2020, the parties shall jointly provide the Court's Courtroom Deputy, Ms. Benyo, with a dial-in number via e-mail to use for the call.; and (6) It is possible that the Court may choose to resolve some or all of these disputes prior to the telephone conference and may, in that event, cancel the conference.. Signed by Judge Christopher J. Burke on 8/17/2020. (dlb) (Entered: 08/17/2020) |
| | | |

Exhibit 90
-671-

| | | |
|---|---|---|
| 08/17/2020 | [130](#) | NOTICE OF SERVICE of - supplemental response to third interrogatory and verification. filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 08/17/2020) |
| 08/18/2020 | | Pro Hac Vice Attorney Katherine D. Prescott for Magnolia Medical Technologies, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (kmd) (Entered: 08/18/2020) |
| 08/18/2020 | [131](#) | NOTICE OF SERVICE of Plaintiff's Responses and Objections to Kurin, Inc.'s Notice of Deposition of Magnolia Medical Techologies, Inc. Pursuant to Rule 30(b)(6) filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/18/2020) |
| 08/18/2020 | [132](#) | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Notice of Subpoena on Jamie Kelly, Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and Subpoena to Testify at a Deposition in a Civil Action filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/18/2020) |
| 08/18/2020 | [133](#) | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s First Supplemental Objections and Responses to Defendant Kurin, Inc.'s Third Set of Interrogatories (No. 10) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 08/18/2020) |
| 08/18/2020 | [134](#) | NOTICE OF SERVICE of Kurin's Fifth Set of Interrogatories to Plaintiff filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 08/18/2020) |
| 08/18/2020 | [135](#) | [SEALED] ANSWERING BRIEF in Opposition re [105](#) MOTION for Leave to File *Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions* filed by Kurin, Inc..Reply Brief due date per Local Rules is 8/25/2020. (Dorsney, Kenneth) (Entered: 08/18/2020) |
| 08/18/2020 | [136](#) | [SEALED] DECLARATION re [135](#) Answering Brief in Opposition, - *executed by Louis Wai* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 08/18/2020) |
| 08/20/2020 | [137](#) | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Fourth Set of Interrogatories to Defendant Kurin, Inc. (Nos. 15-24); Plaintiff Magnolia Medical Technologies, Inc.'s Third Set of Requests for Production to Defendant Kurin, Inc. (No. 67); and Plaintiff Magnolia Medical Technologies, Inc.'s First Set of Requests for Admission to Defendant Kurin, Inc. (No.1) filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/20/2020) |
| 08/20/2020 | [138](#) | [SEALED] Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding Kurin's initial discovery dispute letter - re 129 Order Setting Teleconference,,,,, [113](#) Letter. (Dorsney, Kenneth) (Entered: 08/20/2020) |
| 08/20/2020 | [139](#) | MOTION for Teleconference to Resolve Discovery Dispute re [138](#) Letter - filed by Kurin, Inc.. Motions referred to Christopher J. Burke.(Dorsney, Kenneth) (Entered: 08/20/2020) |
| 08/20/2020 | | Pro Hac Vice Attorney Cyndi Claxton for Kurin, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (myr) (Entered: 08/20/2020) |
| 08/24/2020 | [140](#) | REDACTED VERSION of [135](#) Answering Brief in Opposition, *to Plaintiff's Motion for Leave to Amend its Infringement and Willfulness Contentions* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 08/24/2020) |
| 08/24/2020 | [141](#) | REDACTED VERSION of [136](#) Declaration *of Louis Wai* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 08/24/2020) |
| 08/25/2020 | [142](#) | [SEALED] REPLY BRIEF re [105](#) MOTION for Leave to File *Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions* filed by Magnolia Medical Technologies, Inc.. (Attachments: # [1](#) Exhibit S, # [2](#) Exhibit T, # [3](#) Exhibit U, # [4](#) Exhibit V, # [5](#) Exhibit W, # [6](#) Exhibit X, # [7](#) Exhibit Y, # [8](#) Exhibit Z, # [9](#) Exhibit AA, # [10](#) Exhibit BB, # [11](#) Exhibit CC, # [12](#) Exhibit DD, # [13](#) Exhibit EE, # [14](#) Exhibit FF)(McCann, Douglas) (Entered: 08/25/2020) |
| 08/25/2020 | [143](#) | [SEALED] DECLARATION re [142](#) Reply Brief,, *of Douglas E. McCann* by Magnolia Medical Technologies, Inc.. (Attachments: # [1](#) Exhibit S, # [2](#) Exhibit T, # [3](#) Exhibit U, # [4](#) Exhibit V, # [5](#) Exhibit W, # [6](#) Exhibit X, # [7](#) Exhibit Y, # [8](#) Exhibit Z, # [9](#) Exhibit AA, # [10](#) Exhibit BB, # [11](#) Exhibit CC, # [12](#) Exhibit DD, # [13](#) Exhibit EE, # [14](#) Exhibit FF)(McCann, Douglas) (Entered: 08/25/2020) |
| 08/26/2020 | [144](#) | REDACTED VERSION of [138](#) Letter *to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding Kurin's initial discovery dispute letter* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 08/26/2020) |
| 08/26/2020 | [145](#) | NOTICE OF SERVICE of Kurin's supplemental response to Plaintiff's Interrogatories (Nos. 2, 11, 12 and 14) filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 08/26/2020) |

Exhibit 90
-672-

| 08/26/2020 | 146 | NOTICE OF SERVICE of notice of subpoenas to Bradley Nelson for documents and to testify filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 08/26/2020) |
|---|---|---|
| 08/26/2020 | 147 | [SEALED] Letter to The Honorable Christopher J. Burke from Douglas E. McCann regarding Discovery Dispute - re 113 Letter. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(McCann, Douglas) (Entered: 08/26/2020) |
| 08/27/2020 | 148 | NOTICE OF SERVICE of Objections and Responses to Plaintiff's Third Party Subpoena of Jamie Kelly filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 08/27/2020) |
| 08/27/2020 | 149 | NOTICE OF SERVICE of Second Supplemental Privilege Log filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 08/27/2020) |
| 08/31/2020 | | Minute Entry for proceedings held before Judge Christopher J. Burke - Discovery dispute teleconference held on 8/31/2020. The Court heard argument from the parties regarding Defendant's discovery dispute motion, (D.I. 139). The Court took the matter under advisement and will issue an order. (Court Reporter Valerie Gunning. Clerk: M. Crawford) Appearances: D. McCann and C. Drakulich for Plaintiff; K. Dorsney and K. Boyd for Defendant. (mlc) (Entered: 08/31/2020) |
| 08/31/2020 | 150 | [SEALED] MOTION for Leave to File *sur-reply to motion for leave to amend infringement contentions* - filed by Kurin, Inc.. (Attachments: # 1 Exhibit Attachment A - Sur-reply, # 2 Exhibit Attachment B - Declaration, # 3 Exhibit Certificate of service)(Dorsney, Kenneth) (Entered: 08/31/2020) |
| 08/31/2020 | 151 | REQUEST for Oral Argument by Kurin, Inc. re 105 MOTION for Leave to File *Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions*. (Dorsney, Kenneth) (Entered: 08/31/2020) |
| 08/31/2020 | 152 | NOTICE OF WITHDRAWAL OF COUNSEL - Sabrina D. Wilson to Withdraw as Attorney - filed by Magnolia Medical Technologies, Inc. (McCann, Douglas) Modified on 9/1/2020 (nmf). (Entered: 08/31/2020) |
| 09/01/2020 | 153 | ORAL ORDER: The Court, having reviewed Defendant's motion regarding a discovery dispute ("Motion"), (D.I. 139), in which Defendant requests that Plaintiff "be ordered to search and produce the electronic documents of [Plaintiff's] now-former V.P. of Marketing Brad Nelson[,]" (D.I. 138 at 1), the letter briefing related thereto, (D.I. 138; D.I. 147), and having heard oral argument on August 31, 2020, ("Tr."), hereby ORDERS that Defendant's Motion is GRANTED. Defendant has demonstrated good cause to justify this deviation from the Scheduling Order's terms (which had required the parties to only produce documents from seven custodians, absent a showing of good cause"). (D.I. 24, ex. B at 2(a)) First, Defendant must demonstrate its own diligence in seeking the information, see GlaxoSmithKline LLC v. Glenmark Pharms. Inc., Civil Action No. 14-877-LPS-CJB, 2016 WL 7319670, at *1 (D. Del. Dec. 15, 2016), and on that front, Defendant has done enough. It identified Mr. Nelson to Plaintiff months ago as someone it believed might have relevant information. (D.I. 138 at 1) After Mr. Nelson was not included in the group of seven Plaintiff custodians whose documents were searched, Defendant raised the instant dispute with Plaintiff in a reasonable time framei.e., about six weeks after Plaintiff provided the bulk of its 110,000 documents to Defendant (which Defendant had to first take time to review and process). (Tr. at 8, 16; see also id. at 29) Though Defendant did not thereafter bring the dispute to the Court's attention until August 10, 2020, (D.I. 113), the Court does not have the record before it to hold this further one-and-a-half month gap against Defendant, given the back-and-forth typically needed to meet and confer in an issue like this, (Tr. at 17). From there, Defendant has established that Mr. Nelson is likely to have a good number of relevant documents pursuant to Federal Rule of Civil Procedure 26(b)(1) (and even Plaintiff does not contest this), in that: (1) Mr. Nelson's position and his time of service with Plaintiff likely means that his documents will contain information regarding, inter alia, objective indicia of non-obviousness and damages; and (2) Mr. Nelson appears on thousands of Plaintiff-produced e-mails. (D.I. 138 at 1-3; D.I. 147 at 1, 3 (Plaintiff noting that Mr. Nelson's name is "all over" a number of documents already produced); Tr. at 35) Moreover, the Court is not convinced that Mr. Nelson's responsive documents will be unreasonably cumulative or duplicative of others already produced, pursuant to Rule 26(b)(2)(C)(i), in that his role as V.P. of Marketing suggests that he likely would have had various communications with company employees and with third parties about relevant subject matter that would not have included other custodians (like Plaintiff's CEO or CCO, who had higher-level positions with the company). (D.I. 138 at 3; Tr. at 12-13) Moreover, Defendant has not demonstrated, pursuant to Rule 26(b)(1), that the burden or expense of this discovery outweighs its likely benefit, or that such discovery would not be proportional to the needs of the case. The Court understands that the parties are not large companies, and that cost and burden were a factor in the parties' agreement to the seven-custodian limit in the first place. (D.I. 147 at 2) But Plaintiff could have provided the Court with a record (i.e., by way of submission of a declaration or affidavit, or via some other similar means) to help the Court conclude that the collection, search, review and production of Mr. Nelson's documents would be unduly burdensome or costly, or that it would be disproportionate to either the amount in controversy or the parties' resources or some other relevant metric. If Plaintiff had, the decision may have gone the other way here. But though Plaintiff called such an effort an "incredible burden" in its letter brief, (D.I. 147 at 3), it made no record in |

Exhibit 90
-673-

| | | support of that claim; thus, the Court cannot rule in its favor on these grounds, (see also Tr. at 39-40). Lastly, and in part because of Plaintiff's failing in this regard, the Court does not know how long it would reasonably take Plaintiff to produce Mr. Nelson's documents (though it guesses that doing so by September 4, as Defendant requests, is likely too quick of a timeframe). (D.I. 138 at 3) So the parties should meet and confer regarding a production date.". Ordered by Judge Christopher J. Burke on 9/1/2020. (dlb) (Entered: 09/01/2020) |
|---|---|---|
| 09/01/2020 | 154 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Supplemental Objections and Responses to Defendant Kurin, Inc.'s Second Set of Interrogatories (No. 9) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 09/01/2020) |
| 09/01/2020 | | CORRECTING ENTRY: D.I. 152 has been corrected per request of filer to reflect that it is a Notice of Withdrawal of Counsel and not a Motion to Withdraw. (nmf) (Entered: 09/01/2020) |
| 09/01/2020 | 155 | REQUEST for Oral Argument by Magnolia Medical Technologies, Inc. re 105 MOTION for Leave to File *Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions*. (McCann, Douglas) (Entered: 09/01/2020) |
| 09/01/2020 | 156 | REDACTED VERSION of 143 Declaration, *of Douglas E. McCann* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit S, # 2 Exhibit T, # 3 Exhibit U, # 4 Exhibit V, # 5 Exhibit W, # 6 Exhibit X, # 7 Exhibit Y, # 8 Exhibit Z, # 9 Exhibit AA, # 10 Exhibit BB, # 11 Exhibit CC, # 12 Exhibit DD, # 13 Exhibit EE, # 14 Exhibit FF)(McCann, Douglas) (Entered: 09/01/2020) |
| 09/01/2020 | 157 | REDACTED VERSION of 142 Reply Brief,, by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit S, # 2 Exhibit T, # 3 Exhibit U, # 4 Exhibit V, # 5 Exhibit W, # 6 Exhibit X, # 7 Exhibit Y, # 8 Exhibit Z, # 9 Exhibit AA, # 10 Exhibit BB, # 11 Exhibit CC, # 12 Exhibit DD, # 13 Exhibit EE, # 14 Exhibit FF)(McCann, Douglas) (Entered: 09/01/2020) |
| 09/02/2020 | 158 | REDACTED VERSION of 147 Letter by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(McCann, Douglas) (Entered: 09/02/2020) |
| 09/02/2020 | 159 | [SEALED] ANSWERING BRIEF in Opposition re 150 MOTION for Leave to File *sur-reply to motion for leave to amend infringement contentions* filed by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit GG)(McCann, Douglas) (Entered: 09/02/2020) |
| 09/02/2020 | 160 | [SEALED] DECLARATION re 159 Answering Brief in Opposition, *of Douglas E. McCann* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit GG)(McCann, Douglas) (Entered: 09/02/2020) |
| 09/03/2020 | 161 | NOTICE OF SERVICE of Kurin's Supplemental Responses to Magnolia's Interrogatory Nos. 10, 12 and 14 filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 09/03/2020) |
| 09/08/2020 | 162 | REDACTED VERSION of 150 MOTION for Leave to File *sur-reply to motion for leave to amend infringement contentions* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 09/08/2020) |
| 09/08/2020 | 163 | [SEALED] REPLY BRIEF re 150 MOTION for Leave to File *sur-reply to motion for leave to amend infringement contentions* filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 09/08/2020) |
| 09/08/2020 | 164 | [SEALED] DECLARATION re 163 Reply Brief -- *executed by Louis Wai* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 09/08/2020) |
| 09/08/2020 | 165 | Letter to Judge Burke from K. Dorsney regarding Requesting Discovery Teleconference. (Dorsney, Kenneth) (Entered: 09/08/2020) |
| 09/08/2020 | 166 | [SEALED] MOTION to Amend/Correct *THE COMPLAINT* - filed by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit 1 Second Amended Complaint, # 3 Ex A to Second Amended Complaint, # 4 Ex B to Second Amended Complaint, # 5 Ex C to Second Amended Complaint, # 6 Ex D to Second Amended Complaint, # 7 Ex E to Second Amended Complaint, # 8 Ex F to Second Amended Complaint, # 9 Ex G to Second Amended Complaint, # 10 Ex H to Second Amended Complaint, # 11 Ex I to Second Amended Complaint, # 12 Ex J to Second Amended Complaint, # 13 Ex K to Second Amended Complaint, # 14 Ex L to Second Amended Complaint, # 15 Ex M to Second Amended Complaint, # 16 Ex N to Second Amended Complaint, # 17 Ex O to Second Amended Complaint, # 18 Ex P to Second Amended Complaint, # 19 Ex Q to Second Amended Complaint, # 20 Ex R to Second Amended Complaint, # 21 Ex S to Second Amended Complaint, # 22 Ex T to Second Amended Complaint, # 23 Ex U to Second Amended Complaint, # 24 Ex V to Second Amended Complaint, # 25 Ex W to Second Amended Complaint, # 26 Ex X to Second Amended Complaint, # 27 Ex Y to Second Amended Complaint, # 28 Ex Z to Second Amended Complaint, # 29 Ex AA to Second Amended Complaint, # 30 Ex BB to Second Amended Complaint, # 31 Ex CC to Second Amended Complaint, # 32 Ex DD to Second Amended Complaint, # 33 Ex EE to Second Amended Complaint, # 34 Ex FF to Second Amended Complaint, # 35 Ex GG to Second Amended Complaint, # 36 Ex HH to Second Amended Complaint, # 37 Ex II to Second Amended Complaint, # 38 Ex |

Exhibit 90
-674-

| | | |
|---|---|---|
| | | JJ to Second Amended Complaint, # [39](#) Ex KK to Second Amended Complaint, # [40](#) Ex LL to Second Amended Complaint, # [41](#) Exhibit 2 Redline Second Amended Complaint)(McCann, Douglas) (Entered: 09/08/2020) |
| 09/08/2020 | [167](#) | [SEALED] OPENING BRIEF in Support re [166](#) MOTION to Amend/Correct *THE COMPLAINT* filed by Magnolia Medical Technologies, Inc..Answering Brief/Response due date per Local Rules is 9/22/2020. (McCann, Douglas) (Entered: 09/08/2020) |
| 09/09/2020 | [168](#) | REDACTED VERSION of [159](#) Answering Brief in Opposition, by Magnolia Medical Technologies, Inc.. (Attachments: # [1](#) Exhibit GG)(McCann, Douglas) (Entered: 09/09/2020) |
| 09/09/2020 | [169](#) | REDACTED VERSION of [160](#) Declaration *of Douglas E. McCann* by Magnolia Medical Technologies, Inc.. (Attachments: # [1](#) Exhibit GG)(McCann, Douglas) (Entered: 09/09/2020) |
| 09/09/2020 | 170 | ORAL ORDER Setting Teleconference: The Court has reviewed the parties' September 8, 2020 letter requesting a discovery teleconference regarding one discovery dispute. (D.I. 165) It hereby ORDERS as follows with regard to this dispute: (1) A discovery dispute teleconference is set for October 5, 2020 at 11:00 a.m. before Judge Christopher J. Burke.; (2) By no later than September 16, 2020, any party seeking relief shall file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining the issues in dispute and its position on those issues.; (3) By no later than September 23, 2020, any party opposing the application for relief may file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining that party(s) reasons for its opposition; (4) The moving party shall file the Motion For Teleconference To Resolve Discovery Dispute discussed in the Courts October 8, 2019 Oral Order. (D.I. 41); (5) By no later than October 1, 2020, the parties shall jointly provide the Court's Courtroom Deputy, Ms. Benyo, with a dial-in number via e-mail to use for the call.; and (6) It is possible that the Court may choose to resolve this dispute prior to the telephone conference and may, in that event, cancel the conference. Ordered by Judge Christopher J. Burke on 9/9/2020. (dlb) (Entered: 09/09/2020) |
| 09/09/2020 | [171](#) | NOTICE OF SERVICE of (1) Plaintiff Magnolia Medical Technologies, Inc.'s Notice of Subpoena on Pipeline Design & Engineering, LLC, Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and Subpoena to Testify at a Deposition in a Civil Action, and (2) Plaintiff Magnolia Medical Technologies, Inc.'s Supplemental and Amended Objections and Responses to Defendant Kurin, Inc.'s First Set of Interrogatories (Nos. 1, 3, 8) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 09/09/2020) |
| 09/09/2020 | [172](#) | NOTICE OF SERVICE of Bradley Nelson's Objections and Responses to Kurin, Inc.'s Subpoena to Testify at a Deposition and Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 09/09/2020) |
| 09/11/2020 | [173](#) | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Supplemental Objections and Responses to Defendant Kurin, Inc.'s First Set of Interrogatories (No. 6) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 09/11/2020) |
| 09/14/2020 | [174](#) | REDACTED VERSION of [163](#) Reply Brief *in support of motion for leave to file sur-reply* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 09/14/2020) |
| 09/14/2020 | [175](#) | REDACTED VERSION of [164](#) Declaration *of Louis Wai* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 09/14/2020) |
| 09/14/2020 | [176](#) | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Objections and Responses to Defendant Kurin, Inc.'s First Set of Requests for Admission (Nos. 1-29), Plaintiff Magnolia Medical Technologies, Inc.'s Objections and Responses to Defendant Kurin, Inc.'s Second Set of Requests for Production (Nos. 39-52) and Plaintiff Magnolia Medical Technologies, Inc.'s Objections and Responses to Defendant Kurin, Inc.'s Fourth Set of Interrogatories (Nos. 11-23) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 09/14/2020) |
| 09/16/2020 | [177](#) | Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding Discovery Dispute - re 170 Order Setting Teleconference,,,,,, (Dorsney, Kenneth) (Entered: 09/16/2020) |
| 09/16/2020 | [178](#) | MOTION for Hearing re [177](#) Letter *motion for teleconference to resolve discovery dispute* - filed by Kurin, Inc.. Motions referred to Christopher J. Burke.(Dorsney, Kenneth) (Entered: 09/16/2020) |
| 09/16/2020 | [179](#) | REDACTED VERSION of [166](#) MOTION to Amend/Correct *THE COMPLAINT* by Magnolia Medical Technologies, Inc.. (Attachments: # [1](#) Text of Proposed Order, # [2](#) Exhibit 1 Second Amended Complaint, # [3](#) Exhibit A to Second Amended Complaint, # [4](#) Exhibit B to Second Amended Complaint, # [5](#) Exhibit C to Second Amended Complaint, # [6](#) Exhibit D to Second Amended Complaint, # [7](#) Exhibit E to Second Amended Complaint, # [8](#) Exhibit F to Second Amended Complaint, # [9](#) Exhibit G to Second Amended Complaint, # [10](#) Exhibit H to Second Amended Complaint, # [11](#) Exhibit I to Second Amended Complaint, # |

Exhibit 90
-675-

| | | |
|---|---|---|
| | | 12 Exhibit J to Second Amended Complaint, # 13 Exhibit K to Second Amended Complaint, # 14 Exhibit L to Second Amended Complaint, # 15 Exhibit M to Second Amended Complaint, # 16 Exhibit N to Second Amended Complaint, # 17 Exhibit O to Second Amended Complaint, # 18 Exhibit P to Second Amended Complaint, # 19 Exhibit Q to Second Amended Complaint, # 20 Exhibit R to Second Amended Complaint, # 21 Exhibit S to Second Amended Complaint, # 22 Exhibit T to Second Amended Complaint, # 23 Exhibit U to Second Amended Complaint, # 24 Exhibit V to Second Amended Complaint, # 25 Exhibit W to Second Amended Complaint, # 26 Exhibit X to Second Amended Complaint, # 27 Exhibit Y to Second Amended Complaint, # 28 Exhibit Z to Second Amended Complaint, # 29 Exhibit AA to Second Amended Complaint, # 30 Exhibit BB to Second Amended Complaint, # 31 Exhibit CC to Second Amended Complaint, # 32 Exhibit DD to Second Amended Complaint, # 33 Exhibit EE to Second Amended Complaint, # 34 Exhibit FF to Second Amended Complaint, # 35 Exhibit GG to Second Amended Complaint, # 36 Exhibit HH to Second Amended Complaint, # 37 Exhibit II to Second Amended Complaint, # 38 Exhibit JJ to Second Amended Complaint, # 39 Exhibit KK to Second Amended Complaint, # 40 Exhibit LL to Second Amended Complaint, # 41 Exhibit 2 Redline Second Amended Complaint)(McCann, Douglas) (Entered: 09/16/2020) |
| 09/16/2020 | 180 | REDACTED VERSION of 167 Opening Brief in Support by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 09/16/2020) |
| 09/17/2020 | 181 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Objections and Responses to Defendant Kurin, Inc.'s Fifth Set of Interrogatories (Nos. 24-25) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 09/17/2020) |
| 09/18/2020 | 182 | NOTICE OF SERVICE of (1)Kurin's responses to fourth set of interrogatories (Nos. 15-24); (2) Kurin's responses to first set of requests for admission (No. 1); (3) Kurin's Supplemental response to Interrogatory (Nos.7); (4) Kurin's responses to third set of requests for production (Nos. 67) filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 09/18/2020) |
| 09/21/2020 | 183 | NOTICE OF SERVICE of (1) Confidential Plaintiff Magnolia Medical Technologies, Inc.'s Second Supplemental Objections and Responses to Defendant Kurin, Inc.'s First Set of Interrogatories (No. 6), (2) Plaintiff Magnolia Medical Technologies, Inc.'s Second Supplemental and Amended Objections and Responses to Defendant Kurin, Inc.'s Second Set of Interrogatories (No. 9), (3) Plaintiff Magnolia Medical Technologies, Inc.'s Second Supplemental Objections and Responses to Defendant Kurin, Inc.'s Third Set of Interrogatories (No. 10) and (4) Confidential Plaintiff Magnolia Medical Technologies, Inc.'s Supplemental Objections and Responses to Defendant Kurin, Inc.'s Fourth Set of Interrogatories (Nos. 13-16, 19-22) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 09/21/2020) |
| 09/22/2020 | 184 | [SEALED] ANSWERING BRIEF in Opposition re 166 MOTION to Amend/Correct *THE COMPLAINT* filed by Kurin, Inc..Reply Brief due date per Local Rules is 9/29/2020. (Dorsney, Kenneth) (Entered: 09/22/2020) |
| 09/22/2020 | 185 | [SEALED] DECLARATION re 184 Answering Brief in Opposition *to Magnolia's Motion for Leave to Amend Complaint, executed by Jacob S. Zweig* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 09/22/2020) |
| 09/23/2020 | 186 | NOTICE OF SERVICE of (1) Confidential Plaintiff Magnolia Medical Technologies, Inc.'s Third Supplemental and Amended Objections and Responses to Defendant Kurin, Inc.'s First Set of Interrogatories, (2) Plaintiff Magnolia Medical Technologies, Inc.'s First Supplemental and Amended Objections and Responses to Defendant Kurin, Inc.'s Fifth Set of Interrogatories (Nos. 24) and (3) Interrogatory Verification filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 09/23/2020) |
| 09/23/2020 | 187 | Letter to Magistrate Judge Christopher J. Burke from Douglas E. McCann regarding Plaintiff's Responsive Letter Regarding Discovery Dispute - re 165 Letter. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(McCann, Douglas) (Entered: 09/23/2020) |
| 09/29/2020 | 188 | REDACTED VERSION of 184 Answering Brief in Opposition *to Motion for Leave to Amend Complaint* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 09/29/2020) |
| 09/29/2020 | 189 | REDACTED VERSION of 185 Declaration *of Jacob Zweig* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 09/29/2020) |
| 09/29/2020 | 190 | [SEALED] REPLY BRIEF re 166 MOTION to Amend/Correct *THE COMPLAINT* filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 09/29/2020) |
| 09/29/2020 | 191 | [SEALED] DECLARATION re 190 Reply Brief *of Douglas E. McCann* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit MM, # 2 NN, # 3 OO)(McCann, Douglas) (Entered: 09/29/2020) |
| 10/01/2020 | 192 | REQUEST for Oral Argument by Magnolia Medical Technologies, Inc. re 166 MOTION to Amend/Correct *THE COMPLAINT*. (McCann, Douglas) (Entered: 10/01/2020) |
| 10/02/2020 | 193 | REQUEST for Oral Argument by Kurin, Inc. re 166 MOTION to Amend/Correct *THE COMPLAINT*. |

