Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL REGARDING DOCUMENTS APPLE DESTROYED**<br><br>[Discovery Document: Referred to Magistrate Judge John D. Early]<br><br>Date: June 17, 2021<br>Time: 10:00 a.m.<br>Ctrm: 6A<br><br>Discovery Cut-Off:  7/5/2021<br>Pre-Trial Conference: 3/21/2022<br>Trial:  4/5/2022<br><br>Hon. James V. Selna<br>Magistrate Judge John D. Early |

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, *pro hac vice*
  bburoker@gibsondunn.com
BRIAN K. ANDREA, *pro hac vice*
  bandrea@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: 202.955.8541 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, *pro hac vice*
  brosenthal@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

Attorneys for Defendant Apple Inc.

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTORY STATEMENTS ........................................................................ 1
   A.   Plaintiffs' Introductory Statement ............................................................. 1
   B.   Defendant's Introductory Statement ......................................................... 2
II.  PLAINTIFFS' POSITION .......................................................................... 4
   A.   Factual Background ................................................................................ 4
   B.   Argument ................................................................................................. 6
       1.   The Missing Evidence Is Relevant And Responsive to Many Requests ......................................................................... 6
       2.   Apple Must Provide Information About The Missing Files ................. 7
       3.   The Court Need Not Resolve Apple's Obligation To Preserve Evidence ............................................................................... 9
   C.   Conclusion ............................................................................................. 10
III. APPLE'S POSITION .............................................................................. 10
   A.   Factual Background .............................................................................. 10
   B.   Argument ............................................................................................... 11
       1.   Apple Has Exceeded its Obligations in Response to Plaintiffs' Demands for Free Discovery and There is Nothing Further to Compel. ................................................................. 11
       2.   Plaintiffs' Fishing Expedition Lacks a Legal Basis ......................... 12
   C.   Conclusion ............................................................................................. 15

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37-2, Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Plaintiffs"), as movant, and Defendant Apple, Inc. ("Apple"), as respondent, through their respective counsel of record, submit this joint stipulation in connection with Masimo's motion to compel. Pursuant to Local Rule 37-1, the parties prepared this Joint Stipulation following the parties' conference of counsel, which took place on May 17, 2021.

## I. INTRODUCTORY STATEMENTS

### A. Plaintiffs' Introductory Statement

Plaintiffs seek to compel Apple to attempt to recover critical documents that Apple deleted or destroyed. At issue are the documents and files of two former Apple employees at the core of this case. The first is Marcelo Lamego, who was also Plaintiff Cercacor's Chief Technical Officer before Apple recruited him. Plaintiffs allege Lamego was one of the primary individuals who took Plaintiffs' trade secrets to Apple. The second is David Nazzaro, who is named as an inventor on two of the disputed patents that are the subject of Plaintiffs' correction of inventorship and ownership claims.

In February 2021—more than one year into the case and months after Apple agreed to produce responsive documents—Apple informed Plaintiffs it had destroyed all custodial files of Lamego and Nazzaro. Plaintiffs then sought basic information about the alleged destruction to determine if Apple could recover the documents. Apple maintains it had no obligation to keep the files and refuses to answer Plaintiffs' questions.

Plaintiffs explained their position that parties have an obligation to produce responsive information in their possession, custody, or control regardless of whether they *could* have legally discarded it. Plaintiffs also explained that Apple refused to provide sufficient information to evaluate Apple's legal obligations, including facts showing whether Apple reasonably anticipated litigation at the time of the alleged destruction. Those facts become important because Apple's positions in this case suggest ***Apple*** believes it had such an obligation to preserve the files. For example, Apple has repeatedly claimed that a letter Plaintiffs sent to Apple in January 2014 establishes the

date upon which Plaintiffs knew of their claims such that the statute of limitations bars them. Plaintiffs disagree. But Apple's characterization of what the letter supposedly conveyed suggests that Apple anticipated litigation as of January 2014. That would have triggered a preservation obligation well before Apple destroyed the documents.

