1  Joseph R. Re (Bar No. 134479)
   joseph.re@knobbe.com
2  Stephen C. Jensen (Bar No. 149894)
   steve.jensen@knobbe.com
3  Benjamin A. Katzenellenbogen (Bar No. 208527)
   ben.katzenellenbogen@knobbe.com
4  Perry D. Oldham (Bar No. 216016)
   perry.oldham@knobbe.com
5  Stephen W. Larson (Bar No. 240844)
   stephen.larson@knobbe.com
6  **KNOBBE, MARTENS, OLSON & BEAR, LLP**
   2040 Main Street, Fourteenth Floor
7  Irvine, CA 92614
   Telephone: (949) 760-0404; Facsimile: (949) 760-9502
8
   Adam B. Powell (Bar. No. 272725)
9  adam.powell@knobbe.com
   **KNOBBE, MARTENS, OLSON & BEAR, LLP**
10 3579 Valley Centre Drive
   San Diego, CA 92130
11 Telephone: (858) 707-4000; Facsimile: (858) 707-4001

12 Attorneys for Plaintiffs,
   MASIMO CORPORATION and CERCACOR LABORATORIES, INC.
13
14            **IN THE UNITED STATES DISTRICT COURT**
15            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
16                      **SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**DECLARATION OF ADAM B. POWELL IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL REGARDING DOCUMENTS APPLE DESTROYED**<br><br>[Discovery Document: Referred to Magistrate Judge John D. Early]<br><br>Date:      June 17, 2021<br>Time:      10:00 a.m.<br>Ctrm:      6A<br><br>Discovery Cut-Off:      7/5/2021<br>Pre-Trial Conference:  3/21/2022<br>Trial:      4/5/2022 |

I, Adam B. Powell, hereby declare as follows:

1.     I am a partner in the law firm of Knobbe, Martens, Olson & Bear, LLP, counsel for Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc. ("Cercacor") (collectively, "Plaintiffs") in this action.  I have personal knowledge of the matters set forth in this declaration and, if called upon as a witness, would testify competently thereto.  I submit this Declaration in Support of Plaintiffs' Motion To Compel regarding Documents Apple Destroyed (the "Motion").

2.     On May 17, 2021, I participated in a meet and confer with counsel for Apple regarding the issues that are the subject of Plaintiffs' Motion.  The parties discussed their respective positions at length for approximately one hour, but were unable to resolve the disputes that are the subject of Plaintiffs' Motion.

3.     Attached hereto as **Exhibit 1** is a true and correct copy of Plaintiffs' Third Set of Requests for Production (Nos. 61-147).

4.     Attached hereto as **Exhibit 2** is a true and correct copy of excerpts of Apple's Objections and Responses to Plaintiffs' Third Set of Requests for Production.

5.     Attached hereto as **Exhibit 3 [Filed Under Seal]** is a true and correct copy of Plaintiffs' Fifth Set of Requests for Production (Nos. 173-248).

6.     Attached hereto as **Exhibit 4** is a true and correct copy of a March 9, 2021, email chain between myself and Brian Andrea, who is counsel of record for Apple.

7.     Attached hereto as **Exhibit 5 [Filed Under Seal]** is a true and correct copy of a March 17, 2021, letter from Mr. Andrea to me.

8.     Attached hereto as **Exhibit 6 [Filed Under Seal]** is a true and correct copy of a March 23, 2021, letter from myself to Mr. Andrea.

9.     Attached hereto as **Exhibit 7** is a true and correct copy of a March 25, 2021, letter from myself to Mr. Andrea.

10.     Attached hereto as **Exhibit 8 [Filed Under Seal]** is a true and correct copy of an April 1, 2021, letter from Mr. Andrea to me.

11.     Attached hereto as **Exhibit 9** is a true and correct copy of an April 2, 2021, email chain from Mr. Andrea to me.

12.     Attached hereto as **Exhibit 10 [Filed Under Seal]** is a true and correct copy of an April 7, 2021, letter from myself to Mr. Andrea.

13.     Attached hereto as **Exhibit 11** is a true and correct copy of an April 14, 2021, letter from Mr. Andrea to me.

14.     Attached hereto as **Exhibit 12** is a true and correct copy of an April 21, 2021, letter from myself to Mr. Andrea.

15.     Attached hereto as **Exhibit 13** is a true and correct copy of an April 24, 2021, email chain from myself to Mr. Andrea.

16.     Attached hereto as **Exhibit 14** is a true and correct copy of an April 29, 2021, letter from Mr. Andrea to me.

17.     Attached hereto as **Exhibit 15** is a true and correct copy of a May 1, 2021, letter from myself to Mr. Andrea.

18.     Attached hereto as **Exhibit 16** is a true and correct copy of a May 4, 2021, letter from Mr. Andrea to me.

19.     Attached hereto as **Exhibit 17** is a true and correct copy of a May 5, 2021, letter from myself to Mr. Andrea.

20.     Attached hereto as **Exhibit 18** is a true and correct copy of a May 7, 2021, letter from myself to Mr. Andrea.

21.     Attached hereto as **Exhibit 19** is a true and correct copy of a May 14, 2021, letter from myself to Mr. Andrea.

22.     Attached hereto as **Exhibit 20** is a true and correct copy of Memorandum of Points and Authorities in Support of Defendant Apple Inc.'s Motion to Dismiss, filed at Dkt. No. 16-1 in this case.

23.     Attached hereto as **Exhibit 21** is a true and correct copy of Memorandum of Points and Authorities in Support of Defendant Apple Inc.'s Motion to Dismiss the

1  Thirteenth Cause of Action for Trade Secret Misappropriation in Plaintiffs' First
2  Amended Complaint, filed at Dkt. No. 38-1 in this case.

3      24.    Per L.R. 37-2.1, attached hereto as **Exhibit 22** is a true and correct copy of
4  the April 17, 2020, initial scheduling order, filed at Dkt. No. 37 in this case.  Also
5  included is the Court's September 21, 2020, order granting the parties stipulation to
6  amend the scheduling order, filed at Dkt. No. 205, and the redacted version of the Court's
7  October 13, 2020, Order Regarding Motion for Stay, filed at Dkt. No. 222, in this case.

8      I declare under the penalty of perjury that the foregoing is true and correct.
9  Executed on May 27, 2021, at Irvine, California.

10                      */s/ Adam B. Powell*
                            Adam B. Powell
11

12  34933253

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone:  (949) 760-0404; Facsimile:  (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
12790 El Camino Real
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
Masimo Corporation and Cercacor Laboratories, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | ) Case No. 8:20-cv-00048-JVS-JDE<br>)<br>) **PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT APPLE INC. (NOS. 61-147)**<br>)<br>)<br>) Hon. James V. Selna<br>) Magistrate Judge John D. Early<br>)<br>) |

**Exhibit 1**
-4-

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs MASIMO CORPORATION ("Masimo") and CERCACOR LABORATORIES, INC. ("Cercacor") (collectively, "Plaintiffs") hereby request that Defendant APPLE INC. ("Apple") respond to the following Requests for the Production of Documents and Things (the "Requests") within thirty (30) days of service of these Requests and produce the documents and things described herein at the offices of counsel for Plaintiffs within the time prescribed by the Federal Rules of Civil Procedure.  These Requests are deemed continuing in nature, requiring amended or supplemental responses as necessary.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used in these Requests, the following terms are to be interpreted in accordance with these definitions:

1.    The terms "Apple," "Defendant," "You," and "Your" mean Defendant Apple, Inc., as well as any present or former officer, director, employee, agent, attorney, or other representative acting for or on behalf of Defendant Apple, Inc.

2.    "Masimo" means Masimo Corporation, including its divisions, departments, parents, subsidiaries, affiliates or predecessors.

3.    "Cercacor" means Cercacor Laboratories, Inc., including its divisions, departments, parents, subsidiaries, affiliates or predecessors.

4.    The term "Plaintiffs" means Masimo and Cercacor as defined above.

5.    "Masimo Asserted Patents" means the patents Plaintiffs are asserting in this case, including U.S. Patent No. 10,258,265, U.S. Patent No. 10,258,266, U.S. Patent No. 10,292,628, U.S. Patent No. 10,299,708, U.S.

-1-

Exhibit 1
-5-

Patent No. 10,376,190, U.S. Patent No. 10,376,191, U.S. Patent No. 10,470,695, U.S. Patent No. 6,771,994, U.S. Patent No. 8,457,703, U.S. Patent No. 10,433,776, U.S. Patent No. 10,588,553, and U.S. Patent No. 10,588,554.  To the extent Masimo asserts additional patents in a future pleading, "Masimo Asserted Patents" shall be construed to include such patents.

6.    "Apple Watch Products" means smartwatches produced by Apple, including the Original Apple Watch, Apple Watch Series 1, Apple Watch Series 2, Apple Watch Series 3, Apple Watch Series 4, Apple Watch Series 5, and any subsequent series of the Apple Watch.

7.    "Apple iOS Products" means products that use Apple's mobile iOS operating system.

8.    "Accused Products" means Apple Watch Series 4 or later, as well as the combination of Apple Watch Series 4 or later with an Apple iOS Product.

9.    The "Disputed Patents" means the patents or patent applications that Plaintiffs assert should have their inventorship and/or ownership corrected, including U.S. Patent No. 10,078,052, U.S. Patent No. 10,247,670, U.S. Patent No. 9,952,095, and U.S. Patent No. 10,219,754, U.S. Patent No. 10,524,671, and U.S. Patent App. No. 15/960,507.  To the extent Plaintiffs identify additional such patents or patent applications in a future pleading, "Disputed Patents" shall be construed to include such patents.

10.    The term "documents" shall be construed to include all writings and graphics of any sort whatsoever, together with any data stored in electronic or any other form, including, but not limited to, books, records, microfilm, tape or video recordings, emails, voice mails, handwritten notes, phone messages, pictures, and all copies of such documents except those that are identical in every respect to the original document.

11.    The term "things" shall mean all tangible objects of any type, composition, construction, or nature.

Exhibit 1
-6-

12.     The term "and" shall be construed to include "or" and vice versa, and each of them shall be the logical equivalent of "and/or."

13.     The term "concerning" shall mean relating to, referring to, describing, evidencing, or constituting.

14.     The term "communication" shall mean and refer to the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

15.     The use of the singular form of any word also includes the plural and vice versa, and a verb tense includes all other verb tenses wherever possible.

## INSTRUCTIONS

1.     Produce all documents specified below that are in Your possession, custody, or control, or otherwise known and available to You, Your agents, employees, representatives, investigators, attorneys or their agents, employees, representatives, or investigators at the time and place indicated.

2.     If You claim that any requested documents or things are privileged, then provide all information falling within the scope of the Request that is not privileged and identify with sufficient particularity for purposes of a motion to compel the information, document, or thing, separately, with respect to which You claim a privilege, and state:

a.     the basis on which the privilege is claimed;

b.     the author or creator of the information, document, or thing;

c.     each individual or other person to whom the information, document, copy thereof, or thing was sent or otherwise disclosed; and

d.     the date of the information or document.

3.     If You are aware of the existence, past or present, of a requested document or thing, but the document or thing is not in Your possession, custody, or control, then so state in Your response to the request for that document or thing.  Identify such document or thing and identify, by name, title, and address, the person who last maintained possession, custody, or control of

-3-

**Exhibit 1**
-7-

the document or thing.  If the requested document or thing no longer exists, then Your response should state when, how, and why this is the case.

4.      Produce each requested document or thing along with all non-identical drafts thereof.  Furthermore, produce each document in its entirety, without abbreviation or redaction.

5.      Identify specifically the derivation and source of each document and thing to be produced.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 61:**

All documents and things that tend to support or rebut any of Your affirmative defenses to Plaintiffs' causes of action other than trade secret misappropriation.

**REQUEST FOR PRODUCTION NO. 62:**

All documents and things that tend to support or rebut any contention that Masimo has not been harmed by Your acts, other than trade secret misappropriation, alleged to be improper in this case.

**REQUEST FOR PRODUCTION NO. 63:**

Documents sufficient to show any heart rate algorithms used in any of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 64:**

All documents and things that refer or relate to selection between any heart rate algorithm used in any of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 65:**

All documents and things that refer or relate to power consumption by any heart rate algorithm used in any of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 66:**

All documents and things that refer or relate to any testing and/or analysis of the properties and/or characteristics of any of the Apple Watch Products or

Exhibit 1
-8-

any component of any of the Apple Watch Products that relate to pulse rate detection, pulse rate measurement, power consumption by pulse rate detection, or power consumption by pulse rate measurement, including, without limitation, testing protocols, reports, results, notes, and summaries.

**REQUEST FOR PRODUCTION NO. 67:**

All documents and things concerning any attempt to obtain FDA approval of any of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 68:**

All documents and things concerning the FDA approval of any of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 69:**

All documents and things submitted to or received from the FDA or any other governmental agency that refer or relate to the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 70:**

All documents and things that refer or relate to clinical trials of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 71:**

Documents sufficient to identify all persons involved in the research, design, and development of any physiological monitoring capability of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 72:**

All documents concerning any changes made to any of the Apple Watch Products' firmware, software, or comments thereto that relate to physiological monitoring.

**REQUEST FOR PRODUCTION NO. 73:**

All documents concerning any changes made to firmware, software, or comments thereto, between the Apple Watch Series 3 and Apple Watch Series 4 and later.

Exhibit 1
-9-

**REQUEST FOR PRODUCTION NO. 74:**

All documents and things that refer or relate to the performance of non-invasive physiological measurements for the Apple Watch Series 3.

**REQUEST FOR PRODUCTION NO. 75:**

All documents and things that refer or relate to the performance of non-invasive physiological measurements for the Apple Watch Series 4 and later.

**REQUEST FOR PRODUCTION NO. 76:**

All documents and things that refer or relate to changes in the performance of non-invasive physiological measurements between the Apple Watch Series 3 and the Apple Watch Series 4.

**REQUEST FOR PRODUCTION NO. 77:**

All documents and things that refer or relate to changes in the performance of non-invasive physiological measurements between the Apple Watch Series 4 and the Apple Watch Series 5.

**REQUEST FOR PRODUCTION NO. 78:**

The complete source code, including prior versions, revisions, and comments, that relates to the following features of Apple Watch Products: LEDs, photodiodes, duty cycle, changes in measurement modes, heart rate context, calculation of physiological parameters based on detected optical signals, determination of heart rate, the health application, the breathe application, and communications of physiological parameters to Apple iOS Products.

**REQUEST FOR PRODUCTION NO. 79:**

The complete source code, including prior versions, revisions, and comments, that relates to the following features of Apple iOS Products: communication of physiological parameters from Apple Watch Products, the health application, and tracking of physiological parameters over time.

Exhibit 1
-10-

**REQUEST FOR PRODUCTION NO. 80:**

All documents including all communications discussing the importance of accurate measurements for pulse rate, heart rate, plethysmograph, or detecting arrhythmia to the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 81:**

All documents including all communications discussing the importance of accurate measurements for pulse rate, heart rate, plethysmograph, or detecting arrhythmia in the marketplace.

**REQUEST FOR PRODUCTION NO. 82:**

All documents including all communications related to complaints, concerns, or criticisms about the accuracy or reliability of measurements for pulse rate, heart rate, plethysmograph, or detecting arrhythmia for any Apple Watch Product.

**REQUEST FOR PRODUCTION NO. 83:**

All documents and things that refer or relate to the use, effectiveness, capabilities, functionality, or characteristics of the physiological monitoring features of any of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 84:**

Documents sufficient to show any algorithm used to monitor any physiological parameter in any of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 85:**

All documents and things referring or relating to, or otherwise evidencing, factors Apple considered when selecting technology that it used to monitor any physiological parameter, for use in Defendant's products.

**REQUEST FOR PRODUCTION NO. 86:**

All documents and things referring or relating to, or otherwise evidencing, the parameters by which Defendant or its customers evaluates the performance of physiological parameter monitoring technology.

Exhibit 1
-11-

**REQUEST FOR PRODUCTION NO. 87:**

All documents and things referring or relating to Apple's efforts to train its sales and marketing personnel on measurements for pulse rate, heart rate, plethysmograph, or detecting arrhythmia.

**REQUEST FOR PRODUCTION NO. 88:**

All documents and things referring or relating to, or otherwise evidencing, any Apple policies, procedures, or guidelines for employees relating to the documentation of research and development efforts.

**REQUEST FOR PRODUCTION NO. 89:**

All documents and things that refer or relate to Masimo or Cercacor.

**REQUEST FOR PRODUCTION NO. 90:**

All documents and things that refer or relate to any Masimo or Cercacor product or technology.

**REQUEST FOR PRODUCTION NO. 91:**

All documents and things that refer or relate to any communication about Masimo or Cercacor, or any Masimo or Cercacor product or technology.

**REQUEST FOR PRODUCTION NO. 92:**

All documents and things that refer or relate to technical information, specifications, or research data for any Masimo or Cercacor product or technology.

**REQUEST FOR PRODUCTION NO. 93:**

All documents and things that refer or relate to the use, effectiveness, capabilities, functionality, or characteristics of any Masimo or Cercacor product or technology.

**REQUEST FOR PRODUCTION NO. 94:**

All documents and things that relate to how any Masimo or Cercacor product or technology is designed or manufactured.

/ / /

Exhibit 1
-12-

**REQUEST FOR PRODUCTION NO. 95:**

All documents and things relating to any analysis, study, investigation, or test of any Masimo or Cercacor product or technology by Apple, including without limitation, emails, test results, notes, memoranda, and the actual products or systems examined.

**REQUEST FOR PRODUCTION NO. 96:**

All documents and things that refer or relate to any analysis, reverse engineering, and/or study of any Masimo or Cercacor product or technology.

**REQUEST FOR PRODUCTION NO. 97:**

All and things that refer or relate to any comparison between any Masimo or Cercacor product or technology and any of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 98:**

All documents and things referring or relating to forecasts or projections regarding sales, revenue, expenses, and/or profit associated with changes between the Apple Watch Series 3 and the Apple Watch Series 4.

**REQUEST FOR PRODUCTION NO. 99:**

All documents and things referring or relating to forecasts or projections regarding sales, revenue, expenses, and/or profit associated with changes between the Apple Watch Series 4 and the Apple Watch Series 5.

**REQUEST FOR PRODUCTION NO. 100:**

All documents and things that relate to any comparison of any of the Apple Watch Products to any of the Masimo or Cercacor products or technologies.

**REQUEST FOR PRODUCTION NO. 101:**

All documents and things concerning any competitive analysis of any competitor to the Apple Watch Products.

/ / /

/ / /

-9-

Exhibit 1
-13-

**REQUEST FOR PRODUCTION NO. 102:**

All documents and things related to Apple's evaluation of the health care market for Apple products including the Apple Watch Products, including but not limited to market size, market importance to Apple's business, evaluation of target customers, and Apple's considerations in entering the health care market.

**REQUEST FOR PRODUCTION NO. 103:**

All documents and things relating to differences, similarities, or comparisons between the consumer market and the health care market for Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 104:**

All documents and things that relate to Apple's efforts to promote and/or market any of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 105:**

All documents and things that relate to any market studies, market share, competition, and/or competitor products relating to any of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 106:**

All documents and things referring or relating to, or otherwise evidencing, valuations of any physiological monitoring technology or intellectual property relating to physiological monitoring technology.

**REQUEST FOR PRODUCTION NO. 107:**

All documents and things referring or relating to, or otherwise evidencing, the impact or projected impact of Defendant's incorporation of any physiological measurement technology in Defendant's Apple Watch Products on the sales price or sales volume of any third-party product that competes for sales with the Apple Watch Products.

/ / /

Exhibit 1
-14-

**REQUEST FOR PRODUCTION NO. 108:**

All documents and things referring or relating to, or otherwise evidencing, any internal intellectual property strategy, business strategy, or plan relating to physiological monitoring technology.

**REQUEST FOR PRODUCTION NO. 109:**

All documents and things referring or relating to forecasts, projections, or strategic evaluations regarding Defendant's consideration of a purchase, acquisition, or license of technology from any company concerning physiological monitoring.

**REQUEST FOR PRODUCTION NO. 110:**

All documents and things that tend to support or rebut any contention that the named inventors were properly identified as inventors on the Disputed Patents.

**REQUEST FOR PRODUCTION NO. 111:**

All documents and things that tend to support or rebut any contention that the named inventors were properly identified as the only inventors on the Disputed Patents.

**REQUEST FOR PRODUCTION NO. 112:**

All documents and things that tend to support or rebut any contention that the Disputed Patents are owned by Apple.

**REQUEST FOR PRODUCTION NO. 113:**

For the Disputed Patents and counterparts thereof, all documents and things concerning the inventorship of the alleged inventions claimed in the Asserted Patents, including without limitation what each inventor allegedly contributed to each Disputed Patents and counterparts thereof.

**REQUEST FOR PRODUCTION NO. 114:**

All documents and things referring or relating to the inventorship of one or more of the Disputed Patents.

-11-

Exhibit 1
-15-

**REQUEST FOR PRODUCTION NO. 115:**

All documents and things referring to, relating to, or evidencing invention of any of the subject matter claimed in the Disputed Patents.

**REQUEST FOR PRODUCTION NO. 116:**

All documents and things referring to, relating to, or evidencing conception and/or reduction to practice of any of the subject matter claimed in the Disputed Patents.

**REQUEST FOR PRODUCTION NO. 117:**

All documents and things referring or relating to the preparation, decision to file, filing, prosecution and/or enforcement of the Disputed Patents, including but not limited to:

    (a)   the complete prosecution files for each patent;

    (b)   the complete prosecution files for any parent application or priority application;

    (c)   the complete prosecution files for any continuation or divisional patent application claiming priority from or relating to any of the patents;

    (d)   all documents and things that provided a basis for the preparation of any of the patents;

    (e)   all documents and things that constitute, relate to, or refer to communications between or on behalf of, the inventors, Defendant, Defendant's attorneys, or any patent attorney or agent that relate or refer to any of the patents;

    (f)   all drafts of any of the patents; and

    (g)   all drafts of any papers filed during the prosecution of any of the patents.

/ / /

/ / /

Exhibit 1
-16-

**REQUEST FOR PRODUCTION NO. 118:**

All foreign counterparts to the Disputed Patents, and all documents and things relating or referring to the foreign counterparts, including but not limited to complete prosecution files.

**REQUEST FOR PRODUCTION NO. 119:**

All documents and things that refer or relate to any alleged invention described in or claimed in the Disputed Patents.

**REQUEST FOR PRODUCTION NO. 120:**

All documents and things that refer or relate to, or otherwise evidence, the inventive contribution of any of the named inventors to the subject matter claimed in any of the Disputed Patents.

**REQUEST FOR PRODUCTION NO. 121:**

All documents and things referring to, relating to, or evidencing any contribution by Defendant's employees to the subject matter claimed in the Disputed Patents.

**REQUEST FOR PRODUCTION NO. 122:**

All documents and things referring or relating to Defendant's practices, procedures, and/or policies relating to submission of information for possible inclusion in patent applications.

**REQUEST FOR PRODUCTION NO. 123:**

All documents and things that refer or relate to, or otherwise evidence, any incentive or reward program for employees who develop new inventions, including any program in which employees receive bonuses or other forms of compensation in exchange for the disclosure and recording of inventions.

**REQUEST FOR PRODUCTION NO. 124:**

All documents and things that refer or relate to, or otherwise evidence, any policy regarding compensation for employees named as inventors on issued foreign or U.S. patents and/or filed foreign or U.S. patent applications.

Exhibit 1
-17-

**REQUEST FOR PRODUCTION NO. 125:**

All documents and things that refer or relate to, or otherwise evidence, any policy regarding compensation for employees who submit invention disclosure forms for use in evaluating whether to file a patent application.

**REQUEST FOR PRODUCTION NO. 126:**

All documents and things referring or relating to the value and/or potential value of the technology claimed or disclosed in the Disputed Patents.

**REQUEST FOR PRODUCTION NO. 127:**

All documents and things referring or relating to the advantages or disadvantages of the technology claimed or disclosed in the Disputed Patents over competing technologies.

**REQUEST FOR PRODUCTION NO. 128:**

All communications between Defendant and Plaintiffs referring or relating to subject matter disclosed or claimed in the Disputed Patents.

**REQUEST FOR PRODUCTION NO. 129:**

All communications between Defendant and any individual who previously worked for Plaintiffs referring or relating to subject matter disclosed or claimed in the Disputed Patents.

**REQUEST FOR PRODUCTION NO. 130:**

Documents sufficient to identify the relationship between Apple and each of its affiliates, including without limitation, its predecessors, successors, parents, subsidiaries, divisions, and partners.

**REQUEST FOR PRODUCTION NO. 131:**

Documents sufficient to identify Your senior management and personnel responsible for research and development, testing, clinical trials, regulatory approval, marketing, and sales of any of the Apple Watch Products, including, but not limited to, organizational charts.

/ / /

-14-

Exhibit 1
-18-

**REQUEST FOR PRODUCTION NO. 132:**

Organizational charts for Apple personnel responsible for human resources as well as research and development, testing, clinical trials, regulatory approval, marketing, and sales of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 133:**

Documents sufficient to identify any legal proceeding involving any of the Apple Watch Products.

**REQUEST FOR PRODUCTION NO. 134:**

Documents that refer or relate to any legal proceeding involving any of the Apple Watch Products, including without limitation, pleadings, hearing transcripts, deposition transcripts, declarations, exhibits, briefs, and production documents.

**REQUEST FOR PRODUCTION NO. 135:**

All documents and things concerning Your document retention and destruction policies or procedures.

**REQUEST FOR PRODUCTION NO. 136:**

All documents and things that refer or relate to any communication between You and any other person regarding the above-captioned lawsuit.

**REQUEST FOR PRODUCTION NO. 137:**

All documents and things exchanged between You and any expert witness or consultant in connection with the above-captioned lawsuit, which relate to the compensation for the expert's or consultant's study or testimony, identify facts or data that You provided and the expert or consultant considered in forming his or her opinions to be expressed, or identify the assumptions You provided and the expert or consultant relied on in forming his or her opinions to be expressed.

/ / /

/ / /

-15-

Exhibit 1
-19-

**REQUEST FOR PRODUCTION NO. 138:**

All documents and things whose identity is sought in any interrogatory served by Plaintiffs.

**REQUEST FOR PRODUCTION NO. 139:**

All documents and things cited, referenced, or identified in Your discovery responses.

**REQUEST FOR PRODUCTION NO. 140:**

All documents and things relating to, identified in and/or relevant to Apple's Initial Disclosures, including any and all supplements and amendments thereto.

**REQUEST FOR PRODUCTION NO. 141:**

To the extent not already requested or required, all documents and things produced or provided by any non-party in connection with this Action, including documents and things produced in response to subpoenas served by Apple.

**REQUEST FOR PRODUCTION NO. 142:**

All documents and things provided to any expert witness whom You have retained or plan to retain either to testify at trial or to provide an opinion relating to the matters at issue in this action.

**REQUEST FOR PRODUCTION NO. 143:**

Documents sufficient to identify Apple's procedures or policies for the storage, retention, and destruction of documents or records.

**REQUEST FOR PRODUCTION NO. 144:**

All organizational charts for Apple from January 2003 to the present.

**REQUEST FOR PRODUCTION NO. 145:**

All documents and things used or relied upon in preparing Your discovery responses in this case, including initial disclosures, responses to

Exhibit 1
-20-

requests for production, responses to interrogatories, responses to requests for admission, and all supplemental disclosures and responses.

**REQUEST FOR PRODUCTION NO. 146:**

All documents and things relating to the contents and/or subject matter of any declarations or affidavits filed by You in this litigation.

**REQUEST FOR PRODUCTION NO. 147:**

All documents and things upon which You intend to rely upon, use, or introduce at trial, for any purpose, including to introduce into evidence, or use as impeachment, rebuttal, or demonstrative purposes.


KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: July 17, 2020          By: /s/ Adam B. Powell
                                   Joseph R. Re
                                   Stephen C. Jensen
                                   Perry D. Oldham
                                   Stephen W. Larson
                                   Adam B. Powell

                                   Attorneys for Plaintiffs,
                                   Masimo Corporation and
                                   Cercacor Laboratories, Inc.

-17-

Exhibit 1
-21-

## PROOF OF SERVICE

I am a citizen of the United States of America and I am employed in Irvine, California.  I am over the age of 18 and not a party to the within action.

On July 17, 2020, I served the within **PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT APPLE INC. (NOS. 61-147)** on the parties or their counsel shown at the email addresses shown below:

GIBSON, DUNN & CRUTCHER LLP

Apple-Masimo@gibsondunn.com

Joshua H. Lerner
JLerner@gibsondunn.com

H. Mark Lyon,
MLyon@gibsondunn.com

Brian M. Buroker
BBuroker@gibsondunn.com

Brian K. Andrea
BAndrea@gibsondunn.com

Brian A. Rosenthal
BRosenthal@gibsondunn.com

Ilissa Samplin
ISamplin@gibsondunn.com

Angelique Kaounis
AKaounis@gibsondunn.com

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on July 17, 2020, at Irvine, California.

_____

Karina Villanueva

32420011

-18-

**Exhibit 1**
**-22-**

EXHIBIT 2

1   JOSHUA H. LERNER, SBN 220755
      jlerner@gibsondunn.com
2   GIBSON, DUNN & CRUTCHER LLP
    555 Mission Street Suite 3000
3   San Francisco, CA 94105
    Tel.: 415.393.8200 / Fax: 415.393.8306
4
    H. MARK LYON, SBN 162061
5     mlyon@gibsondunn.com
    GIBSON, DUNN & CRUTCHER LLP
6   1881 Page Mill Road
    Palo Alto, CA 94304-1211
7   Tel.: 650.849.5300 / Fax: 650.849.5333

8   BRIAN M. BUROKER, *pro hac vice*
      bburoker@gibsondunn.com
9   BRIAN K. ANDREA, *pro hac vice*          ILISSA SAMPLIN, SBN 314018
      bandrea@gibsondunn.com                   isamplin@gibsondunn.com
10  GIBSON, DUNN & CRUTCHER LLP              GIBSON, DUNN & CRUTCHER LLP
    1050 Connecticut Avenue, N.W.            333 South Grand Avenue
11  Washington, DC 20036                     Los Angeles, CA 90071-3197
    Tel.: 202.955.8541 / Fax: 202.467.0539   Tel.: 213.229.7000 / Fax: 213.229.7520
12
    BRIAN A. ROSENTHAL, *pro hac vice*       ANGELIQUE KAOUNIS, SBN 209833
13    brosenthal@gibsondunn.com                akaounis@gibsondunn.com
    GIBSON, DUNN & CRUTCHER LLP              GIBSON, DUNN & CRUTCHER LLP
14  200 Park Avenue                          2029 Century Park East Suite 4000
    New York, NY 10166-0193                  Los Angeles, CA 90067
15  Tel.: 212.351.2339 / Fax: 212.817.9539   Tel.: 310.552.8546 / Fax: 310.552.7026

16  *Attorneys for Defendant Apple Inc.*

17
18              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
19                    **SOUTHERN DIVISION**

20  MASIMO CORPORATION,                  CASE NO. 8:20-cv-00048-JVS (JDEx)
    a Delaware corporation; and
21  CERCACOR LABORATORIES, INC.,         **DEFENDANT APPLE INC.'S**
    a Delaware corporation,              **OBJECTIONS AND RESPONSES TO**
22                                       **PLAINTIFFS MASIMO**
                                         **CORPORATION AND CERCACOR**
23              Plaintiffs,              **LABORATORIES, INC.'S THIRD SET**
                                         **OF REQUESTS FOR PRODUCTION**
24      v.                               **OF DOCUMENTS TO DEFENDANT**
                                         **APPLE INC. (NOS. 61-147)**
25  APPLE INC., a California corporation,
26              Defendant.               Hon. James V. Selna
                                         Magistrate Judge John D. Early
27
28

                                      1

Gibson, Dunn &
Crutcher LLP

Exhibit 2
-23-

Pursuant to Federal Rules of Civil Procedure 26 and 34, Local Rule 34, and all applicable rules and orders of this Court, Defendant Apple Inc. ("Apple"), by and through its undersigned attorneys, hereby objects and provides the following Responses to Plaintiffs Masimo Corporation ("Masimo") and Cercacor Laboratories, Inc.'s ("Cercacor") (collectively, "Plaintiffs") Third Set of Requests For Production of Documents to Defendant Apple Inc. (Nos. 61–147) (the "Third RFPs," and each a "Request").

Apple responds generally that its investigation of facts relevant to this litigation is ongoing.  The following Responses are made to the best of Apple's present knowledge, information, and belief.  Further investigation may reveal additional facts or information that could lead to additions to, changes in, and/or variations from the Responses herein.  Without in any way obligating itself to do so, Apple expressly reserves the right to supplement, amend, correct, clarify, or modify these Responses as further information becomes available.  Apple also reserves the right to use or rely on, at any time, documents, evidence, and other matters in addition to any documents produced in response to the Third RFPs, whether or not such documents, evidence, or other matters are newly discovered or are now in existence but have not yet been located.

In each and every Specific Response and Objection, Apple incorporates by reference each and every General Objection, Objection to Definition, and Objection to Instruction.  Apple also incorporates by reference each and every Objection to Definition into each and every Objection to Instruction, and vice versa.  A Specific Response may repeat a General Objection, Objection to Definition, and/or Objection to Instruction for emphasis or for some other reason.  However, the omission of any General Objection, Objection to Definition, and/or Objection to Instruction in any Specific Response is not intended to be, nor should it be construed as, a waiver of any such Objections.

## GENERAL OBJECTIONS

1.     Apple objects to the Third RFPs, including the Instructions and Definitions and each specific Request therein, to the extent they seek to impose obligations that

1    exceed the scope of permissible discovery under the Federal Rules of Civil Procedure,

2    the Local Rules, and all applicable rules and orders of this Court.

3        2.    Apple objects to the Third RFPs, including the Instructions and Definitions

4    and each specific Request therein, to the extent they:  (i) seek documents or information

5    that are not relevant to any party's claims or defenses in the action; (ii) impose a burden

6    disproportionate to the needs of the case; (iii) seek documents or information beyond the

7    scope of permissible discovery; (iv) are unreasonably cumulative or duplicative; or

8    (v) seek information that is obtainable from some other source that is more convenient,

9    less burdensome, or less expensive.  Apple objects to the Third RFPs, including the

10   Instructions and Definitions and each specific Request therein, to the extent they seek

11   disclosure of information, documents, and/or things related to Plaintiffs' trade secret

12   allegations and Plaintiffs have not complied with California Code of Civil Procedure

13   Section 2019.210's ("Section 2019.210") requirement that they identify with reasonable

14   particularity the alleged trade secret(s) that they claim Apple has misappropriated.  *See*

15   Dkt. Nos. 37, 54, 79.  Apple is not withholding materials solely on that basis unless the

16   Request is solely related to Plaintiffs' trade secret allegations.  Apple expressly preserves

17   its objection to producing any documents or things that relate to Plaintiffs' trade secret

18   misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply

19   with Section 2019.210.  Nonetheless, based on this Court's April 17, June 15, and July

20   14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that

21   relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply

22   with Section 2019.210—without waiving, or intending to waive, the preceding

23   objection.  Accordingly, these Responses are given without waiving Apple's right to

24   revise, correct, supplement, or clarify any of its Responses in the event Plaintiffs comply

25   with Section 2019.210 in the future.  These Responses also are given without prejudice

26   to Apple's right to subsequently produce, including at trial, any additional documents,

27   witnesses, or evidence, including, without limitation, documents, witnesses, or evidence

28   that would only be subject to discovery by Plaintiffs if Plaintiffs first complied with the

1   requirements of Section 2019.210.

2       3.      Apple objects to the Third RFPs, including the Instructions and Definitions

3   and each specific Request therein, to the extent they are vague, ambiguous, overbroad,

4   and/or unduly burdensome, including to the extent that they demand production of

5   "each," "every," or "all" documents and things concerning the subject matters

6   referenced therein because such a demand causes undue burden and expense.

7       4.      Apple objects to the Third RFPs, including the Instructions and Definitions

8   and each specific Request therein, to the extent they seek information, documents, and/or

9   things protected from discovery by the attorney-client privilege, the work-product

10  doctrine, the common-interest privilege, and/or any other applicable privilege,

11  immunity, or protection.  Specific objections on the grounds of privilege are provided

12  for emphasis and clarity only, and the absence of a specific objection should not be

13  interpreted as evidence that Apple does not object to a Request on the basis of an

14  applicable privilege.  The inadvertent disclosure of any documents subject to such

15  privilege or protection is not intended to relinquish any privilege or protection and shall

16  not be deemed to be a waiver of any applicable privilege or protection.  Apple reserves

17  the right to demand that Plaintiffs return to it any document inadvertently produced.

18  Plaintiffs shall, upon the request of Apple, immediately return or destroy any such

19  documents inadvertently produced.  Further, upon Plaintiffs' discovery of what may be

20  a privileged document produced by Apple, Plaintiffs should immediately inform Apple

21  in writing.

22      5.      Apple objects to the Third RFPs, including the Instructions and Definitions

23  and each specific Request therein, to the extent they seek confidential commercial,

24  business, financial, or competitively sensitive information, trade secrets, or any other

25  proprietary information of or about Apple, its respective employees, its clients, and its

26  business partners, including information subject to confidentiality agreements with third

27  parties.  Apple further objects to the Third RFPs, including the Instructions and

28  Definitions and each specific Request therein, to the extent that they seek to require

Apple to produce any document containing the private, confidential, or privileged information of non-parties, including, but not limited to, third-party business or technical information and/or user or customer personal information, which Apple is under an obligation not to disclose.

6. Apple objects to the Third RFPs, including the Instructions and Definitions and each specific Request therein, to the extent they call for the production of documents or information that are subject to a confidentiality agreement, or other restrictions, or to a protective order or other court order entered in another action or proceeding, which prevent disclosure in this action. Apple's production of such documents or information is subject to Apple's compliance with any notice and/or contractual obligations to third parties in advance of disclosure.

7. Apple objects to the Third RFPs, including the Instructions and Definitions and each specific Request therein, as overly broad, unduly burdensome, and oppressive to the extent any Request fails to specify a relevant time period, to the extent the specified time period is irrelevant, or to the extent that the specified period includes periods of time for which Plaintiffs would not be entitled to collect any damages. To the extent the Third RFPs seek documents from an unspecified or expansive time period, Apple will provide information and documents in its possession, custody, or control for the relevant time period.

8. Apple objects to the Third RFPs, including the Instructions and Definitions and each specific Request therein, to the extent they contain characterizations, definitions, arguments, or assumptions. Nothing contained in or absent from Apple's responses, objections, or production shall constitute, or be deemed as, an admission, concession, or agreement that Plaintiffs' characterizations, definitions, arguments, or assumptions are correct or accurate. The failure to object to any of the defined terms that are listed in the "Definitions" section of the Third RFPs, but that are not used by Plaintiffs in any of the Third RFPs directed to Apple, shall not be construed as a waiver of any objections to the definitions of those defined terms.

9.     Apple objects to the Third RFPs, including the Instructions and Definitions and each specific Request therein, to the extent they lack foundation, or incorporate allegations and assertions that are disputed or erroneous.  By responding and objecting to the Third RFPs, Apple does not admit the correctness of such assertions.

10.     Apple objects to the Third RFPs, including the Instructions and Definitions and each specific Request therein, as being unduly burdensome to the extent they seek documents or information that (i) is not within the possession, custody, or control of Apple; (ii) is as readily available to Plaintiffs as to Apple; (iii) is already in the possession of Plaintiffs; (iv) was already produced by or requested from other parties or non-parties in *Masimo et al. v. True Wearables, Inc. et al.*, Civil Action No. 8:18-CV-02001 (C.D. Cal.); or (v) is public.

11.     These Responses, and the production of any documents, do not constitute admissions that such documents were in Apple's possession, custody, or control at any particular point in time other than on the date of production.

12.     Apple objects to the Third RFPs, including the Instructions and Definitions and each specific Request therein, to the extent they seek discovery from any parent, subsidiary, or affiliate of Apple.  Such parents, subsidiaries, or affiliates are not within Apple's control, and to the extent that a Request seeks such disclosure, it is improper, burdensome, and oppressive.  Apple is responding only on behalf of itself and not on behalf of any parent, subsidiary, or affiliate.

13.     Apple objects to the Third RFPs, including the Instructions and Definitions and each specific Request therein, to the extent they purport to require Apple to compile information in a manner that is not maintained in the ordinary course of business, or to create documents, including but not limited to charts, tables, reviews, proposals, methodologies, and/or breakdowns, etc., that do not already exist.

14.     Apple objects to the Third RFPs, including the Instructions and Definitions and each specific Request therein, to the extent they purport to impose an obligation to conduct anything beyond a reasonable and diligent search of readily accessible files

**Exhibit 2**
-28-

1   (including electronic files) where responsive documents reasonably would be expected

2   to be found.  When Apple agrees to produce documents in response to a Request, such

3   a response does not constitute a representation that Apple will search all files maintained

4   by any person, but only that responsive documents will be produced if they exist and

5   can be located by a reasonable and diligent search of readily accessible files where such

6   responsive documents reasonably would be expected to be found, and are not otherwise

7   protected by disclosure.  Subject to the objections stated, Apple will search the readily

8   accessible and centrally located files of individuals whom it reasonably believes may

9   have relevant documents.  Any Request that seeks to require Apple to go beyond such a

10  search is overbroad and unduly burdensome.

11          15.     Apple objects to the Third RFPs, including the Instructions and Definitions

12  and each specific Request therein, to the extent they seek production of electronically

13  stored documents in their native form.   Production of documents, including

14  electronically stored information, in native form prevents Apple from adequately

15  labeling and controlling its productions.  If and when Apple produces documents, Apple

16  will produce such documents in a reasonably useable form within the meaning of the

17  Federal Rules of Civil Procedure, the Local Rules, and all applicable rules and orders of

18  this Court.

19          16.     Apple objects to the Third RFPs, including the Instructions and Definitions

20  and each specific Request therein, to the extent they seek documents that are beyond

21  Apple's possession, custody, or control.

22          17.     Apple objects to the Third RFPs, including the Instructions and Definitions

23  and each specific Request therein, to the extent they are unreasonably cumulative or

24  duplicative.

25          18.     Apple objects to the Third RFPs, including the Instructions and Definitions

26  and each specific Request therein, to the extent they call for the use of specific search

27  terms not previously negotiated between the parties.

28          19.     Apple's undertaking to produce documents responsive to the Third RFPs,

or its failure to object to a Request, is subject to a general proviso that Apple agrees to produce documents only to the extent such documents exist and can be located with reasonable diligence.  Further, Apple's undertaking to produce documents responsive to the Third RFPs does not constitute an admission that such documents actually exist, but rather that Apple has made or will continue to make a reasonable, good faith search and attempt to ascertain whether responsive documents do in fact exist.  Apple's objections and responses shall not be construed as representations regarding the existence or non-existence of specific documents in its possession, custody, or control.

20.     By responding to the Third RFPs, Apple does not concede the relevancy or materiality of any Request or of the subject to which it refers.  Apple's responses are made subject to, and without waiving, any objections as to the competency, relevancy, materiality, privilege, or admissibility of any of the responses given, or of the subject matter, in any proceeding in this action or in any other subsequent proceeding.  Apple's willingness to provide any document or information in response to a Request shall not be interpreted as an admission that it is relevant to a claim or defense in this action, or that it is admissible for any purpose.  Apple does not waive its right to object to the admissibility of any document produced by any party on any ground.

21.     Apple responds to the Third RFPs, including the Instructions and Definitions and each specific Request therein, without waiving or intending to waive, but rather preserving and intending to preserve, its right to object to any other discovery requests.

22.     Apple objects to the Third RFPs, including the Instructions and Definitions and each specific Request therein, to the extent they rely on terms that are not defined and could be understood to have multiple meanings.

23.     Apple reserves all other unarticulated objections.

## **OBJECTIONS TO DEFINITIONS**

1.     Apple objects to the Definitions in the Third RFPs to the extent they purport to impose requirements that are inconsistent with, or beyond those contemplated by, the

1    Federal Rules of Civil Procedure, the Local Rules, and all applicable rules and orders of

2    this Court.  Apple will construe and respond to the Third RFPs in accordance with the

3    requirements of the Federal Rules of Civil Procedure, the Local Rules, and all applicable

4    rules and orders of this Court.

5         2.    Apple objects to Plaintiffs' definition of "Apple," "Defendant," "You," and

6    "Your" as overly broad, unduly burdensome, vague, and ambiguous, particularly to the

7    extent it purports to require Apple to collect and/or produce documents from undefined

8    "present or former officer[s], director[s], employee[s], agent[s], attorney[s], or other

9    representative[s] acting for or on behalf of Defendant Apple, Inc."  Apple further objects

10   to the definition of "Apple," "Defendant," "You," and "Your" to the extent it seeks to

11   impose a discovery obligation on persons and/or entities that are not parties to the action.

12   Apple also objects to the definition of "Apple," "Defendant," "You," and "Your" to the

13   extent the reference to any "agent," "attorney," or "other representative acting for or on

14   behalf of Defendant Apple, Inc." purports to demand information or documents subject

15   to the attorney-client privilege, the work product doctrine, or any other privilege or

16   protection.  In responding to the Third RFPs, Apple will construe these terms to mean

17   Apple Inc., the defendant in this action, and will limit its responses accordingly.

18        3.    Apple objects to Plaintiffs' definition of "Masimo" as overly broad, unduly

19   burdensome, vague, and ambiguous, particularly to the extent that it does not identify

20   all of the purported "divisions, departments, parents, subsidiaries, affiliates or

21   predecessors" of Masimo Corporation encompassed in the definition.

22        4.    Apple objects to Plaintiffs' definition of "Cercacor" as overly broad,

23   unduly burdensome, vague, and ambiguous, particularly to the extent that it does not

24   identify all of the purported "divisions, departments, parents, subsidiaries, affiliates or

25   predecessors" of Cercacor Laboratories, Inc. encompassed in the definition.

26        5.    Apple objects to Plaintiffs' definition of "Masimo Asserted Patents" as

27   overly broad, unduly burdensome, vague, and ambiguous, particularly to the extent the

28   definition purports to include "additional patents" that Plaintiffs have not alleged Apple

infringes in any complaint filed in this action but may assert in "a future pleading." Apple also objects to Plaintiffs' definition of "Masimo Asserted Patents" as overly broad, unduly burdensome, vague, and ambiguous because Plaintiffs refer generally to an unidentified "future pleading," which could include, for example, a pleading filed against entities other than Apple or a pleading filed in an entirely different action.  In responding to the Third RFPs, Apple will construe this term to mean the patents asserted by Plaintiffs in their Complaint in this action, and will limit its responses accordingly. Apple objects to Plaintiffs' definition of "Masimo Asserted Patents" to the extent it seeks information on patents that Plaintiffs are no longer asserting.  Apple objects to Plaintiffs' definition of "Masimo Asserted Patents" as prejudicial and premature to the extent it seeks information related to patents only recently asserted in Plaintiffs' forthcoming Second Amended Complaint (and after service of this Request) because such responses would require Apple to respond to the Third RFPs in less than thirty days, in violation of the Federal Rules of Civil Procedure.  Accordingly, these Responses are given without waiving Apple's right to revise, correct, supplement, or clarify any of its Responses in response to patents only recently asserted in Plaintiffs' forthcoming Second Amended Complaint.

6.     Apple objects to Plaintiffs' definition of "Apple Watch Products" as overly broad, unduly burdensome, vague, and ambiguous, particularly to the extent the definition is not limited to components or functionality of the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the asserted claims of patents included in the Second Amended Complaint, which are: U.S. Patent No. 10,258,265, U.S. Patent No. 10,292,628, U.S. Patent No. 10,588,553, U.S. Patent No. 10,588,554, U.S. Patent No. 10,624,564, U.S. Patent No. 10,631,765, U.S. Patent No. 10,702,194, U.S. Patent No. 10,702,195, U.S. Patent No. 10,709,366, U.S. Patent No. 6,771,994, U.S. Patent No. 8,457,703, and U.S. Patent No. 10,433,776 (collectively, the "Asserted Patents"), or to the relevant time frame of alleged infringement.

7.     Apple objects to Plaintiffs' definition of "Apple iOS Products" as overly broad, unduly burdensome, vague, and ambiguous, particularly to the extent the definition is not limited to components or functionality of the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the asserted claims of the Asserted Patents, or to the relevant time frame of alleged infringement.

8.     Apple objects to Plaintiffs' definition of "Accused Products" as overly broad, unduly burdensome, vague, and ambiguous, particularly to the extent the definition is not limited to components or functionality of the publicly released Apple Watch Series 3-5 devices identified and alleged in Plaintiffs' infringement allegations to infringe the asserted claims of the Asserted Patents, or to the relevant time frame of alleged infringement.

9.     Apple objects to Plaintiffs' definition of "Disputed Patents" as overly broad, unduly burdensome, vague, and ambiguous, particularly to the extent the definition purports to include "additional patents" that are not the subject of any Claim in Plaintiffs' Complaint.  Apple also objects to Plaintiffs' definition of "Disputed Patents" as overly broad, unduly burdensome, vague, and ambiguous because Plaintiffs refer generally to an unidentified "future pleading," which could include, for example, a pleading filed against entities other than Apple or a pleading filed in an entirely different action.  In responding to the Third RFPs, Apple will construe this term to mean the "Disputed Patents" specifically referenced in Plaintiffs' Complaint.

10.     Apple objects to the definition of "documents" as overly broad, unduly burdensome, vague, and ambiguous.  Apple further objects to the definition of "documents" as imposing undue burden and expense to the extent that, in the context of any particular request, it would encompass emails or other electronically stored information without reasonable limits placed on the number of custodians and keywords to reduce the burden and expense of collection, processing, review, and production.  In responding to the Third RFPs, Apple will construe this term in accordance with the

1    requirements of the Federal Rules of Civil Procedure, the Local Rules, and all applicable

2    rules and orders of this Court.

3        11.    Apple objects to the definition of "things" as overly broad, unduly

4    burdensome, vague, and ambiguous.  In responding to the Third RFPs, Apple will

5    construe this term in accordance with the requirements of the Federal Rules of Civil

6    Procedure, the Local Rules, and all applicable rules and orders of this Court.

7        12.    Apple objects to the definition of "concerning" as overly broad, unduly

8    burdensome, vague, and ambiguous.  In responding to the Third RFPs, Apple will

9    construe this term in accordance with the requirements of the Federal Rules of Civil

10    Procedure, the Local Rules, and all applicable rules and orders of this Court.

11        13.    Apple objects to the definition of "communication" as overly broad, unduly

12    burdensome, vague, and ambiguous.   Apple further objects to the definition of

13    "communication" as imposing undue burden and expense to the extent that, in the

14    context of any particular request, it would encompass emails or other electronically

15    stored information without reasonable limits placed on the number of custodians and

16    keywords to reduce the burden and expense of collection, processing, review, and

17    production.   In responding to the Third RFPs, Apple will construe this term in

18    accordance with the requirements of the Federal Rules of Civil Procedure, the Local

19    Rules, and all applicable rules and orders of this Court.

20                          **OBJECTIONS TO INSTRUCTIONS**

21        1.    Apple objects to the Instructions to the extent they purport to broaden the

22    obligations imposed by the Federal Rules of Civil Procedure, the Local Rules, any other

23    applicable rules, or any discovery protocols agreed upon by the parties or ordered by the

24    Court.

25        2.    Apple objects to Instruction No. 1 on the grounds that it purports to impose

26    discovery obligations on persons or entities that are separate and distinct from Apple

27    and are not under Apple's control.  Apple also objects to Instruction No. 1 as overly

28    broad, unduly burdensome, vague, and ambiguous to the extent it imposes undue

12

**Exhibit 2**
-34-

burdens and requirements beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules, and all applicable rules and orders of this Court.  Apple further objects to Instruction No. 1 to the extent it purports to demand the production of documents subject to the attorney-client privilege, the work product doctrine, or any other privilege or protection.

3.      Apple objects to Instruction No. 2 as overly broad, unduly burdensome, vague, and ambiguous to the extent it purports to impose undue burdens and requirements beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules, and all applicable rules and orders of this Court, including to the extent it purports to require production of a privilege log that is more detailed than that required under the Federal Rules of Civil Procedure, the Local Rules, and all applicable rules and orders of this Court.

4.      Apple objects to Instruction No. 3 on the grounds that it is overly broad, unduly burdensome, vague, and ambiguous to the extent it purports to impose undue burdens and requirements beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules, and all applicable rules and orders of this Court.

5.      Apple objects to Instruction No. 4 on the grounds that it is overly broad, unduly burdensome, vague, and ambiguous to the extent it purports to impose undue burdens and requirements beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules, and all applicable rules and orders of this Court.  Apple also objects to Instruction No. 4 to the extent it purports to demand the production of documents subject to the attorney-client privilege, the work product doctrine, or any other privilege or protection.

6.      Apple objects to Instruction No. 5 on the grounds that it is overly broad, unduly burdensome, vague, and ambiguous to the extent it uses the undefined terms "derivation" and "source" and otherwise demands that the "derivation" and "source" be identified "specifically."  Apple also objects to Instruction No. 5 on the grounds that it is overly broad, unduly burdensome, vague, and ambiguous to the extent it purports to

13

Exhibit 2
-35-

1   impose undue burdens and requirements beyond those imposed by the Federal Rules of

2   Civil Procedure, the Local Rules, and all applicable rules and orders of this Court.

3                    **SPECIFIC OBJECTIONS AND RESPONSES**

4   **REQUEST FOR PRODUCTION NO. 61:**

5       All documents and things that tend to support or rebut any of Your affirmative

6   defenses to Plaintiffs' causes of action other than trade secret misappropriation.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

8       Apple incorporates by reference its General Objections and Objections to

9   Definitions and Instructions.

10      Apple objects to this Request to the extent it seeks documents and things protected

11  from discovery by the attorney-client privilege, the work-product doctrine, the common-

12  interest privilege, and/or any other applicable privilege, immunity, or protection.  Apple

13  objects to this Request as overbroad and unduly burdensome to the extent it seeks

14  information neither relevant to the issues in the present action nor reasonably calculated

15  to lead to the discovery of admissible evidence.  Apple objects to this Request to the

16  extent that it seeks information already in Plaintiffs' possession or information that is

17  obtainable from another source, such as publicly available materials, that is more

18  convenient, less burdensome, or less expensive.  Apple objects to this Request as

19  overbroad and unduly burdensome to the extent it seeks documents not within Apple's

20  possession, custody, or control.   Apple expressly preserves its objection to producing

21  any documents or things that relate to Plaintiffs' trade secret misappropriation claim,

22  even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210.

23  Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37,

24  54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs'

25  trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—

26  without waiving, or intending to waive, the preceding objection.

27      Subject to and without waiver of the foregoing General and Specific Objections

28  and under the provisions of the Protective Order and ESI Stipulation entered in this case,

Gibson, Dunn &
Crutcher LLP

**Exhibit 2
-36-**

1   claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to

2   waive, the preceding objection.

3        Subject to and without waiver of the foregoing General and Specific Objections

4   and under the provisions of the Protective Order and ESI Stipulation entered in this case,

5   Apple agrees to produce documents responsive to the unobjectionable scope of this

6   Request, to the extent such information exists and is located after a reasonably diligent

7   search.

8   **REQUEST FOR PRODUCTION NO. 110:**

9        All documents and things that tend to support or rebut any contention that the

10  named inventors were properly identified as inventors on the Disputed Patents.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 110:**

12       Apple incorporates by reference its General Objections and Objections to

13  Definitions and Instructions.

14       Apple objects to this Request to the extent it seeks documents and things protected

15  from discovery by the attorney-client privilege, the work-product doctrine, the common-

16  interest privilege, and/or any other applicable privilege, immunity, or protection.  Apple

17  objects to this Request as overbroad and unduly burdensome to the extent it seeks

18  information neither relevant to the issues in the present action nor reasonably calculated

19  to lead to the discovery of admissible evidence.  Apple objects to this Request to the

20  extent that it seeks information already in Plaintiffs' possession or information that is

21  obtainable from another source, such as publicly available materials, that is more

22  convenient, less burdensome, or less expensive.  Apple objects to this Request as

23  overbroad and unduly burdensome to the extent it seeks documents not within Apple's

24  possession, custody, or control.  Apple objects to this Request on the grounds that it is

25  overly broad and unduly burdensome to the extent it requests "[a]ll documents and

26  things" relating to the subject matter of the request.  Plaintiffs' inventorship and/or

27  ownership claims related to the Disputed Patents is based on Apple's alleged use of

28  Plaintiffs' allegedly confidential trade secrets, and thus this Request is improper because

Plaintiffs have not yet complied with Section 2019.210.  *See* Dkt. Nos. 37, 54, 79; *see also, e.g.*, *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D. Cal. Sept. 3, 2019) (Early, J.); *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018); *Swarmify, Inc. v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018); *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014).  Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210.  Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 111:**

All documents and things that tend to support or rebut any contention that the named inventors were properly identified as the only inventors on the Disputed Patents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 111:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection.  Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks

Gibson, Dunn & Crutcher LLP

Exhibit 2
-38-

1    information neither relevant to the issues in the present action nor reasonably calculated

2    to lead to the discovery of admissible evidence.  Apple objects to this Request to the

3    extent that it seeks information already in Plaintiffs' possession or information that is

4    obtainable from another source, such as publicly available materials, that is more

5    convenient, less burdensome, or less expensive.  Apple objects to this Request as

6    overbroad and unduly burdensome to the extent it seeks documents not within Apple's

7    possession, custody, or control.  Apple objects to this Request on the grounds that it is

8    overly broad and unduly burdensome to the extent it requests "[a]ll documents and

9    things" relating to the subject matter of the request.  Plaintiffs' inventorship and/or

10   ownership claims related to the Disputed Patents is based on Apple's alleged use of

11   Plaintiffs' allegedly confidential trade secrets, and thus this Request is improper because

12   Plaintiffs have not yet complied with Section 2019.210.  *See* Dkt. Nos. 37, 54, 79; *see*

13   *also, e.g.*, *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D.

14   Cal. Sept. 3, 2019) (Early, J.); *E. & J. Gallo Winery v. Instituut Voor Landbouw-En*

15   *Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018); *Swarmify, Inc.*

16   *v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018); *Jobscience, Inc.*

17   *v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014).  Apple expressly

18   preserves its objection to producing any documents or things that relate to Plaintiffs'

19   trade secret misappropriation claim, even if they also relate to *other* claims, until

20   Plaintiffs comply with Section 2019.210.  Nonetheless, based on this Court's April 17,

21   June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents

22   or things that relate solely to Plaintiffs' trade secret misappropriation claim until

23   Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the

24   preceding objection.

25          Subject to and without waiver of the foregoing General and Specific Objections

26   and under the provisions of the Protective Order and ESI Stipulation entered in this case,

27   Apple agrees to produce documents responsive to the unobjectionable scope of this

28

1    Request, to the extent such information exists and is located after a reasonably diligent
2    search.

3    **REQUEST FOR PRODUCTION NO. 112:**

4         All documents and things that tend to support or rebut any contention that the
5    Disputed Patents are owned by Apple.

6    **RESPONSE TO REQUEST FOR PRODUCTION NO. 112:**

7         Apple incorporates by reference its General Objections and Objections to
8    Definitions and Instructions.

9         Apple objects to this Request to the extent it seeks documents and things protected
10   from discovery by the attorney-client privilege, the work-product doctrine, the common-
11   interest privilege, and/or any other applicable privilege, immunity, or protection.  Apple
12   objects to this Request as overbroad and unduly burdensome to the extent it seeks
13   information neither relevant to the issues in the present action nor reasonably calculated
14   to lead to the discovery of admissible evidence.  Apple objects to this Request to the
15   extent that it seeks information already in Plaintiffs' possession or information that is
16   obtainable from another source, such as publicly available materials, that is more
17   convenient, less burdensome, or less expensive.  Apple objects to this Request as
18   overbroad and unduly burdensome to the extent it seeks documents not within Apple's
19   possession, custody, or control.  Apple objects to this Request on the grounds that it is
20   overly broad and unduly burdensome to the extent it requests "[a]ll documents and
21   things" relating to the subject matter of the request.  Plaintiffs' inventorship and/or
22   ownership claims related to the Disputed Patents is based on Apple's alleged use of
23   Plaintiffs' allegedly confidential trade secrets, and thus this Request is improper because
24   Plaintiffs have not yet complied with Section 2019.210.  *See* Dkt. Nos. 37, 54, 79; *see
25   also, e.g.*, *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D.
26   Cal. Sept. 3, 2019) (Early, J.); *E. & J. Gallo Winery v. Instituut Voor Landbouw-En
27   Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018); *Swarmify, Inc.
28   v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018); *Jobscience, Inc.*

Gibson, Dunn &
Crutcher LLP

**Exhibit 2**
**-40-**

1  *v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014).  Apple expressly

2  preserves its objection to producing any documents or things that relate to Plaintiffs'

3  trade secret misappropriation claim, even if they also relate to *other* claims, until

4  Plaintiffs comply with Section 2019.210.  Nonetheless, based on this Court's April 17,

5  June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents

6  or things that relate solely to Plaintiffs' trade secret misappropriation claim until

7  Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the

8  preceding objection.

9       Subject to and without waiver of the foregoing General and Specific Objections

10  and under the provisions of the Protective Order and ESI Stipulation entered in this case,

11  Apple agrees to produce documents responsive to the unobjectionable scope of this

12  Request, to the extent such information exists and is located after a reasonably diligent

13  search.

14  **REQUEST FOR PRODUCTION NO. 113:**

15       For the Disputed Patents and counterparts thereof, all documents and things

16  concerning the inventorship of the alleged inventions claimed in the Asserted Patents,

17  including without limitation what each inventor allegedly contributed to each Disputed

18  Patents and counterparts thereof.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 113:**

20       Apple incorporates by reference its General Objections and Objections to

21  Definitions and Instructions.

22       Apple objects to this Request to the extent it seeks documents and things protected

23  from discovery by the attorney-client privilege, the work-product doctrine, the common-

24  interest privilege, and/or any other applicable privilege, immunity, or protection.  Apple

25  objects to this Request as overbroad and unduly burdensome to the extent it seeks

26  information neither relevant to the issues in the present action nor reasonably calculated

27  to lead to the discovery of admissible evidence.  Apple objects to this Request on the

28  grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll

Gibson, Dunn &
Crutcher LLP

1   documents and things" relating to the subject matter of the request.    Plaintiffs'

2   inventorship and/or ownership claims related to the Disputed Patents is based on Apple's

3   alleged use of Plaintiffs' allegedly confidential trade secrets, and thus this Request is

4   improper because Plaintiffs have not yet complied with Section 2019.210.  *See* Dkt. Nos.

5   37, 54, 79; *see also, e.g.*, *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL

6   8108729, at *2 (C.D. Cal. Sept. 3, 2019) (Early, J.); *E. & J. Gallo Winery v. Instituut*

7   *Voor Landbouw-En Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19,

8   2018); *Swarmify, Inc. v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31,

9   2018); *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28,

10   2014).   Apple expressly preserves its objection to producing any documents or things

11   that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to

12   *other* claims, until Plaintiffs comply with Section 2019.210.  Nonetheless, based on this

13   Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold

14   only documents or things that relate solely to Plaintiffs' trade secret misappropriation

15   claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to

16   waive, the preceding objection.

17       Subject to and without waiver of the foregoing General and Specific Objections

18   and under the provisions of the Protective Order and ESI Stipulation entered in this case,

19   Apple agrees to produce documents responsive to the unobjectionable scope of this

20   Request, to the extent such information exists and is located after a reasonably diligent

21   search.

22   **REQUEST FOR PRODUCTION NO. 114:**

23       All documents and things referring or relating to the inventorship of one or more

24   of the Disputed Patents.

25   **RESPONSE TO REQUEST FOR PRODUCTION NO. 114:**

26       Apple incorporates by reference its General Objections and Objections to

27   Definitions and Instructions.

28

**APPLE INC.'S RESPONSES TO PLAINTIFFS' THIRD SET OF RFPS**
Case No. 8:20-CV-00048-JVS (JDEX)

**Exhibit 2**
**-42-**

1       Apple objects to this Request to the extent it seeks documents and things protected

2  from discovery by the attorney-client privilege, the work-product doctrine, the common-

3  interest privilege, and/or any other applicable privilege, immunity, or protection.  Apple

4  objects to this Request as overbroad and unduly burdensome to the extent it seeks

5  information neither relevant to the issues in the present action nor reasonably calculated

6  to lead to the discovery of admissible evidence.  Apple objects to this Request to the

7  extent that it seeks information already in Plaintiffs' possession or information that is

8  obtainable from another source, such as publicly available materials, that is more

9  convenient, less burdensome, or less expensive.  Apple objects to this Request as

10  overbroad and unduly burdensome to the extent it seeks documents not within Apple's

11  possession, custody, or control.  Apple objects to this Request on the grounds that it is

12  overly broad and unduly burdensome to the extent it requests "[a]ll documents and

13  things" relating to the subject matter of the request.  Plaintiffs' inventorship and/or

14  ownership claims related to the Disputed Patents is based on Apple's alleged use of

15  Plaintiffs' allegedly confidential trade secrets, and thus this Request is improper because

16  Plaintiffs have not yet complied with Section 2019.210.  *See* Dkt. Nos. 37, 54, 79; *see*

17  *also, e.g.*, *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D.

18  Cal. Sept. 3, 2019) (Early, J.); *E. & J. Gallo Winery v. Instituut Voor Landbouw-En*

19  *Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018); *Swarmify, Inc.*

20  *v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018); *Jobscience, Inc.*

21  *v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014).  Apple expressly

22  preserves its objection to producing any documents or things that relate to Plaintiffs'

23  trade secret misappropriation claim, even if they also relate to *other* claims, until

24  Plaintiffs comply with Section 2019.210.  Nonetheless, based on this Court's April 17,

25  June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents

26  or things that relate solely to Plaintiffs' trade secret misappropriation claim until

27  Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the

28  preceding objection.

Gibson, Dunn & Crutcher LLP

1    Subject to and without waiver of the foregoing General and Specific Objections

2    and under the provisions of the Protective Order and ESI Stipulation entered in this case,

3    Apple agrees to produce documents responsive to the unobjectionable scope of this

4    Request, to the extent such information exists and is located after a reasonably diligent

5    search.

6    **REQUEST FOR PRODUCTION NO. 115:**

7    All documents and things referring to, relating to, or evidencing invention of any

8    of the subject matter claimed in the Disputed Patents.

9    **RESPONSE TO REQUEST FOR PRODUCTION NO. 115:**

10    Apple incorporates by reference its General Objections and Objections to

11    Definitions and Instructions.

12    Apple objects to this Request to the extent it seeks documents and things protected

13    from discovery by the attorney-client privilege, the work-product doctrine, the common-

14    interest privilege, and/or any other applicable privilege, immunity, or protection.  Apple

15    objects to this Request as overbroad and unduly burdensome to the extent it seeks

16    information neither relevant to the issues in the present action nor reasonably calculated

17    to lead to the discovery of admissible evidence.  Apple objects to this Request to the

18    extent that it seeks information already in Plaintiffs' possession or information that is

19    obtainable from another source, such as publicly available materials, that is more

20    convenient, less burdensome, or less expensive.  Apple objects to this Request as

21    overbroad and unduly burdensome to the extent it seeks documents not within Apple's

22    possession, custody, or control.  Apple objects to this Request on the grounds that it is

23    overly broad and unduly burdensome to the extent it requests "[a]ll documents and

24    things" relating to the subject matter of the request.  Plaintiffs' inventorship and/or

25    ownership claims related to the Disputed Patents is based on Apple's alleged use of

26    Plaintiffs' allegedly confidential trade secrets, and thus this Request is improper because

27    Plaintiffs have not yet complied with Section 2019.210.  *See* Dkt. Nos. 37, 54, 79; *see*

28    *also, e.g.*, *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D.

1   Cal. Sept. 3, 2019) (Early, J.); *E. & J. Gallo Winery v. Instituut Voor Landbouw-En*

2   *Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018); *Swarmify, Inc.*

3   *v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018); *Jobscience, Inc.*

4   *v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014).   Apple expressly

5   preserves its objection to producing any documents or things that relate to Plaintiffs'

6   trade secret misappropriation claim, even if they also relate to *other* claims, until

7   Plaintiffs comply with Section 2019.210.   Nonetheless, based on this Court's April 17,

8   June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents

9   or things that relate solely to Plaintiffs' trade secret misappropriation claim until

10   Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the

11   preceding objection.

12          Subject to and without waiver of the foregoing General and Specific Objections

13   and under the provisions of the Protective Order and ESI Stipulation entered in this case,

14   Apple agrees to produce documents responsive to the unobjectionable scope of this

15   Request, to the extent such information exists and is located after a reasonably diligent

16   search.

17   **REQUEST FOR PRODUCTION NO. 116:**

18          All documents and things referring to, relating to, or evidencing conception and/or

19   reduction to practice of any of the subject matter claimed in the Disputed Patents.

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 116:**

21          Apple incorporates by reference its General Objections and Objections to

22   Definitions and Instructions.

23          Apple objects to this Request to the extent it seeks documents and things protected

24   from discovery by the attorney-client privilege, the work-product doctrine, the common-

25   interest privilege, and/or any other applicable privilege, immunity, or protection.   Apple

26   objects to this Request as overbroad and unduly burdensome to the extent it seeks

27   information neither relevant to the issues in the present action nor reasonably calculated

28   to lead to the discovery of admissible evidence.   Apple objects to this Request to the

1  extent that it seeks information already in Plaintiffs' possession or information that is

2  obtainable from another source, such as publicly available materials, that is more

3  convenient, less burdensome, or less expensive.  Apple objects to this Request as

4  overbroad and unduly burdensome to the extent it seeks documents not within Apple's

5  possession, custody, or control.  Apple objects to this Request on the grounds that it is

6  overly broad and unduly burdensome to the extent it requests "[a]ll documents and

7  things" relating to the subject matter of the request.  Plaintiffs' inventorship and/or

8  ownership claims related to the Disputed Patents is based on Apple's alleged use of

9  Plaintiffs' allegedly confidential trade secrets, and thus this Request is improper because

10 Plaintiffs have not yet complied with Section 2019.210.  *See* Dkt. Nos. 37, 54, 79; *see*

11 *also, e.g.*, *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D.

12 Cal. Sept. 3, 2019) (Early, J.); *E. & J. Gallo Winery v. Instituut Voor Landbouw-En*

13 *Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018); *Swarmify, Inc.*

14 *v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018); *Jobscience, Inc.*

15 *v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014).  Apple expressly

16 preserves its objection to producing any documents or things that relate to Plaintiffs'

17 trade secret misappropriation claim, even if they also relate to *other* claims, until

18 Plaintiffs comply with Section 2019.210.  Nonetheless, based on this Court's April 17,

19 June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents

20 or things that relate solely to Plaintiffs' trade secret misappropriation claim until

21 Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the

22 preceding objection.

23       Subject to and without waiver of the foregoing General and Specific Objections

24 and under the provisions of the Protective Order and ESI Stipulation entered in this case,

25 Apple agrees to produce documents responsive to the unobjectionable scope of this

26 Request, to the extent such information exists and is located after a reasonably diligent

27 search.

28 **REQUEST FOR PRODUCTION NO. 117:**

85

Gibson, Dunn & Crutcher LLP

**Exhibit 2**
**-46-**

1   Plaintiffs have not yet complied with Section 2019.210.  *See* Dkt. Nos. 37, 54, 79; *see*

2   *also, e.g.*, *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D.

3   Cal. Sept. 3, 2019) (Early, J.); *E. & J. Gallo Winery v. Instituut Voor Landbouw-En*

4   *Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018); *Swarmify, Inc.*

5   *v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018); *Jobscience, Inc.*

6   *v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014).  Apple expressly

7   preserves its objection to producing any documents or things that relate to Plaintiffs'

8   trade secret misappropriation claim, even if they also relate to *other* claims, until

9   Plaintiffs comply with Section 2019.210.  Nonetheless, based on this Court's April 17,

10  June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents

11  or things that relate solely to Plaintiffs' trade secret misappropriation claim until

12  Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the

13  preceding objection.

14      Subject to and without waiver of the foregoing General and Specific Objections

15  and under the provisions of the Protective Order and ESI Stipulation entered in this case,

16  Apple agrees to produce documents responsive to the unobjectionable scope of this

17  Request, to the extent such information exists and is located after a reasonably diligent

18  search.

19  **REQUEST FOR PRODUCTION NO. 120:**

20      All documents and things that refer or relate to, or otherwise evidence, the

21  inventive contribution of any of the named inventors to the subject matter claimed in

22  any of the Disputed Patents.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 120:**

24      Apple incorporates by reference its General Objections and Objections to

25  Definitions and Instructions.

26      Apple objects to this Request to the extent it seeks documents and things protected

27  from discovery by the attorney-client privilege, the work-product doctrine, the common-

28  interest privilege, and/or any other applicable privilege, immunity, or protection.  Apple

Gibson, Dunn &
Crutcher LLP

1    objects to this Request as overbroad and unduly burdensome to the extent it seeks

2    information neither relevant to the issues in the present action nor reasonably calculated

3    to lead to the discovery of admissible evidence.  Apple objects to this Request to the

4    extent that it seeks information already in Plaintiffs' possession or information that is

5    obtainable from another source, such as publicly available materials, that is more

6    convenient, less burdensome, or less expensive.  Apple objects to this Request as

7    overbroad and unduly burdensome to the extent it seeks documents not within Apple's

8    possession, custody, or control.  Apple objects to this Request on the grounds that it is

9    overly broad and unduly burdensome to the extent it requests "[a]ll documents and

10   things" relating to the subject matter of the request.  Plaintiffs' inventorship and/or

11   ownership claims related to the Disputed Patents is based on Apple's alleged use of

12   Plaintiffs' allegedly confidential trade secrets, and thus this Request is improper because

13   Plaintiffs have not yet complied with Section 2019.210.  *See* Dkt. Nos. 37, 54, 79; *see

14   also, e.g.*, *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D.

15   Cal. Sept. 3, 2019) (Early, J.); *E. & J. Gallo Winery v. Instituut Voor Landbouw-En

16   Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018); *Swarmify, Inc.

17   v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018); *Jobscience, Inc.

18   v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014).  Apple expressly

19   preserves its objection to producing any documents or things that relate to Plaintiffs'

20   trade secret misappropriation claim, even if they also relate to *other* claims, until

21   Plaintiffs comply with Section 2019.210.  Nonetheless, based on this Court's April 17,

22   June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents

23   or things that relate solely to Plaintiffs' trade secret misappropriation claim until

24   Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the

25   preceding objection.

26        Subject to and without waiver of the foregoing General and Specific Objections

27   and under the provisions of the Protective Order and ESI Stipulation entered in this case,

28   Apple agrees to produce documents responsive to the unobjectionable scope of this

1  Request, to the extent such information exists and is located after a reasonably diligent

2  search.

3  **REQUEST FOR PRODUCTION NO. 121:**

4      All documents and things referring to, relating to, or evidencing any contribution

5  by Defendant's employees to the subject matter claimed in the Disputed Patents.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 121:**

7      Apple incorporates by reference its General Objections and Objections to

8  Definitions and Instructions.

9      Apple objects to this Request to the extent it seeks documents and things protected

10  from discovery by the attorney-client privilege, the work-product doctrine, the common-

11  interest privilege, and/or any other applicable privilege, immunity, or protection.  Apple

12  objects to this Request as overbroad and unduly burdensome to the extent it seeks

13  information neither relevant to the issues in the present action nor reasonably calculated

14  to lead to the discovery of admissible evidence.  Apple objects to this Request to the

15  extent that it seeks information already in Plaintiffs' possession or information that is

16  obtainable from another source, such as publicly available materials, that is more

17  convenient, less burdensome, or less expensive.  Apple objects to this Request as

18  overbroad and unduly burdensome to the extent it seeks documents not within Apple's

19  possession, custody, or control.  Apple objects to this Request on the grounds that it is

20  overly broad and unduly burdensome to the extent it requests "[a]ll documents and

21  things" relating to the subject matter of the request.  Plaintiffs' inventorship and/or

22  ownership claims related to the Disputed Patents is based on Apple's alleged use of

23  Plaintiffs' allegedly confidential trade secrets, and thus this Request is improper because

24  Plaintiffs have not yet complied with Section 2019.210.  *See* Dkt. Nos. 37, 54, 79; *see*

25  *also, e.g.*, *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *2 (C.D.

26  Cal. Sept. 3, 2019) (Early, J.); *E. & J. Gallo Winery v. Instituut Voor Landbouw-En*

27  *Visserijonderzoek*, 2018 WL 3062160, at *4 (E.D. Cal. June 19, 2018); *Swarmify, Inc.*

28  *v. Cloudflare, Inc.*, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018); *Jobscience, Inc.*

Gibson, Dunn & Crutcher LLP

92

**APPLE INC.'S RESPONSES TO PLAINTIFFS' THIRD SET OF RFPS**
Case No. 8:20-CV-00048-JVS (JDEX)

**Exhibit 2**
**-49-**

*v. CVPartners, Inc.*, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014).  Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210.  Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections and under the provisions of the Protective Order and ESI Stipulation entered in this case, Apple agrees to produce documents responsive to the unobjectionable scope of this Request, to the extent such information exists and is located after a reasonably diligent search.

**REQUEST FOR PRODUCTION NO. 122:**

All documents and things referring or relating to Defendant's practices, procedures, and/or policies relating to submission of information for possible inclusion in patent applications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 122:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection.  Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence.  Apple objects to this Request on the grounds that it is overly broad and unduly burdensome to the extent it requests "[a]ll documents and things" relating to the subject matter of the request.  Apple objects to this

**APPLE INC.'S RESPONSES TO PLAINTIFFS' THIRD SET OF RFPS**
Case No. 8:20-CV-00048-JVS (JDEX)

**Exhibit 2**
**-50-**

1    Request as overbroad and unduly burdensome to the extent it seeks information already

2    in Plaintiffs' possession, custody, or control.   Apple expressly preserves its objection to

3    producing any documents or things that relate to Plaintiffs' trade secret misappropriation

4    claim, even if they also relate to *other* claims, until Plaintiffs comply with Section

5    2019.210.   Nonetheless, based on this Court's April 17, June 15, and July 14 Orders

6    (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely

7    to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section

8    2019.210—without waiving, or intending to waive, the preceding objection.

9            Subject to and without waiver of the foregoing General and Specific Objections,

10   Apple is willing to meet and confer regarding the scope of this Request.

11   **REQUEST FOR PRODUCTION NO. 129:**

12           All communications between Defendant and any individual who previously

13   worked for Plaintiffs referring or relating to subject matter disclosed or claimed in the

14   Disputed Patents.

15   **RESPONSE TO REQUEST FOR PRODUCTION NO. 129:**

16           Apple incorporates by reference its General Objections and Objections to

17   Definitions and Instructions.

18           Apple objects to this Request to the extent it seeks documents and things protected

19   from discovery by the attorney-client privilege, the work-product doctrine, the common-

20   interest privilege, and/or any other applicable privilege, immunity, or protection.  Apple

21   objects to this Request as overbroad and unduly burdensome to the extent it seeks

22   information neither relevant to the issues in the present action nor reasonably calculated

23   to lead to the discovery of admissible evidence.  Apple objects to this Request to the

24   extent that it seeks information already in Plaintiffs' possession or information that is

25   obtainable from another source, such as publicly available materials, that is more

26   convenient, less burdensome, or less expensive.  Apple objects to this Request as

27   overbroad and unduly burdensome to the extent it seeks documents not within Apple's

28   possession, custody, or control.  Apple objects to this Request because it seeks "all

Gibson, Dunn &
Crutcher LLP

**Exhibit 2**
**-51-**

communications," which will be negotiated and produced pursuant to the ESI Order in this case.   Apple objects to this Request as overbroad and unduly burdensome to the extent it requests information predating the release of the Accused Products and, in fact, is not limited to any relevant time period.   Apple objects to this Request to the extent it requires Apple to draw a legal conclusion in order to respond.   Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information already in Plaintiffs' possession, custody, or control.   Apple expressly preserves its objection to producing any documents or things that relate to Plaintiffs' trade secret misappropriation claim, even if they also relate to *other* claims, until Plaintiffs comply with Section 2019.210.   Nonetheless, based on this Court's April 17, June 15, and July 14 Orders (Dkt. Nos. 37, 54, 79), Apple will withhold only documents or things that relate solely to Plaintiffs' trade secret misappropriation claim until Plaintiffs comply with Section 2019.210—without waiving, or intending to waive, the preceding objection.

Subject to and without waiver of the foregoing General and Specific Objections, Apple is willing to meet and confer regarding the scope of this Request.

**REQUEST FOR PRODUCTION NO. 130:**

Documents sufficient to identify the relationship between Apple and each of its affiliates, including without limitation, its predecessors, successors, parents, subsidiaries, divisions, and partners.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 130:**

Apple incorporates by reference its General Objections and Objections to Definitions and Instructions.

Apple objects to this Request to the extent it seeks documents and things protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, and/or any other applicable privilege, immunity, or protection.  Apple objects to this Request as overbroad and unduly burdensome to the extent it seeks information neither relevant to the issues in the present action nor reasonably calculated to lead to the discovery of admissible evidence.  Apple expressly preserves its objection

1   Request, to the extent such information exists and is located after a reasonably diligent

2   search.

3

4

5   Dated:  August 17, 2020             JOSHUA H. LERNER
                                    H. MARK LYON

6                                      BRIAN M. BUROKER
                                    BRIAN A. ROSENTHAL

7                                      ILISSA SAMPLIN
                                    ANGELIQUE KAOUNIS

8                                      BRIAN K. ANDREA
                                    GIBSON, DUNN & CRUTCHER LLP

9

10

11                         By:  */s/ Joshua H. Lerner*
                                  Joshua H. Lerner

12

13                        *Attorneys for Defendant Apple Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I am a citizen of the United States of America and I am employed in Irvine, California. I am over the age of 18 and not a party to the within action.

On August 17, 2020, I served the within DEFENDANT APPLE INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT APPLE INC. (NOS. 61-147) on the parties or their counsel shown at the email addresses shown below:

KNOBBE, MARTENS, OLSON & BEAR, LLP

Joseph R. Re

joseph.re@knobbe.com

Stephen C. Jensen

steve.jensen@knobbe.com

Perry D. Oldham

perry.oldham@knobbe.com

Stephen W. Larson

stephen.larson@knobbe.com

Adam B. Powell

adam.powell@knobbe.com

Mark Kachner

mark.kachner@knobbe.com

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on August 17, 2020, at Irvine, California.

_Tracy A Morgan_

Tracy A. Morgan

EXHIBIT 4

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | Andrea, Brian |
| **Cc:** | Masimo.Apple; *** Apple-Masimo |
| **Subject:** | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians |
| **Date:** | Tuesday, March 9, 2021 6:40:00 PM |

Brian,

Thank you for your email.  As an initial matter, we do not understand why Apple keeps combining numerous separate issues into a single email.  That makes the parties' correspondence harder to follow by conflating issues and omitting several of Plaintiffs emails to which Apple is responding.  Nevertheless, we respond to each issue below.

**Apple's List of ESI Custodians**

We do not understand Apple's criticism regarding the timing of our prior email.  We confirmed the parties were at an impasse regarding an issue we have been discussing for many months and, shortly thereafter, we sent you our portion of the joint stipulation.  Your response to that email confirmed the parties' impasse.

**Apple's Proposal Regarding Search Terms**

We responded to Apple's proposal on this issue separately.

**Gerry Hammarth**

Mr. Hammarth has some knowledge of Cercacor's business and products in general, but we do not believe he is "knowledgeable about and [was] involved with the core issues or subjects in this case" as required by the ESI Order.   However, Apple is welcome to include Mr. Hammarth on its list of custodians/search terms that it requests Plaintiffs search.

**Former Employees**

Your assertion that we refused to provide additional details about former employees is not correct.  As we have explained, to the extent Apple employed the former employees in relevant areas, our view is they should be part of the ***potential*** candidates for ESI searching.  We also believe that Apple's communications with these individuals is relevant to several issues concerning Lamego and O'Reilly, including Apple's knowledge that it was obtaining Plaintiffs' confidential information, inducement of former employees to provide confidential information, and willfulness.  That is why we disclosed them to Apple on Plaintiffs' list of potential ESI custodians.

As for whether Apple should have disclosed these individuals on ***Apple's*** list of potential ESI custodians, Apple has previously asserted some of these individuals were not relevant because they worked on unrelated projects at Apple, like the Apple Airpods.  We may ultimately agree with Apple, but to make that agreement, we would need to know what each former employee did at Apple.  Apple provided some of that information in response to Interrogatory No. 11, but has not disclosed

**Exhibit 4**
-72-

what each individual did at Apple.

**Lamego and Nazzaro's Emails and Files**

As we have explained, we are asking for facts to determine why these files were deleted and whether they can be recovered from another source.  We need to obtain the facts before we can take a position as to what Apple's legal obligations were at the time Lamego and Nazzaro left Apple.  We address each bullet point below:

- Apple appears to be drawing a distinction between "destroying" files and "removing" them from Apple's system.  Can you explain?  What does Apple do when it "removes" files from its system?  Does Apple move or copy the files to some other location or device?  Or does it delete all instances of those files?  If Apple deletes all instances of those files, does it simply delete the files or does it "wipe" or overwrite files?

- What software does Apple use to search emails?  Most software allows for searching multiple custodians at once, so we may be able to offer some suggestions.

- Apple states that it has not exported Lamego or Nazzaro's files for other litigation.  Has Apple done so for any other purpose?

- It sounds like Apple is taking the position that it must have removed Lamego and Nazzaro's emails and files 4-10 weeks after they left because that is Apple's standard procedure.  Has Apple been able to verify that it actually removed Lamego and Nazzaro's emails 4-10 weeks after they left?  We reviewed APL-MAS_75595-99, but the file is illegible.  Please produce a new copy that is legible.

- Apple claims it does not understand what we mean by "a relevant area."  As we have previously explained, Apple itself asserted that some individuals did not work in a relevant area.  For example, Apple asserted that one individual was not relevant because he worked on the Apple Airpods project.  If that person did not also work on something relevant to the case, we would likely agree with that assessment.  Thus, we are asking Apple to identify the individuals that *Apple* believes worked in an area relevant to the case.
  - Apple also asserts that Plaintiffs are contending any individual who worked for both Plaintiffs and Apple worked in a "relevant area."  We have made clear that is not our position.  We have consistently explained that we are not necessarily asking Apple to search all former employees.  A relevant area may include, by way of example and not limitation, physiological monitoring, sensor design, or health-related app development.  Until Apple explains what each individual did at Apple, it is impossible for us to say whether the individual works in a "relevant area."  Apple—not Plaintiffs—have the requisite knowledge.

  - We reserve all rights if Apple chooses to delete any files of any former employees.

**Plaintiffs' Document Retention**

**Exhibit 4**
-73-

Apple also asks Plaintiffs about their document retention policies.  We do not understand what this
has to do with Plaintiffs' questions about Apple's destruction of Lamego and Nazzaro's files.
 Regardless, we will search for and produce any document retention and destruction policies and
practices.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, March 3, 2021 5:30 AM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

I'm writing regarding the parties' ongoing discussions regarding ESI custodians, including in response
to your emails dated February 24, 2021 at 6:18, 6:46, and 6:49 pm PT.

**Plaintiffs' complaints about Apple's ESI custodian list (your 2/24/21 email sent at 6:18pm PT)**:
Apple does not believe there is anything in your email that requires a response in view of Plaintiffs'
joint stipulation served 15 minutes after this email.  As you know, Apple disagrees with Plaintiffs'
position and is at a loss as to what more can be done regarding Plaintiffs' complaints about Apple's
list of ESI custodians if Plaintiffs are going to continue to assert that the list is deficient without
providing a basis for their assertion.  While Apple believes the parties could have resolved this issue
through the exchange of information, Plaintiffs decided to file their joint stipulation and Apple will
respond to Plaintiffs' arguments in its section of that joint stipulation.

**Apple's proposal that the parties move forward with search terms on undisputed search terms**:
We have not yet heard from you as to whether Plaintiffs are willing to move forward with
exchanging search terms on undisputed custodians, as Apple suggested more than a week ago.
While you stated that "Apple's proposal does not resolve the parties' dispute," you also indicated
that you would "respond to that proposal separately."  Please let us know whether Plaintiffs agree
with Apple's proposal and, if so, your availability for a discussion about mutually agreeable
custodians.

**Plaintiffs' failure to identify Gerry Hammarth as an ESI custodian**:  In their response to Apple's
Interrogatory No. 1 ("Identify by name and title at least five people at Masimo and at least five

**Exhibit 4**
-74-

people at Cercacor having the most knowledge about or responsibility….”), Plaintiffs identified Gerry Hammarth as an individual who is “knowledgeable about Cercacor's products.”  Plaintiffs did not, however, identify Mr. Hammarth as an ESI custodian.  Please explain why Plaintiffs did not list Mr. Hammarth as an ESI custodian.

**Plaintiffs' refusal to provide additional information regarding the "former employees" (your 2/24/21 email sent at 6:46pm PT)**:  Apple does not understand your refusal to provide additional specific descriptions about the relevant knowledge that each of the former employees' of Plaintiffs later employed by Apple holds that warranted Plaintiffs identifying each "former employee" on their list of ESI custodians.  As noted in our prior email, stating only that each individual's knowledge is "former employee later employed by Apple; Acquisition, use, and disclosure of Plaintiffs' confidential information" is completely unhelpful and does nothing to help Apple assess why Plaintiffs believe each person has relevant knowledge and should be identified as an ESI custodian. The fact that the "ESI Order does not require such a description" misses the point; Apple requested the additional information so that it can understand why Plaintiffs believe the former employees have relevant knowledge.  Plaintiffs' refusal to provide additional information does nothing to move the ball forward with respect to this dispute.

Apple reiterates its request for information regarding the relevant knowledge that each "former employee" has that warrants Plaintiffs listing them on their list of ESI custodians.  If Plaintiffs' sole reason for listing the "former employees" is the fact that they were at one point employed by Plaintiffs and were later employed by Apple, then please just tell us that.  If there is an additional reason Plaintiffs listed each "former employee," then tell us that instead.

Your email states that Plaintiffs" remain willing to discuss these former employees, but we need more information from Apple.”  While Apple has already stated it is willing to provide information regarding each "former employee," including by providing supplemental responses to Interrogatory No. 11 (which asks Apple to "identify all current or former Apple employees who worked at Masimo and/or Cercacor before being employed by Apple….”), the information Apple is willing to provide in response to discovery requests is separate from this dispute.  Plaintiffs identified each former employee as an individual knowledgeable about the issues in this case, pursuant to the ESI Order, and Apple requests the basis for those identifications.  Plaintiffs should not require information from Apple to inform Apple why it is they believe each individual has relevant knowledge.

**Plaintiffs' questions regarding Lamego/Nazzaro emails (your 2/24/21 email sent at 6:49pm PT)**:  Your email did not answer our question as to whether or not Plaintiffs contend that Apple had some obligation to retain either Marcelo Lamego and David Nazzaro's documents when they left Apple in 2014.  Please let us know if that is Plaintiffs' contention and, if so, the basis for such a contention.

Your email asked a number of question, which I have listed below, followed by Apple's response:

- *Does Apple have any form or archive or backup that might contain emails, files, or devices used by Lamego or Navarro?  What did Apple do to confirm the destruction of any of Lamego's and Navarro's emails, files, or devices that were destroyed?*

  Apple response:  Apple does not have any form or archive or backup that might contain

**Exhibit 4**
-75-

emails, files, or devices used by Lamego or Nazzarro.  As noted in my prior email, however, Apple has preserved, and is collecting and reviewing, any remaining relevant files that exist. Indeed, Apple has already begun producing such documents and will continue to do so on a rolling basis, to the extent additional documents are identified.  Mr. Lamego and Nazzarro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, as confirmed by the group that oversees such procedures in accordance with Apple's document retention and destruction policies and practices.

- *Does Apple have the ability to search groups of email accounts at once?  For example, could Apple search emails from individuals who work in physiological monitoring, individuals in Lamego's group, executives, or a custom list of individuals?*

  <u>Apple response</u>:  Apple does not have the ability to search groups of email accounts at one time.  The only way to search an individual's email is by pulling the email from each individual and performing searches.

- *What do you mean by "non-custodial databases"?  Do such databases include emails, files, text messages, chat messages, or devices used by Lamego or Navarro?  Has Apple ever exported Lamego or Navarro's files for other litigation, such that it could search the custodial data exported for the other litigation?*

  <u>Apple response</u>:  Apple means document repositories that are not "assigned" to any specific custodian, and instead are used by multiple individuals to store files or information.  One example of a "non-custodial database" would be a server folder.  Another example would be Apple's financial records.  Those databases do not include emails, text messages, chat messages, or devices used by Lamego or Nazzarro unless for some reason those individuals attached an email or text/chat message to a document in the database.  Apple has not exported either individual's files for other litigation.

- *Your email is unclear as to whether Apple actually removed Lamego and Navarro's files 4-10 weeks after they left Apple or if you are assuming that is the case because that is Apple's standard practice.  Please provide the actual date that Lamego and Navarro's emails and files were removed.  Please also provide a copy of Apple's document retention and destruction policies and practices, or provide bates numbers if those documents have been produced.*

  <u>Apple response</u>:  Apple has already produced its record management policy.  *See* APL-MAS_75595-99.  As stated in my previous email and again above,  Mr. Lamego and Nazzarro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, as confirmed by the group that oversees such procedures in accordance with Apple's document retention and destruction policies and practices.  Apple does not track the "actual date" that files for departing employees are removed, and thus we cannot provide you with that information.

- *Your email asks which individuals we are referring to when we say "other individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area."  We have been discussing the issue of former employees for quite some time and have repeatedly explained our position.  We identified the former employees that we know of in our ESI*

**Exhibit 4**
-76-

*custodian list.  We asked Apple to identify the former employees that it knows of and identify the individuals that worked in a relevant area.  Apple has so far declined to do so.  Please provide a list of such individuals and identify if Apple has destroyed the files for any such individuals.  Please confirm Apple will retain the files for any such individuals even if they stop working with Apple while this case is pending.*

> *Apple response*:  Apple still does not understand what Plaintiffs mean by "a relevant area." Contrary to your statement, Plaintiffs have not explained what they mean by this statement. As we have indicated many times, Apple has investigated Plaintiffs' allegations in this case and have identified two "former employees" that appear relevant—Michael O'Reilly and Marcelo Lamego.
>
> It appears that Plaintiffs' position is that the fact that an individual was previously employed by Plaintiffs and later employed by Apple means they "worked for or with Apple in a relevant area."  Apple disagrees, and thus reiterates its request for Plaintiffs to define what they mean by "relevant area."  To the extent Plaintiffs are able to identify relevant individuals, Apple will investigate the responses to your questions.

Finally, Apple asks that Plaintiffs answer the following questions regarding each individual they have identified as an ESI custodian that is no longer employed by Plaintiffs, including but not limited to both Marcelo Lamego and Michael O'Reilly:

- Did Plaintiffs maintain <u>all</u> of each individuals' documents and emails after he/she left Masimo or Cercacor?

- If Plaintiffs deleted any documents from each individual, please provide the date on which those documents were deleted, what documents were deleted, and whether the documents were deleted in accordance with Plaintiffs' document retention and destruction policies or practices.

- Please confirm that Plaintiffs will provide a copy of their document retention and destruction policies and practices, or provide bates numbers if those documents have been produced.

We look forward to receiving your responses.

Thanks, and best regards,
Brian

**Brian Andrea**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>

Exhibit 4
-77-

**Sent:** Wednesday, February 24, 2021 9:18 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

Thank you for your emails.  We disagree with your discussion of Plaintiffs' prior joint stipulation, but it does not appear helpful to further debate that issue by email.   We believe the record is clear.

We also disagree with your assertions regarding Apple's list of ESI custodians.  Simply repeating your assertion that Plaintiffs have not provided a basis for their position does not make your characterization of our position correct.   We have been very clear about our position and will repeat it here again.  The dispute is not about Apple adding a particular name that ***Plaintiffs*** can identify as missing.  The parties dispute Apple's fundamental obligations under the ESI Order.  Plaintiffs believe Apple must identify the potential ESI custodians that fall within the scope as defined by the ESI Order.  Apple apparently disagrees.  That is the parties' dispute, and simply adding individuals that Plaintiffs identify does not alter that underlying dispute.

We appreciate that Apple has now acknowledged the five categories of individuals that we originally identified for Apple on January 22, but Apple's discussion also does not resolve the parties' dispute.  Your email states that Apple has identified some people in four of the categories but does not state that it has identified all potential ESI custodians with knowledge in each category.  Instead, Apple shifts to trying to characterize Plaintiffs position as an extreme, asking if Plaintiffs are demanding that Apple identify "every single person that Lamego [or O'Reilly] interacted with during his time at Apple, regardless of what their knowledge is about the issues int his case."  We have always been clear that is not our position.  My February 12 email, which was not included in the email chain below, explained that "we expected Apple's list to include ***relevant*** Apple employees from at least the following categories . . .."  Thus, we have already told you what we expect.  Our position is that Apple—not Plaintiffs—have the requisite knowledge to identify the individuals within those categories that should be included.

Similarly, we have also never asserted that all of Plaintiffs' former employees should be listed on Apple's list of ESI custodians.  Rather, we explained that ***Apple*** should determine which of those former employees have knowledge falling within the definition of the ESI Order.  Apple has argued that some individuals lack knowledge because they worked on unrelated projects.  But, again, Apple has declined to list the people that worked on relevant projects.

Apple also asserts it is not listing certain individuals because "the collection of ESI is burdensome, time consuming, and costly."  As we have repeatedly explained, we are not necessarily asserting that all individuals on Apple's list would need to be searched.  Rather, we are asking for a list of potential ESI custodians so that the parties can have an informed discussion as to which ESI custodians would ultimately be searched.  Our position remains that this is what is required by the ESI Order, and we

**Exhibit 4**
**-78-**

have provided a list in accordance.  Apple could easily provide such a list, and then the parties can discuss how to keep the searching itself reasonable.

For all these reasons, the parties do not appear to be making any progress on the fundamental dispute that we identified above.  The parties continue to dispute Apple's obligations under the ESI Order: whether Apple is required to provide the universe of potential ESI custodians fitting the scope defined in the ESI Order.

Your February 17 email also addresses two other issues: (1) Plaintiffs' list of ESI custodians and (2) the destruction of Marcelo Lamego's and David Nazzaro's files.  Those issues do not appear to be relevant to or advance our fundamental dispute discussed above.  Thus, we will respond to those portions of your email separately.

As for your February 23 email, Apple's proposal does not resolve the parties' dispute.  We will also respond to that proposal separately.

Best regards,
Adam


**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Tuesday, February 23, 2021 5:52 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We have not yet received a response to the email below.  In any event, Apple is eager to move forward with the parties' ESI discussions, and proposes that in the interest of avoiding further delay, the parties move forward with discussing search terms for custodians on which they agree.  We propose that the parties have a discussion this week about the custodians to which they agree from both lists, and select a date next week for the mutual exchange of search terms for those custodians.   Please let us know if Plaintiffs agree, and if so, your availability for a discussion this week about mutually agreeable custodians.

Thanks,
Brian


**Brian Andrea**

Exhibit 4
-79-

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Wednesday, February 17, 2021 9:23 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam,

I am responding to your emails sent Friday, February 12 at 3:53pm PT and 5pm PT, and Sunday, February 14 at 3:40pm PT regarding the parties' ongoing discussions regarding ESI custodians.  As an initial matter, you misrepresent the circumstances surrounding Plaintiffs' withdrawal of their joint stipulation.  Plaintiffs' joint stipulation sought to compel Apple to exchange proposed lists of ESI custodians instead of discussing limits on custodians before exchanging proposed lists, as Apple proposed.  While Apple maintains that such a discussion would have been helpful (as evidenced at least by Plaintiffs' complaints about Apple's list of proposed custodians based on the number of custodians identified), Apple did not see the point in burdening the Court with that dispute.  Accordingly, Apple agreed to exchange lists but did not, as your email implies, agree that it would identify any specific individuals.   Your insinuation that Apple agreed to anything else is plainly incorrect.

**Plaintiffs' list of ESI custodians**:

While we appreciate your willingness to allow us to share the list with Apple's in-house counsel, we maintain that Plaintiffs' designation of their list as attorneys' eyes only is wholly improper.  There is nothing in Plaintiffs' list that reveals any confidential information.

Additionally, Plaintiffs' "areas of knowledge" for many of Plaintiffs' listed ESI custodians is unhelpful. Specifically, Plaintiffs' list includes eighteen (18) former employees of theirs that were later employed by Apple—excluding Lamego and O'Reilly—and for each of those individuals, Plaintiffs cite the "areas of knowledge" as "former employee later employed by Apple; Acquisition, use, and disclosure of Plaintiffs' confidential information."  This description provides no information as to what specific relevant knowledge those individuals have other than the fact that they were previously employed by Plaintiffs and were later employed by Apple.  Please identify what specific knowledge of the "acquisition, use, and disclosure of Plaintiffs' confidential information" each identified custodian has that is relevant to this case.    We also note that Plaintiffs did not provide an "area of knowledge" for Tony Alan, despite listing Tony Alan on Plaintiffs' initial list of ESI custodians. Please confirm that Plaintiffs are dropping Mr. Alan as a proposed ESI custodian; if Plaintiffs intend

Exhibit 4
-80-

to keep Mr. Alan on the list, please also identify the specific knowledge that Mr. Alan has that is relevant to this case.

**Apple's list of ESI custodians:**

Plaintiffs still have not provided a response to Apple's request for the basis for their assertion that Apple's list is deficient.  As discussed below, we have addressed the specific individuals you have indicated you believe are missing, and we have even added custodians to Apple's list in an attempt to move this process forward.   Nonetheless, Plaintiffs continue to assert that Apple is "exclud[ing] individuals Apple knew had relevant information," but also continue to refuse to identify the individuals that you contend are missing.  Apple is confused by Plaintiffs' position; Plaintiffs refused to discuss reasonable limits on ESI custodians with Apple previously, arguing that the ESI Order does not require a specific number of individuals, yet Plaintiffs now appear to be complaining about Apple's ESI list based solely on the number of ESI custodians Apple identified.

One of the reasons Apple insisted on exchanging information about the knowledge each proposed custodian has that is relevant to this case is so that the parties can assess whether each others' lists are sufficient and whether there are additional custodians with specific areas of knowledge they believe should be listed on the other party's list.  As we have stated several times, and as discussed below, Apple has identified the proposed ESI custodians that have knowledge relevant to this case. If there are additional custodians (or custodians with specific areas of knowledge relevant to the case) that Plaintiffs believe should be identified (either now, or as discovery progresses), please let us know and we would be happy to investigate.

With respect to the categories of Apple employees you listed in your email dated February 12, Apple responds below:

> (1) <u>individuals who worked with Lamego</u>:  as an initial matter, Mr. Lamego was at Apple for only 6 months.  Apple has identified every inventor listed with Mr. Lamego on each of the Disputed Patents, as well as Mr. Lamego's supervisor.  It is Plaintiffs' position that Apple should identify every single person that Lamego interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

> (2) <u>individuals who worked with O'Reilly</u>:  Apple identified Mr. O'Reilly along with Mr. Mistri, who has worked with Mr. O'Reilly.  Is it Plaintiffs' position that Apple should identify every single person that O'Reilly has interacted with during his time at Apple, regardless of what their knowledge is about the issues in this case?

> (3) <u>individuals who were involved in the accused aspects of the Apple Watch</u>:  Apple has identified Mr. Hotelling, Ms. Haggerty, Mr. Land, and Mr. Waydo, all of whom have knowledge of the "accused aspects of the Apple Watch."  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to, particularly in view of your prior representation that you are not requesting that Apple identify every person that has worked on the Apple Watch.

**Exhibit 4**
**-81-**

(4) <u>individuals who were involved in the accused business and marketing strategies</u>:  Apple has identified Mr. O'Reilly, Ms. Caldbeck, and Mr. Mistri, all of whom have knowledge about the "accused business and marketing strategies."

(5) <u>individuals who were involved in the patent applications at issue but not listed as an inventor</u>:  we have listed every inventor listed with Mr. Lamego on each of the Disputed Patents.  It is entirely unclear to Apple what additional individuals Plaintiffs are referring to.

Furthermore, Plaintiffs are now alleging that Plaintiffs' former employees later employed by Apple should be on Apple's list of ESI custodians, without providing any basis for such a position.  The fact that an employee was previously employed by Plaintiffs is not a sufficient basis to allege those employees have knowledge about the issues in this case, and Plaintiffs have provided no basis for their assertion that the former employees "took Plaintiffs' trade secret to Apple."  The collection of ESI is burdensome, time consuming, and costly, and Apple is not going to agree to identify custodians simply based on an unfound conclusory assertion by Plaintiffs that certain employees "took Plaintiffs' trade secret to Apple."  If you have a specific basis for that assertion, please let us know, but based on Apple's investigation, the nineteen former employees Plaintiffs identified on their list do not have knowledge relevant to the issues in this case.

**Marcelo Lamego and David Nazzaro**:

Your email on Monday (February 15) states that Plaintiffs are "surprised that [Apple is] just now informing us that Apple did not maintain emails from Mr. Lamego and Mr. Navarro."  We are not sure why Plaintiffs would be surprised by this—both employees left Apple in 2014, years before Plaintiffs filed their Complaint in this case.  Do Plaintiffs' contend that Apple had some obligation to retain either individuals' documents when they left Apple?  If so, what is your basis for such a contention?

I have addressed your specific questions below:

- Your request that Apple "conduct a company-wide search of 'Lamego' and 'Navarro' and preserve all resulting emails" is unreasonable and overburdensome.  As you know, Apple employs approximately 150,000 employees worldwide.  Apple does not have the ability to run a search across all employees' emails—to accomplish Plaintiffs' requested search, Apple would have to pull the emails for every single employee and run a separate search on the email for each employee separately.  Such a request would be exceedingly costly and time-consuming, and is certainly not proportional to the needs of this case.
- Apple does not have any electronic devices used by Lamego or Navarro, or any images of such devices.  Nor does Apple have files from their computers, text messages, or chat messages other than those that exist is other custodians' files or in non-custodial databases.   Apple has preserved, and is collecting and reviewing, any remaining relevant files that exist.  Indeed, Apple has already begun producing such documents and will continue to do so on a rolling basis, to the extent additional documents are identified.
- Mr. Lamego and Navarro's emails and files were removed from Apple's system sometime between approximately 4 and 10 weeks after they left Apple, in accordance with Apple's

**Exhibit 4**
-82-

procedures for departing employees.   Apple will produce a copy of its document retention
and destruction policies and practices.

- With respect to your final question ("Did Apple destroy emails, files, or devices of any other
  individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant
  area?"), Apple rejects the implication that Apple somehow acted improperly by "destroy[ing]"
  any information.  In any event, please let us know which individuals you are referring to.  As a
  general matter, we are unaware of the removal of the files of any other individuals with
  knowledge relevant to the issues in this case.

Thanks, and best regards,
Brian


**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Monday, February 15, 2021 1:40 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We are surprised that you are just now informing us that Apple did not maintain emails from Mr.
Lamego and Mr. Navarro.  We request that Apple conduct a company-wide search of "Lamego" and
"Navarro" and preserve all resulting emails.  We presume you have done so already, but please
confirm that Apple has preserved any remaining files, electronic devices (e.g., computers, phones,
storage devices) used by Lamego or Navarro, or any images of such devices.  Please also confirm that
Apple will preserve emails, files, and devices for any other individuals that leave the company and
are related to this dispute, including all individuals who worked for or with Plaintiffs and later
worked for or with Apple in a relevant area.  Please also provide a copy of Apple's document
retention and destruction policies and practices, pursuant to Plaintiffs' RFP No. 107.

We would also like to understand the scope of what has been deleted and whether the deleted files
can be recovered.  To that end, please answer the following questions:

1. Does Apple have any other files for Lamego or Navarro, such as files from their computers,
   text messages, or chat messages?

**Exhibit 4**
**-83-**

2. Does Apple have electronic devices used by Lamego or Navarro that are in Apple's custody or control, such as computers, phones, USB storage devices, or cloud storage, or any images of such devices?

3. When did Apple last have custody of Lamego's and Navarro's emails and any files or devices that were destroyed?  Why did Apple destroy them?

4. Does Apple have any form of archive or backup that might contain emails, files, or devices used by Lamego or Navarro?  What did Apple do to confirm the destruction of any of Lamego's and Navarro's emails, files, or devices that were destroyed?

5. Did Apple destroy emails, files, or devices of any other individual who worked for or with Plaintiffs and later worked for or with Apple in a relevant area?

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe** Martens

---

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Friday, February 12, 2021 4:57 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Dear Adam—

Pursuant to our meet and confer earlier this week, and our follow up correspondence, I am writing with the additional information the parties agreed to exchange.

Below is an identification of the knowledge that each of Apple's proposed ESI custodians has that is relevant to the core issues or subjects in this case:

- Mike O'Reilly:  Mr. O'Reilly is the subject of Plaintiffs' allegations related to alleged trade secret misappropriation.

- Steve Hotelling:  Mr. Hotelling was Marcelo Lamego's supervisor during the six months Mr. Lamego was employed by Apple.  Mr. Hotelling is also knowledgeable about the operation and development of the Apple Watch.  Mr. Hotelling is also a named inventor on one of the Apple Disputed Patents and the Apple Disputed Application.

- Brian Land:  Mr. Land is knowledgeable about the operation and development of the Apple Watch hardware.

**Exhibit 4**
-84-

- Steve Waydo:  Mr. Waydo is knowledgeable about the operation and development of the Apple Watch software.

- Wolf Oetting:  Mr. Oetting is a named inventor on two of the Apple Disputed Patents.

- Trevor Ness:  Mr. Ness is a named inventor on two of the Apple Disputed Patents.

- Chinsan Han:  Mr. Han is a named inventor on two of the Apple Disputed Patents.

- Naoto Matsuyuki:  Mr. Matsuyuki is a named inventor on two of the Apple Disputed Patents.

During the parties' meet and confer, Plaintiffs identified additional individuals that they believe should have been identified by Apple as potential ESI custodians.  Specifically, Plaintiffs identified Marcelo Lamego, David Nazzaro, and "individuals on Apple's initial disclosures."  Apple's response to Plaintiffs' request that Apple identify those individuals is set forth below.

- Myra Haggerty:  Apple identified Ms. Haggerty on its initial disclosures based on her knowledge relevant to Plaintiffs' infringement allegations.  In the interest of moving the case forward, Apple is willing to add Ms. Haggerty to its list of ESI custodians. She has knowledge about the operation and development of the Apple Watch.

- Deirdre Caldbeck:   Apple identified Ms. Calbeck because she has knowledge relevant to "marketing relating to the Apple Watch Series 4 and Series 5." In the interest of moving the case forward, Apple is willing to add Ms. Calbeck to its list of ESI custodians at this time.  She has knowledge about the marketing of the Apple Watch.

- Mark Rollins:  Mr. Rollins was identified on Apple's initial disclosures as having knowledge of Apple's financial information related to the Apple Watch.  Mr. Rollins is a corporate witness that would testify regarding non-custodial financial information pulled from Apple's financial databases; he is not an individual that is likely to have ESI relevant to the issues in this case.

- Marcelo Lamego and David Nazzaro:  As we noted in our prior correspondence, Messrs. Lamego and Nazzaro are no longer Apple employees and have not been Apple employees since 2014.  Apple no longer has either individual's email files.  To the extent Apple has relevant documents from either individual in non-custodial databases or the files of other custodians, Apple will produce such documents (and in fact has already begun producing such documents).

Finally, Apple is adding Afshad Mistri to its list of ESI custodians.  Mr. Mistri has knowledge about marketing of the Apple Watch and Apple's interactions with hospitals.

Please note that given the position that Plaintiffs have taken with respect to broad swaths of publicly available information—including photographs of Apple's products and public patents—we are not

**Exhibit 4**
**-85-**

currently able to share critical information about Plaintiffs' allegations with Apple.  Accordingly, we
are making these decisions without the benefit of information we might otherwise have if Plaintiffs
were not designating public information as AEO.

Of course, Apple's investigation into the issues and allegations in this case is ongoing, and Apple
reserves the right to identify additional ESI custodians as its investigation proceeds.  Additionally,
Apple reserves the right to request ESI from individuals that do not appear on Plaintiffs' initial list as
discovery progresses in this case.

Best regards,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

**From:** Andrea, Brian
**Sent:** Thursday, February 11, 2021 9:30 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We don't understand how you can continue to claim that Apple's list is "facially deficient" yet
continue to refuse to provide the basis for that claim.  I asked you multiple times during our call for
your basis, and your response was that "it's not Plaintiffs' job to tell Apple who to put on their list."
Clearly, there are people that Plaintiffs believe should be on Apple's list and it is unclear why you
won't tell us who those people are.

Apple performed a reasonable investigation and identified the people that are knowledgeable about
the issues in this case.  If you believe there are people missing from that list, please let us know who
you believe is missing.  As you know, during the meet and confer, after I asked you for this
information many times, you did mention Messrs. Lamego and Nazzaro as well as "other people on
Apple's initial disclosures."  I promised that we would investigate and get back to you regarding
those names, and we will do so tomorrow.

I also asked you if you expected Apple to identify every person that ever worked on the Apple
Watch; you confirmed that Plaintiffs do not expect Apple to identify every person that worked on

**Exhibit 4**
**-86-**

the Watch.

Finally, I asked you if you expected Apple to identify every Apple current or former employee that was previously employed by Plaintiffs, regardless of what work they did for Plaintiffs or Apple, which is how Plaintiffs apparently came up with the majority of their forty-six custodians.  While you did not give me a straight answer one way or another, I told you that Apple does not believe that the fact that an employee was previously employed by Plaintiffs is a sufficient basis to believe those employees have knowledge about the issues in this case.  If you disagree, please let us know the basis for your disagreement.

I reiterate our request for Plaintiffs' basis for their allegation that Apple's list is deficient.  If you can't provide us with that information, it is unclear to Apple how Apple can try to resolve Plaintiffs' concerns, since we don't know what Plaintiffs' concerns are.

Thanks,
Brian

**Brian Andrea**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Wednesday, February 10, 2021 11:27 PM
**To:** Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Brian,

We disagree with your characterization of virtually everything that you claim occurred during the meet and confer.  Your email again shows why we have suggested that the parties should record meet and confers.

We will reiterate our position.  During the meet and confer, Plaintiffs explained the basis for our assertion that Apple's list is deficient.  In particular, we explained that Apple's list excluded at least the custodians that Plaintiffs had already identified to Apple in its prior joint stipulation and in email correspondence.  We explained that it was not reasonable for Apple to demand that we identify all *other* missing individuals in Apple's list.  While we know Apple's list excluded relevant custodians, we

**Exhibit 4**
**-87-**

have no way of knowing the universe of custodians that Apple has never disclosed to us.  We
explained that we believe the ESI Order puts that obligation on Apple—not Plaintiffs.  This is because
only Apple can perform that investigation.  Indeed, that is why we conducted a reasonable
investigation on our side and identified 46 potential ESI custodians.

We also told you at the very beginning of the call that we have no problem explaining the relevance
of each custodian on our list.  However, we explained that does not resolve our dispute because
Apple's list is facially deficient.  Even if Apple explains that its eight custodians are relevant, that does
not show that **other** individuals are irrelevant.  Thus, while we will provide the requested
information at 5pm pacific on Friday, the exchange will not resolve this dispute.

It is inappropriate for Apple to supplement its list only when Plaintiffs can identify someone who is
missing.  We maintain the ESI Order requires Apple to identify the reasonable universe of potential
custodians.  We believe the parties are at an impasse because Apple has steadfastly refused to
provide such a list.  Therefore, we have a fundamental disagreement as to Apple's obligation under
the ESI Order.  That disagreement has not changed.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, February 10, 2021 3:16 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>
**Cc:** Masimo.Apple <Masimo.Apple@knobbe.com>; *** Apple-Masimo <Apple-
Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam—

I write to memorialize the parties' discussion in this afternoon's meet and confer regarding the
identification of ESI custodians.

Plaintiffs took the position that Apple's list of ESI custodians was deficient, but refused to provide a
basis for that position.  Apple made clear that it conducted a reasonable investigation and identified
those individuals knowledgeable about the core issues in this case, as required by the ESI Order, and
thus it did not understand how Plaintiffs can possibly claim that Apple's list is deficient.  *See* Dkt. 51.
Apple noted that it seemed that Plaintiffs have individuals in mind that they believe Apple should
identify,  but Plaintiffs refused to identify those individuals.  Instead, Plaintiffs took the position that
they were not obligated to provide that information to Apple.  Apple disagreed, noting that the meet
and confer process is intended to facilitate an exchange of information between the parties so that

**Exhibit 4**
**-88-**

the parties can come to ground or at least narrow their disputes, and asked multiple times that Plaintiffs provide the basis for their argument that Apple's list is deficient.

Eventually, after multiple requests, Plaintiffs identified two former Apple employees, Marcelo Lamego and David Nazzaro, as well as "individuals identified in Apple's Initial Disclosures."  Apple agreed to consider whether those individuals should be on its list of ESI custodians and indicated that it would get back to Plaintiffs with a response.

Plaintiffs also took the position that the parties are at an "impasse." Apple disagreed, noting that it was willing to investigate the issues Plaintiffs raised (as discussed above) and also suggesting that the parties exchange further information that would allow each party to assess the sufficiency of each others' list.  Indeed, Apple noted that it has no idea what the relevance is to this case of the vast majority of the forty-six (46) individuals Plaintiffs identified.  Apple suggested that each party should exchange information about the knowledge that each identified individual has, and after that exchange occurs, the parties should have another call to discuss the sufficiency of each others' lists.  Plaintiffs eventually agreed to exchange this information, and asked that Apple suggest a time for the exchange.  Apple suggests the parties exchange descriptions of the relevant knowledge their respective proposed ESI custodians possess at 5:00 p.m. PST on Friday, February 12, 2021.  Please let us know if Plaintiffs agree.

Best,
Brian


**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**Exhibit 4**
**-89-**

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

Exhibit 4
-90-

EXHIBIT 7

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

12790 El Camino Real, Suite 100, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

March 25, 2021

<u>**VIA EMAIL**</u>

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
BAndrea@gibsondunn.com

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write to request a conference of counsel pursuant to Local Rule 37-1 to address Apple's failure to conduct a reasonable search for ESI responsive to Plaintiffs' Requests For Production ("RFPs").  Please promptly provide your availability to meet and confer within ten days.

Apple's communications make clear Apple will not perform a reasonable search for ESI in accordance with its discovery obligations.  Despite Apple's failure to provide a list of potential custodians with discoverable information—as required under the parties' ESI stipulation—Plaintiffs identified forty-two custodians likely to have substantial ESI responsive to Plaintiffs' document requests, including at least RFPs 5-26, 47-49, 51, 61-66, 70-85, 87-97, 100-133, 135-147, 158-161, 165-171, 173-184, 187-211, 213-221, 223-226, 228, 230, 233-235, 238-241, 244-248.  Plaintiffs also proposed search terms likely to identify responsive documents from these custodians.

Apple has repeatedly employed self-help to substantially limit its document production.  Most recently, Apple is attempting to limit discovery to just twelve custodians and is refusing to meet and confer as to custodians <u>and</u> search terms, as required by the parties' ESI stipulation.  We believe twelve custodians is woefully deficient, particularly for a case of this magnitude.  Apple's revenue for its watch and wearables division exceeded $13 billion in the fourth quarter of 2020 alone.  Apple has a large team of individuals who have worked on the relevant projects in this case.  Apple also deleted the files of Marcelo Lamego, which means that broader searching is necessary to try to locate relevant information in the files of other custodians that worked with Lamego.  The use of ESI custodians and search terms is intended to balance the need for ESI discovery with the burden associated with searching and reviewing extensive ESI.  It is not a vehicle for a party to avoid performing a reasonable search under the Federal Rules of Civil Procedure.  Apple's position is particularly problematic because, in response to many of Plaintiffs' requests, Apple has stated it intends to rely entirely on search terms to look for relevant ESI.

Apple also refuses to search Tim Cook's files because he is "busy" and purportedly not "directly" involved in the issues of this case.  Given that Apple can search Mr. Cook's files without involving him, we do not understand what Mr. Cook's workload has to do with this issue.  As for Mr. Cook's relevance, Plaintiffs' complaint alleges Mr. Cook personally interviewed O'Reilly and was involved in Apple's efforts to induce O'Reilly to disclose Plaintiffs' trade secrets.  Dkt. 296-1 ¶ 230.  Plaintiffs also allege

Mr. Cook has "publicly stated that he sees healthcare as central to Apple's future" (*id.*), which is relevant to damages.  *Id.*  Mr. Cook has made clear that healthcare is one of his central focuses at Apple. Plaintiffs are entitled to discovery regarding their allegations.

Plaintiffs request that Apple conduct a reasonable search for responsive documents, including by searching all of the custodians included in my letter of March 12, 2021, with the search terms included in that letter and my letter of March 23, 2021.  We hope the parties are able to resolve this dispute without burdening the Court.  If the parties are not able to reach an agreement, Plaintiffs intend to move for an order compelling Apple to conduct such a search.

Please let us know your availability to discuss these matters.

Best regards,

Adam B. Powell

**Exhibit 7**
**-104-**

# EXHIBIT 9

| | |
|---|---|
| **From:** | Andrea, Brian |
| **To:** | Adam.Powell |
| **Cc:** | Kaounis, Angelique; *** Apple-Masimo; Schuemann, Susanna G.; Masimo.Apple |
| **Subject:** | Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians |
| **Date:** | Friday, April 2, 2021 7:15:09 PM |

Adam,

We write to memorialize our April 2 meet and confer teleconference about the issues raised in Plaintiffs' March 23 and March 25 letters and in Apple's April 1 response.

As discussed, we look forward to receiving the following from you:

1. The legal basis for your proposal of forty-nine custodians at the outset of discovery. You referred to caselaw cited in your prior joint stipulation, but those cases are distinguishable, as we explained in our responsive briefing. If you have applicable legal support, we are glad to consider it.

2. The specific factual basis for believing that each of the forty-nine proposed custodians is proportional to the needs of the case, and that each one is "knowledgeable about" and "involved in the core issues or subjects in this case" as required by the parties' ESI agreement (Dkt. 51). As we reiterated on the call, we are willing to discuss including any custodian likely to possess nonduplicative information that is relevant to any party's claim or defense and proportional to the needs of the case. But as we have made clear in our prior correspondence, we cannot accept Plaintiffs' current proposal, which includes individuals who—as far as we can tell—were never employed by Apple and/or had no involvement in the topics at issue.

3. The legal and factual basis for your request for documents from Tim Cook. We have asked you repeatedly for your legal basis for this request, including during our March 29 meet and confer correspondence and in our April 1 letter, and you have not cited a single case justifying this request. As we document in our April 1 letter, the allegations in the complaint do not justify including Mr. Cook as a custodian. Today, you presented a new unfounded assertion that Mr. Cook has stated that "Apple is focused more and more on healthcare and less and less on computers." You quickly admitted Mr. Cook had *not* actually made that statement, but the fact remains that there is no legitimate basis for collecting documents from Mr. Cook.

Please let us know when we can expect the information you agreed to provide regarding each of your forty-nine proposed custodians, including Mr. Cook.

Regards,
Brian

On Apr 2, 2021, at 11:06 AM, Adam.Powell <Adam.Powell@knobbe.com> wrote:

 [External Email]

Brian,

**Exhibit 9**
**-113-**

We are reviewing your letter, but are available to meet and confer regarding Plaintiffs' March 25 letter at 2pm today.  Please confirm that time still works for you.

Thanks,
Adam

**Adam Powell**
Partner
858-707-4245 **Direct**
**Knobbe Martens**

**From:** Schuemann, Susanna G. <SSchuemann@gibsondunn.com>
**Sent:** Thursday, April 1, 2021 4:09 PM
**To:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Re: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Counsel:

Attached please find correspondence from Brian Andrea and a native copy of APL-MAS_75595.

Best,
Susanna

**Susanna G. Schuemann**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8321 • Fax +1 415.374.8455
SSchuemann@gibsondunn.com • www.gibsondunn.com

On Mar 31, 2021, at 8:56 PM, Kaounis, Angelique <AKaounis@gibsondunn.com> wrote:

Counsel:

Attached please find Apple's portion of the Joint Stipulation regarding Apple's Motion to Compel Plaintiffs to Immediately Proceed With ESI Discovery.

The accompanying attorney declaration and the exhibits (both public and under seal versions of the exhibits) will follow shortly via ShareFile because of their size.  Please let us know if you

**Exhibit 9**
-114-

have any issues retrieving them.

When you send back Plaintiffs' portion, please include proposed redactions in yellow
highlighting for Plaintiffs' portion, as well as any proposed redactions for Apple's portion.

We look forward to receiving Plaintiffs' portion of the Joint Stipulation in seven days.

Thanks,
Angelique

**Angelique Kaounis**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Kaounis, Angelique
**Sent:** Tuesday, March 30, 2021 7:19 PM
**To:** Adam.Powell <Adam.Powell@knobbe.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple
<Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We write briefly to correct the misstatements in your email.  We have been clear about our
proposed compromise and about the relief we intend to seek from the Court if Plaintiffs remain
unwilling to proceed with ESI discovery now.  Nonetheless, to reiterate, if we are unable to
reach a resolution, Apple will ask the Court to compel Plaintiffs to proceed with ESI discovery
on twelve custodians per side, without prejudice to either side's ability to pursue ESI from
additional custodians in the future.

Apple is preparing a written response to each of the issues raised in your March 23 and March
25 letters.  The March 29 call was convened due to the urgent need to move forward with a
proportional, workable, mutually agreeable set of initial custodians.  In the interest of
efficiency, we asked you to show patience for a couple days while we work with our client to
finalize responses.  We did not refuse to discuss anything.  Rather, we tried to keep the focus
on the most important and time-sensitive issue:  agreeing on a way to move forward with ESI
discovery now.  But rather than provide a straightforward explanation of Plaintiffs' position on
that issue, you instead insisted that the parties discuss other issues, which we did discuss.  In
particular, 1) we invited you to share case law supporting your request for custodial files from
Tim Cook, and 2) we told you that although we were not able to replicate the legibility you
claim to have with APL-MAS_0075595, that we were trying to solve the issue for you.  Please

**Exhibit 9**
**-115-**

refer to our forthcoming written responses to the other issues set forth in your March 25 letter for Apple's responses to Plaintiffs' other issues.

Thanks,
Angelique

**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7026
AKaounis@gibsondunn.com • www.gibsondunn.com

---

**From:** Adam.Powell <Adam.Powell@knobbe.com>
**Sent:** Tuesday, March 30, 2021 8:51 AM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Andrea, Brian <BAndrea@gibsondunn.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>; Masimo.Apple <Masimo.Apple@knobbe.com>
**Subject:** RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

[External Email]
Angelique and Brian,

I write to memorialize our March 29 meet and confer.  We disagree with your email, which once again does not accurately reflect our meeting.  Our meet and confer was unhelpful because Apple refused to fully discuss the parties' disputes, including the issues raised in Apple's own March 17 letter and Plaintiffs' responsive March 23 letter.  For example, Apple refused to discuss: (1) whether Plaintiffs' former employees are appropriate custodians, (2) whether Tim Cook is an appropriate custodian, (3) Lamego/Nazarro's files, and (4) whether Apple would produce a new version of APL-MAS_0075595.  Apple argued it need not discuss these issues because Plaintiffs' March 25 Local Rule 37 letter mentioned them and Apple intended to wait ten days to respond to that letter.  We explained that the issues we were trying to discuss were covered by Apple's own March 17 letter and our March 23 response, not just our separate March 25 Local Rule 37 letter.

Rather than discuss all aspects of Apple's own letter, Apple demanded that Plaintiffs preemptively agree to Apple's demand to search just twelve Apple custodians.  Your email below argues that, because both parties will eventually search at least 12 custodians, Plaintiffs should select 12 Apple custodians now.  But Apple is refusing to provide the information that would be necessary for Plaintiffs to make an informed decision even as to 12 custodians, including hit counts for all custodians and search terms.  Such information is important to target and prioritize ESI discovery.  For example, hit counts would help Plaintiffs better understand the relevance of various Apple custodians and prioritize its requests for ESI searching.  We also do not know whether Apple will agree to search Tim Cook's files or whether it will agree to search any of Plaintiffs' former employees other than O'Reilly.  Thus, these issues are interrelated and cannot be isolated.  Indeed, Apple

**Exhibit 9**
**-116-**

promised in the ESI stipulation that it would discuss custodians <u>and</u> search terms in an attempt to reach an <u>overall agreement</u>.  Apple's refusal to do so is unnecessarily delaying this process.

Apple's claim that it urgently seeks to "make progress" is belied by the many months in which Apple refused to engage in any ESI discussions.   Apple's demand that Plaintiffs select 12 custodians in the dark makes no sense in view of Apple's commitment to provide the other information and engage in an overall discussion in the next few days.  Likewise, providing our position in writing in less than 24 hours can hardly be considered "delay" or refusing to answer Apple's question by a "date certain." We simply need reasonable information, consistent with what we have been willing to provide Apple, given Apple's refusal to search more than 12 custodians.

During the call, you stated that Apple will immediately proceed with twelve custodians regardless of whether Plaintiffs agree.  While Plaintiffs maintain that Apple should provide hit counts for <u>all</u> of Plaintiffs' custodians, nothing is preventing Apple from running searches on whatever custodians it likes.  During the meet and confer, Apple threatened to move the Court, but did not indicate what relief Apple seeks.  Even though Local Rule 37-1 required Apple's letter to clearly identify "the terms of the discovery order to be sought," Apple's letter did not do so.  Moreover, plaintiffs have not placed an arbitrary limit on searching, and simply look to find an equitable approach.  Plaintiffs also have not in any way refused to begin that process, which they have already started.  As discussed above, nothing is preventing Apple from performing searches on its own custodians.  Please clarify what relief Apple plans to seek from the Court if the parties do not reach an agreement.

During the meet and confer, the parties also discussed (1) the type of documents covered by ESI searching and (2) Plaintiffs search of the twelve custodians that Apple identified.  On the first issue, Apple stated that it planned to search all files, including messaging and chat logs, but that it envisioned the negotiated ESI search terms would apply only to email searching.  We responded that we would consider Apple's position and get back to you.  On the second issue, Plaintiffs again explained they never refused to search the twelve custodians that Apple identified.  To the contrary, we explained that we had already begun pulling files and would provide hit counts as soon as possible.  Apple demanded Plaintiffs provide a "date certain" as to when we would provide hit counts, while Apple could not provide a date certain itself when we asked the same question.  As we explained, Plaintiffs are working diligently to pull the data, process the data, and provide hit counts as soon as possible.  We likewise request hit counts from Apple.

Best regards,
Adam

**Adam Powell**
Partner

858-707-4245 **Direct**

**Knobbe Martens**

**From:** Kaounis, Angelique <AKaounis@gibsondunn.com>
**Sent:** Monday, March 29, 2021 8:02 PM
**To:** Masimo.Apple <Masimo.Apple@knobbe.com>

**Exhibit 9**
-117-

**Cc:** \*\*\* Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Meet and Confer re ESI Custodians

Adam,

We write to memorialize today's meet and confer call.  We are disappointed by Plaintiffs' refusal to agree to Apple moving forward with 12 custodians on each side, particularly in view of the fact that Plaintiffs have indicated they do intend to request that Apple search the ESI of the 12 custodians Apple has identified.  We are endeavoring in good faith to make progress, with the understanding that all parties reserve rights to seek additional custodians later, depending on the discovery that unfolds.   It is likewise disheartening that Plaintiffs cannot commit to providing a final answer to Apple's proposal to begin with 12 custodians by a date certain.  Your suggestion that we asked you for an "on the spot" answer is detached from the documented reality of the parties' discussions.  We presented this proposal to Plaintiffs on March 17, followed up on March 22 asking for a response to allow us to "move forward with ESI discovery immediately," reiterated this request on March 23, and then once again posed the same question on March 26.  In no way were you put on the spot today.  Accordingly, we renew our request that you let us know today—or tomorrow at the latest—whether Plaintiffs will agree to commence ESI discovery with the list of 12 custodians presented in Apple's March 17 letter.

We will respond in writing to the issues raised in your March 23 and March 25 letters later this week.  In the meantime, we need to move forward with an initial set of custodians.  Discovery is an iterative, collaborative process.  The fact that other issues remain to be decided does not justify Plaintiffs' delay.

Thanks,
Angelique

**Angelique Kaounis**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
2029 Century Park East Suite 4000, Los Angeles, CA 90067-3026
Tel +1 310.552.8546 • Fax +1 310.552.7406
AKaounis@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

**Exhibit 9**
-118-

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

<Joint Stip re ESI Custodians.DOC>

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

**Exhibit 9**
**-119-**

EXHIBIT 11

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian K. Andrea
Direct: +1 202.887.3624
Fax: +1 202.530.4220
BAndrea@gibsondunn.com

April 14, 2021

Adam Powell
Knobbe, Martens, Olson & Bear, LLP
12790 El Camino Real
Suite 100
San Diego, CA 92130

Re:     *Masimo Corp. et al. v. Apple Inc.* (C.A. No. 8:20-cv-48-JVS-JDE)

Dear Adam:

We write in response to your April 7 letter.

## ESI Custodians

The state of play of the parties' negotiations regarding ESI custodians is spelled out in detail in the joint stipulation pending before the Court, so we will not belabor those points here. However, we do note that it is disappointing that it took filing a joint stipulation for Plaintiffs to agree to provide *any* information as to the purported relevance of your expansive list of proposed ESI custodians, despite our repeated requests for such information and your representation that you would provide such information during our meet and confer on April 2, 2021.  Nonetheless, we appreciate you sharing Plaintiffs' alleged basis, which plainly illustrates and confirms that the list is overbroad.  Indeed, it is clear Plaintiffs are basing their request for the majority of custodians on rank speculation, and are seeking the same information from dozens of people, which flies in the face of the letter and spirit of Rule 26. For example, Plaintiffs copy and paste the phrase "likely has technical documents relating to the Accused Products" 27 times, (J.S. at 26–31) but provide no basis to believe that a) those "technical documents" exist, or b) that they are non-duplicative of documents you have already received or will receive from the custodians Apple has identified as ESI custodians that "are knowledgeable about and were involved with the core issues or subjects in this case," as required by the parties' ESI Stipulation.  Plaintiffs also copy and paste the verbatim conclusory statement that proposed custodians may have documents related to the "implementation of Plaintiffs' trade secrets" 28 times (J.S. at 27–32), but fail to specify which trade secrets Plaintiffs are referring to or why Plaintiffs believe these documents exist and would not otherwise be produced through Apple's document productions and from the ESI of the custodians Apple has identified.  Further, the fact that you suggest in your letter that someone was a "top priorit[y] for Lamego to meet" does nothing to show that such individual was involved in the issues in the case (as required by the ESI Agreement) or are likely to have non-duplicative, non-cumulative documents that are relevant and proportional

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

Exhibit 11
-124-

**GIBSON DUNN**

Adam Powell
April 14, 2021
Page 2

to the needs of the case (as required by the Federal Rules).  As we have requested many times, please provide the specific basis as to why Plaintiffs believe that each identified custodian is someone that is likely to have non-duplicative, non-cumulative documents that are relevant and proportional to the needs of the case.  Without such information, Apple cannot reasonably assess Plaintiffs' demands.

Nonetheless, based on your descriptions, Apple agrees to add Ueyn Block and Tao Shui as ESI custodians.  As you note in your briefing, Apple has already produced several documents from these individuals.  Apple does not believe they are likely to have significant non-duplicative ESI that is relevant at this point, as their primary relevance to the issues in this case relates to the patent infringement allegations, which have been stayed.  But, in the spirit of cooperation and in a good faith effort to make progress on this dispute, we are willing to add them as custodians.

Finally, Apple reiterates that Tim Cook is not an appropriate ESI custodian, and Plaintiffs' request that Apple go through the process of collecting his documents is a particularly egregious example of Plaintiffs' overreach, as we have explained.  Plaintiffs aptly note that *Lauris v. Novartis*, 2016 WL 7178602, at *5 (E.D. Cal. Dec. 8, 2016) denied discovery from an apex custodian because "there was no evidence the executive had relevant information." The same is true here as well.  Additionally, please provide Plaintiffs' legal basis for seeking documents from a top executive who was not involved in the issues in the case.  Apple has requested this numerous times, including during the March 29 and April 2 meet and confer calls and in Apple's April 1 letter, and Plaintiffs have not cited a single supporting case.

<u>**Former Employees of Plaintiffs Later Employed by Apple**</u>

Your statement that you "do not understand why it took Apple so long" to provide the information laid out in Apple's April 1 letter is disingenuous.  This information is all available either publicly or through Apple's prior discovery responses, so Plaintiffs did not have to wait until now to eliminate clearly irrelevant individuals like Linus Conrad, Megan Eilers, or Shruti Koneru. Apple should not—and cannot—be faulted for Plaintiffs' failure to do a complete investigation before requesting discovery regarding these individuals.

To the extent you seek additional information about any of these individuals, the proper way to obtain it is through the discovery process.  Apple provided the chart in its April 1 letter as a courtesy and in order to comply with Plaintiffs' requests for this information.  Now that Apple has provided the information Plaintiffs' requested, Plaintiffs respond by requesting even more information.  This is an improper discovery request—to the extent Plaintiffs seek additional information about these individuals, the proper way to make such a request is through the formal discovery process, which permits Apple to make formal objections as appropriate based on, for example, relevance, overbreadth, and proportionality.  Indeed, the

**Exhibit 11**
**-125-**

# GIBSON DUNN

Adam Powell
April 14, 2021
Page 3

scope of this case is not so broad as to grant Plaintiffs *carte blanche* to probe the work histories of current or former Apple employees (including, but not limited to, the employees specifically named in your April 7 letter) to determine if they "have []ever been involved in any physiological, monitoring, sensing, or other health-related project" or worked on what Plaintiffs subjectively deem to be "relevant projects." If Plaintiffs have a basis to believe those individuals performed such work, based on their own investigation and the information Apple has already provided as a courtesy, please let us know.

To be clear, and consistent with its obligations under Rule 26 and the ESI Agreement, Apple will agree to produce documents from custodians who are likely to have relevant, non-duplicative information that is proportional to the needs of the case. Based on its own reasonable investigation, Apple maintains that Johannes Bruinsma, Ottavia Golfetto, Haritha Haridas, and Inje Lee do not fit that description. The inclusion of Inje Lee is particularly illustrative of how overreaching Plaintiffs' requests are. Mr. Lee's only known experience with Masimo was an internship a decade ago, before he began pursuing his Bachelor's degree. If Plaintiffs have a basis for believing that a pre-college intern was entrusted with Masimo's trade secrets, held on to them throughout college, graduate school, and numerous post-graduate jobs, and then disclosed them to Apple when he joined in November 2018, please explain the basis for that belief.

## Search Terms

Pursuant to your request, a Word file with Apple's search terms is attached to our cover email sending this letter.

Thank you for confirming that you are working on a hit count report. Based on prior correspondence, our understanding was that you had yet to acquire the technological infrastructure needed to do so. If that impediment no longer exists, let's put a date on the calendar to mutually exchange hit reports for each of the initial twelve custodians on each side.[1] Apple proposes Monday, April 19, 2021 by 5 p.m. PDT. Please let us know if this works for you.

## Data for Former Employees of Apple and Masimo

Thank you for confirming that Plaintiffs have retained files and emails for Apple's proposed custodians.

---

[1]  Apple will also provide a hit report for Ueyn Block and Tao Shui but may not be able to do so by Monday due to the time required to collect and process their data. That process is underway and we will revert with a date by which we anticipate being able to provide hit reports for these additional two custodians.

Exhibit 11
-126-

**GIBSON DUNN**

Adam Powell
April 14, 2021
Page 4


As you know, Apple has already communicated that, in accordance with its document retention policy, Apple no longer has access to Mr. Lamego or Mr. Nazarro's emails and files (or email folders).  Nonetheless, Apple is continuing its internal assessment to determine whether any of the files can be recovered.

At this point, Apple is baffled by Plaintiffs' continued interest in Apple's data systems. Despite Apple's request that Plaintiffs provide legal authority supporting its position, Plaintiffs have cited no precedent for the suggestion that adverse parties in litigation must share the "technical specifics" of their data retention systems so that the opposing party can weigh in on whether it thinks data removed in accordance with a data retention policy can somehow be recovered. Moreover, as Plaintiffs repeatedly have repeatedly emphasized, Apple is a large, sophisticated technology company.  Apple has not asked for Plaintiffs' advice or input on the recoverability of data, and it is unclear what unique technical expertise Plaintiffs have to offer here.  Apple knows, and is following, its obligations under the law.  Apple never suggested that Plaintiffs must "first convince Apple that it had a legal obligation to preserve data." Rather, Apple was merely inquiring as to the reason for the otherwise irrelevant requests for broad technical inside information about how Apple stores, retains, archives, and otherwise handles former employee data.  If Plaintiffs wish to continue this line of inquiry, Apple reiterates the request laid out in its April 1 letter that Plaintiffs provide a specific list of questions, a detailed explanation for why the answer to each question is relevant to the assessment of Apple's legal obligations, and supporting legal authority.

Apple reserves all rights and waives none.

Sincerely,

Brian Andrea

Exhibit 11
-127-

EXHIBIT 12

# Knobbe Martens

**KNOBBE, MARTENS, OLSON & BEAR, LLP**

3579 Valley Centre, Suite 300, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

April 21, 2021

**VIA EMAIL**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
BAndrea@gibsondunn.com

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write in response to your letter of April 14, 2021, which responded to our letter of April 7, 2021.

## ESI Custodians

We continue to disagree with Apple's recitation of the history of this dispute. Contrary to Apple's assertions, it did not take Apple filing a joint stipulation for Plaintiffs to provide information about the relevance of Plaintiffs' proposed ESI custodians. Your letter (and supplemental memorandum) continue to conflate two separate issues: (1) *disclosure* of each parties' own *potential* custodians and (2) the list of custodians that each side asked the other to search. After Plaintiffs served their list of Apple custodians on March 12, Apple demanded Plaintiffs limit their list to twelve custodians without discussing the relevance of additional custodians. Apple did not ask about the relevance of the custodians that Plaintiffs asked Apple to search until an April 2 meeting on a separate motion—*after* Apple served its joint stipulation on March 31. Plaintiffs explained the relevance of the custodians during the meeting, in writing after the meeting, and in their portion of the joint stipulation just three business days later. Emails and letters prior to March 12 refer to the relevance of each side's own potential custodians that they disclosed to the other side, not the issue here—the relevance of the custodians that each side asked the other to search on March 12.

We also disagree with your assertion that we identified Apple custodians based on "rank speculation" because we used a similar description for some of the custodians. Plaintiffs identified individuals with documented interactions with Lamego regarding the trade secrets at issue, with citations to *specific* Apple documents. Plaintiffs identified particular trade secrets and RFPs as to which these custodians are likely to have responsive documents. Regardless, *Apple* is obligated to perform a reasonable search for Apple documents. Apple's continued attempt to place the burden on Plaintiffs to identify that Apple should search is not supported by any case cited by Apple or the Federal Rules. Unfortunately, Apple continues to refuse to disclose a full list of *potential* custodians that it has identified, so Plaintiffs have been forced to identify some potential custodians that Apple should have identified.

Notably, Apple never explained what each custodian does at Apple and why *Apple* believes the additional custodians lack relevant information. To the contrary, your letter argues that the "proper

way" for us to seek information about Apple's employees is "through the formal discovery process, which permits Apple to make formal objections . . . ." Letter at 2 (discussing Plaintiffs' former employees now working for Apple). We disagree with Apple's approach of withholding information about its custodians and then complaining that Plaintiffs' explanations are incomplete. Apple—not Plaintiffs—has the burden of identifying relevant Apple custodians. Plaintiffs' identification of missing custodians shows Apple's list is incomplete.

Apple's letter also asks us to provide the "specific basis" for the inclusion of each custodians. Again, that improperly attempts to place the burden of identifying custodians at Apple on Plaintiffs. We already provided sufficient information to establish that Apple's list of custodians is far from complete. We provided that information in our prior letter and in our portion of the joint stipulation. Please provide the basis for Apple's assertion that each of the additional custodians should **not** be included. Without such information, we cannot reasonably assess Apple's requested unilateral limit to just twelve custodians. Thank you for agreeing to add Ueyn Block and Tao Shui as ESI custodians.

We also continue to disagree with Apple's reliance on the "apex" doctrine to avoid **searching** Mr. Cook's files. Apple's reliance on *Lauris v. Novartis*, 2016 WL 7178602, at *5 (E.D. Cal. Dec. 8, 2016), is misplaced because that case expressly held "[t]he Court is **not** persuaded that the apex doctrine applies to the discovery at issue here." As Plaintiffs explained, Apple's other cited authority found the "apex" doctrine applies to depositions—not document collection. *See* Dkt. 332-1 at 33 (quoting *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 8757255, at *1 (N.D. Cal. Feb. 20, 2019)). Other courts agree. *See, e.g.*, *Dyson, Inc. v. SharkNinja Operating LLC*, 2016 WL 1613489, at *2 (N.D. Ill. Apr. 22, 2016) (concluding "all of the cases this Court reviewed on the [apex] issue were concerned with preventing **depositions** of high ranking corporate officials"); *Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *1 (N.D. Cal. Feb. 7, 2018) (rejecting apex argument for collecting documents). Even if the "apex" doctrine applies, **Apple** bears the burden of limiting discovery. *See Dyson*, 2016 WL 1613489, at *2 (finding that, even if the doctrine applied to document collection, the responding party has the burden). Apple has never even attempted to show it would be burdensome to collect ESI from Tim Cook.

### Former Employees of Plaintiffs Later Employed by Apple

As an initial matter, we disagree with Apple's rhetoric and assertion that our letter was "disingenuous." The fact that Apple purportedly provided only public information in its own letter hardly shows that **Plaintiffs** did anything improper. We have been asking you to cooperate for months in good faith to try to avoid burdening the Court. Apple refused to provide any information at all and now admit that it provided only public information. As we explained in our prior letters, Apple has not provided nearly enough information for us to identify for Apple the relevance of each of Apple's own custodians. The information we are seeking is in Apple's possession and would be simple to provide. We disagree with Apple's attempt to delay this process by trying to avoid its obligation to perform a reasonable search. Apple's refusal to provide basic information on the potential custodians that appear relevant based on documents Apple has produced only delays the possible narrowing of the dispute and narrowing of the list of potential custodians at Apple.

Your letter also states that Bruinsma, Golfetto, Haridas, and Lee "do not fit" the description set forth in the ESI agreement. But Apple's discovery obligations are not limited to merely identifying individuals that "fit" the description of potentially relevant custodians in the ESI agreement. Apple also has not explained its position. Apple acknowledges Bruinsma previously worked in the "health technologies

**Exhibit 12**

division," Golfetto is a "biomedical scientist" for Apple, and Haridas was a "Clinical Operations Project Manager" and "involved in clinical trials relating to the Apple Watch." Apple has not attempted to explain why such individuals are not relevant to this dispute. Apple's assertions regarding Mr. Lee are also misplaced because Apple admits Mr. Lee is "involved in the design of studies related to the Apple Watch." The time when Mr. Lee worked for Masimo does not show that his role at Apple is irrelevant.

### Search Terms

We never told you that we had "yet to acquire the technological infrastructure" needed to run search terms. Rather, we told you that Apple's particular search terms could not be run on Plaintiffs' software, so Plaintiffs were exporting data to be processed by a vendor. Plaintiffs provided a hit count report for several custodians on April 16 and will continue to do so promptly as their vendor completes searching the remaining custodians. We reiterate our request that Apple provide hit counts for *all* of Plaintiffs' proposed custodians—not just the twelve or fourteen custodians that Apple agreed to ultimately search. Obtaining hit counts for all proposed custodians would allow the parties to prioritize discovery and evaluate Apple's assertion that searching additional custodians would be burdensome.

### Data For Former Employees

Apple previously asked us to confirm that we had files and emails for all of Apple's proposed custodians. Plaintiffs confirmed and, in my April 7 letter, asked Apple to provide the same information regarding the individuals that Plaintiffs asked Apple to search. Your April 14 letter ignored our request. Given that Apple demanded that we provide this information, please provide the same information to us.

### Lamego and Nazzaro Data

Your letter purports to be "baffled by Plaintiffs' continued interest in Apple's data systems." Apple asserts it "has not asked for Plaintiffs' advice or input on the recoverability of data, and it is unclear what unique technical expertise Plaintiffs have to offer here." Apple then asks us to simply take Apple at its word that it has done everything it can to recover the missing files and is following its obligations under the law. The purpose of exploring the issue is to determine whether we agree with Apple. If not, the parties may have a dispute that requires the court's assistance. Apple's refusal to cooperate with us in trying to recover the missing data is deeply concerning.

Your letter also asks that we provide a "provide a specific list of questions, a detailed explanation for why the answer to each question is relevant to the assessment of Apple's legal obligations, and supporting legal authority." As we explained in our April 7 letter, Apple's focus on its "legal obligations" to preserve evidence is not relevant because our focus is on recovering the data. The defensive position Apple has taken suggests that Apple is unwilling to explore the destruction and recovery. We already provided a detailed list of questions on March 9 to which Apple has repeatedly refused to respond. Below is the list of questions from our March 9 email. Please answer our questions so that the parties can work cooperatively to try to recover any missing files.

- Apple appears to be drawing a distinction between "destroying" files and "removing" them from Apple's system. Can you explain? What does Apple do when it "removes" files from its system? Does Apple move or copy the files to some other location or device? Or does it delete

**Exhibit 12**
**-130-**

all instances of those files?  If Apple deletes all instances of those files, does it simply delete the files or does it "wipe" or overwrite files?

• What software does Apple use to search emails?  Most software allows for searching multiple custodians at once, so we may be able to offer some suggestions.

• Apple states that it has not exported Lamego or Nazzarro's files for other litigation.  Has Apple done so for any other purpose?

• It sounds like Apple is taking the position that it must have removed Lamego and Nazzarro's emails and files 4-10 weeks after they left because that is Apple's standard procedure.  Has Apple been able to verify that it actually removed Lamego and Nazzarro's emails 4-10 weeks after they left?

• Apple claims it does not understand what we mean by "a relevant area."  As we have previously explained, Apple itself asserted that some individuals did not work in a relevant area.  For example, Apple asserted that one individual was not relevant because he worked on the Apple Airpods project.  If that person did not also work on something relevant to the case, we would likely agree with that assessment.  Thus, we are asking Apple to identify the individuals that Apple believes worked in an area relevant to the case.  A relevant area may include, by way of example and not limitation, physiological monitoring, sensor design, or health-related app development.  Until Apple explains what each individual did at Apple, rather than Apple's unilateral conclusion that they are not relevant, we are unable to agree with Apple's legal conclusion.    Apple—not Plaintiffs—have the requisite knowledge.  Please confirm Apple will maintain the files for all individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area.

Best regards,

Adam B. Powell

-4-

Exhibit 12
-131-

EXHIBIT 13

| | |
|---|---|
| **From:** | Adam.Powell |
| **To:** | Andrea, Brian |
| **Cc:** | *** Apple-Masimo; Masimo.Apple |
| **Subject:** | RE: Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Lamego documents |
| **Date:** | Saturday, April 24, 2021 8:37:47 PM |

Brian,

Thank you for letting us know.  If Apple located computers or images of computers used by Mr. Lamego, they should be produced as responsive to at least RFP No. 229.  Please confirm Apple will produce any such computers or images.

Best regards,
Adam

**Adam Powell**
Partner

**858-707-4245 Direct**

**Knobbe Martens**

**From:** Andrea, Brian <BAndrea@gibsondunn.com>
**Sent:** Wednesday, April 21, 2021 5:49 PM
**To:** Masimo.Apple <Masimo.Apple@knobbe.com>
**Cc:** *** Apple-Masimo <Apple-Masimo@gibsondunn.com>
**Subject:** Masimo Corp. et al. v. Apple Inc. | 20-cv-00048 - Lamego documents

Dear counsel,

As noted in our recent correspondence regarding ESI custodians, Apple has continued its internal assessment to determine whether any of Mr. Lamego or Mr. Nazzarro's documents can be recovered.  As part of that assessment, we have learned that Apple does have copies of documents from Lamego's computers.  Apple is starting to review those files for relevance and will produce all relevant, non-privileged documents.

Please note that the documents we located do include some emails, and Apple will apply Plaintiffs' proposed search terms to those emails.

Best regards,
Brian

**Brian Andrea**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306

**Exhibit 13**
-132-

Tel +1 202.887.3624 • Fax +1 202.530.4220
BAndrea@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

**Exhibit 13**
**-133-**

EXHIBIT 14

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian K. Andrea
Direct: +1 202.887.3624
Fax: +1 202.530.4220
BAndrea@gibsondunn.com

April 29, 2021

Adam Powell
Knobbe, Martens, Olson & Bear, LLP
12790 El Camino Real
Suite 100
San Diego, CA 92130

Re:   *Masimo Corp. et al. v. Apple Inc.* (C.A. No. 8:20-cv-48-JVS-JDE)

Dear Adam:

We write in response to your April 21 letter and to summarize the outstanding issues regarding
ESI discovery that remain following the Court's April 26 order granting in part Apple's Motion
to Compel Plaintiffs to Immediately Proceed with ESI Discovery (ECF 355).

### Plaintiffs' Requested ESI Custodians

Plaintiffs continue to misapply the law when attempting to shift the burden of demonstrating
relevance in discovery onto Apple.   Contrary to Plaintiffs' contentions, neither the ESI
Agreement, the Federal Rules, nor applicable jurisprudence suggest that Apple has an
affirmative obligation to *disprove* the relevance of the laundry list of proposed custodians
Plaintiffs have requested.  On the contrary, "the burden of demonstrating relevance rests with
the party seeking discovery."  *Martinez v. Walt Disney Co.*, 2012 WL 12913739, at *1 (C.D.
Cal. Aug. 8, 2012).  Plaintiffs have not met this burden with respect to its lengthy list of
requested custodians.

In accordance with the Court's order, Apple will collect, search, and produce data for "up to
39 custodians" (ECF 355).   The requested custodians, however, must still be likely to possess
ESI relevant to this case; the Court's Order does not give either party the right to request
custodians without demonstrating their relevance, in accordance with the applicable law, as
discussed above.  Thus, to the extent there are additional Apple custodians Plaintiffs intend to
identify, please also identify Plaintiffs' basis for contending each custodian possesses relevant
ESI, as Apple has been requesting for months.

Additionally, Apple maintains its position that Tim Cook is not an appropriate ESI custodian,
and the cases Plaintiffs cite do not suggest otherwise.  In *Dyson, Inc. v. SharkNinja Operating
LLC*, 2016 WL 1613489, at *1 (N.D. Ill. Apr. 22, 2016), Dyson agreed that at least some
documents from its founder, James Dyson, were relevant because he was "one of the named
inventors on the patents that form the basis for this suit."  *Id.*  Because Plaintiffs had already

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

Exhibit 14
-134-

**GIBSON DUNN**

Adam Powell
April 29, 2021
Page 2

collected Mr. Dyson's documents in order to produce materials related to inventorship, the
Court found it would not be "unduly burdensome" to require him to produce emails.  *Id.* at*2.
But the same "logical underpinnings of the apex doctrine" establish that it would *not* be
appropriate to run Tim Cook "through the wringer of civil discovery" because he does "not
have personal knowledge of the relevant facts" and Apple has not collected his documents for
this litigation.  *Id.* at *1 (noting that the apex doctrine "bespeaks sensitivity to the risk that very
valuable executive time would be wasted where the officer has no real information.")(quoting
8A Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and
Procedure*, § 2036 n.7 (3d ed. 2010).  Particularly with respect to a senior executive like Cook,
an allegation that Cook interviewed O'Reilly and made general statements about Apple's
commitment to healthcare "does not make him a repository for relevant and responsive
information."  *Krueger v. Ameriprise Fin., Inc.*, 2013 Wl 12139425, at *9 (D. Minn. Aug. 15,
2013) (denying adding CEO as a custodian because his attendance at a meeting and webcast
regarding the topics at issue in the lawsuit did not "make him a source for information"
regarding either party's claims or defenses.).

Plaintiffs have still not cooperated with Apple's request that Plaintiffs provide the "legal basis
for seeking documents from a top executive who was not involved in the issues in the case."
Apple reiterates that request.

<u>**Former Employees of Plaintiffs Later Employed by Apple**</u>

Apple has given more information than required regarding the roles of individuals who
previously worked for Plaintiffs.  This public information was accessible to either party, and
Apple compiled it as a courtesy in an effort to move past this dispute.  Apple is aware of its
obligations under the ESI Agreement and Federal Rules and is complying with those
obligations.  Apple disagrees that it has an "obligation" to detail for Plaintiffs the job duties of
all former Masimo employees who subsequently worked for Apple, or that doing so would be
"reasonable."  On the contrary, it is Plaintiffs who have a burden to limit their discovery
requests to topics they have reason to believe, "after a reasonable inquiry," are "consistent with
[Rule 26]" and "neither unreasonable nor unduly burdensome."  Fed. R. Civ. P. 26(g).
Plaintiffs now acknowledge that, based on publicly available information, individuals like
Linus Conrad, Megan Eilers, and Shruti Koneru are clearly irrelevant to this lawsuit; however,
the fact that Plaintiffs ever proposed seeking discovery from them shows a clear lack of a
"reasonable inquiry."

Apple also disagrees with the notion that employees can be appropriate custodians simply
because they worked in "health technologies" or as a "biomedical scientist" or on "clinical
trials relating to the Apple Watch."  Plaintiffs disregard the basic principle that "discovery
requests are not relevant simply because there is a possibility that the information may be

**Exhibit 14**
-135-

# GIBSON DUNN

Adam Powell
April 29, 2021
Page 3

relevant to the **general subject matter** of the action." *Cole's Wexford Hotel, Inc. v. Highmark Inc.*, No. CV 10-1609, 2016 WL 5025751, at *1 (W.D. Pa. Sept. 20, 2016), on reconsideration, 2017 WL 432947 (W.D. Pa. Feb. 1, 2017) (emphasis added)*; see also Martinez*, 2012 WL 12913739, at *1 ("Without prior court permission on a showing of good cause, a party is not entitled to 'relevant to subject matter' discovery."). Instead, Rule 26 requires parties seeking discovery to limit requests to those that are demonstrably "relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b)(1). As applied to this case, the fact that an individual may have information generally relevant to the Apple Watch (the subject matter in this case) does not mean they have information relevant to whether or not Apple misappropriated Plaintiffs' trade secrets (the specific claims and defenses at issue). Although Bruinsma, Golfetto, Haridas, and Lee held jobs that may (or may not) have made them familiar with certain aspects of the general subject matter of this litigation, Plaintiffs do not allege that any of these individuals—or any of the other individuals named on pages 2-3 of Plaintiffs' April 7 letter— ever misappropriated Plaintiffs' trade secrets or even had access to or knowledge of Plaintiffs' trade secrets. It follows logically that if these individuals had no exposure to Plaintiffs' trade secrets during their employment with Masimo, they could not conceivably have revealed those trade secrets to Apple. Thus, Apple disagrees with Plaintiff's contention that "[t]he time when Mr. Lee worked for Masimo does not show that his role at Apple is irrelevant." If Plaintiffs have a basis for believing that any of their former employees have information relevant to any party's claims or defenses, Plaintiffs should articulate that basis and may include the names of those individuals on their proposed list of up to 39 relevant custodians.

## Search Terms

As discussed during the parties' April 27 meet and confer teleconference, Apple will continue to work collaboratively with Plaintiffs to refine search terms and narrow hits. Consistent with the Court's April 26 order, Apple will not "provide hit counts for *all* of Plaintiffs' proposed custodians," but Apple will provide hit counts for up to 39 *relevant* custodians.

## Data for Former Employees of Apple and Masimo

Apple has already provided extensive information regarding its data retention policy and practices. Apple will not provide additional free discovery into Apple's internal systems, especially where, as here, Plaintiffs have not articulated the relevance of this inquiry. Despite Apple's repeated requests for an explanation and supporting authority for why the answers to Plaintiffs' questions are relevant to the assessment of Apple's legal obligations, Plaintiffs have offered none.

Plaintiffs try to disguise their demand for free discovery into Apple's proprietary backend data storage and retention systems as an attempt to "work cooperatively to recover any missing files." While Apple generally appreciates offers to work cooperatively, it remains unclear

**Exhibit 14**
**-136-**

**GIBSON DUNN**

Adam Powell
April 29, 2021
Page 4

specifically what Plaintiffs intend to do with the information they seek or how it would inform
whether or not "the parties may have a dispute that requires the court's assistance."  To the
extent Plaintiffs have questions about Apple's document retention policies, they should serve
formal discovery, such as 30(b)(6) topics, as noted in my email dated April 28, 2021 regarding
Plaintiffs' notices of depositions.

As we have told you several times, Apple's investigation is ongoing.  Indeed, as you know,
Apple recently located certain documents of Mr. Lamego's, and has already agreed to add Mr.
Lamego as an ESI custodian and has indicated that it will produce all relevant, non-privileged
documents from Mr. Lamego. If Apple finds additional relevant information through its
ongoing investigation, Apple will make that available to Plaintiffs.

Apple reserves all rights and waives none.

Sincerely,


Brian K. Andrea

Exhibit 14
-137-

EXHIBIT 15

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

3579 Valley Centre Drive, Suite 300, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

May 1, 2021

## VIA EMAIL

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
BAndrea@gibsondunn.com

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write in response to your letter of April 29, 2021, which responded to our letter of April 21, 2021. We also write pursuant to Local Rule 37-1 to request a conference of counsel on Apple's refusal to comply with the Court's April 26, 2021, Order (Dkt. 355).

### Plaintiffs' Requested ESI Custodians

We disagree with your assertion that we are attempting to "shift the burden of demonstrating relevance in discovery onto Apple."  As we have explained many times, the ESI Agreement required Apple to identify all individuals who are "knowledgeable about and were involved with the core issues or subjects in this case (e.g., the asserted patents, alleged misappropriation of trade secrets, the development, design and operation of the accused products, and sales, marketing and other damages-related information for the accused products)."  Dkt. 51 at 1.  When Apple refused to do so, the Court warned "any knowing failure to identify in a timely manner all appropriate custodians as part of the iterative, good faith discovery process may result in a future order excluding evidence or other consequences."  Dkt. 318 at 2.  Apple still refused to do so and moved for an order limiting discovery to just twelve custodians.  The Court rejected Apple's position and ordered the parties to "immediately proceed with the production of electronically stored information ('ESI') for up to 39 custodians per side, which the Court, having considered all of the evidence and argument presented by the parties, finds reasonable and proportionate to the needs of the case . . . ."  Dkt. 355 at 1.

Nowhere did the Court suggest that Apple could continue to limit discovery by requiring Plaintiffs to first convince Apple of the relevance of any additional custodians.  Nor did the Court permit Apple to withhold discovery from Mr. Cook.  Your assertion that we have not "cooperated" with Apple's request for legal support contradicts the record, where we have provided extensive support for our position. Indeed, our prior briefing explained the basis for our requested custodians and provided legal support for Mr. Cook being an appropriate custodian.

Apple's insistence that Plaintiffs must convince Apple of the relevance of each custodian is yet another improper attempt to limit discovery.  Plaintiffs request that Apple reconsider its position and confirm it will search up to 39 custodians, including Mr. Cook.  Please let us know when you are available to

**Exhibit 15**
-138-

discuss as soon as possible. Because we have been discussing this matter for quite some time, we suggest a meeting on May 3 or 4.

**Former Employees of Plaintiffs Later Employed by Apple**

We continue to disagree with your position on former employees. Far from providing sufficient information, Apple admits that it provided only public information. Apple claims Plaintiffs failed to conduct a "reasonable inquiry" merely because Plaintiffs agreed to drop certain custodians based on the information that Apple provided. We did so based on Apple's representation that such information was correct. Please let us know if Apple is now representing that it conducted no independent analysis to verify such information. Apple still has not identified all custodians in a timely manner as required by the Court. Dkt. 318 at 2.

We also disagree with your assertion that we have not provided sufficient information to show the relevance of other former employees. We have provided more than enough of a basis to seek discovery. That is especially true because Apple has declined our reasonable requests for additional information.

**Search Terms**

The parties are discussing search terms separately. We disagree with Apple's refusal to provide hit counts for all of Plaintiffs' proposed custodians. As we have explained, such hit counts will help the parties evaluate the relevance of such custodians. We disagree with Apple's approach of refusing to provide hit counts unless Plaintiffs first conclusively demonstrate relevance to Apple's liking.

**Data For Former Employees**

Apple ignores the question Plaintiffs asked in my April 21 letter, which stated:

> Apple previously asked us to confirm that we had files and emails for all of Apple's proposed custodians. Plaintiffs confirmed and, in my April 7 letter, asked Apple to provide the same information regarding the individuals that Plaintiffs asked Apple to search. Your April 14 letter ignored our request. Given that Apple demanded that we provide this information, please provide the same information to us.

Please answer our question promptly.

**Lamego and Nazzaro Data**

We also disagree with Apple's position on this issue. Far from seeking "free discovery," we explained many times that we are trying to assess whether the data Apple deleted can be recovered. Apple's objection to producing "proprietary" information is resolved by the Protective Order, which permits Apple to designate the information as "Confidential" or "Highly Confidential – Attorneys Eyes Only."

Your April 14 letter asked us to reiterate our questions. We did so in our April 21 letter as follows:

• Apple appears to be drawing a distinction between "destroying" files and "removing" them from Apple's system. Can you explain? What does Apple do when it "removes" files from its system? Does Apple move or copy the files to some other location or device? Or does it delete

**Exhibit 15**
**-139-**

all instances of those files?  If Apple deletes all instances of those files, does it simply delete the
files or does it "wipe" or overwrite files?

- What software does Apple use to search emails?  Most software allows for searching multiple
custodians at once, so we may be able to offer some suggestions.

- Apple states that it has not exported Lamego or Nazzaro's files for other litigation.  Has Apple
done so for any other purpose?

- It sounds like Apple is taking the position that it must have removed Lamego and Nazzaro's
emails and files 4-10 weeks after they left because that is Apple's standard procedure.  Has
Apple been able to verify that it actually removed Lamego and Nazzaro's emails 4-10 weeks
after they left?

- Apple claims it does not understand what we mean by "a relevant area."  As we have previously
explained, Apple itself asserted that some individuals did not work in a relevant area.  For
example, Apple asserted that one individual was not relevant because he worked on the Apple
Airpods project.  If that person did not also work on something relevant to the case, we would
likely agree with that assessment.  Thus, we are asking Apple to identify the individuals that
Apple believes worked in an area relevant to the case.  A relevant area may include, by way of
example and not limitation, physiological monitoring, sensor design, or health-related app
development.  Until Apple explains what each individual did at Apple, rather than Apple's
unilateral conclusion that they are not relevant, we are unable to agree with Apple's legal
conclusion.    Apple—not Plaintiffs—have the requisite knowledge.  Please confirm Apple will
maintain the files for all individuals who worked for or with Plaintiffs and later worked for or
with Apple in a relevant area.

Your April 29 letter refuses to provide any of this information.  Please answer our questions promptly.

Your letter also states that Apple has recently located certain documents from Mr. Lamego.  However,
you do not address my email of April 24, 2021, which stated:

If Apple located computers or images of computers used by Mr. Lamego, they should be
produced as responsive to at least RFP No. 229.  Please confirm Apple will produce any
such computers or images.

Please answer our question promptly.

Best regards,

Adam B. Powell

**Exhibit 15**
**-140-**

EXHIBIT 16

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian K. Andrea
Direct: +1 202.887.3624
Fax: +1 202.530.4220
BAndrea@gibsondunn.com

May 4, 2021

Adam Powell
Knobbe, Martens, Olson & Bear, LLP
12790 El Camino Real
Suite 100
San Diego, CA 92130

Re:    *Masimo Corp. et al. v. Apple Inc.* (C.A. No. 8:20-cv-48-JVS-JDE)

Dear Adam:

We write in response to your May 1 letter.  Your letter purports to "write pursuant to Local Rule 37-1 to request a conference of counsel on Apple's refusal to comply with the Court's April 26, 2021, Order (Dkt. 355)."  While we respond to the issues in your letter below, there are two significant issues with this first sentence of your letter that Apple feels compelled to address up front.

***First***, Apple has not "refused to comply" with the Court's Order.  To the contrary, Apple's April 29 letter explicitly stated that "Apple will collect, search, and produce data for 'up to 39 custodians.'"  Plaintiffs still have not sent their list of "up to 39 custodians" from whom they request ESI, despite your indication that you would be doing so "soon" during our phone call last Tuesday (April 27) regarding search terms. Moreover, Apple has already searched, and is already reviewing ESI from, 15 custodians (13 identified by Apple and 2 additional custodians Plaintiffs requested), most of whom Plaintiffs have noticed for depositions in the coming weeks.  While Apple remains willing to search ESI from additional relevant custodians, if and when Plaintiffs identify such individuals, the parties should focus their immediate efforts on those individuals who have been noticed for deposition.  In any event, we don't understand how Plaintiffs can allege that Apple is "refusing to comply" when Plaintiffs have not even identified the custodians whose ESI they request Apple to search.

***Second***, it isn't clear what issue(s) Plaintiffs seek to address "pursuant to Local Rule 37-1." Indeed, your letter falls far short of compliance with the requirements of L.R. 37-1, which states that "[t]he moving party's letter" must do all of the following:

- "identify each issue and/or discovery request in dispute,"
- "state briefly as to each such issue/request the moving party's position,"
- "provide any legal authority the moving party believes is dispositive of the dispute as to that issue/request," and

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

Exhibit 16
-141-

**GIBSON DUNN**

Adam Powell
May 4, 2021
Page 2

- "specify the terms of the discovery order to be sought."

Plaintiffs' letter does none of that. Plaintiffs' letter is organized under five sub-headings, which each represent issues that the parties have been discussing and negotiating over the past several months. Plaintiffs do not specify which of those are in dispute for purposes of the L.R. 37-1 conference of counsel, nor do Plaintiffs "state briefly" their position on each issue. Plaintiffs also fail to "provide any legal authority [Plaintiffs] believe[] is dispositive of the dispute." Indeed, Plaintiffs do not cite to a single case, statute, regulation, or other legal authority throughout the entire letter. The letter also fails to "specify the terms of the discovery order to be sought."

Apple therefore asks that, prior to holding a conference of counsel, Plaintiffs provide a letter that complies with the requirements of L.R. 37-1. Because the purpose of the conference of counsel is to "eliminate the necessity for hearing the motion," the conference will be most effective if Plaintiffs comply with L.R. 37-1 by providing a letter that identifies each issue in dispute, briefly states Plaintiffs' position, provides supporting legal authority (if any exists), and specifies the terms of the discovery order sought.

Once Plaintiffs provide this information, Apple will "confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible." L.R. 37-1.

Apple is disappointed by the blatant falsehoods and mischaracterizations that permeate Plaintiffs' May 1 letter. Apple therefore seeks to correct the record and clarify its position on the issues below:

**Plaintiffs' Requested ESI Custodians**

During our telephone call regarding ESI search terms nearly a week ago, on April 27, 2021, you indicated that you would be providing a list of additional custodians Plaintiffs seek to have Apple search in addition to the 15 custodians Apple has already agreed to search, up to 39 total as permitted by the Court's April 26 Order. We still have not received a list of any additional custodians. Please identify the additional custodians Plaintiffs seek to have Apple search. Additionally, please let us know your basis for believing the additional custodians you seek to have Apple search are likely to be knowledgeable about or were involved in the core issues or subjects in this case. If you do not believe Plaintiffs are obligated to provide such a showing of relevance, please state that and provide your authority for such a position.

Turning to your letter, Plaintiffs continue to mischaracterize the ESI Agreement. The ESI Agreement does not require Apple to identify "**all** individuals" who are knowledgeable about

Exhibit 16
-142-

**GIBSON DUNN**

Adam Powell
May 4, 2021
Page 3

and were involved with the core issues or subjects in this case.  Rather, it states that the parties
"agree to meet and confer in an attempt to reach agreement on…a **reasonable list** of
custodians" and that each party "shall provide a proposed list of individual custodians."  Dkt.
51 at 1:5-15.

Even more egregious is Plaintiffs' mischaracterization of the Court's April 26 Order.  Dkt. 355
at 1.  The Court's Order did not allow either party to request any custodian they want without
any regard for the relevance of the custodians.  Nor did the Court's Order include an
identification of custodians that the Court deemed to be appropriate or inappropriate custodians
for this matter.  Instead, the Court specified a number of custodians ("up to 39") that it
considered to be "reasonable and proportionate to the needs of the case."  However, the Court
did not waive the fundamental Rule 26 requirement that discovery be "relevant to any party's
claim or defense."  The Court also did not express any inclination to overrule the well-
established precedent in this district that "the burden of demonstrating relevance rests with the
party seeking discovery."  *Martinez v. Walt Disney Co.*, 2012 WL 12913739, at *1 (C.D. Cal.
Aug. 8, 2012); *see also TiVo Inc. v. Verizon Comms., Inc.*, 2012 WL 12881961, at *2 (C.D.
Cal. 2012) (holding that "stat[ing] only generally that the discovery [plaintiff] seeks is
'necessary' and 'directly relevant' to its case" is "insufficient to meet [plaintiff's] burden to
show relevance.").

Plaintiffs try to characterize Apple's request that Plaintiffs bear their burden to show relevance
as an "improper attempt to limit discovery" and a "refusal to comply" with the Court's April
26, 2021 Order.  To be clear, Apple will comply with the Court's order in full and will search
up to 39 custodians.  However, consistent with the Court's order, the caselaw in this
jurisdiction, and the Federal Rules of Civil Procedure, Apple will not include custodians who
are not relevant to the claims and defenses in this action, which Plaintiffs have attempted time
and time again to include in the list of ESI custodians, as evidenced by the laundry lists of
custodians they have provided previously without any basis for alleging they are likely to have
relevant ESI.[1]

As discussed during the parties' April 27 meet and confer teleconference, Apple is already in
the process of reviewing documents collected from 15 custodians they have identified as the
individuals who are knowledgeable about and were involved with the core issues or subject in
this case.  As requested above, if there are additional custodians—up to 39 total—that Plaintiffs

---

[1]   Apple maintains that Tim Cook is not likely to have information relevant to any parties' claims or defenses.
      Plaintiffs insist that they have already "provided legal support for Mr. Cook being an appropriate
      custodian."  This is not accurate.  At most, Plaintiffs have offered a few cases suggesting that the "Apex"
      doctrine is given more weight in the context of depositions rather than document collection, on the premise
      that document collection does not impose a burden on executives.  Plaintiffs have not responded to Apple's
      request that Plaintiffs provide the "legal basis for seeking documents from a top executive who was not
      involved in the issues in the case."  Apple reiterates that request.

**Exhibit 16**
-143-

**GIBSON DUNN**

Adam Powell
May 4, 2021
Page 4

believe are likely to have relevant ESI, please identify those individuals and your basis for your contention that they have relevant ESI.

### Search Terms

Consistent with the Court's order, Apple will provide search term hits for up to 39 custodians. Plaintiffs have not provided any legal precedent for the notion that Apple should provide search term hits for individuals who are *not* custodians, and doing so is costly and burdensome, as we have explained to you many times.  Producing a search term report for an individual who is not relevant is an undue burden.  *Crocs, Inc. v. Effervescent, Inc.*, 2017 WL 1325344, at \*2 (D. Colo. Jan. 3, 2017) (noting that "discovery directed at irrelevant matters imposes a *per se* undue burden.").

Additionally, we note that Plaintiffs have still not provided revised search terms, despite Apple's suggestion that the parties exchange revised terms for those terms that hit on a large number of documents during our call nearly a week ago (on Tuesday April 27).  Although we did not hear back from you regarding that proposal, Apple nonetheless provided revised versions of its own terms that hit on a large number of documents to Plaintiffs the next day (on April 28).  Moreover, given the lack of response from Plaintiffs for the next several days, Apple has decided to begin reviewing documents that hit on Plaintiffs' unobjectionable terms, as outlined in our correspondence on April 30.  Please provide your revised terms immediately.

### Plaintiffs' Request for Free Discovery Regarding Former Employees

From the beginning of this case, Plaintiffs have been attempting to obtain free discovery from Apple employees about whom Plaintiffs have made no allegations of misappropriation or any other wrongdoing.  Apple has made very clear that it is willing to provide discovery regarding these "former employees" but only if Plaintiffs can point to some allegation that even relates to the individuals—the fact that the "former employees" used to be employed by Plaintiffs is hardly a sufficient showing, and hardly a reason to subject them to discovery in this case.

Indeed, Plaintiffs' statements in the most recent letter are blatant mischaracterizations.  Apple's position that Plaintiffs failed to conduct a "reasonable inquiry," as required by Rule 26(g), is not "merely because" of Plaintiffs' long overdue agreement to "drop certain custodians."  Rather, the lack of reasonable inquiry is evidenced by the fact that Plaintiffs even suggested including plainly irrelevant custodians in the first place.  Indeed, on April 1, when Apple first shared the chart containing the information Plaintiffs requested, Apple told Plaintiffs that the information was provided was "publicly available" and clarified that it was improper that Plaintiffs had asked Apple to provide information through informal channels outside the written discovery process.  Apple maintains that position.

**Exhibit 16**
**-144-**

# GIBSON DUNN

Adam Powell
May 4, 2021
Page 5


Plaintiffs ignore several critical points raised in Apple's prior letters.  **First**, as Apple has explained many times, Rule 26 allows discovery into matters relevant to any party's **claim or defense**.  The claims at issue in this phase of litigation relate to Apple's alleged misappropriation of trade secrets.  Plaintiffs do not allege that any of the individuals named on pages 2-3 of Plaintiffs' April 7 letter ever had access to or knowledge of Plaintiffs' trade secrets, let alone misappropriated them.  Individuals who had no exposure to Plaintiffs' trade secrets could not conceivably have revealed those trade secrets to Apple.  Therefore, Plaintiffs can (and should) narrow their list to only include individuals to whom they granted access to Plaintiffs' trade secrets.

**Second**, and relatedly, Plaintiffs' definition of "[a] relevant area"—accompanied by Plaintiffs' demand that Apple provide information on all individuals who worked on a project that fits within this overbroad definition—is untethered from the concept of relevance under Rule 26.  Importantly, Rule 26 does not call for "subject matter discovery."  *See Cole's Wexford Hotel, Inc. v. Highmark Inc.*, No. CV 10-1609, 2016 WL 5025751, at *1 (W.D. Pa. Sept. 20, 2016), on reconsideration, 2017 WL 432947 (W.D. Pa. Feb. 1, 2017) (emphasis added); *see also Martinez*, 2012 WL 12913739, at *1 ("Without prior court permission on a showing of good cause, a party is not entitled to 'relevant to subject matter' discovery.").  In fact, Rule 26 was specifically amended to remove the phrase "subject matter" from the description of relevance in order to prevent parties from seeking to "justify discovery requests that sweep far beyond the claims and defenses of the parties."  *See Committee Notes on Rules—2000 Amendment.*  While the topics Plaintiffs identify (*e.g.* "physiological monitoring, sensor design, or health-related app development") may be germane to the general subject matter of the lawsuit, a wholesale identification of every individual who worked in a so-called "relevant area" is not relevant to any party's claims or defenses and not proportionate to the needs of the case.

With this in mind, Apple proposes two simple steps to resolve issues related to former employees without necessitating court involvement:

1.  If Plaintiffs have reason to believe that any individuals who worked for or with Plaintiffs and later worked for or with Apple possess information relevant to any party's claims or defenses, Plaintiffs can include the names of those individuals in their list of up to 39 custodians they would like Apple to search, as discussed above.

2.  If Plaintiffs seek further information, including non-public information, about any individuals who worked for or with Apple, they can request that information through the written discovery process.

**Exhibit 16**
-145-

**GIBSON DUNN**

Adam Powell
May 4, 2021
Page 6

## Apple's Data Retention Policies and Practices

In letters dated April 1 and April 14, Apple proposed that if Plaintiffs wanted to continue to inquire into the technical specifics of Apple's internal data retention systems, Plaintiffs should provide three pieces of information:  1) "a specific list of questions," 2) "a detailed explanation for why the answer to each question is relevant to the assessment of Apple's legal obligations," and 3) "supporting legal authority."  Plaintiffs have refused to comply with parts 2 and 3 of Apple's request.  Instead, Plaintiffs presented a list of technical questions about Apple's internal technological processes and proprietary backend systems.  Plaintiffs assure Apple that any concerns about sharing proprietary information can be ameliorated by the "Confidential" and "Highly Confidential – Attorneys' Eyes Only" designations permitted by the Protective Order.  However, Rule 26(c) protective orders are not intended to be an end run around Rule 26(b), which limits the scope of discovery to matters relevant to any party's claim or defense.  Accordingly, Apple requests that Plaintiffs identify which claims and/or or defenses relate to the list of questions Plaintiffs posed in their April 21 and May 1 letters.  As explained in Apple's April 28 email and April 29 letter, to the extent Plaintiffs have questions about Apple's document retention policies, they should serve formal discovery, such as 30(b)(6) topics.

## Plaintiffs' Inquiry Regarding Data for Former Employees

Apple has provided Plaintiffs with a copy of Apple's operative data retention policy, and Plaintiffs may reference this policy to evaluate whether Apple has retained files and emails for each of Plaintiffs' proposed custodians.  To the extent Plaintiffs still have questions about the application of the data retention policy with respect to individual custodians, Apple can address those questions once Plaintiffs provide a list of up to 39 relevant custodians that Plaintiffs would like Apple to search.  Apple reiterates its request that Plaintiffs provide this list promptly.

Lastly, with regard to your inquiry about the recently located documents from Mr. Lamego, as noted in my April 21 email, Apple confirms that it will produce all non-privileged, responsive documents that were located.

Apple reserves all rights and waives none.

Sincerely,

Brian K. Andrea

**Exhibit 16**
**-146-**

EXHIBIT 17

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

3579 Valley Centre Drive, Suite 300, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

May 5, 2021

**VIA EMAIL**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
BAndrea@gibsondunn.com

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write in response to your letter of May 4, 2021, which responded to our letter of May 1, 2021.

**Plaintiffs' May 1 Letter Satisfied L.R. 37-1**

We disagree with your assertion that Plaintiffs' letter did not satisfy Local Rule 37-1.  As an initial matter, Apple's position is inconsistent with the position it has taken on Local Rule 37-1 letters in the past.  For example, Apple declined to clearly identify its requested relief on ESI custodians in its March 17 letter, during the meet and confer, in subsequent emails, and in the joint stipulation.

Regardless, we already satisfied Local Rule 37-1 through our March 25 letter and subsequent meet and confer.  Our May 1 letter also satisfied Local Rule 37-1.  We identified the issues in dispute: (1) Apple's requirement that Plaintiffs first convince Apple of the relevance of custodians beyond the fifteen Apple agreed to search, and (2) Apple's refusal to search Mr. Cook's files.  We explained our position on both issues in detail.  We also explained that we had elaborated on our position and provided legal support in prior briefing on Apple's ESI motion.  We also specified the relief that we intended to seek: The Court should compel Apple to search up to 39 custodians, including Mr. Cook.  Please let us know when you are available to meet and confer.  We are available on May 6 after 3pm pacific, or on May 7 after 11am pacific.

**Plaintiffs' Requested ESI Custodians**

We disagree with your assertion that Plaintiffs "mischaracterize" the ESI agreement.  Far from mischaracterizing the agreement, our letter quoted it word-for-word.  *See* 5/1/2021 letter at 1.  Apple newly argues it need not identify all potential custodians because the agreement states that the parties will meet and confer in an attempt to reach a "reasonable list" of custodians.  Apple continues to conflate the concepts of (a) *disclosing* potential custodians and (b) *searching* custodians.  We maintain that the ESI agreement requires full disclosure of potential custodians (as defined in the agreement) and then the parties meet and confer on the "reasonable list" of custodians to search.

Apple claims it is complying with the Court's April 26 Order to search "up to 39 custodians" because Plaintiffs had not yet provided a list of additional custodians.  But Apple states it will not search

additional custodians because Apple believes that Plaintiffs have not shown that each custodian is relevant. Apple made the same argument in prior briefing and the Court rejected Apple's argument. In particular, Apple argued Plaintiffs had not shown more than 12 custodians were relevant. The Court rejected Apple's request to limit discovery to 12 custodians and found 39 custodians was appropriate. As explained in my prior letter, the Court did not suggest that Apple could continue to limit discovery by requiring Plaintiffs to first convince Apple of the relevance of any additional custodians. The Court did not find any of Plaintiffs' proposed custodians, including Tim Cook, were inappropriate. Thus, we believe the Court intended for Plaintiffs to select up to 39 custodians for Apple to search.

Regardless, we have now identified the additional custodians that we are requesting Apple to search at this time. We intend to identify additional custodians up to 39 after Apple produces meaningful discovery. Please confirm Apple will search our requested custodians.[1]

## Search Terms

We continue to disagree with Apple's refusal to provide hit counts for all of Plaintiffs' proposed custodians. Your letter cites a single case from Colorado, but that case did not address this issue. *Crocs, Inc. v. Effervescent, Inc.*, 2017 WL 1325344, at *2 (D. Colo. Jan. 3, 2017). Apple newly asserts that it would be "costly and burdensome" to provide hit counts, but provides no facts to support that argument. Hit count reports are an important tool to evaluating a potential custodian's relevance.

We also disagree with your assertion that we somehow delayed the process. As we explained during the April 27 meet and confer, Apple had far more to fix in its proposed search terms because they yielded *17 million* documents compared to *3.5 million* documents for Plaintiffs' search terms. While Apple has revised some of its search terms, the unrevised search terms still total *12 million* documents. Thus, Apple has still not revised all of its search terms that need revision. By contrast, our hits totaled just 3.5 million documents but we still provided revised search terms to further narrow discovery.

## The Former Employees

We continue to disagree with Apple's recitation of the history on this dispute. We also disagree with Apple's assertion that Plaintiffs are seeking "free discovery" about the former employees. We are simply trying to narrow the parties' dispute through the meet and confer process. We disagree with Apple's assertion that we should serve written discovery on these topics, especially because Apple's prior letters made clear that it intends to object to any such written discovery.

Additionally, my prior letter explained that Plaintiffs' commitment to drop certain individual was based on our understanding that Apple represented the information it provided (which Apple asserts is public) was accurate. We asked "if Apple is now representing that it conducted no independent analysis to verify such information." Your letter did not answer our question. Please do so.

---

[1] In a footnote, Apple argues "Plaintiffs have not responded to Apple's request that Plaintiffs provide the 'legal basis for seeking documents from a top executive who was not involved in the issues in the case.'" We have responded to that assertion many times by explaining the legal and factual basis for our request. Apple's apparent disagreement with our assertion does not mean we have "not responded."

**Exhibit 17**
**-148-**

**Data For Former Employees**

My April 21 letter and May 1 letter stated:

> Apple previously asked us to confirm that we had files and emails for all of Apple's
> proposed custodians.  Plaintiffs confirmed and, in my April 7 letter, asked Apple to
> provide the same information regarding the individuals that Plaintiffs asked Apple to
> search.  Your April 14 letter ignored our request.  Given that Apple demanded that we
> provide this information, please provide the same information to us.

Apple once again refuses to answer this question.  Please answer our question promptly.

**Lamego and Nazzaro Data**

Plaintiffs have repeatedly asked Apple to answer the same basic questions about data that Apple
admittedly destroyed.  Apple repeatedly refuses unless Plaintiffs first provide "a detailed explanation for
why the answer to each question is relevant to the assessment of Apple's legal obligations" and
"supporting legal authority."  As we have explained many times, the issue we are addressing is whether
the data exists and can be recovered—not Apple's "legal obligations" to maintain the data.  Thus,
Apple's questions are unnecessarily defensive and irrelevant to the issue that we are addressing.

Your letter states that Apple will produce all "responsive documents" that it located from Lamego.
However, Apple still does not answer the question posed in my April 24 email and May 1 letter, which
stated:

> If Apple located computers or images of computers used by Mr. Lamego, they should be
> produced as responsive to at least RFP No. 229.  Please confirm Apple will produce any
> such computers or images.

Please answer our question promptly.

Best regards,

Adam B. Powell

-3-

**Exhibit 17**
**-149-**

EXHIBIT 18

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

3579 Valley Centre Drive, Suite 300, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

May 7, 2021

**VIA EMAIL**

Brian Andrea
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
BAndrea@gibsondunn.com

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Brian:

We write pursuant to Local Rule 37-1 to request a conference of counsel on Apple's destruction of evidence with respect to Messrs. Lamego and Nazzaro.

The parties have been discussing this dispute for quite some time.  On February 12, 2021, Apple informed us for the first time that it had destroyed the files of Messrs. Lamego and Nazzaro.  Since then, we have asked Apple basic information about the circumstances surrounding the destruction of evidence and about any backups.  While Apple responded to some of our initial questions, Apple stopped cooperating entirely in March.  In particular, Plaintiffs asked Apple several questions on March 9 that Apple has refused to answer ever since despite us repeating our questions several times.

Apple argued that it need not provide answers until Plaintiffs provide legal support showing that Apple had a duty to maintain documents from Lamego and Nazzaro.  We explained many times that our focus is currently on recovering the missing data.  Apple has a duty to produce information that is within its possession, custody, or control regardless of whether Apple had a legal duty to maintain the information.  We are currently trying to determine if the information can be recovered, such that it is in Apple's possession, custody, or control.  Apple's duty to maintain information is not relevant to that question.

We write to ask Apple one more time to reconsider its position on this matter and cooperate in good faith to avoid a dispute.  Please answer the following questions.

(1) Apple previously asked us to confirm that we had files and emails for all of Apple's proposed custodians.  Plaintiffs confirmed and, in my April 7 letter, asked Apple to provide the same information regarding the individuals that Plaintiffs asked Apple to search.  Your April 14 letter ignored our request.  Given that Apple demanded that we provide this information, please provide the same information to us.

(2) If Apple located computers or images of computers used by Mr. Lamego, they should be produced as responsive to at least RFP No. 229.  Please confirm Apple will produce any such computers or images.

**Exhibit 18**
**-150-**

(3) Apple appears to be drawing a distinction between "destroying" files and "removing" them from Apple's system.  Can you explain?  What does Apple do when it "removes" files from its system?  Does Apple move or copy the files to some other location or device?  Or does it delete all instances of those files?  If Apple deletes all instances of those files, does it simply delete the files or does it "wipe" or overwrite files?

(4) What software does Apple use to search emails?  Most software allows for searching multiple custodians at once, so we may be able to offer some suggestions.

(5) Apple states that it has not exported Lamego or Nazzaro's files for other litigation.  Has Apple done so for any other purpose?

(6) It sounds like Apple is taking the position that it must have removed Lamego and Nazzaro's emails and files 4-10 weeks after they left because that is Apple's standard procedure.  Has Apple been able to verify that it actually removed Lamego and Nazzaro's emails 4-10 weeks after they left?

(7) Apple claims it does not understand what we mean by "a relevant area."  As we have previously explained, Apple itself asserted that some individuals did not work in a relevant area.  For example, Apple asserted that one individual was not relevant because he worked on the Apple Airpods project.  If that person did not also work on something relevant to the case, we would likely agree with that assessment.  Thus, we are asking Apple to identify the individuals that Apple believes worked in an area relevant to the case.  A relevant area may include, by way of example and not limitation, physiological monitoring, sensor design, or health-related app development.  Until Apple explains what each individual did at Apple, rather than Apple's unilateral conclusion that they are not relevant, we are unable to agree with Apple's legal conclusion.   Apple—not Plaintiffs—have the requisite knowledge.  Please confirm Apple will maintain the files for all individuals who worked for or with Plaintiffs and later worked for or with Apple in a relevant area.

We hope the parties can avoid a dispute on this matter.  If the parties are unable to reach an agreement, Plaintiffs intend to move for an order compelling Apple to take all reasonable efforts to recover and produce responsive information from Lamego and Nazzaro, and to provide a report under oath explaining the steps Apple took to recover the data.  *See Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 2007 WL 879683, at *6 (D. Nev. Mar. 20, 2007) (requiring party to provide declarations describing "the technical efforts, if any, undertaken to recover and restore the damaged or lost documents or files").  Please let us know when you are available next week to discuss this matter.

Best regards,

Adam B. Powell

**Exhibit 18**
**-151-**

EXHIBIT 19

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Brian K. Andrea
Direct: +1 202.887.3624
Fax: +1 202.530.4220
BAndrea@gibsondunn.com

May 14, 2021

Adam Powell
Knobbe, Martens, Olson & Bear, LLP
12790 El Camino Real
Suite 100
San Diego, CA 92130

Re:    *Masimo Corp. et al. v. Apple Inc.* (C.A. No. 8:20-cv-48-JVS-JDE)

Dear Adam:

We write in response to Plaintiffs' letter dated May 7, 2021.

As an initial matter, Plaintiffs' attempt to frame the parties' correspondence regarding the files of Messrs. Lamego and Nazzaro as a dispute relating to "destruction of evidence" is highly misleading. As you are well aware, Messrs. Lamego and Nazzaro left Apple in 2014; Plaintiffs did not file this lawsuit until January 2020. One of the natural consequences of Plaintiffs' decision to commence this lawsuit many years after Messrs. Lamego and Nazzaro left Apple is that their data may no longer be accessible. Indeed, it is very common for companies to remove employees' data when they leave employment, in accordance with standard data retention policies. That is what happened here.

To be absolutely clear, Apple requests an answer to this simple gating question that will dictate whether Plaintiffs' inquiries have any relevance to this case: ***do Plaintiffs allege that Apple was obligated to maintain the files of Messrs. Lamego and Nazzaro when each employee left Apple in 2014 and, if so, what is the basis for such an allegation***? There is no spoliation claim in this case; if Plaintiffs cannot articulate a reason as to why Apple should have been obligated to preserve the data, then we do not understand why Plaintiffs continue to request information. Absent a legal basis, this line of inquiry is irrelevant.

Apple has repeatedly asked Plaintiffs—including in letters dated April 1, April 14, and May 4—to provide, along with their specific questions, "a detailed explanation for why the answer to each question is relevant to the assessment of Apple's legal obligations," and "supporting legal authority." Plaintiffs have provided neither. As stated above, Apple reiterates its request that Plaintiffs provide the legal basis for this line of inquiry if they wish to continue pursuing it. Plaintiffs purport to be addressing "the issue" of "whether the data exists and can be recovered." But that is not a valid topic of discovery. Plaintiffs acknowledge as much when they state that they are "not [addressing] Apple's 'legal obligations' to maintain the data."

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

Exhibit 19
-152-

**GIBSON DUNN**

Adam Powell
May 14, 2021
Page 2

Plaintiffs' demand for information about how Apple stores data and executes its data retention policies amounts to a request for "discovery on discovery," which is strongly disfavored by courts. *See, e.g.*, *Perez v. DirecTV Group Holdings, LLC*, 2020 WL 5875026, at *2 (C.D. Cal. Aug. 17, 2020) ("Courts typically look upon such discovery with skepticism and it is strongly discouraged.'"); *Freedman v. Weatherford Int'l*, 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014) (holding that requests for "discovery on discovery" should be "closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process.").

The only citation in Plaintiffs' letter deals with a completely different situation. In *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 2007 WL 879683 (D. Nev. Mar. 20 2007), defendants argued that they could not comply with the Court's motion to compel production of documents because the documents were "destroyed or lost due to damage to their computer servers or hard drives which occurred during the seizure of the documents pursuant to the seizure order." The Court noted that it viewed Defendants contention that its hard drives were lost or damaged "with a substantial degree of skepticism." *Id.* at *4. That scenario is inapposite. Unlike in *Koninklijke*, the Court here has not ordered seizure of Apple's computers, has not expressed any "skepticism" about Apple's integrity in complying with discovery obligations, and has not previously compelled Apple to produce the information Plaintiffs seek.

Because there is no legal basis for Plaintiffs' request, Apple is not required to answer the questions Plaintiffs posed, although Apple notes that it has answered many similar questions from Plaintiffs in prior correspondence. If Plaintiffs want to pursue these issues further, they can pursue them through the methods of discovery spelled out in the federal rules. Nonetheless, in the spirit of cooperation, Apple responds to Plaintiffs questions as follows:

1. Apple confirms it has saved files and emails for Plaintiffs' proposed custodians in accordance with its data retention policy, which has been produced to Plaintiffs.

2. Apple has not located images or computers used by Mr. Lamego and therefore has none to produce. Apple has undertaken diligent efforts to identify whether any information from Mr. Lamego's computer is still accessible. Through those efforts, as you know, Apple has located certain files and emails that appear to have been saved from his computer. Apple is in the process of reviewing and producing all relevant materials from that set to Plaintiffs.

3. Apple disagrees with Plaintiffs' statement that "Apple appears to be drawing a distinction between 'destroying' files and 'removing' them from Apple's system" and does not see a need for further explanation.

**Exhibit 19**
-153-

# GIBSON DUNN

Adam Powell
May 14, 2021
Page 3

4.  Apple will not respond to requests for information about its proprietary internal technical
    systems.  If Plaintiffs have suggestions to offer based on their experience with "[m]ost
    software," Apple will take those suggestions under advisement.

5.  Apple will not disclose privileged information or work product, but Apple will produce
    relevant, non-privileged documents from any export of Mr. Lamego and/or Mr.
    Nazzaro's files that Apple finds following a reasonable search.

6.  Apple handled Messrs. Lamego and Nazzaro's emails in accordance with its data
    retention policy, which has been produced to Plaintiffs.

7.  Question number 7 appears to have no connection to Messrs. Lamego or Nazzarro's data,
    so it is unclear how the answer to this question would inform the dispute.  Please clarify
    the relevance of this inquiry.

Absent a legal basis for the request, Apple does not believe this line of inquiry merits any
further consideration by either the parties or the Court.  In accordance with Local Rule 37-1,
however, Apple is available to meet and confer regarding Plaintiffs' May 7, 2021 letter on
May 17 at 11-11:30am PT or 12:30-1:30pm PT.

Sincerely,

Brian K. Andrea

Exhibit 19
-154-

EXHIBIT 20

1   JOSHUA H. LERNER, SBN 220755
      jlerner@gibsondunn.com
2   GIBSON, DUNN & CRUTCHER LLP
    555 Mission Street Suite 3000
3   San Francisco, CA 94105
    Telephone:  415.393.8200
4   Facsimile:   415.393.8306

5   H. MARK LYON, SBN 162061
      mlyon@gibsondunn.com
6   GIBSON, DUNN & CRUTCHER LLP
    1881 Page Mill Road
7   Palo Alto, CA 94304-1211
    Telephone:  650.849.5300
8   Facsimile:   650.849.5333

9   *Attorneys for Defendant Apple Inc.*

10

11                 **UNITED STATES DISTRICT COURT**
          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
12                      **SOUTHERN DIVISION**

13  MASIMO CORPORATION,
    a Delaware corporation; and
14  CERCACOR LABORATORIES, INC.,       CASE NO. 8:20-cv-00048-DOC-DFM
    a Delaware corporation,
15                                     **MEMORANDUM OF POINTS AND**
                   Plaintiffs,         **AUTHORITIES IN SUPPORT OF**
16                                     **DEFENDANT APPLE INC.'S**
         v.                            **MOTION TO DISMISS**
17
    APPLE INC.,                        **Hearing**
18  a California corporation,
                                       Date:       Date:  April 6, 2020
19                 Defendant.          Time:       8:30 a.m.
                                       Courtroom:  9D
20                                     Judge:      Hon. David O. Carter

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................... 1

II.   BACKGROUND ............................................................................. 2

    A.   Plaintiffs Allege an Effort to Misappropriate Their Confidential
       Information More Than Six Years before Filing This Action. ................. 2

    B.   Plaintiffs' Alleged Secrets Were Published in a Patent Application
       More Than Three Years before Plaintiffs Filed This Action. .................... 3

    C.   Plaintiffs Filed This Case with No Explanation for the Delay, No
       Plausible Description of Alleged Secrets, and No Explanation as to
       How Apple Was Supposed to Recognize Any Impropriety. ..................... 4

    D.   Plaintiffs' Claims for Patent Infringement, Correction of
       Inventorship, and Declaratory Judgment Also Lack Basic Facts. ............. 5

III.  LEGAL STANDARD ...................................................................... 5

IV.   ARGUMENT .................................................................................. 6

    A.   The Eleventh Cause of Action for Trade Secret Misappropriation
       Should Be Dismissed. ............................................................ 6

        1.   The Claim Is Time-Barred. ................................................ 6

           a)   The Limitations Period on the CUTSA Claim Began
              More Than Three Years Ago ....................................... 6

           b)   Plaintiffs Have Not Pleaded an Excuse for Their
              Delay. ..................................................................... 9

        2.   Plaintiffs' CUTSA Claim Should Be Dismissed for Failure to
          State a Claim. ................................................................ 10

           a)   Plaintiffs Do Not Sufficiently Allege Any Trade
              Secrets .................................................................... 10

           b)   The Complaint Fails to Sufficiently Allege
               Misappropriation by "Improper Means." .......................... 12

    B.   The First through Tenth Causes of Action Should Be Dismissed
       because They Do Not Plausibly Plead Patent Infringement. .................. 16

    C.   The Seventeenth Cause of Action for Ownership Should Be
       Dismissed. ........................................................................ 20

    D.   The Twelfth through Sixteenth Causes of Action Should Be
       Dismissed. ........................................................................ 23

        1.   Plaintiffs Lack Standing to Seek Correction of Inventorship ........ 23

Gibson, Dunn &
Crutcher LLP

**Exhibit 20
-156-**

2.    Plaintiffs Fail to Plead Required Elements of an Inventorship Claim. ........................................................................... 25

V.    CONCLUSION ................................................................. 25

Gibson, Dunn &
Crutcher LLP

Exhibit 20
-157-

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Akazawa v. Link New Tech. Int'l, Inc.*,

5

520 F.3d 1354 (Fed. Cir. 2008) .................................................................. 20

6

*Alamar Biosciences Inc. v. Difco Labs. Inc.*,

7

1996 WL 648286 (E.D. Cal. Feb. 27, 1996) .................................... 7, 8, 10

8

*Alta Devices, Inc. v. LG Elecs., Inc.*,

9

2019 WL 1924992 (N.D. Cal. Apr. 30, 2019) ......................................... 7, 8

10

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*,

11

77 F.3d 364 (11th Cir. 1996) ...................................................................... 22

12

*Anderson v. Kimberly-Clark Corp.*,

13

570 F. App'x 927 (Fed. Cir. 2014) ............................................................... 5

14

*Arachnid, Inc. v. Merit Indus., Inc.*,

15

939 F.2d 1574 (Fed. Cir. 1991) .................................................................. 24

16

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009) ...................................................................................... 5

17

*Balistreri v. Pacifica Police Dept.*,

18

901 F.2d 696 (9th Cir. 1988) ...................................................................... 21

19

*Beech Aircraft Corp. v. EDO Corp.*,

20

990 F.2d 1237 (Fed. Cir. 1993) .................................................................. 24

21

*Bell Atl. v. Twombly*,

22

550 U.S. 544, 555 (2007) .............................................................................. 5

23

*Bladeroom Grp. Ltd. v. Facebook*,

2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) ............................................. 10

24

*Chou v. University of Chicago*,

25

254 F.3d 1347 (Fed. Cir. 2001) .................................................................. 23

26

*Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*,

27

642 F.3d 849 (9th Cir. 2011) ...................................................................... 21

28

Gibson, Dunn &
Crutcher LLP

**Exhibit 20**
**-158-**

| | |
|---|---|
| 1 | **TABLE OF AUTHORITIES** |
| 2 | *(continued)* |
| 3 | <div align="right">Page(s)</div> |

*Cypress Semiconductor Corp. v. Maxim Integrated Prods., Inc.*,
   236 Cal. App. 4th 243 (Cal. Ct. App. 2015)................................................14

*Cypress Semiconductor Corp. v. Super. Ct.*,
   163 Cal. App. 4th 575 (Cal. Ct. App. 2008)...................................................6

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
   517 F.3d 1284 (Fed. Cir. 2008) ..................................................................24

*Diodes v. Franzen*,
   260 Cal. App. 2d 244 (Ct. App. 1968) ........................................................12

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
   363 F.3d 1263 (Fed. Cir. 2004) ..................................................................20

*e.Digital Corp. v. iBaby Labs, Inc.*,
   2016 WL 4427209 (N.D. Cal. Aug. 22, 2016) ..............................................17

*Ecojet, Inc. v. Pure Spa Components, Inc.*,
   2017 WL 3485780 (C.D. Cal. Feb. 10, 2017) ..............................................25

*Eli Lilly & Co. v. Aradigm Corp.*,
   376 F.3d 1352 (Fed. Cir. 2004) ..................................................................25

*Fox v. Ethicon Endo-Surgery*,
   35 Cal. 4th 797 (2005)................................................................................9

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
   857 F. Supp. 2d 997 (S.D. Cal. 2012) .................................................6, 7, 9

*GeoData Sys. Mgmt. v. Am. Pac. Plastic Fabricators*,
   2015 WL 12731920 (C.D. Cal. Sept. 21, 2015).............................................10

*Hamilton v. Deputy # 1*,
   2014 WL 1289538 (C.D. Cal. Mar. 26, 2014) ..............................................21

*Hays v. VDF Futureceuticals, Inc.*,
   2016 WL 5660395 (D. Haw. Sept. 28, 2016).............................................6, 8

Gibson, Dunn &
Crutcher LLP

**Exhibit 20**
-159-

1

### TABLE OF AUTHORITIES

2

*(continued)*

3

Page(s)

4

*HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*,

5

   600 F.3d 1347 (Fed. Cir. 2010) .................................................................. 22

6

*Hor v. Chu*,

7

   699 F.3d 1331 (Fed. Cir. 2012) .................................................................. 22

8

*Horowitz v. Yishun Chen*,

   2018 WL 6219928 (C.D. Cal. May 14, 2018) ............................................ 17

9

*Human Longevity, Inc. v. J. Craig Venter Inst., Inc.*,

10

   2018 WL 6617633 (S.D. Cal. Dec. 18, 2018) ............................................ 10

11

*Injen Tech. Co. v. AF Dynamic*,

12

   2018 WL 6977432 (C.D. Cal. Oct. 18, 2018) .............................................. 5

13

*Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co. Ltd.*,

14

   2018 WL 4963129 (C.D. Cal. June 22, 2018)..................... 16, 17, 18, 19

15

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*,

16

   109 F.3d 1567 (Fed. Cir. 1997) .................................................................. 20

17

*Klang v. Pflueger*,

18

   2014 WL 4922401 (C.D. Cal. July 10, 2014) ......................................... 6, 9

19

*Laitram Corp. v. Rexnord, Inc.*,

20

   939 F.2d 1533 (Fed. Cir. 1991) .................................................................. 16

21

*Larson v. Correct Craft, Inc.*,

   569 F.3d 1319 (Fed. Cir. 2009) ............................................................23, 25

22

*Lujan v. Defs. of Wildlife*,

23

   504 U.S. 555 (1992)................................................................................... 23

24

*MedioStream, Inc. v. Microsoft Corp.*,

25

   869 F. Supp. 2d 1095 (N.D. Cal. 2012).................................................... 16

26

*Metricolor LLC v. L'Oreal S.A.*,

27

   791 F. App'x 183 (Fed. Cir. 2019) ........................................................... 17

28

Gibson, Dunn &
Crutcher LLP

**Exhibit 20**
**-160-**

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*Mollett v. Netflix, Inc.*,
  795 F.3d 1062 (9th Cir. 2015) ................................................................. 5

*Moore v. City of Orange*,
  2017 WL 10518114 (C.D. Cal. Sept. 25, 2017) ..................................... 23

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ................................................................ 19

*N. Star Innovations Inc. v. Kingston Tech. Co., Inc.*,
  2018 WL 3155258 (C.D. Cal. May 7, 2018), *adopted by* 2018 WL
  3155708 (C.D. Cal. June 25, 2018) ........................................... 17, 19, 20

*Pappalardo v. Stevins*,
  746 F. App'x 971 (Fed. Cir. 2018) ........................................................ 22

*Pellerin v. Honeywell Int'l, Inc.*,
  877 F. Supp. 2d 983 (S.D. Cal. 2012) ............................................. 12, 14

*Prize Frize, Inc. v. Matrix (U.S.) Inc.*,
  167 F.3d 1261 (9th Cir. 1999) .............................................................. 20

*Quest Nutrition, LLC v. Bd. of Supervisors of LSU Agric. & Mech. Coll.*,
  2014 WL 3362061 (C.D. Cal. July 8, 2014) ......................................... 20

*Realvirt, LLC v. Lee*,
  195 F. Supp. 3d 847 (E.D. Va. 2016), *aff'd sub nom. Realvirt, LLC v.
  Iancu*, 734 F. App'x 755 (Fed. Cir. 2018) ............................................ 20

*Ruling Meng v. Ching–Wu Paul Chu*,
  643 F. App'x 990 (Fed. Cir. 2016) ....................................................... 25

*S. Cal. Inst. of Law v. TCS Educ. Sys.*,
  2011 WL 1296602 (C.D. Cal. Apr. 5, 2011) ......................................... 13

*Silvaco Data Sys. v. Intel Corp.*,
  184 Cal. App. 4th 210 (Cal. Ct. App. 2010), *overruled on other
  grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (Cal. 2011) .... 14

*Space Data Corp. v. X*, 2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) .......... 11, 15

**Exhibit 20**
**-161-**

1

**TABLE OF AUTHORITIES**

2

*(continued)*

3

Page(s)

4

*Synopsys, Inc. v. ATopTech, Inc.,*

5

   2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ..................................................... 11, 12

6

*TeleSign Corp. v. Twilio, Inc.,*

7

   2016 WL 4703873 (C.D. Cal. Aug. 3, 2016) ...................................................... 17

8

*Town of Chester v. Laroe Estates, Inc.,*

9

   137 S. Ct. 1645 (2017)........................................................................ 24

10

*Vendavo, Inc. v. Price,*

   2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ................................................. 11

11

*Vita-Herb Nutriceuticals, Inc. v. Probiohealth, LLC,*

12

   2013 WL 1182992 (C.D. Cal. Mar. 20, 2013) .................................................. 23, 25

13

*Wang v. Palo Alto Networks,*

14

   2014 WL 1410346 (N.D. Cal. Apr. 11, 2014)................................................... 8, 9

15

*Zomm, LLC v. Apple Inc.,*

16

   391 F. Supp. 3d. 946 (N.D. Cal. 2019)......................................................... 15

17

*Zora Analytics, LLC v. Sakhamuri,*

18

   2013 WL 12124612 (S.D. Cal. June 18, 2013) ................................................. 15

19

**Statutes**

20

28 U.S.C. § 2201......................................................................................... 23

21

Cal. Civ. Code § 3426.1(a) .......................................................................... 13

22

Cal. Civ. Code § 3426.1(b)(1) ...................................................................... 13

23

Cal. Civ. Code § 3426.1(b)(2)(A)–(B) .......................................................... 13

24

Cal. Civ. Code § 3426.6................................................................................ 6

25

26

**Other Authorities**

27

Apple Watch Series 4 Teardown, iFixIt (Sept. 24, 2018),

28

   https://www.ifixit.com/Teardown/Apple+Watch+Series+4+Teardown/
   113044 ................................................................................................ 18

1

**TABLE OF AUTHORITIES**
*(continued)*

2

3
<u>Page(s)</u>

4
**Rules**

5
Fed. R. Civ. Proc. 10(b) ................................................................................................... 22

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. TO DISMISS        viii        CASE NO. 8:20-cv-00048-DOC-DFM

**Exhibit 20**
**-163-**

## TABLE OF ABBREVIATIONS

| Abbreviation | Document |
|---|---|
| Apple | Defendant Apple Inc. |
| Masimo | Plaintiff Masimo Corporation |
| Cercacor | Plaintiff Cercacor Laboratories, Inc. |
| Plaintiffs | Masimo and Cercacor, collectively |
| Complaint | Plaintiffs' Original Complaint filed before this Court |
| Accused Products | Apple Watch Series 4 and 5 devices |
| '265 patent | U.S. Patent No. 10,258,265 |
| '266 patent | U.S. Patent No. 10,258,266 |
| '628 patent | U.S. Patent No. 10,292,628 |
| '708 patent | U.S. Patent No. 10,299,708 |
| '190 patent | U.S. Patent No. 10,376,190 |
| '191 patent | U.S. Patent No. 10,376,191 |
| '695 patent | U.S. Patent No. 10,470,695 |
| '994 patent | U.S. Patent No. 6,771,994 |
| '703 patent | U.S. Patent No. 8,457,703 |
| '776 patent | U.S. Patent No. 10,433,776 |
| Asserted Patents | The '265, '266, '628, '708, '190, '191, '695, '994, '703, and '776 patents, collectively |
| '052 patent | U.S. Patent No. 10,078,052 |
| '670 patent | U.S. Patent No. 10,247,670 |
| '095 patent | U.S. Patent No. 9,952,095 |

| '754 patent | U.S. Patent No. 10,219,754 |
|---|---|
| '671 patent | U.S. Patent No. 10,524,671 |
| Apple Patents | The '052, '670, '095, '754, and '671 patents, collectively |
| '832 application | U.S. Patent Application No. 15/667,832 |
| '507 application | U.S. Patent Application No. 15/960,507 |
| Apple Applications | The '832 and '507 applications, collectively |
| '912 publication | U.S. Patent Application Publication No. 2019/0072912 |
| '806 publication | U.S. Patent Application Publication No. 2019/0090806 |
| '726 publication | U.S. Patent Publication No. 2016/0061726 |
| CUTSA | The California Uniform Trade Secret Act |
| COA | Cause of Action |
| RJN | Defendant Apple's Request for Judicial Notice in Support of Defendant's Motion to Dismiss (filed concurrently herewith) |

## I.    <u>INTRODUCTION</u>

Plaintiffs allege almost twenty claims in an effort to capitalize on the success of Apple's Watch.  Notwithstanding their scattershot approach, not one of Plaintiffs' claims is viable—Plaintiffs' trade secret allegations are not timely under the relevant statute of limitations, nor do Plaintiffs plead key requirements of every cause of action. Accordingly, the Complaint is facially deficient and should be dismissed.

The Complaint follows a false narrative that Apple somehow took Plaintiffs' trade secrets as long as six years ago.  But the face of the Complaint shows that even if Plaintiffs pleaded the elements of a trade secrets claim—they do not—the claim would be time-barred.  The statute of limitations for a trade secrets claim is three years, yet Plaintiffs filed this action *six years* after an unwarranted warning to Apple of a purported "targeted effort to obtain information and expertise" from Plaintiffs.  Further, Plaintiffs waited *three and a half* years after the first patent application allegedly containing Plaintiffs' alleged trade secrets was published to bring this case.  Plaintiffs offer no excuse for the delay, and precedent dictates that the Court should dismiss the trade secrets claim.  The trade secrets claim fails for the equally important reason that Plaintiffs do not allege any trade secrets with specificity sufficient to permit Apple or this Court to understand the bounds of their claim.  Plaintiffs plead an open-ended list of broad categories of information, which is insufficient as a matter of well-established law.  Separately, Plaintiffs fail to allege requisite knowledge.  In sum, the trade secrets claim is fatally vague and should be dismissed.

The patent infringement COAs (Nos. 1–10) are also defective for not adequately comparing the patent claims to the Accused Products.  While they point to two of Apple's patent publications and allege that these publications "describe" several limitations from the claims of each of the Asserted Patents, these COAs fail to link the statements in these patent publications to the specific functionality of the Accused Products and also fail to link the statements in these publications to the specific limitations of the Asserted Patents.  Indeed, for the majority of the claim limitations, the

**Exhibit 20**
-166-

1   Complaint merely recites the claim language for that limitation, alleging without factual

2   support that the Accused Products include that limitation.  These COAs, therefore, fail

3   to plausibly allege that the Accused Products practice each limitation of at least one

4   asserted claim, and should accordingly be dismissed.

5          COA No. 17 (framed as a declaratory judgment) likewise contains fatal flaws.

6   Patent ownership is a state law issue but the Complaint does not plead any state law

7   cause of action or theory.  COA No. 17 also seeks relief that this Court cannot grant—

8   first, by seeking exclusive ownership of patent applications that this Court has no ability

9   to grant, and second, by requesting that this Court order specific performance which is

10  not permitted in a declaratory judgment claim.  Lastly, this COA improperly pleads a

11  multitude of claims without providing sufficient explanation for Apple to know which

12  allegations apply to which claim.  As a result, this COA should also be dismissed.

13         Finally, the correction of inventorship COAs (Nos. 12–16) fare no better.  In these

14  COAs, Plaintiffs allege that three employees of Masimo, Cercacor, or both—the

15  Complaint is contradictory on which entity actually employs these individuals—should

16  be listed as inventors on five of Apple's patents.  Critically, however, Plaintiffs fail to

17  allege that they have a concrete ownership interest in these patents, and thus have not

18  established that they have standing to bring these claims on behalf of their employees.

19  These COAs must therefore also be dismissed.

20                              **II.   <u>BACKGROUND</u>**

21  **A.   Plaintiffs Allege an Effort to Misappropriate Their Confidential**
22  **       Information More Than Six Years before Filing This Action.**

23         According to the Complaint, in 2013, Apple contacted Masimo, entered into a

24  confidentiality agreement with Masimo, and had "confidential discussions" with

25  Masimo's management, but then "systematically recruited . . . key Masimo personnel,"

26  including O'Reilly, Masimo's former Chief Medical Officer, and Lamego, Cercacor's

27  former CTO.   Compl. ¶¶ 19–21.   "O'Reilly was privy to extremely sensitive

28  information . . . about mobile medical products and applications, wellness applications,

**Exhibit 20**
**-167-**

1    clinical data gathering and analytics, and other technology of Masimo." *Id.* ¶ 20.

2    Lamego had access to "highly confidential technical information," "was taught about

3    the keys to effective non-invasive monitoring," and was "exposed to guarded secrets

4    regarding mobile medical products"—in all of which he allegedly had no involvement

5    prior to Masimo. *Id.* ¶ 21.

6           In 2014, Plaintiffs claim to have become suspicious of "a targeted effort to obtain

7    information and expertise from Masimo and Cercacor." *Id.* ¶ 22. Indeed, Plaintiffs

8    reference, but fail to attach to their Complaint, their January 24, 2014 letter "warn[ing]

9    Apple about respecting their rights." *Id.*; RJN, Ex. A.[1] Plaintiffs stated their concern

10    that "Apple [was] attempting to gain access to, or at least the benefit of, Cercacor and

11    Masimo's trade secrets," and that "Apple w[ould] employ Mr. Lamego in an area

12    that . . . involve[d] healthcare technology, including mobile health applications and the

13    measurement of physiological information." RJN, Ex. A, at 1–2. Yet in the intervening

14    six years, even after it was publicly known that Mr. Lamego was working for Apple in

15    the wearables space, Plaintiffs did nothing.

16        **B.**    **Plaintiffs' Alleged Secrets Were Published in a Patent Application
More Than Three Years before Plaintiffs Filed This Action.**

17

18           By claiming that Apple purportedly "used and disclosed Plaintiffs' Confidential

19    Information at least by filing patent applications containing Masimo's Confidential

20    Information," Plaintiffs concede that they were on notice of the purported disclosure

21    more than three years before filing the present action. Compl. ¶ 185; *id.* ¶ 187. Plaintiffs

22    claim that "[s]hortly after joining Apple in January 2014, Lamego pursued on behalf of

23    Apple numerous patent applications . . . on technologies he was intimately involved in

24    at Plaintiffs." *Id.* ¶¶ 21–23. One of those patent applications names Lamego as an

25    inventor and was published with the title "Reflective Surface Treatments For Optical

26    Sensors" on March 3, 2016. *See id.* ¶ 24 (citing U.S. Patent Application No. 14/740,196,

27

28        [1] As set forth in Apple's concurrently-filed Request for Judicial Notice, Apple
respectfully requests that the Court take judicial notice of RJN Exhibits A–D.

Gibson, Dunn &
Crutcher LLP

**Exhibit 20
-168-**

1   published as the '726 publication and issued as the '052 patent, which is the subject of

2   the twelfth COA); *id.*, Ex. 13 at 850 (the '052 patent, Prior Publication Data); RJN, Ex.

3   B ('726 publication, Pub. Date).  In other words, a patent application that (i) published

4   Plaintiffs' purported secrets, and (ii) named as an inventor the person who Plaintiffs

5   suspected had misappropriated those secrets, was publicly available more than three

6   years before Plaintiffs filed this action.  Nonetheless, in the intervening three years,

7   Plaintiffs did nothing.

8   **C.    Plaintiffs Filed This Case with No Explanation for the Delay, No Plausible**

9   **Description of Alleged Secrets, and No Explanation as to How Apple Was Supposed to Recognize Any Impropriety.**

10      The Complaint ignores Plaintiffs' delay in filing suit.  Plaintiffs offer no

11  explanation for their failures to (1) follow up on their 2014 warning to Apple, or (2) sue

12  after at least one application including their alleged secrets published on March 3, 2016.

13  *See* Compl. ¶ 24 & Ex. 13; RJN, Ex. B.

14      Further, despite alleging that their trade secrets were disclosed in published patent

15  filings, Plaintiffs do not specify those trade secrets at all.  Instead, Plaintiffs allege open-

16  ended categories of information, "including, but not limited to, Plaintiffs' business plans,

17  know-how, technical information, technical data, designs, manufacturing techniques and

18  other business information." *Id.* ¶ 181.

19      The misappropriation allegations are also lacking.  As to acquisition, while

20  Plaintiffs allege that "Lamego knew or had reason to know" of his alleged "duty . . . to

21  keep Plaintiffs' Confidential Information secret," *id.* ¶ 186, Plaintiffs do not claim that

22  Apple knew what Lamego's confidentiality agreement supposedly covered when it

23  supposedly acquired the alleged trade secrets.  As for use and disclosure, Plaintiffs allege

24  that Apple "disclosed Plaintiffs' Confidential Information, without Plaintiffs' consent,

25  in published patent filings," *id.* ¶ 187.  But again, Plaintiffs allege no facts plausibly

26  suggesting that Apple knew or should have known which specific information came

27

28

Gibson, Dunn &
Crutcher LLP

**Exhibit 20**
**-169-**

1  from Plaintiffs or that the information purportedly was confidential under Lamego's

2  "employer-employee" or "fiduciary relationship" with either Plaintiff (*id.*, ¶ 187).

3  **D.  Plaintiffs' Claims for Patent Infringement, Correction of Inventorship, and Declaratory Judgment Also Lack Basic Facts.**

5      Plaintiffs' Complaint also asserts patent infringement of ten Masimo patents

6  without sufficiently comparing the claims of those patents to the actual Accused

7  Products, even though Plaintiffs could have freely acquired an Apple Watch to perform

8  a technical analysis.  Further, the Complaint asks to change inventorship of several

9  Apple patents to add persons allegedly affiliated with Plaintiffs and seeks a declaratory

10  judgment of ownership without meeting all requirements for pleading those causes.

11  <div align="center">

### III.  <u>LEGAL STANDARD</u>
</div>

12      A complaint must contain "sufficient factual matter, accepted as true, to state a

13  claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

14  (internal quotation marks omitted); *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir.

15  2015).  For a claim to be facially plausible, a plaintiff must plead "factual content that

16  allows the court to draw the reasonable inference that the defendant is liable for the

17  misconduct alleged." *Iqbal*, 556 U.S. at 678.  Dismissal is warranted where a complaint

18  fails to "raise a right to relief above the speculative level." *Bell Atl. v. Twombly*, 550

19  U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action,

20  supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

21      In patent cases, federal courts have applied *Twombly* and *Iqbal* rigorously.  *See,*

22  *e.g.*, *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)

23  (quoting *Iqbal*, 556 U.S. at 679).  This Court has applied these principles to dismiss

24  cases where complaints, like this one, failed to allege required elements.  *See, e.g.*, *Injen*

25  *Tech. Co. v. AF Dynamic*, 2018 WL 6977432, at *2 (C.D. Cal. Oct. 18, 2018).

26

27

28

**Exhibit 20**
-170-

# IV.  ARGUMENT

**A.  The Eleventh Cause of Action for Trade Secret Misappropriation Should Be Dismissed.**

**1.  The Claim Is Time-Barred.**

A CUTSA claim "must be brought within three years after the misappropriation is discovered or *by the exercise of reasonable diligence should have been discovered.*" Cal. Civ. Code § 3426.6 (emphasis added).  Under California's discovery rule, "the statute of limitations begins to run when a plaintiff discovers, or has reason to discover, the cause of action." *Klang v. Pflueger*, 2014 WL 4922401, at *1–2, 5–6 (C.D. Cal. July 10, 2014) (dismissing CUTSA claim where patent applications allegedly disclosing the invention were published at least five years prior to filing).  Suspicion starts the clock: "[w]hen there is reason to suspect that a trade secret has been misappropriated, and a reasonable investigation would produce facts sufficient to confirm this suspicion (and justify bringing suit), the limitations period begins, even though the plaintiff has not conducted such an investigation."  *Hays v. VDF Futureceuticals, Inc.*, 2016 WL 5660395, at *3 (D. Haw. Sept. 28, 2016) (applying California limitations law and granting a motion to dismiss because "suspicion of wrongdoing will trigger the statute of limitations") (quoting *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1003 (S.D. Cal. 2012)); *Cypress Semiconductor Corp. v. Super. Ct.*, 163 Cal. App. 4th 575, 587 (Cal. Ct. App. 2008) ("[M]isappropriation that triggers . . . the statute is that which the plaintiff suspects, not that which may or may not actually exist.").

> **a)  The Limitations Period on the CUTSA Claim Began More Than Three Years Ago.**

The Complaint demonstrates that Plaintiffs were suspicious that Apple was misappropriating their alleged secrets in 2014.  Even if Plaintiffs tried to assert ignorance (they do not), "ignorance . . . does not toll the running of the statute." *Klang*, 2014 WL 4922401, at *6 (internal quotation marks omitted); *see Gabriel Techs.*, 857 F. Supp. 2d at 1003 ("So long as a suspicion exists, it is clear that the plaintiff must go find the facts . . . .").  Once their suspicions were aroused, Plaintiffs had "a duty to investigate

1   further" and should be "charged with knowledge of matters which would have been

2   revealed by such an investigation." *Alamar Biosciences Inc. v. Difco Labs. Inc.*, 1996

3   WL 648286, at *3, *8 (citation omitted) (E.D. Cal. Feb. 27, 1996) (granting summary

4   judgment where it was "undisputed that [Intervention-claimant] strongly suspected

5   [former employee] of misappropriating its trade secrets, but did nothing").

6        The Complaint alleges that after Apple and Masimo met in 2013 to discuss a

7   "potential collaboration," "Apple systematically recruited . . . key Masimo personnel,

8   such as Marcelo Lamego," who "join[ed] Apple in January 2014." Compl. ¶¶ 19, 21,

9   23.  Apple allegedly engaged in a "targeted effort to obtain information and expertise"

10  from Plaintiffs, such that they were compelled to "warn[] Apple about respecting their

11  rights."  *Id*. ¶ 22.  Moreover, "Apple announced the first version of its watch [an

12  ostensibly competing technology] in September 2014." *Id*. ¶ 28.  These alleged facts

13  alone demonstrate that Plaintiffs suspected Apple of misappropriation in January 2014,

14  which triggered their obligation to investigate and, consequently, the limitations period.

15  *Cf. Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 1924992, at *13–14 (N.D. Cal. Apr.

16  30, 2019) (plaintiff on inquiry notice of claim where competitor failed to return

17  confidential information under NDA).

18       The judicially noticeable "warn[ing]" letter—a key document referenced in but

19  not attached to the Complaint, *see* Compl. ¶ 22—is dated January 24, 2014, and confirms

20  Plaintiffs' suspicions.  RJN, Ex. A.  The letter states that "[i]t is difficult to imagine *any*

21  *reason* for th[e] sequence of events *other than Apple is attempting to gain access to, or*

22  *at least the benefit of, Cercacor and Masimo's trade secrets*." *Id*. (emphasis added); *cf.*

23  *Gabriel Techs.*, 857 F. Supp. 2d at 1004–06 (email between plaintiff's employees saying

24  that defendant committed a "direct rip-off" of plaintiff's trade secret "established that

25  [plaintiff] had a suspicion of wrong doing which triggered the statute of limitations").

26       Because Plaintiffs were "concerned" and "suspicious" that Lamego "would take

27  proprietary information with him," and it was "common knowledge" in 2014 that Apple

28  was pursuing similar technology, *Alamar*, 1996 WL 648286, at *4—i.e., when it

**Exhibit 20**
-172-

1    "announced the first version of its watch in September 2014," Compl. ¶ 28—there is no

2    question that Plaintiffs were on notice of their claim by then.

3         The statute was again triggered in 2016.  The "publication of patents (and now

4    patent applications) must be deemed, as a matter of law, to place those practicing in the

5    same field and prosecuting their own patent applications in the same field on full notice

6    of all of the contents of the publication." *Wang v. Palo Alto Networks, Inc.*, 2014 WL

7    1410346, at *6 (N.D. Cal. Apr. 11, 2014); *see Alta Devices*, 2019 WL 1924992, at *14

8    (holding reliance on *Wang* (a summary judgment case) proper on motion to dismiss

9    despite different procedural posture, because the "Court takes as true . . . the allegations

10   in [the] complaint" for a motion to dismiss).  Courts have routinely found that patent

11   applications and patents trigger the statute of limitations for sophisticated parties like

12   Plaintiffs, especially when they are trying to "commercialize [their] own technologies"

13   and where the application "revealed the alleged trade secrets sued on." *Wang*, 2014 WL

14   1410346, at *6; *Hays*, 2016 WL 5660395, at *5 (dismissing analogous Hawaii trade

15   secrets claim, and holding that "statute of limitations . . . began to run when the patents

16   were issued" because they sufficiently described the methods at issue for Plaintiff "at

17   least to suspect a factual basis for [the] elements" of his claim (internal quotation marks

18   omitted)).

19        Here, the Complaint demonstrates that Plaintiffs knew or should have known

20   about Apple's U.S. Patent Application No. 14/740,196, which was published as the '726

21   publication on March 3, 2016 and named Lamego as an inventor.  *See* Compl., Ex. 13,

22   at 1 (citing the '726 publication).  Again, the Complaint alleges that "[s]hortly after

23   joining Apple in January 2014, Lamego pursued on behalf of Apple numerous patent

24   applications . . . on technologies he was intimately involved in at Plaintiffs." *Id*. ¶¶ 21–

25   23.  The Complaint also alleges that the patent that issued from the published

26   application—the '052 patent—"claims subject matter that Lamego obtained from

27   discussions with Masimo or Cercacor."  Compl. ¶ 194.  But any alleged Masimo

28   "Confidential Information" contained in the '052 patent was disclosed to the public

1    when the '726 publication was published on March 3, 2016.  *See id.*, Ex. 13; RJN, Ex.

2    B.  The '726 publication discloses all of the same text and drawings—and thus the same

3    concepts—as the '052 patent.  *Compare* Compl., Ex. 13, at 850–67, *with* RJN, Ex. B, at

4    13–30.  Moreover, the '726 publication contains all of the claims in the '052 patent

5    except claims 15–17, which nonetheless describe features that are still contained in the

6    '726 publication.  *Compare* Compl., Ex. 13, at 867, *with* RJN, Ex. B, at 30–31.  In short,

7    the Complaint demonstrates that the '726 publication was "publicly available to all" and

8    "in the same field as" Plaintiffs' own applications and technology.  *Wang*, 2014 WL

9    1410346, at *3.  Thus, by March 3, 2016, Plaintiffs were on notice of their trade secrets

10   claim, and so the limitations period (alternatively) commenced at that time.  *See id.* at

11   *5 (CUTSA claim time-barred where plaintiff "alleged that [defendants'] patent is

12   'based at least in part on (if not completely based on) [plaintiff's] trade secrets'" (citation

13   omitted)).

14               **b)    Plaintiffs Have Not Pleaded an Excuse for Their Delay.**

15           Plaintiffs allege that Apple used their confidential information when Lamego

16   caused it to file patent applications relating to their technologies in 2014.  Compl. ¶¶ 23–

17   27.  Therefore, the "complaint shows on its face that [Plaintiffs'] claim would be barred

18   without the benefit of the discovery rule;" as a result, Plaintiffs have the burden of

19   proving the facts necessary to toll the statute.  *Klang*, 2014 WL 4922401, at *6; *see*

20   *Gabriel Techs.*, 857 F. Supp. 2d at 1003.  To do so, a plaintiff "must specifically plead

21   facts to show (1) the time and manner of discovery and (2) the inability to have made

22   earlier discovery despite reasonable diligence."  *Klang*, 2014 WL 4922401, at *6 (citing

23   *Fox v. Ethicon Endo-Surgery*, 35 Cal. 4th 797, 808 (2005)).  "[T]he burden [is] on the

24   plaintiff to 'show diligence'; 'conclusory allegations'" are insufficient.  *Fox*, 35 Cal. 4th

25   at 808 (citation omitted).  Here, Plaintiffs make no attempt to explain why they could

26   not have discovered the alleged misappropriation earlier.  Any explanation would not

27   toll the statute because an entity that, like Masimo, is "actively practicing in the field

28

1   and prosecuting [its] own patent application must be deemed to be on constructive notice

2   of published patent applications in the same field." *Wang*, 2014 WL 1410346, at *6.

3       A plaintiff's claim will be barred where (1) it suspected defendant of

4   misappropriation, (2) a term search would have revealed the subject patent application,

5   and (3) it "had done patent searches on the technology of its competitors before."

6   *Alamar*, 1996 WL 648286, at *5–6.  Here, the Complaint alleges Massimo "invested

7   heavily in developing . . . measurement technologies," Compl. ¶ 12, and "received

8   numerous U.S. patents for many of its inventions," *id*. ¶ 13.  In addition to these

9   admissions, Masimo disclosed to the SEC in 2015 that it had:  (1) "468 issued patents

10  and 243 pending applications" worldwide, RJN, Ex. C, at 59; (2) a "policy . . . to renew

11  its patents," *id*. at 124; and (3) ostensibly "[s]earch[ed] for existing intellectual property

12  rights," including competitors' patent filings, *id*. at 66.  "In these circumstances, a

13  reasonable plaintiff is required to take the elementary step of checking all readily

14  available patent applications" to avoid a limitations bar.  *Alamar*, 1996 WL 648286, at

15  *5–6.  Plaintiffs did not do so; thus, their claim is barred.

16      **2.    Plaintiffs' CUTSA Claim Should Be Dismissed for Failure to State a
         Claim.**

17      To state a claim under CUTSA, a plaintiff must allege: (1) the existence and

18  ownership of a trade secret, (2) misappropriation of the trade secret, and (3) that

19  defendant's actions damaged the plaintiff.  *Bladeroom Grp. Ltd. v. Facebook*, 2015 WL

20  8028294, at *3 (N.D. Cal. Dec. 7, 2015).  The Eleventh COA fails this test.

21      **a)    Plaintiffs Do Not Sufficiently Allege Any Trade Secrets.**

22      It is well-settled that a Plaintiff alleging misappropriation under CUTSA must

23  "describe the subject matter of the trade secret with sufficient particularity to separate it

24  from matters of general knowledge in the trade . . . and to permit the defendant to

25  ascertain at least the boundaries within which the secret lies."  *GeoData Sys. Mgmt. v.*

26  *Am. Pac. Plastic Fabricators*, 2015 WL 12731920, at *11 (C.D. Cal. Sept. 21, 2015)

27  (internal quotation marks omitted).  "[A]llegations of broad categories relating to

28

**Exhibit 20**
**-175-**

1   business or technology are not adequate to support a trade secrets claim." *Human*

2   *Longevity, Inc. v. J. Craig Venter Inst., Inc.*, 2018 WL 6617633, at *4 (S.D. Cal. Dec.

3   18, 2018); *see also Bladeroom*, 2015 WL 8028294, at *3 ("generic list of categories of

4   various types of information" was "vague and conclusory" and insufficient).  A CUTSA

5   claim should be dismissed where, as here, plaintiffs simply plead nebulous categories of

6   generalized information as trade secrets. *Space Data Corp. v. X*, 2017 WL 5013363, at

7   *2 (N.D. Cal. Feb. 16, 2017) (providing merely "a high-level overview of . . . purported

8   trade secrets" does "not satisfy the Rule 8 pleading requirements").  Plaintiffs' pleading

9   deficiency is even more egregious here because they are alleging that the alleged secrets

10   were purportedly published in patent applications and patents.

11       *Vendavo, Inc. v. Price f(x) AG* supports dismissal here.  *See* 2018 WL 1456697

12   (N.D. Cal. Mar. 23, 2018).  There, the plaintiff described the alleged trade secrets as:

13
14        source code, customer lists and customer related information, pricing
           information, vendor lists and related information, marketing plans and
           strategic business development initiatives, 'negative knowhow' learned
15        through the course of research and development, and other information
           related to the development of [defendant's] price-optimization software,
16        including ideas and plans for product enhancements.

17   *Id.* at *3.  In holding that plaintiff had "not pleaded sufficient facts to show plausible

18   misappropriation," the court explained that the alleged trade secrets were "set out . . . in

19   broad, categorical terms, more descriptive of the types of information that generally *may*

20   qualify as protectable trade secrets than as any kind of listing of particular trade secrets

21   [plaintiff] has a basis to believe actually were misappropriated."  *Id.* at *4.

22       Likewise, the plaintiff in *Synopsys, Inc. v. ATopTech, Inc.* described the relevant

23   trade secrets as "relate[d] to [the plaintiffs'] products," including "proprietary input and

24   output formats, scripts, and technical product documentation, which generally are not

25   publicly known."  2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013).  The court

26   dismissed the trade secrets claim, finding this description "too sweeping and vague." *Id*.

27       Here, Plaintiffs allege that they own "trade secrets including, but not limited to,

28   Plaintiffs' business plans, know-how, technical information, technical data, designs,

1  manufacturing techniques and other business information"—all seemingly related to

2  "noninvasive patient monitoring."  Compl. ¶¶ 181, 13, 16.  This nonexclusive laundry

3  list of broad categories of information fails to put Apple on notice of "where trade secret

4  protection begins and ends."  *Synopsys*, 2013 WL 5770542, at *6.  Indeed, the use of the

5  phrase "including but not limited to" renders the scope of the alleged trade secrets

6  unbounded on its face.  In addition, because Plaintiffs allege that their trade secrets

7  encompass "manufacturing techniques," Compl. ¶ 181, they "*must* not only identify the

8  end product manufactured, but also supply sufficient data concerning the process."

9  *Diodes v. Franzen*, 260 Cal. App. 2d 244, 253 (Ct. App. 1968) (emphasis added).[2]  The

10  Complaint plainly does not satisfy these standards.

11      Further compounding the deficiency of the Complaint is the fact that it does not

12  delineate which trade secrets are owned by which Plaintiff.  Compl. ¶ 181.  This deprives

13  Apple of notice of what *each* Plaintiff claims is a trade secret, which in turn affects

14  Apple's purported obligations with respect to any relevant information.  *See infra*

15  § IV.A.2.b).  Adding to the confusion is the inconsistent allegation that Apple misused

16  "*Plaintiffs'* Confidential Information at least by filing patent applications containing

17  *Masimo's* Confidential Information."  *Id*. ¶ 185 (emphasis added).  Because the

18  applications are only alleged to contain *Masimo's* trade secrets, this begs the question of

19  what Cercacor's trade secrets are and how they even come into play.

20      At bottom, Plaintiffs have not described the trade secrets with sufficient

21  particularity and their misappropriation claim must be dismissed.

22          **b)    The Complaint Fails to Sufficiently Allege Misappropriation by**
                    **"Improper Means."**

23

24      Plaintiffs' theory of misappropriation—alleged on information and belief—is that

25  "Defendant acquired, used and disclosed Plaintiffs' Confidential Information at least by

26  filing patent applications containing Masimo's Confidential Information, without

27  _____

28  [2]  *Diodes* is "widely adopted by federal courts."  *Pellerin v. Honeywell Int'l, Inc.*, 877
    F. Supp. 2d 983, 988 (S.D. Cal. 2012).

Gibson, Dunn &
Crutcher LLP

**Exhibit 20**
**-177-**

1   Plaintiffs' express or implied consent."  Compl. ¶ 185.

2               *(1)*     **Plaintiffs Fail to Allege Improper Acquisition.**

3           To allege misappropriation by acquisition, Plaintiffs must allege that Apple

4   acquired their trade secret(s) and knew or had reason to know that the trade secret was

5   acquired by "improper means."    Cal. Civ. Code § 3426.1(b)(1).[3]    To allege

6   misappropriation by use or disclosure, Plaintiffs must allege that Apple used or disclosed

7   their alleged trade secret without consent and that Apple "[u]sed improper means" to

8   acquire the trade secret, or knew or should have known that its knowledge "was:  (i)

9   Derived from . . . a person who had utilized improper means to acquire it; (ii) Acquired

10  under circumstances giving rise to a duty to maintain its secrecy . . .; or (iii) Derived

11  from . . . a person who owed a duty to the person seeking relief to maintain its secrecy."

12  *Id*. § 3426.1(b)(2)(A)–(B).

13          With respect to a theory of improper acquisition, Plaintiffs do not allege facts to

14  plausibly claim that Apple knew or had reason to know that any purported acquisition

15  of Plaintiffs' alleged trade secrets was by *improper means*.  *S. Cal. Inst. of Law v. TCS*

16  *Educ. Sys.*, 2011 WL 1296602, at *7 (C.D. Cal. Apr. 5, 2011) ("Alleging mere

17  possession of trade secrets is not enough." (internal alteration and quotation marks

18  omitted)).  In particular, they do not allege facts plausibly establishing knowledge by

19  Apple that either Lamego or O'Reilly had an obligation to maintain confidentiality of

20  specific information purportedly shared with Apple, or that Apple independently knew

21  that such information was confidential.[4]  Compl. ¶¶ 18–22.

22

23

24  [3] "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Cal. Civ. Code § 3426.1(a).

25

26  [4] The judicially noticeable "warning" letter only underscores that Plaintiffs cannot allege that Apple knew or should have known of the scope of their alleged trade secrets because it asserts broad categories of information that Plaintiffs fail to distinguish from information generally known in the field—e.g., "business plans, . . . strategies, technical data, . . . designs and formulas, discoveries, processes, manufacturing techniques, know-how, improvements, ideas[,] . . . inventions, trade secrets and other business information."  RJN, Ex. A, at 3.

27

28

**Exhibit 20**
**-178-**

1    Instead, Plaintiffs allege that "*Lamego* knew or had reason to know" of his

2    supposed "duty . . . to keep Plaintiffs' Confidential Information secret," and that he

3    disclosed it to Apple without Plaintiffs' consent. *Id.* ¶ 186 (emphasis added). Thus, the

4    best Plaintiffs can plausibly assert is that Apple came into possession of information that

5    *Lamego* knew or should have known was secret. This fails to allege a plausible improper

6    acquisition claim against Apple, however, because "passive reception" of trade secrets

7    is not "acquisition" under the statute. *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App.

8    4th 210, 223 (Cal. Ct. App. 2010) ("The choice of that term ["acquire"] over "receive"

9    suggests that inadvertently coming into possession of a trade secret will not constitute

10   acquisition."), *overruled on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th

11   310 (Cal. 2011).

12   Nor is the mere hiring of an employee who is purportedly exposed to Plaintiffs'

13   trade secrets sufficient to plausibly allege a trade secrets claim. *See* Compl. ¶¶ 20–21.

14   To the contrary, California has squarely rejected the inevitable disclosure doctrine,

15   thereby forbidding a trade secret owner from preventing a former employee from

16   working for a competitor "without proof of the employee's actual or threatened use of

17   trade secrets." *Cypress Semiconductor Corp. v. Maxim Integrated Prods., Inc.*, 236 Cal.

18   App. 4th 243, 264–65 (Cal. Ct. App. 2015). Plaintiffs therefore have failed to allege that

19   Apple was on notice of which information, if any, was confidential such that it would

20   have been on notice if it had *received* such information improperly. *Pellerin*, 877 F.

21   Supp. 2d at 989 (mere possession of trade secrets is not enough).

22   Plaintiffs also allege that in 2013, Apple and Masimo entered into a confidentiality

23   agreement to discuss a potential collaboration and thereafter discussed Masimo's

24   technology. Compl. ¶ 19. But the Complaint does not allege that Apple breached that

25   agreement. *Id*. In fact, the Complaint says nothing about what the agreement covered,

26   whether Apple actually received any specific confidential information, and if so, what

27   Apple was entitled to do with it. *Id*. (vaguely asserting that "[t]he meetings included

28   confidential discussions of Masimo's technology"). Nor does it attach the agreement

**Exhibit 20**
**-179-**

1   itself.  Plaintiffs have thus failed to plead the material terms of the actual contract

2   between Apple and Masimo; in turn, that contract cannot serve as a basis for Apple's

3   supposed knowledge that Plaintiffs' unspecified information was confidential or

4   prohibited from being acquired, used, or disclosed.  *Zora Analytics, LLC v. Sakhamuri*,

5   2013 WL 12124612, at *5 (S.D. Cal. June 18, 2013) (dismissing claim where plaintiff

6   "failed to adequately plead the terms of the NDA," and noting that "[d]etermining

7   whether [defendant] has violated a NDA . . . is difficult without at least alleging the

8   NDA's material terms"); *Space Data*, 2017 WL 5013363, at *2 ("Space Data

9   acknowledges that Google received the alleged trade secrets pursuant to the NDA.

10  Accordingly, Space Data must plead facts showing that Google had a duty not to use the

11  information in the way alleged.").

12      What is more, the Complaint does not even plead that Apple had a confidentiality

13  agreement with Cercacor.  Therefore, the only plausible inference to be drawn from

14  these omissions is that there was no breach—i.e., that any supposed acquisition, use, or

15  disclosure of information by Apple was permitted by any agreement that did exist.  *Cf.*

16  *Zomm, LLC v. Apple Inc.*, 391 F. Supp. 3d. 946, 952 (N.D. Cal. 2019) (dismissing breach

17  of contract claims where confidentiality provisions allowed for use of information that

18  could be gained from reverse engineering or prior patents).

19              *(2)*     **Plaintiffs Fail to Allege Apple's "Improper" Disclosure or
20                        Use.**

21      Plaintiffs also fail to plausibly allege Apple's improper *use* or *disclosure* of their

22  alleged trade secrets.  Again, Plaintiffs vaguely assert, on information and belief, that

23  Apple "used and disclosed Plaintiffs' Confidential Information at least by filing patent

24  applications containing Masimo's Confidential Information, without Plaintiffs' express

25  or implied consent."  Compl. ¶ 185.  Plaintiffs also speculate, upon information and

26  belief, that Apple "knew or had reason to know that the knowledge of Plaintiffs'

27  Confidential Information came from Plaintiffs, and that Lamego had previously acquired

28  Plaintiffs' Confidential Information" under "a duty . . .  to keep Plaintiffs' Confidential

**Exhibit 20**
**-180-**

1    Information secret." *Id*. ¶ 187.  But again, Plaintiffs do not allege any facts suggesting

2    that Apple knew or should have known (1) what specific information purportedly was

3    protected as confidential by Lamego's "employer-employee" or "fiduciary relationship"

4    with either Plaintiff (*id*.), or (2) what specific information even came from Plaintiffs.

5    These conclusory allegations—bereft of any factual allegations as to *how* Apple knew

6    what *specific* confidential information Lamego received from Plaintiffs or what his

7    duties were with regard to the handling of that information—do not plausibly allege that

8    Apple knew or had reason to know that Lamego was using any alleged trade secrets, or

9    that such use was *unauthorized*. *See MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp.

10   2d 1095, 1114 (N.D. Cal. 2012) (dismissing trade secrets claims because plaintiff did

11   not sufficiently allege that defendant, which had received technology from a third party

12   that had been under contract with plaintiff, knew that the third party was not authorized

13   to provide that technology to defendant).  For the same reasons discussed in the

14   acquisition section above, any purported agreement between Apple and Masimo cannot

15   serve as a basis for improper use or disclosure.

16         In sum, the Eleventh COA must be dismissed because it fails to plausibly plead

17   that Apple improperly acquired, used, or disclosed any trade secrets owned by Plaintiff.

18   **B.    The First through Tenth Causes of Action Should Be Dismissed because**
19   **        They Do Not Plausibly Plead Patent Infringement.**

20         The patent infringement COAs fail to plead sufficient facts to show that the

21   Accused Products include every limitation of at least one claim of the Asserted Patents.

22   Instead, Plaintiffs attempt to map several limitations from each asserted claim to two

23   unrelated patent application publications, but do not even sufficiently allege that *those*

24   publications include all of the claim limitations as required for infringement.  *Laitram*

25   *Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).  Merely reciting claim

26   language in the complaint is not enough under *Twombly* and *Iqbal*.  *Int'l Techs. & Sys.*

27   *Corp. v. Samsung Elecs. Co. Ltd.*, 2018 WL 4963129, at *5–6 (C.D. Cal. June 22, 2018).

28   Rather, this Court and other courts regularly dismiss complaints that fail to allege facts

1    sufficient to allow a reasonable inference that *each* limitation of at least one asserted

2    claim is met.  *See, e.g.*, *id.*; *Horowitz v. Yishun Chen*, 2018 WL 6219928, at *3 (C.D.

3    Cal. May 14, 2018); *TeleSign Corp. v. Twilio, Inc.*, 2016 WL 4703873, at *3–4 (C.D.

4    Cal. Aug. 3, 2016); *see also e.Digital Corp. v. iBaby Labs, Inc.*, 2016 WL 4427209, at

5    *5 (N.D. Cal. Aug. 22, 2016) (dismissing patent infringement claim for failure to "map"

6    *each* claim limitation).

7         Moreover, it is imperative that the complaint actually *explain* how the limitation

8    is purportedly met.  This Court has held that bare facts with no connective reasoning,

9    such as diagrams inserted into a complaint without explanation, are insufficient.  *See,*

10   *e.g.*, *N. Star Innovations Inc. v. Kingston Tech. Co., Inc.*, 2018 WL 3155258, at *2–5

11   (C.D. Cal. May 7, 2018), *adopted by* 2018 WL 3155708 (C.D. Cal. June 25, 2018);

12   *Metricolor LLC v. L'Oreal S.A.*, 791 F. App'x 183, 188 (Fed. Cir. 2019) (affirming

13   dismissal of a patent infringement claim that relied on images of the accused products

14   without explaining how all claim limitations were met; vacating on other grounds).

15        Here, the First through Tenth COAs fail to allege facts sufficient to allow a

16   reasonable inference that the Accused Products meet every claim limitation of the

17   Asserted Patents.  Specifically, the first eight COAs map claim limitations to two Apple

18   patent application publications instead of the Accused Products, but fail to explain how

19   these publications show that *the Accused Products* infringe these claim limitations.  The

20   Ninth and Tenth COAs likewise fail to explain where several claim limitations are found

21   in the Accused Products.

22        The First through Eighth COAs merely recite claim language for the majority of

23   the asserted limitations and allege without factual support that the Accused Products

24   include the recited limitations "as described" in the '912 and '806 publications.  *See*

25   Compl. ¶¶ 45, 58, 71, 73, 86, 101, 114, 127, 141.  These allegations suffer from at least

26   two fatal flaws.  First, the Complaint does not demonstrate that the '912 and '806

27   publications evidence the actual design or operation of the Accused Products,

28   particularly given that the Complaint states that these publications purportedly describe

Gibson, Dunn &
Crutcher LLP

**Exhibit 20**
**-182-**

1    only "*some*"—but not all—"of the technology" of the Accused Products. *Id.* ¶¶ 45, 141

2    (emphasis added). Thus, even if the claim limitations may be described in the '912 and

3    '806 publications, the first eight COAs fail to allege that these limitations are included

4    in the Accused Products. *See, e.g.*, *id.* ¶ 45. Notably, the Accused Products are publicly

5    sold in every major consumer market, and Plaintiffs could have examined an actual unit

6    and alleged how each claimed limitation maps to the Accused Products.[5] Without such

7    allegations, these COAs fall well short of the *Twombly* and *Iqbal* pleading standard.

8         Second, the First through Eighth COAs fail to even demonstrate that the '912 and

9    '806 publications include the claim limitations. These COAs rely on a figure from either

10    the '912 publication or the '806 publication (depending on the asserted patent), but

11    provide no explanation of how each figure discloses any of the claim limitations.[6] *Cf.*

12    *Int'l Techs.*, 2018 WL 4963129, at *5. Thus, the First COA merely recites several

13    limitations from claim 1 of the '265 patent and alleges that these limitations are

14    "described" in Figure 4C and the corresponding text of the '912 publication. Compl. ¶

15    45. The First COA, however, provides no explanation of how this figure or text

16    supposedly describe these recited limitations and no identification of *which* part of this

17    figure corresponds to which limitation. The subsequent seven COAs likewise merely

18    recite claim language and point to a figure and corresponding text from the '912 or '806

19    publications, but fail to link these figures or text to the asserted claims. *See id.* ¶¶ 59,

20    73, 86–87, 101, 114, 127, 141.

21         The Ninth and Tenth COAs suffer from similar defects. Both of these COAs

22    quote text from an Apple website that describes certain functionality of Apple Watch

23    products in broad, consumer-focused terms. These COAs then again merely recite

24    several limitations from claim 1 of the '703 patent and claim 1 of the '776 patent,

25

---

26    [5] Purported teardowns of the Accused Products have been readily available on the
Internet for years. *See, e.g.*, Apple Watch Series 4 Teardown, iFixIt (Sept. 24, 2018),
27    https://www.ifixit.com/Teardown/Apple+Watch+Series+4+Teardown/113044.

28    [6] Plaintiffs also rely on the same figure for claim limitations across multiple patents,
making it that much less clear which limitations may be found in each figure, and where.

**Exhibit 20**
**-183-**

1    respectively, and assert without support that the quoted text from the Apple website

2    describes these limitations. *Id.* ¶¶ 155–56, 170. The Tenth COA even includes an entire

3    paragraph spanning two pages that contains *nothing* beyond a recitation of claim

4    language and a conclusory assertion that "[u]pon information and belief," the Accused

5    Products include the recited limitations. *See id.* ¶ 171. These COAs fail to explain any

6    bases for Plaintiffs' information and belief or otherwise link any of the statements made

7    on Apple's website to any limitations of the asserted claims.

8         This Court has previously dismissed complaints with such scarcity of factual

9    detail. For example, just like here, the pleading in *International Technologies* identified

10    the accused devices, alleged that those devices practiced each limitation of the asserted

11    claim, and cited to a document created by the defendant that purportedly explained how

12    the devices performed the accused functionality. *Int'l Techs.*, 2018 WL 4963129, at *5.

13    This Court, however, found that such allegations failed to state a claim because the

14    complaint "d[id] not link statements made in the [Defendant's] documents to the specific

15    limitations of any asserted claim," and instead "merely recite[d] the claim language for

16    each limitation, alleging without factual support that the [accused system] works by

17    following that limitation." *Id.* This Court explained that it need not accept a complaint's

18    "threadbare recitals of a cause of action's elements, supported by mere conclusory

19    statements." *Id.* (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009))

20    (alteration omitted). The present Complaint has even fewer details and relies only on

21    publications that it fails to establish describe the Accused Products. The Complaint here

22    thus should be dismissed.

23         This Court also dismissed the complaint in *North Star*, where the allegations in

24    the pleading "consist[ed] of nothing more than a recitation of the claim elements" and

25    "reverse-engineered schematics" that only "show[ed] that the Accused Products meet

26    *some* limitations of [the asserted] claim." *N. Star*, 2018 WL 3155258, at *3 (emphasis

27    added). Thus, even though the complaint identified defendant's accused products and

28    included diagrams of those products, the Court explained that the diagrams were

**Exhibit 20**
**-184-**

1   insufficient because they "d[id] not explain which of the Accused Products was analyzed

2   and how . . . it meets any of the limitations." *Id.* at *4.  The Complaint here is even more

3   deficient because it fails to allege how all of the claim limitations are met by the Accused

4   Products and because the figures from the '912 and '806 publications, unlike the

5   diagrams in *North Star*, are not even expressly tied to the Accused Products.

6       In addition to their bare allegations of direct infringement, each of the first ten

7   COAs contains allegations of indirect infringement.  Indirect infringement, however,

8   requires direct infringement.  *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d

9   1263, 1272 (Fed. Cir. 2004).  Because Plaintiffs fail to satisfy the requirements for

10   pleading direct infringement, their indirect infringement claims must also fail.

11   Accordingly, the entirety of the First through Tenth COAs should be dismissed.

12   **C.    The Seventeenth Cause of Action for Ownership Should Be Dismissed.**

13       The Seventeenth COA must be dismissed because it is defective for multiple

14   reasons.  First, the Seventeenth COA requests this Court to determine that Plaintiffs "are

15   the exclusive owners, or at least joint owners" of Apple Patents and Apple Applications,

16   which are not questions that implicate federal jurisdiction—and yet, Plaintiffs do not

17   plead a state law jurisdictional basis in this cause of action.  *Quest Nutrition, LLC v. Bd.*

18   *of Supervisors of LSU Agric. & Mech. Coll.*, 2014 WL 3362061, at *3 (C.D. Cal. July 8,

19   2014) ("Claims concerning patent ownership do not create federal jurisdiction." (quoting

20   *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1264 (9th Cir. 1999) (alteration

21   omitted))).  Rather, the question over ownership of patents and patent applications is one

22   "exclusively for state courts."  *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567,

23   1572 (Fed. Cir. 1997); *Realvirt, LLC v. Lee*, 195 F. Supp. 3d 847, 858 (E.D. Va. 2016),

24   *aff'd sub nom. Realvirt, LLC v. Iancu*, 734 F. App'x 755 (Fed. Cir. 2018) (citing

25   *Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1357 (Fed. Cir. 2008)).

26       Second, the Seventeenth COA should be dismissed because it does not identify "a

27   cognizable legal theory" under state law that would underlie Plaintiffs' ownership

28   claims, which this Court requires.  *See Hamilton v. Deputy # 1*, 2014 WL 1289538, at

1    *2 (C.D. Cal. Mar. 26, 2014) (citing *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696,

2    699 (9th Cir. 1988)).[7]  Rather, the Seventeenth COA only asserts a legal conclusion (that

3    Plaintiffs' employees "had an obligation to assign" their inventions, patents, and patent

4    applications), but provides neither factual support for this legal conclusion, nor the basis

5    for the employees' purported obligation.  Compl. ¶ 214.  This COA requests a remedy

6    without identifying a legal basis for that remedy and thus does not plead a cognizable

7    legal theory.

8        Third, the Seventeenth COA also is not pleaded with enough clarity to state a

9    claim.  This COA pleads that Plaintiffs "are the exclusive owners, or at least joint owners

10   of *all* patents and patent applications" allegedly claiming Plaintiffs' subject matter,

11   which "include *at a minimum*, the Lamego Patents and Lamego Applications" and their

12   related patents and applications.  *Id.* ¶ 215 (emphasis added).  The COA then seeks

13   ownership of Apple's patents and applications related to "subject matter developed at

14   [*both*] Masimo *and* Cercacor," while Lamego and the three purported inventors (e.g.,

15   Al-Ali, Diab, and/or Weber) "were employed at Masimo *or* Cercacor."  *Id.* (emphasis

16   added).  Yet those allegations fail to identify which employee worked for which

17   corporate entity, when that employment occurred, when the ideas at issue were allegedly

18   developed, or what subject matter was developed by which employee.[8]  Further, the

19   COA seeks ownership of a potentially vast number of unidentified patents and patent

20   applications and thus fails to give Apple proper notice of the extent of Plaintiffs' claims.

21        Fourth, the Seventeenth COA is fatally defective because it requests exclusive

22   ownership of patents and patent applications that list Apple employees other than

23   Lamego as co-inventors, but does not plead any legal theory under which those Apple

24   employees would have to assign their rights to Plaintiffs.  For example, the '507

25

26

27   [7] Plaintiffs' request for "declaratory relief" does not cure this problem because the Declaratory Judgment Act cannot provide an independent basis for relief.  *Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011).

28   [8] The three individuals appear to work for Masimo, not Cercacor.

Gibson, Dunn & Crutcher LLP

1    application and '095 patent list Apple employee Steven P. Hotelling as an inventor, and

2    the '052 and '670 patents list five Apple employees as inventors in addition to Lamego.

3    Compl. Exs. 13–15; RJN Ex. D ('507 application, published as U.S. Patent Pub. No.

4    2018/0238734).  Plaintiffs identify no basis for those six employees to assign rights to

5    them and thus no basis for their request "to change the title to the patents and patent

6    applications in favor of Masimo and Cercacor."  Compl. ¶ 216.  Nor could they plead a

7    request to remove Mr. Hotelling as an inventor from the '507 application because there

8    are "no . . . private causes of action available to a litigant to challenge inventorship of a

9    pending patent application."  *Pappalardo v. Stevins*, 746 F. App'x 971, 974 (Fed. Cir.

10   2018) (citing *HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*, 600 F.3d 1347, 1352 (Fed.

11   Cir. 2010)); *Hor v. Chu*, 699 F.3d 1331, 1335 (Fed. Cir. 2012) ("A [35 U.S.C.] § 256

12   claim for correction of inventorship does not accrue until the patent issues.").

13        Lastly, the Seventeenth COA should be dismissed because Plaintiffs have

14   improperly compounded multiple claims in one COA.  Instead, Federal Rule of Civil

15   Procedure 10(b) requires Plaintiffs to separate multiple claims for relief into separate

16   causes of action and state their allegations "with such clarity and precision that the

17   defendant will be able to discern what the plaintiff is claiming and to frame a responsive

18   pleading."  *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366

19   (11th Cir. 1996).  Here, Plaintiffs have failed to do so.  The Seventeenth COA alleges

20   ownership by two separate parties (Masimo and Cercacor) over at least five issued U.S.

21   patents and two U.S. patent applications, without distinguishing which party purportedly

22   owns what, and seeks two distinct outcomes (exclusive ownership and joint ownership).

23   Compl. ¶¶ 213–16.  Moreover, Plaintiffs plead that Lamego had an obligation to assign

24   patents and patent applications to his "employer [*sic*], Masimo *and* Cercacor," making

25   it impossible to know which entity (or both) is/are allegedly exclusive or joint owner(s)

26   of which patents or patent applications.  *See id.* ¶ 214 (emphasis added).  Further, each

27   COA incorporates the allegations of the preceding COAs, without explaining which

28   factual allegations apply to and support each COA, culminating in the Seventeenth COA,

Gibson, Dunn &
Crutcher LLP

**Exhibit 20**
-187-

1   which incorporates 210 paragraphs.  *Id.* ¶ 212; *see Moore v. City of Orange*, 2017 WL

2   10518114, at *2 (C.D. Cal. Sept. 25, 2017) (finding it "egregious" and a good example

3   of "shotgun pleading" where a count incorporated the preceding 107 paragraphs instead

4   of "only those paragraphs which apply to each claim").  The Seventeenth COA also

5   seeks both "declaratory relief," under which the Court is asked to "declare" a decision,

6   and also asks for specific performance in the form of "an order from the Court ordering

7   Apple to change title."  Compl. ¶ 216.  But the Declaratory Judgment Act does not

8   provide authority for a court to order performance.  28 U.S.C. § 2201 (a court "may

9   *declare the rights and other legal relations* of any interested party" (emphasis added)).

10  **D.   The Twelfth through Sixteenth Causes of Action Should Be Dismissed.**

11        **1.   Plaintiffs Lack Standing to Seek Correction of Inventorship.**

12        The Twelfth through Sixteenth COAs seek correction of inventorship of the five

13  Apple Patents under 35 U.S.C. § 256.  *See* Compl. ¶¶ 192–211.  These COAs, however,

14  do not establish that Plaintiffs have constitutional standing to bring these claims.  A

15  plaintiff may not invoke § 256 without meeting constitutional standing requirements: a

16  showing that the plaintiff has "suffered an injury-in-fact, that the injury is traceable to

17  the conduct complained of, and that the injury is redressable by a favorable decision."

18  *Chou v. Univ. of Chicago*, 254 F.3d 1347, 1357 (Fed. Cir. 2001) (citing *Lujan v. Defs.*

19  *of Wildlife*, 504 U.S. 555, 560–61 (1992)).  To establish standing in the context of a

20  correction of inventorship claim, a plaintiff must first demonstrate an ownership interest

21  or another financial stake in the patent at issue.  *Larson v. Correct Craft, Inc.*, 569 F.3d

22  1319, 1327 (Fed. Cir. 2009); *Vita-Herb Nutriceuticals, Inc. v. Probiohealth, LLC*, 2013

23  WL 1182992, at *3 (C.D. Cal. Mar. 20, 2013).   Here, Plaintiffs fail to allege an

24  ownership interest in any of the Apple Patents, and thus do not establish standing to

25  bring correction of inventorship claims.

26        Plaintiffs' allegation in their Seventeenth COA that "Lamego, as well as all of the

27  other employees/inventors, had an obligation to assign said subject matter, patents, and

28

**Exhibit 20**

**-188-**

1   patent applications to their employer, Masimo and Cercacor," Compl. ¶ 214, is
2   insufficient to confer standing for the Twelfth through Sixteenth COAs for three reasons.

3       First, the Seventeenth COA is unrelated to the correction of inventorship COAs
4   because it purportedly raises a claim for correction of *ownership*—not inventorship.  *Id.*
5   ¶ 215; *see Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993)
6   ("It is elementary that inventorship and ownership are separate issues.").  The Supreme
7   Court has "ma[de] clear that 'standing is not dispensed in gross.'  To the contrary, 'a
8   plaintiff must demonstrate standing for each claim he seeks to press and for each form
9   of relief that is sought.'"  *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650
10  (2017).  Second, even if this ownership allegation from the Seventeenth COA applied to
11  the correction of inventorship COAs, the pleading would still fail to identify *which*
12  entity—Masimo, Cercacor, or both—was to receive the assigned rights.  The Complaint
13  is contradictory.  Plaintiffs treat Masimo and Cercacor interchangeably, referring to both
14  collectively as the "[employees'] *employer*" (singular), while at the same time asserting
15  that "Cercacor is not owned by Masimo."  *Compare* Compl. ¶ 214, *with id.* ¶ 15.  Thus,
16  by failing to allege ownership by any particular entity that can be entitled to the relief
17  requested, the Complaint does not show that either Plaintiff has standing.

18      Lastly, the Seventeenth COA alleges only that Lamego had *an obligation* to assign
19  patent ownership rights, but does not allege that the assignment was to be *automatic*.
20  "[T]he question of whether a patent assignment clause creates an automatic assignment
21  or merely an obligation to assign is intimately bound up with the question of standing in
22  patent cases."  *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290
23  (Fed. Cir. 2008).  "Contracts that merely obligate the inventor to grant rights in the
24  future . . . 'may vest the promisee with *equitable* rights in those inventions once made,'
25  but do not by themselves 'vest *legal* title to patents on the inventions in the promisee.'"
26  *Id.* (quoting *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580–81 (Fed. Cir.
27  1991)).  By pleading only an obligation to assign, Plaintiffs do not establish legal title to
28  the Apple Patents and thus have no standing to bring their correction of inventorship

**Exhibit 20**
-189-

1    claims. *Larson*, 569 F.3d at 1326–27 (holding plaintiff "has no financial interest in the

2    patents sufficient for him to have standing to pursue a § 256 claim," where interest was

3    "contingent" on "him first succeeding on his state-law claims [of ownership]").[9]

4         **2.    Plaintiffs Fail to Plead Required Elements of an Inventorship Claim.**

5         The Twelfth through Sixteenth COAs are also fatally deficient because they do

6    not identify the subject matter Plaintiffs' employees allegedly jointly invented.  To plead

7    a § 256 claim, a plaintiff must allege facts sufficient to allow a court to draw a reasonable

8    inference that he "contributed to the conception of the claimed invention and that his

9    contribution was 'not insignificant in quality, . . . when measured against the dimension

10   of the full invention.'" *Ecojet, Inc. v. Pure Spa Components, Inc.*, 2017 WL 3485780,

11   at *5 (C.D. Cal. Feb. 10, 2017) (quoting *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d

12   1352, 1358 (Fed. Cir. 2004), and *Ruling Meng v. Ching–Wu Paul Chu*, 643 F. App'x

13   990, 994 (Fed. Cir. 2016)).  Absent such allegations, a § 256 claim must be dismissed.

14   *See id.*  Here, Plaintiffs allege that their employees Al-Ali, Diab, and Weber are joint

15   inventors of the Apple Patents, because these patents contain "subject matter that

16   Lamego obtained from discussions with [them]."  Compl. ¶¶ 194, 198, 202, 206, 210.

17   Plaintiffs, however, fail to identify what parts of the claimed subject matter their

18   employees allegedly invented, which employee invented which part, and how the

19   alleged inventions by these employees relate to the claims of the Apple Patents.  Thus,

20   Plaintiffs do not sufficiently allege that their employees contributed significantly to the

21   inventions claimed in the Apple Patents.  Accordingly, the Twelfth through Sixteenth

22   COAs must be dismissed.

23         **V.    <u>CONCLUSION</u>**

24        Apple respectfully requests that the Court dismiss this case with prejudice or

25   require a more particular statement.

26

27   _____

28   [9]  Once the Seventeenth COA is dismissed, the correction of inventorship COAs must fall with it.  *See Vita-Herb*, 2013 WL 1182992, at *4 (holding that plaintiff had no standing to sue for correction of inventorship once his ownership claim was dismissed).

Gibson, Dunn &
Crutcher LLP

**Exhibit 20
-190-**

1  Dated:  March 4, 2020              Respectfully submitted,

2                                     JOSHUA H. LERNER
                                      H. MARK LYON
3                                     GIBSON, DUNN & CRUTCHER LLP

4

5                                     By:  */s/Joshua H. Lerner*
                                          Joshua H. Lerner
6

7                                     *Attorneys for Defendant Apple Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. TO DISMISS          26          CASE NO. 8:20-cv-00048-DOC-DFM

**Exhibit 20**
**-191-**

# EXHIBIT 21

1   JOSHUA H. LERNER, SBN 220755
      jlerner@gibsondunn.com
2   GIBSON, DUNN & CRUTCHER LLP
    555 Mission Street Suite 3000
3   San Francisco, CA 94105
    Tel.: 415.393.8200 / Fax: 415.393.8306
4
5   H. MARK LYON, SBN 162061
      mlyon@gibsondunn.com
6   GIBSON, DUNN & CRUTCHER LLP
    1881 Page Mill Road
7   Palo Alto, CA 94304-1211
    Tel.: 650.849.5300 / Fax: 650.849.5333

8   BRIAN M. BUROKER, *pro hac vice*
      bburoker@gibsondunn.com
9   GIBSON, DUNN & CRUTCHER LLP
    1050 Connecticut Avenue, N.W.
10  Washington, DC 20036
    Tel.: 202.955.8541 / Fax: 202.467.0539
11
12  ILISSA SAMPLIN, SBN 314018          ANGELIQUE KAOUNIS, SBN 209833
      isamplin@gibsondunn.com             akaounis@gibsondunn.com
13  GIBSON, DUNN & CRUTCHER LLP        GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue              2029 Century Park East Suite 4000
14  Los Angeles, CA 90071-3197          Los Angeles, CA 90067
    Tel.: 213.229.7000 / Fax: 213.229.7520   Tel.: 310.552.8546 / Fax: 310.552.7026

15  *Attorneys for Defendant Apple Inc.*

16

17              **UNITED STATES DISTRICT COURT**
          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
18                   **SOUTHERN DIVISION**

19  MASIMO CORPORATION,                CASE NO. 8:20-cv-00048-JVS (JDEx)
    a Delaware corporation; and
20  CERCACOR LABORATORIES, INC.,       **MEMORANDUM OF POINTS AND**
    a Delaware corporation,            **AUTHORITIES IN SUPPORT OF**
21                                     **DEFENDANT APPLE INC.'S**
                   Plaintiffs,         **MOTION TO DISMISS THE**
22                                     **THIRTEENTH CAUSE OF ACTION**
           v.                          **FOR TRADE SECRET**
23                                     **MISAPPROPRIATION IN**
    APPLE INC.,                        **PLAINTIFFS' FIRST AMENDED**
24  a California corporation,          **COMPLAINT**

25                 Defendant.          **Hearing**

26                                     Date:     Date: June 8, 2020
27                                     Time:     1:30 p.m.
                                       Courtroom: 10C
28                                     Judge:    Hon. James V. Selna

Exhibit 21
-192-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND ................................................................................. 3

      A.   Plaintiffs Allege an Effort by Apple to Misappropriate Their Trade
           Secrets More Than Six Years before Filing This Action.......................... 3

      B.   A Published Patent Application Put Plaintiffs on Notice of Their
           Alleged Claim More Than Three Years Before They Filed. ..................... 4

III.  LEGAL STANDARD ......................................................................... 5

IV.   PLAINTIFFS' CUTSA CLAIM SHOULD BE DISMISSED........................... 6

      A.   Plaintiffs' CUTSA Claim Is Time-Barred. .......................................... 6

           1.   The Limitations Period Began More Than Three Years Ago. ........ 6

           2.   Plaintiffs Have Not Pleaded a Plausible Excuse for Their
                Delay. ...................................................................................... 9

      B.   Plaintiffs Fail to Allege Any Protectable Trade Secrets. ....................... 14

           1.   Plaintiffs' Broad Allegations Fail under Fed. R. Civ. Proc. 8....... 15

           2.   Plaintiffs Have Not Distinguished Their Trade Secrets from
                Patents. ................................................................................... 19

      C.   Plaintiffs Fail to Allege Misappropriation by "Improper Means.".......... 20

           1.   Plaintiffs Fail to Allege Improper Acquisition. ........................... 20

           2.   Plaintiffs Fail to Allege Improper Disclosure or Use by
                Apple........................................................................................ 24

      D.   Plaintiffs Should Be Denied Leave to Amend Their CUTSA Claim. ...... 25

V.    CONCLUSION ................................................................................. 25

Gibson, Dunn &
Crutcher LLP

**Exhibit 21
-193-**

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Acrisure of Cal., LLC v. SoCal Commercial Ins. Servs.,*
    2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) ..................................................... 14, 15

6

*Alamar Biosciences Inc. v. Difco Labs. Inc.,*
    1996 WL 648286 (E.D. Cal. Feb. 27, 1996) ........................................................ 7, 13

8

*Alta Devices, Inc. v. LG Elecs., Inc.,*
    2019 WL 1924992 (N.D. Cal. Apr. 30, 2019)............................................................ 7

*AlterG, Inc. v. Boost Treadmills LLC,*
    388 F. Supp. 3d 1133 (N.D. Cal. 2019)......................................................... 16, 17, 20

*Am. Hardware Mut. Ins. Co. v. Escamilla,*
    2010 WL 11574194 (N.D. Cal. Sept. 30, 2010)..................................................... 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................................ 6, 25

*ATS Prods., Inc. v. Champion Fiberglass, Inc.,*
    2015 WL 6552698 (N.D. Cal. Oct. 28, 2015) ......................................................... 23

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys.,*
    *Inc.,*
    583 F.3d 832 (Fed. Cir. 2009) ................................................................................ 9

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.,*
    2018 WL 2298500 (N.D. Cal. May 21, 2018)......................................................... 16

*Bell Atl. v. Twombly,*
    550 U.S. 544 (2007).................................................................................................. 6

*Bladeroom Grp. Ltd. v. Facebook, Inc.,*
    2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) ..................................................... 14, 19

*Carr v. AutoNation Inc.,*
    2018 WL 288018 (E.D. Cal. Jan. 4, 2018) ............................................................. 23

*Citcon USA, LLC v. RiverPay, Inc.,*
    2018 WL 6813211 (N.D. Cal. Dec. 27, 2018) ........................................................ 20

**Exhibit 21**
**-194-**

*Citizens' Nat. Bank of Los Angeles v. Santa Rita Hotel Co.*,
   22 F.2d 524 (9th Cir. 1927) ....................................................................... 11

*In re City of Los Angeles Med. Marijuana Litig.*,
   2014 WL 12783295 (C.D. Cal. June 13, 2014) ..................................... 8, 14

*Cypress Semiconductor Corp. v. Super. Ct.*,
   163 Cal. App. 4th 575 (Cal. Ct. App. 2008) ............................................... 6

*Delphix Corp. v. Actifo, Inc.*,
   2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) ........................................... 25

*Diodes v. Franzen*,
   260 Cal. App. 2d 244 (Cal. Ct. App. 1968) .............................................. 16

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) .................................................................... 14

*Forcier v. Microsoft Corp.*,
   123 F. Supp. 2d 520 (N.D. Cal. 2000) ................................................. 7, 11

*Fox v. Ethicon Endo-Surgery*,
   35 Cal. 4th 797 (2005) ........................................................................ 10, 11

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
   857 F. Supp. 2d 997 (S.D. Cal. 2012) ................................................. 7, 10

*Globespan, Inc. v. O'Neill*,
   151 F. Supp. 2d 1229 (C.D. Cal. 2001) .................................................... 19

*Green Crush LLC v. Paradise Splash I, Inc.*,
   2018 WL 4940824 (C.D. Cal. Mar. 8, 2018) ............................................ 17

*Hays v. VDF Futureceuticals, Inc.*,
   2016 WL 5660395 (D. Haw. Sept. 28, 2016)........................................... 6, 8

*Human Longevity, Inc. v. J. Craig Venter Inst., Inc.*,
   2018 WL 6617633 (S.D. Cal. Dec. 18, 2018) ....................... 14, 15, 17, 22

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
   2019 WL 4233578 (C.D. Cal. June 28, 2019)........................................... 18

*Invisible Dot, Inc. v. DeDecker*,
   2019 WL 1718621 (C.D. Cal. Feb. 6, 2019) ............................................ 23

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. TO DISMISS THE
THIRTEENTH CAUSE OF ACTION IN THE FAC        iii        CASE NO. 8:20-cv-00048-JVS (JDEx)

Exhibit 21
-195-

*Klamath-Lake Pharma. Ass'n v. Klamath Med. Serv. Bureau*,
   701 F.2d 1276 (9th Cir. 1983) ................................................................. 25

*Klang v. Pflueger*,
   2014 WL 4922401 (C.D. Cal. July 10, 2014) ...................................... 1, 6, 9, 10, 13

*Les Concierges, Inc. v. Robeson*,
   2009 WL 1138561 (N.D. Cal. Apr. 27, 2009) ....................................... 21

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012) ................................................ 25

*MGA Entm't, Inc. v. Mattel, Inc.*,
   41 Cal. App. 5th 554 (Cal. Ct. App. 2019) .................................. 6, 7, 9, 13

*Pellerin v. Honeywell Int'l, Inc.*,
   877 F. Supp. 2d 983 (S.D. Cal. 2012) ............................................. 21, 24

*Reese v. TracFone Wireless, Inc.*,
   2014 WL 1872175 (C.D. Cal. May 9, 2014) ......................................... 12

*S. Cal. Inst. of Law v. TCS Educ. Sys.*,
   2011 WL 1296602 (C.D. Cal. Apr. 5, 2011) ......................................... 21

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (Cal. Ct. App. 2010) ........................................ 23

*Space Data Corp. v. X*,
   2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) .............................. 14, 19, 24

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................................... 8

*Synopsys, Inc. v. ATopTech, Inc.*,
   2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ....................... 15, 16, 18, 20

*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*,
   707 F. Supp. 1170 (C.D. Cal. 1989) ............................................... 18, 22

*Vendavo, Inc. v. Price f(x) AG*,
   2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ........................... 2, 17, 19

*Veronica Foods Co. v. Ecklin*,
   2017 WL 2806706 (N.D. Cal. June 29, 2017) ...................................... 14

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. TO DISMISS THE
THIRTEENTH CAUSE OF ACTION IN THE FAC          iv          CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 21**
**-196-**

*VIA Techs., Inc. (a Cal. Corp.) v. Asus Computer Int'l,*
   2016 WL 5930280 (N.D. Cal. Oct. 12, 2016) ........................................................ 18

*Wang v. Palo Alto Networks, Inc.,*
   2014 WL 1410346 (N.D. Cal. Apr. 11, 2014) ........................................ 7, 8, 9, 12

*Webpass Inc. v. Banth,*
   2014 WL 7206695 (N.D. Cal. Dec. 18, 2014) ...................................................... 11

*Whyte v. Schlage Lock Co.,*
   101 Cal. App. 4th 1443 (Cal. Ct. App. 2002) ...................................................... 19

*Wolf v. Travolta,*
   167 F. Supp. 3d 1077 (C.D. Cal. 2016) ............................................................... 10

*Zomm, LLC v. Apple Inc.,*
   391 F. Supp. 3d. 946 (N.D. Cal. 2019) ............................................................... 24

*Zora Analytics, LLC v. Sakhamuri,*
   2013 WL 12124612 (S.D. Cal. June 18, 2013) ................................................... 24

**Statutes**

Cal. Bus. & Prof. Code § 16600 ...................................................................................... 18

Cal. Civ. Code § 3426.1 ............................................................................ 18, 20, 21

Cal. Civ. Code § 3426.6 ...................................................................................... 1, 6

Gibson, Dunn &
Crutcher LLP

Memo. iso Apple's Mot. to Dismiss the
Thirteenth Cause of Action in the FAC    v     Case No. 8:20-cv-00048-JVS (JDEx)

**Exhibit 21**
**-197-**

## TABLE OF ABBREVIATIONS

| Abbreviation | Document |
|---|---|
| Apple | Defendant Apple Inc. |
| Masimo | Plaintiff Masimo Corporation |
| Cercacor | Plaintiff Cercacor Laboratories, Inc. |
| Plaintiffs | Masimo and Cercacor, collectively |
| Original Complaint, Compl. | Plaintiffs' Original Complaint (Dkt. No. 1) |
| FAC | Plaintiffs' First Amended Complaint (Dkt. No. 28) |
| '265 patent | U.S. Patent No. 10,258,265 |
| '266 patent | U.S. Patent No. 10,258,266 |
| '628 patent | U.S. Patent No. 10,292,628 |
| '708 patent | U.S. Patent No. 10,299,708 |
| '190 patent | U.S. Patent No. 10,376,190 |
| '191 patent | U.S. Patent No. 10,376,191 |
| '695 patent | U.S. Patent No. 10,470,695 |
| '994 patent | U.S. Patent No. 6,771,994 |
| '703 patent | U.S. Patent No. 8,457,703 |
| '776 patent | U.S. Patent No. 10,433,776 |
| '553 patent | U.S. Patent No. 10,588,553 |
| '554 patent | U.S. Patent No. 10,588,554 |
| '052 patent | U.S. Patent No. 10,078,052 |
| '095 patent | U.S. Patent No. 9,952,095 |

| '754 patent | U.S. Patent No. 10,219,754 |
| --- | --- |
| '997 patent | U.S. Patent No. 9,723,997 |
| '196 application | U.S. Patent Application No. 14/740,196 |
| '726 publication | U.S. Patent Publication No. 2016/0061726 |
| '268 application | U.S. Patent Application No. 14/621,268 |
| '422 application | U.S. Patent Application No. 14/617,422 |
| '664 application | U.S. Patent Application No. 14/618,664 |
| CUTSA | The California Uniform Trade Secret Act |
| DTSA | The Defend Trade Secrets Act of 2016 |
| RJN | Apple's Request for Judicial Notice in Support of Defendant's Motion to Dismiss (filed concurrently herewith) |
| RJN Decl. | Samplin Declaration in Support of Apple's Request for Judicial Notice |
| USPTO | U.S. Patent and Trademark Office |

## I.  **INTRODUCTION**

The FAC does nothing to change the fact that Plaintiffs' CUTSA claim is fatally flawed.  To the contrary, the FAC confirms that the claim is untimely.  And the shifting list of alleged trade secrets, which now number in the thousands, makes it impossible for the Court or Apple to determine if there are any real trade secrets at issue, let alone ones Apple knew about.  The claim should be dismissed for at least three reasons.

*First*, as to timeliness, the FAC confirms that Plaintiffs suspected Apple of misappropriation as early as 2014, and that the period for filing a CUTSA claim has therefore expired.  That year, Plaintiffs wrote that they *could not imagine* a reason for Apple to hire their former employee Marcelo Lamego *other than misappropriation*.  This suspicion triggered the running of the three-year statute of limitations as a matter of law.  Furthermore, in 2016, the USPTO published an Apple patent application listing Lamego as an inventor and relating to the field of healthcare monitoring technology—mobile health applications and the measurement of physiological data—in which Plaintiffs asserted in 2014 that Lamego could not possibly work without disclosing their trade secrets.  Therefore, even under *Plaintiffs' theory*, the statute of limitations was triggered no later than 2016—more than three years before Plaintiffs filed this lawsuit.

Plaintiffs cannot escape their 2014 concession that they suspected misappropriation or the 2016 patent publication that identifies Lamego and relates to the same technology field as the information they now claim as trade secrets.  The test for timely discovery of a CUTSA claim is whether Plaintiffs knew, *or should have known by the exercise of reasonable diligence*, of the alleged misappropriation.  Cal. Civ. Code § 3426.6.  Plaintiffs must plead specific facts explaining why a reasonable investigation would not have put them on notice.  *Klang v. Pflueger*, 2014 WL 4922401, at *6 (C.D. Cal. July 10, 2014).  Plaintiffs fail this test.  Plaintiffs give a long list of irrelevant excuses, but fail to explain how they were not on notice in 2014 when they not only suspected misappropriation, but also told Apple that they *could not imagine* a reason for Apple's actions *other than* misappropriation.  Plaintiffs also provide *no* explanation as

MEMO. ISO APPLE'S MOT. TO DISMISS THE
THIRTEENTH CAUSE OF ACTION IN THE FAC          1          CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 21**
**-200-**

1    to how the 2016 patent publication differed from the later-published patents that

2    Plaintiffs now allege disclosed their trade secrets.  This omission is particularly glaring

3    given that the FAC asserts correction of inventorship and ownership claims not only for

4    the Apple patent that issued from the 2016 published application (the '052 patent), but

5    also for later-published Apple patents that allegedly disclose Plaintiffs' trade secrets.

6    Furthermore, the FAC alleges that *all* of these patents contain subject matter obtained

7    from Masimo employees.  These facts—which appear in the FAC or are judicially

8    noticeable—doom Plaintiffs' trade secret claim as a matter of law.

9         *Second*, the FAC further obscures the alleged trade secrets.  Plaintiffs *expanded*

10   the open-ended list of seven broad categories of information in the Original Complaint

11   to an even broader (and still open-ended) list of *50 categories of generic documents and*

12   *information*, as well as unidentified combinations and generalized knowledge of those

13   categories, in the FAC.  FAC ¶ 211.  Plaintiffs ask the Court to accept that within one

14   paragraph of their FAC, they have pleaded *thousands* of combinations of trade secrets

15   with sufficient detail.  They have not.  The countless categories are "more descriptive of

16   the *types* of information that generally *may* qualify as protectable trade secrets than as

17   any kind of listing of particular trade secrets [Plaintiffs] ha[ve] a basis to believe actually

18   were misappropriated." *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D.

19   Cal. Mar. 23, 2018).  More troubling still, Plaintiffs allege that certain of their trade

20   secrets *already* have been made public in patent filings—and appear to concede that *all*

21   of the alleged trade secrets may be public insofar as they allege that each trade secret

22   was not public "at least at the time of Defendant's misappropriation." FAC ¶ 212.

23   Plaintiffs have no reason for failing to identify *public* trade secrets in the FAC; this

24   failure prevents Apple and the Court from assessing the viability of the CUTSA claim.

25        *Third*, Plaintiffs still fail to allege that Apple had requisite knowledge under the

26   CUTSA to establish that Apple acquired their alleged trade secrets by improper means.

27   The FAC does not allege any facts suggesting that Apple knew or had reason to know

28   which *specific* information from Plaintiffs' former employee (Lamego) came from

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. TO DISMISS THE
THIRTEENTH CAUSE OF ACTION IN THE FAC          2          CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 21**
**-201-**

1   Plaintiffs, let alone the *specific* information that Lamego purportedly was banned from

2   using.  Nor can it, because the trade secrets are alleged to be so vague that, as Plaintiffs

3   concede, Lamego would not be permitted to work at all in the healthcare technology

4   industry if all of the alleged information were in fact a trade secret.  Furthermore,

5   Plaintiffs cannot base their CUTSA claim on the doctrine of inevitable disclosure—that

6   because one or two people worked for Plaintiffs and then came to Apple, they *must have*

7   *disclosed* unspecified trade secrets in their new employment.  California law, this Court,

8   and others in this Circuit have roundly rejected such a theory.

9           The trade secrets claim is time-barred and fatally vague, and should be dismissed.

10   ## II.      BACKGROUND[1]

11   **A.    Plaintiffs Allege an Effort by Apple to Misappropriate Their Trade Secrets**

12   **More Than Six Years before Filing This Action.**

13           According to the FAC, in 2013, Apple contacted Masimo "to understand more

14   about Masimo's technology," "entered into a confidentiality agreement" with Masimo,

15   and had "confidential discussions" with Masimo's management.  FAC ¶ 19.  Then,

16   Apple "recruited . . . key Masimo personnel," including O'Reilly, Masimo's former

17   Chief Medical Officer, and Lamego, former Cercacor CTO.  *Id*. ¶¶ 19–21.  "O'Reilly

18   was privy to extremely sensitive information . . . about mobile medical products and

19   applications, wellness applications, clinical data gathering and analytics, and other

20   technology of Masimo."  *Id*. ¶ 20.  Lamego had access to "highly confidential technical

21   information," "was taught about the keys to effective non-invasive monitoring," and

22   "learned guarded secrets regarding Plaintiffs' mobile medical products."  *Id*. ¶ 22.

23           By January 2014, Plaintiffs were suspicious of Apple's conduct, including its

24   hiring of Lamego.  On January 24, 2014, they sent Apple a letter "explaining that

25   Lamego possessed Plaintiffs' confidential proprietary information and warning Apple

26   to respect [their] rights in such information."  *Id*. ¶ 23.  The letter cautioned, "we trust

27   that Apple will employ Mr. Lamego in an area that does not involve healthcare

28   _____

[1] The allegations in the Original Complaint and the FAC are treated as true for purposes of this motion only.

Gibson, Dunn & Crutcher LLP

1    technology, including mobile health applications and the measurement of physiological

2    information." *Id*.  The FAC quotes and refers to the letter (*id.* at ¶¶ 23, 216, 220), but

3    fails to cite two admissions in the letter, or attach it.  RJN Decl. Ex. A.  First, the letter

4    stated that Plaintiffs found it "difficult to imagine any reason for [Apple's conduct] other

5    than [that] Apple [was] attempting to gain access to, or . . . the benefit of, [their] trade

6    secrets."  RJN Decl. Ex. A, at 4.  Second, the letter accused Apple of "targeting"

7    Plaintiffs' "personnel for some time."  *Id*.[2]  The letter also demanded that Apple not

8    employ Lamego in the field of "healthcare technology," because doing so "necessarily

9    [would] involve the use or disclosure of [Cercacor's] trade secrets."  *Id.*; *see* FAC ¶ 23.

10   Yet in the next six years—even after it became public that Lamego did work for Apple

11   on the same technology to which Plaintiffs' alleged trade secrets supposedly relate (e.g.,

12   RJN Decl. Ex. B)—Plaintiffs did nothing.

13   **B.    A Published Patent Application Put Plaintiffs on Notice of Their Alleged**
14   **      Claim More Than Three Years Before They Filed.**

15        Plaintiffs allege that Apple "used and disclosed Plaintiffs' Confidential

16   Information at least by . . . filing patent applications containing" that information.  FAC

17   ¶ 218.  They concede that "shortly after joining Apple in January 2014, Lamego began

18   pursuing on behalf of Apple numerous patent applications directed toward technologies

19   he worked on at Plaintiffs, and with which he had no prior experience or knowledge."

20   *Id*. ¶ 24.  The Original Complaint alleged this without qualification (Compl. ¶ 23);

21   Plaintiffs now allege such facts were "[u]nbeknownst to Plaintiffs" in 2014 (FAC ¶ 24).

22        Despite Plaintiffs' newly claimed ignorance, the FAC still demonstrates that

23   Plaintiffs knew or should have known about Lamego's pursuit of at least one relevant

24   Apple patent application by at least March 2016:  The '196 application was published

25   as the '726 publication on March 3, 2016, naming Lamego as an inventor in the field of

26   healthcare technology.  *See id.* ¶ 39 (citing the '196 application, which issued as the '052

27   patent that is the subject of the Fourteenth Cause of Action); *id.* Ex. 27, at 1147 ('052

---

28   [2]  By September 2014, "Apple announced the first version of its watch"—an ostensibly
competing technology.  FAC ¶ 25.

MEMO. ISO APPLE'S MOT. TO DISMISS THE
THIRTEENTH CAUSE OF ACTION IN THE FAC        4          CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 21**
**-203-**

1   patent, Prior Pub. Data); RJN Decl. Ex. B, at 11 ('726 publication, Pub. Date).  That

2   application is entitled "Reflective Surface Treatments For Optical Sensors," and relates

3   to "electronic . . . optical sensing systems" that "can be adapted to obtain physiological

4   data from a biological subject."  FAC Ex. 27, at 1154 ('052 patent, Title, 1:16–18, 1:45–

5   48); RJN Decl. Ex. B, at 11, 18 ('726 publication, Title, ¶¶ 2, 5).  Indeed, the Original

6   Complaint listed the '196 patent application, which published as the '726 publication,

7   as the *first example* of an application that allegedly included technologies with which

8   Lamego was intimately involved while working at Plaintiffs.  Compl. ¶¶ 23–24, 187.

9       Thus, a patent application that (i) referenced healthcare technology on which

10   Lamego was purportedly prohibited from working because, *according to Plaintiffs*, he

11   was incapable of doing so without using their confidential information (FAC ¶ 23; RJN

12   Decl. Ex. A, at 4–5), and (ii) named Lamego as inventor, was publicly available more

13   than three years before Plaintiffs filed this action.  The Original Complaint conceded

14   this publicly available application was an example of an application allegedly containing

15   information that Lamego acquired from them.  Compl. ¶¶ 23–24.  Nonetheless, Plaintiffs

16   now claim it was reasonable that they did nothing in the ensuing three years.

17       The FAC contains no explanation for Plaintiffs' delay.  Plaintiffs do not explain:

18   (1) why the '726 publication did not put them on notice of the alleged misappropriation,

19   or (2) how the '726 publication is different from those later-published patents that

20   Plaintiffs assert do contain their alleged trade secrets (*see* FAC ¶ 220)—even though the

21   '726 publication relates to the same technology as the later-published patents (*see, e.g.*,

22   Ex. 29, at 1193 ('095 patent, 1:15–19)), and Plaintiffs allege that the subject matter of

23   the '726 publication (as disclosed in the resultant '052 patent) and these later-published

24   patents all came from Masimo's employees (*see, e.g.*, FAC ¶¶ 227, 241, 248).  Plaintiffs

25   are also silent as to why they do not allege that the '196 patent application, which

26   published as the '726, is an example of an application containing their alleged secrets.

27   ## III.   LEGAL STANDARD

28   A complaint must contain "sufficient factual matter, accepted as true, to state a

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. TO DISMISS THE
THIRTEENTH CAUSE OF ACTION IN THE FAC        5        CASE NO. 8:20-cv-00048-JVS (JDEx)

Exhibit 21
-204-

1  claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2  For a claim to be facially plausible, a plaintiff must plead "factual content that allows

3  the court to draw the reasonable inference that the defendant is liable for the misconduct

4  alleged." *Id.* at 678.  Dismissal is warranted where a complaint fails to "raise a right to

5  relief above the speculative level." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

6  "Threadbare recitals of the elements of a [claim], supported by mere conclusory

7  statements, do not suffice." *Iqbal*, 556 U.S. at 678.

8             **IV.   PLAINTIFFS' CUTSA CLAIM SHOULD BE DISMISSED.**

9  **A.    Plaintiffs' CUTSA Claim Is Time-Barred.**

10       A CUTSA claim "must be brought within three years after the misappropriation

11  is discovered or by the exercise of reasonable diligence should have been discovered."

12  Cal. Civ. Code § 3426.6.  Thus, "the statute of limitations begins to run when a plaintiff

13  discovers, or has reason to discover, the cause of action." *Klang*, 2014 WL 4922401, at

14  *1–2, *5–6 (dismissing CUTSA claim where patent applications disclosing invention

15  published five years before filing).  Suspicion starts the clock:  "[w]hen there is reason

16  to suspect" misappropriation, "and a reasonable investigation would produce facts

17  sufficient to confirm this suspicion . . ., the limitations period begins, even though the

18  plaintiff has not conducted such an investigation." *Hays v. VDF Futureceuticals, Inc.*,

19  2016 WL 5660395, at *3 (D. Haw. Sept. 28, 2016) (applying California law and granting

20  motion to dismiss because "suspicion of wrongdoing will trigger the statute of

21  limitations"); *see also MGA Entm't, Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554, 564 (Cal.

22  Ct. App. 2019) ("[o]nce [plaintiff] had reason to suspect an injury and some wrongful

23  cause, the statute [of limitations]. . . began to run" on CUTSA claim); *Cypress*

24  *Semiconductor Corp. v. Super. Ct.*, 163 Cal. App. 4th 575, 587 (Cal. Ct. App. 2008)

25  ("[M]isappropriation that triggers . . . the statute is that which the plaintiff suspects").

26         **1.    The Limitations Period Began More Than Three Years Ago.**

27       ***The statute was triggered in 2014***.  The FAC makes clear that Plaintiffs suspected

28  Apple of misappropriating their alleged trade secrets in 2014.  After Apple and Masimo

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. TO DISMISS THE
THIRTEENTH CAUSE OF ACTION IN THE FAC    6    CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 21**
**-205-**

met to discuss a "potential collaboration" in 2013, and Lamego "join[ed] Apple in January 2014" (FAC ¶¶ 19, 21, 24), Plaintiffs immediately "warn[ed] Apple to respect [their] rights" in their "confidential proprietary information" (*id*. ¶ 23).  The January 24, 2014 "warning" letter confirms Plaintiffs' suspicions and is fatal to their CUTSA claim. The letter states that "[i]t is difficult to imagine *any reason* for th[e] sequence of events *other than Apple is attempting to gain access to, or at least the benefit of, Cercacor and Masimo's trade secrets*."  RJN Decl. Ex. A, at 4 (emphasis added); *see, e.g.*, *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1004-06 (S.D. Cal. 2012) (email between plaintiff's employees saying defendant committed a "direct rip-off" of plaintiff's trade secret "established that [plaintiff] had a suspicion of wrong doing which triggered the statute of limitations"); *cf. Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 530–31 (N.D. Cal. 2000) (suspicion triggered limitations period for interference claim where defendant hired two employees allegedly possessing plaintiff's trade secrets to develop competing technology and file patent applications, and plaintiff sent a letter to defendant with "concern[] . . . that [defendant] might make use of the [misappropriated] technology").  Plaintiffs "had a suspicion that [Apple] had misappropriated [their] trade secrets" and "articulated that suspicion" in the January 2014 letter (*MGA Entm't*, 41 Cal. App. 5th at 565), and it was "common knowledge" by September 2014 that Apple was pursuing similar technology (*Alamar Biosciences Inc. v. Difco Labs. Inc.*, 1996 WL 648286, at *4 (E.D. Cal. Feb. 27, 1996)), when Apple "announced the first version of its watch" (FAC ¶ 25).  Plaintiffs were on notice of their claim by 2014.

   ***The statute was alternatively triggered in 2016***.  The "publication of patents (and now patent applications) must be deemed, as a matter of law, to place those practicing in the same field and prosecuting their own patent applications . . . on full notice of all of the contents of the publication."  *Wang v. Palo Alto Networks, Inc.*, 2014 WL 1410346, at *6 (N.D. Cal. Apr. 11, 2014); *see Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 1924992, at *14 (N.D. Cal. Apr. 30, 2019) (reliance on *Wang* (a summary judgment case) for a motion to dismiss proper because the "Court takes as true . . . the allegations

**Exhibit 21 -206-**

in [the] complaint"). Courts routinely find that patent applications and patents trigger the statute of limitations for sophisticated parties like Plaintiffs, especially when they are trying to "commercialize [their] own technologies." *Wang*, 2014 WL 1410346, at *6; *Hays*, 2016 WL 5660395, at *5 (dismissing analogous Hawaii trade secrets claim, and holding that "statute . . . began to run when the patents were issued" because the patents sufficiently described the methods at issue for Plaintiff "at least to suspect a factual basis for [the] elements" of his claim).

Here, Plaintiffs cannot escape that the '726 application, naming Lamego as an inventor, published on March 3, 2016. RJN Decl. Ex. B, at 11; FAC Ex. 27, at 1147. The '726 publication relates to the same category of information—physiological measurement—as Plaintiffs' alleged trade secrets. *See* RJN Decl. Ex. B, at 18 ('726 publication, ¶¶ 2, 5); FAC ¶ 211. Indeed, the FAC alleges that the resultant '052 patent "claims subject matter that Lamego obtained from discussions with" Plaintiffs. FAC ¶ 227 & Ex. 27. And, again, the Original Complaint alleged that the '196 application, which published as the '726 application, was the *first example* of an application that Lamego pursued on behalf of Apple based on his work at, and knowledge from, Plaintiffs, and which allegedly disclosed Plaintiffs' confidential information "*by September 2014*." Compl. ¶¶ 23–24, 186–187 (emphasis added).

Now, *after* Apple raised the statute of limitations in its Motion to Dismiss the Original Complaint (Dkt. No. 16), Plaintiffs suddenly claim that they did not know about any disclosure until after January 10, 2017. FAC ¶¶ 219. The Court should not accept this new allegation because it "contradict[s] matters properly subject to judicial notice or by exhibit" (*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)), and also "contradict[s] [and] obfuscate[s] facts alleged in the prior pleading" (*In re City of Los Angeles Med. Marijuana Litig.*, 2014 WL 12783295, at *3 (C.D. Cal. June 13, 2014)). Plaintiffs provide *no* colorable explanation for their failure to act upon the '726 publication, nor do they allege that they were not monitoring patent filings involving Lamego and Apple. *See Wang*, 2014 WL 1410346, at *6 ("[I]nventor actively practicing

**Exhibit 21**
**-207-**

1    in the field and prosecuting his own patent application must be deemed to be on

2    constructive notice of published patent applications in the same field").

3          Even if the Court accepts as true these newly manufactured allegations (it should

4    not), the '726 publication establishes that by March 3, 2016, Plaintiffs *should have*

5    *known* about the alleged disclosure.  The publication demonstrated that:  (1) Lamego

6    was employed by Apple in the field of physiological monitoring—in which Plaintiffs

7    "expressed concern" (*MGA Entm't*, 41 Cal. App. 5th at 565) that Lamego could *not* work

8    *without* using their confidential information (FAC ¶ 23; RJN Decl. Ex. A, at 4–5);

9    (2) Apple and Lamego did not agree to Plaintiffs' 2014 demand that Lamego not work

10   in the field (FAC Ex. 27; RJN Decl. Ex. B); and (3) Lamego purportedly was using their

11   information in his work (FAC ¶ 227).  Moreover, the '726 publication relates to light

12   emitter technology used for *health monitoring* to increase reliability of *biological*

13   *readings* (RJN Decl. Ex. B, at 18 ('726 publication, ¶¶ 2, 5))—like the three other patent

14   applications (the '268, '422, and '664) that were published as patents after 2016 and *are*

15   alleged to contain Plaintiffs' trade secrets (FAC ¶¶ 40–42, 220).[3]   The FAC

16   demonstrates that the '726 publication was "in the same field as" Plaintiffs' own

17   supposedly misappropriated technology. *Wang*, 2014 WL 1410346, at *3.  Accordingly,

18   by March 3, 2016, Plaintiffs were on notice to investigate their trade secret claim, and

19   the limitations period commenced by that date. *See id.* at *6; *Bd. of Trustees of Leland*

20   *Stanford Junior Univ. v. Roche Molecular Sys., Inc*., 583 F.3d 832, 846 (Fed. Cir. 2009)

21   (party was on notice regarding possible "additional patents as to the same subject

22   matter," even where the applications had not yet been filed), *aff'd*, 563 U.S. 776 (2011).

23       **2.**    **Plaintiffs Have Not Pleaded a Plausible Excuse for Their Delay.**

24         The "[FAC] show[s] on [its] face that [Plaintiffs'] claim would be barred without

25   the benefit of the discovery rule" (*Klang*, 2014 WL 4922401, at *6), because Plaintiffs

26   allege that Apple used their information when Lamego caused Apple to file patent

27

28       [3]  The corresponding patents are the '754, '997, and '095 patents.  FAC ¶¶ 40–42, 220,
Exs. 29–30.  The FAC does not assert the '997 patent against Apple.

**Exhibit 21**
**-208-**

1   applications relating to Plaintiffs' technologies *in 2014* (FAC ¶¶ 24, 39–42 & Exs. 29–

2   30).   Plaintiffs' burden is to prove facts that toll the statute of limitations—i.e.,

3   "specifically plead[ed] facts to show (1) the time and manner of discovery and (2) the

4   inability to have made earlier discovery despite reasonable diligence." *Klang*, 2014 WL

5   4922401, at *6; *Fox v. Ethicon Endo-Surgery*, 35 Cal. 4th 797, 808 (2005) ("the burden

6   [is] on the plaintiff to 'show diligence'"); *see also Gabriel Techs.*, 857 F. Supp. 2d at

7   1003 (same); Jud. Council of Cal. Civ. Jury Instr. (2019), No. 4421 (Plaintiffs must

8   prove they "did not discover, nor with reasonable diligence should have discovered, facts

9   that would have caused a reasonable person to suspect that [Defendant] had

10  misappropriated [their information]").   Plaintiffs had to plead specific facts establishing

11  that (1) despite their January 2014 letter to the contrary, they did not have reason to

12  suspect Apple of misappropriation, and (2) despite the later-published patents, which

13  purportedly put them on notice of their claim, they did not have reason to suspect the

14  misappropriation from the '726 publication relating to the same technology.   Plaintiffs'

15  alleged reasons why they could not have discovered Apple's purported misappropriation

16  before January 10, 2017, do not satisfy that burden.

17  ***(i)    Plaintiffs' purported reliance on Apple's alleged non-response to their***

18  ***January 2014 "warning" letter is not reasonable.***   Plaintiffs claim that Apple and

19  Lamego "led Plaintiffs to believe they intended to respect Plaintiffs' intellectual property

20  rights and concealed" Apple's alleged misappropriation. FAC ¶ 220.  Apple purportedly

21  did so because "Plaintiffs notified [Apple] that Lamego possessed the Confidential

22  Information on January 24, 2014," and Apple "never informed [them] that Lamego had

23  used or disclosed" that information.  *Id*.  Significantly, Plaintiffs do not allege (1) that

24  Apple responded to the January 2014 "warning letter" (FAC ¶ 23), or (2) any *facts*

25  suggesting that Apple misled them.  Instead, Plaintiffs implausibly allege that they "had

26  no reason to suspect or believe that [Apple] had ignored Plaintiffs' letter." *Id*. ¶ 219.

27  Plaintiffs' claim that they simply interpreted Apple's ostensible silence as agreement to

28  the demands in their letter fails.  *Cf. Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1096 (C.D.

1  Cal. 2016) (plaintiff's "purported inability to discover [copyright] infringement"

2  unreasonable where investigation of suspicions involved asking defendant, his associate,

3  and an employee of the organization with which they were working whether they had

4  infringed, and infringer denied wrongdoing).[4]

5       *(ii)    Lamego's alleged representations are irrelevant*.  Plaintiffs also assert that

6  *Lamego* "assured Plaintiffs that he would not violate his agreements with [them]" or

7  "work on technology similar to Plaintiffs'."  FAC ¶ 23.  Based in part on "conversations

8  with Lamego," Plaintiffs claim they "reasonably believed" he "would not use or disclose

9  Plaintiffs' confidential information and that [Apple] would not induce [him] to do so."

10  FAC ¶ 23.  But whatever supposed promises *Lamego* made in his personal capacity are

11  irrelevant, because Lamego is not Apple; nor have Plaintiffs alleged facts plausibly

12  establishing that his statements can be attributed to Apple.  *See Citizens' Nat. Bank of*

13  *Los Angeles v. Santa Rita Hotel Co.*, 22 F.2d 524, 528 (9th Cir. 1927) ("[W]here one

14  deals with an agent concerning a matter affecting his personal interest, he is not justified

15  in relying upon the agent's statements and actions as being those of the principal . . . .");

16  *Am. Hardware Mut. Ins. Co. v. Escamilla*, 2010 WL 11574194, at *3 (N.D. Cal. Sept.

17  30, 2010) ("The burden of proving agency," and "the agent's authority, rests upon the

18  party . . . who seeks to charge the principal for the acts or representations of the agent.").

19       *(iii)    Masimo's unidentified agreement with Apple only underscores the*

20  *implausibility of Plaintiffs' delayed discovery claim*.  Plaintiffs also claim that based on

21  Masimo's purported confidentiality agreement with Apple, they reasonably believed

22  Apple would not induce Lamego to use their confidential information or do so itself.

23  FAC ¶ 23.  Plaintiffs do not attach the agreement to their FAC; nor do they allege what

24  it covered.  *Id*. ¶ 19.  Plaintiffs have failed to plead the agreement's material terms, and

25  therefore the agreement cannot form the basis for their delayed discovery claim.  *Cf.*

26

27  _____

28  [4]  Plaintiffs' implausible allegation that they "had no reason to suspect" the alleged
misappropriation (FAC ¶ 219) concedes that suspicion triggers the limitations period.
*Forcier*, 123 F. Supp. 2d at 530–31; *Fox*, 35 Cal. 4th at 808.

**Exhibit 21**
-210-

1    *Webpass Inc. v. Banth*, 2014 WL 7206695, at *4 (N.D. Cal. Dec. 18, 2014) (dismissing

2    claim based on defendant's alleged breach of plaintiff's confidentiality and non-

3    disclosure policy where plaintiff failed to allege the material terms of that policy).

4         ***(iv)   It is irrelevant that the first product "at issue" was announced in 2018***.

5    Plaintiffs claim that they "had no way of knowing, or learning," of Apple's alleged

6    misappropriation prior to January 10, 2017 because "the first [Apple] product at issue

7    was not announced until 2018" (FAC ¶ 219).  This is wrong as a matter of law.

8         Plaintiffs admit that they demanded in January 2014 that Lamego not work on

9    technology similar to Plaintiffs'—or in the "healthcare technology" space at all.  *Id*.

10   ¶ 23.  But the FAC reveals that (i) in September 2014, Apple announced the first version

11   of the Apple Watch—an ostensibly competing, and indisputably similar product to the

12   allegedly infringing Series 4 Watch (*id*. ¶ 25); (ii) in April 2015, Apple began shipping

13   the Watch (*id*.); and (iii) on March 3, 2016, the '726 publication put Plaintiffs on notice

14   that Apple had rejected their demand that Lamego not work on healthcare monitoring

15   technology (*id*. Ex. 27, at 1154 ('052 patent, 1:16–18, 1:45–48); RJN Decl. Ex. B, at 18

16   ('726 publication, ¶¶ 2, 5)).  The FAC also discloses that Masimo has "numerous U.S.

17   patents" in "noninvasive patient monitoring technologies," and Plaintiffs have

18   aggressively defended their intellectual property (e.g., patent) rights since 2014.  *See*

19   FAC ¶¶ 13, 23.  Each of these alleged facts alone puts Plaintiffs on notice of a potential

20   claim.  *Cf. Reese v. TracFone Wireless, Inc*., 2014 WL 1872175, at *4 (C.D. Cal. May

21   9, 2014) ("Significant 'sales, marketing, publication, or public use of a product similar

22   to or embodying technology similar to the patented invention . . . gives rise to a duty to

23   investigate whether there is infringement.'"); *Wang*, 2014 WL 1410346, at *6 (an entity

24   "actively practicing in the field and prosecuting [its] own patent application must be

25   deemed to be on constructive notice of published patent applications in the same field").

26        ***(v)   The FAC and the '726 publication highlight the unreasonableness of***

27   ***Plaintiffs' inaction and implausibility of their discovery claim***.  Plaintiffs also assert,

28   on information and belief, that Apple "requested non-publication of [certain patent]

**Exhibit 21**

-211-

1   applications to prevent Plaintiffs from learning" that (1) "those applications contained

2   [their] Confidential Information," and (2) that Apple allegedly misappropriated that

3   information.  FAC ¶ 220.  But courts bar misappropriation claims where (1) the plaintiff

4   suspected the defendant of misappropriation, (2) a term search would have revealed the

5   subject patent application, and (3) the plaintiff "had done patent searches on the

6   technology of its competitors before."  *Alamar*, 1996 WL 648286, at *5–6.

7       Here, in addition to the many admissions discussed above, eight of Masimo's

8   asserted patents name Lamego as an inventor,[5] and at least one cites 56 prior patents and

9   patent applications naming Lamego as an inventor.[6]  It defies common sense that

10   Plaintiffs would *not* have (i) suspected that Lamego was involved with filing multiple

11   patent applications on Apple's behalf, or (ii) searched such filings once they learned in

12   January 2014 that Lamego was working for Apple, particularly because they ostensibly

13   "[s]earch[ed] for existing intellectual property rights," including competitors' patent

14   filings.  RJN Decl. Ex. C, at 64.  "In these circumstances, a reasonable plaintiff is

15   required to take the elementary step of checking all readily available patent applications"

16   to avoid a limitations bar.  *Alamar*, 1996 WL 648286, at *5–6.

17       That Plaintiffs now claim the '726 publication does not disclose their trade secrets

18   is of no moment, since the publication describes technology Lamego purportedly could

19   *not* work on without using their confidential information, and relates to technology

20   described in three other applications that Plaintiffs claim *do* contain their trade secrets.

21   FAC ¶¶ 39–42, 220; RJN Decl. Ex. A, at 4–5; RJN Decl. Ex. D, at 163–64 (*True*

22   *Wearables* Am. Compl. ¶ 37).  Thus, even accepting as true Plaintiffs' recent, feigned

23   ignorance, they have not met their burden to show that *they could not have* discovered

24   their claim.  *Klang*, 2014 WL 4922401, at *4; *MGA Entm't*, 41 Cal. App. 5th at 561

25   ("plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯

     [5]  FAC Exs. 1–6, 11–12 (the '265, '266, '628, '708, '190, '191, '553, and '554 patents).

28      [6]  FAC Ex. 12, at 881–93 ('554 patent, citing Lamego as inventor 56 times).

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. TO DISMISS THE
THIRTEENTH CAUSE OF ACTION IN THE FAC     13     CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 21**
-212-

1    is a process contemplated by pretrial discovery") (citation omitted).[7]

2          Finally, Plaintiffs' non-publication theory makes no sense.  If Apple were

3    attempting to hide Lamego's work on healthcare monitoring technologies, it would not

4    have permitted publication of *any* patent application in that field naming Lamego as an

5    inventor—yet it did just that.  RJN Decl. Ex. B.  Plaintiffs have no explanation for these

6    inconsistent allegations; their conclusory allegations of concealment fail.  *Eclectic*

7    *Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014)

8    (complaint must allege "facts tending to exclude the possibility" that an "alternative

9    explanation is true"); *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *14 (N.D.

10   Cal. June 29, 2017) (alleged "facts that are not 'merely consistent with' both a theory of

11   innocent [conduct] and [misappropriation], but rather 'tend[ ] to exclude' an innocent

12   explanation" required to survive motion to dismiss).

13   **B.     Plaintiffs Fail to Allege Any Protectable Trade Secrets.**

14         "To adequately allege the existence of a trade secret, the plaintiff must describe

15   the trade secret with sufficient particularity to separate it from matters of general

16   knowledge in the trade . . . and to permit the defendant to ascertain at least the

17   boundaries within which the secret lies."  *Acrisure of Cal., LLC v. SoCal Commercial*

18   *Ins. Servs.*, 2019 WL 4137618, at *3 (C.D. Cal. Mar. 27, 2019) (citation omitted).

19   "[A]llegations of broad categories relating to business or technology are not adequate to

20   support a trade secrets claim."  *Human Longevity, Inc. v. J. Craig Venter Inst., Inc.*, 2018

21   WL 6617633, at *4 (S.D. Cal. Dec. 18, 2018); *see also Bladeroom Grp. Ltd. v.*

22   *Facebook, Inc.*, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015) ("generic list of

23   categories of various types of information" was "vague and conclusory" and

24   insufficient).  For these reasons, a CUTSA claim should be dismissed where, as here,

25   Plaintiffs simply plead "a high-level overview of . . . purported trade secrets."  *Space*

26   *Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017).

27

28   [7]  The Court should not accept Plaintiffs' newfound allegations of ignorance, because
     they contradict the Original Complaint. *Los Angeles*, 2014 WL 12783295, at *3.

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. TO DISMISS THE
THIRTEENTH CAUSE OF ACTION IN THE FAC          14          CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 21**
-213-

1    Plaintiffs allege that they own over 50 categories of supposed trade secrets that

2    "include, but are not limited to, . . . technical information, sales and marketing

3    information, and other business information relating to non-invasive monitoring of

4    physiological parameters and products to perform such monitoring."  FAC ¶ 211.  Such

5    "sweeping and vague" "references to an enormous array of potential sources" of

6    information are insufficient to survive a motion to dismiss.  *Synopsys*, 2013 WL

7    5770542, at *6 (N.D. Cal. Oct. 24, 2013) (description of information "relate[d] to [the

8    plaintiffs'] products," including "proprietary input and output formats, scripts, and

9    technical product documentation, which generally are not publicly known" too vague);

10   *see, e.g.*, *Human Longevity*, 2018 WL 6617633, at *5 (dismissing where "allegations of

11   [trade secrets] are expansive and lack particularity"); *Acrisure of Cal.*, 2019 WL

12   4137618, at *3 ("[t]he Ninth Circuit has rejected the use of 'catchall' language," as

13   insufficiently specific "because it does not *clearly refer* to tangible trade secret material"

14   (citations omitted)).  Plaintiffs' pleading deficiency is even more egregious here because

15   they allege that the Apple Watch "includes Plaintiffs' technologies" (FAC ¶ 25), and

16   that their trade secrets were purportedly published in Apple's patent applications and

17   patents (FAC ¶ 219).[8]  Compounding the lack of particularity is Plaintiffs' inclusion of

18   "secrets" for which they have not alleged misappropriation.  *See, e.g.*, FAC ¶ 211 (listing

19   "risk analysis," "customer information," "sales pipelines," "proposal and quote

20   generation tools," "personnel information," "supplier information," and "spreadsheets,"

21   which plainly cannot be incorporated into Apple's patent applications or its Watch).

22       **1.**    **Plaintiffs' Broad Allegations Fail under Fed. R. Civ. Proc. 8.**

23   *"Technical Information"*:  This category "includes product plans, engineering

24   plans, product briefs, technical drawings, technical specifications, technical data,

25   product designs, system designs, design captures, assembly design requirements, risk

26

27      [8] Plaintiffs allege that their trade secrets "derive[] independent economic value"
     because they were, "at the time of . . . misappropriation, not generally known to the
28   public" (FAC ¶ 213), but Plaintiffs' vague description of their alleged trade secrets do
     not allow the Court or Apple to determine what value any such trade secret may possess.

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. TO DISMISS THE
THIRTEENTH CAUSE OF ACTION IN THE FAC    15    CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 21**
**-214-**

1  analysis, test procedures and results, test data, design review documents, software

2  requirement specifications, technical know-how, manufacturing techniques and

3  procedures, installation techniques and procedures, and invention disclosures."  FAC

4  ¶ 211.  This list references "just about every piece of material Plaintiff[s] ha[ve] ever

5  created or acquired" (*Synopsys, Inc.*, 2013 WL 5770542, at *8), and merely

6  "summarize[s] rather broadly the categories of information" that any product manager

7  in virtually any technology company *could* use to design products—thus failing to

8  sufficiently identify the alleged trade secrets under Rule 8 (*AlterG, Inc. v. Boost*

9  *Treadmills LLC*, 388 F. Supp. 3d 1133, 1145–46 (N.D. Cal. 2019) (granting motion to

10  dismiss DTSA claim where alleged trade secrets "includ[ed] 'techniques, sketches,

11  drawings, models, inventions, know-how, processes, apparatus, equipment, algorithms,

12  software programs, software source documents, and formulae related to the current,

13  future and proposed products and services of the Company, and includes, without

14  limitation, its respective information concerning research, experimental work,

15  development, design details, and specifications, engineering [information]'")).  *See*

16  *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2018 WL 2298500, at *3 (N.D. Cal.

17  May 21, 2018) (allegations of "design review templates," "fluidics design files," or

18  "source code files" lacked particularity, especially when "preceded by the phrases 'such

19  files included' and 'such as'").  In addition, because Plaintiffs allege that their trade

20  secrets include "manufacturing techniques" (FAC ¶ 211), they "must not only identify

21  the end product manufactured, but also supply sufficient data concerning the process."

22  *Diodes v. Franzen*, 260 Cal. App. 2d 244, 253 (Cal. Ct. App. 1968).  Plaintiffs have not.

23      "***Sales and Marketing Information***":  This category "includes product plans"—

24  notably *not* distinguished from "product plans" identified as "Technical Information"

25  above—"business plans, customer information, sales pipelines, proposal and quote

26  generation tools, pricing models, pricing schedules, sales training materials, product

27  training materials, marketing and launch plans, marketing analysis, and competitive

28  analysis."  FAC ¶ 211.  But a "Complaint does not sufficiently put Defendants on notice

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. TO DISMISS THE
THIRTEENTH CAUSE OF ACTION IN THE FAC          16          CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 21**
-215-

Case 8:20-cv-00048-JVS-JDE   Document 38-1   Filed 04/20/20   Page 25 of 34   Page ID
#:2633

of what trade secrets they allegedly misappropriated," where it "lacks any description of what th[e] confidential information entails beyond general labels" such as "business model, business plans, recipes, processes and systems, POS System, means of identifying potential customers and markets, identification of customers' needs, customers' buying habits, . . . marketing plans, strategies, [and] forecasts." *Green Crush LLC v. Paradise Splash I, Inc.*, 2018 WL 4940824, at *5 (C.D. Cal. Mar. 8, 2018) (granting motion to dismiss); *see Vendavo*, 2018 WL 1456697, at *3 (information that "includes . . . customer lists and customer related information, pricing information, . . . marketing plans and strategic business development initiatives, . . . and other information related to the development of [Plaintiff's] price-optimization software, including ideas and plans for product enhancements" is too "broad" to state a trade secret claim); *AlterG, Inc.*, 388 F. Supp. 3d at 1145–46 (information concerning "procurement requirements, purchasing manufacturing, customer lists, business forecasts, sales, and merchandising and marketing plans and information" insufficient to state DTSA claim); *Human Longevity*, 2018 WL 6617633, at *5 (dismissing DTSA claim based on "identity and contact information [for] financing . . . sources" or "of clients and potential client[s]," "negotiating . . . strategies for potential transactions," "industry reports," "analysis of market competitors," and potential expansion "plans, [and] projections").

   "*Other Business Information*":   This category "includes information for successfully operating a noninvasive patient monitoring company, including personnel information, supplier information, and other business spreadsheets and analysis."  FAC ¶ 211.  These allegations are even less specific than the "general labels" such as "vendor identities," "unpublished financial information," and "budgets and projections" that this Court rejected in *Green Crush*.  2018 WL 4940824, at *5; *see Vendavo*, 2018 WL 1456697, at *3 (rejecting as too "broad" identification of trade secrets that included "vendor lists and related information"); *Human Longevity*, 2018 WL 6617633, at *5 (dismissing DTSA claim where alleged trade secrets of "employee contact and compensation information" and "internal financial reports" "lack[ed] particularity").

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. TO DISMISS THE
THIRTEENTH CAUSE OF ACTION IN THE FAC          17          CASE NO. 8:20-cv-00048-JVS (JDEx)

Exhibit 21
-216-

1   "*Combinations*":   Plaintiffs also claim as trade secrets "combinations and

2   selections of the above information, and knowledge of the varying importance of the

3   information."   FAC ¶ 211.   Plaintiffs, however, have not described the potential

4   combinations of items in their catch-all description with sufficient particularity to enable

5   either the Court or Apple to "ascertain which specific elements [Apple] is accused of

6   misappropriating."   *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 2019 WL 4233578,

7   at *4 (C.D. Cal. June 28, 2019) (summary judgment granted where potentially "unique

8   combination[s] of . . . known elements" were pleaded with insufficient specificity); *see

9   also VIA Techs., Inc. (a Cal. Corp.) v. Asus Computer Int'l*, 2016 WL 5930280, at *3

10   (N.D. Cal. Oct. 12, 2016) ("the Court or defendants [could not] identify" which

11   "arrangements" were claimed trade secrets without a sufficiently particular "descri[ption

12   of] *how* the combination of features . . . constitutes a trade secret").

13       "*Knowledge*":   Plaintiffs further claim that "knowledge for selecting which

14   information and technology are important for improving reliability, improving

15   measurements, and how to successfully combine and implement them to achieve the

16   desired functionality" is their trade secret.   FAC ¶ 211.   But "[i]f the principal person

17   who can obtain economic benefit from information is aware of it, there is no trade

18   secret."   Cal. Civ. Code § 3426.1, 1984 Legis. Comm. Comments—Senate.   For

19   example, "[a] method of casting metal . . . may be unknown to the general public but

20   readily known within the foundry industry;" so it cannot be a trade secret.   *Id.*

21       Here, the FAC provides no guidance as to "where the boundary between th[e]se

22   secrets and general knowledge might lie."   *Synopsys*, 2013 WL 5770542, at *6.

23   Consistent with Plaintiffs' unlawful demand that Lamego not be permitted to work in

24   the "healthcare technology" industry at all (FAC ¶ 23; RJN Decl. Ex. A, at 5; *see* Cal.

25   Bus. & Prof. Code § 16600), Plaintiffs improperly claim as their intellectual property

26   any information Lamego (or any other former Masimo and/or Cercacor employee)

27   learned while in Plaintiffs' employ.   *Universal Analytics, Inc. v. MacNeal-Schwendler

28   Corp.*, 707 F. Supp. 1170, 1177–78 (C.D. Cal. 1989), *aff'd*, 914 F.2d 1256 (9th Cir.

Gibson, Dunn &
Crutcher LLP

**Exhibit 21**
-217-

Case 8:20-cv-00048-JVS-JDE   Document 38-1   Filed 04/20/20   Page 27 of 34   Page ID
#:2635

1   1990) (knowledge "developed as a result of long employment in the particular trade may

2   be carried over and put to use by the new employer").  Neither California law nor the

3   Courts of this Circuit permit a Plaintiff to allege misappropriation based on a theory that

4   a former employee inevitably will disclose general information learned during his

5   former employment.  *Globespan, Inc. v. O'Neill*, 151 F. Supp. 2d 1229, 1235 (C.D. Cal.

6   2001) (granting motion to dismiss); *Whyte v. Schlage Lock Co*., 101 Cal. App. 4th 1443,

7   1463 (Cal. Ct. App. 2002).

8   　　　"***Negative Information***":   Finally, Plaintiffs claim that their "negative

9   information, what works well under certain conditions, and trade-offs of selecting

10  certain techniques" is a trade secret.  FAC ¶ 211.  Such a boilerplate description of trade

11  secrets as "'negative knowhow' learned through the course of research and

12  development" is insufficient to satisfy Rule 8.  *Vendavo*, 2018 WL 1456697, at *3.

13  　　　**2.　　Plaintiffs Have Not Distinguished Their Trade Secrets from Patents.**

14  　　　A motion to dismiss should be granted where the plaintiff alleges that "[s]ome

15  aspects" of its "know-how, design, supply chain, [and] fabrication . . . techniques" "are

16  the subject of granted patents and pending patent applications," but does not describe

17  "which aspects are publicly known and which are not." *Bladeroom*, 2015 WL 8028294,

18  at *1, *4; *Space Data Corp.*, 2017 WL 5013363, at *2 (granting motion to dismiss for

19  failure to plead "which aspects of [the] technology and other information are 'part of

20  patents and pending patent applications,' if any, and which are secret").

21  　　　Here, after alleging that Masimo has "received numerous U.S. patents" for

22  "noninvasive patient monitoring technologies," Plaintiffs vaguely allege that they "also

23  maintain[] *some* technology as trade secrets" and "closely guard[ their] future product

24  and market plans."  FAC ¶¶ 13, 17 (emphasis added).  The FAC also alleges that Apple

25  infringes twelve of Masimo's patents, all of which are directed to "noninvasive methods,

26  devices, and systems for measuring various blood constituents."  *E.g.*, FAC Ex. 1, at 95

27  ('265 patent, Abstract).  But, in their "description" of their "trade secrets," Plaintiffs

28  make no effort to differentiate between those secrets and their patented information.  *See*

**Exhibit 21**
**-218-**

1   FAC ¶ 211 (alleging "trade secrets that include, but are not limited to, Plaintiffs'

2   technical information . . . *relating to non-invasive monitoring of physiological*

3   *parameters and products to perform such monitoring*" (emphasis added)).  To the

4   contrary, by including "invention disclosures" in the description of trade secrets (*id*.),

5   the description on its face fails to "delineate the boundaries between [the] trade secrets"

6   and Plaintiffs' "information that has been made public through patents and patent

7   applications," *AlterG*, 388 F. Supp. 3d at 1146 (dismissing DTSA claim).

8         Further compounding these deficiencies is the FAC's failure to delineate which

9   trade secrets are owned by whom—let alone how each trade secret was misappropriated.

10   FAC ¶ 211; *id*. ¶ 218 (alleging Apple's patent applications contain *both* Plaintiffs'

11   information).  Apple has been deprived notice of what *each* Plaintiff claims are trade

12   secrets, which affects Apple's purported duties with respect to the information.

13         Plaintiffs have not described the trade secrets with sufficient particularity to put

14   either the Court or Apple on notice of "where trade secret protection begins and ends."

15   *Synopsys*, 2013 WL 5770542, at *6.  The misappropriation claim must be dismissed.[9]

16   **C.    Plaintiffs Fail to Allege Misappropriation by "Improper Means."**

17         Plaintiffs' theory of misappropriation—alleged on "information and belief" (FAC

18   ¶ 217)—is that Apple, without their consent, "used and disclosed" their "Confidential

19   Information at least by incorporating it into [Apple's] products and by filing patent

20   applications containing [it]" (*id*. ¶ 218).  This theory is not supported by alleged facts.

21         **1.    Plaintiffs Fail to Allege Improper Acquisition.**

22         To allege misappropriation by acquisition, Plaintiffs must allege that Apple

23   acquired their trade secret(s) and knew or had reason to know that the trade secret was

24   acquired by "improper means."  Cal. Civ. Code § 3426.1(b)(1).  "'Improper means'

25   includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to

26   maintain secrecy, or espionage . . . ."  *Id*. § subd.(a).  To allege misappropriation by use

27

28   _____

   [9]   At a minimum, the Court should dismiss as to the trade secrets inadequately pleaded.
   *Citcon USA, LLC v. RiverPay, Inc.*, 2018 WL 6813211 (N.D. Cal. Dec. 27, 2018).

**Exhibit 21**
**-219-**

1  or disclosure, Plaintiffs must allege that Apple used or disclosed their alleged trade

2  secrets without consent, and that Apple "[u]sed improper means" to acquire those

3  secrets, or knew or should have known that its knowledge was:

> (i) Derived from . . . a person who had utilized improper means to acquire it; (ii)
> Acquired under circumstances giving rise to a duty to maintain its secrecy . . .;
> or (iii) Derived from . . . a person who owed a duty to the person seeking relief
> to maintain its secrecy.  [*Id*. § 3426.1(b)(2)(A)–(B).]

7  With respect to acquisition, Plaintiffs do not allege facts to plausibly claim that

8  Apple knew or had reason to know that any purported acquisition of Plaintiffs' alleged

9  trade secrets was by *improper means*.  *S. Cal. Inst. of Law v. TCS Educ. Sys.*, 2011 WL

10  1296602, at *7 (C.D. Cal. Apr. 5, 2011) ("Alleging mere possession of trade secrets is

11  not enough." (internal alteration omitted)).   Plaintiffs do not allege facts plausibly

12  establishing Apple's knowledge that either Lamego or O'Reilly had a duty to maintain

13  confidentiality of *specific* information purportedly shared with Apple, or that Apple

14  knew such information was confidential.  FAC ¶¶ 215–16, 218.  Instead, Plaintiffs allege

15  that Apple "knew" that (1) "Lamego was the [CTO] of Cercacor and a Research Scientist

16  at Masimo;" (2) "Lamego was under a duty to maintain the secrecy of the information

17  he obtained from Plaintiffs" under his "employer-employee relationship, fiduciary

18  relationship, and Lamego's employment agreements;" and (3) "Plaintiffs considered the

19  information confidential by virtue of [Apple's] prior relationship with Plaintiffs."  *Id*.

20  ¶ 216.  These allegations do not support a plausible inference of misappropriation.

21  ***(i)      Apple's hiring of Plaintiffs' former employees is not improper***.  Under the

22  CUTSA and the law of this Circuit, "a party cannot prove trade secret misappropriation

23  by demonstrating that a former employee's new employment will inevitably lead the

24  former employee to rely on the former employer's trade secrets."  *Pellerin v. Honeywell*

25  *Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012); *see Les Concierges, Inc. v.*

26  *Robeson*, 2009 WL 1138561, at *2 (N.D. Cal. Apr. 27, 2009) ("a threat of

27  misappropriation cannot, as a matter of California law, be inferred [because the

28  employee], upon voluntarily terminating his employment . . ., immediately began

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. TO DISMISS THE
THIRTEENTH CAUSE OF ACTION IN THE FAC           21           CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 21**
**-220-**

1   working for a direct competitor and appears to be performing . . . the same or similar job

2   duties he performed" for plaintiff).  Yet this is precisely what Plaintiffs attempt to do.

3        As to Lamego, Plaintiffs allege that he had "*access* to [their] highly confidential

4   technical information," "*learned* guarded secrets regarding Plaintiffs' mobile medical

5   products" while employed by them, and purportedly possessed unspecified confidential

6   information after he left.  FAC ¶¶ 22–23 (emphasis added).  Plaintiffs do not allege that

7   Lamego improperly took specific trade secrets or failed to return them.  The allegations

8   concerning O'Reilly are even more speculative.  O'Reilly apparently did not even have

9   access to trade secrets.  Plaintiffs merely allege that O'Reilly was "privy to [Masimo's]

10  *extremely sensitive information*."  *Id*. ¶ 20 (emphasis added).

11       Without plausible factual allegations that either Lamego, O'Reilly, or one of the

12  other *unidentified* former employees *improperly acquired* trade secrets, the FAC cannot

13  plausibly allege that Apple improperly acquired (or used or disclosed) those secrets,

14  because Plaintiffs' former employees are the only links alleged between Plaintiffs and

15  Apple.  *Cf. Human Longevity, Inc*., 2018 WL 6617633, at *6 (DTSA claim

16  "inadequate[ly]" pleaded where based on theory that defendant who had access to trade

17  secrets while in plaintiff's employ must have disclosed that information when he started

18  working for competitor and began "development of a program to compete with" his

19  former employer).  That Lamego and O'Reilly continued to work in the "healthcare

20  technology" field is irrelevant to Plaintiffs' CUTSA claim—an employee is entitled to

21  carry over knowledge learned in a particular trade.  *Universal*, 707 F.Supp. at 1177–78.

22       ***(ii)     Lamego's undefined "duty" per the January 2014 "warning" letter does***

23  ***not establish a plausible basis for Apple's alleged improper acquisition***.  Plaintiffs

24  attempt to charge Apple with knowledge of their unspecified "confidential" information

25  by alleging that they sent Apple "a copy of Lamego's Employee Confidentiality

26  Agreement with Cercacor."  FAC ¶ 216.  But the "warning" letter only underscores that

27  Plaintiffs did *not* give Apple notice of the bounds of their purported trade secrets.  RJN

28  Decl. Ex. A.  It describes "Confidential Information" as "any information in any form"

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. TO DISMISS THE
THIRTEENTH CAUSE OF ACTION IN THE FAC          22          CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 21**
-221-

that Cercacor or its "affiliates" "consider[] confidential, *including without limitation*":

> business plans, customer files, customer lists, supplier lists, sales and marketing reports, forecasts, strategies, technical data, prices and costs, designs and formulas, discoveries, processes, manufacturing techniques, know-how, improvements, ideas or copyrightable works, software, databases, personnel and payroll records, mailing lists, accounting records, works of authorship, inventions, trade secrets and other business information. [*Id.* at 6 (emphasis added).]

For this reason, Plaintiffs' claim that Apple "induced" a breach of Lamego's confidentiality obligations fails. Apple could not induce Lamego to breach an agreement whose parameters are undefined. *Cf. Invisible Dot, Inc. v. DeDecker*, 2019 WL 1718621, at *5 (C.D. Cal. Feb. 6, 2019) ("[T]his laundry list of items separated by ellipses—presumably quoted from one of the several agreements that DeDecker signed . . . does not meaningfully define the trade secrets."). In addition, Plaintiffs allege absolutely no facts describing how Apple purportedly induced such a breach. *See* FAC ¶ 216; *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 2015 WL 6552698, at *3 (N.D. Cal. Oct. 28, 2015) (granting motion to dismiss because "nowhere in its complaint does [plaintiff] allege any facts that would allow the Court to infer that [defendant] knew or should have known that [the] trade secrets were misappropriated"); *Carr v. AutoNation Inc.*, 2018 WL 288018, at *3 (E.D. Cal. Jan. 4, 2018) (dismissing trade secrets claim where "conclus[ory] allegations do not explain how LKQ got the Business Plan (or its contents) from AutoNation, and what specifically would have caused LKQ to know or have reason to know that AutoNation's possession of the Business plan was wrongful").

Relatedly, that "*Lamego* knew or had reason to know" that "his knowledge of Plaintiffs' Confidential Information was acquired under . . . a duty to maintain its secrecy and limit its use" is irrelevant as to *Apple's* state of mind. FAC ¶ 217 (emphasis added). This allegation fails to plausibly allege improper acquisition by *Apple*, because any purported "passive reception" of trade secrets (there was none) is not "acquisition" under the CUTSA. *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 223 (Cal. Ct. App. 2010) ("The choice of that term ['acquire'] over 'receive' suggests that

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. TO DISMISS THE
THIRTEENTH CAUSE OF ACTION IN THE FAC          23          CASE NO. 8:20-cv-00048-JVS (JDEx)

**Exhibit 21**
-222-

1  inadvertently coming into possession of a trade secret will not constitute acquisition."),

2  *overruled on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (Cal. 2011);

3  *Pellerin*, 877 F. Supp. 2d at 989 (mere possession of trade secrets is not enough).

4      ***(iii)   Any agreements with Apple are insufficiently pleaded to establish***

5  ***"improper acquisition."***  Plaintiffs allege that in 2013, Apple and Masimo entered into

6  a confidentiality agreement for a potential collaboration and thereafter "confidential[ly]"

7  discussed Masimo's technology.  FAC ¶ 19.  The FAC does not allege (1) that Apple

8  breached that agreement, (2) what the agreement covered, (3) whether Apple actually

9  received any specific confidential information, and (4) if so, what Apple was entitled to

10  do with it.  *Id*.  Nor does it attach the agreement.  Plaintiffs have failed to plead the

11  material terms of the contract between Apple and Masimo; in turn, that contract cannot

12  serve as a basis for Apple's supposed knowledge that Plaintiffs' unspecified information

13  was confidential or could not be acquired, used, or disclosed.  *Zora Analytics, LLC v.*

14  *Sakhamuri*, 2013 WL 12124612, at *5 (S.D. Cal. June 18, 2013) (dismissing claim

15  where plaintiff "failed to adequately plead the terms of the NDA"; "[d]etermining

16  whether [defendant] has violated a NDA . . . is difficult without at least alleging the

17  NDA's material terms"); *Space Data*, 2017 WL 5013363, at *2 ("Google received the

18  alleged trade secrets pursuant to the NDA.  Accordingly, Space Data must plead facts

19  showing that Google had a duty not to use the information in the way alleged.").

20      The FAC does not even allege that Apple had a confidentiality agreement with

21  Cercacor.  The only plausible inference to draw from the omissions is that there was no

22  breach—i.e., that any supposed acquisition, use, or disclosure by Apple was permitted

23  by any agreement that existed.  *Cf. Zomm, LLC v. Apple Inc.*, 391 F. Supp. 3d. 946, 952

24  (N.D. Cal. 2019) (dismissing breach claims where confidentiality provisions allowed

25  use of information that could be derived from reverse engineering or prior patents).

26      **2.    Plaintiffs Fail to Allege Improper Disclosure or Use by Apple.**

27      Plaintiffs also fail to plausibly allege Apple's improper *use* or *disclosure* of their

28  alleged trade secrets.  To survive a Rule 12(b)(6) motion, a plaintiff must "plead[] *factual*

1   *content* that allows the court to draw the *reasonable* inference that the defendant is liable

2   for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphases added).  Here, Plaintiffs

3   allege that "*Lamego* used and disclosed" their information for Apple's benefit, and that

4   Apple "*further* used and disclosed" Plaintiffs' information "at least by incorporating it

5   into [Apple's] products and by filing patent applications containing" that information,

6   without their "express or implied consent."  FAC ¶¶ 217–18 (asserting, on information

7   and belief, unauthorized use/disclosure of information obtained from Plaintiffs and their

8   *unspecified* former employees); ¶ 215 (similar allegations on information and belief).

9         These conclusory allegations fail to identify how Apple knew which specific

10   "Confidential Information" it purportedly used—let alone how the information allegedly

11   was incorporated into Apple's products or patent applications.  *E.g.*, *MedioStream, Inc.*

12   *v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012) (dismissing trade

13   secrets claims because plaintiff did not sufficiently allege that defendant, which had

14   received technology from a third party under contract with plaintiff, knew the third party

15   was not authorized to provide that technology).  Plaintiffs fail to allege any plausible

16   facts supporting their disclosure/use allegations, and for this reason too, their trade secret

17   claim fails.  *Delphix Corp. v. Actifo, Inc*., 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19,

18   2014) (dismissing complaint in part because allegation "on information and belief" gave

19   rise to "reasonable inference . . . that it is intended as caveat," and "creates a further

20   inference that plaintiff . . . is instead engaging in speculation to an undue degree").

21   **D.     Plaintiffs Should Be Denied Leave to Amend Their CUTSA Claim.**

22         Plaintiffs have now had two chances to plead:  (1) a timely trade secret claim; (2)

23   cognizable trade secrets; and (3) improper acquisition, use, and/or disclosure by Apple.

24   They have failed, and so their FAC should be dismissed with prejudice.  *Klamath-Lake*

25   *Pharma. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983).

26                          **V.     <u>CONCLUSION</u>**

27         Apple respectfully requests that the Court dismiss Plaintiffs' Thirteenth Cause of

28   Action for trade secret misappropriation under the CUTSA with prejudice.

Gibson, Dunn &
Crutcher LLP

**Exhibit 21**
**-224-**

1   Dated:  April 20, 2020                    Respectfully submitted,

2                                             JOSHUA H. LERNER
                                              H. MARK LYON
3                                             BRIAN M. BUROKER
                                              ILISSA SAMPLIN
4                                             ANGELIQUE KAOUNIS
                                              GIBSON, DUNN & CRUTCHER LLP
5

6
                                             By:  */s/ Joshua H. Lerner*
7                                                 Joshua H. Lerner

8
                                             *Attorneys for Defendant Apple Inc.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

MEMO. ISO APPLE'S MOT. TO DISMISS THE            26          CASE NO. 8:20-cv-00048-JVS (JDEx)
THIRTEENTH CAUSE OF ACTION IN THE FAC

Exhibit 21
-225-

EXHIBIT 22

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-00048JVS(JDEx)                          Date   April 17, 2020

Title   Masimo Corporation, et al v Apple, Inc

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                              Not Present

**Proceedings:    [IN CHAMBERS] ORDER RE SCHEDULING DATES**

The Court has read and considered the parties Rule 26(f) Report and sets the following dates:

| | |
|---|---|
| **Jury Trial** | **April 5, 2022 at 8:30 a.m.** |
| **Final PreTrial Conference** | **March 21, 2022 at 11:00 a.m.** |
| File PreTrial Documents not later than March 7, 2022 | |
| File motions in limine not later than February 14, 2022 | |
| **Discovery Cut-off** | **July 5, 2021** |
| **Expert Discovery Cut-off** | **December 6, 2021** |
| Initial disclosure of Experts not later than September 6, 2021 | |
| Rebuttal disclosure of Experts not later than October 18, 2021 | |
| **Law and Motion Cut-off** | **February 7, 2022 at 1:30 p.m.** |
| Motions to be filed and served not later than January 10, 2022 | |
| **Markman Hearing** | **February 8, 2021 at 3:00 p.m.** |

Counsel inform the Court that their selection for a settlement procedure pursuant to Local Rule 16-15 is ADR #3, private mediation.   The Court orders that any settlement discussions shall be completed not later than November 30, 2021.  Counsel shall file a Joint Report of the parties regarding outcome of settlement discussions, the likelihood of possible further discussions and any help the Court may provide with regard to settlement negotiations not later than seven (7) days after the settlement conference.

The Court adopts discvoery limits in Sections 6a-c.  Total hours for depositions 100.  Court will deal with reduction of claims, prior art references at a hearing on **July 10, 2020 at 3:00 p.m.** Parties shall submit joint/separate proposals in one filing by July 3, 2020.  The Court adopts the patent specific dates.  The Court stays the trade secret discovery only pending compliance with 2019.210.  Any dispute over compliance shall be heard before the Magistrate Judge.

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |

Exhibit 41
-667-
Exhibit 22
-226-



1

2

3

4

5

6

7

8

9

10

11          **IN THE UNITED STATES DISTRICT COURT**

12          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13                    **SOUTHERN DIVISION**

14

15  MASIMO CORPORATION,                    ) Case No. 8:20-cv-00048-JVS-JDE
    a Delaware corporation; and            )
16  CERCACOR LABORATORIES, INC.,           ) Hon. James V. Selna
    a Delaware corporation                 ) Magistrate Judge John D. Early
17                                          ) **ORDER GRANTING**
                   Plaintiffs,              ) **STIPULATION TO AMEND THE**
18                                          ) **SCHEDULING ORDER**
              v.                            )
19                                          )
    APPLE INC., a California corporation    )
20                                          )
                                            )
21                 Defendant.               )
                                            )
22                                          )

23

24

25

26

27

28

Exhibit 41
-668-
Exhibit 22
-227-

This matter is before the Court pursuant to the parties' Stipulation to Amend the Scheduling Order.  Based on the stipulation of the parties, and good cause appearing, the Court GRANTS the Stipulation and AMENDS the Scheduling Order as shown below.

| Event | Current Deadline | New Deadline |
|---|---|---|
| Joint Claim Narrowing Proposal | September 21, 2020 | November 23, 2020 |
| Exchange of Proposed Claim Terms for Construction (Patent L.R. 4-1) | September 21, 2020 | December 7, 2020 |
| Exchange Preliminary Claim Constructions and Extrinsic Evidence (Patent L.R. 4-2) | October 12, 2020 | January 11, 2021 |
| Invalidity Contentions on newly asserted patents (Patent L.R 3-3 and 3-4) | October 22, 2020 | |
| Infringement Contentions (Patent L.R. 3-1 and 3-2) | November 13, 2020 | |
| Joint Markman Prehearing Statement (Patent L.R. 4-3) | November 9, 2020 | February 1, 2021 |
| Complete Claim Construction Discovery (Patent L.R. 4-4) | December 7, 2020 | March 1, 2021 |
| Simultaneous Opening Markman Briefs (Patent L.R. 4-5) | December 21, 2020 | March 15, 2021 |
| Last Date to Add Parties / Amend Pleadings | December 23, 2020 | |

-1-

Exhibit 41
-669-

Exhibit 22
-228-

| Event | Current Deadline | New Deadline |
|---|---|---|
| Simultaneously Responding Markman Briefs, Tutorials and Presentation Materials (Patent L.R. 4-5) | January 25, 2021 | April 12, 2021 |
| *Markman* hearing | February 8, 2021 | April 26, 2021 at 3:00 p.m. |
| Non-expert Discovery cut off | July 5, 2021 | |

**IT IS SO ORDERED.**

Dated: September 21, 2020

_____

Honorable James V. Selna

33525107

-2-

Exhibit 41
-670-

Exhibit 22
-229-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

***REDACTED        **CIVIL MINUTES - GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | SACV 20-48 JVS (JDEx) | | Date | October 13, 2020 |
| Title | Masimo Corporation et al. v. Apple Inc. | | | |

Present: The Honorable    **James V. Selna, U.S. District Court Judge**

| | |
|---|---|
| Lisa Bredahl | Not Present |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **[IN CHAMBERS] Order Regarding Motion for Stay**

Before the Court is Defendant Apple Inc.'s ("Apple") motion to stay proceedings pending inter partes review ("IPR"). Mot., ECF No. 196-1. Plaintiffs Masimo Corporation ("Masimo") and Ceracor Laboratories, Inc. ("Ceracor") (collectively – "Plaintiffs") filed an opposition. Opp'n, ECF No. 209-1. Apple filed a response. Reply, ECF No. 217.

For the following reasons, the Court **GRANTS** the motion as to claims one through twelve.

## I. BACKGROUND

The background of this case is well known to the parties, and is only repeated here so as to frame the discussion below. Plaintiffs specialize in the development and sale of noninvasive technology that monitors physiological parameters. Opp'n at 2-3. Its core business is in the production of products that measure blood oxygen content, also known as pulse oximeters. Mot. at 15. Apple, the well-known consumer technology company, is the creator of the Apple Watch, a leading smart watch. The most recent version of the Apple Watch, the Series 6, was announced on September 15, 2020, and notably includes the ability to measure "Blood Oxygen." Opp'n at 7. This patent infringement and trade secrets lawsuit, however, goes back to Apple's hiring of some of Masimo's employees beginning in 2013. Second Amended Complaint ("SAC"), ECF No. 88-2, ¶¶ 19-25.

On January 9, 2020, Plaintiffs filed their complaint against Apple, alleging

Exhibit 41
-671-
Exhibit 22
-230-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-48 JVS (JDEx)                    Date   October 13, 2020

Title   Masimo Corporation et al. v. Apple Inc.

infringement of the ten patents.[1]  Plaintiffs subsequently filed a First Amended Complaint ("FAC") on March 25, 2020, alleging infringement of two additional patents.[2] Then, on July 24, 2020, Plaintiffs filed a Second Amended Complaint ("SAC"), removing from the case five patents[3] and adding allegations of infringement of five new patents.[4] Overall, there are now twelve patents at issue in the case.

Apple has since filed IPR petitions challenging all asserted claims of all the asserted patents.[5] pple now asks for the Court to issue a stay pending a determination by the Patent Trial and Appeal Board ("PTAB") of their IPR petitions. See generally Mot.

## II. LEGAL STANDARD

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706 (1997); see also Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). In deciding whether to stay an action pending IPR, a court's discretion is typically guided by three factors: "(1)

_____

[1]U.S. Patent Nos. 10,258,265 ("the '265 patent"), 10,258,266 ("the '266 patent"), 10,292,628 ("the '628 patent"), 10,299,708 ("the '708 patent"), 10,376,190 ("the '190 patent"), 10,376,191 ("the '191 patent"), 10,470,695 ("the '695 patent"), 6,771,994 ("the '994 patent"), 8,457,703 ("the '703 patent"), and 10,433,776 ("the '776 patent"). See generally Complaint, ECF No. 1.

[2]U.S. Patent Nos. 10,588,553 ("the '553 patent") and 10,588,554 ("the '554 patent"). See generally FAC, ECF No. 28.

[3]The five patents that were removed were the '266, '708, '190, '191, and '695 patents.

[4]U.S. Patent Nos. 10,624,564 ("the '564 patent"), 10,631,765 ("the '765 patent"), 10,702,194 ("the '194 patent"), 10,702,195 ("the '195 patent"), and 10,709,366 ("the '366 patent"). See generally SAC, ECF 88-2.

[5]On August 31, 2020, Apple filed IPR petitions challenging all asserted claims of the '265 patent, the '776 patent, the '994 patent, and the '553 patent. Rosenthal Decl., ECF No. 197, at pages 29-530. On September 2, 2020, Apple filed IPR petitions challenging all claims of the '554 patent and all claims of the '628 patent. Id. at 532-859. On September 9, 2020, Apple filed an IPR petition challenging all asserted claims of the '703 patent. Id. at 861-945. Finally, on September 30, 2020, Apple filed IPR petitions challenging all claims of the remaining five patents. Andrea Decl., ECF No. 211-1, at pages 22-674.

Exhibit 41
-672-
Exhibit 22
-231-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-48 JVS (JDEx) | Date | October 13, 2020 |
|---|---|---|---|
| Title | Masimo Corporation et al. v. Apple Inc. | | |

whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." Universal Electronics, Inc. v. Universal Remote Control, Inc., 943 F. Supp. 2d 1028, 1030-31 (C.D. Cal. 2013) (quoting Aten International Co., Limited v. Emine Technology Co., Limited, 2010 WL 1462110, at *6 (C.D. Cal. Apr. 12, 2010)). The inquiry, however, is not limited to these factors and "the totality of the circumstances governs." Allergan Inc. v. Cayman Chemical Co., 2009 WL 8591844, at *2 (C.D. Cal. Apr. 9, 2009) (citation omitted). In addition, "[t]here is a liberal policy in favor of granting motions to stay proceedings pending the outcome of re-examination, especially in cases that are still in the initial stages of litigation and where there has been little or no discovery." Limestone v. Micron Technology, 2016 WL 3598109, at *2 (C.D. Cal. Jan. 12, 2016).

### III. DISCUSSION

#### A.    *Stage of the Proceedings*

The Court first considers "the stage of proceedings," including the progress of discovery, the status of claim construction, and whether a trial date has been set. See Universal Electronics, 943 F. Supp. 2d at 1031. Essentially, where "there is more work ahead of the parties and the Court than behind," this factors weighs in favor of granting a stay. See Tierravision, Inc. v. Google, Inc., 2012 WL 559993, at *2 (S.D. Cal. Feb. 21, 2012).

This case is in its early stages. On September 21, 2020, the Court issued an amended scheduling order. ECF No. 204. The Amended Scheduling Order notes that the Markman hearing is more than six months away, on April 26, 2021. Id. Fact discovery is not scheduled to close until July 5, 2021, while the expert discovery cut-off is not until December 6, 2021. Order re Scheduling Dates, ECF No. 37. The parties have not noticed or taken any depositions. Andrea Decl., ECF No. 197, ¶ 5. The deadline for the parties to submit their preliminary claim constructions is not until January 11, 2021. Amended Scheduling Order. Trial is set for well more than a year from now. Order re Scheduling Dates.

From these facts it is certainly clear that there is more work ahead of the parties and the Court than behind us. Cf. Purecircle USA Inc. v. Sweegen, Inc., 2019 WL 3220021, at

**Exhibit 41
-673-
Exhibit 22
-232-**

Case 8:20-cv-00048-JVS-JDE   Document 401-1   Filed 05/27/21   Page 210 of 214   Page ID
#:35976
Case 8:20-cv-00048-JVS-JDE   Document 222   Filed 10/13/20   Page 4 of 8   Page ID #:16561

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-48 JVS (JDEx)                    Date    October 13, 2020

Title    Masimo Corporation et al. v. Apple Inc.

---

*2 (C.D. Cal. June 3, 2019) (finding the case to be in its early stages where no depositions
had been taken, no expert discovery had occurred, claim construction was not complete,
and trial was nine months away). Plaintiffs' arguments that this case is not in its early
stages are unavailing. While it is true that the Court has addressed several motions from
the parties and the parties have produced approximately 150,000 pages of discovery,
Opp'n at 19-20, these numbers do not weigh heavily when compared to the substantial
amount of work in the months of discovery ahead. Nor did Apple's motion for a protective
order or Apple's subsequent challenges to the magistrate judge's order, see ECF Nos. 54,
76, and 92, cause undue delay, for it did not significantly impact the schedule mentioned
above.

    The Court therefore finds that this factor weighs in favor of a stay.

    *B.    Simplification of Issues in Question*

    The Court next considers "whether a stay will simplify the issues in question and the
trial of the case." Universal Electronics, 943 F. Supp. 2d at 1032. Apple has filed IPR
petitions challenging all of the asserted claims in the asserted patents. Reply at 10. If an
IPR is instituted and the PTAB issues a final written decision, Apple will be estopped from
asserting invalidity based on any ground it "raised or reasonably could have raised" during
the IPR. 35 U.S.C. § 315(e)(2). Apple has also stipulated that if the PTAB "institutes on
any ground raised in its IPR petitions, Apple will not assert in this litigation that same
ground against the corresponding claims" even before the issuance of a final written
decision. Rosenthal Decl., ECF No. 197, ¶ 17; Reply at 13. A final IPR determination is
expected by March 2021, a month before trial is set.[6] 35 U.S.C. § 316(a)(11).

    Although Plaintiffs argue that granting a stay of proceedings prior to institution is
"inherently speculative," Opp'n at 21, "courts in this District have adopted the majority
position that even if IPR has not yet been instituted, the simplification factor may still
weigh in favor of a stay." Purecircle, 2019 WL 3220021, at *3 (collecting cases). This is
because "many courts have ultimately been persuaded that the potential to save significant
judicial resources sways the analysis in favor of stay." Id. at *2. The statistics in this case

---

    [6]Apple points out that only 3.8% of written decisions are issued more than 13 months after
institution. Reply at 10 n.4. This means there is a 96.2% chance that the written decision will be issued
prior to the date for which jury trial is set.

Exhibit 41
-674-
Exhibit 22
-233-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-48 JVS (JDEx) | Date | October 13, 2020 |
|---|---|---|---|
| Title | Masimo Corporation et al. v. Apple Inc. | | |

support such a conclusion, for there is a 56% IPR institution rate as of 2020 and 76% of Apple's IPR requests since the beginning of 2019 have led to institution.[7] Rosenthal Decl. at 980, Andrea Decl., ECF No. 211-2, at 701. Plaintiffs seek to distinguish Purecircle because that case only involved a single patent. Opp'n at 23. But Apple correctly notes that the existence of twelve different patents in this case weighs even more heavily in favor of a stay because the IPR proceedings have the potential save an even greater amount of judicial resources. Reply at 13.

Further, where a defendant is actively involved in the IPR process with respect to all of the asserted claims, simplification is likely. See Limestone, 2016 WL 3598109, at *4 ("Because Defendants have petitioned for review of nearly all claims asserted in this action, the outcome of the IPR has the potential to significantly narrow the scope and complexity of the litigation."). If the PTAB cancels all of the asserted claims, the patent claims in this action will be rendered moot. Cancellation of only a portion of the asserted claims may still significantly reduce the scope of this litigation, particularly as there are twelve patents asserted in this case. Notably, only 20% of final written decisions issued in IPRs since 2012 have found all the claims to be patentable, meaning that some winnowing is likely. Rosenthal Decl., at 985. Furthermore, the record developed during the IPR even if institution is denied could inform the claim construction process. Aylus Networks, Inc. v. Apple Inc., 856 F.3d 1353, 1362 (Fed. Cir. 2017) ("[S]tatements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer.").

Accordingly, the Court finds that this factor also weighs in favor of a stay. The outcome of the IPR may significantly narrow the scope and complexity of the litigation and the parties' and Court's resources are likely to be conserved.

---

[7] Plaintiffs do correctly note that Apple has brought a lawsuit over the NHK-Fintiv Rule, which Apple alleges has "dramatically reduced the availability of IPR." Opp'n at 23; Larson Declaration, ECF No. 207-2, 257 ¶ 5. But the NHK-Fintiv Rule relates to those cases where the trial date set in pending litigation would be before PTAB reaches a final written decision in the IPR. See id. at 263 ¶ 40, 266 ¶ 56. As discussed earlier, such is not the case here.

Exhibit 41
-675-
Exhibit 22
-234-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-48 JVS (JDEx) | Date | October 13, 2020 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

> C.      *Undue Prejudice or Tactical Advantage*

Finally, the Court considers "whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." Universal Electronics, 943 F. Supp. 2d at 1032. "[A] primary issue in an undue prejudice analysis is whether the parties are competitors such that a stay would cause irreparable harm to the patentee in the market." Core Optical Technologies, LLC v. Fujitsu Network Communications, Inc., 2016 WL 7507760, at *2 (C.D. Cal. Sept. 12, 2016). "Courts are divided on whether infringement among competitors necessarily constitutes undue prejudice to the non-moving party." Wonderland Nursery Goods Co., Limited v. Baby Trend, Inc., 2015 WL 1809309 at *4 (C.D. Cal. 2015) (emphasis added). But "[o]ne relevant consideration in evaluating [Plaintiff's] claims of undue harm is whether the parties are sole competitors in the relevant markets." Karl Storz v. Stryker Corp., 2015 WL 13727876, at *7 (N.D. Cal. Mar. 30, 2015). The existence of other competitors in the relevant market "undermines the weight that should be afforded Plaintiff's contentions of undue harm." Wonderland, 2015 WL 1809309 at *4.

Plaintiffs argue that they compete with Apple, though Plaintiffs do not clearly define the market in which they compete. Opp'n at 1, 9-17. Plaintiffs instead warn that Apple should not be allowed to "define the market." Id. at 15. Plaintiffs note that they sell consumer pulse oximetry products such as the MightySAT, iSpO2, and Masimo Sleep,[8] while Apple has recently launched the Series 6. Opp'n at 10. Apple argues that these products do not compete because Plaintiffs' products are "clinical grade" while the Series 6 is "not intended for medical use." Reply at 18. Apple further notes that the MightySAT, iSpO2, and Masimo Sleep all are fingertip sensors while the Series 6 is a wrist-worn smart watch. Reply at 19. Plaintiffs respond by arguing that even though the Series 6 is not accurate enough for medical use, Apple is "marketing a device with medical functions while winking and insisting they're not medical functions." Opp'n at 14 (quoting Larson

_____

[black redaction box]                                       Moreover, the Apple products are no threat to Masimo's oximetry devices used in a clinical or hospital setting.

**Exhibit 41**
**-676-**

**Exhibit 22**
**-235-**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-48 JVS (JDEx) | Date | October 13, 2020 |
|---|---|---|---|

| Title | Masimo Corporation et al. v. Apple Inc. |
|---|---|

Declaration, ECF No. 207-2, at 152).

Without detailed economic analysis, it is difficult for the Court to evaluate the extent to which the Series 6 is a substitute good for Plaintiffs' consumer pulse oximetry products. There well might be a market for consumer pulse oximetry products broadly and consumers may not distinguish between wrist-worn oximeters and fingertip sensors, as Plaintiffs suggest. Id. at 13. But even if that were true, and consumers would view the Series 6 as a wrist-worn pulse oximeter, Apple points out that a variety of other companies also sell products that measure blood oxygen content. Reply at 20-23 (listing products from Garmin, Fitbit, and Facelake among others). Therefore, to the extent that Plaintiffs and Apple are direct competitors in the broad market for consumer pulse oximetry products, they are certainly not sole competitors, which reduces the amount of prejudice that Plaintiffs would suffer.

Plaintiffs do point out other ways in which they might be prejudiced by a stay. For example, Plaintiffs note that the '776 Patent will expire in June 2022, so a stay would leave the '776 Patent "'in limbo for the majority of its remaining life. Carl Zeiss A.G. v. Nikon Corp., 2018 WL 5081479, at *4 (C.D. Cal. Oct. 16, 2018) (quoting Biomet Biologics v. Bio Rich Med, Inc., 2011 WL 4448972, at *2 (C.D. Cal. Sept. 26, 2011)). The Court notes, however, that twelve different patents are at issue in this case, not merely one. Delay may result in the loss of evidence or the inability of witnesses to recall specific facts. Cf. Jones, 520 U.S. at 701 (noting that a "delaying trial would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts"). Finally, the Court notes that although Apple did not file its first IPR petitions for eight months, Plaintiffs most recently added patents to its infringement claims with the filing of the SAC on July 24, 2020. This means that Apple has only waited two months to file IPRs for the most recently asserted patents.

The Court therefore finds that this factor weighs slightly against granting the motion.

D.    *Totality of the Circumstances*

In sum, two of the three factors weigh in favor of granting a stay, whereas the third weighs slightly in favor of denying a stay. Having considered the totality of the circumstances, the Court **GRANTS** Apple's motion to stay pending inter partes review.

**Exhibit 41
-677-
Exhibit 22
-236-**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 20-48 JVS (JDEx) | Date | October 13, 2020 |
|---|---|---|---|
| Title | Masimo Corporation et al. v. Apple Inc. | | |

While the third factor does weigh against granting a stay, the prejudice to Plaintiffs is not substantial as compared to the significant efficiencies and simplification of the issues that would come from instituting a stay. Courts, including this one, have issued stays where there has been some prejudice shown to the Plaintiffs if the stay would result in substantial efficiencies. See, e.g., PureCircle, 2019 WL 3220021, at *4; TeleSign Corp. v. Twilio, Inc., 2016 WL 6821111, at *6 (C.D. Cal. Mar. 9, 2016); Delphix Corp. v. Actifio, Inc., 2014 WL 6068407, at *3 (N.D. Cal. Nov. 13, 2014). This case is similar. Ultimately, the Court concludes that Plaintiffs have not shown sufficient prejudice to tip the balance against issuing a stay.

### E.    The Trade Secret Case

Finally, the Court notes Apple's assertion that there is "no reason that the separate and independent trade secret case could not proceed." Mot. at 19. Plaintiffs similarly urge the Court to not stay the trade secret case. Opp'n at 24-25. The Court therefore stays only the patent infringement case, consisting in claims one through twelve of the SAC.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion as to claims one through twelve. The Court finds that oral argument would not be helpful in this matter. Fed. R. Civ. P. 78; L.R. 7-15. Hearing set for October 19, 2020, is ordered **VACATED**.

The Court asks the parties to meet and confer and notify the Court which parts of the order should be redacted within 7 days.

**IT IS SO ORDERED.**

|  |  | : | 0 |
|---|---|---|---|
| Initials of Preparer | | lmb | |

Exhibit 41
-678-
Exhibit 22
-237-