Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
steve.jensen@knobbe.com
Benjamin A. Katzenellenbogen (Bar No. 208527)
ben.katzenellenbogen@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Stephen W. Larson (Bar No. 240844)
stephen.larson@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Adam B. Powell (Bar. No. 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Telephone: (858) 707-4000; Facsimile: (858) 707-4001

Attorneys for Plaintiffs,
MASIMO CORPORATION and CERCACOR LABORATORIES, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation<br><br>Defendant. | Case No. 8:20-cv-00048-JVS-JDE<br><br>**DECLARATION OF ADAM B. POWELL IN SUPPORT OF PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO EXTEND CERTAIN CASE DEADLINES**<br><br>Hon. James V. Selna<br><br>Date:    June 21, 2021<br>Time:    1:30 p.m.<br>Ctrm:    10C<br><br>Discovery Cut-Off:       7/5/2021<br>Pre-Trial Conference:   3/21/2022<br>Trial:                         4/5/2022 |

I, Adam B. Powell, hereby declare as follows:

1.    I am a partner in the law firm of Knobbe, Martens, Olson & Bear, LLP, counsel for Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Masimo") in this action.  I have personal knowledge of the matters set forth in this declaration and, if called upon as a witness, would testify competently thereto.  I submit this Declaration in Support of Plaintiffs' Opposition to Apple's Motion to Extend Certain Case Deadlines (the "Motion").

2.    On May 17, 2021, the Parties met and conferred on Masimo's anticipated motion regarding the Scheduling Order.  At this meet and confer, Apple did not mention that it was considering its own motion regarding the Scheduling Order.

3.    Attached hereto as **Exhibit 1** is a true and correct copy of a letter from myself to Ilissa Samplin (who is counsel for Apple), dated May 12, 2021.

4.    Attached hereto as **Exhibit 2** is a true and correct excerpted copy of the unsealed portion of the transcript of the May 20, 2021, hearing before the Judge Early.

5.    Attached hereto as **Exhibit 3** is a true and correct copy of a letter from Ms. Samplin to Alan Laquer (who is counsel for Masimo) and Cheryl Burgess (who is also counsel for Masimo), dated May 21, 2021.

6.    Attached hereto as **Exhibit 4** is a true and correct copy of a letter from Mr. Laquer to Ms. Samplin, dated May 24, 2021.

7.    Attached hereto as **Exhibit 5 [Filed Under Seal]** is a true and correct copy of Defendant Apple Inc.'s Objections and Responses to Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc.'s Fifth Set of Interrogatories to Defendant Apple Inc. (Nos. 17-22), served on May 28, 2021.

8.    Attached hereto as **Exhibit 6** is a true and correct copy of the Declaration of Ilissa Samplin in Support of Court Order Granting Apple's Ex Parte Application (Dkt. 374), served on May 12, 2021.

/ / /

/ / /

-1-

9.   Attached hereto as **Exhibit 7** is a true and correct copy of Order Granting Plaintiffs' Renewed Motion to Lift Stay, *Boston Scientific Corp. v. Edwards Lifesciences Corp.*, No. SACV 16-00730-CJC (GJSx), Dkt. 127 (C.D. Cal. Nov. 15, 2018).

10.   Attached hereto as **Exhibit 8 [Filed Under Seal]** is an email chain the last email of which is from Ms. Burgess to Brian Andrea (who is also counsel for Apple) and the attached hit count report, dated June 1, 2021.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on June 1, 2021, at Encinitas, California.

*/s/ Adam B. Powell*
Adam B. Powell

35056316

# EXHIBIT 1

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

3579 Valley Centre Drive, Suite 300, San Diego, CA 92130
**T** (858) 707-4000

Adam Powell
Adam.Powell@knobbe.com

May 12, 2021

**VIA EMAIL**

Ilissa Samplin
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue,
Los Angeles, CA 90071-3197

Re:     Masimo Corp. and Cercacor Laboratories, Inc. v. Apple Inc.

Dear Ilissa:

We write to request a conference of counsel regarding the current case schedule.

As you are aware, the fact discovery cutoff is currently July 5, 2021.  Dkt. 37.  This deadline has never been adjusted despite the parties engaging in extensive motion practice regarding the pleadings and discovery, and two stays in the case, one of which remains in place.  Moreover, the parties are currently engaged in discussions regarding ESI search terms.  As described in recent correspondence, Apple has so far declined to agree to narrow many search terms that hit on about 12 million of Plaintiffs' documents.  Yet Apple is also demanding that Plaintiffs narrow their search terms that hit on about 3.5 million of Apple's documents.  The parties do not appear to be close to reaching an agreement yet.

Apple has previously taken the position that the parties are entitled to only one deposition per witness even if relevant documents are produced after the deposition.  While Plaintiffs would like to take the depositions as expeditiously as possible, Plaintiffs need to obtain Apple's documents before they can do so.  Based on the parties' current discussions and resultant timing on ESI searching, it does not appear feasible that the parties will complete their ESI searching and produce documents sufficiently in advance of the upcoming depositions.

In Apple's recent *ex parte* application, Apple took the position that the July 5 discovery cutoff would not change.  Thus, we request a conference of counsel to discuss the schedule and, if necessary, a motion to adjust the schedule.  Please let us know when you or someone from your team is available to discuss the matter this week.