Exhibit 90
-676-

| | | |
|---|---|---|
| | | (Dorsney, Kenneth) (Entered: 10/02/2020) |
| 10/05/2020 | | Minute Entry for proceedings held before Judge Christopher J. Burke - Discovery dispute teleconference held on 10/5/2020. The Court heard the parties' arguments regarding Defendant's discovery dispute motion, D.I. 178. The Court took the matter under advisement and will issue an order. (Court Reporter Valerie Gunning. Clerk: M. Crawford) Appearances: D. McCann, J. Brooks for Plaintiff; C. Hitch, K. Boyd for Defendant. (mlc) (Entered: 10/05/2020) |
| 10/06/2020 | 194 | ORAL ORDER: The Court, having reviewed Defendant Kurin, Inc.'s ("Kurin") motion regarding a discovery dispute ("Motion"), (D.I. 178), in which Kurin requests an accommodation to the case schedule to account for Plaintiff Magnolia Medical Technologies, Inc.'s ("Magnolia") late production of post-complaint documents, (D.I. 177 at 2), the letter briefing related thereto, (D.I. 177; D.I. 187), and having heard oral argument on October 5, 2020, ORDERS that Defendant's Motion is GRANTED. The Court finds good cause to amend the Scheduling Order, pursuant to Federal Rule of Civil Procedure 16(b)(4), to be established as follows: (1) Although the parties' deadline for substantial completion of document production was May 15, 2020 (extended from April 15, 2020), (D.I. 69), Magnolia has produced nearly one-third of its total document production (approximately 57,000 documents) in the past month (a time during which fact discovery was set to close and the expert discovery process to get underway). (D.I. 177 at 2; D.I. 187 at 2); (2) Magnolia's late production flows from an interpretation of the Scheduling Order that, in the Court's view, was not a reasonable one, and thus it amounts to a clear discovery violation. (D.I. 177 at 1; see also D.I. 24, ex. B at para. 1)(d)(ii) & (3)(b)); (3) Kurin is entitled to a reasonable window of time to digest Magnolia's substantial recent production prior to taking its fact depositions and serving opening expert reports. Currently, however, there remain many depositions to be taken, followed by the expert discovery process and the preparation and service of expert reports, all currently scheduled to be completed by December 18, 2020 (with opening summary judgment and Daubert briefs to be filed on February 5, 2021 and trial scheduled to begin on July 12, 2021). (See D.I. 177 at 3) While Magnolia proposes an extension of the fact discovery deadline and the deadlines for expert reports, leaving the remainder of the current case schedule intact, (D.I. 187 at 3), going Magnolia's way here would necessarily require compressing the case schedule in a manner that would prejudice Kurin for a mistake that was not Kurin's fault.; (4) Therefore, the parties shall meet and confer regarding extension of the remaining case deadlines and events and submit a joint proposed amended scheduling order by no later than October 9, 2020 that: (a) schedules summary judgment and Daubert briefs to be filed on April 30, 2021; (b) schedules the pretrial conference for September 23, 2021 at 4:00 p.m.; (c) schedules the jury trial for October 4, 2021; and (d) fills in the remainder of the case deadlines accordingly. Expert report deadlines should all be uniform between the parties. Ordered by Judge Christopher J. Burke on 10/6/2020. (dlb) Modified on 10/6/2020 (dlb). (Entered: 10/06/2020) |
| 10/06/2020 | 195 | REDACTED VERSION of 190 Reply Brief by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 10/06/2020) |
| 10/06/2020 | 196 | REDACTED VERSION of 191 Declaration of Douglas E. McCann by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit MM, # 2 Exhibit OO, # 3 Exhibit PP)(McCann, Douglas) (Entered: 10/06/2020) |
| 10/07/2020 | | Pro Hac Vice Attorney Jonathan Hangartner for Kurin, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (kmd) (Entered: 10/07/2020) |
| 10/09/2020 | 197 | PROPOSED ORDER - Proposed Amended Scheduling Order by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 10/09/2020) |
| 10/16/2020 | 198 | AMENDED SCHEDULING ORDER: The Final Pretrial Conference is rescheduled for 9/23/2021 at 04:00 PM in Courtroom 4B before Judge Colm F. Connolly. The Jury Trial is rescheduled for 10/4/2021 at 08:30 AM in Courtroom 4B before Judge Colm F. Connolly. Signed by Judge Colm F. Connolly on 10/16/2020. (nmf) (Entered: 10/16/2020) |
| 10/16/2020 | 199 | NOTICE OF SERVICE of Kurin's Request for Statement of Damages under Local Rule 9.4(b) filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 10/16/2020) |
| 10/30/2020 | 200 | ORDER REFERRING MOTION: 150 MOTION for Leave to File sur-reply to motion for leave to amend infringement contentions filed by Kurin, Inc., 105 MOTION for Leave to File Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions filed by Magnolia Medical Technologies, Inc., 166 MOTION to Amend/Correct THE COMPLAINT filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 10/30/2020. Motions referred to Magistrate Judge Jennifer L. Hall. (nmf) (Entered: 10/30/2020) |
| 11/02/2020 | 201 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Statement of Damages filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 11/02/2020) |
| 11/09/2020 | 202 | ORAL ORDER Setting Hearing on Motions: A telephonic hearing on the pending Motion for Leave to |

Exhibit 90
-677-

| | | |
|---|---|---|
| | | Amend Disclosure of Infringement and Willfulness Contentions (D.I. 105 ) and Motion to Amend the Complaint (D.I. 166 ) is scheduled for December 10, 2020 at 3:00 PM before Judge Jennifer L. Hall. The parties shall send a joint email to Cailah_Garfinkel@ded.uscourts.gov containing the following information regarding oral argument on or before December 7, 2020: (1) dial-in information; and (2) a list of attendees for each party, specifying who will be presenting argument. Any slide presentations or demonstratives that the parties wish to use during the hearing shall be emailed to Cailah_Garfinkel@ded.uscourts.gov no later than 24 hours prior to the hearing. Once the dial-in information is received by the Court, members of the public may obtain it by contacting Chambers at Cailah_Garfinkel@ded.uscourts.gov. All participants (including any media and members of the public) are reminded that recording or broadcasting proceedings is STRICTLY PROHIBITED. All participants shall be present on the teleconference no later than 10 minutes prior to the start of the hearing. ORDERED by Judge Jennifer L. Hall on 11/9/2020. (ceg) (Entered: 11/09/2020) |
| 11/11/2020 | 203 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Supplemental Objections and Responses to Defendant Kurin, Inc.'s Fourth Set of Interrogatories (No. 11) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 11/11/2020) |
| 11/13/2020 | 204 | Joint Letter to The Honorable Christopher J. Burke from Douglas E. McCann regarding Discovery Dispute. (McCann, Douglas) (Entered: 11/13/2020) |
| 11/16/2020 | 205 | ORDER Setting Teleconference: The Court has reviewed the parties' November 13, 2020 letter requesting a discovery teleconference regarding 1 discovery dispute. (D.I. 204) It hereby ORDERS as follows with regard to this dispute: (1) A discovery dispute teleconference is set for 12/14/2020 at 01:00 PM before Judge Christopher J. Burke.; (2) By no later than November 25, 2020, any party seeking relief shall file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining the issues in dispute and its position on those issues.; (3) By no later than December 4, 2020, any party opposing the application for relief may file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining that party(s) reasons for its opposition.; (4) The parties shall jointly file a Motion For Teleconference To Resolve Discovery Dispute.; (5) By no later than December 10, 2020, the parties shall jointly provide the Court's Courtroom Deputy, Ms. Benyo, with a dial-in number via email to use for the call.; and (6) It is possible that the Court may choose to resolve this dispute prior to the telephone conference and may, in that event, cancel the conference.Ordered by Judge Christopher J. Burke on 11/16/2020. (mlc) (Entered: 11/16/2020) |
| 11/23/2020 | 206 | NOTICE OF SERVICE of Magnolia Medical Technologies, Inc.'s Privilege Log and First-Seventh Supplemental Privilege Logs; Kathryn Beal's Privilege Log and Supplemental Priviledge Log; and Jay Miazga's Privilege Log and Supplemental Privilege Logs filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 11/23/2020) |
| 11/25/2020 | 207 | [SEALED] Letter to The Honorable Christopher J. Burke from Douglas E. McCann regarding Experts Dispute - re 37 Protective Order. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(McCann, Douglas) (Entered: 11/25/2020) |
| 11/25/2020 | | CORRECTING ENTRY: DI 208 filed in error to incorrect case number. (apk) (Entered: 11/25/2020) |
| 12/02/2020 | 208 | NOTICE OF SERVICE of Plaintiff Magnolia Medical Technologies, Inc.'s Amended Supplemental Objections and Responses to Defendant Kurin, Inc.'s Fourth Set of Interrogatories (No. 11) filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 12/02/2020) |
| 12/02/2020 | 209 | REDACTED VERSION of 207 Letter, by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(McCann, Douglas) (Entered: 12/02/2020) |
| 12/04/2020 | 210 | Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding Kurin's responsive discovery dispute letter - re 207 Letter,. (Dorsney, Kenneth) (Entered: 12/04/2020) |
| 12/04/2020 | 211 | Joint MOTION for Teleconference to Resolve Discovery Dispute - filed by Magnolia Medical Technologies, Inc.. Motions referred to Christopher J. Burke.(McCann, Douglas) (Entered: 12/04/2020) |
| 12/08/2020 | 212 | NOTICE OF SERVICE of (1) Magnolia's 6th Supplemental Privilege Log, (2) Magnolia's 8th Supplemental Redacted Privilege Log, (3) Kathryn Beal's 2nd Supplemental Privilege Log, and (4) Jay Miazga's 2nd Supplemental Privilege Log filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 12/08/2020) |
| 12/10/2020 | | Minute Entry for proceedings held before Judge Jennifer L. Hall - Telephonic Motion Hearing held on 12/10/2020 re 105 Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions filed by Magnolia Medical Technologies, Inc., 166 Motion to Amend/Correct the Complaint filed by Magnolia Medical Technologies, Inc. (*Court Reporter Jennifer Guy.) (ceg) (Entered: 12/11/2020) |
| 12/11/2020 | 213 | ORAL ORDER: It is ORDERED that, for the reasons discussed at the hearing on December 10, 2020, |

Exhibit 90
-678-

| | | |
|---|---|---|
| | | Magnolia's Motion for Leave to Amend its infringement and Willfulness Contentions (D.I. 105 ) is GRANTED-IN-PART. As stated at the hearing, it is FURTHER ORDERED that the parties shall meet and confer regarding the remainder of Magnolia's proposed amendments and shall file a stipulation regarding any agreement on those proposed amendments within 14 days. If the parties cannot reach agreement on the remainder of Magnolia's proposed amendments, they are directed to file a joint motion for a teleconference in accordance with Judge Hall's discovery dispute procedures. ORDERED by Judge Jennifer L. Hall on 12/10/2020. (ceg) (Entered: 12/11/2020) |
| 12/11/2020 | 214 | ORAL ORDER: IT IS HEREBY ORDERED that the transcript of the December 10, 2020 motion hearing on Magnolia's Motion for Leave to Amend its Complaint (D.I. 166 ) shall serve as the Report and Recommendation of the Court. Any objections shall be filed within 14 days from the date the Court issues the written version of its Report and Recommendation. ORDERED by Judge Jennifer L. Hall on 12/10/2020. (ceg) (Entered: 12/11/2020) |
| 12/14/2020 | | Minute Entry for proceedings held before Judge Christopher J. Burke - Discovery Dispute Teleconference held on 12/14/2020. After hearing from the parties regarding the dispute, for the reasons stated on the record the Court grant's Plaintiff's Motion. The Transcript will serve as the substance of the Court's decision in this matter. (Clerk, Benyo) APPEARANCES: D. McCann for Plaintiff; C. Hitch, K. Boyd, J. Hangartner for Defendant. (Court Reporter Jennifer Guy) (dlb) (Entered: 12/14/2020) |
| 12/15/2020 | 215 | NOTICE OF SERVICE of Magnolia Medical Technologies, Inc.'s 9th Supplemental Redacted Privilege Log filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 12/15/2020) |
| 12/23/2020 | 216 | ORAL ORDER: As previously set forth in D.I. 213, Magnolia's Motion for Leave to Amend its Infringement and Willfulness Contentions (D.I. 105 ) is GRANTED-IN-PART. Kurin's Motion for Leave to File a Sur-Reply (D.I. 150 ) is GRANTED. ORDERED by Judge Jennifer L. Hall on 12/23/2020. (ceg) (Entered: 12/23/2020) |
| 12/28/2020 | 217 | Official Transcript of Telephonic Motion Hearing held on December 10, 2020 before Judge Jennifer L. Hall. Court Reporter Jennifer Guy, email: jenniferguyrpr@gmail.com. Transcript may be viewed at the court public terminal or ordered/purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER. Redaction Request due 1/19/2021. Redacted Transcript Deadline set for 1/28/2021. Release of Transcript Restriction set for 3/29/2021. (bpg) (Entered: 12/28/2020) |
| 12/28/2020 | 218 | REPORT AND RECOMMENDATIONS re 166 Motion to Amend/Correct the Complaint filed by Magnolia Medical Technologies, Inc. Please note that when filing Objections pursuant to Federal Rule of Civil Procedure 72(b)(2), briefing consists solely of the Objections (no longer than ten (10) pages) and the Response to the Objections (no longer than ten (10) pages). No further briefing shall be permitted with respect to objections without leave of the Court. Objections to R&R due by 1/11/2021. This order has been emailed to local counsel. Signed by Judge Jennifer L. Hall on 12/28/2020.(ceg) ***Unsealed per the Court's 1/29/2021 Order (ceg). (Entered: 12/28/2020) |
| 12/28/2020 | 219 | Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding request for the scheduling of a discovery teleconference. (Dorsney, Kenneth) (Entered: 12/28/2020) |
| 12/28/2020 | 220 | STIPULATION TO EXTEND TIME for Parties to File a Stipulation regarding Amended Infringement Contentions to December 30, 2020 - filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 12/28/2020) |
| 12/30/2020 | 221 | ORAL ORDER Setting Teleconference: The Court has reviewed the parties' December 28, 2020 letter requesting a discovery teleconference regarding 1 discovery dispute. (D.I. 219) It hereby ORDERS as follows with regard to this dispute: (1) A discovery dispute teleconference is set for 1/25/2021 at 1:00 PM before Judge Christopher J. Burke.; (2) By no later than January 8, 2021, any party seeking relief shall file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining the issues in dispute and its position on those issues.; (3) By no later than January 19, 2021, any party opposing the application for relief may file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining that party(s) reasons for its opposition.; (4) The parties shall jointly file a Motion For Teleconference To Resolve Discovery Dispute.; (5) By no later than January 19, 2021, the parties shall jointly provide the Court's Courtroom Deputy, Ms. Benyo, with a dial-in number via email to use for the call.; and (6) It is possible that the Court may choose to resolve this dispute prior to the telephone conference and may, in that event, cancel the conference. Ordered by Judge Christopher J. Burke on 12/30/2020. (mlc) (Entered: 12/30/2020) |
| 12/30/2020 | 222 | NOTICE OF SERVICE of Magnolia's 7th Supplemental Privilege Log filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 12/30/2020) |
| 12/30/2020 | 223 | Joint MOTION Teleconference to Resolve Discovery Dispute - filed by Magnolia Medical Technologies, Inc. (McCann, Douglas) Modified on 1/27/2021 - Motion referred to Judge Jennifer L. Hall (ceg). (Entered: |

Exhibit 90
-679-

| | | 12/30/2020) |
|---|---|---|
| 12/30/2020 | 224 | [SEALED] STIPULATION regarding Amended Infringement Contentions re 213 Order,, by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A)(McCann, Douglas) (Entered: 12/30/2020) |
| 12/31/2020 | 225 | NOTICE of Intent to Request Redaction by Kenneth Laurence Dorsney re 217 Transcript,, (Dorsney, Kenneth) (Entered: 12/31/2020) |
| 01/06/2021 | 226 | REDACTED VERSION of 224 Stipulation by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A)(McCann, Douglas) (Entered: 01/06/2021) |
| 01/07/2021 | 227 | [SEALED] MOTION to Redact Report and Recommendation re 218 REPORT AND RECOMMENDATIONS re 166 MOTION to Amend/Correct *THE COMPLAINT* filed by Magnolia Medical Technologies, Inc.. Please note that when filing Objections pursuant to Federal Rule of Civil Procedure 72(b)(2), briefing consists solel - filed by Kurin, Inc.(Dorsney, Kenneth) Modified on 1/8/2021 (nmf). (Entered: 01/07/2021) |
| 01/07/2021 | 228 | [SEALED] DECLARATION re 227 MOTION to Redact Report and Recommendation re 218 REPORT AND RECOMMENDATIONS re 166 MOTION to Amend/Correct *THE COMPLAINT* filed by Magnolia Medical Technologies, Inc.. Please note that when filing Objections pursuant to Federal *(executed by Bob Rogers)* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 01/07/2021) |
| 01/08/2021 | 229 | [SEALED] Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding Discovery Dispute - re 221 Order Setting Teleconference,,,,, (Dorsney, Kenneth) (Entered: 01/08/2021) |
| 01/08/2021 | 230 | Joint MOTION for Hearing re 221 Order Setting Teleconference,,,,, *to resolve discovery dispute* - filed by Kurin, Inc.. Motions referred to Christopher J. Burke.(Dorsney, Kenneth) (Entered: 01/08/2021) |
| 01/13/2021 | 231 | REDACTED VERSION of 227 MOTION to Redact Report and Recommendation re 218 REPORT AND RECOMMENDATIONS re 166 MOTION to Amend/Correct *THE COMPLAINT* filed by Magnolia Medical Technologies, Inc.. Please note that when filing Objections pursuant to Federal by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 01/13/2021) |
| 01/13/2021 | 232 | REDACTED VERSION of 228 Declaration, *of Bob Rogers* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 01/13/2021) |
| 01/13/2021 | 233 | ORDER ADOPTING 218 REPORT AND RECOMMENDATIONS ; denying 166 Motion to Amend/Correct. Signed by Judge Colm F. Connolly on 1/13/2021. (nmf) (Entered: 01/13/2021) |
| 01/14/2021 | 234 | Joint Letter to The Honorable Christopher J. Burke from Douglas E. McCann regarding Request to Schedule Discovery Teleconference. (McCann, Douglas) (Entered: 01/14/2021) |
| 01/14/2021 | 235 | Letter to The Honorable Christopher J. Burke from Douglas E. McCann regarding Request to Set Matter for Hearing and to Seal Proceeding in Advance. (McCann, Douglas) (Entered: 01/14/2021) |
| 01/14/2021 | 236 | [SEALED] Letter to The Honorable Christopher J. Burke from Douglas E. McCann regarding Request for Protective Order regarding Witness Dispute. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Text of Proposed Order)(McCann, Douglas) (Entered: 01/14/2021) |
| 01/14/2021 | 237 | ORAL ORDER Setting Teleconference: The Court has reviewed the parties' January 14, 2021 letter requesting a discovery teleconference regarding 1 discovery dispute, (D.I. 234), as well as Plaintiff's January 14, 2021 letter regarding further requests with respect to this dispute, (D.I. 235). It hereby ORDERS as follows with regard to this dispute: (1) A discovery dispute teleconference is set for 2/1/2021 at 10:00 AM before Judge Christopher J. Burke.; (2) The proceeding shall be sealed, and in addition to the Court, the Courts law clerk and the Court reporter, only attorneys who have entered an appearance in the case shall participate in the proceeding.; (3) By no later than January 21, 2021, Defendant shall file a letter, not to exceed three (3) single-spaced pages, in no less than 12-point font, outlining its reasons for its opposition.; (4) The parties shall jointly file a Motion For Teleconference To Resolve Discovery Dispute.; (5) By no later than January 21, 2021, the parties shall jointly provide the Court's Courtroom Deputy, Ms. Benyo, with a dial-in number via email to use for the call.; and (6) It is possible that the Court may choose to resolve this dispute prior to the telephone conference and may, in that event, cancel the conference.Ordered by Judge Christopher J. Burke on 1/14/2021. (mlc) (Entered: 01/14/2021) |
| 01/19/2021 | 238 | NOTICE OF SERVICE of OPENING EXPERT REPORT OF ERIK K. ANTONSSON, PH.D., P.E. filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 01/19/2021) |
| 01/19/2021 | 239 | [SEALED] MOTION to Redact 217 Transcript - filed by Kurin, Inc.(Dorsney, Kenneth) Modified on 1/19/2021 (nmf). (Entered: 01/19/2021) |
| 01/19/2021 | | Motions No Longer Referred: 239 MOTION to Redact 217 Transcript. The automatic referral to Judge Burke |

Exhibit 90
-680-

| | | |
|---|---|---|
| | | generated by the system have been removed for this motion. (nmf) (Entered: 01/19/2021) |
| 01/19/2021 | 240 | [SEALED] Letter to The Honorable Christopher J. Burke from Douglas E. McCann regarding Plaintiff's Letter Brief Regarding Discovery Dispute - re 221 Order Setting Teleconference,,,,,, (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z)(McCann, Douglas) (Entered: 01/19/2021) |
| 01/20/2021 | 241 | Joint MOTION for Teleconference to Resolve Discovery Dispute re 235 Letter, 234 Letter - filed by Magnolia Medical Technologies, Inc.. Motions referred to Christopher J. Burke.(McCann, Douglas) (Entered: 01/20/2021) |
| 01/20/2021 | 242 | NOTICE OF SERVICE of (1) Opening Expert Report of Peter, A. McCullough, MD, MPH; (2) Opening Expert Report of Prof. Erika Lietzan; (3) Opening Expert Report of Dr. Juan G. Santiago regarding Infringement of U.S. Patent Nos. 9,855,001 and 10,039,483; and (4) Expert Report of Elizabeth Dean filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 01/20/2021) |
| 01/20/2021 | 243 | REDACTED VERSION of 239 MOTION to Redact 217 Transcript,, by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 01/20/2021) |
| 01/21/2021 | 244 | REDACTED VERSION of 236 Letter, by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Text of Proposed Order)(McCann, Douglas) (Entered: 01/21/2021) |
| 01/21/2021 | 245 | [SEALED] Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding Kurin's responsive discovery dispute letter regarding protective order issue - re 236 Letter,. (Dorsney, Kenneth) (Entered: 01/21/2021) |
| 01/21/2021 | 246 | Letter to The Honorable Christopher J. Burke from Kenneth L. Dorsney regarding upcoming discovery hearings. (Dorsney, Kenneth) (Entered: 01/21/2021) |
| 01/21/2021 | 247 | [SEALED] ANSWERING BRIEF in Opposition re 227 MOTION to Redact Report and Recommendation re 218 REPORT AND RECOMMENDATIONS re 166 MOTION to Amend/Correct *THE COMPLAINT* filed by Magnolia Medical Technologies, Inc.. Please note that when filing Objections pursuant to Federal, 239 MOTION to Redact 217 Transcript,, *Plaintiff's Consolidated Brief in Opposition to Defendant's Motions to Redact Report and Recommendation (D.I. 218) and to Redact December 10, 2020 Hearing Transcript (D.I. 217)* filed by Magnolia Medical Technologies, Inc..Reply Brief due date per Local Rules is 1/28/2021. (McCann, Douglas) (Entered: 01/21/2021) |
| 01/21/2021 | 248 | [SEALED] DECLARATION re 247 Answering Brief in Opposition,, *of Douglas E. McCann in Support of Plaintiff's Consolidated Brief in Opposition to Defendant's Motions to Redact Report and Recommendation (D.I. 218) and to Redact December 10, 2020 Hearing Transcript (D.I. 217)* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)(McCann, Douglas) (Entered: 01/21/2021) |
| 01/25/2021 | | Minute Entry for proceedings held before Judge Christopher J. Burke - Discovery Conference held on 1/25/2021. The Court heard argument regarding Defendant's discovery dispute, (D.I. 230). The Court denied Defendant's request without prejudice to Defendant re-raising in the future. The transcript of today's call shall serve as the substance of the Court's order. (Clerk, M. Crawford) Appearances: D. McCann, J. Brooks, C. Drakulich for Plaintiff; C. Hitch, K. Boyd, J. Seraphine for Defendant. (Court Reporter Valerie Gunning) (dlb) (Entered: 01/25/2021) |
| 01/26/2021 | 249 | REDACTED VERSION of 240 Letter,, by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z)(McCann, Douglas) (Entered: 01/26/2021) |
| 01/27/2021 | | SO ORDERED, 220 Stipulation to Extend Time for Parties to File a Stipulation regarding Amended Infringement Contentions to December 30, 2020 filed by Magnolia Medical Technologies, Inc.. ORDERED by Judge Jennifer L. Hall on 1/27/2021. (ceg) (Entered: 01/27/2021) |
| 01/28/2021 | 250 | REDACTED VERSION of 245 Letter *to The Honorable Christopher J. Burke regarding Kurin's responsive discovery dispute letter pertaining to protective order issue* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 01/28/2021) |
| 01/28/2021 | 251 | [SEALED] REPLY BRIEF re 227 MOTION to Redact Report and Recommendation re 218 REPORT AND RECOMMENDATIONS re 166 MOTION to Amend/Correct *THE COMPLAINT* filed by Magnolia Medical |