On April 21, 2021, Apple cryptically informed Plaintiffs that Apple *did* actually have some of Lamego's documents. However, Apple refused to explain what documents it had, where they came from, or how they related to the documents that Apple claimed to have destroyed. To date, Apple has not produced the documents it claims to have found.

Plaintiffs are not seeking a finding of spoliation at this time. Plaintiffs seek Apple's cooperation in determining the extent to which the destroyed evidence may be recoverable and the resources that would be involved in recovering it. Apple states that it complied with its discovery obligations, but refuses to explain how. Plaintiffs are entitled to test Apple's assertions and whether this important evidence is recoverable.

Accordingly, Plaintiffs request the Court order Apple to: (1) take all reasonable steps to recover and produce responsive information from Lamego and Nazzaro; and (2) provide a report explaining the steps Apple took to recover the data. At a minimum, the Court should order Apple to provide the information that Plaintiffs requested to see if the parties can narrow or resolve the dispute themselves.

**B.      Defendant's Introductory Statement**

The documents that Plaintiffs demand are from employees who left Apple *six years ago*, and were deleted as part of Apple's routine data retention policies and procedures. Lacking any basis to suggest that Apple did anything wrong in following its standard policies and procedures in deleting the documents many years ago, Plaintiffs resort to an incorrect legal argument—that Apple is required to explain its efforts to recover documents that no longer exist. But that is not what Fed. R. Civ. P. 26(b)(2) requires. Apple is not refusing to search for documents on the basis of "undue burden or cost," which is the scenario Fed. R. Civ. P. 26 addresses. Rather, the documents were deleted per standard policy after the employees departed the company. One consequence

of Plaintiffs' choice to commence litigation years after the events at issue occurred is that certain documents relevant to those events may no longer be available. That is what happened here.

Importantly, Plaintiffs concede that they have no argument *at all* that Apple had any duty to preserve these documents so many years ago. Rather, Plaintiffs nonsensically suggest that Apple's duty to preserve is irrelevant to this motion. If Apple had no duty to preserve—which Plaintiffs do not dispute—there is no basis for Plaintiffs to spend so much time, and spill so much ink, over documents that were deleted as part of standard retention practices. Plaintiffs' suggestion that Apple somehow conceded that it had a duty to preserve these documents by arguing that Plaintiffs missed the statute of limitations is even more misguided. Apple has shown that Plaintiffs suspected Mr. Lamego of breaking his contract with Plaintiffs six years ago, and Apple looks forward to presenting additional evidence that supports that point. But that has nothing to do with Apple's duty to preserve documents. To the contrary, the whole point is that by waiting too long—until it was clear that the Apple Watch was wildly successful—Plaintiffs deprived Apple of the ability to gather all the relevant facts, which are gone because of the passage of time, not because Apple did anything wrong.

Although Plaintiffs frame this submission as a "motion to compel," there is nothing here to compel. Plaintiffs ask the Court to order Apple to "take all reasonable steps to recover and produce responsive information from Lamego and Nazzaro." J.S. at 2. Apple already did this, as outlined below and described in the accompanying declaration and Robin Goldberg ("Goldberg Decl."). Plaintiffs also demand "a report explaining the steps Apple took to recover the data." J.S. at 2. Although Apple disputes that Plaintiffs have any basis for this demand, Apple already provided Plaintiffs with a significant amount of information related to its search and collection efforts through numerous letters and meet-and-confer teleconferences that Plaintiffs demanded on this issue. Unsatisfied with the fact that the documents they seek simply are not available, Plaintiffs

///

-3-

continue to demand more information about Apple's search efforts.  Their pursuit of limitless free discovery into discovery should be put to rest for two main reasons:

***First***, the request is futile.  As explained in the attached Declaration of Robin Goldberg, Apple is already taking all reasonable steps to recover and produce responsive information, so a Court order compelling the *status quo* serves no purpose.