Best regards,

Adam B. Powell

INTELLECTUAL PROPERTY + TECHNOLOGY LAW | knobbe.com

Exhibit 1
-3-

# EXHIBIT 2

1

```
            UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA
            (SOUTHERN DIVISION - SANTA ANA)



MASIMO CORPORATION, ET AL,   ) CASE NO: 8:20-CV-00048-JVS-JDEx
                             )
            Plaintiffs,      )              CIVIL
                             )
     vs.                     )         Santa Ana, California
                             )
APPLE, INC,                  )         Thursday, May 20, 2021
                             )
            Defendant.       )
_____  )


                 PARTIAL TRANSCRIPT RE:

           MOTION TO COMPEL [DKT.NOS.351,357]


           BEFORE THE HONORABLE JOHN D. EARLY,
             UNITED STATES MAGISTRATE JUDGE

                (SEALED PORTIONS OMITTED)



APPEARANCES:              SEE PAGE 2



Court Reporter:      Recorded; REMOTE; Wave

Courtroom Deputy:    Maria Barr

Transcribed by:      Exceptional Reporting Services, Inc.
                     P.O. Box 8365
                     Corpus Christi, TX 78468
                     361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

2

**APPEARANCES:**


For Plaintiffs:             BENJAMIN A. KATZENELLENBOGEN, ESQ.
                            Knobbe Martens Olson & Bear, LLP
                            2040 Main Street
                            14th Floor
                            Irvine, CA 92614


                            ADAM POWELL, ESQ.
                            Knobbe Martens Olson & Bear, LLP
                            12790 El Camino Real
                            San Diego, CA 92130


For Defendant:              JOSHUA H. LERNER, ESQ.
                            Gibson Dunn & Crutcher, LLP
                            555 Mission Street
                            Suite 3000
                            San Francisco, CA 94105


                            ILISSA S. SAMPLIN, ESQ.
                            Gibson Dunn & Crutcher, LLP
                            2029 Century Park East
                            Suite 4000
                            Los Angeles, CA 90067

3

1          **Santa Ana, California; Thursday, May 20, 2021**

2                    **(Remote Appearances)**

3                      **Call to Order**

4          **THE CLERK:**  Please come to order.  This United States

5    District Court is now in session, the Honorable John D. Early,

6    United States Magistrate Judge presiding.

7          **THE COURT:**  Good morning, everyone, please be seated.

8     **(All respond good morning)**

9          **THE COURT:**  All right, calling the case of *Masimo*

10   *Corporation, et al versus Apple Inc.*, Central District of

11   California Case Number 8:20-00048-JVS.

12         We are here on two Motions.  We'll take appearances

13   with Counsel and then we'll describe the Motion.  We'll start

14   with Counsel for Plaintiff.

15         **MR. POWELL:**  Thank you, Your Honor, Adam Powell for

16   the Plaintiff Masimo Corporation and Cercacor.

17         With me is my partner Ben Katzenellenbogen.

18         **THE COURT:**  All right, thank you, good morning.

19         And for Defendants -- for Defendant?

20         **MR. LERNER:**  Good morning, Your Honor, Joshua Lerner

21   of Gibson Dunn on behalf of Apple, and with me is my partner,

22   Ilissa Samplin.

23         **THE COURT:**  All right, good morning and welcome, as

24   well.

25         We are proceeding and everyone is wearing a mask.

Exhibit 2
-6-

4

1    I'm going to ask you to do me a favor, when you argue just stay

2    at counsel table, no need to go to the lectern, but pull the

3    microphones that are in front of you, whoever is going to be

4    speaking, a little bit closer because we are proceeding with an

5    audio recording and unless you're -- if you're not going to be

6    going back and forth in terms of who's arguing you only need to

7    state your appearance the first time you argue, but if there is

8    going to be different people arguing different points please

9    announce yourselves.

10           All right, so we're here for two Motions, it is both

11   Motions by Plaintiff to Compel Further Discovery Responses from

12   Defendant.

13           The Motion Docket Numbers are Docket Number 351,

14   which I'll refer to as the first Motion, and Docket Number 357,

15   which I'll refer to as the second Motion.

16           Each Motion is supported by a Joint Stipulation.  I

17   think the first Motion is a 109-page Joint Stipulation, and the

18   second Motion is a 130-page Joint Stipulation, as well as

19   Declarations from counsel, I believe it's counsel only, and

20   exhibits and, ballpark, I think the total number of pages,

21   including sealing applications, et cetera of both Motions in

22   total was 2,497 pages.

23           The Court has reviewed that material.

24           There is also two Supplemental Memoranda and a

25   Supplemental Declaration with an exhibit submitted by

Exhibit 2
-7-

5

1    Plaintiff.

2           I don't think there were Supplemental Memoranda

3    submitted by Apple, and I see counsel for Apple shaking her

4    head indicating no so I didn't miss that.  That's good.

5           I always wonder why there's a need for Supplemental

6    Memoranda from the opposing party in a Rule 37 Joint

7    Stipulation since, if it's done correctly, they got the last

8    word in the Joint Stipulation and there's really nothing for

9    the opposing party to be responding to in a Supplemental

10   Memorandum, so there's no downside to not filing it.

11          All right, we're going to proceed.  I have reviewed

12   the materials, I'm ready to go forward.  I'm going to talk a

13   little bit and then we're going to jump right in.

14          There are a total of 92 discovery requests at issue

15   in both Motions.  We're going to start with the first Motion

16   and we're going to go through them one at a time.

17          I was torn between whether to do them in sequential

18   number order or as they are grouped in the Joint Stipulation

19   and I'll probably do as they're grouped in the Joint

20   Stipulation even though my mind is better served by going

21   sequentially, but it's my intention that we're going to be

22   issuing the Order today and any subsequent written Order is

23   merely going to refer to today's transcript for what that Order

24   is.

25          And in that regard what the Orders are going to be,

Exhibit 2
-8-

1  considering the volume of the material and the number of

2  requests at issue, we're not going to be doing a lot of

3  negotiating and a lot of finessing the Requests or the Answers.

4  The Motion is either going to be granted or denied.

5          You folks haven't been here before, we haven't had

6  very many in person hearings in the last 16 months so you

7  haven't heard my speech.  I'll try to keep it short since I

8  want to get jumped into things.

9          But my role in these Discovery Motions, from my

10 viewpoint, using an analogy of building a house, your folks --

11 you're going to go to trial, that trial is going to be your

12 house.  You're each going to be building different parts of

13 that house.  But ultimately you have to work together to some

14 extent to build that house and there's going to be design,

15 architecture, structure, all sorts of things that you're going

16 to have to put into that you work together to get yourself

17 ready for trial.

18         On a Discovery Motion I'm not anything other than a

19 person who's going to hammer nails, either granted or denied,

20 granted or denied, so we're going to go through this with 92

21 Requests.  If we take five minutes per Request today that will

22 take us seven hours and 40 minutes, and if that's what it

23 takes, that's what it takes.

24         If we can get it down to two minutes per Request that

25 will take us about three hours, a little over three hours.

Exhibit 2
-9-

158

1   available for me.

2          I'm going to continue it to June 3rd.  And should the

3   parties be able to narrow issues down, they're certainly free

4   -- only in a joint statement.  I don't want separate

5   statements.

6          And I only want to be alerted if an issue has been

7   resolved and doesn't need a hearing.  I don't want any more

8   evidence; I don't want any more argument.  We're going to

9   continue hearing on the Second Motion to June 3rd and --

10          **MR. KATZENELLENBOGEN:**  Your Honor, I apologize.  And

11   if, in light of that length of the continuance, I think we were

12   hoping to try to be able to work with counsel for Apple this

13   afternoon and to try to resolve these things.  And so if Your

14   Honor is available tomorrow --

15          **THE COURT:**  I have about an hour tomorrow.

16          **MR. KATZENELLENBOGEN:**  Okay.

17          **THE COURT:**  And you can come and then you can wait

18   until my settlement conference is over which could take an

19   hour, it could take six hours.

20          **MR. KATZENELLENBOGEN:**  Your Honor, would it be okay

21   if we took a five minute recess so that we could confer with

22   other members of our team who are not here?

23          **THE COURT:**  Five minute recess.

24          **MR. POWELL:**  Thank you, Your Honor.

25   //

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 2
-10-

159

1          **(Five minute recess taken; resume)**

2          **THE COURT:**  All right.  We're back on the record.

3    All counsel are present.

4          Mr. Powell?

5          **MR. POWELL:**  Thank you, Your Honor.

6          We would suggest we'll try to work things out with

7    Counsel and we'll be back on June 3rd -- if that's your first

8    available hearing date -- if we can't resolve everything with

9    Counsel.

10         **THE COURT:**  All right.  That's what we're going to

11   do.  We're going to continue the hearing.

12         Do you have any objection to June 3rd?  Mr. Lerner?

13         **MR. LERNER:**  I do not, Your Honor.

14         As I said at the beginning of the day, if Your Honor

15   is willing and we can do it from 9:00 to 10:00 or after your

16   settlement conference, we would like to (a), I committed to

17   getting feedback on the question you had about a magistrate

18   but, (b) get your input on scheduling issues where Your Honor

19   offered it before.  We're getting pretty close and I think it

20   would be --

21         **THE COURT:**  All right.  So here's what I'm going to

22   do.

23         We're going to continue the hearing on the Second

24   Motion, Plaintiffs' Second Motion to Compel to June 3rd at

25   10:00 a.m.

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 2
-11-

1          One moment.

2      **(Pause)**

3          And we'll continue this to June 3rd at 10:00 a.m.,

4    the hearing on what I call the Second Motion.

5          If there's no requirement, if counsel are able to, in

6    light of the information and argument today, narrow issues or

7    simply stand on positions taken in this motion, the issues are

8    -- a few are similar but they are largely different so they're

9    welcome to.  But only file something if to advise me that

10   certain requests are no longer subject to a motion.  I don't

11   really want further argument and I shouldn't say "I don't

12   really want" --I don't want and you're not permitted to offer

13   further argument.

14         Mr. Lerner, you're here.  Why don't you tell me what

15   the issue is regarding scheduling?

16     **MR. LERNER:**  Sure.  The issue regarding scheduling is