Exhibit 90
-681-

| | | |
|---|---|---|
| | | Technologies, Inc.. Please note that when filing Objections pursuant to Federal, 239 MOTION to Redact 217 Transcript,, filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 01/28/2021) |
| 01/28/2021 | 252 | [SEALED] DECLARATION re 251 Reply Brief, *in support of Motion to Redact Report and Recommendation and December 10, 2020 Hearing Transcript (executed by Jacob Zweig)* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 01/28/2021) |
| 01/28/2021 | 253 | REDACTED VERSION of 247 Answering Brief in Opposition,, by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 01/28/2021) |
| 01/28/2021 | 254 | REDACTED VERSION of 248 Declaration,, *of Douglas E. McCann* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)(McCann, Douglas) (Entered: 01/28/2021) |
| 01/28/2021 | 255 | Joint STIPULATION and [Proposed] Order Dismissing all Claims and Counterclaims regarding the '689 and '139 Patents by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 01/28/2021) |
| 01/29/2021 | 256 | SO ORDERED, re 255 Stipulation and [Proposed] Order Dismissing all Claims and Counterclaims regarding the '689 and '139 Patents filed by Magnolia Medical Technologies, Inc. Ordered by Judge Colm F. Connolly on 1/29/2021. (fms) (Entered: 01/29/2021) |
| 01/29/2021 | 257 | NOTICE of Withdrawal of Attorney Mathias W. Samuel by Magnolia Medical Technologies, Inc. (McCann, Douglas) (Entered: 01/29/2021) |
| 01/29/2021 | 258 | ORAL ORDER Setting Teleconference: The Court has reviewed the Joint Motion for Teleconference to Resolve Discovery Disputes (D.I. 223 ). A discovery dispute teleconference is scheduled for February 10, 2021 at 3:00 PM Eastern Time before Judge Jennifer L. Hall. By no later than February 3, 2021 the party(ies) seeking relief shall file with the Court a letter, not to exceed three pages, in no less than 12-point font, outlining the issues in dispute and its position on those issues. By no later than February 8, 2021 any party(ies) opposing the application for relief may file a letter, not to exceed three pages, in no less than 12-point font, outlining that party's reasons for its opposition. Counsel is reminded to provide courtesy copies. Counsel shall send dial-in information directly to the Court, no later than 24 hours prior to the hearing, using the following e-mail address: Cailah_Garfinkel@ded.uscourts.gov. The Court may choose to resolve the dispute prior to the telephone conference and will, in that event, cancel the conference. ORDERED by Judge Jennifer L. Hall on 1/29/2021. (ceg) (Entered: 01/29/2021) |
| 01/29/2021 | 259 | ORDER: Having considered Defendant's Motion to Redact Report and Recommendation (D.I. 227 ) and its Motion to Redact December 10, 2020 Hearing Transcript (D.I. 239 ), the Court DENIES both motions. (*See Order for details). Signed by Judge Jennifer L. Hall on 1/29/2021. (ceg) (Entered: 01/29/2021) |
| 02/01/2021 | | Minute Entry for proceedings held before Judge Christopher J. Burke - Discovery teleconference held on 2/1/2021. The hearing was sealed and the parties should follow the Court's procedures regarding the public availability of transcripts and redactions to transcripts. The Court heard argument regarding Plaintiff's discovery dispute, (D.I. 241). The Court resolved the motion and the transcript of today's call shall serve as the substance of the Court's order. (Court Reporter Jennifer Guy. Clerk: M. Crawford) Appearances: D. McCann, J. Brooks for Plaintiff; K. Dorsney, K. Boyd, J. Seraphine for Defendant (mlc) (Entered: 02/01/2021) |
| 02/03/2021 | 260 | [SEALED] Letter to Magistrate Judge Hall from Douglas E. McCann regarding Plaintiff's Remaining Disputes Related to the Motion to Amend Infringement Contentions (D.I. 105) - re 105 MOTION for Leave to File *Plaintiff's Motion for Leave to Amend its Disclosure of Infringement and Willfulness Contentions*. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(McCann, Douglas) (Entered: 02/03/2021) |
| 02/04/2021 | 261 | REDACTED VERSION of 251 Reply Brief, *in support of Motion to Redact Report and Recommendation and December 10, 2020 Hearing Transcript* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 02/04/2021) |
| 02/04/2021 | 262 | REDACTED VERSION of 252 Declaration *of Jacob Zweig* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 02/04/2021) |
| 02/08/2021 | 263 | [SEALED] Letter to The Honorable Jennifer L. Hall from Kenneth L. Dorsney regarding Kurin's responsive discovery dispute letter related to Amended Infringement Contentions issue - re 260 Letter,,. (Dorsney, Kenneth) (Entered: 02/08/2021) |
| 02/09/2021 | 264 | ORAL ORDER: Before the Court is the parties' Joint Motion for Teleconference to Resolve Discovery Dispute (D.I. 223 ) by which the parties seek to resolve outstanding disputes related to Magnolia's Motion for Leave to Amend its Infringement and Willfulness Contentions (D.I. 105, 106, 107, 108, 109, 135, 136, 142, 143, 150) and the supplemental letter briefs and exhibits submitted in connection with the pending motion (D.I. |

Exhibit 90
-682-

| | | |
|---|---|---|
| | | 260, 263), IT IS HEREBY ORDERED that Magnolia's request for leave to amend is GRANTED with respect to the remaining disputed amendments. Those amendments (D.I. 224, Ex. A) relate generally to the "operating mode[s]"/"transition" and "seal" limitations. Magnolia has demonstrated good cause for the proposed amendments, particularly since the amendments rely on documents produced after the cut-off date for amending infringement contentions set by the Court's scheduling order and do not represent new infringement theories. I also agree with Magnolia that Kurin's current objections largely boil down to an assertion that Magnolia's initial contentions were insufficiently detailed; I agree with Magnolia that it's too late for Kurin to make that argument for the first time now (i.e., in Court-ordered supplemental briefing after a fully-briefed motion to amend to which Kurin was granted leave to file a sur-reply). As an independent basis for my ruling, I also conclude that Kurin waived the arguments that it failed to raise in its briefing on Magnolia's Motion for Leave to Amend. The discovery dispute teleconference scheduled for February 10, 2021 is CANCELLED. ORDERED by Judge Jennifer L. Hall on 2/9/2021. (ceg) (Entered: 02/09/2021) |
| 02/10/2021 | 265 | REDACTED VERSION of 260 Letter,, by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(McCann, Douglas) (Entered: 02/10/2021) |
| 02/11/2021 | 266 | [SEALED] MOTION for Leave to File *an Early Motion in Limine* - filed by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A)(McCann, Douglas) (Entered: 02/11/2021) |
| 02/12/2021 | 267 | STIPULATION TO EXTEND TIME for the parties to serve Rebuttal Expert Reports to February 17, 2021 - filed by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 02/12/2021) |
| 02/15/2021 | 268 | REDACTED VERSION of 263 Letter *to The Honorable Jennifer L. Hall from Kenneth L. Dorsney regarding Kurin's responsive discovery dispute letter regarding amended infringement contentions* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 02/15/2021) |
| 02/16/2021 | | SO ORDERED, re 267 STIPULATION TO EXTEND TIME for the parties to serve Rebuttal Expert Reports to February 17, 2021 filed by Kurin, Inc. Setting Scheduling Order Deadlines ( Rebuttal Expert Reports due by 2/17/2021.). Signed by Judge Colm F. Connolly on 2/16/2021. (fms) (Entered: 02/16/2021) |
| 02/16/2021 | 269 | STIPULATION TO EXTEND TIME for Parties to Serve Rebuttal Expert Reports to February 18, 2021 - filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 02/16/2021) |
| 02/17/2021 | | SO ORDERED, re 269 STIPULATION TO EXTEND TIME for Parties to Serve Rebuttal Expert Reports to February 18, 2021 filed by Magnolia Medical Technologies, Inc. Setting Scheduling Order Deadlines ( Rebuttal Expert Reports due by 2/18/2021.). Signed by Judge Colm F. Connolly on 2/17/2021. (fms) (Entered: 02/17/2021) |
| 02/18/2021 | 270 | REDACTED VERSION of 266 MOTION for Leave to File *an Early Motion in Limine* by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Ex. A)(McCann, Douglas) (Entered: 02/18/2021) |
| 02/19/2021 | 271 | NOTICE OF SERVICE of (1) EXPERT REPORT OF ERIK K. ANTONSSON, PH.D., P.E. (2)EXPERT REPORT OF PATRICK F. KENNEDY, PH.D. filed by Kurin, Inc..(Dorsney, Kenneth) (Entered: 02/19/2021) |
| 02/19/2021 | 272 | NOTICE OF SERVICE of Rebuttal Expert Report of Dr. Juan Santiago; Rebuttal Expert Report of Peter A. McCullough, MD, MPH; and Supplement to Opening Expert Report of Peter A. McCullough, MD, MPH filed by Magnolia Medical Technologies, Inc..(McCann, Douglas) (Entered: 02/19/2021) |
| 02/25/2021 | 273 | [SEALED] ANSWERING BRIEF in Opposition re 266 MOTION for Leave to File *an Early Motion in Limine* filed by Kurin, Inc..Reply Brief due date per Local Rules is 3/4/2021. (Dorsney, Kenneth) (Entered: 02/25/2021) |
| 03/03/2021 | 274 | REDACTED VERSION of 273 Answering Brief in Opposition *to Magnolia's Motion for Leave to file early Motion IN Limine* by Kurin, Inc.. (Dorsney, Kenneth) (Entered: 03/03/2021) |
| 03/03/2021 | 275 | [SEALED] REPLY BRIEF re 266 MOTION for Leave to File *an Early Motion in Limine* filed by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 03/03/2021) |
| 03/08/2021 | 276 | REQUEST for Oral Argument by Magnolia Medical Technologies, Inc. re 266 MOTION for Leave to File *an Early Motion in Limine*. (McCann, Douglas) (Entered: 03/08/2021) |
| 03/10/2021 | 277 | REDACTED VERSION of 275 Reply Brief by Magnolia Medical Technologies, Inc.. (McCann, Douglas) (Entered: 03/10/2021) |
| 03/15/2021 | 278 | NOTICE OF SUBSTITUTION OF COUNSEL re Magnolia Medical Technologies, Inc.: Entry of appearance of attorney Rodger Dallery Smith, II. Attorney Douglas E. McCann, Robert M. Oakes, Juanita Brooks, Corrin Drakulich, Bethany Mihalik, James Huguenin-Love, Katherine D. Prescott and Charles N. Reese, Jr. of FISH & RICHARDSON, P.C. terminated. (Smith, Rodger) (Entered: 03/15/2021) |

Exhibit 90
-683-

| 03/15/2021 | 279 | MOTION for Pro Hac Vice Appearance of Attorney Ashok Ramani - filed by Magnolia Medical Technologies, Inc.. (Smith, Rodger) (Entered: 03/15/2021) |
|---|---|---|
| 03/15/2021 | 280 | MOTION for Pro Hac Vice Appearance of Attorney David J. Lisson, Micah G. Block, Philip T. Sheng, Kathryn Bi, and Ian Hogg - filed by Magnolia Medical Technologies, Inc.. (Smith, Rodger) (Entered: 03/15/2021) |
| 03/15/2021 | | SO ORDERED, re 279 MOTION for Pro Hac Vice Appearance of Attorney Ashok Ramani filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 3/15/2021. (fms) (Entered: 03/15/2021) |
| 03/15/2021 | | SO ORDERED, re 280 MOTION for Pro Hac Vice Appearance of Attorney David J. Lisson, Micah G. Block, Philip T. Sheng, Kathryn Bi, and Ian Hogg filed by Magnolia Medical Technologies, Inc. Signed by Judge Colm F. Connolly on 3/15/2021. (fms) (Entered: 03/15/2021) |
| 03/16/2021 | 281 | STIPULATION and [Proposed] Order to Amend Scheduling Order - by Magnolia Medical Technologies, Inc.. (Smith, Rodger) (Entered: 03/16/2021) |
| 03/17/2021 | 282 | SO ORDERED, re 281 Stipulation filed by Magnolia Medical Technologies, Inc. Dispositive Motions due by 5/27/2021. Per the Court's stated policy on its website, a new trial date will be set once dispositive motions have been decided. Signed by Judge Colm F. Connolly on 3/17/2021. (fms) (Entered: 03/17/2021) |
| 03/18/2021 | | Pro Hac Vice Attorney Philip T. Sheng for Magnolia Medical Technologies, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (myr) (Entered: 03/18/2021) |
| 03/18/2021 | | Pro Hac Vice Attorney Ashok Ramani for Magnolia Medical Technologies, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (myr) (Entered: 03/18/2021) |
| 03/18/2021 | | Pro Hac Vice Attorney David J. Lisson for Magnolia Medical Technologies, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (kmd) (Entered: 03/18/2021) |
| 03/18/2021 | | Pro Hac Vice Attorney Micah G. Block for Magnolia Medical Technologies, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (myr) (Entered: 03/18/2021) |
| 03/19/2021 | | Pro Hac Vice Attorney Kathryn B. Bi for Magnolia Medical Technologies, Inc. added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (kmd) (Entered: 03/19/2021) |
| 04/07/2021 | | ORAL ORDER: The Court will hear brief oral argument on Plaintiff's motion for leave to file an early motion in limine (D.I. 266 ) on April 16, 2021 at 3:00 p.m. Plaintiff shall submit ex parte and under seal to the Court no later than April 14, 2021 the email referenced on page 1 of its motion and the documents that were inadvertently produced to and then clawed back from Defendant. Plaintiff shall be prepared to identify PRECISELY at oral argument what evidence or line of questioning it would seek to preclude in the motion in limine it wishes to file. "[T]his information" and "the information" (see page 2 of Plaintiff's motion) are not sufficient. Counsel for Plaintiff shall coordinate the call and email the dial-in information to chambers. Ordered by Judge Colm F. Connolly on 4/7/2021. (nmf) (Entered: 04/07/2021) |
| 04/08/2021 | | ORAL ORDER re 4/7/2021 Oral Order. ORDER: Due to a conflict in the Court's schedule, the Telephonic Oral Argument originally scheduled for 4/16/2021 is rescheduled for 4/19/2021 at 3:00 p.m. ( A Telephonic Oral Argument is set for 4/19/2021 at 03:00 PM before Judge Colm F. Connolly.) Counsel for the Plaintiff shall coordinate the call and email the dial-in information to chambers. Ordered by Judge Colm F. Connolly on 4/8/2021. (nmf) (Entered: 04/08/2021) |
| 04/14/2021 | 283 | [SEALED] Letter to The Honorable Colm F. Connolly from Rodger D. Smith II regarding the Court's April 7, 2021 Oral Order - re Oral Order,,,, Set Hearings,,,. (Attachments: # 1 Attachment 1, # 2 Attachment 2)(Smith, Rodger) (Entered: 04/14/2021) |
| 04/19/2021 | | Minute Entry for proceedings held before Judge Colm F. Connolly - Oral Argument held on 4/19/2021. (Court Reporter V. Gunning.) (nmf) (Entered: 04/19/2021) |
| 04/19/2021 | | ORAL ORDER: For the reasons stated during today's telephone call, Plaintiff's motion for leave to file an early motion in limine (D.I. 266 ) is DENIED AS MOOT. Ordered by Judge Colm F. Connolly on 4/19/2021. (nmf) (Entered: 04/19/2021) |
| 04/21/2021 | 284 | NOTICE of Intent to Redact Teleconference Transcript of 4/19/21 by Magnolia Medical Technologies, Inc. (Raucci, Anthony) (Entered: 04/21/2021) |

Exhibit 90
-684-

| 05/04/2021 | 285 | [SEALED] MOTION Plaintiff's Unopposed Motion to Redact Portions of the April 19, 2021 Hearing Transcript re Oral Argument - filed by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Raucci, Anthony) Modified on 5/4/2021 (nmf). (Entered: 05/04/2021) |
| 05/04/2021 | | Motions No Longer Referred: 285 MOTION Plaintiff's Unopposed Motion to Redact Portions of the April 19, 2021 Hearing Transcript re Oral Argument . The automatic referral generated by the system has been removed for this motion. (nmf) (Entered: 05/04/2021) |
| 05/05/2021 | 286 | ORDER granting 285 Plaintiff's Unopposed Motion to Redact Portions of the April 19, 2021 Hearing Transcript re Oral Argument . Any public version of the transcript of the April 19, 2021 hearing in this matter to be docketed shall contain the redactions as applied in Exhibit B to Plaintiffs May 4, 2021 Unopposed Motion to Redact. Signed by Judge Colm F. Connolly on 5/5/2021. (fms) (Entered: 05/05/2021) |
| 05/11/2021 | 287 | REDACTED VERSION of 285 MOTION Plaintiff's Unopposed Motion to Redact Portions of the April 19, 2021 Hearing Transcript re Oral Argument - by Magnolia Medical Technologies, Inc.. (Attachments: # 1 Exs. A-B, # 2 Proposed Order)(Raucci, Anthony) (Entered: 05/11/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 05/23/2021 14:21:45 | | | |
| PACER Login: | knobbepacer | Client Code: | MASIMOL.1214L |
| Description: | Docket Report | Search Criteria: | 1:19-cv-00097-CFC-CJB Start date: 1/1/1972 End date: 5/24/2021 |
| Billable Pages: | 30 | Cost: | 3.00 |

Exhibit 90
-685-

# EXHIBIT 91

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITEWATER WEST INDUSTRIES, LTD., | Case No.:  17CV1118-BEN(BLM) |
| Plaintiff, | **ORDER GRANTING IN PART DEFENDANTS' MOTION TO CONTINUE EXPERT REPORT DEADLINE** |
| v. | |
| PACIFIC SURF DESIGNS, INC. AND FLOW SERVICES, INC., | **[ECF No. 121]** |
| Defendants. | |
| AND RELATED COUNTERCLAIMS | |

On May 8, 2018, Defendants filed an *Ex Parte* Application to Extend Expert Report Deadline.  See ECF No. 121 ("Mot.").   Defendants seek an order continuing the remaining pretrial deadlines.  Mot. at 2.  Defendants are seeking *ex parte* relief because the current deadline for expert reports is May 18, 2018.  Id.  In support, Defendants argue that Plaintiff still has at least 7500 documents to produce that are responsive to Defendants' January 2018 ESI requests and which Defendants need prior to conducting various depositions and discussions with their experts.  Id.  Defendants note that while Plaintiff originally agreed to produce the documents the week of April 23, 2018, it has not done so and instead promised to produce them on May 8, 2018.  Id.  In further support, Defendants argue that because the only dates provided by Plaintiff for the deposition of Plaintiff's president, Mr. Geoff Chutter, are May 16-18, 2018, Defendants are unable to have their expert use Mr. Chutter's testimony in his or her opening report with the current deadline.  Id. at 2-3, 5.  Finally, Defendants argue that if its pending motion to compel is granted, Plaintiff will be required to produce additional documents and

1

Exhibit 91
-686-

witnesses for deposition.  Id. at 3, 5-6.  Defendants note that having their expert produce a report now and simply supplement it later after discovery is produced is inefficient and "not practicable" without a continuance of the deadlines.  Id. at 7.

On May 9, 2018, Plaintiff filed an opposition to the motion.  See ECF No. 122 ("Oppo."). Plaintiff contends that the motion was filed in violation of the Local Rules and Chambers Rules because Defendants failed to inform Plaintiff of their plan to file the instant *ex parte* motion and failed to meet and confer regarding the motion.[1]  Oppo. at 2-4.  Plaintiff also contends that Defendants were aware of the "purportedly new reasons" to continue the deadlines in this matter when they submitted the joint motion to continue the fact discovery deadline on April 26, 2018. Id. at 5.  Plaintiff states that there is no good cause for the requested relief because Defendants' failure to timely retain their expert is the motivation behind the request, not Plaintiff's failure to comply with discovery.  Id. at 5-6.  Plaintiff notes that Defendants failed to provide any details regarding how the pending discovery relates to their expert reports and that one of Defendants' experts has already submitted a report while the other expert is solely a rebuttal expert to Plaintiff's damages expert.[2]  Id. at 6.  Plaintiff contends that the requested relief is due in part to Defendants' belated May 1, 2018 disclosure of expert James Carmichael, which is not good cause for continuing the case deadlines.  Id. at 7. Plaintiff further contends that Defendants were aware of the pending ESI requests, but did not claim they were relevant to expert discovery until after they retained Mr. Carmichael.  Id.  Additionally, Plaintiff notes that the fact that Defendants were aware of Mr. Chutter and chose to wait to notice his deposition for April 27, 2018, the end of fact discovery at that time, does not demonstrate diligence, and that Defendants' pending motion to compel [see ECF No. 105] does not reference expert discovery and only seeks an extension of the fact discovery deadline. Id. at 9-10.  Finally, Plaintiff contends

---

[1] Plaintiff notes that Defendants' failure to comply with the Local Rules constitutes a sanctionable act and requests that at the very least, the Court "remind Defendants of their professional responsibilities to the Court and counsel." Id. at 5, n.1.

[2] Plaintiff notes that none of the pending discovery requests relate to damages.  Oppo. at 6.

17CV1118-BEN(BLM)

Exhibit 91
-687-

that Defendants have not shown good cause to continue all dates and requests that if the Court is inclined to grant Defendants' request, that the continuance be limited to two weeks and apply to Plaintiff and Defendants equally.  Id. at 11-12.

On May 11, 2018, Defendants filed Supplemental Evidence in Support of *Ex Parte* Application to Extend Expert Report Deadline.  See ECF No. 123 ("Mot. Supp.").  Defendants dispute Plaintiff's contention that it made a full and complete production on May 8, 2018.  Id. at 3.  In support, Defendants argue that Plaintiff produced 13,123 documents which was "well beyond the 7,500 documents that Plaintiff had represented" and that the documents were delivered on 9:44 p.m. on May 8, 2018 with a URL to download a zip file that was too cumbersome to download, requiring Plaintiff to send a flash drive with the load file to Defendants' office on May 9, 2018.  Defendants further argue that this large late production provides additional good cause for the requested extension.  Id.

On May 11, 2018, Plaintiff filed a Response to Defendants' Notice of Supplemental Authority.  ECF No. 124.  Plaintiff contends that Defendants' Supplemental Evidence amounts to "an unauthorized reply brief" and compels Plaintiff to respond to Defendants' "deliberate mischaracterization of Plaintiff's ESI production."  Id. at 2.  Plaintiff notes that (1) the Supplemental Evidence does not actually present any new evidence, (2) it produced fewer documents than anticipated, not more, and (3) Defendants did not try to access the file transfer link until after the flash drive was delivered.  Id. at 2-5.  Plaintiff further contends that Defendants should be sanctioned.  Id. at 5-6.

Once a Rule 16 scheduling order is issued, dates set forth therein may be modified only "for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); see also ECF No. 82 at 8 (stating that dates and times "will not be modified except for good cause shown").  The Rule 16 good cause standard focuses on the "reasonable diligence" of the moving party.  Noyes v. Kelly Servs., 488 F.3d 1163, 1174 n.6 (9th Cir. 2007) (citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)); Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294-95 (9th Cir. 2000) (stating Rule 16(b) scheduling order may be modified for "good cause" based primarily on diligence of moving party).  Essentially, "the focus of the inquiry is upon the moving

Exhibit 91
-688-

party's reasons for seeking modification." <u>Johnson</u>, 975 F.2d at 609.  However, a court also may consider the "existence or degree of prejudice to the party opposing the modification. . . ." <u>Id.</u>

In light of the Court's discovery order [<u>see</u> ECF No. 133], the Court finds good cause and **CONTINUES** all remaining dates for <u>all</u> parties as follows:

| Description | Current Date | New Date |
| --- | --- | --- |
| Rule 26(a)(2)(A) and (B) Disclosures | May 18, 2018 | August 17, 2018 |
| Rule 26(a)(2)(D) Supp. Disclosures | June 8, 2018 | September 7, 2018 |
| Expert Discovery Completion | July 6, 2018 | October 5, 2018 |
| Pretrial Motion Filing Deadline | July 20, 2018 | October 19, 2018 |
| Confidential Settlement Statement | August 3, 2018 | October 26, 2018 |
| Mandatory Settlement Conference | August 13, 2018 at 9:30 a.m. | November 5, 2018 at 9:30 a.m. |
| Pretrial Disclosures | September 17, 2018 | January 14, 2019 |
| L.R. 16.1(f)(4) Meeting of Counsel | September 24, 2018 | January 21, 2019 |
| Plaintiff's Proposed Pretrial Order due to Defendants | October 1, 2018 | January 28, 2019 |
| Proposed Final Pretrial Conference Order | October 8, 2018 | February 4, 2019 |
| Final Pretrial Conference | October 15, 2018 at 10:30 a.m. | February 11, 2019 at 10:30 a.m. |

**IT IS SO ORDERED**.

Dated:  6/12/2018

Hon. Barbara L. Major
United States Magistrate Judge

4

17CV1118-BEN(BLM)

Exhibit 91
-689-

EXHIBIT 92

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EMBLAZE LTD., | Case No.: 5:11-cv-01079-PSG |
| Plaintiff, | **ORDER RE: DISCOVERY MOTIONS** |
| v. | **(Re: Docket No. 216, 231)** |
| APPLE INC., | |
| Defendant. | |

In this patent infringement suit, Defendant Apple Inc. ("Apple") moves to amend its

invalidity contentions. Plaintiff Emblaze Ltd. ("Emblaze") opposes. Apple separately seeks

sanctions that would include not only leave to amend its contentions but also an order unilaterally

extending the fact discovery cutoff and compelling a further deposition of Sharon Carmel to occur

in the United States, at Emblaze's expense. If Emblaze cannot produce Mr. Carmel to be re-

deposed, Apple asks that Mr. Carmel be precluded from testifying at trial in any manner. Having

reviewed the papers and considered the arguments of counsel at a hearing on the motions, the court

is persuaded that Apple's requests for leave and a further deposition of Mr. Caramel are warranted

but that Apple's further requests are not.

The standards for amending invalidity contentions in this district are well-known. Patent

Local Rule 3-6 allows a party to amend its invalidity contentions "only by order of the Court upon

United States District Court
For the Northern District of California

a timely showing of good cause." The Patent Local Rules were "designed to require parties to

crystallize their theories of the case early in the litigation and to adhere to those theories once they

have been disclosed."[1] The Patent Local Rules balance "the right to develop new information in

discovery with the need for certainty as to the legal theories."[2] They do so by requiring a party to

"proceed with diligence in amending its contentions when new information comes to light in the

course of discovery."[3] "Only if the moving party is able to show diligence may the court consider

the prejudice to the non-moving party."[4] The party seeking to amend its contentions, here Apple,

bears the burden of establishing diligence.[5]

    Apple offers two justifications for its proposed leave. The first is the court's April 19,

2013, claim construction order, which by Apple's count rejected 15 of 16 constructions Apple had

proposed. The second is the timing of Emblaze's production of certain prior art materials. As a

third justification for not only the leave it seeks, but also the unilateral extension and further

deposition, Apple cites Fed. R. Civ. P. 37 and highlights what it characterizes as Emblaze's

discovery misconduct.

    The court begins with the leave issue.

    With respect to the first argument, Emblaze does not quibble with Apple's characterization

of its success, or lack thereof, at claim construction. Emblaze instead argues that because Apple

knew about Emblaze's proposed constructions as early as March 5, 2012, when Emblaze proposed

---

[1] *02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n. 12 (Fed. Cir. 2006)
(quoting *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123
(N.D. Cal. 2006)).

[2] *Id.* at 1365-66.