***Second***, the request is baseless. There is no legal entitlement to the "report" Plaintiffs ask the Court to compel Apple to write for them.  Plaintiffs insist that they are "not seeking a finding of spoliation," but this motion is a thinly veiled attempt to obtain free discovery in an attempt to bolster their "next step" in "[e]valuating potential spoliation." J.S. at 9.  All Plaintiffs cite is a small collection of non-binding caselaw from other jurisdictions where Courts ordered forensic analysis or sworn declarations in cases of suspected inadvertent or intentional abuse of the discovery process.  Plaintiffs do not (and cannot) allege that this case presents anything even close to similar factual circumstances as those presented in their cases.  Moreover, providing a "report" further documenting Apple's search efforts beyond that which Apple has already provided Plaintiffs would require Apple to divulge confidential information about Apple's proprietary in-house software and systems, as well as privileged information about steps taken by or at the direction of attorneys to locate and collect documents for litigation.

For all these reasons, Plaintiffs' baseless request should be firmly denied.

## II. **PLAINTIFFS' POSITION**

### A. **Factual Background**

Plaintiffs filed suit in January 2020, alleging claims for patent infringement, trade secret misappropriation, and correction of inventorship/ownership of Apple patents. Dkt. 1.  Plaintiffs' trade secret misappropriation allegations focus on confidential information Apple misappropriated through Plaintiffs' employees, including Lamego. *See e.g.,* Dkt. No. 296-1 at ¶¶ 21-25, 47-50, 58, 72, 86, 101, 117, 132, 147, 160, 173, 187, 202, 216, 228-244, 254-267.  Nazzaro is also a named inventor on patents that are the subject of Plaintiffs' correction of inventorship/ownership claims. *Id.* ¶ 268-274.

Plaintiffs served numerous discovery requests that call for Lamego and Nazzaro's documents, including RFP Nos. 110-116, 120, 121, 129, 217, 222, 223, 228-230, 234, 246, and 247.  For example, RFP 110 seeks: "All documents and things that tend to support or rebut any contention that the named inventors were properly identified as inventors on the Disputed Patents."  Ex. 1 at 11.[1]  Apple responded in August 2020 by agreeing to search for and produce responsive documents.  Ex. 2 at 77.  RFP No. 246 seeks: "All communications between Marcelo Lamego and any hospital or healthcare provider while Mr. Lamego worked at Apple."  Ex. 3 at 15.  Plaintiffs also included numerous other requests directed towards the "Former Employees," which is defined to include Lamego.  *See, e.g.,* Ex. 3 at 14.

On February 12, 2021, Apple informed Plaintiffs for the first time that Apple had destroyed all of Lamego and Nazzaro's files.  Ex. 4 at 14.  Plaintiffs asked Apple questions in a reasonable attempt to ascertain what happened and whether the data could be recovered.  *Id.* at 12-13.  Apple answered some questions.  *Id.* at 4-5, 11-12.  Apple vaguely asserted the files were "removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple."  *Id.* at 5.  On April 1, Apple refused to answer any further questions.  Ex. 8 at 7 ("The technical specifics of that process are irrelevant").  Plaintiffs repeated their questions in an attempt to obtain Apple's cooperation, but Apple refused.  Ex. 10 at 4; Ex. 11 at 4; Ex. 12 at 3-4; Ex. 14 at 3-4.

On April 21, 2021, Apple informed Plaintiffs it actually had some documents from Lamego.  Ex. 13 at 1.  Plaintiffs asked Apple for information about what it found.  Ex. 15 at 2-3.  To the extent Apple found Lamego's computer or an image of the computer, Plaintiffs asked Apple to produce the computer or image pursuant to Plaintiffs' requests.  Ex. 13 at 1.  Apple declined to answer Plaintiffs' question.  Ex. 16 at 6; Ex. 17 at 3.