17   that the parties have been having a number of disputes that

18   relate to depositions, including the depositions that Your

19   Honor ruled on and it is affecting scheduling.  And more

20   broadly, I think getting Your Honor's feedback on the parties

21   engaging in what strikes to me as a sensible order which is

22   documents and then depositions would be very helpful.

23     **THE COURT:**  Well in a vacuum I'm happy to discuss.

24   It's very hard for me to give informed advice other than this:

25         In any case, party wants to take a depositions before

161

1    they have documents, they're welcome to.  And they do it at the

2    risk of not being permitted to reopen a deposition if documents

3    later become available.  Obviously, that's if it's shown that

4    documents were intentionally withheld and only came out through

5    bad faith later after the deposition, that's something

6    different but -- and I'm going to let Mr. Powell talk to me.

7    But other than that general thought which is, a party wants to

8    take a deposition, we have cases where plaintiff -- you know,

9    was immediately upon the Rule 26(f) report wants to get running

10   and take somebody's deposition, they can do it but they run the

11   risk that they're done with that particular deponent and they

12   won't be able to show good cause to reopen or to go beyond

13   whatever the deposition limit is.

14          But Mr. -- Plaintiffs' counsel, either one, if you

15   want to be heard on what was just said, there's not a motion or

16   anything; I'm just giving you some thoughts.

17          **MR. POWELL:**  Right.  And I think I agree, Your Honor.

18   I think in an ideal world, everyone would like to get documents

19   before the depositions, assuming we have time.

20          I think both parties agree that there is going to

21   need to be some sort of extension.  There is a dispute on what

22   sort of extension there is and I believe that would go to Judge

23   Selna anyways.  So our plan was to file our motion on Monday to

24   Judge Selna.

25          And I don't want to speak out of turn.  I believe

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 2
-13-

162

1    yesterday we asked counsel -- I believe it was Ms. Sample and

2    I'd have to look at my emails -- who was talking about this

3    issue with me.  And we had talked about a number of issues on

4    how we address the fact that there's a 28-day lead time to get

5    a motion heard from Judge Selna.  We don't want to go ex parte

6    so we would suggest an interim extension that we submit on a

7    joint ex parte basis that's stipulated to and approved.

8         That was what I suggested and we haven't quite heard

9    back yet and that's okay; we've all been busy with this hearing

10   today but that was our proposal and suggestion.

11        **MS. SAMPLIN:**  If I can just respond to that, if you

12   don't mind, Your Honor?

13        We -- I initiated a call with Mr. Powell because

14   they're looking for a very very long extension of the schedule

15   which we don't agree with.  We're amenable to a one or two

16   month extension but we're not looking for a seven-plus month

17   extension which is what they're looking for.  But I said,

18   Listen, we have a different view of what an extension should

19   look like if there is going to be one.  Why don't we, instead

20   of burdening Judge Selna with competing motions -- they've told

21   us they want to make their motion on Monday so now we're

22   preparing a motion -- burdening him with motions, competing

23   motions that will likely speak past each other, why don't we

24   see about filing a stipulation with Judge Selna saying that the

25   parties would like to discuss scheduling, would be amenable to

Exhibit 2
-14-

1    a conference, and a joint report maybe to him that's no more

2    than 10 pages, five page each with our respective positions so

3    he has them together.  We're not engaging in six briefs on this

4    issue.  Plaintiffs denied that option.  They said they want to

5    file a motion.  So we're kind of at a loss for how to go

6    forward.  I think that's one of the issues I would love your

7    guidance on because it is something that needs to be raised.

8    We want to be respectful of Judge Selna's time, at least that

9    was my goal in raising that kind of truncated approach.  But we

10   need to talk schedule, we need to get it resolved fairly

11   quickly because we do have, as you've noted, a discovery cutoff

12   around the corner.  And I don't think Mr. Powell's suggestion

13   of the parties agreeing to an interim stay while that schedule

14   issue is worked out works either.  One, I don't even think the

15   parties have the power to decide that they're staying a

16   schedule that's in place from a district court judge; and

17   (two), if Judge Selna denies any kind of change in the

18   schedule, then we've lost valuable time on proceeding with the

19   case.  So that's how Defendants are -- Defendant is looking at

20   this issue.

21            **THE COURT:**  I have no guidance to give you.  Everyone

22   acts in accordance with their own interests.  And in

23   furtherance of the current scheduling order, the Federal Rules

24   of Civil Procedure, the Local Rules.  But I don't have any

25   authority to alter Judge Selna's scheduling order and you folks

Exhibit 2
-15-

164

 1 │ feel free to do what you think is best.  I'm not sure what

 2 │ guidance I can give you.

 3 │          **MR. LERNER:**  That's fair.  We have one thing that I

 4 │ think is more specific to Your Honor's ruling on that point --

 5 │          **MS. SAMPLIN:**  Yeah and I'm just trying to --

 6 │          **MR. LERNER:**  -- which is the --

 7 │          **MS. SAMPLIN:**  Yeah to pull up the exact language on

 8 │ my phone but --

 9 │          **MR. LERNER:**  -- it's the depositions.

10 │          **MS. SAMPLIN:**  But the depositions, yeah.

11 │          You had asked us in your order, the Motion for Remote

12 │ Depositions was granted on the condition that we submit a

13 │ declaration that answered specific questions for each of the

14 │ 11 deponents.  I submitted that declaration to the other side

15 │ on time.

16 │          There's two issues in that declaration.  One is that

17 │ certain deponents didn't answer the questions all perfectly to

18 │ your order to get a remote deposition.  We've ask the other

19 │ side to still consider because these deponents have said --

20 │ have reiterated their fears about proceeding in person.  We'd

21 │ asked for their courtesy to allow them to proceed remotely but

22 │ we can even put that to the side.

23 │          There are a large chunk of deponents who answered

24 │ every question perfectly but Plaintiffs are now taking the

25 │ position because the wording wasn't the exact words in your

Exhibit 2
-16-

165

1  order -- I think one example is we said "work related" instead

2  of "work meetings;" we said "work-related meetings".  They say

3  we haven't complied with your order.

4         Also, we had our in -- given the timeframe -- it was

5  a quick turnaround -- we had our in-house counsel send the

6  emails to the employees and asked them to answer these

7  questions.  In-house counsel then forwarded me all the

8  responses.  I personally placed eyes on every single email from

9  each of those 11 folks but their side is taking the position

10  because those emails weren't sent directly to me, we didn't

11  comply with your order.

12         So I'm raising now -- they requested a meet and

13  confer in fairness on it today but they've put this position in

14  the email and we kind of just looked at it and said, I don't

15  really want to brief this issue to you.  I think we did our

16  best to comply with your order.  I don't think there's any

17  question that we satisfied the order with respect to many of

18  the deponents who have answered all the questions perfectly.  I

19  don't really want to engage in a joint stipulation quibbling

20  over the language but I'm kind of at a loss of what to do

21  because we have these deponents who answered the questions.

22  And I think under the order should be proceeding with remote

23  depositions.  And we're happy to show you the declaration; I

24  have it here today if that would be helpful.

25         **THE COURT:**  Plaintiffs' counsel?

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 2
-17-

1          **MR. POWELL:**   Thank you, Your Honor.

2          Frankly, we suggested in speaking about this because

3   we're open to trying to compromise if we can.

4          And the issue here, though, I would take issue. It's

5   not a quibbling with a word here or there.  I think Your Honor

6   was very specific in stating a number of things.

7          Number one was that Apple required -- the employee

8   was advised by Apple that they were required to work remotely

9   for the next 60 days.  Every single one of the deponents came

10   back and the language was that they understand that Apple's

11   policy is that they should work remotely whenever possible; it

12   doesn't say that they were told they were required to work

13   remotely.

14          And then again you have the issue of who spoke

15   directly with these people, and you have the issue there were,

16   I think I believe four people who do regularly attend meetings

17   at Apple; and of course we'd be willing to talk about some of

18   those people.

19          Like for example, there's one I can think of and I

20   wish I could remember who it was -- it might be Ms. Haggarty

21   (phonetic) who has -- she said she has a family member who's

22   immunocompromised.  That's certainly something I'm happy to

23   talk to them about and see if this is someone, for example,

24   that she's worked -- living with or sees all the time, we can

25   work that out and that's why we wanted to talk to them about

1    it.  Even though that -- Ms. Haggarty -- I think if it was

2    Ms. Haggarty, she does attend meetings at Apple so she wouldn't

3    qualify under Your Honor's order.  But look, I'm sensitive to

4    that and I have a family member who's immunocompromised myself.

5    And so I wanted to try to talk to them and if it's really

6    someone that she sees all the time and she's very worried about

7    it, then we could talk about that one, for example.  That was

8    what we were planning on doing.

9            MS. SAMPLIN:  I will just say the email from their

10   counsel yesterday said the Court's order is denied with respect

11   to your depositions and we need to talk about proceeding with

12   in-person depositions.  So I didn't really get the sense that

13   there was room there.  Happy to discuss and particularly -- and

14   I said, you know, myself, for certain people they didn't answer

15   the questions the way Your Honor had envisioned because some

16   people have gone into Apple.  I understand those present

17   different circumstances.  I think Plaintiffs are well within

18   their right to ask to meet and confer about those folks because

19   they didn't directly comply with the order and I'm happy to

20   discuss those.  But for the other folks, I respectfully do

21   think it's quibbling over language.  I'm happy to show you the

22   declaration.  I don't know that a meet and confer really should

23   be required on those because I think they answered all of your

24   questions.  Of course if Your Honor tells us they didn't, we're

25   happy to provide or revise wording but I think they answered

**EXCEPTIONAL REPORTING SERVICES, INC**

Exhibit 2
-19-