[3] *Id.*

[4] *Apple, Inc. v. Samsung Electronics Co., Ltd.*, Case No. 5:11-CV-01846-LHK, 2012 WL 1067548,
at *2 (N.D. Cal. Mar. 27, 2012); *see also Acer, Inc. v. Tech. Properties Ltd.*,
Case No. 5:08-CV-00877 JF/HRL, 2010 WL 3618687, at *3 (N.D. Cal. Sept. 10, 2010) ("if [the
moving party] was not diligent, the inquiry should end.").

[5] *02 Micro*, 467 F.3d at 1366-67.

2

Case No.: Case No.: 5:11-cv-01079-PSG
ORDER

Exhibit 92
-691-

United States District Court
For the Northern District of California

them, Apple could have conducted its "new" prior art search long ago. While Emblaze may be right that Apple knew of certain constructions when Emblaze proposed them the March before last, that argument does not address the variety of constructions adopted by the court that neither party proposed. Even as to those constructions urged by Emblaze, Patent L.R. 3-6(a) provides good cause to amend invalidity contentions when the Court issues any claim construction "different from that proposed by the party seeking amendment."[6] In contrast perhaps to the standards of other districts,[7] this rule imposes no different standard when the different claim construction was first proposed by the opposing party.[8]

With respect to the second argument, Emblaze initially notes that at least some of the Emblaze products at issue were known to Apple at least as early as April 26, 2013, when Apple filed a pleading with the Court[9] that referenced an Emblaze offering document that included nearly four pages of discussion about Emblaze Creator. Emblaze may be right that Apple knew about the products, or at least some of them, a few months before its brought its motion, but the papers indicate that the vast majority of Emblaze's production about these products was made in late June. Even if that April production might be otherwise be sufficient, it did not identify the Emblaze products by name or with substantial detail in the document and was dated many months after the priority date of the patent-in-suit. Emblaze made further productions in late July that included

---

[6] (emphasis added).

[7] *See, e.g. Mass Engineered Design, Inc. v. Ergotron, Inc.*, 250 F.R.D. 284, 286 (N.D. Tex. 2008) (where Court adopted patentee's proposed constructions without major modifications, alleged infringer "was on notice of the possibility of the Court's constructions from at least the time [that the alleged infringer] proposed its constructions")

[8] Emblaze does cite one opinion from this district, *Sunpower Corp. Sys. v. Sunlink Corp.* (Case No. 4:08-2807 SBA (EMC), 2009 WL 1657987 (N.D. Cal. June 12, 2009)), in which the court found insufficient cause where the "risk of the construction rendered by the presiding judge was well known and anticipated by Defendant." But Apple is right that the court in *Sunpower* only found that the construction provided insufficient cause because good cause to amend only because the defendant had already served "[p]rior art and claim charts anticipating" the ordered construction. *Id.* at *1.

[9] *See* Docket No. 179.

3

Case No.: Case No.: 5:11-cv-01079-PSG
ORDER

Exhibit 92
-692-

three Emblaze Creator manuals and a copy of the actual Emblaze Creator software, which would appear to be the most significant materials for any invalidity analysis. On this record, the court finds that Apple was diligent in seeking relief that same month.

With respect to the third argument, the crux of the disagreement is the timing and manner of Emblaze's document production. Apple claims that on July 30, 2013, a week after the lead inventor of the patent-in-suit Sharon Carmel's deposition, Emblaze produced over 300 pages of documents from the personal files of Carmel even though all of these documents had been made available to Emblaze's counsel before the Carmel deposition. Emblaze similarly surprised Apple – according to Apple anyway – in the middle of inventor depositions with documents and a software program (in original form) from the personal files of Ziv Eliraz, a co-inventor of the patent-in-suit and a former Emblaze employee. Apple also argues that many of the these documents should have been captured during Emblaze's initial document searches or were given to outside counsel who then failed to produce them for over a year.

Emblaze responds that, at bottom, Emblaze did not have possession, custody or control over the documents produced by certain witnesses until the witnesses produced those documents at their depositions in Israel. Emblaze also urges that whatever shortcomings there were in its document production, its efforts were taken in good faith.

The court is troubled by what it has come to learn of Emblaze's processes for collecting and producing documents. In particular, the testimony of Ms. Gal describes a history of delayed production of documents and documents turned up in ESI searches that were not, but should have been, located in earlier productions of documents. Nonetheless on the record presented, the court cannot say that Emblaze's conduct is sanctionable under Rule 37.

Apple has, however, demonstrated the requisite diligence required to secure the leave it seeks. The court therefore considers the prejudice Emblaze might face by granting Apple leave.

4

Exhibit 92<br/>-693-

Emblaze highlights the fact that fact discovery in this case closed on August 30, 2013.  Emblaze also claims that, at least as of the date it filed its opposition, none of the publicly available articles and patents that Apple now seeks to add have been produced to Emblaze.  Apple disputes this with a sworn declaration, but even if Emblaze's claim is accurate, the court finds that it can mitigate the burden on Emblaze by adjusting the schedule, as follows:

Fact Discovery Cutoff (mutual)............................................................... October 15, 2013

Designation of Opening Experts with Reports ............................................October 31, 2013

Designation of Rebuttal Experts with Reports .........................................November 15 2013

Expert Discovery Cutoff ..........................................................................December 20, 2013

Deadline(s) for Filing Discovery Motions .....................................*See* Civil Local Rule 37-3

Last Day for Dispositive Motion Hearing ..............................10:00 a.m. on January 28, 2014

Final Pretrial Conference .......................................................10:00 a.m. on March 11, 2014

Trial ...........................................................................................9:30 a.m. on March 24, 2014

The court also will permit a further deposition of Mr. Caramel, with each party bearing its own expenses.  If Mr. Caramel does not appear in the United States for such a deposition, the court will entertain a renewed motion by Apple to preclude his testimony.

**IT IS SO ORDERED.**

Dated: September 12, 2013

PAUL S. GREWAL
United States Magistrate Judge

Case No.: Case No.: 5:11-cv-01079-PSG
ORDER

Exhibit 92
-694-

# EXHIBIT 93

Case 8:20-cv-00048-JVS-JDE   Document 386-1   Filed 05/24/21   Page 447 of 540   Page ID
#:34980
Case 2:03-cv-01329-WBS-EFB   Document 316   Filed 10/26/10   Page 1 of 7

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10                            ----ooOoo----

11

12   TECHNOLOGY LICENSING                  NO. CIV. 2:03-1329 WBS EFB
     CORPORATION,
13
                Plaintiff,                 MEMORANDUM AND ORDER RE:
14                                         MOTIONS TO AMEND SCHEDULING
          v.                               ORDER AND DEFENDANT'S MOTION
15                                         TO PROHIBIT PLAINTIFF FROM
     TECHNICOLOR USA, INC.,                INTRODUCING CERTAIN EVIDENCE
16
                Defendant.
17   _____/

18

19                            ----ooOoo----

20

21        Plaintiff Technology Licensing Corporation ("TLC")

22   brought this action against defendant Technicolor USA, Inc.,

23   ("Technicolor")[1] for patent infringement.  Before the court are

24   plaintiff's motion to amend the scheduling order, defendant's

25   motion to amend the scheduling order, and defendant's motion to

26   _____

27        [1]    The caption was recently changed to reflect defendant's
     name change from Thomson, Inc., to Technicolor USA, Inc.  (Docket
28   No. 296.)

                                    1

Exhibit 93
-695-

Case 8:20-cv-00048-JVS-JDE   Document 386-1   Filed 05/24/21   Page 448 of 540   Page ID
#:34981
Case 2:03-cv-01329-WBS-EFB   Document 316   Filed 10/26/10   Page 2 of 7

1   prohibit plaintiff from introducing facts or evidence requested

2   but not identified in plaintiff's interrogatory responses

3   pursuant to Federal Rule of Civil Procedure 37.

4   I.   Factual and Procedural Background

5          Plaintiff owns U.S. Patent Nos. RE40,411 E (the "'411

6   patent") and RE40,412 E (the "'412 patent"), which are July 1,

7   2008 reissues of U.S. Patent Nos. 5,754,250 (the "'250 patent")

8   and 5,486,869 (the "'869 patent"), respectively.  (Pl.'s Second

9   Am. Compl. ("SAC") ¶¶ 6-8, Exs. A-D.)  Plaintiff alleges that

10  defendant infringed the '411 and '412 patents.  (Id. ¶¶ 9-11.)

11         Pursuant to the court's Status (Pretrial Scheduling)

12  Order of November 13, 2009, all discovery was to be completed by

13  August 30, 2010, and all pretrial motions were to be filed by

14  September 20, 2010; the matter was set for a pretrial conference

15  on November 29, 2010, and trial on February 1, 2011.  (Docket No.

16  229.)  On April 13, 2010, pursuant to a joint stipulation of the

17  parties, the court appointed Gale R. Peterson as a Special Master

18  for purposes of claim construction.  (Docket No. 273.)  No

19  recommendation has yet been issued by the Special Master.

20         Plaintiff and defendant now move separately to amend

21  the scheduling order.  Defendant also moves to prohibit plaintiff

22  from introducing facts or evidence requested but not identified

23  in plaintiff's interrogatory responses.  The court granted

24  defendant's motion for judgment on the pleadings on plaintiff's

25  claims of inducing and contributory infringement on October 18,

26  2010, with leave to amend the complaint; the deadline for

27  submitting an amended complaint is also before the court.

28  II.  Discussion

                                2

Exhibit 93
-696-

Case 8:20-cv-00048-JVS-JDE   Document 386-1   Filed 05/24/21   Page 449 of 540   Page ID
#:34982
Case 2:03-cv-01329-WBS-EFB   Document 316   Filed 10/26/10   Page 3 of 7

1    A.    <u>Motions to Amend</u>

2         A court may modify the pretrial schedule "if it cannot

3    reasonably be met despite the diligence of the party seeking the

4    extension." <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604,

5    609 (9th Cir. 1992).  Given that the Special Master has not yet

6    issued his recommendation, it is proper to extend the discovery

7    deadline so that the parties may conduct depositions after claim

8    construction has been resolved.  In the interest of retaining the

9    structure provided by the November 13, 2009 Scheduling Order, the

10   other deadlines will be similarly extended.

11   B.    <u>Motion to Exclude Certain Evidence</u>

12        Defendant moves pursuant to Federal Rule of Civil

13   Procedure 37(c)(1) for an order sanctioning plaintiff for its

14   purported failure to respond appropriately to discovery requests.

15   Defendant seeks an order excluding any evidence offered by

16   plaintiff regarding 1) alleged infringing devices beyond the

17   three devices plaintiff identified in response to Interrogatory

18   No. 1; 2) the doctrine of equivalents, which plaintiff did not

19   address in answering Interrogatory No. 2.; and 3) licensing of

20   the '411 and '412 patents or their predecessor patents, for which

21   plaintiff did not provide information in answering Interrogatory

22   No. 3.

23        Federal Rule of Civil Procedure 26(e)(1) requires that

24   a party "supplement or correct its disclosure or response . . .

25   if the party learns that in some material respect the disclosure

26   or response is incomplete or incorrect, and if the additional or

27   corrective information has not otherwise been made known to the

28   other parties during the discovery process . . . ."  Rule

3

Exhibit 93
-697-

Case 8:20-cv-00048-JVS-JDE   Document 386-1   Filed 05/24/21   Page 450 of 540   Page ID
#:34983
Case 2:03-cv-01329-WBS-EFB   Document 316   Filed 10/26/10   Page 4 of 7

1   37(c)(1) prohibits the introduction of evidence that should have

2   been disclosed and was not disclosed pursuant to Rule 26(e)(1) if

3   the failure to disclose was not harmless and was not

4   substantially justified.

5         Defendant's first interrogatory asked for a claim chart

6   for each allegedly infringing product.  In response, plaintiff

7   identified three of defendant's products and provided claim

8   charts based on the allegedly infringing chips in those products.

9   Defendant argues that plaintiff's failure to identify any other

10   products should preclude plaintiff from introducing evidence

11   regarding other products.  However, plaintiff has thus far been

12   substantially justified in failing to supplement its response.

13   Discovery is not yet complete, and plaintiff may still discover

14   other products that contain the allegedly infringing chips.

15   Indeed, plaintiff has requested information regarding which of

16   defendant's products incorporate the chips at issue, and

17   defendant has apparently responded by providing a "long string of

18   numbers (as opposed to an identifiable product name or number),

19   which incorporate those chips." (Pl.'s Opp'n at 6.)  Plaintiff

20   states that it intends to determine which products incorporate

21   the GS 4882 chip[2] during technical depositions (id.), which

22   presumably will not take place until after claim construction is

23   completed.  Plaintiff cannot be expected to name all of

24   defendant's products at issue until it knows which products

25   incorporate the relevant chip.

26         Further, any failure to supplement is harmless.

27   ─────────────────

28      [2]   The parties have apparently settled claims regarding
the other two chips. (Pl.'s Opp'n at 2 n.2.)

4

Exhibit 93
-698-

Case 8:20-cv-00048-JVS-JDE   Document 386-1   Filed 05/24/21   Page 451 of 540   Page ID
#:34984
Case 2:03-cv-01329-WBS-EFB   Document 316   Filed 10/26/10   Page 5 of 7

1  Defendant knows that the GS 4882 chip is at issue and is in a

2  better position than plaintiff to know which of its products

3  incorporate the chip.  Defendant has also acknowledged at least

4  the possibility that the litigation could involve all of its

5  products containing the relevant chips.  (See, e.g., Def.'s Mem.

6  in Supp. of its Mot. for Partial Summ. J. (Docket No. 270) at 16

7  ("Accordingly, res judicata bars all [cause of action] Claims

8  asserted by TLC for infringement of the '411 or '412 Patent by

9  any Thomson product containing a Gennum GS4882 chip."); id. at 12

10 ("Accordingly, res judicata bars all of TLC's [cause of action]

11 Claims consisting of assertions of infringement of any timely

12 asserted Patent Claims of the '411 or '412 Patents, based on

13 Thomson products that contain Elantec EL4583 chips."); Def.'s

14 Opening Markman Br. (Docket No. 248) at 9 ("In the present case,

15 TLC's infringement allegations are based, in part, upon Thomson's

16 use of chips produced by Gennum Corp.").)  Thus, any failure to

17 disclose other products is harmless at this point.

18       Defendant's second interrogatory asked plaintiff for a

19 doctrine of equivalents analysis of the allegedly infringed

20 claims.  Plaintiff responded that its claims were based on

21 literal infringement, but that "[a]ny element of any asserted

22 claim of the '411 and '412 patents which is not found to be

23 literally present in the accused products (as will be dictated by

24 the Court's claim construction) is nonetheless present under the

25 doctrine of equivalents." (Def.'s Mot. Ex. A at 7.)  Plaintiff

26 was substantially justified in failing to amend its response to

27 include both literal infringement and doctrine of equivalents

28 analyses for the more than 50 claims that are in dispute, and a

5

Exhibit 93
-699-

1  Rule 37 exclusion would be premature at this point.

2          In response to defendant's request for information

3  about the licensing of the patents-in-suit, plaintiff agreed to

4  produce "all settlement and/or license agreements" relating to

5  the patents by "afford[ing] Technicolor's counsel a reasonable

6  opportunity to audit, inspect and copy such records or provide

7  categorized copies of such records . . . ."  (Def.'s Mot. Ex. B

8  at 3-4.)  When an "answer to an interrogatory may be determined

9  by examining, auditing, compiling, abstracting, or summarizing a

10 party's business records . . . and if the burden of deriving or

11 ascertaining the answer will be substantially the same for either

12 party," Rule 33(d) gives a responding party the option of

13 answering by:

14         (1) specifying the records that must be reviewed, in
           sufficient detail to enable the interrogating party to
15         locate and identify them as readily as the responding
           party could; and (2) giving the interrogating party a
16         reasonable opportunity to examine and audit the records
           and to make copies, compilations, abstracts, or
17         summaries.

18 Fed. R. Civ. P. 33(d).  Plaintiff's use of the Rule 33(d) option

19 was appropriate.  Accordingly, the court finds no reason to

20 impose sanctions on plaintiff.

21         IT IS THEREFORE ORDERED that defendant's motion to

22 prohibit plaintiff from introducing certain evidence be, and the

23 same hereby is, DENIED.

24         Plaintiffs have thirty days from the date of this Order

25 to file an amended complaint, if they can do so consistent with

26 the court's October 18, 2010, Order (Docket No. 312.).

27         The court's November 13, 2009, scheduling order is

28 hereby amended as follows: The parties shall disclose experts and

                                    6

Exhibit 93
-700-

Case 8:20-cv-00048-JVS-JDE   Document 386-1   Filed 05/24/21   Page 453 of 540   Page ID
#:34986
Case 2:03-cv-01329-WBS-EFB   Document 316   Filed 10/26/10   Page 7 of 7

1   produce reports in accordance with Federal Rule of Civil

2   Procedure 26(a)(2) by no later than February 1, 2011.  With

3   regard to expert testimony intended solely for rebuttal, those

4   experts shall be disclosed and reports produced in accordance

5   with Federal Rule of Civil Procedure 26(a)(2) on or before March

6   1, 2011.  All discovery shall be completed by April 6, 2011.  All

7   pretrial motions shall be filed by May 6, 2011.  The Final

8   Pretrial Conference is reset for July 11, 2011, at 2:00 p.m. in

9   Courtroom 5.  The jury trial is reset for September 20, 2011, at

10  9:00 a.m. in Courtroom 5.

11           IT IS SO ORDERED.

12  DATED:  October 25, 2010

13

14                                                    _____

15                          WILLIAM B. SHUBB
                            UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

7

Exhibit 93
-701-

# EXHIBIT 94

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 20-88 JVS (DFMx) | Date | April 14, 2021 |

| | |
|---|---|
| Title | Glam and Glitz Nail Design, Inc. v. iGel Beauty, LLC et al. |

| | |
|---|---|
| Present: The Honorable | **James V. Selna, U.S. District Court Judge** |

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings:    **[IN CHAMBERS] Order Regarding Motion to Continue Trial, to Reset Dates, and for Leave to Add Defendants**

Before the Court is Plaintiff Glam and Glits Nail Design, Inc.'s ("Glam and Glits") motion to continue trial, to reset dates, and for leave to add defendants. Mot., ECF No. 39. Defendants iGel Beauty, LLC ("iGel"), Daniel Bui ("Daniel"), Tu Bui ("Tu"), Alvin Bui ("Alvin"), and Andrew Bui ("Andrew") (collectively – "Defendants") filed an opposition. Opp'n, ECF No. 40. Glam and Gltiz responded. Reply, ECF No. 41.

For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** the motion.

## I. BACKGROUND

This case stems from a prior lawsuit filed by Glam and Glits against Ideal Salon Solutions, LLC ("Ideal Salon Solutions") and Sky Beauty, LLC ("Sky Beauty") (collectively – "Prior Defendants"). In that lawsuit, Glam and Glits claimed that Prior Defendants willfully infringed United States Design Patent No. D758,737, which Glam and Glits owns. Compl., ECF No. 1, ¶¶ 77, 88. That lawsuit was resolved by a Settlement Agreement, which bound Prior Defendants' successors-in-interest. Id. ¶¶ 3, 5. Glam and Glits now alleges that iGel is a successor-in-interest to Prior Defendants, and Daniel, Tu, Alvin, and Andrew are third-party beneficiaries of the Settlement Agreement. Id. ¶¶ 7-9. Glam and Glits alleges that Defendants have breached the Settlement Agreement and infringed on several of Glam and Glits's design patents. See generally id. Glam and Glits also asserts claims for trade dress infringement under 15 U.S.C. § 1125(a) and unfair competition under Cal. Bus. and Prof. Code § 17200 et seq. Id.

Exhibit 94
-702-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-88 JVS (DFMx)                      Date    April 14, 2021

Title    Glam and Glitz Nail Design, Inc. v. iGel Beauty, LLC et al.

Currently, the Court's scheduling order provides the following deadlines:

**Jury Trial October 26, 2021 at 8:30 a.m.**
**Final PreTrial Conference October 12, 2021 at 8:30 a.m.**
    File PreTrial Documents not later than October 4, 2021
    File motions in limine not later than September 13, 2021
**Discovery Cut-off April 19, 2021**
**Expert Discovery Cut-off July 12, 2021**
    Initial disclosure of Experts not later than May 17, 2021
    Rebuttal disclosure of Experts not later than June 14, 2021
**Law and Motion Cut-off September 7, 2021 at 8:30 a.m.**
    Motions to be filed and served not later than August 9, 2021
**Last Day to Amend Pleadings or Add Parties June 15, 2020**
**Last day to serve invalidity contentions June 1, 2020**
**Last day to serve infringement contentions August 17, 2020**

Scheduling Order, ECF No. 32.

    This motion arose after the following series of events. Glam and Glits served a series of requests for production and sets of interrogatories between May 14 and June 1, 2020. Opp'n at 6. Defendants responded to these requests for production and interrogatories between June 15 and November 24, 2020. Id. Defendants included several documents as part of their production of 73,513 files on November 24 that mention several of the companies that Glam and Glits now seeks to add as defendants: Ideal Salon Solutions, 888 Trading, LLC,  LaVi Nails, LLC, LaVi Nails NWP Mall LLC, and La-Vi Nails 1, LLC (collectively – the "Proposed Defendants"). Mot. at 4, 15 (explaining documents produced); Proposed First Amended Complaint, ECF No. 38-14 (listing new parties Glam and Glits now wishes to add). Those documents began to "turn up" in the search by Glam and Glits's counsel in late February 2021, shortly after an independent search of a database of bills of lading uncovered products for "IGEL BEAUTY" that were consigned to "Lavi Nails LLC." Lapple Decl., ECF No. 38-2, ¶ 5. That database search was in turn prompted by Defendants' counsel's representation during a January 28, 2021 discussion that sales of the accused products had been "poor" during 2020, contrary to Glam and Glits's understanding. Mot. at 3, Reply at 6.

    Glam and Glits argues that the documents from the November 24 production and

Exhibit 94
-703-

Case 8:20-cv-00048-JVS-JDE   Document 386-1   Filed 05/24/21   Page 457 of 540   Page ID
#:34990
Case 8:20-cv-00088-JVS-DFM   Document 43   Filed 04/14/21   Page 3 of 7   Page ID #:683

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-88 JVS (DFMx) | Date | April 14, 2021 |
|---|---|---|---|

| Title | Glam and Glitz Nail Design, Inc. v. iGel Beauty, LLC et al. |
|---|---|

the records from the database show there to have been a "6-year, 7-comapny conspiracy to make, import, market, and sell nail products using Plaintiff's bottle-and-cap design while hiding assets and the true identities of the individuals directing the conduct." Mot. at 1. This motion was filed shortly thereafter. See generally id. Glam and Glits seeks leave to amend their complaint to add each of the Proposed Defendants and to delay trial and all pre-trial deadlines by nine months. Id.

## II. LEGAL STANDARD

A party seeking to amend pleadings after a scheduling deadline must satisfy the standard for modifying the scheduling order under Rule 16(b) of the Federal Rules of Civil Procedure. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607–08 (9th Cir. 1992). A party must show "good cause" for relief from a scheduling order. Fed. R. Civ. P. 16(b)(4). The good cause standard "primarily considers the diligence of the party seeking the amendment." Johnson, 975 F.2d at 609. The court may grant relief from a scheduling deadline if the deadline could not "reasonably be met despite the diligence of the party seeking the extension." Id. While a court may consider prejudice to the opposing party, "the focus of the inquiry is upon the moving party's reasons for seeking modification." Id. If that standard is met, the moving party must still meet the general limitations on the filing of amended pleadings.

In the absence of an "apparent or declared reason," such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendments, prejudice to the opposing party, or futility of amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. Foman v. Davis, 371 U.S. 178, 182 (1962); Moore v. Kayport Package Express, Inc., 885 F.2d 531, 538 (9th Cir. 1989). The consideration of prejudice to the opposing party "carries the greatest weight." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). "Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal." Steckman v. Hart Brewing, 143 F.3d 1293, 1298 (9th Cir. 1998) (internal citations omitted).

Exhibit 94
-704-

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-88 JVS (DFMx) | Date | April 14, 2021 |
|---|---|---|---|
| Title | Glam and Glitz Nail Design, Inc. v. iGel Beauty, LLC et al. | | |

### III. DISCUSSION

Exhibit 94
-705-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-88 JVS (DFMx) | Date | April 14, 2021 |
|---|---|---|---|

| Title | Glam and Glitz Nail Design, Inc. v. iGel Beauty, LLC et al. |
|---|---|

The Court concludes that there is good cause to modify the scheduling order and grant leave to add new defendants. Glam and Glits provides several reasons for why it is now seeking leave to add the Proposed Defendants. Defendants did not mention the Proposed Defendants in their initial disclosures or produce any documents naming the Proposed Defendants before the deadline to amend the pleadings on June 15, 2020. Mot. at 14-15; Reply at 7; see Scheduling Order. Glam and Glits also argues that they took a reasonable amount of time to search through the 73,513 documents produced on November 24 and only had reason to search through the database of bills of lading following Defendants' counsel's representation that sales of the accused products had been poor in 2020. Mot. at 15.

Defendants do not make any detailed arguments about why Glam and Glits has delayed in filing this motion. Instead, Defendants assert that Glam and Glits showed a "careless lack of diligence," engaged in "the antithesis of diligence," and should have scheduled a deposition to clear up its "wild speculation." Opp'n at 9-10. Such unsupported claims are insufficient to persuade the Court that Glam and Glits has shown a lack of diligence in filing this motion and seeking leave to add defendants. Rather, the chain of events that Glam and Glits outlines in its motion persuade the Court that it is filing this motion only shortly after having discovered the involvement of the Proposed Defendants. The Court therefore finds that Glam and Glits does have good cause to modify the scheduling order.

The one exception to this finding relates to Ideal Salon Solutions. Since Ideal Salon Solutions was a defendant in a previous lawsuit by Glam and Glits, Mot. at 4, its identity is not new to Glam and Glits. Any delay thus must be measured from when Glam and Glits first learned of Ideal Salon Solutions' continued operations. The Court notes that the Parties do not directly discuss when Defendants produced the documents showing that Ideal Salon Solutions continued to engage in business transactions following its dissolution in March 2016. See Exhibits 8-13 (showing checks made to Ideal Salon Solutions following March 2016). Since the Court cannot assess when Glam and Glits first had information at its disposal to conclude that they had reason to add Ideal Salon Solutions as a defendant, the Court **DENIES** the motion with respect to Ideal Salon Solutions.