///

---

[1] All exhibits in Plaintiffs' sections are attached to the Declaration of Adam B. Powell, filed concurrently.  All emphasis in Plaintiffs' sections is added unless noted otherwise.

On May 7, 2021, Plaintiffs served a Local Rule 37 letter reiterating the information Plaintiffs sought. Ex. 18. In particular, Plaintiffs asked Apple for the following:

(1) Whether Apple has files and emails for all of Plaintiffs' proposed custodians (the same question Apple asked of Plaintiffs and Plaintiffs answered).

(2) Whether Apple located a computer or image of a computer used by Lamego and, if so, whether Apple would produce the computer or image.

(3) An explanation of the distinction Apple was drawing between "destroying" and "removing" files, including what Apple does when it "removes" files, whether files are moved or copied to some other device, whether all copies are deleted, and whether the files are "wiped" or permanently destroyed.

(4) What software Apple uses to search emails, since most software would allow Apple to search multiple custodians for emails sent to/from Lamego.

(5) Whether Apple exported Lamego or Nazzaro's files for litigation or any other purpose.

(6) The timing of when Apple actually removed Lamego or Nazarro's files, as opposed to just the timing set forth in Apple's document retention policy.

(7) Whether Apple will maintain the files for all other individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area.

*Id.* at 1-2. Apple refused to answer topics 1 and 3-7. Ex. 19 at 2-3.[2] The parties met and conferred, but did not resolve the dispute. Powell Decl. ¶ 2. This Motion followed.

**B.     Argument**

  **1.     The Missing Evidence Is Relevant And Responsive to Many Requests**

Documents from Lamego and Nazarro are highly relevant. As discussed, Plaintiffs' trade secret misappropriation allegations focus on confidential information

---

[2] Apple's response on topic 1 "confirmed" that Apple saved files and emails "in accordance with its data retention policy." Ex. 19 at 2. However, because Apple also asserts it acted "in accordance with its data retention policy" for the Lamego and Nazzaro files that it destroyed (*id.* at 3), it is unclear if Apple has the files referenced in question 1.

Apple misappropriated through Plaintiffs' employees, including Lamego. *See e.g.,* Dkt. No. 296-1 at ¶¶ 21-25, 47-50, 58, 72, 86, 101, 117, 132, 147, 160, 173, 187, 202, 216, 228-244, 254-267. Lamego's documents are likely to be highly probative of the information he took, how he disclosed or used it, and Apple's knowledge or intent. Lamego is likely to be a key witness in this litigation, and his electronic files are likely to be among the most important in the case. Nazzaro is also a named inventor on patents that are the subject of Plaintiffs' correction of inventorship/ownership claims. *Id.* ¶ 268-274. Moreover, Lamego and Nazarro's files are also responsive to numerous discovery requests. Indeed, Apple disclosed it had "removed" these files in the context of meeting and conferring regarding whether Apple would produce ESI discovery. Ex. 4 at 11.

### 2. Apple Must Provide Information About The Missing Files

Since learning Apple destroyed the files, Plaintiffs asked Apple basic questions to evaluate what happened, including what Apple meant by "removed," whether the files had been permanently deleted, whether there might be backups, and whether the files could be recovered. Ex. 4 at 2. Apple demanded authority regarding whether "Apple was obligated to maintain the files of Messrs. Lamego and Nazzaro." Ex. 8 at 7; Ex. 11 at 4; Ex. 14 at 3; Ex. 16 at 6; Ex. 19 at 1-3. Apple's demand obfuscates the predicate issue of the availability or recoverability of the files.