```
 1    the questions.  I saw -- they were forwarded to me all the

 2    emails.  I saw the correspondence so I don't think there's a

 3    question of who had it or in-house counsel sent the email, just

 4    given the timeframe, but I have all of them in my inbox and I

 5    wouldn't have signed the declaration had I not seen those

 6    representations directly from the employees.

 7             THE COURT:  The order speaks for itself.  The

 8    language in the order is there because that's what was in the

 9    application.  The ex parte application twice asserted it was

10    urgent.  One place I think said it was an emergency but it

11    certainly twice said it was urgent.  And it was the ex parte

12    application that said things like Apple has advised employees

13    that -- for I think it was the next 90 days or until September

14    -- they should be working from home.  That's why that provision

15    is in there.

16             And with respect to other provisions, there was

17    language in the application that said -- and I'm paraphrasing

18    words to the effect of -- It's not fair that Apple employees

19    who by virtue of their being designated as relevant witnesses

20    or custodians, should have to have their level of risk

21    increased beyond what they would normally have as an Apple

22    employee.  And that's why it's well if you haven't been

23    required and haven't come to work or attended in person work-

24    related meetings, that would fall within that category.  So

25    that's why those certifications are there.
```

1          The order also said at the end, as I recall, this is

2   just ruling on this application.  It's not saying that if

3   someone can't meet those requirements that they have to appear

4   in person.  It may be that another application is required but

5   those rulings were based on the information that was presented

6   to me in an ex parte application that was filed at what?

7   5:36 p.m.  The opposition came in at 4:00 p.m.  And Marie, I

8   think you hit the docket with our order at exactly 5:00 p.m.

9   the next day because it was so urgent.  If it really is that

10  urgent, then you've got to comply with what you say.  And by

11  "you" I mean Apple says, this is the situation that employees

12  aren't permitted to or are required to work remotely and that

13  this would put them at an increased risk than what they're

14  facing at work.  If that's not the case, but there's some other

15  basis -- because this is a serious issue for these folks to

16  need remote depositions -- meet and confer.  If you can't

17  agree, we're going to go forward.  But I'm not going to sit

18  here and assess the sufficiency of responses because even if a

19  response is insufficient, it doesn't mean the person then has

20  been ordered to appear in person.  That order does not say

21  that.  It merely says the application's either granted or

22  denied for all those people that meet these restrictions.  If

23  the application is denied, those people are still free to make

24  a separate application.  But lumping 11 people together with a

25  bunch of representations that may or may not apply to each of

170

1    them -- and I didn't even know, that it didn't even appear to

2    me that counsel had even conferred with each of those folks to

3    see if they really wanted to do it remotely rather than in

4    person.  So that's what the ruling was a ruling on that

5    application and the unique facts presented as the basis for

6    both it being urgent and for the relief requested.

7            I can believe -- now I'm going to step aside.

8            I can't believe you folks are fighting about this.  I

9    really can't.  I can't believe it.  I'm looking at both of you

10   by the way.  So you're nodding your head, Oh, I can't believe

11   they're doing it too.  I'm looking at both of you.  Work it

12   out.

13           I really -- I know every client is different but when

14   you get stuff thirdhand through in-house counsel, through a

15   supervisor, to get to the person who is the relevant person,

16   things get lost in the middle, in the muddle.  And in-house

17   counsel, great people, I'm sure, but their loyalty is to the

18   entity.

19           I want to know, if I see one of these, what the

20   particular person wants.  If the particular person has a

21   reasonable concern, why are we fighting about this?  If you

22   think that the particular person is faking and you really want

23   me to start making rulings on whether someone is faking

24   discomfort at appearing in person due to COVID, I'm going to do

25   it but that means I'm going to have to hear from the person,

Exhibit 2
-22-

1    all right?  And if I put someone through that and it turns out

2    they're honestly have a very real and rational concern about

3    their health or a family member's health, there's going to be

4    consequences to the side that wouldn't accept that and contest

5    it.  You better have a good-faith basis to say, No, no, this

6    person's not really -- doesn't really feel concerned.  This is

7    an under the table effort to have a deposition be remote

8    because that gives them more time to think about questions or

9    it makes it harder for us to proceed.  But if you want to

10   proceed down that route -- and I'm looking now at Plaintiffs'

11   side, feel free.  But I'm letting Defendant know, if that's

12   where we go, I need evidence from the person, not from an in-

13   house counsel lawyer who says, We're not letting anybody

14   participate in person because I get it.  They protect -- they

15   want to protect their people.  Okay?  I have to protect the

16   system and the person.  All right?  Due process rights over

17   here.  Health rights of our witnesses.  We're going to assess

18   that.  But I can't believe that it's going to come to that and

19   if it does, nobody's asking for sanctions here and it's

20   probably because what you folks are spending just on your meet

21   and confer letters would dwarf what any sanction order would be

22   on a discovery motion.  But it'll start becoming a sua sponte

23   thing and the language in the orders are going to be much more

24   blunt and direct and reference whatever is appropriately

25   referenced in terms of how things are being handled and what

172

1    the parties are putting everyone thorough and what the lawyers

2    are doing.  It's all going to be part of the future findings on

3    these things.  All right?  So forewarned is forearmed.

4          Bring me whatever disputes you can't resolve but this

5    case has taken up an awful lot of this whole chamber's time and

6    I'm really hoping not to see you as much.

7          All right?

8          **MS. SAMPLIN:**  Understood, Your Honor, thank you.

9          **THE COURT:**  All right?  Is there anything further?

10   So we'll see you back on June 3rd at 10:00 o'clock.

11         And if there's anything in the interim, let me do

12   this.  Let me ask you to file it by -- any further results of

13   any further meet and confer by a week from today, May 27th.

14   All right?

15         **MR. LERNER:**  Thank you.

16         **THE COURT:**  All right.  We are adjourned.

17     **(Proceeding adjourned)**

18

19

20

21

22

23

24

25

Exhibit 2
-24-

173

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    **May 26, 2021**

                Signed                                           Dated


_TONI HUDSON, TRANSCRIBER_

# EXHIBIT 3

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Ilissa Samplin
Direct: +1 213.229.7354
Fax: +1 213.229.6354
ISamplin@gibsondunn.com

May 21, 2021

VIA E-MAIL

Alan G. Laquer
Knobbe Martens
2040 Main Street
Irvine, CA  92614

Cheryl T. Burgess
Knobbe Martens
2040 Main Street
Irvine, CA  92614

Re:     *Masimo et al. v. Apple Inc.*, C.A. 8:20-cv-00048-JVS-JDE (C.D. Cal.)

Dear Alan and Cheryl:

I am writing in response to your emails sent the evening of May 19, 2021, regarding deposition scheduling, and to address the current case schedule dispute between the parties.

Plaintiffs' proposal of an interim stay while motions about the case schedule are briefed does not work because, as we noted previously, the parties have no power to effect their own stay of the case—particularly one that would cause them to fall out of compliance with the Court's Scheduling Order.  Indeed, in response to the stay proposal, Judge Early yesterday commented that he has no power to change the schedule either.  Accordingly, we recommend that the parties agree to interim dates for the exchange of ESI discovery parameters, scheduling of depositions, substantial completion of document discovery, and depositions— so that we continue to move forward with progressing the case in view of the current Scheduling Order by which all parties are presently bound.  To the extent Plaintiffs intend to continue to object to my May 12 declaration after Judge Early's comments yesterday, we also need to immediately discuss that dispute so that we can resolve the question of remote depositions.  We are available today or over the weekend to discuss a mutually agreeable schedule and any remaining remote deposition issues.  **Please provide Plaintiffs' availability as soon as possible.**

With respect to your emails about depositions, Plaintiffs certainly are free to move forward with depositions of Apple witnesses as soon as they would like to do so.  But, as Judge Early made clear at yesterday's hearing, Plaintiffs will do so at the risk of not getting a second

Exhibit 3
-26-