The Court therefore turns to the remaining factors that are used to determine whether the Court should grant leave to amend. The Court has already explained why

Exhibit 94
-706-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-88 JVS (DFMx) | Date | April 14, 2021 |
|---|---|---|---|

| Title | Glam and Glitz Nail Design, Inc. v. iGel Beauty, LLC et al. |
|---|---|

there was not undue delay. Defendants arguments for why Glam and Glits has shown dilatory intent and bad faith are similar to those they make to show undue delay. See Opp'n at 12-13. As the Court does not consider the Parties' recent unsuccessful mediation, which took place on February 23, Opp'n at 2, to alone be sufficient to show that Glam and Glits are now pursuing this motion improperly, the Court does not find there to be dilatory intent or bad faith. Defendants' claims of prejudice are similarly unsupported and have no evidentiary basis, not even from Defendants' concurrently filed declaration. See Opp'n at 10-11. The Court declines to accept Defendants' counsel's assertion that Defendants "lack the financial means to engage in a drawn-out legal battle," id., as alone sufficient to show prejudice that outweighs the established policy of freely granting leave to amend where justice so requires. Fed. R. Civ. P. 15(a)(2).

The remaining factor is futility. The Court agrees that it would be futile to add 888 Trading, LLC. 888 Trading, LLC not only does not exist now, but "is considered not to have existed in" New Jersey. 888 Expungement, ECF No. 38-7, Ex. 23. New Jersey law relating to the winding up of dissolved LLCs therefore is inapposite. See Reply at 9 (citing such law). By contrast, the Court is not persuaded that it would be futile to add LaVi Nails, LLC and LaVi Nails NWP Mall LLC. Defendants merely state that those two LLCs are "not related to Defendants," Opp'n at 14, without substantively engaging with the evidence put forward by Glam and Glits of their involvement in shipping accused products to Defendants. See Mot. at 10-12. This is insufficient to show that it would be futile to add LaVi Nails, LLC and LaVi Nails NWP Mall LLC. Finally, the Court does not find adding La-Vi Nails 1, LLC would be futile for lack of personal jurisdiction. It is well established that one party may not challenge personal jurisdiction for another party. Wright & Miller, 14D Fed. Prac. & Proc. § 3829 n.10 (4th ed. 2020) (collecting cases). This is particularly important because a party can always consent to personal jurisdiction. Id. Thus, Defendants cannot show that leave to amend to add La-Vi Nails 1, LLC would be futile.

As such, the Court **GRANTS** Glam and Glits 30-days leave to amend the complaint to add LaVi Nails, LLC, LaVi Nails NWP Mall LLC, and La-Vi Nails 1, LLC. The Court also **GRANTS** the motion to continue the trial and all pre-trial deadlines by nine months. The new scheduling deadlines are as follows:

> **Jury Trial July 26, 2022 at 8:30 a.m.**
> **Final PreTrial Conference July 11, 2022 at 8:30 a.m.**

Exhibit 94
-707-

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-88 JVS (DFMx) | Date | April 14, 2021 |

| Title | Glam and Glitz Nail Design, Inc. v. iGel Beauty, LLC et al. |

File PreTrial Documents not later than July 5, 2022
File motions in limine not later than June 13, 2022
**Discovery Cut-off January 18, 2022**
**Expert Discovery Cut-off March 14, 2022**
Initial disclosure of Experts not later than February 14, 2022
Rebuttal disclosure of Experts not later than March 14, 2022
**Law and Motion Cut-off June 6, 2022 at 1:30 p.m.**
Motions to be filed and served not later than May 9, 2022

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the motion.

**IT IS SO ORDERED.**

| | : | 0 |

Initials of Preparer    lmb

Exhibit 94
-708-

EXHIBIT 95

1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION - SANTA ANA)


MASIMO CORPORATION, ET AL,      ) CASE NO: 8:20-CV-00048-JVS-JDEx
                                )
              Plaintiffs,       )          CIVIL
                                )
     vs.                        )      Santa Ana, California
                                )
APPLE, INC,                     )      Thursday, January 21, 2021
                                )
              Defendant.        )
_____ )


HEARING RE: DEFENDANT APPLE, INC'S MOTION TO COMPEL
[DKT.NO.260]


BEFORE THE HONORABLE JOHN D. EARLY,
UNITED STATES MAGISTRATE JUDGE


**APPEARANCES**:               SEE PAGE 2


Court Reporter:        Recorded; REMOTE; Wave

Courtroom Deputy:      Maria Barr

Transcribed by:        Exceptional Reporting Services, Inc.
                       P.O. Box 8365
                       Corpus Christi, TX 78468
                       361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

<u>**APPEARANCES**</u>:


For Plaintiffs:          STEPHEN C. JENSEN, ESQ.
                         Knobbe Martens Olson & Bear, LLP
                         2040 Main Street
                         14th Floor
                         Irvine, CA 92614


                         ADAM POWELL, ESQ.
                         Knobbe Martens Olson & Bear, LLP
                         12790 El Camino Real
                         San Diego, CA 92130

For Defendant:           JOSHUA H. LERNER, ESQ.
                         Gibson Dunn & Crutcher, LLP
                         555 Mission Street
                         Suite 3000
                         San Francisco, CA 94105


                         ILISSA S. SAMPLIN, ESQ.
                         Gibson Dunn & Crutcher, LLP
                         2029 Century Park East
                         Suite 4000
                         Los Angeles, CA 90067


                         BRIAN K. ANDREA, ESQ.
                         Gibson Dunn & Crutcher, LLP
                         1050 Connecticut Avenue NW
                         Washington, DC 20036


                         RYAN MORAN, ESQ.
                         Apple in-house counsel

Exhibit 95
-710-

<u>**Santa Ana, California; Thursday, January 21, 2021**</u>

**(Ms. Samplin, Messrs. Jensen, Powell, Lerner, Andrea and Moran**

**Appearing via Telephonically)**

**(Call to Order)**

**THE COURT:**  We will now call our second matter on calendar today, Case Number 8:20-CV-48-JVS, *Masimo Corporation, et al versus Apple, Inc.*

The appearances that I have on behalf of Plaintiffs are Stephen Jensen -- sir, are you here?

**MR. JENSEN:**  I am, Your Honor.

**THE COURT:**  And Adam Powell, sir, are you here?

**MR. POWELL:**  Yes, Your Honor.

**THE COURT:**  And who will be speaking on behalf of Apple?

**MR. JENSEN:**  I will, Your Honor.  This is Stephen Jensen.

**THE COURT:**  All right, thank you.  On behalf of --

**MR. JENSEN:**  Sorry, that's not -- I thought you meant on behalf of Plaintiff.

**THE COURT:**  I'm sorry.  On behalf of Plaintiff, you're correct.

And on behalf of Apple, I have Joshua Lerner; is that correct?

**MR. LERNER:**  Yes, Your Honor.

**THE COURT:**  Brian Andrea, is that correct?

Exhibit 95
-711-

4

1          **MR. ANDREA:**  Yes, Your Honor.

2          **THE COURT:**  Ilissa Samplin, is that correct?

3          **MS. SAMPLIN:**  Yes, Your Honor.

4          **THE COURT:**  And I have Mr. Moran who is in-house

5   counsel; is that correct?

6          **MR. MORAN:**  Yes, Your Honor.

7          **THE COURT:**  Is there anyone else on the call whose

8   name I didn't just read?  All right.  Hearing nothing further,

9   we will proceed.

10          We're here for a motion by Apple to compel Plaintiffs

11  to comply with California Code of Civil Procedure Section

12  2019.210.  The Court has received and reviewed all relevant

13  documentation in connection with the motion including the

14  motion, the joint stipulation, the evidence submitted in

15  support and in opposition of the motion, all matters that were

16  filed under seal and the respective supplemental memoranda of

17  each party and the additional exhibits and declaration offered

18  by Apple in support of its supplemental memorandum.

19          We are going to proceed, not under seal at the moment

20  but if a party or if the Court deems it appropriate and

21  necessary to get into matters that have been sealed that were

22  submitted in connection with the motion or any other reason,

23  just from the parties' standpoint, alert me so that we can make

24  a notation that a certain portion is sealed or I will alert the

25  parties.  All right.

Exhibit 95
-712-

1      **MR. JENSEN:**  Your Honor, may I make a comment on that

2  -- this is Stephen Jensen -- briefly?

3      **THE COURT:**  Uh-huh.

4      **MR. JENSEN:**  I'm -- Ryan Moran, counsel for Apple

5  whose in-house counsel is on the phone and if opposing counsel

6  or I were to start reading from the 2019.210, Mr. Moran is not

7  authorized to access that portion and I would ask that he exit

8  the call if that becomes (glitch in audio).

9      **THE COURT:**  All right.  Let me hear from Apple.  Do

10  you have any opposition to that?

11      **MR. LERNER:**  No, Your Honor.  We had understood, as

12  you said at the outset, to use your term, that this might be

13  streamlined and, therefore, we might not get into that level of

14  detail but, of course, if there's quotes from sealed documents,

15  then we will hit pause and deal with it accordingly.  And if

16  that works for Your Honor, then we, of course, value the input

17  of our client on discussion that does not involve the sealed

18  matter.

19      **THE COURT:**  All right.  So that only heightens the

20  need to announce your intention including myself before getting

21  into sealed materials.  I do not want to limit the parties'

22  ability to freely and fully argue their positions.  So anyone

23  can get into anything that's sealed but you need to alert us

24  before we get into it and we'll take appropriate steps.

25          All right.  I did not issue a written tentative in

Exhibit 95

-713-

1   connection with the motion but I want to -- since things can

2   change, I wanted to see whether anything had changed since the

3   supplemental memoranda.  I did note, obviously, the

4   supplemental memoranda were filed within a day or two of Judge

5   Selna's order on the motion to dismiss the Third Amended

6   Complaint and that there was some stipulation -- and I think

7   it's been entered but I'm not sure -- regarding the time to

8   answer either the Third Amended Complaint as it now stands or a

9   potential Fourth Amended Complaint.

10          Other than that, is there anything material in the

11  case that has occurred since the filing of the supplemental

12  memoranda?  And I'll start with Apple since you are the moving

13  party.

14          **MR. LERNER:**  I -- the only thing I would flag for

15  Your Honor is that there are additional disputes that are

16  becoming ripe enough for additional motions to Your Honor.  And

17  as you know, part of the reason why we view getting clarity on

18  this 2019.210 statement is so important is that we really do

19  believe the purpose of the disclosure is to assist in the

20  orderly and expeditious handling of discovery.

21          And our hope is that if we can get greater clarity

22  here and get the order we requested, then we can cut down

23  significantly on these other disputes.  We think that's

24  consistent with what the case is saying but I think that the

25  real development that's showing up on the docket is additional

Exhibit 95
-714-

7

1    disputes about the trade secret discovery.  And so with that,

2    I'll pause.

3            THE COURT:  I'm sorry.  So tell me how that relates

4    to the decision we're making today.

5            MR. LERNER:  I believe that, for example, some of the

6    disputes that the parties are having about the information with

7    respect to the secrets -- and I'll give one example.  There's a

8    dispute about whether or not the Plaintiffs need to parse their

9    responses to discovery by trade secret.  If we can get greater

10   clarity and specificity here about what the secrets are, it

11   will be much easier for the parties and the Court to say, for

12   example, yes, you should parse that.

13           And it's just, I think, generally easier to address

14   -- which has come up with that dispute burden and that burden

15   relative to the importance of these issues in the case, is this

16   one of the lead secrets?  Is it a secret with a lot of, for

17   example, prior art, things like that?  I think that's how those

18   issues relate to this motion.  This motion may cut down on the

19   future disputes.

20           THE COURT:  Well, are you asking me to, in ruling on

21   this motion, take into account issues relating to burden?

22           MR. LERNER:  I think the parties would take Your

23   Honor's ruling on this motion certainly into account on the

24   pending motion as to whether or not there is, in fact, any real

25   burden arguments there or anything else.  I think the ruling

Exhibit 95
-715-

1    here will absolutely inform the briefing and subsequent

2    arguments of those motions.

3            THE COURT:  Well, I guess I'm not sure I'm following

4    you because there's a standard for 2019.210 disclosures and

5    then there's a standard for discovery and when things are

6    disproportionate to the needs of the case or represent an undue

7    burden.  I'm going to be deciding --

8            MR. LERNER:  Sure, and --

9            THE COURT:  -- I'm going to be deciding --

10           MR. LERNER:  -- let me take one -- understood, Your

11   Honor.  Let me take one more stab at it and then if I'm still

12   not clarifying it, I will not take more of your time.

13           But if we can get greater clarity -- if this motion

14   is granted and we get greater specificity of the secrets, we

15   believe that that will help streamline going forward some of

16   the issues that are coming up for the parties which include,

17   for example, is it burdensome for the Plaintiffs to break out

18   information with respect to each alleged trade secret or is

19   that something that's a straightforward, non-burdensome task

20   once we've got greater specificity?

21           But I think the answer to your question is we're not

22   talking about burden now but the ruling on this motion we think

23   absolutely can impact whether or not either the parties or the

24   Court understand that some of the arguments in the future about

25   burden are right or wrong.

Exhibit 95
-716-

9

 1          **THE COURT:**  All right.  And I hear what you're

 2   saying.  You've already filed one motion to compel set for

 3   hearing in two weeks and you're saying that there are other

 4   motions and issues in the pipeline.  You mentioned an issue of

 5   burden.  I think that's already teed up in the current motion

 6   to compel set for two weeks but maybe I'm wrong.

 7          What other issues are the parties having with respect

 8   to discovery?

 9          **MR. LERNER:**  I think that's the primary one that

10   relates to this motion, Your Honor, from our perspective.

11          **THE COURT:**  So tell me what relates to anything.

12          **MR. LERNER:**  I don't know if the Plaintiffs have

13   others.

14          **THE COURT:**  Tell me what relates to anything,

15   anything that you've got that are ongoing discovery issues that

16   you think might wind up as future motions.

17          **MR. LERNER:**  Yes, Your Honor.  So I think the other

18   one from our perspective relates to the inventorship claim and

19   we think we need greater specificity there which is required

20   under the law.  I think Your Honor is well aware from delving

21   into this case, there's overlap between some of the

22   inventorship and trade secret claim.  So it's certainly

23   possible that this ruling could have some impact on that

24   dispute.

25          And then the final piece, which I think sequentially,

Exhibit 95
-717-

1   again, falls after a ruling here, is we feel that a lot of the

2   information that is being discussed is some public patent or

3   from articles.  And it is impeding our ability to interact with

4   the client, get input and work with people who have huge swaths

5   of public information taken directly from patents that isn't

6   been shown openly in court and it's being demanded that we not

7   discuss it with our clients and so I think that's another

8   dispute that's bubbling up.

9            And the last thing I'll say here -- and I'll beg Your

10  Honor's forgiveness on my ignorance but I realize things have

11  been changing a bit, to put it mildly, with the pandemic and

12  certainly we understood from our last hearing that the impact

13  on Your Honor and Judge Selna and if there are opportunities to

14  have informal discussions with Your Honor to get guidance and

15  Your Honor has any processes set up around that -- as I say, I

16  haven't seen those formally.  I've seen them for some other

17  judges but if there are ways that you would like us to handle

18  things to get guidance before papers, we're very open to that.

19           And those are the disputes I can think of right now

20  off the top of my head to give you a forecast.  If I think of

21  any others, I'll jump in but that's what I can think of right

22  now.

23           **THE COURT:**  Okay.  I just want to make sure.  You're

24  not limiting it to things that relate to this motion.  Any

25  discovery issues that are bubbling up right now that you think

Exhibit 95
-718-

1   ultimately might need Court resolution, is there anything else?

2       **MR. LERNER:**  Those are the issues I could think of,

3   Your Honor.

4       **THE COURT:**  All right.  I'll ask Mr. Jensen -- we're

5   not done from Apple's standpoint but, Mr. Jensen, just on the

6   issue of discovery issues, is there anything from the

7   Plaintiffs' side that looks like it's a potential motion or

8   need of Court assistance on the discovery front?

9       **MR. JENSEN:**  It's, I think, a maybe, Your Honor.  One

10  that has -- looking like it has come to a head is an issue on

11  the ESI order that I think may need to be teed up to Your Honor

12  with respect to some requests by Apple that there be further

13  limits beyond what the parties agreed to in the ESI order and I

14  think that will probably come to somebody.  And that's the one

15  I can think of.

16          We have some other motions to compel, I think, that

17  are being teed up on the ownership documents.  As you know from

18  the briefing on this issue, our -- much of our ability to

19  obtain discovery is currently stayed whereas we are responding

20  to trade secret discovery on the other side and I think those

21  motions to compel from opposing counsel were about those.  But

22  we do have some motions that may be necessary on -- or at least

23  a motion on our ownership claim and our -- and the discovery on

24  that.  They're the ones I can think of at the moment.

25          **THE COURT:**  All right.  Let me ask -- and I'll turn

Exhibit 95
-719-

12

1    back.  Again, it's Mr. Lerner who's been speaking on behalf of

2    Apple; is that right?

3             **MR. LERNER:**  Yes, Your Honor.

4             **THE COURT:**  Mr. Lerner, have you and Mr. Jensen or

5    anyone from the Plaintiffs' standpoint -- side talked about the

6    appointment of a discovery special master?

7             **MR. LERNER:**  We have not, Your Honor.

8             **THE COURT:**  What do you think?  You want to have an

9    informal resolution, a way to streamline things.  You can

10    recommend various different procedures for a discovery master

11    to provide an opportunity for informal resolution and,

12    obviously, it would be subject to review by Judge Selna, any

13    orders by the special master.  What do you think about that?

14             **MR. LERNER:**  So my concern just based on experience

15    is that that option actually generates greater inefficiency

16    than efficiency because I feel, to be candid, that your words

17    and guidance carry a lot of weight and they -- sometimes in my

18    experience, that's not always the case with special masters and

19    so you get a lot of appeals.  Certainly that's not always the

20    case and it can be done.

21         And, obviously, as I said before, we are open to and

22    interested in your guidance and so we certainly will discuss

23    with opposing counsel what you ask us to but my initial

24    reaction is that in terms of efficiency and consistency across

25    the case, we'd prefer to work with Your Honor.

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 95
-720-

13

 1          **THE COURT:**  Well, I appreciate that.  I'm going to

 2   leave past history behind about whether my orders carry a great

 3   deal of weight with some or all the parties.  But I'm not sure

 4   I agree with you with respect to consistency's sake.  If you a

 5   special master and certainly one that the parties would be

 6   invited to try to agree on, you could get one who has technical

 7   proficiency in the field who also has legal training and can

 8   act as an appropriate discovery special master.

 9          And I'm not sure I agree with the issue of

10   efficiencies.  Is there anything you want to add on that score?

11          **MR. LERNER:**  Only, again, just -- and I certainly

12   don't speak for all counsel but my experience is that the

13   number of motions that end up going to either Your Honor or

14   Judge Selna as a result of the appointment of a special master

15   sometimes actually is even greater than the numbers that would

16   come from the parties if we were just working with Your Honor

17   on discovery in a normal course.

18          **THE COURT:**  Well, but as I said, you can set up a

19   procedure with the special master to do exactly what you asked

20   from me which is to have an informal -- for lack of a better

21   term -- spitball session and get some tentative thoughts of the

22   special master and you can act accordingly.  His orders are

23   reviewable in the same way mine would be.

24          So -- but let me turn to Mr. Jensen.  Has your -- on

25   behalf of Plaintiffs, have your clients thought of -- do you

Exhibit 95
-721-

14

1   have a position regarding a potential discovery special master

2   in this case?

3         **MR. JENSEN:**  Thank you, Your Honor.  We have not

4   approached that issue at this point.  I think that from our

5   perspective, if we could get the trade secret discovery open

6   and moving, I would probably have a better sense of whether or

7   not there are going to be numerous motions to compel required

8   on my side.  That's -- I don't think I know the answer to that

9   yet and -- so I have not opened that issue.  We, of course, are

10  happy to talk to them about it and consider that as a

11  recommendation from the Court.  But I don't know that I have a

12  sense that that is necessary yet.

13        **THE COURT:**  All right.  Well, I don't have the

14  authority to appoint a special master.  Judge Selna does and

15  sometimes it's better if the parties have a chance to talk

16  about it and see whether it's something they can agree to

17  rather than the Court making some findings.

18        Here's what I will do.  I am going to direct counsel

19  for both parties to meet and confer to discuss this issue

20  within the next five days and at that time exchange at least

21  three potential discovery special masters who would be

22  agreeable to the parties without -- that particular party

23  without that being a concession that the party thinks that a

24  discovery special master is warranted or not but merely in the

25  event Judge Selna determines one is that he might have the

Exhibit 95
-722-

15

```
 1   parties' thoughts and direct them to exchange three special
 2   masters each that would be agreeable to that party before that
 3   conference and then to talk about it and to talk about all the
 4   issues in Rule 53 of Federal Rule of Civil Procedure regarding
 5   the potential appointment.
 6            And then file a report.  I'll -- it can be a joint
 7   report but if it's not done jointly, I'm just going to ask
 8   counsel for Plaintiffs to file a joint report after that
 9   conference has taken place merely setting forth when the
10   conference took place and what the parties' respective
11   positions were with respect to a special master and if the -- I
12   think we'll just leave it at that -- actually and identifying
13   who each party recommended as a special master if one were
14   ordered by Judge Selna.
15            All right.  So I'm going to direct counsel for both
16   sides to have that meeting and before that meeting to exchange
17   three potential special masters, recognizing that that is not
18   an assent or an agreement to a special master.  It's merely in
19   the event one was appointed identifying persons who would be
20   agreeable to that party in that event.
21            All right.  That was a side route.  Let me turn back
22   to Mr. Lerner regarding his response to my question which was,
23   is there anything new that's happened since the filing of the
24   supplemental memoranda other than what I noted?
25            **MR. LERNER:**  I think that Mr. Jensen hit what the one
```

Exhibit 95
-723-

16

1   other issue that I had not mentioned and it sounds like he

2   feels that's coming along but in short, that's a custodian's

3   issue under the ESI order.  We think consistent with every case

4   we've seen that it's efficient and makes sense for the parties

5   to agree on a number and I don't think the other side does.

6   And so we've got a little bit of a dispute there and I think

7   that's the other one I can think of.  So nothing else from me,

8   Your Honor.

9          THE COURT:  All right.  Mr. Jensen, is there anything

10  from Plaintiffs' side that's come up since the filing of the

11  supplemental memoranda two weeks ago other than the stipulation

12  regarding the filing -- timing of the filing of answers and/or

13  a Fourth Amended Complaint that bears on this motion.

14         MR. LERNER:  I think we addressed it all in our

15  supplement, Your Honor, in terms of --

16         THE COURT:  All right.

17         MR. LERNER:  -- how the motion to dismiss order, we

18  believe, as to what we might do here.  So I think there's

19  nothing subsequent to that that I can think of.

20         THE COURT:  All right.  Then what I'll do is I'll

21  give you a -- I didn't -- as I noted, I didn't do a written

22  tentative.  I'll give you an oral tentative and then we'll hear

23  from the parties with respect to that.

24         My oral tentative and my tentative is to deny the

25  motion in its entirety.  I'll start out by noting that to the

Exhibit 95
-724-

1   extent the motion relates to any disclosures that are tied to

2   portions of the trade secrets identified in the Third Amended

3   Complaint that have been dismissed by Judge Selna in his order

4   two weeks ago, those arguments in this motion are now moot

5   because those claims are not in the case and to the extent

6   there are disclosures relating to them, they're essentially

7   superfluous.  But -- so there's no need to rule further on

8   those.  They have been removed by operation of law.

9         With respect to the remaining disclosures, I find

10   that the disclosures meet the requirements of Section 2019.210

11   and the cases interpreting it that the trade secrets have been

12   identified with reasonable particularity.  I note that despite

13   what Plaintiffs argue in their supplemental memoranda, I am

14   reviewing this on a different standard than the standard for a

15   motion to dismiss and I have read and considered Plaintiffs'

16   arguments about how Defendant argued the motion to dismiss.

17         But I am reviewing this on the 2019.210 standard, not

18   on a 12(b)(6) standard but even with that different higher

19   standard, I find the disclosures are adequate.

20         I do agree with Plaintiffs that a number of the

21   substantive arguments or substantive rulings that Judge Selna

22   made in the motion to dismiss in regards to the adequacy of the

23   pleading of the trade secrets in the Third Amended Complaint do

24   apply here.  Again, bearing in mind it's a different ultimate

25   standard but the reasoning behind his rulings on those

Exhibit 95
-725-

18

1    different issues apply here and I follow each of those and on

2    top of them find that the disclosures under a 2019.210 standard

3    do -- reasonably do describe the trade secrets with reasonable

4    particularity sufficient for the purposes of 2019.210.

5         All right.  Mr. Lerner, it's Apple's motion.  I'll

6    start with you.

7         **MR. LERNER:**  Thank you, Your Honor.  I want to start

8    with why we brought this motion and why it remains important to

9    us, just to provide context.  We do think this document, as the

10   cases hold, serves an essential purpose as the roadmap for the

11   secrets which the parties and the Court can then look back to

12   in terms of understanding the scope of discovery.

13        And right now, the document does not and cannot serve

14   that function.  And I would urge the Court to look at the

15   *Freeman versus Frank Russell* case which is 2016 Westlaw 5719819

16   and what tends to ensue when a disclosure like this one is

17   allowed to proceed without refinement.

18        And I think there's a line of questioning that

19   happened in that case that's particularly important here and

20   the disclosure there included an alleged secret about

21   emphasizing volatility.  And the Court pointed out that using

22   terminology like that just isn't ultimately helpful.  It's the

23   same as if you got a recipe for chocolate cake and you say,

24   emphasizing chocolate.  And we have over and over here language

25   that is very similar to that emphasizing term and it doesn't

Exhibit 95
-726-

19

1    ultimately provide any guidance to the parties.

2           Now, I want to get into kind of why that's the case

3    and Your Honor talked about the test here, the test we believe

4    can and should be in this case that the Plaintiffs should

5    explain how the alleged trade secrets differ from the general

6    knowledge of those people that are skilled in the field.  And

7    the Plaintiffs straight out say that they do not need to do

8    that.  They claim that they do not need to do that here.

9           We think that Advanced Modular which was, obviously,

10   explained in some detail and *Perlan* maps perfectly onto this

11   case and it required that differentiation where you have either

12   incremental variations on or advances in the state of the art.

13   And while the Plaintiff in their brief, surprisingly to us,

14   said that they don't claim that their secrets are advances in

15   the state of the art, if you look at Docket 111-2, which is a

16   declaration from their CEO, or Docket 111-3, which is a

17   declaration from another one of their employees, they take

18   exactly the opposite position.

19          They say that they have worked for decades to have

20   incremental improvement over the state of the art and it's not

21   just their declarations, Your Honor.  The other problems we

22   have here that highlight the need for that differentiation is

23   obviously there's a kind of patent and product (indisc.) here.

24          We've obviously got patents in play and we, Apple,

25   have alleged that -- in the past that their patents disclosed

Exhibit 95
-727-

1   the alleged secrets but what we get in return is no, no, you've

2   got it wrong.  You need to look over here.  It's this one

3   portion of the patent that discloses it.  And we're -- that

4   goes, I think, to a really important lesson from *Perlan* which

5   is, this isn't a case where the Plaintiff can't provide us with

6   -- or the Court with detail.  They absolutely could.  They're

7   just saying they don't have to.