Under the Federal Rules, a party responding to discovery may show that ESI is not "reasonably accessible" due to burden or cost. *See* Fed. R. Civ. P. 26(b)(2). However, a court "may nonetheless order discovery from such sources if the requesting party shows good cause." *Id.* The Committee Notes explain that, if there are "sources containing potentially responsive information" that the responding party "is neither searching nor producing[,]" then the responding party should "***provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources***." Fed. R. Civ. P. 26(b)(2) advisory committee's note to 2006 amendment; *see also Mikron Indus., Inc. v. Hurd Windows & Doors, Inc.*, 2008 WL 1805727, at *1 (W.D. Wash. Apr. 21, 2008)

(quoting advisory committee notes and denying protective order for failure to demonstrate the ESI was not "reasonably accessible").

Plaintiffs sought only what the advisory committee notes explain Apple should have provided: information about the recoverability of the files and the cost of doing so. Apple should have cooperated with Plaintiffs in answering Plaintiffs' reasonable questions. *See Mikron*, 2008 WL 1805727, at *1 (finding defendant failed to meet and confer in good faith because "compliance with the Rule would have involved a more substantive discussion regarding defendants' difficulty in producing responsive ESI").

Because Apple refused to provide the requested information, Plaintiffs seek an order requiring Apple to take all reasonable efforts to recover the data and provide a report explaining the steps it took. Courts issue similar orders when documents may be recoverable. *See, e.g., Koninklijke Philips Elecs. N.V. v. KXD* Tech., Inc., 2007 WL 879683, at *6 (D. Nev. Mar. 20, 2007) (requiring declaration and reserving "the option to appoint a neutral computer forensic expert as a special master to investigate" any claims that the information was not recoverable); *Cook v. Manny*, 2011 WL 13124639, at *2-3 (E.D. Tenn. Jan. 6, 2011) (requiring declaration setting forth efforts to locate electronic data, including "architectural structure for [party's] computer systems" that is "specific and detailed"); *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-cv-00456-JRG, Dkt. 52 (E.D. Tx. Apr. 27, 2018) (requiring declaration setting forth efforts to comply and locate documents).

Plaintiffs' requested relief is reasonable and appropriate. Indeed, some courts have gone even further by ordering forensic investigations of computer systems that previously contained the information. *See, e.g.*, *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D. Minn. 2002) (collecting cases analyzing a party's obligation to attempt to recover deleted data and ordering forensic investigation); *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1054 (S.D. Cal. 1999) (ordering forensic investigation); *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 643-644 (S.D. Ind. 2000) (same). Plaintiffs are not yet requesting a forensic investigation. Instead, Plaintiffs

simply ask Apple to cooperate in attempting to recover the data, or at least providing facts to evaluate whether the information can be recovered.

### 3. The Court Need Not Resolve Apple's Obligation To Preserve Evidence

Apple's preservation obligation may, eventually, be relevant if the information is not recoverable. However, that is not presently at issue. Apple is required to produce "any nonprivileged matter" in its possession, custody, and control regardless of whether it was required to have preserved such information. Fed. R. Civ. P. 26(a)(1)(A)(ii), (b)(1). Apple thus has it backward when it asserts that Apple's "obligation" is a "simple gating question that will dictate whether Plaintiffs' inquiries have any relevance." Ex. 19 at 1. Apple must first cooperate in determining whether the requested information is available. If it is not, then the Court may need to determine if Apple improperly rendered the information unavailable. Evaluating potential spoliation is not a prerequisite to complying with Rule 26—it is the next step if the information is unavailable.

Apple's positions in this case suggest it subjectively believed it had an obligation to preserve the deleted files. Apple twice argued that Plaintiffs' January 2014 letter to Apple regarding Apple's hiring of Lamego meant Plaintiffs were sufficiently "on notice of their claim" to trigger the statute of limitations. Ex. 20 at 6-9; Ex. 21 at 3-4. Specifically, Apple argued "Plaintiffs were 'concerned' and 'suspicious' that Lamego 'would take proprietary information with him . . . .'" Ex. 20 at 7. The Court disagreed with Apple's statute of limitations arguments and denied Apple's motion to dismiss on that point. Dkt. 60 at 5-6. However, Apple's arguments suggest Apple believed that employing Lamego in the area of "healthcare technology," which Apple chose to do, was reasonably likely to give rise to claims of trade secret misappropriation. For Apple to have complied with Rule 11 for its statute of limitations allegations, Apple would have had to believe it was reasonable to anticipate litigation after it received the letter, which would have triggered a duty to preserve. Thus, while unnecessary to resolve the present dispute, Apple's own arguments suggest Apple anticipated possible litigation, thus creating an obligation to preserve Lamego's documents.