**GIBSON DUNN**

Alan G. Laquer
Cheryl T. Burgess
May 21, 2021
Page 2

deposition if documents pertaining to those deponents are produced later.  Apple does not intend to make its witnesses available for deposition more than once.  You have indicated that Plaintiffs will take the same position with respect to their deponents (who you are offering for deposition *before* production of their documents).  That is why we believe it is most efficient for both sides to come up with a schedule for the case that sets dates for the exchange of ESI discovery parameters, substantial completion of document production, and Plaintiffs' 30(b)(6) notice, in advance of a deadline for fact depositions.

**Mr. Laquer's Email Regarding Plaintiffs' Requested Depositions**

Mr. Laquer's email mischaracterizes the parties' prior correspondence, and ignores the fact that Apple has already made its position on scheduling abundantly clear.  Contrary to Mr. Laquer's suggestion that Plaintiffs previously accepted the deposition dates for Apple's custodians that Apple provided on April 29 (nearly 3 weeks ago), Plaintiffs have only stated that Apple should "reserve all of the dates" pending the outcome of the parties' dispute based on Plaintiffs' unwillingness to take Apple's depositions remotely.[1]  As Apple informed Plaintiffs, however, Apple's witnesses are unable to indefinitely keep dates open on their calendar, and thus Apple requested multiple times that Plaintiffs confirm the dates.  ***Plaintiffs did not do so until Mr. Laquer's email earlier this week***.

Furthermore, Mr. Laquer's email makes clear that Plaintiffs have no intention of serving Apple with their 30(b)(6) notice prior to these depositions, despite Apple's repeated requests for Plaintiffs' notice before Apple puts its witnesses up for deposition and despite the fact that Apple already served its 30(b)(6) notice to afford Plaintiffs that courtesy.  As we have explained multiple times, many of Apple's witnesses are likely to be corporate designees in this case and Apple is not willing to make its deponents available more than once.  Apple therefore has reasonably requested Plaintiffs' 30(b)(6) topics, so that it can prepare the appropriate corporate designees who have also been designated in their individual capacities.  Plaintiffs have refused.  If Plaintiffs insist on taking the noticed depositions prior to providing their 30(b)(6) topics, Apple will reserve the right to designate their deponents' deposition testimony as Apple's 30(b)(6) testimony after Plaintiffs serve their 30(b)(6)

---

[1]  Plaintiffs have taken the position that "Apple's application was denied" for each of the 11 deponents that are the subject of my May 12 declaration.  Judge Early did not endorse Plaintiffs' position at yesterday's conference.  Plaintiffs' position following the conference is not yet clear to Apple.  And if Plaintiffs continue to insist that "Apple's application was denied" despite the discussion at yesterday's hearing, it is further unclear to Apple whether Plaintiffs are expecting that Apple will continue to keep all dates open while the dispute about my declaration is resolved.

Exhibit 3
-27-

**GIBSON DUNN**

Alan G. Laquer
Cheryl T. Burgess
May 21, 2021
Page 3

topics.  In view of Plaintiffs' unwillingness to agree that they will not seek second
depositions from Apple's witnesses, even if the witnesses' documents are produced after
their deposition, Apple cannot agree to make its witnesses available for deposition at this
time.

### Ms. Burgess' Email Regarding Apple's Requested Depositions

Ms. Burgess' email similarly mischaracterizes the parties' correspondence and seeks to place
conditions on Apple's ability to depose Plaintiffs' deponents.  Ms. Burgess' email offers—
*for the first time*—dates for Plaintiffs' deponents, starting as early as next week.  We have
been asking for dates for weeks.  It is unreasonable of Plaintiffs to provide one-weeks' notice
for these deponents.  Ms. Burgess' email also makes clear that Plaintiffs will not be
providing documents for their deponents prior to the dates Plaintiffs are offering for
deposition, and that if Apple wants to take the depositions on the proposed dates, it must
agree not to seek second depositions of those witnesses.  In other words, Apple must forego
its right to take depositions of Plaintiffs' witnesses with the benefit of Plaintiffs' documents.
These conditions are unreasonable; Apple will not accept Plaintiffs' attempt to impose such
conditions.

We are also compelled to address Ms. Burgess' attempt to equate Plaintiffs' conditions on
Apple taking Plaintiffs' depositions to the vastly different situation that was presented with
respect to Plaintiffs' attempt to depose Wolf Oetting seven (7) months ago.  On November
18, 2020, Plaintiffs noticed Mr. Oetting—and only Mr. Oetting—for deposition.  In response,
Apple stated that taking Mr. Oetting's deposition on the date noticed would be premature
given the stage of the case.  Indeed, Apple had not yet produced Mr. Oetting's documents or
ESI, and Plaintiffs had not yet provided their 30(b)(6) notice.  Apple also noted that Mr.
Oetting was not available on the date Plaintiffs noticed due to Apple's annual company-wide
shut down the final two weeks of December.  Nonetheless, Apple offered to make Mr.
Oetting available for deposition on January 20, 21, or 22, but made clear that it would object
to any efforts to take Mr. Oetting's deposition a second time in view of the fact that the
parties had not yet completed their document productions.  In other words, Plaintiffs could
choose to take Mr. Oetting's deposition knowing that his documents had not been
produced—which was their prerogative—but they could not secure a second bite of the apple
later having made that choice to proceed early.  Plaintiffs then asked if Mr. Oetting could
instead be available in February, and Apple offered February 22.  Plaintiffs next demanded
that Apple produce all of Mr. Oetting's documents prior to his deposition.  Apple agreed to
do so on February 8, and did in fact produce all of Mr. Oetting's documents, with the
exception of ESI, prior to February 22.  With respect to ESI, Apple offered on February 24 to
prioritize searching and producing Mr. Oetting's ESI if Plaintiffs provided search terms that

Exhibit 3
-28-

**GIBSON DUNN**

Alan G. Laquer
Cheryl T. Burgess
May 21, 2021
Page 4

they wished to apply to the ESI.  Plaintiffs responded a week later that they were "adjusting
[Plaintiffs'] search terms," but Apple did not hear again from Plaintiffs until March 12, when
Plaintiffs provided search terms for nearly 50 custodians.

In short, the record is clear that Apple was more than willing to produce Mr. Oetting's
documents—including ESI—prior to his deposition in order to avoid a later request by
Plaintiffs to take his deposition a second time.  Apple expects that Plaintiffs will do the same
for the individuals Apple seeks to depose.

### The Parties Need to Set a Schedule That Will Allow Discovery to Move Forward Now

Apple is eager to move discovery forward now and, as we have made clear, we are willing to
work with Plaintiffs to come up with a sensible schedule with that goal in mind.  In
particular, as I note above, we are available today or over the weekend to discuss an interim
schedule while briefing on the Scheduling Order is pending, so that the parties can continue
to work towards progressing this case under the current Schedule Order by which they are
bound.

With respect to the parties' dispute about an extension of the Scheduling Order, Apple
provided Plaintiffs with the following proposed amended schedule that would allow both
parties to take depositions with full knowledge of each other's 30(b)(6) topics as well as
documents (including ESI) for all deponents:

Exhibit 3
-29-

# GIBSON DUNN

Alan G. Laquer
Cheryl T. Burgess
May 21, 2021
Page 5

| Event | Current Deadline | Proposed Deadline |
|---|---|---|
| Plaintiffs serve 30(b)(6) notice | N/A | May 19, 2021 |
| Final ESI search terms | N/A | June 4, 2021 |
| Deposition schedule set | N/A | June 11, 2021 |
| Substantial completion of document production | N/A | June 25, 2021 |
| Discovery cut-off | July 5, 2021 | July 5, 2021 (except depositions) (includes cut-off for motions to compel) |
| | | August 13, 2021 (depositions only) |
| Opening expert reports | Sept. 6, 2021 | October 27, 2021 |
| Rebuttal expert reports | Oct. 18, 2021 | December 8, 2021 |
| Expert discovery cut-off | Dec. 6, 2021 | December 22, 2021 |
| Law and Motion– motions filed no later than | Jan. 10, 2022 | January 24, 2022 |
| Law and Motion cut-off | Feb. 7, 2022 at 1:30 pm | February 14, 2022 at 1:30 pm |
| MILs | Feb. 14, 2022 | |
| Pretrial documents | Mar. 7, 2022 | |
| Final pretrial conference | March 21, 2022 | |
| Trial | Apr. 5, 2022 | |

Plaintiffs have not provided any proposal that would allow the parties to move forward with scheduling and taking depositions any time in the near future.  To the contrary, in response to Apple's proposal, Plaintiffs proposed that the parties agree to extend the discovery cut-off deadline 90 days after the final IPR decisions.[2]  In other words, Plaintiffs' proposal seeks to extend discovery until at least the summer of 2022 and, with any appeals from the IPRs, potentially well into 2023.  Such a proposal is clearly not intended to allow for discovery to proceed expeditiously now, and would result in a trial date in 2023 or 2024 at the earliest. We urge Plaintiffs to reconsider Apple's proposal.

---

[2]  Plaintiffs have also rebuffed Apple's proposal to include firm deadlines for Plaintiffs to serve their 30(b)(6) notice, negotiate ESI search terms, set a deposition schedule, and substantially complete document production.