8          And so they've got -- as was the quote from *Perlan*,

9   which is 178 Cal.App 4th at 1345.  They got the ability but not

10  the inclination to provide that additional information.  In

11  their papers, I think it comes out when they say that the trade

12  secrets are improvements on various articles or products but

13  we're left to guess what articles, what products, what's the

14  differentiation.

15         And, finally, I think another kind of clear legal

16  matter here on the importance of the differentiation is they

17  submitted an expert declaration which all of a sudden suggests

18  that some of their trade secrets are combinations or

19  compilations.  If that's true, then the law is clear that they

20  need to --

21         **THE COURT:**  Can I interrupt you --

22         **MR. LERNER:**  -- claim the --

23         **THE COURT:**  -- can I interrupt you for a moment?

24         **MR. LERNER:**  Yes, Your Honor.

25         **THE COURT:**  You used the "all."  You said that the --

Exhibit 95
-728-

```
 1   and I assume you're talking about Dr. -- and forgive me.  It
 2   begins with the letter "M" -- that that declaration -- that he
 3   testified that all of their trade secrets are combinations?
 4          MR. LERNER:  No, Your Honor.  He did not -- I -- it's
 5   unclear, to be honest, whether or not he believes that all of
 6   them are.  And if I said, "all," I misspoke but he absolutely
 7   suggests that at least some of the secrets are combinations.
 8   He analogizes the secrets to the ingredients in a soda and --
 9          THE COURT:  And I'll -- I saw that analogy or I heard
10   from Mr. Jensen.  I took that as his way of answering an
11   argument or an assessment by your expert about -- I don't
12   remember the exact issue that it was relating to but I didn't
13   necessarily take that soda analogy to mean Mr. Polson
14   (phonetic), your expert, that he was responding to something
15   that he had written in his declaration.  I didn't take the soda
16   analogy to be a claim that all or even a substantial portion of
17   those items were combinations but maybe you can correct me if
18   I'm wrong.
19          MR. LERNER:  I'm sorry, Your Honor.  Are you asking
20   me or Mr. Jensen?
21          THE COURT:  I'm asking you.  I mean, are you saying
22   that -- what's his name?  I could flip through some of the
23   documentation but that Plaintiffs' expert was saying that all
24   or a substantial portion of the trade secrets were combinations
25   or for lack of a better term, recipes?  Is that what he opined
```

Exhibit 95
-729-

1  or --

2        **MR. LERNER:**  I think Your Honor in some ways has hit

3  the nail on the head which is if you look, for example, at

4  Paragraphs 32 and 33 and 34 of his declaration -- really 32 and

5  34 --

6        **THE COURT:**  I'm going to stop you right now.  I'm

7  going to stop you to be --

8        **MR. LERNER:**  Yes.

9        **THE COURT:**  -- cautious about -- if you're going to

10  read anything -- if you're planning to read something, stop and

11  let me know.

12        **MR. LERNER:**  Understood, Your Honor.  And my point

13  about those paragraphs is he is certainly making the argument

14  that our --

15        **THE COURT:**  Let me -- hold on, hold on, hold on.

16  Tell me specifically what you're looking at.  It's Matasetti

17  (phonetic) --

18        **MR. LERNER:**  I'm looking at Paragraph 32 -- Matasetti

19  Declaration, Paragraphs 32 and 34.

20        **THE COURT:**  So --

21        **MR. LERNER:**  So if you look at --

22        **THE COURT:**  -- I don't see -- I think that's exactly

23  what I was talking about actually, that their Dr. Matasetti is

24  directly responding to something that Dr. Polson said.  I --

25  and I assume that there's nothing confidential about talking in

Exhibit 95
-730-

23

1    terms of soda as an analogy.  Someone can chime in if that's

2    incorrect.  All right, hearing no objection that talking about

3    a trade secret for carbonated beverages, he's responding to the

4    approach adopted by Dr. Polson.

5          So I don't see that as him opining that all or

6    substantially all of Plaintiffs' trade secret disclosures are

7    -- again, for lack of a better term -- a recipe.

8          **MR. LERNER:**  And I think what we need to look at is

9    he's establishing the principle which is really a legal

10   principle in Paragraph 32.  What he's saying is the Polson

11   declaration and the point of that declaration was to show that

12   given the breadth of these descriptions, one can't tell whether

13   or not they can be distinguished from publicly available

14   information.

15         And what Dr. Matasetti is saying -- or I shouldn't

16   say doctor.  What Matasetti is saying in response in Paragraph

17   32 is, well, a combination of publicly known information can be

18   a secret and then he confirms that in Paragraph 34 where he

19   says the Polson declaration, which it specifically focused on

20   public information, fails to show that the combination of

21   Plaintiffs' multiple documents -- those multiple documents

22   being public information, patents -- along with documents from

23   other sources -- again, public information like articles --

24   makes the identified trade secret generally known.

25         As a matter of logic, Matasetti cannot be opining on

Exhibit 95
-731-

24

1    anything other than that.  The information in these public

2    documents is public but there's a combination that's not.

3    Otherwise, the section doesn't make any sense and serves no

4    purpose.

5            **THE COURT:**  Well, he doesn't say all of it is public

6    in Paragraph 34.  And, again, I view this as a response to --

7    and let's say both experts did this.  They're not really just

8    opining on technology.  They're attempting to apply it with --

9    in some instances more than others in the context of a 2019

10   standard which neither of them -- there's a foundation for them

11   to be able to do that.

12           So I'll tell you I read each of the declarations with

13   that in mind, that to the extent they purport to opine on the

14   issue of reasonable particularity under 2019.210, of course,

15   the party can make an opinion as to that if they have a

16   foundation to but neither of these -- and you paused for a

17   moment, Mr. Lerner, about calling Dr. Matasetti a doctor.

18           For purposes of this hearing, I'm referring to both

19   him and Dr. Polson as doctors regardless of the standard of

20   usage in the academic world -- that the -- to the extent

21   they're opining on things beyond the foundation of their

22   expertise, I'm not going to consider those conclusions but I am

23   going to consider what is within their expertise and I will

24   tell you that I find that Dr. Matasetti's declaration provides

25   support for Plaintiffs' interpretation and view of the

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 95
-732-

1    disclosures as amended on November -- is it November 9th or

2    November 6th?  All right.

3              **MR. LERNER:**  Understood, Your Honor.  I just want to

4    make sure.  I think there's one very important clarifying fact.

5    And Matasetti, as you said, is addressing the Polson

6    declaration.  The point of the Polson declaration was public

7    disclosure.  So when he is saying that Polson fails to show the

8    combination of documents, there's nothing other than public

9    documents.  Polson didn't talk about anything other than the

10   public documents.  That's the point here.

11             And so I think that is a very important fact to

12   clarify.  It absolutely is a combination of public facts.

13   Polson wasn't talking about anything else and what Matasetti is

14   saying is, yes, but the combination can be secret.  And the law

15   is clear under those circumstances that when you're doing that,

16   you need to explain how the combination of these public

17   elements is secret.  So I just wanted to clarify that.  I don't

18   think 34 could possibly relate to anything other than public

19   information.  I don't think that's what Matasetti meant or

20   Polson meant and I don't think there's a way to reach a

21   contrary conclusion there.

22             **THE COURT:**  Well, there is.  One of the bases was it

23   was in Judge Selna's order that to the extent Dr. Polson was

24   relying on (quote/unquote) "public information" in patent

25   applications -- and you-all can correct me on the order of the

26

1    different patents.  But a patent application that had been

2    submitted but not publicly approved until after Mr. Lamego had

3    left Apple -- left Masimo, it had been submitted to the Patent

4    and Trademark Office but had not actually been filed until

5    after.  I think that was the 305 patent that even though it's

6    publicly available in 2018, to the extent Dr. Polson relief on

7    that, it's not -- it doesn't limit, at least facially,

8    Plaintiffs' ability to claim information therein as a trade

9    secret that existed as of the time that Mr. -- Dr. Lamego left

10   Masimo.

11          But please continue.

12          **MR. LERNER:**  I'm very glad you brought that up.  I

13   think that's a very important point and it's why, with

14   humility, I would ask you to reconsider the tentative.  I think

15   it's a very important example.

16          When Judge Selna reached that conclusion, he, as Your

17   Honor already noted, was not opining at all on whether or not

18   the description of the alleged secrets were sufficient under

19   2019.210.  To the contrary, what he was talking about was that

20   later patent filing doesn't bear on whether or not information

21   was or was not secret at the time of this appropriation.  If it

22   was a later publication, it doesn't bear on the question of

23   whether or not the information was public at the time of the

24   alleged disclosure.

25          Now, why is it so important to differentiate that

Exhibit 95
-734-

27

1    from what we're doing here?  It's so important to differentiate

2    that from what we're doing here.  And the reason Dr. Polson --

3    it's completely irrelevant that Dr. Polson's analysis is if as

4    it seems the plaintiffs are essentially conceding that they

5    disclosed the secrets in a subsequent patent filing of their

6    own, all of us, I certainly hope, would agree that that is

7    relevant to, among other things, damages.  It's also going to

8    be relevant to reasonable efforts but that's the reason why we

9    have a 2019.210 statement that is not limited to just what's in

10   the pleadings.  And unfortunately, all we have here,

11   notwithstanding the ability to have greater clarity, it's just

12   a cut and paste from the pleadings.

13         And Your Honor just highlighted I think a great

14   example of how the arguments have been made here that might

15   have worked in a different setting but they are flat out wrong

16   in this setting.

17         **THE COURT:**  Let me ask you this.

18         You said that Judge Selna in addressing this issue,

19   the timing of disclosure and patents -- and you've really got

20   to get into the weeds here because of the number of -- I guess

21   we've got three primary ones but there's others -- but the

22   timing of them, you really got to get into the weeds and factor

23   in the departure of Mr. -- or Dr. Lamego.  But Judge Selna

24   wrote this.  You said that he specifically said he was not

25   opining on 2019.210 issues.  Here's what he wrote, (quote) --

Exhibit 95
-735-

28

1   and this is at page 7 of his order.  I don't think that this

2   portion is under seal; it's a general statement without

3   reference to any specific information:

4           "Moreover, to the extent a defendant believes that an

5           alleged trade secret is already disclosed by patents

6           citation, the appropriate time to raise such an

7           argument is during summary judgment."

8           So I'm not going to make a ruling, generally or

9   specifically, whether these disclosures constitute a trade

10  secret.  The issue of the timing that I raised was in

11  connection with what Dr. Matasetti said in response to Dr.

12  Polson.  And Judge Selna determined issues relating to that.

13  But the main point here is Judge Selna didn't say that this is

14  going to be a different outcome on a 2019.210 motion.  He

15  basically directed the parties, if they're going to challenge

16  the sufficiency of the trade secrets, to do so -- and I mean

17  substantively, to do so by way of a summary judgment motion.

18          Now, having said that, it's not a fine line.

19  Sometimes what makes a disclosure insufficient and not

20  reasonably particular is that the words that are used aren't a

21  trade secret.  And there's no way to -- because they're so

22  general, saying someone's public advertising is a trade secret.

23  Well that's going to have a problem under 2019.210 because it's

24  so general but it's also going to have a substantive problem

25  about how public advertising could ever be a trade secret.  So

Exhibit 95
-736-

29

1    there is overlap between the issues.  But I want to be clear.

2    What I was talking about in terms of the timing of the patents;

3    and in particular, the disclosure in the 305 patent, is that

4    Dr. Mistretti's -- I'm sorry -- Matasetti, his declaration was

5    responding to Dr. Polson's.

6         But please continue, Mr. Lerner.

7         **MR. LERNER:**  Right.  And I think the key point here

8    is that in the setting that you just mentioned with respect to

9    Judge Selna and ruling on whether or not information was public

10   at the time of the alleged disclosure, the publication of the

11   305, Judge Selna said, doesn't go to that point because it

12   postdated the alleged disclosure.

13        Now, what's so important here is if you assume --

14   which I absolutely think we should -- that we are under the

15   test that the plaintiffs need to differentiate the alleged

16   secrets from the state of the art, it is not proper for the

17   plaintiff to, for example, say, We don't need to differentiate

18   it from the 305 because that came later.  And we're not asking

19   you to rule as a matter of substance on whether or not the

20   305 does or doesn't; we're asking for the correct inquiry under

21   2019.210 which is just they should describe if their own patent

22   is different from the alleged secret, how.  And if it's not,

23   they should just say it's not.  But what we have instead is, We

24   don't have to tell you because it comes later.  And the timing

25   of the state of the art under 2019.210, I'm not aware of any

Exhibit 95
-737-

30

1   case that says the plaintiff gets to cut it off after the

2   alleged date of misappropriation because that would mean the

3   plaintiff can cutoff, as I mentioned earlier, really important

4   inquiries into damages and reasonable efforts and all these

5   other critical issues.  So it is not a ruling that we believe

6   bears on this.  And to the contrary, I think it highlights the

7   importance of the lack of differentiation of the state of the

8   art.

9           I think, obviously, kind of being cognizant of Your

10  Honor's time, I'll move away from the failure to differentiate

11  and then just focus on the failure to describe the secrets that

12  are allegedly misappropriated here.  And this is another area

13  where I don't think there's any dispute that the plaintiffs say

14  they just don't have to do it.

15          So on page 6 of their brief, their portion of the

16  brief -- it's the joint stip at page 6, lines 22 through 25 --

17  they are suggesting that they need not identify the

18  misappropriation -- misappropriated secrets by page and line

19  number of a patent or the specific features of the watch.  And

20  2019.210 on its face says, The party alleging misappropriation

21  shall identify the trade secret with reasonable particularity."

22  That is not what we have here.

23          And there are two problems I want to highlight for

24  Your Honor that, again, I think we would urge you to consider

25  before confirming the tentative.

Exhibit 95
-738-

31

```
 1              The first, as we set out in our brief in pages 13 and
 2    14 is, is these kinds of constantly shifting sands -- and it
 3    feels a bit like whac-a-mole from our perspective.  But what
 4    the plaintiffs do, in a number of the technical trade secrets,
 5    is they basically cut and paste from the Apple patents that
 6    allegedly disclose their secrets.  But then they don't quote
 7    exactly.  They take out the words that would not pass muster
 8    with Your Honor.  So they cut and paste from the Apple patent
 9    but what they do is they delete the word "comprises" and they
10    replace it with "involves".  Now, why do they do that?  They do
11    that cause -- and if Your Honor is already familiar with this
12    stop me.  But the manual in Patent Examining Procedure and lots
13    of cases cited therein establish that the word "comprising" is
14    synonymous with "including".  And including is exactly what
15    Judge Selna told the plaintiffs to stop doing.  It's a catchall
16    phrase that's not acceptable as a matter of well-established
17    law.  And just deleting the word "comprises" and replacing it
18    with "involves" doesn't pass muster here.
19              Likewise, the claims that they copied, they delete
20    the word "method," the method claims and replace it with
21    "technique" so that they can argue, again, that this is
22    information that's a technique.  And they don't have to address
23    the case law including, there's a quote from M-ACOM (phonetic)
24    that says that phrases like "method for development" are not
25    helpful.  So we've got this situation where what's the secret?
```

Exhibit 95
-739-

32

 1   Is it the patents where we allegedly disclosed the secrets?  Is

 2   it the description that they've now edited in the disclosure?

 3   It's not and by the way, or is it the other documents they now

 4   reference, the third amended complaint?  They say, Well to the

 5   extent you're complaining about the references to the patents

 6   or the products, go look at the third amended complaint.  And

 7   there again the case law is really clear that neither we nor

 8   the court should be put in the position of parsing through

 9   other documents to try and find explanations of what the

10   secrets are.  The disclosure should provide the roadmap and the

11   description so that everybody knows where to go look and

12   whether or not things are unfairly changing.

13          And as Your Honor actually mentioned earlier, I would

14   again urge you to look at *Freeman*.  If we don't fix this, I

15   think you end up at summary judgment with precisely the problem

16   that happened at summary judgment in *Freeman* which is you have

17   broad, vague descriptions and a ton of extra work and fighting

18   over it and then summary judgment because this stuff wasn't

19   defined early on in a careful way.

20          And the final thing I'll add is there was a lot of

21   dispute about our proposed order which I think it's telling.

22   The proposed order we took is one from a published case; it's

23   been cited a bunch of times, including by Your Honor, and I

24   think it serves an incredibly valuable purpose which is it gets

25   the information out there on the elements of the secrets with a

EXCEPTIONAL REPORTING SERVICES, INC

Exhibit 95
-740-

1   bare description and cuts down on all the downriver disputes.

2   And I think it's telling again that there's not an argument

3   that it's impossible to do this, we can't do it.  To the

4   contrary, there's a bunch of declarations that I'd direct Your

5   Honor back to the two that I mentioned where the plaintiffs

6   openly say, We patent a bunch of information but we keep other

7   information secret.  It shouldn't be burdensome for them to

8   tell us what they need in those declarations.  What's the stuff

9   you patented and what's the stuff that's secret and what's the

10  difference?  And the fact that they arguably can withhold it is

11  contrary to the spirit of 2019.210.  The exercise here is not

12  what can you withhold under the most kind of aggressive reading

13  of not providing a description.  You should provide the fairest

14  description you can so that both the parties and the courts

15  have that.  And I don't think there's any argument that that's

16  what we're getting here.

17          So there obviously was a lot of other issues that

18  came up in the brief.  I'm happy to address other things but

19  being aware of your earlier quote and the Court's time, those

20  were the pieces that I wanted to focus on.

21          **THE COURT:**  All right.  Thank you.

22          Let me hear from you, Mr. Jensen, with respect to

23  what you just heard or anything else you think is important to

24  discuss.

25          **MR. JENSEN:**  Okay, thank you, Your Honor.  I'll just

34

1   kind of go in the order of things that were raised.

2          *Freeman* was brought up a number (glitch in audio)

3   that is a summary judgment case.  I think it's difficult to

4   address how that case is not in any way instructive here

5   without talking about the specific language in our 2019 because

6   Apple is pulling a particular few words out and that is

7   followed by substantial modification about what happens.  I

8   don't want to quote that, given the nature of that -- the

9   sensitive nature of what's in that but I don't believe that as

10  a result of what we have described there, *Freeman* has any

11  (glitch in audio) application on the issue of whether we have

12  described our secrets sufficiently under 2019.210.

13         The next issue was raised was a reference to we must

14  describe how this distinguishes from the prior art.  I actually

15  think this was pretty well briefed by the parties but there was

16  a state in Apple's supplement that took me off guard a little

17  bit that said -- that actually said that Plaintiffs must

18  describe how they believe the combination distinguishes the

19  alleged trade secrets from the prior art.  That's at their

20  supplement at page 3.  And they then --

21         **THE COURT:**  Their heading at page 2 in big bold

22  letters.

23         **MR. JENSEN:**  Yes.  How the trade secrets, they must

24  describe.  And that's then attributed to *Brussia* (phonetic).

25  That surprised me a bit because *Brussia* actually held the

Exhibit 95
-742-

35

1    opposite.  The lower court had required this explanation but

2    the appellate court overturned that (glitch in audio).  The

3    appellate court found that the question (glitch in audio) and

4    the trade secret is described with sufficient particularity to

5    permit the defendant (glitch in audio) discern the boundaries

6    of the trade secret.

7           And then it went on and said (glitch in audio) the

8    trade secret claimant need not particularize how the alleged

9    trade secret differs from the matter already known to skilled

10   persons in the field.  And we discussed this at page 60 of the

11   joint stip.  I was just surprised by that statement in the

12   brief and then it was brought up in terms of *Perlan*.  In

13   *Perlan*, the opposite happened.  Right?  In *Perlan*, what the

14   appellate court found was it was not an abuse of discretion for

15   the lower court to have required it -- right? -- although it

16   was in *Brussia*.  And the reason given was because there was

17   hundreds of pages of surplusage and documents and factual

18   allegations that in *Perlan* the court found was hiding the trade

19   secret in plain sight.  Without going and reading our 2019,

20   that is not what we've done and I think it's very clear that's

21   not what we've done.  We have outlined it.  We did not include

22   hundreds of pages of surplusage that would hide it in plain

23   sight.  It's stated very clearly so I don't think the citation

24   to *Perlan* gets the defendants anywhere.  And the *Brussia* and

25   *Perlan* and other cases that are discussed in *Perlan*, I think

Exhibit 95
-743-

36

1   give a very clear example.

2         But I think also important is that in the argument we

3   just heard, Mr. Lerner suggested that our declarations -- and

4   they said this in their brief and it is not correct either --

5   that we admitted that there were incremental advances to what

6   was out there.  And I just did a little word search and I could

7   not find us saying that there were -- that the advances were

8   only incremental or only improvements.  That is not something

9   that I could find or that I believe any of -- that we ever

10  argued or that any of our declarations said.

11        Next on the combination, I think you had it exactly

12  right.  And that is that what Dr. Matasetti was addressing was

13  the combination of pieces of public documentation that were put

14  together by Dr. Polson, not the particular trade secrets.  He

15  was simply saying, that combination, as you combine a bunch of

16  things together from different pieces of public (glitch in

17  audio), that does not result in the trade secrets necessarily

18  being generally known to the public, right?  And he makes that

19  point a little further.  He referenced -- they referenced a

20  couple of paragraphs I think you understood because his point

21  there perfectly, he comes back in paragraph 52 and says the

22  Polson declaration fails to explain where any of the references

23  disclosed -- I'm going to leave out the quote because that

24  piece of the quote is something under seal -- but that wasn't a

25  combination trade secret, so to speak.  I think the 2019 makes

Exhibit 95
-744-

37

1    very clear when we list multiple components to the trade secret

2    and we tried to make that very clear by numbering things and

3    doing things to make it clear where it's more akin to a patent

4    claim.

5            I think that on the misappropriation issue, they have

6    not cited a single case that says that in a 2019.210 that we

7    are supposed to provide our infringement or our

8    misappropriation contentions.  They cited to a case that was a

9    patent case about that being minimum.  I couldn't find

10   anything.  I think it was a *Sandice* (phonetic) case.  I

11   couldn't find anything in that case regarding (glitch in

12   audio).

13           The -- I think those were the notes I had, Your

14   Honor.  There's all sorts of additional points I could raise

15   with respect to the supplement but it sounds to me like that

16   you're understanding the arguments that we have presented and I

17   think that deals with the issues I heard today.

18           I would point the Court to White v. Slage (phonetic),

19   which is a case that's often cited for and has been cited in

20   the briefs for descriptions that are found to be sufficient and

21   those are simply things like, you know Slage market research

22   data, advertising strategy plans for calendar year 2000.  Our

23   2019.210 -- and those were found to be okay.  And those -- our

24   description is much more detailed.  We have attempted to be

25   very concise, presented in a way that's understandable.  I

Exhibit 95
-745-

38

1    think that Judge Selna with respect to some has clearly stated

2    they're understandable even to not just the experts.  And so I

3    think we've done what's required of us.

4            And I heard about there being a cut and paste from

5    the pleadings, therefore we should do more.  Well it's really

6    the opposite.  Because Judge Selna allowed us to file the third

7    amended complaint and the second one under seal, it's the

8    reverse.  We created the 2019 and put that into the complaint,

9    most of it.  There are some things about how that we did not

10   put in the complaint in order to make sure we were complying at

11   that level and not have an argument.  And so it's the reverse

12   that's true.

13           I don't have anything other, Your Honor, unless you

14   have some questions on some of those things.

15           **THE COURT:**  No.  Mr. Lerner, I'll give you the last

16   word.

17           **MR. LERNER:**  Thank you, Your Honor.  Three quick

18   points.

19           First, the reason we say they must differentiate the

20   secrets from what's publicly known is because that's what the

21   three key cases say and *Brussia* is not at all to the contrary.

22   What it's establishing is, you don't have to do it in every

23   case and we have never claimed you have to do it in every case.

24           But in a case like this one -- and I note that

25   Plaintiffs focus on the incremental variations and leave out

Exhibit 95
-746-

39

1    advances in the state of the art -- In a case like this one,

2    whether or not you're looking at advanced modular *Perlan* or

3    *Brussia*, I'm not aware of any case that has held that where you

4    are talking about either of those variations on or advances in

5    the state of the art -- which Plaintiffs absolutely claim here,

6    and in their own briefings they say that what they did was

7    essentially better than and different from unidentified

8    articles and products -- yes, they must provide that

9    differentiation here.  I think the case law is very clear on

10   that point.  They're not saying they can't do it; they're not

11   saying it would be burdensome; they're not saying it's

12   impossible, they're just not doing it.

13            On the combination point, again, I want to revisit

14   this because I think it is really important.

15            What you just heard there is the wrong test and it's

16   not what Polson was doing.  Polson is not trying to reach the

17   ultimate issue of whether or not at this stage the alleged

18   secrets are generally known.  To the contrary, what he's saying

19   is, if you have these incredibly broad descriptions -- which

20   vaguely refer to calculating and terms like that -- you can't

21   differentiate that from what's generally known.  It's the

22   differentiation which is the focus of 2019.210 which is his --

23   the whole point of his declaration.  Matasetti doesn't address

24   that.  He just says what he doesn't address the ultimate issue

25   which is whether it's generally known.  That's not the exercise

Exhibit 95
-747-

40

1   right now.  And all Matasetti says on the correct inquiry here

2   is essentially a repeated kind of blurb for everyone which says

3   that somebody skilled in the art could figure this out and

4   that's not sufficient.

5          And the final thing I want to close with -- and I

6   think this is the most important -- certainly to me, and I feel

7   like it goes to the fundamental issue here and really the

8   fairness which is, you heard at the end that there is no case

9   that holds that they need to identify the specific secrets that

10  were misappropriated.  That's what the statute says.  I don't

11  think there's a case saying it because I don't think anybody

12  that I'm aware of has had the (indisc.) the claim to the

13  contrary and I've certainly never seen a case to the contrary.

14  And it is alarming to me that one can allege in a case that

15  there's two means of misappropriation, disclosure in patents

16  and some type of use or incorporation in products.  But then

17  when it comes time to the 2019.210 disclosure you're saying,

18  no, Your Honor, I don't have to provide page and line number of

19  the patent and I don't have to identify what exactly I'm

20  talking about in the products, rather I'm going to give these

21  incredibly broad descriptions cut and pasted from patents, by

22  the way, taking out the words that would lead the court to find

23  it insufficient for a 2019.210 statement.  That is just wrong.

24  We've been at this for a year.  I don't think there is any

25  excuse for a 2019.210 disclosure that doesn't identify where in

Exhibit 95
-748-

41

1    the patents the trade secrets are disclosure and where in the

2    products the trade secrets are allegedly incorporated, and

3    making it even worse saying, go look over there at the third

4    amended complaint.  If they really have a basis for arguing

5    those are the secrets, that disclosure should contain this

6    information and it shouldn't have this constant handwaving to

7    go look somewhere else.  And with that I'll close.