## C. Conclusion

Plaintiffs request the Court order Apple to: (1) take all reasonable steps to recover and produce responsive information from Lamego and Nazzaro; and (2) provide a report explaining the steps Apple took to recover the data. At a minimum, the Court should order Apple to provide the information that Plaintiffs requested to see if the parties can narrow or resolve the dispute themselves.

## III. APPLE'S POSITION

### A. Factual Background

In the course of the parties' initial exchanges of proposed ESI custodians, Apple informed Plaintiffs that Apple no longer possesses the email files for Messrs. Lamego and Nazzaro, who have not been Apple employees since 2014. Powell Decl. Ex. 4 at 85. Plaintiffs responded on February 15, 2021 with a litany of questions about Apple's internal policies, processes, and technological capabilities. *Id.* at 83–84. Apple addressed Plaintiffs' specific questions in writing on February 17, 2021. *Id.* at 80. Plaintiffs responded on February 24, 2021, piling on a new set of questions. *Id.* at 78–79. In the spirit of cooperation, Apple responded on March 3 with further information about its policies and processes for removing emails of former employees from Apple's systems, and explained how those processes applied to the files of Messrs. Lamego and Nazzaro. *Id.* at 75–77. Although Apple provided information sufficient to establish that the former employees' emails and files were deleted years before Plaintiffs filed this litigation, Plaintiffs refused to accept this fact.

Over the next two months, Plaintiffs continued to ask various iterations of the same questions. *Id.* Ex. 5–19. Apple offered that it was "willing to provide additional information if warranted," but first "request[ed] an explanation as to why Plaintiffs continue to request this information." *Id.* Ex. 5. Plaintiffs refused to provide a basis, instead insisting they need "facts to determine why the files were deleted and whether they can be recovered from another source." *Id.* Ex. 6. Apple continued to explain that

///

-10-

the email files were deleted consistent with Apple's data retention policies and procedures, and that they could not, in fact, be recovered.

No matter how cooperative Apple has been with each of Plaintiffs' numerous overreaching requests, Plaintiffs come back asking for even more, while adamantly resisting Apple's inquiries about whether Plaintiffs even contend Apple had any obligation to preserve the documents. Plaintiffs have never accused Apple of violating preservation obligations and continue to insist that preservation obligations are "not presently at issue." J.S. at 9. Without any basis for doing so, Plaintiffs move to "compel," demanding that Apple must "cooperate in determining whether the requested information is available." *Id.* But that determination has already been made, and no further action is warranted.

**B.** <u>Argument</u>

    **1.**    <u>**Apple Has Exceeded its Obligations in Response to Plaintiffs' Demands for Free Discovery and There is Nothing Further to Compel.**</u>

As a threshold matter, it bears noting that this motion to "compel" does not seek a response to a discovery request or proposed Rule 30(b)(6) deposition topics. Rather, this motion is predicated on a series of informal questions that Plaintiffs have asked through meet and confer letters. Apple has answered these questions truthfully—and repeatedly—but Plaintiffs filed this motion because they don't want to accept the truth.