Exhibit 3
-30-

# GIBSON DUNN

Alan G. Laquer
Cheryl T. Burgess
May 21, 2021
Page 6

We look forward to hearing from you as soon as possible about Plaintiffs' availability to meet and confer today or over the weekend.

Sincerely,

Ilissa Samplin

Exhibit 3
-31-

# EXHIBIT 4

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Alan G. Laquer
Alan.Laquer@knobbe.com

May 24, 2021
via email

Ilissa Samplin
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
ISamplin@gibsondunn.com

          Re:     Masimo v. Apple, case no: 20-cv-00048

Dear Ilissa:

I write in response to your letter of May 21, 2021.  It appears that Apple is still doing its best to try to cut off its discovery obligations.

## Case Scheduling

Plaintiffs have never proposed an "interim stay" while motions about the case schedule are briefed. Plaintiffs suggested that the parties agree on an interim *extension*.  Such an extension would simply extend the current case schedule by 1-2 months to allow time for the Court to address Plaintiffs' motion to extend the case schedule.  Plaintiffs did not suggest that the parties "effect their own stay."  Instead, we suggested that the parties file a joint request to modify the Scheduling Order to enter the agreed upon extension.  Your letter does not address Plaintiff's proposal for an interim extension.

We disagree with your proposal that an interim extension should add dates for the exchange of ESI discovery parameters, scheduling of depositions, substantial completion of document discovery, and depositions.  That proposal includes fundamental changes to the Scheduling Order beyond simply extending current dates to preserve the status quo while the matter is briefed.  For example, Apple seeks to impose dates for Plaintiff's to serve its 30(b)(6) notice, final ESI search terms, deposition schedule set, and substantial completion for document production.  These activities are not included in the current Scheduling Order, and we do not agree they should be added to it, especially as part of an interim extension that should be preserving the status quo.  Apple is again attempting to cut off discovery.

Moreover, your proposed timing is unworkable.  For example, Apple proposes June 4, 2021 as the deadline for Final ESI search terms.  However, Apple's terms are currently overbroad.  Given the number of custodians, large volume of ESI documents, and large number of search hits, it takes up to a week of machine time just to run revised terms across Plaintiffs' custodians.  Given the incremental approach Apple has taken to narrowing its terms, we doubt Apple's ability to sufficiently narrow its search terms by June 4, 2021.  Plaintiffs cannot agree to finalize and run Apple's search terms based on an arbitrary date, rather than based on the reasonableness of the search results. As a further example, Apple schedules 21 days between final ESI search terms and substantial completion for document production.  As you are aware, Apple's current terms hit on millions of documents.  Three weeks is not sufficient to review and produce that many documents.

Exhibit 4
-32-

# Knobbe Martens

Your letter reiterates Apple's previous position on the schedule.  It does not appear that Apple has modified its prior proposal.  At the hearing last week, Apple suggested that it may also file its own competing motion to adjust the schedule.  We do not understand why Apple would suggest doing that when it should simply oppose Plaintiffs' motion.  Please explain the relief Apple intends to seek and why it believes that is properly presented as a separate motion.

We are willing to meet and confer to discuss the appropriate length of an interim extension while the matter is briefed.  However, we maintain that any interim extension should merely preserve the status quo rather than add new deadlines.

### Depositions

Apple is attempting to draw an artificial distinction between "reserving" a date and "confirming" a date.  Plaintiffs told Apple many times that they intended to move forward with the depositions on the dates provided by Apple.  If Apple believed there was some ambiguity, Apple should have identified the ambiguity rather than simply repeated its incorrect understanding of our position.

My email to you on May 19, 2021 explained in detail the ways in which your declaration failed to satisfy the elements that Judge Early's Order required in order to grant Apple's *ex parte* application to force remote depositions.  Your letter of May 21 fails to respond.  Your letter ignores that the Order required that the deponent-employee "has been advised by Apple that the deponent-employee will be required by Apple to continue to work remotely for the next 60 days."  Your letter also ignores that several of Apple's deponent-employees have worked in-person for Apple in the preceding 30 days, including through attending in-person work meetings.  Your letter also ignores that you did not speak or receive an electronic communication directly from any of the deponents-employees, as required by the Order.  Your letter states that Judge Early did not "endorse Plaintiffs' position," but notably does not address Apple's position.  Our recollection is that Judge Early made clear that his Order included specific language that Apple needed to satisfy.  Deviating from his Order resulted in a denial, albeit without prejudice to Apple presenting specific reasons why a particular deposition should be taken remotely.  Plaintiffs maintain that Apple's *ex parte* application was denied for all 11 deponent-employees.

Nevertheless, as we explained at the hearing, we are willing to discuss taking some depositions remotely if some of the witnesses have a legitimate reason for not wanting to appear in person.  As Judge Early suggested, we do not believe this should necessarily be an "all or nothing" proposal.  Plaintiffs also requested that Apple explain its position in advance of that meet and confer.  We remain interested in understanding Apple's position.

Plaintiffs have repeatedly offered to provide Apple with 30(b)(6) topics so long as Apple does not contend that prejudices Plaintiffs' ability to serve additional 30(b)(6) topics.  Your letter continues to ignore that offer, and instead mischaracterizes our position as being unwilling to serve 30(b)(6) topics.  Given the extensive discovery that remains, including document production and individual depositions, it is unreasonable to demand that Plaintiffs finalize their 30(b)(6) topics at this time.  Apple has no authority for its attempt to require that Plaintiffs serve any 30(b)(6) topics—much less all of them—before taking individual depositions pursuant to 30(b)(1).  Indeed, Apple's attempt to impose that novel theory contradicts common deposition practice in which 30(b)(6) topics are served well after individual depositions occur.  Apple has taken the position that Plaintiffs may serve only a single 30(b)(6) notice containing all of their topics.  If Apple instead agrees not to dispute that Plaintiffs may later serve additional 30(b)(6) topics, then Plaintiffs will gladly serve their existing topics now.  Again, Apple's positions appear to be nothing more than an attempt to cut off discovery.

knobbe.com

Exhibit 4
-33-

**Knobbe Martens**

Plaintiffs have worked hard to arrange for their deponents to be available for Apple to depose. Apple complains that Plaintiffs provided dates as early as this week, but we were merely trying to provide dates at approximately the same time as Apple's noticed dates. We are happy to ask for additional dates further out if you like. Your complaint regarding depositions occurring before document production is a result of Apple requesting excessive document search terms that hit on millions of documents and being unwilling to narrow its search terms. We agree it is more efficient to take depositions after receiving substantial document productions concerning the deponents, but that is not possible under the current schedule or Apple's proposal. We also did not assert that Apple must "agree not to seek second depositions of those witnesses." Rather, we summarized our understanding of **Apple's** position that **neither** party can take second depositions after documents are produced. We understand from your letter that Apple will not be taking depositions of Plaintiffs' witnesses on the dates that we previously provided or makings its own witnesses available for depositions on the dates that Apple previously provided.

We also continue to disagree with your attempt to characterize the parties' dispute on Mr. Oetting's deposition. Among other things, Apple never told us that it finished producing Mr. Oettings non-ESI documents until very recently. We also do not agree with your assertion that we delayed providing search terms between February 24 and March 12. Once it became clear the parties would exchange terms and hit counts for several custodians, we reasonably addressed all custodians at once. We are still anxiously awaiting receipt of Mr. Oetting's documents and dates for his deposition.

**Meet and Confer**

Plaintiffs are available to meet and confer tomorrow. Please provide Apple's complete availability so that we can identify a time that works.

Sincerely,

Alan G. Laquer

knobbe.com

Exhibit 4
-34-

# EXHIBIT 6

JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Tel.: 415.393.8200 / Fax: 415.393.8306

H. MARK LYON, SBN 162061
  mlyon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel.: 650.849.5300 / Fax: 650.849.5333

BRIAN M. BUROKER, pro hac vice
  bburoker@gibsondunn.com
BRIAN K. ANDREA, pro hac vice
  bandrea@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel.: 202.955.8541 / Fax: 202.467.0539