8            **THE COURT:**  All right.  Thank you, counselor.  The

9    arguments have been very helpful.

10           I am going to rule right now.  And the reason I'm

11   going to do it now rather than drafting a separate written

12   order which could take some time is Mr. Lerner has described a

13   number of, for lack of a better term, "jets that are circling"

14   that it sounds like Apple wants to move forward on.  And

15   Mr. Jensen described trade secret discovery that is circling

16   from Plaintiffs' standpoint and I don't want to delay this

17   issue any further.  I have enough to make a ruling and my

18   tentative ruling will be the ruling of the Court.  The reasons

19   will be what's already been stated and I'll start with Judge

20   Selna's recent Order on the Motion to Dismiss the Third Amended

21   Complaint.  And again, this ruling only applies to the trade

22   secrets that are still at issue in the case following that

23   order.

24           I adopt -- as both well thought out, well argued, and

25   from my standpoint probably binding -- Judge Selna's rulings as

42

1    they relate to a 12(b)(6) standard on a motion to dismiss with

2    respect to the sufficiency of the identification of the trade

3    secrets and the third amended complaint.

4              Understanding that that's not the issue we have here,

5    the issue here under 2019 is reasonable particularity or

6    sufficient particularity.  And that term is vague, as you know

7    -- and we'll get to that more and it's intentionally vague as

8    the cases hold because it's supposed to address various

9    scenario.

10             But adopting Judge Selna's reasoning and applying it

11   to that standard -- for the same reasons Judge Selna found over

12   Plaintiffs' contrary argument the disclosures in the third

13   amended complaint sufficient, those that he did so find -- I

14   find those disclosures are sufficient for 2019.210 purposes.

15   That doesn't end the inquiry because there are some issues

16   beyond what was raised in that motion.  But I, again, adopt and

17   find that the higher burden has been satisfied here with

18   respect to the remaining disclosures.

19             In terms of the support for that and my findings, I

20   do credit the declaration of Dr. Matasetti.  It's not

21   determinative but I do credit it.

22             And considering some of the more specific legal

23   arguments raised by Apple, I will say that I agree that there

24   are some circumstances where the showing of reasonable

25   particularity, which is flexible, is heightened.  And in those

Exhibit 95
-750-

43

1   instances where it is heightened in this case, I find that the

2   disclosures that have been made meet that heightened

3   disclosure.

4          And in so finding I'm looking at things holistically.

5   I'm looking at things from a big picture, as well as a granular

6   level. And the reason I say "looking at things holistically, a

7   number of the cases -- not all of them but a number of the

8   cases that address the sufficiency of trade secret disclosures

9   involve cases where, for instance -- and it was cited during

10  argument -- one party is burying another party in massive

11  disclosures where what the trade secret is is, for lack of a

12  better term, buried in plain sight and those are found to be

13  insufficient.  I find that's not happening here.

14         There are cases where parties are being intentionally

15  vague, intentionally general in their descriptions for purposes

16  of trying to, in essence -- and it's the reason why 2019 was

17  passed in California -- in essence to have nothing in support

18  of a trade secret and to be able to undertake discovery and

19  then gin up a trade secret later.

20         Having reviewed and looking at these disclosures,

21  both granularly and holistically, I find that's not the case

22  here; that these are sufficiently and reasonably identified for

23  purposes of shaping future discovery and the future of the

24  case.  And to the extent there are arguments otherwise, I find

25  the disclosures sufficient.

Exhibit 95
-751-

44

1          With that, unless there's anything further -- taking

2     into account the order to provide to meet and confer and --

3     first of all, to exchange experts, to have a conversation about

4     that and then to file something.  I don't think I put a

5     deadline on the filing but let's say 10 days from today and the

6     meet and confer is to be within five days from today regarding

7     a potential special master.

8          Is there anything further that the parties would like

9     to be done today?

10         And I'll start with our moving counsel, Mr. Lerner?

11         **MR. LERNER:**  No, Your Honor, we appreciate your time.

12         **THE COURT:**  All right.  And Mr. Jensen, on behalf of

13    Plaintiffs?

14         **MR. JENSEN:**  No, thank you, Your Honor, we're good.

15         **THE COURT:**  All right.  Thank you.

16         We are adjourned.

17         **(Proceeding adjourned)**

18

19

20

21

22

23

24

25

Exhibit 95
-752-

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    January 27, 2021

            Signed                                       Dated


*TONI HUDSON, TRANSCRIBER*

Exhibit 95
-753-

EXHIBIT 96



ADVERTISEMENT

prisync.com
**Prueba gratuita**          OPEN

**PRESS RELEASE: Paid content from Business Wire**

# Masimo and Samsung Partner to Package Masimo SafetyNet™ with Select Samsung Phones to Speed COVID-19 Response Efforts

April 16, 2020

*Press release content from Business Wire. The AP news staff was not involved in its creation.*

  

Click to copy

IRVINE, Calif.--(BUSINESS WIRE)--Apr 16, 2020--

Masimo (NASDAQ: MASI) announced today that it is partnering with Samsung Electronics America to make the Masimo SafetyNet™ Patient App available on select Samsung smartphones, pre-installed and pre-configured. Masimo SafetyNet is an innovative, economically scalable cloud-based patient management solution designed to help clinicians care for patients remotely in hospital settings and in non-traditional settings and circumstances. The partnership with Samsung is expected to allow for broader, faster distribution of Masimo SafetyNet to COVID-19 patients, especially older patients who are less likely to own a smartphone or have the comfort level to configure the Masimo SafetyNet App on their own.

ADVERTISEMENT



Microsoft Azure
**Future-proof what you build**
Meet any challenge with Azure—your partner in the cloud

Try Azure free ›

Masimo's telehealth platform uses a tetherless, wearable single-patient-use SET ® sensor to monitor a patient's blood oxygen saturation and pulse rate, as well as respiration rate, perfusion index, and PVi ®, and is designed to help manage the surge in COVID-19 patients while maintaining distance from other patients and providers, allowing hospitals to expand patient remote monitoring into alternative care spaces, including overflow locations, emergency recovery facilities, skilled nursing facilities, and home care settings.

The telehealth solution combines clinically proven Masimo SET ® Measure-through Motion and Low Perfusion™ pulse oximetry with a cloud-based remote data capture and surveillance platform accessible from the patient's Android or iOS smartphone or smart device – or now, pre-installed on a Samsung Galaxy smartphone provided alongside the tetherless sensors. Monitoring key physiological data can help provide clinicians with an accurate snapshot of a patient's respiratory status and facilitates awareness of the need for intervention.

Joe Kiani, Founder and CEO of Masimo, said, "Masimo SafetyNet is helping to save lives by ensuring patients remain monitored from afar even during

ADVERTISEMENT



**Stay Off The Ladder For Good**
LeafFilter® Gutter Guards    Learn More ›

**Trending on AP News**



Thrill is gone: Los Angeles skyscraper slide won't reopen



Dua Lipa blasts group that condemned her for Mideast stance



NOT REAL NEWS: A look at what didn't happen this week

by Taboola

Exhibit 96
-754-

quarantine. Older patients are at greater risk, but are less likely to have smartphones. Samsung reached out to us, wanting to help us with the pandemic. We are grateful for their help in making it easier and faster for our much needed technology to reach more of those patients who need remote monitoring and management the most."

ADVERTISEMENT


Taher Behbehani, General Manager and Head of Mobile B2B for Samsung Electronics America, added, "Today, remote care solutions are more important than ever. We are proud to partner with Masimo to provide the technology and solutions our communities need. Our Galaxy smartphones with Knox security are fully equipped with the necessary connectivity and security to allow Masimo monitoring data to reach providers, safely and efficiently."

For added simplification and ease of use, the Samsung phones available alongside Masimo SafetyNet can be locked to provide only Masimo SafetyNet functionality.

@MasimoInnovates | #Masimo

*About Masimo*

Masimo (NASDAQ: MASI) is a global medical technology company that develops and produces a wide array of industry-leading monitoring technologies, including innovative measurements, sensors, patient monitors, and automation and connectivity solutions. Our mission is to improve patient outcomes and reduce the cost of care. Masimo SET ® Measure-through Motion and Low Perfusion™ pulse oximetry, introduced in 1995, has been shown in over 100 independent and objective studies to outperform other pulse oximetry technologies. 1 Masimo SET ® has also been shown to help clinicians reduce severe retinopathy of prematurity in neonates, 2 improve CCHD screening in newborns, 3 and, when used for continuous monitoring with Masimo Patient SafetyNet™ in post-surgical wards, reduce rapid response team activations, ICU transfers, and costs. 4-6 Masimo SET ® is estimated to be used on more than 200 million patients in leading hospitals and other healthcare settings around the world, 7 and is the primary pulse oximetry at 9 of the top 10 hospitals listed in the 2019-20 *U.S. News and World Report* Best Hospitals Honor Roll. 8 Masimo continues to refine SET ® and in 2018, announced that SpO 2 accuracy on RD SET ® sensors during conditions of motion has been significantly improved, providing clinicians with even greater confidence that the SpO 2 values they rely on accurately reflect a patient's physiological status. In 2005, Masimo introduced rainbow ® Pulse CO-Oximetry technology, allowing noninvasive and continuous monitoring of blood constituents that previously could only be measured invasively, including total hemoglobin (SpHb ® ), oxygen content (SpOC™), carboxyhemoglobin (SpCO ® ), methemoglobin (SpMet ® ), Pleth Variability Index (PVi ® ), RPVi™ (rainbow ® PVi), and Oxygen Reserve Index (ORi™). In 2013, Masimo introduced the Root ® Patient Monitoring and Connectivity Platform, built from the ground up to be as flexible and expandable as possible to facilitate the addition of other Masimo and third-party monitoring technologies; key Masimo additions include Next Generation SedLine ® Brain Function Monitoring, O3 ® Regional Oximetry, and ISA™ Capnography with NomoLine ® sampling lines. Masimo's family of continuous and spot-check monitoring Pulse CO-Oximeters ® includes devices designed for use in a

Exhibit 96
-755-

variety of clinical and non-clinical scenarios, including tetherless, wearable technology, such as Radius-7 ® and Radius PPG™, portable devices like Rad-67™, fingertip pulse oximeters like MightySat ® Rx, and devices available for use both in the hospital and at home, such as Rad-97 ®. Masimo hospital automation and connectivity solutions are centered around the Iris ® platform, and include Iris Gateway ®, Patient SafetyNet, Replica™, Halo ION™, UniView™, and Masimo SafetyNet™. Additional information about Masimo and its products may be found at www.masimo.com. Published clinical studies on Masimo products can be found at www.masimo.com/evidence/featured-studies/feature/.

ORi and RPVi have not received FDA 510(k) clearance and are not available for sale in the United States. The use of the trademark Patient SafetyNet is under license from University HealthSystem Consortium.

*References*

Forward-Looking Statements

This press release includes forward-looking statements as defined in Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange Act of 1934, in connection with the Private Securities Litigation Reform Act of 1995. These forward-looking statements include, among others, statements regarding the potential effectiveness of Masimo SafetyNet™ and SET ®. These forward-looking statements are based on current expectations about future events affecting us and are subject to risks and uncertainties, all of which are difficult to predict and many of which are beyond our control and could cause our actual results to differ materially and adversely from those expressed in our forward-looking statements as a result of various risk factors, including, but not limited to: risks related to our assumptions regarding the repeatability of clinical results; risks related to our belief that Masimo's unique noninvasive measurement technologies, including Masimo SafetyNet and SET ®, contribute to positive clinical outcomes and patient safety; risks related to our belief that Masimo noninvasive medical breakthroughs provide cost-effective solutions and unique advantages; risks related to COVID-19; as well as other factors discussed in the "Risk Factors" section of our most recent reports filed with the Securities and Exchange Commission ("SEC"), which may be obtained for free at the SEC's website at www.sec.gov. Although we believe that the expectations reflected in our forward-looking statements are reasonable, we do not know whether our expectations will prove correct. All forward-looking statements included in this press release are expressly qualified in their entirety by the foregoing cautionary statements. You are cautioned not to place undue reliance on these forward-looking statements, which speak only as of today's date. We do not undertake any obligation to update, amend or clarify these statements or the "Risk Factors" contained in our most recent reports filed with the SEC, whether as a result of new information, future events or otherwise, except as may be required under the applicable securities laws.

View source version on businesswire.com:https://www.businesswire.com/news/home/20200416005990/en/

CONTACT: Masimo

Evan Lamb

949-396-3376

elamb@masimo.com

KEYWORD: CALIFORNIA UNITED STATES NORTH AMERICA

INDUSTRY KEYWORD: TECHNOLOGY MOBILE/WIRELESS HEALTH TELECOMMUNICATIONS MEDICAL DEVICES SOFTWARE INFECTIOUS DISEASES GENERAL HEALTH HOSPITALS INTERNET HARDWARE DATA MANAGEMENT NURSING CONSUMER ELECTRONICS

SOURCE: Masimo

Copyright Business Wire 2020.

Exhibit 96
-756-

PUB: 04/16/2020 06:09 PM/DISC: 04/16/2020 06:09 PM

http://www.businesswire.com/news/home/20200416005990/en

CCPA Notice  Taboola Feed

### Thrill is gone: Los Angeles skyscraper slide won't reopen

LOS ANGELES (AP) — A renovation will do away with a slide that gave thrill-seekers a brie...

AP  May 22, 2021



## Ad Content

How Scientists Developed the COVID-19 Vaccin...

Promoted: CA Dept of Public Health



The Ingenious Reason There Are No Mosquitoes At...

Promoted: Pets Detective



[Photos] At 65, This Is The Car Bill Gates Drives

Promoted: Daily Finance Stories



COVID-19 Vaccine Protects Millions of Californians and...

Promoted: CA Dept of Public Health



### Dua Lipa blasts group that condemned her for Mideast stance

NEW YORK (AP) — Singer Dua Lipa is blasting an organization that paid for a full-page ad in ...

AP  May 22, 2021



### NOT REAL NEWS: A look at what didn't happen this week

A roundup of some of the most popular but completely untrue stories and visuals of the ...

AP  May 21, 2021



## Ad Content



America's Coolest College Towns by State

Promoted: Far & Wide

Free Shipping from PAX® is Always Something to Smile About

Promoted: PAX

CLICK HERE



Take A Look At Who CNN's Erin Burnett Is Married To Today

Promoted: Daily Finance Stories

### AP PHOTOS: Death and despair on Europe's African frontier

CEUTA, Spain (AP) — The young man wore



Exhibit 96
-757-



Exhibit 96
-758-



Exhibit 96
-759-

# EXHIBIT 97

SIDNEY FUSSELL    ADRIENNE SO    **BUSINESS**   03.30.2020 01:05 PM

# A Wearable for Opioid Patients Gets Retooled for Covid-19

**It alerts staff when a patient's condition changes, allowing people to be sent home and monitored remotely. Two hospital systems will begin testing it this week.**



The Masimo SafetyNet is a wearable similar to a wristwatch with a disposable fingertip attachment usable either by patients in traditional or ad hoc hospital beds or by sick individuals who have been seen and sent home.  PHOTOGRAPH: MASIMO

**IN A MID-MARCH** press conference on New York City's response to the coronavirus pandemic, Mayor Bill de Blasio detailed the city's plan to transform public spaces to treat an influx of patients: "We're getting into a situation where the only analogy is war."

Exhibit 97
-760-

As confirmed cases in the US pass 100,000, some hospitals are establishing field hospitals in cabins and convention centers, while others are turning wings of their facility into dedicated quarantine or Covid-19 treatment areas. They hope the additional space will help prevent burdened health care systems from being overwhelmed.

"They'll take a parking lot and put up a tent and turn it into an ICU," de Blasio said. "We'll turn a cafeteria into an ICU. In a wartime dynamic, you turn all sorts of facilities into something else."

But the space problem is partially an information problem, too. Sick patients need their vitals recorded and their symptoms monitored, and staff needs to get updates if someone's condition starts to worsen (from fever and cough to shortness of breath as blood oxygen levels fall). Not every bed is equipped for monitoring, particularly field beds in temporary spaces. As hospitals are stretched thin, caring for the sick while also trying to reserve beds only for the seriously ill, a new telemedicine device offers both remote monitoring and help in reallocating resources for the coming surge of patients.

The Masimo SafetyNet is a wearable similar to a wristwatch with a disposable fingertip attachment usable either by patients in traditional or ad hoc hospital beds or by sick individuals who have been seen and sent home. It continuously monitors a patient's pulse, breathing, and blood oxygen levels. If it detects shallow breathing or an unnaturally slow or accelerated pulse, it alerts caregivers and hospital staff.



PHOTOGRAPH: MASIMO

Exhibit 97
-761-

At any point, a caregiver or the patient themselves can view their own vitals. For users at home, staff can set the app to ping users twice a day, asking them to note if their symptoms have changed. If vitals fall within alarm parameters, the smartphone app immediately alerts the designated caregiver. If that person doesn't respond, the hospital is alerted. "This way, the caregivers can go about their normal days and only get alerts, only pay attention when they need to," explains Joe Kiani, inventor and founder of Masimo. "And then, if for some reason they don't respond within a period, it elevates the alarm to other care providers."

Hospitals already use telemedicine to monitor the manageably sick, but few apps have any built-in capability to detect or respond to a change in patient vitals. So far, four patients have begun at-home monitoring, according to Peter Pronovost, the chief clinical transformation officer for University Hospitals, a health care network in Cleveland. Masimo has thousands of devices available to deploy, the company's rep says, with plans to manufacture half a million a week by mid-April.

The US Food and Drug Administration approved the device in May 2019 as a tool for remotely monitoring patients recovering from opioid overdoses. In mid-March, Kiani requested FDA approval of the wearable to help doctors manage Covid-19 patients. FDA officials approved the device within days. "We've been working at this for a while," Kiani says, "and all of a sudden it turns out to become the right product at the right time for this terrible pandemic."

Staff at Cleveland's University Hospitals system and St. Luke's University Health Network in Pennsylvania will begin giving out the devices this week. As Aldo Carmona, a physician with the network, explains, they're going to be a crucial part of how staff will handle the inevitable increase in patients.



Exhibit 97
-762-

PHOTOGRAPH: MASIMO

---

**Get the Latest Covid-19 News**

Sign up for our Coronavirus Update newsletter, providing the latest insights on the pandemic, vaccine rollouts, and more.

Your email

Enter your email

SUBMIT

By signing up you agree to our User Agreement and Privacy Policy & Cookie Statement

"We know we're going to have a surge of patients," he says. "How long and how big that surge is? It's impossible to tell. [But] this really gives our community a level of safety that's not present anywhere at this time."

For patients with serious but manageable symptoms, they'll likely be treated, discharged, then remotely monitored. For patients being treated in hospitals, the wearables will relay their vitals to staff. Carmona says the devices give them more freedom when deciding to send patients home or keep them in the hospital.

Crucially, the device limits the amount of unnecessary contact between staff and the seriously ill. Health care workers are at serious risk of being exposed to the virus and transmitting it to the vulnerable as well. Carmona explains remote monitoring is key here, too, and that employees who test positive will get one of the devices and sent home to be monitored remotely.

Kiani says that the important thing now is to get the wearables into hospitals sooner rather than later. He says he's in contact with the White House, but things are slow going. If the devices aren't deployed in hospitals *before* they receive an influx of patients, there's little time to accommodate, test, and troubleshoot them. Hospitals must think ahead, Pronovost says, "because your ability to surge when you're overrun is zero."

## More From WIRED on Covid-19

- It's time to do the things you keep putting off. Here's how
- What isolation could do to your mind (and body)
- Bored? Check out our video guide to extreme indoor activities
- Blood from Covid-19 survivors may point the way to a cure
- How is the virus spread? (And other Covid-19 FAQs, answered)
- Read all of our coronavirus coverage here

---

Sidney Fussell is a senior staff writer at WIRED covering surveillance, ad tech, and Silicon Valley's social and political impact. He was formerly a staff writer at The Atlantic. He is based in San Francisco. Send tips to sidney_fussell@wired.com or via Signal at 510-768-7625.

SENIOR WRITER

---

Exhibit 97
-763-

<u>Adrienne So</u> is a senior writer for WIRED and reviews consumer technology. She graduated from the University of Virginia with bachelor's degrees in English and Spanish, and she worked as a freelance writer for Cool Hunting, Paste, Slate, and other publications. She is currently based in Portland, Oregon.

SENIOR WRITER

---

## Featured Video



**ER Doctor Explains How They're Handling Covid-19**

Epidemic expert Dr. Seema Yasmin interviews emergency room physician Dr. Cedric Dark about COVID-19's effect on the city of Houston, Texas. Dr. Dark talks about how the city is handling the pandemic, and what measures they are beginning to take in preparation for the worst.

---

TOPICS   MEDICINE   CORONAVIRUS   COVID-19

Exhibit 97
-764-

# EXHIBIT 98

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-07748-CAS(PLAx) | Date | May 22, 2020 |
|---|---|---|---|
| Title | HOPE MEDICAL ENTERPRISES, INC. v. FAGRON COMPOUNDING SERVICE, LLC ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                          Not Present

**Proceedings:**     (IN CHAMBERS) - DEFENDANTS' NOTICE OF MOTION AND MOTION TO MODIFY AND CONTINUE SCHEDULING ORDER (Dkt. [ 96 ], filed April 22, 2020)

The Court finds this motion appropriate for decision without oral argument. See Fed. R. Civ. P. 78; C.D. Cal. L.R. 7–15. The Court therefore **VACATES** the hearing date of June 1, 2020.

Plaintiff Hope Medical Enterprises, Inc., d/b/a/ Hope Pharmaceuticals ("Hope") filed this action against defendants Fagron Compounding Services, LLC, JCB Laboratories, LLC, AnazaoHealth Corporation, and Coast Quality Pharmacy, LLC (collectively, "defendants") on September 6, 2019. Dkt. 1. The gravamen of Hope's claims is that defendants' drug compounding practices constitute unfair competition.

The Court held a scheduling conference and entered a scheduling order on December 9, 2019. Dkt. 53. On April 22, 2020, defendants filed a motion to modify the Court's scheduling order, seeking extensions of various deadlines in light of the ongoing COVID-19 pandemic. Dkt. 96 ("Mot."). Defendants contend that shelter-in-place orders in effect in Arizona, California, Colorado, Florida, Kansas, Tennessee, and Washington, D.C. inhibit defendants' ability to complete pre-trial preparations and conduct discovery, in accordance with the Court's scheduling order, given that witnesses, attorneys, and legal support staff in this case reside in these states. See generally id.

Hope filed an opposition on May 11, 2020. Dkt. 101 ("Opp."). Hope avers that, in light of the ongoing pandemic, "the situation is fluid, with some states and counties having lifted 'safer-at-home' restrictions, and others maintaining them." Id. Hope maintains that, "[a]t this point, however, the current circumstances establishes [sic] good cause only for minor modifications to the existing case management schedule, with no continuance of the trial date necessary at this time due to the lengthy period (over four months) between the

Exhibit 98
-765-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-07748-CAS(PLAx) | Date | May 22, 2020 |
|---|---|---|---|
| Title | HOPE MEDICAL ENTERPRISES, INC. v. FAGRON COMPOUNDING SERVICE, LLC ET AL. | | |

discovery cut-off and the trial date in the Court's existing scheduling order." Id. Hope further asserts that "[t]he COVID-19 pandemic should not materially affect any aspect of the case other than deposition discovery (which . . . may be conducted by remote means)" and that "[t]he completion of all other discovery and the preparation of expert reports, dispositive motions, a mediation, and motions in limine and other pretrial preparations should be largely unhindered by the public health situation." Opp. at 2.

The dates in the Court's scheduling order and in the parties' competing proposals are as follows:

| Case Event | Scheduling Order | Hope's Proposal | Defendants' Proposal |
|---|---|---|---|
| Fact Discovery Cut-Off | July 31, 2020 | Aug. 21, 2020 | Oct. 30, 2020 |
| Exchange of Expert Reports | None | June 22, 2020 | Sept. 18, 2020 |
| Exchange of Rebuttal Expert Reports | None | July 15, 2020 | Oct. 9, 2020 |
| Expert Discovery Cut-Off | June 15, 2020 | Aug. 21, 2020 | Nov. 13, 2020 |
| Last Day to File Motions | Aug. 24, 2020 | Sept. 4, 2020 | Nov. 24, 2020 |
| Settlement Completion Cut-Off | Aug. 7, 2020 | Aug. 7, 2020 | Nov. 6, 2020 |
| Status Conference re: Settlement | Aug. 24, 2020 | Aug. 24, 2020 | Nov. 24, 2020 |
| Pretrial Conference and Hearing on Motions in Limine | Oct. 26, 2020 | Oct. 26, 2020 | Jan. 25, 2021 |

Exhibit 98
-766-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-07748-CAS(PLAx) | Date | May 22, 2020 |
|---|---|---|---|
| Title | HOPE MEDICAL ENTERPRISES, INC. v. FAGRON COMPOUNDING SERVICE, LLC ET AL. | | |

| Jury Trial | Dec. 8, 2020 | Dec. 8, 2020 | Mar. 9, 2021 |
|---|---|---|---|

Pursuant to Rule 16(b)(4), once the Court has entered a scheduling order, the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The district court is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order will not be disturbed unless they evidence a clear abuse of discretion." Morgal v. Maricopa Cty. Bd. of Sup'rs, 284 F.R.D. 452, 459 (D. Ariz. 2012) (citing C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist., 654 F.3d 975, 984 (9th Cir.2011)) (internal alterations omitted).

Other courts have determined that the ongoing COVID-19 pandemic presents "good cause" warranting modification of a previously entered scheduling order. See, e.g., Wilkens v. ValueHealth, LLC, No. 19-1193-EFM-KGG, 2020 WL 2496001, at *2 (D. Kan. May 14, 2020) (denying blanket request to continue all dates by 120 days since "[v]ideo or teleconference deposition and preparation are the 'new normal' and most likely will be for some time" but determining that COVID-19 pandemic presents "good cause" that warrants "extending all unexpired deadlines 90 days and setting a new Pretrial Conference and Dispositive Motion deadline about 90 dates from the current dates."); Sung Gon Kang v. Credit Bureau Connection, Inc., No. 1:18-cv-01359-AWI-SKO, 2020 WL 1689708, at *8 (E.D. Cal. Apr. 7, 2020) ("Good cause appearing, and to allow the parties sufficient time to complete class certification discovery, particularly in light of the national, regional and local public health emergency posed by the coronavirus (COVID-19) outbreak, the case schedule will be modified to continue the class certification discovery and briefing deadlines by 180 days to allow for Defendant to produce the information.") (internal citations omitted); See also Macias v. KDF Foxdale, L.P., No. 5:18-cv-07712-EJD, 2020 WL 2097607, at *2 (N.D. Cal. May 1, 2020) (determining, with regards to motion for leave to file amended pleading pursuant to Rule 15, that "in light of the ongoing COVID-19 pandemic . . . the Court will continue the discovery deadlines in the Scheduling Order by 60 days."). Accordingly, the Court concludes that defendants have demonstrated "good cause," warranting modification of the Court's scheduling order.