Even if that were a proper posture for bringing a motion, the relief Plaintiffs seek is futile. In accordance with Apple's standard data retention policies and procedures, Apple removed the email data for Messrs. Lamego and Nazzaro years before Plaintiffs filed suit. Goldberg Decl. ¶ 9 (confirming that e-mail data for both individuals was removed from Apple's systems in 2014 and "no longer accessible and recoverable."). This is consistent with Apple's standard practices for removing data stored on the mail server for employees who depart Apple. *Id.* ¶ 5. Apple has engaged in a good forth effort to determine whether any email data or other documents for Messrs. Lamego and Nazzaro could be retrieved or restored. *Id.* ¶ 11. Although no data for Mr. Nazzaro was

identified, Apple did identify some data for Mr. Lamego, including some locally saved e-mails. *Id.* Apple is producing those documents to Plaintiffs to the extent they are relevant and non-privileged, and has agreed to Plaintiffs' request that Mr. Lamego be named an ESI custodian. Therefore, pursuing an order "compelling" Apple to "take all reasonable steps to recover and produce responsive information from Lamego and Nazzaro" is a waste of judicial resources, as those steps have already been taken and Apple is producing any responsive information from Messrs. Lamego and Nazzaro that it has located.

Not only would the "report" Plaintiffs seek do nothing to bring the deleted files back, having to provide such a "report" would prejudice Apple, a company that carefully safeguards the confidentiality and privacy of its proprietary internal systems for data storage and handling. *See* Goldberg Decl. ¶ 12. Apple's specific processes and systems for handling data, including its software for searching e-mail data, are developed in-house by Apple and strictly maintained as confidential and proprietary. *Id.* ¶ 12. Requiring the filing of a report divulging the specifics of these systems is wholly unmerited where, as here, Apple has provided sufficient information to conclude that the information sought is not in its possession, custody, and control. As discussed in the section below, there is no basis for demanding more.

### 2. Plaintiffs' Fishing Expedition Lacks a Legal Basis

Plaintiffs have been relentless in their pursuit of information about Apple's "software" and "systems." Apple has asked Plaintiffs repeatedly for the legal basis for their persistent demands for a dossier on Apple's internal data retention systems, and Plaintiffs provided none. Where, as here, the information sought is "collateral to the relevant issues (i.e., discovery on discovery)," the party seeking discovery must provide an adequate basis for doing so, and "the Court must closely scrutinize the request 'in light of the danger of extending the already costly and time-consuming discovery process *ad infinitum.*" *Winfield v. City of N.Y.*, 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018). "Courts typically look upon such discovery 'with skepticism and it is strongly

discouraged.'" *Perez v. DirecTV Grp. Holdings, LLC*, 2020 WL 5875026, at *2 (C.D. Cal. Aug. 17, 2020) (citing *Fish v. Air & Liquid Sys. Corp.*, 2017 WL 697663, at *17 (D. Ma. Feb. 21, 2017)). Despite Apple's repeated requests over the past two months that Plaintiffs provide the legal and factual basis for their demands, the only authorities Plaintiffs cite are advisory committee notes from the 2006 amendments to Fed. R. Civ. P. 26(b)(2) and a handful of distinguishable cases from other jurisdictions. Both are inapposite.

First, Fed. R. Civ. P. 26(b)(2) applies when a party contends that requested discovery is "not reasonably accessible because of undue burden or cost." The advisory committee notes to Fed. R. Civ. P. 26(b)(2) only address situations in which there are "sources containing potentially responsive information" that the responding party "is neither searching nor producing." But this dispute is not about the "burden or cost" of producing documents, and there are no "sources containing potentially responsive information" that Apple refuses to the search. Therefore, it would be futile to compel Apple to "provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery," as the advisory committee suggests should be done when sources of potentially responsive information exist. Here, Apple has searched in all places within Apple's data storage systems where such data may reside and determined the documents are no longer accessible or recoverable. Goldberg Decl. ¶¶ 10–11. The unavailability of these documents is not because of nefarious "destruction of evidence" on Apple's behalf, but because Plaintiffs chose to wait to bring a lawsuit in which they consider Mr. Lamego and Mr. Nazzaro to be "critical" witnesses until half a decade after these individuals left Apple. Apple has done what it can to search for their data, and there is nothing for the Court to compel.