BRIAN A. ROSENTHAL, pro hac vice
  brosenthal@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.2339 / Fax: 212.817.9539

ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000 / Fax: 213.229.7520

ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East Suite 4000
Los Angeles, CA 90067
Tel.: 310.552.8546 / Fax: 310.552.7026

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | CASE NO. 8:20-cv-00048-JVS (JDEx) <br><br> **DECLARATION OF ILISSA SAMPLIN IN SUPPORT OF COURT ORDER GRANTING APPLE'S EX PARTE APPLICATION (DKT. 374)** <br><br> Magistrate Judge John D. Early <br><br> Discovery Cut-Off:  7/5/2021 <br> Pre-Trial Conference: 3/21/2022 <br> Trial:  4/5/2022 |

Gibson, Dunn & Crutcher LLP

DECLARATION OF ILISSA SAMPLIN IN SUPPORT OF COURT ORDER GRANTING APPLE'S EX PARTE APPLICATION (DKT. 374) CASE NO. 8:20-CV-00048-JVS (JDEX)

Exhibit 6
-127-

# <u>DECLARATION OF ILISSA SAMPLIN</u>

I, Ilissa Samplin, declare and state as follows:

1.    I am a partner with the law firm of Gibson, Dunn & Crutcher LLP and counsel of record for Apple Inc. ("Apple") in the matter *Masimo Corp., et al. v. Apple Inc.*, Case No. 8:20-cv-00048-JVS (JDEx), which is currently pending in United States District Court for the Central District of California.

2.    I have personal, firsthand knowledge of the facts stated herein and, if called upon to do so, could and would competently testify thereto.

3.    I make this declaration in accordance with the Court's May 11, 2021 order granting Apple's *ex parte* application for an order directing depositions to proceed remotely, on the condition that "Apple's counsel provides a declaration by counsel to counsel for Plaintiffs by 5:00 p.m. on May 12, 2021 that identifies by name each of the 11 Apple employee-deponents who are the subject of the Application, and, for each deponent, attests that counsel has either spoken with or received an electronic communication directly from each such deponent, and answers, for each such deponent based on such communication: (a) whether the deponent states the deponent is uncomfortable proceeding with an in-person deposition due to COVID-19; (b) whether the deponent has, for the preceding 30 days, worked for Apple remotely-only; (c) whether the deponent has attended any in-person work-related meeting during the preceding 30 days; and (d) whether the deponent has been advised that Apple requires the deponent to work remotely for the next 60 days." (Dkt. 374.)

4.    On May 11, 2021, I corresponded with Apple's in-house counsel regarding the Court's order.  In-house counsel for Apple sent individual emails posing the specific questions outlined in the Court's May 11, 2021 Order to each of the following eleven individuals whose depositions Plaintiffs have noticed: (1) Deidre Caldbeck; (2) Myra Haggerty; (3) Chinsan Han; (4) Steve Hotelling; (5) Brian Land; (6) Trevor Ness; (7) Wolf Oetting; (8) Michael O'Reilly; (9) Mark Rollins; (10) David Smoley; and

Gibson, Dunn & Crutcher LLP

DECLARATION OF ILISSA SAMPLIN IN SUPPORT OF COURT ORDER GRANTING APPLE'S EX PARTE APPLICATION (DKT. 374) CASE NO. 8:20-CV-00048-JVS (JDEX)

Exhibit 6
-128-

(11) Steve Waydo.  Each individual responded to Apple's in-house counsel via email, and I have personally reviewed the email responses received from each individual.

5.     On May 11, 2021, **Deidre Caldbeck** stated via email that she is uncomfortable appearing for an in-person deposition due to COVID-19, that she has worked for Apple remotely-only during the past 30 days, that she has not attended any in-person work-related meetings during the past 30 days, and that her understanding is that Apple's policy is that she should continue to work remotely to the extent possible for at least the next 60 days.

6.     On May 11, 2021, **Myra Haggerty** stated via email that she is uncomfortable appearing for an in-person deposition due to COVID-19.  She stated that she has worked remotely for Apple for the past 30 days, although she has attended one in-person meeting lasting approximately one hour at an Apple facility every 1-2 weeks over the past 30 days, after which she has returned home.  She confirmed her understanding that Apple's policy is that she should continue to work remotely to the extent possible for at least the next 60 days.  Ms. Haggerty also stated that she has a family member who has a compromised immune system, so she has been very conservative with COVID-19 precautions.  She explained that she has significant safety concerns about an in-person deposition involving individuals she does not know at a facility with which she is not familiar.  She trusts the Apple facility at which she has appeared over the past 30 days, as mentioned above, because of all the safety measures that Apple employs, including high quality air ventilation systems.  She is very uncomfortable about appearing in-person for this deposition—and particularly so at Plaintiffs' offices.

7.     On May 12, 2021, **Chinsan Han** stated via email that he is uncomfortable appearing for an in-person deposition due to COVID-19, that he has worked for Apple remotely-only during the past 30 days, that he has not attended any in-person work-related meetings during the past 30 days, and that his understanding is that Apple's

2
DECLARATION OF ILISSA SAMPLIN IN SUPPORT OF COURT ORDER GRANTING APPLE'S EX PARTE
APPLICATION (DKT. 374) CASE NO. 8:20-CV-00048-JVS (JDEX)

Exhibit 6
-129-

policy is that he should continue to work remotely to the extent possible for at least the next 60 days.

8.  On May 11, 2021, **Steve Hotelling** stated via email that he is uncomfortable appearing for an in-person deposition due to COVID-19, that he has worked for Apple remotely-only during the past 30 days, that he has not attended any in-person work-related meetings during the past 30 days, and that his understanding is that Apple's policy is that he should continue to work remotely to the extent possible for at least the next 60 days.

9.  On May 11, 2021, **Brian Land** stated via email that he is uncomfortable appearing for an in-person deposition due to COVID-19, that he has worked for Apple remotely-only during the past 30 days, that he has not attended any in-person work-related meetings during the past 30 days, and that his understanding is that Apple's policy is that he should continue to work remotely to the extent possible for at least the next 60 days.

10.  On May 12, 2021, **Trevor Ness** stated via email that he is uncomfortable appearing for an in-person deposition due to COVID-19.  Mr. Ness stated that while he has worked at Apple roughly once per week over the past 30 days, which includes in-person work-related meetings, he always maintains social distance and wears a mask.

11.  On May 12, 2021, **Wolf Oetting** stated via email that he is uncomfortable appearing for an in-person deposition due to COVID-19.  Mr. Oetting stated that while he has worked at Apple and attended in-person work-related meetings in person during the past 30 days, he has only done so in Apple's very controlled environment with large spaces, very limited attendance, and minimal meeting duration in open collaboration spaces rather than in meeting rooms.  Mr. Oetting is not comfortable with an in-person deposition, including due to the length of in-person time that would be required for that deposition.

Gibson, Dunn & Crutcher LLP

Exhibit 6
-130-

12.     On May 12, 2021, **Michael O'Reilly** stated via email that he is uncomfortable appearing for an in-person deposition due to COVID-19, that he has worked for Apple remotely-only during the past 30 days, that he has not attended any in-person work-related meetings during the past 30 days, and that his understanding is that Apple's policy is that he should continue to work remotely to the extent possible for at least the next 60 days.

13.     On May 11, 2021, **Mark Rollins** stated via email that he is uncomfortable appearing for an in-person deposition due to COVID-19.  Mr. Rollins stated that he has worked remotely-only during the past 30 days, but that he participated in two remote depositions in the past 30 days from his office in an Apple facility (where he was alone in his office for the entirety of both remote depositions).  Mr. Rollins stated that he has not attended any in-person work-related meetings during the past 30 days, and that his understanding is that Apple's policy is that he should continue to work remotely to the extent possible for at least the next 60 days.

14.     On May 12, 2021, **David Smoley** stated via email that he is uncomfortable appearing for an in-person deposition due to COVID-19, that he has worked for Apple remotely-only during the past 30 days, that he has not attended any in-person work-related meetings during the past 30 days, and that his understanding is that Apple's policy is that he should continue to work remotely to the extent possible for at least the next 60 days.

15.     On May 11, 2021, **Steve Waydo** stated via email that he is uncomfortable appearing for an in-person deposition due to COVID-19, that he has worked for Apple remotely-only during the past 30 days, that he has not attended any in-person work-related meetings during the past 30 days, and that his understanding is that Apple's policy is that he should continue to work remotely to the extent possible for at least the next 60 days.

DECLARATION OF ILISSA SAMPLIN IN SUPPORT OF COURT ORDER GRANTING APPLE'S EX PARTE APPLICATION (DKT. 374) CASE NO. 8:20-CV-00048-JVS (JDEX)

Gibson, Dunn & Crutcher LLP

Exhibit 6
-131-

1          I declare under penalty of perjury under the laws of the United States of America

2   that the foregoing is true and correct.