In accordance with the foregoing, the Court **GRANTS** defendants' motion to modify the scheduling order. The Court modifies the scheduling order as follows:

Exhibit 98
-767-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-07748-CAS(PLAx) | Date | May 22, 2020 |
|---|---|---|---|
| Title | HOPE MEDICAL ENTERPRISES, INC. v. FAGRON COMPOUNDING SERVICE, LLC ET AL. | | |

| | |
|---|---|
| Fact Discovery Cut-Off: | Oct. 30, 2020 |
| Exchange of Expert Reports: | Sept. 18, 2020 |
| Exchange of Rebuttal Reports: | Oct. 9, 2020 |
| Expert Discovery Cut-Off: | Nov. 13, 2020 |
| Dispositive Motions Cut-Off: | Nov. 23, 2020 |
| Settlement Cut-Off: | Nov. 6, 2020 |
| Settlement Status Conference: | Nov. 23, 2020, at 11:00 A.M. |
| Pretrial Conference and Motions in Limine Hearing: | Jan. 25, 2021, at 11:00 A.M. |
| Jury Trial: | Mar. 9, 2021, at 9:30 A.M. |

        Whether or not the current COVID-19 pandemic continues, the parties shall act diligently and cooperatively to complete discovery and other pre-trial preparations.  Absent further order by the Court, the Court declines to grant further extensions of time.

        IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

Exhibit 98
-768-

# EXHIBIT 100

| | |
|---|---|
| **From:** | Andrea, Brian <BAndrea@gibsondunn.com> |
| **Sent:** | Tuesday, May 18, 2021 4:42 PM |
| **To:** | Adam.Powell; *** Apple-Masimo; Rosenthal, Brian A.; Lerner, Joshua H.; Samplin, Ilissa; Lyon, H. Mark; Kaounis, Angelique; Buroker, Brian M. |
| **Cc:** | Masimo.Apple |
| **Subject:** | RE: Masimo v. Apple - Deposition Notices and ESI Custodians |

Adam,

Apple agrees to search the ESI for both Adrian Perica and Steve Smith.  We will also work on obtaining the availability of the individuals you have noticed for deposition, with the exception of Jeff Williams, as discussed below.

Apple objects to Plaintiffs' notice of Jeff Williams' deposition and his identification as an ESI custodian.  Mr. Williams is the Chief Operating Officer of Apple who oversees Apple's entire worldwide operations.  Mr. Williams is not an appropriate deponent or custodian in this case, as he does not appear to possess unique or direct knowledge of relevant facts.  The fact that he is a manager is insufficient to establish the unique or direct knowledge requisite to show that discovery from him is appropriate.  *See, e.g., BlackBerry Ltd. v. Facebook, Inc.*, No. CV 18-1844-GW (KSX), 2019 WL 4544425, at *6-7 (C.D. Cal. Aug. 19, 2019).  Moreover, Plaintiffs have not exhausted alternative means of obtaining the discovery they seek, which includes ESI and depositions from lower level employees that are more likely to have any information you seek from Mr. Williams about the allegations in this case.

Thanks,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Thursday, May 13, 2021 11:00 PM
**To:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Rosenthal, Brian A. <BRosenthal@gibsondunn.com>; Lerner, Joshua H. <JLerner@gibsondunn.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Lyon, H. Mark <MLyon@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Buroker, Brian M. <BBuroker@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** Masimo v. Apple - Deposition Notices and ESI Custodians

[External Email]
Counsel,

Please see the attached deposition notices.

Exhibit 100
-777-

Additionally, Plaintiffs request that Apple add the following individuals to the list of custodians that Apple searches pursuant to the parties' ESI discussions.

1. Adrian Perica
2. Steve Smith
3. Jeff Williams

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** **Martens**

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 100
-778-

# EXHIBIT 101

# Knobbe Martens

**KNOBBE, MARTENS, OLSON & BEAR, LLP**

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Stephen W. Larson
Stephen.Larson@knobbe.com

November 16, 2020

**VIA EMAIL**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.,
Washington, DC 20036-5306

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

        We write in response to your October 17, 2020 letter, and pursuant to Local Rule 37-1 to address various ongoing discovery issues and request a meet and confer.  Apple's letter did not address Plaintiffs' requests for Apple's positions on numerous issues.

        **Apple's Reliance on Custodians and Search Terms**

        Apple has now identified RFP Nos. 26, 31, 32, 80-82, 89-97, 117, 128, 129, and 136 as the only RFPs as to which it intends to solely use search terms to identify responsive documents.  Plaintiffs disagree that Apple can satisfy its discovery obligations as to these requests through ESI searching alone.  For example, RFP 26 requests "[a]ll documents and things identified in, and/or relevant to the subject matter of Apple's responses to Plaintiffs' Interrogatories, including any and all supplements and amendments thereto."  At a minimum, as part of a reasonable search, Apple should identify all the documents it cited in its responses to Plaintiffs' interrogatories and consult with relevant Apple employees that may have other documents responsive to this request.  As another example, RFP 89 requests "[a]ll documents and things that refer or relate to any analysis, reverse engineering, and/or study of any Masimo or Cercacor product or technology."  As part of a reasonable search, at a minimum, Apple should consult with relevant employees to identify responsive documents as well as determine whether Apple currently and/or in the past has maintained files or folders containing responsive documents.  Apple should take a similar approach to identify documents responsive to the other RFPs separate and apart from ESI searching.  Please confirm Apple will do so.

        **Plaintiffs' First and Second Set of Requests For Production (RFPs 1-60)**

        **Plaintiffs' RFPs 1, 3, 4, 34, 40, 51, and 59:**  Plaintiffs' letter requested that Apple identify when it would produce responsive documents.  Apple did not respond.  Please identify Apple's positions as to these RFPs.  To the extent that Apple is asserting that it need not provide responsive documents due to the recent stay of the patent case, Apple should have collected and produced responsive documents months ago and long before the stay.  Regardless, many of these requests seek discovery that is relevant to claims that have not been stayed.  For example, RFP 51 requests year-end financial statements that

**Knobbe Martens**                                                                    Page 2

---

are relevant to Plaintiffs' non-patent claims.  Please provide Apple's position as to RFPs 1, 3, 4, 34, 40, 51, and 59.

**Plaintiffs' RFPs 5-27:**  Apple asserts that it need not respond to these requests because the Court stayed the patent infringement case and because Plaintiffs have purportedly not yet served an adequate 2019.210 statement.  Plaintiffs disagree on both points.  First, Plaintiffs 2019.210 statement is adequate.  Indeed, Plaintiffs recently revised their Section 2019.210 statement to address Apple's purported concerns and Apple has failed to identify any specific deficiency.  Second, Apple ignores that it repeatedly argued that documents requested by these RFPs relate to Plaintiffs' trade secret requests.  Indeed, both parties acknowledged these RFPs could be relevant to **both** trade secrets and patents.  As such, Apple cannot use the stay to avoid producing responsive documents.  Moreover, Judge Early, found that at least RFPs 8 and 12-14 seek "some of the same categories of information Plaintiffs allege as their trade secrets."  RFP 26, which requests documents related to Apple's interrogatory responses, also clearly seeks documents related to Plaintiffs' non-patent claims.

## <u>Plaintiffs' Third Set of Requests For Production (RFPs 61-147)</u>

**Section 2019.210**:  In our previous letter, we requested that Apple identify each RFP in response to which Apple is withholding documents based on its section 2019.210 objection.  Apple did not respond.  Plaintiffs are entitled to understand the objections upon which Apple is relying to withhold documents in response to each of Plaintiffs' RFPs.  Plaintiffs request again that Apple provide this information so that the parties can have a productive meet and confer.

**Temporal Scope:**  Apple confusingly asserts "it is not withholding documents based on this objection" while also stating that "[u]pon Plaintiffs' identification of relevant time periods, Apple will provide information and documents in its possession, custody, or control for the relevant time period."  Plaintiffs disagree with this approach.  Unless a time frame is specified in a RFP, Apple should produce all documents responsive to that RFP that are obtained after a reasonable search.  To the extent that Apple is limiting its production to a certain time period, Apple should identify such limitations for each RFP so that the parties can conduct a productive meet and confer.

**Products Not Identified in the Complaint:**  Apple did not respond to Plaintiffs' letter regarding this issue.  Please provide Apple's position.  If Apple is relying on this objection to limit its responses to Plaintiffs' RFPs, Apple should identify the RFPs so the parties can have a productive meet and confer.

**Not Limited to the Publicly Released Apple Watch Series 3-5 Devices:**  Apple did not respond to Plaintiffs' letter regarding this issue.  If Apple is relying on this objection to limit its responses to Plaintiffs' RFPs, Apple should identify the RFPs so that the parties can have a productive meet and confer.

**Public Documents:**  Apple asserts that it is not withholding documents based on this objection.  However, Apple also asserts that "it will not specifically search for publicly available documents as those are equally available to Plaintiffs."  Apple cannot unilaterally refuse to search for and produce documents merely because it contends the documents are publicly available elsewhere, particularly without informing Plaintiffs what documents it is refusing to search for.  So that the parties can conduct

**Knobbe Martens**

a meaningful meet and confer, please identify the categories of documents that Apple contends are publicly available and that Apple contends it need not search for and produce.

**Plaintiffs' RFPs 63-65, 70-85, and 87:**  Apple did not respond to our letter on this issue.  Please provide Apple's position.  To extent Apple contends that it need not respond to these RFPs because the patent case is stayed, Apple is incorrect.  For example, RFP 70 requests documents related to the clinical trials of the Apple Watch, which are relevant to Apple's misappropriation of Plaintiffs' trade secrets regarding business plans and strategies for interacting with hospitals.  RFP 70 seeks technical documents relevant to many issues in this case.  RFP 71 requests documents sufficient to identify all persons involved in the research, design, and development of any physiological monitoring capability of the Apple Watch Products, which is a general RFP that relates to all of Plaintiffs' non-patent claims and will allow Plaintiffs to evaluate proposed custodians for ESI searching.  Please provide Apple's position on these RFPs.

**Plaintiffs' RFPs 67-69, 86, 88, 101, 122, 128-130, and 133-135:**  We disagree with Apple's positions on these requests.  First, Apple's letter claims it is unclear "how documents related to FDA correspondence or approval (RFP Nos. 67-69) and physiological parameter evaluation (RFP No. 86) are relevant to this litigation."  FDA correspondence and approval, however, are at least relevant to the timing of when various features were incorporated into Apples devices.  They are also relevant to Apple's misappropriation of Plaintiffs' trade secrets regarding business plan and strategies for interacting with hospitals.  These RFPs also seek technical documents relevant to many other issues in this case.

Second, Apple again claims that RFP Nos. 88, 101, 122, 128-130, and 133-135 are overly broad and unduly burdensome.  However, Apple does not explain why.  Apple should provide its position so that the parties can have a productive meet and confer.

Third, Apple objects to RFP No. 128 to the extent it requests "subject matter disclosed or claimed in the disputed patents" because the "language of this Request requires Apple to draw a legal conclusion in order to respond."  Apple need not draw a legal conclusion to produce relevant discovery.  Apple should interpret the phrase "subject matter disclosed or claimed in the disputed patents" according to its plain and ordinary meaning.

**Plaintiffs' RFPs 80-82, and 136:**  Apple continues to identify RFPs 80-82 and 136 as RFPs "whose discovery obligations are met by a search of (i) the files of specific custodians negotiated between the parties, whose files are in the possession, custody, or control of Apple and (ii) specific search terms negotiated between the parties." As discussed above, Apple should perform a reasonable search for documents separate and apart from ESI searching for these RFPs.  Please confirm that Apple will perform a reasonable search for and produce the requested documents.

**Plaintiffs' RFPs 89-97, 129 and 136:**  Apple continues to identify these RFPs as RFPs where it intends to solely use search terms and custodians to identify responsive documents.  As explained above, Apple should perform a reasonable search for documents separate and apart from ESI searching.  Apple also argues that these RFPs are overly broad and unduly burdensome.  However, Apple does not explain why.  Please provide your position so that the parties can have a productive discussion at the meet and confer.  Finally, Apple continues to object to RFPs 91, 129, and 136 because they seek "'any

communications,' which will be negotiated and produced pursuant to the ESI Order in this case." Plaintiffs' letter asked Apple to explain this objection, but Apple did not do so.  Please explain.

**Plaintiffs' RFPs 98 and 99:**  Apple did not respond to Plaintiffs' letter regarding this issue. Please provide Apple's position.

**Plaintiffs' RFPs 132 and 144:**  Apple continues to assert that it does not have organizational charts.  Please identify what documents Apple maintains that show Apple's organizational structure or the reporting and supervisory obligations of various employees, regardless of whether they are labeled as organization charts.

## Compliance with ESI Order

In the stipulated ESI Order, the parties agreed to "provide a proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case" in conjunction with a meet and confer on ESI.  Apple asserts it is "premature" to do so because "Plaintiffs have yet to provide a sufficient trade secret disclosure or responses to Apple's discovery, and Apple has not yet filed an answer."  Plaintiffs provided an adequate section 2019.210 statement, however, and have responded to Apple's discovery.  Further, in the parties' October 27, 2020, Joint Stipulation, Apple agreed "that it will not use the fact that it has not yet Answered as a basis for refusing to provide or delaying providing discovery."  Thus, it is not premature for the parties to begin the stipulated process to agree on search terms and custodians.  Apple further "contends that the parties should discuss reasonable limits on the number of custodians before any exchanges of custodians can occur."  The stipulated ESI Order, however, does not require this.  Please confirm that Apple will proceed in accordance with the stipulated ESI Order.

## Apple's Deficient Document Production

Apple claims it will produce documents on a rolling basis, but has produced less than 1400 documents.  Apple has not produced responsive documents even as to RFPs as to which it committed to produce documents months ago.  Moreover, Apple agreed to produce the documents identified in its initial disclosures almost four months ago, but has not produced the documents, including documents concerning Apple's conception, reduction to practice, diligence, ownership, marketing, sales, development, operation, regulation, and implementation of the inventions claimed in the patents and patent applications at issue in Plaintiffs' Correction of Inventorship and Declaratory Judgment claims. Please let us know when Apple will make substantial document productions.

## Plaintiffs' Interrogatories Nos. 7-10

As explained in Plaintiffs' letter, Interrogatories 7-9 request details on the design and development of the Apple Watch.  Apple's responses are woefully deficient and provides little of the requested information.  Apple did not respond to Plaintiffs' letter on this topic.  To the extent Apple contends that it need not respond to these interrogatories because the patent case is stayed, Apple is incorrect.  The requested information is relevant to Plaintiffs' non-patent claims at least to show when Plaintiffs' trade secrets were incorporated into the Apple Watch and to show if Apple in fact invented

# Knobbe Martens

any of the subject matter claimed in the disputed patents.  Please confirm that Apple will supplement its response by December 2, 2020.

Interrogatory 10 also requests details on any test, analysis, comparison, or competitive analysis that Apple performed on any non-Apple physiological monitor.  Apple's response requested a meet and confer to discuss the relevance of this interrogatory.  Plaintiffs' letter asked Apple to explain its position, but Apple did not respond.  Again, to the extent that Apple contends that it need not respond to this interrogatory because the patent case is stayed, Apple is incorrect.  The requested information is relevant, for example, to any contention by Apple that it independently derived Plaintiffs' trade secrets and to any contention by Apple that it invented any of the subject matter claimed in the disputed patents.  Apple should explain its position on Interrogatory 10 so the parties can have a productive meet and confer.

## Apple Watch Series 6 and SE

Plaintiffs' letter requested that Apple confirm that it will not withhold documents on the Apple Watch Series 6 and SE now that those products are released.  Apple did not respond.  Please confirm that Apple will provide Plaintiffs' requested discovery as to the Apple Watch Series 6 and Series SE.

Best regards,

Stephen W. Larson

32796726

# EXHIBIT 102

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian K. Andrea
Direct: +1 202.887.3624
Fax: +1 202.530.4220
BAndrea@gibsondunn.com

November 25, 2020

VIA E-MAIL

Stephen W. Larson
Knobbe, Martens, Olson & Bear, LLP
2040 Main St., 14th Fl.,
Irvine, CA 92614
Stephen.Larson@Knobbe.com

Re:   *Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.*, Case No. 8:20-cv-00048-JVS (JDEx) (C.D. Cal.)

Dear Steve:

I write in response to your letter dated November 16, 2020.

As an initial matter, Apple notes that many of the "issues" identified in Plaintiffs' letter, including but not limited to the sections of Plaintiffs' letter labeled "Plaintiffs' RFPs 5-27," "Section 2019.210 Statement," "Plaintiffs' RFPs 63-65, 70-85, and 87," "Plaintiffs' RFPs 67-69, 86, 88, 101, 122, 128-130, and 133-135," "Plaintiffs' RFPs 98 and 99," "Plaintiffs' RFPs 98 and 99," "Plaintiffs' Interrogatories Nos. 7-10," and "Apple Watch Series 6 and SE," concern the parties' disagreement as to whether or not Plaintiffs' requests seek discovery related to their trade secret allegations. As Plaintiffs are aware, discovery from Apple related to Plaintiffs' trade secret allegations has been stayed pending Plaintiffs' compliance with Section 2019.210. (Dkt. No. 37). As we already informed you, Plaintiffs' November 6 amended disclosure remains deficient, and therefore does not comply with Section 2019.210. *See* 11/12/2020 Samplin to Powell Ltr. Accordingly, Apple maintains its objection to producing any discovery that is solely related to Plaintiffs' trade secret allegations. *See* Cal. Civ. Code § 2019.210. If Plaintiffs provide a Section 2019.210-complaint disclosure, Apple will meet and confer with Plaintiffs regarding the relevance and scope of Plaintiffs' discovery requests.

## "Apple's Reliance on Custodians and Search Terms"

Apple is willing to remove RFPs 26, 89-97, and 117 from its list of RFPs that may be satisfied through the use of search terms and custodians alone. For each of these RFPs, Apple will perform a reasonable search beyond search terms and custodians to locate information responsive to such RFPs, to the extent such documents exist.

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

Exhibit 102
-784-

**GIBSON DUNN**

Stephen W. Larson
November 25, 2020
Page 2

Apple maintains its position as to RFPs 31, 32, 80-82, 128, 129, and 136. These RFPs are exceedingly broad in scope, and thus targeted searches for responsive documents without search terms and custodians are unreasonable, unduly burdensome, and disproportionate to the needs of the case. Plaintiffs specifically request clarification of Apple's objection to RFPs 91, 129, and 136 because they seek "'any communications.'" As Plaintiffs are aware, communications such as email will be located and produced pursuant to the ESI Order in this case. Accordingly, Apple will use search terms and custodians to locate "any communications" responsive to these RFPs that may exist.

### Plaintiffs' First and Second Set of Requests For Production (RFPs 1-60)

**Plaintiffs' RFPs 1, 3, 4, 34, 40, 51, and 59:** Plaintiffs' RFPs 1, 3, 4, 34, 40, and 59 are directed to Plaintiffs' patent infringement allegations and seek discovery that is relevant only to claims that have been stayed. Apple is not obligated to respond to these requests unless and until the patent infringement case is resumed. Regarding Plaintiffs' RFP 51, Apple agrees to produce all Apple year-end SEC financial statements and/or annual reports from 2015 to the present.

**Plaintiffs' RFPs 5-27:** To the extent Plaintiffs' RFPs 5-27 are related to Plaintiffs' trade secret allegations, trade secret discovery is stayed. And even if Plaintiffs are correct that these RFPs *also* relate to patents, the patent infringement case is stayed—and, therefore, Apple has no obligation to produce responsive documents based on Plaintiffs' purported patents justification. If Plaintiffs provide a Section 2019.210-compliant disclosure, Apple will meet and confer with Plaintiffs regarding the relevance and scope of these RFPs, as it pertains to the trade secret claim.

### Plaintiffs' Third Set of Requests For Production (RFPs 61-147)

**Section 2019.210 Statement:** Apple is withholding documents responsive to Plaintiffs' RFPs 61-109, 122-25, and 130-47 based on its Section 2019.210 objection. To the extent these RFPs are related to Plaintiffs' trade secret allegations, trade secret discovery is stayed. If Plaintiffs provide a Section 2019.210-compliant disclosure, Apple will meet and confer with Plaintiffs regarding the relevance and scope of these RFPs. With respect to RFPs 110-121 and 126-129, Apple agrees to produce responsive documents, subject to its objections, to the extent any such documents exist and can be located after a reasonable search.

**"Temporal Scope":** Without temporal limitations, the scope of certain RFPs are overbroad and irrelevant to the issues in the present action. For example, Plaintiffs' RFP 106 requests "All documents and things referring or relating to, or otherwise evidencing, valuations of any physiological monitoring technology or intellectual property relating to physiological monitoring technology," and RFP 133 requests "Documents sufficient to identify any legal proceeding involving any of the Apple Watch Products." These Requests are not sufficiently

Exhibit 102
-785-

**GIBSON DUNN**

Stephen W. Larson
November 25, 2020
Page 3

tailored to lead to the discovery of admissible evidence.  Plaintiffs, with superior knowledge of the relevant time periods at issue, are in the best position to propose time period limitations. Apple maintains its position that upon Plaintiffs' identification of relevant time periods, Apple will provide information and documents in its possession, custody, or control for the relevant time period.

**"Products Not Identified in the Complaint":**  The RFPs for which Plaintiffs raise this discovery issue are directed to Plaintiffs' patent infringement allegations.  The patent infringement case is stayed, and therefore Plaintiffs' purported issues with Apple's responses to these RFPs are moot.  Apple is not obligated to respond to these RFPs unless and until the Court lifts the stay.  If Plaintiffs contend that certain individual Requests seek information Apple is obligated to produce notwithstanding the stay, please identify such Requests and explain in detail Plaintiffs' purported justification for production despite the stay.

**"Not Limited to the Publicly Released Apple Watch Series 3-5 Devices":**  The RFPs for which Plaintiffs raise this discovery issue are directed to Plaintiffs' patent infringement allegations.  The patent infringement case is stayed, and therefore Plaintiffs' purported issues with Apple's responses to these RFPs are moot.  Apple is not obligated to respond to these RFPs unless and until the Court lifts the stay.  If Plaintiffs contend that certain individual Requests seek information Apple is obligated to produce notwithstanding the stay, please identify such Requests and explain in detail Plaintiffs' purported justification for production despite the stay.

**"Public Documents":**  Apple agrees not to withhold documents solely on the grounds that they are easily available to Plaintiffs.  Apple will produce responsive public documents to the extent they are located after a reasonable search for responsive documents.

**Plaintiffs' RFPs 63-65, 70-85, and 87:**  Plaintiffs' RFPs 63-65, 70-85, and 87 are directed to Plaintiffs' patent infringement allegations.  The patent infringement case is stayed, and therefore Plaintiffs' responses to these RFPs are moot,.  Apple is not obligated to respond to these RFPs unless and until the Court lifts the stay.  If Plaintiffs contend that certain individual Requests seek information Apple is obligated to produce notwithstanding the stay, please identify such Requests and explain in detail Plaintiffs' purported justification for production despite the stay.

**Plaintiffs' RFPs 67-69, 86, 88, 101, 122, 128-130, and 133-135:**  To the extent RFPs 67-69, 86, 88, 101, 122, 128-130, and 133-135 are related to Plaintiffs' trade secret allegations, trade secret discovery is stayed.  If Plaintiffs provide a Section 2019.210-compliant disclosure, Apple will meet and confer with Plaintiffs regarding the relevance and scope of these RFPs.

Exhibit 102
-786-

Stephen W. Larson
November 25, 2020
Page 4

**Plaintiffs' RFPs 98-99:**  To the extent that RFPs 98-99 are related to Plaintiffs' trade secret allegations, trade secret discovery is stayed.  If Plaintiffs provide a Section 2019.210-compliant disclosure, Apple will meet and confer with Plaintiffs regarding the relevance and scope of these RFPs.

**Plaintiffs' RFPs 132-144:**  As Apple has explained several times, Apple does not maintain formal or informal organizational charts.  In lieu of organizational charts, Apple maintains and relies upon an internal directory, but no documents responsive to these RFPs have been located in that directory following a reasonable search.

### "Compliance with ESI Order"

Plaintiffs' trade secret discovery is stayed pending compliance with Section 2019.210. Accordingly, Apple's position is that it would be inefficient and unduly burdensome to proceed with exchanging custodians and ESI until the full scope of the case has been crystallized, as opposed to proceeding with custodian and ESI exchanges related to Plaintiffs' inventorship and ownership allegations now and Plaintiffs' trade secret allegations down the road, after Plaintiffs comply with Section 2019.210.  That being said, in the interest of moving the litigation along, Apple is willing to begin the stipulated process of negotiating search terms and custodians, but reiterates its request that the parties first discuss and agree on a reasonable number of custodians before proceeding.  Plaintiffs' position appears to be that the parties can identify an infinite number of custodians, which is entirely unreasonable.

### "Apple's Deficient Document Production"

As Apple has explained previously, Apple's investigation of Plaintiffs' allegations in this case is ongoing and Apple will continue to produce documents on a rolling basis, as it has been doing.  Apple notes that its ability to search for, identify, and produce documents relevant to Plaintiffs' trade secret allegations has been hindered by Plaintiffs' failure to serve a Section 2019.210-compliant disclosure.

### Plaintiffs' Interrogatories Nos. 7-10

As noted above, to the extent these Interrogatories are related to Plaintiffs' trade secret allegations, trade secret discovery is stayed.  If Plaintiffs provide a Section 2019.210-compliant disclosure, Apple will meet and confer with Plaintiffs regarding the relevance and scope of these Interrogatories.

Exhibit 102
-787-

**GIBSON DUNN**

Stephen W. Larson
November 25, 2020
Page 5

### **"Apple Watch Series 6 and SE"**

As noted above, to the extent information requested regarding the Apple Watch Series 6 and SE is related to Plaintiffs' trade secret allegations, trade secret discovery is stayed.  If Plaintiffs provide a Section 2019.210-compliant disclosure, Apple will meet and confer with Plaintiffs regarding the relevance and scope of Plaintiffs' discovery requests.

\*       \*       \*

Apple is available to meet and confer with Plaintiffs on the following days and times:  Tuesday, December 1 between 11 and 12:30 pm PT or any time Thursday, December 3 after 10 am PT. Please let us know which date and time works for you.

Sincerely,

Brian K. Andrea

Exhibit 102
-788-