Second, the assortment of cases Plaintiffs cite from non-binding jurisdictions are all clearly distinguishable. Importantly, none of them address comparable situations where the removal of data was consistent with a standard document retention policy. Moreover, unlike in almost every one of Plaintiffs' cases, the Court here has not

-13-

expressed "skepticism" or identified any "troubling discrepancies" with regard to Apple's integrity in complying with discovery obligations. *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 2007 WL 879683, at *4 (D. Nev. Mar. 20, 2007) (viewing defendants' contention that its hard drives subject to a seizure order were lost or damaged "with a substantial degree of skepticism"); *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000) (ordering inspection based in part on the fact that plaintiff "has shown in its motion papers some troubling discrepancies with respect to defendant's document production"); *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1051–54 (S.D. Cal. 1999) (ordering inspection of personal computer where plaintiff alleged defendant "continues to presently delete" requested email communications). In contrast to the examples Plaintiffs point to, Apple is not a *pro se* litigant, who "may not appreciate the nature of the discovery process" and is susceptible to "inadvertently or intentionally" mishandling data. *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 650–52 (D. Minn. 2002) (ordering forensic examination because of risk that *pro se* defendants who may not understand their discovery obligations would overwrite data still on a hard drive). Where, as here, there is no "strong showing"—or any showing at all—that Apple has "somehow defaulted" in its obligations to produce responsive data, "the court should not resort to extreme, expensive, or extraordinary means" to guarantee compliance. *Powers v. Thomas M. Cooley Law School*, 2006 WL 2711512 (W.D. Mich. Sept. 21, 2006) (rejecting request for forensic inspection).

This is also not a situation where Apple delayed searching or simply failed to conduct an adequate search. *Cf. Cook v. Manny*, 2011 WL 13124639, at *2 (E.D. Tenn. Jan. 6, 2011) (requiring declaration where defendant "only searched its e-mail files and no other computer files"); *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-cv-00456-JRG, Dkt. 52 (E.D. Tx. Apr. 27, 2018) (requiring declaration where defendant maintained it was "in the process of producing" relevant documents without "an excuse for delay as to initiating searches"). Rather, the documents here cannot be searched because they were removed consistent with Apple's standard data retention policies and

procedures. Goldberg Decl. ¶¶ 5–7. Apple has conducted a reasonable search, *id.* at ¶¶ 10–11, and is producing relevant and non-privileged documents to Plaintiffs. Apple has thus satisfied its discovery obligations and there is no basis to demand Apple do anything further or author the "report" Plaintiffs seek.

In similar circumstances, with no allegations of discovery abuse, Courts have rejected attempts to gain "discovery on discovery" regarding "efforts to collect…documents and ESI." *Bombardier Rec. Prods., Inc.v. Arctic Cat, Inc.*, 2014 WL 10714011, at *14 (D. Minn. Dec. 5, 2014) (rejecting proposed 30(b)(6) topic "designed to elicit information concerning [defendant's] discovery efforts" and "tread[ing] dangerously close to encroaching on attorney work product privilege.").

### C. Conclusion

Plaintiffs' demand is futile and baseless and should therefore be denied.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 27, 2021        By: */s/ Adam B. Powell*
    Joseph R. Re
    Stephen C. Jensen
    Benjamin A. Katzenellenbogen
    Perry D. Oldham
    Stephen W. Larson
    Mark D. Kachner
    Adam B. Powell

    Attorneys for Plaintiffs
    MASIMO CORPORATION and
    CERCACOR LABORATORIES, INC.

GIBSON, DUNN & CRUTCHER LLP

Dated: May 27, 2021        By: */s/ Brian K. Andrea (with permission)*
    Joshua H. Lerner
    H. Mark Lyon
    Brian M. Buroker
    Brian A. Rosenthal

Ilissa Samplin
Angelique Kaounis
Brian K. Andrea

Attorneys for Defendant
APPLE INC.

34933034