3          Executed this 12th day of May, 2021, in Los Angeles, California.

4

5

6                                                Ilissa Samplin

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ILISSA SAMPLIN IN SUPPORT OF COURT ORDER GRANTING APPLE'S EX PARTE
APPLICATION (DKT. 374) CASE NO. 8:20-CV-00048-JVS (JDEX)

Gibson, Dunn &
Crutcher LLP

Exhibit 6
-132-

1

## CERTIFICATE OF SERVICE

2          I, Ilissa Samplin, declare as follows:

3          I am employed in the County of Los Angeles, State of California, I am over the
age of eighteen years and am not a party to this action; my business address is 333
4   South Grand Avenue, Los Angeles, CA 90071, in said County and State. On May 12,
2021, I served the following document(s):

5

6   **DECLARATION OF ILISSA SAMPLIN IN SUPPORT OF COURT
ORDER GRANTING APPLE'S EX PARTE APPLICATION (DKT.
374)**

7

8   on the parties stated below, by the following means of service:

9                              Knobbe, Martens, Olson & Bear LLP

10                      Joseph R. Re (joseph.re@knobbe.com)

11                   Stephen C. Jensen (steve.jensen@knobbe.com)

12                    Perry D. Oldham (perry.oldham@knobbe.com)

13                  Stephen W. Larson (Stephen.larson@knobbe.com)

14                    Adam B. Powell (adam.powell@knobbe.com)

15                    Mark Kachner (mark.kachner@knobbe.com)

16          The document was served pursuant to Fed. R. Civ. P. 5(b) via electronic mail.

17   Based on an agreement of the parties to accept service by email or electronic

18   transmission to the above service list, I served the document to the perrsons at the email

19   addresses listed above.

20          I declare under penalty of perjury under the laws of the United States of America

21   that the foregoing is true and correct, and that this was executed on May 12, 2021, in

22   Los Angeles, California.

23

24                                        _____
                                                    *Ilissa Samplin*
                                                     Ilissa Samplin

25

26

27

28

Gibson, Dunn &
Crutcher LLP

Exhibit 6
-133-

# EXHIBIT 7

JS-5

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| BOSTON SCIENTIFIC CORP., et al., | Case No.: SACV 16-00730-CJC (GJSx) |
| Plaintiffs, | |
| v. | ORDER GRANTING PLAINTIFFS' RENEWED MOTION TO LIFT STAY |
| EDWARDS LIFESCIENCES CORP., | |
| Defendant. | |

## I. INTRODUCTION & BACKGROUND

Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (together, "Boston"), initiated this patent infringement action against Defendant Edwards Lifesciences Corporation ("Edwards") on April 19, 2016.  Boston alleges infringement of six patents divided into two families: (1) the "crimper patent" (U.S. Patent No. 6,915,560) and (2) the "catheter patents" (U.S. Patent Nos. 6,007,543, 6,203,558,

Exhibit 7
-134-

6,371,962, 6,712,827, and 8,709,062).  These patents protect certain products used in Boston's transcatheter aortic valve implantation (TAVI) device.  (Dkt. 64 at 2–3.) Edwards brought counterclaims against Boston seeking a declaration that the crimper and catheter patents are invalid.  (Dkt. 49.)

After Boston filed this patent infringement action, Edwards filed petitions for *inter partes* review ("IPR") with the United States Patent and Trademark Office ("PTO").  *See* 35 U.S.C. §§ 311 *et seq.*  Anyone who is not the patent owner may petition for IPR to cancel one or more claims of a patent.  *Id.* § 311(b).  If the PTO decides to grant a petition, the PTO begins, or "institutes," IPR of the patent.  *Id.* § 311(a).  Once a petition is instituted, the PTO must conclude IPR within one year, with a possible six-month extension for good cause.  *Id.* § 316(a)(11).

The PTO instituted IPR on the crimper patent on June 29, 2017.  (Dkt. 104 at 2.) On July 31, 2017, Edwards filed a motion to stay the case pending the PTO's IPR determinations, (Dkt. 63), which the Court granted, (Dkt. 95).  The Court directed the parties to notify the Court when the PTO had made its determinations on the pending IPR petitions.  (*Id.*)  By October 25, 2017, the PTO had denied Edwards' IPR petitions on five of the six catheter patents.  (Dkt. 104 at 2.)  As to the '062 catheter patent, the PTO granted Edwards' petition with respect to some of the claims, but denied the petitions on claims 8, 16, and 22.  (*Id.*)

On November 7, 2017, Boston filed a motion to lift the stay in light of the PTO's determinations regarding some of Edwards' IPR petitions.  (Dkt. 104.)  On December 1, 2017, the Court denied Boston's motion and directed the parties "to notify the Court upon **final** resolution of the IPR."  (Dkt. 110 at 7 [emphasis in original].)  Boston dropped certain patent claims but continued to assert claims 8, 16, and 22 of the '062 catheter patent for which the PTO did not institute IPR.

Exhibit 7
-135-

In April 2018, the PTO revisited its '062 catheter patent decision and instituted review of claims 8, 16, and 22.  (Dkt. 112 Ex. 3.)  Before the PTO issued its final decision, Boston renewed its motion to lift the stay.  (Dkt. 111-1.)  The Court again denied Boston's request.  (Dkt. 116.)  Although the PTO had issued its final decision on the crimper patent, it had not yet issued a final decision as to claims 8, 16, and 22 of the '062 catheter patent.  IPR of these remaining claims, the Court reasoned, could further "simplify the issues" in the instant litigation and therefore justified continuing the stay.  (*Id.* at 5.)  The Court, however, declined Edwards' request to maintain the stay until the Federal Circuit reviewed Edwards' appeals of the PTO's final decisions.  (*Id.* at 6 ["The possibility of simplification from the Federal Circuit appeal is too speculative to justify extension of the stay on that ground alone."].)

On October 12, 2018, the PTO issued its final written decision in the IPR of the '062 catheter patent, finding that claims 8, 16, and 22 are valid.  (Dkt. 117.)  On October 24, 2018, Edwards appealed the PTO's decision to the Federal Circuit.  Because the PTO has resolved all of the pending IPRs on which the stay was premised, Boston filed the instant renewed motion to lift the stay.  (Dkt. 121-1 [hereinafter "Mot."].)  For the following reasons, the motion is **GRANTED**.[1]

## II.  DISCUSSION

Edwards asserts that the stay should remain in effect until the Federal Circuit reviews the PTO's final decision on appeal.  (Dkt. 123 at 2.)  Edwards contends that the timeline of that appeal is "definite" because the Federal Circuit has set a briefing schedule and oral argument is calendared for early February 2019.  (*Id.* at 1.)

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for November 26, 2018, at 1:30 p.m. is hereby vacated and off calendar.

Exhibit 7
-136-

Accordingly, Edwards claims that the "Court's prior concerns regarding the indefinite timeline" of the appeal process "have been resolved." (*Id.* at 3.)  The Court disagrees.

District courts have the inherent power to manage their dockets and stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936).  This inherent power includes "the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988).  By the same token, "[t]he same court that imposes a stay of litigation has the inherent power and discretion to lift the stay." *See Indep. Living Ctr. of S. Cal. v. Douglas*, 2012 WL 1622346, at *2 (C.D. Cal. May 8, 2012) (quoting *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 74 (D.D.C. 2002)).  In determining whether a stay pending patent reexamination is appropriate, courts generally consider three factors: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030–31 (C.D. Cal. 2013).  Ultimately, however, "the totality of the circumstances governs." *Id.* at 1031.

The purpose of the original stay has been satisfied.  The Court directed the parties to notify the Court upon "final resolution" of the pending IPRs before the PTO.  On October 12, 2018, the PTO issued its final decision on the only pending IPR of patents at issue in this litigation.  As the Court noted in its August 9, 2018 Order, the possibility of simplification from the appeal pending before the Federal Circuit is too speculative to justify extension of the stay on that ground alone.  (*See* Dkt. 116 at 6.)  The chance "that the Federal Circuit may reverse the PTO (and thereby simplify this litigation by, presumably, making it disappear), is not, in and of itself, a sufficient basis to make the patentee . . . continue to wait to enforce patent rights that it currently holds." *Juno Therapeutics, Inc. v. Kite Pharma*, 2018 WL 1470594, at *7 (C.D. Cal. Mar. 8, 2018)

Exhibit 7
-137-

(citing *Personal Audio LLC v. Google, Inc.*, 230 F. Supp. 3d 623, 627 (E.D. Tex. 2017)). Given that the Federal Circuit declined Edwards' request to issue a decision "within three months of oral argument," (Mot. at 3), the appeal process is far from "definite." According to Federal Circuit data, the average time from oral argument to decision is approximately half a year.  (Dkt. 126-1 at 5.)  Waiting for a decision from the Federal Circuit subjects the present action to the indefinite timeline of the appeal process in exchange for an uncertain or unlikely possibility of further simplification of the issues.

## III.  CONCLUSION

In light of the totality of the circumstances, the Court finds that a stay is no longer warranted.  For the foregoing reasons, Boston's renewed motion to lift the stay is **GRANTED**.  The Court hereby **DIRECTS** the parties to meet and confer and file a revised proposed scheduling order within **FOURTEEN DAYS**.

DATED:     November 15, 2018

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

Exhibit 7
-138-